IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE                                           :   Case No. 07-11047 (_____)
HOLDINGS, INC., a Delaware corporation, et al.,                  :
                                                                 :   Joint Administration Pending
                        Debtors.                                 :
---------------------------------------------------------------- x

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE
DEBTORS TO PAY CERTAIN PREPETITION TAXES, INCLUDING
TRUST FUND AND PERSONAL LIABILITY TAXES, PURSUANT TO
SECTIONS 105(a), 363 AND 507(a) OF THE BANKRUPTCY CODE**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"),[1] respectfully represent as follows:

### SUMMARY OF RELIEF REQUESTED

1.  By this motion (the "Motion"), the Debtors request that this Court enter an order authorizing, but not directing, the Debtors to pay certain prepetition taxes, including trust fund and personal liability taxes, pursuant to sections 105(a), 363 and 507(a) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

2.   This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.   On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.   Simultaneous with the filing of this pleading, the Debtors have filed a motion with this Court pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure seeking joint administration of the Debtors' estates.

5.   No creditors' committee has yet been appointed in these cases. No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

6.   Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief, filed concurrently herewith (the "First Day Declaration"), which is incorporated by reference as if fully set forth herein at length.

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

7. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

8. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

9. Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

10. The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

11. In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans – began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

12. On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

13. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors now employ approximately 1000 persons who are absolutely essential to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

14. In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

15. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## TRUST FUND AND PERSONAL LIABILITY TAXES

16. In the ordinary course of business, the Debtors are required to collect certain taxes from third-parties and hold them for a period of time before remitting them to the appropriate taxing authorities (the "Trust Fund Taxes"). In addition, certain taxing authorities are authorized under state law to collect certain unpaid business and occupation taxes directly from individual officers and directors of the Debtors (the "Business Taxes" and with the Trust Fund Taxes, the "Taxes").

17. The Debtors pay Trust Fund Taxes in the annual estimated amount of $156,000, of which approximately $76,000 remains unpaid. Additionally, the Debtors pay a Business Taxes on a monthly basis. The amount of such Business Taxes fluctuate based on the number of loans funded for the month. The Debtors currently estimate that they owe Business Taxes in the approximate amount of $45,000 for the month of July.

## **RELIEF REQUESTED**

18. By this Motion, the Debtors seek, inter alia, entry of an order pursuant to sections 105, 363 and 507(a) of the Bankruptcy Code that authorizes, but does not direct, the Debtors to pay the Taxes in the ordinary course of business, in their discretion as they deem necessary, on an unaccelerated basis as undisputed payments become due and payable. To the extent that any check payable to a taxing authority has not cleared the bank as of the Petition Date, the Debtors also seek entry of an order (i) authorizing the Debtors' banks to honor such checks and/or any prepetition wire transfer requests and (ii) authorizing the Debtors to issue replacement checks, submit replacement fund transfer requests or provide other means of payment to the taxing authorities.

19. The Debtors believe that failure to pay the Taxes could have a material adverse impact on their ability to operate in the ordinary course of business. The Debtors are licensed to do business in numerous states and any tax disputes could result in state audits and lien filings that could impair the ability of the Debtors to conduct business in a particular jurisdiction. Furthermore, nonpayment of certain Taxes could expose the directors and officers of the Debtors to personal liability, which would divert the attention of these key employees and prove very disruptive to these chapter 11 cases. In relation to the magnitude of the Debtors' business operations and expenses, the payment of approximately $121,000 in pre-petition Taxes is not material. Given the potential harm and disruption to the Debtors' businesses for failure to pay the Taxes in the ordinary course of business and the fact that the Debtors intend to pay such Taxes in full, the Debtors submit that the relief sought herein is necessary and appropriate.

DB02:6149868.4                                                                                                                    066585.1001

## **BASIS FOR RELIEF REQUESTED**

20.     There is ample authority for allowing payment of the Taxes in the ordinary course. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy court'[s] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01, at 105-5 to 105-6 (15th ed. rev. 2006).

21.     Numerous courts have utilized their section 105 equitable powers under the "necessity of payment doctrine" to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the paramount purpose of a chapter 11 reorganization, which is to prevent the debtor from going into liquidation and preserve the debtor's potential for rehabilitation. See In re Lehigh & New Eng. Rwy. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Ionosphere Clubs. Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)).

22.     Moreover, this Court has authorized debtors in possession to pay a variety of prepetition claims of creditors, including claims similar to the Taxes herein, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code. See, e.g., In re Advanced Marketing Services. Inc., et al., No. 06-11480 (CSS) (Bankr. D. Del. Dec. 29, 2006) (sales, use and franchise taxes); In re Dura Automotive Systems, et al., No. 06-11202 (KJC) (Bankr. D. Del. Oct. 30, 2006) (sales, use and franchise taxes); In re Magnolia Energy. L.P., et al., No. 06-11069 (MFW) (Bankr. D. Del. Sept. 29, 2006) (sales and use taxes).

