IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
In re:                                                             :    Chapter 11
                                                                   :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                             :    Case No. 07-11047 (___)
a Delaware corporation, et al.,                                    :
                                                                   :    Joint Administration Pending
         Debtors.                                                  :
------------------------------------------------------------------ x

**MOTION FOR AN ORDER PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO (I) CONTINUE THE
DEBTORS' INSURANCE POLICIES AND AGREEMENTS RELATING THERETO
AND (II) HONOR CERTAIN OBLIGATIONS IN RESPECT THEREOF**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] respectfully

represent as follows:

**SUMMARY OF RELIEF REQUESTED**

1.       By this motion (the "Motion"), the Debtors request that this Court enter an

order pursuant to sections 363(b) and 105(a) of the Bankruptcy Code authorizing the Debtors to

continue and maintain their insurance policies and agreements relating thereto, and pay all

obligations in respect thereof.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation
(3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979);
American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home
Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC
("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc.
("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York
corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except
for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.     On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     Simultaneous with the filing of this pleading, the Debtors have filed a motion with this Court pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking joint administration of the Debtors' estates.

5.     No creditors' committee has yet been appointed in these cases.  No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

6.     Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans.  AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors.  AHM offered an array of mortgage products and

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief, filed concurrently herewith (the "First Day Declaration"), which is incorporated by reference as if fully set forth herein at length.

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

7.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

8.      A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

9.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

10.    The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

11.    In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans – began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

12.    On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

13.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors now employ approximately 1000 persons who are absolutely essential to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

14.     In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

15.     Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## THE DEBTORS' INSURANCE POLICIES

16.     Servicing loans for securitization trusts and purchasers of loans acquired in whole loan sales is an important portion of the Debtors' business. The Debtors' mortgage servicing rights ("MSR's") are generally established in servicing contracts with the securitization trusts or third party whole loan purchases. Preserving these MSR's and the Debtors' loan servicing platform is critical to maximizing and maintaining the value of the Debtors' estates. The Debtors perform loan servicing on behalf of a number of securitization trusts and other arrangements under the terms and conditions of a series of servicing agreements, pooling and servicing agreements, indentures and related documents (collectively, the "Servicing Documents").

17.     Under the Servicing Documents, certain whole loan sale and other arrangements, the Debtors, among other servicing obligations, (a) service mortgage loans held by the trusts in accordance with the terms and conditions thereof, (b) advance principal, interest and certain "property protection" costs (taxes, insurance, and certain corporate advances) with

respect to delinquent mortgage loans, unless such amounts are determined to be unrecoverable from related loans, (c) perform securities related computational, reporting and compliance tasks, and (d) pay certain fees and expenses to the trustee and certain other parties to the securitization documents (collectively, the "Servicing Functions").

18.     In connection with the Servicing Functions, the Debtors are the insured under mortgage insurance policies to provide coverage for certain losses resulting from certain defaulting loans. The insurance carriers with respect to these mortgage insurance policies (the "Insurance Policies")[3] include: Genworth Mortgage Insurance Corporation, Mortgage Guaranty Insurance Corporation, PMI Mortgage Insurance Co., Radian Guaranty Inc., Republic Mortgage Insurance Company of North Carolina, Triad Guaranty Insurance Corporation, and United Guaranty Residential Insurance Company (collectively, the "Insurance Carriers").[4] It is essential to the continued operation of the Debtors' businesses that the Insurance Policies be maintained on an ongoing and uninterrupted basis. If the Debtors are not authorized to pay pre-petition amounts owing under their Insurance Policies, the consequences for the Debtors will be severe. If the Insurance Policies are allowed to lapse or expire, the Debtors could be exposed to substantial loss resulting from advances and other obligations under their servicing arrangements with respect to defaulting loans.

19.     Under the Servicing Documents or other agreements, the Debtors are authorized to allocate a portion of the interest received from loan payments to pay premiums under the Insurance Policies (the "Insurance Premium Proceeds"). The Insurance Carriers

---

[3] The Debtors believe that, with the exception of the Insurance Policies, they are current with respect to the balance of their prepetition premium and other obligations under their other insurance programs.

[4] The Debtors believe that this is an exhaustive list of there mortgage insurance carriers under Insurance Policies, but, in the event that a mortgage insurance carrier was inadvertently omitted from this list, they shall be incorporated in the term "Insurance Carriers" for all purposes of this Motion and Order.

invoice the Debtors on a monthly basis in arrears. Upon receipt of the Insurance Carrier invoices, the Debtors remit insurance premium payments in the normal course of business from the Insurance Permium Proceeds. The approximate amount in premiums under the Insurance Policies is $3.6 million on a monthly basis (the "Monthly Premiums"). The Debtors estimate that the prepetition premium obligations outstanding is equal to the Monthly Premiums.[5] The term of each Insurance Policy is on a per loan basis, such that the policy is in place for the life of each covered loan.

20.     The Insurance Policies are essential to the Debtors' businesses, properties and assets. As such, the Debtors believe it is in the best interests of their estates to permit the Debtors to honor their obligations under the current insurance contracts. Any other alternative would likely require considerable additional cash expenditures and would be detrimental to the Debtors' reorganization efforts.

## RELIEF REQUESTED

21.     Pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, the Debtors seek authorization to continue and maintain the Insurance Policies on an uninterrupted basis, consistent with pre-petition practices, and pay when due in the ordinary course all pre-petition premiums, administrative fees, and other prepetition obligations to the Insuarnce Carriers to the extent due and payable postpetition. As noted above, the Debtors are billed in arrears and have approximately $3.6 million in outstanding prepetition premium obligations to Insurance Carriers, mostly from amounts accruing in the month of July. The amounts that the

---

[5] The actual prepetition premium obligations under the Insurance Policies may be slightly more than the Monthly Premiums as a result of accruals from August 1-5, 2007. The Debtors hereby seek authority to pay all outstanding prepetition obligations under the Insurance Policies.

Debtors propose to pay in respect of the Insurance Policies are minimal in light of the size of the

Debtors' estates and the potential exposure of the Debtors absent insurance coverage.

22.    To the extent any Insurance Policy or related agreement is deemed an

executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do

not at this time seek to assume the same.  Accordingly, the Debtors request that if the Court

authorizes the payments described above, such payment should not be deemed to constitute post-

petition assumption or adoption of any such programs, policies, or agreements as executory

contracts pursuant to section 365 of the Bankruptcy Code.

### BASIS FOR RELIEF REQUESTED

23.    There is ample authority for allowing the Debtors to pay pre-petition

obligations under the Insurance Policies.  Section 105(a) of the Bankruptcy Code provides that

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title."  11 U.S.C. § 105(a).  The purpose of section 105(a) is "to assure

the bankruptcy court'[s] power to take whatever action is appropriate or necessary in aid of the

exercise of their jurisdiction."  2 Collier on Bankruptcy, ¶ 105.01, at 105-5 to 105-6 (15th ed.

rev. 2006).

24.    Numerous courts have utilized their section 105 equitable powers under

the "necessity of payment doctrine" to authorize payment of a debtor's prepetition obligations

where, as here, such payment is necessary to effectuate the paramount purpose of a chapter 11

reorganization, which is to prevent the debtor from going into liquidation and preserve the

debtor's potential for rehabilitation.  See In re Lehigh & New Eng. Rwy. Co., 657 F.2d 570, 581

(3d Cir. 1981); In re Just for Feet, Inc., 242 B.R. 821, 825-26 (D. Del. 1999) (noting that "[t]he

Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to

authorize payment of pre-petition claims when such payment is necessary for the debtor's

survival during Chapter 11"); In re Columbia Gas System, 136 B.R. 930, 939 (Bankr. D. Del.

1992) (recognizing that where payment of a prepetition claim is essential to the continued

operation of a debtor, payment of such claim may be authorized).

25.     Moreover, this Court has granted the relief requested herein in other large

chapter 11 cases pursuant to its equitable powers under section 105(a) of the Bankruptcy Code.

See e.g., In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 3,

2007); In re Advanced Marketing Services, Inc., No. 06-11480 (CSS) (Bankr. D. Del. 2006); In

re Three A's Holdings, L.L.C., No. 06-10886 (BLS) (Bankr. D. Del. 2006); In re FLYi, Inc., No.

05-20011 (MFW) (Bankr. D. Del. Nov. 29, 2005).

26.     The Debtors submit that, in their reasonable business judgment, it is both

necessary and appropriate to pay the prepetition premiums outstanding under the Insurance

Policies in the normal course of business.  If the Insurance Policies are allowed to lapse, the

Debtors could be exposed to substantial loss and business disruption.  Therefore, the Debtors

seek authorization to continue and maintain the Insurance Policies on an uninterrupted basis,

consistent with prepetition practices, and pay when due in the ordinary course all pre-petition

premiums, administrative fees, and other pre-petition obligations to the Insurance Carriers to the

extent due, undisputed and payable post-petition.

## NOTICE

27.     Notice of this Motion has been given by facsimile or overnight delivery to

the following parties, or in lieu thereof, to their counsel:  (i) the United States Trustee for the

District of Delaware; (ii) the parties included on the Debtors' list of forty (40) creditors holding

the largest unsecured claims; (iii) counsel to Bank of America, N.A; and (iv) the proposed debtor

in possession lender and its counsel. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## **NO PRIOR APPLICATION**

28.     No previous application for the relief sought herein has been made to this or to any other court.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

WHEREFORE, the Debtors request entry of an order, in the form attached hereto as <u>Exhibit A</u>, and such other and further relief as is just.

Dated:      Wilmington, Delaware
             August 6, 2007

                          YOUNG CONAWAY STARGATT & TAYLOR, LLP

                          James L. Patton, Jr. (No. 2202)
                          Joel A. Waite (No. 2925)
                          Pauline K. Morgan (No. 3650)
                          Sean M. Beach (No. 4070)
                          Matthew B. Lunn (No. 4119)
                          Kara Hammond Coyle (No. 4410)
                          Kenneth J. Enos (No. 4544)
                          The Brandywine Building
                          1000 West Street, 17th Floor
                          Wilmington, Delaware 19801
                          Telephone: (302) 571-6600
                          Facsimile: (302) 571-1253

                          Proposed Counsel for Debtors and
                          Debtors in Possession

## EXHIBIT A

### PROPOSED ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | : | Case No. 07-[_____] (____) |
| a Delaware corporation, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | x | **Doc. Ref. No. _____** |

---

## ORDER PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO (I) CONTINUE THE DEBTORS' INSURANCE POLICIES AND AGREEMENTS RELATING THERETO AND (II) HONOR CERTAIN OBLIGATIONS IN RESPECT THEREOF

Upon consideration of the motion (the "Motion")[1] of American Home Mortgage

Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect

affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively,

"AHM" or the "Debtors")[2], seeking entry of an order pursuant to sections 363(b) and 105(a) of

title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") authorizing the

Debtors to continue their Insurance Policies and agreements relating thereto and pay all

obligations in respect thereof, all as described more fully in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

§§ 157 and 1334; and due notice of the Motion having been provided; and it appearing that no other or further notice of the Motion need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and upon the Motion, and the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief, dated as of the Petition Date; and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, but not directed, to maintain and continue to make all prepetition and postpetition payments, including prepetition and postpetition fees and premiums with respect to the Insurance Policies on an uninterrupted basis; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay or otherwise satisfy any additional prepetition premiums, deductibles and/or other obligations related to the Insurance Policies to the extent that the Debtors determine, in their discretion, that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse or any form of impairment to the coverage, benefits or proceeds provided under the Insurance Policies; and it is further

ORDERED that to the extent that the Insurance Policies, or any related contract or agreement, are deemed executory contracts, the relief granted hereby shall not be deemed an assumption of any such contract pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights pursuant to section 365 of the Bankruptcy Code are expressly reserved; and it is further

-2-

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated:    Wilmington, Delaware
          _____, 2007

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE