# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------ x
In re:                                              :  Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                               :  Case No. 07-11047 (___)
HOLDINGS, INC., a Delaware corporation, et al.,¹    :
                                                    :  Joint Administration Pending
        Debtors.                                    :
------------------------------------------------------------------ x
```

**EMERGENCY MOTION OF DEBTORS FOR: (I) AN ORDER (A) SCHEDULING A
HEARING TO CONSIDER THE PROPOSED SALE OF LOAN ASSETS AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (B) ESTABLISHING
PROCEDURES RELATING TO THE SALE AND THE SALE, ASSUMPTION, AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, LICENSE AGREEMENTS,
AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS,
AND (C) GRANTING CERTAIN RELATED RELIEF; AND (II) AN ORDER (A)
APPROVING THE SALE, (B) AUTHORIZING THE SALE, ASSUMPTION, AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, LICENSE AGREEMENTS,
AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, "AHM" or

the "Debtors") hereby move this Court on an emergency basis (this "Motion"), pursuant to

sections 105(a), 363, 365, 503 and 507 of chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of: (I) an order (a)

scheduling a hearing (the "Sale Hearing") to consider approval of the sale (the "Sale") of all or a

portion of the Assets (as defined below) and approving the form and manner of notice thereof

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp.
("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558);
American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

(the "Sale and Publication Notice"), (b) establishing certain procedures relating to the Sale and to the sale, assumption and assignment of certain executory contracts, license agreements, and unexpired leases related to the Assets (each a "Contract" and, collectively, the "Contracts") in connection with the Sale (the "Sale Procedures"), including notice of proposed cure amounts (the "Cure Notice") and an auction (the "Auction"), and (c) granting certain related relief (the "Procedures Order"); and (II) an order (a) approving the Sale of all or a portion of the Assets to one or more purchasers, (b) approving the sale, assumption, and assignment of the Contracts in connection with the Sale; and (c) granting certain related relief (the "Sale Order").  The following documents accompany this Motion:

    i.    The Sale and Publication Notice – Exhibit A;

    ii.    The Sale Procedures – Exhibit B;

    iii.    The Cure Notice – Exhibit C;

    iv.    The Loan Purchase Agreement (as defined below) – Exhibit D;

    v.    The Residual Interests Purchase Agreement (as defined below) – Exhibit E;

    vi.    The Procedures Order – Exhibit F; and

    vii.    The Sale Order – Exhibit G.

In support of this Motion, the Debtors rely upon the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief (the "Strauss Declaration").  In further support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

    1.    The Debtors recognize that their requests to schedule a hearing to consider approval of the Sale Procedures as soon as reasonably possible after the Petition Date and the Sale Hearing within 35 days of the Petition Date represent extraordinary relief.  However, the

Debtors believe that, in the exercise of their business judgment and consistent with their fiduciary duties to these estates, the relief sought by this Motion is reasonable and necessary to obtain maximum value for creditors under the circumstances of these cases. Without approval of the Sale on the proposed time-frame, the Debtors believe that the value of the Assets will decline substantially and, in some cases, the Debtors may lose the opportunity to realize value for certain Assets..

## STATUS OF THE CASE AND JURISDICTION

2.       On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including entry an order to have these cases jointly administered.

3.       The Debtors have continued in possession of their respective properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.       No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in these cases.

5.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

3

066585.1001

## **GENERAL BACKGROUND**[2]

<u>The Debtors' Business</u>

      6.     Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

      7.     As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

      8.     A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing

---

[2] A detailed description of the Debtors' businesses and related business information is set forth in the Strauss Declaration and is incorporated herein by reference.

                         

serviced approximately 197,000 loans with an aggregate principal amount of approximately
$46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable
asset of the Debtors' estates.

Events Leading to the Chapter 11 Filing

9.    Beginning in late 2006, and continuing through 2007, the credit markets
became concerned over the quality of subprime mortgages and, specifically, the increasing
default rates on such mortgages. These concerns became exacerbated by the failure of two major
hedge funds with concentrated investments in subprime loans.

10.    The concern in the credit markets has spread beyond the subprime market
and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury
issued securities and general corporate debt securities. The surge in mortgage delinquencies for
subprime home loans also generated anxiety in the market about borrowers with adjustable rate
mortgages scheduled to reset with higher rates in 2007 and 2008.

11.    In the weeks prior to the Petition Date, this unprecedented disruption in
the credit markets caused major write-downs of the Debtors' loan and security portfolios and
consequently resulted in margin calls for hundreds of millions of dollars with respect to the
Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial
institutions that provide short term credit facilities needed to originate and purchase loans –
began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to
originate loans and threatening the company's continued viability.

12.    On July 27, 2007, AHM Investment announced that its Board of Directors
had decided to delay payment of its quarterly cash dividend on the Company's common stock
and anticipated delaying payment of its quarterly cash dividends on its preferred stock to
preserve liquidity.

066585.1001

13.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors now employ approximately 1000 persons who are absolutely essential to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

14.    In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

15.    Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

**SALE BACKGROUND**

16.    Faced with the issues discussed above, most notably the liquidity crisis and subsequent shutdown of certain businesses, the Debtors determined that it was in the best interest of their estates, creditors and other constituents to attempt to sell their businesses and residual assets. Accordingly, in the recent weeks, the Debtors, with the assistance of their financial advisors, investigated sales of portions of their assets or other strategic transactions. In

DB02:6159336.3                                                            066585.1001

particular, the Debtors pursued sales of both their resale and wholesale loan origination businesses, but were unsuccessful and were forced to cease operating such businesses.

## THE ASSETS[3]

17.     As more fully described in the form Mortgage Loan Purchase and Warranties Agreement attached as Exhibit D (the "Loan Purchase Agreement") and the form purchase agreement for the Debtors' mortgage-backed residual interests attached as Exhibit E (the "Residual Interests Purchase Agreement", and together with the Loan Purchase Agreement, the "Purchase Agreements"), the Assets consist of the following:

  a.     mortgage loans owned by the Debtors and not subject to the Warehouse Lenders' liens;

  b.     mortgage loans owned by the Debtors and subject to the Warehouse Lenders' liens and repurchase rights;

  c.     "scratch and dent" mortgage loans owned by the Debtors; and

  d.     the Debtors' mortgage-backed residual interests in securitization trusts ((a)-(d), collectively, the "Assets").

The Debtors proposes to sell the Assets free and clear of all interests, including liens, claims, encumbrances and other interests (collectively, "Interests"), and provide for the sale, assumption, and assignment of Contracts.

## RELIEF REQUESTED

18.     By this Motion, the Debtors hereby request that this Court enter orders facilitating the prompt auction and sale of the Assets.  Specifically, the Debtors seek entry of the Procedures Order, which approves bidding procedures in connection with an auction of the Assets and the Sale Notice, sets a Sale Hearing to consider approval of the Sale, and approves related

---

[3] This section of the Motion is intended to provide general descriptions of the Assets.  Parties are strongly encouraged to contact Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington, DC 20006 (Attn: Gene S. Weil) Telephone: (202) 367-3000, to obtain more detailed information regarding the Assets.

7

relief. In addition, the Debtors seek entry of the Sale Order, which authorizes and approves the

Sale and grants related relief.

## THE SALE PROCEDURES, THE SALE HEARING AND NOTICE THEREOF

A.    The Sale Procedures

        19.    To obtain the highest and/or best offer for the Assets, the Debtors believe

that it is in the best interests of their estates and creditors to attempt to sell all or portions of the

Assets to the highest and/or best bidder(s) through an orderly, but expedited sale process and if

necessary, an auction. To that end, the Debtors propose the following Sale Procedures:[4]

    i.    Notice: The Debtors, in consultation with their advisors, have developed a
list of parties (each, individually, a "Contact Party", and collectively, the
"Contact Parties") whom the Debtors believe may potentially be
interested in and whom the Debtors reasonably believe would have the
financial resources to consummate a purchase of the Assets.

        Within seven (7) days of the entry of the Procedures Order, the Debtors
and their advisors will send notice of the proposed Sale, the process for
obtaining diligence materials, the process for qualifying as a bidder, the
due date for bids and the proposed time and date of the Auction (as
defined below) to Contact Parties and other parties in interest and
prospects that have or may be identified as potential bidders for the
Assets. Within ten (10) The Debtors will also publish notice of the
proposed sale and bidding procedures in the Wall Street Journal (National
Edition).

    ii.    Access to Information: Information relevant to the Assets for evaluation
by interested parties, including certain books and records, material
contracts, and other financial information for due diligence investigation,
will be made available to bidders who have executed a valid nondisclosure
agreement. To obtain a copy of a non-disclosure agreement, contact
Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington,
DC 20006 (Attn: Gene S. Weil) Telephone: (202) 367-3000. Specific
information for accessing the information will be provided after execution
of such agreements. The diligence period will take place from August 9,
2007, through August 27, 2007. The Debtors will coordinate all

---

[4] This section of the Motion is intended as a summary of the Sale Procedures and is intended for information
purposes only. In the event there is a discrepancy between the summary and the Sale Procedures, the Sale
Procedures shall control. Parties are strongly encouraged to read the Sale Procedures in full, a copy of which is
attached as Exhibit B.

reasonable requests for additional information and due diligence access from Qualified Bidders.

iii.  .  Bid Deadline: All Bids (as defined below) must be submitted in writing so that they are **actually** received no later than 12:00 NOON (Eastern time) on **August 29, 2007** (the "Bid Deadline"). Each Qualified Bidder (as defined below) must deliver copies of its Bid to: (a) Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington, DC 20006 (Attn: Gene S. Weil) Telephone: (202) 367-3000, **with copies to:** (i) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attention: Alan Horn, General Counsel), and (ii) Young, Conaway, Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391 (Attention: James L. Patton, Jr.), counsel to the Debtors; (b) counsel to the Official Committee of Unsecured Creditors, if appointed (the "Committee"); (c) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; and (d) counsel to the Debtors' post-petition lenders (the "DIP Lender").

Interested bidders requesting information about the qualification process, including a form asset purchase agreement, and information in connection with their due diligence, should contact Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington, DC 20006 (Attn: Gene S. Weil) Telephone: (202) 367-3000.

iv.  Bid Requirements: Formal, binding, unconditional bids (each, a "Bid") must contain: (a) an executed "clean" version of a sale agreement acceptable to the Debtors, together with a blackline to reflect the changes from the form sale agreement provided by the Debtors; (b) a letter setting forth the identity of the bidder (including an authorized representative thereof), such bidder's counsel, and contact information for such bidder, its authorized representative and its counsel; (c) a proposal to purchase all or portions[5] of the Assets, including specific detailed descriptions of the Assets to be purchased and the Contracts to be purchased, assumed and assigned, whether in a separate transaction or series of transactions, (d) written evidence of a commitment for financing or other evidence of the bidder's financial ability to consummate the sale (in a form satisfactory to the Debtors in their discretion); (e) written

---

[5] To be a Qualified Bid (as defined herein) for one or more portions of the Assets, Bids must be submitted based on and grouped according to one of the following: (a)(i) all loans associated with a Warehouse Lender's loan facility; or (ii) all of the performing, non-performing, or "scratch and dent", if applicable, loans associated with a Warehouse Lender's loan facility; (b) all loans associated with all Warehouse Lenders' loan facilities; or (c) all of the Debtors' mortgage-backed residual interests in one or more securitization trusts. In the event a bidder wishes to submit a Bid or Bids for more than one, but not all, Warehouse Lender's loans (or all performing, non-performing, and/or "scratch and dent", if applicable, loans of more than one Warehouse Lender's loan facility), such bidders should submit separate Bids in accordance with (a)(i) and (ii) above.

9

acknowledgement that such bid is unconditional and not contingent upon any event, including, without limitation, any due diligence investigation, the receipt of financing or any further bidding approval; (f) written evidence that the bidder has the requisite corporate or similar authority to consummate the investment or sale; (g) written acknowledgement that such proposal is irrevocable until the earlier of (1) twenty (20) days after the Sale Hearing and (2) the effective date of a transaction implementing the Successful Bid (as defined herein); (h) an earnest money deposit in the amount of 10% of the bid (each a "<u>Good Faith Deposit</u>"); (i) written evidence of its ability to provide adequate assurance of future performance with respect to unexpired leases, license agreements and executory contracts; and (j) such other information as the Debtors may request.  Bids that contain the foregoing shall be "<u>Qualified Bids</u>."  Persons that comply with the foregoing shall be "<u>Qualified Bidders</u>."

v.    <u>Objections to the Sale and the Sale Hearing</u>:  Objections to any relief requested by this Motion, except objections relating to the adequate assurance of future performance of any executory contracts or unexpired leases to be assumed and assigned under section 365 of the Bankruptcy Code, shall be set forth in writing and state with particularity the grounds for such objections or other statements of position and shall be electronically filed with the Bankruptcy Court by no later than **4:00 p.m. (ET)]** at least five (5) business days prior to the Sale Hearing (as defined below) and served so as to be received by such date and time upon (a) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attention:  Alan Horn, General Counsel), (b) Young, Conaway, Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391 (Attention:  James L. Patton, Jr.), counsel to the Debtors; (c) counsel to the Committee; (d) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (e) counsel to the DIP Lender; and (f) all parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. L.R. 2002-1(b).  Objections relating solely to the adequate assurance of future performance of any executory contracts or unexpired leases to be assumed and assigned under section 365 of the Bankruptcy Code shall may be made up until the Sale Hearing (as defined below).  A hearing to approve the relief requested in the Sale Motion (the "<u>Sale Hearing</u>") will be held before the Bankruptcy Court on **September 10, 2007**.

vi.   <u>Supplements to the Motion</u>:  The Debtors will supplement this Motion with a copy of any executed definitive agreements entered into by the Debtors with respect to any Bid; *provided, however,* that any such definitive agreement shall remain subject to the Auction and approval procedures set forth herein.

10

vii.    Auctions:  If more than one Qualified Bid has been received by the
Debtors, the Debtors will conduct an auction (the "Auction").  The
Auction will take place on **September 5, 2007** at the offices of Young
Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West
Street, 17th Floor, Wilmington, Delaware 19801 at 10:00 a.m. (ET) or such
later time or other place as the Debtors shall notify the Qualified Bidders.
The Debtors reserve the right to hold more than one Auction in the event
there is more than one Qualified Bid and such Qualified Bids are for all or
portions of the Assets.  In the event there is more than one Auction, the
Debtors will provide appropriate notice to each of the Qualified Bidders of
the dates, times, and places for each Auction and the portions of the Assets
to be sold at each Auction.

viii.    Auction Procedures:  Only Qualified Bidders who have submitted
Qualified Bids will be eligible to participate at the Auction.  Only the
authorized representatives of each of the Qualified Bidders, counsel to the
Committee, counsel to the DIP Lender, counsel to the counsel to Bank of
America, N.A., as Administrative Agent for the lenders under that certain
Credit Agreement dated August 30, 2004, and the Debtors shall be
permitted to attend the Auction.  At the Auction, Qualified Bidders will be
permitted to increase their bids.  The bidding at the Auction shall start at
the purchase price (in the event the Debtors enter into a stalking horse
agreement and an expenses reimbursement and/or break-up fee were
approved, the purchase price shall include the break-up fee and the
expense reimbursement) stated in the and/or best Qualified Bid as
disclosed to all Qualified Bidders prior to commencement of the Auction,
and continue in increments to be determined by the Debtors, in their
business judgment.  In the event the Debtors enter into a Stalking Horse
Agreement, the Qualified Bidder who is the party to such agreement shall
be entitled, in its sole and absolute discretion, to credit bid the amount of
any Court approved break-up fee and expense reimbursement in
connection with any revised offer.  The highest and/or best Qualified Bid
shall be determined by the Debtors in their discretion.

Based upon the terms of the Qualified Bids submitted by the Qualified
Bidders, and such other information as the Debtors determine is relevant,
the Debtors may conduct the Auction in the manner they determine will
maximize the value of their estates.  The Debtors may, but are not
obligated to, announce the principal terms and conditions of or provide
copies of each Qualified Bid submitted by the Qualified Bidders to the
other Qualified Bidders at the Auction.  The Debtors may, but are not
obligated to, from time to time, and in an open forum, advise the Qualified
Bidders of their determination as to the terms of the then highest and/or
best Qualified Bid.  Unless otherwise agreed to by the Debtors, in their
discretion, no Qualified Bidder will be permitted more than one-half hour
to respond to the previous bid at Auction and, at the expiration of such
time (unless extended), the Auction shall conclude.  Any bid submitted

11

066585.1001

after the conclusion of the Auction shall not be considered for any purpose.

ix.     Successful Bid: After completion of the Auction, the Debtors will receive and consider the Qualified Bids (as increased at the Auction). The Debtors will: (a) review each Qualified Bid, as each may be modified at the Auction, on the basis of, among other things, the following: (i) the amount of the proposed purchase price; (ii) the valuation of the Assets; (iii) the ability to close the transaction; (iv) the other contractual terms included in the proposal; (v) the speed and certainty of consummating the transaction; and (b) identify the highest and/or best Qualified Bid (the "Successful Bid") and the bidder making such Bid (the "Successful Bidder") and the next highest and/or best Qualified Bid (the "Second Best Bid") and the bidder making such Bid (the "Second Best Bidder"). The Debtors shall have the right to reject any and all Bids.

x.     Sale Hearing: At the Sale Hearing, the Debtors will present to the Bankruptcy Court for approval both the Successful Bid and the Second Best Bid. Subject to Court approval, the Debtors will effect the Sale with the Successful Bidder. If, for any reason, the Successful Bidder fails to close the Sale contemplated by its Successful Bid, then, without notice to any other party or further Court order, the Debtors shall be authorized to close with the Qualified Bidder that submitted the Second Best Bid.

xi.     Acceptance of the Sale: The Debtors shall have accepted a Qualified Bid only when (i) the Bid is declared the Successful Bid, (ii) the Bankruptcy Court has approved the Successful Bid and an order approving such Bid has been docketed, (iii) definitive documentation has been executed in respect thereof; and (iv) the Sale closes.

xii.     Reservation of Rights: The Debtors reserve the right, as they may determine to be in the best interests of their estates, to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and/or best proposal and which is the next highest and/or best proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Procedures Order or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) enter into one or more stalking horse agreements and seek Court approval of expense reimbursements and/or break-up fees; (vi) waive terms and conditions set forth herein with respect to any or all potential bidders, (vii) impose additional terms and conditions with respect to any or all potential bidders, (viii) extend the deadlines set forth herein, (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) remove some or all of the Assets from the Auction, and (xi) modify the Sale Procedures as they may determine to be in the best interests of their estates or to withdraw the Sale Motion at any

12

time with or without prejudice. Without limiting the generality of the foregoing, the Debtors may determine to (i) distribute or not distribute copies of other Qualified Bids to other Qualified Bidders prior to or during the Auction or (ii) proceed with sealed bidding.

xiii.   Return of Good Faith Deposits: Except as otherwise provided in this paragraph with respect to the Successful Bidder and the Second Best Bidder, the Good Faith Deposits of all Qualified Bidders required to submit such a deposit under the Sale Procedures shall be returned upon or within five (5) business days after entry of the Sale Order. The Good Faith Deposit of the Successful Bidder shall be held until the closing of a Sale and applied in accordance with the Successful Bid. The Good Faith Deposit of the Second Best Bidder shall be retained in escrow until 48 hours after the closing of a Sale. Pending their return, the Good Faith Deposit of the Successful Bidder and the Second Best Bidder shall be maintained in an escrow account. If a closing does not occur, the disposition of Good Faith Deposits shall be as provided in the Successful Bid and Second Best Bid, as applicable.

B.    The Sale Hearing

20.    As set forth in the Sale Procedures, the Debtors are requesting that the Sale Hearing be held in thirty-five (35) days notice. At the Sale Hearing, the Debtors will seek entry of the Sale Order authorizing and approving the Sale to the highest and/or best bidder. The Debtors are fully aware that the in-court sale process they are proposing is aggressively timed, but for the reasons set forth herein, the Debtors believe that the process is reasonable and necessary.

21.    The Debtors further request, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (c) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware the "Bankruptcy Court"), 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, by 4:00 p.m. (ET) at least five (5) days prior to the Sale Hearing; and (d) be served so as to be received by such date and time on: so as to be received by such date

066585.1001

and time upon:  (a) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville,

New York 11747 (Attention:  Alan Horn, General Counsel), (b) Young, Conaway, Stargatt &

Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington,

DE 19899-0391 (Attention:  James L. Patton, Jr.), counsel to the Debtors; (c) counsel to the

Committee; (d) counsel to Bank of America, N.A., as Administrative Agent for the lenders under

that certain Credit Agreement dated August 30, 2004; (e) counsel to the DIP Lender; and (f) all

parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. L.R.

2002-1(b).

C.    Notice of the Sale Hearing

        22.    The Debtors intend to provide notice of the Sale Hearing through service

by mail of the Sale and Publication Notice attached as Exhibit A to the following:

| | |
|---|---|
| i. | the Office of the United States Trustee for the District of Delaware; |
| ii. | the Debtors' forty (40) largest unsecured creditors on a consolidated basis; |
| iii. | all creditors or potential creditors of the Debtors listed on the Debtors' books and records; |
| iv. | entities known to the Debtors to possess and/or exercise any control over any of the Assets to be sold; |
| v. | entities known to the Debtors to assert any rights in any of the Assets; |
| vi. | non-debtor parties to the Contracts; |
| vii. | all other entities which the Debtors believe may have a claim against the Debtors' estates; |
| viii. | all applicable federal, state and local tax authorities with jurisdiction over the Debtors and/or the Assets; |

066585.1001

ix.     all federal, state and local environmental authorities in
jurisdictions in which the Debtors operate and/or in which the
Assets are located;

x.      the attorney generals for all fifty States;

xi.     the Internal Revenue Service, the Securities and Exchange
Commission and the Environmental Protection Agency;

xii.    any known party which has expressed a *bona fide* interest in
writing to the Debtors regarding any purchase of the Assets;

xiii.   the counsel to Bank of America, N.A., as Administrative Agent
for the lenders under that certain Credit Agreement dated
August 30, 2004 and the DIP Lender; and

xiv.    all entities who have filed requests for notice in these chapter
11 cases.

23.     Further, the Debtors intend to publish the Sale and Publication Notice

attached as Exhibit A in the national edition of *The Wall Street Journal* within ten (10) days of

entry of the Procedures Order.

## ASSUMPTION AND ASSIGNMENT AND NOTICE OF PROPOSED CURE PAYMENTS

24.     In connection with the Sale, the Debtors may sell, assume, and assign to

certain Contracts.  To facilitate the Sale and the sale, assumption, and assignment of the

Contracts, the Debtors propose to serve on all non-debtor parties to the Contracts the Cure Notice

attached as Exhibit C after entry of the Procedures Order. The Debtors will attach to the Cure

Notice their calculation of the proposed cure payment (each a "Proposed Cure Payment" and,

collectively, the "Proposed Cure Payments") with respect to each of the Contracts.

25.     The Debtors request that each non-debtor party to a Contract who wishes

to file an objection (a "Cure Payment Objection") to its Proposed Cure Payment be required to

do so on or before 4:00 p.m. (Eastern Time) five (5) days prior to the Sale Hearing (the "Cure

Objection Deadline") and serve a copy of the Cure Payment Objection, so as to be received no

15

later than 4:00 p.m. (Easter Time) on the same day, upon the following parties: (a) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attention: Alan Horn, General Counsel), (b) Young, Conaway, Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391 (Attention: James L. Patton, Jr.), counsel to the Debtors; (c) counsel to the Committee; (d) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (e) counsel to the DIP Lender; and (f) all parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. L.R. 2002-1(b).

26.    In the event a non-debtor party to a Contract fails to timely file and serve a Cure Payment Objection prior to the Cure Objection Deadline, such non-debtor party shall be forever barred and estopped (i) from objecting to the Proposed Cure Payment and from asserting any additional cure or other amounts with respect to such Contract and the Debtors shall be entitled to rely solely upon the Proposed Cure Payment, and (ii) from asserting or claiming against the Debtors, any other prevailing bidder, or any other assignee of the Contract that any additional amounts are due or defaults exist.

27.    In the event that a Cure Payment Objection is timely filed, the Cure Payment Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the Proposed Cure Payment. After receipt of the Cure Payment Objection, the Debtors will attempt to reconcile any differences in the Proposed Cure Payment believed by the non-debtor party to exist. However, if the Debtors and the non-debtor party cannot consensually resolve the Cure Payment Objection, the Cure Payment Objection shall be heard, to the extent practicable, at the Sale Hearing. The Debtors may, in their sole discretion, seek authority to

066585.1001

assume and assign the underlying Contract at the Sale Hearing and continue adjudication on the related Cure Payment Objection to a separate hearing following the Sale Hearing.

28.    The Debtors further propose that all objections to adequate assurance of future performance of a Contract by the Successful Bidder or Second Best Bidder be made at or prior to the Sale Hearing (each an "Adequate Assurance Objection").  In the event a non-debtor party to a Contract fails to timely make or file an Adequate Assurance Objection, such non-debtor party shall be deemed to have consented to the sale, assumption, and assignment of such Contract and shall be forever barred and estopped from asserting or claiming against the Debtors, any prevailing bidder, or any other assignee of the Contract that any conditions to assumption and assignment must be satisfied under such Contract.

### BASIS FOR RELIEF REQUESTED

A.    The Sale Procedures are Necessary and Appropriate to the Sale.

29.    Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he [debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Read together, these two sections of the Bankruptcy Code authorize a court, in connection with approving a sale, to issue orders that are either necessary or appropriate to a sale. *See In re E.Spire Communs., Inc.*, 2002 Bankr. LEXIS 1934 (Bankr. D. Del. Apr. 22, 2002) (approving bid procedures pursuant to sections 105 and 363 of the Bankruptcy Code).

30.    The Debtors desire to receive the greatest values for the Assets and the Sale Procedures were developed to achieve that goal.  The Debtors believe the Sale Procedures balance the need to expedite the sale process with the objective of promoting active bidding that

17

will result in the highest and/or best offer the marketplace can sustain for the Assets. The Sale Procedures also reflect the Debtors' objective of conducting the Auction in a controlled, but fair and open fashion that promotes interest in the assets by financially-capable, motivated bidders who are likely to close a transaction, while simultaneously discouraging non-serious offers and offers from persons the Debtors do not believe are sufficiently capable or likely to actually consummate a transaction.

31.    Consequently, the Debtors respectfully submit that granting the requested relief is "necessary" and "appropriate" under the circumstances and will greatly assist the Sale.

B.    The Date of the Sale Hearing, Notice thereof and Objections to the Sale Comply with the Applicable Provisions of the Bankruptcy Rules and are Necessary to the Sale Process.

32.    As set forth above, the timing of the proposed Sale is expedited; however, the applicable Bankruptcy Rules support the proposed timeframe within which the Debtors seek approval of the Sale. Bankruptcy Rule 6004 provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with [section] 363(b)(2) of the [Bankruptcy Code]." Fed. R. Bankr. P. 6004(a). Subsections (a)(2), (c)(1), (i) and (k) of Bankruptcy Rule 2002, read together, require the Debtors to give all creditors and certain other parties "at least 20 days' notice by mail" of the sale of the assets and the time and place of the auction. Fed. R. Bankr. P. 2002(a)(2), (c)(1), (i) and (k). Where a debtor provides notice of a sale in accordance with Bankruptcy Rule 6004(a) (including Bankruptcy Rule 2002), objections to the proposed sale are required to be filed and served not later than five (5) days prior to the hearing to consider approval of the sale. Fed. R. Bankr. P. 6004(b).

33.    The process requested by the Debtors is within the notice procedures mandated by the Bankruptcy Rules, as the Debtors are proposing to provide the required twenty

(20) days' notice to all creditors (or potential creditors) and other parties in interest, the Sale

Notice includes, among other information, the time and date of the auction, and the Debtors have

fixed the objection deadline as five (5) days prior to the Sale Hearing.  Moreover, and perhaps

most significantly, the proposed time-frame for the Sale is necessary to obtain the maximum

recovery for creditors.  To the extent the Debtors' warehouse lenders have rights under valid

repurchase agreements, they may have the right to sell the mortgage loans financed by the

repurchase agreements and offset the proceeds of such sales against amounts owed by the

Debtors, thereby depriving the Debtors the ability to sell the loans in a manner designed to yield

the highest value.  Finally, the proposed process is also necessary because the Debtors' current

financial and liquidity crisis does not allow for any other process.

C.      Sale, Assumption, and Assignment of the Contracts is Authorized by Sections 363 and
        365 of the Bankruptcy Code

        34.      Under section 363 of the Bankruptcy Code, a debtor may seek to sell

executory contracts and unexpired leases; however, the debtor must still comply with the

requirements of section 365 of the Bankruptcy Code relating to assumption and assignment.  The

*Shaw Group, Inc. v. Bechtel Jacobs Co., LLC (In re The IT Group, Inc.)*, 350 B.R. 166 (Bankr.

D. Del. 2006).  Assumption and assignment or rejection of certain unexpired leases, license

agreements and executory contracts will likely be an integral part of any proposed sale of the

Assets and should be approved by the Court.  Section 365(a) of the Bankruptcy Code authorizes

a debtor in possession to assume an executory contract or unexpired lease subject to the

bankruptcy court's approval.  11 U.S.C. § 365(a).[6]  Section 365(b) of the Bankruptcy Code

---

[6] Section 365(a) of the Bankruptcy Code provides:

> (a)  Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

19

requires a debtor in possession to satisfy certain requirements at the time of assumption if a

default exists under the subject contract, lease or agreement to be assumed.  11 U.S.C. § 365(b).[7]

36. In this circuit, courts apply the business judgment rule to determine

whether an executory contract or unexpired lease should be assumed. *E.g., Sharon Steel corp. v.*

*National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *see*

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing the business judgment test as

the "traditional" test); *In re III Enterprises, Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994)

(citations omitted) ("Generally, a court will give great deference to a debtor's decision to assume

or reject the contract.  A debtor need only show that its decision to assume or reject the contract

is an exercise of sound business judgment- - a standard which we have concluded many times is

not difficult to meet.").

36. At the Sale Hearing, the Debtors and the Successful Bidder and the

Second Best Bidder will submit evidence to establish that adequate business justifications exist

to warrant judicial approval of the Debtors' proposed assumptions and the Successful Bidder and

the Second Best Bidder will provide evidence to establish adequate assurance of future

performance sufficient to warrant assignment. *See Carlisle Homes. Inc. v. Azzari (In re Carlisle*

*Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (holding that the meaning of "adequate

assurance of future performance" depends on the facts and circumstances of each case, but

should be given "practical, pragmatic construction."); *In re Bygaph, Inc.*, 56 B.R. 596, 605-06

---

[7]  Section 365(b) of the Bankruptcy Code states, in relevant part:

      (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee
            may not assume such contract or lease unless, at the time of assumption of such contract or lease,
            the trustee - -
          (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
          (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a
              party other than the debtor to such contract or lease, for any actual pecuniary loss to such
              party resulting from such default; and

(Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the

prospective assignee of a lease from the debtors has the financial resources and has expressed a

willingness to devote sufficient funding to the business in order to give it a strong likelihood of

succeeding; "chief determinant of adequate assurance of future performance is whether rent will

be paid").

37.    Based on the foregoing, the Debtors respectfully request that the Court

approve the assumption and assignment of the Contracts.

D.    The Proposed Sale Should be Approved

  1.    *The Proposed Sale is an Exercise of Sound Business Judgment*

38.    The Debtors submit that ample authority exists for the approval of the

proposed Sale of the Assets to the highest and/or best Qualified Bidder pursuant to the

Agreement.  Section 363 of the Bankruptcy Code, which authorizes a debtor to sell assets of the

estate free and clear of all interests, including liens, claims, and encumbrances, provides, in

relevant part, as follows:

> (b)(1)  The [debtor in possession], after notice and a
> hearing, may use, sell or lease, other than in the ordinary course of
> business, property of the estate.
>
>           *       *       *
>
> (f)    The trustee may sell property under subsection (b)
> or (c) of this section free and clear of any interest in such property
> of an entity other than the estate, only if -
>
> (1)    applicable nonbankruptcy law permits sale of
> such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such
> property is to be sold is greater than the aggregate value of
> all liens on such property;
>
> (4)    such interest is in bona fide dispute; or

---

(C) provides adequate assurance of future performance under such contract or lease.

21

(5)    such entity could be compelled, in a legal or
equitable proceeding to accept a money satisfaction of such
interest.

11 U.S.C. § 363(b)(1), (f). Section 105(a) of the Bankruptcy Code provides that the Court "may

issue any order, process or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a).

39.    Although section 363 of the Bankruptcy Code does not set forth a standard

for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's

assets, courts have uniformly held that approval of a proposed sale of property pursuant to

section 363(b) of the Bankruptcy Code is appropriate if the transaction represents the reasonable

business judgment of the debtor. *See, e.g., In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d

Cir. 1996) (inferring that a sale of a debtor's assets should be authorized pursuant to section 363

of the Bankruptcy Code where the transaction represents an exercise of the debtor's sound

business judgment); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*,

722 F.2d 1063 (2d Cir. 1983); *Stephens Industries. Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir.

1986); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the

elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed

sale is fair and equitable, that there is a good business reason for completing the sale and the

transaction is in good faith."); *In re Delaware & Hudson Rv. Co.*, 124 B.R. 169,176 (D. Del.

1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the

preconfirmation sale of assets); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147,153 (D.

Del. 1999); *In re Delaware & Hudson Rv. Co.*, 124 B.R. 169,176 (D. Del. 1991); *In re Trans

World Airlines. Inc.*, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

40.    Courts typically consider the following factors in determining whether a

proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale,

22

(b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith. *See Delaware & Hudson Rv.*, 124 B.R. at 176; *Phoenix Steel*, 82 B.R. at 335-36; *In re United Healthcare Svs., Inc.*, 1997 U.S. Dist LEXIS 5090, at * 13-14 and n.2 (D. N.J. Mar. 26, 1997).

41.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See, e.g., In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143 (3d Cir. 1986); *Lionel*, 722 F.2d 1063. In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores. Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124,130 (Bankr. N.D. Ga. 1988)).

42.    Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See In re Montgomery Ward Holding Corp.*, Case No. 97-1409 (PJW) (Bankr. D. Del. Aug, 6, 1997); *In re Fruehauf Trailer Corp.*, Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26,1997); *Integrated Resources*, 147 B.R, at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network. Inc.*, 126 B.R. 152,156 (Bankr. S.D.N.Y. 1991), ("court-imposed

rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

43.    The facts described above, which require a prompt sale of the Assets to preserve value for these estates, are entirely consistent with the longstanding rationale for authorizing a sale outside of a chapter 11 plan. *See Lionel*, 722 F.2d 1063; *Financial. Associates v. Loeffler (In re Equity Funding Corporation, of America)*, 492 F.2d 793, 794 (9th Cir. 1974) ("Other circuits have recognized the power of the bankruptcy court under Chapter X to authorize a sale of the debtor's property under less than emergency conditions where such sale is necessary to avoid deterioration in the value of the assets." (citations omitted)).  Indeed, in view of the Debtors' liquidity crisis and the nature of the Assets to be sold, the Debtors believe that maximum value for their Assets will be obtained through a prompt sale.

44.    Accordingly, the Debtors have articulated a sound business justification for the Sale and this Court should approve the Sale pursuant to section 363 of the Bankruptcy Code.

2.    *The Sale Should be Approved Free and Clear of all Interests*

45.    The Debtors further submit that it is appropriate to sell the Purchased Assets free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code, with any such Interests attaching to the net sale proceeds of the Purchased Assets to the extent applicable.

46.    Bankruptcy Code Section 363(f) authorizes a debtor to sell assets free of any interest if (i) applicable nonbankruptcy law permits sale of such property free and clear of such interests, (ii) such entity consents, (iii) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property, (iv) such interest is in *bona fide* dispute (v) or such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

DB02:6159336.3                                                                066585.1001

47.    Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) of the Bankruptcy Code is met).

48.    The Debtors believe that one or more of the tests of section 363(f) of the Bankruptcy Code are easily satisfied with respect to any Sale involving the Assets. In particular, the Debtors believe that any lienholder will be adequately protected by having their Interests, if any, attach to the cash proceeds ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

49.    Although section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000). In *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in

25

property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property." *Id.* at 289.[8]

3.    *Good Faith Under Section 363 of the Bankruptcy Code*

50.    In order to approve a sale under section 363(b) of the Bankruptcy Code, a bankruptcy court "is required to make a finding with respect to the 'good faith' of the purchaser." *E.g.*, *In re Abbotts Dairies*, 788 F.2d at 149-150. At the Sale Hearing, the Debtors will submit evidence to support a "good faith" finding.

4.    *Section 363(m) of the Bankruptcy Code*

51.    Section 363(m) provides that the later reversal or modification of a sale does not disturb the validity of the sale, so long as the purchaser is a good faith purchaser for value. *See* 11 U.S.C. § 363(m); *see also In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986) ("Courts applying section 363(m) (and its predecessor, Fed. R. Bankr. P. 805) have . . . turned to traditional equitable principles, holding that the phrase encompasses one who purchases in 'good faith' and for value.'"); *In re Bel Air Assocs.*, 706 F.2d 301, 305 (10th Cir. 1983); *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978). Where the terms of a sale represent substantial value to the debtors' estates, courts conclude that the sale represents fair and reasonable consideration. *See Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir.1991) (discussing reasonably equivalent value under the Bankruptcy Code), *cert. denied*, 503 U.S. 937 (1992); *see also In re China Resource Prod. Ltd. v. Fayda Int'l, Inc.*, 856 F. Supp. 856, 866 (D. Del. 1994) (discussing fair consideration under Delaware law). As such, the

---

[8] Even courts concluding that section 363(f) of the Bankruptcy Code does not empower them to convey assets free and clear of claims nevertheless find that Bankruptcy Code section 105(a) provides such authority. *See In re White Motor Credit Com.*, 75 B.R. 944, 948 (Bankr. N.D Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of title 11).

066585.1001

Debtors will present evidence at the Sale Hearing in support of a finding that the Successful

Bidder and the Second Best Bidders are good faith purchasers for value.

E.    The Court Should Eliminate or Reduce the 10-Day Stay Under Bankruptcy Rule 6004(g)

        52.    Pursuant to Bankruptcy Rule 6004(g), unless the court orders otherwise,

all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are

automatically stayed for ten (10) days after entry of the order. Fed. R. Bankr. P. 6004(g).

Although Bankruptcy Rule 6004(g) and the Advisory Committee Notes are silent as to when a

court should "order otherwise" and eliminate or reduce the ten (10) day stay period, *Collier on*

*Bankruptcy* suggests that the ten (10) day stay period should be eliminated to allow a sale or

other transaction to close immediately "where there has been no objection to the procedure." 10

*Collier on Bankruptcy* ¶ 6004. 10 (15th ed., rev. 2006).  Furthermore, if an objection to a sale is

filed and overruled, *Collier on  Bankruptcy* provides that if the objecting party informs the court

of its intent to appeal, the stay may be reduced to the amount of time necessary to file such

appeal. *Id.*

        53.    The Debtors respectfully submit that it is in the best interests of their

estates to close this Sale as soon as possible after all closing conditions have been met or waived.

Accordingly, the Debtors hereby request that the Court eliminate or reduce the ten day stay

period under Bankruptcy Rule 6004(g).

**NOTICE**

        54.    Notice of this Motion has been provided to the following parties: (i) the

Office of the United States Trustee for the District of Delaware; (ii) the Debtors' forty (40)

largest unsecured creditors on a consolidated basis; (iii) counsel to Bank of America, N.A., as

Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004;

(iv) counsel to the DIP Lender; (v) all parties who are known to possess or assert a secured claim

066585.1001

against any of the Assets; (vi) the Securities and Exchange Commission; (vii) any known party which has expressed a *bona fide* interest in writing to the Debtors regarding any purchase of the Assets; (viii) all entities entitled to notice pursuant to Del. Bankr. L.R. 9013-1(m); and (ix) all entities who have filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief sought herein, the Debtors respectfully request that this Court determine that such notice is reasonable and proper under the circumstances.

DB02:6159336.3

066585.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court approve the relief requested herein and grant the Debtors such other and further relief as this Court may deem just and proper.

Dated:    Wilmington, Delaware
          August 6, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
Ian S. Fredericks (No. 4626)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for Debtors and
Debtors in Possession

DB02:6159336.3                                              066585.1001