IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------  x
In re:                                              :   Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                              :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,¹   :
                                                    :   Joint Administration Pending
                        Debtors.                    :
-------------------------------------------------  x
```

## MOTION OF THE DEBTORS PURSUANT TO
## SECTIONS 105(a), 361, 362, 363, 364, AND 552 OF THE BANKRUPTCY CODE AND
## BANKRUPTCY RULE 4001(b) FOR ENTRY OF INTERIM AND FINAL ORDERS (A)
## AUTHORIZING LIMITED USE OF CASH COLLATERAL IN CONNECTION WITH
## OPERATING THE SERVICING BUSINESS; (B) GRANTING ADEQUATE
## PROTECTION; AND (C) SCHEDULING A FINAL HEARING ON THE MOTION

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors") hereby move

for the entry of (i) an interim order, substantially in the form of Exhibit A hereto (the "Interim

Order") (a) authorizing the Debtors, pursuant to sections 105(a), 361, 362, 363, 364 and 552 of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), limited use of Cash Collateral in connection with operating the

---

¹       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a
Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland
corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267);
American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage
Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services,
Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York
corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except
for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Debtors' loan servicing business (the "Servicing Business"), (b) granting and affirming the

adequate protection given to the Lenders (as defined below), and (c) scheduling a final hearing

on this motion (the "Final Hearing") and (ii) a final order (the "Final Order") on substantially the

same terms as the Interim Order.  In support of this motion (the "Motion"), the Debtors

respectfully represent as follows:

<b><u>STATUS OF THE CASE AND JURISDICTION</u></b>

1.      On the date hereof (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      No request has been made for the appointment of a trustee or examiner

and no official committee has yet been established in this case.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief

sought herein are sections 105(a), 361, 362, 363, 364 and 552 of the Bankruptcy Code,

Bankruptcy Rule 4001(b) and Local Rule 4001-2.

<b><u>BACKGROUND OF THE DEBTORS</u></b>[2]

I.      **The Debtors**

4.      Prior to the Petition Date the Debtors' business primarily entailed the

origination, servicing and sale of mortgage loans as well as investment in mortgage-backed

securities and mortgage loans resulting from the securitization of residential mortgage loans.

---

[2]      Detailed information regarding the Debtors, their businesses, their debt structure, and the events leading to
their chapter 11 filing is set forth in the Declaration of Michael Strauss in Support of the Debtors' Chapter 11
Petitions and First Day Relief [Docket No. 2].

066585.1001

Collectively, the Debtors, prior to August 3, 2007, employed over 7,500 people and constituted one of the largest mortgage bankers in the country.

## II.    The Debtors' Credit Facility with Bank of America

5.    One of the Debtors financing instruments is a credit facility with Bank of America, N.A. (the "Administrative Agent"), as administrative agent, swing line lender and a lender and other lenders (collectively, the "Lenders"). Pursuant to a credit agreement dated August 10, 2006 (as amended and restated and together with all agreements, documents, notes and instruments delivered pursuant thereto or in connection therewith, the "Loan Agreement") by and between certain of the Debtors (the "Borrowers")[3] and the Lenders, the Lenders made various loans, advances and extensions of credit to or for the benefit of the Borrowers. The Loan Agreement includes a warehouse credit facility (the "Warehouse Facility"), a swing line credit facility (the "Swing Line Facility"), a working capital credit facility (the "Working Capital Facility"), and a servicing rights credit facility (the "Servicing Facility").

6.    The Lenders assert that the obligations under the Loan Agreement (the "Loan Agreement Obligations") are secured by security interests and liens (together, the "Liens") in certain of the Debtors' assets, as set forth in the security and collateral agency agreement, dated August 30, 2004 by and between the Borrowers and the Lenders (the "Security Agreement"), which include all Mortgage Loans[4]; all Warehouse-Related Mortgage Backed Securities; all rights of any of the Borrowers under all Take-Out Commitments, Hedging Arrangements and all rights to deliver Mortgage Loans and/or Warehouse-Related Mortgage

---

[3]    The Borrowers are American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc., American Home Mortgage Servicing, Inc. and American Home Mortgage Corp. Additionally, American Home Mortgage Holdings Inc. is a guarantor under the Loan Agreement

[4]    All capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Security Agreement.

066585.1001

Backed Securities; all accounts maintained with broker-dealers by any Borrower for the purpose

of carrying out transactions under Take-Out Commitments and hedge contracts and other futures

and futures options transactions involving Mortgage Loans and/or Warehouse-Related Mortgage

Backed Securities; all rights to service, administer and/or collect Mortgage Loans; all Servicing

Rights; all Servicing Receivables; all accounts, escrow accounts, contract rights and general

intangibles constituting or relating to any of the foregoing; all files, documents, instruments,

surveys, certificates, correspondence, appraisals, computer programs, tapes, discs, cards,

accounting records and other books, records, information and data of the Borrowers relating to

the foregoing; the Funding Account, the Settlement Account, the Mortgage Backed Securities

Safekeeping Account, and any and all Custodian Settlement Accounts and any and all funds at

any time held in any such accounts (collectively, the "Prepetition Collateral"), and all proceeds

and products derived from the Prepetition Collateral.  More specifically and pertinent to the

relief sought by this Motion, the Lenders assert first priority security interests and liens in all the

assets of the Debtors' Servicing Business and all proceeds and products derived therefrom.

  7.  As of the Petition Date, the approximate outstanding balances of the

facilities were: Warehouse Facility - $608,300,000; Swing Line Facility – no outstanding

balance; Working Capital Facility - $50,000,000; and Servicing Facility - $446,250,000.

## DEBTORS' REQUEST TO USE CASH COLLATERAL

  8.  It is essential to the Debtors' efforts to maintain the value of the Serving

Business while preparing for its sale that they obtain the authority to make use of the cash

derived from operating the Servicing Business claimed as collateral by the Lenders (the "Cash

Collateral").  The Cash Collateral will only be used to pay for expenses that are set forth in the

Cash Collateral Budget, which are related to operating the Servicing Business pending a sale of

  066585.1001

that business unit. Such expenses include, but are not limited to, employee payroll and other benefits, rent, proportional share of corporate overhead, servicing advances and other expenses related to operating the Servicing Business (collectively, "Budget Expenses"). The Debtors, with the assistance of their financial advisors, have prepared a budget (the "Cash Collateral Budget"),[5] that shows the Debtors' projected expenditures, during the period from the Petition Date to October 29, 2007 (the "Budget Period") and estimates the period in which such cash expenditures will either need to be paid or accrue. At this time, the Debtors anticipate that cash and receipts from operating the Servicing Business will be sufficient to satisfy the disbursements reflected in the Cash Collateral Budget.

9.    The reasons supporting the Debtors' need to use Cash Collateral during the course of the Debtors' cases are compelling. As the Debtors have extremely limited funds, use of Cash Collateral is required to fund the day-to-day operating expenses of the Servicing Business, including payments to remaining employees and sustaining the going concern value of the Servicing Business pending its sale. Use of Cash Collateral is also required to fund servicing advances required to be made by the Debtors pursuant to their servicing agreements. Unless this Court authorizes use of the Cash Collateral, the Debtors will be unable to fund servicing advances, pay for services and expenses necessary to preserve and maximize the value of the Debtors' Servicing Business. Indeed, absent sufficient funds to support the Servicing Business, the value of that asset will quickly erode. Therefore, authorization to use Cash Collateral pending the Final Hearing is in the best interests of the Debtors' estates and creditors.

---

[5]    A copy of the Cash Collateral Budget is attached as Schedule 1 to the proposed Interim Order.

066585.1001

10.     The Debtors and the Administrative Agent have reached an agreement (the "Agreement") with respect to the Debtors' use of Cash Collateral upon the terms and conditions set forth in the Interim Order and summarized below.[6]

11.     Pursuant to the Agreement, the Debtors' consensual use of the Cash Collateral is subject to the terms and conditions stated in the Interim Order, which include the following key provisions:

a.  In addition to all the existing security interests and liens granted to or for the benefit of the Pre-Petition Secured Parties, as adequate protection for any Collateral diminution, the Debtors will grant to the Administrative Agent for the ratable benefit of the Pre-Petition Secured Parties a security interest in and lien on the Pre-Petition Collateral and the proceeds, products, rents and profits thereof, senior to any other security interests or liens, subject only to valid, perfected and enforceable pre-petition liens (if any) which are senior to the Pre-Petition Secured Parties' liens or security interests as of the Petition Date;

b.  As additional adequate protection, the Debtors shall pay to the Administrative Agent all gross proceeds from a sale, lease or other disposition of the Collateral;

c.  As additional adequate protection, the Debtors shall pay the Administrative Agent all incurred but unpaid usual and customary fees, expenses and costs of the Pre-Petition Secured Parties, and the reasonable professional fees and expenses incurred by the Administrative Agent under the Credit Agreement arising prior to the Petition Date;

d.  Except as provided in the Interim Order, the security interests and liens granted to the Administrative Agent for the benefit of the Pre-Petition Secured Parties shall not be subordinated to or made pari passu with any lien or security interest under Section 364 of the Bankruptcy Code or otherwise;

e.  The Debtors shall not grant any junior liens on any Pre-Petition Collateral or the Collateral at any time and no Cash Collateral shall be used to pay administrative expenses payable under Sections 328, 330 and 331 of the Bankruptcy Code;

f.  The Debtors agree to furnish certain reports to the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent;

---

[6]     To the extent the Administrative Agent withdrawals its support for entry of the Interim Order, the Debtors reserve their right to move forward with their request for limited use of Cash Collateral on a contested basis and not be bound by the representations, terms or conditions summarized herein or set forth in the proposed Interim Order attached to this Motion.

066585.1001

g.  The Debtors' use of the Collateral shall terminate on the earliest to occur of: (a) September 7, 2007 (the "Expiration Date"); (b) the dismissal of the Cases or the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) the entry by this Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or the Pre-Petition Secured Parties with respect to the Pre-Petition Collateral or the Collateral without the written consent of the Administrative Agent; (d) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (e) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtors; (f) the failure by the Debtors to make any payment required pursuant to the Interim Order when due; (g) the failure by the  Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to the Interim Order when due or any such documents or other information shall contain a material misrepresentation; (h) the failure by the Debtors to observe or perform any of the material terms or material provisions contained in the Interim Order; (i) the entry of an order of this Court approving the terms of any debtor-in-possession financing for any of the Debtors which creates any liens with respect to any of the Pre-Petition Collateral or the Collateral at any time or that allows any party to seek to enforce, directly or indirectly, an administrative or priority claim in respect thereto unless and until all of the Indebtedness has been indefeasibly paid in full in cash; or (j) the entry of an order of this Court reversing, staying, vacating or otherwise modifying in any material respect the terms of the Interim Order; and

h.  Entry of the Interim Order shall be without prejudice to (i) the rights of the Pre-Petition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take another action in the Cases and to appear and be heard in any matter raised in these Cases, and (ii) any and all rights, remedies, claims and causes of action which the Administrative Agent or the Pre-Petition Secured Parties may have against any other party liable for the Indebtedness.

## RELIEF REQUESTED

12.  The Debtors seek: (a)  authority pursuant to sections 105(a), 361, 362, 363, 364 and 552 of the Bankruptcy Code for limited use of the Lenders' Cash Collateral pursuant to the terms of the Interim Order; (b) to grant to the Lenders adequate protection in respect of their interests in the Prepetition Collateral and for claims arising from the diminution of value of the Lenders' collateral from the Debtors' use of the Cash Collateral, and (c) a final hearing on this motion (the "Final Hearing").

7

13.    Federal Rule of Bankruptcy Procedure 4001(d) provides that the Court may fix the time within which objections to the approval of an agreement relating to cash collateral and adequate protection pursuant to section 363 of the Bankruptcy Code must be filed. In addition, the Court is empowered to conduct an expedited preliminary hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the debtor's estate.

## ARGUMENT

14.    The Lenders assert that all or virtually all of the Debtors' cash generated by the Servicing Business in the ordinary course of business constitutes cash collateral. The Debtors' use of the Cash Collateral is necessary to maintain the value of the Collateral related to the Servicing Business (the "Servicing Collateral") while consummating its sale. Absent the use of Cash Collateral, the Debtors will be unable to operate the Servicing Business in a manner necessary to maintain and maximize the value of such asset.

15.    Unless the Debtors have access to the Cash Collateral, the value of a portion the Lenders' Collateral -- the Servicing Business as a going concern -- will be seriously diminished. Simply stated, without the use of the Cash Collateral as requested by this Motion, the Debtors will suffer immediate and irreparable harm, their Servicing Business operations will cease and the operational value of the Servicing Business – which is significantly higher than its distressed liquidation value – will not be realized.

16.    Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 15-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2). In examining requests

for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985), 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bank S.D.N.Y. 1990) 115 B.R. at 38. After the 15-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g., Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

17.    Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Further, Bankruptcy Code section 363(e) provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property. 11 U.S.C. § 361.

18.    Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the

secured creditor's collateral is not decreasing over time. *In re Dynaco Corp.*, 162 B.R. 389, 394

(Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to

use cash collateral where level of collateral was not declining). *In re May*, 169 B.R. 462 (Bankr.

S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its

interest, sufficient to permit the debtor to use cash collateral). *In re Southwest Associates*, 140

B.R. 360 (Bankr. S.D.N.Y. 1992) (same). Even in those instances where its equity cushion is

fluctuating, a secured creditor is adequately protected so long as an adequate cushion remains

over and above its secured claim. *Dynaco Corp.*, 162 B.R. at 394 (Bankr. D. N.H. 1993).

19.     Nevertheless, adequate protection must be determined on a case-by-case

basis, in light of the particular facts and circumstances presented, the focus being that which is

required to protect a secured creditor from diminution in the value of its interest in the particular

collateral during the use period. *In re Ledgmere Land Corp.* ,116 B.R. 338, 343 (Bankr. D.

Mass. 1990); *Delbridge v. Production Credit Assoc. and Federal Land Bank*, 104 B.R. 824, 827

(E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus.

Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

20.     As more fully set forth in the Interim Order, as adequate protection for the

use of the Lenders' Cash Collateral, the Debtors will be providing the Lenders with, *inter alia*,

replacement liens in the form of security interests and liens upon the same types of assets of the

Servicing Business upon which they held a prepetition lien, subject only to valid, perfected and

enforceable prepetition liens (if any) which are senior to the Lenders' Liens as of the Petition

Date.

21.     The terms and conditions on which the Debtors may use Cash Collateral

have been carefully designed to meet the dual goals of sections 361 and 363. If the Interim

Order is entered, the Debtors will have working capital to operate the Servicing Business and, pending its sale, maintain its value for the benefit of the Lender and other creditor constituents. At the same time, the Lenders will be adequately protected for consenting to such use. Therefore, the Debtors respectfully submit that the use of Cash Collateral on the terms set forth in the attached proposed Interim Order provides the Lenders with adequate protection and is in the best interest of the Debtors, their estates, their creditors and all parties in interest and therefore should be authorized by this Court.

## PROVISIONS THAT IMPLICATE LOCAL RULE 4001-2

22.     Rule 4001-2 of the Local Rules requires that certain provisions contained in motions requesting use of cash collateral be highlighted. The Debtors do not believe that the proposed Interim Order contains any provisions requiring special disclosure under Local Rule 4001-2. Nonetheless, the Debtors highlight that pursuant to paragraph 13 of the Interim Order, the Lenders will seek a waiver of rights under 11 U.S.C. § 506(c) in the Final Order.

## REQUEST FOR FINAL HEARING

23.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request the Court to set a date for the Final Hearing.

## NOTICE

24.     Notice of this Motion will be given by hand delivery or facsimile to (i) the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' list of forty (40) creditors holding the largest unsecured claims; (iii) counsel to Bank of America, N.A. and (vi) counsel to the proposed DIP Lender. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of the Interim Order, in the form annexed hereto as Exhibit A, granting the Debtors the relief requested herein, and such other and further relief as is just.

Dated:    Wilmington, Delaware
          August 6, 2007

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP


                              _____
                              James L. Patton, Jr.  (No. 2202)
                              Joel A. Waite (No. 2925)
                              Pauline K. Morgan (No. 3650)
                              Edward J. Kosmowski (No. 3849)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Proposed Attorneys for Debtors and
                              Debtors in Possession

## EXHIBIT A

### INTERIM ORDER

Dated 8/6/2007

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                              :
                                                    :
AMERICAN HOME MORTGAGE INVESTMENT          :        Chapter 11
CORP. , et al.                                      :        Case Nos. _____
                                                    :        through _____
                          Debtors.                  :
                                                    :        (Jointly Administered)

### INTERIM ORDER (I) AUTHORIZING DEBTORS'
### LIMITED USE OF CASH COLLATERAL, (II) GRANTING
### REPLACEMENT LIENS, ADEQUATE PROTECTION AND ADMINISTRATIVE
### EXPENSE PRIORITY TO CERTAIN PRE-PETITION SECURED PARTIES AND
### (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion (the "Motion") dated August 6, 2007 of the above-referenced

debtors, as debtors-in-possession (the "Debtors"), seeking this Court's authorization pursuant to

Sections 105, 361, 362 and 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

(the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for the Debtors to use the Pre-Petition Collateral (as herein

defined), including a limited use of cash collateral, as such term is defined in Section 363 of the

Bankruptcy Code ("Cash Collateral"), solely in accordance with the terms of this order (the

"Interim Order"), upon which Bank of America, N.A., as Administrative Agent (in such

capacity, the "Administrative Agent") for itself and on behalf of Deutsche Bank National Trust

Company, as Collateral Agent (in such capacity, the "Collateral Agent") and certain lenders (in

such capacities, the "Pre-Petition Secured Lenders" and, together with the Administrative Agent

and the Collateral Agent, the "Pre-Petition Secured Parties") under certain Loan Documents (as

hereinafter defined and described) has first priority perfected security interests and liens; and a

hearing (the "Interim Hearing") having been held by the Court on August ___, 2007 to consider

the relief sought in the Motion; and pursuant to Bankruptcy Rule 4001, due and sufficient notice

of the Motion and the relief sought at the Interim Hearing having been given by the Debtors to counsel to the Administrative Agent, the Debtors' forty largest unsecured creditors (on a consolidated basis) and to the Office of the United States Trustee; and the Court having considered the offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to continue to operate their Servicing Business (as defined below) and that such relief is fair and reasonable and that entry of this Interim Order is in the best interest of the Debtors and their respective estates and creditors; and due deliberation and good cause has been shown to grant the relief sought in the Motion:

## NOW, THEREFORE,

A. On August 6, 2007 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in these cases (the "Cases"), and each has continued with the management and operation of their respective businesses and properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B. Prior to the Petition Date, the Pre-Petition Secured Lenders made certain loans and advances to the Debtors pursuant to and in accordance with the terms and conditions of that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 (as heretofore amended, restated, modified or supplemented from time to time, the "Credit Agreement" and, together with all other documentation executed in connection therewith, the "Loan Documents") among American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Corp., and American Home Mortgage Acceptance, Inc., as Borrowers, Bank of America, N.A., as Administrative Agent, Swing Line

Lender, and a Lender, the Pre-Petition Secured Lenders, Calyon New York Branch and Deutsche Bank Securities Inc., as Co-Syndication Agents, Citibank, N.A., JPMorgan Chase Bank, N.A. and Merrill Lynch Bank USA, as Co-Documentation Agents, and Banc of America Securities LLC, as Sole Lead Arranger and Sole Book Manager.

C.   Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that as of the Petition Date the Debtors that are the Borrowers and the Guarantors (as such terms are defined in the Loan Documents) were justly and lawfully indebted to the Pre-Petition Secured Parties in the aggregate principal amount of approximately $1,104,550,000 in respect of loans and other advances made, together with accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Loan Documents (collectively, the "Indebtedness"). Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that the Indebtedness constitutes valid and binding obligations of the Debtors and that no portion of the Indebtedness or any amounts paid to the Pre-Petition Secured Parties or applied to the obligations owing under the Loan Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

D.   Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that, pursuant to a certain Security and Collateral Agency Agreement dated as of August 30, 2004 (as heretofore amended, restated, modified, ratified or supplemented from time to time, the "Security

Agreement" and, together with any and all other security agreements, pledge agreements, mortgages, deeds of trust, financing statements, assignments or other security documents, the "Collateral Documents"), they have granted valid, perfected, enforceable, first priority liens upon and security interests in the property described in the Collateral Documents (collectively, the "Pre-Petition Collateral") to the Administrative Agent for the ratable benefit of the Pre-Petition Secured Parties to secure the Indebtedness.  Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors further admit that the Administrative Agent's first priority liens upon and security interests in the Pre-Petition Collateral, for the ratable benefit of the Pre-Petition Secured Parties, are not subject to avoidance, subordination, recharacterization, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

E.  Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Pre-Petition Secured Parties assert, and the Debtors agree not to contest, that the value of the Pre-Petition Collateral exceeds the amount of the Indebtedness.

F.  Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that as of the Petition Date funds on deposit with (x) the Pre-Petition Secured Parties or (y) other financial institutions pursuant to applicable contract or law (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts) (collectively, the "Depository Institutions") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Loan Documents and applicable law, for the ratable

benefit of the Pre-Petition Secured Parties. All proceeds of the Pre-Petition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date) are Cash Collateral of the Pre-Petition Secured Parties. The Pre-Petition Secured Parties are entitled, pursuant to Sections 105, 361 and 363(e) of the Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for any diminution in value of the Pre-Petition Collateral, including, without limitation, resulting from the use of Cash Collateral.

G. Without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), each Debtor hereby waives and releases any and all Claims (as such term is defined in the Bankruptcy Code) against each of the Pre-Petition Secured Parties, whether arising at law or in equity, including any re-characterization, subordination, avoidance or other claim arising under or pursuant to Section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

H. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and have an immediate need to obtain use of the Cash Collateral in order to permit, among other things, the preservation and orderly disposition of the Debtors' servicing business and servicing rights (including, the collection, service and administration of loans) upon which the Pre-Petition Secured Parties have a first priority perfected security interest (the "Servicing Business"). Without such funds, the Debtors will be unable to pay necessary expenses of the Servicing Business including, without limitation, payroll and servicing advances. The Debtors are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The ability of the Debtors to fund the Servicing Business through the use of the Cash Collateral is vital to the Debtors and their efforts

to maximize the value of their assets and to reorganize under the Bankruptcy Code. Absent entry of this Interim Order, the Debtors' estates will be immediately and irreparably harmed.

I. Notice of the requested relief sought at the Interim Hearing was provided by the Debtors to: (a) the Office of the United States Trustee; (b) counsel to the Administrative Agent; and (c) the Debtors' forty largest unsecured creditors (on a consolidated basis). Given the nature of the relief sought the Court concludes that sufficient and adequate notice of the Interim Hearing has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014 and Section 102(1) of the Bankruptcy Code as required by Sections 361 and 363 of the Bankruptcy Code, and that no further notice of, or hearing on, the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

J. The Pre-Petition Secured Parties are willing to consent to the Debtors' use of the Pre-Petition Collateral, including the limited use of Cash Collateral as provided in the Budget (as hereinafter defined) during the Budget Period (as hereinafter defined), solely upon the protections, terms and conditions provided for in this Interim Order.

K. Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (B), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

L. Good, adequate and sufficient cause has been shown to justify entry of this Interim Order. Among other things, granting the relief set forth in this Interim Order will permit the Debtors to meet their expenses and to maximize value for the benefit of creditors.

M. The terms of this Interim Order were negotiated in good faith and at arm's length between the Debtors and the Pre-Petition Secured Parties.

NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS
HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION,
THE EVIDENCE ADDUCED AT THE INTERIM HEARING, AND THE STATEMENTS
OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:

1. Subject to the terms and conditions of this Interim Order, the Pre-Petition Secured
Parties hereby consent to, and the Court hereby authorizes the Debtors' use during the period
(the "Budget Period") beginning on the Petition Date and ending on the Termination Date (as
defined below in paragraph 11) of Cash Collateral solely and exclusively for the disbursements
set forth in the budget, which is attached as Exhibit A hereto (as such budget may be modified
from time to time by the Debtors upon prior written consent as set forth below in this paragraph,
the "Budget") plus payment of the fees and expenses pursuant to paragraphs 6(B) and 6(D) of
this Interim Order, and for no other purposes. The expenditures authorized in the Budget shall
be adhered to on a line-by-line basis, on a cumulative basis during the Budget Period (i.e.,
unused amounts shall carry forward to successive weeks on a line-by-line basis), with no carry-
over surplus to any other line item(s) or to a subsequent budget period, if any, except to the
extent agreed to in writing as set forth below in this paragraph; provided, however, that with
respect to the Servicing Advances line-item in the Budget, the Debtors may use Cash Collateral
in excess of that set forth in the Budget for that particular line-item for each week so long as the
percentage deviation ("Permitted Deviation") for such line-item during such week shall not
exceed thirty (30%) percent, in the aggregate, of the amount set forth in the Budget for such line-
item. The Administrative Agent may, in its sole discretion, agree in writing to the use of Cash
Collateral in a manner or amount which does not conform to the Budget (each such use of Cash
Collateral, a "Non-Conforming Use"). If such written consent is given, the Debtors shall be

authorized pursuant to this Interim Order to expend Cash Collateral for such Non-Conforming Use without further Court approval, and the Pre-Petition Secured Parties shall be entitled to all of the protections specified in this Interim Order for any such Non-Conforming Use.

2.    The Debtors shall maintain their existing bank accounts ("Existing Accounts") in accordance with the cash management system as set forth in the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code, that was approved by the Court on August __, 2007. In addition, the continued deposit of principal, interest and other amounts in respect of Mortgage Loans that constitute Pre-Petition Collateral into accounts maintained at the Collateral Agent (the "Collateral Agent Accounts") is hereby authorized in accordance with applicable practices prior to the Petition Date.   The Debtors shall deposit and maintain into one or more segregated accounts maintained with the Administrative Agent (collectively, the "Cash Collateral Accounts"), all of the proceeds received from the sale, collection or disposition of or with respect to the Collateral (as defined below in paragraph 3), from any source.  The Debtors agree that they will not (without the Administrative Agent's prior written consent) close any Existing Accounts or the Cash Collateral Accounts or establish any new bank accounts into which Cash Collateral or the proceeds of the Pre-Petition Collateral or the Collateral will be deposited.  The Debtors are prohibited from commingling the proceeds from the Cash Collateral Accounts with any other funds.   The Debtors further agree that they will, within nine (9) business days following entry of this Interim Order and thereafter on the third business day following the end of each week during the term of this Interim Order, identify to the Administrative Agent the

names, addresses and numbers of the Existing Accounts and all other current accounts, and furnish to the Administrative Agent an accounting of all monies deposited in, withdrawn from (in accordance with this Order) and the balances in such accounts.

3. In addition to all the existing security interests and liens granted to or for the benefit of the Pre-Petition Secured Parties in and with respect to the Pre-Petition Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined below) and as an inducement to the Pre-Petition Secured Parties to permit the Debtors' use of the Cash Collateral as provided for in this Interim Order, the Debtors hereby grant to the Administrative Agent for the ratable benefit of the Pre-Petition Secured Parties a security interest in and lien on the Pre-Petition Collateral and the proceeds, products, rents and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise (all of such property, the "Collateral"), senior to any other security interests or liens, subject only to valid, perfected and enforceable pre-petition liens (if any) which are senior to the Pre-Petition Secured Parties' liens or security interests as of the Petition Date.

4. For purposes of this Interim Order, "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of the Pre-Petition Collateral upon which the Pre-Petition Secured Parties have valid, perfected, enforceable and non-avoidable liens or security interests from and after the Petition Date for any reason including, without limitation, depreciation, sale, loss or use of the Pre-Petition Collateral, including Cash Collateral, whether in accordance with the terms and conditions of this Interim Order or otherwise. Cash Payments from the proceeds of the Pre-Petition Collateral made to the Administrative Agent pursuant to paragraphs 5 and 6 of this Interim Order shall not constitute Collateral Diminution.

5.  As additional adequate protection and without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors shall pay indefeasibly in cash to the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Lenders, in permanent reduction of the outstanding principal balance of the Indebtedness all gross proceeds from a sale, lease or other disposition of the Collateral (other than that which is deposited into the Collateral Agent Accounts), which gross proceeds (i) will be paid directly to the Administrative Agent or (ii) if received by the Debtors, will be paid by the Debtors to the Administrative Agent on the same business day as received by the Debtors.  The Debtors shall implement a sales process for the Servicing Business as soon as reasonably practicable after the Petition Date pursuant to bid procedures reasonably acceptable to the Administrative Agent.  The Debtors shall keep the Administrative Agent informed of the status of such sale efforts.

6.  As additional adequate protection and without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors shall pay indefeasibly in cash:  (A) immediately upon entry of this Interim Order and on the first business day of each week thereafter, to the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Lenders, in permanent reduction of the outstanding principal amount of the Indebtedness, all amounts on deposit in the Collateral Agent Accounts on each such date; (B) (x) following the entry of this Interim Order, to the Administrative Agent, for the benefit of the Pre-Petition Secured Parties, an amount equal to all incurred but unpaid usual and customary fees, expenses and costs of the Pre-Petition Secured Parties, including administrative or collateral fees, owing as of the Petition Date; and (y) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants,

including financial consultants, and auditors) incurred by the Administrative Agent under the Credit Agreement arising prior to the Petition Date; (C) on September 5, 2007, in permanent reduction of Indebtedness, all Cash Collateral on hand in respect of the Servicing Business in excess of $10 million; and (D) on a current basis, to the Administrative Agent, for the benefit of the Pre-Petition Secured Parties, (x) all incurred but unpaid usual and customary fees, expenses, and costs of the Pre-Petition Secured Parties, including administrative or collateral fees, arising subsequent to the Petition Date, and (y) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Administrative Agent under the Credit Agreement arising subsequent to the Petition Date.  The payment of the fees, expenses and disbursements set forth in this paragraph 6 of the Interim Order (including professional fees and expenses of Kaye Scholer LLP, Potter Anderson & Corroon LLP and any other professionals or advisors retained by or on behalf of the Administrative Agent) shall be made within five (5) business days after the receipt by the Debtors (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Administrative Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

7. Except as provided in paragraph 3(i)(x), the security interests and liens granted to the Administrative Agent for the benefit of the Pre-Petition Secured Parties pursuant to paragraph 3 of this Interim Order shall not be subordinated to or made pari passu with any lien or security interest under Section 364 of the Bankruptcy Code or otherwise.

8. The Debtors shall not grant any junior liens on any Pre-Petition Collateral or the Collateral at any time and no party shall seek to enforce, directly or indirectly, an administrative or priority claim in respect of any asset which constitutes Pre-Petition Collateral or the Collateral unless and until all of the Indebtedness has been indefeasibly paid in full in cash. Notwithstanding anything herein to the contrary, no Cash Collateral shall be used to pay administrative expenses payable under Sections 328, 330 and 331 of the Bankruptcy Code (or other similar provisions), including professional fees and expenses incurred for any investigation, litigation or threatened litigation against any of the Pre-Petition Secured Parties or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the Pre-Petition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Indebtedness or the security interests or liens held by the Pre-Petition Secured Parties in the Collateral.

9. Without the necessity of the filing of financing statements, mortgages or other documents, this Interim Order shall be sufficient evidence of the Pre-Petition Secured Parties' perfected security interests and liens granted in the Collateral pursuant to this Interim Order. Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Administrative Agent to provide further evidence of the perfection

of the Pre-Petition Secured Parties' security interests and liens in the Collateral as provided for herein.

10. The Debtors agree to furnish to the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent: (i) weekly reports of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget, on a line-by-line basis showing any variance to the proposed corresponding line item of the Budget (the "Budget Reconciliation"). Such Budget Reconciliation shall be provided to the Administrative Agent so as actually to be received within three (3) business days following the end of each prior week. As additional adequate protection, the Debtors shall provide to the Administrative Agent such other reports and information as the Administrative Agent may reasonably request. The Administrative Agent and its representatives shall have the right upon reasonable prior notice to inspect and copy the Debtors' books and records. Such right to inspect the Debtors' books and records shall include the right of the Administrative Agent and its representatives to have access to all records and files of the Debtors pertaining to the Pre-Petition Collateral including, without limitation, records and files pertaining to Wet Mortgage Loans, Servicing Rights, Servicing Contracts and Servicing Receivables (as such terms are defined in the Credit Documents) and to monitor the handling and disposition of the same.

11. The Debtors' use of the Collateral (including, without limitation, Cash Collateral) shall terminate (subject to any applicable notice requirements as set forth below) on the earliest to occur of (each such occurrence being hereinafter referred to as a "Termination Event"): (a) [September 7], 2007 (the "Expiration Date"); (b) the dismissal of the Cases or the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) the entry by this Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to

any entity other than the Administrative Agent or the Pre-Petition Secured Parties with respect to the Pre-Petition Collateral or the Collateral without the written consent of the Administrative Agent, which consent may be withheld in its sole discretion; (d) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (e) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtors; (f) the failure by the Debtors to make any payment required pursuant to this Interim Order when due; (g) the failure by the Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to this Interim Order when due or any such documents or other information shall contain a material misrepresentation; (h) the failure by the Debtors to observe or perform any of the material terms or material provisions contained herein; (i) the entry of an order of this Court approving the terms of any debtor-in-possession financing for any of the Debtors which creates any liens with respect to any of the Pre-Petition Collateral or the Collateral at any time or that allows any party to seek to enforce, directly or indirectly, an administrative or priority claim in respect thereto unless and until all of the Indebtedness has been indefeasibly paid in full in cash; or (j) the entry of an order of this Court reversing, staying, vacating or otherwise modifying in any material respect the terms of this Interim Order. On and after the occurrence of (x) a Termination Event specified in Clauses (a), (b), (c), (d), (e), (f), (i) and (j) above, the Debtors shall immediately cease using Cash Collateral and (y) any other Termination Event, on the second business day after the date on which the Debtors receive written notice from the Administrative Agent of such Termination Event or the date upon which an officer of the Debtors obtains knowledge of any such Termination Event, the Debtors shall immediately cease using Cash Collateral (in each case in (x) and (y) above, the date of such cessation being referred to as the "Termination Date");

provided, however, that the Administrative Agent may, absent further order of the Court, withdraw or direct the Collateral Agent to withdraw from the Existing Accounts and the Cash Collateral Accounts, free from any stay imposed or applicable pursuant to Sections 105 or 362 of the Bankruptcy Code, principal, fees and expenses payable to the Pre-Petition Secured Parties pursuant to paragraphs 5 and 6 of this Interim Order without further order of the Court following the Termination Date and apply the same to such obligations. All notices set forth in this paragraph 11 shall be provided to the Debtors, any Committee and the United States Trustee. Following the occurrence of the Termination Date, the Debtors shall not have the right to use Cash Collateral without the prior written consent of the Administrative Agent; provided, however, that the Debtors shall have the right to seek authority from this Court to use Cash Collateral thereafter on proper notice to the Pre-Petition Secured Parties which request the Pre-Petition Secured Parties shall have the right to oppose.

12. This Interim Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Pre-Petition Secured Parties to seek additional or different adequate protection (including an amount equal to accrued and unpaid interest at the rates provided for in the Credit Agreement), move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take another action in the Cases and to appear and be heard in any matter raised in these Cases, and (ii) any and all rights, remedies, claims and causes of action which the Administrative Agent or the Pre-Petition Secured Parties may have against any other party liable for the Indebtedness.

13. The Pre-Petition Secured Parties reserve the right to assert at the Final Hearing on the Motion that (i) no costs or expenses chargeable or alleged to be chargeable against the Collateral under Section 506(c) of the Bankruptcy Code shall be incurred in these proceedings

without the Administrative Agent's prior written consent and (ii) nothing contained in this Interim Order shall be deemed to be a consent by the Pre-Petition Secured Parties to any charge, lien, assessment or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise. Nothing contained in paragraph 8 hereof shall be deemed a waiver by the Debtors of the right to assert any charge, lien, assessment or claim under Section 506(c) of the Bankruptcy Code during the term of this Interim Order.

14. The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of Section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

15. The provisions of this Interim Order shall be binding upon any trustee appointed during these Cases or upon a conversion to Cases under Chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to Chapter 7 cases, or dismissing the Cases, or any order which may be entered confirming or consummating any plan(s) of reorganization, and the terms and provision of this Interim Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Interim Order shall continue in this and any superseding case under the Bankruptcy Code.

16. With respect to any approval or disapproval of expenditures set forth in the Budget (including, without limitation,  any Permitted Deviation or Non-Conforming Use), the Administrative Agent and the other Pre-Petition Secured Parties shall not:  (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their

respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

17. Nothing contained in this Interim Order shall be deemed to terminate, modify in any respect or release any obligations of any non-debtor guarantors to the Pre-Petition Secured Parties with respect to the Indebtedness.

18. The terms of this Interim Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Interim Order by this Court. In the event this Court stays, modifies or vacates any of the provisions of this Interim Order following any further hearing, such modifications, stays or vacation shall not affect the rights and priorities of the Pre-Petition Secured Parties granted pursuant to this Interim Order.

19. Notwithstanding any such stay, modification or vacation, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Interim Order arising prior to the Pre-Petition Secured Parties' receipt of notice of the effective date of such stay, modification or vacation shall be governed in all respects by the original provision of this Interim Order, and the Pre-Petition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Interim Order is and shall remain subject to the protection afforded under the Bankruptcy Court.

20. The Debtors' agreements, admissions and releases contained in paragraphs C, D, E, F and G of this Interim Order:  (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including any Committee, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than the date that is seventy-five (75) days from the date of entry of this Interim Order (or, in the case of a Committee, the later of sixty days from the appointment of the Committee or seventy-five (75) days from the Petition Date), (x) challenging the validity, enforceability, priority or extent of the Indebtedness or the Pre-Petition Secured Parties' security interests in and liens upon the Pre-Petition Collateral, or (y) otherwise asserting any claims or causes of action against the Pre-Petition Secured Parties on behalf of the Debtors' estates, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is properly filed as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding: (a) the Debtors' agreements, admissions and releases contained in paragraphs C, D, E, F and G of this Interim Order shall be binding on all parties in interest, including the Committee; (b) the obligations of the Debtors under the Credit Documents shall constitute allowed claims for all purposes in these Cases, and any subsequent Chapter 7 case(s); (c) the Pre-Petition Secured Parties' security interests in and liens upon the Pre-Petition Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Indebtedness and the Pre-Petition Secured Parties' security interests and liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by the Committee or any other party in

interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' agreements, admissions and releases contained in paragraphs C, D, E, F and G of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Interim Order shall be deemed to grant standing to the Committee or any other party to commence any such adversary proceeding or contested matter.

21. The Administrative Agent acknowledges that pursuant to the Interim Order pursuant to Sections 105(a), 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (a) Approving Debtor-in-Possession Financing, (b) Granting Liens and Allowing Super Priority Administrative Claims, (c) Scheduling a Final Hearing, and (d) Granting Related Relief (the "Interim DIP Order"), the Lender Parties (as defined in the Interim DIP Order) have been granted a lien on and security interest in the Collateral (as defined in the DIP Credit Agreement that is referred to and defined in the Interim DIP Order) (the "DIP Collateral") and that the DIP Collateral is separate and distinct from, and shall not constitute part of, the Collateral (as defined in this Interim Order.)

22. The Final Hearing on the Motion is scheduled for _____, 2007 at _____ _.m. before this Court.

23. The Debtors shall promptly mail copies of this Interim Order to the parties having been given notice of the Interim Hearing and to any other party which has filed a request for notices with this Court. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections by no later than August __, 2007, which objections shall be

served so as to be received on such date, upon (i) Young, Conaway Stargatt & Taylor, LLP, The Brandywine Building, 100 West Street, 17th Floor, Wilmington, Delaware 19889-0391, Attention Joel Waite, Esq., Attorneys for the Debtors; (ii) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attention: Margot B. Schonholtz, Esq., and Scott D. Talmadge, Esq. and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801, Attention: Laurie Selber Silverstein, Esq., Attorneys for the Administrative Agent; (iii) Jones Day, 222 East 41st Street, New York, NY 10017, Attention: Erica M. Ryland, Attorneys for the DIP Lender; and (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801.

24. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.

Dated: Wilmington, Delaware
        August __, 2007

_____
United States Bankruptcy Judge

## <u>SCHEDULE 1</u>

### BUDGET

AMERICAN HOME MORTGAGE
CASH FORECAST – SERVICING
NOTE: BASED UPON THE CURRENT PORTFOLIO OF MSRs AND MORTGAGES.

| ($ millions) | 8/10 | 8/17 | 8/24 | 8/31 | 9/7 | 9/14 | 9/21 | 9/28 | 10/5 | 10/12 | 10/19 | 10/26 | 11/2 | 13 Weeks Ended 11/2/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash Balance | $ - | $ 1.2 | $ 6.5 | $ 10.3 | $ 15.6 | $ 22.2 | $ 27.5 | $ 31.1 | $ 36.4 | $ 40.0 | $ 45.3 | $ 48.9 | $ 54.2 | $ - |
| **Sources of Cash** | | | | | | | | | | | | | | |
| Servicing Daily Receipts- Net (a) | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 104.0 |
| Investment Line Income/ Int Credit (b) | - | - | - | - | 3.0 | - | - | - | - | - | - | - | - | 3.0 |
| **Total Sources** | 8.0 | 8.0 | 8.0 | 8.0 | 11.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 107.0 |
| **Uses of Cash** | | | | | | | | | | | | | | |
| Indirect and Non-Payroll Direct Costs (c) | 0.7 | 0.6 | 0.4 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 7.7 |
| Vendor Payments--Prepetition | 1.5 | | | | | | | | | | | | | 1.5 |
| Vendor Deposits | 2.5 | | | | | | | | | | | | | 2.5 |
| Payroll & Payroll Taxes | - | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | 9.5 |
| Retention Payments (d) | - | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 3.2 | 3.8 |
| Health Insurance-BCBS | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 1.3 |
| Servicing Advances, Net (e) | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 26.0 |
| B of A expenses (f) | OPEN | | | | | | | | | | | | | OPEN |
| **Total Uses** | 6.8 | 2.7 | 4.2 | 2.7 | 4.4 | 2.7 | 4.4 | 2.7 | 4.4 | 2.7 | 4.4 | 2.7 | 7.5 | 52.3 |
| Net Cash Flow | 1.2 | 5.3 | 3.8 | 5.3 | 6.6 | 5.3 | 3.6 | 5.3 | 3.6 | 5.3 | 3.6 | 5.3 | 0.5 | 54.7 |
| Closing Balance | $ 1.2 | $ 6.5 | $ 10.3 | $ 15.6 | $ 22.2 | $ 27.5 | $ 31.1 | $ 36.4 | $ 40.0 | $ 45.3 | $ 48.9 | $ 54.2 | $ 54.7 | $ 54.7 |

(a) Comprised of fees and advance recoveries.
(b) Represents float on servicing payments before remittance to portfolio owner.
(c) To include allocation of corporate costs.
(d) Assumes final payroll and retention payout occurs week ended 11/2/07.
(e) Based upon the historical monthly average.
(f) Estimates for advisory and other costs to be provided by B of A.