permitted by law, exercise all its rights (including the Lender's right of set-off) with respect to such participation as fully as if such Lender were the direct creditor of the Borrowers in the amount of such participation.

3.03      Apportionment of Payments.

(a)      All payments of principal and interest in respect of outstanding Loans, all payments of fees and all other payments in respect of any other Obligations, shall be allocated by the Administrative Agent among such of the Lenders as are entitled thereto, in proportion to their respective Pro Rata Shares or otherwise as provided herein or, in respect of payments not made on account of the Loans as designated by the Person making payment when the payment is made. The Administrative Agent will promptly distribute any such payment to each Lender, as appropriate, within one (1) Business Day of receipt. So long as no Event of Default shall have occurred and be continuing, the Administrative Agent shall, subject to the provisions of this Agreement, apply all payments in respect of any Obligations and all proceeds of the Collateral as set forth in Section 2.06.

(b)      After the occurrence and during the continuance of an Event of Default or on the Maturity Date, the Administrative Agent may, and upon the direction of the Required Lenders shall, apply all payments in respect of any Obligations and all proceeds of the Collateral, subject to the provisions of this Agreement (i) first, to pay the Obligations in respect of any fees, expense reimbursements, indemnities and other amounts then due to the Administrative Agent, as administrative agent, until paid in full; (ii) second, to pay the Obligations in respect of any fees, expense reimbursements and indemnities then due to the Lenders until paid in full; (iii) third to pay interest due in respect of the Loans, as determined by the Administrative Agent, until paid in full; (iv) fourth to pay principal of the Loans, as determined by the Administrative Agent, until paid in full; (v) fifth, to the ratable payment of all other Obligations then due and payable, (vi) sixth, to the extent that there has been asserted any claim to which the Administrative Agent and/or the Lender-Related Parties may be entitled to indemnification pursuant to the terms of this Loan Agreement, to establish a reserve in an amount determined by the Administrative Agent in good faith, and (vii) seventh, to the Administrative Borrower for distribution to the Borrowers or to whomever is legally entitled to such proceeds as ordered by the Bankruptcy Court.

3.04      Computations. Interest on the Loans shall be computed based on a 360-day year for the actual days elapsed (including the first day but excluding the last day) occurring in the period for which payable.

3.05      Joint and Several Liability of Borrowers.

(a)      Notwithstanding anything in this Loan Agreement or any other Loan Document to the contrary, each of the Borrowers hereby accepts joint and several liability hereunder and under the other Loan Documents in consideration of the financial accommodations to be provided by the Administrative Agent and the Lenders under this Loan Agreement and the other Loan Documents, for the mutual benefit, directly and indirectly, of each of the Borrowers and in consideration of the undertakings of the other Borrowers to accept joint and several liability for the Obligations. Each of the Borrowers, jointly and severally, hereby

- 29 -

066585.1001

irrevocably and unconditionally accepts, not merely as a surety but also as a co-debtor, joint and several liability with the other Borrowers, with respect to the payment and performance of all of the Obligations (including, without limitation, any Obligations arising under this <u>Section 3.05</u>), it being the intention of the parties hereto that all the Obligations shall be the joint and several obligations of each of the Borrowers without preferences or distinction among them. If and to the extent that any of the Borrowers shall fail to make any payment with respect to any of the Obligations as and when due or to perform any of the Obligations in accordance with the terms thereof, then in each such event the other Borrowers will make such payment with respect to, or perform, such Obligation. Subject to the terms and conditions hereof, the Obligations of each of the Borrowers under the provisions of this <u>Section 3.05</u> constitute the absolute and unconditional, full recourse Obligations of each of the Borrowers enforceable against each such Person to the full extent of its properties and assets, irrespective of the validity, regularity or enforceability of this Agreement, the other Loan Documents or any other circumstances whatsoever.

(b)     The provisions of this <u>Section 3.05</u> are made for the benefit of the Administrative Agent on behalf of the Lenders and their successors and assigns, and may be enforced by the Administrative Agent from time to time against any or all of the Borrowers as often as occasion therefor may arise and without requirement on the part of the Administrative Agent, the Lenders or such successors or assigns first to marshal any of its or their claims or to exercise any of its or their rights against any of the other Borrowers or to exhaust any remedies available to it or them against any of the other Borrowers or to resort to any other source or means of obtaining payment of any of the Obligations hereunder or to elect any other remedy. The provisions of this <u>Section 3.05</u> shall remain in effect until all of the Obligations shall have been paid in full or otherwise fully satisfied.

(c)     Each of the Borrowers hereby agrees that it will not enforce any of its rights of contribution or subrogation against the other Borrowers with respect to any liability incurred by it hereunder or under any of the other Loan Documents, any payments made by it to the Administrative Agent or the Lenders with respect to any of the Obligations or any Collateral until such time as all of the Obligations have been paid in full in cash. Any claim which any Borrower may have against any other Borrower with respect to any payments to the Administrative Agent or the Lenders hereunder or under any other Loan Documents are hereby expressly made subordinate and junior in right of payment, without limitation as to any increases in the Obligations arising hereunder or thereunder, to the prior payment in full in cash of the Obligations.

3.06     <u>U.S. Taxes</u>.

(a)     Except as required by applicable law, any and all payments by or on account of any Obligation of the Borrowers hereunder shall be made free and clear of and without deduction for any Taxes; provided, however, that if any deduction of Indemnified Taxes shall be required, then (i) the Borrowers shall increase the sum payable so that after all required deductions (including deductions applicable to additional sums payable under this <u>Section 3.06</u>) the Administrative Agent, the Lenders and each of their respective Tax Related Persons receives and retains (after withholding and payment of all Taxes, including income Taxes) an amount equal to the sum it would have received and retained had no such deductions been made, (ii) the

Borrowers or the Administrative Agent shall make such deductions and (iii) the Borrowers or the Administrative Agent shall pay the full amount deducted to the relevant Governmental Authorities in accordance with applicable law.

(b)    In addition, each Borrower shall pay all Other Taxes to the relevant Governmental Authorities in accordance with applicable law.

(c)    Each Borrower shall indemnify the Administrative Agent and each Lender (including for these purposes a Participant), within ten days after demand therefor, for the full amount of any Indemnified Taxes or Other Taxes paid or incurred by the Administrative Agent or such Lender or their respective Tax Related Persons, as the case may be, relating to, arising out of, or in connection with, this Loan Agreement, any Note, any other Loan Document or any payment or transaction contemplated hereby or thereby, whether or not such Indemnified Taxes or Other Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority. Such indemnification shall be made on an after-Tax basis, such that after all required deductions and payments of all Taxes (including deductions applicable to amounts payable under this Section 3.06; and income Taxes) and payment of all reasonable expenses, the Administrative Agent, the Lenders and each of their respective Tax Related Persons receives and retains an amount equal to the sum it would have received and retained had it not paid or incurred or been subject to such Indemnified Taxes or Other Taxes. The written demand shall include a certificate setting forth the amount of such Indemnified Taxes and/or Other Taxes. Such certificate shall be conclusive, absent manifest error. For purposes of this Section 3.06 and any provision of any Loan Document requiring payment by the Borrowers on an after-Tax basis, the indemnitee or recipient of such payment (or its Tax Related Persons, as applicable) shall be conclusively presumed to be subject to current income taxation at the highest marginal rate applicable to persons of the indemnitee's classification (e.g., individual, corporation or trust).

(d)    As soon as practicable after any payment of Indemnified Taxes or Other Taxes by any Borrower to a Governmental Authority, such Borrower shall deliver to the Administrative Agent the original or a certified copy of a receipt, if any, issued by such Governmental Authority evidencing such payment or other evidence of such payment reasonably satisfactory to the Administrative Agent.

(e)    To the extent legally entitled to do so, the Administrative Agent and each Lender shall furnish to the Administrative Borrower and the Administrative Agent (as applicable) Internal Revenue Service Forms W-8BEN, W-8ECI, W-8IMY or W-9 to the extent necessary to obtain a reduction of or exemption from withholding taxes imposed by the United States of America with respect to payments made by the Borrowers or the Administrative Agent under any Loan Document. Each Lender and the Administrative Agent shall provide such forms prior to the first interest payment date after becoming a party to this Agreement and when reasonably and timely requested by the Administrative Borrower or the Administrative Agent (as applicable). "United States persons" (within the meaning of Code Section 7701(a)(30)) that are "exempt recipients" (within the meaning of Treasury Regulations Section 1.6049-4(c)(i)(ii) (without regard to the second sentence thereof)) shall not be required to furnish an Internal Revenue Service Form W-9, except to the extent required under Treasury Regulations Section 1.1441-l(d)(4) (if applicable). None of the Administrative Agent, any Lender or any Tax Related

Person shall be required to make available any information that it deems confidential to the Borrowers or to any other Person.

3.07     Fees.  The Borrowers shall pay the following fees and charges, which fees and charges shall be non-refundable when paid (irrespective of whether this Agreement is terminated thereafter):

(a)     Facility Fee.  To each Lender under the Facility, a facility fee on such Lender's Pro Rata Share of $35,000,000 (the "Facility Fee") from the date hereof until the Maturity Date or, if later, the date on which all the Loans shall have been fully and finally repaid, at a rate equal to 0.50% per annum, payable in arrears (i) on each Monthly Payment Date, commencing on the first Monthly Payment Date following the Closing Date, (ii) on the Maturity Date and (iii) if later than the Maturity Date, the date on which all the Loans shall have been fully and finally repaid.

(b)     Commitment Fees.  To the Administrative Agent on the date of entry of the Initial Order, a commitment fee in an amount equal to 1.00% times $50,000,000.

## Section 4. **Collateral Security and Administrative Priority**.

4.01     Collateral; Security Interest.

(a)     Pursuant to and as provided in the Orders, as security for the full and timely payment and performance of all of the Obligations, each Borrower hereby as of the Closing Date assigns, pledges, transfers and grants to the Administrative Agent, for the benefit of the Secured Parties, pursuant to Section 364 of the Bankruptcy Code, a perfected security interest in and to and Lien on all of its right, title and interest in, to and under all the Collateral, whether now owned or hereafter acquired, now existing or hereafter created and wherever located, to secure the payment of the Obligations.  Each Borrower agrees to mark its computer records and tapes to evidence the security interests granted to the Administrative Agent, for the benefit of the Secured Parties, hereunder.

(b)     Each Borrower agrees to direct and to cause all Persons remitting funds that constitute part of the Collateral, to remit such funds to the Facility Collection Account.  To the extent that any Borrower (or any of its agents or employees) receives any funds that would be remitted to Control Accounts pursuant to the immediately preceding sentence, such Borrower agrees to deposit immediately such funds into the applicable Control Account.

4.02     Perfection of Security Interests.

(a) Each Borrower shall, at its expense, promptly and duly execute and deliver, and have recorded, such agreements, instruments and documents and perform any and all actions reasonably requested by the Administrative Agent at any time and from time to time to perfect, maintain, protect, and enforce the Lenders' security interest in the Collateral of such Borrower, including, without limitation, (i) executing and filing financing or continuation statements, and amendments thereof, in form and substance satisfactory to the Administrative Agent, (ii) in the case of any Investment Property, Deposit Accounts, taking any actions required by the Administrative Agent to enable the Administrative Agent to obtain Control with respect thereto,

- 32 -

(iii) executing and delivering such documents, agreements and instruments as may be required by the Administrative Agent to further evidence and perfect its security interests in all Intellectual Property, (iv) maintaining complete and accurate stock records, (v) using its best efforts in delivering to the Administrative Agent negotiable warehouse receipts, if any, and, upon the Administrative Agent's request therefor, non-negotiable warehouse receipts covering any portion of the Collateral located in warehouses and for which warehouse receipts are issued, (vi) placing notations on such Borrower's certificates of title or books of account to disclose the Administrative Agent's security interest therein, (vii) delivering to the Administrative Agent all documents, certificates and Instruments necessary or desirable to perfect the Administrative Agent's Lien in letters of credit on which such Borrower is named as beneficiary and all acceptances issued in connection therewith, (viii) after the occurrence and during the continuation of an Event of Default, transferring Inventory maintained in warehouses to other warehouses designated by the Administrative Agent and (ix) taking such other steps as are deemed necessary or desirable to maintain the Administrative Agent's security interest in the Collateral.

(b) Each Borrower hereby authorizes the Administrative Agent at any time and from time to time to execute and file financing statements or continuation statements and amendments thereto and other filing or recording documents or instruments with respect to the Collateral without the signature of such Borrower in such form and in such offices as the Administrative Agent determines appropriate to perfect the security interests of the Administrative Agent under this Agreement. Each Borrower shall pay the costs of, or incidental to, any recording or filing of any financing statements concerning the Collateral. Each Borrower agrees that a carbon, photographic, photostatic, or other reproduction of this Agreement or of a financing statement is sufficient as a financing statement. If any Collateral is at any time in the possession or control of any warehouseman, bailee or such Borrower's agents or processors, such Borrower shall notify such warehouseman, bailee, agents or processors of the Administrative Agent's security interest, which notification shall specify that such Person shall hold all such Collateral for the benefit of the Administrative Agent and, upon the occurrence and during the continuance of an Event of Default, hold all such Collateral for the Administrative Agent's account subject to the Administrative Agent's instructions. From time to time, each Borrower shall, upon the Administrative Agent's request, execute and deliver written instruments pledging to the Administrative Agent the Collateral described in any such instruments or otherwise, but the failure of such Borrower to execute and deliver such confirmatory instruments shall not affect or limit the Administrative Agent's security interest or other rights in and to the Collateral. Until all Obligations have been fully satisfied and the Commitments shall have been terminated, the Administrative Agent's security interest in the Collateral, and all Proceeds and products thereof, shall continue in full force and effect.

(c) Notwithstanding subsections (a) and (b) of this Section 4.02, or any failure on the part of any Borrower or the Administrative Agent to take any of the actions set forth in such subsections, the Liens and security interests granted herein shall be deemed valid, enforceable and perfected by entry of the Interim Order and the Final Order, as applicable. No financing statement, notice of Lien, mortgage, deed of trust or similar instrument in any jurisdiction or filing office need be filed or any other action taken in order to validate and perfect the Liens and security interests granted by or pursuant to this Agreement or the Orders.

4.03    Rights of Lender; Limitations on Lenders' Obligations.

(a) Subject to each Borrower's rights and duties under the Bankruptcy Code (including Section 365 of the Bankruptcy Code), it is expressly agreed by each Borrower that, anything herein to the contrary notwithstanding, such Borrower shall remain liable under its Contracts to observe and perform all the conditions and obligations to be observed and performed by it thereunder. Neither the Administrative Agent nor any Secured Party shall have any obligation or liability under any Contract by reason of or arising out of this Agreement, the other Loan Documents or the Orders, or the granting to the Administrative Agent of a security interest therein or the receipt by the Administrative Agent or any Lender of any payment relating to any Contract pursuant hereto, nor shall the Administrative Agent be required or obligated in any manner to perform or fulfill any of the obligations of any Borrower under or pursuant to any Contract, or to make any payment, or to make any inquiry as to the nature or the sufficiency of any payment received by it or the sufficiency of any performance by any party under any Contract, or to present or file any claim, or to take any action to collect or enforce any performance or the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

(b) Subject to Section 4.05, the Administrative Agent authorizes each Borrower to collect its Accounts, provided that such collection is performed in accordance with such Borrower's customary procedures, and the Administrative Agent may, upon the occurrence and during the continuation of any Event of Default and without notice, other than any requirement of notice provided in the Orders, limit or terminate said authority at any time.

(c) Subject to any requirement of notice provided in the Orders, the Administrative Agent may at any time, upon the occurrence and during the continuation of any Event of Default, notify Account Debtors, notify the other parties to the Contracts of the Borrowers, notify obligors of Instruments and Investment Property of the Borrowers and notify obligors in respect of Chattel Paper of the Borrowers that the right, title and interest of the Borrowers in and under such Accounts, such Contracts, such Instruments, such Investment Property and such Chattel Paper have been assigned to the Administrative Agent and that payments shall be made directly to the Administrative Agent. Subject to any requirement of notice provided in the Orders, upon the request of the Administrative Agent, the Borrowers will so notify such Account Debtors, such parties to Contracts, obligors of such Instruments and Investment Property and obligors in respect of such Chattel Paper. Subject to any requirement of notice provided in the Orders, upon the occurrence and during the continuation of an Event of Default, the Administrative Agent may in its own name, or in the name of others, communicate with such parties to such Accounts, Contracts, Instruments, Investment Property and Chattel Paper to verify with such Persons to the Administrative Agent's reasonable satisfaction the existence, amount and terms of any such Accounts, Contracts, Instruments, Investment Property or Chattel Paper.

4.04    Covenants of the Borrowers with Respect to Collateral. Each Borrower hereby covenants and agrees with the Administrative Agent that from and after the date of this Agreement and until the Obligations are fully satisfied:

(a) Such Borrower will not, (i) change its jurisdiction of organization or the location of its chief executive office or sole place of business, or (ii) change its name, identity, taxpayer identification number, organizational identification number, or organizational structure or form to such an extent that any financing statement filed by the Administrative Agent in connection with this Agreement would become incorrect or misleading.

(b) Such Borrower will keep and maintain, at its own cost and expense, satisfactory and complete records of the Collateral, in all material respects, including, without limitation, a record of all payments received and all credits granted with respect to the Collateral and all other dealings concerning the Collateral. For the Administrative Agent's further security, each Borrower agrees that the Administrative Agent shall have a property interest in all of such Borrower's books and Records pertaining to the Collateral and, upon the occurrence and during the continuation of an Event of Default, such Borrower shall deliver and turn over any such books and Records to the Administrative Agent or to their respect representatives at any time on demand of the Administrative Agent.

(c) In any suit, proceeding or action brought by the Administrative Agent relating to any Account, Chattel Paper, Contract, General Intangible, Investment Property, Instrument, Intellectual Property or other Collateral for any sum owing thereunder or to enforce any provision of any Account, Chattel Paper, Contract, General Intangible, Investment Property, Instrument, Intellectual Property or other Collateral, such Borrower will save, indemnify and keep the Secured Parties harmless from and against all expense, loss or damage suffered by the Secured Parties by reason of any defense, setoff, counterclaim, recoupment or reduction of liability whatsoever of the obligor thereunder, arising out of a breach by such Borrower of any obligation thereunder or arising out of any other agreement, indebtedness or liability at any time owing to, or in favor of, such obligor or its successors from such Borrower, and all such obligations of such Borrower shall be and remain enforceable against and only against such Borrower and shall not be enforceable against the Administrative Agent.

(d) Such Borrower will not create, permit or suffer to exist, and will defend the Collateral against and take such other action as is necessary to remove, any Lien on the Collateral except Permitted Liens and will defend the right, title and interest of the Administrative Agent in and to all of such Borrower's rights under the Collateral and in and to the Proceeds thereof against the claims and demands of all Persons whomsoever other than claims or demands arising out of Permitted Liens.

(e) Such Borrower will not, without the Administrative Agent's prior written consent, grant any extension of the time of payment of any of the Accounts, Accounts Receivable, Chattel Paper, Instruments, Payment Intangibles or Supporting Obligations, compromise, compound or settle the same for less than the full amount thereof, release, wholly or partly, any Person liable for the payment thereof, or allow any credit or discount whatsoever thereon other than any of the foregoing which are done in the ordinary course of business, consistent with past practices and trade discounts granted in the ordinary course of business of such Borrower.

(f) Such Borrower will advise the Lenders promptly, in reasonable detail, (i) of any Lien asserted against any of the Collateral other than Permitted Liens and (ii) of the

occurrence of any other event which could have a Material Adverse Effect with respect to the aggregate value of the Collateral or on the security interests created hereunder.

(g) Such Borrower will keep and maintain the Equipment in good operating condition sufficient for the continuation of the business conducted by such Borrower on a basis consistent with past practices, ordinary wear and tear excepted.

(h) <u>Pledged Collateral</u>.

(i)   Upon request of the Administrative Agent, such Borrower will (x) deliver to the Administrative Agent, all certificates or Instruments representing or evidencing any Pledged Collateral, whether now arising or hereafter acquired, in suitable form for transfer by delivery or, as applicable, accompanied by such Borrower's endorsement, where necessary, or duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to the Administrative Agent, together with a Pledge Amendment, duly executed by the Borrowers, in form and substance acceptable to the Administrative Agent (a "<u>Pledge Amendment</u>"), in respect of such Additional Pledged Collateral and authorizes the Administrative Agent to attach each Pledge Amendment to this Agreement and (y) maintain all other Pledged Collateral constituting Investment Property in a Control Account subject to a binding Control Account Letter.  The Administrative Agent shall have the right, at any time in their discretion and without notice to the Borrowers, to transfer to or to register in its name or in the name of its nominees any or all of the Pledged Collateral.  The Administrative Agent shall have the right at any time to exchange certificates or instruments representing or evidencing any of the Pledged Collateral for certificates or instruments of smaller or larger denominations.

(ii)   Except as provided in <u>Section 4.07</u>, such Borrower shall be entitled to receive all cash dividends paid in respect of the Pledged Collateral (other than liquidating or distributing dividends) with respect to the Pledged Collateral.  Any sums paid upon or in respect of any of the Pledged Collateral upon the liquidation or dissolution of any issuer of any of the Pledged Collateral, any distribution of capital made on or in respect of any of the Pledged Collateral or any property distributed upon or with respect to any of the Pledged Collateral pursuant to the recapitalization or reclassification of the capital of any issuer of Pledged Collateral or pursuant to the reorganization thereof shall, unless otherwise subject to a perfected security interest in favor of the Administrative Agent, be delivered to the Administrative Agent to be held by it hereunder as additional collateral security for the Obligations.  If any sums of money or property so paid or distributed in respect of any of the Pledged Collateral shall be received by such Borrower, such Borrower shall, until such money or property is paid or delivered to the Administrative Agent, hold such money or property in trust for the Administrative Agent, segregated from other funds of such Borrower, as additional security for the Obligations.

(iii) Except as provided in <u>Section 4.07</u>, such Borrower will be entitled to exercise all voting, consent and corporate rights with respect to the Pledged Collateral; <u>provided</u>, <u>however</u>, that no vote shall be cast, consent given or right exercised or other action taken by such Borrower which would impair the Collateral or which would be inconsistent with or result in any violation of any provision of this Agreement, the other Loan Documents or the Orders or, without prior notice to the Administrative Agent, to enable or take any other action to permit any issuer of Pledged Collateral to issue any stock or other equity securities of any nature or to issue any other securities convertible into or granting the right to purchase or exchange for any stock or other equity securities of any nature of any issuer of Pledged Collateral.

(iv) Such Borrower shall not grant control over any Investment Property to any Person other than the Administrative Agent.

(v) In the case of each Borrower which is an issuer of Pledged Collateral, such Borrower agrees to be bound by the terms of this Agreement relating to the Pledged Collateral issued by it and will comply with such terms insofar as such terms are applicable to it. In the case of each Borrower which is a partner in a partnership, such Borrower hereby consents to the extent required by the applicable partnership agreement to the pledge by each other Borrower, pursuant to the terms hereof, of the Pledged Partnership Interests in such partnership and to the transfer of such Pledged Partnership Interests to the Administrative Agent or its nominee and to the substitution of the Administrative Agent or its nominee as a substituted partner in such partnership with all the rights, powers and duties of a general partner or a limited partner, as the case may be. In the case of each Borrower which is a member of a limited liability company, such Borrower hereby consents to the extent required by the applicable limited liability company agreement to the pledge by each other Borrower, pursuant to the terms hereof, of the Pledged LLC Interests in such limited liability company and to the transfer of such Pledged LLC Interests to the Administrative Agent or its nominee and to the substitution of the Administrative Agent or its nominee as a substituted member of the limited liability company with all the rights, powers and duties of a member of the limited liability company in question.

(vi) Such Borrower will not agree to any amendment of a limited liability company agreement or partnership agreement that in any way adversely affects the perfection of the security interest of the Administrative Agent in the Pledged Partnership Interests or Pledged LLC Interests pledged by such Borrower hereunder, including electing to treat the membership interest or partnership interest of such Borrower as a security under Section 8-103 of the UCC.

(i) I<u>ntellectual Property</u>.

(i)    Such Borrower (either itself or through licensees) will (i) continue to use each Trademark that is Intellectual Property in order to maintain such Trademark in full force and effect with respect to each class of goods for which

such Trademark is currently used, free from any claim of abandonment for non-use, (ii) maintain as in the past the quality of products and services offered under such Trademark, (iii) use such Trademark with the appropriate notice of registration and all other notices and legends required by applicable Requirements of Law, (iv) not adopt or use any mark which is confusingly similar or a colorable imitation of such Trademark unless the Administrative Agent shall obtain a perfected security interest in such mark pursuant to this Agreement and (v) not (and not permit any licensee or sublicensee thereof to) do any act or knowingly omit to do any act whereby such Trademark may become invalidated or impaired in any way.

(ii)   Such Borrower (either itself or through licensees) will not do any act, or omit to do any act, whereby any Patent which is Intellectual Property may become forfeited, abandoned or dedicated to the public.

(iii)   Such Borrower (either itself or through licensees) (i) will not (and will not permit any licensee or sublicensee thereof to) do any act or omit to do any act whereby any portion of the Copyrights which is Intellectual Property may become invalidated or otherwise impaired and (ii) will not (either itself or through licensees) do any act whereby any portion of the Copyrights which is Intellectual Property may fall into the public domain.

(iv) Such Borrower (either itself or through licensees) will not do any act, or omit to do any act, whereby any trade secret which is Intellectual Property may become publicly available or otherwise unprotectable.

(v)   Such Borrower (either itself or through licensees) will not do any act that knowingly uses any Intellectual Property to infringe the intellectual property rights of any other Person.

(vi) Such Borrower will notify the Administrative Agent immediately if it knows, or has reason to know, that any application or registration relating to any Intellectual Property may become forfeited, abandoned or dedicated to the public, or of any adverse determination or development (including the institution of, or any such determination or development in, any proceeding in the United States Patent and Trademark Office, the United States Copyright Office or any court or tribunal in any country) regarding such Borrower's ownership of, right to use, interest in, or the validity of, any Intellectual Property or such Borrower's right to register the same or to own and maintain the same.

(vii) Whenever such Borrower, either by itself or through any agent, licensee or designee, shall file an application for the registration of any Intellectual Property with the United States Patent and Trademark Office, the United States Copyright Office or any similar office or agency within or outside the United States, such Borrower shall report such filing to the Administrative Agent within five Business Days after the last day of the fiscal quarter in which such filing occurs. Upon request of the Administrative Agent, such Borrower shall execute

- 38 -

and deliver, and have recorded, any and all agreements, instruments, documents, and papers as the Administrative Agent may request to evidence the Administrative Agent's security interest in any Copyright, Patent or Trademark and the goodwill and general intangibles of such Borrower relating thereto or represented thereby.

(viii)Such Borrower will take all reasonable actions necessary or requested by the Administrative Agent, including in any proceeding before the United States Patent and Trademark Office, the United States Copyright Office or any similar office or agency, to maintain and pursue each application (and to obtain the relevant registration) and to maintain each registration of any Copyright, Trademark or Patent that is Intellectual Property, including filing of applications for renewal, affidavits of use, affidavits of incontestability and opposition and interference and cancellation proceedings.

(ix) I n the event that any Intellectual Property is infringed upon or misappropriated or diluted by a third party, such Borrower shall notify the Administrative Agent promptly after such Borrower learns thereof.  Such Borrower shall take appropriate action in response to such infringement, misappropriation or dilution, including promptly bringing suit for infringement, misappropriation or dilution and to recover any and all damages for such infringement, misappropriation or dilution, and shall take such other actions may be appropriate in its reasonable judgment under the circumstances to protect such Intellectual Property.

4.05    Performance by Agent of the Borrowers' Obligations.    If any Borrower fails to perform or comply with any of its agreements contained herein and the Administrative Agent, as provided for by the terms of this Agreement, shall perform or comply, or otherwise cause performance or compliance, with such agreement, the expenses of the Administrative Agent incurred in connection with such performance or compliance, together with interest thereon at the rate then in effect in respect of the Loans, shall be payable by such Borrower to the Administrative Agent on demand and shall constitute Obligations secured by the Collateral. Performance of such Borrower's obligations as permitted under this Section 4.05 shall in no way constitute a violation of the automatic stay provided by Section 362 of the Bankruptcy Code and each Borrower hereby waives applicability thereof.  Moreover, neither the Administrative Agent nor the Lenders shall be responsible for the payment of any costs incurred in connection with preserving or disposing of Collateral pursuant to Section 506(c) of the Bankruptcy Code and the Collateral may not be charged for the incurrence of any such cost.

4.06    Limitation on Agent's Duty in Respect of Collateral.    Neither the Administrative Agent nor any Lender shall have any duty as to any Collateral in its possession or control or in the possession or control of any agent or nominee of it or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto, except that the Administrative Agent shall, with respect to the Collateral in their possession or under their control, deal with such Collateral in the same manner as the Administrative Agent deal with similar property for its own account.  Upon request of the Borrower, the Administrative Agent shall account for any moneys received by them in respect of any foreclosure on or disposition of the Collateral of any Borrower.

- 39 -

4.07    Remedies, Rights Upon Default.

(a) If any Event of Default shall occur and be continuing, the Administrative Agent may exercise in addition to all other rights and remedies granted to it in this Agreement, any other Loan Document and the Orders, all rights and remedies of a secured party under the UCC. Without limiting the generality of the foregoing, each Borrower expressly agrees that in any such event the Administrative Agent, without demand of performance or other demand, advertisement or notice of any kind (except the notice required by the Interim Order or Final Order or the notice specified below of time and place of public or private sale) to or upon such Borrower or any other Person (all and each of which demands, advertisements and/or notices are hereby expressly waived to the maximum extent permitted by the UCC and other applicable law), may forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give an option or options to purchase, or sell or otherwise dispose of and deliver said Collateral (or contract to do so), or any part thereof, in one or more parcels at public or private sale or sales, at any exchange or broker's board or at any of the Administrative Agent's offices or elsewhere at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Administrative Agent shall have the right upon any such public sale or sales to purchase the whole or any part of said Collateral so sold, free of any right or equity of redemption, which equity of redemption each Borrower hereby releases. Each Borrower further agrees, at the Administrative Agent's request, to assemble the Collateral and make it available to the Administrative Agent at places which the Administrative Agent shall reasonably select, whether at such Borrower's premises or elsewhere. The Administrative Agent shall apply the proceeds of any such collection, recovery, receipt, appropriation, realization or sale (net of all expenses incurred by the Administrative Agent in connection therewith, including, without limitation, attorney's fees and expenses), to the Obligations in any order deemed appropriate by the Administrative Agent, such Borrower remaining liable for any deficiency remaining unpaid after such application, and only after so paying over such net proceeds and after the payment by the Administrative Agent of any other amount required by any provision of law, including, without limitation, the UCC, need the Administrative Agent account for the surplus, if any, to such Borrower. To the maximum extent permitted by applicable law, each Borrower waives all claims, damages, and demands against the Administrative Agent and the Lenders arising out of the repossession, retention or sale of the Collateral except such as arise out of the gross negligence or willful misconduct of the Administrative Agent. Each Borrower agrees that the Administrative Agent need not give more than seven (7) days' notice to the Borrowers (which notification shall be deemed given when mailed or delivered on an overnight basis, postage prepaid, addressed to the Borrowers at their address referred to in Section 11.03) of the time and place of any public sale of Collateral or of the time after which a private sale may take place and that such notice is reasonable notification of such matters. The Administrative Agent and their respective agents shall have the right to enter upon any real property owned or leased by any Borrower to exercise any of its rights or remedies under this Agreement. The Administrative Agent shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. The Administrative Agent may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and any such sale may, without further notice, be made at the time and place to which it was adjourned. Each Borrower shall remain liable for any deficiency if the proceeds of any sale or disposition of the Collateral are insufficient to pay its Obligations and all other amounts to

- 40 -

which the Administrative Agent are entitled, the Borrowers also being liable for the fees and expenses of any attorneys employed by the Administrative Agent to collect such deficiency.

(b) Each Borrower hereby waives presentment, demand, protest or any notice (to the maximum extent permitted by applicable law) of any kind in connection with this Agreement or any Collateral.

(c) <u>Pledged Collateral</u>.

(i) During the continuance of an Event of Default, if the Administrative Agent shall give notice of its intent to exercise such rights to the relevant Borrower or Borrowers, (i) the Administrative Agent shall have the right to receive any and all cash dividends, payments or other Proceeds paid in respect of the Pledged Collateral and make application thereof to the Obligations in the order set forth in Section 3.03(b), and (ii) the Administrative Agent or its nominee may exercise (A) all voting, consent, corporate and other rights pertaining to the Pledged Collateral at any meeting of shareholders, partners or members, as the case may be, of the relevant issuer or issuers of Pledged Collateral or otherwise and (B) any and all rights of conversion, exchange and subscription and any other rights, privileges or options pertaining to the Pledged Collateral as if it were the absolute owner thereof (including the right to exchange at its discretion any and all of the Pledged Collateral upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the corporate structure of any issuer of Pledged Securities, the right to deposit and deliver any and all of the Pledged Collateral with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as the Administrative Agent may determine), all without liability except to account for property actually received by it, but the Administrative Agent shall have no duty to any Borrower to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(ii) In order to permit the Administrative Agent to exercise the voting and other consensual rights which it may be entitled to exercise pursuant hereto and to receive all dividends and other distributions which it may be entitled to receive hereunder, (i) each Borrower shall promptly execute and deliver (or cause to be executed and delivered) to the Administrative Agent all such proxies, dividend payment orders and other instruments as the Administrative Agent may from time to time reasonably request and (ii) without limiting the effect of <u>clause (i)</u> above, such Borrower hereby grants to the Administrative Agent an irrevocable proxy to vote all or any part of the Pledged Collateral and to exercise all other rights, powers, privileges and remedies to which a holder of the Pledged Collateral would be entitled (including giving or withholding written consents of shareholders, partners or members, as the case may be, calling special meetings of shareholders, partners or members, as the case may be, and voting at such meetings), which proxy shall be effective, automatically and without the necessity of any action (including any transfer of any Pledged Collateral on the record books of the issuer thereof) by any other person (including the issuer of such Pledged

- 41 -

Collateral or any officer or agent thereof) during the continuance of an Event of Default and which proxy shall only terminate upon the payment in full of the Obligations.

(iii) Each Borrower hereby expressly authorizes and instructs each issuer of any Pledged Collateral pledged hereunder by such Borrower to (i) comply with any instruction received by it from the Administrative Agent in writing that (A) states that an Event of Default has occurred and is continuing and (B) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from such Borrower, and each Borrower agrees that such issuer shall be fully protected in so complying and (ii) unless otherwise expressly permitted hereby, pay any dividends or other payments with respect to the Pledged Collateral directly to the Administrative Agent.

4.08    Appointment as Attorney-in-Fact.

(a) Each Borrower hereby irrevocably constitutes and appoints the Administrative Agent and any officer or agent thereof, with full power of substitution, as their and their Subsidiaries' true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Borrower and in the name of such Borrower, or in its own name, from time to time in the Administrative Agent's discretion, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute and deliver any and all documents and instruments which may be necessary and desirable to accomplish the purposes of this Agreement and the transactions contemplated hereby, and, without limiting the generality of the foregoing, hereby give the Administrative Agent the power and right, on behalf of such Borrower, without notice to or assent by such Borrower to do the following:

(i)    to ask, demand, collect, receive and give acquittances and receipts for any and all moneys due and to become due under any Collateral and, in the name of such Borrower, its own name or otherwise, to take possession of and endorse and collect any checks, drafts, notes, acceptances or other Instruments for the payment of moneys due under any Collateral and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by the Administrative Agent for the purpose of collecting any and all such moneys due under any Collateral whenever payable and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by the Administrative Agent for the purpose of collecting any and all such moneys due under any Collateral whenever payable;

(ii)    to pay or discharge taxes, Liens, security interests or other encumbrances levied or placed on or threatened against the Collateral, to effect any repairs or any insurance called for by the terms of this Agreement and to pay all or any part of the premiums therefor and the costs thereof; and

(iii)    (A) to direct any party liable for any payment under any of the Collateral to make payment of any and all moneys due, and to become due thereunder, directly to the Administrative Agent or as the Administrative Agent

shall direct; (B) to receive payment of and receipt for any and all moneys, claims and other amounts due, and to become due at any time, in respect of or arising out of any Collateral; (C) to sign and indorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications and notices in connection with accounts and other documents constituting or relating to the Collateral; (D) to commence and prosecute any suits, actions or proceedings at law or equity in any court of competent jurisdiction to collect the Collateral or any part thereof and to enforce any other right in respect of any Collateral; (E) to defend any suit, action or proceeding brought against any Borrower with respect to any Collateral of such Borrower; (F) to settle, compromise or adjust any suit, action or proceeding described above and, in connection therewith, to give such discharges or releases as the Administrative Agent may deem appropriate; (G) to license or, to the extent permitted by an applicable license, sublicense, whether general, special or otherwise, and whether on an exclusive or non-exclusive basis, any trademarks, throughout the world for such term or terms, on such conditions, and in such manner, as the Administrative Agent shall in their sole discretion determine; and (H) generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though the Administrative Agent were the absolute owner thereof for all purposes, and to do, at the Administrative Agent's option and such Borrower's expense, at any time, or from time to time, all acts and things which the Administrative Agent reasonably deem necessary to protect, preserve or realize upon the Collateral and the Administrative Agent's Lien therein, in order to effect the intent of this Agreement, all as fully and effectively as such Borrower might do.

(b) The Administrative Agent agrees that it will forbear from exercising the power of attorney or any rights granted to the Administrative Agent pursuant to this Section 4.08, except upon the occurrence or during the continuation of an Event of Default. The Borrowers hereby ratify, to the extent permitted by law, all that said attorneys shall lawfully do or cause to be done by virtue hereof. Exercise by the Administrative Agent of the powers granted hereunder is not a violation of the automatic stay provided by Section 362 of the Bankruptcy Code and each Borrower waives applicability thereof. The power of attorney granted pursuant to this Section 4.08 is a power coupled with an interest and shall be irrevocable until the Obligations are indefeasibly paid in full.

(c) The powers conferred on the Administrative Agent hereunder are solely to protect the Administrative Agent's and the Lenders' interests in the Collateral and shall not impose any duty upon them to exercise any such powers. The Administrative Agent shall be accountable only for amounts that it actually receive as a result of the exercise of such powers and neither it nor any of its officers, directors, employees or agents shall be responsible to any Borrower for any act or failure to act, except for their own gross negligence or willful misconduct.

(d) Each Borrower also authorizes the Administrative Agent, at any time and from time to time upon the occurrence and during the continuation of any Event of Default or as otherwise expressly permitted by this Agreement, (i) to communicate in its own name or the

- 43 -

name of its Subsidiaries with any party to any Contract with regard to the assignment of the right, title and interest of such Borrower in and under the Contracts hereunder and other matters relating thereto and (ii) to execute any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

4.09    Secured, Superpriority Obligations. Each Borrower covenants, represents, and warrants that, upon the entry of the Interim Order or the Final Order, as applicable, on and after the Closing Date:

(a) the provisions of the Loan Documents and the Orders are effective to create in favor of the Administrative Agent, for the benefit of the Secured Parties, legal, valid and perfected Liens on and security interests (having the priority provided for herein and in the Orders) in all right, title and interest of each Borrower in the Collateral;

(b) all Obligations will:

(i)    pursuant to Section 364(c)(1) of the Bankruptcy Code and the Orders, at all times constitute allowed super-priority administrative expense claims in the Cases having priority over (A) all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code and (B) all expenses and claims of the Borrowers, whether heretofore or hereafter incurred, including, without limitation, the kind specified in Sections 105, 326, 328, 506(c), 507(a) and 1114 of the Bankruptcy Code, in each case subject only to the Carve-Out.

(ii)    be secured pursuant to Section 364(c)(2) of the Bankruptcy Code and the Orders, by a first priority perfected security interest in and Lien on all Property that is unencumbered as of the date hereof, subject only to the Carve-Out and the Liens on the B of A Collateral; and

(iii)    be secured pursuant to Section 364(c)(3) of the Bankruptcy Code and the Orders, by a perfected junior Lien on, and security interest in, and mortgage against all Property (other than the B of A Collateral) that is subject to valid and perfected Liens in existence at the time of the commencement of the Cases or to valid Liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code, subject only to the Carve-Out.

(c) This Agreement and the other Loan Documents are in full force and effect and the Orders are Non-Stayed Orders.

(i)    The Liens, lien priority, administrative priorities and other rights and remedies granted to the Administrative Agent for the benefit of the Lenders pursuant to this Agreement, the Interim Order and/or the Final Order (specifically, including, but not limited to, the existence, perfection and priority of the Liens provided herein and therein and the administrative priority provided herein and therein) shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of Indebtedness by any of the Borrowers (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by

- 44 -

any dismissal or conversion of the Cases, or by any other act or omission whatsoever.

(d)      Notwithstanding any failure on the part of any Borrower, on the one hand, or the Administrative Agent or the Lenders on the other hand, to perfect, maintain, protect or enforce the Liens and security interests in the Collateral granted hereunder, the Interim Order and the Final Order (when entered) shall automatically, and without further action by any Person, perfect such Liens and security interests against the Collateral.

### Section 5. Conditions Precedent

5.01      Conditions Precedent to Initial Loan. The obligation of the Lenders to make the initial Loans (or otherwise to extend any credit provided for hereunder), is subject to the fulfillment, to the satisfaction of the Lenders, of each of the conditions precedent set forth below:

(a)      Loan Agreement. The Administrative Agent and the Lenders shall have received an executed copy of this Loan Agreement.

(b)      Loan Documents. The Administrative Agent and the Lenders shall have received executed copies of each of the other Loan Documents, to the extent applicable, each of which shall be satisfactory to the Administrative Agent and the Lenders in form and substance;

(c)      Good Standing Certificates/Organization Document. The Administrative Agent and the Lenders shall have received certified copies of good standing certificates and organizational documents for each of the Borrowers;

(d)      Resolutions. The Administrative Agent and the Lenders shall have received certified copies of resolutions authorizing the Borrowers to execute, deliver and perform the Loan Documents to which such Person is a signatory and each other document to be delivered by such Person from time to time in connection herewith (and the Administrative Agent and the Lenders may conclusively rely on such certificate until it receives notice in writing from such Person to the contrary);

(e)      Legal Opinions. The Administrative Agent and the Lenders shall have received the following legal opinions for their benefit an opinion of counsel to the Borrowers in form and substance satisfactory to the Administrative Agent and the Lenders;

(f)      Incumbency Certificate. The Administrative Agent shall have received a certificate of each Borrower certifying the names and true signatures of the officers of Loan authorized to sign the Loan Documents to which such Credit Party is a party and any other documents to which such Borrower is a party that may be executed and delivered in connection herewith.

(g)      Filings, Registrations, Recordings. (i) The Borrowers shall have taken such action as the Administrative Agent shall have requested in order to perfect the security interests in favor of the Administrative Agent created pursuant to this Loan Agreement and the

Orders; and (ii) the Borrowers shall have properly prepared and executed (if necessary) for filing any documents (including, without limitation, financing statements) requested by the Administrative Agent to be filed, registered or recorded in order to further evidence the perfected, first-priority security interest in the Collateral created under this Loan Agreement and the Orders, subject to no Liens other than those created in favor of the Administrative Agent and the Lenders hereunder and under the Orders and other Liens permitted hereunder;

(h)      [Intentionally Omitted]

(i)      Fees and Expenses.  The Administrative Agent and the Lenders shall have received all fees and expenses required to be paid by the Borrowers on or prior to the Closing Date under this Loan Agreement or any other Loan Document (and such fees and expenses may be netted out of any Loan made by the Lender hereunder);

(j)      Consents, Licenses, Approvals, etc.  The Administrative Agent and the Lenders shall have received copies certified by the Borrowers of all consents, licenses and approvals, if any, required in connection with the execution, delivery and performance by the Borrowers of, and the validity and enforceability of, the Loan Documents, which consents, licenses and approvals shall be in full force and effect;

(k)      Insurance.  The Administrative Agent and the Lenders shall have received a certificate of insurance, together with the endorsements thereto, the form and substance of which shall be satisfactory to the Administrative Agent and the Lenders, and shall have received evidence in form and substance satisfactory to the Administrative Agent and the Lenders showing compliance by the Borrowers as of such initial Funding Date with Section 7.19;

(l)      No Material Adverse Change.  Other than the filing of the Chapter 11 Cases, no Material Adverse Change shall have occurred;

(m)      No Misrepresentation.  None of the Borrowers, the Administrative Agent or any Lender shall have become aware prior to the Closing Date of any information or other matter affecting (i) the Borrowers, any of their Affiliates or the Collateral, or (ii) the transactions contemplated hereby, any of which in the Administrative Agent's or any Lender's judgment is inconsistent in a material and adverse manner with any information or other matter disclosed to the Administrative Agent and the Lenders prior to the Closing Date;

(n)      Interim Order.  At the time of the making of the initial Loan, the Administrative Agent and the Lenders shall have received satisfactory evidence of the entry of the Interim Order which Interim Order shall authorize Loans in an aggregate amount that will permit Borrowers to have Availability, after consideration of the funding of any amounts required to be funded pursuant to Section 5.01(p) of not less than $10,000,000 (such authorized amount, the "Interim Amount") and not more than the Maximum Credit;

(o)      First Day Orders.  The Borrowers shall have delivered to the Administrative Agent and the Lenders copies of all of the "first day orders" entered by the Bankruptcy Court at the time of the commencement of the Chapter 11 Cases;

(p)        Funding of Accounts. The Administrative Agent shall be satisfied that at the time of making the initial Loan (either from the proceeds of such initial Loan or otherwise), the Borrowers shall have deposited (i) at least $1,000,000 in the Lender Expenses Escrow Subaccount and (ii) at least an amount (such amount, the "Interim Interest Escrow Deposit") equal to the product of (x) an amount equal to all interest payments (assuming that an amount of Loans equal to the Total Commitment is borrowed on the Closing Date and that the interest rate applicable to the Loans is at a rate per annum equal to the LIBO Rate on the Closing Date plus the Applicable Margin) due and payable at any time on or before the Maturity Date (such amount, the "Interest Escrow Deposit") and (y) a fraction the denominator of which is the Interim Amount and the numerator of which is the Maximum Credit at such time, in the Interest Escrow Subaccount.

(q)        Other Documents. The Administrative Agent and each Lender shall have received such other documents as the Administrative Agent or such Lender or its respective counsel may reasonably request.

5.02      Conditions Precedent to Initial and Subsequent Loans. The obligation of the Lenders to make any Loans hereunder at any time (or to extend any other credit hereunder) shall be subject to the following conditions precedent:

(a)        no Default or Event of Default shall have occurred and be continuing or would result from the making of such Loans;

(b)        both immediately prior to the making of such Loan and also after giving effect thereto, evidence satisfactory to the Administrative Agent that both the amount and intended use of proceeds of such Loan are in compliance with the Budget;

(c)        both immediately prior to the making of such Loan and also after giving effect thereto and to the intended use thereof, the representations and warranties made by each Borrower in Section 6 hereof, and in each of the other Loan Documents, shall be true and complete on and as of the date of the making of such Loan in all material respects with the same force and effect as if made on and as of such date (or, if any such representation or warranty is expressly stated to have been made as of a specific date, as of such specific date). At the request of the Administrative Agent, the Administrative Agent shall have received an officer's certificate signed by a Responsible Officer of each Borrower certifying as to the truth and accuracy of the above;

(d)        after giving effect to such Loan, the outstanding principal amount of the Loans shall not exceed the Maximum Credit;

(e)        after entry of the Final Order, the Borrowers shall have deposited at least an amount equal to the sum of the Interest Escrow Deposit minus the Interim Interest Escrow Deposit in the Interest Escrow Subaccount;

(f)        the Administrative Agent and each Lender shall have received a Borrowing Notice;

- 47 -

(g)      the Interim Order or, after September 7, 2007, the Final Order shall not have been stayed in any respect; and if either the Interim Order or the Final Order is the subject of a pending appeal in any respect, neither the making of the Loans nor the performance by the Borrowers of any of their respective obligations under any of the Loan Documents shall be the subject of a presently effective stay pending appeal; and

(h)      there shall not have occurred or be continuing an event beyond the reasonable control of the Administrative Agent or any Lender which the Administrative Agent or such Lender reasonably determines may imminently result in the Administrative Agent's or such Lender's inability to perform its obligations under this Loan Agreement including, without limitation, acts of God, strikes, lockouts, riots, acts of war or terrorism, epidemics, nationalization, expropriation, currency restrictions, fire, communication line failures, computer viruses, power failures, earthquakes, or other disasters of a similar nature to the foregoing.

Each Borrowing Notice hereunder shall constitute a certification by the Borrowers to the effect set forth in this Section 5.02 (both as of the date of such Borrowing Notice, request or confirmation and as of the date of such borrowing).

**Section 6. <u>Borrowers Representations and Warranties</u>**.    Each Borrower represents and warrants to the Administrative Agent and the Lenders that throughout the term of this Loan Agreement:

6.01      <u>Existence; Compliance with Law</u>.  Each Borrower (a) except in the case of AHMV, is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of organization as set forth on <u>Schedule 6.01(a)</u> hereto, (b) in the case of AHMV is a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction of organization as set forth in <u>Schedule 6.01(a)</u> hereof, (c) has all requisite corporate (or, in the case of AHMV, limited liability company) or other power, and has all governmental licenses, authorizations, consents and approvals, necessary to own its assets and carry on its business as now being or as proposed to be conducted, except as set forth on <u>Schedule 6.01(b)</u> or where the lack of such licenses, authorizations, consents and approvals would not be reasonably likely to have a Material Adverse Effect; and (d) is qualified to do business and is in good standing in all other jurisdictions in which the nature of the business conducted by it makes such qualification necessary, except where failure so to qualify would not be reasonably likely (either individually or in the aggregate) to have a Material Adverse Effect; and (c) is in compliance in all material respect with all Requirements of Law.

6.02      <u>Financial Condition</u>.  The Borrowers have heretofore furnished to the Lenders a copy of the Parent's audited consolidated balance sheets as of December 31, 2006, with the opinion thereon of Deloitte & Touche LLP, a copy of which has been provided to Lenders.  The Borrowers have also heretofore furnished to the Lenders the related consolidated statement of income and retained earnings and of cash flows for the Borrowers and their consolidated Subsidiaries for the one-year period ending December 31, 2006, setting forth comparative form the figures for the previous period.  All such financial statements are materially complete and correct and fairly present in all material respects the consolidated financial condition of the Borrowers and their Subsidiaries and the consolidated results of their operations for the fiscal year ended on such date, all in accordance with GAAP applied on a

consistent basis.  The Borrowers did not have, as of the date of the latest financial statements referred to above, and will not have as of the Closing Date after giving effect to the borrowing of Loans hereunder, any material or significant contingent liability or liability for taxes, long-term leases or unusual forward or long-term commitments that is not reflected in the foregoing financial statements or the notes thereto in accordance with GAAP and that in any such case is material in relation to the business, operations, properties, assets, financial or other condition or prospects of the Borrowers.

6.03     Litigation.  Except as set forth in Schedule 6.03, there are no actions, suits, arbitrations, investigations or proceedings pending or, to its knowledge, threatened against any Borrower or any Affiliate of any Borrower or affecting any of the property thereof before any Governmental Authority, (i) as to which individually or in the aggregate there is a reasonable likelihood of an adverse decision which would be reasonably likely to have a Material Adverse Effect, or (ii) which questions the validity or enforceability of any of the Loan Documents or any action to be taken in connection with the transactions contemplated hereby or thereby and there is a reasonable likelihood of a materially adverse decision or a Material Adverse Effect.  The disclosure of any action, suit, arbitration, investigation or proceeding on Schedule 6.03 shall not operate as a consent to such matter, or a waiver or an amendment of any right, power, or remedy of the Administrative Agent or any Lender with respect to such matter, including the Administrative Agent's and the Lenders' right to exercise its remedies in the event that any matter listed on Schedule 6.03 is, results in, or has a Material Adverse Change or has a Material Adverse Effect.

6.04     No Breach.  Subject to the entry of the Interim Order (or the Final Order, when applicable), neither (a) the execution and delivery of the Loan Documents or (b) the consummation of the transactions therein contemplated in compliance with the terms and provisions thereof will conflict with or result in a breach of the charter or by-laws of any Borrower, or any applicable law, rule or regulation, or any order, writ, injunction or decree of any Governmental Authority, or other instrument, indenture, or other material agreement, to which any Borrower or any of its Subsidiaries is a party or by which any of them or any of their property is bound or to which any of them is subject (other than conflicts, breaches and defaults the enforcement of which will be stayed by virtue of the filing of the Chapter 11 Cases), or constitute a default under any such instrument, indenture, or other material agreement or (except for the Liens created pursuant to this Loan Agreement) result in the creation or imposition of any Lien upon any property of any Borrower or any of its Subsidiaries, pursuant to the terms of any such agreement or instrument.

6.05     Action.  Subject to the entry of the Interim Order (or the Final Order, when applicable), each Borrower has all necessary corporate or other power, authority and legal right to execute, deliver and perform its obligations under each of the Loan Documents to which it is a party; the execution, delivery and performance by each Borrower of each of the Loan Documents to which it is a party has been duly authorized by all necessary corporate or other action on its part; and each Loan Document has been duly and validly executed and delivered by each Borrower and constitutes a legal, valid and binding obligation of each Borrower, enforceable against each Borrower in accordance with its terms.

- 49 -

6.06     Approvals. No authorizations, approvals or consents of, and no filings or registrations with, any Governmental Authority, or any other Person, are necessary for the execution, delivery or performance by any Borrower of the Loan Documents to which it is a party or for the legality, validity or enforceability thereof, except for the Interim Order (or the Final Order, when applicable) and those consents which have been obtained.

6.07     Margin Regulations. Neither the making of any Loan hereunder, nor the use of the proceeds thereof, will violate or be inconsistent with the provisions of Regulation T, U or X.

6.08     Taxes. Each Borrower and its Subsidiaries have filed all federal income Tax Returns and all other material Tax Returns that are required to be filed by them and have paid all Taxes otherwise required to be paid by them, except for any such taxes (other than payroll Taxes), if any, that are being appropriately contested in good faith by appropriate proceedings diligently conducted and with respect to which adequate reserves have been provided in accordance with GAAP or except as permitted by the Bankruptcy Code to the contrary. The charges, accruals and reserves on the books of each Borrower and its Subsidiaries in respect of taxes and other governmental charges are adequate The information provided to the Administrative Agent and the Lenders with respect to anyTax Refund Receivables is accurate and complete in all respects.

6.09     Intellectual Property. Each Borrower owns, or is licensed to use, all Intellectual Property necessary for the conduct of its business as currently conducted. No material claim has been asserted and is pending by any Person challenging or questioning the use of any Intellectual Property or the validity or effectiveness of any Intellectual Property, nor does any Borrower know of any valid basis for any such claim. The use of Intellectual Property by each Borrower does not infringe on the rights of any Person in any material respect.

6.10     Environmental Matters.

(a)     The operations of the Borrowers have been and are in compliance with all Environmental Laws, including obtaining and complying with all required environmental, health and safety Permits, other than non-compliances that in the aggregate have (i) no reasonable likelihood of the Borrowers incurring Environmental Liabilities and Costs in excess of $50,000 and (ii) no Material Adverse Effect.

(b)     None of the Borrowers or any Property currently or, to the knowledge of the Borrowers, previously owned, operated or leased by or for any Borrower is subject to any pending or, to the knowledge of the Borrowers, threatened, claim, order, agreement, notice of violation, notice of potential liability or is the subject of any pending or threatened proceeding or governmental investigation under or pursuant to Environmental Laws other than those that in the aggregate have (i) no reasonable likelihood of the Borrowers incurring Environmental Liabilities and Costs in excess of $50,000 and (ii) no Material Adverse Effect.

(c)     None of the Borrower or any of its Subsidiaries is a treatment, storage or disposal facility requiring a Permit under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, the regulations thereunder or any state analog.

(d)        There are no facts, circumstances or conditions arising out of or relating to the operations or ownership of real property owned, operated or leased by the Borrowers that are not specifically included in the financial information furnished to the Lenders other than those that in the aggregate have (i) no reasonable likelihood of the Borrowers incurring Environmental Liabilities and Costs in excess of $50,000 and (ii) no Material Adverse Effect.

(e)        As of the date hereof, to the knowledge of the Borrowers; no Environmental Lien has attached to any property of any Borrower and, to the knowledge of the Borrowers, no facts, circumstances or conditions exist that could reasonably be expected to result in any such Lien attaching to any such property.

(f)        The Borrowers have provided the Lenders with copies of all environmental, health or safety audits, studies, assessments, inspections, investigations or other environmental health and safety reports relating to the operations of the Borrowers or any of their real property that are in the possession, custody or control of the Borrowers.

6.11        Investment Company Act.    No Borrower nor any Subsidiary of a Borrower is an "investment company", or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended.    No Borrower is subject to any federal or state statute or regulation that limits its ability to incur indebtedness.

6.12        No Legal Bar.    Subject to the entry of the Interim Order (or the Final Order, when applicable), neither the execution, delivery and performance of this Loan Agreement, the borrowings hereunder and the use of the proceeds thereof nor the provisions of any other Loan Documents will violate any Requirement of Law or Contractual Obligation (other than violations the enforcement of which will be stayed by virtue of the filing of the Chapter 11 Cases) of any Borrower or of any Subsidiary of a Borrower and will not result in, or require, the creation or imposition of any Lien (other than the Liens created hereunder) on any of its respective properties or revenue, pursuant to any such Requirement of Law or Contractual Obligation.

6.13        No Default.    No Default or Event of Default has occurred and is continuing.

6.14        Collateral; Collateral Security; Administrative Priority.

(a)        Except for Permitted Liens, no Borrower has assigned, pledged, or otherwise conveyed or encumbered any Collateral to any other Person.    The Borrowers represents that they are the sole owners of the Collateral and have good and marketable title thereto free and clear of all Liens, other than the Lien of the Administrative Agent and Permitted Liens.

(b)        The provisions of this Loan Agreement, together with the Interim Order (or the Final Order, when applicable), are effective to create in favor of the Administrative Agent a valid and perfected security interest in all right, title and interest of the Borrowers in, to and under the Collateral.

- 51 -

(c)      Upon the entry of the Interim Order (or the Final Order when applicable), the Administrative Agent has the priority of Liens and claims as set forth in Section 4.09.

6.15    <u>Location of Books and Records</u>.  The location where each Borrower keeps its books and records including all computer tapes and records relating to the Collateral is at 538 Broadhollow Road Melville, New York.

6.16    <u>True and Complete Disclosure</u>.  The information, reports, financial statements, exhibits and schedules furnished in writing by or on behalf of the Borrowers to the Administrative Agent or any Lender in connection with the negotiation, preparation or delivery of this Loan Agreement, the other Loan Documents or included herein or therein or delivered pursuant hereto or thereto, when taken as a whole, do not contain any untrue statement of material fact or omit to state any material fact necessary to make the statements herein or therein, in light of the circumstances under which they were made, not misleading.  All written information furnished after the date hereof by or on behalf of the Borrowers to the Administrative Agent or any Lender in connection with this Loan Agreement, the other Loan Documents and the transactions contemplated hereby and thereby will be true, complete and accurate in every material respect, or (in the case of the Budget (other than historical information) or projections) based on reasonable estimates, on the date as of which such information is stated or certified.  There is no Material Adverse Change and no fact known to a Responsible Officer that could reasonably be expected to have a Material Adverse Effect that has not been disclosed herein, in the other Loan Documents or in a report, financial statement, exhibit, schedule, disclosure letter or other writing furnished to the Lenders for use in connection with the transactions contemplated hereby or thereby.

6.17    <u>ERISA</u>.  Each Plan to which a Borrower or its Subsidiaries make direct contributions, and, to the knowledge of each Borrower, each other Plan and each Multiemployer Plan, is in compliance in all material respects with, and has been administered in all material respects in compliance with, the applicable provisions of ERISA, the Code and any other federal or state law.  No event or condition has occurred and is continuing as to which any Borrower would be under an obligation to furnish a report to the Administrative Agent under <u>Section 7.01(g)</u> hereof.  No accumulated funding deficiency (as defined in <u>Section 412</u> of the Code or <u>Section 302</u> of ERISA) has occurred with respect to any Plan.  No Borrower nor any ERISA Affiliate is subject to any present or potential liability under Title IV of ERISA that, individually or in the aggregate, could have a Materially Adverse Effect.  No material liability to the PBGC (other than required premium payments), the Internal Revenue Service, any Plan or trust established under Title IV of ERISA has been, or is expected by any Borrower or any ERISA Affiliate to be, incurred by any Borrower or any ERISA Affiliate.  No Borrower nor any ERISA Affiliate has any contingent liability with respect to any post-retirement benefit under any "welfare plan" (as defined in <u>Section 3(1)</u> of ERISA), other than liability for continuation coverage under Part 6 of Title I of ERISA.  No Lien under <u>Section 412(a)</u> of the Code or <u>302(f)</u> of ERISA or requirement to provide security under <u>Section 401(a)(29)</u> of the Code or <u>Section 307</u> of ERISA has been or is reasonably expected by any Borrower or any ERISA Affiliate to be imposed on the assets of any Borrower or any ERISA Affiliate.  No Borrower, the Parent nor any ERISA Affiliate has engaged in any transaction prohibited by <u>Section 408</u> of ERISA or <u>Section 4975</u> of the Code.  As of the Closing Date and throughout the term of the Loan Agreement, each

- 52 -

Borrower is not and will not be an "employee benefit plan" as defined in Section 3(3) of ERISA, which is subject to Title I of ERISA, and none of the assets of the Borrowers will constitute "plan assets" of one or more such plans for purposes of Title I of ERISA or Section 4975 of the Code.

6.18    Use of Proceeds.  The Borrowers will use the proceeds of the Loans to finance working capital and for other general corporate purposes of the Borrowers in accordance with the Budget and to fund Lender Expenses and fees pursuant to Section 3.07 and the repayment of any other Obligations.

6.19    Insurance.  All insurance required to be obtained and maintained by any Borrower pursuant to the Loan Documents has been obtained.  All premiums then due and payable on all such insurance have been paid.

6.20    No Agent or Lender Licenses.  Neither the Administrative Agent nor any Lender will be required solely as a result of this Loan Agreement or the financing or taking a pledge of the mortgage loans to be licensed, registered or approved or to obtain permits or otherwise qualify (i) to do business in any state in which it is not currently so required or (ii) under any state consumer lending, fair debt collection or other applicable state statute or regulation.

6.21    Subsidiaries.  All of the Subsidiaries of the Borrowers at the date hereof are listed on Schedule 6.21 to this Loan Agreement.

6.22    Origination of Unencumbered Whole Loans.  The Unencumbered Whole Loans were originated in all material respects pursuant to origination practices that are legal and proper, prudent, and customary in the residential mortgage loan servicing business.

6.23    Orders.  The Interim Order (or the Final Order, when applicable) is in full force and effec and has not been stayed.

6.24    REIT Status.  The Parent has elected to be treated as a REIT for U.S. federal income tax purposes. AHMH is a taxable REIT Subsidiary of the Parent. AHMC is a taxable REIT Subsidiaries of AHMIC. AHMA is a qualified REIT Subsidiary of the Parent. Each of the Parent, AHMH, AHMC and AHMA is in compliance with the provisions of the Code governing its REIT status, as applicable.

6.25    MERS Membership.  As of the Closing Date, AHMH is a MERS Member, the Borrowers are authorized users of the MERS System pursuant to the membership of AHMH, and AHMH and the Borrowers are in compliance with all terms and conditions of membership in MERS.

6.26    Collection Accounts and Escrow Accounts.  The collection accounts and escrow accounts of the Borrowers held for the benefit of third parties shall be fully funded (or the applicable amounts shall be on deposit in segregated accounts) in accordance with the terms of the applicable securitization documents.  At any time upon the request of the Administrative Agent, the Borrowers shall provide an officer's certificate in support thereof, in form and substance satisfactory to the Administrative Agent.

- 53 -

6.27     Anti-Terrorism Law Compliance.  No Borrower is in violation of any law or regulation, or is identified in any list, of any Governmental Authority (including, without limitation, the U.S. Office of Foreign Asset Control list, Executive Order No. 13224 or the USA Patriot Act) that prohibits or limits the conduct of business with or the receiving of funds, goods or services to or for the benefit of certain Persons specified therein or that prohibits or limits any Lender from making any Loans to any Borrower or from otherwise conducting business with any Borrower.

**Section 7. Covenants of the Borrowers.**  Each Borrower covenants and agrees with the Administrative Agent and the Lenders that, so long as any Loan is outstanding and until payment in full of all Obligations:

7.01     Financial Statements and Other Information.  The Borrowers shall deliver (or cause to be delivered) to the Administrative Agent and each Lender:

(a)     by the 15th and last day of each month, the Borrowers shall update the Budget, such updated Budget to be reasonably satisfactory to the Administrative Agent and to include actual numbers for historical periods included in the Budget;

(b)     contemporaneous with the filing thereof, copies of all pleadings, motions, applications, financial information and other papers and documents filed by the Borrowers in the Chapter 11 Cases, with copies of such papers and documents also provided to or served on the Administrative Agent's counsel;

(c)     promptly after the sending thereof, copies of all material written reports and all term sheets for a plan of reorganization given by the Borrowers to the Committee or any other official or unofficial creditors' committee in the Chapter 11 Cases;

(d)     from time to time such other information regarding the financial condition, operations, or business of the Borrowers or any Affiliate of the Borrowers as the Administrative Agent or any Lender may reasonably request; and

(e)     as soon as reasonably possible, and in any event within ten (10) Business Days after a Responsible Officer knows, or with respect to any Plan or Multiemployer Plan to which any Borrower or any of its Subsidiaries makes direct contributions, has reason to believe, that any of the events or conditions specified below with respect to any Plan or Multiemployer Plan has occurred or exists, a statement signed by a senior financial officer of the Administrative Borrower setting forth details respecting such event or condition and the action, if any, that such Borrower or its ERISA Affiliate proposes to take with respect thereto (and a copy of any report or notice required to be filed with or given to PBGC by the Borrowers or an ERISA Affiliate with respect to such event or condition):

(i)     any reportable event, as defined in Section 4043(b) of ERISA and the regulations issued thereunder, with respect to a Plan, as to which PBGC has not by regulation or otherwise waived the requirement of Section 4043(a) of ERISA that it be notified within thirty (30) days of the occurrence of such event (provided that a failure to meet the minimum funding standard of Section 412 of the Code or Section 302 of ERISA, including, without limitation, the failure to make on or before its due date a

required installment under Section 412(m) of the Code or Section 302(e) of ERISA, shall be a reportable event regardless of the issuance of any waivers in accordance with Section 412(d) of the Code); and any request for a waiver under Section 412(d) of the Code for any Plan;

(ii)     the distribution under Section 4041(c) of ERISA of a notice of intent to terminate any Plan or any action taken by the Borrower, the Parent or an ERISA Affiliate to terminate any Plan;

(iii)     the institution by PBGC of proceedings under Section 4042 of ERISA for the termination of, or the appointment of a trustee to administer, any Plan, or the receipt by any Borrower or any ERISA Affiliate of a notice from a Multiemployer Plan that such action has been taken by PBGC with respect to such Multiemployer Plan;

(iv)     the complete or partial withdrawal from a Multiemployer Plan by any Borrower or any ERISA Affiliate that results in liability under Section 4201 or 4204 of ERISA (including the obligation to satisfy secondary liability as a result of a purchaser default) or the receipt by any Borrower or any ERISA Affiliate of notice from a Multiemployer Plan that it is in reorganization or insolvency pursuant to Section 4241 or 4245 of ERISA or that it intends to terminate or has terminated under Section 4041A of ERISA;

(v)     the institution of a proceeding by a fiduciary of any Multiemployer Plan against any Borrower or any ERISA Affiliate to enforce Section 515 of ERISA, which proceeding is not dismissed within 30 days; and

(vi)     the adoption of an amendment to any Plan that, pursuant to Section 401(e) of the Code or Section 307 of ERISA, would result in the loss of tax-exempt status of the trust of which such Plan is a part if any Borrower or an ERISA Affiliate fails to timely provide security to such Plan in accordance with the provisions of said Sections.

7.02     Litigation.  Each Borrower shall promptly, and in any event within 5 Business Days after service of process on such Borrower, give to the Administrative Agent and the Lenders notice of all legal or arbitrable proceedings affecting the Borrowers that questions or challenges the validity or enforceability of any of the Loan Documents or as to which there is a reasonable likelihood of adverse determination which would result in a Material Adverse Effect.

7.03     Existence, Etc.  Each Borrower shall:

(a)     preserve and maintain its legal existence and all of its material rights, privileges, licenses and franchises;

(b)     comply with the requirements of all applicable laws, rules, regulations and orders of Governmental Authorities (including, without limitation, truth in lending, real estate settlement procedures and all environmental laws, rules, regulations and orders of Governmental Authorities) if failure to comply with such requirements would be reasonably likely (either individually or in the aggregate) to have a Material Adverse Effect;

- 55 -

(c)        keep adequate records and books of account, in which complete entries will be made in accordance with GAAP consistently applied;

(d)        not move its chief operating office;

(e)        pay and discharge and make deposit of all Taxes, assessments and governmental charges or levies imposed on it or on its income or profits or on any of its Property or which it is otherwise required to deposit prior to the date on which such Taxes are due, except for any such Tax, assessment, charge or levy (excluding payroll Taxes) the payment of which is being contested in good Faith and by proper proceedings and against which adequate reserves are being maintained in accordance with GAAP or except as permitted by the Bankruptcy Code; and

(f)        permit representatives of the Administrative Agent, any Lender or any Lender-Related Party, during normal business hours upon reasonable advance notice (or at any time and from time to time during the continuance of an Event of Default), to examine, copy and make extracts from its books and records, to inspect any of its Properties, and to discuss its business and affairs with its, all to the extent reasonably requested by the Administrative Agent, any Lender or any Lender-Related Party.

7.04    Prohibition of Fundamental Changes.    Except for Permitted Dispositions, no Borrower will enter into any transaction of merger or consolidation or amalgamation, or liquidate, wind up or dissolve itself (or suffer any liquidation, winding up or dissolution) or sell all or substantially all of its assets.

7.05    [Reserved]

7.06    Satisfaction of Conditions Precedent for the Final Order.    Each Borrower shall use its commercially reasonable best efforts to satisfy the conditions precedent to obtain the Final Order by September 7, 2007.

7.07    Notices.  Each Borrower shall give notice to the Administrative Agent and the Lenders promptly:

(a)        upon any Borrower becoming aware of, and in any event within one (1) Business Day after, the occurrence of any Default or Event of Default or any event of default or default under any other material agreement of a Borrower (except any such default the enforcement of which is stayed by the filing of the Chapter 11 Cases);

(b)        upon, and in any event within one (1) Business Day after, service of process on any Borrower or any Affiliate of any Borrower, or the Administrative Agent thereof for service of process, in respect of any legal or arbitrable proceedings affecting any Borrower or any Subsidiary or Affiliate of any Borrower (i) that questions or challenges the validity or enforceability of any of the Loan Documents or (ii) in which the amount in controversy exceeds $100,000, unless such proceeding is stayed by the commencement of the Chapter 11 Cases;

(c)        upon any Borrower becoming aware of any Material Adverse Change, or any Material Adverse Effect; and

(d)        upon the entry of a judgment or decree affecting the Borrowers in an amount in excess of $100,000, unless collection of such judgment or decree is stayed by the commencement of the Chapter 11 Cases.

Each notice pursuant to this Section 7.07 shall be accompanied by a statement of a Responsible Officer of the applicable Borrower setting forth details of the occurrence referred to therein and stating what action the applicable Borrower has taken or proposes to take with respect thereto.

7.08    Servicing. Each Borrower shall not permit any Person other than a Borrower or AHMS to service Unencumbered Whole Loans without the prior written consent of the Administrative Agent, which consent shall not be unreasonably withheld.

7.09    Lines of Business. The Borrowers will not engage to any substantial extent in any line or lines of business activity other than the businesses engaged in by the Borrowers as of the Closing Date.

7.10    Transactions with Affiliates. Other than with respect to transactions solely among the Borrowers, no Borrower will enter into any transaction, including, without limitation, any purchase, sale, lease or exchange of property or the rendering of any service, with any Affiliate unless such transaction is (a) otherwise permitted under this Loan Agreement or the other Loan Documents, (b) in the ordinary course of such Borrower's business and (c) upon fair and reasonable terms no less favorable to such Borrower than it would obtain in a comparable arm's length transaction with a Person which is not an Affiliate, or make a payment that is not otherwise permitted by this Section 7.11 to any Affiliate.

7.11    Use of Proceeds. The Borrowers will use the proceeds of the Loans to finance working capital and for other general corporate purposes of the Borrowers in accordance with the Budget and to fund Lender Expenses and fees pursuant to Section 3.07 and the repayment of any other Obligations.

7.12    Limitation on Liens. No Borrower will, nor will it permit or allow others to, create, incur or permit to exist any Lien, security interest or claim on or to any Collateral, except for (i) Liens existing on the Filing Date, (ii) Liens on the Collateral created pursuant to this Loan Agreement and the other Loan Documents and (iii) other Liens acceptable to the Administrative Agent (collectively, "Permitted Liens"). Each Borrower will defend the Collateral against, and will take such other action as is necessary to remove, any Lien, security interest or claim on or to the Collateral, other than the security interests created or allowed under this Loan Agreement, and each Borrower will defend the right, title and interest of the Administrative Agent and the Lenders in and to any of the Collateral against the claims and demands of all persons whomsoever.

7.13    Limitation on Sale of Assets. No Borrower will convey, sell, lease, assign, transfer or otherwise dispose of (collectively, "Transfer"), any of its Property, business or assets (including, without limitation, receivables and leasehold interests) whether now owned or hereafter acquired, other than Permitted Dispositions.

7.14    Limitation on Distributions. No Borrower will make any payment on account of, or set apart assets for a sinking or other analogous fund for the purchase, redemption,

defeasance, retirement or other acquisition of any stock or senior or subordinate debt of such Borrower, whether now or hereafter outstanding, or make any other distribution in respect thereof, either directly or indirectly, whether in cash or property or in obligations of such Borrower.

7.15    Restricted Payments.    No Borrower shall make any Restricted Payments other than Restricted Payments by any Borrower to any other Borrower.

7.16    Loans, Investments, Etc.    The Borrowers shall not make or commit or agree to make any loan, advance, guarantee of obligations, other extension of credit or capital contributions to, or hold or invest in or commit or agree to hold or invest in, or purchase or otherwise acquire or commit or agree to purchase or otherwise acquire any shares of the Equity Interests, bonds, notes, debentures or other securities of, or make or commit or agree to make any other investment in, any other Person, or purchase or own any futures contract or otherwise become liable for the purchase or sale of currency or other commodities at a future date in the nature of a futures contract, or permit any of its Subsidiaries to do any of the foregoing, except for: (i) investments existing on the Closing Date, as set forth on Schedule 7.16 hereto, but not any increase in the amount thereof as set forth in such Schedule or any other modification of the terms thereof, (ii) loans and advances by any Borrower to another Borrower made in the ordinary course of business, and (iii) cash and Cash Equivalents held in Control Accounts and the Loan Account.

7.17    Orders, Administrative Priority; Lien Priority; Payment of Claims.

(a)    The Borrowers shall not at any time seek, consent to or suffer to exist any modification, stay, vacation or amendment of the Orders except for modifications and amendments agreed to by the Administrative Agent.

(b)    The Borrowers shall not at any time suffer to exist a priority for any administrative expense of unsecured claim against any Borrower (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code) equal or superior to the priority of the Lenders in respect of the Obligations, except for the Carve-Out Amount having priority over the Obligations to the extent set forth in the definition thereof.

(c)    The Borrowers shall not at any time suffer to exist any Lien on the Collateral having a priority equal or superior to the Lien in favor of the Administrative Agent and the Lenders in respect of the Collateral except for Permitted Liens.

(d)    Prior to the date on which the Obligations have been paid in full in cash and the Commitments have been terminated, the Borrowers shall not pay any administrative expense claims except (i) UST/Clerk Fees and Priority Professional Expenses (each such term, as defined in the Applicable Order) and other payments pursuant to the definition of the term "Carve-Out Amount," (ii) any Obligations due and payable hereunder, (iii) other administrative expense claims incurred in the ordinary course of the business of the Borrowers or their respective Chapter 11 Cases and (iv) as otherwise provided in the Orders.

7.18    <u>No Amendment or Waiver</u>.  No Borrower will, without the prior consent of the Lenders, nor will it permit or allow others to amend, modify, terminate or waive any provision of any Unencumbered Whole Loan to which such Borrower is a party in any manner that shall reasonably be expected to materially and adversely affect the value of such loan as Collateral.

7.19    <u>Maintenance of Property; Insurance</u>.  Each Borrower shall keep all of its property useful and necessary in its business in good working order and condition.  Each Borrower shall maintain errors and omissions insurance or mortgage impairment insurance and blanket bond coverage in such amounts as are in effect on the Closing Date (as disclosed to the Lenders in writing) and shall not permit the reduction of such coverage without the written consent of the Lenders, and shall also cause to be maintained such other insurance with financially sound and reputable insurance companies, and with respect to property and risks of a character usually maintained by entities engaged in the same or similar business similarly situated, against loss, damage and liability of the kinds and in the amounts customarily maintained by such entities.

7.20    <u>ERISA</u>.  No Borrower will engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by the Administrative Agent or any Lender of any of its rights under this Loan Agreement or the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under ERISA or result in a violation of a state statute regulating governmental plans that would subject the Lender to liability for a violation of ERISA or such state statute.

7.21    <u>Other Indebtedness</u>.  The Borrowers shall not incur any other Indebtedness (including any accrued interest thereon), other than Indebtedness incurred under this Loan Agreement.

7.22    <u>Prepetition Payments</u>.

(a)    The Borrowers will not (i) make any payment or prepayment on or redemption or acquisition for value (including, without limitation, by way of depositing with the trustee with respect thereto money or securities before due for the purpose of paying when due) of any Pre-Petition Credit Facilities or other pre-Filing Date obligations of any Borrower, (ii) pay any interest on any Pre-Petition Credit Facilities of any Borrower (whether in cash, in kind securities or otherwise), or (iii) make any payment or create or permit any Lien pursuant to Section 361 of the Bankruptcy Code (or pursuant to any other provision of the Bankruptcy Code authorizing adequate protection), or apply to the Bankruptcy Court for the authority to do any of the foregoing; <u>provided</u> that, to the extent permitted in the Orders, (x) the Borrowers may make payments for administrative expenses that are allowed and payable under Sections 330 and 331 of the Bankruptcy Code, and (y) the Borrowers may make Prepetition Payments to such other claimants and in such amounts as may be consented to by the Administrative Agent and approved by the Bankruptcy Court.

(b)    Will not amend or modify in any respect any Indebtedness existing on the Filing Date.

7.23    MERS.

(a)        Each of the Borrowers shall, at all times, maintain its status as a MERS Member (or, if applicable, as an authorized user of the MERS System) and at all times remain in compliance with all terms and conditions of membership in MERS, including the MERSCORP, Inc. "Rules of Membership" most recently promulgated by MERSCORP, Inc., the "MERS Procedures Manual" most recently promulgated by MERS, and any and all other guidelines or requirements set forth by MERS or MERSCORP, as each of the foregoing may be modified from time to time, including, but not limited to, compliance with guidelines and procedures set forth with respect to technological capabilities, drafting and recordation of deeds of trust or mortgages, registration of deeds of trust or mortgages on the MERS System, including registration of the interest of the Administrative Agent and the Lenders in such mortgages and membership requirements; provided, however, that any of the Borrowers may resign from the MERS System (or cease to be an authorized user of the MERS System) so long as such Borrower has delivered to the Administrative Agent: (1) written notice that it intends to resign from the MERS System (or cease to be an authorized user of the MERS System) no later than 60 days prior to the proposed effective date of such resignation or cessation, and (2) such evidence as the Administrative Agent may request that upon the effective date of such Borrower's resignation from the MERS System (or cessation as an authorized user of the MERS System) and at all times thereafter, no deed of trust or mortgage shall be registered to such Borrower on the MERS System unless such Borrower shall be a MERS Member (or an authorized user of the MERS System).

(b)        Each of the Borrowers that is a MERS Member shall promptly, upon the request of the Administrative Agent, execute and deliver to the Administrative Agent an assignment of mortgage, in blank, with respect to any MERS Mortgage that the Administrative Agent reasonably determines shall be removed from the MERS System.

(c)        Upon the registration of any Mortgage on the MERS System, each of the Borrowers designates the Administrative Agent in the Custodian Category and the Interim Funder Category with respect to such Mortgage.

(d)        Each of the Borrowers agrees that it shall not de-register or attempt to de-register any deed of trust or mortgage from the MERS System unless such Borrower has complied with the requirements set forth in the Electronic Tracking Agreement (as defined for the purposes of the MERS System and the requirements hereof relating to a release of Collateral.

(e)        Each of the Borrowers shall employ officers who have the authority, pursuant to a corporate resolution of MERS, to execute assignments of deeds of trust and mortgages in the name of MERS in the event de-registration of a deed of trust or mortgage from the MERS System is necessary or desirable.

(f)        Each of the Borrowers shall execute and deliver to the Administrative Agent such blank assignments of deeds of trust and mortgages as the Administrative Agent may require.

7.24    <u>REIT</u>.  Each of the Borrowers shall maintain its status described in Section 6.24.

7.25    <u>Retention of CRO</u>.  The Borrowers shall continue to retain a chief restructuring officer reasonably acceptable to the Administrative Agent (it being understood that the retention of Kroll Zolfo Cooper as restructuring firm and Stephen F. Cooper as chief restructuring officer shall be acceptable to the Administrative Agent) that has substantial experience and expertise advising Chapter 11 debtors-in-possession in large and complex bankruptcy cases; provided that the Borrowers shall be permitted to replace any such advisor(s) with any other advisors satisfying the requirements of this <u>Section</u> and shall be permitted a period of time (not to exceed 10 Business Days) to file an application with the Bankruptcy Court to employ such replacement advisor(s).

**Section 8. <u>Events of Default</u>.**  Each of the following events shall constitute an event of default (an "<u>Event of Default</u>") hereunder:

(a)    the Borrowers shall fail to make a payment of (i) when and as required to be paid herein, any amount of principal of any Loan, (ii) within three days after the same becomes due, any interest on any Loan or any fee due hereunder or (iii) within five days after the same becomes due, any other amount payable hereunder or under any other Loan Document (whether at stated maturity or upon acceleration); or

(b)    the Borrowers shall fail to make any mandatory prepayment under Section 2.06; or

(c)    the Borrowers shall default in the payment of any other Obligation or any other amount due under any other Loan Document, and such default shall have continued unremedied for 5 Business Days; or

(d)    any representation, warranty or certification made or deemed made herein (including in Section 6) or in any other Loan Document by any Borrower or any certificate furnished to the Administrative Agent or any Lender pursuant to the provisions thereof, shall prove to have been false or misleading in any material respect as of the time made or furnished; or

(e)    (i) the Borrowers shall fail to comply with  the requirements of Section 7.02, Section 7.03(a), Section 7.07(a), Section 7.08, Sections 7.11 through 7.18, or Sections 7.20 through 7.25 hereof; or (ii) the Borrowers shall otherwise fail to observe or perform any other agreement contained in this Loan Agreement or any other Loan Document and such failure to observe or perform shall continue unremedied for a period of 10 Business Days; or

(f)    except for any judgment the enforcement of which is stayed by the commencement of the Chapter 11 Cases, a final judgment or judgments for the payment of money in excess of (i) $50,000, individually, or (iii) $250,000 in the aggregate, per calendar year (to the extent that it is, in the reasonable determination of the Administrative Agent, uninsured and provided that any insurance or other credit posted in connection with an appeal shall not be deemed insurance for these purposes) shall be rendered against any Borrower or any of its

Subsidiaries by one or more courts, administrative tribunals or other bodies having jurisdiction over them and the same shall not be discharged (or provision shall not be made for such discharge) or bonded, or a stay of execution thereof shall not be procured, within 30 days from the date of entry thereof and any such Borrower or any such Subsidiary shall not, within said period of 30 days, or such longer period during which execution of the same shall have been stayed or bonded, appeal therefrom and cause the execution thereof to be stayed during such appeal; or

(g)        any Loan Document shall for whatever reason (including an event of default thereunder) be terminated or the Lien on the Collateral created by this Loan Agreement and the Orders, any Borrower's material obligations hereunder or under any Loan Document shall cease to be in full force and effect or, in the Administrative Agent's good faith determination, otherwise cease to benefit the Administrative Agent or any Lender, or the enforceability thereof shall be contested by any Borrower; or

(h)        the occurrence of a Material Adverse Change or a Material Adverse Effect; or

(i)        (i) any Person shall engage in any "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) involving any Plan, (ii) any material "accumulated funding deficiency" (as defined in Section 302 of ERISA), whether or not waived, shall exist with respect to any Plan, any Borrower or any ERISA Affiliate shall fail to make a required installment payment to any Plan on or before the date due under Section 302 of ERISA or Section 412 of the Code, or any Lien in favor of the PBGC or a Plan shall arise on the assets of any Borrower or any ERISA Affiliate, (iii) a reportable event as defined in Section 4043(b) of ERISA and the regulations issued thereunder shall occur with respect to, or proceedings shall commence to have a trustee appointed, or a trustee shall be appointed, to administer or to terminate, any Plan, which reportable event or commencement of proceedings or appointment of a trustee is, in the reasonable opinion of the Lender, likely to result in the termination of such Plan for purposes of Title IV of ERISA, (iv) any Plan shall terminate for purposes of Title IV of ERISA, (v) any Borrower or any ERISA Affiliate shall, or in the reasonable opinion of the Administrative Agent is likely to, incur any liability in connection with a withdrawal from, or the insolvency or reorganization of, a Multiemployer Plan, (vi) any Borrower or any ERISA Affiliate shall fail to pay when due or is in default on an amount which it shall have become liable to pay to the PBGC, any Plan, any Multiemployer Plan or a trust established under Section 4049 of ERISA, or (vii) a condition shall exist by reason of which the PBGC would be entitled to obtain a decree adjudicating that an ERISA Plan must be terminated or have a trustee appointed to administer any ERISA Plan, (viii) any other event or condition shall occur or exist with respect to any Plan which could subject any Borrower or any ERISA Affiliate to any tax, penalty or other liability or the imposition of any Lien or security interest on any Borrower or any ERISA Affiliate, (ix) any Borrower shall incur any liability for any post-retirement or post-termination health or life insurance or (x) the assets of any Borrower become or are deemed to be "plan assets" of a plan subject to ERISA or Section 4975 of the Code. No Event of Default shall be deemed to be, or have been, waived or corrected because of any disclosure by any Borrower; and in each case in clauses (i) through (ix) above, such event or condition, together with all other such events or conditions, if any, could reasonably be expected to have a Material Adverse Effect; or

(j)        any Change of Control; or

(k)        any Borrower shall grant, or suffer to exist, any Lien on any Collateral except the Liens in favor of the Administrative Agent and the Secured Parties and other Permitted Liens; or the Liens granted hereunder shall cease to be valid and perfected (i) first priority Liens on the First Lien Collateral or (ii) Liens on the Second Lien Collateral subject, as to priority, only to Liens existing on the Filing Date securing the Senior Claims, in each case in favor of the Administrative Agent and the Lenders, or there shall be Liens in favor of any Person, except in each case Permitted Liens; or

(l)        any Borrower shall default under, or fail to perform as required under, or shall otherwise materially breach the terms of any instrument, agreement or contract between such Borrower entered into or assumed on or after the Filing Date, on the one hand, and the Administrative Agent, or any of the Administrative Agent's Affiliates on the other; or

(m)        the Bankruptcy Court shall not have entered the Final Order by September 7, 2007; or

(n)        an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court appointing, or any Borrower shall file an application for on order with respect to any Chapter 11 Case seeking the appointment of, (i) a trustee under Section 1104 of the Bankruptcy Code, or (ii) an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code; or

(o)        an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court converting such Chapter 11 Case to a Chapter 7 case; or

(p)        (i) the Borrowers file a plan of reorganization in the Chapter 11 Cases which does not contain a provision for termination of the Commitments and payment in full in cash of all Obligations of the Borrowers hereunder and under the other Loan Documents on or before the effective date of such plan or plans or (ii) an order shall be entered by the Bankruptcy Court confirming a plan of reorganization in any of the Chapter 11 Cases which does not contain a provision for termination of the Commitments and payment in full in cash of all Obligations of the Borrowers hereunder and under the other Loan Documents and the release of the Administrative Agent and the Lenders in full from all claims of the Borrowers and their respective estates on or before the effective date of such plan or plans upon entry thereof; or

(q)        an order shall be entered by the Bankruptcy Court dismissing any of the Chapter 11 Cases which does not contain a provision for termination of the Commitments, and payment in full in cash of all Obligations of the Borrowers hereunder and under the other Loan Documents upon entry thereof; or

(r)        an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court or any other court of competent jurisdiction without the express prior written consent of the Lenders, (i) to revoke, reverse, stay for a period in excess of 10 days, vacate, rescind, modify, supplement or amend the Orders, this Loan Agreement or any other Loan Document, in each case in a manner that is adverse the Administrative Agent and the