(j)         any Change of Control; or

(k)         any Borrower shall grant, or suffer to exist, any Lien on any Collateral except the Liens in favor of the Administrative Agent and the Secured Parties and other Permitted Liens; or the Liens granted hereunder shall cease to be valid and perfected (i) first priority Liens on the First Lien Collateral or (ii) Liens on the Second Lien Collateral subject, as to priority, only to Liens existing on the Filing Date securing the Senior Claims, in each case in favor of the Administrative Agent and the Lenders, or there shall be Liens in favor of any Person, except in each case Permitted Liens; or

(l)         any Borrower shall default under, or fail to perform as required under, or shall otherwise materially breach the terms of any instrument, agreement or contract between such Borrower entered into or assumed on or after the Filing Date, on the one hand, and the Administrative Agent, or any of the Administrative Agent's Affiliates on the other; or

(m)         the Bankruptcy Court shall not have entered the Final Order by September 7, 2007; or

(n)         an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court appointing, or any Borrower shall file an application for on order with respect to any Chapter 11 Case seeking the appointment of, (i) a trustee under Section 1104 of the Bankruptcy Code, or (ii) an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code; or

(o)         an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court converting such Chapter 11 Case to a Chapter 7 case; or

(p)         (i) the Borrowers file a plan of reorganization in the Chapter 11 Cases which does not contain a provision for termination of the Commitments and payment in full in cash of all Obligations of the Borrowers hereunder and under the other Loan Documents on or before the effective date of such plan or plans or (ii) an order shall be entered by the Bankruptcy Court confirming a plan of reorganization in any of the Chapter 11 Cases which does not contain a provision for termination of the Commitments and payment in full in cash of all Obligations of the Borrowers hereunder and under the other Loan Documents and the release of the Administrative Agent and the Lenders in full from all claims of the Borrowers and their respective estates on or before the effective date of such plan or plans upon entry thereof; or

(q)         an order shall be entered by the Bankruptcy Court dismissing any of the Chapter 11 Cases which does not contain a provision for termination of the Commitments, and payment in full in cash of all Obligations of the Borrowers hereunder and under the other Loan Documents upon entry thereof; or

(r)         an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court or any other court of competent jurisdiction without the express prior written consent of the Lenders, (i) to revoke, reverse, stay for a period in excess of 10 days, vacate, rescind, modify, supplement or amend the Orders, this Loan Agreement or any other Loan Document, in each case in a manner that is adverse the Administrative Agent and the

Lenders, or (ii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to the Borrowers equal or superior to the priority of the Lenders in respect of the Obligations, except for allowed administrative expenses having priority over the Obligations to the extent set forth in the definition of "Carve-Out Amount," or (iii) to grant or permit the grant of a Lien on the Collateral other than Permitted Liens; or

(s)     an application for any of the orders described in clauses (n), (o), (q), (r) or (w) shall be made by a Person other than the Borrowers, and such application is not being diligently contested by the Borrowers in good faith; or

(t)     any Chapter 11 Case shall be dismissed (or the Bankruptcy Court shall make a ruling requiring the dismissal of any Chapter 11 Case), suspended or converted to a case under chapter 7 of the Bankruptcy Code, or any Borrower shall file any pleading requesting any such relief; or an application shall be filed by any Borrower for the approval of, or there shall arise, (i) any other Claim having priority senior to or *pari passu* with the claims of the Secured Parties under the Loan Documents and the Orders or any other claim having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code (other than the Carve-Out) or (ii) any Lien on the Collateral having a priority senior to or *pari passu* with the Liens and security interests granted herein, except as expressly provided herein;

(u)     except as permitted by the Orders or as otherwise agreed to by the Administrative Agent, the Borrowers shall make any Pre-Petition Payment other than Pre-Petition Payments authorized by the Bankruptcy Court in accordance with "first day" orders reasonably satisfactory to the Administrative Agent; or

(v)     (i) any Borrower challenges or (ii) any other Person successfully challenges, in each case the rights of the Administrative Agent or any Lender under this Loan Agreement or any Loan Document, including, without limitation, the Liens hereunder; or

(w)     an order shall be entered by the Bankruptcy Court that is not stayed pending appeal granting relief from the automatic stay to any creditor of any of the Borrowers with respect to any claim which in the aggregate could have a Material Adverse Effect; provided, however, that it shall not be an Event of Default if relief from the automatic stay is granted (i) solely for the purpose of allowing such creditor to determine the liquidated amount of its claim against the Borrowers, or (ii) to permit the commencement of and/or prosecution of a proceeding to collect against an insurance company.

**Section 9. Remedies Upon Default.**  Upon the occurrence of one or more Events of Default (subject to the expiration of the applicable cure period contained therein), the Administrative Agent may, and shall at the request of the Required Lenders, immediately declare the principal amount of the Loans then outstanding to be immediately due and payable, together with all interest and other amounts payable hereunder (including amounts payable pursuant to Sections 2.05, and 3.07 hereof) thereon and reasonable fees and out-of-pocket expenses accruing under this Loan Agreement.  Upon such declaration, the balance then outstanding shall become immediately due and payable, without further order of, or application to, the Bankruptcy Court,

- 64 -

without presentment, demand, protest or other formalities of any kind, all of which are hereby expressly waived by each Borrower and the Administrative Agent may exercise any and all of its other rights and remedies under applicable law (including, but not limited to, the Bankruptcy Code), hereunder and under the other Loan Documents, including, but not limited to, the transfer of servicing of the Collateral or the liquidation of the Collateral on a servicing released basis.

### Section 10.    Administrative Agent.

10.01    Appointment. Each Lender (and each subsequent holder of any Loans by its acceptance thereof), hereby irrevocably appoints and authorizes the Administrative Agent to perform the duties of the Administrative Agent as set forth in this Loan Agreement including: (i) to receive on behalf of each Lender any payment of principal of or interest on the Loans outstanding hereunder and all other amounts accrued hereunder for the account of the Lenders and paid to the Administrative Agent, and to distribute promptly to each Lender its Pro Rata Share of all payments so received, (ii) to distribute to each Lender copies of all material notices and agreements received by the Administrative Agent and not required to be delivered to each Lender pursuant to the terms of this Loan Agreement, provided that the Administrative Agent shall not have any liability to the Lenders for the Administrative Agent's inadvertent failure to distribute any such notices or agreements to the Lenders and (iii) subject to Section 10.03 of this Agreement, to take such action as the Administrative Agent deems appropriate on its behalf to administer the Loans and the Loan Documents and to exercise such other powers delegated to the Administrative Agent by the terms hereof or the Loan Documents (including, without limitation, the power to give or to refuse to give notices, waivers, consents, approvals and) instructions and the power to make or to refuse to make determinations and calculations) together with such powers as are reasonably incidental thereto to carry out the purposes hereof and thereof. As to any matters not expressly provided for by this Loan Agreement and the other Loan Documents (including, without limitation, enforcement or collection of the Notes), the Administrative Agent shall not be required to exercise any discretion or take any action, but shall be required to act or to refrain from acting (and shall be fully protected in so acting or refraining from acting) upon the instructions of the Required Lenders, and such instructions of the Required Lenders shall be binding upon all Lenders and all subsequent holders of Notes; provided, however, that the Administrative Agent shall not be required to take any action which, in the reasonable opinion of the Administrative Agent, exposes the Administrative Agent to liability or which is contrary to this Loan Agreement or any Loan Document or applicable law.

10.02    Nature of Duties. The Administrative Agent shall have no duties or responsibilities except those expressly set forth in this Loan Agreement or in the Loan Documents. The duties of the Administrative Agent shall be mechanical and administrative in nature. The Administrative Agent shall not have by reason of this Loan Agreement or any Loan Document a fiduciary relationship in respect of any Lender. Nothing in this Loan Agreement or any of the Loan Documents, express or implied, is intended to or shall be construed to impose upon the Administrative Agent any obligations in respect of this Loan Agreement or any of the Loan Documents except as expressly set forth herein or therein. Each Lender shall make its own independent investigation of the financial condition and affairs of the Borrowers in connection with the making and the continuance of the Loans hereunder and shall make its own appraisal of the creditworthiness of the Borrowers and the value of the Collateral, and the Administrative Agent shall not have any duty or responsibility, either initially or on a continuing basis, to

provide any Lender with any credit or other information with respect thereto, whether coming into its possession before the initial Loans hereunder or at any time or times thereafter, provided that, upon the reasonable request of a Lender, the Administrative Agent shall provide to such Lender any documents or reports delivered to the Administrative Agent by the Borrowers pursuant to the terms of this Loan Agreement or any Loan Document. The Administrative Agent shall seek any consent or approval of the Required Lenders to the taking or refraining from taking any action hereunder by sending notice thereof to each Lender. The Administrative Agent shall promptly notify each Lender any time that the Required Lenders have instructed the Administrative Agent to act or refrain from acting pursuant hereto.

            10.03     <u>Rights, Exculpation, Etc</u>. The Administrative Agent and its directors, officers, agents or employees shall not be liable to the Secured Parties or their participants or assignees for any action taken or omitted to be taken by it under or in connection with this Loan Agreement or the other Loan Documents, Without limiting the generality of the foregoing, the Administrative Agent (i) may treat the payee of any Note as the holder thereof until the Administrative Agent receives written notice of the assignment or transfer thereof, pursuant to <u>Section 11.15</u> hereof, signed by such payee and in form satisfactory to the Administrative Agent; (ii) may consult with legal counsel (including, without limitation, counsel to the Administrative Agent or counsel to the Borrowers), independent public accountants, and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel or experts; (ii) make no warranty or representation to any Secured Party and shall not be responsible to any Secured Party for any statements, certificates, warranties or representations made in or in connection with this Loan Agreement or the other Loan Documents; (iv) shall not have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of this Loan Agreement or the other Loan Documents on the part of any Person, the existence or possible existence of any Default or Event of Default, or to inspect the Collateral or other Property (including, without limitation, the books and records) of any Person; (v) shall not be responsible to any Secured Party for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Loan Agreement or the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto; and (vi) shall not be deemed to have made any representation or warranty regarding the existence, value or collectability of the Collateral, the existence, priority or perfection of the Administrative Agent's Lien thereon, or any certificate prepared by any Borrower in connection therewith, nor shall the Administrative Agent be responsible or liable to the Secured Parties for any failure to monitor or maintain any portion of the Collateral.  The Administrative Agent shall not be liable for any apportionment or distribution of payments made in good faith pursuant to <u>Section 3.03</u>, and if any such apportionment or distribution is subsequently determined to have been made in error the solo recourse of any Secured Party to whom payment was due but not made, shall be to recover from other Secured Parties any payment in excess of the amount which they are determined to be entitled. The Administrative Agent may at any time request instructions from the Lenders with respect to any actions or approvals which by the terms of this Loan Agreement or of any of the Loan Documents the Administrative Agent is permitted or required to take or to grant, and if such instructions are promptly requested, the Administrative Agent shall be absolutely entitled to refrain from taking any action or to withhold any approval under any of the Loan Documents until it shall have received such instructions from the Required Lenders. Without limiting the foregoing, no Secured Party shall have any right of action whatsoever against the Administrative

Agent as a result of the Administrative Agent acting or refraining from acting under this Agreement, the Notes or any of the other Loan Documents in accordance with the instructions of the Required Lenders.

10.04    Reliance.  The Administrative Agent shall be entitled to rely upon any written notices, statements, certificates, orders or other documents or any telephone message believed by it in good faith to be genuine and correct and to have been signed, sent or made by the proper Person, and with respect to all matters pertaining to this Loan Agreement or any of the Loan Documents and its duties hereunder or thereunder, upon advice of counsel selected by it.

10.05    Indemnification.  To the extent that the Administrative Agent is not reimbursed and indemnified by any Borrower, the Lenders will reimburse and indemnify the Administrative Agent from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, advances or disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against the Administrative Agent in any way relating to or arising out of this Loan Agreement or any of the Loan Documents or any action taken or omitted by the Administrative Agent under this Loan Agreement or any of the Loan Documents, in proportion to each Lender's Pro Rata Share, including, without limitation, all advances and disbursements made pursuant to Section 10.08; provided, however, that no Lender shall be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, advances or disbursements for which there has been a final judicial determination that such resulted from the Administrative Agent's gross negligence or willful misconduct   The obligations of the Lenders under this Section 10.05 shall survive the payment in full of the Loans and the termination of this Loan Agreement.

10.06    Agent Individually.  With respect to its Pro Rata Share of the Total Commitment hereunder, the Loans made by it and the Notes issued to or held by it, the Administrative Agent shall have and may exercise the same rights and powers hereunder and is subject to the same obligations and liabilities as and to the extent set forth herein for any other Lender or holder of a Note.  The terms "Lenders" or "Required Lenders" or any similar terms shall, unless the context clearly otherwise indicates, include the Administrative Agent in its individual capacity as a Lender or one of the Required Lenders.  The term "Administrative Agent" means the Administrative Agent solely in its individual capacity as an administrative agent hereunder and under each other Loan Document.  The Administrative Agent and its Affiliates may accept deposits from, lend money to, and generally engage in any kind of banking, trust or other business with the Borrowers as if it were not acting as an Administrative Agent pursuant hereto without any duty to account to the Lenders.

10.07    Successor Agent.

(a)    The Administrative Agent may resign from the performance of all its functions and duties hereunder and under the other Loan Documents at any time by giving at least thirty (30) Business Days' prior written notice to the Administrative Borrower and each Lender.  Such resignation shall take effect upon the acceptance by a successor Administrative Agent of appointment pursuant to clauses (b) and (c) below or as otherwise provided below.

- 67 -

(b)     Upon any such notice of resignation, the Required Lenders shall be entitled to appoint a successor Administrative Agent who, in the absence of a continuing Event of Default, shall be reasonably satisfactory to the Administrative Borrower.    Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent, such successor Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from its duties and obligations under this Loan Agreement and the other Loan Documents.    After the Administrative Agent's resignation hereunder as the Administrative Agent, the provisions of this Section 10 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was the Administrative Agent under this Loan Agreement and the other Loan Documents.

(c)     If a successor Administrative Agent shall not have been so appointed within said thirty (30) Business Day period, the retiring Administrative Agent shall then appoint a successor Administrative Agent who, if an Event of Default is not continuing, shall be reasonably satisfactory to the Administrative Borrower, who shall serve as the Administrative Agent until such time, if any, as the Required Lenders appoint a successor Administrative Agent as provided above.

10.08     Collateral Matters.

(a)     The Secured Parties hereby irrevocably authorize the Administrative Agent, at its option and in its discretion, to release any Lien granted to or held by the Administrative Agent upon any Collateral upon termination of the Total Commitment and payment and satisfaction of all Loans and all other Obligations which have matured and which the Administrative Agent has been notified in writing are then due and payable; or constituting Property being sold or disposed of pursuant to a Permitted Disposition or in the ordinary course of any Borrower's business and in compliance with the terms of this Loan Agreement and the other Loan Documents; or constituting Property in which the Borrowers owned no interest at the time the Lien was granted or at any time thereafter; or if approved, authorized or ratified in writing by the Required Lenders subject to Section 11.01.

(b)     Without in any manner limiting the Administrative Agent's authority to act without any specific or further authorization or consent by the Secured Parties (as set forth in Section 10.08(a)), each Secured Party agrees to confirm in writing, upon request by the Administrative Agent, the authority to release Collateral conferred upon the Administrative Agent under Section 10.08(a). Upon receipt by the Administrative Agent of confirmation from the Lenders of its authority to release any particular item or types of Collateral (or, at the option of the Administrative Agent in the absence of such receipt, in reliance on Section 10.08(a), and upon prior written request by any Borrower, the Administrative Agent shall (and is hereby irrevocably authorized by the Lenders to) execute such documents as may be necessary to evidence the release of the Liens granted to the Administrative Agent for the benefit of the Secured Parties upon such Collateral; provided, however, that (i) the Administrative Agent shall not be required to execute any such document on terms which, in the Administrative Agent's opinion, would expose the Administrative Agent to liability or create any obligations or entail any consequence other than the release of such Liens without recourse or warranty, and (ii) such release shall not in any manner discharge, affect or impair the Obligations or any Lien upon (or

obligations of any Borrower in respect of) all interests in the Collateral retained by any Borrower.

(c)     The Administrative Agent shall have no obligation whatsoever to any Secured Party to assure that the Collateral exists or is owned by the Borrowers or is cared for, protected or insured or has been encumbered or that the Lien granted to the Administrative Agent pursuant to this Agreement has been properly or sufficiently or lawfully created, perfected, protected or enforced or is entitled to any particular priority, or to exercise at all or in any particular manner or under any duty of care, disclosure or fidelity, or to continue exercising, any of the rights, authorities and powers granted or available to the Administrative Agent in this Section 10.08 or in any of the Loan Documents, it being understood and agreed that in respect of the Collateral, or any act, omission or event related thereto, the Administrative Agent may act in any manner it may deem appropriate, in its sole discretion, given the Administrative Agent's own interest in the Collateral as one of the Secured Parties and that the Administrative Agent shall have no duty or liability whatsoever to any other Secured Party.

(d)     The Administrative Agent acknowledges that, to the extent that the Collateral includes items (such as stock certificates, Residuals, instruments and chattel paper) which are held in the possession of the Administrative Agent, or a third party on its behalf, pursuant to the Loan Documents, the Administrative Agent is also holding such items in its possession as agent and bailee of the Secured Parties for the benefit of, and for purposes of perfecting the security interest of, the Secured Parties in such items.

**Section 11.    Miscellaneous**.

11.01     Amendments, Etc.  No amendment or waiver of any provision of this Agreement or any Note, and no consent to any departure by the Borrowers therefrom, shall in any event be effective unless the same shall be in writing and signed by the Required Lenders, and, in the case of an amendment, the Borrowers, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given, provided, however, that no amendment, waiver or consent shall (i) increase the Commitment of any Lender, reduce the principal of, or interest on, the Loans payable to any lender, reduce the amount of any fee payable for the account of any Lender, or postpone or extend any date fixed for any payment of principal of, or interest or fees on, the Loans payable to any Lender, in each case without the written consent of any Lender affected thereby, (ii) increase the Total Commitment, except as contemplated in the definition of "Maximum Credit," (iii) change the percentage of the Total Commitment or of the aggregate unpaid principal amount of the Notes that is required for the Lenders or any of them to take any action hereunder, (iv) amend the definition of "Required Lenders" or "Pro Rata Share," (v) release all or a substantial portion of the Collateral (except as otherwise provided in this Loan Agreement and the other Loan Documents), subordinate any Lien granted in favor of the Administrative Agent for the benefit of the Secured Parties, or release any Borrower, (vi) modify, waive, release or subordinate the super priority claim status of the Obligations (except as permitted in this Loan Agreement and the Loan Documents), (vii) amend, modify or waive this Section 11.01 of this Loan Agreement, in the case of clauses (ii) through (vii), without the written consent of each Lender, and (viii) amend, modify or waive this Loan Agreement in such a manner that by its terms disproportionately (in comparison with the other Lenders) affects the rights or duties under this

- 69 -

Loan Agreement of any Lenders, without the written consent of such affected Lenders. Notwithstanding the foregoing, no amendment, waiver or consent shall affect the rights or duties of either Administrative Agent (but not in its capacity as a Lender) under this Loan Agreement or the other Loan Documents, unless in writing and signed by the Administrative Agent. The parties to this Loan Agreement acknowledge that all material amendments to this Loan Agreement will require the consent of the Bankruptcy Court.

11.02    Waiver. No failure on the part of the Administrative Agent or any Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power or privilege under any Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under any Loan Document preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The remedies provided herein are cumulative and not exclusive of any remedies provided by law.

11.03    Notices.

(a)    Except as otherwise expressly permitted by this Loan Agreement or expressly provided otherwise in the applicable Loan Document, all notices, requests and other communications provided for herein and under the other Loan Documents (including, without limitation, any modifications of, or waivers, requests or consents under, this Loan Agreement) shall be given or made in writing (including, without limitation, by telex or telecopy) delivered to the intended recipient at the "Address for Notices" specified below its name on the signature pages hereof); or, as to any party, at such other address as shall be designated by such party in a written notice to each other party. Except as otherwise provided in this Loan Agreement and except for notices given under Section 2 (which shall be effective only on receipt), all such communications shall be deemed to have been duly given when transmitted by telex or telecopier or personally delivered or, in the case of a mailed notice, upon receipt, in each case given or addressed as aforesaid.

(b)    Nothing in this Loan Agreement or in any other Loan Document shall be construed to limit or affect the obligation of the Borrowers or any other Person to serve upon the Lenders in the manner prescribed by the Bankruptcy Code of the Federal Rules of Bankruptcy Procedure any pleading or notice required to be given to the Lenders pursuant to the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

11.04    Indemnification and Expenses.

(a)    Each Borrower shall hold the Administrative Agent, each Lender-Related Party and each Participant (the Administrative Agent, each Lender-Related Party and each Participant, an "Indemnified Party") harmless from and indemnify any Indemnified Party, on an after-Tax basis, against all liabilities, losses, damages, judgments, costs and expenses of any kind which may be imposed on, incurred by or asserted against such Indemnified Party (collectively, the "Indemnified Liabilities") relating to or arising out of this Loan Agreement, the Note, any other Loan Document or any transaction contemplated hereby or thereby, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, this Loan Agreement, the Note, any other Loan Document or any transaction contemplated hereby or thereby. Without limiting the generality of the foregoing, each Borrower agrees to hold any

- 70 -

Indemnified Party harmless from and indemnify such Indemnified Party against all Indemnified Liabilities with respect to all mortgage loans relating to or arising out of any violation or alleged violation of any environmental law, rule or regulation or any consumer credit laws, including without limitation laws with respect to unfair or deceptive lending practices and predatory lending practices, the Truth in Lending Act or the Real Estate Settlement Procedures Act. In any suit, proceeding or action brought by an Indemnified Party in connection with any mortgage loan for any sum owing thereunder, or to enforce any provisions of any mortgage loan, each Borrower will save, indemnify and hold such Indemnified Party harmless from and against all expense, loss or damage suffered by reason of any defense, set-off, counterclaim, recoupment or reduction or liability whatsoever of the account debtor or obligor thereunder, arising out of a breach by any Borrower of any obligation thereunder or arising out of any other agreement, indebtedness or liability at any time owing to or in favor of such account debtor or obligor or its successors from any Borrower. Each Borrower also agrees to reimburse on Indemnified Party as and when billed by such Indemnified Party for all such Indemnified Party's costs and expenses incurred in connection with the enforcement or the preservation of such Indemnified Party's rights under this Loan Agreement any other Loan Document or any transaction contemplated hereby or thereby, including without limitation the reasonable fees and disbursements of its counsel. Each Borrower hereby acknowledges that, notwithstanding the fact that the Loans are secured by the Collateral, the obligation of each Borrower with respect to each Loan is a recourse obligation of each Borrower. The foregoing to the contrary notwithstanding, the Borrowers shall have no obligation to any Indemnified Party under this <u>Section 11.04</u> with respect to any Indemnified Liability that a court of competent jurisdiction finally determines to have resulted from the bad faith, gross negligence or willful misconduct of such Indemnified Party. In no event, however, shall any Indemnified Party be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

(b)     Each Borrower shall pay as and when billed by the Administrative Agent and the Lenders all of the Lender Expenses through the Closing Date, including all reasonable out-of-pocket costs and expenses (including reasonable fees, disbursements and expenses of counsel) incurred by the Administrative Agent, the Lenders and their Affiliates in connection with the development, due diligence review, preparation and execution of (A) this Loan Agreement and any other Loan Document; and (B) from and after the Closing Date, any Loan Document, amendment, restatement, supplement, or modification of this Loan Agreement or any other Loan Document. Each Borrower shall pay as and when billed by the Administrative Agent or any Lender all Lender Expenses from and after the Closing Date including all of the out-of-pocket costs and expenses incurred by the Administrative Agent, the Lenders and any of their respective Affiliates in connection with the consummation and administration of the transactions contemplated hereby and thereby or with respect to the Collateral, including, without limitation, (i) all the reasonable fees, disbursements and expenses of counsel, (ii) search fees and filing and recording fees, (iii) all reasonable due diligence, inspection, testing and review costs and expenses, and (iv) those costs and expenses incurred pursuant to <u>Sections 11.04(a)</u>, <u>11.04(e)</u> and <u>11.16</u> hereof. Without limiting the foregoing, the Borrowers shall be required to pay the actual charges paid or incurred by the Administrative Agent, any Lender or any of their respective Affiliates for the services of any third-party hired by the Administrative Agent, any Lender or any of their respective Affiliates for performing financial audits, appraising the Collateral, or assessing compliance by any Borrower or any Affiliate or Subsidiary of any Borrower with the terms, conditions, representations and other provisions of any of the Loan

- 71 -

Documents, including, without limitation, third-party underwriting and residual interest valuation firms. So long as the aggregate amount of thereof are at any time due and payable do not exceed the amount on deposit in the Lender Expenses Escrow Subaccount the Administrative Agent shall pay on the Borrowers' behalf all of the foregoing fees, charges and other Lender Expenses that are then due and payable with amounts on deposit in the Lender Expenses Escrow Subaccount.

(c)    Without limiting Section 11.04(b), the Lenders shall be authorized to engage a specialty finance consulting firm reasonably acceptable to the Borrowers to assist in reviewing and monitoring this Facility, the Borrowers' operations and business plan and such other matters as the Lenders shall reasonably require. The budget for such services will be reviewed with and subject to the reasonable approval of the Borrowers, and the cost of such engagement will be reimbursed by the Borrowers.

(d)    The Borrowers shall pay to the Administrative Agent all audit, appraisal, and valuation fees and charges for each financial audit of any Borrower or the Collateral, expenses incurred by any Lender-Related Party for the establishment of electronic collateral reporting systems, to appraise the Collateral, or any portion thereof, or to monitor or assess the performance of any Borrower under any of the Loan Documents.

(e)    Each Borrower acknowledges that the Administrative Agent and each Lender has the right to perform continuing due diligence reviews with respect to any or all of the Collateral or the Borrowers, as desired by the Administrative Agent or such Lender from time to time, for purposes of verifying compliance with the representations, warranties and specifications made hereunder, or otherwise, and each Borrower agrees that the Administrative Agent or such Lender or its authorized representatives will be permitted during normal business hours on any business day to examine, inspect, make copies of, and make extracts of, any and all documents, records, agreements, instruments or information relating to the Collateral in the possession, or under the control, of the Borrowers or any custodian. Each Borrower also shall make available to the Administrative Agent and the Lenders a knowledgeable financial or accounting officer for the purpose of answering questions respecting the Collateral. The Borrowers, the Administrative Agent and the Lenders further agree that all reasonable out-of-pocket costs and expenses incurred by the Administrative Agent and the Lenders in connection with the Administrative Agent's or any Lender's due diligence review of Collateral pursuant to this Section 11.04(f) shall be paid by the Borrowers.

11.05    Amendments. Except as otherwise expressly provided in this Loan Agreement, any provision of this Loan Agreement may be modified or supplemented only by an instrument in writing signed by the Borrowers, the Administrative Agent and the Lenders required pursuant to Section 11.01 and any provision of this Loan Agreement may be waived by the Lenders required pursuant to Section 11.01.

11.06    Successors and Assigns. This Loan Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

11.07    Survival. The obligations of the Borrowers under Sections 3.06 and 11.04 hereof shall survive the payment of the Obligations and the termination of this Loan Agreement. In addition, each representation and warranty made, or deemed to be made by a request for a borrowing, herein or pursuant hereto shall survive the making of such representation and warranty, and the Administrative Agent and the Lenders shall not be deemed to have waived, by reason of making any Loan, any Default that may arise by reason of such representation or warranty proving to have been false or misleading, notwithstanding that the Administrative Agent and the Lenders may have had notice or knowledge or reason to believe that such representation or warranty was false or misleading at the time such Loan was made.

11.08    Captions. The table of contents and captions and section headings appearing herein are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this Loan Agreement.

11.09    Counterparts: Telefacsimile Execution. This Loan Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Loan Agreement by signing any such counterpart. Delivery of an executed counterpart of this Loan Agreement by telefacsimile shall be equally as effective as delivery of an original executed counterpart of this Loan Agreement. Any party delivering an executed counterpart of this Loan Agreement by telefacsimile also shall deliver an original executed counterpart of this Loan Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Loan Agreement. This Section shall apply to each other Loan Document *mutatis mutandis*.

11.10    LOAN AGREEMENT CONSTITUTES SECURITY AGREEMENT: GOVERNING LAW. THIS LOAN AGREEMENT SHALL BE GOVERNED BY NEW YORK LAW WITHOUT REFERENCE TO CHOICE OF LAW DOCTRINE (BUT WITH REFERENCE TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW, WHICH BY ITS TERMS APPLIES TO THIS LOAN AGREEMENT), EXCEPT AS GOVERNED BY THE BANKRUPTCY CODE, AND SHALL CONSTITUTE A SECURITY AGREEMENT WITHIN THE MEANING OF THE UNIFORM COMMERCIAL CODE.

11.11    CERTAIN, WAIVERS: WAIVER OF JURY TRIAL.

(a)    EACH    BORROWER    HEREBY    IRREVOCABLY    AND UNCONDITIONALLY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO OR IN THE NATURE OF SET-OFF, ABATEMENT, SUSPENSION, RECOUPMENT    OR    OTHER    RIGHT    TO    WITHHOLD    ANY    PAYMENT    OR PERFORMANCE DUE BY SUCH BORROWER OR ON ITS BEHALF, TO OR FOR THE BENEFIT OF THE ADMINISTRATIVE AGENT OR ANY LENDER OR RELATED TO THE COLLATERAL.

(b)    WAIVER OF JURY TRIAL. EACH OF THE BORROWERS, THE AGENTS AND THE LENDERS HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS LOAN

AGREEMENT, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

      11.12     <u>Acknowledgments</u>. Each Borrower hereby acknowledges that:

      (a)     it has been advised by counsel in the negotiation, execution and delivery of this Loan Agreement and the other Loan Documents;

      (b)     each of the Administrative Agent and the Lenders has no fiduciary relationship to the Borrowers, and the relationship between the Borrowers and the Administrative Agent and the Lenders is solely that of debtor and creditor; and

      (c)     no joint venture exists among or between the Administrative Agent, the Lenders and the Borrowers.

      11.13     <u>No Party Deemed Drafter</u>. Each of the parties hereto agrees that no party hereto shall be deemed to be the drafter of this Loan Agreement.

      11.14     <u>Parent as Agent for Borrowers</u>. Each Borrower hereby irrevocably appoints the Parent as the borrowing agent and attorney-in-fact for the Borrowers (the "<u>Administrative Borrower</u>") which appointment shall remain in full force and effect unless and until the Administrative Agent shall have received prior written notice signed by all of the Borrowers that such appointment has been revoked and that another Borrower has been appointed Administrative Borrower. Each Borrower hereby irrevocably appoints and authorizes the Administrative Borrower (i) to provide the Administrative Agent with all notices with respect to Loans obtained for the benefit of any Borrower and all other notices and instructions under this Agreement and (ii) to take such action as the Administrative Borrower deems appropriate or its behalf to obtain Loans and to exercise such other powers as are reasonably incidental thereto to carry out the purposes of this Agreement. It is understood that the handling of the Loan Account and Collateral of the Borrowers in a combined fashion, as more fully set forth herein, is done solely as an accommodation to the Borrowers in order to utilize the collective borrowing powers of the Borrowers in the most efficient and economical manner and at their request, and that neither the Administrative Agent nor the Lenders shall incur liability to the Borrowers as a result hereof. Each of the Borrowers expects to derive benefit, directly or indirectly, from the handling of the Loan Account and the Collateral in a combined fashion since the successful operation of each Borrower is dependent on the continued successful performance of the integrated group. To induce the Administrative Agent and the Lenders to do so, and in consideration thereof, each of the Borrowers hereby jointly and severally agrees to indemnify the Indemnified Parties and hold the Indemnified Parties harmless against any and all liability, expense, loss or claim of damage or injury, made against such Indemnified Party by any of the Borrowers or by any third party whosoever, arising from or incurred by reason of (a) the handling of the Loan Account and the Collateral of the Borrowers as herein provided, (b) the Administrative Agent's and the lenders' reliance on any instructions of the Administrative Borrower, or (c) any other action taken by the Administrative Agent or any Lender hereunder or under the other Loan Documents; <u>provided</u>, <u>however</u>, that the Borrowers shall not have any obligation to any Indemnified Party under this <u>Section 11.14</u> for any Indemnified Liabilities

          

caused by the gross negligence or willful misconduct of such indemnified Party, as determined by final judgment of a court of competent jurisdiction.

        11.15     Assignments: Participations.

        (a)     This Loan Agreement and the Notes shall be binding upon and inure to the benefit of the Borrowers and the Administrative Agent and each Lender and their respective successors and assigns (including, except for the right to request Loans, any trustee succeeding to the rights of the Borrowers pursuant to Chapter 11 of the Bankruptcy Code or pursuant to any conversion to a case under Chapter 7 of the Bankruptcy Code); provided, however, that each of the Borrowers may not assign or transfer any of their rights hereunder, or under the Notes, without the prior written consent of each Lender and any such assignment without the Lenders' prior written consent shall be null and void.

        (b)     Each Lender may, with the written consent of (x) the Administrative Agent and (y) the Administrative Borrower; (which consent, in the case of either clauses (x) or (y), is not to be unreasonably withheld) assign to one or more other lenders or other entities all or a portion or its rights and obligations under this Agreement (including, without limitation, all or a portion of its Commitment, the Loans made by it and the Notes held by it); provided, however, that no consent of the Administrative Borrower shall be required for an assignment to a Lender, an Affiliate of a Lender or an Approved Fund, or if a Event of Default has occurred and is continuing; and provided, further, however, that (i) such assignment is in an amount which is at least $1,000,000 or a multiple of $100,000 in excess thereof (or the remainder of such Lender's Commitment) and (ii) the parties to each such assignment shall execute and deliver to the Administrative Agent, for its acceptance, an Assignment and Acceptance, together with any Note subject to such assignment. Upon such execution, delivery and acceptance, from and after the effective date specified in each Assignment and Acceptance, which effective date shall be al least three (3) Business Days after the delivery thereof to the Administrative Agent (or such shorter period as shall be agreed to by the Administrative Agent and the parties to such assignment), (A) the assignee thereunder shall become a "Lender" hereunder and, in addition to the rights and obligations hereunder held by it immediately prior to such effective date, have the rights and obligations hereunder that have been assigned to it pursuant to such Assignment and Acceptance and (B) the assigning Lender thereunder shall, to the extent that rights and obligations hereunder have been assigned by it pursuant to such Assignment and Acceptance, relinquish its rights and be released from its obligations under this Agreement (and, in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto).

        (i)     By executing and delivering an Assignment and Acceptance, the assigning Lender and the assignee thereunder confirm to and agree with each other and the other parties hereto as follows: (A) other than as provided in such Assignment and Acceptance, the assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Loan Agreement or any other Loan Document or the execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement or any other Loan Document furnished pursuant hereto; (B) the assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial

        

condition of the Borrowers or any of their Subsidiaries or the performance or observance by the Borrowers of any of their obligations under this Loan Agreement or any other Loan Document furnished pursuant hereto; (C) such assignee confirms that it has received a copy of this Loan Agreement and the other Loan Documents, together with such other documents and information it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance; (D) such assignee will, independently and without reliance upon the Assigning Lender, the Administrative Agent or any Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Loan Agreement and the other Loan Documents; (E) such assignee appoints and authorizes the Administrative Agent to take such action as the Administrative Agent on its behalf and to exercise such powers under this Loan Agreement and the other Loan Documents as are delegated to the Administrative Agent by the terms thereof, together with such powers as are reasonably incidental thereto; and (F) such assignee agrees that it will perform in accordance with their terms all of the obligations which by the terms of this Agreement and the other Loan Documents are required to be performed by it as a Lender.

(ii)     The Administrative Agent shall maintain, or cause to be maintained at the Payment Office, a copy of each Assignment and Acceptance delivered to and accepted by it and a register for the recordation of the names and addresses of the Lenders and the Commitments of, and principal amount of the Loans owing to each Lender from time to time (the "Register"). The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and the Borrowers, the Administrative Agent and the Lenders may treat each Person whose name is recorded in the Register as a Lender hereunder for all purposes of this Agreement. The Register shall be available for inspection by the Administrative Borrower and any Lender at any reasonable time and from time to time upon reasonable prior notice.

(iii)     Upon its receipt of an Assignment and Acceptance executed by an assigning Lender and an assignee, together with the Notes subject to such assignment, the Administrative Agent shall, if the Administrative Agent consents to such assignment and if such Assignment and Acceptance has been completed (i) accept such Assignment and Acceptance, (ii) give prompt notice thereof to the Administrative Borrower, (iii) record the information contained therein in the Register, and (iv) prepare and distribute to each Lender and the Administrative Borrower a revised Schedule B hereto after giving effect to such assignment, which revised Schedule B shall replace the prior Schedule B and become part of this Agreement.

(iv)     A Registered Loan (and the Note, if any, evidencing the same) may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register (and each Note shall expressly so provide), together with the surrender of the Note, if any, evidencing the same duly endorsed by (or accompanied by a written instrument of assignment or sale duly executed by) the holder of such Note, whereupon, at the request of the designated assignee(s) or transferee(s), one or more new Notes in the same aggregate principal amount shall be issued to the designated assignee(s) or transferee(s). Prior to the registration of assignment or sale of any Registered Loan (and

- 76 -

the Note, if any evidencing the same), the Administrative Agent shall treat the Person in whose name such Registered Loan (and the Note, if any, evidencing the same) is registered as the owner thereof for the purpose of receiving all payments thereon and for all other purposes, notwithstanding notice to the contrary.

(v)     In the event that any Lender sells participations in a Registered Loan, such Lender shall maintain a register on which it enters the name of all participants in the Loans held by it (the "Participant Register"). A Registered Loan (and the Note, if any, evidencing the same) may be participated in whole or in part only by registration of such participation on the Participant Register (and each Note shall expressly so provide). Any participation of such Registered Loan (and the Note, if any, evidencing the same) may be effected only by the registration of such participation on the Participant Register.

(vi)     Any foreign Person who purchases or is assigned or participates in any portion of such Registered Loan shall provide the Administrative Agent (in the case of a purchase or assignment) or the Lender (in the case of a participation) with a completed Internal Revenue Service Form W-8 (Certificate of Foreign Status) or a substantially similar form for such purchaser, participant or any other affiliate who is a holder of beneficial interests in the Registered Loan.

(c)     Each Lender may sell participations to one or more banks or other entries ("Participants") in or to all or a portion of its rights and obligations under this Loan Agreement and the other Loan Documents (including, without limitation, all or a portion of any of its Commitments and any Loans made by it); provided, that (i) such Lender's obligations under this Loan Agreement (including without limitation, its Commitment hereunder) and the other Loan Documents shall remain unchanged; (ii) such lender shall remain solely responsible to the other parties hereto for the performance of such obligations, and the Borrowers, the Administrative Agent and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Loan Agreement and the other Loan Documents, and (iii) a participant shall not be entitled to require such Lender to take or omit to take any action hereunder except (A) action directly effecting an extension of the maturity dates or decrease in the principal amount of the Loans, or (B) action directly effecting an extension of the due dates or a decrease in the rate of interest payable on the Loans or the fees payable under this Agreement, or (C) except for Permitted Dispositions, actions directly effecting a release of all or substantially all of the Collateral or any Borrower.

(d)     Each Lender may furnish any information concerning the Borrowers in the possession of such Lender from time to time to assignees and Participants (including prospective assignees and Participants) who agree to be bound by the provisions of Section 11.21 and this Section 11.16(d) only after notifying the Administrative Borrower in writing and only for the sole purpose of evaluating participations or assignments, as the case may be, and for no other purpose.

(e)     The Borrowers, at no material costs or expenses to the Borrower, agree to cooperate with the Lenders in connection with any such assignment or participation, to execute and deliver such replacement Notes and other documents in order to give effect to such assignment or participation.

11.16   Set-Off.   In addition to any rights and remedies of each Lender provided by this Loan Agreement and by law, each Lender shall have the right during the continuance of an Event of Default, without prior notice to the Borrowers, any such notice being expressly waived by the Borrowers to the extent permitted by applicable law, upon any amount becoming due and payable by the Borrowers hereunder (whether at the stated maturity, by acceleration or otherwise) to set-off and appropriate and apply against such amount any and all Property and deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held or owing by such Lender or any Affiliate thereof to or for the credit or the account of any Borrower. Each Lender may set-off cash, the proceeds of the liquidation of any Collateral and all other sums or obligations owed by such Lender or its Affiliates to any Borrower against all of the Borrowers' obligations to such Lender or its Affiliates, whether under this Loan Agreement or under any other agreement between the parties or between any Borrower and any affiliate of such Lender, or otherwise, whether or not such obligations are then due, without prejudice to such Lender's or its Affiliate's right to recover any deficiency. Each Lender agrees promptly to notify the Borrower after any such set-off and application made by such Lender, provided that the failure to give such notice shall not affect the validity of such set-off and application.

11.17   Entire Agreement.   This Loan Agreement and the other Loan Documents embody the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein or therein. No alteration, waiver, amendments, or change or supplement hereto or thereto shall be binding or effective unless the same is set forth in writing by a duly authorized representative of each party hereto. Notwithstanding the foregoing or anything else in any Loan Document to the contrary, in the event of any conflict between terms and provisions of this Loan Agreement or any other Loan Document and the Orders, the terms and provisions of the Orders shall prevail.

11.18   Records.   The unpaid principal of and interest on the Notes, the interest rate or rates applicable to such unpaid principal and interest, the duration of such applicability, the Commitments, and the accrued and unpaid fees payable pursuant to Section 3.07 hereof, shall at all times be ascertained from the records of the Administrative Agent, which shall be conclusive and binding absent manifest error.

11.19   Confidentiality.   The Administrative Agent, each Lender, each Borrower and their Affiliates shall take normal and reasonable precautions to maintain the confidentiality of all non-public information obtained pursuant to the requirements of this Loan Agreement and the other Loan Documents which has been identified as such by the Borrowers, but may, in any event, make disclosures (i) in the case of the Administrative Agent or any Lender, as reasonably required by any participant or assignee in connection with the contemplated assignment of any interest under this Loan Agreement or participations therein and in accordance with Section 11.15(d), or (ii) as required or requested by any governmental agency or representative thereof or as required pursuant to legal process, or (iii) to its officers, attorneys, accountants, agents, and advisors who are directly involved in the transactions described in this Loan Agreement, or (iv) as required by law, or (v) in connection with litigation involving the Administrative Agent or any Lender.

11.20    <u>Public Announc ements</u>.  The  Administrative  Agent  may  issue  and disseminate to the public general information describing this credit facility, including a general description  of  the  Borrowers'  businesses,  and  may  use  Borrowers'  names  in  published advertising and other promotional materials.

11.21    <u>USA Patriot Act</u>.  Each Lender subject to the USA Patriot Act hereby notifies the Borrowers that pursuant to the requirements of the USA Patriot Act, it is required to obtain, verify and record information that identifies each Borrower, which information includes the name and address of each Borrower and other information that will allow such Lender to identify such Borrower in accordance with the USA Patriot Act.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Loan Agreement to be duly executed and delivered as of the day and year first above written.

**LENDERS:**

**WLR RECOVERY FUND III, L.P.,**
   **as a Lender and as the Administrative Agent**

**By:**   **WLR Recovery Associates III LLC,**
       **its General Partner**

       By:_____
       Name: _____
       Title: _____

Address for Notices:

WLR Recovery Fund III, L.P.
1166 Avenue of the Americas, 27th Floor
New York, New York, 10036
Attention:
Telecopier No.: 212-317-4891
Telephone No.: 212-826-1100

**BORROWERS:**

**AMERICAN HOME MORTGAGE INVESTMENT CORP**

By:_____
Name: _____
Title: _____

**AMERICAN HOME MORTGAGE HOLDINGS, INC.**

By:_____
Name: _____
Title: _____

**AMERICAN HOME MORTGAGE CORP.**

By:_____
Name: _____
Title: _____

                                                  

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**

By:_____

Name: _____

Title: _____

**AMERICAN HOME MORTGAGE VENTURES LLC**

By:_____

Name: _____

Title: _____

**HOMEGATE SETTLEMENT SERVICES, INC.**

By:_____

Name: _____

Title: _____

**GREAT OAK ABSTRACT CORP.**

By:_____

Name: _____

Title: _____

Address for Notices:

c/o American Home Mortgage Investment Corp
538 Broadhollow Road
Melville, New York
Attention:
Telecopier No.:
Telephone No.:

With a copy to:

[  ]

And to:

[  ]

DB02:6163694.3                                                         066585.1001

Schedule A

Borrowers

American Home Mortgage Investment Corp., a Maryland corporation
American Home Mortgage Holdings, Inc., a Delaware corporation
American Home Mortgage Corp., a New York corporation
American Home Mortgage Acceptance, Inc., a Maryland corporation
American Home Mortgage Ventures LLC, a Delaware limited liability company
Homegate Settlement Services, Inc., a New York corporation
Great Oak Abstract Corp., a New York corporation

DB02:6163694.3                                                                                              066585.1001

Schedule B

Initial Lenders

Lender                                          Commitment

WLR Recovery Fund III, L.P.                     $50,000,000.00

Schedule C

Budget

See attached

## Schedule D

### First Lien Collateral

1. Residual interest in the Illinois Property

2. Not less than $[_____] of cash held by the Borrowers as of the Filing Date

3. The equity interests of AHM SPV II LLC (owner of real property located in Melville, New York)

4. The equity interests of American Home Bank

5. Tax Refunds

6. Cash held in deferred compensation plan

7. Unencumbered Whole Loans

8. The equity interests of the captive reinsurance subsidiary [Specified Captive Insurance Subsidiary]

9. The real property located at the Illinois Property

10. [Others to be determined]

Schedule E

Unencumbered Whole Loans

Schedule F

Residuals

## Schedule G

### Authorized Officer

| | |
|---|---|
| Michael Strauss | CEO, Chairman & President |
| Steven Cooper | Chief Restructuring Officer |
| Steve Hozie | Chief Financial Officer |
| Craig Pino | Executive Vice President & Treasurer |
| Robert Bernstein | Executive Vice President & Controller |

<u>Schedule 6.01(a)</u>

Jurisdiction of Organization

| <u>Entity</u> | <u>Jurisdiction of Organization</u> |
| --- | --- |
| American Home Mortgage Investment Corp. | Maryland |
| American Home Mortgage Acceptance, Inc. | Maryland |
| American Home Mortgage Corp. | New York |
| American Home Mortgage Holdings, Inc. | Delaware |
| American Home Mortgage Ventures LLC | Delaware |
| Great Oak Abstract Corp. | New York |
| Homegate Settlement Services, Inc. | New York |

Schedule 6.01(b)

Consents

NONE

Schedule 6.03

Litigation

Schedule 6.21

Subsidiaries of the Borrowers[1]

| Borrower | Direct Subsidiaries |
|---|---|
| American Home Mortgage Investment Corp. | Baylis Trust I |
| | AHM Capital Trust I |
| | American Home Mortgage Securities LLC |
| | AHM SPV III, LLC |
| | American Home Mortgage Acceptance, Inc.[2] |
| | American Home Mortgage Holdings, Inc. |
| American Home Mortgage Holdings, Inc. | American Home Mortgage Servicing, Inc.[3] |
| | American Home Securities, LLC (Inactive) |
| | American Home Mortgage Corp. |
| | Baylis Trust II |
| | Baylis Trust III |
| | Baylis Trust IV |
| | Baylis Trust V |
| | Baylis Trust VI |
| | Baylis Trust VII |

---

[1] See attached Organizational Chart

[2] American Home Mortgage Acceptance, Inc. has two direct subsidiaries: (i) Melville Funding, LLC; and (ii) AHM LF, LLC (an inactive entity)

[3] American Home Mortgage Servicing, Inc. has three direct subsidiaries: (i) CNI Reinsurance, Ltd.; (ii) Nap Financial Services, LLC (Inactive); and (iii) CNI Title Services, LLC (Inactive)

| | |
|---|---|
| | Baylis Trust VIII |
| | American Home Bank[4] |
| | American Home Mortgage Ventures LLC |
| American Home Mortgage Ventures LLC | The following series joint ventures: |
| | - HSS Mortgage, LLC |
| | - All Pro Mortgage, LLC |
| | - Silicon Mortgage, LLC |
| | - TDG Equities, LLC |
| | - Elite Lending Partners, LLC |
| | - Peak Experience Mortgage, LLC |
| | - U.S. Lending Company, LLC |
| | - American Home Mortgage V, LLC |
| | - Private Mortgage Group, LLC |
| American Home Mortgage Corp.[5] | Broadhollow Funding, LLC |
| | AHM SPV I, LLC |
| | AHM SPV II, LLC |
| | Homegate Settlement Services, Inc. |
| | American Home Mortgage Assets LLC |
| | Melville Reinsurance Corp. |
| | Great Oak Abstract Corp. |

---

[4] American Home Bank has one subsidiary:  Umbrella Service Corporation

[5] American Home Mortgage Corp. is also a participant in the following joint ventures:  (i) Mortgage First Limited, LLC; (ii) Array Mortgage, LLC; and (iii) American Midwest Title Agency, LLC

|                                        | American Home Escrow, LLC (Inactive) |
|----------------------------------------|--------------------------------------|
| Homegate Settlement Services, Inc.     | NONE                                 |
| Great Oak Abstract Corp.               | NONE                                 |

Schedule 7.16

Permitted Investments

Exhibit A

Interim Order

See attached.

Exhibit B

BORROWING NOTICE

Dated: _____ __, 200_

WRL Recovery Fund III, L.P.
   as Administrative Agent
1166 Avenue of the Americas, 27th Floor
New York, New York 10036
Attention: _____
Telecopier No.: 212-317-4891

Ladies and Gentlemen:

This Borrowing Notice is delivered to you pursuant to Section 2.03(a) of the Loan Agreement, dated as of August 6, 2007 (as the same may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), among American Home Mortgage Investment Corp.("AHMIC") and certain of AHMIC's subsidiaries, each as a debtor and a debtor-in-possession, as borrower (collectively, the "Borrowers" and individually each a "Borrower"), the Lenders from time to time party to the Loan Agreement, including the initial lenders as set forth on Schedule B of the Loan Agreement, and WLR Recovery Fund III, L.P., as administrative agent for Lenders (in such capacity, the "Administrative Agent"). Unless otherwise defined, terms used herein have the meanings provided in the Loan Agreement.

The Administrative Borrower hereby gives you notice of and requests a Loan under the Loan Agreement (the "Proposed Borrowing") for the account of the Borrowers, and in connection therewith sets forth below the information relating to such Proposed Borrowing:

    1.    The Funding Date of the Proposed Borrowing is _____ __, 200_.

    2.    The aggregate amount of the Proposed Borrowing is $[_____].

The Administrative Borrower, on behalf of itself and the other Borrowers, hereby certifies that the following statements are true on the date hereof, and will be true on the date of the Proposed Borrowing requested hereby, before and immediately after giving effect thereto and to the application of the proceeds therefrom:

    (a)    no Default or Event of Default shall have occurred and be continuing or would result from the making of such Proposed Borrowing;

066585.1001

      (b)     the amount and intended use of proceeds of such Loan are in compliance with the Budget;

      (c)     the representations and warranties made by each Borrower in <u>Section 6</u> of the Loan Agreement, and in each of the other Loan Documents, are true and complete on and as of the date of the making of such Proposed Borrower in all material respects with the same force and effect as if made on and as of such date (or, if any such representation or warranty is expressly stated to have been made as of a specific date, as of such specific date); and

      (d)     each of the other conditions precedent set forth in <u>Section 5.02</u> of the Loan Agreement have been satisfied.

Please wire transfer the proceeds of the Proposed Borrowing to the account set forth on <u>Schedule I</u> attached hereto.

<center>[Signature page follows]</center>

IN WITNESS WHEREOF, the Administrative Borrower has caused this Borrowing Notice to be executed and delivered, and the certification and representations and warranties contained herein to be made, by its duly Authorized Officer this ___ day of _____, 200_.

<div style="margin-left: 45%;">

AMERICAN HOME MORTGAGE INVESTMENT CORP., as Administrative Borrower on behalf of each of the Borrowers


By:_____
    Name:
    Title:

</div>

## SCHEDULE I TO BORROWING NOTICE

[Wire Transfer instructions to be provided by the Borrowers.]