# __EXHIBIT 4__

**Execution Copy**

## ACCOUNT CONTROL AGREEMENT

**ACCOUNT CONTROL AGREEMENT**, dated as of February 28, 2007, among AMERICAN HOME MORTGAGE ACCEPTANCE, INC. a Maryland corporation ("AHMA"), AMERICAN HOME MORTGAGE CORP., a New York corporation ("AHMC"), AMERICAN HOME MORTGAGE INVESTMENT CORP., a Maryland corporation ("AHMIC") and AMERICAN HOME MORTGAGE SERVICING, INC., a Maryland corporation ("AHMS" and together with AHMA, AHMC and AHMIC, the "Sellers" and each, a "Seller"), AHMS, in its capacity as the Servicer (the "Servicer"), ABN AMRO BANK N.V. ("ABN AMRO"), in its capacity as the "Agent" for the "Purchasers" under and as defined in the Master Repurchase Agreement referred to below (the "Agent"), and DEUTSCHE BANK NATIONAL TRUST COMPANY (the "Bank").

**WHEREAS**, the Sellers and the Agent have entered into that certain Master Repurchase Agreement, dated as of the date hereof, (as such agreement is amended, restated, supplemented or otherwise modified from time to time, the "Repurchase Agreement") pursuant to which the Sellers will sell, pledge or otherwise transfer and Agent will purchase, on behalf of the Purchasers, certain Mortgage Loans and related assets;

**WHEREAS**, the Servicer has established that certain non-interest bearing collection account in the name of the Agent, Acct. # 57564, which account is maintained with the Bank pursuant to the Repurchase Agreement (the "Buyer Account"), into which the Servicer shall deposit, with respect to any Mortgage Loan and its related assets transferred or pledged to the Agent, all the scheduled monthly payments of principal and/or interest by the related Mortgagor on such Mortgage Loan and all other cash collections (other than in respect of escrows for taxes and insurance premiums payable under the related Mortgage Loan), all prepayments and repayments thereof, all proceeds of sales of such Mortgage Loan and related assets, all proceeds from the enforcement of such Mortgage Loan and related assets and all other cash proceeds of such Mortgage Loan and related assets (collectively, the "Collections"), which Collections will be held in trust for the Agent by the Bank; and

**WHEREAS**, the Sellers, the Servicer, the Agent and Deutsche Bank National Trust Company, as Custodian (the "Custodian") have entered into that certain Custodial Agreement (as such agreement is amended, restated, supplemented or otherwise modified from time to time, the "Custodial Agreement"), pursuant to which the Custodian will hold the Mortgage Notes and related documents for the benefit of the Agent in accordance with the terms thereof.

**NOW, THEREFORE**, the parties hereby agree as follows:

Section 1.    Capitalized Terms.  Capitalized terms used but not defined herein shall have the meanings assigned in the Custodial Agreement.

Section 2.    <u>Transfers To and From Buyer Account; Control</u>.  The Servicer shall remit or cause to be remitted to the Bank for deposit all Collections collected on the Mortgage Loans into the Buyer Account pursuant to, and to the extent required by, the terms of the Repurchase Agreement and the Letter Agreement.  The Bank shall hold all amounts deposited in the Buyer Account in trust for Agent and shall only release such amounts as expressly provided for herein.  The Servicer shall have the right, subject to the following sentence, to instruct the Bank to (i) transfer amounts deposited in the Buyer Account in respect of Mortgage Loans, (ii) cause or permit withdrawals from the Buyer Account of such amounts and (iii) direct the Bank to invest the amounts on deposit in the Buyer Account in Eligible Investments (as such term is defined below).  Upon the Bank's receipt of written "Notice of Exclusive Control" from the Agent in the form attached hereto as <u>Exhibit A</u>, the Bank shall (i) cease taking any instructions or entitlement orders from the Servicer regarding the Buyer Account or any funds or financial assets held therein, (ii) in no event (A) transfer funds related to such Mortgage Loans or financial assets from the Buyer Account without prior written consent of the Agent, (B) act on the instruction or entitlement orders of any party other than the Agent, or (C) cause or permit withdrawals from the Buyer Account of amounts related to such Mortgage Loans or of financial assets in any manner not approved by the Agent in writing and (iii) comply with instructions and entitlement orders originated by the Agent concerning the disposition of amounts related to such Mortgage Loans and the financial assets in the Buyer Account without further consent of any Seller, the Service, or any other person. All parties agree that (i) the Buyer Account and all property held by Bank in the Buyer Account will be treated as "investment property" under Article 9 of the UCC and "financial assets" and "securities entitlements" under Article 8 of the UCC, (ii) all investments held in the Buyer Account shall be "financial assets" that have been credited to the Buyer Account by the Bank within the meaning of Section 8-501(b) of the UCC, and (iii) as of the date hereof, the Agent shall have "control" of the Buyer Account and all financial assets in the Buyer Account within the meaning of Article 8 of the UCC.

"<u>Eligible Investments</u>" shall mean any of the following investments <u>provided</u> that such investment is a "securities entitlement" within the meaning of Section 8-102(17) of the UCC:

(a)    direct obligations of, or guaranteed as to the full and timely payment of principal and interest by, the United States or obligations of any agency or instrumentality thereof, if such obligations are backed by the full faith and credit of the United States;

(b)    federal funds, certificates of deposit, time deposits and bankers' acceptances (which shall each have an original maturity of not more than 90 days and, in the case of bankers' acceptances, shall in no event have an original maturity of more than 365 days) of any United States depository institution or trust company organized under the laws of the United States or any state and subject to examination and supervision by federal or state financial institutions regulatory authorities; <u>provided</u>, <u>however</u>, that the short-term obligations of such depository institution or trust company are rated "A-1+" by Standard & Poor's, "P-1" by Moody's and, if rated by Fitch, "F1+" by Fitch;

(c)     commercial paper (having original maturities of not more than 30 days) of any corporation incorporated under the laws of the United States or any state thereof which on the date of the acquisition are rated "A-1+" by Standard & Poor's, "P-1" by Moody's and, if rated by Fitch, "F1+" by Fitch;

(d)     securities of money market funds rated "Aam" or better by Standard & Poor's, "Aa" or better by Moody's and, the highest such ratings category by Fitch (if rated by Fitch); and

(e)     any other investment approved in writing by the Agent.

Any such Eligible Investment may be purchased by or through the Agent, the Bank or any of their respective affiliates.

Section 3.      Buyer Account.  The Bank hereby confirms and agrees that:

(a)     The Buyer Account is in the name of the Agent and the Bank shall not change the name or account number of the Buyer Account without the prior written consent of the Agent;

(b)     The Buyer Account is a "securities account" within the meaning of Section 8-501(a) of the Uniform Commercial Code (the "UCC") and the Bank is a "securities intermediary" within the meaning of Section 8-102(14) of the UCC;

(c)     Without limitation on the Agent's rights under Section 2 above, the Bank shall comply with any stop payment orders given by the Agent with respect to items presented for payment by the Servicer;

(d)     There are no other agreements entered into between the Bank and any Seller or the Servicer with respect to the Buyer Account;

(e)     It has not entered into, and until the termination of this Agreement will not enter into, any agreement with any other person relating to the Buyer Account and/or any funds held therein pursuant to which it has agreed, or will agree, to comply with orders or instructions of such other person;

(f)     It has not entered into, and until the termination of this Agreement will not enter into, any agreement with any Seller, the Servicer or any other person purporting to limit or condition the obligation of the Bank to comply with orders and other instructions of the Agent as set forth in Sections 2 and 3(c) above; and

(g)     Funds in the Buyer Account shall be invested in Eligible Investments as directed in writing to the Bank by the Servicer, subject to Section 2 hereof.

Section 4.      Subordination of Lien; Waiver of Set-Off.  In the event that the Bank has or subsequently obtains by agreement, by operation of law or otherwise a security interest in the Buyer Account or any funds held therein, the Bank hereby agrees that such

security interest shall be subordinated to the security interest of the Agent.  The funds, financial assets and other items deposited or credited to the Buyer Account will not be subject to deduction, set-off, banker's lien, or any other right in favor of any person other than the Agent (except that the Bank may set off (i) all amounts due to the Bank in respect of customary fees and expenses for the routine maintenance and operation of the Buyer Account and (ii) the face amount of any checks which have been credited to the Buyer Account but are subsequently returned unpaid because of uncollected or insufficient funds, or (iii) other returned items or mistakes made in crediting the Buyer Account).

Section 5.    CHOICE OF LAW.    THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF (EXCEPT FOR SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).    REGARDLESS OF ANY PROVISION IN ANY OTHER AGREEMENT, FOR PURPOSES OF THE UCC, NEW YORK SHALL BE DEEMED TO BE THE "BANK'S JURISDICTION".

Section 6.    Conflict with Other Agreements; Amendment.

(a)    In the event of any conflict between this Agreement (or any portion thereof) and any other agreement between the Servicer and the Bank now existing or hereafter entered into, the terms of this Agreement shall prevail.

(b)    No amendment or modification of this Agreement or waiver of any right hereunder shall be binding on any party hereto unless it is in writing and is signed by all of the parties hereto.

Section 7.    Adverse Claims.  Except for the claims and interest of the Agent and the limited rights of the Sellers and the Servicer in the Buyer Account, the Bank does not have actual knowledge of any claim to, or interest in, the Buyer Account or in funds held therein. If any person asserts any lien, encumbrance or adverse claim (including any writ, garnishment, judgment, warrant of attachment, execution or similar process) against the Buyer Account or against any funds held therein, upon a Responsible Officer of the Bank receiving written notice of such lien, encumbrance or adverse claim, the Bank will promptly notify the Agent and the Servicer thereof.  For the purposes of this Section 7, a "Responsible Officer" of the Bank means any managing director, director, associate, principal, vice president, assistant vice president, assistant secretary, assistant treasurer, trust officer or any other officer of the Bank customarily performing functions similar to those performed by any of the above designated officers and directly responsible for the administration of this Agreement and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his knowledge of and familiarity with the particular subject.

Section 8.    Successors.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective corporate successors or heirs and personal representatives who obtain such rights solely by operation of law.

Section 9.    <u>Notices</u>.  Any notice, request or other communication required or permitted to be given under this Agreement shall be in writing and deemed, to have been properly given when delivered in person, or when sent by telecopy or other electronic means and electronic confirmation of error free receipt is received, or three days after being sent by certified or registered United States mail, return receipt requested, postage prepaid, addressed to the party at the address set forth below:

If to a Seller:

        538 Broadhollow Road
        Melville, New York 11747
        Facsimile: (516) 495-5411
        Telephone: (516) 495-7026
        Attention:  Craig Pino
        with a copy to Alan B. Horn, General Counsel, at the above address

        and copies to the Agent at the address below,

if to the Servicer:

        American Home Mortgage Servicing, Inc.
        538 Broadhollow Road
        Melville, New York 11747
        Facsimile: (516) 495-5411
        Telephone: (516) 495-7026
        Attention:  Craig Pino
        with a copy to Alan B. Horn, General Counsel, at the above address

        and copies to the Agent at the address below,

if to Agent:

        ABN AMRO Bank N.V.
        540 West Madison Street
        Chicago, Illinois 60661
        Attention:  Therese Gremley
        Facsimile: (312) 992-1527
        Telephone Confirmation: (312) 904-6263

if to the Bank:

        Deutsche Bank National Trust Company
        1761 East St. Andrew Place
        Santa Ana, CA  92705
        Attention:  Mortgage Custody – AH072C
        Telephone: (714) 247-6000
        Facsimile:  (714) 656-2614

        Any party may change its address for notices in the manner set forth above.

        Section 10.    Termination.  The obligations of the Bank to the Agent pursuant to this Agreement shall continue in effect until the Agent has notified the Bank of such termination

in writing.  The Agent agrees with the Sellers and the Servicer to provide Notice of Termination in substantially the form of <u>Exhibit B</u> hereto to the Bank on or after the termination of the Repurchase Agreement.

          Section 11.      <u>Limitation of Liability; Indemnification of the Bank</u>.  The Servicer, the Sellers and the Agent hereby agree that (a) the Bank is released from any and all liabilities to the Servicer and the Agent arising from the terms of this Agreement and the compliance of the Bank with the terms hereof, except to the extent that such liabilities arise from the Bank's bad faith, willful misconduct or negligence and (b) the Servicer, its successors and assigns shall indemnify and save harmless the Bank from and against any loss, liability or expense incurred without bad faith, willful misconduct or negligence on the part of the Bank, its officers, directors and agents, arising out of or in connection with the execution and performance of this Agreement or the maintenance of the Buyer Account, including the reasonable actual costs and expenses of defending themselves against any claim or liability in connection with the performance of any of their powers or duties hereunder.  The Bank's right to indemnification hereunder shall survive the termination of this Agreement and the earlier resignation or removal of the Bank.  Except as otherwise expressly set forth herein, the Bank shall be entitled to the same protections, immunities and indemnities afforded to the Custodian under the Custodial Agreement.

          Section 12.      <u>Counterparts</u>.  This Agreement may be executed may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts.

[SIGNATURE PAGES FOLLOW]

7

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Account Control Agreement, all as of the day and year first above written.

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., as a Seller

By:
Name:
Title:
 Alan B. Horn
 Executive Vice President
 General Counsel & Secretary

AMERICAN HOME MORTGAGE CORP.,
as a Seller

By:
Name:
Title:
 Alan B. Horn
 Executive Vice President
 General Counsel & Secretary

AMERICAN HOME MORTGAGE
INVESTMENT CORP., as a Seller

By:
Name:
Title:
 Alan B. Horn
 Executive Vice President
 General Counsel & Secretary

AMERICAN HOME MORTGAGE
SERVICING, INC., as a Seller and the
Servicer

By:
Name:
Title:
 Alan B. Horn
 Executive Vice President
 General Counsel & Secretary

*Signature Page*
*to*
*Account Control Agreement*

ABN AMRO BANK N.V., as Agent


By: _____
Name:    KEVIN J. HAYES
Title:    DIRECTOR


By: _____
Name:    THOMAS J. EDUCATE
Title:    SENIOR VICE PRESIDENT


DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Bank


By: _____
Name:
Title:


By: _____
Name:
Title:


*Signature Page
to
Account Control Agreement*

ABN AMRO BANK N.V., as Agent

By:_____
Name:
Title:
By:_____
Name:
Title:
DEUTSCHE BANK NATIONAL TRUST COMPANY, as
Bank

By:_____
Name: Christopher Corcoran
Title:       Vice President
By:_____
Name:
Title:       Angel Sanchez
             Authorized Signer

Exhibit A to
<u>Account Control Agreement</u>

[LETTERHEAD OF AGENT]

NOTICE OF EXCLUSIVE CONTROL

[Date]

Deutsche Bank National Trust Company
1761 East St. Andrew Place
Santa Ana, CA  92705
Attention:  Mortgage Custody – AH072C

Re:  Account Control Agreement, dated as of February 28, 2007 among Deutsche Bank National Trust Company,  American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc. and ABN AMRO Bank N.V.

Ladies and Gentlemen:

This constitutes a Notice of Exclusive Control as referred to in Section 2 of the Agreement, a copy of which is attached hereto.  Pursuant to such Section 2, we hereby notify you that we are exercising our rights to assume and exercise exclusive control of account number 57564 maintained with you.  Available funds deposited in such account should be sent at the end of each day to [_____].

Very truly yours,

ABN AMRO BANK N.V., as Agent


By:_____
Name:
Title:

Exhibit B to
<u>Account Control Agreement</u>

[LETTERHEAD OF AGENT]

[Date]

Deutsche Bank National Trust Company
1761 East St. Andrew Place
Santa Ana, CA  92705
Attention:  Mortgage Custody – AH072C

Notice of Termination of Account Control Agreement

You are hereby notified that the Account Control Agreement, dated as of February 28, 2007, a copy of which is attached (the "Agreement"), among you, American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc. and the undersigned is terminated and you have no further obligations to the undersigned pursuant to the Agreement.  Notwithstanding any previous instructions to you, you are hereby instructed to accept all future directions with respect to the Buyer Account from the Servicer.  This notice terminates any obligations you may have to the undersigned with respect to the Buyer Account; provided, however, that nothing contained in this notice shall alter any obligations which you may otherwise owe to the undersigned pursuant to any other agreement.

Very truly yours,

ABN AMRO BANK N.V., as Agent

By:_____
Name:
Title:

Acknowledged and Agreed:

[_____]

By:_____
Name:
Title: