# **EXHIBIT 5**

Execution Copy

## ELECTRONIC TRACKING AGREEMENT

THIS ELECTRONIC TRACKING AGREEMENT dated as of February 28, 2007 (as amended, supplemented or otherwise modified from time to time, this "<u>Agreement</u>") among ABN AMRO BANK N.V., as agent for the Purchasers under the below defined "Repurchase Agreement" (in such capacity, the "<u>Agent</u>"), MERSCORP, INC. ("<u>Electronic Agent</u>"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("<u>MERS</u>"), AMERICAN HOME MORTGAGE SERVICING, INC. (the "<u>Servicer</u>") and AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE ACCEPTANCE, INC., AMERICAN HOME MORTGAGE INVESTMENT CORP., and AMERICAN HOME MORTGAGE SERVICING, INC., (collectively, the "<u>Sellers</u>" and each a "<u>Seller</u>")

WHEREAS, the Sellers have entered into a Master Repurchase Agreement (the "Repurchase Agreement") dated as of the date hereof with the Agent, as Buyer, pursuant to which the Sellers, subject to the terms and conditions therein and in the Letter Agreement, may sell certain Mortgage Loans and related property to the Agent for the benefit of the Purchasers; and

WHEREAS, the Sellers have entered into a Letter Agreement (the "<u>Letter Agreement</u>") dated as of the date hereof with the Agent, the Purchasers party thereto from time to time, the Group Agents party thereto from time to time and American Home Mortgage Servicing, Inc. (the "<u>Servicer</u>"), pursuant to which the Servicer has agreed to perform the duties and obligations as "Servicer" thereunder; and

WHEREAS, the Servicer is obligated to service the Mortgage Loans sold to the Agent pursuant to the terms and conditions of the Letter Agreement; and

WHEREAS, the Agent, the Servicer and the Sellers desire to have certain Mortgage Loans (defined below) registered on the MERS® System (defined below) such that the mortgagee of record under each Mortgage (defined below) shall be identified as MERS; and

WHEREAS, the Servicer has executed a membership application with the Electronic Agent and may accordingly register, and be in the servicer field for, certain Mortgage Loans on the MERS® System.

NOW, THEREFORE, the parties, intending to be legally bound, agree as follows:

1.    **Definitions.**

Capitalized terms used in this Agreement shall have the meanings ascribed to them below.

"<u>Agent</u>" shall have the meaning assigned to such term in the heading hereto.

"<u>Affected Loans</u>" shall have the meaning assigned to such term in Section 4(b).

"<u>Affiliates</u>" shall mean, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, such specified Person. For purposes of this definition, "control" when used with respect to any specified person shall mean the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership

1

of voting securities, by contract, or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Agreement" shall have the meaning assigned to such term in the heading hereto.

"Assignment of Mortgage" shall mean, with respect to any Mortgage, an assignment of the Mortgage notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related mortgaged property is located, to effect the assignment of the Mortgage upon recordation.

"Electronic Agent" shall have the meaning assigned to such term in Section 2.

"Event of Default" shall have the meaning assigned to such term in the Repurchase Agreement.

"Letter Agreement" shall have the meaning assigned to such term in the recitals hereto.

"MERS" shall have the meaning assigned to such term in the heading hereto.

"MERS Designated Mortgage Loan" shall have the meaning assigned to such term in Section 3.

"MERS Procedures Manual" shall mean the MERS Procedures Manual attached as Exhibit B hereto, as it may be amended from time to time.

"MERS® System" shall mean the Electronic Agent's mortgage electronic registry system, as more particularly described in the MERS Procedures Manual.

"Mortgage" "Mortgage" shall mean the mortgage, deed of trust or other instrument creating a first priority lien on a fee simple estate in Mortgaged Property securing a Mortgage Note together with any amendments and any new mortgage taken in exchange or substitution therefor in connection with a modification, conversion or refinancing of such mortgage or the related Mortgage Note.

"Mortgage Loan" shall mean each mortgage loan that is sold or otherwise transferred or pledged by a Seller to the Agent pursuant to the Repurchase Agreement.

"Mortgage Loan Documents" shall mean the originals of the Mortgage Notes and other documents and instruments.

"Mortgage Note" shall mean the original, executed promissory note or other evidence of indebtedness of a Mortgagor under a Mortgage Loan, together with any rider, amendment, extension or renewal thereof and any original promissory note taken in exchange or substitution therefor in connection with a modification, conversion or refinancing of such Mortgage Loan from a construction loan to a permanent mortgage loan or otherwise.

"Mortgagor" shall mean the obligor on a Mortgage Note.

"Notice of Event of Default" shall mean a notice from the Agent as described in Section 4(b) hereof.

"Opinion of Counsel" shall mean a written opinion of counsel in form and substance reasonably acceptable to the Agent.

"Person" shall mean any individual, corporation, company, voluntary association, partnership, joint venture, limited liability company, trust, unincorporated association or government (or any agency, instrumentality or political subdivision thereof).

"Purchasers" shall have the meaning assigned to such term in the Repurchase Agreement.

"Repurchase Agreement" shall have the meaning assigned to such term in the recitals hereto.

"Sellers" shall have the meaning assigned to such term in the heading hereto.

"Servicer" shall have the meaning assigned to such term in the heading hereto.

2.    **Appointment of the Electronic Agent**.

(a)    The Agent, the Servicer and the Sellers, by execution and delivery of this Agreement, each does hereby appoint MERSCORP, Inc., as agent to the Agent, Servicer and the Sellers hereunder (in such capacity, the "Electronic Agent"), to perform the obligations of the Electronic Agent set forth herein.

(b)    MERSCORP, Inc., by execution and delivery of this Agreement, does hereby (i) agree with the Agent, the Servicer and the Sellers subject to the terms of this Agreement to perform the obligations of the Electronic Agent set forth herein, and (ii) accept its appointment as the Electronic Agent.

3.    **Designation of MERS as Mortgagee of Record; Designation of Investor and Servicer of Record in MERS**

Each Seller represents and warrants to the Agent that it (a) has designated or shall designate MERS as, and has taken or will take such action as is necessary to cause MERS to be, the mortgagee of record with respect to certain Mortgage Loans that are sold from time to time to the Agent by such Seller, and in accordance with the MERS Procedures Manual, (b) has designated or shall designate the Servicer as the servicer or subservicer in the MERS® System for each such Mortgage Loan (each such Mortgage Loan, upon such designation by MERS, a "MERS Designated Mortgage Loan"), and (c) has designated or will designate the Agent as the investor on the MERS® System with respect to each MERS Designated Mortgage Loan.

4.    **Obligations of the Electronic Agent**

(a)    The Electronic Agent shall ensure that MERS, as the mortgagee of record under each MERS Designated Mortgage Loan, shall promptly forward all properly identified notices and other documents MERS receives in such capacity to the person or persons identified in the MERS® System as the servicer (or if a subservicer is identified in the MERS® System, the subservicer) for such MERS Designated Mortgage Loan.

(b)    Upon receipt of a Notice of Event of Default, which may be given at any time, in the form of Exhibit C, from the Agent, the Electronic Agent shall modify the investor fields and/or servicer fields to reflect the investor and servicer on the MERS® System as the Agent or the Agent's designee with respect to the MERS Designated Mortgage Loans identified in the Notice of Event of Default (the "Affected Loans"). Following receipt of such Notice of Event of Default, the Electronic Agent shall follow the instructions of the Agent with respect to the Affected Loans without the consent of the Servicer, the related Seller or any investor, servicer or subservicer, and shall deliver to the Agent (or the Agent's designee) any documents and/or information (to the extent such documents or information are in the possession or control of the Electronic Agent) with respect to the Affected Loans requested by the Agent.

(c)    Upon the Agent's request and instructions, and at the applicable Seller's sole cost and expense, the Electronic Agent shall deliver to the Agent or the Agent's designee, with respect to each Affected Loan as to which a request is made, an Assignment of Mortgage from MERS, in blank, in recordable form but unrecorded; provided, however, that the Electronic Agent shall not be required to comply with the foregoing unless the costs and expenses of doing so shall be paid by the applicable Seller or a third party.

(d)    The Electronic Agent shall promptly notify the Agent if it has actual knowledge that any mortgage, pledge, lien, security interest or other charge or encumbrance exists with respect to any of the Mortgage Loans. Upon the reasonable request of the Agent, the Electronic Agent shall review the field within the MERS® System designated "investor" and shall promptly notify the Agent if any Person (other than the Agent) is identified in the field designated "investor" with respect to any MERS Designated Mortgage Loan.

(e)    In the event that (i) the Servicer, any Seller, the Electronic Agent or MERS shall be served by a third party with any type of levy, attachment, writ or court order with respect to any MERS Designated Mortgage Loan or (ii) a third party shall institute any court proceeding by which any MERS Designated Mortgage Loan shall be required to be delivered otherwise than in accordance with the provisions of this Agreement, the Electronic Agent shall promptly deliver or cause to be delivered to the other parties to this Agreement copies of all court papers, orders, documents and other materials concerning such proceedings.

(f)    Upon the request of the Agent, the Electronic Agent shall run a query with respect to any and all specified fields with respect to any or all of the MERS Designated Mortgage Loans and, if requested by the Agent, shall change the information in such fields in accordance with the Agent's instructions.

(g)    MERS, as mortgagee of record for the MERS Designated Mortgage Loans, shall take all such actions as may be required by a mortgagee in connection with servicing the MERS Designated Mortgage Loans at the request of the applicable servicer identified on the MERS® System or at the request of the Agent following receipt of a Notice of Event of Default, including, but not limited to, executing and/or recording, any modification, waiver, subordination agreement, instrument of satisfaction or cancellation, partial or full release, discharge or any other comparable instruments, at the sole cost and expense of the applicable Seller and only if such costs and expenses are paid by such Seller or a third party; provided that MERS shall not execute any such instrument without the prior written consent of the Agent.

(h)    MERS shall cause certain officers of the Agent to be appointed officers of MERS with respect to the MERS Designated Mortgage Loans, with the power to wield all of the powers specified in the form of corporate resolution used to appoint such officer attached hereto as Exhibit D.

(i)    The Electronic Agent shall notify the Agent in writing of any changes to the MERS Procedure Manual pursuant to Section 6 of the MERS Rules of Membership.

**5.    Seller/Servicer Authorization**.    Each of the Servicer and each Seller expressly agrees that, upon the occurrence of an Event of Default, the Agent is authorized to submit a Notice of Event of Default to the Electronic Agent together with a list of Affected Loans.  Each of the Servicer and each Seller hereby authorizes the Electronic Agent, upon receipt of a Notice of Event of Default, to terminate the applicable Seller's and the Servicer's access to the MERS® System with respect to the Affected Loans and to replace the Servicer with the Agent or the Agent's designee in the investor and servicer fields.  Upon the occurrence of an Event of Default, each of the Servicer and each Seller hereby authorizes the Electronic Agent to appoint certain officers of the Agent as officers of MERS with respect to MERS Designated Loans and further authorizes such appointed officers to take any of the actions authorized under the corporate resolution attached hereto as Exhibit D.

**6.    Access to Information**

(a)    Upon the Agent's request, the Electronic Agent shall promptly (and in any event no later than one business day after request) furnish the Sellers and the Agent or its auditors information in its possession with respect to the MERS Designated Mortgage Loans and shall permit them to inspect the Electronic Agent's and MERS' records relating to the MERS Designated Mortgage Loans at all reasonable times during regular business hours.

**7.    Representations of the Electronic Agent and MERS**.

The Electronic Agent and MERS hereby represent and warrant as of the date hereof that:

(a)    each of the Electronic Agent and MERS has the corporate power and authority and the legal right to execute and deliver, and to perform its obligations under, this Agreement, and has taken all necessary corporate action to authorize its execution, delivery and performance of this Agreement;

(b)    no consent or authorization of, filing with, or other act by or in respect of, any arbitrator or governmental authority and no consent of any other Person is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement;

(c)    this Agreement has been duly executed and delivered on behalf of the Electronic Agent and MERS and constitutes a legal, valid and binding obligation of the Electronic Agent and MERS enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (whether enforcement is sought in proceedings in equity or at law);

(d)    the Electronic Agent and MERS will maintain at all times insurance policies for fidelity and errors and omissions in amounts of at least Three Million Dollars ($3,000,000) and Five Million Dollars ($5,000,000) respectively, and a certificate and policy of the insurer shall be furnished to the Agent upon request and shall contain a statement of the insurer that such insurance will not be terminated prior to 30 days' written notice to the Agent;

(e)    each of MERS and the Electronic Agent is duly organized, validly existing and in good standing under the laws of the jurisdiction under whose laws it is organized. Each of MERS and the Electronic Agent is duly qualified to do business, is in good standing and has obtained all necessary

licenses, permits, charters, registrations and approvals necessary for the conduct of its business as currently conducted and the performance of its obligations under this Agreement except where any failure to obtain such a license, permit, charter, registration or approval will not cause a material adverse effect or impair the enforceability of any Mortgage Loan;

(f)    neither the execution and delivery of this Agreement by MERS or the Electronic Agent nor the consummation of the transactions hereunder (i) conflicts with, breaches or violates any provision of the organizational documents of MERS or the Electronic Agent or any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award currently in effect having applicability to MERS or the Electronic Agent or their property, and (ii) constitutes a material default by MERS or the Electronic Agent under any loan or purchase agreement, mortgage, indenture or other agreement or instrument to which MERS or the Electronic Agent is a party or by which it or any of its properties is or may be bound or affected; and

(g)    except as otherwise set forth on Schedule 1 attached hereto, there is no action, proceeding or investigation by or before any court, governmental or administrative agency or arbitrator affecting MERS, the Electronic Agent or any of their Affiliates, pending or threatened, which, if decided adversely, would have a material adverse effect on MERS or the Electronic Agent.

8.    **Covenants of MERS.**

(a)    MERS shall (a) not incur any indebtedness other than in the ordinary course of its business, (b) not engage in any dissolution, liquidation, consolidation, merger or sale of assets, (c) not engage in any business activity in which it is not currently engaged, (d) not take any action that might cause MERS to become insolvent, (e) not form, or cause to be formed, any subsidiaries, (f) maintain books and records separate from any other person or entity, (g) maintain its bank accounts separate from any other person or entity, (h) not commingle its assets with those of any other person or entity and hold all of its assets in its own name, (i) conduct its own business in its own name, (j) pay its own liabilities and expenses only out of its own funds, (k) observe all corporate formalities, (l) enter into transactions with affiliates only if each such transaction is intrinsically fair, commercially reasonable, and on the same terms as would be available in an arm's length transaction with a person or entity that is not an affiliate, (m) pay the salaries of its own employees from its own funds, (n) maintain a sufficient number of employees in light of its contemplated business operations, (o) not guarantee or become obligated for the debts of any other entity or person, (p) not hold out its credit as being available to satisfy the obligation of any other person or entity, (q) not acquire the obligations or securities of its affiliates or owners, including partners, members or shareholders, as appropriate, (r) not make loans to any other person or entity or buy or hold evidence of indebtedness issued by any other person or entity (except for cash and investment-grade securities), (s) allocate fairly and reasonably any overhead expenses that are shared with an affiliate, including paying for office space and services performed by any employee of any affiliate, (t) use separate stationery, invoices, and checks bearing its own name, (u) not pledge its assets for the benefit of any other person or entity, (v) hold itself out as a separate identity, (w) correct any known misunderstanding regarding its separate identity, (x) not identify itself as a division of any other person or entity, and (y) maintain adequate capital in light of its contemplated business operations.

(b)    MERS agrees that in no event shall the status of MERS as mortgagee of record with respect to any MERS Designated Mortgage Loan confer upon MERS any rights or obligations as an owner of or secured party with respect to any MERS Designated Mortgage Loan or the servicing rights related thereto, and MERS will not exercise such rights unless directed to do so by the Agent.

(c)    MERS agrees that each officer of the Agent that has been appointed an officer of MERS in accordance with Section 5 above has the right, by Assignments of Mortgage, to assign and

6

transfer all of MERS' right, title and interest in and to the MERS Designated Mortgage Loans subject to those Assignments of Mortgage.

(d)    The Electronic Agent and MERS agree to provide written notice to the Agent of any litigation, threatened litigation or potential dispute in which the validity or legality of this Agreement or any term hereof is questioned or challenged.

### 9.    Covenants of the Sellers and the Servicer.

(a)    Each of the Servicer and each Seller covenants and agrees with the Agent that, with respect to each MERS Designated Mortgage Loan, none of the Sellers or the Servicer will identify any Person in the "Interim Funder" field or any "Warehouse/Gestation Lender" in the Associated Members section on the MERS® System. Instead, each Seller and the Servicer will leave those fields blank.

(b)    Each applicable Seller will provide the Agent with MERS Identification Numbers for each MERS Designated Mortgage Loan for which MERS is the mortgagee of record.

### 10.    No Adverse Interest of the Electronic Agent or MERS.

By execution of this Agreement, the Electronic Agent and MERS each represents and warrants that it currently holds, and during the existence of this Agreement shall hold, no adverse interest, by way of security or otherwise, in any MERS Designated Mortgage Loan.  The MERS Designated Mortgage Loans shall not be subject to any security interest, lien or right to set-off by the Electronic Agent, MERS, or any third party claiming through the Electronic Agent or MERS, and neither the Electronic Agent nor MERS shall pledge, encumber, hypothecate, transfer, dispose of, or otherwise grant any third party interest in, the MERS Designated Mortgage Loans.

### 11.    Indemnification.

The Electronic Agent agrees to indemnify and hold the Servicer, the Sellers, Agent, the Purchasers and their respective shareholders, officers, directors, employees, agents and designees harmless against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements, including reasonable attorneys' fees, that Servicer, the Sellers, the Purchasers or the Agent, as applicable, may sustain arising out of any breach by the Electronic Agent of this Agreement, the Electronic Agent's negligence, bad faith or willful misconduct, its failure to comply with the Agent's instructions hereunder or to the extent caused by delays or failures arising out of the inability of the Agent or the Electronic Agent to access information on the MERS® System.  The foregoing indemnification shall survive any termination or assignment of this Agreement.

### 12.    Reliance of the Electronic Agent.

(a)    In the absence of bad faith on the part of the Electronic Agent, the Electronic Agent may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any request, instruction, certificate or other document furnished to the Electronic Agent, reasonably believed by the Electronic Agent to be genuine and to have been signed or presented by the proper party or parties and conforming to the requirements of this Agreement.

(b)    Notwithstanding any contrary information which may be delivered to the Electronic Agent by the Servicer or any Seller, the Electronic Agent may conclusively rely on any information or Notice of Event of Default delivered by the Agent, and the Sellers shall indemnify and

hold the Electronic Agent harmless for any and all claims asserted against it for any actions taken in good faith by the Electronic Agent in connection with the delivery of such information or Notice of Event of Default.

13.    <u>Fees</u>.

It is understood that the Electronic Agent or its successor will charge such fees and expenses for its services hereunder as set forth in a separate agreement between the Electronic Agent and each Seller. The Electronic Agent shall give prompt written notice of any disciplinary action instituted with respect to any Seller's failure to pay any fees required in connection with its use of the MERS® System, and will give written notice at least thirty (30) days prior to any revocation of any Seller's membership in the MERS® System.

14.    <u>Resignation of the Electronic Agent; Termination</u>.

(a)    The Agent and the Sellers have entered into this Agreement with the Electronic Agent and MERS in reliance upon the independent status of the Electronic Agent and MERS, and the representations as to the adequacy of their facilities, personnel, records and procedures, its integrity, reputation and financial standing, and the continuance thereof. Neither the Electronic Agent nor MERS shall assign this Agreement or the responsibilities hereunder or delegate their rights or duties hereunder (except as expressly disclosed in writing to, and approved by, the Agent and the Sellers, or after receipt of a Notice of Event of Default, upon the approval of the Agent) or any portion hereof or sell or otherwise dispose of all or substantially all of its property or assets without (a) providing the Agent and the Sellers with at least 60 days' prior written notice thereof, in which case the Electronic Agent and/or MERS shall provide Assignments of Mortgage as set forth in subsection (b) below prior to the expiration of such 60 day period and (b) receiving the written approval of the Agent and the Sellers, or after receipt of a Notice of Event of Default, upon the approval of the Agent.

(b)    Neither the Electronic Agent nor MERS shall resign from the obligations and duties hereby imposed on them except by mutual consent of the Electronic Agent, MERS and the Agent, or upon the determination that the duties of the Electronic Agent and MERS hereunder are no longer permissible under applicable law and such incapacity cannot be cured by the Electronic Agent and MERS. Any such determination permitting the resignation of the Electronic Agent and MERS shall be evidenced by an Opinion of Counsel to such effect delivered to the Sellers and the Agent which Opinion of Counsel shall be in form and substance acceptable to the Agent. No such resignation shall become effective until the Electronic Agent and MERS have delivered to the Sellers, or after Notice of Event of Default, the Agent or its designee, all of the Assignments of Mortgage, in blank, in recordable form but unrecorded for each MERS Designated Mortgage Loan identified by the Agent as purchased by or otherwise transferred or pledged to the Agent.

15.    <u>Removal of the Electronic Agent</u>.

(a)    The Agent, with or without cause, may remove and discharge the Electronic Agent and MERS from the performance of its duties under this Agreement with respect to some or all of the MERS Designated Mortgage Loans by written notice from the Agent to the Electronic Agent, the Servicer and the Sellers.

(b)    In the event of any removal pursuant to subsection (a) above, or any termination of this Agreement, the Electronic Agent shall follow the instructions of the Agent for the disposition of the documents in its possession pursuant to this Agreement, and deliver to the Agent or its designee an Assignment of Mortgage, in blank, in recordable form but unrecorded for each MERS Designated

8

Mortgage Loan identified by the Agent as purchased by or otherwise transferred or pledged to the Agent. Notwithstanding the foregoing, in the event that the Agent terminates this Agreement with respect to some, but not all, of the MERS Designated Mortgage Loans, this Agreement shall remain in full force and effect with respect to any MERS Designated Mortgage Loans for which this Agreement is not terminated hereunder. Other than a termination of this Agreement by the Agent without cause, all costs and expenses incurred by the parties in connection with this Section 14(b) shall be borne by the Sellers. Notwithstanding any termination of this Agreement, the provisions of Section 10 shall survive any termination.

16.     **Notices**.

All written communications hereunder shall be delivered, via facsimile or by overnight courier, to the address of the recipient as set forth on the signature pages hereto, or at such other address as designated by such party in a written notice to the other parties. All such communications shall be deemed to have been duly given when transmitted by facsimile, or in the case of a mailed notice, upon receipt, in each case given or addressed as aforesaid.

17.     **Term of Agreement**.

(a)     This Agreement shall continue to be in effect until terminated pursuant to Sections 14 or 15, as the case may be, or by the Sellers or the Electronic Agent by sending written notice to the other parties of this Agreement at least sixty (60) days prior to said termination; provided that the Sellers may only terminate this Agreement with the prior written consent of the Agent. This Agreement may be terminated by the Agent by sending written notice to the other parties to this Agreement, which termination shall be effective immediately.

(b)     Upon the termination of this Agreement by the Electronic Agent, the Electronic Agent shall, at the Electronic Agent's sole cost and expense, execute and deliver to the Servicer, or after receipt of a Notice of Event of Default, the Agent or its designee, an Assignment of Mortgage with respect to each MERS Designated Mortgage Loan identified by the Agent, in blank, in recordable form but unrecorded. In the event that this Agreement is terminated by the Agent without cause, the duties of the Electronic Agent in the preceding sentence shall be at the sole cost and expense of the Agent. In addition, the Agent and the Electronic Agent may, at the sole option of the Agent, enter into a separate agreement which shall be mutually acceptable to the parties with respect to any or all of the MERS Designated Mortgage Loans with respect to which this Agreement is terminated.

18.     **Authorizations.**

Any of the persons whose signatures and titles appear on Exhibit A hereto are authorized, acting singly, to act for the Agent, Servicer, the applicable Seller or the Electronic Agent, as the case may be, under this Agreement. The parties may change the information on Exhibit A hereto from time to time but each of the parties shall be entitled to rely conclusively on the then current exhibit until receipt of a superseding exhibit.

19.     **Amendments.**

The provisions of this Agreement may be amended, waived or otherwise modified from time to time only by written agreement of the Agent, the Servicer, the Sellers, the Electronic Agent, and MERS.

20.     **Severability**.

If any provision of this Agreement is declared invalid by any court of competent jurisdiction, such invalidity shall not affect the validity of any other provision, and this Agreement shall be enforced to the fullest extent permitted by law.

**21.**    **Binding Effect**.

This Agreement shall be binding and inure to the benefit of the parties hereto and their respective successors and assigns.

**22.**    **Governing Law**.

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY THE LAW OF THE STATE OF NEW YORK.

THE AGENT, THE SELLERS, THE SERVICER, THE ELECTRONIC AGENT AND MERS EACH IRREVOCABLY AGREES THAT ANY ACTION OR PROCEEDING ARISING OUT OF OR IN ANY MANNER RELATING TO THIS AGREEMENT MAY BE BROUGHT IN ANY COURT OF THE STATE OF NEW YORK, OR IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND BY THE EXECUTION AND DELIVERY OF THIS AGREEMENT EXPRESSLY AND IRREVOCABLY ASSENT AND SUBMIT TO THE NONEXCLUSIVE JURISDICTION OF ANY SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING.

**23.**    **Waiver of Jury Trial**.

THE AGENT, THE SELLERS, THE SERVICER, THE ELECTRONIC AGENT AND MERS EACH IRREVOCABLY AGREES TO WAIVE ITS RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING AGAINST IT ARISING OUT OF, OR RELATED IN ANY MANNER TO, THIS AGREEMENT OR ANY RELATED AGREEMENT.

**24.**    **Execution**.

This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement.

**25.**    **Cumulative Rights**.

The rights, powers and remedies of the Electronic Agent, MERS, the Sellers, the Servicer and the Agent under this Agreement shall be in addition to all rights, powers and remedies given to the Electronic Agent, MERS, the Sellers, the Servicer and the Agent by virtue of any statute or rule of law, or any other agreement, all of which rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the Agent's rights in the Mortgage Loans.

**26.**    **Status of Electronic Agent**.

Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto and the services of the Electronic Agent and MERS shall be rendered as independent contractors for the Agent and the Sellers. Other than the obligations of the Electronic Agent and MERS expressly set forth herein, the Electronic Agent and MERS shall have no power or

authority to act as agent for the Agent or the Sellers pursuant to any grant of authority made under or pursuant to this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Agent, the Seller, the Servicer, the Electronic Agent and MERS have duly executed this Agreement as of the date first above written.

**SELLER:**

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**

By:
Name:
Title:

    Alan B. Horn
    Executive Vice President
    General Counsel & Secretary

**Address for Notices to Seller:**

538 Broadhollow Road,
Melville, New York 11747
Attention:  General Counsel
Telecopier No.:  (800) 209-7276
Telephone No.:  (516) 396-7703

**SELLER:**

**AMERICAN HOME MORTGAGE CORP.**

By:
Name:
Title:

    Alan B. Horn
    Executive Vice President
    General Counsel & Secretary

**Address for Notices to Seller:**

538 Broadhollow Road,
Melville, New York 11747
Attention:  General Counsel
Telecopier No.:  (800) 209-7276
Telephone No.:  (516) 396-7703

**SELLER:**

**AMERICAN HOME MORTGAGE INVESTMENT CORP.**

By:
Name:
Title:

    Alan B. Horn
    Executive Vice President
    General Counsel & Secretary

**Address for Notices to Seller:**

538 Broadhollow Road,
Melville, New York 11747
Attention:  General Counsel
Telecopier No.:  (800) 209-7276
Telephone No.:  (516) 396-7703

**SELLER AND SERVICER:**

**AMERICAN HOME MORTGAGE SERVICING, INC.**

By:
Name:
Title:

    Alan B. Horn
    Executive Vice President
    General Counsel & Secretary

**Address for Notices to Seller/Servicer:**

538 Broadhollow Road,
Melville, New York 11747
Attention:  General Counsel
Telecopier No.:  (800) 209-7276
Telephone No.:  (516) 396-7703

**AGENT:**

**ABN AMRO BANK N.V.**

By: _____
Name:    KEVIN J. HAYES
Title:       DIRECTOR

By: _____
Name:    THERESE GREMLEY
Title:      Vice President

**Address for Notices to Agent:**

540 West Madison Street
Chicago, IL 60661
Attention: Therese Gremley
Telephone: (312) 904-6263
Facsimile: (312) 992-1527

**ELECTRONIC AGENT:**

**MERSCORP, INC.**

By: _____
Name: Sharon Horstkamp
Title: Vice President

**Address for Notices to Electronic Agent:**

1595 Spring Hill Road, Suite 310
Vienna, Virginia 22182
Attention: Corporate Secretary
Telecopier No.: 703-748-0183
Telephone No.: 703-761-1280

**MERS:**

**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,**

By: _____
Name: William Hultman
Title: Secretary

**Address for Notices to MERS:**

1595 Spring Hill Road, Suite 310
Vienna, Virginia 22182
Attention: Corporate Secretary
Telecopier No.: 703-748-0183
Telephone No.: 703-761-1280

**AGENT:**

**ABN AMRO BANK N.V.**

By:_____
Name:
Title:

By:_____
Name:
Title:

**Address for Notices to Agent:**

540 West Madison Street
Chicago, IL  60661
Attention:  Kevin J. Hayes
Telephone:  (312) 904-5388
Facsimile:  (312) 992-1527

**ELECTRONIC AGENT:**

**MERSCORP, INC.**

By:_____
Name: Sharon Horstkamp
Title: Vice President

**Address for Notices to Electronic Agent:**

1595 Spring Hill Road, Suite 310
Vienna, Virginia 22182
Attention: Corporate Secretary
Telecopier No.: 703-748-0183
Telephone No.: 703-761-1280

**MERS:**

**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,**

By:_____
Name: William Hultman
Title:  Secretary

**Address for Notices to MERS:**

1595 Spring Hill Road, Suite 310
Vienna, Virginia 22182
Attention: Corporate Secretary
Telecopier No.: 703-748-0183
Telephone No.: 703-761-1280

Electronic Tracking Agreement

EXHIBIT A

Electronic Tracking Agreement

**SELLER AUTHORIZATIONS:**

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Seller under this Agreement:

By: _Michael Strauss_                By: _Stephen A. Hozie_                By: _Alan Horn_

Name: _Michael Strauss_          Name: ___Stephen A. Hozie___          Name: ____Alan B. Horn____
                                                 Executive Vice President & Chief Financial Officer                 Executive Vice President
Title: _President_                        Title: _____          General Counsel & Secretary
                                                                                                      Title: _____

**SERVICER AUTHORIZATIONS:**

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Servicer under this Agreement:

By: _Michael Strauss_                By: _Stephen A. Hozie_                By: _Alan Horn_

Name: _Michael Strauss_          Name: ___Stephen A. Hozie___          Name: ____Alan B. Horn____
                                                 Executive Vice President & Chief Financial Officer                 Executive Vice President
Title: _President_                        Title: _____          General Counsel & Secretary
                                                                                                      Title: _____

**SELLER AUTHORIZATIONS:**

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Seller under this Agreement:

By: _____    By: _____    By: _____

Name: _Craig Pino_    Name: _Bonita Singh_    Name: _Andrew Dokas_

Title: _EVP & Treasurer_    Title: _VP & Assist. Treasurer_    Title: _VP & Assist. Treasurer_

**SERVICER AUTHORIZATIONS:**

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Servicer under this Agreement:

By: _____    By: _____    By: _____

Name: _Craig Pino_    Name: _Bonita Singh_    Name: _Andrew Dokas_

Title: _EVP & Treasurer_    Title: _VP & Assist. Treasurer_    Title: _VP & Assist. Treasurer_

SELLER AUTHORIZATIONS:

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Seller under this Agreement:

By: _____    By: _____    By: _____

Name: _Jyoti Rocco_    Name: _Terence McMahan_    Name: _____

Title: _AVP & Treasurer Mgr_    Title: _AVP & Treasurer Mgr._    Title: _____

SERVICER AUTHORIZATIONS:

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Servicer under this Agreement:

By: _____    By: _____    By: _____

Name: _Jyoti Rocco_    Name: _Terence McMahon_    Name: _____

Title: _AVP & Treasurer Mgr._    Title: _AVP & Treasurer Mgr._    Title: _____

## LIST OF AUTHORIZED PERSONS

AGENT AUTHORIZATIONS:

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Agent under this Agreement:

By: _____    By: _____    By: _____

Name:  Kevin J. Hayes    Name:  Therese Gremley    Name:  Thomas J. Educate

Title:  Director    Title:  Vice President    Title:  Director

ELECTRONIC AGENT AUTHORIZATIONS:

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Electronic Agent under this Agreement:

By: _____    By: _____    By: _____

Name:  Sharon Horstkamp    Name:  William Hultman    Name: _____

Title:  Vice President    Title:  Senior Vice President    Title: _____

MERS AUTHORIZATIONS:

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for MERS under this Agreement:

By: _____    By: _____    By: _____

Name:  William Hultman    Name: _____    Name: _____

Title:  Sec/Treas    Title: _____    Title: _____

Electronic Tracking Agreement

CH1 3745306v.2

## LIST OF AUTHORIZED PERSONS

**AGENT AUTHORIZATIONS:**

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Agent under this Agreement:

By:_____    By:_____    By:_____

Name: _____    Name: _____    Name: _____

Title: _____    Title: _____    Title: _____

**ELECTRONIC AGENT AUTHORIZATIONS:**

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for the Electronic Agent under this Agreement:

By:_____    By:_____    By:_____

Name: _Sharon Horstkamp_    Name: _William Hultman_    Name: _____

Title: ___VP_____    Title: ___SVP_____    Title: _____

**MERS AUTHORIZATIONS:**

Any of the persons whose signatures and titles appear below, or attached hereto, are authorized, acting singly, to act for MERS under this Agreement:

By:_____  By:_____    By:_____

Name: _William Hultman_    Name: _____    Name: _____

Title: __Sec/Treas____    Title: _____    Title: _____

Electronic Tracking Agreement

EXHIBIT B

MERS PROCEDURES MANUAL

**As Appears on the MERS Web-Site: www.mersinc.org**

EXHIBIT C


NOTICE OF EVENT OF DEFAULT


———————— ——, ————


MERSCORP, Inc.
1595 Spring Hill Road, Suite 310
Vienna, Virginia 22182


Ladies and Gentlemen:

       Please be advised that this Notice of Event of Default is being issued pursuant to Section 4(b) of that certain Electronic Tracking Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Electronic Tracking Agreement"), dated as of February 28, 2007 by and among ABN AMRO Bank N.V. (the "Agent"), American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp. and American Home Mortgage Servicing, Inc. (collectively, the "Sellers"), American Home Mortgage Servicing, Inc. (the "Servicer"), MERSCORP, Inc. (the "Electronic Agent") and Mortgage Electronic Registration Systems, Inc. ("MERS"). In accordance with Section 4(b) of the Electronic Tracking Agreement, this notice confirms that an Event of Default under and as defined in the Repurchase Agreement (as defined in the Electronic Tracking Agreement) has occurred and is continuing. Demand is hereby made by the Agent upon the Electronic Agent to modify the investor and servicer fields to reflect the name of the Agent/Agent's designee with respect to the Affected Loans that are listed on the attached Schedule 1 (including the mortgage identification numbers). Accordingly, the Electronic Agent shall not accept instructions from any Seller, the Servicer, any subservicer and/or from any party other than the Agent with respect to such Mortgage Loans, until otherwise notified by the Agent.

       Any terms used herein and not otherwise defined shall have such meaning specified in the Electronic Tracking Agreement.


ABN AMRO BANK N.V.


By: _____
Name:
Title:


C-1

Schedule I to Notice of Event of Default

[Attach list of Affected Loans]

EXHIBIT D
FORM OF CORPORATE RESOLUTION

Be it Resolved that the list of candidates attached hereto as <u>Schedule A-1</u> and <u>Schedule A-2</u> are employees of ABN AMRO Bank N.V. (the "<u>Agent</u>"), and employees of Mortgage Electronic Registration Systems, Inc. (MERS), respectively, and are hereby appointed as assistant secretaries and vice presidents of MERS, and, as such, are authorized to:

(1)     release the lien of any mortgage loan which is deemed to be a MERS Designated Mortgage Loan pursuant to the Electronic Tracking Agreement (the "<u>Electronic Tracking Agreement</u>") dated as of February 28, 2007, by and among ABN AMRO Bank N.V. (the "<u>Agent</u>"), American Home Mortgage Servicing, Inc. (the "<u>Servicer</u>"), American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp. and American Home Mortgage Servicing, Inc. (collectively, the "<u>Sellers</u>"), MERSCORP, Inc. (the "<u>Electronic Agent</u>") and Mortgage Electronic Registration Systems, Inc. ("<u>MERS</u>");

(2)     assign the lien of any MERS Designated Mortgage Loan;

(3)     execute any and all documents necessary to foreclose upon the property securing any MERS Designated Mortgage Loan, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits on Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4)     take any and all actions and execute all documents necessary to protect the interest of the Agent, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a MERS Designated Mortgage Loan, including but not limited to:  (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Agent, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejection a plan, and (g) execute reaffirmation agreements;

(5)     take any and all actions and execute all documents necessary to refinance, amend or modify any MERS Designated Mortgage Loan;

(6)     endorse checks made payable to Mortgage Electronic Registration System, Inc., to the Agent that are received by the Agent for payment on any MERS Designated Mortgage Loan;

(7)     take any such actions and execute such documents as may be necessary to fulfill the Agent's servicing obligations to the beneficial owner of such mortgage loan (including

D-1

mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS).

(8)    take all or any of the foregoing actions, in circumstances in which the Agent has a security interest in loans registered on the MERS System and the Agent is listed in the "investor" category on the MERS System, or in mortgage loans which have not yet been entered on the MERS System, but name MERS as the mortgagee, upon delivery to MERS of a Notice of Event of Default in the form of Schedule B attached hereto.

(9)    take all or any of the actions authorized by the Electronic Tracking Agreement.


I, <u>William C. Hultman</u>, being the <u>Corporate Secretary</u> of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the __th day of _____, ____, which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.


_____
(Signature)


(Corporate seal)

Schedule A-1

ABN AMRO Bank N.V. Employees

Schedule A-2

Mortgage Electronic Registration Systems, Inc. Employees

Schedule B to Corporate Resolutions

SCHEDULE 1

LITIGATION

- MERSCORP, Inc., et al. v. Edward P. Romaine, as clerk of the County of Suffolk, State of New York, et al., New York Supreme Court, Appellate Division – Second Department, Docket No. 2004-04735.