IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| AMERICAN HOME MORTGAGE | § | |
| HOLDINGS, INC., a Delaware | § | |
| Corporation, et al., | § | Case Nos. 07-11047 (CSS) |
| | § | |
| Debtors. | § | Jointly Administered |

### STIPULATION BY AND BETWEEN DEBTORS AND
### JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

American Home Mortgage Holdings, Inc. and its affiliated debtor entities (individually, a "Debtor" and collectively, the "Debtors") and JPMorgan Chase Bank, National Association ("JPMC", together with the undersigned Debtors, the "Parties"), hereby submit this Stipulation (the "Stipulation"), and in support thereof, respectfully state as follows:

### RECITALS

WHEREAS, on August 6, 2007 (the "Petition Date"), the Debtors commenced voluntary cases (the "Bankruptcy Cases") under title 11, chapter 11 of the United States Code, 11 U.S.C. §§ 101, et seq., (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

WHEREAS, the Debtors remain in possession of their property and are managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No official committee has been appointed in the Bankruptcy Cases as of the date hereof.

### The JPMC Warehouse Facility

WHEREAS, JPMC, Debtor American Home Mortgage Investment Corp. ("AHMIC") and Debtor American Home Mortgage Corp. ("AHM") entered into a secured revolving warehouse facility on January 24, 2006 (the "Warehouse Facility") with JPMC (as Administrative Agent and sole Lender), pursuant to that certain 1/06 Senior Secured Credit Agreement (as subsequently

amended, supplemented and extended, prior to the Petition Date), the "Warehouse Credit Agreement").

WHEREAS, JPMC has asserted that under Article VII of the Warehouse Credit Agreement, AHMIC and AHM granted to JPMC as Administrative Agent, a first-priority lien and security interest in, among other things, the pledged residential loans upon which the warehouse financing was to be extended, the underlying chattel paper and other loan documentation evidencing those loans, and all proceeds, accessions or other rights of any kind related to these loans (collectively, the "Warehouse Facility Collateral" and, together with all notes, security instruments and other documentation executed in connection with the Warehouse Facility, the "Warehouse Facility Documents").

WHEREAS, JPMC has asserted that as Administrative Agent for the Warehouse Facility, it has perfected the liens and security interests granted to it in and against the Warehouse Facility Collateral; the Debtors neither admit nor deny that the liens and security interests granted to JPMC pursuant to the Warehouse Facility Documents are valid, enforceable and not subject to avoidance.

WHEREAS, JPMC has asserted that as of the Petition Date, the outstanding principal balance (not including accrued interest, fees, expenses and other charges) under the Warehouse Facility was approximately $160 million. JPMC has further asserted that on August 1, 2007, it sent what it asserts was a notice of default to AHMIC and AHM purporting to declare a default under the Warehouse Facility.

### The Construction/Permanent Loan Collateral

WHEREAS, JPMC has asserted that among the various categories of Warehouse Facility Collateral are certain residential construction loans (the "Construction/Permanent Loans") made for the purpose of constructing or improving certain single-family homes (the "Unfinished Properties") which loans are expected to convert to regular (*i.e.*, "permanent") mortgage loans once the construction or improvements are completed on the Unfinished Properties.

WHEREAS, JPMC has asserted that prior to the commencement of the Bankruptcy Cases, AHM borrowed under the Warehouse Facility to fund the Construction/Permanent Loans by transferring the borrowed funds to its servicing subsidiary, Debtor American Home Mortgage Servicing, Inc. ("AHM Servicing"), which, as servicing agent, then paid the contractors and sub-contractors retained to build and/or repair the Construction Properties. JPMC has asserted that the Construction Properties are in various stages of construction and repair.

WHEREAS, JPMC has asserted that as of the Petition Date, (a) there are approximately fifteen (15) Construction/Permanent Loans constituting purported Warehouse Facility Collateral (the "C/P Loan Collateral"); (b) the maximum dollar amount that would be required to be advanced under the Warehouse Facilities Documents on account of these Construction/Permanent Loans is believed to be $24,742,143; and (c) JPMC believes it has advanced $16,637,823 of this total, leaving what it believes is a maximum of $8,104,320 that could be advanced in connection with the Construction/Permanent Loans.

WHEREAS, JPMC has asserted that on August 5, 2007, it sent a "Notice of Advances to Preserve Collateral" to AHM, AHMIC, and AHM Servicing purporting to notify these Debtors that JPMC intended to fund any additional draws required under the Construction/Permanent Loans as JPMC deemed necessary in its discretion to complete the construction or repair of the Construction Properties (up to a maximum of $8,104,320, the "Advance Limit").

**NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED AND AGREED AS FOLLOWS:**

1.   To the extent JPMC transfers funds to AHM Servicing pursuant to this Stipulation for the purpose of completing the construction or improvement of the Construction Properties, which transfers shall not exceed the Advance Limit, such funds (the "Trust Funds") shall be held in trust for the benefit of JPMC and/or the respective borrower under the Construction/Permanent Loans, and be disbursed by AHM Servicing solely for the purpose of completing the construction or repair of the

Construction Properties, consistent in all respects with this Stipulation and the Warehouse Facility Documents as they existed on the Petition Date. The Parties agree that the Trust Funds (i) shall not become "property of the estate", as such term is defined in section 541 of the Bankruptcy Code, of AHM Servicing or any other Debtor, (ii) notwithstanding any provision to the contrary in this Stipulation, shall not constitute a loan, advance or extension of credit to AHM Servicing and (iii) notwithstanding anything to the contrary in any other order of the Court, including without limitation, any order approving debtor-in-possession financing, the use of cash collateral, or the approval of cash management procedures and practices, none of the Trust Funds shall be used as collateral for any other outstanding or future debt facility of the Debtors other than the Warehouse Facility. The Parties agree that to the extent the Trust Funds are not needed to complete the construction or repair of the Construction Properties, such funds shall be returned to JPMC within three (3) business days after receipt by AHM Servicing of a written request from JPMC for the return of the funds. The Parties agree that the Trust Funds shall be deemed to be advances pursuant to the Warehouse Facility Documents, and shall bear interest at the applicable rate of interest provided thereunder and as permitted by applicable law, which interest shall be payable only in accordance with further order of the Court (on appropriate application and notice to parties in interest). No post-petition interest shall be paid on the Trust Funds solely as a result of such Trust Funds having been advanced subsequent to the Petition Date.

2.    This Stipulation is without prejudice to the rights of JPMC and the Debtors with respect to the Warehouse Facility Collateral, including, without limitation, JPMC's right to seek relief from the automatic stay or adequate protection from this Court and, without limitation, the Debtors' rights (or the rights of parties acting on behalf of the Debtors) (a) to oppose any such requested relief or (b) to challenge the extent, validity, or enforceability of the liens securing the Warehouse Facility Collateral or (c) with respect to any and all advances made by the Debtors, pre or post-petition on the

Construction/Permanent Loans.

3. Notwithstanding any other provision in this Stipulation, JPMC shall not, in connection with any Trust Funds, (x) assert or seek to enforce an administrative or priority claim against any of the Debtors in these cases with respect to any funds advanced or expenses incurred in connection with the transactions contemplated hereby, (y) assert or seek to enforce a lien against or security interest in any property of any Debtor's estate which constitutes "Pre-Petition Collateral" (as defined in the Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (together with any final order entered in connection therewith, the "Cash Collateral Order")) or "Collateral" (as defined in the Cash Collateral Order), or (z) assert or seek to enforce a lien against or security interest in any property of any Debtor's estate that was not, on the Petition Date, subject to a valid, enforceable, and non-avoidable lien or security interest in favor of JPMC pursuant to the Warehouse Facility Documents.

4. On or before August 17, 2007, for each Construction/Permanent Loan for which Trust Funds are advanced pursuant to this Stipulation, the Debtors shall complete an accounting with respect to such loan for principal, interest, paid in full funds, or other payments as the case may be, for the period to be reasonably specified by JPMC, to the extent that such funds have not already been turned over by the Debtors to JPMC. Upon request, the Debtors shall also provide JPMC with information required under the Warehouse Facility Documents, to the extent such request does not impose an unreasonable burden on the Debtors given the circumstances of, and other duties arising from, their pending chapter 11 cases.

5. Nothing contained herein shall modify, terminate or transfer or be deemed to effectuate a modification, termination or transfer of the Debtors' servicing business, i.e. the Debtors' rights to service or administer any mortgage loans and all related activies.. This Stipulation is

without prejudice to any party's rights regarding the ownership of the servicing of the Construction/Permanent Loans.

6. This Stipulation represents the entire agreement among the Parties hereto with respect to the subject matter hereof. This Stipulation supersedes any and all prior and contemporaneous oral and written agreements and discussions among the Parties hereto with respect to the subject matter hereof.

7. This Stipulation may not be amended otherwise modified except in a writing that is signed by both Parties hereto, and is consented to, in writing, by the administrative agent under the "DIP Credit Agreement" (as such term is defined in the as defined in the Interim Order Pursuant to Sections 105(a), 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014: (A) Approving Debtor-in-Possession Financing, (B) Granting Liens and Allowing Superpriority Administrative Claims, (C) Scheduling a Final Hearing, and (D) Granting Related Relief dated August 7, 2007). Material amendments must be approved by the Court and by the Administrative Agent (as such term is defined in the Cash Collateral Order).

8. The Parties agree that the Court shall have exclusive jurisdiction to determine all matters between them now or hereafter relating to this Stipulation.

9. Whether or not this Stipulation is approved, nothing contained herein may be used as, or deemed to be, an admission of liability of any party with respect to any matter.

10. This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same document.

11. The Parties hereto represent and warrant to each other that they are authorized to execute this Stipulation; that each has full power and authority to enter into and perform in accordance with the terms of this Stipulation (subject, in the case of the Debtor parties hereto, to Court approval); and that this Stipulation is duly executed and delivered and constitutes a valid and

7

binding agreement in accordance with its terms (subject, in the case of the Debtor parties hereto, to Court approval).

12. This Stipulation shall become effective immediately upon entry of an order approving the Stipulation by this Court.

[Signature pages follow; remainder of page left blank]

Dated: August 9, 2007
Wilmington, Delaware

| | |
|---|---|
| **JP Morgan Chase Bank, National Association**<br><br>By:<br>**LANDIS RATH & COBB LLP**<br><br>_____<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>919 Market Street, Suite 600<br>Wilmington, DE 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br><br>and<br><br>LOCKE LIDDELL & SAPP PLLC<br>Thomas H. Grace<br>W. Stephen Bryant<br>600 Travis Street, Suite 3400<br>Houston, TX 77002<br>Telephone: (713) 226-1200<br>Facsimile: (713) 223-3717<br><br>_Counsel to JPMorgan Chase Bank, National Association_ | **American Home Mortgage Holdings, Inc.**<br>**American Home Mortgage Corp.**<br>**American Home Mortgage Servicing Inc.**<br><br>By:<br>**YOUNG CONAWAY STARGATT & TAYLOR LLP**<br><br>_____<br>Robert S. Brady (No. 2847)<br>Sharon M. Zieg (No. 4196)<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>_Counsel for Debtors and Debtors in Possession_ |

SO ORDERED
This ___ day of August 2007

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

8