IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x  Chapter 11

In re:                                                             :
                                                                   :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                             :
HOLDINGS, INC., a Delaware corporation, et al.,[1]                :  Jointly Administered
                                                                   :
                        Debtors.                                   :  **Objection Deadline: August 27, 2007 at 4:00 p.m.**
------------------------------------------------------------------ x  **Hearing Date: September 4, 2007 at 11:00 a.m.**

**APPLICATION FOR AN ORDER PURSUANT TO SECTION 327(e) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) APPROVING THE
RETENTION AND EMPLOYMENT OF CADWALADER,
WICKERSHAM & TAFT LLP AS SPECIAL COUNSEL TO THE DEBTORS**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), respectfully

represent as follows:

**SUMMARY OF RELIEF REQUESTED[2]**

1.      By this application (the "Application"), the Debtors request that this Court

enter an order pursuant to sections 327(e) and 328(a) of title 11 of the United States Code, 11

U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing the employment and retention of Cadwalader,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp.
("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558);
American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

[2] Capitalized terms in this Summary shall have the meaning ascribed to them below in this Application.

Wickersham & Taft LLP as Special Counsel to the Debtors for non-bankruptcy matters, including corporate, securities, tax, regulatory, mergers and acquisitions and litigation matters.

## JURISDICTION

2.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATUS OF THE CASE

3.      On the August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      No trustee or examiner has been appointed.  An official committee of unsecured creditors has not yet been appointed.

## THE DEBTORS' BUSINESS[3]

7.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans.  AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors.  AHM offered an array of mortgage products and

---

[3] The facts set forth herein are derived from the Michael Strauss Declaration, which is incorporated by reference as if fully set forth herein at length.  [Docket No. 2]

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

8.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

9.      A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

10.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

066585.1001

11.    The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities.  The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

12.    In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans – began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

13.    On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

14.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business.  As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.  The Debtors as of the Petition Date employed approximately 1000 absolutely essential employees to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

4

066585.1001

15.     In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

16.     Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to  preserve and maximize the value of their estates through orderly sales of their assets.

## RELIEF REQUESTED AND REASONS THEREFOR

17.     By this Application, the Debtors seek to employ and retain the firm of Cadwalader, Wickersham & Taft LLP ("CWT" or the "Firm"), effective as of the Petition Date, as special counsel to perform legal services in connection with corporate, securities, tax, regulatory, mergers and acquisitions, litigation and other non-bankruptcy matters ("Special Counsel") as described below and in the affidavit of Gregory M. Petrick (the "Petrick Affidavit") in support of this Application attached hereto as Exhibit A.  CWT will not advise the Debtors regarding bankruptcy matters, including with respect to rights under warehouse lending facilities, repurchase agreements and other credit facilities or with respect to any of the safe harbor provisions of the Bankruptcy Code that may be applicable in the Debtors' bankruptcy cases.

18.     The Debtors seek to retain CWT as their Special Counsel because of CWT's extensive history and experience as the Debtors' primary outside counsel for the last 8 years.  Based on its prior experience and long-standing relationship with the Debtors, CWT possesses extensive knowledge about the Debtors' business.  Moreover, CWT is currently

DB02:6165100.1

066585.1001

engaged in a number of litigation and corporate matters for the Debtors that will continue

through the bankruptcy period. Accordingly, CWT is able to represent the Debtors with respect

to nonbankruptcy issues with greater efficiency, speed and effectiveness than any other counsel.

Accordingly, CWT is well qualified to serve as Special Counsel to the estate pursuant to section

327(e) of the Bankruptcy Code.

       19.     The attorney in charge of this engagement is Louis Bevilacqua, a partner

in CWT's corporate group. Mr. Bevilacqua has been the lead CWT partner on the Debtors'

matters since 1999.

       20.     Some of the major matters with respect to which CWT has represented the

Debtors include:

       (a)     the initial public offering of AHM Holdings in September 1999

and its listing on the NASDAQ, including establishing the company's corporate structure

and corporate governance procedures, as well as other related matters;

       (b)     the acquisition of various mortgage origination companies,

including Marina Mortgage in December 1999, Columbia National, Inc. in June 2002,

Apex Mortgage Capital, Inc. in July 2003 and Waterfield Financial Corporation in

January 2006;

       (c)     the corporate reorganization of AHM Investments from a Delaware

corporation to a Maryland real estate investment trust ("REIT"), including tax advice

with respect to the transaction, preparation and filing of all documents and

communications with the Securities and Exchange Commission, preparation of closing

documents and continuing consultation regarding REIT tax compliance;

       (d)     the public distribution of units of AHM Investments in December

2003 and its listing on the New York Stock Exchange, as well as subsequent public and

                                                           

private offerings by AHM Investment and its affiliates of preferred stock and trust

preferred securities, including preparation and filing of preliminary and final prospectus

supplements, preparation of underwriting agreements, closing documents and legal

opinions, and attending to post-closing matters;

        (e)      securities law advice and preparation of substantially all filings and

disclosures required by the Securities and Exchange Commission under the Securities

Exchange Act of 1934;

        (f)      representation of the Debtors and possibly some or all of their

officers and directors in litigation matters, currently including the following class action

lawsuits: Claude A. Reese v. Michael Strauss and Stephen A. Hozie, Case No. CV-07-

04661 (C.D. Cal. filed July 18, 2007); Elliot Greenberg v. American Home Mortgage

Investment Corp., Michael Strauss and Stephen A. Hozie, Case No. CV-07-3152

(E.D.N.Y. filed July 31, 2007); Joshua F. Hafron v. American Home Mortgage

Investment Corp., Michael Strauss and Stephen A. Hozie, Case No. CV-07-3184

(E.D.N.Y. filed Aug. 1, 2007); Claude A. Reese v. American Home Mortgage Investment

Corp., Michael Strauss and Stephen A. Hozie, Case No. CV-07-3186 (E.D.N.Y. filed

Aug. 2, 2007); James Ramos v. American Home Mortgage Investment Corp., Michael

Strauss and Stephen A. Hozie, Case No. CV-07-3191 (E.D.N.Y. filed Aug. 2, 2007); Gail

Fialkow v. American Home Mortgage Investment Corp. and Michael Strauss, Case No.

CV-07-3193 (E.D.N.Y. filed Aug. 2, 2007); a matter in which CWT represents the

Debtors as plaintiffs: American Home Mortgage Corp. v. Union Federal Bank of

Indianapolis, Case No: CV-06-7864 (S.D.N.Y.); and in an inquiry conducted by the

Securities and Exchange Commission.

21.     As a result of their extensive work for the Debtors prior to the Petition Date on the matters listed above and others, CWT is thoroughly familiar with the Debtors' corporate and capital structure, management team and various other aspects of their businesses and is thus uniquely qualified to continue to render these services during the Debtors' chapter 11 cases.  Accordingly, the Debtors believe that retention of CWT as Special Counsel for the matters described herein will provide continuity of service, enhance efficiency and thereby preserve estate assets, and is clearly in the best interest of the estates, its creditors and other parties in interest.

22.     As set forth in the Petrick Affidavit, CWT has represented Credit Suisse Securities (USA) LLC, JP Morgan Securities Inc., Merrill Lynch Global Markets, UBS Securities LLC, Natixis Capital Markets Inc., Morgan Stanley Co., Inc., Barclays Capital Inc., Goldman, Sachs & Co., and Citigroup Global Markets, Inc. in financings, mortgage loan purchases and sale transaction and securities underwriting and other matters related to the Debtors.  In each instance, the Debtors waived any conflict of interest and consented to CWT's representation of adverse interests.  CWT is not currently representing these parties with respect to the Debtors, and it will not represent the Debtors with respect to these parties.

23.     In addition, as set forth in detail in the Petrick Affidavit, CWT has represented, currently represents and will continue to represent entities that are claimants of, or interest holders in the Debtors, in matters completely unrelated to the Debtors or the Debtors' pending chapter 11 cases.

24.     Except as set forth above, and in the Petrick Affidavit, CWT has not, does not, and will not represent any entities or any of their respective affiliates or subsidiaries, in matters directly related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases.

8

25.     Accordingly, the Debtors respectfully request entry of an order pursuant to section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014(a) authorizing them to employ and retain CWT as their Special Counsel to provide services relating to the following non-bankruptcy areas :

        (a)     general corporate matters and corporate governance issues;

        (b)     asset dispositions, including through the potential merger of Debtor entities with other entities;

        (c)     tax, regulatory and securities law matters; and

        (d)     certain litigation matters, including those set forth in paragraph 20(f) above.

26.     Subject to Court approval under section 330(a) of the Bankruptcy Code, compensation will be payable to CWT on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm.  As is the case with respect to rates charged in non-bankruptcy matters of this type, CWT's rates are subject to periodic adjustment to reflect economic and other conditions.  Currently, hourly rates of partners for CWT range from $495 to $1000.  Other attorneys' hourly rates, including counsel positions, range from $230 to $675.  The hourly rates charged for CWT legal assistants range from $60 to $225.

27.     The Firm's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time.  It is CWT's policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's case.  The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone

9

calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals" and telecopier charges. The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its other clients. CWT believes that it is fairer to charge these expenses to the particular client rather than increasing the hourly rates and spreading the expenses among all clients.

28.    The Debtors desire to retain CWT to provide the services set forth above. CWT has received approximately $3,700,000 for its pre-petition services since August 1, 2006, which has been applied against pre-petition services. As of the Petition Date, CWT was holding an advance payment retainer of approximately $1,000,000 for its services and expenses to be rendered or incurred for or on behalf of the Debtors. The advance payment retainer will be applied against post-petition fees and expenses approved by the Court.

## NOTICE

29.    Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' list of forty (40) creditors holding the largest unsecured claims; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iv) Counsel to the Debtors' Postpetition Lender; (v) the Securities and Exchange Commission; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

30.    No prior Application for the relief requested herein has been made to this or any other Court.

DB02:6165100.1                                                                066585.1001

WHEREFORE, the Debtors request entry of an order, in the form attached hereto as Exhibit B, granting the relief requested herein and such other and further relief as is just.

Dated:   Wilmington, Delaware
         August 10, 2007

                                        Michael Strauss
                                        Chief Executive Officer
                                        American Home Mortgage Holdings, Inc.

## EXHIBIT A

### PETRICK AFFIDAVIT

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------------------- x

In re:                                                          :     Chapter 11
                                                                :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                          :     Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                              :
                                                                :     Jointly Administered
        Debtors.                                                :
--------------------------------------------------------------------------- x

**AFFIDAVIT OF GREGORY M. PETRICK IN SUPPORT OF APPLICATION FOR
ORDER PURSUANT TO SECTION 327 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 2014 APPROVING RETENTION AND EMPLOYMENT
OF CADWALADER, WICKERSHAM & TAFT LLP AS SPECIAL
<u>COUNSEL TO THE DEBTORS</u>**


STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

        Gregory M. Petrick, being duly sworn, deposes and says:

        1.      I am a member of the firm of Cadwalader, Wickersham & Taft LLP

("CWT" or the "Firm"), an international law firm with its principal offices at One World

Financial Center, New York, New York 10281, and regional offices in Washington, D.C. and

Charlotte, North Carolina; and international offices in London, United Kingdom and Beijing,

China.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

2.    I submit this affidavit in connection with the application of American

Home Mortgage Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and

debtors in possession (collectively, "<u>AHM</u>" or the "<u>Debtors</u>") to employ and retain CWT as

Special Counsel to the Debtors in the above-captioned chapter 11 cases (the "<u>Application</u>") at its

normal hourly rates in effect from time to time, and in accordance with its normal reimbursement

policies, pursuant to sections 327(e) and 328 of title 11, United States Code, 11 U.S.C. §§ 101 <u>et</u>

<u>seq.</u> (the "<u>Bankruptcy Code</u>"), and to provide the disclosure required under Rules 2014 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  Unless otherwise stated in

this affidavit, I have personal knowledge of the facts set forth herein.  I will supplement this

affidavit if additional information becomes available during the pendency of these cases

concerning any relationship between the creditors or interest holders of the Debtors and CWT.

### CWT'S PRE-PETITION RELATIONSHIP WITH THE DEBTORS

3.    CWT has represented the Debtors in various corporate, financing, tax and

litigation matters for over eight years.

4.    CWT is not a creditor of the Debtors.  CWT is holding an advance in the

amount of approximately $1 million dollars from the Debtors on account of services to be

rendered, and as an advance against expenses incurred and to be incurred.  None of the Debtors'

pre-petition payments to CWT constitute voidable preferential transfers pursuant to section 547

of the Bankruptcy Code.

### CWT'S DISCLOSURE PROCEDURES

5.    CWT, which employs approximately 650 attorneys, has a large and

diversified legal practice that encompasses the representation of many financial institutions and

commercial corporations, some of which are or may consider themselves to be creditors or

2

parties in interest in the Debtors' pending chapter 11 cases, or otherwise to have interests in these cases.

6.      In preparing this affidavit, I used a set of procedures developed by CWT to ensure full compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") regarding the retention of professionals by debtors under the Bankruptcy Code (the "CWT Disclosure Procedures"). Pursuant to the CWT Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this affidavit and to ascertain CWT's connection to such parties:

(a)      Based on the best information currently available, a list of the Debtors' forty (40) largest unsecured creditors as reflected in the Debtors' books and records, together with a list of its current executive officers and directors, holders of 5% or more of the Debtors' voting securities, and other potentially material adverse parties in interest as of the Petition Date was developed through discussions with senior management of the Debtors (the "Potential Party List"). To the best of CWT's knowledge, the Potential Party List is the most comprehensive of potential claimants against or interest holders in the Debtors currently available. The Debtors expect to supplement the list and CWT will supplement its disclosures herein at the time of such supplements as may be necessary.

(b)      Since 1963, CWT has maintained a database containing the name of each current and former client, the name of the parties who are or were related or adverse to such current or former client, and the names of the CWT personnel who are or were responsible for current or former matters for such client (the "Database"). CWT updates the Database periodically to include additional entities that become related to

3

current and former clients. Using the information in the Database and its billing records, CWT compiled a list of the names of the entities for which any CWT attorney time charges were recorded at any time during the past three (3) years (the "Current Client List").

(c)    CWT compared the names included in the Potential Party List to the names in the Database and on the Current Client List to identify any matches, determine whether such matches are current or former clients and identify the CWT personnel responsible for such matters (the "Client Match List").

(d)    Using information in the Database and by making specific inquiries of CWT personnel, CWT verified that, except as indicated below, it did not represent any entity on the Client Match List in connection with the Debtors or these chapter 11 cases.

(e)    An attorney then reviewed the Client Match List and deleted obvious name coincidences. The remaining client connections were compiled for purposes of preparing this affidavit.

## CWT'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THESE CHAPTER 11 CASES

7.    CWT has identified the client connections disclosed below ("Current Clients"). All client connections were diligently reviewed by attorneys working under my supervision. Based upon such review, I determined that, with respect to each connection between CWT and such parties, CWT does not hold or represent an interest that is adverse to the Debtors' estates.

4

**Current Clients**

8.      CWT has represented within the prior three (3) years, currently represents,

and may represent in the future the Current Clients (or their affiliates) described on Exhibit 1.

The information listed on Exhibit 1 is the product of implementing the Firm Disclosure

Procedures described herein and delineates the relationship of the indicated entities with the

Debtors and with CWT. Each of the entities listed on Exhibit 1 was generated from the Potential

Party List and is a Current Client, is related to a Current Client, or affiliate thereof. Except as set

forth in paragraph 9 below, the matters for the Current Clients on Exhibit 1 were totally

unrelated to the Debtors.

9.      CWT represented the following Current Clients in mortgage purchase and

sales, financing and other transactions with the Debtors: Credit Suisse Securities (USA) LLC, JP

Morgan Securities Inc., Merrill Lynch Global Markets, UBS Securities LLC, Natixis Capital

Markets Inc., Morgan Stanley Co., Inc., Barclays Capital Inc., Goldman, Sachs & Co., and

Citigroup Global Markets, Inc. The transactions are detailed on Exhibit 2 annexed hereto. In

each instance the Debtors waived any conflict in connection with, and consented to CWT's

representation of the parties herein in matter related to the Debtors.

10.     To the best of my knowledge and information, the annual fees paid to

CWT by any of the Current Clients (and their respective affiliates) for any of the last three (3)

years did not exceed 1% (one percent) of CWT's annual gross revenue for such year, with the

exception of the following entities and their affiliates: (a) Bank of America, (b) Goldman Sachs

& Co., (c) JPMorgan Chase & Co., (d) Merrill Lynch & Co., Inc., (e) Credit Suisse; (f) Morgan

Stanley & Co. and (g) Barclays Bank.

11.     Except as set forth above, CWT has not, does not, and will not represent

any entity or any respective affiliates or subsidiaries thereof, in matters directly related to the

5

Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases.

12.    CWT may in the future represent entities that are claimants of, or interest holders in, the Debtors in matters totally unrelated to the Debtors.

13.    As a matter of retention and disclosure policy, CWT will continue to apply the Firm Disclosure Procedures as additional information concerning entities having a material connection to the Debtors is developed and will file appropriate supplemental disclosures with this Court, if necessary.

### CWT'S RATES AND BILLING PRACTICES

14.    Subject to Court approval, compensation will be payable to CWT on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm. As is the case with respect to work for all Firm clients, CWT's rates are subject to periodic adjustments to reflect economic and other conditions. Currently, hourly rates of partners of CWT range from $495 to $1000. Other attorneys' hourly rates, including counsel positions, range from $230 to $675. The hourly rates charged for CWT paralegals range from $60 to $225.

15.    CWT's disbursement policies pass through all out-of-pocket expenses at actual cost, or at estimated actual cost when the actual cost is difficult to determine. These expenses include facsimiles, toll calls, overtime meals, computerized research, deliveries, court costs, transcript fees, travel, clerk fees, certain secretarial and other overtime expenses, and other expenses.

16.    No promises have been received by CWT or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in

6

accordance with the provisions of the Bankruptcy Code.  CWT has no agreement with any other

entity to share with such entity any compensation received by CWT or by any such entity.

17.    The Debtors' Application requests approval of its retention of CWT as

Special Counsel on rates, terms and conditions consistent with what CWT charges non-title 11

debtors, namely, prompt payment of its hourly rates as adjusted from time to time and

reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the

actual cost where the actual cost is not easily ascertainable.  Subject to these terms and

conditions, and consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local

Rules, CWT intends to apply for compensation for professional services rendered in these

chapter 11 cases at its customary hourly rates and for reimbursement of expenses incurred in

connection therewith.

18.    The foregoing constitutes the statement of CWT pursuant to sections

327(e) and 328 of the Bankruptcy Code and Bankruptcy Rule 2014.

19.    I certify that the foregoing statements are true and correct to the best of my

knowledge information and belief.

7

/s/  Gregory M. Petrick

A Member of the Firm

Sworn to before me this 10th
day of  August, 2007.

/s/  Nathan Haynes
Nathan Haynes

Notary Public, State of New York
No. 02HA6028441
Qualified in Westchester County
Commission Expires 08/02/2009

8

DB02:6165100.1                                                                                          066585.1001

## EXHIBIT 1

## CURRENT CLIENTS

| CLIENT | RELATIONSHIP TO THE DEBTORS |
|---|---|
| Deutsche Bank (and related affiliates) | Creditor |
| Wilmington Trust Company | Creditor |
| JP Morgan Chase (and related affiliates) | Creditor |
| Countrywide (and related affiliates) | Creditor |
| Bank of America (and related affiliates | Creditor |
| Sun Trust (and related affiliates) | Creditor |
| Wells Fargo (and related affiliates | Creditor |
| Morgan Stanley (and related affiliates) | Creditor |
| CW Capital (and related affiliates) | Creditor |
| Bear Stearns (and related affiliates) | Creditor |
| UBS (and related affiliates) | Creditor |
| HSBC (and related affiliates) | Creditor |
| Lehman Brothers (and related affiliates) | Creditor |
| Greenwich (and related affiliates) | Creditor |
| EMC | Creditor |
| Citigroup | Creditor |
| Indymac Bank | Creditor |
| Barclays (and related affiliates) | Creditor |
| Credit Suisse (and related affiliates) | Creditor |
| GMAC (and related affiliates) | Creditor |
| American Express (and related affiliates) | Creditor |
| Royal Bank of Scotland (and related affiliates) | Creditor |
| Washington Mutual (and related affiliates) | Creditor |
| Fannie Mae (and related affiliates) | Creditor |
| Indymac Bank | Creditor |

066585.1001

**EXHIBIT 2**

**TRANSACTIONS FOR CLIENTS IN MATTERS RELATING TO THE DEBTORS**

| CREDITOR | RELATIONSHIP TO THE DEBTORS | RELATIONSHIP TO CWT |
|---|---|---|
| Credit Suisse Securities (USA) LLC | CS was buyer of AHM originated loans in repurchase transactions in 2006 and 2007 | CWT represented CS |
| JP Morgan Securities Inc. | JPM was buyer of AHM originated loans in repurchase transaction in 2006 and 2007 | CWT represented JPM |
| Merrill Lynch Global Markets & Investment Banking | ML was buyer of AHM originated loans in repurchase transaction in 2006 | CWT represented ML |
| UBS Securities LLC | UBS provided a warehouse finance facility for AHM | CWT represented UBS |
| Natixis Capital Markets Inc. | Natixis provided a warehouse finance facility for AHM | CWT represented Natixis |
| Morgan Stanley & Co., Inc. | MS provided a warehouse financing facility for AHM and MS purchased AHM loans in 2006 and 2007 | CWT represented MS |
| Barclays Capital Inc. | Barclays was a buyer of AHM originated loans in repurchase transactions in 2007 | CWT represented Barclays |
| Citigroup Global Markets, Inc. | Citigroup was underwriter for AHM common stock offering in 2007 | CWT represented Citigroup |
| Goldman, Sachs & Co. | GS was a buyer of AHM originated loans and securitized certain AHM loans in 2006 | CWT represented GS |