IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,              :
                                                             :    Jointly Administered
    Debtors.                                                 :
                                                             :    Objection Deadline: August 27, 2007 at 4:00 p.m. (ET)
                                                             :    Hearing Date: September 4, 2007 at 11:00 a.m. (ET)
------------------------------------------------------------ x

## NOTICE OF APPLICATION

TO:   (I) THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE; (II) THE PARTIES INCLUDED ON THE DEBTORS' LIST OF FORTY (40) CREDITORS HOLDING THE LARGEST UNSECURED CLAIMS; (III) COUNSEL TO BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT FOR THE LENDERS UNDER THAT CERTAIN CREDIT AGREEMENT DATED AUGUST 30, 2004; (IV) COUNSEL TO AGENT FOR THE DEBTORS' POSTPETITION LENDER; AND (V) ALL PARTIES ENTITLED TO NOTICE UNDER DEL. BANKR. LR 2002-1(b)

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession have filed the Application for an Order Pursuant To Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Young Conaway Stargatt & Taylor, LLP as Attorneys for the Debtors, *Nunc Pro Tunc* to the Petition Date (the "Application").

PLEASE TAKE FURTHER NOTICE that objections to the attached Application must be filed with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before **4:00 p.m. (ET) on August 27, 2007**. At the same time, you must also serve a copy of the objection upon the undersigned counsel.

A HEARING ON THIS MATTER WILL BE HELD ON **SEPTEMBER 4, 2007 AT 11:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 5TH FLOOR, COURTROOM #6, WILMINGTON, DELAWARE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OF HEARING.

Dated: Wilmington, Delaware
August 13, 2007

        YOUNG CONAWAY STARGATT & TAYLOR, LLP

        */s/ Pauline K. Morgan*
        James L. Patton, Jr. (No. 2202)
        Joel A. Waite (No. 2925)
        Pauline K. Morgan (No. 3650)
        Sean M. Beach (No. 4070)
        Matthew B. Lunn (No. 4119)
        Kara Hammond Coyle (No. 4410)
        Kenneth J. Enos (No. 4544)
        The Brandywine Building
        1000 West Street, 17th Floor
        Wilmington, Delaware 19801
        Telephone: (302) 571-6600
        Facsimile: (302) 571-1253

        Proposed Counsel for Debtors and
        Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x   Chapter 11
In re:                                                          :
                                                                :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                          :
HOLDINGS, INC., a Delaware corporation, et al.,[1]              :   Jointly Administered
                                                                :
                        Debtors.                                :   Objection Deadline: August 27, 2007 at 4:00 p.m.
                                                                :   Hearing Date: September 4, 2007 at 11:00 a.m.
---------------------------------------------------------------- x

**APPLICATION FOR ORDER PURSUANT TO SECTION 327
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014
APPROVING THE RETENTION AND EMPLOYMENT OF
YOUNG CONAWAY STARGATT & TAYLOR, LLP AS ATTORNEYS
FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively the "Debtors") hereby file this application (the "Application") seeking entry of an order, pursuant to section 327 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the retention and employment of Young Conaway Stargatt & Taylor, LLP (the "Firm" or "Young Conaway") as attorneys to the Debtors in these chapter 11 cases, *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors rely upon the Affidavit of Pauline K. Morgan, a copy of which is attached hereto as Exhibit A (the "Morgan Affidavit"). In further support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

## STATUS OF THE CASE

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5. No trustee or examiner has been appointed. An official committee of unsecured creditors has not yet been appointed.

## THE DEBTORS' BUSINESS[2]

6. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference as if fully set forth herein at length.

sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

7. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

8. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

9. Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing

default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

10. The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

11. In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans – began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

12. On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

13. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors as of the Petition Date employed approximately 1000

absolutely essential employees to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

14. In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

15. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELIEF REQUESTED

16. By this Application, the Debtors seek authority to retain and employ Young Conaway as their bankruptcy counsel with regard to the filing and prosecution of these chapter 11 cases, *nunc pro tunc* to the Petition Date.

## BASIS FOR RELIEF

### A. Young Conaway's Qualifications

17. The Debtors seek to retain Young Conaway as their attorneys because of the Firm's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. Additionally, the Debtors submit that Young Conaway's expertise, experience and knowledge practicing before this Court will be efficient and cost effective for the Debtors' estates. Accordingly, the Debtors believe that

Young Conaway is both well qualified and uniquely able to represent and counsel the Debtors in these chapter 11 cases in a most efficient and effective manner.

**B.    Payment of Fees and Expenses**

18.    Young Conaway will seek approval of payment of compensation and reimbursement of actual, necessary expenses and other charges upon Young Conaway's filing of appropriate applications for allowance of interim or final compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and Orders of this Court.  The current standard hourly rates of the Firm are:

|           |                |
|-----------|----------------|
| Partners: | $450 to $700   |
| Associates: | $230 to $425 |
| Paralegals: | $105 to $205 |

The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

19.    The hourly rates set forth above are the Firm's standard hourly rates for work of this nature.  These rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's case.  The expenses charged to clients, include, but may not be limited to, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, document imaging charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by the Firm to outside copying services for use in mass mailings, travel expenses, expenses for

"working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses approved by the client such as secretarial and other overtime. The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. The Firm believes that it is fairer to charge these expenses to the clients incurring them than to increase hourly rates and spread the expenses among all clients.

20.     Young Conaway was retained pursuant to the terms of an engagement agreement dated July 28, 2007 (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit B. In accordance with the Engagement Agreement, Young Conaway received an initial retainer in the amount of $400,000, and an additional retainer in the amount of $400,000 on August 3, 2007, in connection with the planning and preparation of initial documents and its proposed post-petition representation of the Debtors. A portion of this retainer has been applied to outstanding balances existing as of the Petition Date, including payment of fees and expenses associated with the filing of these chapter 11 cases.[3] The remainder will constitute a general retainer as security for post-petition services and expenses until the conclusion of these cases.

21.     In these cases, the general security retainer is appropriate for several reasons. *See In re Insilco Technologies, Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) (Carey, J.) ("Factors to be considered, include…whether terms of an engagement agreement reflect normal business terms in the marketplace;…the relationship between the Debtor and the professionals, *i.e.*, whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation[] [and]…whether the retention, as

---

[3] Young Conaway has not yet completed its final reconciliation of pre-petition fees and expenses applied against its retainer. Details regarding such final reconciliation will be included in the Firm's first application for interim compensation.

proposed, is in the best interests of the estate[]..."); *see also* Statements of Chief Bankruptcy Judge Peter J. Walsh, *In re CTC Communications Group, Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), transcript of hearing held May 22, 2003, at 43 ("I agree and adopt wholeheartedly Judge Carey's decision in the *Insilco* case."). First, these types of retainer agreements reflect normal business terms in the marketplace. *See In re Insilco Technologies, Inc.*, 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place."). Second, both Young Conaway and the Debtors are sophisticated business entities that have negotiated the retainer at arm's length. Third, the retention of Young Conaway is in the best interests of the Debtors' estates because the retention agreement and retainer allow the Debtors to maintain the prepetition relationship established with Young Conaway. Finally, although the Debtors' interim post-petition financing facility with WLR Recovery Fund III, L.P. provides for a professional fee carve-out of $5 million, the professional fees and expenses outstanding at any point in time in a case of this magnitude are likely to far exceed such carve-out.[4] Thus, under the standards articulated in *In re Insilco Technologies, Inc.*, and adopted *In re CTC Communications Group, Inc.*, the facts and circumstances of these cases support the approval of the security retainer.

### C.   Services To Be Provided

22.   The professional services that Young Conaway will render to the Debtors include, but shall not be limited to, the following:

    a.   to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business and management of their properties;

---

[4] In addition to this Application, the Debtors have filed an application to retain Cadwalader, Wickersham & Taft LLP as special counsel and anticipate filing an application to also retain Quinn Emanuel Urquhart Oliver & Hedges, LLP as special counsel.

      b.      to prepare and pursue confirmation of a plan and approval of a disclosure statement;

      c.      to prepare on behalf of the Debtors necessary applications, motions, answers, orders, reports and other legal papers;

      d.      to appear in Court and to protect the interests of the Debtors before the Court; and

      e.      to perform all other legal services for the Debtors that may be necessary and proper in these proceedings.

**D.**    **Bankruptcy Rule 2014 Disclosures**

23. To the best of the Debtors' knowledge, and except as disclosed herein and in the Morgan Affidavit, Young Conaway is a "disinterested person" as those terms are defined in section 101(14) of the Bankruptcy Code.

24. For the above reasons, the Debtors submit that Young Conaway's retention and employment is necessary and in the best interest of the Debtors and their estates.

## NOTICE

25. Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' list of forty (40) creditors holding the largest unsecured claims; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iv) counsel to the Agent for the Debtors' Postpetition Lender; (v) counsel to the official committee of unsecured creditors, when appointed; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

26. No prior request for the relief sought in this Application has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u>, authorizing the retention and employment of Young Conaway pursuant to the terms of the Engagement Agreement, *nunc pro tunc* to the Petition Date, and grant the Debtors such other and further relief as is just and proper.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Dated: Wilmington, Delaware
August 13, 2007

_____
Alan Horn
Executive Vice President and General Counsel
American Home Mortgage Holdings, Inc.