IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------------  x  Chapter 11
In re:                                                            :
                                                                  :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                            :
HOLDINGS, INC., a Delaware corporation, et al.,                   :  Jointly Administered
                                                                  :
                                   Debtors.                       :  Objection Deadline: August 27, 2007 at 4:00 p.m.
----------------------------------------------------------------  x  Hearing Date: September 4, 2007 at 11:00 a.m.
```

**DEBTORS' MOTION FOR ADMINISTRATIVE ORDER
ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS PURSUANT
TO SECTIONS 331 AND 105(a) OF THE BANKRUPTCY CODE**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] respectfully

represent as follows:

## SUMMARY OF RELIEF REQUESTED[2]

1.    By this motion (the "Motion"), the Debtors request that this Court enter an

order pursuant to sections 331 and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101,

et seq. (the "Bankruptcy Code") establishing procedures for interim compensation and

reimbursement of professional expenses during these cases.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2]    Capitalized terms in this Summary shall have the meanings ascribed to them in the Motion.

## JURISDICTION

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 331 and 105(a) of the Bankruptcy Code.

## BACKGROUND

3.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.      An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007.  No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[3]

7.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans.  AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors.  AHM offered an array of mortgage products and

---

[3]      A detailed description of the Debtors' businesses and related business information is set forth in the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference as if fully set forth herein at length.

DB02:6148326.2                                                                                          066585.1001

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

8.     As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

9.     A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

10.     Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

DB02:6148326.2

066585.1001

11.     The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities.  The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

12.     In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans – began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

13.     On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

14.     The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business.  As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.  The Debtors, as of the Petition Date, employed approximately 1000 absolutely essential employees to the Debtors' continued operations, although that number is

expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

15.    In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions.  Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

16.    Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RETENTION OF PROFESSIONALS

17.    The Debtors have or will be filing applications to retain and employ Young Conaway Stargatt & Taylor, LLP ("YCST") as bankruptcy counsel; Cadwalader, Wickersham & Taft LLP ("Cadwalader") as special counsel; Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn") as special counsel; Milestone Advisors, LLC ("Milestone") as investment bankers and financial advisors; Phoenix Capital, Inc. ("Phoenix") as investment bankers; and Kekst and Company Incorporated ("Kekst") as corporate communications advisor. The Debtors anticipate that, as these cases progress, they may need to retain other professionals in connection with their chapter 11 efforts.  In addition, the Committee will retain counsel and other professionals pursuant to section 1103 of the Bankruptcy Code to assist in the performance of its statutory duties (such professionals collectively with YCST, Cadwalader, Quinn, Milestone, Phoenix, and Kekst, the "Professionals").

## RELIEF REQUESTED

18.    By this Motion, the Debtors request the entry of an order authorizing and

establishing procedures for compensating and reimbursing Professionals on a monthly basis,

comparable to those procedures established in other chapter 11 cases filed in the District of

Delaware.  See, e.g., In re New Century TRS Holdings, Inc., et al., Case No. 07-10416 (Bankr.

D. Del. 2007); In re Pliant Corp., Case No. 06-10001 (Bankr. D. Del. 2006); In re Meridian

Auto. Sys. – Composites Operations, Inc., Case No. 05-11168 (Bankr. D. Del. 2005); In re

AstroPower, Inc., Case No. 04-10322 (Bankr. D. Del. 2004); In re Maxxim Medical Group, Inc.,

Case No. 03-10438 (Bankr. D. Del. 2003); In re Classic Communications, Inc., Case Nos. 01-

11257 through 01-11272 (Bankr. D. Del. 2001); In re Winstar Communications, Inc., Case No.

01-01430 (Bankr. D. Del. 2001); In re Integrated Health Servs., Inc., Case No. 00-00389 (Bankr.

D. Del. 2001); In re Mariner Post-Acute Network, Inc., Case No. 00-00113 (Bankr. D. Del.

2000).  Such an order would enable the Court, the United States Trustee for the District of

Delaware (the "U.S. Trustee"), and all other parties to monitor effectively Professionals' fees and

expenses incurred in these cases.

19.    Specifically, the Debtors propose that the monthly payment of

compensation and reimbursement of expenses of Professionals be structured as follows:

(a)    No earlier than the 15th day of each calendar month, each
Professional seeking interim compensation shall file an
application (the "Fee Application"), pursuant to section
331 of the Bankruptcy Code, for interim approval and
allowance of compensation for services rendered and
reimbursement of expenses incurred during the
immediately preceding month (the "Compensation
Period") and serve a copy of such Fee Application on: (i)
American Home Mortgage Holdings, Inc., 538
Broadhollow Road, Melville, New York 11747 (Attn.:
Alan Horn, General Counsel); (ii) Young Conaway
Stargatt & Taylor, LLP, 1000 West Street, 17th Floor,
P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn.:

James L. Patton, Jr.), counsel to the Debtors; (iii) Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington, DC 20006 (Attn: Jeffrey M. Levine); (iv) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801, counsel to the Committee; (v) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022 (Attn.: Margot B. Schonholtz and Scott D. Talmadge) and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801 (Attn.: Laurie Selber Silverstein), counsel to the Administrative Agent; (vi) Jones Day, 222 East 41st Street, New York, New York 10017 (Attn.: Corinne Ball and Erica M. Ryland) and Greenberg Traurig LLP, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn.: Victoria Counihan), counsel to the DIP Agent; and (vii) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn.: Joseph McMahon) (each a "Notice Party"). All Fee Applications shall comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), applicable Third Circuit law, and the Local Rules of this Court. Each Notice Party will have twenty (20) days after service of a Fee Application to object thereto (the "Objection Deadline"). Upon the expiration of the Objection Deadline, a Professional may file a certificate of no objection with the Court after which the Debtors are authorized to pay each Professional an amount (the "Actual Interim Payment") equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the Fee Application (the "Interim Payment"); and (ii) 80 percent of the fees and 100 percent of the expenses not subject to an objection pursuant to subparagraph (b) below.

(b)     If any Notice Party objects to a Professional's Fee Application, it must file a written objection (an "Objection") with the Court and serve it on the affected Professional and each of the Notice Parties. The Objection additionally must be filed with the Court and received by the affected Professional and the Notice Parties on or before the Objection Deadline. Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection within twenty (20) days after service of the Objection, the affected

Professional may either: (i) file a response to the Objection with the Court, together with a request for payment of the difference, if any, between the Interim Payment and the Actual Interim Payment made to the affected Professional (the "Incremental Amount"); or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the Objection if requested by the parties.

(c)     Beginning with the approximately three-month period ending on October 31, 2007, at three-month intervals or at such other intervals convenient to the Court, each of the Professionals must file with the Court and serve on the Notice Parties a request (an "Interim Fee Application Request") for interim Court approval and allowance, pursuant to section 331 of the Bankruptcy Code, of the compensation and reimbursement of expenses sought in the Fee Applications filed during such period (the "Interim Fee Period"). The Interim Fee Application Request must include a summary of the Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. Each Professional must file its Interim Fee Application Request within forty-five (45) days after the end of the Interim Fee Period for which the request seeks allowance of fees and reimbursement of expenses. Each Professional must file its first Interim Fee Application Request on or before December 17, 2007 and the first Interim Fee Application Request should cover the Interim Fee Period from the commencement of these cases through and including October 31, 2007. Any Professional that fails to file an Interim Fee Application Request when due will be ineligible to receive further interim payments of fees or expenses under the compensation procedures until such time as the Interim Fee Application Request is submitted by the Professional.

(d)     The Debtors shall request that the Court schedule a hearing on Interim Fee Application Requests at least once every six (6) months, or at such other intervals as the Court deems appropriate.

(e)     The pendency of an Objection to payment of compensation or reimbursement of expenses will not disqualify a Professional from the future payment of compensation or reimbursement of expenses.

DB02:6148326.2

066585.1001

> (f)    Neither (i) the payment of or the failure to pay, in whole or
> in part, monthly interim compensation and reimbursement
> of expenses nor (ii) the filing of or failure to file an
> Objection will bind any party in interest or the Court with
> respect to the allowance of interim or final applications for
> compensation and reimbursement of expenses of
> Professionals. All fees and expenses paid to Professionals
> are subject to disgorgement until final allowance by the
> Court.

20.    The Debtors further request that the Court limit the notice of hearings to

consider interim and final fee applications to: (a) the Notice Parties, and (b) all parties who have

filed a notice of appearance with the Clerk of this Court and requested such notice. Such notice

should reach the parties most active in these cases and will save the expense of undue duplication

and mailing.

21.    Moreover, the Debtors request that each member of the Committee be

permitted to submit statements of expenses and supporting vouchers to counsel for the

Committee, which shall collect and submit such requests for reimbursement in accordance with

the foregoing procedure for monthly and interim compensation and reimbursement of

Professionals; provided, however, that Committee members' requests for reimbursement of

attorneys' fees must be made by separate application and scheduled for hearing upon proper

notice.

22.    If the Motion is approved, the Debtors will include all payments made to

Professionals in accordance with the compensation procedures set forth herein in their monthly

operating reports identifying the amount paid to each of the Professionals.

### BASIS FOR RELIEF REQUESTED

23.    Section 331 of the Bankruptcy Code provides, in relevant part, as follows:

> A trustee, an examiner, a debtor's attorney, or any
> professional person employed under section 327 or
> 1103 of this title may apply to the court not more

than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title.

11 U.S.C. § 331.

24.     Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.     As already noted, procedures for compensating and reimbursing court-approved professionals have been established in other large chapter 11 cases in this District. Such procedures are necessary to avoid having professionals fund the reorganization case. See In re Int'l Horizons, Inc., 10 B.R. 895, 897 (Bank. N.D. Ga. 1981). Appropriate factors to consider when deciding whether to approve interim compensation procedures such as those proposed here include "the size of [the] reorganization cases, the complexity of the issues involved, and the time required on the part of the attorneys for the debtors in providing services necessary to achieve a successful reorganization of the debtors." Id. at 897-98. The Professionals should not be made to fund the Debtors' cases.

26.     The Debtors submit that the procedures sought herein are appropriate given the size of the Debtors and the anticipated complexity of these cases.

## NOTICE

27.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iv) counsel to the Agent for the Debtors' Postpetition Lender; and (v) all parties entitled

- 10 -

to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein,

the Debtors submit that no other or further notice is required.

## **NO PRIOR MOTION**

28.    No previous motion for the relief sought herein has been made to this or

any other Court.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

DB02:6148326.2                                    066585.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form annexed hereto as Exhibit A, granting the relief requested in the Motion

and such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware
          August 14 , 2007

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              James L. Patton, Jr. (No. 2202)
                              Joel A. Waite (No. 2925)
                              Pauline K. Morgan (No. 3650)
                              Sean M. Beach (No. 4070)
                              Matthew B. Lunn (No. 4119)
                              Kara Hammond Coyle (No. 4410)
                              Kenneth J. Enos (No. 4544)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Proposed Counsel for Debtors and
                              Debtors in Possession

DB02:6148326.2                                                            066585.1001