# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------  x
In re                                              :
                                                   :      Chapter 11
American Home Mortgage Holdings, Inc.,             :
et al.                                             :
                                                   :      Case No. 07-11047 (CSS)
Debtors.                                           :
                                                   :      (Jointly Administered)
                                                   :
-------------------------------------------------  x


-------------------------------------------------  x
Morgan Stanley Mortgage Capital                    :
Holdings LLC,                                      :
                                                   :      Adversary Proceeding
           Plaintiff,                              :      Case No. _____( __ )
                                                   :
American Home Mortgage Corp. and                   :
American Home Mortgage Servicing, Inc.,            :
                                                   :
           Debtor-Defendants.                      :
                                                   :
-------------------------------------------------  x
```

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Morgan Stanley Mortgage Capital Holdings LLC, successor-in-interest

by merger to Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley"), by its undersigned

attorneys, for its complaint[1] against defendants American Home Mortgage Corp. ("AHM Corp.")

and American Home Mortgage Servicing, Inc. ("AHM Servicing" and, with AHM Corp., the

---

[1] Morgan Stanley has reviewed the Debtors' Motion to Dismiss Credit Suisse First Boston Mortgage Capital LLC's Complaint for Temporary Restraining Order and Declaration and Injunctive Relief (the "Motion to Dismiss") and accompanying Memorandum of Law. Although Morgan Stanley has properly brought this adversary proceeding for injunctive and declaratory relief under Rule 7001(7) of the Bankruptcy Rules, to the extent the Court agrees with the Debtors' argument that relief from the automatic stay is required in order to initiate this proceeding, the Court should consider Morgan Stanley's Motion for Declaratory and Injunctive Relief, filed contemporaneously herewith, to include a request for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code.

"Defendants"), alleges upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.      This is an action for breach of contract, declaratory judgment and conversion, which seeks injunctive relief, an accounting and a constructive trust.

2.      Morgan Stanley and AHM Corp. are parties to the Third Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of June 1, 2006 (as amended, supplemented and otherwise modified from time to time, the "Purchase Agreement").

3.      Pursuant to the Purchase Agreement, Morgan Stanley purchased, from time to time, certain mortgage loans (the "Mortgage Loans") from AHM Corp. on various dates. The Purchase Agreement prescribes, among other things, the manner in which the Mortgage Loans are conveyed from AHM Corp. to Morgan Stanley and the control of the Mortgage Loans and any related documentation.  Morgan Stanley currently owns Mortgage Loans purchased from AHM Corp. under the Purchase Agreement in an amount exceeding $519 million unpaid principal balance.  Morgan Stanley has sold numerous other Mortgage Loans purchased from AHM Corp. in the secondary market.  At present, Morgan Stanley has several transactions pending, including one with a whole loan investor, related to the sale of certain of the Mortgage Loans.

4.      AHM Corp. sold the Mortgage Loans to Morgan Stanley on a servicing released basis, which means that AHM Corp. sold all rights relating to the Mortgage Loans, including the right to service those loans.

5.      Morgan Stanley and AHM Servicing are parties to the First Amended and Restated Interim Servicing Agreement, dated as of June 1, 2005, as supplemented by that certain

Regulation AB Compliance Addendum to the First Amended and Restated Interim Servicing Agreement, dated as of April 1, 2007 (as further amended, supplemented and otherwise modified from time to time, the "Interim Servicing Agreement" and, together with the Purchase Agreement, the "Agreements"). Accordingly, although AHM Corp. sold the servicing rights with respect to the Mortgage Loans to Morgan Stanley, pursuant to the Interim Servicing Agreement, AHM Servicing agreed to sub-service on an interim basis the Mortgage Loans that Morgan Stanley purchased from AHM Corp. under the Purchase Agreement.

6.       Pursuant to the Interim Servicing Agreement, AHM Servicing retains possession of the Servicing Files, but holds them in trust for the benefit of Morgan Stanley as the owner thereof until the servicing transfer date at which time the files themselves transfer. AHM Servicing is obligated to make the files relating to any Mortgage Loan in AHM Servicing's possession or control, as well as all records, files, and all other documents of AHM Servicing relating to the Mortgage Loans (defined herein, below, as the "Servicing Files") available to Morgan Stanley and to permit Morgan Stanley to copy all or any portion of the Servicing Files. Under the Interim Servicing Agreement, AHM Servicing also is required to deposit in certain segregated custodial accounts (the "Custodial Accounts" and the "Escrow Accounts") all funds received with respect to the Mortgage Loans on the business day of their receipt. On the fifth day of each month (or next business day), AHM Servicing is required to transfer to Morgan Stanley all funds on deposit in the Custodial Accounts.

7.       Prior to the commencement of the Defendants' bankruptcy cases, on August 1, 2007, Morgan Stanley gave notice to AHM Servicing pursuant to the Interim Servicing Agreement that it had exercised its general right to transfer sub-servicing of the Mortgage Loans without cause. Morgan Stanley notified AHM Servicing that it sought transfer

of the sub-servicing effective August 21, 2007.[2] Repeated attempts by Morgan Stanley to make

arrangements with AHM Servicing personnel in regards to the August 21, 2007 servicing

transfer procedures were unsuccessful.

8.     However, prior to the commencement of the Defendants' bankruptcy

cases, AHM Servicing failed to comply with certain of its covenants under the Interim Servicing

Agreement. Specifically, AHM Servicing was required to maintain its eligibility as a qualified

and approved servicer for Fannie Mae and Freddie Mac. Fannie Mae confirmed in writing to

Morgan Stanley on August 3, 2007, that AHM Servicing had been terminated as a servicer

qualified to service Fannie Mae mortgage loans, effective August 1, 2007.

9.     As a result, by letter dated August 3, 2007, Morgan Stanley notified AHM

Servicing that it was exercising its rights under sections 7.01 and 12.01 of the Interim Servicing

Agreement to terminate immediately the Interim Servicing Agreement and all of AHM

Servicing's rights thereunder, and to accelerate the transfer of the Servicing Files and the funds

in the Custodial and Escrow Accounts, each of which are held in trust for Morgan Stanley by

AHM Servicing. Pursuant to this notice and consistent with the terms of the Interim Servicing

Agreement, AHM Servicing is specifically required, among other things, to:

> (a)     remit to Morgan Stanley all amounts received on the Mortgage Loans and remit all such collections to an account designated by Morgan Stanley, and segregate funds;
>
> (b)     immediately transfer sub-servicing to the successor servicer appointed by Morgan Stanley; and
>
> (c)     immediately transfer to Morgan Stanley the Servicing Files relating to any Mortgage Loans in such Defendants' possession or control, as well as all records, files, and all

---

[2]     On August 2, 2007, Morgan Stanley sent a supplemental notice to AHM Servicing, correcting the address of the successor servicer designated by Morgan Stanley.

other documents held by each Defendant relating to the
Mortgage Loans.

10.    Since August 3, 2007, and in addition to contacts made prior to that date in

respect of the August 1 termination notice, Morgan Stanley has telephoned AHM Servicing

employees repeatedly to arrange for the immediate and orderly transfer of the Servicing Files,

which are Morgan Stanley's property under the parties' contractual arrangements. Despite these

efforts, in disregard of its obligations to Morgan Stanley under the Purchase Agreement, AHM

Corp. has failed to cause AHM Servicing to effect the transfer of the Servicing Files or certain

amounts to which Morgan Stanley is entitled under the Interim Servicing Agreement.

11.    In addition to breaching its covenant under the Purchase Agreement to

cause AHM Servicing to comply with its sub-servicing transfer obligations, AHM Corp. has

breached the Purchase Agreement by failing to cooperate with Morgan Stanley with respect to a

whole loan sale of certain Mortgage Loans to an investor. Specifically, in spite of repeated

requests, AHM Corp. has refused to deliver to Morgan Stanley's designated servicer, Saxon

Mortgage Services, Inc. ("Saxon"), the Servicing Files relating to the Mortgage Loans to be sold,

and has failed to execute an Assignment, Assumption and Recognition Agreement (the

"Assignment Agreement") that is required in order to effect the transfer of the Mortgage Loans.

As a result of AHM Corp.'s refusal to cooperate, the whole loan investor is now unwilling to

purchase the Mortgage Loans at issue, giving rise to potentially substantial damages to Morgan

Stanley.

12.    In further breach of its obligations under the Purchase Agreement, AHM

Corp. has failed to provide documents that it is required to provide to Morgan Stanley. Morgan

Stanley purchased Mortgage Loans from AHM Corp. on multiple dates between March 5, 2003

and July 26, 2007. In connection with those purchases, AHM Corp. was required under the

Purchase Agreement to deliver and release to the custodian on behalf of Morgan Stanley certain documents, including, among other documents, the executed mortgage note, the executed mortgage and evidence of the recording of the mortgage (collectively, the "Mortgage Loan Documents"). As with the Servicing Files, Morgan Stanley has made repeated requests that AHM Corp. personnel deliver the Mortgage Loan Documents to Morgan Stanley. In breach of its obligations under the Purchase Agreement, AHM Corp. has failed to deliver the Mortgage Loan Documents in a timely manner or to respond to Morgan Stanley's requests.

       13.    Given Morgan Stanley's ownership of the servicing rights and related assets, and the Defendants' pending insolvency proceedings, absent injunctive relief, Morgan Stanley has already and will continue to suffer immediate irreparable harm unless (i) Morgan Stanley is given immediate access to the Servicing Files and Mortgage Loan Documents relating to the Mortgage Loans owned by Morgan Stanley so that Morgan Stanley can take possession of those records, (ii) AHM Corp. and AHM Servicing immediately transfer to Morgan Stanley any funds held by them on Morgan Stanley's behalf, (iii) the servicing of the Mortgage Loans owned by Morgan Stanley is immediately transferred to the successor servicer chosen by Morgan Stanley in order to preserve the value of such Mortgage Loans, and (iv) AHM Corp. cooperates fully with Morgan Stanley with respect to the whole loan sale of certain Mortgage Loans to an investor. Indeed, this immediate irreparable harm has been acknowledged in the governing documents themselves, which make clear that money is an insufficient remedy and require specific performance.

       14.    Morgan Stanley is entitled under the Interim Servicing Agreement to have AHM Servicing segregate and remit to Morgan Stanley all funds collected on the Mortgage Loans owed to Morgan Stanley and, to this end, the Defendants are required under the Interim

Servicing Agreement and the Purchase Agreement to perform an accounting of amounts they have collected on the Mortgage Loans owned by Morgan Stanley so that Morgan Stanley can determine if all amounts collected on those Mortgage Loans have been remitted as required by the Interim Servicing Agreement.

15.     Finally, Morgan Stanley is entitled to a constructive trust with respect to the documents and funds relating to the Mortgage Loans. Pursuant to the Interim Servicing Agreement and Purchase Agreement, there is a fiduciary relationship between Morgan Stanley and each of the Defendants regarding the possession of the Servicing Files, the funds collected with respect the Mortgage Loans and the Mortgage Loan Documents. By retaining the Servicing Files, the funds collected with respect the Mortgage Loans and the Mortgage Loan Documents, the Defendants have been unjustly enriched. Morgan Stanley is therefore entitled to the implementation of a constructive trust with respect to these documents and funds.

## JURISDICTION AND VENUE

16.     On August 6, 2007 (the "Commencement Date"), the Defendants and other of their affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.

17.     This is an adversary proceeding initiated by Morgan Stanley pursuant to Rule 7001(7) (to obtain an injunction or other equitable relief), Rule 7001(9) (to obtain a declaratory judgment), and Rule 7003 of the Federal Rules of Bankruptcy Procedure. Rule 7065 provides that a temporary restraining order or preliminary injunction may be issued by the Court without security.

18.     This Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

19.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

20.     Venue is proper pursuant to 28 U.S.C. § 1409.

## THE PARTIES

21.     Plaintiff Morgan Stanley is a New York limited liability company with a principal place of business at 1585 Broadway, New York, New York 10036.

22.     On information and belief, defendant AHM Corp. is a New York corporation with its principal place of business at 538 Broadhollow Road, Melville, New York 11747.

23.     On information and belief, defendant AHM Servicing is a Maryland corporation with its principal place of business at 4600 Regent Blvd. Suite 200, Irving, Texas 75063.

## FACTUAL BACKGROUND AND ALLEGATIONS

24.     On June 1, 2005, Morgan Stanley entered into the Interim Servicing Agreement with AHM Servicing.  On June 1, 2006, Morgan Stanley entered into the Purchase Agreement with AHM Corp.  On April 1, 2007, Morgan Stanley and AHM Servicing modified the Interim Servicing Agreement by the Regulation AB Compliance Addendum.  The Purchase Agreement and the Interim Servicing Agreement are each amendments and restatements of agreements originally entered into by the parties on or about November 1, 2003.[3]

---

[3]     The original purchase agreement was a Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2003, as amended by that certain Amendment No. 1, dated as of November 30, 2004, as further amended by that certain Amendment No. 2, dated as of February 22, 2005, as further amended and restated by that certain First Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of June 1, 2005, and as further amended and restated by that certain Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of December 1, 2005, each by and between Morgan Stanley, as the Purchaser, and AHM Corp., as the Seller.  The original servicing agreement was an Interim Servicing Agreement, dated as of November 1, 2003, between AHM Servicing, as Servicer, and Morgan Stanley, as Purchaser.

A.    **The Interim Servicing Agreement**

25.    Pursuant to the Interim Servicing Agreement, AHM Servicing agreed with Morgan Stanley, as owner of the servicing rights, to sub-service the Mortgage Loans (AHM Servicing in such capacity, the "Interim Servicer") on an interim basis, which generally did not exceed 100 days from the date of purchase.  See Interim Servicing Agreement Art. II.  As a general matter, servicing of mortgage loans includes, but is not limited to, collecting monthly mortgage payments and other fees from the mortgagees, administering tax and insurance escrows, responding to borrower inquiries and maintaining control over the collection and default mitigation process.  See id.  Morgan Stanley had the right under the Interim Servicing Agreement, which it exercised, to transfer sub-servicing of the Mortgage Loans on notice without cause and without a termination fee.

   i.    Morgan Stanley's Ownership of the Servicing Files and
         Mortgage Loan Documents

26.    The Interim Servicing Agreement contains terms relating to the instruments, agreements, and other books, records, reports and data with respect to the Mortgage Loans, including the credit files related to the Mortgage Loans and any other instruments necessary to document or service a mortgage loan (collectively, the "Servicing Files").  The Servicing Files include documents and financial information relating to the accounts of the various mortgagors, including payment history, payment schedules, and indications of what financial arrangements, such as waivers, may have been reached with the mortgagors affecting their obligations to the mortgagee.

27.    The Interim Servicing Agreement and Purchase Agreement are clear that ownership of the servicing rights and Servicing Files resides with Morgan Stanley and provides

that AHM Servicing holds the Servicing Files in trust for Morgan Stanley.  Specifically, section

8.01 of the Interim Servicing Agreement provides:

> Prior to the related Transfer Date, the contents of each Servicing
> File are and shall be held in trust by the Interim Servicer for the
> benefit of the Purchaser as the owner thereof.  The Interim Servicer
> shall maintain in the Servicing File a copy of the contents of each
> Mortgage File and the originals of the documents in each Mortgage
> File not delivered to the Purchaser.  The possession of the
> Servicing File by the Interim Servicer is at the will of the
> Purchaser for the sole purpose of servicing the related Mortgage
> Loan, pursuant to this Agreement, and such retention and
> possession by the Interim Servicer is in its capacity as Servicer
> only and at the election of the Purchaser.

28.    The Interim Servicing Agreement requires AHM Servicing to cooperate

with Morgan Stanley throughout the term of the agreement and to provide any and all

information regarding the Mortgage Loans, irrespective of whether or not there has been an

Event of Default under the Interim Servicing Agreement.  Section 4.06 of the Interim Servicing

Agreement thus provides that Morgan Stanley:

> shall have the right to examine and audit any and all of the books,
> records, or other information of the Interim Servicer, whether held
> by the Interim Servicer or by another on its behalf, with respect to
> or concerning this Agreement or the Mortgage Loans, during
> business hours or at such other times as may be reasonable under
> applicable circumstances, upon reasonable advance notice.

29.    Section 5.01 of the Interim Servicing Agreement requires the Interim

Servicer, upon reasonable request by Morgan Stanley, to "furnish to [Morgan Stanley] such

periodic, special or other reports or information, whether or not provided for herein, as shall be

necessary, reasonable, or appropriate with respect to the Purchaser or the purposes of this

Agreement."  Id. at § 5.01.  Section 5.01 further provides that "the Interim Servicer shall execute

and deliver all such instruments and take all such action as [Morgan Stanley] may reasonably

request from time to time, in order to effectuate the purposes and carry out the terms of this

Agreement."

     ii.    <u>Morgan Stanley's Rights to the Funds in the Custodial and Escrow Accounts</u>

     30.    The Interim Servicing Agreement provides that all funds collected and

received pursuant to the Mortgage Loans are the property of Morgan Stanley, and that AHM

Servicing is required to establish and maintain segregated accounts Custodial and Escrow

Accounts for the benefit of Morgan Stanley, in which accounts all such funds must be deposited.

     31.    In this regard, section 2.04 of the Interim Servicing Agreement provides:

> The Interim Servicer shall segregate and hold all funds collected
> and received pursuant to the Mortgage Loans separate and apart
> from any of its own funds and general assets and shall establish
> one or more Custodial Accounts, in the form of time deposit or
> demand accounts, to be maintained under the sole dominion and
> control of the Purchaser and titled "American Home Mortgage
> Servicing, Inc., in trust for Morgan Stanley Mortgage Capital Inc.
> as Purchaser of Mortgage Loans and various Mortgagors."

     32.    Section 2.06 of the Interim Servicing Agreement similarly requires AHM

Servicing to establish and maintain a segregated account for escrow payments collected and

received pursuant to the Mortgage Loans:

> The Interim Servicer shall segregate and hold all funds collected
> and received pursuant to a Mortgage Loan constituting Escrow
> Payments separate and apart from any of its own funds and
> general assets and shall establish and maintain one or more
> Escrow Accounts, in the form of time deposit or demand
> accounts, titled, "American Home Mortgage Servicing, Inc., in
> trust for Morgan Stanley Mortgage Capital Inc. as Purchaser of
> Mortgage Loans and various Mortgagors."

     33.    Pursuant to Section 3.01 of the Interim Purchase Agreement, on the fifth

day of each month (or next business day), AHM Servicing

> shall cause all amounts deposited in the Custodial Account to be remitted
> as follows:  (i) to the Interim Servicer, amounts due to the Interim Servicer

pursuant to Section 2.05, and (ii) to the Purchaser, all funds remaining in the Custodial Account.

iii.    Morgan Stanley's Rights to the Servicing Files and the Custodial and Escrow Accounts Upon Termination of the Interim Servicing Agreement

34.    Under the Interim Servicing Agreement, AHM Servicing has the obligation, at its sole cost and expense, to effect a transfer of servicing upon Morgan Stanley's request. These obligations exist whether the transfer is as a result of Morgan Stanley's general right to transfer at will or a termination of the agreement. Section 7.02 of the Interim Servicing Agreement sets forth the procedures through which AHM Servicing must "effectuate and evidence the transfer of servicing of the related Mortgage Loans to the Purchaser, or its designee," including delivery of the Servicing Files (section 7.02(b)(iii)), transfer of escrow funds (section 7.02(b)(iv)), proper application of mortgage payments received prior to the transfer date (section 7.02(b)(vi)), prompt forwarding of mortgage payments received after the transfer date (section 7.02(b)(vii)), and correction of misapplied payments (section 7.02(b)(viii)). Section 7.02 also provides that "[t]he Interim Servicer shall cooperate fully with [Morgan Stanley] and such successor in effecting the termination of the Interim Servicer's responsibilities and rights hereunder."

35.    Several provisions of the Interim Servicing Agreement set forth defaults and remedies in connection with the servicing relationship between the parties. Section 7.01 of the Interim Servicing Agreement provides as follows:

> Should the Interim Servicer at any time during the term of this Agreement have its right to service temporarily or permanently suspended by Fannie Mae or Freddie Mac or otherwise cease to be an approved servicer of conventional residential mortgage loans for Fannie Mae or Freddie Mac, then the Purchaser may immediately terminate this Agreement and accelerate performance of the provisions of the Purchase Agreement to require immediate transfer of the Servicing Rights.

Section 12.01 of the Interim Servicing Agreement provides, in pertinent part, that:

> The following shall constitute an Event of Default under this Agreement on the part of the Interim Servicer:

> \*       \*       \*

> (f) the Interim Servicer ceases to meet the qualifications of a Fannie Mae or Freddie Mac servicer . . . .

36.    In addition to the rights of immediate termination accorded to Morgan Stanley in section 7.01, section 12.01 of the Interim Servicing Agreement provides that "[i]n each and every such case, so long as an Event of Default shall not have been remedied, in addition to whatsoever rights [Morgan Stanley] may have at law or equity to damages, including injunctive relief and specific performance, [Morgan Stanley], by notice in writing to the Interim Servicer, may terminate without compensation all the rights and obligations of the Interim Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof."

37.    In connection with a termination of the Interim Servicing Agreement as a result of an Event of Default, "[t]he Interim Servicer agrees to cooperate with [Morgan Stanley] and such successor in effecting the termination of the Interim Servicer's responsibilities and rights hereunder, including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Interim Servicer to the Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans."

**B.    The Purchase Agreement**

38.    Pursuant to the Purchase Agreement, from time to time Morgan Stanley purchased certain mortgage loans from AHM Corp on a servicing released basis.  At present, Morgan Stanley owns Mortgage Loans purchased from AHM Corp. under the Purchase

Agreement in an amount exceeding $519 million unpaid principal balance. Morgan Stanley has sold numerous other Mortgage Loans purchased from AHM Corp. in the secondary market.

39.     The Purchase Agreement expressly provides that, upon a purchase and sale, Morgan Stanley is the rightful owner of the Mortgage Loans (including all servicing rights related thereto), the Servicing Files, and the Mortgage Loan Documents, and that AHM Corp must deliver and surrender such Mortgage Loan Documents to the Custodian to be held in trust for the benefit of Morgan Stanley.

40.     In this regard, section 6.01 of the Purchase Agreement provides, in pertinent part:

> [AHM Corp., as Seller] shall ensure that the contents of each Servicing File, required to be retained by or delivered to [AHM Servicing, as Interim Servicer] to service the Mortgage Loans pursuant to the Interim Servicing Agreement and thus not delivered to [Morgan Stanley, as Purchaser], or its designee, are and shall be held in trust by the Interim Servicer for the benefit of the Purchaser as the owner thereof. The Seller agrees that the Interim Servicer's possession of any portion of each such Mortgage File is at the will of the Purchaser for the sole purpose of facilitating servicing of the Mortgage Loans pursuant to this Agreement, and such retention and possession by the Interim Servicer shall be in a custodial capacity only. The ownership of each Mortgage Note, each Mortgage and the contents of each Mortgage File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Interim Servicer shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Interim Servicer for so long as the Interim Servicer is servicing such Mortgage Loans.

41.     Section 17 of the Purchase Agreement provides that "[t]he sale and delivery . . . of the Mortgage Loans [which is defined to include the Mortgage Loan Documents] described on the related Mortgage Loan Schedule is mandatory . . . , it being specifically understood and agreed that each Mortgage Loan is unique and identifiable on the date hereof and that an award of money damages would be insufficient to compensate the Purchaser for the

losses and damages incurred by the Purchaser (including damages to prospective purchasers of the Mortgage Loans) in the event of the Seller's failure to deliver (i) each of the related Mortgage Loans . . . on or before the related Closing Date."

42.    Section 7 of the Purchase Agreement provides that "[t]he Seller shall cause the Interim Servicer to transfer the servicing of the Mortgage Loans on each Transfer Date in accordance with the terms of the Interim Servicing Agreement."

**C.    Termination of Servicing Under the Interim Servicing Agreement**

43.    Prior to the commencement of the Defendants' bankruptcy cases, on August 1, 2007, Morgan Stanley gave notice to AHM Servicing pursuant to the Interim Servicing Agreement that it had exercised its general right to transfer sub-servicing of the Mortgage Loans without cause.  Morgan Stanley notified AHM Servicing that it sought transfer of the servicing effective August 21, 2007.[4]  Repeated attempts by Morgan Stanley to make arrangements with AHM Servicing personnel in regards to the August 21, 2007 servicing transfer procedures were unsuccessful.

44.    However, subsequent to that notice but prior to the commencement of the Defendants' bankruptcy cases, AHM Servicing failed to comply with certain of its covenants under the Interim Servicing Agreement.

45.    On August 3, 2007, Morgan Stanley received written notice from Fannie Mae that "effective August 1, 2007, American Home Mortgage is not an approved servicer of Fannie Mae mortgages."

46.    Fannie Mae's termination of AHM Servicing as a qualified servicer of residential mortgage loans (i) triggered Morgan Stanley's rights under section 7.01 of the Interim

---

[4]    On August 2, 2007, Morgan Stanley sent a supplemental notice to AHM Servicing, correcting the address of the successor servicer designated by Morgan Stanley.

Servicing Agreement to terminate immediately the agreement and accelerate performance of the transfer procedures set forth in section 7.02 and (ii) constituted an Event of Default under section 12.01(f) of the Interim Servicing Agreement.

47.    On August 3, 2007, in accordance with sections 7.01, 12.01, and 13.01 of the Interim Servicing Agreement, Morgan Stanley sent the Defendants a letter (the "Termination Notice"), notifying AHM Servicing that Morgan Stanley "is invoking its rights under [sections 7.01 and 12.01] and terminating the Interim Servicing Agreement."

48.    The Termination Notice also notified Defendants of Morgan Stanley's exercise of its remedies under the Interim Servicing Agreement.  Specifically, the Termination Notice, among other things:

    (i)    directed that "servicing of the Mortgage Loans transfer **immediately** to Saxon";

    (ii)    demanded "**immediate** delivery of the Servicing Files, all amounts on deposit in all related Escrow Accounts and Custodial Accounts and control of such accounts and all electronic data related to the Mortgage Loans";

    (iii)    directed that "[i]n the event [AHM Servicing] receive any payments in respect of any Mortgage Loans hereafter or any payments with respect to any Mortgage Loans are misapplied, such payments should be handled in accordance with Section 7.02(b)(vii) and Section 7.02(b)(viii), respectively"; and

    (iv)    reminded AHM Servicing of its agreement in sections 7.02(a) and 12.01 of the Interim Servicing Agreement to cooperate fully with Morgan Stanley and Saxon Mortgage Services, Inc. in "connection with [the] termination and transfer of servicing rights."

49.    Since August 3, 2007, representatives of Morgan Stanley have repeatedly contacted AHM Servicing to make arrangements for a prompt and orderly transfer of the sub-servicing of the Mortgage Loans.

50.    The Defendants have (i) refused to deliver the Servicing Files, amounts on deposit in all related Custodial and Escrow Accounts and control of such accounts and all electronic data related to the Mortgage Loans, and (ii) refused to transfer the sub-servicing to Saxon, the successor servicer designated by Morgan Stanley.

## D.    AHM Corp.'s Breaches of the Purchase Agreement

51.    AHM Corp. has breached the Purchase Agreement by refusing to cooperate with Morgan Stanley, as required by Section 13 of the Purchase Agreement, in regards to a whole loan sale of certain Mortgage Loans to an investor.  Specifically, in spite of repeated requests, AHM Corp. has refused to deliver to Morgan Stanley's designated servicer, Saxon, the Servicing Files relating to the Mortgage Loans to be sold, and has failed to execute an Assignment Agreement that is required in order to effect the transfer of the Mortgage Loans. [5] As a result of AHM Corp.'s refusal to cooperate, a whole loan investor is now unwilling to purchase the Mortgage Loans at issue, potentially causing substantial damages to Morgan Stanley.

52.    In further breach of the Purchase Agreement, AHM Corp. has failed to provide documents that it is obligated to provide Morgan Stanley.  Morgan Stanley purchased certain Mortgage Loans from AHM Corp. on multiple dates between March 5, 2003 and July 26, 2007.  In connection with the purchase, AHM Corp. was required under the Purchase Agreement to deliver and release to the custodian on behalf of Morgan Stanley certain Mortgage Loan Documents.  In breach of its obligations under the Purchase Agreement, AHM Corp. has failed

---

[5]    It is important to note that, although the Debtors have asserted that they have been, and continue to be, able to operate their servicing business, the individuals that Morgan Stanley typically corresponds with in connection with these types of loan transactions, where the loans are sub-serviced by AHM Servicing, are no longer employed by the Debtors.

to deliver the Mortgage Loan Documents in a timely manner and in response to Morgan Stanley's requests.

 53. Moreover, as described above, AHM Servicing has failed to transfer the sub-servicing of the Mortgage Loans, the Servicing Files or the funds in the Custodial Account in response to Morgan Stanley's August 3, 2007 notice of transfer and termination. Section 7 of the Purchase Agreement provides that "[t]he Seller shall cause the Interim Servicer to transfer the servicing of the Mortgage Loans on each Transfer Date in accordance with the terms of the Interim Servicing Agreement." Accordingly, AHM Corp.'s failure to cause AHM Servicing to transfer the sub-servicing of the Mortgage Loans, the Servicing Files, or the funds in the Custodial Account in accordance with the Interim Servicing Agreement is a breach of the Purchase Agreement.

**E. Morgan Stanley Has and Will Suffer Irreparable Harm In the Absence of Relief**

 54. Fundamentally, the assets currently being held by the Defendants in contravention of the Interim Servicing Agreement and the Purchase Agreement are not property of the Defendants' bankruptcy estates. As the relevant documents make clear, the servicing rights, all related Servicing Files, all data related to the Mortgage Loans and the Custodial and Escrow Accounts and all amounts therein are owned by Morgan Stanley. As outlined below, the Defendants' continued wrongful withholding of this property creates irreparable harm to Morgan Stanley – harm acknowledged by the Defendants in the governing documents to give rise to remedies of specific performance. These harms are magnified by the Debtors' filing of the Emergency Motion of the Debtors For Order: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other

Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (the "Sale Motion"). Any suggestion – and the Sale Motion is entirely unclear on this point – that Morgan Stanley's assets could be part of the sale is not only violative of fundamental notions of property, it also creates market uncertainty that harms the value of Morgan Stanley's assets and its ongoing loan and servicing businesses.

55.     Specifically, without access to or possession of the Mortgage Loan Documents and Servicing Files, control of the Custodial and Escrow Accounts and all electronic data related to the Mortgage Loans, Morgan Stanley is unable to monitor and ensure that the Mortgage Loans are being administered properly and that the individual mortgagors have a reliable counterparty. Morgan Stanley needs the Mortgage Loan Documents and the Servicing Files in order for the successor servicer appointed by Morgan Stanley to service adequately and collect amounts due under the Mortgage Loans. The mortgagors will be harmed if there is no financially responsible party that can service the Mortgage Loans and maintain accurate up-to-date Mortgage Loan Documents and Servicing Files.[6] In turn, this will have an immediate and negative impact on Morgan Stanley's rights in the Mortgage Loans and the servicing thereof to the extent that the collectability and, therefore, the value of the Mortgage Loans will deteriorate. Moreover, section 7.02 of the Interim Servicing Agreement requires that notice be given to mortgagees, in accordance with federal law, upon a transfer of servicing duties. Without access

---

[6]     In addition, the mortgagors will be further harmed by the Defendants' failure to deliver the Mortgage Loan Documents and Servicing Files to Morgan Stanley because such failure creates the potential for untold hassles and confusion for the mortgagors. For example, the mortgagors may get conflicting notices and information from the Defendants and Morgan Stanley or its designee Saxon. This, in turn, may lead to confusion among the mortgagors about where to send payments and whom to contact for more information.

to the Servicing Files, Morgan Stanley will be unable to comply with federal notice requirements.

56.    Similarly, the funds in the Custodial and Escrow Accounts are not property of the Defendants' estates and therefore may not be used by the Defendants.  The Defendants' failure to remit to Morgan Stanley the funds owned by Morgan Stanley will cause immediate irreparable damage.  Under the Interim Servicing Agreement, AHM Servicing must deposit all collections in connection with the Mortgage Loans into the Custodial Escrow Accounts and must keep all such funds segregated.  Any retention of Morgan Stanley's funds by AHM Servicing or failure to segregate those funds will make it more and more difficult for Morgan Stanley to identify which funds in the Defendants' possession constitute the funds owned by Morgan Stanley.  This harm to Morgan Stanley is exacerbated by and rendered irreparable given the Defendants' current liquidity issues and inability to continue operations.  Moreover, the Defendants' (i) intentional failure to comply with Morgan Stanley's request that they transfer control of all of Morgan Stanley's funds to Morgan Stanley and (ii) lack of long-term funding sources create an imminent possibility the Morgan Stanley funds will fail to be segregated pursuant to the Interim Servicing Agreement, be improperly used or misappropriated by the Defendants.  These issues already have surfaced in these proceedings, as a transfer of approximately $9.6 million to Morgan Stanley, due on August 6, 2007, was not received until August 9, 2007.

57.    This issue is particularly serious given that the Defendants' accounts are subject to liens in favor of third party lenders, which liens have been confirmed in the Cash

Collateral Order and the DIP Order.[7]  Any failure to segregate and timely remit could result in

Morgan Stanley's funds being inadvertently and inappropriately subjected to third party liens.

      58.    Finally, due to the Defendants' conduct, Morgan Stanley is unable to close

on certain transactions relating to the Mortgage Loans.  For example, as explained above, a

whole loan investor is unwilling to purchase certain of the Mortgage Loans from Morgan Stanley

due to the Defendants' failure to comply with the provisions of the Interim Servicing Agreement

and Purchase Agreement.  In addition, Morgan Stanley has transactions pending with other

entities, which it is unable to close, because such entities do not want AHM Servicing to sub-

service their loans.  The inability to close these transactions creates even further immediate and

irreparable harm for Morgan Stanley.

      59.    By contrast, the Defendants have no legitimate claim or interest in the

servicing rights or the documentation currently being wrongfully withheld.  As discussed above,

Morgan Stanley has continuously retained ownership of these assets, contracting with AHM

Servicing only for limited, interim servicing rights.  Indeed, under the Interim Servicing

Agreement, AHM Servicing generally is only contracted to sub-service the Mortgage Loans for

less than 100 days from the date of purchase, so neither the Defendants nor any potential

purchaser in connection with the Sale Motion could have any expectation that these rights will

continue (and, therefore, no expectation that any value lies therein).

---

[7]    See, e.g., Interim Order Pursuant to Sections 105(a), 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014: (a) Approving Debtor-In-Possession Financing, (b) Granting Liens and Allowing Superpriority Administrative Claims, (c) Scheduling a Final Hearing, and (d) Granting Related Relief (the "DIP Order"), ¶ 8 ("the Administrative Agent, for the benefit of the Secured Parties, shall have and is hereby granted . . . a valid, binding, and enforceable perfected first priority security interest in and lien on all the property and assets of each of the Borrowers and their estates of every kind or type whatsoever . . .); Interim Order (i) Authorizing Debtors' Limited Use of Cash Collateral, (ii) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties, and (iii) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Cash Collateral Order"), ¶ 3 ("the Debtors hereby grant to the Administrative Agent for the ratable benefit of the Pre-Petition Secured Parties a security in and lien on the Pre-Petition Collateral and the proceeds, products, rents and profits thereof . . .).

60.    To the extent the Defendants' wrongful actions in preventing Morgan Stanley from properly servicing the Mortgage Loans cause the value of Morgan Stanley's loans to decrease, the Defendants will be liable to Morgan Stanley for damages.  Similarly, to the extent the Defendants refuse to cooperate with Morgan Stanley in respect of the Mortgage Loans to be sold to a whole loan investor, the Defendants will be potentially liable to Morgan Stanley for substantial damages.  Such claims by Morgan Stanley against the Defendants' estates would result in a lower recovery for the Defendants' other creditors.  Given that AHM Servicing receives only a sub-servicing fee of approximately $5 per loan per month,[8] the sub-servicing fees provided for under the Interim Servicing Agreement are insubstantial in relation to this potential liability.  Thus, there is no harm – indeed it is in the interests of the Defendants' estates – for the Defendants to transfer immediately the sub-servicing of Morgan Stanley's Mortgage Loans to Saxon, and to comply with the obligations to transfer related documents and funds.

---

[8]    It is important to note that this $5 servicing fee does not take into account the expenses that AHM Servicing must incur in order to service the Mortgage Loans.  Specifically, pursuant to the terms of the Interim Servicing Agreement, AHM Servicing is required to (1) advance certain funds that are necessary, inter alia, to bring a loan to foreclosure and to prevent tax liens; and (2) pay all expenses incurred in connection with servicing the Mortgage Loans.  See Interim Purchase Agreement, § 2.02, 2.11, 2.12.  Accordingly, the net income that AHM Servicing receives with respect to the Mortgage Loans could in fact be less than the approximately $5 per loan per month.  By way of comparison, it is generally considered market standard for a servicer who owns the servicing rights on an alt-a mortgage loan like the Mortgage Loans to receive a servicing fee of between 0.25% and 0.375% per annum on the principal balance of the mortgage loan as its compensation.

**FIRST CAUSE OF ACTION:**
**(Declaratory Judgment that Defendants are Obligated to Provide Access**
**to and Deliver Possession of the Servicing Files, Amounts on Deposit in Custodial and**
**Escrow Accounts and the Mortgage Loan Documents to Morgan Stanley)**

61.    Morgan Stanley repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

62.    Section 8.01 of the Interim Servicing Agreement provides that the Servicing Files are held by AHM Servicing in trust for Morgan Stanley and that, upon notice, Morgan Stanley shall have a right to access the Servicing Files.

63.    Sections 2.04 and 2.06 of the Interim Servicing Agreement provide that all funds collected and received pursuant to the Mortgage Loans are the property of Morgan Stanley, and that AHM Servicing is required to establish and maintain the Custodial and Escrow Accounts for the benefit of Morgan Stanley, in which Custodial and Escrow Accounts all such funds must be deposited.

64.    Pursuant to sections 7.01, 12.01, and 13.01 of the Interim Servicing Agreement, Morgan Stanley sent AHM Servicing a notice of termination demanding immediate transfer to Morgan Stanley of all Servicing Files and amounts on deposit in Custodial and Escrow Accounts.

65.    Section 7 of the Purchase Agreement provides that "[t]he Seller shall cause the Interim Servicer to transfer the servicing of the Mortgage Loans on each Transfer Date in accordance with the terms of the Interim Servicing Agreement."

66.    The Defendants have refused to comply with Morgan Stanley's demand under the Interim Servicing Agreement in breach of that agreement and the Purchase Agreement.

67.    Section 6.01 of the Purchase Agreement expressly provides that, upon a purchase and sale, Morgan Stanley is the rightful owner of the Mortgage Loans (including all

23

servicing rights related thereto), the Servicing Files, and the Mortgage Loan Documents, and that AHM Corp must deliver and surrender such Mortgage Loan Documents to the Custodian to be held in trust for the benefit of Morgan Stanley.

68.    In breach of its obligations under the Purchase Agreement, AHM Corp. has failed to deliver certain Mortgage Loan Documents in a timely manner and in response to Morgan Stanley's requests.

69.    Because the Defendants have refused to comply with the express provisions of the Agreements by failing to provide Morgan Stanley the Servicing Files, the funds in the Custodial and Escrow Accounts, and the Mortgage Loan Documents, there exists an actual, justiciable controversy between Defendants and Morgan Stanley relating to Defendants' obligations under the Agreements, including whether Morgan Stanley is entitled to immediate access to and possession of the Servicing Files, amounts on deposit in the Custodial and Escrow Accounts, and the Mortgage Loan Documents.

70.    Pursuant to 28 U.S.C. § 2201, this Court should declare the rights and other legal relations of Morgan Stanley and the Defendants concerning the foregoing and grant such other and further relief as may be necessary to enforce these rights and obligations.

71.    Therefore, Morgan Stanley requests a declaration from the Court that the Mortgage Loan Documents, the Servicing Files, and the funds in the Custodial and Escrow Accounts are property of Morgan Stanley, in possession of Defendants' pursuant to an express trust for the benefit of Morgan Stanley, and that Morgan Stanley is entitled to immediate access to and possession of the Mortgage Loan Documents, the Servicing Files, and the funds in the Custodial and Escrow Accounts.

## SECOND CAUSE OF ACTION:
### (Declaratory Judgment that Defendants are Obligated to Transfer the Servicing of the Mortgage Loans to Saxon Mortgage Services, Inc.)

72.     Morgan Stanley repeats and realleges paragraphs 1 through 71 as if fully set forth herein.

73.     Sections 12.01 and 7.01 of the Interim Servicing Agreement provide that upon the occurrence of an Event of Default, or of termination, respectively, Morgan Stanley has the right to terminate the Interim Servicer and Defendants are required to cooperate in transferring the sub-servicing of the Mortgage Loans to a successor servicer appointed by Morgan Stanley.

74.     Section 7 of the Purchase Agreement provides that "[t]he Seller shall cause the Interim Servicer to transfer the servicing of the Mortgage Loans on each Transfer Date in accordance with the terms of the Interim Servicing Agreement."

75.     Pursuant to the notice delivered on August 3, 2007, Morgan Stanley validly effected an immediate transfer of the sub-servicing of the Mortgage Loans and instructed AHM Servicing to immediately commence transferring the sub-servicing to Saxon in accordance with applicable law and to cooperate with all instructions from Saxon and Morgan Stanley regarding the transfer of sub-servicing.  AHM Servicing has refused to comply with Morgan Stanley's instructions and AHM Corp. has failed to cause AHM Servicing to comply.

76.     Because the Defendants refuse to comply with Morgan Stanley's instructions, there exists an actual, justiciable controversy between Defendants and Morgan Stanley relating to Defendants' obligations under the Interim Servicing Agreement and the Purchase Agreement, as applicable, including whether AHM Servicing is obligated to follow Morgan Stanley's instructions with respect to transferring the sub-servicing to Saxon.

25

77.    Pursuant to 28 U.S.C. § 2201, this Court should declare the rights and other legal relations of Morgan Stanley and the Defendants concerning the foregoing and grant such other and further relief as may be necessary to enforce these rights and obligations.

78.    Therefore, Morgan Stanley requests a declaration from the Court that Morgan Stanley is entitled to the immediate transfer of the sub-servicing to Saxon, and Defendants are obligated to cooperate with all instructions from Saxon and that Morgan Stanley regarding the transfer of sub-servicing, including by transferring to Saxon and Morgan Stanley all files necessary for Morgan Stanley to transfer sub-servicing of, gain possession and control over, and manage Mortgage Loans it has purchased from AHM Corp.

## THIRD CAUSE OF ACTION:
### (Declaratory Judgment that AHM Servicing is Obligated to Segregate Collections from the Mortgage Loans and to Transfer such Collections to Morgan Stanley)

79.    Morgan Stanley repeats and realleges paragraphs 1 through 78 as if fully set forth herein.

80.    The Interim Servicing Agreement provides that all funds collected and received pursuant to the Mortgage Loans are the property of Morgan Stanley, and that AHM Servicing is required to establish and maintain the Custodial and Escrow Accounts as segregated accounts for the benefit of Morgan Stanley, in which accounts all such funds must be deposited.

81.    In this regard, section 2.04 of the Interim Servicing Agreement provides:

The Interim Servicer shall segregate and hold all funds collected and received pursuant to the Mortgage Loans separate and apart from any of its own funds and general assets and shall establish one or more Custodial Accounts, in the form of time deposit or demand accounts, to be maintained under the sole dominion and control of the Purchaser and titled "American Home Mortgage Servicing, Inc., in trust for Morgan Stanley Mortgage Capital Inc. as Purchaser of Mortgage Loans and various Mortgagors."

26

82.     Section 2.06 of the Interim Servicing Agreement similarly requires AHM Servicing to establish and maintain a segregated account for escrow payments collected and received pursuant to the Mortgage Loans:

> The Interim Servicer shall segregate and hold all funds collected and received pursuant to a Mortgage Loan constituting Escrow Payments separate and apart from any of its own funds and general assets and shall establish and maintain one or more Escrow Accounts, in the form of time deposit or demand accounts, titled, "American Home Mortgage Servicing, Inc., in trust for Morgan Stanley Mortgage Capital Inc. as Purchaser of Mortgage Loans and various Mortgagors."

83.     There exists an actual, justiciable controversy between AHM Servicing and Morgan Stanley relating to AHM Servicing's obligations under the Interim Servicing Agreement, including its obligations with respect to funds in the Custodial and Escrow Accounts and other collections from Mortgage Loans.

84.     Pursuant to 28 U.S.C. § 2201, this Court should declare the rights and other legal relations of Morgan Stanley and AHM Servicing concerning the foregoing and grant such other and further relief as may be necessary to enforce these rights and obligations.

85.     Therefore, Morgan Stanley requests a declaration that AHM Servicing is obligated to segregate any collections received from Mortgage Loans and to transfer any collections received from Mortgage Loans to Morgan Stanley.

## FOURTH CAUSE OF ACTION:
### (Breach of the Interim Servicing Agreement)

86.     Morgan Stanley repeats and realleges paragraphs 1 through 85 as if fully set forth herein.

87.     The Interim Servicing Agreement constitutes a valid, binding contract between Morgan Stanley and AHM Servicing.

27

88.    Effective August 1, 2007, Fannie Mae terminated AHM Servicing as a qualified servicer of residential mortgage loans.

89.    Section 12.01 of the Interim Servicing Agreement provides, in pertinent part, that:

> The following shall constitute an Event of Default under this Agreement on the part of the Interim Servicer:
>
> \*    \*    \*
>
> (f) the Interim Servicer ceases to meet the qualifications of a Fannie Mae or Freddie Mac servicer . . . .

90.    Section 7.01 of the Interim Servicing Agreement provides as follows:

> Should the Interim Servicer at any time during the term of this Agreement have its right to service temporarily or permanently suspended by Fannie Mae or Freddie Mac or otherwise cease to be an approved servicer of conventional residential mortgage loans for Fannie Mae or Freddie Mac, then the Purchaser may immediately terminate this Agreement and accelerate performance of the provisions of the Purchase Agreement to require immediate transfer of the Servicing Rights.

91.    In addition to the rights of immediate termination accorded to Morgan Stanley in section 7.01, section 12.01 of the Interim Servicing Agreement provides that "[i]n each and every such case, so long as an Event of Default shall not have been remedied, in addition to whatsoever rights [Morgan Stanley] may have at law or equity to damages, including injunctive relief and specific performance, [Morgan Stanley], by notice in writing to the Interim Servicer, may terminate without compensation all the rights and obligations of the Interim Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof."

92.    In connection with a termination of the Interim Servicing Agreement as a result of an Event of Default, "[t]he Interim Servicer agrees to cooperate with [Morgan Stanley] and such successor in effecting the termination of the Interim Servicer's responsibilities and

28

rights hereunder, including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Interim Servicer to the Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans."

93.     Pursuant to section 12.01 of the Interim Servicing Agreement, Fannie Mae's termination of AHM Servicing as a qualified servicer constituted an Event of Default under the Interim Servicing Agreement and a breach of the Interim Servicing Agreement.

94.     By letter dated August 3, 2007, Morgan Stanley notified AHM Servicing that it was exercising its rights under sections 7.01 and 12.01 of the Interim Servicing Agreement to terminate immediately the Interim Servicing Agreement and all of AHM Servicing's rights thereunder, and to accelerate the transfer of the Servicing Files and the funds in the Custodial and Escrow Accounts.

95.     AHM Servicing's refusal to grant Morgan Stanley access to or transmit the Servicing Files and funds in the Custodial and Escrow Accounts, transfer the sub-servicing to Saxon, segregate collections received from Mortgage Loans, and remit such collections to Morgan Stanley, all as required by the Interim Servicing Agreement and described above, constitute breaches of that agreement.

96.     Morgan Stanley is entitled to (i) immediate access to and possession of the Servicing Files and all other files necessary for Morgan Stanley to transfer sub-servicing of, gain possession and control over, and manage Mortgage Loans it has purchased from the Defendants; (ii) the immediate transfer of the sub-servicing of the Mortgage Loans to Saxon; and (iii) the transfer of all funds in the Custodial and Escrow Accounts to Morgan Stanley. Morgan Stanley has no adequate remedy at law and, as expressly preserved in 12.01 of the Interim Servicing

Agreement, is entitled to specific performance of the Defendant's obligations under the Interim Servicing Agreement.

97.    Accordingly, Morgan Stanley requests a decree directing AHM Servicing immediately to (i) transmit the Servicing Files and funds in the Custodial and Escrow Accounts to Morgan Stanley, (ii) transfer the sub-servicing of the Mortgage Loans to Saxon, and (iii) segregate collections received from Mortgage Loans and remit such collections to Morgan Stanley.

**FIFTH CAUSE OF ACTION:**
**(Breach of the Purchase Agreement)**

98.    Morgan Stanley repeats and realleges paragraphs 1 through 97 as if fully set forth herein.

99.    Section 6.01 of the Purchase Agreement expressly provides that, upon a purchase and sale, Morgan Stanley is the rightful owner of the Mortgage Loans (including all servicing rights related thereto), the Servicing Files, and the Mortgage Loan Documents, and that AHM Corp must deliver and surrender such Mortgage Loan Documents to the Custodian to be held in trust for the benefit of Morgan Stanley.

100.    In breach of its obligations under the Purchase Agreement, AHM Corp. has failed to deliver certain Mortgage Loan Documents in a timely manner and in response to Morgan Stanley's requests.

101.    Section 7 of the Purchase Agreement provides that "[t]he Seller shall cause the Interim Servicer to transfer the servicing of the Mortgage Loans on each Transfer Date in accordance with the terms of the Interim Servicing Agreement."

102.    As set forth herein, AHM Corp. has failed to cause AHM Servicing to transfer the sub-servicing of the Mortgage Loans on each Transfer Date in accordance with the

terms of the Interim Servicing Agreement, including by failing to transfer the Servicing Files, the funds in the Custodial and Escrow Accounts, and the sub-servicing of the Mortgage Loans.

103.    Morgan Stanley is entitled to (i) immediate access to and possession of the Mortgage Loan Documents, the Servicing Files, and all other files necessary for Morgan Stanley to transfer sub-servicing of, gain possession and control over, and manage Mortgage Loans it has purchased from the Defendants; (ii) the immediate transfer of the sub-servicing of the Mortgage Loans to Saxon; and (iii) the transfer of all funds in the Custodial and Escrow Accounts.  Morgan Stanley has no adequate remedy at law and is entitled to specific performance of the Defendant's obligations under the Interim Servicing Agreement.

104.    Section 13 of the Purchase Agreement provides, inter alia, that AHM Corp. is required "to cooperate fully with [Morgan Stanley] and any prospective purchaser with respect to all reasonable requests and due diligence procedures."

105.    As set forth herein, AHM Corp. has refused to cooperate with Morgan Stanley with respect to a whole loan sale of certain Mortgage Loans to an investor.  Specifically, in spite of repeated requests, AHM Corp. has refused to deliver to Morgan Stanley's designated servicer, Saxon, the Servicing Files relating to the Mortgage Loans to be sold, and has failed to execute an Assignment Agreement that is required in order to effect the transfer of the Mortgage Loans.

106.    Accordingly, Morgan Stanley requests a decree directing AHM Corp. immediately to (i) transmit the Mortgage Loan Documents to Morgan Stanley; (ii) cause AHM Servicing to (a) transfer the Servicing Files and funds in the Custodial and Escrow Accounts to Morgan Stanley, (b) transfer the sub-servicing of the Mortgage Loans to Saxon, and (c) segregate collections received from Mortgage Loans and remit such collections to Morgan Stanley; and

(iii) cooperate fully with Morgan Stanley with respect to the whole loan sale of certain Mortgage Loans to an investor by (a) delivering to Saxon the Servicing Files relating to the Mortgage Loans to be sold to the whole loan investor, and (b) executing an Assignment Agreement with respect to the Mortgage Loans to be sold to the whole loan investor.

### SIXTH CAUSE OF ACTION:
**(Conversion of the Servicing Files, the Funds in the Custodial and Escrow Accounts and the Mortgage Loan Documents)**

107.    Morgan Stanley repeats and realleges paragraphs 1 through 106 as if fully set forth herein.

108.    Pursuant to section 8.01 of the Interim Servicing Agreement, AHM Servicing holds the Servicing Files with respect to the Mortgage Loans "in trust" for Morgan Stanley.

109.    Pursuant to sections 2.04 and 2.06 of the Interim Servicing Agreement, AHM Servicing maintains and establishes the Custodial and Escrow Accounts "in trust" for Morgan Stanley.

110.    Pursuant to section 6.01 of the Purchase Agreement, upon purchase of Mortgage Loans by Morgan Stanley, the Mortgage Loan Documents associated with those purchased Mortgage Loans are the property of Morgan Stanley.

111.    By refusing to transfer the Servicing Files, the funds in the Custodial and Escrow Accounts, and the Mortgage Loan Documents, the Defendants have exercised and assumed an unauthorized right of ownership and control over the Servicing Files, the funds in the Custodial and Escrow Accounts, and the Mortgage Loan Documents.

112.    Morgan Stanley is entitled to a decree, and a preliminary injunction, directing the Defendants to turn over the Servicing Files, the funds in the Custodial and Escrow

Accounts, and the Mortgage Loan Documents to Saxon, and providing such other relief as is

necessary to allow Morgan Stanley possession and control of the Servicing Files, the funds in the

Custodial and Escrow Accounts, and the Mortgage Loan Documents.

## SEVENTH CAUSE OF ACTION:
### (Accounting)

113.    Morgan Stanley repeats and realleges paragraphs 1 through 112 as if fully

set forth herein.

114.    Pursuant to sections 2.04 and 2.06 of the Interim Servicing Agreement, the

funds in the Custodial and Escrow Accounts are the property of Morgan Stanley, and AHM

Servicing is prohibited from commingling such funds with other funds and is required to remit

such funds to Morgan Stanley.

115.    Pursuant to the Agreements, there exists a special, confidential and/or

fiduciary relationship between Morgan Stanley and each Defendant with respect to, among other

things, Defendants' possession or control of Servicing Files, the funds collected with respect to

the Mortgage Loans, and Mortgage Loan Documents relating to the Mortgage Loans, as well as

the sub-servicing of the Mortgage Loans.

116.    Due to Defendants' conduct and the facts stated above, Morgan Stanley is

entitled to an accounting with respect to the Mortgage Loans.

## EIGHTH CAUSE OF ACTION:
### (Constructive Trust)

117.    Morgan Stanley repeats and realleges paragraphs 1 through 116 as if fully

set forth herein.

118.    Pursuant to the Agreements, there exists a special, confidential and/or

fiduciary relationship between Morgan Stanley and each Defendant with respect to, among other

things, Defendants' possession or control of Servicing Files, the funds collected with respect to the Mortgage Loans and Mortgage Loan Documents relating to the Mortgage Loans.

119.    By retaining possession or control of the Servicing Files, the funds collected with respect to the Mortgage Loans and the Mortgage Loan Documents relating to the Mortgage Loans, the Defendants have been unjustly enriched.

120.    Accordingly, Morgan Stanley is entitled to the implementation of a constructive trust over such documents and funds.

**[Remainder of Page Left Intentionally Blank]**

## **PRAYER FOR RELIEF**

WHEREFORE, Morgan Stanley respectfully requests:

1.      A Declaratory Judgment of the Court decreeing that the Servicing Files, the funds in the Custodial and Escrow Accounts, and the Mortgage Loan Documents are property of Morgan Stanley, in possession of Defendants' pursuant to an express trust for the benefit of Morgan Stanley, and that Morgan Stanley is entitled to immediate access to and possession of the Mortgage Loan Documents, the Servicing Files, and the funds in the Custodial and Escrow Accounts;

2.      A Declaratory Judgment of the Court decreeing that Morgan Stanley is entitled to the immediate transfer of the sub-servicing to Saxon, and that Defendants are obligated to cooperate with all instructions from Saxon and Morgan Stanley regarding the transfer of sub-servicing, including by transferring to Saxon and Morgan Stanley all files necessary for Morgan Stanley to transfer sub-servicing of, gain possession and control over, and manage Mortgage Loans its has purchased from AHM Corp.;

3.      A Declaratory Judgment of the Court decreeing that AHM Servicing is obligated to segregate any collections received from Mortgage Loans and to transfer any collections received from Mortgage Loans to Morgan Stanley;

4.      A Declaratory Judgment of the Court decreeing that AHM Corp. is required to (a) deliver to Saxon the Servicing Files relating to the Mortgage Loans to be sold to a whole loan investor; and (b) execute an Assignment Agreement with respect to the Mortgage Loans to be sold to a whole loan investor.

5.      Preliminary injunctive relief ordering and directing the Defendants, including any of their officers, managers, members, employees, agents, or representatives, to (a) transmit

the Servicing Files, funds in the Custodial and Escrow Accounts, and the Mortgage Loan

Documents to Morgan Stanley, (b) transfer the sub-servicing of the Mortgage Loans to Saxon,

(c) segregate collections received from Mortgage Loans and remit such collections to Morgan

Stanley, and (d) (i) deliver to Saxon the Servicing Files relating to the Mortgage Loans to be sold

to a whole loan investor, and (ii) execute an Assignment Agreement with respect to the Mortgage

Loans to be sold to a whole loan investor, and providing such other relief as is necessary to allow

Morgan Stanley possession and control of the Servicing Files, the funds in the Custodial and

Escrow Accounts, the Mortgage Loan Documents, and the servicing of the Mortgage Loans;

   6.  Preliminary injunctive relief ordering and directing the Defendants, including

any of their officers, managers, members, employees, agents, or representatives, to provide

Morgan Stanley with an accounting of all funds relating to the Mortgage Loans;

   7.  A judgment in favor of Morgan Stanley on all counts of this Complaint;

   8.  A judgment imposing a constructive trust over all funds in the Custodial and

Escrow Accounts and all income generated by the Mortgage Loans and retained by the

Defendants; and

   9.  Such other and further relief as this Court deems just and proper.[9]

---

[9]  Morgan Stanley fully reserves any and all rights to file a proof of claim in the Defendants' bankruptcy cases relating to, or otherwise pursue any damages or other remedies relating to, the Interim Servicing Agreement, the Purchase Agreement, and/or the Defendants' conduct with respect thereto prior to and subsequent to the filing of this Complaint, including damages, punitive damages, attorneys' fees, collection costs, and any other remedies.

Dated: Wilmington, Delaware
    August 15, 2007

Respectfully submitted,

ASHBY & GEDDES

_____

William P. Bowden (I.D. #2553)
Don A. Beskrone (I.D. #4380)
Gregory A. Taylor (I.D. #4008)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067

and

SIDLEY AUSTIN LLP
Lee S. Attanasio
Isaac S. Greaney
Teresa H. Chan
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

*Counsel to Morgan Stanley Mortgage Capital
Holdings, LLC*

183252.1