IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x  Chapter 11
In re:                                                        :
                                                              :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                        :
HOLDINGS, INC., a Delaware corporation, et al.,[1]            :  Jointly Administered
                                                              :
                    Debtors.                                  :  Objection Deadline: August 27, 2007 at 4:00 p.m.
                                                              :  Hearing Date: September 4, 2007 at 11:00 a.m.
------------------------------------------------------------- x

# MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 327, 328 AND 330 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT OF PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF THE DEBTORS' BUSINESS *NUNC PRO TUNC* TO PETITION DATE

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), respectfully represent as follows:

## SUMMARY OF RELIEF REQUESTED[2]

1.  By this motion (the "Motion"), the Debtors request that this Court enter an order pursuant to sections 105(a), 327, 328 and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the employment and retention of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] Capitalized terms in this Summary shall have the meanings ascribed to them below in this Motion.

professionals utilized in the ordinary course of the Debtors' business effective, *nunc pro tunc* to the Petition Date (as defined below).

2. Prior to the Petition Date, the Debtors utilized Ordinary Course Professionals to provide services required on a day-to-day basis to manage the Debtors' affairs. The Debtors submit that, in light of the costs associated with the preparation of employment applications for professionals who will receive relatively small fees, it is impractical and inefficient from a cost perspective for the Debtors to submit individual applications and proposed retention orders for each of the Ordinary Course Professionals. Accordingly, the Debtors request that this Court dispense with the requirement of individual employment applications and retention orders with respect to each Ordinary Course Professional.

## JURISDICTION

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 327(e), 328, and 330 of the Bankruptcy Code.

## BACKGROUND

4. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7. An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007. No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[3]

8. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

9. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

10. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control

---

[3] A detailed description of the Debtors' businesses and related business information is set forth in the Declaration of Michael Strauss in Support of the Debtors Chapter 11 Petitions and First Day Relief, which is incorporated by reference as if fully set forth herein [Docket No. 2].

over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

11. Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

12. The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

13. In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

14. On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock

and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

15. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors, as of the Petition Date, employed approximately 1000 absolutely essential employees to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

16. In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

17. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELEVANT BACKGROUND

18. The Debtors are involved in pending litigation matters throughout the country as well as hundreds of foreclosure-related proceedings primarily related to Debtors' residential mortgage loan servicing business. In the day-to-day performance of their business

operations, the Debtors regularly call upon certain professionals, including, but not limited to, attorneys, accountants, and real estate brokers.

### **RELIEF REQUESTED**

19. The Debtors seek entry of an order: (a) pursuant to Bankruptcy Code sections 327(e) and 105(a) and Bankruptcy Rule 2014, authorizing, but not directing, the Debtors to retain professionals that the Debtors utilize in the ordinary course of their business, including, but not limited to, those listed in Exhibit A, Exhibit B, and Exhibit C hereto (collectively, the "Ordinary Course Professionals") effective, *nunc pro tunc* to the Petition Date, without the submission of separate retention applications and the issuance of separate orders approving the retention of each individual professional; and (b) pursuant to Bankruptcy Code sections 328, 330 and 105(a), authorizing, but not directing, the Debtors to pay each Ordinary Course Professional, without application to the Court by such professional, 100% of postpetition fees and expenses of the professionals listed on Exhibit A, Exhibit B, and Exhibit C, subject to the limitations contained in the next three paragraphs.[4]

20. For professionals listed on Exhibit A, the Debtors propose that each firm of professionals be limited to monthly fees and expenses of $35,000. For professionals listed on Exhibit B, the Debtors propose that each firm of professionals be limited to monthly fees and expenses of $75,000.

21. For the real estate brokers listed on Exhibit C, the Debtors propose that such broker fees will not exceed 6% of the selling price of real estate transactions for all real estate transactions having selling prices of up to $3,000,000. Upon information and belief, the Debtors understand that such real estate broker fees average between 4 ½% and 6% of the selling

---

[4] Such payments would be made following submission to and approval by the Debtors of appropriate invoices by each Ordinary Course Professional setting forth in reasonable detail the nature of the services rendered and disbursements actually incurred.

price in a real estate transaction. The Debtors also propose that real estate brokers be paid 100% of the expenses incurred in connection with marketing a property, which are ordinarily less than $30,000, though in some instances such expenses are higher than $30,000. The Debtors will continue to pay the real estate brokers in a manner consistent with their prepetition practice and their business judgment. For any real estate transaction with a sale price of over $3,000,000, the Debtors will either seek bankruptcy court approval for any such transactions or additional procedures governing such transactions.

22. If postpetition compensation and reimbursement of postpetition expenses for any Ordinary Course Professional (i) identified on Exhibit A exceeds $35,000 in any given month; (ii) identified on Exhibit B exceeds $75,000 in any given month; or (iii) identified on Exhibit C exceeds 6% of the selling price (not to exceed $3,500,000) of any real estate transaction, the Debtors request the authority to pay such Ordinary Course Professional the amount in excess of the respective monthly cap only after (a) the filing of an interim and/or final fee application in connection therewith, in accordance with the Court's Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Pursuant to Sections 331 and 105(a) of the Bankruptcy Code, if entered, and (b) entry of an order of the Court approving such fee application to the extent so approved.

23. The Debtors anticipate that they may need the services of additional Ordinary Course Professionals and, therefore, reserve the right to retain additional Ordinary Course Professionals as the need arises. In the event this occurs, the Debtors propose to file a supplemental list of Ordinary Course Professionals with this Court and to serve it, by first class mail, on: (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 and Blank

Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801, counsel to the Committee (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iv) counsel to the Debtors' postpetition lender; (v) the Securities and Exchange Commission, and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b) (collectively, the "<u>Notice Parties</u>"). The Debtors further propose that if no objection to a supplemental list of Ordinary Course Professionals is filed within fifteen (15) days of the date of service thereof, then all professionals listed on such supplemental list would be deemed to be Ordinary Course Professionals within the purview of this Court's order without the necessity of a hearing or further notice.

24. The Debtors will continue the practice of retaining professionals to be utilized by the Debtors (other than the Ordinary Course Professionals) in connection with the prosecution of their chapter 11 cases pursuant to separate retention applications filed with the Court. Such other professionals, if retained by order of the Court, shall be compensated in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any order of this Court in respect of compensation.

25. To the best of the Debtors' knowledge, none of the Ordinary Course Professionals represents or holds any interest materially adverse to the Debtors or to their estates with respect to the matter in which such Ordinary Course Professional is to be employed. Thus, each Ordinary Course Professional is eligible to be retained pursuant to the special counsel retention provision set forth in section 327(e) of the Bankruptcy Code.

26. However, to ensure that each Ordinary Course Professional does not represent or hold any interest materially adverse to the Debtors or to their estates with respect to the matters on which such Ordinary Course Professional is to be employed, the Debtors propose

that each Ordinary Course Professional be required to file with the Court an affidavit of disinterestedness substantially in the form annexed hereto as <u>Exhibit D</u>, and to serve copies thereof on the Debtors, the U.S. Trustee, counsel for the Committee, counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004, the Debtors' postpetition lender, the Securities and Exchange Commission, and all parties entitled to notice under Del. Bankr. LR 2002-1(b), prior to or contemporaneous with the submission to the Debtors of invoices accompanying a request for compensation. The Debtors will not make any payment to any Ordinary Course Professional who has failed to file an affidavit of disinterestedness.

## BASIS FOR RELIEF REQUESTED

27. Bankruptcy Code section 327(e) provides, in relevant part, as follows:

> The trustee, with the court's approval, may employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

28. Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).

29. Bankruptcy Code section 330 provides, in relevant part, as follows:

> After notice to the parties in interest and the United States Trustee and a hearing . . . the court may

> award to a . . . professional person employed under
> section 327 . . . reasonable compensation for actual,
> necessary services rendered . . . and . . .
> reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

30. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

31. Retention of the Ordinary Course Professionals is essential and should be authorized to avoid any disruption to the Debtors' day-to-day business operations and most importantly, the Debtors' loan servicing operations. The Debtors require legal advice and assistance on a host of matters such as for foreclosure and defaults, employment matters, and the affirmative prosecution or defense of claims related to the Debtors' businesses. Based on the number and geographical dispersion of the Ordinary Course Professionals, requiring the Debtors to seek individual authorization to employ each Ordinary Course Professional would place an undue administrative burden on the Debtors and increase substantially the expenses of the estates.

32. Further, the requested relief will allow the Debtors to avoid additional fees that would be incurred by the Ordinary Course Professionals in connection with preparing and prosecuting numerous interim fee applications. Likewise, the procedure set forth above will relieve the Court, the U.S. Trustee, and other interested parties of the burden of reviewing a multitude of fee applications involving relatively small amounts of fees and expenses.

33. Retention and payment plans similar to that proposed herein have been approved by this Court in numerous other chapter 11 cases. See, e.g., In re New Century TRS Holdings, Inc., Ch. 11 Case No. 07-10416 (KJC) (Bankr. D. Del. May 7, 2007) (authorizing

monthly caps of between $35,000 to $75,000); <u>In re Sea Containers LTD.</u>, Ch. 11 Case 06-11156 (KJC) (Bankr. D. Del. Dec. 29, 2006) (authorizing monthly caps up to $35,000 (excluding expenses)); <u>In re Premium Papers Holdco, LLC</u>, Ch. 11 Case No. 06-10269 (CSS) (Bankr. D. Del. March 21, 2006); <u>In re 14605 Incorporated (f/k/a Pharmaceutical Formulations, Inc.</u>, Ch. 11 Case No. 05-11910 (MFW) (Bankr. D. Del. July 11, 2005); <u>In re Meridian Automotive Sys. Composites Operations, Inc., et al.</u>, Ch. 11 Case No. 05-11168 (MFW) (Bankr. D. Del. April 17, 2005). The Debtors submit that similar authorization is appropriate in this case.

## **NOTICE**

34. Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801, counsel to the Committee (iii) the parties listed on <u>Exhibit A</u>, <u>Exhibit B</u>, and <u>Exhibit C</u>; (iv) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (v) the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; (vi) and all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto as <u>Exhibit E</u>, granting the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
August 16, 2007

                          YOUNG CONAWAY STARGATT & TAYLOR, LLP

                          */s/ Travis Turner (No. 4926)*
                          James L. Patton, Jr. (No. 2202)
                          Joel A. Waite (No. 2925)
                          Pauline K. Morgan (No. 3650)
                          Sean M. Beach (No. 4070)
                          Matthew B. Lunn (No. 4119)
                          Kara Hammond Coyle (No. 4410)
                          Kenneth J. Enos (No. 4544)
                          The Brandywine Building
                          1000 West Street, 17th Floor
                          Wilmington, Delaware 19801
                          Telephone: (302) 571-6600
                          Facsimile: (302) 571-1253

                          Proposed Counsel for Debtors and
                          Debtors in Possession