UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------  x
In re:                                                        :   Chapter 11
                                                              :
AMERICAN HOME MORTGAGE                                         :   Case No.  07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,               :
                                                              :   Jointly Administered
                                                              :
                              Debtors.                        :
------------------------------------------------------------  x
```

**Proposed Hearing Date:  August 20, 2007 at 1:00 p.m.**
**Proposed Objection Deadline:  At the Hearing**

## EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO AND PERFORM UNDER AUCTION PROCEDURES AGREEMENT; (II) APPROVING SALE PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN ASSETS OF NON-DEBTORS BROADHOLLOW FUNDING, LLC AND MELVILLE FUNDING, LLC; (III) APPROVING THE FORM OF NOTICE OF AUCTION; AND (IV) APPROVING THE SALE TO THE SUCCESSFUL BIDDER

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors

in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"),[1] hereby submit

this emergency motion (the "Motion"), pursuant to sections 105(a) and 363 of title 11 of the United

States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), for entry of an order substantially

in the form attached hereto as **Exhibit A** (the "Sale Procedures Order"), (i) authorizing the Debtors

to enter into and perform under that certain Agreement, dated August 16, 2007 (the "Auction

Procedures Agreement"), by and between Broadhollow Funding, LLC, ("Broadhollow"), a non-

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp.  ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc.  ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc.  ("AHM Servicing" or the "Servicer"), a Maryland corporation (7267); American Home Mortgage Corp.  ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).   The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Debtor affiliate of the Debtors, Melville Funding, LLC ("Melville" and together with Broadhollow, the "Sellers"), a non-Debtor affiliate of the Debtors, AHM Corp., AHM Investment, AHM Servicing and the swap providers listed on Schedules IA and IB thereto (collectively, the "Swap Providers"); (ii) approving procedures (the "Sale Procedures") with respect to the proposed sale (the "Sale") of certain mortgage loans (each, a "Mortgage Loan") owned by Broadhollow and Melville; (iii) approving the form and manner of notice (the "Notice of Auction") of an auction for the relevant assets (the "Auction"); (iv) approving the Sale to the Successful Bidder; and (v) granting such other related relief as the Court deems just and proper. In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## STATUS OF CASE AND JURISDICTION

1.     On August 6, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors' chapter 11 cases are being jointly administered.

2.     The Debtors have continued in possession of their respective properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     On August 14, 2007, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") for these chapter 11 cases.

4.     No request has been made for the appointment of a trustee or examiner.

5.     The Court has jurisdiction over this Motion and the relief requested herein. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and

1409. The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## **BACKGROUND**

6.     Broadhollow and Melville are non-Debtor, special purpose entities sponsored by AHM Investment to fund a portion of its prime mortgage origination. The Assets (defined herein) consist of approximately 5,700 Mortgage Loans with an aggregate unpaid principal balance of approximately $1,620,000,000. The Assets are comprised of Mortgage Loans that are owned directly by either Broadhollow or Melville, as applicable. As such, the Assets do not constitute property of the estate under section 541 of the Bankruptcy Code. The Debtors' interest in Broadhollow and Melville extend to any residual value remaining after the sale of the Assets and payment in full of the notes issued by Broadhollow and Melville, including repayment of the principal balance on subordinated notes issued by such entities and owned by one or more of the Debtors and the remaining balance, if any, in the reserve funds established by Broadhollow and Melville in accordance with the relevant program agreements. Other than these possible interests in Broadhollow and Melville (the extent of which will be determined by the Auction and Sale processes contemplated herein), the Debtors have no right, title or interest in the Assets.

7.     Broadhollow and Melville issued extendible commercial paper in the form of secured liquidity notes ("SLNs"). The SLNs are secured by mortgage loans that Broadhollow and Melville purchased from time to time pursuant to (a) that certain Mortgage Loan Purchase and Servicing Agreement dated as of May 27, 2004, by and among Broadhollow, as purchaser, AHM Corp., as seller, AHM Servicing, as servicer, and AHM Investment, as performance guarantor of the servicer's obligations (the "Broadhollow MLPSA") or (b) that certain Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004, by and among Melville, as purchaser, AHM

Acceptance, as seller, AHM Servicing (as successor to Columbia National, Inc.), as servicer, and

AHM Investment, as performance guarantor of the servicer's obligations (the "Melville MLPSA,"

and together with the Broadhollow MLPSA, the "MLPSAs"), as applicable.

8.      Each Swap Provider is a party to (or participants of a party to) ISDA Master

Agreements between such Swap Provider and Broadhollow or Melville, as applicable.  Pursuant to

these agreements, among other things, each Swap Provider has exposure, severally and not jointly

with any other Swap Provider, to certain fluctuations in the value of the Mortgage Loans (the

"Market Exposure").  Specifically, the Swap Providers are required to cover certain deficiencies

between the market value of the Assets and the amount due on the SLNs.

9.      In addition, each Swap Provider is a party to (or participants of a party to)

ISDA Master Agreements between such Swap Provider and the Servicer (together with the

Schedule and Credit Support Annex thereto, a "Back-up Swap Agreement"), pursuant to which,

among other things, the Servicer is obligated to reimburse each Swap Provider to the extent such

Swap Provider funds the Market Exposure.  Accordingly, the Swap Providers are entitled to a

claim against the Servicer on account of any amounts for which the Debtors are obligated to

reimburse the Swap Providers.

10.      Prior to the Petition Date, at least one termination event occurred under the

MLPSAs with respect to the failure to have in place the requisite amount of swaps with at least one

(1) year prior to the scheduled termination date thereof.  As a result of this termination event,

Broadhollow and Melville are required to sell or securitize the Assets within thirty (30) days of the

date of the termination event, with any such loans unsold after such period being subject to an

auction to be conducted by the collateral agent under: (a) that certain Security Agreement, dated as

of May 27, 2004, among Broadhollow and Deutsche Bank Trust Company Americas, as Indenture

Trustee and Collateral Agent, and (b) that certain Security Agreement, dated as of May 27, 2004, among Melville and Deutsche Bank Trust Company Americas, as Indenture Trustee and Collateral Agent, as applicable.

11.     Throughout the past week, the Debtors, Broadhollow and Melville have worked closely with the Swap Providers to develop sale procedures for the Assets that would maximize the value to the Debtors' estates.  The parties believe that an open auction process will obtain the highest price for the Assets, thereby increasing the likelihood of residual value for the benefit of the estates and minimizing the claims of the Swap Parties against the Debtors' estates. After extensive negotiations, on August 16, 2007, the Debtors, Broadhollow, Melville and the Swap Providers entered into the Auction Procedures Agreement, a copy of which is attached hereto as **Exhibit B**.

12.     Pursuant to the Auction Procedures Agreement, the Servicer, will conduct the Auction and Sale processes for the Assets.   The key terms of the Auction Procedures Agreement are as follows:[2]

- <u>Diligence Process</u>.      Commencing on the date of the Auction Procedures Agreement, AHM, the Servicer and the Sellers shall provide, and they shall use their commercially reasonable efforts to cause the Collateral Agent to provide, the Swap Providers (and their agents) with reasonable access to all information (in electronic format or otherwise) relating to each Mortgage Loan owned by the Sellers, including, without limitation, the data points listed on <u>Schedule IV</u> to the Auction Procedures Agreement.   Simultaneously, AHM and the Servicer shall establish an electronic data room which shall be populated with the information made available by AHM, the Servicer, the Sellers and the Collateral Agent, to the Swap Providers (and their agents) and, subject to execution of a valid nondisclosure agreement, any other party (and such party's agents)

---

[2]   The following description of the Auction Procedures Agreement is a summary of the terms set forth therein. Capitalized terms used but not defined in this paragraph have the meanings ascribed to them in the Auction Procedures Agreement.  To the extent that this summary differs in any way from the terms set forth in the Auction Procedures Agreement, the terms of the Auction Procedures Agreement shall control.

expressing an interest in purchasing the Assets (each an "Interested Bidder"). AHM and the Servicer agree to provide reasonable cooperation to the Swap Providers and any Interested Bidder in connection with the Swap Providers' or any Interested Bidder's performance of due diligence and shall timely respond to all information requests received from the Swap Providers and any Interested Bidder.

- Bankruptcy Court Approval of Sale Procedures; Auction.   AHM   shall use its commercially reasonable efforts to cause the Bankruptcy Court to enter an order as soon as practicable but no later then August 20, 2007, to be in form and substance reasonably satisfactory to the Swap Providers, (a) approving AHM's entry into the Auction Procedures Agreement and authorizing AHM to comply with the terms hereof, (b) approving the asset purchase agreements in the forms set forth as Schedule IIA and Schedule IIB[3] to the Auction Procedures Agreement and (c) directing the Debtors to conduct an auction in accordance with the bidding and auction procedures specified on Schedule III to the Auction Procedures Agreement, for the Assets on a "servicing-released" basis.

- Reimbursement of Expenses. In the event that any Swap Provider, the Swap Providers, or an acquisition entity organized by one or more of the Swap Providers submits a Qualified Bid (in accordance with the procedures set forth in paragraph 4 of Schedule III to the Auction Procedures Agreement) which Qualified Bid is declared by the Servicer to be a "stalking horse" bid, the Debtors shall pay the Swap Providers the lesser of (1) $500,000 and (2) one-third of the documented reasonable costs and expenses (including but not limited to diligence and attorneys fees) incurred in connection with the diligence process (referred to in clause 1, above) and in the negotiation and documentation of the asset purchase agreements submitted as part of such "stalking horse" bid (which amount shall be distributed as agreed by the Swap Providers). In addition to the amounts, if any, paid to the Swap Providers in connection with a "stalking horse" bid, in the event that any Swap Provider, the Swap Providers, or an acquisition entity organized by one or more of the Swap Providers is named the Successful Bidder (in accordance with the procedures set forth in paragraph 7 of Schedule III to the Auction Procedures Agreement), the Debtors shall pay the Swap Providers the lesser of (1) $500,000 and (2) one-half of such entity or entities' then outstanding and unpaid documented reasonable costs and expenses (including but not limited to diligence and attorneys fees) incurred in connection with the diligence process (referred to in clause 1, above), in the negotiation and documentation of the asset purchase agreements

---

[3]   The Debtors and the Swap Providers shall finalize and submit the forms of the asset purchase agreements prior to the hearing to consider the Motion. To the extent that the Debtors do not submit the asset purchase agreements in forms that are acceptable to the Swap Providers prior to such hearing, the hearing shall be adjourned.

submitted as part of such party's Qualified Bid, and incurred thereafter in connection with the Auction and in preparation of closing of the Sale (which amount shall be distributed as agreed by the Swap Providers).

- • Transfer of Servicing Rights. Consistent with the terms of the MLPSA, the sale of the Mortgage Loans to the Successful Bidder (as defined in Schedule III to the Auction Procedures Agreement) shall be on a "servicing-released" basis;[4] provided, however, that the Servicer shall provide interim servicing for the Mortgage Loans following the closing of the Sale until the Mortgage Loans can be transferred to a replacement servicer.[5]

13.    For the reasons set forth herein, the Debtors respectfully submit that that it is in the best interests of the Debtors' estates to enter into and perform under the Auction Procedures Agreement.

## RELIEF REQUESTED

14.    By this Motion, the Debtors seek entry of the Sale Procedures Order: (a) authorizing the Debtors to enter into and perform under the Auction Procedures Agreement; (b) approving the Sale Procedures with respect to the proposed Sale of the Assets; (c) approving the form and manner of the Notice of Auction; (d) approving the Sale to the Successful Bidder; and (e) granting such other related relief as the Court deems just and proper.

A.    Sale Procedures

15.    The Debtors, Broadhollow, Melville and the Swap Providers have negotiated Sale Procedures in the form attached to the Auction Procedures Agreement in an attempt to maximize the realizable value of the Assets. The Sale Procedures contemplate an

---

[4]    Pursuant to section 11.3 of the MLPSA, upon the closing of the Sale, the Servicers' rights to service the Mortgage Loans shall terminate and the Successful Bidder (as defined below) shall have the right to designate a new servicer.

[5]    Pursuant to section 11.3 of the MLPSA, upon the closing of the Sale, the Servicers' rights to service the Mortgage Loans shall terminate and the Successful Bidder (as defined below) shall have the right to designate a new servicer.

Auction process pursuant to which bids for the Assets will be subject to higher or better offers.

Specifically, the Sale Procedures provide, in relevant part, as follows:[6]

- <u>Assets to be Sold</u>: The Mortgage Loans (collectively, the "Assets") include approximately 5,700 mortgage loans with an aggregate balance of approximately $1.62 Billion. The Mortgage Loans consist of fixed rate, adjustable rate, balloon and interest only loans originated with full and alternative documentation. The Assets shall not include any "predatory", "state high cost" or otherwise ineligible loans.

- <u>Access to Information</u>: The Servicer shall afford each Qualified Bidder reasonable due diligence information. Information relevant to the Assets for evaluation by interested parties, including certain books and records, material contracts, and other financial information for due diligence investigation shall be made available on the Debtors' Intralinks website to any bidders who have executed a valid nondisclosure agreement. No later than September 1, 2007, the Debtors will designate two categories of Mortgage Loans for each Seller which are, as of close of business on August 31, 2007, a) performing Mortgage Loans which conform to the guidelines of Fannie Mae, Freddie Mac and CitiMac (collectively, the "<u>Agency Eligible Performing Loans</u>"), b) performing Mortgage Loans which do not conform to the guidelines of Fannie Mae, Freddie Mac and CitiMac (collectively, the "<u>Non-Agency Eligible Performing Loans</u>"), and c) delinquent or defaulted Mortgage Loans (collectively, the "<u>Non-Performing Loans</u>"). To obtain a copy of a non-disclosure agreement, contact Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000. Specific information for accessing the information will be provided after execution of such agreements.

  **The diligence period will take place from August 14, 2007 to September 9, 2007.** The Servicer will coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders (defined below).

- All Bids (as defined below) must be submitted in writing so that they are **actually** received no later that 12:00 NOON (Eastern time) on **<u>September 10, 2007</u>** (the "Bid Deadline"). Each Qualified Bidder (as defined below) must deliver copies of its Bid to: (a) Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil)

---

[6] The following description of the Sale Procedures is a summary of the terms set forth in the Sale Procedures annexed to the Auction Procedures Agreement as <u>Schedule III</u>. Capitalized terms used but not defined in this paragraph have the meanings ascribed to them in such Exhibit. To the extent that this summary differs in any way from the terms set forth in such Exhibit, the terms of such Exhibit shall control.

Telephone: (202) 367-3000, **with copies to:** (i) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Alan Horn, General Counsel), (ii) Young Conaway Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391 (Attn.: James L. Patton, Jr. and Pauline K. Morgan), counsel to the Debtors; (b) counsel to the Creditors' Committee, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attn.: Mark S. Indelicato); (c) Deutsche Bank Trust Company Americas, as Indenture Trustee (the "Indenture Trustee"), under that certain Broadhollow Base Indenture, dated May 27, 2004 and that certain Melville Base Indenture, dated May 27, 2004, 60 Wall Street, MS NYC60-2606, New York, NY 10005, Attn.: Structured Finance; and (d) counsel to the Indenture Trustee, Seward & Kissel, One Battery Park Plaza, New York, NY 10004 (Attn: John R. Ashmead and Andrew Silverstein).

Interested bidders requesting information about the qualification process, and information in connection with their due diligence, should contact Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000.

- Bid Requirements: Formal, binding, unconditional bids (each, a "Bid") must contain: (a) executed versions of the sale agreements, in the form of the agreements annexed to the Sale Procedures as Exhibit A-1 and A-2; (b) a letter setting forth the identity of the bidder (including an authorized representative thereof), such bidder's counsel and contact information for such bidder, its authorized representative and its counsel; (c) a proposal to purchase all of the Assets, provided, however, that the proposal shall identify separate purchase prices for each of the following categories: (i) Broadhollow Agency Eligible Performing Loans, (ii) Melville Agency Eligible Performing Loans, (iii) Broadhollow Non-Agency Eligible Performing Loans, (iv) Melville Non-Agency Eligible Performing Loans, (v) Broadhollow Non-Performing Loans, and (vi) Melville Non-Performing Loans; (d) written evidence of a commitment for financing or other evidence of the bidder's financial ability to consummate the Sale (in a form satisfactory to the Servicer in its reasonable discretion); (e) written acknowledgement that such bid is unconditional and not contingent upon any event, including, without limitation, any due diligence investigation, the receipt of financing or any further bidding approval; (f) written evidence that the bidder has the requisite corporate or similar authority to consummate the investment or sale; and (g) such other information as the Sellers or the Servicer may request. Bids that contain the foregoing shall be "Qualified Bids." Persons that comply with the foregoing shall be "Qualified Bidders."

- One Qualifying Bid Received: If only one timely, conforming Qualifying Bids is submitted by the Bid Deadline, the Servicers shall not hold an

Auction and instead shall close the Sale of the Assets with the party submitting the Qualifying Bid.

- <u>Auction</u>: If two or more timely, conforming Qualified Bids are received, the Servicer will conduct an auction (the "<u>Auction</u>"). The Auction will take place on **September 11, 2007** at the offices of Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 at 10:00 a.m. (ET) or such later time or other place as the Servicer shall notify the Swap Providers and the Qualified Bidders.

- <u>Auction Procedures</u>: Only the parties who have submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of the Swap Providers, the authorized representatives of each of the Qualified Bidders, counsel to the Debtors, counsel to the Committee, counsel to the Indenture Trustee, and the Sellers (collectively, the "<u>Auction Participants</u>") shall be permitted to attend the Auction. At the Auction, the Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the highest and best Qualified Bid as disclosed to all Qualified Bidders prior to the commencement of the Auction, and continue in increments to be determined by the Servicer, in its reasonable business judgment. The highest and best Qualified Bid shall be determined by the Servicer in its discretion.

  The Servicer will announce the principal terms and conditions of or provide copies of each Qualified Bid submitted by the Qualified Bidders to the Swap Providers and the Qualified Bidders at or prior to the Auction. The Servicer will, from time to time, advise the Auction Participants of its determination as to the terms of the then highest and/or best Qualified Bid. In evaluating the Qualified Bids, the Servicer shall consider, among other things, the following: (a) the amount of the proposed purchase price; (b) the valuation of the Assets; (c) the ability to close the transaction; and (d) the speed and certainty of consummating the transaction. The Auction shall continue until there is only one Qualified Bid that the Servicer determines in its reasonable business judgment, is the highest and best Qualified Bid. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-existing highest Qualified Bid. After each Qualified Bidder has been given the opportunity to submit an overbid, the highest and best Qualified Bid (the "<u>Successful Bid</u>") and the bidder making such Bid (the "<u>Successful Bidder</u>") and the next highest and best Qualified Bid (the "<u>Second Best Bid</u>") and the bidder making such Bid (the "<u>Second Best Bidder</u>") shall be identified and the Auction shall be closed. The Servicer shall not consider any bids submitted after the conclusion of the Auction.

- Acceptance of the Sale; Closing. The Sellers shall have accepted a Qualified Bid only when (a) the Bid is declared the Successful Bid, (b) definitive documentation has been executed in respect thereof; and (c) the Sale closes. The closing of the Sale with the Successful Bidder shall occur at 10:00 a.m. (ET) on September 12, 2007. In the event that the Successful Bidder does not close on 2:00 p.m. (ET) on September 12, 2007, the Sellers shall close with the Second Best Bidder at 10:00 a.m. (ET) on September 13, 2007.

16.     The Debtors, the Servicers and the Swap Providers believe that these Sale Procedures are consistent with the Servicers' obligations to liquidate the assets under the MLPSAs.

B.      Notice of Auction

17.     Not later than two business days after the entry of the Sale Procedures Order, the Debtors will serve copies of the Notice of Auction, substantially in the form attached hereto as **Exhibit C**, the Sale Procedures, and the Sale Procedures Order (a) by mail, postage prepaid to: (i) all entities known to have a *bona fide* interest in acquiring the Assets; (ii) counsel to the Indenture Trustee; (iii) counsel to the Debtors' postpetition lender (the "DIP Lender"), (iv) counsel to the Creditors' Committee; and (v) the U.S. Trustee; and (b) by first-class mail, postage prepaid, to all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Order granting the relief requested herein.

18.     Not later than five business days after entry of the Sale Procedures Order, the Debtors will publish the Notice of Auction, substantially in the form attached hereto as **Exhibit C** in the national edition of *The Wall Street Journal*. Additionally, the Debtors will cause the Notice of Auction to be posted on the Bloomberg newswire service.

**AUTHORITY FOR REQUESTED RELIEF**

19.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court can authorize a debtor to use

property of the estate pursuant to Section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Delaware & Hudson R.R. Co., 124 BR. 169, 176 (D. Del. 1991); The Official Committee of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992). Under section 363 of the Bankruptcy Code, a debtor in possession may use, sell or lease property of the estate outside the ordinary course of business if:  (a) it has an articulated business justification, (b) it provides adequate notice to all creditors, and (c) a hearing is held on the proposed use.  See Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991).

20.     The debtor has the burden to establish that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business. See In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983).  Once the debtor articulates a valid business justification, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company.  See The Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.), 147 BR. 650, 656 (S.D.N.Y. 1992).  The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing.  Id.; see Committee of Asbestos Related Litigants and/or Creditors v. Johns Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions").

21.     Furthermore, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not

entertain objections to the debtor's conduct." In re Johns Manville Corp., 60 B.R. at 616. There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. at 656 (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).

22.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

23.    The Debtors submit that more than ample business justification exists to enter into the Auction Procedures Agreement and to participate in the Auction and Sale of the

Assets to the Successful Bidder (or Second Best Bidder) pursuant to the Sale Procedures. An immediate Sale of the Assets is required by the terms of the operative documents and will (a) maximize the value of the Assets and thereby maximize the value of any residual interest that the Debtors may have in the Assets; and (b) minimize and liquidate the value of the Swap Providers' claims against the Debtors' estates.

24.    Moreover, a targeted sale process involving the Swap Providers is most likely to achieve the highest and best price for the Assets. The Debtors and Swap Providers share the common goal of seeking maximum value for the Assets. Maximizing the value of the Assets will serve to reduce the Debtors' potential exposure to the Swap Providers and increase the possibility that the Debtors have a residual interest in the Assets. To that end, the parties have vigorously negotiated, at arm's length, the terms set forth in the Auction Procedures Agreement and believe they are fair and reasonable to all stakeholders.

25.    The Auction Procedures Agreement establishes a process by which potential bidders will have the opportunity to participate in the auction process. The proposed Sale Procedures allow for a timely auction process, as required by the Debtors and the relevant governing documents, while providing other interested bidders with sufficient time and information to submit a bid. Pursuant to the Sale Procedures, the proposed Sale of the Assets will be subject to a market check through the solicitation of competing bids thereby ensuring that the Assets will be sold for the highest and best possible purchase price.

26.    Simply put, given the requirements of the MLPSAs that the Mortgage Loans be sold within thirty (30) days of the termination event and the market challenges relating to the Assets, the Debtors believe in their reasonable business judgment that the relief sought by this

Motion is not only reasonable, but necessary, to maximize the value of their estates for the benefit of all stakeholders.

## ` NOTICE

27.    No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) proposed counsel to the Creditors' Committee; (c) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (d) counsel to the DIP Lender; (e) counsel to the Indenture Trustee; (f) all parties who are known to possess or assert a secured claim against the Assets; (g) the Internal Revenue Service; (h) the U.S. Securities and Exchange Commission; and (i) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Sale Procedures Order: (i) authorizing the Debtors to enter into and perform under the Auction Procedures Agreement; (ii) approving the Sale Procedures for the Sale of the Assets; (iii) approving the form and manner of the Notice of Auction; (iv) approving the Sale to the Successful Bidder; and (v) granting such other related relief as the Court deems just and proper.

Dated: August 17, 2007
     Wilmington, Delaware

          YOUNG CONAWAY STARGATT & TAYLOR, LLP

          James L. Patton, Jr. (No. 2202)
          Joel A. Waite (No. 2925)
          Pauline K. Morgan (No. 3650)
          Sean M. Beach (No. 4070)
          Matthew B. Lunn (No. 4119)
          Kara Hammond Coyle (No. 4410)
          Kenneth J. Enos (No. 4544)
          The Brandywine Building
          1000 West Street, 17th Floor
          Wilmington, Delaware 19801
          (302) 571-6600

          Proposed Counsel for the Debtors and
          Debtors in Possession

## EXHIBIT A

**Sale Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                          :    Chapter 11
                                                                :
AMERICAN HOME MORTGAGE                                           :    Case No.  07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,                 :
                                                                :    Jointly Administered
        Debtors.                                                :
---------------------------------------------------------------- x   Ref. Docket No. [ ]

**ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO AND PERFORM UNDER
AUCTION PROCEDURES AGREEMENT; (II) APPROVING SALE PROCEDURES IN
CONNECTION WITH THE SALE OF CERTAIN ASSETS OF NON-DEBTORS
BROADHOLLOW FUNDING, LLC AND MELVILLE FUNDING, LLC; (III)
APPROVING THE FORM OF NOTICE OF AUCTION; AND (IV) APPROVING THE
SALE TO THE SUCCESSFUL BIDDER**

Upon the consideration of the motion (the "Motion")[1] of American Home

Mortgage Holdings, Inc., and certain of its direct and indirect affiliates and subsidiaries, the

debtors and debtors in possession in the above-captioned cases (collectively, "AHM" or the

"Debtors"),[2] pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C.

§§ 101 et seq. (the "Bankruptcy Code"), for entry of the "Sale Procedures Order": (i) authorizing

the Debtors to enter into and perform under that certain Agreement, dated August 16, 2007 (the

"Auction Procedures Agreement"), by and between Broadhollow Funding, LLC,

("Broadhollow"), a non-Debtor affiliate of the Debtors, Melville Funding, LLC ("Melville"), a

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the
       Motion.

[2]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number,
       are: AHM Holdings (6303); American Home Mortgage Investment Corp.  ("AHM Investment"), a Maryland
       corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation
       (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267);
       American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage
       Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement
       Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a
       New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New
       York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

non-Debtor affiliate of the Debtors, AHM Corp., AHM Investment, AHM Servicing and the swap providers listed on Schedules IA and IB thereto (collectively, the "Swap Providers"); (ii) approving procedures (the "Sale Procedures") with respect to the proposed sale (the "Sale") of certain mortgage loans (each, a "Mortgage Loan" and collectively, (the "Assets") owned by Broadhollow and Melville; (iii) approving the form and manner of notice of an auction for the relevant assets (the "Auction"); (iv) approving the Sale to the Successful Bidder; and (v) granting such other related relief as the Court deems just and proper; and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion held on August [___], 2007, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    This Court has jurisdiction over the Motion and the relief sought therein. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.     The Debtors' proposed notice of the Sale Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction and the Sale, and the Sale Procedures to be employed in connection therewith.

E.     The entry of this Order is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest.

F.     The Sale Procedures are reasonably designed to maximize the value to be achieved for the Assets and to minimize the Swap Providers' claims against the Debtors' estates.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted.

2.     The Debtors are hereby authorized to enter into and perform under the Auction Procedures Agreement.

3.     Except as otherwise expressly provided in this Order, all objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

4.     The Sale Procedures, in substantially the form attached hereto as **Exhibit 1**, are hereby incorporated herein and approved, and shall apply with respect to the Sale.

5.     The Servicers are hereby authorized to conduct the Auction for the Assets in accordance with the Sale Procedures.  The notice to be issued and published in connection with the proposed Sale, substantially in the form annexed hereto as **Exhibit 2**, is approved.

6.     Not later than two business days after the entry of an Order granting the relief requested herein, the Debtors will serve copies of the Notice of Auction, substantially in the form attached hereto as **Exhibit 2**, the Sale Procedures, and this Sale Procedures Order granting the relief requested herein (a) by mail, postage prepaid to: (i) all entities known to have

a *bona fide* interest in acquiring the Assets; (ii) counsel to Deutsche Bank Trust Company Americas, as Indenture Trustee (the "Indenture Trustee"), under the Base Indentures, dated May 27, 2004; (iii) counsel to the DIP Lender; (iv) counsel to the Official Committee of Unsecured Creditors; and (v) the Office of the United States Trustee for the District of Delaware; and (b) by first-class mail, postage prepaid, to all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Order granting the relief requested herein.

7.     Not later than five business days after entry of this Order, the Debtors will publish the Notice of Auction, substantially in the form attached hereto the Motion as **Exhibit 2** in the national edition of *The Wall Street Journal*.  Additionally, the Debtors will cause the Notice of Auction to be posted on the Bloomberg newswire service.

8.     Pursuant to this Sale Procedures Order and sections 105(a) and 363(b) of the Bankruptcy Code, the Servicers are authorized to take any necessary action to effectuate the Sale of the Assets pursuant to the Sale Procedures.  Broadhollow and Melville shall transfer the Assets to the Successful Bidder (as defined in the Sale Procedures) upon and as of the closing date and such transfer shall constitute a legal, valid, binding and effective transfer of such Assets.

9.     Upon the closing of the Sale, the Servicers' rights and obligations to service the Mortgage Loans shall terminate and the Successful Bidder (as defined in the Sales Procedures) shall have the right to designate a new servicer; provided, however, that the Servicer shall provide interim servicing for the Mortgage Loans following the closing of the Sale until the Mortgage Loans can be transferred to a replacement servicer and the Servicer shall be entitled to receive customary fees for such servicing.

10.    Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale

Procedures Order shall be effective immediately upon entry.

11.    This Court shall retain jurisdiction over any matters related to or arising

from the implementation of this Sale Procedures Order.

Dated:  August ____, 2007
         Wilmington, Delaware

_____
Christopher S. Sontchi
United States Bankruptcy Judge

# **EXHIBIT 1**

**Sale Procedures**

## PROPOSED SALE PROCEDURES

These Sale Procedures set forth the process by which American Home Mortgage Servicing, Inc. (the " Servicer") will conduct a sale (the "Sale ") by auction of certain mortgage loans (the " Mortgage Loans") purchased by (i) Broadhollow Funding, LLC ("Broadholl ow") pursuant to that certain Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004, by and between Broadhollow, as purchaser, American Home Mortgage Corp., as seller, American Home Mortgage Servicing, Inc. (as successor to Columbia National, Inc.), as servicer, and American Home Mortgage Investment Corp., as performance guarantor, and (ii) Melville Funding, LLC ("Melv ille" and, together with Broadhollow, the "Sellers ") pursuant to that certain Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004, by and between Melville, as purchaser, American Home Mortgage Corp., as seller, American Home Mortgage Servicing, Inc. (as successor to Columbia National, Inc.), as servicer, and American Home Mortgage Investment Corp., as performance guarantor.

Pursuant to that certain Agreement, dated August 17, 2007, the Swap Providers listed on Schedule IA and IB thereto, either individually, jointly or through a special purpose entity owned or controlled by one or more of the Swap Providers, shall perform due diligence regarding the Assets (defined below) and may submit a Qualified Bid for the Assets. In the event that the Servicer receives more than one Qualified Bid, the Servicer shall hold an auction on September 11, 2007 (the "Auction "). The Sale will be documented in the asset purchase agreements (the "Purchase Agreements"), between the Sellers and the Successful Bidder (defined below).

These Sale Procedures are subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (in which American Home Mortgage Holdings, Inc.'s  and certain of its affiliates'  (collectively, the "Debtors ") jointly administered chapter 11 bankruptcy cases, Case No. 07-11047 (CSS), are pending).

1.    Assets to be Sold

The Servicer provides these Sale Procedures, whereby prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest and best offer for the Mortgage Loans. The Mortgage Loans (collectively, the "Assets") include approximately 5,700 mortgage loans with an aggregate balance of approximately $1.62 Billion. The Mortgage Loans consist of fixed rate, adjustable rate, balloon and interest only loans originated with full and alternative documentation. The Assets shall not include any "predatory", "state high cost" or otherwise ineligible loans.

2.    Access to Information

The Servicer shall afford each Qualified Bidder reasonable due diligence information. Information relevant to the Assets for evaluation by interested parties, including certain books

and records, material contracts, and other financial information for due diligence investigation shall be made available on the Debtors' [Intralinks] website to any bidders who have executed a valid nondisclosure agreement. No later than September 1, 2007, the Debtors will designate three categories of Mortgage Loans for each Seller which are, as of close of business on August 31, 2007, a) performing Mortgage Loans which conform to the guidelines of Fannie Mae, Freddie Mac and CitiMac (collectively, the "Agency Eligible Performing Loans"), b) performing Mortgage Loans which do not conform to the guidelines of Fannie Mae, Freddie Mac and CitiMac (collectively, the "Non-Agency Eligible Performing Loans"), and c) delinquent or defaulted Mortgage Loans (collectively, the "Non-Performing Loans"). To obtain a copy of a non-disclosure agreement, contact Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000. Specific information for accessing the information will be provided after execution of such agreements.

**The diligence period will take place from August 14, 2007 to September 9, 2007.** The Servicer will coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders (defined below).

3.    Bid Deadline

All Bids (as defined below) must be submitted in writing so that they are **actually** received no later that 12:00 NOON (Eastern time) on **September 10, 2007** (the "Bid Deadline"). Each Qualified Bidder (as defined below) must deliver copies of its Bid to: (a) Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000, **with copies to:** (i) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Alan Horn, General Counsel), (ii) Young, Conaway, Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391 (Attn.: James L. Patton, Jr.), counsel to the Debtors; (b) counsel to the Official Committee of Unsecured Creditors (the "Committee"); and (c) Deutsche Bank Trust Company Americas, as Indenture Trustee (the "Indenture Trustee"), under that certain Broadhollow Base Indenture, dated May 27, 2004 and that certain Melville Base Indenture, dated May 27, 2004, 60 Wall Street, MS NYC60-2606, New York, NY 10005, Attn.: Structured Finance.

Interested bidders requesting information about the qualification process, and information in connection with their due diligence, should contact Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000.

4.    Bid Requirements

Formal, binding, unconditional bids (each, a "Bid ") must contain: (a) executed versions of the sale agreements in the form of the agreements annexed hereto as **Exhibit A-1** and **A-2**; (b) a letter setting forth the identity of the bidder (including an authorized representative thereof), such bidder's counsel, and contact information for such bidder, its authorized representative and its counsel; (c) a proposal to purchase all of the Assets, provided, however, that the proposal shall identify separate purchase prices for each of the

following categories: (i) Broadhollow Agency Eligible Performing Loans, (ii) Melville Agency Eligible Performing Loans, (iii) Broadhollow Non-Agency Eligible Performing Loans, (iv) Melville Non-Agency Eligible Performing Loans, (v) Broadhollow Non-Performing Loans, and (vi) Melville Non-Performing Loans; (d) written evidence of a commitment for financing or other evidence of the bidder' s financial ability to consummate the Sale (in a form satisfactory to the Servicer in its reasonable discretion); (e) written acknowledgement that such bid is unconditional and not contingent upon any event, including, without limitation, any due diligence investigation, the receipt of financing or any further bidding approval; (f) written evidence that the bidder has the requisite corporate or similar authority to consummate the investment or sale; and (g) such other information as the Sellers or the Servicer may request. Bids that contain the foregoing shall be "Qu alified Bids. "   Persons that comply with the foregoing shall be "Qualified Bidders ."

5.    One Qualifying Bid Received

If only one timely, conforming Qualifying Bid is submitted by the Bid Deadline, the Servicer shall not hold an Auction and instead shall close the Sale of the Assets with the party submitting the Qualifying Bid.

6.    Auction

If two or more timely, conforming Qualified Bids are received, the Servicer will conduct an auction (the "Auction "). The Auction will take place on **September 11, 2007** at the offices of Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 at 10 a.m. (ET) or such later time or other place as the Servicer shall notify the Swap Providers and the Qualified Bidders.

7.    Auction Procedures

Only the parties who have submitted a Qualified Bid will be eligible to participate at the Auction.    Only the authorized representatives of the Swap Providers, the authorized representatives of each of the Qualified Bidders, counsel to the Debtors, counsel to the Committee, counsel to the Indenture Trustee, and the Sellers (collectively, the "Auction Participants") shall be permitted to attend the Auction. At the Auction, the Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the highest and best Qualified Bid as disclosed to all Qualified Bidders prior to the commencement of the Auction, and continue in increments to be determined by the Servicer, in its reasonable business judgment. The highest and best Qualified Bid shall be determined by the Servicer in its discretion.

The Servicer will announce the principal terms and conditions of or provide copies of each Qualified Bid submitted by the Qualified Bidders to the Swap Providers and the Qualified Bidders at or prior to the Auction. The Servicer will, from time to time, advise the Auction Participants of its determination as to the terms of the then highest and/or best Qualified Bid. In evaluating the Qualified Bids, the Servicer shall consider, among other things, the following: (a) the amount of the proposed purchase price; (b) the valuation of the Assets; (c)

the ability to close the transaction; and (d) the speed and certainty of consummating the transaction. The Auction shall continue until there is only one Qualified Bid that the Servicer determines in its reasonable business judgment, is the highest and best Qualified Bid. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-existing highest Qualified Bid. After each Qualified Bidder has been given the opportunity to submit an overbid, the highest and best Qualified Bid (the "Succ essful Bid") and the bidder making such Bid (the "Successful Bidder") and the next highest and best Qualified Bid (the " Second Best Bid") and the bidder making such Bid (the "Second Best Bidder") shall be identified and the Auction shall be closed. The Servicer shall not consider any bids submitted after the conclusion of the Auction.

8.    Acceptance of the Sale; Closing

The Sellers shall have accepted a Qualified Bid only when (a) the Bid is declared the Successful Bid, (b) definitive documentation has been executed in respect thereof, and (c) the Sale closes. The closing of the Sale with the Successful Bidder shall occur at 10:00 a.m. (ET) on September 12, 2007. In the event that the Successful Bidder does not close before 2:00 p.m. (ET) on September 12, 2007, the Sellers shall close with the Second Best Bidder at 10:00 a.m. (ET) on September 13, 2007.

\

# EXHIBIT B

**Auction Procedures Agreement**

# AGREEMENT

This AGREEMENT (the **"Agreement"**), dated as of August 17, 2007, is entered into by and among: (i) BROADHOLLOW FUNDING, LLC, a Delaware limited liability company (**"Broadhollow"**) and MELVILLE FUNDING, LLC, a Delaware limited liability company (**"Melville"** and, together with Broadhollow, the **"Sellers"**); (ii) AMERICAN HOME MORTGAGE CORP. (**"American Home"**), AMERICAN HOME MORTGAGE INVESTMENT CORP. (**"American Home Investment"** and, together with American Home, **"AHM"**) and AMERICAN HOME MORTGAGE SERVICING, INC. (the **"Servicer"**), each a debtor and debtor-in-possession in the Cases (as defined below); and (iii) the entities listed as swap providers on the attached <u>Schedule IA</u> and <u>Schedule IB</u> (each, a **"Swap Provider"** and, collectively, the **"Swap Providers"**). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Broadhollow MLPSA (as defined below).

**WHEREAS**, Broadhollow, American Home, American Home Investment and the Servicer are parties to that certain Mortgage Loan Purchase and Servicing Agreement dated as of May 27, 2004 (the **"Broadhollow MLPSA"**) pursuant to which Broadhollow from time to time purchased Mortgage Loans from American Home;

**WHEREAS**, Melville, American Home, American Home Investment and the Servicer are parties to that certain Mortgage Loan Purchase and Servicing Agreement dated as of May 27, 2004 (the **"Melville MLPSA"** and, together with the Broadhollow MLPSA, the **"MLPSA"**) pursuant to which Melville from time to time purchased Mortgage Loans from American Home;

**WHEREAS**, each Swap Provider is a party to (or participants of a party to) an ISDA Master Agreement between such Swap Provider and Broadhollow and between such Swap Provider and Melville, in each case as more fully described on <u>Schedule IA</u> opposite to such Swap Provider's name (in each case, together with the Schedule thereto, a **"Front-end Swap Agreement"**), pursuant to which, among other things, each Swap Provider has exposure, severally and not jointly with any other Swap Provider, to certain fluctuations in the value of certain Mortgage Loans owned by Broadhollow and Melville (taken together, the **"Market Exposure"**);

**WHEREAS**, each Swap Provider is a party to (or participants of a party to) an ISDA Master Agreement between such Swap Provider and American Home Investment or a Debtor affiliate as more fully described on <u>Schedule IB</u> opposite to such Swap Provider's name (in each case, together with the Schedule and Credit Support Annex thereto, a **"Back-end Swap Agreement"**), pursuant to which, among other things, American Home Investment or a Debtor affiliate is obligated to pay to each Swap Provider such Swap Provider's Market Exposure to the extent funded by such Swap Provider;

**WHEREAS**, on August 6, 2007, AHM, together with certain of its subsidiaries and affiliates including those affiliates that are party to the Back-end Swap Agreement (collectively, the **"Debtors"**), commenced cases (collectively, the **"Cases"**) under Chapter 11 of the United States Bankruptcy Code (the **"Bankruptcy Code"**) in the Bankruptcy Court for the United States District Court for the District of Delaware (the **"Bankruptcy Court"**);

**WHEREAS**, prior to the commencement of the Cases, there occurred at least one Termination Event under clause 11.2(o) of the MLPSA;

**WHEREAS**, as a result of the occurrence of the Termination Event described above, all non-Deliquent Loans and non-Defaulted Loans owned by the Sellers are required to be sold or Securitized by the Servicer within thirty (30) days of the date of such Termination Event, with any such Loans unsold after such period being subject to a Termination Event Auction to be conducted by the Collateral Agent on the thirtieth (30th) day after the Termination Event;

**WHEREAS**, the Sellers own all right, title and interest in and to the Loans subject to the sale and the Debtors have certain rights and obligations, as specified in the Facility Documents, with respect to their activities as Servicer, Calculation Agent and any entitlement to the Broadhollow Reserve Fund; and

**WHEREAS**, the parties hereto agree, subject to the terms hereof, that the procedures described herein for the disposition of Loans required to be sold pursuant to the terms of the MLPSA, and the agreements among the parties hereto (including the sale procedures set forth on Schedule III hereto) with respect to such disposition, are consistent with the obligations of the Servicer under the MLPSA are commercially reasonable and intended to maximize the proceeds of sales of such Loans and related servicing rights and, among other things, minimize the claims on the Debtors' estates to the extent arising under the Back-end Swap Agreements;

**NOW THEREFORE**, in consideration of the mutual agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.     Diligence Process.    Commencing on the date hereof, AHM, the Servicer and the Sellers shall provide, and they shall use their commercially reasonable efforts to cause the Collateral Agent to provide, the Swap Providers (and their agents) with reasonable access to all information (in electronic format or otherwise) relating to each Mortgage Loan owned by the Sellers (collectively, the **"Assets"**), including, without limitation, the data points listed on Schedule IV hereto. Simultaneously, AHM and the Servicer shall establish an electronic data room which shall be populated with the information made available by AHM, the Servicer, the Sellers and the Collateral Agent, to the Swap Providers (and their agents) and, subject to execution of a valid nondisclosure agreement, any other party (and such party's agents) expressing an interest in purchasing the Assets (each an **"Interested Bidder"**). AHM and the Servicer agree to provide reasonable cooperation to the Swap Providers and any Interested Bidder in connection with the Swap Providers' or any Interested Bidder's performance of due diligence and shall timely respond to all information requests received from the Swap Providers and any Interested Bidder.

2.     Bankruptcy Court Approval of Sale Procedures; Auction.    AHM shall use its commercially reasonable efforts to cause the Bankruptcy Court to enter an order as soon as practicable but no later then August 20, 2007, to be in form and substance reasonably satisfactory to the Swap Providers, (a) approving AHM's entry into this Agreement and authorizing AHM to comply with the terms hereof, (b) approving the form of asset purchase agreements in the form set forth as Schedule IIA and Schedule IIB hereto and (c) directing the

2

Debtors to conduct an auction in accordance with the bidding and auction procedures specified on <u>Schedule III</u> hereto, for the Assets on a "servicing-released" basis.

      3.    <u>Reimbursement of Expenses</u>. In the event that any Swap Provider, the Swap Providers, or an acquisition entity organized by one or more of the Swap Providers submits a Qualified Bid (in accordance with the procedures set forth in paragraph 4 of <u>Schedule III</u> hereto) which Qualified Bid is declared by the Servicer to be a "stalking horse" bid, the Debtors shall pay the Swap Providers the lesser of (1) $500,000 and (2) one-third of the documented reasonable costs and expenses (including but not limited to diligence and attorneys' fees) incurred in connection with the diligence process (referred to in clause 1, above) and in the negotiation and documentation of the asset purchase agreements submitted as part of such "stalking horse" bid (which amount shall be distributed as agreed by the Swap Providers). In addition to the amounts, if any, paid to the Swap Providers in connection with a "stalking horse" bid, in the event that any Swap Provider, the Swap Providers, or an acquisition entity organized by one or more of the Swap Providers is named the Successful Bidder (in accordance with the procedures set forth in paragraph 7 of <u>Schedule III</u> hereto), the Debtors shall pay the Swap Providers the lesser of (1) $500,000 and (2) one-half of such entity or entities' then outstanding and unpaid documented reasonable costs and expenses (including but not limited to diligence and attorneys' fees) incurred in connection with the diligence process, in the negotiation and documentation of the asset purchase agreements submitted as part of such party's Qualified Bid, and incurred thereafter in connection with the Auction and in preparation of closing of the Sale (which amount shall be distributed as agreed by the Swap Providers).

      4.    <u>Transfer of Servicing Rights</u>. Consistent with the terms of the MLPSA, the sale of the Mortgage Loans to the Successful Bidder (as defined in <u>Schedule III</u> hereto) shall be on a "servicing-released" basis; <u>provided, however</u>, that the Servicer shall provide interim servicing for the Mortgage Loans and be entitled to receive customary fees for such servicing following the closing of the Sale until the Mortgage Loans can be transferred to a replacement servicer.

      5.    <u>Preservation of Rights of Noteholders</u>. The parties hereto agree that nothing herein affects or otherwise modifies the rights of any Swap Provider or Noteholder or in any way modifies the terms and conditions of any of the Facility Documents.

      6.    <u>Certain Acknowledgments</u>. The Sale Procedures with respect to the disposition of Mortgage Loans required to be sold pursuant to the terms of the MLPSA, and the agreements among the parties hereto with respect to such disposition are commercially reasonable and intended to maximize the proceeds of sales of such Mortgage Loans and related servicing rights in satisfaction of the terms of Section 11.2 of the MLPSA. The Servicer shall promptly advise the Collateral Agent of the sale process described herein and of the agreements among the parties hereto.

      7.    <u>Limitations and Termination</u>. The parties acknowledge and agree that nothing herein creates an obligation or commitment on the part of any Swap Provider, the Swap Providers or an acquisition entity organized by one or more of the Swap Providers to submit a bid for any of the Assets. Upon failure by AHM to cause the Bankruptcy Court to enter the order referred to in Section 2 of this Agreement by the dates set forth herein, this Agreement shall

3

terminate and be of no further force or effect unless such dates shall be extended in writing by each of the Swap Providers party hereto.

8.      Governing Law; Submission to Jurisdiction. This Agreement will be governed by and construed in accordance with the laws of the State of New York without reference to choice of law doctrines and, to the extent applicable, the Bankruptcy Code. Each party hereto hereby irrevocably submits itself in any legal action or proceeding relating to this Agreement to the non-exclusive jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from exercising) jurisdiction, to the non-exclusive jurisdiction of any state or federal court of competent jurisdiction sitting in New York County, New York.

4

**IN WITNESS WHEREOF,** the duly authorized representatives of the parties have caused this Agreement to be executed and acknowledge that they have read and understood this Agreement.

**BROADHOLLOW FUNDING, LLC**

By: _____
Name:
Title:

**MELVILLE FUNDING, LLC**

By: _____
Name:

Title:

**AMERICAN HOME MORTGAGE CORP.**

By: _____
Name:
Title:

**AMERICAN HOME MORTGAGE INVESTMENT CORP.**

By: _____
Name:
Title:

**AMERICAN HOME MORTGAGE
SERVICING, INC.**

By: _____
Name:

Title:

**CITIBANK, N.A.**

By: _____

Name:

Title:

**BANK OF AMERICA, N.A.**

By: _____
Name:
Title:

8

**ABN AMRO BANK N.V.**

By: _____
Name:
Title:

By: _____
Name:
Title:

K&E 12028069.9

**CALYON NEW YORK BRANCH**

By: _____
Name:
Title:

By: _____
Name:
Title:

10

**SOVEREIGN BANK FSB**

By: _____
Name:
Title:

11

## SCHEDULE IA TO AGREEMENT

### FRONT-END SWAP AGREEMENT INFORMATION

| Swap Provider | Counterparty | Date |
|---|---|---|
| Citibank, N.A. | Broadhollow Funding, LLC | June 7, 2005 |
| Citibank, N.A. | Melville Funding, LLC | June 7, 2005 |
| | | |
| ABN Amro Bank N.V. | Broadhollow Funding, LLC | May 27, 2004 |
| ABN Amro Bank N.V. | Melville Funding, LLC | May 27, 2004 |
| | | |
| Calyon New York Branch (and its participant, Sovereign Bank FSB) | Broadhollow Funding, LLC | May 27, 2004 |
| Calyon New York Branch (and its participant, Sovereign Bank FSB) | Melville Funding, LLC | March 9, 2004[1] |
| | | |
| Bank of America, N.A. | Broadhollow Funding, LLC | May 27, 2004 |
| Bank of America, N.A. | Melville Funding, LLC | May 27, 2004 |

---

[1]   The ISDA Master Agreement between Calyon New York Branch and Melville Funding, LLC is dated March 9, 2004, however, the Schedule, Credit Support Annex and Confirmation thereto are each dated May 27, 2004.

## SCHEDULE IB TO AGREEMENT

## BACK-END SWAP AGREEMENT INFORMATION

| Swap Provider | Counterparty | Date |
|---|---|---|
| Citibank, N.A. | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | June 7, 2005 |
| Citibank, N.A. | American Home Mortgage Investment Corp. | June 7, 2005 |
| | | |
| ABN Amro Bank N.V. | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | May 27, 2004 |
| ABN Amro Bank N.V. | American Home Mortgage Investment Corp. | May 27, 2004 |
| | | |
| Calyon New York Branch | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | May 27, 2004, as amended and extended |
| Calyon New York Branch | American Home Mortgage Investment Corp. | May 27, 2004 |
| | | |
| Sovereign Bank FSB | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | June 7, 2005, as amended and extended |
| Sovereign Bank FSB | American Home Mortgage Investment Corp. | June 7, 2005, as amended and extended |
| | | |
| Bank of America, N.A. | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | May 27, 2004 |
| Bank of America, N.A. | American Home Mortgage Investment Corp. | May 27, 2004 |

13

## SCHEDULE IIA TO AGREEMENT

## FORM OF BROADHOLLOW ASSET PURCHASE AGREEMENT

**[TO COME]**

14

**SCHEDULE IIB TO AGREEMENT**

**FORM OF MELVILLE ASSET PURCHASE AGREEMENT**

**[TO COME]**

K&E 12028069.9

## SCHEDULE III TO AGREEMENT

## PROPOSED SALE PROCEDURES

These Sale Procedures set forth the process by which American Home Mortgage Servicing, Inc. (the "Servicer") will conduct a sale (the "Sale") by auction of certain mortgage loans (the "Mortgage Loans") purchased by (i) Broadhollow Funding, LLC ("Broadhollow") pursuant to that certain Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004, by and between Broadhollow, as purchaser, American Home Mortgage Corp., as seller, American Home Mortgage Servicing, Inc. (as successor to Columbia National, Inc.), as servicer, and American Home Mortgage Investment Corp., as performance guarantor, and (ii) Melville Funding, LLC ("Melville" and, together with Broadhollow, the "Sellers") pursuant to that certain Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004, by and between Melville, as purchaser, American Home Mortgage Corp., as seller, American Home Mortgage Servicing, Inc. (as successor to Columbia National, Inc.), as servicer, and American Home Mortgage Investment Corp., as performance guarantor.

Pursuant to that certain Agreement, dated August 17, 2007, the Swap Providers listed on Schedule IA and IB thereto, either individually, jointly or through a special purpose entity owned or controlled by one or more of the Swap Providers, shall perform due diligence regarding the Assets (defined below) and may submit a Qualified Bid for the Assets. In the event that the Servicer receives more than one Qualified Bid, the Servicer shall hold an auction on September 11, 2007 (the "Auction"). The Sale will be documented in the asset purchase agreements (the "Purchase Agreements"), between the Sellers and the Successful Bidder (defined below).

These Sale Procedures are subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (in which American Home Mortgage Holdings, Inc.'s and certain of its affiliates' (collectively, the "Debtors") jointly administered chapter 11 bankruptcy cases, Case No. 07-11047 (CSS), are pending).

1.    Assets to be Sold

The Servicer provides these Sale Procedures, whereby prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest and best offer for the Mortgage Loans. The Mortgage Loans (collectively, the "Assets") include approximately 5,700 mortgage loans with an aggregate balance of approximately $1.62 Billion. The Mortgage Loans consist of fixed rate, adjustable rate, balloon and interest only loans originated with full and alternative documentation. The Assets shall not include any "predatory", "state high cost" or otherwise ineligible loans.

2.    Access to Information

The Servicer shall afford each Qualified Bidder reasonable due diligence information. Information relevant to the Assets for evaluation by interested parties, including certain books

16

and records, material contracts, and other financial information for due diligence investigation shall be made available on the Debtors' [Intralinks] website to any bidders who have executed a valid nondisclosure agreement. No later than September 1, 2007, the Debtors will designate three categories of Mortgage Loans for each Seller which are, as of close of business on August 31, 2007, a) performing Mortgage Loans which conform to the guidelines of Fannie Mae, Freddie Mac and CitiMac (collectively, the "Agency Eligible Performing Loans"), b) performing Mortgage Loans which do not conform to the guidelines of Fannie Mae, Freddie Mac and CitiMac (collectively, the "Non-Agency Eligible Performing Loans"), and c) delinquent or defaulted Mortgage Loans (collectively, the "Non-Performing Loans"). To obtain a copy of a non-disclosure agreement, contact [Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000]. Specific information for accessing the information will be provided after execution of such agreements.

The diligence period will take place from August 14, 2007 to September 9, 2007. The Servicer will coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders (defined below).

3.    Bid Deadline

All Bids (as defined below) must be submitted in writing so that they are **actually** received no later that 12:00 NOON (Eastern time) on **September 10, 2007** (the "Bid Deadline"). Each Qualified Bidder (as defined below) must deliver copies of its Bid to: (a) Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000, **with copies to:** (i) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Alan Horn, General Counsel), (ii) Young, Conaway, Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391 (Attn.: James L. Patton, Jr.), counsel to the Debtors; (b) counsel to the Official Committee of Unsecured Creditors (the "Committee"); and (c) Deutsche Bank Trust Company Americas, as Indenture Trustee (the "Indenture Trustee"), under that certain Broadhollow Base Indenture, dated May 27, 2004 and that certain Melville Base Indenture, dated May 27, 2004, 60 Wall Street, MS NYC60-2606, New York, NY 10005, Attn.: Structured Finance.

Interested bidders requesting information about the qualification process, and information in connection with their due diligence, should contact Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington DC 20006 (Attn.: Gene S. Weil) Telephone: (202) 367-3000.

4.    Bid Requirements

Formal, binding, unconditional bids (each, a "Bid") must contain: (a) executed versions of the sale agreements in the form of the agreements annexed hereto as **Exhibit A-1** and **A-2**; (b) a letter setting forth the identity of the bidder (including an authorized representative thereof), such bidder's counsel, and contact information for such bidder, its authorized representative and its counsel; (c) a proposal to purchase all of the Assets, provided, however, that the proposal shall identify separate purchase prices for each of the

17

following categories: (i) Broadhollow Agency Eligible Performing Loans, (ii) Melville Agency Eligible Performing Loans, (iii) Broadhollow Non-Agency Eligible Performing Loans, (iv) Melville Non-Agency Eligible Performing Loans, (v) Broadhollow Non-Performing Loans, and (vi) Melville Non-Performing Loans; (d) written evidence of a commitment for financing or other evidence of the bidder's financial ability to consummate the Sale (in a form satisfactory to the Servicer in its reasonable discretion); (e) written acknowledgement that such bid is unconditional and not contingent upon any event, including, without limitation, any due diligence investigation, the receipt of financing or any further bidding approval; (f) written evidence that the bidder has the requisite corporate or similar authority to consummate the investment or sale; and (g) such other information as the Sellers or the Servicer may request. Bids that contain the foregoing shall be "Qualified Bids." Persons that comply with the foregoing shall be "Qualified Bidders."

5.    One Qualifying Bid Received

If only one timely, conforming Qualifying Bid is submitted by the Bid Deadline, the Servicer shall not hold an Auction and instead shall close the Sale of the Assets with the party submitting the Qualifying Bid.

6.    Auction

If two or more timely, conforming Qualified Bids are received, the Servicer will conduct an auction (the "Auction"). The Auction will take place on **September 11, 2007** at the offices of Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 at 10 a.m. (ET) or such later time or other place as the Servicer shall notify the Swap Providers and the Qualified Bidders.

7.    Auction Procedures

Only the parties who have submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of the Swap Providers, the authorized representatives of each of the Qualified Bidders, counsel to the Debtors, counsel to the Committee, counsel to the Indenture Trustee, and the Sellers (collectively, the "Auction Participants") shall be permitted to attend the Auction. At the Auction, the Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the highest and best Qualified Bid as disclosed to all Qualified Bidders prior to the commencement of the Auction, and continue in increments to be determined by the Servicer, in its reasonable business judgment. The highest and best Qualified Bid shall be determined by the Servicer in its discretion.

The Servicer will announce the principal terms and conditions of or provide copies of each Qualified Bid submitted by the Qualified Bidders to the Swap Providers and the Qualified Bidders at or prior to the Auction. The Servicer will, from time to time, advise the Auction Participants of its determination as to the terms of the then highest and/or best Qualified Bid. In evaluating the Qualified Bids, the Servicer shall consider, among other things, the following: (a) the amount of the proposed purchase price; (b) the valuation of the Assets; (c)

the ability to close the transaction; and (d) the speed and certainty of consummating the transaction.  The Auction shall continue until there is only one Qualified Bid that the Servicer determines in its reasonable business judgment, is the highest and best Qualified Bid.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-existing highest Qualified Bid. After each Qualified Bidder has been given the opportunity to submit an overbid, the highest and best Qualified Bid (the "Succ essful Bid") and the bidder making such Bid (the "Successful Bidder") and the next highest and best Qualified Bid (the " Second Best Bid") and the bidder making such Bid (the "Second Best Bidder") shall be identified and the Auction shall be closed. The Servicer shall not consider any bids submitted after the conclusion of the Auction.

8.     Acceptance of the Sale; Closing

The Sellers shall have accepted a Qualified Bid only when (a) the Bid is declared the Successful Bid, (b) definitive documentation has been executed in respect thereof, and (c) the Sale closes.  The closing of the Sale with the Successful Bidder shall occur at 10:00 a.m. (ET) on September 12, 2007.  In the event that the Successful Bidder does not close before 2:00 p.m. (ET) on September 12, 2007, the Sellers shall close with the Second Best Bidder at 10:00 a.m. (ET) on September 13, 2007.

19

## EXHIBIT C

**Notice of Auction**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                          :  Chapter 11
                                                                :
AMERICAN HOME MORTGAGE                                          :  Case No.  07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,                 :
                                                                :  Jointly Administered
            Debtors.                                            x
---------------------------------------------------------------- 

## NOTICE OF AUCTION

**PLEASE TAKE NOTICE** that on August 16, 2007, the above-captioned debtors and debtors in possession (collectively, the "Debtors"),[1] filed the Emergency Motion of the Debtors for Entry of Orders (A)(I) Authorizing  Debtors to Enter Into and Perform Under Auction Procedures Agreement; (II) Approving Sale Procedures In Connection With the Sale of Certain Assets of Non-Debtors Broadhollow Funding, LLC And Melville Funding, LLC; (III) Approving the Form of Notice of Auction; and (IV) Approving the Sale to the Successful Bidder (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on August __, 2007, the Bankruptcy Court entered an order (the "Sale Procedures Order") granting the Motion and (i) authorizing the Debtors to enter into and perform under that certain Agreement, dated August 16, 2007 (the "Auction Procedures Agreement"), by and between Broadhollow Funding, LLC, ("Broadhollow"), a non-Debtor affiliate of the Debtors, Melville Funding, LLC ("Melville"), a non-Debtor affiliate of the Debtors, AHM Corp., AHM Investment, AHM Servicing, and the swap providers listed on Schedules IA and IB thereto (collectively, the "Swap Providers"); (ii) approving the sale procedures with respect to the proposed sale (the "Sale") of the Assets (the "Sale Procedures"); (iii) approving the form of this notice of auction (the "Auction") for the Assets; and (iv) approving the Sale to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the terms of the Order, the Auction shall take place on **September [11], 2007, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19899.  Only parties that have submitted a Qualified Bid (as defined in the Bid Procedures attached to the Order) by no later than **September [10], 2007 at 12:00 p.m. (Eastern Time)** (the "Bid Deadline") may participate in the Auction.  Any party that wishes to take part in this process and submit a bid for the Assets must submit a Qualified Bid prior to Bid Deadline and in accordance with the Sale Procedures.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Auction is subject to the fuller terms and conditions of the Motion, the Sale Procedures Order and the Sale Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety.  Copies of the Sale Motion, the Purchase Agreements, the Sale Procedures and/or the Sale Procedures Order may be obtained by written request to counsel to the Debtors, c/o Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391, Attention: Debbie Laskin.  In addition, copies of the aforementioned pleadings may be found on the on

---

[1]    The Debtors are:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

the website of the Debtors' notice and claims agent, Epiq Systems - Bankruptcy Solutions LLC, at http://www.epiqbankruptcysolutions.com, the Bankruptcy Court's website, www.deb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 Market Street, Wilmington, Delaware 19801.

Dated:    Wilmington, Delaware
          August __, 2007

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              _____
                              James L. Patton, Jr. (No. 2202)
                              Joel A. Waite (No. 2925)
                              Pauline K. Morgan (No. 3650)
                              Sean M. Beach (No. 4070)
                              Matthew B. Lunn (No. 4119)
                              Kara Hammond Coyle (No. 4410)
                              Kenneth J. Enos (No. 4544)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253


                              Proposed Counsel for Debtors and
                              Debtors in Possession