# EXHIBIT A

**Siegfried Affidavit**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------  x
In re:                                        :    Chapter 11
                                              :
AMERICAN HOME MORTGAGE                        :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,¹ :
                                              :    Jointly Administered
                                              :
                       Debtors.               :
-------------------------------------------------------------------  x
```

**AFFIDAVIT OF ROBERT SIEGFRIED IN SUPPORT OF THE
APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO
EMPLOY AND RETAIN KEKST AND COMPANY INCORPORATED
AS CORPORATE COMMUNICATIONS ADVISOR PURSUANT TO
11 U.S.C. §§ 327(a) AND 328(a), *NUNC PRO TUNC* TO THE PETITION DATE**

```
STATE OF NEW YORK          )
                           )    ss.
COUNTY OF NEW YORK         )
```

Robert Siegfried, being duly sworn, deposes and says:

1.      I am an employee and shareholder of Kekst and Company Incorporated

("Kekst"), corporate communications consultants and advisors, with offices located at 437

Madison Avenue, New York, NY 10022-7037, and I have been authorized to make this Affidavit

on behalf of Kekst (the "Affidavit"). I submit this Affidavit in accordance with sections 327(a)

and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") in support of the

application (the "Application") of the above captioned debtors and debtors-in-possession

(collectively, the "Debtors") for an order pursuant to sections 327(a) and 328(a) of the

---

¹       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Bankruptcy Code authorizing the Debtors to retain and employ Kekst as corporate

communications advisor, *nunc pro tunc* to the Petition Date.  Except as otherwise noted, I have

personal knowledge of the matters set forth herein.

## KEKST'S PROFESSIONAL QUALIFICATIONS

2.      Founded in 1970, Kekst is a corporate communications consulting firm

that has extensive experience in crisis communications involving matters such as transactions,

bankruptcies, restructurings and reorganizations, and it has an excellent reputation for the

services it has rendered in chapter 11 cases on behalf of debtors throughout the United States.

Representative of the Kekst's chapter 11 engagements are Delta Air Lines, Inc.; Allied Holdings,

Inc.; Winn-Dixie Stores, Inc.; Pegasus Satellite Communications, Inc.; Loral Space &

Communications; Fibermark, Inc.; Polaroid Corporation; Factory 2-U Stores, Inc.; Kmart

Corporation; Pacific Gas & Electric; Owens Corning; and R.H. Macy & Co.

## KEKST'S RELATIONSHIP WITH THE DEBTORS

3.      On July 31, 2007, the Debtors engaged Kekst to provide corporate and

crisis communications services.  In the short time in which Kekst has been engaged, and in large

part due to the emergent nature of these cases, Kekst's professionals have worked closely with

the Debtors' management team and the Debtors' other professionals and have become well

acquainted with the Debtors' operations and businesses.

## DISINTERESTEDNESS OF PROFESSIONALS

4.      In preparing this Affidavit, I caused to be reviewed a list of the significant

parties-in-interest provided to Kekst by the Debtors.

5.      My review of a list of the significant parties-in-interest provided to Kekst

by the Debtors consisted of queries of a list of current and certain former clients of Kekst in

2

order to identify potential relationships.  A summary of such relationships is attached hereto as Schedule 1.

6.      Except as set forth above and in Schedule 1, which is incorporated herein by reference, to the best of my knowledge, no services have been provided to these creditors or potential parties-in-interest which relate to the Debtors or these chapter 11 cases.

7.      The Debtors have many creditors.  From time to time, Kekst may perform or may have performed services for, or maintained other commercial or professional relationships with, certain creditors of the Debtors and various other parties adverse to the Debtors, in each case in matters unrelated to these cases.

8.      Based on the results of the conflicts search conducted to date, to the best of my knowledge, neither Kekst, nor any principal or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors, its creditors, equity holders, or any other parties-in-interest (as reasonably known to Kekst) or their respective attorneys and accountants, or the United States Trustees, or any person employed in the office of the United States Trustee, except as disclosed herein or otherwise set forth in Schedule 1.

9.      To the best of my knowledge, information and belief, Kekst has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases.  If Kekst's proposed retention by the Debtors is approved by this Court, Kekst will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases.

10.     To the best of my knowledge, Kekst is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code,  in that, Kekst (and its officers and employees):

DB02:6163588.2                                                          066585.1001

(a)     is not a creditor, equity security holder or an insider of the Debtors;

(b)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtors; and

(c)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship with, or interest in, the Debtors or for any other reason.

11.     To the best of my knowledge, Kekst has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases. To the best of my knowledge and belief, no Kekst principal is a holder of any shares of the Debtors' stock.

12.     Kekst will periodically review its files during the pendency of the chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Kekst will use reasonable efforts to identify such further developments and will promptly amend this Affidavit to the extent that further disclosure is required.

## PROFESSIONAL SERVICES COMPENSATION

13.     Pursuant to the Engagement Letter dated July 30, 2007 (the "Engagement Letter"), which is attached to the Application as Exhibit B, Kekst will serve as corporate communications advisor in the course of the chapter 11 cases, which generally includes advising the Debtors on public relations and corporate communications issues and providing communications services the ("Corporate Communications Services"). All of the services Kekst will provide to the Debtors will be (i) at the request of the Debtors, (ii) appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in these cases, and (iii) performed in accordance with applicable standards of the corporate communications and public relations industry.

4

14.     Kekst will carry out specific functions and will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

15.     Kekst has agreed to represent the Debtors and charge its standard hourly rates for its services. Fees in connection with this engagement will be based upon the time necessarily spent in providing the Corporate Communications Services, multiplied by our standard hourly rates.

16.     The current standard hourly rates charged by Kekst personnel involved in this matter are as follows:

| | |
|---|---|
| Senior Partners: | $600 to $875 |
| Partners: | $425 to $600 |
| Senior Associates: | $375 to $425 |
| Associates/Analysts: | $200 to $325 |

These hourly rates are increased annually.

17.     In addition to the fees outlined above, Kekst will bill the Debtors for reasonable out of pocket expenses and other charges, which are likely to include airfare, meals and hotel accommodations, telephone and other communications charges, press release distribution, research, duplicating and printing, and reasonable professional fees and disbursements incurred by Kekst. Kekst will bill for such reasonable expense in accordance with its standard practices, which may be periodically updated.

18.     Kekst intends to apply to the Court for payment of compensation and reimbursement of expenses and payment of other charges in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, the District of Delaware Local Bankruptcy Rules, and orders of this Court.

5

19.    As more fully set forth in the Engagement Letter, Kekst has received a non-refundable minimum fee in the amount of $50,000 (the "Kekst Fee") in connection with prepetition services rendered to the Debtors and for the proposed post-petition representation of the Debtors with respect to these cases. Kekst's charges for services will be applied against the Kekst Fee, with any charges in excess of the Kekst Fee billed separately.

20.    Pursuant to section 504 of the Bankruptcy Code, no commitments have been made or received by Kekst, nor any principal or employee thereof as to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Kekst has no agreement with any other entity to share with such entity any compensation received by Kekst in connection with these chapter 11 cases.

Executed on _August 17_ , 2007

_____
Robert Siegfried

Subscribed and Sworn to before me
this _17th_ day of August, 2007.

_____
Notary Public
My Commission expires: _____

FRANCES IVELISSE LOPEZ
Notary Public, State of New York
No. 01LO6088549
Qualified in Richmond County
Commission Expires 03/03/20 10

## SCHEDULE 1

| Current and Former Unrelated Clients |
|---|
| Bear Stearns & Company |
| Credit Suisse |
| EMC Corporation |
| Goldman Sachs and Co. |
| Indymac Bank F.S.B. |
| Lehman Bros. |
| Luminent Capital |

066585.1001

## EXHIBIT B

**Engagement Agreement**

# KEKST AND COMPANY

GERSHON KEKST
LAWRENCE A. RAND
JAMES N. FINGEROTH
ROBERT E. SIEGFRIED
JEFFREY Z. TAUFIELD
FREDERIC S SPAR
LISSA PERLMAN
ROANNE M. KULAKOFF
THOMAS J. DAVIES
RUTH E PACHMAN
ROY H. WINNICK
DAWN DOVER
MICHAEL FREITAG
THOMAS F FOGARTY
WENDI A. KOPSICK
ADAM WEINER
MARK A. SEMER
CAROLINE N. CENTILE
VICTORIA A. WELD
ERIC A. BERMAN
MICHAEL D. FERLEY
MICHAL CHAFETS
MOLLY A. MORSE
ANDREA E. CALISE
JEREMY FIELDING
KIMBERLY KRIGER
DAVID A. LILLY
JOSEPH Y. KUO
MICHELINE S. TANG
M. LIN-HUA WU

TEL 212 521-4800
FAX 212 521-4900

July 30, 2007

Mr. Michael Strauss
Chief Executive Officer
American Home Mortgage Investment Corporation
538 Broadhollow Road
Melville, NY 11747

Dear Mr. Strauss:

This letter will confirm our agreement that:

1.  American Home Mortgage Investment Corporation (the "Company") has
    retained Kekst and Company Incorporated ("Kekst") as corporate
    communications counsel.

2.  This agreement is effective July 30, 2007. Kekst's minimum nonrefundable
    fee is $50,000.00 (payable in full at the time the Company countersigns this
    agreement below). Kekst's charges for services will be applied against this
    fee and will be determined in accordance with standard billing practices
    taking into account such factors as extraordinary efforts and special expertise
    required. Charges in excess of the fee will be billed separately. In addition,
    out-of-pocket expenses and other charges are billed in accordance with
    Kekst's standard policies, described in the enclosed summary which may be
    periodically updated.

3.  The Company will indemnify and hold harmless Kekst, its officers, directors,
    employees, and agents from and against any and all losses, claims, damages,

*more...*

*Mr. Michael Strauss*
*July 30, 2007*
*Page Two*

liabilities, costs and expenses (including, but not limited to, reasonable attorney's fees and disbursements) which Kekst or any of the foregoing persons may be subject to or incur at any time (notwithstanding the termination of this agreement) in connection with the services rendered or to be rendered by Kekst to the Company (including, but not limited to, those arising from or out of its or their reliance upon or use of any information, documents, representations, reports or data furnished or prepared by the Company and those arising from or out of any need to produce documents or give testimony at any time arising out of the services rendered or to be rendered by Kekst to the Company).

4.  A minimum nonrefundable fee of $50,000.00 will be billed to the Company on each anniversary date of this contract unless either party provides the other written 90-day termination notice.

Please countersign and return the enclosed copy, whereupon this letter will constitute an agreement between the Company and Kekst.

Sincerely,

KEKST AND COMPANY INCORPORATED

BY: _____
Gershon Kekst, President

AGREED:    AMERICAN HOME MORTGAGE INVESTMENT CORPORATION

BY: _____
~~Michael Strauss, Chief Executive Officer~~
AbnHorn, EVP

**KEKST AND COMPANY, INCORPORATED**
**Policy Statement Concerning Charges and Disbursements**
**Dated: October 1, 2003**

Kekst and Company, Incorporated ("Kekst") bills clients for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for direct out-of-pocket expenses at actual cost to Kekst, and are charged for certain internal support services as described below.

---

**I. Travel-Related Expenses.** Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, meals, car rental, taxi or car service, tips and other reasonable miscellaneous costs associated with travel. For arrangements made by Kekst's travel agent, their fee charged to Kekst is passed on to the client.

Local travel charges include commercial transportation and, when a private car is used, mileage, tolls and parking. Specific policies govern how and when a client is charged for these expenses. These include:

- Fares for commercial transportation (e.g., car service, taxi, rail) are billed at actual cost. The charge for private car usage is the IRS rate allowance per mile (or the equivalent outside the United States) plus the actual cost of tolls and parking.

- Round-trip transportation to the office may be charged for employees who work weekends or holidays. On weekdays, transportation to and from the office may be charged when an employee is required to be in the office before or after certain hours (as determined in accordance with Kekst and Company policy).

**II. Secretarial Services.** Secretarial services during normal business hours are not charged to clients. Secretarial overtime is charged to clients at $50 per hour.

**III. Postage and Courier Services.** Outside messenger and express carrier services are billed at actual cost to Kekst. Postage is charged at actual mail rates.

**IV. Meals.** Business meals with a client are charged at actual cost. Meals for professional employees working past 8 p.m. on a weekday are charged at actual cost.

When overtime, weekend or holiday work is required, clients are charged for the actual cost of a professional employee's meal and, for part and full-time support staff, a standard amount as determined by Kekst policy.

**V. Press Releases.** Press release distribution costs are billed at actual cost.

**VI. Research Services.** Charges for use of on-line computerized research (e.g. LexisNexis) and use of outside research services and materials are billed at the actual amounts charged by vendors, which have been reduced by discounts Kekst receives from vendors.

**VII. Other Disbursements.** Certain other major disbursements incurred in connection with an engagement will be paid directly by the client. Disbursements which are incurred and paid for by Kekst will be charged to the client at actual cost to Kekst.

**VIII. Certain Internal Support Services.** Clients are charged for the following internal support services: telecommunications, subscriptions, photocopying, news services and information technology. Such charges are estimated for the full year based on the prior year's actual costs (including, in the case of photocopying and news services, a portion of compensation expenses for employees principally engaged in performing such support services), and are allocated to clients monthly based on a formula related to the number of hours billed to the client in the particular month.