IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ------------------------------------------------------------------ x<br>In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation, et al.,[1]<br><br>Debtors.<br>------------------------------------------------------------------ x | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>Hearing Date: September 4, 2007 at 11:00 a.m.<br>Objection Deadline: August 27, 2007 at 4:00 p.m. |

**FIRST MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105, 365 AND 554 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6006 AND 6007, AUTHORIZING THE DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES AND TO ABANDON CERTAIN FURNITURE, FIXTURES, AND EQUIPMENT**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby move the Court (the "Motion"), pursuant to sections 105(a), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing the Debtors to reject certain unexpired leases[2] identified on Exhibit A (the "Unexpired Leases") and abandon any remaining property including, but not limited to furniture, fixtures and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] Certain landlords identified on Exhibit A in this Motion may have been served with copies of the Motion for an Order Pursuant to Sections 105, 363, 365, and 554 of the Bankruptcy Code, Establishing Procedures for the (I) Assumption and Assignment of Real Property Leases and/or Other Executory Contracts and (II) Sale or Abandonment of Furniture, Fixture, and Equipment Located Therein ("Assumption and Assigment Motion") [Docket No. 183]. Exhibit A to the Assumption and Assignment Motion was incorrect as initially filed and served. See [Docket No. 190]. The Unexpired Leases listed on Exhibit A hereto shall be rejected pursuant to this Motion, not governed by the Assumption and Assignment Motion.

equipment (the "FF&E").[3]  In support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF CASE AND JURISDICTION

1. On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007. No trustee or examiner has been appointed.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 365(a) and 554(a) of the Bankruptcy Code, along with Rules 6006, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND OF DEBTORS

4. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and

---

[3] The Debtors submit that they have been and will continue to take steps to collect and preserve any personally identifiable information located in the Unexpired Lease premises consistent with applicable consumer privacy laws prior to any rejection or assignment. To that end, the Debtors are in the process of engaging a firm to collect and preserve confidential consumer information prior to the effective date of abandonment. Accordingly, the Debtors believe that a consumer privacy ombudsman is not required for the relief requested in this Motion.

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

5. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

6. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

7. Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing

default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

8. The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

9. In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

10. On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

11. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors now employ approximately 1000 persons

who are absolutely essential to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

12. In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

13. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELIEF REQUESTED

14. By this Motion, the Debtors respectfully request the entry of an order authorizing the rejection of the Unexpired Leases identified on Exhibit A attached hereto[4] pursuant to sections 105(a), 365(a), and 554(a) of the Bankruptcy Code, effective as of the date listed on Exhibit A under the column "Effective Date of Rejection" (the "Effective Date of Rejection").

## BASIS FOR RELIEF REQUESTED

15. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see also University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992). The Court may approve a debtor's rejection of an executory contract

---

[4] A description of each of the Unexpired Leases is included on Exhibit A.

or unexpired lease if such rejection is made in the exercise of such debtor's sound business judgment, and if such rejection benefits its estate. See e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); NLRB v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); In re Patterson, 119 B.R. 59 (E.D. Pa. 1990). See also, In re Federated Dep't. Stores, Inc., 131 B.R. 808, 811 (S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in determining whether to authorize the rejection of executory contracts and unexpired leases"); Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("[u]nder the business judgment test, . . . [a court should approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will benefit the estate"). It is enough if a debtor determines in its business judgment that a benefit will be realized. Sharon Steel Corp., 872 F.2d at 39 (citing Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)). The business judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith, whim or caprice. Lubrizol Enter., Inc. v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

    16. As an integral component of the Debtors' efforts to maximize value for their estates and creditors by, among other things, eliminating unnecessary operating costs, the Debtors have determined that it is in their best business interest to avoid the accrual of any further obligations under the Unexpired Leases. The Debtors have reviewed the Unexpired Leases and determined that they hold no material economic value as to the Debtors or their estates. Moreover, the Unexpired Leases are not essential to the conduct of the Debtors' bankruptcy cases. The rejection of the Unexpired Leases will eliminate the Debtors' obligation

6

to perform and the accrual of any further obligations thereunder under the Unexpired Leases.[5] Therefore, the Unexpired Leases will simply reflect ongoing expenses to the Debtors and their estates. The Debtors request that this Court approve the rejection of the Unexpired Leases effective as of the date listed on Exhibit A under the column "Effective Date of Rejection."

17. Bankruptcy courts are empowered to grant retroactive rejection of executory contracts and unexpired leases under sections 105(a) and 365(a) of the Bankruptcy Code. See e.g., Thinking Machines Corp. v. Mellon Fin. Serv. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995) (recognizing that bankruptcy courts are courts of equity that may enter orders authorizing retroactive rejection); In re Amber's Stores, Inc., 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (same).

18. This Court has previously considered the question of retroactive rejection of leases. See In re TW, Inc., 2004 U.S. Dist. LEXIS 671 (D. Del. Jan. 14, 2004) (Robinson, J.) (holding that a bankruptcy court may "when principles of equity so dictate ... approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date"); In re Chi-Chi's, Inc., 305 B.R. 396 (Bank. D. Del. 2004) (Case, J.); see also In re Namco Cybertainment, Inc., Case No. 98-173 (Bankr. D. Del. 1998) (Walsh, J.). In both In re TW, Inc. and In re Chi-Chi's, Inc., the courts placed heavy emphasis on whether the leased premises were properly surrendered by the debtor. In In re Namco Cybertainment, this Court permitted retroactive rejection on the condition that (a) the premises (and the keys thereto) are surrendered with an *unequivocal* statement of abandonment to the landlord; (b) the motion was filed and

---

[5] The Debtors do not concede that any of the Unexpired Leases are, in fact, unexpired. The Debtors also reserve their rights to argue that any claim for damages arising from the rejection of the Unexpired Leases is limited to the remedies available under any applicable termination provision of such Unexpired Lease, or that any such claim is an obligation of a third party, and not that of the Debtors.

7

served on the landlord; and (c) the debtor acknowledged that it would not have the right to withdraw the motion.

19.     The Debtors have satisfied the criteria for retroactive rejection. By the filing of this Motion, the Debtors are informing the parties that the Debtors are unequivocally surrendering the premises as of the Effective Date of Rejection listed on Exhibit A. To the extent that any keys are currently in the possession of the Debtors, such keys shall be surrendered to the respective landlords on or prior to the Effective Date of Rejection. Second, the Debtors will serve this Motion upon all affected parties listed on Exhibit A. Third, the Debtors hereby acknowledge that they will not have the right to withdraw the Motion after the Effective Date of Rejection.[6]

20.     In the event that there is any remaining FF&E left at the premises of the Unexpired Leases after the Effective Date of Rejection, the Debtors request authority to abandon such FF&E. Section 554 of the Bankruptcy Code provides that: "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554.

21.     The Debtors propose to abandon the FF&E at the premises of the Unexpired Leases because it would be more cost-effective to do so than to transport, store, and sell the FF&E, which has little value. As a result, the decision to reject the Unexpired Leases and abandon the FF&E located in such premises is supported by the Debtors' sound business judgment and is in the best interests of their estates, creditors, and other parties-in-interest. For the reasons set forth above, the Debtors seek authorization, pursuant to sections 105(a), 365(a),

---

[6] Notwithstanding the fact that certain Unexpired Leases are listed on Exhibit A, the Debtors reserve the right to withdraw the motion with respect to certain Unexpired Leases up to and including the "Effective Date of Rejection" listed on Exhibit A for such Unexpired Leases. For any such Unexpired Leases with respect to which a notice of withdrawal has been filed up to and including the Effective Date of Rejection listed on Exhibit A for such Unexpired Leases, the Debtors further reserve the right to assume, assume and assign, or later reject such Unexpired Leases.

and 554(a) of the Bankruptcy Code, to reject the Unexpired Leases and abandon any FF&E remaining at such premises as of the Effective Date of Rejection.

## NOTICE

22.    Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iv) parties listed on Exhibit A; (v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto on <u>Exhibit B</u> (i) authorizing the Debtors to reject the Unexpired Leases listed on <u>Exhibit A</u> and (ii) authorizing, but not requiring, the Debtors to abandon certain FF&E at the premises of the Unexpired Leases listed on <u>Exhibit A</u>; and (iii) granting such other and further relief as this Court deems just and proper.

Dated:    Wilmington, Delaware
           August 17, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Travis Turner (No. 4926)*
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for Debtors and
Debtors in Possession

# **EXHIBIT A**

UNEXPIRED LEASES

**EXHIBIT A:  UNEXPIRED LEASES**

| Landlord Name | Landlord Address | Branch Name and Address | Effective Date of Rejection |
|---|---|---|---|
| Carnagie Management c/o Carr Realty | P.O. Box 644195<br>Pittsburgh, PA 15264-4195 | Westerville OH 2751<br>24048 Lorain Road / Lauren Hill Shopping Center / Store "1" | 31-Aug-07 |
| Churchill Square Shopping Center | c/o Breder Management Corporation<br>9861 SW 184th STreet<br>Miami, FL 33157 | Ocala FL 2886<br>303 S.E. 17th Street / Churchill Square Shopping Center / #302 | 31-Aug-07 |
| Circle 22 Investors LLC | c/o Hamilton Real Estate<br>4057 28th Street NW, Suite 200<br>Rochester, MN 55901 | Marina - Corporate Overhead<br>4041 28th Street Northwest | 31-Aug-07 |
| SMII/TRP Properties, LP c/o Transwestern Properties | 14180 Dallas Parkway Suite 305<br>Dallas, TX 75254 | Marina - Corporate Overhead<br>14160 Dallas Parkway / Pacific Center II / Suite 100 | 31-Aug-07 |
| Ralph S Perrone, Sr. | 585 N. Courtney Pkwy Suite 302<br>Merritt Island, FL 32953 | Merritt Island FL 2209<br>585 N. Courtney Pky / Suite 201 | 31-Aug-07 |
| 5-Star OR, LLC | 345 N. Yosemite Street, #B<br>Stockton, CA 95203 | 422 Main St.<br>Klamath Falls, OR | 31-Aug-07 |
| JG LLC | 5216 SW Burton Drive.<br>Portland, OR 97221 | 147 SW Shevlin Dixion Dr.<br>Bend, OR | 31-Aug-07 |
| CS Corporate Centre, LLC | 1902 W. Colorado Avenue, Suite B<br>Colorado Springs CO 80904 | 6760 Corporate Dr.<br>Colorado Springs, CO | 31-Aug-07 |
| Meadow Oaks Shopping Center | PO Box 8229 No.<br>14 Crossroads Shopping Village, Suite 201<br>Corpus Christi, TX 78412 | Marina - Corporate Overhead<br>2222 Airline Road / Suite B4<br>Corpus Christi, TX | 31-Aug-07 |
| Southcreek V Associates, L.P. | DDI Realty Services, Inc.<br>7200 West 132nd Street, Suite 300<br>Overland Park, KS 66213 | Marina - Corporate Overhead<br>12980 Metcalf Ave. / Suite 150 & 180 | 31-Aug-07 |
| Pat Wood | PO Box 1764<br>La Quinta, CA 92247 | Marina - Corporate Overhead<br>47-120 Dune Palms Road / Dune Palms Plaza / #B | 31-Aug-07 |
| GPI Office Properties II, L.P. | 3815 River Crossing Parkway<br>Suite 250<br>Indianapolis, IN 46240 | ABC Wholesale Indianapolis 3123<br>10291 N. Meridian Street / Suite 300 | 31-Aug-07 |
| One Rock Spring Plaza L.P. | PO Box 905442<br>Charlotte, NC 28290-5442 | Bethesda Rock Spring MD 2786<br>6550 Rock Spring Drive / Suite 105 | 31-Aug-07 |
| AAK, LLC | Abrams Development Group, Inc.<br>5850 Waterloo Rd., Suite 230<br>Columbia, MD 21045 | Columbia Gateway MD 203<br>6996 Columbia Gateway Drive /<br>Westridge Corporate Center / Building B | 31-Aug-07 |
| River Park Commons, LLC | 4612 Westridge Avenue<br>Fort Worth, TX 76116 | Marina - Corporate Overhead<br>2550 River Park Drive / Building No. 1 | 31-Aug-07 |
| A&B Properties, Inc.<br>(including Pylon Sign License Agreement) | c/o Reata Property Management<br>7330 San Pedro, Suite 710<br>San Antonio, TX 78216 | Marina - Corporate Overhead<br>7330 San Pedro / Suite 600 & 680 | 31-Aug-07 |

| Landlord Name | Landlord Address | Branch Name and Address | Effective Date of Rejection |
|---|---|---|---|
| Koury Corporation | 400 Four Seasons Town Centre<br>Greensboro, NC 27427 | Greensboro Friendly NC 2627<br>303 Pisgah Church Road / The Village at North Elm / 2nd Level | 31-Aug-07 |
| Landmark Office Center | 8659 Staples Mills Rd<br>Randall Hoine<br>Richmond, VA 23228 | Richmond Midlothian 1 VA 2678<br>8653 Staples Mill Rd. / Landmark Office Center | 31-Aug-07 |
| Mill Ridge Farm, LLC | 1 Mill Ridge Lane<br>Chester, NJ 07930 | Chester NJ 2812<br>1 Mill Ridge Lane / 1 Mill Ridge Lane | 31-Aug-07 |
| Washington Real Estate Investment Trust | P. O. Box 79555<br>Baltimore, MD 21279-0555 | Rockville MD 00217<br>600 Jefferson Street / Jefferson Plaza / Suite 206 | 31-Aug-07 |
| Gateway Center LLC | 1941 Momentum Place<br>Chicago, IL 60689-5319 | West Bloomfield MI 2718<br>7160 Orchard lake Road / Gateway Center / Suite H-2 | 31-Aug-07 |
| Principal Life Ins Co-007511 | Cascade II<br>PO Box 6113 / Property 007511<br>Hicksville, NY 11802-6113 | Worthington, OH 1625<br>150 E. Wilson Bridge Road / Suite 100 | 31-Aug-07 |
| The Cottage Apartments, LLC | P.O. Box 301118<br>Los Angeles, CA 90030-1118 | Concord Galaxy CA 2400<br>1140 Galaxy Way / Suite 150 | 31-Aug-07 |
| L G S Properties LLC | 2231 SW Wanamaker Road Suite 300<br>Topeka, KS 66614 | Topeka KS 2182<br>2231 SW Wamamaker Road / Schwerdt Design Building | 31-Aug-07 |
| Sun Life Assurance Company of Canada c/o Colliers Pinkard | 100 Light Street Site1400<br>Baltimore, MD 21202-1161 | Annapolis MD 1629<br>200 Harry S. Truman Parkway / 200 Harry S. Truman Parkway / Suite 100 | 31-Aug-07 |
| B R Brookfield Commons No. 2 | c/o CB Richard Ellis<br>Department 59880<br>Milwaukee, WI 53259-0880 | Brookfield WI 2780<br>15375 West Bulemound Road / Suite 100 | 31-Aug-07 |
| Met Life- Fairview Center | c/o CB Richard Ellis<br>P.O. Box 13470<br>Richmond, VA 23225 | Charlotte2 NC Ops 2 2846<br>6230 Fairview Road / Fairview Center / Suite 430 | 31-Aug-07 |
| The Prischak Family Partnership c/o Tecnicadev Corp. | 100 State St Suite B 100<br>Erie, PA 16507 | Erie PA 2758<br>100 State Street Condominium / Suite 102 | 31-Aug-07 |
| Brit-Fifty West, LLC c/o Jeffery Lee Cohen | 5410 Edson Lane Suite 200<br>Rockville, MD 20852 | Fairfax VA 1627<br>3975 Fair Ridge Drive / Fifty West Corporate Center / Suite 315 | 31-Aug-07 |
| East N. St. Assoc. LLC | 200 E. Broad St.<br>Greenville, SC 29601 | Greenville North SC 2772<br>703 E-N St | 31-Aug-07 |
| Hauppauge Woodlands Associates L.P. | 500 Bi-County Blvd. Suite 230<br>Farmingdale, NY 11735 | Hauppauge NY 53<br>700 Veterans Memorial Hwy / The Woodlands Office Park | 31-Aug-07 |
| Northville Retail Center Phase 2, L.L.C. | 28470 Thirteen Mile Road Suite 220<br>Farmington Hills, MI 48334 | Northville MI 2715<br>17908 Haggerty Road / Northville Retail Center Phase II | 31-Aug-07 |
| Boston Properties | PO Box 3557<br>Boston, MA 02241 | Waltham MA 44<br>1601 Trapelo Road / Reservoir Place II / 1st Floor | 31-Aug-07 |

| Landlord Name | Landlord Address | Branch Name and Address | Effective Date of Rejection |
|---|---|---|---|
| Taylor Investment Properties, L.L.C. | 110 Oakwood Drive Ste. 510<br>Winston-Salem, NC 27103 | Winston Salem Oakwood NC 2738<br>110 Oakwood Drive / 110 Oakwood Drive / Suite 100 | 31-Aug-07 |
| BRCP Aurora Marketplace, LLC | 3033 South Parker Road Suite 600<br>Aurora, CO 80014 | Aurora CO 2418<br>3033 South Parker Road / Tower I / Suite 450 | 31-Aug-07 |
| Northwest Corp Center | 7400 N. Oracle Rd Suite 338<br>Tuscon, AZ 85704-6342 | Tucson Oracle AZ 373<br>7400 North Oracle Road / Suite 115 | 31-Aug-07 |

NOTE: The Debtors do not concede that any of the prepetition Rejection Leases listed herein are, in fact, unexpired leases. The Debtors also reserve their rights to argue that any claim for damages arising from the rejection of any of the Rejection Leases is limited to the remedies.