## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al., | ) Case No. 07-11047 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) **Hearing Date: TBD** |
| | ) **Objection Deadline: TBD** |

## MOTION OF DB STRUCTURED PRODUCTS, INC. FOR RELIEF FROM THE AUTOMATIC STAY

DB Structured Products, Inc. ("DBSP"), by and through its undersigned counsel, and pursuant to the provisions of section 362(d)(1) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), hereby moves for the entry of an order modifying the automatic stay imposed under section 362 of the Bankruptcy Code to permit DBSP to complete the termination of that certain Master Mortgage Loan Purchase and Servicing Agreement dated as of May 1, 2006 (the "Agreement")[1], among American Home Mortgage Corp. as seller ("AHM Corp."), American Home Mortgage Servicing, Inc. as servicer (the "Servicer") and DBSP as initial purchaser. In support of the Motion, DBSP respectfully represents and alleges as follows:

### I. PRELIMINARY STATEMENT

1.    DBSP, AHM Corp. and the Servicer are parties to the Agreement,

---

[1] A copy of the Agreement is annexed as Exhibit "A" hereto. Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

A/72152993.5

pursuant to which DBSP has purchased mortgages from Seller with the express intention (explicitly acknowledged in the Agreement) of engaging in securitization transactions with respect to those mortgages. In order for DBSP to engage in such securitization transactions, however, Servicer must be an FNMA qualified servicer. Thus, it is not surprising that the Servicer's failure to be so qualified at any point in time creates an Event of Default under the Agreement. The Servicer lost its FNMA qualification before the commencement of its chapter 11 case and has not, to date, regained those credentials. As a result, DBSP has been and continues to be unable to securitize mortgages purchased pursuant to the Agreement and is suffering irremediable harm as a result. This is an injury that would not be remedied even if the Debtors were to now regain their FNMA qualifications. Indeed, because the harm resulting from these postpetition defaults cannot be remedied, the Agreement may not be assumed and assigned to a purchaser of the Debtors' servicing business.

2.  Prior to the Petition Date (as defined below) DBSP commenced procedures to terminate the Agreement, and now seeks relief from the stay to complete the termination. Cause exists to modify the automatic stay to permit DBSP to terminate the Agreement because: (1) there are material postpetition defaults under the Agreement that have imposed, and continue to impose, substantial economic risk upon DBSP; (2) DBSP's interest in the Agreement is not being adequately protected, and (3) the existing defaults and the resulting harm cannot be cured and the Agreement therefore may not be assumed and assigned to a third party.

## II. JURISDICTION

3.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

4.  The statutory basis for the relief requested herein is section 362(d)(1) of the Bankruptcy Code, as complemented by Bankruptcy Rules 4001((a) and 9014, and Local Rule 4001-1.

### III. BACKGROUND

**A. Procedural Background**

5.  On August 6, 2007 (the "Petition Date"), AHM Corp., the Servicer and certain of their affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Cases").

6.  The Cases are being jointly administered pursuant to an order of this Court entered on August 7, 2007.

7.  On August 7, 2007, this Court entered its *Order (I) Authorizing Debtors To Maintain And Use Existing Bank Accounts And Business Forms, (II) Authorizing The Debtors To Maintain And Use Existing Cash Management System, And (III) Extending The Debtors' Time To Comply With Section 345 Of The Bankruptcy Code* [Doc. No. 66], (the "Cash Management Order") which, among other things, authorizes and directs the Debtors to continue to perform servicing functions under mortgage servicing agreements.

8.  On August 8, 2007, this Court entered its *Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petitition Secured Parties and (III) Scheduling Final Hearing* [Doc. No. 68] (the "Cash Collateral Order"). The Cash Collateral Order, among other things, requires the Debtors to continue to perform mortgage loan servicing functions in the ordinary course.

9.  On August 9, 2007, this Court entered its *Order Approving (I) Sale*

*Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief* [Doc. No. 113] (the "Sales Procedures Order") establishing procedures for the sale of the Debtors' servicing business and providing, among other things, that an auction to sell that business shall take place on September 10, 2007.

**B. The Agreement and the Servicing Obligations**

10. Prior to the Petition Date, the Debtors engaged in the origination, sale and servicing of real estate mortgages.

11. DBSP, the Servicer and AHM Corp. are parties to the Agreement. The Agreement provides for the sale from time to time of mortgage loans to DBSP. In addition, the Agreement provides that the Servicer shall service the mortgages purchased by DBSP pursuant to the Servicing Addendum attached as Exhibit 8 to the Agreement (the "Servicing Addendum").

12. Pursuant to the Agreement and the Servicing Addendum, the Servicer is required, among other things, to: (a) collect payments on the underlying mortgages, follow such collection procedures as it would for mortgages held for its own account, including foreclosing on defaulted mortgages; (b) establish segregated custodial accounts to hold principal, interest payments, insurance and condemnation payments and other amounts in respect of the purchased mortgages; (c) establish segregated escrow accounts to hold amounts required to be escrowed; (d) maintain records on required payments such as tax assessments and insurance; and (e) distribute funds to DBSP from the custodial accounts and otherwise as required by the Agreement.

13. The Agreement and the rights and obligations of the Servicer may be

terminated by DBSP both upon the occurrence of an Event of Default and without cause. Section 14 of the Agreement provides that, upon the occurrence of an Event of Default, DBSP may terminate the rights and obligations of the Servicer under the Agreement. Agreement § 14, p. 58. In addition, DBSP may terminate the Servicer without cause upon payment to the Servicer of the fair market value of the servicing rights. Id. § 15.

14.    Section 15 of the Agreement requires the Servicer, upon written notice of termination, to execute documents, transfer mortgage files and to otherwise take all actions "necessary or appropriate to effect the purposes of such notice of termination." Id. § 15, p. 59. Further, the Servicer is obligated to cooperate with DBSP and any successor servicer "in effecting the termination of the Servicer's responsibilities and rights [] as servicer" including by transferring cash in custodial accounts and escrow accounts.

15.    DBSP purchased mortgages from AHM Corp. pursuant to the Agreement, and Servicer currently is the servicer for over $189 million in aggregate principal amount of mortgages purchased and held by DBSP.

16.    A financially critical aspect of DBSP's business and a principal commercial basis of its transactions with the Debtors is its ability to securitize the mortgages it purchases from the Debtors. Accordingly, DBSP's expectation that it would be able to securitize the purchased mortgages was an important factor in negotiating the terms of the Agreement and is acknowledged in the preamble paragraphs of the Agreement. Agreement, p.1.[2] As described below, due to pre- and post-petition defaults of the Servicer under the Agreement, DBSP is no

---

[2] The Agreement provides as follows: "Whereas, following its purchase of the Mortgage Loans from the Seller, the Purchaser desires to sell some or all of the Mortgage Loans to one or more purchasers as a Whole Loan Transfer or an Agency Transfer in a whole loan or participation format or a public or private mortgage-backed securities transaction." Agreement, p.1.

A/72152993.5                                    5

termination of the Servicer because: (1) there are material postpetition defaults under the Agreement that have caused, and continue to cause, substantial economic risk and loss to DBSP; (2) DBSP's interest in the Agreement is not being adequately protected; and (3) the existing defaults and the resulting harm cannot be cured and the Agreement therefore may not be assumed and assigned to a third party.

21. Section 362(d)(1) of the Bankruptcy Code provides that, "on request of a party in interest, and after notice and a hearing, the court *shall* grant relief" from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (emphasis added). Relief from the stay is available to unsecured as well as to secured creditors under section 362(d) and the bankruptcy court has broad discretion to lift the stay in "appropriate circumstances." Holtkamp v. Littlefield (Matter of Holtkamp), 669 F.2d 505, 508 (7th Cir. 1982). "The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause." In re Quad Systems Corp., No. 00-35667F, 2001 WL 1843379, * 7 (E.D. Pa. 2001). Moreover, "[t]he fact that the automatic stay suspends termination of [a contract] does not prevent termination indefinitely." In re Tudor Motor Lodge Assocs., Ltd. P'ship, 102 B.R. 936, 951 (Bankr. D. N.J. 1989). The movant must make an initial showing that it will be harmed by a continuation of the stay. See In re Cooper, 296 B.R. 410, 412 (Bankr. E.D. Va. 2002). Although the movant has the burden of proof regarding the debtor's lack of equity in the subject property, the Debtor has the burden of proof on all other issues, including whether the movant is adequately protected. See 11 U.S.C. § 362(g); In re Liona Corp., N.V., 68 B.R. 761, 766 (Bankr. E.D. Pa. 1987).

22. The existing material defaults under the Agreement, and the resulting

longer able to securitize the purchased mortgages and, as a result, is suffering irreparable and continuing harm that can not be remedied by any promise the Debtors may make to comply with the Agreement in the future or by assuming and assigning the Agreement to a party that can comply with its terms.

## C. The Continuing Defaults and Notice of Termination

17. There are continuing Events of Default that entitle DBSP, by the terms of the Agreement, to terminate the Servicer. Among other things, the failure by the Servicer to meet the qualifications of either a FNMA or FHLMC seller/servicer constitutes an Event of Default under the Agreement. Agreement § 14.01(vi).

18. On or about August 1, 2007, DBSP became aware that the Servicer was no longer qualified as a seller/servicer by FNMA. Due to regulatory restrictions, DBSP is not able to engage in securitizations of mortgages that are not serviced by a FNMA qualified seller/servicer. As a result, DBSP has not been able to securitize mortgages purchased pursuant to the Agreement after the Debtors ceased to be FNMA qualified.

19. On August 1, 2007, DBSP sent a Notice of Default and Termination to the Servicer terminating the Servicer, which stated as follows:

> DBSP hereby notifies the Servicer that, because the Servicer has failed to meet the qualifications of a FNMA seller/servicer, which failure constitutes and Event of Default pursuant to Subsection 14.01(vi) of the Agreement, the Servicer is hereby terminated as the servicer under the Agreement. This termination shall become effective as of DBSP's appointment of a successor servicer in accordance with section 16 of the Agreement.

## IV. DBSP IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY TO TERMINATE THE SERVICER

20. There is cause to modify the automatic stay to permit DBSP to effect the

irreparable harm suffered by DBSP, constitute sufficient cause to lift the stay to permit DBSP to terminate the Servicer. The Agreement is currently in default because, among other things, the Servicer is not a FNMA qualified seller/servicer. This default has not been remedied postpetition, nor is there any assurance that this default will be remedied in a timely fashion. Even if the Servicer could become qualified in the future, DBSP has suffered, and continues to suffer, irreparable harm as a result of this default. For so long as the Servicer is not FNMA qualified, DBSP cannot securitize the mortgages purchased under the Agreement. As a result, DBSP has been forced to retain these mortgages at substantial monetary risk and probable loss, which cannot now be remedied by the Servicer becoming FNMA qualified in the future. As set forth in the preamble paragraphs of the Agreement, the Servicer and AHM Corp. were aware that DBSP purchased the mortgages with the intention of engaging in mortgage-backed securities transactions and DBSP has been deprived of the benefit of its bargain by the Debtors' failure to perform under the Agreement.

23. Courts have granted relief from the automatic stay to allow non-debtor parties to terminate contracts that were terminable according to their terms. In Commonwealth Mortgage, for example, the bankruptcy court granted relief from the stay to the non-debtor party to a mortgage servicing agreement to terminate that agreement based on the non-debtor's "absolute right to terminate the Servicing Agreement without cause," which right "is valid and enforceable in bankruptcy." In re Commonwealth Mortgage Co., Inc., 149 B.R. 4, 8-9 (Bankr. D. Mass. 1992).

24. In addition, postpetition defaults constitute adequate cause to permit termination of a contract where such defaults are causing material harm to the non-debtor party. In re Consol. Indus. Corp., 330 B.R. 227, 231-33 (Bankr. N.D. Ind. 2001) (granting relief from

stay to permit non-debtor to cancel insurance policy where debtor was in postpetition breach of obligation to pay self-insured retention and certain other costs, which default "deprived [non-debtor] of a substantial benefit of its bargain", and non-debtor's losses as a result of the debtor's bankruptcy were increasing rather than remaining static); In re Deppe, 110 B.R. 898, 904 (Bankr. D. Minn. 1990) (granting relief from stay where debtor's property had "gone dark" in violation of contract and court determined that resulting harm could not be remedied by recommencing operations in accordance with contract); Tudor Motor Lodge, 102 B.R. at 955 (granting relief from stay to authorize termination of license agreement where non-monetary post-petition defaults relating to debtor's failure to adhere to required franchisor standards materially harmed the non-debtor franchisor's economic and business interests). Here, too, DBSP has suffered, and continues to suffer, substantial harm due to the Debtors' ongoing defaults under the agreement which can not be remedied by future compliance with the agreement. Cf. Matter of Indep. Mgmt. Assocs., Inc., 108 B.R. 456, 463-64 (Bankr. D. N.J. 1989) (relief from stay not granted where non-debtor was concerned primarily with payment defaults). The purpose of the automatic stay is to maintain the status quo, but in contrast, DBSP is suffering continuing and increased economic risk and loss due to the Debtors' failure to comply with the Agreement. See Consol. Indus., 330 B.R. at 234 ("a creditor's potential losses should not increase during a bankruptcy proceeding, but should, instead be fixed as of the date of the petition").

25. The Debtors are not providing any protection, adequate or otherwise, to compensate DBSP for the continuing risk and loss arising from the Servicer's failure to comply with the FNMA qualification requirement of the Agreement. See Tudor Motor Lodge, 102 B.R. at 954 ("[t]he responsibility of proposing a method of adequate protection is reserved exclusively for the debtor"). For the reasons stated below, the Debtors' intention to sell their mortgage

servicing business and to assume and assign their servicing contracts in accordance with the Sales Procedures Order does not constitute adequate protection of DBSP's interest in the Agreement nor does it otherwise satisfy the Debtors' burden under section 362(d). Even if future compliance could "cure" the existing default, which it cannot, the Debtors have provided no indication that the Servicer will be FNMA qualified in the near future.

26.     Finally, because the harm suffered by DBSP can not be remedied by the Servicer becoming FNMA qualified in the future or by assuming and assigning the Agreement to a FNMA qualified party, the Agreement cannot be assumed and assigned as the Debtors apparently intend. This also constitutes sufficient cause to permit DBSP to effect the termination of the Agreement. Like the non-debtor parties in Tudor Motor Lodge and Deppe, the financial harm to DBSP has already occurred by preventing DBSP from securitizing the purchased mortgages. Because the non-monetary defaults cannot be cured, the Agreement cannot be assumed and assigned to a prospective purchaser without DBSP's consent. See 11 U.S.C. § 365(b)(1). See, e.g., Deppe, 110 B.R. at 906 ("nonremedial grounds for termination, and the estate's resultant inability to assume the franchise agreements give [the non-debtor] 'cause' for a grant of relief from stay pursuant to 11 U.S.C. § 362(d)(1)"); Tudor Motor Lodge, 102 B.R. at 956-57 (granting relief from stay to terminate contract where harm to non-debtor party could not be remedied by complying with postpetition payment obligations).[3]

---

[3]     Besides the Servicer's inability to comply with section 365 of the Bankruptcy Code, the Agreement is not assignable for a wholly independent reason: because the Agreement was terminated prior to the Petition Date (effective upon DBSP's selection of a successor servicer), there is no continuing agreement for a third party to take assignment of). "Whatever rights a debtor has in property at the commencement of the case continue in bankruptcy--no more, no less." Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) (section 362 of the Bankruptcy Code does not stay automatic termination of a contract). Section 541 of the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they exist

27. The Servicer's failure to remain FNMA qualified has caused DBSP to suffer substantial harm that has been exacerbated by prevailing market conditions and that are not remediable even if the Servicer becomes FNMA qualified in the future or if it assigns the Agreement to a FNMA qualified servicer. The Debtors have provided no assurance that the Servicer will become FNMA qualified in the near term nor have they provided any protection to DBSP to compensate DBSP for the harm resulting from the Servicer's failure to be so qualified. Moreover, because the existing defaults are not curable, the Agreement may not be assumed and assigned as the Debtors apparently intend. The foregoing circumstances constitute "cause" under section 362(d)(1) of the Bankruptcy Code sufficient to require modification of the automatic stay to permit DBSP to terminate the Servicer.

**[Remainder of Page Left Intentionally Blank]**

---

at the commencement of the case." H.R.Rep. No. 595 (1978), at 368, *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6323.

## V. <u>CONCLUSION</u>

**WHEREFORE**, DBSP requests that this Court:

(a) enter an order modifying the automatic stay imposed by section 362(a) of the Bankruptcy Code to permit DBSP to effectuate the termination of the Servicer and exercise its other remedies under and in accordance with the terms of the Agreement; and

(b) grant DBSP such other and further relief as the Court deems appropriate.

Dated: August 17, 2007

          **BINGHAM McCUTCHEN LLP**
          Robert M. Dombroff
          Steven Wilamowsky
          399 Park Avenue
          New York, NY 10022
          (212) 705-7000

          -and-

          **ASHBY & GEDDES, P.A.**

          _/s/_
          William P. Bowden (I.D. 2553)
          Don A. Beskrone (I.D. #4380)
          500 Delaware Avenue, 8th Floor
          P.O. Box 1150
          Wilmington, Delaware 19899
          (302) 654-1888

          *Counsel to DB Structured Products, Inc.*

183343.1