IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x  Chapter 11
In re:                                                          :
                                                                :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                          :
HOLDINGS, INC., a Delaware corporation, et al.,[1]              :  Jointly Administered
                                                                :
                        Debtors.                                :  **Hearing Date: September 4, 2007 at 11:00 a.m.**
---------------------------------------------------------------- x  **Objection Deadline: August 27, 2007 at 4:00 p.m.**

**APPLICATION FOR ORDER PURSUANT TO SECTION 327(e) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 APPROVING THE
RETENTION AND EMPLOYMENT OF NORTHWEST TRUSTEE SERVICES,
INC. AS FORECLOSURE PROFESSIONALS FOR THE DEBTORS
*NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively the "Debtors") hereby file this application (the "Application") seeking entry of an order, pursuant to section 327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the retention and employment of Northwest Trustee Services, Inc. (the "Company" or "Northwest Trustee") as foreclosure professionals for the Debtors effective, *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors rely upon the Affidavit of Todd Hendricks, a copy of which is attached hereto as Exhibit A (the "Hendricks Affidavit"). In further support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014.

## STATUS OF THE CASE

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5. No trustee or examiner has been appointed. On August 14, 2007, the Office of the Unites States Trustee appointed an official committee of unsecured creditors for these cases.

## THE DEBTORS' BUSINESS[2]

6. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference as if fully set forth herein at length.

sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

7. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

8. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

9. Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

3

10. The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

11. In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

12. On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

13. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors as of the Petition Date employed approximately 1000 absolutely essential employees to the Debtors' continued operations, although that number is

expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

14. In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

15. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELIEF REQUESTED

16. By this Application and pursuant to Bankruptcy Code section 327(e) and Bankruptcy Rule 2014, the Debtors seek approval of the Court to retain and employ Northwest Trustee as their foreclosure professionals effective, *nunc pro tunc* to the Petition Date.

## BASIS FOR RELIEF

### A. Northwest Trustee's Qualifications

17. The Debtors seek to retain Northwest Trustee as their foreclosure professionals because of the Company's extensive experience handling nonjudicial deed of trust foreclosures and monitoring senior lien foreclosures for mortgage servicing companies. Additionally, the Debtors submit that Northwest Trustee has expertise and experience in prosecuting the matters for which it is being retained. Accordingly, the Debtors believe that Northwest Trustee will effectively and efficiently handle the matters for which it is retained in a manner that is cost effective for the Debtors' estates

**B.      Payment of Fees and Expenses**

18.     Northwest Trustee will seek approval of payment of compensation and reimbursement of actual, necessary expenses and other charges upon the filing of appropriate applications for allowance of interim or final compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and Orders of this Court. The current fees and expenses charged by the Company vary by the services performed:

   a.  Nonjudicial Foreclosures Fees: Northwest Trustee typically charges a flat fee for handling AHM's nonjudicial foreclosures of $600-$800, depending upon the state, loan type and circumstances, plus costs. The flat fee may increase if, after authorization from AHM for additional fees, additional issues not contemplated in the referral arise and must be dealt with.

   b.  Nonjudicial Foreclosure Costs: Northwest Trustee advances monies to pay for services that under state law must be performed to assure that the foreclosure will be deemed valid. The bulk of those costs relate to the following:

      1.  Foreclosure title report: The premium for the foreclosure title report varies by county and state, but is based upon the outstanding principal balance of the loan being foreclosed. The low end of the range is approximately $700 for these reports. This report, together with the cost of publishing foreclosure notices is a substantial cost in the foreclosure process, sometimes exceeding $3,000 on higher balance loans.

      2.  Mailing costs: Mailing costs, assuming no more than ten interested parties to whom mailing is required and a complete, untruncated foreclosure, range from $100 to $300 per foreclosure.

      3.  Recording costs: The cost of recording varies by state or county and by the number of pages to be recorded.

      4.  Posting of Notices/Process Service: The cost of this service varies by state but is usually between $70 to $140 per posting or service.

      5.  Publication of Foreclosure Notices: The cost of this service is usually between $350 and $1,800 per file.

6

      c.    <u>Senior Lien Monitor Fee</u>:  For this service, the Northwest Trustee charges AHM a flat fee of $200-$500 depending upon the extent to which the order is placed on an emergency basis.

The fees and expenses set forth above are subject to periodic adjustments to reflect economic and other conditions.

**C.**    **<u>Services To Be Provided</u>**

    19.    The professional services that Northwest Trustee will render to the Debtors include, but shall not be limited to, handling nonjudicial deed of trust foreclosures and monitoring senior lien foreclosures for AHM in a number of different states, including California, Nevada, Washington, Oregon and Idaho.  These services will primarily be performed in connection with the Debtors' mortgage servicing business.

**D.**    **<u>Bankruptcy Rule 2014 Disclosures</u>**

    20.    To the best of the Debtors' knowledge, and except as disclosed herein and in the Hendricks Affidavit, Northwest Trustee "does not represent or hold any interest to the debtor or to the estate with respect to the matter on which such attorney is to be employed" as provided in section 327(e) of the Bankruptcy Code.

    21.    For the above reasons, the Debtors submit that Northwest Trustee's retention and employment is necessary and in the best interest of the Debtors and their estates.

## **NOTICE**

    22.    Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iv) counsel to the Agent for the Debtors' postpetition lender; (v) the Securities and Exchange Commission, and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In

light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

23. No prior request for the relief sought in this Application has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit C, authorizing the retention and employment of Northwest Trustee pursuant to the terms of the Application effective, *nunc pro tunc* to the Petition Date, and grant the Debtors such other and further relief as is just and proper.

Wilmington, Delaware
August 17, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Travis Turner (No. 4926)_
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Attorneys for the Debtors and
Debtors-in-Possession

# EXHIBIT A

**Hendricks Affidavit**

DB02:6184878.4

066585.1001

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       : Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]           :
                                                             : Jointly Administered
            Debtors.                                         :
------------------------------------------------------------ x

## AFFIDAVIT OF TODD HENDRICKS IN SUPPORT OF APPLICATION FOR ORDER PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 APPROVING THE RETENTION AND EMPLOYMENT OF NORTHWEST TRUSTEE SERVICES, INC. AS FORECLOSURE PROFESSIONALS FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Todd Hendricks being duly sworn, deposes and says:

1.  I am a Assistant Vice President of Northwest Trustee Services, Inc. ("Northwest Trustee" or the "Company"), 3535 Factoria Blvd. S.E. Suite #200, Bellevue, Washington 98006. This affidavit is submitted in support of the Application for Order Pursuant to Section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for the Debtors, *Nunc Pro Tunc* to the Petition Date (the "Application").

2.  Northwest Trustee has conducted a series of searches in the Company's conflicts databases to identify relationships with creditors and other parties-in-interest (or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.



DB02:6184878.4                                                                            066585.1001

potential parties-in-interest) in these chapter 11 cases. Based on the conflicts, connections, and relationships searches and reviews conducted, to the best of my knowledge, neither I, the Company, nor any officers or employees thereof, insofar as I have been able to ascertain, has any connections with the above-captioned debtors and debtors in possession (collectively the "Debtors"), their creditors, or any other parties-in-interest, or their respective attorneys and professionals, and the United States Trustee or any person employed in the Office of the United States Trustee, except as set forth in the following two paragraphs.

3. Northwest Trustee has performed mortgage default work for the following entities, but is not aware of any direct conflicts: ABN AMBRO Bank N.V., ABN AMRO Bank, Bank of America, Bank of New York, Barclays Bank PLC and Barclays Capital, Bear Stearns, Countrywide, Citibank, Deutsche Bank, Fannie Mae, Federal Home Loan Mortgage Corp, GMAC, GNMA, IndyMac, JPMorgan Chase Bank, N.A., Sovereign Bank, UBS Real Estate Securities, Wachovia Bank, N.A. Washington Mutual, Wells Fargo, IXIS Real Estate Capital, Inc..

4. Northwest Trustee may have performed mortgage default work for the following entities, but is not aware of any direct conflicts: Citigroup Global, Citigroup Global Markets Inc, County of Denton, Morgan Stanley, UBS Securities, UBS Securities LLC.

5. Northwest Trustee searched its database to determine whether they or any affiliate had any relationships with the following (collectively, the "Interested Parties"):

    a) Debtors and its affiliated entities;

    b) current and former officers and directors of the Debtors;

    c) significant lenders to the Debtors;

    d) significant shareholders of the Debtors;



DB02:6184878.4

2

066585.1001

      e) largest secured creditors as provided by the Debtors;

      f) largest unsecured creditors as provided by the Debtors; and

      g) various other parties-in-interest, as identified by the Debtors.

6.    Northwest Trustee is continuing to review the Debtors' list of creditors. To the extent that I become aware of any additional connections or relationships that may be relevant to Northwest Trustee's services rendered on behalf of the Debtors, I will file a supplemental affidavit.

7.    Northwest Trustee has not executed a postpetition Engagement Letter with the Debtors. Instead, Northwest Trustee bills the Debtors on a periodic basis after services are performed.

8.    Northwest Trustee will seek approval of payment of compensation and reimbursement of actual, necessary expenses and other charges upon Northwest Trustee's filing of appropriate applications for allowance of interim or final compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and Orders of this Court. The current fees and expenses charged by the Company vary by the services performed:

    a.   <u>Nonjudicial Foreclosures Fees</u>: Northwest Trustee typically charges a flat fee for handling AHM's nonjudicial foreclosures of $600-$800, depending upon the state, loan type and circumstances, plus costs. The flat fee may increase if, after authorization from AHM for additional fees, additional issues not contemplated in the referral arise and must be dealt with.

    b.   <u>Nonjudicial Foreclosure Costs</u>: Northwest Trustee advances monies to pay for services that under the state law must be performed to assure that the foreclosure will be deemed valid. The bulk of those costs relate to the following:

        1.   <u>Foreclosure title report</u>: The premium for the foreclosure title report varies by county and state, but is based upon the outstanding principal balance of the loan being foreclosed. The low end of the



DB02:6184878.4

3

066585.1001

range is approximately $700 for these reports. This report, together with the cost of publishing foreclosure notices is a substantial cost in the foreclosure process, sometimes exceeding $3,000 on higher balance loans.

2. <u>Mailing costs</u>: Mailing costs, assuming no more than ten interested parties to whom mailing is required and a complete, untruncated foreclosure, range from $100 to $300 per foreclosure.

3. <u>Recording costs</u>: The cost of recording varies by state or county and by the number of pages to be recorded.

4. <u>Posting of Notices/Process Service</u>: The cost of this service varies by state but is usually between $70 to $140 per posting or service.

5. <u>Publication of Foreclosure Notices</u>: The cost of this service is usually between $350 and $1,800 per file.

c. <u>Senior Lien Monitor Fee</u>: For this service, the Northwest Trustee charges AHM a flat fee of $200-$500 depending upon the extent to which the order is placed on an emergency basis.

The fees and expense set forth above are subject to periodic adjustments to reflect economic and other conditions.

9. No promises have been received by the Company or by any officer or employee thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. The Company has no agreement with any other entity to share with such entity any compensation received (excluding amounts paid to vendors advanced on behalf of the Debtors) by the Company in connection with any matters for which Northwest Trustee prosecutes on behalf of the Debtors.



DB02:6184878.4

4

066585.1001

WHEREFORE, pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

_____
Todd Hendricks



DB02:6184878.4

5

066585.1001

## EXHIBIT B

### Rule 2014 Statement

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]           :
                                                             :   Jointly Administered
                     Debtors.                                :
------------------------------------------------------------ x

### STATEMENT PURSUANT TO RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURES AND SECTION 329 OF THE BANKRUPTCY CODE

1. Northwest Trustee Services, Inc. ("Northwest Trustee" or the "Company"), pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), section 329 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), and Rule 2014 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), states that the undersigned is a foreclosure professional seeking retention by the Court in the cases of the above-captioned debtors and debtors in possession (the "Debtors").

2. Compensation agreed to be paid by the Debtors to Northwest Trustee is to be for services rendered in connection with these cases. The Debtors agreed to pay Northwest Trustee for the services rendered or to be rendered by its various foreclosure professionals. The

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.



DB02:6184878.4                                                                                    066585.1001

Debtors have also agreed to reimburse Northwest Trustee for its actual and necessary expenses incurred in connection with these cases.

3. Northwest Trustee intends to apply to the Court for payment of compensation and reimbursement of expenses and payment of other charges in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, the District of Delaware Local Bankruptcy Rules, and orders of this Court.

4. The Debtors owe Northwest Trustee approximately $117,000 to $200,000 (estimated) for unpaid services rendered and expenses advanced on behalf of the Debtors prepetition.[2]

5. The services to be rendered include all those services set forth in the Application for Order Pursuant to Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for the Debtors, *Nunc Pro Tunc* to the Petition Date.

6. Northwest Trustee further states that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the officers, employees, or shareholders of Northwest Trustee, or (b) any compensation another person or party has received or may receive.

---

[2] Northwest Trustee reserves the right to update or modify the prepetition amounts owed for fees and expenses upon reconciling its records.

Dated: August 17, 2007

Todd Hendricks , AVP
Northwest Trustee Services, Inc.

