# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware Corporation, | ) | (Jointly Administered) |
| *et al.* | ) |  |
| Debtors. | ) | **Hearing Date: TBD** |
|  | ) | **Objection Deadline: TBD** |

## EMERGENCY MOTION OF IMPAC FUNDING
## CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY

Impac Funding Corporation ("Impac"), by and through its undersigned counsel, hereby files this Emergency Motion for Relief from the Automatic Stay (the "Motion") related to a pre-petition Interim Servicing Agreement (as hereinafter defined) between Impac and American Home Mortgage Corporation ("American Home"). By this Motion, Impac seeks the entry of an Order modifying the automatic stay pursuant to 11 U.S.C. § 362(d) so that Impac may implement the termination procedures under the Interim Servicing Agreement and thereafter transfer servicing to a third-party.

As set forth further below, American Home and American Home Mortgage Servicing, Inc. ("American Home Servicing") are in default under several provisions of the Interim Servicing Agreement and at least one of these defaults is not curable. Under the Interim Servicing Agreement, absent default, American Home may, at best, continue servicing seventeen (17) mortgage loans until September 1, 2007 and twenty two (22) mortgage loans until November 1, 2007. Any underlying service fees are de minimis (i.e., $7.00/loan per month for a gross fee of $581 for all of the Mortgage Loans for the period August 1, 2007 to November 1, 2007). Likewise, the Interim Servicing Agreement would have a de minimis value, if any, in the context of the Debtors' proposed sale of its assets under 11 U.S.C. § 363. On the other hand, Impac is unable to transfer the Mortgage Loans while American Home remains the servicer. No

purchaser will purchase the Mortgage Loans so long as a chapter 11 debtor is servicing the Mortgage Loans.

## Jurisdiction and Statutory Bases for Relief

1.        This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  The subject matter of this Motion is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.        The statutory bases for the relief sought herein is § 362 of title 11 of the United States Code (the "Bankruptcy Code").

3.        On August 6, 2007 (the "Petition Date"), American Home and certain of its related entities (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are conducting their affairs and managing their property as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed.  An official committee of unsecured creditors has been appointed.

## Factual Basis for the Requested Relief

4.        Impac and American Home are parties to that certain Seller Agreement[1] dated February 7, 2002 (as amended, supplemented and otherwise modified from time to time, the "Seller  Agreement"), a true and correct copy of which is attached hereto as Exhibit "A."

5.        Pursuant to the Seller Agreement, Impac purchased from American Home mortgage loans (the "Mortgage Loans").  The Seller Agreement prescribes, among other things,

---

[1]        The Seller Agreement expressly incorporates by reference the Impac Seller's Guide (the "Seller's Guide"), which describes the terms and conditions governing American Home's sale of the  Mortgage Loans to Impac.

2

the manner in which American Home conveyed the Mortgage Loans, and any related documents, to Impac.

6.      Impac regularly purchases mortgage loans from American Home and others and then resells those mortgage loans in the secondary loan market.

7.      Under the Seller Agreement, American Home sold the Mortgage Loans to Impac on a servicing released basis (i.e., American Home sold all rights relating to the Mortgage Loans, including the right to service those loans to Impac).

8.      Impac and American Home are also parties to an Interim Servicing Agreement[2] dated as of March 25, 2004, as supplemented by that certain Regulation AB Compliance Addendum to the Interim Servicing Agreement dated May 14, 2007 (as further amended, supplemented and otherwise modified from time to time, the "Interim Servicing Agreement" and, together with the Seller Agreement, the "Agreements"). A true and correct copy of the Interim Servicing Agreement (without the Regulation AB Compliance Addendum) is attached hereto as Exhibit "B."

9.      Therefore, although American Home sold the right to service the Mortgage Loans to Impac, pursuant to the Interim Servicing Agreement, American Home agreed to sub-service the Mortgage Loans on an *interim* basis of up to ninety (90) days after the closing of a loan sale.

---

[2]      The Interim Servicing Agreement and the Seller Agreement expressly incorporate by reference the Impac Servicer Guide (the "Servicer Guide"). The Servicer Guide details the terms and conditions governing the servicing of the Mortgage Loans. The Interim Servicing Agreement also expressly incorporates by reference the Seller Agreement.

DM3\555392.3

10.    American Home, by or through American Home Servicing, is presently servicing, on an interim basis, thirty-nine (39) mortgage loans (the "AH Serviced Loans") owned by Impac. A list of the AH Serviced Loans is attached hereto as Exhibit "C."

11.    Presently Impac is attempting to conclude transactions under which Impac will sell certain of the AH Serviced Loans.

12.    Pursuant to the Interim Servicing Agreement, American Home retains possession of documents necessary for servicing the Mortgage Loans (the "Servicing Files"), but holds the Servicing Files in trust for the benefit of Impac as the owner thereof until such time (the "Servicing Transfer Date") as Impac designates a new servicer. On the Servicing Transfer Date, American Home is required to transfer to Impac or its nominee the Servicing Files. American Home is obligated to make the Servicing Files available to Impac and to permit Impac to copy all or any portion of the Servicing Files.

13.    The Interim Servicing Agreement also requires American Home to deposit in certain segregated custodial accounts (the "Custodial Accounts") all funds received with respect to the Mortgage Loans within forty-eight hours of their receipt. On the eighteenth calendar day of each month (or the preceding business day if the eighteenth falls on a weekend or holiday), American Home is required to transfer to Impac all funds on deposit in the Custodial Accounts.

14.    The Interim Servicing Agreement further provides that upon the establishment of a Custodial Account, American Home shall promptly complete, sign and submit to Impac, a "Letter of Authorization" for the Custodial Account and identify the name and address of the depository and all other information required on a "Custodial Account Authorization." American Home is required to notify Impac in writing of any changes in the Custodial Accounts.

4

15.    Moreover, American Home may not change the location of the Custodial Accounts without Impac's prior written consent.  In connection with such a change, American Home must provide an explanation, in writing, of the reason the Custodial Accounts are being moved and must provide Impac with revised executed "ACH Debit Authorizations" and fully executed "Custodial Account Notices" at least thirty (30) days prior to the transfer of any custodial balances.

16.    Prior to the Petition Date,  American Home breached several of its  covenants and obligations under the Interim Servicing Agreement.

17.    For example, American Home changed the location of certain of Custodial Accounts maintained for Impac without notice to Impac.  In addition, American Home has failed to provide Impac with the required Letter of Authorization and other documentation required for the new accounts.

18.    Further, the Interim Servicing Agreement requires American Home to maintain its eligibility as a qualified and approved servicer for Fannie Mae and Freddie Mac.  Upon information and belief, on or about August 1, 2007, Fannie Mae terminated American Home and/or American Home Servicing as one of Fannie Mae's qualified servicers.

19.    As a result of these breaches of covenants and obligations, American Home is in default under the Seller Agreement and Events of Default exist under the Servicing Agreement.

20.    As a result of the Events of Default, Impac has the right to terminate the Interim Servicing Agreement immediately and all of American Home's rights thereunder, and to accelerate the transfer of the Servicing Files and the funds in the Custodial Accounts, each of which American Home holds in trust for Impac.  More specifically, upon notice of default, American Home must, among other thing so:

5

(a)     remit to Impac all amounts received on the Mortgage Loans and remit all such collections to an account designated by Impac, and segregate funds;

(b)     immediately transfer sub-servicing to the successor servicer appointed by Impac; and

(c)     immediately transfer to Impac the Servicing Files relating to any Mortgage Loans in American Home's possession or control, as well as all records, files, and all other documents held by American Home Servicing to the Mortgage Loans.

21.     Impac is in the business of buying and selling mortgage loans.  In order to obtain the benefit of its bargain under the Seller Agreement and the Interim Servicing Agreement, Impac needs to terminate the Interim Servicing Agreement and appoint a new servicer for the AH Serviced Loans as soon as possible.  No third party will purchase the AH Serviced Loans so long as American Home and/or American Home Servicing remains the servicer.

22.     Further, if the Debtors successfully pursue a proposed sale of their servicing business in September, 2007, borrowers will receive notices from American Home Servicing that servicing has been transferred to the purchaser.  That servicer/purchaser will then send to the borrowers its own notices.  When servicing is thereafter transferred to Impac or its designee almost immediately thereafter, this notice process will be repeated.  This profusion of notices in such a short time period is likely to create confusion among borrowers as to the identity of the servicer of the Mortgage Loans.

23.     Impac has already and will continue to suffer substantial harm unless (i) Impac is permitted to terminate the Interim Servicing Agreement and to designate a new servicer; (ii) Impac is given immediate access to and possession of the Servicing Files; (iii) American Home and American Home Servicing immediately transfer to Impac any funds held by them on Impac's behalf and provide an accounting of amounts they have collected on the AH Serviced Loans owned by Impac so that Impac can determine if all amounts collected on those Mortgage

6

Loans have been remitted pursuant to the terms of the Interim Servicing Agreement; (iv) the

servicing of the AH Serviced Loans is transferred immediately to a successor servicer chosen by

Impac in order to preserve the value of the AH Serviced Loans; and (v) American Home and

American Home Servicing cooperates fully with Impac in connection with the transfer of

servicing and Impac's sale of some or all of the AH Serviced Loans to a third party.

### Impac's Entitlement to the Relief Requested

24.    Cause exists to modify the automatic stay and allow Impac to terminate the

Interim Servicing Agreement. Section 362(d)(1) provides:

> (d)    On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided under
> subsection (a) of this section, such as terminating, annulling,
> modifying, or conditioning such stay –
>
> (1)    for cause, including the lack of adequate protection
> of an interest in property of such party in interest.

25.    The Bankruptcy Code does not define "cause." Consequently, a bankruptcy

court must decide what constitutes "cause" to lift the automatic stay on a case by case basis. *In

re Rexene Products Company*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *In re Fernstrom

Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991)).

26.    Cause exists under the present facts to grant relief from the automatic stay –

including the "lack of adequate protection" of Impac – to relieve Impac from the burden of not

having the benefit of its bargain under the Servicing Agreement (i.e., the ability to sell the

Mortgage Loans and to (a) transfer servicing to a third party purchaser or (b) continue to have

the Mortgage Loans serviced by a commercially acceptable servicer). Under applicable state

contract law, Impac would have an indisputable right to serve notice of termination pursuant to

Section 8.1 of the Interim Servicing Agreement. Bankruptcy courts may not redefine or create

7

state law rights unless statutorily authorized to do so under the Bankruptcy Code. *In re Butner v. United States*, 440 U.S. 48, 54-55, 99 S. Ct. 914, 918 (1979).

27.      The Interim Servicing Agreement and the Seller Agreement are inalterable agreements that Impac may terminate, with proper contractual notice, post-petition under state law. *Cf. In re Delex Management*, 155 B.R. 161 (Bankr. W.D. Mich. 1993); *In re Chautauqua Capital Corp.*, (Bankr. W.D. Pa. 1992) (both granting the landlords stay relief to enforce leases against at-will debtor/tenants).

28.      Courts have recognized the rights of non-debtors to seek relief from the automatic stay under § 362 to give notice of termination in the protection of their contract interests, and have routinely granted stay relief for such purpose. *See Sanden v. Chautauqua Capital Corp. (In re Chautauqua Capital Corp.)*, 135 B.R. 779, 781 (Bankr. W.D. Pa. 1992); *Schewe v. Fairview Estates (In re Schewe)*, 94 B.R. 938 (Bankr. W.D. Mich. 1989).

29.      The public policy which supports this limited relief from the automatic stay was explained by the *Schewe* court: "[a] bankruptcy court should not create additional property rights or remedies in favor of a debtor (or any other party in interest) where such rights to do not exist outside of the bankruptcy law *unless* such rights and remedies are statutorily authorized under the Bankruptcy Code." *Schewe*, 94 B.R. at 950.

30.      Further, revocation of Fannie Mae approval is a breach that cannot be cured. Therefore, to the extent that the Interim Servicing Agreement is an executory contract, it may not be assumed under Section 365 of the Bankruptcy Code. *See, e.g., In re West Electronics Inc.*, 852 F.2d 79, 83-84 (3d Cir. 1988). *Cf. In re Watts*, 876 F.2d 1090 (3d Cir. 1989) (stay inapplicable to executory contract unassumable pursuant to Section 365(c)(2)).

8

31.     The inability to assume or assign a contract under Section 365 also constitutes "cause" under Section 362(d)(1). *Breeden v. Catron (In re Catron)*, 158 B.R. 629 (E.D. Va. 1993), *aff'd*, 25 F.3d 1038 (4th Cir. 1994) (unpublished opinion) (cause existed to terminate stay because debtor could not assume or assign partnership agreement); *West Electronics,* 852 F.2d 79 (cause existed to terminate stay because debtor could not assume or assign government defense contract).

WHEREFORE, Impac respectfully requests that the Court enter an order (a) modifying the automatic stay to permit Impac, at its discretion, to terminate the Interim Servicing Agreement and compel American Home and American Home Servicing to comply with their obligations under the Interim Servicing Agreement including, without limitation, their obligation to cooperate in the transfer of the servicing of the AH Serviced Loans to a successor servicer chosen by Impac, (b) waiving the ten-day stay imposed under the Fed. R. Bankr. P. 4001(a)(3) and (c) granting Impac such other and further relief as the Court deems just and appropriate.

Dated: August 17, 2007
      Wilmington, Delaware

*[signature]*

Michael R. Lastowski (DE 3892)
Richard W. Riley (DE 4052)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone:   (302) 657-4900
Facsimile:   (302) 657-4901
E-mail:      mlastowski@duanemorris.com
             rwriley@duanemorris.com

*Counsel for Impac Funding Corporation*