# EXHIBIT "A"



IMPAC FUNDING CORPORATION
SELLER AGREEMENT

THIS AGREEMENT is made this 7th day of Feb, 2002, by and between Impac Funding Corporation (hereinafter referred as "Buyer" or as "IFC") a subsidiary of Impac Mortgage Holdings, Inc., a Maryland corporation and American Home Mortgage Corp, (hereinafter referred to as "Seller"). This Agreement shall govern the sale and transfer of mortgage loans by Seller to IFC and other incidence thereof, and each such mortgage loan shall be subject to the warranties, representations and agreements contained herein.

In consideration of the mutual promises, covenants and benefits hereinafter set forth the parties hereto agree as follows:

## ARTICLE I
### Incorporation of Guide

1.1. Buyer will issue to Seller a Seller's Guide (hereinafter referred to as "the Guide"). All provisions of the Guide are incorporated by reference into this Agreement and shall be binding upon the parties. Specific references in this Agreement to particular provisions of the Guide and not to other provisions does not mean that those provisions of the Guide not specifically cited herein are not applicable. All terms used herein shall have the same meaning as such terms have in the Guide unless the context clearly requires otherwise.

## ARTICLE II
### Definitions

2.1 As used herein the following terms shall have the following meaning:

"B or C Products" shall mean those mortgage loans characterized by Buyer (in their sole discretion) as being of B or C quality. See attached Exhibit "A" attached hereto and made a part hereof for further definition of B or C quality.

"closing date" shall mean the date each mortgage loan sold hereunder is funded by Seller.

"IDASL" shall be defined as the Impac Direct Access System for Lending, the automated underwriting system offered to Seller by Buyer for the purposes of issuing credit approval for a loan.

"IDASL Underwriting Status Notification" shall be defined as the document issued by IDASL that represents the final underwriting decision and credit conditions required by Buyer to purchase the loan.

"mortgage loan" shall mean a promissory note secured by a first and /or second trust deed or mortgage on residential real property.

"mortgage file" shall mean the documents to be turned over to Buyer on the sale of any mortgage loan as called for in the Guide.

"mortgaged property" shall mean the residential real property which is security for each mortgage loan hereunder.

"timely" shall mean prior to the next installment due date under the terms of a promissory note sold hereunder.

"transaction date" shall mean the date each mortgage loan is sold to Buyer hereunder.

### ARTICLE III
### Purchase of Loans

3.1. It is the intention of the parties hereto for IFC to purchase certain mortgage loans from Seller, which loans qualify under the requirements set forth by Buyer in the Guide, modifications thereto and in any other particular programs. Purchaser agrees to review mortgage loans submitted hereunder by Seller but Purchaser retains the discretionary right to approve or reject any such loans. It is agreed that Buyer shall purchase loans from Seller under all available loan programs unless identified herein:

_____

_____

### ARTICLE IV
### Mutual Representations and Warranties

4.1. The parties hereto each represent and warrant to each other and their respective successors in interest and assigns and agree that as of the date of this Agreement:

A. This Agreement has been duly authorized, executed and delivered by each party to the other party and constitutes a valid and legally binding agreement.

B. To the best of each parties' knowledge, there is no action, proceeding or investigation pending or threatened, nor any basis for such action, proceeding or investigation known to the representing party, that questions the validity or prospective validity of this Agreement or any essential element upon which this Agreement depends, or any action that is to be taken by the representing party pursuant to this Agreement.

C. Each party is duly organized, validly existing and in good standing under the laws of its jurisdiction and has the requisite power and authority to enter into this Agreement and any subsequent Agreements to which both parties are parties and which is contemplated by this Agreement.

D. Each party represents that they have full right to perform all duties and functions hereunder and they are licensed to do so and that no obligation under this Agreement is in violation of any provisions, charter, certificate of incorporation, by-law, mortgage, indenture, indebtedness, agreement, instrument, judgment, decree, order, statute, rule or regulation by which the representing party is bound or obligated; and there is no such provision that adversely affects either parties' capacity to carry out the obligations hereunder.

### ARTICLE V
### Sellers Representations and Warranties

5.1. Seller represents and warrants to Buyer, as to each transaction between the parties that as of the date of each transaction:

A. Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction and is qualified, if necessary, to do business in each jurisdiction in which the mortgaged property is located. Seller has the requisite power and authority to enter into this

Agreement and all other agreements which are contemplated by this Agreement and to carry out its obligations hereunder and under the Guide.

B. There are no actions, litigation, suits or proceedings pending or threatened against the Seller before or by any court, administrative agency, arbitrator or governmental body with respect to any matter which in the judgement of the Seller if determined adversely to the Seller would reasonably be expected to materially and adversely affect the Seller's ability to perform its obligations under this Agreement; and the Seller is not in default with respect to any order of any court, administrative agency, arbitrator or governmental body so as to materially and adversely affect the transactions contemplated by this Agreement.

C. Any mortgage loan which is sold under this Agreement conforms in all material respects to the requirements of this Agreement and the Guide and the information set forth in each document delivered by Seller, as required by the Guide, is complete and accurate in all material respects.

D. Seller is the sole owner and holder of each mortgage loan free and clear of any liens, pledges, except for the pledge of the mortgage note by Seller with a warehouse lender disclosed to Buyer, charges or security interest of any nature, and has full right and authority to sell and assign the same pursuant to this Agreement.

E. To the best of Seller's knowledge there are no restrictions, contractual or governmental, which would impair the ability of Buyer or Buyer's designees from servicing the mortgage loan.

F. The mortgage loan is not in default and all monthly payments due prior to the transaction date have been timely paid and all taxes, assessments, insurance premiums, leasehold payments or ground rents relating to the property secured by the loan have been paid. Seller has not advanced funds or induced or solicited any advances or funds by a party other than a mortgagor directly or indirectly, for the payment of any amounts required by the mortgage loan.

G. There is no default, breach, violation, anticipated breach or event of acceleration existing under the mortgage or the related mortgage note and no existing or known event which, with the passage of time, (or with notice and the expiration of any grace or cure period) would constitute a default, breach, violation or event of acceleration under such mortgage or the related mortgage note.

H. The loan is not subject to any right of rescission, set-off, counter claim or defense and is not unenforceable under any terms. The mortgage note and the related mortgage are genuine, legal, valid and binding obligations of the maker thereof. All parties had legal capacity to execute the note and all documents have, in fact, been properly executed by the parties.

I. The mortgage loan, and the funding thereof, meets, or is exempt from, applicable state and federal laws, regulations and other requirements pertaining to usury, fees, and expenses incurred in the making of that loan (this shall include, but not be limited to, RESPA requirements).

J. Any and all requirements of any federal, state or local law which include, but are not limited to, truth-in-lending, consumer credit protection and equal credit opportunity have been complied with.

K. The proceeds of the loan have been fully disbursed and there is no requirement or anticipation of future advances thereunder. All costs, fees and expenses incurred in making, closing or recording the loan have been paid.

L. At settlement of the loan, there were no mechanic's liens or claims for work, labor or material affecting the mortgaged property which are or may be a lien prior to the lien of such mortgage except those which are insured against by the title insurance policy.

M. All of the improvements which are included for purposes of determining the appraised value of the mortgaged property lie wholly within the boundaries and building restriction lines of such property and there are no adverse material conditions that would affect the appraised value. No improvements on the adjoining property encroach upon the mortgaged property except as insured against by the related title policy.

N. Any and all appraisals prepared for purposes of the loan to verify and validate the value of the mortgaged property were prepared by an unbiased third party which is a duly qualified appraiser and each such appraisal validly and accurately represents the current market value of the mortgaged property at the time the appraisal was performed.

O. On the closing date, no improvement located on or being part of the mortgaged property was in violation of any applicable zoning law or regulation.

P. To the best of Seller's knowledge, there are no hazardous substances or toxic waste located on or under said property so as to affect the value of said property.

Q. There is no proceeding pending for the total or partial condemnation of the mortgaged property and said property is undamaged by waste, fire, earthquake, earth movement, subsidence, wind, storm, flood, water, tornado or other casualty.

R. The mortgage file contains each of the documents and instruments specified to be included therein as required under the Guide, and each such document or instrument is in a form specified by the Guide. For those documents or instruments which are not in a form specified by the Guide, the Buyer must obtain prior approval from Seller as to the acceptability of said documents or instruments.

S. There are no circumstances or conditions other than what is consented to in writing by Buyer with respect to the mortgage, the mortgaged property, the mortgagor, or the mortgagor's credit standing that can be reasonably expected to cause private institutional investors, which invest in loans with commensurate credit grades consistent with a loan sold by Seller to Buyer, to regard the mortgage loan as an unacceptable investment, cause the mortgage loan to become delinquent, or adversely affect the value or marketability of the mortgage loan.

T. All terms, conditions and requirements of the Guide have been complied with in all material respects and all documents submitted to the Buyer pursuant to the requirements of the Guide are correct in all material respects and all information contained with those documents is true and correct.

U. Each mortgage, deed of trust and all other security instruments securing such a mortgage loan have been duly recorded in or submitted for recording in the office of the jurisdiction where the premises are located.

V. With regards to each mortgage loan sold hereunder, a title insurance policy has been or will be issued in an acceptable form as described in the Guide and is valid and binding. Each such policy shall be issued by a title insurer acceptable to Buyer as specified in the Guide and qualified to do business in the jurisdiction where the subject is located. Each such policy shall insure Seller, its successors and assigns to the first priority of the mortgage, and shall be in the amount of the original principal of the mortgage loan. Seller warrants that they are the named insured and sole insured of such title policy and that the assignments to Buyer of Seller's interest in such title insurance does not require the consent of or notification to the insurer, and that such

insurance policy is and will remain in full force and effect and will inure to the benefit of Buyer and Buyer's assigns upon the consummation of the transaction contemplated by this Agreement and any subsequent assignments by Buyer. Seller warrants that no claims have been made under such title insurance policy and neither Seller nor any prior holder of the mortgage has done anything which would impair the coverage of such title insurance policy and that nothing contemplated in this Agreement or any transfer to Buyer will impair the coverage of such title insurance policy.

W. The property, and all improvements thereon, are insured against loss by fire and other such hazards as are customary in the area where the mortgage property is located. Such coverage shall contain fire and hazard insurance policies with extended coverage as called for within this guideline and the Guide. The coverage under such policy shall be at least equal to the greater of the outstanding principal of the loan, 80% of the maximum insurable value of the improvements, or, an amount sufficient to prevent the mortgagor or loss payee from becoming a co-insurer (however, under no circumstances shall the amount of insurance required exceed that amount allowed by law). Such insurance as issued must be with an insurer acceptable pursuant to the Guide. All insurance policies must contain a standard mortgagee clause naming Seller and its successors and assigns, as mortgagee and loss payee. Each mortgage obligates the mortgagor thereunder to maintain such insurance at their costs and expense and allows the mortgagee to obtain and maintain such insurance at mortgagor's costs and expense, and to seek reimbursement therefore from the mortgagor should there be any failure by the mortgagor to maintain such policy. If any flood insurance is required by applicable law or requirement, then it is obtained and in force and effect. Any statements made by the mortgagor or the Seller in applications for such policies were true, complete and correct at the time the application was made and there are no events that have occurred since that policy was issued that would affect the stated coverage of the policy.

X. Any trustee named in the mortgage loan is authorized to serve as such in the applicable jurisdiction. No fees or expenses are currently due to such Trustee other than any fees or expenses that might be incurred after a default.

Y. Seller has used no selection procedure in soliciting or selecting the mortgage loans to be sold to Buyer or in the solicitation of mortgagors which is in violation of law.

Z. No servicing agreement has been entered into with respect to the mortgage loan, or any such servicing agreement has been terminated or will be terminated prior to the assignment of any loan to Buyer.

AA. For all loans which are purchased by Buyer and which loans utilize IDASL for credit approval, Seller has properly input into IDASL all income, debt and other information as stated on the loan application and as required by Impac underwriting guidelines. Seller represents and warrants that all information provided to IDASL is true, complete and accurate in all material respects. Seller agrees to comply with all requirements according to the policies and procedures provided by the Guide. Seller further represents and warrants that the loan when submitted to Buyer will contain complete information as required by the IDASL Underwriting Status Notification.

## ARTICLE VI
### Effect of Breach of Representations or Warranties

6.1 It is understood and agreed that the representations and warranties set forth in Article V shall survive and continue in force for the full remaining life of each mortgage loan, notwithstanding the restrictive or qualified enforcement of the mortgage or any restrictive or qualified language contained in any assignment of mortgage. Upon discovery by either Seller or Buyer of a material and adverse breach of any of the foregoing representations and warranties or of a material and adverse defect with respect to a mortgage loan, the party discovering such

breach or defect has a duty to give prompt written notice to the other party within 90 days of discovery. Within thirty (30) days of its discovery, or its receipt of notice of any such breach of a representation or warranty or of such defect, Seller shall promptly cure such breach or defect in all material respects or repurchase the affected loan at a price as specified in 6.2 herein. If, however, IFC determines, in their sole discretion, that Seller is unable to cure the breach within thirty (30) days or that the breach cannot be cured without affecting the resale value of said loan, Seller shall, within ten (10) days of receipt of notice from IFC repurchase the mortgage on the terms set forth above.

6.2 In addition to all other amounts set forth herein the repurchase price shall be at a price equal to a) the outstanding principal balance of the loan, plus b) accrued interest at the mortgage rate from the date to which interest was last paid, plus c) the servicing premium, plus d) any other costs and expenses incurred by Buyer or losses suffered by Buyer.

6.3 In addition to such repurchase obligation, Seller shall indemnify Buyer and hold it harmless against losses, damages, penalties, forfeitures, reasonable legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense, defect or assertion based on, grounded upon, or resulting from a breach of Seller's representations and warranties contained in this Agreement.

6.4 The parties hereto each understand and contemplate that Buyer may resell said loans on the secondary market and it is understood that the right to demand repurchase for a material and adverse breach of any of the foregoing representations and warranties or of a material defect with respect to a mortgage loan shall further apply to any such purchaser of the loans. Based upon the forgoing, if any loan hereunder is rejected, returned, or a demand is made that it be repurchased from a secondary market investor, Seller shall, upon notice from Buyer, repurchase the mortgage loan in accordance with the provisions of paragraph 6.1.

## ARTICLE VII
## IDASL

7.1 For all loans which are purchased by Buyer and which loans utilize IDASL for credit approval, Buyer will review the mortgage loan prior to purchase and determine if the loan meets all requirements according to the policies and procedures provided by the Guide. Seller acknowledges that failure of Buyer to review or discover any deficiency or error in the mortgage loan or the loan file at time of purchase by Buyer will not release Seller from its obligations to provide any required documentation or correct any errors subsequently discovered. Nor will such a failure to review or discover deficiencies or errors prevent or inhibit Buyer's exercise of any of its remedies hereunder, including the right to demand repurchase in accordance with Article 6, Section 6.1 herein.

7.2 Seller understands and agrees that the use and findings of the IDASL system are limited to approved parties only. The use and disclosure of IDASL results and notifications to anyone other than Buyer or the related Borrower is strictly prohibited. Seller understands that the graphic and textual materials (including screen displays and format) are the subject of copyrights owned by Buyer and licenses under those copyrights are extended only to Seller for the submission of information to Buyer.

## ARTICLE VIII
## Commitments

8.1 All transactions between the parties hereto shall be governed by the terms and conditions of the Guide. No mortgage loan shall be sold to Buyer unless all requirements of the Guide have been met and then Buyer shall not be obligated to purchase any such loans unless Buyer has provided a written commitment as set forth in the Guide to complete the sale as is set forth in the Guide.

## ARTICLE IX
## Document Delivery

9.1 Seller agrees to complete all acts necessary to perfect title to the mortgage in Buyer and shall sell, assign and deliver to Buyer, with respect to each such mortgage loan, any of the documents required or necessary to effectuate the transaction. This shall include but not be limited to obtaining any documents required by or from an original mortgagor to insure that the mortgage loan complies with the Guide. The Buyer and Seller each agree to execute and deliver to the other such additional documents, instruments or agreements as may be required, necessary or appropriate to effectuate the purpose of this Agreement and any transaction hereunder.

## ARTICLE X
## Termination

10.1 This Agreement may be terminated by either party upon thirty (30) days prior written notice to the other party, which notice shall be effective five (5) days after being placed in a U.S. Mail repository, postage prepaid. However, if Buyer believes (in its sole discretion) that there has been a breach of any representation or warranties herein with reference to any mortgage loan sold hereunder or of any other obligations of Seller herein, then Buyer may terminate this Agreement forthwith upon oral notification to Seller by Buyer, which oral notification is followed by written notice as called for herein. However, termination of the Agreement shall not void Buyer's obligation to purchase loans for which Buyer has issued loan approval other than those loans affected by such a breach. However, if the breach is of paragraphs 5.1A or 5.1B then any such loan approvals shall be terminated.

## ARTICLE XI
## General Provisions

11.1 It is contemplated that certain loans sold hereunder may be underwritten by Buyer, IDASL, or Buyer's approved contract underwriter before purchase. In those cases only, Seller is relieved of its duties and obligations regarding the underwriting and any obligation to repurchase due solely to underwriting errors or improper underwriting decisions. However, Seller shall still be responsible to insure that all conditions called for in the underwriting approved by Buyer are satisfied by Seller and that all information submitted in the loan application is true and correct in all material respects. In cases where IDASL has recommended "REFER" to Seller and Seller chooses to approve and close the loan, the Seller shall assume the duties and obligations regarding the underwriting decision.

11.2 If any mortgage loan sold to Buyer hereunder is prepaid by more than fifty percent (50%) of the original principal balance within twelve (12) months following the purchase by Buyer, the Buyer has the right to require the Seller to reimburse Buyer for any premium, inducements, servicing released premium, including any amount paid by Buyer for the mortgage loan, within ten (10) business days upon written notice. The amount to be repaid by Seller shall be calculated by multiplying the premium paid for the loan by a fraction, the numerator of which shall be twelve (12) minus the number of thirty (30) day increments elapsed since the transaction date and the denominator which is twelve (12). Seller's reimbursement of any premium, inducement or servicing released premium shall be reduced by the amount of any valid and enforceable prepayment penalty scheduled to be collected by Buyer during the servicing of the loan. Any such reimbursements shall not be required where Buyer is the originator of the prepayment by refinancing or otherwise.

11.3 It is understood that this Agreement creates an ongoing relationship between the parties. As a result, there may be various fees, charges, and expenses assessed on each sale by Buyer to Seller. If any such amount due Buyer from Seller remains outstanding more than thirty (30) days after it is due, Seller then hereby authorizes Buyer to deduct from any subsequent sales proceeds hereunder such amounts due Buyer.

11.4 By executing this Agreement, Seller is hereby granting to Buyer (to be effective upon notice of Seller's breach of any of the terms or conditions of this Agreement) a special power of attorney irrevocably making, constituting and appointing Buyer as Seller's attorney-in-fact, with power and authority to act in Seller's name and on Seller's behalf to execute, acknowledge and swear to the execution, acknowledgment and filing of all

instruments and documents governing the funding, transfer or assignment of any Loans purchased by Buyer hereunder, which shall include, but is not limited to, Assignments of the Notes, Security Instruments and any other Loan Documents, or rights thereunder, transferred to Buyer hereunder. This power of attorney being granted by Seller is a special power of attorney coupled with an interest and is irrevocable. It shall survive the dissolution of Seller and is limited to those matters herein set forth.

11.5 All notices, requests, demands or other communications that are to be given under this contract (except those pursuant to 10.3) shall be in writing, addressed to the appropriate parties and sent postage prepaid to the address below:

      If to Buyer:    Impac Funding Corporation
                                1401 Dove Street, Suite 100
                                Newport Beach, CA 92660
                                ATTN: Client Administration

      If to Seller:

11.6 This Agreement supersedes any prior agreement or understanding between the parties concerning the subject matter hereof and cannot be modified in any respect except by an amendment in writing signed by both parties, provided however, that this Agreement shall not supersede the right of Buyer to modify the Guide and have such modifications be binding on Seller, as set forth in paragraph 10.3.

11.7 Buyer and Seller agree that Buyer may modify the Guide, and that Seller shall thereafter be bound by the terms of any such modification, as long as Buyer mails any such modifications to Seller, and such modifications shall be effective upon the earlier of receipt by Seller or ten (10) days after such modification is mailed to Seller, postage prepaid.

11.8 This Agreement shall be construed in accordance with the laws of the State of California.

11.9 Seller agrees to provide Buyer its most recent fiscal year financial statement audited by a Certified Public Accountant, on a yearly basis, and shall, from time to time at Buyer's request, provide additional documentation regarding Seller's organization and personnel to maintain the Seller's approved standing with Buyer. Failure by Seller to provide requested documentation may result in Buyer's refusal to issue new loan commitments. Such refusal will take the form of written notification and shall be effective ten (10) days after such notification is mailed to Seller, postage prepaid. Continued failure by the Seller to provide requested documentation shall be a default of the Agreement by Seller and shall be grounds for termination of the Agreement. Such termination will take the form more fully described in Article IX.

11.10 Any controversy, claim or dispute among the parties arising out of this contract, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in Orange County, California and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction, including the Superior Court of California, County of Orange. The fees and costs incurred in any such arbitration (exclusive of each parties attorneys fees and costs) shall be borne equally between the parties. However, they shall be recoverable as a cost pursuant to paragraph 10.7 herein. Should either party fail or refuse to pay its share of the fees and costs, then the non refusing party may advance those fees and costs and the non paying party shall then be deemed to have waived their right to participate in the binding arbitration and shall be precluded from participating in the arbitration unless and until they have reimbursed the advancing party. Any such reimbursement must be at least 14 days prior to the Arbitration Hearing date in order to cure the default of the non paying party.

11.11 If any party to this Agreement resorts to any legal action or arbitration, to enforce any provision of this Agreement, the prevailing party shall be entitled to recover its attorney's' fees in addition to any other relief to which it may be entitled.

11.12 Seller warrants it will not solicit or encourage the refinancing of any property that is encumbered by a mortgage loan and sold hereunder for a period of one year after the loan is purchased by Buyer. Solicitations to refinance through general mailings or through advertising or marketing campaigns which are general in nature shall not be considered a breach of this warrant. Seller agrees not to disclose any such names or information to

third parties to encourage or aid them to refinance such properties during that one year period. This restriction shall not apply to any mortgage loan which has been deemed accelerated by Buyer, or its assignee.

      11.13 Seller acknowledges that nothing herein, or in the Guide, shall be construed to create an agency relationship, partnership, joint venture or employment relationship between Buyer and Seller. Seller shall not hold itself out as such, or make any such or similar representations.

      11.14 In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Guide, the provisions of this Agreement shall control.

## ARTICLE XII
## Addendum

      12.1 If identified herein the attached Addendum fully executed by both Buyer and Seller shall also be deemed to be added provisions of this Agreement: **Delegated Underwriting Addendum**.

BUYER: IMPAC FUNDING CORPORATION

Dated: _____, 20___

by: _____ James W. Dickinson
Its: _____ Vice President

Dated: _____, 200_

SELLER:
by: _____
Its: _____



IMPAC FUNDING CORPORATION
EXHIBIT "A" TO SELLER AGREEMENT

As of May 9, 1997, the term "B or C Products" shall include but not be limited to the following programs:

    Progressive Series III+, IV, V and VI
    Progressive Express Series V and VI
    All Second Mortgage loans

This exhibit is subject to change and may exclude or include loan programs as the Buyer, in their sole discretion, deems necessary.

_____    _____
Buyer                                   Seller



IMPAC FUNDING CORPORATION
DELEGATED UNDERWRITING ADDENDUM

1.1 It is the intention of the parties hereto for IFC to grant power to and to approve Seller as a delegated underwriter for IFC, and to provide the terms and conditions under which Seller may perform certain underwriting duties and functions for certain mortgage loans. The terms and conditions under which Seller will be granted these underwriting functions are as set forth herein and Seller specifically agrees that all such functions and duties shall also be subject to the terms and conditions described in the Guide.

1.2 As a result of the designation of Seller as a delegated underwriter, Seller will be able to review and approve loans, on behalf of IFC, and close loans only under the particular programs described herein without any prior underwriting approval by IFC. In conjunction with this, Seller shall not receive any fee or other compensation from IFC for performing such underwriting duties and functions under this Agreement.

1.3 Seller agrees to perform all underwriting functions under this Agreement with the same care and diligence as any prudent underwriter performing such duties in the industry.

1.4 Seller agrees that during the term of this Agreement they shall maintain an experienced, qualified and approved underwriting staff and shall cause such staff to perform all underwriting functions to be performed by Seller under this Agreement in compliance with the requirements of this Agreement and the Guide and all modifications thereto. Seller shall cause the actual underwriting decisions and evaluations made during the underwriting process to be done only by employees or agents of Seller who are qualified to make, and have substantial experience making, such decisions.

1.5 In performing any underwriting obligations pursuant to this Agreement, Seller shall apply all applicable underwriting guidelines and standards adopted by IFC and stated in the Guide. Seller's underwriting approval shall also be subject to all applicable provisions of the product descriptions now or subsequently issued by IFC (which shall include but not be limited to loan limits and loan-to-value ratios). In addition, Seller's underwriting shall include application of the underwriting guidelines and standards adopted by the Federal National Mortgage Association ("Fannie Mae") as stated in the Fannie Mae Selling Guide, the Federal Home Loan Mortgage Corporation ("Freddie Mac") as stated in the Freddie Mac Seller's Guide for loan programs which IFC has designated as being covered by the Fannie Mae Guide or the Freddie Mac Guide, all mortgage insurance guidelines, and the guidelines reasonably set forth by third party purchasers of such loans.

1.6 It is Seller's responsibility to require, insure and guarantee that Seller and its underwriters at all times maintain and use complete, up-to-date versions of the Guide, the Fannie Mae Guide and Freddie Mac Guide, including all up-dates, bulletins, announcements, memorandums and product descriptions. Seller shall insure, warrant and require that all of their employees performing underwriting duties and functions, pursuant to this Agreement, remain informed and knowledgeable regarding such guidelines and all requirements of the appropriate Guides.

1.7 Seller shall be responsible for approving only marketable mortgage loans, and shall document its underwriting of each and every loan in a manner which justifies and supports such approval and marketability on the secondary mortgage market.

1.8 As a condition of Seller's underwriting, Seller must include in each submission to IFC for purchase of a loan underwritten by Seller hereunder, the credit and legal documents, including all exhibits required and described in the deliveries section and the Guide, all underwriting worksheets and written comments from the underwriter in regard to the final loan decision, and any transmittal form or summary required by the Guide. The Fannie Mae Form 1008 Transmittal (or Freddie Mac equivalent), shall include all pertinent underwriting comments and all documents required pursuant thereto.

1.9   Seller further agrees to maintain sufficient quality control guidelines to insure that all of the above requirements are carried forth. Seller agrees to provide IFC full access to their quality control procedures and to keep IFC apprised as to any change in such procedures and policies.

1.10   It is agreed hereunder that Seller shall at all times be and act as an independent contractor and Seller shall not represent to any entity, person or party, that he is acting as an agent for, or on behalf of IFC. Nothing in this Agreement shall be construed to create any agency, partnership, or joint venture between Seller and IFC for any purposes.

1.11   IFC shall have the right, during the term of this Agreement, to audit and review Seller's general underwriting operations, procedures policies, quality control and Seller's underwriting of any given loan. Any such audit may include a review of Seller's underwriting procedures, manuals and facilities as well as the experience and qualifications of Seller's underwriting staff. Any such audit may be conducted at the location where Seller's underwriting activities are performed during Seller's normal business hours, and Seller further agrees to cooperate in such an audit and review.

1.12   IFC's approval of Seller as a delegated underwriter shall be effective only for the loan programs described as follows:

**Loan programs as more fully delegated by Master Commitment**

1.13   Should IFC determine, in its sole discretion, that Seller is not maintaining the requirements or standards set forth herein, IFC may terminate this Agreement forthwith upon oral notice from IFC which is followed by written notice.

1.14   To retain the rights and duties hereunder, Seller agrees to maintain minimum financial standards as follows: Audited net worth to meet minimum required for Class Level Delegation (as more fully described in Seller's Guide). Seller is to provide IFC with sufficient proof, upon request, that these requirements are being maintained.

BUYER: IMPAC FUNDING CORPORATION

Dated: _____, 20___   by: _____
                                   *James W. Dickinson*
                                   *Vice President*
                              Its: _____

                              SELLER:
Dated: 2/15, 20 0̶2̶    by: _____
                              Its: _____