IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | x : | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1] | : : | Case No. 07-11047 (CSS) |
| | : | Jointly Administered |
| Debtors | : : : | Objection Deadline: August 30, 2007 at 12:00 p.m. (ET)<br>Hearing Date: September 4, 2007 at 11:00 a.m. (ET) |
| | x | |

## APPLICATION FOR AN ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) APPROVING THE RETENTION AND EMPLOYMENT OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, *NUNC PRO TUNC*, AS SPECIAL INVESTIGATORY, LITIGATION, AND CONFLICTS COUNSEL TO THE DEBTORS

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), respectively represent as follows:

### SUMMARY OF RELIEF REQUESTED

1.  By this application (the "Application"), the Debtors request that this Court enter an order pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the employment and retention of Quinn Emanuel Urquhart

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. (AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979): American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Oliver & Hedges, LLP as Special Investigatory, Litigation, and Conflicts Counsel to the Debtors for matters arising in or related to these chapter 11 cases.

## JURISDICTION

2.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C.§ 157(b)(2) Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATUS OF THE CASE

3.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      No trustee or examiner has been appointed. The Official Committee of Unsecured Creditors (the "Creditors Committee") was appointed on August 14, 2007.

## THE DEBTORS' BUSINESS[2]

7.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated sold mortgage loans to institutional investors. AHM offered an array of mortgage products and

---

[2] The facts set forth herein are derived from the Michael Strauss Declaration, which is incorporated by reference as if fully set forth herein at length. [Docket No.2]

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

8. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan origination offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

9. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

**EVENTS LEADING TO THE CHAPTER 11 FILING**

10. Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

3

11. The concern in the credit markets has spread beyond the subprime market and the surge in mortgage delinquencies for subprime home loans also generated anxiety with certain institutions about borrowers with generally good credit.

12. In the weeks prior to the Petition Date, this anxiety within certain institutions led to such institutions quickly devaluing the Debtors' loan and security portfolios and, consequently, such institutions made margin calls for hundreds of millions of dollars with respect to the Debtors' loans. In addition, during this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities used by the Debtors to originate and purchase mortgage loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

13. On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

14. Margin calls and the exercise of remedies by the Debtors' warehouse lenders created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on Friday, August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors as of the Petition Date employed approximately 1,000 essential employees to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

15. In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

16. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets, including the servicing business and mortgages held for sale.

## RELIEF REQUESTED AND REASONS THEREFOR

17. By this Application, the Debtors seek to employ and retain the firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel" or the "Firm"), effective as of August 10, 2007 (the date Quinn Emanuel began work for the Debtors), as Special Investigatory, Litigation, and Conflicts Counsel to perform legal services in matters arising in or related to the Debtors' chapter 11 cases ("Special Litigation Counsel"), as described below and in the declaration of Susheel Kirpalani (the "Kirpalani Declaration") in support of this Application attached hereto as Exhibit A.

18. The Debtors seek to retain Quinn Emanuel as Special Litigation Counsel because of Quinn Emanuel's vast experience in matters concerning complex bankruptcy and commercial litigation including aiding and abetting actions, avoidance actions, cash collateral and DIP financing disputes, contested confirmations, fraud claims, intercompany disputes, fiduciary and lender liability claims, and auditor accountability actions. This extensive experience in handling complex litigation makes Quinn Emanuel specially suited to deal

effectively with many of the potential legal issues that may arise in the Debtors' chapter 11 cases. Accordingly, Quinn Emanuel is well qualified to serve as Special Litigation Counsel to the Debtors pursuant to section 327(a) of the Bankruptcy Code. The Debtors further request, as Quinn Emanuel has been employed by and counseling the Debtors since Friday, August 10, 2007, that the Court's order approving Quinn Emanuel's retention be entered *nunc pro tunc* as of that date.

19. The attorney in charge of this engagement is Susheel Kirpalani, a partner in Quinn Emanuel's Bankruptcy and Restructuring group. Mr. Kirpalani has extensive experience in liquidations and reorganizations, and he is currently the National Chair of the Quinn Emanuel Bankruptcy and Restructuring group. Mr. Kirpalani and other attorneys at Quinn Emanuel have (while at previous firms) served as counsel to the debtors or official creditors committees in numerous bankruptcy cases including, without limitation, Refco, Enron, Safety-Kleen, RCN Corp., ICO Global Communications, Fruit of the Loom, Lernout & Hauspie, Loewen, National Century Financial Enterprises, Inc., USG, and LTV Steel. Quinn Emanuel also has extensive experience representing the debtor or bankruptcy trustee in special litigation matters arising in Refco, Parmalat, and K-Mart, among others.

20. Quinn Emanuel has represented, currently represents, and will continue to represent entities that are claimants of, or interest holders in the Debtors, in matters completely unrelated to the Debtors or the Debtors' pending chapter 11 cases. Quinn Emanuel has not, does not, and will not represent any entities or any of their respective affiliates or subsidiaries, in matters related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases. Accordingly, the Debtors respectfully request entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and

6

Bankruptcy Rule 2014(a) authorizing them to employ and retain Quinn Emanuel as Special Litigation Counsel to provide services in matters arising in or relating to the chapter 11 cases.

21. Subject to Court approval under section 330(a) of the Bankruptcy Code, compensation will be payable to Quinn Emanuel on an hourly basis, plus reimbursement of actual, necessary expenses and other changes incurred by the Firm. As is the case with respect to rates charged in non-bankruptcy matters of this type, Quinn Emanuel's rates are subject to period adjustment to reflect economic and other conditions. Currently, hourly rates of partners for Quinn Emanuel range from $875 to $615. Other attorneys' hourly rates, including counsel positions, range from $875 to $365. The hourly rates charged for Quinn Emanuel's legal assistants range from $235 to $260.

22. The Firm's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time. It is Quinn Emanuel's policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's case. The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals" and telecopier charges. The firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its other clients. Quinn Emanuel believes that it is appropriate to charge these expenses to the particular client rather than increasing the hourly rates and spreading the expenses among all clients.

23. The Debtors desire to retain Quinn Emanuel to provide the services set forth above. Quinn Emanuel has received no fees from the Debtors and holds no retainer.

## NOTICE

24. Notice of this Application will be provided to (i) the United States Trustee of the District of Delaware; (ii) counsel to the Creditors Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004: (iv) Counsel to the Debtors' post-petition lender; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

25. No prior Application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors request entry of an order, in the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and such other and further relief as is just.

Dated:    Wilmington, Delaware
         August 20, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for Debtors and
Debtors in Possession

# EXHIBIT A

## KIRPALANI DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | X : | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1] | : : : | Case No. 07-11047 (CSS) Jointly Administered |
| Debtors | : : : X | |

**DECLARATION OF SUSHEEL KIRPALANI IN SUPPORT OF APPLICATION FOR ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 APPROVING RETENTION AND EMPLOYMENT OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, *NUNC PRO TUNC*, AS INVESTIGATORY, LITIGATION, AND CONFLICTS COUNSEL TO THE DEBTORS**

Susheel Kirpalani, hereby declares, under penalty of perjury:

1. I am a member of the firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel" or the "Firm"), a law firm with offices at 51 Madison Avenue, New York, New York 10010, and in Los Angeles, San Francisco, and Silicon Valley, California.

2. I submit this declaration in connection with the application of American Home Mortgage Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, "AHM" or the "Debtors") to employ and retain Quinn Emanuel, *nunc pro tunc* to August 10, 2007, as Special Investigatory, Litigation, and Conflicts Counsel to the Debtors ("Special Litigation Counsel") in the above-captioned chapter 11 cases

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. (AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979): American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 (footnote continued)

(the "Application") at its normal hourly rates in effect from time to time, and in accordance with its normal reimbursement policies, pursuant to section 327(a) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and to provide the disclosure required under Rules 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein. I will supplement this declaration if additional information becomes available during the pendency of these cases concerning any relationship between the creditors or interest holders of the Debtors and Quinn Emanuel.

### QUINN EMANUEL'S PRE-PETITION RELATIONSHIP WITH THE DEBTORS

3. Quinn Emanuel has not previously represented the Debtors and is not a creditor or equity holder of the Debtors. Quinn Emanuel has not received any retainer from the Debtors.

### QUINN EMANUEL'S DISCLOSURE PROCEDURES

4. Quinn Emanuel, which employs approximately 400 attorneys, has a large and diversified legal practice that encompasses the representation of select financial institutions and commercial corporations, some of which are or may consider themselves to be creditors, equity holders, or other parties in interest in the Debtors' pending chapter 11 cases, or otherwise to have interests in these cases.

5. In preparing this declaration, I used a set of procedures developed by Quinn Emanuel to comply with ethical constraints, including the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the

---

Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

2

United States Bankruptcy Court for the District of Delaware (the "Local Rules") regarding the retention of professionals by debtors and statutory committees under the Bankruptcy Code (the "Quinn Emanuel Disclosure Procedures"). Pursuant to the Quinn Emanuel Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this declaration and to ascertain Quinn Emanuel's connection to such parties:

(a) Based on the best information currently available, a list of the Debtors' forty (40) largest unsecured creditors as reflected in the Debtors' bankruptcy petitions and related filings, together with a list of its current executive officers and directors, holders of 5% or more of the Debtors' voting securities, and other potentially material adverse parties in interest as of the Petition Date was developed through discussions with senior management of the Debtors (the "Potential Party List"). To the best of my knowledge, the Potential Party List is the most comprehensive of potential claimants against or interest holders in the Debtors currently available. The Debtors may supplement the list and Quinn Emanuel will supplement its disclosures herein at the time of such supplements as may be necessary.

(b) Quinn Emanuel maintains a database containing the name of each current and former client, the name of the parties who are or were related or adverse to such current or former client, and the names of the Quinn Emanuel personnel who are or were responsible for current or former matters for such client (the "Database"). Quinn Emanuel maintains the Database to include additional entities that become related to current and former clients.

(c) Quinn Emanuel compared the names included in the Potential Party List to the names in the Database to identify any matches, determine whether such matches

are current or former clients and identify the Quinn Emanuel personnel responsible for such matters (the "Client Match List").

(d)  Using information in the Database and by making specific inquiries of Quinn Emanuel personnel, I verified that Quinn Emanuel did not represent any entity on the Client Match List in connection with the Debtors or these chapter 11 cases. An attorney under my supervision and I then reviewed the Client Match List and deleted obvious name coincidences. The remaining client connections were compiled for purposes of preparing this declaration.

## QUINN EMANUEL'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THESE CHAPTER 11 CASES

6.  Quinn Emanuel is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that Quinn Emanuel, its partners, counsel and associates: (a) are not creditors, equity security holders or insiders of the Debtors; (b) are not and were not, within two (2) years before the date of the filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and (c) does not have an interest materially adverse to the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason, except as otherwise stated herein.

7.  Following the foregoing procedures, entities in the Client Match List in which Quinn Emanuel had represented the client in the last three years were reviewed by me or an attorney working under my supervision and from such review it was determined that, in respect of each connection between Quinn Emanuel and such parties, Quinn Emanuel does not hold or represent an interest that is adverse to the Debtors' estates, except as otherwise stated herein.

4

8. To the best of my knowledge and information, the annual fees paid in the past three years to Quinn Emanuel by any one of the parties on the Potential Party List did not exceed 1% (one percent) of Quinn Emanuel's annual gross revenue for such year, except in the case of Morgan Stanley.

9. From the Potential Party List, Quinn Emanuel currently represents Morgan Stanley, Washington Mutual, GMAC (or its affiliates), The Bank of New York, and Lehman Brothers. Morgan Stanley has waived any conflict arising out of Quinn Emanuel's representation of the Debtors, including any investigation of potential claims against Morgan Stanley in connection with these cases. Lehman Brothers has waived any conflict arising out of Quinn Emanuel's representation of the Debtors, including any investigation of potential claims against Lehman Brothers, and has also consented to Quinn Emanuel becoming directly adverse to Lehman Brothers in litigation in connection with these cases.

10. Quinn Emanuel has not, does not, and will not represent any entity or any respective affiliates or subsidiaries thereof, in matters directly related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases. Quinn Emanuel may in the future represent entities that are claimants of, or interest holders in, the Debtors in matters totally unrelated to the Debtors.

11. As a matter of retention and disclosure policy, Quinn Emanuel will continue to apply the Quinn Emanuel Disclosure Procedures as additional information concerning entities having a material connection to the Debtors is developed and will file appropriate supplemental disclosures with this Court, if necessary.

12. Quinn Emanuel will work with the Debtors' other counsel to coordinate tasks in matters where any particular firm cannot be adverse to opposing parties and to otherwise ensure there is no duplication of effort.

## QUINN EMANUEL'S RATES AND BILLING PRACTICES

13. Subject to Court approval, compensation will be payable to Quinn Emanuel on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm. As is the case with respect to work for all Firm clients, Quinn Emanuel's rates are subject to periodic adjustments to reflect economic and other conditions. Currently, hourly rates of partners for Quinn Emanuel range from $875 to $615. Other attorneys' hourly rates, including counsel positions, range from $875 to $365. The hourly rates charged for Quinn Emanuel's legal assistants range from $235 to $260.

14. Quinn Emanuel's disbursement policies pass through all out-of-pocket expenses at actual cost, or at estimated actual cost when the actual cost is difficult to determine. These expenses include facsimiles, toll calls, overtime meals, computerized research, deliveries, court costs, transcript fees, travel, clerk fees, certain secretarial and other overtime expenses, and other expenses.

15. No promises have been received by Quinn Emanuel or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Quinn Emanuel has no agreement with any other entity to share with such entity any compensation received by Quinn Emanuel or by any such entity.

16. The Debtors' Application requests approval of its retention of Quinn Emanuel as Special Litigation Counsel on rates, terms and conditions consistent with what Quinn Emanuel charges non-title 11 debtors, namely, prompt payment of its hourly rates as adjusted

from time to time and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable. Subject to these terms and conditions, and consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, Quinn Emanuel intends to apply for compensation for professional services rendered in these chapter 11 cases at its customary hourly rates and for reimbursement of expenses incurred in connection therewith.

17. The Debtors have asked Quinn Emanuel to remain flexible with respect to its willingness to undertake litigation matters on a contingency basis. If subsequently requested by the Debtors for a particular matter, Quinn Emanuel and the Debtors reserve their rights to seek to modify Quinn Emanuel's compensation to incorporate one or more contingency aspects of compensation pursuant to section 328(a) of the Bankruptcy Code. Neither the Debtors nor Quinn Emanuel have any agreements with respect to such compensation at this time, and any proposed modifications will be subject to Court approval, following notice and a hearing.

18. The foregoing constitutes the statement of Quinn Emanuel pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

19. I certify that the foregoing statements are true and correct to the best of my knowledge information and belief.

New York, New York
August 20, 2007

/s/ Susheel Kirpalani

A Member of the Firm