IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

**In re: American Home Mortgage Holdings, Inc., et al.**    **Case No. 07-11047 (CSS)**

### INITIAL MONTHLY OPERATING REPORT

*(File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief)*

Certificates of insurance must name the United States Trustee as a party to be notified in the event of policy cancellation. Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession." Examples of acceptable evidence of Debtor in Possession Bank accounts include voided checks, copy of bank deposit agreement/certificate of authority, signature card, and/or corporate checking resolution.

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| 12-Month Cash Flow Projection | X[1] | |
| Certificates of Insurance | X | |
| Workers Compensation | X | |
| Property | X | |
| General Liability | X | |
| Vehicle | X | |
| Other | N/A | |
| Evidence of Debtor in Possession Bank Accounts | X[2] | |
| Tax Escrow Account | N/A | |
| General Operating Account | N/A | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached are true and correct to the best of my knowledge and belief.

American Home Mortgage Holdings, Inc. *et al.*
Debtors

_____
Signature of Authorized Individual[3]

August 21, 2007
Date

Steve Hozie
Name of Authorized Individual

Chief Financial Officer
Title of Authorized Individual

---

[1]    Attached are copies of the Cash Collateral and DIP budgets.

[2]    Attached is a copy of the Order (I) Authorizing Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply With Section 345 of the Bankruptcy Code [Docket No. 66].

[3]    Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if a debtor is a partnership; a manager or member if debtor is a limited liability company.

066585

**AMERICAN HOME MORTGAGE**
**CASH FORECAST – CORPORATE NON-SERVICING**

| ($ millions) | 13 Weeks Ending 11/2/07 | 28 Days ended 11/30/07 | Month Ended | | | | | | | | 12 Months Ended 7/31/07 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | 12/31/07 | 1/31/07 | 2/28/07 | 3/31/07 | 4/30/07 | 5/31/07 | 6/30/07 | 7/31/07 | |
| **Projected Cash Flows** | | | | | | | | | | | |
| Restructuring Professionals [a] | $ 6.6 | $ 4.1 | $ 5.0 | $ 5.0 | $ 1.6 | $ 0.8 | $ 0.8 | $ 1.8 | $ 0.3 | $ 0.3 | $ 27.4 |
| DIP Fees | 0.5 | | | | | | | | | | 0.5 |
| Wind Down Costs | 2.5 | | | | | | | | | | 2.5 |
| Outstanding Check Float | - | | | | | | | | | | - |
| A/P Checks Cleared | 5.7 | 1.8 | 1.8 | 1.8 | 1.0 | 1.0 | 1.0 | 0.5 | 0.5 | 0.5 | 15.5 |
| Vendor Deposits | 2.0 | | | | | | | | | | 2.0 |
| HUD/FHA/VA Payments | - | | | | | | | | | | - |
| Payroll & Payroll Taxes [b] | 7.5 | 1.7 | 1.7 | 1.7 | 1.2 | 1.2 | 1.2 | 0.6 | 0.6 | 0.6 | 18.0 |
| Retention Payments [c] | 1.2 | 0.4 | 0.4 | 2.2 | 0.5 | 0.5 | 0.5 | 0.2 | 0.2 | 0.2 | 6.3 |
| Health Insurance-BCBS | 7.0 | 1.7 | 1.7 | 1.7 | 1.2 | 1.2 | 1.2 | 0.5 | 0.6 | 0.6 | 17.5 |
| Other | - | | | | | | | | | | - |
| Projected Cash Flows | $ 33.0 | $ 9.7 | $ 10.7 | $ 12.5 | $ 5.4 | $ 4.6 | $ 4.6 | $ 3.7 | $ 2.7 | $ 2.7 | $ 89.7 |

(a) Includes attorneys, bankers, crisis managers, et. al. 20% holdback paid every 4th month.
(b) Payroll assumes reductions of headcount through the forecast period.
(c) Assumes current retention plan ends in January, and remaining staff receive 40% rate for balance of forecast period.

AMERICAN HOME MORTGAGE
CASH FORECAST – SERVICING
NOTE: BASED UPON THE CURRENT PORTFOLIO OF MSRs AND MORTGAGES.

| ($ millions) | Projected Week Ending | | | | | | | | | | | | | 13 Weeks Ended 11/2/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8/10 | 8/17 | 8/24 | 8/31 | 9/7 | 9/14 | 9/21 | 9/28 | 10/5 | 10/12 | 10/19 | 10/26 | 11/2 | |
| Opening Cash Balance | $ - | $ 1.2 | $ 6.5 | $ 10.3 | $ 15.6 | $ 22.2 | $ 27.5 | $ 31.1 | $ 36.4 | $ 40.0 | $ 45.3 | $ 48.9 | $ 54.2 | $ - |
| **Sources of Cash** | | | | | | | | | | | | | | |
| Servicing Daily Receipts- Net (a) | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 104.0 |
| Investment Line Income/ Int Credit (b) | - | - | - | - | 3.0 | - | - | - | - | - | - | - | - | 3.0 |
| **Total Sources** | 8.0 | 8.0 | 8.0 | 8.0 | 11.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 107.0 |
| **Uses of Cash** | | | | | | | | | | | | | | |
| Indirect and Non-Payroll Direct Costs (c) | 0.7 | 0.6 | 0.4 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 7.7 |
| Vendor Payments—Prepetition | 1.5 | - | - | - | - | - | - | - | - | - | - | - | - | 1.5 |
| Vendor Deposits | 2.5 | - | - | - | - | - | - | - | - | - | - | - | - | 2.5 |
| Payroll & Payroll Taxes | - | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | 9.5 |
| Retention Payments (d) | - | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 3.2 | 3.8 |
| Health Insurance–BCBS | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 1.3 |
| Servicing Advances, Net (e) | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 26.0 |
| B of A expenses (f) | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN | OPEN |
| **Total Uses** | 6.8 | 2.7 | 4.2 | 2.7 | 4.4 | 2.7 | 4.4 | 2.7 | 4.4 | 2.7 | 4.4 | 2.7 | 7.5 | 52.3 |
| Net Cash Flow | 1.2 | 5.3 | 3.8 | 5.3 | 6.6 | 5.3 | 3.6 | 5.3 | 3.6 | 5.3 | 3.6 | 5.3 | 0.5 | 54.7 |
| Closing Balance | $ 1.2 | $ 6.5 | $ 10.3 | $ 15.6 | $ 22.2 | $ 27.5 | $ 31.1 | $ 36.4 | $ 40.0 | $ 45.3 | $ 48.9 | $ 54.2 | $ 54.7 | $ 54.7 |

¹ (a) Comprised of fees and advance recoveries.
(b) Represents float on servicing payments before remittance to portfolio owner.
(c) To include allocation of corporate costs.
(d) Assumes final payroll and retention payout occurs week ended 11/2/07.
(e) Based upon the historical monthly average.
(f) Estimates for advisory and other costs to be provided by B of A.

POLICY PROVISIONS: WC000000A

**INSURER:**
- ☐ Hartford Accident and Indemnity Company
- ☐ Hartford Casualty Insurance Company
- ☐ Hartford Fire Insurance Company
- ☐ Hartford Underwriters Insurance Company
- ☐ Twin City Fire Insurance Company

ADDRESS: HARTFORD, CT. 06115

**NCCI COMPANY NO.**
- 10448 ☐ Hartford Insurance Company of Illinois
- 14397 ☒ Hartford Insurance Company of the Midwest
- 13269 ☐ Hartford Insurance Company of the Southeast
- 10456
- 14974

**INFORMATION PAGE**

**NCCI COMPANY NO.**
- 20613  (Co. Use Only)
- 20605  Bestl ☐ R ☐ R ☐ P ☐ R
- 20621  Ind ☐ Col ☐ CF ☐ I
- 01

**SUFFIX**

| LARS | Renewal |
|------|---------|
|      | 01 |

Co.Code
G

POLICY NO.  10 WN MS9800
Previous Policy No.  10 WN MS9800

**Items**

**1. Named Insured and Mailing Address**
(No.,Street,Town,County,State)

AMERICAN HOME MORTGAGE INVESTMENT C
538 BROADHOLLOW ROAD
MELVILLE, NY 11747

Individual ☐     Corporation ☒
Partnership ☐     Other .........................

**Other workplaces not shown above:**

**2. The Policy Period is from** 03/28/2007 **to** 03/28/2008  12:01 A.M.,standard time at the insured's mailing address

| Producer's Name | Producer's Code | Issuing Regional Office |
|---|---|---|
| INTERCITY AGENCY, INC. | 171928 | THE HARTFORD |
| 42-40 BELL BOULEVARD | | HARTFORD PLAZA |
| BAYSIDE, NY 11361 | | HARTFORD,CT 06115 |

**3. A. Workers' Compensation Insurance:** Part One of the Policy applies to the Workers' Compensation Law of the states listed here:

AK, AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, IL, IN, KS, KY,
LA, MA, MD, ME, MI, MN, MO, MS, MT, NC, NE, NH, NJ, NM, NV, NY, OK, OR,
PA, RI, SC, SD, TN, TX, UT, VA

**B. Employers' Liability Insurance:** Part Two of the policy applies to work in each state listed in Item 3A.
The Limits of our Liability under Part Two are:
Bodily Injury by Accident   $1,000,000 Each accident
Bodily Injury by Disease   $1,000,000 Policy Limit
Bodily Injury by Disease   $1,000,000 each employee

**C. Other States Insurance:** Part Three of the policy applies to the states, if any, listed here:
ALL STATES EXCEPT NORTH DAKOTA, OHIO, WASHINGTON, WEST VIRGINIA, WYOMING
AND ANY STATES DESIGNATED IN ITEM 3A OF THE INFORMATION PAGE

**D. This policy includes these endorsements and schedules:** WC990005 AND SEE LISTING OF ENDTS

**4. The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.**

| Classifications | Code Number | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| SEE SCHEDULE OF OPERATIONS FOREIGN TERRORISM | | | | |

FEIN NO.    200103914

Interstate/Intrastate ID No. 911046725
NAICS: 522310
Minimum Premium:

**Total Estimated Annual Premium**
**Deposit Premium**

Audit Period: ☒ Annual    ☐ Semi-Annual    ☐ Quarterly    ☐ Monthly

04/11/2007
**Form WC 00 00 01 A**    Printed in U.S.A.

Countersigned by _____
_____    _____
*Authorized Agent*            *Date*



# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
### A CAPITAL STOCK COMPANY
### 175 WATER STREET, NEW YORK, NY 10038

## FOLLOW FORM BOND
### DECLARATIONS

**BOND NUMBER:** *742-04-12*

**ITEM 1.**   NAMED INSURED: *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

   ADDRESS:      *538 BROADHOLLOW RD STE 1*
   *MELVILLE, NY 11747-3676*

**ITEM 2.**   BOND PERIOD: FROM *May 5, 2007*   TO *May 5, 2008*   AT 12:01 STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**   LIMIT OF LIABILITY: *$25,000,000*   Excess of *$25,000,000* in the Aggregate of   *$50,000,000*

**ITEM 4.**   SCHEDULE OF PRIMARY UNDERLYING EXCESS POLICIES (HEREIN COLLECTIVELY THE "UNDERLYING PROGRAM"):

Primary Policy (herein "Primary Policy"):

Insurer:

| Policy Number | Single Loss Limit | Aggregate Limit | Deductible | Policy Period |
|---|---|---|---|---|
| *FIDELITY & DEPOSIT CO. OF MARYLAND* *FIB0006145-03* | *$25,000,000* | *$50,000,000* | *$500,000* | *05\|05\|2007-05\|05\|2008* |

Underlying Excess Policy(ies):

Insurer:

| Policy Number | Single Loss Limit | Aggregate Limit | Policy Period |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*1127761*

63674 (10/95)   *COPY*                1



**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren, New Jersey 07059

CHUBB

**DECLARATIONS
FINANCIAL INSTITUTION
EXCESS BOND FORM E**

NAME OF ASSURED:

AMERICAN HOME MORTGAGE INVESTMENT CORPORATION

538 Broadhollow Road
Melville, NY 11747

Bond Number: 82126599

**VIGILANT INSURANCE COMPANY**
Incorporated under the laws of New York
a stock insurance company, herein called the COMPANY

55 Water Street, New York, NY 10041

---

**ITEM 1.**  BOND PERIOD: from  12:01 a.m. on May 5, 2007
                          to  12:01 a.m. on May 5, 2008

**ITEM 2.**  AGGREGATE LIMIT OF LIABILITY:  $100,000,000

**ITEM 3.**  SINGLE LOSS LIMIT OF LIABILITY:  $50,000,000

**ITEM 4.**  DEDUCTIBLE AMOUNT:  $500,000

**ITEM 5.**  PRIMARY BOND:

| | |
|---|---|
| Insurer: | Fidelity and Deposit Company of Maryland |
| Form and Bond No.: | FIB 0006145-03 |
| Limit: | $25,000,000 Single Loss/$50,000,000 Aggregate |
| Deductible: | $500,000 |
| Bond Period: | May 5, 2007 to May 5, 2008 |

**ITEM 6.**  COVERAGE EXCEPTIONS TO PRIMARY BOND:
NOTWITHSTANDING ANY COVERAGE PROVIDED BY THE PRIMARY BOND, THIS EXCESS BOND
DOES NOT DIRECTLY OR INDIRECTLY COVER: None.

**ITEM 7.**  TOTAL OF LIMITS OF LIABILITY OF OTHER UNDERLYING BONDS, EXCESS OF PRIMARY BOND:
$25,000,000 Single Loss/$50,000,000 Aggregate  (AIG)

**ITEM 8.**  THE LIABILITY OF THE COMPANY IS ALSO SUBJECT TO THE TERMS OF THE FOLLOWING
ENDORSEMENTS EXECUTED SIMULTANEOUSLY HEREWITH:
1 - 3

**IN WITNESS WHEREOF, THE COMPANY** issuing this Bond has caused this Bond to be signed by its authorized
officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

W. Andrew Macon
Secretary

July 13, 2007
Date

Thomas F. Motamed
President

Robert Hamburger
Authorized Representative

COPY

---

Binder of Insurance

Policy: UXP0017307-01 Eff. Date: 8/4/2007

Binder Period:  8/4/2007 to 11/2/2007



## Arch
## Insurance Group
### Arch Insurance Company
### (A Missouri Corporation)

**Home Office Address:**
3100 Broadway
Suite 511
Kansas City, MO 64111

**Administrative Address:**
245 Park Avenue
32nd Floor
New York, NY 10167
646-822-6700

## Binder of Insurance

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

|  |  |
|---|---|
| **Binder Period:** | 8/4/2007 – 11/2/2007 |
| **Agent / Broker Contact:** | Samantha Gilman |
| **Agent / Broker Firm:** | BISYS Commercial Insurance Services, Inc. |
| **Address:** | 199 Water Street |
| | 28th Floor |
| | New York, NY 10038 |
| **Phone:** | 212.293.3945 |
| **Fax:** | 2126195202 |
| **Insured:** | American Home Mortgage Holdings, Inc. |
| **Address:** | 520 Broadhollow Rd |
| | MELVILLE, NY 11747 |
| **Issuing Company:** | Arch Insurance Company (the Company) |
| | Admitted Policy |
| **Policy Type:** | Occurrence Umbrella Excess |
| **Policy Form Number:** | 00 EXT0020 00 07 04    EXCESS THIRD PARTY LIABILITY POLICY |
| **Policy Number:** | UXP0017307-01 Renewal of UXP0017307-00 |
| **Policy Period:** | Inception Date 8/4/2007 Expiration Date 8/4/2008 |
| | (12:01 A.M. Standard time at the address of the Insured shown above) |
| **Policy Limit:** | $20,000,000 Per Occurrence |
| **Policy General Aggregate:** | $20,000,000 |
| **Products / Completed** | $20,000,000 |

Class 2 - 13000
BND0001

7/24/2007

Page 1 of 5



# CHUBB GROUP OF INSURANCE COMPANIES

55 Water Street, 29th-30th Floors, New York, New York 10041-2899

Telephone (212) 612-4000
Facsimile (212) 612-2600

*Revised August 1, 2007*
July 16, 2007

Ken Robotham
Intercity Agency, Inc.
42-40 Bell Blvd.
Bayside, NY 11361

Subject:       **American Home Mortgage Investment Corporation**

| Policy Type | Policy Number | Effective Date | Underwriting Company |
|---|---|---|---|
| MOD PKG | 3580-02-29 | 08/04/2007 | Great Northern Insurance Company |
| AUTO | 7352-33-38 | 08/04/2007 | Federal Insurance Company |

Dear Ken:

We are pleased to provide our Coverage Binder for **American Home Mortgage Investment Corporation**. This binder is valid until 8/4/07. Please note the following items:

- Per our conversation, this binder is per the expiring exposures.

To facilitate your discussion of the coverages with the insured, we have outlined some of the features of the form. Please review the coverages carefully. This binder outlines the extent of coverage that we will provide on the account and is subject to the terms and conditions of the policies. If you do not see a specific coverage listed on this binder, it is <u>not</u> provided.

**Please note that this binder is subject to several legal requirements and prohibitions, which are described on the cover page of this binder or within individual sections of the binder, as appropriate. Please read these descriptions carefully.**



# FINANCIAL INSTITUTION
## SELECT BOND
January, 2001 Edition

Administrative Office
1400 American Lane
Schaumburg, IL 60196

### FIDELTIY AND DEPOSIT COMPANY OF MARYLAND
(stock insurance companies, herein called Underwriter)

Bond No.  **FIB 0006145-03**

# DECLARATIONS

**Item 1.** Name of Insured (herein called Insured):
**American Home Mortgage Investment Corporation**

Principal Address:
**538 Broadhollow Road
Melville, NY  11747**

**Item 2.** Bond Period:  From 12:01 a.m. on **05-05-2007** to 12:01 a.m. on **05-05-2008**

standard time at the principal address of the Insured listed above.

**Item 3.** The Aggregate Liability of the Underwriter during the Bond Period shall be $ **50,000,000**

**Item 4.** The Single Loss Limit of Liability and Single Loss Deductible for each Insuring Agreement or Coverage as shown in the Table of Limits of Liability and Deductible Amounts are subject to the Declarations, General Agreements and Conditions and Limitations of this bond and the terms and limitations of the Insuring Agreement of Coverage having reference thereto and any of its riders.

No coverage is provided under any Insuring Agreement or Coverage unless so indicated in the Table of Limits of Liability and Deductible Amounts showing the Underwriter's Limit of Liability or in any rider hereafter agreed upon.

**Item 5.** The liability of the Underwriter is subject to the following riders attached hereto:

**SEE ATTACHED RIDER/ENDORSEMENT INDEX**

**Item 6.** All notices required to be given to the Underwriter shall be addressed to:
**FIDELITY AND DEPOSIT COMPANY OF MARYLAND
Mail Drop # MD1-02-02
3910 Keswick Road
P.O. Box 1227
Baltimore, MD 21203-1227**

**Item 7.** The Insured, by acceptance of this bond, gives notice to the Underwriter terminating or canceling prior bond(s) or policy(ies) No.(s)  FIB 0006145-00, such termination or cancellation to be effective as of the time this bond becomes effective.

By: _____
Authorized Representative

U-FIB-D-0005-A CW (01/01)
DECLARATIONS
FINANCIAL INSTITUTION SELECT BOND – AGGREGATE

**AGENT**



**The F&D Companies**

# TABLE OF LIMITS OF LIABILITY
## AND DEDUCTIBLE AMOUNTS

Administrative Office
1400 American Lane
Schaumburg, IL 60196

### To be attached to Bond No.  FIB 0006145-03

| INSURING AGREEMENT OR COVERAGE | | SINGLE LOSS LIMIT OF LIABILITY | SINGLE LOSS DEDUCTIBLE |
|---|---|---|---|
| (A) | FIDELITY (including EDP Organizations) | $25,000,000 | $500,000 |
| | TRADING COVERAGE | $25,000,000 | $500,000 |
| (B) | ON PREMISES | $25,000,000 | $500,000 |
| (C) | IN TRANSIT/CASH LETTER | $25,000,000 | $500,000 |
| (D) | UNAUTHORIZED SIGNATURE OR ALTERATION | $25,000,000 | $500,000 |
| (E) | SECURITIES | $25,000,000 | $500,000 |
| (F) | COUNTERFEIT CURRENCY | $25,000,000 | $500,000 |
| (G) | AUDIT AND CLAIMS EXPENSE | $  100,000 | $    0 |
| (H) | AUTOMATED TELLER MACHINES | $   40,000 | $   5,000 |
| (I) | FRAUDULENT MORTGAGES | $25,000,000 | $500,000 |
| (J) | SERVICING CONTRACTORS | $25,000,000 | $500,000 |
| (K) | CHECK KITING FRAUD | $  100,000 | $ 10,000 |
| (L) | COMPUTER SYSTEMS FRAUD | $25,000,000 | $500,000 |
| (M) | DATA PROCESSING SERVICE OPERATIONS | $ | $ |
| (N) | VOICE INITIATED TRANSFER FRAUD | $25,000,000 | $500,000 |
| | Verification Callback Amount  $200,000 | | |
| (O) | TELEFACSIMILE TRANSFER FRAUD | $25,000,000 | $500,000 |
| | Verification Callback Amount  $ 200,000 | | |
| (P) | DESTRUCTION OF DATA OR PROGRAMS BY HACKER | $25,000,000 | $500,000 |
| (Q) | DESTRUCTION OF DATA OR PROGRAMS BY VIRUS | $25,000,000 | $500,000 |
| (R) | VOICE COMPUTER SYSTEM FRAUD | $ | $ |
| (S) | INDEMNITY FOR INJURY OR DEATH OF DIRECTORS OR EMPLOYEES | $   10,000 | N/A |
| (T) | SAFE DEPOSIT BOX | | |
| (T)(1) | LIABILITY OF DEPOSITORY | $ | $ |
| (T)(2) | LOSS OF CUSTOMERS' PROPERTY | | |
| | includes MONEY ☐    excludes MONEY ☐ | | |
| (U) | STOP PAYMENT OR WRONGFUL DISHONOR | $  100,000 | $  10,000 |
| (V) | KIDNAP – RANSOM – EXTORTION | $1,000,000 | $ |

This Table is effective as of 05/05/2007

By acceptance of this Table the previous Table U-FIB-D-0006-A CW effective 03/06/2006 is hereby canceled.

Accepted:

_____
(INSURED)

By: _____
(OFFICIAL TITLE)

U-FIB-D-0006-A CW (01/01)
TABLE OF LIMITS OF LIABILITY AND DEDUCTIBLE AMOUNTS
FINANCIAL INSTITUTION SELECT BOND - AGGREGATE



## Specialty Excess℠

Date: July 23, 2007

160 Water Street
19th FLOOR
NEW YORK, NY 10038

BISYS COMMERCIAL INS SERVICES INC
199 WATER STREET 28TH FL
NEW YORK, NY 10038

**Attention:** Samantha Gilman
**Phone:**     212-293-3945
**Fax:**       212-619-5202
**Email:**     .
**RE:**        Excess Liability
               Binder for **AMERICAN HOME MORTGAGE INVESTMENT CORPORATION**

Dear Samantha:

We are pleased to advise that coverage is bound for the captioned account according to the following terms:

**Insured Address:**   538 BROADHOLLOW ROAD
                       MELVILLE, NY 11747-3676

**Policy Period:**   From: August 4, 2007          To: August 4, 2008
                     At 12:01 A.M. standard time at the address of the Named Insured.

**Carrier:**         THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**Policy Form:**     60225 (10/04) and attachments

**Policy Number:**   5686718     **Renewal Of:**     7234577

**Coverage:**        Excess Liability

**Limits:**          $15,000,000     Each Occurrence
                     $15,000,000     Annual Aggregate, Where Applicable
                                     Excess of Underlying

**SIR:**             N/A

**Advanced Premium:**                            **Minimum Premium:**
**Minimum Earned Premium:**

**Total Premium (including Terrorism Risk Insurance Act Coverage Premium):**
**Premium for Terrorism Risk Insurance Act Coverage Premium:**

**NOTE: If the policy is subject to premium audit, the charge for TRIA coverage will also be subject to that adjustment.**

**Taxes:**           N/A.
**Surcharges:**      N/A

**Audit:**           Exposure Base: Flat Rated
                     Estimated Annual Exposure: Flat Rated
                     Rate Basis: Flat Rated
                     Rate: Flat Rated
                     Audit Period:  Not Subject to Audit

**Subject to:**

- Premium Payment is due within 30 days from the effective date
- Primary carrier must be rated A - VII or better by B

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT, HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. 2 - 13000

CVB001
Page 1 of 3

# Mortgagee Protection Policy

☒ Fidelity and Deposit Company of Maryland
☐ Colonial American Casualty and Surety Company
Declarations Page


**ZURICH**

| Policy Number: | Renewal of Policy Number: |
|---|---|
| MPP 0003417 08 | MPP 0003417 07 |

**ITEM 1.** Named Insured and Mailing Address:

AMERICAN HOME MORTGAGE
INVESTMENT CORP
538 BROADHOLLOW ROAD
MELVILLE, NY 11747

Agent Name and Address:

INTER CITY AGENCY, INC
4240 BELL BLVD STE 103
BAYSIDE, NY 11361

**ITEM 2.** ☐ Individual    ☐ Partnership    ☒ Corporation    ☐ Joint Venture    ☐ Other

SIC Code and Description:  6162-MORTGAGE BANKERS AND CORRESPONDENTS

**ITEM 3.** Policy Period:  From  05/13/07  to  05/13/08  12:01 a.m. Standard Time at the address of the Insured stated above.

The Limits of Insurance and Deductible applicable to each Coverage are as follows:

**ITEM 4.** LIMITS OF INSURANCE:

| Coverage | Limits of Insurance | | Deductible | |
|---|---|---|---|---|
| **MORTGAGEE INTEREST** | | | | |
| Residential Mortgages | $10,000,000 | Per Mortgage | $5,000 | Per Mortgage |
| Commercial Mortgages | $10,000,000 | Per Mortgage | $5,000 | Per Mortgage |
| Mobile Home Coverage | $100,000 | Per Mortgage | $5,000 | Per Mortgage |
| Flood Coverage | $2,000,000 | Per Occurrence | $5,000 | Per Mortgage |
| Direct Physical Damage From Balance of Perils | $NO COVERAGE | Per Occurrence | $NO COVERAGE | Per Occurrence |

THE MAXIMUM LIMIT OF INSURANCE FOR ALL LOSSES UNDER
MORTGAGEE INTEREST RESULTING FROM ONE OCCURRENCE IS:  $25,000,000  Per Occurrence

| **MORTGAGEE LIABILITY** | | | | |
|---|---|---|---|---|
| Failure to Maintain Property Insurance | $10,000,000 | Per Mortgage | $5,000 | Per Mortgage |
| Failure to Maintain Other Insurance | $10,000,000 | Per Mortgage | $5,000 | Per Mortgage |
| Real Estate Taxes | $100,000 | Per Mortgage | $5,000 | Per Mortgage |
| Flood (Zone Determination and Coverage) | $1,000,000 | Per Mortgage | $5,000 | Per Mortgage |

THE MAXIMUM LIMIT OF INSURANCE FOR ALL LOSSES UNDER
MORTGAGEE LIABILITY RESULTING FROM ONE OCCURRENCE IS:  $25,000,000  Per Occurrence
But not exceeding $25,000,000  Annual Aggregate

**ITEM 5.** Premium:    $ .

**ITEM 6.** Endorsements attached at Policy inception:

SEE FORM INDEX

This Declarations Page together with the completed and signed Application and the Policy with endorsements shall constitute the entire contract between the Company and the Named Insured.

_____
Date

_____
Authorized Representative

U-MPP-D-0001-B (CW)    (11/01) LDS/asr.07-06-07

POLICY NUMBER:
673-84-28
R/N    494-00-39

## AIG AMERICAN INTERNATIONAL COMPANIES

☐ AIU Insurance Company
☐ American Home Assurance Company
☐ American International Pacific Insurance Company
☐ American International Specialty Lines Insurance Co.
☐ Birmingham Fire Insurance Company of Pennsylvania

☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pittsburgh, Pa.
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

---

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY/GENERAL PARTNERS AND LIMITED PARTNERSHIP LIABILITY INSURANCE POLICY

#### PARTNERSHIP GOLD[SM]

**NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

### DECLARATIONS

ITEM 1(a).    NAMED ENTITY:           AMERICAN HOME MORTGAGE INVESTMENT CORP.

MAILING ADDRESS:           538 BROADHOLLOW ROAD
MELVILLE, NY  11747-3604

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:  NEW YORK

ADDITIONAL LIMITED PARTNERSHIPS:   N/A

ITEM 1(b):    INSURED'S REPRESENTATIVE:    AMERICAN HOME MORTGAGE HOLDINGS, INC

MAILING ADDRESS:           538 BROADHOLLOW ROAD
MELVILLE, NY  11747-3604

73063(4/99)                                                    1

NOTICE:   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

ITEM 2.    SUBSIDIARY COVERAGE:   any past, present or future Subsidiary of any Named Entity, Limited Partnership or  General Partner

ITEM 3.    POLICY PERIOD:    From:  September 27, 2006 To:    September 27, 2007
(12:01 A.M. at the address stated in Item 1.)

ITEM 4.    LIMIT OF LIABILITY: $10,000,000    aggregate for Coverages A and B combined (including Defense Costs)

ITEM 5.    RETENTION:

SECURITIES CLAIMS:

| | |
|---|---|
| Judgments & Settlements (all coverages) | None |
| Defense Costs (non-Indemnifiable Loss) | None |
| Defense Costs (entity General Partner, Coverage B(i) and Indemnifiable Loss ) | $500,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under Clause 6 in certain circumstances) |

OTHER CLAIMS:

| | |
|---|---|
| Judgments, Settlements and Defense Costs (non-Indemnifiable Loss) | None |
| Judgments, Settlements and Defense Costs (entity General Partner and Indemnifiable Loss) | $300,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts |

ITEM 6.    CONTINUITY DATES:

A.  All Coverages (other than Outside Entity Coverage)  September 27, 2002

B.  Outside Entity Coverage: Per Outside Entity:    September 27, 2002

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

ITEM 7.   PREMIUM: $270,000

Premium for Certified Acts of Terrorism Coverage under the Terrorism Risk Insurance Act of 2002: $7,864 included in policy premium.
Any coverage provided for losses caused by an act of terrorism as defined by TRIA ("TRIA Losses") may be partially reimbursed by the United States of America under a formula established by TRIA as follows: 90% of TRIA losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.
A copy of the TRIA disclosure sent with the original quote is attached hereto.

ITEM 8.   NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
(This policy is issued only by the insurance company indicated below.)

**National Union Fire Insurance Company of Pittsburgh, Pa.**
**175 Water Street**
**New York, NY  10038**

IN WITNESS WHEREOF, we have caused this policy to be signed by our president and secretary, and signed on the declarations by our duly authorized representative or countersigned in states where applicable.

*Elizabeth M. Tuck*

**SECRETARY**

**PRESIDENT**

_____
AUTHORIZED REPRESENTATIVE

_____   _____   _____
COUNTERSIGNATURE            DATE            COUNTERSIGNED AT

HILB, ROGAL & HOBBS OF NEW YORK, LLC
100 PARK AVE
NEW YORK, NY  10017-0390

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

73063(4/99)                              3                              COPY



**ACE American Insurance Company**

# Excess Liability Insurance
# Policy Declarations

This Policy is issued by the stock insurance company listed above (herein "Insurer").

UNLESS OTHERWISE PROVIDED IN THE FOLLOWED POLICY, THIS POLICY IS A CLAIMS MADE POLICY WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.

| | | |
|---|---|---|
| **Policy No.** | DOX G23651439 001 | |
| **Item 1.** | Insured Company: | American Home Mortgage Investment Corporation |
| | Principal Address: | 538 Broadhollow Road<br>Melville, NY 11747 |
| **Item 2.** | Coverages Provided: | Excess Directors and Officers/General Partner Liability |
| **Item 3.** | Followed Policy: | |
| | Insurer: | National Union Fire Insurance Company of Pittsburgh, Pa. |
| | Policy Number: | 006738428 |
| **Item 4.** | Policy Period | |
| | From 12:01 A.M. 09/27/2006 | To 12:01 A.M. 09/27/2007 |
| | (Local time at the address shown in Item 1.) | |
| **Item 5.** | Aggregate Limit of Liability: | |
| | $10,000,000  for all Loss under all Coverages combined. | |
| **Item 6.** | Premium: | |
| | $218,160 | |
| | Discovery Period Premium:  150 % of the Policy Period Premium | |
| **Item 7.** | **NOTICE TO INSURER** | |
| | **A. Notice of Claim, Wrongful Act or Loss:** | |
| | ACE USA, Professional Risk<br>Attention: Claims Unit<br>140 Broadway, 40th Floor<br>New York, NY 10005 | |
| | **B. All other notices:** | |
| | ACE USA, Professional Risk<br>Attention: Chief Underwriting Officer<br>140 Broadway, 41st Floor<br>New York, NY 10005 | |

| Item 8. | Schedule of Underlying Policies: | | | | |
|---|---|---|---|---|---|

| Insurer | Policy Number | Limits | Primary or Excess | Policy Period |
|---|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | 006738428 | $10,000,000 | Primary | 09/27/06 – 09/27/07 |

**THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.**

Date: __10/23/06__
          MO/DAY/YR.

JOHN J. LUPICA, President
_____
Authorized Representative

# *ZIGEX*

# **Financial Institutions Excess Insurance Policy**
## Declarations



**ZURICH**

## **Zurich American Insurance Company (ZAIC)**

Policy Number: 9680911 00                    Renewal of Number:  NEW

Item 1.  Named Insured and Mailing Address:
AMERICAN HOME MORTGAGE INVESTMENT
CORPORATION
538 BROADHOLLOW ROAD
MELVILLE, NY 11747

Producer:
HILB, ROGAL & HOBBS OF NY
100 PARK AVENUE
14th FLOOR
NEW YORK, NY 10017

Item 2.  Limit of Liability:          $10,000,000 excess of $30,000,000  in the aggregate
         Note that the Limit of Liability is reduced or exhausted by Defense Costs.

Item 3.  "Underlying Insurance":

         (A) "Primary Policy":    Partnership Gold
             Insurer:             National Union Fire Insurance Company
             Policy Number:       673-84-28
             Limit of Liability:  $10,000,000 retention of $500,000

         (B) Other Policy(ies):   See Endorsement #1
             Insurer:
             Policy Number:
             Limit of Liability:

Item 4.  "Policy Period":  From 12:01 a.m. on 09/27/2006    To 12:01 a.m. on  09/27/2007.
         Local time at the address shown in Item 1.

Item 5.  Endorsement(s) Effective at Inception:      See Endorsement numbers 1-5 as attached

Item 6.  Premium:        $146,533

In witness whereof, the "Insurer" issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the "Insurer".

ZURICH AMERICAN INSURANCE COMPANY (ZAIC)

_____              _____              _____
Authorized Representative                     President                            Corporate Secretary

2/28/07
Date

NYFTZ Class: 2  NYFTZ Code: 14176

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT
FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.   HOWEVER, SUCH FORMS AND RATES MUST MEET THE
MINIMUM STANDARDS OF THE NEW YORK INSURANCE DEPARTMENT.

COPY

U-ES-D-10047-A CW  (4/98)
Page 1 of 1

**AIG** AMERICAN INTERNATIONAL COMPANIES ®

- [ ] AIU Insurance Company
- [ ] American Home Assurance Company
- [ ] American International South Insurance Company
- [ ] Birmingham Fire Insurance Company of Pennsylvania
- [ ] Granite State Insurance Company
- [x] Illinois National Insurance Company
- [ ] National Union Fire Insurance Co. of Pittsburgh, Pa.
- [ ] New Hampshire Insurance Company

(each of the above being a capital stock company)

# Maximum A-Side Excess[SM] ("MAX")

## SIDE-A EXCESS AND DIC EXECUTIVE LIABILITY INSURANCE

### NOTICES

THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE.

Terms appearing in **bold** face type have special meaning. See Clause 2 of the policy.

Policy Number: *673-86-10*          Replacement of Policy Number: *N/A*

### DECLARATIONS

ITEM 1.    NAMED ENTITY: *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

MAILING ADDRESS: *538 BROADHOLLOW RD STE 1*
*MELVILLE, NY 11747-3676*

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:
*New York*

ITEM 2.    POLICY PERIOD: From: *September 27, 2006* To: *September 27, 2007*
(12:01 A.M. at the address stated in Item 1.)

ITEM 3. (a)  LIMIT OF LIABILITY: *$10,000,000*    aggregate for all coverages and all **Insured Persons** afforded coverage under this policy combined (including **Defense Costs**) (herein "**Limit of Liability**").

(b)  TOTAL UNDERLYING LIMITS
(herein "**Total Underlying Limits**"): *$40,000,000*

(c)  RETENTION(S) OF PRIMARY POLICY: *$500,000*
*$300,000*
*$300,000*

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. ALL POLICY FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*1134806*

**2-14047**

81860 (4/03)    *COPY*

© 2003 American International Group, Inc.
All Rights Reserved

1

ITEM 4.    SCHEDULE OF PRIMARY AND UNDERLYING EXCESS POLICIES (herein collectively the "Underlying Program"):

Primary Policy: (herein "Primary Policy")

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| National Union Fire Insurance Co. | 673-84-28 | $10,000,000 | 09/27/2006-09/27/2007 |

**Underlying Excess Policy(ies):**

| | | | |
|---|---|---|---|
| ACE Bermuda Insurance Ltd. | D0XG23651439001 | $10,000,000 Excess of $10,000,000 | 09/27/2006-09/27/2007 |
| LONDON | LDUSA0601849 | $10,000,000 Excess of $20,000,000 | 09/27/2006-09/27/2007 |
| Zurich American Insurance Co. | EOC968091100 | $10,000,000 Excess of $30,000,000 | 09/27/2006-09/27/2007 |

ITEM 5.    CONTINUITY DATE: *September 27, 2006*

ITEM 6.    PREMIUM: *$100,000*

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $990 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
*A copy of the TRIA disclosure sent with the original quote is attached hereto.*

ITEM 7.    NAME AND ADDRESS OF INSURER (herein "Insurer"):

*Illinois National Insurance Company*
*175 Water Street*
*New York, NY 10038*

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. ALL POLICY FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

©2003 American International Group, Inc. All Rights Reserved

*1134806*

*2-14047*

81860 (4/03)    COPY                    2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------  x
                                                                  :
In re:                                                            :    Chapter 11
                                                                  :
AMERICAN HOME MORTGAGE                                             :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,                   :
                                                                  :    Jointly Administered
                          Debtors.                                :
                                                                  :    Ref. Docket No. 14
----------------------------------------------------------------  x

**ORDER PURSUANT TO SECTIONS 105(a), 345, AND 503(b)(1)
OF THE BANKRUPTCY CODE (I) AUTHORIZING
DEBTORS TO MAINTAIN AND USE EXISTING BANK ACCOUNTS
AND BUSINESS FORMS, (II) AUTHORIZING THE DEBTORS TO MAINTAIN
AND USE EXISTING CASH MANAGEMENT SYSTEM, AND (III) EXTENDING THE
DEBTORS' TIME TO COMPLY WITH SECTION 345 OF THE BANKRUPTCY CODE**

Upon consideration of the motion (the "Motion")[1] of American Home Mortgage

Holdings, Inc., and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, the "Debtors"),[2] seeking entry of an order

pursuant to sections 105(a), 345, and 503(b)(1) of title 11, United States Code (the "Bankruptcy

Code") (i) authorizing the continued use of existing bank accounts and business forms; (ii)

authorizing the continued use of their existing cash management system; (iii) extending the time

within which the Debtors must comply with section 345(b) of the Bankruptcy Code, all as

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation
(3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979);
American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home
Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC
("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc.
("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York
corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except
for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

described more fully in the Motion; and (iv) granting administrative expense priority status to postpetition Intercompany Claims held by a Debtor against one or more of the other Debtors; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Motion having been provided; and it appearing that no other or further notice of the Motion need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and upon the Motion, and the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief, dated as of the Petition Date; and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted to the extent set forth herein; and it is further

ORDERED that the Debtors are authorized to (i) designate, maintain, and continue to use their existing pre-petition Bank Accounts, in the names and with the account numbers existing immediately prior to the commencement of their chapter 11 cases; provided, however, that the Debtors reserve the right to close some or all of their pre-petition Bank Accounts and open new debtor in possession accounts; provided further, however, that any new accounts shall be with a bank that is insured by the Federal Deposit Insurance Corporation and organized under the laws of the United States or any state therein; (ii) deposit funds in and withdraw funds from such accounts by all usual means, including, without limitation, checks, wire transfers, and other debits; (iii) pay any ordinary course bank fees incurred post-petition in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts; and (iv) treat the Bank Accounts for all purposes as debtor in possession accounts; and it is further

-2-

ORDERED that the Debtors shall notify the Office of the United States Trustee upon the closing of any existing Bank Account or opening of any new Bank Account; and it is further

ORDERED that all banks in which the Debtors maintain the Bank Accounts as of the commencement of their chapter 11 cases are authorized and directed to continue to maintain, service, and administer such Bank Accounts as accounts of a Debtor as a debtor in possession in accordance with the documents governing such Bank Accounts; provided, however, that nothing contained herein shall authorize any such bank to honor any check issued or dated prior to the commencement of the Debtors' chapter 11 cases, if the applicable Debtor has timely issued an appropriate stop payment order, except as otherwise provided by separate order(s) of this Court; and it is further

ORDERED that the Debtors are authorized to maintain and continue to use any and all business forms substantially in the forms existing immediately prior to the commencement of the Debtors' chapter 11 cases, without reference to their status as debtors in possession; and it is further

ORDERED that, notwithstanding the foregoing, in the event that the Debtors need to purchase new business forms during the pendency of these chapter 11 cases, such business forms will include a legend referring to the Debtors' as "debtor in possession"; "DIP"; or such similar terms; and it is further

ORDERED that the Debtors and their duly appointed agents and custodians are authorized and empowered to continue to manage the Debtors' cash pursuant to the cash management system maintained by the Debtors prior to the commencement of their chapter 11 cases, to continue to perform their obligations under the agreements governing such system, and to transfer funds by and among the Debtors and their affiliates, and by and among their

-3-

respective Bank Accounts and other accounts maintained with or by their duly appointed agents and custodians, as and when needed and in the amounts necessary or appropriate to maintain their operations and facilitate the orderly operation of their estates or businesses; provided, however, that such transfers of funds by and among the Debtors and their affiliates do not violate or impair any party's rights under the Securitization Documents, the mortgage loan purchasing and servicing agreements and related documents for sales of whole loans to third parties (the "Whole Loan Documents") or other similar documents.  Notwithstanding anything in this Order, in accordance with that certain Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (together with any final order entered in respect thereof, the "Cash Collateral Order"), the Debtors shall not transfer any Cash Collateral (as defined in the Cash Collateral Order) from any Debtor to another Debtor or any other party; and it is further

ORDERED that the Debtors shall maintain records of transfers within the cash management system so that post-petition transfers and transactions shall be adequately documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the commencement of these chapter 11 cases; and it is further *ok* ~~*and in*~~

ORDERED that the Debtors are authorized to continue operating as mortgage *compliance with the DIP Financing Documents (as defined in the Interim DIP order)* servicer in the ordinary course of business, including, but not limited to, operating and maintaining the Custodial Accounts in connection and in accordance with the Securitization Documents and Whole Loan Documents; and it is further

ORDERED that the Debtors are authorized to continue to deduct amounts from the Custodial Accounts for the Loan Servicing Advances and HELOC Advances; and it is further

*, the DIP Financing Documents (as defined in the Interim order (A) Approving Debtor-In-Possession Financing, (B) Granting Liens and Allowing Superpriority Administrative Claims and other matters (the ~~Interim~~ "DIP order") with respect to the DIP Collateral (as defined in the DIP order). together with any final order entered in respect thereof)*

ORDERED that in the course of providing cash management services to the Debtors, the Debtors' banks are authorized, without further Order of this Court, to continue to deduct from the appropriate accounts of the Debtors, the bank's customary fees and expenses associated with the nature of the deposit, cash management and custodial services rendered to the Debtors. The Debtors are further authorized to pay customary prepetition banking and custody fees owed to any of their banks. Any such customary postpetition banking and custody fees will have administrative priority; and it is further

ORDERED that the Debtors' banks are authorized to process, reverse and debit deposits which are returned by payor banks in the ordinary course of business, honor and pay all prepetition checks and transfers related to the P&I Funds, the T&I Funds or otherwise made in the ordinary course of business of loans serviced by the Debtors; and it is further

ORDERED that no later than five (5) business days following entry of this Order, the Debtors shall make reasonable efforts to provide to each applicable bank a list (the "Prepetition Check List") of applicable checks (except with respect to checks drawn on or amounts transferred from Custodial Accounts) that have not been honored prior to the Petition Date (the "Prepetition Checks"), designate whether or not such Prepetition Checks should be honored pursuant to any orders entered by the Court, and that a bank's reasonable reliance on the Prepetition Check List in connection with honoring or dishonoring of a Prepetition Check, as the case may be, shall not constitute a violation of this Order and shall have no liability for a Prepetition Check or other item drawn on any account that is the subject of this Order; and it is further

ORDERED that each bank that maintains a disbursement account shall implement reasonable handling procedures designed to effectuate the terms of this Order, and no bank that implements such handling procedures and then honors a prepetition check or other item drawn

-5-

on any account that is the subject of this Order either (i) at the direction of the Debtors to honor such prepetition check or item, (ii) in good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, shall be deemed in violation of this Order and shall have no liability for a prepetition or other item drawn on account that is the subject of this Order; and it is further

ORDERED that the Debtors shall maintain records in accordance with their normal and customary practices reflecting all transfers of funds under the terms and conditions provided by the existing agreements with the institutions participating in the Debtors' cash management system. In connection with the ongoing utilization of their cash management system, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be ascertained, traced and recorded properly on the applicable accounts; and it is further

ORDERED that the Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court. In addition, parties to the securitization transactions are authorized, free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties; and it is further

-6-

ORDERED that pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, any claims against one or more of the Debtors arising from postpetition performance of the Securitization Servicing Functions shall either be paid in accordance with the Securitization Documents or be afforded priority as an administrative expense; and it is further

ORDERED that pursuant to section 553 of the Bankruptcy Code, to the extent any trustees under each Securitization Document are entitled to a right of set off, such right shall be preserved, including, without limitation, the right to recover from the Debtors funds held by the trustee on the Petition Date and released to the Debtors pursuant to the operative documents, and such counterparties shall not be deemed to have waived any defenses to any such asserted rights of set off, so that all such rights are reserved. To the extent such right of set off existed on the Petition Date and at such later date as is appropriate such right is lost or diminished because of a lack of the Debtors' funds against which to set off, such banks shall be granted, as adequate protection therefore, an administrative expense allowed under section 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; and it is further

ORDERED that the trustees under each Securitization Document shall be afforded reasonable access, through their employees or designated agents, to the Debtors' facilities, personnel and record-keeping systems in order to allow them to monitor the Debtors' compliance with the Securitization Servicing Functions and to make contingency plans in the event the Debtors seek to reject any of the Securitization Documents which may be executory contracts. The Debtors shall cause their servicing and accounting personnel to be reasonably available to, and to cooperate reasonably with, trustee representatives in the conduct of such efforts. Such access and cooperation shall be subject to reasonable limitations as to time, place and manner, as the Debtors may prescribe to avoid any undue burden to their business operations. In addition, upon request of the trustee under any Securitization Document, the

-7-

servicing Debtor entity shall cause any other depositary institution holding funds or accounts established pursuant to, or in implementation of, the Securitization Documents, to afford such trustee reasonable electronic access to view and monitor transactions and balances in such accounts. The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provisions of the Securitization Documents in accordance with the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents; and it is further

ORDERED that nothing in this Order shall be deemed to limit any right of any trustee under any Securitization Document to seek relief from the automatic stay to terminate the Debtor servicing entities' securitization appointment in appointment in accordance with the Securitization Documents; nor shall anything in this Order be deemed to waive or impair any right of the Debtors to oppose any such motion for relief from the automatic stay.

ORDERED that, subject to the preceding decretal paragraph, the Debtors shall continue to perform all Securitization Servicing Functions and other reporting requirements under each Securitization Document until the earlier of termination of the Securitization Document in accordance with its terms or the effective date of any rejection of the relevant servicing agreement, which effective date (in the case of rejection) shall not be earlier than thirty (30) days after the order approving such rejection becomes final unless the Court shortens such time upon request by the Debtors after notice and an opportunity to be heard by the trustees under such Securitization Document, and a showing by the Debtors of adequate cause therefore and a balancing of the harm that will be suffered by the Debtors compared to the harm that will be suffered by the trustees under such Securitization Document, the underlying trusts or investors

-8-

therein, as well as the underlying mortgagors (the "Termination Date"). All claims accruing after the Petition Date prior to the Termination Date shall be afforded priority pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code. Nothing in this Order shall: (a) impair the Debtors' rights to seek to assume or to assume and assign the servicing agreements, subject to any of the counterparties' rights or defenses thereto; (b) constitute a finding by the Court with respect to whether any servicing agreement is or remains subject to assumption, assignment, or rejection under section 365 of the Bankruptcy Code and otherwise applicable law; or (c) impair the right of a non-Debtor party to a servicing agreement rejected by a Debtor to seek an earlier effective date of rejection; and it is further

ORDERED that the Debtors' time to come into compliance with section 345 of the Bankruptcy Code is hereby extended for a period of sixty (60) days from the Petition Date (the "Extension Period"); provided, however, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period; and it is further

ORDERED that the Debtors are authorized, from and after the Petition Date, to continue to engage in intercompany transactions. All Intercompany Claims held by one Debtor against another Debtor arising from postpetition intercompany transfers shall be entitled to administrative expense priority pursuant to section 503(b)(1) of the Bankruptcy Code; provided, however, this Order shall not affect the rights of the Pre-Petition Secured Parties as provided in the Cash Collateral Order. In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including intercompany transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts; and it is further              ˰such term is

ORDERED that nothing contained in this Order or the Motion shall constitute a rejection or assumption by the Debtors, as debtors in possession, of any executory contract or
or the rights of the Secured Parties (as defined in the ~~Interim~~ DIP Order).

unexpired lease by virtue of reference to any such contract or lease in the Motion; and it is further

*(556)*

ORDERED that no rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 559, 560 and 561(a) of the Bankruptcy Code, whatever they might or might not be, are affected by the entry of this Order; and it is further

ORDERED, that all of the provisions of this Order pertaining to the Debtors' performance or transfer of servicing functions with respect to securitizations or with respect to transactions of the kind listed in sections 555, 559, 560 and 561(a) of the Bankruptcy Code, or to *(556)* claims or set-off rights, if any, arising thereunder, shall apply equally to the Debtors' performance or transfer of servicing functions with respect to repurchase agreements, Whole Loan Documents, or any other agreement with respect to which any of the Debtors holds *and related servicing agreements* mortgage servicing rights; and it is further

ORDERED that nothing in this Order shall limit, expand or otherwise affect any rights and obligations of the Debtors and other parties under any of the Debtors' repurchase agreements, including the obligations, if any, under any repurchase agreements to segregate funds and transfer servicing rights; and it is further

ORDERED that in connection with (1) that certain Mortgage Loan Purchase and Servicing Agreement among Broadhollow Funding, LLC ("Broadhollow"), as purchaser, AHM Corp., as seller, Columbia National, Incorporated (n/k/a AHM Servicing), as servicer, and AHM Investment, as performance guarantor, dated May 27, 2004 (the "Broadhollow MLPSA"), and (2) that certain Mortgage Loan Purchase and Servicing Agreement among Melville Funding, LLC ("Melville"), as purchaser, AHM Corp., as seller, Columbia National, Incorporated (n/k/a AHM Servicing), as servicer, and AHM Investment, as performance guarantor, dated May 27, 2004 (the "Melville MLPSA"), both of which commenced the liquidation of the mortgage loans

-10-

held by such trusts prior to the commencement of these chapter 11 cases in accordance with the terms of their respective Securitization Documents, the Debtors shall comply with the terms of the Broadhollow MLPSA and the Melville MLPSA, and each of the documents executed in connection with such documents (collectively, the "Program Documents") to liquidate the mortgage loans in a commercially reasonable manner in accordance with such documents; and it is further

ORDERED that this Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and implementation of this Order.

Dated:   Wilmington, Delaware
        August  7 , 2007

Christopher S. Sontchi
United States Bankruptcy Judge