## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case Nos.  07-11047 (CSS) |
| **HOLDINGS, INC., et al.,**[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing: August 22, 2007 |

### STIPULATION BETWEEN CERTAIN DEBTORS
### AND ABN AMRO BANK N.V.; ORDER THEREON

1.       Chapter 11 Debtors and Debtors in Possession American Home Mortgage

Acceptance, Inc., ("AHMA"), American Home Mortgage Corp. ("AHMC"), American Home

Mortgage Investment Corp. ("AHMI"), and American Home Mortgage Servicing, Inc.

("AHMS") on the one hand and ABN AMRO Bank N.V. ("ABN" ) on the other hand (AHMA,

AHMC, AHMI, AHMS and ABN, collectively, the "Parties") hereby enter into this Stipulation

(the "Stipulation"), by and through their respective counsel of record, effective as of the date of

entry of an order approving this Stipulation, based upon the following Recitals.

### Recitals

2.       On August 6, 2007 (the "Petition Date"), the Debtors commenced voluntary cases

(the "Bankruptcy Cases") under title 11, chapter 11 of the United States Code, 11 U.S.C. §§ 101,

et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of

---

[1]   The Debtors and Debtors in Possession are American Home Mortgage Holdings, Inc., American
Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage
Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC,
Homegate Settlement Services, Inc., and Great Oak Abstract Corp. (individually, a "Debtor," and
collectively, the "Debtors").

Delaware (the "Court"). The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an official committee of unsecured creditors.

3.      ABN asserts that the Debtors that are Parties hereto – AHMA, AHMC, AHMI, and AHMS – are parties to a Master Repurchase Agreement, dated as of February 28, 2007 (as may have been supplemented and amended from time to time prior to the Petition Date, the "ABN MRA"), under which AHMS, AHMA, AHMC and AHMI are Sellers (in such capacities, the "Sellers"), AHMS is the Servicer (in such capacity, the "Servicer"), and ABN, it its capacity as Agent for the Purchasers, is the Buyer.

4.      ABN asserts that AHMS, AHMA, AHMC, AHMI, ABN and others are parties to a number of additional agreements related to the ABN MRA, including but not limited to the following:

        (a)  a Custodial Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AHMI as Sellers, AHMS as the Servicer, ABN as Agent, and Deutsche Bank National Trust Company ("Deutsche Bank") as Custodian;

        (b)  an Account Control Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AHMI as Sellers, AHMS as Servicer, ABN as Agent, and Deutsche Bank as Bank (the "Account Control Agreement");

        (c)  an Electronic Tracking Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AHMI as Sellers, AHMS as Servicer, MERSCORP, Inc. as Electronic Agent, Mortgage Electronic Registration Systems, Inc., and ABN as Agent.

(d) a Letter Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AIIMI as Sellers, AHMS as Servicer, Amsterdam Funding Corporation as the initial Conduit Purchaser, the other Conduit Purchasers from time to time, ABN, as a Committed Purchaser, the other Committed Purchasers from time to time, ABN as Group Agent for the ABN AMRO Group, the other Group Agents from time to time, and ABN as Agent for the Conduit Purchasers and the Committed Purchasers (the "Letter Agreement"); and

(e) a Performance Guaranty, dated as of February 28, 2007, made by AHMI and American Home Mortgage Holdings, Inc. in favor of ABN as Agent, the Group Agents and other Indemnified Parties under the ABN MRA.

5.      The agreements referred to in paragraphs 3 and 4 (copies of which are attached to the Declaration of William J. Fitzgerald at docket no. 34 in the Bankruptcy Cases) are referred to collectively hereinafter as the "Agreements."

6.      ABN asserts, but the Debtors do not concede, that the Agreements are agreements and transactions of the kind described in Bankruptcy Code § 561(a).

7.      ABN asserts, but the Debtors do not concede, that pursuant to the Agreements and during a five-month period prior to the Petition Date, ABN purchased from the Sellers approximately four hundred and thirty (430)  mortgage loans (such mortgage loans, collectively with all documentation evidencing such loans, the "Mortgage Loans") in the original principal amount of approximately $222 million.  The Mortgage Loans are residential construction loans made by the Sellers to mortgagors (the "Mortgagors") who are constructing or renovating single-family homes pursuant to mortgage contracts (the "Mortgage Contracts") between the Sellers and the Mortgagors.  ABN asserts that as of July 31, 2007: (i) the Mortgagors owed

3

approximately $145 million in the aggregate in connection with advances made to the

Mortgagors under the Mortgage Loans (the "Mortgagor Advances"); and (ii) up to approximately

$77 million in the aggregate in additional advances were, subject to the terms of the respective

Mortgage Loans, available to be drawn by the Mortgagors in respect of the Mortgage Loans to

fund the completion of the construction or renovation projects (the "Additional Mortgagor

Advances"). ABN asserts that under the Agreements the Sellers funded the Mortgagor Advances

through the sale of the Mortgage Loans to ABN.

8.      ABN asserts, but the Debtors do not concede, that prior to the commencement of

the Bankruptcy Cases, on or about August 1, 2007 and August 3, 2007, ABN delivered to Sellers

and Servicer what ABN asserts to be notices of events of default under the Agreements (the

"Default Notices").

9.      ABN asserts, but the Debtors do not concede, that on August 17, 2007, ABN

delivered to Sellers a letter of that same date (the "Consent Letter") pursuant to which ABN

consented to the Sellers' use of Post-Petition Collections (as that term is defined in paragraph 13

below) on a one-time basis, in an amount of up to $355,668.60, to make Additional Mortgagor

Advances, to be governed in all respects by the Agreements and this Stipulation and such Order

of the Court as may be entered thereon.

10.     The Parties enter into this Stipulation for the purposes of: (i) permitting, but not

obligating, ABN to fund certain Additional Mortgagor Advances by Sellers, including but not

limited to any Additional Mortgagor Advances made pursuant to the Consent Letter; and (ii)

authorizing and directing ABN to make the Servicing Payments (as that term is defined in

paragraph 17 below) to the Sellers for continued post-Petition Date servicing of the Mortgage

Loans.

11.     Based upon the foregoing, the Parties hereby stipulate and agree as follows.

## Agreements

12.     The Sellers hereby are authorized to make funding requests to ABN in the manner provided for in the Agreements in an amount not to exceed $32 million in the aggregate to fund Additional Mortgagor Advances by Sellers to Mortgagors under the Mortgage Contracts in respect of existing Mortgage Loans, and ABN hereby is authorized, but shall not be obligated, to fund such requested Additional Mortgagor Advances to Sellers in respect of existing Mortgage Loans in the manner set forth in paragraph 13 below.

13.     All "Collections," as that term is defined in the ABN MRA, received by any of the Sellers on and after the Petition Date (the "Post-Petition Collections") shall be deposited into the "Buyer Account," as required by and defined in the Account Control Agreement, or, alternatively, in a segregated Debtor in Possession account, to be disposed of as provided in the Agreements and this Stipulation; and Sellers shall account to ABN for all Collections received by any of the Sellers prior to the Petition Date and in the possession of the Debtors on the Petition Date, and all pre-Petition Date Collections now in the possession of the Debtors shall not be used by any of the Debtors for any purpose except pursuant to further order of the Court. ABN hereby is authorized to provide funds (but shall have no obligation to provide funds, and may at any time refuse to provide funds or refuse to continue to provide funds) to Sellers for the Additional Mortgagor Advances and is authorized and directed to make the Servicing Payments by: (a) written authorization to Sellers to use the Post-Petition Collections to fund the Mortgagor Advances and Servicing Payments; or (b) in the event there are insufficient Post-Petition Collections to fund the requested Mortgagor Advances or Servicing Payments, by making

5

transfers of funds to the Sellers pursuant to, and subject to all of the terms and conditions of, the Agreements and this Stipulation (clauses (a) and (b) collectively, the "ABN Advances").

14.    The ABN Advances shall be governed in all respects by the Agreements and this Stipulation; provided, however, that in the event of any inconsistency between the terms of the Agreements and the terms of this Stipulation, the terms of this Stipulation shall govern.  All ABN Advances shall be used by the Sellers for the purpose of making Additional Mortgagor Advances under the applicable Mortgage Contract in respect of an existing Mortgage Loan or applied as Servicing Payments.  In the event and to the extent that any of the Sellers does not use ABN Advances to fund Additional Mortgagor Advances or for Servicing Payments, such ABN Advances shall be returned to ABN within two business days after receipt by Sellers of a written request from ABN for return of such funds.

15.    The ABN Advances (but not including the Servicing Payments), to the extent they are new money and not derived from Post-Petition Collections, are not and shall not become "property of the estate," as such term is defined in section 541 of the Bankruptcy Code, of the Sellers or any other Debtor.  Notwithstanding anything to the contrary in any other order of the Court, including but not limited to any order approving Debtor in Possession financing, the use of cash collateral, or the approval of cash management procedures and practices, none of the ABN Advances made to fund Additional Mortgagor Advances shall be used as, become or be deemed to constitute collateral for any outstanding or future obligation of the Debtors; provided, however, that such ABN Advances made to fund Additional Mortgagor Advances remain subject to the protective security interest provided for in Section 6 of the ABN MRA.  Notwithstanding any provision to the contrary in this Stipulation, the ABN Advances shall not constitute a loan, advance or extension of credit to the Sellers or any other Debtor, and nothing contained herein

6

shall be deemed to grant to ABN an administrative expense or any other claim in respect of the ABN Advances; provided, however, that ABN preserves and reserves the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments already earned by the Sellers) applied or used by any of the Sellers in any manner inconsistent with the Agreements or this Stipulation.

16.     Notwithstanding any other provision in this Stipulation, ABN shall not, in respect of any ABN Advances or expenses incurred in connection with the transactions contemplated by this Stipulation, assert or seek to enforce: (a) an administrative or priority claim against any of the Debtors; (b) a lien against or security interest in any property of any Debtor's estate which constitutes "Pre-Petition Collateral" (as defined in the Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (together with any final order entered in connection therewith, the "Cash Collateral Order")) or "Collateral" (as defined in the Cash Collateral Order); or (c) any other lien against or security interest in any property of any Debtor's estate, other than and specifically excluding the protective security interest provided for in Section 6 of the ABN MRA.

17.     The Sellers have prepared the following budget ("Budget") for the remainder of calendar 2007 for servicing the Mortgage Loans and the other construction loans that the Sellers serviced prior to the Petition Date: for the month of August 2007, $168,036; for the month of September 2007, $164,436; for the month of October 2007, $161,196; for the month of November 2007, $195,107; and for the month of December 2007, $276,659. The Sellers hereby are authorized to submit monthly requests to ABN for payment of ABN's pro-rata share of the Budget, and ABN agrees, and hereby is authorized and directed, to make such payments (the

7

"Servicing Payments"); provided, however, that the Servicing Payments shall not exceed eighty percent of the monthly budgeted amounts stated in the immediately preceding sentence, and such Servicing Payments shall be due and payable only so long as the Sellers (or their successors or designees as allowed under the Agreements or pursuant to subsequent Court order) are servicing the Mortgage Loans, but in any event Sellers shall be paid the Servicing Payments for post-Petition Date services already provided. The term "pro rata" as used in this paragraph shall mean ABN's share of the total number of construction loans serviced by the Sellers (which the Parties presently believe is approximately 80%). ABN's agreement to pay such servicing costs shall be without prejudice to its rights under the Agreements (including its right to designate a replacement servicer) and the Default Notices, and shall not constitute a waiver, modification or amendment of any provision of the Agreements or the Default Notices. The Sellers agree to provide ABN with a monthly reconciliation of the actual servicing costs against the budgeted amounts stated in this paragraph, and the actual amounts due as Servicing Payments shall be adjusted accordingly based upon the agreements of the Parties or subsequent Court order, and prior written notice to counsel for the Consent Parties (as that term is defined in paragraph 23 below).

18.    The Sellers shall continue to provide ABN with reports on Collections, Mortgagor Advances and related matters in the same manner the Sellers accounted to ABN prior to the Petition Date in accordance with the Agreements.

19.    Each of the Parties, and all parties in interest in the Bankruptcy Cases, reserve all rights with respect to the Collections, including but not limited to the proper characterization and treatment of Collections under the Agreements.

20. Nothing contained herein shall modify, terminate or transfer, or be deemed to effectuate a modification, termination or transfer of, the Sellers' rights, if any, to service or administer any mortgage loans and related activities.

21. Each of the Parties reserves all rights with respect to the Agreements and the Default Notices, and nothing in this Stipulation is intended, or shall be deemed in any legal proceeding, to waive, amend or modify any provision of, or any rights of any Parties under, the Agreements or the Default Notices.

22. The Mortgagors are not direct or third party beneficiaries of this Stipulation.

23. This Stipulation may not be amended or modified except pursuant to a writing that is signed by all Parties and consented to by each of the Official Creditors Committee, the Administrative Agent under the Cash Collateral Order, and the administrative agent under any debtor-in-possession financing agreements then in effect (collectively the "Consent Parties"), and approved by the Court; provided however that in the absence of consent by all of the Consent Parties, the amendment or modification may be presented to the Court upon at least ten days prior written notice to counsel for the Consent Parties.

24. Whether or not this Stipulation is approved by the Court, nothing contained herein may be used as, or deemed to be, an admission of liability of any of the Parties with respect to any matter.

25. This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same document.

26. The Parties hereto represent and warrant to each other that they are authorized to execute this Stipulation, that each has full power and authority to enter into and perform in accordance with the terms of this Stipulation, and that this Stipulation is duly executed and

9

delivered and constitutes a valid and binding agreement in accordance with its terms, subject, in all respects in the case of AHMA, AHMC, AHMI and AHMS, to Court approval.

27.    This Stipulation shall become effective immediately upon entry of an order approving the Stipulation.

Dated:  August 21, 2007
       Wilmington, Delaware

ABN AMRO BANK N.V., by its counsel,

MILBANK, TWEED, HADLEY & McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:     (213) 629-5063

    -and-

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701

AMERICAN HOME MORTGAGE ACCEPTANCE, INC.,  AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE INVESTMENT CORP., ANERICAN HOME MORTGAGE SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT & TAYLOR LLP

Robert S. Brady (No. 2847)
Sharon M. Zieg (No. 4196)
Edwin J. Harron (No. 3396)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

**SO ORDERED** this _22nd_ day of August, 2007.

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

10