## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
In re                                             :
                                                  :   Chapter 11
American Home Mortgage Holdings, Inc.,            :
et al.                                            :
                                                  :   Case No. 07-11047 (CSS)
Debtors.                                          :
                                                  :   (Jointly Administered)
                                                  :
                                                  :
-------------------------------------------------- x


-------------------------------------------------- x
Bear Stearns Mortgage Capital Corporation         :
and EMC Mortgage Corporation,                     :   Adversary Proceeding
                                                  :   Case No. _____( __ )
                  Plaintiffs,                     :
                                                  :
American Home Mortgage Investment                 :
Corp., American Home Mortgage Corp.               :
American Home Mortgage Acceptance,                :
Inc. and American Home Mortgage                   :
Servicing, Inc.,                                  :
                                                  :
                  Debtor-Defendants.              :
                                                  :
-------------------------------------------------- x
```

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Bear Stearns Mortgage Capital Corporation ("BSMCC") and EMC Mortgage Corporation ("EMC"), by their undersigned attorneys, for their complaint against the Defendants American Home Mortgage Investment Corp. ("AHMI"), American Home Mortgage Corp. ("AHMC"), American Home Mortgage Acceptance, Inc. ("AHMA"), and American Home Mortgage Servicing, Inc. ("AHMS") (together, the "the Defendants"), allege upon knowledge with respect to BSMCC and EMC and their own acts, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.      This is an action for breach of contract, declaratory judgment and conversion, which seeks injunctive relief, an accounting and a constructive trust.

2.      BSMCC and the Defendants are parties to a Whole Loan Master Repurchase Agreement dated as of June 23, 2004 (as amended, supplemented and otherwise modified on November 22, 2004 and August 29, 2005, the "Repurchase Agreement").

3.      Pursuant to the Repurchase Agreement, BSMCC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from the Defendants, and the Defendants were obligated to repurchase the Purchased Mortgage Loans from BSMCC on demand, or at a later, agreed-upon date (the "Repurchase Date").  As of July 30, 2007, BSMCC owned Purchased Mortgage Loans purchased from the Defendants pursuant to the Repurchase Agreement in an amount exceeding $117,000,000 in unpaid principal and interest balances.

4.      With respect to any purchase of Purchased Mortgage Loans by BSMCC, the Repurchase Agreement requires the Defendants to maintain a certain margin amount, which is calculated through the application of a percentage (agreed upon by the parties in advance of each purchase) to the price at which the Defendants have agreed to repurchase the Purchased Mortgage Loans from BSMCC.

5.      Under Paragraph 4 of the Repurchase Agreement, if at any time the Defendants fail to maintain the requisite margin amount, as determined by the current mark-to-market value of the Purchased Mortgage Loans (a "Margin Deficit"), BSMCC is entitled to notify the Defendants of the Margin Deficit and require the Defendants to transfer cash in the amount of the deficiency (a "Margin Call").  Depending upon the time of day that BSMCC issues the Margin Call, the Defendants are required to transfer cash in the amount of the Margin Deficit later that same business day, or on the next business day.

6.      Under Paragraph 11(a)(ii) of the Repurchase Agreement, the Defendants' failure timely to meet a Margin Call constitutes an Event of Default (as that term is defined in the Repurchase Agreement).  If such an Event of Default occurs, BSMCC has the option to notify the Defendants that the Repurchase Date is deemed immediately to have occurred, thus rendering all amounts immediately due and payable by the Defendants and requiring the Defendants to transfer to BSMCC all documents and subsequently received funds related to such Purchased Mortgage Loans.

7.      At 9:40 a.m. New York City time on July 30, 2007, in accordance with its rights under Paragraph 4 of the Repurchase Agreement, BSMCC notified AHMA by letter that a Margin Deficit in the amount of $3,372,508.64 existed on the Purchased Mortgage Loans purchased by BSMCC, and requested that AHMA transfer cash in the amount of the Margin Deficit to BSMCC by 5:00 p.m. that day.

8.      AHMA did not timely transfer the funds necessary to remedy the Margin Deficit, as it was obligated to do under the Repurchase Agreement.  As a result, on August 2, 2007, BSMCC served AHMA with a letter (the "Default Notice") notifying the Defendants that (i) an Event of Default existed under the Repurchase Agreement and (ii) the Repurchase Date for the each of the Purchased Mortgage Loans sold to BSMCC under the Repurchase Agreement had been deemed to have occurred.

9.      Upon such notice, pursuant to Paragraph 11(c) of the Repurchase Agreement, the Defendants were required, among other obligations, to "immediately deliver or cause the Custodian to deliver to [BSMCC] any documents relating to Purchased Mortgage Loans subject to such Transactions then in Seller's possession."

10.      On August 6, 2007, pursuant to Paragraphs 11(e) and 12(c) of the Repurchase Agreement, BSMCC conducted an auction of the Purchased Mortgage Loans and, on

3

August 10, 2007, sold them to EMC, a Bear Stearns affiliated entity. BSMCC sold the Purchased Mortgage Loans to EMC on a servicing released basis, which means that BSMCC sold all rights relating to the Purchased Mortgage Loans, including the right to service the Purchased Mortgage Loans.

11.    On August 13, 2007, BSMCC sent AMHA a letter (i) notifying the Defendants of the sale, and (ii) pursuant to Paragraph 11(c) of the Repurchase Agreement, requesting that the Defendants transfer "the servicing, including, among other things, all servicing arrangements, servicing files, documents and any payments and escrow accounts relating to the Mortgage Loans, to EMC by 5:00 p.m. on September 5, 2007." BSMCC also requested that the Defendants inform BSMCC by 5:00 p.m. on August 15, 2007 whether they would comply with the request, including by providing evidence that goodbye letters had been sent to Purchased Mortgage Loan borrowers.

12.    The Defendants have ignored BSMCC's demand and did not, by August 15, 2007, agree to transfer the servicing, including all servicing arrangements, servicing files and documents related to the Purchased Mortgage Loans (collectively, the "Servicing Documents"), to EMC by September 5, 2007 or to send goodbye letters to borrowers. As a result of the Defendants' refusal to cooperate, EMC is now holding Purchased Mortgage Loans that cannot be serviced by it, giving rise to potentially substantial damages to BSMCC who sold the loans to EMC on a servicing released basis, pursuant to Paragraphs 11(e) and 12(c)(ii) of the Repurchase Agreement.

13.    The servicing of the Purchased Mortgage Loans, the documents related to those Purchased Mortgage Loans, and the payments and escrow accounts related to those Purchased Mortgage Loans are not the property of the Defendants. Given the Defendants' financial condition and the insolvency proceedings, absent injunctive relief, BSMCC and EMC

will suffer immediate irreparable harm unless: (i) EMC is given immediate access to the Servicing Documents; (ii) the Defendants immediately transfer to EMC any funds held by them in connection with the Purchased Mortgage Loans; and (iii) the servicing of the Purchased Mortgage Loans owned by EMC is immediately transferred to EMC, or the successor servicer chosen by EMC, in order to preserve and maximize the value of the Purchased Mortgage Loans.

## JURISDICTION AND VENUE

14.    On August 6, 2007 (the "Commencement Date"), the Defendants and other of their affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.

15.    This is an adversary proceeding initiated by BSMCC and EMC pursuant to Rule 7001(7) (to obtain an injunction or other equitable relief), Rule 7001(9) (to obtain a declaratory judgment), and Rule 7003 of the Federal Rules of Bankruptcy Procedure.

16.    This Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

17.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).

18.    Venue is proper pursuant to 28 U.S.C. § 1409.

## THE PARTIES

19.    Plaintiff BSMCC is a Delaware corporation with a principal place of business at 383 Madison Avenue, New York, New York 10179.

20.    Plaintiff EMC is a Delaware corporation with a principal place of business at 2780 Lake Vista Drive, Lewisville, Texas 75067.

21.    Defendant AHMI is a Maryland corporation with its principal place of business at 538 Broadhollow Road, Melville, New York 11747.

22.     Defendant AHMC is a New York corporation with its principal place of business at 538 Broadhollow Road, Melville, New York 11747.

23.     Defendant AHMA is a Maryland corporation with its principal place of business at 538 Broadhollow Road, Melville, New York 11747.

24.     Defendant AHMS is a Maryland corporation with its principal place of business at 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## FACTUAL BACKGROUND AND ALLEGATIONS

25.     On June 23, 2004, BSMCC entered into the Repurchase Agreement with AHMA (attached hereto with amendments as Exhibit A).  Additionally, on June 23, 2004, BSMCC and AHMA entered into a Custody Agreement (attached hereto with amendments as Exhibit B), together with Deutsche Bank National Trust Company (the "Custodian"), in which the Custodian agreed to act as custodian for BSMCC and the Defendants of all notes, mortgages and other documents related to the Purchased Mortgage Loans.  The Repurchase Agreement and the Custody Agreement were subsequently amended on November 22, 2004 and August 29, 2005, to add AHMI and AHMC as parties and to provide that the Defendants are jointly and severally liable for the obligations under the agreements.

**A.     The Repurchase Agreement**

26.     Pursuant to the Repurchase Agreement, BSMCC purchased the Purchased Mortgage Loans from the Defendants and the Defendants agreed to repurchase the Purchased Mortgage Loans in the future at a fixed date or on demand at a price in excess of what BSMCC paid for the Purchased Mortgage Loans.  As of July 30, 2007, BSMCC owned Purchased Mortgage Loans in an amount exceeding $117,000,000 purchased pursuant to the Repurchase Agreement which had not been repurchased by the Defendants.

6

27.     Each purchase and sale of Purchased Mortgage Loans (a "Transaction") was effected through a separate Request / Confirmation. Each Request / Confirmation set forth the particular terms of the Transaction, including the purchase date, repurchase date (where fixed), the price, the margin percentage, and repurchase price. See Repurchase Agreement ¶ 3(b).

28.     The Repurchase Agreement provided that unless and until there was an Event of Default under the Repurchase Agreement, the Defendants "would cause the Purchased Mortgage Loans to be serviced for the benefit of [BSMCC]..." See Repurchase Agreement ¶ 12. Upon information and belief, AHMS performs the servicing responsibilities under the Repurchase Agreement and has control over the documents and funds BSMCC and EMC seek through this action. Servicing involves, among other things, collecting principal payments and other income received in connection with the Purchased Mortgage Loans, providing reports to BSMCC, and maintaining control of the collection process. The Repurchase Agreement does not require compensation to be provided to the Defendants for the performance of their servicing obligations.

    i.     Events of Default

29.     Paragraph 11 of the Repurchase Agreement sets forth the events that constitute Events of Default. In this regard, Paragraph 11(a) provides, in pertinent part:

> The following events shall constitute events of default (each an "Event of Default") hereunder with respect to Buyer or Seller, as applicable:
>
> *          *          *
>
> (ii)     Seller fails to comply with Paragraph 4 hereof;
>
> (iii)     An Act of Insolvency occurs with respect to Seller or Buyer or any controlling entity thereof . . .

30.    Pursuant to Paragraph 4 of the Repurchase Agreement, if at any time the "market value" of all Mortgage Loans is less than a specified margin percentage, BSMCC is entitled, upon notice, to require the Defendants to transfer to BSMCC cash in an amount at least equal to the Margin Deficit. The "market value" is determined by BSMCC "in its reasonable business judgment from time to time and at such times as it may elect in its sole discretion." Repurchase Agreement ¶ 2(k). Thus, as set forth in Paragraph 11(a)(ii), the Defendants' failure to comply with BSMCC's Margin Call constitutes an Event of Default.

31.    Further, as set forth in Paragraph 11(a)(iii), an "Act of Insolvency" on the part of the Defendants also constitutes an Event of Default.

ii.    Remedies Upon Event of Default

32.    Upon the occurrence of an Event of Default with respect to the Defendants, BSMCC has the option, exercised through written notice to the Defendants, to deem the Repurchase Date to have immediately occurred. See Repurchase Agreement ¶ 11(b) ("If an Event of Default shall have occurred and be continuing, then, at the option of [BSMCC], exercised by written notice to [the Defendants], the Repurchase Date for the [Purchased Mortgage Loans] hereunder shall be deemed to immediately occur").

33.    Paragraph 11(c) of the Repurchase Agreement sets forth the Defendants' obligations if BSMCC exercises its option to effect the immediate occurrence of the Repurchase Date.

34.    In such case, the Defendants' obligations to repurchase all Purchased Mortgage Loans is immediately due and payable, the Defendants must remit all funds thereafter received in connection with the Purchased Mortgage Loans, and the Defendants must deliver immediately all documents in their possession related to the Purchased Mortgage Loans,

including all Servicing Documents related the Purchased Mortgage Loans.  See Repurchase
Agreement ¶ 11(c)(iii)-(iv).

      35.     Indeed, the Repurchase Agreement requires the Defendants to provide

BSMCC with any and all information regarding the Purchased Mortgage Loans, irrespective of

whether there has been an Event of Default under the Repurchase Agreement.  In particular,

Paragraph 17(b) of the Repurchase Agreement provides that BSMCC shall have the right:

> to inspect and copy any and all documents and data in its
> possession pertaining to each Purchased Mortgage Loan that is the
> subject of such Transaction.  Such inspection shall occur upon the
> request of [BSMCC] at a mutually agreeable location during
> regular business hours and on a date not more than two (2)
> Business Days after the date of such request.

      36.     Pursuant to Paragraphs 11(e) and 12(c), upon the Event of Default,

BSMCC has the right to sell the Purchased Mortgage Loans on a servicing released basis.

      37.     As set forth in Paragraph 11(h), in addition to BSMCC's right to sell the

Purchased Mortgage Loans in the Event of Default:

> the defaulting party shall be liable to the nondefaulting party for
> the amount of all reasonable legal or other expenses incurred by
> the nondefaulting party in connection with or as a consequence of
> an Event of Default, together with interest thereon at a rate equal to
> the greater of the Pricing Rate for the relevant Transaction or the
> Prime Rate.  Expenses incurred in connection with an Event of
> Default shall include without limitation those costs and expenses
> incurred by the nondefaulting party as a result of the early
> termination of any repurchase agreement or reverse repurchase
> agreement entered into by the nondefaulting party in connection
> with the Transaction then in default.

      38.     Further, pursuant to Paragraph 11(i), BSMCC shall have "any rights

otherwise applicable to it under any other agreement or applicable law."

**B.    Defendants Default Under the Repurchase Agreement and BSMCC Exercises
Remedies**

39.    As set forth above, the Defendants are required under the Repurchase

Agreement to maintain an agreed upon margin amount based on BSMCC's mark-to-market

valuation of the Purchased Mortgage Loans.

40.    At 9:40 a.m. New York City time on July 30, 2007, prior to the

Commencement Date, pursuant to Paragraph 4 of the Repurchase Agreement, BSMCC notified

the Defendants by letter that a Margin Deficit existed in the amount of $3,372,508.64 and

demanded that the Defendants transfer cash to BSMCC in an amount at least equal to the Margin

Deficit.

41.    The Defendants did not meet the Margin Call as required by the

Repurchase Agreement.

42.    On August 2, 2007, prior to the Commencement Date, in accordance with

Paragraph 11(b) of the Repurchase Agreement, BSMCC sent the Defendants the Default Notice,

which set forth, among other things:

> American Home has failed to make the marking transfer required
> by the Margin Demand within the delivery time period set forth in
> the [Repurchase Agreement].  As a result, we are hereby serving
> this Default Notice on you and notifying you that an Event of
> Default exists under the [Repurchase Agreement].  Without in any
> way limiting any of BSMCC's rights under the [Repurchase
> Agreement], we are also hereby notifying you that the Repurchase
> Date for each Transaction under the [Repurchase Agreement] has,
> therefore, been deemed to have occurred.

43.    In the Default Notice, BSMCC also reserved all of its rights and remedies

under Paragraph 11 of the Repurchase Agreement.

44.     On August 2, 2007, prior to the Commencement Date, BSMCC sent the

Custodian a notice (the "Custodian Notice") that an Event of Default had occurred under the

Repurchase Agreement.  The Custodian Notice provided, in pertinent part:

> We hereby (i) direct that the Custodian act with respect to the
> Purchased Mortgage Loans, and related mortgage files or
> documents, as applicable, solely in the capacity of exclusive agent
> and custodian for, and bailee of, [BSMCC], (ii) direct that
> Custodian hold such mortgage files or documents, as applicable,
> for the exclusive use and benefit of [BSMCC] and (iii) assume[]
> the rights of American Homes to furnish instructions to Custodian
> as to the disposition of such mortgage files or documents, as
> applicable, and such rights shall be exercisable solely by
> [BSMCC].

45.     By letter dated August 3, 2007, Defendants advised BSMCC that they

"dispute [BSMCC's] declaration that an Event of Default and a Termination Event has

occurred."  The Defendants further advised that BSMCC was required under the Repurchase

Agreement to conduct a sale of the Purchased Mortgage Loans in a commercially reasonable

manner.

46.     In their August 3rd letter, the Defendants did not dispute that a Margin

Deficit existed on July 30, 2007 or that BSMCC's Margin Call was ineffective.  Nor did the

Defendants provide any explanation for their claim that an Event of Default had not occurred.

47.     On August 6, 2007, the Debtors filed voluntary petitions for relief under

chapter 11 of the Bankruptcy Code with this Court.

48.     Pursuant the Repurchase Agreement, the commencement of the

Defendants' chapter 11 cases constitutes an "Act of Insolvency" which is an Event of Default

under the Repurchase Agreement.  See Repurchase Agreement ¶¶ 2, 11(a)(iii).[1]

---

[1]     Although for most contracts, Section 365(e)(1) of the Bankruptcy Code provides that the commencement of
a bankruptcy case cannot be a basis for terminating or modifying a contract or affecting a debtor's rights thereunder,
Section 559 of the Bankruptcy Code explicitly excepts repurchase agreements like the Repurchase Agreement from
the effects of Section 365(e)(1).  Specifically, Section 559 provides that: "the exercise of a contractual right of a

49.    On August 6, 2007, BSMCC conducted an auction of the Purchased Mortgage Loans and, on August 10, 2007, sold them on a servicing released basis to EMC.

50.    As of August 2, 2007, when the Defendants received the Default Notice, prior to the Commencement Date, the Defendants were obligated immediately to deliver all documents in their possession related to the Purchased Mortgage Loans, pursuant to Paragraph 11(c)(iv) of the Repurchase Agreement.

51.    On August 13, 2007, BSMCC sent the Defendants a letter asking the Defendants to "let us know whether you agree to comply with our request [to transfer servicing], including by providing evidence that goodbye letters have been sent to the borrowers of the Mortgage Loans, by 5:00 p.m. on August 15, 2007."

52.    The Defendants have ignored the August 13, 2007 letter and, to date, have refused (i) to agree to deliver the Servicing Documents related to the Purchased Mortgage Loans, and (ii) to agree to transfer the servicing of the Purchased Mortgage Loans to EMC, including amounts received as escrow or principal and interest payments therefrom.

53.    The Defendants' failure to take these actions is a breach of the express terms of the Repurchase Agreement and constitutes a wrongful conversion of property (i.e., the files and funds) by the Defendants.

## C.    The Defendants' Continuing Breach of the Repurchase Agreement Is Causing BSMCC and EMC Immediate and Irreparable Harm

54.    The Defendants' failure to remit the funds owed to BSMCC and EMC and refusal to transfer the Servicing Documents are causing EMC and BSMCC immediate and irreparable harm.

---

repo participant or financial participant to cause the liquidation, termination or acceleration of a repurchase agreement because of a condition of the kind specified in section 365(e)(1) of this title shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in a proceeding under this title." Accordingly, the right of BSMCC and EMC to the Servicing Documents and the subject funds is a contractual right that shall not be stayed or otherwise limited by the bankruptcy proceedings.

55.    EMC's funds are not the property of the Defendants' estates and therefore may not be used by the Defendants. The Defendants' failure to remit the funds owned by EMC will cause immediate irreparable damage to BSMCC, who sold the Purchased Mortgage Loans to EMC with the understanding that they would be entitled to the funds collected thereunder and that the servicing would be transferred from the Defendants to EMC. Defendants' insolvency proceedings and financial condition will result in EMC's property being dissipated and lost to EMC and BSMCC.

56.    In addition, the Defendants are causing irreparable harm to EMC by refusing to agree to transfer the Servicing Documents. EMC purchased the Purchased Mortgage Loans on a servicing released basis to capitalize on its capabilities and ability to service the Purchased Mortgage Loans in such a manner as to maximize their value. EMC's servicing capabilities, the value of which cannot be measured by any pecuniary standard when compared to the Defendants' capabilities, are thwarted by the Defendants' refusal to adhere to the terms of the Repurchase Agreement. The Defendants' improper refusal to transfer the Servicing Documents prevents EMC from monitoring the Purchased Mortgage Loans, from ensuring that they are being properly administered, and from making certain the individual mortgagors have a reliable counter party. In short, the likely value added to the Purchased Mortgage Loans by EMC's servicing capabilities is being irreparably harmed by the Defendants' refusal to turn over to EMC the Servicing Documents that will allow EMC to use its property in the intended manner and as it sees fit.

57.    Furthermore, the mortgagors will be harmed if no financially responsible and solvent party can service the Purchased Mortgage Loans and maintain accurate, up-to-date

Servicing Documents.[2] This will all have an immediate and negative impact on BSMCC

because it sold the Purchased Mortgage Loans to EMC with the understanding that such sale was

completed on a servicing released basis and that, therefore, EMC or its designee would have the

right to service Mortgage Loans.

## FIRST CAUSE OF ACTION:
### (Declaratory Judgment that the Defendants are Obligated to Provide Access to and Deliver Possession of the Servicing Files, Documents and Any Payments or Escrow Accounts relating to the Purchased Mortgage Loans to EMC)

58.     BSMCC and EMC repeat and reallege paragraphs 1 through 57 as if fully

set forth herein.

59.     Paragraph 12(c)(ii) of the Repurchase Agreement provides that, upon the

occurrence of an Event of Default, BSMCC, in its sole discretion, may "sell the Mortgage Loans

on a servicing released basis by terminating the respective servicer of the Purchased Mortgage

Loans."

60.     Paragraph 11(c)(iii) of the Repurchase Agreement provides that all income

paid after the Event of Default shall be payable to and retained by BSMCC.

61.     Paragraph 11(c)(iv) provides that the Defendants are immediately to

deliver or cause to be delivered to BSMCC any documents relating to the Purchased Mortgage

Loans.

62.     Pursuant to Paragraphs 11(c)(iii) and (iv), BSMCC sent AHMA a letter

demanding transfer of all servicing files, documents and any payments and escrow accounts

relating to the Purchased Mortgage Loans to EMC.

---

[2]     In addition, the mortgagors will be further harmed by the Defendants' failure to deliver the Servicing Documents to EMC because such failure creates the potential for confusion for the mortgagors. For example, the mortgagors may get conflicting notices and information from the Defendants and EMC. This, in turn, may lead to confusion among the mortgagors about where to send payments and whom to contact for more information.

63.    In breach of its obligations under the Repurchase Agreement, the Defendants have failed to deliver all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans in a timely manner and in response to BSMCC's requests.

64.    Because the Defendants have refused to comply with the express provisions of the Repurchase Agreement by failing to provide EMC with all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans, there exists an actual, justiciable controversy between the Defendants and BSMCC relating to the Defendants' obligations under the Repurchase Agreement, including whether EMC is entitled to immediate access and possession of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans.

65.    Pursuant to 28 U.S.C. § 2201, this Court should declare the rights and other legal relations of BSMCC and the Defendants concerning the foregoing and grant such other and further relief as may be necessary to enforce these rights and obligations.

66.    Therefore, BSMCC and EMC request a declaration from the Court that all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans are property of EMC, and that EMC is entitled to immediate access to and possession of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans.

### SECOND CAUSE OF ACTION:
**(Declaratory Judgment that the Defendants are Obligated Under the Repurchase Agreement to Transfer the Servicing of the Purchased Mortgage Loans to EMC)**

67.    BSMCC and EMC repeat and reallege paragraphs 1 through 66 as if fully set forth herein.

68.     Paragraph 12(c)(ii) of the Repurchase Agreement provides that, upon the occurrence of an Event of Default, BSMCC, in its sole discretion, may "sell the Mortgage Loans on a servicing released basis by terminating the respective servicer of the Purchased Mortgage Loans."

69.     Pursuant to the Repurchase Agreement, the rights of the Defendants to service the Purchased Mortgage Loans have terminated and the servicing relating to the Purchased Mortgage Loans now belongs to EMC.  The Defendants have refused to comply with BSMCC's instructions.

70.     Because the Defendants refuse to comply with BSMCC's instructions, there exists an actual, justiciable controversy between the Defendants and BSMCC relating to the Defendants' obligations under the Repurchase Agreement, including whether the Defendants are obligated to follow BSMCC's instructions with respect to transferring the servicing to EMC.

71.     Pursuant to 28 U.S.C. § 2201, this Court should declare the rights and other legal relations of BSMCC and EMC and the Defendants concerning the foregoing and grant such other and further relief as may be necessary to enforce these rights and obligations.

72.     Therefore, BSMCC and EMC request a declaration from the Court that they are entitled to the immediate transfer of the servicing to EMC, and the Defendants are obligated to cooperate with all instructions regarding the transfer of servicing, including by transferring all files necessary to transfer servicing of, gain possession and control over, and manage the Purchased Mortgage Loans.

### THIRD CAUSE OF ACTION:
**(Declaratory Judgment that the Defendants are Obligated to Prevent the Commingling of Funds with and to Transfer Any Payments Related to the Purchased Mortgage Loans to EMC)**

73.     BSMCC and EMC repeat and reallege paragraphs 1 through 72 as if fully set forth herein.

74.     Paragraph 11(c)(iii) of the Repurchase Agreement provides that, upon the occurrence of an Event of Default and BSMCC's notification to the Defendants that the Repurchase Date for the Purchased Mortgage Loans has immediately occurred, "all Income paid after such exercise or deemed exercise shall be payable to and retained by [BSMCC]."

75.     There exists an actual, justiciable controversy between the Defendants and BSMCC and EMC relating to the Defendants' obligations under the Repurchase Agreement, including their obligations with respect to any payments related to the Purchased Mortgage Loans.

76.     Pursuant to 28 U.S.C. § 2201, this Court should declare the rights and other legal relations of BSMCC and EMC and the Defendants concerning the foregoing and grant such other and further relief as may be necessary to enforce these rights and obligations.

77.     Therefore, BSMCC and EMC request a declaration that the Defendants are obligated to prevent the commingling of funds with, and to transfer any payments related to, the Purchased Mortgage Loans received after August 2, 2007 to EMC, as the current owner of the Purchased Mortgage Funds.

### FOURTH CAUSE OF ACTION:
**(Breach of the Repurchase Agreement)**

78.     BSMCC and EMC repeat and reallege paragraphs 1 through 77 as if fully set forth herein.

79.     The Repurchase Agreement constitutes a valid, binding contract between BSMCC and the Defendants.

80.     By letter dated July 30, 2007, BSMCC notified the Defendants of a Margin Call.

81.     The Defendants failed to cure the Margin Call in the time required by the Repurchase Agreement.

82.     Pursuant to Paragraph 11(a)(ii) of the Repurchase Agreement, the Defendants' failure to cure the Margin Call constitutes an Event of Default under the Repurchase Agreement and an unjustified breach of the Repurchase Agreement.

83.     By letter dated August 2, 2007, BSMCC notified the Defendants that, pursuant to Paragraph 4 of the Repurchase Agreement and the Defendants' failure to cure the Margin Call, the Repurchase Date for the Purchased Mortgage Loans had occurred.

84.     Pursuant to Paragraphs 11(a)(iii) and (b) of the Repurchase Agreement, the Defendants' filing of a chapter 11 case constitutes an additional Event of Default under the Repurchase Agreement, which automatically caused the Repurchase Date for the Purchased Mortgage Loans to have occurred.

85.     The Defendants' refusal to grant BSMCC access to or transmit all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans, transfer the servicing to EMC, segregate collections received from the Purchased Mortgage Loans, and remit such collections to EMC, all as required by the Repurchase Agreement and described above, constitute breaches of that agreement.

86.     BSMCC and EMC are entitled to (i) immediate access to and possession of all servicing files, documents relating to the Purchased Mortgage Loans necessary to transfer servicing of, gain possession and control over, and manage the Purchased Mortgage Loans;

(ii) the immediate transfer of the servicing of the Purchased Mortgage Loans to EMC; and (iii) the transfer of all payments and escrow accounts to EMC. BSMCC and EMC have no adequate remedy at law and are entitled to specific performance of the Defendant's obligations under the Repurchase Agreement.

87.    Accordingly, BSMCC and EMC request a decree directing the Defendants immediately to (i) transmit the all servicing files, documents relating to the Purchased Mortgage Loans to EMC, (ii) transfer the servicing of the Purchased Mortgage Loans to EMC, and (iii) segregate collections received from the Purchased Mortgage Loans after August 2, 2007 and remit such collections to EMC.

### FIFTH CAUSE OF ACTION:
**(Conversion)**

88.    BSMCC and EMC repeat and reallege paragraphs 1 through 87 as if fully set forth herein.

89.    Pursuant to Paragraph 12(c)(ii) of the Repurchase Agreement, upon purchase of the Purchased Mortgage Loans by EMC, the Servicing Documents associated with those Purchased Mortgage Loans are the property of EMC.

90.    By refusing to transfer all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans, the Defendants have exercised and assumed an unauthorized right of ownership and control over all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans.

91.    BSMCC and EMC are entitled to a decree, and a permanent and preliminary injunction, directing the Defendants to turn over all servicing files, documents and any payments received after August 2, 2007 and escrow accounts relating to the Purchased Mortgage Loans to EMC, and providing such other relief as is necessary to allow EMC

possession and control of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans.

## SIXTH CAUSE OF ACTION:
### (Accounting)

92.    BSMCC and EMC repeat and reallege paragraphs 1 through 91 as if fully set forth herein.

93.    Pursuant to Paragraph 12(c)(ii) of the Repurchase Agreement, the payments and escrow accounts relating to the Purchased Mortgage Loans are the property of EMC, and the Defendants are prohibited from commingling such funds with other funds and are required to remit such funds to EMC.

94.    Pursuant to the Repurchase Agreement, there exists a special, confidential and/or fiduciary relationship between BSMCC and each Defendant with respect to, among other things, the Defendants' possession or control of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans, as well as the servicing of the Purchased Mortgage Loans.

95.    Due to the Defendants' conduct and the facts stated above, BSMCC and EMC are entitled to an accounting of funds received after August 2, 2007 with respect to the Purchased Mortgage Loans.

## SEVENTH CAUSE OF ACTION:
### (Constructive Trust)

96.    BSMCC and EMC repeat and reallege paragraphs 1 through 95 as if fully set forth herein.

97.    Pursuant to the Repurchase Agreements, there exists a special, confidential and/or fiduciary relationship between BSMCC and each Defendant with respect to,

among other things, the Defendants' possession or control of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans.

98.    By retaining possession or control of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans, the Defendants have been unjustly enriched.

99.    Accordingly, BSMCC and EMC are entitled to the implementation of a constructive trust over such documents and such funds received after August 2, 2007.

## PRAYER FOR RELIEF

WHEREFORE, BSMCC and EMC  respectfully request:

1.    A Declaratory Judgment of the Court decreeing that all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans are property of EMC, and that EMC is entitled to immediate access to and possession of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans;

2.    A Declaratory Judgment of the Court decreeing that EMC is entitled to the immediate transfer of the servicing to EMC, and that the Defendants are obligated to cooperate with all instructions from EMC and BSMCC regarding the transfer of servicing, including by transferring all files necessary to transfer servicing of, gain possession and control over, and manage the Purchased Mortgage Loans it has purchased from the Defendants;

3.    A Declaratory Judgment of the Court decreeing that the Defendants are obligated to prevent the commingling of funds and to transfer any payments related to the Purchased Mortgage Loans received after August 2, 2007 to EMC;

4.    Temporary and permanent injunctive relief ordering and directing the

21

Defendants, including any of their officers, managers, members, employees, agents, or representatives, (a) to transmit all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans to EMC, (b) to transfer the servicing of the Purchased Mortgage Loans to EMC, (c) to prevent the commingling of funds with and to transfer any payments related to the Purchased Mortgage Loans received after August 2, 2007 to EMC, and providing such other relief as is necessary to allow EMC possession and control of all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans, and the servicing of the Purchased Mortgage Loans;

5.      Temporary and permanent injunctive relief ordering and directing the Defendants, including any of their officers, managers, members, employees, agents, or representatives, to provide BSMCC with an accounting of all funds relating to the Purchased Mortgage Loans received after August 2, 2007;

6.      A judgment in favor of BSMCC and EMC on all counts of this Complaint;

7.      A judgment in the amount of all reasonable legal and other expenses, plus interest, in connection with or as a consequence of the Events of Default under the Repurchase Agreement;

8.      A judgment imposing a constructive trust over all payments and escrow accounts generated by the Purchased Mortgage Loans and retained by the Defendants;

9.      A judgment determining that the damages suffered by BSMCC and EMC by the Defendants' post-petition action and conduct are entitled to administrative expense status; and

10.    Such other and further relief as this Court deems just and proper.[3]

Dated: Wilmington, Delaware
         August 24, 2007

Respectfully submitted,

DUANE MORRIS LLP

*Michael R. Lastowski/pwr*

Michael R. Lastowski (DE 3892)
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4943
Facsimile: (302) 657-4901

and

SIDLEY AUSTIN LLP
William M. Goldman*
Andrew W. Stern*
Patrick M. McGuirk*
Geoffrey T. Raicht*
Nicholas P. Crowell*
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

* admission *pro hac vice* pending

---

[3]    BSMCC fully reserves any and all rights to file a proof of claim in the Defendants' chapter 11 cases relating to, or otherwise pursue any damages or other remedies relating to, the Repurchase Agreement, the Repurchase Agreement, and/or the Defendants' conduct with respect thereto prior to and subsequent to the filing of this Complaint, including damages, punitive damages, attorneys' fees, collection costs, and any other remedies.