**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
In re:                                        :  Chapter 11
                                              :
AMERICAN HOME MORTGAGE                        :  Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,¹ :
                                              :  Jointly Administered
        Debtors.                              :
------------------------------------------------------------ x
```

Hearing Date: September 4, 2007 at 1:00 p.m. (ET)
Objection Deadline: August 31, 2007 at 12:00 p.m. (ET)

**DEBTORS' MOTION FOR AUTHORITY TO FILE, UNDER SEAL,**
**CERTAIN PORTIONS OF THE DEBTORS' EMERGENCY MOTION**
**FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 1146(c):**
**(i) AUTHORIZING PRIVATE SALE OF CERTAIN SERVICING RIGHTS TO**
**BARCLAYS BANK PLC FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS,**
**AND TRANSFER TAXES; (ii) APPROVING THE TERMS OF THE PURCHASE**
**AND SALE AGREEMENT; AND (iii) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, "AHM" or

the "Debtors"),by and through their undersigned attorneys, hereby submit this motion (the

"Motion") for entry of an order pursuant to section 107(b) of title 11 of the United States Code,

11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 9018-1(b) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

"Local Rules") authorizing the Debtors to file a portion of their Emergency Motion For Order

Pursuant to 11 U.S.C. §§ 105(a), 363, and 1146(c): (i) Authorizing Private Sale of Certain

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Servicing Rights to Barclays Bank Plc Free and Clear of Liens, Claims, Interests, and Transfer Taxes; (ii) Approving the Terms of the Purchase and Sale Agreement; and (iii) Granting Related Relief (the "Motion") under seal. In support of this Motion, the Debtors respectfully represent and state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.        On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1005(b) of the Federal Rules of Bankruptcy Procedure. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.        On August 14, 2007, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

3.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is section 107(b) of the Bankruptcy Code, along with Bankruptcy Rule 9018 and Local Rule 9018-1(b).

## GENERAL BACKGROUND

A.        **The Debtors' Business**

4.        Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage

loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

5.    As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

6.    A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes an important asset of the Debtors' estates.

**B.    Events Leading to the Chapter 11 Filing**

7.    Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing

default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

8.    The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

9.    In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans – began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening AHM's continued viability.

10.    On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

11.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors now employ approximately 1000 persons who are

absolutely essential to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

12.    In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions.  Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and "scratch and dent" loans, to financial and strategic investors.

13.    Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

14.    Contemporaneously herewith, the Debtors are filing a version of the Motion that includes a redacted exhibit.  By the Motion, the Debtors seek approval of a private sale of the servicing rights (the "Barclays Servicing Rights") under that certain Servicing Agreement (the "Barclays Servicing Agreement"), dated as of May 1, 2007, between Barclays Bank PLC (the "Buyer" or "BBPLC") and AHM Servicing, under  the terms of the Purchase and Sale Agreement (the "Sale Agreement").

## RELIEF REQUESTED

15.    The Debtors respectfully request that the Court enter an order authorizing the Debtors to file certain portions of the Motion under seal and directing that such portions of the Motion shall remain under seal, confidential and not be made available to anyone, except to counsel to the U.S. Trustee, counsel to the Committee, Bank of America, N.A., as Administrative

Agent for the lenders under that certain Credit Agreement dated August 30, 2004 (the

"Administrative Agent"), or others (i) at the discretion of the Debtors or (ii) upon further order of

the Bankruptcy Court.[2]

      16.    Section 107(b) of the Bankruptcy Code provides bankruptcy courts with

the authority to issue orders that will protect entities from potential harm that may result from the

disclosure of certain confidential information.  This section provides in part that:

> On request of a party in interest, the bankruptcy court shall, and on
> the bankruptcy court's own motion, the bankruptcy court may --
>
> (1)    protect an entity with respect to a trade secret or
> confidential research, development, or commercial
> information; or
>
> (2)    protect a person with respect to scandalous or
> defamatory matter contained in a paper filed in a
> case under this title.

11 U.S.C. § 107(b).

      17.    Bankruptcy Rule 9018 sets forth the procedures by which a party may

move for relief under Bankruptcy Code section 107(b), and provides that "[o]n motion, or on its

own initiative, with or without notice, the court may make any order which justice requires (1) to

protect the estate or any entity in respect of a trade secret or other confidential research,

development, or commercial information…." Fed. R. Bankr. P. 9018.  Local Rule 9018-1(b)

additionally provides, in relevant part, that "[a]ny party who seeks to file documents under seal

must file a motion to that effect." Del. Bankr. L.R. 9018-1(b).

      18.    Unlike its counterpart in Rule 26(c) of the Federal Rules of Civil

Procedure, section 107(b) of the Bankruptcy Code does not require an entity seeking such

protection to demonstrate "good cause." See, e.g., Video Software Dealers Ass'n v. Orion

---

[2]  An unredacted copy of the Sale Agreement will be submitted to the Court in a separate prominently marked envelope as directed by Local Rule 9018-1(b).

Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 28 (2d Cir. 1994); Phar-Mor, Inc. v.

Defendants Named Under Seal (In re Phar-Mor, Inc.), 191 B.R. 675, 679 (Bankr. N.D. Ohio

1995). Rather, if the material sought to be protected satisfies one of the categories identified in

section 107(b), "the court is required to protect a requesting party and has no discretion to deny

the application." In re Orion Pictures Corp., 21 F.3d at 27.

    19.    The Debtors submit that the redacted portion of the exhibit to the Motion

satisfy one of the categories in section 107(b). The Debtors have redacted the portion of the

exhibit to the Motion that reveals the definition of the "Purchase Price Percentage," which is the

negotiated component of the consideration to be realized by the Debtors under the Sale

Agreement. The Debtors submit that the Purchase Price Percentage constitutes confidential

commercial information. Commercial information has been defined as information that would

cause "an unfair advantage to competitors by providing them information as to the commercial

operations of the debtor." In re Orion Pictures Corp., 21 F.3d at 27.

    20.    On August 6, 2007, the Debtors filed a motion for approval of procedures

for the sale of certain assets used in the Debtors' loan servicing business, and ultimately the

approval of a sale of such assets [Docket No. 11] (the "Servicing Sale Motion"), which was

approved by order dated August 9, 2007 [Docket No. 113] (the "Servicing Sale Order").

    21.    The Debtors anticipate that a buyer for the bulk of its loan servicing

business will be found, and the Debtors will seek approval of a sale of the business to party

presenting the highest or otherwise best bid for such assets. However, as set forth in the Motion,

the Debtors have determined that the consideration provided for the Barclays Servicing Rights

exceeds the value that will be obtained by the estates if the Barclays Servicing Rights are sold as

part of the larger sale under the Servicing Sale Motion. Further, the Debtors have determined

that the private sale of the Barclays Servicing Rights will not hinder or diminish the value of the bulk of the loan servicing assets to be sold pursuant to the Servicing Sale Motion. However, in order to ensure that the Debtors can maximize the value of the remaining servicing assets, filing a version of the Sale Agreement that redacts the Purchase Price Percentage is necessary to allow the Debtors to negotiate the best possible terms of agreements for other servicing assets, either with a purchaser of the Debtors' servicing assets in bulk, or with owners of mortgage loan portfolios serviced by the Debtors who are similarly situated to BBPLC. Disclosure of the Purchase Price Percentage would harm and prejudice the Debtors by enabling other potential buyers access to confidential sale information. Such potential buyers may use the Purchase Price Percentage contained in the unredacted Motion as a lever from which they will negotiate the terms of other servicing asset sales with the Debtors.

22.    In order to safeguard the Debtors' ability to negotiate even more advantageous agreements with other potential buyers, the Debtors respectfully request that this Court grant the relief requested herein. Based on the circumstances described above, the Debtors believe that they have provided sufficient evidence to show that filing the unredacted Sale Agreement under seal outweighs the presumption of public access to court records and the settlements. See In re Muma Services, Inc. et al., 279 B.R. 478, 485 (Bankr. D. Del. 2002). Permitting the Debtors to file the unredacted Sale Agreement under seal will serve the purpose of maximizing value for the Debtors' creditors, as well as to assist the Debtors in furtherance of the servicing asset sale process. Id.

23.    To ensure that the key constituencies in these cases receive adequate disclosure, the Debtors will provide copies of the unredacted Sale Agreement to counsel to the U.S. Trustee, counsel to the Committee, and to the Administrative Agent, which parties shall be

required to keep the Motion confidential. The Debtors submit that such disclosure will provide sufficient safeguards to ensure that the relief requested in this Motion will not adversely affect the interests of parties to these chapter 11 proceedings.

## NOTICE

24.     The Debtors will serve this Motion on (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Administrative Agent; (iv) counsel to the DIP Lender; (v) the U.S. Securities and Exchange Commission; (vi) any creditor known by the Debtors to be asserting a Lien on the Barclays Servicing Rights; and (vii) all parties entitled to notice under Local Rule 2002-1(b).

25.     For the reasons stated herein, the Debtors submit that no other or further notice is appropriate or required.

26.     No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form annexed hereto authorizing the Debtors to file certain portions of the exhibits to the Motion under seal and grant such other and further relief as is just and proper.

Dated:    Wilmington, Delaware
          August 24, 2007

                                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                    James L. Patton, Jr. (No. 2202)
                                    Pauline K. Morgan (No. 3650)
                                    Sean M. Beach (No. 4070)
                                    Matthew B. Lunn (No. 4119)
                                    Kara Hammond Coyle (No. 4410)
                                    The Brandywine Building
                                    1000 West Street, 17th Floor
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 571-6600
                                    Facsimile: (302) 571-1253

                                    Proposed Counsel for Debtors and
                                    Debtors in Possession