IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | X : | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1] | : : : | Case No. 07-11047 (CSS) Jointly Administered |
| Debtors | : : : | **Objection Deadline: September 10, 2007, 4:00 p.m. (ET)** **Hearing Date: September 17, 2007, 12:00 p.m. (ET)** |
| | X | |

### MOTION OF DEBTORS IN POSSESSION FOR ORDER, UNDER 11 U.S.C. §§ 323, 1106, AND 1107 AND BANKRUPTCY RULE 2004, DIRECTING EXAMINATION OF, AND PRODUCTION OF DOCUMENTS BY, CERTAIN LOAN AND PURPORTED REPURCHASE COUNTERPARTIES

American Home Mortgage Investment Corp., together with its affiliated debtors in possession (collectively, "AHM" or the "Debtors"), by its proposed counsel, Quinn Emanuel Urquhart Oliver & Hedges LLP and Young Conaway Stargatt & Taylor LLP, moves this Court for entry of an order pursuant to sections 323, 1106, and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and rule 2004 ("Rule 2004") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the examination of, and production of documents by, Credit Suisse First Boston Mortgage Capital LLC and its affiliates ("Respondents"). In support of the Motion, the Debtors state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. (AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979): American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## SUMMARY OF RELIEF REQUESTED

1.      By this motion ("Motion"), the Debtors request that this Court enter an order, pursuant to Rule 2004, substantially in the form attached as Exhibit A (the "Proposed Order") authorizing the examination of, and production of documents by, Respondents, so that the Debtors can ascertain the manner in which certain Lender Demands (as defined below) were made and whether any potential claims or causes of action may exist in favor of the estates.

## JURISDICTION

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C.§ 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATUS OF THE CASE

3.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      No trustee or examiner has been appointed.  The Official Committee of Unsecured Creditors was appointed on August 14, 2007.

## THE DEBTORS' BUSINESS

7.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage

loans. AHM also invested in securitized mortgage loans originated by others and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

8.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan origination offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

9.      A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

10.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing

3

default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

11.     The concern in the credit markets has spread beyond the subprime market and the surge in mortgage delinquencies for subprime home loans also generated anxiety with certain institutions about borrowers with generally good credit.

12.     In the weeks prior to the Petition Date, this anxiety within certain institutions led to such institutions quickly devaluing the Debtors' loan and security portfolios and, consequently, such institutions hastily made margin calls and established re-pricing that created funding gaps at the time the requests were made to roll over repurchase agreements ("Rollover Funding Gaps") for hundreds of millions of dollars with respect to the Debtors' loans and repurchase agreements. In addition, during this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short-term credit facilities used by the Debtors to originate and purchase mortgage loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

13.     On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

14.     Abrupt margin calls and the purported exercise of remedies by the Debtors' warehouse lenders created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on Friday, August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over

4

6,500 employees. The Debtors as of the Petition Date employed approximately 1,000 essential

employees to the Debtors' continued operations, although that number is expected to decline as

various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining

assets are sold.

15.     In the wake of these events, the Debtors, assisted by counsel and

professional advisors, sought alternative funding sources and capital infusions. Additionally, the

Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans

owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to

financial and strategic investors.

16.     Unfortunately, in the short time available and given the severe financial

pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity

crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve

and maximize the value of their estates through orderly sales of their assets, including the

servicing business and mortgages held for sale.

## RELIEF REQUESTED AND REASONS THEREFOR

17.     AHM seeks authorization to obtain the production of documents from

Respondents concerning (i) the property of the Debtors, including interests in such property; (ii)

the assets, liabilities and financial condition of the Debtors; (iii) matters that may affect the

administration of the Debtors' estates; and (iv) the identification and prosecution of certain

potential claims against third parties by the Debtors' estates. The Debtors seek entry of the

Proposed Order, which includes an initial examination through document discovery and,

subsequent to such document discovery, depositions of the entities named herein. The Debtors'

initial examination is currently limited to discrete issues involving the valuation of certain

mortgage loans and mortgage-related securities ("Collateral Assets") that are or were the subject

5

of financing transactions with Respondents and the propriety of Respondents' purported margin calls or similar demands for cash, additional collateral, or other deposits, including for Rollover Funding Gaps (collectively, "Lender Demands"); the Debtors expressly reserve their right to serve supplemental and additional document requests that are within the scope of Rule 2004, and the Debtors will schedule depositions in an efficient manner following the substantial completion of document discovery in order to minimize the burden on Respondents.  The Debtors also expressly reserve their right to seek examination of entities other than Respondents on similar or other areas, and of Respondents on areas other than Lender Demands.

**A.      Entities From Whom Examination Is Sought**

18.      The Debtors seek authority to serve a document request and deposition notice on the Respondents, including by subpoenae if necessary.  Respondents (i) provided substantial financing to the Debtors prior to the Petition Date and (ii) made Lender Demands upon the Debtors in a manner which the Debtors believe incorrectly valued Collateral Assets thereby causing damage to the Debtors.

19.      **Whole Loan Mortgages**.  Prior to the Petition Date, Respondents made Lender Demands on the Debtors arising from financing activities of whole loan mortgages in which the Debtors had an interest.  Lender Demands made by Respondents and other parties were devastating to the Debtors' liquidity.  In the 30 days leading up to the bankruptcy filing, at least the following Lender Demands were made by third parties, including the Respondents:

| LENDER/COUNTERPARTY | DATE | AMOUNT OF LENDER DEMAND |
| --- | --- | --- |
| Institution A | 7/20/2007 | $16,710,000.00 |
| | 7/27/2007 | $5,530,000.00 |
| | 7/30/2007 | $16,230,000.00 |
| | 7/30/2007 | $26,779,622.00 |
| Institution B | 7/11/2007 | $1,348,737.31 |

DB02:6202117.1    066585.1001

| LENDER/COUNTERPARTY | DATE | AMOUNT OF LENDER DEMAND |
|---|---|---|
| | 7/11/2007 | $4,642,178.97 |
| | 7/18/2007 | $4,927,315.56 |
| | 7/18/2007 | $3,204,286.30 |
| | 7/20/2007 | $1,384,052.31 |
| | 7/23/2007 | $2,758,285.63 |
| | 7/30/2007 | $3,372,000.00 |
| | 7/30/2007 | $13,626,390.00 |
| **Respondents** | **7/18/2007** | **$2,000,000.00** |
| | **7/27/2007** | **$389,000.00** |
| | **8/1/2007** | **$933,000.00** |
| Institution C | 7/9/2007 | $24,644.04 |
| Institution D | 7/27/2007 | $41,340,892.64 |
| Institution E | 7/2/2007 | $802,432.64 |
| | 7/3/2007 | $1,847,984.54 |
| | 7/5/2007 | $166,673.62 |
| | 7/10/2007 | $929,211.38 |
| | 7/13/2007 | $494,046.31 |
| | 7/17/2007 | $545,514.60 |
| | 7/18/2007 | $6,814,747.76 |
| | 7/20/2007 | $5,288,066.35 |

20.    **Mortgage-Related Securities**.  In addition, several lender/counterparties made Lender Demands on the Debtors arising from financing activities of mortgage-related securities (including securities that are outside the definition of section 3 of the Securities Exchange Act of 1934) in which the Debtors had an interest during the approximately 30 days preceding the Petition Date.  As with the whole loan mortgage loan margin calls, these Lender Demands contributed significantly to the liquidity crisis suffered by the Debtors, including at least the following purported margin calls or other deposits during the term of a repurchase agreement:

| LENDER/COUNTERPARTY | DATE | LENDER DEMAND |
|---|---|---|
| Institution 1 | 7/31/2007 | $1,274,621 |
| | 7/31/2007 | $20,076,259 |
| | 8/3/2007 | $4,037,327 |
| Institution 2 | 7/3/2007 | $1,100,000 |
| | 7/3/2007 | $12,000,000 |
| | 7/20/2007 | $20,900,000 |
| | 7/25/2007 | $8,500,000 |
| | 7/30/2007 | $11,650,000 |
| | 7/30/2007 | $29,824,782 |
| Institution 3 | 7/9/2007 | $340,610 |
| | 7/30/2007 | $689,803 |
| | 7/31/2007 | $707,149 |
| Institution 4 | 7/3/2007 | $2,231,757 |
| | 7/16/2007 | $5,000,000 |
| | 7/20/2007 | $2,045,000 |
| | 8/1/2007 | $2,319,257 |
| **Respondents** | **7/10/2007** | **$390,000** |
| Institution 5 | 7/2/2007 | $1,249,126 |
| | 7/5/2007 | $1,000,000 |
| | 7/9/2007 | $1,500,000 |
| | 7/17/2007 | $8,800,000 |
| | 7/19/2007 | $547,000 |
| | 7/20/2007 | $1,970,000 |
| | 7/24/2007 | $2,300,000 |
| | 7/30/2007 | $1,200,000 |
| | 7/31/2007 | $8,900,000 |
| Institution 6 | 7/26/2007 | $1,255,879 |
| Institution 7 | 7/3/2007 | $1,404,515 |
| | 7/6/2007 | $1,207,000 |
| | 7/16/2007 | $2,701,000 |
| | 7/18/2007 | $3,055,000 |
| Institution 8 | 7/2/2007 | $6,668,511 |
| | 7/19/2007 | $9,056,410 |
| | 7/23/2007 | $3,809,225 |
| | 7/25/2007 | $5,698,329 |

DB02:6202117.1

066585.1001

| LENDER/COUNTERPARTY | DATE | LENDER DEMAND |
|---|---|---|
| Institution 9 | 7/26/2007 | $9,248,215 |
| Institution 10 | 7/10/2007 | $1,100,000 |
|  | 7/25/2007 | $1,600,000 |
|  | 8/2/2007 | $6,100,000 |
| Institution 11 | 7/3/2007 | $605,066 |
| Institution 12 | 7/2/2007 | $4,569,406 |
| Institution 13 | 7/3/2007 | $1,293,594 |
|  | 7/5/2007 | $4,572,276 |
| Institution 14 | 7/18/2007 | $4,034,000 |
|  | 7/31/2007 | $20,518,365 |
| Institution 15 | 7/2/2007 | $1,699,955 |
|  | 7/6/2007 | $1,300,000 |
|  | 7/13/2007 | $1,400,000 |
|  | 7/20/2007 | $13,400,000 |

21.    **Rollover Funding Gaps.**  In addition to the foregoing Lender Demands, certain counterparties imposed Rollover Funding Gaps when the Debtors sought to roll over their repurchase agreements for mortgage-related securities.  For example, assume that the Debtors entered into a 30-day repurchase agreement in order to obtain funds against a pool of mortgage-related securities, and that the counterparty initially agreed to provide 90% of an agreed market value of such securities.  At the time when the 30-day repurchase date was reached, the Debtors would customarily seek to "roll" the existing portfolio into a new repurchase agreement with the same lender/counterparty and on the same terms.  At these intervals, with increasing frequency and severity in the several weeks leading up to the Petition Date, the counterparties began devaluing the mortgage-related securities and resetting the stated value to, in this example, 90% of the prior month's stated value.  Then the counterparty agreed to advance/purchase 90% of the newly set value, but this was effectively only 81% (90% x 90%) of the prior month's stated value.  The deficiency of 81% (this month's advance rate) from 90% (last month's advance rate)

066585.1001

was required to be paid either in cash or unencumbered assets. The Debtors do not believe the calculations imposed on the valuation of these mortgage-related securities were based on fair or objective criteria and would like to examine these issues further.

**B.    Areas of Requested Discovery**

22.    Respondents' conduct, along with numerous third parties, prior to the Petition Date caused a severe liquidity crisis for the Debtors that was a significant contributing cause to the Debtors' "free fall" bankruptcy filing. The Debtors are best positioned to determine, for the benefit of their respective estates, whether such conduct, including the making of Lender Demands, complied with the financing agreements with Respondents and with applicable law governing the relationship between lenders and borrowers (including when such lenders purport to be acting as repurchase agreement counterparties). Many of the Collateral Assets (e.g., whole mortgage loans and mortgage-related securities that are outside the definition of section 3 of the Securities Exchange Act) are not quoted on any recognized exchange and, accordingly, are not subject to consistent objective calculations. As a result, the Debtors sometimes challenged or disagreed with questionable calculations of Collateral Assets when they became the subject of Lender Demands that constrained the Debtors' liquidity or appeared arbitrary to the Debtors. The Debtors believe the financing agreements or governing law implies certain conditions on the conduct of their financing counterparties, and the Debtors seek information pursuant to this Motion to determine whether and to what extent claims or causes of action should be pursued on behalf of the Debtors' estates.

**C.    Need and Narrow Scope**

23.    The Rule 2004 discovery requested in this Motion will provide AHM with information it requires from those uniquely positioned to have it. The Debtors must obtain such

information to discharge properly its duties as debtors in possession. On behalf of the Debtors'

estates, AHM is entitled to seek and obtain discovery regarding these and other matters relating

to the acts, conduct, property, liabilities and financial condition of the Debtors and their estates.

AHM requires the requested information to assess fully the Debtors' potential claims against

third parties – including, among other parties, some or all of the Respondents.

24.     The discovery sought herein is narrowly tailored to the factual matters

raised or implicated by certain issues and events that precipitated the chapter 11 cases.

Compliance with the annexed Rule 2004 subpoenas and document requests by the Respondents

will not be burdensome and can be achieved without undue hardship in the time period

requested.

**D.     Entry of Omnibus Order**

25.     To facilitate the necessary discovery, AHM requests that the Court enter

the Proposed Order granting the Motion, and requiring the Respondents to produce documents

responsive to schedules to be served by AHM substantially in the form of the schedule annexed

to the Proposed Order. AHM requests that the Court order that such production be made on or

before the date that is twenty (20) days after entry of the Proposed Order.

## APPLICABLE AUTHORITY

26.     Bankruptcy Rule 2004 provides, in relevant part, as follows:

(a)     Examination on Motion.  On motion of any party in interest, the court may
order the examination of any entity.

(b)     Scope of Examination.  The examination of an entity under this rule or of
the debtor under § 343 of the Code may relate only to the acts, conduct, or
property or to the liabilities and financial condition of the debtor, or to any
matter which may affect the administration of the debtor's estate, or to the
debtor's right to a discharge ....

DB02:6202117.1                                                                    066585.1001

(c)     Compelling Attendance and Production of Documentary Evidence. The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

27.     Examinations under Bankruptcy Rules 2004(a) and (c) may include within their scope, among many other things:  any matter which may relate to the property and assets of the estate; the financial condition of the debtor; any matter which may affect the administration of a debtor's estate; and, in a chapter 11 case, any matter relevant to the case or to the formulation of a plan.

28.     A Rule 2004 examination is "designed to bring the Debtor's affairs to light, not to hide them." In re PRS Ins. Group., Inc., 274 B.R. 381, 385 (Bankr. D. Del. 2001). "The purpose of Rule 2004 examination is 'to show the condition of the estate and to enable the court to discover its extent and whereabouts and to come into possession of it that the rights of creditors may be preserved.'" In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing Cameron v. United States, 231 U.S. 710, 717 (1914)).  See also In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993) ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."), aff'd, 17 F.3d 600 (2d Cir. 1994).  The scope of inquiry permitted under a Rule 2004 examination is generally very broad and can "legitimately be in the nature of a fishing expedition." In re Wilcher, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985).  See also In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (same); In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984) (same).

29.     The information sought by AHM concerns the Debtors' and the Respondents' "acts, conduct, or property" or "liabilities and financial condition."  Bankruptcy

Rule 2004. Consequently, the documents sought by AHM are clearly within the scope of a Rule 2004 examination.

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

30.    Counsel for the Debtors has discussed with counsel for Respondents whether Respondents would agree to voluntarily produce documents and make witnesses available consistent with this Motion. Respondents indicated that they required until Friday, August 24, 2007, to make a decision. As of the time of filing this Motion, Respondents have not indicated a willingness to proceed consensually. In order to prevent unnecessary delay arising from disputes concerning, among other things, the entitlement to the information requested and claims of confidentiality, the Debtors seek to put this Motion on for a hearing and thereby ensure a fair and expeditious resolution. Prior to the hearing on this Motion, the Debtors will continue discussing the relief sought herein and attempt to resolve any legitimate objections raised by the Respondents.

### NOTICE

31.    Notice of this Application will be provided to (i) the United States Trustee of the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iv) counsel to the Debtors' post-petition lender; (v) the Securities and Exchange Commission; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

### NO PRIOR REQUEST

32.    No prior Application for the relief requested herein has been made to this or any other court.

13

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein directing each of the Respondents to produce the documents requested and appear for depositions, including by subpoenae, to be served on each of the Respondents.

Dated:  Wilmington, Delaware
        August 24, 2007

                                        QUINN EMANUEL URQUHART
                                        OLIVER & HEDGES LLP
                                        Susheel Kirpalani
                                        James C. Tecce
                                        51 Madison Avenue
                                        New York, New York 10010
                                        (212) 849-7000

                                        Richard A. Schirtzer
                                        Priya Sopori
                                        865 South Figueroa St., 10th Floor
                                        Los Angeles, CA 90017
                                        (213) 443-3000

                                        -and-

                                        /s/ John T. Dorsey
                                        Pauline K. Morgan (No. 3650)
                                        John T. Dorsey (No. 2988)
                                        YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                        1000 West Street, 17th Floor
                                        Wilmington, Delaware 19801
                                        P.O. Box 391
                                        Wilmington, Delaware 19899-0391
                                        Telephone: (302) 571-6707
                                        Facsimile: (302) 571-1253

                                        Proposed Counsel for American Home Mortgage
                                        Holdings, Inc., <u>et al.</u>

066585.1001

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | X | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors | : | |
| | : | |
| | X | |

## ORDER, UNDER 11 U.S.C. §§ 323, 1106, AND 1107 AND BANKRUPTCY RULE 2004, DIRECTING EXAMINATION OF, AND PRODUCTION OF DOCUMENTS BY, CERTAIN LOAN AND PURPORTED REPURCHASE COUNTERPARTIES

Upon the motion (the "Motion") of American Home Mortgage Investment Corp.,

together with its affiliated debtors in possession (collectively, "AHM" or the "Debtors") for entry

of an order pursuant to sections 323, 1106, and 1107 of title 11, United States Code, 11 U.S.C.

§§ 101, et seq. (the "Bankruptcy Code") and rule 2004 ("Rule 2004") of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), directing the examination of, and production of

documents by, certain financial institutions that are or were loan or purported repurchase

agreement counterparties (as further described in the Motion, the "Respondents"); and this matter

being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B); and upon consideration of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. (AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979): American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Motion; and due and proper notice of the Motion having been given, it is hereby ORDERED that:

    1.     The Motion is granted to the extent set forth herein.

    2.     The Respondents shall produce documents on or before the date that is twenty (20) days after entry of this Order responsive to requests to be served by the Debtors substantially in the form of the schedule annexed hereto.

    3.     The Respondents shall appear for oral examination by the Debtors on or before the date that is twenty (20) days after service of a request therefor is served by the Debtors, which request shall be authorized upon substantial completion of document discovery.

    4.     The Debtors are authorized to compel attendance or production in accordance with rule 9016 of the Bankruptcy Rules.

    5.     The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: September ___, 2007

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

# SCHEDULE OF DOCUMENTS TO BE PRODUCED BY CERTAIN FINANCIAL INSTITUTIONS PARTY TO LOAN OR PURPORTED REPURCHASE AGREEMENTS WITH AMERICAN HOME MORTGAGE CORP. OR ITS AFFILIATES

## RESPONDENT: CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL LLC

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.  "AHM" means American Home Mortgage Investment Corp. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

2.  "Collateral Asset(s)" means property, including Mortgage-Related Assets, that is the subject of a Loan or Repurchase Agreement.

3.  "Concerning" means relating to, referring to, describing, evidencing or constituting.

4.  "Counterparty" means any Loan or Repurchase Agreement counterparty, including Respondent, its predecessors, all parents, subsidiaries, partners, principals, managers and employees and any successors in interest.

5.  The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phonorecords, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form,

or other information, including originals, translations and drafts thereof and all copies bearing

notations and marks not found on the original. The term "document" includes, without

limitation, affidavits, analyses, appointment books, appraisals, articles from publications,

(whether in paper, database, electronic or other format(s)), calculations (whether in paper,

database, electronic or other format(s)), books, books of account, statements, cables, calendars,

charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence,

credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations,

filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes,

notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files,

partners' and employees' review check lists, permanent files, pictures, press releases, projections,

prospectuses, publications, receipts, recordings of conferences, conversations or meetings,

reports, statements, statistical records, studies, summaries, tabulations, telegrams, telephone

records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies

of AHM records and documents, and sheets or things similar to any of the foregoing however

denominated. The term "document" further includes email and electronic communication

whether stored on a personal computer, network computer system, backup computer tape and/or

disk, or by some other storage mechanism. The term "document" further means any document

now or at any time in the possession, custody, or control of the entity to whom this document

request is directed (together with any predecessors, successors, affiliates, subsidiaries or

divisions thereof, and their officers, directors, employees, agents and attorneys). Without

limiting the term "control" as used in the preceding sentence, a person is deemed to be in control

of a document if the person has the right to secure the document or a copy thereof from another

person having actual possession thereof, including, but not limited to, work product contracted by you from professional firms.

6.    "Financing Agreement" means any agreement for the provision of financing, whether secured, unsecured, structured as a Loan or Repurchase Agreement.

7.    "Lender Demand" means any margin call or purported margin call or any similar demand for cash, security, other property, or deposit, and any re-pricing of Collateral Assets that created funding gaps at the time requests were made to roll over repurchase agreements with Counterparties, which funding gaps were required to be satisfied by cash, security, other property, or deposit, in each case in connection with a Financing Agreement.

8.    "Loan" means an agreement, regardless of the terminology employed, concerning the temporary provision of funds or assets in exchange for the promise to repay an equivalent amount of funds or assets, plus interest, fees, expenses, and other charges.

9.    "Mortgage-Related Asset(s)" means any residential mortgage or home equity loans evidenced by a promissory note and secured by a mortgage and any securities issued by an entity that has pooled such mortgage or home equity loans through a securitization vehicle.

10.    "Regulators" means the Securities and Exchange Commission or any other governmental unit to which Respondent must report material changes in its financial condition.

11.    "Repurchase Agreement" means an agreement, including a master agreement, regardless of the terminology employed, that provides, in whole or in part, for the transfer of property or interests in property against the transfer of funds by the transferee of such property or interests in property with a simultaneous agreement by such transferee to transfer to the transferor thereof such property or interests in property, or their equivalent, at a date not later than one year after such transfer or on demand against the transfer of funds.

5

12.    "Respondent" means the entity listed above and each of its affiliates, as that term is defined in the Bankruptcy Code.

13.    "Value" means unpaid principal balance (UPB), market value, appraised value, opinions of value, estimates of value, stated value, agreed value, liquidation value, discounted present value, future value, historical value, bids, comparable sales or purchases, expressions of interest, book value, or reported value.

14.    The words "you" or "your" means Respondent and any or all past or present employees, partners, agents, representatives, officers, attorneys, or other persons or entities acting or purporting to act for or on behalf of Respondent.

INSTRUCTIONS

A.    The documents covered by this request include all documents in your possession, custody or control.  Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from January 1, 2007 through and including the date of production.

B.    Each request for the production of documents shall be deemed to be continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C.    You shall produce all documents in the manner in which they are maintained in the usual course of your business or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained,

6

transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

D.      If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

E.      Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

F.      Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

G.      Documents attached to each other should not be separated.

H.      Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

I.      The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

7

J.      In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

K.      If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

L.      Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

M.      The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

N.      The terms "all" and "each" shall be construed as "all and each."

O.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

P.      The term "including" means "including, without limitation."

REQUESTS FOR PRODUCTION

REQUEST NO. 1:

All documents concerning Financing Agreements between Respondent and AHM, including any communications concerning the same.

8

066585.1001

REQUEST NO. 2:

All documents concerning the Value of a Collateral Asset provided, transferred or pledged by AHM to Respondent, including all documents concerning the manner in which Value was determined, and including any communications concerning the same.

REQUEST NO. 3:

All documents concerning the Value of a Collateral Asset provided, transferred or pledged by a Counterparty (other than AHM) to Respondent, including all documents concerning the manner in which Value was determined, and including any communications concerning the same.

REQUEST NO. 4:

All documents concerning any Lender Demand made against AHM by Respondent, including any communications concerning the same.

REQUEST NO. 5:

All documents concerning any Lender Demand made against any Counterparty (other than AHM) by Respondent, including any communications concerning the same.

REQUEST NO. 6:

All documents concerning the Value of Mortgage-Related Assets owned, managed, financed or held, including as Collateral Assets, by Respondent, including any communications concerning the same.

REQUEST NO. 7:

All documents concerning filings, responses to inquiries or information provided to Regulators regarding the Value of Mortgage-Related Assets owned, managed, financed or

held, including as Collateral Assets, by Respondent, and including any communications

concerning the same.

<u>REQUEST NO. 8</u>:

All financial statements or reports concerning the Value of Mortgage-Related

Assets owned, managed, financed or held, including as Collateral Assets, by Respondent,

whether or not issued, including, without limitation, audit reports, agreed-upon procedures and

other special reports, consulting reports, letters, and recommendations to management or board

of directors, management advisory letters, compliance reports, internal accounting control

reports, material deficiency reports, program reports, cost reports, financial statement reports,

reports of material weaknesses and reports of reportable conditions.

DB02:6202117.1                                                           066585.1001