UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| American Home Mortgage Holdings, Inc., | ) | Case No. 07-11047 (BLS) |
| *et al.*, | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**OBJECTION OF ALABAMA POWER COMPANY TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II) DEEMING UTILITY COMPANIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

Alabama Power Company ("APCO"), by and through its undersigned counsel, objects to the Motion for Interim and Final Orders Pursuant to Section 366 of the Bankruptcy Code (I) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment (the "Utility Motion") (*Docket No. 5*). In support of its objection, APCO states as follows:

### INTRODUCTION

1. The Utility Motion disregards the significant changes made to 11 U.S.C. § 366 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Notwithstanding the manifest intent of Congress to protect the interests of utilities in chapter 11 bankruptcy cases, and the new procedures imposed by BAPCPA with respect to those protections, the Debtors have made only a token effort to comply with the new legislation. Therefore, based upon the various reasons recited in this objection, the Utility Motion should be denied.

## BACKGROUND

2. On August 6, 2007 (the "Petition Date"), American Home Mortgage Holdings, Inc. and its affiliated debtors in this jointly administered bankruptcy case (collectively the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

3. APCO provides electric service to the Debtors under three accounts at the following service locations: (i) 1535 Schillinger Road South, Unit B, Mobile, Alabama, 36695; (ii) 1535 Schillinger Road South, Unit C, Mobile, Alabama, 36695; and (iii) 1929 Hoover Court, Birmingham, Alabama, 35226.

4. On the Petition Date, the Debtors filed the Utility Motion in which the Debtors requested the entry of an interim order and a final order providing, among other things: (i) that the creation of a segregated account with a minimum balance equal to fifty percent of the charges for the Debtors' average monthly utility usage (the "Escrow Account") constitutes adequate assurance of payment for purposes of Section 366 of the Bankruptcy Code; (ii) that utilities requesting additional adequate assurance of payment must provide various items of historical information relating to prior utility service provided to the Debtors; (iii) that utilities be enjoined from altering, refusing or discontinuing service to, or discriminating against the Debtors in connection with unpaid utility charges attributable to service provided prior to the Petition Date; and (iv) that unless and until the Court enters an order compelling the Debtors to provide additional adequate assurance of payment, APCO and other requesting utilities are deemed to be adequately assured of payment.

5. On August 7, 2007, the Court entered the Interim Order pursuant to Section 366 of the Bankruptcy Code (I) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Utility

Services, (II) Deeming Utility Companies Adequately Assured or Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment (the "Interim Order") (*Docket No. 61*).

### SECTION 366

6.  Section 366 of the Bankruptcy Code ("Section 366") was enacted originally to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for these essential services. See In re Hanratty, 907 F.2d 1418, 1424 (3d Cir. 1990).

7.  Despite the apparent protections afforded to utilities under Section 366, *ex parte* orders and other judicial decisions interpreting the statute steadily eroded those safeguards in a manner that Congress apparently did not intend. Therefore, when enacting BAPCPA, substantial modifications were made to the text of Section 366 (as amended, "New Section 366"), which became effective in bankruptcy cases commenced on or after October 17, 2005. Congress has clearly expressed in the new legislation that utilities are entitled to be treated in bankruptcy cases in a manner that is consistent with a plain reading of the phrase "adequate assurance of payment". New Section 366 (i) grants to utilities significant substantive rights concerning the security to which they are entitled and (ii) prescribes a new procedure that eliminates the need for first day motions, interim orders and other practices that were common prior to BAPCPA.

8.  Subsections (a) and (b) of New Section 366 are substantively identical to their statutory predecessors. However, subsection (c) of New Section 366 is a new provision that unambiguously prohibits many of the practices that were common to cases filed prior to October 17, 2005 and which are proposed by the Debtors in this case. Subsection (c) provides as follows:

(c)(1)(A) For purposes of this subsection, the term 'assurance of payment' means –

    (i) a cash deposit;
    (ii) a letter of credit;
    (iii) a certificate of deposit;
    (iv) a surety bond;
    (v) a prepayment of utility consumption; or
    (vi) another form of security that is mutually agreed on between the utility and the debtors or the trustee.

(B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtors or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider –

    (ii) the absence of security before the date of the filing of the petition;
    (iii) the payment by the debtors of charges for utility service in a timely manner before the date of the filing of the petition; or
    (iv) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtors before the date of the filing of the petition without notice or order of the court.

### SIGNIFICANCE OF NEW SECTION 366

9. New Section 366 prohibits a debtor from claiming that utilities are adequately assured of payment of postpetition charges simply by conceding that such charges are entitled to an administrative expense priority. Pursuant to 11 U.S.C. § 366(c)(1)(A), only the tangible forms of security listed in the statute qualify as assurance of payment, unless a utility otherwise agrees. The

protections granted to utilities by New Section 366 recognize the inherent risk that utilities must bear since they are statutorily compelled to provide uninterrupted postpetition service to debtors for a minimum period, even though their invoices are payable only after the utility service has been irreversibly consumed by the debtors. No creditors in this bankruptcy case, other than utilities, are required to incur such risks.

10. Paragraph (c)(2) of New Section 366 establishes a new procedure by which debtors are to provide assurance of payment to utilities. Prior to BAPCPA, debtors were required to "furnish" adequate assurance of payment within 20 days of the petition date to avoid a disruption in service. However, paragraph (c)(2) of New Section 366 requires that one of the allowed forms of assurance of payment "that is satisfactory to the utility" be "received" by the utility within 30 days of the petition date to ensure continuous service. This purposeful revision of Section 366 requires the debtors to timely deliver assurance of payment to a utility without imposing any burdens or other measures upon utilities, including first day motions, interim orders, *ex parte* hearings and other court proceedings.

11. Following delivery of a payment assurance to a utility, if the amount of the delivered assurance is deemed unreasonable by the debtors, 11 U.S.C. § 366(c)(3) authorizes a court, after a motion and hearing, to modify the amount of assurance required by and delivered to the utility. Paragraph (c)(3) of New Section 366 does not authorize a bankruptcy court to either (i) determine the "form" of adequate assurance that a utility may require or (ii) establish the "amount" of assurance that is adequate prior to the utility "receiv[ing] from the debtors or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(3). Court modification of the amount of an assurance of payment may occur only after the security described in New Section 366 is received by a utility. See In re Lucre, Inc., 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005); 11 U.S.C. § 366(c)(3)(A).

12. Textually and in theory, New Section 366(c) requires a debtor to timely communicate with its utility service providers (and not by the filing of a first-day motion) in an effort to reach an agreement within the first 30 days of a case concerning the assurance of payment that will be required. During this 30 day period, three scenarios could occur: (1) the debtor and a utility will agree on the adequacy of payment assurance to be received by the utility to ensure uninterrupted service; (2) the debtor will deem the service provided by a utility to be unnecessary and will request that the service be terminated; or (3) the debtor will deliver to the utility the requested assurance of payment and then move the bankruptcy court to modify the amount. Regardless of the scenario, a bankruptcy court's involvement under New Section 366, if any, should commence only after the debtor has delivered the assurance of payment required by the utility.

### THE UTILITY MOTION DOES NOT MEET THE REQUIREMENTS OF NEW SECTION 366

13. Many of the provisions of the Utility Motion conflict with both the letter and the intent of New Section 366.

14. The Escrow Account is not one of the approved payment assurance forms identified in 11 U.S.C. § 366(c)(1)(A)(i-v). Subsection (c)(1)(A) of New Section 366 is unambiguous and expressly identifies five forms of tangible security, that define what is an "assurance of payment". The specified forms of payment assurance defined in 11 U.S.C. § 366(c)(1)(A) (i-v) are not simply identified by way of example. See In re Astle, 338 B.R. at 860 n.13.

15. Subsection (c)(2) of New Section 366 authorizes service refusal, modification or termination if within 30 days of the petition date the utility "does not <u>receive</u> from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." (*emphasis added*). Here, APCO will not have received anything. APCO will not possess, have access to, or

control over the Escrow Account and any attempts to draw against the Escrow Account by APCO presumably require Court approval. Such is the antithesis of receipt.

16. APCO does not consent to the Escrow Account as being a satisfactory form of payment assurance. As a result, New Section 366 does not authorize the Court or the Debtors to determine which of the approved assurances of payment APCO must accept. Subsection (c)(2) of New Section 366 requires a chapter 11 debtor to deliver to its servicing utilities payment assurances deemed satisfactory by the receiving utility. Upon delivery of a payment assurance, any party is authorized under 11 U.S.C. § 366(c)(3) to file a motion requesting the entry of an order modifying the <u>amount</u> of the delivered payment assurance. However, the textual authorization for court modification of an amount of a payment assurance does not extend to the <u>form</u> of that assurance of payment. See 11 U.S.C. § 366(c)(3). A precise reading of New Section 366 reflects that a utility is the only party with discretion to determine which of the specified forms of payment assurance is satisfactory.

17. Although the use of the Escrow Account as a payment assurance is, in and of itself, contrary to New Section 366, in addition, the proposed funding amount of the Escrow Account is not "adequate". The Debtors made no effort in the Utility Motion to justify their conclusion that funding the Escrow Account in an amount equal to one-half of the Debtors' average monthly utility charges is adequate and have made no attempts to discuss with APCO, as contemplated by New Section 366, what amount of assurance APCO deems adequate.

18. The amount to be maintained in the Escrow Account also wholly ignores the manner in which APCO invoices the Debtors for its electric service. APCO service meters are read on a monthly basis. On the date that a meter is read, APCO has already delivered approximately thirty days of electric service for which no payment has been received (*Day 30*). As a general rule, approximately

two to three days after a meter is read, APCO issues an invoice (*Day 33*). Payment of the invoice is due upon receipt (*Day 35*), but is not delinquent until ten (10) days after receipt (*Day 45*). Once an invoice is delinquent, APCO is required by Rule 10 of the Alabama Public Service Commission to send a written notice of termination to the customer. APCO cannot terminate service until the expiration of five (5) days after delivery of the termination notice to a United States Post Office (*at the earliest, Day 51*). Additional time invariably passes before service is actually terminated by APCO. Therefore, APCO customarily provides businesses such as the Debtors with more than fifty-one (51) days of utility service at a particular location before it can terminate electric service. This very substantial risk has resulted in formal recognition by the Alabama Public Service Commission in General Rule 8 that a deposit equal to two (2) months average electric service is reasonable and appropriate "for the purpose of guaranteeing final payment for service, when, in the judgment of the utility, such deposit is necessary." Rule 8 General Rules of the Alabama Public Service Commission.

19. Under virtually any canon of statutory construction, it is inconceivable that a deposit based upon 15 days average service is "adequate assurance of payment" for 51 or more days of service. The Escrow Account should not be endorsed by this Court as being consistent with the requirements of New Section 366.

20. Finally, the Utility Motion fails to adhere to the provisions of New Section 366 in that it requires utilities seeking additional adequate assurance of payment (in lieu of, or in addition to, the Proposed Deposit) to provide various items of historical information related to the Debtors' electric service account with APCO. This requirement ignores the explicit statement in New Section 366(c)(3)(B)(ii) that a court may not consider the payment by the Debtors of charges for utility service in a timely manner before the petition date when determining whether an assurance of payment is adequate.

## RELIEF REQUESTED

21. Based upon the foregoing, APCO requests that the Court enter an order:

(i) denying the Utility Motion and vacating the Interim Order;

(ii) denying the Debtors' request for approval of the Procedures to the extent that the Procedures violate New Section 366;

(iii) requiring the Debtors to deliver to APCO a cash deposit in the amount of $1,100.00, which amount is equal to the charges for approximately two months average electric service based on the Debtors' account history for the twelve months preceding the Petition Date; and

(iv) granting to APCO such other, further and additional relief as the Court deems proper.

Dated: August 27, 2007

/s/Eric T. Ray
Eric T. Ray
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 2600
Birmingham, Alabama 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

*Attorney for Alabama Power Company*

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been filed and delivered via the Court's CM/ECF system and served upon the following by U.S. mail, properly addressed and postage prepaid, on the 27th day of August, 2007:

James L. Patton, Jr., Esq.  
Young, Conaway, Stargatt & Taylor, LLP  
The Brandywine Building  
1000 West Street, 17th Floor  
Wilmington, DE 19801

United States Trustee  
844 King Street, Room 2207  
Lockbox #35  
Wilmington, DE 19899-0035

/s/Eric T. Ray
Of Counsel