IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       ) Chapter 11
                                                             )
AMERICAN HOME MORTGAGE                                       ) Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, et. al.              ) Jointly Administered
                                                             )
                                                             ) Objection Deadline : August 27, 2007 at 4:00 p.m
                                                             ) Hearing Date: September 4, 2007 at 11:00 am
                  Debtors.                                   ) Related Docket Nos. 16 and 68
------------------------------------------------------------ x

OBJECTION OF BEAR STEARNS MORTGAGE CAPITAL CORPORATION
AND EMC MORTGAGE CORPORATION TO MOTION
OF THE DEBTORS PURSUANT TO SECTIONS 105(a), 361, 362, 363, 364 AND
552 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(b) FOR
ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING LIMITED
USE OF CASH COLLATERAL IN CONNECTION WITH OPERATING
THE SERVICING BUSINESS; (B) GRANTING ADEQUATE PROTECTION;
AND (C) SCHEDULING A FINAL HEARING ON THE MOTION

Bear Stearns Mortgage Capital Corporation ("BSMCC") and EMC Mortgage Corporation ("EMC"), by their undersigned attorneys, hereby submit this objection (the "Objection") to Motion of the Debtors Pursuant to Sections 105(a), 361, 362, 363, 364 and 552 of the Bankruptcy Code and Bankruptcy Rule 4001(b) for Entry of Interim and Final Orders (a) Authorizing Limited Use of Cash Collateral in Connection with Operating the Servicing Business; (b) Granting Adequate Protection; and (c) Scheduling a Final Hearing on the Motion (the "Cash Collateral Motion"), and in support of the Objection, respectfully represent as follows:

PRELIMINARY STATEMENT

1.      BSMCC and EMC object to the entry of the final cash collateral order (the "Final Cash Collateral Order") to the extent that the Debtors seek (i) to grant security interests in or liens on (a) the Purchased Mortgage Loans (as defined herein) and the proceeds related

thereto, (b) the servicing rights related to the Purchased Mortgage Loans, and (c) any amounts received by the Debtors, including principal and interest payments, escrow amounts and other income and amounts of any kind with respect to Purchased Mortgage Loans (collectively, the "Collections") related to that Whole Loan Master Repurchase Agreement executed on June 23, 2004 (as amended, modified and supplemented from time to time, the "Repurchase Agreement") among BSMCC and certain of the Debtors (ii) to use any Collections in respect of the Purchased Mortgage Loans or (iii) to otherwise affect the protected rights of BSMCC under the Purchase Agreement and section 559 of the Bankruptcy Code.

2. Quite simply, the Debtors do not have any legal or equitable interests in the Purchased Mortgage Loans, the servicing rights or the Collections. As more fully set forth herein, the Repurchase Agreement constitutes a "repurchase agreement" as that term is defined in section 101(47) of the Bankruptcy Code and BSMCC, in exercising its rights under section 559 of the Bankruptcy Code, has sold the Purchased Mortgage Loans on a service released basis to EMC. Upon the sale of the Purchased Mortgage Loans, any right the Debtors might have had to service the Purchased Mortgage Loans was terminated and, therefore, the Purchased Mortgage Loans, the servicing rights and the Collections are not property of the estate under section 541 of the Bankruptcy Code. Indeed, upon the sale, the Purchased Mortgage Loans, the servicing rights and related servicing files and documents (the "Servicing Documents") and the Collections became the sole property of EMC.

3. Notwithstanding the foregoing, the Debtors appear to be acting as if EMC's property is in fact property of the Debtors' estate. Indeed, after repeated written demands, the Debtors have failed to transfer the Servicing Documents (which are needed for EMC to service the Purchased Mortgage Loans) and Collections to EMC in direct contravention

of the Repurchase Agreement and applicable law. Furthermore, upon information and belief, the Debtors continue to collect payments and other amounts related to the Purchased Mortgage Loans from mortgagors even though the Debtors have no right to such amounts.

4. Through this Objection, BSMCC and EMC seek to ensure that the Debtors in the Final Cash Collateral Order do not attempt to grant any liens on any of EMC's property, use the Collections or affect the rights of BSMCC and EMC. Without in any way limiting their rights, BSMCC and EMC also specifically request that the Final Cash Collateral Order expressly provide that (i) no liens will be granted by the Debtors on EMC's property, including, but not limited to, the Purchased Mortgage Loans and any proceeds related thereto, the servicing rights, and the Collections because such property is not property of the Debtors' estates (ii) the Debtors are not authorized to use the Collections in respect of the Purchased Mortgage Loans and (iii) nothing in the Final Cash Collateral Order will affect the rights of BSMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code.

## BACKGROUND[1]

5. On June 23, 2004, BSMCC, as buyer, entered into the Repurchase Agreement with Debtor American Home Mortgage Acceptance, Inc., as seller ("AHMA"). Pursuant to the Repurchase Agreement, BSMCC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMA. Additionally, on June 23, 2004, BSMCC and AHMA entered into a Custody Agreement, together with Deutsche Bank National Trust Company (the "Custodian"), in which the Custodian agreed to act as custodian for BSMCC and AHMA of all notes, mortgages and other documents related to the Purchased Mortgage Loans.

---

[1] The full factual history of the transaction and the relevant events related thereto and a summary of the operative provisions of the Repurchase Agreement and related agreements are contained in the Complaint (as defined herein).

3

The Repurchase Agreement and Custody Agreement were subsequently amended on November 22, 2004 and August 29, 2005, to add Debtor American Home Mortgage Investment Corp. ("AHMI") and Debtor American Home Mortgage Corp. ("AHMC", and together with AHMA and AHMI, the "Debtor Sellers") as parties to the Repurchase Agreement and to provide that the Debtor Sellers are jointly and severally liable for the obligations under the agreements.

6. Pursuant to the Repurchase Agreement, BSMCC purchased the Purchased Mortgage Loans from the Debtor Sellers and the Debtor Sellers agreed to repurchase the Purchased Mortgage Loans in the future on demand at a price in excess of what BSMCC paid for the Purchased Mortgage Loans. As of July 30, 2007, BSMCC owned Purchased Mortgage Loans in an amount exceeding $117,000,000. Pursuant to the Repurchase Agreement, it was the intent of the parties that the transfers of the Purchased Mortgage Loans constituted purchases and sales of Purchased Mortgage Loans.

7. The Repurchase Agreement also provides that until and unless there was an Event of Default under the Repurchase Agreement, the Debtor Sellers would cause the Purchased Mortgage Loans to be serviced for the benefit of BSMCC.[2] Upon information and belief, AHMS performed and continues to perform servicing with respect to the Purchased Mortgage Loans.

8. On August 2, 2007, in accordance with Paragraph 11(b) of the Repurchase Agreement, BSMCC delivered a notice of default to AHMA resulting from AHMA's failure to meet a margin call under the Repurchase Agreement. AHMA's failure to timely meet the margin

---

[2] Servicing involves, among other things, collecting principal and interest payments and other income and amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection process.

4

call constituted an Event of Default (as such term is defined in the Repurchase Agreement) pursuant to Paragraph 11(a)(ii) of the Repurchase Agreement.

9. Upon such notice, pursuant to Paragraph 11(c) of the Repurchase Agreement, the Debtor Sellers were required, among other obligations, to "immediately deliver or cause the Custodian to deliver to [BSMCC] any documents relating to Purchased Mortgage Loans subject to such Transactions then in Seller's possession." Paragraph 11(c) also required the Debtor Sellers to remit all such funds thereafter received in connection with the Purchased Mortgage Loans to BSMCC.

10. On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. As provided in Paragraph 11(a)(iii), the Debtors' chapter 11 filing also constituted an Event of Default under the Repurchase Agreement.

11. On August 6, 2007, BSMCC exercised its remedies under the Repurchase Agreement and conducted an auction of the Purchased Mortgage Loans. The Purchased Mortgage Loans were sold on August 10, 2007 to EMC, a Bear Stearns affiliate, on a servicing released basis, which means that BSMCC sold all rights relating to the Purchased Mortgage Loans, including the servicing rights.[3]

12. On August 13, 2007, BSMCC sent AMHA a letter (i) notifying the Debtors of the sale and (ii) requesting that the Debtors transfer the Servicing Documents and any

---

[3] Under Paragraph 12(c)(ii) of the Repurchase Agreement, the BSMCC may, "in its sole discretion if an Event of Default shall have occurred and be continuing ... sell the Mortgage Loans on a servicing released basis by terminating the respective servicer of the Purchased Mortgage Loans in accordance with the related servicing agreement with or without cause."

5

amounts received as escrow and principal and interest payments related to the Purchased Mortgage Loans to EMC.

13.   On August 24, 2007, BSMCC and EMC filed a Complaint For Declaratory and Injunctive Relief (the "Complaint"). In the Complaint, BSMCC and EMC are seeking "a declaration from Court that all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans are property of EMC, and that EMC is entitled to immediate access to and possession of all servicing files, documents and payments and escrow accounts relating to the Purchased Mortgage Loans." Complaint, ¶ [65].

## BASIS FOR OBJECTION

14.   Although it is unclear from the Cash Collateral Motion whether the Debtors intend to grant a security interest to the Pre-Petition Secured Parties (as defined in the Interim Cash Collateral Order) in the Purchased Mortgage Loans, the servicing rights and the related Collections, the Debtors are granting "first priority interests and liens in all the assets of the Debtors' Servicing Business and all proceeds and products derived therefrom." Cash Collateral Motion, ¶ 6. As a result, BSMCC and EMC specifically request that the Final Cash Collateral Order expressly provide that no liens will be granted on EMC's property, including, but not limited to, the Purchased Mortgage Loans and the proceeds related thereto, the servicing rights and the Collections, because such property is not property of the Debtors' estates.

15.   Moreover, the Cash Collateral Motion seeks authority to use cash collateral proceeds of pre-petition collateral under a loan agreement dated as of August 10, 2006, in which Bank of America, N.A. is the agent for the Pre-Petition Secured Lenders. The Debtors describe the pre-petition collateral as including mortgage loans, mortgage receivables, servicing

6

rights and related document and records. It is not clear from the Cash Collateral Motion whether the Debtors' references to mortgage loans and mortgage receivables include the Purchased Mortgage Loans and Collections. If so, BSMCC and EMC object to the use of Collections in respect of the Purchased Mortgage Loans because such property is not property of the Debtors' estates.

16. As set forth above, BSMCC has already sold the Purchased Mortgage Loans and all rights relating thereto, including the servicing rights to EMC. Any rights of the Debtors to service the Purchased Mortgage Loans were extinguished and the serving rights, Servicing Documents and the Collections became the property of EMC. The mere fact that the Debtors have possession of the Servicing Documents and the Collections does not bestow them with any legal or equitable interests in the property, and EMC's property is not property that the Debtors, may sell, use or lease under section 363 of the Bankruptcy Code. In fact, the Debtors' failure to transfer the Servicing Documents and Collections is an act of conversion as set forth in the Complaint.

17. Indeed, section 27 of the Repurchase Agreement expressly states the parties' intent that the transaction described therein are "repurchase agreement[s]" and that "either party's right to liquidate the Mortgage Loans delivered to it in connection with the Transactions hereunder or *to exercise any other remedies* pursuant to Paragraph 11 hereof, is a contractual right to liquidate such Transaction as described in sections 555 and 559" of the Bankruptcy Code. Thus, in accordance with section 559 of the Bankruptcy Code, and the terms of the Repurchase Agreement itself, BSMCC had the right to sell the Purchased Mortgage Loans along with the servicing rights. More specifically, pursuant to Paragraph 12(c) of the

Repurchase Agreement, BSMCC has rightfully sold the Purchased Mortgaged Loans, with the servicing rights to EMC.

18. Lastly, pursuant to section 559 of the Bankruptcy Code, BSMCC's right to the Servicing Documents and Collections cannot be stayed or otherwise limited by this Court and the Debtors should be directed to transfer the Servicing Documents and Collections to EMC and to provide an accounting to EMC of all proceeds that are attributable to EMC's property.

WHEREFORE, BSMCC and EMC specifically request that the Court enter an order that (i) provides that no liens will be granted on EMC's property because such property is not property of the Debtors' estates, (ii) provides that the Debtors shall not be authorized to use the Collections, (iii) provides that the rights of BSMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code are not affected and (iv) grants other such relief that is just and proper.

Dated: August 27, 2007

Respectfully submitted,
DUANE MORRIS LLP

/s/ Frederick B. Rosner
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4943

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Michael G. Burke
Alex R. Rovira
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

NY1 6313288