**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
                                                   )  Chapter 11
In re:                                             )
                                                   )
AMERICAN HOME MORTGAGE                             )  Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, et. al.    )  Jointly Administered
                                                   )
                                                   )  Objection Deadline : August 27, 2007 at 4:00 pm
                                                   )  Hearing Date: September 4, 2007 at 11:00 am
                      Debtors.                      )  Related Docket Nos. 17 and 67
---------------------------------------------------------------- x

**OBJECTION OF BEAR STEARNS MORTGAGE CAPITAL CORPORATION AND
EMC MORTGAGE CORPORATION TO THE ENTRY OF A FINAL ORDER
AUTHORIZING CERTAIN DEBTORS TO OBTAIN POST PETITION FINANCING
AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE
EXPENSE PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364(c)**

Bear Stearns Mortgage Capital Corporation ("BSMCC") and EMC Mortgage

Corporation ("EMC"), by their undersigned attorneys, hereby submit this objection (the

"Objection") to the Debtors' Motion (the "DIP Motion") for Entry of a Final Order Authorizing

Certain Debtors to Obtain Postpetition Financing And Grant Security Interests and Superpriority

Administrative Expense Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364(c) (the "Final DIP

Order") and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      BSMCC and EMC object to the entry of the Final DIP Order to the extent

that the Debtors seek (i) to grant security interests in or liens on (a) the Purchased Mortgage

Loans (as defined herein) and any proceeds related thereto, (b) the servicing rights related to the

Purchased Mortgage Loans, and (c) any amounts received by the Debtors, including principal

and interest payments, escrow amounts and other income and amounts of any kind, with respect

to Purchased Mortgage Loans (collectively, the "Collections") related to that Whole Loan Master

Repurchase Agreement executed on June 23, 2004 (as amended, modified and supplemented

from time to time, the "Repurchase Agreement") among BSMCC and certain of the Debtors or (ii) to otherwise affect the rights of BSMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code.

2.      Quite simply, the Debtors do not have any legal or equitable interests in the Purchased Mortgage Loans, the servicing rights or the Collections. As more fully set forth herein, the Repurchase Agreement constitutes a "repurchase agreement" as that term is defined in section 101(47) of the Bankruptcy Code and BSMCC, in exercising its rights under section 559 of the bankruptcy Code, has sold the Purchased Mortgage Loans on a service released basis to EMC. Upon the sale of the Purchased Mortgage Loans, any right the Debtors might have had to service the Purchased Mortgage Loans was terminated and, therefore, the Purchased Mortgage Loans, the servicing rights and the Collections are not property of the estate under section 541 of the Bankruptcy Code. Indeed, upon the sale, the Purchased Mortgage Loans, the servicing rights and related servicing files and documents (the "Servicing Documents") and the Collections became the sole property of EMC.

3.      Notwithstanding the foregoing, the Debtors appear to be acting as if EMC's property is in fact property of the Debtors' estate. Indeed, after repeated written demands, the Debtors have failed to transfer the Servicing Documents (which are needed for EMC to service the Purchased Mortgage Loans) and Collections to EMC in direct contravention of the Repurchase Agreement and applicable law. Furthermore, upon information and belief, the Debtors continue to collect payments and other amounts related to the Purchased Mortgage Loans from mortgagors even though the Debtors have no right to such amounts.

2

4.      Through this Objection, BSMCC and EMC seek to ensure that the Debtors in the Final DIP Order do not attempt to grant any liens on any of EMC's property or otherwise affect the rights of BSMCC and EMC. Without in any way limiting their rights, BSMCC and EMC specifically request that the Final DIP Order expressly provide that (i) no liens will be granted on EMC's property, including, but not limited to, the Purchased Mortgage Loans and any proceeds related thereto, the servicing rights, and the Collections because such property is not property of the Debtors' estates and (ii) nothing in the Final DIP Order will affect the rights of BSMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code.

## BACKGROUND[1]

5.      On June 23, 2004, BSMCC, as buyer, entered into the Repurchase Agreement with Debtor American Home Mortgage Acceptance, Inc., as seller ("AHMA"). Pursuant to the Repurchase Agreement, BSMCC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMA. Additionally, on June 23, 2004, BSMCC and AHMA entered into a Custody Agreement, together with Deutsche Bank National Trust Company (the "Custodian"), in which the Custodian agreed to act as custodian for BSMCC and the AHMA of all notes, mortgages and other documents related to the Purchased Mortgage Loans. The Repurchase Agreement and Custody Agreement were subsequently amended on November 22, 2004 and August 29, 2005, to add Debtor American Home Mortgage Investment Corp. ("AHMI") and Debtor American Home Mortgage Corp. ("AHMC", and together with AHMA and AHMI, the "Debtor Sellers") as parties to the Repurchase Agreement and to provide that the Debtor Sellers are jointly and severally liable for the obligations under the agreements.

---

[1] The full factual history of the transaction and the relevant events related thereto and a summary of the operative provisions of the Repurchase Agreement and related agreements are contained in the Complaint (as defined herein).

DM3\558493.1

6.       Pursuant to the Repurchase Agreement, BSMCC purchased the Purchased Mortgage Loans from the Debtor Sellers and the Debtor Sellers agreed to repurchase the Purchased Mortgage Loans in the future on demand at a price in excess of what BSMCC paid for the Purchased Mortgage Loans. As of July 30, 2007, BSMCC owned Purchased Mortgage Loans in an amount exceeding $117,000,000. Pursuant to the Repurchase Agreement, it was the intent of the parties that the transfers of the Purchased Mortgage Loans constituted purchases and sales of Purchased Mortgage Loans.

7.       The Repurchase Agreement also provides that until and unless there was an Event of Default under the Repurchase Agreement, the Debtor Sellers would cause the Purchased Mortgage Loans to be serviced for the benefit of BSMCC.[2] Upon information and belief, AHMS performed and continues to perform servicing with respect to the Purchased Mortgage Loans.

8.       On August 2, 2007, in accordance with Paragraph 11(b) of the Repurchase Agreement, BSMCC delivered a notice of default to AHMA resulting from AHMA's failure to meet a margin call under the Repurchase Agreement. AHMA's failure to timely meet the margin call constituted an Event of Default (as such term is defined in the Repurchase Agreement) pursuant to Paragraph 11(a)(ii) of the Repurchase Agreement.

9.       Upon such notice, pursuant to Paragraph 11(c) of the Repurchase Agreement, the Debtor Sellers were required, among other obligations, to "immediately deliver or cause the Custodian to deliver to [BSMCC] any documents relating to Purchased Mortgage Loans subject to such Transactions then in Seller's possession." Paragraph 11(c) also required

---

[2]  Servicing involves, among other things, collecting principal and interest payments and other income and amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection process.

the Debtor Sellers to remit all such funds thereafter received in connection with the Purchased

Mortgage Loans to BSMCC.

10.    On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code.  As provided in Paragraph

11(a)(iii), the Debtors' chapter 11 filing also constituted an Event of Default under the

Repurchase Agreement.

11.    On August 6, 2007, BSMCC exercised its remedies under the Repurchase

Agreement and conducted an auction of the Purchased Mortgage Loans.  The Purchased

Mortgage Loans were sold on August 10, 2007 to EMC, a Bear Stearns affiliate, on a servicing

released basis, which means that BSMCC sold all rights relating to the Purchased Mortgage

Loans, including the servicing rights. [3]

12.    On August 13, 2007, BSMCC sent AMHA a letter (i) notifying the

Debtors of the sale and (ii) requesting that the Debtors transfer the Servicing Documents and any

amounts received as escrow and principal and interest payments related to the Purchased

Mortgage Loans to EMC.

13.    On August 24, 2007, BSMCC and EMC filed a Complaint For

Declaratory and Injunctive Relief (the "Complaint").  In the Complaint, BSMCC and EMC are

seeking "a declaration from Court that all servicing files, documents and any payments and

escrow accounts relating to the Purchased Mortgage Loans are property of EMC, and that EMC

---

[3] Under Paragraph 12(c)(ii) of the Repurchase Agreement, the BSMCC may, "in its sole discretion if an Event of Default shall have occurred and be continuing ... sell the Mortgage Loans on a servicing released basis by terminating the respective servicer of the Purchased Mortgage Loans in accordance with the related servicing agreement with or without cause."

5

is entitled to immediate access to an possession of all serving files, documents and payments and escrow accounts relating to the Purchased Mortgage Loans". Complaint ¶ 65.

## BASIS FOR OBJECTION

14.     Although it is unclear from the DIP Motion whether the Debtors are attempting to grant a security interest to the DIP Agent (as defined in the Interim DIP Order) in the Purchased Mortgage Loans, the servicing rights and related Collections, BSMCC and EMC specifically request that the Final DIP Order expressly provide that no liens will be granted on EMC's property including, but not limited to, the Purchased Mortgage Notes, the servicing rights and the Collections, because it is not property of the Debtors' estates.

15.     As set forth above, BSMCC has already sold the Purchased Mortgage Loans and all rights relating thereto, including the servicing rights to EMC.  Any right of the Debtors to service the Purchased Mortgage Loans was extinguished.  The mere fact that the Debtors have possession of the Servicing Documents and the Collections does not bestow them with any legal or equitable interests in EMC's property, and EMC's property is not property that the Debtors may sell, use or lease under section 363 of the Bankruptcy Code.  In fact, the Debtors' failure to transfer the Servicing Documents and Collections is an act of conversion as more fully set forth in the Complaint.

16.     Indeed, section 27 of the Repurchase Agreement expressly states the parties' intent that the transaction described therein are "repurchase agreement[s]" and that "either party's right to liquidate the Mortgage Loans delivered to it in connection with the Transactions hereunder or *to exercise any other remedies* pursuant to Paragraph 11 hereof, is a contractual right to liquidate such Transaction as described in sections 555 and 559" of the

6

Bankruptcy Code. Thus, in accordance with section 559 of the Bankruptcy Code, and the terms of the Repurchase Agreement itself, BSMCC had the right to sell the Purchased Mortgage Loans along with the servicing rights. More specifically, pursuant to Paragraph 12(c) of the Repurchase Agreement, BSMCC has rightfully sold the Purchased Mortgaged Loans, with the servicing rights to EMC.

17.    Lastly, pursuant to section 559 of the Bankruptcy Code, BSMCC's right to the Servicing Documents and Collections cannot be stayed or otherwise limited by this Court and the Debtors should be directed to transfer the Servicing Documents and Collections to EMC and to provide an accounting to EMC of all proceeds that are attributable to EMC's property. ·

7

WHEREFORE, BSMCC and EMC specifically request that the Court enter an order that (i) provides that no liens will be granted on EMC's property because such property is not property of the Debtors' estates (ii) provides that the rights of BMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code are not affected and (iii) grants such other relief that is just and proper.

Dated: August 27, 2007

Respectfully submitted,

DUANE MORRIS LLP

/s/ Frederick B. Rosner
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4943
Facsimile: (302) 657-4901

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Michael G. Burke
Alex R. Rovira
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

8