UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                           .    Chapter 11
                                 .
AMERICAN HOME MORTGAGE           .    Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware       .    (Jointly Administered)
corporation, *et al.,*           .
                                 .    Aug. 22, 2007 (4:07 p.m.)
          Debtors.               .    (Wilmington)(Telephonic)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE COURT: Good afternoon.  This is Judge Sontchi.

2          MS. DeFALAISE (TELEPHONIC): Good afternoon, Your

3    Honor.

4          ALL (TELEPHONIC): Good afternoon, Your Honor.

5          THE COURT: This is in connection - I thank you very

6    much for being available on short notice, which is standard

7    operating procedure in this matter.  I asked for this call in

8    connection with the motion of the United States for an order

9    requiring turnover of non-estate property belonging to Ginnie

10   Mae and declaring Ginnie Mae not subject to the automatic

11   stay.  The reason I - This matter has been scheduled for

12   September 7th - I forget the time - Oh, at 11 a.m., and the

13   United States asked for that time, contacted my chambers and

14   was given that time and duly noticed the matter.  No fault to

15   any of the parties, there was a mixup, an internal mixup in

16   chambers, and that date was given notwithstanding the fact

17   that what I would have preferred to have occurred would have

18   been to consult the various parties in interest and to try to

19   hear basically why this matter needed to be set on for a

20   special date, why it needed to be set in the time frame that

21   it was set for, so, notwithstanding the fact that chambers

22   obviously scheduled that date, I felt that I - it would be

23   more prudent to allow the parties to be heard on when and how

24   the matter should be scheduled, and I have not perused the

25   numerous exhibits.  I have read the motion, and it raises a

1   threshold issue that I'd also like to address on this call,

2   which is whether it's appropriate relief to be sought by

3   motion in any event.  It strikes me as a turnover in a

4   declaratory judgment action that needs to be brought by

5   adversary proceedings.  So, I'd ask, I guess, preliminarily

6   whether there is any issue with regard to the scheduling

7   that's been requested, and if there is, what the parties'

8   position is on when the matter should be scheduled.  And

9   then, secondarily, the issue that I raise which is whether

10  the matter should be dealt with in the context of an

11  adversary proceeding.

12         MS. DeFALAISE (TELEPHONIC): Your Honor, if I may.

13  This is Mary DeFalaise on behalf of the United States.  We

14  filed the motion.

15         THE COURT: Yes, ma'am.

16         MS. DeFALAISE (TELEPHONIC): To address the first

17  issue of the scheduling, the United States' position is that

18  we're in a unique situation.  We are, as we referenced in our

19  motion, different than the other creditors in interest in

20  this - or the parties in interest in this case in that our

21  motion would warrant separate consideration.  I do know that

22  Your Honor, you have scheduled several hearings or at least

23  one hearing I know on September 4th on other matters, but

24  given the - one, the urgency and the importance of this

25  matter, and two, just being in a unique situation from the

1  other creditors or the other parties having servicing

2  agreements with the debtors, we believe that this matter did

3  warrant separate consideration, particularly given if the

4  Judge or if the Court would like to hear evidence on the

5  matter at that time, which is why we contacted the Court to

6  schedule a separate hearing date.

7          THE COURT: Right, I understand that, and I'm

8  certainly not assigning any fault to you for proceeding in

9  that manner.  That's the way it's supposed to be done.  Let

10 me hear from the debtor or the Committee as to what their

11 response is to the scheduling.

12         MR. DORSEY (TELEPHONIC): John Dorsey, Your Honor,

13 on behalf of the debtors.  I guess as a threshold matter I

14 wish I had a dollar for every time I've heard in this case a

15 party's position is unique.  Everybody seems to think that,

16 and we don't see this as any different than any of the other

17 creditors in the case, and we do believe that it is

18 procedurally defective by proceeding on motion rather than an

19 adversary proceeding, and given the other issues that the

20 debtor is dealing with, at this time, the scheduling does

21 present a problem just in terms of trying to be able to

22 investigate all of these matters to determine what the

23 debtors' position would be on the government's motion and how

24 to respond, whether there's factual issues that need to be

25 explored, or whether this is strictly a legal matter.  All of

1    that at this point is still under review by the debtors.

2         MS. FATELL (TELEPHONIC): Your Honor, this is Bonnie

3    Fatell for the Committee.  We would have the same concern.

4    Again, everything is on a very, very expedited pace in this

5    case, and we have not had an opportunity to really understand

6    the underlying position, whether in fact they acted

7    appropriately pre-petition and are properly trying to

8    transfer this servicing.  So, it seems to me that there needs

9    to be some analysis here and perhaps discovery to determine

10   exactly what the facts are and, again, raise the legal issues

11   as well.

12        THE COURT: Mr. Dorsey, are you - I apologize, I

13   have a cold, are you aware one way or the other whether the

14   debtor is at least reporting to attempt to sell the servicing

15   rights that the government is seeking to transfer?  If that

16   made sense?  Hello?  Are they still there?  Is anyone there?

17        MR. DORSEY (TELEPHONIC): Sorry, John Dorsey.  I'm

18   sorry, Your Honor, I forgot to un-mute my phone.

19        THE COURT: I'm sure it was a fascinating

20   presentation, but - Let's try it again.

21        MR. DORSEY (TELEPHONIC): Now I've got to try to

22   remember what the question was?

23        THE COURT: Are you trying to sell the government's

24   servicing rights that they want me to assign to Countrywide?

25        MR. DORSEY (TELEPHONIC): I don't know definitively

1    the answer to that question, but I believe the answer is no.

2              THE COURT: The answer is no, okay.  What is unique

3    about the government's situation, Ms. DeFalaise.

4              MS. DeFALAISE (TELEPHONIC): DeFalaise.  Your Honor,

5    again, Mary DeFalaise.  We are unique and I'd like to go

6    through and address some of the things you asked and also if

7    I may to Mr. Dorsey's comment about not selling the Ginnie

8    Mae servicing rights.  Let me first start by saying that that

9    is news to the United States.  Our understanding and our

10   impression from debtors' counsel over the last couple of

11   weeks is that they will be trying to sell our servicing

12   rights.  So I just wanted to clear that up, and that is why

13   we brought the motion.  But the United States is unique in

14   the sense that under the National Housing Act, and

15   specifically an amendment that was enacted in 1980, Ginnie

16   Mae cannot be limited or enjoined in any way from enforcing

17   its contractual rights under its mortgage-backed security

18   program, and which would include cannot be enjoined by the

19   Bankruptcy Code, which gets into why we brought this as a

20   motion.  First, just to say that, you know, our motion,

21   although it's not a motion to say that the stay doesn't

22   applied, it's analogous to a motion for relief from stay, and

23   the United States has been monitoring this case closely.  We

24   were on the, you know, we listened in to the Suisse Credit's

25   hearings that took place last week, and I was there when, you

1    know, I was listening in as Mr. Brady argued that rather than

2    an adversary proceeding TRO that the first step that Suisse

3    Credit should have taken was to file a motion for relief from

4    the automatic stay.  And so, we have brought this motion, and

5    part of, again, the support for why we brought it as a motion

6    and it's stated in our motion is that under the National

7    Housing Act, we are not subject to the Bankruptcy Code to the

8    extent that it would try to limit our contractual rights in

9    any way.  This is also procedurally the way we have done this

10   in prior cases, granted the last case was 15 years ago in

11   1992, but if you'll see in the Commonwealth case that we

12   cited to in our brief, this is how we've done it before via

13   motion.  We are also unique, Your Honor, if I may, and I

14   don't want to get too much into the substance because I

15   understand that Mr. Dorsey may not be aware of all of this,

16   but we are unique in the sense that we do have all of the

17   notes, all of the mortgages.  We do control all of the

18   custodial funds.  We are making payments to the security

19   holders.  American Home Mortgage is not making payments.  So,

20   in other words, it's our position that they're not servicing

21   the Ginnie Mae mortgages, that Ginnie Mae is.  Unfortunately,

22   Ginnie Mae cannot properly service these files because we

23   don't actually have our servicing files.  So, you know,

24   unlike, again, and I go back to Suisse Credit because I heard

25   the testimony, and I heard your questions, Your Honor, as far

1   as, you know, if American Home Mortgage was properly

2   servicing those mortgages, what's the irreparable harm or

3   what's the immediate harm that's going to happen.  You know,

4   in our case it's different because American Home Mortgaging

5   does not appear to be servicing it.  We're making the

6   payments, and we also need to be making escrow payments.

7   We've got taxes.  We've got real estate.  We've got mortgages

8   being paid off, and we can't do any of this because we don't

9   have our servicing files, and we know that American Home

10  Mortgage isn't doing it either because they don't have the

11  funds, and we're getting calls from our mortgagors.  So that

12  is our position as to why we are unique, why we need a

13  hearing date, and why we need to move on this immediately.

14         MR. DORSEY (TELEPHONIC): Your Honor, John Dorsey.

15  In response to the reason why they're not being serviced,

16  from what I understand, the reason we don't have the funds is

17  because Ginnie Mae swept the accounts, including what we

18  believe to be over $3 million worth of the debtors' money,

19  that the government has said would be returned but has not

20  yet been returned.  So there may be counterclaims involved in

21  this as well.  So, it is unusual, like all the other

22  creditors in this case are all unusual, they're all unique,

23  but we can't just - As I said the other day when Impact was

24  asking for its expedited relief, if everybody gets expedited,

25  we're not going to get anything done in this case.

1          MS. DeFALAISE (TELEPHONIC): Your Honor, if I may,

2    and I apologize if I was about to interrupt.

3          THE COURT: No, no, got ahead.

4          MS. DeFALAISE (TELEPHONIC):  I just wanted to

5    clarify the $3 million payment Mr. Dorsey referenced.  We are

6    aware of that.  We actually brought that to the debtors'

7    attention and have been trying to return the money, and we

8    have been waiting for wiring instructions, which we still

9    have not received from the debtors.  We'll be more than

10   happy, we know what funds he's talking about.  It relates to

11   certain mortgages, and we are fully prepared to turn that

12   money over as soon as they send us our wiring instructions.

13         THE COURT: I'm sure Mr. Dorsey would be happy to

14   give you his escrow account.

15         MS. DeFALAISE (TELEPHONIC): I'm sure.

16         MR. HOWARD (TELEPHONIC): Your Honor, this is Mark

17   Howard from the Creditors Committee.  The one other point is,

18   that the debtor is soliciting and negotiating with parties to

19   sell it's biggest asset in this case, by far, the servicing

20   business, and bids are due right on top of this scheduled

21   hearing date, and quite frankly, a lot of the positions taken

22   in the pleadings seem to - may well become moot, depending on

23   what bidders are interested in and where we end up in the

24   sale of the servicing business.  So, when we look at the

25   situation, you know, it seems to me the muddy picture that's

1    currently before all the parties will be very much clearer

2    come, you know, a little while in September, once we figure

3    out where the bidders are and what the desirability of

4    obtaining servicing rights are in connection with this and

5    other warehouse lenders.  So, our view is that the timing,

6    unfortunately, is not advantageous to the case.  It actually

7    harms value, and that if we could push this off, we would

8    have a much better picture after the bidders have stepped up

9    and we have a sense of where we are, then we can see exactly

10   whether really we have a dog in this hunt.  You know, that's

11   where we come out of it.  We think that it could be pushed.

12   We understand that they're anxious to get their rights, and

13   we think it may resolve itself without having judicial

14   intervention just by the nature of what the bidders want to

15   do.

16          MR. DORSEY (TELEPHONIC): Your Honor, John Dorsey, I

17   did confirm with my colleagues since I'm not involved in the

18   sale side of what's going on in this case that they are

19   including the Ginnie Mae servicing in what they are

20   attempting to sell at this point.

21          THE COURT: Mr. Dorsey, what's - they're actually in

22   a situation where it is - They didn't need a motion to

23   shorten, they've gotten the date.  If it was an omnibus date,

24   they could schedule this for that date in any event.   What's

25   your position or what's your offer, if you will, on when the

1    matter should be heard?

2         MR. DORSEY (TELEPHONIC): Well, it goes back, Your

3    Honor, to whether they're proceeding procedurally correctly,

4    and we believe they are not, and this does need to be pursued

5    as an adversary proceeding, which would give the debtor an

6    opportunity to answer and raise any potential counterclaims.

7    It sounds like the government is willing to return the funds

8    that they improperly swept and so that probably will not be

9    an issue, but I, you know, we would need at least some time

10   to do some discovery to find out whether the underlying facts

11   alleged by the government are accurate and investigate the

12   case, and I don't see how we do that in a couple of weeks,

13   especially over a holiday weekend.  You know, maybe 30 days

14   out we could put something together, depending on -

15        MS. FATELL (TELEPHONIC): Your Honor, again for the

16   Committee.  This is Bonnie Fatell.  Again, these things are

17   moving so quickly that it is very difficult -

18        THE COURT: Well -

19        MS. FATELL (TELEPHONIC):  - to understand all of

20   the facts as well as the new legal argument that's just being

21   raised in this motion.

22        THE COURT: I understand that, Ms. -

23        MS. FATELL (TELEPHONIC): But there may be value in

24   this estate that's just going out the door by everybody

25   coming in on the first day or the first few days and

1  demanding that they be able to exercise their rights without

2  the debtor or the Creditors Committee really having adequate

3  time to determine if they have rights, the rights that they

4  claim they do, if they are properly exercising them, and if

5  there's any value that the debtors should be maintaining in

6  any of these assets.

7       THE COURT: Well, you know, look, I'm not overly

8  moved by that argument.  These people have their contractual

9  rights.  Arguably, the Bankruptcy Code stay is inapplicable -

10  well, it sounds like the government is going to take the

11  position the stay isn't applicable in any event, so, I have

12  to balance certain things, and yes, the debtors are entitled

13  to a breathing spell, but parties who believe they have

14  contractual rights are entitled to come into court and ask

15  for relief as well.  So, while I understand and appreciate

16  that the debtor needs an opportunity to get its arms around

17  the case, a lot of the issues arise from the fact that this

18  is a large enterprise and there are a myriad of people and

19  entities involved.  So that's just - that's reality, and I

20  can't alter that reality nor do I think it particularly

21  appropriate to basically punish the creditors for the fact

22  that they dealt with a large enterprise.  So, I was going to

23  get back to Mr. Dorsey's request for 30 days.  I mean, to the

24  extent this is a stay relief motion, I need to hear it in 30

25  days in any event, or they're entitled to relief.

1          MS. DeFALAISE (TELEPHONIC): Your Honor, again, this

2    is Mary DeFalaise on behalf of the United States.  Going to

3    the 30 days, I understand that Mr. Dorsey and the debtors are

4    challenging the United States' rights to bring this

5    procedurally as a motion, and I'm sure that will be addressed

6    in their response.  Our initial response, of course, would be

7    that under federal statute, federal law, the National Housing

8    Act, that the Bankruptcy Code, including the rules, would not

9    be applicable to enjoin Ginnie Mae and that we would not be

10   subject to the 7000 series rules and have to bring this as an

11   adversary proceeding, at which time I'm sure Your Honor will

12   rule on that matter.

13          THE COURT: Okay.

14          MS. DeFALAISE (TELEPHONIC):  And so, we're just

15   asking that our motion be heard and it be heard as soon as

16   possible because again, there is real harm in this case.

17   This is not a situation where the debtor is servicing these

18   mortgages.  We have got mortgagors who have their taxes and

19   their insurance, and they need their deeds, and it's not

20   being done by American Home Mortgage, and the government is

21   willing to do that, and it can be in a position to do that if

22   we can get our servicing files.  And American Home Mortgage

23   is not making any of the payments to the security investors

24   as well.  So, you know, really this needs to be heard sooner

25   rather than later.  If the debtor would like to do that, I'm

1   sure we could accommodate them, but the 7th really, we need to

2   be heard by the Court on this matter as soon as possible.

3        THE COURT: All right, thank you.  I'm going to keep

4   this matter on for the 7th.  I know it puts the debtors under

5   a strain.  I know there are other motions being filed.  I'm

6   sympathetic to that, but - and this is, of course, without

7   prejudice to the debtors' right to argue whatever it would

8   like in opposition to the motion and the government's right

9   to respond accordingly, including whether or not it's

10   procedurally proper and whether or not Congress has exempted

11   the United States from all the procedural requirements of the

12   Bankruptcy Rules.  But I'm going to keep the matter on for

13   the 7th, and responses of the debtor will be due on the 4th, I

14   believe.  But I would like - I am going to bifurcate, in

15   effect.  I'm going to want to deal - at the hearing, I'm

16   going to want to deal preliminarily with the procedural and

17   legal issues and deal with those before we turn the matter

18   over to whether or not we actually get to the meat of the

19   matter and the actual relief requested.  Okay?

20        MR. DORSEY (TELEPHONIC): Okay, Your Honor.

21        MS. DeFALAISE (TELEPHONIC): Thank you, Your Honor.

22        THE COURT: Thank you.  Obviously, to the extent the

23   debtor and the Committee believe they're entitled to

24   discovery, they can proceed on an expedited basis and within

25   reason, as always, but I don't want to hear a response from

1    the government that they don't have time to respond to

2    legitimate discovery, because if that's the response, the

3    government is going to lose its date, and Mr. Dorsey, don't

4    hit them with 20 depositions.

5         MR. DORSEY (TELEPHONIC): I can try to be

6    reasonable, Your Honor.

7         THE COURT: All right.

8         MS. DeFALAISE (TELEPHONIC): Your Honor, if I may,

9    just ask a clarifying question.  Because we're going to

10   bifurcate this and deal with the procedural and legal issues

11   first, will we - I assume then we should hold off on bringing

12   our witnesses, our fact witnesses?

13        THE COURT: Well, I didn't mean you were going to

14   get a separate date on the fact - If you want to do that sort

15   of consensually, that's fine, but I - presuming you're

16   successful on the legal theories at the beginning of the

17   case, we'll then turn to your fact case.  You're set for 11

18   a.m. on Friday the 7th, so, to the extent we can do that, we

19   can do that.  To the extent you want to agree with and work

20   out a sort of second day for - in the next, whatever the

21   appropriate time would be for the actual factual case, that

22   would be fine too.  My only point was -

23        MS. DeFALAISE (TELEPHONIC): Your Honor, we're happy

24   with the 7th -

25        THE COURT: Okay.

1          MS. DeFALAISE (TELEPHONIC):  - to go forward.  I

2     just wanted to make sure for the witnesses.

3          THE COURT: Sure.  Bring your witnesses.  We may not

4     turn to them because I may rule that they're not relevant,

5     but if I rule they're relevant and we're going to get to it,

6     then have them there and we'll do it, if that makes sense.

7          MS. DeFALAISE (TELEPHONIC): It does.  Thank you,

8     Your Honor.

9          THE COURT: Very well.  Anything else for today?

10    Again, thank you very much for being available on extremely

11    short notice, and I apologize for the scheduling snafu and

12    internal mis-communication in chambers.  All right?

13         MR. DORSEY (TELEPHONIC): Thank you, Your Honor.

14         MS. DeFALAISE (TELEPHONIC): Thank you, Your Honor.

15         THE COURT: Thank you, this conference is adjourned.

16         (Whereupon at 4:29 p.m., the hearing in this matter

17    was concluded for this date.)

18         I, Elaine M. Ryan, approved transcriber for the

19    United States Courts, certify that the foregoing is a correct

20    transcript from the electronic sound recording of the

21    proceedings in the above-entitled matter.

22

23    /s/ Elaine M. Ryan                        August 27, 2007
      Elaine M. Ryan
      2801 Faulkland Road
      Wilmington, DE 19808
      (302) 683-0221