IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al., | Case No. 07-11047 (CSS) Jointly Administered |
| Debtors. | Ref. Docket Nos. 16, 68 |

------------------------------------------------------------------X

### LIMITED OBJECTION
### OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
### TO DEBTORS' MOTION FOR ENTRY OF FINAL ORDER AUTHORIZING
### LIMITED USE OF CASH COLLATERAL IN CONNECTION WITH OPERATING
### THE SERVICING BUSINESS AND GRANTING ADEQUATE PROTECTION

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by its undersigned proposed special conflicts counsel, objects to the "Motion Of The Debtors Pursuant To Sections 105(A), 361, 362, 363, 364, And 552(B) Of The Bankruptcy Code And Bankruptcy Rule 4001(B) For Entry Of Interim And Final Orders (A) Authorizing Limited Use Of Cash Collateral In Connection With Operating The Servicing Business; (B) Granting Adequate Protection, And (C) Scheduling A Final Hearing On The Motion" [Docket No. 16] (the "Motion"), and to this Court's entry of a final order approving the Motion (the "Final Order") containing the substantive terms and provisions of the Court's "Interim Order (I) Authorizing Debtors' Limited Use Of Cash Collateral, (II) Granting Replacement Liens And Adequate Protection To Certain Pre-Petition Secured Parties And (III) Scheduling Final Hearing Pursuant To Bankruptcy Rule 4001" [Docket

No. 68] (the "Interim Order")[1]. In support of this Objection, the Committee respectfully represents as follows:

### Factual Background

1. On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") with this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Committee was appointed and selected counsel on August 14, 2007 (undersigned special conflicts counsel was selected on or about August 28, 2007), whose retention has not yet been approved by this Court.

2. As of the Petition Date, certain of the Debtors were parties to a secured credit facility (the "Bank of America Facility") with Bank of America, N.A. as Administrative Agent, pursuant to which certain lenders provided the Debtors who were borrowers thereunder with a $1.25 billion warehouse credit facility, a servicing rights credit facility, a working capital credit facility and a swing line credit facility, secured by liens and security interests in certain assets of the Debtor-borrowers, including without limitation (i) certain residential mortgage loans the origination of which was financed by the Bank of America Facility, (ii) related mortgage-backed securities, (iii) contractual rights under take-out commitments and hedging agreements with respect to such mortgage loans and related mortgage-backed securities, (iv) servicing rights with respect to all mortgage loans serviced by them and (v) servicing receivables due to all mortgage

---

[1] All capitalized terms used but not otherwise defined in this Objection shall have the meanings ascribed to such terms in the Interim Order.

loans serviced by them, and (vi) the proceeds and product thereof (collectively, the "<u>Pre-Petition Collateral</u>").[2]

## Limited Objections

3.    The Motion seeks the entry of a Final Order so that the Debtors can use Cash Collateral to fund the expenses of the Debtors' Servicing Business pending their sale or other disposition of the Servicing Business. The Committee does not object to such a use of Cash Collateral and does not object to the Pre-Petition Secured Parties being granted appropriate and reasonable adequate protection for such use.

4.    The Interim Order, however, contains numerous provisions that are neither reasonable nor 'standard and customary' and would, if continued into the Final Order, improperly benefit the Pre-Petition Secured Parties and prejudice general unsecured and other creditors of the Debtors' estate. These provisions are particularly inappropriate since, the Committee believes that the Bank of America Facility may not be over-secured by the Pre-Petition Collateral as asserted by the Pre-Petition Secured Parties in the Interim Order. The Committee is also concerned that the realizable value of the Servicing Business will not exceed the pre-petition amounts funded with respect to the Servicing Business under the Bank of America Facility. Attached as Exhibit "A" to this Objection is the Committee's proposed mark-up of the Interim Order showing the specific changes requested by the Committee further to this Objection, for the convenience of this Court.

---

[2] The foregoing characterization of the Pre-Petition Collateral is a summary characterization only and is without prejudice to the Committee's rights to investigate and/or challenge the claims, liens and security interests asserted by the Pre-Petition Secured Parties, in whole or in part.

## The Pre-Petition Secured Parties Should Not Be Granted A Pre-Approved Super-Priority Claim

5.  The Interim Order has the effect of granting the Pre-Petition Secured Parties a *sub silentio*, pre-approved, super-priority claim for any diminution in value of the Collateral, even under circumstances such as if additional mortgage lenders commence Chapter 11 cases and the market becomes flooded with 'for-sale' servicing platforms and mortgage loan portfolios which serves to depress the value of the Debtors' similar assets, without requiring them to plead and prove a case under Section 507(b) of the Bankruptcy Code. The Interim Order accomplishes this by (i) at paragraph "E" having the Debtors agree not to contest that the Bank of America Facility was over-secured as of the Petition Date, (ii) at paragraph "19" making the provisions of paragraph "E" binding on all parties which do not timely challenge such specific provisions, and (iii) at paragraph "4" providing an unnecessary definition of "diminution in value". The Committee objects to entry of a Final Order containing these provisions and requests that they be struck in their entirety.

6.  The Committee believes that it is not appropriate for the Debtors' estates to bear 'market risk' of post-petition diminution in value, especially with respect to the Debtors' mortgage loan portfolio which is subject to such market risk in this time of great uncertainty in the financial markets, when an adverse market event could subject the Debtors' estates to hundreds of millions of dollars of super-priority Section 507(b) claims that would make confirmation of even a liquidating plan difficult if not impossible. The Committee submits that if the Administrative Agent and the Pre-Petition Secured Parties wish to obtain the benefit of liquidating their mortgage loan collateral in this Court and gain the benefit of the provisions of the Bankruptcy Code in such liquidation, they should agree not to assert super-priority or other administrative priority claims against the unencumbered assets of the Debtors' estates for

diminution in value to the extent that their Collateral proves insufficient to pay the Indebtedness in full. The Committee objects to the entry of a Final Order that does not contain this agreement.

7. If this Court nevertheless enters a Final Order which preserves (whether explicitly or implicitly) the Pre-Petition Secured Parties' rights to assert claims under Section 507(b), the Committee objects to the provisions of the Interim Order identified in paragraph "5" of this Limited Objection because these provisions together alter the substantive requirements of Section 507(b) of the Bankruptcy Code and the pleading and evidentiary burdens which would otherwise require the Pre-Petition Secured Parties to prove the value of the Pre-Petition Collateral as of the Petition Date and prove the actual future failure of the adequate protection granted to them for which the grant of a super-priority claim is appropriate. If the actual liquidation of the Collateral results in the Pre-Petition Secured Parties having a deficiency claim, they should be required to comply with the provisions of the Bankruptcy Code and Bankruptcy Rules to plead and prove an entitlement to a super-priority claim under Section 507(b) without being given a leg up in the process by the entry of a Final Order containing these provisions.

8. While the Interim Order does not encumber the estates' avoidance actions, the Final Order should specifically provide that any super-priority claim resulting from the grant of adequate protection to the Pre-Petition Secured Parties shall not be paid from the estates' recoveries from the avoidance actions. Bankruptcy Code avoidance actions generally belong to and are intended to benefit unsecured creditors. No exigent circumstances have been articulated by the Debtors sufficient to justify giving the Pre-Petition Secured Parties a superior right to what may be a significant source of recovery for unsecured creditors, especially if the Final Order preserves the Pre-Petition Secured Parties' rights under Section 507(b).

## The Rights Of Post-Petition Creditors Should Not Be Improperly Prejudiced By The Final Order

9. The Interim Order provides, at paragraph "5", that the Administrative Agent must be paid the gross proceeds of any disposition of the Collateral. The Interim Order provides, at paragraph "8", that "no party shall seek to enforce, directly or indirectly, an administrative or priority claim in respect of an asset which constitutes Pre-Petition Collateral or the Collateral unless all of the Indebtedness has been indefeasibly paid in full in cash." The Interim Order provides, at paragraph "13", that the Pre-Petition Secured Parties will seek to prohibit all parties from asserting 'surcharge' rights under Section 506(c) of the Bankruptcy Code against the Collateral. The Committee objects to entry of a Final Order containing these provisions and requests that they be struck in their entirety.

10. Together, these provisions serve to strip unpaid administrative creditors, even those whose claims arise in the ordinary course of business or those whose claims arise directly from the disposition of the Collateral, of any right even to seek payment in the event that they go unpaid by the Debtors. The Committee notes that a surcharge waiver is particularly inappropriate where (i) the Pre-Petition Secured Creditors may be under-secured and are using the Chapter 11 process to liquidate their Collateral but are seeking to limit the burdens of doing so at the expense of unsecured creditors. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 12 (2001) (debtor-in-possession has a fiduciary obligation to assert Section 506(c) claims where circumstances dictate), and (ii) the Pre-Petition Secured Parties' rights under Section 507(b) are preserved and may well in effect divert from the Debtors' estates the avoidance action recoveries which would otherwise be available to other creditors.

11. The Interim Order does not contain any 'carve-out' whether for the benefit of the estates' professionals or for the payment of statutory fees due to the U.S. Trustee, and prohibits

the use of Cash Collateral for the payment of fees and expenses under Sections 328, 330 and 331 of the Bankruptcy Code. The Committee objects to the entry of a Final Order that does not contain an appropriate carve-out for these purposes, which carve-out should permit the Committee to use carve-out funds to investigate the pre-petition claims, liens, acts and conduct of the Pre-Petition Secured Parties. The lack of a carve-out is particularly inappropriate where the Pre-Petition Secured Creditors seek to preserve Section 507(b) claims and use avoidance recoveries for the payment of such claims.

**Other Provisions Of The Interim Order
That Should Not Be Included In the Final Order**

12. Paragraph "1" of the Interim Order authorizes the Debtors to use Cash Collateral other than as provided for in the Budget without further approval of this Court, if the Administrative Agent consents to such Non-Conforming Use. The Final Order should provide for the Committee to receive prior notice of any proposed Non-Conforming Use so that the Committee has an adequate opportunity to object if it deems that such Non-Conforming Use is not in the best interests of the Debtors' estates.

13. Paragraphs "1" and "11" of the Interim Order provide that the Debtors' use of Cash Collateral in accordance with the Budget is authorized beginning on the Petition Date and ending on the Termination Date. The Final Order should contain provisions making clear that if any post-petition expense was properly incurred pursuant to the Budget prior to the Termination Date it may be paid from Cash Collateral even after the Termination Date. Otherwise, the estates will be unfairly subject to valid expenses incurred for the benefit of the Pre-Petition Secured Parties that cannot be paid merely due to timing issues.

14. Paragraph "6" of the Interim Order provides that if the payment of any fees and expenses of the Pre-Petition Secured Lenders are timely disputed pursuant to the mechanism set forth therein, these Disputed Invoiced Fees must nevertheless be paid by the Debtors. This provision is objectionable. The Debtors and/or the Committee should not be required to seek disgorgement of Disputed Invoiced Fees; rather, the Debtors should not be required to pay Disputed Invoiced Fees until the specific disputes have either been resolved by the parties or determined by order of this Court.

15. Paragraph "11(c)" of the Interim Order allows the Pre-Petition Secured Parties to terminate the Debtors' use of Cash Collateral if this Court grants relief from the automatic stay to any other person with respect to the Collateral. The Final Order should limit this Termination Event to such relief being granted with respect to a material portion of the Collateral.

16. Paragraph "11" of the Interim Order also provides that on the second business day after the occurrence of Termination Events "(g)" (failure of the Debtors to deliver required documents and information to the Administrative Agent or such documents and information containing a material misrepresentation) or "(h)" (failure by the Debtors to perform any material term of the Interim Order), the Pre-Petition Secured Parties are free to apply all Cash Collateral against the Indebtedness and the Debtors' authorized use of Cash Collateral must cease on the second business day after notice is given by the Administrative Agent. The Final Order should provide for a more reasonable five business day period before the Debtors' authorized use of Cash Collateral ceases, and should provide that the Committee's rights are reserved during such period to seek to enjoin the Pre-Petition Secured Parties from so terminating the authorized use of Cash Collateral and exercising such rights and remedies, on the grounds of the non-occurrence or timely cure of such alleged Termination Events.

17. Paragraph "20" of the Interim Order gives the Committee only 75 days from its appointment to challenge the pre-petition claims, liens, acts and conduct of the Pre-Petition Secured Parties. Given the complexity of the Debtors' Chapter 11 cases and the many events demanding the Committee's attention at this early stage of the proceedings, the Final Order should enlarge this period of time to 120 days so that the Committee has sufficient time to discharge its fiduciary duties in this respect.

18. Paragraph "20" also makes the Debtors' admissions and releases with respect to the Pre-Petition Secured Parties binding and preclusive upon the Committee and all persons other than the Debtors "for all purposes ... except to the extent that such admissions and releases were expressly challenged" in a timely-commenced adversary proceeding or contested matter. This provision is unduly burdensome on the Committee and may require the Committee to commence costly and unnecessary litigation against the Pre-Petition Secured Lenders to challenge the Debtors' factual admissions that may be implicated in adversary proceedings or contested matters not yet contemplated or ripe with respect to any matter before this Court, even if the Committee would not otherwise commence litigation against the Pre-Petition Secured Parties based upon their pre-petition claims, liens, acts or conduct. This provision should be struck from any Final Order, and replaced with a provision which makes clear that nothing in the Final Order shall limit this Court's ability to fashion an appropriate remedy should this Court determine a challenge adverse to the Pre-Petition Secured Parties.

19. Paragraph "20" also provides that nothing in the Interim Order grants standing to the Committee to commence litigation challenging the Pre-Petition Secured Lenders. This provision is objectionable as requiring the Committee to commence costly and unnecessary litigation to obtain standing from this Court when such standing is usually and customarily given

to the Committee. This provision should be struck from any Final Order, and replaced with a provision which specifically grants such standing to the Committee.

20.  The Final Order should contain a provision stating that all notices, invoices, reports or financial information given by or to the Debtors pursuant to the Final Order shall also be provided to the Committee's counsel.

WHEREFORE, the Committee respectfully requests that this Court deny the Debtors' motion for limited use of cash collateral, and grant such other and further relief as is just and proper.

Dated: August 29, 2007

COZEN O'CONNOR

Mark E. Felger (No. 3919)
Jeffrey R. Waxman (No. 4159)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

*Proposed Special Conflicts Counsel to the Committee*

- 10 -