### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., Delaware corporation, et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | **Re: Dkt. No. 219** |

### OBJECTION BY THE CREDITORS' COMMITTEE TO DEBTOR'S PROPOSED RETENTION OF THE FIRM KEKST & CO. AS THEIR PUBLIC RELATIONS ADVISORS

**TO:  THE HONORABLE CHRISTOPHER S. SONTCHI,
       UNITED STATES BANKRUPTCY JUDGE:**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by its undersigned proposed counsel, hereby objects to the Debtors' application (the "Application") for authorization to retain Kekst and Company ("Kekst") as their corporate communications/public relations advisor, and respectfully states as follows:

### Summary of Objection

1.  By the Debtors' own admission, these chapter 11 cases are liquidating cases.[2] The Debtors are seeking to sell on an expedited basis their operating mortgage servicing business and substantially all of their other assets within the first few months of the filing. Thus, the overarching goal in these cases should be maximizing the values obtained for the Debtors' assets

---

[1] The Debtors are the following entities: American Home Mortgage Holdings, Inc., a Delaware corporation; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

[2] See Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief, sworn to on August 6, 2007 at ¶34 (The Debtors are reducing "employee headcount", completing "wind-up tasks", closing "retail branches", and selling their "remaining assets".)

877285.001 - 1329151.2

while minimizing the winddown expenses being incurred. The Committee is concerned that the Debtors have lost sight of this goal by seeking to retain in these liquidating cases a public relations firm with no limitation in scope, cost or duration of services. The Debtors can no longer operate business as usual. The landscape has changed and the Debtors need to exercise greater diligence in avoiding unnecessary expenses during the winddown process. The Committee submits that it is simply a waste of the estate's limited resources for the Debtors to hire a public relations firm given their current liquidating state. It is neither necessary nor reasonable. Under the circumstances, the Application should be denied.

### Factual Background

2. On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 Title 11, United States Code (the "Bankruptcy Code") with this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Committee was appointed and selected its undersigned counsel on August 14, 2007, whose retention has not yet been approved by this Court.

3. On August 17, 2007, the Debtors filed an Application for an Order authorizing the retention of Kekst as corporate communications advisor nunc pro tunc to the Petition Date. The Debtors propose to compensate Kekst for its professional services on an hourly basis ranging from as high as $875 for senior partners, $425 to $600 for partners, $375 to $425 for senior associates and $200 to $325 for associates and analysts. The Debtors apparently paid Kekst prepetition a $50,000 "non-refundable" retainer. The Application does not indicate that there will be any limit or cap on the amount of fees that Kekst may incur during their

engagement. There also does not appear to be any limit on the duration of Kekst's engagement. Kekst does not appear to be performing any services which will assist in maximizing the values obtained for the Debtors' assets or minimizing estate expenses. Instead, the primary purpose of Kekst's retention appears to be to assist management in putting its best face forward with the media and its stockholders concerning the failure of the company.

4. The scope of services that Kekst is envisioned to provide is enlightening in that it is couched in terms of advising management of an on-going operating business intent on reorganizing, not overseeing the liquidation process of a chapter 11 debtor. For example, according to the Application, Kekst intends to:

"Provide general strategic public relations advice related to the reorganization to the Debtors' management;

"Provide monitoring services related to the media's coverage of the Debtors' reorganization and professionals evaluation of its importance, quality and tone;

"Prepare and/or edit materials to anticipate concerns of and likely questions from various constituencies affected by the reorganization and development of appropriate information for the Debtors to use in response; and

"Attend court hearings and develop information about such hearings for the benefit of internal and external constituencies."

Application at ¶23 (emphasis added).

5. While a debtor's retention of a PR firm may be an appropriate use of estate resources in a case involving a complex corporate reorganization, the Committee submits that such a retention is not appropriate nor necessary in a case such as this one where the Debtors are seeking to liquidate substantially all of their assets in a very short period of time.

6. To the extent the Debtors desire to communicate information to creditors and other parties in interest concerning the bankruptcy, the Debtors can post such information on

its website, https://www.americanhm.com, which it already appears to be doing. In addition, creditors can access such information on the website of the Debtors' claims agent and the Committee intends to create its own website in the near future in order to provide information directly to its constituency. Under the circumstances, the Debtors' separate retention of Kekst to assist in communications to creditors and other parties-in-interest appears to be an unnecessary and unreasonable use of estate funds.

**WHEREFORE**, the Committee respectfully requests that the Court deny the Debtors' Application to retain Kekst, and for such other and further relief as the Court may deem just and proper.

Dated:   Wilmington, DE
         August 30, 2007

BLANK ROME LLP

By: /s/ Bonnie Fatell
Bonnie Glantz Fatell (No. 3809)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
(302) 425-6400 - Telephone
(302) 425-6464 - Facsimile

- and -

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
(212) 478-7200 - Telephone
(212) 478-7400 - Facsimile
Attn:  Mark S. Indelicato
       Mark T. Power

Proposed Co-Counsel to the Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc., *et al.*