IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x  Chapter 11
In re:                                                           :
                                                                 :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                           :
HOLDINGS, INC., a Delaware corporation, et al.,[1]               :  Jointly Administered
                                                                 :
                          Debtors.                               :  Hearing Date: Sept. 17, 2007 at 12:00 p.m.
                                                                 :  Objection Deadline: Sept. 10, 2007 at 4:00 p.m.
---------------------------------------------------------------- x

## SECOND MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105, 365 AND 554 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6006 AND 6007, AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND TO ABANDON CERTAIN FURNITURE, FIXTURES, AND EQUIPMENT

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby move the Court (the "Motion"), pursuant to sections 105(a), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing the Debtors to: (1) reject certain unexpired nonresidential real property leases identified on Exhibit A (collectively, the "Office Leases"); (2) reject all of the Debtors' unexpired equipment leases, other than those equipment leases relating to the property at locations specifically

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

identified on Exhibit B[2] (collectively, the "Rejected Equipment Leases"); and (3) abandon any property remaining at the premises subject to the Office Leases including, but not limited to, furniture, fixtures and equipment (collectively, the "FF&E").[3] In support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF CASE AND JURISDICTION

1. On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007. No trustee or examiner has been appointed.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 365(a) and 554(a) of the Bankruptcy Code, along with Bankruptcy Rules 6006, 6007, and 9014.

## BACKGROUND OF DEBTORS

4. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and

---

[2] The properties identified on Exhibit B may contain equipment subject to leases that the Debtors are not rejecting pursuant to this Motion. The Debtors reserve all rights with respect to any leases relating to equipment and property located at the premises identified on Exhibit B.

[3] The Debtors submit that they have been and will continue to take steps to collect and preserve any information located in the Office Leases consistent with SEC guidelines and applicable consumer privacy laws.

2

sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

5. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

6. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

7. Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

8.  The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

9.  In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

10.  On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

11.  The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors now employ approximately 700 persons who are absolutely essential to the Debtors' continued operations, although that number is expected to

decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

12.     In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions. Additionally, the Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

13.     Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELIEF REQUESTED

14.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to sections 105(a), 365(a), and 554(a) of the Bankruptcy Code, authorizing (i) the rejection of: (1) the Office Leases, and (2) the Rejected Equipment Leases (together with the Office Leases, the "Rejected Leases") and (ii) authorizing the abandonment of the FF&E remaining at the Office Leases. Further, the Debtors request that rejection of the Rejected Leases be effective as of August 31, 2007.

## BASIS FOR RELIEF REQUESTED

### A.    Rejection of the Rejected Leases

15.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see also University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d

5

1065, 1075 (3d Cir. 1992). The Court may approve a debtor's rejection of an executory contract or unexpired lease if such rejection is made in the exercise of such debtor's sound business judgment, and if such rejection benefits its estate. See e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); NLRB v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); In re Patterson, 119 B.R. 59 (E.D. Pa. 1990). See, also, In re Federated Dep't. Stores, Inc., 131 B.R. 808, 811 (S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in determining whether to authorize the rejection of executory contracts and unexpired leases"); Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("[u]nder the business judgment test, . . . [a court should approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will benefit the estate"). It is enough if a debtor determines in its business judgment that a benefit will be realized. Sharon Steel Corp., 872 F.2d at 39 (citing Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)). The business judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith, whim or caprice. Lubrizol Enter., Inc. v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

      16.    As an integral component of the Debtors' efforts to maximize value for their estates and creditors by, among other things, eliminating unnecessary operating costs, the Debtors have determined, in the exercise of their business judgment, that it is in the best interest of their estates and creditors to avoid the accrual of any further obligations under the Rejected Leases. The real and personal property subject to the Rejected Leases largely relate to the Debtors' loan origination platform, which the Debtors are no longer operating. The Debtors

have been in contact with entities in the loan origination industry to determine potential interest in assignment of the Rejected Leases; however, no such assignments with respect to these Rejected Leases are forthcoming. The substantial economic burden associated with maintaining these properties, the Debtors' cessation of its operations in these locations, and the lack of interest for potential assignment provide sufficient bases for the Debtors' decision to reject the leases.

17. Moreover, the Debtors have reviewed the Rejected Leases and determined that they hold no material economic value to the Debtors or their estates and are not essential to the conduct of the Debtors' bankruptcy cases. The rejection of the Rejected Leases will eliminate the Debtors' obligation to perform, and the accrual of any further administrative expense obligations thereunder, under the Rejected Leases.[4] Accordingly, the Debtor submits that the rejection of the Rejected Leases is within their sound business judgment and is in the best interest of the Debtors, their estates, creditors and other parties-in-interest.

B. **Retroactive Rejection**

18. The Debtors request that this Court approve the rejection of the Rejected Leases effective as of August 31, 2007. Bankruptcy courts are empowered to grant retroactive rejection of executory contracts and unexpired leases under sections 105(a) and 365(a) of the Bankruptcy Code. See e.g., Thinking Machines Corp. v. Mellon Fin. Serv. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995) (recognizing that bankruptcy courts are courts of equity that may enter orders authorizing retroactive rejection); In re Amber's Stores, Inc., 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (same).

---

[4] The Debtors do not concede that any of the Rejected Leases are, in fact, unexpired. The Debtors also reserve their rights to argue that any claim for damages arising from the rejection of the Rejected Leases is limited to the remedies available under any applicable termination provision of such Rejected Lease, or that any such claim is an obligation of a third party, and not that of the Debtors.

19.   This Court has previously considered the question of retroactive rejection of unexpired leases. See, e.g., In re Namco Cybertainment, Inc., Case No. 98-173 (Bankr. D. Del. 1998) (Walsh, J.). In In re Namco Cybertainment, this Court permitted retroactive rejection on the condition that (a) the premises (and the keys thereto) were surrendered with an unequivocal statement of abandonment to the landlord; (b) the motion was filed and served on the landlord; and (c) the official committee has consented to the relief requested in the motion; and (d) the debtor acknowledged that it would not have the right to withdraw the motion.

20.   The Debtors will have effectively satisfied the criteria for retroactive rejection of the Rejection Leases by or before August 31, 2007. On August 30, 2007, the Debtors sent letters (the "Rejection Letters") via overnight courier to each of the counterparties to the Rejected Leases unequivocally surrendering the property and making available the equipment subject to each Rejected Lease. The filing and service of this Motion further informs each of the counterparties to the Rejected Leases that the Debtors are unequivocally surrendering the property subject to the Office Leases and making available the equipment subject to the Rejected Equipment Leases as of August 31, 2007. To the extent that any keys were in the possession of the Debtors, such keys have previously been surrendered or are being enclosed with the Rejection Letters to the respective landlords of the Office Leases. Second, the Debtors will serve this Motion upon all affected counterparties to the Rejected Leases. Third, the Debtors have provided notice of its intentions with respect to the relief requested herein to the Committee, and the Committee has consented to the relief requested herein. Finally, the Debtors hereby acknowledge that they will not have the right to withdraw the Motion.

C.     **<u>Abandonment of Certain FF&E</u>**

21.    In the event that there is any remaining FF&E left at the premises subject to the Office Leases after August 31, 2007, the Debtors request authority to abandon such FF&E. Section 554 of the Bankruptcy Code provides that: "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554. See <u>In re New Century TRS Holdings</u>, Case No. 07-10416 (Bankr. D. Del. April 24, 2007) (Carey, J.).

22.    The Debtors propose to abandon the FF&E at the premises subject to the Office Leases because it would be more cost-effective to do so than to transport, store, and sell the FF&E, which has little value. As a result, the decision to reject the Office Leases and abandon the FF&E located in the Office Leases is supported by the Debtors' sound business judgment and is in the best interests of their estates, creditors, and other parties-in-interest. For the reasons set forth above, the Debtors seek authorization, pursuant to sections 105(a), 365(a), and 554(a) of the Bankruptcy Code, to reject the Rejected Leases and abandon any FF&E remaining at the premises of such Office Leases as of the August 31, 2007.

9

DB02:6204537.5                                                                                              066585.1001

## NOTICE

23. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the counterparties to the Rejected Leases; (v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto authorizing: (i) the rejection of the Rejected Leases as of August 31, 2007; and (ii) authorizing the abandonment of the FF&E; and (iii) granting such other and further relief as this Court deems just and proper.

Dated:   Wilmington, Delaware
         August 30, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____ (4652)
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for Debtors and
Debtors in Possession

DB02:6204537.5                                                              066585.1001