UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation *et al.,* [1] | |
| Debtors. | Case Number 07-11047 (CSS) (Jointly Administered) |

Hearing Date:  September 4, 2007 at 11:00 A.M.

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE APPLICATION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) APPROVING THE RETENTION AND EMPLOYMENT OF CADWALADER, WICKERSHAM & TAFT LLP AS SPECIAL COUNSEL TO THE DEBTORS (DOCKET ENTRY # 133)**

In support of her objection to the application of the Debtors and Debtors in possession for an order pursuant to section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014(a) approving the retention and employment of Cadwalader Wickersham & Taft LLP ("CWT") as special counsel to the Debtors (the "Application"), Kelly Beaudin Stapleton, United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, avers:

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: AHM Holdings, Inc. (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

**INTRODUCTION**

1.	Under (i) 28 U.S.C. § 1334, (ii) (an) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Application and this objection.

2.	Under 28 U.S.C. § 586(a)(3)(I), the UST is charged with monitoring applications filed under 11 U.S.C. § 327 "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." This duty is part of the U.S. Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3.	Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Application and the issues raised in this objection.

**GROUNDS/BASES FOR RELIEF**

*Background*

4.	On August 6, 2007 (the "Petition Date"), the Debtors filed the petition which initiated the above-captioned cases.

5.	The Debtors seek to employ CWT as special counsel pursuant to 11 U.S.C. § 327(e) ("Section 327(e)") to provide services in the following areas:

> (a.)	general corporate matters and corporate governance issues;
>
> (b.)	asset dispositions, including through the potential merger of Debtor entities with other entities;

      (c.)    tax, regulatory and securities law matters; and

      (d.)    certain litigation matters, including [certain securities class action lawsuits detailed in paragraph 20(f) of the Application and an inquiry conducted by the Securities and Exchange Commission].

Appl. ¶ 25.

6.     In paragraph 9 of the affidavit of Gregory M. Petrick (a member of CWT) submitted in support of the Application (the "Petrick Affidavit"), CWT disclosed the following information:

> CWT represented the following Current Clients in mortgage purchase and sales, financing and other transactions with the Debtors: Credit Suisse Securities (USA) LLC, JP Morgan Securities Inc., Merrill Lynch Global Markets, UBS Securities LLC, Natixis Capital Markets Inc., Morgan Stanley Co., Inc., Barclays Capital Inc., Goldman Sachs & Co., and Citigroup Global Markets, Inc. The transactions are detailed on Exhibit 2 annexed [to the Petrick Affidavit]. In each instance the Debtors waived any conflict in connection with, and consented to CWT's representation of the parties herein in matter related to the Debtors.

7.     In paragraph 10 of the Petrick Affidavit, Petrick stated:

> To the best of my knowledge and information, the annual fees paid to CWT by any of the Current Clients (and their respective affiliates) for any of the last three (3) years did not exceed 1% (one percent) of CWT's annual gross revenue for such year, with the exception of the following entities and their affiliates: (a) Bank of America, (b) Goldman Sachs & Co., (c) JP Morgan Chase & Co., (d) Merrill Lynch & Co., Inc., (e) Credit Suisse, (f) Morgan Stanley & Co. and (g) Barclays Bank.

*Overview – 11 U.S.C. § 327(e)*

  8. Section 327(e) states that a chapter 11 debtor in possession[2] may employ,

> with the court's approval, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, <u>if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed</u>. 11 U.S.C. § 327(e) (emphasis added).

  9. The statutory language establishes that the following six criteria must be present before an attorney may be employed by a debtor-in-possession pursuant to Section 327(e):

   (1) the court must approve the employment;

   (2) the employment must be for a "specified special purpose;"

   (3) the "specified special purpose" cannot constitute the representation of the debtor in possession in conducting the case;

   (4) the attorney to be employed must have previously represented the debtor;

   (5) the employment must be in the best interest of the estate; and

   (6) the attorney must not represent or hold any interest adverse to the debtor or the estate with respect to the matter on which the attorney is to be employed.

  10. The Supreme Court has repeatedly stressed that the plain language of the Bankruptcy Code must be applied as written, even if the result is harsh. <u>See, e.g.</u>, <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen

---

[2] Although Section 327(e) refers to the "trustee," pursuant to 11 U.S.C. § 1107 most of the rights, powers, and duties of a trustee in a chapter 11 case are conferred upon the debtor in possession. This includes the trustee's power to employ professional persons under 11 U.S.C. § 327. <u>See</u> <u>United States Trustee v. Price Waterhouse</u>, 19 F.3d 138, 141 (3d Cir. 1994); <u>see also</u> Fed. R. Bankr. P. 9001(10) ("'Trustee' includes a debtor in possession in a Chapter 11 case.").

words even if we believe the words lead to a harsh outcome is longstanding."); Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) ("when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms") (internal quotation marks omitted).  In addition, the Third Circuit has strictly applied statutory limitations on employment under 11 U.S.C. § 327.  See United States Trustee v. Price Waterhouse, 19 F.3d 138, 141-42 (3d Cir. 1994).  Indeed, this Court has previously held that the "clear and unequivocal" language of Section 327(e) must be strictly applied.  See MeesPierson Inc. v. Strategic Telecom Inc., 202 B.R. 845, 850 (D. Del. 1996) (reversing bankruptcy court's authorization of employment as special counsel of attorney disqualified under 11 U.S.C. § 327(a) where attorney had not previously represented debtor).

11. In light of this precedent, Section 327(e) cannot be interpreted such that some clauses are read strictly and others are read loosely.  It is not sufficient under Section 327(e) to simply specify in counsel's employment application the services to be rendered; if any of the proposed services constitute the representation of the Debtor in conducting the case, employment under Section 327(e) is prohibited as a matter of law.  See In re Neuman, 138 B.R. 683, 686 (S.D.N.Y. 1992) ("[I]t is clear both from the language of § 327(e) and from the framework of § 327 more generally that, even if there is a special purpose, it is crucial that the appointment not be part of the trustee's general duty of conducting the case.").

*The Debtors Propose to Employ CWT for Multiple, General Purposes, Including the Representation of the Debtors in Conducting the Cases*

12. The Debtors propose to employ CWT for multiple, general purposes – basically, all matters that do not involve (i) an issue arising directly under the Bankruptcy Code or (ii) the various lenders which CWT represented in pre-petition matters relating to the Debtors.  Accordingly,

the Application runs afoul of Section 327(e) on two counts: first, the proposed scope of employment is not limited to a "specified, special purpose" as required by Section 327(e); and second, in contravention of Section 327(e), the proposed scope of employment involves representing the Debtors in conducting the cases.

13. The Debtors' proposed employment of CWT is not limited to a "specified, special purpose." Congress' use of the singular – a "specified, special purpose," as opposed to numerous purposes – indicates that the use of Section 327(e) "may be limited to cases involving a single lawsuit or a discrete and specialized advisory role (i.e. tax, securities, antitrust, etc.)." See In re First Am. Health Care of Ga., Inc., 1996 WL 33404562 at *3 (Bankr. S.D. Ga., Apr. 18, 1996). For example, the United States Bankruptcy Court for the Eastern District of California recently rejected the proposed employment of special counsel for "real estate and business transaction matters" as being "nothing 'specific' or 'special.'" See In re Running Horse, L.L.C., No. 07-11185-B-11, 2007 WL 2021816 (Bankr. E.D. Cal. July 10, 2007). Through the Application, the Debtors seek to employ CWT to provide services in at least six broad, distinct areas (corporate, asset sales, tax, regulatory, securities, and litigation); the Debtors ignore Congress' use of the singular word "purpose" in Section 327(e) and impermissibly seeks to employ CWT as general counsel.

14. The legislative history supports the strict interpretation of Section 327(e)'s prohibition regarding "conducting the case":

> [Section 327(e)] does not authorize the employment of the debtor's attorney to represent the estate generally or represent the trustee in the conduct of the bankruptcy case. The subsection will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 328 (1977), reprinted at 1978 U.S.C.C.A.N. 5824-25. In addition, the "special purpose" for which an attorney may be employed under Section 327(e) must be unrelated to the reorganization of the debtor. See Century Indemnity Co. v. Congoleum Corp. (In re Congoleum Corp.), 426 F.3d 675, 689 (3d Cir. 2005); 3 Lawrence P. King, Collier on Bankruptcy ¶ 327.04[9][d] at 327-63 (15th ed. rev'd 2007).[3]

15. Section 327(e) prohibits the Debtors from employing special counsel to provide services relating to asset sales. In In re Tidewater Memorial Hospital, Inc., 110 B.R. 221, 223 (Bankr. E.D. Va. 1989), the debtor sought to employ an attorney disqualified under Section 327(a) as special counsel under Section 327(e) to represent the debtor in soliciting and negotiating proposals for the sale of the debtor's hospital. The court rejected the application on grounds that (1) the attorney was disqualified under 11 U.S.C. § 327(a) ("Section 327(a)") and (2) the services for which he was to be employed were so related to the debtor's reorganization as to be "tantamount to representing the debtor in the conduct of the case." Id. at 228. The court held that "counsel who cannot meet the disinterestedness standard of § 327(a) should not be able to bypass this requirement through employment as special counsel." Id.

16. Section 327(e) also prohibits the Debtors from employing special counsel to provide services relating to key aspects of their cases. In In re Argus Group 1700, Inc., 199 B.R. 525 (Bankr. E.D. Pa. 1996), a case within the Third Circuit, the debtor sought to employ an attorney disqualified under Section 327(a) to serve as special counsel under Section 327(e) to pursue a

---

[3] Prior to the Third Circuit's ruling in Congoleum, the United States District Court for the District of Delaware ruled that special counsel may be employed under Section 327(e) to provide services with respect to asset sales, use of cash collateral, and implementation of a key employee retention program. See Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.), 323 B.R. 403, 405 (D. Del. 2005). The Woodworkers Warehouse decision incorrectly construes the "conducting the case" limitation in Section 327(e) and should not be followed by this Court.

specific piece of litigation termed by the court "the sine qua non of the bankruptcy case." Id. at 527. The court stated that, while "at first blush" the proposed services appeared to be for a sufficiently limited purpose, in actuality the litigation in question "is the bankruptcy case." Id. at 530 (emphasis added). The court held that "the more rigorous standards" of Section 327(a) should be applied to counsel rendering services on which the success of the entire case turned. Id. at 531. Thus, the court denied employment under Section 327(e), stating that "[g]iven that the role of litigation is preeminent . . . , litigation counsel, not bankruptcy counsel, is the primary legal adviser," leaving "a very limited role for bankruptcy counsel." Id.

17. Similarly, in In re First American Health Care of Georgia, Inc., 1996 WL 33404562 (Bankr. S.D. Ga. April 18, 1996), the debtor sought to employ an attorney disqualified under Section 327(a) to serve as special counsel to render specialized services related to Medicare litigation. Id. at *2. The court stated that "when analyzing the prospective employment of counsel pursuant to Section 327(e), the bankruptcy court should consider not only the 'special' purpose specified in the application, but all relevant facts surrounding the debtor's bankruptcy[.]" Id. at *3. The court further stressed that the exception to Section 327(a) created by Section 327(e) "must be narrowly construed to avoid evisceration of the general rule." Id. at *4. The court held that the Medicare litigation "will strike at the very heart of or be central to the Debtors' conduct of this Chapter 11 case," since "the outcome . . . will dictate the manner in which Debtors' bankruptcy counsel can conduct the case and determine in large measure the success of this Chapter 11 case." Id. at *6. The court denied the employment under Section 327(e), as to do otherwise "would potentially grant the firm a position of influence and control which should only be reserved for general counsel." Id.

18. In sum, the Debtors' request to authorize CWT to provide services relating to asset sales clearly runs afoul of Section 327(e)'s prohibition against assisting the trustee in "conducting the case." Further, it is presently unclear whether CWT's proposed scope of employment encompasses other matters that constitute assisting the trustee in "conducting the case." The burden is on the Debtors to demonstrate that CWT's proposed scope of employment does not violate Section 327(e)'s limits.

*CWT Holds or Represents an Interest Adverse to the Debtors' Estates and/or Is Not a Disinterested Person*

19. The purpose and subject matter restrictions found in Section 327(e) are significant in these cases because CWT has conflicts of interest which preclude the firm's employment under Section 327(a). Section 327(a) states:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

20. Courts have defined the "interest adverse" language in 11 U.S.C. § 327 in the following terms:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.), 432 F.3d 347, 356 (5th Cir. 2005) (citations omitted); In re eToys, Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005).

21. The term "disinterested person" is defined in part as a person who

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

22. Putting aside the issue of what (if any) significant causes of action the Debtors have against third parties, at this juncture these cases have two key components: asset sales and claims resolution vis-a-vis financial institutions. The first component – asset sales – is self-explanatory. Given that the Debtors have shut down their origination business, they should be seeking to maximize the value of their remaining tangible assets, including their servicing unit, through sales. The claims resolution component involves the Debtors' efforts to address issues relating to their warehouse lenders and "whole loan" purchasers. Exhibit 2 to the Petrick Affidavit lists a host of warehouse financing and asserted repurchase transactions in which CWT represented the counterparties to the Debtors. With regard to the claims resolution component, documents drafted by CWT for its client-counterparties in the several transactions identified on the Exhibit either already are or likely will be the subject of litigation between the Debtors and those counterparties. For example (and without limitation), the Debtors and CWT's client-counterparties to the asserted repurchase transactions will dispute whether the client-counterparties are entitled to the protections of 11 U.S.C. § 559, raising the issue of whether the subject agreements are properly characterized as "repurchase agreements" under 11 U.S.C. § 101(47). By extension, CWT's client-counterparties involved in asserted repurchase transactions clearly hold an economic interest in having their agreements characterized as "repurchase agreement[s]" under the Bankruptcy Code. Accordingly, CWT's client-counterparties hold an "interest adverse" to the Debtors' estates, and CWT's present representation of those counterparties precludes the firm's employment under Section 327(a).

23. The Debtors have already admitted that CWT has conflicts of interest which preclude the firm's employment under Section 327(a). At the August 16 hearing on Credit Suisse First Boston Mortgage Capital, LLC's motion for a preliminary injunction, Craig Pino, the Debtors' Chief Investment Officer, Treasurer and Executive Vice President, testified as follows in response to a question posed by Debtors' counsel:

> Q.   Is Cadwalader your bankruptcy counsel in these cases?
>
> A.   They are not.
>
> Q.   Do you know why?
>
> A.   A conflict of interest with – with many of our creditors.

Tr. 8/16/07 196:12-15.

24. In light of its representation of the financial institutions, CWT is not a "disinterested person." Each of CWT's client relationships with the seven financial institutions identified in paragraph 10 of the Petrick Affidavit accounted for at least one percent (per client) of the firm's annual gross revenue in at least one of the last three years. Accordingly, those representations, taken together, constitute an interest materially adverse either to the Debtors' estates or to general unsecured creditors by virtue of the clients' respective secured and/or repurchase claims.

25. Further, CWT is not a "disinterested person" due to its representation of Citigroup Global Markets, Inc. in connection with its entry into an underwriting agreement with AHM Investment. Pursuant to the underwriting agreement dated April 30, 2007, on May 4, 2007 AHM Investment issued and sold to Citigroup four million shares of its common stock at $23.10 per share. AHM Investment's equity was trading at less than $1 per share on the eve of its bankruptcy filing (approximately three months after the May 4 public offering). A number of equity security holders

have filed class action lawsuits against AHM Investment, certain of AHM's insiders, and/or Citigroup, claiming that AHM Investment failed to disclose the full extent of the financial difficulties facing the Debtors in the prospectus supplement filed on May 2, 2007 in connection with the offering. Two of the class action complaints (the Reese and Marlin actions) are attached as Exhibits A and B, respectively. Accordingly, it appears that CWT has an interest materially adverse to AHM Investment's equity security holders stemming from its representation of Citigroup in connection with the May 4 public offering.

*CWT Holds or Represents an Interest Adverse With Respect to Matters Within Its Proposed Scope of Employment*

26.    For reasons related to the connections noted supra, CWT holds or represents an interest adverse to the Debtors with respect to matters within its proposed scope of employment. CWT holds or represents an interest adverse to the Debtors' estates with regard to the securities class action litigation and the SEC inquiry. Initially, the actions and/or omissions of the underwriter in connection with the May 4 public offering are presently at issue in the securities class action litigation, and the underwriter's conduct will likely be part of the SEC's inquiry. Any attempt to "carve out" CWT's role as counsel to the underwriter in connection with the May 4 public offering from CWT's proposed engagement on behalf of the Debtors "might be likened to attempts at using a scalpel to carve a bowl of soup." Congoleum, 426 F.3d at 692. Additionally, CWT should not be permitted to represent both the Debtors and the Debtors' officers/directors simultaneously. See In re F & C Int'l, Inc., 159 B.R. 220, 222 (Bankr. S.D. Ohio 1993) (court refused to permit special counsel to represent both the debtor and the debtors' outside directors in matters concerning alleged fraud and mismanagement – "[I]n cases alleging fraud and mismanagement, the passage of time sometimes creates shifts in allegiances and differences in people's perceptions of fault, and thus,

what is unity today may be discord tomorrow.").

27.     In addition, given the broad scope of employment described in the Application, it is unclear whether the scope of CWT's engagement encompasses additional matters which relate to the work performed by CWT on behalf of its client-counterparties listed on Exhibit 2 to the Petrick Affidavit. The U.S. Trustee reserves the right to be heard with respect to such matters at the hearing.

## **CONCLUSION**

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Application.

Respectfully submitted,

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE**


BY:  /s/ Joseph J. McMahon, Jr.
     Joseph J. McMahon, Jr., Esquire (# 4819)
     Trial Attorney
     United States Department of Justice
     Office of the United States Trustee
     J. Caleb Boggs Federal Building
     844 King Street, Room 2207, Lockbox 35
     Wilmington, DE  19801
     (302) 573-6491
     (302) 573-6497 (Fax)

Date:  August 30, 2007