**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., Delaware corporation, et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | **Re: Dkt. No. 163** |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE DEBTORS' APPLICATION
FOR APPROVAL, PURSUANT TO BANKRUPTCY CODE SECTIONS
105 AND 363, OF THE RETENTION AGREEMENT WITH KROLL
ZOLFO COOPER LLC, STEPHEN F. COOPER AND KEVIN NYSTROM**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by their undersigned proposed co-counsel, for its limited objection (the "Objection") to the Debtors' application (the "Application") for approval, pursuant to Bankruptcy Code sections 105 and 363, of the retention agreement with Kroll Zolfo Cooper LLC ("KZC"), Stephen F. Cooper ("Cooper") and Kevin Nystrom (Nystrom") (collectively, "KZCCN") [Docket No. 163], respectfully represents as follows:

**Summary of Objection**

1.  By the Debtors' own admission, these chapter 11 cases are liquidating cases.[2] The Debtors are seeking to sell on an expedited basis their operating mortgage servicing business and substantially all of their other assets within the first few months of the filing. Thus,

---

[1] The Debtors are the following entities: American Home Mortgage Holdings, Inc., a Delaware corporation; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

[2] See Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief, sworn to on August 6, 2007 at ¶34 (The Debtors are reducing "employee headcount", completing "wind-up tasks", closing "retail branches", and selling their "remaining assets".)

the overarching goal in these cases should be maximizing the values obtained for the Debtors' assets while minimizing the winddown expenses being incurred. Although in a liquidation mode, the Committee recognizes that these are complicated cases involving the rapid winddown of substantial affiliated companies that operated in a highly specialized industry and entered into a freefall just a few weeks prior to filing for chapter 11. The Committee has no objection to the qualifications of KZCCN to oversee this winddown as it is a highly reputable and well qualified crisis management firm. The Committee is concerned, however, about the overall costs being incurred and projected to be incurred by the Debtors in order to accomplish this winddown. Specifically, the Debtors are seeking to retain on a piecemeal basis a cadre of professionals, with no limit in their scope of services or duration, at a projected aggregate cost to the estate of millions of dollars per month. KZCCN is one of the larger and more expensive of these professional firms. Before consenting to such retentions, the Committee has requested that the Debtors provide it with a detailed explanation of the services that the dozens of individuals at such firms are projected to provide, the potential overlap with the services being provided by other firms, the anticipated duration of each firm's services and the estimated cost. To date, the Debtors have not provided the Committee with such information. Accordingly, the Committee objects to the Application pending the Debtors' adequate demonstration to the Committee and the Court that the proposed retention of KZCCN in its current form, after taking into account the Debtors' other proposed retentions and their liquidating mode, is in the best interest of the Debtors' estates and their creditors. The Committee also objects to the scope of the Debtors' indemnity obligations for KRCCN sought to be approved in the proposed retention order.

**Factual Background**

2. On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Committee was appointed and selected its undersigned counsel on August 14, 2007, whose retention has not yet been approved by this Court.

3. On August 14, 2007 the Debtors filed their Application, seeking to approve a retention agreement (the "Agreement") between the Debtors and KZCCN providing, *inter alia*, for the retention of (i) Cooper as Chief Restructuring Officer and Nystrom as Director of Restructuring at a fixed cost of $250,000 per month, and (ii) an unspecified number of Associate Directors of Restructuring, Professional Staff, Support Personnel to be charged at standard hourly rates ranging between $630 per hour to $50 per hour depending on the individual's experience and expertise. KZCCN's retention letter specifically provides that Cooper and Nystrom have sole discretion to determine how much or little they will work and that they are not obligated to perform "any specific minimum number of hours during any period" in order to earn their $250,000 in monthly compensation. (See Services Agreement at 2, ¶2(c), a copy of which is annexed as Exhibit B to the Application). Under the proposed engagement as section 363 retentions, KRCCN will not be required to keep detailed time records of the services performed or submit monthly fee applications like other professionals. Despite the Debtors acknowledgement that they intend to sell substantially all of their assets in the next few months, there is no limit on the length of KZCCN's retention and no proposed stepdown in the fixed $250,000 monthly fee. Although they reserve the right to seek a Completion Fee at the end of

3

the engagement, KZCCN's compensation is not tied to any specific performance criteria or accomplishments.[3]

4.  The Committee has a number of concerns about the form of KZCCN's retention as currently proposed. First, Cooper and Nystrom are not required to perform any minimum number of hours in order to earn their $250,000 monthly fee. As structured, KZCCN in fact has a financial incentive to push as much work as possible down to the employees being billed out on an hourly basis. There is not even a requirement that Cooper and Nystrom devote their professional attention exclusively or even substantially to these cases. There is no indication of what other engagements they are currently working on or anticipate working on in the foreseeable future.

5.  In addition, the structure of the proposed compensation appears more appropriate for a chapter 11 case involving a reorganization of an operating business, where the chief restructuring officer and assistant restructuring officer are overseeing the turnaround of an operating business, as opposed to a liquidating estate as in the instant case. Here, there will likely be a tremendous amount of work required by the professionals in the first several months as the Debtors' significant assets are being sold and various parties' respective rights are being sorted out by the Court. In a few months time, however, the Debtors' estates will (hopefully) be reduced to cash and the focus of the professionals will be on resolving claims and pursuing potential causes of action. While KZCCN may provide significant value to the estates during the initial stages of asset disposition, it is unclear what value they will provide once the estates' assets have been liquidated. The Application does not provide any such detail. To be sure, the

---

[3] For reasons unexplained, the proposed retention order seeks to limit the parties that receive notice of KZCCN's application for a Completion Fee to only the Court and the Office of the United States Trustee. The Committee objects to any such limitation on notice. Consistent with Bankruptcy Rule 2002, to the extent KZCCN intends to seek a bonus in these cases, it should also be required to serve its application on the Committee and all other creditors and parties-in-interest.

amount of work required to be performed by KZCCN personnel will be significantly greater in the first few months of the case than the remaining months of the case pending confirmation of a liquidating plan, yet KZCCN's compensation structure of a fixed monthly fee of $250,000 does not take into account the reduced time commitment on Cooper and Nystrom's part. The Committee has asked the Debtors to provide a better explanation of the services Cooper and Nystrom and the other KZCCN personnel are envisioned to provide in the cases throughout the winddown period but have not yet received an adequate response.

6. The Committee has also requested a better explanation of the role the Debtors envisions for the other professional firms they are seeking to retain, also at a significant cost to the estate. Upon information and belief, the Debtors currently anticipate that the monthly cost of KZCCN's retention will exceed $750,000. The Debtors have also proposed to retain Milestone & Associates at a monthly fee of $200,000, plus a success fee, for an unlimited duration, and, upon information and belief, may be seeking to retain other professional firms as well. While the Committee does not have an objection *per se* to the retention of these other firms, the Committee believes that the Debtors should demonstrate the anticipated roles that all of these firms are expected to perform in the winddown effort and the total anticipated expense. In that way, the Court, the Committee and other parties-in-interest will be in a better position to determine whether the proposed retentions and compensation structures are in the best interest of the debtors' estates and their creditors.

7. Lastly, the Committee objects to the scope of the Debtors' indemnity obligations for KRCCN sought to be approved in the proposed retention order. Specifically, the proposed form of order (¶8) provides that the Debtors will "indemnify and hold harmless [KZCCN] and its affiliates, their respective directors, officers, agents, employees and controlling

5

persons, and each of their respective successors and assigns … to the fullest extent permitted under (i) the Articles of Incorporation and by-laws of the Debtors, (ii) the laws of the State of Maryland, and (iii) any order of the Bankruptcy Court providing for indemnification of the person engaged in the bankruptcy proceedings." The scope of indemnity sought by this provision is potentially broader than is described in the Application which specifically carves out conduct by KZCCN which constitutes gross negligence or willful misconduct.[4]  Moreover, the reference to any other form of indemnification approved by the Bankruptcy Court in any other bankruptcy proceeding is far too broad. It does not even appear to be limited to these cases. The Committee submits that to the extent the Court is inclined to approve any form of indemnification for KZCCN, it should be narrowly crafted consistent with the scope of indemnity typically approved by Delaware Bankruptcy Courts in these situations.

---

[4] For example, under certain state statutes, a corporation may absolve its directors from liability for any breaches of the duty of care, even from acts constituting gross negligence, through an amendment of its articles of incorporation or by-laws.

**WHEREFORE**, the Committee respectfully requests that the Court deny the Debtors' Application to retain KZCCN absent the Debtors demonstrating to the Committee and the Court that the proposed retention of KZCCN in its current form, after taking into account the Debtors' other proposed retentions and their liquidating mode, is in the best interest of the Debtors' estates and their creditors, and for such other and further relief as the Court may deem just and proper.

Dated:   August 31, 2007

                   BLANK ROME LLP

                   */s/ Bonnie Glantz Fatell*
                   Bonnie Glantz Fatell (No. 3809)
                   1201 Market Street, Suite 800
                   Wilmington, Delaware 19801
                   Telephone:   (302) 425-6400
                   Facsimile:   (302) 425-6464

                      -and-

                   HAHN & HESSEN LLP
                   Mark S. Indelicato
                   Mark T. Power
                   488 Madison Avenue
                   New York, New York 10022
                   Telephone:   (212) 478-7200
                   Facsimile:   (212) 478-7400

                   *Proposed Co-Counsel to the Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc., et al.*