IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------- x
In re:                                                                  :    Chapter 11
                                                                        :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                                   :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                         :
                                                                        :    Jointly Administered
    Debtors.                                                            :
---------------------------------------------------------------------- x    Re: Docket No. 17

Hearing Date: 9/4/07 at 11:00 a.m.
Objection Deadline: 8/27/07 at 4:00 p.m.

SUBMISSION OF PROPOSED FINAL ORDER PURSUANT TO SECTIONS
105(a), 362 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES
2002, 4001 AND 9014: (A) APPROVING DEBTOR-IN-POSSESSION FINANCING, (B)
GRANTING LIENS AND ALLOWING SUPERPRIORITY ADMINISTRATIVE
CLAIMS AND (C) GRANTING RELATED RELIEF

In connection with the hearing scheduled for September 4, 2007 at 11:00 a.m., the above-

captioned debtors and debtors-in-possession (the "Debtors") hereby submit the proposed "Final

Order Pursuant to Sections 105(a), 362 and 364 of the Bankruptcy Code and Bankruptcy Rules

2002, 4001 and 9014: (A) Approving Debtor-in-Possession Financing, (B) Granting Liens and

Allowing Superpriority Administrative Claims and (C) Granting Related Relief" (the "Proposed

Final Order"), which is attached hereto as Exhibit A. Attached hereto as Exhibit B is a copy of

the Proposed Final Order which has been blacklined to show changes made to the Interim Order

Pursuant to Sections 105(a), 362 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002,

4001 and 9014: (A) Approving Debtor-in-Possession Financing, (B) Granting Liens and

Allowing Superpriority Administrative Claims, (C) Scheduling a Final Hearing and (D) Granting

Related Relief, which was entered by the Court on August 7, 2007.

Dated: Wilmington, Delaware
     September 3, 2007

                  YOUNG CONAWAY STARGATT & TAYLOR, LLP

                  James L. Patton, Jr. (No. 2202)
                  Joel A. Waite (No. 2925)
                  Pauline K. Morgan (No. 3650)
                  Sean M. Beach (No. 4070)
                  Matthew B. Lunn (No. 4119)
                  Kara Hammond Coyle (No. 4410)
                  Kenneth J. Enos (No. 4544)
                  The Brandywine Building
                  1000 West Street, 17th Floor
                  Wilmington, Delaware 19801
                  Telephone: (302) 571-6600
                  Facsimile: (302) 571-1253

                  Proposed Counsel for Debtors and
                  Debtors in Possession

                                          

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | |
| | : | Chapter 11 |
| AMERICAN HOME MORTGAGE | : | Case No.  07-11047(CSS) |
| HOLDINGS, INC., *et al.,* | : | Jointly Administered |
| | : | |
| Debtors. | : | **Ref. Docket No. 17** |

**FINAL ORDER PURSUANT TO SECTIONS 105(a), 362, AND 364 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014:
(A) APPROVING DEBTOR-IN-POSSESSION FINANCING, (B) GRANTING LIENS
AND ALLOWING SUPERPRIORITY ADMINISTRATIVE CLAIMS,
AND (C) GRANTING RELATED RELIEF**

Upon the Motion for Interim and Final Orders (I) Authorizing Certain Debtors to Obtain

Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense

Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364(c); (II) Scheduling Final Hearing Pursuant to

Bankruptcy Rule 4001(c); and (III) Granting Related Relief (the "Motion") dated August 6, 2007

of American Home Mortgage Investment Corp. ("AHMIC"), and certain of the other debtors in

the above-captioned chapter 11 cases, seeking, *inter alia*:

(i)  authorization for debtors AHMIC, American Home Mortgage Holdings, Inc.,

American Home Mortgage Corp., American Home Mortgage Acceptance, Inc., American Home

Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

(collectively, the "Borrowers") to obtain postpetition financing (the "DIP Facility") pursuant to

sections 105(a), 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by entering

into that certain $50,000,000 Debtor-in-Possession Loan and Security Agreement dated as of

August 6, 2007 (as the same may be amended, supplemented, or otherwise modified from time to

time, the "DIP Credit Agreement"[1], a copy of which is annexed hereto as Exhibit "A") by and among the Borrowers, the several lenders from time to time party thereto (collectively, the "Lenders"), WLR Recovery Fund III, L.P., in its capacity as Lender and Administrative Agent (collectively, the Lenders and the Administrative Agent, the "Secured Parties"), subject to the terms and conditions set forth in this order (the "Final Order"), the DIP Credit Agreement, and all related guaranty, security, and other agreements, documents, notes, and instruments executed or delivered pursuant hereto or in connection herewith or therewith (collectively, with the DIP Credit Agreement, and as any of the same shall be amended, restated, supplemented or otherwise modified from time to time in accordance with this Final Order, the "DIP Financing Documents");

(ii) the granting of superpriority administrative status pursuant to section 364(c)(1) of the Bankruptcy Code for all Obligations of the Borrowers arising hereunder and under the DIP Financing Documents (collectively, the "DIP Obligations"); and

(iii) the granting of liens, mortgages and security interests in favor of the Administrative Agent for the benefit of the Secured Parties pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code.

The Emergency Interim Hearing having been held on August 7, 2007, and an interim order (the "Interim Order") having been entered on such date; and notice having been given of the final hearing with respect to the Motion (the "Final Hearing") in accordance with the Interim Order; and the Final Hearing having been held on September 4, 2007; and upon all of the pleadings filed with the Court and the evidence adduced at, and statements of counsel on the

---

[1] Capitalized terms used herein but not otherwise defined herein shall have the meanings set forth in the DIP Credit Agreement.

record of, the Emergency Interim Hearing and the Final Hearing, and after due deliberation and

consideration and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS PURSUANT TO
BANKRUPTCY RULE 7052:**

A.    **Commencement of Cases**.  On August 6, 2007 (the "Commencement Date"),

each of the debtors in the above-captioned cases (the "Debtors") filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their

businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and

1108.  No statutory committees have yet been appointed in these cases.  Pursuant to order of the

Court, the Debtors' cases are being jointly administered under the case number above.

B.    **Jurisdiction and Venue**.  The Court has jurisdiction over these proceedings and

the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and this is a

core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for proceedings on the Motion is proper

in this Court pursuant to 28 U.S.C. § 1409.

C.    **Notice**.  Notice of the Final Hearing and the entry of this Final Order was

provided pursuant to the Interim Order, and constitutes good and sufficient notice.

D.    **Necessity of Financing**.  The ability of the Borrowers to finance their operations

requires the availability of additional working capital, the absence of which would immediately

and irreparably harm the Borrowers, their estates and their creditors.  The DIP Facility will allow

the Borrowers to continue the operation of their businesses and administer and preserve the value

of their estates, for the benefit of their estates and creditors.

NYI-4020089v1

E.    **No Credit Available on Other Terms**.  The Borrowers are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a) and 364(b) of the Bankruptcy Code.

F.    **Willingness to Lend**.  The Lenders are willing to make the DIP Facility available and to make the loans and advances pursuant to the terms of the DIP Financing Documents, but only if (a) the Administrative Agent on behalf of the Lenders is granted a superpriority administrative expense claim with respect to the DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, and (b) the Administrative Agent on behalf of the Lenders is granted a security interest in and liens (collectively, the "DIP Liens") on the "Collateral," as term is defined under the DIP Credit Agreement (the "DIP Collateral") , pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, in the priority set forth herein.

G.    **Business Judgment and Good Faith**.  Based on the record before the Court, the terms of the DIP Facility are fair, just, and reasonable under the circumstances, are appropriate for secured financing to a debtor in possession, reflect the Borrowers' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Based on the record before the Court, the terms of the DIP Facility have been negotiated in good faith and at arm's length by and among the parties, with all parties represented by counsel.  Based on the record before the Court, any credit extended under the terms of the DIP Facility is hereby found to be extended in good faith by the Lenders as that term is used in section 364(e) of the Bankruptcy Code.  Based on the record before the Court, the Secured Parties are hereby found to be acting in good faith within the meaning of section 364(e) of the Bankruptcy Code in closing the transactions contemplated in the DIP Financing Agreements after the entry of the Interim Order.  Based on the record before

- 4 -

the Court, none of the Secured Parties is an "insider" or "affiliate" of any of the Debtors (as such terms are defined in the Bankruptcy Code).

H.    **Property of the Estate**.  Each item of the DIP Collateral constitutes property of the estate of at least one Borrower.

I.    **Good Cause**.  Authorizing the DIP Facility and other relief granted herein is necessary, essential, appropriate and in the best interest of the Borrowers, their creditors, and their estates, as its implementation will, among other effects, provide the Borrowers with the necessary liquidity to (a) minimize disruptions to their on-going operations, (b) preserve and maximize the value of their estates for the benefit of all creditors of the Borrowers, and (c) avoid immediate irreparable harm to the Borrowers, their creditors, their businesses, their employees, and their estates.

Based on the foregoing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.    The Motion is granted in accordance with the terms of this Final Order.  Any objections to the Motion with respect to entry of this Final Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

2.    The Borrowers are hereby authorized, pursuant to the terms of this Final Order and the terms and conditions of the DIP Financing Documents, to borrow funds under the DIP Facility in such amount or amounts as may be available to or for the benefit of the Borrowers from the Secured Parties.

3.    Except as otherwise expressly set forth in this Final Order, the terms and conditions of the DIP Financing Documents are hereby approved in all respects. The DIP Financing Documents shall constitute valid and binding obligations of the Borrowers,

NYI-4020089v1

enforceable against each of the Borrowers in accordance with their terms. The DIP Financing Documents shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Borrowers and the Secured Parties. All provisions in the DIP Financing Documents are binding and enforceable in full even if not expressly referenced in this Final Order.

4.      The Borrowers are hereby authorized and directed to do and perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the execution of all guaranty and security agreements, mortgages, financing statements, and other filings and registrations) which may be required or necessary for the Borrowers' performance under the DIP Financing Documents.

5.      Each officer of each Borrower, and each such other individual as may be so authorized by the Board of Directors of such Borrower, acting singly, is hereby authorized to execute and deliver any and all of the DIP Financing Documents and related documents, such execution and delivery to be conclusive of their respective authority to act in the name and on behalf of the Borrowers.

6.      AHMIC is hereby authorized to act as the Administrative Borrower on behalf of each other Borrower with respect to the Borrowers' rights and obligations under the DIP Financing Documents, including, without limitation, requesting Loans thereunder. Each Borrower shall be jointly and severally liable for all DIP Obligations regardless of whether the DIP Obligations were incurred or requested by AHMIC or any other Borrower. Any notice given to, or demand made on, AHMIC by the Secured Parties, pursuant to this Final Order or the DIP Financing Documents shall constitute notice to, or demand on, all Borrowers without any requirement to provide any such notice or demand (or copy thereof) to the other Borrowers.

NYI-4020089v1

7.    Without limiting the joint and several liability of each of the Borrowers for the DIP Obligations, the Debtors shall use reasonable efforts so that the Borrowers that receive the benefit of funds advanced under the DIP Credit Facility (or the services contemplated thereunder or hereunder) repay their share thereof on a dollar-for-dollar basis. To the extent a Debtor (i) receives funds advanced under the DIP Facility (including as a result of inter-company balances incurred after the Commencement Date to the extent such balances arise from the incurrence of DIP Obligations), or (ii) receives a post-petition inter-company loan or transfer of funds advanced under the DIP Facility (including as a result of the Debtors' cash management system or otherwise) (each a "Beneficiary Debtor"), and such DIP Obligations are repaid, or such post-petition inter-company loan or transfer is made (including from cash collateral) (each an "Advance") by any other Debtor that is an obligor under the DIP Facility (an "Advancing Debtor"), the Advancing Debtor shall have (a) an allowed claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code against the Beneficiary Debtor for the amount of such Advance, junior in all respects to the superpriority administrative expense claim granted to the Secured Parties pursuant to paragraph 8 of this Final Order.

**ADMINISTRATIVE CLAIM**

8.    Subject to the provisions of paragraph 10 hereof, as protection to the Secured Parties and to secure the repayment of the DIP Obligations, all of the DIP Obligations shall have the status of allowed superpriority administrative expense claims, in accordance with section 364(c)(1) of the Bankruptcy Code, and shall have priority over all administrative expense claims and unsecured claims against the Borrowers, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, any adequate protection-related claims and any administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328,

- 7 -

330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, to the

extent permitted by applicable law.

**LIENS AND COLLATERAL**

      9.      As further protection to the Secured Parties and to secure the repayment of the

DIP Obligations, the Administrative Agent, for the benefit of the Secured Parties, shall have and

is hereby granted: (a) pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, and

enforceable perfected first priority security interest in and lien on all the property and assets of

each of the Borrowers and their estates of every kind or type whatsoever, tangible, intangible,

real, personal and mixed, whether now owned or existing or hereafter acquired or arising and

regardless of where located, whether within the United States or in other locations (including,

without limitation, all property of the estates of each of the Borrowers within the meaning of

section 541 of the Bankruptcy Code), but excluding any avoidance actions under chapter 5 of the

Bankruptcy Code (the "Avoidance Actions"), that is not otherwise encumbered by valid,

perfected, enforceable, and nonavoidable liens and security interests existing on or in the DIP

Collateral on the Commencement Date, (collectively, the "Pre-Existing Liens"); and (b) pursuant

to section 364(c)(3) of the Bankruptcy Code, a valid, binding, and enforceable perfected second

priority security interest in and lien on all the property and assets of each of the Borrowers and

their estates of every kind or type whatsoever, tangible, intangible, real, personal and mixed,

whether now owned or existing or hereafter acquired or arising and regardless of where located,

whether within the United States or in other locations (including, without limitation, all property

of the estates of each of the Borrowers within the meaning of section 541 of the Bankruptcy

Code), but excluding any Avoidance Actions, that is encumbered by Pre-Existing Liens,

*provided*, should any such Pre-Existing Lien be voided, extinguished or determined not be valid,

- 8 -

the Liens granted to the Administrative Agent hereunder shall, notwithstanding anything to the

contrary in Section 551 of the Bankruptcy Code, be deemed perfected first priority liens without

any further action by the Secured Parties or the Court.

       10.     Notwithstanding anything to the contrary contained in the Motion, the DIP

Financing Documents, the Interim Order, or this Final Order, the Secured Parties shall not (i) be

granted any liens, security interests or encumbrances in any of the BofA Collateral, (ii) seek to

enforce, directly or indirectly, any superpriority administrative expense claim or any other

priority claim against American Home Mortgage Servicing, Inc. or in respect of any asset which

constitutes the BofA Collateral or (iii) amend the definition of the term "BofA Collateral" in the

DIP Financing Documents or amend paragraphs 10, 31(b) or 33(b) of this Final Order in a

manner that is adverse to the rights of the Administrative Agent or the Pre-Petition Secured

Parties (as such respective terms are defined in the Interim Order (I) Authorizing Debtors'

Limited Use Of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection To

Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant To Bankruptcy

Rule 4001 (together with any final order entered in respect thereof, the "Cash Collateral Order"))

under the Cash Collateral Order without the prior written consent of BofA (which may be

withheld in its sole discretion), in each case unless and until the Indebtedness (as defined in the

Cash Collateral Order) has been indefeasibly paid in full in cash.  The Secured Parties

acknowledge that pursuant to the Cash Collateral Order, BofA and the Pre-Petition Secured

Parties (as such term is defined in the Cash Collateral Order) have been granted, inter alia,

certain adequate protection rights as set forth therein and such order provides that the BofA

Collateral is separate and distinct from, and shall not form a part of, any of the DIP Collateral.

11.    The above-described liens and security interests granted to the Administrative Agent in the DIP Collateral herein shall not (a) be subject to any lien or security interest that is avoided and preserved for the benefit of the Borrowers' estates as a result of any Avoidance Actions, or (b) be subordinated to or made pari passu with any other lien or security interest pursuant section 364(d) of the Bankruptcy Code or otherwise.

12.    No other liens or priority status, other than Permitted Liens, shall have priority superior to or pari passu with those granted in the DIP Collateral by this Final Order to the Secured Parties, or shall be granted while any portion of the DIP Obligations remains outstanding, absent the express written consent of the Administrative Agent.

13.    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Administrative Agent's liens upon the Collateral, without the necessity of filing or recording any financing statement, mortgage or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect such liens or security interests in the DIP Collateral or to entitle the Administrative Agent to the priorities granted herein.  The Administrative Agent shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to perfect the Administrative Agent's liens and security interests granted by or pursuant to this Final Order or the DIP Financing Documents.

14.    Pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more parties, or requires the payment of any fees or obligations to any governmental entity, in order for any of the Borrowers to pledge, grant, sell, or otherwise transfer any such

- 10 -

interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting the Secured Parties a senior security interest in such interest or the proceeds of any assignment and/or sale thereof by any of the Borrowers in favor of the Secured Parties in accordance with the terms of the DIP Financing Documents.

15.    Should the Secured Parties, in their sole discretion (but not as a requirement hereunder), from time to time choose to file financing statements, mortgages, notices of lien or similar instruments, take possession of any DIP Collateral, or take any other action to validate or perfect any such security interests or Liens, the Borrowers and their officers are hereby directed to execute any such documents or instruments as the Secured Parties may reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of the entry of the Interim Order.

16.    The Secured Parties may, in their discretion, file a copy of this Final Order as a financing statement or mortgage with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Borrowers have real or personal property, and, in such event, the applicable filing or recording officer or registrar is authorized to file or record such copy of this Final Order.

17.    Until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Financing Documents, the Borrowers shall not in any way prime or otherwise adversely affect the liens in the DIP Collateral granted under this Final Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien (other than Permitted Liens) or claim pursuant to sections 364(c)(1), 364(d), or 507(b) of the Bankruptcy Code, or otherwise.

- 11 -

18.    Until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Financing Documents, the Borrowers shall not in any way grant junior encumbrances on the DIP Collateral and shall not otherwise encumber otherwise unencumbered assets or unencumbered estate property.

19.    Neither the DIP Collateral nor the Secured Parties shall be subject to surcharge, pursuant to sections 506(c) or 105 of the Bankruptcy Code or otherwise, by any of the Debtors or any other party, until all DIP Obligations are indefeasibly paid in full to the Secured Parties in cash, and no such consent shall be implied from any action, inaction, or acquiescence by the Secured Parties, including but not limited to the funding of the Borrowers' ongoing operations by the Secured Parties.

20.    In no event shall the Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

21.    Notwithstanding anything in this Final Order to the contrary, the liens and security interests granted to the Administrative Agent shall not extend to any assets that are not property of the Borrowers' estates.

**CARVE-OUT**

22.    Notwithstanding the foregoing provisions of this Final Order, the following amounts shall be payable from and chargeable against the DIP Collateral (and prior to the liens and superpriority claims granted to the Administrative Agent herein) (the "Carve-Out"): (a) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court (collectively, the "UST/Clerk Fees"); and (b) allowed fees and expenses of attorneys, accountants, and other professionals retained in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code (except to the extent such fees and expenses are incurred for

- 12 -

services rendered in connection with the prosecution of actions, claims or causes of action against the Secured Parties or in improperly preventing or hindering or unreasonably delaying, whether directly or indirectly, the Secured Parties' assertion or enforcement of the Secured Parties Liens or realization upon the DIP Collateral) (the "Priority Professional Expenses"), but the amount entitled to priority under this sub-clause shall not exceed $5,000,000 outstanding in the aggregate at any time (the "Carve-Out Amount"); *provided*, after the Administrative Agent has provided notice to the Borrowers pursuant to the terms of the DIP Financing Documents of the occurrence of an Event of Default or a default hereunder by the Borrowers in any of their obligations under this Final Order, any payments actually made to such professionals after the occurrence of such Event of Default or default hereunder, under sections 330 and 331 of the Bankruptcy Code or otherwise, to the extent allowed by final order of the Court, shall reduce the Carve-Out Amount on a dollar-for-dollar basis.  Nothing contained herein shall be construed as consent to the allowance of any fees and expenses referred to above and shall not affect any right of the Secured Parties to object to the reasonableness of such amounts.

23.     So long as an Event of Default shall not have occurred, the Borrowers shall be permitted to pay the Priority Professional Expenses of the kind specified in section 503(b) of the Bankruptcy Code allowed under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, within the parameters of this Final Order and the amounts to be advanced pursuant to the DIP Financing Documents, without reduction of the Carve-Out Amount; *provided* the aggregate of any such payments made on or after the occurrence of a Default or Event of Default to professionals shall not exceed the Carve-Out Amount.  The Borrowers shall not be permitted under any circumstance to pay from the DIP Collateral (including from the Carve-Out Amount) any fees or expenses incurred by any party, including the Debtors or the

- 13 -

Creditors' Committee, in connection with the filing and prosecution or defense of any claims, causes of action, adversary proceedings or other litigation against the Secured Parties, including, without limitation, challenging the amount, validity, priority or enforceability of, or asserting any defense, counterclaim, or offset to, the DIP Obligations or the liens granted to the Administrative Agent in respect thereof.

**REMEDIES**

24.      Notwithstanding the provisions of section 362 of the Bankruptcy Code and without any further order of, or application or motion to, the Court, in the event of the occurrence of an Event of Default, and at all times thereafter, and without any restriction or restraint by any stay under section 362 of the Bankruptcy Code against the enforcement of the liens and security interests or any other rights granted to the Secured Parties pursuant to the DIP Financing Documents, the Administrative Agent may, by written notice to the Borrowers as provided in the DIP Financing Documents, with copies sent to counsel to BofA and to counsel to the official committee of unsecured creditors appointed in these cases (the "Committee"), (a) terminate forthwith all or any portion of the DIP Facility and the Secured Parties' obligation to make any further loans or advances, (b) declare the DIP Obligations to be immediately due and payable, and (c) take any and all actions and exercise any and all rights and remedies allowed under the DIP Financing Documents, which the Secured Parties may deem appropriate.  Notwithstanding the foregoing, but without limiting any of the Secured Parties' rights or remedies, the Secured Parties shall not consummate foreclosure on the DIP Collateral or otherwise seize control of assets of the Borrowers' estates (it being understood that the giving of a notice of exclusive control or similar notice under any control agreement shall not constitute a foreclosure on the DIP Collateral or the seizing of control of assets of the Borrowers) absent five (5) business days'

- 14 -

prior written notice of an Event of Default to the Borrowers, counsel to BofA, counsel to the Committee, and the United States Trustee. The remedies granted in this paragraph 24 are subject in all respects to the provisions of paragraph 10 hereof and the provisions of the Cash Collateral Order.

25.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted to grant the liens and security interests in the DIP Collateral to the Secured Parties contemplated by the DIP Financing Documents and this Final Order, and is further lifted to the extent of the exercise by the Secured Parties of any rights or remedies under this Final Order or the DIP Financing Documents, subject only to the notice requirement set forth in the foregoing paragraph.

**OTHER PROVISIONS**

26.    **Use of Proceeds.** From and after the Commencement Date, the Borrowers shall use the proceeds of the Loans solely in accordance with and subject to the conditions set forth in this Final Order and the DIP Financing Documents. Nothing in this Final Order shall be construed to require the Lenders to make advances or extensions of credit or other financial accommodations to permit the Borrowers to make any payments, except to the extent expressly provided for in this Final Order and the DIP Financing Documents.

27.    **Escrows.** The Borrowers are hereby directed to (a) execute and deliver such documentation as required pursuant to the DIP Financing Documents to establish the Interest Escrow Account and the Lender Expenses Escrow Account, and (b) borrow Loans under the DIP Facility to fund the Interest Escrow Account and the Lender Expenses Escrow pursuant to the terms of the DIP Financing Documents, prior to any other borrowings under the DIP Facility.

NYI-4020089v1

28.    **Bank Accounts.**  Any proceeds of the sale, lease or other disposition of the DIP Collateral, including all Cash Collateral of the Secured Parties, shall be used in accordance with the provisions of this Final Order and the DIP Financing Documents and shall be applied in payment of the Borrowers' obligations under, and in the manner provided in, the DIP Financing Documents.  The Borrowers are authorized and directed to deposit all proceeds of the DIP Collateral into such account or accounts as the Administrative Agent shall direct and as provided for in the DIP Financing Documents, and upon such deposit, and until all DIP Obligations have been indefeasibly paid in full in cash, all proceeds shall become the sole and exclusive property of the Secured Parties and may be applied by the Administrative Agent against the Borrowers' obligations as provided in the DIP Financing Documents.  The Borrowers are deemed to have irrevocably waived any right to direct the manner of application of any payments to the Secured Parties or any other receipts by the Secured Parties of proceeds of any of the DIP Collateral, including all of the Lenders' Cash Collateral, other than as expressly set forth in this Final Order and the DIP Financing Documents.  The Borrowers are hereby directed to establish one or more bank accounts as provided in the DIP Financing Documents, into which all of the Lenders' Cash Collateral shall be held.

29.    **Immediate Effectiveness.**  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

30.    **Survival.**  (a) The terms and provisions of this Final Order and the DIP Financing Documents, and the liens and security interests granted to the Administrative Agent and the superpriority status of the administrative claims and payment provisions contained in this Final

Order and the DIP Financing Documents shall continue in full force and effect until the DIP

Obligations are indefeasibly paid in full in cash, and DIP Financing Documents are terminated.

(b)     The liens, security interests and the administrative priorities and other rights and

remedies granted to the Secured Parties by the provisions of this Final Order, as well as the

Borrowers' obligations pursuant to the DIP Financing Documents and this Final Order, shall

continue beyond and survive the expiration of this Final Order, and, to the extent permitted by

applicable law, shall not be modified, altered or impaired in any manner by (a) any other

financing or extension of credit or incurrence of indebtedness by any of the Borrowers under

section 364 of the Bankruptcy Code or otherwise (except as contemplated by the DIP Financing

Documents), (b) the entry of an order or orders confirming any plan or plans of reorganization or

liquidation in these cases, or (c) the entry of an order converting these cases to cases under

chapter 7 of the Bankruptcy Code, suspending, or dismissing these cases.

(c)     This Final Order and DIP Financing Documents shall be valid, binding and

enforceable by the Secured Parties against the Borrowers, their respective successors and

assigns, including, without limitation, any chapter 11 or chapter 7 trustee appointed as a

representative of any of the Borrowers' estates; *provided*, the Secured Parties shall have no

obligation to extend any financing to any such chapter 11 or chapter 7 trustee or similar person.

(d)     If any provision of this Final Order is hereafter modified, vacated, reversed or

stayed by subsequent order of this or any other court for any reason, such modification, vacation,

reversal or stay shall not affect the validity and priority of any of the DIP Obligations incurred

under this Final Order and the DIP Financing Documents, and, prior to the effective date of any

such modification, vacation, reversal or stay, the validity, enforceability or priority of the DIP

Obligations shall be governed in all respects by the original provisions of this Final Order, and

- 17 -

the Secured Parties and Lender-Related Parties shall be entitled to all the rights, privileges and benefits granted herein.  The transactions contemplated by the DIP Facility have been entered into by the Secured Parties in good faith, and, as a result, the Secured Parties are entitled to the protections afforded by Section 364(e) of the Bankruptcy Code in the event of any reversal or modification of this Final Order.

(e)     Under no circumstances, except with the written consent of the Administrative Agent, shall (a) any plan of reorganization or liquidation in any of the Borrowers' chapter 11 cases be confirmed or become effective unless such plan provides that all DIP Obligations are paid in full in cash on or before the effective date of such plan; or (b) the liens, rights and remedies granted to the Secured Parties pursuant to or in connection with the DIP Financing Documents and this Final Order be modified, altered or impaired in any manner by a chapter 11 plan or order of confirmation of a chapter 11 plan for any of the Borrowers.

31.     **Indemnities.**  (a) Each Borrower shall hold the Administrative Agent, each Lender-Related Party and each Participant (the Administrative Agent, each Lender-Related Party and each Participant, an "Indemnified Party") harmless from and indemnify any Indemnified Party, on an after-Tax basis, against all liabilities, losses, damages, judgments, costs and expenses of any kind which may be imposed on, incurred by or asserted against such Indemnified Party (collectively, the "Indemnified Liabilities") relating to or arising out of this Loan Agreement, the Note, any other Loan Document or any transaction contemplated hereby or thereby, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, this Loan Agreement, the Note, any other Loan Document or any transaction contemplated hereby or thereby.  Without limiting the generality of the foregoing, each Borrower agrees to hold any Indemnified Party harmless from and indemnify such Indemnified Party

- 18 -

against all Indemnified Liabilities with respect to all mortgage loans relating to or arising out of
any violation or alleged violation of any environmental law, rule or regulation or any consumer
credit laws, including without limitation laws with respect to unfair or deceptive lending
practices and predatory lending practices, the Truth in Lending Act or the Real Estate Settlement
Procedures Act.  In any suit, proceeding or action brought by an Indemnified Party in connection
with any mortgage loan for any sum owing thereunder, or to enforce any provisions of any
mortgage loan, each Borrower will save, indemnify and hold such Indemnified Party harmless
from and against all expense, loss or damage suffered by reason of any defense, set-off,
counterclaim, recoupment or reduction or liability whatsoever of the account debtor or obligor
thereunder, arising out of a breach by any Borrower of any obligation thereunder or arising out
of any other agreement, indebtedness or liability at any time owing to or in favor of such account
debtor or obligor or its successors from any Borrower.  Each Borrower also agrees to reimburse
an Indemnified Party as and when billed by such Indemnified Party for all such Indemnified
Party's reasonable costs and expenses incurred in connection with the enforcement or the
preservation of such Indemnified Party's rights under this Final Order or any DIP Financing
Document or any transaction contemplated hereby or thereby, including without limitation the
reasonable fees and disbursements of its counsel.  Each Borrower hereby acknowledges that,
notwithstanding the fact that the Loans are secured by the DIP Collateral, the obligation of each
Borrower with respect to each Loan is a recourse obligation of each Borrower.  The foregoing to
the contrary notwithstanding, the Borrowers shall have no obligation to any Indemnified Party
under this paragraph with respect to any Indemnified Liability that a court of competent
jurisdiction finally determines to have resulted from the bad faith, gross negligence, or willful

misconduct of such Indemnified Party.  In no event, however, shall any Indemnified Party be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

(b) Prior to the date when the Indebtedness (as defined in the Cash Collateral Order) has been indefeasibly paid in full in cash, no proceeds from any of the BofA Collateral may be used to pay amounts payable under this paragraph 31.

32.    **Exculpation.**  Nothing in the Interim Order, this Final Order, the DIP Financing Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Parties any liability for any claims arising from the pre-petition or post-petition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  Furthermore, (a) the Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Borrowers. The foregoing sentence to the contrary notwithstanding, no Secured Party shall be exculpated from liability that a court of competent jurisdiction finally determines to have resulted from the bad faith, gross negligence, or willful misconduct of such Secured Party.

33.    **Payment of Lenders' Fees and Expenses.**  (a) The Borrowers are hereby authorized and directed to pay the fees as they come due under the DIP Financing Documents to the Secured Parties without further Court order, including without limitation, the Facility Fee, the commitment fee set forth in Section 3.07(b) of the DIP Credit Agreement, and all reasonable out-of-pocket costs and expenses of the Secured Parties (including reasonable attorney's fees and

- 20 -

expenses) as provided for under the DIP Financing Documents.  The Borrowers shall send copies

of invoices received by them for such out-of-pocket costs and expenses (including attorneys'

fees and expenses) to (i) the United States Trustee, and (ii) counsel to the Committee.  The

payment of the fees expenses and disbursements set forth in this paragraph shall be made within

ten (10) days after the receipt by the Debtors (the "Review Period") of invoices thereof (the

"Invoiced Fees") (subject in all respects to applicable privilege and work product doctrines) and

without the necessity of filing formal fee applications, including amounts arising before and after

the Commencement Date; *provided, however,* that the Debtors, the United States Trustee, and

the Committee may preserve their right to dispute the payment of any portion of the Invoiced

Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Borrowers pay in full

the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors, the United States

Trustee, or the Committee files with the Court a motion or pleading, on at least ten (10) days

prior written notice to the Administrative Agent of any hearing on such motion or pleading,

setting forth its specific objection(s) to the Disputed Invoiced Fees.

(b) Prior to the date when the Indebtedness (as defined in the Cash Collateral Order) has

been indefeasibly paid in full in cash, no proceeds from any of the BofA Collateral may be used

to pay amounts payable under this paragraph 33.

34.    **No Waiver of Secured Parties' Rights.**  Notwithstanding anything to the

contrary herein, the entry of this Final Order is without prejudice to, and does not constitute a

waiver of, expressly or implicitly, or otherwise impair any of the rights of the Secured Parties

under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right

of the Secured Parties to (a) request the conversion of any of the Borrowers' cases to cases under

chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, examiner,

- 21 -

fiduciary, or responsible person with expanded powers, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization or liquidation for any of the Borrowers.

35.    **Conflicts.**  To the extent of any conflict between or among the express terms or provisions of any of the DIP Financing Documents and the Motion, the terms and provisions of the DIP Financing Documents shall govern.  To the extent of any conflict between or among the express terms or provisions of any of the DIP Financing Documents or the Motion on the one hand, and the terms and provisions of this Final Order on the other hand, the terms and provisions of this Final Order shall govern.

36.    **Amendments.**  Upon three (3) days prior written notice to the counsel to the Committee and counsel to BofA, the Borrowers and the Secured Parties may finalize, amend, modify, supplement or waive any provision of the DIP Financing Documents if such amendment, modification, supplement or waiver is permitted under the terms of the DIP Financing Documents and is not material (in the good faith judgment of the Secured Parties and the Borrowers) without any need to apply to, or receive further approval from, the Court.

37.    **No Proofs of Claim.**  The Secured Parties are each hereby relieved of the requirement to file proofs of claim in these cases with respect to any DIP Obligations.

38.    **Reservation of Rights Under Certain Bankruptcy Code Provisions.**  No rights of any entity in connection with a contract or transaction of the kind listed in §§ 555, 556, 559, 560, and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the entry of this Final Order.

39.    **No Third Party Beneficiaries.**  No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Final Order or the DIP Financing Documents.

40.    **Retention of Jurisdiction.**  The Court shall retain jurisdiction to hear and determine all matters arising from this Final Order and its implementation.

41.    **Headings.**  Paragraph headings used herein are solely for a convenience and shall convey no substantive import.

Dated:  September __, 2007
Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

- 23 -

# EXHIBIT B

Jones Day Draft
August 31, 2007

CONFORMED COPY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No.  07-11047(CSS) |
| HOLDINGS, INC., *et al.,* | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| | : | **Ref. Docket No. 17** |

~~INTERIM~~**FINAL** ORDER PURSUANT TO SECTIONS 105(a), 362, AND 364 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014:
(A) APPROVING DEBTOR-IN-POSSESSION FINANCING, (B) GRANTING LIENS
AND ALLOWING SUPERPRIORITY ADMINISTRATIVE CLAIMS,
~~(C) SCHEDULING A FINAL HEARING,~~ AND (~~D~~**C**) GRANTING RELATED RELIEF

Upon the Motion for Interim and Final Orders (I) Authorizing Certain Debtors to Obtain

Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense

Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364(c); (II) Scheduling Final Hearing Pursuant to

Bankruptcy Rule 4001(c); and (III) Granting Related Relief (the "Motion") dated August 6, 2007

of American Home Mortgage Investment Corp. ("AHMIC"), and certain of the other debtors in the

above-captioned chapter 11 cases, seeking, *inter alia*:

(i)  authorization for debtors AHMIC, American Home Mortgage Holdings, Inc.,

American Home Mortgage Corp., American Home Mortgage Acceptance, Inc., American Home

Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

(collectively, the "Borrowers") to obtain postpetition financing (the "DIP Facility") pursuant to

sections 105(a), 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by entering

into that certain $50,000,000 Debtor-in-Possession Loan and Security Agreement dated as of

August ~~7,~~**6,** 2007 (as the same may be amended, supplemented, or otherwise modified from time to

NYI-4020089v1

time, the "DIP Credit Agreement"[1], a copy of which is annexed hereto as Exhibit "A") by and among the Borrowers, the several lenders from time to time party thereto (collectively, the "Lenders"), WLR Recovery Fund III, L.P., in its capacity as Lender and Administrative Agent (collectively, the Lenders and the Administrative Agent, the "Secured Parties"), subject to the terms and conditions set forth in this ~~Interim~~**order (the "Final** Order"**)**, the DIP Credit Agreement, and all related guaranty, security, and other agreements, documents, notes, and instruments executed or delivered pursuant hereto or in connection herewith or therewith (collectively, with the DIP Credit Agreement, and as any of the same shall be amended, restated, supplemented or otherwise modified from time to time in accordance with this ~~Interim~~**Final** Order, the "DIP Financing Documents");

(ii) the granting of superpriority administrative status pursuant to section 364(c)(1) of the Bankruptcy Code for all Obligations of the Borrowers arising hereunder and under the DIP Financing Documents (collectively, the "DIP Obligations");**and**

(iii) the granting of liens, mortgages and security interests in favor of the Administrative Agent for the benefit of the Secured Parties pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code~~; and(iv) requesting, pursuant to Bankruptcy Rules 2001 and 4001, that an interim hearing (the "Emergency Interim Hearing") be held before the Court on an emergency basis to consider entry of this interim order, and further requesting that a final hearing (the "Final Hearing") thereafter be held before the Court to consider entry of a final order (the "Final Order") authorizing the financing contemplated by the DIP Financing Documents, pursuant to the notice and other provisions set forth in the Motion.~~

---

[1] Capitalized terms used herein but not otherwise defined herein shall have the meanings set forth in the DIP Credit Agreement.

The Emergency Interim Hearing having been held on August 7, 2007, and **an interim order (the "Interim Order") having been entered on such date;  and notice having been given of the final hearing with respect to the Motion (the "Final Hearing") in accordance with the Interim Order; and the Final Hearing having been held on September 4, 2007; and** upon all of the pleadings filed with the Court and ~~upon~~**the evidence adduced at, and statements of counsel on** the record of~~,~~ the Emergency Interim Hearing **and the Final Hearing**, and after due deliberation and consideration~~,~~ and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS PURSUANT TO BANKRUPTCY RULE 7052:**

A.    **Commencement of Cases**. On August 6, 2007 (the "Commencement Date"), each of the debtors in the above-captioned cases (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108. No statutory committees have yet been appointed in these cases. Pursuant to order of the Court, the Debtors' cases are being jointly administered under the case number above.

B.    **Jurisdiction and Venue**. The Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for proceedings on the Motion is proper in this Court pursuant to 28 U.S.C. § 1409.

C.    **Notice**. Notice ~~by facsimile of the Emergency Interim hearing has been given to (a) the United States Trustee, (b) counsel for the Administrative Agent, (c) counsel for Bank of America, N.A. as administrative agent with respect to a certain secured credit agreement dated August 10, 2006 ("B of A"), and (d) the forty largest unsecured creditors of the Debtors,~~

~~determined on a consolidated basis.  Such notice satisfies Bankruptcy Rule 4001(c) and (d).~~**of the Final Hearing and the entry of this Final Order was provided pursuant to the Interim Order, and constitutes good and sufficient notice.**

D.    **Necessity of Financing**.  The ability of the Borrowers to finance their operations requires the availability of additional working capital, the absence of which would immediately and irreparably harm the Borrowers, their estates and their creditors.  The DIP Facility will allow the Borrowers to continue the operation of their businesses and administer and preserve the value of their estates, for the benefit of their estates and creditors.

E.    **No Credit Available on Other Terms**.  The Borrowers are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a) and 364(b) of the Bankruptcy Code.

F.    **Willingness to Lend**.  The Lenders are willing to make the DIP Facility available and to make the loans and advances pursuant to the terms of the DIP Financing Documents, but only if (a) the Administrative Agent on behalf of the Lenders is granted a superpriority administrative expense claim with respect to the DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, and (b) the Administrative Agent on behalf of the Lenders is granted a security interest in and liens (collectively, the "DIP Liens") on the "Collateral," as term is defined under the DIP Credit Agreement (the "DIP Collateral") , pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, in the priority set forth herein.

G.    **Business Judgment and Good Faith**.  Based on the record before the Court, the terms of the DIP Facility are fair, just, and reasonable under the circumstances, are appropriate for secured financing to a debtor in possession, reflect the Borrowers' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably

equivalent value and fair consideration.  Based on the record before the Court, the terms of the DIP

Facility have been negotiated in good faith and at arm's length by and among the parties, with all

parties represented by counsel.  Based on the record before the Court, any credit extended under

the terms of the DIP Facility is hereby found to be extended in good faith by the Lenders as that

term is used in section 364(e) of the Bankruptcy Code.  Based on the record before the Court, the

Secured Parties are hereby found to be acting in good faith within the meaning of section 364(e) of

the Bankruptcy Code in closing the transactions contemplated in the DIP Financing Agreements

after the entry of ~~this~~**the** Interim Order.  Based on the record before the Court, none of the Secured

Parties is an "insider" or "affiliate" of any of the Debtors (as such terms are defined in the

Bankruptcy Code).

H.    **Property of the Estate**.  Each item of the DIP Collateral constitutes property of the

estate of at least one Borrower.

I.    **Good Cause**.  Authorizing the DIP Facility and other relief granted herein is

necessary, essential, appropriate and in the best interest of the Borrowers, their creditors, and their

estates, as its implementation will, among other effects, provide the Borrowers with the necessary

liquidity to (a) minimize disruptions to their on-going operations, (b) preserve and maximize the

value of their estates for the benefit of all creditors of the Borrowers, and (c) avoid immediate

irreparable harm to the Borrowers, their creditors, their businesses, their employees, and their

estates.

Based on the foregoing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.      The Motion is granted in accordance with the terms of this ~~Interim~~**Final** Order. Any objections to the Motion with respect to entry of this ~~Interim~~**Final** Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

2.      The Borrowers are hereby authorized, pursuant to the terms of this ~~Interim~~**Final** Order and the terms and conditions of the DIP Financing Documents, to borrow funds under the DIP Facility in such amount or amounts as may be available to or for the benefit of the Borrowers from the Secured Parties~~, which shall not exceed the aggregate amount (the "Interim Amount") equal to $12,000,000 during the period from the entry of this Interim Order through the entry of the Final Order, in accordance with, and subject to, the terms of the DIP Financing Documents and this Interim Order~~.

3.      Except as otherwise expressly set forth in this ~~Interim~~**Final** Order, the terms and conditions of the DIP Financing Documents are hereby approved in all respects. ~~Upon execution and delivery by the Borrowers of the DIP Financing Documents, the~~**The** DIP Financing Documents shall constitute valid and binding obligations of the Borrowers, enforceable against each of the Borrowers in accordance with their terms~~; *provided*, notwithstanding any other provision of this Order or of the DIP Financing Documents, the Borrowers shall not, prior to the entry of the Final Order approving the DIP Financing Documents, borrow an aggregate principal amount of Loans more than the Interim Amount~~.  The DIP Financing Documents shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Borrowers and the Secured Parties. All provisions in the DIP Financing Documents are binding and enforceable in full even if not expressly referenced in this ~~Interim~~**Final** Order.

4.      The Borrowers are hereby authorized and directed to do and perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the

NYI-4020089v1

execution of all guaranty and security agreements, mortgages, financing statements, and other filings and registrations) which may be required or necessary for the Borrowers' performance under the DIP Financing Documents.

5.      Each officer of each Borrower, and each such other individual as may be so authorized by the Board of Directors of such Borrower, acting singly, is hereby authorized to execute and deliver any and all of the DIP Financing Documents and related documents, such execution and delivery to be conclusive of their respective authority to act in the name and on behalf of the Borrowers.

6.      AHMIC is hereby authorized to act as the Administrative Borrower on behalf of each other Borrower with respect to the Borrowers' rights and obligations under the DIP Financing Documents, including, without limitation, requesting Loans thereunder.  Each Borrower shall be jointly and severally liable for all DIP Obligations regardless of whether the DIP Obligations were incurred or requested by AHMIC or any other Borrower.  Any notice given to, or demand made on, AHMIC by the Secured Parties, pursuant to this ~~Interim~~**Final** Order or the DIP Financing Documents shall constitute notice to, or demand on, all Borrowers without any requirement to provide any such notice or demand (or copy thereof) to the other Borrowers.

**7.      Without limiting the joint and several liability of each of the Borrowers for the DIP Obligations, the Debtors shall use reasonable efforts so that the Borrowers that receive the benefit of funds advanced under the DIP Credit Facility (or the services contemplated thereunder or hereunder) repay their share thereof on a dollar-for-dollar basis. To the extent a Debtor (i) receives funds advanced under the DIP Facility (including as a result of inter-company balances incurred after the Commencement Date to the extent such balances arise from the incurrence of DIP Obligations), or (ii) receives a post-petition inter-company**

**loan or transfer of funds advanced under the DIP Facility (including as a result of the**

**Debtors' cash management system or otherwise) (each a "Beneficiary Debtor"), and such**

**DIP Obligations are repaid, or such post-petition inter-company loan or transfer is made**

**(including from cash collateral) (each an "Advance") by any other Debtor that is an obligor**

**under the DIP Facility (an "Advancing Debtor"), the Advancing Debtor shall have (a) an**

**allowed claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code against the**

**Beneficiary Debtor for the amount of such Advance, junior in all respects to the**

**superpriority administrative expense claim granted to the Secured Parties pursuant to**

**paragraph 8 of this Final Order.**

**ADMINISTRATIVE CLAIM**

**8.**        7. Subject to the provisions of paragraph 9**10** hereof, as protection to the Secured

Parties and to secure the repayment of the DIP Obligations, all of the DIP Obligations shall have

the status of allowed superpriority administrative expense claims, in accordance with section

364(c)(1) of the Bankruptcy Code, and shall have priority over all administrative expense claims

and unsecured claims against the Borrowers, now existing or hereafter arising, of any kind or

nature whatsoever, including, without limitation, any adequate protection-related claims and any

administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328,

330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, to the

extent permitted by applicable law.

**LIENS AND COLLATERAL**

**9.**        8. As further protection to the Secured Parties and to secure the repayment of the

DIP Obligations, the Administrative Agent, for the benefit of the Secured Parties, shall have and is

hereby granted: (a) pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, and

enforceable perfected first priority security interest in and lien on all the property and assets of each of the Borrowers and their estates of every kind or type whatsoever, tangible, intangible, real, personal and mixed, whether now owned or existing or hereafter acquired or arising and regardless of where located, whether within the United States or in other locations (including, without limitation, all property of the estates of each of the Borrowers within the meaning of section 541 of the Bankruptcy Code)**, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code (the "Avoidance Actions"),** that is not otherwise encumbered by valid, perfected, enforceable, and nonavoidable liens and security interests existing on or in the DIP Collateral on the Commencement Date, (collectively, the "Pre-Existing Liens"); and (b) pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, and enforceable perfected second priority security interest in and lien on all the property and assets of each of the Borrowers and their estates of every kind or type whatsoever, tangible, intangible, real, personal and mixed, whether now owned or existing or hereafter acquired or arising and regardless of where located, whether within the United States or in other locations (including, without limitation, all property of the estates of each of the Borrowers within the meaning of section 541 of the Bankruptcy Code), **but excluding any Avoidance Actions, that is encumbered by Pre-Existing Liens,** *provided*, should any such Pre-Existing Lien be voided, extinguished or determined not be valid ~~that is encumbered by the Pre-Existing Liens~~, the Liens granted to the Administrative Agent hereunder shall, notwithstanding anything to the contrary in Section 551 of the Bankruptcy Code, be deemed perfected first priority liens without any further action by the Secured Parties or the Court.

**10.** ~~9.~~ Notwithstanding anything to the contrary contained in the Motion, the DIP Financing Documents**, the Interim Order,** or ~~in~~ this ~~Interim~~**Final** Order, the Secured Parties shall not (i) be granted any liens, security interests or encumbrances in any of the BofA Collateral, (ii)

seek to enforce, directly or indirectly, any superpriority administrative expense claim or any other

priority claim against American Home Mortgage Servicing, Inc. or in respect of any asset which

constitutes the BofA Collateral or (iii) amend the definition of the term "BofA Collateral" in the

DIP Financing Documents or amend paragraphs 9, 30**10, 31**(b) or 32**33**(b) of this ~~Interim~~**Final**

Order in a manner that is adverse to the rights of the Administrative Agent or the Pre-Petition

Secured Parties (as such respective terms are defined in the Interim Order (I) Authorizing Debtors'

Limited Use Of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection To

Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant To Bankruptcy

Rule 4001 (together with any final order entered in respect thereof, the "Cash Collateral Order"))

under the Cash Collateral Order without the prior written consent of BofA (which may be withheld

in its sole discretion), in each case unless and until the Indebtedness (as defined in the Cash

Collateral Order) has been indefeasibly paid in full in cash.  The Secured Parties acknowledge that

pursuant to the Cash Collateral Order, BofA and the Pre-Petition Secured Parties (as such term is

defined in the Cash Collateral Order) have been granted, inter alia, certain adequate protection

rights as set forth therein and such order provides that the BofA Collateral is separate and distinct

from, and shall not form a part of, any of the DIP Collateral.

     **11.**   ~~10.~~The above-described liens and security interests granted to the Administrative

Agent in the DIP Collateral herein shall not (a) be subject to any lien or security interest that is

avoided and preserved for the benefit of the Borrowers' estates as a result of any Avoidance

Actions, or (b) be subordinated to or made pari passu with any other lien or security interest

pursuant section 364(d) of the Bankruptcy Code or otherwise.

     **12.**   ~~11.~~No other liens or priority status, other than Permitted Liens, shall have priority

superior to or pari passu with those granted in the DIP Collateral by this ~~Interim~~**Final** Order to the

Secured Parties, or shall be granted while any portion of the DIP Obligations remains outstanding,

absent the express written consent of the Administrative Agent.

**13.**    ~~12.~~ This ~~Interim~~**Final** Order shall be sufficient and conclusive evidence of the

validity, perfection, and priority of the Administrative Agent's liens upon the Collateral, without

the necessity of filing or recording any financing statement, mortgage or other instrument or

document which may otherwise be required under the law of any jurisdiction or the taking of any

other action to validate or perfect such liens or security interests in the DIP Collateral or to entitle

the Administrative Agent to the priorities granted herein.  The Administrative Agent shall not be

required to file any financing statements, mortgages, notices of lien or similar instruments in any

jurisdiction or filing office, or to take any other action in order to perfect the Administrative

Agent's liens and security interests granted by or pursuant to this ~~Interim~~**Final** Order or the DIP

Financing Documents.

**14.**    ~~13. Upon entry of the Final Order, pursuant~~**Pursuant** to sections 364(c)(2) and (3)

of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement

that requires the consent or approval of one or more parties, or requires the payment of any fees or

obligations to any governmental entity, in order for any of the Borrowers to pledge, grant, sell, or

otherwise transfer any such interest or the proceeds thereof or other DIP Collateral, is and shall be

deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and

effect with respect to the transactions granting the Secured Parties a senior security interest in such

interest or the proceeds of any assignment and/or sale thereof by any of the Borrowers in favor of

the Secured Parties in accordance with the terms of the DIP Financing Documents.

**15.**    ~~14.~~ Should the Secured Parties, in their sole discretion (but not as a requirement

hereunder), from time to time choose to file financing statements, mortgages, notices of lien or

- 11 -

similar instruments, take possession of any **DIP** Collateral, or take any other action to validate or perfect any such security interests or Liens, the Borrowers and their officers are hereby directed to execute any such documents or instruments as the Secured Parties may reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of the entry of this**the** Interim Order.

16.    15. The Secured Parties may, in their discretion, file a copy of this Interim**Final** Order as a financing statement or mortgage with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Borrowers have real or personal property, and, in such event, the applicable filing or recording officer or registrar is authorized to file or record such copy of this Interim**Final** Order.

17.    16. Until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Financing Documents, the Borrowers shall not in any way prime or otherwise adversely affect the liens in the DIP Collateral granted under this Interim**Final** Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien (other than Permitted Liens) or claim pursuant to sections 364(c)(1), 364(d), or 507(b) of the Bankruptcy Code, or otherwise.

18.    17. Until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Financing Documents, the Borrowers shall not in any way grant junior encumbrances on the DIP Collateral and shall not otherwise encumber otherwise unencumbered assets or unencumbered estate property.

19.    18. Upon entry of the Final Order, neither**Neither** the DIP Collateral nor the Secured Parties shall be subject to surcharge, pursuant to sections 506(c) or 105 of the Bankruptcy Code or otherwise, by any of the Debtors or any other party, until all DIP Obligations are

- 12 -

indefeasibly paid in full to the Secured Parties in cash, and no such consent shall be implied from any action, inaction, or acquiescence by the Secured Parties, including but not limited to the funding of the Borrowers' ongoing operations by the Secured Parties.

**20.**      19. In no event shall the Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

**21.**      20. Notwithstanding anything in this Interim**Final** Order to the contrary, the liens and security interests granted to the Administrative Agent shall not extend to any assets that are not property of the **Borrowers'** estates.

**CARVE-OUT**

**22.**      21. Notwithstanding the foregoing provisions of this Interim**Final** Order, the following amounts shall be payable from and chargeable against the DIP Collateral (and prior to the liens and superpriority claims granted to the Administrative Agent herein) (the "Carve-Out"): (a) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court (collectively, the "UST/Clerk Fees"); and (b) allowed fees and expenses of attorneys, accountants, and other professionals retained in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code (except to the extent such fees and expenses are incurred for services rendered in connection with the prosecution of actions, claims or causes of action against the Secured Parties or in improperly preventing or hindering or unreasonably delaying, whether directly or indirectly, the Secured Parties' assertion or enforcement of the Secured Parties Liens or realization upon the DIP Collateral) (the "Priority Professional Expenses"), but the amount entitled to priority under this sub-clause shall not exceed $5,000,000 outstanding in the aggregate at any time (the "Carve-Out Amount"); *provided*, after the Administrative Agent has provided notice to the Borrowers pursuant to the terms of the DIP Financing Documents of the occurrence

- 13 -

of an Event of Default or a default hereunder by the Borrowers in any of their obligations under this ~~Interim~~**Final** Order, any payments actually made to such professionals after the occurrence of such Event of Default or default hereunder, under sections 330 and 331 of the Bankruptcy Code or otherwise, to the extent allowed by final order of the Court, shall reduce the Carve-Out Amount on a dollar-for-dollar basis.  Nothing contained herein shall be construed as consent to the allowance of any fees and expenses referred to above and shall not affect any right of the Secured Parties to object to the reasonableness of such amounts.

**23.**    ~~22.~~ So long as an Event of Default shall not have occurred, the Borrowers shall be permitted to pay the Priority Professional Expenses of the kind specified in section 503(b) of the Bankruptcy Code allowed under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, within the parameters of this ~~Interim~~**Final** Order and the amounts to be advanced pursuant to the DIP Financing Documents, without reduction of the Carve-Out Amount; *provided* the aggregate of any such payments made on or after the occurrence of a Default or Event of Default to professionals shall not exceed the Carve-Out Amount.  The Borrowers shall not be permitted under any circumstance to pay~~,~~ **from the DIP Collateral (including** from the Carve-Out Amount ~~or otherwise,~~**)** any fees or expenses incurred by any party, including the Debtors or the Creditors' Committee, in connection with the filing and prosecution or defense of any claims, causes of action, adversary proceedings or other litigation against the Secured Parties, including, without limitation, challenging the amount, validity, priority or enforceability of, or asserting any defense, counterclaim, or offset to, the DIP Obligations or the liens granted to the Administrative Agent in respect thereof.

**REMEDIES**

**24.**   ~~23.~~Notwithstanding the provisions of section 362 of the Bankruptcy Code and without any further order of, or application or motion to, the Court, in the event of the occurrence of an Event of Default, and at all times thereafter, and without any restriction or restraint by any stay under section 362 of the Bankruptcy Code against the enforcement of the liens and security interests or any other rights granted to the Secured Parties pursuant to the DIP Financing Documents, the Administrative Agent may, by written notice to the Borrowers as provided in the DIP Financing Documents, **with copies sent to counsel to BofA and to counsel to the official committee of unsecured creditors appointed in these cases (the "Committee"),** (a) terminate forthwith all or any portion of the DIP Facility and the Secured Parties' obligation to make any further loans or advances, (b) declare the DIP Obligations to be immediately due and payable, and (c) take any and all actions and exercise any and all rights and remedies allowed under the DIP Financing Documents, which the Secured Parties may deem appropriate.  Notwithstanding the foregoing, but without limiting any of the Secured Parties' rights or remedies, the Secured Parties shall not consummate foreclosure on the DIP Collateral or otherwise seize control of assets of the Borrowers' estates (it being understood that the giving of a notice of exclusive control or similar notice under any control agreement shall not constitute a foreclosure on the DIP Collateral or the seizing of control of assets of the Borrowers) absent five (5) business days' prior written notice of an Event of Default to the Borrowers, counsel to BofA, counsel to ~~any official committee appointed in these cases~~**the Committee**, and the United States Trustee.  The remedies granted in this paragraph ~~23~~**24** are subject in all respects to the provisions of paragraph ~~9~~**10** hereof and the provisions of the Cash Collateral Order.

- 15 -

**25.**    ~~24.~~ The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted to grant the liens and security interests in the DIP Collateral to the Secured Parties contemplated by the DIP Financing Documents and this ~~Interim~~**Final** Order, and is further lifted to the extent of the exercise by the Secured Parties of any rights or remedies under this ~~Interim~~**Final** Order or the DIP Financing Documents, subject only to the notice requirement set forth in the foregoing paragraph.

**OTHER PROVISIONS**

**26.**    ~~25.~~ **Use of Proceeds.**  From and after the Commencement Date, the Borrowers shall use the proceeds of the Loans solely in accordance with and subject to the conditions set forth in this ~~Interim~~**Final** Order and the DIP Financing Documents.  Nothing in this ~~Interim~~**Final** Order shall be construed to require the Lenders to make advances or extensions of credit or other financial accommodations to permit the Borrowers to make any payments, except to the extent expressly provided for in this ~~Interim~~**Final** Order and the DIP Financing Documents.

**27.**    ~~26.~~ **Escrows.**  The Borrowers are hereby directed to (a) execute and deliver such documentation as required pursuant to the DIP Financing Documents to establish the Interest Escrow Account and the Lender Expenses Escrow Account, and (b) borrow Loans under the DIP Facility to fund the Interest Escrow Account and the Lender Expenses Escrow pursuant to the terms of the DIP Financing Documents, prior to any other borrowings under the DIP Facility.

**28.**    ~~27.~~ **Bank Accounts.**  Any proceeds of the sale, lease or other disposition of the DIP Collateral, including all Cash Collateral of the Secured Parties, shall be used in accordance with the provisions of this ~~Interim~~**Final** Order and the DIP Financing Documents and shall be applied in payment of the Borrowers' obligations under, and in the manner provided in, the DIP Financing Documents.  The Borrowers are authorized and directed to deposit all proceeds of the DIP

- 16 -

Collateral into such account or accounts as the Administrative Agent shall direct and as provided for in the DIP Financing Documents, and upon such deposit, **and until all DIP Obligations have been indefeasibly paid in full in cash,** all proceeds shall become the sole and exclusive property of the Secured Parties and may be applied by the Administrative Agent against the Borrowers' obligations as provided in the DIP Financing Documents.  The Borrowers are deemed to have irrevocably waived any right to direct the manner of application of any payments to the Secured Parties or any other receipts by the Secured Parties of proceeds of any of the DIP Collateral, including all of the Lenders' Cash Collateral, other than as expressly set forth in this ~~Interim~~**Final** Order and the ~~Postpetition~~**DIP** Financing Documents.  The Borrowers are hereby directed to establish one or more bank accounts as provided in the DIP Financing Documents, into which all of the Lenders' Cash Collateral shall be held.

**29.**    ~~28.~~**Immediate Effectiveness.**  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~**Final** Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~**Final** Order.

**30.**    ~~29.~~**Survival.**  (a) The terms and provisions of this ~~Interim~~**Final** Order and the DIP Financing Documents, and the liens and security interests granted to the Administrative Agent and the superpriority status of the administrative claims and payment provisions contained in this ~~Interim~~**Final** Order and the DIP Financing Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, and DIP Financing Documents are terminated.

- 17 -

(b)    The liens, security interests and the administrative priorities and other rights and

remedies granted to the Secured Parties by the provisions of this ~~Interim~~**Final** Order, as well as the

Borrowers' obligations pursuant to the DIP Financing Documents and this ~~Interim~~**Final** Order,

shall continue beyond and survive the expiration of this ~~Interim~~**Final** Order, and, to the extent

permitted by applicable law, shall not be modified, altered or impaired in any manner by (a) any

other financing or extension of credit or incurrence of indebtedness by any of the Borrowers under

section 364 of the Bankruptcy Code or otherwise (except as contemplated by the DIP Financing

Documents), (b) the entry of an order or orders confirming any plan or plans of reorganization or

liquidation in these cases, or (c) the entry of an order converting these cases to cases under chapter

7 of the Bankruptcy Code, suspending, or dismissing these cases.

(c)    This ~~Interim~~**Final** Order and DIP Financing Documents shall be valid, binding and

enforceable by the Secured Parties against the Borrowers, their respective successors and assigns,

including, without limitation, any chapter 11 or chapter 7 trustee appointed as a representative of

any of the Borrowers' estates; *provided*, the Secured Parties shall have no obligation to extend any

financing to any such chapter 11 or chapter 7 trustee or similar person.

(d)    If any provision of this ~~Interim~~**Final** Order is hereafter modified, vacated, reversed

or stayed by subsequent order of this or any other court for any reason, such modification, vacation,

reversal or stay shall not affect the validity and priority of any of the DIP Obligations incurred

under this ~~Interim~~**Final** Order and the DIP Financing Documents, and, prior to the effective date of

any such modification, vacation, reversal or stay, the validity, enforceability or priority of the DIP

Obligations shall be governed in all respects by the original provisions of this ~~Interim~~**Final** Order,

and the Secured Parties and Lender-Related Parties shall be entitled to all the rights, privileges and

benefits granted herein.  The transactions contemplated by the DIP Facility have been entered into

by the Secured Parties in good faith, and, as a result, the Secured Parties are entitled to the

protections afforded by Section 364(e) of the Bankruptcy Code in the event of any reversal or

modification of this ~~Interim~~**Final** Order.

(e)    Under no circumstances, except with the written consent of the Administrative

Agent, shall (a) any plan of reorganization or liquidation in any of the Borrowers' chapter 11 cases

be confirmed or become effective unless such plan provides that all DIP Obligations are paid in

full in cash on or before the effective date of such plan; or (b) the liens, rights and remedies granted

to the Secured Parties pursuant to or in connection with the DIP Financing Documents and this

~~Interim~~**Final** Order be modified, altered or impaired in any manner by a chapter 11 plan or order of

confirmation of a chapter 11 plan for any of the Borrowers.

**31.**    ~~30.~~**Indemnities.**  (a) Each Borrower shall hold the Administrative Agent, each

Lender-Related Party and each Participant (the Administrative Agent, each Lender-Related Party

and each Participant, an "Indemnified Party") harmless from and indemnify any Indemnified Party,

on an after-Tax basis, against all liabilities, losses, damages, judgments, costs and expenses of any

kind which may be imposed on, incurred by or asserted against such Indemnified Party

(collectively, the "Indemnified Liabilities") relating to or arising out of this Loan Agreement, the

Note, any other Loan Document or any transaction contemplated hereby or thereby, or any

amendment, supplement or modification of, or any waiver or consent under or in respect of, this

Loan Agreement, the Note, any other Loan Document or any transaction contemplated hereby or

thereby.  Without limiting the generality of the foregoing, each Borrower agrees to hold any

Indemnified Party harmless from and indemnify such Indemnified Party against all Indemnified

Liabilities with respect to all mortgage loans relating to or arising out of any violation or alleged

violation of any environmental law, rule or regulation or any consumer credit laws, including

- 19 -

without limitation laws with respect to unfair or deceptive lending practices and predatory lending practices, the Truth in Lending Act or the Real Estate Settlement Procedures Act. In any suit, proceeding or action brought by an Indemnified Party in connection with any mortgage loan for any sum owing thereunder, or to enforce any provisions of any mortgage loan, each Borrower will save, indemnify and hold such Indemnified Party harmless from and against all expense, loss or damage suffered by reason of any defense, set-off, counterclaim, recoupment or reduction or liability whatsoever of the account debtor or obligor thereunder, arising out of a breach by any Borrower of any obligation thereunder or arising out of any other agreement, indebtedness or liability at any time owing to or in favor of such account debtor or obligor or its successors from any Borrower. Each Borrower also agrees to reimburse an Indemnified Party as and when billed by such Indemnified Party for all such Indemnified Party's reasonable costs and expenses incurred in connection with the enforcement or the preservation of such Indemnified Party's rights under this **Final** Order or any DIP Financing Document or any transaction contemplated hereby or thereby, including without limitation the reasonable fees and disbursements of its counsel. Each Borrower hereby acknowledges that, notwithstanding the fact that the Loans are secured by the **DIP** Collateral, the obligation of each Borrower with respect to each Loan is a recourse obligation of each Borrower. The foregoing to the contrary notwithstanding, the Borrowers shall have no obligation to any Indemnified Party under this paragraph with respect to any Indemnified Liability that a court of competent jurisdiction finally determines to have resulted from the bad faith, gross negligence, or willful misconduct of such Indemnified Party. In no event, however, shall any Indemnified Party be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

(b) Prior to the date when the Indebtedness (as defined in the Cash Collateral Order) has been indefeasibly paid in full in cash, no proceeds from any of the BofA Collateral may be used to pay amounts payable under this paragraph 30.**31.**

**32.**    31. **Exculpation.**  Nothing in this**the** Interim **Order, this Final** Order, the DIP Financing Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Parties any liability for any claims arising from the pre-petition or post-petition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the Secured Parties comply with their obligations under the DIP Financing Documents and their obligations, if any, under applicable law (including the Bankruptcy Code)**Furthermore,** (a) the Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Borrowers. **The foregoing sentence to the contrary notwithstanding, no Secured Party shall be exculpated from liability that a court of competent jurisdiction finally determines to have resulted from the bad faith, gross negligence, or willful misconduct of such Secured Party.**

**33.**    32. **Payment of Lenders' Fees and Expenses.**  (a) The Borrowers are hereby authorized and directed to pay the fees as they come due under the DIP Financing Documents to the Secured Parties without further Court order, including without limitation, the Facility Fee, the commitment fee set forth in Section 3.07(b) of the DIP Credit Agreement, and all reasonable out-of-pocket costs and expenses of the Secured Parties (including reasonable attorney's fees and

- 21 -

expenses) as provided for under the DIP Financing Documents. The Borrowers shall send copies of invoices received by them for such out-of-pocket costs and expenses (including attorneys' fees and expenses) to (i) the United States Trustee, and (ii) counsel to ~~any official committee appointed in these cases~~**the Committee**. The payment of the fees expenses and disbursements set forth in this paragraph shall be made within ten (10) days after the receipt by the Debtors (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege and work product doctrines) and without the necessity of filing formal fee applications, including amounts arising before and after the Commencement Date; *provided, however,* that the Debtors, the United States Trustee, and the Committee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Borrowers pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors, the United States Trustee, or the Committee files with the Court a motion or pleading, on at least ten (10) days prior written notice to the Administrative Agent of any hearing on such motion or pleading, setting forth its specific objection(s) to the Disputed Invoiced Fees.

(b) Prior to the date when the Indebtedness (as defined in the Cash Collateral Order) has been indefeasibly paid in full in cash, no proceeds from any of the BofA Collateral may be used to pay amounts payable under this paragraph ~~32.~~**33.**

**34.**    ~~33.~~**No Waiver of Secured Parties' Rights.** Notwithstanding anything to the contrary herein, the entry of this ~~Interim~~**Final** Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Secured Parties to (a) request the conversion of any of the Borrowers' cases to cases under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, examiner,

- 22 -

fiduciary, or responsible person with expanded powers, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization or liquidation for any of the Borrowers.

**35.**    ~~34.~~ **Conflicts.** To the extent of any conflict between or among the express terms or provisions of any of the DIP Financing Documents and the Motion, the terms and provisions of the DIP Financing Documents shall govern. To the extent of any conflict between or among the express terms or provisions of any of the DIP Financing Documents or the Motion on the one hand, and the terms and provisions of this ~~Interim~~**Final** Order on the other hand, the terms and provisions of this ~~Interim~~**Final** Order shall govern.

**36.**    ~~35.~~ **Amendments.** ~~The~~**Upon three (3) days prior written notice to the counsel to the Committee and counsel to BofA, the** Borrowers and the Secured Parties may finalize, amend, modify, supplement or waive any provision of the DIP Financing Documents if such amendment, modification, supplement or waiver is permitted under the terms of the DIP Financing Documents and is not material (in the good faith judgment of the Secured Parties and the Borrowers) without any need to apply to, or receive further approval from, the Court.

**37.**    ~~36.~~ **No Proofs of Claim.** The Secured Parties are each hereby relieved of the requirement to file proofs of claim in these cases with respect to any DIP Obligations.

**38.**    ~~37.~~ **Reservation of Rights Under Certain Bankruptcy Code Provisions.** No rights of any entity in connection with a contract or transaction of the kind listed in §§ 555, 556, 559, 560, and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the entry of this ~~Interim~~**Final** Order.

**39.**    ~~38.~~ **No Third Party Beneficiaries.**  No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this ~~Interim~~**Final** Order or the DIP Financing Documents.

**40.**    ~~39.~~ **Retention of Jurisdiction.**  The Court shall retain jurisdiction to hear and determine all matters arising from this ~~Interim~~**Final** Order and its implementation.

**41.**    ~~40.~~ **Headings.**  Paragraph headings used herein are solely for a convenience and shall convey no substantive import.

~~41.~~    ~~**Final Hearing.**~~ ~~The Final Hearing on the Motion shall be held before the Court on the 4th day of September 2007 at 11:00 a.m.  in Courtroom 6 at 824 Market Street, Wilmington, Delaware 19801.  The Borrowers shall mail copies of this Interim Order and notice of the Final Hearing (including the Objection Deadline, as such term is hereinafter defined) to the parties that were given notice of the Interim Hearing and to any other party which has filed a request for notices with this Court.  Any party in interest objecting to the relief sought in the Final Order shall file with the court (with a courtesy copy to chambers) its written objection and serve such objection so as to be received no later than August 27, 2007 by 4:00 p.m. local Delaware time (the "Objection Deadline"), on (i) Young, Conaway Stargatt & Taylor, LLP, The Brandywine Building, 100 West Street, 17th Floor, Wilmington, Delaware 19889-0391, Attention Joel Waite, Esq., Counsel to the Debtors; (ii) Jones Day, 222 East 41st Street, New York, New York 10017, Attention: Corinne Ball, Esq. and Erica M. Ryland, Esq. and Greenberg Traurig LLP, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801, Attention: Victoria Counihan, Esq., Counsel to the Administrative Agent; (iii) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attention:  Margot B. Schonholtz, Esq., and Scott D. Talmadge, Esq. and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801,~~

NYI-4020089v1

~~Attention: Laurie Selber Silverstein, Esq., Counsel for Bank of America, N.A.; and (iv) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801.~~

Dated: ~~August 7,~~**September___,** 2007

Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

NYI-4020089v1

Document comparison done by DeltaView on Friday, August 31, 2007 4:54:30 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYI/NYI/4020232/1 |
| Document 2 | interwovenSite://NYI/NYI/4020089/1 |
| Rendering set | JD Blackline |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 96 |
| Deletions | 114 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 210 |