# **EXHIBIT A**

000154



Page 1

Zach Oppenheimer

Senior Vice President
Single-Family Mortgage Business

1835 Market Street, Suite 2300
Philadelphia, PA 19103
215 575 1440
215 575 1000 (fax)
zach_oppenheimer@fanniemae.com

Via Facsimile

August 24, 2007

Mr. Richard Loeffler, Executive Vice President
American Home Mortgage Corporation
538 Broadhollow Road
Melville, NY 11747

Re: Compromise and Settlement Agreement relating to Fannie Mae Mortgage Selling And Servicing Contract

Dear Mr. Loeffler:

This compromise and settlement agreement (the "Agreement") sets forth the agreement between Fannie Mae and American Home Mortgage Corporation (the "Company") regarding, among other things, the status of the Company's Mortgage Selling and Servicing Contract with Fannie Mae, as supplemented by the Fannie Mae Guides (together, the "Contract"), and the servicing of the Fannie Mae Portfolio (as defined below) by the Company pending a sale of the servicing rights (the "Servicing Rights") relating to a portfolio of mortgages owned by Fannie Mae (the "Fannie Mae Portfolio"). Fannie Mae has been advised of a security interest claimed by Bank of America, N.A. ("Bank of America"), in its capacity as Administrative Agent for certain lenders under that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 (the "Credit Agreement"), in the Servicing Rights under the terms of the Credit Agreement.

Prior to July 31, 2007, the Company had been servicing the Fannie Mae Portfolio on Fannie Mae's behalf. By written notice dated July 31, 2007, Fannie Mae notified the Company that it was terminating the Contract for cause, effective immediately (the "Termination Notice"). On August 6, 2007, the Company filed a voluntary petition for Chapter 11 bankruptcy protection (the "Bankruptcy Case") in the United States Bankruptcy Court in the District of Delaware (the "Bankruptcy Court"). The Company disputes whether Fannie Mae effectively terminated the Contract prior to the filing of the Bankruptcy Case.

The parties, without in any way conceding the validity or sufficiency of any claim or contention of the other with respect to the effectiveness of the Termination Notice, now desire to enter into this compromise and settlement agreement.

This Agreement represents the agreement and understanding reached between Fannie Mae and the Company and supersedes all prior discussions.

000155

Page 2

Intending to be legally bound hereby and in consideration of the mutual agreements and benefits as set forth in this Agreement, subject to Bankruptcy Court approval, Fannie Mae and the Company agree as follows:

1. Subject to and in consideration of Company's strict compliance with all obligations and requirements contained in this Agreement, Fannie Mae agrees (a) to allow Company to perform the duties of a loan servicer with respect to the Fannie Mae Portfolio on an interim basis on behalf of Fannie Mae under the terms set forth in this Agreement and the provisions of the Contract which govern the day-to-day servicing of loans ("Service") and (b), without prejudice to Fannie Mae's rights in connection with its Termination Notice, the Company shall be deemed an approved Fannie Mae servicer on an interim basis during the term of this Agreement. For performing such duties on an interim basis, Company is authorized to collect the same fees as were payable in connection with the Servicing Rights under the Contract prior to the delivery of the Termination Notice and the filing of the Bankruptcy Case.

2. Fannie Mae and the Company have agreed that the Company will continue to Service the Fannie Mae Portfolio in order to allow Company to market the Servicing Rights and to negotiate and close a sale of the Servicing Rights on or before October 31, 2007. The following conditions must be satisfied by the dates set forth below and failure to satisfy any such condition, unless otherwise agreed by Fannie Mae, shall constitute an Event of Default:

    (a) Company must engage, subject to Bankruptcy Court approval, a broker or investment banker to solicit bids for the Servicing Rights, with bids to be obtained on both (1) a sale subject to full recourse and full representations and warranties from the purchaser and (2) a sale without recourse and without representations and warranties being assumed by the purchaser, with solicitations for bids issued on or before August 20, 2007;

    (b) Bids must be received on or before September 6, 2007, or such other date as is established by the Bankruptcy Court;

    (c) A binding agreement for the acquisition of the Servicing Rights by a Fannie Mae-approved servicer (a "Transferee Servicer") on terms which shall include the assumption by the purchaser of the responsibilities, duties, selling warranties, and loan-level recourse obligations set forth in the Contract and which are otherwise reasonably acceptable to Fannie Mae must be executed on or before September 17, 2007 or such other date as is established by the Bankruptcy Court, provided however, (i) that the Company shall have the right to elect, prior to the execution of

000156

Page 3

    the binding agreement with the purchaser, to pay Fannie Mae an additional $3.25 million at closing in exchange for Fannie Mae waiving the requirement that the purchaser assume the loan-level recourse obligations and selling warranties (the "Recourse/Warranty Buy-Out Fee") and (ii) Fannie Mae, in its sole and absolute discretion, may waive the requirement that the purchaser be an approved Fannie Mae servicer when the agreement is executed; and

    (d)    The closing of the sale of the Servicing Rights (the "Closing") must occur on or before October 31, 2007, unless Fannie Mae, in its sole and absolute discretion, waives such condition.

3.    If Company closes a sale of the Servicing Rights on or before October 31, 2007, provided Company has fully complied with all obligations under the terms of this Agreement, the proceeds from such sale (the "Sale Proceeds") shall be allocated and paid at Closing in the following order: (a) first to Fannie Mae in payment for (i) any and all amounts due from the Company for any valid claims, including, without limitation, repurchase and make whole obligations, mortgage insurance-related amounts, foreclosure sale proceeds, technology fees, including DO® and DU® fees, and any unpaid guaranty fees and (ii) the Recourse/Warranty Buy-Out Fee, if the Company elects to pay it pursuant to paragraph 2(c) above; (b) then to Bank of America to the extent of any amounts then owed by Company to Bank of America in accordance with the terms of the Credit Agreement; (c) then to any other party asserting a valid and perfected lien in any Company rights to the Servicing Rights; and (d) finally to Company. Company acknowledges that there is no certainty that any Sale Proceeds will become available to Company after payment of all obligations due under this Agreement to Fannie Mae, Bank of America, and any other creditors with valid and perfected liens or claims. Five business days prior to the scheduled Closing, Fannie Mae will provide the Company with a listing of the amounts due from the Company pursuant to clause (a)(i) above. Company shall have three business days to dispute any items claimed by Fannie Mae. Undisputed items shall be paid to Fannie Mae at Closing. If Company disputes any items claimed by Fannie Mae, proceeds in the amount claimed by Fannie Mae shall be held in escrow by the Company pending agreement of the parties or an order of the Court resolving the dispute. If Company elects to pay the Recourse/Warranty Buy-Out Fee, Fannie Mae's claims to be paid at Closing on account of loan repurchases and make whole obligations relating to selling warranties shall not exceed $2,966,965.94.

4.    Because Company will Service the Fannie Mae Portfolio pursuant to the terms of this Agreement, Company and Fannie Mae hereby agree on certain controls for borrower payments and access to funds and loan information. Company will permit

000157

Page 4

Fannie Mae to have representatives physically located at the Company's office until a sale of the Servicing Rights is completed or until the Loan Files (as defined below) and related funds may be transferred from Company to another servicer (as more fully described below). To protect Fannie Mae's interests in the Fannie Mae Portfolio, any representative shall have the authority to monitor and implement the following with respect to Fannie Mae loans:

(a) Company shall process all mortgage payments through its existing lockbox arrangement and shall continue to forward all payments on Fannie Mae loans to the applicable Fannie Mae P&I and T&I custodial accounts within 48 hours of receipt and Fannie Mae shall have the right to have all such funds wired to Fannie Mae on a daily basis;

(b) all mortgage payoffs received shall be recorded and copies of all such payments shall be made available to Fannie Mae on a daily basis, with all payoff proceeds being deposited into the applicable Fannie Mae custodial accounts and wired on a daily basis to Fannie Mae;

(c) Company shall timely remit to Fannie Mae all guaranty fees due to Fannie Mae;

(d) Company shall process and pay all insurance policy premiums, renewal notices, tax bills, and other escrow obligations related to Fannie Mae loans; Fannie Mae will wire sufficient amounts to cover all such escrow checks to the appropriate Company disbursement account upon review of information reasonably sufficient to identify the items being paid; and,

(e) Fannie Mae representatives will have access at reasonable times to the Company's daily work records relating to the Fannie Mae Portfolio, including trial balances.

5. Events of Default. The occurrence of any of the following shall constitute an "Event of Default" hereunder:

(a) Company's failure to adhere to or perform any requirement as set forth in the Agreement;

(b) Company fails to meet the conditions set forth in Section 2 hereof;

(c) Company fails to provide access at reasonable times to Fannie Mae of the Loan Files in Company's possession and related funds; or

Page 5

(d) Company fails to continue to provide an acceptable level of servicing of the Fannie Mae Portfolio in accordance with the provisions of the Contract which govern the day-to-day servicing of loans.

6. If an Event of Default shall occur and continue after Company's receipt of two business days notice from Fannie Mae and an opportunity to cure (an "Uncured Event of Default"), Fannie Mae shall be entitled to:

(a) take possession of and transfer to another servicer all files, documents records, and electronic data relating to the Fannie Mae Portfolio (the "Loan Files");

(b) take possession of and transfer to another servicer all custodial funds held by Company;

(c) immediately engage another servicer to perform the servicing of the Fannie Mae Portfolio;

(d) assert any claims it may have against the Company and its estate; and

(e) change Company's status as set forth in paragraph 1 hereof.

Upon the occurrence of an Uncured Event of Default, Company agrees to cooperate with Fannie Mae in immediately moving the Loan Files, related funds, and servicing of the Fannie Mae Portfolio to another servicer.

Notwithstanding anything to the contrary in this paragraph 6, Fannie Mae shall not be required to provide notice and an opportunity to cure with respect to an event of default that occurs because a sale of the Servicing Rights fails to close on or before October 31, 2007. Such an event of default is deemed to be an "Uncured Event of Default" for the purposes of this paragraph 6.

7. Company acknowledges and agrees that (a) Company has not been released from any of Company's obligations and responsibilities to Fannie Mae that existed prior to delivery of the Termination Notice, (b) Fannie Mae has not forgiven any such obligations and responsibilities, (c) Company has not been released from, nor has Fannie Mae forgiven, any of Company's obligations and responsibilities to Fannie Mae that may be identified or discovered subsequent to delivery of the Termination Notice, and (d) Company shall not acquire servicing of additional Fannie Mae loans, sell additional loans to Fannie Mae or seek to assume the Contract.

000158

Page 5

(d) Company fails to continue to provide an acceptable level of servicing of the Fannie Mae Portfolio in accordance with the provisions of the Contract which govern the day-to-day servicing of loans.

6. If an Event of Default shall occur and continue after Company's receipt of two business days notice from Fannie Mae and an opportunity to cure (an "Uncured Event of Default"), Fannie Mae shall be entitled to:

(a) take possession of and transfer to another servicer all files, documents records, and electronic data relating to the Fannie Mae Portfolio (the "Loan Files");

(b) take possession of and transfer to another servicer all custodial funds held by Company;

(c) immediately engage another servicer to perform the servicing of the Fannie Mae Portfolio;

(d) assert any claims it may have against the Company and its estate; and

(e) change Company's status as set forth in paragraph 1 hereof.

Upon the occurrence of an Uncured Event of Default, Company agrees to cooperate with Fannie Mae in immediately moving the Loan Files, related funds, and servicing of the Fannie Mae Portfolio to another servicer.

Notwithstanding anything to the contrary in this paragraph 6, Fannie Mae shall not be required to provide notice and an opportunity to cure with respect to an event of default that occurs because a sale of the Servicing Rights fails to close on or before October 31, 2007. Such an event of default is deemed to be an "Uncured Event of Default" for the purposes of this paragraph 6.

7. Company acknowledges and agrees that (a) Company has not been released from any of Company's obligations and responsibilities to Fannie Mae that existed prior to delivery of the Termination Notice, (b) Fannie Mae has not forgiven any such obligations and responsibilities, (c) Company has not been released from, nor has Fannie Mae forgiven, any of Company's obligations and responsibilities to Fannie Mae that may be identified or discovered subsequent to delivery of the Termination Notice, and (d) Company shall not acquire servicing of additional Fannie Mae loans, sell additional loans to Fannie Mae or seek to assume the Contract.

000159

Page 6

8. Effective upon Closing:

    (a) Company releases and discharges Fannie Mae, and all of its officers, directors, agents, and employees, attorneys, successors and assigns (collectively the "Fannie Mae Releasees"), of and from, and does hereby irrevocably waive, any and all rights, torts, claims, damages, attorneys' fees, actions, causes of action, and suits, of any nature whatsoever, and whether or not now known, suspected, or claimed, that Company ever had, now has or claims the Company might hereafter have or claim against any of the Fannie Mae Releasees, based upon or arising out of any matter or thing occurring, in whole or in part, on or before the date of this Agreement, including any claims for a contract termination fee or servicing compensation, provided however, that the obligations arising under or preserved in this Agreement are not released, waived, or discharged; and

    (b) Fannie Mae releases and discharges the Company, and all of its officers, directors, agents, employees, attorneys, successors and assigns (collectively the "Company"), of and from, and does hereby irrevocably waive, any and all rights, torts, claims, damages, attorneys' fees, actions, causes of action, and suits, of any nature whatsoever, and whether or not now known, suspected, or claimed, that Fannie Mae ever had, now has or claims Fannie Mae might hereafter have or claim against any of the Company Releasees relating to the Company, based upon or arising out of any matter or thing occurring, in whole or in part, on or before the date of this Agreement, provided however, that the obligations arising under or preserved in this Agreement are not released, waived, or discharged.

9. Company represents and warrants the following:

    (a) Subject to approval of this Agreement by the Bankruptcy Court, the officer executing this Agreement on behalf of Company is duly authorized to execute this Agreement on behalf of Company and Company has the power and authority to execute and deliver this Agreement, to perform fully Company's obligations hereunder, and to consummate the transaction contemplated hereby.

    (b) Subject to approval of this Agreement by the Bankruptcy Court, the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, have been duly authorized by all requisite corporate action of Company.

    (c) Subject to approval of this Agreement by the Bankruptcy Court, this Agreement is the legal, valid and binding obligation of Company, enforceable in

Page 7

    accordance with its terms, and the execution, delivery and performance hereof by Company does not, and will not, violate any applicable law, certificate of incorporation or by-laws, contract or other instrument to which Company may be bound or affected.

10.    Fannie Mae represents and warrants the following:

    (a)    The officer executing this Agreement on behalf of Fannie Mae is duly authorized to execute this Agreement on behalf of Fannie Mae and Fannie Mae has the power and authority to execute and deliver this Agreement, to perform fully Fannie Mae's obligations hereunder, and to consummate the transaction contemplated hereby.

    (b)    the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, have been duly authorized by all requisite corporate action of Fannie Mae.

    (c)    this Agreement is the legal, valid and binding obligation of Fannie Mae, enforceable in accordance with its terms, and the execution, delivery and performance hereof by Fannie Mae does not, and will not, violate any applicable law, certificate of incorporation or by-laws, contract or other instrument to which Fannie Mae may be bound or affected.

11.    This Agreement may be executed in counterparts. Company and Fannie Mae agree to be bound by executed copies hereof, including those copies delivered by facsimile to the other party.

12.    Company agrees to submit this Agreement for approval by the Bankruptcy Court on an expedited basis. The order approving this Agreement shall terminate the automatic stay to permit Fannie Mae to take the actions outlined in paragraph 6 above in the event of an Uncured Event of Default.

    In the event Bankruptcy Court approval is denied, or if approval is not granted on or before September 4, 2007, or if the order granting approval does not become final and non-appealable on or before September 17, 2007, Fannie Mae may terminate this Agreement by providing notice of termination to the Company. In the event Fannie Mae terminates this Agreement, (a) Fannie Mae reserves all rights to assert that the Contract was validly terminated prior to the filing of the Company's bankruptcy case and that the Company has no right, title, or interest in and to the Servicing Rights and (b) the Company reserves all rights to contest the termination of the Contract and to oppose Fannie Mae's efforts to move the Loan Files, related funds, and servicing of the Fannie Mae Portfolio to another servicer.

DB02:6197628.3    066585.1001

000161

Page 8

Please execute this Agreement where indicated below to indicate your acceptance and agreement to the terms and conditions set forth above. Please fax an executed copy of this Agreement to me at 215-575-1778 as soon as possible, and return an original, executed copy of this letter to me by overnight mail.

Sincerely,

*[signature]*

Zach Oppenheimer

THE FOREGOING TERMS AND CONDITIONS ARE ACKNOWLEDGED AND AGREED TO:

Attest:                                   American Home Mortgage Corporation

_____         By: _____
Name:                                     Name:
Title:                                    Title:

Date:

DB02:6197628.3                                                          066585.1001

Page 8

Please execute this Agreement where indicated below to indicate your acceptance and agreement to the terms and conditions set forth above. Please fax an executed copy of this Agreement to me at 215-575-1900 as soon as possible, and return an original, executed copy of this letter to me by overnight mail.

Sincerely,

Zach Oppenheimer

THE FOREGOING TERMS AND CONDITIONS ARE ACKNOWLEDGED AND AGREED TO:

Attest:                                                     American Home Mortgage Corporation

_____                    By: _____
Name: Alan Horn                                        Name: Alan Horn
Title: EVP/Secretary                                   Title: EVP/Secretary

Date: