## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., *et al.*,<br><br>Debtors. | Case No. 07-11047 (CSS)<br><br>(Jointly Administered)<br><br>Related to Docket Nos. 11, 113, and 403<br><br>Objection Deadline: September 13, 2007 at 4:00 p.m. Eastern time<br>Deadline for Submitting Bids: September 18, 2007 at 4:00 p.m. Eastern time<br>Auction Date: September 24, 2007 at 10:00 a.m. Eastern time<br>Sale Hearing Date: October 1, 2007 at 10:00 a.m. Eastern Time |

**OBJECTION OF COUNTRYWIDE BANK, FSB AND COUNTRYWIDE HOME LOANS, INC. TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Countrywide Bank, FSB, formerly Countrywide Bank, N.A. ("Countrywide Bank"), and Countrywide Home Loans, Inc. (collectively, "Countrywide"), by and through their undersigned counsel, and in accordance with section 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby file this Objection to the "*Emergency Motion of the Debtors For Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of*

*Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief"* (the **"**Sale Motion**"**), as follows:

## I.    **PRELIMINARY STATEMENT**

1.      Countrywide Bank and American Home Mortgage Corp. ("AHM Corp.") were parties to that certain "Mortgage Loan Purchase and Servicing Agreement," dated March 14, 2006 (as supplemented by the related Trade Confirmations and Purchase Confirmations, the "Agreement").[1]   Countrywide Bank and AHM Corp. acknowledged in the Agreement that American Home Mortgage Servicing, Inc. (the "Servicer") would subservice any mortgage loans acquired by Countrywide Bank under the Agreement.  From March 14, 2006 to August 3, 2007, the Servicer serviced loans for Countrywide Bank.  As of July 30, 2007, Countrywide Bank owned approximately 1,350 loans with an unpaid principal balance of approximately $484 million that were purchased from AHM Corp. and serviced by the Servicer under the Agreement.

2.      On August 3, 2007, prior to the filing of these Cases, Countrywide Bank terminated AHM Corp.'s servicing rights under the Agreement by providing AHM Corp. with written notice of termination without cause.[2]  Notwithstanding this valid termination, the Debtors filed the Sale Motion and seek to sell servicing rights for loans associated with the Agreement.

3.      AHM Corp. may not sell or assign the Agreement and may not transfer any Mortgage Files related to the Agreement because the servicing rights (the "Servicing

---

[1]      A copy of the Agreement is not attached to this Limited Objection due to the confidentiality provisions set forth in Section 8.15 of the Agreement that prohibits such disclosure.  Countrywide believes that the Debtors have a copy of this Agreement in their own records.  Capitalized terms used in this Limited Objection that are not otherwise defined shall have the meaning given to them in the Agreement.

[2]      A copy of this Termination Letter is attached as Exhibit "A" to this Limited Objection.

Rights") relating to the Agreement and the Mortgage Files are not property of these bankruptcy estates. Accordingly, Countrywide Bank opposes the Sale Motion. Additionally, if AHM Corp. is permitted to assume and assign the Agreement, it must do so with all burdens (or *cum onere*), and Countrywide Bank would have the right to require the purchaser of the Agreement to honor the repurchase and premium recapture obligations in the Agreement.

## II.    JURISDICTION

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

5.    The statutory basis for the relief requested in this Limited Objection is Section 363 of the Bankruptcy Code and Bankruptcy Rules 6004(a) and 9014.

## III.    BACKGROUND

### A.    Procedural Background

6.    On August 6, 2007 (the "Petition Date"), AHM Corp., the Servicer, and certain affiliates (collectively, the "Debtors") commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases").

7.    The Cases are being jointly administered in accordance with an order this Court entered on August 7, 2007.

8.    On August 6, the Debtors filed the Sale Motion.

9.    On August 9, 2007, this Court entered its *Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief* (the "Sales Procedures Order") establishing procedures for the sale of the Debtors'

3

servicing business (the "Proposed Sale") and providing, among other things, that an auction to

sell that business shall take place on September 10, 2007.

        10.    On August 27, 2007, the Debtors served a *Notice of (i) Possible*

*Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts;*

*and (II) Proposed Cure Obligations, if any*, which included on the attached Exhibit to that Notice

the following contract the Debtors propose to assume in the Proposed Sale of its Servicing

Rights:

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/Arrangement | Proposed Cure Amount |
|---|---|---|---|
| Countrywide Bank, N.A.<br>4500 Park Granada<br>Mail Suite CH-20<br>Calabasas, CA 93102<br>Attn: Kathleen Conte, Executive Vice President | Mortgage Loan Purchase and Servicing Agreement, dated as of March 14, 2006, by and between American Home Mortgage Corp. (Seller) and Countrywide Bank, NA (Purchaser) | Loan Sale and Servicing Agreement | $0.00 |
| Countrywide Home Loans, Inc.<br>4500 Park Granada<br>Mail Suite CH-20<br>Calabasas, CA 93102<br>Attn: Jordan Cohen, Executive Vice President | Mortgage Loan Purchase and Servicing Agreement, dated as of May 1, 2007, by and between American Home Mortgage Corp. and Countrywide Home Loans, Inc., as Purchaser (the "2007 Agreement") | Loan Sale and Servicing Agreement[3] | $0.00 |

---

[3]     Under the 2007 Agreement, Countrywide Home Loans, Inc. bought certain mortgage loans, sold them back to AHM Corp. who then securitized the loans and delivered mortgage pass-through certificates ("MBS") evidencing a 100% beneficial ownership interest (excluding the related servicing rights) in the loans to Countrywide's affiliate, Countrywide Securities Corp. Upon issuance of the MBS, the Servicer began servicing the related loans pursuant to the pooling and servicing agreement for the MBS rather than the 2007 Agreement. As such, the 2007 Agreement is

**B.**    **The Agreement and the Servicing Obligations**

11.    Prior to the Petition Date, the Debtors engaged in the origination, sale and servicing of real estate mortgages.    Countrywide Bank and AHM Corp. are parties to the Agreement which permitted Countrywide Bank to buy mortgage loans from AHM Corp. in accordance with the terms of that Agreement.

12.    The sales of mortgage loans under the Agreement are expressly subject to the obligation of AHM Corp. to repurchase any mortgage loan from Countrywide Bank if, for among other reasons, (1) AHM Corp. does not provide the related Mortgage Documents to Countrywide Bank within 90 days after a Closing Date, (2) the representations and warranties made by AHM Corp. in Article III of the Agreement relating to any mortgage loan are breached in a material and adverse way, or (3) any mortgage loan experiences a payment default relating to one of the first three monthly payments due after the applicable Closing Date (the foregoing obligations, the "Repurchase Obligations").    AHM Corp. also is obligated to reimburse Countrywide Bank for any premium purchase price paid on any mortgage loan that is prepaid or expected to prepay within three months of the Closing Date (such amounts, the "Premium Recapture Amounts").    In addition, the Agreement provides that the Servicer shall service the mortgages purchased by Countrywide Bank pursuant to Article IV of the Agreement.

13.    The Agreement provides that the Servicer is required, among other things, to: (a) collect payments on the underlying mortgages, follow such collection procedures as it would for mortgages held for its own account, including foreclosing on defaulted mortgages; (b)

---

of no value to the Debtors because Countrywide Home Loans, Inc. owns no loans that the Debtors are servicing under that agreement and Countrywide has no intention to buy any additional mortgage loans under the 2007 Agreement.    The arguments made with respect to the Agreement, however, apply with equal force to the 2007 Agreement, and Countrywide Home Loans, Inc. reserves the right to assert these arguments at the Sale Hearing on

establish segregated custodial accounts to hold principal, interest payments, insurance and condemnation payments and other amounts in respect of the purchased mortgages; (e) establish segregated escrow accounts to hold amounts required to be escrowed; (d) maintain records on required payments such as tax assessments and insurance; and (e) distribute funds to Countrywide Bank from the custodial accounts and otherwise as required by the Agreement.

14.    Section 7.1 of the Agreement provides that, upon the occurrence of an Event of Default, Countrywide Bank may terminate the rights and obligations of the Servicer under the Agreement. In addition, Section 7.2 of the Agreement allows Countrywide Bank to terminate the Agreement without cause, and in such event, Countrywide Bank is entitled to pay fair market value to acquire the Servicing Rights.

15.    Section 7.4 of the Agreement provides the mechanism for the transfer of the servicing of the Mortgage Loans to a successor sevicer once terminated, including requirements that the Mortgage Loans and cash in custodial accounts and escrow accounts all of which is Countrywide Bank's property be transferred to a successor.

C.    **The Default and Notice of Termination**

16.    Prior to the Petition Date, on August 3, 2007, Countrywide Bank sent a Notice of Default and Termination to the Servicer under Section 7.2 of the Agreement, (the "Termination Notice") which permits termination without cause, which stated as follows:

> Pursuant to Section 7.2 of the Agreement, [Countrywide Bank] is now giving the Seller notice that it will be terminating the Seller's affiliate, American Home Mortgage Servicing, Inc. within thirty (30) days of the date hereof or upon a early date that shall be mutually agreed upon by the parties. Further, [Countrywide Bank] and the Seller shall negotiate in good faith and mutually agree upon a fair market price for the Servicing Rights related to such Mortgage Loans.

---

its own behalf.

17.    The Termination Notice terminated the Agreement effective as of September 2, 2007. Countrywide Bank's Termination Notice requires AHM Corp. to negotiate in good faith and transfer the Servicing Rights to Countrywide Bank for a fee "equal to the then current fair market price" of those Servicing Rights.

18.    As discussed above, Sections 7.3 and 7.4 of the Agreement provide the mechanism for the transfer of all Mortgage Files for a without cause termination of the Agreement, namely that Countrywide Bank and the Debtors must negotiate in good faith for a sale of the Servicing Rights to Countrywide Bank. Countrywide Bank has been engaged in good-faith negotiations with AHM Corp. to enable it to obtain the Servicing Rights associated with the Mortgage Loans.

## IV.    ARGUMENT AND AUTHORITY

### A.    The Debtors Cannot Sell the Right to Service Countrywide Bank's Loans Because the Agreement was Terminated Pre-Petition.

19.    The Agreement is not assignable and cannot be sold by AHM Corp. because it was terminated prior to the Petition Date pursuant to the Termination Notice. As a result of this termination, there is no continuing agreement that can be assigned to a third party. At best, all the Debtors own under the Agreement is an obligation to negotiate with Countrywide Bank for a transfer of the Servicing Rights and the Mortgage Files to Countrywide Bank. Similarly, the Mortgage Files related to the Mortgage Loans cannot be transferred to a buyer because these Mortgage Files are the property of Countrywide Bank, held by the Debtors in trust only. Countrywide Bank suspects that from a business standpoint, no sensible buyer would want to bid for any rights associated with the Agreement only to be met with a demand for transfer of all of the rights it just acquired to Countrywide.

7

20.    In addition to the business rationale that mitigates against including the Agreement in the Proposed Sale, the law prohibits the Debtors from selling, assuming, or assigning the Agreement because Countrywide Bank terminated the Agreement and the Servicing Rights, the Mortgage Files, the Custodial Accounts, and other property subject to the Agreement, are not property of the Debtors' estate.  Thus, the Debtors cannot use § 363 of the Bankruptcy Code to sell property that does not belong to them.  See 11 U.S.C. § 541(a)(1); Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) ("Whatever rights a debtor has in property at the commencement of the case continue in bankruptcy--no more, no less."  Section 541 of the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case."  H.R. Rep. No. 595 (1978), at 368, *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6323.

21.    With respect to Countrywide Bank's termination of the Agreement, this act is valid and deprives the estate of any interest in the Agreement as of September 2, 2007.  See In re Kopelman v. Halvajian (In re Triangle Laboratories, Inc.), 663 F.2d 463, 467-68 (3d Cir. 1981) (stating that in order for Section 365 of the Bankruptcy Code to apply, "the contract or lease must be in existence.  If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the trustee to assume or assign.")  (citations omitted)); In re Southold Dev. Corp., 134 B.R. 705, 710 (E.D.N.Y. 1991) ("Contracts terminated prior to the filing of a bankruptcy petition are not property of the debtor's estate, and the court cannot resuscitate previously extinguished contract rights.")[4]  The fact that the Debtors filed for bankruptcy before the end of the thirty-day period in Section 7.2 of the Agreement (e.g. Countrywide Bank gave notice on August 3, 2007, and AHM

---

[4]    Countrywide also reserves any right it may have under Bankruptcy Code §§ 555, 559 and 561 to terminate the Agreement at any time during these Cases.

Corp. commenced its bankruptcy on August 6, 2007), does not change the analysis. The Moody

v. Amoco Oil Co. case affirms this outcome:

> As discussed above, here the dealership termination notices were
> effective prior to debtors' filing in bankruptcy. The contract gave
> debtors no right to cure once the termination notices were mailed.
> Amoco did not have to take any further action to terminate the
> contracts; termination was automatic at the end of ninety days. . . .
> The fact that the termination itself was not effective for ninety days
> does not affect the result. The filing of the chapter 11 petitions
> cannot expand debtors' rights as against Amoco. When the
> termination notice was sent, debtors only had a right to ninety
> days' worth of dealership contracts. The filing of the petition does
> not expand that right.

See Moody v Amoco Oil Co., 734 F.2d 1200, 1212-13 (7th Cir. 1984).

**B.    The Debtors Cannot Sell the Right to Service Countrywide Bank's Loans Because
the Mortgage Files are not Property of the Debtors' Estates.**

22.    Even if the Court were to determine that Countrywide Bank's pre-petition

termination was not valid or effective or that somehow the Agreement is property of the estate,

which it is not for the reasons explained in the prior section, the underlying Mortgage Files,

which are necessary to any buyer's ability to service the Mortgage Loans remain the property of

Countrywide Bank.

23.    These files are held in express trust by the Debtors under Section 2.1 of

the Agreement, which provides that:

> "Upon sale of the Mortgage Loans, the ownership of each
> Mortgage Loan, the Mortgage Loan Documents, and the Mortgage
> Files related to the Mortgage Loans shall be vested in
> [Countrywide Bank], and the ownership of all records and
> documents with respect to the Mortgage Loans prepared by or
> which come into the possession of [AHM Corp.] shall immediately
> vest in [Countrywide Bank] and shall be retained and maintained,
> **in trust**, by [AHM Corp.] at the will of [Countrywide Bank] in a
> custodial capacity only."

Agreement § 2.1 (emphasis added).

24.     Personal property -- like Countrywide Bank's funds in the Debtors' segregated accounts -- held in express trust is also not property of the estate and cannot be sold by the Debtors. See 11 U.S.C. §541(d); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 98-99 (3d Cir. 1994) ("Congress clearly intended the exclusion of trust funds from the debtor's estate created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust.") (citations omitted).

25.     The Mortgage Files and the funds held in custodial accounts on Countrywide Bank's behalf pursuant to the Agreement are not property of the Debtors' estates. As such, irrespective of the validity of Countrywide Bank's Termination Notice, the Debtors' cannot sell any Servicing Rights associated with the Agreement.

C.      **In the Alternative, Should the Debtors' Nonetheless Continue to Seek Authority to Sell Countrywide Bank's Property; the Debtors must Cure all Defaults and Provide Adequate Assurance of Future Performance.**

26.     Additionally, even if the Court were to permit the theoretical assumption and assignment of the Agreement – which it should not for the reasons stated above – the transaction cannot go forward as structured.  Namely, the Agreement can only be assumed and assigned, if at all, with all benefits and burdens.  Furthermore, any prospective purchaser would need to provide adequate assurance that it could perform the Repurchase Obligations and pay the Premium Recapture Amounts under the terms of the Agreement.  See 11 U.S.C. § 365(b); N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531-31 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate.") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The trustee, however, may not blow hot or and cold.  If he

accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."), cf. Tenet Healthsystem Philadelphia, Inc. v. National Union of Hospital and Health Care Employees (In re Allegheny Health Educ. and Res. Foundation), 383 F.3d 169, 177-78 (3d. Cir. 2004) (a counterparty must object to a sale to ensure its contract is assumed and assigned with all burdens and that the appropriate cure amount is paid.) (citing American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1999)).

27.    Accordingly, the Agreement cannot be assumed and assigned absent a full cure of all outstanding obligations owing to Countrywide Bank, which amount on account of Repurchase Obligations and Premium Recapture Amounts is currently $9,436,230.75 and not the zero dollars proposed by the Debtors. The Debtors must also provide Countrywide Bank with adequate assurance that any potential buyer can meet the Repurchase Obligations and satisfy claims for Premium Recapture Amounts required after the Proposed Sales closes, which obligations could be several million more dollars.

11

## V.    **CONCLUSION**

**WHEREFORE**, Countrywide Bank and Countrywide Home Loans, Inc. request that this

Court prohibit the Debtors from selling their assets or assuming and assigning the Agreement or

the 2007 Agreement and grant them such other and further relief as the Court deems appropriate.

Dated: Wilmington, Delaware
      September 5, 2007

                    Respectfully submitted,

                    EDWARDS ANGELL PALMER & DODGE LLP

                    _____/s/ William E. Chipman, Jr._____
                    William E. Chipman, Jr. (No. 3818)
                    919 North Market Street
                    15th Floor
                    Wilmington, Delaware 19801
                    (302) 777-7770

                    *Counsel to Countrywide Bank, FSB and Countrywide*
                    *Home Loans, Inc.*

9/5/200712:28:52 PM

