IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al., | ) ) ) | CASE NO. 07-11047 (CSS) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) ) | Ref. Docket Nos. 135 & 137 |
| | | Hearing Date: September 17, 2007 Time 12:00 noon |

## NOTICE OF OBJECTIONS AND OBJECTIONS OF LESSOR TPRF/THC HAVENPARK, LLC TO PROPOSED CURE AMOUNT; DECLARATIONS OF LISA HOOD AND DIANE C. STANFIELD

1045906.1

1

To American Home Mortgage Corp. ("AHM" or "Debtor"), one of the above-captioned debtors and debtors in possession and its attorneys of record:

**PLEASE TAKE NOTICE THAT** Lessor TPRF/THC HavenPark, LLC ("Lessor") hereby objects to the "Corrected Notice of (I) Assumption and Assignment of Certain Real Property Leases and Sale of Furniture, Fixtures and Equipment Located Therein; and (II) Proposed Cure Obligations, If Any," ("Corrected Cure Notice") served by Debtor on or about September 2, 2007. Specifically, Lessor objects to the proposed cure amount with respect to AHM's Lease with Lessor (the "HavenPark Lease"), which Debtor states as $0.00. As set forth below, **the proper cure amount totals not less than $70,878.88**: $41,131.38 in base rent, plus $29,747.50 in attorneys' fees actually incurred by Lessor. Lessor specifically reserves its right to amend this cure amount in any manner, including but not limited to an amendment to reflect additional attorneys' fees incurred, prior to or at the time of the hearing on the objections made herein ("Objections").

Further, Lessor understands that, subject to the Debtor's cure of existing defaults under the Lease Agreement, the Court has approved the assumption and assignment of the HavenPark Lease by AHM to Indy Mac Bank, F.S.B. ("Indy Mac") pursuant an order entered on August 24, 2007 ("Order"). However, no form of any proposed assignment agreement has been served upon or otherwise submitted to Lessor. Based thereon, Lessor specifically reserves its right, consistent with this Court's Order and the terms of the HavenPark Lease, to object to any conditions or terms as may be set forth in the proposed assignment agreement upon its review of the same.

These Objections are based on the attached Memorandum of Points and Authorities, the Declarations of Lisa Hood and Diane C. Stanfield, and such other and further matters as may be brought before the Court at or before the time of hearing.

Respectfully submitted,

Dated: Wilmington, Delaware
September 7, 2007

Pinckney Harris & Poppiti, LLC

_____
Donna L. Harris (Del. Bar No. 3740)
1000 N. West Street, Suite 1200
Wilmington, De 19801
Telephone: (302) 295-5065
Facsimile: (302) 295-5066

Weston Benshoof Rochefort Rubalcava
    & MacCuish LLP
Dean G. Rallis Jr. (CA Bar No. 94266)
(Appearance pro hac vice)
Diane C. Stanfield (CA Bar No. 106366)
(Appearance pro hac vice)
333 S. Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile:   (213) 576-1100

Attorneys for Lessor TPRF/THC HavenPark, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTS AND BACKGROUND

AHM is the named Lessee under a lease with Lessor dated August 11, 2006, a true and correct copy of which is Exhibit A to the attached Declaration of Lisa Hood (the "HavenPark Lease"), for property located at 9680 Haven Avenue, Suite 350, Rancho Cucamonga, California (the "Leased Premises"). On August 2, 2007, Landlord caused to be personally delivered to AHM a letter captioned Notice of Default (the "Notice of Default") under the HavenPark Lease. As of that date, AHM was in default under the HavenPark Lease in the sum of $18,187.38. No part of that amount has been paid to date. (See Declaration of Lisa Hood at ¶ 2 and Exhibits A, B and C thereto.)

On August 6, 2007, AHM, together with certain of its direct and indirect affiliates and subsidiaries, filed a petition (the "Petition") for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). On or about August 11, 2007 AHM sent Lessor a letter stating that "AHM and Indymac Bank, F.S.B. ('Indymac') have entered into a license agreement dated as of August 7, 2007 (the 'License Agreement'). By the terms of the License Agreement, AHM has agreed to allow Indymac to occupy *temporarily* numerous leased offices and to use the furniture, fixtures, equipment and other office assets located at those premises." The Leased Premises was among those included in the License Agreement. (See Declaration of Lisa Hood at ¶ 3 and Exhibit D thereto.)

On or about August 10, 2007, the Debtors filed an "Emergency Motion For an Order, Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving Debtors' Entry into License Agreement with Indymac Bank, F.S.B. in Connection with Its Bid for Assignment of Certain Office Leases and Purchase of Related Furniture Fixtures and Equipment *Nunc Pro Tunc* to August 8, 2007" (the "Emergency Motion") requesting, inter alia, an order approving the Debtors' entry into the License Agreement, *Nunc Pro Tunc* to August 8, 2007. The Debtors also filed "the Emergency Motion For an Order,

4

Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, (I) Authorizing the Assumption and Assignment of Certain Real Property Leases and the Sale of Furniture, Fixtures and Equipment Located Therein; (II) Approving the Terms of the Letter Agreement; and (III) Granting Related Relief" (the "<u>Assumption and Assignment Motion</u>") (collectively "Motions").

In response to the Motions, Lessor, Debtor and Indy Mac entered into extensive negotiations for a stipulation ("Proposed Stipulation") in an attempt to reach an interim resolution of certain issues surrounding the proposed License Agreement, and to provide full access to Indy Mac of the Leased Premises pending entry of a Bankruptcy Court order granting or denying the Motions. The parties exchanged numerous drafts of the Proposed Stipulation, right up until the day before the hearing on the Motions. Although Indy Mac ultimately executed the Proposed Stipulation (and Lessor was prepared to do so), the Debtor has not, to date, executed the Proposed Stipulation. [1] (See Declaration of Diane C. Stanfield at ¶ 3.)

On August 24, 2007, Lessor learned that the Motions had been granted. On September 2, 2007, Lessor was served with an electronic copy of the Corrected Cure Notice, stating the Cure Amount as to the HavenPark Lease as $0.00.[2] Further, although Lessor has requested a copy of the proposed form of assignment to Indy Mac for review, it has not yet received it. (See Declaration of Diane C. Stanfield at ¶ 6.) Section 16.1 of the HavenPark Lease obligates the Lessee, in the event of a proposed assignment, to provide "a copy of all existing and/or proposed documentation pertaining to the proposed Transfer." HavenPark Lease, Exhibit A to Declaration of Lisa Hood, at

---

[1] Despite the fact that the Proposed Stipulation was never finalized, Lessor made every effort to accommodate Debtor and Indy Mac by permitting Indy Mac to occupy the Leased Premises during normal (and sometimes extended) business hours prior to the hearing on the Debtor's Motions. See Declaration of Lisa Hood at ¶ 4.
[2] Counsel for Debtor has acknowledged that this cure amount is incorrect, and stated Debtor's intent to work with Lessor to agree on an appropriate cure amount. See Declaration of Diane C. Stanfield at ¶ 5.

1045906 1

p. 21. For that reason, Lessor has respectfully reserved its right to further object to the terms of the proposed assignment agreement, consistent with this Court's Orders and the HavenPark Lease.

## II.

## THE PROPER CURE AMOUNT FOR THE HAVENPARK LEASE IS NOT LESS THAN $41,131.38 IN BASE RENT PLUS $29,747.50 IN ATTORNEYS' FEES

The HavenPark Lease requires payment by the first of each month of base rent in the sum of $22,944.00. As of August 1, 2007, AHM owed $18,187.38 in base rent (after application of a $4,756.62 credit for prepaid rent). September base rent in the sum of $22,944.00 has now become due as well, and Debtor is now in default in the amount of $41,131.38 in base rent alone. (See Declaration of Lisa Hood at ¶ 2 and Exhibit C thereto.)

In addition, Lessor has incurred (and continues to incur) attorneys' fees beginning with AHM's default in the rent due August 1, 2007, and continuing through the present. (See Declaration of Diane C. Stanfield at ¶¶ 2 through 7. ) To date, fees of $29,747.50 have been incurred, and Lessor anticipates a minimum of an additional $2,000.00 through the date of hearing on these Objections. (See Declaration of Lisa Hood at ¶ 5.)

## III.

## LESSOR IS ENTITLED TO ATTORNEYS' FEES
## AS PART OF THE CURE AMOUNT

The HavenPark Lease provides in pertinent part:

> 30.3. **Attorneys' Fees; Waiver of Jury Trial.**
> 30.3.1 In any action to enforce the terms of this Lease, including any suit by Landlord for the recovery of rent or possession of the Premises, the losing party shall pay the successful party a reasonable sum for attorneys' fees and costs in such suit and such attorneys' fees and costs shall be deemed to have accrued prior to the commencement of such action and shall be paid whether or not such action is prosecuted to judgment.
>
> 30.3.2. Should Landlord, without fault on Landlord's part, be made a party to any litigation instituted by Tenant or by any third party against Tenant, or by or against any person holding under or using the Premises

by license of Tenant, or for the foreclosure of any lien for labor or material furnished to or for Tenant or any such other person or otherwise arising out of or resulting from any act or transaction of Tenant or of any such other person, Tenant covenants to save and hold Landlord harmless from any judgment rendered against Landlord or the Premises or any part thereof and from all costs and expenses, including reasonable attorneys' fees and costs incurred by Landlord in connection with such litigation.

HavenPark Lease, Exhibit A to Declaration of Lisa Hood, at p. 35.

The Lease further provides that attorneys' fees owed pursuant to the Lease are deemed "rent:"

30.11   Rent. All payments required to be made hereunder to Landlord shall be deemed to be "Rent", whether or not described as such.

HavenPark Lease, Exhibit A to Declaration of Lisa Hood, at p. 37.

Finally, the Lease defines "Event of Default" to include:

20.1.1.   Failure or refusal to pay Rent or Additional Rent **or any other amount to be paid by Tenant to Landlord hereunder** within five (5) business days after written notice that the same is due or payable hereunder; said five (5) business day period shall be in lieu of, and not in addition to, the notice requirements of Section 1161 of the California Code of Civil Procedure or any similar or successor law.

HavenPark Lease, Exhibit A to Declaration of Lisa Hood, at p. 27.

For these reasons, Lessor's attorneys' fees are properly included in the amount required to cure the defaults under the HavenPark Lease. As detailed in the attached Declaration of Diane C. Stanfield, Lessor's fees were necessitated by AHM's default, by Lessor being made a party to litigation instituted by AHM (the Motions) and in connection with Indy Mac's use of the Premises by license of AHM. They include fees beginning with AHM's default in payment of the August rent; analysis of the bankruptcy issues upon AHM's filing of the Petition and Motions; negotiation and resolution of a variety of disputes and issues and drafting of a number of versions of the Proposed Stipulation (which, despite Debtor's active participation in its negotiation and with no explanation whatsoever, Debtor ultimately failed to execute); and efforts to accommodate Indy Mac's access to and possession of the Leased Premises prior to hearing on the Motions. The fees in some cases increased as a result of the Debtor's

lack of responsiveness to particular issues, such as its continued promises to provide the amount of the License Fee that Indy Mac was paying it in connection with the HavenPark Lease for a recital in the Proposed Stipulation. (See Declaration of Diane C. Stanfield at ¶¶ 2, 3 and 7.) Indeed, these very Objections are an example of how the Debtor has caused the fees to increase; despite its admission that the August rent was not paid, and its obvious knowledge that September rent has come due, Debtor still proposed to pay nothing to cure this Lease. Consequently, Lessor has been required to incur fees to prepare and file these Objections.

All of the attorneys' fees incurred by Lessor were both reasonable and necessary, and should be included as part of any proposed cure as a condition to assignment of the Lease.

## IV.

## CONCLUSION

For all the foregoing reasons, Lessor respectfully requests that the Court make any assumption and assignment of the HavenPark Lease conditioned on payment of the full cure amount as set forth herein, and as may be updated at or prior to the time of hearing. Lessor further requests that any assignment of the HavenPark Lease be further conditioned on service upon Lessor of the proposed Assignment Agreement and

Lessor's reasonable opportunity to object to any terms or provisions as may be set forth therein, consistent with the HavenPark Lease and the Orders of this Court.

Respectfully submitted,

Dated: Wilmington, Delaware
September 7, 2007

Pinckney Harris & Poppiti, LLC

_____
Donna L. Harris (Del. Bar No. 3740)
1000 N. West Street, Suite 1200
Wilmington, De 19801
Telephone: (302) 295-5065
Facsimile: (302) 295-5066

Weston Benshoof Rochefort Rubalcava
  & MacCuish LLP
Dean G. Rallis Jr. (CA Bar No. 94266)
(Appearance pro hac vice)
Diane C. Stanfield (CA Bar No. 106366)
(Appearance pro hac vice)
333 S. Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

1045906.1