**EXHIBIT G**

24663648

# de lage landen
partners in finance

# Master Lease Agreement
PHONE: (800) 735-3273 • FAX: (800) 776-2329

**LESSEE**

| Full Legal Name | | | Phone Number |
|---|---|---|---|
| AMERICAN HOME MORTGAGE CORP. | | | (516) 949-3900 |
| DBA Name (If Any) | | Federal Tax I.D. No. | Fax Number |
| Billing Address 520 BROAD HOLLOW RD. | City MELVILLE | State NY   Zip 11747 | Send Invoice to Attention of: |

## TERMS & CONDITIONS

This "Master Lease Agreement ("Agreement") is dated as of this OCTOBER 3, 2005, and is by and between De Lage Landen Financial Services, Inc., 1111 Old Eagle School Road, Wayne, Pennsylvania 19087 ("Lessor") and the Lessee identified above ("Lessee").

The words "you" and "your" refer to the "Lessee" and the words "we", "us" and "our" refer to the Lessor. Please read your copy of this Agreement carefully and feel free to ask us any questions you may have about it.

1. **LEASE:** This Agreement establishes the general terms and conditions under which we may from time to time lease Equipment (as hereinafter defined) to you. The terms of this Agreement shall be deemed to form a part of each Schedule (the form of which is attached hereto as Exhibit A) executed by you and us which references this Agreement. "Equipment" shall mean all items of equipment described in any Schedule. Each Schedule shall constitute a separate Lease Agreement ("Lease") incorporating all of the terms of this Agreement. In the event of a conflict between the provisions of any Lease and the provisions of this Agreement, the provisions of the Lease shall prevail.

2. **TERM AND RENT:** This Agreement shall become effective upon acceptance and execution by us and shall remain effective at least until the expiration of the last Lease term under any Schedule. Each Lease is effective on the date that it is accepted and signed by us, and the term of each Lease begins on that date or any later date that we designate (the "Commencement Date") and continues thereafter for the number of months indicated on the Lease. As you will have possession of the Equipment from the date of its delivery, if you accept and sign the Lease you will pay us interim rent for each day from the date the Equipment is delivered to you until the Commencement Date, calculated on the Lease Payment, the number of days in that period, and a year of 360 days. Lease Payments will be due as invoiced by us until the balance of the Lease Payments and any additional Lease Payments or expenses chargeable to you under the Lease are paid in full. Your obligation to pay the Lease Payments and other Lease obligations are absolute and unconditional and are not subject to cancellation, reduction, setoff or counterclaim. All payments will be made to us at the above address we indicate in writing. THIS AGREEMENT AND ALL LEASES ARE NON-CANCELABLE.

The amount of each Lease Payment is based on the supplier's best estimate of the Equipment cost including (if applicable), any installation, other related costs and estimated sales or use tax. The Lease Payments will be adjusted proportionately upward or downward if the actual total cost of the Equipment or taxes is more or less than the estimate. In that event you authorize us to adjust the Lease Payments by up to fifteen percent (15%). In addition, if we have not accepted a Lease within thirty (30) days of the date you sign the Lease, you authorize us to increase the Lease Payments to increase the implicit rate of the Lease Payments in an amount equal to any increase in the rate of two-year Treasury Notes from the date you sign the Lease until the date we accept the Lease.

3. **LATE CHARGES/DOCUMENTATION FEES:** If a Lease Payment is not made when due, you will pay us, within one month, a late charge of 5% of the payment or $10.00, whichever is greater, but only to the extent permitted by law. With respect to each Lease you agree to pay us a fee of $59.95, plus 1/10th of one percent (1%) of the original Equipment cost in excess of $50,000, to reimburse our expenses for preparing financing statements, other documentation costs and all ongoing administration costs during the term of this Agreement.

4. **DELIVERY AND ACCEPTANCE:** You are responsible, at your own cost, to arrange for the delivery and installation of the Equipment (unless such costs are included in the cost of the Equipment to us). If requested, you will sign a separate Equipment delivery and acceptance certificate. We may at our discretion confirm by telephone that you have accepted the Equipment and this telephone verification of your acceptance of the Equipment shall have the same effect as a signed delivery and acceptance certificate.

5. **SELECTION OF EQUIPMENT/DISCLAIMER OF WARRANTIES:** You have selected the Equipment and the supplier from whom we agree to purchase the Equipment at your request. We are not the manufacturer of the Equipment and we are leasing the Equipment to you "AS-IS". You have selected the Equipment and we MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. We transfer to you for the term of a Lease all warranties, if any, made by the manufacturer.

YOU ALSO ACKNOWLEDGE THAT NO ONE IS AUTHORIZED TO WAIVE OR CHANGE ANY TERM, PROVISION OR CONDITION OF THIS AGREEMENT OR ANY LEASE AND EXCEPT FOR THE MANUFACTURER WARRANTIES, MAKE ANY REPRESENTATION OR WARRANTY ABOUT A LEASE OR THE EQUIPMENT, WE SHALL NOT BE LIABLE FOR ANY DELAYS IN MAKING DELIVERIES OR REPAIRS NOR IN ANY EVENT FOR SPECIAL, RESULTING OR CONSEQUENTIAL DAMAGES OR LOSS OF PROFIT OCCASIONED BY ANY BREACH OF WARRANTY OR REPRESENTATION OR RESULTING FROM THE USE OR PERFORMANCE OF THE EQUIPMENT. YOUR OBLIGATION TO PAY IN FULL ANY AMOUNT DUE UNDER A LEASE WILL NOT BE AFFECTED BY ANY DISPUTE, CLAIM, COUNTERCLAIM, DEFENSE OR OTHER RIGHT WHICH YOU MAY HAVE OR ASSERT AGAINST THE SUPPLIER OR THE EQUIPMENT MANUFACTURER.

6. **TITLE, PERSONAL PROPERTY, LOCATION AND INSPECTION:** Unless you have a $1.00 purchase option, we will have to title to the Equipment. If you have a $1.00 purchase option and/or the Lease is deemed to be a security agreement, you grant us a security interest in the Equipment and all proceeds thereof. You have the right to use the Equipment for the full Lease term provided you comply with the terms and conditions of the Lease. Although the Equipment may become attached to real estate, it remains personal property and you agree not to permit a lien to be placed upon the Equipment or to remove the Equipment without our prior written consent. If we feel it is necessary, you agree to provide us with waivers of interest or liens, from anyone claiming any interest in the real estate on which any item of Equipment is located. We also have the right, at reasonable times, to inspect the Equipment.

7. **USE, MAINTENANCE AND REPAIR:** You are required, at your own cost and expense, to keep the Equipment in good repair, condition and working order, except for ordinary wear and tear, and you will supply all parts and servicing required. All replacement parts used or installed and repairs made to the Equipment will become our property. You may, with our prior written consent, make modifications to the Equipment; provided such modifications do not reduce the value or usefulness of the Equipment or result in the loss of any warranty or any certification necessary for the maintenance of the Equipment and such modifications must be easily removable without causing damage to the Equipment. Before returning the Equipment, you agree to remove such modifications and restore the Equipment to its original condition. If you fail to remove such modifications, we are deemed the owner of such modifications.

IN THE EVENT THE LEASE PAYMENTS INCLUDE THE COST OF MAINTENANCE AND/OR SERVICE BEING PROVIDED BY THE SUPPLIER AND/OR THE MANUFACTURER, YOU ACKNOWLEDGE THAT WE ARE NOT RESPONSIBLE FOR PROVIDING THIS AGREEMENT AND ANY REQUIRED MAINTENANCE AND/OR SERVICE FOR THE EQUIPMENT. YOU WILL MAKE ALL CLAIMS FOR SERVICE AND/OR MAINTENANCE SOLELY TO THE SUPPLIER AND/OR MANUFACTURER AND SUCH CLAIMS WILL NOT AFFECT YOUR OBLIGATION TO MAKE ALL REQUIRED LEASE PAYMENTS.

8. **ASSIGNMENT:** YOU AGREE NOT TO TRANSFER, SELL, SUBLEASE, ASSIGN, PLEDGE OR ENCUMBER EITHER THE EQUIPMENT OR ANY RIGHTS UNDER THIS AGREEMENT AND ANY LEASE WITHOUT OUR PRIOR WRITTEN CONSENT. You agree that we may sell, assign or transfer any Lease and if we do, the new owner will have the same rights and benefits that we now have and will not have to perform any of our obligations and that the rights of the new owner will not be subject to any claims, defenses, or set-offs that you may have against us. Any such assignment, sale or transfer of a Lease or the Equipment will not relieve us of our obligations to you under the Lease.

9. **REDELIVERY AND RENEWAL:** Upon at least sixty (60) days but not more than one hundred twenty (120) days written notice to us prior to the expiration of the Lease term, you shall advise us of your intention to return the Equipment to us at the end of the Lease term. Provided you have given such timely notice, you shall return the Equipment, freight and insurance prepaid, to us in good repair, condition and working order, ordinary wear and tear excepted, in a manner and to a location designated by us. If you fail to notify us, or having notified us, you fail to return the Equipment as provided herein, the Lease shall renew for consecutive sixty (60) day periods and you agree to continue to make Lease Payments at the same monthly Lease Payments as set forth in the Lease subject to the right of either party to terminate the Lease upon sixty (60) days written notice, in which case you will immediately deliver the Equipment to us stated in this paragraph.

10. **LOSS OR DAMAGE:** You are responsible for the risk of loss or destruction of, or damage to the Equipment. No such loss or damage relieves you from any obligation under a Lease. You agree to promptly notify us in writing of any loss or destruction or damage to the Equipment and you will, at our option, (a) repair the Equipment to good condition and working order, (b) replace the Equipment with like Equipment in good repair, condition and working order, acceptable to us and transfer clear title to such replacement Equipment to us, such Equipment shall be subject to the Lease and be deemed the Equipment, or (c) pay to us the present value of the total of all unpaid Lease Payments for the full Lease term, plus the estimated fair market value of the Equipment at the end of the originally scheduled Lease term or any End of Lease Option price stated on the Lease ("Residual"), with the accelerated Lease Payments and the Residual discounted at the lesser of (a) a per annum interest rate equivalent to that of a U.S. Treasury constant maturity obligation (as reported by the U.S. Treasury Department) that would have a repayment term equal to the remaining Lease term, all as reasonably determined by us, or (b) 3% per annum (the "Present Value Rate"), whereupon the Lease shall terminate. All proceeds of insurance received by us as a result of such loss or damage will be applied, where applicable, toward the replacement or repair of the Equipment or the payment of your obligations.

11. **INDEMNITY:** We are not responsible for any losses or injuries caused by the installation or use of the Equipment. You agree to reimburse us for and to defend us against any claim for losses or injuries caused by the Equipment. This indemnity will continue even after the termination of this Agreement and the Leases.

12. **TAXES:** You agree to pay all license and registration fees, sale and use taxes, personal property taxes and all other taxes and charges, relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment as part of the Lease Payment or as billed by us. You agree that if we pay any taxes or charges on your behalf, you will reimburse us for all such payments and will pay us interest and a late charge (as calculated in Section 3) on such payments with the next Lease Payment plus a fee for our collecting and administering any taxes, assessments or fees and remitting them to the appropriate authorities. Further, you will indemnify us upon demand and on a net after-tax basis against the loss (including recapture) of or inability to claim, or if we shall suffer a disallowance or deferral of, as determined in good faith by us, any Equipment ownership, or Lease-related, federal and/or state income tax benefits anticipated by us at the Commencement Date resulting from any of your acts or omissions or any inaccuracy of any statements or information provided by you.

13. **INSURANCE:** During the term of each Lease, you will keep the Equipment insured against all risks of loss or damage in an amount not less than the replacement cost of the Equipment, without deductible and without co-insurance. You will also obtain and maintain for the term of each Lease, comprehensive public liability insurance covering both personal injury and property damage of at least $100,000 per person and $300,000 per occurrence for bodily injury and $50,000 for property damage. We will be the sole named loss payee on the property insurance and named as an additional insured on the public liability insurance. You will pay all premiums for such insurance and must deliver proof of insurance coverage satisfactory to us. If you do not provide such insurance, you agree that we have the right, but not the obligation, to obtain such insurance and add an insurance fee to the amount due from you, on which we make a profit.

14. **DEFAULT:** You are in default of this Agreement and any Lease if any of the following occurs: a) you fail to pay any Lease Payment or other sum when due; b) you breach any warranty or other obligation under this Agreement, a Lease, or any other agreement with us; c) you, any partner or any guarantor dies, you become insolvent or unable to pay your debts when due; you stop doing business as a going concern; you merge, consolidate, transfer all or substantially all of your assets; you make an assignment for the benefit of creditors or you undergo a substantial deterioration in your financial condition; or d) you, any guarantor or any partner, voluntarily file or have filed against you or it involuntarily, a petition for liquidation, reorganization, adjustment of debt or similar relief under the Federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver or liquidator is appointed for you or it or a substantial part of your or its assets.

15. **REMEDIES:** We have the following remedies if a default should occur: a) Upon written notice, declare the entire balance of the unpaid Lease Payments for the full term immediately due and payable and sue for and receive all Lease Payments and any other payments then accrued or accelerated under a Lease or any other agreement plus the Residual (as defined in Section 10) with all accelerated Lease Payments and the Residual discounted at the Present Value Rate (as defined in Section 10), but only to the extent permitted by law; b) Charge you interest on all monies due us at the rate of eighteen percent (18%) per year from the date of default until paid, but in no event more than the maximum rate permitted by law; c) Charge you a return-check or non-sufficient funds charge ("NSF Charge") to reimburse us for the time and expense incurred with respect to a check that is returned for any reason including non-sufficient or uncollected funds, such NSF Charge is stipulated and liquidated at $25.00; and d) Require that you return the Equipment to us and in the event you fail to return the Equipment, enter upon the premises peaceably with or without legal process where the Equipment is located and repossess the Equipment. Such return or repossession of the Equipment will not constitute a termination of a Lease unless we expressly notify you in writing. In the event the Equipment is returned or repossessed by us and unless we have terminated the Lease, we will sell or re-rent the Equipment to any persons with any terms we determine, at one or more public or private sales, with or without notice to you, and apply the net proceeds after deducting the costs and expenses of such sale or re-rent, to your obligations with you remaining liable for any deficiency and with any excess being retained by us. The credit for any sums to be received by us from any such rental shall be discounted to the date of the agreement at six percent (6%) per year.

You are also required to pay (i) all expenses incurred by us in connection with the enforcement of any remedies, including all expenses of repossessing, storing, shipping repairing and selling the Equipment, and (ii) reasonable attorneys' fees.

You agree that any delay or failure to enforce our rights under this Agreement or any Lease does not prevent us from enforcing any rights at a later time.

16. **PURCHASE OPTION:** Upon expiration of the Lease term, provided you are not in default, you shall have the option to purchase all but not than less than all of the Equipment on the terms as indicated in the End of Lease Options checked off on the Lease. We will use our reasonable judgment to determine the Equipment's fair market value for all FMV purchase options which shall be based on the Equipment remaining in place.

17. **SECURITY DEPOSIT:** We will retain any required security deposit to insure the performance of your obligations. Any security deposit is non-interest bearing. We may apply any security deposit to cure any default by you, in which event you will promptly restore any amount so applied. If you are not in default, any security deposit will be returned to you at the termination of the Lease.

18. **WARRANTY OF BUSINESS PURPOSE:** You warrant and represent that the Equipment will be used for business purposes, and not for personal, family or household purposes.

19. **UCC FILINGS AND FINANCIAL STATEMENTS:** You authorize us to file a financing statement with respect to the Equipment signed by us where permitted by the Uniform Commercial Code and grant us the right to sign such financing statement on your behalf. The filing of a financing statement is not to be construed as evidence that any security interest was intended to be created, but only to give public notice of our ownership of the Equipment. If a Lease is deemed at any time to be one intended as security then you grant us a security interest in the Equipment and the proceeds from the sale, rent or other disposition of the Equipment. If we feel it is necessary, you agree to submit financial statements (audited if available) on a quarterly basis.

20. **NOTICE:** Written notices will be deemed to have been given when delivered personally or deposited in the United States mail, postage prepaid, addressed to the recipient at its address above or at any other address subsequently provided in writing.

21. **UCC — ARTICLE 2A PROVISIONS:** You agree that each Lease is a Finance Lease as that term is defined in Article 2A of the Uniform Commercial Code ("UCC"). You acknowledge that we have given you the name of the Supplier of the Equipment. We hereby notify you that you may have rights under the contract with the Supplier and you may contact the Supplier for a description of any rights or warranties that you may have under this supply contract. You also waive any and all rights and remedies granted you under Sections 2A-508 through 2A-522 of the UCC including, but not limited to: the right to repudiate the Lease and reject the Equipment; the right to cancel the Lease; the right to revoke acceptance of the Lease; the right to grant a security interest in the Equipment in your possession and control for any reason; or the right to recover damages for any breach of warranty.

22. **CHOICE OF LAW:** This Agreement and each Lease was made in the Commonwealth of Pennsylvania (by us having countersigned them in Wayne, Pennsylvania); and they are to be performed in the Commonwealth of Pennsylvania by reason of the Lease Payments you are required to pay us in Pennsylvania. This Agreement and each Lease shall in all respects be interpreted and all transactions subject to this Agreement and each Lease and all rights and liabilities of the parties under this Agreement and each Lease shall be determined and governed as to their validity, interpretation, enforcement and effect by the laws of the Commonwealth of Pennsylvania except for local filing requirements. You consent to and agree that non-exclusive jurisdiction, personal or otherwise, over you and the Equipment shall be with the Courts of the Commonwealth of Pennsylvania or the Federal District Court for the Eastern District of Pennsylvania solely at our option with respect to any provision of this Agreement or any Lease. YOU ALSO AGREE TO WAIVE YOUR RIGHT TO A TRIAL BY JURY.

23. **ENTIRE AGREEMENT; SEVERABILITY; WAIVERS:** This Agreement and each Lease contain the entire agreement and understanding. No agreements or understandings are binding on the parties unless set forth in writing and signed by the parties. Any provision of this Agreement and each Lease which for any reason may be held unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provisions of this Agreement and each Lease.

24. **FACSIMILE DOCUMENTATION:** You agree that a facsimile copy of the Agreement with facsimile signatures may be treated as an original and will be admissible as evidence of the Agreement.

---

**LESSEE SIGNATURE**

THIS AGREEMENT AND ALL LEASES SHALL NOT BE BINDING UPON LESSOR OR BECOME EFFECTIVE UNTIL AND UNLESS LESSOR EXECUTES THEM. THE LEASES ARE NOT INTENDED FOR HOME OR PERSONAL USE OR FOR TRANSACTIONS WITH AN EQUIPMENT COST LESS THAN $1,000.

Signature X _[signed]_  Date: 10/5/05

Print Name: Alan Horn

Title: EVP General Counsel and Secretary

Legal Name of Corporation or Partnership:
AMERICAN HOME MORTGAGE CORP.

**LESSOR**

Lessor Signature X _[signed] Jessica Jasmine_  Date: 10·19·05

Print Name:

Title:

For
DE LAGE LANDEN FINANCIAL SERVICES, INC.

Lease Number:

Lease Commencement Date: 10·19·05

Vendor ID Number:

050EDDC102

# MASTER LEASE AGREEMENT ADDENDUM

This Master Lease Agreement Addendum ("Addendum") is made this 3rd day of October, 2005 and is made part of and modifies that certain Master Lease Agreement dated October 3, 2005 by and between De Lage Landen Financial Services, Inc ("Lessor") and American Home Mortgage Corp. ("Lessee"). The words "you" and "your" refer to the Lessee and the words "we", "us" and "our" refer to the Lessor. Unless otherwise defined herein, capitalized terms shall have the definition set forth in the Agreement.

NOW, THEREFORE, for good and valuable consideration, intending to be legally bound and pursuant to the terms and conditions of the Agreement, it is hereby agreed as follows:

1. The fourth sentence of Section 1 is hereby deleted and replaced with the following:

    "Each Schedule shall constitute a separate Lease Agreement ("Lease") incorporating all of the terms of this Agreement and shall not have any effect on any other Schedule (including any ability to amend, modify or waive any provision) executed and delivered by the Lessee at any other time."

2. The following sentence is added at the end of Section 1:

    "For each Lease Schedule YOU promise to pay US a Base Monthly Lease Payment ('Lease Payment') as set forth therein and plus the Cost-Per-Copy Additional Copies ("Additional Copy Charge") on copies in excess of the Monthly copy allowance. The Additional Copy Charge will be invoiced at the end of each meter read period set forth on each Lease. YOU agree to provide accurate and timely meter readings on the forms or other alternative means specified by US."

3. In the fourth sentence of Section 2, the word "reasonable" is inserted immediately before the word "expenses".

4. The following sentence is added at the end of the first paragraph of Section 2.

    "Within ten (10) days of our receipt of a Lease, we will notify you if we do not accept such Lease."

5. The last sentence of the second paragraph of Section 2 is deleted.

6. In the first sentence of Section 3, the words "a late charge of 5% of the payment or $10.00, whichever is greater," are replaced with the words "a late charge of 1.5%".

7. In the second sentence of Section 3, the word "reasonable" is inserted immediately before the word "expenses".

8. In the second sentence of Section 3, the word "related" is inserted immediately before the word "documentation".

9. The first sentence of Section 4 is deleted and replaced with the following:

   "YOU have selected the Equipment and the related maintenance program and supplies as described in a separate maintenance agreement with the Equipment supplier ("Supplier")."

10. The following sentence is added after the first sentence of Section 8.

    YOU MAY TRANSFER OR ASSIGN A LEASE TO YOUR AFFILIATE PROVIDED SUCH AFFILIATE HAS EQUAL OR GREATER FINANCIAL STRENGTH THAN YOU AS DETERMINED BY US IN OUR REASONABLE SOLE DISCRETION.

11. In the second sentence of Section 8, the words "(each, a "Transfer"), are inserted immediately after the word "transfer".

12. The following sentence is added at the end of Section 8.

    "If we transfer or assign this Lease, we will provide you with written notice within five (5) Business Days of such Transfer."

13. In the third sentence of Section 10, the word "reasonably" is added immediately before the word "acceptable".

14. The following sentence is added after the second sentence of Section 11.

    "We will indemnify you for any losses, injuries or damages resulting from our, our employees or our agent's acts or omissions, gross negligence or intentional misconduct."

15. In the second sentence of Section 12 the word "reasonable" is inserted immediately before the word "fee".

16. In the last sentence of Section 12, the word "material" is inserted immediately prior to the word "inaccuracy".

17. In the last sentence of Section 13, the words "a reasonable" are inserted immediately before the words "insurance fee".

18. In the first sentence of Section 14, the word "material" is inserted immediately before the word "obligation".

19. In the first sentence of Section 14, the word "related" is inserted immediately after the word "other".

20. In the first sentence of Section 14, the word "or" is inserted immediately after the word "assets".

21. In the first sentence of Section 14, the words "or you undergo a substantial deterioration in your financial condition" are deleted.

22. In the first sentence of Section 15, the words "eighteen percent (18%) are replaced with the words (twelve percent 12%).

23. In the third sentence of Section 15, the word "outstanding" is inserted immediately before the word "obligations".

24. In the third sentence of the first paragraph of Section 15, the words "with respect to such obligations," are inserted immediately after the word "deficiency".

25. In the first sentence of Section 16, the words "with respect to such Lease" are inserted immediately after the word "Equipment".

26. The last sentence of Section 19 is deleted and replaced with the following:

> "If as a result of specific facts or circumstances we become reasonably concerned about your financial condition, you agree to submit financial statements on a quarterly basis."

27 The section heading for Section 23 is deleted and replaced with the following:

> 23. ENTIRE AGREEMENT; SEVERABILITY; WAIVERS; AMENDMENTS

28 The following is added at the end of Section 23.

> Any waiver of a provision set forth herein or in any schedule by any party must be made in writing and signed by such party. No provision of this Agreement or any schedule may be amended or modified without the prior written consent of all parties thereto.

IN WITNESS WHEREOF, the parties have caused this Addendum to be executed on the date set forth above.

Lessee: AMERICAN HOME MORTGAGE CORP.

By: _____

Print name: Alan B. Horn

Title: Executive Vice President, General Counsel and Secretary

Lessor: DE LAGE LANDEN FINANCIAL SERVICES, INC.

By: _____

Print name: Steve Majer

Title: VP Sales Support

Jessica Fosmire
24663648
10-19-05

4

# MASTER LEASE SCHEDULE

This Master Lease Schedule is entered into pursuant to and incorporates the terms and conditions of that certain Master Lease Agreement dated as of OCTOBER 3, 20 05 ("Agreement") by and between De Lage Landen Financial Services, Inc. ("Owner") and AMERICAN HOME MORTGAGE CORP. ("Customer").

## CUSTOMER INFORMATION

- Full Legal Name: AMERICAN HOME MORTGAGE CORP.
- DBA Name (if Any): ___
- Address: 520 BROAD HOLLOW ROAD
- Phone Number: (516) 949-3900
- City: MELVILLE
- County: ___
- State: NY
- Zip Code: 11747
- Federal Tax I.D. Number: ___
- Purchase Order Reference Number: ___
- Send Invoice to Attention of: ___

## INDIVIDUAL METER OPTION

| Make/Model/Accessories | Serial # | Base Monthly Rental Payment | Monthly Copy Allowance | Cost-Per-Copy Additional Copies | Initial Meter Reading | Meter Reading Frequency |
|---|---|---|---|---|---|---|
| 1. SEE SPREAD SHEET ATTACHED | | | 0 | 0 | 0 | ☐ Monthly ☐ Semi-Annually ☐ Quarterly ☐ Annually |
| 2. | | | | | | ☐ Monthly ☐ Semi-Annually ☐ Quarterly ☐ Annually |
| 3. | | | | | | ☐ Monthly ☐ Semi-Annually ☐ Quarterly ☐ Annually |
| 4. | | | | | | ☐ Monthly ☐ Semi-Annually ☐ Quarterly ☐ Annually |

BILLING PREFERENCE: ☐ Each unit invoiced separately (include all billing locations on Information Schedule) ☐ All units one invoice (with individual unit reports) ☐ Each unit invoiced separately to one billing location
FOR ADDITIONAL UNITS ATTACH SCHEDULE A.

## CONSOLIDATED BILLING OPTION

| Make/Model/Accessories | Serial # | Initial Meter Reading | Make/Model/Accessories | Serial # | Initial Meter Reading |
|---|---|---|---|---|---|
| 1. | | | 5. | | |
| 2. | | | 6. | | |
| 3. | | | 7. | | |
| 4. | | | 8. | | |

ALL UNITS LISTED ABOVE ARE CONSOLIDATED UNDER THIS PLAN
BILLING PREFERENCE: ☐ Consolidated units with individual meter option above on one invoice
☐ Consolidated units separate from individual meter option above
FOR ADDITIONAL UNITS ATTACH SCHEDULE A.

Base Monthly Rental | Monthly Copy Allowance | Cost-Per-Copy Additional Copies | Meter Reading Frequency ☐ Monthly ☐ Semi-Annually ☐ Quarterly ☐ Annually

## PAYMENT

| Term in Months | First Base Monthly Rental Payment | (PLUS) Security Deposit | (PLUS) Sales Tax | (EQUALS) Total Payment Enclosed |
|---|---|---|---|---|
| 39 | + | + | = | $0.00 |

## SALES TAX OPTIONS

Each payment is subject to sales tax of ___ % of amounts or percentages that may be in effect by location
☐ Exempt – Exemption Certificate Attached.

## CUSTOMER SIGNATURE

YOU AGREE TO ALL OF THE TERMS AND CONDITIONS CONTAINED IN THE AGREEMENT, AND IN ANY ATTACHMENTS TO THE SAME ALL OF WHICH ARE INCORPORATED INTO AND BECOME PART OF THIS MASTER LEASE SCHEDULE. YOU ACKNOWLEDGE TO HAVE READ AND AGREE TO ALL THE TERMS AND CONDITIONS AND UNDERSTAND THAT THIS IS A NON-CANCELABLE AGREEMENT FOR THE FULL TERM SHOWN ABOVE. YOU AGREE THAT A FACSIMILE COPY OF THIS DOCUMENT WITH FACSIMILE SIGNATURES MAY BE TREATED AS AN ORIGINAL AND WILL BE ADMISSIBLE AS EVIDENCE IN A COURT OF LAW.

You acknowledge that the Equipment is: ☒ New ☐ Used
Signature X: _[signed]_  Date: 10/3/05
Print Name: Alan Horn
Title: EVP General Counsel and Secretary
Legal Name of Corporation or Partnership: AMERICAN HOME MORTGAGE CORP.

## DELIVERY AND ACCEPTANCE

You acknowledge that the Equipment set forth has been received, has been put in use is in good working order and is satisfactory and acceptable.
Signature X: ___  Date: ___
Print Name: ___
Title: AMERICAN HOME MORTGAGE CORP.
Legal Name of Corporation or Partnership: ___

## OWNER SIGNATURE

Owner: DE LAGE LANDEN FINANCIAL SERVICES, INC.
Signature X: _[signed]_  Date: 10/19/05
Title: ___  Agreement Number: 2406363

©2005 All Rights Reserved. Printed in the U.S.A. GECEDOC139 9/05

| Location | Billing Cod/Model # | Serial # | Base Payment |
|---|---|---|---|
| 520 Broad Hollow Rd. Millville, NY 11747 | Toshiba E-450 | | $249.00 |
| 600 Jefferson St. Rockville, MD 20852 | Toshiba E-450 | | $249.00 |
| 538 Broad Hollow Rd. Millville, NY 11747 | Okidata 5680 | | $150.00 |
| | Okidata 5680 | | |
| 7100 Commerce Way Brentwood, TN 37027 | Toshiba E-350 | | $269.00 |
| 538 Broad Hollow Rd. Millville, NY 11747 | Ricoh 2238 | | $343.50 |
| 520 Broad Hollow Rd. Govt. Insuring | Toshiba E-450 | | $209.00 |
| 538 Broad Hollow Rd. 4th Flr. Thomas McCambridge | Toshiba E-450 | | $209.00 |
| 7365 Merchant Ct. Sarasota, FL 34240 | Toshiba E-450 | | $209.00 |
| 538 Broad Hollow Rd. Correspondent Division | Toshiba E-450 | | $209.00 |
| 45 Braintree Hill Office Pk. Braintree, MA 02184 | Ricoh Aficio 2022 | | $252.00 |
| | Ricoh 3310 LE | | |
| 538 Broad Hollow Rd. | Toshiba E-850 | | $2,600.00 |
| | Toshiba E-850 | | |
| | Toshiba E-850 | | |
| | Toshiba E-850 | | |
| 2411 N. Oak St. Myrtle Beach, NC 29577 | Toshiba E-450 | | $339.00 |
| 1060 Maitland Commons Maitland, FL 32750 | 5510L | | $120.00 |
| 115 River Rd. #1025 Edgewater NJ 07020 | 98 Toshiba E-450 | | $249.00 |
| 700 Veterans Memorial Hwy. Ste. 100 Hauppauge, NY 11788 | 53 Toshiba E-450 | | $209.00 |

Customer Signature _[signature]_

Title  EVP, General Counsel and Secretary

Date  10/5/05

_[handwritten: Jay 2466348 10/19.05]_