Case 07-11047-CSS    Doc 665-1    Filed 09/10/07    Page 1 of 3

**imagistics**

LEASE AGREEMENT NUMBER: 56875381391

**Pitney Bowes**
Pitney Bowes Credit Corporation

## LESSEE BUSINESS INFORMATION

- FULL LEGAL NAME OF LESSEE: Columbia National Mortgage
- DBA NAME:
- BILLING ADDRESS: 7100 Forest Ave Suite 101
- CITY: Richmond
- STATE: VA
- ZIP+4: 23226
- PHONE #: (804) 673-0030
- CONTACT NAME: Mikki Swift
- INVOICE ATTN OF: Mikki Swift
- CUSTOMER P.O. #:
- EMAIL ADDRESS:

## EQUIPMENT

| QTY. | EQUIPMENT MODEL & DESCRIPTION | ACCESSORIES |
|---|---|---|
| 1 | ZB45 New Digital | 9246 Duplex |
| 1 | 2135k Starter | |
| 1 | 9240 Scanner | |
| 1 | 9247 3x paper Drawers | |
| 1 | 9242 Simple Finisher | |

☐ See attached schedule for additional Equipment/Accessories

Equipment Location (if different from Billing Address): _____

## PAYMENT PLAN

Lease Term: 42
Frequency: ☒ Monthly ☐ Quarterly ☐ Other
Initial Periodic Payment of $ 311.66 Received
For First

Purchase Option at End of Term: Fair Market Value

| # of Payments | Total Periodic Payment (applicable taxes not included) |
|---|---|
| First 1 | $311 |
| Next 41 | $311 |
| Next | |

Included in your payment: ☐ Equipment Maintenance ☐ Copier Supplies ☐ Software Maintenance

## TERMS & CONDITIONS

PBCC IS NOT AN AGENT OF VENDOR, AND NEITHER VENDOR NOR ANY OF ITS SALESPERSONS ARE PBCC'S AGENTS. THEY HAVE NO AUTHORITY TO SPEAK ON OUR BEHALF OR MAKE ANY CHANGES TO THE LEASE. THIS LEASE CANNOT BE CANCELLED OR TERMINATED FOR ANY REASON. ALL PAYMENTS UNDER THIS LEASE ARE UNCONDITIONAL AND ABSOLUTE AND YOU SHALL PAY THEM FOR THE ENTIRE LEASE TERM REGARDLESS OF WHETHER THE EQUIPMENT IS DAMAGED, DESTROYED, DEFECTIVE, UNUSABLE OR BECOMES OBSOLETE, AND REGARDLESS OF ANY DISPUTE WITH, OR CLAIMS AGAINST, PBCC, VENDOR OR ANY OTHER PARTY. YOUR OBLIGATIONS UNDER THIS LEASE ARE NOT SUBJECT TO DEFENSE, SETOFF, COUNTERCLAIM, ABATEMENT OR REDUCTION FOR ANY REASON. IF YOU HAVE ANY CLAIMS CONCERNING THE EQUIPMENT OR YOUR RELATIONSHIP WITH VENDOR, YOU MUST MAKE THEM AGAINST VENDOR.

1. **Definitions; Parties' Relationship.** The words "you" and "your" mean the Lessee(s). The words "we", "us", "our" and "PBCC" refer to Lessor, Pitney Bowes Credit Corporation. "Parties" means PBCC and you. The term "Vendor" means Imagistics International Inc. "UCC" means Uniform Commercial Code. The Equipment was selected by you and supplied by Vendor, not PBCC (Continued on back page)

## LEASE ACCEPTANCE

| Lessor: PITNEY BOWES CREDIT CORPORATION | Lessee: Columbia National Mortgage |
|---|---|
| Authorized Signature: [signature] | Authorized Signature: Vanessa P. McLane AVP 8/3/04 |
| Print Name / Title / Date | Print Name: Vanessa P. McLane / Title / Date |

## PERSONAL GUARANTY

In consideration of Lessor entering into the Lease in reliance on this guaranty, the undersigned unconditionally and irrevocably guarantees to Lessor, its successors and assigns, the prompt payment and performance of all existing and future obligations to Lessor, including the Lease. I agree that (a) this is a guaranty of payment and not of collection, and that Lessor can proceed directly against me personally without resorting to any security or seeking to collect from Lessee, (b) I waive all suretyship defenses including impairment of collateral, failure to properly perfect a security interest in the collateral, and all notices, including those of protest, presentment and demand, (c) Lessor may renew, extend or otherwise change the terms of the Lease without notice to me and I will be bound by such changes, and (d) I will pay all Lessor's costs of enforcement and collection, including attorneys' fees. This guaranty survives the bankruptcy of Lessee and binds my administrators, successors and assigns. My obligations under this guaranty continue even if Lessee becomes insolvent or bankrupt or is discharged from bankruptcy and I agree not to seek to be repaid by Lessee in the event I must pay Lessor, until Lessor has been paid all amounts owed.

Printed Name: _____ By (Individually): _____

Form 67342 Rev 5/03

## LEASE TERMS & CONDITIONS

2. **Lease Agreement; Payments.** We agree to lease to you and you agree to lease from us the Equipment listed on page one or identified in any attached Equipment Schedule. You agree to pay us the Lease Payments and all other amounts due and payable for the entire Lease Term, at the Billing Frequency you requested. You agree that all payments will be in advance. The first Lease Payment is due on the date we begin invoicing you. Lease Payments will be due on the same day of each billing period, whether or not we invoice you. All Payments due under this Lease shall be payable only to Pitney Bowes Credit Corporation at P.O. Box 856466, Louisville, KY 40285-5460, until we direct you otherwise in writing.

3. **Lease Term.** The term of this Lease is the Initial Lease Term indicated on page one or identified in any attached Equipment Schedule plus any "Interim Usage Period". The Initial Lease Term begins for Leases billed quarterly during the first month of the calendar quarter next following the date of your first invoice. The period between the date your Equipment is delivered and the beginning of the Initial Lease Term is the Interim Usage Period. For use of the Equipment during the Interim Usage Period, you shall pay as "Interim Rent" a prorated portion of the Lease Payment. The Lease shall terminate after you perform all of your obligations under the Lease. If during the Initial Lease Term, you enter into a new lease (e.g. for upgraded or replacement equipment) which incorporates the remaining payments under this Lease and the new lease is subsequently terminated, we may reinstate this Lease. Notwithstanding anything to the contrary herein, neither this Lease nor the commencement of any billing shall occur prior to the Equipment delivery as provided herein.

4. **Equipment Delivery and Location.** The Equipment will be delivered to the location specified. Your acceptance of the Equipment occurs upon delivery. The Equipment cannot be moved to another location without first obtaining our written consent. If we give our consent and you move the Equipment, you will pay the applicable relocation fee and reimburse any costs we incur.

5. **Equipment Ownership; Labeling and UCC Filing.** We agree that this Lease is a "finance lease" governed by UCC Article 2A. PBCC is and shall remain the sole owner of the Equipment. You agree to keep the Equipment free from any liens or encumbrances. We may label the Equipment as our property and subject to lease. You authorize us to sign and file a UCC financing statement on your behalf, and do all other acts to protect our interests in the Equipment and Lease. Our filing of a UCC financing statement is precautionary only.

6. **Assignment.** YOU MAY NOT ASSIGN, SELL, TRANSFER OR SUBLET THE EQUIPMENT OR THIS LEASE (COLLECTIVELY "ASSIGN(MENT)") WITHOUT OUR PRIOR WRITTEN CONSENT. If we agree to an Assignment, you will pay the applicable assignment fee and reimburse us for any costs we incur in connection with that Assignment. We may sell, assign or transfer all or any part of this Lease and/or the Equipment. The new owner will have the same rights that we have, but you agree not to assert against them any claims, defenses or set-offs that you may have against us or any supplier. You also agree and acknowledge that any Assignment by us will not materially change your obligations hereunder.

7. **End Of Lease Options; Equipment Return.** If no default exists under this Lease, at the expiration of the Initial Lease Term, upon 90 days prior written notice, you may either: (a) enter into a new lease on mutually agreeable terms, (b) purchase all (but not less than all) the Equipment "AS IS", "WHERE IS", "with all faults" and with no express or implied warranties for fair market value (which we shall determine in our reasonable judgment); or (c) at your expense, de-install, inspect, test, insure the Equipment for its full replacement value and properly pack the Equipment, by delivering it on board such common carrier with freight prepaid and to such destination within the United States as we may specify. If you have not elected one of the above options by providing the requisite notice, the term of this Lease will be extended for successive 3 month renewal terms until the Lessee returns the Equipment. During such renewal term(s), the Lease payment will remain the same.

8. **Taxes.** You agree to pay, and indemnify us for, all charges and taxes which are based on, measured by, imposed on, remitted from or levied upon this Lease, the billing or receiving of Lease Payments, the sale, purchase, personal property ownership, leasing, value, possession, or use of the Equipment, including, without limitation, sales, excise, use, property, ad valorem, stamp, recording, gross receipts or franchise taxes, but excluding taxes on or measured by our net income. You agree to pay the applicable fee to cover our expenses associated with the administration, billing and tracking of such charges and taxes. Your obligations under this Section commence upon execution and survive termination or cancellation of this Lease.

9. **Liability.** WE ARE NOT RESPONSIBLE FOR ANY LOSSES OR INJURIES TO YOU OR ANY THIRD PARTIES CAUSED BY THE EQUIPMENT OR ITS USE. You agree to reimburse us for, and to defend us against any costs, expenses, damages, fines, settlements, claims or liability arising out of or relating to this Lease or the Equipment, including reasonable attorneys' fees, but excluding those adjudged to have arisen solely from our gross negligence or willful misconduct.

10. **Equipment Warranty Information.** WE MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, REGARDING ANY MATTER WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS CONDITION, ITS MERCHANTABILITY, ITS FITNESS FOR A PARTICULAR PURPOSE, ITS FREEDOM FROM INFRINGEMENT, OR OTHERWISE. WE LEASE THE EQUIPMENT TO YOU "AS IS," "WHERE IS" AND "WITH ALL FAULTS." WE SHALL NOT BE LIABLE TO YOU AND YOU SHALL NOT MAKE A CLAIM AGAINST US FOR ANY LOSS, DAMAGE (INCLUDING INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES) OR EXPENSE OF ANY KIND CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT. WE HEREBY ASSIGN TO YOU ANY WARRANTY RIGHTS WE HAVE AGAINST VENDOR.

11. **Late Payments/Returned Items.** If any Payment under this Lease is not paid in full on or before its due date, you will be charged the applicable administrative fee assessed on delinquent accounts. You also agree to pay interest on any payment delinquent under this Lease from its due date until paid in full at the lesser of 18% per year or the maximum rate allowed by law. For each dishonored or returned payment item, check or draft, you will be assessed the applicable returned item fee.

12. **Default.** You will be in immediate default without notice under this Lease if: (a) you fail to remit any Payment under this Lease when due or if you breach any other obligation under this Lease; (b) you become insolvent, are liquidated, dissolve, merge, transfer substantially all of your stock or assets, stop doing business, have a material adverse change to your financial condition, or assign your rights or property for the benefit of creditors, (c) a petition is filed by or against you under any bankruptcy or insolvency law, or (d) you are in default under any other present or future agreement between you and us, or you and any of our affiliates ("Agreements").

13. **Remedies.** Upon your default, we may do any or all of the following: (a) cancel the Lease (and any purchase option, lease extension or other rights you may have under the Lease), and any Agreements; (b) accelerate and require immediate payment, as liquidated damages, of all Lease Payments and other sums due under the Lease or due under any Agreements, whether accrued or due in the future; (c) require return of the Equipment, (d) require immediate payment, as compensation for your failure to return the Equipment and not as a penalty, of an amount equal to the remaining value of the Equipment at the end of the Initial Lease Term, as determined by us in our reasonable discretion, and/or (e) pursue any other remedy we may have at law or in equity. You waive any notice of our repossession or disposition of the Equipment. By repossessing the Equipment, we do not waive our right to collect the balance due on the lease. You shall pay all our costs in enforcing our rights against you. We reserve all of our rights against you even if we do not enforce them at the time you default. All of our contractual, legal, equitable or other remedies available under this Lease are cumulative and are not conditioned upon your default continuing. If required, any accelerated Lease Payments and the remaining value will be discounted to present value at the rate then applicable to nearest term U.S. Treasury obligations.

14. **Equipment Use.** You shall use the Equipment only (a) for business or commercial purposes, and (b) in the manner specified in the manuals and instructions covering the Equipment. You shall comply with all laws and regulations relating to the Equipment.

15. **Equipment Maintenance and Repairs.** You shall, at your expense, keep the Equipment in good repair, condition and working order, except for ordinary wear and tear. You will keep the equipment eligible for any manufacturer's maintenance certification.

16. **Risk of Loss.** You assume and agree to bear the entire risk of loss, theft, destruction or other impairment of the Equipment (excluding normal wear and tear) regardless of cause (collectively "Loss") for the entire term of this Lease until you return the Equipment to us. No Loss shall relieve you of any of your obligations under this Lease. You shall immediately notify us, in writing of the occurrence of any Loss. You shall, at your expense, keep the Equipment insured against Loss for its full replacement value under a comprehensive policy of insurance or other arrangement satisfactory to us ("Insurance"). You or your agent must call us at 1-800-243-9506 and provide us with such evidence. If you fail to provide such evidence, we may, in our sole discretion, refrain from requiring evidence of Insurance and, due to the increased credit risk, include the Equipment in our own risk management program (currently called ValueMAX®) and charge you a fee, which will be separately reflected as an additional charge on our invoices to you. Before including the Equipment in the ValueMAX® program and charging you the fee, we will send to you by U.S. mail a letter reminding you of your obligations to insure the Equipment and provide evidence of Insurance. The letter will be deemed received by you at the time we place it in the mail. If you do not respond with evidence of Insurance within the time specified in the letter, we may immediately include the Equipment in the ValueMAX® program. If we include the Equipment in our program and any loss, damage or destruction to the Equipment occurs that does not result from your gross negligence or willful misconduct, we shall, at our option (provided you are not in default under this Lease, including the payment of any fees invoiced by us), either repair or replace the Equipment and your Lease obligations will remain unchanged. Title to the Equipment, whether repaired or replaced, will at all times remain with us. We will not be liable to you if we terminate any such risk management program. By providing this risk management program, we are not offering or selling you insurance.

17. **Computation of Lease Payment.** You acknowledge that the amount of each Lease Payment is based on the cost to us of purchasing equipment, inclusive of all related expenses, less any discount/allowance paid or payable by Vendor, plus our customary Origination Fee (see Section 20 below), and any amounts payable by us in connection with the execution of this Lease. Included among the related expenses are any unpaid balances due and/or to become due from any previous lease and/or, if the number 7777 appears on your Equipment Schedule, any rental agreements (including equipment return fees and any other unpaid fees).

18. **Lease Invoices.** The amounts we use to compute your Lease Payment, and taxes paid by us upon Equipment purchase, are capitalized and paid by you over the Initial Lease Term. If you so requested, your Equipment Maintenance and/or Software Maintenance payments commence simultaneously with the Initial Lease Term and such payments are included in your Lease Payment as an accommodation to you and Vendor. Other fees, charges and taxes provided for in this Lease are not included in your Lease Payment and will be separately itemized on your invoice. We may increase your Lease Payment if taxes (as set forth in Section 8), or your Equipment Maintenance Agreement charge, increases.

19. **Credit and Filing Fees.** To the extent permitted by law, you shall pay our then applicable fees for: (a) our credit approval process related to this Lease and (b) any governmental or other filings related to this Lease, including UCC financing statements.

20. **Origination Fee.** Unless paid by you separately, a one-time fee to cover the origination, documentation, processing and certain other initial costs associated with this Lease is included as a capitalized amount in computing your Total Periodic Payment.

21. **Customer Purchase Order.** If a purchase order is issued by you, none of its terms and conditions shall modify or supercede the terms and conditions of this Lease. Our failure to object to terms contained in any communication from you will not be a waiver of the terms set forth in this Lease.

22. **Initial Total Periodic Payment.** At our discretion, you shall pay your first Lease Payment upon your execution of this Lease. This payment shall be deemed to have been earned by us when we receive it and shall be applied immediately to your obligation to make your first Lease Payment under this Lease. This payment shall not be refundable to you under any circumstances, including the termination of this Lease for any reason during the lease term.

23. **Customer Waivers.** To the extent you are permitted by law, you waive all rights and remedies under Article 2A (Sections 506-522) of the UCC. To the extent permitted by law, you also waive any rights you now or later may have under any statute or otherwise which require us to sell, lease or otherwise use any Equipment to reduce our damages including our realization of the remaining value of the Equipment, or which may otherwise limit or modify any of our rights or remedies. ANY ACTION RELATED TO THIS LEASE WHICH YOU FILE AGAINST US, INCLUDING BREACH OF WARRANTY OR OTHERWISE, MUST BE STARTED WITHIN ONE (1) YEAR AFTER THE EVENT GIVING RISE TO YOUR CLAIM.

24. **Miscellaneous.** If more than one Lessee is named in this Lease, liability will be joint and several. The use of the singular or the plural herein is not exclusive and the tenses may be used interchangeably as the context requires. You represent that you may lawfully enter into, and perform, this Lease, and that the individuals signing this Lease on your behalf have all necessary authority. This Lease constitutes the entire agreement between the Parties as to the subjects addressed in this Lease, and representations or statements not included herein are not part of this Lease and are not binding on the Parties. By executing page one, you agree to furnish financial information which we may request now and in the future, including your tax identification number, and you authorize us to obtain credit reports on you now and in the future. In addition, any principal, owner, officer or guarantor signing on page one or on any documents executed in connection herewith agrees to furnish financial and other information we may request now and in the future including his or her social security number, and authorizes us to obtain one or more consumer credit reports on him or her in connection herewith and any credit extended as a result hereof. YOU AGREE THAT AN EXECUTED COPY OF THIS LEASE BEARING OUR STAMPED SIGNATURE AND YOUR SIGNATURE (AN ORIGINAL MANUAL SIGNATURE OR SUCH SIGNATURE REPRODUCED BY MEANS OF A RELIABLE ELECTRONIC FORM, SUCH AS PHOTOCOPY, FACSIMILE OR ELECTRONIC SIGNATURE) SHALL BE MARKED "ORIGINAL" BY US AND SHALL CONSTITUTE THE ONLY ORIGINAL DOCUMENT FOR ALL EFFECTIVE PURPOSES. ALL OTHER COPIES SHALL BE DUPLICATES. TO THE EXTENT THIS LEASE CONSTITUTES CHATTEL PAPER (AS DEFINED IN THE UCC), NO SECURITY INTEREST IN THIS LEASE MAY BE CREATED EXCEPT BY THE POSSESSION OR TRANSFER OF THE COPY MARKED "ORIGINAL" BY US. THIS LEASE CANNOT BE AMENDED OR SUPPLEMENTED EXCEPT IN A WRITTEN AGREEMENT SIGNED BY THE PARTIES AND NO PROVISIONS CAN BE WAIVED EXCEPT BY OUR WRITTEN CONSENT. Our acceptance of any payment or check offered by you as a settlement, or in accord and satisfaction, shall not constitute a waiver of our rights, or an accord and satisfaction, unless accompanied by a separate agreement executed by both Parties.