**EXHIBIT G**

# RICOH®

## RMAP MASTER LEASE AGREEMENT SCHEDULE    RLM

1111 Old Eagle School Road, Wayne, PA 19087

To and hereby made a part of the Ricoh RMAP Master Lease Agreement dated as of **June 21 2006** by and between Ricoh Corporation ("Ricoh") and **American Home Mortgage Corp.** ("Customer").

### Customer Bill — To Information
- Parent Company: American Home Mortgage Investment Corp.
- Customer Name: American Home Mortgage Corp
- Dept. Name: IT Dept 3rd Floor East
- Street/P.O. Box: 538 Broad Hollow Rd
- City: Melville  State: NY
- Zip Code: 11747
- Billing Contact Name: Daphne Allende
- Bill-To Phone #: 631 622-2872  Fax: 866 595-7932

### Customer Installation Location
- Customer Name: American Home Mortgage Corp.
- Dept. Name: Columbia MD Facility #2511
- Street/P.O. Box: 7142 Columbia Gateway Drive
- City: Columbia  State: MD
- Zip Code: 21046
- Shipping Contact Name: James W. Johnson
- Bill-To Phone #: 410-872-2278
- 410-872-2278

| Unit # | Equipment/Accessory Description | Installation Charges* | Equipment Payment | Maintenance Payment | Copy Allowance** | Cost-Per-Copy Over Allowance** | Meter Read Frequency** |
|---|---|---|---|---|---|---|---|
| 1 | Aficio 2060SP w/Copy Tray | | 339.37 | | | .0061 | ☒ Monthly ☐ Quarterly |
| 1 | Aficio 2060SP w/Copy Tray | | 339.37 | | | .0061 | ☒ Monthly ☐ Quarterly |
| | | | | | | | ☐ Monthly ☐ Quarterly |
| | | | | | | | ☐ Monthly ☐ Quarterly |

\* List Installation Charges above if being billed separately from the Equipment Payment.
\*\* Not Applicable for Facsimile Equipment Orders.

Supplemental Equipment Schedule Attached ☐

All payments are exclusive of sales and use tax.
Tax Exempt: ☒ No  ☐ Yes (Attach Tax Exempt Certificate by State)

Lease Term:
☐ 12 Month  ☐ 48 Month
☐ 24 Month  ☐ 60 Month
☒ 36 Month  ☐ Other

Payments Due: ☒ Monthly  ☐ Other

Purchase Option: ☒ FMV  ☐ 10%  ☐ $1.00
(Do not leave blank. Appropriate box must be checked.)

Program Description: _____

Billing Preference:
☐ Each unit invoiced separately (include all billing locations on Information Schedule).
☒ All units on one invoice.
☐ All units added to current invoice.

Is Lessee Equipment Purchase Order required?
☒ No  ☐ Yes P.O. # _____

The Terms and Conditions of any Equipment Purchase Order shall not alter or amend the Terms and Conditions of the Lease and the Terms and Conditions of the Lease shall supersede any conflicting provisions in any Equipment Purchase Order.

Is Lessee Maintenance P.O. required?
☒ No  ☐ Yes P.O. # _____
Maintenance Program Type: Supplies and Service
Supplies included in Maintenance Program?  ☐ No  ☒ Yes

The undersigned affirms that he or she has been duly authorized to execute this Lease on behalf of Lessee.

LESSEE: American Home Mortgage Corp.
By: Alan Horn
Signature: [signed]
Title: Executive Vice President
Date: 8/4/6

RICOH CORPORATION
Signature: [signed]
Title: [illegible] 1/8/07
Date: [illegible]

For Internal Use Only
Customer #: _____     Customer Ship-To #: _____

©2003 All Rights Reserved. Printed in the U.S.A.  03RIC265 4/03

2H789548

# RICOH®

**RMAP MASTER LEASE AGREEMENT SCHEDULE**       RLM

1111 Old Eagle School Road, Wayne, PA 19087

To and hereby made a part of the Ricoh RMAP Master Lease Agreement dated as of **June 21 2006** by and between Ricoh Corporation ("Ricoh") and **American Home Mortgage Corp** ("Customer").

## Customer Bill – To Information
☐ See Attached Addendum (Order form(s)) if Multiple Bill – Tos Apply

- Parent Company: **American Home Mortgage Corp**
- Customer Name: **American Home Mortgage**
- Dept. Name: **I Dept. 2nd Floor**
- Street/P.O. Box: **538 Broad Hollow RD**
- Bldg: __  Floor: __  Room: __  Suite: __
- City: **Melville**  State: **NY**
- Zip Code: **11747**  Country: __
- Billing Contact Name: **Daphne Allende**
- Bill-To Phone #: **631 622 2922**  Fax #: **866 599 7932**

## Customer Installation Location
☐ See Attached Addendum (Order form(s)) if Multiple Installation Locations
Number of Orders __

- Customer Name: **American Home Mortgage Corp**
- Dept. Name: **#2511**
- Street/P.O. Box: **7142 Columbia Gateway DR**
- Bldg: __  Floor: __  Room: __  Suite: __
- City: **Columbia**  State: **MD**
- Zip Code: **21046**  Country: __
- Shipping Contact Name: **James W Johnson**
- Bill-To Phone #: **410 822 2278**  Fax #: __

| Unit # | Equipment/Accessory Description | Installation Charges* | Equipment Payment | Maintenance Payment | Copy Allowance** | Cost-Per-Copy Over Allowance** | Meter Read Frequency** |
|---|---|---|---|---|---|---|---|
| 2 | SR 970 Finisher | INCL | | $93.80 | | | ☐ Monthly ☐ Quarterly |
| | | | | | | | ☐ Monthly ☐ Quarterly |
| | | | | | | | ☐ Monthly ☐ Quarterly |
| | | | | | | | ☐ Monthly ☐ Quarterly |

* List Installation Charges above if being billed separately from the Equipment Payment.
** Not Applicable for Facsimile Equipment Orders.

All payments are exclusive of sales and use tax.
Tax Exempt: ☒ No  ☐ Yes (Attach Tax Exempt Certificate by State)

Lease Term:
☐ 12 Month    ☐ 48 Month
☐ 24 Month    ☐ 60 Month
☒ 36 Month    ☐ Other __

Payments Due: ☒ Monthly  ☐ Other __

Purchase Option: ☒ FMV  ☐ 10%  ☐ $1.00
(Do not leave blank. Appropriate box must be checked.)

Program Description: __

Supplemental Equipment Schedule Attached ☐

Billing Preference:
☐ Each unit invoiced separately (include all billing locations on Information Schedule).
☒ All units on one invoice.
☐ All units added to current invoice.

Is Lessee Equipment Purchase Order required?
☒ No   ☐ Yes P.O.# __

The Terms and Conditions of any Equipment Purchase Order shall not alter or amend the Terms and Conditions of the Lease and the Terms and Conditions of the Lease shall supersede any conflicting provisions in any Equipment Purchase Order.

Is Lessee Maintenance P.O. required?
☒ No   ☐ Yes P.O.# __
Maintenance Program Type: **Service + Supplies**
Supplies Included in Maintenance Program?  ☐ No  ☒ Yes

The undersigned affirms that he or she has been duly authorized to execute this Lease on behalf of Lessee

LESSEE: **American Home Mortgage Corp.**
By: **Alan Horn**
Signature: __
Title: **Executive Vice President**
Date: **Sept. 11, 2006**

RICOH CORPORATION
Signature: **Lisa Lee**
Title: __
Date: **1/8/07**   2H789548

For Internal Use Only
Customer #: __   Customer Ship-To #: __

©2000 All Rights Reserved Printed in the U.S.A. 03RIC265 4/03

# RICOH

## RMAP
## MASTER LEASE AGREEMENT

This MASTER LEASE AGREEMENT ("Agreement") is dated as of June ___21___, 2006, and is by and between Ricoh Corporation ("Ricoh") and American Home Mortgage Corp. ("Lessee") with office located at 538 Broadhollow Road, Melville, NY 11747. The parties hereto, for good and valuable consideration and intending to be legally bound, hereby agree as follows:

1. **LEASE OF EQUIPMENT.** This Agreement establishes the general terms and conditions, under which Ricoh may, from time to time, lease equipment (as hereunder defined) to Lessee. The terms hereof shall be deemed to form a part of each Master Lease Schedule ("Schedule") executed by the parties, which references this Agreement. "Equipment" shall mean items of Equipment set out in any Schedule. Ricoh agrees to lease the Equipment to Lessee on the terms and conditions contained herein and as set forth on the Schedule. Lessee promises to pay to Ricoh an Equipment Payment and a Maintenance Payment, if applicable, (together the "Lease Payment") set forth in the Schedule plus the Cost-Per-Copy Over Monthly Allowance ("Additional Copy Charge") on copies in excess of the Copy Allowance as set forth in the Schedule. Additional Copy Charges will be invoiced following the end of each Meter Read period as set forth in the Schedule. Each Schedule shall constitute a separate Lease Agreement ("Lease") incorporating all of the terms hereof and shall not have any effect on any other Schedule (including any ability to amend, modify or waive any provision) executed and delivered by the Lessee at any other time, with the exception of the addition of accessories to existing equipment which can be added to an existing equipment Schedule. *In the event of a conflict between the provisions hereof, the provisions of the Lease shall prevail.*

2. **TERM AND LEASE.** This Agreement shall become effective upon acceptance and execution by Ricoh and shall remain effective at least until the expiration of the Term of the last Lease hereunder. Each Lease goes into effect on the date Lessee signs Ricoh's Customer Acknowledgment Form ("Effective Date") acknowledging that the Equipment has been installed in good working order and has been accepted by the Lessee. The Lease Term begins on the first day of the month following the Effective Date and continues for the number of months indicated as the Lease Term on the face of the Schedule. The initial Lease Payment will cover the first full calendar month (or other period as applicable) of the Lease Term. The second Lease Payment will cover the second full calendar month (or other period as applicable) of the Lease Term, plus the Additional Copy Charge for all copies made from the Effective Date to the end of the first full calendar month. Subsequent Lease Payments shall be made for each successive month (or other period as applicable) until the end of the Lease Term. If the Agreement includes repair and maintenance services, Lessee agrees to provide accurate and timely Meter Readings at the end of each applicable billing period on the forms or other alternative means specified by Ricoh. If Meter Readings are not received in a timely manner, Ricoh may estimate the Lessee's Additional Copy Charge by averaging prior Meter Readings.

At the expiration of the initial Lease Term, Ricoh, upon 60 days prior written notice to the Lessee, has the right to increase the Maintenance Payment and the Additional Copy Charge in an amount not to exceed the lesser of (i) any increase in Ricoh's published maintenance rates or (ii) ten percent (10%) of the Maintenance Payment and the Additional Copy Charge in effect at the end of the Lease Term.

3. **REPAIR AND MAINTENANCE.** If a Lease includes repair and maintenance services as indicated by the completion of the Maintenance Section on the Schedule, the following shall apply:

    a. Ricoh or its authorized representative shall make all necessary adjustments, repairs and parts replacement to keep the Equipment in good operating condition in accordance with Ricoh's service policies then in effect. Replaced parts become the property of Ricoh. The services will be furnished during normal working hours. Services after normal working hours will be furnished on an "as available" basis on Ricoh's after hour's rates then in effect.

    b. Ricoh or its authorized representative shall not be required to perform the services or replace parts as set forth in the above paragraph if the Equipment is placed in an area which violates (i) Ricoh's space or environment requirements or (ii) it is improperly wired, moved, damaged or altered or (iii) serviced by other persons not authorized by Ricoh or (iv) if the Equipment is installed in a location where service is not available to regular commercial customers for that particular product.

    c. Any maintenance required as a result of other than normal operation of the Equipment, including Lessee's neglect or misuse of the Equipment, shall be invoiced to Lessee as additional Lease Payments at Ricoh's rates then in effect.

    d. As indicated on the face of each Schedule, the Lease Payment or Maintenance Payment may also include the charge for toner, developer, and silicone oil required for the proper operation of the Equipment as determined by Ricoh.

4. **TITLE, PERSONAL PROPERTY, LOCATION AND INSPECTION.** Ricoh owns the Equipment and Lessee has the right to lease the Equipment for the full Lease Term provided the Lessee complies with the terms and conditions of the Lease and this Agreement. For all purposes hereunder the Lease and this Agreement, the Equipment is personal property even though the Equipment may become attached to any real estate. Lessee agrees not to permit a lien to be placed upon the

Equipment or to remove the Equipment from its place of installation without Ricoh's prior written consent. If Ricoh feels it is necessary, Lessee agrees to provide Ricoh with waivers and interest of liens, from anyone claiming any interest in the real estate on which any item of Equipment is located. Ricoh also has the right, at reasonable times, to inspect the Equipment.

5. ASSIGNMENT. (a) WITHOUT PRIOR WRITTEN CONSENT OF RICOH, LESSEE SHALL NOT (i) ASSIGN, TRANSFER, PLEDGE OR HYPOTHECATE THIS AGREEMENT OR ANY LEASE, THE EQUIPMENT OR ANY PART THEREOF OR ANY INTEREST THERE IN OR (ii) SUBLET OR LEND THE EQUIPMENT OR PERMIT IT TO BE USED BY ANYONE OTHER THAN LESSEE AND LESSEE'S EMPLOYEES. Lessee may transfer or assign any Lease to an affiliate of Lessee provided such affiliate has equal or greater financial strength as Lessee as determined by Ricoh in its reasonable sole discretion. b. Ricoh may assign this Agreement or any Lease and the Equipment, at any time in whole or in part, without notice to the Lessee. Lessee shall not assert against any Assignee, any claim or defense it may have against Ricoh, but rather shall assert the same against Ricoh. No assignment of this Agreement or any Lease shall release Ricoh from its obligations hereunder.

6. REDELIVERY AND RENEWAL. Upon at least thirty (30) days written notice to Ricoh prior to the expiration of the initial Term of the Lease, Lessee at its option may (i) renew the Lease for an additional term of at least twelve (12) months; (ii) exercise the applicable purchase option as specified in the Lease; or (iii) return the Equipment, freight and insurance prepaid, to Ricoh in good repair, condition and working order, ordinary wear and tear expected, in a manner and to a location designated by Ricoh. If Lessee fails to notify Ricoh or having notified Ricoh, Lessee fails to return the Equipment or exercise one of its other options provided herein, the Lease shall renew on a month-to-month basis with Lease Payments and Additional Copy Charges in effect at the expiration of the initial Term of the Lease. Either party shall have the right to terminate any such month-to-month renewal of the Lease upon thirty (30) days written notice to Ricoh as specified in (iii) above

7. LOSS OR DAMAGE. Lessee is responsible for the risk of loss or destruction of, or damage to the Equipment. No such loss or damage relieves Lessee from any obligation under this Agreement or the Lease. In the event of damage to, or loss or destruction of the Equipment, Lessee agrees to promptly notify Ricoh in writing of such fact and, at Ricoh's option shall, (a) repair the Equipment to good condition and working order, (b) replace the Equipment with like equipment in good repair, condition and working order, acceptable to Ricoh and transfer clear title to such replacement equipment to Ricoh, such equipment shall be subject to the Lease and be deemed the Equipment, or (c) pay to Ricoh the present value of the total of all unpaid Lease Payments for the full Lease Term plus the estimated Fair Market Value of the Equipment or any fixed price purchase option at the end of the originally scheduled Lease Term, all discounted at six percent (6%) per year whereupon the Lease shall terminate. All proceeds of insurance received by Ricoh as a result of such loss or damage will be applied, where applicable, toward the replacement or repair of the Equipment or the payment of Lessee obligations.

8. TAXES. (a) Except for tax on Ricoh's income, Lessee agrees to pay all license registration fees, sales and use taxes and all other taxes and charges relating to the leasing and use of Equipment as part of the Lease Payment or as billed by Ricoh.
(b) Where taxes are paid by Ricoh, Lessee agrees to reimburse Ricoh for all such payments, plus reasonable costs incurred in collecting and administering any taxes, assessments or fees and remitting them to the appropriate authorities.
(c) Not withstanding me foregoing, Ricoh will file all personal property tax returns required to be filed by Ricoh covering the Equipment and will pay the personal property taxes levied or assessed thereon.

9. INSURANCE. During the term of the Lease, Lessee shall keep the Equipment insured against all risk of loss or damage in an amount not less than the replacement cost of the Equipment, without deductible and without co-insurance. Lessee will pay all premiums for such insurance and shall deliver proof of insurance coverage satisfactory to Ricoh.

10. DEFAULT. Lessee is in default of this Agreement and all Leases if any of the following occurs: (a) Lessee fails to pay any Lease Payment or other sum within 15 days of due date, (b) Lessee breaches any warranty or other obligation under this Agreement, or any other related agreement with Ricoh, (c) Lessee, any partner or any, guarantor dies, (d) Lessee becomes insolvent or unable to pay its debts when due, (e) Lessee stops doing business as a going concern, (f) Lessee merges, consolidates, transfers all or substantially all of its assets, (g) Lessee makes an assignment for the benefit of creditors or, (h) Lessee undergoes a substantial deterioration in its financial condition, or (i) Lessee, any guarantor or any partner shall voluntarily file or have filed against it involuntarily, a petition for liquidation, reorganization, adjustment or debt or similar relief under the Federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver or liquidator shall be appointed of its or substantial part of its assets.

11. REMEDIES. Ricoh shall have the following remedies if a default should occur: a. Upon written notice, declare the entire balance of the unpaid Lease Payments for the full Term of the Lease immediately due and payable, sue for and receive all Lease Payments and any other payments then accrued or accelerated under this Agreement plus the estimated Fair Market Value of the Equipment or any fixed price purchase option at the end of the Lease, however, all accelerated Lease Payments shall be discounted to the date of the default at six percent (6%) per year, but only to the extend permitted by law. Once the foregoing payments are made, Lessee will own the Equipment;
b. Charge Lessee interest on all moneys due Ricoh at the rate of one and a half percent (1.5%) per month from the date of default until paid, but in no event more than the maximum permitted by law;
c. Require the Lessee return the Equipment to Ricoh and in the event Lessee fails to return the Equipment, enter upon the premises peaceably with or without legal process where the Equipment is located and repossess the Equipment. Such return or repossession of the Equipment shall not constitute a termination of this Agreement or the Lease unless Ricoh expressly notifies Lessee in writing. In the event the Equipment is returned or repossessed by Ricoh and unless Ricoh has terminated

the Lease, Ricoh will sell or re-lease the Equipment to such persons and upon such terms as Ricoh may determine, at one or more public or private sales and with or without notice to Lessee and apply the net proceeds after deducting the costs and expenses of such sale or re-lease, to Lessee's obligations with Lessee remaining liable for any deficiency and with any excess being retained by Lessee. The credit for any sums to be received by Ricoh from any such re-lease shall be discounted to the date of the re-lease agreement at six percent (6%) per year. Lessee is also required to pay (i) all expenses occurred by Ricoh in connection with the enforcement of any remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Equipment, and (ii) reasonable attorneys' fees.

Whenever any Lease Payment and/or Additional Copy Charge is not made within 15 days of the due date, Lessee agrees to pay Ricoh, within one month, an amount calculated at the rate of five cents per one dollar for each such delayed payment, with a minimum of $10.00 as compensation for Ricoh's internal operating expenses arising as a result of such delayed payment, but only to the extent permitted by law. Such amount is payable in addition to all amounts payable by Lessee as a result of the exercise of any other remedies.

All Ricoh's remedies are cumulative, are in addition to any other remedies provided by law, and may, to the extent permitted by law, be exercised either concurrently or separately. The exercise of any one remedy shall not be deemed an election of such remedy, or preclude the exercise of any other remedy. No failure on Ricoh's part to exercise any right or remedy and no delay in exercising any right or remedy shall operate as a waiver of any right or remedy or modify the terms of this Agreement. A waiver of default shall not be construed as a waiver of any other or subsequent default.

12. SECURITY DEPOSIT. Ricoh will retain any security deposit, if required, as security for Lessee's performance of its obligations. Any security deposit is non-interest bearing. Ricoh may apply any security deposit to cure any default by Lessee, in which event Lessee will promptly restore any amount so applied. If Lessee is not in default, any security deposit will be returned to Lessee at the termination of the Lease.

13. WARRANTY OF BUSINESS PURPOSE. Lessee hereby warrants and represents that the Equipment will be used for business purposes, and not for personal, family or household purposes.

14. UCC FILINGS AND FINANCIAL STATEMENTS. Lessee authorizes Ricoh to file a financing statement with respect to the Equipment signed by Ricoh where permitted by the Uniform Commercial Code and grants Ricoh the right to sign such financing statement on Lessee's behalf. The filing of financing statements is not to be construed as evidence that any security interest was intended to be created, but only to give public notice of Ricoh's ownership of the Equipment. If the Lease is deemed at any time to be one intended as security then Lessee grants Ricoh a security interest in the Equipment and the proceeds from the sale, lease or other disposition of the Equipment. If the Lessee is a privately held organization and Ricoh feels it is necessary, Lessee agrees to submit financial statements upon request by Ricoh.

15. NOTICE. Written notice will be deemed to have been given when delivered personally or deposited in the United States mail, postage prepaid, addressed to such party at its address set forth in the Agreement, in the Lease or at such other address as such party may have subsequently provided in writing.

16. CHOICE OF LAW. This Agreement and the Leases have been made In New Jersey and, except for local filing requirements, are governed by and construed in accordance with the laws of the State of New Jersey. Lessee consents to and agrees that personal jurisdiction over Lessee and subject matter jurisdiction over the Equipment shall be with the courts of the State of New Jersey, or the applicable Federal District Court in New Jersey, solely at Ricoh's option, with respect to any provisions of this Agreement.

17. ENTIRE AGREEMENT; SEVERABILITY; WAIVERS. This Agreement and the Leases contain the entire agreement and understanding. No agreements or understandings are binding on the parties unless set forth in writing and signed by the parties. Any provisions of this Agreement or any Lease, which for any reason may be held unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective without invalidating the remaining provisions of this Agreement.

No news release or any other form of publicity pertaining to this Agreement will be allowed without the prior written consent of both parties.

Any notice (other than regular invoices) to be given to Lessee shall also be addressed to the attention of the General Counsel, at American Home Mortgage Corp., 538 Broadhollow Road, Melville New York 11747.

IN NO EVENT SHALL A PARTY BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL, EXPEMPLARY OR CONSEQUENTIAL LOSS OR DAMAGE OF ANY KIND WHATSOEVER (INCLUDING BUT NOT LIMITED TO LOST PROFITS), ARISING OUT OF THIS AGREEMENT, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE LIKELIHOOD OF SUCH LOSS OR DAMAGE AND REGARDLESS OF THE FORM OF ACTION.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall together constitute one and the same instrument. Execution may be effected by delivery of facsimiles or PDFs of signature pages and the Parties waive any objection to the use of facsimile or PDF signatures in lieu of their paper equivalents for any purpose and in any forum, venue or jurisdiction.

THE PARTIES HEREBY WAIVE ANY RIGHTS THAT THEY MAY HAVE TO A TRIAL BY JURY OF ANY ACTION, CLAIM, CONTROVERSY OR OTHER MATTER ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE TRANSACTION AGREEMENTS (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE).

| | |
|---|---|
| LESSEE American Home Mortgage Corp. | |
| (PRINT OR TYPE NAME OF LESSEE) | |
| Signature [signature] | Date 6/21/06 |
| (PLEASE PRINT) | |
| Title Executive Vice President | |
| **RICOH CORPORATION** | |
| Signature _____ | Date _____ |
| (ACCEPTED FOR RICOH) | |
| Title _____ | |
| 1993 RICOH Corporation. All Rights Reserved. Printed in U.S.A. 29072 10/11/1993 | |