IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered) |

**UNSWORN DECLARATION, PURSUANT TO 28 U.S.C. SECTION 1746(2) AND FED.R.CIV.P. 43(e), AS INCORPORATED BY FED.R.BANKR.P. 9017, OF PAM C. WILLIAMS IN SUPPORT OF THE MOTION OF FEDERAL HOME LOAN MORTGAGE CORPORATION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

I, PAM C. WILLIAMS, declare as follows:

1. I am employed as the Risk Analysis Director-Associate by Federal Home Loan Mortgage Corporation ("Freddie Mac"). In my capacity as the Risk Analysis Director-Associate, I am responsible for, among other things, the oversight of counterparty compliance and the termination of counterparties with and without cause.

2. I have personal knowledge of the facts set forth in this Declaration.

3. This Declaration is submitted in support of the Motion of Federal Home Loan Mortgage Corporation for an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Motion"). Capitalized terms utilized, but not defined, in this Declaration shall have the meaning ascribed to those terms in the Motion.

4. The facts set forth in the Motion are true and correct.

**Freddie Mac and its Business**

5. Freddie Mac is a corporate instrumentality of the United States of America, chartered by Congress under the Federal Home Loan Mortgage Corporation Act, Title III of the Emergency Home Finance Act of 1970, 12 U.S.C. §§ 1451-59. Congress created Freddie Mac for the purpose of

increasing the funds available to home buyers via the creation of a secondary mortgage market for the purchase and sale of conventional residential mortgage loans. To achieve this congressionally mandated purpose, Freddie Mac, among other activities, purchases conventional mortgage loans from mortgage seller/servicers approved by Freddie Mac, pools those loans into mortgage-backed securities, and then sells those securities to investors. Capital from investors is then used to buy more mortgage loans, and in this way, Freddie Mac facilitates the flow of funds from investors to homebuyers.

6. Freddie Mac purchases mortgage loans from approved mortgage loan originators or "seller/servicers" and contracts with those seller/servicers to service the loans. Mortgage seller/servicers agree to sell and service mortgages pursuant to the terms and conditions contained in certain purchase documents (collectively, the "Purchase Documents") consisting of, inter alia, a purchase contract, Freddie Mac's Sellers and Servicers Guide (the "Guide"), and bulletins issued periodically by Freddie Mac to its seller/servicers which supplement the parties' agreement as set forth in the Purchase Documents.

7. The Guide, which consists of several hundred pages, sets forth in detail the terms and conditions of the transactions between Freddie Mac and its seller/servicers. The Guide expressly provides that seller/servicers agree to sell mortgage loans to and agree to service mortgage loans for Freddie Mac in accordance with the standards set forth in the Guide. See Guide Sections 1.2 and 50.2. The Guide further provides that it and the other Purchase Documents constitute the entire agreement between Freddie Mac and its seller/servicers. Id.

8. In sum, the Guide is the basic contract between Freddie Mac and its sellers and servicers. The seller/servicers agree to all terms, requirements and conditions set forth in the Guide. Specifically, pursuant to the Guide, a seller/servicer agrees and warrants at all times that it, inter alia,

be able to demonstrate to Freddie Mac's satisfaction that it has sufficient capitalization, profitability, liquidity, and funding sources to support its ongoing operations and its commitments to Freddie Mac. See Guide Section 4.2.

9. For each mortgage purchased by Freddie Mac, the Freddie Mac seller/servicer agrees that it will maintain a mortgage file and all underlying books and records (the "Mortgage Loan Files"), which are owned by Freddie Mac, pertaining to any mortgages serviced by the servicer in accordance with the terms and conditions of the Guide. See Guide § 52.1. The Mortgage Loan Files must be maintained during the time Freddie Mac retains any ownership interest in the mortgage and for a period thereafter. See Guide § 52.3.

10. Each Freddie Mac seller/servicer also warrants that all information submitted to Freddie Mac is true, complete and accurate, and agrees to allow Freddie Mac to inspect all of the mortgage loan origination files. See Guide §§ 6.1 and 6.3. In addition, all sellers and servicers agree, on request, to deliver original documents from the Mortgage Loan Files to Freddie Mac. See Guide § 73.3.

**Freddie Mac's Agreement with American Home Mortgage Corporation**

11. Prior to the Petition Date, AHM was a Freddie Mac seller/servicer. AHM serviced approximately 4,547 Freddie Mac mortgage loans with a total value of approximately $796,782,744.55.

12. As a Freddie Mac seller/servicer, AHM's relationship with Freddie Mac is governed by the terms and conditions of the Purchase Documents and the Guide. The Guide includes, *inter alia*, the following relevant terms and conditions:

> § 5.2 Without limiting Freddie Mac's right to take whatever other action it deems appropriate to protect its interests and enforce its rights (including disqualification or suspension for reasons not listed below), Freddie Mac may disqualify or suspend a Seller or a Servicer for any of the following reasons:

* * * *

8. The Seller's or the Servicer's failure to maintain qualified loan origination or Servicing staff and/or adequate facilities to assure (i) the investment quality of the Mortgages sold to Freddie Mac or (ii) the adequacy of the Servicing of the Mortgages purchased by Freddie Mac.

9. Any weakness or notable change in the financial or organizational status of the Seller or the Servicer that, in the opinion of Freddie Mac, could adversely affect Freddie Mac.

10. The failure of the Seller or the Servicer to meet any requirement as may be prescribed by Freddie Mac for eligibility as a Seller or a Servicer.

* * * *

15. The Seller or the Servicer's failure to observe or comply with any term or provision of the Purchase Documents.

* * * *

19. Failure by the Seller or the Servicer to perform under any contract with Freddie Mac including, but not limited to, a contract with Freddie Mac's Securities Sales and Trading Group.

* * * *

§ 73.1 Freddie Mac may terminate Servicing by the Servicer at any time with cause for any of the reasons for disqualification cited in Section 5.2 . . . . Termination of servicing with cause is a basis for immediate disqualification as a Seller/Servicer . . . .

§ 73.2 If Freddie Mac transfers the Servicing of any Mortgage, the Servicing Compensation . . . is paid to the new Servicer.

§ 73.3 Upon termination of the Servicing of any Mortgage, the Servicer is responsible for supplying . . . all reports, documents and information . . . requested by Freddie Mac on the date specified by Freddie Mac.

§ 73.4 The remittance to Freddie Mac of Mortgage collections for each Mortgage for which Servicing is terminated must be made on the date specified by Freddie Mac . . . . Additionally, all Escrow Funds, Escrow Accounts and prepared installments . . . must be transferred to the new Servicer on the date specified by Freddie Mac.

The Servicer must use its best efforts to effect the orderly and efficient Transfer of Servicing to the new Servicer.

**AHM's Default and Freddie Mac's Termination of its Agreements with AHM**

13. On or prior to July 31, 2007, AHM's financial condition deteriorated dramatically.

And, on July 31, 2007, AHM announced that it had not funded its lending obligations of $300 million

on July 30, 2007, and that it would not be able to fund its lending obligations of $450-500 million on July 31. Press releases issued by AHM stated that it anticipated the liquidation of its assets.[1] The stock of AHM's parent declined in value precipitously.

14. As a result of the financial deterioration of AHM, Freddie Mac made a determination on August 1, 2007 that Freddie Mac needed to protect its interests and to terminate AHM's eligibility to sell loans to and service loans for Freddie Mac.

15. By overnight letter dated August 1, 2007 (the "Termination Notice"), Freddie Mac notified AHM that AHM's eligibility to sell and/or service Freddie Mac mortgages was terminated immediately. The Termination Notice was also sent via facsimile to AHM at 10:23 a.m. on August 1, 2007. In addition, on August 1, 2007, representatives of Freddie Mac left telephone messages with AHM's President and made several other phone calls to AHM personnel attempting to advise them of the termination.

16. Freddie Mac's pre-petition Termination Notice explicitly required AHM to deliver all Freddie Mac files and records to Freddie Mac or Freddie Mac's designee forthwith, subject to Freddie Mac's reservation of all rights to pursue additional and further remedies. All such relief requested by Freddie Mac was made in accordance with the Guide as agreed to by AHM, including but not limited to, the Guide's requirements for delivery of files, documents and records upon termination of AHM's relationship with Freddie Mac.

17. AHM failed and refused to deliver the files and records requested by Freddie Mac despite specific oral and written requests that it do so. Likewise, AHM has refused to deliver the

---

[1] See August 1, 2007 Wall Street Journal, p. 1 ("Traders said yesterday's stock-market selloff was ignited by a warning from American Home Mortgage that pressure to repay its creditors may cause it to liquidate its assets. Its shares subsequently plunged 89% to $1.13.").

-5-

18. Additionally, pursuant to its rights under the Guide, Freddie Mac demanded delivery of the Freddie Mac portfolio files on August 1, 2007, at defendant's servicing facility in Irving, Texas, but was wrongfully refused access to such files. Instead, AHM had its security personnel escort the Freddie Mac representatives out of AHM's facility.

### The Texas Action

19. On August 2, 2007, Freddie Mac commenced an action in the Texas District Court by filing a Complaint and Request for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (the "Complaint").

20. On August 3, 2007, the Texas District Court entered the TRO Order granting Freddie Mac's request for a temporary restraining order.

21. The TRO Order ordered that "pending a preliminary injunction hearing" AHM and its officers, agents, representatives, employees and attorneys

> must (i) immediately deliver to [Freddie Mac], or its designee, all mortgage loans files heretofore serviced by [AHM] on behalf of Freddie Mac . . . (ii) immediately deliver to [Freddie Mac], or its designee, all funds derived from these mortgage loans, including any funds designated as impounded funds, less servicing fees earned, and thereafter deliver any additional funds [AHM] may receive with respect to these loans; (iii) refrain from destroying, altering or disposing of the mortgage loan documents required to be delivered to [AHM] or its designated interim servicer; and (iv) refrain from taking any other action with respect to mortgage loans heretofore serviced by [AHM] on behalf of [Freddie Mac] . . . .

TRO Order at p. 12.

22. As of the date of this Motion, AHM has failed to comply with the terms of the TRO Order, including, but not limited to, turnover of the Mortgage Loan Files.

23. Freddie Mac has exercised due care and diligence in selecting an "interim servicer" (U.S. Bank) to which AHM is to transfer its mortgage funds and related documents. Freddie Mac ensures that an "interim servicer" is one that is capable of handling the immediate transfer of

mortgage funds and records in large quantities. U.S. Bank is very well qualified and capable of servicing Freddie Mac's loans, having been utilized as an "interim servicer" by Freddie Mac in the recent past.

24. Freddie Mac did succeed, on August 1, 2007, in securing possession of AHM's Custodial Account funds. These funds included, but may not have been limited to, borrowers' principal and interest payments, and escrow funds used to pay property taxes and insurance for those borrowers. The total amount of custodial funds secured by Freddie Mac was approximately $6,955,404.08.

25. Without access to or use of the Custodial Account funds, AHM will be without the funds necessary to pay Freddie Mac's borrowers' insurance premiums or periodic real property tax liabilities.

26. Even though Freddie Mac secured possession of the Custodial Account funds, without the loan servicing electronic data and other servicing files and records (which identify, among other information, the various insurance companies and the various local taxing authorities), neither Freddie Mac nor its designee will be able to pay Freddie Mac's borrowers' insurance premiums or periodic real property tax liabilities.

27. There is, therefore, the imminent risk that borrowers' insurance policies may lapse for non-payment, and real property tax bills will go unpaid resulting in increased tax liabilities and possible tax foreclosure sales.

28. Additionally, for as long as Freddie Mac remains unable to effect a transfer of servicing responsibilities from AHM to U.S. Bank (or another Freddie Mac designee), Freddie Mac's borrowers will continue to deal with AHM.

29.    Borrowers will continue to: make their periodic principal and interest payments to AHM; contact AHM in the event they wish to pay off their mortgage loans; contact AHM if they run into financial difficulty, including if they are in default and seek assistance to avoid losing their homes to foreclosure; and communicate with AHM with respect to all manner of issues that may arise with respect to the servicing of the loans.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  August 20, 2007

For Federal Home Loan Mortgage Corporation

By: _____
Pam C. Williams
Risk Analysis Director-Associate

- 8 -