IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br><br>Objection Deadline: N/A<br>Hearing Date: N/A |

**MOTION OF FEDERAL HOME LOAN MORTGAGE CORPORATION PURSUANT TO DEL.BANKR.LR. 9006-1(e) FOR AN ORDER SHORTENING THE TIME FOR NOTICE OF THE HEARING TO CONSIDER MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

Federal Home Loan Mortgage Corporation ("Freddie Mac"), having submitted its Motion For An Order Granting Relief From The Automatic Stay pursuant to 11 U.S.C. § 362(d) (the "Stay Relief Motion"), moves the Court, pursuant to Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for the entry of an order shortening the time for notice of the hearing to consider the Stay Relief Motion as it relates to the relief sought therein (the "Motion to Shorten") so that the matter may be heard on September 17, 2007 at 12:00 p.m. (EST), which is the date set by the Court as the next omnibus hearing date, or as soon thereafter as the Court will allow. In support of this Motion to Shorten, Freddie Mac states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O). Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

## FACTUAL BACKGROUND

2. On August 6, 2007 (the "Petition Date"), American Home Mortgage Corporation ("AHM") the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

### The Parties, the Termination, and the Seizure of the Accounts

3. Contemporaneously with the filing of this Motion to Shorten Notice, Freddie Mac filed the Stay Relief Motion. As set forth more fully in the Stay Relief Motion, which is incorporated herein by reference, Freddie Mac validly terminated AHM's rights as a Freddie Mac seller/servicer "for cause" pursuant to the operative agreements between the parties, including the Freddie Mac's Sellers and Servicers Guide (the "Guide", and collectively with all relative agreements between Freddie Mac and the Debtors, the "Purchase Documents").

4. Freddie Mac's termination of AHM resulted from AHM's breach under the Purchase Documents in numerous respects, including (i) the deterioration of AHM's financial condition; (ii) AHM's failure to report and remit funds to Freddie Mac in a timely manner for repurchases issued for loans determined to be of non-investment quality; (iii) AHM's failure to meet Guide requirements to repurchase mortgages after receipt of Freddie Mac's repurchase letter.[1]

5. Freddie Mac's pre-petition termination notice, delivered on August 1, 2007, explicitly required AHM to deliver all Freddie Mac mortgage loan files, including loan servicing electronic data and other servicing files and records (collectively, the "Mortgage Loan Files") to

---

[1] Freddie Mac's investigation into other breaches continues.

Freddie Mac or Freddie Mac's designee forthwith, subject to Freddie Mac's reservation of all rights to pursue additional and further remedies. All such relief requested by Freddie Mac was made in accordance with the Guide as agreed to by AHM. AHM subsequently refused to comply with Freddie Mac's demand (and its obligations under the Guide) for return of Freddie Mac's mortgage loan files upon the termination.

6. Despite AHM's wrongful refusal to turn over Freddie Mac's Mortgage Loan Files, Freddie Mac did succeed, on August 1, 2007, in securing possession of AHM's custodial account funds relating to the Freddie Mac Mortgage Loans (the "Custodial Account Funds"), pursuant to its rights under the Purchase Documents. These Custodial Account Funds included, but may not have been limited to, borrowers' principal and interest payments, and escrow funds used to pay property taxes and insurance for those borrowers. The total amount of Custodial Account Funds secured by Freddie Mac was $6,955,404.08.

7. As it is without access to or use of the Custodial Account Funds, AHM will be without the funds necessary to pay Freddie Mac's borrowers' insurance premiums or periodic real property tax liabilities.

8. Even though Freddie Mac secured possession of the Custodial Account Funds, without the Mortgage Loan Files (which identify, among other information, the various insurance companies and the various local taxing authorities), neither Freddie Mac nor its designee will be able to pay Freddie Mac's borrowers' insurance premiums or periodic real property tax liabilities.

9. As of August 24, 2007, AHM apparently ceased making advances in payment of Freddie Mac's borrowers' insurance premiums or periodic real property tax liabilities. There is, therefore, the imminent risk that borrowers' insurance policies may lapse for non-payment, and

real property tax bills will go unpaid resulting in increased tax liabilities and possible tax foreclosure sales.

### The Texas Action and TRO Order

10.     On August 2, 2007, Freddie Mac commenced an action in the United States District Court for the Northern District of Texas (the "Texas District Court") by filing a Complaint and Request for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction, alleging claims for declaratory judgment, injunctive relief, sequestration and breach of contract.

11.     On August 2, 2007, the Texas District Court held a hearing on Freddie Mac's request for a temporary retraining order. Counsel for AHM appeared at the hearing.

12.     On August 3, 2007, the Texas District Court entered Memorandum Opinion and Order (the "TRO Order") granting Freddie Mac's request for a temporary restraining order and directing, *inter alia*, the immediate turnover of the mortgage loan files pending a hearing on Freddie Mac's request for a preliminary injunction. In granting the temporary restraining order, the Texas District Court determined that Freddie Mac was "substantially likely to succeed on the merits of its claims" and cited to a number of precedents upholding the validity of Freddie Mac's rights of termination in comparable circumstances. See TRO Order at p. 7.[2]

13.     Despite the TRO Order's mandate that the files be turned over "immediately" and despite the fact that Freddie Mac posted a bond as required by the TRO Order on Friday, August 3, 2007, AHM failed to return the mortgage loan files prior to its Monday, August 6, 2007 Petition Date. Subsequent to the entry of the TRO Order, on Saturday, August 4, 2007, representatives of Freddie Mac spent several hours attempting to contact Mr. David Friedman,

---

[2] A true and correct copy of the TRO Order is attached as Exhibit B to the Stay Relief Motion.

Senior Vice President of Servicing for AHM, and to otherwise gain access to the Mortgage Loan Files being held by AHM. Despite these efforts, Freddie Mac was ultimately unsuccessful in realizing the "immediate" turnover of the Mortgage Loan Files mandated by the TRO Order.

## Post-Petition Discussions

14.  Shortly after the Petition Date, on Wednesday, August 8, 2007, Freddie Mac initiated contact with the Debtors regarding its proposal to settle the controversy relating to Freddie Mac's prepetition termination of AHM as servicer and AHM's refusal to turn over the Mortgage Loan Files. On Thursday, August 9, 2007, the parties held a telephone conference during which Freddie Mac communicated the terms of its settlement proposal.

15.  On Tuesday, August 14, 2007, having failed to receive a favorable response from the Debtors regarding its settlement proposal, Freddie Mac informed the Debtors of its intent to file appropriate papers with the Court to gain possession of the Mortgage Loan Files and otherwise secure its rights with respect to the terminated servicing.

16.  On August 16-17, 2007, Freddie Mac, the Debtors and the Debtors' pre-petition lender, Bank of America, NA ("BofA"), held telephone conferences to discuss Freddie Mac's settlement proposal. On August 17, 2007, Freddie Mac advised the parties to the settlement discussions that it was prepared to file an appropriate motion seeking relief from the automatic stay. Based upon the settlement negotiations, the requests of the parties, and a verbal understanding regarding the basic terms of the settlement, Freddie Mac agreed to temporarily forbear, at its discretion, from filing its stay relief motion.

17.  On Monday, August 20, 2007, the parties reached a written agreement in principle regarding the basic terms of Freddie Mac's settlement proposal, subject to entering into appropriate stipulations to document the settlement and, ultimately, court approval. The

agreement explicitly rejected one of the main tenets of Debtors' proposal, and specifically provided for the immediate transfer of Freddie Mac's servicing portfolio to BofA. Based upon reaching the settlement in principle, and at the urging of the parties, Freddie Mac renewed its agreement to temporarily forbear, at its discretion, from filing its stay relief motion.

18. Over three weeks have passed since the parties reached the agreement in principle regarding settlement. During that time, Freddie Mac counsel has provided to Debtors and BofA numerous drafts of the settlement documents. Initially, Freddie Mac reluctantly continued to forbear, in good faith, from filing its stay relief motion as document revisions proceeded and based upon representations from counsel that various decision makers were unavailable to permit finalization of the documents.

19. Recently, however, it has become clear that the delays have been caused by the Debtors' apparent desire to cast aside the parties' settlement in principle and implement the alternative terms that were explicitly rejected in the initial agreement in principle. After more than two weeks of revisions to stipulations of settlement, the Debtors have refused to proceed with finalizing those stipulations until the Debtors' management has exhausted all opportunities to discuss its alternative proposal with Freddie Mac business contacts. On information and belief, the Debtors have independently contacted numerous officials within Freddie Mac effectively seeking a re-hearing of the rejected terms. Despite Freddie Mac's repeated refusal to alter the terms for settlement, the Debtors have persisted. Due to these delays and the Debtors' apparent unwillingness to finalize the settlement in principle on its original basic terms, Freddie Mac is compelled to file the Stay Relief Motion.

**RELIEF REQUESTED**

20. Pursuant to Del.Bankr.LR. 9006-1(e), Freddie Mac seeks an Order shortening notice with respect to the Stay Relief Motion and scheduling a hearing on the Stay Relief Motion for September 17, 2007 at 12:00 p.m. (Eastern), the date set by the Court as the next omnibus hearing date, or as soon thereafter as the Court will allow. Freddie Mac further requests that this Court establish September 13, 2007, at 4:00 p.m. as the deadline for filing objections to the Stay Relief Motion.

**BASIS FOR RELIEF REQUESTED**

21. Pursuant to Del.Bankr.LR. 9006-1(e), "[n]o motion will be scheduled on less notice than required by these rules or the Fed.R.Bankr.P. except by Order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice. The Court will rule on such motion promptly without need for hearing."

22. Shortened notice is justified in this case for several reasons. First, shortened notice is justified based upon the inability of AHM to properly service the Mortgage Loans. Due to Freddie Mac's seizure of the Custodial Account Funds in accordance with its rights under the Purchase Documents, AHM is without the funds necessary to pay Freddie Mac's borrowers' insurance premiums and/or periodic real property tax liabilities. Indeed, AHM apparently ceased making advances in payment of Freddie Mac's borrowers' insurance premiums or periodic real property tax liabilities on August 24, 2007. Without access to its Mortgage Loan Files, neither Freddie Mac nor any interim servicer has the necessary information to be able to pay these insurance premiums or periodic real property tax liabilities.

23. Therefore, there is the imminent risk that borrowers' insurance policies may lapse for non-payment, subjecting the borrowers to a risk of loss of their mortgaged properties (and

Freddie Mac's collateral). In the event of a loss due to failure to maintain insurance, the borrower could potentially assert claims against both Freddie Mac and the Debtors for the uncompensated loss occurring to his/her home due to failure to maintain insurance. In addition, real property tax bills will go unpaid resulting in increased tax liabilities and possible tax foreclosure sales. Stay relief is proper to avoid these serious consequences stemming from AHM's inability to service the Freddie Mac Mortgage Loans.

24. Indeed, in finding immediate and irreparable harm sufficient for the entry of a temporary restraining order, the Texas District Court found that "transferring the mortgage information to the interim servicer will prevent harm to borrowers by maintaining timely insurance and tax payments." See TRO Order at p. 8.

25. Second, granting a hearing on shortened notice for the Stay Relief Motion is appropriate given the expedited nature of the Debtors' proposed asset sales. At the first day hearings, the Court granted the Debtors' request for the entry of an Order approving sales procedures and scheduling a hearing on approval of the Debtors' proposed sale of its mortgage loan servicing business. As set forth in Freddie Mac's Stay Relief Motion, Freddie Mac terminated AHM's eligibility as a seller/servicer prior to the Petition Date, and therefore AHM has no interest in the servicing rights which would be subject to sale under Section 363 of the Bankruptcy Code. To the extent that the Debtors and or its brokers are purporting to market the Freddie Mac Mortgage Loan Files for sale in the proposed Section 363 sale, those marketing efforts should be halted prior to the proposed auction currently scheduled for September 24, 2007. Determination of the Stay Relief Motion prior to the auction on September 24, 2007 will avoid confusion among potential bidders regarding what assets are subject to sale under Section 363. For this additional reason, shortened notice is appropriate.

26. Third, shortened notice is appropriate given the circumstances surrounding Freddie Mac's settlement negotiations with the Debtors. Freddie Mac was prepared to file its Stay Relief Motion on August 17, 2007. However, having reached an agreement in principle (first orally, then in writing) with the Debtors and BofA, Freddie Mac agreed to temporarily forbear, at its discretion, from filing its Stay Relief Motion. For the past three and one-half weeks, Freddie Mac reluctantly continued to forbear, in good faith, from filing its Stay Relief Motion as document revisions proceeded and based upon representations from Debtors' counsel that various decision makers were unavailable to permit finalization of the documents. Recently, however, it has become clear that the delays have been caused by the Debtors' apparent desire to cast aside the parties' settlement in principle and implement alternative terms that were explicitly rejected in the initial agreement in principle. Due to these delays and the Debtors' apparent unwillingness to finalize any stipulations memorializing the settlement on its original basic terms, Freddie Mac is compelled to file its Stay Relief Motion and this Motion to Shorten. To minimize the prejudice to Freddie Mac resulting from the Debtor's delays, the Court should grant the Motion to Shorten.

WHEREFORE, Freddie Mac respectfully requests that the Court enter an order (i) granting this Motion to Shorten (ii) scheduling a hearing on the relief requested in the Stay Relief Motion for September 17, 2007 at 12:00 p.m. (EST), (iii) requiring that any responses to the Stay Relief Motion be filed and served so as to be received on or before September 13, 2007 at 4:00 p.m. (EST); and (iv) granting such other relief as is just and proper.

Dated: September 10, 2007  
      Wilmington, Delaware

Respectfully submitted,

By: /s/ J. Cory Falgowski  
J. Cory Falgowski (No. 4546)  
REED SMITH LLP  
1201 Market Street, Suite 1500  
Wilmington, DE 19801  
Telephone: 302-778-7500  
Facsimile: 302-778-7575  
E-mail: jfalgowski@reedsmith.com

and

Peter S. Clark II, Esquire  
REED SMITH LLP  
2500 One Liberty Place  
1650 Market Street  
Philadelphia, PA 19103-7301  
Telephone: 215-851-8100  
Facsimile: 215-851-1420  
E-mail: pclark@reedsmith.com

and

George Kielman, Esquire  
Associate General Counsel for Litigation  
FreddieMac  
8200 Jones Branch Drive - MS 202  
McLean, VA 22102  
Telephone: 703-903-2640  
Facsimile: 703-903-3691  
E-mail: george_kielman@freddiemac.com

Counsel for Federal Home Loan Mortgage Corporation