

OFFICE BUILDING LEASE

CB RICHARD ELLIS, INC.
BROKERAGE AND MANAGEMENT
LICENSED REAL ESTATE BROKER

This Lease between _____ VINTAGE PARK, LLC, _____
_____ a California limited liability company _____

("Landlord"), and _____ AMERICAN HOME MORTGAGE CORP. _____,

_____ incorporated in the state of New York _____, ("Tenant"), is

dated _____ September 23, 2004 _____.

## 1. LEASE OF PREMISES.

In consideration of the Rent (as defined at Section 5.4) and the provisions of this Lease, Landlord leases to Tenant and Tenant leases from Landlord the Premises shown by diagonal lines on the floor plan attached hereto as Exhibit "A", and further described at Section 21. The Premises are located within the Building and Project described in Section 2m. Tenant shall have the non-exclusive right (unless otherwise provided herein) in common with Landlord, other tenants, subtenants and invitees, to use of the Common Areas (as defined at Section 2e).

## 2. DEFINITIONS

As used in this Lease, the following terms shall have the following meanings:

a.   *Base Rent (initial):* $ 66,770.40 _____ per year.

b.   *Base Year:* The calendar year of __2005 _____.

c.   *Broker(s)*

      Landlord's:    ____ CB Richard Ellis, Inc. _____.

      Tenant's:    _____ CB Richard Ellis, Inc. _____.

In the event that CB Richard Ellis, Inc. represents both Landlord and Tenant, Landlord and Tenant hereby confirm that they were timely advised of the dual representation and that they consent to the same, and that they do not expect said broker to disclose to either of them the confidential information of the other party.

d.   *Commencement Date:* __October 1, 2004 _____.

e.   Common Areas: The building lobbies, common corridors and hallways, restrooms, garage and parking areas, stairways, elevators and other generally understood public or common areas. Landlord shall have the right to regulate or restrict the use of the Common Areas.

f.   *Expense Stop:* (fill in if applicable): $_n/a _____.

g.   *Expiration Date:* __Thirty-seven (37) months following Lease Commencement,__ unless otherwise sooner terminated in accordance with the provisions of this Lease.

h.   *Index (Section 5.2):* United States Department of Labor, Bureau of Labor Statistics Consumer Price Index for All Urban Consumers, _____n/a _____ Average, Subgroup "All Items" (1967 = 100).

i.   *Landlord's Mailing Address:*_____ 1508 Eureka Road, Suite 130 _____
_____ Roseville, CA 95661 _____
   *Tenant's Mailing Address:* _____ 1508 Eureka Road, Suite 290 _____
_____ Roseville, CA 95661 _____

j.   *Monthly Installments of Base Rent (initial):* $ 5,564.20 per month.

k.   *Parking:* Tenant shall be permitted to park ___9_____ cars on a non-exclusive basis in the area(s) designated by Landlord for parking. Tenant shall abide by any and all parking regulations and rules established from time to time by Landlord.

l.   *Premises:* That portion of the Building containing approximately____2,588___ square feet of Rentable Area, shown by diagonal lines on Exhibit "A," located on the 2nd floor of the Building and known as Suite ___290__. If the Landlord determines, based on the Project Architect's measurements, that the Actual Premises (the "Actual Premises") occupied by the Tenant is more or less than the Premises set forth in this Lease, then the total rent shall be adjusted upward or downward to reflect the difference between the Actual premises and the Premises set forth in this Lease. The Landlord and Tenant shall execute a lease modification that will set forth the Actual Premises and the recalculated rental amounts.

m.   *Project:* The building of which the Premises are a part (the "Building") and any other buildings or improvements on the real property (the "Property") located at _____ 1508 Eureka Road, Roseville, CA 95661 _____ and further described at Exhibit "B." The Project is known as _____ Eureka Corporate Center _____.

n.   *Rentable Area:* As to both the Premises and the Project, the respective measurements of floor area as may from time to time be subject to lease by Tenant and all tenants of the Project, respectively, as determined by Landlord and applied on a consistent basis throughout the Project.

Initials _____ Initials _____

EXHIBIT "A"

o. *Security Deposit (Section 7):* $64.20

p. *State:* The State of _____ California _____

q. *Tenants First Adjustment Date (Section 5.2):* The first day of the calendar month following the Commencement Date plus _____ n/a _____ months.  (See First Addendum, Article 38, for complete schedule.)

r. *Tenant's Proportionate Share:* ___ 4.93 __%.  Such share is a fraction, the numerator of which is the Rentable Area of the Premises, and the denominator of which is the Rentable Area of the Project, as determined by Landlord from time to time.  The Project consists of ____ 1 ____ building(s) containing a total Rentable Area of _52,500_____ square feet.

s. *Tenant's Use Clause (Article 8):*  General office use _____

t. *Term:* The period commencing on the Commencement Date and expiring at midnight on the Expiration Date.

## 3.   EXHIBITS AND ADDENDA.

The exhibits and addenda listed below (unless lined out) are incorporated by reference in this Lease:

a. Exhibit "A"- Floor Plan showing the Premises.
b. Exhibit "B"- Site Plan of the Project.
c. Exhibit "C" - Building Standard Work Letter.
d. Exhibit "D"- Rules and Regulations.
e. Exhibit "E" - Guarantee.
f. Addenda:

   Exhibit "F" – Janitorial Specifications _____
   Addendum to Office Building Lease _____
   _____
   _____
   _____

## 4.   DELIVERY OF POSSESSION.

If for any reason Landlord does not deliver possession of the Premises to Tenant on the Commencement Date, Landlord shall not be subject to any liability for such failure, the Expiration Date shall not change and the validity of this Lease shall not be impaired, but Rent shall be abated until delivery of possession. "Delivery of possession" shall be deemed to occur on the date Landlord completes Landlord's Work.  If Landlord permits Tenant to enter into possession of the Premises before the Commencement Date, such possession shall be subject to the provisions of this Lease, including, without limitation, the payment of Rent.

## 5.   RENT.

5.1   *Payment of Base Rent.*  Tenant agrees to pay the Base Rent for the Premises.  Monthly Installments of Base Rent shall be payable in advance on the first day of each calendar month of the Term.  If the Term begins (or ends) on other than the first (or last) day of a calendar month, the Base Rent for the partial month shall be prorated on a per diem basis.  Tenant shall pay Landlord the first Monthly Installment of Base Rent when Tenant executes the Lease.

5.2.   *Adjusted Base Rent.*
   a.   The Base Rent (and the corresponding Monthly Installments of Base Rent) set forth at Section 2a shall be adjusted annually (the "Adjustment Date"), commencing on Tenant's First Adjustment Date.  Adjustments, if any, shall be based upon increases (if any) in the Index.  The Index in publication three (3) months before the Commencement Date shall be the "Base Index." The Index in publication three (3) months before each Adjustment Date shall be the "Comparison Index." As of each Adjustment Date, the Base Rent payable during the ensuing twelve-month period shall be determined by increasing the initial Base Rent by a percentage equal to the percentage increase, if any, in the Comparison Index over the Base Index.  If the Comparison Index for any Adjustment Date is equal to or less than the Comparison Index for the preceding Adjustment Date (or the Base Index, in the case of First Adjustment Date), the Base Rent for the ensuing twelve-month period shall remain the amount of Base Rent payable during the preceding twelve-month period.  When the Base Rent payable as of each Adjustment Date is determined, Landlord shall promptly give Tenant written notice of such adjusted Base Rent and the manner in which it was computed.  The Base Rent as so adjusted from time to time shall be the "Base Rent" for all purposes under this Lease.

   b.   If at any Adjustment Date the Index no longer exists in the form described in this Lease, Landlord may substitute any substantially equivalent official index published by the Bureau of Labor Statistics or its successor.  Landlord shall use any appropriate conversion factors to accomplish such substitution.  The substitute index shall then become the "Index" hereunder.

5.3.   *Project Operating Costs.*
   a.   In order that the Rent payable during the Term reflect any increase in Project Operating Costs, Tenant agrees to pay to Landlord as Rent, Tenant's Proportionate share of all increases in costs, expenses and obligations attributable to the Project and its operation, all as provided below.

   b.   If, during any calendar year during the Term, Project Operating Costs exceed the Project Operating Costs for the Base Year, Tenant shall pay to Landlord, in addition to the Base Rent and all other payments due under this Lease, an amount equal to Tenant's Proportionate Share of such excess Project Operating Costs in accordance with the provisions of this Section 5.3b.

(1)   The term "Project Operating Costs" shall include all those items described in the following subparagraphs (a) and (b).

   (a) All taxes, assessments, water and sewer charges and other similar governmental charges levied on or attributable to the Building or Project or their operation, including without limitation, (i) real property taxes or assessments levied or assessed

Initials _____ Initials

against the Building or Pr███████ i) █████ essments or charges levied or assessed ag██████ ilding or Project by any redevelopment agency, (iii) █████ ████ measured by gross rentals received from the leasing of th█████ ses, Building or Project, excluding any net income, franchise, capital stock, estate or inheritance taxes imposed by the State or federal government or their agencies, branches or departments; provided that if at any time during the Term any governmental entity levies, assesses or imposes on Landlord any (1) general or special, ad valorem or specific, excise, capital levy or other tax, assessment, levy or charge directly on the Rent received under this Lease or on the rent received under any other leases of space in the Building or Project, or (2) any license fee, excise or franchise tax, assessment, levy or charge measured by or based, in whole or in part, upon such rent, or (3) any transfer, transaction, or similar tax, assessment, levy or charge based directly or indirectly upon the transaction represented by this Lease or such other leases, or (4) any occupancy, use, per capita or other tax, assessment, levy or charge based directly or indirectly upon the use or occupancy of the Premises or other premises within the Building or Project, then any such taxes, assessments, levies and charges shall be deemed to be included in the term Project Operating Costs. If at anytime during the Term the assessed valuation of, or taxes on, the Project are not based on a completed Project having at least ninety-five percent (95%) of the Rentable Area occupied, then the "taxes" component of Project Operating Costs shall be adjusted by Landlord to reasonably approximate the taxes which would have been payable if the Project were completed and at least ninety-five percent (95%) occupied. The assessed building value shall be based on the year-end of the Tenant's Base Year grossed up to ninety-five percent (95%) occupancy.

(b)  Operating costs incurred by Landlord in maintaining and operating the Building and Project, including without limitation the following: costs of (1) utilities; (2) supplies; (3) insurance (including public liability, property damage, earthquake, and fire and extended coverage insurance for the full replacement cost of the Building and Project as required by Landlord or its lenders for the Project); (4) services of independent contractors; (5) compensation (including employment taxes and fringe benefits) of all persons who perform duties connected with the operation, maintenance, repair or overhaul of the Building or Project, and equipment, improvements and facilities located within the Project, including without limitation engineers, janitors, painters, floor waxers, window washers, security and parking personnel and gardeners (but excluding persons performing services not uniformly available to or performed for substantially all Building or Project tenants); (6) operation and maintenance of a room for delivery and distribution of mail to tenants of the Building or Project as required by the U.S. Postal Service (including, without limitation, an amount equal to the fair market rental value of the mail room premises); (7) management of the Building or Project, whether managed by Landlord or an independent contractor (including, without limitation, an amount equal to the fair market value of any on-site manager's office); (8) rental expenses for (or a reasonable depreciation allowance on) personal property used in the maintenance, operation or repair of the Building or Project; (9) costs, expenditures or charges (whether capitalized or not) required by any governmental or quasi-governmental authority; (10) amortization of capital expenses (including financing costs) (i) required by a governmental entity for energy conservation or life safety purposes, or (ii) made by Landlord to reduce Project Operating Costs; and (11) any other costs or expenses incurred by Landlord under this Lease and not otherwise reimbursed by tenants of the Project. If at any time during the Term, less than ninety-five percent (95%) of the Rentable Area of the Project is occupied, the "operating costs" component of Project Operating Costs shall be adjusted by Landlord to reasonably approximate the operating costs which would have been incurred if the Project had been at least ninety-five percent (95%) occupied.

(2)   Tenant's Proportionate Share of Project Operating Costs shall be payable by Tenant to Landlord as follows:

(a)  Beginning with the calendar year following the Base Year and for each calendar year thereafter ("Comparison Year"), Tenant shall pay Landlord an amount equal to Tenant's Proportionate Share of the Project Operating Costs incurred by Landlord in the Comparison Year which exceeds the total amount of Project Operating Costs payable by Landlord for the Base Year.  This excess is referred to as "Excess Expenses."

(b)  To provide for current payments of Excess Expenses, Tenant shall, at Landlord's request, pay as additional rent during each Comparison Year, an amount equal to Tenant's Proportionate Share of the Excess Expenses payable during such Comparison Year, as estimated by Landlord from time to time.  Such payments shall be made in monthly installments, commencing on the first day of the month following the month in which Landlord notifies Tenant of the amount it is to pay hereunder and continuing until the first day of the month following the month in which Landlord gives Tenant a new notice of estimated Excess Expenses.  It is the intention hereunder to estimate from time to time the amount of the Excess Expenses for each Comparison Year and Tenant's Proportionate Share thereof, and then to make an adjustment in the following year based on the actual Excess Expenses incurred for that Comparison Year.

(c)  On or before April 1 of each Comparison Year after the first Comparison Year (or as soon thereafter as is practical), Landlord shall deliver to Tenant a statement setting forth Tenant's Proportionate Share of the Excess Expenses for the preceding Comparison Year.  If Tenant's Proportionate Share of the actual Excess Expenses for the previous Comparison Year exceeds the total of the estimated monthly payments made by Tenant for such year, Tenant shall pay Landlord the amount of the deficiency within ten (10) days of the receipt of the statement.  If such total exceeds Tenant's Proportionate Share of the actual Excess Expenses for such Comparison Year, then Landlord shall credit against Tenant's next ensuing monthly installments of additional rent in an amount equal to the difference until the credit is exhausted.  If a credit is due from Landlord on the Expiration Date, Landlord shall pay Tenant the amount of the credit.  The obligations of Tenant and Landlord to make payments required under this Section 5.3 shall survive the Expiration Date.

(d)  Tenant's Proportionate Share of Excess Expenses in any Comparison Year having less than 365 days shall be appropriately prorated.

(e)  If any dispute arises as to the amount of any additional rent due hereunder, Tenant shall have the right after reasonable notice and at reasonable times to inspect Landlord's accounting records at Landlord's accounting office and, if after such inspection Tenant still disputes the amount of additional rent owed, a certification as to the proper amount shall be made by Landlord's certified public accountant, which certification shall be final and conclusive.  Tenant agrees to pay the cost of such certification unless it is determined that Landlord's original statement overstated Project Operating Costs by more than five percent (5%).

(f)  If this Lease sets forth an Expense Stop at Section 2f, then during the Term Tenant shall be liable for Tenant's Proportionate Share of any actual Project Operating Costs which exceed the amount of the Expense Stop. Tenant shall make current payments of such excess costs during the Term in the same manner as is provided for payment of Excess Expenses under the applicable provisions of Section 5.3b(2)(b) and (c) above.

3

Initials _____    Initials _____

5.4. *Definition of Rent.* All costs and expenses which Tenant assumes or agrees to pay to Landlord under this Lease shall be deemed additional rent (which, together with the Base Rent is sometimes referred to as the "Rent"). The Rent shall be paid to the Building Manager (or other person) and at such place, as Landlord may from time to time designate in writing, without any prior demand therefor and without deduction or offset, in lawful money of the United States of America.

5.5. *Rent Control.* If the amount of Rent or any other payment due under this Lease violates the terms of any governmental restrictions on such Rent or payment, then the Rent or payment due during the period of such restrictions shall be the maximum amount allowable under those restrictions. Upon termination of the restrictions, Landlord shall, to the extent it is legally permitted, recover from Tenant the difference between the amounts received during the period of the restrictions and the amounts Landlord would have received had there been no restrictions.

5.6. *Taxes Payable by Tenant.* In addition to the Rent and any other charges to be paid by Tenant hereunder, Tenant shall reimburse Landlord upon demand for any and all taxes payable by Landlord (other than net income taxes) which are not otherwise reimbursable under this Lease, whether or not now customary or within the contemplation of the parties, where such taxes are upon, measured by or reasonably attributable to (a) the cost or value of Tenant's equipment, furniture, fixtures and other personal property located in the Premises, or the cost or value of any leasehold improvements made in or to the Premises by or for Tenant, other than Building Standard Work made by Landlord, regardless of whether title to such improvements is held by Tenant or Landlord; (b) the gross or net Rent payable under this Lease, including, without limitation, any rental or gross receipts tax levied by any taxing authority with respect to the receipt of the Rent hereunder; (c) the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy by Tenant of the Premises or any portion thereof; or (d) this transaction or any document to which Tenant is a party creating or transferring an interest or an estate in the Premises. If it becomes unlawful for Tenant to reimburse Landlord for any costs as required under this Lease, the Base Rent shall be revised to net Landlord the same net Rent after imposition of any tax or other charge upon Landlord as would have been payable to Landlord but for the reimbursement being unlawful.

## 6.    INTEREST AND LATE CHARGES.

If Tenant fails to pay when due any Rent or other amounts or charges which Tenant is obligated to pay under the terms of this Lease, the unpaid amounts shall bear interest at the maximum rate then allowed by law. Tenant acknowledges that the late payment of any Monthly Installment of Base Rent will cause Landlord to lose the use of that money and incur costs and expenses not contemplated under this Lease, including without limitation, administrative and collection costs and processing and accounting expenses, the exact amount of which is extremely difficult to ascertain. Therefore, in addition to interest, if any such installment is not received by Landlord within ten (10) days from the date it is due, Tenant shall pay Landlord a late charge equal to ten percent (10%) of such installment. Landlord and Tenant agree that this late charge represents a reasonable estimate of such costs and expenses and is fair compensation to Landlord for the loss suffered from such nonpayment by Tenant. Acceptance of any interest or late charge shall not constitute a waiver of Tenant's default with respect to such nonpayment by Tenant nor prevent Landlord from exercising any other rights or remedies available to Landlord under this Lease.

## 7.    SECURITY DEPOSIT.

Tenant agrees to deposit with Landlord the Security Deposit set forth at Section 2.0 upon execution of this Lease, as security for Tenant's faithful performance of its obligations under this Lease. Landlord and Tenant agree that the Security Deposit may be commingled with funds of Landlord and Landlord shall have no obligation or liability for payment of interest on such deposit. Tenant shall not mortgage, assign, transfer or encumber the Security Deposit without the prior written consent of Landlord and any attempt by Tenant to do so shall be void, without force or effect and shall not be binding upon Landlord.

If Tenant fails to pay any Rent or other amount when due and payable under this Lease, or fails to perform any of the terms hereof, Landlord may appropriate and apply or use all or any portion of the Security Deposit for Rent payments or any other amount then due and unpaid, for payment of any amount for which Landlord has become obligated as a result of Tenant's default or breach, and for any loss or damage sustained by Landlord as a result of Tenant's default or breach, and Landlord may so apply or use this deposit without prejudice to any other remedy Landlord may have by reason of Tenant's default or breach. If Landlord so uses any of the Security Deposit, Tenant shall, within ten (10) days after written demand therefor, restore the Security Deposit to the full amount originally deposited; Tenant's failure to do so shall constitute an act of default hereunder and Landlord shall have the right to exercise any remedy provided for at Article 27 hereof. Within fifteen (15) days after the Term (or any extension thereof) has expired or Tenant has vacated the Premises, whichever shall last occur, and provided Tenant is not then in default on any of its obligations hereunder, Landlord shall return the Security Deposit to Tenant, or, if Tenant has assigned its interest under this Lease, to the last assignee of Tenant. If Landlord sells its interest in the Premises, Landlord may deliver this deposit to the purchaser of Landlord's interest and thereupon be relieved of any further liability or obligation with respect to the Security Deposit.

## 8.    TENANT'S USE OF THE PREMISES.

Tenant shall use the Premises solely for the purposes set forth in Tenant's Use Clause. Tenant shall not use or occupy the Premises in violation of law or any covenant, condition or restriction affecting the Building or Project or the certificate of occupancy issued for the Building or Project, and shall, upon notice from Landlord, immediately discontinue any use of the Premises which is declared by any governmental authority having jurisdiction to be a violation of law or the certificate of occupancy. Tenant, at Tenant's own cost and expense, shall comply with all laws, ordinances, regulations, rules and/or any directions of any governmental agencies or authorities having jurisdiction which shall, by reason of the nature of Tenant's use or occupancy of the Premises, impose any duty upon Tenant or Landlord with respect to the Premises or its use or occupation. A judgment of any court of competent jurisdiction or the admission by Tenant in any action or proceeding against Tenant that Tenant has violated any such laws, ordinances, regulations, rules and/or directions in the use of the Premises shall be deemed to be a conclusive determination of that fact as between Landlord and Tenant. Tenant shall not do or permit to be done anything which will invalidate or increase the cost of any fire, extended coverage or other insurance policy covering the Building or Project and/or property located therein, and shall comply with all rules, orders, regulations, requirements and recommendations of the Insurance Services Office or any other organization performing a similar function. Tenant shall promptly upon demand reimburse Landlord for any additional premium charged for such policy by reason of Tenant's failure to comply with the provisions of this Article. Tenant shall not do or permit anything to be done in or about the Premises which will in any way obstruct or interfere with the rights of other tenants or occupants of the Building or Project, or injure or annoy them, or use or allow the Premises to be used for any improper, immoral, unlawful or objectionable purpose, nor

4

Initials _____    Initials _____

shall Tenant cause, maintain or p        y    ance in, on or about the Premises. Tenant sh        t or suffer to be committed any waste in or upon the Premise

## 9. SERVICES AND UTILITIES.

Provided that Tenant is not in default hereunder, Landlord agrees to furnish to the Premises during generally recognized business days, and during hours determined by Landlord in its sole discretion, and subject to the Rules and Regulations of the Building or Project, electricity for normal desk top office equipment and normal copying equipment, and heating, ventilation and air conditioning ("HVAC") as required in Landlord's judgment for the comfortable use and occupancy of the Premises. If Tenant desires HVAC at any other time, Landlord shall use reasonable efforts to furnish such service upon reasonable notice from Tenant and Tenant shall pay Landlord's charges therefor on demand. Landlord shall also maintain and keep lighted the common stairs, common entries and restrooms in the Building. Landlord shall not be in default hereunder or be liable for any damages directly or indirectly resulting from, nor shall the Rent be abated by reason of (i) the installation, use or interruption of use of any equipment in connection with the furnishing of any of the foregoing services, (ii) failure to furnish or delay in furnishing any such services where such failure or delay is caused by accident or any condition or event beyond the reasonable control of Landlord, or by the making of necessary repairs or improvements to the Premises, Building or Project, or (iii) the limitation, curtailment or rationing of, or restrictions on, use of water, electricity, gas or any other form of energy serving the Premises, Building or Project. Landlord shall not be liable under any circumstances for a loss of or injury to property or business, however occurring, through or in connection with or incidental to failure to furnish any such services. If Tenant uses heat generating machines or equipment in the Premises which affect the temperature otherwise maintained by the HVAC system, Landlord reserves the right to install supplementary air conditioning units in the Premises and the cost thereof, including the cost of installation, operation and maintenance thereof, shall be paid by Tenant to Landlord upon demand by Landlord.

Tenant shall not, without the written consent of Landlord, use any apparatus or device in the Premises, including without limitation, electronic data processing machines, punch card machines or machines using in excess of 120 volts, which consumes more electricity than is usually furnished or supplied for the use of premises as general office space, as determined by Landlord. Tenant shall not connect any apparatus with electric current except through existing electrical outlets in the Premises. Tenant shall not consume water or electric current in excess of that usually furnished or supplied for the use of premises as general office space (as determined by Landlord), without first procuring the written consent of Landlord, which Landlord may refuse, and in the event of consent, Landlord may have installed a water meter or electrical current meter in the Premises to measure the amount of water or electric current consumed. The cost of any such meter and of its installation, maintenance and repair shall be paid for by the Tenant and Tenant agrees to pay to Landlord promptly upon demand for all such water and electric current consumed as shown by said meters, at the rates charged for such services by the local public utility plus any additional expense incurred in keeping account of the water and electric current so consumed. If a separate meter is not installed, the excess cost for such water and electric current shall be established by an estimate made by a utility company or electrical engineer hired by Landlord at Tenant's expense.

Nothing contained in this Article shall restrict Landlord's right to require at any time separate metering of utilities furnished to the Premises. In the event utilities are separately metered, Tenant shall pay promptly upon demand for all utilities consumed at utility rates charged by the local public utility plus any additional expense incurred by Landlord in keeping account of the utilities so consumed. Tenant shall be responsible for the maintenance and repair of any such meters at its sole cost.

Landlord shall furnish elevator service, lighting replacement for building standard lights, restroom supplies, window washing and janitor services in a manner that such services are customarily furnished to comparable office buildings in the area.

## 10. CONDITION OF THE PREMISES.

Tenant's taking possession of the Premises shall be deemed conclusive evidence that as of the date of taking possession the Premises are in good order and satisfactory condition, except for such matters as to which Tenant gave Landlord notice on or before the Commencement Date. No promise of Landlord to alter, remodel, repair or improve the Premises, the Building or the Project and no representation, express or implied, respecting any matter or thing relating to the Premises, Building, Project or this Lease (including, without limitation, the condition of the Premises, the Building or the Project) have been made to Tenant by Landlord or its Broker or Sales Agent, other than as may be contained herein or in a separate exhibit or addendum signed by Landlord and Tenant.

## 11. CONSTRUCTION, REPAIRS AND MAINTENANCE.

a.  *Landlord's Obligations.*  Landlord shall perform Landlord's Work to the Premises. Landlord shall maintain in good order, condition and repair the Building and all other portions of the Premises not the obligation of Tenant or of any other tenant in the Building.

b.  *Tenant's Obligations.*

~~(1) Tenant shall perform Tenant's Work to the Premises as described in Exhibit "C."~~

(2) Tenant at Tenant's sole expense shall, except for services furnished by Landlord pursuant to Article 9 hereof, maintain the Premises in good order, condition and repair, including the interior surfaces of the ceilings, walls and floors, all doors, all interior windows, all plumbing, pipes and fixtures, electrical wiring, switches and fixtures, Building Standard furnishings and special items and equipment installed by or at the expense of Tenant.

(3) Tenant shall be responsible for all repairs and alterations in and to the Premises, Building and Project and the facilities and systems thereof, the need for which arises out of (i) Tenant's use or occupancy of the Premises, (ii) the installation, removal, use or operation of Tenant's Property (as defined in Article 13) in the Premises, (iii) the moving of Tenant's Property into or out of the Building, or (iv) the act, omission, misuse or negligence of Tenant, its agents, contractors, employees or invitees.

(4) If Tenant fails to maintain the Premises in good order, condition and repair, Landlord shall give Tenant notice to do such acts as are reasonably required to so maintain the Premises. If Tenant fails to promptly commence such work and diligently prosecute it to completion, then Landlord shall have the right to do such acts and expend such funds at the expense of Tenant as are reasonably required to perform such work. Any amount so expended by Landlord shall be paid

Initials _____ Initials

,by Tenant promptly after [...] interest at the prime commercial rate then being [...] by Bank of America NT & SA plus two percent (2% [...]  annum, from the date of such work, but not to exceed the [...] .num rate then allowed by law. Landlord shall have no liability to Tenant for any damage, inconvenience, or interference with the use of the Premises by Tenant as a result of performing any such work.

c.   *Compliance with Law.*   Landlord and Tenant shall each do all acts required to comply with all applicable laws, ordinances, and rules of any public authority relating to their respective maintenance obligations as set forth herein.

d.   *Waiver by Tenant.*   Tenant expressly waives the benefits of any statute now or hereafter in effect which would otherwise afford the Tenant the right to make repairs at Landlord's expense or to terminate this Lease because of Landlord's failure to keep the Premises in good order, condition and repair.

e.   *Load and Equipment Limits.*   Tenant shall not place a load upon any floor of the Premises which exceeds the load per square foot which such floor was designed to carry, as determined by Landlord or Landlord's structural engineer. The cost of any such determination made by Landlord's structural engineer shall be paid for by Tenant upon demand. Tenant shall not install business machines or mechanical equipment which cause noise or vibration to such a degree as to be objectionable to Landlord or other Building tenants.

f.   Except as otherwise expressly provided in this Lease, Landlord shall have no liability to Tenant nor shall Tenant's obligations under this Lease be reduced or abated in any manner whatsoever by reason of any inconvenience, annoyance, interruption or injury to business arising from Landlord's making any repairs or changes which Landlord is required or permitted by this Lease or by any other tenant's lease or required by law to make in or to any portion of the Project, Building or the Premises. Landlord shall nevertheless use reasonable efforts to minimize any interference with Tenant's business in the Premises.

g.   Tenant shall give Landlord prompt notice of any damage to or defective condition in any part or appurtenance of the Building's mechanical, electrical, plumbing, HVAC or other systems serving, located in, or passing through the Premises.

h.   Upon the expiration or earlier termination of this Lease, Tenant shall return the Premises to Landlord clean and in the same condition as on the date Tenant took possession, except for normal wear and tear. Any damage to the Premises, including any structural damage, resulting from Tenant's use or from the removal of Tenant's fixtures, furnishings and equipment pursuant to Section 13b shall be repaired by Tenant at Tenant's expense.

## 12.   ALTERATIONS AND ADDITIONS.

a.   Tenant shall not make any additions, alterations or improvements to the Premises without obtaining the prior written consent of Landlord. Landlord's consent may be conditioned on Tenant's removing any such additions, alterations or improvements upon the expiration of the Term and restoring the Premises to the same condition as on the date Tenant took possession. All work with respect to any addition, alteration or improvement shall be done in a good and workmanlike manner by properly qualified and licensed personnel approved by Landlord, and such work shall be diligently prosecuted to completion. Landlord may, at Landlord's option, require that any such work be performed by Landlord's contractor, in which case the cost of such work shall be paid for before commencement of the work. Tenant shall pay to Landlord upon completion of any such work by Landlord's contractor, an administrative fee of fifteen percent (15%) of the cost of the work.

b.   Tenant shall pay the costs of any work done on the Premises pursuant to Section 12a, and shall keep the Premises, Building and Project free and clear of liens of any kind. Tenant shall indemnify, defend against and keep Landlord free and harmless from all liability, loss, damage, costs, attorneys' fees and any other expense incurred on account of claims by any person performing work or furnishing materials or supplies for Tenant or any person claiming under Tenant.

Tenant shall keep Tenant's leasehold interest, and any additions or improvements which are or become the property of Landlord under this Lease, free and clear of all attachment or judgment liens. Before the actual commencement of any work for which a claim or lien may be filed, Tenant shall give Landlord notice of the intended commencement date a sufficient time before that date to enable Landlord to post notices of non-responsibility or any other notices which Landlord deems necessary for the proper protection of Landlord's interest in the Premises, Building or the Project, and Landlord shall have the right to enter the Premises and post such notices at any reasonable time.

c.   Landlord may require, at Landlord's sole option, that Tenant provide to Landlord, at Tenant's expense, a lien and completion bond in an amount equal to at least one and one-half (1½) times the total estimated cost of any additions, alterations or improvements to be made in or to the Premises, to protect Landlord against any liability for mechanic's and materialmen's liens and to insure timely completion of the work. Nothing contained in this Section 12c shall relieve Tenant of its obligation under Section 12b to keep the Premises, Building and Project free of all liens.

d.   Unless their removal is required by Landlord as provided in Section 12a, all additions, alterations and improvements made to the Premises shall become the property of Landlord and be surrendered with the Premises upon the expiration of the Term; provided, however, that Tenant's equipment, machinery and trade fixtures which can be removed without damage to the Premises shall remain the property of Tenant and may be removed, subject to the provisions of Section 13b.

## 13.   LEASEHOLD IMPROVEMENTS; TENANT'S PROPERTY.

a.   All fixtures, equipment, improvements and appurtenances attached to or built into the Premises at the commencement of or during the Term, whether or not by or at the expense of Tenant ("Leasehold Improvements"), shall be and remain a part of the Premises, shall be the property of Landlord and shall not be removed by Tenant, except as expressly provided in Section 13b.

b.   All movable partitions, business and trade fixtures, machinery and equipment, communications equipment and office equipment located in the Premises and acquired by or for the account of Tenant, without expense to Landlord, which can be removed without structural damage to the Building, and all furniture, furnishings and other articles of movable personal property owned by Tenant and located in the Premises (collectively "Tenant's Property") shall be and shall remain the property of Tenant and may be removed by Tenant at any time during the Term; provided that if any of Tenant's Property is removed,

Initials _____  Initials _____

Tenant shall promptly repa█ █ any █ to the Premises or to the Building resulting █ █moval.

## 14.  RULES AND REGULATIONS.

Tenant agrees to comply with (and cause its agents, contractors, employees and invitees to comply with) the rules and regulations attached hereto as Exhibit "D" and with such reasonable modifications thereof and additions thereto as Landlord may from time to time make.  Landlord shall not be responsible for any violation of said rules and regulations by other tenants or occupants of the Building or Project.

## 15.  CERTAIN RIGHTS RESERVED BY LANDLORD.

Landlord reserves the following rights, exercisable without liability to Tenant for (a) damage or injury to property, person or business, (b) causing an actual or constructive eviction from the Premises, or (c) disturbing Tenant's use or possession of the Premises:

   a.  To name the Building and Project and to change the name or street address of the Building or Project;

   b.  To install and maintain all signs on the exterior and interior of the Building and Project;

   c.  To have pass keys to the Premises and all doors within the Premises, excluding Tenant's vaults and safes;

   d.  At any time during the Term, and on reasonable prior notice to Tenant, to inspect the Premises, and to show the Premises to any prospective purchaser or mortgagee of the Project, or to any assignee of any mortgage on the Project, or to others having an interest in the Project or Landlord, and during the last six months of the Term, to show the Premises to prospective tenants thereof; and

   e.  To enter the Premises for the purpose of making inspections, repairs, alterations, additions or improvements to the Premises or the Building (including, without limitation, checking, calibrating, adjusting or balancing controls and other parts of the HVAC system), and to take all steps as may be necessary or desirable for the safety, protection, maintenance or preservation of the Premises or the Building or Landlord's interest therein, or as may be necessary or desirable for the operation or improvement of the Building or in order to comply with laws, orders or requirements of governmental or other authority. Landlord agrees to use its best efforts (except in an emergency) to minimize interference with Tenant's business in the Premises in the course of any such entry.

## 16.  ASSIGNMENT AND SUBLETTING.

No assignment of this Lease or sublease of all or any part of the Premises shall be permitted, except as provided in this Article 16.

   a.  Tenant shall not, without the prior written consent of Landlord, assign or hypothecate this Lease or any interest herein or sublet the Premises or any part thereof, or permit the use of the Premises by any party other than Tenant.  Any of the foregoing acts without such consent shall be void and shall, at the option of Landlord, terminate this Lease.  This Lease shall not, nor shall any interest of Tenant herein, be assignable by operation of law without the written consent of Landlord.

   b.  If at any time or from time to time during the Term Tenant desires to assign this Lease or sublet all or any part of the Premises, Tenant shall give notice to Landlord setting forth the terms and provisions of the proposed assignment or sublease, and the identity of the proposed assignee or subtenant.  Tenant shall promptly supply Landlord with such information concerning the business background and financial condition of such proposed assignee or subtenant as Landlord may reasonably request.  Landlord shall have the option, exercisable by notice given to Tenant within twenty (20) days after Tenant's notice is given, either to sublet such space from Tenant at the rental and on the other terms set forth in this Lease for the term set forth in Tenant's notice, or, in the case of an assignment, to terminate this Lease.  If Landlord does not exercise such option, Tenant may assign the Lease or sublet such space to such proposed assignee or subtenant on the following further conditions:

      (1)  Landlord shall have the right to approve such proposed assignee or subtenant, which approval shall not be unreasonably withheld;

      (2)  The assignment or sublease shall be on the same terms set forth in the notice given to Landlord;

      (3)  No assignment or sublease shall be valid and no assignee or sublessee shall take possession of the Premises until an executed counterpart of such assignment or sublease has been delivered to Landlord;

      (4)  No assignee or sublessee shall have a further right to assign or sublet except on the terms herein contained; and

      (5)  Any sums or other economic consideration received by Tenant as a result of such assignment or subletting, however denominated under the assignment or sublease, which exceed, in the aggregate, (i) the total sums which Tenant is obligated to pay Landlord under this Lease (prorated to reflect obligations allocable to any portion of the Premises subleased), plus (ii) any real estate brokerage commissions or fees payable in connection with such assignment or subletting, shall be paid to Landlord as additional rent under this Lease without affecting or reducing any other obligations of Tenant hereunder.

   c.  Notwithstanding the provisions of paragraphs a and b above, Tenant may assign this Lease or sublet the Premises or any portion thereof, without Landlord's consent and without extending any recapture or termination option to Landlord, to any corporation which controls, is controlled by or is under common control with Tenant, or to any corporation resulting from a merger or consolidation with Tenant, or to any person or entity which acquires all the assets of Tenant's business as a going concern, provided that (i) the assignee or sublessee assumes, in full, the obligations of Tenant under this Lease, (ii) Tenant remains fully liable under this Lease, and (iii) the use of the Premises under Article 8 remains unchanged.

   d.  No subletting or assignment shall release Tenant of Tenant's obligations under this Lease or alter the primary liability of

Initials _____ Initials

Tenant to pay the Rent and ~~~~ other obligations to be performed by Tenant ~~~~ The acceptance of Rent by Landlord from any other pe~~~~ al~ not be deemed to be a waiver by Landlord of any pro~~~~ hereof. Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment or subletting. In the event of default by an assignee or subtenant of Tenant or any successor of Tenant in the performance of any of the terms hereof, Landlord may proceed directly against Tenant without the necessity of exhausting remedies against such assignee, subtenant or successor. Landlord may consent to subsequent assignments of the Lease or sublettings or amendments or modifications to the Lease with assignees of Tenant, without notifying Tenant, or any successor of Tenant, and without obtaining its or their consent thereto and any such actions shall not relieve Tenant of liability under this Lease.

e.   If Tenant assigns the Lease or sublets the Premises or requests the consent of Landlord to any assignment or subletting or if Tenant requests the consent of Landlord for any act that Tenant proposes to do, then Tenant shall, upon demand, pay Landlord an administrative fee of One Hundred Fifty and No/100ths Dollars ($150.00) plus any attorneys' fees reasonably incurred by Landlord in connection with such act or request.

## 17.   HOLDING OVER.

If after expiration of the Term, Tenant remains in possession of the Premises with Landlord's permission (express or implied), Tenant shall become a tenant from month to month only, upon all the provisions of this Lease (except as to term and Base Rent), but the "Monthly Installments of Base Rent" payable by Tenant shall be increased to one hundred fifty percent (150%) of the Monthly Installments of Base Rent payable by Tenant at the expiration of the Term. Such monthly rent shall be payable in advance on or before the first day of each month. If either party desires to terminate such month to month tenancy, it shall give the other party not less than thirty (30) days advance written notice of the date of termination.

## 18.   SURRENDER OF PREMISES.

a.   Tenant shall peaceably surrender the Premises to Landlord on the Expiration Date, in broom-clean condition and in as good condition as when Tenant took possession, except for (i) reasonable wear and tear, (ii) loss by fire or other casualty, and (iii) loss by condemnation. Tenant shall, on Landlord's request, remove Tenant's Property on or before the Expiration Date and promptly repair all damage to the Premises or Building caused by such removal.

b.   If Tenant abandons or surrenders the Premises, or is dispossessed by process of law or otherwise, any of Tenant's Property left on the Premises shall be deemed to be abandoned, and, at Landlord's option, title shall pass to Landlord under this Lease as by a bill of sale. If Landlord elects to remove all or any part of such Tenant's Property, the cost of removal, including repairing any damage to the Premises or Building caused by such removal, shall be paid by Tenant. On the Expiration Date Tenant shall surrender all keys to the Premises.

## 19.   DESTRUCTION OR DAMAGE.

a.   If the Premises or the portion of the Building necessary for Tenant's occupancy is damaged by fire, earthquake, act of God, the elements of other casualty, Landlord shall, subject to the provisions of this Article, promptly repair the damage, if such repairs can, in Landlord's opinion, be completed within (90) ninety days. If Landlord determines that repairs can be completed within ninety (90) days, this Lease shall remain in full force and effect, except that if such damage is not the result of the negligence or willful misconduct of Tenant or Tenant's agents, employees, contractors, licensees or invitees, the Base Rent shall be abated to the extent Tenant's use of the Premises is impaired, commencing with the date of damage and continuing until completion of the repairs required of Landlord under Section 19d.

b.   If in Landlord's opinion, such repairs to the Premises or portion of the Building necessary for Tenant's occupancy cannot be completed within ninety (90) days, Landlord may elect, upon notice to Tenant given within thirty (30) days after the date of such fire or other casualty, to repair such damage, in which event this Lease shall continue in full force and effect, but the Base Rent shall be partially abated as provided in Section 19a. If Landlord does not so elect to make such repairs, this Lease shall terminate as of the date of such fire or other casualty.

c.   If any other portion of the Building or Project is totally destroyed or damaged to the extent that in Landlord's opinion repair thereof cannot be completed within ninety (90) days, Landlord may elect upon notice to Tenant given within thirty (30) days after the date of such fire or other casualty, to repair such damage, in which event this Lease shall continue in full force and effect, but the Base Rent shall be partially abated as provided in Section 19a. If Landlord does not elect to make such repairs, this Lease shall terminate as of the date of such fire or other casualty.

d.   If the Premises are to be repaired under this Article, Landlord shall repair at its cost any injury or damage to the Building and Building Standard Work in the Premises. Tenant shall be responsible at its sole cost and expense for the repair, restoration and replacement of any other Leasehold Improvements and Tenant's Property. Landlord shall not be liable for any loss of business, inconvenience or annoyance arising from any repair or restoration of any portion of the Premises, Building or Project as a result of any damage from fire or other casualty.

e.   This Lease shall be considered an express agreement governing any case of damage to or destruction of the Premises, Building or Project by fire or other casualty, and any present or future law which purports to govern the rights of Landlord and Tenant in such circumstances in the absence of express agreement, shall have no application.

## 20.   EMINENT DOMAIN.

a.   If the whole of the Building or Premises is lawfully taken by condemnation or in any other manner for any public or quasi-public purpose, this Lease shall terminate as of the date of such taking, and Rent shall be prorated to such date. If less than the whole of the Building or Premises is so taken, this Lease shall be unaffected by such taking, provided that (i) Tenant shall have the right to terminate this Lease by notice to Landlord given within ninety (90) days after the date of such taking if twenty percent (20%) or more of the Premises is taken and the remaining area of the Premises is not reasonably sufficient for Tenant to continue operation of its business, and (ii) Landlord shall have the right to terminate this Lease by notice to Tenant given within ninety (90) days after the date of such taking. If either Landlord or Tenant so elects to terminate this Lease, the Lease

Initials _____ Initials

shall terminate on the thirti[illegible]th[illegible] after either such notice. The Rent shall be pr[illegible] date of termination. If this Lease continues in force up[illegible] partial taking, the Base Rent and Tenant's Proportionate [illegible] shall be equitably adjusted according to the remaining Rentable Area of the Premises and Project.

b. In the event of any taking, partial or whole, all of the proceeds of any award, judgment or settlement payable by the condemning authority shall be the exclusive property of Landlord, and Tenant hereby assigns to Landlord all of its right, title and interest in any award, judgment or settlement from the condemning authority. Tenant, however, shall have the right, to the extent that Landlord's award is not reduced or prejudiced, to claim from the condemning authority (but not from Landlord) such compensation as may be recoverable by Tenant in its own right for relocation expenses and damage to Tenant's personal property.

c. In the event of a partial taking of the Premises which does not result in a termination of this Lease, Landlord shall restore the remaining portion of the Premises as nearly as practicable to its condition prior to the condemnation or taking, but only to the extent of Building Standard Work. Tenant shall be responsible at its sole cost and expense for the repair, restoration and replacement of any other Leasehold Improvements and Tenant's Property.

## 21. INDEMNIFICATION.

a. Tenant and Landlord shall each indemnify and hold the other harmless against and from liability and claims of any kind for loss or damage to property of Tenant or any other person, or for any injury to or death of any person, arising out of (1) Tenant's use and occupancy of the Premises, or any work, activity or other things allowed or suffered by Tenant to be done in, on or about the Premises; (2) any breach or default by Tenant of any of Tenant's obligations under this Lease; or (3) any negligent or otherwise tortious act or omission of Tenant, its agents, employees, invitees or contractors. Tenant shall at Tenant's expense, and by counsel satisfactory to Landlord, defend Landlord in any action or proceeding arising from any such claim and shall indemnify Landlord against all costs, attorneys' fees, expert witness fees and any other expenses incurred in such action or proceeding. As a material part of the consideration for Landlord's execution of this Lease, Tenant hereby assumes all risk of damage or injury to any person or property in, on or about the Premises from any cause.

b. Landlord nor Tenant shall not be liable for injury or damage which may be sustained by the person or property of the other, its employees, invitees or customers, or any other person in or about the Premises, caused by or resulting from fire, steam, electricity, gas, water or rain which may leak or flow from or into any part of the Premises, or from the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, whether such damage or injury results from conditions arising upon the Premises or upon other portions of the Building or Project or from other sources. Landlord shall not be liable for any damages arising from any act or omission of any other tenant of the Building or Project.

## 22. TENANT'S INSURANCE.

a. All insurance required to be carried by Tenant hereunder shall be issued by responsible insurance companies acceptable to Landlord and Landlord's lender and qualified to do business in the State. Each policy shall name Landlord, and at Landlord's request any mortgagee of Landlord, as an additional insured, as their respective interests may appear. Each policy shall contain (i) a cross-liability endorsement, (ii) a provision that such policy and the coverage evidenced thereby shall be primary and non-contributing with respect to any policies carried by Landlord and that any coverage carried by Landlord shall be excess insurance, and (iii) a waiver by the insurer of any right of subrogation against Landlord, its agents, employees and representatives, which arises or might arise by reason of any payment under such policy or by reason of any act or omission of Landlord, its agents, employees or representatives. A copy of each paid up policy (authenticated by the insurer) or certificate of the insurer evidencing the existence and amount of each insurance policy required hereunder shall be delivered to Landlord before the date Tenant is first given the right of possession of the Premises, and thereafter within thirty (30) days after any demand by Landlord therefor. Landlord may, at anytime and from time to time, inspect and/or copy any insurance policies required to be maintained by Tenant hereunder. No such policy shall be cancelable except after twenty (20) days written notice to Landlord and Landlord's lender. Tenant shall furnish Landlord with renewals or "binders" of any such policy at least ten (10) days prior to the expiration thereof. Tenant agrees that if Tenant does not take out and maintain such insurance, Landlord may (but shall not be required to) procure said insurance on Tenant's behalf and charge the Tenant the premiums together with a twenty-five percent (25%) handling charge, payable upon demand. Tenant shall have the right to provide such insurance coverage pursuant to blanket policies obtained by the Tenant, provided such blanket policies expressly afford coverage to the Premises, Landlord, Landlord's mortgagee and Tenant as required by this Lease.

b. Beginning on the date Tenant is given access to the Premises for any purpose and continuing until expiration of the Term, Tenant shall procure, pay for and maintain in effect policies of casualty insurance covering (i) all Leasehold Improvements (including any alterations, additions or improvements as may be made by Tenant pursuant to the provisions of Article 12 hereof), and (ii) trade fixtures, merchandise and other personal property from time to time in, on or about the Premises, in an amount not less than one hundred percent (100%) of their actual replacement cost from time to time, providing protection against any peril included within the classification "Fire and Extended Coverage" together with insurance against sprinkler damage, vandalism and malicious mischief. The proceeds of such insurance shall be used for the repair or replacement of the property so insured. Upon termination of this Lease following a casualty as set forth herein, the proceeds under (i) shall be paid to Landlord, and the proceeds under (ii) above shall be paid to Tenant.

c. Beginning on the date Tenant is given access to the Premises for any purpose and continuing until expiration of the Term, Tenant shall procure, pay for and maintain in effect workers' compensation insurance as required by law and comprehensive public liability and property damage insurance with respect to the construction of improvements on the Premises, the use, operation or condition of the Premises and the operations of Tenant in, on or about the Premises, providing personal injury and broad form property damage coverage for not less than One Million Dollars ($1,000,000.00) combined single limit for bodily injury, death and property damage liability.

d. Not less than every three (3) years during the Term, Landlord and Tenant shall mutually agree to increases in all of Tenant's insurance policy limits for all insurance to be carried by Tenant as set forth in this Article. In the event Landlord and Tenant cannot mutually agree upon the amounts of said increases, then Tenant agrees that all insurance policy limits as set forth in this Article shall be adjusted for increases in the cost of living in the same manner as is set forth in Section 5.2 hereof

Initials ______ Initials

for the adjustment of the B_____ t____

    e.  All Lessors and their managers are covered automatically as may be required

## 23.  WAIVER OF SUBROGATION.

Landlord and Tenant each hereby waive all rights of recovery against the other and against the officers, employees, agents and representatives of the other, on account of loss by or damage to the waiving party of its property or the property of others under its control, to the extent that such loss or damage is insured against under any fire and extended coverage insurance policy which either may have in force at the time of the loss or damage.  Tenant shall, upon obtaining the policies of insurance required under this Lease, give notice to its insurance carrier or carriers that the foregoing mutual waiver of subrogation is contained in this Lease.

## 24.  SUBORDINATION AND ATTORNMENT.

Upon written request of Landlord, or any first mortgagee or first deed of trust beneficiary of Landlord, or ground lessor of Landlord, Tenant shall, in writing, subordinate its rights under this Lease to the lien of any first mortgage or first deed of trust, or to the interest of any lease in which Landlord is lessee, and to all advances made or hereafter to be made thereunder.  However, before signing any subordination agreement, Tenant shall have the right to obtain from any lender or lessor or Landlord requesting such subordination, an agreement in writing providing that, as long as Tenant is not in default hereunder, this Lease shall remain in effect for the full Term.  The holder of any security interest may, upon written notice to Tenant, elect to have this Lease prior to its security interest regardless of the time of the granting or recording of such security interest.

In the event of any foreclosure sale, transfer in lieu of foreclosure or termination of the lease in which Landlord is lessee, Tenant shall attorn to the purchaser, transferee or lessor as the case may be, and recognize that party as Landlord under this Lease, provided such party acquires and accepts the Premises subject to this Lease.

## 25.  TENANT ESTOPPEL CERTIFICATES.

Within ten (10) days after written request from Landlord, Tenant shall execute and deliver to Landlord or Landlord's designee, a written statement certifying (a) that this Lease is unmodified and in full force and effect, or is in full force and effect as modified and stating the modifications; (b) the amount of Base Rent and the date to which Base Rent and additional rent have been paid in advance; (c) the amount of any security deposited with Landlord; and (d) that Landlord is not in default hereunder or, if Landlord is claimed to be in default, stating the nature of any claimed default.  Any such statement may be relied upon by a purchaser, assignee or lender.  Tenant's failure to execute and deliver such statement within the time required shall at Landlord's election be a default under this Lease and shall also be conclusive upon Tenant that: (1) this Lease is in full force and effect and has not been modified except as represented by Landlord; (2) there are no uncured defaults in Landlord's performance and that Tenant has no right of offset, counter-claim or deduction against Rent; and (3) not more than one month's Rent has been paid in advance.

## 26.  TRANSFER OF LANDLORD'S INTEREST.

In the event of any sale or transfer by Landlord of the Premises, Building or Project, and assignment of this Lease by Landlord, Landlord shall be and is hereby entirely freed and relieved of any and all liability and obligations contained in or derived from this Lease arising out of any act, occurrence or omission relating to the Premises, Building, Project or Lease occurring after the consummation of such sale or transfer, providing the purchaser shall expressly assume all of the covenants and obligations of Landlord under this Lease.  If any security deposit or prepaid Rent has been paid by Tenant, Landlord may transfer the security deposit or prepaid Rent to Landlord's successor and upon such transfer, Landlord shall be relieved of any and all further liability with respect thereto.

## 27.  DEFAULT.

27.1.  *Tenant's Default.*  The occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant:

    a.  If Tenant abandons or vacates the Premises; or

    b.  If Tenant fails to pay any Rent or any other charges required to be paid by Tenant under this Lease and such failure continues for fifteen (15) days after such payment is due and payable; or

    c.  If Tenant fails to promptly and fully perform any other covenant, condition or agreement contained in this Lease and such failure continues for thirty (30) days after written notice thereof from Landlord to Tenant; or

    d.  If a writ of attachment or execution is levied on this Lease or on any of Tenant's Property; or

    e.  If Tenant makes a general assignment for the benefit of creditors, or provides for an arrangement, composition, extension or adjustment with its creditors; or

    f.  If Tenant files a voluntary petition for relief or if a petition against Tenant in a proceeding under the federal bankruptcy laws or other insolvency laws is filed and not withdrawn or dismissed within forty-five (45) days thereafter, or if under the provisions of any law providing for reorganization or winding up of corporations, any court of competent jurisdiction assumes jurisdiction, custody or control of Tenant or any substantial part of its property and such jurisdiction, custody or control remains in force unrelinquished, unstayed or unterminated for a period of forty-five (45) days; or

    g.  If in any proceeding or action in which Tenant is a party, a trustee, receiver, agent or custodian is appointed to take charge of the Premises or Tenant's Property (or has the authority to do so) for the purpose of enforcing a lien against the Premises or Tenant's Property; or

    h.  If Tenant is a partnership or consists of more than one (1) person or entity, if any partner of the partnership or other person or entity is involved in any of the acts or events described in subparagraphs d through g above.

<div align="center">10</div>

Initials _____  Initials _____

27.2. *Remedies.* In the event of Tenant's default hereunder, then in addition to any other remedies Landlord may have under any law, Landlord shall have the right, at Landlord's option, without further notice or demand of any kind to do the following:

a. Terminate this Lease and Tenant's right to possession of the Premises and reenter the Premises and take possession thereof, and Tenant shall have no further claim to the Premises or under this Lease; or

b. Continue this Lease in effect, reenter and occupy the Premises for the account of Tenant, and collect any unpaid Rent or other charges which have or thereafter become due and payable; or

c. Reenter the Premises under the provisions of subparagraph b, and thereafter elect to terminate this Lease and Tenant's right to possession of the Premises.

If Landlord reenters the Premises under the provisions of subparagraphs b or c above, Landlord shall not be deemed to have terminated this Lease or the obligation of Tenant to pay any Rent or other charges thereafter accruing, unless Landlord notifies Tenant in writing of Landlord's election to terminate this Lease. In the event of any reentry or retaking of possession by Landlord, Landlord shall have the right, but not the obligation, to remove all or any part of Tenant's Property in the Premises and to place such property in storage at a public warehouse at the expense and risk of Tenant. If Landlord elects to relet the Premises for the account of Tenant, the rent received by Landlord from such reletting shall be applied as follows: first, to the payment of any indebtedness other than Rent due hereunder from Tenant to Landlord; second, to the payment of any costs of such reletting; third, to the payment of the cost of any alterations or repairs to the Premises; fourth to the payment of Rent due and unpaid hereunder; and the balance, if any, shall be held by Landlord and applied in payment of future Rent as it becomes due. If that portion of rent received from the reletting which is applied against the Rent due hereunder is less than the amount of the Rent due, Tenant shall pay the deficiency to Landlord promptly upon demand by Landlord. Such deficiency shall be calculated and paid monthly. Tenant shall also pay to Landlord, as soon as determined, any costs and expenses incurred by Landlord in connection with such reletting or in making alterations and repairs to the Premises, which are not covered by the rent received from the reletting.

Should Landlord elect to terminate this Lease under the provisions of subparagraph a or c above, Landlord may recover as damages from Tenant the following:

1. *Past Rent.* The worth at the time of the award of any unpaid Rent which had been earned at the time of termination; plus

2. *Rent Prior to Award.* The worth at the time of the award of the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

3. *Rent After Award.* The worth at the time of the award of the amount by which the unpaid Rent for the balance of the Term after the time of award exceeds the amount of the rental loss that Tenant proves could be reasonably avoided; plus

4. *Proximately Caused Damages.* Any other amount necessary to compensate Landlord for all detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, including, but not limited to, any costs or expenses (including attorneys' fees), incurred by Landlord in (a) retaking possession of the Premises, (b) maintaining the Premises after Tenant's default, (c) preparing the Premises for reletting to a new tenant, including any repairs or alterations, and (d) reletting the Premises, including broker's commissions.

"The worth at the time of the award" as used in subparagraphs 1 and 2 above, is to be computed by allowing interest at the rate of ten percent (10%) per annum. "The worth at the time of the award" as used in subparagraph 3 above, is to be computed by discounting the amount at the discount rate of the Federal Reserve Bank situated nearest to the Premises at the time of the award plus one percent (1%).

The waiver by Landlord of any breach of any term, covenant or condition of this Lease shall not be deemed a waiver of such term, covenant or condition or of any subsequent breach of the same or any other term, covenant or condition. Acceptance of Rent by Landlord subsequent to any breach hereof shall not be deemed a waiver of any preceding breach other than the failure to pay the particular Rent so accepted, regardless of Landlord's knowledge of any breach at the time of such acceptance of Rent. Landlord shall not be deemed to have waived any term, covenant or condition unless Landlord gives Tenant written notice of such waiver.

27.3 *Landlord's Default.* If Landlord fails to perform any covenant, condition or agreement contained in this Lease within thirty (30) days after receipt of written notice from Tenant specifying such default, or if such default cannot reasonably be cured within thirty (30) days, if Landlord fails to commence to cure within that thirty (30) day period, then Landlord shall be liable to Tenant for any damages sustained by Tenant as a result of Landlord's breach; provided, however, it is expressly understood and agreed that if Tenant obtains a money judgment against Landlord resulting from any default or other claim arising under this Lease, that judgment shall be satisfied only out of the rents, issues, profits, and other income actually received on account of Landlord's right, title and interest in the Premises, Building or Project, and no other real, personal or mixed property of Landlord (or of any of the partners which comprise Landlord, if any) wherever situated, shall be subject to levy to satisfy such judgment. If, after notice to Landlord of default, Landlord (or any first mortgagee or first deed of trust beneficiary of Landlord) fails to cure the default as provided herein, then Tenant shall have the right to cure that default at Landlord's expense. Tenant shall not have the right to terminate this Lease or to withhold, reduce, or offset any amount against any payments of Rent or any other charges due and payable under this Lease except as otherwise specifically provided herein.

## 28. BROKERAGE FEES.

Tenant warrants and represents that it has not dealt with any real estate broker or agent in connection with this Lease or its negotiation except those noted in Section 2.c. Tenant shall indemnify and hold Landlord harmless from any cost, expense or liability (including costs of suit and reasonable attorneys' fees) for any compensation, commission or fees claimed by any other real estate broker or agent in connection with this Lease or its negotiation by reason of any act of Tenant.

## 29. NOTICES.

All notices, approvals and demands permitted or required to be given under this Lease shall be in writing and deemed duly served or

Initials _____ Initials

given if personally delivered or ... y ...fied or registered U.S. mail, postage prepa... ...ssed as follows: (a) if to Landlord, to Landlord's Mailing ... ...s and to the Building manager, and (b) if to Tenant, to Tena... ...Mailing Address; provided, however, notices to Tenant shall be deemed duly served or given if delivered or mailed to Tenant at the Premises. Landlord and Tenant may from time to time by notice to the other designate another place for receipt of future notices.

### 30.  GOVERNMENT ENERGY OR UTILITY CONTROLS.

In the event of imposition of federal, state or local government controls, rules, regulations, or restrictions on the use or consumption of energy or other utilities during the Term, both Landlord and Tenant shall be bound thereby.  In the event of a difference in interpretation by Landlord and Tenant of any such controls, the interpretation of Landlord shall prevail, and Landlord shall have the right to enforce compliance therewith, including the right of entry into the Premises to effect compliance.

### 31.  ~~RELOCATION OF PREMISES.~~

~~Landlord shall have the right to relocate the Premises to another part of the Building in accordance with the following:~~

~~a.    The new premises shall be substantially the same in size, dimensions, configuration, decor and nature as the Premises described in this Lease, and if the relocation occurs after the Commencement Date, shall be placed in that condition by Landlord at its cost.~~

~~b.    Landlord shall give Tenant at least thirty (30) days written notice of Landlord's intention to relocate the Premises.~~

~~c.    As nearly as practicable, the physical relocation of the Premises shall take place on a weekend and shall be completed before the following Monday.  If the physical relocation has not been completed in that time, Base Rent shall abate in full from the time the physical relocation commences to the time it is completed.  Upon completion of such relocation, the new premises shall become the "Premises" under this Lease.~~

~~d.    All reasonable costs incurred by Tenant as a result of the relocation shall be paid by Landlord.~~

~~e.    If the new premises are smaller than the Premises as it existed before the relocation, Base Rent shall be reduced proportionately.~~

~~f.    The parties hereto shall immediately execute an amendment to this Lease setting forth the relocation of the Premises and the reduction of Base Rent, if any.~~

### 32.  QUIET ENJOYMENT.

Tenant, upon paying the Rent and performing all of its obligations under this Lease, shall peaceably and quietly enjoy the Premises, subject to the terms of this Lease and to any mortgage, lease, or other agreement to which this Lease may be subordinate.

### 33.  OBSERVANCE OF LAW.

Tenant shall not use the Premises or permit anything to be done in or about the Premises which will in any way conflict with any law, statute, ordinance or governmental rule or regulation now in force or which may hereafter be enacted or promulgated. Tenant shall, at its sole cost and expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force, and with the requirements of any board of fire insurance underwriters or other similar bodies now or hereafter constituted, relating to, or affecting the condition, use or occupancy of the Premises, excluding structural changes not related to or affected by Tenant's improvements or acts.  The judgment of any court of competent jurisdiction or the admission of Tenant in any action against Tenant, whether Landlord is a party thereto or not, that Tenant has violated any law, ordinance or governmental rule, regulation or requirement, shall be conclusive of that fact as between Landlord and Tenant.

### 34.  FORCE MAJEURE.

Any prevention, delay or stoppage of work to be performed by Landlord or Tenant which is due to strikes, labor disputes, inability to obtain labor, materials, equipment or reasonable substitutes therefor, acts of God, governmental restrictions or regulations or controls, judicial orders, enemy or hostile government actions, civil commotion, fire or other casualty, or other causes beyond the reasonable control of the party obligated to perform hereunder, shall excuse performance of the work by that party for a period equal to the duration of that prevention, delay or stoppage.  Nothing in this Article 34 shall excuse or delay Tenant's obligation to pay Rent or other charges under this Lease.

### 35.  CURING TENANT'S DEFAULTS.

If Tenant defaults in the performance of any of its obligations under this Lease, Landlord may (but shall not be obligated to) without waiving such default, perform the same for the account at the expense of Tenant.  Tenant shall pay Landlord all costs of such performance promptly upon receipt of a bill therefor.

### 36.  SIGN CONTROL.

Tenant shall not affix, paint, erect or inscribe any sign, projection, awning, signal or advertisement of any kind to any part of the Premises, Building or Project, including without limitation, the inside or outside of windows or doors, without the written consent of Landlord.  Landlord shall have the right to remove any signs or other matter, installed without Landlord's permission, without being liable to Tenant by reason of such removal, and to charge the cost of removal to Tenant as additional rent hereunder, payable within ten (10) days of written demand by Landlord.

Initials _____ Initials _____

**37.  MISCELLANEOUS.**

a.   *Accord and Satisfaction; Allocation of Payments.*  No payment by Tenant or receipt by Landlord of a lesser amount than the Rent provided for in this Lease shall be deemed to be other than on account of the earliest due Rent, nor shall any endorsement or statement on any check or letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of the Rent or pursue any other remedy provided for in this Lease.  In connection with the foregoing, Landlord shall have the absolute right in its sole discretion to apply any payment received from Tenant to any account or other payment of Tenant then not current and due or delinquent.

b.   *Addenda.*  If any provision contained in an addendum to this Lease is inconsistent with any other provision herein, the provision contained in the addendum shall control, unless otherwise provided in the addendum.

c.   *Attorneys' Fees.*  If any action or proceeding is brought by either party against the other pertaining to or arising out of this Lease, the finally prevailing party shall be entitled to recover all costs and expenses, including reasonable attorneys' fees, incurred on account of such action or proceeding.

d.   *Captions, Articles and Section Numbers.*  The captions appearing within the body of this Lease have been inserted as a matter of convenience and for reference only and in no way define, limit or enlarge the scope or meaning of this Lease.  All references to Article and Section numbers refer to Articles and Sections in this Lease.

e.   *Changes Requested by Lender.*  Neither Landlord or Tenant shall unreasonably withhold its consent to changes or amendments to this Lease requested by the lender on Landlord's interest, so long as these changes do not alter the basic business terms of this Lease or otherwise materially diminish any rights or materially increase any obligations of the party from whom consent to such charge or amendment is requested.

f.   *Choice of Law.*  This Lease shall be construed and enforced in accordance with the laws of the State.

g.   *Consent.*  Notwithstanding anything contained in this Lease to the contrary, Tenant shall have no claim, and hereby waives the right to any claim against Landlord for money damages by reason of any refusal, withholding or delaying by Landlord of any consent, approval or statement of satisfaction, and in such event, Tenant's only remedies therefor shall be an action for specific performance, injunction or declaratory judgment to enforce any right to such consent, etc.

h.   *Corporate Authority.*  If Tenant is a corporation, each individual signing this Lease on behalf of Tenant represents and warrants that he is duly authorized to execute and deliver this Lease on behalf of the corporation, and that this Lease is binding on Tenant in accordance with its terms.  Tenant shall, at Landlord's request, deliver a certified copy of a resolution of its board of directors authorizing such execution.

i.   *Counterparts.*  This Lease may be executed in multiple counterparts, all of which shall constitute one and the same Lease.

j.   *Execution of Lease; No Option.*  The submission of this Lease to Tenant shall be for examination purposes only, and does not and shall not constitute a reservation of or option for Tenant to lease, or otherwise create any interest of Tenant in the Premises or any other premises within the Building or Project.  Execution of this Lease by Tenant and its return to Landlord shall not be binding on Landlord notwithstanding any time interval, until Landlord has in fact signed and delivered this Lease to Tenant.

k.   *Furnishing of Financial Statements; Tenant's Representations.*  In order to induce Landlord to enter into this Lease Tenant agrees that it shall promptly furnish Landlord, from time to time, upon Landlord's written request, with financial statements reflecting Tenant's current financial condition.  Tenant represents and warrants that all financial statements, records and information furnished by Tenant to Landlord in connection with this Lease are true, correct and complete in all respects.

l.   *Further Assurances.*  The parties agree to promptly sign all documents reasonably requested to give effect to the provisions of this Lease.

m.   *Mortgagee Protection.*  Tenant agrees to send by certified or registered mail to any first mortgagee or first deed of trust beneficiary of Landlord whose address has been furnished to Tenant, a copy of any notice of default served by Tenant on Landlord.  If Landlord fails to cure such default within the time provided for in this Lease, such mortgagee or beneficiary shall have an additional thirty (30) days to cure such default; provided that if such default cannot reasonably be cured within that thirty (30) day period, then such mortgagee or beneficiary shall have such additional time to cure the default as is reasonably necessary under the circumstances.

n.   *Prior Agreements; Amendments.*  This Lease contains all of the agreements of the parties with respect to any matter covered or mentioned in this Lease, and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose.  No provisions of this Lease may be amended or added to except by an agreement in writing signed by the parties or their respective successors in interest.

o.   *Recording.*  Tenant shall not record this Lease without the prior written consent of Landlord.  Tenant, upon the request of Landlord, shall execute and acknowledge a "short form" memorandum of this Lease for recording purposes.

p.   *Severability.*  A final determination by a court of competent jurisdiction that any provision of this Lease is invalid shall not affect the validity of any other provision, and any provision so determined to be invalid shall, to the extent possible, be construed to accomplish its intended effect.

13

Initials _____ Initials

q.   *Successors and Assigns.* Th— ~as~~ ~~~all apply to and bind the heirs, personal rep~~~~~~~ and permitted successors and assigns of the parties.

r.   *Time of the Essence.*  Time is of the essence of this Lease.

s.   *Waiver.*  No delay or omission in the exercise of any right or remedy of Landlord upon any default by Tenant shall impair such right or remedy or be construed as a waiver of such default.

t.   *Compliance.*  The parties hereto agree to comply with all applicable federal, state and local laws, regulations, codes, ordinances and administrative orders having jurisdiction over the parties, property or the subject matter of this Agreement, including, but not limited to, the 1964 Civil Rights Act and all amendments thereto, the Foreign Investment In Real Property Tax Act, the Comprehensive Environmental Response Compensation and Liability Act, and The Americans With Disabilities Act.

The receipt and acceptance by Landlord of delinquent Rent shall not constitute a waiver of any other default; it shall constitute only a waiver of timely payment for the particular Rent payment involved.

No act or conduct of Landlord, including, without limitation, the acceptance of keys to the Premises, shall constitute an acceptance of the surrender of the Premises by Tenant before the expiration of the Term.  Only a written notice from Landlord to Tenant shall constitute acceptance of the surrender of the Premises and accomplish a termination of the Lease.

Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent to or approval of any subsequent act by Tenant.

Any waiver by Landlord of any default must be in writing and shall not be a waiver of any other default concerning the same or any other provision of the Lease.

The parties hereto have executed this Lease as of the dates set forth below.

Date: _9/27/04_____                    Date: _9-25-04_____

Landlord:                                                          Tenant:

**VINTAGE PARK, LLC,**                                    **AMERICAN HOME MORTGAGE CORP.,**
**a California limited liability company**            **incorporated in the state of New York**

By: _/h/hinda_____                   By: _____

Title: _Project Manager_____                   Title: _____V.P._____

                                                                         By: _____

                                                                         Title: _____

**CONSULT YOUR ADVISORS**—This document has been prepared for approval by your attorney.  No representation or recommendation is made by CB Richard Ellis as to the legal sufficiency or tax consequences of this document or the transaction to which it relates.  These are questions for your attorney.
In any real estate transaction, it is recommended that you consult with a professional, such as a civil engineer, industrial hygienist or other person, with experience in evaluating the condition of the property, including the possible presence of asbestos, hazardous materials and underground storage tanks.

Initials _____ Initials

**ADDENDUM TO**
**OFFICE BUILDING LEASE**
**DATED  SEPTEMBER 23, 2004**
**BY AND BETWEEN**
**VINTAGE PARK, LLC, a California limited liability company (LANDLORD)**
**AND**
**AMERICAN HOME MORTGAGE CORP., incorporated in the state of New York  (TENANT)**

This Addendum is hereby made a part of that certain "Office Building Lease" between the above mentioned parties dated September 23, 2004 (the "Contract").  Said document shall be amended as follows.  In the event of any discrepancy between this document and any previous document(s) the provisions of this document shall prevail.

38.                              **RENT SCHEDULE**

Rents shall be paid as set forth below:

| | |
|---|---|
| Month One (1) | Free |
| Months Two (2) Through Thirteen (13) | $5,564.20 per month |
| Months Fourteen (14) Through Twenty-five (25) | $5,731.130 per month |
| Months Twenty-six (26) Through Thirty-seve (37) | $5,903.06 per month |

39.    **TENANT'S FAILURE TO MAINTAIN**  In the event Tenant fails to maintain the Premises in good order, condition and repair, Landlord shall give Tenant notice to do such acts as are reasonably required so to maintain Premises. In the event Tenant fails promptly to commence such work or diligently prosecute the same to completion, Landlord may but is not obligated to do such acts and expend such funds at the expense of Tenant as are reasonably required to perform such work.

40.    **INSTALLATION OF FIXTURES**  It is mutually agreed that in order to expedite the commencement of Tenant's business in the Premises, Tenant may enter upon the Premises for the purpose of installing trade fixtures and furnishings during the construction period, provided that such activity on the part of Tenant shall be done only in such manner as not to interfere with construction and that Landlord shall not be liable to Tenant for damage to or loss of such fixtures, equipment or furnishings, Tenant accepting the full risks for such damage or loss, if any.  Tenant shall pay for all utilities, consumed by Tenant or its contractors in preparing the Premises for the opening of Tenant's business.

41.    **PROHIBITED USES**  Tenant agrees that it will not use or permit any person to use the Premises for a second hand store, auction, distress or fire sale, bankruptcy or going out of business sale (whether or not pursuant to any insolvency proceedings), or for any use or purpose in violation of any governmental law or authority, and that Tenant shall at its sole cost and expense promptly comply with all laws, statutes, ordinances and governmental rules, regulations and requirements not in force of which may hereinafter be in force and with the requirements of any board of fire underwriters or other similar body now or hereafter constituted relating to or affecting the condition, use or occupancy of the Premises, or not related or afforded by Tenant's improvements or acts.  The judgment of any court of competent jurisdiction or the admission of Tenant in any action against Tenant, whether Landlord be a party thereto or not, that Tenant has violated any law, statute, ordinance or governmental rules, regulations or requirements, shall be conclusive of that fact as between Landlord and Tenant.  Tenant shall not do or permit anything to be done in or about the Premises which will in any way obstruct or interfere with the rights of other Tenants or occupants of the building of which the Premises may be a part or any other portion of the office building, or injure or annoy them, or use or allow the Premises to be used for any unlawful or objectionable purpose, nor shall Tenant cause, maintain or permit any nuisance in, on or about the Premises.  Tenant shall not commit or allow to be committed any waste in or upon the Premises. Tenant shall keep the Premises in a clean and wholesome condition, free of any objectionable noises, odors or nuisance.

42.    **INSOLVENCY OF TENANT**  Tenant agrees that in the event all or substantially all of its assets are placed in the hands of the receiver or trustee, and in the event such receivership of trusteeship continue for a period of ten (10) days, or should Tenant make assignment for the benefit of creditors, or be adjudicated a bankrupt, or should Tenant institute any state or federal bankruptcy act wherein Tenant seeks to be adjudicated a bankrupt, or seeks to be discharged of its debts, or should any voluntary proceedings be filed against such Tenant under such bankruptcy laws and Tenant consents thereto or acquiesces therein by pleading or default, then this Lease or any interest in and to the demised Premises shall not become an asset in any of such proceedings and in any of such events and in addition to any and all rights or remedies of Landlord hereunder as provided by law, it shall be lawful for Landlord at his option to declare the term hereof ended and to re-enter the demised Premises and take possession hereof and remove all persons therefrom and Tenant shall have no further claim therein or hereunder.

43.    **INSUFFICIENT FUNDS CHECKS**  Checks returned by Tenant's bank for insufficient funds or closed accounts will be subject to a $25.00 check charge, in addition to applicable late charges, which will be paid immediately to Landlord.

44.    **JURISDICTION**  Placer County will be jurisdiction and venue of the action concerning the Lease agreement.  This will be interpreted subject to the laws of the State of California.

15

Initials _____ Initials

**45.    TENANT IMPROVEMENTS**  All Tenant Improvements as specified will be performed in accordance with local building code standards in effect at the time lease agreement is executed. Tenant agrees to install and pay for any improvements, changes or alterations in the Premises required by any governmental authority provided that such changes are caused and peculiar to the business of Tenant in the Premises. Landlord agrees to install and pay for any improvements, changes or alteration in the Premises required by any governmental authority provided that such changes are required generally for similar building in the area and are not specifically directed to Tenant's business in the Premises. Tenant shall not be responsible to cure or pay for the retrofit of any condition of the building, which existed prior to the Lease date, nor shall Tenant be responsible for the removal or remediation of any asbestos or other toxic or hazardous substance unless such removal is necessitated by the act(s) of Tenant, its employees, officers, invitees, permittees, customers or agents. Tenant is responsible for obtaining all necessary permits, approvals and licenses to occupy the Premises and operate Tenant's business therein prior to opening for business. Landlord shall build a copy room in the Suite based on a mutually approved location and size per Exhibit "A".

**46.    INITIAL PAYMENT**  Tenant shall deposit with Landlord upon execution of this Lease:

| | |
|---|---|
| Security Deposit: | $5,564.20 |
| First Months Rent: | $5,564.20 |
| | |
| Total Payment Upon Lease Execution: | **$11,128.40** |

**47.    BUILDING OPERATING HOURS**  The standard operating hours for the building are Monday-Friday from 7:00 a.m. to 7:00 p.m. and Saturdays from 8:00 a.m. to 1:00 p.m.

**48.    AFTER HOURS HVAC AND LIGHTING**        After-hours HVAC will be billed at TWENTY-FIVE AND NO/100 DOLLARS ($25.00) per hour and after hours lighting will be charged at TEN AND NO/100 DOLLARS ($10.00) per hour.

Tenant will be responsible for any increase in public utilities, as additional rent, and will remit payment to Landlord within ten (10) days of notification by Landlord to Tenant of their prorata cost.

This Agreement has been prepared for submission to your attorney for his or her approval. No representation or recommendation is made by the real estate Broker(s) or their agents or employees as to the legal sufficiency, legal effect, or tax consequences of this Agreement or the transaction involved herein.

**LANDLORD:**
**VINTAGE PARK, LLC,**
**a California limited liability company**

By: _____

_____
Its:

_____
9/27/04
Dated

**TENANT:**
**AMERICAN HOME MORTGAGE**
**CORP., incorporated in the state of New York**

_____

_____
Its:

_____
9.25.04
Dated

Initials _____ Initials

Exhibit "A"



Initials _____ Initials

## Exhibit "B"



**Eureka Corporate Center**
203,000 sq ft
Class A Office Park
9.65 Acres  Roseville,California

Phase 1 = 75,329 sq ft
Phase 2 = 75,329 sq ft
Phase 3 = 52,500 sq ft
Total = 203,158 sq ft

Developed by:
Eureka Development Co., LLC

18

Initials ____ Initials

## RULES AND REGULATIONS

GENERAL RULES:

    A.   Tenant shall not suffer or permit the unreasonable obstruction of any Common Areas, including driveways, walkways and stairways.

    B.   Landlord reserves the right, but is not obligated to, refuse access to any persons Landlord in good faith judges to be a threat to the safety, reputation, or property of the project and its occupants.

    C.   Tenant shall not make or permit any noise or odors that annoy or interfere with other Tenants or persons having business within the Premises.

    D.   Tenant shall not keep animals or birds on the Premises.

    E.   Tenant shall not make, suffer or permit litter except in appropriate receptacles designated by Landlord. No hazardous materials or chemicals shall be disposed of in trash dumpsters except in compliance with law.

    F.   Tenant shall not deface the walls, partitions or other surfaces of the Premises or Office Building project exclusive of normal wear and tear.

    G.   Tenant shall not suffer or permit anything in or around the Premises or Building that causes excessive vibration or floor loading in any part of the Building.

    H.   Tenant shall not employ any service or contractor for services or work to be performed in the Building except as approved by Landlord which approval shall not be unreasonably withheld or delayed except as otherwise permitted under this lease.

    I.   Tenant shall return all keys provided by Landlord at the termination of its tenancy and shall be responsible for the cost of replacing any keys that are lost.

    J.   No window covering, shades or awnings shall be installed or used by Tenant without written approval of Landlord which approval shall not be unreasonably withheld or delayed.

    K.   No Tenant, employee or invitee shall go upon the roof of the Building without the prior approval of the Landlord except for HVAC maintenance and repair by Tenant.

    L.   The Premises shall not be used for lodging. Cooking or food preparation shall only be allowed in designated food areas, coffee room or restaurant area.

    M.   Tenant shall comply with all safety, fire protection and evacuation regulations established by Landlord or any applicable governmental agency.

    N.   Tenant assumes all risks from theft or vandalism (except if resulting from the negligence of Landlord, its agents or employees) and agrees to keep its Premises locked as may be required. Landlord recommends that each tenant obtain and keep in working order an intrusion alarm system.

    O.   Landlord shall enforce the rules and regulations applicable to the Building and Development in a non-discriminatory manner.

    P.   Landlord reserves the right to make such other reasonable rules and regulations as it may from time to time deem necessary for the appropriate operation and safety of the Development and its occupants. Tenant agrees to abide by these and such other rules and regulations.

    Q.   Pallets, crates, trashcans, trash bins and/or dumpsters will not be stored outside the unit unless Landlord designates an area. Should room not be available in the designated areas, all Tenants trash storage and removal bins, cans, equipment, etc. shall be placed inside the Tenant's space each night prior to the Tenant closing for business.

    R.   No equipment or other items may be stored outside the premises.

    S.   Tenant shall not use or keep in the Premises any kerosene, gasoline or flammable or combustible fluid or materials other than those limited quantities necessary for the operation or maintenance of office equipment. Tenant shall not use or permit to be used in the Premises any foul or noxious gas or substance, or permit or allow the Premises to be occupied or used in a manner offensive to Landlord or other occupants of the Building by reason of noise, odors or vibrations.

    T.   Tenant shall close and lock the doors of its Premises and entirely shut off all water faucets or other water apparatus, gas or air outlets before Tenant and its employees leave the Premises. Tenant shall be responsible for any damage or injuries sustained by other tenants or occupants of the Building or by Landlord for noncompliance with this rule.

    U.   The toilet rooms, toilets, urinals, wash bowls and other apparatus shall not be used for any purpose other than that for which they were constructed and no foreign substance of any kind whatsoever shall be thrown therein. The expense of

Initials _____   Initials _____

any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the Tenant who, or whose employees or invitees shall have caused it.

V.    Tenant shall not install, maintain or operate upon the Premises any vending machines except those that are to be located in Tenants food service area and are located so as not to be visible from the common hallways, lobbies or exterior of the Building without written consent of Landlord which consent shall not be unreasonably withheld or delayed.

W.    Tenant shall not install Radio, Television, Satellite or other antenna on building without Landlord's approval, which approval will be withheld in Landlord's sole and absolute discretion. In the event that Tenant receives Landlord's written approval then the location of Radio, Television, Satellite or other antenna shall be installed upon the roof of the building at a mutually agreed upon location so that it will not be visible from the street. Installation of a Radio, Television, Satellite or other antenna shall be in such a manner as to minimize the roof structural changes necessary to accommodate the roof mounted equipment. Tenant shall be responsible for the cost of the changes to the roof structure necessitated to accommodate the installation of the Radio, Television, Satellite or other antenna. Tenant shall be solely responsible for all repairs, maintenance, and removal of any Radio, Television, Satellite or other antenna installed by Tenant.

X.    Landlord shall furnish heating and air conditioning and public utilities during the hours of 7:00 am to 7:00 p.m. Monday through Friday, and 8:00 am to 12:00 p.m. on Saturday, except for legal holidays. Tenant shall pay Landlord for any after-hours use of heating and air conditioning and public utilities. The After Hours Charge for HVAC and public utilities usage outside these hours is $205.00 per hour. Tenant shall contract for after hours janitorial service at Tenant's sole expense in the event that Tenant's after hours usage requires cleaning and or restocking of restrooms so as to operate and maintain the building in accordance with Landlord's established operating specifications. Tenant shall at a minimum return the building to its operational standard prior to the next business day following Tenant's overtime usage.

Y.    On Sundays, legal holidays and on Saturday commencing at 121:00 p.m.noon, and on other days between the hours of 7:00 p.m. and 7:00 a.m. the following day, access to the Building, or to the halls, corridors, elevators or stairways in the Building, or to the Premises may be refused unless the person seeking access is known to the person or employee of the Building in charge and has a pass or is properly identified. The Landlord shall in no case be liable for damages for any error with regard to the admission to or exclusion from the Building of any person. The Landlord reserves the right to prevent access to the Building for the safety of the tenants and protection of property in the Building. Landlord reserves the right to close and keep locked all entrance and exit doors of the Building on Sundays, legal holidays, and on Saturdays commencing at 12:00 noon:00 p.m., and on other days between the hours of 7:00 p.m. and 7:00 a.m., and during such further hours as Landlord may deem advisable for the adequate protection of the Building and the property of its tenants.

Z.    Landlord reserves the right to label compact, visitor, carpool, handicapped and other such parking spaces to restrict their use. Employers shall instruct their employees to park in employee parking areas if Landlord so designates such area(s).

Initials _____    Initials _____

EXHIBIT "F"

## NIGHTLY
## JANITORIAL SPECIFICATIONS
## OFFFICE AREAS

- Vacuum all carpets.
- Dust mop all composition floors with treated dust mops. Damp mop to remove spills and water stains as required.
- Properly mop all VCT floors.
- Dust all windowsills.
- Empty all waste paper baskets and other trash containers.
- Remove fingerprints, dirt smudges, graffiti, etc., from all doors, including door hardware, glass partitions, glass tops and switch plates. Wipe clean smudged bright work, etc.
- Clean drinking fountains.
- Report all lights needing replacement to building manager.
- Secure all doors and leave only designated lights on.
- Spot clean carpets.

## BREAKROOM AREAS

- Wipe down all counter tops and kitchen tables and leave in a clean and disinfected condition.
- Spot clean fingerprints and smudges from cabinet doors and surfaces.
- Wipe down, inside and outside, of all trash receptacles. Provide fresh liners.
- Wipe down any stains from walls and baseboards behind trash receptacles.
- Damp mop floors to remove spills and stains. Detail around refrigerator and edges.
- Spot clean exterior of refrigerator, including the top, microwave, stove, oven and stainless steael.
- Dust all open shelving areas.
- Spot clean carpets.

## MAIL, COPY & STORAGE AREAS

- Dust all open shelving areas.
- Wipe down all countertops.
- Remove fingerprints and smudges from all cabinet doors and surfaces.
- Spot clean carpets.
- Wipe down, inside and out, all trash receptacles. Proved fresh liners.
- Damp mop floors to remove spills and stains.

## RESTROOM SERVICE

- Restock all restrooms with supplies to include paper towels, toilet tissue, seat covers, sanitary napkins, tampons and hand soap.
- Wash and polish all mirrors, dispensers, faucets and bright work with non-scratch disinfectant cleaners.
- Wash and sanitize all toilets, toilet seats, urinals and sinks with non-scratch disinfectant cleaner. Wipe dry all sinks. Damp wipe down wall behind toilets and urinals.
- Remove stains from all toilets, urinals and sinks.
- Mop all restroom floors with disinfectant germicidal solution.
- Empty and sanitize all waste and sanitary napkin and tampon receptacles. Provide fresh liners.
- Remove all restroom trash from facility.
- Spot clean restroom finger prints marks and graffiti from walls, partitions, stainless and switch plates as required.
- Report all fixtures not working properly to the supervisor.
- Service all suite interior office restrooms as above.

_____ Initials _____ Initials

## MAIN LOBBY, ELEVATOR LOBBY AND COMMON AREAS

- Spot clean the inside and outside of all entry glass doors.
- Wipe smudges from all glass, chrome bright work including entry doors, hardware, kick plates, base boards, switch plates, hose cabinets and stainless steel
- Spot clean all wall surfaces where applicable.
- Thoroughly clean all door thresholds of dirt and debris.
- Spot clean, sweep and damp mop all flooring as applicable.
- Empty, clean and sanitize all waste paper baskets and refuse receptacles.
- Vacuum all carpets including edges and stairwells.
- Dust all lobby furniture.
- Spot clean carpets.

## HALLS AND PASSAGEWAYS

- Vacuum all carpets.
- Spot clean all carpets as needed.
- Dust mop all composition floors with treated dust mops. Damp mop to remove spills and water stains.
- Spot clean carpets.
- Check all interior public corridor plants for debris.
- Dust and remove debris from all metal door thresholds.
- Clean all baseboards.
- Dust and clean directory signs.
- Dust and spot clean vertical surfaces.
- Check exit doors and lights.
- Clean and sanitize all public telephones and drinking fountains.

## ELEVATORS

- Clean and polish exterior and interior stainless steel and chrome surfaces, doors and door frames.
- Vacuum all cab floor carpeting thoroughly. Edge all carpeting thoroughly.
- Vacuum all elevator tracks.
- Dust interior fights plastics.
- Dust interior of emergency phone cabinet. Spot clean carpets.

## STAIRWELLS AND LANDINGS

- Police all stairwells and check for trash.
- Damp mop to remove spillage as needed.
- Dust all railings.

## STORE ROOMS AND SERVICE SINK AREAS

- Remove trash from these areas.
- Maintain an orderly arrangement of all janitorial supplies and paper products in these areas.
- Maintain an orderly arrangement of all equipment stored in these areas.
- Clean and disinfect service sinks.
- Sweep and damp mop service sink closet floors. Deodorize and disinfect as needed.
- Sweep store room floors.
- Receive and store all janitorial supplies in an orderly manner.

## STORAGE AREA

- Place all miscellaneous trash and debris in the facility's trash receptacles.
- Neatly stack all trash in designated areas. Sweep area as needed.

Initials _____ Initials

# MONTHLY
## JANITORIAL SPECIFICATIONS

### OFFICE AREA

- Dust all high reach areas including, but not limited to, tops of door frames, structural and furniture ledges, air conditioning diffusers and return air grills.

- Dust all low reach areas including, but not limited to, chair rungs, structural and furniture ledges, base boards, door louvers, wood paneling molding, etc.
- Dust inside of all doors jambs.
- Dust all exterior window and interior window blinds.
- Thoroughly damp mop all composition flooring.
- Vacuum all upholstered furniture.
- Thoroughly edge all carpeting.

### KITCHEN/COFFEE AREAS

- Thoroughly wash down all countertops and surfaces.
- Thoroughly wash down refrigerator surfaces.
- Thoroughly wash down microwave interior, coffee maker and other appliances on the counter.

### RESTROOM SERVICE

- Dust all high reach areas including, but not limited to structural ledges, mirror tops, air conditioning diffusers and return air grills.
- Dust all doors and doorjambs.
- Wash down all tile walls, partitions and dispensers and leave in an unstreaked condition.
- Pour clean water with germicidal solution in urinal traps, lavatory traps and toilet bowls.
- Clean all ventilation grills.
- Thoroughly scrub all ceramic tile floors.

### MAIN LOBBY, ELEVATOR LOBBY AND COMMON AREAS

- Thoroughly clean all hand rails and handrail panels as needed.
- Thoroughly polish all chrome and architectural stainless steel interior finishes.
- Polish/Oil any wood paneling if applicable.
- Thoroughly clean all carpets using extraction or bonnet method as needed.
- All second floor tile areas cleaned and waxed.

### ELEVATORS

- Clean all thresholds with appropriate metal cleaner.
- Vacuum cloth panels if applicable.
- Spot clean all elevator cab floor carpets.
- Wipe clean all elevator cab lamps.
- Wipe clean entire cab ceiling.

### STAIRWELLS AND LANDINGS

- Thoroughly sweep all stairs and landings.

Initials _____ Initials



ORIGINAL

**SECOND ADDENDUM TO OFFICE BUILDING LEASE
DATED SEPTEMBER 23, 2004
BY AND BETWEEN
VINTAGE PARK, LLC
("LANDLORD")
AND
AMERICAN HOME MORTGAGE CORP.
("TENANT")**

This addendum is hereby made a part of that certain "Office Building Lease" between the aforementioned parties dated September 23, 2004 (the "Contract"). Said document shall hereby be amended as follows. In the event of any discrepancy between this document and any previous document(s), the provisions of this document shall prevail.

Article:

2(g.)  *Expiration Date:*
Expiration date of this lease is October 31, 2007

2(i.)  *Tenant's Mailing Address:*
1508 Eureka Road, Suite 275
Roseville, CA  92661

38.  *Rent Schedule:*
Rents shall be paid as set forth below:

| | |
|---|---|
| October 1, 2004 – October 31, 2004 | $ FREE |
| November 1, 2004 – October 31, 2005 | 5,564.20 |
| November 1, 2005 – October 31, 2006 | 5,731.13 |
| November 1, 2006 – October 31, 2007 | 5,903.06 |

**Accepted and Agreed:**

Landlord:                                    Tenant:

**Vintage Park, LLC a California          American Home Mortgage Corp.,
limited liability company                 incorporated in the state of New York**

By: *M. Marden*                          By: _____

Its: *Project Manager*                    Its: *SVP*

Date: *9/22/05*                          Date: *9-1-05*

User:   SHERI

**CITADEL PROPERTY MANAGEMENT**

Page:    1

Print Date: 9/5/2007 11:29:09AM

## OCCUPANT LEDGER

| | | | | | | |
|---|---|---|---|---|---|---|
| Unit Reference Number | : | 483-275 | | Occupant Type | : | CURRENT |
| Property Name | : | Eureka Corporate Plaza Bldg 3 | | Tenant Id | : | 10152000210 |
| Co. Name | | American Home Mortgage Corp. | | Phone Number | : | |
| Address1 | : | 1508 Eureka Road | | Cell Number | : | |
| Address2 | : | Suite #275 | | Fax Number | : | |
| City, State, Zip | : | Roseville CA 95661 | | Unit Number | : | 275 |
| D/B/A Name | : | | | | | |
| Email Address | : | | | | | |

| | | |
|---|---|---|
| Open Items | : | 12,641.34 |
| Open Credits | : | 0.00 |
| | | |
| Current Balance | | 12,641.34 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Contact | : | Rob Popham | | Percentage Lease | : | No | |
| Security Deposit | : | 5,564.20 | | Percentage | : | | 0.00 |
| Other Deposit | : | 0.00 | | Base Sales Amount | : | | 0.00 |
| Square Feet (GLA) | : | 2588 | | Billing Month | : | 0 | |
| Usable Square Feet | : | 2270 | | Annual Sales Amount | : | | 0.00 |
| Gross Square Feet | : | 0 | | | | | |
| Prorata Square Feet | : | 0 | | | | | |

| | | |
|---|---|---|
| Parking Information | : | 9 non-exclusive |
| Number of Reserved Parking Spaces | : | 0 |
| Storage Space | : | No |

| | | | |
|---|---|---|---|
| Lease expiration Date | : | 10/31/2007 | |
| Move In Date | : | 10/01/2004 | |
| Lease Effective Date | : | 10/01/2004 | |
| Option Date | : | | |

**BILL TO**

American Home Mortgage Corp.
Attn: Corporate Real Estate
538 Broadhollow Road
Melville, NY 11747

Phone #               :
Alt Phone #           :

| | | | | | | |
|---|---|---|---|---|---|---|
| Account Status | : | OK | | Number of NSF Checks | : | 0 |
| | | | | Date of Last NSF Check | : | |
| | | | | Amount of Last NSF Check | : | 0.00 |
| Renew Effective Date | : | | | Notice Given Date | : | |
| Renew Expiration Date | : | | | Intended Move-Out Date | : | |
| Month To Month | : | n | | | | |

**EXHIBIT "B"**

**CITADEL PROPERTY MANAGEMENT**                    Page:      2

Print Date:  9/5/2007 11:29:09AM

# OCCUPANT LEDGER

| | | | | |
|---|---|---|---|---|
| Unit Reference Number | : | 483-275 | Occupant Type | : | CURRENT |
| Lease Term | | 37 | | Commission Information |
| Lease Type | : | net | Standard | : | Yes |
| Base Year | : | 5 | Amount | : | 0.00 |
| Base Year Rent | : | 66,770.40 | Agent Name | : | |

## Concession Information

| | | Term | Amount |
|---|---|---|---|
| Free Rent | : No | 0 | 0.00 |
| Lease Buyout | : No | 0 | 0.00 |
| Moving Expenses | : No | | 0.00 |
| Other | : No | | 0.00 |

### Tenant Improvement Allowances

| | | |
|---|---|---|
| Standard Allowance Per Squre Feet | : | 0.00 |
| Excess Allowance Per Squre Feet | : | 0.00 |

Concession Comments  :

| | | | | | |
|---|---|---|---|---|---|
| S.I. C Code | : | | | | |
| Bussinness Class | : | | | | |
| National Tenant ID | : | | | | |
| Insurance Certificate | : | Yes | Insurance Certificate Expires | : | 08/04/2006 |

**CITADEL PROPERTY MANAGEMENT**          Page:      3

Print Date:  9/5/2007  11:29:09AM

---

## OCCUPANT LEDGER

Unit Reference Number   :      483-275                    Occupant Type   :    CURRENT

### CHARGE SCHEDULE

| Charge Code | Charge Description | Charge Frequency | Start Date | Stop Date | Charge Amount |
|---|---|---|---|---|---|
| RNT | Monthly Rent | M | 11/01/2004 | 10/31/2005 | 5,564.20 |
| RNT | Monthly Rent | M | 11/01/2005 | 10/31/2006 | 5,731.13 |
| RNT | Monthly Rent | M | 11/01/2006 | 10/31/2007 | 5,903.06 |
| CAM | Common Area Charges | M | 04/01/2007 | | 116.63 |

**This Tenant has no Lease Options**

User:   SHERI

**CITADEL PROPERTY MANAGEMENT**

Page:      4

Print Date:  9/5/2007  11:29:09AM

---

## OCCUPANT LEDGER

Unit Reference Number  :      483-275                         Occupant Type  :    CURRENT

### Chronological History

| Date | Charge Code | Charge Description | Amount | Balance |
|------|------|------|------|------|
| 10/01/2004 | RNT | Pymt. Batch 766 Check 499267 | -5,564.20 | -5,564.20 |
| 10/01/2004 | SDA | Pymt. Batch 766 Check 499267 | -5,564.20 | -11,128.40 |
| 10/01/2004 | SDA | Security Deposit Adjustment | 5,564.20 | -5,564.20 |
| 11/01/2004 | RNT | Monthly Rent | 5,564.20 | 0.00 |
| 12/01/2004 | RNT | Monthly Rent | 5,564.20 | 5,564.20 |
| 12/03/2004 | RNT | Pymt. Batch 810 Check 327852 | -5,564.20 | 0.00 |
| 01/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.20 |
| 01/04/2005 | RNT | Pymt. Batch 830 Check 337475 | -5,564.20 | 0.00 |
| 02/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.20 |
| 02/01/2005 | RNT | Pymt. Batch 860 Check 350876 | -5,564.20 | 0.00 |
| 02/03/2005 | MIS | key fob K Wood | 10.00 | 10.00 |
| 03/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,574.20 |
| 03/01/2005 | RNT | Pymt. Batch 907 Check 363846 | -5,564.17 | 10.03 |
| 03/07/2005 | MIS | Pymt. Batch 928 Check 366573 | -10.00 | 0.03 |
| 04/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.23 |
| 04/01/2005 | RNT | Pymt. Batch 945 Check 6287 | -5,564.20 | 0.03 |
| 05/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.23 |
| 05/02/2005 | RNT | Pymt. Batch 995 Check 20362 | -5,564.20 | 0.03 |
| 06/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.23 |
| 06/01/2005 | RNT | Pymt. Batch 059 Check 34834 | -5,564.20 | 0.03 |
| 07/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.23 |
| 07/05/2005 | RNT | Pymt. Batch 112 Check 46981 | -5,564.20 | 0.03 |
| 08/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.23 |
| 08/02/2005 | RNT | Pymt. Batch 154 Check 58437 | -5,564.20 | 0.03 |
| 09/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.23 |
| 09/01/2005 | RNT | Pymt. Batch 211 Check 71878 | -5,564.20 | 0.03 |
| 10/01/2005 | RNT | Monthly Rent | 5,564.20 | 5,564.23 |
| 10/03/2005 | RNT | Pymt. Batch 254 Check 86254 | -5,564.20 | 0.03 |
| 10/14/2005 | MIS | key fobs for Liang, Caruthers | 20.00 | 20.03 |
| 11/01/2005 | RNT | Monthly Rent | 5,731.13 | 5,751.16 |
| 11/01/2005 | RNT | Pymt. Batch 304 Check 96392 | -5,731.13 | 20.03 |
| 11/04/2005 | MIS | Pymt. Batch 324 Check 101834 | -20.03 | 0.00 |
| 12/01/2005 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 12/01/2005 | RNT | Pymt. Batch 368 Check 112463 | -5,731.13 | 0.00 |
| 01/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 01/01/2006 | RNT | Pymt. Batch 409 Check 120924 | -5,731.13 | 0.00 |
| 02/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 02/01/2006 | RNT | Pymt. Batch 458 Check 135193 | -5,731.13 | 0.00 |
| 03/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 03/01/2006 | RNT | Pymt. Batch 512 Check 145625 | -5,731.13 | 0.00 |
| 04/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 04/06/2006 | RNT | Pymt. Batch 556 Check 0162839 | -5,731.13 | 0.00 |
| 05/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 05/02/2006 | RNT | Pymt. Batch 579 Check 0176310 | -5,731.13 | 0.00 |
| 06/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 06/01/2006 | RNT | Pymt. Batch 636 Check 187701 | -5,731.13 | 0.00 |

User:    SHERI                              CITADEL PROPERTY MANAGEMENT                          Page:        5

Print Date:  9/5/2007  11:29:09AM

## OCCUPANT LEDGER

Unit Reference Number   :      483-275                          Occupant Type   :   CURRENT

### Chronological History

| Date | Charge Code | Charge Description | Amount | Balance |
|------|-------------|--------------------|--------|---------|
| 07/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 07/01/2006 | RNT | Pymt. Batch 676 Check 197273 | -5,731.13 | 0.00 |
| 08/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 08/03/2006 | RNT | Pymt. Batch 715 Check 209751 | -5,731.13 | 0.00 |
| 09/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 09/01/2006 | RNT | Pymt. Batch 753 Check 222829 | -5,731.13 | 0.00 |
| 10/01/2006 | RNT | Monthly Rent | 5,731.13 | 5,731.13 |
| 10/02/2006 | RNT | Pymt. Batch 791 Check 230226 | -5,731.13 | 0.00 |
| 11/01/2006 | RNT | Monthly Rent | 5,903.06 | 5,903.06 |
| 11/01/2006 | RNT | Pymt. Batch 837 Check 240350 | -5,903.06 | 0.00 |
| 12/01/2006 | RNT | Monthly Rent | 5,903.06 | 5,903.06 |
| 12/01/2006 | RNT | Pymt. Batch 906 Check 255204 | -5,903.06 | 0.00 |
| 01/01/2007 | RNT | Monthly Rent | 5,903.06 | 5,903.06 |
| 01/01/2007 | RNT | Pymt. Batch 950 Check 264366 | -5,903.06 | 0.00 |
| 02/01/2007 | RNT | Monthly Rent | 5,903.06 | 5,903.06 |
| 02/01/2007 | RNT | Pymt. Batch 039 Check 273006 | -5,903.06 | 0.00 |
| 03/01/2007 | RNT | Monthly Rent | 5,903.06 | 5,903.06 |
| 03/01/2007 | RNT | Pymt. Batch 108 Check 281591 | -5,903.06 | 0.00 |
| 04/01/2007 | CAM | Common Area Charges | 116.63 | 116.63 |
| 04/01/2007 | RNT | Monthly Rent | 5,903.06 | 6,019.69 |
| 04/01/2007 | RNT | Pymt. Batch 178 Check 290547 | -5,903.06 | 116.63 |
| 04/01/2007 | CYE | 2006 Direct Expense Rec | 1,399.54 | 1,516.17 |
| 05/01/2007 | CAM | Common Area Charges | 116.63 | 1,632.80 |
| 05/01/2007 | RNT | Monthly Rent | 5,903.06 | 7,535.86 |
| 05/02/2007 | CAM | Pymt. Batch 309 Check 297896 | -1,516.17 | 6,019.69 |
| 05/02/2007 | CAM | Pymt. Batch 309 Check 299595 | -6,019.69 | 0.00 |
| 06/01/2007 | CAM | Common Area Charges | 116.63 | 116.63 |
| 06/01/2007 | RNT | Monthly Rent | 5,903.06 | 6,019.69 |
| 06/01/2007 | CAM | Pymt. Batch 376 Check 308547 | -6,019.69 | 0.00 |
| 07/01/2007 | CAM | Common Area Charges | 116.63 | 116.63 |
| 07/01/2007 | RNT | Monthly Rent | 5,903.06 | 6,019.69 |
| 07/01/2007 | CAM | Pymt. Batch 508 Check 316776 | -6,019.69 | 0.00 |
| 08/01/2007 | CAM | Common Area Charges | 116.63 | 116.63 |
| 08/01/2007 | RNT | Monthly Rent | 5,903.06 | 6,019.69 |
| 08/02/2007 | CAM | Pymt. Batch 702 Check 0324723 | -6,019.69 | 0.00 |
| 09/01/2007 | CAM | Common Area Charges | 116.63 | 116.63 |
| 09/01/2007 | RNT | Monthly Rent | 5,903.06 | 6,019.69 |
| 09/05/2007 | LAT | Late Charge - August 2007 | 601.96 | 6,621.65 |
| 09/05/2007 | CAM | Rem. Batch 702 Check 0324723 | 6,019.69 | 12,641.34 |

## COMMENTS

8/14/07 AMH check #0324723 intended for August 2007 rent returned
NSF by River City Bank