## LANDLORD & TENANT AGREEMENT

THIS LANDLORD & TENANT AGREEMENT (hereinafter referred to as "Agreement"), made the 23ʳᵈ day of April, 2007, between WATTERSON & ZAPPOLO, P.A., having an office at 4100 RCA Boulevard, Palm Beach Gardens, FL 33410 (hereinafter referred to as "Landlord"),and AMERICAN HOME MORTGAGE CORP., a New York corporation authorized to do business in the State of Florida (hereinafter referred to as "Tenant").

WITNESSETH: That Landlord is the owner of a Lease to property located at 4100 RCA Boulevard, Palm Beach Gardens, Florida, and is authorized to and does sublease to others certain of the property to be used as professional or office space and for no other purposes or uses whatsoever. Landlord does this day lease unto Tenant the space hereinafter described.

NOW THEREFORE, in consideration of the promises, covenants and considerations hereinafter set forth, the parties agree as follows:

1. PREMISES AND USE. Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, certain space located at 4100 RCA Boulevard, Palm Beach Gardens, Florida. The space leased to Tenant shall be generally located in the southwest portion of Suite 100, and does consist of approximately 3,550 square feet, and is approximately shown in the drawing attached hereto as Exhibit "A" (Tenant space is limited to the interior walls of the space approximately shown in Exhibit "A" and is only of interior space); along with all improvements and fixtures erected or installed therein, but subject to the terms and conditions contained in this Agreement. The space, improvements and fixtures are sometimes hereinafter referred to as "the Premises." Tenant shall occupy the Premises on an "office-sharing" basis, and is further subject to "Office-Sharing Rules" as set forth in Exhibit "C" and as may be further enacted and imposed by Landlord.

The Premises may be used only by Tenant for lawful purposes consistent with the Code of the City of Palm Beach Gardens, and for no other purposes and by no other tenants, subtenants or assignees.

2. TERM. The initial term of this Agreement is four (4) years ("Initial Term") commencing on May 7, 2007, ("Commencement Date") and terminating on April 30, 2011 ("Termination Date"). Provided Tenant is not in default hereunder beyond applicable cure periods, Tenant shall have one option to renew this Agreement for a three (3) year term ("Renewal Term"), such term to be subject to the terms and conditions hereof, exercisable by providing written notice to Landlord at least 180 days prior to the termination date. Provided, however, Tenant's rights to a renewal term shall be subject to Landlord extending its Lease term and Landlord shall provide notice to Tenant of its exercise or non-exercise of options under its Lease, in writing, by January 1, 2011.

3. RENOVATION OF SPACE. Tenant shall not modify the Premises, including the installation of any fixtures and equipment without Landlord's prior written approval, which shall not be unreasonably withheld, conditioned or delayed. Landlord, at its sole discretion, shall retain the right to modify the premises, including, without limitation, the construction of a separate front entrance for Tenant's use, and the construction of a demising wall separating space within Suite 100 (including construction necessary to create separate leasable space within Suite 100 and approximating space intended to be occupied by Tenant). Landlord shall use its best efforts to minimize any interference with the conduct of Tenant's business.

4. RENT. The total Base Rent payable under this Agreement by Tenant to Landlord is the sum of $92,300.00 annually, plus adjustments as provided for hereinafter; plus "Additional Rent" as set forth hereinafter (collectively, "Rent"). It is the intention of the parties that the Landlord shall receive the above rent, as adjusted, free from all taxes, including without limitation, any sales taxes



EXHIBIT A

<u>LANDLORD & TENANT AGREEMENT</u>

and other charges which shall be the responsibility of Tenant.  Rent shall be payable on an annual basis for each twelve (12) months of the term of this Agreement, and such annual payments shall be made on a monthly basis, in equal monthly installments, equal to 1/12 of the annual total rent due for the respective lease year, plus applicable sales tax.

5.  ADDITIONAL RENT.  Tenant shall pay in addition to Base Rent reserved herein, "Additional Rent," which includes the following:  (a) any and all sales taxes imposed on the rentals provided for herein; (b) its proportionate share of the expenses for the maintenance, operation and management of the building in which the premises are located and the common areas located around the building in which the premises are located including, without limitation, the parking areas, sidewalks and electrical lighting and mechanical systems serving the premises. Tenant's proportionate share shall be twenty-seven per cent; (c) its proportionate share as set forth above of the real estate taxes, intangible taxes, or any similar tax levied in place thereof, for the property of which the premises forms a part; (d) its proportionate share of the cost of any insurance carried by Landlord on the building in which the premises are located and the common areas used in connection therewith; and (e) its proportionate share of any property owner's association fees and assessments.  Tenant hereby covenants and agrees that it shall pay the Base Rent and Additional Rent in equal monthly installments in advance.

Landlord shall supply a budget within thirty (30) days of receipt by Landlord estimating the sums required for the succeeding year for the foregoing items.  Tenant's share of the same shall be computed by multiplying the sums so obtained by Tenant's percentage.  Tenant shall pay one-twelfth of its share each month as Additional Rent.  In the event that any month of the Term shall be less than a full month, then Additional Rent shall be apportioned on the basis of the number of days in said month.

Tenant shall also pay to Landlord on demand from time to time the amount which, together with said monthly installments, will be sufficient to pay Tenant's proportionate share of any such Real Estate Taxes not collected in the estimate above by November 1st of each year.

In the event that Landlord is delayed in supplying to Tenant the amount due of its share of Additional Rent for the upcoming year, Tenant shall continue to pay its Additional Rent in the amount of the preceding year until notified otherwise by Landlord.

After the end of each calendar year or as soon after as practicable, and after the end of the Term or as soon after as practicable, Landlord shall submit to Tenant a statement in reasonable detail stating Tenant's proportionate share of the actual Additional Rent for such calendar year or partial calendar year; and stating whether or not the actual Additional Rent for the period in question is more or less than the amount paid for such period in advance by Tenant.  Tenant shall pay to Landlord any deficiency within ten (10) days after submission of such statement.  Landlord shall apply any excess to the next Additional Rent payment(s) payable by Tenant; or, if the Term has expired, Landlord shall refund to Tenant any excess within ten (10) days after submission of such statement of Tenant's actual proportionate share of the Additional Rent.  Tenant's initial estimated share of Additional Rent shall be $27,832.00 annually, and shall be adjusted annually, in accordance with the paragraphs above.

All taxes, charges and expenses that Tenant assumes or agrees to pay hereunder, together with all interest and fees that may accrue thereon in the event of a failure of Tenant to pay those items, and all other damages, costs, expenses and sums the Landlord may suffer or incur, or that

LANDLORD & TENANT AGREEMENT

may become due by reason of any default of Tenant or failure by Tenant to comply with the terms and conditions of this Agreement shall also be deemed as "Additional Rent", and in the event of non-payment, Landlord shall have all rights and remedies herein provided for failure to pay rent.

In addition to any remedies for the failure to pay rent or other sums required to be paid by Tenant hereunder, Landlord may collect a "late charge" equal to five (5%) per cent of any such sum which is not paid within ten (10) days of the due date thereof, to cover the extra expense involved in handling delinquent payments. In no event shall the collection of the late charge be deemed a waiver by Landlord of any of its other rights or remedies under this Agreement.

With the execution of this Agreement, Tenant has paid to Landlord first month's rent in the total amount of $10,622.00, representing Base Rent, Additional Rent and Sales Tax thereon. Tenant's second monthly payment of annual rent shall be made to Landlord thirty (30) days after the Commencement Date, and thereafter, on the same day of each and every month thereafter. Rent shall be paid promptly when due without setoff, deduction, abatement or counterclaim. All payments of rent shall be made directly to Landlord by payment to Watterson & Zappolo, P.A., each and every month in advance, without demand, at the offices of Watterson & Zappolo, P.A., 4100 RCA Boulevard, Suite 100, Palm Beach Gardens, FL 33410, or at such other place and to such other person as the Landlord may, from time to time, designate in writing. All checks should be made payable to Watterson & Zappolo, P.A.

6. SECURITY DEPOSIT. With the execution of this Agreement, Tenant has paid to Landlord $10,662.00 as a security deposit from Tenant. The security deposit shall be retained by Landlord thereafter as security for the faithful performance of all of the terms and conditions of the this Agreement by the Tenant. Landlord shall not be obligated to apply any security deposit on rents or other charges in arrears, or on damages for failure to perform the terms and conditions of this Agreement by Tenant. Application of the security deposit to any arrears of rental payments or damages shall be at the option of Landlord, and the remedies of Landlord for non-payment of rent or any other default shall not in any event be affected by the security deposit or the application thereof towards any liability of Tenant. Landlord shall not be obligated to hold the security deposit in a separate fund, but may mix the deposit with other funds of Landlord. In no event is the security deposit to be returned until Tenant has vacated the Premises and delivered possession to Landlord. In the event the Tenant defaults under this Agreement, Landlord may retain the security deposit and apply it towards arrears and rental payments and/or damages suffered by or as a result of such breach, without limiting the right of Landlord to further proceed against Tenant as further provided in this Agreement or as otherwise permitted by law. The security deposit is to be returned to Tenant when this Agreement expires, if not applied towards the payment of rent in arrears or towards the payment of damages suffered by Landlord by reason of any breach of this Agreement.

7. ASSIGNMENT, SUBLEASE OR LICENSE. Tenant shall not have the right to assign or sublease any of the Premises, or any portion of the Premises, nor grant any right or privilege to any person, firm or entity to occupy the Premises or any part thereof, without written consent of Landlord, which shall not be unreasonably withheld. In the event that Tenant obtains the written consent of Landlord so as to allow the occupation of any of the Premises by anyone other than Tenant, such consent by Landlord shall not be a release of Tenant, nor a consent to a subsequent arrangement made by Tenant for the occupation of the Premises by anyone other than Tenant. Any unauthorized occupation of the Premises shall be void and shall constitute a default of this Agreement at the option of the Landlord. Any interest of Tenant in this Agreement shall not be assignable by operation of law without the written consent of Landlord. Landlord's consent may

<u>LANDLORD & TENANT AGREEMENT</u>

not be withheld if Tenant seeks written consent to assign or sublet to a parent, subsidiary or affiliate of Tenant, to an entity controlling or controlled by or under common control with Tenant, or by means of merger, consolidation or an acquisition of all or substantially all of Tenant's assets.

If the Premises are occupied by anyone other than Tenant, regardless of whether Landlord has previously approved such occupation by any person other than Tenant, Landlord may collect rent from such occupant and apply the net amount collected to the Rent herein reserved; but no such collection shall be deemed an acceptance of such occupant as a substitute tenant, or a release of Tenant from further performance of the covenants herein contained.

8. PERSONAL PROPERTY. All personal property placed or moved into the premises above described shall be at the risk of Tenant or owner thereof, and Landlord shall not be liable for any damage to said personal property, or to the Tenant arising from the bursting or leaking of water pipes, or from any act of negligence of any co-tenant or occupants of the building or of any other person whomsoever, other than Landlord or his agent(s) or assigns. Landlord shall have a lien on all of Tenant's personal property, fixtures, equipment and merchandise located in the Premises as security for rent and all other charges payable under this Agreement.

9. COMPLIANCE WITH LAWS. Landlord represents that the Premises are compliant with all governmental codes, including but not limited to Americans with Disabilities Act, and that the building and Premises are and shall remain in compliance with all applicable laws and codes unless any non-compliance is caused by Tenant. Tenant shall promptly execute and comply with all statutes, ordinances, rules, regulations, orders and requirements of the Federal, State and City Government and of any and all of their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon, or connected with said premises during said term; and shall also promptly comply with and execute all rules, orders and regulations for the prevention of fires, at its own cost and expense.

10. DESTRUCTION OF PREMISES. In the event the Premises shall be destroyed or so damaged or injured by fire or other casualty during the life of this agreement, whereby the same shall be rendered untenable in the opinion of the Landlord, then the Landlord shall have the right to render said Premises tenable by repairs within One Hundred Eighty (180) days therefrom. If said Premises are not rendered tenable within said time, in the opinion of the Landlord, either party hereto may cancel this Agreement, and in the event of such cancellation the rent shall be paid only to the date of such fire or casualty. The cancellation herein mentioned shall be evidenced in writing. In the event of such fire or casualty to the premises or the building, the Landlord shall give notice thereof to the Tenant within Sixty (60) days of the occurrence of same. Said notice shall contain Landlord's agreement to either restore the premises and the building to a similar condition as it was prior to such casualty, or, in the event casualty renders the premises and/or the building untenable for Tenant's business, the Landlord may elect to terminate this Agreement as of the date of the casualty and return all unapplied rents and deposits to Tenant as of the casualty date. In the event the Landlord elects to restore, such restoration shall be completed within One Hundred Eighty (180) days from the date of such casualty, and during the period of such restoration, the rent to be paid by the Tenant to Landlord shall abate proportionately as to the untenable space, to the same extent as Tenant has been deprived use of the premises and/or the building during the period of such restoration. Notwithstanding the foregoing, in the event the casualty should occur through the negligence of Tenant or its agents, or invitees, and the result of such casualty renders the premises untenable for Tenant's business operation and Landlord elects to restore said premises, then in such event, Landlord shall proceed to restore the premises as provided for herein, however,

<u>LANDLORD & TENANT AGREEMENT</u>

there shall be no abatement of rent during such restoration period.  In any event, Landlord shall only be responsible to restore the premises to the extent that Tenant receives sufficient insurance proceeds to do so.

11.  RULES AND REGULATIONS.  The prompt payment of the Base Rent and Additional Rent and other sums due under this Agreement for said premises upon the dates named, and the faithful observance of the Rules and Regulations, attached hereto as <u>Exhibit "B"</u>, and of such other and further Rules or Regulations as may be hereafter made by the Landlord, or modified by the Landlord, and all other provisions of this Agreement, are the conditions upon which this Agreement is made and accepted and any failure on the part of the Tenant to comply with the terms of this Agreement, or any of said Rules and Regulations now in existence, or which may be hereafter prescribed by the Landlord, shall at the option of the Landlord, operate as a default by Tenant, and Landlord shall be entitled to pursue all remedies available under the laws of the State of Florida.

12.  ABANDONMENT OF PREMISES. If the Tenant shall abandon or vacate said premises before the end of the term of this Agreement, and shall suffer the rent to be in arrears, the Landlord may, at his option, forthwith cancel this Agreement or he may enter said premises as the agent of the Tenant, without being liable in any way therefor, and relet the premises with or without any furniture that may be therein, as the agent of the Tenant, at such price and upon such terms and for such duration of time as the Landlord may determine, and receive the rent therefor, applying the same to the payment of the rent due by these presents; and if the full rental herein provided shall not be realized by Landlord over and above the expenses to Landlord in such reletting, the said Tenant shall pay any deficiency.

13.  ATTORNEYS' FEES AND COSTS.  In the event any legal action is necessary, in the sole discretion of the Landlord, to enforce any term of this Agreement, then in that event the Landlord shall have a right to recover reasonable attorneys' fees and costs, including attorneys' fees establishing entitlement to an amount of attorneys' fees in any legal action, and costs thereof, and attorneys' fees and costs in the collection of any monies determined to be due Landlord from Tenant.

14.  ELECTRICITY & OTHER UTILITIES.  Tenant shall pay to Landlord an amount equal to 37% of the total electric charges for Suite 100, and Tenant shall make payment to Landlord within ten (10) days of receipt by Tenant of Landlord's invoice to Tenant.

Landlord shall not be liable to Tenant for any loss or damage or expense which Tenant may sustain or incur if either the quantity or character of electric service is changed by the supplier thereof.  Tenant covenants and agrees that, at all times, its use of electric current shall never exceed the capacity of the existing feeders to the Building or the risers or wiring installation.

Tenant shall pay for any telephone lines, data line, and other equipment wiring necessary for its business, and shall be solely responsible for all charges connected therewith and thereafter relating to Tenant's usage of its telephone lines, data lines and other wiring necessary for any equipment used by Tenant.

15.  JANITORIAL/MAINTENANCE. (See "Rules", Exhibit "C")

(A) Landlord will provide janitorial service to Tenant for its space (including that portion of Tenant's space shared in common with Landlord as defined in Exhibit "C" (1) and shall invoice

## LANDLORD & TENANT AGREEMENT

Tenant on a monthly basis. Tenant shall pay for janitorial services for its lease space on a monthly basis. Provided, however, Landlord shall not be responsible for any loss or damage to Tenant of any form or manner as a result of any janitorial negligence, neglect or intentional act. In the event of any such loss, the sole remedy of Tenant shall be as against janitorial service independent contractor.

(B) Cost of repair and maintenance shall be borne by Landlord and Tenant as set forth in Exhibit "C".

16. INSPECTIONS AND ADVERTISEMENT. The Landlord, or any of his agents, shall have the right to enter said premises during all reasonable hours upon reasonable notice to Tenant and accompanied by Tenant or its agent, to examine the same to make such repairs, additions or alteration as may be deemed necessary for the safety, comfort, or preservation thereof, or of said building, or to exhibit said premises, and to put or keep upon the doors or windows thereof a notice "FOR LEASE" at any time within one hundred eighty (180) days before the expiration of this Agreement. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions, which do not conform to this agreement, or to the Rules and Regulations, or to the sign criteria for the Building. Landlord shall, at all times, use its best efforts to minimize any interference with the conduct of Tenant's business.

17. CHANGING LOCKS. Tenant is not allowed to change locks without the express written consent of the Landlord, which consent shall not be unreasonably withheld. If consent is granted, Tenant will supply Landlord with three (3) keys immediately upon changing locks.

18. TENANT OBLIGATION TO MAINTAIN PREMISES AND ACCEPTANCE OF PREMISES. Tenant hereby accepts the premises in the condition they are in at the beginning of this Agreement and agrees to maintain said premises in the same condition, order and repair as they are at the commencement of said term, excepting reasonable wear and tear arising from the use thereof under this agreement; and to make good to said Landlord immediately upon demand, any damage to water apparatus, or electric lights or any fixture, appliances or appurtenances of said premises, or of the building, caused by any act or negligence of Tenant, his employees, agents or assigns or invitees. Landlord represents that the Premises shall be vacant except for furniture that tenant is purchasing separately, and broom clean, and Building systems and equipment shall be in good working order as of the Commencement Date.

19. WATER/FLOOD DAMAGE. It is expressly agreed and understood by and between the parties to this agreement that the Landlord shall not be liable for any damage or injury by water, which may be sustained by the said Tenant or for any other damage or injury resulting from the carelessness, negligence, or improper conduct on the part of any other Tenant or agents, or employees or by reason of the breakage, leakage, or obstruction of the water, sewer or soil pipes, or other leakage in or about the said building, unless caused by the negligence or willful misconduct of the Landlord, its employees or agents.

20. BANKRUPTCY/INSOLVENCY. If the Tenant shall become insolvent or if bankruptcy proceedings shall be begun by or against the Tenant, before the end of said term the Landlord is hereby irrevocably authorized, at its option, to forthwith cancel this Lease as for a default. Landlord may elect to accept rent from such receiver, trustee, or other judicial officer during the term of their occupancy in their fiduciary capacity without affecting Landlord's rights as contained in this

<u>LANDLORD & TENANT AGREEMENT</u>

contract, but no receiver, trustee or other judicial officer shall ever have any right, title or interest in or to the above described property by virtue of this contract.

21. PARTIES BOUND. This contract shall bind the Landlord and its assigns or successors, and the permitted assigns, or successors as the case may be, of the Tenant.

22. TIME OF THE ESSENCE. It is understood and agreed between the parties hereto that time is of the essence of this contract and this applies to all terms and conditions contained herein.

23. NOTICES. It is understood and agreed between the parties that written notice delivered by hand, delivered by certified mail or by overnight courier to the Premises hereunder and to 538 Broadhollen Road, Melville, NY 11747, Attn: VP, Corporate Real Estate, with a copy to (same address) Attn: General Counsel shall constitute sufficient notice to the Tenant; and that written notice delivered by hand, delivered by certified mail or by overnight courier to the Landlord at its address above, shall be sufficient to comply with the terms of this contract.

24. RIGHTS CUMULATIVE. The rights of the Landlord under this Lease shall be cumulative, and failure on the part of the Landlord to exercise promptly any rights given hereunder shall not operate to forfeit any of the said rights.

25. SIGNAGE. Landlord shall install a small sign next to its front entrance identifying Tenant. Landlord shall also install a sign in the reception area of Suite 100, advising the public that Tenant is not associated with the law firm of Watterson & Zappolo, P.A., or such other communications so as to ensure the public understands that Tenant is independent of Landlord and Landlord has no control over Tenant operations. In the event that Landlord elects to install a separate entrance for Tenant, Tenant shall be responsible for the cost of the installation of letters on the facade area of the building above its entrance, of a make, style, and color consistent with the Code of the City of Palm Beach Gardens, the approved sign package for the Building, and all subject to Landlord approval. In no event shall Tenant's signage be of the size or similarity to Landlord's name on the main entranceway to the Building. No other signs or advertising on the Building or Premises shall be used, including awnings, ground signs, flags or the like. All Tenant signage shall be installed at the expense of Tenant.

27. CONDITION OF PREMISES AT END OF AGREEMENT. Tenant shall maintain the premises in good order and repair during the term of this Agreement. At such time when Tenant shall vacate the leased space, the premises will be restored to its condition as of the effective date of this Agreement, (ordinary wear and tear excepted, and approved modifications to the space excepted), including ceilings, interior and exterior walls and carpets.

28. FIRE RISK. Tenant shall not do anything in or on the premises or bring or keep anything therein which will in any way increase or tend to increase risk of fire or rate of fire insurance, or which shall conflict with regulations of the County of Palm Beach or with any insurance policy on the building or any part thereof or with any rules or ordinances established by the Board of Health.

29. DELIVERIES. Any and all deliveries to the premises should be made in such a way as not to block traffic or access to parking.

<u>LANDLORD & TENANT AGREEMENT</u>

30. PARKING. Tenant shall have use of ten (10) parking spaces on the Premises, of which two (2) shall be covered spaces. Landlord reserves the right to designate parking spaces, and reserves the right to mark parking spaces with Tenant's name. Attached hereto as <u>Exhibit "E"</u> is a diagram of Landlord's parking area, and depicts Landlord's initial designation of Tenant's spaces. Tenant shall cause all employees, agents, customers and invitees of Tenant to utilize only the parking spaces depicted on <u>Exhibit "E"</u> as assigned to Tenant. Should Landlord mark Tenant's spaces for Tenant's exclusive use, and Tenant fails to cause its employees, agents, customers, and invitees to park in those spaces, then such failure shall be a default hereunder.

31. HEAT, VENTILATION & AIR CONDITIONING. Landlord shall be responsible for maintenance, repair and replacement of HVAC system.

32. NO LIEN PROVISIONS. Tenant shall not allow any lien to be filed against the premises for any mechanics or materialman liens and shall indemnify and hold Landlord harmless from loss or damage incurred by Landlord as a result of any such lien.

33. INSURANCE GENERAL LIABILITY. Tenant shall maintain general liability insurance for the premises and hazard insurance covering the premises for fire and extended coverage insurance with respect to the improvements, furniture, fixtures and equipment located on or about the premises. Such insurance shall be in amounts not less than $1,000,000.00 and shall be with companies reasonably acceptable to Landlord and shall name Landlord as an additional insured. Tenant shall provide Landlord with certificates for said insurance from time to time as required by Landlord. Tenant hereby indemnifies and holds harmless Landlord from and against any and all claims, losses, damages or actions arising from, related to or in connection with Tenant's occupation of the premises except for matters arising from the willful acts or negligence of Landlord, its employees, agents or assigns.

34. SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT. This Agreement and the rights of Tenant hereunder are and shall at all times be subject to the rights of Ten Years, LLC (owner of building) and to each and every mortgage that now or hereafter may be a lien upon the property of which the Premises are a part, and to all renewals, extensions, modifications and future advances thereto. This provision shall be self operative and no further instrument or subordination shall be required by Landlord. Tenant agrees to attorn to any transferee of Landlord or any successor of Landlord who obtains title as a result of a foreclosure of deed, in lieu of foreclosure, as if such transferee or successor was the original Landlord hereunder, provided that Tenant is not disturbed in its occupancy of the premises so long as Tenant is not in default hereunder, beyond applicable cure periods.

35. TOXIC MATERIALS. Tenant shall not store or dispose of any hazardous material or waste in or about the premises. Tenant shall indemnify and hold Landlord harmless from and against any claims, damages, costs, expenses or actions which arise out of any breach of this provision and such indemnity shall survive the termination of this Agreement. In no event shall Tenant be liable for toxic materials introduced to the Premises prior to its occupancy or introduced during its occupancy by Landlord or unrelated third party.

36. HOLDOVER TENANT. If Tenant remains in the Premises after the expiration of the term hereof it shall be deemed a Tenant at sufferance of Landlord subject to all of the provisions of this Lease, and provided that the rent shall be two (2) times the rent due hereunder.

<u>LANDLORD & TENANT AGREEMENT</u>

37.  WAIVER OF TRIAL BY JURY; JURISDICTION AND VENUE.  Landlord and Tenant shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other or any matters arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, use or occupancy of the demised premises, and emergency or other statutory remedy.

Each party irrevocably and unconditionally:

(a)     Agrees that any suit, action or legal proceeding arising out of or relating to this Lease will be brought in the Circuit or County Court in and for Palm Beach County, Florida;

(b)     Consents to the jurisdiction of the Circuit and the County Court in and for Palm Beach County, Florida; and

(c)     Waives any objection which it may have to the venue of any suit, action or proceeding in the Circuit or the County Court in and for Palm Beach County, Florida.

38.  CERTIFICATION - ESTOPPEL CERTIFICATES.  Landlord and Tenant shall, at any time and from time to time, within ten (10) business days following notice execute, acknowledge and deliver to the party which gave such notice a statement in writing certifying, or estoppel certificate confirming, that this Agreement is unmodified and in full force and effect, or if there shall have been any modification(s) that the same is in full force and effect as modified and stating the modification(s), setting forth the amount of base rent and additional rent due hereunder and the date to which the rent and additional rent have been paid in advance, and such other matters as Landlord, its lender or purchaser may reasonably request. Failure to comply or timely execute an estoppel certificate is enforceable by legal action and injunctive relief with legal fees and costs to be awarded to prevailing party.

39.  TENANT'S RELIEF LIMITED TO PREMISES.  Notwithstanding anything to the contrary contained in this Agreement, Tenant shall look solely to the interest of Landlord in and to the portion of the property on which the premises are located and then owned by Landlord. No other properties or assets of Landlord shall be subject to levy, execution or other enforcement procedures for the satisfaction of any judgement arising out of or in connection with this Agreement and if Tenant shall acquire a lien on any such other property or asset of Landlord, Tenant shall promptly release such lien executing and delivering to Landlord an instrument to that effect.

40.  INDEMNITY.  Tenant shall indemnify Landlord against all expenses, liabilities, and claims of every kind, including reasonable attorneys' fees by or on behalf of any person or entity arising out of:

(a)     A failure by Tenant to perform any of the terms and conditions of the Lease;

(b)     Any injury or damage happening on the Premises, unless caused by negligence or willful misconduct of Landlord, its employees or agents; or,

(c)     Failure by Tenant to comply with any laws, ordinances, rules or regulations of any government authority concerning Tenant's occupation and/or use of the Premises.

41.  CONDEMNATION/EMINENT DOMAIN.  In the event that the whole or any part of said premises shall be taken by any public authority under the power of eminent domain or like power, then the term hereof shall terminate as to the part of the premises so taken, effective as of the date possession thereof shall be required to be delivered pursuant to the final order, judgment, or decree entered in the proceedings in the exercise of such power. If 25% or more of the Premises

<u>LANDLORD & TENANT AGREEMENT</u>

is taken, tenant can terminate the Lease.  All damages awarded for the taking of the underlying premises, or any part thereof, shall be payable in full amount hereof to and the same shall be the property of Landlord, including but not limited to, any sum paid or payable as compensation for loss of value of the leasehold or loss of the fee or any part of the premises, and Tenant shall be entitled only to that portion of any award expressly stated to have been made to Tenant for loss of business and the loss of value and cost of removal of stock, equipment, furniture and fixtures owned by the Tenant.

     42.  NON-MONETARY DEFAULT.  In the event Tenant should fail to perform any non-monetary obligation required to be performed by Tenant hereunder, such shall not constitute an event of default until Landlord has provided Tenant with written notice, specifying the alleged non-performance, and indicating Tenant's right to cure same within twenty (20) days of the Tenant's receipt of said notice (certified mail, return receipt requested); or, in the event such non-performance is of such a nature that same cannot be cured with reasonable diligence within such twenty (20) day period, commence to cure same within such twenty (20) day period and thereafter prosecute the curing of same to completion with all due diligence.

     43.  EVENTS OF DEFAULT.  Any or all of the following constitute events of default under this Lease and grounds for eviction:

a)  Failure to timely pay rent within five (5) days of written notice
b)  Failure to pay any additional rent within five (5) days of written notice
c)  Failure to maintain premises or to timely rectify non-monetary violations
d)  Failure to comply with Rules and Regulations
e)  Death or insolvency of guarantor
f)  Attempt by any guarantor to cancel or rescind guaranty
g)  Filing of Bankruptcy by Tenant
h)  Parking situations as better described in paragraph twenty-third
i)  Violation of any term of the Lease Agreement
j)  Tenant causing or creating any nuisance on the premises or surrounding parking area
k)  Any other violation of breach of this Agreement, including but not limited to a violation specified herein as a default

     44.  REMEDIES ON DEFAULT.  If a Default occurs, which Tenant shall fail to cure within 20 (twenty) days of written notice (except for monetary defaults as per 43(a) or (b) above)  the following remedies shall be available to Landlord:

     (a)     Termination of Tenancy.  Landlord may serve upon Tenant a written notice that this Agreement will terminate on a date specified therein, which shall be not less than three (3) days after the giving of such notice.  Tenant shall have no right to avoid the cancellation or termination by payment of any sum due or by the other performance of any conditions, terms or covenant broken.  Upon the date specified in the notice, this Agreement and the term shall terminate and come to an end as fully and completely as if such date were the day herein definitely fixed for the end and expiration of this Agreement, and Tenant, without the necessity of any notice, shall then quit and surrender the Premises to Landlord.

     (b)     Right of Possession.  If the tenancy is terminated in accordance with subparagraph (a) above, or if the Premises become vacant or deserted, in addition to and not in

<u>LANDLORD & TENANT AGREEMENT</u>

lieu of all other remedies of Landlord, Landlord may by summary proceedings dispossess Tenant and the legal representatives of Tenant or other occupant of the Premises, and remove the effects and repossess and enjoy the Premises, together with all alterations, additions and improvements, all without being liable to the prosecution or damage therefor.

(c)    Acceleration.  Landlord may accelerate the payments due under this Lese so that all installments of rent for the entire term of the Lease, including rent and all Additional Rent, shall become immediately due and payable.

(d)    Correction.  Landlord may take any and all actions necessary to correct such Default, at Tenant's sole cost and expense.

(e)    Full Enforcement.  Landlord may enforce the full and complete performance of all of the terms of this Agreement in any manner provided by law or equity, including without limitation the right of specific performance.

(f)    Relet.  Landlord may relet all or any part of the Premises for all or any part of the unexpired portion of the term of this Agreement or for any longer period.  Landlord may accept rental then obtainable; grant any reasonable concessions of rent and agree to make any special repairs, alterations, and decorations for any new Tenant as it may deem advisable in its sole and absolute discretion.

(g)    Distraint.  If Tenant shall be in Default under this Agreement, Landlord shall have, in addition to its lien on all of Tenant's fixtures, merchandise, equipment and personal property as set forth above, a right of distress for rent on same, all as security for rent and all other charges payable under this Agreement.  The right of distress shall be in addition to all other rights which Landlord may have if Tenant shall be in Default.

Cumulative Remedies.  The rights and remedies of the Landlord set forth herein shall be in addition to any right or remedy now or hereafter provided by law or equity.  All rights and remedies shall be cumulative and not exclusive of each other.  Landlord may exercise its rights and remedies at any time, in any order, to any extent, and as often as Landlord deems advisable without regard t whether the exercise of one right or remedy precedes, concurs with or succeeds the exercise of another. Landlord shall use commercially reasonable efforts to relet the Premises and to otherwise mitigate its damages in the event of a Tenant default hereunder.

45. NON-WAIVER PROVISION.  The failure of Landlord to enforce a default or violation is not a waiver of rights to enforce that default or violation in the future.

46. HAZARDOUS SUBSTANCES.  Lessee warrants and represents that it will, during the period of its occupancy of the Premises under this Agreement, comply with all federal, state and local laws, regulations and ordinances with respect to the use, storage, treatment, disposal or transportation of Hazardous Substances.  Lessee shall indemnify and hold Lessor harmless from and against any claims, damages, fines, judgements, penalties, costs, liabilities or losses (including, without limitation, reasonable attorneys' fees and costs) arising from the breach of the preceding warranty and representation.

<u>LANDLORD & TENANT AGREEMENT</u>

For the purposes of this Section, the term "Hazardous Substances" shall be interpreted broadly to include but not be limited to substances designated as hazardous under the Resource Conservation and Recover Act, 42 U.S.C. S9601, et seq., the Federal Water Pollution Control Act, 33 U.S.C. 1257, et seq., the Clean Air Act, 42 U.S.C. S2001, et seq., or the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. S9601, et seq., any applicable State Law or regulation. The term shall also be interpreted to include but not be limited to any substance which after release into the environment and upon exposure, ingestion, inhalation or assimilation, either directly from the environment or directly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavior abnormalities, cancer and/or genetic abnormalities, and oil and petroleum based derivatives.

The provisions of this Section shall be in addition to any other obligations or liabilities Lessee may have to Lessor at law and equity and shall survive termination of this Agreement.

In no event shall Tenant be liable for toxic materials introduced to the Premises prior to its occupancy or introduced during its occupancy by Landlord of unrelated third parties.

47.   RADON GAS.   Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

48.   SEPARABILITY.   Each and every covenant and agreement contained herein is or shall be construed to be a separate and independent covenant and agreement, and the breach of any such covenant or agreement by Lessor shall not discharge or relieve Lessee from its obligations to perform the same. If any term or provision hereof, or the application thereof to any person or circumstances, shall be invalid and unenforceable, the remainder of this Lease, or the application of such term of provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and shall be enforced to the extent permitted by law.

49.   BROKERS.   Landlord and Tenant agree, and represent each to the other, that there have been no salespersons or brokers involved in the showing, negotiation, or procurement of this Agreement.   The parties further agree that Landlord had previously used the services of Mr. Michael Horowitz of Florida Realty Brokers, Inc., and any compensation due Mr. Horowitz shall be borne solely by the Landlord.   Landlord and Tenant shall each indemnify, hold harmless, and defend each other from any claims, suits or demands from any third party claiming right to any compensation, including broker's fees, arising out of this transaction (other than Michael Horowitz of Florida Realty Brokers, Inc.) Said indemnification shall include attorneys' fees incurred  as a result of the receipt of any claim, suit or demand from any third party seeking compensation or broker's commission arising out of this transaction.   This right to indemnification shall include the provision of a defense, costs of defense, and including all costs and attorneys' fees.

50.   COVENANT OF QUIET ENJOYMENT.   Provided that the rents and other amounts are paid in the manner and at the time prescribed, and all the covenants, conditions, and warranties herein are fulfilled and performed, Tenant shall lawfully and peaceably have, hold, possess, use, and occupy the Premises during the Term hereby granted, without hindrance, disturbance, or

LANDLORD & TENANT AGREEMENT

molestation from Landlord or from persons claiming by, through, or under Landlord, except as specifically provided herein.

LANDLORD:

WATTERSON & ZAPPOLO, P.A.

By:_____    Date:___4/23/07_____
      Terence J. Watterson, President


TENANT:

AMERICAN HOME MORTGAGE CORP.


By:_____    Date:_____

Print Name:_____

Print Title: _____

## LANDLORD & TENANT AGREEMENT

molestation from Landlord or from persons claiming by, through, or under Landlord, except as specifically provided herein.

LANDLORD:

WATTERSON & ZAPPOLO, P.A.


By:_____          Date:_____
      Terence J. Watterson, President


TENANT:

AMERICAN HOME MORTGAGE CORP.

By:_____          Date:___4/23/07_____

Print Name:___ALAN HORN_____

Print Title:_____EVP_____

EXHIBIT "A"



## Exhibit "B"

### RULES & REGULATIONS

(1)     The sidewalks, entrances, passages, courts, corridors and halls shall not be obstructed or used for any purpose other than ingress or egress without the prior written consent of Landlord.

(2)     No tenant shall mark, paint, drill into, or in any way deface any part of the Premises or the Building; provided, however, that alterations, the construction of Tenant improvements, and decorating shall be permitted subject to the terms of the Lease with Tenant.  No boring, cutting or stringing of wires, installation of telephones and call boxes, or laying of linoleum tile or other floor coverings shall be permitted without the prior written consent of Landlord (and then subject to such restrictions as Landlord shall impose as a condition to such consent).

(3)     No bicycles, vehicles or animals of any kind (except for guide dogs for the blind) shall be brought into or kept in or about the Premises.  No cooking shall be done or permitted by any Tenant on the Premises (except microwave cooking) and in any event no fish products or other malodorous food products will be heated in the microwave, without prior written consent of Landlord (and then subject to such restrictions as Landlord shall impose as a condition to such consent) for Tenant, its employees and invitees.  No Tenant shall cause or permit any unusual or objectionable odors to escape from the Premises.

(4)     No smoking is allowed inside the Building.  Outside smoking breaks may be taken by Tenant's employees or visitors *only* on the Kitchen Patio area.  Tenant's employees will use the receptacles provided to properly dispose of discarded cigarettes or cigars.

(5)     No alcohol is allowed on the Premises without Landlord's written approval, in advance.

(6)     No Tenant shall make, or permit to be made any unseemly or disturbing noises, sounds or vibrations, or otherwise disturb or interfere with occupants of this or neighboring buildings or premises or those having business with them, whether by the use of musical instrument, radio, phonograph, television, unusual noise, or in any other way.

(7)     No Tenant shall throw anything out of doors or down the public corridors or other public areas of the Building.

(8)     The requirements of Tenants will be attended to only upon application to the Manager's Office or to such other place as Landlord may from time to time direct.

(9)     Canvassing, soliciting and peddling in the Building are prohibited and each Tenant shall cooperate to prevent the same.

(10)    Tenant shall not obstruct, alter or in any way impair the efficient operation of Landlord's heating, ventilating and air conditioning system.

(11)    Parking:

(a)     The parking areas shall be used for the parking of personal transportation vehicles (cars, pickups, motorcycles, etc.) only.  The parking areas shall not be used for any other use including without limitation, washing or repairing vehicles, overnight parking or other storage of vehicles, or loading and unloading (except in such zones as Landlord may from time to time designate for such purpose).

(b)   Landlord shall have no obligation to maintain any attendant at or for the parking areas. Landlord shall have no obligation or liability to Tenant, its agents, employees, or invitees, for any loss or damage suffered to property or persons on account of the use or misuse of the parking areas by persons other than Landlord.

(c)   Landlord reserves the right to use the parking areas for such other purposes as it may from time to time designate, provided any such other purpose does not unreasonably interfere with the use of the parking areas by Tenant for purposes of conducting Tenant's business on the Premises.

(d)   Landlord reserves the right to tow, or cause to be towed, any vehicle on account of any violation of these Rules & Regulations, and the costs thereof shall be borne by the owner or driver of the vehicle.

(e)   Landlord has the absolute right to relocate or redesign the parking facility so long as it provides substitute space for Tenant.

(10)   Tenant shall familiarize each of its employees with the portions of this Exhibit pertinent to them.

(11)   Landlord reserves the right to modify these Rules & Regulations and to institute other reasonable Rules & Regulations from time to time.

(12)   Tenants shall not store or dispose of any hazardous material or waste in or about the premises. Tenant shall indemnify and hold Landlord harmless from and against any claims, damages, costs, expenses or actions which arise out of any breach of this provision and such indemnity shall survive the termination of this Lease.

(13)   Tenant shall use dumpster in a conscientious manner. Dumpster shall be used for OFFICE TRASH ONLY, generated from the business located on the Premises. NO off-site debris, construction trash, metal, wood, or toxic waste may be disposed o in the dumpster. Any violations will necessitate action by way of (1) charges for extra pick-up, or (2) a separate dumpster for habitual offender with the offending Tenant paying for the extra dumpster charge in FULL.

(14)   NO OUTSIDE STORAGE OF ANY KIND IS ALLOWED IN THE COMMON AREAS. ALL ITEMS MUST BE STORED WITHIN THE LEASED SPACE.

(15)   Incorporated herein as though more fully set out are the *Office-Sharing Rules* (Exhibit "C") to this Agreement. In the event of any conflict between the Rules set forth in Exhibit "B" and the *Office-Sharing Rules* (Exhibit "C"), Landlord shall be the sole interpreter or arbiter of the rules, and the Landlord's decision as to how the conflict shall be resolved, and what rules should control, shall be final and Tenant shall comply with Landlord's decision.

**Exhibit "C"**

<u>OFFICE-SHARING RULES</u>

(1)     Tenant is leasing space from Landlord and is "sharing space" within Suite 100, located at 4100 RCA Boulevard, Palm Beach Gardens, Florida 33410.   While Landlord's retained non-shared space is identifiable within Suite 100, and Tenant's leased space is also identifiable within Suite 100, certain of both Landlord's retained space and Tenant's leased space shall be shared in common between Landlord and Tenant.  Attached hereto as Exhibit "D" is a depiction of Suite 100 showing the Tenant's space and the Landlord's space that will be shared each with the other.  These Office-Sharing Rules apply to the activities of Landlord and Tenant in sharing space within the Premises, and sharing in and operating the office-sharing common areas.

(2)     The cost of janitorial, other maintenance expenses, and all other costs, including electrical and all other utilities, related to the areas that are depicted as office-shared in Exhibit "D" shall be borne by the Tenant as to its office-shared space and borne by the Landlord as to its office-shared space.

(3)     Landlord and Tenant shall share the cost of repair and maintenance to Suite 100 on a proportionate basis with Tenant's proportionate share being 37% of the total interior maintenance expenses.   Included in interior maintenance expense is plumbing, electrical, lighting and other repairs, including overhead lighting and bulbs.  Landlord shall invoice to Tenant on a monthly basis its proportionate share of such expenses, and Tenant shall pay on a monthly basis.

(4)     Landlord shall allow Tenant ingress and egress to its space through the front entrance of Suite 100.  Such ingress and egress may be temporary and shall cease upon the establishment of a separate entrance to Tenant's space at the front of the building at a place to be determined by Landlord.  In using the front entrance of Suite 100 for ingress and egress to Tenant's space, Tenant shall conduct its business operation so as to minimize the length of stay of any customers or visitors of Tenant in Landlord's law firm reception area.  Tenant shall provide an intercom system reasonably acceptable to Landlord so that reception personnel may notify Tenant of visitors, deliveries or other normal notifications.

(5)     Tenant shall not have access to, nor use of, at any time, the four conference rooms adjacent to the corridor between the reception area of Suite 100 and westerly to Tenant's space.

(6)     Tenant employee entrance shall be by way of the door located at the northwest corner of the Building (Kitchen Door) and Landlord shall provide codes for operation of that door.  Otherwise, Tenant shall limit its operation so that there shall be no further entrance and exit to the front door of Suite 100 after 5:00 p.m. each day, and

have no access by the front door to Suite 100 on Saturdays, Sundays or holidays (as determined by the United States government).

(7)    The cost of canned beverages, water, coffee, tea, paper towels, over the counter medications and various sundry items normally provided by Landlord to its staff shall be available to Tenant, with the total cost of the provision of such items being borne on a proportionate basis between Landlord and Tenant.    Tenant's proportionate share is 37%.

(8)    Landlord retains the right to ensure the segregation of its space via doors, screens, or other installations that ensure the security and confidentiality of Landlord's space and operations. Tenant shall ensure that its staff does not enter into Landlord's space nor take any action which would or could make available to Tenant or its staff any communications known to or likely to be confidential between Landlord and its customers and clients.

(9)    In the event that Landlord shall elect to construct improvements within Suite 100, or the Premises of Tenant, or any common areas or office-shared space, whether to create demising walls within Suite 100, install a front entranceway to Tenant's space, or any other construction, remodeling or renovation, Tenant accepts and agrees that there will be noise, dust, and disruption of Tenant's quiet enjoyment of the Premises; Tenant specifically waives any claim of violation or breach of any right of quiet enjoyment of the Premises and specifically consents to the construction during business hours; Tenant agrees that there shall be *no* abatement or diminution in rent as a result of Landlord's remodeling, renovation, or construction within Suite 100, including Tenant's Premises. Landlord shall use its best efforts to minimize any interference with the conduct of Tenant's business.

(10)    In the event of any conflict between the Rules set forth in Exhibit "B" and the *Office-Sharing Rules* (Exhibit "C"), Landlord shall be the sole interpreter or arbiter of the rules, and the Landlord's decision as to how the conflict shall be resolved, and what rules should control, shall be final and Tenant shall comply with Landlord's decision.

\\Server1\cpshare\cpwin\HISTORY\070330_0001\1F43.16\lmf(lmf-CBRE LEASE)-doc18





EXHIBIT "E"

# BILL OF SALE, ABSOLUTE

**KNOW ALL MEN BY THESE PRESENTS**, that WATTERSON & ZAPPOLO, P.A., Party of the First Part, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), lawful money of the United States and other good and valuable consideration, to him paid by AMERICAN HOME MORTGAGE, Party of the Second Part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, transferred and delivered, and by these presents does grant, bargain, sell, transfer and deliver unto the said Party of the Second Part, his successors and assigns, the following personalty:

See attached Exhibit "A"

located at that certain real property in Palm Beach County, Florida, known as 4100 RCA Boulevard, Suite 100, Palm Beach Gardens, FL 33410.

**TO HAVE AND TO HOLD** the same unto the said Party of the Second Part, his successors and assigns forever.

**AND** the undersigned does, for himself and his successors and assigns, covenant to and with the said Party of the Second Part, his successors and assigns, that he is the lawful owner of the said personalty; that it is free from all encumbrances and that he does have good right to sell the same aforesaid.

*ALL PERSONALTY IS TRANSFERRED IN AN "AS IS" CONDITION AND THE PARTY OF THE FIRST PART MAKES NO REPRESENTATION OR WARRANTY AS TO THE CONDITION THEREOF.*

**IN WITNESS WHEREOF,** the undersigned has hereunto set his hand and seal this ___23rd___ day of April, 2007.

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
(Print Name)  Amy L. Whiting

_____
Witness

_____
(Print Name)  MANDY SOLIMAN

WATTERSON & ZAPPOLO, P.A.

By: _____

Its: _____
         president

Page 1

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _23rd_ day of April, 2007, by _Terence J. Watterson_, as _President_, of WATTERSON & ZAPPOLO, P.A.

NOTARY PUBLIC

(SEAL)

MANDY SOLIMAN
MY COMMISSION # DD310453
EXPIRES: April 17, 2008
1-800-3-NOTARY    Fl. Notary Discount Assoc. Co.

_Mandy Soliman_

_MANDY SOLIMAN_
_(Print Name)_

My Commission Expires: 4-17-08

Personally Known ☑ OR Produced Identification ☐

Type of Identification: _____

\\Server1\cpshare\cpwin\HISTORY\070330_0001\17C2.46(MG-MISC)mgs-doc70

Page 2

**Exhibit "A"**

| Office # | Description | Sale Price |
|---|---|---|
| 001 | Wooden Executive Desk w/ Return with Keyboard tray | $350.00 |
| 014 | Beige 2 Drawer File Cabinet | $50.00 |
| 013 | Beige 2 Drawer File Cabinet | $50.00 |
| 002 | Wooden Desk w/ Return & Keyboard Tray | $350.00 |
| 003 | Wooden Desk w/ Return | $350.00 |
| 003 | Beige 2 Drawer File Cabinet | $50.00 |
| 003 | Beige 2 Drawer File Cabinet | $50.00 |
| 012 | Beige 2 Drawer File Cabinet | $50.00 |
| 011 | Beige 2 Drawer File Cabinet | $50.00 |
| 004 | Mahogany 2 drawer Lateral | $60.00 |
| 004 | Mahogany 2 drawer Lateral | $60.00 |
| 004 | Mahogany 2 drawer Lateral | $60.00 |
| 005 | Wood Executive Desk & Keyboard Tray | $200.00 |
| 005 | Wood Credenza | $150.00 |
| 010 | Beige 2 Drawer File Cabinet | $50.00 |
| 009 | Beige 2 Drawer File Cabinet | $50.00 |
| 006 | Wood Executive Desk | $1,200.00 |
| 006 | Blue Leather Chair | $100.00 |
| 007 | Mahogany 2 drawer Lateral | $60.00 |
| 007 | Mahogany 2 drawer Lateral | $60.00 |
| 007 | Mahogany 2 drawer Lateral | $60.00 |
| 008 | Beige 2 Drawer File Cabinet | $50.00 |
| Total | | $3,510.00 |