IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------

| | | |
|---|---|---|
| In re: | x | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, | : | |
| et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors, | : | Objection Deadline: September 12, 2007 at |
| | : | 4:00 p.m. |
| | : | Hearing Date: September 17, 2007 at 12:00 |
| | : | noon |
| | x | |

-----------------------------------------------------------------

**OBJECTION OF PARTICIPANT GROUP TO DEBTORS' MOTION FOR AN ORDER (I) TERMINATING THEIR NON-QUALIFIED DEFERRED COMPENSATION PLAN PURSUANT TO SECTION 363(b)(1) OF THE BANKRUPTCY CODE AND (II) DIRECTING THE TRUSTEE OF THE DEBTORS' NON-QUALIFIED DEFERRED COMPENSATION PLAN TRUST TO RETURN DEBTORS' ASSETS HELD IN TRUST TO THE DEBTORS' ESTATES PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE**

Certain participants in the Non-Qualified Deferred Compensation Plan of American Home Mortgage Holdings, Inc., who are listed on Exhibit A hereto (collectively, the "Participant Group") hereby object to the Debtors' Motion for an Order (I) Terminating Their Non-Qualified Deferred Compensation Plan Pursuant to Section 363(b)(1) of the Bankruptcy Code and (II) Directing the Trustee of the Debtors' Non-Qualified Deferred Compensation Plan Trust to Return Debtors' Assets Held in Trust to the Debtors' Estates Pursuant to Section 105(a) of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"); a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

{1284017;}

Bankruptcy Code (the "Motion").   *See* 11 U.S.C. §§101, et seq. (the "Bankruptcy Code"). In

support of this Objection, the Participant Group respectfully states as follows:

### Relief Requested

1.        The Debtors' Motion seeks relief that would irreparably damage the rights and

claims of participants in the Plan (defined below), including the Participant Group, as well as

other unsecured creditors.  By this Objection, and for the reasons set forth herein, the Participant

Group requests that the Court deny the Motion or, in the alternative, adjourn the hearing on the

Motion to allow for discovery and an evidentiary hearing regarding the relief requested.

### Factual Background

2.        The factual background regarding the establishment of the American Home

Mortgage Holdings, Inc. Deferred Compensation Plan (the "Plan") and the Non-Qualified

Deferred Compensation Plan Trust Agreement (the "Trust Agreement"), as well as the trust set

up by the Trust Agreement (the "Trust") are set forth in paragraphs 16 and 17 of the Motion.

Copies of the Plan and the Trust Agreement were attached to the Motion.  The Plan is not a perk

plan under which benefits other than compensation were granted to employees and funded by the

Debtors.  Rather, the Plan provided an option for certain employees to defer receiving part of

their actual compensation.  As a result, the claims of the Participant Group under the Plan are

wage claims.   In many cases, these deferred wages are a substantial part of the planned

retirement income of Participant Group individuals.  There are 43 Plan participants who are party

to this Objection.   The Participant Group collectively holds more than $11 million in

compensation claims under the Plan and Trust, and it is anticipated that other Plan participants

will join the Participant Group.

**The Motion Should Be Denied as Procedurally Defective and Refiled as an Adversary Proceeding**

3.      The Debtors seek the relief requested in the Motion under section 105(a) of the Bankruptcy Code.  It is well established that section 105(a) does not give a bankruptcy court unlimited powers, but rather must be tied to some other relevant authority.  *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code. However, section 105(a) has a limited scope. It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code."); *MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communs., Inc.)*, 262 B.R. 893, 899 (Bankr. D.Del. 2001) ("While section 105(a) gives a bankruptcy court general equitable powers, those powers are limited by the provisions of the Bankruptcy Code.").  In this case, the Motion, or at least the part of the Motion seeking an order directing the Trustee to "return the Debtors' assets" is a disguised motion to turn over assets under section 542 or 543 of the Bankruptcy Code.  Such an action must be initiated by adversary proceeding.  *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) ("a turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint"); *In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988); *In re Gold Leaf Corp.*, 73 B.R. 146, 147 (Bankr. N.D.Fla. 1987); *In re Ace Industries, Inc.*, 65 B.R. 199, 200 (Bankr. W.D.Mich. 1986); *In re Riding*, 44 B.R. 846, 857 (Bankr. D. Utah 1984).  Accordingly, the Motion should be denied without prejudice to the right of the Debtors to refile a similar action as an adversary proceeding.

## The Motion Should be Denied or Adjourned

4.      The Motion should be denied or, at a minimum, adjourned.  On information and belief, there is approximately $27 million in the Trust.  While this may be a relatively small matter for the Debtors, it is of critical urgency for the approximately 140 Plan participants. Although counsel for the Participant Group is still gathering facts, certain Plan participants believe that the Debtors and or the trustee of the Trust (the "Trustee") may have acted inappropriately with regard to withholding distributions or encouraging contributions to the Plan. The Debtors present the Motion as a straightforward right of the Debtors to reclaim estate assets, but it is anything but straightforward.   For example, if contributions to the Plan were inappropriately induced, it may be that Plan participants have senior rights to Trust assets. Likewise, if distributions that should have been made prepetition were not made by the Trustee, certain Plan participants or groups of Plan participants could have senior rights to Trust assets. These are only two of the issues the Participant Group plans to investigate.  The Participant Group is a large and diverse group of individuals who have only very recently come together to deal with the Debtors' expedited Motion.  It is only fair that they and other Plan participants who are not yet organized be given time to review the relevant factual and legal issues in more detail. The Participant Group submits that no action should be taken on the Motion until Plan participants are given a full opportunity to conduct discovery.

## The Debtors' Contractual Right to Terminate the Plan Does Not Allow Them to Terminate the Trust or Seize Trust Assets

5.      The Debtors cite Section 12.8 of the Plan as giving them the unilateral right to terminate the Plan.  From there, they cite section 105 of the Bankruptcy Code and the "applicable provisions of the Plan and Trust Agreement" for the proposition that the Trust assets should

immediately revert to their estates.  This request ignores or glosses over a number of crucial provisions of the Plan and Trust Agreement.

6.    Section 13(b) of the Trust Agreement provides "the Trust shall not terminate until the date on which Plan participants and their beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan.  Upon termination of the Trust any assets remaining in the Trust shall be returned to the Company."  *See Trust Agreement* at §13(b).  The only other situation in which any Debtor could terminate the Trust would be with participant approval under Section 13(c) of the Trust Agreement.  *See Trust Agreement* at §13(c).  Such approval has not been obtained.  Thus, as long as there are benefit rights to be administered under the Plan, the Trust cannot be contractually terminated.  There is no question that there are still benefits to be paid under the Plan, even if the Court authorizes the Plan's termination.  Section 12.8(c) of the Plan provides "In the event of termination of all or part of the Plan, the Administrator shall continue to maintain Participants' Nonqualified Accounts and payment of such Nonqualified Accounts shall be made in accordance with Articles VIII and IX."  *See Plan* at §12.8(c).  As a result, termination of the Plan only permits the Debtors to stop accruing new liabilities under the Plan – it in no way allows the Debtors to terminate the Trust or to seize the Trust assets. Furthermore, the Motion does not even request authority to reject or otherwise terminate the Trust itself and no such relief can be granted without appropriate notice and hearing.

**The Debtors' Insolvency Does Not Allow the Debtors to Seize the Trust Assets, Nor Does it Allow the Trustee to Turn the Assets Over to the Debtors**

7.    The Trust Agreement does not provide for the Trustee to turn over the Trust's assets to the Debtors in the event of insolvency.  Rather, it specifically provides for the Trustee to keep the assets.  Section 3(b)(iii) of the Trust Agreement states:  "If at any time the Trustee has determined that the Company is insolvent, the Trustee shall discontinue payments to Plan

participants or their beneficiaries and shall <u>hold the assets of the Trust</u> for the benefit of the general creditors of the Company." *See Trust Agreement* at §13(b)(iii), (Emphasis added). Therefore, even if it is later determined that all Trust assets should be available to "general creditors," rather than the Plan participants, the Trust assets should be held for that purpose by the Trustee, not the Debtors.

### The Trust Assets Are Not Assets of the Various Debtors' Estates

8.      As stated above, the Participant Group is not prepared to concede without further investigation that the Trust assets are property of any Debtor's estates.  One thing that is certain is that the Trust assets are not property of <u>all</u> Debtors' estates.  The Plan was established by American Home Mortgage Holding [sic], Inc. ("AHM Holdings") for its employees.  Participants in the Plan have claims against AHM Holdings.  The Trust Agreement is an agreement between AHM Holdings and the Trustee, and AHM Holdings states in the recitals to the Trust Agreement that it has incurred or expects to incur liability to Plan participants. *See Trust Agreement* at p.1. To the Participant Group's knowledge, no order has been entered substantively consolidating the Debtors' cases.  As a result, distributing the assets to the Debtors' estates and allowing those assets to be commingled with other assets could damage the rights of creditors of AHM Holdings, such as the Participant Group, and inappropriately benefit the creditors of other Debtor entities.  Therefore, even if the Court determines that the Trust assets should be released by the Trust, they should only be available to Debtor AHM Holdings and provisions should be made for segregation of the assets from other Debtors.  Likewise, the assets should be carved-out from the reach of any postpetition lien, prepetition lien, or superpriority claim to the extent such liens relate to other Debtors.

{1284017:}

**The Trust Assets Are Not Subject to the Claims of All Creditors**

9.     Even if it is the case that some or all of the Plan participants do not have a senior claim to the Trust assets, at most the assets would be subject to claims of "general creditors." Black's Law Dictionary, under the entry "general creditor" states: "See *unsecured creditor* under CREDITOR." *Black's Law Dictionary* 705 (West, 8th ed. 199). "[*U*]*nsecured creditor*" is defined as "A creditor who, upon giving credit, takes no rights against specific property of the debtor. – Also termed *general creditor*." *Id.* at 397. Obviously, by the express terms of the Trust, the Trust assets are not subject to the claims of secured creditors. This reasoning based on the express Trust language aligns with the expectations of parties. The Plan participants were induced to enter into compensation deferral agreements and participate in the Plan with promises of the value of tax deferred investment growth and little if any discussion of the risks associated with insolvency. If they were made aware of the terms of the Trust, or the meaning of the terms, the most they would have been aware of would have been a risk of insolvency associated with general creditors. It is hard to imagine the employees would have chosen to make compensation deferrals if they knew that their claims would fall behind the rights of lenders with claims in the hundreds of millions.

10.     Although counsel for the Participant Group has not had an opportunity to review the Debtors' secured loan facilities, which are complex and varied, it is hard to imagine that there is currently any lien on the Trust assets. The Trust assets are held in an irrevocable trust managed by the Trustee and, to the Participant Group's knowledge, no lender has the possession of Trust cash or investment certificates or account control agreements necessary to perfect a lien. However, if the Court grants the Debtors' Motion, once the Trust assets are brought into the Debtors' estates, they will likely become subject to the postpetition lender's liens and

superpriority claims and, perhaps, adequate protection liens, which would be a windfall to the lenders. Accordingly, the assets should remain in the Trust and, even if the Trust assets are eventually released to AHM Holdings, they must be carved-out from the collateral and reach of claims (including superpriority claims) of the Debtors' postpetition and prepetition lenders.

### Termination of the Plan Requires AHM Holdings Board Authority

11.     As the Debtors state in the Motion, the termination of the Plan requires board authority. *See Plan* at §12.8. The Debtors, however, have not provided any evidence of authority from the board of directors of AHM Holdings to terminate the Plan. While one can usually assume that a debtor in possession is acting upon the direction of its board, in this case the Motion requests that the Plan be terminated and that all Trust assets be disbursed to the Debtors (not just AHM Holdings). The Participant Group believes that termination should have been considered solely by the AHM Holdings board of directors based on the effect of that action on the AHM Holdings estate, and not the estate of other Debtors. No evidence of this process has been provided.

### Any Order Authorizing Termination of the Plan Must Acknowledge the Vested Claims of Plan Participants

12.     Even if the Court determines that the Plan should be terminated, any such termination should be accompanied by an allowance of the claims of Plan participants. Pursuant to Section 7.1 of the Plan, all deferred compensation accounts are deemed vested at all times, and certain matching amounts available to certain participants vest over time. *See Plan* at §7.1. On information and belief, the overwhelming majority of Plan claims are deferred compensation that immediately and permanently vested. "Vested" is defined in Section 1.33 of the Plan as "[W]hen used with reference to a Participant's Nonqualified Accounts, shall mean not subject to forfeiture, except as provided in the Plan, and unconditionally subject to distribution on his behalf, but only

in accordance with the Plan." *See Plan* at §1.33. Termination does not affect the status of vested rights. Section 12.8(c) of the Plan provides: "In the event of termination of all or part of the Plan, the Administrator shall continue to maintain Participants' Nonqualified Accounts and payment of such Nonqualified Accounts shall be made in accordance with Articles VIII and IX." *See Plan* at §12.8(c).

### Reservation of Rights

14. By objecting the Motion, the Participant Group does not waive any other rights and claims, collective or individual, related to the Plan, Trust, or the Debtors, including but not limited to: (a) priority claims against any of the Debtors under section 507(a)(4) and 507(a)(5) of the Bankruptcy Code; (b) claims or causes of action against the Debtors' officers and directors; (c) claims or causes of action against the Plan administrator and/or other responsible employees of the Debtors who made representations about the Plan; (d) claims or causes of action against the Trustee of the Trust; and/or (e) claims or causes of action under state wage and employee protection laws.

### Conclusion

15. In summary, the Debtors are seeking to seize Trust assets in a way not permitted by the terms of the Trust, disburse the Trust assets throughout the various estates without any protection for the creditors of AHM Holdings, and use those assets without regard for the fact that doing so will provide a windfall for secured lenders at the expense of unsecured creditors. The Debtors seek this extraordinary relief by expedited motion, without a complaint under section 542 or 543 of the Bankruptcy Code (or even reference to those provisions), relying solely on section 105(a) of the Bankruptcy Code, and without an opportunity for the Participant Group or other Plan participants to conduct a factual investigation or to even organize the resources of

approximately 140 individuals scattered throughout the country.  The Court should not permit this to occur.

WHEREFORE, the Participant Group respectfully requests that the Court enter an order denying the Motion or, alternatively, adjourning the Motion for further consideration after an opportunity for discovery, and granting such other and further relief consistent with argument herein as may be just and proper.

September 12, 2007                                   Respectfully submitted,

                                                     /s/ Sean D. Malloy
                                                     Sean D. Malloy (OH 0073157)
                                                     McDonald Hopkins LLC
                                                     600 Superior Avenue, East
                                                     Suite 2100
                                                     Cleveland, Ohio 44114
                                                     Phone:  (216) 348-5400
                                                     Fax:  (216) 348-5474
                                                     E-mail:  smalloy@mcdonaldhopkns.com

                                                     COUNSEL FOR PARTICIPANT GROUP

# EXHIBIT A

{1284017:}

**Participant Group:  Total Claims $11,603,785.84**

Steve Somerman                          Jeanette McGraw
Kevin Kerr                              Mark James
John Johnston                           Cliff Theriault
Ron Bergum                              Mitch Eininger
Jeff Lake                               Joseph Perry
Gwyn Chyz
Mike Moore
Chad States
Robert Trahan
Brian Reeg
Dan Manginelli Jr.
Julie Miller
Vicki Lombardi Shinn
Ron Brown
Stan Bergum Jr.
Liana Colagiovane-Miller
Mark Martinez
John Carnahan
David Nerland
Paul Parotti
Drew Waterhouse
Darius Livian
Baron O'Brian
Daniel Nieto
Lynn Wright
Mitzi Barnett
James Shoop
Gary Zell
Mike Mazella
Kristi Lacroix
Frank Arce
Steve Horrocks
Karen Werme
Jim Lucero
Hunter Williams
Al Crisanty
Ann Griffith
Emilio Nunez