**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------x

In re                                                                                    Chapter 11

AMERICAN HOME MORTGAGE HOLDINGS,                              Case No. 07-11047 (CSS)
INC., *et al.*, [1]                                                           (Jointly Administered)

                                                        Debtors.

-------------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION OF DB STRUCTURED PRODUCTS, INC. FOR
RELIEF FROM THE AUTOMATIC STAY**

             The Official Committee of Unsecured Creditors (the "*Committee*") of the above-

captioned debtors and debtors-in-possession (the "*Debtors*"), by and through its counsel,

objects (the "*Objection*") to the *Motion of DB Structured Products, Inc. for Relief from the

Automatic Stay* (the "*Motion*") [Docket No. 229].  In support of the Objection, the Committee

respectfully states as follows:

**BACKGROUND**

             1.          On August 6, 2007 (the "*Petition Date*"), the Debtors filed voluntary

petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

(the "*Bankruptcy Code*") with the United States Bankruptcy Court for the District of Delaware

(the "*Court*").

             2.          Since the Petition Date, the Debtors have continued in the operation of

their business and management of their properties as debtors-in-possession pursuant to sections

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("*AHM Investment*"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc.  ("*AHM Acceptance*"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc.  ("*AHM Servicing*"), a Maryland corporation (7267); American Home Mortgage Corp.  ("*AHM Corp.*"), a New York corporation (1558); American Home Mortgage Ventures LLC ("*AHM Ventures*"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("*Homegate*"), a New York corporation (7491); and Great Oak Abstract Corp. ("*Great Oak*"), a New York corporation (8580).

1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

3.      On August 7, 2007, the Court entered a cash management Order [Docket No. 66] which, *inter alia*, authorizes and directs the Debtors to continue to perform servicing functions under mortgage servicing agreements.

4.      On August 9, 2007, the Court entered an Order [Docket No. 113] establishing procedures for the sale of the Debtors' loan servicing platform (the "*Servicing Platform*") and providing, *inter alia*, that an auction to sell the Servicing Platform shall take place on September 11, 2007, which date was subsequently extended to September 24, 2007.

5.      On August 14, 2007, the Office of the United States Trustee for the District of Delaware appointed the Committee.

6.      On August 17, 2007, DB Structured Products, Inc. ("*DBSP*") filed the Motion seeking relief from the automatic stay to terminate a *Master Mortgage Loan Purchase and Servicing Agreement* dated May 1, 2006 (the "*Agreement*") among Debtor American Home Mortgage Corp. as seller ("*AHM Corp.*"), American Home Mortgage Servicing, Inc. as servicer ("*AHM Servicing*") and DBSP as initial purchaser.  Upon information and belief, AHM Servicing currently services mortgage loans purchased by DBSP (the "*DBSP Mortgages*") with an aggregate outstanding principal amount of approximately $189 million (the "*DBSP Servicing Rights*")

7.      On September 4, 2007, the Court entered a final cash collateral Order [Docket No. 554] which, *inter alia*, requires the Debtors to continue to perform mortgage loan servicing functions in the ordinary course of business.

8.      Also on September 4, 2007, the Court entered an Order approving and authorizing a settlement agreement by and among the Debtors and Fannie Mae (the "*FNMA Stipulation*") [Docket No. 611] which provides, *inter alia*, that the Debtors are, and continue to be, "an approved Fannie Mae servicer[.]"

## OBJECTION

9.      DBSP seeks to obtain relief from the automatic stay, at a time when the Debtors are in the midst of selling the Servicing Platform in an effort to maximize the value of their estate for the benefit of creditors, so it can terminate the Agreement and transfer servicing of approximately $189 million in loans from the AHM Servicing to another servicer (purportedly for cause and, as such, without the need to compensate the Debtors for the transfer of the DBSP Servicing Rights).  For the reasons discussed more fully below, DBSP has failed to establish that sufficient cause exists for relief from the automatic stay and the Motion should be denied.

10.     Section 362 of the Bankruptcy Code stays the commencement or continuation of any action against a debtor or any attempt to obtain possession of (or control over) property of the estate. *See* 11 U.S.C. § 362(a).  Indeed, the automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws." S. Rep. No. 95-989, 95 Cong., 2d Sess. 54-55, U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840-41 (1978).  It is designed to give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring.  *See Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999).

11.     The automatic stay, however, is not absolute.  A bankruptcy court may grant relief from the automatic stay where sufficient "cause" exists. *See* 11 U.S.C. § 362(d). There is no rigid test for determining whether sufficient cause exists to modify the automatic

stay.  Rather, in resolving motions for relief from the automatic stay for "cause", courts generally

consider the policies underlying the automatic stay in addition to the competing interest of the

debtor and the movant.  *In re Continental Airlines*, 152 B.R. 420, 424 (D. Del. 1993) (citing *Int'l*

*Business Machines v. Fernstrom Storage & Van Co.*, 938 F.2d 731, 734-37 (7th Cir. 1991).

12.     The party seeking to lift or modify the automatic stay bears the burden to

show cause why the stay should be lifted.  In fact, "[i]f the movant fails to make an initial

showing of cause . . . the court should deny relief without requiring any showing from the debtor

that it is entitled to continued protection."  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d

Cir. 1990).

## Sufficient Cause Does Not Exist to Warrant Relief from the Stay

13.     DBSP argues that cause exists for this Court to grant relief from the stay

because (i) prepetition and postpetition defaults (*i.e.*, that AHM Servicing is purportedly not a

FNMA qualified servicer) imposes substantial economic risk upon DPSP by preventing DBSP

from engaging in securitization transactions with respect to the DBSP Mortgages; (ii) DBSP's

interest in the Agreement is not being adequately protected; and (iii) the existing defaults cannot

be cured and therefore, the Agreement cannot be assumed and assigned to a third party.  These

assertions are unsupported and incorrect.

14.     DBSP asserts that on August 1, 2007, it sent a notice of default and

termination to AHM Servicing terminating the DBSP Servicing Rights for cause, specifically, an

event of default based on AHM Servicing's purported non-FNMA qualified servicer status.

Motion ¶ 17.  DBSP asserts that as a result of AHM Servicing's non-qualified status, DBSP is

unable to place the DBSP Mortgages into securitization vehicles. *Id.*

15.     As a threshold matter, the Motion does not contain a copy of the notice

purportedly terminating the DBSP Servicing Rights or any evidence that such written notice was

in fact provided to AHM Servicing as required by the Agreement. *See* Agreement § 14.01.

Similarly, the Motion is devoid of an information concerning whether a successor servicer was

actually appointed, a condition precedent to making any such termination effective. *See*

Agreement § 16 ("termination of the Servicer … shall not become effective until a successor

shall be appointed pursuant to this Section 16"). Accordingly, even assuming *arguendo* that an

event of default did in fact exist,[1] DBSP has failed to any provide evidence that it properly

terminated the DBSP Servicing Rights prior to the Petition Date. Indeed, DBSP itself admits

that it seeks to "complete the termination" of the Agreement. Motion at 1. Accordingly, the

DBSP Servicing Rights remain a valuable asset of the estate. *See* 11 U.S.C. § 541(a)(1); *L.R.S.C.*

*Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 302 (3d Cir. 2000)

(including executory contracts within the definition of property of the estate under § 541).

      16.     Regardless, no default exists as AHM Servicing is clearly an FNMA-

qualified servicer. *See* FNMA Stipulation at 2, ¶ 1. As such, the Debtors are not in default under

the Agreement and no basis exists for DBSP to terminate the DBSP Servicing Rights (for cause).

To the extent that DBSP wishes to transfer the DBSP Servicing Rights to an alternative servicer,

the Agreement permits DBSP to do so but only upon the payment of an agreed upon, fair market

value of the DBSP Servicing Rights to AHM Servicing. *See* Agreement ¶ 15.[2] Further, DBSP is

and remains adequately protected under the Agreement as (i) the Debtors are an FNMA

approved servicer and (ii) AHM Servicing has, and continues, to service the DBSP Mortgages in

---

[1] The validity of any Fannie Mae termination of the Debtors' right to service FNMA loan portfolios and/or change in the Debtors' status as a FNMA-qualified servicer is vigorously disputed by the Debtors and, by entering into the FNMA Stipulation, the Debtors have conceded neither the effectiveness of the former nor occurrence of the latter. *See* FNMA Stipulation at 1.

[2] DBSP cites to *In re Commonwealth Mortgage Co., Inc.*, 149 B.R. 4 (Bankr. D. Mass. 1992) for the proposition that relief may be granted to terminate contracts that were terminable according to their terms. Notably, however, the *Commonwealth Court* found that the movant failed to establish cause sufficient to warrant relief from the stay but permitted the movant to terminate the agreement only upon the payment of a contractual termination fee. DBSP does not seek to terminate the Agreement under section 15 (requiring payment) but instead under section 14 which would relieve DBSP from compensating the estate for transferring the DBSP Servicing Rights to another servicer.

an uninterrupted manner.  For those reasons, and despite to DBSP's unfounded assertions to the contrary, the Agreement may be assumed and assigned. *See* 11 U.S.C. § 365(b)(1).

17.     The Committee submits that sufficient cause does not exist to grant to DBSP relief from the automatic stay and such relief would be contrary to the best interests of the Debtors' estates and their unsecured creditors.  It is particularly inappropriate to grant such relief at this time given the Debtors' efforts to sell the Servicing Platform in an attempt to maximize the value of their estates for the benefit of their creditors.  Moreover, DBSP has failed to demonstrate that the Debtors are in default of the Agreement and, as the Debtors are FNMA-qualified servicers, they are not precluded from engaging in securitization transactions with respect to the DBSP Mortgages.  Accordingly, DBSP cannot show that it will suffer any prejudice if the Debtors continue to service the DBSP Mortgages pending sale of the Servicing Platform and potential assumption of the Agreement and assignment of the DBSP Servicing Rights to a qualified purchaser of the Servicing Platform.

18.     Here, the impact of the automatic stay on the parties and the balance of harms weigh heavily in favor of maintaining the stay.  DBSP has failed to meet its burden of presenting credible evidence to prove that it will suffer significant and undue harm should the automatic stay be maintained.  Indeed, the Debtors appear to have performed under the terms of the Agreement servicing the DBSP Mortgages and, given the Debtors FNMA-qualified status, DBSP should be free to engage in securitization transactions with respect thereto.

WHEREFORE, the Committee respectfully requests that the Court (i) deny the Motion, or in the alternate, (ii) adjourn the Motion to provide the parties with the opportunity to conduct discovery and hold an evidentiary hearing on the Motion, and (iii) grant such other and further relief as the Court deems appropriate.

**BLANK ROME LLP**


By:  */s/ Bonnie Glantz Fatell*
     Bonnie Glantz Fatell (No. 3809)
     1201 Market Street, Suite 800
     Wilmington, DE  19801
     Telephone: (302) 425-6400
     Facsimile: (302) 425-6464

       - and -

     **HAHN & HESSEN LLP**
     Jeffrey L. Schwartz
     Mark S. Indelicato
     Mark T. Power
     488 Madison Avenue
     New York, NY 10022
     Telephone: (212) 478-7200
     Facsimile: (212) 478-7400

     *Proposed Co-Counsel to the Committee*