## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | **Case No. 07-11047-CSS** |
| **HOLDINGS, INC., et al.,** | ) | |
| Debtors | ) | **Jointly Administered** |
| | ) | Related to Doc. No. 11, 113, 403 |
| | ) | Hearing Date: October 1, 2007 at 10:00 a.m. (ET) |
| | ) | Objection Date: September 20, 2007 at 4:00 p.m. (ET) |

### OBJECTION OF FINANCIAL GUARANTY INSURANCE COMPANY TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF

### AND TO

### PROPOSED CURE OBLIGATIONS

Financial Guaranty Insurance Company ("FGIC") hereby objects to the above-referenced Motion of the Debtors to sell the Debtors' loan servicing business and assume and assign certain executory contracts (the "Motion") and the Debtors' proposed cure amount relating to the Motion. In support of the objection, FGIC states as follows:

### I. SUMMARY

1.     FGIC objects to the Motion to the extent that the Motion attempts or purports to include or assume and assign the (i) HELOC Servicing Agreement dated as of March 23, 2005 among American Home Mortgage Servicing, Inc., as servicer ("AHM

Servicing"), GMAC Mortgage, LLC as successor by merger to GMAC Mortgage Corporation ("GMAC"), as back-up servicer, American Home Mortgage Trust 2005-1 (the "2005-1 Trust"), as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), as seller, (ii) HELOC Servicing Agreement dated as of June 22, 2005 among AHM Servicing, as servicer, GMAC, as back-up servicer, American Home Mortgage Investment Trust 2005-2 (the "2005-2 Trust"), as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as seller and (iii) HELOC Servicing Agreement dated as of October 7, 2005 among AHM Acceptance, as servicer, GMAC, as back-up servicer, American Home Mortgage Investment Trust 2005-4A (the "2005-4A Trust" and, together with the 2005-1 Trust and 2005-2 Trust, the "Trusts"), as issuer, U.S. Bank National Association, as the Indenture Trustee and AHM Acceptance, as seller (collectively, the "HELOC Servicing Agreements"). The servicing rights of AHM Servicing and AHM Acceptance were properly terminated pursuant to the terms of such HELOC Servicing Agreements prior to the Debtors' bankruptcy cases. Accordingly, because the servicing rights of AHM Servicing and AHM Acceptance have been terminated, the Motion cannot include the HELOC Servicing Agreements.

## II. BACKGROUND

2.    On August 6, 2007, the Debtors filed petitions for relief under Chapter 11 of title 11 of the United States Code.

3.    Prior to filing bankruptcy, AHM Servicing and AHM Acceptance were the contract servicers of certain home equity line of credit mortgage loans ("HELOC Mortgage Loans") under the HELOC Servicing Agreements in the following three securitization transactions: American Home Mortgage Investment Trust 2005-1, American Home Mortgage

Investment Trust 2005-2 and American Home Mortgage Investment Trust 2005-4A (collectively, the "FGIC Securitizations").

4.    The Trusts established in the FGIC Securitizations acquired and own HELOC Mortgage Loans and issued securities that are "backed" by, or that rely directly on, the HELOC Mortgage Loans and related collections owned by the Trusts as the source of payment. FGIC insured certain of the securities issued by the Trusts.  FGIC is an express third party beneficiary under each HELOC Servicing Agreement and holds rights against AHM Servicing and AHM Acceptance under the HELOC Servicing Agreements.[1] Deutsche Bank National Trust Company and U.S. Bank National Association were appointed and are serving as the Indenture Trustees under the respective Indentures related to the FGIC Securitizations.  GMAC was the back-up servicer under the following separate back-up servicing agreements: (i) HELOC Back-Up Servicing Agreement dated as of March 23, 2005 among GMAC, as back-up servicer, American Home Mortgage Trust 2005-1, as issuer, and Deutsche Bank National Trust Company, as the Indenture Trustee, (ii) HELOC Back-Up Servicing Agreement dated as of June 22, 2005 among GMAC, as back-up servicer, American Home Mortgage Trust 2005-2, as issuer, and Deutsche Bank National Trust Company, as the Indenture Trustee and (iii) HELOC Back-Up Servicing Agreement dated as of October 7, 2005 among GMAC, as back-up servicer, American Home Mortgage Trust 2005-4A, as issuer, and U.S. Bank National Association, as the Indenture

---

[1]    Additionally, the Insurance and Indemnity Agreements that relate to the HELOC Servicing Agreements also contain the acknowledgement of AHM Servicing and AHM Acceptance, in Section 2.02(k) and (l) thereof, that FGIC is a third party beneficiary of the HELOC Servicing Agreements.  The Insurance and Indemnity Agreements also incorporate the representations, warranties and covenants of AHM Servicing and AHM Acceptance made in the HELOC Servicing Agreements and contain covenants for the benefit of FGIC that the HELOC Mortgage Loans will be serviced by AHM Servicing and AHM Acceptance in compliance with the HELOC Servicing Agreements.

Trustee. Wells Fargo Bank, National Association is serving as securities administrator in the FGIC Securitizations.

5.      On August 2, 2007, GMAC, at the instruction of FGIC as required by the HELOC Servicing Agreements and pursuant to FGIC's and GMAC's rights under the HELOC Servicing Agreements, properly terminated the servicing rights of AHM Servicing and AHM Acceptance under each HELOC Servicing Agreement.    As permitted by the Servicing Agreements, the servicing rights of AHM Servicing and AHM Acceptance were subject to termination upon, among other things, the failure of American Home Mortgage Investment Corp. and its consolidated subsidiaries to have a Tangible Net Worth (as defined in the HELOC Servicing Agreements and related Indentures) of at least $530 million.[2]    American Home Mortgage Investment Corp., only one business day after the termination of AHM Servicing and AHM Acceptance as servicers, issued a press release acknowledging that while its bankruptcy filing was intended to help protect the value of American Home Mortgage Investment Corp. and its assets, "it is highly unlikely that these values will be sufficient to pay its creditors in full, and that it is realistic to conclude that ultimately there will be no shareholder equity value remaining."[3]  American Home Mortgage Investment Corp. thus had no Net Worth, and certainly no Tangible Net Worth (i.e., Net Worth after deduction of, among other things, all intangibles under GAAP), upon the pre-petition termination of servicing rights.  In addition, AHM Servicing

---

[2]      As specified in Section 6.01 of the HELOC Servicing Agreements, AHM Servicing and AHM Acceptance are subject to termination by GMAC, at the direction of FGIC, upon the occurrence of a HELOC Servicer Termination Event, which includes the failure of American Home Mortgage Investment Corp. and its consolidated subsidiaries to have a Tangible Net Worth (as defined in the HELOC Servicing Agreements and related Indentures) of at least $530 million.

[3]      Press release dated August 6, 2007.

and AHM Acceptance are also subject to termination as servicer if they either (a) admit in writing their inability to pay their debts generally as they become due or (b) voluntarily suspend payment of their obligations.[4]   In the days preceding the bankruptcy filing, American Home Mortgage Investment Corp. announced in a separate press release that it had "substantial unpaid margin calls pending" to its warehouse lenders and was "unable to borrow on its credit facilities and was unable to fund its lending obligations."[5]  This press release focuses on American Home Mortgage Investment Corp. and its subsidiaries.  Also, upon information and belief, AHM Servicing and AHM Acceptance are parties to warehouse or other lending facilities and have lending obligations, as the case may be, as referenced in the press release.  Accordingly, as supported by this press release, among other things, each of AHM Servicing and AHM Acceptance had either admitted in writing its inability to pay its debts generally as they became due or voluntarily suspended payment of its obligations.  The Debtors cannot take a position in this case that is contrary to the position they have announced to the public and shareholders.

6.    The HELOC Servicing Agreements expressly provide in Section 6.01 thereof that upon the termination of AHM Servicing and AHM Acceptance as servicers, "all authority and power of the HELOC Servicer . . . shall pass to and be vested in [GMAC], pursuant to and under this Section 6.01."  AHM Servicing and AHM Acceptance were replaced as servicer of the HELOC Mortgage Loans upon their termination with GMAC by the terms of the HELOC Servicing Agreements and the GMAC back-up servicing agreements and without any further action.  The termination and replacement of AHM Servicing and AHM Acceptance as servicer of

---

[4]    Section 6.01(iv) of the HELOC Servicing Agreements.

[5]    Press release dated July 31, 2007.

the HELOC Mortgage Loans in the FGIC Securitizations occurred before the filing of the Debtors' bankruptcy cases.

7.     FGIC, by and through its counsel, appeared at the August 7, 2006 hearing respecting the sale procedures concerning the Motion and objected on the record to the Motion to the extent the Motion purported to include the HELOC Servicing Agreements because the servicing rights of AHM Servicing and AHM Acceptance under such agreements were terminated.

8.     AHM Servicing and AHM Acceptance are required by the HELOC Servicing Agreements to cooperate in connection with the transition of servicing functions to GMAC and to transfer to GMAC all collections on the HELOC Mortgage Loans that are in and that come in to the possession of AHM Servicing and AHM Acceptance and all documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans properly and effectively.   Notwithstanding the pre-petition termination of AHM Servicing and AHM Acceptance as servicer under the HELOC Servicing Agreements, the obligations of AHM Servicing and AHM Acceptance to cooperate with the transition of servicing and several attempts by FGIC to contact the Debtors respecting the termination of servicing, AHM Servicing and AHM Acceptance have not complied with their cooperation obligations and have improperly listed the HELOC Servicing Agreements among the "Potential Executory Contracts" in the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if any (the "Notice") dated August 27, 2007 and the *Modified* Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if any (the

"Modified Notice") dated September 10, 2007. Each of the Debtors' Notice and Modified Notice specifies a proposed cure claim of $0 relating to the HELOC Servicing Agreements.

9.    Because the servicing rights of AHM Servicing and AHM Acceptance were properly terminated pursuant to the terms of the HELOC Servicing Agreements by the pre-petition termination by GMAC on August 2, 2007, the Debtors cannot assume and assign the HELOC Servicing Agreements, include the HELOC Servicing Agreements in the Motion, the Notice or the Modified Notice or discharge any purported cure claim.

## III. OBJECTION TO THE MOTION AND TO PROPOSED CURE OBLIGATIONS

### Pre-Petition Termination of Servicing Rights

10.    FGIC objects to the Motion to the extent that the Motion attempts or purports to include or assume and assign the HELOC Servicing Agreements or discharge any purported cure obligation relating thereto. The servicing rights under the HELOC Servicing Agreements have been properly terminated pre-petition and must not be subject to the Motion, the Notice, the Modified Notice or included among the proposed Assumed Contracts.

11.    The Debtors have apparently taken the position, in a letter to GMAC dated September 10, 2007, that the pre-petition termination of AHM Servicing as servicer under the 2005-2 HELOC Servicing Agreement was not effective because "a successor HELOC Servicer was not appointed in conjunction with the [termination notice], as required by Section 6.01 of the HELOC Servicing Agreement." However, the appointment of a successor HELOC Servicer is not a condition to the termination of AHM Servicing and AHM Acceptance under any of the HELOC Servicing Agreements. Moreover, as stated in paragraph 6 above, the HELOC Servicing Agreements expressly provide that upon the termination of AHM Servicing and AHM

Acceptance as servicers GMAC became the successor HELOC Servicer.  Section 6.01 of each

HELOC Servicing Agreement provides:

> On and after receipt by the HELOC Servicer of such written notice,
> all authority and power of the HELOC Servicer under this HELOC
> Servicing Agreement, whether with respect to the [securities issued
> by the Trust] or the HELOC Mortgage Loans or otherwise, shall
> pass to and be vested in the HELOC Bank-Up Servicer, pursuant to
> and under this Section 6.01; and, without limitation, the HELOC
> Back-Up Servicer is hereby authorized and empowered to execute
> and deliver, on behalf of the HELOC Servicer, as attorney-in-fact
> or otherwise, any and all documents and other instruments, and to
> do or accomplish all other acts or things necessary or appropriate to
> effect the purposes of such notice of termination, whether to
> complete the transfer and endorsement of each HELOC Mortgage
> Loan and related documents, or otherwise.

Therefore, GMAC became the successor HELOC Servicer by operation of the HELOC Servicing

Agreements immediately upon the pre-petition termination of AHM Servicing and AHM

Acceptance.  The potential for a termination of AHM Servicing and AHM Acceptance as

servicer is precisely why GMAC was retained at the closing of the FGIC Securitizations to

immediately become the HELOC Servicer under the HELOC Servicing Agreements upon any

such termination.  Thus, a successor HELOC Servicer was appointed in conjunction with the

termination notice.[6]

## IV. ADVERSARY PROCEEDING

12.    FGIC asserts that Debtors do not hold the servicing rights under the

HELOC Servicing Agreements.  However, to the extent the Motion, the Notice or the Modified

---

[6]    FGIC is permitted, as more fully set forth in Sections 6.01 and 6.02 of the HELOC
Servicing Agreements, to direct GMAC to appoint a successor HELOC Servicer other
than GMAC.  However, FGIC has not so directed the appointment of any such other
successor HELOC Servicer.  Instead, GMAC became the HELOC Servicer by operation
of the HELOC Servicing Agreements upon the pre-petition termination of AHM
Servicing and AHM Acceptance.

Notice could be construed as alleging anything to the contrary, FGIC asserts that the relief sought by the Debtors as it relates to the HELOC Servicing Agreements cannot be determined by the Motion. Additional procedural protections would be required to protect the rights and interests of FGIC. The servicing rights of AHM Servicing and AHM Acceptance were properly terminated before the filing of the Debtors' bankruptcy case. Yet the Debtors nevertheless seek to assign rights they do not hold. The Motion is not sufficient to determine the Debtors' interests in property. "[T]he determination of interests in property requires an adversary proceeding." *Johnson v. TRE Holdings LLC (In re Johnson)*, 346 B.R. 190, 195 (9th Cir. B.A.P. 2006) (holding in the context of a relief from stay motion that the bankruptcy court is not authorized by the rules of procedure to enter an order that determines interests in property). Moreover, Federal Rule of Bankruptcy Procedure 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)" is an adversary proceeding. The Debtors' Motion seeks to avoid these procedural protections. It appears the Debtors may have improperly included the HELOC Servicing Agreements in the Motion, the Notice and the Modified Notice in order to avoid the burden, which would be properly placed on the Debtors in an adversary proceeding, of establishing that they hold any servicing rights under the HELOC Servicing Agreements. The Debtors would be unable to establish any such property interest. Accordingly, the Motion must be denied to the extent it purports to include the HELOC Servicing Agreements.

## V. ADDITIONAL OBJECTIONS TO THE MOTION
## AND TO PROPOSED CURE OBLIGATIONS

13.     As stated above, the Motion cannot include the HELOC Servicing Agreements because the Debtors' servicing rights under the HELOC Servicing Agreements were

properly terminated pre-petition. However, even if the objections set forth in items III. and IV. above did not apply in this case, which conclusion FGIC would strongly contest, the Motion suffers from numerous additional defects that would preclude any purported assumption and assignment of the HELOC Servicing Agreements.

### Adequate Assurance of Future Performance

14.     Section 365(b) of the Bankruptcy Code requires the Debtors to provide adequate assurance of future performance as a condition to assumption of any Assumed Contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 505, 531 (1984); *In re National Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000). The Motion, however, does not provide <u>any</u> adequate assurance that a Qualified Bidder would assume and perform all terms of the Assumed Contracts. The Motion does not provide any form of assumption agreement that a successor servicer would enter into with the Indenture Trustees and other non-Debtor parties to the HELOC Servicing Agreements (and under which FGIC would be an express third party beneficiary, similar to the HELOC Servicing Agreements) pursuant to which such successor servicer would assume all of the servicing obligations under the HELOC Servicing Agreements.

15.     The Motion and the form Asset Purchase Agreement fail to specify whether a Qualified Bidder as successor servicer would need to assume the HELOC Servicing Agreements in their entirety, including assuming such agreements subject to the Tangible Net Worth terms discussed above. Any successor servicer would need to either assume the HELOC Servicing Agreements expressly subject to all the terms thereof, including the Tangible Net Worth terms, or seek the prior consent of FGIC to waive or modify such terms (such as replacing such terms with an acceptable financial-based event of default that would be applicable to a successor servicer). The failure of any successor servicer to assume the HELOC Servicing

Agreements other than subject to all the terms thereof would constitute an impermissible modification of the HELOC Servicing Agreements.  FGIC does not consent to any modification of the HELOC Servicing Agreements and cannot be forced to accept a modification of the HELOC Servicing Agreements, including having no event of default applicable to a successor servicer based on the potential that it experiences an unstable financial condition.  Moreover, the Debtors' Modified Notice states that the Debtors are only seeking to assume and assign the loan servicing rights related to the proposed Assumed Contracts.  As set forth above, rights under the HELOC Servicing Agreements cannot be transferred independent of the HELOC Servicing Agreements or the assumption of such agreements and any assumption and assignment of the HELOC Servicing Agreements would need to expressly include all the terms of such agreements.  Also, this statement of the Debtors in the Modified Notice, to the effect that they are only seeking to assume and assign the loan servicing rights related to the proposed Assumed Contracts, was not previously expressed in either the Debtors' Motion, the form Asset Purchase Agreement, the Court's August 9, 2007 order (or the bid procedures or Notice of Auction and Sale Hearing approved thereby), the initial Notice or the Notice of Rescheduled Dates in connection with the Motion filed on August 31, 2007 (each of which expressly contemplated the assumption and assignment of executory contracts).  Instead, this statement is a new statement of the Debtors created out of whole cloth.  Accordingly, such statement in the Modified Notice is not only contrary to the requirements of Section 365, but also contrary to the Motion and the Court's August 9, 2007 order (and all other related pleadings and notices in this case).

16.    Under the Debtors' Motion, and the related sale procedures as approved by order entered on August 9, 2007 (as modified by the Debtors' Notice of Rescheduled Dates in connection with the Motion filed on August 31, 2007 and the Modified Notice), counterparties of

and other parties holding rights under purported Assumed Contracts will not be advised of the Debtors' choice of the successor servicer until _after_ (a) the objection deadline respecting the Motion (currently scheduled for September 20, 2007) and (b) the Debtors' Auction (currently scheduled for September 24, 2007). Parties are not only excluded from the bid process, but also denied any opportunity to object to the Motion after the Debtors' choice of successor servicer is presented. Counterparties of and other parties holding rights under purported Assumed Contracts would not be advised of either the identity of the purported successor servicer or the terms under which the servicing assumption are designed to occur until each is essentially a fait accompli. FGIC would not be able to do appropriate and customary due diligence of the proposed successor servicer to ensure such successor servicer would be capable of performing the HELOC Servicing Agreements. Fundamental principles of the bankruptcy process include (i) full disclosure to all parties in interest, (ii) participation by parties in interest, (iii) a level playing field for prospective bidders and (iv) the protections afforded by the procedural rights and distribution priorities in the Bankruptcy Code. The Debtors in this case have demonstrated no reason to justify setting aside these fundamental principles. Moreover, there is no basis in law to set these principles aside. "As the Supreme Court has noted, it is easy to sympathize with the desire of a bankruptcy court to expedite bankruptcy reorganization proceedings for they are frequently protracted. 'The need for expedition, however, is not a justification for abandoning proper standards.'" _In re Lionel Corp._, 722 F.2d 1063, 1071 (2d Cir. 1983) (quoting _Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson_, 390 U.S. 414, 450 (1968)).

17.    The Motion and form Asset Purchase Agreement do not require that Qualified Bidders must satisfy the eligibility criteria for any servicer that is expressly set forth in

the HELOC Servicing Agreements. A failure of a successor servicer to satisfy such criteria would constitute an impermissible modification of the HELOC Servicing Agreements.

18. AHM Servicing and AHM Acceptance have important indemnification obligations to FGIC and the Trusts under the HELOC Servicing Agreements. The Motion would not require a successor servicer to assume such indemnification obligations. In fact, the form of Asset Purchase Agreement expressly excludes such indemnification obligations from the definition of "Servicing Rights" to be assumed by a Qualified Bidder in Section 2.5 thereof and fails to expressly include such indemnification obligations in the "Retained Liabilities" for which the Debtors remain liable under Section 2.6 thereof. Claims are held by FGIC and the Trusts under the HELOC Servicing Agreements that remain contingent and unliquidated but nevertheless are subject to the Debtors' indemnity obligations. These claims include potential claims for servicing breaches discovered later, failure to take actions expected of a servicer to cure document exceptions relating to the HELOC Mortgage Loans and claims for potential predatory servicing and other potential litigation. The indemnification obligations of AHM Servicing and AHM Acceptance as servicers under the HELOC Servicing Agreements also expressly include indemnification of the Trusts for "any act or omission to act of any . . . originator of a HELOC Mortgage Loan".[7] The Motion provides no adequate assurance that FGIC or the Trusts would be adequately indemnified in the event that claims under the HELOC Servicing Agreements become fixed and liquidated.

---

[7]  Section 5.06 of the HELOC Servicing Agreements. Losses to the Trusts included within the scope of this indemnity include, among other things, losses based on an American Home originator's failure to cure, repurchase or substitute defective HELOC Mortgage Loans and losses, if any, to a Trust resulting from an American Home originator's failure to fund additional draws under HELOC Mortgage Loans.

19. The Motion further fails to require a Qualified Bidder to assume and perform the servicing-related provisions of the Insurance and Indemnity Agreements to which certain of the Debtors are parties. As contemplated by the Motion, a successor servicer would not be required to assume servicing-related provisions of the Insurance and Indemnity Agreements that relate to the HELOC Servicing Agreements, notwithstanding that the Insurance and Indemnity Agreements contain specific servicing-related rights of FGIC (including audit and access rights relating to the servicer, rights to financial information of the servicer and indemnities from the servicer) that were provided for the benefit of FGIC.[8] The delivery of the Insurance and Indemnity Agreements, including the servicing-related provisions thereof, were among the conditions to FGIC's participation in the FGIC Securitizations. Such servicing-related obligations of the servicer in the Insurance and Indemnity Agreements are not divisible from the HELOC Servicing Agreements. The Insurance and Indemnity Agreements were negotiated and entered into by the parties simultaneously with the HELOC Servicing Agreements and a default under the HELOC Servicing Agreements constitutes a default under the Insurance and Indemnity Agreements.

20. FGIC has not consented to the assumption and assignment of the HELOC Servicing Agreements as required by the form Asset Purchase Agreement. The form of Asset Purchase Agreement expressly specifies at Sections 2.4(a), 6.3(c)(ii) and 6.3(d) that the assumption and assignment of proposed Assumed Contracts cannot be consummated without

---

[8] For example, the Insurance and Indemnity Agreements contain covenants of AHM Servicing and AHM Acceptance to provide financial statements, other financial information and compliance certificates (Sections 2.02(c) and (d)), rights to obtain servicing-related records (Section 2.02(e)), covenants to provide notice of certain material events (Section 2.02(f)), reimbursement and indemnification rights (Sections 3.03 and 3.04) and rights to obtain servicing audits (Section 4.06).

obtaining necessary consents of third parties.  This would include the consent of FGIC under the

HELOC Servicing Agreements.  FGIC has not consented to the assumption or assignment of the

HELOC Servicing Agreements.

## Cure Claims

21.     Section 365 of the Bankruptcy Code also requires the Debtors to cure any

default under a purported Assumed Contract as a condition to the assumption of any Assumed

Contract.  Under the Debtors' Motion, the related sale procedures as approved by order entered

on August 9, 2007 and the Modified Notice, counterparties of and other parties holding rights

under purported Assumed Contracts were advised of the Debtors' purported cure claims on

September 10, 2007.  The Motion and Modified Notice fail to provide counterparties of and other

parties holding rights under purported Assumed Contracts a sufficient opportunity to investigate

the nature of the Debtors' defaults and cure claims.  Moreover, no provision or holdback of the

purchase price from which cure claims would be paid is contemplated.  The Debtors improperly

seek adjudication, through approval of the Motion and the Modified Notice, that no cure amounts

are due.  Any determination that no defaults exist under the purported Assumed Contracts in

connection with the assignment thereof would be premature.

22.     On at least the August 27, 2007 distribution date in the FGIC

Securitizations, AHM Servicing and AHM Acceptance as servicers have failed to deposit certain

collections on HELOC Mortgage Loans owned by the Trusts into the appropriate accounts as

required by the HELOC Servicing Agreements and the Debtors have inappropriately misdirected

such collections.  The Indentures in the FGIC Securitizations expressly specify that a "Rapid

Amortization" event occurs thereunder based on, among other things, the pre-petition Tangible

Net Worth event of default discussed above.[9]   Upon the occurrence of the Rapid Amortization

event, collections on the HELOC Mortgage Loans are reallocated under the Indentures, all such

collections are to be applied to payment on the notes issued by the Trusts that relate to the

HELOC Mortgage Loans and such collections are no longer available to fund additional draws by

borrowers on the HELOC Mortgage Loans.   Upon information and belief, Wells Fargo Bank,

National Association, as securities administrator in the FGIC Securitizations, advised AHM

Servicing and AHM Acceptance that they were not permitted by the HELOC Servicing

Agreements to retain any collections on the HELOC Mortgage Loans to fund additional draws by

borrowers.   However, AHM Servicing and AHM Acceptance nevertheless improperly

misdirected collections belonging to the Trusts and used such collections owned by the Trusts to

fund additional draws under HELOC Mortgage Loans.   The approximate amount of collections

belonging to each Trust that was improperly diverted by AHM Servicing and AHM Acceptance,

and as a result not paid to related noteholders of each Trust, is:

> 2005-1 Trust: $228,906
> 2005-2 Trust: $464,156
> 2005-4A Trust: $400,630

These amounts need to be immediately restored to each Trust.   However, the Debtors have failed

to cure these defaults.

      23.     The Motion also fails to require a Qualified Bidder to either assume and

perform the obligations of, or to cure the defaults of, AHM Acceptance under the Mortgage Loan

Purchase Agreement in the 2005-4A FGIC Securitization.   AHM Acceptance acted not only as

---

[9]     The Indentures contain additional Rapid Amortization trigger events.  FGIC does not
waive its right to assert a Rapid Amortization based on any such other event or to waive
the occurrence of a Rapid Amortization event.

the servicer of the HELOC Mortgage Loans under the HELOC Servicing Agreement in the 2005-4A transaction, but also was the seller of the HELOC Mortgage Loans under a Mortgage Loan Purchase Agreement in such transaction.    The Mortgage Loan Purchase Agreement contains several obligations of AHM Acceptance, including obligations to cure, repurchase or substitute defective HELOC Mortgage Loans.    The obligations of AHM Acceptance under the Mortgage Loan Purchase Agreement in the 2005-4A transaction are not divisible from the obligations of AHM Acceptance under the HELOC Servicing Agreement in the same transaction. The Mortgage Loan Purchase Agreement was negotiated and entered into by the parties simultaneously with the related HELOC Servicing Agreement and each agreement contains obligations of AHM Acceptance respecting the HELOC Mortgage Loans.    Moreover, the Mortgage Loan Purchase Agreement expressly provides that the obligations of AHM Acceptance as seller thereunder will be assigned to and enforceable by the Indenture Trustee in such transaction.    Accordingly, the Mortgage Loan Purchase Agreement in the 2005-4A FGIC Securitization evidences the intent of the parties that the obligations of AHM Acceptance under both the Mortgage Loan Purchase Agreement and the HELOC Servicing Agreement run to and be enforceable by the Indenture Trustee and that AHM Acceptance's obligations under both agreements be enforceable by the Indenture Trustee as a single, unified agreement.

24.    AHM Servicing and AHM Acceptance would also be required by the terms of the HELOC Servicing Agreements to pay the costs and expenses associated with any transfer of servicing.    The Motion fails to provide for the payment of any such costs and expenses.

25.    As stated above, AHM Servicing and AHM Acceptance have important indemnification obligations to FGIC and the Indenture Trustees under the HELOC Servicing

Agreements and Insurance and Indemnity Agreements.  Yet the Motion, the Notice and the Modified Notice fail to provide for a cure of these obligations and fail to require a successor servicer to assume such indemnification obligations.

26.    The Motion must also be denied as to the HELOC Servicing Agreements in the 2005-2 and 2005-4 FGIC Securitizations because the Notice and the Modified Notice fail to notify, as required by the sale procedures and the Court's August 9, 2007 order, (a) U.S. Bank National Association, as indenture trustee, respecting the purported assumption and assignment of the HELOC Servicing Agreement for the 2005-4 FGIC Securitization and purported cure obligation and (b) American Home Mortgage Investment Trust 2005-2 respecting the purported assumption and assignment of the HELOC Servicing Agreement for the 2005-2 FGIC Securitization and purported cure obligation.

27.    FGIC reserves the right to supplement this objection, file a motion for relief or commence related proceedings.  FGIC further reserves the right to assert that the assumption and assignment of the HELOC Back-Up Servicing Agreements would need to be a condition to any assumption and assignment of the HELOC Servicing Agreements.

28.    FGIC has discussed this Objection with each Indenture Trustee and such parties concur with the relief requested herein.

## VI. RELIEF REQUESTED

29.    FGIC hereby requests that the Court deny the Motion to the extent the Motion seeks to include or assume and assign the HELOC Servicing Agreements, hold that the

purported cure claim is thus not applicable and grant FGIC such other and further relief as the

Court deems appropriate or just.

Dated: Wilmington, Delaware
        September 12, 2007

                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                    _____
                    Robert J. Dehney (No. 3578)
                    Donna L. Culver (No. 2983)
                    Chase Manhattan Centre, 18th Floor
                    1201 North Market Street
                    Wilmington, Delaware  19899
                    Telephone:  (302) 658-9200
                    Facsimile:  (302) 658-3989
                    Email:  rdehney@mnat.com
                    Email:  dculver@mnat.com

                            and

                    KUTAK ROCK LLP
                    Bruce A. Wilson, Esq. (NE Bar # 18885)
                    Thomas T. Roubidoux (NE Bar # 22005)
                    1650 Farnam Street
                    Omaha, Nebraska  68102
                    Telephone:  (402) 346-6000
                    Facsimile:  (402) 346-1148
                    Email:  bruce.wilson@kutakrock.com
                    Email:  thomas.roubidoux@kutakrock.com

                    ATTORNEYS FOR FINANCIAL GUARANTY
                    INSURANCE COMPANY