UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br>et al.,<br><br>Debtors. | ) <br>) Chapter 11<br>)<br>) Case No 07-11047 (CSS)<br>)<br>) Jointly Administered<br>)<br>) Objection Deadline: September 20, 2007@ 4:00 pm<br>)<br>) Ref. Docket Nos. 11, 403 & 113<br>) |

**LIMITED OBJECTION OF FNC, INC. TO DEBTORS' EMERGENCY MOTION
TO ASSUME AND ASSIGN EXECUTORY CONTRACT WITH FNC, INC.,
INCLUDING DISPUTED CURE AMOUNT**

FNC, Inc. ("FNC") hereby objects (the "Objection") to the Debtors'[1] Emergency Motion for Orders: (A)(i) Approving Sale Procedures; (ii) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (ii) Approving Form and Manner of Notice Thereof; and (iv) Granting Related Relief; and (B)(i) Authorizing the Sale of Such Assets Free and Clear of Liens, Claim, Encumbrances, and Other Interests; (ii) Authorizing and Approving Purchase Agreement Thereto; (ii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief [D.I. 11] (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). By the Motion, the Debtors have requested the authority to sell the assets related to the Debtors' mortgage loan servicing business (the "Servicing Business"), free and clear of all liens, claims, encumbrances and other interests pursuant to § 363 of title 11 of the United States Code (the "Bankruptcy Code") and also the authority to assume and assign various agreements related to the Servicing Business pursuant to Rules 6006 and 9014

---

[1] Debtors are: American Home Mortgage Holdings Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

of the Federal Rules of Bankruptcy Procedure.[2] In support of its objection, FNC respectfully states as follows:

## BACKGROUND

1. On August 6, 2007 (the "Petition Date"), the Debtors filed a voluntary petition for relief under the Bankruptcy Code in the Bankruptcy Court. Since the Petition Date, the Debtors have continued operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. Prior to the Petition Date, FNC provided collateral valuation software to the Debtor under a certain Collateral Management System Implementation and Modification Agreement (the "Agreement") (attached in relevant part as <u>Exhibit A</u>)[3], which was executed by the Debtor HomeGate Settlement Services, Inc., a wholly-owned subsidiary of American Home Mortgage Corporation, on November 21, 2003, and accepted by FNC on November 24, 2003.

3. FNC grants to the Debtor through the Agreement a:

> **nonexclusive, limited term license** to install, store, load, execute and display (collectively, "Use") copies of the Software, and any designated backup in support of its business operations. This license shall be read to encompass all of the subportions of the Software, including, for example Custom Work Product, Base Technology and any third party software, and the subdivisions thereof, especially as to server site software, client site software and web application software. . . .
> Client may not transfer this license to the Software without FNC's prior written consent (which it may exercise in its sole and absolute discretion).

Agreement (Section 4 (b), page 10-11)(emphasis added).
Under the Agreement the license cannot be transferred without FNC's express written consent.

Id. To date, the Debtor has not requested, nor has FNC granted, any request to transfer the nonexclusive limited term license.

---

[2] Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief (Docket No. 115) was entered on August 9, 2007.
[3] The Agremeent is confidential and contains sensitive trade information. Only relevant parts of the agreement have been provided in an unredacted state. Attachment of the excerpts is not a waiver as to the confidentiality of the Agreement as a whole and FNC reserves its rights pursuant to the Agremeent and applicable law to keep the remainder of the Agreement confidential.

4. The Agreement was for an initial term of two years, but the Agreement (Section 6, page 13) provided that the Agreement "shall renew automatically for successive six month terms, unless either party gives 60 days advance written notice of its intent to terminate." Neither the FNC nor the Debtor has given written notice of its intent to terminate since the execution of the Agreement.

5. On August 7, 2007, the Debtor filed the Motion, pursuant to which it seeks authority to assume certain contracts, including the Agreement with FNC. On August 27, 2007, the Debtor filed a Notice of Service of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any (Docket No. 403) which lists the Agreement as a candidate for assumption and assignment.

6. The Debtor, however, lists the "cure amount" for the Agreement as being $296,801.73, when the correct cure amount of the principal obligation is $496,579.35, as more fully reflected on unpaid invoices under the Agreement collectively attached hereto as <u>Exhibit B</u> for the period of June 1, 2007 through August 4, 2007. The June invoice is for the amount of $296,801.73, the July invoice is in the amount of $196,509.05, and the August invoice in the amount of $32,268.53. It appears the cure amounts were filed without the July and August invoices. There have been no post-petition charges under the Agreement.

7. In addition to the cure amount of the principal obligation, the Debtor is also obligated for interest on the unpaid amounts and for attorneys' fees incurred in the collection of the amount due. The Agreement (Section 4, page 10) provides as follows:

> (e) Billing and Payment. FNC will bill Client [Debtor] on a monthly basis the total amount of all fees, charges and reimbursements due and Client agrees to pay all such invoices within 30 days of the date of the invoice. Client further agrees that if any sum is unpaid 15 days past the invoice payment due date, Client shall pay FNC 1% interest per month on said unpaid funds from the date of invoice until paid in full. Furthermore, Client agrees to pay all costs of collecting said funds due, include reasonable attorneys' fees (whether any action or suit is commenced or not) and costs of any suit.

Thus, pursuant to the Agreement, the cure must include all past due fees, interest and reasonable attorneys' fees in pursuit of collection of the fees in arrears.

## ARGUMENT

A. **The Agreement is a Nonexclusive Nontransferable License which cannot be Assumed and Assigned without the Express Written Consent of FNC**

8. Generally, courts find that "intellectual property licenses [are] 'executory' within the meaning of section 365(c) because each party to the license had the material duty of 'refraining from suing the other for infringement of any of the [intellectual property] covered by the license . . .'" In re Golden Books, 269 B.R. 300, 309 (Bankr. D. Del. 2001) (quoting In re Access Beyond Tech., Inc., 237 B.R. 32 (Bankr. D. Del. 1999)). Accordingly, a debtor in possession cannot assume such contracts except if the debtor complies with the assumption requirements set forth in 11 U.S.C. §365. See Perlman v. Catapult Entertainment, Inc. (In re Catapult Entertainment, Inc., 165 F.3d 199, cert. denied, 120 S.Ct. 369 (1999); Everex Systems, Inc. V. Cadtrak Corp. (In re CFLC, Inc), 89 F.3d 673, 677 (9th Cir. 1996) (nonexclusive license is an executory contract); Fenix Cattle Co. v. Silver (In re Select-A-Seed Corp.), 625 F.2d 290, 292, (9th Cir. 1990) (copyright license for use of computer software is an executory contract); In re Golden Books, supra; In re Access Beyond Tech., Inc., supra.

9. In this case, the Agreement at issue is executory because it imposes on-going obligations on the parts of both parties to the Agreement. For example, FNC provides access to its software and ports for the term so that the Debtor could both automate and manage the procurement of various products and services from certain of the Debtor's third party service providers and fulfill requests for the third party's products and services for which FNC was paid per the rates established in the Agreement. FNC, for its part, must permit the continued use of the licensed software according to the terms of the Agreement and the Debtor must limit its use

4

to the restrictions set forth in the Agreement. Therefore, the Agreement constitutes an executory contract within the meaning of 11 U.S.C. §365 and the Debtor is not permitted to assume or assign the Agreement unless it complies with the mandatory requirements imposed by 11 U.S.C. §365(b) and (c)(1).

10. Federal Law requires consent of a copyright owner to transfer or assign a copyright. Under applicable federal law, the holder of a non-exclusive license of a copyright (or a patent) does not obtain the rights of ownership, but acquires only a personal interest in a copyright (or patent). See In re CFLC, Inc., supra; In re Golden Books, supra; In re Access Beyond Tech., Inc., supra; In re Patient Education Media, Inc., 210 B.R. 237, 241 (Bankr. S.D.N.Y. 1997). Further, a nonexclusive license of a copyright is personal to the transferee and cannot be assigned without the consent of the licensor. Id. See also Unarco Industries, Inc. v. Kelley Co., 465 F.2d 1303, 1306 (7th Cir.1972); In re Valley Media, Inc., 279 B.R. 105, 135-136 (Bankr.D.Del.2002); In re Golden Books, supra; In re Access Beyond Tech., Inc., supra; In re Patient Education Media, Inc., supra.

11. Under Title 17 of the United States Code (the "Copyright Act") and federal common law pertaining to copyrights, a copyright owner (such as FNC in this instance) does not have to consent to the assignment of the license or the licensed software to any third party. See In re Patient Education Media, Inc., 210 B.R. at 241 (copyright license) citing In re CFLC, Inc., 89 F.3d at 679; See also Harris v. Enus Records Corp., 734 F.2d 1329, 1333-34 (9th Cir. 1984) (copyright licenses are not transferable without the licensor's consent); Sol Solutions, Inc. v. Oracle Corp., 1991 WL 626458 at 5-6 (N.D. Cal., December 18, 1991) (quoting 17 U.S.C. §102) (a software license is a copyright license and cannot be transferred under federal copyright law which preempts any inconsistent state law).

12. Pursuant to 11 U.S.C. §365(c)(1), a debtor in possession may not assign a non-exclusive license in a copyright absent the consent of the owner of that patent or copyright. See In re Golden Books, supra; In re Access Beyond Tech., Inc., supra; In re Patient Education Media, Inc., supra. As previously stated, FNC has not consented, and does not hereby consent, to the assignment of the Agreement to any third party purchaser. Moreover, a Chapter 11 debtor cannot assign its nonexclusive license to use copyrighted or patented materials without the licensor/owner's consent, even though such assignment would maximize assets available to creditors. In re Patient Education Media, Inc., supra (held: debtor could not assign its nonexclusive license without copyright owner's consent) (citing 11 U.S.C.A. § 365(c); 17 U.S.C.A. § 106); accord, In re Access Beyond Tech., Inc., supra.

13. In keeping with the established law of this Court and this Circuit, FNC also requests that the Court find and require that the Debtor, in order to assume and assign the Agreement, must release FNC from any and all avoidance claims it may have or claim to have against FNC because any such avoidance claims are inconsistent with the assumption and assignment of the Agreement. See e.g. In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311 (3d Cir. 2003); In the Matter of Superior Toy & Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996); In re Network Access Solutions, Corp., 330 B.R. 67 (Bankr. D. Del. 2005); In re Vision Metals, Inc., 327 B.R. 719 (Bankr.. D. Del. 2005); In re Philip Services (Delaware), Inc., 284 B.R. 541 (Bankr. D. Del. 2002).

B. **Under 11 U.S.C. § 365(b), the Debtor Cannot Assume and Assign the FNC Agreement Without Both Curing All Defaults Under the Agreement and Providing Adequate Assurance of Future Performance**

14. The Debtor must satisfy all the provisions of 11 U.S.C. § 365(b)(1)(A), (B), (C) before it may assume the contract or lease, and "it must do so in its entirety." See 11 U.S.C. §

365(b) (1)(A), (B), (C); In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3rd Cir. 2000). Section 365 requires both that the Debtor cure any default prior to assumption and provide "adequate assurance of future performance under such contract or lease." See 11 U.S.C. § 365(b) (1)(A), (B), (C). The Third Circuit has explained that "'[b]ecause assumption acts as a renewed acceptance of the terms of the executory bargain, the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate, which will be paid first out of the assets of the estate.'" In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311, 318 (3rd Cir. 2003) (quoting In re Columbia Gas System Inc., 50 F.3d 233, 238-39 (3d Cir.1995)).

15.  The Third Circuit has stated that "courts require the debtor in possession to 'give the other contracting party the full benefit of [its] bargain,'" when a Debtor assumes an executory contract "as a matter of fairness, before requiring the creditor to perform." In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311, 318 (3rd Cir. 2003) (citing H.R.Rep. No. 95-595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05; Matter of Superior Toy & Mfg. Co., Inc., 78 F.3d 1169, 1174 (7th Cir.1996)). It is a requirement of assumption that "the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement." Id. If the Debtor is to assume and assign a contract, the Debtor "must do so in its entirety." See 11 U.S.C. § 365(b) (1)(A), (B), (C); In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3rd Cir. 2000).

16.  Both interest and attorneys' fees are part of the debt pursuant to a term in the Agreement, which is the contract to be assumed. Therefore, to cure defaults under the Agreement, in addition to the principal indebtedness of $496,579.35, the Debtor also must pay FNC interest in the amount of $6,647.67 through September 5, with an additional $989.30 through September 15, and thereafter at the rate of $163.43 per day until paid, together with

7

reasonable attorneys' fees to be determined by the Court, but which FNC suggests be at least $25,000.

17. Under the terms of the Agreement and under the Debtor's 11 U.S.C. § 365(b)(1)(C) requirement to provide adequate assurance of future performance, FNC will withhold its consent unless adequate assurance that the acquirer/assignee is financially capable of completing the terms of the Agreement is provided to FNC and FNC finds the adequate assurance satisfactory. FNC is unlikely to object to the potential assignee if the acquirer will be an active mortgage lender and, thus, of interest to FNC. However, FNC reserves its right to consent to assumption and assignment of the Agreement. Furthermore, if the acquirer/assignee is a current client of FNC, FNC will withhold consent pending reconciliation of any conflict in the terms and conditions in the assumed and assigned license and any existing agreements.

18. The Agreement should be rejected if the Debtor cannot satisfy 11 U.S.C. §365. If the Agreement is not assumed and assigned pursuant to FNC's consent, FNC contends that such executory contract should be rejected no later than ten (10) days after entry of the order approving the sale. FNC seeks this relief because it is concerned that if the Agreement is not promptly rejected, the assets sold pursuant to the Motion may include the licensed software and their transfer to a prospective buyer may effect a <u>de facto</u> assignment of the licensed software in derogation of the Agreement. That is, the Debtors, without any assumption of the Agreement, will continue to reap the benefits under this Agreement (<u>i.e.</u>, use of the licensed software) and pass such benefits through to the Purchaser in derogation of FNC's right to control the parties that utilize its licensed software and to receive payment for such use. This <u>de facto</u> assignment would circumvent all the requirements of §365 by permitting the Purchaser to receive all of the benefits of the Agreement for as long as it chooses without ever having to become liable on the contract.

WHEREFORE, unless and until these objections have been satisfied and FNC is paid all amounts due it to cure existing defaults, FNC respectfully requests that the Court (a) sustain this Objection; (b) deny the Motion insofar as it pertains to an assumption and assignment of the Agreement, pending the express written authorization of FNC; and (c) grant such other and further relief as is just and equitable.

Dated:  September 13, 2007          **MORRIS JAMES, LLP**

_____
Rafael Zahralddin-Aravena, Esq. (#4166)
500 Delaware Ave., Suite 1500 (19801-1494)
Post Office Box 2306
Wilmington, DE 19899-2306
Telephone:  (302) 888-6947
Facsimile:   (302) 571-1750
Email:  rxza@morrisjames.com

-and-

Stephen W. Rosenblatt
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
17th Floor, AmSouth Plaza
Post Office Box 22567
Jackson, Mississippi  39225-2567
Telephone:  (601) 948-5711
Email:  steve.rosenblatt@butlersnow.com

*Counsel for FNC, Inc.*

9