# EXHIBIT A





# Collateral Management System Implementation and Modification Agreement
## *Execution Version*

Client agrees to the implementation and modification of the FNC Collateral Management System according to the terms and conditions of this Agreement, which includes the attached documents.

## Parties

Client:   HomeGate Settlement Services*
          520 Broadhollow Road
          Melville, NY 11747
          Phone: (516) 396-7723
          Fax: _____
          Attention: Lance Thoet

          *HomeGate Settlement Services is a wholly-owned subsidiary of
          American Home Mortgage Corporation, which shall guarantee
          HomeGate Settlement Services obligations under this agreement

FNC:      FNC Inc, a Mississippi corporation ("FNC")
          606 Van Buren
          Oxford, MS 38655
          662-236-2020
          662-236-2037 (Facsimile)
          Attention: General Counsel

## Dates

The initial term of this agreement shall be 2 years

Date of signature: _____

Commencement Date: _____

Initial Termination Date: _____

## Project Managers

Client:   Lance Thoet
          President

        (516) 396-7723
        lthoet@homegateservices.com

        [name #2]_____
        [title] _____
        telephone_____
        e-mail_____

**FNC:**     Nick Wanzenreid
        Project Manager
        (714) 966-1099, ext 555; (310) 463-5293 cell
        nwanzenreid@fncinc.com

        [name #2]_____
        [title] _____
        telephone_____

**This Agreement includes the following documents, all of which are incorporated herein by reference**

- **Standard Terms and Conditions** (revision date 20 August 2003)

- **Exhibit A**    **Statement of Work (including sub-exhibits)**
- **Exhibit B**    **Pricing**
- **Exhibit C**    **Client's Travel and Expense Reimbursement Policy**
- **Exhibit D**    **Client Related Organizations**

    **IN WITNESS WHEREOF,** for adequate consideration and intending to be legally bound, the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

[Client].  
By: _[signature]_  
Name _LANCE A. THOET_  
Title _PRESIDENT_  
Date _11-21-2003_

FNC, Inc.  
By: _Charles A. Hurst_  
Name _Charles A. Hurst_  
Title _Director, National Sales_  
Date _11/24/2003_



**Collateral Management System
Standard Terms and Conditions**
August 20, 2003 version

**THESE STANDARD TERMS AND CONDITIONS** along with all Exhibits and Schedules (the "**CMS Agreement**") shall govern the rights and obligations of FNC, Inc and Client with respect to all issues regarding FNC's licensing, modification, installation, maintenance and management of FNC's Collateral Management System for Client.

**WHEREAS**, FNC has developed and owns the FNC Collateral Management System, which it licenses to Clients to allow them to, among other things, automate and manage the procurement of various products and services from certain of Clients' third party Providers;

**WHEREAS**, FNC has created, owns, and operates the FNC Ports for the processing of and for the fulfillment of requests for Provider's Products and services;

**WHEREAS**, FNC desires to license to Client the Collateral Management System, including especially the Software, to provide access to the FNC Systems and FNC Ports, and to grant Client a non-transferable, non-exclusive, revocable right to gain access to and use the FNC Ports and FNC Systems, and Client desires to license the Software and to subscribe to and interface to the FNC Ports and FNC Systems, all pursuant to the terms and conditions provided in these Standard Terms and Conditions including all Exhibits and Schedules. These Standard Terms and Conditions, including all Exhibits and Schedules are incorporated into the Collateral Management System Implementation and Modification Adoption Agreement

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

## Definitions

For purposes of this Agreement, the following terms shall have the meanings defined in this section for all purposes of this Agreement. The singular form includes the plural form and vice versa. Any capitalized term used in this agreement and not included here shall have the meaning given to it elsewhere in the Agreement.

"Base Technology" shall mean all of the Collateral Management System computer software, processes and source codes developed by FNC and/or licensed to it without modification to suit Client's specific requirements.

"Client" shall mean a financial institution and/or other individual or entity desiring to use the FNC Collateral Management Systems.

"Confidential Information" shall mean all of Client's or FNC's confidential and proprietary information including, but not limited to: Client's or FNC's forms, processes, software, systems, pricing, technology and know-how; customer, vendor, agent, and/or appraiser identities and lists; business or financial information and plans; research and development plans or projects; the identity of any existing or potential co- or joint-venturer; any information that is marked or identified, orally or in writing, by Client or by FNC, as confidential or proprietary; and any information that FNC or Client should recognize as confidential or proprietary from the circumstances surrounding its disclosure.

"Custom Work Product" shall means any Functional Design, Technical Description and any software (including programs, modules, code, algorithms, flowcharts, data diagrams, documentation and the like) created by FNC on behalf of Client and in furtherance of the Statement of Work whether before or after the execution of this agreement. Custom Work Product does not include any Base Technology, any third party software, any preexisting software owned by FNC or by any third party and incorporated or "embedded" into the Custom Work Product.

"Documentation" shall mean descriptive information in whatever form that describes the FNC Collateral Management System functions and features in sufficient detail to be understandable to a CMS user of general proficiency.

"Delivery" shall mean the successful transmission of a completed Provider Product or service to the Client (or Client's designee) by use of FNC Collateral Management Systems, FNC Ports, or other method designated in writing as acceptable to the Client.

"FNC Collateral Management System" (sometimes referred to as the "FNC CMS" or the "CMS") shall mean the collateral processing software systems such as the Appraisal Management System (AMS), the Collateral Management System (CMS) and the BankPort system and other related FNC electronic commerce systems that have been or may be developed by FNC for the purpose of allowing FNC's Client customers to (among other things) automate and manage their procurement of products and services, especially from third parties. Once modified and adapted to suit Client, installed and in operation, the specific instance of the Collateral Management System may be referred to as "Client's Collateral Management System".

"FNC Port" shall mean the Internet based, electronic commerce systems such as "Appraisalport.com", "Bankport.com" and other transactional systems along with other communication interfaces or alternative accesses as have been or may be developed by FNC. These systems are for the processing of requests for products and services from Clients, and for the fulfillment of the Clients' requests by Providers of third party services.

"Order" shall mean a Client offer or request transmitted through FNC Collateral Management Systems and FNC Ports for one of Provider's Products or Services that the Provider may or may not accept.

"Provider" shall mean a vendor or supplier (whether an individual or entity) of certain products and services that Client desires to obtain, especially through the FNC Collateral Management Systems.

"Provider Product or Service" (sometimes referred to as "Products") shall include any product, service and/or information that Provider may supply or transfer to a Client through the FNC Collateral Management Systems and/or FNC Ports.

"Software" shall mean all of the Base Technology and Custom Work Product, as well as any and all ancillary and/or complementary software necessary and/or convenient to the operation of the Collateral Management System. For purposes of convenience and reference the Software may be subdivided into parts, especially server site software, client site software and web application software, and derivative works thereof. All of these parts and portions of the Software are incorporated into the definition of the Software.

"Transaction" shall mean either:

(1) <u>Individual or Unbundled pricing</u>. In the case of Individual or Unbundled Pricing, a Transaction is the successful transmission of a completed Provider Product or Service Delivery (where a fee is due to a Provider) in response to a Client Order. Multiple communications that are part of the same Order and Delivery between Client and a Provider will be considered part of the same Transaction.

    However, where there is more than one transmission and the Provider Product or Service Delivery is entitled to a separate billing charge from Client, such separate event shall be deemed a separate Transaction for purposes of this Agreement, and a separate fee shall be due to FNC.

(2) <u>Bundled pricing</u>. In the case of Bundled Pricing, a Transaction occurs with the opening of a separate Client electronic loan folder within the Client's FNC Collateral Management System and the successful transmission of a Client Order for a Provider's Products from within that loan folder.

delivered hereunder, other than taxes based on the net income of FNC.

During the implementation period but not thereafter, FNC will assume travel related expenses for its employees. The implementation period will end after final acceptance of the CMS system (after the testing period) or when Client begins to use its CMS system for transactions in live production, whichever comes first.

(e) <u>Billing and Payment</u>. FNC will bill Client on a monthly basis the total amount of all fees, charges and reimbursements due and Client agrees to pay all such invoices within 30 days of the date of invoice. Client further agrees that if any sum is unpaid 15 days past the invoice payment due date, Client shall pay FNC 1% interest per month on said unpaid funds from date of invoice until paid in full. Furthermore, Client agrees to pay all costs of collecting said funds due, include reasonable attorneys' fees (whether any action or suit is commenced or not) and costs of any suit.

If payment of fees is not received within 60 days of invoice date, FNC may, at its option, interrupt and/or terminate services provided under this Agreement to Client until such time as the invoice is paid in full.

Client shall inform FNC in writing (which may include an electronic writing) of any billing problems or discrepancies within 45 days after such charge first appears on Client's invoice. If Client does not bring a dispute concerning a charge to FNC's attention within 45 days of receipt of the invoice first containing such charge, Client shall be deemed to have waived its rights to dispute such problems or discrepancies.

## 4    Proprietary Rights.

(a) <u>Ownership of the Software</u>. FNC owns and shall own all rights, title and interest to the Software (including for example, the Collateral Management System--whether FNC's or Client's), the FNC Ports, and any Software whether related thereto or not), including any modifications to the Software regardless of whether made by FNC or Client, or whether to the FNC CMS and/or FNC Ports.

(b) <u>Site License</u>. Client is granted a nonexclusive, limited term license to install, store, load, execute and display (collectively, "Use") copies of the Software, and any designated backup in support of its business operations. This license shall be read to encompass all of the subportions of the Software, including, for example Custom Work Product, Base Technology and any third party software, and the subdivisions thereof, especially as to server site software, client site software and web application software.

Notwithstanding anything contained herein, the parties agree that the Software may be used throughout the Client's organization, including its subsidiaries and affiliates' location, but only to the extent that they are owned 100% by the Client or Client's parent. A list of Client's parent, subsidiaries and affiliates is attached to this Agreement as Exhibit D   It may also be used at any

Client designated disaster recovery site.

Client may not transfer this license to the Software without FNC's prior written consent (which it may exercise in its sole and absolute discretion). It may not be sublicensed by Client without FNC's prior written consent, except that Client may assign, sublicense or otherwise transfer this Agreement and the licenses hereunder to Client's wholly-owned subsidiaries, parent or affiliates or any successor by merger or consolidation of Client without FNC's consent.

(c) Object Code License. Any Software or any other technology licensed under the Agreement is being provided only in machine-readable object code form. This license does not extend to, nor shall Client have access to or claim on any source code or other versions of the Software.

(d) Ownership of Client's Data. The parties agree that any information, image or data contained within an Order, Delivery, Provider Product, Transaction or other communication between Client and Client's providers is Confidential Information. In addition, all information related to any Provider, including without limitation, any pricing is Confidential Information. All such information, image and data is the property of Client or Clients' provider or customer, as the case may be, and is not the property of FNC. FNC shall not extract or retrieve any data, image or information from any Order, Delivery, Provider Product, Transaction or other communications, unless the extraction or retrieval of such information is specifically agreed in advance in writing, between the parties.

(e) CMS System Source Code Escrow. FNC shall maintain a copy of the most current version of the source code that forms the basis for Client's CMS system (and the latest version of any documentation thereto) in FNC's established standard source code escrow account. The source code escrow will be subject to the terms and conditions of the escrow agreement between FNC and the escrow holder. FNC shall make those terms and conditions available to Client upon request.

In the event that Client desires a different source code escrow agreement or account, then FNC will cooperate with Client in establishing such account on terms acceptable to FNC. Client will bear the cost of such source code escrow account.

## 5   Term and Termination.

The term of this Agreement (the "Term") shall be set forth in the Acceptance Form to this Agreement. In the absence of any term indicated in the Acceptance form, the term shall commence upon the date of this Agreement, and shall continue in full force and effect for a period of two (2) years, unless properly terminated by the parties.

Either party may, in addition to other relief, terminate this Agreement if:

(i) the other party breaches any material provision hereof (including, for example,

        any duty to make payments hereunder) and fails within thirty (30) days after receipt of written notice of default to correct such default or to commence corrective action reasonably acceptable to the aggrieved party and proceed with due diligence to completion

(ii)        Either party shall be in default hereof in the event of

        1.    a filing by or against the other party of a proceeding under any bankruptcy or similar law, unless such proceeding is dismissed within 30 days from the date of filing;

        2.    the filing by or against the other party of a proceeding for dissolution or liquidation, unless such proceeding is dismissed within 30 days from the date of filing;

        3.    the making by the other party of any assignment of a material portion of its assets for the benefit of creditors;

        4.    the appointment of or the application for the appointment of a receiver, trustee or custodian for all or a material portion of the assets of the other party, unless such appointment or application is revoked or dismissed within 30 days from the date hereof;

        5.    the attempt by the other party to make any adjustment, settlement or extension of its debts with its creditors generally;

        6.    the issuance or the obtaining of a levy of execution upon or against a material portion of the assets of the other party, unless such lien or levy of execution is dissolved within 30 days from the date thereof.

(i)        Either party may terminate this agreement upon written notice in the event that the other party is in violation of the provisions regarding Confidential Information and/or Proprietary Rights, especially as set out in Section 4, Proprietary Rights and Section 8, Confidential Information.

(ii)        Client may terminate this agreement upon written notice in the event that FNC is unable to upload valuation report fields as data to Client's CMS from any Appraisal Form Software Provider that has adopted the AI Ready Standard, provided that the service request is procured and delivered via CMS and AppraisalPort.

(iii)        In the event that an Appraisal Form Software Provider that has currently adopted the AI Ready Standard at the time of this agreement, decides to discontinue the inclusion of an AI Ready Standard version in future software releases, FNC at its cost will convert up to 20 mutually agreed fields from the appraisals of that software provider to data, provided those appraisals are received as first generation PDF files.

(iv)        Client may terminate this agreement upon written notice in the event that a

> major Flood, Credit, or Title services provider that Client either conducts a material portion of its business with or desires to conduct a material portion of its business with does not want to work with FNC Port.
>
> (v) Client may terminate this agreement upon written notice in the event that the service level up time for two consecutive months or three months in a rolling six month period is < 98% during Client's core business hours.

Except for the grounds stated above, Client may not terminate the Agreement during the term of this Agreement. This agreement shall renew automatically for successive six month terms, unless either party gives 60 days advance written notice of its intent to terminate. Termination shall have no effect on the parties' rights or obligations regarding Proprietary Rights, Confidential Information or Injunctive Relief.

## 6. Warranties and Indemnification.

(a) <u>Online content</u>. FNC does not assume any responsibility or liability for content (including, for example, any data, image or information) that is provided by others, including the Client and/or its Providers and transmitted or forwarded by FNC through the FNC Ports, CMS and/or any other medium or process within its control.

FNC, however, in its discretion, may upon notice that Client (including, for example, any of Client's employees, contractors or invitees) or any of Client's Providers have gained unauthorized or unlawful access to, or made any unauthorized or unlawful use of any FNC Port, FNC CMS and/or any other medium or process within its control, may take action to deny access to any such person or entity or seek other remedies, especially to the extent that any such access or use may reflect badly on the reputation or credibility of such Port, CMS or other medium or process.

For purposes of this paragraph, by way of example but not in limitation:

> Unauthorized copying, modification of information or misuse of information shall be considered unauthorized use.
>
> Access to any of the FNC Ports, FNC CMS and/or any other medium or process within FNC's control by an otherwise authorized user who does not have permission to gain access to the portion to which the user has gained access—regardless of motivation—shall be considered unauthorized access.

Client agrees to defend and hold harmless FNC and its subsidiaries, affiliates, related companies, employees, officers, directors and agents for all claims relating to Client and/or its Providers' misuse of content from the Ports. Furthermore, by submitting or posting content there, Client is representing that Client and/or its Providers are authorized to distribute such content or Client and/or its Providers' Product.

(b) <u>Warranties And Limitations Of Liability</u>

CLIENT EXPRESSLY AGREES THAT THE USE OF PORTS, FNC SOFTWARE, THE COLLATERAL MANAGEMENT SYSTEM, AND/OR THE INTERNET, IS AT CLIENT'S SOLE RISK. FNC, FNC SOFTWARE, SYSTEM, PORT, THIRD-PARTY VIRUS CHECKING TECHNOLOGY AND THE INTERNET ARE PROVIDED "AS IS" AND "AS AVAILABLE" FOR USE, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE, FITNESS FOR A PARTICULAR PURPOSE, AND AGAINST INFRINGEMENT UNLESS SUCH WARRANTIES ARE LEGALLY INCAPABLE OF EXCLUSION, AND THEN ONLY TO THE EXTENT OF THAT EXCLUSION. FNC PROVIDES THE PORT SERVICE ON A COMMERCIALLY REASONABLE BASIS.

FNC SPECIFICALLY DISCLAIMS ANY WARRANTY THAT THE PORTS, FNC SOFTWARE, THE COLLATERAL MANAGEMENT SYSTEM, AND/OR THE INTERNET WILL BE ERROR FREE OR WILL OPERATE WITHOUT INTERRUPTION.

FNC'S ENTIRE LIABILITY, AND CLIENT'S EXCLUSIVE REMEDY WITH RESPECT TO ANY DISPUTE WITH FNC SHALL BE THE TERMINATION OF THIS AGREEMENT AND POTENTIAL DAMAGES IN AN AMOUNT LIMITED TO THE INITIAL IMPLEMENTATION FEE PAID, OR THE PREVIOUS THREE MONTHS TRANSACTION FEES, WHICHEVER IS GREATER IN NO CASE SHALL FNC BE LIABLE FOR INDIRECT OR CONSEQUENTIAL DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF PROFIT) ARISING FROM CLIENT AND/OR ITS PROVIDER'S USE OF PORT, OR THE INTERNET OR FOR ANY OTHER CLAIM RELATED IN ANY WAY TO THIS AGREEMENT OR THE SERVICES CONTEMPLATED HEREIN WHETHER OR NOT FNC HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE OR NOT. TO THE EXTENT THAT A STATE OR JURISDICTION DOES NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, AS TO THAT STATE OR JURISDICTION FNC'S LIABILITY SHALL BE LIMITED TO THE FULL EXTENT PERMITTED BY LAW.

FNC DOES NOT ENDORSE, WARRANT OR GUARANTEE ANY PRODUCT OR SERVICE OFFERED THROUGH PORTS AND WILL NOT BE A PARTY TO OR IN ANY WAY BE RESPONSIBLE FOR MONITORING ANY TRANSACTION BETWEEN CLIENT AND/OR ITS PROVIDERS AND CLIENTS OR THIRD-PARTIES.

(c) Indemnification

i. By Client

Client agrees to defend, indemnify and hold harmless FNC and FNC's affiliated subsidiaries, employees, contractors, officers, directors, and telecommunications providers from all liabilities, claims and expenses, including attorneys fees and costs, that arise from a breach of this Agreement by Client, for any claim arising from any malfunction or other disruptions of the FNC

Systems or Ports due to Client's negligence or intentional misconduct, or arising from the content of any of Client and/or its Providers' Products. FNC reserves the right to participate in the defense and control of any matter otherwise subject to indemnification by Client and/or its Providers.

    ii.  By FNC

FNC agrees to defend, indemnify and hold Client and Client's affiliated entities, its officers, directors, contractors and employees harmless from and against losses, claims, demands, expenses, including attorney's fees, made by a third party, directly related to a malfunction or improper operation of FNC Systems or FNC Ports due to FNC's sole negligence or intentional misconduct, except that no indemnification shall be due if the claim relates to the content of the Client and/or its Provider's Products properly delivered by FNC.

## 7.  Authorized and Unauthorized Use.

    a.  Restrictions on Rights With Respect to the CMS or Ports

This grant of access to the CMS or the Ports is subject to the restriction that neither Client nor anyone acting on its behalf or its ostensible authority may copy or decompile, disassemble, decrypt or otherwise reverse engineer (or allow or suffer others to copy or decompile, disassemble, decrypt or otherwise reverse engineer) the FNC or Client's CMS, FNC Ports, the Software, any data or any other software, device or interface or any part thereof (except that Client may maintain for a limited time magnetic or electronic copies of the Software, any data and any installed software in authorized and approved use). Neither shall Client nor anyone acting on its behalf or its ostensible authority make derivative works from the Software or any FNC software. Client may not modify FNC software or use it in any way not expressly authorized by this Agreement.

    b.  Variations in performance

Client understands that FNC's introduction of various technologies may not be consistent across all hardware and software platforms and that the performance and some features offered by FNC software may vary depending on the computer and other equipment that Client has chosen to employ.

    c.  Additional License Provisions

Furthermore, there may be additional terms and conditions attached by FNC to Client's uses of additional FNC software and /or services, or a third-party's software and/or services, that FNC may make available over its web site(s), and Client accepts the terms of any agreement covering additional software or services that Client uses and agrees to comply with the same. FNC will provide the terms of any such agreements to Client upon making the additional services or software available to Client. Client is not, however, required to purchase, license, lease, utilize, or