IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC.,<br>a Delaware corporation, et al.,[1]<br><br>                        Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>**Relates to Docket Nos. 11, 113 & 403**<br><br>**Objection Deadline: September 13, 2007 at 4:00 p.m.**<br>**Sale Hearing: October 1, 2007 at 10:00 a.m.** |

**OBJECTION OF CITIBANK, N.A. TO SALE OF CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS IN CONNECTION WITH EMERGENCY MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Citibank, N.A., solely in its capacity as indenture trustee, trustee, securities administrator, paying agent and registrar, as applicable with respect to the transactions described below ("Citibank"), respectfully submits its objection ("Sale Objection") to the proposed sale (the "Sale") of the Debtors' mortgage loan servicing business (the "Servicing Business") in connection with the Emergency Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors'

---

[1]    The Debtors are the following entities:  American Home Mortgage Holdings, Inc., a Delaware corporation; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (Docket No. 11) (the "Motion").[2] Citibank's principal objections to the Motion are that:

First, at this time there is no Successful Bidder for the Servicing Business. The Debtors have rescheduled the deadline for submission of bids and conduct of the auction of the Servicing Business, without changing the deadline for objections to the Sale, so that this Objection must be, at best, hypothetical. Citibank therefore reserves its right to amend or supplement its objection to any Successful Bidder or to the terms of any proposed Purchase Agreement until a reasonable time after such Successful Bidder or Purchase Agreement is actually identified by the Debtors.

Second, the Debtors are obligated to come forward with a Successful Bidder who meets the stringent requirements of the various servicing agreements, assignment and assumption agreements, and other documents governing the transactions in which Citibank is a participant, and as to whom there is adequate assurance of performance. The Successful Bidder will be

---

[2] Citibank makes this objection pursuant to paragraph 13 of the Court's Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief, entered August 9, 2007 (Docket No. 113) (the "Sale Procedures Order"). Citibank is objecting separately to the potential assignment of the applicable assumed contracts and the Debtors' proposed cure amounts ("Assignment and Proposed Cure Objection") pursuant to paragraph 12 of the Sale Procedures Order concurrently herewith. Capitalized terms not defined herein have the meaning given in the Motion, the Purchase Agreement or the Sale Procedures Order. All references to attached Exhibits relate to the Joint Set Of Exhibits To The Objections Of Citibank, N.A. To: (I) Possible Assumption And Assignment Of Certain Executory Contracts And Proposed Cure Amounts, And (II) Sale Of Certain Assets Used In The Debtors' Loan Servicing Business, Filed September 13, 2007 filed with the Assignment and Proposed Cure Objection.

responsible, among other things, for servicing thousands of loans in the trusts, undertaking substantial responsibilities for the allocation of monies received, and making significant advances. Any inadequacy of the Successful Bidder or any interruption or transitional difficulties in servicing could have significant consequences for the value of trust assets and the income stream from the loans being serviced.

Finally, to the extent applicable herein and as fully set forth in Citibank's Assignment and Proposed Cure Objection, the proposed form of Purchase and Sale Agreement ("Purchase Agreement") proposed by Debtors fails to ensure the Debtors' obligations under the relevant executory contracts will be fully assumed and assigned. Any assumption and assignment of the servicing agreements at issue must result in a complete transfer of the Debtors' obligations and cannot purport to modify the underlying agreements the Debtors seek to assign. As currently drafted, the proposed form of Purchase Agreement attached to the Debtors' Motion transfers only part of the obligations under the servicing agreements. To the extent that the provisions of the Purchase Agreement fail to transfer all of the Debtors' obligations, the Purchase Agreement is defective and Citibank objects to the Sale on those grounds.

For at least these reasons and as detailed below, the Sale and the Purchase Agreement should not be authorized, and the assumption and assignment of executory contracts not be approved, unless and until the Debtors come forward with a fully qualified Successful Bidder and reform the Purchase Agreement to comply with the requirements of the Bankruptcy Code and the agreements proposed to be assumed and assigned.

## BACKGROUND

1.     On August 6, 2007, the Debtors filed for relief under chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101-1532 (as amended).

2.       On August 6, 2007, the Debtors also filed the Motion, requesting court orders to establish notice and sale procedures for the expedited auction of Debtors' Servicing Business, and to approve the assumption and assignment of certain executory contracts and unexpired leases free and clear of all liens, claims, encumbrances and interests pursuant to the Purchase Agreement. *See* Motion ¶¶ 19, 46.

3.       On August 9, 2007, the Court entered the Sale Procedures Order. Among other things, the Sale Procedures Order required Debtors on or before August 27, 2007 to identify the particular contracts they potentially seek to assume and assign, the proposed cure amounts for such contracts and the deadline to object. Sale Procedures Order ¶ 11. The Sale Procedures Order also required that objections to the Sale, or the relief requested in the Motion, be filed on or before 4:00 p.m. on September 13, 2007. *Id.* ¶ 13.

4.       On August 27, 2007, the Debtors filed the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any (Docket No. 403) (the "Notice"). The Notice (¶ 5) asserts that any entity receiving notice of the Sale will be deemed to have consented to the assumption and assignment of the "Potential Executory Contracts and shall be forever barred and estopped from asserting or claiming against the Debtors, the purchaser of the Servicing Business, or any other assignee of the relevant Potential Executory Contract that . . . conditions to assumption and assignment must be satisfied under such Potential Executory Contract."

5.       The Sale Procedures Order set, and the Notice identified, a date for the auction of the assets at issue (the "Auction") of September 10, 2007, an objection deadline of September 13, 2007 and a scheduled Sale Hearing on September 17, 2007. Debtors subsequently filed a notice of rescheduled dates in connection with the Motion on August 31, 2007 (Docket No. 540)

4

(the "Notice of Rescheduled Dates"). The Notice of Rescheduled Dates extended the deadline to submit bids for the Auction to September 18, 2007, reset the Auction date for September 24, 2007 and adjourned the Sale Hearing date to October 1, 2007. Notice of Rescheduled Dates at 2-3. The deadline for this Objection, however, was not changed. In addition to extending its own deadlines to find a bidder for Debtors' Servicing Business while leaving the accelerated objection deadlines in place, the Debtors also purport to reserve the right to enter into a stalking horse bid and ask for additional bid protections or amended sale procedures. *Id.* at 3.

6.      In consequence of Debtors' scheduling choices, Citibank in its various capacities is forced to submit this Objection without knowing the identity of the Successful Bidder, or which agreements are subject to assumption or the final terms of the Purchase Agreement. Those items are critical here, where the ability of a proposed purchaser to carry out the obligations of the Debtors is critical to protecting the interests of holders in the various trusts of which Citibank is a party. In effect, the Debtors' position is that objections should be filed before interested parties have any clue as to what course of action the Debtors may take.

### THE SERVICING AGREEMENTS

7.      Citibank serves in a variety of capacities in connection with the Servicing Agreements. In particular, Citibank is identified as an Indenture Trustee, Trustee or Assignee and serves as trustee for the following trusts (individually and collectively the "Servicing Trusts") relating to the Servicing Agreements:

(i)      American Home Mortgage Investment Trust 2004-3, Mortgage-Backed Notes ("AHMIT 2004-3");

(ii)      American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-3 ("AHMA 2006-3");

(iii)      American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-4 ("AHMA 2006-4");

(iv)    GSR Mortgage Loan Trust 2006-AR2, Mortgage Pass-Through Certificates, Series 2006-AR2 ("GSR 2006-AR2"); and

(v)     Structured Asset Mortgage Investments II Inc., Mortgage Pass-Through Certificates, Series 2007-AR1 ("SAMI 2007-AR1").

8.      As trustee or indenture trustee, Citibank possesses rights to enforce the Debtors' obligations, representations and warranties under these agreements and other related agreements for the benefit of each trust's holders.

9.      In addition, Citibank serves as a securities administrator in connection with two additional trusts (the "HALO Trusts"; and, together with the "Servicing Trusts," the "Trusts"):

(i)     HSI Asset Loan Obligation Trust, Series 2007-AR1 ("HALO 2007-AR1"); and

(ii)    HSI Asset Loan Obligation Trust, Series 2007-1 ("HALO 2007-1")

Citibank in its capacity as securities administrator has an interest in the Debtors' compliance with its obligations under the agreements governing these trusts.

10.    According to the Exhibit A to the Notice, the agreements relating to the Trusts that the Debtors propose potentially to assume and assign are:[3]

| Trust | Document | Citibank Role | Debtor and Affiliate Participants & Roles in Transactions |
|---|---|---|---|
| AHMIT 2004-3 | Servicing Agreement dated as of September 29, 2004 among American Home Mortgage Servicing, Inc. ("AHM Servicing"), as Master Servicer, American Home Mortgage Investment Trust 2004-3 (the "AHMIT 2004-3 Trust"), as Issuer and Citibank, N.A. ("Citibank"), as Indenture Trustee (the "AHMIT 2004-3 Servicing Agreement") (Ex. 3) | Indenture Trustee Paying Agent Registrar | AHM Servicing – Master Servicer<br><br>American Home Mortgage Acceptance, Inc. – Seller[4] |
| AHMA 2006-3 | Servicing Agreement dated as of July 28, 2006 among Wells Fargo Bank, N.A, ("Wells Fargo"), as Master Servicer, Citibank, as Trustee, American Home Mortgage Corp. ("AHM Corp."), as Sponsor and AHM Servicing, as Servicer (the "AHMA 2006-3 Servicing Agreement") (Ex. 5) | Trustee Paying Agent Registrar | AHM Corp. – Sponsor<br><br>AHM Servicing – Servicer<br><br>AHM Assets LLC – Company; Purchaser; Depositor |

---

[3]    The seven agreements that Debtors identify (individually and collectively, the "Servicing Agreements") are titled either "Servicing Agreements" or "Assignment, Assumption and Recognition Agreements" and are listed as identified in Debtors' Notice on Exhibit 1 attached hereto. A "Servicing Agreement" provides for the terms on which a mortgage servicing entity services a particular pool of mortgage loans. An "Assignment, Assumption and Recognition Agreement" transfers the rights and obligations to an underlying servicing agreement in connection with the set of mortgage loans purchased by the assignor and transferred to the assignee (for the benefit of a trust and to enforce the Servicer's duties to the underlying servicing agreement). The Servicing Agreements relating to the Trusts that the Debtors seek to assume and assign, along with relevant excerpts of related agreements under the Trusts, are Exhibits 3-20.

[4]    American Home Mortgage Acceptance, Inc. is not a party to the AHMIT 2004-3 Servicing Agreement, but in its capacity as Seller is subject to obligations to repurchase mortgages in certain circumstances under the Mortgage Loan Purchase Agreement (the "MLPA") relating to this Servicing Trust. As Indenture Trustee, Citibank is entitled under documents related to the Servicing Agreement to enforce the obligations of the Seller under the MLPA, including without limitation providing a complete mortgage file void of material deficiencies and ensuring that its representations and warranties are true and accurate. Exception reports indicate there are document deficiencies under this Servicing Trust suggesting that these repurchase obligations could be substantial.

| Trust | Document | Citibank Role | Debtor and Affiliate Participants & Roles in Transactions |
|---|---|---|---|
| AHMA 2006-4 | Servicing Agreement dated as of August 30, 2006 among Wells Fargo, as Master Servicer, Citibank, as Trustee, AHM Corp., as Sponsor, and AHM Servicing, as Servicer (the "AHMA 2006-4 Servicing Agreement") (Ex. 7) | Trustee<br>Paying Agent<br>Registrar | AHM Corp. – Sponsor<br><br>AHM Servicing – Servicer<br><br>AHM Assets LLC – Company; Purchaser; Depositor |
| GSR 2006-AR2 | Assignment, Assumption and Recognition Agreement dated as of April 1, 2006 among GS Mortgage Securities Corp., as Assignor, Citibank (as Trustee), as Assignee, AHM Servicing, as Servicer, and AHM Corp., as Seller, and as acknowledged by Wells Fargo, as Master Servicer (the "GSR 2006-AR2 AAR Agreement") (Ex. 9) | Trustee | AHM Corp. – Seller<br><br>AHM Servicing – Servicer |
| SAMI 2007-AR1 | Assignment, Assumption and Recognition Agreement dated as of January 31, 2007 among EMC Mortgage Corporation, as Assignor, Citibank (as Trustee), as Assignee, AHM Corp., as Company, and AHM Servicing, as Servicer (the "SAMI 2007-AR1 AAR Agreement") (Ex. 12) | Trustee | AHM Corp. – Company<br><br>AHM Servicing – Servicer |
| HALO 2007-AR1 | Assignment, Assumption and Recognition Agreement dated as of January 1, 2007 among HSBC Bank, N.A. ("HSBC"), as Assignor, HSI Asset Securitization Corp. ("HSI"), as Assignee, CitiMortgage, Inc. ("CitiMortgage"), as Master Servicer, Deutsche Bank National Trust Company ("DBNTC"), as Trustee, AHM Corp., as Company, and AHM Servicing, as Servicer (the "HALO 2007-AR1 AAR Agreement") (Ex. 15) | Securities Administrator | AHM Corp. – Company<br><br>AHM Servicing – Servicer |
| HALO 2007-1 | Assignment, Assumption and Recognition Agreement dated as of May 1, 2007 among HSBC, as Assignor, HSI, as Assignee, CitiMortgage, as Master Servicer, DBNTC, as Trustee, AHM Corp., as Company, and AHM Servicing, as Servicer (the "HALO 2007-1 AAR Agreement") (Ex. 18) | Securities Administrator | AHM Corp. – Company<br><br>AHM Servicing – Servicer |

11.     With respect to each of these agreements the Debtors have set forth in the Notice the proposed cure amount as "$0.00".

12.     Although the parties sometimes act in different capacities under the various Servicing Agreements relating to each Trust, all of the Servicing Agreements impose important obligations on American Home Mortgage Servicing, Inc. ("AHM Servicing"), the entity responsible for servicing under these Servicing Agreements.  In addition, obligations of certain of the other Debtors relating to the Trusts are contained in related documents, and the rights to enforce these obligations are incorporated by reference under certain of the Servicing Agreements.

13.     More specifically, certain of the Debtors or their affiliates are parties to the transaction documents relating to the Trusts, identified as "Sponsor," "Seller," "Company," "Purchaser" or "Depositor" (e.g., AHM Corp. is identified as the "Company" and/or the "Sponsor" and American Home Mortgage Acceptance, Inc. as "Seller" under certain of the agreements).  Under these related agreements, a "Sponsor" or "Seller" is the originator of the mortgage loans and initiates a securitization transaction by selecting the portfolio of mortgage loans to be securitized and transferring those loans to a securitization depositor.  The securitization depositor is identified as "Company," "Purchaser" or "Depositor."  It acquires the mortgage loans from the originator and then sells the loans to the securitization trust.

14.     Thus, here the Trusts hold all right, title and interest to separate pools of mortgage loans under the Servicing Agreements or other related documents.  The Trusts then issue securities (i.e., notes or certificates) to investing holders paying principal and interest from the income stream generated and secured by the pool of mortgage loans owned by the Trust and serviced by AHM Servicing.  The holders of the notes or certificates thus effectively rely on

AHM Servicing to comply with its responsibilities as servicer to manage the collateral in order to receive payment. Citibank, in its capacity as trustee for the Servicing Trusts, is thus entitled to enforce the Debtors' obligations under the Servicing Agreements.

15.     Data on the outstanding loans and remaining principal balance of the loans to be paid in connection with the Trusts obtained from holder reports distributed in August 2007 (as detailed on the attached Exhibit 2) show that there are over 15,000 loans remaining in the Trusts with an outstanding aggregate principal loan balance of over $5.6 billion dollars.

16.     Under each Servicing Agreement, AHM Servicing agrees (as "Servicer" or "Master Servicer") to perform myriad tasks related to servicing the large pools of mortgage loans deposited into the Trusts for the benefit of the holders (as described in this paragraph 16, the "Servicing Obligations"). Specifically, AHM Servicing is obligated to:

(1)     advance funds to pay taxes and assessments on the entire pool of mortgage loans, and to cover any shortfalls from delinquent payments;

(2)     enforce all of the terms and conditions of the mortgage loans including foreclosure where necessary;

(3)     execute, deliver and record the necessary documents with respect to the satisfaction and discharge of mortgages;

(4)     coordinate and monitor mortgage loan remittances from mortgagors, segregating such funds and avoiding any commingling of funds (for example, between Servicing Trusts relating to separate pools of mortgage loans, or with any of the Debtors' own assets);

(5)     maintain proper levels of coverage on hazard insurance, fidelity bond and errors and omissions insurance policies;

(6)     supervise any and all subservicers that it may contract with, remaining obligated and liable for its own conduct or the conduct of any subservicers;

(7)     provide accurate monthly loan data, monthly remittance advances, reports on defaulted mortgage loans and any necessary supporting documentation, as applicable, so that the trustee and holders can stay abreast of monthly securities distributions; and

(8)    comply with indemnification obligations covering all liability, loss, cost and expense arising from or related to breaches of the Servicing Agreements or reporting obligations – including legal fees and other costs relating to any transfer of AHM Servicing's obligations to a successor servicer.

17.    In addition to these Servicing Obligations, particular features of each deal impose additional obligations and create additional matters to consider regarding AHM Servicing and certain of the other Debtors prior to the potential assumption of the Servicing Agreements.

### AHMIT 2004-3

18.    AHM Servicing is the Master Servicer of AHMIT 2004-3.  Under the Servicing Agreement relating to AHMIT 2004-3 (Ex. 3) Citibank serves as the Indenture Trustee, Paying Agent and Registrar, and is the designated "backup servicer."  That is, in the event of certain defaults by AHM Servicing, Citibank may, in its sole discretion and subject to the terms of the transaction documents, succeed to certain of the duties of AHM Servicing.  Citibank thus has an additional interest in the proper performance of AHM Servicing's duties under the AHMIT 2004-3 Servicing Agreement, which generally include all of the Servicing Obligations.

19.    Due to the potentially expanded role of Citibank on AHMIT 2004-3, Section 5.02 of the AHMIT 2004-3 Servicing Agreement requires that any successor to AHM Servicing must be "reasonably satisfactory" to it, and must specifically assume the "due and punctual performance of each covenant and condition to be performed or observed by [AHM Servicing] under this Servicing Agreement."  Thus, any successor purchaser of the AHMIT 2004-3 Servicing Agreement must assume each and every obligation of AHM Servicing.

20.    Further, there are broad indemnification rights granted to Citibank under the AHMIT 2004-3 Servicing Agreement, including without limitation expenses of any kind and legal fees resulting from these proceedings.  AHMIT 2004-3 Servicing Agr. (Ex. 3) § 4.06(d). Among other things, the Purchase Agreement must ensure that these indemnification obligations

(both here and under all of the Servicing Agreements) are transferred to any successor servicer.

### AHMA 2006-3 / AHMA 2006-4

21.    Under the Servicing Agreements relating to AHMA 2006-3 and AHMA 2006-4 (which are essentially identical), Citibank acts as Trustee, Paying Agent, and Registrar, and has a broad right to indemnification by AHM Servicing for its fees and expenses in the same manner as AHMIT 2004-3, including without limitation legal fees resulting from these proceedings. AHMA 2006-3 / AHMA 2006-4 Servicing Agr. (Exs. 5, 7) § 5.06. Further, as Trustee Citibank has the right to enforce the Servicing Obligations in accordance with the terms of the applicable Servicing Agreements.[5]

### GSR 2006-AR2

22.    Under the Servicing Agreement relating to GSR 2006-AR2 (Ex. 9), Citibank is the Assignee of all right, title and interest to the mortgage loans deposited in the Servicing Trust and certain rights under the underlying Mortgage Loan Sale and Servicing Agreement dated as of December 1, 2005 (Ex. 10) for the benefit of the holders and Citibank as trustee.  This includes without limitation the right to enforce certain breaches of representations, warranties and covenants of both AHM Servicing (as the Servicer) and AHM Corp. (as the Seller) made in that agreement.  GSR 2006-AR2 AAR Agr. (Ex. 9) ¶ 1.  Breaches of any of the obligations to which Citibank is assigned the right to enforce constitute a default which must be cured prior to the assumption of this Servicing Agreement.

23.    In particular, breaches of the underlying representations and warranties, including

---

[5]    Wells Fargo, N.A. ("Wells Fargo") acts as "Master Servicer" for these securitization trusts.  AHM Servicing in AHMA 2006-3 and AHMA 2006-4 has similar obligations to obtain Wells Fargo's approval in the event of the assignment of the servicing agreements to successor servicer, and any successor must meet the qualifications set out under the applicable Servicing Agreements.

for failure to deliver a complete file of mortgage loan documentation, can result in substantial repurchase obligations of AHM Corp. and AHM Servicing – and both AHM Corp. and AHM Servicing acknowledge Citibank's rights to enforce such obligations. *Id.*; *see also* Ex. 10 § 7.03 (setting forth remedies for breach of the representations and warranties). Citibank believes that there are numerous deficiencies in the mortgage loan files for these transactions and thus potentially a substantial repurchase obligation.

24.     Further, the Servicing Agreement relating to GSR 2006-AR2 includes certain representations and warranties made by both AHM Servicing (as the Servicer) and AHM Corp. (as the Seller) for the benefit of the holders and Citibank as trustee. GSR 2006-AR2 AAR Agr. (Ex. 9) ¶¶ 2-3 (relating to truthfulness of underlying representations and the servicing of the mortgage loans). Breaches of these representations and warranties constitute a default which must be cured prior to the assumption of this Servicing Agreement. Finally, AHM Servicing also agrees under this Servicing Agreement to perform the Servicing Obligations as generally stated above. *See id.* ¶ 3(b).[6]

**SAMI 2007-AR1**

25.     Under the Servicing Agreement relating to SAMI 2007-AR1 (Ex. 12), Citibank is the Assignee of all right, title and interest to the mortgage loans deposited in the Servicing Trust and to certain obligations of AHM Servicing (as the Servicer) and AHM Corp. (as the Company) made under the underlying Purchase, Warranties and Servicing Agreement dated as of March 1,

---

[6]     In addition, Wells Fargo is the Master Servicer in this structure and AHM Servicing is the Servicer. AHM Servicing in GSR 2006-AR2 acknowledges Wells Fargo's right to enforce all of AHM Servicing's obligations under the underlying agreement for the benefit of the holders and Citibank as trustee. This right includes without limitation "the right to exercise certain rights of consent and approval relating to actions taken by the Servicer," prior to transfer of the Servicer's responsibilities and indemnification obligations to a successor Servicer. GSR 2006-AR2 AAR Agr. (Ex. 9) ¶ 3(b). In addition, any proposed successor Servicer must meet the qualifications set forth in the relevant documents.

2006, *see* Ex. 13, for the benefit of the holders and Citibank as trustee.  SAMI 2007-AR1 Servicing Agr. at 1.  Breaches of any of the obligations to which Citibank is assigned the right to enforce constitute a default which must be cured prior to the assumption of this Servicing Agreement.

26.    Further, the Servicing Agreement relating to SAMI 2007-AR1 includes certain representations and warranties made by both AHM Servicing (as the Servicer) and AHM Corp. (as the Company) for the benefit of the holders and Citibank as trustee.  *Id.* ¶ 3 (for example, to the truthfulness of underlying representations regarding the mortgage loans).  Breaches of these representations and warranties constitute a default which must be cured prior to the assumption of this Servicing Agreement.  These representations and warranties are also in addition to AHM Servicing's agreement to service the mortgage loans generally according to the Servicing Obligations stated above.  *See id.* ¶ 6.

27.    Moreover, both the Company and the Servicer have agreed not to "amend, modify, waive, or otherwise alter any of the terms or provisions of the Purchase Agreement" relating to the pool of mortgage loans in this Servicing Trust without obtaining the prior written consent of Citibank as Assignee.  *Id.*  This includes without limitation all of the representations and warranties related to the maintenance of a complete set of mortgage loan files and other related obligations, and attempts to waive or modify such obligations would constitute a breach.[7]

**HALO 2007-AR1 / HALO 2007-1**

28.    Finally, Citibank acts as a securities administrator for the HALO 2007-AR1 and

---

[7]    Wells Fargo is the Master Servicer in this structure and AHM Servicing is the Servicer.  Wells Fargo has the right to enforce all of AHM Servicing's obligations under the underlying agreement for the benefit of the holders and Citibank as trustee.  SAMI 2007-AR1 AAR Agr. (Ex. 12) ¶ 10.  This includes without limitation the transfer of the Servicer's responsibilities and indemnification obligations to a successor Servicer.  *Id.*  In addition, any proposed successor Servicer must meet the qualifications set forth in the relevant documents.

HALO 2007-1 Trusts. As securities administrator, payments are remitted to Citibank by the Master Servicer, which receives such funds from AHM Servicing. Citibank then forwards distributions to the holders to these trusts, and is entitled to (and hereby does) reserve all of its rights to ensure that the Debtors perform all of their obligations under the Servicing Agreements for these two trusts, including without limitation all of their obligations to the Trustee and Master Servicer, as defined under the Servicing Agreements.[8]

## OBJECTIONS

**A.     The Debtors Have Failed To Identify The Successful Bidder
Or The Terms Of The Purchase Agreement**

29.     By changing the schedule for the deadline to submit bids for the Auction to September 18, 2007 and resetting the Auction date for September 24, 2007 – all after the deadline for submission of this Sale Objection, the Debtors have made it literally impossible for Citibank (and other objectors) to identify deficiencies in the qualifications of any proposed Purchaser or any specifics of a proposed sale. This Objection will of necessity focus on the general qualifications required of successors to AHM Servicing under the relevant documents, conditions precedent to succession, and deficiencies of the proposed Purchase Agreement (recognizing that the Purchase Agreement proposed by a potential Purchaser may be substantially different from that put forward by Debtors in the Motion).

**B.     The Qualifications Of Any Assignee Are Unknown**

30.     Because the servicer's duties are broad and require substantial capitalization, the agreements governing each of the Trusts provide stringent qualifications for successors to AHM Servicing.

---

[8]     Wells Fargo serves as Master Servicer for these Trusts. The Debtors' responsibilities to the Master Servicer are similar to those outlined above.

31.     Section 5.02 of the AHMIT 2004-3 Servicing Agreement (emphasis added)

provides that AHM Servicing may only assign its rights:

> [P]rovided, that the Person accepting such assignment...shall be a Person which is qualified to service mortgage loans on behalf of Fannie Mae or Freddie Mac, is reasonably satisfactory to the Indenture Trustee...is willing to service the Mortgage Loans and **executes and delivers to the Indenture Trustee...an agreement, in form and substance reasonably satisfactory to the Indenture Trustee...which contains an assumption by such Person of the due and punctual performance and observance of each covenant and condition to be performed or observed by the Master Servicer under this Servicing Agreement,** provided further, that each Rating Agency's rating of the applicable Notes in effect immediately prior to such assignment and delegation will not be qualified, reduced, or withdrawn as a result of such assignment and delegation (as evidenced by a letter to such effect from each Rating Agency) or considered to be below investment grade.

32.     The proposed Purchaser must therefore meet certain qualifications *and* satisfy the

condition precedent of delivery of an agreement to Citibank under which it assumes the full

performance of the Master Servicer under the AHMIT 2004-3 Servicing Agreement.  Further,

the requirement of no decrease in rating of the certificates of the Trust must also be met.  Of

course, there is no proposed Purchaser as yet, nor is there any indication that Debtors or the

proposed Purchaser intend to satisfy the conditions precedent to assignment.  Indeed, given the

deficiencies in the Purchase Agreement, it appears that Debtors do not intend that the ultimate

Purchaser will in fact "assume . . . the due and punctual performance and observance of each

covenant and condition to be performed or observed by the [AHM Servicing] under this

Servicing Agreement."  AHMIT 2004-3 Servicing Agr. (Ex. 3) § 5.02.

33.     The AHMA 2006-3 and AHMA 2006-4 Servicing Agreements contain a similar

provision:

> The Servicer [AHM Servicing] may assign its rights . . . under this Servicing Agreement; provided, that the Person accepting such

16

assignment...shall be a Person which is qualified to service mortgage loans on behalf of Fannie Mae or Freddie Mac, and . . . is reasonably satisfactory to the Master Servicer, is willing to service the Mortgage Loans and executes and delivers to the Master Servicer, the Depositor and the Trustee . . . an agreement, in form and substance reasonably satisfactory to the Master Servicer, which contains an assumption by such Person of the due and punctual performance and observance of each covenant and condition to be performed or observed by the Servicer under this Servicing Agreement, provided further, that each Rating Agency's rating of the applicable Certificates in effect immediately prior to such assignment and delegation will not be qualified, reduced, or withdrawn as a result of such assignment and delegation (as evidenced by a letter to such effect from each Rating Agency) or considered to be below investment grade.

AHMA 2006-3 / AHMA 2006-4 Servicing Agr. (Exs. 5, 7) § 5.02.

34.    With respect to the GSR 2006-AR2 AAR Agreement, Section 12.02 of the Mortgage Loan Sale and Servicing Agreement dated as of December 1, 2005, *see* Ex. 10, to which Citibank (as Trustee) is a party as Assignee of GS Mortgage Securities Corp. under the GSR 2006-AR2 AAR Agreement, provides that:

[A]ny Person succeeding to the business of . . . the Servicer hereunder . . . shall be an institution whose deposits are insured by FDIC or a company whose business is the origination and servicing of mortgage loans, unless otherwise consented to by [Citibank as Trustee], which consent shall not be unreasonably withheld, and shall be qualified to service mortgage loans on behalf of Fannie Mae or Freddie Mac.

35.    With respect to the HALO 2007-AR1 and HALO 2007-1 Trusts, Citibank observes that a successor Servicer must be an entity with a net worth of at least $25,000,000 and must deliver to the Depositor, the Master Servicer and the Trustee an agreement accepting the delegation and assignment of AHM Servicing's "rights, powers, duties, responsibilities, obligations and liabilities, with like effect as if originally named as a party to such Servicing Agreement." In addition, the appointment of the successor servicer will not qualify or reduce the ratings of the certificates.

36.     It is evident that Debtors must identify a properly qualified Purchaser and must meet specific conditions precedent before the Sale can proceed.  Citibank objects to the Sale to the extent the Debtors fail to do so.

**C.     The Purchase Agreement Is Deficient**

37.     As set forth in more detail in the Assignment and Proposed Cure Objection, which is incorporated herein by reference, the Purchase Agreement proposed by the Debtors is deficient on a number of grounds.

38.     The Debtors have not disclosed which of the servicing related agreements that they have identified as possible subjects of the Purchase Agreement are in fact proposed to be assumed by a Successful Bidder/Purchaser.  The Successful Bidder should not be permitted to inappropriately "cherry pick" the agreements it will purchase, potentially leaving holders of disfavored trusts "in the lurch."

39.     The Purchaser may seek to argue that the Purchase Agreement as presently constituted does not require it to undertake duties with respect to loans that are in default prior to the Closing Date.  As a result, defaulted loans – which may represent a significant part of the portfolios of each of the Servicing Trusts – may be neglected to the detriment of the holders of those Trusts.  Assignment & Proposed Cure Obj. ¶ 36.

40.     Additional concerns with the Purchase Agreement as presently constituted are set out in more detail in paragraphs 33 – 37 of Citibank's Assignment and Proposed Cure Objection.

**D.     Adequate Assurance Of Future Performance Has Not Been Provided**

41.     Bankruptcy Code Section 365(f)(2) provides that an executory contract may be assigned only if it has first been properly assumed (that is, including by cure of defaults) and if "adequate assurance of future performance by the assignee of such contract . . . is provided, whether or not there has been a default in such contract."  11 U.S.C. § 365(f)(2) (2007).

42.    As the Third Circuit reiterated in August: "Congress has suggested that the modification of a contracting party's rights is not to be taken lightly. Rather, a bankruptcy court must be sensitive to the rights of the non-debtor contracting party and the policy requiring that the non-debtor receive the full benefit of his or her bargain." *In re Fleming Cos., Inc.*, 2007 U.S. App. LEXIS 19927 (3d Cir. Aug. 22, 2007), at *11-12 (internal quotation marks and alterations omitted) (affirming finding of no adequate assurance). Contract terms that are "material and economically significant" are subject to the adequate assurances analysis. *Id.* at *12-13. Materiality and economic significance are viewed within the context of the parties' bargain; "whether the term is integral to the bargain struck between parties (its materiality) and whether performance of that term gives a party the full benefit of his bargain." *Id.* at *15.

43.    Two aspects of the "adequate assurances" analysis will be relevant here. First, whether the Debtors and any ultimate proposed Purchaser are, in fact, adopting the relevant agreements in their entirety. Debtors in assuming and assigning contracts may not "cherry pick" them, accepting only the provisions that benefit while rejecting terms that do not suit their purposes. As the Third Circuit reiterated in *In re Fleming Cos.*:

> Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder. The debtor may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other. The *cum onere* rule prevents the bankruptcy estate from avoiding obligations that are an integral part of an assumed agreement.

*Id.* at *20 (internal quotation marks, citations and alterations omitted). As the court stated: "'[a]n assignment is intended to change only who performs an obligation, not the obligation to be performed.'" *Id.* at *21 (alteration in original) (quoting *Medtronic Ave. Inc. v. Adv. Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001).

44.    As set forth in more detail in Citibank's Assignment and Proposed Cure

Objection, the proposed Purchase Agreement impermissibly alters the Debtors' obligations under the assumed contracts. Assignment & Proposed Cure Obj. ¶¶ 33-37. Further, the version of the Purchase Agreement ultimately proffered by the Debtors and proposed Purchaser may seek to vary the Purchaser's obligations, and Citibank therefore reserves its rights to amend or supplement this Objection on that basis.

45.    The adequacy of the Purchaser to perform all of the obligations of the Servicer will also be at issue. As one court stated: "What constitutes adequate assurances of performance depends upon the factual conditions present, and must be determined on a case by case basis. The Court finds that in this instance . . . adequate assurance of performance does not rest alone on the ability of the assignee to pay rent." *Fulton Air Serv., Inc. v. Fulton County (In re Fulton Air Serv., Inc.)*, 34 B.R. 568, 573 (Bankr. N.D. Ga. 1983) (internal citation omitted) (requiring evidentiary hearing on adequacy of proposed assignee).

46.    The Servicer's duties set out in paragraph 16 require substantial skill, organizational capacity and economic wherewithal. The transition from AHM Servicing to the Purchaser must be executed flawlessly to avoid disruptions in servicing the mortgage loans in the Trusts that would lower their value and threaten the Trusts' ability to pay their holders. As a result, the Purchaser must demonstrate not just that it meets the minimum contractual requisites for transfer in the Servicing Agreements at issue but that it possesses the substantial operational and financial resources needed to assume simultaneously the vast array of agreements contemplated by the Debtors and not be overwhelmed by the overall number of loans and securitizations that are anticipated to be assumed. Citibank should at the very least be afforded the opportunity for due inquiry into the qualifications of any Purchaser ultimately proposed by Debtors.

## RESERVATION OF RIGHTS

47.    Citibank reserves the right to amend or supplement this Objection, to raise additional objections to the sale, sale order, identity of the purchaser, new bid protections, stalking horse bidder, sale procedures, any changes to the sale procedures or any proposed cure amounts, including without limitation all of its rights under the Servicing Agreements and related documents or any other agreements that Debtors have or will identify prior to or at the hearing on the Motion presently scheduled to be held on October 1, 2007.  Citibank further reserves the right to investigate the qualifications of any proposed stalking horse bidder, Successful Bidder or Next Highest Bidder to determine whether such parties meet the qualifications required by the relevant documents, all other conditions precedent to assignment in those documents are satisfied and the parties can demonstrate adequate assurance of future performance.

**CONCLUSION**

For the reasons set forth above, Citibank respectfully requests that this Court deny Debtors' Motion as it relates to the Servicing Agreements and grant Citibank such other and further relief as may be just and appropriate.

Dated:    New York, New York
          September 13, 2007

        COZEN O'CONNOR

        By: _____
           John T. Carroll, III (DE 4060)
        Suite 1400, Chase Manhattan Centre
        1201 North Market Street
        Wilmington, Delaware 19801
        (302) 295-2000

           and

        SEWARD & KISSEL, LLP
           Ronald L. Cohen
           Arlene R. Alves
        One Battery Park Plaza
        New York, New York 10004
        (212) 574-1200

        *Attorneys for Citibank, N.A., solely in its capacities as Indenture Trustee, Trustee, Securities Administrator, Paying Agent and Registrar*

SK 01463 0255 808574 v5