IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           ) Chapter 11
                                                                 )
AMERICAN HOME MORTGAGE                                           ) Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, et. al.                  ) Jointly Administered
                                                                 )
                                                                 ) Objection Deadline : September 13, 2007 at 4:00 p.m
                                                                 ) Hearing Date: September 17, 2007 at 11:00 am
                           Debtors.                              ) Related Docket Nos. 11, 113, 403 and 674
---------------------------------------------------------------- x

## OBJECTION OF BEAR STEARNS MORTGAGE CAPITAL CORPORATION AND EMC MORTGAGE CORPORATION TO THE EMERGENCY MOTION OF THE DEBTORS FOR AN ORDER: (I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF

Bear Stearns Mortgage Capital Corporation ("BSMCC") and EMC Mortgage Corporation ("EMC"), by their undersigned attorneys, hereby submit this objection (the "Objection") to the (i) Motion of the above captioned debtors (the "Debtors") pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") for entry of an order authorizing, among other things, the sale of the Debtors' mortgage loan serving business (the "Servicing Business") free and clear of liens, claims, encumbrances, and other interests filed on August 6, 2007 [Docket No. 11] (the "Motion"), and (ii) notice of proposed cure amounts filed on September 10, 2007 [Docket No. 674] (the "Cure Notice"), and in support of the Objection, respectfully represent as follows:

## PRELIMINARY STATEMENT

The Court must now step in and stop the efforts of these runaway Debtors to trample the ownership rights of BSMCC and EMC – as well as a host of other parties similarly situated – in their property and bargained for rights as a party to a protected repurchase agreement under section 559 of the Bankruptcy Code. Simply put, by their Motion, the Debtors seek to assume and assign certain servicing rights that do not belong to them as a result BSMCC's lawful closeout under the underlying repurchase agreement pursuant to section 559 and to assume such agreement which is incapable of assumption by virtue of its termination in accordance with section 559. To add insult to injury, while this Motion is pending, the Debtors have withheld collection payments from BSMCC and EMC which should have been flowing to them under their contractual rights.

These acts are simply not permitted under the Bankruptcy Code and non-bankruptcy law. The Debtors' request for approval of the Motion puts this Court at odds with the clear and unambiguous language of section 559 that restricts this Court from entering any order that will interfere with the rights of a repo participant. Congress clearly did not contemplate that a debtor can commandeer the auspices of the Bankruptcy Court to violate the property and protected repurchase agreement rights of a third party.

Having received no cooperation from the Debtors to amicably resolve their dispute, BSMCC and EMC commenced an adversary proceeding in order to protect their interest and compel the return of their property. Yet, even in the face of a formal complaint – as well as similar complaints from several other parties – the Debtors have refused to alter their sale strategy and have ignored the property rights of those who dispute that the Debtors have actual title in what they seek to sell. Accordingly, the Motion must be denied or alternatively, the

2

Motion should be deferred until a full and final resolution can be made with respect to true title of the assets in question.

## BACKGROUND[1]

1.      On June 23, 2004, BSMCC, as buyer, entered into that certain Whole Loan Master Repurchase Agreement (as amended, modified and supplemented from time to time, the "Repurchase Agreement") with American Home Mortgage Acceptance, Inc., as seller ("AHMA"). Pursuant to the Repurchase Agreement, BSMCC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMA. Additionally, on June 23, 2004, BSMCC and AHMA entered into a Custody Agreement, together with Deutsche Bank National Trust Company (the "Custodian"), in which the Custodian agreed to act as custodian for BSMCC and AHMA of all notes, mortgages and other documents related to the Purchased Mortgage Loans. The Repurchase Agreement and Custody Agreement were subsequently amended on November 22, 2004 and August 29, 2005, to add American Home Mortgage Investment Corp. ("AHMI") and American Home Mortgage Corp. ("AHMC", and together with AHMA and AHMI, the "Debtor Sellers") as parties to the Repurchase Agreement and to provide that the Debtor Sellers are jointly and severally liable for the obligations under the agreements.

2.      Pursuant to the Repurchase Agreement, BSMCC purchased the Purchased Mortgage Loans from the Debtor Sellers and the Debtor Sellers agreed to repurchase the Purchased Mortgage Loans in the future on demand at a price in excess of what BSMCC paid for the Purchased Mortgage Loans. As of July 30, 2007, BSMCC owned Purchased Mortgage Loans in an amount exceeding $117,000,000. Pursuant to the Repurchase Agreement, it was the

---

[1] The full factual history of the transaction and the relevant events related thereto and a summary of the operative provisions of the Repurchase Agreement and related agreements are contained in the Complaint (as defined herein).

intent of the parties that the transfers of the Purchased Mortgage Loans constituted purchases and sales of Purchased Mortgage Loans.

3. The Repurchase Agreement also provides that until and unless there was an Event of Default under the Repurchase Agreement, the Debtor Sellers would cause the Purchased Mortgage Loans to be serviced for the benefit of BSMCC.[2] Upon information and belief, AHMS performed and continues to perform servicing with respect to the Purchased Mortgage Loans.

4. On August 2, 2007, in accordance with Paragraph 11(b) of the Repurchase Agreement, BSMCC delivered a notice of default to AHMA resulting from AHMA's failure to meet a margin call under the Repurchase Agreement. AHMA's failure to timely meet the margin call constituted an Event of Default (as such term is defined in the Repurchase Agreement) pursuant to Paragraph 11(a)(ii) of the Repurchase Agreement.

5. Upon such notice, pursuant to Paragraph 11(c) of the Repurchase Agreement, the Debtor Sellers were required, among other obligations, to "immediately deliver or cause the Custodian to deliver to [BSMCC] any documents relating to the Purchased Mortgage Loans subject to such Transactions then in Seller's possession." Paragraph 11(c) also required the Debtor Sellers to remit all such funds thereafter received in connection with the Purchased Mortgage Loans to BSMCC.

6. On August 6, 2007 (the "Petition Date"), each of the Debtors (which included the Debtor Sellers) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. As provided in Paragraph 11(a)(iii), the Debtors' chapter 11 filing constituted an additional Event of Default under the Repurchase Agreement.

---

[2] Servicing involves, among other things, collecting principal and interest payments and other income and amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection process.

7.  On August 6, 2007, BSMCC exercised its remedies under the Repurchase Agreement and conducted an auction of the Purchased Mortgage Loans. The Purchased Mortgage Loans were sold on August 10, 2007 to EMC, a Bear Stearns affiliate, on a servicing released basis, which means that BSMCC sold all rights relating to the Purchased Mortgage Loans, including the servicing rights.[3]

8.  On August 13, 2007, BSMCC sent AHMA a letter (i) notifying the Debtor Sellers of the sale of the Purchased Mortgage Loans and (ii) requesting that the Debtor Sellers transfer, pursuant to the Repurchase Agreement, the servicing rights and related servicing files and documents (the "Servicing Documents") and any amounts received by the Debtor Sellers, including principal and interest payments, escrow amounts and other income and amounts of any kind with respect to Purchased Mortgage Loans (collectively, the "Collections") related to the Purchased Mortgage Loans to EMC. AHMA ignored the request and has not transferred the Servicing Documents nor the Collections.

9.  On August 24, 2007, BSMCC and EMC filed a Complaint For Declaratory and Injunctive Relief (the "Complaint"). In the Complaint, BSMCC and EMC are seeking, among other things, "a declaration from Court that all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans are property of EMC, and that EMC is entitled to immediate access to and possession of all servicing files, documents and payments and escrow accounts relating to the Purchased Mortgage Loans." Complaint, ¶ 65.

---

[3] Under Paragraph 12(c)(ii) of the Repurchase Agreement, BSMCC may, "in its sole discretion if an Event of Default shall have occurred and be continuing ... sell the Mortgage Loans on a servicing released basis by terminating the respective servicer of the Purchased Mortgage Loans in accordance with the related servicing agreement with or without cause."

## BASIS FOR OBJECTION

10. The Debtors have no legal ability to either (a) assume and assign the terminated Repurchase Agreement or (b) sell or transfer EMC's property, including its servicing rights under the Repurchase Agreement, the Purchased Mortgage Loans or the Collections. Accordingly, BSMCC and EMC object to the entry of an order on the Motion (the "Sale Order") to the extent that the Debtors seek (x) to sell free and clear of BSMCC and/or EMC's interests in (i) the Purchased Mortgage Loans (as defined herein) and the proceeds related thereto, (ii) the servicing rights related to the Purchased Mortgage Loans, including the Servicing Documents, and (iii) the Collections related to Repurchase Agreement or (y) to otherwise affect the protected rights of BSMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code.[4]

---

[4] BSMCC is a "repo participant" as that term is defined in section 101(46) because it is an entity that had an outstanding repurchase agreement with the Debtors at some time before the filing of the Debtors' chapter 11 petitions. See 11 U.S.C. § 101(46). In addition, the Repurchase Agreement constitutes a "repurchase agreement" as that term is defined in section 101(47) of the Bankruptcy Code because it is an agreement, including related terms, which provides for the transfer of one or more mortgage loans and interests in mortgage loans with a simultaneous agreement by the transferee to transfer to the transferor the mortgage loans and interests in mortgage loans on demand, against the transfers of funds. See 11 U.S.C. § 101(47). Indeed, section 27 of the Repurchase Agreement expressly states the parties' intent that the transaction described therein are "repurchase agreement[s]" and that "either party's right to liquidate the Mortgage Loans delivered to it in connection with the Transactions hereunder or to exercise any other remedies pursuant to Paragraph 11 hereof, is a contractual right to liquidate such Transaction as described in sections 555 and 559" of the Bankruptcy Code.

## The Terminated Repurchase Agreement is not an Executory Contract that can be Assumed and Assigned under Section 365 of the Bankruptcy Code[5]

11.  The Repurchase Agreement is listed in the Cure Notice as a "Potential Executory Contract" (as that term is defined in the Cure Notice). The Debtors cannot assume and assign the Repurchase Agreement and rights thereunder because the agreement was terminated, is no longer executory and, therefore, incapable of being assumed and assigned under section 365 of the Bankruptcy Code. The Third Circuit has found that "[f]or section 365 to apply, the contract or lease must be in existence, if the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the trustee to assume or assign." Kopelman v. Halvajian (In re Triangle Laboratories), 663 F.2d 463, 467 (3d Cir. 1981) (citations omitted). "[A]n executory contract or lease validly terminated prior to the institution of bankruptcy proceedings is not resurrected by the filing of the petition in bankruptcy, and cannot therefore be included among the debtor's assets." Triangle Laboratories, 663 F.2d at 467-68. Thus, upon the termination of the Repurchase Agreement it no longer constituted property of the Debtors' estates and, therefore, the Repurchase Agreement cannot be assumed and assigned pursuant to section 365 of the Bankruptcy Code. See Coast Cities Truck Sales, Inc. v. Navistar Int'l Trans. Co. (In re Coast Cities Truck Sales, Inc.), 147 B.R. 674, 677 (D. N.J. 1992) (finding that a terminated dealership

---

[5] To the extent this Court determines that the Repurchase Agreement is an executory contract and, therefore, can be assumed and assigned by the Debtors pursuant to section 365 of the Bankruptcy Code, before the Debtors can assume and assign the Repurchase Agreement the Debtors must cure all defaults. 11 U.S.C. § 365(b); see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The trustee, however, may not blow hot or cold. If he accepts the contract be accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other")). BSMCC and EMC object the Debtor's stated cure amount on the Repurchase Agreement of $0.00 and BSMCC and EMC reserve their right to further supplement and object to the cure amount by September 20, 2007, at 4:00 p.m. in accordance with the Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if Any.

agreement could not be assumed by the debtor). Moreover, because the servicing has been sold to EMC, the assets "for sale" are not property of the estate. It is axiomatic that the Debtors cannot sell any property that it does not own or have an interest in.

12.  Furthermore, even assuming that the Repurchase Agreement was still executory (which it is not), it clearly could not be assumed by the Debtors under the plain language of subsection (c)(2) of section 365 because it is beyond dispute that the Repurchase Agreement is a "contract ... to ... extend other debt financing or financial accommodations, to or for the benefit of the debtor."

### The Servicing Rights were Lawfully Sold to EMC Upon Termination of the Repurchase Agreement

13.  Pursuant to the asset purchase agreement (the "Asset Purchase Agreement") which is exhibited to the Motion, the Debtors purport to be selling, inter alia, "all of the [Debtors'] Servicing Rights[6] and rights to receive Servicing Fees." Asset Purchase Agreement § 2.1(a). BSMCC exercised its protected rights under the Repurchase Agreement and section 559 of the Bankruptcy Code and sold the Purchased Mortgage Loans to EMC on a servicing released basis, thereby terminating any rights the Debtors may have under the Repurchase Agreement. Any right the Debtors might have had to service the Purchased Mortgage Loans was terminated and, therefore, the Purchased Mortgage Loans, the servicing rights and the Collections are not property of the estate under section 541 of the Bankruptcy Code.

14.  Indeed, the Debtors have no legal or equitable interest in the Repurchase Agreement, the Purchased Mortgage Loans, the servicing rights to the Purchased Mortgage

---

[6] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Asset Purchase Agreement.

8

Loans, or the Collections and, therefore, cannot seek to transfer them. See In re Wey, 854 F.2d 196, 199 (7th Cir. 1988) ("Possession of expired rights is the equivalent of the possession of no rights"). Any rights of the Debtors to service the Purchased Mortgage Loans were extinguished and the servicing rights, Servicing Documents and the Collections became the property of EMC. The mere fact that the Debtors have possession of the Servicing Documents and the Collections does not bestow them with any legal or equitable interests in the property; EMC's property, including, but not limited to, the servicing rights, is not property that the Debtors may sell, use or lease under section 363 of the Bankruptcy Code. In fact, the Debtors' failure to transfer the Servicing Documents and Collections is an act of conversion as set forth in further detail in the Complaint.

### Section 559 of the Bankruptcy Code Prevents the Issuance of Orders that Frustrate the Rights of a Repo Participant in a Repurchase Agreement

15. In accordance with section 559 of the Bankruptcy Code, BSMCC had the right to sell the Purchased Mortgage Loans along with the servicing rights. Moreover, pursuant to Paragraph 12(c) of the Repurchase Agreement, BSMCC has rightfully sold the Purchased Mortgaged Loans on a servicing released basis to EMC.

16. Section 559 of the Bankruptcy Code provides that:

> [t]he exercise of a contractual right of a repo participant or financial participant to cause the liquidation, termination, or acceleration of a repurchase agreement because of a condition of the kind specific in section 365(e)(1) of this title shall not be stayed, avoided or otherwise limited by operation of any provision of this title . . .

11 U.S.C. § 559. Pursuant to section 559, BSMCC's exercise of its right to terminate the Repurchase Agreement cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code or order of this Court. Since the Repurchase Agreement was terminated and the Purchased Mortgage Loans were sold servicing released to EMC, the Debtors

cannot assume and assign the Repurchase Agreement or sell the servicing rights thereunder. Compare In re R.M. Cordova Int'l, Inc., 77 B.R. 441, 446 (Bankr. D. N.J. 1987) (finding that the exercise of an ipso facto clause was protected under section 556 of the Bankruptcy Code (relating to forward contracts) and that such termination caused the forward contracts to not be executory and, therefore, not subject to assumption pursuant to section 365).

17.   Pursuant to section 559 of the Bankruptcy Code, BSMCC's right to the Servicing Documents and Collections cannot be stayed or otherwise limited by this Court and the Debtors should be directed to transfer the Servicing Documents and Collections to EMC and to provide an accounting to EMC of all proceeds that are attributable to EMC's property.

18.   Indeed, Congress intended that the addition of "repo participant" and "repurchase agreement" and the making of conforming changes in the relevant provisions of the Bankruptcy Code "afford participants in the repo market the same treatment with respect to the stay and avoidance provisions of the Code that Public Law 97-22 explicitly provided stockbrokers, securities clearing agencies, commodity brokers and forward contract merchants in connection with securities contracts, commodity contracts and forward contracts." 128 Cong. Rec. H261 (daily ed. February 9, 1982) (statement of Rep. Edwards).

19.   The legislative history also illustrates that Congress realized that:

> [t]he effective functioning of the repo market can only be assured if repo investors will be protected against open-ended market loss arising from the insolvency of a dealer or other counterparty in the repo market. The repo market is complex as it is crucial. It is built upon transactions that are highly interrelated. A collapse of one institution involved in repo transactions could start a chain reaction, putting at risk hundreds of billions of dollars and threatening the solvency of many additional institutions.

Senate Report 98-65 (1983). As such, Congress intended:

> intended to reduce "systematic risk" in the banking system and financial marketplace. To minimize risk of disruption when parties

> to these transaction become bankrupt or insolvent, the bill amends provisions of the banking and investment laws, as well as the Bankruptcy Code, to allow the expeditious termination or netting of certain types of financial transactions.

H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 20, 44, 127-134 (2005). Indeed, such protections were designed to prevent a ripple effect which could cripple the markets and Congress' message is being witnessed first hand in today's market conditions.

WHEREFORE, without in any way limiting their rights, BSMCC and EMC specifically request that the Court (i) finds that (a) EMC's property, including, but not limited to, the Purchased Mortgage Loans and any proceeds related thereto, the servicing rights, including the Servicing Documents, and the Collections will not be sold, transferred or otherwise encumbered, because such property is not property of the Debtors' estates; (b) the Debtors are not permitted to assume and assign the Repurchase Agreement pursuant to section 365 of the Bankruptcy Code because such contract was terminated and does not constitute an executory contract; (c) nothing in the Sale Order will affect the rights of BSMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code; and (ii) grants such other relief that is just and proper; or alternatively, (iii) adjourns the Sale Motion until a full and final resolution can be made with respect to true title of the assets in question.

Dated: September 13, 2007

Respectfully submitted,
DUANE MORRIS LLP

_/s/ Richard W. Riley_

Richard W. Riley (DE 4052)
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4943
Facsimile: (302) 657-4901

11

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Alex R. Rovira
Lori A. Kujawski
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599