**Execution Copy**

AMENDMENT NO. 1
to
MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

Dated as of December 15, 2006

This AMENDMENT NO. 1 to MORTGAGE LOAN PURCHASE AND SALE AGREEMENT (this "Amendment") is entered into as of December 15, 2006, by and among American Home Mortgage Corp., as seller (the "Seller"), American Home Mortgage Servicing, Inc., as servicer (the "Servicer"), the entities party hereto as Conduit Purchasers (the "Conduit Purchasers"), the entities party hereto as Committed Purchasers (the "Committed Purchasers" and together with the Conduit Purchasers, the "Purchasers"), the entities party hereto as Funding Agents (the "Funding Agents), and Société Générale, as administrative agent (the "Administrative Agent"). Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Purchase Agreement defined below.

PRELIMINARY STATEMENTS

WHEREAS the Seller, the Servicer, the Purchasers, the Funding Agents and the Administrative Agent are parties to that certain Mortgage Loan Purchase and Sale Agreement dated as of October 16, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Purchase Agreement") and have agreed to amend the Purchase Agreement on the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises set forth above, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**Section 1.**     Amendments to Purchase Agreement.

(a)     Effective as of the date hereof and subject to the satisfaction of the conditions precedent set forth in Section 2 below, the parties to the Purchase Agreement hereby agree that the Purchase Agreement is hereby amended as follows:

(i)     the definition of "Maximum Purchase Limit" set forth in Section 1.01 of the Purchase Agreement is amended and restated in its entirety as follows:

"Maximum Purchase Limit" shall mean $1,000,000,000 or such greater or lesser amount determined pursuant to Section 2.06(b) hereof.

(ii)     Schedule A of the Purchase Agreement is hereby amended and restated in its entirety as set forth on Annex I hereto.

(b)     The Administrative Agent and the Purchasers hereby waive compliance with the notice requirement set forth in Section 2.06(b) of the Purchase Agreement.

**Section 2.**     Conditions Precedent.  This Amendment shall become effective and be deemed effective, as of the date first above written, upon (a) receipt by the Administrative Agent of (i) one copy of this Amendment duly executed by each of the parties hereto, (ii) one copy of the Reaffirmation of Performance Guaranty (attached hereto as Annex II) duly executed by each of the Performance Guarantors, (iii) the payment of the "Amendment Fee" in accordance with the Supplemental Fee Letter of even date herewith among the Funding Agents, the Seller and the Servicer and (iv) such other instruments and documents as are reasonably requested by the Administrative Agent; and (b) the satisfaction of the rating agency conditions set forth in Section 11.03(b) of the Purchase Agreement.

**Section 3.**     Covenants, Representations and Warranties of the Seller and the Servicer.

(a)     Upon the effectiveness of this Amendment, (i) the Seller hereby reaffirms all covenants, representations and warranties made by it in the Purchase Agreement, as amended, and agrees that all such covenants, representations and warranties shall be deemed to have been re-made as of the effective date of this Amendment; and (ii) the Servicer hereby reaffirms all covenants, representations and warranties made by it in the Purchase Agreement, as amended, and agrees that all such covenants, representations and warranties shall be deemed to have been re-made as of the effective date of this Amendment.

(b)     Each of the Seller and the Servicer hereby represents and warrants (i) that this Amendment constitutes the legal, valid and binding obligation of such Person enforceable against it in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general principles of equity which may limit the availability of equitable remedies and (ii) upon the effectiveness of this Amendment, that no event shall have occurred and be continuing which constitutes a Termination Event or a Potential Termination Event.

**Section 4.**     Fees, Costs and Expenses.  Without limiting the rights of the Administrative Agent and the Purchasers set forth in the Purchase Agreement and the other Principal Agreements, Seller agrees to pay on demand all reasonable fees and out-of-pocket expenses of counsel for the Administrative Agent and the Purchasers incurred in connection with the preparation, execution and delivery of this Amendment and the other instruments and documents to be delivered in connection herewith and with respect to advising the Administrative Agent and the Purchasers as to their rights and responsibilities hereunder and thereunder.

**Section 5.**     Reference to and Effect on the Purchase Agreement.

(a)     Upon the effectiveness of this Amendment, each reference in the Purchase Agreement to "this Agreement," "hereunder," "hereof," "herein," "hereby" or words of like import shall mean and be a reference to the Purchase Agreement as amended hereby, and each reference to the Purchase Agreement in any other document, instrument or agreement executed and/or delivered in connection with the Purchase Agreement shall mean and be a reference to the Purchase Agreement as amended hereby.

(b)     Except as specifically amended hereby, the Purchase Agreement and other documents, instruments and agreements executed and/or delivered in connection therewith shall remain in full force and effect and are hereby ratified and confirmed.

(c)     The execution, delivery and effectiveness of this Amendment shall neither, except as expressly provided herein, operate as a waiver of any right, power or remedy of the Administrative Agent or any Purchaser under the Purchase Agreement, any other Principal Agreement, or any other documents, instruments, and agreement executed and/or delivered in connection therewith.

**Section 6.    <u>GOVERNING LAW</u>.    THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.**

**Section 7.**    <u>Execution in Counterparts</u>.  This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

**Section 8.**    <u>Headings</u>.    Section headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

[Remainder of page intentionally blank.]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed on the date first set forth above by their respective officers thereto duly authorized, to be effective as hereinabove provided.

AMERICAN HOME MORTGAGE CORP.,
as Seller

By: _____
Name: Alan B. Horn
Title: Executive Vice President
General Counsel & Secretary

AMERICAN HOME MORTGAGE SERVICING,
INC., as Servicer

By: _____
Name: Alan B. Horn
Title: Executive Vice President
General Counsel & Secretary

SOCIETE GENERALE, as Administrative Agent
and as a Funding Agent

By: _____
Name: James F. Ahern
Title: Managing Director


BARTON CAPITAL LLC, as a Conduit Purchaser
and as a Committed Purchaser


By: _____
Name:
Title:

SOCIETE GENERALE, as Administrative Agent
and as a Funding Agent

By:_____
Name:
Title:


BARTON CAPITAL LLC, as a Conduit Purchaser
and as a Committed Purchaser

By: _____
Name:    Doris J. Hearn
Title:    Vice President

Annex I

Purchaser Groups

| Conduit Purchaser | Related Funding Agent | Related Committed Purchaser | Purchaser Group Limit |
|---|---|---|---|
| Barton Capital Corporation | Société Générale | Barton Capital Corporation | $1,000,000,000 |

Annex II

[Form of Reaffirmation of Performance Guaranty]

Attached.

**Execution Copy**

AMENDMENT NO. 2
to
MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

Dated as of June 26, 2007

This AMENDMENT NO. 2 to MORTGAGE LOAN PURCHASE AND SALE AGREEMENT (this "Amendment") is entered into as of June 26, 2007, by and among American Home Mortgage Corp., as seller (the "Seller"), American Home Mortgage Servicing, Inc., as servicer (the "Servicer"), the entities party hereto as Conduit Purchasers (the "Conduit Purchasers"), the entities party hereto as Committed Purchasers (the "Committed Purchasers" and together with the Conduit Purchasers, the "Purchasers"), the entities party hereto as Funding Agents (the "Funding Agents), and Société Générale, as administrative agent (the "Administrative Agent"). Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Purchase Agreement defined below.

PRELIMINARY STATEMENTS

WHEREAS the Seller, the Servicer, the Purchasers, the Funding Agents and the Administrative Agent are parties to that certain Mortgage Loan Purchase and Sale Agreement dated as of October 16, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Purchase Agreement") and have agreed to amend the Purchase Agreement on the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises set forth above, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**Section 1.**    Amendments to Purchase Agreement.

(a)    Effective as of the date hereof and subject to the satisfaction of the conditions precedent set forth in Section 2 below, the Purchase Agreement is hereby amended as follows:

(i)    Schedule B of Exhibit G to the Purchase Agreement is hereby amended and restated in its entirety as set forth on Annex I hereto.

**Section 2.**    Conditions Precedent. This Amendment shall become effective and be deemed effective, as of the date first above written, upon receipt by the Administrative Agent of four (4) counterpart signature pages to this Amendment duly executed by each of the parties hereto.

**Section 3.**    Covenants, Representations and Warranties of the Seller and the Servicer.

(a)    Upon the effectiveness of this Amendment, (i) the Seller hereby reaffirms all covenants, representations and warranties made by it in the Purchase Agreement, as amended,

and agrees that all such covenants, representations and warranties shall be deemed to have been re-made as of the effective date of this Amendment; and (ii) the Servicer hereby reaffirms all covenants, representations and warranties made by it in the Purchase Agreement, as amended, and agrees that all such covenants, representations and warranties shall be deemed to have been re-made as of the effective date of this Amendment.

(b)      Each of the Seller and the Servicer hereby represents and warrants (i) that this Amendment constitutes the legal, valid and binding obligation of such Person enforceable against it in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general principles of equity which may limit the availability of equitable remedies and (ii) that upon the effectiveness of this Amendment, no event shall have occurred and be continuing which constitutes a Termination Event or a Potential Termination Event.

**Section 4.**      <u>Fees, Costs and Expenses</u>.   Without limiting the rights of the Administrative Agent and the Purchasers set forth in the Purchase Agreement and the other Principal Agreements, Seller agrees to pay on demand all reasonable fees and out-of-pocket expenses of counsel for the Administrative Agent and the Purchasers incurred in connection with the preparation, execution and delivery of this Amendment and the other instruments and documents to be delivered in connection herewith and with respect to advising the Administrative Agent and the Purchasers as to their rights and responsibilities hereunder and thereunder.

**Section 5.**      <u>Reference to and Effect on the Purchase Agreement</u>.

(a)      Upon the effectiveness of this Amendment, each reference in the Purchase Agreement to "this Agreement," "hereunder," "hereof," "herein," "hereby" or words of like import shall mean and be a reference to the Purchase Agreement as amended hereby, and each reference to the Purchase Agreement in any other document, instrument or agreement executed and/or delivered in connection with the Purchase Agreement shall mean and be a reference to the Purchase Agreement as amended hereby.

(b)      Except as specifically amended hereby, the Purchase Agreement and other documents, instruments and agreements executed and/or delivered in connection therewith shall remain in full force and effect and are hereby ratified and confirmed.

(c)      The execution, delivery and effectiveness of this Amendment shall neither, except as expressly provided herein, operate as a waiver of any right, power or remedy of the Administrative Agent or any Purchaser under the Purchase Agreement, any other Principal Agreement, or any other documents, instruments, and agreement executed and/or delivered in connection therewith.

**Section 6.      GOVERNING LAW.    THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.**

**Section 7.**      <u>Execution in Counterparts</u>.  This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of

2

which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

**Section 8.**    <u>Headings</u>.    Section headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

[Remainder of page intentionally blank.]

3

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed on the date first set forth above by their respective officers thereto duly authorized, to be effective as hereinabove provided.

AMERICAN HOME MORTGAGE CORP.,
as Seller

By: _____

Name:

Title:     Alan B. Horn
          Executive Vice President
          General Counsel & Secretary

AMERICAN HOME MORTGAGE SERVICING,
INC., as Servicer

By: _____

Name:

Title:     Alan B. Horn
          Executive Vice President
          General Counsel & Secretary

SOCIETE GENERALE, as Administrative Agent
and as a Funding Agent

By:_____

Name: James F. Ahern

Title: Managing Director


BARTON CAPITAL LLC, as a Conduit Purchaser
and as a Committed Purchaser


By:_____

Name:

Title:

SOCIETE GENERALE, as Administrative Agent
and as a Funding Agent


By:_____
Name:
Title:


BARTON CAPITAL LLC, as a Conduit Purchaser
and as a Committed Purchaser


By: *[signature]*
Name:    Doris J. Hearn
Title:    Vice President

## SCHEDULE B TO PURCHASE DATE NOTICE

After giving effect to the purchase of such Mortgage Loans as of the requested Purchase Date:

1.     The aggregate outstanding balance of all Mortgage Loans which are Wet Loans and subject to the Agreement is $_____.  Such outstanding balance does not exceed 10% of the Maximum Purchase Limit as of such date.

2.     The aggregate outstanding balance of all Mortgage Loans which are FHA Loans or VA Loans and subject to the Agreement is $_____.  Such outstanding balance does not exceed 20% of the Maximum Purchase Limit as of such date.

3.     The aggregate outstanding balance of all Mortgage Loans which are Option ARM Loans and subject to this Agreement is $_____.  Such outstanding balance does not exceed 25% of the Maximum Purchase Limit as of such date.

4.     The aggregate outstanding balance of all Mortgage Loans which have a term of maturity of over 30 years and subject to the Agreement is $_____.  Such outstanding balance does not exceed 10% of the Maximum Purchase Limit as of such date.

5.     The aggregate outstanding balance of all Mortgage Loans which are supported by second lien Mortgages and subject to the Agreement is $_____.  Such outstanding balance does not exceed 15% of the Maximum Purchase Limit as of such date.

6.     The aggregate outstanding balance of all Mortgage Loans subject to the Agreement and which:

(i)     were originated more than 90 days prior to such date is $_____.  Such outstanding balance does not exceed 10% of the Maximum Purchase Limit;

(ii)     have been subject to this Agreement for more than 60 days is $_____.  Such outstanding balance does not exceed 10% of the Maximum Purchase Limit; and

(iii)     have been subject to this Agreement for more than 180 days is zero.

7.     The weighted average FICO Score for all Mortgage Loans subject to the Agreement (excluding any FHA Loans and VA Loans) is _____.[1]

8.     The aggregate Anticipated Takeout Amounts for all outstanding Takeout Commitments (i) of any individual Approved Takeout Investor does not exceed the following

---

[1] Such FICO Score shall be a minimum of 690.

percentages of the aggregate Anticipated Takeout Amounts for all outstanding Takeout Commitments:  (A) 30% for each Approved Takeout Investor having a senior long-term unsecured debt rating of AA- or better by Standard & Poor's and Aa3 or better by Moody's; provided, that, for purposes of this calculation, Countrywide Securities Corp. ("CSC") shall be deemed to have satisfied such ratings requirement unless, the senior long-term unsecured debt rating of CSC has been downgraded or placed on "negative watch" by Standard & Poor's or Moody's as of October 16, 2006, (B) 20% for each Approved Takeout Investor having a senior long-term unsecured debt rating, A- or better by Standard & Poor's and A3 or better by Moody's, and (C) 10% for all other Approved Takeout Investors; provided that the Concentration Limit for ResCap shall be 5% so long as  ResCap has a senior long-term unsecured debt rating of BBB- or better by Standard & Poor's and Baa3 or better by Moody's, and (ii) the aggregate Anticipated Takeout Amounts for all outstanding Takeout Commitments of all Approved Takeout Investors having senior long-term unsecured debt ratings of less than A- by Standard & Poor's or A3 by Moody's does not exceed 20% of the aggregate Anticipated Takeout Amounts for all outstanding Takeout Commitments.

**EXHIBIT A**

FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

Reference is made to the Mortgage Loan Purchase and Sale Agreement dated as of October 16, 2006 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Agreement"), by and among American Home Mortgage Corp., as Seller, American Home Mortgage Servicing, Inc., as Servicer, the certain Purchasers and Funding Agents parties thereto, and Société Générale, as Administrative Agent for such Purchasers. To the extent not defined herein, capitalized terms used herein have the meanings assigned to such terms in the Agreement.

[_____], a [_____] corporation, in its capacity as [a Conduit] [a Committed] Purchaser under the Agreement (the "Assignor") and [_____], a [_____] corporation (the "Assignee"), hereby agree as follows:

1.      In consideration of the Assignee's payment of $[_____] (the "Assignment Amount"), the Assignor hereby sells and assigns to the Assignee, and the Assignee hereby purchases and assumes from the Assignor, a [__]% interest in such Assignor's Pro Rata Share of (x) the Net Investment and (y) its rights and obligations under the Agreement on [the applicable date] (the "Assignment Date"). The Assignment Amount shall be made on the Assignment Date.

2.      The Assignor (i) represents and warrants that it is the legal and beneficial owner of the interest being assigned by it hereunder and that such interest is free and clear of any Lien created by it; (ii) makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with the Agreement, the other Principal Agreements or any other instrument or document furnished pursuant thereto or the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Agreement, the other Principal Agreements, the Mortgage Loans or any such other instrument or document furnished pursuant thereto; and (iii) makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Seller or the Servicer or the performance or observance by the Seller or the Servicer of any of their respective obligations under the Agreement, the other Principal Agreements or any instrument or document furnished pursuant thereto.

3.      The Assignee (i) confirms that it has received a copy of the Agreement together with copies of the financial statements referred to in Section 6.03 of the Agreement, to the extent delivered through the date of this Assignment and Assumption Agreement, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption Agreement and purchase such interest in the Assignor's rights and obligations under the Agreement; (ii) agrees that it will, independently and without reliance upon the Administrative Agent or any of its Affiliates, the Funding Agents or any of their Affiliates, the Assignor or any other Purchaser and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Agreement and the other Principal

A-1

Agreements; (iii) appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such power under the Agreement, the other Principal Agreements and any other instrument or document pursuant thereto as are delegated to the Administrative Agent by the terms thereof, together with such powers as are reasonably incidental thereto and to enforce its respective rights and interests in and under the Agreement and the other Principal Agreements; (iv) agrees that it will perform in accordance with their terms all of the obligations which by the terms of the Agreement and the other Principal Agreements are required to be performed by it as such Assignee; (vi) specifies as its address for notices the office set forth beneath its name on the signature pages hereof; and (vii) agrees that it will not institute against any Conduit Purchaser any proceeding of the type referred to in Section 11.15 of the Agreement prior to the date which is one year and one day after the payment in full of all commercial paper and other debt securities issued by any Conduit Purchaser.

[4.    The Assignee shall have all of the rights and obligations of the Assignor under the Agreement and under the other Principal Agreements to which such Assignor is or, immediately prior to such Assignment, was a party with respect to such interest for all purposes of the Agreement and such other Principal Agreements (it being understood that the Assignee, as an assignee of a Committed Purchaser, shall be obligated to fund Purchase Prices under Section 2.01 of the Agreement in accordance with the terms thereof, notwithstanding that the related Conduit Purchaser is not so obligated), and the Assignor shall relinquish its rights with respect to such interest for all purposes of the Agreement and under the other Principal Agreements to which such Assignor is or, immediately prior to such Assignment, was a party.][1]

[4.    (i) The Assignee shall be the owner of the assigned portion of the related Purchaser Group's Pro Rata Share of the Net Investment, (ii) except in the case of a new Purchaser Group, the Funding Agent for such Assignor will act as the Funding Agent for the Assignee, with all corresponding rights and powers, express or implied, granted to the Funding Agent under the Agreement or under the other Principal Agreements, (iii) the Assignee and its Liquidity Providers and Program Support Providers and other related parties shall have the benefit of all the rights and protections provided to the Assignor and its Liquidity Providers and Program Support Providers and other related parties, respectively, in the Agreement and in the other Principal Agreements (including, without limitation, any limitation on recourse against the Assignor or related parties, any agreement not to file or join in the filing of a petition to commence an insolvency proceeding against the Assignor, and the right to assign to another assignee as provided in the Agreement), (iv) the Assignee shall assume the Assignor's right to fund the assigned portion of the related Purchaser Group's Pro Rata Share of any Purchase Prices requested by Seller subsequent to the Effective Date and all other obligations, if any, of the Assignor under and in connection with the Agreement or any other Principal Agreements, and the Assignor shall be released from such obligations, in each case to the extent of this Assignment and Assumption Agreement, and the obligations of the Assignor and Assignee shall be several and not joint, (v) all distributions in respect of the related Purchaser Group's Pro Rata Share of the Net Investment shall be made to the Funding Agent, on behalf of the Assignor and Assignee on a pro rata basis according to their respective interests, (vi) the definition of the term "Applicable Rate" with respect to the portion of the related Purchaser Group's Pro Rata Share of the Net Investment funded with Commercial Paper issued by the Assignor from time to time

---

[1]    This Section is applicable if the Assignment is from an Committed Purchaser to another Person.

shall be determined in the manner set forth in the definition of "CP Rate" applicable to the Assignor on the basis of the interest rate or discount applicable to Commercial Paper issued by the Assignee (rather than the Assignor), (vii) the defined terms and other terms and provisions of the Agreement and the other Principal Agreements shall be interpreted in accordance with the foregoing, and (viii) if requested by the Funding Agent, the Assignor and Assignee will execute and deliver such further agreements and documents and take such other actions as the Funding Agent may reasonably request to evidence and give effect to the foregoing.][2]

5.    This Assignment and Assumption Agreement shall be effective on the date hereof (the "Effective Date") [upon receipt by the Administrative Agent and Seller of this Assignment and Assumption Agreement duly executed by Assignor, Assignee and the Funding Agent for the Assignor].

6.    As of the Effective Date, (i) the Assignee shall be a party to the Agreement and, to the extent provided in this Assignment and Assumption Agreement, have the rights and obligations of [a Conduit] [a Committed] Purchaser thereunder and (ii) the Assignor shall, to the extent provided in this Assignment and Assumption Agreement, relinquish its rights and be released from its obligations under the Agreement.

7.    From and after the Effective Date, the applicable Funding Agent shall make all payments under the Agreement in respect of the interest assigned hereby (including, without limitation, all payments in respect of such interest in the related Purchaser Group's Pro Rata Share of the Net Investment, discount allocable to such interest in the related Purchaser Group's Pro Rata Share of the Net Investment and any other amounts due with respect thereto) to the Assignee.  The Assignor and Assignee shall make all appropriate adjustments in payments under the Agreement for periods prior to the Effective Date directly between themselves.

8.    This Assignment and Assumption Agreement may be executed by one or more of the parties on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

9.    This Assignment and Assumption Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

[Remainder of page intentionally left blank]

---

[2]    This Section is applicable if the Assignment is from a Conduit Purchaser to a Conduit Assignee.

A-3

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be executed by their respective officers thereunto duly authorized as of the __ day of _____, ____.

[ASSIGNOR]

By: _____
Name:
Title:


[ASSIGNEE]

By: _____
Name:
Title:

Address for notices:

[NAME]

_____
_____
Attn: _____
Telecopy: (___) ___-____

Consented to this __ day
of _____, _____


[FUNDING AGENT], as
Funding Agent

By: _____
Name:
Title:

[The following acknowledgment to be obtained if required pursuant to the Agreement].

Acknowledged to this __ day
of _____, _____

SOCIETE GENERALE, as Administrative Agent

By: _____
    Name:
    Title:

AMERICAN HOME MORTGAGE CORP.,
as Seller

By: _____
Name:
Title:

**EXHIBIT B**

FORM OF JOINDER AGREEMENT

Reference is made to the Mortgage Loan Purchase and Sale Agreement, dated as of October 16, 2006 (as the same may be amended, restated, supplemented or otherwise modified from time to time, (the "Agreement"), by and among American Home Mortgage Corp., as Seller, American Home Mortgage Servicing, Inc., as Servicer, the certain Purchasers and Funding Agents parties thereto, and Société Générale, as Administrative Agent (the "Administrative Agent") for such Purchasers.  To the extent not defined herein, capitalized terms used herein have the meanings assigned to such terms in the Agreement.

_____ (the "New Funding Agent"), _____ (the "New Conduit Purchaser(s)"), _____ (the "New Committed Purchaser(s)"; and together with the New Funding Agent and New Conduit Purchaser(s), the "New Purchaser Group"), Seller and the Administrative Agent agree as follows:

1.      Seller has requested, in connection with an increase to the Maximum Purchase Limit, that the New Purchaser Group agree to become a "Purchaser Group" under the Agreement.

2.      The effective date (the "Effective Date") of this Joinder Agreement shall be the later of (i) the date on which a fully executed copy of this Joinder Agreement is delivered to the Administrative Agent and (ii) the date of this Joinder Agreement.

3.      By executing and delivering this Joinder Agreement, each of the New Funding Agent, the New Conduit Purchaser(s) and the New Committed Purchaser(s) confirms to and agrees with each other party to the Agreement that (i) it has received a copy of the Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Joinder Agreement; (ii) it will, independently and without reliance upon the Administrative Agent or any of its Affiliates, the other Funding Agents or any of their Affiliates, or the other Purchasers and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Agreement or any documents or agreements to be delivered thereunder; (iii) it appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers pursuant to Section 9.01 of the Agreement; (iv) it will perform in accordance with their terms all of the obligations which by the terms of the Agreement and the documents or agreements to be delivered thereunder are required to be performed by it as a Funding Agent, a Conduit Purchaser, or a Committed Purchaser, respectively; (v) its address for notices shall be the office set forth beneath its name on the signature pages of this Joinder Agreement; and (vi) it is duly authorized to enter into this Joinder Agreement.

4.      On the Effective Date of this Joinder Agreement, each of the New Funding Agent, the New Conduit Purchaser(s) and the New Committed Purchaser(s) shall join in and be a party to the Agreement and, to the extent provided in this Joinder Agreement, shall have

the rights and obligations of a Funding Agent, a Conduit Purchaser and a Committed Purchaser, respectively, under the Agreement.

       5.     This Joinder Agreement may be executed by one or more of the parties on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

       6.     This Joinder Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

       7.     Each of the parties hereto hereby waives any right to have a jury participate in resolving any dispute, whether sounding in contract, tort, or otherwise between or among the parties hereto, or any of them, arising out of, connected with, related to, or incidental to the relationship between them in connection with this Joinder Agreement.  Instead, any dispute resolved in court will be resolved in a bench trial without a jury.

       IN WITNESS WHEREOF, the parties hereto have caused this Joinder Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written, such execution being made on Schedule I hereto.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

SCHEDULE I
to
Joinder Agreement

Dated _____ __, 20__

Section 1.

The "Purchaser Group Limit" for the New Purchaser Group is $[_____].

NEW CONDUIT PURCHASER:

[NAME]

By:_____
Name:
Title:

Address for notices:
[Address]

NEW COMMITTED PURCHASER:

[NAME]

By:_____
Name:
Title:

Address for notices:
[Address]

NEW FUNDING AGENT:

[NAME]

By:_____
Name:
Title:

Address for notices:
[Address]

Consented to this ___ day of _____, 20__ by:


AMERICAN HOME MORTGAGE CORP.,


By:_____
Name:
Title:


SOCIETE GENERALE,
as Administrative Agent


By:_____
Name:
Title:

**EXHIBIT C**

FORM OF DAILY REPORT

This Daily Report is furnished pursuant to that certain Mortgage Loan Purchase and Sale Agreement dated as of October 16, 2006 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Agreement"), by and among American Home Mortgage Corp., as Seller (the "Seller"), American Home Mortgage Servicing, Inc., as Servicer (the "Servicer"), the certain Purchasers and Funding Agents parties thereto, and Société Générale, as Administrative Agent for such Purchasers.  To the extent not defined herein, capitalized terms used herein have the meanings assigned to such terms in the Agreement.

The undersigned hereby delivers this Daily Report in accordance with Section 6.05(q)(iii) of the Agreement to the Administrative Agent and each of the Funding Agents, and in connection herewith sets forth certain information related to each Mortgage Loan subject to the Agreement as detailed on Schedule A attached hereto.

Dated:_____

AMERICAN HOME MORTGAGE
SERVICING, INC., as Servicer

By:_____
Name:
Title:

SCHEDULE A TO DAILY REPORT

| loan_no | alt_loan_no | svc_loan_no | originator | custodian | mortgagor_name | prop_addr | prop_addr2 | prop_city | prop_state |
|---------|-------------|-------------|------------|-----------|----------------|-----------|------------|-----------|------------|
|         |             |             |            |           |                |           |            |           |            |
|         |             |             |            |           |                |           |            |           |            |

SCHEDULE A TO DAILY REPORT

| prop_zip | prop_county | product | product_code | loan_type | note_type | note_date | orig_rate | orig_term | amort_term | orig_balance | first_pay_date |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |

SCHEDULE A TO DAILY REPORT

| mature_date | pmi_coverage | pmi_insurer_code | margin | balloon_flag | adjustable | first_pymt_adj_freq | pymt_adj_freq | first_rate_chg_date |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

SCHEDULE A TO DAILY REPORT

| pymt_chg_date | first_rate_adj_freq | rate_adj_freq | first_rate_cap | period_rate_cap | min_int_rate | max_int_rate | io_flag | io_term | prepay_flag |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |

SCHEDULE A TO DAILY REPORT

| prepay_type | prepay_term | neg_amort_flag | neg_amort_limit | payment_type | period_pymt_cap | pi_constant | orig_pi_pymt | purpose_code |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

SCHEDULE A TO DAILY REPORT

| appraisal_value | purchase_price | silent_2nd | manuf_housing_flag | prop_type | units | occupied_flag | doc_type | fico_score | tape_ltv | tape_cltv | front_ratio |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |

SCHEDULE A TO DAILY REPORT

| debt_ratio | jumbo_flag | self_employ_flag | highcost_flag | lien_position | other_lien_balance | fund_date | grade | channel_code | corresp_broker_code |
|------------|------------|------------------|---------------|---------------|--------------------|-----------|-------|--------------|---------------------|
|            |            |                  |               |               |                    |           |       |              |                     |
|            |            |                  |               |               |                    |           |       |              |                     |

SCHEDULE A TO DAILY REPORT

| corresp_broker | mers_flag | mers_id | net_margin | prop_value | net_rate | service_fee | ltv_ratio | loan_ltv | cltv_ratio | reo_flag | heloc_flag | orig_draw |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |

SCHEDULE A TO DAILY REPORT

| draw_term | orig_date | pledge_amt | arm_index | as_of_date | act_balance | curr_balance | paid_to_date | next_due_date | curr_note_rate | fpd_flag |
|-----------|-----------|------------|-----------|------------|-------------|--------------|--------------|---------------|----------------|----------|
|           |           |            |           |            |             |              |              |               |                |          |
|           |           |            |           |            |             |              |              |               |                |          |

SCHEDULE A TO DAILY REPORT

| pi_pymt | foreclosure | bankruptcy | rate_chg_date | commit_exp_date | inv_code | investor | takeout_amt | takeout_inv_code | takeout_inv_name |
|---------|-------------|------------|---------------|-----------------|----------|----------|-------------|------------------|------------------|
|         |             |            |               |                 |          |          |             |                  |                  |
|         |             |            |               |                 |          |          |             |                  |                  |

SCHEDULE A TO DAILY REPORT

| takeout_price | takeout_wire_amt | trust_receipt | wet_status | title_co | title_co_code | wire_amt | Whse Name | Trade ID |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |