UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| American Home Mortgage Holdings, Inc., <u>et al.</u>,[1] | Case No. 07-11047 (CSS)<br>Jointly Administered |
| Debtors. | |

## MOTION OF SOCIÉTÉ GÉNÉRALE PURSUANT TO SECTION 365(d) OF THE BANKRUPTCY CODE SEEKING RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE THE TRANSFER OF SERVICING RIGHTS AND TO RECOVER FROM THE DEBTORS ALL <u>MORTGAGE LOAN DOCUMENTS</u>

Société Générale ("<u>SG</u>"), in its capacity as Administrative Agent for Barton

Capital LLC, by and through its undersigned counsel, hereby files this motion (the "<u>Motion</u>")

pursuant to section 365(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules

4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and

Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of

Delaware (the "<u>Local Rules</u>") seeking relief from the automatic stay to (i) effectuate the transfer

of Servicing Rights (as defined below) related to the Mortgage Loans (as defined below) from

the Debtors to a success servicer to be appointed by SG (the "<u>Successor Servicer</u>") and (ii)

recover from the Debtors the Mortgage Loan Documents (as defined below).  In support of the

Motion, SG represents as follows:

---

[1]   The Debtors are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp. (3914); American Home Mortgage Acceptance, Inc. (1979); American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp. (1558); American Home Mortgage Ventures LLC (1407); Homegate Settlement Services, Inc. (7491); and Great Oak Abstract Corp. (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for American Home Mortgage Servicing, Inc., whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

**PRELIMINARY STATEMENT**

1.      By notice dated August 27, 2007, as modified on September 10, 2007 (the "Assumption Notice"), the Debtors notified SG of their intent to assume the Purchase Agreement (as defined below) and assign the Purchase Agreement – with a proposed cure amount of $0.00 – to an unidentified third party in connection with the sale of the Debtors' mortgage loan servicing business (the "Servicing Business").

2.      Contemporaneously herewith, SG filed SG's (I) Objection to the Assumption and Assignment of the Purchase Agreement and Proposed Cure Amount in Connection with the Sale of the Debtors' Servicing Business and (II) Limited Objection to the Sale of the Debtors' Servicing Business (the "Objection") and the Declaration of James F. Ahern in Support of SG's (I) Objection to the Assumption and Assignment of the Purchase Agreement and Proposed Cure Amount in Connection with the Sale of the Debtors' Servicing Business and (II) Limited Objection to the Sale of the Debtors' Servicing Business (the "Ahern Declaration"). SG incorporates herein the factual representations and legal arguments set forth in the Objection and the Ahern Declaration in further support of this Motion.

3.      "Cause" exists in the present case to modify the automatic stay to allow SG to effectuate the transition of the Servicing Rights to the Successor Servicer and to recover the Mortgage Loan Documents. Effective not later than August 3, 2007, SG terminated the Purchase Agreement, and all of the Debtors' rights thereunder, including the Servicing Rights, at which time all Servicing Rights vested in SG. Moreover, SG holds all right, title and interest in and to the Mortgage Loan Documents, which are simply held in trust by the Debtors for SG's

benefit. Consequently, the Debtors have no cognizable interest in either the Servicing Rights, or the Mortgage Loan Documents, which merits protection by the stay.

4.     Additionally, it is appropriate to modify the stay as requested herein because the Debtors have no equity in the Servicing Rights or the Mortgage Loan Documents and the Servicing Rights and Mortgage Loan Documents are not necessary to an effective reorganization of the Debtors. Because the Purchase Agreement, and the Servicing Rights contained therein, was terminated prior to the petition date, the Debtors have no equity in the Servicing Rights. Furthermore, the Mortgage Loan Documents are owned by SG and simply held by the Debtors in trust for SG, and therefore, the Debtors have no equity in the Mortgage Loan Documents.

5.     Moreover, as this Court is aware, the Debtors' "reorganization" consists primarily of an orderly liquidation of their servicing business (the "Servicing Business"). Because the Purchase Agreement (including the Servicing Rights contained therein) was terminated prior to the Debtors' petition date, the Purchase Agreement cannot be assumed and assigned and the Servicing Rights cannot otherwise be sold and thus are not necessary to an effective reorganization of the Debtors. This conclusion stands even in the event the Court determines the Purchase Agreement was in fact an executory contract as of the Debtors' petition date, as the numerous incurable defaults under the Purchase Agreement (as detailed in the Objection) render it incapable of assumption and assignment pursuant to section 365 of the Bankruptcy Code. Moreover, the Purchase Agreement is of little value to the Debtors' estates given the multi-million dollar monetary defaults under the Purchase Agreement, which must be fully cured prior to any assumption and assignment, and the fact that the Purchase Agreement expires by its terms on October 15, 2007. Finally, the Mortgage Loan Documents are owned by

SG and simply cannot be sold by the Debtors in connection with the sale of the Servicing

Business and thus are not necessary to an effective reorganization of the Debtors.

6.      For these reasons, and for the reasons set forth below, and in the

Objection, SG respectfully requests this Court grant SG relief from the automatic stay to (i)

effectuate the transition of Servicing Rights to a Successor Servicer, and (ii) recover the

Mortgage Loan Documents from the Debtors.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This

is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (G) and (O). Venue is

proper before this Court under 28 U.S.C. §§ 1408 and 1409.

8.      The statutory basis for the relief requested herein is section 362(d) of the

Bankruptcy Code, Bankruptcy Rules 4001(a) and 9014 and Local Rule 4001-1.

## BACKGROUND

9.      On October 16, 2006, SG, as Administrative Agent for the Purchasers (as

defined in the Purchase Agreement), Barton Capital LLC, as Conduit Purchaser and Committed

Purchaser, Société Générale as Funding Agent, American Home Mortgage Corp. ("AHMC") and

American Home Mortgage Servicing, Inc. ("AHMS") entered into that certain Mortgage Loan

Purchase and Sale Agreement (the "Purchase Agreement"),[2] pursuant to which the Purchasers,

through the Administrative Agent or Funding Agent, purchase from AHMC certain mortgage

loans originated by AHMC (the "Mortgage Loans"). Pursuant to section 4.01 of the Purchase

Agreement, AHMS was appointed by SG as servicer of the Mortgage Loans.

---

[2] A true and correct copy of the Purchase Agreement is attached as Exhibit A to the Objection.

10.    The Purchase Agreement is a "whole loan" purchase agreement, whereby all right, title and interest in the Mortgage Loans and related assets, including the Servicing Rights (as defined in the Purchase Agreement, the "Mortgage Loan Assets"),[3] are transferred and conveyed to SG.  Pursuant to section 2.04(d) of the Purchase Agreement, Mortgage Loans are delivered to SG on a "servicing release basis," free of any servicing rights in favor of AHMS or AHMC.

---

[3]    Pursuant to Section 2.02(a), the conveyance of the Mortgage Loans from AHMC to SG was a transfer of all right, title and interest in, to and under:

> (i) each Mortgage Loan (including the Mortgage Note evidencing such Mortgage Loan and the other Principal Mortgage Documents) and any and all moneys of whatsoever nature payable (upon the occurrence of any event) with respect to each such Mortgage Loan subject to the terms of this Agreement, (ii) all rights, powers and remedies of the Seller under or in connection with each such Mortgage Loan (including the Mortgage Note evidencing such Mortgage Loan and the other Principal Mortgage Documents), whether arising under the terms of such Mortgage Loan, by statute, at law or in equity, or otherwise arising out of any default by the Mortgagor under such Mortgage Loan, including (without limitation) all rights to give or receive any notice, consent, approval or waiver thereunder, (iii) the Mortgages, the Principal Mortgage Documents and all other items of the Document Files relating to such Mortgage Loans and the contents thereof, (iv) all security interests and liens securing repayment of such Mortgage Loans, (v) all documents of title, books and records concerning the foregoing property (including, without limitation, all data from computer programs, tapes, disks and related items containing any such information), (vi) the title insurance policies obtained in connection with such Mortgage Loans, and all insurance policies, if any, supporting repayment of such Mortgage Loans; (vii) all Mortgaged Property related to such Mortgage Loans, (viii) all guarantees, supporting obligations and collateral, if any, received with respect to, or supporting repayment of, such Mortgage Loans; and (ix) to the extent that the same then or thereafter exist, all proceeds, products, rents and profits of the foregoing of any nature whatsoever, including (without limitation) all proceeds of the sale, and proceeds of the conversion, voluntary or involuntary, of any proceeds thereof (the items described in clauses (i) through (ix) above, the "Mortgage Loan Assets").

(Ex. A to Objection, § 2.02(a), pp. 29-30)

11.     Specifically included among the Mortgage Loan Assets are all documents of title, books and records (including all data from computer programs, tapes, disks and related items containing such information) related to the Mortgage Loans.  As servicer under section 4.01 of the Purchase Agreement, AHMS is also required to maintain accurate and complete records of its servicing of the Mortgage Loans, which SG is entitled to examine upon reasonable notice, during AHMS' business hours.  Additionally, AHMC is required to maintain a complete set of books and records for each Mortgage Loan, which must be clearly marked to reflect SG's ownership interest.  Each of the foregoing are collectively referred to herein as the "Mortgage Loan Documents."

12.     In its capacity as servicer of the Mortgage Loans, AHMS collects on behalf of, and holds in trust for, SG, among other things, principal and interest payments made on the Mortgage Loans from end-borrowers (the "P&I Collections").  The P&I Collections are to be remitted into a collection account (the "Collection Account") established in SG's name on the tenth (10th) day of each month.

13.     In addition to the servicing obligations, AHMC and AHMS arrange for the sale of the Mortgage Loans to Approved Takeout Investors in accordance with the Purchase Agreement.  AHMS and AHMC are required to direct all Approved Takeout Investors to deposit proceeds from the sale of the Mortgage Loans (the "Mortgage Loan Sale Proceeds" and together with the P&I Collections, collectively, the "Collections") directly into the Collection Account. In the event, however, that Mortgage Loan Sale Proceeds are sent to AHMS, instead of being deposited directly into the Collection Account, AHMS must deposit the Mortgage Loan Sale Proceeds into the Collection Account within two (2) business days after receipt.

14.    Pursuant to section 8.01 of the Purchase Agreement, a Termination Event occurs when, among other things, AHMC and/or AHMS fails to make any payment when such payment comes due with respect to any Indebtedness (as defined in the Purchase Agreement) with an unpaid principal balance over $1.5 million.  Under such circumstances, a Termination Event occurs automatically under the Purchase Agreement, giving SG the right to declare a Termination Date.

15.    The occurrence and continuance of a Termination Event, in turn, triggers a Servicer Termination Event pursuant to section 4.02(a)(vii) of the Purchase Agreement. Following a Servicer Termination Event, SG, upon written notice to AHMC and AHMS, may terminate all of AHMS' Servicing Rights and obligations with respect to the Mortgage Loans and assume control of the Servicing Rights, including the sale and transfer of such servicing rights to a Successor Servicer.   Upon receipt by AHMC and AHMS of a termination notice, all authority and power of AHMS with respect to its Servicing Rights under the Purchase Agreement pass to and are vested in the Successor Servicer.

16.    Moreover, after AHMS' Servicing Rights have been terminated pursuant to section 4.02(a) of the Purchase Agreement, upon written notice to AHMS, AHMS must:

> prepare, execute and deliver to the Successor Servicer any and all documents and other instruments, place in such [Successor Servicer's] possession all files pertaining to such Mortgage Loans and do or cause to be done all other acts or things necessary to effect the purposes of such notice of termination, including, but not limited to, the transfer, endorsement and assignment of the Mortgage Loans and related documents, at [AHMS'] sole expense.

17.    On July 27, 2007, American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc.,  AHMS and AHMC (the "BofA Borrowers"), each a

borrower under the Second Amended and Restated Credit Agreement dated as of August 10, 2006 (the "BofA Credit Agreement"), were notified by Bank of America, N.A., as Administrative Agent, Swingline Lender and Lender ("BofA") under the BofA Credit Agreement, that pursuant to the terms of the BofA Credit Agreement, the BofA Borrowers were obligated to pay a mandatory prepayment of $26,779,622 (the "Mandatory Prepayment"). The Mandatory Prepayment was due on July 30, 2007. The BofA Borrowers failed to make the Mandatory Prepayment, and on August 1, 2007, BofA declared an event of default under the BofA Credit Agreement.[4]

18.     The failure to pay the Mandatory Prepayment was a Termination Event under section 8.01(g) of the Purchase Agreement as of August 1, 2007. The occurrence and continuance of the foregoing Termination Event triggered a Servicer Termination Event under section 4.02(a)(vii) of the Purchase Agreement. Consequently, on August 2, 2007, SG sent a notice (the "Termination Notice")[5] to AHMC and AHMS declaring the Termination Date to have occurred, and terminating AHMS' Servicing Rights under the Purchase Agreement. In the Termination Notice, SG specifically demanded and declared that:

(i)     All Collections be deposited into the Collection Account within two (2) business days;

(ii)    AHMS' authority with respect to the Collection Account was revoked; and

(iii)   AHMS' servicing rights with respect to the Mortgage Loans were terminated and that SG was assuming control over the disposition of the servicing rights, including the sale or transfer to a Successor Servicer.

---

[4]   A true and accurate copy of BofA's notice of default is attached to the Objection as Exhibit B.
[5]   A true and accurate copy of the Termination Notice and the facsimile confirmation confirming deliver of the Termination Notice on August 2, 2007 are attached to the Objection as Exhibits C and D, respectively.

19.    On August 6, 2007 (the "Petition Date") the Debtors filed with this Court

their petitions for bankruptcy relief under chapter 11 of the Bankruptcy Code.  Along with their

petitions, the Debtors filed motions seeking certain first day relief, including an Emergency

Motion for Orders: (A)(1) Approving Sale Procedures; (II) Scheduling a Hearing to Consider

Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and

Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of

Such Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; (II)

Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and

Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV)

Granting Related Relief (the "Sale Procedure Motion").

20.    The Sale Procedure Motion contemplates a sale of the Servicing Business,

including the Debtors' rights to service mortgage loans pursuant to the various servicing

agreements to which they are a party and the Debtors' rights to any servicing fees arising

therefrom.   On August 7, 2007, this Court granted the Sale Procedure Motion and established

the procedures for conducting a sale of the Servicing Business (the "Sale Procedures").

21.    The Assumption Notice, as filed on August 27, 2007 and later amended on

September 10, 2007, included an exhibit of contracts the Debtors sought to assume and assign

(the "Assumed and Assigned Contracts") in connection with the sale of the Servicing Business

and the proposed cure amounts for each Assumed and Assigned Contract.  The Debtors included

the Purchase Agreement among the Assumed and Assigned Contracts, and proposed a cure

amount of $0.00.  Contemporaneously herewith, SG filed the Objection.

## RELIEF REQUESTED

22.     By this Motion SG respectfully requests this Court grant SG relief from the automatic stay to (i) effectuate the transition of Servicing Rights to a Successor Servicer, and (ii) recover the Mortgage Loan Documents from the Debtors.

## BASIS FOR RELIEF REQUESTED

23.     Section 362(a) of the Bankruptcy Code stays, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  Nevertheless, upon request of a party in interest and after notice and hearing, this Court shall grant relief from the stay provided for in section 362(a) of the Bankruptcy Code if (i) "cause" is shown by the moving party to justify relief from the stay, or (ii) with respect to a stay of an act against property, if (a) the debtor does not have equity in such property; and (b) such property is not necessary to an effective reorganization of the debtor. 11 U.S.C. § 362(d)(1), (2).

A.          **Cause Exists to Modify the Stay**

24.     "Cause" is not defined in the Bankruptcy Code, rather it is a broad and flexible concept that courts in this Circuit determine on a case-by-case basis. See In re Rexene Prods. Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing In re Fernstrom Storage and Van Co., 938 F.2d 731, 735 (7th Cir. 1991)).  The legislative history to section 362 suggests that cause may be established by a single factor such as a "lack of any connection with or interference with the pending bankruptcy case." See Id. at 573 (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-44 (1997)).  SG submits that cause exists to modify the automatic stay as requested herein because the Debtors' have no cognizable interest in the Servicing Rights or the Mortgage Loan Documents that the stay is necessary to protect.

25.     Additionally, Courts have routinely held that there is "cause" to lift the automatic stay to allow a non-debtor counterparty to a contract to exercise its rights against property pursuant to a contract which was terminated prepetition and in which the debtor has no cognizable interest.  See, e.g., In re West Electronics, Inc., 852 B.R. 79, 83-84 (3d Cir. 1988) (finding bankruptcy court abused its discretion in failing to lift stay to permit creditor to terminate contract after finding the debtor had "no cognizable interest in the contract."); Robinson v. Chicago Housing Authority, 54 F.3d 316, 317-18 (7th Cir. 1995) (terminating stay to permit landlord to effectuate eviction of debtor when lease expired by its terms prepetition); In re Greenfield Dry Cleaning & Laundry, Inc., 249 B.R. 634, 644 (Bankr. E.D. Pa. 2000) (finding "cause" for relief from stay for creditor to exercise its rights against property after finding that license agreement was validly terminated prepetition and therefore debtor had no interest in the property); In re Wills Motors, Inc., 133 B.R. 297, 300 (Bankr. S.D.N.Y. 1991) (finding that cause exists to lift stay to permit creditor to exercise rights under a contract when contract terminated prepetition).

26.     The Purchase Agreement was validly terminated effective not later than August 3, 2007, and therefore, the Purchase Agreement and the Servicing Rights did not become property of the Debtors' estates on the Petition Date.  Additionally, as explicitly set forth in the Purchase Agreement, SG holds all right, title and interest in and to the Mortgage Loan Documents, which are simply held in trust by the Debtors for SG's benefit.  Thus, the Debtors have no cognizable interest in the Purchase Agreement and the Servicing Rights or in the Mortgage Loan Documents for the stay to protect and thus modifying the stay will not interfere with the Debtors' bankruptcy proceedings.  See, e.g., Rexene, 141 B.R. at 573 (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-44)  Therefore, cause exists to modify the automatic stay

to permit SG to transfer the Servicing Rights to a Successor Servicer and to recover the

Mortgage Loan Documents.

II.          **Debtors Have No Equity in the Servicing Rights or Mortgage Loan Documents and the Servicing Rights and Mortgage Loan Documents are Not Necessary to an Effective Reorganization**

27.     As previously set forth, a bankruptcy court shall grant relief from the stay

with respect to an act against property pursuant to section 362(d)(2) of the Bankruptcy Code

when (i) the debtor has no equity in the property, and (ii) the property is not necessary for the

debtor's reorganization.   See 11 U.S.C. § 362(b)(2).

28.     The Debtors have no equity in the Servicing Rights or Mortgage Loan

Documents.  SG effectively terminated the Purchase Agreement and the Purchase Agreement

and the related Servicing Rights not later than August 3, 2006, at which time the Servicing

Rights reverted to SG to transition to a Successor Servicer.  Moreover, pursuant to the terms of

the Purchase Agreement, at all times, SG owned all right, title and interest in and to the

Mortgage Loan Documents, with the Debtors simply holding the Mortgage Loan Documents in

trust on behalf of SG.  Consequently, the Debtors have no equity in the Servicing Rights or the

Mortgage Loan Documents which requires the protection afforded by the automatic stay.

29.     Moreover, the Servicing Rights and the Mortgage Loan Documents are

not necessary to the Debtors' effective reorganization.  The Debtors' "reorganization" strategy

contemplates a sale of the Debtors' Servicing Business, which includes the Debtors' rights to

service mortgage loans pursuant to the servicing agreements to which they are a party and the

right to collect servicing fees arising therefrom.  In connection with the sale of its Servicing

Business, the Debtors are seeking to assume a number of the servicing agreements, including the

Purchase Agreement (which contains the Servicing Rights), to which they are a party and to assign such servicing agreements to the purchaser of the Servicing Business.

30.    The Servicing Rights were terminated prior to the Petition Date and the Debtors' never had an ownership interest in the Mortgage Loan Documents.  Consequently, the Debtors also cannot sell the Servicing Rights (through the assumption and assignment of the Purchase Agreement or otherwise) or the Mortgage Loan Documents as part of the sale of its Servicing Business.

31.    Moreover, even in the absence of the valid termination of the Purchase Agreement, for the reasons set forth in detail in the Objection, the Purchase Agreement is not capable of assumption and assignment in connection with the sale of the Servicing Business.  In such situations, courts have routinely terminated the automatic stay to allow non-debtor counterparties to exercise their rights under contracts that cannot be assumed by a debtor.  See, e.g., Watts v. Penn. Housing Finance Co., 876 F.2d 1090, 1095 (3d Cir. 1989) (finding that creditor did not violate the automatic stay by exercising its rights postpetition under a contract the debtor could not assume); In re West Electronics, Inc., 852 F.2d 79, 83-84 (2d Cir. 1988) (holding that the bankruptcy court abused its discretion by failing to lift the stay to allow a creditor to terminate a contract that could not be assumed by the debtor); In re Future Growth Enterps., Inc., 61 B.R. 469, 472 (Bankr. E.D. Pa. 1986) (deciding that "cause" existed to lift the stay to allow creditor to exercise rights against property pursuant to lease agreement because debtor could not cure monetary default under the lease and therefore could not assume lease); In re Deppe, 110 B.R. 898, 906 (Bankr. D. Minn. 1990) (lifting stay to permit creditor to terminate franchise agreement because debtor could not cure and assume agreement); In re Quinones Ruiz,

98 B.R. 636, 639 (Bankr. D. Puerto Rico 1988) (lifting stay to permit creditor to terminate

contract because noncurable breach prevented assumption of the contract).

32.     Moreover, even assuming, *arguendo*, that the Purchase Agreement could

be assumed and assigned in connection with a sale of the Servicing Business, the Debtors would

be obligated to cure all monetary defaults outstanding under the Purchase Agreement resulting

from the Debtors' failure to turnover millions of dollars in Collections pursuant to the terms of

the Purchase Agreement.  Given the multi-million dollar cure amount owing under the Purchase

Agreement, as well as the fact that the Purchase Agreement expires by its terms on October 15,

2007, SG submits that the Purchase Agreement and the Servicing Rights are of dubious value to

the Debtors and therefore not necessary to an effective reorganization consisting of a sale of the

Servicing Business.

33.     In sum, the Purchase Agreement and the Servicing Rights contained

therein have been effectively terminated and therefore cannot be assumed and assigned or

otherwise sold in connection with the sale of the Servicing Business.  The Mortgage Loan

Documents are owned by SG and simply held in trust by the Debtors on behalf of SG and cannot

be sold by the Debtors.  Therefore, neither the Servicing Rights nor the Mortgage Loan Records

are necessary to an effective reorganization of the Debtors, which reorganization consists of the

sale of the Servicing Business.

## CONCLUSION

34.    WHEREFORE SG respectfully requests this Court enter an order granting

SG relief from the automatic stay to (i) effectuate the transition of Servicing Rights to a

Successor Servicer, and (ii) recover the Mortgage Loan Documents from the Debtors.

Dated: Wilmington, Delaware          Respectfully submitted,
      September 13, 2007

                               SIDLEY AUSTIN LLP
                               Larry J. Nyhan
                               Matthew A. Clemente
                               David A. Hall
                               One South Dearborn Street
                               Chicago, Illinois  60603
                               Telephone:  (312) 853-7000
                               Facsimile:  (312) 853-7036

                                        -and-

                               BUCHANAN INGERSOLL & ROONEY PC

                               Teresa K.D. Currier (No. 3080)
                               Mary F. Caloway (No. 3059)
                               The Brandywine Building
                               1000 West Street, Suite 1410
                               Wilmington, Delaware 19801-1054
                               Telephone:  (302) 552-4200
                               Facsimile:  (302) 552-4295

                               Counsel to Société Générale