IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | Related to Docket Nos. 11, 113 and 403 |
| | ) | |
| | ) | Objection Deadline: September 13, 2007 at 4:00 p.m. (ET) |
| | ) | Deadline for Submitting Bids: September 18, 2007 at 4:00 p.m. (ET) |
| | ) | Auction Date: September 24, 2007 at 10:00 a.m. (ET) |
| | ) | Sale Hearing Date: October 1, 2007 at 10:00 a.m. (ET) |

OBJECTION OF CITIMORTGAGE, INC. TO EMERGENCY
MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE
PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF
CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS;
(III) APPROVING FORM AND MANNER OF NOTICE THEREOF;
AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE
SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING
AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES RELATED THERETO;
<u>AND (IV) GRANTING RELATED RELIEF</u>

CitiMortgage, Inc. ("CMI") by and through their undersigned counsel, and in accordance with section 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby files this *Objection of CitiMortgage, Inc. to Emergency Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory*

1609420

*Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "Sale Motion")[1], as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

2. The statutory basis for the relief requested in this Objection is Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004(a) and 9014.

## BACKGROUND

### A.   Procedural Background

3. On August 6, 2007 (the "Petition Date"), American Home Mortgage Corp., American Home Mortgage Servicing, Inc. and certain affiliates (collectively, the "Debtors") commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases").

4. The Cases are being jointly administered in accordance with an order this Court entered on August 7, 2007.

5. On August 6, 2007, the Debtors filed the Sale Motion.

6. On August 9, 2007, this Court entered its *Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief* (the "Sales Procedures Order") establishing procedures for the sale of the Debtors servicing business (the "Proposed Sale") and providing, among other things, that an auction to sell that business shall take place on September 10, 2007.

---

[1] CMI also objects to documents related to the Motion, including the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any.

2

1609420

7. On August 27, 2007, the Debtors served a *Notice of (i) Possible Assumption and Assignment of Certain Leases, License Agreements and Executory Contracts; and (ii) Proposed Cure Obligations, If Any* ("Assumption and Cure Notice") which included on the attached Exhibit to that Notice the following contract the Debtors propose to assume in the Proposed Sale of its Servicing Rights:

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/Arrangement | Proposed Cure Amount |
|---|---|---|---|
| <u>In the case of the Assignor:</u><br>HSBC Bank USA, National Association Re: HALO 2007-AR2/HALO 2007-1<br>452 Fifth Avenue,<br>New York, NY  10018<br>Attn:  Head of MBS Principal Finance<br><br><u>In the case of Assignee:</u><br>HSI Asset Securitization Corporation<br>452 Fifth Avenue, 10th Floor<br>New York, NY  10018<br>Attn:  Head of MBS Principal Finance<br><br><u>In the case of Trustee:</u><br>Deutsche Bank National Trust Company<br>1761 St. Andrew Place<br>Santa Ana, CA  92705<br>Attn:  Trust Administration | Assignment, Assumption and Recognition Agreement, made as of May 1, 2007, among HSBC Bank, National Association (the "Assignor"), HSI Asset Securitization Corporation (the "Assignee"), CitiMortgage, Inc. as Master Servicer (the "Master Servicer"), Deutsche Bank National Trust Company (the "Trustee") not individually, but solely as trustee on behalf of the holders of the HSI Asset Loan Obligation Trust, Series 2007-1, Asset-Backed Certificates, American Home Mortgage Corp. (the "Company") and American Home Mortgage Services, Inc. (the "Servicer")<br><br>(HALO 2007-1) | Third Party Securitization | $0.00 |

| | | | |
|---|---|---|---|
| In the case of the Master Servicer:<br>CitiMortgage, Inc.<br>4000 Regent Boulevard<br>Irving, TX 75063<br>Attn: Master Servicing Division, Compliance Manager – HALO 2007-1<br><br>In the case of Securities Administrator:<br>Citibank, N.A.<br>388 Greenwich Street, 14th Floor<br>New York, NY 10013<br>Attn: Structured Finance Agency and Trust, HALO 2007-1 | | | |

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/Arrangement | Proposed Cure Amount |
|---|---|---|---|
| In the case of the Assignor:<br>HSBC Bank USA, National Association Re: HALO 2007-AR2/HALO 2007-1<br>452 Fifth Avenue,<br>New York, NY 10018<br>Attn: Head of MBS Principal Finance<br><br>In the case of Assignee:<br>HSI Asset Securitization Corporation<br>452 Fifth Avenue, 10th Floor<br>New York, NY 10018<br>Attn: Head of MBS Principal Finance<br><br>In the case of Trustee:<br>Deutsche Bank National Trust Company<br>1761 St. Andrew Place<br>Santa Ana, CA 92705<br>Attn: Trust Administration | Assignment, Assumption and Recognition Agreement, made as of January 1, 2007, among HSBC Bank, National Association (the "Assignor"), HSI Asset Securitization Corporation (the "Assignee"), CitiMortgage, Inc. as Master Servicer (the "Master Servicer"), Deutsche Bank National Trust Company (the "Trustee") not individually, but solely as trustee on behalf of the holders of the HSI Asset Loan Obligation Trust, Series 2007-AR1, Asset-Backed Certificates, American Home Mortgage Corp. (the "Company") and American Home Mortgage Servicing, Inc. | Third Party Securitization | $0.00 |

4

1609420

| | | | |
|---|---|---|---|
| In the case of the Master Servicer:<br>CitiMortgage, Inc.<br>4000 Regent Boulevard<br>Irving, TX  75063<br>Attn:  Master Servicing Division, Compliance Manager – HALO 2007-1<br><br>In the case of Securities Administrator:<br>Citibank, N.A.<br>388 Greenwich Street, 14th Floor<br>New York, NY  10013<br>Attn:  Structured Finance Agency and Trust, HALO 2007-1 | (the "Servicer")<br><br>(HALO 2007-AR1) | | |

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/Arrange-ment | Proposed Cure Amount |
|---|---|---|---|
| CitiMortgage, Inc.<br>4000 Regent Boulevard, 3rd Floor (MC:N3B-355)<br>Dallas, TX  75063-2246 | N/A | Loan Sale and Servicing Agreement | $0.00 |

**B.    Factual Background**

**1.    The Securitizations**

8.    Debtor American Home Mortgage Corporation (the "Company") engaged in the business of originating residential mortgage loans (the "Mortgage Loans").

9.    Debtor American Home Mortgage Servicing, Inc. (the "Servicer") engaged in the business of "servicing" the Mortgage Loans including, without limitation, collecting payments from the mortgagors, payment of the mortgagor's taxes and insurance from escrowed funds, enforcing the terms of the Mortgage Loans and, when necessary after a default, instituting foreclosure proceedings.

5

1609420

10. The Company "monetized" certain Mortgage Loans through "third party securitization transactions" as follows: the Mortgage Loans were first sold to HSBC Bank USA, National Association ("HSBC"), which in turn sold the Mortgage Loans to HSI Asset Securitization Corporation ("HSI"), which then sold the Mortgage Loans to various trusts (the "Trusts") with Deutsche Bank National Trust Company (the "Trustee"), acting as trustee, and the Trusts then issued securities in the form of mortgage backed certificates (the "Certificates") to holders in both public and private offerings.

11. The Servicer's obligations followed the Mortgage Loans such that the Servicer continues to be primarily responsible for servicing the Mortgage Loans originated by the Company, notwithstanding their ultimate securitization and assignment to the Trusts.

12. Pursuant to a "Pooling and Servicing Agreement" for each Trust, the Company's Mortgage Loans were "pooled" with mortgage loans that had been similarly assigned up to the Trusts by other mortgage originators..

13. CMI was appointed to serve as "Master Servicer" under the Pooling and Servicing Agreements with responsibility to, *inter alia*, monitor and enforce the obligations of the Servicer, and to collect from the Servicer the payments of principal and interest thereon, for the benefit of the Trusts and the holders of the Certificates.

14. There were two third party securitization transactions referenced in the Sale Motion: the "HALO 2007 AR1" transaction, which closed in January 2007, and the "HALO 2007-1" transaction, which closed in May 2007.

15. With respect to the HALO 2007 AR1 transaction, the following occurred: (i) Pursuant to that certain Master Mortgage Loan Purchase and Servicing Agreement (the "AR1 Purchase Agreement"), dated as of June 21, 2006, among the Company, the Servicer and HSBC,

the Company sold a group of Mortgage Loans to HSBC, and the Servicer agreed to continue to service such Mortgage Loans for the benefit of HSBC and it successors and assigns; and (ii) pursuant to that certain Assignment, Assumption and Recognition Agreement, dated as of January 1, 2007 (the "AR1 AA&R Agreement"), among HSBC, HSI, CMI, and the Trustee, the Mortgage Loans were further assigned to HSI, the parties recognized that the Mortgage Loans would be further assigned to a trust (the "AR1 Trust") that would issue pass through certificates, and the AR1 Purchase Agreement was amended to provide for the Servicer to continue to service the Mortgage Loans, under the direction of CMI, as Master Servicer, for the benefit of the holders of such certificates (the AR1 Holders"); and (iii) pursuant to the Pooling and Servicing Agreement, dated as of January 1, 2007 (the "AR1 P&S Agreement"), among HSI (as Depositor), CMI (as Master Servicer), Citibank, N.A (as Securities Administrator), Wells Fargo Bank, N.A. (as Custodian) and the Trustee, HSI transferred the Mortgage loans to the AR1 Trust which, in turn issued its pass through certificates to the AR1 Holders, and CMI agreed to act as Master Servicer and, inter alia, enforce the obligations of the Servicer under the AR1 Purchase Agreement and the AR1 AA&R Agreement (collectively, the "AR1 Servicing Agreement").

16. Similarly, with respect to the HALO 2007-1 transaction, the following occurred: (i) Pursuant to that certain Master Mortgage Loan Purchase and Interim Servicing Agreement (the "2007-1 Purchase Agreement"), dated as of November 1, 2006, among the Company, the Servicer and HSBC, the Company sold a group of Mortgage Loans to HSBC, and the Servicer agreed to continue to service such Mortgage Loans for the benefit of HSBC and it successors and assigns; and (ii) pursuant to that certain Assignment, Assumption and Recognition Agreement, dated as of May 1, 2007 (the "2007-1 AA&R Agreement"), among HSBC, HSI, CMI, and the Trustee, the Mortgage Loans were further assigned to HSI, the parties recognized that the

7

1609420

Mortgage Loans would be further assigned to a trust (the "2007-1 Trust") that would issue pass through certificates, and the 2007-1 Purchase Agreement was amended to provide for the Servicer to continue to service the Mortgage Loans, under the direction of CMI, as Master Servicer, for the benefit of the holders of such certificates (the "2007-1 Holders"); and (iii) pursuant to the Pooling and Servicing Agreement, dated as of May 1, 2007 (the "2007-1 P&S Agreement"), among HSI (as Depositor), CMI (as Master Servicer), Citibank, N.A (as Securities Administrator), Wells Fargo Bank, N.A. (as Custodian) and the Trustee, HSI transferred the Mortgage loans to the 2007-1 Trust which, in turn issued its pass through certificates to the 2007-1 Holders, and CMI agreed to act as Master Servicer and, inter alia, enforce the obligations of the Servicer under the 2007-1 Purchase Agreement and the 2007-1 AA&R Agreement (collectively, the "2007-1 Servicing Agreement").[2]

2.   **Servicer's Duties Under the AR1 Servicing Agreement and the 2007-1 Servicing Agreement (collectively, the "Servicing Agreements").**

17.   Under the Pooling and Servicing Agreements, as Master Servicer, CitiMortgage is responsible for the aggregation of monthly servicer reports and remittances and for the oversight of the performance of Servicer under the Servicing Agreements.

18.   Under the AR1 Servicing Agreement and the 2007-1 Servicing Agreement (collectively, the "Servicing Agreements"), the Servicer is obligated, *inter alia*, to pay all expenses incurred by it in connection with its servicing activities under the applicable Servicing Agreements and is not entitled to reimbursement for such expenses except as specifically provided in the Servicing Agreements. In addition, the Servicer's obligations under the Servicing Agreements include, without limitation:

---

[2] We presume that the reference in the Assumption and Cure Notice to the "Loan Sale and Servicing Agreement" is the AR1 Purchase Agreement and/or the 2007-1 Purchase Agreement, but cannot be sure. See infra pp. 12-14.

1609420

a. <u>P&I Advances</u>: The Servicer is required to make P&I Advances on the mortgage loans it services.

b. <u>Servicing Advances</u>: The Servicer is required to advance amounts with respect to the mortgage loans serviced by it. Servicing advances are "out-of-pocket" costs and expenses relating to:

- the preservation, restoration and protection of the mortgaged property;

- enforcement or judicial proceedings, including foreclosures;

- the management and restoration of "REO Property;" and

- certain other customary amounts described in the Servicing Agreements.

c. <u>Prepayment Interest Shortfalls</u>: In the event of certain voluntary principal prepayments on mortgage loans certain shortfalls in interest collections resulting from such prepayments will be paid to the Trust by the Servicer without any right of reimbursement, as compensating interest in an amount equal to the lesser of that shortfall in interest collections and the Servicer's fee collected for that period.

d. <u>Collection and Other Servicing Procedures</u>: The Servicer is responsible for making reasonable efforts to collect all payments called for under the mortgage loans it services and must, consistent with the provisions of the applicable Servicing Agreement, follow such collection procedures as it follows with respect to loans held for its own account that are comparable to such mortgage loans. The Servicer is required to accurately and fully report its borrower payment histories to all three credit repositories in a timely manner with respect to each mortgage loan serviced by it. If a mortgaged property has been or is about to be conveyed by the mortgagor, The Servicer is obligated to accelerate the maturity of the mortgage loan, unless the

1609420

exercise of such "due-on-sale" clause acceleration rights is (i) prohibited by law or (ii) would impair or threaten recovery under any primary mortgage insurance policy related to such mortgage loan.

  e. <u>Hazard Insurance</u>: The Servicer is required to cause to be maintained for each mortgaged property a hazard insurance policy with coverage which contains a standard mortgagee's clause generally in an amount equal to the least of (a) the outstanding principal balance of such Mortgage Loan, but in no event may such amount be less than is necessary to prevent the borrower from becoming a co-insurer under the policy, (b) the amount necessary to fully compensate for any damage or loss to the improvements that are a part of such property on a replacement cost basis and (c) the maximum insurable value of the improvements which are a part of such Mortgaged Property. As set forth above, all amounts collected by a Servicer under any hazard policy, except for amounts to be applied to the restoration or repair of the Mortgaged Property or released to the borrower in accordance with such Servicer's normal servicing procedures, must ultimately be deposited in a collection account maintained by Master Servicer for the benefit of the Certificate holders.

  f. <u>Realization Upon Defaulted Mortgage Loans</u>: The Servicer is required to foreclose upon, or otherwise comparably convert to ownership, mortgaged properties securing such of the mortgage loans as come into default when, in the opinion of the Servicer, no satisfactory arrangements can be made for the collection of delinquent payments.

19. The following constitute defaults under the Servicing Agreements:

  a. any failure by the Servicer to remit any payment required to be made by it under the terms of the applicable Servicing Agreement;

1609420

      b.     any failure on the part of the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer contained in the applicable Servicing Agreement;

      c.     a decree or order of a court or agency or supervisory authority having jurisdiction in an involuntary case under any present or future federal or state bankruptcy, insolvency or similar law or for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, is entered against the Servicer;

      d.     the Servicer consents to the appointment of conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Servicer or of or relating to all or substantially all of the Servicer's property; or

      e.     the Servicer admits in writing its inability generally to pay its debts as they become due, files a petition to take advantage of any applicable insolvency or reorganization statute, makes an assignment for the benefit of its creditors, or voluntarily suspends payment of its obligations;

      f.     the Servicer shall cease to be an approved servicer by Fannie Mae or Freddie Mac;

      g.     the Servicer fails to maintain a net worth of $25,000,000;

      h.     Any failure by the Servicer to duly perform, within the required time periods, its obligations to provide any reports on assessment and attestation of compliance with relevant servicing criteria, certain related officer's certifications and other notifications required by Regulation AB, as provided under the applicable Servicing Agreement; or

1609420

    i.  the Servicer fails to maintain its license to do business or service residential mortgage loans in any jurisdictions in which the applicable mortgaged properties are located.

  20. Under the Servicing Agreements, the Servicer must provide an annual report on an assessment of compliance with certain "Regulation AB" servicing criteria. The Servicer must also deliver along with its report on assessment of compliance, an attestation report from a firm of independent public accountants on the related assessment of compliance with such criteria, which include specific criteria relating to the following areas: general servicing considerations, cash collection and administration, investor remittances and reporting and pool asset administration. Each report is required to indicate that the applicable criteria were used to test compliance of the Servicer on a platform level basis and will set out any material instances on noncompliance.

## **OBJECTIONS**

  23. CMI objects to the Sale Motion on four grounds: (i) Debtor should be required to unambiguously identify the contracts it seeks to assume and assign; (ii) Debtor must cure any defaults, including any non-monetary defaults of the Servicer under the Servicing Agreements (determined with respect to performance through the effective time of any assignment, not at the time of the Sale Motion), (iii) CMI is entitled to adequate assurance that the proper cure amount will be paid and of future performance by any prospective purchaser, (iv) the Servicing Agreements cannot be assigned without the consent of CMI and the Trustee, which CMI and the Trustee have not given and do not give.

  24. <u>It is unclear what contracts the Debtors are seeking to assume and assign</u>. The Assumption and Cure Notice list the AR1 AA&R Agreement and the 2007-1 AA&R Agreement

1609420

as contracts that are being assumed and assigned, but does not list the AR-1 Purchase Agreement or the 2007-1 Purchase Agreement referenced therein, that provide for the specifics of the Servicer's servicing obligations. However, the Assumption and Cure Notice then goes on to describe a generic "Loan Sale and Servicing Agreement," but does not specify the parties, name or the date of the agreement. It is unclear the contract to which this purports to refer, perhaps the AR1 Purchase Agreement and/or the 2007-1 Purchase Agreement, or the Servicing Agreements or perhaps another agreement, since CMI is listed as a contact, and CMI is not a party to either such Purchase Agreement.

25.     The Sale Motion and the Assumption and Cure Notice are hopelessly ambiguous as to what executory contracts the Debtors are seeking to assume and assign. CMI should not have to guess. The Debtors ought to be required to provide CMI with a copy of all such contracts and/or definitively identify the contracts by precise title and date so that CMI can determine what the contracts are, whether they are executory, whether they are subject to assumption and assignment and whether there are any cure amounts due thereunder. CMI reserves its rights to state cure amounts and objections once it understands what the Debtors are purporting to assume and assign, and once it knows what the Debtors' performance through the time that their obligations are to be transferred.

26.     Moreover, the Motion, however, does not provide <u>any</u> adequate assurance that a Qualified Bidder would assume and perform all terms of the Assumed Contracts. The Motion does not provide any form of assumption agreement that a successor servicer would enter into with the Trustee, the Master Servicer and other non-debtor parties to the Servicing Agreements pursuant to which such a successor servicer would assume all of the servicing obligations under the Servicing Agreements. The Motion and the form Asset Purchase Agreement fail to specify

13

1609420

whether a Qualified Bidder as successor servicer would need to assume the Purchasing and Servicing Agreements in their entirety. Any successor servicer would need to assume all of the Purchase and Servicing Agreements expressly subject to all the terms thereof. The failure of any successor servicer to assume the Servicing Agreements other than subject to all the terms thereof would constitute an impermissible modification of the Servicing Agreements and CMI cannot be forced to accept a modification of the Servicing Agreements. Any successor must accept <u>all</u> contracts, not just some, as they exist, without modification.

27.    <u>The Servicer and the Company must cure any defaults under the Servicing Agreements</u>. To the extent that any purchaser seeks to purchase the Servicing Agreements, such purchaser must cure all defaults thereunder and pay the correct cure amount. Section 365 of the Bankruptcy Code, 11 U.S.C. § 365, provides, in pertinent part:

> (b)(1) If there has been a default in an executory contract or unexpired lease . . . of the debtor, the trustee may not assume such contract . . . unless, at the time of assumption of such contract, the trustee
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default . . .

11 .S.C. § 365(b)(1)(A).

28.    The Servicer and the Company must continue to perform their obligations under the Servicing Agreements on a post-petition basis and obligations and payments associated with such performance continue to accrue. Depending on the closing date of the sale of the Debtor's assets, the cure amount may increase or other obligations may come due. For example, in connection with a transition of the Servicing Agreements to a successor servicer, there must be an orderly transition, including all amounts collected on the mortgage loans being turned over to the successor servicer, if not already paid up to the Master Servicer, and all files, records (paper and electronic) concerning the mortgage loans, and the servicing thereof, will need to be turned

14

1609420

over to the successor servicer completely and accurately. Any defaults under the contracts, whether monetary or non-monetary, must be cured.

29. CMI reserves the right to amend this limited cure objection and/or the cure amount to the extent that CMI determines, *inter alia*, that any other or additional cure amounts are due and/or it determines there are other defaults under the Servicing Agreements.

30. <u>CMI is entitled to adequate assurance that the cure amount will be promptly paid, defaults cured and of future performance by any prospective purchaser.</u> Whether a debtor or a prospective assignee of executory contracts has provided adequate assurance within the meaning of 11 U.S.C. § 365 is typically determined by the financial stability of a debtor or a proposed assignee of an executory contract. To determine whether adequate assurance has been provided, courts consider whether a debtor or a prospective assignee has provided (1) evidence of profitability, (2) a plan to earmark money exclusively to cure the default and (3) the willingness and ability of the debtor or its proposed assignee to fund cure payments. Here, however, any such buyer would have to show much more. Under the Servicing Agreements, any successor servicers that seek to step into the shoes of the Servicer must meet all of the requirements of being servicer thereunder and must agree on writing to assume and accept all of the obligations as Servicer thereunder.

31. Under 11 U.S.C. § 365(b) and (f), a non-debtor party to an executory contract is entitled to adequate assurance that any and all defaults under the executory contract will be promptly cured. In reference to payment of cure amounts by potential purchasers, the Sale Motion does not give any indication of how monies that Servicer has been paid by mortgages and is holding, is to be paid to any purchaser or to the designated beneficiaries. The Debtor's failure to disclose how monies held by the Servicer for the beneficiaries does not provide CMI

1609420

with adequate assurance that the cure amount will be paid promptly, as is required under Section 365. CMI is entitled to know, prior to the assumption of the Servicing Agreements, when and in what manner the cure amount will be paid.

32. Under U.S.C. § 365(b) and (f), CMI is also entitled to adequate assurance of a prospective purchaser's ability to perform the obligations required by the Contracts. The Sale Motion does not indicate what financial information will be made available and in what detail. Also, the Sale Motion does not state whether any of the financial information provided by a prospective purchaser of the Contracts will be available for review by CMI prior to the Auction. CMI submits that a cursory review of a prospective purchaser's financial information does not provide adequate assurance that any prospective purchaser of the Servicing Agreements will be able financially to perform under the Servicing Agreements. Further, CMI will be unable to conduct a review of a prospective purchaser's financial wherewithal because CMI will not have time to adequately prepare such a review and will not have the necessary financial information it needs to conduct such a review, nor is it presently allowed at the auction.

33. Under the circumstances of this case, CMI submits that any purchaser and the Debtor should be required to disclose to CMI documentation regarding the financial condition of any prospective purchaser prior to the assumption and assignment and be permitted enough time to review the financial documentation provided prior to the Auction. Moreover, CMI should be permitted to attend the auction.

34. The Motion and form Asset Purchase Agreement do not require that Qualified Bidders must satisfy the eligibility criteria for any servicer that is expressly set forth in the Servicing Agreements. A failure of a successor servicer to satisfy such criteria would constitute an impermissible modification of the Servicing Agreements.

1609420

35. Servicing and the Company have important indemnification obligations to CMI and the Trusts under the Servicing Agreements. The Motion would not require a successor servicer to assume such indemnification obligations. In fact, the form of Asset Purchase Agreement expressly excludes such indemnification obligations from the definition of "Servicing Rights" to be assumed by a Qualified Bidder in Section 2.5 thereof and fails to expressly include such indemnification obligations in the "Retained Liabilities" for which the Debtors remain liable under Section 2.6 thereof. Claims are held by CMI and the Trusts under the Servicing Agreements that remain contingent and unliquidated, but nevertheless, are subject to the Debtors' indemnity obligations. These claims include potential claims for servicing breaches discovered later, failure to take actions expected of a servicer to cure document exceptions relating to the mortgage loans and claims for improper servicing and other potential causes of action. The Motion provides no adequate assurance that CMI or the Trusts would be adequately indemnified.

36. Any purchaser must accept all agreements in their entirety, including the above, and must also stop in the shoes of the servicer and the Company with respect to representations and warranties.

37. <u>The Servicing Agreements Specify that they Cannot Be Assigned Without CMI's Consent and the Trustee's Consent, Which CMI and the Trustee Do Not Give.</u>

38. Section 365(c)(1) states:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, (A) if applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or

1609420

> restricts assignment of rights or delegation of duties; and (B) such
> party does not consent to such assumption or assignment . . .

11 U.S.C. § 365(c)(1). Because, under applicable law, the Servicing Agreement cannot be assigned without the consent of CMI and the Trustee, and does not know who its contract will be assigned to, CMI will not consent to any such assignment, unless the prospective purchaser is satisfactory to them, and qualifies in all respects to be a successor servicer under applicable law and the requirements of the transaction documents for the HALO 2007-1 and HALO 2007 AR1 securitizations.

39. CMI has not consented to the assumption and assignment of the Servicing Agreements as required by the form Asset Purchase Agreement. The form of Asset Purchase Agreement expressly specifies at Sections 2.4(a), 6.3(c)(ii) and 6.3(d) that the assumption and assignment of proposed Assumed Contracts cannot be consummated without obtaining necessary consents of third parties. This would include the consent of CMI and the Trustee under the Servicing Agreements. Neither CMI nor the Trustee has consented to the assumption or assignment of the Servicing Agreements.

WHEREFORE, CMI respectfully requests that this Court enter an order (a) conditioning the Debtor's Sale, assumption or assignment of the Servicing Agreements upon the immediate payment of all amounts due under the Servicing Agreements, including but not limited to, any amounts Debtor is holding for the benefit of CMI and cure of non-monetary defaults; (b) requiring any prospective purchaser to give adequate assurance of future performance, (c) conditioning any assignment upon CMI's and the Trustee's consent and (d) granting such further relief as this Court deems just and proper.

[remainder of page intentionally left blank]

1609420

Dated: September 13, 2007

**MORRIS JAMES LLP**

*/s/ Brett D. Fallon*

Brett D. Fallon (DE Bar No. 2480)
Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302)888-6888
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com

-and-

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 24005
Denver, Colorado 80202-5424
Telephone: (303) 626-7139
Facsimile: (303) 626-7101
Email: apetrie@featherstonelaw.com

*Attorneys for CitiMortage, Inc.*

19

1609420