```
_M05R601      placa                    CONFIDENTIAL                              10293
                              ─── Customer Statistics Display ───
           Cust Id: SQ359        Cust Name: AMERICAN HOME MORTGAGE
            As of: 09/01/2007        MTD New Cub Ft:     .00
  Number of Boxes: 104         MTD Withdrawn Cub Ft:     .00
    Cubic Footage: 124.80      MTD Destroyed Cub Ft:     .00

 Dist                Media          Total          Adds       Withdrawn       Dest
  Id   Dept Id       Type          Cub Ft         Cub Ft       Cub Ft          C
 ─────────────────────────────────────────────────────────────────────────────────
 >SM                               124.80           .00          .00


          <NEXT(F1)>  <JUMP(F3)>  <TOTALS(F8)>  <PRINT(F9)>  <MENU(F12)>
```

# ▲ IRON MOUNTAIN®

RECEIVED
APR 26 2005

## CUSTOMER AGREEMENT

### IRON MOUNTAIN INFORMATION MANAGEMENT, INC.

Address of Iron Mountain Branch/District Office:
8150 Signal Ct.
Sacramento, CA 95824

FOR IRON MOUNTAIN PURPOSES ONLY
Account Number: SQ359   NAICS Code: 522291
Branch/District Cost Ctr. No.: 0111

Contract Effective Date: April 1, 2005

CUSTOMER: American Home Mortgage
Street Address: 1610 Arden Way, #275
City: Sacramento   State: CA   Zip + 4: 95815
Primary Contact and Title: Twanna Moore
Telephone: 916 923-9130
E-mail: twanna.moore@americanhm.com

BILLING ADDRESS (If Different):
Street or Box No.:
City:   State:   Zip + 4:
Billing Contact:
Telephone:   Fax:
E-mail:

Iron Mountain Information Management, Inc. ("Iron Mountain") will perform the services described on schedules annexed to this Agreement, either physically or by reference (each a "Schedule"), and Customer will pay Iron Mountain for such services according to the rates and provisions in the Schedules. All services will be provided subject to the terms and conditions set forth herein and in any Schedule. In order to keep Customer apprised of Iron Mountain's service offerings, new regulations that may potentially be of interest to customers and similar information, Iron Mountain will, if an e-mail address is included above, add Customer to Iron Mountain's informational mailing list to receive newsletters and communications periodically through e-mail, electronic transmission or postal delivery. Upon Customer's receipt of the first such communication, in the event Customer elects not to receive subsequent newsletters and communications from Iron Mountain, Customer may "unsubscribe."

VALUE OF DEPOSITS. Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy records, microfilm and microfiche stored pursuant to this Agreement, the value of such stored items is $1.00 per carton, linear foot of open-shelf files, container or other hard-copy storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data cartridges or data cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is limited to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

LIMITATION OF LIABILITY. Iron Mountain's liability, if any, for loss or destruction of, or damage to, materials stored with Iron Mountain ("Deposits") is limited to the value of each Deposit as described above, or as otherwise set forth on the reverse side hereof. Iron Mountain reserves the right to provide replacement of media for which liability is limited to replacement cost rather than payment of replacement cost. Iron Mountain's maximum liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if the loss is related to service of an ongoing and continuing nature, six months of fees paid by Customer for such service. Other limitations on Iron Mountain's and/or Customer's liability are set forth on the following pages.

CUSTOMER: American Home Mortgage
Individual Signing [print name]: David Herd
Signature: David P. Herd
Title: Branch Manager
Signing Date: 4-19-05

IRON MOUNTAIN
Individual Signing [print name]: Cheryl Pearson
Signature:
Title: CSM
Signing Date: 4-21-05

The following terms and conditions shall apply to this Agreement.

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the first page of this Agreement. The initial term of this Agreement shall continue for one (1) year after commencement, unless otherwise set forth in a Schedule. Unless otherwise provided in a Schedule, upon expiration of the initial term, the term will continue with automatic renewals for additional one (1) year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty (30) days prior to the expiration date. In the event that Iron Mountain continues to hold Deposits after the expiration or termination of this Agreement, the terms of this Agreement shall continue to apply until all of Customer's Deposits have been removed from Iron Mountain's facility, except that Iron Mountain may adjust rates upon thirty (30) days' written notice.
2. **Charges.** Rates and charges shall be as specified in Schedules. Unless otherwise provided in a Schedule: (i) rates for storage shall remain fixed for the first year of this Agreement, and may thereafter be changed at any time upon thirty (30) days' written notice, and (ii) rates for services may be adjusted by Iron Mountain at any time upon thirty (30) days' written notice.
3. **Principal Records Services Provider.** The charges for the services set forth in the Schedules are predicated upon the expectation that Customer will utilize Iron Mountain as its primary commercial provider of the services covered by each Schedule. In the event that Customer does not so utilize Iron Mountain's services, Iron Mountain reserves the right to adjust rates and charges to the standard list rates and charges.
4. **Authorization; Customer Instructions.** Deposits may be delivered pursuant to direction of Customer's agent(s) identified pursuant to Iron Mountain's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for, or disposal or removal of, Customer's Deposits. Such orders may be given in person, by telephone or in writing (fax, electronically or hard-copy).
5. **Operational Procedures.** Customer shall comply with Iron Mountain's reasonable operational requirements, as modified from time to time, regarding containers, delivery/pick-up volumes, security, access and similar matters. Customer acknowledges that volume requests that exceed one hundred twenty-five percent (125%) of normal volume may require Iron Mountain to incur additional costs, which Customer will pay at Iron Mountain's overtime rates, provided that Iron Mountain shall have advised Customer thereof in advance.
6. **Force Majeure.** In no event shall either party be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, acts of terrorism, riots, unusual traffic delays or other causes beyond its reasonable control.
7. **Governmental Orders.** Iron Mountain is authorized to comply with any subpoena or similar order related to the Deposits, provided that Iron Mountain notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Iron Mountain's applicable charges set forth in a Schedule(s) for such compliance. Iron Mountain will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense. Customer acknowledges that its shipments may be subject to inspection by federal, state or local government entities ("Government Inspectors"), and Customer authorizes Iron Mountain to fully cooperate with such inspections. Iron Mountain shall bear no responsibility for loss or damage to Deposits, or containers housing such Deposits, caused by Government Inspectors.
8. **Confidentiality.** "Confidential Information" means any information contained in the Deposits and any information concerning or relating to the property, business and affairs of Customer that is furnished to Iron Mountain, except for information that was previously known to Iron Mountain free of any obligation to keep it confidential, is subsequently made public by Customer or is disclosed by a third party having a legal right to make such disclosure. All Confidential Information shall be held in confidence by Iron Mountain and shall be used only in the manner contemplated by this Agreement. Iron Mountain shall not obtain any rights of any sort in or to the Confidential Information of Customer disclosed hereunder. Iron Mountain shall use the same degree of care to safeguard Confidential Information as it utilizes to safeguard its own confidential information, but in no case less than reasonable care.
9. **Liability in Event of Loss of Deposits.** Iron Mountain shall not be liable for any loss or destruction of, or damage to, Deposits, however caused, unless such loss or damage resulted from the failure by Iron Mountain to exercise such care as a reasonably careful person would exercise under like circumstances; Iron Mountain is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable, the amount of Iron Mountain's damages is limited as provided on the first page hereof. Deposits are not insured by Iron Mountain against loss or damage, however caused. Customer may insure Deposits through third-party insurers for any amount, including amounts in excess of the limitation of liability. Customer shall cause its insurers of Deposits to waive any right of subrogation against Iron Mountain. If Deposits are placed in the custody of a common carrier for transportation, the common carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the common carrier.
10. **Liability for Non-Storage Services.** With respect to services not related to the storage of Deposits, Iron Mountain shall not be liable for any loss or default unless such loss or default is due to the negligence of Iron Mountain. If liable, the amount of Iron Mountain's damages is limited as provided on the first page hereof.
11. **No Consequential Damages, etc.** In no event shall either party be liable for any consequential, incidental, special or punitive damages, regardless of whether an action is brought in tort, contract or any other theory.
12. **Destruction of Deposits.** Customer releases Iron Mountain from all liability by reason of the destruction of Deposits pursuant to Customer's written direction. Except for those Deposits that Customer specifically identifies in writing as not containing consumer information (as defined in 16 CFR Section 682.1) or personal data, all other Customer Deposits will be destroyed by shredding, except for media that may be destroyed by pulverizing or incineration. Each such destruction shall be at the rates set forth in a Schedule.
13. **Service Warranty.** Iron Mountain represents and warrants that the services provided under this Agreement will be performed in accordance with industry standards and will be provided in substantial conformance with Iron Mountain supplied documentation applicable to the services. This warranty is limited and shall not apply to any of the services where the failure to satisfy this warranty resulted, in whole or in part, from Customer's improper use of the services. In the event of Iron Mountain's breach of the foregoing warranty, Customer's exclusive remedy and Iron Mountain's entire liability shall be for Iron Mountain to promptly re-perform the applicable services, at no charge, so as to bring the performance of the services into compliance with the terms of this warranty.
14. **No Product Warranty.** Iron Mountain hereby assigns to Customer any manufacturers' warranties applicable to any products sold by Iron Mountain pursuant to this Agreement. Iron Mountain provides no warranties related to products sold. WITH RESPECT TO PRODUCTS SOLD BY IRON MOUNTAIN TO CUSTOMER, IRON MOUNTAIN MAKES NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
15. **Notice of Claims.** Claims by Customer must be presented in writing within a reasonable time, and in no event longer than ninety (90) days after delivery or return of the Deposits to Customer or ninety (90) days after Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.
16. **Filing of Actions.** No action may be maintained against Iron Mountain for loss, damage or destruction of Deposits, unless timely written claim has been given as provided in Section 15, and unless such action is commenced either within one (1) year after: (i) the date of delivery or return of the Deposits by Iron Mountain; or (ii) the date Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.
17. **Notice of Loss.** When Deposits have been lost, damaged or destroyed, notice thereof may be given by mailing a certified letter (return receipt requested) to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or suit begins on the date of Customer's receipt of such notice.
18. **Payment.** Payment terms are net, thirty (30) days. If Customer fails to pay Iron Mountain's charges (other than disputed charges) within forty-five (45) days after the date of an invoice, Iron Mountain may, at its option: (a) suspend service, (b) redeliver Deposits to Customer or (c) terminate this Agreement. Customer shall be liable for late charges at the rate equal to the lesser of one percent (1%) per month or the highest rate legally permitted in the state where Customer is located, calculated from the date payment was due until the date payment is made, and all expenses incurred in collection, including reasonable attorneys' fees. If Customer is consistently delinquent (defined as being late in the payment of any three [3] or more undisputed invoices in a 12-month period) and/or upon the expiration or termination of this Agreement, Iron Mountain may require payment by certified check prior to performance of services, including delivery of Deposits. Upon default by Customer, Iron Mountain shall have other rights and remedies as may be provided by law. In the event Iron Mountain takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer.
19. **Ownership Warranty.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store the Deposits and direct their disposition in accordance with the terms of this Agreement. Customer shall reimburse Iron Mountain for any expenses reasonably incurred by Iron Mountain (including reasonable legal fees) by reason of Iron Mountain's compliance with the instructions of Customer in the event of a dispute concerning the ownership, custody or disposition of Deposits stored by Customer with Iron Mountain.
20. **Restrictions on Stored Material; Customer Premises.** Customer shall not store with Iron Mountain nor deliver to Iron Mountain for secure shredding any material that is highly flammable, explosive, toxic, radioactive, medical waste, organic material which may attract vermin or insects, or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. Customer shall not store negotiable instruments, jewelry, check stock or other items that have intrinsic value. All Customer's premises where Iron Mountain's employees perform services or make deliveries hereunder shall be free of hazardous substances and any other hazardous or dangerous conditions.
21. **Software License.** If access to or use of Iron Mountain inventory management software and computer programs (the "Software") is provided hereunder in connection with the services, Iron Mountain hereby grants Customer a limited, nonexclusive license to use the Software solely in conjunction with records storage services provided by Iron Mountain during the term of this Agreement. Customer acknowledges that all Software and the inventory management system comprised of the Software belong to Iron Mountain. During the term of this Agreement, Iron Mountain shall have the exclusive right to use Deposit inventory information to provide records management services to Customer; upon expiration of this Agreement, Iron Mountain shall have the right to maintain inventory information for record-keeping purposes. Iron Mountain's obligation to protect the confidentiality of such information shall survive the termination or expiration of this Agreement.
22. **Modifications to Add Customer Locations, Services.** In the event that Customer locations or lines of service are added to or deleted from this Agreement, the term of this Agreement shall not change unless the parties so agree. Pricing adjustments for all Customer's locations and/or services under this Agreement may be made on dates pricing adjustments are permitted under Section 2, regardless of the dates when new locations or services are added. Any modification of Customer locations serviced or lines of services provided will be pursuant to an amendment of this Agreement or a Schedule.
23. **Purchase Orders.** In the event that Customer issues a purchase order to Iron Mountain covering the services provided under this Agreement, any terms and conditions set forth in the purchase order which constitute terms and conditions which are in addition to those set forth in this Agreement or which establish conflicting terms and conditions to those set forth in this Agreement are expressly rejected by Iron Mountain.
24. **Miscellaneous.** This Agreement binds the successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by either party (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of the other party, which shall not be unreasonably withheld or delayed. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the first page hereof until written notice of a change of address has been received. Notices to Iron Mountain shall be sent to the attention of its General Manager at such address. Iron Mountain shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these printed Terms and Conditions and the terms of a Schedule, the Schedule shall prevail as to the services covered thereby.