```
CM05N601     placlta                   IRON MOUNTAIN                            10293
                              ─ Customer Statistics Display ─
        Cust Id:  TS421          Cust Name: AMERICAN HOME MORTGAGE
          As of:  09/01/2007        MTD New Cub Ft:    25.20
Number of Boxes:  1,556        MTD Withdrawn Cub Ft:     .00
 Cubic Footage:  1,867.20      MTD Destroyed Cub Ft:     .00

 Dist              Media         Total         Adds       Withdrawn     Dest
  Id   Dept Id    Type          Cub Ft        Cub Ft        Cub Ft       C

 >AT                             14.40          .00           .00
  AT                1          1,810.80       25.20           .00
  AT                2             42.00         .00           .00


            <NEXT(F1)>  <JUMP(F3)>  <TOTALS(F8)>  <PRINT(F9)>  <MENU(F12)>
```



# CUSTOMER AGREEMENT

RECEIVED APR 0 1 2004

IRON MOUNTAIN INFORMATION MANAGEMENT, INC. (check one):

- [X] Iron Mountain Records Management Division
- [ ] Iron Mountain Off-Site Data Protection Division
- [ ] Iron Mountain/National Underground Storage Division
- [X] Iron Mountain Secure Shredding Division

Address of Iron Mountain Branch/District Office: 3381 E. Global Loop, Tucson, AZ 85706

FOR IRON MOUNTAIN PURPOSES ONLY
Account Number: HOMMA
SIC Code:
Branch/District Cost Ctr. No.: T5421

Contract Effective Date: March 1, 2004

CUSTOMER: American Home Mortgage
Street Address: 5151 N. Oracle STE 106
City: Tucson   State: AZ   Zip + 4: 85704
Primary Contact and Title: Madeleine Maynard
Telephone: 520-531-9474   Fax:
e-mail:

BILLING ADDRESS (If Different):
Street or Box No.: 6760 N. Oracle Rd. STE 200
City: Tucson   State: AZ   Zip + 4: 85704
Billing Contact:
Telephone: 520-531-9474   Fax:
e-mail:

The Iron Mountain Information Management, Inc. Division checked above, as the contracting entity ("Iron Mountain"), will perform the services described on schedules annexed to this Agreement either physically or by reference (each a "Schedule"), and Customer will pay Iron Mountain for such services according to the rates and provisions in the Schedules. All services will be provided subject to the terms and conditions below and on the reverse hereof and in any Schedule.

VALUE OF DEPOSITS. Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy records, microfilm and microfiche stored pursuant to this Agreement, the value of such stored items is $1.00 per carton, linear foot of open-shelf files, container or other hard-copy storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data cartridges or data cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is limited to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

LIMITATION OF LIABILITY. Iron Mountain's liability, if any, for loss or destruction of or damage to materials stored with Iron Mountain ("Deposits") is limited to the value of each Deposit as described above, or as otherwise set forth on the reverse side hereof. Iron Mountain reserves the right to provide replacement of media for which liability is limited to replacement cost rather than payment of replacement cost. Iron Mountain's maximum liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if the loss is related to service of an ongoing and continuing nature, six months of fees paid by Customer for such service. Other limitations on Iron Mountain's liability are set forth on the reverse side of this Agreement.

| CUSTOMER: | IRON MOUNTAIN |
|---|---|
| Individual Signing: [print name] Hubert H. Sanpeul | Individual Signing: [print name] Patrick A. Ward |
| Signature: | Signature: |
| Title: President | Title: |
| Signing Date: 3/2/04 | Signing Date: 3/5/04 |

WHITE – IRON MOUNTAIN CORPORATE       CANARY – CUSTOMER       PINK – IRON MOUNTAIN DISTRICT
IM-35 Rev. 1/03   © 2003 Iron Mountain Incorporated

## STANDARD TERMS AND CONDITIONS
(Based on terms and conditions promulgated by Professional Records & Information Services Management, Inc.)

The following terms and conditions shall apply to this Agreement.

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the front side of this Agreement. The initial term of this Agreement shall continue for one (1) year after commencement, unless otherwise set forth in a Schedule. Unless otherwise provided in a Schedule, upon expiration of the initial term, the term will continue with automatic renewals for additional one (1) year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty (30) days prior to the expiration date. In the event that Iron Mountain continues to hold Deposits after the expiration or termination of this Agreement, the terms of this Agreement shall continue to apply until all of Customer's Deposits have been removed from Iron Mountain's facility, except that Iron Mountain may adjust rates upon thirty (30) days' notice.
2. **Charges.** Rates and charges shall be as specified in Schedules. Unless otherwise provided in a Schedule: (i) rates for storage shall remain fixed for the first year of this Agreement, and may thereafter be changed at any time upon thirty (30) days' written notice, and (ii) rates for services may be adjusted by Iron Mountain at any time.
3. **Principal Records Services Provider.** The charges for records management and storage set forth in the Schedules are predicated upon the expectation that Customer will utilize Iron Mountain as its primary commercial provider of records service and storage (for paper and/or magnetic media, as applicable) for Customer's locations identified on the Schedules, including accretion in records, during the term of this Agreement. In the event that Customer does not so utilize Iron Mountain's services, Iron Mountain reserves the right to adjust rates and charges to the standard list rates and charges then applicable to the services provided by Iron Mountain to Customer.
4. **Authorization; Customer Instructions.** Deposits may be delivered pursuant to direction of Customer's agent(s) identified pursuant to Iron Mountain's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for, or disposal or removal of, Customer's Deposits. Such orders may be given in person, by telephone or in writing (fax, electronically or hard-copy).
5. **Operational Procedures.** Customer shall comply with Iron Mountain's reasonable operational requirements, as modified from time to time, regarding containers, delivery/pick-up volumes, security, access and similar matters. Customer acknowledges that volume requests that exceed one hundred twenty-five percent (125%) of normal volume may require Iron Mountain to incur additional costs, which Customer will pay at Iron Mountain's overtime rates, provided that Iron Mountain shall have advised Customer thereof in advance.
6. **Force Majeure.** Iron Mountain shall not be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, acts of terrorism, riots, unusual traffic delays or other causes beyond its control.
7. **Governmental Orders.** Iron Mountain is authorized to comply with any subpoena or similar order related to the Deposits, provided that Iron Mountain notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Iron Mountain's reasonable charges for such compliance. Iron Mountain will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense.
8. **Confidentiality.** "Confidential Information" means any information concerning or relating to the property, business and affairs of Customer that is furnished to Iron Mountain, except for information that was previously known to Iron Mountain free of any obligation to keep it confidential, is subsequently made public by Customer or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be held in confidence by Iron Mountain and shall be used only in the manner contemplated by this Agreement. Iron Mountain shall use the same degree of care to safeguard Confidential Information as it utilizes to safeguard its own confidential information.
9. **Liability in Event of Loss of Deposits.** Iron Mountain shall not be liable for any loss or destruction of, or damage to, Deposits, however caused, unless such loss or damage resulted from the failure by Iron Mountain to exercise such care as a reasonably careful person would exercise under like circumstances; Iron Mountain is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable, the amount of Iron Mountain's damages is limited as provided on the front page hereof. Deposits are not insured by Iron Mountain against loss or damage, however caused. Customer may insure Deposits through third-party insurers for any amount, including amounts in excess of the limitation of liability. Customer shall cause its insurers of Deposits to waive any right of subrogation against Iron Mountain. If Deposits are placed in the custody of a common carrier for transportation, the common carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the common carrier.
10. **No Product Warranty.** Iron Mountain hereby assigns to Customer any manufacturers' warranties applicable to any products sold by Iron Mountain to Customer pursuant to this Agreement. Iron Mountain provides no warranties related to products sold. WITH RESPECT TO PRODUCTS SOLD BY IRON MOUNTAIN TO CUSTOMER, IRON MOUNTAIN MAKES NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
11. **Liability with Respect to Non-Storage Services.** With respect to services not related to storage of Deposits including but not limited to Secure Shredding services, Iron Mountain's maximum liability for any loss or default shall be: (i) if such loss or default relates to a discrete project, the total fees paid by Customer to Iron Mountain for such project; or (ii) if such loss or default arises from services that are of an ongoing and continuing nature, the total amount of fees paid by Customer to Iron Mountain for the performance of such services during the immediately preceding six-month period. With respect to Secure Shredding services, Iron Mountain shall not be responsible or liable in any manner whatsoever for the release or loss of any materials deposited in bins or otherwise delivered to it for secure shredding unless the release or loss is due to Iron Mountain's negligence or willful misconduct.
12. **No Consequential Damages, etc.** In no event shall Iron Mountain be liable for any consequential, incidental, special or punitive damages, regardless of whether an action is brought in tort, contract or any other theory.
13. **Notice of Claims.** Claims by Customer must be presented in writing within a reasonable time, and in no event longer than ninety (90) days after delivery or return of the Deposits to Customer or ninety (90) days after Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.
14. **Filing of Actions.** No action may be maintained against Iron Mountain for loss, damage or destruction of Deposits, unless timely written claim has been given as provided in Section 13, and unless such action is commenced either within one (1) year after: (i) the date of delivery or return of the Deposits by Iron Mountain; or (ii) the date Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.
15. **Notice of Loss.** When Deposits have been lost, damaged or destroyed, notice thereof may be given by mailing a certified letter (return receipt requested) to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or suit begins on the date of Customer's receipt of such notice.
16. **Payment.** Payment terms are net, thirty (30) days. If Customer fails to pay Iron Mountain's charges (other than disputed charges) within forty-five (45) days after the date of an invoice, Iron Mountain may, at its option: (a) refuse access to Deposits, (b) suspend service, (c) redeliver Deposits to Customer or (d) terminate this Agreement. Customer shall be liable for late charges at the rate of fifteen percent (15%) per annum, compounded monthly, on unpaid balances and all expenses incurred in collection, including reasonable attorneys' fees. If Customer is consistently delinquent (defined as being late in the payment of any three (3) or more undisputed invoices in a 12-month period) and/or upon the expiration or termination of this Agreement, Iron Mountain may require payment by certified check prior to performance of services, including delivery of Deposits. Upon default by Customer, Iron Mountain shall have other rights and remedies as may be provided by law. In the event Iron Mountain takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer.
17. **Ownership Warranty.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store the Deposits and direct their disposition in accordance with the terms of this Agreement. Customer shall reimburse Iron Mountain for any expenses reasonably incurred by Iron Mountain (including reasonable legal fees) by reason of Iron Mountain's compliance with the instructions of Customer in the event of a dispute concerning the ownership, custody or disposition of Deposits stored by Customer with Iron Mountain.
18. **Restrictions on Stored Material; Customer Premises.** Customer shall not store with Iron Mountain nor deliver to Iron Mountain for secure shredding any material that is highly flammable, explosive, toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. Customer shall not store negotiable instruments, jewelry, check stock or other items that have intrinsic value. All Customer's premises where Iron Mountain's employees perform services or make deliveries hereunder shall be free of hazardous substances and any other hazardous or dangerous conditions.
19. **Software License.** If access to or use of Iron Mountain inventory management software and computer programs (the "Software") is provided hereunder (as set forth in a Schedule), Iron Mountain hereby grants Customer a limited, nonexclusive license to use the Software solely in conjunction with records storage services provided by Iron Mountain during the term of this Agreement. Customer acknowledges that all Software and the inventory management system comprised of the Software belong to Iron Mountain. During the term of this Agreement, Iron Mountain shall have the exclusive right to use Deposit inventory information to provide records management services to Customer; upon expiration of this Agreement, Iron Mountain shall have the right to maintain inventory information for record-keeping purposes.
20. **Modifications to Add Customer Locations, Services.** In the event that Customer locations or lines of service are added to or deleted from this Agreement, the term of this Agreement shall not change unless the parties so agree. Pricing adjustments for all Customer's locations and/or services under this Agreement may be made on dates pricing adjustments are permitted under Section 2, regardless of the dates when new locations or services are added. Any modification of Customer locations serviced or lines of services provided will be effected by an amendment of this Agreement or a Schedule.
21. **Performance of Services by Other Divisions.** Certain lines of service may be performed by another Division of Iron Mountain Information Management, Inc. other than the Division identified at the head of this Agreement. In such event, such Division will perform such service as a subcontractor to Iron Mountain. The subcontracting entity may invoice Customer directly, but Iron Mountain will remain liable for all services performed for Customer.
22. **Miscellaneous.** This Agreement binds the successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by the Customer (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of Iron Mountain, which shall not be unreasonably withheld or delayed. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the front side hereof until written notice of a change of address has been received. Notices to Iron Mountain shall be sent to the attention of its General Manager at such address. Iron Mountain shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these printed Terms and Conditions and the terms of a Schedule, the Schedule shall prevail.

Acct # TS 421

## DOCUMENT RESERVE
## RECORDS STORAGE AGREEMENT

1. Storage Services. Document Reserve L.C., a Limited Liability Company ("Document Reserve") agrees to store for _____ American Home Mortgage ("Customer") the records storage containers ("Boxes") that Customer tenders to Document Reserve for storage under this agreement. All Boxes tendered and accepted for storage shall be listed in a written inventory ("Index"). Customer shall pay the basic storage charge set forth below, which Document Reserve may change from time to time by sending to Customer a written notice in advance.
   Monthly charge per cubic foot: $ 0.21
   There will be no pro-ration of the basic storage charge at the time Boxes are deposited in or removed from storage. All storage charges are payable in advance, effective the first day of each and every month.

2. Additional Services. In addition to the basic storage charge set forth above, Customer agrees to pay on a monthly basis (terms, net thirty (30) days) all charges for additional services as identified in Exhibit "A" to this Agreement. All charges will remain in effect as stated in Exhibit "A" for a period of one year from the date of this agreement. After one year from the date of this agreement, Document Reserve may change such rates from time to time by sending to Customer a written notice setting forth the new rates which shall become effective on the first day of the following calendar month.

3. Term of Agreement. The term of this Agreement shall be one (1) year from date of the initial receipt of the Boxes. Thereafter, the Agreement shall continue on a month to month basis until terminated. Either party shall give not less than 90 days prior written notice to the other party of its intention to terminate the Agreement. Customer shall be required to pay the basic storage charges for not less than three (3) months following notice of termination and, in any event, until termination occurs and the Boxes are removed from storage. If notice of termination is given during the first year of this Agreement, Customer shall pay the basic storage charge for the remaining balance of the year term.

4. Limitation of Liability and Damages. Customer hereby declares the value if its Boxes, including the entire contents thereof, is $1.00 per Box, it being virtually impossible to accurately ascertain the value of each Box and its contents. The Boxes and their contents are not insured by Document Reserve. If it is desired that Document Reserve procure valuable papers insurance for Customer, Customer must make a written request for such insurance and pay the premiums thereon. If the amount of insurance ordered is less than the true value of the property being stored, Customer becomes a co-insurer. Customer expressly agrees that Document Reserve shall be liable only for its failure to exercise such care as a reasonably careful person would exercise under like circumstances and then only upon the basis of Customer's declared valuation of $1.00 per Box. The burden of proving negligence or failure to use the care required by law shall be upon the Customer.

Document Reserve shall not be charged with knowledge of the contents of Boxes nor with the quality and condition of the contents. Customer shall be solely responsible for all descriptions of its property contained on Indexes, transfer and delivery receipts and on Boxes and items within Boxes. The parties expressly agree and intend that the foregoing provisions respecting liability and damages shall constitute the exclusive liability of Document Reserve for loss or injury for the property stored under this Agreement, regardless of the theory of liability asserted, and further that the damages recoverable in the event liability is found to exist shall be limited as set forth herein.

**CUSTOMER HEREBY EXPRESSLY ACKNOWLEDGES THAT DOCUMENT RESERVE DOES NOT INSURE THE STORED MATERIALS. CUSTOMER HAS THE RIGHT AND SOLE RESPONSIBILITY FOR OBTAINING ON ITS OWN BEHALF INSURANCE DIRECTLY AND OUTSIDE OF THE AGREEMENT IF DESIRED.**

5. Limitations on Claims. Customer must present in writing any claim against Document Reserve with respect to the subject matter of the Agreement within 60 days after the event complained of has occurred, specifying the details of such event and the damages suffered by Customer. Customer's failure to make such presentation to Document Reserve within such period shall, conclusively, result in the release of Customer's claim. Additionally, no action may be maintained by Customer against Document Reserve arising in connection with this Agreement unless commenced within 9 months after the occurrence of the event complained of.

6. Customer's Warranties and Representations. Customer declares that its Boxes, records, files and any other materials presented to Document Reserve for storage are the sole property of Customer. Customer further declares that its address shown below is its legal address, and Document Reserve will recognize no other address for Customer billing and correspondence unless notified in writing of an address change by Customer.

7. Deliveries and Representations. When Document Reserve delivers items from storage, Customer will be required to sign a delivery receipt. Customer expressly warrants and agrees that Document Reserve shall be entitled, conclusively, to rely upon the signature of any person who purports to be an employee of the Customer as having been authorized by Customer to act on its behalf respecting matters under this Agreement. Any delivery that is diverted to another location from the delivery point given on the delivery receipt shall constitute a second delivery.

8. Access. Customer shall have the right, by advance appointment, to inspect during normal business hours all property stored under this Agreement.

**REV Jan-98**

9. Lien Reservation. Pursuant to applicable law, Document Reserve has a warehouseman's lien upon all property stored under this Agreement. In the event that Document Reserve releases any property for which Document Reserve has not been paid in full, Document Reserve hereby claims a lien upon all other property then or thereafter stored under this Agreement to secure all charges incurred and accruing respecting the released property.

10. Searches and Other Assistance. Within the scope of normal services, Customer shall be responsible for ordering Boxes and/or files by the identification number contained in the appropriate Index. Customer agrees to pay for searches or other assistance outside the scope of normal services at the "Special Services" rate as shown in Exhibit "A".

11. Interfiling. Documents submitted to Document Reserve for interfiling must be marked by Customer to designate box and file placement. Charges for interfiling are set forth in Exhibit "A".

12. Termination. Upon termination of this Agreement. Document Reserve may require the payment by Customer of all accrued charges prior to release of Customer's property. In the event Document Reserve gives Customer written notice of its intention to terminate storage under this Agreement, and Customer does not, within the 90-day period provided by such notice, provide Document Reserve with an address for delivery of Customer's property and pay all charges then due and owing, then in such event, Document Reserve shall have the right in its sole discretion to dispose of Customer's property as provided by law. If Document Reserve, after a reasonable effort, is unable to sell the goods, it may destroy them without further notice to Customer and shall not incur liability or responsibility to third parties, including Customer's clients, patients or the like, and Customer shall indemnify and hold harmless Document Reserve from any and all claims and damages in this regard.

13. Miscellaneous.

    (a) The parties consent to the exclusive jurisdiction and the venue of State and Federal courts situated in the City of Tucson, State of Arizona with respect to all litigation which may arise out the subject matter of this Agreement.

    (b) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, legal representatives and assigns.

    (c) It is agreed that this document constitutes the whole contract between the parties and that there are not other terms, warranties, representations or agreements of either the Customer or Document Reserve not herein contained.

    (d) This Agreement, the Indexes and any Exhibits hereto shall constitute a ware house receipt under the provisions of A.R.S. Section 47-7202.

    (e) Customer agrees to pay finance charges of 1.5% per month (ANNUAL PERCENTAGE RATE: 18%) on all balances owed by Customer under this Agreement that are outstanding for a period of 30 days or more. In addition, if this Agreement is placed in the hands of an attorney for collection Customer agrees to pay reasonable attorney's fees and all costs associated with such collection efforts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective the __13__ day of __January__, 19__98__.

DOCUMENT RESERVE

By _____

CUSTOMER:

By _____

Address __6700 N. Oracle Rd #238__
__Tucson, AZ 85704__

**REV Jan-98**