```
CM05N601    placlta                    IRON MOUNTAIN                              10293
                            ─ Customer Statistics Display ─────────
         Cust Id: C2171          Cust Name: AMERICAN HOME MORTGAGE
          As of: 09/01/2007           MTD New Cub Ft:   .00
Number of Boxes: 0              MTD Withdrawn Cub Ft:   .00
  Cubic Footage: 0.00           MTD Destroyed Cub Ft:   .00

Dist              Media              Total          Adds      Withdrawn    Dest
 Id    Dept Id   Type              Cub Ft         Cub Ft         Cub Ft       C
─────────────────────────────────────────────────────────────────────────────────
>




─────────────────────────────────────────────────────────────────────────────────
     <NEXT(F1)>  <JUMP(F3)>  <TOTALS(F8)>  <PRINT(F9)>  <MENU(F12)>
```



# IRON MOUNTAIN™
The Leader in Records & Information Management

## CUSTOMER AGREEMENT

**Iron Mountain Entity (check one)**

- [ ] Iron Mountain Records Management, Inc.
- [x] Iron Mountain Off-Site Data Protection, Inc.
- [ ] Iron Mountain Confidential Destruction LLC

**Address of Iron Mountain Branch/District Office:**
8528 McGaw Ct
Columbia MO 21045

**Contract Effective Date:** 11/1/01

**FOR IRON MOUNTAIN PURPOSES ONLY**

| Account Number: | Branch/District Cost Center No.: |
|---|---|
| 2501 | 71 |

SIC Code:

| Customer: COLUMBIA NAT'L INC. | Billing Address (If Different): same |
|---|---|
| Street Address: 7142 Columbia Gateway Dr. | Street or Box No.: |
| City: Columbia, State: MD  Zip+4: 21046 | City:  State:  Zip + 4: |
| Primary Contact and Title: DALE CLARK | Billing Contact: |
| Telephone: 410.872.2505  Fax:  E-Mail Address: | Telephone:  Fax:  E-Mail Address: |

The Iron Mountain entity checked above, as the contracting entity ("Iron Mountain"), will perform the services described on schedules annexed to this Agreement either physically or by reference (each a "Schedule"), and Customer will pay Iron Mountain for such services according to the rates and provisions in the Schedules. All services will be provided subject to the terms and conditions below and on the reverse hereof and in any Schedule.

**VALUE OF DEPOSITS.** Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy records, microfilm and microfiche stored pursuant to this Agreement, the value of such stored items is $1.00 per carton, linear foot of open-shelf files, container or other hard-copy storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data cartridges or data cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is limited to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

**LIMITATION OF LIABILITY.** Iron Mountain's liability, if any, for loss or destruction of or damage to materials stored with Iron Mountain ("Deposits") is limited to the value of each Deposit as described above, or as otherwise set forth on the reverse side hereof. Iron Mountain reserves the right to provide replacement of media for which liability is limited to replacement cost rather than payment of replacement cost. Iron Mountain's liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if less, six months of fees paid by Customer for such service. Other limitations on Iron Mountain's liability are set forth on the reverse side of this Agreement.

| CUSTOMER: Columbia Nat'l Inc. | IRON MOUNTAIN: Raymond E Archuleta |
|---|---|
| Individual Signing [print name]: PINCHOS L. ANDREEN | Individual Signing [print name]: Ray Archuleta |
| Signature: M. Andreen | Signature: |
| Title: VP, Director IS Ops. | Title: General Manager |
| Signing Date: 10/19/01 | Signing Date: 10-23-01 |

WHITE – IRON MOUNTAIN CORPORATE    CANARY – CUSTOMER    PINK – IRON MOUNTAIN DISTRICT
IM-31   © 2001 Iron Mountain Incorporated

## STANDARD TERMS AND CONDITIONS
(Based on terms and conditions promulgated by Professional Records & Information Services Management, Inc.)

The following terms and conditions shall apply to this Agreement.

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the front side of this Agreement. The initial term of this Agreement shall continue for one (1) year after commencement, unless otherwise set forth in a Schedule. Unless otherwise provided in a Schedule, upon expiration of the initial term, the term will continue with automatic renewals for additional one (1) year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty (30) days prior to the expiration date. In the event that Iron Mountain continues to hold Deposits after the expiration or termination of this Agreement, the terms of this Agreement shall continue to apply until all of Customer's Deposits have been removed from Iron Mountain's facility, except that Iron Mountain may adjust rates upon thirty (30) days' notice.

2. **Charges.** Rates and charges shall be as specified in Schedules. Unless otherwise provided in a Schedule: (i) rates for storage shall remain fixed for the first year of this Agreement, and may thereafter be changed at any time upon thirty (30) days' written notice, and (ii) rates for services may be adjusted by Iron Mountain at any time.

3. **Principal Records Services Provider.** The charges for records management and storage set forth in the Schedules are predicated upon the expectation that Customer will utilize Iron Mountain as its primary commercial provider of records services and storage (for paper and/or magnetic media, as applicable) for Customer's locations identified on the Schedules, including accretion to records, during the term of this Agreement. In the event that Customer does not so utilize Iron Mountain's services, Iron Mountain reserves the right to adjust rates and charges to the standard list rates and charges then applicable to the services provided by Iron Mountain to Customer.

4. **Authorization; Customer Instructions.** Deposits may be delivered pursuant to direction of Customer's agents identified pursuant to Iron Mountain's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for, or disposal or removal of, Customer's Deposits. Such orders may be given in person, by telephone or in writing (fax, electronically or hard-copy).

5. **Operational Procedures.** Customer shall comply with Iron Mountain's reasonable operational requirements, as modified from time to time, regarding containers, delivery/pick-up volumes, security, access and similar matters. Customer acknowledges that volume increases that exceed one hundred twenty-five percent (125%) of normal volume may require Iron Mountain to incur additional costs, which Customer will pay at Iron Mountain's overtime rates, provided that Iron Mountain shall have advised Customer thereof in advance.

6. **Force Majeure.** Iron Mountain shall not be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, riots, unusual traffic delays or other causes beyond its control.

7. **Governmental Orders.** Iron Mountain is authorized to comply with any subpoena or similar order related to the Deposits, provided that Iron Mountain notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Iron Mountain's reasonable charges for such compliance. Iron Mountain will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense.

8. **Confidentiality.** "Confidential Information" means any information concerning or relating to the property, business and affairs of Customer that is furnished to Iron Mountain, except for information that was previously known to Iron Mountain free of any obligation to keep it confidential, is subsequently made public by Customer or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be held in confidence by Iron Mountain and shall be used only in the manner contemplated by this Agreement. Iron Mountain shall use the same degree of care to safeguard Confidential Information as it utilizes to safeguard its own confidential information.

9. **Liability in Event of Loss of Stored Material.** Iron Mountain shall not be liable for any loss or destruction of, or damage to, Deposits, however caused, unless such loss or damage resulted from the failure by Iron Mountain to exercise such care as a reasonably careful person would exercise under like circumstances. Iron Mountain is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable, the amount of Iron Mountain's damages is limited as provided on the front page hereof. Deposits are not insured by Iron Mountain against loss or damage, however caused. Customer shall cause its insurers of Deposits to waive any right of subrogation against Iron Mountain. If Deposits are placed in the custody of a common carrier for transportation, the common carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the common carrier.

10. **No Product Warranty.** Iron Mountain hereby assigns to Customer any manufacturers' warranties applicable to any products sold by Iron Mountain pursuant to this Agreement. Iron Mountain provides no warranties related to products sold. WITH RESPECT TO PRODUCTS SOLD BY IRON MOUNTAIN TO CUSTOMER, IRON MOUNTAIN MAKES NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

11. **Liability with Respect to Non-Storage Services.** With respect to services not related to storage of Deposits, Iron Mountain's maximum liability for any loss or default shall be: (i) if such loss or default relates to a discrete project, the total fees paid by Customer to Iron Mountain for such project; or (ii) if such loss or default arises from services that are of an ongoing and continuing nature, the total amount of fees paid by Customer to Iron Mountain for the performance of such services during the immediately preceding six-month period.

12. **Liability with Respect to Confidential Destruction (by Iron Mountain Confidential Destruction, LLC).** Iron Mountain shall not be responsible or liable in any manner whatsoever for the release or loss of any materials deposited in bins or otherwise delivered to it for destruction unless the release or loss is due to Iron Mountain's gross negligence or willful misconduct. Iron Mountain's maximum liability for any and all claims arising with respect to confidential destruction service shall not exceed the aggregate amount paid by Customer with respect to Iron Mountain confidential destruction services provided during the six (6) months preceding the event which gives rise to the claim.

13. **No Consequential Damages, etc.** In no event shall Iron Mountain be liable for any consequential, incidental, special or punitive damages, regardless of whether an action is brought in tort, contract or any other theory.

14. **Notice of Claims.** Claims by Customer must be presented in writing within a reasonable time, and in no event longer than ninety (90) days after delivery or return of the Deposits to Customer or ninety (90) days after Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.

15. **Filing of Actions.** No action may be maintained against Iron Mountain for loss, damage or destruction of Deposits, unless timely written claim has been given as provided in Section 14, and unless such action is commenced either within one (1) year after (i) the date of delivery or return of the Deposits by Iron Mountain or (ii) the date Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.

16. **Notice of Loss.** When Deposits have been lost, damaged or destroyed, notice thereof may be given by mailing a certified letter (return receipt requested) to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or suit begins on the date of Customer's receipt of such notice.

17. **Payment.** Payment terms are net, thirty (30) days. If Customer fails to pay Iron Mountain's charges (other than disputed charges) within forty-five (45) days after the date of an invoice, Iron Mountain may, at its option: (a) refuse access to Deposits, (b) suspend service, (c) redeliver Deposits to Customer or (d) terminate this Agreement. Customer shall be liable for late charges at the rate of fifteen percent (15%) per annum, compounded monthly, on unpaid balances and all expenses incurred in collection, including reasonable attorneys' fees. If Customer is consistently delinquent (defined as being late in the payment of any three (3) or more undisputed invoices in a 12-month period) and/or upon the expiration or termination of this Agreement, Iron Mountain may require payment by certified check prior to performance of services, including delivery of Deposits. Upon default by Customer, Iron Mountain shall have other rights and remedies as may be provided by law. In the event Iron Mountain takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer.

18. **Ownership Warranty.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store the Deposits and direct their disposition in accordance with the terms of this Agreement. Customer shall reimburse Iron Mountain for any expenses reasonably incurred by Iron Mountain (including reasonable legal fees) by reason of Iron Mountain's complying with the instructions of Customer in the event of a dispute concerning the ownership, custody or disposition of Deposits stored by Customer with Iron Mountain.

19. **Restrictions on Stored Material; Customer Premises.** Customer shall not store with Iron Mountain any material that is highly flammable, explosive, toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. Customer shall not store negotiable instruments, jewelry, check stock or other items that have intrinsic value. All Customer's premises where Iron Mountain's employees perform services or make deliveries hereunder shall be free of hazardous substances and any other hazardous or dangerous conditions.

20. **Software License.** If access to or use of Iron Mountain inventory management software and computer programs (the "Software") is provided hereunder (as set forth in a Schedule), Iron Mountain hereby grants Customer a limited, non-exclusive license to use the Software solely in conjunction with records storage services provided by Iron Mountain during the term of this Agreement. Customer acknowledges that all Software and the inventory management system comprised of the Software belong to Iron Mountain. During the term of this Agreement, Iron Mountain shall have the exclusive right to use Deposit inventory information to provide records management services to Customer. Upon expiration of this Agreement, Iron Mountain shall have the right to maintain inventory information for record-keeping purposes.

21. **Modifications to Add Customer Locations, Services.** In the event that Customer locations or lines of service are added to or deleted from this Agreement, the term of this Agreement shall not change unless the parties so agree. Pricing adjustments for all Customer's locations and/or services under this Agreement may be made on dates pricing adjustments are permitted under Section 2, regardless of the dates when new locations or services are added. Any modification of Customer locations serviced or lines of services provided will be effected by an amendment of this Agreement or a Schedule.

22. **Performance of Services by Subsidiaries.** Certain lines of service may be performed by a subsidiary of Iron Mountain Incorporated other than the entity identified as the contracting party at the head of this Agreement. In such event, such other subsidiary will perform such service as a subcontractor to the Iron Mountain contracting entity. The subcontracting entity may invoice Customer directly, but the original Iron Mountain contracting entity will remain liable for all services performed for Customer.

23. **Miscellaneous.** This Agreement binds the successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by the Customer (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of Iron Mountain, which shall not be unreasonably withheld or delayed. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the front side hereof until written notice of a change of address has been received. Notices to Iron Mountain shall be sent to the attention of its General Manager at such address. Iron Mountain shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these printed Terms and Conditions and the terms of a Schedule, the Schedule shall prevail.



# AMODIO ARCHIVES
## STORAGE AND SERVICE AGREEMENT
### SCHEDULE A

Company hereby agrees to accept for storage and to service such stored material as Client requests, subject to the Terms and Conditions contained herein and in the standard terms and schedule of rates, which are incorporated herein.

| Contract Received: | 05/14/93 | Account Number: | 057958 |
|---|---|---|---|

### CLIENT

| Name: | Paine Webber Mortgage Finance | | |
|---|---|---|---|
| Address: | 1160 Silas Deane Highway | | |
| City: | Wethersfield | St: CT | Zip: 06109 |
| Clients Authorized Representative: | Mr. Jack Ardini | | |

RATES: See Attached Schedule of Rates (Exhibit A)

**LIMITATION OF LIABILITY.** The Company's liability, if any, for loss or damage to part or all of the stored material shall be limited to $0.50 per carton, linear foot of open shelf files, container, tape, disk pack or other stored material. Client may insure stored material through third party insurers for amounts in excess of the limitation of liability, or, if Client declares an excess valuation and pays an additional monthly charge for said excess valuation, the Company's liability shall be limited to the amount of the excess valuation.

**OPTIONAL EXCESS VALUATION.** If Client has made an excess valuation declaration in writing, Client declares that the aggregate value of all deposits made hereunder is as specified in such writing and agrees to pay an additional monthly rate per $100.00 of declared excess valuation, as quoted upon request, which payment shall be made simultaneously with other invoice payments.

| CLIENT | AMODIO ARCHIVES |
|---|---|
| Name: Paine Webber Mortgage Finance | By: Michael G. Humen |
| Address: 1160 Silas Deane Highway Wethersfield, CT 06109 | Title: Account Executive |
| | Its Duly Authorized: Account Executive |
| By: Jack Ardini | Date: |
| Title: Vice President | |
| Date: 4/27/93 | Effective Date: May 1, 1993 |

See Standard Terms & Conditions on Reverse Side

This agreement will not be construed in such manner that Company will be deemed a common carrier or that this contract is deemed as the contract of a common carrier. Company will only transport Client's records and all media and forms between Clients place of business, and/or other locations designated by Client, and Company's record storage centers.

**ARMA** Member of Association of Records Managers and Administrators

**ACRC** Member of Association of Commercial Records Centers

# AMODIO ARCHIVES STANDARD TERMS AND CONDITIONS
(Approved and Promulgated By The Association of Commercial Records Centers - March 1989)

Unless modified by specific provisions set forth in Schedule A, the following terms and conditions shall apply to this Agreement.

1. **STORED MATERIAL**
   From and after the effective date for a period of one year, the Company shall store and service the Stored Material identified on the attached Schedule. Client and Company may modify or add to the record materials included in the Schedule of Stored Materials by written agreement. Such additional materials shall, unless otherwise indicated in writing, be deemed to be held under the same terms and conditions as the Stored Material.

2. **ACCEPTANCE**
   In the absence of an executed contract, the act of tendering said material for storage and/or other services by Company constitute acceptance by Client to the terms, conditions and rates of this contract.

3. **RATES**
   Client agrees to pay Company for its services according to Company's then current Schedule of Rates and any revisions thereto. Yearly and monthly rates shall be due in advance. Rates may be changed upon thirty (30) days' notice to the Client. For Stored Material received during a month, charges will be assessed according to the Schedule of Rates. Additional Charges, if any, shall be paid simultaneously with the monthly rates.

4. **ACCESS TO STORED MATERIALS**
   a. Stored Material and information contained in said Stored Material shall be delivered only to Client's Authorized Representative. Client represents that the Authorized Representative has full authority to order any service for or removal of the Stored Material, and to deliver and receive such. Such order may be given in person, by telephone, or in writing.
   b. When Stored Materials are ordered out, a reasonable time shall be given to the Company to carry out said instructions; and if it is unable to do so for to provide any other service herein contemplated) because of acts of God or public enemy, seizure or legal process, strikes, lockouts, riots and civil commotions, or other reason beyond the Company's control or because of loss or destruction of goods for which the Company is not liable, or because of any other excuse provided by law, the Company shall not be liable for failure to carry out such instructions or services.
   c. The Company reserves the right to deny orders for or delivery of the Stored Materials until such time as Client has cured any default under this Agreement.
   d. Authorized representatives of Client shall have the right at reasonable times and upon reasonable notice to examine the media and/or records and compilations of data of the Company which pertain to the performance of the provisions of the Agreement.

5. **LIMITATION OF LIABILITY**
   5.1 COMPANY'S LIABILITY, IF ANY, FOR LOSS, DAMAGE, OR DESTRUCTION TO STORED MATERIAL OR DURING THE PACKING, REPACKING, INVENTORYING AND TRANSPORTING OF CLIENT'S RECORDS SHALL BE LIMITED TO THE ASSUMED VALUE; UNLESS AN EXCESS VALUATION IS DECLARED, IN WHICH CASE THE COMPANY'S LIABILITY SHALL BE LIMITED TO SUCH EXCESS VALUATION. IN NO EVENT SHALL THE COMPANY BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES. SUCH LIMITATION OF LIABILITY SHALL APPLY IRRESPECTIVE OF THE CAUSE OF LOSS, DAMAGE, OR DESTRUCTION OF THE STORED MATERIAL.
   5.2 Stored Materials are not insured by Company against loss or injury, however caused.
   5.3 The Client understands and acknowledges that normal deterioration and aging of all record media occurs with time.
   5.4 Claims by the Client for loss, damage, or destruction must be presented in writing to the Company within a reasonable time and in no event longer than 30 days after delivery or return of the Stored Material to the Client or 30 days after Client is notified by the Company that loss, damage or destruction to part or all of the Stored Material has occurred, whichever time is shorter.
   5.5 No action or suit may be maintained by the Client or on behalf of the Company for loss, damage or destruction of the Stored Material by the Company pursuant to this Agreement, unless timely written claim has been given as provided in Section 5.4 of this agreement, and unless such action or suit is commenced either within nine months after date of delivery or return by the Company of said Stored Material or nine months after the Client is notified that loss, damage or destruction to part or all of said Stored Material has occurred, whichever is shorter.

6. **TERM**
   Unless sooner terminated as provided herein, the term of this Agreement shall continue until the Authorized Representative gives Company reasonable, at least sixty (60) days, advance written notice of termination. Client further understands that if any of the Stored Material Client acknowledges that the Company must reserve space for storage of the deposits in its buildings.

7. **DEFAULT**
   7.1 The occurrence of any one or more of the following events shall constitute a default ("Events of Default"):
   a. Failure to pay any sum due hereunder within fifteen (15) days of when due; or
   b. Breach of any provisions of this Agreement; or
   c. Client becomes insolvent or files or has filed against it any proceeding in federal or state court seeking debtor relief.
   7.2 Upon the occurrence of any of the Events of Default, Company, as its sole option, may exercise any or all of the following remedies which in terminating the Agreement:
   a. Demand in writing that Client pick-up the Stored Material; or
   b. Deliver the Stored Material to the Delivery Address, if none specified, to the Client Address.
   c. Upon thirty (30) days advance written notice to Client, Company may destroy the Stored Material. (In this regard, the Client recognizes that since the Stored Material has little or no market value, that sale of the materials would be impossible, and destruction is the only way for the Company to mitigate its damage.)
   d. If this Agreement shall not have been terminated, Client shall continue to pay all sums due under this Agreement up to and including the date of delivery of the Stored Material as provided in (b) above.
   e. Terminate this Agreement, whereupon Company shall recover all damages suffered by reason of such termination.
   In the event Company takes any action pursuant to this Section, it shall have no liability to Client or anyone claiming through Client. The exercise by Company of any one or more of the remedies provided in this Agreement shall not prevent the subsequent exercise by Company of any one or more of together remedies herein provided. All remedies provided for in this Agreement are cumulative and may, at the election of Company, be exercised alternately, successively or in any other manner and are in addition to any of the rights provided by law. Company shall be entitled to include all reasonable attorneys' fees and costs incurred in connection with the enforcement of this Agreement.

8. **DESTRUCTION OF USELESS RECORDS**
   Upon written instructions from the Client or Authorized Representative, the Company may destroy Stored Material. The Client releases the Company from all liability by reason of the destruction of such stored material pursuant to such authority.

9. **TITLE WARRANTY**
   The Client warrants that it is the owner or legal custodian of the Stored Material and has full authority to store said record material in accordance with the terms of this Agreement.

10. **INDEMNIFICATION**
    Unless caused by the negligence of the Company, the Client agrees to fully indemnify and hold harmless the Company, its officers, employees and agents for any liability, cost or expense, including reasonable attorneys' fees, that the Company may suffer or incur as a result of claims, demands, costs or judgements against it arising out of its relations with the Client or third parties pursuant to this agreement. Each party hereby waives all claims for recovery from the other party for any loss or damage to any of its property insured under valid and collectible insurance policies to the extent of any recovery collectible under such insurance, subject to the limitation that this waiver shall apply only when permitted by the applicable policy of insurance.

11. **RULES**
    a. The Client agrees to comply with the Standard Operating Procedures of the Company.
    b. The Client shall not, at any time, store with the Company any narcotics, materials considered to be highly flammable, explosive, toxic, radioactive, organic material which may attract vermin or insects, or any other materials which are otherwise illegal, dangerous and unsafe to store or handle in a closed area. The Company reserves the right to open and inspect any record materials tendered from storage and refuse acceptance of any record materials which fail to comply with the Company's storage restrictions and guidelines.

12. **CONFIDENTIALITY**
    The Company and its employees shall hold confidential all information obtained by it with respect to Client's records. The Company shall exercise that degree of care in safeguarding deposits entrusted to it by Client which a reasonable and careful company would exercise with respect to similar records of its own; provided, however, that liability of the Company to Client shall be limited as set forth in Schedule A.

13. **MISCELLANEOUS**
    This instrument (together with any Schedules attached and documents incorporated herein) constitutes the entire agreement between the parties, and supersedes any and all prior agreements, arrangements and understandings, whether oral or written, between the parties. This Agreement may not be assigned by Client without the consent of Company. No modification of this Agreement shall be binding unless in writing, attached hereto, and signed by the party against which it is sought to be enforced. No waiver of any right or remedy shall be effective unless in writing and nevertheless shall not operate as a waiver of any other right or remedy on a future occasion. Every provision of this Agreement is intended to be severable. If any term or provision is illegal, invalid, or unenforceable provision, there shall be added automatically as a part of this Agreement a provision as similar in terms as necessary to render such provision legal, valid, and enforceable. This Agreement shall be construed in accordance with the laws of CONNECTICUT without giving effect to its conflict of laws principles. All Schedules, if any, attached hereto are hereby incorporated by reference and made a part hereof. The term "Agreement" as used herein shall be deemed to include all such Schedules. All notices under this Agreement shall be in writing. Unless delivered personally, all notices shall be addressed to the appropriate addresses noted herein or as otherwise noted in writing in accordance with this provision. Notices shall be deemed to have been received as of the date of posting if mailed in accordance with this Section. All words and phrases in this Agreement shall be construed to include the singular or plural number, and the masculine, feminine, or neuter gender, as the context requires. Nothing in this Agreement shall be deemed or construed to constitute or create a partnership, association, joint venture, or agency between the parties hereto.

 IRON MOUNTAIN®

February 28, 2005

ACCOUNTS PAYABLE
COLUMBIA NAT'L MORTGAGE CORP.
1051 FARMINGTON AVE
FARMINGTON CT 6032

Thank you for the business you entrust with Iron Mountain. Enclosed, please find your new Iron Mountain "Schedule A", which describes rates for storage and services for the next year. The enclosed Schedule A is effective as of April 1st, 2005 and reflects contributing market factors from the previous year that require us to adjust rates in order to maintain the level of quality service you have come to expect from Iron Mountain.

We are committed to remaining the best total-value provider for records and information management services. If you should have any questions or require additional information about the enclosed Schedule A, please contact your local Iron Mountain office or Account Management Representative. We thank you again for the business you entrust with us.

Sincerely,

George Roebelen
General Manager

02242   C2171   7391

# RENEWAL SCHEDULE A

This Schedule A is made part of the Customer Agreement ("Agreement") between Iron Mountain Information Management, Inc. ("Iron Mountain") and COLUMBIA NAT'L MORTGAGE CORP. ("Customer").

Rates Effective:     April 1, 2005
District Name:       Connecticut
District Number:     02242
Customer Name:       COLUMBIA NAT'L MORTGAGE CORP.
Customer Number:     C2171

## STORAGE PRICING

Secure space for the storage of deposits.

$0.233 per cubic foot per month

**Storage Minimum:**

$95.00 per month

Storage charges will be billed annually in advance.

## MANAGEMENT SERVICES PRICING

Services during normal business hours, Monday through Friday 8:00 a.m. to 5:00 p.m., excluding holidays.

**New Deposits (receiving and entry)**—The receipt of additional Customer deposits resulting in an increase to the Customer storage:

$1.88 per cubic foot

**Retrievals or Refiles**—The temporary retrieval of deposits from, or return to, storage. (Rush applies to retrievals only.):

*Standard*   $2.24 per cubic foot
*Standard*   $3.34 per file
*Rush*       $4.45 per cubic foot
*Rush*       $6.69 per file

**Destruction**—The preparation, documentation, and physical destruction of deposits that are stored at Iron Mountain:

**Destruction by Shredding**
$2.36 per cubic foot plus retrieval
$2.36 per file plus retrieval

**Destruction by Recycling**
$0.93 per cubic foot plus retrieval
$0.46 per file plus retrieval

**Permanent Withdrawal**—The preparation, documentation, and permanent withdrawal of deposits:

$0.93 per cubic foot plus retrieval
$0.46 per file plus retrieval

### Miscellaneous Services

*Labor*     $40.52 per labor hour

**Individual List**—Data entry of file descriptions:

$0.65 per file

**Interfiles**—The filing of an item into an existing carton or file:

$3.26 each

**Account Closing**—The removal of all deposits upon termination of contract:

$5.05 per cubic foot

## TRANSPORTATION PRICING

### Delivery

*Next Day*

$18.53 per transportation visit, $2.24 per cubic foot
Call by 3:00 p.m. for delivery next day by 5:00 p.m.

*Half Day*

$37.08 per transportation visit, $2.24 per cubic foot
Call by 10:00 a.m. for delivery same day by 5:00 p.m.
Call by 3:00 p.m. for delivery next day by 12:00 p.m.

*Emergency Visit (Rush)*

$117.87 per transportation visit, $2.24 per cubic foot
Delivery within 3 hours of request.

*After Hours/Weekends/Holidays*
$235.75 per transportation visit, $2.24 per cubic foot
Delivery within 4 hours of request

All other services, not specifically listed, will be charged at Iron Mountain's then current rates.

Unless specified herein, shredding pricing is for paper shredding services only. Shredding of other media types will be quoted on a per project basis.

## COMPUTER AND REPORTING CHARGES

Included in the Customer's storage rate are the Monthly Supplemental Reports. All other reports (including special sorting and special file listings) are subject to the computer listing charge and/or initial setup, reporting, or download fees, quoted by job scope.

*Iron Mountain Records Management, Inc.*        Page 3        02242   C2171

# SCHEDULE A TO RECORDS MANAGEMENT AND SERVICE AGREEMENT

This Schedule A is made part of the Records Management and Service Agreement between Iron Mountain Records Management, Inc. and COLUMBIA NAT'L MORTGAGE CORP..

Rates Effective:     April 1, 2002
District Name:       Connecticut
District Number:     02242
Customer Name:       COLUMBIA NAT'L MORTGAGE CORP.
Customer Number:     C2171

## STORAGE PRICING

Secure space for the storage of hard copy business records.

$0.203 per cubic foot per month

**Storage Minimum:**

$75.00 per month

Storage charges will be billed annual in advance.

## MANAGEMENT SERVICES PRICING

Services during normal business hours, Monday through Friday 8:00 a.m. to 5:00 p.m., excluding holidays.

**New Records**—The receipt of additional customer records resulting in an increase to the customer storage balance (receiving and entry/accessions):

$1.62 per cubic foot

**Retrievals or Refiles**—The temporary retrieval of records from, or return to, storage:

*Standard*   $1.93 per cubic foot
*Standard*   $2.89 per file
*Rush*       $3.85 per cubic foot
*Rush*       $5.78 per file

**Destruction**—The preparation, documentation, and physical destruction of records:

$2.74 per cubic foot
$3.29 per file

## Schedule A to Data Storage and Service Agreement

This Schedule A is made part of the Data Storage and Service Agreement between Arcus Data Security, Inc., an Iron Mountain company, (the "Company") and Columbia National, Inc., effective 11-1-01. This Schedule A supersedes and terminates any prior Schedule A existing between Company and Customer.

Primary Branch: Baltimore-71

Account Number(s): 21501

Iron Mountain Affiliate   City: Columbia    State: MD

### Customer Information (Bill To Information)

| | | | |
|---|---|---|---|
| Customer Name: | Columbia National, Inc. | Sales Representative: | Mary McKinless |
| Customer Contact: | Dale Clark | Phone: | |
| Address 1: | 7142 Columbia Gateway Drive | SIC Code: | |
| Address 2: | | | |
| City: | Columbia | State: MD   Zip Code: | 21046-2132 |
| P.O. # | | Invoice Cycle: | Monthly |
| P.O. Expiration Date: | | Payment Terms: | Net 30 |
| P.O. Amount: | | Schedule A Expiration Date: | 11-31-04 |

### Arcus Data Security

| Service Code | Catalog Item | Description | Unit | Unit Price | Official Use |
|---|---|---|---|---|---|
| DPS | TRANSMN100 | TRANSPORTATION - MONTHLY | MONTH | $341.50 | ☒ |
| DPS | CONTR63000 | CLOSED CONT - 51/4 FLOP 12BX | EACH | $9.40 | ☒ |
| DPS | CONTR80000 | CLOSED CONT - 8MM (CAP = 14) | EACH | $9.40 | ☒ |
| DPS | CONTRC2000 | CLOSED CONT - 20PK 3480 CARTRG | EACH | $9.40 | ☒ |
| DPS | CONTRCR000 | CLOSED CONT - REELS | EACH | $9.40 | ☒ |
| DPS | VAULTH5000 | VAULTING-HIST TK-50 TAPES | EACH | $0.38 | ☒ |
| DPS | VAULTHC000 | VAULTING-HIST 3480/3490 CARTRG | EACH | $0.38 | ☒ |
| DPS | VAULTHR000 | VAULTING-HIST3420 REELS | EACH | $0.38 | ☒ |
| DPS | VAULTA4000 | VAULTING-ACT 4MM TAPES | EACH | $0.38 | ☒ |
| DPS | CONTR2H000 | HISTORY TRANSPORT-20 PACK/3480 | EACH | $5.50 | ☒ |
| | | | | | ☐ |
| DPS | CONTRDP000 | CLOSED CONT -DOCUMENT | EACH | $9.40 | ☒ |
| DPS | CONTRM2000 | CLOSED CONT- XL FISCHE/UTILITY | EACH | $9.40 | ☒ |
| DPS | CONTRM3000 | CLOSED CONT - MED FISCHE/UTILITY | EACH | $9.40 | ☒ |
| DPS | CONTRME000 | CLOSED CONT-SM FISCHE/UTILITY | EACH | $9.40 | ☒ |
| DPS | CONTRHF000 | HISTORY TRANSPORT/FISCHE /UTILITY | EACH | $5.50 | ☒ |
| | | | | | ☐ |

Auto Fields Schedule A – Revised 05/21/01        Arcus Data Security                Page 1 of 2

## Schedule A to Data Storage and Service Agreement

| Service Code | Catalog Item | Description | Unit | Unit Price | Official Use |
|---|---|---|---|---|---|
| DPS | HANDL04000 | HANDLING – TRANSPORTS | EACH | $ .15 | ☒ |
| DPS | HANDL03000 | HANDLING - CONTAINERS | EACH | $ .15 | ☒ |
| DPS | SPECLST000 | SPECIAL SERVICES - CRITICAL | EACH | $125.00 | ☒ |
| DPS | SPECLEM000 | SPECIAL SERVICES - STANDARD | EACH | $90.00 | ☒ |
| DPS | MAINTSSOFT | MAINTENANCE - SECURESYNC SOFTWARE | EACH | $ 75.00 | ☐ |
| DPS | ADMINISTRATIVE FEE | | PER MONTH | $20.00 | ☒ |
| DPS | MAINTLOCKS | LOCK SALE | EACH | $6.00 | ☒ |
| SAL | MAINTLABEL | BARCODE LABEL SALE | EACH | $ 0.20 | ☒ |

**COMMENTS:**
This is for year 2 of a 3 year renewal (11-1-03 through ~~11-31-04~~) 10/31/04

Customer Number:
21501

Customer Signature: _[signature]_  10/19/01