# Exhibit A

# AMERICAN HOME MORTGAGE TERM SHEET

The following sets forth the terms and conditions upon which Travelers will rely, and provide post-petition bonds and would reinstate, increase or renew pre-petition bonds for or on behalf of American Home Mortgage Holdings, Inc. ("American Home Mortgage" or "AHM").

- For purposes of this Term Sheet, "Debtors" or "AHM" shall mean American Home Mortgage Holdings, Inc. and its predecessors, subsidiaries, successors, affiliates and/or assigns, whose bankruptcy cases are presently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and are jointly administered in Case Number 07-11047 (CSS) (the "Bankruptcy Case"), as well as any other entities that may file bankruptcy subsequent to the date of this Term Sheet and/or in any case consolidated with the Bankruptcy Case. "Surety" or "Travelers" shall mean Travelers Casualty and Surety Company of America and any of its affiliates, parents and/or subsidiaries. Non-Debtor affiliates and/or subsidiaries of the Debtors may participate in this bonding facility only if they agree to the terms contained herein.

- The terms of this Term Sheet are subject, in all respects, to Bankruptcy Court approval. The Debtors shall be responsible for seeking in good faith to obtain consent to this bonding facility of the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case and Bank of America, N.A., in its capacity as Administrative Agent for certain lenders under that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 ("BofA").

- To enable the parties to maintain a bonding relationship, Travelers shall issue bonds of a type historically written for AHM's account pertaining to AHM's servicing operations (i.e. American Home Mortgage Servicing, Inc.) up to a maximum capacity of $1,500,000 (including bonds reinstated, increased or renewed). Travelers reserves the right to apply its ordinary underwriting business practices to accept or reject any request for a post-petition bond (including any reinstatement, extension, renewal or increase of any existing bond), provided, however, that any federal bankruptcy law limitations on the Debtors' ability to pay or perform pre-bankruptcy obligations and the Debtors' bankruptcy filing and financial status as of the petition date of the Bankruptcy Case shall not be used by Travelers as the sole basis to deny any such request.

- Solely with regard to any bonds written for the account post-petition (or reinstated, increased or renewed post-petition), Travelers will not require any further collateral. Pricing for any such post-petition bonding will be set at $15 per $1,000 of liability. Premium shall be fully earned upon the initial issuance of a bond and upon any increase or at any renewal periods for such bond(s). Minimum

premium is $100. Pricing will not be included in the final version of this Term Sheet presented to the Bankruptcy Court based upon business confidentiality concerns; provided, however, Travelers agrees that parties in interest that agree to maintain such confidence shall be entitled to notice if required for court approval; the final Term Sheet will reflect that there has been a letter agreement by the parties as to the premium to be charged.

- New indemnity agreement (Form GCI-B) shall be signed by Debtors in addition to and not in lieu of any/ all existing indemnity agreements. Upon emergence from bankruptcy, emerged entities shall agree to sign new indemnity agreements; provided however, that to the extent no operating entity emerges from bankruptcy, or the emerging entity opts to retain an alternative surety, no new indemnity agreements shall be necessary. Notwithstanding anything contained herein to the contrary, the Debtors shall not be entitled to terminate (except in accordance with the terms of the indemnity agreement) or reject any indemnity agreements with Travelers in the event their servicing business is sold, or otherwise ceases to operate at any time during these cases, or for any other reason.

- Travelers shall retain and hold all collateral pledged to Travelers prior to the petition date of the Bankruptcy Case by or on behalf of AHM to secure all pre-petition and post-petition "Loss" and liabilities of any kind or nature associated therewith to Travelers (including, but not limited to, any indemnity agreement or bond) until Travelers is presented with competent written evidence, satisfactory to Travelers in its sole discretion or otherwise in accordance with the terms of the indemnity agreements, of discharge of all pre-petition and post-petition bonds and release of Travelers, including that there exists no outstanding liability, loss, cost, expense, unpaid premium or other unreimbursed amounts due to Travelers associated therewith.

- With respect to the Surety relationship described herein, including pre-petition and post-petition indemnities and bonds, the Debtors and their predecessors, subsidiaries, successors, affiliates and/or assigns, shall waive any and all claims of any kind or nature against Travelers, which arose in whole or in part prior to the date the Debtors entered into this Term Sheet, and specifically acknowledge and agree that (i) liens on the collateral provided to Travelers to secure the pre-petition liability of AHM are valid, binding, enforceable and perfected liens, and are not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (ii) the pre-petition liability of AHM to Travelers constitutes legal, valid and binding obligations, enforceable in accordance with the terms of the surety documents; (iii) no offsets, defenses or counterclaims of any kind to the pre-petition liability of AHM to Travelers exist, and no portion of the pre-petition liability of AHM to Travelers is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv) as of the date of this Term Sheet, Debtors have no legal or equitable claim or cause of action against Travelers (including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code); and (v) Debtors have waived and released any rights they may have to challenge the pre-petition indebtedness and the security therefor and to assert any claims against Travelers. Notwithstanding anything to the contrary in this Term Sheet, nothing contained herein shall limit any right that the Debtors may have to pursue an action seeking the release of a portion of the collateral held with respect to the bonds, and, correspondingly, nothing herein will be prejudice any right of Travelers to contest any action, demand or claim.

- Bankruptcy Court order shall be obtained (1) authorizing the bond program as a valid and binding post-petition obligation of Debtors; (2) authorizing the use of any collateral held by Travelers to satisfy any "Loss" and liabilities of any kind of Travelers associated with the pre-petition and post-petition bonding facilities described herein; (3) allowing Debtors to enter into a new indemnity agreement; (4) approving the final Term Sheet and Debtors' compliance with the Term Sheet; and (5) granting relief from the automatic stay for Travelers, to the extent necessary, to apply pre-petition collateral to any claims in connection with the pre-petition bonds and pre-petition indemnity agreements, and post-petition bonds and post-petition indemnity agreements.

- Travelers shall be granted an allowed administrative claim pursuant to Section 503(b) of the Bankruptcy Code (behind existing claims of the DIP Lender, the Pre-Petition Secured Parties, and the Carve Out, as each such term is defined in either the Final Cash Collateral Order [D.I. 554] and/or the Final DIP Order [D.I. 555]) for any claim or loss, arising post-petition, sustained on account of any bonds written for the account post-petition (or reinstated, increased or renewed post-petition). Notwithstanding anything herein or elsewhere to the contrary, Travelers shall not seek to enforce, directly or indirectly, any administrative or priority claim in respect of any asset which constitutes collateral of the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Parties, or the DIP Lender unless all of the Indebtedness and DIP Obligations have been (i) indefeasibly paid in full in cash, or (ii) otherwise authorized with the prior written consent of the Administrative Agent and the DIP Lender (as each such capitalized term is defined in either the Final Cash Collateral Order and/or the Final DIP Order) (either of the foregoing constituting a "Payoff Event"). Upon the occurrence of a Payoff Event and without the requirement of any further order of the Bankruptcy Court, Travelers shall be granted an allowed administrative claim pursuant to Section 364 of the Bankruptcy Code for any claim or loss, arising post-petition, sustained on account of any bonds written for the account post-petition (or reinstated, increased or renewed post-petition).

- Form of Bankruptcy Court order and other documents must be reviewed by and be acceptable in form and substance to Travelers in its sole discretion. Debtors bear the burden of scheduling a hearing and obtaining a satisfactory Court order as expeditiously as practicable.

- The fees and costs for legal work of Travelers during the pendency of the Bankruptcy Case until confirmation, conversion and or dismissal, whichever comes first, (the "Legal Fees"), as set forth below, shall be subject to a review period (the "Review Period"). The Review Period shall be as follows: (i) Travelers shall send an invoice for Legal Fees to the Debtors and the Committee, which provides sufficient detail for such parties to review the request (subject in all respects to applicable privilege or work product doctrines); (ii) the Debtors and the Committee shall have five (5) business days to object to the Legal Fees by filing an objection with the Bankruptcy Court; (iii) if neither the Debtors or the Committee objects, the Debtors shall be required to pay such Legal Fees within five (5) business days thereafter, without Court approval, and if either the Debtors or the Committee objects within the time permitted, the Debtors shall not pay the Legal Fees unless the objection is resolved or the Bankruptcy Court or any other court of competent jurisdiction approves such payment. Subject to the Review Period, Debtors shall pay all reasonable fees and costs for all legal work of Travelers in connection with the Bankruptcy Case incurred through the date of the entry of a Bankruptcy Case order approving the bonding facility described herein, up to $30,000.00 (attributable to the post-petition bonding) including all fees and costs incurred by Travelers in preparing and obtaining the order approving the bond facility. Subject to the Review Period, any reasonable, additional fees and costs for legal work incurred by Travelers, associated with obtaining the order in the event such proposed order meets with objection, otherwise payable in accordance with the terms of the indemnity agreements and/or incurred in enforcing the order approving the bond facility shall be paid within five (5) business days of receipt of an invoice and shall not be subject to the cap set forth in this paragraph. If an order is not entered approving this Term Sheet, legal fees and costs incurred by Travelers in connection therewith shall be subject to the terms of the pre-petition agreements of the parties. Nothing contained herein shall prejudice or impair the rights of Travelers for reimbursement under its existing indemnity agreements.

- Debtors shall continue to make any and all payments of any obligations which are covered by any Travelers' post-petition bond(s).

- Debtors shall supply periodic financial information to Travelers and shall fully cooperate, by making information and personnel available at reasonable times upon reasonable notice, with Travelers in connection with any claim investigation(s) and to mitigate any "Loss".

4

- Debtors shall stipulate to the allowance of all claims associated with the existing indemnity agreements and pre-petition bonds, subject to the Debtors review of a summary, to be provided by Travelers, which provides reasonable claim detail, and an estimate of all claims associated with the existing indemnity agreements and pre-petition bonds existing as of the dates of this Term Sheet. Subject to the Debtors' prior review and consent to the amount of the aforementioned claims (which consent shall not be unreasonably withheld), Travelers shall not be required to file a proof of claim in the Bankruptcy Cases and shall be granted an Allowed Claim in the Bankruptcy Case equal to the amount Travelers pays to liquidate any claims under the pre-petition bonds (inclusive of any fees and other expenses incurred in connection therewith, to the extent recoverable under the existing indemnity agreements), and, to the extent of the value of the collateral, an allowed secured claim within the meaning of Section 506 of the Bankruptcy Code.

- The terms and conditions of the order and the bonding facility shall be binding upon the Debtors, and any and all successors in interest to any or all of the foregoing including, but not limited to, any trustee or examiner appointed by the Bankruptcy Court. The Debtors shall agree that any plan of reorganization filed in the Bankruptcy Case shall be consistent with the terms and conditions hereof.

# Exhibit B

DB02:5337652.1                                                                 064952.1001

| | |
|---|---|
| **General Contract Of Indemnity (Form B)** | **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**<br>Hartford, Connecticut  06183 |

We, the undersigned, hereinafter referred to, individually and/or collectively, as "Indemnitors," hereby request, have requested and/or will request TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns, hereinafter referred to, individually and/or collectively, as "Company," to execute or procure bonds, undertakings, guarantees, and/or contractual obligations, including renewals and extensions thereof, whether before or after the date of this Agreement, and bonds and undertakings for which Company has obligations as a result of an asset purchase, acquisition, merger or like transaction, hereinafter referred to, individually and/or collectively, as "Bond(s)." As an inducement therefore we make the following representations of fact, promises and agreements:

**REPRESENTATIONS OF FACT:**

1. In the transaction of business one, some or all of the Indemnitors are required, or may desire to give such Bond(s).

2. Indemnitors have a substantial, material and beneficial interest (a) in the obtaining of Bond(s) by any of the Indemnitors and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bond(s) pursuant to this General Contract of Indemnity, hereinafter referred to as "Agreement." It is understood that the purpose of this Agreement is to induce Company to furnish Bond(s); however, Company is under no obligation to furnish Bond(s) to Indemnitors.

3. Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default thereunder.

**PROMISES AND AGREEMENTS:** In consideration of the furnishing of any such Bond, the forbearance of cancellation of any existing Bond(s) by Company, the assumption of obligations by Company of any Bond, and for other valuable consideration, Indemnitors hereby jointly and severally promise and agree as follows:

1. To pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

2. To indemnify and exonerate Company from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of Bond(s), the assumption of obligations by Company of Bond(s), and/or the enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation, hereinafter referred to as "Loss." To this end Indemnitors promise:

   (a) To promptly reimburse Company for all sums paid on account of such Loss and it is agreed that (1) originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss, and (2) Company shall be entitled to reimbursement for any and all disbursements made by it, under the belief that it was liable, or that such disbursement was necessary or expedient.

   (b) To deposit with Company, on demand, the amount of any reserve against such Loss which Company is required, or deems it prudent to establish whether on account of an actual liability or one which is, or may be, asserted against it and whether or not any payment for such Loss has been made.

3. This Agreement shall apply to any and all Bond(s) furnished as follows:

   (a) If Company executes the Bond(s), procures the execution of Bond(s) by other sureties, executes Bond(s) with co-sureties and/or obtains reinsurance;

   (b) For or on behalf of any or all of the following:

      (1) One, some or all of the Indemnitors;

      (2) Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;

      (3) Any present or future affiliate and/or subsidiary of Indemnitors;

      (4) Any third party at the request of Indemnitors, their subsidiaries and/or affiliates.

4. (a) The validity and effect of this Agreement shall not be impaired by, and Company shall incur no liability on account of, and Indemnitors need not be notified of:

- (1) Company's failure or refusal to furnish Bond(s), including final Bond(s) where Company has furnished a bid Bond;
- (2) Company's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond;
- (3) The taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond;
- (4) The release by Company, on terms satisfactory to it, of any Indemnitors; or
- (5) Information which may come to the attention of Company which affects or might affect its rights and liabilities or those of any of the Indemnitors.

(b) The validity and effect of this Agreement shall not be impaired by, and Company shall incur no liability on account of, the cancellation or termination of any Bond(s).

5. Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Company under this Agreement have been satisfied in full.

6. Company shall have the right, in its sole discretion, (a) to deem this Agreement breached should any Indemnitor become involved in any agreement or proceeding of liquidation, receivership, bankruptcy, insolvency or creditor assignment, whether voluntarily or involuntarily, or should any Indemnitor, if an individual, die, or be convicted of a felony, become a fugitive from justice, or for any reason disappear and cannot immediately be found by Company by use of usual methods, and (b) to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond(s).

7. If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Company with respect to each and every Bond. Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

8. Indemnitors also understand and agree that their obligations remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

9. This Agreement shall remain in full force and effect until terminated. Indemnitors may only terminate participation in this Agreement by providing written notice to Company of Indemnitors' intent to terminate. Such notice shall be addressed to St. Paul Travelers Bond, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183. Such notice of termination shall become effective thirty (30) days after Company's receipt of the same. The obligations and liability of Indemnitors giving such notice shall thereafter be limited to Bond(s) furnished before the effective date of the notice, which liability shall include any Bond(s) which were originally issued prior to the effective date of notice and renewed or otherwise extended subsequent to the notice or effective date of termination.

10. Whereas, the obligee or beneficiary under certain Bond(s) may make a demand for payment ("Demand") against the Bond(s). When such Demand is made, Company must pay the amount of the Demand, not to exceed the penal sum of the Bond(s), as well as all necessary fees, within the time period required by the Demand. Under such Bond(s), Company, with the knowledge and consent of the Indemnitors, has expressly waived all defenses to making such payment. If the Indemnitors receive notice from Company that a Demand has been made against the Bond(s) by the obligee or beneficiary, Indemnitors will, at least three (3) business days before payment of such Demand is due the obligee, pay Company the full amount of the Demand, which amount shall not exceed the penal sum of the Bond, as well as all necessary fees. Such payment will be made by wire transfer or otherwise in immediately available funds to the bank account specified in the notice provided to the Indemnitors by Company. The Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make payment to Company as herein provided shall cause the Indemnitors to be additionally liable for any and all costs and expenses, including attorney's fees, incurred by Company in enforcing this Agreement, together with interest on unpaid amounts due Company. Interest shall accrue, commencing the date Company pays the amount of the Demand, at 130% of the prime rate of interest in effect on December 31 of the previous calendar year as published in the Wall Street Journal. Indemnitors stipulate and agree that the Company will suffer immediate irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore Company shall be entitled to specific performance of this obligation.

11. Indemnitors hereby expressly authorize Company to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Company will, upon request, provide notice whether or not a consumer report has been requested by Company, and if so, the name and address of the consumer reporting agency furnishing the report.

12. In the event of a claim or notice of a potential claim, Company shall have the right, at all times, to free access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.

13. Company may furnish copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance.

14. A duplicate or facsimile copy or electronic reproduction of the original document shall have the same force and effect as the original.

15. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

16. If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

17. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Company, whether now existing or entered into hereafter.

18. The rights and remedies afforded to Company by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized employee of the Company.

19. Company's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

20. The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

21. Special Provisions: n/a

WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. IN TESTIMONY HEREOF, WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.

## If Indemnitor an Individual, sign below:

Instructions: Signatures of individual Indemnitors must be witnessed. Indemnitors must include their Social Security Number. All signatures must be dated with names printed or typed on the line provided.

_____    _____        _____    _____
(Witness Signature)          (Date)         (Indemnitor Signature)       (Date)

Print or Type Name: _____        Print or Type Name: _____

                                              SS#: _____

## If Indemnitor a Corporation, Limited Liability Company or Partnership, sign below:

Instructions: If the entity is: 1) a corporation the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company the manager(s) or member(s) should sign on behalf of the LLC, or 3) a partnership the partner(s) should sign on behalf of the partnership. Two signatures are required for all entities and all signatures must be notarized and dated. Please provide the entity's federal tax identification number on the line provided.

Each of the undersigned hereby affirms to Company as follows: I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

_____                     _____    (Seal)
(Indemnitor Name)                             (First Signature )

_____                     _____    _____
(Federal Tax ID)                              (Print or Type Name and Title)    (Date)

                                              _____    (Seal)
                                              (Second Signature)

                                              _____    _____
                                              (Print or Type Name and Title)    (Date)

ACKNOWLEDGEMENT
STATE OF _____        County of _____

ACKNOWLEDGEMENT
STATE OF _____        County of _____

On this _____ day of _____, _____, before me personally appeared _____, known or proven to me to be the _____ of the entity executing the foregoing instrument ("Entity") and _____, known or proven to me to be the _____ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on

oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public residing at _____
(Commission expires _____)