**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., et al., | ) | Case No. 07-11047 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related to Docket Nos. 11, 113, 403 and 674 |
| | ) | |
| | ) | Objection Deadlines: 9/20/07 at 4:00 p.m. (ET) and |
| | ) | 10/1/07 at 4:00 p.m. (ET) |
| | ) | Deadline for Submitting Bids: 10/2/07 at 4:00 p.m. (ET) |
| | ) | Auction Date: 10/5/07 at 10:00 a.m. (ET) |
| | ) | Sale Hearing Date: 10/9/07 at 2:30 p.m. (ET) |
| | ) | |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE BANK OF NEW YORK IN VARIOUS CAPACITIES TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS (A)(I) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN ASSETS USED IN DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

The Bank of New York in its capacity (a) as Indenture Trustee for the American Home

Mortgage Investment Trust Series 2004-4 Mortgage-Backed Notes, (b) as successor to JPMorgan

Chase Bank, National Association as Master Servicer, Securities Administrator and Custodian for

the GSAA Home Equity Trust 2006-6 Asset Back Certificates Series 2006-6 and the GSAA Home

Equity Trust 2006-9 Asset Back Certificates Series 2006-9, and (c) as Trustee for the Structured

Asset Mortgage Investments II Trust 2006-AR5 Mortgage Pass-Through Certificates Series 2006-

AR5 (in all capacities, hereinafter "BNY"), by and through its undersigned counsel, and in

accordance with sections 363(b) and 365 of title 11 of the United States Code (the "Bankruptcy

500171282v9
RLF1-3202988-1

Code") and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby files this Limited Objection and Reservation of Rights (the "Limited Objection") to the Emergency Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (the "Sale Motion") as follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1334. This matter is a core proceeding within the meaning of 28 U.S.C. section 157.

2.      The statutory basis for the relief requested in this Limited Objection is sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004(a) and 9014.

### BACKGROUND

3.      By virtue of the deadline to object to the Sale Motion, AHM is compelling parties to object to a proposed assignee that will not be identified until late in the day on October 5, 2007, which is the Friday before a federal holiday[1], with an approval hearing to be held on the next business day, which is October 9, 2007 (the "Sale Hearing"). As set forth below, there are numerous issues to be resolved with respect to the Debtors' proposed assumption and assignment of contracts, none of which can be resolved in advance of the Sale Hearing. First, on the record that has currently been advanced by the Debtors, they are not entitled to assume and assign any of the agreements for which they claim such a right. Additionally, the Debtors are proposing to assume

---

[1]   October 8, 2007 is Columbus Day.

2

and assign certain agreements while not proposing to assume and assign certain related agreements. Further, AHM has not provided for adequate cure payments for each of the agreements that it proposes to assume and assign. Finally, BNY is entitled to adequate assurance of future performance by any assignee that is accepted by the Debtors and approved by the Court. Such adequate assurance of future performance cannot presently be provided as no proposed assignee has been identified to date.

4.      In its various capacities, BNY is a party to numerous contracts to which American Home Mortgage Servicing Inc. (the "Debtor" or "AHM Servicing") is a party and which may be executory contracts. BNY entered into these contracts in connection with the following four securitizations in which AHM Servicing services or subservices certain mortgage loans: American Home Mortgage Investment Trust Series 2004-4 Mortgage-Backed Notes (the "2004-4 Notes"), GSAA Home Equity Trust 2006-6 Asset Back Certificates Series 2006-6 (the "2006-6 Certificates"), GSAA Home Equity Trust 2006-9 Asset Back Certificates Series 2006-9 (the "2006-9 Certificates") and Structured Asset Mortgage Investments II Trust 2006-AR5 Mortgage Pass-Through Certificates Series 2006-AR5 (the "2006-AR5 Certificates"). (In several cases the contract is in the name of JP Morgan Chase; BNY succeeded to the interest of JP Morgan Chase.)

5.      On August 6, 2007, the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors also filed the Sale Motion on this date wherein they evidenced their desire to sell their servicing business. On August 9, 2007, the Court entered its Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief (the "Sale Procedures Order").

6.      On August 27, 2007, the Debtors served a Notice of (i) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed

500171282v9
RLF1-3202988-1

Cure Obligations, if any (the "Cure Notice"). The following contracts to which BNY is a party or

has rights thereunder were listed in the Cure Notice (the "Contracts")[2]:

| Name of Agreement | Type of Agreement | Deal to which Agreement is Related | Proposed Cure Amount | BNY's Role |
|---|---|---|---|---|
| Servicing Agreement dated as of December 21, 2004 by and among the GMAC Mortgage Corporation, as HELOC Master Servicer, American Home Mortgage Acceptance, Inc , as seller and The Bank of New York, as Indenture Trustee | HELOC Servicing Agreement | American Home Mortgage Investment Trust Series 2004-4 Mortgage-Backed Notes | $0.00 | Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Securities Intermediary |
| HELOC Subservicing Agreement dated as of December 21, 2004 by and among GMAC Mortgage Corporation, as HELOC Master Servicer and AHM Servicing, as HELOC Subservicer (the "2004-4 HELOC Subservicing Agreement") | HELOC Subservicing Agreement | American Home Mortgage Investment Trust Series 2004-4 Mortgage-Backed Notes | $0.00 | Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Securities Intermediary |
| RMBS Servicing Agreement dated as of December 21, 2004 by and among American Home Mortgage Trust 2004-4, as Issuer, AHM Servicing , as RMBS Master Servicer and The Bank of New York, as Indenture Trustee (the "2004-4 RMBS Servicing Agreement") | Servicing Agreement | American Home Mortgage Investment Trust Series 2004-4 Mortgage-Backed Notes | $0.00 | Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Securities Intermediary |
| Assignment and Assumption and Recognition Agreement dated as of April 28, 2006 by and among AHM Servicing, as servicer American Home Mortgage Corp., GS Mortgage Securities Corp , as assignor, U.S. Bank National Association, as trustee and assignee and acknowledged by JPMorgan Chase Bank, National Association, as | Third Party Securitization | GSAA Home Equity Trust 2006-6 Asset Back Certificates Series 2006-6 | $0.00 | Master Servicer, Securities Administrator and Custodian |

---

[2]  Due to the voluminous nature of the Contracts, BNY is not attaching them as exhibits hereto but will make copies
available to parties upon request.

500171282v9
RLF1-3202988-1

| master servicer (the "2006-6 AAR") | | | | |
|---|---|---|---|---|
| Assignment and Assumption and Recognition Agreement dated as of May 26, 2006[3] by and among AHM Servicing, as servicer American Home Mortgage Corp., GS Mortgage Securities Corp., as assignor, U.S. Bank National Association, as trustee and assignee and acknowledged by JPMorgan Chase Bank, National Association, as master servicer (the "2006-9 AAR") | Third Party securitization | GSAA Home Equity Trust 2006-9 Asset Back Certificates Series 2006-9 | $0.00 | Master Servicer, Securities Administrator and Custodian |
| Assignment and Assumption and Recognition Agreement dated as of May 31, 2006 by and among EMC Mortgage Corporation, as assignor, JPMorgan Chase Bank, National Association, as indenture trustee and assignee, American Home Mortgage Corp. and AHM Servicing, as servicer (the 2006-AR5 AAR") | Third Party Securitization | Structured Asset Mortgage Investments II Trust 2006-AR5 Mortgage Pass-Through Certificates Series 2006-AR5 | $0.00 | Trustee |

7.      On September 7, 2007, the Debtors filed a Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any (the "Modified Notice"), which again listed the Contracts as possible contracts AHM Servicing would seek to assume and assign.

8.      In the Sale Motion, AHM Servicing is seeking the right to assume and assign the Contracts referenced above. At present, the Debtors have proposed a cure amount of "$0.00" in connection with said Contracts.

9.      On September 14, 2007 AHM Servicing filed a notice of certain rescheduled dates with respect to the Sale Motion (the "Notice"). In the Notice, the deadline to submit bids to

---

[3]  The Cure Notice incorrectly lists April 28, 2006 as the date for this agreement.

500171282v9
RLF1-3202988-1

purchase the servicing business assets has been extended to October 2, 2007. The corresponding

auction of the assets has been rescheduled for October 5, 2007, and a hearing to approve any sale is

currently scheduled for October 9, 2007 (the "Sale Hearing").

## THE CONTRACTS

10.     BNY serves in a number of capacities with respect to the Contracts. Specifically,

BNY is the:

- Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Securities Intermediary for the 2004-4 Notes;

- Master Servicer, Securities Administrator and Custodian for the 2006-6 Certificates;

- Master Servicer, Securities Administrator and Custodian for the 2006-9 Certificates; and

- Trustee for the 2006-AR5 Certificates.

11.     Prior to its bankruptcy filing, American Home Mortgage Corporation ("AHMC"),

one of the above captioned debtors, originated residential mortgage loans. AHM Servicing serviced

these loans by collecting payments from mortgagors, paying mortgagor taxes and insurance from

escrowed funds and instituting foreclosure proceedings if necessary. AHM Servicing continues to

be responsible for servicing the mortgage loans originated by AHMC.

12.     With respect to the 2004-4 Notes, American Home Mortgage Acceptance Inc., also

one of the above-captioned Debtors, sold certain mortgage loans to American Home Mortgage

Securities LLC, which in turn deposited the mortgage loans into the American Home Mortgage

Investment Trust 2004-4, a statutory trust (the "2004-4 Trust"), pursuant to a certain Trust

Agreement dated as of December 21, 2004. The 2004-4 Trust then issued the 2004-4 Notes in the

form of mortgage backed notes to various holders pursuant to the terms of an Indenture, dated as of

December 21, 2004 between the 2004-4 Trust, as issuer, and BNY as Indenture Trustee (the "2004-

4 Indenture").

6

13.    With respect to the 2006-6 and 2006-9 Certificates, AHMC sold and assigned certain mortgage loans to Goldman Sachs Mortgage Company. These mortgage loans were then sold to GS Mortgage Securities Corp., which in turn deposited the mortgage loans into the GSAA Home Equity Trust 2006-6 and GSAA Home Equity Trust 2006-9 respectively, for which U.S. Bank, National Association is the Trustee. For the 2006-6 Certificates, this was done pursuant to a certain Master Servicing and Trust Agreement, dated as of April 1, 2006. For the 2006-9 Certificates, this was done pursuant to a certain Master Servicing and Trust Agreement, dated as of May 1, 2006. The 2006-6 and 2006-9 Certificates were then issued in the form of asset backed certificates. BNY serves as Master Servicer and Securities Administrator for these transactions.

14.    In the transaction related to the 2006-AR5 Certificates, AHMC sold certain mortgage loans to EMC Mortgage Corporation, which in turn sold the mortgage loans to Structured Asset Mortgage Investments II, Inc. Structured Asset Mortgage Investment II, Inc. then deposited the mortgage loans in the Structured Asset Mortgage Investments II Trust 2006-AR5 pursuant to a certain Amended and Restated Pooling and Servicing Agreement dated as of December 5, 2006. The 2006-AR5 Certificates were issued in the form of mortgage pass-through certificates. BNY serves as the Trustee for the 2006-AR5 Certificates.

15.    The Contracts are either Servicing Agreements or Assignment, Assumption and Recognition Agreements. AHM Servicing services or subservices pools of mortgage loans under the terms of the Servicing Agreements. The Assignment, Assumption and Recognition Agreements provide the terms under which the rights and obligations to an underlying servicing agreement are transferred in connection with certain mortgage loans purchased by certain assignors and transferred to certain assignees.

16.    The Contracts require AHM Servicing, among other things, to advance funds to pay taxes on the pool of mortgage loans covered by the Contracts, maintain proper levels of hazard

7

insurance coverage, enforce the terms of the mortgages and comply with indemnification obligations covering all liability, loss, cost and expense arising from or related to breaches of the Servicing Agreements or reporting obligations. In the event that AHM Servicing defaults on any of these responsibilities, the Noteholders and Certificateholders rely on BNY in its various capacities to seek to enforce the terms of the Contracts.

## ARGUMENT

### A.   The Debtors Must Assume and Assign All Related Contracts

17.     Any proposed assumption and assignment must include all agreements integrally related to a transaction. Debtors are not permitted to "cherry pick" the agreements that it will assume and assign. All related agreements must be assumed and assigned together. The Cure Notice or Modified Notice does not provide the full name of the Contracts and/or all of the parties to such Contracts nor does it list certain related contracts to the 2006-6 AAR, the 2006-9 AAR or the 2006-AR5 AAR. *See generally, In re Integrated Health Services, Inc.*, 2000 WL 33712484, at *3 (Bankr. D. Del. 2000) (noting that unless the contracting parties intended severability, "a debtor may not assume less than all unexpired leases or executory contracts in an integrated group"); *see also In re Harrison*, 117 B.R. 570, 573 (Bankr. C.D. Cal. 1990) (concluding a gasoline station's "Dealer Agreement, Motor Fuel Station Lease, Auto Care Agreement and Auto Car Limited Warranty" between the oil company and the debtor-franchisee were "integrated to form one controlling agreement between the parties").

18.     While the 2006-6 AAR, the 2006-9 AAR and the 2006-AR5 AAR are listed in the Cure Notice and Modified Notice, unless the underlying agreements assigned thereunder are also proposed to be assumed, any assumption and subsequent assignment of the above mentioned AARs is rendered meaningless. Such underlying servicing agreements which were omitted from the Cure Notice and Modified Notice include: (i) a certain Mortgage Loan Sale and Servicing Agreement,

8

dated as of December 1, 2005, between Goldman Sachs Mortgage Company, as purchaser, AHMC, as seller and AHM Servicing, as servicer (the "2006-6 and 2006-9 Servicing Agreement") which was ultimately assigned to BNY, as master servicer, acting on behalf of the trustee for the 2006-6 Certificates and the 2006-9 Certificates; and (ii) a certain Purchase, Warranties and Servicing Agreement dated as of March 1, 2006 between EMC Mortgage Corp. as assignor, AHM Servicing, as servicer, and AHMC (the "2006-AR5 Servicing Agreement").

19.     These underlying servicing agreements provide the terms under which the mortgages are actually serviced. Further, these agreements contain the servicing obligations and certain indemnification provisions running from AHM Servicing in favor of BNY. The Debtors must assume and assign all of the above-mentioned related agreements together to the same assignee. In the event that AHM Servicing is not seeking to assume and subsequently assign such servicing agreements, BNY objects to the proposed assumption of the 2006-6 AAR, the 2006-9 AAR and the 2006-AR5 AAR because as mentioned above, related contracts must be assumed and assigned together.

**B.      The Cure Amounts Proposed by the Debtors Are Not Adequate**

20.     Section 365 of the Bankruptcy Code provides that agreements that are assumed or assigned by a debtor are assumed and assigned with all of the benefits and burdens connected to each contract. These burdens include curing all financial defaults, if any, under the assumed or assigned contract. *See* 11 U.S.C. section 365(b); *See also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 513-31 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate.") citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996-97 (3d Cir. (1951) ("The trustee, however, may not

blow hot or cold. If he accepts the contract, he accepts it *cum onere*. If he receives the benefits, he must adopt the burdens. He cannot accept one and reject the other.")

21.    None of the Contracts can be assumed and assigned without a cure of all outstanding obligations owing to BNY. Under section 3.08 of the 2004-4 Indenture (a document to which none of the Debtors is a party), upon certain events, including the bankruptcy filing of AHM Servicing, a Rapid Amortization Event (as defined therein) automatically occurs. Upon information and belief, payments made by AHM Servicing (who services the mortgage loans securitized in the 2004-4 deal) at the end of August were consistent with a Rapid Amortization Event occurring.

22.    BNY has received notice from the Debtors that they intend to challenge that such a Rapid Amortization Event has occurred. While such challenge has not yet been formalized and the next distribution date is not until the end of September, if AHM Servicing fails to submit payments consistent with such an event occurring, BNY reserves the right to demand such payments as cure obligations under the relevant servicing agreements for the 2004-4 Notes.

23.    As to other issues BNY is not presently aware of other cure amount issues and reserves its right to object in the future should any such issues arise.

C.    **BNY is Entitled to Adequate Assurance of Future Performance from the Proposed Assignee(s)**

24.    Under section 365(f)(2) of the Bankruptcy Code, a debtor can only assign executory contracts if it, among other things, provides the non-debtor party to said contract with adequate assurance that the assignee will be able to perform under the terms of each contract that it assumes whether or not there has been a default in such contract. Adequate assurance is designed to provide a non-debtor party to a contract with needed protection because the assignment relieves the debtor and the bankruptcy estate from liability for breaches that occur after the assignment. *In re Fleming*, 2004 WL 385517 (Bankr. Del. Feb. 27, 2004) aff'd by *In re Fleming Companies, Inc.*, 2007 WL 2390776 (3rd Cir. Aug 22, 2007).

500171282v9
RLF1-3202988-1

25.    Adequate assurance of future performance is not defined in the Bankruptcy Code and determining whether an assignee has provided such assurances is a fact-based inquiry that focuses on the specific facts of the proposed assignment. *Id.* The legislative history of section 365 suggests that adequate assurance will insure that a debtor's performance under a contract gives the other contracting party the full benefit of the bargain. *In re U.L. Radio,* 19 B.R. 537, 541 (S.D.N.Y. 1982). The primary focus is generally on the ability of the assignee to comply with the financial obligations under the agreements. *Id.* at 542. Examples of instances where the court has found that there was a failure to provide adequate assurance of future performance can be found in *Fleming,* 2004 WL 385517 and In *re Three A's Holdings, LLC,* 364 B.R. 550 (Bankr. Del. 2007).

26.    In *Fleming*, the court denied the debtor's authority to assign a facility standby agreement where such assignment caused a modification in a material provision of the contract. The non-debtor party to the standby agreement argued that the facility standby agreement required the debtors to supply certain grocery stores from a certain facility. Because the debtors intended to reject the lease for that facility, the court found that the debtor would be impermissibly modifying the standby agreement if it purported to supply the stores from another location and thus the requirements of section 365(f) were not met. *Fleming,* 2004 WL 385517.

27.    In *Three A's Holdings*, the court refused to approve the assignment of a lease which violated restrictive use covenants. The debtor sought to assign its real property lease to a Walgreen's store; however, the covenants restricting uses in the store's area did not specifically permit drug stores or pharmacies. The covenants did allow the sale of "health supplies" and Walgreen's argued that such term should be interpreted broadly to include its proposed use. The court disagreed because, while Walgreen's could sell the merchandise that could be categorized as "health supplies", 63% of Walgreen's sales over the previous 3 year period were generated through prescription drug sales. *Id* at 557. Consequently, the requirements of section 365(f) were not met.

11

28.    The Debtors and any proposed assignee(s) have the responsibility to provide BNY

with adequate assurance of future performance that any such potential assignee(s) can fulfill the

obligations under the Contracts. A failure of a successor servicer to satisfy any of the below criteria

would constitute an impermissible modification of the Contracts. Specifically, in order to provide

adequate assurance of future performance with respect to Contracts related to the 2004-4 Notes, any

proposed assignee must meet the following requirements:

- The assignee must be "reasonably satisfactory" to BNY as the Indenture Trustee (as pledgee of the Mortgage Loans). See sections 5.02 and 5.04 of the 2004-4 RMBS Servicing Agreement. In determining whether an assignee is reasonably satisfactory, BNY may look at several factors, including, but not limited to, whether the assignee is a member in good standing of the Mortgage Electronic Registration System ("MERS") and agrees to comply with the rules and procedures of MERS in connection with the Mortgage Loans or Home Equity Line of Credit ("HELOC") Mortgage Loans registered with MERS and whether the assignee is an established housing and home finance institution, bank or other mortgage loan servicer having a net worth of not less than $10 million. See generally section 6.02(a) of the 2004-4 HELOC Servicing Agreement.

- The assignee must be qualified to service mortgage loans on behalf of Fannie Mae or Freddie Mac. See section 5.02 of the 2004-4 RMBS Servicing Agreement and section 5.02 of the 2004-4 HELOC Subservicing Agreement.

- The assignee must be willing to service the Mortgage Loans and the HELOC Mortgage Loans. See section 5.02 of the 2004-4 RMBS Servicing Agreement and section 5.02 of the 2004-4 HELOC Subservicing Agreement.

- The assignee must maintain in force a policy of insurance covering errors and omissions in the performance of its obligations as RMBS Servicer and/or HELOC Subservicer and a fidelity bond in respect of its officers, employee and agents. See section 6.02(b) of the 2004-4 RMBS Servicing Agreement and section 6.02(b) of the 2004-4 HELOC Subservicing Agreement.

- The assignee must be satisfactory to the Rating Agencies such that they will not reduce their ratings on the rated certificates as a result of the change in servicer, such satisfaction to be evidenced in a letter as a condition to the assignment. See sections 5.02, 5.04 and 6.02(a) of the 2004-4 RMBS Servicing Agreement and sections 5.02 and 6.02(a) of the 2004-4 HELOC Subservicing Agreement.

29.    In order to provide adequate assurance of future performance with respect to

Contracts related to the 2006-6 and 2006-9 Certificates, any proposed assignee must meet with

500171282v9
RLF1-3202988-1

BNY's prior written approval, which consent shall be granted or withheld in BNY's sole discretion. When determining whether to grant such consent, BNY will look to any proposed assignee's independent status, the adequacy of its servicing facilities, plan, personnel, records and procedures, its integrity, reputation and financial standing as such criteria were integral to the original retention of AHM Servicing. See section 12.04 of the 2006-6 and 2006-9 Servicing Agreement. Given BNY's right as a Master Servicer to monitor the performance of AHM Servicing and to cause AHM Servicing to duly perform its duties and obligations under the 2006-6 and 2006-9 Servicing Agreement, it has a legitimate right to ensure that any assignee be an appropriate successor under the aforementioned transactions. See section 9.01 of the 2006-6 and 2006-9 Servicing Agreement.

30. In connection with the 2006-AR5 Certificates Wells Fargo Bank, as Master Servicer, is charged with overseeing whichever servicer might become AHM Servicing's assignee and BNY accordingly reserves its rights in this regard until Wells Fargo takes a position with respect to the requirements for an assignee.

31. In addition to the successor servicer requirements listed above, the Contracts also include indemnification obligations that run in favor of BNY in its various capacities that are currently contingent and unliquidated. See e.g. section 5.06 of the 2004-4 RMBS Servicing Agreement, section 12.01 of the 2006-6 and 2006-9 Servicing Agreement, and section 7 of the 2006-AR5 AAR. The proposed form of purchase agreement attached to the Sale Motion (the "Proposed Purchase Agreement") purports to sell all of AHM Servicing's Servicing Rights (as defined in the Proposed Purchase Agreement) in section 2.1 thereof but such defined term specifically provides that "all indemnification rights and obligations of Sellers arising prior to the Closing Date shall not be transferred to Purchaser." Such indemnification rights are also not expressly included in the definition of "Retained Liabilities" for which AHM Servicing would remain liable under section 2.6 of the Proposed Purchase Agreement. The Sale Motion therefore

13

provides no adequate assurance that these contingent future indemnification claims would be protected.  Any proposed assignee must accept the Contracts in their entirety, including the indemnification provisions thereof.  See *In re S.E. Nichols, Inc.*, 120 B.R. 745, 747 (Bankr. S.D.N.Y. 1990) ("It is well settled that a debtor cannot assume part of an unexpired lease while rejecting another part; the debtor must assume [or reject] the lease in *toto* . . .")

## RESERVATION OF RIGHTS

32.    If the Debtors do not provide such adequate assurance, BNY hereby reserves its right to supplement this Limited Objection in order to raise additional objections to the sale, sale order, sale procedures, identity of the purchaser, new bid protections, failure to provide adequate assurance of future performance and revised proposed cure amounts.  BNY also reserves the right to investigate all bidders to determine if said bidders meet the requirements provided in paragraphs 28-30 above.

## CONCLUSION

**WHEREFORE**, BNY requests that this Court:

(A) on the present record, deny Debtors' motion to assume and assign the Contracts;

(B) to the extent the record is supplemented in a way that enables the Court to address the merits,

(i) prohibit the assumption and assignment of the Contracts unless the additional above-referenced servicing agreements are also assumed and assigned,

(ii) prohibit the assumption and assignment of the Contracts unless the conditions applicable to assignment, as described above and in the Contracts, have been satisfied,

(iii) prohibit the assumption and assignment of the Contracts unless the proposed assignor furnishes adequate assurances of future performance,

(iv) require cure payments in amounts to be determined at the Sale Hearing,

500171282v9
RLF1-3202988-1

(v) disapprove of the Proposed Purchase Agreement unless it is modified so as to eliminate all clauses which purport to permit an assignee to dishonor indemnity or other obligations; and

(C) grant such other relief as the Court deems appropriate.

Dated: September 20, 2007
      Wilmington, Delaware

                            _____
                            Russell C. Silberglied (3462)
                            Christopher Samis (4909)
                            RICHARDS, LAYTON & FINGER, P.A.
                            One Rodney Square
                            920 North King Street
                            Wilmington, Delaware 19801
                            (302) 651-7700

                            -and-

                            PILLSBURY WINTHROP SHAW PITTMAN LLP
                            Leo T. Crowley
                            Margot P. Erlich
                            1540 Broadway
                            New York, New York 10036
                            (212) 858-1000

                            Attorneys for The Bank of New York, in various capacities

15