## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br>*et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>Jointly Administered<br><br>Related to Doc. No. 11<br>Hearing Date: 10/19/07 @ 2:30<br>Objection Date: 9/20/07 @ 4:00 |

**LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION TO EMERGENCY
MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE
PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN
ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING
FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED
RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II)
AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV)
GRANTING RELATED RELIEF
AND TO PROPOSED CURE OBLIGATIONS**

U.S. Bank National Association, in its capacity as Trustee, by and through its

undersigned counsel, files this Limited Objection (the "Limited Objection") to the Debtors'

motion to sell their loan servicing business and to the proposed assumption and assignment of

certain executory contracts and the proposed cure amounts associated with such sale (the

"Motion").

### BACKGROUND

1.      U.S. Bank National Association is the Indenture Trustee in connection with the

securitization transactions for which the Debtors are the servicer and which are identified by the

Debtors in their *Modified* Notice of (I) Possible Assumption and Assignment of Certain Leases,

License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any (the

"Modified Notice") as follows: "(JPALT 2006-A3)"; "(JPALT 2007-S1)"; "(JPMMT 2007-S2)";

"(JPMMT 2007-S3)"; "(GSR 2006-AR1)"; "(GSAA 2006-6)"; "(BSABS 2006-AC3)"; "(GSAA

2006-9)"; "(BSABS 2007-AC1)"; "(BSABS 2006-AC4)"; "(MARM 2006-OA2)"; "(MARM

2007-1);" "(MARM 2007-3)"[1]; and certain servicing agreements dated October 7, 2005 listed on

Exhibit B of the Modified Notice.  Accordingly, U.S. Bank National Association files this

Limited Objection in its capacity as Indenture Trustee or other trustee in connection with the

foregoing transactions and any additional transactions for which the Debtors serve as servicer

and for which U.S. Bank National Association is the Indenture Trustee or other trustee, either as

the original or successor in such capacities ("U.S. Bank" or the "Trustee").

      2.      On the exhibits to the Modified Notice, the Debtors have identified each of the

above-listed securitization transactions as "Third Party Securitizations" (together with additional

listed transactions (and any other transactions that may be a subject of the Motion), if any, for

which U.S. Bank is the Indenture Trustee, or other trustee, either as the original or successor in

such capacities, but which additional listed securitization transactions do not specifically identify

U.S. Bank, collectively, the "Securitization Transactions").  The Debtors are seeking potentially

to assume and assign the "loan servicing rights" related to the executory contracts listed on such

---

[1]     These transactions are also referred to as the JP Morgan Mortgage Trust 2007-S2; JP Morgan Mortgage Trust 2007-S3; JP Morgan Alternative Loan Trust 2006-A3; JP Morgan Alternative Loan Trust 2007-S1; GSR Mortgage Loan Trust 2006-AR1; GSAA Home Equity Trust 2006-6; GSAA Home Equity Trust 2006-9; Bear Stearns Asset Backed Securities I Trust 2006-AC3; Bear Stearns Asset Backed Securities I Trust 2006-AC4; and Bear Stearns Asset Backed Securities I Trust 2007-AC1.

     U.S. Bank is also the Indenture Trustee in connection with two additional securitization transactions, previously identified by the Debtors as LXS 2007-7N and LXS 2007-15N, for which the Debtors previously served as servicer under certain servicing agreements.  The Debtors' servicing rights under these servicing agreements were properly terminated pre-petition and, accordingly, these servicing agreements do not constitute executory contracts which the Debtors can assume or assume and assign.  It appears that these transactions were removed from the list of contracts to be assumed and assigned filed by the Debtors on August 27, 2007, and that the Debtors no longer seek to include them in the Motion.  To the extent the Debtors seek to assume and assign contracts related to these transactions, U.S. Bank objects to same as stated herein.

exhibits or associated with the Securitization Transactions (the "Assumed Contracts"). For each of the Securitization Transactions, the Debtors have proposed a cure amount of $0.00.

## DISCUSSION

3.      U.S. Bank hereby objects[2] to the Motion and in support of its Limited Objection joins in and incorporates,[3] as applicable to the Securitization Transactions, (i) the Objection to Proposed Cure Obligations of Wells Fargo Bank, National Association ("Wells") and (ii) the Objection to the Motion of Financial Guaranty Insurance Company ("FGIC") regarding the pre-petition termination of Debtors' servicing rights in the transactions described therein. Further, U.S. Bank restates and repeats the additional arguments of FGIC in its objection in connection with all of the Securitization Transactions (not just those transactions identified by FGIC), as follows:

### I.      U.S. Bank Has Not Received Adequate Assurance of Future Performance

4.      Section 365(b) of the Bankruptcy Code requires the Debtors to provide adequate assurance of future performance as a condition to assumption of any Assumed Contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 505, 531 (1984); *In re National Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000). The Motion, however, does not provide any adequate assurance that a Qualified Bidder[4] would assume and perform all terms of the Assumed Contracts. The Motion does not provide any form of assumption agreement that a successor servicer would enter

---

[2]      U.S. Bank files this Limited Objection in an abundance of caution and by making this Limited Objection does not acknowledge, create or assume any obligations under any documents to which it is a party that do not otherwise exist.

[3]      To the extent the objections of Wells and FGIC assert facts of which U.S. Bank is without knowledge, U.S. Bank joins and incorporates such assertions upon information and belief.

[4]      Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

into with non-Debtor parties to the Servicing Agreements which are included within the definition of Assumed Contracts (the "Servicing Agreements"), pursuant to which, *e.g.*, such successor servicer would assume all of the servicing obligations under the Servicing Agreements.

5.    The Motion and the form Asset Purchase Agreement fail to specify whether a Qualified Bidder as successor servicer will assume the Servicing Agreements in their entirety. Any successor servicer must either assume the Servicing Agreements expressly subject to all the terms thereof, or seek the prior consent of, among others, U.S. Bank.    The failure of any successor servicer to assume the Servicing Agreements other than subject to all the terms thereof would constitute an impermissible modification of the Servicing Agreements.    U.S. Bank does not consent to any modification of the Servicing Agreements, including but not limited to any modification to the terms that require Minimum Tangible Net Worth and cannot be forced to accept a modification of the Servicing Agreements.    Moreover, the Debtors' Modified Notice states that the Debtors are only seeking to assume and assign the loan servicing rights related to the proposed Assumed Contracts.    As set forth above, rights under the Servicing Agreements cannot be transferred independent of the Servicing Agreements or the assumption of such agreements and any assumption and assignment of the Servicing Agreements must expressly include all the terms of such agreements.    Also, this statement made by Debtors in the Modified Notice, to the effect that they are only seeking to assume and assign the loan servicing rights related to the proposed Assumed Contracts, was not previously expressed in either the Debtors' Motion, the form Asset Purchase Agreement, the Court's August 9, 2007 order (or the bid procedures or Notice of Auction and Sale Hearing approved thereby), the initial Notice or the Notice of <u>Rescheduled</u> Dates in connection with the Motion filed on August 31, 2007 (each of

which expressly contemplated the assumption and assignment of executory contracts). Instead, this statement is a new statement of the Debtors. Accordingly, such statement in the Modified Notice is not only contrary to the requirements of Section 365, but also contrary to the Motion and the Court's August 9, 2007 order (and all other related pleadings and notices in this case).

6.      Under the Motion, and the related sale procedures as approved by order entered on August 9, 2007 (as modified by the Debtors' Notice of <u>Rescheduled</u> Dates in connection with the Motion filed on August 31, 2007 and the Modified Notice), counterparties of and other parties holding rights under purported Assumed Contracts will not be advised of the Debtors' choice of the successor servicer until <u>after</u> (a) the objection deadline respecting the assumption and assignment portion of the Motion (currently scheduled for September 20, 2007) and (b) the Debtors' Auction (currently scheduled for October 5, 2007). Parties are denied any opportunity to object to the Motion after the Debtors' choice of successor servicer is presented. Counterparties of, and other parties holding rights under, Assumed Contracts would not be advised of either the identity of the purported successor servicer or the terms under which the servicing assumption is designated to occur until after the fact. Fundamental principles of the bankruptcy process include (i) full disclosure to all parties in interest, (ii) participation by parties in interest, (iii) a level playing field for prospective bidders and (iv) the protections afforded by the procedural rights and distribution priorities in the Bankruptcy Code. The Debtors in this case have demonstrated no reason to justify setting aside these fundamental principles. Moreover, there is no basis in law to set these principles aside. "As the Supreme Court has noted, it is easy to sympathize with the desire of a bankruptcy court to expedite bankruptcy reorganization proceedings for they are frequently protracted. 'The need for expedition, however, is not a justification for abandoning proper standards.'" *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.

1983) (quoting *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968)).

7.     The Motion and form Asset Purchase Agreement do not require that Qualified Bidders must satisfy the eligibility criteria for any servicer that is expressly set forth in the Servicing Agreements.  A failure of a successor servicer to satisfy such criteria would constitute an impermissible modification of the Servicing Agreements.

8.     AHM Servicing and AHM Acceptance have important indemnification obligations to U.S. Bank and the trusts under the Servicing Agreements (collectively, the "Trusts").  The Motion would not require a successor servicer to assume such indemnification obligations.  The form of Asset Purchase Agreement excludes indemnification obligations from the definition of "Servicing Rights" to be assumed by a Qualified Bidder in Section 2.5 thereof and does not identify such indemnification obligations as among the Debtors' "Retained Liabilities" for which the Debtors remain liable under Section 2.6 thereof.  Claims are held by U.S. Bank and the Trusts under the Servicing Agreements that remain contingent and unliquidated but nevertheless are subject to the Debtors' indemnity obligations.  These claims include, without limitation, potential claims for servicing breaches discovered later, failure to take actions expected of a servicer to cure exceptions relating to the related mortgage loans and claims for potential predatory servicing and other potential litigation.  The Debtors have provided no, much less adequate, assurance that U.S. Bank or the Trusts would be adequately indemnified in the event that claims under the Servicing Agreements become fixed and liquidated.

## II.    The Required Consents of U.S. Bank Have Not Been Obtained

9.      Sections 2.4(a), 6.3(c)(ii) and 6.3(d) of the form Asset Purchase Agreement provide that the assumption and assignment of Assumed Contracts—including the servicing rights associated with the Securitization Transactions—cannot be consummated without obtaining necessary consents of third parties, including the consent of U.S. Bank.  U.S. Bank has not consented to the assumption and assignment of the servicing rights associated with the Securitization Transactions.

## III.    The Proposed Cure Claim Amounts Are Inadequate

10.      Section 365 of the Bankruptcy Code also requires the Debtors to cure any default under a purported Assumed Contract as a condition to the assumption of any Assumed Contract. Under the Motion, the related sale procedures as approved by order entered on August 9, 2007 and the Modified Notice, counterparties of and other parties holding rights under purported Assumed Contracts were advised of the Debtors' purported cure claims on September 10, 2007. The Motion and Modified Notice fail to provide counterparties of and other parties holding rights under purported Assumed Contracts a sufficient opportunity to investigate the nature of the Debtors' defaults and cure claims.  Moreover, no provision or holdback of the purchase price from which cure claims would be paid is contemplated.  The Debtors improperly seek adjudication, through approval of the Motion and the Modified Notice, that no cure amounts are due.  Any determination that no defaults exist under the purported Assumed Contracts in connection with the assignment thereof would be premature.

11.      As stated in the objection to the Motion filed by FGIC, the Motion cannot include the HELOC Servicing Agreements[5] because, upon information and belief, the Debtors' servicing

---

[5]      The HELOC Servicing Agreements are defined in the objection to the Motion filed by FGIC.

rights under same were terminated pre-petition.  However, if the Court determines otherwise, the

Motion should be denied regarding the HELOC Servicing Agreements until the existing default

is cured.  Upon information and belief, on at least the August 27, 2007 distribution date in the

American Home Mortgage Investment Trust 2005-4A (the "AHMIT 2005-4A Trust"), AHM

Servicing and AHM Acceptance as servicers have failed to deposit certain collections on

HELOC Mortgage Loans into the appropriate accounts as required by the HELOC Servicing

Agreement and the Debtors have inappropriately misdirected such collections.  The Indenture in

the AHMIT 2005-4A Trust expressly specifies that a "Rapid Amortization" event occurs

thereunder based on, among other things, the pre-petition Tangible Net Worth event of default.[6]

Upon the occurrence of the Rapid Amortization event, collections on the HELOC Mortgage

Loans are reallocated under the Indenture, all such collections are to be applied to payment on

the notes issued by the AHMIT 2005-4A Trust and such collections are no longer available to

fund additional draws by borrowers on the HELOC Mortgage Loans.  Upon information and

belief, Wells Fargo Bank, National Association, as securities administrator, advised AHM

Servicing and AHM Acceptance that they were not permitted by the HELOC Servicing

Agreements to retain any collections on the HELOC Mortgage Loans to fund additional draws

by borrowers.  However, AHM Servicing and AHM Acceptance nevertheless improperly

misdirected collections belonging to the AHMIT 2005-4A Trust and used such collections to

fund additional draws under HELOC Mortgage Loans.  Upon information and belief, the

approximate amount of collections that was improperly diverted by AHM Servicing and AHM

Acceptance, and as a result not paid to related noteholders, is $400,630.00.  This amount needs

---

[6]     The Indentures contain additional Rapid Amortization trigger events.  U.S. Bank does not
waive its right to assert a Rapid Amortization based on any such other event or to waive the
occurrence of a Rapid Amortization event.

to be immediately restored to the AHMIT 2005-4A Trust. However, the Debtors have failed to cure this default.

12.    The Motion also fails to require a Qualified Bidder to either assume and perform the obligations of, or to cure the defaults of, Debtors under the mortgage loan purchase agreements related to the Securitization Transactions. Debtors acted not only as the servicer of the mortgage loans, but also were the seller of the mortgage loans under a mortgage loan purchase agreement in such transactions. Each mortgage loan purchase agreement contains several obligations of Debtors, including obligations to cure, repurchase or substitute defective mortgage loans. The obligations of Debtors under the mortgage loan purchase agreement are not divisible from the obligations of Debtors under the servicing agreement in the same transaction. The mortgage loan purchase agreements were negotiated and entered into by the parties simultaneously with the related servicing agreement and each agreement contains obligations of Debtors respecting the mortgage loans. Moreover, the mortgage loan purchase agreements generally provide that the obligations of Debtors as seller thereunder will be assigned to and enforceable by the Indenture Trustee in such transaction. Accordingly, the mortgage loan purchase agreements evidence the intent of the parties that the obligations of Debtors under both the mortgage loan purchase agreement and the servicing agreements run to and be enforceable by the Indenture Trustee thereunder and that Debtors' obligations under both agreements be enforceable by such Indenture Trustee as a single, unified agreement.

13.    The Debtors may also be required by the terms of the Servicing Agreements to pay the costs and expenses associated with any transfer of servicing. The Motion fails to provide for the payment of any such costs and expenses.

14.    As stated above, the Debtors have important indemnification obligations to the Indenture Trustees under the Servicing Agreements and related Insurance and Indemnity Agreements. Yet the Motion, the Notice and the Modified Notice fail to provide for a cure of these obligations and fail to require a successor servicer to assume such indemnification obligations.

15.    U.S. Bank reserves the right to supplement its Limited Objection or commence related proceedings. U.S. Bank further reserves (i) the right to assert that the assumption and assignment of the Back-Up Servicing Agreements would need to be a condition to any assumption and assignment of the Servicing Agreements; (ii) the right to assert cure claims for breaches of representations and warranties with respect to individual loan contracts and the adequacy of the mortgage file to the extent that the originator of the loans is likewise assuming the relevant agreements or to the extent that the obligations under the relevant transactional documents are not severable from those of the Servicing Agreements; and (iii) its rights with respect to the terms and conditions set forth in the proposed Asset Purchase Agreement.   The terms of the agreement must be consistent with the terms of the Servicing Agreements. U.S. Bank has no ability to make this assessment until it is provided with a final form of such agreement.

WHEREFORE, U.S. Bank hereby requests that (a) the Court deny the Motion to the extent the Motion seeks to include or assume and assign the HELOC Servicing Agreements (as defined in the objection to the Motion filed by FGIC); (b) the Court hold that the purported cure claim related to the HELOC Servicing Agreements is thus not applicable, or if applicable, is incorrect and that such Agreements may not be assumed or assigned until fully cured by payment of the unpaid amounts as described hereinabove; (c) any Order approving the Motion establish

an appropriate reserve or escrow for the benefit of the Trusts created pursuant to the Securitization Transactions to cure any latent or other defects or breaches under the  terms of the Servicing Agreements; (d) all of its rights, remedies and claims with respect to the identity of the purchaser or purchasers of the loan servicing related to the Securitization Transactions, including but not limited to, the ability of such purchaser to provide adequate assurance of future performance, be reserved and preserved; (e) all of its rights, remedies and claims with respect to the form of the Asset Purchase Agreement be reserved and preserved pending the availability of such document in final form; and (f) the Court grant such other and further relief as it deems equitable, just and proper.

Dated: September 20, 2007

**DORSEY & WHITNEY (DELAWARE) LLP**

By
Eric Lopez Schnabel (Del No. 3672)
1105 North Market Street , 16th Floor
Wilmington, DE  19801
Telephone: (302) 425-7162

**DORSEY & WHITNEY LLP**
Charles Sawyer (MN #140351)
Katherine A. Constantine (MN #123341)
Monica Clark (MN #28211X)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

Attorneys for U.S. Bank National Association, in its capacity as Trustee