IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           ) Chapter 11
                                                                 )
AMERICAN HOME MORTGAGE                                           ) Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, et. al.                  ) Jointly Administered
                                                                 )
                                                                 ) Objection Deadline : September 20, 2007 at 4:00 p.m.
                                                                 ) Sale Hearing: October 9, 2007 at 2:30 p.m.
                        Debtors.                                 ) Related Docket Nos. 11, 113, 403, 674 and 746
                                                                 )
---------------------------------------------------------------- x

**SUPPLEMENTAL OBJECTION OF EMC MORTGAGE CORPORATION TO NOTICE
OF (I) POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN
LEASES, LICENSE AGREEMENTS AND EXECUTORY CONTRACTS;
AND (II) PROPOSED CURE OBLIGATIONS, IF ANY**

EMC Mortgage Corporation ("EMC"), by its undersigned attorneys, hereby submits this supplemental objection (the "Supplemental Objection")[1] to the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements and Executory Contracts; and (II) Proposed Cure Obligations, If Any, as modified on September 10, 2007 [Docket No. 674] (the "Cure Notice"), filed in connection with the Emergency Motion of the Debtors for Orders (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related

---

[1] This Supplemental Objection fully incorporates the Objection of EMC Mortgage Corporation to the Emergency Motion of the Debtors for an Order: (I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief [Docket No. 728] and supplements it as set forth herein.

Relief, filed on August 6, 2007 [Docket No. 11] (the "Sale Motion"), and in support of the Supplemental Objection, respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtors continue to encroach upon the proper limits of the provisions of the Bankruptcy Code by first seeking to assume and assign agreements that are not executory and second, if such agreements were executory – which they are not – they fail to accurately calculate the proper amounts owed to EMC. Indeed, the MLPA (as defined below) is not an executory contract because it was properly terminated by its own terms and through the protections of section 555 of the Bankruptcy Code. Yet, the Debtors continue to trample the property interests of EMC and other similarly situated parties by seeking to assume and assign contracts to which they no longer have any interest in. To add insult to injury, the Debtors have brazenly asserted that the majority of these "Potentially Executory Contracts" have a cure amount of $0.00. Although EMC, supported by case law, vigorously asserts that the MLPA does not constitute an executory contract, to the extent this Court determines that the MLPA is an executory contract capable of being assumed and assigned by the Debtors, EMC objects to the Debtors assertion that the cure amount is $0.00. In fact, the Debtors owe EMC various obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, legal fees and expenses and other charges and/or defaults, which arise under and in connection with the MLPA and amounts to a cure amount exceeding $2,853,845.12 (not including applicable legal fees and expenses to be subsequently provided). Therefore, to the extent this Court determines that the MLPA is an executory contract, the Debtors pursuant to section 365(b)(1) of the Bankruptcy Code cannot assume such contract unless at the time of the assumption the Debtors cure all defaults under the MLPA, by paying EMC a cure amount

2

exceeding $2,853,845.12 (not including applicable legal fees and expenses to be subsequently provided).

## BACKGROUND

1. On May 1, 2002, EMC, as purchaser, entered into a Mortgage Loan Purchase and Interim Servicing Agreement (as amended, modified and supplemented from time to time, the "MLPA") with American Home Mortgage Corporation, as seller ("AHMC"). Pursuant to the MLPA, EMC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMC. On August 1, 2007, EMC, as purchaser, entered into a certain term sheet (the last transaction under the MLPA) with American Home Mortgage Acceptance, Inc. ("AHMA") and AHMC, whereby EMC purchased the Purchased Mortgage Loans on a servicing released basis from AHMC and AHMA, which means servicing rights are purchased as part of the mortgage loans by the purchaser. Pursuant to the MLPA, EMC owned the Purchased Mortgage Loans "together with the Servicing Rights". MLPA § 2. Pursuant to the MLPA, it was the intent of the parties that the transfers of the Purchased Mortgage Loans constituted purchases of the Purchased Mortgage Loans on a servicing released basis.

2. The MLPA expressly provides that unless and until there was an event of default, AHMC would cause the Purchased Mortgage Loans to be serviced[2] for the benefit of EMC until August 20, 2007, the "Servicing Transfer Date" (as defined in the MLPA).

3. On August 6, 2007 (the "Petition Date"), each of the Debtors (which included AHMC) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). As provided in Section 13.01 of the MLPA, the Debtors' chapter 11 filing constituted an Event of Default under the MLPA.

---

[2] Servicing involves, among other things, collecting principal and interest payments and other income and amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection process.

4. On August 14, 2007, in accordance with Section 13.01 of the MLPA, EMC delivered a notice of default (the "Default Notice") to AHMC resulting from, inter alia, the filing of AHMC's bankruptcy case. AHMC's bankruptcy case constituted an Event of Default (as such term is defined in the MLPA) pursuant to Sections 13.01(v) of the MLPA. The Default Notice notified AHMC of the event of default that occurred upon, inter alia, AHMC's bankruptcy filing.

5. Upon the issuance of the Default Notice, pursuant to Section 13.01 of the MLPA, "all authority and power of [AHMC] to interim service the [Purchased] Mortgage Loans under [the] Agreement shall on the date set forth in such notice pass to and be vested in [EMC]." As such, pursuant to the MLPA, the servicing rights and related servicing files and documents (the "Servicing Documents") and any amounts received by AHMC, including principal and interest payments, escrow amounts and other income and amounts of any kind with respect to the Purchased Mortgage Loans (collectively, the "Collections") related to the Purchased Mortgage Loans are property of EMC, and AHMC and AHMA have no interest in such servicing rights whatsoever.

6. Furthermore, on August 20, 2007, the Servicing Transfer Date, pursuant to section 14 of the MLPA, the MLPA terminated in accordance with its own terms and all rights, title and interest in the Purchased Mortgage Loans automatically vested in EMC.

7. On the exhibit to the Cure Notice, the Debtors listed the MLPA as a contract which they propose to assume and assign as part of the sale of their servicing business (the "Servicing Business"). The Debtors' proposed cure amount with respect to the MLPA is $0.00.

8.  The Debtors also stated in the Cure Notice that they are "only seeking to assume and assign, to the extent such potential executory contracts are executory, the loan servicing rights related to the potential executory contracts identified on the [exhibits to the Cure Notice]."

## BASIS FOR SUPPLEMENTAL OBJECTION

### The Terminated MLPA is not an Executory Contract that can be Assumed and Assigned under Section 365 of the Bankruptcy Code

9.  The MLPA is listed in the Cure Notice as a "Potential Executory Contract" (as that term is defined in the Cure Notice). As more fully explained in the Objection of EMC to the Sale Motion, filed on September 13, 2007 [Docket No. 728], the Debtors cannot assume and assign the MLPA and rights thereunder because:

> (i) the MLPA is not executory since it was terminated on its own terms upon certain Events of Default; and
>
> (ii) EMC exercised its protected right under 555 of the Bankruptcy Code when it terminated the MLPA and this Court cannot issue any order that frustrates the rights of a holder of a securities contract.

Furthermore, even assuming that the MLPA was still executory (which it is not), it clearly could not be assumed by the Debtors under the plain language of subsection (c)(2) of section 365 because it is beyond dispute that the MLPA is a "contract ... to ... extend other debt financing or financial accommodations, to or for the benefit of the debtor."

### The Proposed Cure Amount is Incorrect

10. Pursuant to section 365(b)(1) of the Bankruptcy Code, a debtor may not assume and assign an executory contract until the debtor: (a) cures or provides adequate assurance that it will promptly cure any defaults under the contract; (b) compensates or provides adequate assurance of prompt future compensation for actual pecuniary loss resulting from the default; and (c) provides adequate assurance of future performance under the contract.  11 U.S.C.

§ 365(b)(1)(A)-(C); see also Cinicola v. Scharffenberger, 248 F.3d 110, 119 (3d Cir. 2001) (citing L.R.S.C. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 298 (3d Cir. 2001)). The purpose of section 365(b)(1) of the Bankruptcy Code is to require the debtors to "give[ ] the other contracting party the full benefit of [its] bargain" before requiring it to perform under the contract. Kimmelman v. Port Auth. of NY and NJ (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318 (3d Cir. 2003) (quoting H.R. Rep. No. 950595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05).

11. Therefore, assuming that the Court determined that the MLPA is an executory contract, before the Debtors can assume and assign the MLPA the Debtors must cure all defaults under the MLPA. See 11 U.S.C. § 365(b)(1); see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The trustee, however, may not blow hot or cold. If he accepts the contract be accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other")). Indeed, the Debtors "must do so in its entirety." In re Rickel Home Centers, Inc., 209 F.3d at 298; see 11 U.S.C. § 365(b)(1)(A)-(C).

12. The Cure Notice lists the cure amount for the MLPA as $0.00. The proper cure amount is based upon obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, legal fees and expenses and other charges and/or defaults, owing by the Debtors which arise under and in connection with the MLPA. Upon a preliminary reconciliation by EMC, the debtors must cure such obligations, liabilities

and other indebtedness in the amount exceeding $2,853,845.12 (not including applicable legal fees and expenses to be subsequently provided). These cure amounts continue to accrue. Therefore, if this Court determines that the MLPA is an executory contract, the Debtors cannot assume and assign the MLPA unless they pay EMC $2,853,845.12 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided) in cure obligations emanating from the MLPA.

## RESERVATION OF RIGHTS

13. Since the cure amounts are based upon a preliminary reconciliation, EMC reserves the right to supplement and/or amend the cure amounts.

14. To the extent the Cure Notice fails to make clear the identity of all of the parties to the contracts to be assumed and assigned as part of the sale of the Debtors' Servicing Business or to the extent the Debtors further modify the lists of contracts to be assumed and assigned as part of the sale, EMC reserves the right to (a) file an additional objection to the proposed assumption and assignment of any such contract; and/or (b) file a claim for cure payments associated with such contract.

15. WHEREFORE, without in any way limiting their rights, EMC specifically requests that the Court (i) finds that (a) the MLPA is not an executory contract and therefore is excluded from the sale of the Servicing Business or (b) in the event the MLPA is found to be an executory contract, the Debtors must pay EMC a cure amount not less than $2,853,845.12 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided); and (ii) grants such other relief that is just and proper.

Dated: September 20, 2007

Respectfully submitted,
DUANE MORRIS LLP

_____
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4943
Facsimile: (302) 657-4901

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Alex R. Rovira
Lori A. Kujawski
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

8

NY1 6335746