IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           ) Chapter 11
                                                                 )
AMERICAN HOME MORTGAGE                                           ) Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, et. al.                  ) Jointly Administered
                                                                 )
                                                                 ) Objection Deadline : September 20, 2007 at 4:00 p.m.
                                                                 ) Sale Hearing: October 9, 2007 at 2:30 p.m.
                       Debtors.                                  ) Related Docket Nos. 11, 113, 403, 674 and 746
---------------------------------------------------------------- x

### SUPPLEMENTAL OBJECTION OF LIQUID FUNDING, LTD. TO NOTICE OF (I) POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES, LICENSE AGREEMENTS AND EXECUTORY CONTRACTS; AND (II) PROPOSED CURE OBLIGATIONS, IF ANY

Liquid Funding, Ltd. ("Liquid Funding"), by its undersigned attorneys, hereby submits this supplemental objection (the "Supplemental Objection")[1] to the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements and Executory Contracts; and (II) Proposed Cure Obligations, If Any, as modified on September 10, 2007 [Docket No. 674] (the "Cure Notice"), filed in connection with the Emergency Motion of the Debtors for Orders (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related

---

[1] This Supplemental Objection incorporates the Objection of Liquid Funding, Ltd. to the Emergency Motion of the Debtors for an Order: (I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief [Docket No. 729] and supplements it as set forth herein.

Relief, filed on August 6, 2007 [Docket No. 11] (the "Sale Motion"), and in support of the Supplemental Objection, respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtors continue to encroach upon the proper limits of the provisions of the Bankruptcy Code by first seeking to assume and assign agreements that are not executory and second, if such agreements were executory – which they are not – they fail to accurately calculate the proper amounts owed to Liquid Funding. Indeed, the Repurchase Agreement (as defined below) is not an executory contract because it was properly terminated by its own terms and through the protections of section 559 of the Bankruptcy Code. Yet, the Debtors continue to trample the property interests of Liquid Funding and other similarly situated parties by seeking to assume and assign contracts to which they no longer have any interest in. To add insult to injury, the Debtors have brazenly asserted that the majority of these "Potentially Executory Contracts" have a cure amount of $0.00. Although Liquid Funding, supported by case law, vigorously asserts that the Repurchase Agreement does not constitute an executory contract, to the extent this Court determines that the Repurchase Agreement is an executory contract capable of being assumed and assigned by the Debtors, Liquid Funding objects to the Debtors assertion that the cure amount is $0.00. In fact, the Debtors owe Liquid Funding various obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, legal fees and expenses and other charges and/or defaults, which arise under and in connection with the Repurchase Agreement and amounts to a cure amount exceeding $672,752.55 (not including applicable legal fees and expenses to be subsequently provided). Therefore, to the extent this Court determines that the Repurchase Agreement is an executory contract, the Debtors pursuant to section 365(b)(1) of the Bankruptcy Code cannot assume such contract unless at the time of

the assumption the Debtors cure all defaults under the Repurchase Agreement, by paying to Liquid Funding a cure amount exceeding $672,752.55 (not including applicable legal fees and expenses to be subsequently provided).

## BACKGROUND

1. On May 22, 2006, Liquid Funding, as buyer, entered into a Master Repurchase Agreement (as amended, modified and supplemented from time to time) and Annex I and Annex II to the Master Repurchase Agreement (the "Repurchase Agreement") with American Home Mortgage Corporation ("AHMC") and American Home Mortgage Acceptance, Inc. ("AHMA"), as sellers. Pursuant to the Repurchase Agreement, Liquid Funding purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMC and/or AHMA. Additionally, on May 22, 2006, Liquid Funding, AHMC and AHMA entered into a Custody Agreement, together with Deutsche Bank National Trust Company (the "Custodian"), in which the Custodian agreed to act as custodian for Liquid Funding, AHMC and AHMA of all notes, mortgages and other documents related to the Purchased Mortgage Loans.

2. On July 30, 2007, in accordance with Paragraphs 4(a) and 4(c) of the Repurchase Agreement, Liquid Funding delivered, before 9:00 a.m. New York City time, a margin deficit notice to AHMC and AHMA resulting from a Margin Deficit (as that term is defined in the Repurchase Agreement) in the amount of $13,626,390.00. Pursuant to Paragraph 4(c) of the Repurchase Agreement, AHMA and AHMC were required to transfer cash in the amount of the Margin Deficit to Liquid Funding by 5:00 p.m. New York City time on that same day, July 30, 2007.

3. AHMC's and AHMA's failure to meet the Margin Deficit by 5:00 p.m. New York City time on July 30, 2007, constituted an Event of Default pursuant to Paragraph 11(a)(ii) of the Repurchase Agreement.

4. On August 1, 2007, AHMC and AHMA entered into a certain term sheet pursuant to a Mortgage Loan Purchase and Interim Servicing Agreement (as amended, modified and supplemented from time to time, the "MLPA") with EMC, as purchaser. Pursuant to the MLPA, EMC purchased the remaining Purchased Mortgage Loans from AHMC and AHMA that were on Liquid Funding's mortgage line under the Repurchase Agreement on a servicing released basis from AHMC and AHMA, which means that all servicing rights under the Repurchase Agreement were purchased as part of the Purchased Mortgage Loans by EMC. AHMC and AHMA used the proceeds from the sale of the Mortgage Loans on a servicing released basis as payment to Liquid Funding of the Repurchase Price under the Repurchase Agreement.

5. As such, on August 1, 2007, upon the payment of the Repurchase Price by AHMC and AHMA, the Repurchase Agreement was thereby terminated and all obligations under the Repurchase Agreement of AHMC and AHMA, as well as of Liquid Funding, were terminated. Paragraph 13 (a) of the Repurchase Agreement expressly provides that the "obligation of [AHMC and AHMA] to service, or cause to be serviced, the related Purchased Mortgage Loans for the benefit of [Liquid Funding] as aforesaid shall cease upon the payment by [AHMC and AHMA] to [Liquid Funding] of the Repurchase Price therefor." Repurchase Agreement, Annex I, ¶13(a).

6. Furthermore, by email dated August 1, 2007, AHMC and AHMA directed the Custodian, that "[u]pon receipt of the funding proceeds from EMC Mortgage Corp. American Home authorizes Deutsche Bank to release the loans to EMC Mortgage." Accordingly, the Custodian delivered to EMC all of the notes, mortgages and other documents related to the Purchased Mortgage Loans to EMC. As such, AHMC and AHMA transferred the servicing rights and related servicing files and documents (the "Servicing Documents") and any amounts received by AHMC or the Custodian, including principal and interest payments, escrow amounts and other income and amounts of any kind with respect to the Purchased Mortgage Loans (collectively, the "Collections") related to the Purchased Mortgage Loans to EMC.

7. On August 6, 2007 (the "Petition Date"), each of the Debtors (which included AHMC and AHMA) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. As provided in Paragraph 11(iv) of the Repurchase Agreement, the Debtors' chapter 11 filing constituted an additional Event of Default under the Repurchase Agreement.

8. On the exhibit to the Cure Notice, the Debtors listed the Repurchase Agreement as a contract which they propose to assume and assign as part of the sale of their servicing business (the "Servicing Business"). The Debtors' proposed cure amount with respect to the Repurchase Agreement is $0.00.

9. The Debtors also stated in the Cure Notice that they are "only seeking to assume and assign, to the extent such potential executory contracts are executory, the loan servicing rights related to the potential executory contracts identified on the [exhibits to the Cure Notice]."

## BASIS FOR SUPPLEMENTAL OBJECTION

### The Terminated Repurchase Agreement is not an Executory Contract that can be Assumed and Assigned under Section 365 of the Bankruptcy Code

10. The Repurchase Agreement is listed in the Cure Notice as a "Potential Executory Contract" (as that term is defined in the Cure Notice). As more fully explained in the Objection of Liquid Funding to the Sale Motion, filed on September 13, 2007 [Docket No. 729], the Debtors cannot assume and assign the Repurchase Agreement and rights thereunder because:

> (i) the Repurchase Agreement is not executory since it was terminated on its own terms upon certain Events of Default;
>
> (ii) any rights the Debtors might have had under the Repurchase Agreement were terminated upon the payment of the Repurchase Price by AHMC and AHMA to Liquid Funding; and
>
> (iii) Liquid Funding exercised its protected rights under section 559 of the Bankruptcy Code when it terminated the Repurchase Agreement and this Court cannot issue any order that frustrates the rights of a repo participant in a repurchase agreement.

Furthermore, even assuming that the Repurchase Agreement was still executory (which it is not), it clearly could not be assumed by the Debtors under the plain language of subsection (c)(2) of section 365 because it is beyond dispute that the Repurchase Agreement is a "contract … to … extend other debt financing or financial accommodations, to or for the benefit of the debtor."

### The Proposed Cure Amount is Incorrect

11. Pursuant to section 365(b)(1) of the Bankruptcy Code, a debtor may not assume and assign an executory contract until the debtor: (a) cures or provides adequate assurance that it will promptly cure any defaults under the contract; (b) compensates or provides adequate assurance of prompt future compensation for actual pecuniary loss resulting from the default; and (c) provides adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1)(A)-(C); see also Cinicola v. Scharffenberger, 248 F.3d 110, 119 (3d Cir. 2001)

(citing L.R.S.C. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 298 (3d Cir. 2001)). The purpose of section 365(b)(1) of the Bankruptcy Code is to require the debtors to "give[ ] the other contracting party the full benefit of [its] bargain" before requiring it to perform under the contract. Kimmelman v. Port Auth. of NY and NJ (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318 (3d Cir. 2003) (quoting H.R. Rep. No. 950595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05).

12.     Therefore, assuming that the Court determines that the Repurchase Agreement is an executory contract, before the Debtors can assume and assign the Repurchase Agreement the Debtors must cure all defaults under the Repurchase Agreement. See 11 U.S.C. § 365(b)(1); see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The trustee, however, may not blow hot or cold. If he accepts the contract be accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other")). Indeed, the Debtors "must do so in its entirety." In re Rickel Home Centers, Inc., 209 F.3d at 298; see 11 U.S.C. § 365(b)(1)(A)-(C).

13.     The Cure Notice lists the cure amount for the Repurchase Agreement as $0.00. The proper cure amount is based upon obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, legal fees and expenses and other charges and/or defaults, owing by the Debtors which arise under and in connection with the Repurchase Agreement. Upon a preliminary reconciliation by Liquid Funding the Debtors must cure such obligations, liabilities and other indebtedness in the amount exceeding $672,752.55

(not including applicable legal fees and expenses to be subsequently provided). These cure amounts continue to accrue. Therefore, if this Court determines that the Repurchase Agreement is an executory contract, the Debtors cannot assume and assign the Repurchase Agreement unless they pay Liquid Funding $672,752.55 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided) in cure obligations emanating from the Repurchase Agreement.

## RESERVATION OF RIGHTS

14. Since the cure amounts are based upon a preliminary reconciliation, Liquid Funding reserves the right to supplement and/or amend the cure amounts.

15. To the extent that the Cure Notice fails to make clear the identity of all of the parties to the contracts to be assumed and assigned as part of the sale of the Debtors' Servicing Business or to the extent the Debtors further modify the lists of contracts to be assumed and assigned as part of the sale, Liquid Funding reserves the right to (a) file an additional objection to the proposed assumption and assignment of any such contract; and/or (b) file a claim for cure payments associated with any such contract.

WHEREFORE, without in any way limiting their rights, Liquid Funding specifically requests that the Court (i) finds that (a) the Repurchase Agreement is not an executory contract and therefore is excluded from the sale of the Servicing Business or (b) in the event the Repurchase Agreement is found to be an executory contract, the Debtors must pay Liquid Funding a cure amount not less than $672,752.55 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided); and (ii) grants such other relief that is just and proper.

Dated: September 20, 2007

Respectfully submitted,
DUANE MORRIS LLP

Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4900
Facsimile: (302) 657-4901

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Alex R. Rovira
Lori A. Kujawski
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599