IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x
In re:                                          ) Chapter 11
                                                )
AMERICAN HOME MORTGAGE                          ) Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, et. al. ) Jointly Administered
                                                )
                                                ) Objection Deadline : September 20, 2007 at 4:00 p.m.
                                                ) Sale Hearing: October 9, 2007 at 2:30 p.m.
                      Debtors.                  ) Related Docket Nos. 11, 113, 403, 674 and 746
                                                )
----------------------------------------------------------------- x

## SUPPLEMENTAL OBJECTION OF BEAR STEARNS MORTGAGE CAPITAL CORPORATION TO NOTICE OF (I) POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES, LICENSE AGREEMENTS AND EXECUTORY CONTRACTS; AND (II) PROPOSED CURE OBLIGATIONS, IF ANY

Bear Stearns Mortgage Capital Corporation ("BSMCC"), by its undersigned attorneys, hereby submits this supplemental objection (the "Supplemental Objection")[1] to the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements and Executory Contracts; and (II) Proposed Cure Obligations, If Any, as modified on September 10, 2007 [Docket No. 674] (the "Cure Notice"), filed in connection with the Emergency Motion of the Debtors for Orders (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV)

---

[1] This Supplemental Objection fully incorporates the Objection of Bear Stearns Mortgage Capital Corporation and EMC Mortgage Corporation to the Emergency Motion of the Debtors for an Order: (I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief [Docket No. 732] and supplements it as set forth herein.

Granting Related Relief, filed on August 6, 2007 [Docket No. 11] (the "Sale Motion"), and in support of the Supplemental Objection, respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtors continue to encroach upon the proper limits of the provisions of the Bankruptcy Code by first seeking to assume and assign agreements that are not executory and second, if such agreements were executory – which they are not – they fail to accurately calculate the proper amounts owed to BSMCC. Indeed, the Repurchase Agreement (as defined below) is not an executory contract because it was properly terminated by its own terms and through the protections of section 559 of the Bankruptcy Code. Yet, the Debtors continue to trample the property interests of BSMCC and other similarly situated parties by seeking to assume and assign contracts to which they no longer have any interest in. To add insult to injury, the Debtors have brazenly asserted that the majority of these "Potentially Executory Contracts" have a cure amount of $0.00. Although BSMCC, supported by case law, vigorously asserts that the Repurchase Agreement does not constitute an executory contract, to the extent this Court determines that the Repurchase Agreement is an executory contract capable of being assumed and assigned by the Debtors, BSMCC objects to the Debtors assertion that the cure amount is $0.00. In fact, the Debtors owe BSMCC various obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, taxes, legal fees and expenses and other charges and/or defaults, which arise under and in connection with the Repurchase Agreement and amounts to a cure amount exceeding $1,472,406.09 (not including applicable legal fees and expenses to be subsequently provided). Therefore, to the extent this Court determines that the Repurchase Agreement is an executory contract, the Debtors pursuant to section 365(b)(1) of the Bankruptcy Code cannot assume such contract unless at the time of the

assumption the Debtors cure all defaults under the Repurchase Agreement, by paying BSMCC a cure amount exceeding $1,472,406.09 (not including applicable legal fees and expenses to be subsequently provided).

## BACKGROUND[2]

1. On June 23, 2004, BSMCC, as buyer, entered into that certain Whole Loan Master Repurchase Agreement (as amended, modified and supplemented from time to time, the "Repurchase Agreement") with American Home Mortgage Acceptance, Inc., as seller ("AHMA"). Pursuant to the Repurchase Agreement, BSMCC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMA. Additionally, on June 23, 2004, BSMCC and AHMA entered into a Custody Agreement, together with Deutsche Bank National Trust Company (the "Custodian"), in which the Custodian agreed to act as custodian for BSMCC and AHMA of all notes, mortgages and other documents related to the Purchased Mortgage Loans. The Repurchase Agreement and Custody Agreement were subsequently amended on November 22, 2004 and August 29, 2005, to add American Home Mortgage Investment Corp. ("AHMI") and American Home Mortgage Corp. ("AHMC", and together with AHMA and AHMI, the "Debtor Sellers") as parties to the Repurchase Agreement and to provide that the Debtor Sellers are jointly and severally liable for the obligations under the agreements.

2. Pursuant to the Repurchase Agreement, BSMCC purchased the Purchased Mortgage Loans from the Debtor Sellers and the Debtor Sellers agreed to repurchase the Purchased Mortgage Loans in the future on demand at a price in excess of what BSMCC paid for the Purchased Mortgage Loans. As of July 30, 2007, BSMCC owned Purchased Mortgage Loans in an amount exceeding $117,000,000. Pursuant to the Repurchase Agreement, it was the

---

[2] The full factual history of the transaction and the relevant events related thereto and a summary of the operative provisions of the Repurchase Agreement and related agreements are contained in the Complaint (as defined herein).

3

intent of the parties that the transfers of the Purchased Mortgage Loans constituted purchases and sales of Purchased Mortgage Loans.

3. The Repurchase Agreement also provides that until and unless there was an Event of Default under the Repurchase Agreement, the Debtor Sellers would cause the Purchased Mortgage Loans to be serviced for the benefit of BSMCC.[3] Upon information and belief, AHMS performed and continues to perform servicing with respect to the Purchased Mortgage Loans.

4. On August 2, 2007, in accordance with Paragraph 11(b) of the Repurchase Agreement, BSMCC delivered a notice of default to AHMA resulting from AHMA's failure to meet a margin call under the Repurchase Agreement. AHMA's failure to timely meet the margin call constituted an Event of Default (as such term is defined in the Repurchase Agreement) pursuant to Paragraph 11(a)(ii) of the Repurchase Agreement.

5. Upon such notice, pursuant to Paragraph 11(c) of the Repurchase Agreement, the Debtor Sellers were required, among other obligations, to "immediately deliver or cause the Custodian to deliver to [BSMCC] any documents relating to the Purchased Mortgage Loans subject to such Transactions then in Seller's possession." Paragraph 11(c) also required the Debtor Sellers to remit all such funds thereafter received in connection with the Purchased Mortgage Loans to BSMCC.

6. On August 6, 2007 (the "Petition Date"), each of the Debtors (which included the Debtor Sellers) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). As provided in Paragraph 11(a)(iii), the Debtors' chapter 11 filing constituted an additional Event of Default under the Repurchase Agreement.

---

[3] Servicing involves, among other things, collecting principal and interest payments and other income and amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection process.

7.  On August 6, 2007, BSMCC exercised its remedies under the Repurchase Agreement and conducted an auction of the Purchased Mortgage Loans. The Purchased Mortgage Loans were sold on August 10, 2007 to EMC, a Bear Stearns affiliate, on a servicing released basis, which means that BSMCC sold all rights relating to the Purchased Mortgage Loans, including the servicing rights.[4]

8.  On August 13, 2007, BSMCC sent AHMA a letter (i) notifying the Debtor Sellers of the sale of the Purchased Mortgage Loans and (ii) requesting that the Debtor Sellers transfer, pursuant to the Repurchase Agreement, the servicing rights and related servicing files and documents (the "Servicing Documents") and any amounts received by the Debtor Sellers, including principal and interest payments, escrow amounts and other income and amounts of any kind with respect to Purchased Mortgage Loans (collectively, the "Collections") related to the Purchased Mortgage Loans to EMC. AHMA ignored the request and has not transferred the Servicing Documents nor the Collections.

9.  On August 24, 2007, BSMCC and EMC filed a Complaint For Declaratory and Injunctive Relief (the "Complaint"). In the Complaint, BSMCC and EMC are seeking, among other things, "a declaration from Court that all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans are property of EMC, and that EMC is entitled to immediate access to and possession of all servicing files, documents and payments and escrow accounts relating to the Purchased Mortgage Loans." Complaint, ¶ 65.

---

[4] Under Paragraph 12(c)(ii) of the Repurchase Agreement, BSMCC may, "in its sole discretion if an Event of Default shall have occurred and be continuing ... sell the Mortgage Loans on a servicing released basis by terminating the respective servicer of the Purchased Mortgage Loans in accordance with the related servicing agreement with or without cause."

10. On the exhibit to the Cure Notice, the Debtors listed the Repurchase Agreement as a contract which they propose to assume and assign as part of the sale of their servicing business (the "Servicing Business"). The Debtors' proposed cure amount with respect to the Repurchase Agreement is $0.00.

11. The Debtors also stated in the Cure Notice that they are "only seeking to assume and assign, to the extent such potential executory contracts are executory, the loan servicing rights related to the potential executory contracts identified on the [exhibits to the Cure Notice]."

## BASIS FOR SUPPLEMENTAL OBJECTION

### The Terminated Repurchase Agreement is not an Executory Contract that can be Assumed and Assigned under Section 365 of the Bankruptcy Code

12. The Repurchase Agreement is listed in the Cure Notice as a "Potential Executory Contract" (as that term is defined in the Cure Notice). As more fully explained in the Objection of Bear Stearns Mortgage Capital Corporation and EMC to the Sale Motion, filed on September 13, 2007 [Docket No. 732] and the Complaint, the Debtors cannot assume and assign the Repurchase Agreement and rights thereunder because:

> (i) the agreement is not executory since it was terminated on its own terms upon certain Events of Default;
>
> (ii) any rights the Debtors might have had under the Repurchase Agreement were terminated upon the sale of the Purchased Mortgage Loans to EMC on a servicing released basis; and
>
> (iii) BSMCC exercised its protected rights under section 559 of the Bankruptcy Code when it terminated the Repurchase Agreement and this Court cannot issue any order that frustrates the rights of a repo participant in a repurchase agreement.

Furthermore, even assuming that the Repurchase Agreement was still executory (which it is not), it clearly could not be assumed by the Debtors under the plain language of subsection (c)(2) of

6

section 365 because it is beyond dispute that the Repurchase Agreement is a "contract ... to ... extend other debt financing or financial accommodations, to or for the benefit of the debtor."

### The Proposed Cure Amount is Incorrect

14. Pursuant to section 365(b)(1) of the Bankruptcy Code, a debtor may not assume and assign an executory contract until the debtor: (a) cures or provides adequate assurance that it will promptly cure any defaults under the contract; (b) compensates or provides adequate assurance of prompt future compensation for actual pecuniary loss resulting from the default; and (c) provides adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1)(A)-(C); see also Cinicola v. Scharffenberger, 248 F.3d 110, 119 (3d Cir. 2001) (citing L.R.S.C. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 298 (3d Cir. 2001)). The purpose of section 365(b)(1) of the Bankruptcy Code is to require the debtors to "give[ ] the other contracting party the full benefit of [its] bargain" before requiring it to perform under the contract. Kimmelman v. Port Auth. of NY and NJ (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318 (3d Cir. 2003) (quoting H.R. Rep. No. 950595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05).

14. Therefore, assuming that the Court determines that the Repurchase Agreement is an executory contract, before the Debtors can assume and assign the Repurchase Agreement the Debtors must cure all defaults under the Repurchase Agreement. See 11 U.S.C. § 365(b)(1); see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The trustee, however, may not blow hot or cold. If he

7

accepts the contract be accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other")). Indeed, the Debtors "must do so in its entirety." In re Rickel Home Centers, Inc., 209 F.3d at 298; see 11 U.S.C. § 365(b)(1)(A)-(C).

15. The Cure Notice lists the cure amount for the Repurchase Agreement as $0.00. The proper cure amount is based upon obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, taxes, legal fees and expenses and other charges and/or defaults, owing by the Debtors which arise under and in connection with the Repurchase Agreement. The Debtors must cure such obligations, liabilities and other indebtedness in the amount exceeding $1,472,406.09 (not including applicable legal fees and expenses to be subsequently provided). These cure amounts continue to accrue. Therefore, if this Court determines that the Repurchase Agreement is an executory contract, the Debtors cannot assume and assign the Repurchase Agreement unless they pay BSMCC $1,472,406.09 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided) in cure obligations emanating from the Repurchase Agreement.

## RESERVATION OF RIGHTS

16. Since the cure amounts are based upon a preliminary reconciliation, BSMCC reserves the right to supplement and/or amend the cure amounts.

17. To the extent the Cure Notice fails to make clear the identity of all of the parties to the contracts to be assumed and assigned as part of the sale of the Debtors' Servicing Business or to the extent the Debtors further modify the lists of contract to be assumed and assigned as part of the sale, BSMCC reserves the right to (a) file an additional objection to the proposed assumption and assignment of any such contract; and/or (b) file a claim for cure payments associated with any such contract.

WHEREFORE, without in any way limiting their rights, BSMCC specifically requests that the Court (i) finds that (a) the Repurchase Agreement is not an executory contract and therefore is excluded from the sale of the Servicing Business or (b) in the event the Repurchase Agreement is found to be an executory contract, the Debtors must pay BSMCC a cure amount not less than $1,472,406.09 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided); and (ii) grants such other relief that is just and proper.

Dated: September 20, 2007

Respectfully submitted,
DUANE MORRIS LLP

_____
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4943
Facsimile: (302) 657-4901

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Alex R. Rovira
Lori A. Kujawski
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

NY1 6335558