IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                          ) Chapter 11
                                                                )
AMERICAN HOME MORTGAGE                                          ) Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, <u>et. al.</u>          ) Jointly Administered
                                                                )
                                                                ) Objection Deadline : September 20, 2007 at 4:00 p.m.
                                                                ) Sale Hearing: October 9, 2007 at 2:30 p.m.
                               Debtors.                         ) Related Docket Nos. 11, 113, 403, 674 and 746
---------------------------------------------------------------- x

**OBJECTION OF EMC MORTGAGE CORPORATION TO THE EMERGENCY MOTION OF THE DEBTORS FOR AN ORDER: (I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF AND TO THE NOTICE OF (I) POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES, LICENSE AGREEMENTS AND EXECUTORY CONTRACTS; AND (II) PROPOSED CURE OBLIGATIONS, IF ANY**

EMC Mortgage Corporation ("EMC"), by its undersigned attorneys, hereby submits this objection (the "Objection") to the (i) Motion of the above captioned debtors (the "Debtors") pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") for entry of an order authorizing, among other things, the sale of the Debtors' mortgage loan serving business (the "Servicing Business") free and clear of liens, claims, encumbrances, and other interests filed on August 6, 2007 [Docket No. 11] (the "Motion"), and (ii) notice of proposed cure amounts filed on September 10, 2007 [Docket No. 674] (the "Cure Notice"), and in support of the Objection, respectfully represents as follows:

## PRELIMINARY STATEMENT

By their Motion, the Debtors seek to assume and assign a certain purchase, warranties and servicing agreement that has been terminated and to sell certain servicing rights that do not belong to them. Pursuant to that certain purchase, warranties and servicing agreement, on or about June 29, 2007, EMC purchased certain mortgage loans on a servicing retained basis from the Debtors, meaning that the Debtors retained the right to service the mortgage loans. However, as a result of EMC's lawful closeout under the terms of the underlying purchase, warranties and servicing agreement and pursuant to section 555 of the Bankruptcy Code, the purchase, warranties and servicing agreement is incapable of assumption because it was terminated and therefore any servicing rights belong to EMC. Indeed, a sale of such assets is simply not permitted under the Bankruptcy Code and non-bankruptcy law. The Debtors' request for approval of the Motion and the assumption and assignment of the purchase, warranties and servicing agreement puts this Court at odds with the clear and unambiguous language of section 555 that restricts this Court from entering any order that will interfere with the rights of a holder of a securities contract.

Additionally, The Debtors continue to encroach upon the proper limits of the provisions of the Bankruptcy Code by first seeking to assume and assign agreements that are not executory and second, if such agreements were executory – which they are not – they fail to accurately calculate the proper amounts owed to EMC. Indeed, the PWSA (as defined below) is not an executory contract because it was properly terminated by its own terms and through the protections of section 555 of the Bankruptcy Code. Yet, the Debtors continue to trample the property interests of EMC and other similarly situated parties by seeking to assume and assign contracts to which they no longer have any interest in. To add insult to injury, the Debtors have

2

brazenly asserted that the majority of these "Potentially Executory Contracts" have a cure amount of $0.00. Although EMC, supported by case law, vigorously asserts that the PWSA does not constitute an executory contract, to the extent this Court determines that the PWSA is an executory contract capable of being assumed and assigned by the Debtors, EMC objects to the Debtors assertion that the cure amount is $0.00. In fact, the Debtors owe EMC various obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, legal fees and expenses and other charges and/or defaults, which arise under and in connection with the PWSA and amounts to a cure amount exceeding $24,508,295.44 (not including applicable legal fees and expenses to be subsequently provided). Therefore, to the extent this Court determines that the PWSA is an executory contract, the Debtors pursuant to section 365(b)(1) of the Bankruptcy Code cannot assume such contract unless at the time of the assumption the Debtors cure all defaults under the PWSA, by paying EMC a cure amount exceeding $24,508,295.44 (not including applicable legal fees and expenses to be subsequently provided).

## BACKGROUND

1. On March 1, 2006, EMC, as purchaser, entered into a Purchase, Warranties and Servicing Agreement (as amended, modified and supplemented from time to time, the "PWSA") with American Home Mortgage Corporation, as seller ("AHMC") and American Home Mortgage Servicing, Inc. ("AHMS"), as servicer. Pursuant to the PWSA, EMC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMC. On June 29, 2007, EMC, as purchaser, entered into a certain term sheet (the last transaction under the PWSA) with AHMC and AHMS, whereby EMC purchased the Purchased Mortgage Loans on a servicing retained basis from AHMC, which means servicing rights are not

3

purchased as part of the mortgage loans by the purchaser and were retained by AHMS. Pursuant to the PWSA, it was the intent of the parties that the transfers of the Purchased Mortgage Loans constituted purchases of the Purchased Mortgage Loans on a servicing retained basis.

2. The PWSA expressly provides that unless and until there was an event of default, AHMC would cause the Purchased Mortgage Loans to be serviced[1] by AHMS for the benefit of EMC.

3. On August 6, 2007 (the "Petition Date"), each of the Debtors (which included AHMC and AHMS) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. As provided in Section 9.01(v) of the PWSA, the Debtors' chapter 11 filing constituted an Event of Default under the PWSA.

4. On August 14, 2007, in accordance with Section 9.01 of the PWSA, EMC delivered a notice of default (the "Default Notice") to AHMC resulting from, inter alia, the filing of AHMC's bankruptcy case. AHMC's bankruptcy case constituted an Event of Default (as such term is defined in the PWSA) pursuant to Section 9.01(v) of the PWSA. The Default Notice notified AHMC of the event of default that occurred upon, inter alia, AHMC's bankruptcy filing.

5. Upon the issuance of the Default Notice, pursuant to Section 9.01 of the PWSA, "all authority and power of [AHMC or AHMS], as applicable, under this Agreement, whether with respect to the [Purchased] Mortgage Loans or otherwise, shall pass to and be vested in [EMC]." As such, pursuant to the PWSA, the servicing rights and related servicing files and documents (the "Servicing Documents") and any amounts received by AHMC, including principal and interest payments, escrow amounts and other income and amounts of any kind with respect to the Purchased Mortgage Loans (collectively, the "Collections") related to the

---

[1] Servicing involves, among other things, collecting principal and interest payments and other income and amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection process.

4

Purchased Mortgage Loans are property of EMC, and AHMC and AHMS have no interest in such servicing rights whatsoever.

## BASIS FOR OBJECTION

6. The Debtors have no legal ability to either (a) assume and assign the terminated PWSA or (b) sell or transfer EMC's property, including its servicing rights under the PWSA, the Purchased Mortgage Loans, the Servicing Documents or the Collections. Accordingly, EMC objects to the entry of an order on the Motion (the "Sale Order") to the extent that the Debtors seek (x) to sell free and clear of EMC's interests (i) the Purchased Mortgage Loans and the proceeds related thereto, (ii) the servicing rights, including the Servicing Documents, related to the Purchased Mortgage Loans, and (iii) the Collections related to PWSA or (y) to otherwise affect the protected rights of EMC under the PWSA and section 555 of the Bankruptcy Code.

### The Terminated PWSA is not an Executory Contract that can be Assumed and Assigned under Section 365 of the Bankruptcy Code

7. The PWSA is listed in the Cure Notice as a "Potential Executory Contract" (as that term is defined in the Cure Notice). The Debtors cannot assume and assign the PWSA and rights thereunder because the agreement was terminated, is no longer executory and, therefore, incapable of being assumed and assigned under section 365 of the Bankruptcy Code. The Third Circuit has found that "[f]or section 365 to apply, the contract or lease must be in existence, if the contract or lease has expired by its own terms . . ., then there is nothing left for the trustee to assume or assign." Kopelman v. Halvajian (In re Triangle Laboratories), 663 F.2d 463, 467 (3d Cir. 1981) (citations omitted). Thus, upon the termination of the PWSA, such agreement no longer constituted property of the Debtors' estates and, therefore, the PWSA cannot be assumed and assigned pursuant to section 365 of the Bankruptcy Code. See Coast

5

Cities Truck Sales, Inc. v. Navistar Int'l Trans. Co. (In re Coast Cities Truck Sales, Inc.), 147 B.R. 674, 677 (D. N.J. 1992) (finding that a terminated dealership agreement could not be assumed by the debtor). Moreover, because the servicing has been terminated, the assets "for sale" are not property of the estate. It is axiomatic that the Debtors cannot sell any property that it does not own or have an interest in.

### The Servicing Rights Were Transferred to EMC Upon Termination of the PWSA

8.  Pursuant to the asset purchase agreement (the "Asset Purchase Agreement") which is exhibited to the Motion, the Debtors purport to be selling, inter alia, "all of the [Debtors'] Servicing Rights[2] and rights to receive Servicing Fees." Asset Purchase Agreement § 2.1(a). EMC exercised its protected rights under the PWSA and section 555 of the Bankruptcy Code and terminated the PWSA on August 14, 2007, in accordance with the Default Notice. Pursuant to the Default Notice, EMC notified the Debtors "that EMC hereby terminated its obligations to purchase mortgage loans in any future transactions . . . ." Such obligations were automatically terminated because AHMC, among other things, "has caused more than one Event of Default under the [PWSA]," by filing its bankruptcy case. See PWSA § 9.01 ("[I]n the case of an Event of Default under clauses (iii), (iv) or (v) above, in which case, automatically and without notice . . . all authority and power of the [AHMC or AHMS], as applicable, under this Agreement, whether with respect to the [Purchased] Mortgage Loans or otherwise, shall pass to and be vested in [EMC]"). As such, as provided in the Default Notice, "[AHMC] is responsible for any damages suffered by EMC as a result of [AHMC's] failure of performance." Upon the termination of the PWSA, any right AHMC might have had to service the Purchased Mortgage

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Asset Purchase Agreement.

6

Loans was terminated and, therefore, the Purchased Mortgage Loans, the servicing rights and the Collections are not property of the estate under section 541 of the Bankruptcy Code.

9. Indeed, the Debtors have no legal or equitable interest in the PWSA, the Purchased Mortgage Loans, the servicing rights to the Purchased Mortgage Loans, the Servicing Documents or the Collections and, therefore, cannot seek to transfer them. See In re Wey, 854 F.2d 196, 199 (7th Cir. 1988) ("Possession of expired rights is the equivalent of the possession of no rights"). Any rights of the Debtors to service the Purchased Mortgage Loans were extinguished and the servicing rights, Servicing Documents and the Collections became the property of EMC.

10. By listing the PWSA as a Potential Executory Contract to be assumed and assigned pursuant to the Motion the Debtors are not only violating the property interests and rights of EMC, but are also misleading any potential bidder of the Debtors' Servicing Business. As such, this Court cannot approve the Sale Order.

### Section 555 of the Bankruptcy Code Prevents the Issuance of Orders that Frustrate EMC's Rights Under the PWSA

11. In accordance with section 555 of the Bankruptcy Code, upon an Event of Default, EMC had the right to terminate the PWSA and terminate all the rights and obligations of AHMC as servicer under the PWSA. Moreover, upon such termination, pursuant to Section 9.01 of the PWSA, AHMC is obligated to transfer the servicing rights including the Servicing Documents and Collections to EMC.

12. Section 555 of the Bankruptcy Code provides that:

> [t]he exercise of a contractual right of a stockbroker, financial institution, financial participant or securities clearing agency to cause the liquidation, termination, or acceleration of a securities contract, as defined in section 741 of this title, because of a condition of the kind specific in section 365(e)(1) of this title shall

7

> not be stayed, avoided or otherwise limited by operation of any provision of this title . . . .

11 U.S.C. § 555. The PWSA constitutes a securities contract, and is therefore protected under section 555 of the Bankruptcy Code, because it is "a contract for the purchase . . . of . . . a mortgage loan." 11 U.S.C. § 741(7)(a)(i). Indeed, the Default Notice states that "[r]eference is . . . made to section[] 555 . . . of the Bankruptcy Code." Thus, pursuant to section 555 of the Bankruptcy Code, EMC's exercise of its right to terminate the PWSA cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code or order of this Court. Since the PWSA was terminated and the Purchased Mortgage Loans, Servicing Documents and Collections were transferred to EMC, the Debtors cannot assume and assign the PWSA or sell the servicing rights thereunder. Compare In re R.M. Cordova Int'l, Inc., 77 B.R. 441, 446 (Bankr. D. N.J. 1987) (finding that the exercise of an ipso facto clause was protected under section 556 of the Bankruptcy Code (relating to forward contracts) and that such termination caused the forward contracts to not be executory and, therefore, not subject to assumption pursuant to section 365).

13.     Pursuant to section 555 of the Bankruptcy Code, EMC's right to terminate the PWSA and any servicing rights of AHMC and AHMS, thereby requiring the transfer of all servicing rights, including the Servicing Documents and Collections to EMC, cannot be stayed or otherwise limited by this Court and the Debtors should not be allowed to trample the property rights of EMC, nor mislead potential bidders of the Debtors' Servicing Business.

### The Proposed Cure Amount is Incorrect

14.     Pursuant to section 365(b)(1) of the Bankruptcy Code, a debtor may not assume and assign an executory contract until the debtor: (a) cures or provides adequate assurance that it will promptly cure any defaults under the contract; (b) compensates or provides

8

adequate assurance of prompt future compensation for actual pecuniary loss resulting from the default; and (c) provides adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1)(A)-(C); see also Cinicola v. Scharffenberger, 248 F.3d 110, 119 (3d Cir. 2001) (citing L.R.S.C. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 298 (3d Cir. 2001)). The purpose of section 365(b)(1) of the Bankruptcy Code is to require the debtors to "give[ ] the other contracting party the full benefit of [its] bargain" before requiring it to perform under the contract. Kimmelman v. Port Auth. of NY and NJ (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318 (3d Cir. 2003) (quoting H.R. Rep. No. 950595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05).

15.   Therefore, assuming that the Court determines that the PWSA is an executory contract, before the Debtors can assume and assign the PWSA the Debtors must cure all defaults under the PWSA. See 11 U.S.C. § 365(b)(1); see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The trustee, however, may not blow hot or cold. If he accepts the contract be accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other")). Indeed, the Debtors "must do so in its entirety." See 11 U.S.C. § 365(b)(1)(A)-(C); In re Rickel Home Centers, Inc., 209 F.3d at 298.

16.   The Cure Notice lists the cure amount for the PWSA as $0.00. The proper cure amount is based upon obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, legal fees and expenses and other charges

9

and/or defaults, owing by the Debtors which arise under and in connection with the PWSA. The Debtors must cure such obligations, liabilities and other indebtedness in the amount exceeding $24,508,295.44 (not including applicable legal fees and expenses to be subsequently provided). These cure amounts continue to accrue. Therefore, if this Court determines that the PWSA is an executory contract, the Debtors cannot assume and assign the PWSA unless they pay EMC $24,508,295.44 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided) in cure obligations emanating from the PWSA.

## RESERVATION OF RIGHTS

17. Since the cure amounts are based upon a preliminary reconciliation, EMC reserves the right to supplement and/or amend the cure amounts.

18. To the extent the Cure Notice fails to make clear the identity of all of the parties to the contracts to be assumed and assigned as part of the sale of the Debtors' Servicing Business or to the extent the Debtors further modify the lists of contract to be assumed and assigned as part of the sale, EMC reserves the right to (a) file an additional objection to the proposed assumption and assignment of any such contract; and/or (b) file a claim for cure payments associated with any such contract.

WHEREFORE, without in any way limiting its rights, EMC specifically requests that the Court (i) finds that (a) EMC's property, including, but not limited to, the Purchased Mortgage Loans and any proceeds related thereto, the servicing rights, including the Servicing Documents, and the Collections will not be sold, transferred or otherwise encumbered, because such property is not property of the Debtors' estates; (b) the Debtors are not permitted to assume and assign the PWSA pursuant to section 365 of the Bankruptcy Code because such contract was terminated and does not constitute an executory contract; (c) nothing in the Sale Order will affect the rights of EMC under the PWSA and section 555 of the Bankruptcy Code or (d) in the event

the PWSA is found to be an executory contract, the Debtors must pay EMC a cure amount not less than $24,508,295.44 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided); and (ii) grants such other relief that is just and proper.

Dated: September 20, 2007

> Respectfully submitted,
>
> DUANE MORRIS LLP
>
> _____
> Frederick B. Rosner
> 1100 North Market Street, Suite 1200
> Wilmington, DE 19801-1246
> Telephone: (302) 657-4943
> Facsimile: (302) 657-4901
>
> and
>
> SIDLEY AUSTIN LLP
> William M. Goldman
> Geoffrey T. Raicht
> Alex R. Rovira
> Lori A. Kujawski
> 787 Seventh Avenue
> New York, NY 10019
> Telephone: (212) 839-5300
> Facsimile: (212) 839-5599