IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br>et al.<br><br>        Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>Objection deadline: September 20, 2007 at 4:00 p.m.<br><br>Re: Docket Nos. 11, 113, 403, 647 |

**OBJECTION OF NATIXIS REAL ESTATE CAPITAL INC. F/K/A IXIS REAL ESTATE CAPITAL INC. TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS:  (A)(I) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF *AND* TO CERTAIN RELATED NOTICES OF ASSUMPTION**

Natixis Real Estate Capital Inc. f/k/a Ixis Real Estate Capital Inc. ("Natixis"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the Emergency Motion of the Debtors for Orders:  (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and other Interests; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief [Docket No. 11]

670889-1

(the "Sale Motion") and to the Notice of Service of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any [Docket No. 403] (the "Assumption Notice"), and in support of its Objection, respectfully states as follows:

### Preliminary Statement

1. The Debtors have express their intent to possibly assume and assign the Repurchase Agreement (defined below) with Natixis – with a proposed cure amount of $0.00 - to an unidentified third party in connection with the sale of the Debtors' mortgage loan servicing business. Natixis objects to the Debtors' proposed assumption and assignment of the Repurchase Agreement.

2. Natixis' right under section 559 of the Bankruptcy Code[1] to terminate the Repurchase Agreement cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code. The Debtors should not be granted authorization to assume and assign the servicing portion of the Repurchase Agreement to an unknown buyer without the consent of Natixis, the repo participant. To do so would contravene the express provisions of section 559 (and the legislative intentions associated therewith) and could have a chilling effect on the financial markets. Even if the Court determines that the Debtors can proceed with the assumption and assignment despite the protections of section 559, the Debtors must assume and assign the Repurchase Agreement in its entirety and cure all existing and continuing defaults including, but not limited to, all financial and non-financial defaults - which the Debtors are incapable of curing. Moreover, the Debtors have not provided adequate assurance of future performance by the proposed unknown assignee of the Repurchase Agreement. Under these

---

[1] The Bankruptcy Code shall mean title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

circumstances, the Debtors' request to assume and assign the Repurchase Agreement be denied.

## Background

3.  On August 6, 2007 the (the "Petition Date"), American Home Mortgage Investment Corp. ("AHMIC") and certain of its affiliates (collectively, the "Debtors" and, individually, a "Debtor") commenced these cases (the "Cases") by filing petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.  The Debtors remain in possession of their property and are managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On August 6, 2007, the United State Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee"). No Chapter 11 trustee or examiner has been appointed in these cases.

6.  On August 14, 2007, the Debtors filed the Sale Motion.

7.  On August 9, 2007, this Court entered its Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief [Docket No. 113] ("Sales Procedure Order") establishing procedures for the sale of the Debtors' mortgage-servicing business (the "Proposed Sale") and providing, among other things, that an auction (the "Auction") to sell that business would take place on September 10, 2007. As of the date of this Objection, the deadline for submitting bids to the Auction is October 2, 2007, the current date for the Auction is October 5, 2007, and the scheduled hearing date to approve the purchaser(s) at the Auction is October 9, 2007.

670889-1

8. On August 27, 2007, the Debtors filed the Assumption Notice in which they identified several alleged executory contracts that they intended to assume and assign to the party(ies) approved as the final purchaser(s) at the Auction. The Assumption Notice originally set September 13, 2007 as the deadline for filing any and all objections to the proposed assumption of executory contracts set forth in the Assumption Notice. On September 10, 2007, the Debtors filed their Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligation, If Any [Docket No. 674] ("Modified Assumption Notice") in which the Debtors extended the deadline for objecting to any assumption and assignment to September 20, 2007 at 4:00 p.m. The Modified Assumption Notice replaced the Assumption Notice in its entirety. In the Modified Assumption Notice, the Debtors expressed their intent to possibly assume the servicing portion of the Third Amended and Restated Master Repurchase Agreement, dated as of July 15, 2005, by and among IXIS Real Estate Capital Inc. and American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc., American Home Mortgage Holdings, Inc., and American Home Mortgage Servicing, Inc., as amended (the "Repurchase Agreement").[2] This Objection constitutes an objection to the Modified Assumption Notice.

### Basis for Objection

9. The Debtors have no legal ability to assume and assign the Repurchase Agreement or sell or transfer Natixis' property, including its servicing rights under the Repurchase Agreement. Accordingly, Natixis objects to the entry of an order to the extent the Debtors seek to assume and assign the servicing rights.

---

[2] A copy of the Repurchase Agreement and its amendments are attached hereto as Exhibit A.

A.  **Section 559 of the Bankruptcy Code Prevents the Issuance of Orders that Frustrate the Rights of a Repo Participant in a Repurchase Agreement**

10. Section 559 of the Bankruptcy Code provides that:

> [t]he exercise of a contractual right of a repo participant or financial participant to cause the liquidation, termination, or acceleration of a repurchase agreement because of a condition of the kind specific in section 365(e)(1) of this title shall not be stayed, avoided or otherwise limited by operation of any provision of this title ...

11 U.S.C. § 559. Pursuant to section 559 of the Bankruptcy Code, Natixis' right to terminate the Repurchase Agreement cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code or order of this Court. *See In re R.M. Cordova Int'l, Inc.*, 77 B.R. 441, 446 (Bankr. D. N.J. 1987) (finding that the exercise of an *ipso facto* clause was protected under section 556 of the Bankruptcy Code (relating to forward contracts) and that such termination caused the forward contracts to not be executory and, therefore, not subject to assumption pursuant to section 365).

11. Indeed, Congress intended that the addition of "repo participant" and "repurchase agreement" and the making of conforming changes in the relevant provisions of the Bankruptcy Code "afford participants in the repo market the same treatment with respect to the stay and avoidance provisions of the Code that Public Law 97-22 explicitly provided stockbrokers, securities clearing agencies, commodity brokers and forward contract merchants in connection with securities contracts, commodity contracts and forward contracts." 128 Cong. Rec. H261 (daily ed. February 9, 1982) (statement of Rep. Edwards).

12. The legislative history also illustrates that Congress realized that:

> [t]he effective functioning of the repo market can only be assured if repo investors will be protected against open-

> ended market loss arising from the insolvency of a dealer or other counterparty in the repo market. The repo market is complex as it is crucial. It is built upon transactions that are highly interrelated. A collapse of one institution involved in repo transactions could start a chain reaction, putting at risk hundreds of billions of dollars and threatening the solvency of many additional institutions.

Senate Report 98-65 (1983). As such, Congress intended:

> to reduce "systematic risk" in the banking system and financial marketplace. To minimize risk of disruption when parties to these transactions become bankrupt or insolvent, the bill amends provisions of the banking and investment laws, as well as the Bankruptcy Code, to allow the expeditious termination or netting of certain types of financial transactions.

H.R.Rep.No. 109-31, 109th Cong., 1st Sess. 20, 44, 127-134 (2005). Indeed, such protections were designed to prevent a ripple effect which could cripple the markets and Congress' message is being witnessed first hand in today's market conditions. The Debtors should not be permitted to circumvent section 559 of the Bankruptcy Code through the piecemeal assumption and assignment of the servicing portion of the Repurchase Agreement. Indeed, if the Debtors are authorized to proceed with the assumption and assignment of the Repurchase Agreement, it must be assumed in its entirety and subject to the protections afforded to Natixis under section 559. As such, the Debtors are incapable of assuming and assigning the Repurchase Agreement and curing the existing and continuing defaults thereunder.

**B.  Debtors are Incapable of Curing All Defaults Under the <u>Repurchase Agreement</u>**

13. Material defaults exist under the Repurchase Agreement that have caused, and continue to cause, substantial economic risk and loss to Natixis. On August 3, 2007, Natixis served a notice of default (the "Notice of Default") on the Debtors. A copy of the

Notice of Default is attached hereto as Exhibit B. As set forth in the Notice of Default, certain defaults occurred including: (i) with respect to breaches of representations and warranties under section 10(b) of the Repurchase Agreement, based upon the Debtors failure to maintain solvency and section 10(g) of the Repurchase Agreement, based upon the occurrence of a material adverse change in the financial condition of the Debtors; (ii) an Act of Insolvency under section 12(f) of the Repurchase Agreement; (iii) failure to pay a matured obligation under section 12(i) of the Repurchase Agreement, based upon the Debtors' failure to fund mortgage loans; (iv) material impairment of the Debtors' ability to perform or fund its obligations under the Repurchase Documents under section 12(j) and section 12(n) of the Repurchase Agreement; (v) failure to maintain net worth of AHMIC required under section 11(m) of the Repurchase Agreement; and (vi) failure to maintain the profitability required under section 11(l) of the Repurchase Agreement. In addition, the Debtors have existing and continuing defaults as to the servicing portion of the Repurchase Agreement. For instance, the Debtors have failed to direct funds to Natixis' account and have failed to provide requested information on the underlying loans. These existing defaults and the resulting harm can not be cured. Because of the harm suffered by Natixis is not remediable, the Repurchase Agreement cannot be assumed and assigned as the Debtors apparently intend.

    14.    As the Third Circuit has recognized in the context of leases, the bankruptcy court has some latitude to waive strict enforcement of provisions in the assumption process. *See In re Joshua Slocum*, 922 F.2d 1081, 1090-91 & n.8 (3rd Cir. 1990); *see also Vanderparkk Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1473 (9th Cir. 1988) (bankruptcy court did not err in finding alleged non-

monetary defaults, including the failure to maintain insurance and make repairs, were "not of sufficient substance to preclude assumption of the lease"). According to the Third Circuit, the relevant factors in determining whether to exercise this discretion are the materiality of the default at issue and whether the default caused "substantial economic detriment" to the non-debtor party. *See Joshua Slocum*, 922 F.2d at 1092; *see also In re Whitsett*, 163 B.R. 752, 754 (Bankr.E.D.Pa. 1994) (in deciding whether debtor's compliance with provisions in a debtor-tenant lease should be deemed insignificant in the assumption process, "the determining 'factor' appears to be the 'materiality' of the default.").

15. The issue here is whether the Debtors' defaults under the Repurchase Agreement are of "sufficient substance" and reflect the requisite "materiality and economic significance" under *Windmill Farms* and *Joshua Slocum*. There can be no question from the plain language of the Repurchase Agreement that the default were and remain material. *See Whitsett*, 163 B.R. at 754. Even if the Debtors were to assign the Repurchase Agreement now, it would not undo this historical fact. *See In re Lee West Enterprises*, 179 B.R. 204, 207 (Bankr.C.D.Cal. 1995) (quoting *In re Toyota of Yonkers, Inc.*, 135 B.R. 471 (Bankr.S.D.N.Y. 1992) ("If this default occurred, it is incapable of cure or remedy because the debtor can not undo this historical fact.")).

16. Although most published cases dealing with incurable defaults deal within the context of franchisees, the same analysis have been applied in other contexts and is applicable here. *See, e.g., In re Anne Cara Oil Co.*, 32 B.R. 643, 648 (Bankr.D.Mass. 1983) (likely that commingling of products, set forth as conditional grounds for termination, also an incurable default). If the Debtor has committed an incurable breach,

the Debtors have no continuing rights under the Repurchase Agreement. *See Anna Cara*, 32 B.R. at 648 (*citing Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998, 1003 (1st Cir. 1979)). As such, the Repurchase Agreement can not be assumed and assigned.

17. Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are clear – an executory contract may only be assumed and assigned if the debtor-in-possession cures or provides adequate assurance that the debtor-in-possession will promptly cure and defaults existing at the time of assumption. *See* 11 U.S.C. §§ 365(b)(1), (f)(2). A debtor-in-possession may not assume and assign a contract under which there are non-monetary defaults which are based on historical facts that can not be cured by future performance. *See In re Claremont Acquisition Corp.*, 113 F.3rd 1029, 1033 (9th Cir. 1997) (holding that the debtor was barred from assuming the contract because the debtors' default was a historical fact that could not be cured); *see also Beckett v. Coatesville Hous. Assocs.*, Case No. 00-5337, 2001 U.S. Dist. LEXIS 9281, at *17 (E.D. Pa. July 5, 2001) (similar); and *see In re New Breed Realty Enters., Inc.*, 278 B.R. 314, 319 (E.D.N.Y. 2002) (finding that section 365(b) requires that all defaults, including non-monetary defaults, be cured as a prerequisite to assuming an executory contract).

18. Each of the defaults is a non-monetary default involving historical facts that can not be undone with future performance. Because the Debtors are unable to cure the foregoing defaults, Natixis submits that the Repurchase Agreement can not be assumed and assigned.

C. **Debtors Must Cure All Existing Defaults and Assume the Purchase Agreement in its Entirety**

19. For the reasons discussed above, the defaults under the Repurchase Agreement are incapable of being cured and thus the Repurchase Agreement can not be

assumed. However, if the Court otherwise determines that the Repurchase Agreement is an executory contract and the defaults thereunder are capable of cure, the Debtors must cure all such defaults and assume the Repurchase Agreement in its entirety and with all burdens.

20. Natixis estimates that the cure amount necessary to assume and assign the Repurchase Agreement may exceed $10 million.[3]

21. The Modified Assumption Notice suggests that the Debtors intend to assume and assign their interests only in the servicing rights associated with the Repurchase Agreement - but not the Repurchase Agreement itself. This attempted partial assumption contravenes section 365 of the Bankruptcy Code which requires a trustee or debtor in possession to assume an executory contract in its entirety. *See* 11 U.S.C. § 365; *In re Rickel Home Centers, Inc.*, 209 F.3rd 291, 298 (3rd. Cir. 2000) (Debtor "may assume the contract or lease, but it must do so in its entirety"); *In re Indian River Homes, Inc.*, 108 B.R. 46 (D. Del. 1989) ("An executory contract must be assumed or rejected in its entirety.").

22. The Third Circuit has stated that "courts require the debtor in possession to 'give the other contracting party the full benefit of [its] bargain,'" when a Debtor assumes an executory contract "as a matter of fairness, before requiring the creditor to perform." *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3rd 311, 318 (3rd Cir. 2003) (citing H.R.Rep. No. 95-595, at 348 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6304-05; *Matter of Superior Toy & Mfg. Co., Inc.*, 78 F.3rd 1169, 1174 (7th Cir. 1996)). It is a

---

[3] The Debtors have failed to provide Natixis with the full information and cooperation necessary for Natixis to determine the specific amount necessary to cure the defaults under the Repurchase Agreement. Therefore, Natixis is not in a position at this time to identify with specificity the exact amounts that are required to cure the defaults under the Repurchase Agreement.

requirement of assumption that "the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement." *Id.* If the Debtor is to assume and assign a contract, the Debtor "must do so in its entirety." *See* 11 U.S.C. § 365(b) (1)(A), (B), (C); *In re Rickel Home Centers, Inc.*, 209 F.3rd 291, 298 (3rd Cir. 2000); *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32; 104 S.Ct. 1188, 1199 (1984) ("should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* ...."); *see also In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3rd Cir. 1951) ("The trustee, however, may not blow hot or cold. If he accepts the contract, he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He can not accept one and reject the other."); *In re Fleming Co., Inc.*, Case No. 05-2365, 2007 U.S. App. LEXIS 19927, at *20 (3rd Cir. August 22, 2007) (stating that section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder); *In re ANC Rental Corp.*, 277 B.R. 226, 238 (Bankr.D.Del. 2002) (stating that a debtor may not accept the benefits and reject the burdens of a contract); *United Air Lines, Inc. v. U.S. Bank Trust, N.A. as Trustee (In re UAL Corp.)*, 346 B.R. 456, 467 (Bankr. N.D. Ill. 2006) (same). This maxim applies in the instant situation.

23. Any order authorizing the assumption of the Repurchase Agreement and any subsequent assignment must make clear that the Debtors are assuming the Repurchase Agreement in its entirety and are assuming all obligations thereunder and are bound by all the provisions contained therein.

24. Even if the Court were to determine that the Repurchase Agreement could be assumed and assigned, Natixis would be entitled to a substantial cure payment in

connection with any such assumption and assignment. The Repurchase Agreement can only be assumed and assigned, if at all, with all of its benefits and burdens. Natixis submits that the Debtors are incapable of curing the non-financial defaults under the Repurchase Agreement and paying financial the cure amount necessary to assume the Repurchase Agreement. Moreover, the Debtors have not provided adequate assurance of future performance under the Repurchase Agreement as required by section 365 of the Bankruptcy Code.

### D.   Assignee Must Provide Adequate Assurance of Future Performance

25.   Section 365(f)(2) of the Bankruptcy Code provides that a contract may only be assumed and assigned after the debtor-in-possession has made a showing of adequate assurance of future performance by the proposed assignee regardless of whether or not there has been a default under the contract. *See* 11 U.S.C. § 365(f)(2). The Third Circuit has explained that "[b]ecause assumption acts as a renewed acceptance of the terms of the executory bargain, the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate, which will be paid first out of the estate." *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3rd 311, 318 (3rd Cir. 2003) (*quoting In re Columbia Gas System Inc.*, 50 F.3rd 233, 238-39 (3rd Cir. 1995)).

26.   In the present case, the Debtors have not even identified the proposed assignee of the Repurchase Agreement, let alone established that the proposed assignee can adequately perform the Debtors' obligations under the Repurchase Agreement. To determine whether adequate assurance has been provided, courts consider whether a debtor or a prospective assignee has provided (1) evidence of profitability, (2) a plan to

earmark money exclusively to cure the default and (3) the willingness and ability of the debtor or its proposed assignee to fund cure payments.

27.     The Sale Motion does not indicate what financial information will be made available and in what detail. Also, the Sale Motion does not state whether any of the financial information provided by a prospective purchaser will be available for review by Natixis prior to the Auction. Natixis submits that a cursory review of a prospective purchaser's financial information does not provide adequate assurance that any prospective purchaser will be able financially to perform under the Repurchase Agreement.

28.     Under the circumstances of these cases, Natixis submits that any purchaser and the Debtor should be required to disclose documentation regarding the financial condition of any prospective purchaser prior to the assumption and assignment and be permitted enough time to review the financial documentation provided prior to the Auction.

29.     In addition, Natixis submits that prior to any assumption and assignment of the Repurchase Agreement, the Debtors must make and evidentiary showing establishing, at a minimum, that any proposed assignee of the Repurchase Agreement is fully capable of performing all obligations under the Repurchase Agreement. Absent such a showing, assumption and assignment of the Repurchase Agreement is wholly improper.

E.  **Consent of Natixis is Required to Assume and Assign the Repurchase Agreement**

30.     Section 365(c)(1) of the Bankruptcy Code provides:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not

670889-1

13

> such contract or lease prohibits or restricts assignment of rights or delegation of duties, (A) if applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor-in-possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment ...

11 U.S.C. § 365(c)(1). Because, under applicable law, the Repurchase Agreement can not be assigned without the consent of Natixis, and Natixis has not consented to the assumption and assignment of the servicing portion of the Repurchase Agreement as required by the form asset purchase agreement. Further, sections 2.4(a), 6.3(c)(ii) and 6.3(d) of the form of asset purchase agreement expressly specifies that the assumption and assignment can not be consummated without obtaining necessary consents of third parties. This would include the consent of Natixis under the Repurchase Agreement. Natixis does not consent to the assumption or assignment of the servicing portion of the Repurchase Agreement. Natixis is attempting to negotiate the consensual transfer of the serving with the Debtors to a provider acceptable to Natixis. These efforts are continuing.

### Reservation of Rights

30. Natixis reserves the right to supplement and amend this Objection, including to allege additional cure amounts or additional defaults under the Repurchase Agreement or to raise additional objections to the assumption and assignment of the Repurchase Agreement or the sale of the Debtors' servicing business, based upon information obtained from the Debtors during the court of discovery related to this Objection.

670889-1

14

WHEREFORE, without in any way limiting its rights, Natixis requests that the Debtors not be permitted to assume and assign the Repurchase Agreement or any portion thereof and grant such other relief that is just and proper.

Dated:  September 20, 2007  
        Wilmington, DE

THE BAYARD FIRM

By: _____  
Neil B. Glassman (No. 2087)  
Steven M. Yoder (No. 3885)  
Eric M. Sutty (No. 4007)  
222 Delaware Avenue, Suite 900  
Wilmington, DE 19801  
Tel:  (302) 655-5000  
Fax:  (302) 658-6395  

-and-

Joseph Cioffi, Esquire  
Davis & Gilbert LLP  
1740 Broadway  
New York, New York 10019  
Telephone: (212) 468-4800  

Counsel for Natixis Real Estate Capital Inc.