IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | Related to Docket Nos. 11, 113, 403, 674 and 740 |
| | ) | |
| | ) | Objection Deadline: September 20, 2007 at 4:00 p.m. (ET) |
| | ) | Sale Hearing Date: October 9, 2007 at 2:30 p.m. (ET) |

**AMENDED AND SUPPLEMENTAL OBJECTION OF CITIMORTGAGE, INC. TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

On September 13, 2007, CitiMortgage, Inc. ("CMI") filed their Objection to Debtor's sale motion and related papers. Docket No. 740. CMI incorporates its prior objection and in addition thereto, states as follows:

### SUPPLEMENTAL OBJECTIONS

1. <u>Latent Defaults</u>. There may be latent defaults by Debtor of which CMI is not aware. For example, such defaults could include, but are not limited to:

   A. Misallocation of Deposits/Reconciliation Issues

      (i) Failure to make appropriate deposits into the proper accounts; and

      (ii) Failure to timely reconcile accounts.

1614344

B. Failure to make advances when appropriate

C. Inappropriate reimbursement of advances (i.e. recovery of advances from proceeds or payments on unrelated mortgage loans)

D. Failure to remit insurance payments to appropriate insurer

E. Failure to remit real estate taxes or other taxes to the appropriate tax authority

F. Failure to remit other assessments or fees to appropriate payee (e.g. association dues, etc.)

G. Inappropriate crediting of mortgage payments

H. Misappropriation of funds from accounts or lock box for unauthorized purposes (e.g. using trust funds to cover servicer or depositor's obligations)

I. Inappropriate handling of loss mitigation issues (losses as a result of negligence in handling defaults).

J. Any grant of inappropriate modifications to any mortgage loan or mortgage file.

K. Failure to perform indemnification obligations.

L. Failure to cooperate in servicing transition issues.

M. Claims arising out of any violation of law relating to debt collection practices.

N. Failure to properly maintain mortgage file and record payments and modification.

O. Claims against the Servicer by virtue of permitting the assumption of a mortgage by a third party in violation of the standards set in the Servicing Agreement.

1614344

P.  Claim arising out of any consent to a senior lien on the mortgage premises.

Q.  Failure to maintain primary mortgage insurance policies where appropriate.

R.  Failure to maintain hazard insurance.

S.  Failure to notify of known document exception that will adversely affect certificateholders' interest, including right to have a timely repurchase of the Mortgage Loan.

T.  Failure to maintain fidelity bond.

U.  Failure to maintain flood insurance (if applicable).

V.  Improper allocation of cash in accordance with the terms of the relevant agreements.

W.  Any other breach of the terms and conditions of the servicing agreement or related agreements.

X.  Failure to pay the reasonable fees and expenses of the master servicer or indenture trustees including, but not limited to, the fees and expenses of their respective counsel in connection with the servicing transfer or otherwise.

2.  To the extent that any default is unliquidated, such defaults must be subject to an estimation hearing before this Court pursuant to Section 502(c) of the Bankruptcy Code. The Debtors, therefore, must agree to establish adequate reserves to cure all defaults pending an estimation hearing or other resolution of these cure claims.

3.  Section 502(c) of the Bankruptcy Code provides:

There shall be estimated for purpose of allowance under this section –

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

>   (2)  any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c). Courts have held that "the Bankruptcy Code requires an estimation in order to prevent undue delay in the administration of the estate." <u>Official Comm. Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Federal-Mogul Global, Inc.)</u>, 330 B.R. 133, 153 (D. Del. 2005) (discussing need to estimate unliquidated claims). <u>See</u> <u>also</u> <u>Owens Corning v. Credit Suisse First Boston</u>, 322 B.R. 719, 725 (D. Del. 2005) (discussing need to estimate present and future claims against debtor). CMI believes the establishment of a reserve would be an appropriate means of resolving these types of cure objections. Through an appropriate reserve, the Master Servicer and Trustees may make claims for actual damages incurred by the trusts, while permitting the transaction to proceed.

4. Reserves were established in cases such as <u>In re Conseco, Inc.</u>, Case No. 02-49181, pending in the United States Bankruptcy Court for the Northern District of Illinois, and <u>In re DVI, Inc.</u>, Case No. 03-12656 pending in this District to help cure defects in the loan files and in connection with breaches of servicing obligations as they were discovered. Upon discovery of a breach, the Trustee filed a claim against an escrow in the amount of the damage created by the breach providing a mechanism for curing the defect. These reserves balanced the need for a quick disposition of the serving business with the inability to quickly, accurately and equitably identify all defaults under the relevant servicing agreements.

5. In order for the Debtors and the successful purchaser to consummate the sale, all cure amounts must be liquidated or adequately reserved so that the Debtors place into escrow or a reserve a sufficient amount of funds to satisfy all of its cure obligations.

This is particularly true given the expedited proceedings and the lack of an appropriate amount of time to evaluate potential claims against the Debtor. Until and unless the Debtors provide such estimation and/or establish adequate reserves, CMI objects to the contemplated sale.

6. <u>The Debtors Are Prohibited From Modifying The Terms And Conditions Of Any Of The Servicing Agreements</u>. A decision to assume or reject an executory contract is "an all or nothing proposition." <u>Schlumberger Resource Management Serv., Inc. v. Cellnet Data Sys., Inc.</u> (<u>In re Cellnet Data Sys., Inc.</u>), 327 F.2d 242, 249 (3d Cir. 2003). Thus, if a debtor assumes a contract, it must do so *cum onere*, with all the benefits as well as the burdens. <u>Cinicola v. Scharffenberger</u>, 248, F.3d 110, 119-120 (3d Cir. 1999). See also <u>In re Beverage Canners Int'l Corp.</u>, 255 B.R. 89, 95 (Bankr. S.D. Fla. 2000) ("It is black letter law that an executory contract must be either assumed in its entirety, *cum onere*, or completely rejected."); <u>In re Rigg</u>, 198 B.R. 681, 685 (Bankr. N.D. Tex. 1996) ("If a debtor chooses to assume . . . an executory contract or unexpired lease, he must assume them according to their terms."). The assumption and assignment of an executory contract does not give the debtor or the assignee the ability or the right to modify the terms of the agreement being assumed and assigned. See e.g. <u>Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 247 F.3d 44, 60 (3d Cir. 2001). In the <u>Medtronic</u> case, the court explained that:

> [a]ssignment does not modify terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party changed. An assignment is intended to change only who performs an obligation, not the obligation to be performed.

1614344

Id. See also In re Federal-Mogul Global, Inc., Case No. 05-2423, 2007 U.S. App. LEXIS 6120, at *9 (3d Cir. Mar. 15, 2007) (explaining that the debtor is not able to modify obligations in contract assumed and assigned pursuant to Section 365 of the Bankruptcy Code). For example, a purchaser may seek to assume certain beneficial parts of the agreements, but not seek to assume the repurchase obligations.

7.  In prior cases, the purchaser of servicing rights has required that certain modifications or amendments be made to the servicing agreements as a condition of their bid. Because of the anomaly that objections to the proposed sale are required before bids for the loan servicing business are received, CMI does not know whether the purchaser will make modifications to the servicing agreements a condition of its bid. CMI objects to the extent that any accepted bid modifies the terms of any Servicing Agreement without the consent of the respective contract counterparties.

## RESERVATION OF RIGHTS

8.  CMI as Master Servicer, on behalf of itself and any Trustee, reserves the right to assert cure claims for breaches of representations and warranties with respect to individual loan contracts and the adequacy of the mortgage file to the extent that the originator of the loans is likewise assuming the relevant agreements or to the extent that the obligations under the relevant transactional documents are not severable from those of the servicing agreements.

9.  CMI also reserves its rights with respect to the terms and conditions set forth in the proposed Asset Purchase Agreement. The terms of the engagement must be consistent with the terms of the relevant Servicing Agreements. CMI has no ability to make this assessment until it is provided with a final form of such agreement.

1614344

10. CMI incorporates the legal arguments set forth in the other objections to the Sale Motion to the extent not inconsistent with CMI's position.

11. CMI reserves the right to amend or supplement its objection at anytime prior to the hearing on any sale.

WHEREFORE, CMI respectfully requests that this Court deny the sale order or it according to CMI's objections.

Dated: September 20, 2007

**MORRIS JAMES LLP**

_____
Brett D. Fallon (DE Bar No. 2480)
Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302)888-6888
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com

-and-

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 24005
Denver, Colorado 80202-5424
Telephone: (303) 626-7139
Facsimile: (303) 626-7101
Email: apetrie@featherstonelaw.com

*Attorneys for CitiMortage, Inc.*

1614344