# EXHIBIT A

## Stipulation

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re                                          :   Chapter 11
                                               :
American Home Mortgage Holdings, Inc.,         :   Case No.: 07-11047 (CSS)
et al.                                         :
                                               :   (Jointly Administered)
Debtors.                                       :
                                               :   **Ref. Docket No.: 232**
                                               :
---------------------------------------------------------- x

## STIPULATION AND AGREEMENT BY AND BETWEEN
## THE DEBTORS AND IMPAC FUNDING CORPORATION

On this __14th__ day of September, 2007, this stipulation (the "Stipulation") is entered into by the American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors-in-possession in the above cases (collectively, the "Debtors")[1] and Impac Funding Corporation ("Impac"), by and through their undersigned counsel, hereby stipulate and agree as follows:

### RECITALS

Whereas, on August 6, 2007, each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court for the District of Delaware (the "Court");

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

DM3\565145.1

Whereas, the Debtors continued their businesses as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code;

Whereas, an Official Committee of Unsecured Creditors (the "Committee") was appointed on August 14, 2007;

Whereas, Impac asserts that American Home Mortgage Corporation ("AHM Corp.") and American Home Mortgage Servicing ("AHM Servicing" together with AHM Corp., "AHM") and Impac are parties to a prepetition seller agreement, dated February 7, 2002 (as amended, supplemented and otherwise modified, the "Seller Agreement"), pursuant to which Impac purchased from AHM certain mortgage loans (the "Mortgage Loans"), including the right to service the Mortgage Loans. The Seller Agreement also provided for, among other things, the manner in which AHM was to convey the Mortgage Loans and related documents to Impac so that Impac could resell the Mortgage Loans in the secondary market;

Whereas, Impac asserts that AHM and Impac are also parties to a prepetition interim servicing agreement, dated March 25, 2004 (as amended, supplemented and otherwise modified, the "Interim Servicing Agreement"), pursuant to which AHM agreed with Impac, as owner of the servicing rights, to sub-service the Mortgage Loans on an interim basis. Impac asserts that the Interim Servicing Agreement also provided that AHM retained possession of certain documents necessary for servicing the Mortgage Loans (the "Servicing Files"), but would hold the Servicing Files in trust for the benefit of Impac as the owner thereof until such time as Impac designates a new servicer. In addition, Impac asserts that the Interim Servicing Agreement provided that AHM shall deposit in certain segregated custodial accounts (the "Custodial Accounts") all funds received with respect to the Mortgage Loans within a specified amount of time upon their receipt;

Whereas, pursuant to the Interim Servicing Agreement, AHM is currently servicing some or all of the thirty-nine (39) Mortgage Loans (the "Serviced Loans"), attached hereto as Schedule 1;

Whereas, Impac subsequently alleged that AHM breached certain of its covenants and obligations under the Interim Servicing Agreement;

Whereas, as a result of AHM's alleged defaults, Impac has asserted a right to terminate the Interim Servicing Agreement;

Whereas, on August 17, 2007, Impac filed the *Emergency Motion of Impac Funding Corporation for Relief from the Automatic Stay* (the "Stay Relief Motion") [D.I. 232], seeking an order from the Court, among other things, modifying the automatic stay pursuant to section 362 of the Bankruptcy Code to permit Impac, at its discretion, to terminate the Interim Servicing Agreement and to compel AHM to comply with certain alleged obligations under the Interim Servicing Agreement, including, but not limited to AHM's alleged obligations to cooperate in the transfer of the Serviced Loans, Custodial Account and Servicing Files;

Whereas, Impac alleged that no third party would agree to the purchase of the Serviced Loans as long as AHM remained the servicer. Accordingly, by the Stay Relief Motion, Impac sought to terminate the Interim Servicing Agreement and appoint a new servicer to facilitate a sale of the Serviced Loans;

Whereas, the Debtors dispute all assertions and allegations by Impac in the Stay Relief Motion or otherwise and reserve all rights related thereto; and

Whereas, the Debtors and Impac (collectively, the "Parties") have engaged in arm's length, good faith negotiations and have reached an agreement.

**NOW, THEREFORE**, subject to an order of the Court approving this

3

DM3\565145.1

Stipulation, the Parties agree as follows:

1. On or after the Servicing Transfer Date (as defined below), but not before the Court approval of this Stipulation, Impac or its designee shall be permitted to pick-up, at its own cost, and AHM shall make available during normal business hours, all documents related to the Mortgage Loans in their possession (the "Mortgage Loan Documents"), including, without limitation, the Servicing Files related to the Serviced Loans, as such documents are maintained in the normal course of the AHM's business. In the alternative, at the request of Impac, AHM shall ship to Impac, at Impac's cost of shipment, the Mortgage Loan Documents.

2. With respect to any Mortgage Loan Documents that have not been delivered to AHM as of date hereof, if any, AHM shall deliver such documents to Impac or its designee immediately upon receipt of such documents.

3. Without any concession by AHM that any Event of Default actually occurred or that termination is proper, AHM shall transfer the servicing of the Serviced Loans to Impac's designee, Countrywide Home Loan Servicing, L.P. ("Countrywide Servicing"), on an orderly basis as soon as practicable, but in no event later than September 24, 2007 (the "Servicing Transfer Date").

4. Within thirty (30) days after the Servicing Transfer Date, Impac shall be permitted, at its own expense, to prepare and deliver to mortgagors under the Serviced loans so-called "hello and good-bye letters," advising those mortgagors that AHM is no longer servicing the Serviced Loans and identifying Countrywide Servicing as the new servicer. The letters may be on AHM letterhead, which will be provided by AHM to Impac, and in a form reasonably acceptable to AHM.

5. Within five (5) business days of completion of the transfer of the Mortgage Loan Documents (not to include any trailing final collateral documents) as provided in paragraph 1, the transfer of the servicing of the Serviced Loans as provided in paragraph 3 and receipt by Impac of the amounts on deposit, list of Custodial Accounts and other documentation as provided in paragraph 7, Impac shall pay the Debtors $10,000 in immediately available funds and without recourse to cover its costs and expenses incurred in transferring the Serviced Loans or Servicing Files to Impac.

6. Until the Servicing Transfer Date, AHM will continue to service the Serviced Loans pursuant to the Seller Agreement and the Interim Servicing Agreement and Impac shall pay for such services in accordance with the terms of the Seller Agreement and the Interim Servicing Agreement.

7. Within five (5) business days of the Servicing Transfer Date, AHM shall forward to Impac amounts on deposit in all Custodial Accounts less any amounts owed to AHM for advances or fees pursuant to either the Interim Servicing Agreement and/or paragraph 6 of this Stipulation. In addition, AHM shall provide to Impac a list of all Custodial Accounts (inclusive of account numbers and other identifying information) and execute such documentation as may be necessary to transfer the control of such Custodial Accounts to Impac. To the extent AHM receives any checks or other payments relating to the Serviced Loans after the Servicing Transfer Date, Debtors will endorse such checks and payment into the name of Impac and forward them to Impac by overnight delivery on a daily basis.

8. This Stipulation does not affect in any way any of the agreements between Impac and AHM, except that the Seller Agreement and the Interim Servicing Agreement are terminated as of the Servicing Transfer Date. Impac hereby waives and releases any and all

claims and/or causes of action against the Debtors under the Seller Agreement and the Interim Servicing Agreement related to the Debtors' interim servicing of the Serviced Loans or transfer of the subservicing. Nothing in this Stipulation and Agreement waives and releases in any way any and all other rights, claims and/or causes of action Impac may have against the Debtors under the Seller Agreement, the Interim Servicing Agreement, other agreements or otherwise under applicable law or in equity including, without limitation, any and all claims arising from or related to the Debtors' alleged failure to repurchase loans from Impac, all of which rights, claims and causes of action are expressly reserved by Impac. Nothing in this Stipulation and Agreement waives and releases in any way Impac's rights, claims and/or causes of action with respect to any failure of the Debtors to comply with the terms of this Stipulation and Agreement.

9. Impac hereby withdraws the Stay Relief Motion with prejudice.

10. This Stipulation may not be modified other than by a signed writing executed by the Parties; provided, that any material modification shall be on prior notice to Bank of America, N.A. and the Committee.

11. The Court shall have exclusive jurisdiction to hear disputes arising out of or related to the Parties' rights and obligations under this Stipulation and its formation and approval, and the Stipulation is subject to Court approval.

12. If this Stipulation is not approved by the Court or otherwise does not become effective, then the Parties revert to their pre-stipulation positions and the terms of this Stipulation shall be inadmissible for any purpose whatsoever.

13. Each person who executes this Stipulation represents that he or she is duly authorized to execute this Stipulation and Agreement on behalf of the respective Parties and that each such party has full knowledge of and has consented to the terms and provisions thereof.

6

14. This Stipulation may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copy, copies or facsimiles signed by the Parties hereto to be charged.

Dated: September ____, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: _____
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

DUANE MORRIS, LLP

By: _[signature]_
Michael R. Lastowski (No. 3892)
Richard W. Riley (No. 4052)
1100 North Market Street
Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901 #4380

Counsel for Impac Funding Corporation

7

DM3\565145.1

14. This Stipulation may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copy, copies or facsimiles signed by the Parties hereto to be charged.

Dated: September 14, 2007

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

By: _____
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in
Possession

DUANE MORRIS, LLP

By: _____
Michael R. Lastowski (No. 3892)
Richard W. Riley (No. 4052)
1100 North Market Street
Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901 #4380)

Counsel for Impac Funding Corporation

7

DM3\565145.1

## SCHEDULE 1

| INVESTOR LOAN NUMBER | SERVICER LOAN NUMBER | LOAN PRINCIPAL | ESCROW LOAN |
|---|---|---|---|
| 1103661817 | 1001613445 | 51,823.19 | N |
| 1103661824 | 1001598478 | 76,233.07 | N |
| 1103661896 | 1001638264 | 183,627.14 | N |
| 1103661906 | 1001601180 | 194,444.14 | N |
| 1103661934 | 1001650742 | 259,295.16 | N |
| 1103661802 | 1001579995 | 968,601.56 | N |
| 1103661840 | 1001644383 | 108,800.00 | Y |
| 1103661871 | 1001653072 | 132,000.00 | Y |
| 1103661875 | 1001491155 | 159,020.00 | Y |
| 1103661876 | 1001647190 | 159,061.99 | Y |
| 1103661798 | 1001567410 | 208,000.00 | Y |
| 1103661920 | 1001655766 | 238,000.00 | Y |
| 1103661957 | 1001611040 | 311,414.14 | Y |
| 1103661977 | 1001606545 | 388,000.00 | Y |
| 1103661983 | 1001638496 | 394,907.92 | Y |
| 1103662022 | 1001644222 | 678,750.00 | Y |
| 1103661805 | 1001553679 | 999,658.92 | Y |
|  |  | 17    5,511,627.26 |  |

| INVESTOR LOAN NUMBER | SERVICER LOAN NUMBER | LOAN PRINCIPAL | ESCROW LOAN |
|---|---|---|---|
| 1103668598 | 1001719421 | 600,608.06 | N |
| 1103668605 | 1001759342 | 94,918.21 | N |
| 1103668613 | 1001776378 | 80,924.98 | N |
| 1103668614 | 1001776858 | 251,803.42 | N |
| 1103668603 | 1001746790 | 69,845.40 | N |
| 1103668586 | 1001720444 | 156,522.55 | Y |
| 1103668588 | 1001723446 | 536,000.00 | Y |
| 1103668589 | 1001622346 | 648,184.32 | Y |
| 1103668590 | 1001633961 | 542,383.60 | Y |
| 1103668592 | 1001658720 | 66,911.65 | Y |
| 1103668597 | 1001729769 | 931,291.00 | Y |
| 1103668604 | 1001751299 | 315,214.79 | Y |
| 1103668607 | 1001760483 | 589,983.30 | Y |
| 1103668610 | 1001769242 | 520,493.62 | Y |
| 1103668611 | 1001771771 | 175,503.77 | Y |
| 1103668615 | 1001779978 | 96,907.96 | Y |
| 1103668618 | 1001783539 | 184,156.23 | Y |
| 1103668619 | 1001788073 | 142,368.02 | Y |
| 1103668620 | 1001796093 | 649,453.93 | Y |
| 1103668599 | 1001732360 | 586,772.18 | Y |
| 1103668600 | 1001733917 | 599,457.59 | Y |
| 1103668602 | 1001735197 | 177,351.53 | Y |

22      8,107,156.01