# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>(Jointly Administered) |

**STIPULATION OF SETTLEMENT BETWEEN AND AMONG THE DEBTORS AND FEDERAL HOME LOAN MORTGAGE CORPORATION REGARDING THE SALE OF SERVICING OF FEDERAL HOME LOAN MORTGAGE CORPORATION'S LOANS**

A.  WHEREAS, on August 6, 2007 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.  WHEREAS, the Federal Home Loan Mortgage Corporation ("Freddie Mac") is a corporate instrumentality of the United States of America, chartered by Congress under the Federal Home Loan Mortgage Corporation Act, Title III of the Emergency Home Finance Act of 1970, 12 U.S.C. §§ 1451-59. Freddie Mac purchases mortgage loans from approved mortgage loan originators or "seller/servicers" and contracts with those seller/servicers to service the loans. Mortgage seller/servicers agree to sell and service mortgages pursuant to the terms and conditions contained in certain purchase documents (collectively, the "Purchase Documents") consisting of, *inter alia*, a purchase contract, Freddie Mac's Single-Family Seller/Servicer Guide (the "Guide"), and bulletins issued periodically by Freddie Mac to its seller/servicers which supplement the parties' agreement as set forth in the Purchase Documents.

C.   WHEREAS, prior to the Petition Date, certain of the Debtors were Freddie Mac sellers/servicers. The Debtors serviced approximately 4,547 Freddie Mac mortgage loans with a total value of approximately $796,782,744.55 (the "Freddie Mac Loans").

D.   WHEREAS, pursuant to certain agreements between and among certain of the Debtors and Bank of America, N.A. ("BofA"), as administrative agent, and other lenders (collectively, "Lenders"), Debtors granted BofA a security interest in, among other things, the right of the Debtors to service single-family mortgages for Freddie Mac (hereinafter the "Servicing Security Interest"). BofA's Servicing Security Interest is subject to the terms of the Acknowledgment Agreement, as defined below.

E.   WHEREAS, the Debtors and Freddie Mac assert that they are parties, along with BofA, as administrative agent, to an acknowledgement agreement executed on or about July, 2005 (referred to hereinafter, including, without limitation, any addendums thereto, as the "Acknowledgement Agreement"), pursuant to which (a) Freddie Mac consented to the grant of the Servicing Security Interest to BofA and (b) the parties set forth certain rights and obligations with respect thereto including, without limitation, the rights and obligations of the parties in connection with the transfer of the Servicing.

F.   WHEREAS, Freddie Mac asserts that pursuant to the Guide and effective August 1, 2007, it terminated the eligibility of the Debtors to sell mortgages to and service mortgages for Freddie Mac with "cause" (the "Termination"); the Debtors dispute the validity of such Termination.

G.   WHEREAS, subsequent to August 1, 2007 and pending a Permanent Servicing Transfer, as that term is defined in the Acknowledgement Agreement, by separate Stipulation between and among Debtors, Freddie Mac and BofA, BofA agreed to act as the interim servicer ("Interim Servicer").

H.  WHEREAS, Freddie Mac maintains that by reason of the foregoing, the Termination and the contractual rights and obligations of the parties under the Guide and Acknowledgement Agreement, the Debtors have no right, title, claim or interest in and to any of the Servicing or the revenues related thereto, and further assert that such Servicing and revenues are not property of the estate, and assert further that the automatic stay provided by 11 U.S.C. §§ 362(a) does not apply thereto.

I.  WHEREAS, the Debtors dispute the position taken by Freddie Mac as to the Debtors' rights to the Servicing and revenues related thereto, and further dispute that such Servicing or revenues related thereto are not property of the estate, or that the automatic stay is inapplicable thereto.

J.  WHEREAS, in order to avoid expensive and protracted litigation and the further deterioration of the value of the Servicing, the parties wish to compromise and settle the controversy between them on the terms and conditions hereinafter set forth.

IT IS HEREBY STIPULATED AND AGREED BETWEEN AND AMONG the Debtors and Freddie Mac (this Stipulation being acknowledged by the Official Committee of Unsecured Creditors of the Debtors (the "Committee")), AS FOLLOWS:

1.  The Debtors acknowledge and agree that Freddie Mac has a first priority right of payment from the proceeds (the "Servicing Transfer Proceeds")generated by the Auction Sale (as defined below). The total amount of "Freddie Mac's Claims" and "Freddie Mac's Servicing Transfer Costs" (as such terms are defined in the Acknowledgement Agreement) to be deducted from the Servicing Transfer Proceeds are estimated as of September 20, 2007, to be $447,960.00 plus $2,056,296.19 related to required repurchases, and will be determined as of the date of the Permanent Serving Transfer in accordance with the Acknowledgment Agreement.

3

2. The Debtors agree that a sale of the Servicing through an auction sale conducted by a broker agreed to by the parties and subject to a brokerage agreement approved by the parties (hereinafter, respectively, the "Auction Sale" and the "Broker") is acceptable to the Debtors. The Parties agree that the Auction Sale will be conducted in a commercially reasonable manner, consistent with and permitted by the Acknowledgment Agreement and pursuant to the court's order on this Stipulation, in order to effect the Permanent Servicing Transfer with Representations and Warranties. The Debtors acknowledge that the market value of the Servicing fluctuates and Freddie Mac does not represent, warrant or guaranty to the Debtors that there will be any Surplus Proceeds, as defined in the Acknowledgement Agreement, following the Auction Sale and the Permanent Servicing Transfer. Debtors acknowledge and agree that the transferee of the Servicing must meet the eligibility and performance requirements set forth in the Guide and the Acknowledgement Agreement in order to be acceptable to Freddie Mac. Nothing in this Stipulation shall affect or reduce the rights of BofA under the Acknowledgment Agreement, all of which are reserved, including the right of BofA to implement a Servicing Transfer with Assumption of Warranties, as provided in the Acknowledgment Agreement. All of the Debtors rights are reserved regarding the consideration arising, if any, on account of a Servicing Transfer with Assumption of Warranties.

3. After receipt by Freddie Mac of the Servicing Transfer Proceeds, if any, of the Auction Sale, Freddie Mac will comply with the terms and provisions of Section 8(g) of the Acknowledgement Agreement, including without limitation, the provision for disbursement of Surplus Proceeds, if any, due to BofA, and will disburse the remainder, if any, to the Debtors, provided that, the disbursement to BofA shall be applied in all respects in accordance with the terms of the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain pre-Petition Secured Parties

entered on September 4, 2007 (as amended or extended with the prior written consent of Bank of America, the "Cash Collateral Order").

    4.  Debtors and Freddie Mac acknowledge and agree that provided (i) there is a Servicing Transfer With Assumption of Warranties and (ii) sufficient Servicing Transfer Proceeds are generated by the Auction Sale to pay the Freddie Mac Claims and the Freddie Mac Servicing Transfer Costs in full, then such claims and costs shall be paid from the Servicing Transfer Proceeds, and that thereafter the disbursement of Surplus Proceeds due to BofA to be applied in accordance with the Cash Collateral Order shall be made to BofA, with the remainder, if any, to the Debtors, and thereafter Freddie Mac shall not assert any additional claims or liabilities against the Debtors' estates arising out of or related to the Termination or any obligations of Debtors to Freddie Mac under the Guide or the Acknowledgement Agreement.

    5.  Except for the rights and obligations of the parties hereunder and the rights and obligations between Freddie Mac and the Debtors under the Stipulation Regarding Interim Servicing of Federal Home Loan Mortgage Corporation Loans, upon the closing of the Auction Sale, Freddie Mac, on the one hand, and the Debtor, on the other hand, hereby release each other and their current and former directors, officers, employees and shareholders, from any and all claims, counterclaims, setoffs and causes of action including, which each may have against the other, whether known or unknown, as of the date hereof, including without limitation, claims, counterclaims, setoffs and causes of action arising out of or related to the Termination, the Guide, the Servicing relationship, the Security Agreement and the Acknowledgement Agreement, at law, in equity or otherwise.

    6.  To the fullest extent required by law and consistent with and pursuant to the terms of this Stipulation, Freddie Mac is granted relief from the automatic stay pursuant to 11 U.S.C. §362, in order to implement the terms of this Stipulation and to take all actions

5

reasonably necessary to complete the Servicing Transfer Procedures and to enforce the terms of the Guide and this Stipulation.

7. The Debtors agree to keep the Committee fully and timely informed of the Auction Sale process, including, without limitation, providing the Committee's professionals with advance copies of, or information concerning, the form of agreement to be entered into with the Broker, the method to identify and the parties approached to submit bids, the results of such solicitations, the party ultimately identified by the Debtors as the winning bidder and the proposed terms of sale. Nothing contained herein shall prejudice the rights of the Committee to seek appropriate relief from the Bankruptcy Court on an expedited basis, in the event the Committee believes that the Debtors have not exercised proper business judgment in connection with the retention of the Broker or the proposed Auction Sale. The Debtors agree not to contest any such request by the Committee for an expedited hearing on its request for relief.

8. Upon entry of an order of the Bankruptcy Court authorizing and approving the Debtors' entry into this Stipulation and the terms and provisions hereof, this Stipulation shall be binding upon and inure to the benefit of the parties, and their respective heirs, legal representatives, successors and assigns, including any Chapter 11 trustee that may be appointed or Chapter 7 trustee in the event this bankruptcy proceeding is converted to a case under Chapter 7 of the Bankruptcy Code.

9. This Stipulation may be executed in counterparts, any of which may be transmitted by facsimile, and each of which should be deemed an original and all of which together shall constitute one and the same instrument.

10. No amendment, modification or waiver of any provision of this Stipulation shall be effective unless the same shall be in writing and signed by the parties hereto

DB02:6199235.12                              066585.1001

and then such amendment, modification or waiver shall be effective only in the specific instance and for the specific purpose for which given.

11. This Stipulation is subject to approval by the parties to the agreement for the Interim Servicing Transfer and Court approval of this Stipulation is conditioned upon Court approval of the agreement for the Interim Servicing Transfer. Each of the undersigned represents that he/she has the authorization to execute this Stipulation on behalf of his/her respective client.

12. Nothing in this Stipulation shall create a negative implication, waiver, release, estoppel, admission against interest, or law of the case and all rights of the parties are fully reserved.

Dated: September 18, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Edward J. Kosmowski (No. 3849)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253
Email: rbrady@ycst.com
   jdorsey@ycst.com
   ekosmowski@ycst.com

Counsel for the Debtors and Debtors in Possession

REED SMITH, LLP

J. Cory Falgowski, Esquire
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Tel: (302) 778-7500
Fax: (302) 778-7575
jfalgowski@reedsmith.com

- and -

*George Kielman* (signature)

George Kielman, Esquire
FREDDIE MAC
8200 Jones Branch Drive – MS 202
McLean, Virginia 22102
Tel: (703) 903-2640
Fax: (703) 903-3691
George_kielman@freddiemac.com

Counsel for Federal Home Loan Mortgage Corporation

**ACKNOWLEDGED AND
COMPROMISE CONSENTED TO:**

BLANK ROME LLP

*Bonnie Fatell* (signature)

Bonnie Glantz Fatell (No. 3809)
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: (302) 425-6400
Fax: (302) 425-6464
Email: fatell@blankrome.com

and

HAHN & HESSEN, LLP
Mark S. Indelicato
Mark T. Power
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
Email: mindelicato@hahnhessen.com
        mpower@hahnhessen.com

Counsel for the Official Committee of Unsecured
    Creditors of American Home Mortgage Holdings, Inc., *et al.*