IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 243** |

STIPULATION AND ORDER RESOLVING
MOTION OF UNITED STATES FOR AN ORDER
(I) REQUIRING TURNOVER OF NON-ESTATE PROPERTY
BELONGING TO THE GOVERNMENT NATIONAL MORTGAGE ASSOCIATION AND
(II) DECLARING THAT THE GOVERNMENT NATIONAL MORTGAGE
ASSOCIATION IS NOT SUBJECT TO THE AUTOMATIC STAY

A. WHEREAS, on August 6, 2007, American Home Mortgage Holdings, Inc. ("AHM Holdings") and certain of its subsidiary and affiliate companies, including American Home Mortgage Servicing, Inc. ("AHM Servicing" and collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, in the bankruptcy case captioned *In re American Home Mortgage Holdings, Inc., a Delaware Corporation, et al.*, Case No. 07-11047 (CSS) Jointly Administered (the "Bankruptcy Case"). The Debtors remain in possession and control of their assets as of the date hereof.

B. WHEREAS, prior to the filing of the Bankruptcy Case, the Debtors' business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities ("MBS") resulting from the securitizations of residential mortgage loans. AHM Servicing was approved as a Ginnie Mae MBS issuer and was a signatory and subject to the GNMA I and GNMA II Guaranty Agreements provided in Appendix III of the Ginnie Mae MBS Guide ("Guaranty Agreements"). Pursuant to the Guaranty Agreements,

AHM Servicing assigned ownership of certain first lien, adjustable-rate residential mortgage loans on a servicing-retained basis to GNMA (the "Ginnie Mae Portfolio").

C. WHEREAS, Ginnie Mae asserts that it gave notice to AHM Servicing on August 3, 2007 that an immediate event of default had occurred and it was terminating AHM Servicing's issuer status and extinguishing all right, title and interest in and to the mortgages backing the MBS. Ginnie Mae asserts that by the terms of the Guaranty Agreements executed by certain of the Debtors, upon issuance of such notice, all right, title and interest of the Debtors in the Ginnie Mae portfolio terminated, and Ginnie Mae became the owner of the loans. The Debtors disputed the purported termination and did not turn over the MBS portfolio to Ginnie Mae.

D. WHEREAS, on August 20, 2007, Ginnie Mae filed in the Bankruptcy Case a Motion of the United States for an Order (I) Requiring Turn-Over of Non-Estate Property Belonging to the Government National Mortgage Association and (II) Declaring That the Government National Mortgage Association is Not Subject to the Automatic Stay (the "Turnover Motion").

E. WHEREAS, the Debtors and Ginnie Mae desire to set forth the terms and conditions pursuant to which the parties will compromise and settle the Turnover Motion.

IT IS HEREBY STIPULATED AND AGREED BETWEEN AND AMONG the Debtors and Ginnie Mae, AS FOLLOWS:

1. The Debtors shall have until October 9, 2007 to execute a binding contract (the "Sale Contract") to sell the Ginnie Mae Portfolio to a Ginnie Mae approved issuer/servicer in good standing (the "Purchaser"), without any further extensions or contingencies. The contract shall include a deadline to close the sale and transition the servicing to the Purchaser by no later than November 1, 2007, without any further extensions or contingencies, and the sale shall be closed and the servicing transitioned by then.

2. The Sale Contract shall provide sufficient proceeds to reimburse Ginnie Mae for all of its reasonable and actual costs and expenditures associated with the alleged default by

AHM Servicing and the transfer of servicing rights associated with the Ginnie Mae portfolio and such sufficiency of proceeds shall also be a condition precedent to closing the sale. The reimbursement of Ginnie Mae shall occur as part of and simultaneously with the closing of the sale before any other payment from or disbursement of sale proceeds, with the reimbursement payment effectuated as Ginnie Mae shall direct, in writing. The exact amount of costs and expenses is to be determined by Ginnie Mae after its representatives conduct a reconciliation of the Ginnie Mae portfolio but are estimated as of September 19, 2007 to be approximately $1.65 million. These costs and expenses include, but are not limited to:

>   (a) All P&I payments made by Ginnie Mae, net of borrower funds applied by Ginnie Mae, to owners of securities backed by the Ginnie Mae Portfolio, regardless of the source of funds used by Ginnie Mae to make such payments.
>
>   (b) All T&I payments made by Ginnie Mae, net of borrower funds applied by Ginnie Mae, on behalf of mortgages in the Ginnie Mae Portfolio, regardless of the source of funds used by Ginnie Mae to make such payments.
>
>   (c) Expenses that Ginnie Mae incurred related to the Ginnie Mae Portfolio, including the alleged default of AHM Servicing and subsequent bankruptcy procedures, as well as the settlement negotiations. This amount shall include reasonable and actual travel expenses of Ginnie Mae's representatives, reasonable and actual costs of engaging subcontractors, reasonable and actual costs associated with Ginnie Mae's representatives' monitoring AHM Servicing's operations;
>
>   (d) Customary pool transfer fees;
>
>   (e) The cost of any funds used by Ginnie Mae to make payments or cover expenses on account of the Ginnie Mae Portfolio, as determined at the Federal Funds Rate.

  3. The Sale Contract shall explicitly recognize that Ginnie Mae will not reimburse any advances to AHM Servicing or any other party or to fund any shortfalls to any custodial accounts. This provision is without prejudice to the rights reserved in paragraph 7 of this

Stipulation in the event there is not an executed or consummated Sale Contract. Notwithstanding, the Parties reserve all rights with respect to the August 2007 T&I Payments made by AHM Servicing of approximately $600,000.

4. The transition of the servicing to the Purchaser shall be completed in accordance with the transfer procedures established in the Ginnie Mae MBS Guide. The Debtors and the Purchaser shall submit to Ginnie Mae a complete and accurate application for transfer of issuer responsibility. The sale may not be consummated prior to Ginnie Mae approval of that application.

5. Ginnie Mae will allow AHM Servicing to service the Ginnie Mae portfolio in accordance with the provisions of the agreements between the parties that govern the day-to-day servicing of loans until the earlier of the date of the transition to Purchaser, November 1, 2007, or the return of servicing to Ginnie Mae pursuant to paragraph 7 hereof. If Ginnie Mae provides written notice to AHM Servicing of any non-material violations of the Ginnie Mae MBS Guide in its servicing obligations or its procedures or its obligations under this agreement, AHM Servicing shall have five (5) business days to cure or resolve the alleged non-material violations; however GNMA is not obligated to provide a cure period for criminal, fraud, or reckless or intentional false reporting defaults. The Debtors shall provide Ginnie Mae and its representatives with access and information necessary to monitor the servicing of the Ginnie Mae portfolio. To the extent it has not done so already, AHM Servicing agrees to immediately and fully provide complete servicing information and to cooperate with Ginnie Mae to pay the taxes and insurance payments from the T&I custodial accounts.

6. AHM Servicing agrees to timely and properly complete RPB reporting in the ordinary course, regardless of whether a Sale Contract has been executed.

7. In the event any deadline in paragraph 1 above is not satisfied or extended by Ginnie Mae in its sole discretion, the Debtors will not contest that Ginnie Mae is the sole owner of the right to service the Ginnie Mae Portfolio, that Ginnie Mae has the authority to dispose of or

assign the servicing, in Ginnie Mae's sole discretion or that Ginnie Mae is not subject to the automatic stay pursuant to section 362 of the Bankruptcy Code. The Debtors will fully cooperate to transfer all files, accounts and other information related to the Ginnie Mae Portfolio to Ginnie Mae or its designee as soon as practicable; provided, however, that the Debtors reserve the right to seek to recover unreimbursed T&I advances made on behalf of borrowers under the Ginnie Mae Portfolio and Ginnie Mae reserves the right to oppose any such relief. Nothing in this Stipulation and Order shall preclude Ginnie Mae from filing one or more proofs of claim or requests for payment of administrative expense claims in the Bankruptcy Cases or the Debtors rights to object thereto.

8. Upon entry of an order approving this Stipulation, the United States shall withdraw its Turnover Motion.

9. This Stipulation may be executed in counterparts, any of which may be transmitted by facsimile, and each of which should be deemed an original and all of which together shall constitute one and the same instrument.

10. No amendment, modification or waiver of any provision of this Stipulation shall be effective unless the same shall be in writing and signed by the parties hereto and then such amendment, modification or waiver shall be effective only in the specific instance and for the specific purpose for which given.

11. Debtors' agreement to this Stipulation is subject to Bankruptcy Court approval.

12. Each of the undersigned represents that he/she has the authorization to execute this Stipulation on behalf of his/her respective client.

13. Except as otherwise provided herein, nothing in this Stipulation shall create a negative implication, waiver, release, estoppel, admission against interest, or law of the case and all rights of the parties are fully reserved.

Dated: September 20, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988 )
Sharon M. Zieg (No. 4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253
Email: rbrady@ycst.com
jdorsey@ycst.com
szieg@ycst.com

Counsel for the Debtors and Debtors in Possession

PETER D. KEISLER, *Civil*
Assistant Attorney General

DAVID C. WEISS
Acting United States Attorney

ELLEN W. SLIGHTS (DE Bar No. 2782)
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046

_____
J. CHRISTOPHER KOHN
JAMES G. BRUEN, JR.
MARY A. DEFALAISE
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 307-0183
Fax. (202) 307-0494

Attorneys for the Government National
 Mortgage Association

*SO ORDERED*, this 20th day of September, 2007.

_____
The Honorable Christopher S. Sontchi
United State Bankruptcy Judge