**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------

| | |
|---|---|
| In re: | ) |
| | ) Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., a Delaware Corp., et. al., | ) Jointly Administered |
| | ) |
| Debtors. | ) Obj. Due: October 12, 2007 at 4:00 p.m. |
| | ) Hrg Date: October 17, 2007 at 10:00 a.m. |

------------------------------------------------------------

**MOTION OF WATERFIELD SHAREHOLDER LLC AND
UNION FEDERAL BANK OF INDIANAPOLIS FOR ORDER
PURSUANT TO 11 U.S.C. § 362 MODIFYING THE AUTOMATIC STAY**

Waterfield Shareholder LLC ("Waterfield") and Union Federal Bank of Indianapolis ("Union Federal," collectively, "Movants") respectfully move (the "Motion") under 11 U.S.C. § 362(d)(1) to modify the automatic stay of 11 U.S.C. § 362(a) (the "Automatic Stay" or "Stay") to permit Waterfield to intervene and the Movants to liquidate claims, in a case pending in the United States District Court for the Southern District of New York (the "District Court") captioned *American Home Mortgage Corp. v. Union Federal Bank of Indianapolis*, Case No. 06-CV-7864 (the "Federal Action"). In support of this Motion, Movants state as follows:

**BACKGROUND**

**A.    Parties**

1.    The Debtor in this case, American Home Mortgage Corp. ("AHM" or the "Debtor"), is a corporation organized under the laws of the State of New York. AHM's principal place of business is Melville, New York. On January 12,

1

2006, AHM entered into a Stock and Mortgage Loan Purchase Agreement by and among AHM, Union Federal, and Waterfield Financial Corporation (the "Purchase Agreement" or "Agreement"), which is the subject of the Federal Action. Under the Purchase Agreement, $55 million of the purchase price paid by AHM to Union Federal was placed in escrow (the "Escrow").

2.      Union Federal is the defendant in the Federal Action, and wishes to modify the Automatic Stay to assert counterclaims against AHM in the Federal Action. At the time the parties executed the Purchase Agreement, Union Federal was a federal savings bank organized under the laws of the United States, with its principal place of business in Indianapolis, Indiana. Union Federal was the parent company for Waterfield Financial Corporation ("Waterfield Financial"), the stock of which AHM acquired pursuant to the Purchase Agreement. On October 17, 2006, Union Federal was acquired by and merged into a subsidiary of Sky Financial Group, Ltd. ("Sky"). Thereafter, on July 1, 2007, Sky merged with and into Huntington Bancshares Incorporated ("Huntington"). As a result, Union Federal's assets are now owned by Huntington.

3.      Waterfield is the successor to Union Federal as the Seller under the Purchase Agreement, and holds a claim to receive payment of the $55 million held in the Escrow. Although not a defendant in the Federal Action, if the Automatic Stay is modified, Waterfield will seek to intervene therein to protect its rights and have its claims adjudicated in the forum that is already considering the parties' dispute — and that has been asked by AHM to decide who will receive

the funds in Escrow — under the Purchase Agreement.[1] Waterfield is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Ft. Wayne, Indiana. Waterfield Shareholder was formed to, among other things, (i) dispose of any assets relating to the mortgage banking businesses that were not sold or liquidated when the merger between Union Federal and Sky closed, and (ii) assume Union Federal's interest in the Escrow that is at issue in the Federal Action.

## B.    The Federal Action

4.    On September 29, 2006, AHM filed the Federal Action against Union Federal in the District Court. AHM alleged various claims against Union Federal including breach of contract and negligent misrepresentation with regard to the Purchase Agreement. AHM seeks, *inter alia*, monetary damages, an injunction, declaratory relief, and other relief from Union Federal. AHM has described its claims as amounting to "in excess" of $29 million, and has blocked the release of the $55 million Escrow.

---

[1]    On October 23, 2006, Waterfield filed a motion in the District Court to substitute itself for Union Federal as the defendant in the Federal Action. On August 21, 2007, the District Court denied that motion because, *inter alia*, Union Federal had expressed its intent to file counterclaims even if substitution were granted. The District Court's denial of substitution does not preclude Waterfield from intervening in the Federal Action as a plaintiff, and AHM has even suggested in the past that Waterfield intervene in the Federal Action, for example in its brief in opposition to substitution, filed on November 6, 2006. (AHM's Mem. of Law in Opp. to Union Federal Bank of Indianapolis's Mot. for Substitution of Parties, at 4 (noting that facts regarding Waterfield "might entitle Waterfield Shareholder to intervene as an interested party pursuant to FRCP 24").)

5.      Union Federal and Waterfield have counterclaims and claims against AHM (collectively, the "Counterclaims") that also concern the Purchase Agreement — the same transaction already at issue in the Federal Action. Before filing the Counterclaims, however, Union Federal moved to dismiss AHM's complaint. On August 21, 2007, the District Court granted Union Federal's motion to dismiss in part and denied it in part, and dismissed AHM's negligent misrepresentation claims against Union Federal. AHM's breach of contract and other claims against Union Federal survived the motion to dismiss. The Federal Action is now set to proceed in the District Court. For the reasons explained below, Movants should be allowed to litigate the Counterclaims, which concern the same transaction as AHM's surviving claims, before the District Court, which is already considering the parties' dispute.

## C.      The Bankruptcy Proceedings

6.      On August 7, 2007 (the "Petition Date"), AHM and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). In addition to AHM, the Debtors include American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Ventures, LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

7.    The Debtors are currently operating their businesses and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

**RELIEF REQUESTED**

8.    By this Motion, Movants seek entry of an order, pursuant to 11 U.S.C. § 362(d)(1), modifying the Automatic Stay to the extent necessary so that they can liquidate the Counterclaims in the pending Federal Action. Movants, however, do not seek to modify the Automatic Stay at this time to also allow for the enforcement or execution of any settlement or judgment entered by the District Court against AHM or the other Debtors or property of the estates without further order of this Court. Rather, to the extent enforcement or execution of any settlement or judgment against AHM, the Debtors, or property of the estates becomes necessary in the future, Movants will seek additional relief from this Court at that time.

9.    This Court should modify the Automatic Stay to allow the District Court to consider all of the Counterclaims that are implicated in the Federal Action. On September 29, 2006, AHM chose the District Court as its forum and initiated the Federal Action. Union Federal quickly defended the matter, filing its Motion to Dismiss on October 23, 2006. The District Court heard argument and issued its ruling on the Motion to Dismiss on August 21, 2007. The District Court has instructed the parties to submit proposals for the future course of the Federal Action, as AHM represented to the District Court that as of August 21, 2007 there

5

was "no obstacle" to proceeding in that court. (Aug. 21, 2007 Hearing Tr. at 2, attached hereto as Exhibit A.)

10.     Under these circumstances, modifying the Automatic Stay to allow the District Court to consider and decide all of the issues implicated in the Federal Action — including Movants' Counterclaims — will promote judicial economy by allowing all claims between Union Federal, Waterfield and AHM to be efficiently adjudicated before one tribunal (the one chosen by AHM and agreed to in the Purchase Agreement) and providing for complete resolution of all claims in a single court.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (G). The statutory predicate for this Motion is 11 U.S.C. § 362(d).

12.     Venue is proper in this Court under 28 U.S.C. § 1409.

## BASIS FOR RELIEF

13.     On January 12, 2006, AHM acquired Waterfield Financial pursuant to the Purchase Agreement that is now the subject of the Federal Action. Under the Purchase Agreement, AHM purchased all of the issued and outstanding capital shares of Waterfield Financial (the "Shares") and a majority of the mortgage loans held by Union Federal (the "Purchased Assets"). During the parties' negotiations, Union Federal provided information to AHM regarding Waterfield Financial's business, and the parties engaged in negotiations regarding

6

potential pre-and post-closing purchase price adjustments. AHM's claims in the Federal Action allege, *inter alia*, breaches of representations and warranties and demand a post-closing purchase price adjustment.

14.     Under the terms of the Agreement, the parties must litigate any dispute under the Agreement in federal or state court in *New York*. Specifically, Section 11.9 of the Agreement provides that "the parties shall . . . enforce specifically the terms and provisions of this Agreement *in any court of the United States located in the State of New York* or in New York state court." (Agreement § 11.9 (emphasis added).) Further, AHM agreed that "it shall not bring any action relating to this Agreement or any of the Transactions in any court other than a Federal or state court *sitting in the State of New York*." (*Id.* (emphasis added).)

15.     On September 29, 2006, AHM filed a complaint (the "Complaint") against Union Federal in the District Court. In the Complaint, AHM asserts claims under the Agreement for breach of contract, negligent misrepresentation and declaratory and injunctive relief. A copy of the Complaint is attached hereto as Exhibit B.

16.     Like AHM's Complaint, Movants' Counterclaims arise out of the Purchase Agreement, and allege, among other things, that AHM has breached its obligations under the Agreement to repurchase certain loans from investors and to take on the defense of certain litigations as to which AHM assumed responsibility, and also breached the escrow agreement (which was expressly made part of the

Purchase Agreement). Movants intend to seek relief including, *inter alia*, compensatory damages, specific performance, and equitable relief.

## APPLICABLE AUTHORITY

### I.    Legal Standard

17.    The filing of a petition for relief under Chapter 11 of the Bankruptcy Code triggers the protections afforded by 11 U.S.C. § 362. Among those protections is a stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C § 362 (a)(1).

18.    Absent the relief sought in this Motion, Movants may be stayed from litigating some or all of their Counterclaims against AHM. *See, e.g., Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) (an "answer that asserts a counterclaim against a plaintiff who becomes a bankruptcy debtor is an 'action or proceeding against the debtor' within the meaning of § 362(a)(1), not withstanding the fact that the plaintiff initiated the lawsuit."). *See also Parker v. Bain*, 68 F.3d 1131, 1137 (9th Cir. 1995); *Atl. Trucking Express v. Lee Tire & Rubber Co.*, No. 89-4400, 1992 WL 19037, at *2 (E.D. Pa. Jan. 28, 1992) (creditor-defendant's counterclaims were stayed under § 362(a)(1) and could only be considered if it obtained proper relief from the stay).

8

19.     Section 362(d)(1) of the Bankruptcy Code provides that a party is entitled to relief from the Automatic Stay for "cause." 11 U.S.C. § 362(d)(1). Courts have recognized that where a debtor has initiated litigation, it is inequitable to prevent the defendant from asserting counterclaims against the debtor. *In re Countryside Manor, Inc.*, 188 B.R. 489, 491 (Bankr. D. Conn. 1995) (court lifted automatic stay to allow counterclaim to be asserted); *Bernstein v. IDT Corp.*, 76 B.R. 275, 280-81 (S.D.N.Y. 1987) (permitting the assertion of setoff against the debtor who initiated litigation in non-bankruptcy forum); *In re Saxon Indus.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) (it was inequitable to allow the debtor, who initiated litigation against the defendant outside of the bankruptcy court, to prevent the defendant from pursuing its counterclaims against the debtor); *In re Millsap*, 141 B.R. 732, 733 (Bankr. D. Idaho 1992) (stay should be lifted in most instances where counterclaim is compulsory); *In re Barry P. Parker's, Inc.*, 33 B.R. 115, 118 (M.D. Tenn. 1983) (creditor granted relief to file counterclaim in state court action initiated by debtor); *In re Ideal Roofing & Sheet Metal Works, Inc.*, 9 B.R. 2, 3 (Bankr. S.D. Fla. 1980) (where debtor brought non-bankruptcy court action, stay was modified to permit creditor to prosecute counterclaim in that action).

20.     Although there is no rigid test for determining whether sufficient cause exists to lift the Automatic Stay to permit litigation to proceed in another forum, courts have adopted certain factors to weigh when considering such a request. Among the criteria are (i) whether any great prejudice to either the

bankrupt estate or the debtor will result from continuing the civil suit; (ii) whether the hardship to the non-bankrupt party of maintaining the Stay considerably outweighs the hardship to the debtor; and (iii) whether the creditor will prevail on the merits. *In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007); *In re Continental Airlines, Inc.*, 152 B.R. 420, 425-26 (D. Del. 1993).[2]

21.    In analyzing these factors, a court should scrutinize the equities where a debtor first institutes a lawsuit and then invokes the protection of the Automatic Stay as to defenses and counterclaims asserted by the non-debtor defendant. *See Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1168 (2d Cir. 1979) (reversing district court's injunction against creditor's counterclaim in antitrust proceeding brought by a debtor). Although the initial burden of demonstrating "cause" lies with the moving party, once established, it must be rebutted by the

---

[2]    In addition to this three-part analysis, courts may take into account other considerations, such as any combination of the twelve factors adopted by the Second Circuit. *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2; *In re Countryside Manor, Inc.*, 188 B.R. at 491 n.1) (stating that the twelve factors a court may consider in determining whether to lift an Automatic Stay are the following: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the Stay on the parties and the balance of harms (*citing In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

party opposing such relief. *In the Matter of Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

**II.    Cause exists to grant relief from the Automatic Stay to allow Movants to prosecute the Counterclaims.**

22.    An analysis of the relevant factors described above establishes cause for relief from the Automatic Stay to allow the Federal Action to proceed and to allow Movants to liquidate their claims, including the Counterclaims, in that action.

**A.    AHM and the Debtors will not be prejudiced if Movants are permitted to pursue the Counterclaims in the Federal Action.**

23.    AHM will not suffer great prejudice if this Court modifies the Automatic Stay to allow the Federal Action to proceed and for Movants to file the Counterclaims. AHM chose the District Court in the first instance and thus was ready to proceed in that forum. Indeed, AHM was required to proceed in the District Court because, under the Purchase Agreement, AHM contractually agreed that *only* a court in New York would be a convenient and proper forum for an action concerning the Agreement. (Agreement § 11.9.) Moreover, AHM is headquartered in New York state, and cannot contend that it will be prejudiced by honoring the Agreement.

24.    AHM and the Debtors also will not be prejudiced by liquidating claims relating to the Agreement in the Federal Action. These claims, including Movants' Counterclaims, will have to be resolved as part of the overall bankruptcy process. The Debtors have not contended that resolution of claims

arising under the Agreement should be handled in any way other than in continued litigation. By proceeding fully in the Federal Action, AHM's claims against Union Federal can be liquidated along with Movants' Counterclaims. Absent relief from the Stay, however, AHM could proceed with its claims in the Federal Action while Movants would be forced to file proofs of claim (based on facts that will be addressed in the Federal Action), await a possible objection by AHM and then subsequently proceed in claims resolution litigation that is parallel to the Federal Action in the District Court. Such a result would be inefficient, a waste of judicial resources, and contrary to the authorities cited *supra*. In addition, such a result would likely result in substantial delay, and create a risk of inconsistent results from different tribunals. At a minimum, the parallel proceedings that would result if the Stay is not modified would force the District Court and this Court to spend needless time and energy monitoring the proceedings of the other regarding the parties' disputes.

25.    Liquidating the Counterclaims in the Federal Action will not interfere with the restructuring proceedings in this Court. AHM is committed to the Federal Action, having initiated it prior to the Petition Date and aggressively litigating the matter in New York. These facts support liquidating all claims between AHM and the Movants in the Federal Action. *See In the Matter of Rexene Prods.,* 141 B.R. at 576 (recognizing that the legislative history of § 362(d)(1) emphasizes that it "will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the

bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere" (*citing* H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977)).

26.    Finally, modifying the Automatic Stay to allow all claims relating to the Purchase Agreement to be resolved in the District Court would promote judicial economy. The District Court has handled the Federal Action for nearly a year. The District Court has devoted extensive time and effort to the Federal Action already, including conducting a hearing and argument on the Motion to Dismiss and issuing a lengthy ruling. On August 21, 2007, after counsel for AHM represented to the District Court that these Bankruptcy Proceedings do not pose an obstacle to proceeding in the Federal Action, the District Court instructed the parties to meet and confer, and make proposals regarding the future course of the Federal Action. Thus, the District Court, which is already familiar with the Purchase Agreement and some of the facts concerning the parties' disputes, appears prepared to move forward in the Federal Action, in whatever form it takes. It only makes sense that the Federal Action should concern *all* of the disputes between the parties arising out of or concerning the Purchase Agreement.

27.    Movants are prepared to proceed with their Counterclaims in the Federal Action, and the District Court appears prepared to move forward on the Federal Action. Pursuing the Complaint and the Counterclaims simultaneously in one forum would preserve, rather than waste, judicial resources, and promoting such an efficient result weighs heavily in favor of granting relief from the

13

Automatic Stay. *See In the Matter of Rexene Prods.*, 141 B.R. at 577 ("Judicial economy dictates a prompt resolution in a single forum and with the same judge who was originally assigned to the case.").

**B.      The balance of hardships favors modifying the Automatic Stay.**

28.      The hardship to Movants of maintaining the Stay outweighs the hardship — if any — to AHM of allowing the Counterclaims to proceed in same forum as AHM's claims. Sooner or later, AHM will be required to respond to the claims of Waterfield and Union Federal under the Purchase Agreement. Doing so in the course of litigation that AHM already initiated, in the forum that AHM agreed to use, cannot be an unforeseen or prejudicial result for AHM. On the other hand, for this Court to permit AHM to prosecute claims against Union Federal relating to the Purchase Agreement, while at the same time barring Movants from pursuing the Counterclaims relating to the Agreement, is fundamentally unfair and prejudicial. It would also deny Union Federal an opportunity to fully contest the allegations AHM has made. Finally, it would force both parties to incur the higher costs of separate actions to protect their respective rights.

**C.      Movants have a high likelihood of success in the Federal Action and on the Counterclaims.**

29.      The final criterion for modifying the Automatic Stay is whether Movants have a probability of success on the merits of the Counterclaims. Even a slight probability of success on the merits may be sufficient to support lifting the Automatic Stay. *In re Continental Airlines*, 152 B.R. at 425-26.

14

30.     Movants believe they have strong Counterclaims and will demonstrate their merits to the Court if necessary. Given that the other criteria for modification strongly support Movants' position, Movants do not believe that this Court need decide this issue in order to determine whether to grant the relief requested in the Motion.

## CONCLUSION

Cause exists to grant relief from the Automatic Stay in order to allow Movants to pursue the Counterclaims in the Federal Action.

A proposed order is attached as Exhibit C.

Dated: September 21, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

/s/ Eric M. Davis
Eric M. Davis (I.D. No. 3621)
Jason M. Liberi (I.D. No. 4425)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000 (telephone)
(302) 651-3001 (facsimile)

- and -

Eric J. Gorman, Esq.
Felicia G. Perlman, Esq.
Justin L. Heather, Esq.
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700 (telephone)
(312) 407-0411 (facsimile)

*Attorneys for Waterfield Shareholder LLC*
*& Union Federal Bank of Indianapolis*

15