# EXHIBIT B



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN HOME MORTGAGE CORP.,

                                    Plaintiff,

        -against-

UNION FEDERAL BANK OF INDIANAPOLIS

                                    Defendant.

**06 CV 7864**

Index No.:

**COMPLAINT**

RECEIVED
SEP 2 9 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff American Home Mortgage Corp. ("AHM"), by and through its counsel, Cadwalader, Wickersham & Taft LLP, as and for its Complaint against Defendant Union Federal Bank of Indianapolis ("Union Federal"), alleges as follows:

### INTRODUCTION

1.       This is an action seeking declaratory relief and an injunction ordering Union Federal to submit to PricewaterhouseCoopers LLC ("PwC") for determination a disagreement among the parties concerning a post-closing purchase price adjustment claim by AHM pursuant to a certain Stock and Mortgage Loan Purchase Agreement (the "Purchase Agreement") by and among AHM, Union Federal and Waterfield Financial Corporation ("Waterfield") dated as of January 12, 2006.  AHM also seeks damages arising from Union Federal's breach of certain provisions of the Purchase Agreement and negligent misrepresentations made to AHM by Union Federal in connection with the Purchase Agreement. A true and correct copy of the Purchase Agreement is annexed hereto as Exhibit A.

2.       Through the Purchase Agreement, AHM purchased 100 percent of the stock of Waterfield from Union Federal and purchased certain other assets and assumed certain liabilities of Union Federal. Ex. A, Sections 2.1, 2.2.

3.    Waterfield, which was acquired by AHM pursuant to the Purchase Agreement, is in the business of originating residential mortgages.  As is common for transactions like the one at issue here, because complete information regarding the value of the purchased assets was not available prior to the date the purchased assets were transferred pursuant to the Purchase Agreement (the "Closing Date"), the Purchase Agreement provided for the calculation of the purchase price using a formula set forth in the Purchase Agreement.  The parties agreed to calculate a preliminary purchase price at the Closing Date using the purchase price calculation formula and information available at the Closing Date, and to subsequently determine the definitive purchase price subsequent to the Closing Date by applying the purchase price calculation formula to more complete and accurate information when it became available after the Closing Date.  In that regard, the preliminary purchase price was never considered the actual purchase price; rather, it was only a proxy for the definitive purchase price that would be calculated after the Closing.

4.    The purchase price was to be calculated by determining the net book value of the purchased assets and then discounting that amount according to certain formulae set forth in Schedule 1.1 to the Purchase Agreement.  A copy of the Schedule 1.1 provided to AHM by Union Federal at the Closing is annexed hereto as Exhibit B.  Schedule 1.1 sets forth certain categories of loans held by Waterfield prior to the Closing Date, and provides that for purposes of calculating the purchase price, discounts were to be applied to the purchase price representing the percentages set forth in Schedule 1.1 of the outstanding principle balance of each such loan.

5.    Union Federal was required to provide the best information available regarding the categories of loans set forth in Schedule 1.1 at or before the Closing Date and a preliminary purchase price was to be calculated based on that information.  However, because complete and accurate information regarding those loans either would not be available at the

Closing Date, was in the possession of third parties or would otherwise not be available to AHM until after the Closing Date, the parties agreed, in Section 2.4(a) of the Purchase Agreement, that they would calculate the definitive purchase price based on revised and/or additional information obtained by AHM after the Closing Date. Exhibit A, Section 2.4(a). In the event that Union Federal and AHM disagree about the amount of the post-closing purchase price adjustment, Section 2.4(b) of the Purchase Agreement provides that after a mandatory negotiation period, the parties must submit any unresolved issues to PwC for review and determination. Ex. A, Section 2.4(b).

6.      After the Closing Date, as provided for in the Purchase Agreement, AHM recalculated the purchase price based on information that became available to it only after the Closing Date, using the purchase price calculation formula set forth in the Purchase Agreement, including Schedule 1.1 to the Purchase Agreement, and submitted a claim to Union Federal for the amount of the purchase price adjustment required by the updated calculation. Union Federal has rejected AHM's claim and has refused to participate in the post-closing purchase price adjustment process provided for in the Purchase Agreement. Accordingly, AHM seeks a declaration that Union Federal is required to participate in the post-closing purchase price adjustment process and an injunction ordering Union Federal to do so or, in the alternative, damages in an amount to be determined at trial, but no less than $29,000,000.

7.      In addition, Union Federal failed to provide certain information required under the Purchase Agreement, and provided certain other false and misleading information to AHM at or prior to the Closing Date in breach of its obligations under the Purchase Agreement, which resulted in AHM paying a higher purchase price than it would have if Union Federal provided complete and accurate information as required by the Purchase Agreement.

Accordingly, AHM seeks damages based on Union Federal's breaches of its contractual obligations.

## THE PARTIES

8.    Plaintiff American Home Mortgage Corp. is a corporation organized under the laws of the state of New York with its principal place of business at 538 Broadhollow Road, Melville, New York. Plaintiff American Home Mortgage Corp. is one of the nation's leading mortgage lenders and one of the top 20 national mortgage lenders, with coast-to-coast operations and the ability to originate loans in all 50 states and the District of Columbia.

9.    Upon information and belief, defendant Union Federal Bank of Indianapolis is a federal stock savings bank organized under the laws of the United States, with its principal place of business at 45 North Pennsylvania Street, Indianapolis, Indiana.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a)(2) and 2201. Upon information and belief, the parties are citizens of different states. This action seeks damages in an amount to be determined at trial, but no less than $29,000,000, exclusive of interest and costs. The parties also consented to the jurisdiction of this Court in Section 11.9 of the Purchase Agreement. Ex. A, Section 11.9.

11.    Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) and Section 11.9 of the Purchase Agreement. A substantial part of the events giving rise to the claims alleged herein occurred in this district, and the parties consented to venue in this Court in Section 11.9 of the Purchase Agreement. Ex. A, Section 11.9.

## FACTUAL ALLEGATIONS

12.    Prior to the Closing Date, Union Federal owned all of the stock of Waterfield. Ex. A. p. 1. Under the terms of the Purchase Agreement, AHM purchased 100 percent of the stock of Waterfield from Union Federal and purchased certain other assets, and assumed certain liabilities from Union Federal. Ex. A, Sections 2.1, 2.2. The Purchase Agreement was executed by AHM and Union Federal as of the Closing Date. Ex. A, p. 1.

The Purchase Agreement's Purchase Price Provisions

13.    In the ordinary course of its business prior to the Closing Date, Waterfield sold mortgage loans to other entities, including EMC Mortgage Corporation ("EMC"). The terms of those sales permitted the purchasers to tender purchased loans to Union Federal for repurchase under certain conditions, including conditions relating to payment delinquencies by the borrowers.

14.    Under the terms of the Purchase Agreement, AHM assumed certain repurchase obligations of Union Federal. Certain of those repurchase obligations were triggered by certain conditions existing at the Closing Date but were not identifiable until after the Closing Date.

15.    Under the terms of the Purchase Agreement, a preliminary purchase price was to be calculated at the Closing Date based on information provided by Union Federal. See Ex. A, Section 2.3; Schedule 1.1. Pursuant to the Purchase Agreement, the purchase price was to be calculated by reducing the net book value of the purchased assets by, among other reductions, amounts equal to (i) 35% of the unpaid principal balance of all loans that were "subject to repurchase for delinquency," (2) an amount equal to 10% of the unpaid principal balance of all loans that were "subject to repurchase for other reasons (excluding Appraisal Fraud) [as defined in the Purchase Agreement]" and (3) various other adjustments set forth in Schedule 1.1. Id.

However, complete information regarding the status of loans subject to repurchase and other categories of loans for which reductions were to be made would not be available until well after the Closing Date.

16.    The Purchase Agreement required the parties to calculate the definitive purchase price after the Closing Date based on, among other items, loans that were determined to have been "subject to repurchase" as of the Closing Date based on AHM's post-Closing review of information that would only become available to it after the Closing Date. Ex. A, Section 2.4. The definitive post-closing purchase price was to be determined using the same formulae, contained in Schedule 1.1, used to determine the preliminary purchase price, but was to be applied to the more accurate post-closing information. Ex. A, Section 2.4(a), Schedule 1.1. Section 2.4(a) specifically provides that information from EMC should be used by AHM to determine the definitive post-closing purchase price. Id.

17.    The term "subject to repurchase," as used in the Purchase Agreement means that the purchaser of the loan(s) in question had the right to demand repurchase of the loan(s) under the terms of its agreements with Union Federal as of the Closing Date, regardless whether the loan is ultimately repurchased. Upon information and belief, Union Federal does not agree with this definition.

18.    Section 2.4(b) of the Purchase Agreement provides for the possibility of a disagreement over the definitive post-closing purchase price. Section 2.4(b) provides that in the event of a disagreement, the parties must attempt to informally resolve the disagreement for a period of 10 days. Ex. A, Section 2.4(b). If the parties cannot resolve their disagreement, any unresolved items are to be submitted to PwC for valuation; PwC's determination is final and binding on AHM and Union Federal.

-6-

<u>Union Federal's Breach of The Purchase Price Adjustment Provisions</u>

19.    Union Federal did not list *any* loans as subject to repurchase for delinquency on the Schedule 1.1 provided to AHM at the Closing. In this regard, Union Federal made the affirmative representation to AHM, which was false and misleading, that no loans were subject to repurchase for delinquency. Consequently, the net book value of the purchased assets was not adjusted according to the purchase price calculation formula applicable to those loans in Schedule 1.1. <u>See</u> Ex. A, Schedule 1.1. Union Federal listed loans with an unpaid principal balance of $17,796,440 as "subject to repurchase for other reasons (excluding Appraisal Fraud)" on the Schedule 1.1 provided to AHM at the Closing, and a reduction was made to the net book value of the purchased assets in the amount of $1,779,644 at the Closing on the basis of those loans. <u>Id.</u>

20.    After the Closing Date, AHM sought the information necessary to verify the accuracy of Schedule 1.1 and calculate the definitive post-closing purchase price from the third parties in possession of the relevant information. The timing of the provision of this information was beyond AHM's control, however, AHM diligently sought to obtain the information as quickly as possible. Union Federal was aware of and was kept apprised of AHM's efforts to obtain the information necessary to determine the accuracy and completeness of the information provided by Union Federal in Schedule 1.1, and to calculate the definitive post-closing purchase price from the third parties in possession of the information, including EMC.

21.    When information regarding loans subject to repurchase was provided to AHM by EMC and other third-parties, AHM discovered that the information provided by Union Federal in Schedule 1.1 regarding this and other categories of loans for which reductions were required under Schedule 1.1, was incomplete, false and misleading. For example, the

information obtained from EMC and other entities indicated that loans with an outstanding principal balance of approximately $78 million were subject to repurchase for delinquency as of the Closing Date, but not identified by Union Federal. Accordingly, AHM was entitled to a post-closing purchase price adjustment equal to 35% of that amount. In addition, AHM identified other conditions indicating that it was entitled to a post-closing purchase price adjustment of approximately $32.5 million.

22. Upon discovering that Union Federal had provided inaccurate and/or incomplete information at or prior to the Closing, including information required by Schedule 1.1, AHM submitted a claim pursuant to Section 2.4(a) of the Purchase Agreement for a post-closing purchase price adjustment based on the information discovered after the Closing Date. The purchase price adjustment requested by AHM totaled approximately $29,000,000. Union Federal disagreed with AHM's post-closing purchase price adjustment claim and refused to honor it.

23. Pursuant to Section 2.4(b) of the Purchase Agreement, AHM has attempted to resolve the disagreement by submitting the dispute to PwC as required by the Purchase Agreement. However, although AHM and Union Federal entered several agreements tolling the submission of the disagreement to PwC to allow additional time to reach an informal resolution, and AHM has submitted additional information to Union Federal in support of its post-closing purchase price adjustment claim, Union Federal has rejected AHM's claim, has refused to submit AHM's post-closing purchase price adjustment claim to PwC for valuation and has refused to obtain and/or provide to AHM information necessary to the determination of the purchase price adjustment dispute.

<u>Union Federal's Representations and Warranties to AHM</u>

24.    Among its other provisions, the Purchase Agreement contained the following representations and warranties by Union Federal:

a)    Through Section 4.7(a) of the Purchase Agreement, Union Federal warranted that Waterfield's pre-closing financial statements were prepared in accordance with GAAP and fairly presented the results of Waterfield's operations and its financial condition. Ex. A, Section 4.7(a).

b)    Through Section 4.7(b) of the Purchase Agreement, Union Federal warranted that Waterfield's "Pro Forma Financial Statements" (as defined in the Purchase Agreement) accurately reflected Waterfield's financial condition. Ex. A, Section 4.7(b).

c)    Through Section 4.8 of the Purchase Agreement Union Federal warranted that Waterfield's pre-closing books and records were kept in accordance with sound business principles. Ex. A, Section 4.8.

<u>Union Federal's Breach Of Certain Representations and Warranties</u>

25.    Prior to the Closing Date, Union Federal provided AHM with historical financial statements as part of AHM's pre-closing due diligence.

26.    Upon information and belief, Union Federal was aware that AHM would reasonably rely on Waterfield's historical financial statements, and its warranty that those historical financial statements complied with GAAP and fairly presented the results of Waterfield's operations and its financial condition.

27.    Upon information and belief, reserves for loans subject to repurchase, including loans subject to repurchase for delinquency, should have been reflected in Waterfield's historical financial statements in order to comply with GAAP.

28.    Upon information and belief, when Union Federal provided AHM with Waterfield's historical financial statements, Union Federal was aware that Waterfield's historical financial statements did not comply with GAAP or fairly present the results of Waterfield's operations and its financial condition because, among other reasons, they did not include

reserves for various loans that were subject to repurchase, including loans subject to repurchase for delinquency.

29.     Prior to the Closing Date, Union Federal provided AHM with Pro Forma Financial Statements as part of AHM's pre-closing due diligence.

30.     Upon information and belief, Union Federal was aware that AHM would reasonably rely on Waterfield's Pro Forma Financial Statements, and its warranty that the Pro Forma Financial Statements accurately reflected Waterfield's financial condition.

31.     Upon information and belief, reserves for loans subject to repurchase, including loans subject to repurchase for delinquency, should have been reflected in Waterfield's Pro Forma Financial Statements in order to accurately reflect Waterfield's financial condition.

32.     Upon information and belief, when Union Federal provided AHM with the Pro Forma Financial Statements, Union Federal was aware that the Pro Forma Financial Statements did not accurately reflect Waterfield's financial condition because, among other reasons, they did not include reserves for various loans that were subject to repurchase, including loans subject to repurchase for delinquency.

33.     Prior to the Closing Date, Union Federal granted AHM access to Waterfield's books and records as part of AHM's pre-closing due diligence.

34.     Upon information and belief, Union Federal was aware that AHM would reasonably rely on Waterfield's books and records, and its warranty that Waterfield's books and records were kept in accordance with sound business principles.

35.     Upon information and belief, sound business principles required that loans subject to repurchase, including loans subject to repurchase for delinquency, should have been accurately identified on Waterfield's books and records prior to the Closing.

36.    Upon information and belief, when Union Federal granted AHM access to Waterfield's books and records Union Federal was aware that the books and records were not kept in accordance with sound business principles because, among other reasons, they failed to identify various loans that were subject to repurchase, including loans subject to repurchase for delinquency.

## COUNT I
## (FOR DECLARATORY RELIEF)

37.    AHM repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

38.    The Purchase Agreement is a valid contract between AHM and Union Federal and was supported by adequate consideration.

39.    AHM fully performed all of its obligations under the Purchase Agreement.

40.    Section 2.4 of the Purchase Agreement provided for

(a)    the adjustment of the preliminary purchase price calculated at the Closing Date if AHM discovered information after the Closing Date that differed from the information used to calculate the preliminary purchase price paid at the Closing; and

(b)    the submission of any disagreement regarding the valuation of any post-closing purchase price adjustment request to PwC for determination.

41.    AHM submitted a post-closing purchase price adjustment request to Union Federal.

42.    Union Federal disagreed with AHM's post-closing purchase price adjustment request, and refused to honor the request.

43.    Union Federal has refused to submit its disagreement with AHM's post-closing purchase price adjustment request to PwC for valuation and has refused to obtain and

provide to AHM information necessary to the determination of the purchase price adjustment dispute.

44.    Union Federal's refusal to submit AHM's post-closing purchase price adjustment request to PwC for valuation constitutes a material breach Section 2.4 of the Purchase Agreement.

45.    Union Federal's refusal to obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute constitutes a material breach Section 2.4 of the Purchase Agreement.

46.    AHM has incurred substantial damages as a result of Union Federal's breaches of its obligations under Section 2.4 the Purchase Agreement.

47.    There is an actual controversy between the parties concerning whether Union Federal is required to submit AHM's post-closing purchase price adjustment request to PwC for valuation and obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute.

48.    As a result of the foregoing, AHM seeks an order declaring that Union Federal is required to submit AHM's post-closing purchase price adjustment claim to PwC for valuation and to obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute.

## COUNT II
## (FOR INJUNCTIVE RELIEF)

49.    AHM repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

50.    The Purchase Agreement is a valid contract between AHM and Union Federal and was supported by adequate consideration.

51.     AHM fully performed all of its obligations under the Purchase Agreement.

52.     Section 2.4 of the Purchase Agreement provided for

(a)     the adjustment of the preliminary purchase price calculated at the Closing Date if AHM discovered information after the Closing Date that differed from the information used to calculate the preliminary purchase price paid at the Closing; and

(b)     the submission of any disagreement regarding the valuation of any post-closing purchase price adjustment request to PwC for determination.

53.     AHM submitted a post-closing purchase price adjustment request to Union Federal.

54.     Union Federal disagreed with AHM's post-closing purchase price adjustment request, and refused to honor the request.

55.     Union Federal has refused to submit its disagreement with AHM's post-closing purchase price adjustment request to PwC for valuation and has refused to obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute.

56.     Union Federal's refusal to submit AHM's post-closing purchase price adjustment request to PwC for valuation constitutes a material breach Section 2.4 of the Purchase Agreement.

57.     Union Federal's refusal to obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute constitutes a material breach Section 2.4 of the Purchase Agreement.

58.     AHM has incurred substantial damages as a result of Union Federal's breaches of its obligations under Section 2.4 the Purchase Agreement.

-13-

59.    As a result of the foregoing, AHM seeks an order requiring Union Federal to submit its disagreement with AHM's post-closing purchase price adjustment claim to PwC for valuation and to obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute constitutes.

## COUNT III
### (FOR DECLARATORY RELIEF)

60.    AHM repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

61.    The Purchase Agreement is a valid contract between AHM and Union Federal and was supported by adequate consideration.

62.    AHM fully performed all of its obligations under the Purchase Agreement.

63.    Schedule 1.1 provides for calculation of the definitive purchase price by applying certain discount percentages to the total outstanding principle balances of certain categories of loans, including loans "subject to repurchase" as of the Closing Date.

64.    The term "subject to repurchase," as used in the Purchase Agreement means that the purchaser of the loan(s) in question had the right to demand repurchase of the loan under the terms of its agreements with Union Federal as of the Closing Date, regardless whether the loan is ultimately repurchased. Upon information and belief, Union Federal does not agree with this definition.

65.    There is an actual controversy between the parties concerning the meaning of the term "subject to repurchase" as used in the Purchase Agreement.

66.    As a result of the foregoing, AHM seeks an order declaring that the term "subject to repurchase," as used in the Purchase Agreement means that the purchaser of the loan(s) in question had the right to demand repurchase of the loan under the terms of its

-14-

agreements with Union Federal as of the Closing Date, regardless whether the loan is ultimately repurchased.

## COUNT IV
## (FOR BREACH OF CONTRACT)

67.    AHM repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

68.    The Purchase Agreement is a valid contract between AHM and Union Federal and was supported by adequate consideration.

69.    Union Federal was responsible for ensuring Waterfield's pre-closing compliance with the Purchase Agreement.

70.    AHM fully performed all of its obligations under the Purchase Agreement.

71.    At or before the Closing, Union Federal was required to provide AHM with accurate information regarding loans subject to repurchase and other categories of loans to which discount percentages were to be applied according to formulae set forth in Schedule 1.1 when calculating the preliminary purchase price at the Closing Date.

72.    Upon information and belief the Schedule 1.1 provided to AHM at the Closing was false and misleading because it did not accurately identify all loans subject to repurchase or other categories of loans for which purchase price adjustments were required in Schedule 1.1.

73.    The failure of Schedule 1.1 to identify all loans subject to repurchase or other categories of loans to which purchase price reduction discount formulae were to be applied constituted a material breach by Union Federal of the Purchase Agreement.

74.    As a result of Union Federal's breach of the Purchase Agreement, AHM paid a purchase price in excess of the purchase price that AHM otherwise would have agreed to in the Purchase Agreement.

75.    Union Federal has refused to reimburse all losses as incurred by AHM as a result of Union Federal's breach of the Purchase Agreement.

76.    As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, but not less than $29,000,000, along with interest thereon.

## COUNT V
## (FOR BREACH OF CONTRACT)

77.    AHM repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

78.    The Purchase Agreement is a valid contract between AHM and Union Federal and was supported by adequate consideration.

79.    Union Federal was responsible for ensuring Waterfield's pre-closing compliance with the Purchase Agreement.

80.    AHM fully performed all of its obligations under the Purchase Agreement.

81.    Through Section 4.7(a) of the Purchase Agreement Union Federal represented and warranted that Waterfield's pre-closing financial statements were prepared in accordance with GAAP and fairly represented the results of Waterfield's operations and its financial condition.

82.    Upon information and belief Waterfield's pre-closing financial statements were not kept in accordance with GAAP and did not fairly represent the results of Waterfield's operations and its financial condition because they did not contain reserves for certain loans subject to repurchase, including loans subject to repurchase for delinquency.

-16-

83.    The failure of Waterfield's pre-closing financial statements to comply with GAAP constituted a material breach by Union Federal of its representations and warranties in Section 4.7(a) of the Purchase Agreement.

84.    As a result of Union Federal's breach of Union Federal's representations and warranties under Section 4.7(a) of the Purchase Agreement, AHM paid a purchase price in excess of the purchase price that AHM otherwise would have agreed to in the Purchase Agreement.

85.    Section 10.2(a) of the Purchase Agreement, requires that Union Federal compensate AHM for all losses resulting from Union Federal's breach of any representation, warranty, covenant or obligation contained in the Purchase Agreement.

86.    Union Federal has refused to reimburse all losses as incurred by AHM as a result of Union Federal's breach of its representations and warranties under Section 4.7(a) of the Purchase Agreement.

87.    As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, along with interest thereon.

## COUNT VI
## (FOR BREACH OF CONTRACT)

88.    AHM repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

89.    The Purchase Agreement is a valid contract between AHM and Union Federal and was supported by adequate consideration.

90.    Union Federal was responsible for ensuring Waterfield's pre-closing compliance with the Purchase Agreement.

91.    AHM fully performed all of its obligations under the Purchase Agreement.

-17-

92.    Through Section 4.7(b) of the Purchase Agreement Union Federal represented and warranted that the pro forma financial statements for Waterfield provided to AHM pursuant to the Purchase Agreement accurately reflected Waterfield's financial condition.

93.    Upon information and belief the pro forma financial statements provided to AHM by Union Federal pursuant to the Purchase Agreement did not accurately reflect Waterfield's financial condition because they did not contain reserves for certain loans subject to repurchase, including loans subject to repurchase for delinquency.

94.    The failure of Waterfield's pro forma financial statements to accurately reflect Waterfield's financial condition constituted a material breach of Union Federal's representations and warranties in Section 4.7(b) of the Purchase Agreement.

95.    As a result of Union Federal's breach of its representations and warranties under Section 4.7(b) of the Purchase Agreement, AHM paid a purchase price in excess of the purchase price that AHM otherwise would have agreed to in the Purchase Agreement.

96.    Section 10.2(a) of the Purchase Agreement, requires that Union Federal compensate AHM for all losses resulting from Union Federal's breach of any representation, warranty, covenant or obligation contained in the Purchase Agreement.

97.    Union Federal has refused to reimburse all losses as incurred by AHM in connection with Union Federal's breach of Section 4.7(b) of the Purchase Agreement.

98.    As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, along with interest thereon.

## COUNT VII
## (FOR BREACH OF CONTRACT)

99.    AHM repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

100. The Purchase Agreement is a valid contract between AHM and Union Federal and was supported by adequate consideration.

101. Union Federal was responsible for ensuring Waterfield's pre-closing compliance with the Purchase Agreement.

102. AHM fully performed all of its obligations under the Purchase Agreement.

103. Through Section 4.8 of the Purchase Agreement Union Federal represented and warranted that Waterfield's pre-closing books and records were kept in accordance with sound business principles.

104. Upon information and belief, Waterfield's books and records were not kept in accordance with sound business principles because they did not identify certain loans subject to repurchase, including loans subject to repurchase for delinquency.

105. The failure of Waterfield's pre-closing books and records to properly identify certain loans subject to repurchase constituted a material breach by Union Federal of its representations and warranties under of Section 4.8 of the Purchase Agreement.

106. As a result of Union Federal's breach of its representations and warranties under Section 4.8 of the Purchase Agreement, AHM paid a purchase price in excess of the purchase price that AHM otherwise would have agreed to in the Purchase Agreement.

107. Section 10.2(a) of the Purchase Agreement, requires that Union Federal compensate AHM for all losses resulting from a breach of any of Union Federal's representations, warranties, covenants or obligations contained in the Purchase Agreement.

108. Union Federal has refused to compensate AHM for its losses caused by Union Federal's breach of Section 4.8 of the Purchase Agreement.

109. As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, along with interest thereon.

## COUNT VIII
## (NEGLIGENT MISREPRESENTATION)

110.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

111.    Union Federal had a duty to AHM under the Purchase Agreement to identify each mortgage loan that was subject to repurchase and other categories of loans for which purchase price adjustments were required in Schedule 1.1 of the Purchase Agreement.

112.    Union Federal was aware that AHM would inspect and rely on the information provided in Schedule 1.1.

113.    At the time Union Federal provided Schedule 1.1 to AHM, it knew or should have known that the information included in Schedule 1.1 was false, misleading and materially inaccurate.

114.    AHM reasonably relied on the information contained in Schedule 1.1.

115.    AHM suffered damages as a result of its reliance on Union Federal's misrepresentations in Schedule 1.1.

116.    As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, but not less than $29,000,000, along with interest thereon.

## COUNT IX
## (NEGLIGENT MISREPRESENTATION)

117.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

118.    Union Federal had a duty to AHM under the Purchase Agreement to provide AHM with historical financial statements for Waterfield that were prepared in accordance with GAAP and fairly presented the results of Waterfield's operations and its financial position.

119. Union Federal was aware that AHM would inspect and rely on the information contained in Waterfield's historical financial statements.

120. At the time Union Federal provided Waterfield's historical financial statements to AHM, it knew or should have known that the information contained in Waterfield's historical financial statements was false, misleading and materially inaccurate.

121. AHM reasonably relied on the information contained in Waterfield's historical financial statements.

122. AHM suffered damages as a result of its reliance on the information contained in Waterfield's historical financial statements.

123. As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, along with interest thereon.

## COUNT X
## (NEGLIGENT MISREPRESENTATION)

124. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

125. Union Federal had a duty to AHM under the Purchase Agreement to provide AHM with Pro Forma Financial Statements that accurately reflected Waterfield's financial condition.

126. Union Federal was aware that AHM would inspect and rely on the information contained in Waterfield's Pro Forma Financial Statements.

127. At the time Union Federal provided Waterfield's Pro Forma Financial Statements to AHM, it knew or should have known that the information contained in Waterfield's Pro Forma Financial Statements was false, misleading and materially inaccurate.

128.    AHM reasonably relied on the information contained in Waterfield's Pro Forma Financial Statements.

129.    AHM suffered damages as a result of its reliance on the information contained in Waterfield's Pro Forma Financial Statements.

130.    As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, along with interest thereon.

## COUNT XI
## (NEGLIGENT MISREPRESENTATION)

131.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

132.    Union Federal had a duty to AHM under the Purchase Agreement to provide AHM with books and records of Waterfield that were prepared in accordance with sound business principles.

133.    Union Federal was aware that AHM would inspect and rely on the information contained in Waterfield's books and records.

134.    At the time Union Federal provided Waterfield's books and records to AHM, it knew or should have known that the information contained in Waterfield's books and records was false, misleading and materially inaccurate.

135.    AHM reasonably relied on the information contained in Waterfield's books and records.

136.    AHM suffered damages as a result of its reliance on the information contained in Waterfield's books and records.

137.    As a result of the foregoing, AHM requests that it be awarded damages in an amount to be determined at trial, along with interest thereon.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff AHM prays that the Court enter a judgment:

(a)    declaring that Union Federal is required to submit its disagreement with AHM's post-closing purchase price adjustment request to PwC for valuation;

(b)    declaring that Union Federal is required to obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute; and

(c)    ordering Union Federal to submit its disagreement with AHM's post-closing purchase price adjustment request to PwC for valuation; and

(d)    ordering Union Federal to obtain and provide to AHM information necessary to the determination of the purchase price adjustment dispute; and

(e)    declaring that the term "subject to repurchase," as used in the Purchase Agreement means that the purchaser of the loan(s) in question had the right to demand repurchase of the loan under the terms of its agreements with Union Federal as of the Closing Date; and

(f)    awarding AHM damages representing the purchase price adjustment provided for in the Purchase Agreement in an amount to be determined at trial, but not less than $29,000,000, along with interest thereon; and

(g)    awarding AHM damages resulting from Union Federal's breaches of representations and warranties made by Union Federal in the Purchase Agreement in an amount to be determined at trial, along with interest thereon; and

(h)    granting such other and further relief as the Court may deem just and proper.

Dated:    September 29, 2006
          New York, New York

                              CADWALADER, WICKERSHAM & TAFT LLP

                              By:_____
                                  Gregory A. Markel (GM-5626)
                                  Douglas I. Koff (DK-2521)
                                  Gregory Zimmer (GZ-3023)

                              One World Financial Center
                              New York, New York 10281
                              (212) 504-6000

                              *Attorneys for Plaintiff American Home*
                              *Mortgage Corp.*