✓ FILED ___ LODGED
___ RECEIVED ___ COPY

AUG 1 0 2007

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ E. DEPUTY

Richard W. Horvath
550 S. Crismon Road
Mesa, AZ. 85208
480-292-7582
*Pro se*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Richard W. Horvath | ) | **CASE NO.** |
| Plaintiff, | ) | |
| | ) | **CIV '07 1544   PHX EHC** |
| Vs | ) | |
| American Home Mortgage Corp. | ) | |
| Construction Lending | ) | **COMPLAINT** |
| And | ) | |
| American Home Mortgage Corp. | ) | |
| Servicing | ) | |
| Defendants | ) | |

### Jurisdiction

Plaintiff has lived and worked in Maricopa County since May 1989, which is in the jurisdiction of The United States District Court, District of Arizona.

### Complaint

Plaintiff alleges, and will prove with a preponderance of the evidence that the Defendants, American Home Mortgage Corporation Construction Lending, and American Home Mortgage Corporation Servicing, hereinafter referred to as Defendant A (Construction) and Defendant B (Servicing), have by way of their;

1. Gross Negligence,

2. Intentional and Malicious Deceit,

3. Careless and Reckless handling of Plaintiffs account,

4. Defamation of Plaintiffs Character,

5. Defendants Violation of Section 6 of Respa (12 U.S.C. Section 2605),

[ pg 1]

6.  Defendants violation of The Fair Credit Reporting Act (FCRA) 15 U.S.C. s/s 1681,

7 . Defendants violation of the Arizona Revised Statutes A.R.S. s/s 44-1694, and

A.R.S. s/s 44-1695, have injured Plaintiff and places Defendants A & B in

"Breech of Contract".

Plaintiff alleges that since the loan originated in October 2005, and to the date of the

filing of this action, that both Defendants A & B, have been grossly negligent, careless

and reckless in the handling of Plaintiffs account, intentionally, and maliciously

deceitful to Plaintiff, and that they knowingly, maliciously, and intentionally

slandered Plaintiffs good name by falsely reporting Plaintiff as being 60 days late on

his mortgage loan, has caused Plaintiff severe emotional stress, loss of creditworthiness,

financial hardship, financial losses, and grave concern by the Plaintiff for the safety of

Plaintiffs investment in his home.

Plaintiff will prove with preponderance of the evidence, and beyond any reasonable

doubt that Plaintiff has always acted in a very responsible manner, and that Plaintiff has

been in full compliance with the terms of the contract by making timely payments,

and communicating with Defendants numerous times due to Plaintiffs concerns

or in response to Defendants inquiries.

Plaintiff will prove that he has gone above and beyond to protect the investment in

his home from the negligent and grossly negligent actions of the Defendants.

The following is a sequence of events that proves Plaintiffs allegations against the

Defendants A & B beyond any reasonable doubt.

The exhibits Plaintiff has listed and provided to the Court in evidence, verifies every

allegation of Plaintiff against the Defendants A & B.

[pg 2]

Sequence of Events

**1. On or about August 2005**

Plaintiff contacted Waterfield Mortgage Company for the sole purpose of obtaining

partial financing for a manufactured home Plaintiff wished to purchase.

Plaintiff's loan was approved, the terms being that Plaintiff would pay "**interest**

**only**" payments during the construction phase of the project, and that on April 1,

2005, the construction loan would automatically roll over into a regular mortgage

loan at a fixed 6% interest rate.

**2.  In or about October 2005**

Plaintiff was advised by Waterfield Mortgage, that Plaintiffs loan had been

transferred to Union Federal Bank, and that all payments, are to be made directly

to Union Federal Bank.

As per the terms and requirements of the contract, Plaintiff made "interest only"

payments to Union Federal Bank for the months of November and December 2005,

January, February, and March 2006. All payments were made by Plaintiff in advance

of their due dates.

**3.   On or about March 5, 2006**

Plaintiff received a letter dated March 1, 2006 (Exhibit 1) from Union Federal Bank

that Plaintiffs Mortgage was being transferred to Defendant A, and that on or after

March 16, 2006, payments were to be made to Defendant A.  Plaintiff paid the

March 2006 interest bill to Union Federal *__on February 28, 2006__*, prior to the

notice of transfer, but in accordance with the terms of the contractual requirements.

[pg 3]

The Union Federal Bank makes it clear that if Plaintiff did not make the March

payment by March 16, 2006, Plaintiff would be assessed a late charge.

## 4.    March 16, 2006

Waterfield Mortgage Company sends Plaintiff a notice (Exhibit 2) that Servicing of

Plaintiff's loan would be serviced by Defendant B as of April 1, 2006.

## 5.    April 4, 2006

Plaintiff was expecting to receive a bill on or before April 1, 2006 from Defendant B

in the amount of $ 505.72 for the rolled over 6% fixed mortgage loan. Plaintiff did

not receive a billing statement from the Defendants as expected.

When Plaintiff did not receive a mortgage bill for the April 2006 payment, by

April 4, 2006, Plaintiff called Defendant B, at 877-304-3100 and spoke to

Defendant B employee JD at extension 7306. Plaintiff was advised by Defendant's

JD, that the construction loan, had not yet rolled over, *and it was **not in his system***.

Defendant's JD told Plaintiff not to worry because Plaintiff had a 60 day grace

period during the rollover (Section 6 of Respa (12 U.S.C. Section 2605).

Plaintiff told Defendant's JD that he was concerned, and wanted to make the

payment, but Defendant B JD told Plaintiff he could not accept it at the time.

Defendant's JD told Plaintiff to call back in twenty days if Plaintiff was still

worried.

## 6.    April 27, 2006

Defendants send Plaintiff a letter dated April 27, 2006 (Exhibit 3) telling Plaintiff

to call "five days before" Plaintiffs first payment is due on April 1, 2006.

[pg 4]

According to the law (as mentioned in exhibit 2) Defendant must send their notice

***no later than 15 days after the effective date*** which was April 1, 2006, a clear

violation by Defendants of this law since the letter should have been sent no later than

April 15, 2006.

**7.   On or about April 28, 2006**

Plaintiff received an interest billing statement from Defendant A showing

Plaintiff was due for March 1st, **April 1st,** and **May 1st 2006** *interest payments*.

Plaintiff called Defendant A talking to Defendant's Maureen Burch at 631-622-6551

to dispute the interest bill since the March 1st payment had been made to Union Federal

Bank on February 28, 2006. Defendant's Maureen Burch emailed Plaintiff a corrected

interest billing statement (Exhibit 4) now showing the March 1, 2006 as being paid.

Plaintiff asked Defendant why he was not paying the $505.72 that was supposed to be due

on April 1, 2006, instead of the interest payments,  through May 2006.

Defendant's Maureen Burch told Plaintiff the loan had not been rolled over as

yet, and that she would transfer Plaintiff to the party Plaintiff needed to talk to get

the loan rolled over.

Plaintiff advised Defendant that he would pay the $646.64 "interest only" due

through May 2006 when Plaintiff received his disability check, on or about the

first of the month. Defendant's Maureen Burch then transferred Plaintiff to another

party. The person (a man) Plaintiff spoke with told Plaintiff before he could roll Plaintiffs

loan over, Plaintiff needed to fax Defendant a copy of the homeowners insurance, and a

Certificate of Occupancy, for the home.  Plaintiff told Defendant that they were already in

[pg 5]

possession of the homeowners insurance policy , and that Plaintiff never heard

of a Certificate of Occupancy for a home.

Defendant insisted he needed the C of O or he *could not roll the loan over*.

Plaintiff called Maricopa County but was told there is no C of O for manufactured

homes. Plaintiff was now growing gravely concerned for the safety of his investment

since Defendant A was demanding a non-existent document to roll the loan over.

Plaintiff paid the "interest only" payments of $646.64 on May 1, 2006 as per the

billing statement, and Defendants verbal instructions.

**8.    May 26, 2006,**

Plaintiff receives a certified letter dated May 22, 2006 (Exhibit 5) from Defendant B

stating Plaintiff is in default of the loan for the months of  April 6th, and May 6th 2006.

Plaintiff immediately calls Defendant B and talks to Lorraine who puts Plaintiff on hold

and never returns. Plaintiff calls again, this time talking to Defendants Albert at ext 7301.

After an extended call, Defendant's Albert tells Plaintiff he can not help Plaintiff and

suggests Plaintiff call Defendant A Maureen Birch.

Plaintiff now calls Defendant A and speaks to Maureen Burch, reminding  her that

Plaintiff paid $ 646.64, as per her instructions, and that Plaintiffs check for the interest

"only" payment through May 2006 had cleared Plaintiffs bank on May 8, 2006.

Plaintiff expressed his concerns, and fears about the lateness being reported to

the credit bureaus, but Defendant A  Maureen *assured* Plaintiff his credit bureaus

would not reflect any negative information since this was not the fault of the Plaintiff.

 Defendant A Maureen tells Plaintiff she will have someone who can help, call Plaintiff

back.                                            [pg 6]

1

2    **9.    May 27, 2006.**

3        Plaintiff receives a call from Defendants Gaye Smart 877-304-3100 ext 7090 who tells

4        Plaintiff she has everything taken care of and that all that is needed is for Plaintiff to

5        make a payment for the difference of the $ 364.80 ***plus*** the June 2006 payment,

6        (which was not due for 10 days)..

7

8        Defendant assures Plaintiff that no negative information would be reported to the

9        credit bureaus since this was not the fault of the Plaintiff. Plaintiff advises

10        Defendant that he can make the payment <u>on or about June 1, 2006</u> when Plaintiff

11        gets his disability check, and Defendant says this will be fine.

12        Due to a problem in the Post office beyond Plaintiffs control, Plaintiffs disability

13        check would not arrive by June 6, the actual due date of the loan, so Plaintiffs wife

14        takes funds out of her personal account on June 6, 2006 for the mortgage payment.

15    **10.    June 6 2006**

16

17        Concerned that mailing the amount due on the mortgage would not reach Defendants

18        before the payments grace period expired,  Plaintiff calls Defendant B  and speaks

19        with their Kevin  to whom Plaintiff explains what had happened, and how much was

20        due, authorizing Defendant's Kevin to do an electronic payment for <u>$870.52</u>. Plaintiff

21        has Defendants Kevin repeat back the amount to be charged, and Kevin says $870.52.

22        Plaintiffs electronic payment was timely, and in accordance with the terms of the

23        mortgage contract and the verbal agreement  with Defendant's Gaye Smart.

24

25

26

27                            [pg 7]

28

**11.  June 8, 2006**

At about three in the morning of June 8, 2006, Plaintiff checks his bank balance on line, and finds that instead of Defendants charging Plaintiff's account, $ 870.52, as authorized, Defendant's charged Plaintiff's account $ 1,517.16 which is three full mortgage payments, and not the difference that was owed, and authorized.

Because this amount caused an overdraft in Plaintiff's account, Plaintiff's credit card was charged a fee to automatically transfer funds to Plaintiff's checking account, under the overdraft protection clause of the Plaintiffs checking account. Plaintiff called Defendants Kevin demanding he immediately refund the overage to Plaintiffs account.

Defendants Kevin  tells Plaintiff to refund the overage would take about two weeks . Plaintiff tells Defendant funds are needed for Plaintiffs diabetic medications and that Plaintiff needs the funds now.  Defendant insists it will take about two weeks for the funds to be credited back to Plaintiffs checking account.

Plaintiff told Defendant, that he is going to file a dispute with his bank for the charge, and when it is credited back to Plaintiffs account, Plaintiff would send them the $870.52 immediately by check.  Plaintiff then filed a dispute with his bank, Bank of America, dispute claim number 146708UN06  (Exhibit  6) which allowed Plaintiff to receive his funds back in five days and not two weeks as would have been the case had Plaintiff waited for Defendant to do a refund.

Plaintiff then filed a complaint against Defendant B with the Office of  Consumer Credit Commissioner (Exhibit 7).

[pg 8]

**12.   June 23, 2006**

Plaintiff called Defendant B speaking with Defendant B employee Brett, demanding

to Speak with an officer of the corporation, telling Defendants Brett that Plaintiff had

received his mortgage billing statement dated June 16, 2006 (Exhibit 8) and it has an

Assess fee: LATE CHARGES", and there should not have been any late charges  since

Plaintiff was never late.

Defendant's Brett told Plaintiff he would have someone from the Corporate Office

call Plaintiff back.

**13.   June 24, 2006**

Plaintiff receives a call from Defendant's Susan Brown 214-260-7075 , who identifies

herself *as a vice president.* Plaintiff explained what had been happening, and how

Plaintiff was concerned about this being reported to the credit bureaus, especially since

the billing statement of Defendants is showing late fees. Defendant's Susan Brown

assured Plaintiff that Plaintiff's account would be corrected, and that ***she would make

sure*** no negative information was sent to the credit bureaus.

Defendant then offered to compensate Plaintiff $100.00 for the overdraft protection  and

interest fees Plaintiff would be paying because of Defendants error.

Defendant's Susan Brown told Plaintiff she would take personal charge of Plaintiffs

account, and that nothing would be sent to Plaintiff without her seeing and checking it

first.

Defendant also told Plaintiff she was sending the Plaintiff a check for the $100.00,

and that Plaintiff should have the check in a few days.

[pg 9]

The promised check was supposed to be issued immediately, but after two weeks

Plaintiff had to call Defendants Susan Brown asking if the check had been sent.

Defendant Susan Brown told Plaintiff there was a slip up, but a check would be

issued and sent out immediately

Plaintiff eventually received Defendants check for $100.00, but Plaintiff was

shocked and horrified when he saw the check was made out to Robert Horvath

and not Richard Horvath, the contract holder and Plaintiffs name.

Plaintiff had a brother *Robert* who ***passed away in 1987 at age 41***, whom Plaintiff

paid for, arranged and had cremated.

Plaintiff was extremely shaken and emotionally upset by this incident, and the

reckless and careless handling of this check.

Plaintiff called Defendant B Susan Brown expressing Plaintiffs upset. Defendant

told Plaintiff she was sorry, and that she would send out a replacement check.

### 14.  On or about July 21, 2006

Plaintiff receives Defendant's letter dated July 19, 2006 (Exhibit 9) requesting a

copy of  Plaintiffs bank statement so they could "verify the charges", making it

necessary for Plaintiff to contact Defendant's Tiffany Price, the originator of the

letter and tell her to talk to Defendant's Susan Brown regarding the item. This was

not a claim of the Plaintiffs, but rather an offer by Defendant as compensation

for bank charges, and interest.

[pg 10]

**15.  On or about August 2006,**

Plaintiff became aware, that his manufactured home was not showing up on the

Maricopa County Recorders records, when a Maricopa County Sheriffs deputy

visited Plaintiffs home looking for the previous owner of Plaintiffs property.

The Sheriff's deputy had an arrest warrant for the previous owner for evasion of

Motor Vehicle taxes on his manufactured home. It was during this visit Plaintiff

asked the Sheriff's deputy to check and make sure Plaintiffs property was properly

registered as "affixed", and found it was not.

Plaintiff told the deputy that he was sure the house was registered with Maricopa

County because an "Affidavit of Affixture" was a requirement of the loan, and the

document had been executed by Plaintiff at the time of closing.

Over a three month period of time, Plaintiff called Defendants several times for the

vin number of the home but Defendants said they did not have it.

Plaintiff called Factory Expo where Plaintiff purchased the home, but they too could

not give any information on the house.

Finally, after several months of investigation by Plaintiff that yielded no results,

the Maricopa County Sheriffs Deputy called the Defendants, and they gave her

the Information they claimed they did not have when Plaintiff asked for it.

**16.  January 9th, 2007,**

Defendant's Valerie Evans sent Plaintiff a letter (Exhibit 10) stating she tried

contacting Plaintiff.  Plaintiff has been disabled and home bound since May 2005,

and except for very short periods of time such as for food shopping, Plaintiff is

[pg 11]

home.  Plaintiff also has a phone answering machine that is on 24/7, but no call was ever received, or message left for Plaintiff by the Defendant.

The attachments to the letter was an "affidavit of Affixture" for Plaintiffs home, and it claimed the documents were not properly executed at the time of closing in October 2005. Plaintiff finds it hard to believe it took Defendants (15) fifteen months to become aware of "improperly executed" documents, and **_only after_**, receiving a call from the Maricopa County Sheriffs office.  Plaintiff signed the forms, and returned them to the Defendants.

**17.   March 3, 2007**

Plaintiff pulls a Free Credit Bureau Report to find out why Plaintiffs credit card interest rates have climbed from 15% to 24%, and why Plaintiff is being turned down for low interest rate credit lines and only being offered very high interest rates for credit lines against Plaintiffs property.

Plaintiff is shocked and horrified to find **Defendants have reported Plaintiffs mortgage 60 days late for June 2006** , a clear violation of Section 6 of Respa (12 U.S.C. Section 2605.

Plaintiff calls Defendant B, talking with their Marcia Chapa in Customer care. Plaintiff demands that Marcia have someone in the corporate office above Susan Smith AVP or someone from their legal department return Plaintiffs call. Defendants Marcia tell Plaintiff she will have someone call Plaintiff back.

**Defendants never returned this call** of Plaintiffs.  Plaintiff immediately filed a dispute with the Credit Bureaus to have this corrected since Defendants would not return Plaintiffs call.                     [pg 12]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 18.  April 14, 2007

Plaintiff receives notification from Experian Credit Bureau (Exhibit 11) that

Defendants have **"Verified"** the 60 days lateness to them and it will remain

on Plaintiffs record until March 2013. Defendant's grossly negligent and wrongful

"verification" of this charge against Plaintiffs record is further proof of Defendants

careless, reckless, and grossly negligent, manner in which the Defendants have

handled Plaintiffs account, and continue to do so.

Defendants must be aware of Section 6 of Respa (12 U.S.C. Section 2605,

regarding the 60 days grace period allowed under the law, but which Plaintiff did

not have to avail himself to since he maintained constant contact with the Defendants

and Plaintiff made every payment in a timely manner and as per the contract and

verbal instructions of the Defendants. Plaintiff had spoken to six of Defendants

employees, JD, Maureen Burch, Albert, Brett, Gaye Smart, and Susan Brown,

and in each conversation Plaintiff expressed his concerns about being reported

late, and each of the six employees assured the Plaintiff his credit would not be

marked. It is inconceivable that the notes and entries of six different employees did

not show up when Defendants were notified of the  dispute, and that they wrongfully

and or maliciously "verified " Plaintiff as having been 60 days late.

## 19.  May 9, 2007

Bank of America notifies Plaintiff (Exhibit 12) that they were not able to approve

Plaintiffs request for an increase on his credit line.

[pg 13 ]

**20.    May 15 2007**

After reapplying for a credit line with Wells Fargo Financial, Plaintiff is informed

by Wells Fargo Financial that Plaintiffs property value is being shown as only

$69,000. This is because Defendants failed to file closing documents in a timely

manner, more notably the Affidavit of Affixture.

**21.    May 21, 2007**

Plaintiff receives a check from Defendants in the amount of $595.40 (Exhibit 13)

representing Escrow Overage Refund".  Plaintiff cashed and used the money for

necessities, not thinking anything out of the ordinary. In 1997 Plaintiff had purchased

a home, and a year later the mortgage company sent Plaintiff  a check for the overage

in escrow.

**22.    On or about May 23, 2007**

Plaintiff receives an Annual Escrow Account Disclosure Statement (Exhibit 14).

from the Defendants. Plaintiff notices Defendants are showing anticipated county

taxes as $ 330.74 which Plaintiff believes will be an insufficient amount for the property

taxes.

Plaintiff also becomes concerned that the taxes Defendants have, from the inception

of the loan may have been incorrect due to Defendants A & B  gross negligence.

Along with exhibit # 14 was a letter (Exhibit 15) advising Plaintiff that the July 1,

2007 mortgage payment was being changed from $505.72, to $448.48 as of the

July 1st 2007 payment, based on the annual escrow account disclosure statement.

[pg 14]

**23.   June 6, 2007**

Wells Fargo Financial Bank (Exhibit 16) advises Plaintiff that they have not approved

Plaintiffs request for a "secured" credit line against Plaintiffs home.

**24.   June 27, 2007**

GE Money Bank (Exhibit 17) and Wells Fargo Financial (Exhibit 18) send Plaintiff notice

that requested credit line on Plaintiffs home is not approved. Plaintiff has $70,000 of his

personal funds in the property and home, and an additional $25,000 in landscaping or

$95,000.00 cash invested in his home. Credit line request is for only $ 20,000.00.

**25.   June 28 2006**

Plaintiff calls the Maricopa County Recorders office to verify the property tax

assessment.  Plaintiff is advised that <u>there are two assessments</u> currently on the

property, one for the land, and the other for the home, that has not yet been registered

as "affixed". With a combined assessed value of $ 132,345.00 and a 10% assessment,

Plaintiffs combined annual taxes will be significantly more than the$330.74 the

Defendants have negligently budgeted for in escrow.

Had Plaintiff not investigated this on his own, Plaintiff would have received a

ballooning and unaffordable tax bill in the near future that could have cost Plaintiff

the loss of his home and his investment thereof. Plaintiff is now concerned, and greatly

stressed that the Defendants have under paid the property, and Motor Vehicle taxes

for the home and property since November 2005.

**26.   June 29, 2007**

Plaintiff received Monthly Billing Statement (Exhibit 19) from Defendants in

the amount of $448.48.   If Plaintiff did not exercise **extra care and diligence**

[pg 15]

this grossly negligent action on the part of the Defendants would have been

financially devastating to Plaintiffs, at some future date.

The evidence clearly shows that all of the Defendants actions have all been grossly

negligent, intentionally misleading, deceitful, in violation of The Fair Credit Reporting

Act (FCRA) 15 U.S.C. s/s 1681, in violation of the Arizona Revised Statutes A.R.S. s/s

44-1694, and A.R.S. s/s 44-1695, and in violation of, Section 6 of Respa (12 U.S.C.

Section 2605), and in breach of contract, since Defendants have not at any

time "serviced" Plaintiffs contract correctly, or in a timely manner.

Defendants have up to the filing of this action, acted in a careless, reckless manner

which  includes slander, and defamation of character which has caused the Plaintiff

tremendous stress, anxiety, depression, as well as financial losses, and the loss

of creditworthiness. Plaintiff is still fearful and stressed that Defendants will

continue to act in a careless and reckless manner and that if Plaintiff does not

continue to be on high alert, Plaintiff could lose his home and monetary investment

because of a careless, reckless and grossly negligent actions on the part of the

Defendants.

### Damages to Plaintiff

1.  Plaintiff has numerous ailments which include obstructive sleep apnea, and

Idiopathic Hyper somnolence. On the Epworthy sleepiness scale of 1 to 24 with 24

being worst case scenario, Plaintiff is a 24 (Exhibit 20). Plaintiff is unable to

concentrate for long periods of time, or to control the urge to sleep during

daytime hours. Plaintiff also suffers from short term memory loss, making it a

[pg 16]

monumental task for Plaintiff to be on guard against Defendants continued grossly

negligent, careless and reckless actions, intentional deceit, and outright lies in the

handling of Plaintiffs account,.

Plaintiff was forced into representing himself as he could not find an attorney who

would take the case on contingency basis , and the only way for Plaintiff to stop the

grossly negligent actions of Defendants was through litigation. Plaintiff has been

severely ill so the filing of this action has been a monumental task for Plaintiff,

causing Plaintiff tremendous stress, much anxiety, and depression, and possible physical

injury due to the stress. Plaintiff is a Type 2 insulin dependant diabetic, who has been

unable to control his glucose levels, and believes it is because of "fight or flight" which is

recognized by the American Diabetes Association as a product of stress on a diabetic.

At minimum, Defendants actions and the stress they have caused upon the

complainant have advance or exacerbated many of Plaintiffs diabetic related illnesses

which include Macular Degeneration in both eyes, and diabetic neuropathy in both legs

and feet. Plaintiff will in sufficient time for the trial announce the expert witnesses

he intends to have testify in his behalf.

2.    Defendants have slandered Plaintiffs good name by negligently, and wrongfully

reporting Plaintiff as being 60 days late on his mortgage payments. Interest rates on

Plaintiffs Credit cards have climbed from 15 to 24 percent because of the false

reporting of Plaintiff being 60 days late. Also, Plaintiff has been unable to acquire a

low interest rate "secured" credit line against his home.

[ pg 17]

**3.**  Defendants acted in a grossly negligent manner when **they reconfirmed** to the

Credit Bureaus that Plaintiff was 60 Days late on his mortgage loan, after

Plaintiff had filed a dispute with the Credit Bureaus, disputing the lateness claim

Plaintiff believes this is an intentional and malicious action on the part of the

Defendants , since Defendants should know the laws that govern their industry,

including Section 6 of RESPA (12 U.S.C. Section 2605).

This action by Defendants have caused Plaintiff to suffer loss of Creditworthiness,

anxiety , depression, fear, as well as compensable financial losses. It will take a

minimum of seven years for this negative mark to be completely remove from

Plaintiffs records, even if  immediately removed by the credit bureaus, this will

continue to cause Plaintiff financial losses, and financial hardships.

**4.**  Defendants acted in a grossly negligently, and reckless manner in the handling of

Plaintiffs closing documents, most notably, the "Affidavit of Affixture", which

Defendants failed to file with Maricopa County in a timely manner. This grossly

negligent action of Defendants has caused Plaintiff to suffer fear, depression,

anxiety, loss of creditworthiness, financial losses, and loss of family income

Plaintiff has been trying to secure a loan so his spouse can invest in her internet

business. Plaintiff spouses business, the Super Star Note Mart profits were as high

as $1,000 per month and they have fallen to a couple of hundred per month.

Plaintiffs spouse uses the profits to pay for Plaintiffs medications that are not

covered or have large deductibles. Plaintiffs wife's income from her part time job

and her store have fallen so they are unable to afford some of Plaintiffs

[pg 18]

medications. Plaintiff takes Zegerid for acid reflux. Plaintiff needs to take two a day, but because of the loss of income, has only been able to afford one a day, which means the Plaintiffs esophagus is being damaged, and Plaintiff is experiencing pain and discomfort.

5.  Defendants were grossly negligent with the handling of Plaintiffs property taxes and this has caused the Plaintiff to suffer fear, depression, and anxiety. Plaintiff receives a disability check once a month for approximately $1,285.00. Plaintiff fears that the Maricopa County Assessor will eventually present a bill for arrear taxes that will be more than the Plaintiff can handle or afford to pay.

6.  Defendants failure to file the affidavit of affixture, and other documents has cause the Plaintiffs property to show a valuation of only $69,000, and recently $ 89,000, and amount that is below the Plaintiffs actual cash outlay of $95,000.00 which includes landscaping of the property, as well as the purchase price of the land itself for $ 41,500.00. Web sites such as Zullo and others are used by lenders to assess the valuation of one's property in regards to "equity" in the home and property of a potential borrower. Along with the 60 days lateness on Plaintiffs credit bureaus, Plaintiff has been unable to obtain any "secured" lines of credit, without an unnecessary and costly appraisal on his home, and no guaranty that the interest rates would be much lower because of the 60 day lateness on Plaintiffs records. The interest rate Plaintiff would get would not be commensurate with Plaintiffs true creditworthiness.

[pg 19]

1
2
3

<u>Plaintiffs Demand</u>

4    1.    Plaintiff demands the court award him $ 363,595.00 as per the list of damages
5          (Exhibit 21)

6    2.    Plaintiff also demands the court award him punitive damages which Plaintiff is
7          entitled to by law, and as set forth in The Fair Credit Reporting Act (FCRA) 15
8          U.S.C. s/s 1681, punitive damages as set forth under the Arizona Revised
9          Statutes A.R.S. s/s 44-1694, and A.R.S. s/s 44-1695, and punitive damages as
10         provided for under Section 6 of Respa (12 U.S.C. Section 2605), which provides
11
12         for actual damages, ***<u>punitive damages</u>*** and attorney fees in just such a case.
13         The punitive damages should be for an amount sufficient enough to deter
14         Defendants from continuing their grossly negligent and malicious handling of
15         consumer accounts.  Plaintiff has, through a preponderance of the evidence,
16         proven the Defendants have been "**<u>grossly negligent</u>**", and that Defendants
17         willfully, and maliciously intended to  harm Plaintiffs good name, and in doing
18         so have caused Plaintiff financial hardships.
19

20   3.    Plaintiff demands the court contact the Office of Consumer Credit Commissioner
21         in Texas, and The State Attorney General for the State of Arizona and order an
22         investigation of Defendants A&B in order to protect unsuspecting future borrowers,
23         and the Defendants current clients from  this <u>Predator Lender</u>.

24   4.    Plaintiff demands the court issue an order to Defendants and the three major
25         credit bureaus that the Plaintiffs records should be corrected to show Plaintiffs
26         perfect payment record, and that Plaintiffs "FICA" scores reflect this correction.
27                                        [pg 20]
28

5    Plaintiff requests the court demand the Defendants pay for any and all motor

vehicle or property taxes that may be in arrears for the period October 2005

through August 2007, because of defendant's failure to file the Affidavit of

Affixation in a timely manner, and because Defendants have not paid the proper

taxes on Plaintiffs home and property due to their gross negligence.

6.    Plaintiff requests the court demand the Defendants immediately take whatever

steps are necessary to correct the description of Plaintiffs home, and its proper

assessed valuation

7.    Plaintiff demands a jury trial.

Dated this _10_ day of August 2007

Richard W Horvath

_____

Richard W. Horvath

*Pro se*

**Plaintiffs Exhibit # 1**





March 1, 2006

*405*

4/4 JD
X 7306
10-20 DAYS
CALL BACK
(over)

RICHARD WILLIAM HORVATH
550 SOUTH CRISMON ROAD
MESA AZ 85208

RE: Notice of Transfer of Servicing        Property: 550 S CRISMON RD
                                                     CRISWAY ESTATES L174 UNIT 3
                                                     MESA AZ 85208

Union Federal Bank of Indianapolis Loan number 142385691

American Home Mortgage Corporation Loan number 1152277

Dear RICHARD WILLIAM HORVATH,

The purpose of this letter is to notify you that the servicing of your construction loan, that is, the right to collect payments from you is being transferred from Union Federal Bank of Indianapolis to American Home Mortgage Corporation - Construction Lending ("AHM") effective March 16, 2006. Send all payments on or after that date to your new servicer, American Home Mortgage Corporation. Please note that phone payment service and making payments at the local branch offices will not be available effective the transfer date. The transfer of the construction servicing does not affect any of the terms or conditions of the loan documents other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your Present Servicer send you this notice at least 15 days before the effective date of transfer, or at closing. American Home Mortgage Corporation must also send you this notice. However, in this case, all necessary information is combined in this one notice.

Prior to March 16, 2006, if you have any questions relating to the transfer of servicing call Union Federal Bank of Indianapolis - Construction Lending at 1-800-467-7096 for questions about draws and extensions, between 8:00 AM and 5:00 PM (EST) Monday-Friday. For questions regarding your monthly billings or payoff quotes, call 1-866-878-5459 between 8:00 AM and 5:00 PM (EST) Monday-Friday.

Your new Servicer will be American Home Mortgage Corporation. All payments and inquiries regarding your loan should be addressed to American Home Mortgage Corporation, as indicated below:

**Correspondence:**
American Home Mortgage Corp. - Construction Lending
538 Broadhollow Road, MS 500
Melville, NY 11747

**Payments:**
AHM Corp. Construction Loan
P.O. 13684
Newark, NJ 07188-3684

631-694-1982

877-304-3100        www.AMERICANHM.COM

Plaintiffs Exhibit # 2



**WATERFIELD**
*Mortgage Company*
*A Waterfield Group Company*

MARCH 16, 2006

RICHARD HORVATH
120 N VALDISTA DRIVE #128
MESA, AZ 85213

Property: 550 S. CRISMON RD
RE: NOTICE OF TRANSFER OF SERVICING RIGHTS        MESA, AZ 85208
Waterfield Loan No:    0002385691
New Servicer Loan No:

Dear RICHARD HORVATH:

The purpose of this letter is to notify you that the servicing of your mortgage loan, that is, the right to collect payments from you is being transferred from WATERFIELD MORTGAGE CO., INC. to, effective APRIL 01, 2006. Send all payments on or after that date to your new servicer. The transfer of the mortgage servicing does not affect any of the terms or conditions of the mortgage documents other than terms directly related to the servicing of your loan.

The law requires that your present servicer send you this notice at least 15 days before the effective date of transfer.  Your new servicer must also send you their notice no later than 15 days after the effective date.

WATERFIELD MORTGAGE CO., INC. will notify your homeowners insurance company and real estate taxing authority of this transfer. If in the future you should receive any billings for taxes or insurance, please forward directly to.

WATERFIELD MORTGAGE CO., INC. will provide you with a year-to-date tax statement (Form 1098) for the period in which we serviced your mortgage loan. will provide you with a tax statement for the period beginning APRIL 01, 2006 and ending December 31, 2006.  You will need to combine the information shown on both statements to calculate the total interest expense/real estate tax expense when filing your tax return.

If your current payment includes a monthly premium for life, accidental death or disability insurance OR any other type of optional insurance/product, you will be notified under a separate letter regarding the continuance of this coverage.

Prior to APRIL 01, 2006, if you have any questions relating to the transfer of servicing, call WATERFIELD MORTGAGE CO., INC. Customer Service Department toll-free at 800-444-9847 between 8:00 am and 6:00 pm (EST) Monday-Friday.

Your new servicer will be. All payments and inquiries regarding your loan should be addressed to as indicated below:

CORRESPONDENCE:                    PAYMENTS:
American Home Mortgage             American Home Mortgage
P.O. Box 631730                    Attn:  Cash Management
Irving, TX 75063-1730             P.O. Box 660029
                                   Dallas, TX 75266-0029

**American Home Mortgage**
**Servicing**
P.O. Box 631730
Irving, TX 75063-1730

custserv@americanhm.com

April 27, 2006

RICHARD WILLIAM HORVATH    000067
120 N VALDISTA DRIVE #128
MESA AZ   85213

RE:  Account Number: 1001152277

Dear Customer:

**American Home Mortgage** would like to take this opportunity to welcome you as a valued customer and to thank you for arranging your mortgage financing with us.

You will soon receive a Monthly Billing Statement which includes important instructions about your loan.  Please read these instructions carefully.  Any questions you have may be directed to our Customer Care Department by calling our toll-free number 1-877-304-3100.

In the event you do not receive your Monthly Billing Statement five days before your first full payment is due, please call our Customer Care Department at the phone number listed above. Your first full mortgage payment is due 04/01/2006.

Please do not hesitate to call or email us any time you have questions, comments or feel we can be of service.  Thank you for your patronage.

Sincerely,

Steven Dickman
Vice President, Loan Administration and Customer Service

04/28/2006    03:04    AMERICAN HOME → 18662785842    NO.750    P01

# INTEREST BILLING STATEMENT

Statement Date : 4/30/2006
Loan Number / Unit : 1152277  001
Loan Commitment : $64,590.00
Construction Phase Maturity Date : 3/1/2006

Legal Description :
Address : 550 S. Crismon Rd

Richard William Horvath
550 South Crimson Rd
Mesa, AZ 85208

Please Pay The Following Amount :    $646.64

Please Remit To :    AHM Corp. Construction Loan
Construction Lending Dept
P.O. Box 13684
Newark, NJ 07188-3684

Due Date : 5/1/2006
Amount enclosed :$        -

Payment will be delinquent and a late fee will be assessed after    5/16/2006

PLEASE ENCLOSE THIS PORTION OF THE INVOICE WITH YOUR PAYMENT

For Questions, please call :(866) 418-9400

Richard William Horvath

Loan Number / Unit : 1152277  001

Loan Commitment : $64,590.00

Construction Phase Maturity Date :
3/1/2006

| Memo Description | Bill Date | Due Date | Amount Due |
|---|---|---|---|
| INTEREST BILLING - PERIOD END | 2/28/2006 | 3/1/2006 | Paid- 296.80 |
| INTEREST BILLING - PERIOD END | 3/31/2006 | 4/1/2006 | 328.62 |
| INTEREST BILLING - PERIOD END | 4/30/2006 | 5/1/2006 | 318.02 |
| | | Total: | $646.64 |

| Memo Description | Type | Amount | Prin. Bal. | From / To Date | # Of Days | Rate | Interest Due |
|---|---|---|---|---|---|---|---|
| Balance Forward | Bal Fwd | 0.00 | 64,486.76 | 04/01/2006 - 04/30/2006 | 30 | 6.000 | 318.02 |
| | Total : | $0.00 | $64,486.76 | | Total Interest for the Month : | | $318.02 |

3245

RICHARD W. HORVATH  5-93
SHARON M. HORVATH
9912 E. DRAGON AVE
MESA, AZ 85208-2591

| | |
|---|---|
| BALANCE FORWARD | |
| THIS CHECK | 646.64 |
| BALANCE | |
| DEPOSIT | |
| BALANCE FORWARD | |

BANK OF AMERICA - ARIZONA

## NOT NEGOTIABLE

For enhanced SECURITY, your account number does not appear on this check.
REORDER, please call 1-800-733-4443 or order online @ www.citra.com

877-304-3100
214-260-7000

**Plaintiffs Exhibit 5**

**American Home Mortgage Servicing**

SENT VIA CERTIFIED MAIL.
05/22/06

Richard Horvath

120 N VALDISTA DRIVE #128

MESA, AZ 85213

PROPERTY ADDRESS:

550 S. Crismon Rd

Mesa, AZ 85208

RE:   ACCOUNT NUMBER   1001152277         COPIES BY FIRST CLASS MAIL

DEAR MORTGAGOR:

THIS LETTER IS WRITTEN TO YOU TO ADVISE YOU THAT YOU ARE
CURRENTLY IN DEFAULT UNDER THE ABOVE REFERENCED LOAN FOR
NON-PAYMENT OF THE MONTHLY MORTGAGE PAYMENTS FOR THE MONTHS OF
04/06 AND 05/06.

IN ORDER TO CURE THIS DEFAULT, PLEASE FORWARD TO US THE SUM OF
$1,011.44, WHICH INCLUDES UNPAID MORTGAGE PAYMENTS, LATE
CHARGES AND FEES NOW DUE BY CERTIFIED CHECK, CASHIER'S CHECK OR
MONEY ORDER.   ANY FURTHER DELAY IN REINSTATING YOUR MORTGAGE
ACCOUNT WILL RESULT IN APPROXIMATELY $1600.00 IN ATTORNEY AND
FORECLOSURE FEES TO YOU.

** NOTE **

AS PAYMENTS ARE DUE ON THE FIRST DAY OF EACH MONTH AND LATE
CHARGES ARE DUE AFTER THE 15TH DAY OF DELINQUENCY. THE ABOVE
TOTAL DELINQUENCY AMOUNT MUST BE INCREASED TO INCLUDE YOUR 06/06
PAYMENT, IF NOT RECEIVED PRIOR TO 06/01/06 FOR A TOTAL OF
$1,536.52.

THE TOTAL AMOUNT DUE INDICATED ABOVE SHOULD BE MAILED TO
AMERICAN HOME MTG SERVICING, AT 4600 REGENT BLVD, SUITE 200
IRVING, TX 75063-2443.   FOR YOUR CONVENIENCE, A SELF-ADDRESSED
ENVELOPE IS ENCLOSED.   PLEASE ENCLOSE THE APPROPRIATE COUPONS
WITH THESE FUNDS.

THE TOTAL AMOUNT DUE TO BRING YOUR MORTGAGE CURRENT, THROUGH
AND INCLUDING THE MONTH OF RECEIPT, MUST BE RECEIVED BY 06/21/06.
FAILURE TO CURE THIS DEFAULT ON OR BEFORE THE DATE SPECIFIED
HEREIN MAY RESULT IN ACCELERATION OF THE TOTAL AMOUNT SECURED
BY YOUR DEED OF TRUST AND SALE OF YOUR PROPERTY.
UNDER PARAGRAPH 19 OF YOUR DEED OF TRUST, YOU HAVE THE RIGHT
TO REINSTATE YOUR LOAN AFTER ACCELERATION AND, IN THE EVENT OF
FORECLOSURE PROCEEDINGS, THE RIGHT TO ASSERT THE NON-EXISTENCE
OF A DEFAULT OR ANY OTHER DEFENSE THAT YOU HAVE TO ACCELERATION
AND SALE.

IN THE EVENT THIS DEFAULT IS NOT CURED AS HEREIN STATED, WE MAY,
AT OUR OPTION, ACCELERATE THE LOAN. THAT IS TO SAY, DECLARE THAT
ALL OF THE SUMS SECURED BY YOUR DEED OF TRUST SHALL BE
IMMEDIATELY DUE AND PAYABLE WITHOUT FURTHER DEMAND AND INVOKE
THE POWER OF SALE AND ANY OTHER REMEDIES PERMITTED BY APPLICABLE
LAW.   IN THE EVENT WE DO ACCELERATE, THEN WE SHALL BE ENTITLED
TO COLLECT ALL REASONABLE COSTS AND EXPENSES INCURRED IN
PURSUING THE REMEDIES AVAILABLE TO US INCLUDING, BUT NOT
LIMITED TO, REASONABLE ATTORNEY FEES.

A COPY OF THIS LETTER IS BEING SENT TO YOU BY REGULAR FIRST-CLASS
MAIL.   WE AWAIT THE COURTESY OF YOUR REPLY.

SINCERELY,

COLLECTIONS DEPT

4600 REGENT BLVD., SUITE 200
IRVING, TEXAS 75063
*Licensed Mortgage Banker or Authorized Lender
in the Fifty States and The District of Columbia*
* NYSE Listing Symbol - AHM



Plaintiffs Exhibit # 6



June 13, 2006

RICHARD HORVATH
550 S CRISMON RD
MESA AZ  85208-2573

Amount:        $1,517.16
Claim Number:    1467-08JUN06

Dear RICHARD HORVATH:

Thank you for your inquiry about electronic funds transfer activity on your account.  We've received your affidavit regarding an automatic debit totaling $1,517.16 that was deducted from your account 004650923944 as follows:

| DATE | AMOUNT |
|------|--------|
| June 7, 2006 | $1,517.16 |

Your account number 004650923944 was credited $1,517.16 on June 13, 2006.

If the debit activity was the result of a previous business agreement, which you've since revoked, please contact them to make sure they've cancelled your agreement and will not initiate future debits to your account.  If you've never entered into an agreement, no further action is necessary.

If you have any questions about this matter, please call our toll free number 877.366.1121 for assistance in English or 877.247.3220 in Spanish.  Our Customer Service Representatives are available to assist you Monday through Friday between 7:00 a.m. and 10:00 p.m., and Saturday and Sunday between 8:00 a.m. and 5:00 p.m. local time.

For faster service, please have your claim number, access identification and Personal Identification Number (PIN) available.

Thank you for bringing this matter to our attention.  We value your relationship with Bank of America and look forward to continuing to serve your financial needs.

ATM/Debit Card Operations ACHC01

Recycled Paper

**Richard W. Horvath**
**550 S. Crismon Rd.**
**Mesa, AZ. 85208**
**480-292-7582**
**Email rhorvath2@cox.net**

June 8, 2006

Office of Consumer Credit Commissioner
Fax 512-936-7610
Attn; Consumer Assistance

There are (9) nine pages to this fax counting this cover letter

Dear Sirs

<u>**Re; American Home Mortgage**</u>

I wish to file a formal complaint against American Home Mortgage, American Home Mortgage Corp Construction Lending, and American Home Mortgage Servicing. I believe they may be predator lenders, or at minimum, the most unprofessional lending instution in the United States.

They have taken money from my checking account that they were not authorized to take, nor were they entitled to the funds in any way.  They have overdrawn my checking account, and tell me they need to mail me a check instead of reversing the transaction.

I have demanded they fire their customer service representative who withdrew these funds from my account.

Since my account was transferred to American Home Mortgage by Union Federal Bank, they have done nothing but unprofessionally screwed up my account more than once. Here now is the sequence of events regarding their unprofessional care, and theft of my funds.

<u>**Sequence of Events**</u>

<u>**March 1, 2006**</u>
I was advised by Union Federal Bank that my construction Loan was being transferred to American Home Mortgage, <u>**effective March 16, 2006.**</u> It also advised that from that date on, all payments were to be made to American Home Mortgage Corporation .  Just prior to this notice I spoke to someone who told me my mortgage payment would be $505.72 beginning April 1, 2006.

<u>**April 4, 2006**</u>
As I had not yet received a billing statement from American Home Mortgage, I called their office 1-866-878-5459 and talked to a person who identified himself as JD. He is at extension 7306.  I expressed my concern that I did not receive a billing statement and was prepared to make the payment over the phone. JD told me my account was not in the system and that I had

60 days grace, so not to worry. I told him I would worry and asked what I should do. He told me if I did not receive a statement in the mail or hear from them in 10 to 20 days, I should call back.

### April 28, 2006

I received an interest billing statement in the mail from the construction lending department, showing I owe Interest payments on my construction loan for March 1, April 1, and May 1, 2006. I called the construction lending department at 631-622-6551, and spoke to **Maureen Burch**. I told her that I had already paid the March 1, 2006 to Union Federal Bank long before the loan transferred to them.

I also told Maureen that I was expecting regular mortgage payments to be billed beginning April 1, 2006. Maureen told me the loan had not been "converted" as yet. Maureen emailed me a corrected Interest Billing Statement showing the amount due as $ 646.64. I told here I would mail the payment as soon as I received my disability paycheck.

Also, she transferred me to a man who she said would handle the mortgage conversion. He told me that before he could convert the construction loan, he needed me to fax him a Certificate of Occupancy" for the residence, and a copy of the insurance binder. I told him he already had a copy of the insurance binder, but I never heard of a C of O for a residence. He told me without it he could not convert the loan. I told him I would call Maricopa County for the C of O. I called Maricopa County but they informed me they do not issue C of Os for residences.

### May 2, 2006

I received my disability pay today and immediately mailed my check # 3245 in the amount of $ 646.64. The check cleared and was paid for by my bank on May 8, 2006

### May 26, 2006

I receive a copy of a letter dated May 22, 2006 that says *I am in default* of my mortgage loan which is due for April 1, May 1, and June 1, 2006. I immediately called American Home Mortgage and talked to Lorraine who put me on hold and never returned. After almost an hour on hold, I called back and talked to a person named Albert. After a lengthy conversation, Albert told me he could not help me. I had asked him to contact Maureen Burch but he told me I would have to get it straightened out with here.

I call Maureen Burch and she says she will get it taken care of, telling me someone would call me from the mortgage servicing department. Later in the day, I received a call from Gaye Smart who told me not to worry and that she would take care of everything. I expressed my concerns about the credit reporting and the threat of late charges and penalties but she assured me I would not be charged and that my credit reports would not reflect this error on their part.

### May 27, 2006

I received a call back from Gaye Smart (phone 877-304-3100 ext 7090) who told me that I needed to pay the difference of $ 364.80 plus the June mortgage payment of $ 505.72 and everything will be fine. I told her I would need to make the payment when I received my disability paycheck, which was due June 1st. I did tell her that my checks sometimes came two days late but she said this would be okay.

Plaintiffs Exhibit # 7

**June 6, 2006**

Late yesterday I had my wife transfer enough funds into our joint account so I could pay the mortgage up to date. I have not received my disability check as yet and grew concerned that it was lost for the second time in a month in a half.

Today I called American Home Mortgage and was connected to a Kevin. I explained the whole story to him, and told him I needed to do a check by phone since I was making the payment later than I had planed. I told him I was not to be charged for the transaction, nor was I to be charged interest or late fees. He said I wasn't. I had him repeat back to me the amount of the transaction and he said "$870.52".

**June 8, 2006**

At about three in the morning, I went into my on line checking account and found that American Home Mortgage charged my account $ 1,517.16 which is three "full" mortgage payments. This transaction has overdrawn my checking account and caused my overdraft protection to kick in taking money from my credit card to my checking, at an expense to me. I called my bank immediately, but was told because it was a pending transaction, they could not stop payment, and that I should call later today.

At about six in the morning, my on line statement was showing the transaction had posted. I called my bank and put in a dispute claim # 146708JUN06. I will not receive a credit to my account until I sign a dispute form, and it is being faxed to my branch tomorrow. In the meantime, I have other checks and charges coming into the account which I will receive charges on.

Also, as of 7AM this morning, I have still not received my disability check because for the second time in a month and a half the post office returned it marked "moved left no forwarding address". I have other obligations to pay and now they must wait until I receive the credit to my checking account, and my disability check.

Just having to go through this ordeal, not to mention the complaints I am filing is at great hardship to me. I have poor eyesight (cataracts) and a sleeping ailment that makes it very difficult to stay awake and to stay focused.

There was no reason for this to happen and if the phone conversation was recorded, it will prove beyond any doubt this was an intentional act by "Kevin", and not some misunderstanding. He should be fired from his job before he causes someone great harm through his vile actions.

My request is that upon completion of your investigation, you heavily fine American Home Mortgage for this offense against me. As a processional collector, and based on the aggressive collection tactics, it is my professional, and educated opinion that American Home Mortgage is a predator lender.

**Plaintiffs Exhibit # 7**

I am faxing copies of the documentation mentioned, and a letter from American Home Mortgage Dated <u>April 27, 2006</u> tell me I should call five days before my first full payment <u>due April 1, 2006.</u>

I am forwarding this letter to the Federal Trade Commission, and to the Better Business Bureau, as well as the State Banking Commission here in Arizona  so they may become aware of this vile companies lack of professionalism, and their unlawful collection practices.

Sincerely,

Richard W. Horvath

# American Home Mortgage Servicing

P.O. Box 631730
Irving, TX 75063-1730

**Customer Care Department 1-877-304-3100**

7:00AM - 7:00PM CST Monday through Friday

Website: www.americanhm.com

Richard Horvath                    29512  PI RE
550 S. Crismon Rd
MESA  AZ  85208-2573

*[handwritten: 2 AM 6/29 Calling TT BRYT IHR IS GOING TO HAVE COLIONORTH GIRNLK CALL MR BACK.]*

Property Address:  550 S. Crismon Rd
                   Mesa  AZ  85208

## MONTHLY BILLING STATEMENT

| | |
|---|---|
| Statement Date | 06/16/06 |
| Account Number | 1001152277 |
| Due Date | 07/01/06 |

| Item Description | Amount |
|---|---|
| **Balances** | |
| Principal Balance | $64,421.94 |
| Escrow Balance | $118.47 |
| Unpaid Late Charges | |
| Other Unpaid Charges | |
| **Payment Factors** | |
| Principal & Interest Payment | $387.25 |
| Escrow Payment | $118.47 |
| Other | |
| Total Payment | $505.72 |
| **Year-to-Date** | |
| Interest Paid | $322.43 |
| Taxes Paid | |

## IMPORTANT MESSAGES

## TRANSACTIONS SINCE LAST STATEMENT

| Date | Description | Principal | Interest | Escrow | Optional Products | Miscellaneous |
|---|---|---|---|---|---|---|
| 06/13/06 | Payment to Misc. Suspens | | | | | |
| 06/15/06 | Payment Reversal | | | | | |
| 06/15/06 | Payment Reversal | $65.47- | $321.78- | $118.47- | | |
| 06/15/06 | Payment Reversal | $65.14- | $322.11- | $118.47- | | |
| 06/15/06 | Payment Reversal | $64.82- | $322.43- | $118.47- | | |
| 06/15/06 | Payment | $64.82 | $322.43 | $118.47 | | |
| 06/15/06 | Payment to Suspense | | | | | |
| 06/16/06 | Assess Fee: LATE CHARGES | | | | | $19.36 |

## SPECIAL MESSAGES

**VPI Pet Insurance provides affordable health coverage for your pet's accidents, illnesses and routine care. Enroll today and receive a group discount. Visit www.petinsurance.com or call 1-800-USA-PETS for more information.**

*[handwritten: WILSON LAW FIRM MESA AZ ATTY 6/29 585-7044 APPM BLOCK LEFT MSG FOT ATTY TO CALL MR BACK.]*

Please detach the mortgage payment coupon at perforation below and return with payment.

Plaintiffs Exhibit # 9



# American Home Mortgage Servicing

### 4600 Regent Blvd., Suite 200
### Irving, Texas 75063

July 19, 2006

Richard W Horvath
550 S. Crismon Rd
Mesa, AZ 85208

RE: AHM Account# 1001152277

Dear Richard Horvath:

Thank you for your recent correspondence regarding the above mentioned account.

This letter is in reference to your inquiry about the Western Union Speed Pay in the amount of $1,517.16. Please forward a copy of your bank statement to address listed above to verify any non sufficient and overdraft fees that may have been charged to your bank account. Upon receipt of this documentation, American Home Mortgage will continue our research.

We appreciate your business and apologize for any inconvenience that this may have caused. You are a valued customer, and we are committed to providing you with the best service possible. If you have any future questions, please contact Customer Care at (877) 304-3100.

Sincerely,

Tiffany Price
Loan Administration Research
American Home Mortgage

Cc:    Office of Consumer Credit Commissioner
       Attn: Gary Meissner
       2601 N Lamar Blvd
       Austin, TX 78705

Licensed Mortgage Banker or Authorized Lender in the Fifty States and The District of Columbia • NYSE Listing Symbol - AHM



# AMERICAN HOME MORTGAGE

January 9th, 2007

American Home Mortgage
538 Broadhollow Road
Melville, NY  11747

Richard Horvath
550 S. Crimson Road
Mesa, AZ  85208
Loan #1152277

Dear Richard:

I have recently tried to contact you regarding three loan documents that were not properly executed at the closing of your home at the above address.  American Home Mortgage, as your current lender, is responsible for obtaining these standard documents, which are required on all manufactured properties.  I have enclosed the documents, along with arrowed notes, showing where both you and a notary are required to sign.  Also enclosed is a ten dollar check to cover the notary fee, if any, and a prepaid UPS package to ship the documents directly back to me so as to make this as easy as possible for you.   I apologize for any inconvenience and thank you in advance for your cooperation.  Please do not hesitate to call me with any questions or further explanation at 312-212-4710 or toll free at 800-214-1911 ext 1001.

Sincerely,

Valerie Evans
Credit Risk Management

# experian

**Report Number:**
**2032252656**
Online Credit Report from Experian for:
**RICHARD HORVATH**

**Report date: April 14, 2007**

Summary of Investigation Results
Details of Investigation Results
Important Message from Experian
Know your rights
View a complete copy of your corrected report



The following shows the revision(s) made to your file as a result of our investigation. If you still question an item, then you may want to contact the source of the information personally.

## Summary Of Investigation Results

Back to top

**How to read your results**
- **Deleted** – This item was removed from your credit report
- **Remains** – This item has been verified as accurate
- **Updated** – A change was made to this item; review this report to view the change. If ownership of the item was disputed, then it was verified as belonging to you.
- **Reviewed** – This item was either updated or deleted; review this report to learn its outcome

Credit Items

AMERICAN HOME MTG SRV
**Account Number: 100115....**

**Outcome: Updated**

PRINCIPAL RESIDENTL MT
**Account Number: 405....**

**Outcome: Updated**

COLLECTION SERVICE BUR
**Account Number: I100BAN130218....**

**Outcome: Deleted**

## Details Of Investigation Results

Back to top

Potentially Negative Items

Back to top

Credit Items

**AMERICAN HOME MTG SRV IN**
**Address:**
PO BOX 905
 COLUMBIA, MD 21044
*No phone number available*

**Account Number:**
100115....

**Status:**
Open/Current, was past due 60 days.

**Status Details:**
As of Mar 2013, this account is scheduled to go to a positive status.
This item was verified and updated on Apr 2007.

| | | |
|---|---|---|
| **Date Opened:** 09/2005 | **Type:** Mortgage | **Credit Limit/Original Amount:** $64,590 |
| **Reported Since:** 06/2006 | **Terms:** 30 Years | **High Balance:** NA |
| **Date of Status:** 07/2006 | **Monthly Payment:** $505 | **Recent Balance:** $63,361 |
| **Last Reported:** 04/2007 | **Responsibility:** Individual | **Recent Payment:** $0 |

**Account History:**
 60 days as of Jun 2006

**Bank of America** ➤➤➤

www.bankofamerica.com

| ACCOUNT NUMBER |
|---|
| 4888936172568697 |

| CREDIT LINE |
|---|
| $2,500 |

RICHARD HORVATH
550 S CRISMON RD
MESA AZ 852082573

May 09, 2007

Dear Richard Horvath,

You recently requested a credit line increase on the above-referenced account. Unfortunately, we were unable to approve an increase because of the following:

Serious delinquency
Proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high

This decision was based on information you provided, as well as on information from the consumer reporting agency named below. Because we want you to have the maximum amount of credit possible, we will review your account periodically to determine whether you qualify for a credit line increase.

To review the contents of your credit file, please contact Experian, P.O. Box 2002, Allen, TX 75013. Their telephone number is 1-888-397-3742, and their Web address is www.experian.com/reportaccess.

If you have any questions, please call 1-866-811-4108, Monday through Friday from 8 a.m. to 10 p.m., or Saturday 9 to 5 (Eastern time). If you prefer, you may write to P.O. Box 981814, El Paso, TX 79998-1814.

Sincerely,

Card Services

**Please See The Important Notice On The Next Page**



**American Home Mortgage**
PO Box 631730 Irving, TX 75063-1730

JPMorgan Chase Bank, N.A.
6040 Tarbell Road
Syracuse, NY 13206

60-673
213

**Check No.**   0003331546

**Plaintiffs Exhibit # 13**

CHECK/AUDIT NO.
0003331546

**DATE**
05/15/07

**PAY EXACTLY**   *************************595 DOLLARS AND 40 CENTS

**$595.40**

**TO THE ORDER OF**

Richard Horvath
550 S. Crismon Rd
MESA AZ 85213

VOID IF NOT PRESENTED FOR PAYMENT
WITHIN 180 DAYS FROM DATE

BY  _Signature_

Authorized Signature

SECURE FEATURES INCLUDE INVISIBLE FIBERS • MICROPRINTING • VOID FEATURE PANTOGRAPH • ENDORSEMENT BACKER • BROWN STAIN CHEMICAL REACTANT

⑈0003331546⑈ ⑆021309379⑆ 601887474⑈

---

THIS VOUCHER IS FOR YOUR RECORD - PLEASE DETACH

**American Home Mortgage**

American Home Mortgage Servicing
PO Box 631730 Irving, TX 75063-1730
877-304-3100

ESCROW DISBURSEMENT CLEARING ACCOUNT

**No.**   0003331546

| DATE | LOAN NUMBER | NAME | POLICY NUMBER OR TAX ID | AMOUNT |
|------|-------------|------|-------------------------|--------|
| 05/15/07 | 1001152277 | Horvath | R ESCROW OVERAGE REFUND | 595.40 |

EAAB0515

AMERICAN HOME MORTGAGE SERVICING
4600 REGENT BLVD., SUITE 200
PO BOX 631730
IRVING TX 75063-1730

**Plaintiffs Exhibit # 14**

1-877-304-3100

289

Richard William Horvath
550 S. Crismon Rd
MESA AZ 85213

Page 1 of 1

Your Loan Number: 1001152277

Date: 05/16/07

## Annual Escrow Account Disclosure Statement – Projections

Please review this statement closely – Your mortgage payment may be affected. This statement tells you of any changes in your mortgage payment, any surplus refunds, or any shortage or deficiency that you must pay. It also shows you the anticipated escrow activity for your escrow cycle beginning July,2007 and ending June,2008.

### Anticipated Payments From Escrow

| | |
|---|---|
| HAZARD INS | 404.00 |
| COUNTY TAX | 330.74 |
| TOTAL | 734.74 |
| Periodic Payment to Escrow | 61.23  (1/12 of "Total from Escrow") |

### Anticipated Escrow Activity – July,2007 through June,2008

| Month | -- Anticipated Payments -- to Escrow | from Escrow | Description | -- Escrow Balance Comparison -- Anticipated | Required |
|---|---|---|---|---|---|
| | Actual starting balance ===> | | | 1,042.31 | 446.91 |
| Jul,07 | 61.23 | 0.00 | | 1,103.54 | 508.14 |
| Aug,07 | 61.23 | 0.00 | | 1,164.77 | 569.37 |
| Sep,07 | 61.23 | 404.00 | HAZARD INS | 822.00 | 226.60 |
| Oct,07 | 61.23 | 165.37 | COUNTY TAX | 717.86 ALP | 122.46 RLP ← |
| Nov,07 | 61.23 | 0.00 | | 779.09 | 183.69 |
| Dec,07 | 61.23 | 0.00 | | 840.32 | 244.92 |
| Jan,08 | 61.23 | 0.00 | | 901.55 | 306.15 |
| Feb,08 | 61.23 | 0.00 | | 962.78 | 367.38 |
| Mar,08 | 61.23 | 0.00 | | 1,024.01 | 428.61 |
| Apr,08 | 61.23 | 165.37 | COUNTY TAX | 919.87 | 324.47 |
| May,08 | 61.23 | 0.00 | | 981.10 | 385.70 |
| Jun,08 | 61.23 | 0.00 | | 1,042.33 | 446.93 |

### Determining Your Required Escrow Balance

If the Anticipated Low Point balance (ALP) is greater than the Required Low Point balance (RLP), then you have an escrow surplus....    your escrow surplus is....    595.40

Federal law requires any surplus of $50.00 or more be automatically refunded to you.

### Calculations of Your New Payment Amount

| | |
|---|---|
| P&I | 387.25 * |
| ESCROW | 61.23 |
| DISCRETIONARY | 0.00 |
| Borrower payment starting with the payment due 07/01/07 ==> | 448.48 |

* If your loan is an adjustable rate mortgage, the principal & interest portion of your payment may change within this cycle in accordance with your loan documents.

Note: Your escrow balance may contain a cushion. A cushion is an amount of money held in your escrow account to prevent your escrow balance from being overdrawn when increases in the disbursements occur. Federal law authorizes a maximum escrow cushion not to exceed 1/6th of the total annual anticipated escrow disbursements made during the above cycle. Your loan documents or state law may require a lesser cushion. When your escrow balance reaches its lowest point during the above cycle, that balance is targeted to be your cushion amount. Your escrow cushion for this cycle is $122.46.

**(See Reverse Side)**

C000236  00002CE814

AMERICAN HOME MORTGAGE SERVICING
4600 REGENT BLVD., SUITE 200
PO BOX 631730
IRVING TX 75063-1730

**Plaintiffs Exhibit # 15**

1-877-304-3100

289

Richard William Horvath
550 S. Crismon Rd
MESA AZ 85213

Page 1 of 1

Your Loan Number: 1001152277

Date: 05/16/07

## Annual Escrow Account Disclosure Statement — Projections

**Please review this statement closely** - Your mortgage payment may be affected. This statement tells you of any changes in your mortgage payment, any surplus refunds, or any shortage or deficiency that you must pay. It also shows you the anticipated escrow activity for your escrow cycle beginning July,2007 and ending June,2008.

### Anticipated Payments From Escrow

| | |
|---|---|
| HAZARD INS | 404.00 |
| COUNTY TAX | 330.74 |
| TOTAL | 734.74 |
| Periodic Payment to Escrow | 61.23  (1/12 of "Total from Escrow") |

### Anticipated Escrow Activity - July,2007 through June,2008

| Month | -- Anticipated Payments -- to Escrow | from Escrow Actual | Description | -- Escrow Balance Comparison -- Anticipated | Required |
|---|---|---|---|---|---|
| | | | starting balance ===> | 1,042.31 | 446.91 |
| Jul,07 | 61.23 | 0.00 | | 1,103.54 | 508.14 |
| Aug,07 | 61.23 | 0.00 | | 1,164.77 | 569.37 |
| Sep,07 | 61.23 | 404.00 | HAZARD INS | 822.00 | 226.60 |
| Oct,07 | 61.23 | 165.37 | COUNTY TAX | 717.86 ALP | 122.46 RLP ← |
| Nov,07 | 61.23 | 0.00 | | 779.09 | 183.69 |
| Dec,07 | 61.23 | 0.00 | | 840.32 | 244.92 |
| Jan,08 | 61.23 | 0.00 | | 901.55 | 306.15 |
| Feb,08 | 61.23 | 0.00 | | 962.78 | 367.38 |
| Mar,08 | 61.23 | 0.00 | | 1,024.01 | 428.61 |
| Apr,08 | 61.23 | 165.37 | COUNTY TAX | 919.87 | 324.47 |
| May,08 | 61.23 | 0.00 | | 981.10 | 385.70 |
| Jun,08 | 61.23 | 0.00 | | 1,042.33 | 446.93 |

### Determining Your Required Escrow Balance

If the Anticipated Low Point balance (ALP) is greater than the Required Low Point balance (RLP), then you have an escrow surplus....    your escrow surplus is....    595.40

Federal law requires any surplus of $50.00 or more be automatically refunded to you.

### Calculations of Your New Payment Amount

| | |
|---|---|
| P&I | 387.25 * |
| ESCROW | 61.23 |
| DISCRETIONARY | 0.00 |
| Borrower payment starting with the payment due 07/01/07 ==> | 448.48 |

* If your loan is an adjustable rate mortgage, the principal & interest portion of your payment may change within this cycle in accordance with your loan documents.

Note: Your escrow balance may contain a cushion. A cushion is an amount of money held in your escrow account to prevent your escrow balance from being overdrawn when increases in the disbursements occur. Federal law authorizes a maximum escrow cushion not to exceed 1/6th of the total annual anticipated escrow disbursements made during the above cycle. Your loan documents or state law may require a lesser cushion. When your escrow balance reaches its lowest point during the above cycle, that balance is targeted to be your cushion amount. Your escrow cushion for this cycle is $122.46.

**(See Reverse Side)**

C000238  00002CE814



**Plaintiffs Exhibit # 16**

**Wells Fargo Financial**
2501 Seaport Drive, Suite BH-300, Chester, PA 19013-1510
**(888) 346-4357 (T.D.D. Please use relay service)**

June 6, 2007

Richard Horvath                                     Re: Application # 39071351532
550 S CRISMON RD
MESA, AZ 85208

Dear Richard Horvath,

Thank you for your recent application for credit submitted to us on May 15, 2007.

After careful consideration, we regret we are unable to grant your request for credit under the terms and conditions requested. We can, however, offer you credit on different terms and conditions. Please contact the branch manager or telephone sales representative who handled your application for the specific terms and conditions of our counteroffer.

You have sixty (60) days from the date of this notice in which to request the specific reasons for our decision. We will provide you with a written statement of reasons within thirty (30) days of receiving your request. Should you require this information, please write to the Chester Research Department at the address shown below:

**Wells Fargo Financial**
2501 Seaport Drive, Suite BH-300
Chester, PA 19013-1510

Our decision was based in whole or in part on information contained in a report furnished by the consumer-reporting agency listed below. The reporting agency played no part in our decision and is unable to supply specific reasons why we denied credit under the terms and conditions requested. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer-reporting agency. You also have a right to a free copy of your report from the reporting agency, if you request it no later than sixty (60) days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the reporting agency named below.

**TRANS UNION**
**Consumer Relations**
**1510 Chester Pike**
**PO Box 1000**
**Chester, PA 19022-1000**
**(800) 888-4213**

It is also possible that we received information, not necessarily unfavorable, from a person other than a consumer-reporting agency. You have the right to make a written request to us within sixty (60) days after the date of this notification for disclosure of the nature of this information. See the reverse side for Important Notices.

**The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income is derived from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.**

Sincerely,
Wells Fargo Financial

Letter Id: 30D Version: 3 Rev 09/2006                    Page: 1 of 2

GE MONEY BANK
P.O. BOX 951404
EL PASO, TX 79998-1404

Please direct any inquiries concerning this notice. Our address
is located in the upper left hand corner. Requests for a copy of your credit report should
be sent to the credit reporting agency listed in the bottom portion of this notice. If no
agency is listed, a credit report was not utilized in making this decision.

Plaintiffs' Exhibit #17

FP/22

RICHARD  HORVATH
550 S CRISMON RD
MESA, AZ 85208-2573

31105

06/27/2007

## REQUEST FOR CREDIT FROM GE MONEY LINE OF CRE

GE Money Bank has received your request for credit for the program named above.   Regretfully,   your request cannot be approved at this time.

### A.   EQUAL CREDIT OPPORTUNITY ACT NOTIFICATION

1. [ ]
In reaching this decision, your request was judgmentally reviewed and denied for the following reason(s):

2. [X]
In evaluating your request, a credit scoring system was used that meets the detailed standards for such systems set out in the regulation
implementing the provisions of the federal Equal Credit Opportunity Act.
This system assigns a point value to various items of information which, taken together, have been demonstrated to predict the statistical
probability that a consumer will pay in accordance with the terms of the transaction requested.   The points obtained for each factor
or characteristic considered by the scoring system were added together and you did not achieve the approval score assigned by the system.
Since each category scored by the system contributed to the total score, no individual factor was solely responsible for your score being less
than the approval score.     Nevertheless,   the factor(s) where you did not score well compared with other consumers have been determined and
these factor(s) were:
   **DELINQUENCY, ADVERSE PUBLIC RECORD OR COLLECTION**
   **RATIO OF REVOLVING ACCOUNT BALANCES TO REVOLVING CREDIT LINES**
   **BANK REVOLVING OBLIGATIONS IN RELATION TO BANK REVOLVING LINES**

The fact that a consumer does not achieve the minimum approval score required by the system does not constitute an adverse
reflection on the consumer, but only represents our experience, on an overall statistical basis, with the various factors scored by the system.

### B.   FAIR CREDIT REPORTING ACT NOTIFICATION

1. [X]
If checked here, information contained in a credit report from a consumer reporting agency was relied on in whole  or in part in reaching
the decision indicated above.   Accordingly,   the following disclosure of the name and address of each consumer reporting agency furnishing a
credit report in this instance is given in accordance with the Fair Credit Reporting Act.   This agency (agencies) did not make the decision in
this instance and is unable to provide you with the specific reasons for our action.

   **EQUIFAX CREDIT INFORMATION SERVICES**
   **1550 PEACHTREE STREET, MAILDROP H-13**
   **ATLANTA, GA  30309**
   **800-685-1111**

(If more than one agency is disclosed herein and if box A.2.  above is completed, the reason(s)  shown in that box are based on the report
provided by the first listed agency.)

2. [ ]
If checked here,  information from an outside source other than a consumer reporting agency was relied on in whole or in part in reaching
our decision and the nature of this information is shown in box A.1. above.

The sponsor of the program named above may wish to make other arrangements to process your transaction and may contact you accordingly.

## SEE REVERSE SIDE FOR IMPORTANT INFORMATION

YOURS VERY TRULY,
CREDIT MANAGER
GE MONEY BANK

O1LN0083

CDLR9646 5966 0002 CC 1   07 070627 PAGE 00001 OF 00001      00051105

**Plaintiffs Exhibit # 18**



800 Walnut Street  MAC # F4030-078
Des Moines, IA  50309

**000045**

Ildululululillluululuull
RICHARD W HORVATH
550 S CRISMON RD
MESA, AZ  85208

06/27/07

## NOTICE REGARDING CREDIT SCORES

Thank you for your recent credit request to Wells Fargo Financial. In evaluating your application for a real estate loan, we consider various types of information, including credit scores provided by one or more of the nationwide consumer reporting agencies (commonly called credit bureaus) listed below. We are required by law to disclose the score that a credit bureau distributes and that we use in considering your application. We use credit scores because they assist us in evaluating the credit histories of our applicants in a faster, more objective manner.

One of the credit scores we obtained in connection with your application was provided by TRANSUNION. Your score on 05/14/07 was 665. The range of possible scores on this model is 300 to 850. We may also obtain and consider other credit scores from the credit bureaus in making our credit decision on your application.

In addition to the score itself, TRANSUNION provided the following key factors as the principal reasons why your score was less than the maximum possible score:

SERIOUS DELINQUENCY

PROPORTION OF REVOLVING BALANCES TO REVOLVING CREDIT LIMITS IS TOO HIGH

TOO MANY ACCOUNTS WITH BALANCES

TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN

Please keep in mind that these reason are provided as factors on which you received less than the maximum possible score. Very few borrowers receive the maximum possible score, and the listing of these factors does not by itself indicate that you will not be approved for the loan you have requested. We consider many factors in addition to your credit score in making a decision on your application. If your application is not approved, you will receive a separate notice and will be able to learn the specific reasons for that action. These reasons may or may not relate to your credit score.

Wells Fargo Financial did not calculate your credit score nor did we develop the scoring model. Information is reported by lenders and others to consumer reporting agencies on a regular basis, so your credit score may change from day to day as information is added to or modified in their files. This information may vary among credit bureaus and, therefore, your credit score may also vary.

If you have questions regarding the credit score or the list of reasons shown above, please contact TRANSUNION at P.O. BOX 4000, CHESTER, PA  19016 or 866-887-2673. Additional information about credit scoring in general is also available from Fair, Isaac and Company, Inc., a leading developer of credit scoring systems, at www.myfico.com. If you have questions about this letter, please contact your local store or call us at 800-346-3009 during normal business hours.

## Plaintiffs Exhibit # 19

### Payment Coupon

**American Home Mortgage Servicing**

☐ To change mailing address or phone number, check here and complete back of form.

**Richard Horvath**

AMERICAN HOME MORTGAGE
PO BOX 660029
DALLAS, TX  75266-0029

| | |
|---|---|
| **Account Number:** | 1001152277 |
| **Payment Due Date:** | 07/01/07 |
| **Amount Due:** | $448.48 |
| **Past Due Amount:** | $.00 |
| **Unpaid Late Charges:** | $.00 |
| **Other Fees:** | $.00 |
| **Total Amount Due:** | $448.48 |

To avoid additional charges, we must receive your payment no later than 2:30 PM Central Standard Time on 07/16/07. Funds received after 2:30 PM CST will be credited to your account on the next business day.

| | |
|---|---|
| Additional Principal | $ 25.00 |
| Additional Escrow | $ 77.24 |
| Other | $ |
| Total Amount Paid | $ 556.72 |

1001152277070107000000004848 00044848  00000 3

---

RICHARD W. HORVATH  5-93
SHARON M. HORVATH
550 S. CRISMON RD.
MESA, AZ 85208-2573
480-292-7582

3180
91-170/1221

JULY 1 2007

Pay to the
Order of  AMERICAN CITI HOME MTG          | $ 550.72

FIVR HUNDRAD FIFTY AND 72/100 _____ Dollars

**BANK OF AMERICA - ARIZONA**

THE LONE STAR STATE

JULY PMT    DUE 443.48
BSCRO: 77.24
XPRINCIPL 25.00    550.72

For_____

1:122101706: 0046509239944 3180

## Plaintiffs Exhibit # 20

# ▼ Valley Oximetry
# ▼ Sleep Disorders Center

**PHONE:** (480) 830-3900
**TOLL FREE:** (866) 916-3900
**FAX:** (480) 830-3901
**WEBSITE:** valleysleepcenter.com

P.O. BOX 30388  •  MESA, AZ 85275-0388

| | |
|---|---|
| PATIENT NAME: | Richard Horvath |
| MEDICAL RECORD NUMBER: | HORRI000 |
| REFERRING PHYSICIAN: | Wahaj Ahmed, M.D. |
| INTERPRETING PHYSICIAN: | Wahaj Ahmed, M.D. |

**DATE OF STUDY:** 4/11/06

### NASAL CPAP TITRATION

**HISTORY:** Mr. Horvath is a 61-year-old with underlying history of obstructive sleep apnea syndrome who presents to the sleep laboratory with complaints of unrefreshing sleep, extreme daytime sleepiness with urge to nap during the day, difficulty in maintaining sleep throughout the night, scoring a total of 24 out of 24 points on the Epworth sleepiness scale in spite of adherence to bilevel positive airway pressure device at pressure of 12/6 cm of water. His current medications include: NovoLog insulin, bumetanide, and lisinopril with hydrochlorothiazide. He weighs 251 pounds, standing 5-feet and 9-inches tall with body mass index at 37.1.

**PARAMETERS MONITORED:** Central and occipital electroencephalograms, right and left electrooculograms, chin electromyogram, electrocardiogram (Lead II), right and left anterior tibialis electromyogram, respiratory effort by chest movement, respiratory effort by abdominal movement, PAP airflow, snoring, and oxygen saturation by oximetry are all simultaneously recorded on the polysomnogram. The patient is also recorded and observed by infrared closed circuit television.

**INTERPRETATION:** The study began at 9:05 p.m. and concluded at 6:31 a.m. during which time a total of 429 minutes of sleep were recorded with slightly reduced sleep efficiency at 76%. The study was conducted with the application of nasal BiPAP ranging between pressures of 12/6 and 13/6 cm of water. At a bilevel PAP pressure of 12/6 cm of water, a total of 182 minutes of sleep were recorded with good amounts of sleep noted in stage REM sleep. Respiratory disturbance was reduced, with an apnea-hypopnea index of 2.6 events per hour. At a bilevel PAP pressure of 13/6 cm of water, a total of 247 minutes of sleep were recorded with good amounts of sleep noted in stage REM sleep. The patient slept in the supine position for a portion of the study. Respiratory disturbance remained resolved with an apnea-hypopnea index of 1 event per hour. Oxygen saturation was well maintained.

No significant periodic limb movements were identified. Very mild snoring was heard on bilevel PAP device. No alpha intrusion into sleep was identified. No epileptiform or interictal activity was seen.

The EKG leads revealed sinus rhythm.

The patient was fitted with a medium size ResMed Swift nasal prong mask interface. An inline heated humidification system was utilized.

**EAST VALLEY CENTER**

4555 EAST INVERNESS
BUILDING 3
MESA, AZ 85206

**BILTMORE CENTER**

4141 NORTH 32ᴿᴰ STREET
SUITE 104
PHOENIX, AZ 85018

**Plaintiffs Exhibit # 21**

Richard W Horvath
Claim for Damages

| | | |
|---|---|---|
| 1. Nine percent PA difference of 15% to 24$% on interest with daily average Bal of $7,000 X 7 years = | $ 4,410.00 |
| 2. Estimated loss of family income $12,000 yr X 7 | 84,000.00 |
| 3. Loss of Creditworthiness 7 Years @ $10,000.oo per | 70,000.00 |
| 4. Emotional pain and suffering, stress, anxiety 2years | 100,000.00 |
| 5. Physical injury to plaintiff caused by stress, fear, anxiety | 100,000.00 |
| 6. Refund of 17 months of unearned mortgage payments from Defendants since no service was rendered. | 5,185.00 |
| Total | $363,595.00 |

Plaintiff is also demanding the court award him punitive damages as provided for by law, in an amount sufficient to cause Defendants to discontinue their unlawful, and vile handling of consumer accounts.