# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., Delaware corporation, *et al.*, | ) | Jointly Administered |
| | ) | |
| Debtors. | | |

**ORDER UNDER RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY
AND RULE 2004 OF THE LOCAL BANKRUPTCY RULES FOR THE DISTRICT
OF DELAWARE, DIRECTING EXAMINATION OF, AND PRODUCTION OF
DOCUMENTS BY THE DEBTORS**

Upon the motion (the "Motion") of Vantage Pointe Capital, LLC ("Vantage Pointe"), for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2004 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), directing the examination of, and production of documents by, American Home Mortgage Corporation Holdings, Inc., together with its affiliated debtors in possession (collectively, "AHM," "Debtor," or the "Debtors"); and upon the Court having jurisdiction and due and proper notice being given, it is hereby ORDERED that:

1.    The Motion is GRANTED.

2.    On or before the date that is seven (7) days after entry of this Order, the Debtors shall produce to counsel for Vantage Pointe all documents within their possession, custody or control that are responsive to Vantage Pointe's Rule 2004 requests, which are annexed to the Motion as Exhibit G.

3.      The Debtors shall provide a representative who is qualified to testify with respect to such documents and the information contained therein at a Rule 2004 examination which shall take place at a date and time and at a location to be agreed to by the Debtors and Vantage Pointe, provided, however, that unless the parties agree otherwise the examination shall take place at the offices of Vantage Pointe's Delaware counsel at a date and time to be designated by Vantage Pointe.

4.      The Court shall retain jurisdiction with respect to any and all matters, claims or disputes arising from this Order.

Dated: October _____, 2007.

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

# EXHIBIT B

## CERTIFICATION OF COMPLIANCE WITH
## LOCAL BANKRUPTCY RULE 2004-1

Before filing this Rule 2004 Motion, counsel for Vantage Pointe Capital, LLC ("Vantage Pointe") sent an informal written request for documents and information to counsel for the Debtors on August 30, 2007, seeking to proceed consensually rather than through formal discovery. By a letter dated September 5, 2007, the Debtors declined to provide the documents and information sought by Vantage Pointe. In addition, on September 25, 2007, counsel for Vantage Pointe conferred with the counsel for the Debtors in an effort to obtain the documents and information sought by Vantage Pointe, but the Debtors did not agree to provide such documents or information. As a result, we advised counsel for the Debtors that we would be filing a Rule 2004 motion. The Debtors' counsel agreed during our call that we have satisfied the "meet and confer" requirement established by the Local Rules.

Respectfully submitted,

Michael L. Bernstein
Arnold & Porter LLP
555 12th Street
Washington, DC 20004

Counsel for Vantage Pointe Capital, LLC.

# EXHIBIT C

## ARNOLD & PORTER LLP

**Michael L. Bernstein**
Michael_Bernstein@aporter.com

202.942.5577
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

August 13, 2007

**VIA FACSIMILE**

Andrew R. Vara, Esq.
Assistant United States Trustee
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, Delaware 19801

     Re:    <u>American Home Mortgage Corporation</u>

Dear Andy:

     Thank you for taking the time to talk with Mike Canning and me this afternoon concerning the appointment of an official committee of equity security holders in the American Home Mortgage chapter 11 case. As we discussed, I am enclosing a letter from Dan Osborne of Vantage Pointe Capital outlining some of the reasons for seeking appointment of an equity committee.

     As discussed in Mr. Osborne's letter, market transactions demonstrated that there was very substantial equity value in American Home Mortgage even in the weeks leading up to the bankruptcy filing. While nearly unprecedented recent events have caused disarray in the mortgage markets, Mr. Osborne and other equity holders believe that at least a substantial part of the equity value that existed shortly before the bankruptcy filing can be preserved if the estate resists the temptation to act out of fear and to dump all of the assets into a market that is suffering from short term confusion and saturation.

     Under these circumstances, we think it is important for the voice of equity to be heard, and that appointment of an equity security holders committee will maximize the chances that value is preserved for the benefit of both creditors and equity holders.

     If you would like to discuss this with us and Mr. Osborne, please call either me at (202) 942-5577 or Mike Canning at (212) 715-1110, or send us an email message, and we will arrange a call at your convenience. Given the very fast pace with which this case appears to be moving, we would like to discuss this with you as soon as possible, since we think that an equity committee will only be able to have an impact if it gets up and running quickly.

     Thank you for your consideration.

                    Sincerely,

                    Michael L. Bernstein

cc:    Daniel K. Osborne
       Michael Canning, Esq.

Washington, DC   New York   London   Brussels   Los Angeles   Century City   Northern Virginia   Denver

# Vantage Pointe Capital, LLC
4147 North Morning Dove Circle
Mesa, Arizona 85207

August 13, 2007

Mr. Michael Bernstein, Esq.
Mr. Michael Canning, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206

Via Email

Gentlemen:

Please take the steps necessary to request the formation of a Preferred Equity Shareholders' ("Shareholders") Committee (the "Committee") for representation in the American Home Mortgage Investment Corporation ("American Home") bankruptcy proceedings. I will offer to head that Committee and will likely be able to bring other large Shareholders to the Committee and bring in other market participants with significant expertise in the mortgage industry.

There is significant value in the assets of American Home that need to be protected for the benefit of the Shareholders. Without proper representation, the creditors of American Home will have no incentive to protect that value and accordingly are likely to take actions that are detrimental to the Shareholders. It is imperative that this Committee is formed quickly to ensure proper representation before any such detrimental actions are taken.

## Value

At March 31, 2007, American Home had approximately $1.2 billion of total equity. The company raised another $92 million on May 4, 2007 bringing total equity to approximately $1.3 billion. Included in that amount are the American Home Series A and Series B Preferred Shares with an aggregate liquidation preference, excluding unpaid dividends, of $140 million. In order for the Shareholders' not to recover significant value in the bankruptcy proceedings, American Home would have had to lose over $1.2 billion or over 90% of its equity in three months.

Further, an institutional investor invested $125 million in American Home on June 27, 2007 in the form of a convertible trust preferred security. The security was convertible into American Home common stock at a price of over $25 per share. A highly accredited institutional investor that is active in the mortgage sector would not have made such an equity investment without confidence in the reported equity value of American Home. Based on this transaction, American Home would have had to lose over 90% of its equity in the forty days between the investment and the bankruptcy filing in order for the Shareholders' not to recover significant value.

Arnold & Porter LLP
Page 2 of 3

## Current Market Conditions

The market for mortgage loans and mortgage-backed securities is currently in complete disarray.
Liquidity for the trading of such assets is virtually non-existent and pricing is extremely volatile
even from hour to hour. Some senior market participants have referred to current conditions as
the worst they have seen in their entire careers. Some senior economist have referred to current
conditions are the worst since the great depression. Large investment funds have even halted
redemptions not due to realized losses but due to the lack of ability to value the mortgage related
assets in their portfolio.

The detrimental impact of liquidating American Home's assets in the current market would likely
result in a complete loss of Shareholders' value. Many of American Home's assets are
performing as expected. The unrealized loss in value that has caused much of the liquidity crisis
for American Home is due to current market conditions as opposed to a decline in the long-term
intrinsic value of its assets. If an orderly liquidation or reorganization were performed, creditors
would be protected by the nature of these performing assets while enabling a recovery for the
Shareholders.

## Standing

Vantage Pointe Capital Partners LP as of the date of this letter holds 55,590 shares of the Series A
Preferred and 37,300 shares of the Series B Preferred. I am the managing member of the general
partner of Vantage Pointe Capital Partner LP. I also hold 2,000 shares of the Series B Preferred
Personally. I purchased these shares from June 29, 2007 through the date of this letter.

Talkot Capital Partners LP as of the date of this letter holds 67,800 shares of the Series A
Preferred and 109,190 shares of the Series B Preferred. Talkot Capital Partners has agreed to be
represented by the Committee.

The aforementioned holdings represent approximately 5% of the total preferred equity
outstanding. I am confident that the Committee could attract additional Shareholders promptly.

## Experience

I have significant experience with mortgage REITs, mortgage securities, distressed situations and
general investment management. I have been involved with the mortgage REIT industry itself for
over twenty years.

Specific relevant experience includes:

- Served on the Dynex Capital, Inc. ("Dynex") bondholders' committee. Also concurrently
  managed portfolios holding Dynex preferred and common stock. The bondholders were
  paid in full. The Preferred holders recovered nearly 100% of par value including
  accumulated dividends in arrears. The value of the common stock has multiplied over
  tenfold since the committee was formed.

Arnold & Porter LLP
Page 3 of 3

- Co-founded Apex Mortgage Capital, Inc. and served as its chief operating officer and chief financial officer. Apex Mortgage Capital, Inc. was a mortgage REIT acquired by American Home in 2003.

- Consulted on the bankruptcy of Residential Resources Mortgage Investment Company. This was one of the first mortgage REITs in what is now the mortgage REIT industry. Shareholders had a positive recovery post bankruptcy.

- Participated in the management, litigation and governmental investigations relating to $2 billion of closed-end mutual funds that invested in mortgage securities. I joined this effort after the funds had lost approximately 40% of their market value. Investors in the funds received 100% of their initial capital plus dividends paid during the holding period.

I currently serve as a director of Dynex. Dynex is a mortgage REIT trading on the New York Stock Exchange.


**Other Shareholders**

Preferred stocks tend to be held by retail investors. I am confident that retail investors are holders of the American Home preferred shares as well. Retail investors generally purchase investments such as this as relatively conservative income providing assets. These retail investors currently have no representation in the American Home bankruptcy proceeding and accordingly are at a distinct disadvantage to the heavily counseled creditors. The formation of this Committee will not only protect my interests but will protect the interests of thousands of conservative retail investors that currently do not have a voice in the matter.


**Summary**

There is value in the assets of American Home beyond that which is due its creditors if an orderly bankruptcy process is followed. The formation of this Committee is crucial to protecting the interests of the Shareholders. Without adequate representation, Shareholders will likely lose 100% of their investment if American Home is liquidated hastily in the current adverse market.

Please call me at (480) 832-1166 if you have any questions. Thank you for your help in establishing this committee. I look forward to hearing from you.

Sincerely,

Daniel K. Osborne

# EXHIBIT D



**U.S. Department of Justice**

Office of the United States Trustee

*District of Delaware*

---

*J. Caleb Boggs Federal Building          (302) 573-6491
844 King Street, Suite 2207, Lockbox 35  fax (302) 573-6497
Wilmington, DE  19801*

August 28, 2007

<u>VIA ELECTRONIC MAIL</u>

Michael L. Bernstein, Esquire
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, D.C.  20004-1206
Michael_Bernstein@aporter.com

      RE:   *In re* **American Home Mortgage Holdings, Inc., a Delaware corporation,**
               *et al.*
               <u>**Case Number 07-11047 (CSS)**</u>

Dear Mr. Bernstein:

    Our office has reviewed your letter dated August 13, 2007 as well as responses to that letter from the Debtors, the Official Committee of Unsecured Creditors, and the Securities and Exchange Commission.  The United States Trustee respectfully declines to appoint an official committee of equity security holders at this time.

                    Sincerely,

                    /s/ Andrew R. Vara

                    Andrew R. Vara
                    Assistant United States Trustee

ARV/jjm

**Michael L. Bernstein, Esq.**
**August 28, 2007**
<u>**Page 2 of 2**</u>

cc (via electronic mail):  James L. Patton, Jr., Esquire
                           Pauline K. Morgan, Esquire
                           Mark S. Indelicato, Esquire
                           Bonnie Glantz Fatell, Esquire
                           Margot B. Schonholtz, Esquire
                           Laurie Selber Silverstein, Esquire
                           Erica M. Ryland, Esquire
                           Victoria W. Counihan, Esquire

# EXHIBIT E

| | | |
|---|---|---|
| **Michael** | To | jpatton@ycst.com |
| **Bernstein/Atty/DC/AmoldAnd Porter** | cc | pmorgan@ycst.com, Michael Canning/Atty/NY/AmoldAndPorter@APORTER |
| DC - 1191   202-942-5577 | | |
| 08/30/2007 06:37 PM | Subject | American Home Mortgage Corp. |

Jim –

We are advising Vantage Pointe Capital, a preferred equity holder, in connection
with the American Home Mortgage Corporation bankruptcy proceeding. In order
to be able to analyze the value of its position, and to more intelligently consider
the impact of various relief being sought by the debtors in the bankruptcy case,
our client would like to review certain information concerning the debtors' assets
and liabilities. The information our client would like to review is set forth in the
one–page attachment to this email message. Rather than proceed with formal
discovery, I thought I would simply send you a list of the information my client
would like to review, and ask you to provide it to us. (I suspect the information
we are requesting is readily available at your client, so it should not be much if
any burden to provide it to us). If you have any questions about what we are
asking for, feel free to contact me at 202 942 5577 or my partner, Mike Canning,
at 212 715 1110. Alternatively, if you think it would be more efficient for the
information to be conveyed directly between the business people, you could have
the appropriate person from your client contact Dan Osborne, the principal of
Vantage Pointe, at 480 832–1166.

One additional question we have, which is not on the attached list, is what are
the debtors' plans with respect to the sale of loans, and its motion for authority to
sell loans. As best I can tell from the docket, the debtors initially sought court
permission for the sale of loans, as well as servicing, but it appears that the
debtors have not proceeded with the loan sale part of this, and we are wondering
what are the debtors' plans in that regard.

We look forward to your response. In light of the speed with which this case is
moving, I would ask that your client provide the information we are seeking as
promptly as possible.

Thank you in advance for your cooperation.

Mike Bernstein

# American Home Mortgage Investment Corporation
## Information Request

Please provide the following information as of the most recent date available.  Please include the debtor entity in which such data applies.

- Please segregate the following by performing and non-performing
    - Whole loans held free and clear
    - Whole loans held subject to warehouse liens including lien balance
    - Whole loans held subject to commercial paper facility lien including lien amount

- Please segregate the following into these three categories: AAA, Investment Grade and Above, and Below Investment Grade and non-rated including residuals
    - Mortgage securities held free and clear
    - Mortgage securities held subject to reverse repurchase liens including lien amount

- Please segregate the following by owned free and clear and subject to liens including lien amount
    - Principal balance of master servicing rights held
    - Average servicing fee
    - Anticipated average life of underlying serviced loans

Pending whole loan repurchase claims

Pending deficiency claims from repossessed collateral transactions completed prior to bankruptcy filing

Amounts currently delinquent on subordinate notes and related trust preferred securities segregated by issuing entity

Amounts due pursuant to off balance sheet guarantees or borrowing agreements

List of secured creditors including lien balances segregated by debtor entity

Unencumbered cash held

Restricted cash held

# EXHIBIT F

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH

JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391
(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

GEORGETOWN, DELAWARE

MIDDLETOWN, DELAWARE

NEW YORK, NEW YORK

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6707
DIRECT FAX: (302) 576-0000
pmorgan@ycst.com

JOSEPH M. BARRY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
MICHELE SHERRETTA BUDICAK
JEFFREY T. CASTELLANO
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
TIMOTHY E. LENGKEEK

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
KAREN L. PASCALE
PATRICIA A. WIDDOSS

ANDREW A. LUNDGREN
MATTHEW B. LUNN
ADRIA B. MARTINELLI
KATHALEEN MCCORMICK
MICHAEL W. MCDERMOTT
TAMMY L. MERCER
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
(NJ & PA ONLY)
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
JOHN E. TRACEY
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

September 5, 2007

Michael Bernstein
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206

Re:     American Home Mortgage Holdings, Inc.; Case No. 07-11047 (CSS)

Dear Mr. Bernstein:

I write in response to your email to Jim Patton dated August 30, 2007. In your email, you request, on behalf of Vantage Point Capital, certain information regarding the assets and liabilities of the above-referenced debtors and debtors in possession (the "Debtors").

The Debtors cannot divert valuable time and resources to compile the information you have requested separate from their disclosure requirements under the Bankruptcy Code. However, the Debtors believe that at least a portion of the information you requested will be available in the Schedules of Assets and Liabilities and Statement of Financial Affairs, which the Debtors intend to file on or before October 5, 2007. Other information may be available in the Initial Monthly Operating Report, which was filed on August 21, 2007 [Docket No. 275], or in other publicly available documents. I note that certain of the information you requested in your email (i.e., the request that the Debtors create documents compiling information from various sources) would not be available to you even under a formal discovery process.

In regard to your question about the Debtors' plans with respect to the sale of loans, the Debtors intend to file a motion or motions to sell loans and are currently determining the best approach with respect to such sales.

DB02 6221786.1                                                                                          066585 1001

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Michael Bernstein
September 5, 2007
Page 2

Please feel free to contact me should you have further questions or concerns.

Very truly yours,

*Pauline K. Morgan*

Pauline K. Morgan

# EXHIBIT G

## REQUEST FOR DOCUMENTS TO BE PRODUCED BY
## THE DEBTOR OR ANY AFFILIATED ENTITY

### I.    DEFINITIONS

The terms used herein shall have the meanings assigned to them as set forth in the definitions below.

A.    "AHM," "Debtor," or the "Debtors" means American Home Mortgage Holdings, Inc. (and any predecessor thereof), any of its subsidiaries (and any predecessor thereof), related entities, affiliates, representatives, agents, officers or directors, or any other person or entity acting on its behalf.

B.    The words "you" or "your" means the Debtor.

C.    The term "document" shall mean any written, or any other tangible thing of every kind and description, however produced or reproduced, whether draft or final, in the actual or constructive possession, custody or control of the Debtors, original or reproduction, including but not limited to:  letters, correspondence, notes, films, transcripts, telegrams, teletype messages, contracts and agreements including drafts, proposals, any and all modifications thereof, licenses, memoranda, transcripts and recordings of telephone conversations or personal conversations, books, newspapers, pamphlets, statements, notices, memoranda (including inter- and intra-office memoranda, memoranda for file, pencil jotting, diary entries, recorded recollections and any other written form of notation of events thereto, draft minutes, resolutions and agenda), expressions and/or statements of policy, lists of persons attending meetings and conferences, reports, rules, regulations, directions, communications, inter-office communications, reports, financial statements, tax returns, ledgers, books of account,

proposals, prospectuses, offers, orders, receipts, analyses, audits, working papers,

computations, projections, tabulations, financial records, blueprints, plans, writings,

drawings, graphs, charts, photographs, phone records and other data computations from

which information can be obtained (translated, if necessary, into reasonably usable form),

invoices, receipts, working papers, desk calendars, appointment books, diaries,

timesheets, logs, movies, tapes for visual audio reproduction, recordings, magnetic

computer tapes and discs, reports and/or summaries of negotiations, proposals, "e-mail,"

electronic mail, voicemail, and material similar to any of the foregoing, however

denominated.  The term "<u>document</u>" shall also include all copies of each document if the

copies contain any additional writing or are not identical copies of the originals.

## II.    INSTRUCTIONS

A.    The documents covered in this request include all documents in your

possession, custody or control.

B.    Where documents in the possession or control of the Debtors are

requested, each request includes documents not only in possession of the Debtors, but

also the Debtors' agents, representatives, experts, attorneys, and person consulted relating

to any of the facts or issues involved in this action.

C.    A request for a document shall be deemed to request information as of the

most recent date available.

D.    Each request for documents or information shall be considered continuing

in nature.  If additional documents or information comes into your possession, custody,

control, knowledge, or are brought to your attention, supplementation of these requests in

a prompt manner is required.

E.      The documents should be produced in the manner in which they are maintained in the normal course of business, unless you are specifically asked to organize and label the documents.

F.      Each request for the production of documents shall be deemed to apply to each Debtor entity where applicable, and each request includes the request that where the document applies to a specific entity, the Debtor entity be identified.

G.      A request for a document shall be deemed to include a request for any and all file folders within which the document is, or was, contained.  This includes, although is not limited to, transmittal sheets, cover letters, enclosures, and attachments to the requested document.

H.      If any document request cannot be answered in full after exercising due diligence to secure the information, please so state and answer the document request, to the extent possible, specifying any inability to answer the remainder of any such request, and stating whatever information or documents are presently available to you concerning the unanswered portion of said request.

I.      If responsive documents once existed but no longer exist, or are no longer in your possession, please explain the disposition of the documents.

J.      To the extent that you consider any of the following requests objectionable, answer so much of each request and each part thereof as is not objectionable in your view and separately state that part of each request as to which you object and each ground for each objection.

3

K.    If you object to any request or part thereof on the claim of privilege, identify each request for which the privilege is claimed, together with the following information:

      (i)    the date of each document;

      (ii)    the sender;

      (iii)    the addressee;

      (iv)    the number of pages;

      (v)    the subject matter;

      (vi)    the basis on which the privilege is claimed;

      (vii)    the names of all persons to whom copies of any part of the document were furnished, together with an identification of their employer and their job titles;

      (viii)    the present location of the document and all copies thereof; and

      (ix)    each person who has ever bee disclosed the contents of the document, seen the document or ever had possession, custody, or control of the document.

L.    The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The word "including" shall be construed to mean without limitation.

## III.    REQUESTS FOR PRODUCTION

### REQUEST NO. 1.

Provide such documents as the Debtors customarily utilize or refer to in valuing, for purposes of SEC filings, the following: (1) whole loans held free and clear of liens or claims of other parties; (2) whole loans held subject to warehouse liens; and (3) whole

4

loans held subject to commercial paper facility liens or interests.  In addition, for whole loans held subject to warehouse liens, provide documents sufficient to show the amount of any such liens, and for whole loans held subject to commercial paper facility liens or interests, provide documents sufficient to show the amounts of any such liens and the nature of any such interests.  Segregate these documents by performing and non-performing whole loans.

## REQUEST NO. 2

Provide such documents as the Debtors customarily utilize or refer to in valuing, for purposes of SEC filings, the following:  (1) mortgage securities held free and clear; and (2) mortgage securities held subject to reverse repurchase liens or interests.  In addition, for mortgage securities held subject to reverse repurchase liens or interests, provide documents sufficient to show the amounts of any such liens and the nature of any such interests.  Segregate these documents by AAA, Investment Grade and Above and Below Investment Grade and non-rated, including residuals.

## REQUEST NO. 3

Provide such documents as the Debtors customarily utilize or refer to in valuing, for purposes of SEC filings, the following:  (1) the principal balance of loans and mortgage securities regarding which the Debtors hold master servicing rights; (2) the average servicing fee applicable to such loans and mortgage securities; and (3) the anticipated average term of such loans and mortgage securities.  Segregate these documents by loans and mortgage securities owned free and clear and those subject to

liens or interests of third parties, and where applicable provide the amount of any such lien or amount of any such interest.

## REQUEST NO. 4

Provide documents listing, and sufficient to demonstrate:  (1) the number of whole loans subject to repurchase obligations; and (2) the aggregate potential liability of the Debtors on account of such repurchase claims.

## REQUEST NO. 5

Provide documents sufficient to demonstrate, and determine the amount of, any deficiency claims from repossessed collateral transactions completed prior to the bankruptcy filing.

## REQUEST NO. 6

Provide documents reflecting the amounts currently delinquent on subordinate notes and related trust preferred securities.  Segregate these documents by issuing Debtor entity.

## REQUEST NO. 7

Provide documents sufficient to show the amounts due pursuant to off balance sheet guarantees or borrowing agreements.

## REQUEST NO. 8

Provide a list of secured creditors including lien balances, segregated by Debtor entity.

**REQUEST NO. 9**

Provide documents sufficient to show the amounts of the unencumbered cash held by each Debtor entity.

**REQUEST NO. 10**

Provide documents sufficient to show the amount of the restricted cash held by each Debtor entity.

**REQUEST NO. 11**

Provide a non-objecting beneficial owners list for shareholder names held in street name.

**REQUEST NO. 12**

Provide documents sufficient to show the amount of mortgage insurance coverage relating to the Debtors' loans and mortgage securities, including lender and borrower paid mortgage insurance coverage.

**REQUEST NO. 13**

Provide the month end general ledger closing package that has been historically prepared by the Debtors for the month most recently closed and for the two prior months.