IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| American Home Mortgage Holdings, Inc., *et al.*, | : Case No. 07-11047 (CSS) : (Jointly Administered) |
| Debtors. | : : **Objection Deadline: n/a** **Hearing Date: October 1, 2007** |

## JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO DEBTORS' MOTION FOR ORDER (I) TERMINATING THEIR NON-QUALIFIED DEFERRED COMPENSATION PLAN AND (II) DIRECTING THE TRUSTEE OF THE DEBTORS' NON-QUALIFIED DEFERRED COMPENSATION PLAN TRUST TO RETURN DEBTORS' ASSETS

The Official Committee of Unsecured Creditors ("Committee"), by and through its undersigned counsel, hereby files this Joinder In Debtors' Omnibus Reply To Objections To Debtors' Motion ("Motion") For Order (I) Terminating Their Non-Qualified Deferred Compensation Plan And (II) Directing The Trustee Of The Debtors' Non-Qualified Deferred Compensation Plan Trust To Return Debtors' Assets ("Debtors' Reply"). The Committee adopts the arguments presented in the Debtors' Reply as if set forth herein and respectfully submits the following additional arguments:

### A. The Plan is an Unfunded "Top Hat" Plan and the Funds in the Plan Trust are at all Times an Asset of the Company.

The deferred compensation Plan[1] states very clearly in the second paragraph that "the Plan is unfunded and maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees..." It is a "top hat" Plan. While there is no requirement that funds be set aside to pay the benefits promised under the Plan,

---

[1] Terms not otherwise defined herein shall have the meanings ascribed in the Motion, Objections and Debtors' Reply.

1318281.v3
128189/01600/40171367v1

the Company, in its sole discretion, may elect to establish a reserve from which the employer may satisfy its obligation to pay benefits under the Plan.

> The Administrator, in its discretion, may elect to establish a Fund containing assets equal to the amounts credited to Participants' Nonqualified Accounts, and *may elect in its discretion to hold the Fund in trust*, provided, however, that such Fund shall remain a general asset of the Company subject to the rights of creditors of the Company in the event of the Company's bankruptcy or insolvency as may be defined in any such trust.

*See*, Plan at § 5.4, emphasis added.

Even though set aside in a trust, the funds retain their status as general assets of the employer, not unlike any other cash held by the employer in any of its bank accounts. An employer that transfers funds into a rabbi trust "is treated as the owner of the funds and taxed on all fund earnings until the date of distribution." *In re IT Group*, 448 F. 3d 661, 665 (3d. Cir. 2006). While payments to beneficiaries are made from the rabbi trust or from the employer's other accounts, it is the employer, not the Plan that pays the benefit. Indeed, there is no requirement in the Internal Revenue Code or ERISA that the Employer establish a trust for purposes of funding benefits under the Plan. It is ultimately the Employer's obligation to pay the benefits, and it is within its discretion to elect to set aside funds in a rabbi trust which it intends to use for the purposes of meeting its obligations under the Plan. The IRS takes the position that funds in a rabbi trust are part of the employer's assets. 26 U.S.C. §§ 671 through 679. The Department of Labor takes a similar position. DOL Adv. Op. 91-16A (attached as Exhibit "A"). By establishing the Trust in accordance with the terms of the Plan, the employer does nothing more than indicate an intent to pay benefits under the Plan from those funds until the employer becomes insolvent. Upon insolvency, the general assets in the rabbi trust may be used only to pay the general creditors of the employer.

Specific provisions in the Trust Agreement make it abundantly clear that the Trust is part of an unfunded arrangement and that the Company places funds in the Trust at the Company's discretion. For example,

- "WHEREAS it is the intention of the parties that ***this trust shall constitute an unfunded*** arrangement and shall not affect the status of the plan as an unfunded plan maintained for the purpose of providing deferred compensation for a select group of management or highly compensated employees for the purpose of Title 1 of the Employee Retirement Income Security Act of 1974;" (Trust, Fourth Decretal paragraph, emphasis supplied).

- "WHEREAS it is the intention of the Company to make contributions to the Trust ***to provide itself with a source of funds to assist it in the meeting of its liabilities under the Plan;***" (Trust, Fifth Decretal paragraph, emphasis supplied).

The Plan and Trust documents also make clear that upon insolvency the funds in the Trust are subject to the claims of the general creditors of the Company.

- "Any rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against the Company. Any assets held by the Trust will be subject to the claims of the Company's general creditors under federal and state law in the event of Insolvency as defined in Section 3(a) herein." (Trust, § 1(d))

- "The Trustee shall cease payments of benefits to the Plan participants and their beneficiaries if the Company is insolvent." (Plan, § 3(a))

- At all times during the continuance of this Trust … the principal and income of the Trust shall be subject to the claims of general creditors of the company under federal and state law…" (Plan, § 3(b))

The Participant Group argues in their Objection that Sections 13(b) and 13(c) of the Trust Agreement provide that as long as there are benefit rights to be administered under the Plan, the Trust cannot be contractually terminated. (Obj. para. 6). However, they fail to add the additional language in each subsection that upon termination the assets in the Trust "shall be returned to the Company". They also cite to Section 12.8(c) of the Plan and misconstrue the language in concluding that termination of the Plan only permits the Debtors to stop accruing new liabilities under the Plan but does not permit the Debtors to terminate the Trust or seize the

- 3 -

Trust assets. (Obj. ¶ 6). The Debtors are not seeking to terminate the Trust, nor are they seizing assets. This limited and biased reading of the documents is completely at odds with other provisions of the Plan and the Trust Agreement. In the Trust Agreement, Section 4, <u>Payments to the Company</u>, specifically refers to subsection Section 3 of the Trust Agreement as an *exception* to the general rule that the Company has no right to direct the Trustee to return to the Company any of the Trust assets. Section 3, as quoted above, prescribes the Trustee's responsibility regarding payments to the Plan Beneficiaries when the company is insolvent, namely that payments to the beneficiaries must cease and the funds are held solely for the benefit of the Company's general creditors. Moreover, the Trust recognizes that the Plan beneficiaries may have rights as general creditors of the Company with respect to any benefits due under the Plan. *See* Trust, § 3(b)(iii).

> **B.      <u>Employees Never Had Funds "Withheld" from their Wages to Fund the Plan Assets.</u>**

Pursuant to the Plan, consistent with a top hat plan, there were no amounts withheld from employee wages. The employees did not contribute monies from their wages to fund the Trust. Instead, the employees agreed to forego the current payment of wages in exchange for the employer's unsecured promise to pay at a future date. A top hat plan is a tax savings mechanism for employees. A top hat plan enables employees to delay payment of taxes on amounts deferred under the Plan. *In re IT Group, Inc.*, 448 F. 3d at 665. Each employee exchanges the right to receive current compensation (thus deferring taxes) for an unsecured promise from the employer. The amounts that employees agree to forego in exchange for a tax deferral remain general assets of the employer, subject to the rights of all general creditors of the company, including the beneficiaries, if the employer later is determined to be insolvent.

While the Committee is sensitive to the misfortune of the participants that voluntarily elected to defer compensation, the Plan documents made clear that this was an unfunded Plan. Participants were provided with the Plan documents including a Plan Summary that specifically disclosed that the employees did not have an ownership interest in the rabbi trust assets or in any other specific assets of the Company. In a Question and Answer format, the Summary clearly states that the assets are available to general creditors of the Company in the event of the Company's insolvency. The employees should have been cognizant that in achieving a tax deferral, they were taking the risk that their unsecured promises from the Employer would be left unfulfilled in the event of its insolvency. As a fiduciary to all unsecured creditors, the Debtors cannot ignore the plain language of the Plan and the Trust Agreement and prefer the beneficiaries over the interests of the other creditors of the estate.

Dated: September 28, 2007

BLANK ROME LLP

*Bonnie Fatell*
Bonnie Glantz Fatell (No. 3809)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Mark T. Power
488 Madison Avenue
New York, New York 10022
Telephone:    (212) 478-7200
Facsimile:    (212) 478-7400

*Proposed Co-Counsel for the Official Committee of Unsecured Creditors*

128189/01600/40171367v1