# **<u>EXHIBIT A</u>**

Checkpoint Contents
 Pension & Benefits Library
  DOL, PBGC & Other Rulings and Releases
   ERISA Opinion Letters
    1991
     ERISA Opinion Letter Nos. 91-01A to 91-40A
      ERISA Opinion Letter No. 91-16A

**ERISA Opinion Letter 91-16A , 04/05/1991**

**References:** 4,

**References:** 4(b),

**References:** 4(b)(5),

**References:** 201,

**References:** 201(2),

**References:** 301,

**References:** 301(a),

**References:** 301(a)(3),

**References:** 401,

**References:** 401(a),

**References:** 401(a)(1)

Mr. Kenneth E. Kempson

Acting Associate Chief Counsel (Technical)

Office of Chief Counsel

Internal Revenue Service

CC Room 3527

1111 Constitution Avenue, N.W.

Washington, D.C. 20224

Dear Mr. Kempson:

This is in response to your request concerning whether a "rabbi trust" arrangement, as described in a draft Revenue Procedure [dated: October 1, 1990], a copy of which was transmitted for our review, would be considered to be "unfunded" for the purposes of the so-called "excess benefit" and "top hat" plan exemptions under sections 4(b)(5), 201(2), 301(a)(3) and 401(a)(1) of Title I of the Employee Retirement Income Security Act (ERISA).

The draft Revenue Procedure provides, in Section 2, that the Internal Revenue Service (the Service) generally will not issue private letter rulings on deferred compensation arrangements that use a trust other than the model "rabbi trust" described in Section 5.02 of the Procedure. Among the required provisions of the model trust, and relevant to our consideration of your request, are representations that the trust assets shall be subject to the claims of the employer's general creditors in the event of the employer's insolvency, as defined in the Procedure, until paid to plan participants and their beneficiaries in such manner and at such time as specified in the plan(s); and that it is the intention of the parties that the trust shall constitute an unfunded arrangement and shall not affect the status of the plan as an unfunded plan maintained for the purpose of providing excess benefits or deferred compensation for a select group of management or highly compensated employees for purposes of Title I of ERISA. (**See:** draft Revenue Procedure, Section 5.02 Model Provisions, paragraphs (d) and (e) of the model trust).

Other required provisions of the model trust specify that: the principal, and any earnings thereon, held in trust shall be used exclusively for the purpose of plan participants and general creditors; plan participants and their beneficiaries have no preferred claim on, or any beneficial ownership interest in, any assets of the trust; any rights created under the plan and the trust agreement shall be mere unsecured contractual rights of plan participants and their beneficiaries against the employer; any assets held by the trust will be subject to the claims of the employer's general creditors under federal and state law in the event of insolvency, as defined the model trust; and benefits payable to plan participants and their beneficiaries under the trust agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered, or subject to garnishment, levy, execution or other legal or equitable process. (**See:** Sections 1(d) and 13(b) of the model trust).

Section 1(e) of the model trust provides alternative provisions (at least one of which must be selected by the employer when establishing the trust) regarding the contribution of assets to the trust. Two of the alternatives requires the employer, following either a "change in control," as defined in the model trust, or the end of the plan year(s) ending after the trust otherwise becomes irrevocable, to make an irrevocable contribution to the trust in an amount sufficient to provide for the future payment to each plan participant or beneficiary the benefits they would be entitled to receive under the terms of the plan(s). The alternatives also provide that if the employer fails to make any of the required deposits under the terms of the trust in a timely manner, the trustee shall take all reasonable action, including the institution of appropriate legal proceedings, to require the employer to make any and all payments under the terms of the trust. In addition, the alternatives provide that plan participants an beneficiaries are third-party beneficiaries of this provision of the trust and shall be entitled to enforce the trust agreement against the employer as if they were parties thereto and in their own names. Under the terms of the trust, the employer will pay all expenses, including attorney's fees and court costs, reasonably incurred by the trustee or plan participants and their beneficiaries in connection with the enforcement of such provision.

You have requested an advisory opinion as to whether the establishment and operation of the model trust, with the inclusion of one of the alternative mandatory contribution provisions, will cause an underlying excess benefit or "top hat" plan to be other than

"unfunded" for purposes of the exemptions under sections 4(b)(5), 201(2), 301(a)(3) and 401(a)(1) of Title I or ERISA.

Section 4(b)(5) of ERISA exempts from the coverage of all of Title I of ERISA a plan that is both "unfunded" and an "excess benefit plan" as defined in section 3(36) of ERISA. Section 3(36) defines an excess benefit plan as "a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of the Internal Revenue Code of 1986 on plans to which that section applies, without regard to whether the plan is funded." Sections 201(2), 301(a)(3) and 401(a)(1) exempt from the application of Parts 2, 3 and 4, respectively, "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," (so-called "top hat" plans).

The Department is generally of the view that any determination of the "unfunded" status of a plan of deferred compensation requires an examination of the surrounding facts and circumstances, including the status of the plan under non-ERISA law. In the absence of pertinent legislature history defining "unfunded" for purposes of Title I of ERISA, the Department believes that, in the case of an excess benefit or "top hat" plan, the position adopted by the Service regarding the tax consequences to trust beneficiaries should be accorded weight under Title I. In a December 13, 1985, letter to the Service, the Department addressed the issue of "unfunded" in the context of "rabbi trust" arrangements that did not contain mandatory contribution provisions. In that letter, the Department indicated that, in consonance with positions expressed by the Service in numerous private letter rulings, it was the working premise of the Department that a "top hat" plan (or excess benefit plan) would not fail to be "unfunded" for purposes of sections 4(b)(5), 201(2), 301(a)(3) and 401(a)(1) of Title I of ERISA solely because there is maintained in connection with such a plan a "rabbi trust" of the kind described in those rulings. The inclusion of the mandatory contribution provisions described in the subject model trust does not change the Department's view.

Therefore, based on the facts and representations submitted as part of your request, and consistent with the Department's general views described above, it is the opinion of the Department that a plan will not fail to be "unfunded" for purposes of sections 4(b)(5), 201(2), 301(a)(3) and 401(a)(1) solely because there is maintained in connection with such plan a "rabbi trust" that conforms to the model trust described in the draft Revenue Procedure.

This letter constitutes an advisory opinion under ERISA Procedure 76-1. Section 10 of the Procedure explains the effect of advisory opinion.

Sincerely,

Robert J. Doyle

Director of Regulations and Interpretations

© 2007 Thomson/RIA. All rights reserved.