IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AMERICAN HOME MORTGAGE | § | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, | § | |
| et al., | § | (Jointly Administered) |
| | § | |
| | § | Ref. Docket No. 900 |
| Debtors. | § | Sale Procedures Hearing Date: October 1, 2007 @ 10:00 a.m. |
| | § | Sale Procedures Objections Due: September 28, 2007@ 4:00 p.m. |

**LIMITED OBJECTION OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
TO MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE
PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF ASSETS
RELATED TO THE DEBTORS' CONSTRUCTION LOAN BUSINESS; (III) APPROVING
FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF;
AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND
APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES RELATED THERETO; (IV) AUTHORIZING THE DISTRIBUTION
OF THE PROCEEDS OF THE CONSTRUCTION LOANS TO;
AND (V) GRANTING RELATED RELIEF**

JPMorgan Chase Bank, National Association ("JPMC") and certain of its affiliates (collectively, the "JPMC Entities"), by and through their undersigned counsel, hereby file this Limited Objection (the "Objection") to the *Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Assets Related to the Debtors' Construction Loan Business; (III) Approving Form and Manner of Notice thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; (IV) Authorizing the Distribution of the Proceeds of the Construction Loans to; and (V) Granting Related Relief* [Dkt. No. 900] (the "C/P Loan Motion") and, in support of their Objection, respectfully state as follows:

**BACKGROUND**

1. On August 6, 2007 (the "Petition Date"), American Home Mortgage Investment Corp. ("AHMIC") and certain of its affiliates and subsidiaries (collectively, the "Debtors" and, individually, a "Debtor") commenced voluntary cases under Chapter 11 of the Bankruptcy Code in this Court (the "Bankruptcy Cases").

2. The Debtors remain in possession of their property and are managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On August 14, 2007, the United States Trustee appointed an Official Committee of Unsecured Creditors. No Chapter 11 trustee or examiner has been appointed in these cases.

4. Prior to the Petition Date, American Home Mortgage Investment Corp ("AHMIC") and American Home Mortgage Corp. ("AHM") entered into a $200 million senior secured revolving Warehouse Facility (the "Warehouse Facility") with JPMC (as Administrative Agent and sole Lender), pursuant to that certain 1/06 SENIOR SECURED CREDIT AGREEMENT, dated January 24, 2006 (as subsequently amended, supplemented and extended) (the "1/06 Credit Agreement"). Under the 1/06 Credit Agreement, JPMC provided short-term warehouse financing to the Debtors to enable them to fund mortgages as part of their ordinary business operations. Pursuant to Article VII of the 1/06 Credit Agreement, AHMIC and AHM also granted a first-priority lien and security interest in, *inter alia*, the pledged residential loans upon which the warehouse financing was to be extended, the underlying chattel paper and other loan documentation evidencing those loans, and all proceeds, accessions or other rights of any kind related to these loans (collectively, the "JPMC Warehouse Facility Collateral"). Included in the JPMC Warehouse Facility Collateral are residential loans supporting the construction or improvement of single-family homes which convert to regular (i.e., "permanent") mortgage loans once the home is built or the improvements completed (collectively, the "JPMC C/P

Loans").

5.      On August 9, 2007, this Court approved that certain Stipulation by and between Debtors and JPMorgan Chase Bank, National Association ("JPMC Stipulation"). In the Stipulation, JPMC and the Debtors agreed that there were approximately fifteen (15) JPMC C/P Loans constituting JPMC Warehouse Facility Collateral and that the maximum amount to be advanced on these loans was approximately $24,742,143.[1] The JPMC Stipulation also outlined the terms by which JPMC would, on a post-petition basis, continue to fund and advance amounts demanded by mortgagees under the JPMC C/P Loans.

6.      The Debtors filed the C/P Loan Motion on September 21, 2007. The C/P Loan Motion seeks to establish auction procedures (the "Sale Procedures") for selling the Debtors' Construction Loans[2] and Construction Loan Platform (collectively, the "C/P Assets") and to authorize, *inter alia*, the sale of these Assets free and clear of all liens, claims and interests to the winning bidder(s) at the auction (the "Auction") held pursuant to these procedures. The JPMC C/P Loans are among the C/P Assets the Debtors seek to sell at the Auction. (C/P Loan Mtn. ¶ 16).

7.      The JPMC Entities object on a limited basis to the C/P Loan Motion. Though the JPMC Entities support in principle the Debtors' efforts to sell the JPMC C/P Loans at the Auction, the JPMC Entities do require certain additional protections and clarifications to the Sale Procedures and the Auction before they will consent to the JPMC C/P Loans' being a part of this process. *See* 11 U.S.C. § 363(f) (noting that, among other criteria, a secured party must consent before its collateral may be sold free and clear of liens and claims).

---

[1] The Debtors and the JPMC Entities are reconciling their respective books and records regarding the exact number of JPMC C/P Loans and their current advance balances. Once this reconciliation process is complete, the JPMC Entities expect that the number of confirmed JPMC C/P Loans may increase substantially.

3

**LIMITED OBJECTION**

8. The JPMC Entities' objections and concerns fall into five (5) general categories. Specifically, before the JPMC Entities will consent to any sale of the JPMC C/P Loans at the Auction, the Debtors must: 1) grant the JPMC Entities the right to participate in the Auction to the same extent and on the same basis as the other secured parties (such as Bank of America, N.A.[3]), 2) recognize the JPMC Entities' right to bid, including to credit bid, at the Auction, 3) clarify the Auction's bid requirements and other procedures, 4) agree to distribute directly to the JPMC Entities the proceeds generated from the sale of the JPMC C/P Loans, and 5) provide counter-parties to any "Assumed Contracts" an opportunity to generally object to the assumption of those contracts.

9. <u>Auction Rights and JPMC Participation</u>. The JPMC Entities object to the C/P Loan Motion and the Sale Procedures because they do not clearly spell out the JPMC Entities' right to participate in the Auction. As secured creditors, the JPMC Entities have an interest in all aspects of any sale or disposition of their collateral. In that respect, the JPMC Entities should at least enjoy the same rights to participate in the Auction as the Administrative Agent has been afforded. Among other things, the Administrative Agent receives notice of any change in the Auction's venue or date, may attend the Auction, is consulted regarding any rules subsequently adopted as to the Auction, receives information about bids and bidders, and participates in the qualification and choosing of bidders. (*See* Auction Procs. pp. 3-7).

10. The Sale Procedures should be amended to afford the JPMC Entities these same rights. For instance, the JPMC Entities should receive notice if the Debtors change the place of the Auction or its date and time. The JPMC Entities should also be notified prior to the Auction of any parties designated as Qualified Bidders for the JPMC C/P Loans and should receive a copy of each bid.

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the C/P Loan Motion.

Further, the JPMC Entities should, like the Administrative Agent, have the right to attend the Auction and to be consulted regarding any further rules for conducting the Auction that might affect the JPMC C/P Loans. Finally, the JPMC Entities should be allowed to determine and identify (in consultation with the Debtors, the Committee, the Administrative Agent, and the DIP Agent) the Successful Bid or Next Highest Bid for the JPMC C/P Loans.

11. In short, the JPMC Entities should have the same rights to participate in the Auction as does the Administrative Agent. To the extent that the Sale Procedures are not amended to grant such rights to the JPMC Entities, then the JPMC Entities object to entry of an order approving the C/P Loan Motion.

12. <u>Right of JPMC Entities to Bid</u>. The JPMC Entities also object on a limited basis to the Sale Procedures and the C/P Loan Motion since they do not state that the JPMC Entities' have a right to bid at the Auction—either to credit bid for the JPMC C/P Loans pursuant to Bankruptcy Code § 363(k) or to generally bid for other C/P Assets.

13. First, to be acceptable to the JPMC Entities, the Sale Procedures must provide that JPMC may credit bid at the Auction on the JPMC C/P Loans. The holder of an allowed claim that is secured by a lien on property may offset such claim against the purchase price of the property pursuant to § 363(k) of the Bankruptcy Code. 11 U.S.C. § 363(k). Thus, consistent with § 363(k) the JPMC Entities have the right to credit bid for the JPMC C/P Loans at the Auction. *See id.* The Sale Procedures should be amended to reflect this right and to provide that any such credit bid by the JPMC Entities is automatically considered a Qualified Bid. The JPMC Entities' right to credit bid would extend only to the JPMC C/P Loans that will be sold at the Auction and not to any of the other C/P Assets that do not constitute JPMC Warehouse Facility Collateral.

14. Second, the Sale Procedures should be clarified to recognize that the JPMC Entities

---

[3] Bank of America, N.A. is identified in the C/P Loan Motion as the "Administrative Agent".

and/or any affiliate or other entity associated with them may participate as ordinary bidders at the Auction for all or a portion of the C/P Assets (other than for the JPMC C/P Loans). To qualify as a bidder in this case, any JPMC-associated entity would have to submit a Qualified Bid as set forth in the Sale Procedures and otherwise satisfy the requirements for participating in the Auction. Neither the JPMC Entities nor any other person associated with them should be excluded from the Auction simply because the JPMC C/P Loans are part of the C/P Assets being sold.

15. <u>Clarification of Bid Requirements and Other Sale Procedures</u>. Besides these bidding issues, the JPMC Entities also request that the Sale Procedures be clarified in certain other respects. First, the Sale Procedures should require bidders to allocate the purchase price of their bids in such a way that secured lenders like the JPMC Entities will be able to determine what portion of the purchase price in any given bid applies to their collateral. Although the Sale Procedures do indicate that each bid must identify separate purchase prices with respect to each asset (i.e., the "Allocated Purchase Price"), the Sale Procedures should better clarify that bidders must divide up the purchase price in their bids either by portfolio or by some other method to which the Debtors and their lenders agree so that those lenders may easily discern the values that bidders have placed on their collateral. Such a clarification will allow for robust bidding and will limit potential confusion or infighting among the lenders over the allocation of a particular bid's purchase price.

16. Second, the Sale Procedures do not address what representations, if any, the Debtors' depository custodian holding the underlying loan documentation for the C/P Assets will make to potential bidders prior to the Auction. In an ordinary "as is, where is" sale of mortgage loans, the seller's depository custodian usually provides a certification to any potential purchasers indicating what mortgage documents the custodian actually holds regarding the loans being sold (e.g., the promissory note, mortgage instrument, etc.). At a minimum, the Sale Procedures should explain

whether the Debtors' depository custodian will provide potential bidders with such a certification during the due diligence process prior to the Auction. Whether or not potential bidders will receive such a certification (and what form it takes) directly affects the price they will offer at the Auction for the C/P Assets. The Sale Procedures should be amended to address this issue.

17. Third, the Debtors have not yet filed the proposed Purchase and Sale Agreement containing the material terms to which Qualified Bidders must agree. Until the Debtors file the form Purchase and Sale Agreement, the JPMC Entities can only speculate as to what this agreement's material terms may be. The proposed Purchase and Sale Agreement is critical. It establishes key parameters for the sales and outlines the form bids must take to qualify as Qualified Bids. For example, the Purchase and Sale Agreement ordinarily contains such material deal points as the cutoff dates applicable to the loans being sold. These dates affect, among other things, the calculation (and allocation between seller and purchaser) of principal and interest on each mortgage loan sold. In addition, they determine how further advances made prior to any closing (including advances made both before and after the relevant cutoff dates) will affect a given loan's balance. Here again, such terms impact the price a purchaser will offer for the loans. Other matters also typically addressed in the Purchase and Sale Agreement include the conditions under which the depository custodian for the seller's mortgage documents finally certifies what documents it holds and/or agrees to transfer those documents to the buyer at closing. Without the proposed Purchase and Sale Agreement, these important deal points remain unknown.

18. Until these key clarifications are made and the proposed Purchase and Sale Agreement is filed, the JPMC Entities must reserve all their rights regarding the C/P Loan Motion and the Sale Procedures. Moreover, to the extent that the Debtors are unable or unwilling to make these changes, then the JPMC Entities object to the C/P Loan Motion and the Sale Procedures.

19. <u>Distribution to JPMC of Proceeds of Sale of JPMC C/P Loans</u>. The JPMC Entities also object to the C/P Loan Motion, the proposed Sale Order, and the Sale Procedures because they do not expressly require the Debtors to pay all proceeds from the sale of the JPMC C/P Loans to the JPMC Entities at closing. Such specific provisions <u>do</u> benefit the Administrative Agent and ABN Amro Bank, N.V. For instance, the proposed Sale Order states that the proceeds generated by any sale of the Administrative Agent Construction Loans (including but not limited to any Minimum Deposit) will be paid directly to the Administrative Agent at the closing of any sale of those loans in an account specified by the Administrative Agent in writing. The JPMC Entities deserve this same protection. The JPMC C/P Loans are the JPMC Entities' collateral, and the 1/06 Credit Agreement states that proceeds from the sale of that collateral must go to JPMC, as the administrative agent on the Warehouse Facility, until the indebtedness under the Warehouse Facility is fully paid. (1/06 Cred. Agr. ¶¶ 7.8, 11.4).

20. Simply put, basic fairness dictates that if the Administrative Agent and ABN receive the proceeds of their collateral directly from the Debtors, then the JPMC Entities should too. Thus, the JPMC Entities object to the C/P Loan Motion, the Sale Procedures and the proposed Sale Order to the extent that the JPMC Entities do not enjoy the same protection in this regard as the Administrative Agent and ABN.

21. <u>Assumption and Assignment of Executory Contracts</u>. Finally, the JPMC Entities object to the C/P Loan Motion and the proposed Sale Procedures Order because they appear not to contemplate that a counter-party to a proposed Assumed Contract may object *in toto* to the proposed assumption of any purported executory contract. (Prop. Sale Proc. Order, ¶¶ 12-15). The proposed Sale Procedures Order only provides for objections to the assignment of an Assumed Contract, to the Proposed Cure Amount and to Adequate Assurance of Future Performance. (Id.) Under section 365 of

the Bankruptcy Code, the Debtors cannot assign any greater rights than they would otherwise have under any purported executory contract, and they must meet the requirements of assumption under § 365 before they can even hope to assign any executory contract. 11 U.S.C. § 365. Neither the C/P Loan Motion nor the proposed Sale Procedures Order makes clear that counter-parties to purported executory contracts retain the right to generally object to assumption under section 365 of the Bankruptcy Code. To the extent that the Debtors somehow intend for the proposed Sale Procedures and Sale Procedures Order to curtail or abridge a counter-party's right to dispute assumption, then the JPMC Entities object.

22. The JPMC Entities therefore request that the proposed Sale Procedures Order be amended to clarify that the current October 26, 2007 deadline for "Cure and Assignment Objection" also constitutes the deadline for counter-parties to file general objections to the proposed assumption of their executory contract(s). Such a change would clarify that the C/P Loan Motion does not abridge any counter-party's rights under Bankruptcy Code § 365.

## RESERVATION OF RIGHTS

23. The JPMC Entities reserve the right to amend, supplement, modify, or withdraw this Objection in whole or in part at their discretion at any time. The JPMC Entities do not waive any right they may have by filing this Objection. The JPMC Entities also reserve the right to provide additional briefing on the legal issues presented here. Finally, the JPMC Entities specifically reserve their right to seek relief from the automatic stay and/or to assert any other arguments with respect to any rights and remedies they may have *vis a vis* the Debtors.

**WHEREFORE**, the JPMC Entities request that the Court: (i) deny approval of the C/P Loan Motion to the extent set forth herein; (ii) approve the clarifications, modifications and amendments to the Sale Procedures requested in this Objection, and (iii) grant such other and further relief as may be

just and proper.

Dated: Wilmington, Delaware
September 28, 2007

LANDIS RATH & COBB LLP

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
(302) 467-4400

-and-

LOCKE LIDDELL & SAPP PLLC
Thomas H. Grace
Texas Bar No. 00785453
Federal I.D. No. 12618
W. Steven Bryant
Texas Bar No. 24027413
Federal I.D. No. 32913
600 Travis Street, Suite 3400
Houston, Texas 77002
Telephone: 713-226-1200
Facsimile: 713-223-3717

ATTORNEYS FOR JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION,
AS ADMINISTRATIVE AGENT AND LENDER