IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x  Chapter 11

In re:                                                            :

                                                                 :  Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE                                            :

HOLDINGS, INC., a Delaware corporation, et al.,[1]               :  Jointly Administered

                                                                 :

            Debtors.                                              :  **Hearing Date: October 9, 2007 at 2:30 p.m.**

                                                                 :  **Objection Deadline: October 9, 2007 at 12:00 p.m.**
---------------------------------------------------------------- x

## MOTION FOR ORDER EXTENDING THE DEADLINE PURSUANT TO SECTION 365(d)(4) TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENATIAL REAL PROPERTY

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby move the

Court (the "Motion"), by undersigned counsel, pursuant to section 365(d)(4) of title 11 of the

United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rule 6006 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order

extending the deadline to assume or reject certain unexpired leases of nonresidential real

property (the "Real Property Leases") associated with the Debtors' servicing business (the

"Servicing Business") identified on Exhibit A to the Motion, through and including March 3,

2008.  In support of this Motion, the Debtors respectfully represent as follows:

### STATUS OF CASE AND JURISDICTION

1.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007. No trustee or examiner has been appointed.

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein is section 365(d)(4) of the Bankruptcy Code, along with Bankruptcy Rule 6006.

## BACKGROUND OF DEBTORS

4.    Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

5.    As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans

2

from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

6.      A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

7.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

8.      The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities. The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

9.      In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial

3

institutions that provide short term credit facilities needed to originate and purchase loans --
began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to
originate loans and threatening the company's continued viability.

       10.    On July 27, 2007, AHM Investment announced that its Board of Directors
had decided to delay payment of its quarterly cash dividend on the Company's common stock
and anticipated delaying payment of its quarterly cash dividends on its preferred stock to
preserve liquidity.

       11.    The Debtors' inability to originate loans and the exercise of remedies by
certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the
Debtors to discontinue their retail and indirect loan origination business. As a result, on August
3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination
of over 6,500 employees. The Debtors now employ approximately 700 persons who are
absolutely essential to the Debtors' continued operations, although that number is expected to
decline as various wind-up tasks are completed, the retail branches are closed and the Debtors'
remaining assets are sold.

       12.    In the wake of these events, the Debtors, assisted by counsel and
professional advisors, sought alternative funding sources and capital infusions. Additionally, the
Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans
owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to
financial and strategic investors.

       13.    Unfortunately, in the short time available and given the severe financial
pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity

                                                        

crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## **RELEVANT BACKGROUND**

14.    On August 9, 2007, this Court entered an Order [Docket No. 113] (the "Original Order") approving the *Emergency Motion of the Debtors for Orders: (A)(i) Approving Sale Procedures; (ii) Scheduling a Hearing to Consider Sale of Certain Assets Used In the Debtors' Loan Servicing Business; (iii) Approving Form and Manner of Notice Thereof; and (iv) Granting Related Relief; and (B)(i) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing and Approving Purchase Agreement Thereto; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief* [Docket No. 11] (the "Servicing Sale Motion").  Among other things, the Original Order approved the establishment of certain procedures and timeframes (the "Orginal Sales Procedures") relating to the sale (the "Sale") of the Servicing Business.

15.    On September 21, 2007, the Debtors filed the *Motion of the Debtors for Order Pursuant to Sections 105(a), 363, 364, 365, and 503(b) of the Bankruptcy Code And Rules 2002, 4001, 6004, 6006, 7062, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in Such Sale; (C) Directing that Certain Notices of such Sale and Deadline Be Given; and (D) Authorizing, on an Interim Basis, the Debtors to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing* (the "Stalking Horse Motion") [Docket No. 865].  Through the Stalking Horse Motion, the Debtors sought approval of, among other things, certain Auction

5

Protections (as defined in the Stalking Horse Motion) as required in the Asset Purchase Agreement entered into by and among AH Mortgage Acquisition Co., Inc. (the "Purchaser"), American Home Mortgage Investment Corp., American Home Mortgage Corp., and American Home Mortgage Servicing, Inc. (the "APA").[2]

16.    By order dated September 25, 2007, the Court approved the relief contained in the Stalking Horse Motion and set an auction date of October 5, 2007 at 10:00 a.m. and a sale hearing before the Court on October 9, 2007 at 2:30 p.m. [Docket No. 937].

17.    Pursuant to the APA,[3] the Sellers (certain entities consisting of or relating to the Debtors) are required to use commercially reasonable efforts to consummate the transactions contemplated in the APA and to satisfy certain conditions with respect to both the Initial Closing and the Final Closing. *See* APA § 6.4(a). The Real Property Leases identified on Exhibit A annexed hereto, which are also identified on Schedule 1.1(b) to the APA, are among the Purchased Assets that will be transferred to the Purchaser. *See* APA § 2.1(b), §6.16.  [1]

18.    Under the APA, the Final Closing Date may occur any time after the Initial Closing Date, but no later than September 30, 2008. Accordingly, the Debtors are now requesting that the Assumption/Rejection Period with respect to the Real Property Leases be extended because of the possibility that the Final Closing Date will occur after December 4, 2007, the current deadline to assume or reject non-residential real property leases under section 365(d)(4) of the Bankruptcy Code.

---

[2] On September 25, 2007, the Sellers (as defined in the APA) and the Purchaser finalized and executed the APA. The executed copy of the APA was filed and served on all parties in interest [Docket No. 931].
[3] Unless otherwise defined in this Motion, all capitalized terms used herein shall have the meanings set forth in the APA. The summary of the APA provisions are for the convenience of the Court, and the APA is the governing document in all respects. The Debtors reserve any and all rights, claims and defenses with respect to the characterization of the Unexpired Leases under sections 365(d)(3) and (4) of the Bankruptcy Code or otherwise.

## RELIEF REQUESTED

19.     By this Motion, the Debtors request entry of an order, pursuant to section

365(d)(4) of the Bankruptcy Code, granting a 90-day extension of the original 120-day period to

assume or reject nonresidential real property (the "Assumption/Rejection Period"), which

currently expires on December 4, 2007, through and including March 3, 2008.  Such an

extension of the Assumption/Rejection Period is without prejudice to the rights of the Debtors to

seek further extensions of the time to assume or reject any of the Real Property Leases with the

consent of the counterparties to the Real Property Leases (the "Lessors") as contemplated by

section 365(d)(4)(B)(ii) of the Bankruptcy Code.

## BASIS FOR REQUESTED RELIEF

20.     Section 365(d)(4)(A) – (B) of the Bankruptcy Code provides that:

(A)  Subject to subparagraph (B), an unexpired lease of nonresidential real
property under which the debtor is the lessee shall be deemed rejected, and
the trustee shall immediately surrender that nonresidential real property to
the lessor, if the trustee does not assume or reject the unexpired lease by
the earlier of- (i) the date that is 120 days after the date of the order for
relief; or (ii) the date of the entry of an order confirming a plan.

(B) (i) The court may extend the period determined under subparagraph
(A), prior to the expiration of the 120-day period, for 90 days on the
motion of the trustee or lessor for cause.

(ii) If the courts grants an extension under clause (i), the court may grant a
subsequent extension only upon prior written consent of the lessor in each
instance.

11 U.S.C. § 365(d)(4)(A)-(B).  Thus, for "cause" the Court can order a 90-day extension of the

period during which a chapter 11 debtor may assume or reject nonresidential real property leases

upon the filing of a motion seeking that relief within the Assumption/Rejection Period.

DB02:6258275.4                                                                                          066585.1001

21.    Courts have recognized the benefits of granting debtors additional time to assume or reject unexpired nonresidential leases pursuant to section 365(d)(4). *See, e.g., In re Channel Home Ctrs., Inc.*, 989 F.2d 682, 687-88 (3d Cir. 1993); *In re GST Telecom, Inc.*, 2001 WL 686971 (D. Del. June 8, 2001). As noted by the Third Circuit, "nothing prevents a bankruptcy court from granting an extension because a particular debtor needs additional time to determine whether the assumption or rejection of particular leases is called for by the plan of reorganization that it is attempting to develop," *Channel Home Ctrs.*, 989 F.2d at 689.

22.    The term "cause" in section 365(d)(4) is not defined in the Bankruptcy Code. In determining whether cause exists for an extension of the Assumption/Rejection Period, courts have considered several factors, including the following:

> (a)    where the leases are an important asset of the estate such that the decision to assume or reject would be central to any plan of reorganization;
> (b)    where the case is complex and involves large numbers of leases; or
> (c)    where the debtor has had insufficient time to intelligently appraise each lease's value to a plan of reorganization.

*In re Wedtech Corp.*, 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987); *see also South St. Seaport L. P. v. Burger Boys. Inc. (In re Burger Boys Inc.)*, 94 F.3d 755, 761 (2d Cir. 1996) (considering the complexity of the debtors' cases, the number of leases the debtors must evaluate and the need for judicial determination of whether a lease exits); *Channel Home Centers*, 989 F.2d at 689 ("[I]t is permissible for a bankruptcy court to consider a particular debtor's need for more time in order to analyze leases in light of the plan it is formulating." (*citing Wedtech*, 72 B.R. at 471-72)).

23.    The Debtors submit that ample "cause" exists for the Court to grant the requested relief herein. Tthe APA requires that the Sellers use commercially reasonable efforts to consummate the transactions contemplated in the APA, including seeking an extension the Assumption/Rejection Period if the Final Closing has not occurred by deadline to assume or

8

rejection unexpired nonresidential real property leases under section 365(d)(4) such that the Real Property Leases can be transferred to the Purchaser. *See* APA §§ 2.1(b), 6.4(a), 6.16. Thus, the Debtors' failure or inability to extend the period under section 365(d)(4) of the Bankruptcy Code as required by section 6.16 of the APA may constitute a breach under the APA.

24.    Moreover, because the Purchaser is responsible for all losses, costs, and expenses of the Servicing Business owing during the period from the Initial Closing until the Final Closing, including the costs associated with the Real Property Leases, there is no harm or prejudice to the Debtors, the Lessors, or their creditors, by approving the requested extension of the Assumption/Rejection Period. *See* APA, Section 6.2(b).

25.    Finally, the Debtors are not requesting this extension for any ulterior purpose, but rather such extension is motivated by a good faith need to provide the Purchaser with the additional time to assume or reject as required by the APA. *See* APA, §§ 6.4(a), 6.16. Indeed, the relief requested herein will enable the Debtors to comply with the terms of the APA, and consummate the Sale -- a transaction that the Debtors believe is in the best interests of their estates and creditors.

26.    The Debtors respectfully submit that the foregoing reasons establish sufficient cause as contemplated by section 365(d)(4) of the Bankruptcy Code.

## NOTICE

27.    Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the Lessors; (v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; (vii) counsel to the Purchaser; and (viii)

DB02:6258275.4                                                                                                              066585.1001

all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of an order in the form annexed hereto as <u>Exhibit B</u> granting a 90-day extension of the Assumption/Rejection Period for the Real Property Leases through and including March 3, 2008, and such other and further relief as is just and proper.

Dated:    Wilmington, Delaware
          September 28, 2007

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              James L. Patton, Jr. (No. 2202)
                              Joel A. Waite (No. 2925)
                              Pauline K. Morgan (No. 3650)
                              Sean M. Beach (No. 4070)
                              Matthew B. Lunn (No. 4119)
                              Kara Hammond Coyle (No. 4410)
                              Kenneth J. Enos (No. 4544)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Counsel for Debtors and Debtors in Possession

DB02:6258275.4                                              066585.1001

## EXHIBIT A

### Real Property Leases

| | |
|---|---|
| Leases: | Office Building Lease, dated as of January 31, 2005, by and among AFP Associates, Ltd., as landlord, American Home Mortgage Servicing, Inc., as tenant, and American Home Mortgage Investment Corp., as guarantor |
| | Commencement Date Agreement, dated as of March 7, 2005, by and between AFP Associates, Ltd., as landlord, and American Home Mortgage Servicing, Inc., as tenant |
| | First Amendment to Lease, dated as of September 18, 2006, by and among AFP Associates, Ltd., as landlord, American Home Mortgage Servicing, Inc., as tenant, and American Home Mortgage Investment Corp., as guarantor |
| Leased Premises: | Freeport Office Center II, 4600 Regent Blvd, Irving, TX 75063 <br> Freeport Office Center I, 4650 Regent Blvd, Irving, TX 75063 |
| Landlord: | AFP Associates, Ltd. c/o West World Management, Inc. <br> 4 Manhattanville Road <br> Purchase, New York 10577 |