IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC.,<br>a Delaware corporation, et al.,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>**Relates to Docket Nos. 11, 113, 403, 674, 723, 724, 865 & 931**<br><br>**Objection Deadline: October 2, 2007 at 4:00 p.m.**<br>**Sale Hearing: October 9, 2007 at 10:00 a.m.** |

**SUPPLEMENTAL OBJECTION OF CITIBANK, N.A.
TO SALE OF CERTAIN ASSETS USED IN THE DEBTORS'
LOAN SERVICING BUSINESS AND ASSIGNMENT OF CERTAIN
<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO</u>**

Citibank, N.A., solely in its capacity as indenture trustee, trustee, securities administrator, paying agent and registrar, as applicable with respect to the transactions described below ("Citibank"), respectfully submits this Supplement to its Sale Objection[2] ("Supplemental Sale Objection") to the proposed sale (the "Sale") of the Debtors' mortgage loan servicing

---

[1]     The Debtors are: American Home Mortgage Holdings, Inc., a Delaware corporation; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

[2]     Objection of Citibank, N.A. to Sale of Certain Assets Used in the Debtors' Loan Servicing Business in Connection with Emergency Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related thereto; and (IV) Granting Related Relief (the "Sale Objection") (Docket No. 724; filed Sept. 13, 2007).

business (the "Servicing Business") in connection with the Debtors' Motion.[3]    Citibank

incorporates the Sale Objection herein by reference.  Citibank's additional grounds for objecting

to the Motion include:

        First, the ultimate purchaser of the Servicing Business and the terms of the Sale

remain unknown at this time.    Citibank therefore reserves its right to further amend or

supplement the Sale Objection.

        Second, on about September 21, 2007, the Debtors entered into a Purchase

Agreement (Docket No. 931) (the "Revised Purchase Agreement") with AH Mortgage

Acquisition Co., Inc. ("AH Acquisition"), a "stalking horse" bidder that is apparently a newly-

formed entity affiliated with the DIP lender to the Debtors.  AH Acquisition is not qualified

under the terms of the transaction documents to act as servicer – it is not licensed to service

mortgages.  Debtors have failed to provide any meaningful information about AH Acquisition,

including its principals, management, financial resources and operational capacity.  A Successful

---

[3]    The term "Motion" means the Emergency Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (Docket No. 11).  Citibank makes this Supplemental Objection pursuant to (i) paragraph 13 of the Court's Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief, entered August 9, 2007 (Docket No. 113) (the "Sale Procedures Order") and (ii) paragraph 18 of the Court's Order Pursuant to Sections 105(a), 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in Such Sale; (C) Directing that Certain Notices of Such Sale and Deadline be Given; and (D) Authorizing, on an Interim Basis, the Debtors to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing, entered September 25, 2007 (Docket No. 937) (the "Revised Procedures Order").

Bidder[4] must satisfy the stringent requirements of the various servicing agreements governing the transactions in which Citibank is a participant and demonstrate adequate assurance of future performance.

Third, the Revised Purchase Agreement fails to ensure that the Debtors' obligations under the relevant executory contracts will be fully assumed and assigned. Any assumption and assignment of the servicing agreements at issue must result in a complete transfer of the Debtors' obligations and cannot purport to modify the underlying agreements the Debtors seek to assign. The Revised Purchase Agreement fails to transfer all of the Debtors' obligations.

Finally, the Debtors have failed to provide adequate assurance of future performance between the time that Debtors assume the Servicing Agreements[5] and the time of the Final Closing, after assignment to AH Acquisition or, in the event that AH Acquisition does not ultimately or timely qualify as a servicer, by any unknown third party that becomes servicer.

For the reasons stated in the original Sale Objection and as detailed below, the Sale and the Revised Purchase Agreement should not be authorized, and the assumption and

---

[4]     Capitalized terms not defined herein have the meaning given in the Sale Objection, the Motion, the proposed form of Purchase and Sale Agreement ("Purchase Agreement") submitted as Exhibit D to the Motion, the Revised Purchase Agreement and the Sale Procedures Order. All references to attached Exhibits relate to the Joint Set Of Exhibits To The Objections Of Citibank, N.A. To: (I) Possible Assumption And Assignment Of Certain Executory Contracts And Proposed Cure Amounts, And (II) Sale Of Certain Assets Used In The Debtors' Loan Servicing Business, Filed September 13, 2007, filed with the Assignment and Proposed Cure Objection (Docket No 723).

[5]     The term "Servicing Agreements" means the seven agreements identified in paragraph 10 of the Sale Objection and three additional documents identified in Schedule 1.1(j) to the Revised Purchase Agreement: the Master Mortgage Loan Purchasing and Servicing Agreement, dated as of June 21, 2006 (item 1.1(j)cb), related to the HALO 2007-AR1 Trust; the Purchase, Warranties and Servicing Agreement, dated as of March 1, 2006 (item 1.1(j)cd), related to the SAMI 2007-AR1 Trust; and the Mortgage Loan Sale and Servicing Agreement, dated as of December 1, 2005 (item 1.1(j)gf), related to the GSR 2006-AR2 Trust. Schedule 1.1(j) to the Revised Purchase Agreement identifies all of the Servicing Agreements except those associated with HALO 2007-1 as subjects of the transactions contemplated by the Revised Purchase Agreement.

3

assignment of executory contracts not be approved, unless and until the Debtors come forward with a fully qualified Successful Bidder and reform any ultimate Purchase Agreement to comply with the requirements of the Bankruptcy Code and the agreements proposed to be assumed and assigned.

## BACKGROUND

1.      Objections to the Sale are now due on the same day as submission of bids, and before the October 5, 2007 Auction. At this time the terms of a final Purchase Agreement and the identity and qualifications of the ultimate Purchaser remain unknown.

2.      On September 21, Debtors filed the Revised Procedures Motion. The Revised Procedures Order granted the Revised Procedures Motion.

### AH Acquisition Is Not Qualified To Act As Servicer Under The Servicing Agreements

3.      The Servicing Agreements specify the qualifications of a successor servicer. Sale Obj. ¶¶ 30-36. Generally, the servicer must be licensed to conduct business as a servicer, approved as a servicer by Fannie Mae or Freddie Mac, the ratings agencies must state that the accession of the new servicer will not reduce the ratings of the notes or certificates issued by each trust, and the servicer must obtain the reasonable consent of the Trustee and others.

4.      To the extent that AH Acquisition is the Successful Bidder, Debtors acknowledge in the Revised Procedures Motion (¶ 17) that AH Acquisition is not licensed to service mortgages. In addition, AH Acquisition is also not qualified to service mortgage loans on behalf of Fannie Mae or Freddie Mac, and has not demonstrated that it can satisfy other financial and operational requirements of the Servicing Agreements. *See* Sale Obj. ¶¶ 30-36. In addition, Debtors have made no showing that the proposed purchase by AH Acquisition would not result in a ratings downgrade of the notes or certificates issued by the AHMIT 2004-3, AHMA 2006-3, AHMA 2006-4 and HALO 2007-AR1 trusts.

**The Revised Purchase Agreement Does Not Comply**
**With The Requirements Of The Servicing Agreements**

5.    The Servicing Agreements require an unambiguous assignment and assumption of

*all* of the obligations of AHM Servicing under the Servicing Agreements.    The law of this

Circuit states:

> Section 365(f) requires a debtor to assume a contract subject to the
> benefits and burdens thereunder.  The debtor may not blow hot and
> cold.  If he accepts the contract he accepts it *cum onere*.  If he
> receives the benefits he must adopt the burdens.  He cannot accept
> one and reject the other.  The *cum onere* rule prevents the
> bankruptcy estate from avoiding obligations that are an integral
> part of an assumed agreement.

*In re Fleming Cos., Inc.*, 2007 U.S. App. LEXIS 19927 (3d Cir. Aug. 22, 2007), at *20 (internal

quotation marks, citations and alterations omitted).    That obligation applies equally to the

Debtors' assumption of the Servicing Agreements (of particular importance because the Debtors

may be servicing the Trusts for a year or more while AH Acquisition seeks the necessary

governmental licenses and approvals to service mortgages) and the assignment proposed under

the Revised Purchase Agreement.  As the court stated: "'[a]n assignment is intended to change

only who performs an obligation, not the obligation to be performed.'"  *Id.* at *21 (alteration in

original) (quoting *Medtronic Ave. Inc. v. Adv. Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir.

2001).  Here, the Revised Purchase Agreement fails to satisfy this requirement.

6.    To accommodate AH Acquisition's admitted inability to operate the business it

seeks to buy, the Revised Purchase Agreement provides that, at an Initial Closing after approval

of the Sale, the Purchaser will make payment to Debtors, who will run the business for

Purchaser's benefit – subject to certain "Bankruptcy Exceptions."  Rev. Purchase Agr. § 2.7(a);

*see also id.* at 3-4 (defining "Bankruptcy Exceptions").  At a Final Closing – which will happen

in the first instance if AH Acquisition actually obtains all of the necessary government licenses

and approvals necessary for it to operate the business – title to the Servicing Agreements (among other things) – will pass to AH Acquisition.  Rev. Purchase Agr. § 2.7(b).  Even if AH Acquisition fails to obtain the necessary licenses and approvals, Debtors may nonetheless pass title to AH Acquisition or may sell the Purchased Assets, Assumed Liabilities and Assumed Contracts to a third party designated by AH Acquisition, regardless of AH Acquisition's or the third party's qualifications and ability to operate the Servicing Business.  *Id.*

7.      Here, the Revised Purchase Agreement does not comply with the Servicing Agreements in significant ways:

(a)     Section 5.02 of the Servicing Agreements for each of AHMIT 2004-3, AHMA 2006-3 and AHMA 2006-4 require an assignee servicer to execute and deliver to the Indenture Trustee or Trustee, as the case may be, "an agreement . . . which contains an assumption by such Person of the due and punctual performance and observance of each covenant and condition to be performed or observed by the Servicer under this Servicing Agreement." Exs. 3 § 5.02, 5 § 5.02, 7 § 5.02.  The Revised Purchase Agreement does not contain the clear language mandated by the Servicing Agreements, and instead obfuscates the obligations and liabilities of AH Acquisition, potentially providing AH Acquisition the ability to disclaim significant obligations and allow it to pick and choose the responsibilities it wishes to assume.

(b)     The Revised Purchase Agreement provides a "Bankruptcy Exceptions" (Rev. Purchase Agr. at 3-4, §§ 2.7, 6.1(a), 6.1(k), 6.2(a)[6]) excuse to AHM Servicing's obligations to service between the Initial and Final Closings – that is, Sellers are excused from liability to AH Acquisition if they fail to meet the obligations of the Servicing Agreements because of problems occurring in the bankruptcy.  The Servicing Agreements do not excuse nonperformance by AHM on the basis of its bankruptcy.

(c)     The definition of "Assumed Liabilities" (Rev. Purchase Agr. at 3) includes only obligations arising "after the assignment thereof to Purchaser at the Final Closing."  Similarly, the definition of "Retained Liabilities" of the Sellers (Rev. Purchase Agr. at 13) includes, among other things, Claims

---

[6]     The Sellers' limitation of their covenant to perform until the Final Closing Date to operating in the "Ordinary Course of Business" in sections 6.1(a), (k) and 6.2(a) similarly suggests that Debtors may not be properly performing their obligations under the Servicing Agreements.

and Liabilities arising from early payment default claims, loan repurchase obligations, premium recapture obligations and any "deficiency with respect to any existing loan facilities." Purchaser may seek to disclaim any responsibility for servicing mortgage loans in default at the time of the Final Closing (no small matter where the Revised Purchase Agreement suggests the range of defaulted loans may be between 4.8 and 8% of AHM Servicing's portfolio), as well as for any deficiencies in loan documentation and repurchase obligations (with respect to GSR 2006-AR2) for which the Servicer is responsible under certain of the Servicing Agreements. Among the obligations of the servicer is the obligation to make advances to the trusts in respect of those borrowers who fail to make timely monthly payments of principal and interest.

(d)     The definition of "Servicing Rights" in the Revised Purchase Agreement (at 14-15) is vague. Indeed, even the term "right to service" in the definition is undefined. It is far from clear what obligations under the Servicing Agreements the Purchaser is accepting; the Servicing Agreements are not all in a standard form, and different Servicing Agreements impose different obligations on AHM Servicing. Rather than provide the simple and unambiguous acceptance of all terms of the Servicing Agreements, the Revised Purchase Agreement may give AH Acquisition leeway to argue that it did not accept some obligations under the Servicing Agreements – that is, that it can improperly pick and choose what parts of those agreements it wants.

(e)     A condition of the assignment of certain of the Servicing Agreements is that the new servicer receive the consent of the trustee (and, in certain cases, other parties to the agreements) and a letter from each rating agency that rates the certificates or notes issued by the trust stating that such agency's rating will not be "qualified, reduced or withdrawn" as a result of such delegation. The Revised Purchase Agreement fails to require that AH Acquisition obtain the approvals and consents necessary under the Servicing Agreements,[7] but instead provides either for an order of the Bankruptcy Court vitiating those requirements or, absent such an order and such consent, that the Debtors and AH Acquisition will nonetheless obtain the benefits and assume the obligations of such Servicing Agreements – in effect thwarting the conditions precedent to transfer. Rev. Purchase Agr. § 2.4.

(f)     Sections 6.10(a) and (d) of the Revised Purchase Agreement provide that the transfer of the Servicing Agreements after the Final Closing may be,

---

[7]     Indeed, Section 6.4(c) of the Revised Purchase Agreement, which requires Sellers to use commercially reasonable best efforts to obtain necessary approvals for certain contracts, specifically excepts Servicing Agreements.

not to AH Acquisition, but to an unidentified (and potentially unqualified) designee. Without knowing the identity or qualifications of a "designee," there is no way to assure the adequacy of future performance.

(g)     In the event that AH Acquisition fails to obtain necessary governmental licenses by September 30, 2008, AH Acquisition may cause the assignment of the Servicing Agreements to another entity designated by it, or may acquire the business notwithstanding its inability to run it. Rev. Purchase Agr. § 2.7(b). Neither of these possibilities – the transfer to a new, unknown, potentially unqualified or inexperienced entity or the Sale of the Servicing Business to an entity that cannot legally run it – provides for transfer to an appropriate entity or adequate assurance of future performance.

(h)     Section 6.15 of the Revised Purchase Agreement would permit AH Acquisition to exclude from assignment at the Final Closing any Servicing Agreement it chooses. As a result, there can be no adequate assurance of future performance of any Servicing Agreement; instead, the other parties to such an Agreement, as well as the investors in the associated trust, may be left without servicing on no notice.[8]

(i)     The Sellers' representation in Section 5.6(c), that there are no defaults under the Servicing Agreements, is not accurate. Citibank and other parties have filed objections to the proposed cure amounts giving notice of AHM Servicing's noncompliance with provisions of the Servicing Agreements it seeks to assign.

## Debtors Have Failed To Demonstrate Adequate Assurance of Future Performance

8.     To assume and assign the Servicing Agreements, the Debtor must show that (a) they can fully perform their obligations under each Servicing Agreement from the time of assumption until the Final Closing or other assignment to a third party and (b) after the Final Closing or other assignment, AH Acquisition, its (unknown) designee or third party purchaser can perform.

9.     With respect to the Debtors' performance, it bears noting that the Servicing Business is only assured of funding through October 31, 2007. It is unclear how Debtors will

---

[8]     To the extent an Assumed Contract was excluded from assignment at the Final Closing, the Debtors would nonetheless remain obligated to perform thereunder.

fund the operation of the Servicing Business thereafter, as there is no assurance that Debtors will be able to enter into the Limited Recourse DIP Facility contemplated in the Revised Procedures Motion (¶ 22), or that such facility would be sufficient to fund the Servicing Business for the entire time it may take to reach the Final Closing.

## RESERVATION OF RIGHTS

10.    Citibank reserves the right to further amend or supplement this Objection, to raise additional objections to the sale, sale order, identity of the purchaser, further changes to the sale procedures or any proposed cure amounts, including, without limitation, all of its rights under the Servicing Agreements and related documents or any other agreements that Debtors have or will identify prior to or at the hearing on the Motion. Citibank further reserves the right to investigate the qualifications of AH Acquisition, the Successful Bidder or the Next Highest Bidder to determine whether such parties meet the qualifications required by the relevant documents, all other conditions precedent to assignment in those documents are satisfied and the parties can demonstrate adequate assurance of future performance.

## CONCLUSION

For the reasons set forth above, Citibank respectfully requests that this Court deny Debtors' Motion as it relates to the Servicing Agreements and grant Citibank such other and further relief as may be just and appropriate.

Dated:  New York, New York
        October 2, 2007

COZEN O'CONNOR

By: _____
    John T. Carroll, III (DE 4060)
    Suite 1400, Chase Manhattan Centre
    1201 North Market Street
    Wilmington, Delaware 19801
    (302) 295-2000

            and

SEWARD & KISSEL LLP
    Ronald L. Cohen
    Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

*Attorneys for Citibank, N.A., solely in its
capacities as Indenture Trustee, Trustee,
Securities Administrator, Paying Agent and
Registrar*

SK 01463 0255 813693 v2