UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| American Home Mortgage Holdings, Inc., a | ) | |
| Delaware corporation, *et al*., | ) | Case No. 07-11047(CSS) |
| | ) | |
| Debtors | ) | Jointly Administered |

**SUPPLEMENTAL OBJECTION TO PROPOSED CURE OBLIGATIONS
WITH RESPECT TO SERVICING AGREEMENTS FOR
WHICH WELLS FARGO BANK, NATIONAL ASSOCIATION
SERVES AS MASTER SERVICER, SECURITIES ADMINISTRATOR,
TRUST ADMINISTRATOR AND/OR INDENTURE TRUSTEE
AND TO THE ANTICIPATED SALE
(D.I. 11,12,113,403,425,541,674, 824)**

Wells Fargo Bank, National Association, as Master Servicer, Securities Administrator, Trust Administrator, and/or Indenture Trustee ("*Wells Fargo*") for approximately 78 securitization transactions for which American Home Mortgage Servicing, Inc. ("*AHM Servicing*") or one of the other Debtors serves as servicer[1], hereby files this Supplement (the "*Supplemental Objection*") to its Objection and Reservation of Rights to the Motion, Assumption Notice and the Sale of the Loan Servicing Business (Docket No. 824).

**BACKGROUND**

1.      On August 6, 2007, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*").

2.      The Debtors filed their Motion and Assumption Notice with respect to the Sale of Loan Servicing Business.

---

[1]     Wells Fargo notes that one of the Debtor servicers, American Home Mortgage Acceptance, Inc. ("*AHMA*"), of the HELOC loans is not a party to the Asset Purchase Agreement, notwithstanding the fact that the relevant servicing agreement is being serviced by AHMA.

WIL:68971.1

3.  On or about October 20, 2007, Wells Fargo filed its Objection and Reservation of Rights to the Motion and Assumption Notice with respect to the Sale of the Loan Servicing Business (the "*Objection*").

4.  On or about September 21, 2007, the Debtors filed a motion seeking approval of a Stalking Horse Bidder and that certain Asset Purchase Agreement by and among AH Mortgage Acquisition Co., Inc. (the "*Purchaser*"), American Home Mortgage Investment Corp., American Home Mortgage Corp. and American Home Mortgage Servicing Inc., dated as of September 25, 2007 (the "*Stalking Horse APA*").  Pursuant to the Stalking Horse APA, the Debtors propose to assume and assign to the proposed Purchaser certain servicing agreements between the Debtors and Wells Fargo (the "*Servicing Agreements*"), in connection with the sale of AHM's loan servicing business.  Stalking Horse APA, Schedule 1.1(j).

## OBJECTION

5.  Wells Fargo objects to the assumption and assignment of the Servicing Agreements because neither the Debtors nor the proposed Purchaser (or any other winning bidder at any auction) has provided adequate assurance of future performance as required by Section 365(f)(2) of the Bankruptcy Code, namely, that the proposed Purchaser (or any other winning bidder) will fully perform the obligations that will arise under the Servicing Agreements after the Initial Closing and Final Closing of the proposed sale of the Debtors' servicing business.  In addition, the Debtors have failed to provide any meaningful detail as to how they will cure defaults under the terms of the Servicing Agreements[2].

---

[2]  Wells Fargo understands that the Debtors intend to assume all of the Servicing Agreements.  However, the following Servicing Agreements do not appear to be set forth on the list of agreements to be assumed in the Stalking Horse APA.  These include CMLT 2003-1, JPALT 2007-S1, JPMMT 2007-SD2, JPMMT 2007-S3, JPMWHSE, MALT 2006-2, MARM 2006-OA1, MLMI 2003-A6, PRM 2004-CL1, ZIA 2006-1, ZUNI 2006-OA1, FNMA 2002-66; FNMA 2002-80; FNMA 2002-90; FNMA 2003-7; FNMA 2003-34; FNMA 2003-63.

**I.     ADEQUATE ASSURANCE OF FUTURE PERFORMANCE MUST BE PROVIDED BEFORE ANY ASSUMPTION AND ASSIGNMENT OF THE SERVICING AGREEMENTS**

6. Pursuant to section 365(f)(2) of the Bankruptcy Code, the assignee of the Servicing Agreements must provide adequate assurance of future performance under such Servicing Agreements. 11 U.S.C. § 365(f)(2). The assignee must provide such assurance "whether or not there has been a default in such contract". 11 U.S.C. § 365(f)(2)(B). Even though "adequate assurance of future performance" is not defined in the Bankruptcy Code, bankruptcy courts generally "evaluate the financial condition of the assignee and the likelihood that the non-debtor party will receive the benefit of its bargain from the assignee." *In re Casual Male Corp.*, 120 B.R. 256, 264-65 (Bankr. D.Mass 1990)). In particular, the focus has been on, among other things, the assignee's "ability to fulfill the financial obligations" under the contract. *In re Glycogenesys, Inc.*, 352 B.R. 568, 578 (Bankr. D. Mass. 2006) (citing *In re Martin Paint Stores*, 199 B.R. 258 (Bankr. S.D.N.Y. 1996); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524 (Bankr. D.N.J. 1988)); *In re Old South Coors, Inc.*, 27 B.R. 923, 926 (Bankr. N.D. Miss. 1983) (court considered long and successful business experience and financial strength of each proposed assignee in evaluating assignment). Wells Fargo therefore objects to the extent the proposed Purchaser, or any other assignee, fails to provide adequate assurance of future performance, including the satisfaction of each of the requirements set forth below.

    **A.     The Successive Servicer Must Demonstrate Its Ability To Act As Servicer Under the Servicing Agreements**

7. The Servicing Agreements require that the successor servicer must be (i) an "established housing and home finance institution, bank or other mortgage loan servicer having a net worth of not less than $10,000,000[3] . . . provided that the appointment of any such successor

---

[3] In some instances, any successor servicer is required to have a net worth of not less than $25,000,000. Bear Stearns Asset Backed Securities Trust 2006-AC3] Purchase, Warranties and Servicing Agreement dated as of

Servicer will not result in the qualification, reduction or withdrawal of the rating assigned to the Certificates by the Rating Agencies"; and (ii) a member of MERS[4] in good standing and shall agree to comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS.  *See, e.g.*, American Home Mortgage Assets Trust 2005-1, Servicing Agreement, dated as of October 31, 2005 (the "*AHMAT 2005-1*"), § 6.02(a).  The proposed Purchaser, however, appears to be a newly formed entity specifically created to assume the servicing of billions of dollars of the Mortgage Loans.  Even so, neither the Debtors nor the proposed Purchaser have provided any meaningful information to verify that the proposed Purchaser can or will satisfy each of these requirements.  Wells Fargo therefore objects to the extent the proposed Purchaser, or any other assignee, fails to satisfy each of these requirements.

> **B.  The Successor Servicer Must Have All Appropriate Licenses To Operate As A Servicer Under The Servicing Agreements**

8. The Servicing Agreements require that the successor servicer must be licensed to own the servicing business and, in some instances, must be approved by Federal National Mortgage Association or Freddie Mac.  The proposed Purchaser presently is neither appropriately licensed, nor approved by the appropriate agencies.  Further, it is not certain that any of the necessary approvals can or will be obtained by the proposed Purchaser.  In light of this, Section 2.7(b) of the Stalking Horse APA provides that if the Purchaser fails to obtain the necessary licenses prior to September 30, 2008, then the Servicing Agreements will, at the Purchaser's option, either be (i) assumed by the Purchaser or (ii) sold and assigned to a third party for the account of, and at a price negotiated by, the Purchaser.  This is unworkable. Wells

---

March 1, 2006, between EMC Mortgage Corporation, as Purchaser, American Home Mortgage Corp., as Company, and American Home Mortgage Servicing, Inc., as Servicer, Section 11.01 (Successor to the Servicer)..

[4]    "MERS" means the Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.  PSA, § 1.01 Defined Terms.

Fargo is entitled to know upon approval of the sale that the Mortgage Loans will be adequately serviced into the future, not merely that they *may* be adequately serviced so long as certain approvals by licensing authorities are obtained or upon the successful remarketing of the servicing rights if the purchaser is unable to obtain necessary approvals.

      **C.**    **The Successor Servicer Is Required To Have Adequate Insurance Coverage**

      9.    The Servicing Agreements require that the successor servicer maintain certain insurance coverage, including a policy or policies of insurance covering errors and omissions in the performance of its obligations as Servicer under the Servicing Agreement and a fidelity bond in respect of its officers, employees and agents. AHMAT 2005-1, at § 6.02(b). Wells Fargo objects to the extent the proposed Purchaser, or any other assignee, fails to obtain all of the necessary insurance policies and coverage prior to becoming the successive servicer under the Servicing Agreements.

      **D.**    **The Successor Servicer Must Have the Financial Wherewithal to Service the Mortgage Loans**

      10.    Prior to any assumption or assignment of the Servicing Agreements, the proposed Purchaser, or any other assignee, must demonstrate sufficient financial ability to perform under the Servicing Agreements. It is recognized that a servicer's financial strength is one of the determinants of the mortgage pool investment performance. "Financial condition . . . impact[s] the servicer's ability to remain in business, advance principal, interest, tax and insurance payments, and continue to make investments in infrastructure, systems and staffing to meet its current and future servicing needs." Fitch Ratings, "Impact of Financial Condition on U.S. Residential Mortgage Servicer Ratings", at 1, March 26, 2007. "The quality and stability of a servicer's operation have a direct impact on its default management capabilities and ultimately on security losses . . . ." *Id.* at 3. The successor servicer therefore must have sufficient net worth

5

and liquidity to meet the financial demands of performing under the Servicing Agreements. In this case, however, neither the Debtors nor the proposed Purchaser has provided any evidence to demonstrate the proposed Purchaser's financial ability to service the Mortgage Loans. Wells Fargo therefore objects to the extent the proposed Purchaser, or any other assignee, fails to provide such information prior to any assumption and assignment of the Servicing Agreements.

11.    The Debtors propose to assume and assign to AH Mortgage Acquisition or other Purchaser certain executory servicing agreements in connection with the sale of AHM's loan servicing business, and such contracts will thereby become "Assumed Contracts." Stalking Horse APA, Section 2.1(b)(v) and Schedule 1.1(j). However, the Stalking Horse APA also provides that the Purchaser may designate, with certain exceptions, any Assumed Contract that Purchaser wants to exclude from the Assumed Contracts. Stalking Horse APA, Section 6.15. It is unclear from the language of Section 6.15 of the Stalking Horse APA whether the Debtors intend to permit the Purchaser to designate any Servicing Agreement as excluded from the Assumed Contracts. Wells Fargo requests that the Debtors clarify whether all Servicing Agreements listed on Schedule 1.1(j) to the Stalking Horse APA will be assumed and assigned to AH Mortgage Acquisition or other Purchaser.

## II.    THE DEBTORS HAVE FAILED TO DEMONSTRATE HOW THEY WILL MEET THEIR CURE OBLIGATIONS PRIOR TO THE ASSUMPTION AND ASSIGNMENT OF THE SERVICING AGREEMENTS

12.    The Debtors propose to establish an escrow to satisfy all cure claims through the Initial Closing. The Stalking Horse APA provides that this escrow will be funded in either the amount established by the Debtors, or the amounts asserted by the contract counterparties. The Debtors have ascribed $0.00 as the cure amount on all Servicing Agreements. The Debtors' proposed cure amounts, however, are based only upon known defaults, and do not take into account latent defaults in the servicing of the Mortgage Loans. Many latent defaults already

have been described in the Objection previously filed with this Court. As an example, it will be difficult, if not impossible, to determine whether the Debtors are in default of any required payments to taxing authorities. Typically, such defaults become known when the new servicer receives notice from a taxing authority that a payment has been missed. Wells Fargo therefore objects to the extent the Debtors fail to reserve in escrow sufficient funds to cover both known and latent defaults under the Servicing Agreements.

13. The Debtors also propose that the proposed Purchaser, rather than the Debtors, will be liable for cure amounts arising after the Initial Closing. The Debtors cannot be relieved of their obligation under Section 365 of the Bankruptcy Code to cure all defaults as a condition to any assumption and assignment. The Debtors therefore should not be relieved of their obligation to remedy defaults or pay cure claims relating to a period in which the Debtors remain as the servicer. Relieving the Debtors of any obligation to remedy defaults and pay cure obligations during a period in which the Debtors would remain as servicers would deprive parties of their offset and recoupment rights against the Debtors and of their right to assert administrative claims for any of the Debtors' post-petition breaches. Wells Fargo therefore objects to the extent the Debtors are relieved of their obligation to remedy defaults under the Servicing Agreements or otherwise pay cure amounts arising after the Initial Closing.

**RESERVATION OF RIGHTS**

14. Wells Fargo, as Master Servicer, Securities Administrator, Trust Administrator, or Indenture Trustee reserves the right to assert cure claims for breaches of representations and warranties with respect to individual loan contracts and the adequacy of the mortgage file to the extent that the originator of the loans is either assuming the relevant agreements or to the extent that the obligations under the relevant transactional documents are not severable from those of the servicing agreements. Wells Fargo further reserves the right to amend, modify, or otherwise

7

supplement its Objection and/or this Supplemental Objection at anytime prior to the hearing on any sale.

## CONCLUSION

WHEREFORE, Wells Fargo respectfully requests this Court (a) deny the assumption and assignment of the Servicing Agreements until the Sales Approval Order is amended to address the issues raised herein and ensure that any assignee of the Servicing Agreements (i.e., purchaser of the Debtors' servicing business) provides adequate assurance of future performance as required by 11 U.S.C. § 365(f)(2)(B) and until an adequate reserve is established for latent defaults in the servicing of the Mortgage Loans; and (b) grant Wells Fargo such other and further relief as may be equitable and just.

/S/ TODD C. SCHILTZ_____
WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP
Todd C. Schiltz (#3253)
1100 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 777-0313
tschiltz@wolfblock.com

and

CHAPMAN AND CUTLER, LLP
FRANKLIN H. TOP, III
111 WEST MONROE STREET
CHICAGO, IL 60603
TELEPHONE: (312) 845-3824
top@chapman.com

*Attorneys for Wells Fargo Bank, National Association, as Master Servicer, Securities Administrator, Trust Administrator or Indenture Trustee*