IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                              ) Chapter 11
                                                    )
AMERICAN HOME MORTGAGE                              ) Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, <u>et. al.</u> ) Jointly Administered
                                                    )
                                                    )  Objection Deadline : October 2, 2007 at 4:00 p.m.
                                                    )  Sale Hearing: October 9, 2007 at 2:30 p.m.
                        Debtors.                    )  Related Docket Nos. 11, 113, 403, 674, 746, 865, 931
                                                    )  and 979
---------------------------------------------------------------- x

**SUPPLEMENTAL OBJECTION OF EMC MORTGAGE CORPORATION TO THE
EMERGENCY MOTION OF THE DEBTORS FOR AN ORDER: (I) AUTHORIZING
THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND
APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED
RELIEF AND TO THE NOTICE OF (I) POSSIBLE ASSUMPTION AND ASSIGNMENT
OF CERTAIN LEASES, LICENSE AGREEMENTS AND EXECUTORY
CONTRACTS; AND (II) PROPOSED CURE OBLIGATIONS, IF ANY**

EMC Mortgage Corporation ("<u>EMC</u>"), by its undersigned attorneys, hereby

submits this supplemental objection (the "<u>Supplemental Objection</u>")[1] to the (i) Motion of the

above captioned debtors (the "<u>Debtors</u>") pursuant to sections 105(a), 363, 365, 503 and 507 of

title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, 6006 and

9014 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>") for entry of an

order authorizing, among other things, the sale of the Debtors' mortgage loan servicing business

free and clear of liens, claims, encumbrances, and other interests filed on August 6, 2007

[Docket No. 11] (the "<u>Motion</u>"), and (ii) notice of proposed cure amounts filed on September 10,

---

[1]  This Supplemental Objection incorporates the Objection of EMC Mortgage Corporation to the Emergency
Motion of the Debtors for an Order: (I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims,
Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III)
Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related
Thereto; and (IV) Granting Related Relief and to the Notice of (I) Possible Assumption and Assignment of
Certain Leases, License Agreements and Executory Contracts, and (II) Proposed Cure Obligations, if Any
[Docket No. 850] and supplements it as set forth herein.

2007 [Docket No. 674] (the "Cure Notice"), and in support of the Supplemental Objection,

respectfully represents as follows:

## PRELIMINARY STATEMENT

By this Supplemental Objection, EMC further objects to the Debtors' Motion on

the grounds that the Debtors are unlawfully seeking to assume, assign or sell certain assets (e.g.

certain mortgage servicing rights) which are not property of the bankruptcy estate, and to which

the Debtors neither have title, nor any other contractual right to convey. EMC's earlier

Objection (Docket No. 850)(the "Objection"), demonstrated, among other things, that the

mortgage servicing rights,[2] are an integral part of a certain Purchase, Warranties and Servicing

Agreement dated March 1, 2006 (the "PWSA"), that the PWSA was terminated and that all

servicing rights vested in EMC as a result of the termination of the PWSA. Thus, the Debtors

have no rights to assume, assign or convey the PWSA or any right thereunder.

This Supplemental Objection is filed, in part, because the Debtors have made

material changes to their position since the filing of the EMC Objection. Initially, the Debtors

identified the PWSA as a "Potentially Executory Contract" on the Cure Notice filed on

September 10, 2007 (Docket No. 674). The Debtors' initial position was ambiguous (and

essentially a legal nullity) because they did not necessarily seek any specific relief as to the

PWSA. Following the filing of EMC's Objection to the Motion, on September 21, 2007, the

Debtors filed the Revised Motion seeking revised procedures for the sale of the Debtor's

Mortgage Servicing Business, and scheduling the Auction for October 5, 2007, and the sale

hearing for October 9, 2007. On September 25, 2007, the Debtors filed the executed Asset

Purchase Agreement by and among AH Mortgage Acquisition Co., Inc., (Docket No. 931) which

---

[2]     Servicing involves, among other things, collecting principal and interest payments and other income and
amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection
process.

DC1 1032633

for the <u>first time</u> plainly listed the PWSA on Schedule 1.1(j) as being included in the assets to be

purchased (the "<u>Purchased Assets</u>"). <u>See</u> Schedule 1.1(j)cd.[3]  In addition, the Debtors added for

the first time certain Trade Confirmations (discussed below), thus seeking to acquire the

servicing rights for additional mortgage loans sold under the PWSA.

The Debtors' inability to assume or assign any rights under the PWSA arises as a

matter of law by virtue of Section 555 of the Bankruptcy Code. The PWSA (and many other

similar contracts in this proceeding) is clearly a "securities contract" as defined in Section 741(7)

of the Bankruptcy Code, and accordingly, is a "protected contract" which may be terminated

based on an <u>ipso facto</u> clause.[4]  As a result, on August 6, 2007, the PWSA automatically

terminated by virtue of its express terms, which provide for termination automatically upon the

filing of a bankruptcy. <u>See</u> Section 9.01. The Debtors have never given any reason to dispute

the validity of the termination, which is effective as a matter of law.

The Debtors should not be permitted to defeat the plain intention of Congress by

arguing that the PWSA, which is one agreement, should somehow be viewed as two distinct

agreements and thus "severed." Congress has strictly prohibited courts from limiting or

restricting the power of counter-parties to terminate securities contract, and have broadly applied

this to all securities contracts, including the sale of the mortgages and to "any interest" in such

mortgage. As the Third Circuit has held, "any interest" means any right or obligation that is

connected to or arising from the property being sold. <u>See In re Trans World Airlines</u>, 322 F.3d

282 (3d Cir. 2003). Further, the PWSA which unambiguously make servicing integral to the sale

---

[3]    Even this Schedule was less than clear, as it indicated that "[t]o the extent this agreement [the PWSA] relates to the Servicing Rights Held for Sale, it will be deleted from this Schedule 1.1.(j)." Servicing Rights Held for Sale <u>are defined in Section 6.1(a) of the APA</u>. Schedule 6.1(a) identifies EMC/Bear Stearns as an investor with respect to a pool of loans in the aggregate amount of approximately $1.2 billion. <u>Id</u>.

[4]    Section 555 expressly refers to section 365(e)(1) of the Bankruptcy Code which contains the generally accepted definition of an <u>ipso facto</u> clause as being one which may be terminated based on the insolvency or financial condition of a debtor.

DCI 1032633

of whole mortgage loans and speaks plainly of a termination of all rights, including servicing. See PWSA, Section 9.01.

**Procedural impropriety.** EMC is now the rightful owner of the servicing rights, and such rights are not property of the bankruptcy estate. The Debtors cannot merely proceed in derogation of section 555, by unilaterally interpreting section 555 in a way not permitted by any known court ruling, or otherwise. Nor can the Debtors properly ask this Court to resolve the issue of whether the servicing is property of the estate in an expedited motion to assume or assign. Issues such as title cannot be resolved in an expedited proceeding under section 365, and instead, must be resolved first and prior to the final approval of the Sale.[5] Further, requiring EMC to anticipate defenses, and not know the grounds of the Debtors until only two days before a hearing, is unwarranted and unfair.

A motion to assume under Bankruptcy Code section 365 is a summary proceeding and is not the proper procedural mechanism to resolve questions concerning the validity of a contract, breach, or title issues. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.) 4 F.3d 1095 (2d Cir. 1993). "Permitting a bankruptcy court to rule conclusively on a decisive issue of breach of contract would render the use of "business judgment" required by In re Minges unnecessary, and is incompatible with the limited purpose of motions to assume. . ." Id. at 1099. See also In re Rodeo Canon Development Corporation, 362 F.3d 603 (9th Cir. 2004). A bankruptcy court cannot use a 363 "contested motion" procedure to resolve the question of title where the question of title has been raised, but not resolved. Darby

---

[5]  A hearing on the Debtors' Motion is currently scheduled for October 9, 2007. As of this writing, EMC is unclear as to what factual or legal basis the Debtors intend to assert, if any for assigning any rights under the PWSA. EMC has requested clarification from the Debtors of their witnesses and intention as to how they will proceed at the hearing on the Motion, but as of this date have received no reply. As such, EMC has filed an Emergency Motion Requesting Telephonic Hearing With Respect to hearing on Debtors' Sale Motion on October 1, 2007 [Docket No. 1022].

v. Zimmerman (In re Popp), 323 B.R. 260 (9th BAP, 2005). A purported sale under section 363 which is made without a final determination of title is subject to reversal despite the mootness provisions of section 363(m).

Alternatively, should this Court otherwise permit the Debtors to assume, assign or sell the servicing rights, despite EMC's contention of title and termination, then EMC would request, at a minimum, that the proceeds associated with the sale of such rights as they relate to the PWSA be held in escrow, pending a full hearing on the merits in an adversary proceeding, or otherwise. By holding such funds in escrow the Court can protect EMC from having its appellate rights unfairly cut off, should the Debtors assert that once the sale occurs, the issue of title cannot be raised under section 363(m) despite the contrary law, above.

In addition, and also alternatively, if this Court rules that the PWSA is an executory contract and has not been terminated, then EMC requests that the Debtors be required to tender the proper cure amount. The Debtors have failed to acknowledge the proper cure amount owed to EMC and have failed to state that the cure amount will be paid, as required by section 365. The Debtors have brazenly asserted that the cure amount is zero.[6] This is categorically incorrect, as the Debtors actual cure amount is approximately $24 million. The Debtors owe EMC various obligations, liabilities and other indebtedness, including but not limited to payments of unpaid principal, interest, legal fees and expenses and other charges and/or defaults, which arise under and in connection with the PWSA (not including applicable legal fees and expenses to be subsequently provided).

For these and the other reasons set forth below, EMC respectfully requests that the Court not approve the Sale Order.

---

[6] Cure Notice, Exhibit C.

5

## BACKGROUND

1.       On March 1, 2006, EMC, as purchaser, entered into the PWSA with American Home Mortgage Corporation, as seller ("AHMC") and American Home Mortgage Servicing, Inc. ("AHMS"), as servicer.  Pursuant to the PWSA, EMC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMC.

2.       On March 7, 2006, AHMC and EMC reached a tentative agreement for the purchase of certain mortgage loans by entering into two trade confirmations – AE0603 and AE0604 (the "Trade Confirmations") – pursuant to the PWSA by which AHMC would sell and EMC would purchase certain Purchased Mortgage Loans on a servicing retained basis, which means the servicing rights are retained by AHMC and/or AHMS until the right to service is terminated pursuant to the terms of the agreement.  (Neither of the Trade Confirmations was listed on the original Cure Notice as an executory contract, but now appear on Schedule 1.1(j)).

3.       On March 30, 2006, EMC, as purchaser, entered into two term sheets pursuant to the PWSA – the first related to the AE0603 trade confirmation to purchase $135,231,285.95 in mortgage loans from AHMC and AHMS and the second related to the AE0604 trade confirmation to purchase  $209,708,431.91 in mortgage loans from AHMC and AHMS (the "March 30th Term Sheets").  The March 30th Term Sheets finalized the tentative agreements reached in the Trade Confirmations between the parties and as such the March 30th Term Sheets supersede the Trade Confirmations.  As such, the Trade Confirmations are no longer governing, are terminated and cannot be assumed by the Debtors.

4.       On June 29, 2007, EMC, as purchaser, entered into a certain term sheet (the last transaction under the PWSA) with AHMC and AHMS, whereby EMC purchased additional Purchased Mortgage Loans on a servicing retained basis from AHMC.  (This

6

transaction was not identified as an executory contract on the Cure Notice, but was included on Schedule 1.1(j)).

5.      The term sheets dated March 30, 2006 and June 29, 2007, are governed by the terms and conditions of the PWSA. The PWSA expressly provides that unless and until there was an event of default, AHMC would cause the Purchased Mortgage Loans to be serviced by AHMS for the benefit of EMC.

6.      On August 6, 2007 (the "Petition Date"), each of the Debtors (which included AHMC and AHMS) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. As provided in Section 9.01(v) of the PWSA, the commencement of the Debtors' chapter 11 cases constituted an Event of Default under the PWSA and caused the automatic termination of the PWSA without further notice.

7.      On August 14, 2007, in accordance with Section 9.01 of the PWSA, EMC delivered a notice of default (the "Default Notice") to AHMC resulting from, inter alia, the filing of AHMC's chapter 11 case. The Default Notice related to the PWSA and the associated term sheets. AHMC's bankruptcy case constituted an Event of Default (as such term is defined in the PWSA) pursuant to Section 9.01(v) of the PWSA. The Default Notice notified AHMC of the event of default that occurred upon, inter alia, AHMC's bankruptcy filing, thereby terminating the PWSA and the related term sheets.

8.      Upon the termination, "all authority and power of [AHMC or AHMS], as applicable, under this Agreement, whether with respect to the [Purchased] Mortgage Loans or otherwise, shall pass to and be vested in [EMC]." As such, pursuant to the PWSA, the servicing rights and related servicing files and documents (the "Servicing Documents") and any amounts received by AHMC, including principal and interest payments, escrow amounts and other

7

income and amounts of any kind with respect to the Purchased Mortgage Loans (collectively, the "Collections") related to the Purchased Mortgage Loans became property of EMC, and AHMC and AHMS have no interest in such servicing rights whatsoever.

## BASIS FOR SUPPLEMENTAL OBJECTION

9.     The Debtors have no legal ability to either (a) assume and assign the terminated PWSA or (b) sell or transfer EMC's property, including its servicing rights under the PWSA, the Purchased Mortgage Loans, the Servicing Documents or the Collections. Accordingly, EMC objects to the entry of an order on the Motion (the "Sale Order") to the extent that the Debtors seek to sell free and clear of EMC's interests (i) the Purchased Mortgage Loans and the proceeds related thereto, (ii) the servicing rights, including the Servicing Documents, related to the Purchased Mortgage Loans, and (iii) the Collections related to PWSA or to otherwise affect the protected rights of EMC under the PWSA and section 555 of the Bankruptcy Code.  EMC also objects to the determination of its rights to a sale in a contested matter in lieu of a determination of title in an adversary proceeding, as required by settled case law.

> The PWSA and all Servicing Rights Were
> Terminated Automatically and by Notice of Default

10.     The Debtors rights under the PWSA were terminated "automatically and without notice" upon the filing of its bankruptcy petition on August 6, 2007.  Section 9.01(v) of the PWSA states that the filing of a bankruptcy petition is an Event of Default.  See PWSA § 9.01 ("[I]n the case of an Event of Default under clauses (iii), (iv) or (v) above, in which case, automatically and without notice ... all authority and power of the [AHMC or AHMS], as applicable, under this Agreement, whether with respect to the [Purchased] Mortgage Loans or otherwise, shall pass to and be vested in [EMC]").

8

11.     Further, EMC exercised its protected rights under the PWSA and section 555 of the Bankruptcy Code and notified the Debtors on August 14, 2007, in accordance with the Default Notice that "that EMC hereby terminated its obligations to purchase mortgage loans in any future transactions... ."   As provided in the Default Notice, "[AHMC] is responsible for any damages suffered by EMC as a result of [AHMC's] failure of performance."

12.     Upon the termination of the PWSA, any right AHMC might have had to service the Purchased Mortgage Loans was terminated and, therefore, the Purchased Mortgage Loans, the servicing rights and the Collections are not property of the estate under section 541 of the Bankruptcy Code.

13.     Indeed, the Debtors have no legal or equitable interest in the PWSA, the Purchased Mortgage Loans, the servicing rights to the Purchased Mortgage Loans, the Servicing Documents or the Collections and, therefore, cannot seek to transfer them.  See In re Wey, 854 F.2d 196, 199 (7th Cir. 1988) ("Possession of expired rights is the equivalent of the possession of no rights").  Any rights of the Debtors to service the Purchased Mortgage Loans were extinguished and the servicing rights, Servicing Documents and the Collections became the property of EMC.

14.     By listing the PWSA as a Potential Executory Contract to be assumed and assigned pursuant to the Motion the Debtors are not only violating the property interests and rights of EMC, but are also misleading any potential bidder of the Debtors' Servicing Business. As such, this Court should not approve the Sale Order.

### Section 555 of the Bankruptcy Code Prevents the Issuance of Orders that Frustrate EMC's Right to Terminate the PWSA

15.     In accordance with section 555 of the Bankruptcy Code, upon an Event of Default, EMC had the right to terminate the PWSA and terminate all the rights and obligations of

9

AHMC as servicer under the PWSA. Moreover, upon such termination, pursuant to Section 9.01 of the PWSA, AHMC is obligated to transfer the servicing rights including the Servicing Documents and Collections to EMC.

16.    Section 555 of the Bankruptcy Code provides, in relevant part, that:

> [t]he exercise of a contractual right of a stockbroker, financial institution, financial participant or securities clearing agency to cause the liquidation, termination, or acceleration of a securities contract, as defined in section 741 of this title, because of a condition of the kind specific in section 365(e)(1) of this title shall not be stayed, avoided or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title … .

Bankruptcy Code § 555. (Emphasis added.)

17.    The PWSA constitutes a securities contract as defined in section 741(7)(A)(i) of the Bankruptcy Code as a "contract for the purchase, sale, or loan of a … mortgage loan or any interest in a mortgage loan, … or mortgage loans or interests therein (including an interest therein or based on the value thereof)". The right to terminate the servicing is unquestionably one of the contractual rights in the PWSA because it is expressly provided for in Section 9.01 thereof.

18.    Section 741(7)(A) was amended in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, ("BAPCPA"). "A principal purpose goal of the Act, then, is to expand dramatically the range of protected financial contracts. … It is largely unnecessary for judges to analyze the economics of particular transactions."[7] This effort to limit judicial discretion was further strengthened by the inclusion in the definition of a securities contract as

---

[7]    Edward R. Morrison and Joerg Riegel, Financial Contracts and the New Bankruptcy Code: Insulating Markets from Bankrupt Debtors and Bankruptcy Judges, 13 Am.Bankr.Ins.L.Ev. 641, 652 (2005). "Equally important, the amendments limit judicial discretion to assess the economic substance of financial transactions, even those that resemble ordinary loans or that retire a debtor's outstanding debt or equity. The reforms of 2005 direct judges to apply a formalistic inquiry based on industry custom: a financial transaction is a "swap," "repurchase transaction" or other protected transaction if it is treated as such in the relevant financial market." Id. at 641.

"any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph." Bankruptcy Code § 741(A)(v).

19.    In addition, an "interest" in property has been defined, in a related context by the Third Circuit as a claim or right connected to the property. In re Trans World Airlines, 322 F.3d 282, 289 (3d Cir. 2003)("[T]he term "any interest" is intended to refer to obligations that are connected to, or arise from, the property being sold. Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252, 259 (3d Cir. 2000) (citing 3 Collier on Bankruptcy ¶363.06[1]). The servicing rights are an integral part of the PWSA, and at a minimum, no less than an "interest in a mortgage loan."

20.    A "condition" specified in section 365(e)(1) is a provision in a contract which permits the agreement to be terminated based on the insolvency or financial condition of the debtor at any time before the closing of a case.

21.    Section 9.01 of the PWSA is the kind of contractual right described in section 365(e)(1). EMC exercised its rights under section 9.01, and 11 U.S.C. § 365(e)(1) and 555 of the Bankruptcy Code, which rights arose automatically without notice, and by the giving of notice to the Debtors of such right. Indeed, the Default Notice states that "[r]eference is . . . made to section[] 555 . . . of the Bankruptcy Code."

22.    Thus, pursuant to section 555 of the Bankruptcy Code, EMC's exercise of its right to terminate the PWSA cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code or by order of this Court. Since the PWSA was terminated and the servicing rights, Servicing Documents and Collections thereby belong to EMC, the Debtors simply cannot assume and assign the PWSA or sell the servicing rights thereunder and this Court cannot exercise any of its otherwise existing bankruptcy powers to

11

avoid the affect of Section 555.  See In re R.M. Cordova Int'l, Inc., 77 B.R. 441, 446 (Bankr. D.

N.J. 1987) (finding that the exercise of an ipso facto clause was protected under section 556 of

the Bankruptcy Code (relating to forward contracts) and that such termination caused the

forward contracts to not be executory and, therefore, not subject to assumption pursuant to

section 365); see also In re Residential Resources Mortgage Investments Corp., 98 B.R. 2, 23-24

(In case involving mortgage certificates court stated, "in those transactions determined by this

Court to be Repurchase Agreements, [the creditor] should be permitted to liquidate immediately

the underlying securities pursuant to Section 555 of the Bankruptcy Code").

        23.      Pursuant to section 555 of the Bankruptcy Code, EMC's right to terminate

the PWSA and any servicing rights of AHMC and AHMS, thereby requiring the transfer of all

servicing rights, including the Servicing Documents and Collections to EMC, cannot be stayed

or otherwise limited by this Court and the Debtors should not be allowed to trample the property

rights of EMC, nor mislead potential bidders of the Debtors' Servicing Business.

> The PWSA is not Severable; the Servicing
> Rights are an Integral Part of the Bargain

        24.      The Debtors cannot defeat the express congressional mandate of section

555 by seeking to rewrite the PWSA as two agreements, and to thereby preclude the very

termination that Congress mandated be permitted.  This position, if asserted, would presumably

be that servicing rights are essentially a separate contract, or may be severed or "disaggregated."

By asking this Court to artificially treat one contract as if they were two, the Debtors are not only

violating the express mandate of Section 555 by asking this court to "limit" the power to

terminate a securities contract by dividing the contract into parts, but also ignoring a fundamental

principles of bankruptcy law with regard to executory contracts that "[a]n executory contract

must be assumed or rejected in toto."  See Sharon Steel Corp. v. National Fuel Gas Distribution

Corp., 872 F.2d 36, 41 (3d Cir.1989); In re Teligent, Inc., 268 B.R. 723, 728 (Bankr. S.D.N.Y.

2001). A contract will not be bifurcated into parts that will be rejected and those that will not.

See In re Metro Transp. Co., 87 B.R. 338, 342 (Bankr. E.D. Pa. 1988); In re Exide Technologies,

340 B.R. 222 (Bankr. D. Del. 2006). Therefore, the servicing component of the PWSR may not

be assumed independently of the other portion of the contract.[8]

> The Terminated PWSA is not an Executory Contract that can be
> Assumed and Assigned under Section 365 of the Bankruptcy Code

25.    The PWSA is listed in the Cure Notice as a "Potential Executory

Contract" (as that term is defined in the Cure Notice). It is now identified as a contract to be

sold under Schedule 1.1(j) of the APA. The Debtors cannot assume and assign the PWSA and

rights thereunder because the agreement was terminated, is no longer executory and, therefore,

incapable of being assumed and assigned under section 365 of the Bankruptcy Code.

26.    "[F]or section 365 to apply, the contract or lease must be in existence, if

the contract or lease has expired by its own terms..., then there is nothing left for the trustee to

assume or assign." Kopelman v. Halvajian (In re Triangle Laboratories), 663 F.2d 463, 467 (3d

Cir. 1981) (citations omitted). Upon the termination of the PWSA, such agreement no longer

constituted property of the Debtors' estates and, therefore, the PWSA cannot be assumed and

assigned pursuant to section 365 of the Bankruptcy Code. See Coast Cities Truck Sales, Inc. v.

Navistar Int'l Trans. Co. (In re Coast Cities Truck Sales, Inc.), 147 B.R. 674, 677 (D. N.J. 1992)

(finding that a terminated dealership agreement could not be assumed by the debtor). Moreover,

because the servicing has been terminated, the assets "for sale" are not property of the estate. It

is axiomatic that the Debtors cannot sell any property that it does not own or have an interest in.

---

[8]    Assumption would also violate the bankruptcy principle that a debtor can not assume a contract that has been
properly terminated. See infra ¶¶ 25-26.

DCI 1032633

A Bankruptcy Court May Not Resolve Contract Disputes
Nor Title Disputes in a Motion to Assume under Section 365

27.    The Debtors may not sell the Servicing Rights that belong to EMC

pursuant to the PWSA, unless and until this Court makes a determination as to whether "title" to

the rights has now vested in EMC, or resolves any disputed contractual issue relating to the

termination.

28.    The courts have held that a motion to assume under Bankruptcy Code

section 365 is a summary proceeding and does not authorize a court to resolve questions

concerning the validity of a contract, breach, or title issues.   Orion Pictures Corp. v. Showtime

Networks, Inc. (In re Orion Pictures Corp.) 4 F.3d 1095, 1098-99 (2d Cir. 1993).  Section 365

was "intended to efficiently review the trustee's or debtor's decision to adhere to or reject a

particular contract in the course of a swift administration of the bankruptcy estate. . . . It is not

the place for an extended breach of contract suit."  Id. at 1098.  Further, "Permitting a

bankruptcy court to rule conclusively on a decisive issue of breach of contract would render the

use of "business judgment" required by In re Minges unnecessary, and is incompatible with the

limited purpose of motions to assume. . ."  Id. at 1099.  See also, In re Interiors of Yesterday,

LLC, 2007 Bankr. LEXIS 449, *23 (Bankr. D. Conn. Feb. 2, 2007) (The threshold question of

whether the property sought to be sold by the Debtors is property of the estate must be decided

before such property may be sold free and clear under section 363(f) of the Bankruptcy Code).

See Moldo v. Clark (In re Clark), 266 B.R. 163, 172 (9th Cir. B.A.P. 2001).  Questions of title to

the Servicing Rights should not and must not be resolved in a contested matter.  See Warnick v.

Yassian (In re Rodeo Canon Development Corp.), 362 F.3d 603, 608-09 (9th Cir. 2004) ("A

bankruptcy court may not allow the sale of property as 'property of the estate' without first

14

determining whether the debtor in fact owned the property") (subsequently withdrawn based on stipulation of parties regarding the facts).

29.     The adversary proceeding is the proper vehicle for resolving such issues. See In re Claywell, 341 B.R. 396, 398 (Bankr. D. Conn. 2006).[9]  If the Debtors ultimately proceed with the sale without resolving the issue of who owns title to the servicing rights under the PWSA, a purported sale under section 363 will be subject to reversal despite the mootness provisions of section 363(m) of the Bankruptcy Code.  Darby v. Zimmerman (In re Popp), 323 B.R. 260, 217 n. 16 (9th Cir. B.A.P. 2005).

30.     In addition, the Debtors are seeking an injunction as part of the Sale Motion.  See Paragraph 19, Revised Motion, [Docket No. 865].  An injunction may not be ordered as a result of a contested matter.  See Bankruptcy Rule 7001(7); In re Integrated Health Services, Inc., 2006 WL 543876, * 3 (D. Del. March 6, 2006); In re Williams, 346 B.R. 361, 371 n. 11 (Bankr. E.D. Pa. 2006) (unless waived by the parties, Rules 7001(7) requires the commencement of an adversary proceeding).

> Alternatively, Assumption Should be Denied
> Because the Proposed Cure Amount is Incorrect

31.     Alternatively, and only if this Court rules that the PWSA or the Servicing Rights may be assumed, assigned or sold, then such assumption is nevertheless wrongful because the Debtors have wholly failed to propose a correct "cure" amount, and the APA does not make any provision for the payment of a cure amount.

32.     It is undisputed that at least one default has occurred under the express terms of the PWSA and there are various other defaults and obligations due and owing by the

---

[9]     While the Debtors should have initiated an adversary proceeding to determine title or other similar issues, EMC reserves the right to initiate an adversary proceeding to determine ownership and/or titled to the Servicing Rights under the PWSA.

DC1 1032633

Debtors.  Pursuant to section 365(b)(1) of the Bankruptcy Code, a debtor may not assume an

executory contract until the debtor: (a) cures or provides adequate assurance that it will promptly

cure any defaults under the contract; (b) compensates or provides adequate assurance of prompt

future compensation for actual pecuniary loss resulting from the default; and (c) provides

adequate assurance of future performance under the contract.  See also Cinicola v.

Scharffenberger, 248 F.3d 110, 119 (3d Cir. 2001) (citing L.R.S.C. v. Rickel Home Centers, Inc.

(In re Rickel Home Centers, Inc.), 209 F.3d 298 (3d Cir. 2001)).  The purpose of section

365(b)(1) of the Bankruptcy Code is to require the debtors to "give[ ] the other contracting party

the full benefit of [its] bargain" before requiring it to perform under the contract.  Kimmelman v.

Port Auth. of NY and NJ (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318 (3d Cir. 2003)

(quoting H.R. Rep. No. 950595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05).

        33.    Further, the Debtors may not "assign" the Servicing Rights or any portion

of the PWSA unless and until it first "assumes" the contract.  See Bankruptcy Code § 365(f)(1).

The Debtors cannot assume unless they have cured, as stated.

        34.    Therefore, if this Court determines that the PWSA is an executory contract

which has not been terminated (despite the assertions of EMC to the contrary) the Debtors are

nevertheless not entitled to assume and assign the PWSA unless they cure all defaults under the

PWSA and related term sheets.  See Bankruptcy Code § 365(b)(1); see also N.L.R.B. v. Bildisco

& Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the

executory contract, however, it assumes the contract cum onere and the expenses and liability

incurred may be treated as administrative expenses, which are afforded the highest priority on

the debtor's estate") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The

trustee, however, may not blow hot or cold.  If he accepts the contract be accepts it cum onere.  If

16

he receives the benefits he must adopt the burdens. He cannot accept one and reject the other")).

Indeed, the Debtors "must do so in its entirety." See Bankruptcy Code § 365(b)(1)(A)-(C); In re

Rickel Home Centers, Inc., 209 F.3d at 298.

35.    The Cure Notice lists the cure amount for the PWSA as $0.00. The proper

cure amount is based upon obligations, liabilities and other indebtedness, including but not

limited to payments of unpaid principal, interest, legal fees and expenses and other charges

and/or defaults, owing by the Debtors which arise under and in connection with the PWSA and

related trade confirmations and term sheets. The Debtors must cure such obligations, liabilities

and other indebtedness in the amount exceeding $24,508,295.44 (not including applicable legal

fees and expenses to be subsequently provided). These cure amounts continue to accrue.

Therefore, if this Court determines that the PWSA is an executory contract, the Debtors cannot

assume and assign the PWSA unless they pay EMC $24,508,295.44 (or as further supplemented,

not including applicable legal fees and expenses to be subsequently provided) in cure obligations

emanating from the PWSA and related termsheets.

Ten-Day Stay Should not be Waived

36.    Rule 6004(g) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") provides that orders authorizing the sale of debtors' assets are automatically

subject to a ten-day stay unless the court orders otherwise. The purpose of the rule is to protect

the rights of an objecting party. As the Debtors state in their own Motion, the stay should be

waived only when there is no objection to the procedure. See Motion ¶ 51 (citing 10 A. Resnick,

Collier on Bankruptcy, ¶ 6004.10, 6004-20 (15th ed. rev. 2006)). In this case, there have been

numerous objections filed by EMC and other parties to the Motion. As such, this Court should

not waive the ten-day stay.

17

The Debtors Failed to Provide Adequate Notice
of the Revised Asset Purchase Agreement to the Parties

37.     Bankruptcy Rule 6004 requires that notice of a proposed sale of property

shall be given in accordance with Bankruptcy Rule 2002(a)(2), (c) and (i).  Bankruptcy Rule

2002(a)(2) directs the clerk to give all parties in interest at least twenty days' notice by mail of a

proposed sale of property.  According to Bankruptcy Rule 2002(c), sufficient notice includes the

time and place of any public sale, the terms and conditions of any private sale, states the time for

filing objections.  See also In re Karpe, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988).

38.     The Debtors recently filed their revised asset purchase agreement on

September 21, 2007.  However, the objections to such asset purchase agreement are due on

October 2, 2007, just a mere eleven days after the filing of the asset purchase agreement.  Thus,

the Debtors are in violation of Bankruptcy Rule 2002(a)(2).

## ADDITIONAL CONTRACTS INSUFFICIENT INFORMATION

39.     Schedule 1.1(j) to the Asset Purchase Agreement which was attached to

the Debtors' Revised Motion also listed at least two additional agreements which EMC is

purported to be a party (these agreements were not listed on the initial Cure Notice filed by the

Debtors).  EMC has been unable to locate and is not aware of that certain Sale and Servicing

Agreement dated February 1, 2003 between Columbia National, Inc. (currently AHM Servicing),

as Seller, and EMC, as Purchaser.  See Schedule 1.1(j)(fn).  EMC has requested, by its counsel,

but to date not received from Debtors' counsel further information (or a copy of the agreement

itself) to assist it in determining its rights thereunder.

40.     In addition, the Debtors also listed at Schedule 1.1(j)(gs) a Term Sheet

(AE06A1) dated March 28, 2006 relating to a certain Mortgage Loan Repurchase and Interim

Servicing Agreement dated May 1, 2002 which the Debtors excluded as a contract to be assumed

in its Notice of Contracts Excluded From (I) Possible Assumption And Assignment of Certain

Leases, License Agreements, And Executory Contracts; And (II) Proposed Cure Obligations, if

Any [Docket No. 979], because, among other reasons, the servicing rights thereunder have

already been transferred to EMC. Similarly, the servicing rights under this Term Sheet

(AE06A1) have been transferred and are property of EMC, and as such, the debtors cannot seek

to transfer as part of the sale of its servicing business. EMC has requested, by its counsel,

clarification and further information as to this Term Sheet but to date has not received from

Debtors' counsel any further clarification.

        41.    EMC objects to the assumption and assignment of the above two

additional agreements and reserves all rights, including as to cure amounts, to further object and

supplement this objection as to these additional contracts.

## RESERVATION OF RIGHTS

        42.    Since the cure amounts are based upon a preliminary reconciliation, EMC

reserves the right to supplement and/or amend the cure amounts.

        43.    To the extent the Cure Notice fails to make clear the identity of all of the

parties to the contracts to be assumed and assigned as part of the sale of the Debtors' Servicing

Business or to the extent the Debtors further modify the lists of contract to be assumed and

assigned as part of the sale, EMC reserves the right to (a) file an additional objection to the

proposed assumption and assignment of any such contract; and/or (b) file a claim for cure

payments associated with any such contract.

        WHEREFORE, without in any way limiting its rights, EMC specifically requests

the following relief:

            •   That the Court hold that the Debtors may not assume, assign or sell any

               right whatsoever under the PWSA, including the Servicing Rights,

- That the Court find that (a) EMC's property, including, but not limited to, the Purchased Mortgage Loans and any proceeds related thereto, the servicing rights, including the Servicing Documents, and the Collections cannot be assumed, assigned, sold, transferred or otherwise encumbered, because such property is not property of the Debtors' estates; (b) the Debtors are not permitted to assume and assign the PWSA or any servicing rights thereunder, because the PWSA was terminated and does not constitute an executory contracts.

- Alternatively, that the Court adjourn or continue the Sale Motion, or defer any ruling on the issue of title or termination and require that any such issues be heard in an adversary proceeding.

- Alternatively, in the event the PWSA and accompanying trade confirmations and term sheets are found to be executory contracts, that the Debtors must pay EMC a cure amount not less than $24,508,295.44 (or as further supplemented, not including applicable legal fees and expenses to be subsequently provided); and (ii) grants such other relief that is just and proper.

DC1 1032633

- And for such other and further relief as the Court may deem just and appropriate.

Dated: October 2, 2007

Respectfully submitted,

DUANE MORRIS LLP

Frederick B. Rosner (DE 3995)
Richard W. Riley (DE 4052)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4943
Facsimile: (302) 657-4901

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Alex R. Rovira
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

SIDLEY AUSTIN LLP
David R. Kuney
1501 K. St. N.W.
Washington, D.C. 20005
Telephone:  (202) 736-8650
Facsimile:  (202) 736-8711

DC1 1032633