IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | **Related to Docket Nos. 11, 113,  403, 740, 855, 865, 929 and 931** |
| | ) | |
| | ) | **Objection Deadline:  October 2, 2007 at 4:00 p.m. (ET)** |
| | ) | **Auction Date:  October 5, 2007 at 10:00 a.m. (ET)** |
| | ) | **Sale Hearing Date:  October 9, 2007 at 2:30 p.m. (ET)** |

**AMENDED AND SUPPLEMENTAL OBJECTION OF CITIMORTGAGE, INC. TO
EMERGENCY MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING
SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF
CERTAIN ASSETS USED IN THE DEBTORS' LOAN SERVICING BUSINESS;
(III) APPROVING FORM AND MANNER OF NOTICE THEREOF;
AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE
SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING
AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES RELATED THERETO;
AND (IV) GRANTING RELATED RELIEF**

CitiMortgage, Inc. ("CMI") by and through their undersigned counsel, and in accordance

with section 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules

6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby

files this Objection to *Emergency Motion of the Debtors for Orders: (A)(I) Approving Sale*

*Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors'*

*Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV)*

*Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens,*

*Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase*

*Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "Sale Motion")[1], as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

2.      The statutory basis for the relief requested in this Objection is Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004(a) and 9014.

## BACKGROUND

**A.      Procedural Background**

3.      On August 6, 2007 (the "Petition Date"), American Home Mortgage Corp., American Home Mortgage Servicing, Inc. and certain affiliates (collectively, the "Debtors") commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases").

4.      The Cases are being jointly administered in accordance with an order this Court entered on August 7, 2007.

5.      On August 6, 2007, the Debtors filed the Sale Motion.

6.      On August 9, 2007, this Court entered its *Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief* (the "Sales Procedures Order") establishing procedures for the sale of the Debtors servicing business (the "Proposed Sale").

---

[1] CMI also objects to documents related to the Motion, including the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any.

1617008

7.     CMI previously filed objections to the Motion on September 13, 2007 (D.I. 740),

September 20, 2007 (D.I. 855) and an objection to the Revised Procedures Motion on September

25, 2007 (D.I. 929) (collectively, the "Objections").  All capitalized terms not otherwise defined

or revised herein have the meaning set forth in the Objections or in the Revised Procedures

Motion (D.I. 865), as applicable.

8.     In the Objections, CMI objected to the Motion to the extent the Motion sought to

assume and assign the Servicing Agreements.  The Objections are incorporated herein as if fully

restated herein.   The Objections remain effective and this Supplemental Objection does not

replace or supersede the Objections.

9.     On September 25, 2007, the Debtors filed an executed Asset Purchase Agreement

("APA") at docket no. 931, which included on the attached Exhibit to that Notice, the following

contracts the Debtors propose to assume:

(a) In Schedule 1.1(j):

| Name of Agreement | Type of Agreement/Arrangement |
|---|---|
| Assignment, Assumption and Recognition Agreement, made as of January 1, 2007, among HSBC Bank, National Association (the "Assignor"), HSI Asset Securitization Corporation (the "Assignee"), CitiMortgage, Inc. as Master Servicer (the "Master Servicer"), Deutsche Bank National Trust Company (the "Trustee") not individually, but solely as trustee on behalf of the holders of the HSI Asset Loan Obligation Trust, Series 2007-AR1, Asset-Backed Certificates, American Home Mortgage Corp. (the "Company") and American Home Mortgage Servicing, Inc. (the "Servicer") | Third Party Securitization HALO #2007-AR1 |

This Agreement has previously been defined as the "AR1 AA&R Agreement." A copy of the AR1 AA&R Agreement is attached hereto as <u>Exhibit A</u>. A copy of the AR1 Purchase Agreement is attached hereto as <u>Exhibit B</u>.

(b) In addition, at schedule 2.1(b)(ii), the APA provides for the purchase of the following:

| <u>Name of Counterparty</u> | <u>Type</u> | <u>Agreement</u> |
|---|---|---|
| CitiMortgage, Inc. | Servicing Agreement | Loan Sale and Servicing Agreement with CitiMortgage, Inc. |

CMI has previously objected to the assumption and assignment of this agreement because CMI is unaware of the agreement to which the Debtor is referring. D.I. No. 740 at pp. 12-14. While CMI initially guessed that it was the AR1 Purchase Agreement, subsequent disclosures by the Debtor in the APA have led CMI to believe that it is not the AR1 Purchase Agreement. The APA further concedes that the Debtor has never furnished a copy of this agreement to the purchaser and the Debtor is unable to find the agreement. The Debtor has subsequently contacted CMI to request that CMI furnish to Debtor a copy of the agreement. CMI has no idea of the agreement to which the Debtor is referring. We will refer to this agreement as the "Mystery Service Agreement."

(c) In Schedule 5.6 (b)(i), the APA purports to transfer:

| Name of Agreement | Type of Agreement/Arrangement |
|---|---|
| Pooling and Servicing Agreement Dated as of January 1, 2007 among HSI ASSET SECURITIZATION CORPORATION, as Depositor, CITIMORTGAGE, INC., as Master Servicer, CITIBANK, N.A., as Securities Administrator, WELLS FARGO BANK, N.A., as Custodian and DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee | HALO 2007-AR1 |

This will be referred to as the "Pooling and Service Agreement."[2]

**B.    Factual Background**

10.    In CMI's objection at docket no. 740, CMI described the background to the HALO 2007-AR1 arrangement.  That description at pp. 5-12 is incorporated by reference herein and will not be repeated.  CMI is unable to decipher what the Mystery Service Agreement is that Debtor is seeking to transfer and therefore cannot provide any background on that agreement.

**OBJECTIONS**

11.    In addition to its previous Objections, CMI objects to the Sale Motion on five grounds: (i) Debtor should be required to unambiguously identify the contracts it seeks to assume and assign; (ii) Debtors are prohibited from modifying the terms and conditions of the assumed and assigned contracts (iii) Debtor must cure any defaults, including any non-monetary defaults of the Servicer under the Servicing Agreements (determined with respect to performance through the effective time of any assignment, not at the time of the Sale Motion), (iv) CMI is entitled to adequate assurance of future performance by any prospective purchaser, and (v) the Servicing Agreements cannot be assigned without the consent of CMI and the Trustee, which CMI and the Trustee have not given and do not give.

---

[2] Debtor has indicated that it no longer wishes to assume and assign the HALO 2007-1 Agreements. D.I. 979.

1617008

12.    <u>It is unclear what contracts the Debtors are seeking to assume and assign.</u>  The APA lists the AR1 AA&R Agreement as a contract that is being assumed and assigned, but does not list the AR1 Purchase Agreement referenced therein, that provides for the specifics of the Servicer's servicing obligations.  If the AR1 Purchase Agreement is included, Debtor should be required to so state.

13.    The APA also lists the Mystery Service Agreement, labeling it as a generic "Loan Sale and Servicing Agreement," but does not profess to specify the actual name or the date of the agreement.  It is unclear the contract to which this purports to refer and the Debtor is equally in the dark since the Debtor has not produced a copy of the contract and even went so far as to contact the undersigned counsel for CMI to request a copy (which CMI does not have and cannot identify from the limited information the Debtor has provided).

14.    The Sale Motion and the associated notices are hopelessly ambiguous as to what executory contracts the Debtors are seeking to assume and assign.  CMI should not have to guess.  The Debtors ought to be required to provide CMI with a copy of all such contracts and/or definitively identify the contracts by precise title and date so that CMI can determine what the contracts are, whether they are executory, whether they are subject to assumption and assignment and whether there are any cure amounts due thereunder.  CMI reserves its rights to state cure amounts and objections once it understands what the Debtors are purporting to assume and assign, and once it determines the status of the Debtors' performance through the time that their obligations are to be transferred.

15.    <u>The Debtors Are Prohibited From Modifying The Terms And Conditions Of Any Of The Servicing Agreements.</u>  The Debtor's proposed sale order provides at paragraph J that the contracts being transferred shall consist solely of servicing

6

agreements, that such agreements shall not include any other agreements regardless of whether such other obligations are in the same agreement and that such obligations are severable.   Paragraph 24 of the proposed sale order purports to reform any such agreement to separate out the servicing aspect of the agreement, and become a separate independently enforceable agreement.   Similarly, at Sections 6.1(a) and 6.2(a) of the APA, the interim servicing operations during the "gap period" (between the first and second closing) are subject to vaguely defined "Bankruptcy Exceptions."   Debtors cannot so modify the terms of contracts to be assumed.

16.   A decision to assume or reject an executory contract is "an all or nothing proposition."   Schlumberger Resource Management Serv., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data Sys., Inc.), 327 F.2d 242, 249 (3d Cir. 2003).   Thus, if a debtor assumes a contract, it must do so *cum onere*, with all the benefits as well as the burdens. Cinicola v. Scharffenberger, 248, F.3d 110, 119-120 (3d Cir. 1999).   See also In re Beverage Canners Int'l Corp., 255 B.R. 89, 95 (Bankr. S.D. Fla. 2000) ("It is black letter law that an executory contract must be either assumed in its entirety, *cum onere*, or completely rejected."); In re Rigg, 198 B.R. 681, 685 (Bankr. N.D. Tex. 1996) ("If a debtor chooses to assume . . . an executory contract or unexpired lease, he must assume them according to their terms.").   The assumption and assignment of an executory contract does not give the debtor or the assignee the ability or the right to modify the terms of the agreement being assumed and assigned.   See e.g. Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir. 2001).   In the Medtronic case, the court explained that:

> [a]ssignment does not modify terms of the underlying contract.   It
> is a separate agreement between the assignor and the assignee

> which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party changed. An assignment is intended to change only who performs an obligation, not the obligation to be performed.

Id. See also In re Federal-Mogul Global, Inc., Case No. 05-2423, 2007 U.S. App. LEXIS 6120, at *9 (3d Cir. Mar. 15, 2007) (explaining that the debtor is not able to modify obligations in contract assumed and assigned pursuant to Section 365 of the Bankruptcy Code).

17.    Any purchaser must perform all terms of the Assumed Contracts subject to all the terms thereof. The failure of any successor servicer to assume the contracts other than subject to all the terms thereof would constitute an impermissible modification of the Agreements and CMI cannot be forced to accept a modification of the Servicing Agreements. Any successor must accept all contracts, in their entirety, as they exist, without modification.

18.    The Servicer and the Company must cure any defaults under the Servicing Agreements. To the extent that any purchaser seeks to purchase the Servicing Agreements, such purchaser must cure all defaults thereunder and pay the correct cure amount. Section 365 of the Bankruptcy Code, 11 U.S.C. § 365, provides, in pertinent part:

> (b)(1) If there has been a default in an executory contract or unexpired lease . . . of the debtor, the trustee may not assume such contract . . . unless, at the time of assumption of such contract, the trustee
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default . . .

11 U.S.C. § 365(b)(1)(A).

19.    The Servicer and the Company must continue to perform their obligations under the Servicing Agreements on a post-petition basis and obligations and payments associated with such performance continue to accrue. Depending on the closing date of the sale of the Debtor's assets, the cure amount may increase or other obligations may come due. For example, in

8

connection with a transition of the Servicing Agreements to a successor servicer, there must be an orderly transition, including all amounts collected on the mortgage loans being turned over to the successor servicer, if not already paid up to the Master Servicer, and all files, records (paper and electronic) concerning the mortgage loans, and the servicing thereof, will need to be turned over to the successor servicer completely and accurately. Any defaults under the contracts, whether monetary or non-monetary, must be cured.

20.    At pages 8-12 of CMI's objection at D.I. 740, CMI highlighted some of the primary duties of the Servicer.  In addition to those duties, at pages 1-3, at D.I. 855, CMI listed additional latent defaults that may have occurred of which CMI is not aware.

21.    CMI reserves the right to amend this limited cure objection and/or the cure amount to the extent that CMI determines, *inter alia*, that any other or additional cure amounts are due and/or it determines there are other defaults under the Servicing Agreements.  As previously stated, CMI requests an appropriate reserve to address such defaults.

22.    <u>CMI is entitled to adequate assurance of future performance by any prospective purchaser</u>.  CMI has previously addressed the requirement that CMI is entitled to adequate assurance of future performance.  <u>See</u> <u>e.g.</u> D.I. 740 at pp. 15-17, D.I. 929 at pp. 2-3.  Nothing in the recent filings has addressed this issue.  Indeed, all parties agree that purchaser has never operated a servicing business before.

23.    Compounding the problems with the failure to provide adequate assurances of the proposed Purchaser's ability to perform at Section 6.10 of the APA, Purchaser, itself an unqualified buyer, purports to create a "right" to assign its rights to a designee of its choice (an unknown and potentially additional unqualified purchaser).

9

24. Moreover, the Purchaser has also purports to reserve to itself the right to subsequently reject any contract it assumes. As a result, even its effort to assume the contracts is illusory.

25. CMI objects to these provisions. They do not fulfill Debtor's burden under 11 U.S.C. § 365 (b) and (f).

26. The Servicing Agreements Specify that they Cannot Be Assigned Without CMI's Consent and the Trustee's Consent, Which CMI and the Trustee Do Not Give. At both the level of the proposed Purchaser – and most certainly at the level of any downstream assignee that the Purchaser may later identify – CMI objects to the Debtor's effort to assign the contract without its permission.

24. Section 365(c)(1) states:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, (A) if applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment . . .

11 U.S.C. § 365(c)(1). Because, under applicable law, the Servicing Agreement cannot be assigned without the consent of CMI and the Trustee, and CMI does not know to whom its contract will be assigned, CMI will not consent to any such assignment, unless and until the prospective purchaser is satisfactory to both CMI and the Trustee, and qualifies in all respects to be a successor servicer under applicable law and the requirements of the transaction documents for the HALO 2007 AR1 securitizations.

1617008

WHEREFORE, CMI respectfully requests that this Court enter an order (a) denying the sale motion, (b) requiring Debtor to provide a copy of all contracts they see to assume and assign, (c) establishing a reserve to fund latent defaults, (d) setting a hearing to require any prospective purchaser to demonstrate adequate assurance of future performance, (e) conditioning any assignment upon CMI's and the Trustee's consent and (f) granting such further relief as this Court deems just and proper.

Dated:  October 2, 2007

**MORRIS JAMES LLP**

Brett D. Fallon (DE Bar No. 2480)
Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware  19899-2306
Telephone:  (302)888-6888
Facsimile:   (302) 571-1750
Email:  bfallon@morrisjames.com

-and-

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 24005
Denver, Colorado  80202-5424
Telephone:  (303) 626-7139
Facsimile:   (303) 626-7101
Email:  apetrie@featherstonelaw.com

*Attorneys for CitiMortage, Inc.*

1617008