## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | **Case No. 07-11047-CSS** |
| **HOLDINGS, INC., a Delaware** | ) | |
| **corporation, *et al.*,**[1] | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | **Related to Doc. No. 11** |
| | ) | |
| | ) | **Re: Docket Nos. 11, 113, 403 and 674** |
| | ) | |
| | ) | Hearing Date: October 9, 2007 at 2:30 p.m. (Eastern) |

**SUPPLEMENTAL OBJECTION OF RESIDENTIAL FUNDING COMPANY, LLC TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS: (A)(1) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN ASSETS USED IN DEBTORS' LOAN SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF</u>**

Residential Funding Company, LLC ("GMAC-RFC"), by and through its counsel, Reed

Smith LLP, files this Supplemental Objection (the "Objection")[2] to the Emergency Motion of the

Debtors filed at Docket No. 11 seeking an Order of Court that, *inter alia*, authorizes the sale (the

"Sale") of the Debtors' servicing business (the "Servicing Business") free and clear of liens, claims

and encumbrances and approving the assumption and assignment of certain executory contracts and

---

[1] The Debtors are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

[2] This supplemental objection is made in addition to GMAC-RFC's previously filed objection and does not supersede or replace GMAC-RFC's previously filed objection.

unexpired leases, and to the Debtors' proposed cure amounts as set forth in its Notice of (I) Possible

Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and

(II) Proposed Cure Obligations, as amended by the Debtors on September 10, 2007, and supplemented

on September 26, 2007 (collectively, the "Assumption Notice and Proposed Cure Amounts"), and in

support of the Objection, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

GMAC-RFC is a party to that certain Seller/Servicer Contract ("Seller/Servicer Contract")

pursuant to which certain of the Debtors sold certain loans, including residential mortgage loans and

home equity lines of credit (collectively, the "Loans") to GMAC-RFC and/or serviced the Loans on

behalf of GMAC-RFC in accordance with the terms of that certain Residential Funding Seller and

Servicer Guides, as amended, supplemented or otherwise modified, from time to time (the "Guides";

together with the Seller/Servicer Contract collectively, the "Agreement"). All provisions of the Guides

are incorporated by reference into and make a part of the Seller/Servicer Contract and are binding on

the parties. *See* Seller/Servicer Contract, §1.

Prior to the filing of their bankruptcy cases, the Debtors were in the business of originating,

servicing, and selling residential mortgage loans and home equity lines of credit to trusts created in

connection with securitized transactions or directly to third party purchasers, similarly situated to

GMAC-RFC. Some of the Loans originated by one or more of the Debtors and sold to GMAC-RFC

were sold on a retained basis, meaning that the Debtors sold title to the Loans to GMAC-RFC, but

retained the right to service the Loans in accordance with the terms of the Agreement. Other Loans

were sold to GMAC-RFC on a released basis, meaning that the Debtors sold both the title to the Loans

and the servicing rights to the Loan to GMAC-RFC. The last Loan purchased by GMAC-RFC on a

retained basis was in 2002. Accordingly, since 2002, all of the Loans purchased by GMAC-RFC have

been on a released basis in which the Debtors do <u>not</u> have any ownership or servicing rights in connection with the Loans. By letter dated August 3, 2007, GMAC-RFC terminated the Debtors' servicing rights under the Agreement.

GMAC-RFC objects to the Sale Motion to the extent it purports to assume and assign servicing rights under the Agreement that GMAC-RFC terminated prior to the Debtors' bankruptcy filing. The Debtors' terminated servicing rights under Agreement no longer exist and therefore, cannot constitute property of the Debtors' bankruptcy estates. Accordingly, the terminated rights of the Debtors under the Agreement cannot be sold, assumed, or assigned by the Debtors pursuant to the Sale Motion or otherwise. It is irrelevant whether the Agreement under which the servicing rights of the Debtors arose are executory or not – the fact is, the rights of the Debtors under the Agreement were terminated prior to the Petition Date and thus they are no longer assets owned by the Debtors.

Additionally, even if the servicing rights under the Agreement had not been terminated, those rights may only be assumed and assigned, or sold, to a proposed assignee or purchaser that is capable of satisfying <u>all</u> of the material obligations under the Agreement. The proposed purchaser identified by the Debtors as recently as September 21, 2007, however, is not even licensed to service the Loans. Accordingly, the only identified purchaser of the servicing rights under the Agreement is currently incapable of satisfying <u>any</u> of the material obligations under the Agreement.

Further, because the Agreement is executory in nature, it must be assumed and assigned in its entirety and only if the Debtors cure defaults that exist thereunder that are capable of being cured. The Sale Motion, however, does not indicate whether all of the defaults that currently exist under the Agreement will be cured. As a result, GMAC-RFC objects to the Sale Motion, as well as to the Assumption Notice and Proposed Cure Amounts, to the extent they seek to assume or assign any servicing rights under the Agreement without curing existing defaults as required by 11 U.S.C. § 365.

GMAC-RFC further objects to the Sale Motion to the extent the Debtors do not purport to assume and assign the Agreement in its entirety.

Finally, GMAC-RFC reserves its right to supplement this Objection upon learning the identity of the Debtors' proposed purchaser of the Agreement or the rights thereunder. Because the bid deadline has been extended until October 2, 2007, the universe of potential bidders is currently unknown and presumably will not be available until that date. Therefore, it is impossible to evaluate at this time whether some or all of the prospective bidders will be able to meet the specific and material criteria for assuming the servicing rights and obligations under the Agreement.

## II.    BACKGROUND

### A.    Procedural Background

1.    On August 6, 2007 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of title 11 of the United States Code. The cases are being jointly administered.

2.    On August 6, 2007 the Debtors filed the Sale Motion.

3.    On August 9, 2007, this Court entered its Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief (the "Sales Procedure Order").

4.    On August 27, 2007, the Debtors served a Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, that was amended by the Debtors on September 10, 2007 and supplemented on September 26, 2007 in the Assumption Notice and Proposed Cure Amounts.

5.    On or about September 14, 2007, the Debtors filed their second Notice of Rescheduled Dates pursuant to which the objection deadline to the Sale Motion was extended and rescheduled to

October 1, 2007, the deadline for the submission of bids for the Assets was rescheduled to October 2, 2007, the Auction Date was rescheduled to October 5, 2007, and the Sale Hearing Date was rescheduled to October 9, 2007.

6.    On September 20, 2007, out of an abundance of caution, GMAC-RFC filed its *Objection to the Debtors' Proposed Cure Amounts In Connection With Emergency Motion Of The Debtors For Orders:  (A)(1) Approving Sale Procedures; (II) Scheduling A Hearing To Consider Sale Of Certain Assets Used In Debtors' Loan Servicing Business; (III) Approving Form And Manner Of Notice Thereof And (IV) Granting Related Relief; And (B)(I) Authorizing The Sale Of Such Assets Free And Clear Of Liens, Claims And Encumbrances, And Other Interests; (II) Authorizing And Approving Purchase Agreement Thereto; (III) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And (IV) Granting Related Relief.*

7.    On or about September 21, 2007, the Debtors filed their *Motion for Order Pursuant To Sections 105(a), 363, 364, 365, and 503(b) Of The Bankruptcy Code And Rules 2002, 4001, 6004, 6006, 7062, 9007, And 9014 Of The Federal Rules Of Bankruptcy Procedure (A) Approving Revised Procedures For The Sale Of The Debtors' Mortgage Servicing Business; (B) Approving Certain Protections For The Stalking Horse Bidder In Such Sale; (C) Directing That Certain Notices Of Such Sale And Deadline Be Given; And (D) Authorizing, On An Interim Basis, The Debtors To Grant Certain Liens And Other Protections For the Purchaser's Collateral Effective After The Initial Closing* (the "Revised Sale Procedures Motion").

8.    On September 25, 2007, this Court entered an order granting the Revised Sale Procedures Motion (the "Revised Sale Procedures Order").  Paragraph 18 of the Revised Sale Procedures Order specifies that the deadline to file objections to the Sale Motion is October 2, 2007.

**B.    The GMAC-RFC Agreement.**

9.    Prior to the Petition Date, GMAC-RFC, entered into the Seller/Servicer Contract dated January 15, 1996 with Michael Strauss dba American Home Mortgage American Brokers Conduit, now, upon information and belief, American Home Mortgage Servicing, Inc. (the " Debtor Servicer"). A copy of the Seller/Servicer Contract is attached hereto as Exhibit A. The Guides, however, are too voluminous to attach. A copy of the Guides are available for review at gmacresidentialfunding.com.

10.    Pursuant to the Seller/Servicer Contract, the Debtor Servicer sold the Loans to, and/or serviced the Loans for, GMAC-RFC, which GMAC-RFC agreed to purchase subject to the terms and conditions set forth in the Guides. *See* Seller/Servicer Contract, § 1.

11.    Section 1 of the Seller/Servicer Contract provides that the Debtor Servicer "acknowledges that it has received and read the Guides" and further that "[a]ll provisions of the Guides are incorporated by reference into and make a part of [the Seller/Servicer Contract], and shall be binding upon the parties." *See* Seller/Servicer Contract, § 1 (emphasis added). Finally, Section 1 of the Seller/Servicer Contract expressly states that the Debtors are entitled to sell the Loans and/or service the Loans for GMAC-RFC so long as GMAC-RFC authorized the Debtors to do so. *See* id.

12.    The purpose of Guides is to "offer[] a continual and competitive source of mortgage financing to meet the needs of the residential market." *See* Guides, § 100. Adherence to the requirements of the Guides accomplishes this objective by setting "standards for effective and efficient mortgage servicing for all product types including Jumbo A, Expanded Criteria, Credit Gap, AlterNet, and Home Equity." *See* id.

13.    Accordingly, adherence to the terms and conditions of the Guides is required under, and is a part of, the Seller/Servicer Contract and is necessary for GMAC-RFC to attain its stated objectives and ensure the effective and efficient mortgage servicing of the Loans.

III     **RELIEF REQUESTED AND BASES FOR RELIEF REQUESTED**

14.     On the Exhibits to the Assumption Notice and Proposed Cure Amounts, the Debtors have proposed to assume and assign the Agreement and/or the servicing rights thereunder.

15.     GMAC-RFC does not consent to the assumption and assignment of the Agreement, and for the reasons set forth below, GMAC-RFC objects to the Debtors' proposed assumption and assignment of the Agreement or the servicing rights thereunder, the Sale Motion, and the Debtors' proposed cure amounts as set forth in their Assumption Notice and Proposed Cure Amounts.

A.     **The Debtors' Servicing Rights Under The Agreement Are Terminated And Consequently Cannot Be Assumed And Assigned, Or Sold By The Debtors.**

1.     **The Debtors' Servicing Rights Under The Agreement Were Terminated Prepetition.**

16.     Section 218 of the Guide provides that "GMAC-RFC, in its sole discretion, may terminate servicing by the Servicer with or without cause."

17.     Section 218(A) of the Guides provides that "GMAC-RFC may immediately terminate servicing by the Servicer (in compliance with statutory requirements as applicable) without compensation to the Servicer" for any one of the itemized reasons set forth in Section 218(A).

18.     Among the itemized grounds for terminating the Debtors' servicing rights for cause listed in Section 218(A) are: (a) the impending or actual insolvency of the Servicer; (b) any other change in the financial or organizational status of the Servicer, that, in the opinion of GMAC-RFC, could adversely affect GMAC-RFC; and (c) the determination by GMAC-RFC that the Servicer's warranty obligations are disproportionate to its capital and/or assets. *See* Guides, § 218(A).

19.     Based on internal reports, GMAC-RFC's servicer management placed the Debtor Servicer on "watch" status in March of 2007. GMAC-RFC's servicer management compliance group then began tracking adverse publicity regarding the Debtors' operations since April of 2007. Included

among the adverse publicity was the Debtors' July 31, 2007 announcement that they had not funded

their lending obligations of approximately $300 million on July 30, 2007, and they would not be able

to fund their lending obligations of $450-500 million on July 31, 2007. Press releases issued by one or

more of the Debtors stated that they anticipated the liquidation of their assets and the cessation of their

loan origination business.[3]

20.    The announcements regarding inability to meet funding obligations, liquidation of

business assets, and cessation of the Debtors' origination business all evidence the "impending or

actual insolvency" of the Debtor Servicer, substantial "changes in the financial or organizational status

of the [Debtor Servicer] and that the "[Debtor] Servicer's warranty obligations are disproportionate to

its capital and/or assets," providing GMAC-RFC with grounds to terminate the Debtor Servicer's

rights under the Agreement.

21.    Accordingly, by letter dated August 3, 2007 and delivered to the Debtors via overnight

mail, GMAC-RFC terminated the Debtor Servicer's rights to service loans for GMAC-RFC under the

Agreement pursuant to Section 218(A) of the Guide, effective August 31, 2007 (the "Termination

Notice"). The Termination Notice further provides that GMAC Mortgage shall be the successor

servicer effective as of September 4, 2007. A copy of the Termination Notice is attached hereto as

Exhibit B.

22.    A termination of the Agreement "for cause" does not require any right of cure to the

defaulting party. *See* Guides, § 218(A). As was its right under the Agreement, GMAC-RFC

terminated the servicing right of the Debtor Servicer without affording any cure right to the Debtor

Servicer. Therefore, GMAC-RFC immediately terminated the Debtor Servicer's rights under the

---

[3] *See* August 1, 2007 Wall Street Journal, p. 1 ("Traders said yesterday's stock-market selloff was
ignited by a warning from American Home Mortgage that pressure to repay its creditors may cause it
to liquidated its assets. Its shares subsequently plunged 89% to $1.13").

Agreement on or around August 3, 2007. *See* Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) (holding that where the contract is terminated prepetition, without an opportunity to cure, the filing of a bankruptcy petition will not preclude the termination from taking effect on a postpetition date).

23.    Because GMAC-RFC immediately terminated the Debtors' servicing rights under the Agreement, the Debtors and their estate have no servicing rights pursuant to the Agreement that can be assumed and assigned, or sold, to a third party. *See* In re Kopelman v. Halvajian (In re Triangle Laboratories, Inc.), 663 F.2d 463, 467-68 (3d Cir. 1981) (holding that where a contract has been terminated prior to the commencement of the bankruptcy case, there is nothing left for the debtor to assume or assign); American Bankers Mtge. Corp. v. Federal Home Loan Mtge. Corp., 75 F.3d 1401, 1412 (9th Cir. 1995), *cert. denied*, 519 U.S. 812 (1996) (holding that a terminated servicer has "no remaining possessory rights in the servicing rights to its mortgage portfolio."); Mortgage Network Corp. v. Federal Home Loan Mortgage Corp., Case No. SACV 93-303 at 5, 9 (C.D. Cal. Dec. 20, 1993), *aff'd.*, 77 F.3d 489 (table), 1996 WL 64984 (9th Cir.), *cert. denied*, 519 U.S. 812 (1996) (noting that, under the terms of the contract, upon termination of servicing rights, the servicer had no remaining possessory interest in the servicing rights). "[I]t is a well 'recognized principle of bankruptcy law that an executory contract or lease validly terminated prior to the institution of the bankruptcy proceedings, is not resurrected by the filing of the petition in bankruptcy and cannot therefore be included among the debtor's assets.'" McDaniel v. Metropolis Towers Apartment Corp., 2002 WL 106587 at 3 (D. N.J. Feb. 26, 2002) (quoting In re Robertson, 147 B.R. 358, 361 (Bankr. D. N.J. 1992)).

24.    Accordingly, GMAC-RFC respectfully requests that this Court deny the Sale Motion to the extent it seeks to assume and assign, or sell, the terminated servicing rights under the Agreement.

2. **The Automatic Stay Does Not Prevent Termination of the Debtors' Servicing Rights Under The Agreement Postpetition Because The Agreement Is a Securities Contract And GMAC-RFC is a Financial Participant.**

25.    Even if the Debtors' servicing rights were not effectively terminated on a prepetition basis, 11 U.S.C. § 555 provides, among other things, that the automatic stay does not apply to prevent GMAC-RFC from terminating the Debtors' servicing rights under the Agreement postpetition because the Agreement is a "securities contract" within the meaning of 11 U.S.C. § 741(7) and GMAC-RFC is a "financial participant" within the meaning of 11 U.S.C. § 101(22A).

26.    The Bankruptcy Code defines a "securities contract" as "a contract for the purchase, sale, or loan of a security, a certificate of deposit, *a mortgage loan* or any interest in a mortgage loan, *a group or index of* securities, certificates of deposit, or *mortgage loans* or interests therein…" 11 U.S.C. § 741(7) (emphasis added).

27.    As set forth in detail above, the Agreement provides for the sale of mortgage loans by the Debtors to GMAC-RFC and GMAC-RFC's concurrent purchase of those mortgage loans from the Debtors. Accordingly, the Agreement is a contract for the purchase and sale of mortgage loans. As such, the Agreement fits squarely within the statutory definition of a "securities contract" under the Bankruptcy Code.

28.    The Bankruptcy Code affords certain protections to financial participants that are counterparties to securities contracts in order to protect financial markets from the distress and potential collapse that could be caused in the event these financial counterparties are not able to quickly and smoothly exit obligations under securities contracts. *See* H.R. Rep. No. 109-31 at 3, 20, 131, 132 (2005) (justifying amendments to Code regarding financial contracts as "provisions designed to reduce systemic risk").

29.     One of the protections provided to financial participants to securities contracts is found in 11 U.S.C. § 555. Section 555 provides that a financial participant may terminate the securities contract because of the Debtors' insolvency or financial condition of the debtor and such termination cannot be stayed, avoided, or otherwise limited by any provision of the Bankruptcy Code or order from the Bankruptcy Court.[4]

30.     A "financial participant" is

an entity that, at the time it enters into a securities contract, commodity contract, swap agreement, repurchase agreement, or forward contract, or at the time of the date of the filing of the petition, has one or more agreements or transactions described in paragraph (1), (2), (3), (4), (5), or (6) of section 561(a) with the debtor or any other entity (other than an affiliate) of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding on any day during the previous 15-month period, or has gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions with the debtor or any other entity (other than an affiliate) on any day during the previous 15-month period.

11 U.S.C. § 101(22A).[5]

---

[4] 11 U.S.C. § 555 states:

The exercise of a contractual right of a … financial participant … to cause the liquidation, termination, or acceleration of a securities contract, as defined in section 741 of this title, because of a condition of the kind specified in section 365(e)(1) of this title shall not be stayed, avoided, or otherwise limited by operation of any provisions of this title or by order of court or administrative agency in any proceeding under this title unless such order is authorized under the provisions of the Securities Investor Protection Act of 1970 or any statute administered by the Securities and Exchange Commission."

11 U.S.C. § 555.

[5] Section 561 provides as follows:

**§ 561. Contractual right to terminate, liquidate, accelerate, or offset under a master netting agreement and across contracts; proceedings under chapter 15**

(a) Subject to subsection (b), the exercise of any contractual right, because of a condition specified in section 365(e)(1), to cause the termination, liquidation, or acceleration of or to offset or net termination values, payment amounts, or other transfer obligations arising under or in connection with one or more (or termination, liquidation, or acceleration of one or more) –

(1)     securities contracts, as defined in section 741(7);

31.    GMAC-RFC has entered into various securities contracts, swap agreements, and/or repurchase agreements that have been in excess of $1 billion in notional or actual principal amount outstanding under master netting agreements with unaffiliated entities on any day during the 15-month period prior to the Petition Date.

32.    Because GMAC-RFC is a financial participant and because the Agreement is a securities contract, the Bankruptcy Code affords GMAC-RFC the right to terminate the Debtors' interests in the Agreement without violating the automatic stay or violating any other injunctive provision of the Bankruptcy Code or any order of court entered pursuant to thereto.

33.    Therefore, to the extent the Debtors' servicing rights under the Agreement were not effectively terminated by the Termination Notice on a prepetition basis, those rights unquestionably were terminated on a postpetition basis.

34.    Accordingly, GMAC-RFC respectfully requests that this Court deny the Sale Motion to the extent it seeks to assume and assign, or sell, the terminated servicing rights under the Agreement. Finally, while there is no question that that the Agreement constitutes a securities contract, that GMAC-RFC is a financial participant entitled to all of the benefits afforded to financial participants under the Bankruptcy Code, and that GMAC-RFC has exercised its contractual rights, as protected by the Bankruptcy Code, to terminate the Debtors' rights under the Agreement, GMAC-RFC, out of an

---

(2)    commodity contracts, as defined in section 761(4);

(3)    forward contract;

(4)    repurchase agreements;

(5)    swap agreements; or

(6)    master netting agreements,

shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by any order of court or administrative agency in any proceeding under this title.

abundance of caution, asserts the additional objections to the Sale Motion and Assumption Notice and Proposed Cured set forth below.

**B.    Preconditions To Assumption Of Servicing Obligations Under The Agreement.**

35.    The Agreement contains specific and material criteria that any proposed assignee or purchaser of the servicing rights must satisfy to be eligible to assume the obligations of servicer under the Agreement.  While these criteria are primarily set forth in the Guides, because the Guides are expressly incorporated by reference into and "make a part of" the Seller/Servicer Contract, the criteria are also expressly required under the Seller/Servicer Contract.  *See* Seller/Servicer Contract, § 1.

36.    In order to be eligible to assume the obligations of servicer under the Agreement, the proposed new servicer must meet, *inter alia*, the following criteria:

- Satisfy GMAC-RFC Client/Servicer Eligibility Standards as outlined in Chapter 2 of the Guides

- Provide a completed GMAC-RFC Client/Servicer Application and have it approved by GMAC-RFC

- Provide necessary documentation requested in connection with the Client/Servicer Application

- Comply with all terms of the Agreement.

*See* Guides, Chapter 2 Servicer Eligibility.

37.    Compliance with the terms of the Agreement, requires, *inter alia*, that the Servicer should be:

- Fannie Mae and/or Freddie Mac-approved and in good standing

- A member of BIF or SAIF under the FDIC or NCUSIF and in good standing if a financial institution

- In compliance with all capital and other requirements, as set forth by the Office of Thrift Supervision, the FDIC, or the Office of the Controller of Currency, or any other State or federal regulatory agency that is applicable to the Servicer

- A HUD-approved mortgagee

- If servicing Loans registered with MERS, the Servicer must be a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

*See* Guides, § 200(A).

38.    In addition to the foregoing eligibility requirements, any purchaser or assignee of the servicing rights under the Agreement must also:

- maintain a certain GAAP tangible net worth requirements (defined as GAAP total net worth minus any intangible assets).  For the Loans purchased on a retained basis and therefore serviced by RFC, the GAAP tangible net worth requirement is $500,000.  *See* Guides, § 210(B)

- Have two years of conventional mortgage loan originations

- $25 million in conventional mortgage loan originations in the last 12 months immediately preceding assumption of the servicer obligations

- $100 million in conventional mortgage loan portfolio currently serviced

- Staff knowledgeable in originating, quality control, selling and servicing conventional mortgage loans.

*See* Guides, § 200(D).

39.    Moreover, to assume the role of the servicer under the Agreement at issue, the proposed new servicer must be prepared to undertake all of the obligations and responsibility of the outgoing servicer which include, among others, the following:

- Maintenance of fidelity, errors, and omissions insurance in the amounts required under Agreement. (*See* Guides, § 200(E))

- Fully indemnify and agree, jointly and severally with the Debtors, to hold GMAC-RFC, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs, and expenses (including reasonable attorneys' fees) that may arise as a result of the transferee's failure to comply with applicable law or GMAC-RFC transfer of servicing requirements as set forth in the Guides. (*See* Guides, § 211)

- Indemnify GMAC-RFC from and hold it harmless against all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees and expenses resulting from any Event of Servicer Default, including but not limited to any act or failure to act or breach of any warranty or representation or obligation contained in or made pursuant to the Agreement. (*See* Guides, § 219)

- Account for all Loans sold to GMAC-RFC in accordance with the requirements of the particular Loan Program, or if special requirements are not defined, then in accordance with industry standards. (*See* Guides, § 300)

- Undertake all activities required to protect GMAC-RFC and/or its investor's interest in the Mortgage in the event of a foreclosure of the property or a bankruptcy of the Borrower, such as:  (a) preparing foreclosure package; (b) finding missing documents and/or assignments; (c) resolving any title issues that

are the result of the Seller's or Servicer's action or inaction; (d) managing attorneys; (e) working with the borrower to resolve the delinquency through loss mitigation activities; and (f) handling bankruptcy management activities.  (*See* Guides, § 301)

- Account for individual Loans in accordance with the requirements of a particular GMAC-RFC Loan Program, or if no such requirements are available, then in accordance with the amortization accounting method described in the Guides.  (*See* Guides, § 302)

- Properly apply and account for the Loan payments.  (*See* Guides, § 303)

- Make the required monthly remittances in accordance with Section 312 of the Guides

- Make advances to principal and interest custodial accounts and advances to the Escrow/Impound Account as required in Sections 315 and 316 of the Guides

- Service the loans in accordance with applicable State and federal law, the loan documents, mortgage insurance requirements, the Client/Servicer Contract and the Guides, as amended from time to time. (*See* Guides, Chapter 4)

- Make all necessary interest rate and payment adjustments in accordance with the terms of the Note, and must otherwise service the Loan in accordance with the Loan Documents, and the Agreement.  (*See* Guides, § 405)

- Verify that all necessary insurance coverage is in place for each Loan, monitor compliance with the insurance requirements, and settle insurance claims.  (*See* Guides, §§ 413-418)

- Servicing Loan delinquencies in accordance with Sections 419-422 of the Guides, including interviewing the Borrower and inspecting the Property.

- Taking appropriate action to protect GMAC-RFC's interest during Bankruptcy proceedings in which the Borrower is a debtor, including, without limitation, complying with all applicable laws and regulations, obtaining competent legal counsel, accurately completing and timely filing a proof of claim, determining whether the Borrower intends to keep the property, and filing appropriate actions in the Bankruptcy Court to lift the stay or abandon the property. (*See* Guides, § 437)

- Servicing the Loan through foreclosure proceedings in accordance with Sections 438 through 443 of the Guides.

40.     Accordingly, the Agreement may not be assumed by a Debtor and assigned to a third party without the assignor and/or Debtor meeting its burden of proof that the proposed assignee satisfies or has the means to satisfy specific and material requirements imposed by the Agreement or other documents related thereto.

41.     Consequently, even if the Debtors' servicing rights under the Agreement are deemed extant and were not validly terminated prepetition, they may not be assumed and assigned without the proposed assignees satisfying the preconditions for new servicers required under the Agreement.

42.     In this case, however, according to the Revised Sale Procedures Motion, the proposed purchaser of the Servicing Business, AH Mortgage Acquisition Co., Inc. ("AHMAC"), is not licensed to service residential mortgage loans or home equity lines of credit. (*See* Revised Sale Procedures Motion, ¶ 17). As such, the Revised Sale Procedure Motion contemplates a two-step sale of the Servicing Business consisting of an Initial Closing in which title to the Servicing Business is

transferred to AHMAC and the Debtors continue to service the subject loans until the Final Closing. The Final Closing is to occur after AHMAC has obtained all necessary permits and licensing to operate as a servicer of residential mortgage loan and home equity lines of credit at some unstated date in the future. *See* id.

43.    Based on the foregoing, the Debtors and their proposed purchaser, AHMAC, clearly cannot satisfy even the most basic obligations under the Agreement and therefore, the Agreement and servicing rights thereunder, cannot be assumed and assigned, or sold, to AHMAC.  For example, AHMAC is not Fannie Mae and/or Freddie Mac-approved, a HUD-approved mortgagee, or registered with MERS (Guides, § 200(A)), nor does AHM have two years of conventional mortgage loan originations, $100 million in conventional mortgage loan portfolio currently serviced, or a staff of knowledgeable in originating, quality control, selling and servicing conventional mortgage loans. *See* Guides, § 200(D).

44.    Further, GMAC-RFC has no assurances that AHMAC will ever have the capacity to perform the servicing functions in accordance with the terms of the Agreement and there is no clear understanding of what happens to the Loans if AHMAC is unable to service the Loans.  At an absolute basic minimum, GMAC-RFC must have the right to transfer servicing rights, free and clear of all liens, upon the earlier of: (a) the occurrence of a servicing default under the terms of the Agreement; or (b) the inability of the proposed new servicer to obtain the necessary licenses and other approvals on or before a date certain.

45.    Finally, the form of Asset Purchase Agreement that the Debtors prepared in connection with the Sale and which is Exhibit D to the Sale Motion (the "APA") provides in Section 2.4(a) that if assigning or transferring a "Purchased Asset" without a requisite third party consent ("Consent") would constitute a breach of thereunder, then the APA shall not constitute an assignment or transfer of

any claim, right, benefit or obligation or any such attempted assignment unless such Consent is

obtained at or prior to the Closing.  At this time, GMAC-RFC is not committing to provide its consent

to any attempted assignment or transfer of the servicing rights under the Agreement.  If GMAC-RFC

does not provide its consent to any proposed assignment of such servicing rights (as is required under

Section 211 of the Guides), then according to the Draft APA, such assignment will not occur.

46.    For the foregoing reasons, if the Court does not find that the Debtors' servicing rights

under the Agreement were terminated, GMAC-RFC objects to the Sale Motion to the extent it purports

to assume and assign the Agreement or the rights to service the loans thereunder, without the Debtors

providing evidence, satisfactory to GMAC-RFC, in its sole discretion, that all of the preconditions

required under the Agreement and the documents related thereto to effectuate a transfer of the

servicing rights exist.

**C.    A Prerequisite to an Assignment of the Agreement is that the Proposed Assignee Cure the Existing Defaults Thereunder, Assume the Agreement In Its Entirety, And Provide GMAC-RFC With Adequate Assurance of Future Performance.**

**1.    The Agreement is an executory contract.**

47.    The Agreement is executory in nature, and thus the requirements contained in Sections

365(b)(1)(A) and 365(f)(2)  must be met as a condition to their assumption and assignment.

48.    While the Debtors have taken contrary positions as to whether the Agreement

constitutes an executory contract,[6] the Agreement and the documents related thereto do qualify as

executory contracts and should be treated as such by this Court. *See e.g.* In re Commonwealth

---

[6] In the Assumption Notice and Proposed Cure Amounts, the Debtors appear to take the position for the first time that some of the contracts they seek to assume and assign may not be executory in nature. The Debtors advise parties that the Debtors are seeking to assume and assign, to the extent such identified contracts are executory, the loan servicing rights thereunder rather than the entire contracts. The Debtors further state that their listing of a contract on Exhibit B or C to the Motion does not concede that any such contract is executory; however, no case law is cited to support this proposition or to support the Debtors' view that a right under an executory contract may be assigned without assigning the contract in its entirety.

Mortgage Company, Inc., 149 B.R. 4 (Bankr. Mass. E.D. 1992) (analyzing the transfer of a debtor's

rights in servicing agreements under 11 U.S.C. § 365).

49.     "[A]n executory contract is a 'contract under which the obligation of both the bankrupt

and the other party to the contract are so far unperformed that the failure of either to complete

performance would constitute a material breach excusing performance of the other.'" Kimmelman v.

Port Auth. of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318 fn. 5 (3d Cir. 2003)

(citing Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989)

(quoting Vern Countryman, Executory Contracts in Bankruptcy, Part 1, 57 Minn. L. Rev. 439, 460

(1973) and other cases adopting Countryman's definition).

50.     A material breach under a contract is one that, if uncured, discharges other party's duty

under contract. See General Datacomm Indus. v. Arcara (In re General Datacomm Indus.), 407 F.3d

616 (3d Cir. 2005); see also 23 Williston on Contracts § 63:3 (4th ed.) ("Where the contract itself is

clear in making a certain event a material breach of that contract, a court must ordinarily respect that

contractual provision.").

51.     There are numerous material obligations yet to be performed by the parties to the

Agreement. For example, the Servicer Debtor has the continuing obligation to service the Loans (prior

to the transition to a new servicer) which includes collecting and remitting mortgage payments,

servicing delinquencies under the Loan, proceeding and supervising foreclosure proceedings,  and

advancing substantial sums of money for taxes and insurance premiums that become due on the

mortgaged properties. GMAC-RFC must continuously monitor the Debtor Servicer's performance for

compliance with the Agreement, including auditing the Debtor Servicer's mandatory reporting

obligations. See Guide, Chapter 3. GMAC-RFC is also required, as an ongoing obligation, to

reimburse the Servicer for any advances made to the principal and interest custodial accounts on behalf

of a borrower where insufficient proceeds are received from the sale of the REO property.  *See* Guides, § 315.  Likewise, GMAC-RFC has an ongoing affirmative obligation to reimburse the Servicer for certain funds advanced by the Servicer into an Escrow/Impound Account where the Servicer is prohibited by law from collecting the fees and costs from the borrower.  *See* Guides, § 316. Additionally, GMAC-RFC must also:  (a) approve a Loan payoff that is in an amount less than the total indebtedness (*see* Guides, §433(C)(2)); (b) approve Loan Modifications (*see* Guides, § 436(D)); (c) take responsibility for the management of property held in REO (*see* Guides, § 444); and (d) select the appraisers/brokers, marketing, maintenance, security, and rehabilitation of the Mortgaged Premises that become REO through the final disposition of the REO property (*see* id.).

52.    These collective obligations, if unperformed, would constitute a material breach of the Agreement that, if uncured, would excuse performance by the counterparty under the Agreement.

53.    Based upon the foregoing, the Agreement is an executory contract within in the meaning of 11 U.S.C. § 365 and the Debtors and/or the proposed assignee must cure all existing defaults under the Agreement and provide GMAC-RFC with adequate assurance of future performance.

### 2.    The Debtors Must Cure Existing Defaults And The Debtors' Proposed Cure Amount is Incorrect.

54.    Because the Agreement is an executory contract, the Debtors or the proposed assignee must cure the existing defaults under the Agreement before the Agreement may be assumed and assigned, or sold, to a third party.  *See* 11 U.S.C. §§ 365(b) & (f).

55.    Currently, the Debtors list $0.00 as the proposed cure amount for assuming and assigning the Agreement (the same amount that is listed for all of the contracts listed on the Debtors' Assumption Notice and Proposed Cure Amounts).  This amount is incorrect.

56.    Pursuant to the Agreement, the Debtors and, in some instances, the proposed assignee, owe certain indemnification obligations to GMAC-RFC. *See* Guide, §§ 211 & 219. GMAC-RFC has incurred certain costs, fees, and expenses arising out of the defaults under the Agreement which should be required to be paid under the indemnification provisions of the Agreement as damages prior to any assumption, in an amount to be determined. These damages continue to accrue and they must be fully cured prior to the sale or assumption of the servicing rights under the Agreement.

57.    In addition to these indemnification obligations, the Debtors have certain outstanding repurchase obligations under the Agreement that must be satisfied before the Debtors can assume and assign, or sell, the servicing rights under the Agreement to a third party. *See, e.g.*, Guides, §§ 211, 217, 218, and 410.

58.    As of the Petition Date, the Debtors are obligated to repurchase eight (8) Released Loans owned by RFC in the aggregate original principal amount of $3,758,450 (the "Repurchase Obligations").

59.    Finally, GMAC-RFC must be given sufficient time to obtain information on the status of the Debtors' performance under the Agreement to determine the existence and extent of defaults thereunder. Any determination that no monetary default exists under the Agreement is premature and incorrect. Due to the expedited deadlines for objecting to the Sale Motion and proposed cure amounts, GMAC-RFC is unable to determine with any real accuracy the universe of existing monetary defaults that may exist under the Agreement and the documents related thereto.

60.    While GMAC-RFC undertakes efforts to assess the existence and extent of the Debtors' defaults under the Agreement, adequate reserves should be established before the Agreement may be assumed and assigned in order to protect against additional unknown present and future damages resulting from a breach of the Agreement.

61.     The Debtors' Revised Sale Procedures Motion provides to escrow only an amount sufficient to cover "Initial Cure Amounts", which amount will be determined at the time this Court enters the Sale Order. *See* Revised Sale Procedures Motion, ¶ 27, Proposed Sale Order, ¶¶ 29 & 33. The Revised Sale Procedures Order, however, is silent on escrowing a cure amount.

62.     Further, the Debtors are purporting to retain responsibility for paying cure amounts only through the date of the Initial Closing, while the Debtors nonetheless continue to service the Loans through the Final Closing. Accordingly, it appears that the Debtors intend to service the Loans without the concurrent obligation to remedy defaults or cure costs relating to the Loans during the interim period. Moreover, the Debtors' servicing of the Loans without obligation to cure defects in the interim period may adversely affect GMAC-RFC's ability to assert its right of offset and recoupment against the Debtors.

63.     For the foregoing reasons, the Debtors' proposed cure amounts and payment of the cure amounts are inadequate. Accordingly, GMAC-RFC objects to the Sale Motion and the Assumption Notice and Proposed Cure Amounts.

### 3.     The Proposed Assignee Or Purchaser Must Assume The Obligations Under The Agreement In Their Entirety And Provide GMAC-RFC With Adequate Assurance of Future Performance.

64.     In addition to the inadequate cure amount proposed by the Debtors, GMAC-RFC objects to the assignment to the extent the proposed assignee does not propose to assume all of the obligations under the Agreement in their entirety and provide GMAC-RFC with adequate assurance of future performance as required by 11 U.S.C. §§ 365(b) and (f)(2).

65.     The Sale Motion and the form Asset Purchase Agreement appended to it fail to specify whether the proposed purchaser of the Assets, as a successor service, would be required to assume the Agreement in its entirety. On the contrary, the Debtors' Assumption Notice and Proposed Cure

Amounts expressly contemplates assigning only certain rights under the Agreement and the documents related thereto.

66.     Well-settled bankruptcy law, however, does not permit a debtor to pick apart a contract and assign only those provisions that are favorable to a prospective purchaser. *See* In re Fleming Cos., Inc., 2007 U.S. App. LEXIS 19927 *19-21 (3d Cir. Aug. 22, 2007) (holding that an assignee may not modify contractual obligations that are material to the parties' prepetition bargain, and further, that if a contract is assumed and assigned, the assignee must accept the benefits and burdens of the contract, *cum onere*). Assumption and assignment of the contract cannot change the contractual obligations, only the party performing the obligations. Fleming, 2007 U.S. App. LEXIS 19927, at *21; Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir. 2001); Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992).

67.     Accordingly, the Debtors and/or the proposed assignee may not modify or delete any provision under the Agreement that would cause substantial economic detriment to GMAC-RFC or that is integral to the bargain struck between GMAC-RFC and the Debtor Servicer. *See* In re Fleming Companies, Inc., et al., 2007 U.S. App. LEXIS 19927 *13-17 (3d Cir. Aug. 22, 2007) (denying assumption of the contract by a party that intended to operate out of a difference facility, finding that the non-debtor counterparty bargained for the benefit of "expedience, of a trained staff, a consistent supply of products, and a proven electronic system of record-keeping which further the [non-debtor's] marketing and pricing plans", all of which were only available at the stated facility).

68.     As evidenced by the criteria for loan servicing set forth in the Agreement, GMAC-RFC has bargained for expedience, a trained staff, a consistent supply of mortgage loan products, and a proven system of record-keeping that are integral to GMAC-RFC's stated objectives of implementing "standards for effective and efficient mortgage servicing" for the Loans. *See* Guides, § 100.

69.    GMAC-RFC objects to the assumption and assignment of the Agreement or the

servicing rights thereunder to the extent the successor servicer does not assume, *cum onere*, every

provision contained in the Agreement in their entirety, including, without limitation, any

indemnification provisions and repurchase obligations. *See* N.L.R.B. v. Bildisco and Bildisco, 465

U.S. 513, 531 (1984); *see also* Tenet Healthsystem Philadelphia, Inc. v. National Union of Hospital

and Health Care Employees (In re Allegheny Health Educ. and Res. Foundation), 383 F.3d 169, 177-

78 (3d Cir. 2004).

70.    In addition to assuming, *cum onere*, all of the obligations under the Agreement, the

proposed purchaser must also provide GMAC-RFC with adequate assurance of future performance as

required under 11 U.S.C. § 365(f)(2).

71.    In the instant action, the proposed purchaser currently contemplated by the Debtors

cannot provide GMAC-RFC with adequate assurance of future performance.

72.    As an initial matter, the proposed purchaser is not licensed to do business as a mortgage

servicer in any jurisdiction. *See* Revised Sale Procedures Motion, ¶ 17. This is in direct contravention

to the material requirements that a proposed assignee or purchaser must satisfy in order to be eligible

to service Loans under the Agreement on behalf of GMAC-RFC. *See, e.g.,* Guides, § 200(A).

73.    While the proposed purchaser, AHMAC, may not be the ultimate purchaser, as stated

above, the bid deadline was extended until October 2, 2007 and the auction will not occur until

October 5, 2007. Even with the extension to October 2, 2007 of the deadline for filing objections to

the Sale Motion, objections are still due three days in advance of the auction, and the same day as the

bid deadline. Thus, affected parties such as GMAC-RFC will not know the universe of potential

bidders prior to the date the Sale Motion objections are due.

74.     Based upon the deadline for filing objections to the Sale Motion as established by the Debtors, it is not possible for GMAC-RFC (or other similarly affected parties) to conduct any due diligence on proposed assignees to determine whether they meet the eligibility requirements for assuming the servicing functions and obligations under the Agreement for purposes of raising objections to the inability of a proposed assignee or purchaser to provide GMAC-RFC with adequate assurance of future performance.

75.     GMAC-RFC further objects to the assignment of the Agreement and the servicing rights thereunder to any proposed assignee or purchaser that does not fully cooperate with GMAC-RFC in its due diligence to determine whether that entity is an acceptable candidate to take over the servicing functions and obligations under the Servicing Agreements.

76.     Finally, as a practical matter, any proposed assignee or purchaser that is assigned or sold the servicing rights under the Agreement cannot provide adequate assurance of the future performance unless GMAC-RFC consents to the assignment or sale of the servicing rights to the assignee or purchaser.

77.     Section 402 of the Guides require the Debtors to maintain an original individual file for each Loan (the "Loan Files") it services for GMAC-RFC.  Section 402 further provides that the Debtors acknowledge that the Loan Files are property of GMAC-RFC.  *See* Guides, § 402.  Because the Loan Files are property of GMAC-RFC, and not the Debtors, the Debtors do not have the right to transfer the Loan Files over the objection of GMAC-RFC.

78.     The contents of the Loan Files include, at a minimum, copies of all original documents sent to GMAC-RFC, including the Note, Security Instrument, assignment of Security Instrument, mortgage insurance certificate, the original loan application signed and dated by a borrower, and the original required credit reports and scores.  *See* Guides, § 403.

79.     These Loan Files are necessary for any successor servicer to adequately and competently service the Loans in accordance with the terms of the Agreement.

80.     Because the Debtors have no right to transfer the Loan Files without the consent of GMAC-RFC and because no third party can competently service the Loans without the Loan Files, no third party can provide GMAC-RFC with adequate assurance of future performance without GMAC-RFC's consent to the assumption and assignment to that third party.

81.     For the foregoing reasons, GMAC-RFC objects to the Sale Motion and Assumption Notice and Proposed Cure Amounts and reserves its rights to supplement this Objection at a later date.

WHEREFORE, Residential Funding Company, LLC respectfully requests that the Court deny the Sale Motion to the extent it seeks to assume and assign or sell the Agreement and grant Residential Funding Company, LLC such other and further relief as the Court deems appropriate or just.

Dated:  October 2, 2007

Respectfully submitted,

REED SMITH LLP

/s/ Gaston P. Loomis
Joseph O'Neil, Jr. (Admitted in NY and NJ)
Gaston P. Loomis II (No. 4546)
1201 Market Street, Suite 1500
Wilmington, DE 19801
p. 302.778.7500

and

Robert P. Simons, Esquire
Jeanne S. Lofgren, Esquire
435 Sixth Avenue
Pittsburgh, PA  15219
Phone:  (412) 288-7294

and

Claudia Z. Springer, Esquire
Barbara K. Hager, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420


*Counsel for Residential Funding Company, LLC*