**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware Corporation,<br>et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>Jointly Administered<br><br>**Objection Deadline: October 2, 2007 at 4:00 p.m.**<br><br>Re: Docket No. 11 |

**OBJECTION OF QWEST CORPORATION AND QWEST COMMUNICATIONS
CORPORATION TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS:
(A)(1) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING
TO CONSIDER SALE OF CERTAIN ASSETS USED IN DEBTORS' LOAN
SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF NOTICE
THEREOF AND (IV) GRANTING RELATED RELIEF; AND (B)(I)
AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR
OF LIENS, CLAIMS AND ENCUMBRANCES, AND OTHER INTERESTS;
(II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO;
(III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED
THERETO; AND (IV) GRANTING RELATED RELIEF**

Qwest Corporation ("QC") and Qwest Communications Corporation ("QCC"), by and

through their counsel, Reed Smith LLP, hereby object to the Emergency Motion Of The Debtors

For Orders: (A)(1) Approving Sale Procedures; (II) Scheduling A Hearing To Consider Sale Of

Certain Assets Used In Debtors' Loan Servicing Business; (III) Approving Form And Manner Of

Notice Thereof And (IV) Granting Related Relief; And (B)(I) Authorizing The Sale Of Such

Assets Free And Clear Of Liens, Claims And Encumbrances, And Other Interests;

(II) Authorizing And Approving Purchase Agreement Thereto; (III) Approving The Assumption

And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And

(IV) Granting Related Relief (the "Sale Motion") filed by American Home Mortgage Holdings,

Inc. and certain of its direct and indirect affiliates and subsidiaries (the "Debtors") seeking an

order of the Court that, *inter alia*, authorizes the sale (the "Sale") of the Debtors' servicing

business (the "Servicing Business") free and clear of liens, claims, and encumbreances,

approving the assumption and assignment of certain executory contracts and unexpired leases,

and setting cure amounts as set forth in their Modified Notice of (I) Possible Assumption and

Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed

Cure Obligations, If Any (the "Modified Cure Notice").  In support of their objection, QC and

QCC states as follows:

## FACTUAL BACKGROUND

1.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a  voluntary

petition for relief under chapter 11, title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

(the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court").  The Debtors have remained in possession of their property and have

continued to operate their businesses pursuant to Sections 1107 and 1108 of the Bankruptcy

Code.

2.      On August 6, 2007, the Debtors filed the Sale Motion (D.I. 11).

3.      On August 9, 2007, the Court entered the Order Approving (I) Sale Procedures;

(II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan

Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting

Related Relief (the "Sales Procedures Order") (D.I. 113).

4.      On August 27, 2007, the Debtors filed the Notice of (I) Possible Assumption and

Assignment  of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed

Cure Obligations, If Any (D.I. 403).

5.      On August 29, 2007, QC, QCC and the Debtors entered the Stipulation by and

Among Qwest Communications Corporation, Qwest Corporation, and the Debtors, as Debtors

and Debtors in Possession, Concerning Adequate Assurance of Payment for Post-Petition Services Pursuant to Section 366 of the Bankruptcy Code (the "Adequate Assurance Stipulation"). Pursuant to the Adequate Assurance Stipulation, the Debtors are required to pay all post-petition amounts in a timely manner. In the event that the Debtors are not current on their post-petition obligations, there are certain remedies available to QC and QCC under the Adequate Assurance Stipulation.

6.      On September 10, 2007, the Debtors filed the Modified Cure Notice (D.I. 674).

7.      Exhibit A of the Modifed Cure Notice identifies the "Amendment 4 of agreement for telecommunications services" between the Debtors and QCC as a contract possibly being assumed and assigned. The cure amount listed is $479,845.59.

8.      On September 14, 2007, the Debtors filed their second Notice of Rescheduled Dates pursuant to which the objection deadline to the Sale Motion was extended and rescheduled to October 1, 2007 and the sale hearing date was rescheduled to October 9, 2007 (D.I. 746).

9.      On September 20, 2007, QCC filed the Objection of Qwest Communications Corporation to Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any (the "Cure Objection") (D.I. 829).

10.     On September 21, 2007, the Debtors filed the Emergency Motion for an Order (A) Approving Revised Procedures For The Sale Of The Debtors' Mortgage Servicing Business (the "Revised Bidding Procedures"); (B) Approving Certain Protections For The Stalking Horse Bidder In Such Sale; (C) Directing That Certain Notices Of Such Sale And Deadlines Be Given; And, (D) Authorizing, On An Interim Basis, The Debtors To Grant Certain Liens And Other

Protections For The Purchaser's Collateral Effective After The Initial Closing ("Revised Procedures Motion") (D.I.865).

11.    On September 25, 2007, the Court entered the Order (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in Such Sale; (C) Directing That Certain Notices of Such Sale and Deadlines be Given; and (D) Authorizing, on an Interim Basis, the Debtors' to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing (the "Revised Sales Procedures Order") (D.I. 937).

12.    On September 25, 2007, the Debtors filed the Notice of Filing of Executed Asset Purchase Agreement ("APA") (D.I. 931).

13.    On September 26, 2007, the Debtors filed the Notice of Entry of Order (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in Such Sale; (C) Directing That Certain Notices of Such Sale and Deadlines be Given; and (D) Authorizing, on an Interim Basis, the Debtors' to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing (D.I. 957), which set the deadline to object to the Sale Motion to October 2, 2007 at 4:00 p.m.

14.    The Debtors and QCC and QC are parties to various contracts and agreements, including, without limitation, tariffs filed with the Federal Communications Commission and certain state regulatory bodies (collectively, the "Contracts") pursuant to which each of QC and QCC furnish a variety of telecommunications and related services to the Debtors.

15.    The Debtors are only seeking to potentially assume the agreement between the Debtors and QCC, which was entered into prior to the Petition Date.  The agreement between the

Debtors and QCC is the Qwest Total Advantage™ Agreement – Option Z and twelve

amendments thereto pursuant to which QCC furnishes telecommunications services to the

Debtors (the "Agreement").

## ARGUMENT

16.     Section 365(a) provides that a "trustee, subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. Section

365(a).[1]

17.     A trustee or debtor in possession generally has the discretion to assume or reject

an executory contract or unexpired lease. See Sharon Steel Corp. v. National Fuel Gas Dist.

Corp., 872 F.2d 36, 39 (3d Cir. 1989). When a debtor assumes an executory contract or an

unexpired lease it becomes a binding obligation of the debtor's bankruptcy estate. The debtor

must cure defaults and provide adequate assurance of future performance in order to assume an

executory contract or unexpired lease. See 11 U.S.C. § 365(b)(1)(A)-(C).

18.     It is well established that when a debtor assumes an executory contract, it does so

cum onere, with all the benefits as well as the burdens. See NLRB v. Bildisco and Bildisco, 465

U.S. 513, 531 (1984) (debtor assumes executory contract cum onere); Cinicola v.

Scharffenberger, 248 F.3d 110, 119-120 (3d Cir. 2001); American Flint, 197 F.3d at 78 ; See

Sharon Steel, 872 F.2d at 39; In re Italian Cook Oil Corp., 190 F.2d 994, 996-97 (3d Cir. 1951).

19.     Whether a debtor assumes or rejects an executory contract, it must do so in its

"entirety." See, e.g., Cinicola, 248 F.3d at 119-120. A debtor may not "cherry pick" pieces of

---

[1]     Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, a "debtor in possession" has the
rights and duties of a Chapter 11 trustee. See American Flint Glass Workers Union v. Anchor
Resolution Corp., 197 F.3d 76, 83 n.3 (3d Cir. 1999) ("debtor in possession" is synonymous with
"trustee").

an agreement. <u>Cinicola</u>, 248 F.3d at 119-120; <u>Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.)</u>, 173 B.R. 844, 849 (S.D.N.Y. 1994).

20.     Accordingly, the Debtors must assume the entire Agreement (including all amendments thereto).

21.     Section 365 requires the Debtors to cure "defaults" and to compensate the non-debtor party to the contract for such defaults. <u>See</u> 11 U.S.C. §§ 365(b)(1)(A) and (B).

22.     The Modified Cure Notices lists the cure amount as $479,845.59.

23.     As of the date of this objection, the total cure amount for the Agreement is $635,132.48, however, based upon the nature of the Agreement and the telecommunications services rendered to the Debtors, the cure amount will continue to accrue on a daily basis up to the closing of the sale pursuant to the Sale Motion.  This cure amount includes unpaid amounts due for post-petition products and services.

24.     The proposed order approving the Sale Motion filed by the Debtors on or about September 26, 2007 (the "<u>Proposed Order</u>") fails to provide for payment obligations that accrue, but are not yet payable, prior to the Initial Closing (as that term is defined in the APA).

25.     The Proposed Order seeks to authorize the Debtors to escrow the Initial Cure to include all defaults occuring up to and including the date that the order setting forth the Initial Cure Amount until the Agreement is either assumed or excluded from the sale.  The Adequate Assurance Stipulation, however, requires the Debtors to pay all post-petition amounts when due.  Therefore, placing monies for unpaid post-petition amounts due to QC or QCC, as applicable, would violate the Adequate Assurance Stipulation.  Therefore, the Debtors should only put unpaid pre-petition amounts due to QC or QCC, as appliable, in the escrow as the initial cure and immediately pay all post-petition amounts due to either QC or QCC, as applicable.

26.     Pursuant to the Proposed Order and the APA, the Debtors are required to set aside the Initial Cure Amount, which represents "all amounts owed with respect to *defaults* relating to the Servicing Business up to the date of the entry of the Order establishing the Initial Cure Amount. <u>See</u> Proposed Order at ¶ 29 (emphasis added).

27.     Under Paragraph 30 of the Proposed Order, the Debtors are liable for all amounts owed for *defaults* on assumed contracts arising during the period from the date of the entry of the order establishing the Initial Cure Amount until the Initial Closing Date. <u>See</u> Proposed Order at ¶ 30 (emphasis added).

28.     The purchaser is liable for all defaults "arising" during the period from the Initial Closing Date until the Final Closing Date. <u>See</u> Proposed Order at ¶ 32.

29.     There are amounts, however, that will accrue prior to the date of the entry of the order establishing the Initial Cure Amount that would not yet be in "default" as of that time. The APA and Proposed Order do not provide that the Debtor will pay amounts that accrue prior to the date of the entry of the order establishing the Initial Cure Amount.

30.     Pursuant to the APA and the Proposed Order, the Debtors and the purchaser also purport not to be liable for the Debtors obligations accruing prior to the Initial Closing Date except as set forth in the Sellers' Cure Amount and Purchaser's Cure Amount.

31.     Thus, as drafted the APA and the Proposed Order do not provide that anyone will pay the obligations that accrue under the Agreement prior to the date of the entry of the order establishing the Initial Cure Amount, but are not yet in default at that time.

32.     Also, as for QC, whose contract has not been identified as one that will be assumed and assigned, the APA and Proposed Order are not clear as to who will be obligated to pay the obligations due under that contract. Per the Adequate Assurance Stipulation, the Debtors

are responsible for the timely payment of all post-petition amounts due to QC. The sale should

not and cannot affect the obligations of the Debtors under the Adequate Assurance Stipulations.

In addition, QC should not be forced to render services to a third party that is not obligated to

QC.

33.    Pursuant to Section 365(b) of the Bankruptcy Code, the Debtors are required to

satisfy those obligations in order to assume the Agreement[2]. In addition, the purchaser, which

must take an assignment of the Agreement *cum onere*, is also liable for those obligations.

34.    Pursuant to Section 365(k) of the Bankruptcy Code, "[a]ssignment by the trustee

to an entity of a contract or lease assumed under this section relieves the trustee and the estate

from any liability for any breach of such contract or lease occurring after such assignment."

35.    Paragraph 25 of the Proposed Order provides that the order shall be effective as a

discharge of all Interests regarding the assumed contracts existing prior to the Final Closing (or

such earlier date as permitted by the APA) on the Final Closing Date (or such earlier date as

permitted by the APA).  First, the Debtors are not entitled to a discharge pursuant to Section

365(k).  Second, the Debtors are only entitled to relief from liability for any breach that occurs

*after* the assignment, not any breach that occurs prior to the assignment.

36.    Paragraph 37 of the Proposed Order provides that the Debtors "shall be relieved

from any further liability with respect to an Assumed Contract [*sic*] after an assignment to the

Purchaser…"  The Debtors cannot re-write Section 365(k) to relieve themselves from their pre-

assignment obligations by failing to provide for the payment of obligations under the Agreement

that accrue prior to the assignment (i.e. the Final Closing).

---

2     As of the date of this objection, the Debtors are not seeking to assume/assign any contracts with
QC, however, to the extent that the Debtors later seek to assume/assign any contracts with QC,
the arguments raised in this objection on behalf of QCC are also raised on behalf of QC.

37. Paragraph 39 of the Proposed Order provides that the each counterparty to an Assumed Contract is forever barred, estopped, and permanently enjoined from asserting, among other things, any defense or right of setoff.

38. To the extent that QCC has defenses, including a right of recoupment, the Debtors may not assume and assign the Agreement "free and clear" of that defense under Section 363(f) of the Bankruptcy Code. See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003) ("We observed that there was no support in the case law for the proposotion that a *defense* may be extinguished as a result of a free and clear sale. Accordingly, we held that a right of recoupment is a defense and not an interest and therefore is not extinguished by a § 363(f) sale.").

39. To the extent that QCC exercised any right of setoff pre-petition, the Debtors may not assume and assign the Agreement free and clear of QCC's right of setoff. See, *e.g.,* Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252, 263 (3d Cir.2000) (holding that sale of accounts receivable under Section 363 was not free and clear of defenses such as recoupment but was free and clear of setoff rights, unless the setoff was actually taken pre-petition); MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.), 275 B.R. 712, 718 (Bankr.D.Del.2002) (holding that sale under Section 363 eliminates unexercised setoff rights but not recoupment defense).

WHEREFORE, QC and QCC respectfully request that the Court (i) modify the Proposed Order and APA to comply with the Bankruptcy Code as indicated above or deny the relief requested in the Sale Motion and Modified Cure Notice, and (iii) grant such other and further relief as is just and proper.

Dated: October 1, 2007
      Wilmington, Delaware

REED SMITH LLP

By:    */s/ Kimberly E.C. Lawson*
     Kimberly E.C. Lawson (No. 3966)
     1201 Market Street, Suite 1500
     Wilmington, DE 19801
     Telephone: (302) 778-7500
     Facsimile: (302) 778-7575
     Email: klawson@reedsmith.com

Counsel for Qwest Corporation and Qwest Communications Corporation