## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE HOLDINGS, | ) Case No. 07-11047 (CSS) |
| INC., a Delaware corporation, <u>et al.</u>, | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Related Docket Item Nos. 11, 113, 403, 674, 675, 865, 937** |
| | ) **Sale Hearing Date: October 9, 2007 @ 2:30 p.m.** |
| | ) **Objection Deadline: October 2, 2007 @ 4:00 p.m.** |
| | ) |

**SUPPLEMENTAL OBJECTION OF DB STRUCTURED PRODUCTS, INC.
TO EMERGENCY MOTION OF THE DEBTORS FOR ORDERS: (A)(I)
APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO
CONSIDER SALE OF CERTAIN ASSETS USED IN THE DEBTORS' LOAN
SERVICING BUSINESS; (III) APPROVING FORM AND MANNER OF
NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I)
AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II)
AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED
THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
<u>RELATED THERETO; AND (IV) GRANTING RELATED RELIEF</u>**

DB Structured Products, Inc. ("<u>DBSP</u>"), by and through its undersigned counsel,

and in accordance with section 363(b) of title 11 of the United States Code (as amended, the

"<u>Bankruptcy Code</u>") and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>"), hereby files this supplemental objection (the "<u>Supplemental</u>

<u>Objection</u>") to the *Emergency Motion of the Debtors for Orders: (A)(1) Approving Sale*

*Procedures;  (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors'*

*Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV)*

*Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens,*

*Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase*

*Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases Related Thereto; (III) Approving the Assumption and*

*Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV)*

*Granting Related Relief* [Doc. No. 11] (the "Sale Motion"), and in support of its Supplemental

Objection, respectfully submits as follows:

## I.    PRELIMINARY STATEMENT

1.    DBSP does not take issue with the Debtors' attempt to sell their assets, nor

does it deny the exigent circumstances that the Debtors contend have motivated the sales

process.  However, neither difficult circumstances nor well-meaning efforts to maximize the

value of their estates will permit the Debtors to do what the Bankruptcy Code forbids.  Pursuant

to section 365 of the Bankruptcy Code and well-settled decisional authority, the Debtors may not

assume and assign only the beneficial portions of an executory contract by rewriting and

severing the contract.[1]

2.    It is a well-established principle of bankruptcy law that a debtor must

assume executory contracts in whole -- *cum onere* -- and may not choose to assume only the

desirable portions of a contract.  Instead the Debtors, without any legal or factual support, are

proposing to:  (1) assume and assign only the servicing portion of the Agreement with DBSP;

and (2) rewrite and eviscerate the Agreement.  The Agreement is an integrated contract

providing for both the purchase and sale of mortgages from American Home Mortgage

Corporation ("AHM Corp.") and for the servicing of those mortgages by American Home

Mortgage Servicing, Inc. (the "Servicer").  DBSP has, in a prior objection, objected to the

Debtors' motion to sell their servicing business and to assume and assign the Agreement because

---

[1]    Defined terms used in this Preliminary Statement have the meaning assigned to them later in this Supplemental Objection.

of the existence of incurable defaults.  In addition, the proposed assumption and assignment must fail because the Debtors seek to cherry pick the servicing rights and transfer those to the proposed purchaser, leaving behind the other obligations under the Agreement.  In addition, the Debtors are seeking to reform and rewrite the Agreement, removing key provisions that are material and necessary to DBSP.  This is impermissible as a matter of law.  Moreover, this Court could not find, as a matter of law and without further evidence, that the Agreement is severable into a servicing and non-servicing portion as the Debtors have proposed.

## II.    BACKGROUND

A.    **Procedural Background**

3.        AHM Corp., as seller, and Servicer, as servicer, are parties to that certain Master Mortgage Loan Purchase and Servicing Agreement dated as of May 1, 2006 (the "Agreement"), pursuant to which DBSP purchased mortgages from Seller and Servicer performed servicing functions with respect to the purchased mortgages.

4.        On August 6, 2007 (the "Petition Date"), AHM Corp., the Servicer, and certain of their affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Cases").

5.        The Cases are being jointly administered pursuant to an order of this Court entered on August 7, 2007 [Doc. No. 60].

6.        On August 6, 2007, the Debtors filed the Sale Motion.

7.        On August 9, 2007, this Court entered its *Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief* [Doc. No. 113] (the "Sales Procedures Order") establishing procedures

for the sale of the Debtors' servicing business (the "Proposed Sale") and providing, among other

things, that an auction to sell that business shall take place on September 10, 2007. The auction

deadlines were subsequently extended such that the auction will take place on October 5th.

8.      On August 27, 2007, the Debtors served a *Notice of (I) Possible*

*Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts;*

*and (II) Proposed Cure Obligations, If Any* [Doc. No. 403] (the "Assumption Notice"), which

provides that the Debtors propose to assume and assign the following contract as part of the

Proposed Sale of their Servicing Rights:

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/ Arrangement | Proposed Cure Amount |
|---|---|---|---|
| DB Structured Products, Inc. 60 Wall Street New York, NY 10005 Attn: Michael Commaroto | Master Mortgage Loan Purchase and Servicing Agreement, dated as of May 1, 2006, by and among American Home Mortgage Corp. (Seller), American Home Mortgage Servicing, Inc. (Servicer), and DB Structured Products, Inc. (Initial Purchaser) | Loan Sale and Servicing Agreement | $0.00 |

9.      On September 10, 2007, the Debtors filed a *Modified Notice of (I)*

*Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory*

*Contracts; and (II) Proposed Cure Obligations, If Any* [Doc. No. 674] (the "Modified Notice"),

which again listed the Agreement as a possible contract AHM Servicing would seek to assume

and assign. The Modified Notice sought to limit the assumption and assignment to "the loan

servicing rights related to the potential executory contracts". Modified Notice, Pg.2.

10.     On September 10, 2007, DBSP filed an objection to the Sale Motion and

Assumption Notice [Doc. No. 675] (the "DBSP Sale Objection"). The objections and arguments

set forth in the DBSP Sale Objection are incorporated herein as though fully set forth herein.

11.     On September 21, 2007, the Debtors filed a *Motion of the Debtors for Order Pursuant to Sections 105(a), 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in such Sale; (C) Directing that Certain Notices of Such Sale and Deadline be Given; and (D) Authorizing, on an Interim Basis, the Debtors to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing* [Doc. No. 865], requesting approval, among other things of revised sale procedures and protections for a stalking horse bidder for the Debtors' servicing business (the "Stalking Horse Motion").

12.     On September 25, 2007, this Court entered its *Order Pursuant to Sections 105(a), 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in such Sale; (C) Directing that Certain Notices of Such Sale and Deadline be Given; and (D) Authorizing, on an Interim Basis, the Debtors to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing* [Doc. No. 937] (the "Stalking Horse Order") establishing revised procedures and protections for a stalking horse bidder.

**B.     The Agreement and the Servicing Obligations**

13.     Prior to the Petition Date, the Debtors engaged in the origination, sale and servicing of real estate mortgages.  DBSP, the Servicer and AHM Corp. are parties to the Agreement.  A true and correct copy of the Agreement, including the Servicing Addendum, is

annexed as <u>Exhibit A</u> to the DBSP Sale Objection. The Agreement provides for the sale from time to time of mortgage loans to DBSP. In addition, the Agreement provides that the Servicer shall service the mortgages purchased by DBSP pursuant to the Servicing Addendum that is Exhibit 8 to the Agreement (the "<u>Servicing Addendum</u>"). The Servicing Addendum is explicitly incorporated into the Agreement.[2]

14.     DBSP purchased mortgages from AHM Corp. pursuant to the Agreement, and Servicer currently is the servicer for over $189 million in aggregate principal amount of mortgages purchased and held by DBSP. As described in the DBSP Sale Objection, the Debtors have outstanding obligations as well as existing defaults under the Agreement. As further set forth in the DBSP Sale Objection, these defaults are not curable and the Debtors therefore may not assume or assign the Agreement.

### III.    ARGUMENT

15.     In contravention of the Bankruptcy Code and without offering any support or evidentiary justification, the Debtors are seeking to rewrite the Agreement, nullify certain of its provisions and carve off and sell the portions that a third-party bidder deems desirable.

16.     Specifically, the proposed sale order attached to the Stalking Horse Motion ("<u>Proposed Sale Order</u>") provides that the servicing agreements to be transferred to the purchaser of the servicing business consist solely of the servicing and subservicing portions of such agreements, regardless of whether the servicing provisions are memorialized in the same writing as other aspects of the agreements. Paragraph 24 of the Proposed Sale Order provides as

---

[2]  Section 27 of the Agreement states as follows: "The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement."

follows:

> Any Servicing Agreement memorialized in the same writing as an
> Other Agreement (such writing, a "<u>Multi-Agreement Document</u>")
> is hereby deemed reformed to become a separate, independently
> enforceable agreement. Any provision of a Multi-Agreement
> Document that would allow any Person to terminate, recapture,
> impose any penalty, or modify any term or condition upon such
> reformation, is void and of no force and effect. All Persons
> entitled under a Multi-Agreement Document to consent to such
> reformation are hereby deemed to have consented.

Proposed Sale Order, ¶ 24, p. 18. *See also*, Proposed Sale Order, ¶ J, p. 6.

17.    In addition, paragraph P of the Proposed Sale Order provides as follows:

> Any provision in an Assumed Contract that prohibits or conditions
> the assignment of such Assumed Contract that allows any Person
> to terminate any such Assumed Contract due to the fact that one or
> more of the Sellers is not a qualified servicer under any FNMA
> guidelines shall be unenforceable and of no force and effect for so
> long as the Purchaser is using its best efforts to become a qualified
> servicer under FNMA guidelines.

Proposed Sale Order, ¶ P, p.9.

The Agreement contains such a provision. The Servicer lost its FNMA qualifications prior to the

petition date which constituted an Event of Default under the Agreement. Significantly, the

stalking horse bidder is not FNMA qualified. Stalking Horse Motion, ¶ 17, p.10.

A.    **The Debtors Cannot Assume and Assign**
      **<u>Only the Servicing Portion of the Agreement.</u>**

18.    It is a long-established rule that Debtors must assume contracts *cum onere*

- accepting both the benefits and burdens thereof. *Cinicola v. Scharffenberger*, 248 F.3d 110,

119-120 (3d Cir. 2001); *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 531 (1984) ("Should

the debtor-in-possession elect to assume the executory contract, however, it assumes the contract

*cum onere.*") (citing *In re Italian Cook Corp.*, 190 F.2d 994, 997 (3d Cir. 1951) ("[Debtors],

however, may not blow hot and cold. If he accepts the contract, he accepts it *cum onere.* If he

receives the benefits he must adopt the burdens. He cannot accept one and reject the other.");

*Schlumberger Resource Management Serv., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data*

*Sys., Inc.),* 327 F.2d 242, 249 (3d Cir. 2003) (assumption is "an all or nothing proposition.").

      19.    The Third Circuit has recently confirmed the long-standing rule, noting

that "[t]he *cum onere* rule prevents the bankruptcy estate from avoiding obligations that are an

integral part of an assumed agreement." *In re Fleming Cos., Inc.,* 2007 WL 2390776 *7 (3d Cir.

Aug. 22, 2007) (internal citations and quotations omitted). Accordingly, the Debtors' proposal

to modify and reform the Agreement without DBSP's consent is contrary to established law. *See*

*Id.*, at *7-8.

      20.    The Debtors have offered no basis either in fact or law for the remarkable

relief they are seeking - severance of the servicing provisions from the rest of the Agreement and

the assumption and assignment of only those provisions. The servicing functions are an integral

part of the Agreement. The intent of the parties was to couple the purchase and sale of mortgage

loans with the continuation of loan servicing by the Seller's affiliate. DBSP would not have

purchased mortgage loans without the necessary servicing provided for, nor would DBSP have

sought servicing services absent the purchase of loans for which servicing would be needed. As

stated in the recitals to the Agreement, "the Purchaser, the Seller, and the Servicer wish to

prescribe the manner of the conveyance and servicing of the Mortgage Loans." Agreement, p. 1.

As evidenced by the terms of the Agreement, it was the collective desire of the parties to create

an interrelated set of obligations. The servicing and loan purchase provisions are incorporated in

a single writing which is evidence that these provisions are interdependent. Moreover, section

27 of the Agreement expressly provides that the servicing-related addendum to the Agreement is incorporated into and is a part of the Agreement.

21.     Accordingly, the *cum onere* rule prevents the Debtors from assuming the servicing provisions of the Agreement without assuming, and therefore curing, all of the other provisions of the Agreement, including the provisions that require the Debtors to pay DBSP Repurchase Obligations and Premium Recapture Amounts (as discussed more fully in the DBSP Sale Objection).

22.     The Debtors' proposal to eviscerate the requirement that the Servicer be FNMA qualified is particularly outrageous.  As set forth in the DBSP Sale Objection, it is an integral basis of the Agreement that DBSP be able to sell and/or securitize the mortgages purchased from the Seller.  It cannot do so unless the Servicer is FNMA qualified.  Removing this requirement has no legal basis and materially deprives DBSP of the benefit of its bargain. Accordingly, the Debtors are not permitted to sever the servicing provisions from the Agreement, nor can they rewrite the Agreement.  The Debtors have the power under the Bankruptcy Code to assume prepetition contracts (provided they cure all defaults, which they cannot do here) -- they may not, however, rewrite their contracts to eliminate material obligations and thereby "assume" an agreement they never had in the first place.

**B.      Any Attempt to Sever the Servicing Arrangements From the Rest of the Agreement Would Require An Evidentiary Hearing.**

23.     Assuming, *arguendo*, that the Debtors could overcome the *cum onere* rule and assume and assign only a portion of the Agreement, this Court could under no circumstances determine as a matter of law and without factual inquiry, that the Agreement is severable and may be rewritten as the Debtors propose.  Whether a contract is divisible or indivisible is a question of fact to be deduced from "[t]he nature and terms of a contract, as well as the parties'

intentions." *In re Food Mgmt. Group, LLC, v. Matrix Realty Group, Inc. (In re Food Mgmt. Group, LLC)* 372 B.R. 171, 195 (Bankr. S.D.N.Y. 2007); *In re Integrated Health Services, Inc.,* 2000 WL 33712484, at *3 (Bank. D. Del. 2000) ("Whether the leases are severable is determined by the intent and actions of the contracting parties. Severability requires a determination of whether a part of a contract or lease, or part performance thereunder, can be separated and treated as an independent legal obligation."). In *In re Food Mgmt. Group, LLC*, the court determined that a contract to purchase a number of stores was divisible only after consideration of the circumstances surrounding the entering of the contract, the actions of the parties after the supposed breach, and the total purchase price of the contract could be, and was, allocated on a store by store basis. *Id.* at 195-97. Such a determination cannot be made as a matter of law, but as a factual determination after submission of evidence. Moreover, because, at least as of October 1, 2007, the Debtors were not yet themselves prepared to identify any witnesses that they intend to have testify in support of their position, DBSP has not been afforded an opportunity to consider and prepare an appropriate challenge to any evidence the Debtors would present with respect to the Agreement at the October 9 hearing. Thus, to the extent that the Court was prepared to consider any argument that the Agreement, which on its face is a single, integrated contract, could ever be severed, DBSP respectfully submits that this could only take place after an evidentiary hearing that would occur after both sides have had a full and fair opportunity to examine the other party's witnesses and take appropriate discovery.

## IV.    **CONCLUSION**

WHEREFORE, DBSP respectfully requests that the Sale Motion be denied for the reasons set forth in the DBSP Sale Objection and herein, to the extent that it seeks the assumption and/or assignment of the Agreement.  In the alternative, DBSP requests a continuance of the Sale Hearing so that the parties can conduct discovery and a full evidentiary hearing on the issue of whether the Agreement is severable.

Dated:  October 2, 2007

**BINGHAM McCUTCHEN LLP**
Steven Wilamowsky
399 Park Avenue
New York, NY 10022
(212) 705-7000

- and -

**ASHBY & GEDDES, P.A.**

William P. Bowden (I.D. #2553)
Don A. Beskrone (I.D. #4380)
Gregory A. Taylor (I.D. #4008)
Amanda M. Winfree (I.D. #4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Counsel to DB Structured Products, Inc.*

184687.1