# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case Nos. 07-11047 (CSS) |
| **HOLDINGS, INC., et al.,**[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

### STIPULATION BETWEEN CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING MARKETING AND SALE OF CERTAIN CONSTRUCTION LOANS AND SERVICING RIGHTS; AND ORDER THEREON

American Home Mortgage Acceptance, Inc., ("AHMA"), American Home Mortgage Corp. ("AHMC"), American Home Mortgage Investment Corp. ("AHMI"), and American Home Mortgage Servicing, Inc. ("AHMS") as Chapter 11 Debtors and Debtors in Possession on the one hand, and ABN AMRO Bank N.V. ("ABN") on the other hand (AHMA, AHMC, AHMI, AHMS and ABN, collectively, the "Parties"), hereby enter into this Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Marketing and Sale of Certain Construction Loans and Servicing Rights (the "Stipulation"), by and through their respective counsel of record, effective as of the date of entry of an order approving this Stipulation, based upon the following Recitals.

---

[1]      The Debtors and Debtors in Possession are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp. (individually, a "Debtor," and collectively, the "Debtors").

DB02:6236342.6                                                                                    066585.1001

## Recitals

1.      On August 6, 2007 (the "Petition Date"), the Debtors commenced voluntary cases (the "Bankruptcy Cases") under chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

2.      ABN asserts that the Debtors that are Parties hereto – AHMA, AHMC, AHMI, and AHMS (collectively, the "ABN MRA Debtors") – are parties to a Master Repurchase Agreement, dated as of February 28, 2007 (as such Agreement may have been supplemented and amended from time to time prior to the Petition Date, the "ABN MRA"), among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), and ABN, in its capacity as Agent for the "Purchasers" under the ABN MRA (defined as Buyer).

3.      ABN asserts that the ABN MRA Debtors, ABN, and others are parties or will become parties to a number of additional agreements related to the ABN MRA, including but not limited to the following existing agreements:

(a) a Custodial Agreement, dated as of February 28, 2007, among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), ABN (defined as Agent), and Deutsche Bank National Trust Company (defined as Custodian);

(b) an Account Control Agreement, dated as of February 28, 2007 (the "Account Control Agreement"), among the ABN MRA Debtors (defined as Sellers), AHMS

2

(defined as Servicer), ABN (in its capacity as "Agent" for the "Purchasers," as defined in the ABN MRA), and Deutsche Bank National Trust Company (defined as Bank);

(c) an Electronic Tracking Agreement, dated as of February 28, 2007, among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), MERSCORP, Inc. (defined as Electronic Agent), Mortgage Electronic Registration Systems, Inc., and ABN (defined as Agent).

(d) a Letter Agreement, dated as of February 28, 2007 (the "Letter Agreement"), among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), Amsterdam Funding Corporation (defined as the initial Conduit Purchaser), the other Conduit Purchasers from time to time, ABN (defined as a Committed Purchaser), the other Committed Purchasers from time to time, ABN as Group Agent for the ABN AMRO Group, the other Group Agents from time to time, and ABN as Agent for the Conduit Purchasers and the Committed Purchasers ; and

(e) a Performance Guaranty, dated as of February 28, 2007, among AHMI and American Home Mortgage Holdings, Inc. (defined as Performance Guarantors) in favor of ABN as Agent.

4.    The agreements referred to in paragraphs 3 and 4 (copies of which are attached to the Declaration of William J. Fitzgerald at docket no. 34 in the Bankruptcy Cases) are referred to collectively hereinafter as the "ABN MRA Agreements."

5.    ABN asserts, but the Debtors do not concede, that the ABN MRA Agreements are agreements and transactions of the kind described in Bankruptcy Code § 101(47)

6.    ABN asserts, but the Debtors do not concede, that pursuant to the ABN MRA Agreements and during a five-month period prior to the Petition Date, ABN purchased

from ABN MRA Debtors approximately four hundred and thirty (430) mortgage loans in the original aggregate principal amount of approximately $222 million (such mortgage loans, collectively with all documentation evidencing such loans, the "Mortgage Loans").  The Mortgage Loans are residential construction loans made by the ABN MRA Debtors to mortgagors (the "Mortgagors") who are constructing or renovating single-family homes pursuant to mortgage contracts (the "Mortgage Contracts") between the ABN MRA Debtors and the Mortgagors.  ABN asserts that as of July 31, 2007:     (a) the Mortgagors owed approximately $145 million in the aggregate in connection with advances made to the Mortgagors under the Mortgage Loans (the "Mortgagor Advances"); and (b) up to approximately $77 million in the aggregate in additional advances were, subject to the terms of the respective Mortgage Loans, available to be drawn by the Mortgagors in respect of the Mortgage Loans to fund the completion of the construction or renovation projects (the "Additional Mortgagor Advances").  ABN asserts that under the Agreements the ABN MRA Debtors funded the Mortgagor Advances through the sale of the Mortgage Loans to ABN.

7.     ABN asserts, but the Debtors do not concede, that prior to the commencement of the Bankruptcy Cases, on or about August 1, 2007 and August 3, 2007, ABN delivered to the ABN MRA Debtors what ABN asserts to have been notices of events of default under the ABN MRA Agreements (the "Default Notices"), pursuant to which Default Notices ABN asserts, but the Debtors do not concede, that the Termination Date and the Repurchase Date, as defined in the ABM MRA, occurred for each transaction under the ABN MRA Agreements and ABN designated AHMS to perform the duties of the Servicer until further notice pursuant to paragraph 13 of the Letter Agreement.

4

066585.1001

8.     The ABN MRA Debtors and ABN entered into that certain Stipulation

Between Certain Debtors and ABN AMRO Bank N.V., dated August 21, 2007 (the "ABN Post-

Petition Advances Stipulation"), for the purposes of, among other things: (a) permitting, but not

obligating, ABN to fund certain Additional Mortgagor Advances by ABN MRA Debtors,

including but not limited to any Additional Mortgagor Advances made pursuant to the Consent

Letter (as that term is defined in paragraph 9 of the ABN Post-Petition Advances Stipulation);

and (b) authorizing and directing ABN to make the Servicing Payments (as that term is defined

in paragraph 17 of the ABN Post-Petition Advances Stipulation) to the Debtors for continued

post-Petition Date servicing of the Mortgage Loans.  The Court entered its order approving the

Stipulation on August 22, 2007 (the "Advances Order").

9.     The Parties enter into this Stipulation for the purposes of agreeing to:  (a) a

process under which the Mortgage Loans and the rights to service such Mortgage Loans shall be

marketed for sale and either sold pursuant to the highest and best bid or conveyed, transferred,

quitclaimed, released and/or turned over and delivered to ABN for servicing, collection and

disposition at ABN's own expense; (b) the treatment to be accorded to the proceeds of such sale;

and (c) the consideration to be paid by ABN to the ABN MRA Debtors upon consummation of

such sale to a third party or such conveyance, transfer, quitclaim, release, and/or turnover and

delivery to ABN.

Based upon the foregoing, the Parties hereby stipulate and agree as follows:

### Agreements

10.     The Mortgage Loans and the rights to service such Mortgage Loans,

including but not limited to the rights presently being exercised by ABN MRA Debtors under

paragraph 13 of the Letter Agreement (the "Servicing Rights"), shall be marketed by the ABN

066585.1001

MRA Debtors and offered for sale pursuant to an auction process in conformity with Sale Procedures in the form attached hereto as Exhibit A and incorporated herein by this reference (the "Sale Procedures"). ABN irrevocably consents to the ABN MRA Debtors' conveyance, transfer, quitclaim, release, and/or turnover and delivery of the Mortgage Loans and Servicing Rights to a Successful Bidder or Next Highest Bidder (both as defined in the Sale Procedures) free and clear of any claims, rights or interests of ABN.

11.    Upon entry of a final order approving this Stipulation that becomes non-appealable, ABN shall be obligated to pay the ABN MRA Debtors $700,000.00 (the "ABN Payment"), which shall thereupon be indefeasibly earned and shall not be subject of any setoff or other defense by ABN.

12.    In the event that the Successful Bid (as defined in the Sale Procedures) for purchase of the Mortgage Loans and Servicing Rights is in an amount that is equal to or less than the sum of (i) the ABN Payment, plus (ii) the Repurchase Price (as defined in the ABN MRA; defined hereinafter as the "Payoff Amount") with respect to the Mortgage Loans and Servicing Rights as of the anticipated closing date on such Successful Bid, as estimated in good faith by ABN in a Payoff Demand delivered by ABN to the ABN MRA Debtors immediately prior to the Bid Deadline (as defined in the Sale Procedures) (the "Payoff Demand," and together with the ABN Payment, the "Hurdle Amount"), then ABN shall have the right, to be exercised in its sole discretion and without any obligation to consult with the Debtors or any other party in interest, either: (a) to notify and instruct the ABN MRA Debtors to accept the bid that ABN determines to be the highest and best bid (the "Mandatory Sell Bid"); or (b) to notify and instruct the ABN MRA Debtors not to accept such bid (the "ABN Put Right").

.

6

13.     In the event that a Qualified Bid for the purchase of the Mortgage Loans and Servicing Rights, whether made prior to the Bid Deadline or at the Auction (as defined in the Bid Procedures), is in an amount that is greater than the Hurdle Amount (a "Topping Bid"), then: (a) the ABN Put Option shall expire; and (b) the ABN MRA Debtors shall have the obligation to designate as the Successful Bid (or the Next Highest Bid, if applicable) the Topping Bid or, after consultation with the Consent Parties and ABN, such other Qualified Bid made at the Auction as may be higher than the Topping Bid.

14.     Upon consummation of a Mandatory Sell Bid in accordance with paragraph 12 (a) above: (a) the ABN MRA Debtors shall receive from the escrow account holding the Minimum Deposit (as defined in the Sale Procedures) the ABN Payment; and (b) ABN shall receive, if and only if the ABN Payment has been paid in full, (i) all funds remaining in such escrow account, plus (ii) payment directly from the purchaser by wire transfer of an amount equal to the difference between the purchase price in the Mandatory Sell Bid and the Minimum Deposit.

15.     Upon consummation of a Successful Bid (or a Next Highest Bid, if applicable) in accordance with paragraph 13 above: (a) the ABN MRA Debtors shall receive from the escrow account holding the Minimum Deposit the sum of (i) the ABN Payment, plus (ii) all funds, if any, remaining in such escrow account, but in an amount not to exceed the amount by which the purchase price in the Successful Bid (or the Next Highest Bid, if applicable) exceeds the Hurdle Amount; and (b) ABN shall receive the sum of (i) all funds, if any, remaining in such escrow account after distribution to the ABN MRA Debtors of the amounts identified in subsection (a) above, plus (ii) payment directly from the purchaser by wire transfer of an amount equal to the difference between the purchase price in the Successful Bid

7

(or the Next Highest Bid, if applicable) and the Minimum Deposit (the aggregate of (b)(i) and (b)(ii), the "ABN Receipt"); and (c) ABN shall pay to the ABN MRA Debtors, within two business days after the close of escrow, the amount, if any, by which the ABN Receipt exceeds the Payoff Demand. At such time after the closing of escrow that ABN reconciles and determines the actual Payoff Amount, ABN shall pay to the ABN MRA Debtors, or the ABN MRA Debtors shall pay to ABN, whichever is appropriate, the difference, if any, between such actual Payoff Amount and the Payoff Demand, which shall be paid as soon as practicable after the closing.

16.     In no event shall this Stipulation be construed to permit ABN to recover on account of the ABN MRA Agreements and the ABN Post-Petition Advances Stipulation an amount in excess of the sum of (a) the ABN Payment, and (b) the Payoff Amount, whether from the proceeds of the sale of, or forfeiture of any Minimum Deposit related to, the Mortgage Loans and Servicing Rights or otherwise.

17.     In the event ABN exercises the ABN Put Right in accordance with paragraph 12 (b) above, then, without further Court order: (a) within two business days after exercising such ABN Put Right, ABN shall deliver to the ABN MRA Debtors the ABN Payment; and (b) no later than 20 business days following exercise of such ABN Put Right, or such later date as may be agreed to by the Parties, the ABN MRA Debtors shall convey, transfer, quitclaim, release, and/or turnover and deliver to ABN all of the ABN MRA Debtors' rights to and possession of the Mortgage Loans and the Servicing Rights, free and clear of the claims or interests of the Debtors and any and all other parties in interest in the Bankruptcy Cases (other than any rights of Purchasers under the ABN MRA, but solely with respect to their interests as Purchasers).

8

18.    In the event that no Qualified Bid for the purchase of the Mortgage Loans and Servicing Rights is received on or before the Bid Deadline, then, without further Court order: (a) within two business days after the Bid Deadline, ABN shall deliver to the ABN MRA Debtors the ABN Payment; and (b) no later than 20 business days after the Bid Deadline, or such later date as may be agreed to by the Parties, the ABN MRA Debtors shall convey, transfer, quitclaim, release, and/or turnover and deliver to ABN all of the ABN MRA Debtors' rights to and possession of the Mortgage Loans and the Servicing Rights, free and clear of the claims or interests of the Debtors and any and all other parties in interest in the Bankruptcy Cases (other than any rights of Purchasers under the ABN MRA, but solely with respect to their interests as Purchasers).

19.    Proceeds of the sale of Assets (as defined in the Sale Procedures) that are not proceeds of the Sale of the Mortgage Loans and Servicing Rights shall not be affected by this Stipulation.

20.    The sale of the Mortgage Loans and the Servicing Rights to the prevailing bidder as determined pursuant to paragraphs 12(a) or 13 above shall be free and clear of the liens, claims, or ownership or other interests of ABN, and upon either consummation of such a sale or the ABN MRA Debtors' conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN pursuant to paragraphs 12(b) or 17 above, ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then

9

remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the ABN Post-Petition Advances Stipulation, or the Advances Order, and the Debtors reserve the right to object to or contest the exercise of such retained right.

21.    Pending the entry of an order of the Court approving this Stipulation, nothing contained in this Stipulation shall modify, terminate or transfer, or be deemed to effectuate a modification, termination or transfer of, the ABN MRA Debtors' rights, if any, to service or administer Mortgage Loans, the ownership interest asserted by ABN in all Collections (as that term is defined in the ABN MRA) on deposit from time to time in accounts held in the name of one or more of the Debtors, and the respective rights of all Parties under the ABN MRA Agreements, the Default Notices, the ABN Post-Petition Advances Stipulation, and the Advances Order. To that end, pending the entry of an order of the Court approving this Stipulation, each of the Parties reserves all of its rights with respect to the ABN MRA Agreements, the Default Notices, the ABN Post-Petition Advances Stipulation, and the Advances Order, and nothing in this Stipulation is intended, or shall be deemed in the Bankruptcy Cases or any legal proceeding, to waive, amend or modify any provision of, or any rights of any Parties under, the ABN MRA Agreements, the Default Notices, the ABN Post-Petition Advances Stipulation, or the Advances Order; provided, however, that upon entry of a final order of the Court approving this Stipulation that has become non-appealable, this Stipulation and the agreements contained herein shall be binding upon the Parties in all respects.

22.    The Mortgagors are not direct or third party beneficiaries of this Stipulation.

23.    This Stipulation may not be amended or modified except pursuant to a writing that is signed by all Parties and consented to by each of the Committee, the

10

Administrative Agent under the Court's Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties entered September 4, 2007, and the Administrative Agent under the Final Order Pursuant to Sections 105(a), 362 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (A) Approving Debtor-In-Possession Financing, (B) Granting Liens and Granting Superpriority Administrative Claims and (C) Granting Related Relief (collectively the "Consent Parties"), and the agent for the Debtors' post-petition lenders, and approved by the Court; provided, however, that in the absence of consent by all of the Consent Parties, the amendment or modification may be presented to the Court for approval upon at least three days prior written notice to counsel for the Consent Parties.

24.    Whether or not this Stipulation is approved by the Court, nothing contained herein may be used as, or deemed to be, an admission of liability of any of the Parties with respect to any matter. In the event that this Stipulation is not approved by the Court, the Parties automatically shall revert to the pre-settlement positions.

25.    This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same document.

26.    The Parties hereto represent and warrant to each other that, subject to entry in the Bankruptcy Cases of an order approving this Stipulation, they are authorized to execute this Stipulation, each has full power and authority to enter into and perform in accordance with the terms of this Stipulation, and this Stipulation is duly executed and delivered and constitutes a valid and binding agreement in accordance with its terms.

11

27.    This Stipulation shall become effective immediately upon entry of an order approving the Stipulation.

Dated: August 21, 2007
Wilmington, Delaware

ABN AMRO BANK N.V., by its counsel,

MILBANK, TWEED, HADLEY &
McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

and

RICHARDS, LAYTON & FINGER, P.A.

_____

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC.,  AMERICAN HOME
MORTGAGE CORP., AMERICAN HOME
MORTGAGE INVESTMENT CORP.,
AMERICAN HOME MORTGAGE
SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT &
TAYLOR LLP

_____

M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**IT IS SO ORDERED,**

This ____ day of October, 2007.

_____

The Honorable Christopher S. Sontchi,
United States Bankruptcy Judge

12

27.    This Stipulation shall become effective immediately upon entry of an

order approving the Stipulation.

Dated: August 21, 2007
Wilmington, Delaware

ABN AMRO BANK N.V., by its counsel,

MILBANK, TWEED, HADLEY &
McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

and

RICHARDS, LAYTON & FINGER, P.A.

    /s/ Mark. D. Collins
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., AMERICAN HOME
MORTGAGE CORP., AMERICAN HOME
MORTGAGE INVESTMENT CORP.,
AMERICAN HOME MORTGAGE
SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT &
TAYLOR LLP

M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

**IT IS SO ORDERED,**

This 4th day of October, 2007.

The Honorable Christopher S. Sontchi,
United States Bankruptcy Judge

12

066585.1001

# EXHIBIT 1

# SALE PROCEDURES

By motion dated September [•], 2007 (the "Motion"),[1] the debtors and debtors in possession (collectively, the "Debtors"),[2] sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale or sales (the "Sale") of each of the construction loans and related servicing rights (collectively, the "Construction Loans") and the construction loan platform and related Assumed Contracts and/or Leases (the "Construction Loan Platform" and together with the Construction Loans, the "Assets") related to the Debtors' construction loan business, pursuant to the terms of the form Purchase and Sale Agreement (the "Purchase Agreement") attached to the Motion. On October [•], 2007, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Sale Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best price for the Assets through the process and procedures set forth below (the "Sale Procedures").

At the Auction, the Debtors will be conducting separate auctions for each of the portfolios of Construction Loans relating to an individual financial institution (individually, a "Construction Loan Portfolio," and collectively, the "Construction Loan Portfolio"), and a separate auction for the Construction Loan Platform in the event that more than one Qualified Bid is received for any such Asset. The Debtors reserve the right to waive or modify the Sale Procedures to the extent such waiver or modification is in the best interest of the Debtors' estates, in consultation with the counsel to the Official Committee of Unsecured Creditors (the "Committee"), counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 (the "Administrative Agent") (as required by the Interim Order [Docket No. 68] and the Final Order [Docket No. 554] (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001, the "Cash Collateral Order"), counsel to the agent for the Debtors' post-petition lenders (the "DIP Agent") and counsel to ABN AMRO Bank N.V. ("ABN") solely in its capacity as Agent for Purchasers and as a Purchaser under the ABN MRA Agreements (as defined in that certain Stipulation among the ABN MRA Debtors and ABN, dated September [•], 2007 (the "Stipulation")) and solely with respect to the Sale of the Construction Loans for which, ABN is designated as "Purchaser" (the "ABN Construction Loans"); provided, however, that with respect to the withdrawal of the Motion or a modification or waiver of the Sale Procedures in any respect in connection with (i) a bid, but only to the extent that it relates to the ABN Construction Loans, such withdrawal, modification or waiver shall be made only with the prior consent of ABN, which consent shall not be unreasonably withheld and (ii) a bid, but only to the extent that it relates to the Construction Loans on which the Administrative Agent holds liens, such withdrawal,

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.
[2] The Debtors are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

modification or waiver shall be made only with the prior consent of the Administrative Agent, which consent shall not be unreasonably withheld.

On November [•], 2007 at [•] (or such other date and time as may be designated), or as soon thereafter as counsel can be heard, as further described below, in the Motion and in the Sale Procedures Order, the Bankruptcy Court will conduct a hearing (the "<u>Sale Hearing</u>") at which the Debtors shall seek entry of an order or orders (the "<u>Sale Order</u>") authorizing and approving the Sale of the Construction Loan Portfolios and the Construction Loan Platform (each a "<u>Sale Transaction</u>") pursuant to the terms of the Successful Bid(s) (as defined below).

**Participation Requirements**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Assets (a "<u>Potential Bidder</u>") must first deliver the following materials to the Debtors and their counsel:

> (i)   An executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel; and
>
> (ii)  The most current audited and latest unaudited financial statements (collectively, the "<u>Financials</u>") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a Sale Transaction, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their counsel and (y) the written commitment acceptable to the Debtors and their counsel of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a Sale Transaction. In the event that a Potential Bidder is unable to provide Financials, the Debtors may, in consultation with the Committee, the Administrative Agent (as required by the Cash Collateral Order), and the DIP Agent, accept such other information sufficient to demonstrate to the Debtors' satisfaction that such Potential Bidder has the financial wherewithal to consummate a Sale Transaction.

A "Qualified Bidder" is a Potential Bidder whose Financials or other information demonstrate the financial capability to consummate a Sale Transaction and which the Debtors determine, in consultation with the Committee, the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, and solely with respect to the ABN Construction Loans, ABN, is reasonably likely to make a bona fide offer.

Within two (2) business days after the Debtors receive from a Potential Bidder all of the materials required by subparagraphs (i) and (ii) above, the Debtors shall determine, in consultation with their advisors, Committee, the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, and ABN Agent whether the Potential Bidder is a Qualified Bidder. In the event that the Debtors determine, in consultation with the Committee, the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, and solely with

-2-

respect to the ABN Construction Loans, ABN, that a Potential Bidder is not a Qualified Bidder, the Debtors shall provide prompt notice thereof to the Potential Bidder.

**Obtaining Due Diligence Access**

The Debtors shall afford each Qualified Bidder reasonable due diligence information. Due Diligence reports which have already been performed will be made available to Qualified Bidders. Site access shall be provided upon reasonable request to the Debtors at the discretion of the Debtors within their reasonable business judgment. The due diligence period will end on the Bid Deadline (defined below).

The Debtors shall not be obligated to furnish any information relating to the Debtors, the Assets, and/or a Sale to any person except to a Qualified Bidder. The Debtors shall give each Qualified Bidder reasonable access to all written due diligence information provided to another Qualified Bidder.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline (as defined below).

**Bid Deadline**

**The deadline for submitting bids by a Qualified Bidder shall be October 24, 2007 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make a bid shall deliver written copies of its bid to: (i) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Alan Horn, General Counsel and Karen Gowins, Director of Construction and Renovation Lending), and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn.: M. Blake Cleary and Matthew B. Lunn), counsel to the Debtors. Bids may also be delivered on or before the Bid Deadline to the parties identified by email to the following email address: ConstructionLoanSaleAHM@Americanhm.com.

On or before one (1) business day after the Bid Deadline, the Debtors will deliver copies of the bids received from Qualified Bidders to: (i) Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022 (Attn.: Mark Indelicato), counsel to the Committee; (ii) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022 (Attn.: Margot B. Schonholtz and Scott D. Talmadge) and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801 (Attn.: Laurie Selber Silverstein), counsel to the Administrative Agent; (iii) Jones Day, 222 East 41st Street, New York, New York 10017 (Attn.: Corinne Ball and Erica M. Ryland) and Greenberg Traurig LLP, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn.: Victoria Counihan), counsel to the DIP Agent; and (iv) counsel to the non-Debtor parties to the Construction Loans solely with respect to bids for their respective Construction Loans, if any.

**Due Diligence From Bidders**

Each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Qualified Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by the Qualified Bidder is not a Qualified Bid.

**Bid Requirements**

A bid must be a written irrevocable offer from a Qualified Bidder (i) stating that the Qualified Bidder offers to consummate a Sale Transaction pursuant to an agreement that has been marked to show amendments and modifications to the Purchase Agreement in the form (a) annexed hereto as Exhibit A if bidding for a Construction Loan Portfolio, and (b) annexed hereto as Exhibit B if bidding for the Construction Loan Platform, including the specific Assets to be purchased and price and terms that are being proposed by the Qualified Bidder, which terms shall not alter materially the terms of the Purchase Agreement, as applicable, (the "Marked Purchase Agreement"); (ii) confirming that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or the Next Highest Bidder; (iii) enclosing a copy of the proposed Marked Purchase Agreement; and (iv) accompanied with a certified or bank check, wire transfer, or letter of credit reasonably acceptable to the Debtors equal to 5% of the amount of the Qualified Bid, as a minimum deposit (the "Minimum Deposit").

Any bid for the Assets must:

(a)     be on terms that are not materially more burdensome or conditional than the terms of the Purchase Agreement;

(b)     not be conditioned on obtaining financing or the outcome of any due diligence by the bidder;

(c)     not request or entitle the bidder to any break-up fee, expense reimbursement or similar type of payment;

(d)     contain a list of the Debtors' executory contracts and unexpired leases related to the Assets with respect to which the bidder seeks assignment from the Debtors, if any (the "Assumed Contracts");

(e)     identify each Asset that is subject to the bid and identify separate purchase prices to each Asset (each an "Allocated Purchase Price");

(f)     identify whether the Construction Loan Platform is a purchased Asset and allocate the purchase price to the Construction Loan Platform;

(g)     if the Construction Loan Platform is a purchased Asset, provide that either the Bidder or the Debtors shall be responsible for the cure costs associated with the Assumed Contracts;

-4-

(h)    fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and

(i)    contain written evidence that the bidder has the requisite corporate or similar authority to consummate the Sale Transaction proposed.

A bid received from a Qualified Bidder and that meets the requirements set forth above will be considered a "Qualified Bid" if the Debtors believe, in consultation with the Committee, the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, and solely with respect to the ABN Construction Loans, ABN, that such bid would be consummated if selected as a Successful Bid (as defined below).

**Auction**

If more than one Qualified Bid by a Qualified Bidder is received by the Bid Deadline, an auction (the "Auction") with respect to a Sale Transaction shall take place on **October 30, 2007 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19899, or such other place and time as the Debtors shall notify all Qualified Bidders, the Committee, the Administrative Agent and the DIP Agent, and other invitees. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held.

The Debtors will conduct an Auction for each of the Assets, on a portfolio-by-portfolio basis, that receives more than one Qualified Bid. In the event that the Auction date is changed, the Debtors will provide appropriate notice to each of the Qualified Bidders, the Committee, the Administrative Agent, ABN and the DIP Agent of the dates, times, and places for each Auction and the portions of the Assets to be sold at each Auction.

Only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders, the Committee, the Administrative Agent, the DIP Agent, ABN and the Debtors shall be permitted to attend the Auction. At the Auction, Qualified Bidders will be permitted to increase their bids.

If the event a Qualified Bid include bids for more than one of the Assets, such Qualified Bid shall be treated and considered as separate and distinct bids for each of the Assets identified therein. The bidding at the Auction shall start at the purchase price stated in the highest or otherwise best Qualified Bid as disclosed to all Qualified Bidders prior to commencement of the Auction (the "Starting Qualified Bid"), and then continue in appropriate increments thereafter until there is a Successful Bid and a Next Highest Bid.

The Debtors, in consultation with the Committee, the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, and ABN (consistent with the terms of the Stipulation), may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Sale Procedures Order. All such rules shall be fully disclosed to all Qualified Bidders, the

-5-

Administrative Agent, the DIP Agent, the Committee, and ABN (consistent with the terms of the Stipulation).

Immediately prior to concluding the Auction, the Debtors shall (i) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the sale process and the best interests of the Debtors' estates and creditors; (ii) determine and identify, in consultation with the Committee, the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, and ABN (solely with respect to the ABN Construction Loans), the highest or otherwise best Qualified Bid(s) (the "Successful Bid") and the next highest or otherwise best offer after the Successful Bid (the "Next Highest Bid"), provided, however, that, solely with respect to the ABN Construction Loans and consistent with the terms of the Stipulation, ABN has not requested that the ABN Construction Loans be withdrawn from the Auction; and (iii) have the right to reject any and all bids, in each case in consultation with the Committee and ABN (solely with respect to the ABN Construction Loans). Immediately upon selection of the Successful Bid, if the Minimum Deposit does not equal 5% of the purchase price of the Successful Bid, the Qualified Bidder with respect to the Successful Bid (the "Successful Bidder") shall provide the Debtors with immediately available funds so that the Minimum Deposit is equal to 5% of the purchase price of the Successful Bid. The Auction may be adjourned as the Debtors deem appropriate. Reasonable notice of the time and place for the resumption of the Auction will be given to all Qualified Bidders, the Committee, the Administrative Agent, the DIP Agent, ABN and other invited parties.

### Acceptance of the Successful Bid

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder(s) was selected in accordance with these Sale Procedures and the Stipulation, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Sale Transaction contemplated by the Successful Bid(s) will provide the highest or otherwise best value for such Assets and is in the best interests of the Debtors and their estates,

The Debtors shall have accepted a Qualified Bid only when (i) the Bid is declared the Successful Bid at the Sale Hearing, (ii) the Bankruptcy Court has approved the Successful Bid and an order approving such Successful Bid has been docketed, (iii) definitive documentation has been executed in respect thereof, (iv) solely with respect to the ABN Construction Loans and consistent with the terms of the Stipulation, ABN has not requested that the ABN Construction Loans be withdrawn from the Auction, and (v) the Sale closes.

In the event that, for any reason, the Successful Bidder fails to close the Sale Transaction contemplated by its Successful Bid, then, without notice to any other party or further court order, but subject to the rights of ABN under the Stipulation, the Debtors shall be authorized to close with the Qualified Bidder that submitted the Next Highest Bid (the "Next Highest Bidder").

-6-

## Return of Minimum Deposit

Except as otherwise provided in this paragraph with respect to any Successful Bid and any Next Highest Bid, the Minimum Deposits of all Qualified Bidders required to submit such a deposit under the Sale Procedures shall be returned upon or within one (1) business day after Closing of the Sale. The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale and applied in accordance with the Successful Bid. The Minimum Deposit of the Next Highest Bidder shall be returned upon or within one (1) business day after closing of the Sale to the Successful Bidder.

If the Successful Bidder fails to close the Sale, such party's Minimum Deposit shall be forfeited to the Debtors and thereafter paid to the lender holding valid perfected liens on the Construction Loans subject of the Successful Bid, if any; provided that in the event the Minimum Deposit relates to a Successful Bid for more than one Construction Loan Portfolio, the amount paid to each lender holding valid perfected liens on the Construction Loans subject of the Successful Bid shall be equal to the product of (i) the Minimum Deposit and (ii) the Allocated Purchase Price with respect to its Construction Loans divided by the sum of each Allocated Purchase Price related to the Construction Loans that are part of the Successful Bid.

.Notwithstanding the above, if the Successful Bidder in connection with a bid, but only to the extent that it relates to the ABN Construction Loans, fails to close the Sale, such party's Minimum Deposit shall be forfeited to ABN subject to the obligation of ABN to pay the Debtors in accordance with the terms of the Stipulation. In the event the Debtors proceed to closing with the Next Highest Bidder, the Minimum Deposit of the Next Highest Bidder shall be held until the closing of the Sale with the Next Highest Bidder and applied in accordance with the Next Highest Bid. If the Next Highest Bidder in connection with a bid, but only to the extent that it relates to the ABN Construction Loans, fails to close the Sale, such party's Minimum Deposit shall be forfeited to ABN subject to the obligation of ABN to pay the Debtors in accordance with the terms of the Stipulation.

## Consultation with Stakeholders

The Debtors shall provide to the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, the Committee, and ABN information regarding the qualification of bidders, the valuation of bids, and such other information related to the sale process as may be reasonably requested by the Committee, the DIP Agent, the Administrative Agent or ABN. Throughout the process the Debtors shall consult with the Committee, the Administrative Agent, the DIP Agent, ABN, and/or their professionals as provided herein.

## Reservation of Rights

The Debtors reserve the right, in consultation with the Committee, the Administrative Agent (as required by the Cash Collateral Order), the DIP Agent, and ABN (solely with respect to the ABN Construction Loans), to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and/or best proposal and which is the next highest and/or best proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Sale Procedures

-7-

Order or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) enter into one or more stalking horse agreements and seek Court approval of expense reimbursements and/or break-up fees; (vi) waive terms and conditions set forth herein with respect to any or all potential bidders, (vii) impose additional terms and conditions with respect to any or all potential bidders, (viii) extend the deadlines set forth herein, (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) remove some or all of the Assets from the Auction, and (xi) modify the Sale Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice. Without limiting the generality of the foregoing, the Debtors may determine to (i) distribute or not distribute copies of other Qualified Bids to other Qualified Bidders prior to or during the Auction or (ii) proceed with sealed bidding.