IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | x | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors | : | |
| | : | **Objection Deadline: October 24, 2007 at 4:00 p.m. (ET)** |
| | : | **Hearing Date: October 31, 2007 at 10:00 a.m. (ET)** |
| | x | |

## APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY AND RETAIN ALLEN & OVERY, LLP, AS SPECIAL REGULATORY, SECURITIES, AND CLASS ACTION LITIGATION COUNSEL PURSUANT TO SECTION 327 OF THE BANKRUPTCY CODE, *NUNC PRO TUNC* TO SEPTEMBER 7, 2007

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), hereby file this

application (the "Application") seeking entry of an order, pursuant to section 327 of title 11 of

the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 2014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the employment

and retention of Allen & Overy, LLP ("Allen & Overy") as special regulatory, securities, and

class action litigation counsel to the Debtors, nunc pro tunc to September 7, 2007. The facts and

circumstances supporting this Application are set forth in the Declaration of Pamela Rogers

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979): American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability Firm (1407); Homegate Settlement Services, Inc ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Chepiga in Support of Application for an Order Authorizing the Debtors and Debtors in

Possession to Employ and Retain Allen & Overy, LLP, as Special Regulatory, Securities, and

Class Action Litigation Counsel Pursuant to Section 327 of the Bankruptcy Code, nunc pro tunc

to September 7, 2007 (the "Chepiga Declaration"), which is attached hereto as Exhibit A.  In

further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28

U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates

for the relief requested in the Application are section 327 of the Bankruptcy Code and

Bankruptcy Rule 2014.

## STATUS OF THE CASE

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with

this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      Each Debtor is continuing to operate its business and manage its

properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

4.      The Debtors' chapter 11 cases are being jointly administered pursuant to

Bankruptcy Rule 1015(b).

5.      No trustee or examiner has been appointed.  The Official Committee of

Unsecured Creditors (the "Committee") was appointed on August 14, 2007.

## THE DEBTORS' BUSINESS[2]

6.     Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

7.     As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan origination offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

8.     A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference herein.

serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.  AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

9.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages.  These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

10.     The concern in the credit markets has spread beyond the subprime market and the surge in mortgage delinquencies for subprime home loans also generated anxiety with certain institutions about borrowers with generally good credit.

11.     In the weeks prior to the Petition Date, this anxiety within certain institutions led to such institutions quickly devaluing the Debtors' loan and security portfolios and, consequently, such institutions made margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  In addition, during this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities used by the Debtors to originate and purchase mortgage loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

12.     On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

13.     Margin calls and the exercise of remedies by the Debtors' warehouse
lenders created a severe liquidity crisis and forced the Debtors to discontinue their retail and
indirect loan origination business.  As a result, on Friday, August 3, 2007, the Debtors
implemented a massive reduction in workforce, resulting in the termination of over 6,500
employees.  The Debtors as of the Petition Date employed approximately 1,000 essential
employees to the Debtors' continued operations, although that number is expected to decline as
various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining
assets are sold.

14.     The Debtors engaged in efforts to sell their businesses and assets,
including, but not limited to, loans owned by the Debtors, residual securities in securitization
trusts and scratch and dent loans, to financial and strategic investors.  Unfortunately, in the short
time available and given the severe financial pressures facing them, the Debtors were
unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and,
accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates
through orderly sales of their assets, including the servicing business and mortgages held for
sale.

### RELIEF REQUESTED

15.     By this Application, the Debtors seek authorization to employ and retain
Allen & Overy as their special counsel ("Special Counsel") with respect to certain regulatory,
securities, and class action litigation matters pursuant to section 327(a) of the Bankruptcy Code,
nunc pro tunc to September 7, 2007.  The scope of Allen & Overy's engagement is described
below and in the Chepiga Declaration and is governed by the terms and conditions of the
engagement letter annexed hereto as Exhibit B (the "Engagement Letter").

5

## BASIS FOR RELIEF

A.    **The Proposed Retention of Allen & Overy is Permitted**
      **Under Section 327 of the Bankruptcy Code.**

16.    As discussed in greater detail below, the Debtors submit that their
retention of Allen & Overy is permitted under section 327(a) of the Bankruptcy Code.  Although
the Debtors believe that the retention of Allen & Overy satisfies the mandates of section 327(a)
read alone, the Application may also be approved because Allen & Overy's retention satisfies the
requirements of section 327(a) of the Bankruptcy Code, when read in conjunction with, and
limited by, section 327(e) of the Bankruptcy Code.

   i.    *The retention of Allen & Overy satisfies the*
         *requirements of section 327(a) of the Bankruptcy Code.*

17.    Section 327(a) of the Bankruptcy Code provides that:

> "the trustee with the court's approval, may employ one or more attorneys ... that
> do not hold or represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the trustee in carrying out the trustee's duties."

11 U.S.C. § 327(a).  The term "disinterested person" is defined by section 101(14) of the
Bankruptcy Code as meaning "a person that—

> (A)    is not a creditor, an equity security holder, or an insider;
>
> (B)    is not and was not, within 2 years before the date of the
>        filing of the petition, a director, officer, or employee of the
>        debtor; and
>
> (C)    does not have an interest materially adverse to the interest
>        of the estate or of any class of creditors or equity security
>        holders, by reason of any direct or indirect relationship to,
>        connection with, or interest in, the debtor, or for any other
>        reason."

11 U.S.C. § 101(14).

6

18.     To the best of the Debtors' knowledge, and except as disclosed herein and in the Chepiga Declaration, Allen & Overy is a "disinterested person" as those terms are defined in section 101(14) of the Bankruptcy Code.

19.     Allen & Overy has represented, and currently represents, certain parties who are creditors of the Debtors, and who have taken active roles adverse to the Debtors in these bankruptcy cases. [3]  Specifically, Allen & Overy's clients include, but are not limited to: ABN Amro Bank, N.V., American Express, Bank of America (and related affiliates), Bank of New York, Bear Stearns & Co., Inc., Calyon, Cascade II / Principle Life Insurance Company, Citibank (and related affiliates), Countrywide, Credit Suisse, Deutsche Bank (and related affiliates), GMAC, HSBC, JP Morgan Chase (and related affiliates), Lehman Brothers Inc., Morgan Stanley (and related affiliates), Societe General, The Royal Bank of Scotland, UBS, Wachovia Bank, N.A., Washington Mutual, Wells Fargo Bank, N.A., and Wilmington Trust Company. [4]  These engagements involve representing the identified financial institutions in a broad range of commercial dealings; the majority of such engagements being undertaken by Allen & Overy's offices outside the United States.  Moreover, none of these representations involve matters related to the bankruptcy cases or the Debtors.  Consequentially, the Debtors submit that Allen & Overy does not hold an interest adverse to the Debtors or their estates

---

[3]  Additionally, Allen & Overy is currently representing the directors and officers of the Debtors who were serving in that capacity as of the Petition Date.  See ABA Model Rule 1.13 ("A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents... .").  The Debtors are not aware of any potential or actual conflict between the Debtors and any of the directors and officers.

[4]  Allen & Overy has informed the Debtors that it will periodically review its files during the pendency of the chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Allen & Overy will use reasonable efforts to identify such further developments and will promptly amend the Chepiga Declaration to the extent that further disclosure is required, or, if necessary, will withdraw from representing any individual or group of D&Os that have interests that become adverse at any time to the Debtors, its estates, or its creditors.

7

pursuant to section 327(a) of the Bankruptcy Code, and that therefore, the retention of Allen &

Overy is permitted under section 327(a).

> ii.     *In the alternative, the retention of Allen & Overy is*
> *permitted under section 327(a) when read in conjunction*
> *with, and limited by, section 327(e) of the Bankruptcy Code.*

20.     The Debtors are required to retain Allen & Overy under section 327(a) of

the Bankruptcy Code because the firm did not represent the Debtors prior to the Petition Date,

and by virtue of this fact alone cannot be retained under section 327(e). Meespierson Inc. v.

Strategic Telecom, 202 B.R. 845 (D. Del. 1996) (refusing to appoint special counsel under

section 327(e) where such counsel had not previously represented the trustee). Indeed, the

retention of Allen & Overy as Special Counsel is only necessary to replace the Debtors'

prepetition counsel, Cadwalader, Wickersham & Taft LLP ("Cadwalader"), to perform the

Special Counsel services that will be required of Allen & Overy.

21.     The Debtors submit that the Court should authorize the retention of Allen

& Overy under section 327(a) read alone. Additionally however, Allen & Overy's retention may

also be authorized under section 327(a), as limited by section 327(e) of the Bankruptcy Code.

Bankruptcy Code section 327(e) permits a debtor to retain counsel to represent it for a specified

special purpose. See 11 U.S.C. § 327(e). Specifically, section 327(e) provides that:

> "the trustee, with the court's approval, may employ, for a
> specified special purpose, other than to represent the trustee in
> conducting the case, an attorney that has represented the debtor, if
> in the best interest of the estate, and if such attorney does not
> represent or hold any interest adverse to the debtor or the estate
> with respect to the matter on which such attorney is to be
> employed."

11 U.S.C. § 327(e).

22.     Courts have construed section 327(a) by an analogy to section 327(e) where, as in this instance, attorneys would otherwise be qualified to be retained under section 327(e) but for the fact that such attorneys had not previously represented the Debtors prior to their bankruptcy cases. Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 622 (2d Cir. 1999) ("We nonetheless believe, in accordance with a number of other courts, that in applying sections 327(a) and (c) we should reason by analogy to 327(e), so that where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself.") (internal citations omitted); Vining v. Taunt (In re M.T.G., Inc.), 298 B.R. 310, 318 (E.D. Mich. 2003) (same); In re Peters Contr., Inc., 301 B.R. 857, 860 (Bankr. M.D. Tenn. 2003) (same); Nisselson v. Wong (In re Best Craft Gen. Contr. & Design Cabinet, Inc.), 239 B.R. 462, 467 (Bankr. E.D.N.Y. 1999) (referring to situations where a proposed retention does not qualify under the exceptions contained in sections 327(e) or (c), "Courts have filled this gap by utilizing the standard found in § 327(e), thereby permitting a creditor's law firm to simultaneously serve as special counsel to the trustee if it does not hold an adverse interest with respect to the matter on which such attorney is to be employed.").

23.     The primary difference between sections 327(a) and (e) of the Bankruptcy Code is that the language contained in both sections 327(a) and 327(e) that provides attorneys cannot "hold or represent an interest adverse to the estate" is limited by an additional clause in section 327(e), "with respect to the matter on which such attorney is to be employed." Thus, in situations similar to that presently before the Court, sections 327(a) and 327(e) have been read together, such that the adverse interest standard is limited only to those matters for which the special counsel is to be employed, rather than all matters involving the Debtors. See, e.g., In re

9

AroChem Corp., 176 F.3d at 622; In re M.T.G., Inc., 298 B.R. at 318; In re Peters Contr., Inc.,

301 B.R. at 860; In re Best Craft Gen. Contr. & Design Cabinet, Inc., 239 B.R. at 467.

  24. The Debtors submit that the Court should conclude that the retention of

Allen & Overy satisfies the adverse interest standard of section 327(a), but , nevertheless, Allen

& Overy's retention may be also evaluated, and should be approved, under the adverse interest

standard contained in section 327(a), in conjunction with 327(e).  The creditors of the Debtors'

estates whom Allen & Overy represents are primarily financial institutions that will have no

involvement or adverse interest in the regulatory, securities, and class action litigation matters

for which Allen & Overy is to be retained.

  25. Because no reasonable argument can be made that Allen & Overy holds

and adverse interest to these estates with respect to the limited matters for which it is being

retained, the Application satisfies the adverse interest standard contained in section 327(a), as

limited by section 327(e).

**B.** **Allen & Overy's Qualifications**

  26. The Debtors seek to retain Allen & Overy as Special Counsel because of

the firm's significant experience in handling the types of complex disputes to which the Debtors

are currently a party.  A sampling of matters in which Allen & Overy has served as counsel

include the WorldCom securities class actions, the Parmalat litigations, certain investigations

involving the New York Attorney General's office and Marsh & McLennan, the KPMG tax

shelter investigation, and the Department of Justice's Online Gaming investigation.  Allen &

Overy's depth and breadth of litigation experience makes the firm ideally suited to effectively

handle the many disputes that have arisen, and will likely continue to arise in the areas of

10

regulatory, investigative, and securities class action litigation matters. Accordingly, Allen & Overy is well qualified to serve as Special Counsel to the Debtors.

## C.    **Scope of Services**

27.    The Debtors have negotiated with Allen & Overy the terms of the Engagement Letter, which generally sets forth the scope of services and compensation of Allen & Overy's engagement.[5] Specifically, the Debtors seek to engage Allen & Overy to:

    i.  serve as counsel with respect to the Securities and Exchange Commission's (the "SEC") inquiries regarding the company's activities immediately prior to and following its entrance into bankruptcy;

    ii.  handle issues arising with respect to other regulatory authorities, which issues may include, but are not limited to, the production of documents, interviews of witnesses, and the submission of factual and legal analysis; and

    iii.  to engage Allen & Overy in a number of currently pending securities class action litigations, including, but not limited to the following (the "Securities Class Actions")[6]:

        ▪  <u>Elliot Greenberg v. American Home Mortgage Investment Corp., Michael Strauss and Stephen A. Hozie</u>, Case No. CV-07-3152 (E.D.N.Y. filed July 31, 2007);

        ▪  <u>Joshua F. Hafron v. American Home Mortgage Investment Corp., Michael Strauss and Stephen A. Hozie</u>, Case No. CV-07-3184 (E.D.N.Y. filed Aug. 1, 2007);

---

[5] The description of the Engagement letter is set forth for the convenience of the Court, but the Engagement Letter is the governing document in all respects.

[6] The Debtors anticipate that scope of Allen & Overy's engagement will include representation of the Debtors in any additional securities class action litigations that arise.

11

- Claude A. Reese v. American Home Mortgage Investment Corp., Michael Strauss and Stephen A. Hozie, Case No. CV-07-3186 (E.D.N.Y. filed Aug. 2, 2007);

- James Ramos v. American Home Mortgage Investment Corp., Michael Strauss and Stephen A. Hozie, Case No. CV-07-3191 (E.D.N.Y. filed Aug. 2, 2007);

- Gail Fialkow v. American Home Mortgage Investment Corp. and Michael Strauss, Case No. CV-07-3193 (E.D.N.Y. filed Aug. 2, 2007); and

- American Home Mortgage Corp. v. Union Federal Bank of Indianapolis, Case No. CV-06-7864 (S.D.N.Y. filed September 29, 2006).

28.    The Debtors have chosen Young Conaway Stargatt & Taylor, LLP ("Young Conaway") as their general reorganization and bankruptcy counsel, Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") as their investigatory, litigation, and conflicts counsel with respect to the bankruptcy cases, and Cadwalader to assist them with the disposition of their assets.  In addition, Weiner Brodsky Sidman Kider, P.C. ("WBSK"), one of the Debtors' ordinary course professionals, will assist the Debtors with certain state regulatory and licensing matters.  The Debtors have previously submitted separate applications to retain Young Conaway, Quinn Emanuel and Cadwalader, and the Court has entered an Order authorizing Young Conaway's retention.  Young Conaway, Quinn Emanuel, Cadwalader, WBSK, and Allen & Overy have advised the Debtors that they will make every effort to minimize duplication of their work, with Young Conaway being chiefly responsible for providing general bankruptcy and reorganization advice, Quinn Emanuel acting as special litigation counsel for certain bankruptcy litigation matters, Cadwalader focusing on asset sales, and Allen & Overy handling the regulatory, securities, and class action litigation matters.  These professionals will confer on certain matters in order to minimize duplicative efforts and billing.

**D.**    **Payment of Fees and Expenses**

29.    Subject to Court approval, compensation will be payable to Allen & Overy on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm.  As is the case with respect to rates charged in non-bankruptcy matters of this type, Allen & Overy's rates are subject to periodic adjustment to reflect economic and other conditions.  The current standard hourly rates of Allen & Overy are:

| | |
|---|---|
| Partners: | $730 to $825 |
| Associates: | $340 to $650 |
| Paralegals: | $185 to $225 |

The hourly rates charged by Allen & Overy differ based on, among other things, each professional's level of experience.

30.    The Debtors have not paid Allen & Overy any amounts as a retainer. Allen & Overy did not perform any prepetition services for the Debtors nor does Allen & Overy hold any prepetition claims against the Debtors.

31.    In addition to the fees outlined above, Allen & Overy will bill for reasonable out-of-pocket expenses and other charges, which are likely to include airfare, meals and hotel accommodations, telephone and other communications charges, court fees, press release distribution, research, duplicating and printing, and reasonable professional expenses and disbursements incurred by Allen & Overy (the "Expenses").  The Expenses may include charges for the services of information technology experts who are able to assist with electronic discovery requests and, similarly, for the services of all other necessary experts. Allen & Overy will bill for such reasonable expenses in accordance with its standard practices, which may be periodically updated.

13

32.    Notwithstanding any contrary provisions in the Engagement Letter, the Debtors understand that Allen & Overy intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, the Local Rules, and orders of this Court; provided, however, that Allen & Overy will not disclose any confidential information to the extent that such information is covered by the attorney-client privilege.

## NOTICE

33.    Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Debtors' postpetition lender; (v) the Securities and Exchange Commission; and (vi) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

34.    No prior Application for the relief requested herein has been made to this or any other court.

14

WHEREFORE, the Debtors request entry of an order, in the form attached hereto

as Exhibit C, granting the relief requested herein and such other and further relief as is just.

Dated:      Wilmington, Delaware
           October___**5**___, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

                                          

# EXHIBIT A

## CHEPIGA DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | x | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors | : | |
| | : | |
| | : | |
| | x | |

**DECLARATION OF PAMELA ROGERS CHEPIGA IN SUPPORT
OF APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS AND
DEBTORS IN POSSESSION TO EMPLOY AND RETAIN ALLEN & OVERY, LLP, AS
SPECIAL REGULATORY, SECURITIES, AND CLASS ACTION  LITIGATION
COUNSEL PURSUANT TO SECTION 327 OF THE BANKRUPTCY
CODE, *NUNC PRO TUNC* TO SEPTEMBER 7, 2007**

Pamela Rogers Chepiga hereby declares, under penalty of perjury:

1.       I am a member of the firm of Allen & Overy, LLP ("Allen & Overy" or

the "Firm"), a law firm with offices at 1221 Avenue of the Americas, New York, New York

10010.

2.       I submit this declaration in connection with the application of American

Home Mortgage Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and

debtors in possession (collectively, "AHM" or the "Debtors") to employ and retain Allen &

Overy, effective *nunc pro tunc* to September 7, 2007, as Special Regulatory, Securities, and

Class Action Litigation Counsel to the Debtors ("Special Counsel") in the above-captioned

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp.
(AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Acceptance"), a Maryland corporation (1979): American Home Mortgage Servicing, Inc. ("AHM Servicing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558);
American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability Firm (1407); Homegate
Settlement Services, Inc ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great
Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New
York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

1

chapter 11 cases (the "Application") at its normal hourly rates in effect from time to time, and in

accordance with its normal reimbursement policies, pursuant to sections 327(a), 328, and 330 of

title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and to provide

the disclosure required under Rules 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  Unless otherwise stated in this declaration, I have personal knowledge of

the facts set forth herein.  I will supplement this declaration if additional information becomes

available during the pendency of these cases concerning any relationship between the creditors

or interest holders of the Debtors and Allen & Overy.

### ALLEN & OVERY'S PRE-PETITION RELATIONSHIP WITH THE DEBTORS

3.    Allen & Overy has not previously represented the Debtors and is not a

creditor or equity holder of the Debtors.  Allen & Overy has not received any retainer from the

Debtors.

### ALLEN & OVERY'S DISCLOSURE PROCEDURES

4.    Allen & Overy, which employs approximately 160 attorneys in the United

States and more than 2000 attorneys globally, has a diversified legal practice that encompasses

the representation of financial institutions and commercial corporations, some of which are or

may consider themselves to be creditors, equity holders, or other parties in interest in the

Debtors' pending chapter 11 cases, or otherwise to have interests in these cases.

5.    In preparing this declaration, I used a set of procedures developed by

Allen & Overy to comply with ethical constraints, including the requirements of the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules") regarding the

retention of professionals by debtors and statutory committees under the Bankruptcy Code (the

2

"<u>Disclosure Procedures</u>").  Pursuant to the Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this declaration and to ascertain Allen & Overy's connection to such parties:

    (a)    Based on the best information currently available, a list of the Debtors' forty (40) largest unsecured creditors as reflected in the Debtors' bankruptcy petitions and related filings, together with a list of its current executive officers and directors, holders of 5% or more of the Debtors' voting securities, and other potentially material adverse parties in interest as of the Petition Date was developed through discussions with senior management of the Debtors (the "<u>Potential Party List</u>").  To the best of my knowledge, the Potential Party List is the most comprehensive of potential claimants against or interest holders in the Debtors currently available.  The Debtors may supplement the list and Allen & Overy will supplement its disclosures herein at the time of such supplements as may be necessary.

    (b)    Allen & Overy maintains a database containing the name of each current and former client, the name of the parties who are or were related or adverse to such current or former client, and the names of the Allen & Overy personnel who are or were responsible for current or former matters for such client (the "<u>Database</u>").  Allen & Overy maintains the Database to include additional entities that become related to current and former clients.

    (c)    Allen & Overy compared the names included in the Potential Party List to the names in the Database to identify any matches, determine whether such matches are current or former clients and identify the Allen & Overy personnel responsible for such matters (the "<u>Client Match List</u>").

3

(d)     Using information in the Database and by making specific inquiries of Allen &

Overy personnel, I verified that Allen & Overy did not represent any entity on the Client

Match List in connection with the Debtors or these chapter 11 cases. The client

connections were compiled for purposes of preparing this declaration.

## ALLEN & OVERY'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THESE CHAPTER I1 CASES

6.     Allen & Overy is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code in that Allen & Overy, its partners, counsel and associates: (a)

are not creditors, equity security holders or insiders of the Debtors; (b) are not and were not,

within two (2) years before the date of the filing of the Debtors' chapter 11 petitions, a director,

officer, or employee of the Debtors; and (c) does not have an interest materially adverse to the

Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in any of the Debtors, or for any other

reason, except as otherwise stated herein.

7.     Following the foregoing procedures, entities in the Client Match List in

which Allen & Overy had represented the client in the last three years were reviewed by me or

an attorney working under my supervision and from such review it was determined that, in

respect of each connection between Allen & Overy and such parties, Allen & Overy does not

hold or represent an interest that is adverse to the Debtors' estates, except as otherwise stated

herein.

8.     To the best of my knowledge and information, the annual fees paid in the

past three years to Allen & Overy by any one of the parties on the Potential Party List did not

exceed 1% (one percent) of Allen & Overy's annual gross revenue for such year, except in the

cases of: ABN Amro Bank N.V., Citibank (and related affiliates), Credit Suisse, Deutsche Bank

4

(and related affiliates), HSBC, JP Morgan Chase (and related affiliates), Morgan Stanley (and related affiliates), The Royal Bank of Scotland, and UBS.

9.      From the Potential Party List, Allen & Overy currently represents the entities set forth in Exhibit 1 attached hereto to the Chepiga Declaration.  Allen & Overy has not, does not and will not represent any of the entities set forth in Exhibit 1 in matters directly related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases.

10.     Allen & Overy has not, does not, and will not represent any entity or any respective affiliates or subsidiaries thereof, in matters directly related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases.   Allen & Overy may in the future represent entities that are claimants of, or interest holders in, the Debtors in matters totally unrelated to the Debtors.

11.     As a matter of retention and disclosure policy, Allen & Overy will continue to apply the Allen & Overy Disclosure Procedures as additional information concerning entities having a material connection to the Debtors is developed and will file appropriate supplemental disclosures with this Court, if necessary.

12.     Allen & Overy will work with the Debtors' other counsel to coordinate tasks in matters where any particular firm cannot be adverse to opposing parties and to otherwise ensure there is no duplication of effort.

## ALLEN & OVERY'S RATES AND BILLING PRACTICES

13.    Subject to Court approval, compensation will be payable to Allen & Overy on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm. As is the case with respect to work for all Firm clients, Allen & Overy's rates are subject to periodic adjustments to reflect economic and other conditions. Currently, hourly rates of partners for Allen & Overy range from $730 to $825. Other attorneys' hourly rates, range from $340 to $650. The hourly rates charged for Allen & Overy's paralegals range from $185 to $225.

14.    Allen & Overy's disbursement policies pass through all out-of-pocket expenses at actual cost, or at estimated actual cost when the actual cost is difficult to determine. These expenses include facsimiles, toll calls, overtime meals, computerized research, deliveries, court costs, transcript fees, travel, clerk fees, certain secretarial and other overtime expenses, and other expenses.

15.    No promises have been received by Allen & Overy or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Allen & Overy has no agreement with any other entity to share with such entity any compensation received Allen & Overy or by any such entity.

16.    The Debtors' Application requests approval of its retention of Allen & Overy as Special Counsel on rates, terms and conditions consistent with what Allen & Overy charges non-title 11 debtors, namely, prompt payment of its hourly rates as adjusted from time to time and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable. Subject to these

6

terms and conditions, and consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, Allen & Overy intends to apply for compensation for professional services rendered in these chapter 11 cases at its customary hourly rates and for reimbursement of expenses incurred in connection therewith.

17.    The foregoing constitutes the statement of Allen & Overy pursuant to sections 327(a), 328(a), and 330 of the Bankruptcy Code and Bankruptcy Rule 2014.

18.    I certify that the foregoing statements are true and correct to the best of my knowledge information and belief.

WHEREFORE, pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Pamela Rogers Chepiga

Sworn to before me this 27th day of September, 2007.

Notary Public
My Commission Expires: Nov. 24, 2008

ERNEST W. CHUNG
Notary Public, State of New York
No. 02CH5088572
Qualified in Westchester County
Commission Expires Nov. 24, 2008

## EXHIBIT 1

## ALLEN & OVERY CLIENTS

ABN Amro Bank, N.V.
American Express
Bank of America (and related affiliates)
Bank of New York
Bear Stearns & Co., Inc.
Calyon
Cascade II / Principle Life Insurance Company
Citibank (and related affiliates)
Countrywide
Credit Suisse
Deutsche Bank (and related affiliates)
GMAC
HSBC
JP Morgan Chase (and related affiliates)
Lehman Brothers Inc.
Morgan Stanley (and related affiliates)
Societe General
The Royal Bank of Scotland
UBS
Wachovia Bank, N.A.
Washington Mutual
Wells Fargo Bank, N.A.
Wilmington Trust Company

## EXHIBIT B

### ENGAGEMENT LETTER

DB02:6235922.10
DB02:6235922.10

066585.1001
066585.1001

ALLEN & OVERY

Allen & Overy LLP

1221 Avenue of the Americas

New York NY 10020

| | |
|---|---|
| Tel | 212 610 6300 |
| Fax | 212 610 6399 |
| Direct line | 212 756 1125 |
| Personal fax | 212 610 6399 |

pamela.chepiga@allenovery.com

Michael Strauss
Chief Executive Officer
American Home Mortgage Holdings, Inc.
538 Broadhollow Road
Melville, NY 11747

September 27, 2007

Dear Mr. Strauss:

Terms of Engagement

I am writing to you on behalf of Allen & Overy LLP to confirm the basis on which we will provide advice and/or services to American Home Mortgage Holdings, Inc. and its direct and indirect affiliates and subsidiaries, (the Company)[1], for the limited purposes set forth below, in respect of each of the matters (the Matters) on which Allen & Overy LLP is instructed by the Company. Allen & Overy LLP shall also represent the officers and directors of American Home Mortgage Holdings, Inc. who were employed by, or were directors of, the Company at the time of Company's Chapter 11 filings, and as to whom no conflict exists (collectively, the D&Os). At the present time, we are not aware of any potential conflict between the Company and its D&Os and believe that a joint representation will be the most cost effective means of avoiding excessive legal fees for the Company's bankruptcy estate

The terms of our engagement are governed by this letter and its appendix which sets forth the general terms of our engagement (together the or this **Letter**). Additionally, Allen & Overy LLP's retention by the Company is subject to and dependent upon the approval of the retention by the United States Bankruptcy Court for the District of Delaware.

1.    Relationship

I will be your overall relationship partner (**Relationship Partner**) and the partner with overall responsibility for the conduct of the Matters. You will be our principal contact at the Company (the **Principal Client Contact**). The general terms of Appendix 1 will apply to Allen & Overy LLP's relationship with the Company.

---

[1]     The term Company shall be defined to include all the Debtors that filed for bankruptcy on August 6, 2007: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

2.    Fees

Our fees will be charged at the following rates: partners and/or counsel ($730 - $825), associates ($340 - $650), and paralegals ($185 - $225). Payment of Allen & Overy LLP's fees on the Matters will be subject to approval by the United States Bankruptcy Court for the District of Delaware.

In addition to our fees, Allen & Overy will bill for reasonable out-of-pocket expenses and other charges, which are likely to include airfare, meals and hotel accommodations, telephone and other communications charges, court fees, press release distribution, research, duplicating and printing, and reasonable professional expenses and disbursements incurred by Allen & Overy (the Expenses). The Expenses may include charges for the services of information technology experts who are able to assist with electronic discovery requests and, similarly, for the services of all other necessary experts. (In the event extraordinary or significant expenses are incurred, such as transcript costs and large mailings, the Company agrees that it will pay those expenses directly or will promptly reimburse us separately from our normal invoice procedure.) Allen & Overy will bill for such reasonable expenses in accordance with its standard practices, which may be periodically updated.

If you have any queries regarding an invoice, please let us know as soon as reasonably practicable.

We hope that you will be satisfied with our work. However, if for whatever reason you have any queries or concerns, please do not hesitate to contact me at any time. If I am unavailable, arrangements will be made for you to speak to another partner to assist with the resolution of any issues.

3.    Initial Matters

The Company has engaged Allen & Overy LLP to serve as counsel with respect to the Securities and Exchange Commission's (SEC) continuing inquiries regarding the Company's activities immediately prior to and following its entrance into bankruptcy. We anticipate that the scope of this work will include, but not be limited to, the production of documents to the SEC as well as responding to any additional requests for information, the interview of witnesses, and the submission of written factual and legal analysis, as needed. Additionally, the scope of our engagement includes responding to any requests from other regulatory entities.

We have also been engaged to represent the Company in a number of currently pending securities class action litigations. We anticipate that the scope of this work will also include representation of the Company in any additional securities litigations that make substantially similar claims and/or are based on substantially similar allegations.

For the avoidance of doubt, we will not be responsible for advice regarding any bankruptcy-related issues, general corporate governance, or any litigation issues aside from those regulatory and securities-related issues described above.

4.    Conflicts

As noted above, Allen & Overy LLP will represent the D&Os as to whom no conflict exists. At the present time, we unaware of the existence of any such conflict. Nonetheless, in order to ensure that Allen & Overy LLP is not disqualified from its continuing representation of the Company in the future, each and every D&O who is presently named in a pending securities class action litigation will be asked to sign the representation agreement substantially in the form attached hereto as Appendix 2. Any D&O who elects not to sign such a representation agreement will not be represented by Allen & Overy LLP.

To the extent that future litigations are brought against individuals who are not currently named, Allen & Overy LLP will request that any such individual sign the representation agreement included at Appendix 2 before agreeing to act on that individual's behalf.

Yours truly

ALLEN & OVERY LLP

By: _____
Partner for and on behalf of Allen & Overy LLP

The appointment of Allen & Overy LLP on the above terms is agreed.

American Home Mortgages Holdings, Inc., et. al.

By: _____    Date: 10/1/08
Name  Michael Strauss
Title  President

# APPENDIX 1

## GENERAL TERMS REGARDING YOUR RELATIONSHIP WITH A&O

1. **Definitions**

1.1 For the purposes of the Letter, unless the context otherwise requires:

Allen & Overy LLP is a limited liability partnership incorporated in England and Wales with registered number OC 306763 and registered office at One Bishops Square, London, E1 6AO;

partner is a title and individuals described as partners are members, partners, shareholders or employees of, or consultants to, Allen & Overy LLP or an affiliate of Allen & Overy LLP. A list of the members of Allen & Overy LLP is available for inspection at One Bishops Square, London, E1 6AO, "we", "us" and "our" are references to the relevant member(s) of Allen & Overy LLP providing advice and/or services to the Group on a particular Matter; and "you", "yourself" and "your" are references to the relevant Clients.

2. **Liability**

2.1 To the extent such agreement is enforceable under applicable laws and regulation, you agree not to bring any claim in connection with our advice and/or services against any member of Allen & Overy LLP or against any shareholder or employee of, or consultant to, any member of Allen & Overy LLP or its affiliates; provided, however, that the foregoing shall not limit the liability of any A&O lawyer for such lawyer's individual malpractice to the extent that New York Disciplinary Rule 6-102 is applicable to such lawyer. This clause does not limit or exclude the liability of the relevant member of the Allen & Overy LLP or its affiliates for the acts or omissions of its members, partners, shareholders, employees or consultants. Records

3. **Records**

3.1 Unless you instruct us otherwise, we may destroy correspondence and other documents, including electronic copies, once we believe they need no longer be retained for legal reasons. If you wish us to keep documents for a longer period, we may charge for our storage costs.

4. **Other Parties**

4.1 Our advice and/or services are for your benefit and may not be used or relied upon by anyone else.

5. **Instructions to Third Parties**

5.1 We cannot accept liability for the acts and omissions of any third party we may instruct on your behalf.

6. **Electronic Communications**

6.1 We may communicate with you electronically. You accept the risks involved in such communication, except in the case of our negligence or wilful default.

6.2 We may monitor communications in accordance with applicable laws and regulations in order to establish facts, to determine that communications using our systems are relevant to our business or to comply with laws or regulatory practices and procedures.

7. **Conflicts/Relationships with Other Clients**

7.1 You are aware that we represent many other companies and individuals, and that it is possible that during the time we are representing you some of our present or future clients will have disputes or transactions with the Clients. We recognize that unless we have received your written permission to do so, we shall be disqualified from representing any other client when the New York Code of Professional Responsibility applies and so requires. With that limited exception, you agree that our representing you in the Matter will not prevent or disqualify us from representing existing or new clients in other matters, whether or not adverse to you, and that you consent in advance to our undertaking such adverse representations.

8. **Confidentiality**

8.1 We will of course treat any information which we obtain from you which is not in the public domain as confidential. However, we may sometimes have to disclose information to regulatory authorities or under rules of law or professional conduct. If so, we would (where both permissible and practicable) inform you of the request or requirement to disclose

8.2 We may sometimes outsource support services such as word processing, translation and photocopying, on the basis that our suppliers have agreed or will agree to keep any information they receive from us confidential. We may also discuss your affairs with your other advisers.

8.3 We will ask your permission before publicly claiming credit for our work for you. However, when offering our services to others, we may disclose to them that we have acted for you, unless you instruct us to the contrary.

9. **Termination**

9.1 Our retainer in relation to a Matter will terminate upon the delivery of our final invoice in relation to that Matter and, if there is no invoice, when our work, as described in the relevant letter, is complete

5

9.2  Either of us may terminate our representation of the Company at any time for any reason by written notice, subject on our part to the New York Code of Professional Responsibility and any other applicable rules of professional conduct. The New York Code of Professional Responsibility also requires that we withdraw from our representation under certain circumstances. In the event we elect or are required to terminate our engagement (a) we will take such steps as are reasonably practeable to avoid forseeable prejudice to your interests and, if you so request, we will suggest to you possible successor counsel and provide it or you with all papers and property to which you are entitled and (b) you will take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to complete our withdrawal. If permission for withdrawal is required by a court, we will promptly apply for such permission and will not withdraw until we receive such permission, and you agree to engage successor counsel to represent you.

9.3  If our engagement is terminated in relation to a Matter, the provisions of this Appendix will continue to apply in respect of that Matter after termination.

10.  **Enforceability of the Letter**

10.1  The Company enters into the Letter on its own behalf and as agent for the affiliate Companies and shall procure that the affiliate Companies comply with its terms.

10.2  Except for the Company, and any member, shareholder or employee of, or consultant to any member of Allen & Overy LLP or its affiliates, a person who is not a party to the Letter shall have no right to enforce any of its terms.

11.  **Concerns, Jurisdiction and Governing Law**

11.1  The Bankruptcy Court for the District of Delaware has exclusive jurisdiction to settle any disputes which may arise out of or in connection with our engagement on any particular Matter or the Letter and you and we accordingly submit to the exclusive jurisdiction of the Bankruptcy Court for the District of Delaware.

11.2  The Letter and any disputes which may arise out of or in connection with it or our engagement on any particular Matter shall be governed by New York law unless otherwise agreed in writing.

6

## APPENDIX 2

## UNDERTAKING OF OFFICER AND/OR DIRECTOR JOINT REPRESENTATION

I, _____, hereby agree to be represented by Allen & Overy LLP with respect to the Securities and Exchange Commission's ongoing inquiries regarding American Home Mortgage Holdings, Inc. and its direct and indirect subsidiaries (the **Company**)[2] and with respect to currently pending securities class action litigations related to the events leading up to the Company's Chapter 11 filing. I acknowledge that, at this time, neither Allen & Overy LLP or myself is aware of any conflict of interest, actual or potential, between Allen & Overy LLP's representation of me and of Allen & Overy LLP's representation of the Company. Additionally, I hereby agree that should a conflict of interest arise at any future date, I will not object to Allen & Overy LLP's immediate discontinuation of its representation of me and its continued representation of the Company. Further, I hereby agree that, in the event that a future conflict arises, I irrevocably waive the right to use Allen & Overy LLP's present representation of me as grounds to seek Allen & Overy LLP's recusal from its continued representation of the Company.

_____

By:

---

[2]    The term Company shall be defined to include all the Debtors that filed for bankruptcy on August 6, 2007: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

7