IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------------ x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : | |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: October 31, 2007 at 10:00 a.m.** |
| ------------------------------------------------------------------ x | | **Objection Deadline: October 24, 2007 at 4:00 p.m.** |

## APPLICATION FOR ORDER PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 APPROVING THE RETENTION AND EMPLOYMENT OF ADORNO & YOSS LLP AS FORECLOSURE PROFESSIONALS FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE AND PARTIAL WAIVER OF THE INFORMATION REQUIREMENT OF LOCAL RULE 2016-2

The above-captioned debtors and debtors in possession (collectively the "Debtors")

hereby file this application (the "Application") seeking (i) entry of an order, pursuant to section

327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code")

and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

approving the retention and employment of Adorno & Yoss LLP ( "Adorno & Yoss" or the

"Firm") as foreclosure professionals for the Debtors effective, *nunc pro tunc* to the Petition Date

(as defined below) and (ii) a partial waiver of Rule 2016-2 of the Local Rules of Bankruptcy

Practice and Procedure of the U.S. Bankruptcy Court for the District of Delaware (the "Local

Rules"). In support of this Application, the Debtors rely upon the Affidavit of Alan Rosenthal,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Esq., a copy of which is attached hereto as Exhibit A (the "Rosenthal Affidavit").  In further

support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal

predicates for the relief sought herein are section 327(e) of the Bankruptcy Code and Bankruptcy

Rule 2014.

## STATUS OF THE CASE

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court

a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      Each Debtor is continuing to operate its business and manage its properties as a

debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Debtors' chapter 11 cases are being jointly administered pursuant to

Bankruptcy Rule 1015(b).

5.      No trustee or examiner has been appointed.  On August 14, 2007, the Office of

the United States Trustee appointed an official committee of unsecured creditors for these cases.

## THE DEBTORS' BUSINESS[2]

6.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed

the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans

and mortgage-backed securities resulting from the securitizations of residential mortgage loans.

AHM also invested in securitized mortgage loans originated by others and originated and sold

---

[2]      The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors'
Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference as if fully set forth
herein at length.

066585.1001

mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

7.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents.    AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

8.      A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing.    The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

9.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages. These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

3

10.     The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities.    The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

11.     In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

12.     On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Firm's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

13.     The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees. The Debtors as of the Petition Date employed approximately 1000 absolutely essential employees to the Debtors' continued operations, although that number is expected to

4

decline as various wind-up tasks are completed, the retail branches are closed and the Debtors'
remaining assets are sold.

14.    In the wake of these events, the Debtors, assisted by counsel and professional
advisors, sought alternative funding sources and capital infusions.  Additionally, the Debtors
engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned
by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial
and strategic investors.

15.    Unfortunately, in the short time available and given the severe financial pressures
facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside
the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize
the value of their estates through orderly sales of their assets.

### RELIEF REQUESTED

16.    By this Application and pursuant to Bankruptcy Code section 327(e) and
Bankruptcy Rule 2014, the Debtors seek approval (i) of the Court to retain and employ Adorno
& Yoss as their foreclosure professionals effective, *nunc pro tunc* to the Petition Date, and (ii) a
partial waiver of the information requirement of Local Rule 2016-2.

### BASIS FOR RELIEF

**A.    Adorno & Yoss' Qualifications**

17.    The Debtors seek to retain Adorno & Yoss as their foreclosure professionals
because of the Firm's extensive experience.  Adorno & Yoss has an established and well
regarded Mortgage Default Practice Group (MDPG), spanning across Florida, Georgia, and
Tennessee. The MDPG attorneys at each office have over 65 years of combined experience in
the mortgage default industry. Adorno & Yoss offers services on matters involving foreclosure,
bankruptcy, eviction, REO settlement, complex litigation, and regulatory compliance and its

offices are equipped with state of the art technology enabling the Firm to handle a large volume of mortgage default work. Adorno & Yoss' foreclosure, bankruptcy, and eviction timelines consistently meet industry requirements, and the Firm bills according to FannieMae/Freddie Mac guidelines.

Adorno & Yoss' Florida office, located in Miami, began representation of AHM Servicing in early 2005. Over the past three years, Adorno & Yoss has received over 1,000 referrals of mortgage loans from AHM Servicing, which require foreclosure. In addition to the staff and attorneys dedicated to the foreclosure practice, the Firm has an extensive litigation and appellate department, in the event that novel issues and/or situations should arise. Additionally, the Debtors submit that Adorno & Yoss has expertise and experience in prosecuting the matters for which it is being retained. Accordingly, the Debtors believe that Adorno & Yoss will effectively and efficiently handle the matters for which it is retained in a manner that is cost effective for the Debtors' estates.

**B.     Payment of Fees and Expenses**

18.     Adorno & Yoss will seek approval of payment of compensation and reimbursement of actual, necessary expenses and other charges upon the filing of appropriate applications for allowance of interim and/or final compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, Local Rule 2016-2, and Orders of this Court. The Firm employs a two-tier fee structure (the "Fee Structure") for its performance of foreclosure services. For each mortgage that the Firm institutes foreclosure proceedings, the Firm charges a fixed rate fee (the "Fixed Rate Foreclosure Fee") of twelve hundred dollars ($1,200) to perform the foreclosure of one mortgage and eighteen hundred dollars ($1,800) to simultaneously foreclose two mortgages, *i.e.* a first and second mortgage. In addition to the Fixed Rate Foreclosure Fee, the Firm seeks reimbursement

for the actual and necessary expenses incurred in foreclosing upon the property. The actual and necessary expenses the Firm anticipates to incur for each foreclosure matter are:

- Title examination - $150
- Tax search - $9.50
- Abstracting - $290
- Photocopies - $50 - $150
- Courier/overnight delivery services - $18.50 - $150
- Filing fee, $250 - $325 (this cost varies by county)
- Service of process, $45 - $160, per defendant served
- Post-judgment filing fee, $50
- Recording fees $10 - $30
- Publication, $80 - $600 (depending on the county and the number of times publishing – each case requires publishing a minimum of one time)
- Guardian Ad Litem/Administrator Ad Litem/Attorney Ad Litem Fee, $400 - $1,500 (required in approximately 10 to 20% of cases filed)

19.    In the event that the foreclosure becomes a contested matter (a "Contested Foreclosure Matter"), the Firm is further compensated on an hourly basis for the time expended in prosecuting the foreclosure matter and obtaining judgment against the mortgagor (the "Contested Foreclosure Compensation").    In addition to the Contested Foreclosure Compensation, the Firm seeks reimbursement for the actual and necessary expenses incurred prosecuting the Contested Foreclosure Matter and obtaining judgment.

a.    The current fees and expenses charged by the Firm with respect to a Contested Foreclosure Matter are:

- Senior Partners - $350 - $500 per hour
- Junior Partners - $250 - $325 per hour
- Associates - $185 - $225 per hour

Expenses vary, as with any contested litigation, and significant variables include:

- Travel expenses - $1,000 to $5,000
- Court reporter fees - $45 - $800, depending upon whether a transcript is ordered

7

The fees and expenses set forth above are subject to periodic adjustments to reflect economic and other conditions.

20.    The Debtors seek approval of the Fee Structure pursuant to 11 U.S.C. § 328(a). Section 328(a) provides, in relevant part, that a debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment including . . . on a fixed or percentage fee basis." 11 U.S.C. § 328(a).  The Fixed Rate Foreclosure Fee charged by the Firm for each foreclosure file is a reasonable fee, especially when taken in light of the related costs and expenses required for each foreclosure.    Additionally, the hourly rates for attorneys and legal assistants requested as Contested Foreclosure Compensation represent reasonable fees and are consistent with the fees provided to other legal professionals in this case.

21.    Notwithstanding the approval of the Fee Structure requested herein, all of the Firm's fees and expenses in these Chapter 11 cases will be subject to the approval of the Court upon proper application by Adorno & Yoss in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Rule 2016-2, the fee and expense guidelines established by the United States Trustee and any other applicable requirements.

22.    In accordance with Local Rule 2016-2(g), the Debtors also seek a waiver of Local Rule 2016-2(d) with respect to submission of detailed time entries for the Fixed Rate Foreclosure Fee.  The Firm does not keep detailed time entries in the ordinary course of its business for any matters covered by the Fixed Rate Foreclosure Fee, and as such, the Debtors request that the Court waive the requirements of Local Rule 2016-2(d) with respect to the activities covered by the Fixed Rate Foreclosure Fee.  In lieu of detailed time entries, the Debtors propose that the Firm list the foreclosure matters subject to the Fixed Rate Foreclosure Fee during the application

period. By this Application, the Debtors do not seek a waiver as to the activities compensated as Contested Foreclosure Compensation, and the Firm will provide detailed time entries in accordance with Local Rule 2016-2(d) for any Contested Foreclosure Compensation requested.

## C.    Services To Be Provided

23.    The professional services that Adorno & Yoss will render to the Debtors include, but shall not be limited to:  representation related to the collection and foreclosure of residential mortgage loans which are being serviced by the Debtors.  Such services are generally limited to the judicial foreclosure process, however, collateral services may be rendered in support of that function, including, but not limited to, representation in bankruptcy proceedings filed by debtors, who are defendants in a judicial foreclosure proceeding, and involvement in government proceedings, *e.g.* code enforcement matters, forfeiture cases, and other litigation that may impact upon defendants in foreclosure or the subject collateral being foreclosed.

## D.    *Nunc Pro Tunc* Retention

24.    The Debtors filed a motion with this court to approve the retention of certain Ordinary Course Professionals (the "OCP Motion").  Adorno & Yoss was included on Exhibit B of the OCP Motion.

25.    Pursuant to an order entered by this court on September 4, 2007, the Debtor was authorized to retain the professionals indicated in the OCP Motion, including Adorno & Yoss, *nunc pro tunc* to the Petition Date (the "OCP Retention Order").[3]

26.    Since the petition date, Adorno & Yoss has continued to diligently work post-petition for the benefit of the estate.

---

[3] The affidavit annexed hereto as Exhibit A is submitted to fulfill the requirement of an affidavit as provided in the Order governing ordinary course professionals signed September 7, 2007 in addition to being a part of this Application [Docket No. 643].

066585.1001

**PRIOR REQUEST**

31.    As set forth above, Adorno & Yoss has previously been approved by this court as an Ordinary Course Professional in this Case.  The fact that the Firm will regularly and consistently exceed the $75,000 limit on monthly fees for professionals ordered by the court necessitated the filing of this Application.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, (i) authorizing the retention and employment of Adorno & Yoss pursuant to the terms of the Application effective, *nunc pro tunc* to the Petition Date; (ii) granting a partial waiver to Local Rule 2016-2(d); and (iii) grant the Debtors such other and further relief as is just and proper.

Wilmington, Delaware
October 5 , 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Travis Turner*

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
Travis N. Turner (No. 4926)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Attorneys for the Debtors and Debtors-in-Possession

11

E.    **Disclosure Summary**

27.    As set forth more fully in the Rosenthal Affidavit, the Firm does not have any interest adverse to the Debtors or their estates with respect to the matters on which the Firm is being engaged.

28.    The Firm is currently owed prepetition attorneys' fees and costs in the approximate amount of $220,000, of which approximately $115,000 represents attorneys' fees and approximately $105,000 represents costs advanced, all of which are based upon invoices dated on or before August 5, 2007.

29.    The Debtors have not provided the Firm with a retainer fee, however, a check in the amount of $316,487.54 was received from AHM Servicing. Ostensibly, the check was sent to pay outstanding invoices, without distinguishing as to whether the invoices were pre- or postpetition. The check was deposited into trust, to be held pending further Order of the Court. Another check, in the amount of $10,900, was received from AHM Servicing, which also appears to be for both the pre-and postpetition fees and costs, relating to services rendered in connection with bankruptcies filed by mortgagors during the foreclosure process, which is also being placed into trust, pending further direction from the Court.

**NOTICE**

30.    Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Agent for the Debtors' postpetition lender; (v) the Securities and Exchange Commission, and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

10

## **EXHIBIT A**

**Rosenthal Affidavit**

DB02:6251701.3

066585.1001

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
AMERICAN HOME MORTGAGE                                     :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]         :
                                                           :    Jointly Administered
                                                           :
                          Debtors.                         :
---------------------------------------------------------- x

**AFFIDAVIT OF ALAN ROSENTHAL IN SUPPORT OF APPLICATION FOR
ORDER PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 2014 APPROVING THE RETENTION AND
EMPLOYMENT OF ADORNO & YOSS LLP AS FORECLOSURE
PROFESSIONALS FOR THE DEBTORS
*NUNC PRO TUNC* TO THE PETITION DATE AND PARTIAL WAIVER OF
THE INFORMATION REQUIREMENT OF LOCAL RULE 2016-2**

Alan Rosenthal being duly sworn, deposes and says:

1.      I am an attorney at Adorno & Yoss LLP ("Adorno & Yoss" or the "Firm"), 2525 Ponce de Leon Boulevard, Suite 400, Miami, Florida 33134.  This affidavit is submitted in support of the Application for Order Pursuant to Section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Adorno & Yoss as Foreclosure Professionals for the Debtors, *Nunc Pro Tunc* to the Petition Date and Partial Waiver of the Information Requirement of Local Rule 2016-2 (the "Application").

2.      Adorno & Yoss maintains offices in 10 states and three countries and employs approximately 230 attorneys.  The Firm's practice is diversified, and principal clients include

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

financial institutions and commercial corporations, which are generally considered creditors, equity holders, or other parties in interest in the Debtors' pending chapter 11 cases, or otherwise to have interest in these cases.

3.    In preparing this affidavit, Adorno & Yoss has searched its database to determine whether they or any affiliate had any relationships with the following (collectively, the "Interested Parties"):

   a)  The Debtors;

   b)  The Debtors' non-debtor affiliates and client affiliates;

   c)  Current and former officers and directors of the Debtors;

   d)  Significant shareholders of the Debtors;

   e)  The largest unsecured creditors as provided by the Debtors;

   f)  The warehouse lenders and

   g)  various other parties-in-interest, as identified by the Debtors.

### Adorno & Yoss' Prepetition Relationship with the Debtors

4.    Adorno & Yoss represented the Debtors, notably American Home Mortgage Servicing, Inc., as counsel prosecuting judicial foreclosures in the state of Florida from February, 2005 to the petition date.  Adorno & Yoss has performed work for the Debtors as professionals conducting judicial foreclosures and related representation, in the ordinary course, prepetition and currently.

### Adorno & Yoss' Relationship with Non-Debtor Interested Parties

5.    Adorno & Yoss has also represented the following entities:  American Home Securities, LLC; American Home Bank; American Home Mortgage Securities, LLC; American Home Mortgage Assets, LLC; American Home Escrow, LLC; American Home Mortgage V,

LLC; Deutsche Bank; JPMorgan Chase Bank, NA; Countrywide Capital; Bank of America, N.A.; Citigroup; Wells Fargo Bank, N.A.; SunTrust Asset Funding, LLC; Citigroup Global Markets Realty Corp.; Wells Fargo; EMC; Lehman Brothers, Inc.; HSBC Bank; UBS; Lehman Brothers Special Financing, Inc.; Washington Mutual Bank, FA; Indymac, F.S.B.; GMAC; Royal Bank of Scotland, PLC; ZC Sterling Corporation; American Express; Bear Stearns; UBS Real Estate Securities; AT&T; AT&T Corp.; Bank of New York; CB Richard Ellis on behalf of Cascade II/Principal Life Insurance Company; Citibank; Citigroup Global; Fannie Mae; Federal Home Loan Mortgage Corp.; First American Bank; Janney Montgomery Scott, LLC; Merrill Lynch Pierce Fenner & Smith, Inc.; Merrill Lynch Bank USA; Sovereign Bank; SunTrust Robinson Humphrey Funding, LLC; Wachovia Bank, N.A.; Washington Mutual; and Zurich American Insurance Company. Additionally, a search of the computerized database for parties revealed the following persons or entities to be neutral parties in pending or past transactions and/or litigation being handled by the Firm: Impac Funding Corporation; AON Consulting; and Fidelity Mortgage Affiliates. A search of the conflict database maintained by Adorno & Yoss has revealed that the following entities are or have been adverse to an interest represented by the Firm: Goldman Sachs Asset Management, LP; Credit Suisse First Boston Mortgage Capital, LLC; Morgan Stanley; Nomura Credit & Capital, Inc.; Greenwich Capital Financial Products, Inc.; Lehman Commercial Paper, Inc.; Luminent Mtg (Barclays); Morgan Stanley Capital Services, Inc.; Credit Suisse First Boston; Triad Guaranty Insurance Corporation; ABN AMBRO Bank, N.V.; ABN AMBRO Bank; Barclays Bank PLC; Barclays Capital; Greenwich Capital Markets, Inc.; and Transwestern. The conflict database of Adorno & Yoss has noted the appearance of the following entities/persons of "unknown" adversity: Bear, Stearns & Co., Inc.; Banc of America Securities, LLC; Wilmington Trust Co.; DeLage

Financial Services, Inc.; and Societe Generale.  These engagements involve representing the identified entities/financial institutions in a broad range of commercial dealings.

6.      Adorno & Yoss has not, does not, and will not represent any of the entities set forth in paragraph 5, *supra*, in matters directly related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases.

7.      Adorno & Yoss  has not, does not, and will not represent any entity or any respective affiliates or subsidiaries thereof, in matters directly related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases.  Adorno & Yoss may in the future represent entities that are claimants of, or interest holders in, the Debtors in matters totally unrelated to the Debtors.

8.      As a matter of retention and disclosure policy, Adorno & Yoss will continue to apply its Disclosure Procedures as additional information concerning entities having a material connection to the Debtors is developed and will file appropriate supplemental disclosures with this Court, if necessary.

9.      Adorno & Yoss is continuing to review the Debtors' list of creditors.  To the extent that I become aware of any additional connections or relationships that may be relevant to Adorno & Yoss' services rendered on behalf of the Debtors, I will file a supplemental affidavit.

## Adorno & Yoss' Rates and Billing Practices

10.      Adorno & Yoss has not executed a post-petition Engagement Letter with the Debtors.  Instead, Adorno & Yoss bills the Debtors on a periodic basis, after services are performed.

11.      Adorno & Yoss will seek approval of payment of compensation and reimbursement of actual, necessary expenses and other charges upon the filing of appropriate

applications for allowance of interim and/or final compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule and 2016-2, and Orders of this Court. The Firm employs a two-tier fee structure (the "Fee Structure") for its performance of foreclosure services. For each mortgage that the Firm institutes foreclosure proceedings, the Firm charges a fixed rate fee (the "Fixed Rate Foreclosure Fee") of twelve hundred dollars ($1,200) to perform each foreclosure and eighteen hundred dollars ($1,800) to simultaneously foreclose two mortgages, *i.e.* a first and second mortgage. In addition, to the Fixed Rate Foreclosure Fee, the Firm seeks reimbursement for the actual and necessary expenses incurred in foreclosing upon the property. The actual and necessary expenses the Firm anticipates to incur for each foreclosure matter are:

- Title examination - $150
- Tax search - $9.50
- Abstracting - $290
- Photocopies - $50 - $150
- Courier/overnight expenses - $18.50 - $150
- Filing fee, $250 - $325 (this cost varies by county)
- Service of process, $45 - $160, per defendant served
- Post-judgment filing fee, $50
- Recording fees $10 - $30
- Publication, $80 - $600 (depending on the county and the number of times publishing – each case requires publishing a minimum of one time)
- Guardian Ad Litem/Administrator Ad Litem/Attorney Ad Litem Fee, $400 - $1,500 (required in approximately 10 to 20% of cases filed).

12.    In the event that the foreclosure becomes a contested matter (a "Contested Foreclosure Matter"), the Firm seeks additional compensation, billed on an hourly basis, for the time expended in prosecuting the foreclosure matter and obtaining judgment against the mortgagor (the "Contested Foreclosure Compensation"). In addition to the Contested Foreclosure Compensation, the Firm seeks reimbursement for the actual and necessary expenses

incurred prosecuting the Contested Foreclosure Matter and obtaining judgment. The current fees and expenses charged by the Firm with respect to a Contested Foreclosure Matter are:

The following represents the range of billing for contested matters:

- Senior Partners - $350 - $500 per hour
- Junior Partners - $250 - $325 per hour
- Associates - $185 to $225 per hour

Expenses vary, as with any contested litigation, and significant variables include:

- Travel expenses - $1,000 to $5,000
- Court reporter fees - $45 - $800, depending upon whether a transcript is ordered

The fees and expenses set forth above are subject to periodic adjustments to reflect economic and other conditions.

13.    In support of the request to waive Local Rule 2016-2(d), I affirm that Adorno & Yoss, in the ordinary course of its business, does not keep detailed time entries with respect to the activities covered by the Fixed Rate Foreclosure Fee.

14.    The Debtors owe Adorno & Yoss approximately $220,000 for unpaid services rendered and expenses advanced on behalf of the Debtors, prepetition.

15.    The Debtors have not provided the Firm with a retainer fee, however, a check in the amount of $316,487.54 was received from AHM Servicing. Ostensibly, the check was sent to pay outstanding invoices, without distinguishing as to whether the invoices were pre- or postpetition. The check was deposited into trust, to be held pending further Order of the Court. Another check, in the amount of $10,900, was received from AHM Servicing, which also appears to be for both the pre-and postpetition fees and costs, relating to bankruptcies filed by mortgagors during the foreclosure process, which is also being placed into trust, pending further direction from the Court.

16.    No promises have been received by the Firm or by any officer or employee thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.  The Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with these chapter 11 cases.

WHEREFORE, pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.


Alan Rosenthal

Sworn to before me this 5th day of October, ~~September~~, 2007.

_____
Notary Public
My Commission Expires:_____

DAVID ROGER
MY COMMISSION # DD 363110
EXPIRES: January 14, 2009
Bonded Thru Budget Notary Services

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                        :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]           :
                                                             :    Jointly Administered
                                                             :
                              Debtors.                        :
------------------------------------------------------------ x

## STATEMENT PURSUANT TO RULE 2014 OF THE
## FEDERAL RULES OF BANKRUPTCY PROCEDURES
## AND SECTION 329 OF THE BANKRUPTCY CODE

1.      Adorno & Yoss LLP ("Adorno & Yoss" or the "Firm"), pursuant to Rule 2014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), section 329 of title 11 of

the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), and Rule 2014 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), states that the undersigned is a foreclosure professional

seeking retention by the Court in the cases of the above-captioned debtors and debtors in

possession (the "Debtors").

2.      Compensation agreed to be paid by the Debtors to Adorno & Yoss is to be for

services rendered in connection with these cases. The Debtors agreed to pay Adorno & Yoss for

the services rendered or to be rendered by its various foreclosure professionals. The Debtors

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage
Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance,
Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM
Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York
corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability
company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great
Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd.,
Suite 200, Irving, Texas 75063.

have also agreed to reimburse Adorno & Yoss for its actual and necessary expenses incurred in connection with these cases.

3.     Adorno & Yoss intends to apply to the Court for payment of compensation and reimbursement of expenses  and payment of other charges in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, the District of Delaware Local Bankruptcy Rules, and orders of this Court.

4.     The Debtors owe Adorno & Yoss approximately $220,000 for unpaid services rendered and expenses advanced on behalf of the Debtors, pre-petition.

5.     The services to be rendered include all those services set forth in the Application for Order Pursuant to Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Adorno & Yoss as Foreclosure Professionals for the Debtors, *Nunc Pro Tunc* to the Petition Date.

6.     Adorno & Yoss further states that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the members, employees, or shareholders of Adorno & Yoss, or (b) any compensation another person or party has received or may receive.

Dated:     October *5*, 2007

_____
Alan Rosenthal
Adorno & Yoss LLP