```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                              .    Chapter 11
                                    .
AMERICAN HOME MORTGAGE              .    Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware          .    (Jointly Administered)
Corporation, et al.,                .
                                    .    September 20, 2007
                                    .    4:50 p.m.
            Debtors.                .    (Wilmington)
                                    .
```

                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
              UNITED STATES BANKRUPTCY COURT JUDGE

          Proceedings recorded by electronic sound recording;
              transcript produced by transcription service.

1          THE CLERK: All rise.

2          THE COURT: Please be seated.

3          MR. BRADY: Good afternoon, Your Honor.

4          THE COURT: Good afternoon, Mr. Brady.

5          MR. BRADY: Robert Brady on behalf of American Home
6  Mortgage Holdings, Inc., *et al*.  I'd like to begin by
7  thanking the Court for providing us with some extra time this
8  afternoon to try to resolve some of the matters on today's
9  calendar.  I am pleased to report matter no. 1, the motion of
10 the United States for turnover and declaring that Ginnie Mae
11 is not subject to the automatic stay, we have reached an
12 agreement in principle, and we are awaiting final
13 documentation to come over.  What we would propose, Your
14 Honor, is handing up what is close to a final draft of the
15 stipulation and walking the Court through its terms.  This
16 was the subject of a negotiating session over the last few
17 days, and all day today, that included the Committee and Bank
18 of America.  We would walk the Court through the terms, and
19 then when the final version comes over submit that.  And we
20 will be requesting that the Court enter an order approving
21 the stipulation.  And I can explain to the Court why we think
22 that's appropriate in light of the relief that was sought
23 today, and the resolution of that motion.

24         THE COURT: All right.

25         MR. BRADY: If I may approach with a near final

1   version of our settlement.

2           THE COURT: Okay.  Thank you.

3           MR. BRADY: Your Honor, by their motion today,

4   Ginnie Mae sought to compel the Debtors to turn over the

5   servicing files and the servicing aspects that the Debtors

6   conducted with respect to Ginnie Mae loans, and a declaration

7   that Ginnie Mae was not subject to the automatic stay.  We

8   have been in negotiations with Ginnie Mae for several weeks

9   to try to resolve these issues, and we believe we've now been

10  successful in reaching a resolution.  The stipulation, Your

11  Honor, provides for a relatively short marketing period where

12  the Debtors may market the Ginnie Mae servicing business to

13  qualified Ginnie Mae servicer issuers who are in good

14  standing.  It requires that we obtain a binding contract for

15  a sale by October 9th, and that that sale close, and a

16  transition of the servicing occur, by November 1.  The

17  Debtors have a bid in hand that would meet those deadlines.

18  And we hope to obtain, or we will continue to market and

19  attempt to solicit other bids with respect to that,

20  recognizing that we have a fairly compressed time frame and

21  any purchaser must be Ginnie Mae approved and in good

22  standing.  The agreement provides that the sale contract must

23  make Ginnie Mae whole.  The proceeds must be sufficient to

24  pay Ginnie Mae's fees and expenses, and any advances they

25  have done.  We outline that in the stipulation of the types

1   of fees and expenses, and advances, Ginnie Mae may have done

2   in the process.  And that money would come off the top.  In

3   the meantime, Ginnie Mae will allow - -

4           THE COURT: Is that in the nature of cure?

5           MR. BRADY: It's in the nature of their, of a

6   resolution of their position that this terminated pre-

7   petition, and the Debtor has no rights whatsoever to continue

8   servicing or to any proceeds from any - -

9           THE COURT: So you would be holding their funds in

10  trust, in effect.  It's not property of the estate would be

11  their position.

12          MR. BRADY: Would be their position.  We will,

13  Ginnie Mae will allow the Debtor to service the portfolio, as

14  it did pre-petition.  We've built in a process for cure if

15  Ginnie Mae believes there's any material defaults in our

16  servicing obligations.  We made it clear we'll provide Ginnie

17  Mae with access to information, allow them to monitor,

18  onsite, the servicing.  We've agreed to complete reports that

19  were typically done in the ordinary course.  If those

20  deadlines are not met, Your Honor, if the Debtor does not

21  have a binding, executed agreement by October 9th, or the sale

22  does not close and the transition occur by November 1, absent

23  an extension from Ginnie Mae, the Debtors have agreed not to

24  contest the turnover motion.  In other words, the Debtors

25  would not contest that this is Ginnie Mae's property.  That

1  it would go back to Ginnie Mae, and the Debtor would
2  cooperate in that.  And the Debtors would not contest whether
3  the stay applies to Ginnie Mae.  If that occurs, if the
4  servicing goes back to Ginnie Mae, the parties have reserved
5  all rights to assert claims against each other.  To the
6  extent that a sale occurs, obviously Ginnie Mae will be made
7  whole.  They would still have a right to file a proof of
8  claim if they feel, for some reason, they were not made whole
9  out of the transaction.  But it is expressly a conditioned
10 precedent that the sale transaction make them whole in order
11 for the Debtors to close.  We expect, based on the bid we
12 have in hand, that the estate will achieve value in excess of
13 what Ginnie Mae is owed.  So that value would come to the
14 estate.  The sale, Your Honor, we would contemplate coming
15 back to Court on.  When a buyer is selected from the
16 marketing process, we would file a motion, put it out on
17 notice, and have it approved within the confines of our
18 agreement, so that closing and transition could occur by
19 November 1.  That is basically the deal.  Again, we worked
20 very hard with Ginnie Mae over the last several weeks, in
21 particular the last several days.  We did have a session
22 today with the Committee and Bank of America, and they are
23 both represented today.  I'm sure we'll have some comments.
24 A clean up version of this stipulation is on its way over.
25 But given that today, at a contested hearing, Ginnie Mae

1  could have succeeded and obtained its servicing files back,
2  we believe an agreement that provides a short period of time
3  to let the Debtors attempt to achieve value for the estate,
4  but that if that is not successful in effect grants Ginnie
5  Mae the relief they seek, which is the servicing back, it is
6  appropriate for the Court to enter that today, since parties
7  were on notice that these issues would be heard before Your
8  Honor today.
9            THE COURT: Okay.
10           MR. BRADY: With that, I will yield the podium to
11 the Committee.
12           THE COURT: All right.
13           MS. FATELL: Good afternoon, Your Honor.  Bonnie
14 Fatell from Blank Rome on behalf of the Committee.  Counsel
15 has stated correctly, we have been involved in the
16 negotiations.  I know the Debtor worked hard to try and bring
17 a buyer to the table.  At the very last minute they succeeded
18 in bringing a buyer that was acceptable to, to Ginnie Mae.
19 At least for the moment.  And we're hopeful that that will
20 close, and that the deadlines will be met, and that there
21 will be value above and beyond what's owed to Ginnie Mae.
22           THE COURT: Thank you.  Anyone else?
23           MR. TALMADGE: Yes, Your Honor.  Scott Talmadge from
24 Kaye Scholer on behalf of Bank of America.  Your Honor, our
25 concern, of course, is that what happens with that value in

1  excess.  And while that's not in the stipulation, we of

2  course believe, and would assert, that any proceeds in excess

3  of that which is necessary to pay Ginnie Mae, has to be paid

4  to Bank of America as administrative agent in accordance with

5  the cash collateral orders that have been entered into this

6  case.  Which would be, I presume, the subject of the sale

7  order when we get there.

8             THE COURT: All right.  But you, your client

9  consents to the payment of Ginnie Mae.

10            MR. TALMADGE: I have not - - I have not spoken to

11  my client about this.  This has happened in the last hour,

12  Your Honor.  So I have not, don't have client consent to this

13  stipulation.  I just haven't been able to speak to them about

14  it.

15            THE COURT: Do you have - -

16            MR. TALMADGE: I can try to speak to them if we

17  could take a break.  But I do not have - - if you're asking

18  me if I have client consent, I cannot make that

19  representation to the Court.

20            THE COURT: Do you have, do you object to me

21  approving the stipulation?

22            MR. TALMADGE: I can tell you I don't have client

23  consent.  Is, I, that's all I can say, Your Honor.

24            THE COURT: Well - -

25            MR. TALMADGE: I can try - -

1              THE COURT: Okay.

2              MR. TALMADGE: - - in the next five minutes. But I

3    - -

4              THE COURT: I understand.

5              MR. TALMADGE: - - that's where we stand.

6              THE COURT: Okay. Anyone else? All right. Do you

7    want me to - - I need to read it, so I don't know if you want

8    me to read it now, in front of everybody, or when you're done

9    with the rest of the agenda while you're waiting for the

10   other one to come over, we could probably take a break.

11             MR. BRADY: Well actually, Your Honor, I believe for

12   the Freddie Mac matter, we were going to ask Your Honor for a

13   short recess to try to pin down - -

14             THE COURT: All right.

15             MR. BRADY: - - some remaining issues on that. So

16   this may be an appropriate time, if Your Honor would like to

17   take a recess to read the Ginnie Mae settlement, we can try

18   to pin down Freddie Mac.

19             THE COURT: All right. Any objection? It's been a

20   tiring and lengthy five minutes Mr. Brady, I think a recess

21   would be appropriate so the Court can rest and recover for

22   the remainder of the hearing. Hearing is - - we're in

23   recess.

24         (Whereupon at 5:02 p.m. a recess was taken in the

25   hearing in this matter.)

1          (Whereupon at 5:44 p.m. the hearing in this matter

2     reconvened and the following proceedings were had:)

3              THE CLERK: All rise.

4              THE COURT: Please be seated.

5              MR. BRADY: Good afternoon, Your Honor.  Thank you

6     again for another recess as we completed the Ginnie Mae

7     stipulation.  I do have a clean copy of what is now the final

8     executed version.

9              THE COURT: All right.  You may approach.  Does

10    anybody have any further comment or statement in connection

11    with the Ginnie Mae stipulation?

12             MR. BRADY: I could just very - -

13             THE COURT: Yes.  Go ahead.

14             MR. BRADY: I could just very quickly walk Your

15    Honor through the changes from the version you saw earlier.

16    In paragraph 2, on what is page 3, the estimates of Ginnie

17    Mae's costs and expenses as of September 19 is 1.65 million.

18    Paragraph 3, the wording was changed slightly.  Originally it

19    said the sale contract shall not require that Ginnie Mae

20    reimburse any advances of the Debtors, etcetera.  It now says

21    the sale contract shall explicitly recognize that Ginnie Mae

22    will not reimburse any advances, etcetera.  There's a new

23    sentence at the end of paragraph 3 that is a reservation of

24    rights with respect to the T&I payments made by AHM Servicing

25    in August, which is approximately $600 thousand.  In

1   paragraph 4, the last sentence, it previously said the sale
2   contract may not be consummated prior to Ginnie Mae approval.
3   It now says the sale may not be consummated, because we may
4   not have Ginnie Mae approval before the sale agreement is
5   actually executed.  So that was a clarification of a
6   potential ambiguity.
7           THE COURT: Okay.
8           MR. BRADY: Paragraph 5 had talked about non-
9   material defaults before, default's a very specific term in
10  the Ginnie Mae agreements, so we changed it to violations.
11  And with that, Your Honor, no other changes were made.  We're
12  aware of no objections to the entry of this, and we would ask
13  that the Court enter the stipulation.  I'm happy to answer
14  any questions Your Honor may have.
15          THE COURT: I have no questions.  I'll approve the
16  stipulation.  I think it's appropriate to approve it on this
17  notice, because the parties were made aware of the substance
18  of Ginnie Mae's request, and I think that this is, this
19  stipulation is reasonably related to that in that it
20  basically provides for a mechanism to perhaps delay the entry
21  of the relief that was requested by Ginnie Mae.  And if it
22  happens, it happens.  It will be subject to a further Court
23  order.  And if it doesn't happen, then Ginnie Mae will simply
24  get the relief they were prepared to ask for and proceed with
25  today.  So I'm, I'll approve the stipulation.

1          MR. BRADY: Thank you, Your Honor.  Your Honor, I'm

2    also pleased to report, with respect to matter 3 on the

3    agenda, that we were able to iron out some last minute

4    issues, and we have that resolved as well.  I had a very

5    thorough presentation on this, Your Honor, but given that

6    it's ten of six, with Your Honor's permission, I will get

7    down to the basics of this deal.

8          THE COURT: All right.

9          MR. BRADY: It is the product of several weeks of

10   negotiation between the Debtors, BofA, and Freddie Mac.

11   There are two separate stipulations.  From the Debtors'

12   standpoint, they're interrelated.  This structure is very

13   similar to structures and settlements approved by Judge Walsh

14   in the Mortgage Lenders Network case, and by Judge Carey,

15   just this morning, in the Home Bank case.  Basically, Your

16   Honor, it provides that the Debtors will transfer servicing

17   on an interim basis over to Bank of America.  It provides

18   various deadlines for the transfer of electronic data and

19   hard files so that Bank of America can assume, on an interim

20   basis, the obligations of servicer of the Freddie Mac

21   portfolio.  Some of the deadlines have moved slightly from

22   what was in the stipulation.  We will be reading into the

23   record some revised language to the stipulation, but

24   basically, Your Honor, the Debtor is obligated to get the

25   electronic files to Bank of America by September 25th, and

1  Bank of America is obligated to start servicing on an interim
2  basis as of October 5th, to the extent that they get the files
3  and information necessary to actually begin that servicing.
4  Interim servicing stipulation provides four benefits to the
5  estate.  Upon execution, Freddie Mac has agreed to reimburse
6  the Debtors from the T&I escrows for all amounts paid by the
7  Debtors to borrowers as a return of their escrow balances,
8  because the borrowers had paid their loans in full.  So that
9  money comes back to the estate.  The stipulation provides a
10 procedure to get the T&I payments flowing again.  As a result
11 of the dispute this week by Freddie Mac of the T&I account,
12 and the Debtors' withholding of additional funds from the T&I
13 accounts, there's been a gap in payment of T&I payments.
14 This gets the money back out the door for the benefit of the
15 borrowers.  Freddie Mac has agreed to assume all liabilities
16 with respect to any loss incurred by the Debtors arising out
17 of pecuniary losses of the borrowers of Freddie Mac loans
18 that were serviced by the Debtors as a result of Freddie
19 Mac's sweep of the T&I escrows and the Debtors' failure to
20 make timely T&I payments.  So Freddie Mac is picking up any
21 potential liabilities as a result in this gap in the funding
22 of T&I payments.  And upon completion of the interim
23 electronic servicing transfer, now set for October 5th,
24 Freddie Mac will reimburse the Debtors for any and all
25 advances and fees made by the Debtors on behalf of Freddie

1   Mac loans since the petition date.  So the Debtors will get
2   back approximately $700 thousand in advances, and pay their
3   servicing fees for that period.  So those are the four
4   benefits to the estate of the interim servicing agreement.
5   Once servicing is transferred to BofA on an interim basis,
6   the Debtors and Freddie Mac will jointly market this
7   portfolio and the servicing rights.  They will retain a
8   mutually agreeable broker and conduct an auction.  From the,
9   from the sale proceeds, Freddie Mac will be paid first.
10  That's acceptable to BofA in this case because of the
11  acknowledgment agreement, the pre-petition pledge of the
12  Debtors servicing rights to Bank of America.  So Freddie Mac
13  will be paid first.  That's estimated to be about 2.5
14  million, that is 500 thousand in costs and expenses and
15  approximately 2 million in repurchase obligations.  The
16  Debtors will get those loans back, so for payment of 2
17  million we'll actually get the underlying loans back, and
18  they'll have some value, and we'll be able to recover some of
19  that 2 million back for the estate.  Any proceeds over the
20  approximately 2.5 million that would go to Freddie Mac first
21  will come to the estate, will be treated in accordance with
22  the cash collateral order that's in place in the case.  Bank
23  of America has reserved its rights under the acknowledgment
24  agreement.  We've provided, in the event that Bank of America
25  becomes permanent servicer through a means other than the

1    auction, the Debtors' rights are reserved with regard to any
2    consideration that may be attributable to that.  The
3    agreement provides for mutual releases upon the closing of
4    the auction sale.  Obviously, Your Honor, here the benefit of
5    the sales stipulation is the opportunity for value.  Freddie
6    Mac takes the position that it effectively terminated pre-
7    petition.  In fact, Freddie Mac is the only party that
8    obtained a TRO from a Federal Court in Texas prior to the
9    petition date, that found a likelihood of success on the
10   merits that it had terminated.  If Freddie Mac was right,
11   that it had effectively terminated, the estate would have no
12   interest in the servicing, and would not be entitled to any
13   reimbursement or proceeds.  This stipulation provides a
14   mechanism for a joint marketing process where, after payment
15   to Freddie Mac, the estate should realize some value.  And
16   again, that would be treated in accordance with the cash
17   collateral order.  With that, Your Honor, we did get this
18   filed on Tuesday.  We did send notice by fax and hand
19   delivery.  Objections were due, per Your Honor's order
20   shortening notice for the hearing today, and we're not aware
21   of any objections.  My colleagues here have been working hard
22   on a rather important but short revision to the interim
23   servicing stipulation, so if I may yield to them, they could
24   put that on the record.
25            THE COURT: All right.

1            MR. TALMADGE: Good evening, again, Your Honor.
2   Scott Talmadge from Kaye Scholer on behalf of Bank of
3   America.  And I'm joined here by counsel for Freddie Mac.
4            MR. FALGOWSKI: Good afternoon, Your Honor.  Cory
5   Falgowski on behalf of Freddie Mac.
6            MR. TALMADGE: Your Honor, one of the provisions of
7   the stipulation on interim servicing deals with the transfer
8   of electronic files from the Debtors to Bank of America.  And
9   there was a bit of a gap that dealt with how Bank of America
10  was going to take that data and then get up to speed to then
11  be the interim servicer.  So we've now provided for two
12  things in the stipulation.  First, the transfer by the Debtor
13  to Bank of America of the electronic data was originally set,
14  in paragraph 1 of the stipulation, to occur on September 21.
15  And this appears on page 5, at the top of page 5.
16           THE COURT: I need a, I'm going to need a version.
17           MR. TALMADGE: Oh, I'm sorry.  I, I - -
18           THE COURT: Is it the same one that you filed?
19           MR. TALMADGE: Yes.  This is the exact same one that
20  was filed.
21           THE COURT: All right.
22           MR. TALMADGE: But we have to make sure - - there's
23  two stips, Your Honor and the wording on the caption is very
24  similar. But in any - -
25           THE COURT: Somebody give me something to look at.

1   Or tell me where it is.

2            MR. TALMADGE: Yeah.  Here.  You know what, Your
3   Honor - -

4            THE COURT: If you're going to reference a number.

5            MR. TALMADGE: May I approach, Your Honor?

6            THE COURT: Yes.

7            MR. TALMADGE: I'm going to give you my copy
8   (microphone not recording), I have it written down on another
9   piece of paper.

10           THE COURT: All right.  Very well.  Thank you.

11           MR. TALMADGE: So the first change, Your Honor, that
12  I was referencing was that the date for the electronic, the
13  transfer of the electronic files from the Debtors to Bank of
14  America has been moved from September 21 until September 25
15  now.  And then we added language - -

16           THE COURT: Where's that change?

17           MR. TALMADGE: It's on page 5, Your Honor.

18           THE COURT: Oh, I see.  I see, you wrote 25.  All
19  right.  I got you.

20           MR. TALMADGE: And then we added language at the top
21  there.  And I hope my handwriting is legible.

22           THE COURT: It's better than Mr. Waite's.

23           MR. TALMADGE: Yes.  But I was here for that
24  hearing, Your Honor, and I don't think counts for much, but
25  thank you.  The language that we added is that "subject to

1    the execution of the interim servicing agreement as defined
2    below" - - and that's defined in paragraph 3, Your Honor - -
3    "BofA will commence interim servicing of the Freddie Mac
4    loans by October 5, 2007, provided that such date will be
5    extended by agreement of Freddie Mac and BofA to the extent
6    that the data files, or other information provided by the
7    Debtors is incomplete or otherwise insufficient to enable
8    BofA to commence such interim servicing."
9            THE COURT: All right.
10           MR. TALMADGE: And that just allows Bank of America
11   - - first it gives Freddie Mac an idea that Bank of America
12   is going to start by a certain date, and it gives Bank of
13   America time to convert the data.  And other than that, Your
14   Honor, there were no other changes.
15           THE COURT: Is that acceptable to Freddie Mac?
16           MR. FALGOWSKI: It is, Your Honor.  And I just
17   wanted to raise one other point.  At some point in late
18   August, it was discovered by Freddie Mac that the Debtors had
19   ceased depositing certain payments into the custodial
20   accounts which related to the Freddie Mac portfolio, and I
21   believe the Debtors were prepared to make a representation on
22   the record that those funds would be deposited into the
23   custodial accounts.
24           MR. BRADY: That is correct, Your Honor.  With this
25   resolution and returning to normalcy, the Debtors will, any

1   funds that they're holding in their clearing house account

2   that should be in a custodial account will be returned there.

3              THE COURT: All right.

4              MR. BRADY: So Your Honor, this is set up for two

5   orders to approve two stipulations.  One is the interim

6   servicing stipulation which has been modified as put on the

7   record.  And the second is the sale stipulation, sale process

8   stipulation, and that has not changed.  And I just handed it

9   to Ms. Fatell to sign, and I will be able to hand that one

10  up.

11             THE COURT: All right.  You want me to sign the one

12  that was just handed to me by Bank of America?

13             MR. BRADY: Your Honor, that is the only

14  interlineated - -

15             THE COURT: All right.

16             MR. BRADY:  - - copy we have, so.

17             THE COURT: Anyone - - take one piece at a time.

18  Would anyone like to be heard in connection with the order

19  approving the stipulation settlement between Bank of America,

20  Freddie Mac, and we'll start with the interim, the one I have

21  in front of me, which is the interim servicing stipulation?

22  Does anyone wish to be heard in connection with that matter?

23  And hearing none, I will review this prior to the hearing.

24  If the changes are acceptable, then I'll approve the

25  stipulation.  If I can find the right docket item number.

1   798.  All right.  Mr. Brady, did any - - excuse me.  Did

2   these, any of these orders need to be docketed today?  Or can

3   they be docketed tomorrow?

4           MR. BRADY: I think your, tomorrow's fine, Your

5   Honor.

6           THE COURT: All right.

7           MR. BRADY: If I may approach with the second?

8           THE COURT: Yes.  And there have been no changes to

9   the second order, correct?

10          MR. BRADY: That's correct, Your Honor.

11          THE COURT: Thank you.  Does anyone wish to be heard

12  in connection with the second order?  All right.  Hearing

13  none I will approve the order on consent.  Without objection.

14  Okay.  Anything further for this evening?

15      (The remainder of the page is intentionally left blank.)

16

17

18

19

20

21

22

23

24

25

1        MR. BRADY: No.  Thank you again, Your Honor, for
2   your time this afternoon.  We're pleased to have these two
3   resolutions in place.
4        THE COURT: My pleasure.  Nothing further, the
5   hearing is adjourned.
6      (Whereupon at 5:59 p.m. the hearing in this matter was
7   concluded for this date.)
8
9
10
11
12
13
14
15
16
17
18        I, Jennifer Ryan Enslen, approved transcriber for
19   the United States Courts, certify that the foregoing is a
20   correct transcript from the electronic sound recording of the
21   proceedings in the above entitled matter.
22
23   _/s/Jennifer Ryan Enslen_                    __10/08/07__
     Jennifer Ryan Enslen
24   43 Bay Boulevard
     Newark, DE 19702
25   (302)836-1905