IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC. *et al.*, | Case No. 07-11047 (CSS) (Jointly Administered) |
| Debtors. | |
| FINANCIAL GUARANTY INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 07-_____ |
| AMERICAN HOME MORTGAGE SERVICING, INC. and AMERICAN HOME MORTGAGE ACCEPTANCE, INC., | |
| Defendants. | |

**COMPLAINT AND REQUEST FOR
DECLARATORY JUDGMENT AND DAMAGES**

Financial Guaranty Insurance Company ("FGIC" or "Plaintiff"), by and through its attorneys, Kutak Rock LLP and Morris, Nichols, Arsht & Tunnell LLP, for its complaint against Defendants American Home Mortgage Servicing, Inc. ("AHM Servicing") and American Home Mortgage Acceptance, Inc. ("AHM Acceptance" and, together with AHM Servicing, "Defendants"), hereby alleges as follows:

Preliminary Statement

This is an action for declaratory judgment and damages, due to the pre-petition termination of Defendants' servicing rights under the HELOC Servicing Agreements described below, and Defendants' failure and refusal to take the actions required by such termination, including, without limitation, transferring in accordance with the HELOC Servicing Agreements

certain records and funds as required to transition the servicing of the HELOC Mortgage Loans described below owned by the Trusts described below.

Specifically, the HELOC Mortgage Loans were previously sold to and are owned by the Trusts. Defendants were retained as contract servicers of the HELOC Mortgage Loans under the HELOC Servicing Agreements. Before the Petition Date, the Defendants defaulted on certain of their obligations under the HELOC Servicing Agreements. As a result, GMAC Mortgage, LLC as successor by merger to GMAC Mortgage Corporation ("GMAC"), at the instruction of FGIC as required by the HELOC Servicing Agreements and pursuant to FGIC's and GMAC's rights under the HELOC Servicing Agreements, properly terminated the servicing rights of Defendants under the HELOC Servicing Agreements. AHM Servicing and AHM Acceptance were immediately replaced as servicer of the HELOC Mortgage Loans upon such termination with GMAC by the terms of the HELOC Servicing Agreements and without any further action. Based on the HELOC Servicing Agreements, Defendants were required to take the following actions, among other actions:

(a)     cooperate in connection with the transition of servicing functions to GMAC as the servicer of the HELOC Mortgage Loans;

(b)     transfer to GMAC all documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans properly and effectively;

(c)     transfer to GMAC all collections on the HELOC Mortgage Loans that are in and that come in to their possession; and

(d)     pay the costs and expenses relating to the transition of servicing.

The Defendants have failed and refused to cooperate with a transition of servicing functions to GMAC as the servicer of the HELOC Mortgage Loans. The Defendants have also failed and refused to transfer to GMAC all documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans properly and effectively. While Defendants have

transferred most of the collections on the HELOC Mortgage Loans to the Indenture Trustees pursuant to the HELOC Servicing Agreements, Defendants have inappropriately diverted certain of the collections on the HELOC Mortgage Loans and have failed and refused to transfer <u>all</u> collections on the HELOC Mortgage Loans in their possession to GMAC as the servicer of the HELOC Mortgage Loans.  Collections on the HELOC Mortgage Loans will continue to come into Defendants' possession as long as they fail to transition servicing and, upon information and belief, Defendants will continue to fail and refuse to transfer <u>all</u> such collections to either GMAC or the Indenture Trustees.  Plaintiff requires an immediate order (i) declaring that Defendants' servicing rights under the HELOC Servicing Agreements were terminated before the Petition Date, (ii) declaring that Defendants cannot transfer any servicing rights under the HELOC Servicing Agreements to any third party (other than GMAC pursuant to the terms of the HELOC Servicing Agreements),[1] (iii) directing Defendants to cooperate with a transition of servicing functions to GMAC as the servicer of the HELOC Mortgage Loans and to transfer to GMAC all documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans properly and effectively; (iv) directing Defendants to restore to the Trusts the collections on the HELOC Mortgage Loans that Defendants have failed and refused to transfer to GMAC or the Indenture Trustees; and (v) directing Defendants to transfer <u>all</u> collections on the HELOC Mortgage Loans in their possession and that come into their possession to GMAC as the servicer of the HELOC Mortgage Loans or the Indenture Trustees.

---

[1] FGIC is permitted, as more fully set forth in Sections 6.01 and 6.02 of the HELOC Servicing Agreements, to direct GMAC to appoint a successor HELOC Servicer other than GMAC.  However, FGIC has not so directed the appointment of any such other successor HELOC Servicer.  Instead, GMAC became and remains the HELOC Servicer by operation of the HELOC Servicing Agreements upon the pre-petition termination of AHM Servicing and AHM Acceptance.

<u>Jurisdiction and Venue</u>

1.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2.      Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409(a).

3.      This adversary proceeding has been commenced in accordance with Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure, and is a core proceeding pursuant to 28 U.S.C. § 157(b).

<u>The Parties</u>

4.      Plaintiff, an insurance company with its principal place of business at 125 Park Avenue, New York, New York 10017, is an insurer of certain securities issued by the Trusts that own the HELOC Mortgage Loans, is an express third party beneficiary under the HELOC Servicing Agreements and holds subrogation rights respecting the insured securities.

5.      American Home Mortgage Servicing, Inc. is a Maryland corporation with its principal place of business at 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

6.      American Home Mortgage Acceptance, Inc. is a Maryland corporation with its principal place of business at 538 Broadhollow Road, Melville, New York 11747.

<u>Background Facts</u>

7.      The Defendants initiated these bankruptcy cases on August 6, 2007 (the "Petition Date") with the filing of their voluntary chapter 11 petitions.

8.      Prior to filing bankruptcy, AHM Servicing and AHM Acceptance were the contract servicers of certain home equity line of credit mortgage loans (the "HELOC Mortgage Loans") under the following HELOC Servicing Agreements:

(i)    HELOC Servicing Agreement dated as of March 23, 2005 among AHM Servicing, GMAC, as back-up servicer, American Home Mortgage Investment Trust 2005-1 (the "2005-1 Trust"), as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as seller;

(ii)    HELOC Servicing Agreement dated as of June 22, 2005 among AHM Servicing, as servicer, GMAC, as back-up servicer, American Home Mortgage Investment Trust 2005-2 (the "2005-2 Trust"), as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as seller; and

(iii)    HELOC Servicing Agreement dated as of October 7, 2005 among AHM Acceptance, as servicer, GMAC, as back-up servicer, American Home Mortgage Investment Trust 2005-4A (the "2005-4A Trust" and, together with the 2005-1 Trust and 2005-2 Trust, the "Trusts"), as issuer, U.S. Bank National Association, as the Indenture Trustee and AHM Acceptance, as seller,

(collectively, the "HELOC Servicing Agreements"). AHM Servicing and AHM Acceptance also entered into a HELOC Subservicing Agreement dated as of October 2, 2005 among the 2005-A4 Trust, AHM Servicing, AHM Acceptance and U.S. Bank National Association, as Indenture Trustee (the "HELOC Subservicing Agreement") relating to the HELOC Servicing Agreement described in clause (iii) above.[2] A true and correct copy of each HELOC Servicing Agreement and the HELOC Subservicing Agreement is attached hereto as Exhibit A-1, Exhibit A-2, Exhibit A-3 and Exhibit A-4, respectively.[3]

9.    The HELOC Servicing Agreements were entered into by the parties thereto in connection with the following three securitization transactions: American Home Mortgage Investment Trust 2005-1, American Home Mortgage Investment Trust 2005-2 and American Home Mortgage Investment Trust 2005-4A (collectively, the "FGIC Securitizations").

---

[2]    AHM Servicing was a subservicer under the HELOC Subservicing Agreement to AHM Acceptance as the prior servicer in the 2005-4A FGIC Securitization. However, as stated herein, AHM Acceptance's rights as servicer under the HELOC Servicing Agreement in the 2005-4A FGIC Securitization were terminated pre-petition. Thus, the HELOC Subservicing Agreement should be of no further force or effect and cannot be assigned independent of the HELOC Servicing Agreement.

[3]    References herein to HELOC Servicing Agreements include the HELOC Subservicing Agreement.

10.    The Trusts established in the FGIC Securitizations acquired and own the HELOC Mortgage Loans and issued securities that are "backed" by, or that rely directly on, the HELOC Mortgage Loans and related collections owned by the Trusts as the source of payment.

11.    FGIC insured certain of the securities issued by the Trusts that rely directly on the HELOC Mortgage Loans and related collections as the source of payment.  FGIC is an express third party beneficiary under each HELOC Servicing Agreement, holds rights against the Defendants under the HELOC Servicing Agreements and holds subrogation rights respecting the insured securities.  In each of the FGIC Securitizations, an Insurance and Indemnity Agreement that relates to the HELOC Servicing Agreements contains the acknowledgement of AHM Servicing and AHM Acceptance that FGIC is a third party beneficiary of the HELOC Servicing Agreements, incorporates the representations, warranties and covenants of AHM Servicing and AHM Acceptance made in the HELOC Servicing Agreements and contains covenants for the benefit of FGIC that the HELOC Mortgage Loans will be serviced by AHM Servicing and AHM Acceptance in compliance with the HELOC Servicing Agreements.  True and correct copies of the Insurance and Indemnity Agreements are attached hereto as Exhibit B-1, Exhibit B-2 and Exhibit B-3, respectively.

12.    Upon the closing of the FGIC Securitizations, GMAC was the back-up servicer under the following separate back-up servicing agreements:

(i)    HELOC Back-Up Servicing Agreement dated as of March 23, 2005 among GMAC, as back-up servicer, the 2005-1 Trust and Deutsche Bank National Trust Company, as the Indenture Trustee;

(ii)    HELOC Back-Up Servicing Agreement dated as of June 22, 2005 among GMAC, as back-up servicer, the 2005-2 Trust and Deutsche Bank National Trust Company, as the Indenture Trustee; and

(iii)    HELOC Back-Up Servicing Agreement dated as of October 7, 2005 among GMAC, as back-up servicer, the 2005-4A Trust and U.S. Bank National Association, as the Indenture Trustee.

True and correct copies of the HELOC Back-Up Servicing Agreements are attached hereto as Exhibit C-1, Exhibit C-2 and Exhibit C-3, respectively.

13.    Deutsche Bank National Trust Company and U.S. Bank National Association were appointed and are serving as the Indenture Trustees under the respective Indentures related to the FGIC Securitizations.  Wells Fargo Bank, National Association is serving as securities administrator under the Indentures.  True and correct copies of each Indenture are attached hereto as Exhibit D-1, Exhibit D-2 and Exhibit D-3, respectively.

14.    On August 2, 2007, GMAC, at the instruction of FGIC as required by the HELOC Servicing Agreements and pursuant to FGIC's and GMAC's rights under the HELOC Servicing Agreements, properly terminated the servicing rights of Defendants under the HELOC Servicing Agreements.  True and correct copies of the FGIC direction letter to GMAC, the GMAC termination notice, the related FedEx receipts and the related FedEx delivery confirmations are attached hereto as Exhibit E-1, Exhibit E-2, Exhibit E-3 and Exhibit E-4, respectively.  As permitted by the HELOC Servicing Agreements, the servicing rights of Defendants were subject to termination upon, among other things, the occurrence of any of the following: (i) the failure of American Home Mortgage Investment Corp. and its consolidated subsidiaries to have a Tangible Net Worth (as defined in the HELOC Servicing Agreements and the related Indentures) of at least $530 million,[4] (ii) the admission in writing of the Defendants' inability to pay their debts

---

[4]    As specified in Section 6.01 of the HELOC Servicing Agreements, AHM Servicing and AHM Acceptance are subject to termination by GMAC, at the direction of FGIC, upon the occurrence of a "HELOC Servicer Termination Event", which includes the failure of American Home Mortgage Investment Corp. and its consolidated subsidiaries to have a Tangible Net Worth (as defined in the HELOC Servicing Agreements and related Indentures) of at least $530 million.

generally as they become due and (iii) the voluntary suspension by Defendants of the payment of their obligations.[5] American Home Mortgage Investment Corp., only one business day after the termination of AHM Servicing and AHM Acceptance as servicers, issued a press release acknowledging that while its bankruptcy filing was intended to help protect the value of American Home Mortgage Investment Corp. and its assets, "it is highly unlikely that these values will be sufficient to pay its creditors in full, and that it is realistic to conclude that ultimately there will be no shareholder equity value remaining." A true and correct copy of such press release is attached hereto as Exhibit F. American Home Mortgage Investment Corp. thus had no Net Worth, and certainly no <u>Tangible</u> Net Worth (i.e., Net Worth after deduction of, among other things, all intangibles under GAAP), upon the pre-petition termination of servicing rights. Additionally, in the days preceding the bankruptcy filing, American Home Mortgage Investment Corp. announced in a separate press release that it had "substantial unpaid margin calls pending" to its warehouse lenders and was "unable to borrow on its credit facilities and was unable to fund its lending obligations." The press release addressed American Home Mortgage Investment Corp. and its subsidiaries, including Defendants. A true and correct copy of such press release is attached hereto as Exhibit G. The Defendants' bankruptcy case also contains numerous filings to the effect that Defendants failed to make pre-petition payments on their warehouse or other lending facilities. Accordingly, each of AHM Servicing and AHM Acceptance had prior to its bankruptcy filing either admitted in writing its inability to pay its debts generally as they became due or voluntarily suspended payment of its obligations. The Defendants cannot take a position in this case respecting the foregoing matters that is contrary to the position they have announced to the public and shareholders.

---

[5]    See Section 6.01(iv) of the HELOC Servicing Agreements.

15.    Each HELOC Servicing Agreement expressly provides that upon the termination of AHM Servicing and AHM Acceptance as servicers, AHM Servicing and AHM Acceptance are immediately replaced with GMAC as servicer of the HELOC Mortgage Loans by the terms of the HELOC Servicing Agreements and without any further action.  Section 6.01 of each HELOC Servicing Agreement provides:

> On and after receipt by the HELOC Servicer of such written notice, all authority and power of the HELOC Servicer under this HELOC Servicing Agreement, whether with respect to the [securities issued by the Trust] or the HELOC Mortgage Loans or otherwise, shall pass to and be vested in the HELOC Bank-Up Servicer, pursuant to and under this Section 6.01; and, without limitation, the HELOC Back-Up Servicer is hereby authorized and empowered to execute and deliver, on behalf of the HELOC Servicer, as attorney-in-fact or otherwise, any and all documents and other instruments, and to do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement of each HELOC Mortgage Loan and related documents, or otherwise.

Accordingly, the termination and replacement of AHM Servicing and AHM Acceptance as servicers of the HELOC Mortgage Loans in the FGIC Securitizations occurred and was effective before the filing of the Defendants' bankruptcy cases.

16.    Defendants, among other Debtors, filed a motion to sell their loan servicing business and assume and assign executory contracts (D.I. 11) (the "Motion").  FGIC, by and through its counsel, appeared at the August 7, 2006 hearing respecting the sale procedures relating to Defendants' Motion.  FGIC objected on the record to the Motion to the extent the Motion purported to include the HELOC Servicing Agreements because the servicing rights of AHM Servicing and AHM Acceptance under such agreements were terminated.  FGIC subsequently filed an Objection to the Motion on September 12, 2007 (D.I. 718) and a Supplemental Objection to the Motion on October 1, 2007 (D.I. 1036) (collectively, the "Objection").

17.     Notwithstanding the pre-petition termination of Defendants as HELOC Servicers under the HELOC Servicing Agreements, FGIC's verbal objection at the August 7, 2007 hearing on the Motion immediately after the filing of Defendants' bankruptcy cases and FGIC's Objection filed in Defendants' bankruptcy case, Defendants have improperly listed the HELOC Servicing Agreements among the "Potential Executory Contracts" in the Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if any, dated August 27, 2007; the *Modified* Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if any, dated September 10, 2007; and the Supplemental Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if any, dated September 26, 2007.    Because the servicing rights of Defendants were properly terminated pursuant to the terms of the HELOC Servicing Agreements by the pre-petition termination by GMAC on August 2, 2007, the Defendants do not hold servicing rights under and cannot assume and assign the HELOC Servicing Agreements.

18.     The Defendants have apparently taken the position, in a letter to GMAC dated September 10, 2007, that the pre-petition termination of AHM Servicing as servicer under the 2005-2 HELOC Servicing Agreement was not effective because "a successor HELOC Servicer was not appointed in conjunction with the [termination notice], as required by Section 6.01 of the HELOC Servicing Agreement."    A true and correct copy of this letter is attached hereto as Exhibit H.    However, the appointment of a successor HELOC Servicer is not a condition to the termination of AHM Servicing and AHM Acceptance under any of the HELOC Servicing Agreements.    Moreover, as stated in paragraph 15 above, the HELOC Servicing Agreements

expressly provide that upon the termination of AHM Servicing and AHM Acceptance as servicers GMAC became the successor HELOC Servicer.  Also, the FGIC direction letter to GMAC referred to in paragraph 14 above and attached hereto as Exhibit E-1 expressly directs GMAC to assume and succeed to obligations as the HELOC Servicer.  Thus, a successor HELOC Servicer was appointed pre-petition in conjunction with the servicer termination notice.

19.    Defendants have been terminated as HELOC Servicers and are required by the HELOC Servicing Agreements to cooperate in connection with the transition of servicing functions to GMAC, to transfer to GMAC all documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans properly and effectively and to transfer <u>all</u> collections on the HELOC Mortgage Loans to GMAC or the Indenture Trustees. Notwithstanding the pre-petition termination of Defendants as servicers under the HELOC Servicing Agreements, the obligations of Defendants to cooperate with the transition of servicing and several attempts by FGIC to obtain the Defendants cooperation respecting the transition of servicing, Defendants have failed and refused to comply with their cooperation obligations, have not transferred documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans and have failed to transfer <u>all</u> collections on the HELOC Mortgage Loans. Borrowers on the HELOC Mortgage Loans must be notified of the transfer of servicing to GMAC.  Moreover, the required servicing documents and data cannot be duplicated without the cooperation of Defendants, and such documents and data are critical to GMAC's servicing the HELOC Mortgage Loans.  Without re-directing borrower payments and obtaining servicing documents and data, GMAC will not be able to properly collect payments on the HELOC Mortgage Loans, monitor and enforce defaults or otherwise properly service the HELOC Mortgage Loans.

20.    On at least the August 27, 2007 distribution date in the FGIC Securitizations, AHM Servicing and AHM Acceptance as servicers have failed to deposit a certain amount of the collections on HELOC Mortgage Loans owned by the Trusts into the appropriate accounts as required by the HELOC Servicing Agreements and have inappropriately misdirected such collections. The Indentures expressly specify that a "Rapid Amortization" event occurs thereunder based on, among other things, the pre-petition Tangible Net Worth event of default discussed in paragraph 14 above.[6] Upon the occurrence of a Rapid Amortization event, collections on the HELOC Mortgage Loans are reallocated under the Indentures, all such collections are to be applied to payment on the notes issued by the Trusts that relate to the HELOC Mortgage Loans and such collections are no longer available to AHM Acceptance to fund additional draws by borrowers on the HELOC Mortgage Loans.[7] Upon information and belief, Wells Fargo Bank, National Association, as securities administrator in the FGIC Securitizations, advised AHM Servicing and AHM Acceptance that they were not permitted by the HELOC Servicing Agreements to retain any collections on the HELOC Mortgage Loans to fund additional draws by borrowers. FGIC, by and through its counsel, also advised Defendants

---

[6]    The Indentures contain additional Rapid Amortization trigger events, including the occurrence of Defendants' bankruptcy filing. FGIC does not waive its right to assert a Rapid Amortization based on any other event, including its right to assert that a Rapid Amortization event based on Defendants' bankruptcy filing is not precluded by the ipso facto provision of Section 365 of the Bankruptcy Code (as a Rapid Amortization event reallocates the application of cash flow under the Indentures, rather than terminates or modifies rights of Defendants, and is operative under an agreement to which Defendants are not parties). FGIC also does not waive its right to waive the occurrence of a Rapid Amortization event.

[7]    While the Trusts purchased and own the HELOC Mortgage Loans, AHM Acceptance expressly retained the obligation to the borrowers to fund additional draws by the borrowers on the HELOC Mortgage Loans under the Mortgage Loan Purchase Agreements in the FGIC Securitizations. True and correct copies of the Mortgage Loan Purchase Agreements are attached hereto Exhibit I-1, Exhibit I-2 and Exhibit I-3. A seller's retention of the obligation to borrowers to fund draws under HELOCs is a typical element in securitizations of HELOC mortgage loans. A consequence of a Rapid Amortization event is that collections on the HELOC Mortgage Loans are no longer available to AHM Acceptance to fund draws by borrowers and AHM Acceptance must either fund draws from another source of funds or default in its obligation to borrowers.

that they are not permitted by the HELOC Servicing Agreements to retain any collections on the HELOC Mortgage Loans to fund additional draws by borrowers. However, AHM Servicing and AHM Acceptance nevertheless improperly misdirected collections belonging to the Trusts and used such collections owned by the Trusts to enable AHM Acceptance to fund additional draws under HELOC Mortgage Loans. The approximate amount of collections belonging to each Trust that was improperly diverted by AHM Servicing and AHM Acceptance on the August distribution date, and as a result not paid to related noteholders of each Trust, is:

2005-1 Trust: $228,906
2005-2 Trust: $464,156
2005-4A Trust: $400,630

Upon information and belief, Defendants similarly diverted additional collections on the September 2007 distribution date. Defendants should be deemed to hold the collections on the HELOC Mortgage Loans they have not transferred in trust for the benefit of the Trusts, the Indenture Trustees and FGIC. These amounts need to be immediately restored to each Trust. However, the Defendants have failed to restore these amounts.

21.    FGIC is entitled to the relief it seeks pursuant to the terms of the HELOC Servicing Agreements and applicable law.

FIRST CAUSE OF ACTION
(Declaratory Judgment That The Defendants' Servicing Rights Under
The HELOC Servicing Agreements Were Properly Terminated On August 2, 2007)

22.    Plaintiff repeats and realleges paragraphs 1-21 as if fully set forth herein.

23.    Section 6.01 of the HELOC Servicing Agreements provide that the servicing rights of AHM Servicing and AHM Acceptance may be terminated thereunder upon, among other things, the occurrence of any of the following: (i) the failure of American Home Mortgage Investment Corp. and its consolidated subsidiaries to have a Tangible Net Worth (as defined in the HELOC Servicing Agreements and the related Indentures) of at least $530 million, (ii) the

admission in writing of the Defendants' inability to pay their debts generally as they become due and (iii) the voluntary suspension by Defendants of the payment of their obligations. AHM Servicing and AHM Acceptance were terminated as servicer under the HELOC Servicing Agreements on August 2, 2007, prior to the Petition Date.

24.     All conditions precedent occurred and required notices were delivered by FGIC and GMAC to Defendants.

25.     By refusing to comply with the HELOC Servicing Agreements, the Defendants created an actual, justiciable controversy between FGIC and the Defendants, which may be heard and determined by this Court pursuant to 28 U.S.C. § 2201. Therefore, FGIC requests a declaration from this Court that AHM Servicing and AHM Acceptance were terminated as servicers under the HELOC Servicing Agreements on August 2, 2007.

SECOND CAUSE OF ACTION
(Declaratory Judgment That Defendants Are Obligated
To Transition The Servicing To GMAC)

26.     FGIC repeats and realleges paragraphs 1 - 25 as if fully set forth herein.

27.     Section 6.01 of the HELOC Servicing Agreements require Defendants to cooperate to transition servicing functions to GMAC, to transfer to GMAC all documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans properly and effectively and to transfer all collections on the HELOC Mortgage Loans to GMAC. The HELOC Servicing Agreements also require the Defendants to pay the costs and expenses associated with the transition of servicing.

28.     Without re-directing borrower payments and obtaining servicing documents and data, GMAC will not be able to properly collect payments on the HELOC Mortgage Loans, monitor and enforce defaults or otherwise properly service the HELOC Mortgage Loans. Servicing of the HELOC Mortgage Loans must be transitioned to GMAC immediately so that

GMAC may adequately service and collect amounts due under the HELOC Mortgage Loans. Moreover, the borrowers will be harmed if there is no financially responsible party that can maintain accurate up-to-date records, and ensure tax and insurance payments are properly accounted for and paid when due.

29.     Moreover, FGIC will be prejudiced if the HELOC Mortgage Loans are not properly monitored and serviced, as all collections on the HELOC Mortgage Loans will not be properly distributed to GMAC or the Indenture Trustees and the collectibility and thus, the value of the loans, will deteriorate. The Defendants and their other creditors would be prejudiced as well. To the extent the Defendants' wrongful actions in preventing GMAC from properly servicing the HELOC Mortgage Loans cause harm to the Trusts and FGIC and cause the value of the Trusts' HELOC Mortgage Loans to decrease, Defendants will be liable to the Trusts, the Indenture Trustees and FGIC for damages. Such a claim by the Trusts, the Indenture Trustees and FGIC against the Defendants' estates would result in a lower recovery for other creditors. Thus, it is in the interests of the estates to immediately transfer servicing of the HELOC Mortgage Loans to GMAC.

30.     GMAC sent the Defendants a termination notice. Defendants have failed to cooperate.

31.     By refusing to comply with the HELOC Servicing Agreements, the Defendants have created an actual, justiciable controversy between FGIC and the Defendants, which may be heard and determined by this Court pursuant to 28 U.S.C. § 2201. Therefore, FGIC requests a declaration from this Court that Defendants are obligated to transition the servicing to GMAC, are required to cooperate in such transition of servicing functions to GMAC, including without limitation transferring to GMAC all documents and data that are necessary to enable GMAC to

service the HELOC Mortgage Loans properly and effectively, to transfer all collections on the

HELOC Mortgage Loans to GMAC, that GMAC as successor HELOC Servicer for the Trusts

GMAC is entitled to immediate access to and possession of such records, and that Defendants

must pay the costs and expenses associated with the transition of servicing.

THIRD CAUSE OF ACTION
(Request For Declaratory Judgment That A Rapid Amortization
Event Under The Indentures Has Occurred)

32.    FGIC repeats and realleges the allegations set forth in paragraphs 1 - 31 as if fully

set forth herein.

33.    The Indentures in the FGIC Securitizations expressly specify that a "Rapid

Amortization" event occurs thereunder based on, among other things, the pre-petition Tangible

Net Worth event of default discussed above.  Upon the occurrence of the Rapid Amortization

event, all collections on the HELOC Mortgage Loans are required to be remitted to the Indenture

Trustees, such collections on the HELOC Mortgage Loans are reallocated under the Indentures,

all such collections are to be applied to payment on the notes issued by the Trusts that relate to

the HELOC Mortgage Loans and such collections are no longer available to fund additional

draws by borrowers on the HELOC Mortgage Loans.

34.    On at least the August 27, 2007 and, upon information and belief the September

2007, distribution dates in the FGIC Securitizations, AHM Servicing and AHM Acceptance as

servicers have failed to deposit certain collections on HELOC Mortgage Loans owned by the

Trusts into the appropriate accounts as required by the HELOC Servicing Agreements and the

Defendants have inappropriately misdirected such collections.

35.    Upon information and belief, Wells Fargo Bank, National Association, as

securities administrator in the FGIC Securitizations, advised AHM Servicing and AHM

Acceptance that they were not permitted by the HELOC Servicing Agreements to retain any

collections on the HELOC Mortgage Loans to fund additional draws by borrowers. FGIC, by and through its counsel, also advised Defendants that they are not permitted by the HELOC Servicing Agreements to retain any collections on the HELOC Mortgage Loans to fund additional draws by borrowers. However, AHM Servicing and AHM Acceptance nevertheless improperly misdirected collections belonging to the Trusts and improperly used such collections owned by the Trusts to fund additional draws under HELOC Mortgage Loans.

36.    By refusing to comply with the terms of the Indentures with respect to Rapid Amortization events, the Defendants have created an actual, justiciable controversy between FGIC and the Defendants, which may be heard and determined by this Court pursuant to 28 U.S.C. § 2201. Therefore, FGIC requests a declaration from this Court that a Rapid Amortization event has occurred and that all collections on the HELOC Mortgage Loans are to be transferred to GMAC or the Indenture Trustees and applied in accordance with the Indentures.

FOURTH CAUSE OF ACTION
(Relief From Stay)

37.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 - 36 as if fully set forth herein.

38.    Plaintiff seeks relief from the stay to the extent necessary to pursue this Complaint and to obtain the servicing data, all collections on the HELOC Mortgage Loans and the other relief requested herein.

FIFTH CAUSE OF ACTION
(Breach Of Contract: Failure To Cooperate And To Transfer
Servicing Data And Collections On The HELOC Mortgage Loans)

39.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 - 38 as if fully set forth herein.

40.    Defendants have breached and are continuing to breach their obligations under the HELOC Servicing Agreements, by failing and refusing to deliver all of the servicing data promptly to GMAC, by failing to deliver all of the collections on the HELOC Mortgage Loans to GMAC as servicer or to the Indenture Trustees and by failing to pay the costs and expenses associated with the servicing transition. Defendants have further breached their obligations to Plaintiff under the Insurance and Indemnity Agreements.

41.    Plaintiff's risk has been increased and Plaintiff has been damaged as a result of the breach by the Defendants.

42.    The Defendants' breach of the HELOC Servicing Agreements and the Insurance and Indemnity Agreements is a direct and proximate cause of Plaintiff's damages.

43.    Defendants have no contractual or legal right to continue as servicer or to withhold the servicing data or any collections on the HELOC Mortgage Loans in their possession, custody or control. Plaintiff will continue to suffer harm if Defendants do not promptly deliver to GMAC (and, with respect to the collections on the HELOC Mortgage Loans, to GMAC as servicer or the Indenture Trustees) all of the collections and servicing data in the Defendants' possession, custody or control, and take such other actions as are necessary to effectuate the transition of the servicing to GMAC.

44.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendants directing the Defendants to deliver immediately to GMAC (and, with respect to the collections on the HELOC Mortgage Loans, to GMAC as servicer or the Indenture Trustees) all of the collections and servicing data and to take such other actions as are necessary to effectuate such transition. Plaintiff is entitled to an award of monetary damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Conversion)

45.    Plaintiff repeats and realleges the allegations of paragraphs 1 - 44 as if fully set forth herein.

46.    None of the collections on the HELOC Mortgage Loans constitute property of the Defendants. Instead, the Defendants hold any and all such property in trust for the benefit of the Trusts, the Indenture Trustees and the Plaintiff.

47.    The Defendants' refusal to comply with Plaintiff's demand to turn over all of the collections on the HELOC Mortgage Loans constitutes unlawful dominion by the Defendants over the Trusts' property and over property in which the Plaintiff's has rights and interests.

48.    By reason of the foregoing, Plaintiff is entitled to judgment against the Defendants directing the Defendants to immediately deliver to GMAC as servicer or the Indenture Trustees collections on HELOC Mortgage Loans in the Defendants' possession, custody or control. Plaintiff is also entitled to an award of monetary damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Constructive Trust)

49.    Plaintiff repeats and realleges paragraphs 1 - 48 as if fully set forth herein.

50.    The Defendants do not own the collections on the HELOC Mortgage Loans, and instead hold them in trust for the Trusts, the Indenture Trustees and the Plaintiff.

51.    The Defendants have violated their fiduciary duties to the Trusts, the Indenture Trustees and FGIC by refusing to comply with the HELOC Servicing Agreements and improperly holding and diverting collections on the HELOC Mortgage Loans.

52.    As a consequence of the Defendants' actions, the Court should impose a constructive trust in favor of FGIC, as insurer, on all collections on the HELOC Mortgage Loans

that were in possession or under the control of the Defendants but improperly diverted by Defendants and on all collections that will be in possession or under the control of the Defendants.

WHEREFORE, Plaintiff prays for judgment as follows:

(a)      for declaratory relief (i) declaring that Defendants' servicing rights under the HELOC Servicing Agreements were terminated before the Petition Date, (ii) declaring that Defendants cannot transfer any servicing rights under the HELOC Servicing Agreements to any third party (other than GMAC pursuant to the terms of the HELOC Servicing Agreements), (iii) directing Defendants to cooperate with a transition of servicing functions to GMAC as the servicer of the HELOC Mortgage Loans and to immediately transfer to GMAC all documents and data that are necessary to enable GMAC to service the HELOC Mortgage Loans properly and effectively and directing that FGIC and GMAC are entitled to immediate access to and possession of such records; (iv) directing Defendants to restore to the Trusts all collections on the HELOC Mortgage Loans that Defendants have failed and refused to transfer to GMAC or the Indenture Trustees; and (v) directing Defendants to transfer all collections on the HELOC Mortgage Loans in their possession and that come into their possession to GMAC as the servicer of the HELOC Mortgage Loans or the Indenture Trustees;

(b)      for monetary damages resulting from breaches of the HELOC Servicing Agreements, the Insurance and Indemnity Agreements and the Mortgage Loan Purchase Agreements in an amount to be determined at trial;

(c)      for the imposition of a constructive trust upon collections on the HELOC Mortgage Loans that were in the possession or under the control of the Defendants but

improperly diverted by Defendants and on all collections that will be in possession or under the control of the Defendants; and

(d)      for such other and further relief, including interest, costs, disbursements and attorneys' fees, as the Court may deem just and proper.

Dated: October 10, 2007

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*Donna L. Culver*

Robert J. Dehney (No. 3578)
Donna L. Culver (No. 2983)
1201 North Market Street
P. O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@mnat.com
Email:  dculver@mnat.com

and

KUTAK ROCK LLP
Bruce A. Wilson, Esq. (NE Bar # 18885)
Thomas T. Roubidoux (NE Bar # 22005)
1650 Farnam Street
Omaha, Nebraska 68102
Telephone:  (402) 346-6000
Facsimile:  (402) 346-1148
Email:  bruce.wilson@kutakrock.com
Email:  thomas.roubidoux@kutakrock.com

ATTORNEYS FOR FINANCIAL GUARANTY
INSURANCE COMPANY