# Exhibit B1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| **PAULA RUSH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 07-854 (WMN)** |
| | § | |
| **AMERICAN HOME MORTGAGE,** | § | |
| **INC., ET AL.,** | § | |
| **Defendants** | § | |

**PLAINTIFF'S MOTION IN OPPOSITION**
**TO DEFENDANT AMERCIAN HOME MORTGAGE MOTION TO DISMISS**

**INTRODUCTION**

The Plaintiff, Paula Rush, pro se,  pursuant to Fed. Civ. P. 15 (a) files this

Opposition to Defendant's Motion To Dismiss. Plaintiff also seeks clarification from the

court  as to staying  this action in reference to American Home Mortgage only, or if it

extends to the other  Defendants, Trust Appraisers, ServiceLink, and The Loan

Corporation, as well. Plaintiff asks for the courts permission to accept this pleading as it

was required to avert a dispositive motion before American Home Mortgage filed for

bankruptcy. Plaintiff has filed a separate motion in reference to the bankruptcy.

**BACKGROUND**

Plaintiff filed the original complaint on April 3, 2007 and in response counsel for

"AHM" asked for three extensions under the disguise of negotiating when in fact

they were simply wasting time knowing they were going to file for bankruptcy.

After three extensions Defendant "AHM" filed a Motion to Dismiss and in

supportthereof submitted documents which are in direct  contradiction to Plaintiff's loan

documents already on file. Plaintiff strongly asserts these are manufactured false

1

documents and in support of that allegation submits a direct rebuttal to those documents.

Defendant "AHM" did not negotiate in Good Faith and willfully delayed this action.

Plaintiff seeks clarification of the necessity for petitioning the bankruptcy court to

grant relief from stay due to "AHM" bankruptcy protection should not protect a debtor

from allegations of Fraud.

Plaintiff requests the option to explore court's discretion to grant equitable and

Statutory remedies against "AHM" thereby enabling the case to go forward. It would

only be in everyone's best interest to go forward and not delay this action as it is causing

an asset of American Home Mortgage to be tied up and Plaintiff has no alternative way to

remedy the situation thereby causing continued duress.

In reference to Trust Appraisers the court has before it an amended supplemental

pleading already on file.

In reference to ServiceLink the Plaintiff has agreed to an extension of time to file

and will submit an amended supplemental pleading to clarify the action against "SL."

In reference to The Loan Corporation, Plaintiff contacted them on Aug. 7, 2007

and was instructed that they believe they do not have to answer complaint due to

American Brokers Conduit being listed on their summons as well as The Loan

Corporation. Plaintiff will ask the court for default judgement as The Loan Corporation is

well aware the complaint is directed against them and acknowledged they were properly

served. They did in fact broker the loan through some affiliation with American Brokers

Conduit. Only discovery can reveal the exact nature and terms of that affiliation.

**WHEREFORE**,  the Plaintiff requests that the court grant a Motion to go forward against Defendants, Trust Appraisers, ServiceLink, and The Loan Corporation.

**WHEREFORE**, the Plaintiff requests that the court accept this pleading and

clarify the action against American Home Mortgage in light of  the  bankruptcy.

**WHEREFORE**, the Plaintiff asks for a default judgement against The Loan Corporation.

Respectfully submitted,

Paula Rush pro se

2651 Peery Drive

Churchville Md. 21028

443-676-3509

paularush@comcast.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing **Plaintiff's Opposition to Defendant's Motion To Dismiss Complaint** was served, via first-class postage paid, on this 15th day of Aug., 2007,  to:

Catherine Hanrahan
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
1341 G Street NW Suite #500
Washington DC 20005

**Counsel for Defendant Trust Appraisers**


David Souders
Weiner Brodsky Sidman Kider PC
1300 19th Street NW, Suite #500
Washington, DC 20036

**Counsel For Defendant American Home Mortgage**


**Matthew J. MacLean**
**Pillsbury Winthrop Shaw Pittman LLP**
2300 N Street, NW
Washington, DC 20037-1122
Tel: 202.663.8183  Fax: 202.663.8007

**Counsel for Defendant ServiceLink**

---

Paula Rush pro se

2651 Peery Drive

Churchville Md. 21028

443-676-3509

paularush@comcast.net

**REBUTTAL AND STRONG ASSERTION OF FRAUD ON THIS
COURT IN REFERENCE TO EXHIBIT DOCUMENTS
<u>SUBMITTED BY  AMERICAN HOME MORTGAGE</u>**

## I.    DOCUMENTS

1.  PLAINTIFF ASSERTS "EXHIBIT A" IS A FRAUDULENT DOCUMENT, and strongly asserts that this is a recently "manufactured" document fraught with errors and discrepancies, with a forged signature created solely to attempt to discredit Plaintiff. This document has some telling clues to prove Plaintiff's assertions. It is ironic that this document is the only document which has the statement- 1 Mo MTA Potential Negative Arm on it. This expression is not on one other document nor does "AHM" use this expression in any marketing materials, it's web site or loan documents.

2.  Plaintiff denies that it is her signature on EXIHIBIT A  and Plaintiff has already Submitted  her copy (filed with original complaint).

3.  Plaintiff firmly asserts this is a fraudulent document which was produced solely to discredit the Plaintiff and commit fraud on the court.

4.  In fact, in the Motion to Dismiss, counsel for the Defendant states that Plaintiff had not put her loan application on the record when in fact it was on record with the original complaint.(See Page 3 Notes 1) If counsel had checked that fact, counsel would have seen the discrepancy and alerted her client. Now the court can see the deception clearly exists.

5.  First try and date this document with the information on it.

A.  The loan offered is 586,500 dating to April 3, 2006. ( APRIL 3, 2006)

B.  The hazard and tax are estimates which would date it to Feb. 17. ( FEB 17, 2006)

C.  The payment amount of $1483 would date it to April 3, 2006 ( APRIL 3, 2006)

D.  No time or date stamp as on Plaintiff documents to date it. ( NO DATE PROOF)

E.  Plaintiff asserts that her signature is forged. (DATE OF SIGNATURE ILLEGIBLE)

F.  Document is a different form.

6.  IF this is an earlier document then why would it have the final loan amount. If this was a later document why is the appraised value, hazard, escrow, monthly payment, and final closing costs all wrong.

7.  The only conclusion the court could reach is that the document was not the document presented to the Plaintiff at all. If it was the original loan application it would mean that the Good Faith estimate which was given to Plaintiff on March 13, 2006 was full of lies and deception including the amount the Defendant intended to lend. No matter what "AHM" claims this document to be it would only discredit them further.

8.  If the Defendant were to assert that this was a later document ( a revised version) then the court should ask two questions. First why are parts of the information referring to the earlier parts of the transactions and parts to the later transaction. Second, why does Plaintiff have another completely different document which clearly is time date stamped 3/31/2006 and signed by Plaintiff on 4/3/2006. Why does Plaintiff's document not have the same information especially the Potential Negative Arm disclaimer.

9.  The only thing which is consistent in the two documents is the 1% Interest Rate and the appraised value of $870,000 which was never changed on any documents.

**10.** Let's compare the documents. Especially revealing is the final loan amount of $586,500 not the $649,000 originally promised and a payment of $1483.00. These amounts would date this document to end of the transaction. Then the tax of $465.50 and hazard insurance of $97.25 are the earlier estimate figures not the final amounts, dating it to the beginning of the transaction. Sloppy forging. Plaintiff strongly asserts this document was falsely created to attempt to discredit Plaintiff.

**11. <u>DEFEDANT'S EXHIBIT A</u> - Line by Line-URLA**

(1) 1 % Interest Rate
(2) 1 Mo. MTA Potential Negative Arm
(3) Equity from Subject Property
(4) 1.5 Years
(5) Different Form
(6) No date or time stamp
(7) Mysteriously different form
(8) Position Type –Owner
(9) Payment amount $1483.00 ( Proof of fabrication – This was based on final amount loaned when if this was actually an earlier disclosure it would have had $1641 on it. (See Exhibit B submitted by AHM)
(10) Incorrect Hazard Insurance 97.25 &  Taxes 465.50
 (11) Appraised Value $870,000
(12) Completed –Jointly
(13) Total Liabilities  $1801
(14) No Broker Credit Listed
(15) Loan Amount $586,500
(16)Cash to Borrower - $4888.45
(17) Signature & Date – CONTESTED DOCUMENT AND SIGNATURE
(18) Signature – Scipione Date 3/30/06
(19) Plaintiff Signature 4/0_/06 CONTESTED

**<u>PLAINTIFF'S</u> Uniform Residential Loan Application (EXHIBIT A1)**
1) 1 % Interest Rate
(2) (AH) 1 Mo. MTA
(3) Left Blank
(4) 1.6 Years
(5) Different Form
(6) Time 1:03 PM and date stamp 3/31/2006

(7) AHM form ends here
(8) Position Type –Owner/Operator Furniture Restoration
(9) Payment amount 1483.00
(10) Correct Hazard & Correct Taxes
Insurance $107.67 – The actual figures  Taxes $464.47 –The actual figures
(11) Appraised Value $870,000
(12) Not Jointly
(13) Total Liabilities  $4721
(14) Broker Credit – $4000
(15) Loan Amount $586,500
(16)Cash to Borrower - $12025.86
(17) Signature – Date  4/3/06 Confirmed
(18) Typed in  Harry Hedaya  - No date
(19) Plaintiff Signature 4/3/06


## 12. <u>DEFENDANT'S EXHIBIT B</u> – TILDS STATEMENT (Preliminary)

PLAINTIFF CONTEST LEGITIMACY OF THE ENTIRE DOCUMENT and once

again would like to draw the attention of the court to the discrepancies between the

presented "AHM" document and the Plaintiff's documents. Apparently there were

different sets of documents going on, the ones Plaintiff got and the one's "AHM,"

"ABC," and "TLC" were conspiring to create.

13. The dates and information tell the story again. The Payment scheduled start date is an

earlier date of 5/01/2006. The Loan amount and the date is that of the earlier application

time. This states the plaintiff may have to pay a prepayment penalty. Then the Plaintiff's

document dated 3/13/2006 still has the loan amount approximately the same, but the "will

not" is checked off, and the payments start date is the later date of July 1, 2006. So on

2/17/2006 Plaintiff "may" have to pay a prepayment penalty, then on 3/13/2006 she "will

not", then on 4/3/2006 "may" again. The Interest Rate on the Loan Application is 1%,

then the APR is 7.263% or 6.320% or maybe it is 7.468%. This sums up the

misrepresentation and deception.

14. The fradulent documents Defendant is now presenting only serve to open the eyes of the court that the manipulation was, and still is wilfull and unconscionable. It is obvious that all the timelines, and what is offered by way of terms on all of these documents just don't add up.  If the purpose of  TILA is that disclosures must be "clear and conspicuous," even in hindsight this is anything but clear with apparently two entire different sets of documents. Further, it is obvious that from the beginning the Defendant never intended to offer the Plaintiff the loan presented in the advertising materials or in the Good Faith documents. ( Plaintiff does not have the original flyer and needs discovery to obtain it.)

## 15.  DEFENDANT'S TILDS (Line by Line)

(1) Document prepared by The Loan Corporation and dated 2/17/2006
(2) Loan Number LC 060924
(3) APR 7.263%   Loan Amount  $648,999.50
(3) Payment Schedule Starting 5/01/2006 Payment $1641.04
(4) "may" checked in prepayment
(5) Plaintiff alledgedly signed on 3/5/06
(7) Entirely different form

## PLAINTIFF'S TILDS ( EXHIBIT B1)

(1) Document prepared by American Brokers Conduit (LENDER) dated 3/13/06
(2) Loan Number 0001222336
(3) APR 6.320 Loan Amount 646,036.58
(4) Payment schedule starting July 1, 2006  Payment $1641.04
(5) "will not" checked in prepayment
(6) Plaintiff received in package of all Good Faith documents.
(7) Entirely different form

## 16. DEFENDANT'S EXHIBIT C  TILDS (FINAL)

### THIS IS IDENTICAL TO THE DOCUMENT PLAINTIFF HAS.

(1) APR 7.468% Loan Amount $584,125
(2) Filing /Recording Fees – BLANK
(3) "may" have to pay a penalty
(4) Signed at closing with stack of papers. 4/3/06

9

This is the final TILDS signed on 4/3/2006 in the closing which was rushed, with no explanations. None of the closing documents were left with Plaintiff at closing because the Notary came to Plaintiff's house with no access to a copy machine. The Notary asked Plaintiff to sign a release at closing saying she would not be rescinding the loan.

18. Plaintiff received a set of documents back in the mail sometime after closing and now in light of the recent discoveries, has no idea if the documents she signed are the documents she received.

19. Recently Plaintiff discovered there are problems with the Deed. Apparently the Deed she signed is also not the Deed which was recorded. The Deed which Plaintiff has on page 3 is left blank in the space Type of Recording Jurisdiction. On the Deed which was filed on April 19, 2006 a detailed paragraph exist explaining how recordation were calculated. (**EXHIBIT  AA** – Deed of Trust Plaintiff Signed)

20. Upon investigation Plaintiff found that the recordation tax was an overcharge of $966 which was hidden from Plaintiff by giving her a different Deed without the paragraph on it. ServiceLink a division of Chicago Title, filed a Deed which Plaintiff did not sign to hide it. (**EXHIBIT BB** – Deed of Trust ServiceLink filed)

21.  On April 15, 2006 Plaintiff called ServiceLink to discuss the discrepancy and was told that it was an error and ServiceLink prompty refunded the $966 on April 18, 2006 more then a year after the transaction. (**EXHIBIT CC** – ServiceLink Refund Check)

22.  This problem can not be corrected by just a refund. The problem is this was an overcharge and should have been included in the amount financed and APR. This amount

had Plaintiff not found it would have been kept by ServiceLink. The finance charge

tolerance for defendants in foreclosure actions is $35(for rescission),

12 C.F.R. 226.23(h), and $100 (for monetary damages), 12 C.F.R. 226.18(d)(1).

23. This "stolen" amount would be paid over the life of the loan with Plaintiff paying

interest on the funds which were stolen which would have cost Plaintiff thousands over

the life of the loan.

24. Plaintiff went to the County recordation office and was told that the amount for

recording fees must be paid in the exact amount by check on the day of recording. So on

April 19, 2006 ServiceLink knew this was an overcharge and did not alert Plaintiff or

take any steps to correct the error.

## 25. **DEFENDANT'S EXHIBIT D - ADJUSTABLE RATE RIDER**

(1) This document was not included in Good Faith package.

(2) Notary did not call attention or explain any of this document at closing.

(3) During closing Plaintiff barely glanced at these documents. Glancing at them quickly

it appears to say you will pay interest at a yearly rate 1.000% and a date that looks to be

the closing date -April. You would have to take time to read the paragraph and even then

it would be confusing. At closing there was no time to read this paragraph.


(4) There is no requirement to initial these pages so the notary never even presented this

page during closing. He just presented the signature page with no information on it.


## 26. **DEFENDANT'S EXHIBIT D - PREPAYMENT PENALTY**

(1) This document was not presented in the Good Faith package.

(2) Notary did not call attention or explain any of this document at closing.

(3) During closing Plaintiff barely glanced at these doucments.

(4) Notary asks for a signature on last page. He did not seal it as a witness.

27. **DEFENDANT'S EXHIBIT E - ADJUSTABLE RATE MORTGAGE LOAN DISCLOSURE STATEMENT**

(1) These documents are highly confusing. If you even tried to understand them it would be impossible.

(2) First they present a 1, 3, 6, and 12 MONTH MTA Power ARMs with no indication what they are offering the Plaintiff. Verbally and in many places they refer to the 1% and that is the only real figure they focus any attention on.

(3) "Your loan will provide for a <u>fixed initial interest</u> rate and a <u>fixed Subsequent Interest Rate</u> that will be <u>disclosed to you prior to the time you obligate yourself</u> to repay the loan, and will be set forth in your Note."  These references over and over again to a fixed interest rate which the borrower is led to believe is 1%.  If it is "set forth" in the Note then it is not disclosed "prior" to the time that you obligate yourself. It is disclosed at the closing hidden in the mound of closing documents.

(4) Plaintiff has now read these documents many times and is still confused. Plaintiff has spent months of research trying to understand how she could have been decieved. In hind sight all of the techniques are clear. The wording is purposeful to mislead and confuse. The programs are confusing and the information presented verbally and in the documents more prominently, more often, and more conspicuously is what Plaintiff relied on. Not all the fine print buried in a pile of documents at closing with wording meant to confuse.

(5) "SL" Notary did not call attention or explain any of this document at closing. No Initials required on any pages, signature page has no information on it.

**28. DEFENDANT'S EXHIBIT E- POWER ARM OPTION ADJUSTABLE RATE MORTGAGE**

**PLAINTIFF HAS A DIFFERENT INCOMPLETE DOCUMENT –( EXHIBIT E1)**

**Consider these Statements:**

(1) "Spikes and drops in interest rates average out and you don't experience changes in your monthly statements." Rates have been going up for a long time so this is an outright untrue statement made with the sole purpose of reassuring borrowers of what a great loan this is.

(2) "Turn your home into a wealth management tool." This is a clear statement aimed at misleading borrowers into thinking this is good loan.

(3) "Keep your cash in your pocket, where you can easily use it for other things. It is calculated based on your initial start rate." Another statement with a purpose to decieve the true nature of the loan and another referral to the start rate which Plaintiff was led to believe the rate was 1% for five years.

(4) "**Sometimes** the minimum payment **may not** be enough to fully amortize your loan. In that case, a portion of the interest will be **deferred**, and added to the balance of your loan. " Carefully chosen words which are words "AHM" clarifies in their investment statements using disclaimers that these words represent forward looking statements and can not be relied upon as absolutes. Proving the wording is meant to be unclear and decieve.

(5) "A fixed interest rate initially thereafter the interest rate may change monthly." The "fixed" rate in Plaintiff's case lasted for 27 days. The references over and over again are to the "1%" instead of the true terms of the loan. The totality of which is meant to

mislead and confuse.

(6) The wording and "structure" of the paragraphs is meant to confuse and mislead. This is a 40 year loan they're pitching and all they keep talking about is the "initial period" which was, 27 days long. Everything they talk about is based on this "initial rate" which is 1 %. The loan is 40 years and the "initial period" and "initial rate" is only 27 days. Less then one month.

(7) The sentence structure always starts out with a positive affirmation devoid of any negative connotations. Words are carefully chosen such as "deferred" instead of Negative Amortization. "Sometimes" and "may" not are used instead of the correct words, always and will.

(8) No mention of actual terms. So what is this deferred interest based on. Nine pages of superflous information with little attention being called to negative amortization or the actual loan program offered to Plaintiff.  Endless references to "initial periods" and "initial start rate" or 1% . No mention that the loan was in fact a 40 year loan. The nine pages use examples based on 15 and 30 year loans.

(9) No clear plain English anywhere which clearly states the Interest Rate is 7% or 8% the initial period is 1 month or less and the term is 40 years with a prepayment penalty. Only 1% Interest Rate using that term is ever listed as a direct number figure of rate.  The only references other then 1% are APR, a fact AHM admits on there own web site most people don't understand how it's calculated or what it means.

(10)    Even the very few vague references to negative amortization are used in the hypothetical with terms like this loan "allows for" negative amortisation. On all loan

statement only the minimum payment is offered and the adjustments of payments are calculated assuming a minimum payment is made. In short the entire loan is advertised, sold, and serviced to create negative amortisation. However none of the facts are revealed in any detail in the vague comment, "allows for" negative amortisation.

(11)    The true statement would be: if you keep cash in your pocket and turn your house into a wealth management tool, your loan will negatively amortize at an interest rate of 8% which is going up everyday, causing huge amounts to be added to your balance thereby building our wealth at your expense.

(12)    They use positive affirmations, mitigating sentences, carefully structured sentences, carefuly chosen words and references, confusing and contradicting references, half truths, and leave out crucial facts material to the nature of this loan.

(13)    The "pitch" is everything is based on that 1% rate you are getting so no need to worry about any down side. Rates go up and down and your loan won't be affected. After all how much could it be if you are only paying 1%. It is a fixed rate. Your payments will be low because of it for five years.

28.  **DEFENDANT'S EXHIBIT F - GOOD FAITH ESTIMATE**
**PLAINTIFF CONTEST LEGITIMACY OF THE ENTIRE DOCUMENT**
(1) Prepared by The Loan Corporation
(2) Application number LC 060924
(3) Date 2/17/2006
(4) 1 Mo MTA ARM
(5) Interest Rate 1% on a $649,000 loan
(6) Payment of $1641.04
(7) Broker Credit 6073.00
(8) Closing cost .50
(9) Cryptic information about YSP 0% to 3.875    25,148.75
(10)    Prepaids and reserves $6343.00

(11)   Allegedly signed by Plaintiff 3/6/2006

(12)   Even if the court were to take this document as true (Plaintiff strongly asserts it is

a forged document) it would <u>only prove</u> that Plaintiff did not get her GFE within three

days of application for the loan, and that she was offered 1% interest rate on a $649,000

with no closing cost due to a broker credit of $6,073.00. Further it shows that the Broker

had an incentive that he could have earned between 0 %- 3. 875% or up to $25, 148.75

depending on the terms he ultimately gave the Plaintiff.

### <u>PLAINTIFFS</u> GOOD FAITH ESTIMATE DOCUMENT ( EXHIBIT F1)

(1) Prepared by ABC Chantilly VA
(2) Application number 0001222336
(3) Dated **March 13, 2006**
(4) Conventional
(5) Interest Rate 1% on a $649,000 loan
(6) No Broker Credit
(7) Closing Cost $18, 092.92
(8) On Plaintiff's GFE she was still promised a loan of $649,000 and a 1% interest rate.

But if "AHM" was going to give her the $649,000 with money for closing costs, they

intended to charge her $18,092 in closing cost of which $6073 was to be paid to the

broker.

### 29.  <u>DEFENDANT'S EXHIBIT G - ABA DISCLOSURE</u>

### <u>PLAINTIFF CONTEST LEGITIMACY OF THE ENTIRE DOCUMENT.</u>

(1) This document was prepared by ABC/AHM.  Between Feb 17th, 2006 and  March 13,

2006 all documents reflect a loan amount promised of $649,000 yet this document states

the final loan amount of $586, 500.  The court should draw the inference this was not

presented to Plaintiff on March 14, 2006 as AHM is asserting it was. This is a fabrication

to attempt to prove they in fact notified of her right of choice in settlement services.

Plaintiff document clearly refutes this document and the telling loan amount confirms the

fraud AHM is attempting to commit on this court as this document contradicts the other

documents they submitted.

(2) Prepared by American Brokers Conduit on March 14, 2006

(3) Loan Amount $586,500 ( Loan Amount on March 13, 2006 was $649,000)

(4) Rate 1%

(5) Homegate Settlement is a wholly owned subsidiary of American Home Mortgage

Corp. Homegate provides flood determination and appraisal services.

(6) You are free to shop around. Compare to Plaintiff document.

(7) Alleged Plaintiff signature – no date.

## PLAINTIFF'S DOCUMENT - THIRD PARTY SERVICE PROVIDERS ( EXHIBIT G1)

## ADDENDUM TO GOOD FAITH ESTIMATE

(1) No preparers name- generic
(2) No Loan information
(3) No rate
(4) **We will require** the use of the following providers of settlement services, that we
    have repeatedly used or required borrowers to use within the last twelve months.
(5) No comment that Plaintiff is free to shop around.
(6) Part of Good Faith package and was received on March 13, 2006.
(7) Homegate Settlement Services, Inc. is listed as a "third party" provider on Plaintiff's
document, but American Home Mortgage calls them a wholly owned subsidiary on
another document.

## 28. PLAINTIFF'S FINAL HUD-1 ( EXHIBIT H1)

(1) Although no mention can be found in any of Plaintiff's documents, Plaintiff has

found that American Home Mortgage operated a title abstract company under the name

"Great Oak" and it was disclosed in the bankruptcy proceedings. On "AHM" investment

statement 10-K a reference is made to owning a title abstract company, with no

clarifications.

(2) Upon information and belief, Plaintiff contends this company was set up to funnel title kickbacks to "AHM" and therefore they most likely split the fees listed on the HUD-1 which were recorded as going to "SL." These fees inlcude Title Insurance of $1102.2 which was an overcharge based on a loan amount of $733, 125, Title Abstract $210.00, and Closing Fee $450.00.

(3) "SL" also overcharged Plaintiff $966 in recordation tax and it is possible the overcharge was split or "AHM" received a refund and never credited it to Plaintiff's loan.

29.  **COMMON LAW FRAUD** –Plaintiff asserts that common law fraud is evident on the face of the documents as many false statements of material facts and omissions exist with documents that were created and processed through "ABC" a division of "AHM" Proof of reliance is evident in the fact that the loan was consumated and the Plaintiff was harmed financially as a result. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 43, 180 Ill. Dec. 300, 607 N.E.2d 194 (1992).

*30.*   The lender "AHM" knowingly accepted the <u>"fruits of the fraud."</u> *Moore v. Pinkert*, 28 Ill. App. 2d 320, 333, 171 N.E. 73 (1960); *Pulphus v.Sullivan*, No. 02 C 5794, 2003 U.S. Dist. LEXIS 7080, at **61-62 (N.D. Ill. April 25, 2003). *Zekman v.* Direct American Marketers, Inc. 182 Ill. 2d 359 (1998). *Greenville Investors Limited Partnership*, 284 Ill. App. 3d 37 (2nd Dist. 1996).

31.  TIMELINES are undisputed. The credit report was pulled on 2/17/2006 as verified in documents submitted. The appraisal was done on 2/22/2006. The Good Faith package with terms which were not honored came on <u>3/13/2006.</u> Closing was <u>4/3/2006.</u>

32.   Three day rule for disclosure was not honored no matter what documents you

look at. Documents were switched, one set for them and another for the

Plaintiff. The depth of the manipulation and deception is now clearer then ever.

33.   **THIRD PARTY SERVICE PROVIDERS – ADDENDUM TO GOOD FAITH**

**ESTIMATE – Plaintiffs Document**

(1) Date – Part of Good Faith package dated March 3/13/2006

(2) We will require the use of the following providers of settlement services, that we have

repeatedly used or required borrowers to use within the last twelve months.

Listed – Homegate Settlement Services 520 Broadhollow Rd. Melville, NY 11747

Homegate Settlement Services is a wholly owned subsidiary of American Home

Mortgage. They provide Flood determination and appraisal services.

34.   **TRUTH IN LENDING DISCLOSURE STATEMENT**
(1) Document dated 4/03/06
(2) Final
(3) Prepared by American Brokers Conduit Chantilly Va
(4) Interest rate 7.468%
(5) Loan Amount 584,125.00
(6) Starting Payment of $1483.00
(7) "may" under prepayment penalty
(8) Signed at closing by Plaintiff 4/3/2006
(9) No filing fee listed

35.   **FCRA  AND  ECOA**

Plaintiff alleges that she contacted The Loan Corporation responding to a flyer (Plaintiff

does not have original flyer and needs to conduct discovery to get it)  promising 1%

interest rate, lower payments and no prepayment penalty. No other loan terms were

revealed. "AHM" through it's direct subsidiary "ABC" did participate in

the loan from the very beginning and the loan was created using the underwriting guidelines of "AHM." "ABC" a division of "AHM" processed the loan application on March 13, 2006 and sent out a Good Faith Estimate to Plaintiff promising 1% Interest Rate, $649,000 loan with no prepayment penalty. On April 3, 2006 all terms were changed, the loan amount reduced to $586,500 the interest rate offered had disappeared, and the loan featured a prepayment penalty. Plaintiff did make a formal application requesting the 1% Interest rate offered, "ABC" did process the application as in the defintion of the "catch-all" prong of the FCRA, which is based on the definition of "adverse action" in ECOA and Regulation B, which requires a formal "application." *Crane v. American Home Mortgage Corp.*, 2004 WL 2577498 (E.D. Pa. Oct. 21, 2004), clarifying on denial of reconsideration 2004 WL 1529165 (E.D. Pa. Jul. 7, 2004).

36.   Under the definition of adverse action in the Equal Credit Opportunity Act, which applies to FCRA, the undeniable less favorable terms did constitute an adverse action. More significant, however, citing *Crane*, the court went on to state that the lender's action also constituted "adverse action" under FCRA's "catch-all" phrase that defines "adverse action" to mean, in relevant part, an action taken or determination that is ... made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account ... and adverse to the interests of the consumer. *Thomas v. Cendant Mortgage*, 2004 WL 2600772 (Nov. 15, 2004 E.D.Pa.).

## II.    DUTY OF GOOD FAITH AND FAIR DEALING

37.    Plaintiff was offered a loan product after "TLC" acting in tandum with "ABC" representing "AHM" offered a loan with a 1% Interest Rate, no prepayment penalty and $56,000 cash-out refinance of her home. The implied convenant of good faith and fair dealing was breached as it is obvious from the documents presented "AHM" never had any intention of offering such a loan.

38.    The appraisal was conducted with no regard to the value of the property but only with the intention to create a LTV ratio which "AHM" could sell to third party investors. A business practice which is now resulting in unprecented requests for repurchase of loans, soaring defaults on loans and margin calls from investors demanding their money back.

39.    "AHM" breached the express warranty of the loan product in which it presented and breached the implied duty of good faith and fair dealing in the construction of this contract.

40.    Further, "AHM" paid the broker, "TLC" and exhorbitant fee in the form of a YSP based incentive to induce fraud on the Plaintiff.

41.    The express obligations of the contract were only revealed in settlement documents which were hastily presented with no explanations and no time to read them, and no documents were left with the Plaintiff at closing. "SL" asked Plaintiff to sign a paper at closing saying she would not rescind the loan.

42.    "AHM" knew the foreseeable consequences and included a prepayment penalty ensuring the Plaintiff would be locked in and be continuously harmed financially for two years with no way out.

43.  <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, the Supreme Court of New Jersey

Even though Borden did not breach express obligations of the contract in terminating the

contract, it did breach the implied covenant of good faith and fair dealing and was,

therefore, liable to Sons of Thunder for consequential damages, including lost profits.

Specifically the Court ruled: Because its conduct destroyed Sons of Thunder's reasonable

expectations and right to receive the fruits of the contract, Borden also breached the

implied covenant of good faith found in common law principles. A party's action

implicates the implied covenant of good faith if it acts so directly to impair the value of

the contract for another party that it may be assumed that they are inconsistent with the

intent of the parties.

44.  "TLC" under a rate sheet incentive from "AHM" did induce Plaintiff to refinance a

first mortgage and a HELOC into a first position loan instead of going the cheaper route

and just borrowing more funds. *Cannon v. Nationwide Acceptance Corporation*, a

Federal Judge in the Northern District of Illinois allowed a RICO class action to be

maintained on the basic premise that the lenders' solicitation of new business induced

existing borrowers to refinance existing loans rather than going the cheaper route of just

borrowing more funds.


III.   **TRUTH IN LENDING ACT**

45.  Plaintiff asserts that her affirmative claim was made timely as her loan was funded on April 6,

2006and her lawsuit was commenced on April 3, 2007 and Plaintiff's recission claim is timely and

well within the three year statute of limitations. 1 year for affirmative claims 15 USC 1640

3 Years for Recission .  12 CFR 226.23 (a)(3) Semar v Platte  Valley Fed. S&L Assn.  791 F. 2d 699

(9th Cir. 1986)

46.   Plaintiff did not receive a meaningful disclosure of credit terms and was misled as to the total

Cost of financing. Truth in Lending Act was passed to prevent unsophisticated consumer from being

Misled as tototal cost of financing. TILA, Section 102, 15 U.S.C. Section 1601. *Griggs v. Provident*

*Consumer Discount*. 680 F.2d 927, certiorari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74

L.Ed.2d 225, on remand 699 F.2d 642.  Rendering her unable to compare the various credit terms

Available to avoid the uninformed use of credit.  15 U.S.C.  1601(a)

47.   Plaintiff was unable to make an informed decision because "TLC," "ABC,"  "AHM," all

Conspired to withold material information about the loan product, the appraised value, and the terms

of the loans, rendering Plaintiff unable to compare the various credit terms available to avoid the

uninformed use of credit. Purpose of Truth in Lending Act is for customers to be able to make

informed decisions.  Truth in Lending Act Section 102, 15 U.S.C. Section 1601. *Griggs v. Provident*

*Consumer Discount Co*. 680 F.2d 927, certiorari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74

L.Ed,2d 225, on remand 699 F. 2d 642,

48.   Plaintiff asserts that TILA is aimed at deceptive practices by lenders, not the subjective beliefs

or actions of borrowers. Moreover, a plaintiff need not show actual harm to recover from a technical

violations of TILA., as they are strict liability offenses. *Adams v Nationscredit Financial Services*

*Corp*. 351 F. Supp. 2d 829 (N.D. Ill. 2004) ( citations ommited).

49.   Plaintiff asserts that the  Truth in Lending Act is strictly a liability statute liberally construed in

<u>Favor of</u> consumers. Truth in Lending Act Section 102 et seq., 15 U.S.C. Section 1601 et seq.

*Brophv v. Chase Manhattan Mortgage* Co, 947 F.Supp. 879.

50.   Plaintiff asserts she was misled by the advertising and continued presentation of the 1% Interest

Rate and the total focus on that rate as a "promised tool" to lower payments and save her money. In

Fact the loan cost Plaintiff more money and the terms and interest rate of the loan would cost her

Thousands more per month and millions over the life of the loan.  Truth in Lending Act should

be construed liberally to ensure achievement of goal of aiding unsophisticated consumers so that

consumers are not easily misled as to total costs of financing. Truth in Lending Act, Sections 102 et

seq, 102(a), 105 as amended, I5 U.S.C. Sections 1601 et seq., 1601(a), 1604; TILA  Regulations,

Regulation Z, Sections 226.1 et seq., 226.18, 15 U.S.C. Section 1700, *Basile v. H&R Block.* Jlt

(L. 897 F.Supp. 194.

51.   Plaintiff was overcharged $966.00 in recordation tax. This amount was  not included in amount

Financed or the APR and the tolerance for error in foreclosure is only $35 difference.  This

Overcharge is more then enough to qualify for the loan rescission  provisions of TILA and RESPA.

Also under voidable title, equitable estoppel under Maryland Common Law.

Taxes and fees "prescribed by law that are or will be paid to public officials," such as for a

Release of lien. 12 C.F.R. 226.4(e). Truth in Lending Act must be strictly construed and liability

Imposed for any violation, no matter How technical. TILA Section 102et seq., as amended, 15

U.S.C. Section 1601 et seq, Abele  v. Mid-Penn Consumer Discount. 77 B.R.460, affirmed S45 F.2d

1009.

52.   Plaintiff asserts that the refinance transaction on her primary residence was a consumer

Credit transaction as defined in Truth in Lending Act [15 U.S.C. Section 1601 et seq.]

*Quino v. A-I CreditCom.* 635 F.Supp. 151

53.   Plaintiff asserts the violation of the were anything but minor, however even minor

Violations cannot be ignored.  Truth in Lending Act, Section 102 et seq. as amended, 15 U.S.C.

Section 1601 et seq.; Truth in Lending Act Regulations, Regulation Z Section 226.1 et seq., 15

U.S.C. foil. Section 1700. *Griggs v. Providence Consumer Discount Co.* 503 F.Supp. 246, appeal

Dismissed 672 F2d 903, appeal after remand 680 F.2d 927, certiorari granted, vacated 103 S.Ct, 400,

459 U.S. 56, 74 L.Ed.2d 225, on remand 699 F,2d 642.

54.  Plaintiff asserts the information presented on all the loan documents; the advertising

Flyer, loan application, Good Faith Estimate and final HUD-1 were all placed to mislead

and confuse Plaintiff. The TILA regulation provides that disclosure of consumer credit loan shall not

be "stated, utilized or placed so as to mislead or confuse" consumer, placement of disclosures is to

be considered along with their statement and use. TILA Regulation Z, Section 226.6(c), 15 U.S.C.

following section 1700 . *Geimuso v. Commercial Bank & Trust Co.* 566 F.2d 437.

55.  Plaintiff asserts that the information on all of  documents presented make it clear that the

Court must find liability against American Home Mortgage. Any violation of the Truth in Lending

Act, regardless of technical nature, must result in finding of liability against lender. TILA

Regulation Z Section 226.1 et seq., 15 U.S.C. Section 1700; TILA Section 130 (a, e), IS U.S.C.

Section 1640 (a, e). *In Re Steinbrecher.* 110 BR. 155, 116 A.L.R. Fed. 881.

56.  Plaintiff asserts that the documents presented clearly demonstrate that inaccuracies are

Present as well as misleading and confusing statements, disclosures, and conflicting.

Question of whether lender's Truth in Lending Act disclosures are inaccurate, misleading or

Confusing ordinarily will be for fact finder; however, where confusing, misleading and inaccurate

Character of disputed disclosure is so clear that it *cannot reasonably be disputed, summary judgment*

*for plaintiff is appropriate.* TILA Section 102 et seq; TILA, Regulation Z, Section 226.1 et seq., 15

U.S.C. Section 1700. *Griggs v. Provident Consumer Discount Co.* 503 F, Supp 246, appeal

Dismissed 672 F.2d 903, appeal after remand 680 F.2d 927, certiorari granted, vacated 103 S.Ct,

400, 459 U.S. 56, 74 L.Ed.2d 225, on remand 699 E2d 642.

57.  Plaintiff asserts that she was decieved by substandard disclosures and disclosures which were

25

not made within the required 3 day timeframe, however is not necessary to show that to impose

liability. Pursuant to regulations promulgated under Truth in Lending Act, violator of disclosure

requirements is held to standard of strict liability, and therefore, borrower need not show that

creditor in fact deceived by making substandard disclosures. TILA, Sections 102-186, as amended,

15 U.S.C. Section 1601-1667(e); TILA  Regulation Z, Section 226,8(b-d), 15 U.S.C. Section 1700

*Soils v. Fidelity Consumer Discount Co.*, 58 B.R. 983,

58.   Plaintiff asserts that this court has no choice but to impose liability as violations are

Certain and appear on the face of the documents presented.  Once a creditor violates the Truth In

Lending Act, no matter how technical violation appears, unless one of statutory defenses applies,

Court has no discretion in imposing liability. Truth in Lending Act, Sections 102-186 as amended,

15 U.S.C. Section 1601-1667e. *Solis v. Fidelity Consumer Discount* Co. 58 BR, 983.

59.   Plaintiff asserts that recission is the appropriate remedy as it would be unjust to permit "AHM"

To retain the fruits of the bargain induced by false representations."It is not necessary for recession

of a contract that the party making the misrepresentation should have known that it was false, but

recovery is allowed even though misrepresentation is innocently made, because it would be unjust to

allow one who made false representations, even innocently, to retain the fruits of a bargain induced

by such representations." *Whipp v. Iverson*, 43 Wis 2d 166.

60.   Plaintiff asserts the loan promised, "AHM" never had any intention of giving. The unseverable

Promise which started with the direct mail flyer and continued through the Good Faith Estimate for a

Lower interest rate and payment, no prepayment penalty, and cash out, was severed abruptly with no

Forewarning after a long string of misleading documents and delay tactics.  "If any part of the

Consideration for a promise be illegal, or if there are several considerations for an unseverable

Promise one of which is illegal, the promise, whether written or oral, is wholly void, as it is

Impossible to say what part or which one of the considerations induced the promise. " *Menominee*

*River Co. v. Augustus Spies L & C Co.*, 147 Wis 559, 572; 132 NW 1122

61.  Plaintiff asserts that the false inflated appraisal, the 1% Interest Rate offered  and posted

Prominently on all the  documents, the last minute added prepayment penalty, higher interest rate,

And hidden overcharge of $966 in  recordation tax render this loan full of false representations of

Material facts that AHM was well aware of the facts and used them to induce the Plaintiff into the

Contract. "Any false representation of material facts made with knowledge of falsity and with intent

That it shall be acted on by another in entering into contract, and which is so acted upon, constitutes

'fraud,' and entitles party deceived to avoid contract or recover damages." *Barnsdall Refining Corn.*

v. Birnam wood Oil Co., 92 F 2d 817.

62.  Plaintiff's documents contained an overcharge of $966 in recordation tax  which should

Have been included in the "amount financed." Every loan charge must be properly disclosed as
either

Part of the "amount financed" which represents "the amount of credit provided to you or on your

Behalf," 12 C.F.R. 226.18(b), or according to the rules set forth 12 C.F.R. 226.4 and includes; any

Charge paid directly or indirectly by the creditor as an incident to or a condition of the extension of

Credit. Exclusions for overcharges only apply if they are <u>bona fide and reasonable.</u>

63. Plaintiff also asserts that the title insurance was an overcharge as "AHM" took a "lender's

policy"  for more then the amount of the face value of the loan thereby padding the fee which

they most  likely split with the Title company. "AHM" operates two captive reinsurance companies,

a title abstract company and a vendor management company.

64. "AHM" may have also split the fee with the appraiser through Homegate Settlement services.

65.  All of these items and other charges on the HUD-1  can only be clarified through discovery

Which will  reveal if "AHM" did share in any of these fees charged on the HUD-1.

66. Plaintiff should have been charged only refi rate for title insurance and Plaintiff upon belief and

Investigation finds she may have been overcharged for Title Insurance. Where information as to

Reasonability of the rate is more likely to be in the control of the lender, the lender has the burden of

Proof on this issue. If there is a difference, or "upcharge" it would be considered a finance charge.

RESPA covers all federally related mortgages secured by the family home 12 USC 2602(1) 24 CFR

3500.2  12 USC 2601 et seq Hud Regulation X  24 CFR 3500 et seq.

67. Plaintiff did not receive any disclosures within the 3-day allowed timeframe. RESPA calls for

More effecitve advance disclosure to home buyers and sellers of settlement cost.

68. Plaintiff was overcharged for title insurance and charged a title abstract fee. A portion of these

Items may have been fee split between "SL" and "AHM."

69. Plaintiff's transaction included a Cryptic YSP and was also charged separate broker fees listed

on the HUD-1 and was not given any broker agreement as required under Md. Law.

It was not a bona fide and reasonable fee and was in fact an incentive for the harsh terms included

in the transaction and based off a rate sheet provided by the lender for such incentives in violation of

RESPA prohibition against unearned fees and fee splitting: 12 USC 2607 (b) 24 CFR 3500.14

RESPA prohits the giving and receiving of " any portion, split or percentage of any charge made or

Received for the rendering of a settlement services in connection with a transaction involving a

Federally related mortgage loan other than for services performed. The regulations further state that ,

A charge is an unearned fee and violates this section." RESPA seeks to eliminatie kickbacks or

Referral fees that tend to increase unnecessarily the costs of certain settlement services 12USC 2601

(b) RESPA prohibits the giving or receiving of any fee, kickback, or other thing of value for the

referral of a "settlement service." 12 USC  2602(3) and 24 CFR 3500.2 .

An agreement or understanding for the referral of business incident to or part of a settlement service

28

Need not be written or verbalized but may be established by a practice, pattern or course of conduct.
A Yield Spread Premium is a fee paid by a mortgage lender to a mortgage broker for arranging a
Loan with an interest rate at a higher amount than the par rate. Payment of a yield spread premium is
not a per se violation of this section, but may be illegal under RESPA based on a factual inquiry into
the circumstances surrounding the payment. *Vargus v Universal Mortgage corp.* 2001 US Dist.
LEXIS 6696, 6 ( N. Dist. Ill. 2001) *Culpepper v Inland Mortgage Corp.* 132 F. 3 D 692 ( 11th Cir.
1998) Eleventh Circuit in Culpepper v. Inland Mtge ruled that yield spread premiums were
prohibited referral fees under RESPA, plaintiffs instituted a RICO class action based on that
practice.

70.  Whether the YSP-based violation is pled under RESPA, the CFDBPA, or YSP- based breach of
Fuduciary duty, it must meet the RESPA pleading standard.

68.  Shah's three-part test for a RESPA YSP violation on HUD statements.

1.  The existence of an agreement between the lender and broker whereby the broker promises to
Refer settlement services business to the lender.

2.  The transfer of a thing of value between the lender and the broker based on that agreement.

3.  The referral of settlement service business by the broker to the lender ( see SHAH at 789) and
Either that:  (A)The broker received a YSP without providing any goods or services of the kind
Typically associated with a mortgage transaction or (B) If the broker did provide such goods or
Services, the total compensation paid to the broker was not reasonably related to the total value of
the goods and services actually provided. *Johnson v Matrix 820* N.E. 2 d 1094

Private right of action for violation of 2607 (Illegal referral fee or kickback and fee splitting)
Statutory damages: Person charged for the settlement service can recover an amount equal to " three
Times the amount of any charge paid for such settlement service" plus attorneys fees and costs. 12

USC 2607(d)

69. Plaintiff's loan application sets forth requested terms dated Feb 17, 2006 and Good Faith

Estimate is dated March 13, 2006 both showing terms requested. Settlement was on April 3, 2006

Proving there was no written counter offer ( within 30 days) to terms requested. Counteroffer would

Have needed to be on or before March 17, 2006. The loan includes worse terms than those requested

in loan application and this is in violation of ECOA ____. Plaintiff therefore requests the more

favorable terms offered and $10,000 in Punitive damages.

70. Consumer Fraud and Deceptive Business Practices Act  "AHM," "ABC," "SL" and "TA" all

violated the the CFDBPA as set for the in the entirity of the complaint by employing unfair methods

of competition and unfair or deceptive acts  or practices, including but not limited to the use or

employment of any deception fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of anymaterial fact, with the intent that others rely upon the

concealment, suppression or omission of suchmaterial fact, or the use or employment of any practice

described in Section 2 of the the "Uniform Deceptive Trade Practices Act" approved August 5,

1965, in the conduct of any trade or commerceare hereby declared unlawful whether any person has

in fact been misled, decieved or damaged  thereby." Section 5(a) of the FTC Act ( 15 USC  45)

 1 ) The deceptive acts against each defendant are outlined in the totalilty of this complaint.

 2) The intent for the Plaintiff to rely on the deception is clear, as it was each Defendants role to

forward the loan transaction thereby commiting fraud on the Plaintiff.

3) The deception occurred in the course of conduct involving trade or commerce. *Martin v. Heinold*

*Commodities, Inc.* 163 Ill 2d 33, 75, 643 N.E. 2d 734 (1994)

(4) Plaintiff  suffered great financial harm of great loss of equity in her home by entering into this

Transaction based on deceptive acts. Id.

(5) The practices constitute commercial unfairness, offends the public policy, is immoral, unethical,

Oppressive, or unscrupulous; and causes substantial injury to consumers. *Robinson v. Toyota Motor*

*Credit Corp.* 201 Ill 2 d 403, 417-18 (2002)

71. "AHM" did employ predatory lending practices, including improvident lending, see, e.g.,

*Fidelity Financial Services v. Hicks*, 214 Ill. App. 2d 398( Ist Dist. 1991), and "bait and switch"

Practices, see, e.g., *Chandler v. American General Finance,* 329 Ill. App. 3d 729 (1st Dist. 2002).


IV.    LOAN RECISSION

71.  On December 29, 2006 Plaintiff did respond to a letter sent by Cohn Goldberg &

Deutsch asserting if Plaintiff had any dispute of the debt she should notify them in

writing. Plaintiff did dispute the amount owed at that time. Once again  on April 1, 2007

Plaintiff did send a letter, this time demanding loan rescission to Cohn Goldberg &

Duetsch and at the same time to American Home Mortgage citing violations

of TILA, RESPA, and the Md Code Ann. Comm. Law 13-101.  Both times Plaintiff

received no communication from either party  in reference to her complaints. On

Plaintiff did send the TILA rescisssion  letter to  the original creditor whose name is on

the 3-Day Right to Rescind,  to Cohn Goldberg & Deustch,   and  the current servicing

agent, American Home Mortgage Servicing. No response to this date is forthcoming.

Upon recission," the security interest giving rise the right of recission becomes void and

the consumer shall not be liable for any amount, including any finance charge"

CFR226.**23(d)(1)**

72.  "AHM" did not respond within 20 days to take the action required to cancel the

security interest or return any money paid on the loan. 12CFR226.23(d)(2)

*White v WMC Mortgage* 2201 US District . LEXIS 15907, at * 5 (E.D. Pa. July 31,

2001): *Williams v Gelt,* 237 B.R.  590, 598-99 ( E.D. Pa. 1999)

## V.  DAMAGES

73.  "AHM" failure to respond to the recission notice as spelled out above results in

another violation and an additional award of statutory damages. $2000  *White v WMC*

*Mortgage* 2001 US District . LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001  *Mayfield v*

*Vanguard Savings & Loan,* 710 F. Supp. 143, 145 ( E.D. Pa. 1989)

74.  Plaintiff has suffered Actual Damages including pecuniary losses,  lost wages, out of

pocket expenses, and physical injuries such as vomiting and insomnia, personal

humiliation, embarrassment, mental anguish and emotional distress. Smith v. Law

Offices of Mitchell N. Kay, 124 B.R. 182 (D.Del. 1991).

75.  Proof of state law elements of negligence and intentional infliction of emotional

distress is not required. **Id.; Grassley v. Debt Collectors, Inc.,** Clearinghouse No.

49,145A (D. Or. 1992); **Vidrine v. American Professional Credit,** Inc., 477 S.E.2d 602

(Ga. App. 1996); **Wenrich v. Robert E. Cole, P.C.,** 200 U.S. Dist.

LEXIS 18687 (E.D. Pa. 2000).

76.  Due to failure to make clear consistent, conspicuously made and accurate material

disclosures including; incorrect APR and amount financed due to overcharges and loan

structure and incorrect interest rate due to hiding terms, Plaintiff is requesting  full loan

recession, including the disgorement of all payments and settlement cost.  The difference

in finance charge is more then $100 difference therefore Plaintiff is entitled to recession

and statutory damgages. CFR 226.18(d)(1)

77. Plaintiff requests that the title be void under Common Law Title Rule: Voidable title UCC 2-403(1) – passage of title by fraud – codifies and defines common law rules of voidable titles – eg, title acquired by fraudulent means.

78. Plaintiff asks for relief under Equitable Estoppel doctrine due to all of the entities in this complaint conspiring to induce Plaintiff into a refinance loan.. The doctrine prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice. (Porter v Wertz)

79. Under RESPA § 2607 (Illegal referral fee or kickback and fee splitting) Plaintiff seeks Statutory damages equal to "three times the amount of any charge paid for such settlement service," plus attorney's fees and costs. 12 U.S.C. § 2607(d). 1 year for affirmative (kickback and fee-splitting) claims. 12 U.S.C. § 2614.

80. For violations of the Maryland Common Law Fraud and DBPA the Plaintiff seeks the remedy of rescission—releasing the security interest in the property and giving rise to an Order to Dismiss the Complaint for Foreclosure of Mortgage. All payments paid should be credited against the principal.

81. For the overcharge in recordation tax of $966 Plaintiff requests loan rescission. The finance charge tolerance for defendants in foreclosure actions is $35 (for rescission), 12 C.F.R. 226.23(h), and $100 (for monetary damages), 12 C.F.R. 226.18(d)(1).

82. Under ECOA Plaintiff requests relief of the the more favorable terms requested by Plaintiff, actual damages, equitable relief, plus $10,000 in punitive damages. Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. (ECOA)

**WHEREFORE**, the Plaintiff requests that the court accept this pleading and clarify the action against American Home Mortgage in light of the bankruptcy.

**WHEREFORE,** The Plaintiff requests recission, actual damages, statutory damages, and punitive damages in an amount to be determined at trial, out of pocket costs and lost wages.15U.S.C. 1640 (a)

Respectfully submitted,

Paula Rush pro se

2651 Peery Drive

Churchville Md. 21028

443-676-3509

paularush@comcast.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**( Southern Division)**

| | | |
|---|---|---|
| **PAULA RUSH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 07-854 (WMN)** |
| | § | |
| **AMERICAN HOME MORTGAGE,** | § | |
| **INC., ET AL.,** | § | |
| **Defendant** | § | |

**ORDER GRANTING PLAINTIFF'S MOTION IN OPPOSITION**
**TO DEFENDANT AMERCIAN HOME MORTGAGE MOTION TO DISMISS**

Upon consideration of Plaintiff *Paula Rush's Motion In Opposition To Defendant's*

*Motion Dismiss*, and upon further consideration of any opposition thereto, it is

this_____day of _____,2007,

**ORDERED**, that Paula Rush's Motion In Opposition  is GRANTED, and it is further,

**ORDERED**, that Plaintiff's complaint and each cause of action against the Defendant

American Home Mortgage is upheld pending answers to the facts alleged, it is further,

**ORDERED**, that Defendant  preserve all documents, it is further,

**ORDERED,** that Plaintiff is granted injunctive relief against foreclosure,

_____
Honorable William M. Nickerson
United States District Judge

35

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| PAULA RUSH, ) | |
| ) | |
| Plaintiff, ) | Case No. 07-854 (WMN) |
| ) | |
| v. ) | |
| ) | |
| AMERICAN HOME MORTGAGE, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' SUGGESTION OF BANKRUPTCY

Defendants American Home Mortgage Corp. (d/b/a American Brokers Conduit) and American Home Mortgage Servicing, Inc. suggest that, on or about August 6, 2007, they filed voluntary petitions for relief under Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware, Wilmington Division, that have been assigned case numbers 07-11051 and 07-11050, respectively. Defendants further suggest that this action has been automatically stayed by operation of 11 U.S.C. § 362(a).

Respectfully submitted,

_____/s/_____
David M. Souders (Bar No. 015102)
Nancy W. Hunt (Bar No. 16648)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC  20036
202.628.2000
202.628.2011 (facsimile)
Counsel for Defendant American Home