UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| American Home Mortgage | : | Jointly Administered |
| Holdings, Inc. et al., | : | Under Case No. 07-11047 (CSS) |
| | : | |
| | : | |
| Debtors | : | |
| | : | AFFIDAVIT OF PAULA RUSH |
| | : | |

The undersigned Affiant, Paula L. Rush, hereby states and deposes as follows:

1. Affiant, Paula L. Rush, advocating on behalf of all borrowers whose loans are held hostage in American Home Mortgage Servicing division, asserts the foregoing on behalf of all consumers and borrowers whose mortgage loans were originated or are currently held in any American Home Mortgage debtor or non-debtor entity, affiliates, subsidiary, or are held in any known or unknown financing partners companies or LLC's, including any privately held LLC's affiliated with Michael Strauss or any executive of American Home Mortgage, which loans are now serviced under American Home Servicing.

2. Ms. Rush, is representing and advocating on behalf of all borrowers to have a voice in very important issues, which affect us, being addressed in this bankruptcy court.

3. On behalf of all borrowers, Affiant asserts that any claims of fraud are not protected from relief under the bankruptcy code. The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of

1

affording relief only to an "honest but unfortunate debtor."

3. Congress clearly intended that perpetrators of fraud should not be given the opportunity to wipe out debts in bankruptcy thereby Plaintiff's action against them should be allowed to go forward. Congress <u>did not</u> favor giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws. Accordingly, Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

4. The Supreme court has ruled that it is not just the value of the property, but that also includes treble and punitive damages.

5. Affiant asserts debts which are non-dischargeable include:

(a) Debts incurred due to false statements made with the intent to deceive

(b) Fraud committed in a fiduciary capacity, such as embezzlement or larceny

(c) Punitive damage claims for "willful and malicious" acts

6. The bankruptcy Court protection <u>can not</u> protect American Home Mortgage from allegations of Fraud, including Statutory or regulatory remedies, punitive and treble damages.

7. Borrower's statutory remedy of rescission and relief can not be avoided in any way as statutory and regulatory remedies are not protected by bankruptcy.

8. As borrowers and "legal owners" of property, our Deeds of Trust and Mortgage Notes are an asset to the Debtors estate, and as such borrowers hold an equity interest in the

Case 07-11047-CSS    Doc 1489-9    Filed 10/04/07    Page 3 of 14

Debtors estate. As borrowers we represent 197,000 loans with an outstanding principal balance of approximately $46.3 Billion. This asset far outweighs any other asset of this Debtor or the creditors of the estate. Property of the estate includes, but is not limited to, all of the debtor's legal or equitable property interests and most community property, as well as interests in property either recovered by a trustee, preserved for the benefit of the estate, or ordered transferred to the estate, such as avoidable preferences and fraudulent transfers. See 11 U.S.C. §541 (aX1-7).

9.  Our Notes are Secured Claims. Secured claims are defined as including "liens," 11 U.S.C. § 101(37), "security," 11 U.S.C. § 101(49), "security interest," 11 U.S.C. § 101(51), "security agreement" 11 U.S.C. § 101(50), and "secured claim," 11 U.S.C. § 506(a). An allowed claim secured by a lien on property in which the estate has an interest, or that is subject to setoff, is a "secured claim" to the extent of the value of the creditor's interest in the estate's interest in the property, or the amount subject to setoff. 11 U.S.C. § 506(a). A secured claim carries the right to "adequate protection" of collateral. 11 U.S.C. §§ 361-364; see United Sav. Ass'n v. Timbers of Inwood Forest Assocs., 484 U.S. 365 (1988).

10.  If the note is to be sold to another entity, borrowers have the right to protection of what personally identifiable information as defined in U.S.C. §741(3) may be provided to that entity in the process. Borrowers also have the right to assert claims and preserve claims against any entity who purchases the note.

11.  Important issues need to be addressed concerning "customer property" as defined under U.S.C. §741(4)et seq., including the security, and proceeds of such security, property, received, acquired, or held by or for the account of the debtor, from or for the securities account

3

of a customer. Property such as deed of trust, securities, and escrow accounts which may have been unlawfully converted that is the lawful property of the estate.

12. Borrowers have the right to disclosure of any known and unknown parties of interest in their notes, including but not limited to any and all loan financing partners, credit default swap partners, guarantors, master loan servicer, credit insurers, credit enhancement providers, whether that party insures an individual loan or an entire loan pool, including any party who as defined under 741 (7) (A)(i) which owns a security interests or provides insurance associated with a particular loan or loan pool that carries any credit enhancements, or any guarantee as defined under 741 (A)(ix).

13. These assets, upon information and belief may be transferred in pending transactions without any liabilities attached. American Home can not use the bankruptcy court and transfers of assets to avoid allegations of Fraud. Once it is established that specific money or property has been obtained by fraud, "any debt" arising therefrom is excepted from discharge.

§523(a)(2)(A) excepts from discharge all liability arising from fraud, treble damages (plus attorney's fees and costs) awarded on account of the debtor's fraud fall within the scope of the exception. The most straightforward reading of §523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or ... credit" that the debtor has fraudulently obtained. See *Field* v. *Mans,* 516 U.S. 59, 61, 64.

An obligation to pay treble damages satisfies the threshold condition that it constitute a "debt." That word is defined as liability on a "claim," §101(12), which in turn is defined as a "right to payment," §101(5)(A), which this Court has said means an enforceable obligation, *Pennsylvania Dept. of Public Welfare* v. *Davenport,* 495 U.S. 552, 559. An award of treble damages is an enforceable obligation of the debtor, and the creditor has a corresponding right to payment. Moreover, the phrase "to the extent obtained by" in §523(a)(2)(A) modifies "money, property, services, or ... credit"–not "any debt"–so that the exception encompasses "any debt ... for money, property, [etc.], to the extent [that the money, property, etc., is] obtained by" fraud.

The Court rejects petitioner's argument that a "debt for" money, property, etc., is necessarily limited to the value of the "money, property, services, or ... credit" the debtor obtained by fraud, such that a restitutionary ceiling would be imposed on the extent to which a debtor's liability for

4

fraud is nondischargeable. That argument is at odds with the meaning of "debt for" in parallel exceptions to discharge set forth in §523(a), which use "debt for" to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like. The Court's reading of §523(a)(2)(A) is also reinforced by the fraud exception's history.

Moreover, §523(a)'s various exceptions from discharge reflect Congress' conclusion that the creditors' interest in recovering full payment of debts in these categories outweighs the debtors' interest in a complete fresh start, see *Grogan v. Garner*, 498 U.S. 279, 287. Pp. 4—10.106 F.3d 52, affirmed. O'Connor, J., delivered the opinion for a unanimous Court.

The extended right of rescission lasts 3 years from the date of the closing of the loan. 12 C.F.R. 226.23(a)(3). *Semar v. Platte Valley Fed. S&L. Assn.*, 791 F.2d 699 (9th Cir. 1986)

The rescission remedy runs against any assignee: "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill. 1996); *Stone v. Mehlberg*, 728 F.Supp. 1341 (W.D.Mich. 1989).

Upon rescission, "the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge" (step one). 12 C.F.R. 226.23(d)(1). Within 20 days the creditor must take any action required to cancel the security interest and must return any money paid on the loan (step two). 12 C.F.R. 226.23(d)(2).

Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents. 15 U.S.C. §1641(a).

14. Affiant sent a RESPA Qualified Written Requests which American Home Mortgage negligently failed to answer and was required to do so under Federal law. American Home failed to live up to their contractual duty and it has frustrated the borrower's ability to perform on (or reinstate) the contracts therefore breaching the contract or its duty of good faith and fair dealing, which is implied in every contract. The parties to a contract have a duty to honor their obligations thereunder, and they also have an implied duty of good faith and fair dealing.

15. This document will serve as public notice to any purchaser of the Deeds of Trust or Mortgage Notes that liability for common law fraud can be extended, from the lender to a third Party, if that third party knowingly accepts the "fruits of the fraud."

16. Borrower's issues in this action constitute the enforcement of regulatory powers pursuant to *§ 362(b)(4):* permits commencement or continuation of action to enforce police or regulatory powers.

17. Affiant asserts many causes of action carry criminal fines and penalties and asks the court recognize the criminal dimension.

## **RELIEF REQUESTED**

## **TRUSTEE OR EXAMINER**

18. Affiant moves this court pursuant to §1104(a)(1)(2) for an appointment of Trustee or Examiner (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause; (2) such appointment is in the interest of creditors, equity security holders, and other interests of the estate, known and unknown parties of interest.

19. Affiant moves this court pursuant to pursuant to §1106 (3) and requests this court to appoint an independent examiner to investigate the acts, conduct, assets, liabilities, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the formation of a plan. Under §1106 (4)(A)(B)

20. Affiant moves this court to file a statement of any investigation conducted under paragraph (3), including an fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to

a cause of action available to the estate and transmit a summary of any such statement pursuant to §1106 (4)(B).

## SUPREME COURT

21. Affiant moves this court to stop protecting this Debtor against fraud as stated by the Supreme Court of the United States.

It is not only the actual value of the "money, property, services, or . . . credit" the debtor obtained through fraud that is non-dischargeable in bankruptcy, but also treble "punitive" damages and attorneys fees and costs related to the fraud. This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in Cohen v. de la Cruz. Debts which can't be discharged in bankruptcy....(8) Debts incurred due to false statements made with the intent to deceive (9) Fraud committed in a fiduciary capacity, such as embezzlement or larceny (10) Punitive damage claims for "willful and malicious" acts

## CONSUMER PRIVACY OMBUDSMAN

22. On behalf of all borrowers we request the appointment of a Consumer Privacy Ombudsman pursuant to U.S.C. § 332.

23. Affiant moves this court to protect borrowers personal information, which is being shared with a variety of other entities and potential bidders for the American Home Servicing business and loan pools such as Broadhollow LLC and Melville LLC.

24.  The trustee pursuant to U.S.C. § 363 (b)(1) is required to protect the personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the

7

trustee may not sell personally identifiable information to any person unless(A) such sale or such lease is consistent with such policy; or (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale (I) giving due consideration to the facts, circumstances, and conditions of such sale; and(ii) finding that no showing was made that such sale would violate applicable nonbankruptcy law. (2) If notification is required under subsection of section 7A of the Clayton Act in the case of a transaction under this subsection, then, (A) notwithstanding subsection (a) of such section, the notification required by such subsection to be given by the debtor shall be given by the trustee; and not disclose to an individual Consumer's have the right to know that personal information is being protected, loan files are being protected, documents related to potential claims are being secured and protected, and private information is not transferred to unknown entities.

33. Plaintiff further moves this court to appoint a Consumer privacy ombudsman pursuant to U.S.C. § 332 et seq. in order to protect personal information and property rights pursuant to U.S.C. §363 et seq. of all borrowers whose loans are now part of American Home Mortgage Servicing to protect the interest of all borrowers in reference to currently pending sales of negotiable instruments, documents of title, deposit accounts, and other assets of the estate under §363(a)(b)(1), which may or may not include Ms. Rush's property.

## US TRUSTEE

34. Affiant moves this court, for the bankruptcy trustee as the representative of the estate, pursuant to U.S.C. §323 (a) and U.S.C. §363 (a) to protect all negotiable instruments, documents of title, securities, deposit accounts, whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, or profits of property and the fees, charges, accounts or other payments for the use or occupancy, whether existing before

or after the commencement of a case.

35. In this capacity the bankruptcy trustee pursuant to §323 (b) has the capacity to sue and to be sued. The relief requested will protect the Debtor's estate from further legal action due to the negligent actions of American Home Mortgage Servicing during the Chapter 11 liquidation process.

## **PROTECTION OF RIGHTS OF BORROWERS**

25. Affiant moves this court to block any attempts to transfer loans to purchasers free and clear of pending litigation or any liabilities incurred by the Debtors. On behalf of all borrowers affiant requests that all borrower rights are protected under "all" State and Federal laws applicable to consumer credit transactions including but not limited to:

TILA
RESPA
ECOA
DBPA
HOEPA

TRUTH IN LENDING ACT (TILA) 15 USC 1601-1667f
Sec. 1607 - Administrative enforcement
Sec. 1640. - Civil liability
Sec. 1641. - Liability of assignees;
Sec. 1635. - Right of rescission.

Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.
**(d)** Rights upon assignment of certain mortgages

26. Affiant moves this court to uphold the Bankruptcy Code through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), 11 U.S.C. §363(o) provides as follows:

Notwithstanding (11 USC §383(f)), if a person purchases any interest in a consumer credit transaction that is dubject to the Truth in Lending Act ("TILA") or any interest in a

9

consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transactions or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

27. Affiant request on behalf of all borrowers, that this court slow the process down and not allow important sales of assets to be conducted in a timeline that no one can even begin to ascertain the value of assets or ensure that legal protections for property owners, investors, creditors, and Note holders can be enforced.

28. On September, 27, 2007 American Home filed a document ( Docket # 931) which outlined the sale of certain assets of American Home Mortgage Servicing and sought to approve AH Mortgage Acquisition Co. Inc. as the "stalking horse" bidder and set a deadline for objections for Oct. 2, 2007. This document was voluminous and no one could possibly read and reply to such a document within the time allowed. This document was also a clear attempt to fraudulently transfer assets without liabilities to the debtor- in-possession, Wilbur L. Ross Jr. and an unveiling it was Ross who was stalking-horse bidder for the company's servicing business. The stalking-horse fees are coming out of the Debtor's estate and this new document also calls for a "$5 million dollar prize" to Mr. Ross if the deal falls through. Using debtor funds, Mr. Ross and American Home are hiring an army of attorneys to "fast track" this through, funds which "he will be paid back first" out of Debtors estate. Mr. Ross is using this court, and his insider position to extract stalking horse bidder fees, and other unconscionable fees through this court using the speed and urgency to push his personal agenda through.

29. WLR Recovery Fund III LP WL Ross & Co. LLC, provided the company with $50 million in DIP financing, which was approved on Sept. 4, and has used that DIP financing to hire the army of attorneys to ensue maximum return for his investment. These funds are also

being used to hire and pay an army of attorneys recklessly pursuing foreclosures before true owners of the notes can get loans out of the bankrupt entity. During this bankruptcy window of time, Ross can give funds to forward his personal interests, then reap the benefit of those funds coming back to him, thereby using the Debtor estate money to finance the new business venture Ross has created in AH Mortgage Acquisition Co.

30. Ross has offered to purchase the servicing business for $6 million plus the initial servicing balance price (the unpaid principal balance on the mortgage loans) and 92% of the amount of outstanding balances, which have been paid out but have not yet been collected from third parties. This court, US Trustee, and unsecured creditors committee, needs to define and clearly understand what assets Mr. Ross is buying.

31. Upon information and belief assets, as described in "DECLARATION OF MICHAEL STRAUSS IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PETITIONS AND FIRST DAY RELIEF," will be transferred with the servicing unit, including, non-debtor entities: CNI Reinsurance, Ltd., a company established under the laws of Turks & Caicos Islands; NAP Financial Services, LLC, a Maryland limited liability company; and CNI Title Services, LLC, a Maryland limited liability company. As of American Home Mortgage 10K filing of December 31, 2006, under Melville Reinsurance Corp. approximately $ 1.7 billion conventional loans were part of reinsurance agreements and assets totaled $ 6 Million dollars. Under CNI Reinsurance Ltd., approximately $3.2 conventional loans were part of reinsurance agreements, with assets valued at $8.3 million. No reserve had been recorded against these assets and AHM believed no reserve was required due to loss experience.

## DEMAND FOR TRUE OWNER OF THE NOTES

29. On behalf of all borrowers we request American Home as servicer immediately and without malice or negligence provide any borrower who request the information the true owner of the note as required by law.  2605(i)(2) of title 12.

(f) Treatment of servicer
(2) Servicer not treated as owner on basis of assignment for administrative convenience A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. **Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.**
(3) "Servicer" defined
For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of title 12.


Affiant further sayeth naught.

*"Under penalties of perjury, I declare that I have personally prepared and read the forgoing document and that the facts stated in it are true."*


_____   Date: 10/4/07
Affiant Paula L. Rush

# Exhibit A

**American Brokers Conduit**

## Privacy Policy Notice

At **American Brokers Conduit** your privacy is important to us. That is why we work hard to uphold your privacy. The information that you provide us is always kept in the strictest of confidence. We have no intentions of selling your nonpublic personal information to any nonaffiliated third parties. We make this commitment to you with pride, because your trust is the foundation of our business.

To protect your privacy and maintain your confidence in us, we have developed the following policies. These policies describe the strict standards we have in place to protect your confidentiality. Therefore, we ask you to please read this information carefully.

We will tell you the sources of nonpublic personal information we collect from you. We will then tell you what steps we take to protect that information.

We first define some terms used in this notice:

**We, our** and **us** means American Brokers Conduit, a division of American Home Mortgage Corp.

**You and your** mean the following individuals:
— Those **consumers** who have provided us with nonpublic personal information for the purpose of determining whether he or she qualifies for a mortgage loan; and
— Those **customers** who have obtained real estate settlement services from us.

**Nonpublic personal information** means personally identifiable financial information about you that we collect in connection with providing a financial product or service to you. This does not include information that is available from public sources, such as government real estate records.

**Affiliate** means a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company as us.

**Nonaffiliated third party** means a company that is not an affiliate of ours.

We collect nonpublic personal information about you from the following sources:
— Information we receive from you on applications or other forms;
— Information about your transactions with us, our affiliates, or others; and
— Information we receive from a consumer reporting agency.

**We do not disclose any nonpublic personal information about our consumers, customers, or former customers to anyone, except as permitted by law.**

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.