**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE:                                  :          **Chapter 11**
                                        :
  **American Home Mortgage**            :          **Jointly Administered**
  **Holdings, Inc. et al.,**            :          **Under Case No. 07-11047 (CSS)**
                                        :
                                        :
  **Debtors**                           :
                                        :

**MOTION FOR DISCLOSURE UNDER U.S.C. § 363, § 1106,**
**AND BANKRUPTCY RULE 2004, DIRECTING EXAMINATION OF,**
**AND PRODUCTION OF DOCUMENTS BY DEBTORS**
**AND COMPLAINT FOR INJUNCTION AND PROTECTION OF TAX ESCROW**
**ACCOUNTS AND REQUEST FOR APPOINTMENT OF**
**CONSUMER PRIVACY OMBUDSMAN PURSUANT TO U.S.C. § 332**
**AND TRUSTEE OR EXAMINER PURSUANT TO U.S.C. § 1104**

Mona Dobben, pro se, moves this Court for entry of an order pursuant to U.S.C.

§323, and U.S.C. §1106 of title 11 of the United States Code, 11 U.S.C. § § 101, et seq. (the

"Bankruptcy Code") and rule 2004 ("Rule 2004") of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), directing the examination of, an production of documents by,

American Home Mortgage, et al ("Debtors"). Plaintiff moves this court for an appointment of

Consumer Privacy Ombudsman pursuant to U.S.C. §332 and Trustee or Examiner pursuant to

U.S.C. §1104. In support of the Motion, the Plaintiff states as follows:

---

1.   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Investment"), a Maryland corporation (1979);  American Home Mortgage Servicing, Inc.( "AHM Servicing"), aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558); American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

This petition is in reference to the security interest held on property 38645 37th Street East, Palmdale CA 93550 , loan number #0001702441, originated by American Home Mortgage 538 Broadhollow Rd. Melville NY 11747 through American Brokers Conduit 1500 W. Shaw Avenue Suite 403, Fresno CA 93711. American Home or "unknown" related financing partner holds security interest in 38645 37th Street East, Palmdale CA 93550, The loan was settled on April 19, 2007 by Titan Escrow Corporation 1216 West Avenue J. Suite 300, Lancaster CA 93534. American Home paid a YSP of $6307.88 to an unknown broker not revealed on the HUD-1. American Brokers Conduit, American Mortgage Acceptance, Inc., Titan Escrow, and LandAmerica Gateway Title, and other unknown parties, all earned fees on this transaction. Ms. Dobben was the victim of a mortgage fraud ring operating in CA under Historical Real Estate & Finance, Preferred Real Estate & Finance, and several other business entities. The property which is the subject of this transaction must have been falsely valued by an unknown appraiser as Ms. Dobben does not have an appraisal. The HUD-1 and closing documents Ms. Dobben has are wholly incomplete and inconsistent.

Payments are to go to: American Home Mortgage Servicing, Inc. PO Box 660029 Dallas, TX 75266-0029.

Plaintiff, Mona Dobben, appears in this matter, pro se, in accordance with 11 USC §1109 and Bankruptcy Rule 2004, and requests a hearing on this urgent matter for cause:

## **JURISDICTION**

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §157, and §§§1334, 1135 and 1357. This matter is a core proceeding pursuant to 28 U.S.C. §157 (b)(2)(A)(O). Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

## STATUS OF THIS CASE

2.  On August 6, 2007 ( the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.  Each Debtor is continuing to operate its business an manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

## THE DEBTORS' BUSINESS

5.  Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizatons of residential mortgage loans. AHM also invested in securitzed mortgage loans originated by others and sold mortgage loans to institutional investors. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of various quality.

6.  A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal balance of approximately $46.3 Billion. AHM continues to conduct its servicing business, which constitutes an asset of the Debtors' estate.

## RELIEF REQUESTED

7.  By this motion ("Motion"), the Plaintiff request that this Court enter an order,

pursuant to Rule 2004, substantially in the form attached as <u>Exhibit A</u> ( the "<u>Proposed Order</u>") authorizing the examination of, and production of documents by, Debtors, so that the Plaintiff can ascertain the appropriate parties of interest and true holders in due course of the note held on Plaintiff's property.

8.     Plaintiff seeks authorization to obtain the production of documents from AHM Concerning (i) the property of the Debtors, including interests in such property;(ii) matters that may affect the administration of the Debtors' estate; and (iii) the identification of certain note holders, and loan insurers, in reference to Plaintiffs loan.

9.     The Plaintiff seeks entry of the Proposed Order, which includes an initial examination through document discovery and, subsequent to such document discovery, depositions of the entities named herein. The Plaintiffs' initial examination is currently limited to discrete issues involving the true owner of Ms. Dobben's  mortgage note and mortgage related securities, other financing partners of interest, credit enhancement providers  and loan insurers for Ms. Dobben's loan.

9.     The Plaintiff expressly reserves the right to serve supplemental and additional document requests that are within the scope of Rule 2004, and the Plaintiff will schedule depositions in an efficient manner following the substantial completion of document discovery in order to minimize the burden on the Debtors. The Plaintiff also expressly reserves the right to seek examination of entities other than the Debtors on similar or other areas of direct correlation to this issue.

## A.  Entities From Whom Examination Is Sought

10.     The Plaintiff seeks authority to serve a document request and deposition notice on the AHM Debtors including Broadhollow LLC, Melville LLC,  including by subpoena if

necessary, to determine the true owner of Plaintiffs note.

11.    Debtors are now in control Ms. Dobben's loan through the now bankrupt entity Amercian Home Mortgage Servicing, which is scheduled to be sold and Ms. Dobben seeks preservation of documents relating to servicing issues of her loan.

12.    Upon revelation of the true parties of interest in the note, the Plaintiff seeks authority to serve a document request and deposition on any affiliated counterparties with an interest in Ms. Dobben's loan; including credit default swap partners, credit enhancement partners, financing partners, or any insurer and the true holder of the note.

**B.  Areas of Requested Discovery**

13.    Plaintiff seeks the right to determine if certain lender documents, loan approval processes complied with the financing agreements with investors, and the requirements of third party credit insurers.

14.    Plaintiff seeks the right to discover the true owner of the note and have direct dialogue with that party in reference to possible loss mitigation and pending litigation against the parties of interest in reference to mortgage fraud.

15.    Plaintiff seeks the right to ensure that documents in reference to her mortgage origination and servicing account are preserved and protected for future legal action against the AHM Debtor entities.

**C. Need and Narrow Scope**

16.    The Rule 2004 discovery requested in this Motion will provide Plaintiff with information  required from those uniquely positioned to have it. The Plaintiff must obtain such information to protect and preserve the plaintiffs' rights and the possible interest of the Debtor's estate in her property which is an asset to the estate valued at over $400,000. The Plaintiff is

entitled to seek and obtain discovery regarding these and other matter relating to the acts, conduct, property, and potential liabilities of the Debtor's and their estate. The Plaintiff requires the requested information to assess fully the Plaintiff's potential claims against third parties – including, among other parties, some or all of the Debtors.

17.    The discovery sought herein is narrowly tailored to the factual matters raised or implicated by certain issues contained throughout this document. Compliance with the annexed Rule 2004 subpoenas and document requests by the Debtors will not be burdensome and can be achieved without undue hardship in the time period requested.

## C. Entry of Omnibus Order

18.    To facilitate the necessary discovery, Plaintiff requests that the Court enter the Proposed Order granting the Motion, and requiring the Debtors to produce documents responsive to schedules to be served by Plaintiff substantially in the form of the schedule annexed to the Proposed Order. Plaintiff requests that the Court order that such production be made on or before the date that is twenty (20) days after entry of the Proposed Order.

## APPLICABLE AUTHORITY

19.    Bankruptcy Rule 2004 provides, in relevant part, as follows:

(a) <u>Examination on Motion.</u> On motion of any party of interest, the court may order the examination of any entity.

(b) <u>Scope of Examination.</u> The examination of an entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge…

(c) <u>Compelling Attendance and Production of Documentary Evidence.</u> The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

20.    Examinations under Bankruptcy Rules 2004(a) and (c) may include within their scope, among many other things: any matter which may relate to the property and assets of the estate; the financial condition of the debtor; any matter which may affect the administration of the debtor's estate; and, in a chapter 11 case, any matter relevant to the case or to the formulation of a plan.

21.    A Rule 2004 examination is "designed to bring the Debtor's affairs to light, not to hide them." In re PRS Ins. Group. Inc. 274 B.R. 381, 385 ( Bankr. D. Del. 2001). "The purpose of Rule 2004 examination is 'to show the condition of the estate and to enable the court to discover its extent and whereabouts and to come into possession of it that the rights of creditors may be preserved.'" In re Coffee Cupboard, Inc., 128 B.R. 509, 514 ( Bankr. E.D.N.Y. 1991) (citing Cameron v. United States, 231 U.S. 710, 717 (1914)). See also In red Ionosphere Clubs. Inc., 156 B.R. 414, 432 ( S.D.N.Y. 1993) ( "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."), aff'd, 17 F. 3d 600 (2d Cir. 1994). The scope of inquiry permitted under a Rule 2004 investigation is generally very broad and can "legitimately be in the nature of a fishing expedition." In re Wilcher, 56 B.R. 428, 433 ( Bankr. N.D. Ill. 1985). See also In re Bakalis, 199 B.R. 443, 447 ( Bankr. E.D.N.Y. 1996)(same); In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984)(same).

22.    The information sought by Plaintiff concerns the Debtors' "acts, conduct, or property" or "liabilities and financial condition." Bankruptcy Rule 2004. Consequently, the documents sought by Plaintiff are clearly within the scope of a Rule 2004 examination.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 2004-1

23.    Plaintiff has discussed with counsel for the Debtors whether the Debtor would agree to voluntarily produce documents and make witnesses available consistent with this Motion. Plaintiff has attempted to obtain consent before filing of this motion. As of the filing of this Motion, Debtors have not indicated a willingness to proceed consensually. In order to prevent unnecessary delay arising from disputes concerning, among other things, the entitlement to the information requested and claims of confidentiality,  the Plaintiff seek to put this Motion on for a hearing and thereby ensure a fair and expeditious resolution. Prior to the hearing on this Motion, the Plaintiff  will continue discussing the relief sought herein and attempt to resolve any legitimate objections raised by the Debtors.

## **TRUSTEE OR EXAMINER**

25.    Plaintiff moves this court pursuant to §1104(a)(1)(2) for an appointment of Trustee or Examiner  (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause; (2) such appointment is in the interest of creditors, equity security holders, and other interests of the estate, known and unknown parties of interest.

26.    Plaintiff moves this court pursuant to pursuant to §1106 (3) and requests this court to appoint an independent examiner to investigate the acts, conduct,  assets, liabilities, the operation of the debtor's business and the desirability of the continuance of  such business, and any other matter relevant to the formation of a plan. Under  §1106 (4)(A)(B) Plaintiff moves this court to file a statement of any investigation conducted under paragraph (3), including an fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the

estate and transmit a summary of any such statement pursuant to §1106 (4)(B).

## AMERICAN HOME MORTGAGE BANKRUPTCY

27.     Upon the filing of this bankruptcy case, the estate was created. The property known as 38645 37th Street East, Palmdale CA 93550 , loan number #0001702441, became property of the  estate, or is the subject of other assets which numerous banks and government entities are in the process petitioning the court to regain control of.  This includes, but is not limited to, all of the debtor's legal or equitable property interests, servicing rights, escrow accounts, loan modification rights, as well as interests in property either recovered by a trustee, preserved for the benefit of the estate, or ordered transferred to the estate, such as avoidable preferences and fraudulent transfers. See 11 U.S.C. §541 (aX1-7).

28.   The property known as 38645 37th Street  East, Palmdale CA 93550 , loan number #0001702441, is an ASSET of the estate or the true owner of the note. American Home is negligently handling this asset valued at more than $400,000 and the escrow account valued at $3,000.

29.   The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of affording relief only to an "honest but unfortunate debtor." Congress did not favor giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws. Accordingly, Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt .... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false

representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

30.    It is not only the actual value of the "money, property, services, or . . . credit" the debtor obtained through fraud that is non-dischargeable in bankruptcy, but also treble "punitive" damages and attorneys fees and costs related to the fraud. This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in <u>Cohen v. de la Cruz</u>. Debts which can't be discharged in bankruptcy....(8) Debts incurred due to false statements made with the intent to deceive (9) Fraud committed in a fiduciary capacity, such as embezzlement or larceny(10) Punitive damage claims for "willful and malicious" acts

## CONSUMER PRIVACY OMBUDSMAN

31.    Upon information and belief borrowers personal information is at risk, and is being shared with a variety of other entities and potential bidders for the American Home Servicing business and loan pools such as Broadhollow LLC and Melville LLC.

32.    The trustee pursuant to U.S.C. § 363 (b)(1) is required to protect the personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell personally identifiable information to any person unless(A) such sale or such lease  is consistent with such policy; or (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale (I) giving due consideration to the facts, circumstances, and conditions of such sale; and(ii) finding that no showing was made that such sale would violate applicable nonbankruptcy law. (2) If notification is required under subsection of section 7A of the Clayton Act in the case of a transaction under this subsection, then, (A) notwithstanding subsection (a) of such section, the notification required by such subsection to be given by the debtor shall be given by the trustee;

and not disclose to an individual Consumer's have the right to know that personal information is being protected, loan files are being protected, documents related to potential claims are being secured and protected, and private information is not transferred to unknown entities.

.    33.    Plaintiff further moves this court to appoint a Consumer privacy ombudsman pursuant to U.S.C. § 332 et seq. in order to protect personal information and property rights pursuant to U.S.C. §363 et seq. of all borrowers whose loans are now part of American Home Mortgage Servicing to protect the interest of all borrowers in reference to currently pending sales of negotiable instruments, documents of title, deposit accounts, and other assets of the estate under 363(a)(b)(1), which may or may not include Ms. Dobben's property.

34.    Plaintiff moves this court, for the bankruptcy trustee as the representative of the estate, pursuant to U.S.C. §323 (a) and U.S.C. §363 (a) to protect all  negotiable instruments, documents of title, securities, deposit accounts, whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, or profits of property and the fees, charges, accounts or other payments for the use or occupancy, whether existing before or after the commencement of a case.

35.    In this capacity the bankruptcy trustee pursuant to §323 (b) has the capacity to sue and to be sued. The relief requested will protect the Debtor's estate from further legal action due to the negligent actions of American Home Mortgage Servicing during the Chapter 11 liquidation process.

## INJUNCTION AGAINST FORECLOSURE

36.    Plaintiff also moves this court to issue an injunction against foreclosure and any negative credit reporting to avoid additional damages under the FCRA and FDCPA, until such time borrowers can ascertain the true owners of their notes, and parties of interest who have the

rights and responsibilities, including the duty of loan modification, legal issues such as mortgage fraud, or alternate relief based on insured loan pools, can regain control of their assets.  If the Debtor's estate is the true owner of the note, then the bankruptcy trustee is responsible pursuant to §323 (a) for preserving the assets of the estate of  American Home or any of it's  affiliated bankrupt  entities including  Broadhollow LLC or Melville LLC loan pools.

37.    Borrowers, including but not limited to Ms. Dobben,  have the right to know the true owner of the note as defined under U.S.C. §741(2)(A) et seq; and any entity that has a claim as defined under U.S.C. §741(2)(B)et seq.

38.    If the note is to be sold to another entity, borrowers have the right to protection of what personally identifiable information as defined in U.S.C. §741(3)  may be provided to that entity in the process.

39.    Important issues need to be addressed concerning "customer property" as defined under U.S.C. §741(4)et seq.,  including the security, and proceeds of such security, property, received, acquired, or held by or for the account of the debtor, from or for the securities account of a customer. Property such as deed of trust, securities, and escrow accounts which may have been unlawfully converted that is the lawful property of the estate.

40.    Borrowers have the right to disclosure of any known and unknown parties of interest in their notes, including but not limited to any and all loan financing partners, credit default swap partners, guarantors, master loan servicer, credit insurers, credit enhancement providers, whether that party insures an individual loan or an entire loan pool, including  any party who as defined under 741 (7) (A)(i) which owns a security interests or provides insurance associated with a particular loan or  loan pool that carries any credit enhancements, or any guarantee as defined under 7419(A)(ix).

41.   Upon information and belief, very specific requirements exist in relation to loan workouts, modifications, and procedures lenders must employ, before the lender can initiate foreclosure proceedings and collect payment on insured loans.  Failure to employ these guidelines may result in forfeiture of insurance and losses to investors or the Debtors estate.

42.   These guidelines should be available to the borrowers to protect their interest, the interest of the insurer of the loan, the true owner of the note, and the interest of the Debtor's estate.

43.   The Debtor's estate, and other known and unknown parties of interest are being unreasonably exposed  to losses due to fraudulent and negligent acts on the part of, mortgage brokers, other vendors such as foreclosure attorneys, and remaining "AHM" employees. Current employees, which are being paid a 40% premium from the Debtor's estate for their continued services, employed by "AHM" Servicing Center are not conducting themselves with honesty, integrity or within the legal guidelines required by the investors, or insures of the loans in which they are servicing. This court is protecting the Servicing unit at the expense of the best interest of the Debtor's estate and the borrower's who are severely disadvantaged with no voice in this matter.

44.   "AHM" origination of loans, relied heavily upon information supplied by third parties, including the information contained in the loan applications, property appraisal, title information and employment and income documentation. In many cases, which the investors are unaware of,  this information was intentionally or negligently misrepresented and such misrepresentations were not detected through lack of due diligence prior to loan funding, and the value of the loan may be significantly lower than expected. In some cases, information was intentionally altered and/or misrepresented and now these practices are being revealed openly

and publicly by former employees. These employees have given their names and in what specific department in American Home they worked and this court should compel testimony to bring to light the fraudulent activities and how that activity may expose the Debtor's estate, borrowers, loan insurers, known and unknown parties, to known and unknown risks. This testimony will also bring to light whether the current court protection of the Debtor's Servicing unit and control of loans thereof is prudent and reasonable.

45.    Whether a misrepresentation is made by the loan applicant, the mortgage broker, another third party or an "AHM" employee, "AHM" generally bears the risk of loss associated with the misrepresentation. Due to American Home bankruptcy filing, it is the Debtor's estate, the Trustee of the Debtor's estate, the secured and unsecured creditor's, loan insurers, and potential loan purchasers or asset purchasers, who will bear the losses of any fraudulent activities or mismanagement of the assets before or during the bankruptcy proceedings.

46. Any loan subject to a material misrepresentation is typically unsaleable or subject to repurchase if it is sold prior to detection of the misrepresentation. The persons and entities involved are often difficult to locate and it is often difficult to collect any monetary losses that "AHM" or other financing partners have suffered, or the Debtor's estate, from the misrepresentation. Time is of the essence for loans to be returned to the rightful owner therefore minimizing damages to the borrowers, the creditor's of the Debtor's estate and the investors.

## BROADHOLLOW LLC AND MELVILLE LLC LOAN POOLS

47.    Borrowers loans, such as Ms. Dobben's, may or may not be a part of the Broadhollow LLC and Melville LLC loan pools which are being incorporated into the bankruptcy proceeding. It is urgent that this Court on behalf of all borrowers, including Ms. Dobben, facilitate disclosure of the true parties of interest or true owners of the mortgage notes.

This court, is participating in the sale of Broadhollow and Melville assets for the protection of a potential benefit of the 26 million dollar guarantee fund flowing back to the Debtor's estate, and the estate is participating in this transaction with little information or clarity about the structure of the loan pools, credit enhancements, the LLC's partners known and unknown, and the true value of the loans in these loan pools and with no regard to the borrowers whose loans may be in these loan pools, therefore exposing the Debtor's estate to known and unknown litigation risks.

48.    This Court, the Trustee, and the Unsecured Creditors Committee, is not protecting the most important assets in this case, the approximately 197,000 loans with an aggregate principal balance of approximately $46.3 Billion. Loans owned by American Home Mortgage entities or serviced for others by American Home Mortgage Servicing, whose value is wholly dependent on borrower ability to pay, willingness to pay, and ability to contact the real parties of interest for a multitude of important legal issues surrounding their loans. Including but not limited to, escrow accounts, ARM adjustments, mortgage fraud, loan origination RESPA or TILA violations, YSP induced fraud, appraisal fraud, personal privacy issues, loss mitigation, foreclosure, broker misconduct, servicing issues, etc.

49.    AHM continues to conduct its servicing business, which constitutes an asset of the Debtors' estate. The court is protecting this asset at the expense of, and to the detriment of, investors, and potential third party insurers, who will be exposed to mounting legal damages as borrower issues are not being addressed.

## BROADHOLLOW LLC & MELVILLE LLC

50.    On Aug 8, 2007 it was reported by Bloomberg News that Units of American Home Mortgage Investment Corp., facing margin calls from lenders, exercised an option allowing them to delay repaying the debt on Broadhollow Funding LLC extended maturities on

commercial paper after being unable to roll over $150 million of the debt. Broadhollow had $138 million of subordinated notes cut to Ba1, the highest speculative grade, from Baa2.

50. Upon information and belief the Broadhollow's SLNs have significant credit enhancement available relative to various loss assumptions. The SLNs issued by Broadhollow benefit from market value swaps provided by Calyon (AA-/Positive/A-1+), ABN AMRO Bank N.V. (AA-/Watch Pos/A-1+), Bank of America N.A. (AA+/Stable/A-1+), and Citibank N.A. (AA+/Stable/A-1+), which cover the risk of any market value declines on performing loans and any non-credit-related market value declines on delinquent loans. Based on the most current information made available to Standard & Poor's, the 'A-1+' rated SLNs also benefit from credit enhancement consisting of subordinated notes and a cash reserve account (the 26 Million Account). This enhancement should be available to cover any credit-related deterioration in the price of delinquent and defaulted loans that are <u>not covered</u> by the market value swaps. According to the most recent servicing report, the total credit enhancement available to the 'A-1+' rated SLNs represents over <u>five times the percentage of loans</u> reported as 30 or more days delinquent, which Standard & Poor's believes will adequately cover what it considers to be a severe stressed case liquidation scenario for the underlying assets. Broadhollow does not rely on traditional third-party liquidity, if the SLNs cannot be refinanced, then the notes' maturity can be extended up to 120 days. During the extension period, the extended SLNs may be repaid through a successful remarketing of the notes or through the liquidation of the underlying collateral. In a liquidation scenario, the notes will be repaid from sale proceeds, swap payments, and available credit enhancement. AHM's bankruptcy filing is a termination event under the Broadhollow transaction documents. Consequently, Broadhollow is no longer permitted to purchase additional mortgage loans, and all collections and sales proceeds, along with swap payments on

any of the assets, will be held to pay off Broadhollow's SLNs as they mature. Under certain

program termination events, the servicer, on behalf of the conduit, may also sell all

nondelinquent and nondefaulted loans within 30 days of the related program termination event.

Any assets not sold would then be auctioned off no later than 45 days after the related

termination event.

51.    The inclusion and participation in the Broadhollow and Melville loan pools could

expose the Bankruptcy estate to litigation pending against any loans in these loan pools. The

Debtor's estate has already advanced $500,000 on the assertions of the Debtor that these loan

pools would sell for a sufficient amount to protect the 26 million dollar guarantee fund. The first

sale deadline came and was extended with no successful bidder. The Plaintiff's loan may or may

not be a part of these loan pools.

52.    Upon information and belief the Trustee has not sufficiently inquired as to the

financing structure of, partners of, or other parties of interest in the Broadhollow LLC or

Melville LLC's loan pools. Unless and until the Trustee or this Court can determine the benefits

and risks to the borrowers, guarantors and partners associated with these loans, then the Debtor's

estate is exposing itself to known and unknown risks without all the facts surrounding these loan

pools, including but not limited to the funds already advanced of $500,000 for stalking horse

bidder compensation, and an additional $500,000 advance to the winning bidder. The LLC

structure may give known and unknown entities a personal pass through tax write off, or may

offer some other insured benefit on the entire loan pool, if in fact the loan pools do not bring the

amount required to facilitate any of the 26 million dollar guarantee fund flowing back to the

Debtor's estate. The unclear mix of the LLC structure and potential personal benefits of the

LLC's, mixed with the bankruptcy filing of American Home entities without the personal

association of Michael Strauss is of concern and should be clarified with the court to ensure this involvement is not passing known and unknown associated problems with these loan pools to deflect any personal liability of the owners and associated swap partners of these loan pools.

## SERVICING NEGLIGENCE

53.   On Ms. Dobben's loan, mortgage fraud was committed and  American Home is negligent in the processing and servicing and the investor or Debtor's estate stands to lose a substantial amount due to American Home Mortgage's negligence. Ms. Dobben has alerted American Home to this issue and has been met with a total lack of regard, and she will have no recourse without cooperation except to initiate costly litigation.

54.   AHM Debtors estate may be held negligent to known and unknown  third parties who may purchase this loan through this bankruptcy proceeding. American Home may represent Ms. Dobben's loan as a current loan in good standing with no pending legal issues. This would be a gross misrepresentation.

55.   This filing will serve as notice to all parties of interest Ms. Dobben will be seeking legal action against numerous entities for numerous violations in reference to the origination of this loan transaction, and the subsequent servicing of the loan. American Home Mortgage will be negligent if they fail to communicate this to the true owner of the note or any potential buyer through the bankruptcy court as they could be exposing them to unknown risk.

## FRAUD IN LOAN ORIGINATION

56.   This loan was originally acquired through Fraud and deception, due to a YSP based incentive to induce Fraud by asserting certain detrimental terms in the loan contract.

American Home negligently processed this loan with lax underwriting standards and failed to

identify the mortgage fraud conducted by several known criminal entities.

57.    The laws of bankruptcy are clear that a debtor can not hide behind the bankruptcy

Court to avoid allegations of fraud. American Home Mortgage has not only engaged in fraud

and negligence in the origination of Ms. Dobben's loan but continues the fraud and negligence in

the servicing of this loan.

58.    The loans in which American Home Mortgage owns are now the part of the

Debtor's estate and represents the assets of the estate or assets of the true owner of the note.

While the bankruptcy court is distracted by the multitude of claims and issues in this matter, the

borrowers and the ASSETS to the Debtor's estate they represent are not being protected.

American Home Mortgage is mismanaging the Assets at the expense of all the

creditors and note holders.

## FAILURE TO PAY PROPERTY TAXESAND ESCROW ACCOUNTS

58.    Upon information and belief, it has been widely reported that in several counties

American Home Mortgage has failed to make Property tax payments and bounced checks to

various counties for property tax payments. Monies American Home collected and is required to

held in escrow for borrowers. AHM continues to demand from borrowers, including Ms.

Dobben, that they continue to pay taxes and escrows when borrowers have no guarantee the

taxes or escrows will be paid. Ultimately the borrower's home could be sold at tax sale if they do

not pay the taxes irregardless of the fact the AHM has collected tax money. AHM has held and

earned interest on these funds and now borrowers may have to pay taxes a second time to protect

their homes while American Home refuses or is unable to pay their property taxes. Ms. Dobben

has repeatedly tried to address this concern with AHM as they currently hold over $3,000 in an escrow account on her loan.

59.   Ms Dobben has every right to seize control of her escrow account or to demand this court seizes funds to ensure payments are made on borrower's property.  At this point even the written contracts AHM have executed are not being upheld  by the bankruptcy court, so it is ludicrous for any borrower to enter into any oral or written agreements with AHM based on good faith and fair dealing principles.

60.   AHM insists although they continue to raid escrow accounts both property tax accounts and employee accounts, Ms. Dobben and others should give them more funds they have no protection for.  AHM insists Borrowers should rely on the good faith word of the Debtor, they will get funds back or they will be credited appropriately. This Debtor has proven contracts and agreements mean absolutely nothing to them and American Home egregiously is being allowed to use the "ill gotten" gains to hire an army of attorneys to fight any and all claims against them, including turning over servicing of loans that they don't own. At this point it is impossible for any borrower to enter into any safe or meaningful enforceable agreement without the protection of this court.

61.   Upon  thorough investigations and information being disseminated publicly by employees of "AHM" and others, Ms. Dobben is aware that American Home has defaulted on many agreements, and conducted many fraudulent and negligent acts in the ordinary course of their business..

## TRUE OWNER OF THE NOTE

62.    It is impossible for Ms. Dobben  to ascertain if her loan, is owned by American Home Mortgage, an affiliate, or financing partner. Notes are pledged, sold, bifurcated,

and traded in various derivative transactions like bubblegum baseball cards and their transfers,
sales, pledges etc., are not publicly recorded. As such, only possession of the actual original note
can prove the actual owner and holder in due course of the note and whom Ms. Dobben can
discuss the very serious issues of mortgage fraud and loss mitigation and pending litigation.

Ms. Dobben has a right to know the rightful owner of the note and the rightful owner of the note
has the right to direct communication with the borrower to address this very serious loss
exposure of over $400,000.  If the note has been pledged and encumbered, then that party must
be made aware of the potential losses associated with these issues, and Ms. Dobben has the
right to secure release of the note, before further damage is done to all parties of interest. Those
parties, if the court upholds the continued control of loans through American Home Mortgage
Servicing may be left unaware of pending litigation in which they will be held ultimately
responsible for defending therefore making transfer of documents an urgent matter.

    63.   Ms. Dobben's note may be in the  Broadhollow LLC, Melville LLC, or a wide
variety of other LLC's or loan pools. It is imperative that this court reveal the true owner of the
note as Ms. Dobben and other borrowers have no recourse without court intervention, to obtain
this information through American Home Mortgage Servicing or MERS.

    64.   When asked, American Home Mortgage refuses to provide and such information as
to the true owners of mortgage notes, and in some cases claims to own the notes. They refuse to
provide any agreements they may have with lenders whom loans they service. Ms. Dobben
demands to know the entire chain of title to her property and the true owner of her note.

## THIRD PARTY LIABILITY

    65.   When American Home Mortgage sells a loan to an investor, they are required to

make representations and warranties regarding the loan, the borrower and the property. These representations are made based in part on our due diligence and related information provided to us by the borrower and others. If any of these representations or warranties is later determined not to be true, American Home Mortgage may be required to repurchase the loan, including principal and interest, from the investor and/or indemnify the investor for any damages or losses caused by the breach of such representation or warranty. In connection with some non-prime loan sales, American Home may be required to return a portion of the premium paid by the investor if the loan is prepaid within the first year after its sale. If, American Home was found to be negligent and required to repurchase loans, indemnify investors or return loan premiums, it would have a material adverse effect on their business. This conflict of interest combined with the extreme control American Home has due to servicing the loans, has created a wall between borrowers and investors, thereby making it impossible for either to communicate the true nature of the loan origination or servicing issues. The end result however is the investor, the Debtors estate creditors and the borrowers will bear the brunt of the consequences. American Home can only hide the true nature of these loans if they can maintain control and keep that wall firmly in place. This can not be allowed to continue.

66.    American Home may also be found to be negligent to other parties who provide credit enhancements on American Home Mortgage loans.  In connection with the loans American Home securitizes other than through guaranteed performance swaps and similar transactions with Fannie Mae, Freddie Mac, Ginnie Mae and the Federal Home Loan Banks, American Home provides credit enhancements for a portion of the securities, called "senior securities," to improve the price at which they sell them. This credit enhancement for the senior securities is primarily in the form of either designating another portion of the securities we issue

as "subordinate securities" (on which the credit risk from the loans is concentrated), paying for financial guaranty insurance policies for the loans, or both. American Homes' use of credit enhancement features to aid securitizations subject those insurers to losses for American Home's negligent acts.

67.    American Home Mortgage warehouse lenders and securitization underwriters face exposure stemming from legal violations committed by American Home Mortgage in reference to the financing or underwriting services. In June of 2003, a California jury found Lehman Brothers, a warehouse lender and securitization underwriter liable in part for fraud on consumers committed by FAMCO, a lender, to whom it provided financing and underwriting services. The jury found that the investment bank was aware of the fraud and substantially assisted the lender in perpetrating the fraud by providing financing and underwriting services that allowed the lender to continue to operate, and held the bank liable for 10% of the plaintiff's damages.

68.    American Home Mortgage under the protection of the bankruptcy court is subjecting investors to legal actions and mounting damages as a result of the continued control the bankruptcy court is allowing them over the servicing of the loans. These investors are facing both known and unknown risks associated with the loans American Home is servicing. Honest communication has not been forthcoming about the status of loans or the communications with borrowers on loans. Ms. Dobben is an example of that breakdown.

69.    Investment banks are facing increased litigation as they are named as defendants in lawsuits and regulatory actions against the mortgage companies with which they do business, and are being investigated by investors who are demanding to know why the investments they made are now worthless. Credit enhancement providers, including government sponsored entities Fannie Mae, Freddie Mac, Ginnie Mae and the Federal Home Loan Banks,

and the private companies of Radian and MGIC, have ongoing investigations as everyone has to answer for the losses they have suffered due to the foreclosure epidemic.

70.   The issue of risk of associated third party damages all comes back to the control the lenders who originate the loans are left to continue through servicing and foreclosure of the loans. No one speaks directly to the borrower except for the lender.

71.   American Home has a responsibility, which in some cases is clearly spelled out by these counterparties, and yet they negligently ignore the agreements. One such agreement was that loans would be turned over immediately upon bankruptcy filing to protect the true owners of the notes and insurers.

72.   Insurers have set forth very specific rules of loss mitigation a lender is required to enlist before submitting a claim. However the only reports of exactly what the lender did are generated from the lender. No one speaks to the borrower.

In May of 2006, an $800,000 settlement was reached with the government in reference to loans originated under Columbia National, Inc., and required reforms in review procedures of loan transactions for fraud. Civil allegations were made that the company submitted false and fraudulent claims to the Department of Housing and Urban Development. The claims were to reimburse the company for losses arising from foreclosures on government insured mortgage loans written by the company. American Home Mortgage Holdings, Inc. purchased Columbia National, Inc. in 2002, and subsequently renamed the company American Home Mortgage Servicing, Inc.

The government has alleged that former employees of Columbia National Inc. created false and fraudulent documents in association with the origination of government insured and government guaranteed loans. According to the allegations, these former employees, working out of the company's Bensalem branch office, created false and fraudulent verification of employment documents, gift letters, credit references, and income documents. These false and fraudulent documents were used to qualify certain individuals for loans; these individuals were unable to pay back the loans, causing losses to the company, which losses were passed on to the government.

"The company is now taking extra steps to ensure that loans originated at the company's former office in Bensalem are legitimate. Before it submits any insurance claim on defaulted loans from the Bensalem office, the company will undertake a targeted review of those loans

using a checklist of fraud "red flags." If there are indications of fraud in a loan, the company will not seek reimbursement from the government for that loan."

The civil settlement resolves claims of the United States against Columbia National, Inc., now known as American Home Mortgage Servicing, Inc., under, among other things, the False Claims Act, 31 U.S.C. §§ 3729-3733. Under the terms of the agreement, Columbia National, Inc. will (1) pay $800,000 to the United States, (2) will indemnify the government against losses that may arise from the foreclosure on two specified loans, and (3) will employ an audit checklist, looking for indications of fraud, before submitting claims on loans originated by its former office in Bensalem.

73.    Former employees of American home have alleged a pattern and practice of rampant fraud taking place within various branches of American Home Mortgage. As long as the control of the documents remain with American Home Mortgage, fraud yet to be discovered is hidden. For this court to continue to protect American Home Mortgage and prevent the true owners of the notes from seizing the loans, is not acceptable considering the potential damage to borrowers, investors, and loan insurers. Fraud can not be protected under the bankruptcy code.

## FAILURE TO ENGAGE IN LOSS MITIGATION

74.    This filing will serve as notice to any and all prospective purchasers of Ms. Dobben's note, of the issues regarding this loan, including but not limited to; the bankruptcy Trustee, the true owner of the note, one of the American Home Mortgage bankrupt or non bankrupt entities, all other American Home affiliated LLC's, or silently owned other Michael Strauss companies, or the true owner of the note which has yet to be revealed.

75.    American Home has failed to engage in loss mitigation, or provide any assistance to borrowers with very serious issues of mortgage fraud, Federal and state law violations and foreclosure.

76.    AHM fails to answer RESPA Qualified Written Request within the time period allowed.

77.    Further AHM  has refused to provide the identity of the true owner of the note and upon information and belief may has lied when they stated they were the true owner of the note.

## CREDIT ENHANCEMENTS

78.    AHM assets, including Ms. Dobben's loan are the property of investors or the Debtor's estate, and these entities may suffer losses with respect to, loans that AHM originated and sold, regardless of credit enhancements. These credit enhancements are now coming under intense scrutiny and may or may not pay out claims. If negligence and fraud are found in respect to the origination of the loans or the servicing of the loans, companies who provided these credit enhancements will contest the legitimacy of the representations made by AHM.

79.    AHM purchases credit enhancements from Fannie Mae and Freddie Mac with respect to the agency-eligible ARM loans that they originate and sell, and may suffer credit losses with respect to these loans if they were not originated correctly. AHM now the Debtor's estate, may be required to repurchase the loans under these circumstances. The Debtor's estate may also suffer losses on non-agency eligible securities to the extent that they do not have, or have only limited, credit enhancements. Credit enhancements do not protect  AHM  from credit losses or repurchase obligations.

## RICO, TILA, RESPA VIOLATIONS

80.    Ms. Dobben was the victim of a RICO civil conspiracy AHM participated in In the creation of a loan, in exchange for a YSP based incentive, a broker fraudulently coerced Ms. Dobben and misrepresented the property value and the loan terms. The YSP included an incentive for the prepayment penalty, the higher interest rate, the margin over the index to base

future rate increases on, and the pay option arm loan. The broker premium YSP of $6307.88 was paid by American Brokers Conduit for negligently and  fraudulently creating a loan in which Ms. Dobben can not be held responsible.

81.  Ms. Dobben did not receive proper disclosures under TILA, appraisal or even a complete set of loan documents, including her important right of rescission.  Ms. Dobben settlement did not take place within RESPA guidelines and Ms. Dobben did not sign paperwork or otherwise understand what type of loan or agreements were being executed in her name. She was forced under severe duress to sign documents, and a notary by the name of Deborah Huffert, hired by the perpetrators of the fraud, did not explain  any of the documents Ms. Dobben was signing. Federal laws and many state laws were broken in the creation of this loan.

82.  Numerous entities including Historical Real Estate & Finance, Preferred Real Estate and Finance, American Brokers Conduit, American Home Mortgage Acceptance, Titan Escrow, LandAmerica Gateway Title, and other known and unknown entities did engage in civil RICO conspiracy with AHM and did exact fraud on the Plaintiff  for the purpose of pecuniary gain. The damage of which is now negatively affecting Ms. Dobben and damages will continue to mount if these serious issues are not promptly addressed.

83.  Ms. Dobben, through consumer advocate, Paula Rush,  has made repeated attempts to reach someone at American Home Mortgage Corporate to discuss this issue and has been disconnected several times after calling 214-260-6806. Ms. Rush has been given the run around and put into automated voice messaging, disconnected, and spoken to employees who have refused to give their names at extension 516-396-7700.  Through repeated attempts Ms. Rush finally reached a person who identified himself as Henry Cruz.  He did not reveal his position or

authority to address this matter. Ms. Rush is attempting to bring an important issue to AHM attention to save them from future exposure to the parties associated with the mortgage fraud. The communication of this matter has been handled negligently.

84.    Mortgage brokers, through whom AHM originates wholesale loans have parallel and separate legal obligations to which they are subject. However, federal and state agencies and numerous lawsuits have increasingly imposed liability on Lenders and <u>even the investors</u>, for the legal violations of mortgage brokers. The United States Department of Justice in the past has sought to hold mortgage lenders responsible for the pricing practices of mortgage brokers, alleging that the mortgage lender is directly responsible for the total fees and charges paid by the borrower under the Fair Housing Act even if the lender neither dictated what the mortgage broker

could charge nor kept the money for its own account.

85.    AHM has acknowledged in the their investment statements they understand they may be subject to claims for fines or other penalties based upon the conduct of our independent mortgage brokers. In reality, the YSP is the "Kickback FEE" based on incentives AHM offered to mortgage brokers on rate sheets to commit fraudulent acts on borrowers.

86.    AHM lax underwriting and internal corporate culture allowed and facilitated additional misrepresentations to pass the loan to the next level of securitization and credit enhancement insurance. AHM was negligent in the origination underwriting and monitoring of vendors it controlled, negligent in the securitization and insuring of the loans, and negligent in the subsequent servicing and in some cases foreclosure of the loans.

87.    Ms. Dobben's mortgage loan represents an asset to the Debtor's estate or an asset of an investor or financing partner of AHM and may also be a liability to an insurer. These parties will suffer losses due to AHM negligence.

88.  If AHM is the true owner of the note, the Debtor's estate and AHM creditors will be losing a valuable asset and potentially facing $100,000 or more in losses and litigation costs associated with this mortgage loan. Losses could include, the cost of foreclosure, litigation, and potential for loss of payments for one year or more, and the cost of litigation from third parties of interest.

89.  If Broadhollow or Melville LLC pools include Ms. Dobben's note, then another third party is exposed to risk associated with this loan. If no bidders come forward at the now extended deadline auction, the Debtor's estate may have to bear the costs of the foreclosure and the subsequent carrying cost in a standstill real estate market.

90.  Although it is impossible for Ms. Dobben to determine the true owner of the note AHM knows the true owner and knows the risks it is exposing that party to, yet AHM is failing to address this issue with the parties of interest. This is the protection that this Court is providing to the Debtor at the expense of the borrowers and the true owners of the notes.

91.  AHM has demonstrated through the bankruptcy proceeding the total disregard for all former loan funding banks and peers in this industry including, private and government sponsored entities whose loans are serviced by American Home Servicing. This court needs to understand this wedge, which it is upholding, between the true note owners and the borrowers by the servicer, American Home for the control of the notes, needs to be urgently addressed.

92.  This court is allowing AHM to use "ill gotten gains" from investors, questionable stock offerings just months before bankruptcy, employee deferred compensation plans, tax escrow accounts, failure to pay appraisers, brokers, and many other vendors, landlords, and business tax entities, to fight the demands of investors attempting to gain control of the investments they rightfully own. These investors have the right and borrowers need the direct

access to the investors and true owners of the note. This filing and request for appointment of a

Consumer Privacy Ombudsman under U.S.C. §332 and Trustee or Examiner under U.S.C. §1104

is intended to pierce the veil of secrecy that AHM is maintaining between the borrowers and the

investors, the court, and the creditors of the Debtors estate.

93.    Borrowers, like Ms. Dobben attempting to communicate and solve urgent problems

are met with many Federal and State laws being broken in the process. The effect

of which will bring hardships on the true owners of the notes, and the Debtor's estate, as

borrowers have no choice but to file lawsuits to address the issues they face. AHM is not

engaging in any rules of loss mitigation, or any other specific rules  set forth by loan insurers,

investors and others.

94.    Investors in these notes, the true owners of these notes, and the Debtor's estate,

have the absolute right to know the truth and to review issues and  decide if they wish to engage

in loss mitigation and avoidance of litigation. The true owners of the notes will be facing the

litigation from negligent handling of the servicing of the loans.

## NOTICE

95.    Notice of this Application will be provided to (i) the United States Trustee of the

District of Delaware;(ii) counsel to the Official Committee of Unsecured Creditors; (iii) all

parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief

requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

96.    No prior Application for the relief requested herein has been made to this or any

other court.

WHEREFORE, the Plaintiff respectfully requests entry of the Proposed Order, in the form attached hereto as Exhibit A, granting relief requested herein directing each of the Debtors to produce the documents requested and appear for depositions, including by subpoena, to be served on each of the Debtors.

Mona Dobben
Pro Se
9208 N. 107th Drive
Sun City, AZ 85351

Document prepared by:

Paula Rush
Consumer Advocate
2651 Peery Drive
Churchville Md. 21028
443-676-3509
410-914-5315