**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., A Delaware | ) | |
| Corporation, et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | RE: Docket Nos. 1322 and 1445 |

**REPLY TO DEBTORS' OBJECTION TO MOTION OF VANTAGE POINTE CAPITAL, LLC FOR AN ORDER UNDER RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY AND RULE 2004 OF THE LOCAL BANKRUPTCY RULES FOR THE DISTRICT OF DELAWARE, DIRECTING EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY THE DEBTORS**

The Debtors have opposed the motion of Vantage Pointe Capital, LLC ("Vantage Pointe") for a Rule 2004 examination and document production (the "Rule 2004 Motion"), asserting four arguments. In this reply memorandum, Vantage Pointe responds to each of those four arguments.[1]

The Debtors' arguments in opposition to the Rule 2004 Motion are as follows: (1) Vantage Pointe should rely solely on publicly available documents rather than seeking discovery from the Debtors; (2) Vantage Pointe's requests are burdensome and the Debtors are too busy to respond to them; (3) Vantage Pointe has not shown that its requests are necessary and/or has not met the legal standard for a Rule 2004 request; and (4) Vantage Pointe's interests, as a preferred equity holder, are sufficiently represented by the Unsecured Creditors Committee or by the Debtors' boards of directors, so there is no need for Vantage Pointe to take any actions to protect its own interests. None of the

---

[1] To the extent that the Unsecured Creditors Committee has joined the Debtors' objection to the Rule 2004 Motion, this reply memorandum shall also constitute Vantage Pointe's response to the Unsecured Creditors Committee.

Debtors' objections justify denial of a Rule 2004 examination, which courts have held should be broadly available.

> **A.  Publicly Available Documents are Insufficient for Vantage Pointe to Conduct the Necessary Analysis**

Vantage Pointe has reviewed and analyzed the relevant documents that are publicly available, including the Debtors' prepetition SEC filings, and their Initial Monthly Operating Report, Schedules of Assets and Liabilities, and Statement of Financial Affairs. Although these documents provide some useful information (and, indeed, appear to be supportive of Vantage Pointe's view that there is substantial equity value in these Debtors), there is simply not sufficient information in the publicly available documents to undertake the sophisticated analysis necessary to determine the extent to which value can be preserved for equity in these cases, and the impact of various proposed transactions upon the prospect of realizing such value. To undertake such an analysis, Vantage Pointe requires information and documentation that goes beyond what the Debtors have publicly filed. To that end, Vantage Pointe is pursuing the Rule 2004 Motion.

> **B.  Vantage Pointe's Document Requests are not Unduly Burdensome**

The Debtors argue that the document requests are "unduly burdensome," but they fail to provide any explanation of this burden beyond the self-serving assertion that the Debtors are simply too busy to bother with the requests.

In fact, Vantage Pointe seeks only the information that is essential in order to undertake its valuation analysis and protect its interests. While courts have held -- as the Debtors acknowledge -- that Rule 2004 discovery should be "unfettered and broad," Vantage Pointe's request in these cases are actually narrow and limited to basic

information regarding the Debtors' assets and liabilities.  This information should be readily available to the Debtors, and providing it should not impose a significant burden on the Debtors.[2]

Moreover, in an effort to minimize any burden on the Debtors, prior to filing the Rule 2004 Motion, Vantage Pointe offered to work through its requests consensually with the Debtors, either through their respective counsel or directly through discussions between the business people.  The Debtors, however, rebuffed these overtures, leaving Vantage Pointe with no option other than formal discovery.

The fact that the Debtors are busy with sale activities, and objections in connection therewith, is not a sufficient justification to argue that Vantage Pointe's requests are burdensome.  Most chapter 11 debtors are quite busy, and yet they are able to respond to legitimate information requests from their constituencies.  Providing open access to information, and accepting the scrutiny of creditors and shareholders, is an important part of the chapter 11 process, and is one of the responsibilities that a debtor assumes in return for the benefits and protections afforded by the bankruptcy process. Creditors and shareholders are not obligated to blindly accept a debtor's conclusions about critically important issues -- such as whether there is any value for equity that should be preserved -- but are instead entitled to obtain information and documentation from a debtor sufficient to allow them to undertake their own analyses, reach their own conclusions, and thereby be in a position to protect their own interests.

---

[2] Upon information and belief, the majority of the information requested has historically been prepared by the Debtors in connection with their periodic SEC filings and other past practices including monthly general ledger closings and reports to the board of directors.

Quite frankly, if the fact that a debtor was "busy" was a valid excuse for refusing to provide basic information to its constituencies, bankruptcy would not be the collaborative, equitable process it was intended to be, but, rather, would be a closed process in which creditors and shareholders could have their rights compromised, while debtors went about their business without scrutiny. That is not the way chapter 11 works; even busy debtors are obligated to be responsive to their constituencies, and must provide sufficient information and documents to enable all constituencies to participate in the reorganization process and protect their interests. Thus, the Debtors simply cannot "advise" equity in these cases that their interests have no value to protect, while withholding the very information and documentation necessary to test the Debtors' assumptions and conclusions in this regard. Bankruptcy is not a "just trust me" process.

The reason the Debtors say that they are too busy to respond to Vantage Pointe's requests is because they have received 80 objections to their currently pending servicing business sale motion. Their situation is, at least in substantial measure, a problem of their own making. If the Debtors had proceeded in a more collaborative manner, many of the concerns voiced in the objections could have been avoided, resulting in far fewer filed objections to the sale motion. Instead, a significant number of parties have opted to file objections to the sale motion in order to assert and protect their rights, and the Debtors must now substantively address these objections; they cannot simply respond that they are too busy. Similarly, the Debtors cannot ignore equity's right to assert and protect its interests just because they are busy-- this is not a valid basis to deny equity the rights and benefits provided to all constituencies under the Bankruptcy Code. Furthermore, the argument that the Debtors are too busy because of the 80 objections is without merit

given that the sale hearing relating to the servicing business is set for October 15, 2007, and thus the Debtors should have substantively addressed these objections prior to the October 17 hearing on the Rule 2004 Motion.

The Debtors' estimate that it would take 100 hours to comply with Vantage Pointe's requests should not be credited. This is a bald assertion, without any support as to where the requested information is located, who has the information, how much of it has already been gathered or compiled for other purposes, what the difficulties would be with providing this information, etc. Given the very basic nature of the information that Vantage Pointe is seeking -- the same sort of information the Debtors are typically required to compile in order to value their own assets and otherwise comply with SEC requirements -- providing this information to Vantage Pointe should not be a particularly difficult or time-consuming undertaking.

Finally, it is noteworthy that the Debtors do not attack the substance of Vantage Pointe's requests, or their relevance to the analysis that Vantage Pointe seeks to undertake. Indeed, their only substantive complaint about the requests is to assert that they do not know what Vantage Pointe means when it refers to "performing" and "non-performing" loans.[3] Quite frankly, it is not credible that a sophisticated company

---

[3] The Debtors also argue that there is no relevant time period for which Vantage Pointe seeks documents; however, the instructions attached to the requests clearly stated that the requests for a document shall be deemed to request information as of the most recent date available.

Further, if there are specific instances the Debtors can articulate where the requests are difficult to comprehend, Vantage Pointe, as it previously offered to do so, would be more than willing to discuss such requests with the lawyers or business people employed by the Debtors.

5

engaged in the mortgage business at the highest levels does not understand the difference between a performing and non-performing loan.[4]

Moreover, Vantage Pointe has sought to minimize any burden on the Debtors by serving narrowly-focused requests, and by offering to work through the issues consensually. Of course, responding to any information request could be said to constitute a burden on a debtor to some extent; but that is not a valid reason for denying the request. If it were, then every Rule 2004 motion would be denied. Instead, Rule 2004 requests are denied only where the burden would be excessive or unreasonable, or the discovery is being taken for an improper or abusive purpose. That is not true in this case. Here, any burden that would be imposed in responding to Vantage Pointe's requests is quite limited, and is far outweighed by the compelling need to allow equity the opportunity to examine the requisite financial information regarding the Debtors' assets in order to ensure that the rights of equity holders are being protected.

### C. Vantage Pointe's Rule 2004 Requests are Necessary and are Justified Under Applicable Law

The Debtors contend that Vantage Pointe's Rule 2004 requests are not "necessary," acting as if the purported loss of more than one billion dollars of shareholder value within a very short period of time is not a legitimate topic for careful inquiry. Vantage Pointe does not agree. While the Debtors may be content to assume the certainty of this loss, and that no shareholder value can be preserved, Vantage Point believes that these issues merit a careful analysis, focused on determining, *inter alia*, how

---

[4] Such terms are clearly defined terms in the financial industry. See e.g., Reuters Financial Glossary, available at, http://glossary.reuters.com (defining a performing loan as "[a] loan is performing if the borrower is paying the interest on it" and defining a non-performing loan as "[a] loan on which neither interest payment, nor principal repayment is being made").

6

much shareholder value remains and how that value can best be preserved and realized. To that end, such inquiry is beyond "necessary" -- it is absolutely essential. And yet it cannot be undertaken without the documents and information sought in the Rule 2004 Motion.

The Debtors argue that the Rule 2004 requests are unnecessary because Vantage Pointe has failed to state that it "may be able to receive a meaningful distribution from any of the Debtors' estates." (Debtors' Objection ¶ 28). First, this argument puts the cart before the horse. As stated in the Rule 2004 Motion, Vantage Pointe requires the information it is seeking in order to determine the extent of remaining equity value, and to analyze how that value can best be preserved and realized. To say that Vantage Pointe is not entitled to the requested documents because it has not yet proven its case that value for equity exists makes no sense -- Vantage Pointe needs the documents in order to prove the case! Second, as stated in the Rule 2004 Motion, there *is* substantial reason to believe that equity value exists. This is based not only on the various events and transactions that occurred shortly before the bankruptcy filing, but also upon the Debtors' postpetition filings. However, in order to determine with more certainty how much value exists for equity, and to be in a position to analyze the effect of the Debtors' proposed sales and other transactions, Vantage Pointe requires access to the requested information and documents. Because the Debtors have to date refused to provide this information voluntarily, the Rule 2004 request is absolutely necessary.

Moreover, the Debtors unwillingness to seriously discuss or examine the potential that there could exist value for equity holders only further demonstrates that Vantage Pointe's requests are necessary. The rights and interests of equity are entitled to

protection.  The Debtors are obviously not doing so -- they have publicly stated that equity is worthless.  Under such circumstances, to deny equity holders the information necessary to effectively protect their own rights and interests would be unjust.

Vantage Pointe has demonstrated that it has "good cause" to seek the information contained in its requests, and that such information is necessary to determine the true financial picture of the Debtors.

Further, it cannot be said that the information sought from the Debtors is "for purposes of abuse or harassment."  Nor can it be said that the information sought is irrelevant, as the requests are relevant to the basic inquiry as to whether value exists for equity holders, and how that value can best be preserved and realized.  Accordingly, Vantage Pointe's requests clearly affect the administration and financial condition of the bankruptcy estate.

Moreover, Rule 2004 discovery is liberally granted.  See e.g., In re Hammond, 140 B.R. 197, 201-202 (S.D. Ohio 1992) (reversing the bankruptcy court's denial of a Rule 2004 examination, discussing the breadth of Rule 2004 and commenting "the concept of full and adequate disclosure is the 'price' the debtor in bankruptcy pays for the benefit of discharge"); In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (overruling the objections to requested Rule 2004 discovery and commenting "[t]he scope of *Rule 2004* examination is very broad, broader even than discovery under the Federal Rules of Civil Procedure"); In re Fearn, 96 B.R. 135, 137-138 (Bankr. S.D. Ohio 1989) (same); see also Int'l Fibercom, Inc., 283 B.R. 290, 293 (Bankr. D. Ariz. 2002) (granting the request for a Rule 2004 examination over objections and discussing that such discovery should be allowed wherein it relates to "investigat[ing] matters that may

8

affect the administration of the estate"); In re Table Talk, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (allowing a Rule 2004 examination over objection and noting that "[t]he scope of a *Rule 2004* examination is 'unfettered and broad'") (internal citations omitted); In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984) (denying a motion to quash a Rule 2004 examination and providing "[t]he scope of inquiry under *Bankruptcy Rule 2004* is very broad . . .[g]reat latitude of inquiry is ordinarily permitted"); In re Vantage Petroleum Corp., 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983) (denying a motion to quash a Rule 2004 examination and providing "it has been well-established the scope of such investigation is broad . . . [t]he exploration can be in the nature of a fishing expedition"); see also In re Handy Home Improvement Ctr's, Inc., 199 B.R. 376, 380 (Bankr. N.D. Ill. 1996) (discussing that "a Rule 2004 examination is a broad 'fishing expedition' into a party's affairs for the purposes of obtaining information relevant to the administration of the bankruptcy estate").

Indeed, the Debtors themselves argued, in their own motion for a Rule 2004 inquiry against a lender/creditor, that "[t]he scope of inquiry permitted under a Rule 2004 examination is generally very broad and can 'legitimately be in the nature of a fishing expedition.'"  See docket item 370 at ¶ 28, entered on August 24, 2007.  In this case, the standard for Rule 2004 discovery is readily satisfied, and Vantage Pointe's Rule 2004 Motion should be granted.

**D.    Vantage Pointe's Interests are not Adequately Protected**

The Debtors' final argument -- that Vantage Pointe's interests are adequately protected by the Unsecured Creditors Committee -- is nonsensical.  The Committee's fiduciary duty is to the unsecured creditors, not the preferred or common shareholders. Furthermore, the Committee's goal is to ensure repayment for its constituency, and it has

no incentive or duty to seek to maximize value beyond the debt owed to the unsecured creditors. While the interests of creditors and shareholders may be aligned in some respects, there are important respects in which their interests are not aligned, and, indeed, may be divergent. Especially in this case, where the U.S. Trustee has declined to appoint an equity committee, the Court should be particularly responsive to permitting a substantial individual equity holder access to the information necessary to protect its own interests, and should not simply assume that the interests of equity will be protected by a committee that owes equity no duty, and must, in fact, look out for the interests of its own constituency.

The Debtors' further point in this regard -- that the board of directors of the Debtors adequately protects Vantage Pointe's interests -- similarly fails. The Debtors have publicly concluded that there will be no recovery available for equity. While the Debtors assert that their board of directors has a fiduciary duty to protect equity holders "to the extent that the board concludes that there is value for equity holders" (Debtors' Objection ¶ 32), their argument is undercut by their own pronouncement that they have already concluded that there is no value for equity, and they are doing nothing to protect the interests of equity holders.

Thus, it is clear that in these cases only equity will protect the interests of equity; the Unsecured Creditors Committee will look out for the interests of creditors, and the Debtors have already written off equity holders. Under such circumstances, the Court should afford Vantage Pointe access to the information necessary to protect its own interests.

## **CONCLUSION**

WHEREFORE, Vantage Pointe respectfully requests the Court overrule the Debtors' objection and grant its Rule 2004 Motion.

        Respectfully submitted,

        BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

        /s/ Bradford J. Sandler
        Bradford J. Sandler, Esquire (No. 4142)
        222 Delaware Avenue, Suite 801
        Wilmington, DE 19801-1611
        (302) 442-7007
        bsandler@bfca.com

        and

        ARNOLD & PORTER LLP

        Michael L. Bernstein
        Rosa J. Evergreen
        555 12th Street
        Washington, DC 20004
        (202) 942-5577
        Michael_Bernstein@aporter.com

        Michael J. Canning
        399 Park Avenue
        New York, New York 10022
        (212)715-1110
        Michael_Canning@aporter.com

        Counsel for Vantage Pointe Capital, LLC.

Dated: October 12, 2007