IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 |
| HOLDINGS, INC., a Delaware corporation, et. al. | ) Jointly Administered |
|  | ) |
|  | ) |
| Debtors. | ) |

## MOTION *IN LIMINE* TO PRECLUDE JAMES ARONOFF FROM TESTIFYING AS AN EXPERT WITNESS

EMC Mortgage Corporation ("EMC") respectfully moves to preclude Mr. James H. Aronoff from testifying at the Sale Hearing scheduled for October 15, 2007. Mr. Aronoff, a financial industry consultant "specializing in providing capital markets solutions to small and medium sized specialty finance companies"[1] has been retained by the above-captioned debtors (the "Debtors") as a purported expert witness. Mr. Aronoff proposes to testify on "the severability of mortgage loan servicing rights in the context of mortgage loan purchase and servicing agreements," (Aronoff Tr. at 153), and whether the Purchase, Warranties and Servicing Agreement, dated March 1, 2006("PWSA") between certain of the Debtors and EMC constitutes an agreement which may be "severed" and treated as two separate agreements, despite being but a single agreement. EMC moves to preclude his testimony on the grounds that (a) the underlying issue is a legal issue and not appropriate for expert testimony: (b) even if appropriate, Mr. Aronoff lacks the requisite skill, training and expertise to qualify as an expert, (c) he has failed to file an expert report and (d) was not named timely.

---

[1] See Resume of James H. Aronoff.

In any event, the Court need not reach the legal issue Mr. Aronoff testifies to of whether the servicing responsibilities are severable. The PWSA is in its entirety a "securities contract" under section 741 of title 11 of the United States Code (the "Bankruptcy Code"). The legal inquiry implicated by Mr. Aronoff's testimony is an attempt to "limit" or "abridge" the termination of a securities contract, which is prohibited by section 555 of the Bankruptcy Code. Furthermore, the servicing component of the PWSA is an "interest in" the mortgage loans and would be a securities contract itself.[2] Therefore, Mr. Aronoff's testimony will not "assist the trier of fact to understand a fact in issue" as it is not relevant to the question that will control the Debtors' Motion of August 6, 2007 (Docket No. 11). See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993).

## I.    MR. ARONOFF SHOULD BE PRECLUDED FROM OFFERING TESTIMONY ABOUT THE INTENT OF THE PARTIES TO THE PWSA.

1       Expert witnesses are precluded from testifying about matters of law. "The rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" In re IPO Secs. Litig., 174 F.Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting Thomas Baker, The Impropriety of Expert Witness Testimony on the Law, 40 U. KAN. L.REV. 325, 352 (1992)). The Third Circuit has said that the "Court must ensure that an expert does not testify as to the governing law of the case." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006). The Rules of Evidence are "not intended to allow experts to offer opinions embodying legal conclusions." United States v. Scop, 846 F.2d 135, 139 (2d Cir. 1988) (holding

---

[2] See EMC's Suppl. Obj. at 11, Docket No. 1057; EMC's Sur-Reply at 4, Docket No. 1483; Amicus Br. of SIFMA at 13, 17-18, AP# 07-51684-CSS Docket No. 53. See also Aronoff Tr. at 25 (describing servicing as a "critical function" in "mak[ing] sure that investors get their money"); Aronoff Tr. at 29 ("you know that the servicing issue is an important issue for purposes of the level of credit enhancement").

2

it was error to admit expert testimony that "drew directly upon the language of the statute and accompanying regulations"); see also Palazetti Import/Export Inc. v. Morson, 2001 WL 793322 at *2 (S.D.N.Y. July 13, 2001) (holding that attorney expert in franchise law could not testify as to whether the parties' contract was a franchise agreement).

        2       Mr. Aronoff's testimony should be excluded because the subject matter of his testimony concerns the alleged severability of servicing rights from the PWSA. Although Aronoff has no actual knowledge of the parties' intent, (Aronoff Tr. at 157) ("I had no way of knowing the intent of the parties"), he still opines on how the Court should construe the agreement. (Aronoff Tr. at 48, 153) ("I am opining as to the severability of mortgage loan servicing rights in the context of mortgage loan purchase and servicing agreements"). The law is settled, however, that the question of severability of a contract is one of the intent of the parties to the contract, and that it is a question of law, not fact, where, as here, there is no ambiguity in the terms of the contract.

        3       The PWSA states that New York law shall apply to the agreement, and under New York law, contract severability is a matter of the manifested intent of the parties, "to be determined from the language employed by the parties. . . ." Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd. (In re Balfour MacLaine Int'l Ltd.), 85 F.3d 68, 81 (2d Cir. 1996) (internal quotation omitted); Rudman v. Cowles Commc'ns, Inc., 280 N.E. 2d 867, 873 (N.Y. 1972); 15 15 Richard A. Lord, WILLISTON ON CONTRACTS § 45:5 (4th ed. 1993). New York case law also holds that the question of severability is a question of law, not a question of fact, where, as here, there is no underlying ambiguity. See Riccardi v. Modern Silver Linen Supply Co., Inc., 356 N.Y.S.2d 872, 877 (N.Y. App. Div. 1974); Anheuser-Busch Ice & Cold Storage Co. v. Reynolds, 222 N.Y.S. 650, 653 (N.Y. App. Div. 1927).

3

4      The question of severability is a legal question, and is based on the plain language of the contract. The parties' intent is determined through a fair construction of the language employed by the parties and should be "viewed in the light of the [surrounding] circumstances." See American Sur. Co. of N.Y. v. Rosenthal, 133 N.Y.S.2d 870, 873 (N.Y. Spec. Term 1954); F & K Supply Inc. v. Willowbrook Development Co., 732 N.Y.S.2d 734, 738 (N.Y. App. Div. 2001) (quoting Christian v. Christian, 365 N.E.2d 849, 856 (N.Y. 1977)). These "surrounding circumstances" include the interdependence of the contract parts, the similarity of subject matter among those parts, the number of agreements comprising the contract, and the timing of the signing of the agreements. Municipal Capital Appreciation Partners I, L.P. v. Page, 181 F.Supp.2d 379, 394 (S.D.N.Y. 2002); Williams v. Mobil Oil Corp., 445 N.Y.S.2d 172, 175 (N.Y. App. Div. 1981); 15 Williston §§ 45:5-12.

5      Neither the manifest intent of the parties nor the "surrounding circumstances" are topics upon which expert testimony is admissible. An expert may not offer "interpretations of conduct or views as to the motivation of parties" or their knowledge. In re Rezulin Prods., 309 F. Supp. 2d at 541, 547; Aventis Envt'l Sci. USA, LP v. Scotts Co., 383 F. Supp. 2d 488, 516 (S.D.N.Y. 2005) (holding that expert testimony about an individual's state of mind "should be limited because such testimony is within the capabilities of an average juror and not a proper subject of expert testimony"). This rule applies equally to opinions on the knowledge, motives, and intent of corporations. See Croley v. Matson Navig. Co., 434 F.2d 73, 77 (5th Cir. 1970) ("Knowledge on the part of [a] company can be proved only by showing the state of mind of its employees."). Mr. Aronoff's purported "expert" testimony as to the intent of the parties with regard to the severability of the PWSA therefore should be excluded.

4

6	The PWSA, furthermore, is a contract; the determination of the rights and understandings encompassed within that contract is a determination of the "legal relations of the parties," a question of law.  See John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 659 (3d Cir. 1986).  Again, "[t]his is not so much testimony about industry custom or practice as it is [Aronoff's] thoughts on the state of the law relating to [mortgage bankers]." Primavera Familienstifung v. Askin, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001).  Courts routinely exclude "expert" testimony on what a reasonable person in the shoes of the contracting party would have intended by the words of the contract.  See Holiday Homes of St. John, Inc. v. Lockhart, 678 F.2d 1176, 1185 (3d Cir. 1982) (testimony of expert witnesses was not relevant to the question of what the parties intended to agree to by signing contract); iGames Entertainment, Inc. v. Chex Services, Inc., No. Civ.A. 04-180-KAJ, 2005 WL 3657156, *3 (D.Del. 2005).

7	There is no question that would be aided by expert testimony relating to whether the Debtors and EMC intended for the PWSA to encompass severable servicing rights.  The Court will determine the answer to this question by looking at what the PWSA expressly provides and interpreting the terms under New York law to determine whether there is a severable servicing agreement encompassed therein.  Mr. Aronoff's proposed testimony is an improper attempt to influence the Court's inquiry.

## II.	DEBTORS HAVE NOT PROPERLY PROFFERED THE EXPERT TESTIMONY OF MR. ARONOFF.

8	Alternatively, even if the subject matter of his proposed testimony was appropriate for expert testimony, Mr. Aronoff lacks the required qualifications to be accepted as an expert.  Mr. Aronoff's testimony should be excluded based on the Debtors' failure to qualify him as an "expert."  Under the Supreme Court's decision in Daubert v. Merrell Dow Pharms.,

Inc., 509 U.S. 579 (1993), the Court, in exercising its "gatekeeper" function, must determine "whether the expert is proposing to testify to (1) scientific[, technical or other specialized] knowledge that (2) will assist the trier of fact to understand a fact in issue." Id. at 592 (as modified by the Court in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)).  Expert testimony must be based on "more than subjective belief or unsupported speculation," and be "supported by appropriate validation—i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590 (emphasis added); see also In re Rezulin Prods., 309 F. Supp. 2d at 541 ("[T]he requirement of 'knowledge' guards against the admission of subjective or speculative opinions.").  The proponent of the expert testimony bears the burden of proving its admissibility. In re Rezulin Prods., 309 F. Supp. 2d at 539.

        9        Because the Debtors have not provided an expert report prepared and signed by Mr. Aronoff – indeed, they failed even to identify their expert to EMC until 5 business days prior to the Sale Hearing – they have not provided the Court with the information that it must have to ensure that "expert testimony be based on 'sufficient facts or data' and on 'reliable principles and methods' that the expert 'witness has applied reliably to the facts of the case.'" United States v. Dukagjini, 326 F.3d 45, 54 (2d Cir. 2003) (quoting FED. R. EVID. 702); see also FED. R. CIV. P. 26(a)(2)(B) (requiring disclosure of expert identity to be accompanied by written report prepared and signed by expert setting forth the opinions to be expressed and the bases for those opinions).  The Court may not "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  In performing its mandated gatekeeper function, the Court must have information it has not been provided with in this case to determine whether the gate should be opened to the proposed expert testimony of Mr. Aronoff.  Without this information, the gate must remain closed.

6

   10  At his deposition, Mr. Aronoff acknowledged that he has (a) never been accepted as an expert (Aronoff Tr. at 149, 175); (b) never taught or published in the field of mortgage servicing (Aronoff Tr. at 136, 140); (c) did not read all the agreements at issue (Aronoff Tr. at 11); and (d) did not read the PWSA (Aronoff Tr. at 151). Therefore, Mr. Aronoff is not qualified to testify as an expert in this case.

## **CONCLUSION**

   For the foregoing reasons, EMC respectfully requests that the Court preclude Mr. Aronoff from testifying at the Sale Hearing.

Dated: October 13, 2007

                Respectfully submitted,

                DUANE MORRIS LLP

                /s/ Frederick B. Rosner
                Frederick B. Rosner
                1100 North Market Street, Suite 1200
                Wilmington, DE 19801-1246
                Telephone: (302) 657-4943
                Facsimile: (302) 657-4901

                  and

                SIDLEY AUSTIN LLP
                William M. Goldman
                Geoffrey T. Raicht
                Alex R. Rovira
                787 Seventh Avenue
                New York, NY 10019
                Telephone: (212) 839-5300
                Facsimile: (212) 839-5599

                SIDLEY AUSTIN LLP

David R. Kuney
1501 K. St. N.W.
Washington, D.C. 20005
Telephone: (202) 736-8650
Facsimile: (202) 736-8711

8