## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case Nos. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | ) | |
| | ) | Objection Deadline: October 19, 2007 at 5:00 p.m. |
| Debtors. | ) | Hearing Date: October 23, 2007 at 2:00 p.m. |
| | ) | |
| | ) | Related Docket No. 1553 |
| | ) | |

**LIMITED OBJECTION OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT, TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE: (A) APPROVING THE MORTGAGE SERVICING PURCHASE AGREEMENT; (B) AUTHORIZING THE DEBTORS TO SELL CERTAIN PROPERTY FREE AND CLEAR OF LIENS, INTERESTS, AND ENCUMBRANCES, AND (C) GRANTING RELATED RELIEF**

Bank of America, N.A., as administrative agent (the "Administrative Agent") for certain other banking and financial institutions as pre-petition secured lenders under that certain Second Amended and Restated Credit Agreement, dated as of August 10, 2006, by its undersigned attorneys, hereby objects (the "Objection") to the Debtors' Motion for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code: (A) Approving the Mortgage Servicing Purchase Agreement; (B) Authorizing the Debtors to Sell Certain Property Free and Clear of Liens, Interests, and Encumbrances; and (C) Granting Related Relief [D.I. 1553] (the "Motion"), and in support thereof, respectfully represents as follows:

## BACKGROUND

1.      On August 6, 2007 (the "Petition Date"), American Home Mortgage Holdings, Inc. and certain of its affiliates (the "Debtors")[1] filed with this Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1005(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2.      On August 20, 2007, GNMA[2] filed its Turn-Over Motion [D.I. 600] with this Court seeking, *inter alia*, the turn over from AHM Servicing of its servicing files, any funds and any other property relating to the GNMA Portfolio.

3.      On September 20, 2007, this Court entered the Stipulation by and between the Debtors and GNMA, which resolved the Turn-Over Motion, wherein the Debtors and GNMA agreed, *inter alia*, to allow the Debtors to have until October 9, 2007 to execute a binding contract to sell the GNMA Portfolio to a GNMA approved issuer/servicer in good standing, and until November 1, 2007 to close such a sale [D.I. 863]. On October 9, 2007, the Debtors and MidFirst entered into the Purchase Agreement, pursuant to which the Debtors are attempting to sell certain Property relating to the GNMA Portfolio to MidFirst.

4.      On October 15, 2007, the Debtors filed the Motion seeking, *inter alia*, an order pursuant to Bankruptcy Code sections 105 and 363(b) authorizing the Debtors to sell to

---

[1]      The Debtors are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion or the Purchase Agreement, as the case may be.

MidFirst the servicing and certain other rights, property, documents, agreements and funds related to certain Mortgage Pools in the GNMA Portfolio on an "as is, where is" basis, free and clear of all encumbrances without any representations or warranties of any kind other than expressly set forth in the Purchase Agreement (the "Proposed Sale").

## OBJECTION

5.      While the the Administrative Agent supports a sale of the Property, the Administrative Agent objects to the Proposed Sale as currently structured because it is unclear what, if any, benefit will inure to the estates if this Court approves the Proposed Sale. Indeed, the Debtors may very well be subjecting these estates to additional administrative liabilities and responsibilities the total sum of which could exceed any proceeds actually received from the Proposed Sale.

6.      Specifically, the Administrative Agent objects to the following terms of the Purchase Agreement and the Proposed Sale:  (1) the Debtors are surrendering the Property for the Initial Installment (as hereafter defined), which is a mere twenty percent (20%) of the aggregate purchase price; (2) the deductions to the purchase price will unreasonably reduce the Second Installment (as hereafter defined), and could potentially consume the Second Installment in its entirety; (3) the purchase price installments beyond the Initial Installment to be paid to the Debtors have so many contingencies and subject the Debtors to additional obligations that the ultimate payment of these installments is speculative at best; (4) therefore, the Debtors may not only be deprived of any economic benefit from the transaction but may also be saddled with significant administrative expense liability associated with the Debtors' obligations under the Purchase Agreement; (5) even if the Debtors could satisfy the conditions triggering the Buyer's obligation to make payment of the subsequent installments of the purchase price, there is no

justification for allowing the Buyer to pay the balance of the purchase price over the extended period of time as contemplated in Section 3 of the Purchase Agreement; and (6) as a result, GNMA is the only party guaranteed to receive any proceeds from the transaction contemplated in the Purchase Agreement.

7.    The Debtors are essentially surrendering the Property for twenty percent (20%) of the purchase price because the payment of the remaining installments under the Purchase Agreement may never be paid.  Specifically, Section 3.2.1 of the Purchase Agreement provides that on the Sale Date an initial installment will be paid to the Debtors in the amount equal to the greater of (a) twenty percent (20%) of the Purchase Price; and (b) the amounts payable by the Debtors to GNMA pursuant to its stipulation and order dated September 20, 2007, provided that the Debtors have performed their obligations pursuant to certain Sections 9 and 4.1 of the Purchase Agreement (the "Initial Installment").  See Purchase Agreement at § 3.2.1, p. 8. The Initial Installment is far too low because, due to the unrealistic benchmarks and other contingencies that the Debtors must satisfy in order to be entitled to any additional payments of the purchase price, this may be the only portion of the purchase price that the Debtors actually receive.

8.    Section 3.2.2 of the Purchase Agreement provides that on the Settlement Date the Buyer shall pay a second installment (the "Second Installment") to the Debtors only after "(i) Debtors' complete satisfaction of all conditions required to be satisfied by Debtors pursuant to Sections 4.2.4, 4.2.7, 7 and 8.8 prior to the Settlement Date, and (ii) Debtors' substantial satisfaction of all other conditions required to be satisfied by Debtors prior to the Settlement Date."  See Purchase Agreement at § 3.2.2, p. 9. The Administrative Agent submits that it will be difficult for the Debtors to satisfy these conditions of the Purchase Agreement.  To

the extent that the Debtors are even capable of satisfying these conditions, the speculative Second Installment may be depleted by the multitude of deductions contemplated in Section 3.2.2, which could potentially consume the entire Second Installment.  For example, in addition to other deductions, the Second Installment will be reduced by at least $541,000 as provided in Section 3.2.2.[3]  In addition to these deductions, the purchase price will be further reduced by an additional amount in excess of $300,000.[4]  Given the extent of the deductions, there should be additional clarity of the proceeds that the Debtors realistically expect to receive from the Proposed Sale.

9.    Next, the Second Installment and the subsequent installments are only payable after the Debtors completely satisfy all of the conditions precedent specified in the Purchase Agreement.  For example, pursuant to Section 3.2.4 of the Purchase Agreement, the Buyer is only required to pay the Debtors an amount equal to fifteen percent (15%) of the purchase price, in subsequent installments, once the Custodial File[5] related to each loan included in such Mortgage Pool as of the Sale Date is complete.  The Administrative Agent submits that it is unclear whether the Debtors will have all of the records and other information with respect to the GNMA Portfolio necessary to satisfy the unrealistic conditions and benchmarks in the

---

[3]    Section 3.2.2 of the Purchase Agreement provides that the Second Installment shall be paid as follows:  (1) eighty percent (80%) of the purchase price contemplated in Section 3.1.1; minus (2) one hundred percent (100%) of the amounts contemplated in Section 3.1.2; minus (3) the Initial Installment; minus (4) the Assignment Holdback ($400,000); minus (5) the Custodian Holdback ($25,000); minus (6) the Tax Contract Holdback ($116,000).  See Purchase Agreement at § 3.2.2, p. 9.

[4]    The overall purchase price will be further reduced by the following deductions: (i) $1,500 for each Loan which, as of the Sale Date, is (a) ninety (90) days or more past due under the terms of the Mortgage Note, (b) in Bankruptcy and thirty (30) days or more past due as of the close of business on October 31, 2007, (c) In Foreclosure, or (d) In Litigation and (ii) the Reduction Amount ($300,000).  See Purchase Agreement at §§ 3.1.2 and 3.1.3, p. 8.

[5]    Custodial File is defined in the Purchase Agreement to mean "*all* documents, agreements or instruments relating to a Loan, Mortgage, Mortgage Note, or Mortgage Pool, including, without limitation, the title insurance policy, mortgage insurance certificate, loan guaranty certificate, intervening mortgage assignments, intervening Note endorsements and *any other* documents, agreements, or instruments under which legal rights or obligations are created or exist, and shall include the Mortgage Note and the Mortgage securing the same."  See Purchase Agreement at p. 3 (emphasis added).

Purchase Agreement entitling the Debtors to any installment payments beyond the Initial Installment. Indeed, through the Purchase Agreement, the Debtor may very well have obligated themselves to obtain such records, regardless of the cost to the estates. Moreover, there is no ceiling on the damages that may be asserted or any limitation on the time by which the Purchaser must assert any alleged damages.

10.    In the event that the Debtors could clear all of these hurdles, Section 3 of the Purchase Agreement contemplates allowing the Buyer to pay the Debtors the balance of the purchase price over an indefinite period of time upon the satisfaction of certain additional requirements. Specifically, Sections 3.2.4 and 3.2.5 provide that the balance of purchase price shall be paid in subsequent installments on a date which is fifteen (15) business days following the date on which all loans included in each Mortgage Pool as of the Sale Date are in compliance with the requirements for certification or recertification by Buyer's custodian in accordance with GNMA Requirements and Insurer Requirements related to documentation. See Purchase Agreement at §§ 3.2.4, 3.2.5, p. 9. In addition, Section 3.2.6 of the Purchase Agreement provides that the "Buyer shall not be obligated to pay Debtors the purchase price related to such Mortgage Pool pursuant to Sections 3.2.4 or 3.2.5 until all Loans in such Mortgage Pool as of the Sale Date have satisfied GNMA Requirements related to documentation." See Purchase Agreement at §§ 3.2.6, p. 9. Again, not only is it unclear that these contingencies can be met in order to trigger the Buyer's obligation to pay the remaining installments, but this section contemplates an indefinite period of time for the payment of these installments.

11.    Since the Buyer may withhold future payment based solely on the Debtors' failure to perform, there is a scenario where the Purchaser could obtain the ownership of the assets without paying a full and fair price.

12.     As a result, the only party guaranteed to receive any net proceeds from the transaction contemplated by the Purchase Agreement is GNMA pursuant to the terms of the Stipulation.   Accordingly, since the transaction provides virtually no economic benefit to the estates and poses serious risks of administrative liability for the estates based on the Debtors' obligations under the Purchase Agreement, there is no sound business justification for consummating this transaction.   Therefore, the Administrative Agent submits that the Debtors have failed to demonstrate any reasonable business justification for entering into and consummating this transaction.

## CONCLUSION

13.     The Administrative Agent requests that this Court (i) deny the relief requested in the Motion and (ii) grant such other and further relief as is just and proper.

Dated: October 19, 2007
        Wilmington, Delaware

                    POTTER ANDERSON & CORROON LLP


                    By:  */s/ Laurie Selber Silverstein*
                        Laurie Selber Silverstein (DE Bar 2396)
                        P. O. Box 951
                        1313 N. Market Street, 6th Floor
                        Wilmington, Delaware  19899
                        (302) 984-6000

                            - and -

                        KAYE SCHOLER LLP
                        Margot B. Schonholtz
                        Mark F. Liscio
                        Scott D. Talmadge
                        Kaye Scholer LLP
                        425 Park Avenue
                        New York, NY  10022

                        *Counsel for Bank of America, N.A. as*
                        *Administrative Agent under that certain Second*
                        *Amended and Restated Credit Agreement, dated as*
                        *of August 10, 2006*

826664