23.     Certain of the Taxes constitute so-called "trust fund" taxes, which are required to be collected from third-parties and held in trust for payment to the taxing authorities. To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates

7


under section 541(d) of the Bankruptcy Code. Tex. Comptroller of Public Accounts v. Megafoods Stores. Inc. (In re Megafoods), 163 F.3d 1063, 1067 (9th Cir. 1998); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (excise and withholding taxes); Shipley Co. v. Dann (In re Tap, Inc.), 52 B.R. 271, 277-78 (Bankr. D. Mass. 1985) (withholding taxes). The Debtors, therefore, do not have any equitable interest in the Taxes and should be permitted to pay them to the taxing authorities as they become due.

24. Furthermore, as mentioned above, the Debtors' officers and directors are subject to personal liability to the extent the Debtors fail to meet the obligations imposed on them to remit certain of the Taxes. To the extent that any accrued taxes of the Debtors were unpaid as of the Petition Date, the Debtors' officers and directors may be subject to lawsuits in certain jurisdictions during the pendency of these cases, even if the failure to pay was not a result of any nonfeasance or malfeasance on their part. Such potential lawsuits would prove extremely disruptive for the Debtors, for the named officers and directors whose attention to the chapter 11 process is required, and for this Court, which might be asked to entertain various requests for injunctions with respect to the potential state court actions against such individuals.

25. In addition, the Taxes are entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code, and therefore, must be paid in full before any general unsecured obligations may be satisfied. See 11 U.S.C. § 1129(a)(9)(C). Accordingly, to the extent that the Debtors are successful in confirming a chapter 11 plan, the proposed relief will only affect the timing of the payments of the Taxes and will not prejudice the rights of other creditors or parties in interest.

26. Nothing in this Motion should be construed as impairing the Debtors' rights to dispute, and the Debtors hereby reserve all such rights, the amount, priority or validity of any Taxes that may be due to the taxing authorities.

27. For all the foregoing reasons, the Debtors believe that granting the relief requested in this Motion is necessary and appropriate and is in the best interest of the Debtors, their estates, and their creditors, and should be granted in all respects.

## NOTICE

28. Notice of this Motion has been given by facsimile or overnight delivery to the following parties, or in lieu thereof, to their counsel: (i) the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' list of forty (40) creditors holding the largest unsecured claims; (iii) counsel to Bank of America, N.A; and (iv) the proposed debtor in possession lender and its counsel. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR APPLICATION

29. No previous application for the relief sought herein has been made to this or to any other court.

WHEREFORE, the Debtors request entry of an order, in the form attached hereto as <u>Exhibit A</u>, authorizing the relief sought herein and such other and further relief as is just.

Dated:    Wilmington, Delaware
           August 6, 2007

                            YOUNG CONAWAY STARGATT & TAYLOR, LLP

                            _____
                            James L. Patton, Jr. (No. 2202)
                            Joel A. Waite (No. 2925)
                            Pauline K. Morgan (No. 3650)
                            Sean M. Beach (No. 4070)
                            Matthew B. Lunn (No. 4119)
                            Kara Hammond Coyle (No. 4410)
                            Kenneth J. Enos (No. 4544)
                            The Brandywine Building
                            1000 West Street, 17th Floor
                            Wilmington, Delaware 19801
                            Telephone: (302) 571-6600
                            Facsimile: (302) 571-1253

                            Proposed Counsel for Debtors and
                            Debtors in Possession

# EXHIBIT A

## PROPOSED ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
In re:                                                             :   Chapter 11
                                                                   :
AMERICAN HOME MORTGAGE                                             :   Case No. 07-[_____] (_____)
HOLDINGS, INC., a Delaware corporation, et al.,                    :
                                                                   :   Jointly Administered
            Debtors.                                               :
                                                                   :   Ref. Docket No ____
------------------------------------------------------------------ x

**ORDER AUTHORIZING THE DEBTORS AND DEBTORS IN
POSSESSION TO PAY CERTAIN PREPETITION TAXES, INCLUDING
TRUST FUND AND PERSONAL LIABILITY TAXES, PURSUANT
TO SECTIONS 105(A), 363 AND 507(A) OF THE BANKRUPTCY CODE**

Upon consideration of the motion (the "Motion")[1] of American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[2] seeking entry of an order authorizing, but not directing, the Debtors to pay certain prepetition taxes, including trust fund and personal liability taxes, pursuant to sections 105(a), 363 and 507(a) of the Bankruptcy Code, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Motion having been provided; and it appearing that no other or further notice of the Motion need be provided; and the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and upon the Motion, and the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief, dated as of the Petition Date; and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay all undisputed pre-petition Taxes, including trust fund and personal liability tax obligations due and owing to various taxing authorities (the "Taxing Authorities") in the ordinary course of business, on an unaccelerated basis; and it is further

ORDERED that (i) to the extent that any check payable to a taxing authority has not cleared the bank as of the Petition Date or was rejected by a bank, the Debtors are authorized, but not directed, to issue postpetition replacement checks, submit replacement fund transfer requests or provide other means of payment to the taxing authorities and (ii) the Debtors' banks are authorized to honor such checks and/or any prepetition wire transfer requests; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the Debtors' rights to dispute the amount, priority, validity or basis of any Taxes allegedly due to any taxing authority, or a waiver of any right to assert property rights in such funds and all such rights of the Debtors are reserved; and it is further

ORDERED that the Debtors, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein; and it is further

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

Dated:    August __, 2007
             Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE