# EXHIBIT A

BROADHOLLOW FUNDING, LLC

as Purchaser,

AMERICAN HOME MORTGAGE CORP.,
as Seller,

COLUMBIA NATIONAL, INCORPORATED,
as Servicer,

and

AMERICAN HOME MORTGAGE INVESTMENT CORP.,
as Performance Guarantor

MORTGAGE LOAN PURCHASE AND SERVICING AGREEMENT

Dated as of May 27, 2004

TABLE OF CONTENTS

Page

ARTICLE I

DEFINITIONS

ARTICLE II

SALE OF MORTGAGE LOANS; POSSESSION OF MORTGAGE LOAN FILES;
BOOKS AND RECORDS; CUSTODIAL AGREEMENT; DELIVERY OF DOCUMENTS

Section 2.1    Sale of Mortgage Loans ...................................................................19
Section 2.2    Possession of Mortgage Loan Files ...............................................21
Section 2.3    Contents of the Mortgage Loan File ..............................................22
Section 2.4    Determination of Purchase Price; Deposit by the Seller...................23
Section 2.5    Purchase Commitment Term ..........................................................24
Section 2.6    Books and Records; Transfers of Mortgage Loans............................24
Section 2.7    Custodial Agreement .....................................................................24
Section 2.8    Seller's Right to Call Certain Specified Assets ................................24

ARTICLE III

REPRESENTATIONS AND WARRANTIES;
COVENANTS; REMEDIES AND BREACH

Section 3.1    Representations and Warranties of the Seller and the Servicer .........................25
Section 3.2    Representations and Warranties Regarding Individual Mortgage Loans;
               Eligibility Representations..............................................................29
Section 3.3    Remedies for Breach of Representations and Warranties...................37
Section 3.4    Conditions to Closing ....................................................................37
Section 3.5    Covenants of the Seller and the Servicer ........................................39
Section 3.6    Representations and Warranties of the Purchaser............................41
Section 3.7    Perfection Representations.............................................................41

ARTICLE IV

ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 4.1    The Servicer; Servicing and Administration of the Mortgage Loans................41
Section 4.2    Sales and Securitizations...............................................................44
Section 4.3    Liquidation of Mortgage Loans ......................................................46
Section 4.4    Collection of Mortgage Loan Payments ..........................................46
Section 4.5    Establishment of, and Deposits to, Collection Account ....................46

Section 4.6        Permitted Withdrawals From Collection Account and Collateral
                   Account; Deposit into the Collateral Account ...................................47
Section 4.7        Establishment of, and Deposits to, Escrow Account .........................49
Section 4.8        Permitted Withdrawals From Escrow Account ..................................50
Section 4.9        Payment of Taxes, Insurance and Other Charges .............................50
Section 4.10       Protection of Accounts ......................................................................51
Section 4.11       Maintenance of Hazard Insurance .....................................................51
Section 4.12       Maintenance of Mortgage Impairment Insurance..............................52
Section 4.13       Maintenance of Fidelity Bond ...........................................................52
Section 4.14       Inspections .........................................................................................53
Section 4.15       Restoration of Mortgaged Property ...................................................53
Section 4.16       Maintenance of PMI Policy; Claims..................................................53
Section 4.17       Title, Management and Disposition of REO Property........................54
Section 4.18       Servicer Reports ................................................................................55
Section 4.19       Real Estate Owned Reports ...............................................................55
Section 4.20       Liquidation Reports ...........................................................................55
Section 4.21       Reports of Foreclosures and Abandonments of Mortgaged Property................55
Section 4.22       Servicer Advance Report ...................................................................55
Section 4.23       Secondary Market Trading Report......................................................55

ARTICLE V

SERVICER ADVANCES

Section 5.1        Servicer Monthly Advances................................................................55

ARTICLE VI

GENERAL SERVICING PROCEDURES

Section 6.1        Transfers of Mortgaged Property........................................................56
Section 6.2        Satisfaction of Mortgages, Assignments of Mortgage Notes in Violation
                   of this Purchase Agreement and the Release of Mortgage Loan Files ............56
Section 6.3        Servicing Compensation ....................................................................57
Section 6.4        Annual Statement as to Compliance ..................................................57
Section 6.5        Annual Independent Public Accountants' Servicing Report .............57
Section 6.6        Right to Examine Servicer Records....................................................57

ARTICLE VII

[RESERVED]

ARTICLE VIII

SERVICER TO COOPERATE

Section 8.1      Provision of Information ........................................................................58

ARTICLE IX

THE SERVICER

Section 9.1      Indemnification of Third Party Claims .............................................58
Section 9.2      Corporate Existence of the Servicer .................................................59
Section 9.3      Limitation on Liability of Servicer and Others.................................59
Section 9.4      Limitation on Resignation and Assignment by the Servicer ...........59
Section 9.5      Limitation on Assignment of Right ...................................................59

ARTICLE X

DEFAULT

Section 10.1     Servicer Events of Default ................................................................60
Section 10.2     Waiver of Defaults ............................................................................61

ARTICLE XI

TERMINATION

Section 11.1     Termination of Agreement.................................................................62
Section 11.2     Termination of Purchase Obligations ...............................................62
Section 11.3     Termination of Servicing With Respect to Any Mortgage Loan.......65

ARTICLE XII

MISCELLANEOUS PROVISIONS

Section 12.1     Successor to Servicer .......................................................................65
Section 12.2     Amendment........................................................................................66
Section 12.3     Governing Law ..................................................................................66
Section 12.4     Duration of Agreement .....................................................................66
Section 12.5     Notices ...............................................................................................66
Section 12.6     Severability of Provisions .................................................................67
Section 12.7     Relationship of Parties ......................................................................67

Section 12.8      Execution; Successors and Assigns ..................................................67
Section 12.9      Recordation of Assignments of Mortgage ........................................67
Section 12.10    Assignment by Purchaser.................................................................68
Section 12.11    Non-Petition Agreement ..................................................................68
Section 12.12    Waiver of Offset ...............................................................................68
Section 12.13    Limited Recourse ..............................................................................68
Section 12.14    Non-Petition Agreement ..................................................................68
Section 12.15    Third-Party Beneficiary ...................................................................68

## ARTICLE XIII

## PERFORMANCE GUARANTEE

Section 13.1      Guarantee of Servicer's Performance and Payment Obligations.......................69

## ARTICLE XIV

## ASSIGNMENT

Section 14.1      Assignment ........................................................................................70

## ARTICLE XV

## COMMITMENT FEE

Section 15.1      Commitment Fee................................................................................70


SCHEDULE A  PERFECTION REPRESENTATIONS ................................................... Sch. A-1

EXHIBIT A    FORM OF TRANSFER SUPPLEMENT....................................... A-1
EXHIBIT B    FORM OF RATED BIDDER AGREEMENT .................................B-1
EXHIBIT C    FORM OF SERVICER REPORT ....................................................C-1
EXHIBIT D    FORM OF SERVICER ADVANCE REPORT............................. D-1

MORTGAGE LOAN PURCHASE AND SERVICING AGREEMENT, dated as of May 27, 2004 (as amended, supplemented or otherwise modified and in effect from time to time, the "Purchase Agreement"), by and among Broadhollow Funding, LLC, a Delaware limited liability company, as purchaser (the "Purchaser"), American Home Mortgage Corp., a New York corporation, as seller (the "Company" or the "Seller"), Columbia National, Incorporated, as servicer (the "Servicer"), and American Home Mortgage Investment Corp. ("AHMIC"), as performance guarantor (the "Performance Guarantor") of the Servicer's obligations hereunder.

W I T N E S S E T H:

WHEREAS, the Purchaser has agreed to purchase from the Seller and the Seller has agreed to sell to the Purchaser from time to time mortgage loans constituting Eligible Loans until the termination of this Purchase Agreement in accordance with Section 11.1 hereof. The Purchaser wishes to appoint the Servicer to service each Mortgage Loan on behalf of the Purchaser after the sale and purchase thereof.

WHEREAS, the Purchaser, the Company and the Servicer wish to prescribe the manner of purchase of Eligible Loans.

WHEREAS, the Purchaser, the Seller and the Servicer wish to prescribe the management, servicing and control of the Mortgage Loans.

WHEREAS, the Purchaser intends to Securitize or sell the Mortgage Loans and the Servicer will arrange for the Securitization or sale of Conforming Loans on behalf of the Purchaser through GNMA, FNMA, FHLMC, FHLB or other third party purchasers and arrange for the sale of Non-Conforming Loans on behalf of the Purchaser to third party purchasers.

WHEREAS, the Performance Guarantor wishes to guarantee the performance obligations of the Servicer under this Purchase Agreement.

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Purchaser, the Seller, the Servicer and the Performance Guarantor agree as follows:

## ARTICLE I

## DEFINITIONS

Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the following meanings and, if not defined herein, shall have the meanings assigned to such terms in the Security Agreement:

Accepted Servicing Practices:  The Servicer's Customary Servicing Procedures and the servicing practices required by the Guidelines.  With respect to FHA Loans and VA Loans, the GNMA Guides shall control in the event of any inconsistency in the Guidelines. With respect to any other Mortgage Loans, the FNMA Guides shall control in the event of any inconsistency in the Guidelines.

Acquisition Date Accrued Interest:  With respect to each Mortgage Loan, the amount of interest, if any, accrued and unpaid on the date of acquisition of such Mortgage Loan by the Purchaser.

Affiliate:  With respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person.  For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities (including, without limitation, partnership interests), by contract or otherwise and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agency or Agencies:  Any of GNMA, FNMA, FHLB, or FHLMC, as applicable.

Agency Custodial Agreement:  The custodial agreement entered into with GNMA, FNMA, FHLMC or FHLB, as applicable, pursuant to which a custodian will act as document custodian for a pool or pools of Mortgage Loans to be formed to back Agency Securities.

Agency Securities:  Securities backed by a pool or pools of Mortgage Loans, which are issued and guaranteed by the applicable Agency.

AHMIC:  The meaning assigned to such term in the recitals hereof.

ALTA:  The American Land Title Association, or any successor thereto.

Appraised Value:  The value set forth in an appraisal (or other documentation of property value acceptable to the Agencies) made in connection with the origination or relating to the refinancing of the related Mortgage Loan as the value of the Mortgaged Property.

Approved Seller:  An approved seller under the Guidelines.

Approved Servicer.  An approved servicer under the Guidelines.

Assigned Collateral:  Shall have the meaning assigned to such term in Section 4.01 of the Security Agreement.

Assignment of Mortgage:  An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form (in written or electronic format), sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to the Purchaser.  Any Assignment of Mortgage delivered in written format shall be the duly executed original of such Assignment of Mortgage.

Base Indenture:  The base indenture, dated as of the date hereof, by and between the Purchaser and the Indenture Trustee, as the same may be at any time amended, modified or supplemented, exclusive of Supplements creating a new Series of Notes.

BIF:  The Bank Insurance Fund or any successor thereto.

Business Day:  Any day other than (i) Saturday and Sunday or (ii) a day on which banking institutions or foreign exchange markets in New York City, Melville, New York or any other cities in which the Servicer, the Indenture Trustee or the Paying Agent conducts servicing, trust or similar activities are authorized or required by law, regulation or executive order to be closed for business.

Buydown Loans:  A mortgage loan with one effective interest rate over the term of the loan payable (i) by the underlying obligor and (ii) with proceeds from a fund or account established for the benefit of the obligor.

Callable Notes:  The Callable Notes, Series 2004-1, issued from time to time by the Purchaser pursuant to the Indenture and the Depositary Agreement.

Cash Out Refinance:   Any Mortgage Loan, other than a purchase money mortgage loan, in which the original principal balance of such Mortgage Loan exceeds the sum of (i) the unpaid principal balance of any first lien mortgage loan repaid in full by the proceeds of such Mortgage Loan, and (ii) the unpaid principal balance of any junior lien mortgage loan repaid in full by the proceeds of such Mortgage Loan.

Class:  With respect to any Series of Notes, shall have the meaning, if any, specified in the related Supplement.

Closing Date:  The closing date specified in any Transfer Supplement, which is the date as to which the sale of any Portfolio is designated to occur.

Closing Month:  The meaning assigned to such term in Section 2.5(b) hereof.

Code:  The Internal Revenue Code of 1986, as amended, reformed or otherwise modified from time to time, and any successor statute of similar import, in each case as in effect from time to time.  References to sections of the Code also refer to any successor sections.

Collateral Account:  The meaning assigned to such term in Section 4.6(b) hereof.

Collateral Agent:  Deutsche Bank Trust Company Americas, as collateral agent for the Secured Parties under the Security Agreement or any successor to the collateral agent under the Security Agreement.

Collection Account:  The meaning assigned to such term in Section 4.5 hereof.

Commitment Fee:  The meaning assigned to such term in Section 15.1 hereof.

Company:  The meaning assigned to such term in the recitals hereof.

<u>Company Employees</u>:  The meaning assigned to such term in Section 4.13 hereof.

<u>Condemnation Proceeds</u>:  As to each Mortgage Loan, all awards or settlements in respect of the related Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of eminent domain or condemnation, to the extent not required to be released to a Mortgagor pursuant to the terms of the related Loan Documents.

<u>Conforming Loan</u>:  An Eligible Loan which conforms to the Guidelines of the Agencies as such guidelines have been modified by FHLMC, FNMA, FHLB, and GNMA with respect to Eligible Loans originated or purchased by the Seller.

<u>Custodial Agreement</u>:  The custodial agreement, dated as of the date hereof, by and among the Purchaser, the Seller, the Collateral Agent and the Custodian, as the same may at any time be amended, modified or supplemented.

<u>Custodian</u>:  Deutsche Bank National Trust Company, in its capacity as custodian under the Custodial Agreement, or any successor custodian under the Custodial Agreement.

<u>Customary Servicing Procedures</u>:  Procedures (including collection procedures) that the Servicer customarily employs and exercises in servicing and administering mortgage loans similar to the Mortgage Loans and arranging for the sale and Securitization of mortgage loans in the jurisdiction in which the Mortgaged Property is situated.

<u>Cut-Off Date</u>:  Shall mean (i) with respect to the repurchase of a Mortgage Loan by the Seller or the Servicer pursuant to <u>Section 3.3 or 6.2</u> hereof, the date of such repurchase and (ii) with respect to any other sale by the Purchaser of a Mortgage Loan, the time and date established by the Purchaser and the Mortgage Loan Buyer as the time and date on and after which all principal and interest collected and other benefits accruing on the Mortgage Loan shall belong to such Mortgage Loan Buyer.

<u>Deemed Representation</u>: The meaning ascribed thereto in <u>Section 3.2(nn)</u> hereof.

<u>Defaulted Loan</u>:  Any Mortgage Loan where (i) the obligor thereon has failed to make a required payment for ninety (90) days or more past its contractual due date, (ii) such Mortgage Loan is a Delinquent Loan for which the Servicer has not made a Servicer Monthly Advance of interest and the Servicer has delivered a certificate pursuant to Section 5.1 hereof or (iii) any other event has occurred of which the Servicer has knowledge and which gives the holder the right to accelerate payment and/or take steps to foreclose on the mortgage securing the Mortgage Loan under the mortgage loan documentation.

<u>Delinquent Loan</u>:  Any Mortgage Loan which has a payment which is thirty (30) days or more past its Due Date without giving effect to any Servicer Monthly Advance.

<u>Depositary</u>:  Deutsche Bank Trust Company Americas, in its capacity as depositary under the Depositary Agreement, or any successor depositary under the Depositary Agreement.

Depositary Agreement:  The depositary agreement, dated as of the date hereof, entered into by the Depositary and the Purchaser, as the same may at any time be amended, modified or supplemented.

Determination Date:  With respect to any Distribution Date, the second Business Day preceding such Distribution Date.

Distribution Date:  The 20th day of each month (or if such day is not a Business Day, the next following Business Day), commencing on June 20, 2004.

Due Date:  With respect to each Mortgage Loan, the day specified in each Mortgage Note as being the day of the month on which the related Monthly Payment is due on such Mortgage Loan, exclusive of any days of grace.

Due Period:  With respect to each Distribution Date, the period commencing on the first day of the month preceding the month of the Distribution Date and ending on the last day of the month preceding the month in which the Distribution Date occurred.

Eligibility Criteria:  In connection with the Purchaser's purchase of Mortgage Loans on any day, the Mortgage Loans acquired on such day must satisfy the following criteria: (i) each Mortgage Loan must be either a Conforming Loan or a Non-Conforming Loan; (ii) each Mortgage Loan must have been originated or purchased by the Seller or, in the case of "Construction to Term Loans," converted to a term loan, in accordance with its then-current origination or acquisition underwriting practices within sixty (60) days prior to the acquisition thereof by the Purchaser, provided that no more than 10% of the Program Size may consist of loans originated or purchased by the Seller or American Home Mortgage Acceptance, Inc., as applicable, more than sixty (60) days prior to the acquisition thereof by the Purchaser or Melville Funding, LLC if such loan satisfies the other Eligibility Criteria on the date of acquisition by the Purchaser or Melville Funding, LLC; (iii) each Mortgage Loan may not be made to a borrower that is generally referred to as a "sub-prime" borrower in accordance with the Seller's customary underwriting practices and (iv) each Mortgage Loan must satisfy the Eligibility Representations.

Eligibility Representations:  The representations and warranties made by the Seller with respect to each Mortgage Loan, set forth in Section 3.2 herein.

Eligible Investments:  Investments which mature no later than the Business Day immediately preceding the next following Distribution Date in the following:  (i) obligations issued by, or on which the full and timely payment of principal and interest is fully guaranteed by the United States of America or any agency or instrumentality thereof (which agency or instrumentality is backed by the full faith and credit of the United States of America), (ii) commercial paper notes (other than the Secured Liquidity Notes, the Extended Notes, the Callable Notes and the Non-Called Notes) rated (at the time of purchase) at least "A-1+" by S&P and "P-1" by Moody's, (iii) certificates of deposit, other deposits or bankers' acceptances issued by or established with commercial banks having short-term deposit ratings (at the time of purchase) of at least "A-1+" by S&P and "P-1" by Moody's, (iv) repurchase agreements involving any of the eligible investments described in clauses (i) through (iii) hereof so long as the other party to the repurchase agreement has short-term unsecured debt obligations or short-

term deposits rated (at the time of purchase) at least "A-1+" by S&P and "P-1" by Moody's and (v) direct obligations of any money market fund or other similar investment company all of whose investments consist of obligations described in the foregoing clauses of this definition and that is rated "AAAm" by S&P and "Aam" by Moody's.   In addition, any such eligible investment shall not have an "r" highlighter affixed to its rating, and its term shall have a predetermined fixed dollar amount of principal due at maturity that cannot vary or change. Eligible Investments may include investments for which the Collateral Agent or its affiliates serves as an investment manager or advisor.

Eligible Loan:   Conforming Loans and Non-Conforming Loans that satisfy the Eligibility Criteria, Eligibility Representations, Portfolio Aging Limitations and the Portfolio Criteria.   An Eligible Loan includes, without limitation, the Mortgage Loan File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, VA Guaranty Proceeds, REO Disposition Proceeds and all other rights, benefits, proceeds and obligations arising from or in connection with such Eligible Loan.

Equivalent Security:   With respect to a mortgage loan, a mortgage-backed security issued by FHLMC, FNMA, FHLB or GNMA having a term to final maturity equal to the original term to maturity of such mortgage loan and an interest or pass-through rate equal to the interest rate on such mortgage loan.

Equivalent Security Price:   With respect to each Mortgage Loan, the price (expressed as a percentage of par) of the Equivalent Security for such Mortgage Loan (net of standard servicing fees and agency fees).   The price of an Equivalent Security shall be determined by the Servicer on any date by reference to an independent market price reference such as Telerate.

Escrow Account:   As to each mortgage loan, any separate account or accounts created and maintained pursuant to Section 4.7 hereof.

Escrow Payments:   With respect to each mortgage loan, the amounts constituting ground rents, taxes, assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, and any other payments required by the Mortgagee to be escrowed by the Mortgagee pursuant to the Mortgage or any other related document.

Event of Bankruptcy:   Shall have the meaning set forth in the Indenture.

Expected Maturity:   With respect to any Secured Liquidity Note, a date which is no longer than 180 days following the date of issuance of such Secured Liquidity Note.

Extended Notes:   Any one of the Secured Liquidity Notes, Series 2004-1, executed from time to time by the Purchaser and authenticated by or on behalf of the Indenture Trustee upon the conversion of a Secured Liquidity Note to an Extended Note pursuant to a SLN Extended Event.

Facility Documents:   This Purchase Agreement, the Indenture, the Security Agreement, the Performance Guarantee, the LLC Agreement, the Custodial Agreement, the

Depositary Agreement, the Interest Rate Swap, the Short Term Note Dealer Agreement, the Term Note Purchase Agreement, the Subordinated Purchase Agreement, the Melville Variable Funding Note, the Guarantee and Reimbursement Agreement and the Put Agreement.  For all purposes prior to the date of issuance of the Short Term Notes, "Facility Documents" shall be deemed to exclude the Depositary Agreement and the Short Term Note Dealer Agreement.  From and after the date of issuance of the Short Term Notes, "Facility Documents" shall be deemed to include the Depositary Agreement and the Short Term Note Dealer Agreement.  For all purposes prior to the respective dates of issuance of any Series of Term Notes or Subordinated Notes, "Facility Documents" shall be deemed to exclude any Term Note Purchase Agreement and Subordinated Note Purchase Agreement, as applicable.  From and after the respective dates of issuance of any Series of Term Notes or Subordinated Notes, "Facility Documents" shall be deemed to include the Term Note Purchase Agreement and Subordinated Note Purchase Agreement, as applicable, related to any Series of Term Notes or Subordinated Notes.

FDIC:  The Federal Deposit Insurance Corporation, or any successor thereto.

FHA:  The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, or any successor thereto and including the Federal Housing Commissioner and the Secretary of Housing and Urban Development where appropriate under the FHA Regulations.

FHA Approved Mortgagee:  A corporation or institution approved as a mortgagee by the FHA under the Act and applicable FHA Regulations, and eligible to own and service mortgage loans such as the FHA Loans.

FHA Loan:  A Mortgage Loan which qualifies for the issuance of a FHA Mortgage Insurance Certificate.

FHA Mortgage Insurance:  Mortgage insurance authorized under Sections 203(b), 203(k), 213, 221(d)(2), 222, and 235 of the Act and provided by the FHA.

FHA Mortgage Insurance Certificate:  The contractual obligation of the FHA respecting the insurance of a Mortgage Loan.

FHA Regulations:  Regulations promulgated by HUD under the Federal I Housing Administration Act, codified in 24 Code of Federal Regulations, and other HUD issuances relating to FHA Loans, including the related handbooks, circulars, notices and mortgagee letters.

FHLB:  Any Federal Home Loan Bank, or any successor thereto.

FHLB Guides:  The guidelines published by any FHLB and all amendments or additions thereto.

FHLMC:  The Federal Home Loan Mortgage Corporation, or any successor thereto.

FHLMC Guides:  The Federal Home Loan Mortgage Corporation Sellers' Guide and the Federal Home Loan Mortgage Corporation Servicers' Guide and all amendments or additions thereto.

FICO Score:  A statistical credit score obtained by many mortgage lenders in connection with a loan application to help assess a borrower's creditworthiness.  A FICO score is generated by models developed by a third party and made available to lenders through three national credit bureaus.  The FICO score is based on a borrower's historical credit data, including, among other things, payment history, delinquencies on accounts, levels of outstanding indebtedness, length of credit history, types of credit and bankruptcy experience.

Fidelity Bond:  A fidelity bond to be maintained by the Servicer pursuant to Section 4.13 hereof.

Financing:  (i) Securitizing prime mortgage loans or (ii) funding prime mortgage loans through a commercial paper program, repurchase facility, or loan facility.

First Pay Default Loan:  A Mortgage Loan for which the initial Monthly Payment due thereon after origination is not made by the related Mortgagor within forty-five (45) days after the Due Date therefor.

FNMA:  The Federal National Mortgage Association, or any successor thereto.

FNMA Guides:  The FNMA Selling and Servicing Guides and all amendments or additions thereto.

Forward Trade:  An agreement between the Servicer and a counterparty, whereby the Servicer agrees to deliver Securitization Securities on the Purchaser's behalf to such counterparty on a date and at a price stated therein.

Forward Whole Loan Trade:  An agreement between a counterparty and the Company (or the transferor of the applicable Mortgage Loan or Mortgage Loans to the Company which has assigned its rights and obligations under such agreement to the Company), whereby the Company agrees to deliver a Mortgage Loan or a Portfolio of Mortgage Loans to such counterparty on a date and price stated therein.

GNMA:  The Government National Mortgage Association, or any successor thereto.

GNMA Guides:  The GNMA Handbooks 5500.3 and all amendments or additions thereto.

Guidelines:  The GNMA Guides, the FNMA Guides, the FHLMC Guides and the FHLB Guides, as such guides have been amended from time to time with respect to the Seller.

HUD:  The Department of Housing and Urban Development, or any federal agency or official thereof which may from time to time succeed to the functions thereof with

regard to FHA Mortgage Insurance.  The term "HUD," for purposes of this Purchase Agreement, is also deemed to include subdivisions thereof such as the FHA and GNMA.

Indenture:  The Base Indenture, together with all Supplements thereto, as the same may be at any time amended, modified or supplemented.

Indenture Event of Default:  An event of default set forth in the Indenture.

Indenture Trustee:  Deutsche Bank Trust Company Americas, not in its individual capacity but solely as Indenture Trustee under the Indenture, or any successor Indenture Trustee as provided in the Indenture.

Initial Call Date:  The meaning assigned to such term in the Supplement related to the Short Term Notes.

Initial Closing Date:  May 27, 2004.

Insurance Proceeds:  With respect to each Mortgage Loan, proceeds of hazard insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Interest Rate Swap:  One or more interest rate swap agreements, each dated as of the date hereof, and any other interest rate swap agreement, between the Purchaser and a Swap Counterparty, on substantially similar terms, or any substitute interest rate swaps entered into pursuant to the provisions of such interest rate swap agreements, in each case as the same may be at any time amended, modified or supplemented.

Interest Rate Swap Termination Event:  A termination event or event of default under any Interest Rate Swap.

Liquidation Proceeds:  All amounts received and retained in connection with the liquidation of Defaulted Loans.

List of Loans:  Shall have the meaning assigned to such term in Section 3.5(c)(v) hereof.

LLC Agreement:  The limited liability company agreement of the Purchaser, dated as of the date hereof, and executed by the Manager and the Special Member, as the same may be at any time amended, modified or supplemented.

Loan Documents:  The meaning assigned to such term in Section 2.3 hereof.

Loan Termination Date:  Each day on which a deposit is made into the Collateral Account in respect of Terminated Loans.

Loan-to-Value Ratio or LTV:  With respect to each Mortgage Loan, the ratio expressed as a percentage of the Scheduled Principal Balance of the Mortgage Loan as of the date of origination (unless otherwise indicated) or, in the case of any construction loan, the date of conversion to a term loan to the lesser of (i) the Appraised Value of the Mortgaged Property

and (ii) if the Mortgage Loan was made to finance the acquisition of the related Mortgaged Property, the purchase price of the Mortgaged Property.

Lost Mortgage Note:    Shall have the meaning assigned to such term in Section 3.2(y) hereof.

Manager:  American Home Mortgage Corp.

Mark-to-Market Price:  With respect to each Mortgage Loan, (i) the mark-to-market price of a Conforming Loan shall be the Equivalent Security Price multiplied by the unpaid principal amount of such Conforming Loan and (ii) the mark-to-market price of a Non-Conforming Loan shall be the Equivalent Security Price reduced by the Non-Conforming Price Spread multiplied by the unpaid principal amount of such Non-Conforming Loan.

Material Adverse Effect:  A material adverse effect on (a) the business, assets, operations, prospects or condition, financial or otherwise, of the Purchaser or the Seller or (b) the ability of the Purchaser, the Seller, the Servicer or the Performance Guarantor to perform any of their obligations under this Purchase Agreement or any of the other Facility Documents.

Melville Variable Funding Note:  The Variable Funding Asset-Backed Notes, Series 2004-I, dated as the date hereof, 2004, issued by Melville Funding, LLC, or any successor note issued by Melville Funding, LLC.

MERS:  Mortgage Electronic Registry System.

Monthly Payment:  The scheduled monthly payment of principal and interest on a Mortgage Loan, as reduced by any reduction in the amount of interest due on such Mortgage Loan as a result of the Servicemembers Civil Relief Act of 1940, as amended.

Moody's:  Moody's Investors Service, Inc., and any successors thereto.

Mortgage:  The mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a lien on an estate in fee simple in real property securing the Mortgage Note.

Mortgage Interest Rate:  The annualized regular rate of interest borne on a Mortgage Note.

Mortgage Loan:  Shall mean any mortgage loan purchased by the Purchaser pursuant to any Transfer Supplement and subsequently not repurchased by the Seller or the Servicer or sold, securitized or otherwise transferred by the Purchaser pursuant to the terms hereof.  A Mortgage Loan includes, without limitation, the Mortgage Loan File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, VA Guaranty Proceeds, REO Disposition Proceeds and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

Mortgage Loan Buyer:  A Securitization Vehicle or other Person that is purchasing a Portfolio from the Purchaser (other than the Seller or the Servicer in the case of a repurchase of a Mortgage Loan pursuant to Section 3.3 or 6.2 hereof).

Mortgage Loan Buyer Account:  The meaning assigned to such term in Section 4.6(g) hereof.

Mortgage Loan File:  The items pertaining to each Mortgage Loan referred to in Section 2.3 hereof, and any additional documents required to be added to the Mortgage Loan File pursuant to this Purchase Agreement.

Mortgage Loan Schedule:  Shall mean the document delivered by the Seller pursuant to a Transfer Supplement on any Closing Date and attached as Exhibit I to such Transfer Supplement.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage, relating to a Mortgage Loan.  Each Mortgage Note shall consist of the original promissory note bearing all intervening endorsements and including any riders to such promissory note, endorsed "Pay to the order of _____, without recourse" and signed in the name of the previous owner by an authorized officer.

Mortgaged Property:  The real property securing repayment of the debt evidenced by a Mortgage Note.

Mortgagee:  The lender on a Mortgage Note.

Mortgagor:  The obligor on a Mortgage Note.

Mortgagor's Statement of Value:  A certification as to the fair market value of the related Mortgaged Property made by a Mortgagor who meets the financial and credit requirements of the Agencies to permit a mortgage loan originator's reliance upon such certification in lieu of an appraisal.

Non-Called Note:  Any one of the Callable Notes, Series 2004-1, that is not called for payment on the Initial Call Date by the Purchaser.

Non-Conforming Loan:  An Eligible Loan which substantially conforms to the Guidelines except (i) the principal amount thereof may exceed the principal amount of loans which conform to the Guidelines or (ii) for other specified exceptions to the Guidelines that are consistent with the Seller's Non-Conforming Loan underwriting standards.

Non-Conforming Price Spread:  With respect to each Non-Conforming Loan, the reduction in Equivalent Security Price, as agreed to by the Seller and the Purchaser in accordance with the Seller's customary practices (generally understood to be a fixed rate or adjustable rate spread based on then current spreads for the applicable payment and coupon).

Noteholders:  Holders of any of the Term Notes or Short Term Notes, Extended Notes and Non-Called Notes (taken together as one Series) or Subordinated Notes or any other notes issued pursuant to the Indenture.

Notes:  Any of the Term Notes, Short Term Notes, Extended Notes and Non-Called Notes (taken together as one Series) or Subordinated Notes, and any additional Series of Notes issued pursuant to the Indenture.

Obligations:  Shall have the meaning specified in Section 2.01 of the Security Agreement.

Officer's Certificate:  A certificate signed by the Chairman of the Board, Chief Executive Officer, the President, any Executive Vice President, any Senior Vice President or any Vice President of the Seller or the Servicer, as applicable, and delivered to the Purchaser as required by this Purchase Agreement.

Opinion of Counsel:  A written opinion of counsel, who may be an employee of the Seller or the Servicer, as applicable, in a form reasonably acceptable to the Purchaser.

Optional Repurchase:  Shall have the meaning set forth in Section 6.3 of the Base Indenture.

Original Principal Purchase Price:  With respect to each Mortgage Loan, the Mark-to-Market Price at the close of business on the Business Day prior to the Closing Date of the sale of such Mortgage Loan by the Seller to the Purchaser.

Original Purchase Price:  (i) With respect to a Mortgage Loan, the Original Principal Purchase Price of such Mortgage Loan *plus* the Acquisition Date Accrued Interest and (ii) with respect to a Securitization Security, the aggregate of the Outstanding Purchase Price of all Mortgage Loans backing such Securitization Security.

Outstanding Purchase Price:  With respect to any Mortgage Loan or Securitization Security and any date of determination, (i) the Original Purchase Price of such Mortgage Loan or Securitization Security, less (ii) in the case of a Mortgage Loan, the amounts of any payments received by the Purchaser in respect of Acquisition Date Accrued Interest, *less* (iii) in the case of any Mortgage Loan or Securitization Security, all previous principal payments made on such Mortgage Loan or Securitization Security, as the case may be, and received by the Servicer prior to such date of determination; provided, however, that the Outstanding Purchase Price of a Mortgage Loan or Securitization Security (other than a Terminated Loan or a repurchased loan) shall only be reduced on a Due Date and the Outstanding Purchase Price of a Terminated Loan shall be reduced on the related Loan Termination Date; provided, further, that after any Loan Termination Date or any date a loan is repurchased, the Outstanding Purchase Price of a Terminated Loan or a repurchased loan shall be zero.

Partial Put:  The meaning assigned thereto in Section 4.1(a) hereof.

Perfection Representations:  The representations, warranties and covenants set forth in Schedule A attached hereto.

Performance Guarantee:  The full, unconditional and irrevocable guarantee of the Servicer's performance and payment obligations, set forth in Article XIII hereof.

Performance Guarantor:  AHMIC or any other Person that agrees to assume the obligations of the Performance Guarantor hereunder that has the Required Rating.

Person:  Any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof.

PMI Policy:  A policy of primary mortgage guaranty insurance issued by a Qualified Insurer, as required by this Purchase Agreement with respect to certain mortgage loans.

Portfolio:  A Mortgage Loan or pool of Mortgage Loans sold to the Purchaser on a Closing Date pursuant to the terms hereof and the applicable Transfer Supplement.

Portfolio Aging Limitations:  With respect to the age of the Eligible Loans owned by the Purchaser on any day, the following limitations shall apply: (i) the aggregate Outstanding Purchase Price of Eligible Loans acquired by the Purchaser and the aggregate outstanding purchase price of eligible loans acquired by Melville Funding, LLC more than three (3) months prior to such day may not exceed 30% of the Program Size, (ii) the aggregate Outstanding Purchase Price of Eligible Loans acquired by the Purchaser and the aggregate outstanding purchase price of eligible loans acquired by Melville Funding, LLC more than six (6) months prior to such day may not exceed 10% of the Program Size and (iii) the Purchaser must Securitize or sell each Eligible Loan acquired by it within one (1) year of the date of acquisition; *provided*, *however*, that, with the consent of the Swap Counterparty, the Required Senior Noteholders and the Required Subordinated Noteholders, subject to Rating Agency Confirmation, the requirements of clauses (i) and (ii) may be waived.

Portfolio Criteria:  On any day, after giving effect to the Purchaser's purchase and sale of Eligible Loans on such day, the Eligible Loans owned by the Purchaser in the aggregate must satisfy the following criteria: (i) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC secured by property in the State of California, may not on such date exceed 30% of the then-current Program Size, (ii) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC secured by property in the State of Illinois may not on such date exceed 25% of the then-current Program Size; (iii) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC secured by property in any State other than California or Illinois may not on such date exceed 15% of the then-current Program Size, (iv) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC secured by a condominium unit may not on such date exceed 12% of the then-current Program Size, (v) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC insured or guaranteed by either the FHA or VA may not on such date exceed 30% of the then-current Program Size, (vi) the sum of the aggregate Outstanding Purchase Price of Non-Conforming Loans held by the Purchaser and the aggregate

Outstanding Purchase Price of Non-Conforming Loans held by Melville Funding, LLC may not on such date exceed 35% of the then-current Program Size, (vii) the Eligible Loans held by the Purchaser and the Eligible Loans held by Melville Funding, LLC must, on an aggregate basis, have a weighted average FICO Score of at least 675 (excluding loans insured or guaranteed by the FHA or VA), (viii) the Eligible Loans held by the Purchaser and the eligible loans held by Melville Funding, LLC (a) with a weighted average FICO Score less than or equal to 640 may not exceed 25% of the then-current Program Size and (b) with a weighted average FICO Score less than or equal to 620 may not exceed 5% of the then-current Program Size, (ix) the weighted average LTV of the Eligible Loans held by the Purchaser and the Eligible Loans held by Melville Funding, LLC must, on an aggregate basis, not at any time exceed 83% (excluding loans insured or guaranteed by the FHA or VA), (x) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC with an LTV of greater than 95% may not exceed 5% of the then-current Program Size (excluding loans insured or guaranteed by the FHA or VA), (xi) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC that are Specified Mortgage Loans may not exceed 12% of the then-current Program Size, and (xii) the sum of the aggregate Outstanding Purchase Price of Eligible Loans held by the Purchaser and the aggregate outstanding purchase price of eligible loans held by Melville Funding, LLC that are Seasoned Mortgage Loans may not exceed 5% of the then-current Program Size.

Principal Paydown Auction:  The meaning assigned thereto in Section 4.1(a) hereof.

Principal Prepayment:  Any payment or other recovery of principal made on a Mortgage Loan which is received in advance of its scheduled Due Date, including any prepayment penalty or premium thereon, which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Program Size:  The sum of the Series Program Sizes (as such limit may be increased or decreased in accordance with terms of the applicable Supplement).

Purchase Agreement:  The meaning assigned to such term in the recitals hereof.

Purchaser:  The meaning assigned to such term in the recitals hereof.

Put Agreement:  The Put Agreement, dated as of the date hereof, by and between the Purchaser and Melville Funding, LLC, and consented to by the Collateral Agent.

Qualified Depository:  Any depository the accounts of which are insured by the FDIC through the BIF or the SAIF and the long-term debt obligations of which are rated "Aa3" and "AA-" or better by Moody's and S&P, respectively or such depository as shall be acceptable to Moody's and S&P, as applicable.

Qualified Insurer:  A mortgage guaranty insurance company duly authorized and licensed where required by law to transact mortgage guaranty insurance business and approved as an insurer by FHLMC, FNMA, GNMA or FHLB.

Rated Bidder:  The meaning assigned to such term in Section 11.2 hereof.

Rating Agency:  Shall refer to both S&P and Moody's.

Rating Agency Confirmation:  A written confirmation from each Rating Agency that the proposed action will not cause the reduction or withdrawal of its then current rating (in effect immediately before taking such action) of any outstanding Series of Notes.

REO Disposition:  The final sale by the Servicer of any REO Property.

REO Disposition Proceeds:  All amounts received with respect to an REO Disposition (net of costs related thereto) pursuant to Section 4.17 hereof.

REO Property:  A Mortgaged Property acquired by the Servicer on behalf of the Purchaser through foreclosure or by deed in lieu of foreclosure, as described in Section 4.17 hereof.

Repurchase Price:  With respect to each mortgage loan that is repurchased by the Seller or the Servicer pursuant to Sections 3.3 and 6.2 hereof, the Outstanding Purchase Price of such loan plus accrued and unpaid interest through the date of repurchase.

Required Rating:  Means short-term ratings of at least "A-3" and "P-3" by S&P and Moody's, respectively.

Required Senior Noteholders:  A group of Senior Noteholders holding $66^2/_3\%$ of the aggregate principal amount of all outstanding Series of Senior Notes (excluding any Senior Notes held by the Seller, the Servicer or any Affiliate of the Seller or the Servicer), voting together as a single Class.

Required Subordinated Noteholders:  A group of Subordinated Noteholders holding $66^2/_3\%$ of the aggregate principal amount of all outstanding Series of Subordinated Notes, voting together as a Class.

Reserve Fund:  The segregated non-interest-bearing trust account established by the Purchaser with, and maintained by, the Collateral Agent for the benefit of the Secured Parties, as set forth in Section 5.05 of the Security Agreement.

Rolling Two-Quarter Profitability:  The net income of AHMIC for the most recently ended two-quarter period.

S&P:  Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, or any successor thereto.

SAIF:  The Savings Association Insurance Fund, or any successor thereto.

Scheduled Principal Balance:  With respect to each mortgage loan, as of any date of determination, the original principal balance thereof, reduced by the principal portion of all Monthly Payments then due on or before such date of determination, whether or not received.

Seasoned Mortgage Loans: Any mortgage loans originated in excess of twelve (12) months, but no more than twenty-four (24) months, prior to the purchase of such mortgage loan by the Purchaser or Melville Funding, LLC, as applicable (whether such Mortgage Loan was originated or purchased by the Seller or American Home Mortgage Acceptance, Inc.).

Secondary Market Trading Report:  The meaning assigned to such term in Section 4.23 hereof.

Secured Liquidity Notes:  The Secured Liquidity Notes, Series 2004-1, executed from time to time by the Purchaser.

Secured Parties:  The Swap Counterparty, the Collateral Agent, the Depositary, the Indenture Trustee, the holders of all Series of Notes, including but not limited to the Secured Liquidity Notes, Extended Notes, if any, the Callable Notes, the Non-Called Notes, if any, the Subordinated Notes and the Term Notes.

Securities Act:  The Securities Act of 1933, as amended.

Securities or Securitization Securities:  Any note, bond or pass-through certificate that is, directly or indirectly, secured by or representing an interest in a Mortgage Loan or pool of Mortgage Loans designated by the Purchaser.

Securitization or Securitized:  A transaction in which each Mortgage Loan or pool of Mortgage Loans designated by the Purchaser is financed through or sold to a Securitization Vehicle, which vehicle issues Securities in the capital markets.

Securitization Vehicle:  FHLMC, FNMA, GNMA, any FHLB or any trust, partnership, corporation, limited liability corporation, limited liability partnership or other state law entity that is created for the principal purpose of owning or holding a Mortgage Loan or pool of Mortgage Loans which are the subject of a Securitization.

Security Agreement:  The security agreement, dated as of the date hereof, by and among the Purchaser, the Collateral Agent and the Indenture Trustee, as the same may at any time be amended, modified or supplemented.

Seller.  Shall have the meaning set forth in the recitals hereto.

Senior Notes:  The Term Notes and the Short Term Notes, together with any Extended Notes and Non-Called Notes.

Series:  Shall mean (x) any series of Term Notes, (y) the Short Term Notes, Extended Notes and Non-Called Notes (the Short Term Notes, Extended Notes and Non-Called Notes taken together as one series) or (z) any series of Subordinated Notes, as the context may require.

Series Program Size:  Shall mean, with respect to each Series of Senior Notes, the amount set forth in the Supplement for such Series of Senior Notes, including, without

limitation, the principal amount of Subordinated Notes required to be issued in connection therewith.

Servicer:  The meaning assigned to such term in the recitals hereof.

Servicer Advance Report:  The meaning assigned to such term in Section 4.22 hereof.

Servicer Event of Default:  The meaning assigned to such term in Section 10.1 hereof.

Servicer Monthly Advance:  Amounts advanced by the Servicer in respect of Delinquent Loans pursuant to Section 5.1 hereof.

Servicer Report:  The meaning assigned to such term in Section 4.18 hereof.

Servicing Advances:  All customary, reasonable and necessary "out of pocket" costs and expenses, other than Servicer Monthly Advances (including reasonable attorneys' fees and disbursements), incurred in the performance by the Servicer in connection with a default or other unanticipated occurrence with respect to each Mortgage Loan owned by the Purchaser (and not including the performance of its ordinary and customary activities as Servicer), including, but not limited to, the cost of (a) the preservation, restoration and protection of the Mortgaged Property, (b) any enforcement or judicial proceedings, including foreclosures, (c) the management and liquidation of any REO Property and (d) any advances of taxes and insurance premiums made pursuant to Section 4.9 hereof as a consequence of the default by the Mortgagor on its obligation to pay such amounts.

Servicing Fee:  With respect to the services provided by the Servicer pursuant to this Purchase Agreement, the sum of (i) an annual servicing fee of ½ of 1% on the average aggregate outstanding principal balance of Mortgage Loans held by the Purchaser during such month and (ii) any amounts due and payable to the Servicer under the Security Agreement.

Short Term Note Amortization Event:  Any Extended Note remains outstanding for thirty (30) days following the conversion of the related Short Term Note to an Extended Note or any Non- Called Note remains uncalled for thirty (30) days following the Initial Call Date for the related Callable Note, as applicable; provided, however, that any Short Term Note Amortization Event shall cease to exist and shall no longer be deemed to be continuing from the date all outstanding Extended Notes and Non-Called Notes are paid in full.

Short Term Note Dealer:  Lehman Brothers Inc., Banc of America Securities LLC and any other dealer of Short Term Notes selected and appointed by the Purchaser from time to time pursuant to a Short Term Note Dealer Agreement.

Short Term Note Dealer Agreement:  The Series 2004-1 Short Term Note Dealer Agreement, dated as of the Initial Closing Date, among the Purchaser, the Seller, Melville Funding, LLC, American Home Mortgage Acceptance, Inc., Lehman Brothers Inc. and Banc of America Securities LLC, and/or any other dealer agreement substantially in the form thereof and

entered into by any additional Short Term Note Dealer, the Purchaser and the Seller, as the same may at any time be amended, modified or supplemented.

Short Term Notes:  Secured Liquidity Notes or Callable Notes, as the context requires.

SLN Extended Event:  With respect to any Secured Liquidity Note, such Secured Liquidity Note is not paid in full on its Expected Maturity and, as a result, such Secured Liquidity Note is converted to an Extended Note.

Special Member:  Colleen A. De Vries.

Specified Mortgage Loan:  Any Non-Conforming Loan that (i) is a No Documentation Loan, (ii) is secured by Mortgaged Property that consists of property with 2 to 4 units, or (iii) is a Cash Out Refinance with an LTV equal to or greater than 80%.

Subordinated Note Purchase Agreement:  The Variable Rate Subordinated Notes, Series 2004-A Purchase Agreement, dated as of the date hereof by and among Lehman Brothers Inc., the Seller and the Purchaser and each Subordinated Note purchase agreement, if any, entered into by the Purchaser, the Seller and the purchasers thereof in connection with the issuance of any Series of Subordinated Notes.

Subordinated Noteholders:  Holders of any outstanding Subordinated Notes issued from time to time pursuant to the Indenture.

Subordinated Notes:  The Variable Rate Subordinated Notes, Series 2004-A, and any additional Series of subordinated notes that may be issued from time to time pursuant to the Indenture.

Supplement:  A supplement to the Base Indenture with respect to any Series of Notes.

Swap Counterparty:  Any swap counterparty under an Interest Rate Swap which is a commercial bank or financial institutions having short-term credit ratings of "A-1+" and "P-1" from S&P and Moody's, respectively, and long-term credit ratings of at least "AA-" and "Aa3" from S&P and Moody's, respectively.  For the avoidance of doubt, references to "the Swap Counterparty" shall include each Swap Counterparty.

Tangible Net Worth: Net worth defined in accordance with GAAP minus the sum of (x) any loans outstanding to any officer or director and (y) any goodwill and intangibles, each defined in accordance with GAAP (other than originated or purchased servicing rights).

Term Note Purchase Agreement:  The Variable Rate Term Notes, Series 2004-2 Purchase Agreement, dated as of the date hereof, by and among Lehman Brothers Inc., the Seller and the Purchaser, and each Term Note purchase agreement, if any, executed by and among the Purchaser, the Seller and the purchasers thereof in connection with the issuance of any Series of Term Notes.

    <u>Term Notes</u>:  The Variable Rate Term Notes, Series 2004-2, and any Series of term notes issued pursuant to the Indenture.

    <u>Terminated Loan</u>:  (x) Each Mortgage Loan owned by the Purchaser which is (i) sold or Securitized or (ii) prepaid in full or (y) any Securitization Security owned by the Purchaser which is sold.

    <u>Termination Event</u>:  The meaning assigned to such term in Section 11.2 hereof.

    <u>Termination Event Auction</u>:  The meaning assigned to such term in Section 11.2 hereof.

    <u>Transfer Supplement</u>:  The document pursuant to which a Mortgage Loan or portfolio of Mortgage Loans are sold by the Seller to the Purchaser, a form of which is attached hereto as <u>Exhibit A</u> (or any electronic medium containing substantially equivalent information).

    <u>VA</u>:  The U.S. Department of Veterans Affairs, an agency of the United States of America, or any successor thereto including the Secretary of Veterans Affairs.

    <u>VA Approved Lender</u>:  Those lenders which are approved by the VA to act as a lender in connection with the origination of VA Loans.

    <u>VA Guaranty Proceeds</u>:  The proceeds of any payment of a VA Loan Guaranty Certificate.

    <u>VA Loan</u>:  A Mortgage Loan which is the subject of a VA Loan Guaranty Certificate as evidenced by a VA Loan Guaranty Certificate, or a Mortgage Loan which is a vendee loan sold by the VA.

    <u>VA Loan Guaranty Certificate</u>:  The obligation of the United States to pay a specific percentage of a Mortgage Loan (subject to a maximum amount) upon default of the Mortgagor pursuant to the Servicemen's Readjustment Act, as amended.

    <u>VA Regulations</u>:  Regulations promulgated by the U.S. Department of Veterans Affairs pursuant to the Servicemen's Readjustment Act, as amended, codified in 38 Code of Federal Regulations, and other VA issuances relating to VA Loans, including related handbooks, circulars and notices.

## ARTICLE II

### SALE OF MORTGAGE LOANS; POSSESSION OF MORTGAGE LOAN FILES; BOOKS AND RECORDS; CUSTODIAL AGREEMENT; DELIVERY OF DOCUMENTS

    Section 2.1 <u>Sale of Mortgage Loans</u>.  (a) From time to time, pursuant to any Transfer Supplement, the Seller may sell, transfer, assign, set over and convey to the Purchaser and the Purchaser shall purchase, without recourse, but subject to the terms hereof, all the right, title and interest of the Seller in and to each Mortgage Loan identified on the Transfer Supplement, originated or purchased by the Seller; *provided*, *however*, that the Purchaser shall

not at any time be required to purchase mortgage loans having an aggregate Outstanding Purchase Price greater than the sum of (i) the then-current Program Size, less (ii) the aggregate Outstanding Purchase Price of all Mortgage Loans owned by the Purchaser at such time, less (iii) the outstanding principal balance of the Melville Variable Funding Note; *provided*, *further*, that each Mortgage Loan transferred on each Closing Date must be an Eligible Loan.  In connection with any sale of Mortgage Loans to the Purchaser, the Seller shall sell, transfer, assign, set over and convey to the Purchaser and the Purchaser shall acquire all right, title, and interest of the Seller in and to any Forward Trade and/or Forward Whole Loan Trade related to such Mortgage Loans to the extent such sale, transfer, assignment and conveyance of any Forward Trade and/or Forward Whole Loan Trade, as applicable, is identified in the related Transfer Supplement.  In connection with any sale of Mortgage Loans to the Purchaser, the Seller shall sell, transfer, assign, set over and convey to the Purchaser and the Purchaser shall acquire all right, title, interest of the Seller in and to the servicing rights, if any, identified in the Transfer Supplement related to such Mortgage Loans.  The Seller shall provide a notice to the Purchaser, the Indenture Trustee, the Manager, the Collateral Agent and the Swap Counterparty not later than 3:00 P.M. New York City Time on any Closing Date of its intention to sell a Portfolio to the Purchaser pursuant to a Transfer Supplement; *provided*, *however*, that the Seller may deliver such notice to the Purchaser, the Indenture Trustee, the Manager, the Collateral Agent and the Swap Counterparty at any time prior to 3:00 P.M. New York City Time on any Closing Date if the Purchaser will not issue additional Secured Liquidity Notes or Callable Notes to fund its purchase of a Portfolio on such Closing Date.  In such notice, the Seller shall inform the Purchaser of the aggregate principal balance of the Mortgage Loans that it intends to sell on such date.  The subject Portfolio and related servicing rights shall be sold by the Seller to the Purchaser as described in Section 2.4 hereof.  Each Transfer Supplement shall be executed by the Seller and the Purchaser at the time of the sale of the subject Portfolio and related servicing rights.  Notwithstanding the foregoing, the Purchaser shall not purchase any mortgage loans during the continuation of a Short Term Note Amortization Event.

(b)     Upon execution of any Transfer Supplement by the Seller and the Purchaser and receipt of the purchase price therefor, the Seller hereby sells, assigns, transfers, sets over and conveys to the Purchaser all of the Seller's right, title and interest in, to and under each Mortgage Loan and related servicing rights identified on such Transfer Supplement.  It is intended that each transfer, assignment and conveyance herein contemplated constitute a sale of the applicable Mortgage Loans and related servicing rights, if any, conveying good title thereto free and clear of any liens, by the Seller to the Purchaser and that the Mortgage Loans and related servicing rights not be part of the Seller's estate in the event of insolvency of the Seller.  In the event that any Mortgage Loans and related servicing rights are held to be property of the Seller or if for any other reason any Transfer Supplement is held or deemed to create a security interest in the related Mortgage Loans and related servicing rights, the parties intend that the Seller shall be deemed to have granted, and does hereby grant, to the Purchaser a first priority perfected security interest in such Mortgage Loans and the related servicing rights and all collateral related thereto now existing or hereafter arising for the purpose of securing the rights of the Purchaser under this Purchase Agreement, and that this Purchase Agreement and each Transfer Supplement shall each constitute a security agreement under applicable law.

(c)    It is the intention of the parties to this Purchase Agreement that each conveyance of the Seller's right, title and interest in and to each Mortgage Loan pursuant to this Purchase Agreement shall constitute a purchase and sale and not a loan.

Section 2.2    Possession of Mortgage Loan Files. (a) The Seller shall deliver the related Loan Documents to the Custodian, as bailee, and the contents of each related Mortgage Loan File shall be held by the Custodian initially for the benefit of the Purchaser pursuant to this Purchase Agreement, and then for the benefit of the Collateral Agent pursuant to the Custodial Agreement; *provided*, *however*, the failure of the Seller to deliver any Loan Document (other than any Mortgage Note, Mortgage or Assignment of Mortgage) to the Custodian, which failure does not have a material and adverse impact on the value of the related Mortgage Loan, shall not constitute a breach of this Purchase Agreement.    Following the delivery of the Mortgage Notes, Mortgages and Assignments of Mortgage to the Custodian pursuant to this Section 2.2 and while the Mortgage Loans are owned by the Purchaser, the Custodian will maintain continuous custody of the Mortgage Notes, Mortgages or Assignments of Mortgage for the benefit of, and as custodian for, the Purchaser and the Collateral Agent for benefit of the Secured Parties, except as provided in this Section 2.2.

(b)    Pursuant to Section 2.7 hereof and subject to Section 3.2(y), as soon as practicable but in any event on or before the date which is twenty-five (25) days after the sale of any Mortgage Loan to the Purchaser, the Seller of such Mortgage Loan shall deliver and release each related Mortgage Note, Mortgage and Assignment of Mortgage to the Custodian, as bailee, initially for the Purchaser and then for the Collateral Agent pursuant to the Custodial Agreement; provided, however, that, subject to Section 3.2(y), any Mortgage Loan whose related Mortgage Note, Mortgage and Assignment of Mortgage are not delivered on or before the date which is twenty-five (25) days after the sale of such Mortgage Loan to the Purchaser shall be repurchased by the Seller on such twenty-fifth (25th) day at the Repurchase Price in accordance with Section 3.3 hereof; provided, further, that, subject to Section 3.2(y), any Mortgage Loan that is not repurchased by the Seller on or before the expiration of such twenty-five (25) day period shall be sold by the Servicer as soon as practicable.    Within the twenty-five (25) day period referred to above and subject to Section 3.2(y), the Seller shall deliver the related Loan Documents not delivered to the Custodian (the "Servicing File") to the Servicer and the contents of each related Servicing File shall be held by the Servicer, as bailee, for the benefit of the Purchaser as owner and the Collateral Agent as secured party; provided, however, that the failure of the Seller to deliver any Loan Document (other than a Mortgage Note, Mortgage or Assignment of Mortgage), which failure does not have a material and adverse impact on the value of a Mortgage Loan, shall not constitute a breach of this Purchase Agreement; provided, further, that all Mortgage Notes, Mortgages and Assignments of Mortgages shall be delivered to the Custodian, as bailee, initially for the Purchaser and then for the Collateral Agent, as provided in the first sentence of this Section 2.2(b).  The possession of each Servicing File by the Servicer is at the will of the Purchaser or the Collateral Agent, as applicable, for the sole purpose of servicing the related Mortgage Loan and such retention and possession by the Servicer is in a custodial capacity only.  Upon the sale of the Mortgage Loans to the Purchaser, the ownership of each related Mortgage Note, Mortgage, Assignment of Mortgage and the remainder of the Mortgage Loan File shall vest immediately in the Purchaser, and the ownership of all other records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Servicer shall vest immediately in the Purchaser and shall be retained

and maintained by the Servicer at the will of the Purchaser and the Collateral Agent and only in such custodial capacity. Each Servicing File and the Servicer's books and records shall be marked appropriately to reflect clearly the sale of the related Mortgage Loans to the Purchaser. The Custodian shall only release its custody of the Mortgage Notes, Mortgages, Assignments of Mortgages and other contents of a Mortgage Loan File in its possession in accordance with the Custodial Agreement.

Section 2.3    Contents of the Mortgage Loan File.    The Mortgage Loan File shall consist of the following documents (constituting, collectively, the "Loan Documents") and such other documents as the Purchaser may require from time to time:

(i)    the original Mortgage Note, together with the original of any guarantee executed in connection with the Mortgage Note;

(ii)    the original Mortgage with evidence of recording thereon.    If in connection with any particular Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Custodian, (a) in the case of a delay caused by the public recording office, a photocopy of such Mortgage, together with an Officer's Certificate of the Seller stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller or (b) in the case of an original Mortgage where a public recording office retains the original Mortgage or in the case where an original Mortgage is lost after recordation in a public recording office, a copy of such original Mortgage certified by an Officer's Certificate of the Seller to be a true and complete copy of the original recorded Mortgage.    Any provision in this Purchase Agreement or any other Program Document that requires a Mortgage to be delivered within twenty-five (25) days after the sale of the related Mortgage Loan to the Purchaser shall be deemed complied with if, under the circumstances described in the immediately preceding sentence, the document(s) described in *clause (a)* or *(b)* of such sentence, as applicable, are delivered within such twenty-five (25) day period;

(iii)    the originals of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon if so recorded;

(iv)    unless the original Mortgage was recorded in the name of MERS, an Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording. If the Mortgage Loan was acquired by the Seller in a merger, any Assignment of Mortgage (other than an original Mortgage recorded in the name of MERS) must be made by "Seller, successor by merger to [name of predecessor]."    If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, any Assignment of Mortgage (other than an original Mortgage recorded in the name of

MERS) must be by "Seller, formerly known as [previous name]." If the Mortgage Loan was acquired by the Seller as receiver for another entity, any Assignment of Mortgage (other than an original Mortgage recorded in the name of MERS) must be by "Seller, receiver for [name of entity in receivership]." Any Assignment of Mortgage must be duly recorded only upon the occurrence of a Termination Event that would require the Servicer to sell or Securitize all non-Delinquent or non-Defaulted Loans pursuant to Section 11.2. If any Assignment of Mortgage is not to be recorded, such Assignment of Mortgage shall be delivered in blank;

(v)     if applicable, the originals of all intervening assignments of mortgage with evidence of recording thereon, or (A) if any such intervening assignment has not been returned from the applicable public recording office, the original recorded intervening assignment of mortgage will be promptly placed in the Mortgage Loan File upon receipt thereof by the Seller or (B) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in a case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified to be a true and complete copy of the original recorded intervening assignment;

(vi)     if available, the original mortgagee title insurance policy or attorney's opinion of title, or if the policy or opinion of title has not yet been issued, (a) the irrevocable written commitment, interim binder or marked up binder for a title insurance policy issued by the title insurance company dated and certified as of the date the Mortgage Loan was funded, or (b) a copy of the applicable escrow instructions indicating the name of the title company with, in either case, a statement by the title insurance company or closing attorney on such binder or commitment or escrow instructions that the priority of the lien on the related Mortgage during the period between the date of the funding of the related Mortgage Loan and the date of the related title policy is insured;

(vii)     the original of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage; and

(viii)     if any Mortgage Loan is sold to any Agency, the originals of other documents, forms, releases, certifications and papers required by the applicable Agency Custodial Agreement.

Section 2.4     Determination of Purchase Price; Deposit by the Seller. No later than 2:00 P.M. New York City time on each Closing Date, the Seller shall deliver to the Purchaser a Transfer Supplement and shall notify the Purchaser of its calculation of the Original Principal Purchase Price and the Original Purchase Price for each Mortgage Loan in the Portfolio. The Purchaser and the Seller shall use commercially reasonable efforts to close the sale of any Portfolio on any such Closing Date. The Purchaser shall pay to the Seller the Original Purchase Price of each Mortgage Loan purchased by it hereunder in immediately available funds not later than 6:00 P.M., New York City time, on the applicable Closing Date. Each Mortgage Loan must be an Eligible Loan.

Section 2.5    Purchase Commitment Term.   Subject to the terms and conditions of the Facility Documents, the commitment of the Purchaser under this Purchase Agreement shall expire on the termination of this Purchase Agreement, pursuant to Section 11.1 herein.

Section 2.6    Books and Records; Transfers of Mortgage Loans.   From and after each related Closing Date, all rights arising with respect to each Mortgage Loan sold pursuant to any Transfer Supplement, including but not limited to all funds received on or in connection with each Mortgage Loan, shall be received and held by the Servicer in trust for the benefit of the Purchaser.   Pursuant to the Custodial Agreement, the Custodian shall hold all of the Mortgage Notes, Mortgages and Assignments of Mortgage on behalf of the Collateral Agent for the benefit of the Secured Parties.

The Servicer shall be responsible for maintaining, and shall maintain, appropriate books and records for each Mortgage Loan which shall be marked clearly to reflect the ownership of each Mortgage Loan by the Purchaser.   In particular, the Servicer shall maintain in its possession, available for inspection by the Purchaser, the Collateral Agent, the Indenture Trustee (acting at the written direction of the Required Senior Noteholders), or their respective designees, evidence of compliance with applicable laws, rules and regulations.   To the extent that original documents are not required for purposes of realization of Liquidation Proceeds, Insurance Proceeds, VA Guaranty Proceeds, FHA Proceeds or Securitization proceeds, documents maintained by the Servicer may be in the form of microfilm or microfiche or such other reliable means of recreating original documents, including but not limited to, optical imagery techniques, so long as the Servicer complies with the requirements of the Guidelines.

The Servicer shall maintain with respect to each Mortgage Loan and shall make available for inspection by the Purchaser, the Collateral Agent, the Indenture Trustee (acting at the written direction of the Required Noteholders), any Short Term Note Dealer or their respective designees, upon reasonable advance notice, at the offices of the Servicer during normal business hours the related Mortgage Loan File during the time the Purchaser retains ownership of a Mortgage Loan and thereafter pursuant to applicable laws and regulations.

Section 2.7    Custodial Agreement.   Pursuant to the Custodial Agreement and subject to Section 3.2(y), the Seller shall, from time to time in connection with the purchase of Mortgage Loans sold by it pursuant to the terms of this Purchase Agreement, deliver to the Custodian, on or before the date which is twenty-five (25) days after the related Closing Date, the Mortgage Note, Mortgage and Assignment of Mortgage with respect to each Mortgage Loan transferred by the Seller.   The Custodian shall hold each Mortgage Note, Mortgage and Assignment of Mortgage in trust, as bailee, initially for the Purchaser and then for the Collateral Agent pursuant to the Custodial Agreement.

Section 2.8    Seller's Right to Call Certain Specified Assets.   The Seller or its Affiliates shall have the unilateral right, but not the obligation, once in any calendar year to call for the repurchase of Mortgage Loans held by the Purchaser beyond any of the Portfolio Aging Limitations specified herein or Mortgage Loans which will be held by the Purchaser beyond the Portfolio Aging Limitations specified herein if not purchased in an aggregate amount up to 3% of the Outstanding Purchase Price of the Mortgage Loans owned by the Purchaser as of the date such call is exercised.   The Seller or its Affiliates shall purchase such specified Mortgage Loans

for an amount equal to the fair market value of such Mortgage Loans on the date such call is made; provided, however, that if any such specified Mortgage Loan is a Delinquent Loan or Defaulted Loan, the purchase price for such Delinquent Loan or Defaulted Loan shall be par plus accrued interest thereon.  For the avoidance of doubt, such purchase amount shall include any accrued interest on such specified Mortgage Loans.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES; COVENANTS; REMEDIES AND BREACH

Section 3.1    <u>Representations and Warranties of the Seller and the Servicer</u>.

(a)    The Seller represents and warrants to the Purchaser (and for the benefit of the Collateral Agent and the Secured Parties) that as of each applicable Closing Date:

(i)    <u>Due Organization and Authority</u>.  (i)  The Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if required to conduct business of the type conducted by it, and in any event it is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of any Mortgage Loan sold hereunder in accordance with the terms of this Purchase Agreement and any Transfer Supplement, except where its failure to be licensed, qualified or in good standing in any such state, or where its failure to be in compliance with the laws of any such state, would not have a Material Adverse Effect; (ii) the Seller has the full power and authority to execute and deliver this Purchase Agreement and any Transfer Supplement and to perform its obligations in accordance herewith and therewith; (iii) the execution, delivery and performance of this Purchase Agreement and any applicable Transfer Supplement by the Seller and the performance of the transactions contemplated hereby and thereby have been duly and validly authorized by it; (iv) all requisite corporate action has been taken by the Seller to make this Purchase Agreement and any Transfer Supplement valid and binding upon it pursuant to its terms; (v) this Purchase Agreement and any Transfer Supplement each evidences the valid, binding and enforceable obligation of the Seller, except that (A) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (B) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(ii)    <u>Ordinary Course of Business</u>.  The performance of the transactions contemplated by this Purchase Agreement are in the Seller's ordinary course of business.

(iii)    <u>No Conflicts</u>.  Neither the execution and delivery of this Purchase Agreement or any Transfer Supplement, the acquisition of mortgage loans by the Seller, the sale of Mortgage Loans to the Purchaser or the transactions contemplated hereby or thereby, nor the fulfillment of or compliance with the terms and conditions of this

Purchase Agreement or any Transfer Supplement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's charter or by-laws or any material agreement or instrument to which it is now a party or by which it is bound, except where such conflict or breach would not have a Material Adverse Effect, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation in any material respect of any applicable law, rule, regulation, order, judgment or decree to which the Seller or its property is subject, or impair the ability of the Purchaser to realize on the mortgage loans in any material respect, or impair the value of the mortgage loans in any material respect.

(iv)    Ability to Sell.  The Seller is an Approved Seller of mortgage loans for at least one (1) of FNMA, FHLMC and GNMA.  The Seller is eligible to sell Mortgage Loans to at least one (1) of FNMA, FHLMC and GNMA, and no event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with the eligibility requirements in all material respects of at least one (1) of FNMA, FHLMC and GNMA or which would require notification to FNMA, FHLMC or GNMA.  The Seller is an FHA Approved Mortgagee and a VA Approved Lender, and no event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with FHA or VA eligibility requirements in all material respects, or which would require notification to either the FHA or VA.

(v)    No Litigation Pending.    There is no action, suit, proceeding or investigation pending or to the Seller's knowledge threatened against the Seller which, either in any one instance or in the aggregate, would draw into question the validity of this Purchase Agreement or any Transfer Supplement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein, or which would be likely to impair materially the ability of the Seller to perform under the terms of this Purchase Agreement or any Transfer Supplement.

(vi)    No Consent Required.  To the Seller's knowledge, no consent, approval, authorization or order of any court or governmental agency or body including, without limitation, HUD, FHA or VA, is required for the execution, delivery and performance by the Seller of or compliance with this Purchase Agreement or any Transfer Supplement or the sale of the mortgage loans, or if required, such approval has been obtained.

(vii)    No Untrue Information.  Neither this Purchase Agreement, any Transfer Supplement nor any written statement, written report or other document prepared by the Seller pursuant to this Purchase Agreement or in connection with the transactions contemplated hereby contains any untrue statement of a material fact relating to the Seller or the Mortgage Loans.

(viii)    Financial Statements.    The Seller has delivered to the Purchaser consolidated financial statements as of the date hereof, as to its last three complete fiscal years and any later quarter ended more than sixty (60) days prior to the execution of this Purchase Agreement.  All such financial statements fairly present the pertinent results of operations and changes in financial position at the end of each such period of the Seller

and its subsidiaries and have been prepared pursuant to generally accepted accounting principles consistently applied throughout the periods involved, except as set forth in the notes thereto. There has been no change in its business, operations, financial condition, properties or assets since the date of its most recently provided financial statements that would have a material adverse effect on its ability to perform its obligations under this Purchase Agreement.

(ix)     No Brokers' Fees.  The Seller has not dealt with any broker, investment banker, agent or other Person that may be entitled to any commission or compensation in connection with the sale of any Mortgage Loan to the Purchaser.

(x)     Solvency.  The Seller is solvent and its sale of the applicable Mortgage Loans to the Purchaser on such date is not undertaken to hinder, delay or defraud any of the Seller's creditors.

(b)     The Servicer represents and warrants to the Purchaser (and for the benefit of the Collateral Agent and the Secured Parties) that as of each applicable Closing Date:

(i)     Due Organization and Authority.  (i) The Servicer is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if required to conduct business of the type conducted by it, and in any event it is in compliance with the laws of any such state to the extent necessary to ensure the servicing of any such Mortgage Loan in accordance with the terms of this Purchase Agreement, except where its failure to be licensed, qualified or in good standing in any such state, or where its failure to be in compliance with the laws of any such state, would not have a Material Adverse Effect; (ii) the Servicer has the full power and authority to execute and deliver this Purchase Agreement and to perform its obligations in accordance herewith; (iii) the execution, delivery and performance of this Purchase Agreement by the Servicer and the performance of the transactions contemplated hereby have been duly and validly authorized by it; (iv) all requisite corporate action has been taken by the Servicer to make this Purchase Agreement valid and binding upon it pursuant to its terms; (v) this Purchase Agreement evidences the valid, binding and enforceable obligation of the Servicer, except that (A) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (B) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(ii)     Ordinary Course of Business.  The performance of the transactions contemplated by this Purchase Agreement are in the Servicer's ordinary course of business.

(iii)     No Conflicts.  Neither the execution and delivery of this Purchase Agreement or the transactions contemplated hereby or thereby, nor the fulfillment of or

compliance with the terms and conditions of this Purchase Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of its charter or by-laws or any material agreement or instrument to which it is now a party or by which it is bound, except where such conflict or breach would not have a Material Adverse Effect, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation in any material respect of any applicable law, rule, regulation, order, judgment or decree to which it or its property is subject, or impair the ability of the Purchaser to realize on the mortgage loans in any material respect, or impair the value of the mortgage loans in any material respect.

(iv)    <u>Ability to Service</u>.  The Servicer is an Approved Servicer of mortgage loans for at least one (1) of FNMA, FHLMC and GNMA.  The Servicer is eligible to service Mortgage Loans for at least one (1) of FNMA, FHLMC and GNMA, and no event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with the eligibility requirements in all material respects of at least one (1) of FNMA, FHLMC and GNMA or which would require notification to FNMA, FHLMC or GNMA.  The Servicer is eligible to service mortgage loans for FHA and VA, and no event has occurred, including but not limited to a change in insurance coverage, which would make the Servicer unable to comply with FHA or VA eligibility requirements in all material respects, or which would require notification to either the FHA or VA.

(v)    <u>No Litigation Pending</u>.    There is no action, suit, proceeding or investigation pending or to the Servicer's knowledge threatened against it which, either in any one instance or in the aggregate, would draw into question the validity of this Purchase Agreement or of any action taken or to be taken in connection with the obligations of the Servicer contemplated herein, or which would be likely to impair materially the ability of the Servicer to perform under the terms of this Purchase Agreement or any Transfer Supplement.

(vi)    <u>No Consent Required</u>.  To the Servicer's knowledge, no consent, approval, authorization or order of any court or governmental agency or body including, without limitation, HUD, FHA or VA, is required for the execution, delivery and performance by it of or compliance with this Purchase Agreement, or if required, such approval has been obtained.

(vii)    <u>No Untrue Information</u>.  Neither this Purchase Agreement, any Transfer Supplement nor any written statement, written report or other document prepared by it pursuant to this Purchase Agreement or in connection with the transactions contemplated hereby contains any untrue statement of a material fact relating to the Servicer.

(viii)    <u>Financial Statements</u>.    The Servicer has delivered to the Purchaser consolidated financial statements as of the date hereof, as to its last three complete fiscal years and any later quarter ended more than sixty (60) days prior to the execution of this Purchase Agreement.  All such financial statements fairly present the pertinent results of operations and changes in financial position at the end of each such period of the Servicer and its subsidiaries and have been prepared pursuant to generally accepted accounting

principles consistently applied throughout the periods involved, except as set forth in the notes thereto.  There has been no change in the Servicer's business, operations, financial condition, properties or assets since the date of its most recently provided financial statements that would have a material adverse effect on its ability to perform its obligations under this Purchase Agreement.

    (ix)  <u>Solvency</u>.  The Servicer is solvent.

    Section 3.2  <u>Representations and Warranties Regarding Individual Mortgage Loans; Eligibility Representations</u>.  With respect to each Mortgage Loan sold by the Seller to the Purchaser, the Seller hereby represents and warrants to the Purchaser (and for the benefit of the Collateral Agent and the Secured Parties) that as of the applicable Closing Date for such Mortgage Loan:

    (a)  <u>Eligibility of Mortgage Loans</u>.  The Mortgage Loan is an Eligible Loan.

    (b)  <u>Mortgage Loans as Described</u>.  The information set forth in the Mortgage Loan Schedule attached to the applicable Transfer Supplement is complete, true and correct in all material respects as of the date or dates that such information is specified therein.

    (c)  <u>Valid First Lien</u>.  The Mortgage is a valid, subsisting, enforceable and perfected first lien on the Mortgaged Property, including all buildings on the Mortgaged Property, and all additions, alterations and replacements made at any time with respect to the foregoing.  The lien of the Mortgage is subject only to:

      (1)  the lien of the current real property taxes and assessments not yet due and payable;

      (2)  covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and (i) referred to or to otherwise considered in the appraisal made for the originator of the Mortgage Loan or (ii) which do not materially adversely affect the appraised value of the Mortgaged Property set forth in such appraisal; and

      (3)  other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable first lien and first priority security interest on the property described therein and the Seller has

full right to sell and assign the same to the Purchaser.  The Mortgaged Property was not, as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien senior to the lien of the Mortgage.

(d)    Ownership.  The Seller is the sole owner of record and holder of the Mortgage Loan.  The Mortgage Loan is not assigned or pledged, and the Seller has good and marketable title thereto, and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign the Mortgage Loan pursuant to the related Transfer Supplement.

(e)    No Additional Collateral.  The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in Section 3.2(c) above.

(f)    Conformance with Underwriting Standards.  The Mortgage Loan was underwritten in material compliance with the applicable Guidelines or was, at the time of origination, a qualifying Non-Conforming Loan and underwritten in accordance with customary underwriting standards for Non-Conforming Loans sold to third-party investors.

(g)    Payments Current.  No payments due with respect to the Mortgage Loan are thirty (30) days or more past their contractual due date.

(h)    No Mortgagor Bankruptcy; Delinquencies.  To the Seller's knowledge, no Mortgagor is the subject of a bankruptcy or similar proceeding.

(i)    No Outstanding Charges.  To the Seller's knowledge, there are no defaults in complying with the terms of the Mortgages, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable.  The Seller has not advanced (other than Buydown Loans) funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for certain closing charges and points incurred in connection with the closing of a Mortgage Loan and for interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage Loan proceeds to the day which precedes by one (1) month the Due Date of the first installment of principal and interest.

(j)    Original Terms Unmodified.  The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any material respect from the date of origination, except by a written instrument which is included in the Mortgage Loan File. The substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the PMI Policy or title insurer, and by the FHA for the related FHA Loans, and the VA for the related VA Loans, and its terms are reflected on the related Mortgage Loan Schedule.  No Mortgagor has been released, in

whole or in part, except in connection with an assumption agreement approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the PMI Policy or title insurer, and by the FHA for the related FHA Loans, and the VA for the related VA Loans, and which assumption agreement is part of the Mortgage Loan File delivered to the Servicer and the terms of which are reflected in the related Mortgage Loan Schedule.

(k)     No Defenses.    To the Seller's knowledge, the Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or, with respect to FHA Loans, impair the Purchaser's ability to collect full insurance benefits under the FHA Mortgage Insurance Certificate, without indemnity to HUD, or, with respect to VA Loans, impair the Purchaser's ability to collect full value under the VA Loan Guaranty Certificate upon the Mortgagor's default, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated.

(l)     Hazard Insurance.    Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by (i) an FHA approved insurer with respect to each FHA Loan, (ii) a VA approved insurer with respect to each VA Loan or (iii) a generally acceptable insurer against loss by fire and extended coverage and coverage for such other hazards as are customary in the area where the Mortgaged Property is located pursuant to insurance policies conforming to the requirements of Section 4.11 hereof and of FHA and VA, if applicable.  If upon origination of the Mortgage Loan, the Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available) a flood insurance policy meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect which policy conforms to the requirements of Section 4.11 hereof and of FHA and VA, if applicable.  All individual insurance policies contain a standard mortgagee clause naming the Company and its successors and assigns as mortgagee, and all premiums thereon have been paid.  The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  To the Seller's knowledge, the hazard insurance policy is the valid and binding obligation of the insurer and is in full force and effect.  The Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either.

(m)     Compliance with Applicable Laws.    Any applicable requirements of federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws and FHA Regulations and VA Regulations applicable to the Mortgage Loan have been complied with in all material respects.

(n)    No Satisfaction of Mortgage.    The Mortgage has not been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission.

(o)    Location and Type of Mortgaged Property.    The Mortgaged Property is located in the state identified in the related Mortgage Loan Schedule and consists of a parcel of real property with a detached single family residence erected thereon, or a two-to-four family dwelling, or an individual condominium unit, or an individual unit in a planned unit development; *provided*, *however*, no residence or dwelling is a mobile home or a manufactured dwelling unless such residence or dwelling has been converted to real property under the applicable law of the state in which it is located.    To the Seller's knowledge and belief, the Mortgaged Property is not used primarily for commercial purposes.

(p)    Validity of Mortgage Documents.    To the Seller's knowledge, the Mortgage Note and the Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof enforceable pursuant to its terms and under applicable law, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.    All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties.    To the Seller's knowledge, the documents, instruments and agreements submitted for loan underwriting were not falsified by the related Mortgagor.    No fraud was committed by the Seller in connection with the origination or purchase of the Mortgage Loan.

(q)    Full Disbursement of Proceeds.    Each Mortgage Loan has been closed and its proceeds have been fully disbursed by the lender and there is no requirement for future advances thereunder.    All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage.

(r)    Doing Business.    To the Seller's knowledge, all parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (2) organized under the laws of such state, or (3) qualified to do business in such state or (4) not required to qualify to do business in such state.

(s)    LTV, PMI Policy.    The original LTV of the Mortgage Loan (other than if such Mortgage Loan is an FHA Loan or a VA Loan) either was not more than 80%, or the excess over 80% is insured as to payment defaults by a PMI Policy until the LTV of such Mortgage Loan is reduced to not more than 80%.    To the Seller's knowledge, all material provisions of such PMI Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid.    To the Seller's knowledge, no action, inaction, or event has occurred and no state of facts exists that has, or will result in the exclusion from,

denial of, or defense to coverage.  Any Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain the PMI Policy to the extent required under the related Mortgage Note and Mortgage and to pay all premiums and charges in connection therewith.

(t)    Title Insurance.  The Mortgage Loan is covered by (i) an attorney's opinion of title and abstract of title, the form and substance of which is acceptable to mortgage lending institutions making mortgage loans in the area where the Mortgaged Property is located, (ii) an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance acceptable to FNMA or FHLMC, issued by a title insurer acceptable to FNMA or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located or if applicable, (iii) an attorney's opinion of title and abstract of title, the form and substance of which is acceptable to the FHA with respect to FHA Loans and the VA with respect to VA Loans or (iv) an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance acceptable to (a) the FHA with respect to the FHA Loans, and (b) the VA with respect to the VA Loans, and each such title insurance policy is issued by a title insurer acceptable to FHA or VA, as the case may be, and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the mortgage loan, and against any loss by reason of the invalidity or unenforceability of the lien subject only to the exceptions contained in clauses (1), (2) and (3) of paragraph (c) of this Section 3.2.  The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect.  To the Seller's knowledge, no claims have been made under such lender's title insurance policy, and no prior holder of the Mortgage, including the the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy.

(u)    No Defaults.  To the Seller's knowledge, there is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note, and neither the Seller nor its predecessors have expressly waived any default, breach, violation or event of acceleration.

(v)    No Mechanics' Liens.  The Seller has no knowledge of mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage, which are not insured against by the applicable title policy.

(w)    Customary Provisions.  The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale and (ii) otherwise by judicial foreclosure.

(x)    Deeds of Trust.  In the event that the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become

payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(y)     Delivery of Mortgage Notes.  Other than with respect to the Mortgage Loans described in the following sentence, the aggregate Outstanding Purchase Price of which shall not at any time exceed 3% of the aggregate Outstanding Purchase Price of all Mortgage Loans owned by the Purchaser at such time, the related Mortgage Note endorsed in blank or to the Purchaser required to be delivered by the Seller to the Custodian pursuant to Section 2.2 of this Purchase Agreement will be delivered as soon as practicable, but in no event later than twenty-five (25) days after the applicable Closing Date.  With respect to any Mortgage Loan as to which a lost note affidavit has been included in the Mortgage Loan File certifying that the original Mortgage Note is a Lost Mortgage Note, (i) such lost note affidavit contains a provision pursuant to which the Seller shall indemnify and hold harmless the Purchaser, its successors and assigns against any loss, liability or damage, including reasonable attorney's fees, resulting from the unavailability of the original Mortgage Note including but not limited to any adverse effect on the net proceeds received in connection therewith, and (ii) neither (x) the enforcement of such Mortgage Loan or of the related Mortgage by or on behalf of the Purchaser and the net proceeds received in connection therewith nor (y) the salability and sales price of such Mortgage Loan will be materially adversely affected by the absence of the original Mortgage Note.  A "Lost Mortgage Note" is a Mortgage Note the original of which was permanently lost or destroyed and has not been replaced.

(z)     Transfer of Mortgage Loans.  The Assignment of Mortgage (other than with respect to an original Mortgage recorded in the name of MERS) is in recordable form and, to the Seller's knowledge, is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located.

(aa)     Due on Sale.  The Mortgage contains a provision for the acceleration of the payment of the unpaid principal balance of the mortgage loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder.

(bb)     Mortgaged Property Undamaged.  To the Seller's knowledge, there is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property.  To the Seller's knowledge, the Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect materially adversely the value of the Mortgaged Property as security for the mortgage loan or the use for which the premises were intended.

(cc)     Collection Practices; Escrow Deposits; Interest Rate Adjustments.  The origination and collection practices used with respect to the Mortgage Loan have been pursuant to Accepted Servicing Practices and have been in compliance with in all material respects with applicable laws and regulations.  With respect to escrow deposits and Escrow Payments, all such payments are in the possession of the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made or for which repayment is not provided for in the Mortgage.  All Escrow Payments have been collected in compliance with applicable state and federal law.  Where the applicable Mortgage Note or Mortgage so provides, an escrow of funds has been established in an amount sufficient to pay for

each applicable item which remains unpaid and which has been assessed but is not yet due and payable.  No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note.  All interest rate adjustments in respect of Mortgage Loans have been made in compliance with state and federal law and the terms of the related Mortgage and Mortgage Note.

(dd)    <u>Appraisal</u>.  The Mortgage Loan File contains an appraisal of the related Mortgaged Property signed prior to the approval of the mortgage loan application by a qualified appraiser, duly appointed by or acceptable to the Seller, who, to the Seller's knowledge, had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof; and whose compensation, to the Seller's knowledge, is not affected by the approval or disapproval of the Mortgage Loan, and the appraiser and appraisal both satisfy requirements of the FHA or VA, if applicable.  In the alternative, the Mortgage Loan File may contain other documentation of property value acceptable to the Agencies in lieu of an appraisal, including a Mortgagor's Statement of Value.

(ee)    <u>Servicemembers Relief Act</u>.  The Seller has not received a written request for relief from the Mortgagor under the Servicemembers Civil Relief Act of 1940.

(ff)    <u>Environmental Matters</u>.  To the Seller's knowledge, the Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state or federal environmental law, rule or regulation.  There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and, to the Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation consisting of a prerequisite to use and enjoyment of said property.

(gg)    <u>No Construction Loans</u>.  No mortgage loan (i) was made for the construction or rehabilitation of a Mortgaged Property which has not been completed unless an adequate escrow account has been established for the completion of the construction or rehabilitation of such Mortgaged Property; (ii) provides for future advances of funds by the Seller which have not yet been advanced; or (iii) facilitates the trade-in or exchange of a Mortgaged Property.

(hh)    <u>No Denial of Insurance</u>.  To the Seller's knowledge, no action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or would result in the exclusion from, denial of, or defense to coverage under any applicable PMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage.  In connection with the placement of any such insurance, to the Seller's knowledge, no commission, fee, or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director or employee had a financial interest at the time of placement of such insurance, unless the receipt of such proceeds is in accordance with applicable law.

(ii)    <u>Regarding the Mortgagor</u>.  The Mortgagor is one (1) or more natural persons, living trusts or Illinois land trusts.

(jj)    Condominiums/Planned Unit Developments.  If the Mortgaged Property is a condominium unit or a planned unit development for an FHA Loan or a VA Loan (other than a *de minimus* planned unit development) such condominium or planned unit development project meets FHA, VA and GNMA eligibility requirements for sale to GNMA or is located in a condominium or planned unit development project which has received FHA, VA and GNMA project approval and the representations and warranties required by FHA, VA and GNMA with respect to such condominium or planned unit development have been made and remain true and correct in all material respects.

(kk)    FHA Mortgage Insurance; VA Loan Guaranty.  With respect to the FHA Loans, either (i) the FHA Mortgage Insurance Certificate is in full force and effect and there exist no material impairments to full recovery without indemnity to HUD or the FHA under FHA Mortgage Insurance or (ii) the Mortgage Loan meets all standards for the issuance of an FHA Mortgage Insurance Certificate.  With respect to the VA Loans, either (i) the VA Loan Guaranty Certificate is in full force and effect to the maximum extent stated therein or (ii) the Mortgage Loan meets all standards for the issuance of a VA Loan Guaranty Certificate.  To the extent such guaranty or insurance has been obtained all necessary steps have been taken to keep such guaranty or insurance valid, binding and enforceable as of the Closing Date and each of such is the binding, valid and enforceable obligation of the FHA and the VA, respectively, to the full extent thereof, without surcharge, set-off or defense as of the Closing Date.

(ll)    No Adverse Selection Procedures.  No portfolio of Mortgage Loans sold pursuant to a Transfer Supplement was selected from Mortgage Loans originated by the Seller or purchased by the Seller from third parties in a manner so as to materially adversely affect the interests of the Purchaser.

(mm)    High Cost Loans.    None of the Mortgage Loans is classified as (i) "high cost" loans under the Home Ownership and Equity Protection Act of 1994 or (ii) "high cost," "threshold," "covered," or "predatory" loans under any applicable federal, state or local law (or a similarly classified loan using different terminology under any applicable federal, state or local law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees).

(nn)    Deemed Representation.    If any representation and warranty required by mortgage loan buyers generally in purchases of prime mortgage loans having characteristics similar to the Mortgage Loan, or commercial paper conduits or other Financing parties in connection with the Financing of prime mortgage loans having characteristics similar to the Mortgage Loan is not covered by the representations and warranties in the foregoing subparagraphs (a) through (mm) and such representation and warranty is required by the Rating Agencies (each, a "Deemed Representation"), then, upon prior written notice thereof to the Seller and the Purchaser from the Seller, the Servicer, the Issuer or any Swap Counterparty, such Deemed Representation shall be deemed to have been made with respect to such Mortgage Loan by the Seller as of the applicable Closing Date unless such Deemed Representation relates to the collectibility or credit risk of such Mortgage Loan and for which such Deemed Representation would constitute recourse to such Seller for the collectibility of such Mortgage Loan.

Section 3.3    <u>Remedies for Breach of Representations and Warranties</u>.    It is understood and agreed that the representations and warranties set forth in Sections 3.1 and 3.2 hereof shall survive the sale of each Mortgage Loan to the Purchaser and the delivery of the Loan Documents to the Servicer and shall inure to the benefit of the Purchaser and the Collateral Agent and the Secured Parties notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage Loan File.    Upon discovery by any of the Seller, the Servicer or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser (or which materially and adversely affects the interest of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the other, the Indenture Trustee, the Collateral Agent and the Swap Counterparty.

Within forty-five (45) days of the earlier of either discovery by or notice to the Seller of any breach of a representation or warranty set forth in Section 3.2 hereof with respect to any Mortgage Loan, or a representation or warranty set forth in Section 3.1 hereof, in either case, which materially and adversely affects the value of such Mortgage Loan or the interests of the Purchaser, the Seller shall use commercially reasonable efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, or is not cured, within such forty-five (45) day time period, the Seller shall repurchase such Mortgage Loan at the Repurchase Price. Within twenty-five (25) days of a Mortgage Loan becoming a First Pay Default Loan, the Seller shall use commercially reasonable efforts promptly to procure the related Mortgagor to cure such payment default and, if such default cannot be cured, or is not cured, within such twenty-five (25) day time period, the Seller shall repurchase such Mortgage Loan at the Repurchase Price. Upon receipt of the Repurchase Price by the Collateral Agent, the Purchaser and the Seller shall arrange for the reassignment of the Mortgage Loan or Mortgage Loans to the Seller.    The repurchase obligations described in this paragraph are separate from and not to be accomplished pursuant to Section 2.8 hereof.

In addition to such repurchase obligation, the Seller shall indemnify the Purchaser and the Collateral Agent and the Secured Parties, and hold them harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses resulting from any third-party claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties contained in this Purchase Agreement, but only to the extent such costs and expenses are not attributable to credit losses on the Mortgage Loans and are not otherwise included in the Repurchase Price; *provided*, *however*, that the Seller will not indemnify the Purchaser and the Collateral Agent for any credit losses with respect to the Eligible Loans. The Seller shall not be obligated under this indemnity for any indirect or consequential damages. It is understood and agreed that the obligations of the Seller set forth in this Section 3.3 to cure or repurchase a Mortgage Loan and to indemnify the Purchaser constitute the sole and exclusive remedies of the Purchaser respecting a breach of the foregoing representations and warranties, or any First Pay Default Loans.

Section 3.4    <u>Conditions to Closing</u>.    (a) Conditions to Initial Closing.    The obligations of the parties hereto under this Purchase Agreement are subject to the condition

precedent that the Purchaser and the Company shall have received all of the following, each duly executed and dated as of the Initial Closing Date (or such earlier date as shall be satisfactory to the Purchaser and the Company) in form and substance satisfactory to the Purchaser and the Company:

(i)    Facility Documents.  This Purchase Agreement and each of the other Facility Documents, duly executed by each of the parties thereto, together with copies of all of the "Facility Documents" as defined in that certain Mortgage Loan Purchase and Servicing Agreement being entered into as of the Initial Closing Date by Melville Funding, LLC, duly executed by each of the parties thereto.

(ii)    Resolutions; Organizational Documents.  Certified copies of resolutions of the Board of Directors of each of the Seller, the Servicer and the Performance Guarantor authorizing the execution, delivery and performance of this Purchase Agreement and the other Facility Documents to which it is a party, together with a certified copy of the organizational documents and governing instruments, as applicable, of each of the Seller, the Servicer, the Purchaser and the Performance Guarantor.

(iii)    Incumbency and Signatures.  A Certificate of the Secretary or an Assistant Secretary of each of the Seller, the Servicer, the Performance Guarantor, the Depositary, the Manager, the Indenture Trustee and the Swap Counterparty certifying the names of its officer or officers authorized to sign this Purchase Agreement, the Notes and the other Facility Documents to which it is a party.

(iv)    Good Standing Certificates.  Good standing certificates for the Seller, the Servicer, the Purchaser and the Performance Guarantor issued as of a recent date acceptable to the Purchaser, the Seller and the Servicer by the Secretary of State of each jurisdiction that the Purchaser, the Seller and the Servicer deem necessary or desirable.

(v)    Opinion of Counsel.  Favorable opinions from counsel to Purchaser, the Seller, the Servicer, the Performance Guarantor, the Swap Counterparty, the Indenture Trustee and the Manager, in form and substance acceptable to the Purchaser, the Seller and the Servicer.

(vi)    UCC Financing Statements.  Such UCC financing statements as the Purchaser shall reasonably request.

(vii)    UCC Searches.  Completed UCC searches satisfactory to the Purchaser.

(viii)    [Reserved]

(ix)    Ratings.  A copy of letters evidencing that the Short Term Notes are rated at least "A-1+" and "P-1" and the Subordinated Notes shall have been rated "BBB" and "Baa2", in each case by S&P and Moody's, respectively.

(x)    Offering Documents.  A final copy of the Short Term Note Private Placement Memorandum.

(xi)    DTC Letter of Representations.  (i) A copy of a Letter of Representations relating to the Subordinated Notes and (ii) a copy of a Letter of Representations relating to the Short Term Notes, in each case executed by the Purchaser and accepted and agreed to by The Depository Trust Company.

(xii)    Other.  Such other documents as the Purchaser or the Seller or the Servicer may reasonably request.

(b)    Conditions to Each Closing.  The obligation of the Purchaser to purchase the Mortgage Loans that are the subject of any Transfer Supplement shall be subject to satisfaction of each of the following conditions on or before the related Closing Date:

(i)    To the Seller's knowledge, all of the representations and warranties of the Seller contained in this Purchase Agreement shall be true and correct in all material respects as of such Closing Date and no Servicer Event of Default shall have occurred and be continuing under this Purchase Agreement;

(ii)    The Seller shall have delivered and released to the Custodian all documents required as of such Closing Date to be delivered to the Custodian pursuant to this Purchase Agreement and the Custodial Agreement; and

(iii)    No Termination Event shall have occurred and be continuing.

Section 3.5    Covenants of the Seller, the Purchaser and the Servicer.

(a)    Covenants of the Seller and the Purchaser.

(i)    Factual Assumption in True-Sale/Non-Consolidation Opinion.  The Seller and the Purchaser shall maintain the truth and accuracy of all facts assumed by Cadwalader, Wickersham & Taft LLP in the True-Sale/Non-Consolidation Opinion delivered on the Initial Closing Date and shall not take or omit to take any action that would result in a change to the continuing truth and accuracy of any of the factual assumptions in the True-Sale/Non-Consolidation Opinion.

(ii)    Accounting Treatment of Purchaser.  The Seller shall consolidate the assets and liabilities of the Purchaser with the assets and liabilities of the Seller in all Financial Statements published and prepared by the Seller, the Purchaser and their Affiliates in accordance with GAAP or any successor accounting standard thereto.  Such Financial Statements shall contain a footnote substantially to the effect that the Purchaser has been established by the Seller as a special-purpose warehouse finance subsidiary of the Seller, and that the Purchaser has agreed to issue and sell the Notes.

(b)    Covenants of the Seller.

(i)    Licenses.  The Seller shall maintain its qualifications to do business and all licenses necessary to perform its obligations hereunder except where the failure to maintain such qualification or license would not have a material adverse effect on its ability to perform its obligation under this Purchase Agreement.

(ii)    <u>Changes in Origination and Underwriting Criteria</u>.  The Seller shall inform each Rating Agency rating any outstanding Notes and each Swap Counterparty of any material changes (as determined by the Seller) in its origination and underwriting practices and guidelines with respect to the Eligible Loans.

(iii)    <u>LLC Agreement</u>.  The Seller shall comply with the covenants listed in Section 3.4 of the LLC Agreement.

(iv)    <u>Forward Trades and Forward Whole Loan Trades</u>.  The Seller shall not identify any Mortgage Loan for a Forward Trade or Forward Whole Loan Trade prior to the purchase of the related Mortgage Loan by the Purchaser pursuant to this Purchase Agreement.

(c)    <u>Covenants of the Servicer</u>.

(i)    <u>Servicing Standards/Sales and Securitizations</u>.  The Servicer will administer and service Mortgage Loans, and arrange for the sale or Securitization of Mortgage Loans, pursuant to the terms of this Purchase Agreement, the Mortgage Notes, applicable law and Accepted Servicing Practices.

(ii)    <u>Defaulted Loans</u>.  The Servicer shall sell on behalf of the Purchaser any Mortgage Loan that becomes a Defaulted Loan as soon as practicable after becoming a Defaulted Loan.

(iii)    <u>Ten Percent Obligor</u>.  The Servicer shall use commercially reasonable efforts to arrange for sales or Securitizations of Mortgage Loans to assure that the unpaid principal balance of Mortgage Loans payable by a single obligor shall not exceed 10% of the unpaid principal balance of all mortgage loans owned by the Purchaser at any time.

(iv)    <u>Maintenance of Perfection and Priority</u>.  The Servicer covenants to maintain the perfection and priority of the security interest of the Purchaser and the Collateral Agent, on behalf of the Secured Parties, in the Mortgage Loans in accordance with paragraph 12 of the Perfection Representations.  The Servicer covenants not to pledge, transfer, assign, sell, dispose of or otherwise deliver any Loan Documents other than in accordance with the Facility Documents.

(v)    <u>Maintenance of List of Loans</u>.  Upon the written request of the Purchaser, the Servicer shall use commercially reasonable efforts to provide the Purchaser as soon as practicable, but in any event within one (1) Business Day of the request thereof, a list of all Mortgage Loans owned by the Purchaser as of the close of business on the Business Day preceding the date of such request (each, a "<u>List of Loans</u>").

(vi)    <u>Forward Trades and Forward Whole Loan Trades</u>.  The Servicer shall not identify any Mortgage Loan for a Forward Trade or Forward Whole Loan Trade until after the acquisition of the related Mortgage Loan by the Purchaser pursuant to this Purchase Agreement.  The Servicer shall identify Mortgage Loans acquired by the Purchaser for a Forward Trade or Forward Whole Loan Trade in the same manner in which it identifies similar mortgage loans which it owns.

Section 3.6    Representations and Warranties of the Purchaser.  The Purchaser represents and warrants to the Seller that as of each applicable Closing Date:

(a)    Due Organization.  The Purchaser is a limited liability company duly formed and validly existing under the laws of the State of Delaware;

(b)    Due Authorization; Enforceability.  The Facility Documents to which the Purchaser is a party, assuming due authorization, execution and delivery by the Manager, constitute valid and legally binding obligations of the Purchaser, enforceable against the Purchaser in accordance with their terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other similar laws of general applicability relating to or affecting creditors' rights and to general equity principles, regardless of whether such enforcement is considered in a proceeding in equity or at law;

(c)    No Conflicts.  The execution and delivery of the Facility Documents to which the Purchaser is a party by the Purchaser and its performance of and compliance with the terms of the Facility Documents to which the Purchaser is a party will not violate the Purchaser's LLC Agreement or certificate of formation, and will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, any indenture, mortgage, deed of trust, loan agreement or other material agreement or instrument to which the Purchaser is a party or by which the Purchaser or to which any property or assets of the Purchaser is subject;

(d)    No Defaults.  The Purchaser is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Purchaser or its properties or might have consequences that would affect its performance hereunder; and

(e)    No Litigation.  No litigation is pending or, to the Purchaser's knowledge, threatened against the Purchaser which would prohibit its entering into this Agreement or performing its obligations under this Agreement;

Section 3.7    Perfection Representations.  The Perfection Representations shall be a part of this Purchase Agreement for all purposes.

## ARTICLE IV

## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 4.1    The Servicer; Servicing and Administration of the Mortgage Loans.  (a) (i)    The Purchaser hereby appoints, authorizes and empowers the Servicer to perform all of the duties and responsibilities of the Servicer under this Purchase Agreement.  The Servicer, as an independent contract servicer, shall service and administer the Mortgage Loans. The Servicer shall act in the best interest of and for the benefit of the Purchaser with a view to the maximization of timely recovery of principal and interest on the Mortgage Loans and in a manner that will maximize the proceeds of sales and Securitizations of the Mortgage Loans for the Purchaser.  The Servicer will perform under any Forward Trades and Forward Whole Loan

Trades assigned to the Purchaser pursuant to Section 11.2 herein.  The Servicer will be required to service and administer each Mortgage Loan in accordance with the Guidelines and in the same manner in which, and with the same care, skill, prudence and diligence with which, it services and administers similar mortgage loans which it owns.

The Servicer shall service the Eligible Loans in a manner consistent with the Portfolio Criteria and the Portfolio Aging Limitations.  Additionally, as any Series of Notes becomes due and payable, whether pursuant to the terms thereof or by the occurrence of an Indenture Event of Default that results in the acceleration of the maturities of the Notes or Optional Repurchase, maturity or otherwise, the Purchaser shall cause the Servicer to arrange for the sale or securitization of Mortgage Loans at such times and in such manner so that, the proceeds of the sale or securitization, together with amounts received by the Purchaser in connection with the Interest Rate Swap, are available to pay amounts due and owing on such Notes at any time.  Without limiting the foregoing, in the event that on the Business Day prior to the Final Maturity of any Extended Notes or the third Business Day prior to the Final Maturity of any Non-Called Notes there are insufficient funds on deposit in the Collateral Account to repay those Extended Notes and Non-Called Notes, and the Purchaser is unable to issue Secured Liquidity Notes, Callable Notes or Term Notes in an amount sufficient to repay the Extended Notes and Non-Called Notes maturing on the next Business Day, the Servicer shall use commercially reasonable efforts to obtain three (3) or more bids for the sale or securitization of one or more Mortgage Loans owned by the Purchaser, and shall sell or securitize such Mortgage Loan(s) on such day to the highest bidder in a manner so that the proceeds from such sale or securitization, together with amounts received or to be received by the Purchaser in connection with the Interest Rate Swap, are sufficient to repay the Extended Notes maturing on the next Business Day and the Non-Called Notes maturing on such third following Business Day; *provided, however*, that (I) if Extended Notes and Non-Called Notes have not been paid in full on the 75th day following the conversion of such Notes to Extended Notes or Non-Called Notes, as the case may be, the Servicer shall (a) use commercially reasonable efforts to arrange for the sale or securitization of one or more Mortgage Loans owned by the Issuer, and shall sell or securitize such Mortgage Loan(s) in a manner so that the proceeds from such sale or securitization, together with amounts received or to be received by the Issuer in connection with the Interest Rate Swap, if any, are sufficient to repay such Extended Notes and Non-Called Notes on the 105th day following the conversion of such Notes to Extended Notes or Non-Called Notes, as the case may be, and then (b) to the extent the amounts described in clause (a) will be insufficient to repay such Extended Notes and Non-Called Notes, the Purchaser shall exercise the Put Option under the Put Agreement in an amount, after taking into account the amounts described in clause (a), necessary to pay such Extended Notes and Non-Called Notes (a "Partial Put") and (II) if such Extended Notes and Non-Called Notes have not been paid in full on the 105th day following the conversion of such Notes to Extended Notes or Non-Called Notes, as the case may be, the Collateral Agent shall hold an auction (a "Principal Paydown Auction") of Mortgage Loans sufficient to pay such Extended Notes and Non-Called Notes for settlement not later than the 120th day following the conversion of such Notes to Extended notes or Non-Called Notes, as the case may be.  The Collateral Agent shall notify potential bidders (which shall include each Swap Counterparty) of the Principal Paydown Auction, including the Rated Bidder, who will be obligated to make a bid in any such auction.  Further, the Servicer shall use commercially reasonable efforts to arrange for sales and Securitizations of Mortgage Loans in such a fashion as shall assure that, after giving effect to such sales and Securitizations, the unpaid

principal balance of Mortgage Loans payable by a single obligor shall not exceed 10% of the unpaid principal balance of all Mortgage Loans owned by the Purchaser at any time.

Except as set forth in Section 2.8 herein, the Company, the Performance Guarantor and any of their Affiliates may purchase any Delinquent Loans or Defaulted Loans from the Purchaser at any time and from time to time at par plus accrued interest payable in cash at closing and on such other terms as the Purchaser and any such purchaser shall agree. The Company, the Performance Guarantor and any of their Affiliates will not purchase any non-Delinquent Loans or non-Defaulted Loans from the Purchaser except for (a) purchases of Mortgage Loans pursuant to Section 2.8 or pursuant to the repurchase obligations of the Seller or the Servicer pursuant to Section 3.3 or 6.2 herein, (b) sales by the Purchaser to Securitization Vehicles affiliated with the Seller, or (c) purchases by the Seller of Mortgage Loans for the purpose of facilitating a sale of such Mortgage Loans to an unaffiliated third party pursuant to an arrangement entered into by the Seller and such unaffiliated third party prior to the purchase of such Mortgage Loans, where (i) the Purchaser could not sell such Mortgage Loans directly to such unaffiliated third party because of contractual, regulatory or operational issues or restrictions and (ii) the purchase price paid by the Seller for such Mortgage Loans would not be less than the purchase price that the Purchaser would otherwise have been entitled to receive had it sold such Mortgage Loans directly to such unaffiliated third party.

(ii)     Except to the extent that this Purchase Agreement provides for a contrary specific course of action, the Servicer shall service and administer each Mortgage Loan without regard to (i) any other relationship that the Servicer, any sub-servicer or any Affiliate of the Servicer or any sub-servicer may have with the borrowers or any Affiliate of such borrowers, (ii) the ownership of any Subordinated Note by the Servicer, or any sub-servicer or any Affiliate of either, (iii) the Servicer's obligations to make any Servicer Monthly Advances, Servicing Advances or to incur servicing expenses with respect to each Mortgage Loan, (iv) the Servicer's or any sub-servicer's right to receive compensation for its services under this Purchase Agreement or with respect to any particular transaction or (v) the ownership, servicing or management for others by the Servicer or any sub-servicer of any other mortgage loans or property. The Servicer shall maintain its qualification to do business and all licenses necessary to perform its obligations hereunder.

(b)     The Servicer may enter into additional servicing or sub-servicing agreements with third parties with respect to any of its respective obligations hereunder, provided that any such agreement shall be consistent with the provisions of this Purchase Agreement and no sub-servicer (or its agent or subcontractors) shall grant any modification, waiver or amendment to any mortgage loan without the approval of the Servicer. Notwithstanding any servicing or sub-servicing agreement, any of the provisions of this Purchase Agreement relating to agreements or arrangements between the Servicer and any Person acting as servicer or sub-servicer (or its agents or subcontractors) or any reference to action taken through any Person acting as servicer or sub-servicer or otherwise, the Servicer shall remain obligated and primarily liable to the Purchaser for the servicing and administering of the mortgage loans and arranging for the sale and Securitization of each mortgage loan pursuant to the provisions of this Purchase Agreement without diminution of such obligation or liability by virtue of such servicing or sub-servicing agreements or arrangements or by virtue of

indemnification from any Person acting as servicer or sub-servicer (or its agents or subcontractors) to the same extent and under the same terms and conditions as if the Servicer alone were engaging in such activities.  In the event the Servicer is a sub-servicer, the Purchaser shall be entitled to proceed directly against the Servicer as sub-servicer to enforce the Servicer's obligations to the Purchaser.

(c)    Without limiting the generality of the foregoing, the Servicer is hereby authorized and empowered to waive, modify or vary any term of any mortgage loan or consent to the postponement of compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Servicer's reasonable and prudent determination such waiver, modification, postponement or indulgence is not materially adverse to the Purchaser and such waiver, modification, postponement or indulgence is done in accordance with Accepted Servicing Practices.  Without limiting the generality of the foregoing, the Servicer shall continue, and is hereby authorized and empowered, to execute and deliver on behalf of itself and the Purchaser all instruments of satisfaction or cancellation, or of partial or full release, discharge and all other comparable instruments, with respect to each Mortgage Loan and with respect to the related Mortgaged Property.  If reasonably required by the Servicer, the Purchaser shall furnish the Servicer with any powers of attorney, in recordable form, and other documents necessary or appropriate to enable the Servicer to carry out its servicing and administrative duties under this Purchase Agreement.

Section 4.2    <u>Sales and Securitizations</u>.  (a) Subject to the servicing standards described in Section 4.1, the Servicer shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration that it may deem necessary and desirable in connection with arranging for (i) the sale and Securitization of Conforming Loans with any of FNMA, FHLMC, GNMA, any FHLB, other Securitization Vehicles or third-party purchasers, including, without limitation, the authority to deliver mortgages owned by the Purchaser to fulfill a Forward Trade or a Forward Whole Loan Trade and (ii) the sale and Securitization of Non-Conforming Loans with other Securitization Vehicles or third-party purchasers, including, without limitation, the authority to deliver mortgages owned by the Purchaser to fulfill a Forward Trade or a Forward Whole Loan Trade.  To the extent the sale or Securitization of any Mortgage Loan related to a Forward Trade or a Forward Whole Loan Trade is not made to fulfill such Forward Trade or Forward Whole Loan Trade, as applicable, and to the extent such Forward Trade or Forward Whole Loan Trade, as applicable, has been sold, assigned, transferred, set over and conveyed by the Seller to the Purchaser hereunder, the Purchaser may sell, transfer, assign, set over and convey such Forward Trade or Forward Whole Loan Trade, as applicable, in connection with a sale or Securitization of such Mortgage Loan.  In connection with any Securitization of Mortgage Loans, in the event the Purchaser receives Securitization Securities from the Securitization Vehicle in exchange for such Mortgage Loans, the Servicer shall, on behalf of the Purchaser, arrange for the sale of such Securitization Securities; *provided*, that any such Securitization Security that is (x) not issued by one of FNMA, FHLMC, GNMA and FHLB and (y) rated below "AAA" by S&P and/or "Aaa" by Moody's shall be sold by the Servicer within two (2) Business Days of receipt thereof by the Purchaser.  The Servicer shall use commercially reasonable efforts to realize for the Purchaser the market value for the Securitization Securities but shall have no liability to the Purchaser with respect to any Securitization or Securitization Security, provided that the Servicer arranges for such Securitization or sale in good faith pursuant to the procedures utilized by the Servicer in

connection with any Securitization and sale of any Securitization Securities for REITs.  The proceeds of sale of any Securitization Security and the proceeds of sale of any whole loan will be remitted to the Collateral Agent by the Servicer on the settlement date for such sale and will be deposited into the Collateral Account maintained by the Collateral Agent on the day of receipt.

(b)     With respect to each Securitization or sale, as the case may be, entered into by the Purchaser, the Servicer agrees:

(i)     To cooperate fully with the Purchaser, any prospective purchaser, any Rating Agency, any Securitization Vehicle or any party to any agreement executed in connection with such sale or Securitization of the Mortgage Loans, with respect to all reasonable requests and due diligence procedures and to use commercially reasonable efforts to facilitate such sale or Securitization, as the case may be.

(ii)     To restate as of each closing date of a sale or Securitization, as the case may be, the representations and warranties contained in Section 3.1 hereof and to state that it has no knowledge, based on its activities as servicer hereunder, that any representations and warranties contained in Section 3.2 hereof (excluding Section 3.2(d) hereof) are untrue as of the date thereof or that an event or circumstance that arose after the related Closing Date and would cause such representation or warranty to be inaccurate in any material respect as of the closing date of such sale or Securitization.

(iii)     To deliver to the Purchaser for inclusion in any prospectus or other offering material such written information regarding the Seller, the Servicer and the Performance Guarantor, their respective financial condition, their mortgage loan origination and servicing experience, and their mortgage loan delinquency, foreclosure and loss experience as shall be reasonably requested by the Purchaser and to indemnify and hold harmless the Purchaser against certain liabilities, losses and expenses arising under the Securities Act in connection with any material misstatement contained in such written information or any omission of a material fact the inclusion of which was necessary in order to make such written information not materially misleading in light of the circumstances under which it was made.

(iv)     To deliver to the Purchaser, and to any Person designated by the Purchaser, such opinions of counsel as are customarily delivered by originators/servicers in connection with sales or Securitizations, as the case may be.

All Mortgage Loans not sold or transferred pursuant to a sale or Securitization shall continue to be serviced pursuant to the terms of this Purchase Agreement.

(c)     Upon the sale or Securitization of any Mortgage Loan, the rights and obligations of the Servicer hereunder with respect to such Mortgage Loan shall be terminated on the effective date of such sale or Securitization.  Upon written request from the Purchaser, the Servicer shall prepare, execute and deliver to the successor entity designated by the Purchaser any and all documents and other instruments, place in such successor's possession all Mortgage Loan Files, and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such termination, including but not limited to the transfer and endorsement or

assignment of the Mortgage Loans and related documents, at the Servicer's sole expense. The Servicer shall cooperate with such successor in effecting the termination of the Servicer's responsibilities and rights hereunder, including without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Servicer to any Collection Account or Escrow Account or thereafter received with respect to the Mortgage Loan, subject to the Servicer's right to withdraw any amounts it is entitled pursuant to this Purchase Agreement.

Section 4.3    <u>Liquidation of Mortgage Loans</u>. In the event that any payment due under any Mortgage Loan is not paid when the payment becomes due and payable, by Servicer Monthly Advance or otherwise, or in the event that the Mortgagor fails to perform any other covenant or obligation under the Mortgage Loan and such failure continues beyond any applicable grace period, the Servicer shall take such action as the Servicer would take under similar circumstances with respect to a similar mortgage loan held for its own account for investment, which action shall be consistent with Accepted Servicing Practices and in the best interest of the Purchaser, and which action shall be consistent with the related PMI Policy, if any; *provided*, *however* that any Defaulted Loan will be sold by the Servicer on behalf of the Purchaser as soon as practicable after becoming a Defaulted Loan.

Section 4.4    <u>Collection of Mortgage Loan Payments</u>. The Servicer shall proceed diligently, pursuant to Accepted Servicing Practices, to collect all payments called for under the terms and provisions of each Mortgage Loan it is obligated to service hereunder and shall follow such collection procedures as are consistent with this Purchase Agreement (including without limitation, the servicing standards set forth in Section 4.1 hereof) and Accepted Servicing Practices. The Servicer shall ascertain and estimate, in accordance with Accepted Servicing Practices, Escrow Payments and all other charges that will become due and payable with respect to each Mortgage Loan and the Mortgaged Property, to the end that the installments payable by the Mortgagors will be sufficient to pay such charges as and when they become due and payable. The Servicer shall segregate and hold all payments received by it separate and apart from any of its funds and general assets and in trust for the Secured Parties and shall apply such payments as provided in Section 4.5 hereof. The accounts established by the Servicer pursuant to this Article IV may include any number of sub-accounts for convenience in administering the Mortgage Loans.

Section 4.5    <u>Establishment of, and Deposits to, Collection Account</u>. (a) The Servicer shall establish with the Collateral Agent a single, segregated non-interest-bearing trust account which shall be designated as the collection account (the "<u>Collection Account</u>"), which shall be held in trust in the name of the Collateral Agent for the benefit of the Secured Parties into which the Servicer shall from time to time deposit, within two (2) Business Days of the receipt thereof, and retain therein, the following collections received by the Servicer: (a) all payments on account of scheduled principal on the Mortgage Loans, (b) all payments on account of interest on the Mortgage Loans (including Acquisition Date Accrued Interest), (c) any Principal Prepayments on the Mortgage Loans other than Principal Prepayments in full of Mortgage Loans, (d) all Liquidation Proceeds, (e) all Insurance Proceeds including amounts required to be deposited pursuant to Section 4.11 (other than proceeds to be held in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with Accepted Servicing Practices as specified in Section 4.15 hereof),

Section 4.12 and Section 4.16 hereof, (f) all Condemnation Proceeds which are not applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor pursuant to Section 4.15 hereof, (g) any amounts required to be deposited by the Servicer pursuant to Section 4.11 hereof in connection with the deductible clause in any blanket hazard insurance policy, (h) any amounts received with respect to or related to any REO Property and all REO Disposition Proceeds pursuant to Section 4.17 hereof and (i) any other amounts received with respect to or related to the Mortgage Loan but not including late payment charges and interest paid on funds deposited in the Collection Account or Escrow Account, to the extent permitted by applicable law, which shall be retained by the Servicer for its own account.  The Collection Account shall be established with a Qualified Depository acceptable to the Purchaser.

(b)     All monies on deposit in the Collection Account shall be invested by the Servicer in Eligible Investments having maturities no later than the next Distribution Date.  Any interest earnings on amounts on deposit from time to time in the Collection Account shall be remitted to the Servicer in accordance with such arrangements, as shall be agreed upon by the Servicer and the Collateral Agent.

Section 4.6     Permitted Withdrawals From Collection Account and Collateral Account; Deposit into the Collateral Account.  (a)  The Servicer shall have the right, from time to time, to withdraw any amounts deposited by the Servicer into the Collection Account by mistake or overpayment or as otherwise required to make adjustments to amounts deposited therein in accordance with ordinary and normal servicing adjustments.  In connection with any withdrawals of amounts deposited by the Servicer into the Collateral Account by mistake or overpayment or as otherwise required to make adjustments to amounts deposited therein in accordance with ordinary and normal servicing adjustments, the Servicer shall provide the Collateral Agent with a written request, including such information with respect to such withdrawals as such Collateral Agent may reasonably request to justify such withdrawal.  Upon receipt of such request, the Collateral Agent shall direct the Qualified Depository maintaining the Collateral Account to make such withdrawal from the Collateral Account and deposit it with the Servicer; *provided* that, if such request is for an amount less than $10,000 and the aggregate amount withdrawn from the Collateral Account under this proviso in the current Due Period is less than $50,000, such request may be honored by the Qualified Depository upon a telephonic or electronic request from the Servicer and without direction from the Collateral Agent.

(b)     Pursuant to the terms of the Security Agreement, the Collateral Agent shall establish a single, segregated non-interest-bearing trust account which shall be designated as the collateral account (the "Collateral Account"), which shall be held in trust in the name of the Collateral Agent for the benefit of the Secured Parties and over which the Collateral Agent shall have exclusive control and the sole right of withdrawal.  The proceeds of any sales and Securitizations of Mortgage Loans and Securitization Securities, the Repurchase Price of any Mortgage Loans repurchased pursuant to Sections 3.3 or 6.2, any other amounts payable in connection with the Seller's or the Servicer's repurchase of any Mortgage Loan, principal repayments in full of Mortgage Loans, all amounts transferred from the Collection Account (including principal and interest payments on Mortgage Loans), all monies received by or on behalf of the Purchaser from the payment proceeds of the Melville Variable Funding Note and any and all other amounts at any time and from time to time received by or on behalf of the Purchaser and required by the Facility Documents to be deposited into the Collateral Account,

shall be deposited directly into the Collateral Account on the same day of receipt (except for principal repayments in full of Mortgage Loans which shall be deposited directly into the Collateral Account within two (2) Business Days after receipt thereof); *provided* that it is reasonably practicable to transfer such amounts on the day of receipt (or within two (2) Business Days after receipt with respect to principal repayments in full of Mortgage Loans). Any and all funds at any time on deposit in, or otherwise to the credit of, the Collateral Account shall be held in trust by the Collateral Agent for the benefit of the Secured Parties.

(c)     The Servicer shall, from time to time, by delivery of a Servicer Advance Report, request the Collateral Agent to withdraw funds from the Collateral Account to reimburse the Servicer for Servicer Monthly Advances pursuant to Section 5.1 hereof and for each Servicing Advance pursuant to Section 4.9 hereof, to the extent such Servicer Monthly Advances and Servicing Advances have not been previously reimbursed pursuant to Section 4.6(e) hereof. The Servicer's right to reimbursement pursuant to this subclause (c) being limited to amounts received on the related Mortgage Loan which represent proceeds from the sale or Securitization of such Mortgage Loan, it being understood that, in the case of any such reimbursement, the Servicer's right thereto shall be prior to the rights of the Purchaser.

(d)     The Servicer shall, on each Distribution Date (or if such day is not a Business Day the immediately preceding Business Day), request the Collateral Agent to withdraw all amounts deposited in the Collection Account as of the close of business on the Determination Date (net of charges against or withdrawals from the Collection Account pursuant to Section 4.6(e) and 4.6(f) hereof) and deposit such funds into the Collateral Account for application pursuant to the terms of the Security Agreement and release funds in accordance with the Servicer Report delivered to the Collateral Agent for such Distribution Date pursuant to Section 4.18.

(e)     The Servicer shall, from time to time, by delivery of a Servicer Advance Report, request the Collateral Agent to withdraw funds from the Collection Account to reimburse the Servicer for Servicer Monthly Advances pursuant to Section 5.1 hereof and for each Servicing Advance pursuant to Section 4.9 hereof to the extent not already reimbursed pursuant to this subclause (e) hereof or withdrawn by the Servicer pursuant to Section 4.6(a) hereof. The Servicer's right to reimbursement pursuant to this subclause (e) being limited to amounts received on the related Mortgage Loan which represent late payments of principal and/or interest respecting which any such Servicer Monthly Advance was made or other proceeds from such Mortgage Loan or the related Mortgaged Property, it being understood that, in the case of any such reimbursement, the Servicer's right thereto shall be prior to the rights of the Purchaser, except that, where the Servicer is required to repurchase a Mortgage Loan pursuant to Section 6.2 of this Purchase Agreement, the Servicer's right to such reimbursement shall be subsequent to the payment to the Purchaser of the Repurchase Price pursuant to such Section 6.2 and all other amounts required to be paid to the Purchaser with respect to such Mortgage Loan.

(f)     The Servicer shall, on each Distribution Date, by delivery of the Servicer Report to the Collateral Agent, request the Collateral Agent to withdraw funds from the Collateral Account in an amount equal to the Servicing Fee pursuant to Section 6.3 hereof. To the extent that the Servicing Fee is not remitted to the Servicer as set forth above, the Servicing Fee shall be paid as Allocated Expenses in the method and manner specified in the Security

Agreement. Notwithstanding the foregoing, the Servicer shall be entitled to retain from the interest payments on the Mortgage Loans owned by the Purchaser prior to deposit of such payments into the Collateral Account, the Servicing Fee to which it is entitled relating to such Mortgage Loans, provided that any such retention is reflected in the Servicer Report delivered to the Collateral Agent for the Remittance Period in which such retention occurred.

(g)    The Servicer shall establish a separate account within the Collection Account to hold amounts deposited into the Collection Account with respect to Mortgage Loans that have been identified for sale by the Purchaser to a Mortgage Loan Buyer (a "Mortgage Loan Buyer Account"). Upon the establishment by the Purchaser and a Mortgage Loan Buyer of a Cut-Off Date for the sale of Mortgage Loans by the Purchaser to the Mortgage Loan Buyer, all amounts (including Servicer Monthly Advances) in respect of such Mortgage Loans which are deposited into the Collection Account on and after the Cut-Off Date and prior to the closing date for such sale (i) shall be directed by the Servicer to be held in the Mortgage Loan Buyer Account established for such sale and (ii) shall not be deposited into the Collateral Account pursuant to Section 4.6(d) hereof but shall remain in the Mortgage Loan Buyer Account until the closing or abandonment of such sale. Upon the closing of such sale, the Servicer shall, on the closing date for such sale, withdraw funds from the Mortgage Loan Buyer Account representing the amounts deposited into the Collection Account in respect of the Mortgage Loans sold to the Mortgage Loan Buyer during the period on and after the related Cut-Off Date and prior to such closing date and remit such amounts to the account of the Mortgage Loan Buyer as designated by the Purchaser. Upon failure of such sale, the amounts in the Mortgage Loan Buyer Account established for such sale shall be returned to the Collection Account for application pursuant to the provisions of this Purchase Agreement.

Section 4.7    Establishment of, and Deposits to, Escrow Account. The Servicer shall segregate and hold all funds collected and received pursuant to a Mortgage Loan constituting Escrow Payments separate and apart from any of its own funds and general assets and shall establish and maintain one (1) or more Escrow Accounts, in the form of time deposit or demand accounts, in a manner which shall provide maximum available insurance thereunder. Funds deposited in any Escrow Account may be invested by the Servicer which shall be entitled to any investment income and cover any losses therefrom except as otherwise required by law. Funds deposited in any Escrow Account may be drawn on by the Servicer pursuant to Section 4.8 hereof.

The Servicer shall deposit in such Escrow Account within two (2) Business Days after receipt and retain therein (a) all Escrow Payments collected on account of the Mortgage Loans, for the purpose of effecting timely payment of any such items as required under the terms of this Purchase Agreement and (b) all amounts representing Insurance Proceeds or Condemnation Proceeds which are to be applied to the restoration or repair of any Mortgaged Property.

The Servicer shall make withdrawals from any Escrow Account only to effect such payments as are required under this Purchase Agreement, as set forth in Section 4.8 hereof. The Servicer shall be entitled to retain any interest on funds deposited in the Escrow Account by the depositary institution, other than interest on escrowed funds required by law to be paid to the Mortgagor. To the extent required by law, the Servicer shall pay interest on escrowed funds to

the Mortgagor notwithstanding that such Escrow Account may be non-interest bearing or that interest paid thereon is insufficient for such purposes.

Section 4.8    Permitted Withdrawals From Escrow Account.  Withdrawals from any Escrow Account may be made by the Servicer only:

(1)    To effect timely payments of ground rents, taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums or other items constituting Escrow Payments for the related Mortgage;

(2)    To reimburse the Servicer for any Servicing Advances made by the Servicer pursuant to Section 4.9 hereof with respect to a related Mortgage Loan, but only from amounts received on the related Mortgage Loan which represent late collections of Escrow Payments thereunder;

(3)    To refund to any Mortgagor any funds found to be in excess of the amounts required under the terms of the related Mortgage Loan;

(4)    For transfer to the Collection Account and application to reduce the principal balance of Mortgage Loan in accordance with the terms of the related Mortgage and Mortgage Note;

(5)    For application to restoration or repair of the Mortgaged Property pursuant to the procedures outlined in Section 4.15 hereof;

(6)    To pay to the Servicer, or any Mortgagor, to the extent required by law, any interest paid on the funds deposited in the Escrow Account; and

(7)    For any other purpose consistent with Accepted Servicing Practices.

Section 4.9    Payment of Taxes, Insurance and Other Charges.  With respect to each Mortgage Loan, the Servicer shall maintain accurate records reflecting the status of ground rents, taxes, assessments, water rates, sewer rents, and other charges which are or may become a lien upon the Mortgaged Property and the status of PMI Policy premiums, if any, and fire and hazard insurance coverage and shall obtain, from time to time, all bills for the payment of such charges (including renewal premiums) and shall effect payment thereof prior to the applicable penalty or termination date, employing for such purpose deposits of the Mortgagor in the Escrow Account which shall have been estimated and accumulated by the Servicer in amounts sufficient for such purposes, as allowed under the terms of the Mortgage.  To the extent that a Mortgage does not provide for Escrow Payments, the Servicer shall maintain procedures in accordance with Accepted Servicing Practices to insure the timely payment of such items and shall advance the amount of any payment not made by the related Mortgagor on a timely basis unless the

Servicer determines in its good faith judgment that such advance would not be ultimately recoverable from future payments and collections on the related Mortgage Loan.

Section 4.10    Protection of Accounts.    Monies held in the Collection Account and the Collateral Account shall be invested in Eligible Investments.    All such Eligible Investments shall be made in the name of, and shall be payable to, the Collateral Agent.    All income from Eligible Investments held in the Collection Account shall be remitted to the Servicer for its own account.

Section 4.11    Maintenance of Hazard Insurance.    The Servicer shall cause to be maintained for each Mortgage Loan hazard insurance such that all buildings upon the Mortgaged Property are insured by a generally acceptable insurer pursuant to Accepted Servicing Practices against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located, in an amount which is at least equal to the lesser of (i) the replacement value of the improvements securing such Mortgage Loan and (ii) the greater of (a) the outstanding principal balance of the Mortgage Loan and (b) an amount such that the proceeds thereof shall be sufficient to prevent the Mortgagor or the loss payee from becoming a co-insurer.

If upon origination or acquisition of the Mortgage Loan, the related Mortgaged Property was located in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available) the Servicer shall cause to be in effect a flood insurance policy meeting the requirements of the current guidelines of the Flood Insurance Administration with a generally acceptable insurance carrier pursuant to Accepted Servicing Practices in an amount representing coverage equal to the least of (i) the minimum amount required, under the terms of coverage, to compensate for any damage or loss on a replacement cost basis, (ii) the outstanding principal balance of the Mortgage Loan and (iii) the maximum amount of insurance which is available under the Flood Disaster Protection Act of 1973, as amended.    If at any time during the term of the Mortgage Loan, the Servicer determines in accordance with applicable law and pursuant to the Guidelines that a Mortgaged Property is located in a special flood hazard area and is not covered by flood insurance or is covered in an amount less than the amount required by the Flood Disaster Protection Act of 1973, as amended, the Servicer shall notify the related Mortgagor that the Mortgagor must obtain such flood insurance coverage, and if said Mortgagor fails to obtain the required flood insurance coverage within forty-five (45) days after such notification, the Servicer shall immediately place in force the required flood insurance on the Mortgagor's behalf.

The Servicer shall cause to be maintained on each Mortgaged Property earthquake or such other or additional insurance as may be required pursuant to such applicable laws and regulations as shall at any time be in force and as shall require such additional insurance, or pursuant to the requirements of any private mortgage guaranty insurer, or as may be required to conform with Accepted Servicing Practices.

In the event that the Purchaser or the Servicer shall determine that the Mortgage Property should be insured against loss or damage by hazards and risks not covered by the insurance required to be maintained by the Mortgagor pursuant to the terms of the Mortgage, the

Servicer shall communicate and consult with the Mortgagor with respect to the need for such insurance and bring to the Mortgagor's attention the desirability of protection of the Mortgaged Property.

The Servicer shall not interfere with the Mortgagor's freedom of choice in selecting either his insurance carrier or agent; *provided*, *however*, that the Servicer shall not accept any such insurance policies from insurance companies unless such companies are generally acceptable companies pursuant to Accepted Servicing Practices and are licensed to do business in the jurisdiction in which the Mortgaged Property is located. The Servicer shall determine that such policies provide sufficient risk coverage and amounts, that they insure the property owner, and that they properly describe the property address. The Servicer shall furnish to the Mortgagor a formal notice of expiration of any such insurance in sufficient time for the Mortgagor to arrange for renewal coverage by the expiration date.

Pursuant to Section 4.5 hereof, any amounts collected by the Servicer under any such policies (other than amounts to be deposited in any Escrow Account and applied to the restoration or repair of the related Mortgaged Property, or property acquired in liquidation of the Mortgage Loan, or to be released to the Mortgagor, in accordance with Accepted Servicing Practices as specified in Section 4.15 hereof) shall be deposited in the Collection Account within 2 Business Days after receipt thereof, subject to withdrawal pursuant to Section 4.6 hereof.

Section 4.12    Maintenance of Mortgage Impairment Insurance. If the Servicer shall obtain and maintain a blanket policy insuring against losses arising from fire and hazards covered under extended coverage on all of the Mortgage Loans, then, to the extent such policy provides coverage in an amount equal to the amount required pursuant to Section 4.11 hereof and otherwise complies with all other requirements of Section 4.11, it shall conclusively be deemed to have satisfied its obligations as set forth in such Section 4.11. Any amounts collected by the Servicer under any such policy relating to a Mortgage Loan shall be deposited in the Collection Account within 2 Business Days after receipt thereof, subject to withdrawal pursuant to Section 4.6 hereof. Such policy may contain a deductible clause, in which case, in the event that there shall not have been maintained on the related Mortgaged Property a policy complying with Section 4.11 hereof, and there shall have been a loss which would have been covered by such policy, the Servicer shall deposit in the Collection Account at the time of such loss the amount not otherwise payable under the blanket policy because of such deductible clause, such amount to be deposited from the Servicer's funds, without reimbursement therefor. Upon request of the Purchaser, the Servicer shall cause to be delivered to the Purchaser a certified true copy of such policy.

Section 4.13    Maintenance of Fidelity Bond. The Servicer shall maintain with responsible companies, at its own expense, a blanket Fidelity Bond, with broad coverage on all officers, employees or other persons acting in any capacity requiring such persons to handle funds, money, documents or papers relating to the Mortgage Loans ("Company Employees"). Any such Fidelity Bond shall be in the form of the Mortgage Banker's Blanket Bond and shall protect and insure the Servicer against losses, including forgery, theft, embezzlement, fraud, and negligent acts of such Company Employees. No provision of this Section 4.13 requiring such Fidelity Bond shall diminish or relieve the Servicer from its duties and obligations as set forth in this Purchase Agreement. The minimum coverage under any such bond shall be at least equal to

the corresponding amounts required by the Guidelines.  Upon the request of the Purchaser, the Servicer shall cause to be delivered to the Purchaser a certified true copy of such Fidelity Bond.

Section 4.14    <u>Inspections</u>.  The Servicer shall inspect the Mortgaged Property in accordance with its Accepted Servicing Practices.

Section 4.15    <u>Restoration of Mortgaged Property</u>.  The Servicer need not obtain the approval of the Purchaser prior to releasing any Insurance Proceeds or Condemnation Proceeds to the Mortgagor to be applied to the restoration or repair of the Mortgaged Property if such release is in accordance with Accepted Servicing Practices.  At a minimum, the Servicer shall comply with the following conditions in connection with any such release of Insurance Proceeds or Condemnation Proceeds:

(1)    The Servicer shall receive satisfactory independent verification of completion of repairs or portion thereof and issuance of any required approvals with respect thereto;

(2)    The Servicer shall take all steps necessary to preserve the priority of the lien of the Mortgage, including, but not limited to, requiring waivers with respect to mechanics' and materialmen's liens;

(3)    The Servicer shall verify that the Mortgage Loan is not in default; and

(4)    Pending repairs or restoration, the Servicer shall place the Insurance Proceeds or Condemnation Proceeds in an Escrow Account.

Section 4.16    <u>Maintenance of PMI Policy; Claims</u>.  With respect to each Mortgage Loan (other than an FHA Loan or a VA Loan) with an LTV in excess of 80%, the Servicer shall, without any cost to the Purchaser, maintain or cause the Mortgagor to maintain in full force and effect a PMI Policy insuring that portion of the Mortgage Loan in excess of 80%, and shall pay or shall cause the Mortgagor to pay the premium thereon on a timely basis, until the LTV of such mortgage loan is reduced to 80% or less or until the related Mortgagor is permitted to terminate such PMI Policy in accordance with applicable law.  In the event that such PMI Policy shall be terminated for any reason other than (i) the reduction of the LTV of the related mortgage loan to 80% or less or (ii) the termination of such PMI Policy by the related Mortgagor in accordance with applicable law, the Servicer shall use commercially reasonable efforts to obtain, prior to any such termination, from another Qualified Insurer on behalf of the related Mortgagor, a comparable replacement policy with a total coverage equal to the remaining coverage of such terminated PMI Policy.  If the insurer shall cease to be a Qualified Insurer, the Servicer shall determine whether recoveries under the PMI Policy are jeopardized for reasons related to the financial condition of such insurer, it being understood that the Servicer shall in no event have any responsibility or liability for any failure to recover under the PMI Policy for such reason.  If the Servicer determines that recoveries are so jeopardized, it shall notify the Purchaser and the Mortgagor, if required, and use commercially reasonable efforts to obtain from another

Qualified Insurer a replacement insurance policy on behalf of the related Mortgagor.  The Servicer shall not take any action which would result in noncoverage under any applicable PMI Policy of any loss which, but for the actions of the Servicer, would have been covered thereunder.  In connection with any assumption or substitution agreement entered into or to be entered into pursuant to Section 6.1 hereof, the Servicer shall promptly notify the insurer under the related PMI Policy, if any, of such assumption or substitution of liability in accordance with the terms of such PMI Policy and shall take all actions which may be required by such insurer as a condition to the continuation of coverage under such PMI Policy.  If such PMI Policy is terminated as a result of such assumption or substitution of liability, the Servicer shall obtain a replacement PMI Policy on behalf of the related Mortgagor as provided above.

In connection with its activities as Servicer, the Servicer agrees to prepare and present claims to the insurer under any PMI Policy in a timely fashion in accordance with the terms of such PMI Policy and, in this regard, to take such action as shall be necessary to permit recovery under any PMI Policy respecting a Defaulted Loan.  Pursuant to Section 4.5 hereof, any amounts collected by the Servicer under any PMI Policy shall be deposited, in the Collection Account, within 2 Business Days after receipt thereof, subject to withdrawal pursuant to Section 4.6 hereof.

Section 4.17    Title, Management and Disposition of REO Property.  In the event that title to any Mortgaged Property is acquired in foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be taken in the name of the Servicer as agent for the Secured Parties, or in the event the Servicer is not authorized or permitted to hold title to real property in the state where the REO Property is located, or would be adversely affected under the "doing business" or tax laws of such state by so holding title, the deed or certificate of sale shall be taken in the name of such Person or Persons as shall be reasonably acceptable to the Purchaser.  The Person or Persons holding such title other than the Servicer shall acknowledge in writing that such title is being held as nominee for the Servicer.

The Servicer shall manage, conserve, protect and operate each REO Property for the Purchaser solely for the purpose of its prompt disposition and sale.  The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the manner that similar property in the locality as the REO Property is managed.  The Servicer shall dispose of the REO Property in accordance with Accepted Servicing Practices as soon as possible.

The Servicer shall also maintain on each REO Property fire and hazard insurance with extended coverage in an amount which is at least equal to the maximum insurable value of the improvements which are a part of such property, liability insurance and, to the extent required and available under the Flood Disaster Protection Act of 1973, as amended.

The disposition of REO Property shall be carried out by the Servicer at such price and upon such terms and conditions as the Servicer deems to be in the best interest of the Purchaser.  The proceeds of sale of the REO Property shall be promptly deposited in the Collection Account.

Section 4.18    Servicer Reports.  The Servicer shall deliver to the Purchaser, the Manager, the Collateral Agent, the Indenture Trustee, the Custodian, the Swap Counterparty and the Short Term Note Dealers at least one Business Day prior to each Payment Date a report (the "Servicer Report"), a form of which is attached hereto as Exhibit C.

Section 4.19    Real Estate Owned Reports.  The Servicer shall furnish to the Purchaser, at the Purchaser's request, a statement with respect to any REO Property covering the operation of such REO Property and the Servicer's efforts in connection with the sale of such REO Property and any rental of such REO Property incidental to the sale thereof.  That statement shall be accompanied by such other information as the Purchaser shall reasonably request.

Section 4.20    Liquidation Reports.  Upon the foreclosure sale of any Mortgaged Property or the acquisition thereof by the Purchaser pursuant to a deed in lieu of foreclosure, the Servicer shall submit to the Purchaser, at the Purchaser's request, a liquidation report with respect to such Mortgaged Property.

Section 4.21    Reports of Foreclosures and Abandonments of Mortgaged Property.  Following the foreclosure sale or abandonment of any Mortgaged Property, the Servicer shall report on behalf of the Purchaser such foreclosure or abandonment as required pursuant to Section 6050J of the Code.

Section 4.22    Servicer Advance Report.  The Servicer shall deliver a report (a "Servicer Advance Report") to the Collateral Agent and the Swap Counterparty from time to time pursuant to Sections 4.6(c) and 4.6(e), a form of which is attached hereto as Exhibit D.

Section 4.23    Secondary Market Trading Report.  The Servicer shall deliver a report (a "Secondary Market Trading Report") to the Collateral Agent for the benefit of the Noteholders, the Swap Counterparty and the Indenture Trustee on or before the 20th day of each month.  The Secondary Market Trading Report shall detail all secondary trades arranged by the Servicer, on behalf of the Purchaser, and settled during the calendar month immediately preceding the date of such Secondary Market Trading Report and shall include the following information related to each Mortgage Loan sold in such secondary trades:   (i) the trade identification number; (ii) the trade type; (iii) the trade term; (iv) the coupon of the related Securitization Security; (v) the principal amount; (vi) the trade price; (vii) the trade date; (viii) the settlement date; and (ix) the broker/dealer.

## ARTICLE V

## SERVICER ADVANCES

Section 5.1    Servicer Monthly Advances.  On each Distribution Date, the Servicer shall deposit into the Collection Account from its own funds an amount equal to all Monthly Payments which were due on the Mortgage Loans with respect to the applicable Due Period and which remain unpaid at the close of business on the related Determination Date or which were deferred pursuant to Section 4.1(c) hereof; *provided* that, in the reasonable judgment of the Servicer, the amount of such Servicer Monthly Advance shall be recoverable from proceeds on the related Mortgage Loan.  The Servicer's conditional obligation to make such

Servicer Monthly Advances as to any Mortgage Loan will continue through the last Monthly Payment due prior to the scheduled payment in full of the Mortgage Loan or through the Distribution Date for the distribution of all Liquidation Proceeds and other payments or recoveries (including Insurance Proceeds and Condemnation Proceeds) with respect to the Mortgage Loan unless the Servicer provides an Officer's Certificate stating that such Servicer Monthly Advance would not be recoverable in its reasonable judgment from payments on the related Mortgage Loan or other proceeds thereof or from the related Mortgaged Property; provided, however, that the Servicer's obligation to make such Servicer Monthly Advances shall not continue if the Mortgage Loan has become a Defaulted Loan.

## ARTICLE VI

## GENERAL SERVICING PROCEDURES

Section 6.1    Transfers of Mortgaged Property.  With respect to FHA Loans and VA Loans, the Mortgaged Property may be transferred in accordance with applicable FHA or VA regulations.  With respect to any other Mortgage Loan, the Servicer shall enforce any "due-on-sale" provision in accordance with Accepted Servicing Practices and applicable law contained in any Mortgage or Mortgage Note and to deny assumption by the Person to whom the Mortgaged Property has been or is about to be sold whether by absolute conveyance or by contract of sale, and whether or not the Mortgagor remains liable on the Mortgage and the Mortgage Note.  When the Mortgaged Property has been conveyed by the Mortgagor, the Servicer shall, to the extent it has actual knowledge of such conveyance, exercise its rights to accelerate the maturity of such Mortgage Loan under the "due-on-sale" clause applicable thereto; *provided*, *however*, that the Servicer shall not exercise such rights if prohibited by law from doing so or if the exercise of such rights would impair or threaten to impair any recovery under the related PMI Policy, if any.

If the Servicer reasonably believes it is unable under applicable law to enforce such "due-on-sale" clause, the Servicer shall enter into (i) an assumption and modification agreement with the person to whom such property has been conveyed, pursuant to which such person becomes liable under the Mortgage Note and the original Mortgagor remains liable thereon or (ii) in the event that the Servicer is unable under applicable law to require that the original Mortgagor remain liable under the Mortgage Note and the Servicer has the prior consent of the primary mortgage guaranty insurer, a substitution of liability agreement with the purchaser of the Mortgaged Property pursuant to which the original Mortgagor is released from liability and the purchaser of the Mortgaged Property is substituted as Mortgagor and becomes liable under the Mortgage Note.

Section 6.2    Satisfaction of Mortgages, Assignments of Mortgage Notes in Violation of this Purchase Agreement and the Release of Mortgage Loan Files.  Upon the payment in full of each Mortgage Loan, or the receipt by the Servicer of a notification that payment in full will be escrowed in a manner customary for such purposes, the Servicer shall notify the Purchaser and the Collateral Agent.

If the Servicer satisfies or releases a Mortgage, without first having obtained payment in full of the indebtedness secured by the Mortgage, the Servicer pledges, transfers, assigns, sells, disposes of or otherwise delivers any Mortgage Note in any manner contrary to the provisions of this Purchase Agreement, or the Servicer otherwise prejudices any rights the Purchaser may have under the mortgage instruments which materially and adversely affects the value of the related Mortgage Loan, upon written demand of the Purchaser, the Servicer shall purchase the related Mortgage Loan at the Repurchase Price by deposit thereof in the Collateral Account, within two (2) Business Days of receipt of such demand by the Purchaser.

Upon receipt of the Repurchase Price by the Collateral Agent, the Purchaser and the Servicer shall arrange for the reassignment of the Mortgage Loans to the Servicer and the delivery to the Servicer of any documents held by the Custodian relating to the reassigned Mortgage Loans. The Servicer shall, simultaneously with such assignment, give written notice to the Seller, the Collateral Agent, the Indenture Trustee and the Swap Counterparty that such repurchase has taken place.

Section 6.3    <u>Servicing Compensation</u>.    As compensation for its services hereunder, the Servicer shall be entitled to the Servicing Fee. The Servicer shall be required to pay all expenses incurred by it in connection with its servicing activities hereunder and shall not be entitled to reimbursement therefor except as specifically provided for herein.

Section 6.4    <u>Annual Statement as to Compliance</u>. The Servicer shall deliver to the Purchaser, the Manager, the Indenture Trustee, the Short Term Note Dealers and the Swap Counterparty, on or before March 31st of each year beginning with March 31st of 2005, an Officer's Certificate, stating that (i) a review of the activities of the Servicer during the fiscal year ended on December 31st of the previous year and of its performance under this Purchase Agreement has been made under such officer's supervision, (ii) the Servicer has complied with the provisions of Article II and Article IV hereof and (iii) to the best of such officer's knowledge, based on such review, the Servicer has fulfilled its obligations in all material respects under this Purchase Agreement throughout such year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such officer and the nature and status thereof and the action being taken by the Servicer to cure such default.

Section 6.5    <u>Annual Independent Public Accountants' Servicing Report</u>. On or before March 31st of each year beginning March 31st of 2005, the Servicer, at its expense, shall cause a firm of independent public accountants which is a member of the American Institute of Certified Public Accountants to furnish a report to the Purchaser, the Manager, the Indenture Trustee, the Short Term Note Dealers and the Swap Counterparty to the effect that such firm has examined management's assertion about the Servicer's compliance with the minimum standards identified in the Mortgage Bankers Association of America's Uniform Single Attestation Program for Mortgage Bankers (USAP), and that such firm is of the opinion that management's assertion that the Servicer complied with the aforementioned minimum servicing standards as of and for the annual period ended on December 31st of the previous year is fairly stated in all material respects. The Indenture Trustee shall have no duty to examine such report.

Section 6.6    <u>Right to Examine Servicer Records</u>. The Purchaser, the Manager, the Indenture Trustee (acting at the written direction of the Required Senior Noteholders) and the

Collateral Agent, upon three (3) Business Days prior notice, shall each have the right to reasonable access to the books, records, or other information of the Servicer, whether held by the Servicer or by another on its behalf, with respect to or concerning this Purchase Agreement or the Mortgage Loans, during regular business hours or at such other times as may be reasonable under applicable circumstances, upon reasonable advance notice.

## ARTICLE VII

## [RESERVED]

## ARTICLE VIII

## SERVICER TO COOPERATE

Section 8.1    Provision of Information.    During the term of this Purchase Agreement, the Servicer shall furnish to the Purchaser, the Manager, the Swap Counterparty and the Indenture Trustee (on behalf of the Noteholders) such periodic, special, or other reports or information, including the Servicer Report required under the terms of this Purchase Agreement to be delivered to the Purchaser, the Manager, the Swap Counterparty, the Indenture Trustee (on behalf of the Noteholders), the Collateral Agent and the Short Term Note Dealers on each Distribution Date.    All such reports, documents or information shall be provided by and in accordance with all reasonable instructions and directions which the Purchaser, the Manager and the Indenture Trustee may give.

The Servicer shall execute and deliver all such instruments and take all such action as the Purchaser, the Indenture Trustee (on behalf of the Noteholders), the Collateral Agent, the Custodian and the Short Term Note Dealers may reasonably request from time to time, in order to effectuate the purposes and to carry out the terms of this Purchase Agreement.

## ARTICLE IX

## THE SERVICER

Section 9.1    Indemnification of Third Party Claims.    The Servicer agrees to indemnify and hold harmless the Purchaser and the Swap Counterparty against any and all claims, losses, penalties, fines, forfeitures, reasonable legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser, the Swap Counterparty and the Collateral Agent may sustain to the extent attributable to the Servicer's gross negligence, fraudulent conduct or willful misconduct in the performance of its duties hereunder or a Servicer Event of Default.    The Servicer shall immediately notify the Purchaser and the Swap Counterparty if a claim is made by a third party with respect to this Purchase Agreement and the Servicer shall assume the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against the Servicer or the Purchaser in respect of such claim.    The Servicer's indemnification obligation pursuant to this Section 9.1 shall survive the termination of

this Purchase Agreement and the Servicer's termination with respect to acts or omissions occurring prior to its termination.

Section 9.2    <u>Corporate Existence of the Servicer</u>.  The Servicer shall keep in full effect its existence, rights and franchises as a corporation, and shall obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Purchase Agreement or any of the Mortgage Loans and to perform its duties under this Purchase Agreement.

Section 9.3    <u>Limitation on Liability of Servicer and Others</u>.  Neither the Servicer nor any of the directors, officers, employees or agents of the Servicer shall be under any liability to the Purchaser for any action taken or for refraining from the taking of any action in good faith pursuant to this Purchase Agreement, or for errors in judgment; *provided*, *however*, that this provision shall not protect the Servicer or any director, officer, employee or agent of the Servicer against any liability which would otherwise be imposed by reason of willful misfeasance, bad faith or gross negligence in the performance of duties or by reason of reckless disregard of obligations and duties hereunder, nor shall this provision protect the Servicer against any liability that would otherwise be imposed by reason of gross negligence, fraudulent conduct or willful misconduct in the performance of duties hereunder or a Servicer Event of Default.  The Servicer and any director, officer, employee or agent of the Servicer may rely in good faith on any document which it in good faith reasonably believes to be genuine and have been adopted or signed by the proper authorities respecting any matters arising hereunder.  The Servicer shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its duties to service the Mortgage Loans in accordance with this Purchase Agreement and which in its opinion may involve it in any expense or liability; *provided*, *however*, that the Servicer may, undertake any such action which it may deem necessary or desirable with respect to this Purchase Agreement and the rights and duties of the parties hereto.  In such event, the Servicer shall be entitled to reimbursement from the Purchaser of the reasonable legal expenses and costs of such action.

Section 9.4    <u>Limitation on Resignation and Assignment by the Servicer</u>.  The Purchaser has entered into this Purchase Agreement with the Servicer in reliance upon the adequacy of its servicing facilities, plant, personnel, records and procedures, its integrity, reputation and financial standing, and the continuance thereof.  The Servicer shall not resign from the obligations and duties hereby imposed on it as to each Mortgage Loan except by consent of the Required Senior Noteholders, the Swap Counterparty, the Collateral Agent and the Required Subordinated Noteholders or upon the determination that its duties hereunder are no longer permissible under applicable law and such incapacity cannot reasonably be cured by the Servicer.  Notice of any such determination permitting the resignation of the Servicer shall be delivered to each Rating Agency and such determination shall be evidenced by an Opinion of Counsel to such effect delivered to the Purchaser which Opinion of Counsel shall be in form and substance acceptable to the Purchaser.  No such resignation shall become effective until a successor shall have assumed the Servicer's responsibilities and obligations hereunder in the manner provided in Section 12.1 hereof, subject to Rating Agency Confirmation.

Section 9.5    <u>Limitation on Assignment of Right</u>.    Except pursuant to a resignation approved pursuant to Section 9.4 hereof, the Servicer shall not assign, sell or otherwise transfer its right to receive any payments (including the Servicing Fee) hereunder.

## ARTICLE X

### DEFAULT

Section 10.1    <u>Servicer Events of Default</u>.  Each of the following shall constitute a "<u>Servicer Event of Default</u>" on the part of the Servicer:

(a)    Any failure by the Servicer to observe or perform in any material respect any of the terms, covenants or agreements on the part of the Servicer set forth in this Purchase Agreement, any Transfer Supplement or the Custodial Agreement (other than those set forth in clause (i) below) which continues unremedied for a period of forty-five (45) days after the date on which the Servicer either discovers or receives written notice of such failure; or

(b)    Any representation, warranty, statement or certificate made by the Servicer hereunder (excluding any representations or warranties made pursuant to Section 3.2 hereof) shall prove to have been incorrect in any material respect as of the time when made, and which continues to be incorrect in any material respect for forty-five (45) days after the date on which the Servicer either discovers or receives written notice; or

(c)    Any failure by the Servicer to maintain any required licenses to do business in any jurisdiction where the Mortgaged Property is located, which failure has material adverse effect on the ability of the Servicer to perform its functions under this Purchase Agreement or materially impairs the value of the Mortgage Loans, and which continues to be unremedied for a period of forty-five (45) days after the date on which the Servicer either discovers or receives written notice of such failure; or

(d)    Application by any Person (other than the Servicer) for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, including bankruptcy, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Servicer and a decree or order in connection with such application shall have remained in force undischarged or unstayed for a period of sixty (60) days; or

(e)    The Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency, bankruptcy or reorganization statute, make an assignment for the benefit of its creditors, voluntarily suspend payment of its obligations; or

(f)    The Servicer shall enter into a consent agreement or otherwise agree in writing with any federal or state regulatory agency or authority to restrict its activities, if the default of such agreement by the Servicer entitles such applicable federal or state agency to place the Servicer in receivership or conservatorship, or the Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of

assets and liabilities or similar proceedings of or relating to the Servicer or of or relating to all or substantially all of its property; or

        (g)     Failure of the Servicer to be an Approved Servicer by at least one (1) of GNMA, FNMA and FHLMC; or

        (h)     The occurrence of an Event of Bankruptcy with respect to the Performance Guarantor, or, if AHMIC is the Performance Guarantor, the Tangible Net Worth of AHMIC on any annual or interim report shall be less than $490,000,000 or any replacement Performance Guarantor ceases to have the Required Rating and the Purchaser shall have failed (i) to cause a replacement Performance Guarantor having the Required Rating to assume in writing the Performance Guarantor's obligations under this Purchase Agreement within sixty (60) days following the occurrence of such Event of Bankruptcy, such reduction in the Tangible Net Worth of AHMIC or such withdrawal or downgrading or (ii) to receive confirmation from each Rating Agency that has rated any outstanding Series of Notes that such Event of Bankruptcy, such reduction in the Tangible Net Worth of AHMIC or such withdrawal or downgrade of a replacement Performance Guarantor will not result in the withdrawal or downgrade of its then-current rating on any Series of Notes and such failure continues for thirty (30) days after such Event of Bankruptcy, such reduction in the Tangible Net Worth of AHMIC or such withdrawal or downgrade of the Performance Guarantor; or

        (i)     The failure on the part of the Servicer to make any payment or deposit required under this Purchase Agreement on or before five (5) Business Days after the date such payment or deposit is required to be made.

        At any time during the continuance of an event described in clauses (a) through (i) above, the Purchaser may, and shall at the written request of the Required Subordinated Noteholders, with the consent of the Required Senior Noteholders, terminate all of the rights and obligations of the Servicer under this Purchase Agreement and in and to the Mortgage Loans and the proceeds thereof other than its receipt of unpaid Servicing Fees, unpaid Servicer Monthly Advances and any unpaid Servicing Advances.  Notice of such termination shall be given to the Collateral Agent, the Indenture Trustee, the Manager, the Short Term Note Dealers, the Swap Counterparty and the Rating Agencies.  Upon receipt by the Servicer of such written notice, all authority and power of the Servicer under this Purchase Agreement, whether with respect to the mortgage loans or otherwise, shall pass to and be vested in the successor appointed pursuant to Section 12.1 hereof.  Upon written request from the Purchaser, the Servicer shall prepare, execute and deliver to the successor entity designated by the Purchaser any and all documents and other instruments, place in such successor's possession all Mortgage Loan Files, and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such notice of termination, including but not limited to the transfer and endorsement or assignment of the mortgage loans and related documents, at the Servicer's sole expense.  The Servicer shall cooperate with such successor in effecting the termination of the Servicer's responsibilities and rights hereunder, including without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Servicer to any Collection Account or Escrow Account or thereafter received with respect to the Mortgage Loans.

Section 10.2   <u>Waiver of Defaults</u>.   With the consent of the Required Senior Noteholders and the Swap Counterparty, the Purchaser and the Required Subordinated Noteholders, by written notice to the Collateral Agent, may waive any default by the Servicer in the performance of its obligations hereunder and its consequences.  Upon any waiver of a past default, such default shall cease to exist, and any event of default arising therefrom shall be deemed to have been remedied for every purpose of this Purchase Agreement.  No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived.  Notice of any such waiver shall be given to each Rating Agency,

## ARTICLE XI

## TERMINATION

Section 11.1   <u>Termination of Agreement</u>.   This Purchase Agreement shall terminate upon the final payment, other liquidation (or any advance with respect thereto) or sale or Securitization of each Mortgage Loan sold hereunder, and the Seller's delivery of a written notice to the Purchaser that its commitment to purchase Eligible Loans hereunder has been terminated.

Section 11.2   <u>Termination of Purchase Obligations</u>.  Each of the following shall constitute a termination event under this Purchase Agreement (each, a "<u>Termination Event</u>"):

(a)     Any representation, warranty, statement, or certification made by the Seller or the Performance Guarantor (excluding any representations or warranties made pursuant to Section 3.2 hereof) in any Facility Document shall prove to have been false or misleading in any material respect as of the time when made, and which continues to be misleading in any material respect for a period of forty-five (45) days after written notice, or

(b)     The failure on the part of the Seller or the Performance Guarantor to observe or perform in any material respect any of the material terms, covenants or agreements of the Seller or the Performance Guarantor, as applicable, contained in this Purchase Agreement, including without limitation the Performance Guarantee, and any Facility Document which continues unremedied for a period of forty-five (45) days after written notice, or

(c)     Application by any Person (other than the Seller) for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, including bankruptcy, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Seller and such decree or order shall have remained in force undischarged or unstayed for a period of sixty (60) days, or

(d)     The occurrence of an Event of Bankruptcy with respect to the Performance Guarantor or, if AHMIC is the Performance Guarantor, (x) the Tangible Net Worth of AHMIC on any annual or interim report shall be less than the sum of (I) $490,000,000 and (II) 90% of the proceeds of any equity issuance or (y) the Rolling Two-Quarter Profitability of AHMIC shall be less than $1, or the Performance Guarantor's guarantee of the obligations of the Servicer under this Purchase Agreement is no longer in effect and a replacement performance guarantor having the Required Rating shall not have assumed in writing the obligations of the

Performance Guarantor under this Purchase Agreement within sixty (60) days of such Event of Bankruptcy, such termination of the Performance Guarantor's guarantee or such reduction in the Tangible Net Worth or the Rolling Two-Quarter Profitability of AHMIC, or

(e)    Any Servicer Event of Default has occurred and is continuing after giving effect to any applicable grace period, or

(f)    The Purchaser or the Seller shall consent to the appointment of a conservator, receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Purchaser or the Seller or of or relating to all or substantially all of its property, or

(g)    The Purchaser or the Seller shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency, bankruptcy or reorganization statute, make an assignment for the benefit of its creditors, voluntarily suspend payment of its obligations, or

(h)    Non-Compliance with the Portfolio Aging Limitations or the Portfolio Criteria, and such non-compliance shall continue for a period of forty-five (45) days, or

(i)    The Interest Rate Swaps in a maximum notional amount equal to the Program Size shall cease, for any reason, to be in full force and effect, or

(j)    An Indenture Event of Default shall have been declared by the Indenture Trustee or the Required Senior Noteholders (or if the Senior Notes have been paid in full, the Required Subordinated Noteholders) or an automatic Indenture Event of Default shall have occurred and be continuing, or

(k)    The Seller is no longer an Approved Seller under the Guidelines, as amended with respect to the Seller, by GNMA, FNMA and FHLMC; *provided*, *however*, that the Seller may terminate its status as an Approved Seller with respect to GNMA, FNMA or FHLMC so long as the Seller maintains such status with at least one of such Agencies at all times, or

(l)    Funds on deposit in the Reserve Fund shall be less than the Required Reserve Fund Amount for forty-five (45) consecutive days or more, or

(m)    On any Business Day either (i) the rolling 3 month average of the ratio (calculated daily) of the Outstanding Purchase Price of all Delinquent Loans to the Outstanding Purchase Price of all Mortgage Loans owned by the Purchaser on such day shall exceed 3%, (ii) the ratio (calculated daily) of the Outstanding Purchase Price of all Delinquent Loans at such time to the Outstanding Purchase Price of all Mortgage Loans owned by the Purchaser on such day shall exceed 4% or (iii) the ratio (calculated daily) of the Outstanding Purchase Price of all Mortgage Loans which is ninety (90) days or more past its Due Date to the Outstanding Purchase Price of all Mortgage Loans owned by the Purchaser on such day shall exceed 1.75%, or

(n)    The failure of the Purchaser to maintain an agreement (in substantially the form attached hereto as Exhibit B) with a Rated Bidder to the effect that such Rated Bidder

agrees to submit a binding bid for all non-Delinquent Loans and non-Defaulted Loans in a Termination Event Auction which failure continues for a period of thirty (30) or more days, or

(o)     One (1) or more Swap Counterparties fail to agree to any extension of any Interest Rate Swap, and a replacement Swap Counterparty or Swap Counterparties shall not have been obtained at least one (1) year prior to the scheduled termination date in a maximum notional amount at least equal to the lesser of (x) the maximum notional amount of the Interest Rate Swap or Interest Rate Swaps represented by the non-extending Swap Counterparty or Swap Counterparties or (y) if the Program Size has been modified, an amount equal to (i) the then-current Program Size less (ii) the maximum notional amount of all effective (as of such scheduled termination date) Interest Rate Swaps; or

(p)     The Performance Guarantor shall fail to pay or post any of its payment obligations (including, for the avoidance of doubt, any collateral posted pursuant to a credit support annex or other credit support document) under any interest rate swap, credit support annex, other credit support document or similar hedging transaction with a notional amount, individually or in the aggregate, of more than $100,000,000 and such failure continues unremedied for a period of three (3) Business Days after written notice; or

(q)     The occurrence of an Event of Bankruptcy with respect to the Seller;

*provided*, *however*, at any time during the continuance of an event described in clauses (a), (b), (d) or (e) above, the Purchaser may, and shall at the written request of the Required Subordinated Noteholders, with the consent of the Required Senior Noteholders, notify the Seller that the commitment of the Purchaser to purchase Eligible Loans from the Seller shall terminate.  At any time during the continuance of an event described in clause (d), (p) or (q) above, the Purchaser shall, at the written request of any Swap Counterparty, notify the Seller that the commitment of the Purchaser to purchase Eligible Loans from the Seller shall terminate.  In the event of the occurrence of a Termination Event described in clauses (c) and (f) through (o) above, the commitment of the Purchaser to purchase Eligible Loans from the Seller shall automatically terminate.  Upon the declaration of a Termination Event by the Purchaser or the occurrence of an automatic Termination Event, the Purchaser will no longer be permitted to purchase additional Eligible Loans and principal payments on the Mortgage Loans, principal proceeds of sales and Securitizations of Mortgage Loans and amounts received from the Swap Counterparty will be retained under the Security Agreement and used to pay the outstanding obligations of the Purchaser pursuant to the terms thereof.  If a Termination Event described in clauses (1) through (o) above occurs or an Indenture Event of Default described in clause (f), (k), (l), (o), (p), (q) or (r) of Section 9.1 of the Indenture occurs, (x) the Servicer shall use commercially reasonable efforts to sell or Securitize all non-Delinquent Loans and non-Defaulted Loans within thirty (30) days of the date on which such Termination Event or Indenture Event of Default occurred and (y) the Servicer or the Seller, as the case may be, shall assign any Forward Trades and any Forward Whole Loan Trades to the Purchaser relating to the Mortgage Loans that have not been previously assigned to the Purchaser.  In the event that all non-Delinquent Loans and non-Defaulted Loans have not been so sold or Securitized, on such thirtieth (30th) day the Collateral Agent shall hold an auction (a "<u>Termination Event Auction</u>") of the remaining non-Delinquent Loans and non-Defaulted Loans for settlement not later than the forty-fifth (45th) day following the date on which such Termination Event or Indenture Event of Default occurred.  The

Collateral Agent shall notify potential bidders (which shall include each Swap Counterparty) of the Termination Event Auction, including one bidder obligated to make a bid in any such auction; *provided*, *however*, such bidder shall have a "P-1" rating from Moody's (the "Rated Bidder"). If a Termination Event described in clause (d), (p) or (q) above occurs and, as a result of the occurrence of such Termination Event, any Swap Counterparty reasonably believes, in its sole discretion, that there will be a material impairment in the value of the Mortgage Loans, (x) the Servicer shall, at the written request of such Swap Counterparty, use commercially reasonable efforts to sell or Securitize all non-Delinquent Loans and non-Defaulted Loans in the manner described herein and, in the event all non-Delinquent Loans and non-Defaulted Loans have not been so sold or Securitized, the Collateral Agent shall hold a Termination Event Auction in the manner described herein and (y) the Servicer or the Seller, as the case may be, shall assign any Forward Trades and any Forward Whole Loan Trades to the Purchaser relating to the Mortgage Loans that have not been previously assigned to the Purchaser.

Section 11.3   Termination of Servicing With Respect to Any Mortgage Loan. The servicing of any Mortgage Loan in accordance with the terms of this Purchase Agreement shall terminate upon the occurrence of the following:  (i) the receipt into the Collateral Account of the proceeds of any sale or Securitization of such Mortgage Loan or the Repurchase Price or Principal Prepayment in full of such Mortgage Loan or (ii) the effectiveness of the termination of the Servicer pursuant to Section 12.1.  No termination shall become effective until a successor shall have assumed the Servicer's responsibilities and obligations hereunder in the manner provided in Section 12.1.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

Section 12.1   Successor to Servicer.   Prior to termination of the Servicer's responsibilities and duties under this Purchase Agreement pursuant to Sections 9.4 or 10.1 hereof, the Purchaser shall appoint a successor servicer which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Servicer under this Purchase Agreement prior to the termination of the Servicer's responsibilities, duties and liabilities under this Purchase Agreement.  In the event that the Servicer's duties, responsibilities and liabilities under this Purchase Agreement should be terminated pursuant to the aforementioned sections, the Servicer shall discharge such duties, responsibilities and liabilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the degree of diligence and prudence which it is obligated to exercise under this Purchase Agreement and shall take no action whatsoever that might impair or prejudice the rights or financial condition of its successor.   The resignation or removal of the Servicer pursuant to the aforementioned Sections shall not become effective until (i) a successor shall be appointed pursuant to this Section 12.1 and (ii) notice thereof shall have been given to the Rating Agencies, the Swap Counterparty and the Purchaser shall have received Rating Agency Confirmation, and such resignation or removal shall in no event relieve the Servicer of the representations and warranties made pursuant to Sections 3.1 hereof and the remedies available to the Purchaser under Section 9.1 hereof, it being understood and agreed that the provisions of such Sections 3.1 and 9.1 shall

be applicable to the Servicer notwithstanding any such sale, assignment, resignation or termination of the Servicer, or the termination of this Purchase Agreement.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Servicer and the Purchaser an instrument accepting such appointment, wherein the successor shall make the representations and warranties set forth in Section 3.1 hereof, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer, with like effect as if originally named as a party to this Purchase Agreement.  Any termination or resignation of the Servicer or termination of this Purchase Agreement pursuant to Sections 9.4 or 10.1 hereof shall not affect any claims that the Purchaser may have against the Servicer arising out of the Servicer's actions or failure to act prior to any such termination or resignation.

The Servicer shall deliver promptly to the successor servicer the funds in any Collection Account and Escrow Account and all Mortgage Loan Files and related documents and statements held by it hereunder and the Servicer shall account for all funds and shall execute and deliver such instruments and do such other things as may reasonably be required to more fully and definitively vest in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Servicer.

Section 12.2    <u>Amendment</u>.  This Purchase Agreement may only be amended with the written consent of the Purchaser, the Seller, the Swap Counterparty, the Performance Guarantor and the Servicer, and upon prior written notice of such amendment to each Rating Agency; *provided*, *however*, that any material amendment or waiver shall be subject to Rating Agency Confirmation.  The costs and expenses associated with any such amendment shall be borne by the party requesting the amendment.

Section 12.3    <u>Governing Law</u>.  THIS PURCHASE AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT GIVING EFFECT TO THE PROVISIONS THEREOF REGARDING CONFLICTS OF LAWS, OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW) AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 12.4    <u>Duration of Agreement</u>.  This Purchase Agreement shall continue in existence and effect until terminated as provided in Section 1l.1.

Section 12.5    <u>Notices</u>.  All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at, mailed by registered mail, postage prepaid, or sent by telecopier or electronic messaging, addressed as follows:

(i)  if to the Company:

> American Home Mortgage Corp.
> 520 Broadhollow Road (through September 30, 2004)
> 538 Broadhollow Road (beginning October 1, 2004)
> Melville, New York 11747
> Attention: Thomas McDonagh
> Telephone Number: 516-622-8960
> Facsimile Number: 516-949-3942

with a copy to the general counsel delivered at the same address, or such other address, facsimile number or electronic mail address, as applicable, as may hereafter be furnished to the Purchaser in writing.

(ii)  if to the Purchaser:

> Broadhollow Funding, LLC
> c/o American Home Mortgage Corp.
> 520 Broadhollow Road (through September 30, 2004)
> 538 Broadhollow Road (beginning October 1, 2004)
> Melville, New York 11747
> Attention: Thomas McDonagh
> Telephone Number: 516-622-8960
> Facsimile Number: 516-949-3942

with a copy to the general counsel delivered at the same address, or such other address, facsimile number or electronic mail address, as applicable, as may hereafter be furnished to the Seller or the Servicer in writing.

If to a Swap Counterparty, at the address set forth in the applicable Interest Rate Swap.

Section 12.6  Severability of Provisions.  If any one or more of the covenants, agreements, provisions or terms of this Purchase Agreement shall be held invalid for any reason whatsoever, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Purchase Agreement and shall in no way affect the validity or enforceability of the other provisions of this Purchase Agreement.

Section 12.7  Relationship of Parties.  Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto and the services of the Servicer shall be rendered as an independent contractor and not as agent for the Purchaser.

Section 12.8  Execution; Successors and Assigns.  This Purchase Agreement may be executed in one (1) or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one (1) agreement.  This Purchase Agreement shall inure

to the benefit of and be binding upon the Servicer and the Purchaser and their respective successors and assigns; *provided*, *however*, that the rights of the Purchaser and the Swap Counterparty to indemnity from the Servicer pursuant to Section 9.1 hereof are not assignable and shall inure only to the benefit of such Persons and to no other Person.

Section 12.9    Recordation of Assignments of Mortgage.  To the extent permitted by applicable law, each of the Assignments of Mortgage is subject to recordation in all appropriate public offices for real property records in all the counties or other comparable jurisdictions in which any or all of the Mortgaged Properties are situated, and in any other appropriate public recording office or elsewhere, such recordation to be effected at the Purchaser's expense in the event recordation is requested by the Purchaser upon the occurrence of a Termination Event that would require the Servicer to sell or Securitize all non-Delinquent or non-Defaulted Loans pursuant to Section 11.2.

Section 12.10    Assignment by Purchaser.  The Purchaser shall have the right, to assign its interest under this Purchase Agreement to the Collateral Agent for the benefit of the Secured Parties pursuant to the Security Agreement.

Section 12.11    Non-Petition Agreement.  Notwithstanding any prior termination of this Purchase Agreement, each of the Seller, the Servicer and the Performance Guarantor severally and not jointly covenants and agrees that it shall not, prior to the date which is one year and one day (or if longer, the applicable preference period then in effect) after the payment in full of the Notes or any other rated obligations of the Purchaser, acquiesce, petition or otherwise, directly or indirectly, invoke or cause the Purchaser to invoke the process of any governmental authority for the purpose of commencing or sustaining a case against the Purchaser under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Purchaser or any substantial part of its property or ordering the winding up or liquidation of the affairs of the Purchaser.

Section 12.12    Waiver of Offset.  The Servicer agrees to deliver to the Purchaser all amounts required by this Purchase Agreement to be delivered by the Servicer to the Purchaser free and clear of any offset, counterclaim or other deduction on account of, or in respect of, any Purchaser to the Servicer hereunder.

Section 12.13    Limited Recourse.  The Servicer agrees that the obligations of the Purchaser to the Servicer under this Purchase Agreement are limited recourse obligations of the Purchaser payable solely from the assets of the Purchaser available for such purposes under the Security Agreement and that, upon application of all assets of the Purchaser available under the Security Agreement for such purposes, the Servicer shall have no recourse to the Purchaser for any obligations of the Purchaser to the Servicer to the extent such application does not provide for full satisfaction and payment of such obligation.

Section 12.14    Non-Petition Agreement.  The Purchaser shall cause each party to the Facility Documents and each party to any other document incidental or related to any Facility Document (other than the Manager and the Person acting as "Special Member" of the Purchaser under the LLC Agreement), to covenant and agree that it shall not, prior to the date which is one

year and one day (or if longer, the applicable preference period then in effect) after the payment in full of the latest maturing Note, acquiesce, petition or otherwise, directly or indirectly, invoke or cause the Purchaser to invoke the process of any governmental authority for the purpose of commencing or sustaining a case against the Purchaser under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Purchaser or any substantial part of its property or ordering the winding up or liquidation of the affairs of the Purchaser.  This Section 12.14 shall survive the termination of this Purchase Agreement.

Section 12.15  <u>Third-Party Beneficiary</u>.  The Swap Counterparty is a third-party beneficiary to this Purchase Agreement and is entitled to the rights and benefits hereunder and may enforce the provisions hereof as if it were a party hereto.

## ARTICLE XIII

## PERFORMANCE GUARANTEE

Section 13.1  <u>Guarantee of Servicer's Performance and Payment Obligations</u>. For value received, and in consideration of the financial accommodation accorded to the Seller and the Servicer by the Purchaser under this Purchase Agreement, the Performance Guarantor hereby fully, unconditionally, and irrevocably guarantees to the Purchaser, the holders of all Series of Notes, the Collateral Agent and the Indenture Trustee the due performance of, and punctual payment of all amounts payable by the Servicer under this Purchase Agreement when and as such obligations hereunder shall become due and, in the case of any payments, payable. The Performance Guarantor will ensure the performance and payment of every act, duty, obligation, agreement and responsibility of the Servicer set forth herein.

In case of the inability of the Servicer to punctually perform any such act, duty, obligation, responsibility or agreement or to pay punctually any such amounts, the Performance Guarantor hereby agrees, upon written demand by the Purchaser, to, as applicable, (i) perform any such act, duty, obligation, responsibility or agreement and (ii) pay or cause to be paid any such amount, punctually when and as the same shall become due and, in the case of any payment, payable.

(i)    The Performance Guarantor hereby agrees that its obligations under this Section 13.1 constitute a guarantee of performance and payment when due and not of collection.

(ii)    The Performance Guarantor hereby agrees that its obligations under this Section 13.1 shall be unconditional, irrespective of the validity, regularity or enforceability of this Purchase Agreement against the Servicer, the absence of any action to enforce the Servicer's obligations under this Purchase Agreement, any waiver or consent by the Purchaser, the holders of all Series of Notes or the Indenture Trustee with respect to any provisions thereof, the entry by the Servicer and the Purchaser into additional transactions under this Purchase Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (other than the defenses of statute of limitations or payment, which are not waived); *provided,*

*however*, that Performance Guarantor shall be entitled to exercise any right that the Servicer could have exercised under this Purchase Agreement to cure any default in respect of its obligations under this Purchase Agreement or to set-off, counterclaim or withhold payment in respect of any event of default or potential event of default in respect of the Purchaser or any Affiliate, but only to the extent such right is provided to the Servicer under this Purchase Agreement.  The Performance Guarantor acknowledges that the Servicer and the Purchaser may from time to time enter into one (1) or more transactions pursuant to this Purchase Agreement and agrees that the obligations of the Performance Guarantor under this Section 13.1 will upon the execution of any such transaction by the Servicer and the Purchaser extend to all such transactions without the taking of further action by the Performance Guarantor.

(iii)    The Performance Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in the second paragraph of this Section 13.1, notice of any kind in connection with this Purchase Agreement and this Section 13.1 and (ii) any requirement that the Purchaser, the holders of all Series of Notes or the Indenture Trustee exhaust any right to take any action against the Servicer or any other person prior to or contemporaneously with proceeding to exercise any right against the Performance Guarantor under this Section 13.1.

Notwithstanding anything to the contrary in any Facility Document, the Performance Guarantor will not ensure the payment of any Note.

# ARTICLE XIV

# ASSIGNMENT

Section 14.1    <u>Assignment</u>.  Notwithstanding anything to the contrary contained in this Purchase Agreement, the Purchaser hereby assigns, conveys, transfers, delivers and sets over unto the Collateral Agent for the benefit of the Secured Parties, all of its right, title and interest in, to and under, whether now owned or existing, or hereafter acquired, this Purchase Agreement.  The Purchaser acknowledges the security interest in the Mortgage Loans of the Collateral Agent as representative secured party for the Secured Parties and the Persons or entities to whom Purchaser owes the obligations secured by such Mortgage Loans.

The Purchaser and the Seller shall each treat the Collateral Agent as the Purchaser under this Purchase Agreement and each consent to such assignment and acknowledge that the Collateral Agent shall enjoy the Purchaser's rights under this Purchase Agreement pursuant to the provisions of this Section 14.1.  Without limiting the generality of the foregoing, the Purchaser and the Seller shall each report to and correspond and communicate with the Collateral Agent and in all other regards treat the Collateral Agent as the purchaser hereunder with respect to the Mortgage Loans.  The Collateral Agent shall have all rights of the Purchaser to enforce the covenants and conditions set forth in this Purchase Agreement with respect to the Mortgage Loans, and the Purchaser and the Seller, respectively, shall each follow the instructions of the Collateral Agent under this Purchase Agreement.  The Collateral Agent shall have the right to give any waivers or consents required or allowed under this Purchase Agreement, and such waivers and consents shall be binding upon the Purchaser and any party for whom the Collateral

Agent acts as representative secured party as if the Purchaser or such party had given the same. All amounts due the Purchaser under this Purchase Agreement shall be remitted to the Collateral Agent in accordance with the Collateral Agent's instructions and in accordance with this Purchase Agreement.

## ARTICLE XV

## COMMITMENT FEE

Section 15.1  <u>Commitment Fee</u>.   In connection with the execution of this Purchase Agreement, and the commitment of the Purchaser to purchase Eligible Loans in an amount equal to the Program Size, the Seller agrees to pay to the Purchaser a fee (such fee, a "<u>Commitment Fee</u>") in the amount of $14,000,000; *provided* that such amount shall at least equal the amount required to be deposited into the Reserve Fund by the Purchaser on the Initial Closing Date pursuant to Section 5.05(a) of the Security Agreement.   In connection with any amendment, modification or supplement to this Purchase Agreement or any other Facility Document or any increase in the Program Size after the date hereof, the Purchaser may condition its agreement to any such amendment, modification or supplement of this Purchase Agreement or any other Facility Document and will condition its agreement to such increase in the Program Size, in each case, upon the payment of an additional Commitment Fee in an amount to be agreed upon at the time of such amendment, modification or supplement of this Purchase Agreement or any other Facility Document or such increase in the Program Size; *provided* that the amount of any additional Commitment Fee payable in connection with any increase in the Program Size after the date hereof shall at least equal the amount required to be deposited into the Reserve Fund by the Purchaser in connection with such increase in the Program Size pursuant to Section 5.05(a) of the Security Agreement.

IN WITNESS WHEREOF, the Seller, the Servicer, the Purchaser and the Performance Guarantor have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

AMERICAN HOME MORTGAGE CORP.,
    as Seller

By: _____
    Name:
    Title:

COLUMBIA NATIONAL, INCORPORATED,
    as Servicer

By: _____
    Name:
    Title:

BROADHOLLOW FUNDING, LLC,
    as Purchaser

By:  American Home Mortgage Corp.,
    as Manager

By: _____
    Name:
    Title:

AMERICAN HOME MORTGAGE
    INVESTMENT CORP., solely in its
    capacity as Performance Guarantor of the
    Servicer's obligations pursuant to Article
    XIII of this Purchase Agreement.

By: _____
    Name:
    Title:

[Mortgage Loan Purchase and Servicing Agreement]

<u>Schedule A</u>

PERFECTION REPRESENTATIONS, WARRANTIES AND COVENANTS

In addition to the representations, warranties and covenants contained in the Mortgage Loan and Purchase Servicing Agreement (the "Purchase Agreement"), to induce the Servicer, the Purchaser and the Performance Guarantor to enter into the Purchase Agreement, the Seller (other than with respect to paragraph 12) and the Servicer (with respect to paragraph 12) hereby represent, warrant, and covenant to the Purchaser, the Servicer and the Performance Guarantor as to itself as follows, on the Initial Closing Date and on each applicable Closing Date thereafter:

<u>General</u>

1.       The Purchase Agreement creates a valid and continuing security interest (as defined in the applicable UCC) in the Mortgage Loans, including the related servicing rights and all collateral related thereto now existing or hereafter arising in favor of the Purchaser, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Seller.

2.       The Mortgage Loans constitute "general intangibles" or "instruments" within the meaning of the UCC as in effect in the State of New York.

<u>Creation</u>

3.       The Seller owns and has good and marketable title to the Mortgage Loans free and clear of any lien, claim or encumbrance of any Person, excepting only liens for taxes, assessments or similar governmental charges or levies incurred in the ordinary course of business that are not yet due and payable or as to which any applicable grace period shall not have expired, or that are being contested in good faith by proper proceedings and for which adequate reserves have been established, but only so long as foreclosure with respect to such a lien is not imminent and the use and value of the property to which the lien attaches is not impaired during the pendency of such proceeding.

4.       The Seller has received or will receive all consents and approvals to the sale of the Mortgage Loans hereunder to the Purchaser required by the terms of the Mortgage Loans that constitute instruments or payment intangibles.

<u>Perfection</u>

5.       The Seller has caused or will have caused, within ten days after the effective date of the Purchase Agreement, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect in accordance with the UCC the sales of Mortgage Loans from the Seller to the Purchaser, and the security interest in the Mortgage Loans granted to the Purchaser hereunder.

Sch. A-1

6.    The Seller has in its possession the original copies of such instruments that constitute or evidence the Mortgage Loans, and the Purchaser has caused or will have caused within ten days of the effective date of the Purchase Agreement, the filing of financing statements against the Purchaser and the Seller in favor of the Secured Parties in connection herewith describing such Mortgage Loans and containing a statement that:  "A purchase of or security interest in any collateral described in this financing statement will violate the rights of the Secured Parties."

Priority

7.    Neither the Seller nor the Purchaser has authorized the filing of, or is aware of any financing statements against either the Seller or the Purchaser that include a description of collateral covering the Mortgage Loans or the Assigned Collateral, respectively, other than any financing statements (i) relating to the sale of Mortgage Loans by the Seller to the Purchaser under the Purchase Agreement or relating to the transfer of the Assigned Collateral from the Purchaser to the Collateral Agent under the Security Agreement, (ii) relating to the security interest granted to Purchaser hereunder or the Collateral Agent pursuant to the Security Agreement, or (iii) that have been terminated.

8.    The Seller is not aware of any judgment, ERISA or tax lien filings against the Seller or Purchaser.

9.    None of the instruments that constitute or evidence the Mortgage Loans has any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Purchaser hereunder or the Collateral Agent pursuant to the Security Agreement.

10.    Survival of Perfection Representations.    Notwithstanding any other provision of the Purchase Agreement or any other Facility Document, the Perfection Representations contained in this Schedule shall be continuing, and remain in full force and effect (notwithstanding any termination of any of the Facility Documents or any replacement of the Servicer or termination of Servicer's rights to act as such) until such time as all Obligations have been finally and fully paid and performed.

11.    No Waiver.  The parties to the Purchase Agreement:  (i) shall not, without obtaining a confirmation of the then-current rating of all outstanding Series of Notes, waive any of the Perfection Representations; and (ii) shall provide the Ratings Agencies with prompt written notice of any breach of the Perfection Representations, and shall not, without obtaining a confirmation of the then-current rating of the all outstanding Series of Notes (as determined after any adjustment or withdrawal of the ratings following notice of such breach) waive a breach of any of the Perfection Representations.

12.    Servicer to Maintain Perfection and Priority.  The Servicer covenants that, in order to evidence the interests of Purchaser and the Collateral Agent under this Purchase Agreement and the Security Agreement, respectively, the Servicer shall take such action, or execute and deliver such instruments (other than effecting a Filing (as defined below), unless such Filing is effected in accordance with this paragraph) as may be necessary or advisable

Sch. A-2

(including, without limitation, such actions as are requested by the Purchaser or the Collateral Agent) to maintain and perfect, as a first priority interest, the Purchaser's security interest in the Mortgage Loans and the Collateral Agent's security interest in the Assigned Collateral.  The Servicer shall, from time to time and within the time limits established by law, prepare and present to the Purchaser and the Collateral Agent for the Purchaser or the Collateral Agent, as applicable, to authorize (based in reliance on the Opinion of Counsel hereinafter provided for) the Servicer to file, all financing statements, amendments, continuations, initial financing statements in lieu of a continuation statement, terminations, partial terminations, releases or partial releases, or any other filings necessary or advisable to continue, maintain and perfect the Purchaser's security interest in the Mortgage Loans as a first-priority interest and the Collateral Agent's security interest in the Assigned Collateral as a first-priority interest (each a "Filing"). The Servicer shall present each such Filing to the Purchaser or the Collateral Agent, as applicable, together with (x) an Opinion of Counsel to the effect that such Filing is (i) consistent with grant of the security interest to the Purchaser pursuant to the granting clause in Section 2.1 (b) of this Purchase Agreement and consistent with the grant of the security interest to the Collateral Agent pursuant to the granting clause of the Security Agreement, (ii) satisfies all requirements and conditions to such Filing in this Purchase Agreement and satisfies all requirements and conditions to such Filing as set forth in the Security Agreement, and (iii) satisfies the requirements for a Filing of such type under the Uniform Commercial Code in the applicable jurisdiction (or if the Uniform Commercial Code does not apply, the applicable statute governing the perfection of security interests), and (y) a form of authorization for the Purchaser's signature or the Collateral Agent's signature, as applicable.  Upon receipt of such Opinion of Counsel and form of authorization, the Purchaser or the Collateral Agent, as applicable, shall promptly authorize in writing the Servicer to, and the Servicer shall, effect such Filing under the Uniform Commercial Code without the signature of the Purchaser or the Collateral Agent, as applicable, where allowed by applicable law.  Notwithstanding anything else in the Facility Documents to the contrary, the Servicer shall not have any authority to effect a Filing without obtaining written authorization from the Purchaser or the Collateral Agent, as applicable, in accordance with this paragraph.

EXHIBIT A

FORM OF TRANSFER SUPPLEMENT

[Date]

[   ]

Purchase Terms Letter

Ladies and Gentlemen:

American Home Mortgage Corp., (the "Company") and Broadhollow Funding, LLC (the "Purchaser") herewith confirm the terms and provisions of the Mortgage Loan Purchase and Servicing Agreement (the "Purchase Agreement") entered into on May 27, 2004 pursuant to which the Company and the Purchaser agreed upon the terms under which the Company would from time to time sell mortgage loans to the Purchaser. In consideration of the promises and the mutual agreements herein and therein set forth, the Company and the Purchaser hereby agree to the terms and provisions of the sale of the Mortgage Loans described in the Mortgage Loan Schedule attached hereto as Exhibit I, as set forth below and as described in more detail in the Purchase Agreement. Upon execution of this Transfer Supplement by the Company and the Purchaser and receipt of the Purchase Price therefor, the Company hereby sells, assigns, transfers, sets over and conveys to the Purchaser all right, title and interest of the Company in, to and under each mortgage loan identified on the attached Transfer Schedule (collectively, the "Mortgage Loans").

    i.    Closing Date:  [_____, _____]  The purchase price shall be paid by the Purchaser to the Company in immediately available funds on such Closing Date.

    ii.    Purchase Price:  The purchase price for the Mortgage Loan(s) shall be $[_____]

    iii.    The Mortgage Loans:  The Mortgage Loans have the characteristics set forth on the Mortgage Loan Schedule, set forth as Exhibit I attached hereto.

    iv.    Representations and Warranties:  Each representation and warranty of the Company set forth in Sections 3.1 and 3.2 of the Purchase Agreement will be true and correct on the Closing Date as they relate to the Mortgage Loans.

    v.    Terms:  All references herein to the Mortgage Loans shall be deemed to refer only to the Mortgage Loans described in the Mortgage Loan Schedule attached hereto.

    vi.    Forward Trade and Forward Whole Loan Trades.  In connection with certain of the Mortgage Loans and as indicated on Exhibit I, the Company has sold, transferred, assigned, set over and conveyed the Forward Trades and/or Forward Whole Loan Trades related to such Mortgage Loans.

vii.   <u>Servicing Rights</u>.   In connection with certain of the Mortgage Loans and as indicated on Exhibit I, the Seller has sold, transferred, assigned, set over and conveyed the servicing rights related to such Mortgage Loans.

Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

Kindly acknowledge your agreement and consent to the terms of this letter by signing and returning to us the enclosed duplicate copy hereof.

Very truly yours,

AMERICAN HOME MORTGAGE CORP.

By: _____
   Name:
   Title:

Date: _____

<u>Exhibit I to Transfer Supplement</u>

<u>Mortgage Loan Schedule</u>

(1)   identifying number for the Mortgage Loan:

(2)   mortgagor's name:

(3)   street address of the mortgaged property including the state code:

(4)   mortgage interest rate:

(5)   stated maturity date:

(6)   amount of monthly payment:

(7)   original principal balance:

(8)   purchase price:

(9)   closing date;

(10)  FHA/VA Case number, if applicable;

(11)  Note date;

(12)  first Due Date; and

(13)  MERS MIN#

EXHIBIT B

FORM OF RATED BIDDER AGREEMENT

[                    ]

[_____], 2004

Broadhollow Funding, LLC
c/o American Home Mortgage Corp.
520 Broadhollow Road (through September 30, 2004)
538 Broadhollow Road (beginning October 1, 2004)
Melville, NY 11747
Attention: Thomas McDonagh
Facsimile Number: 516-949-3942
Telephone Number: 516-622-8960

American Home Mortgage Corp.
520 Broadhollow Road (through September 30, 2004)
538 Broadhollow Road (beginning October 1, 2004)
Melville, NY 11747
Attention: Thomas McDonagh
Facsimile Number: 516-949-3942
Telephone Number: 516-622-8960

Deutsche Bank Trust Company Americas
as Collateral Agent
60 Wall Street
MS NYC60-2606
New York, New York 10005
Attn:  Structured Finance

Dear Sirs:

        Reference is made to the (i) Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004 (the "Mortgage Loan Purchase and Servicing Agreement"), among American Home Mortgage Corp., as seller (the "Seller"), Columbia National, Incorporated, as servicer (the "Servicer"), American Home Mortgage Investment Corp., as performance guarantor, and Broadhollow Funding, LLC, as purchaser (the "Issuer") and (ii) the Base Indenture, dated as of May 27, 2004 (the "Base Indenture"), between the Issuer and Deutsche Bank Trust Company Americas, as indenture trustee, as it may be amended, modified or supplemented from time to time and together with any supplements thereto, modified or supplemented (the ("Indenture").  Capitalized terms used and not defined herein shall have the meanings assigned to such terms in the Mortgage Loan Purchase and Servicing Agreement and the Indenture.

Pursuant to Section 11.2 of the Mortgage Loan Purchase and Servicing Agreement, if a Termination Event set forth in clauses (l) through (o) thereof occurs or, pursuant to Section 9.1 of the Indenture, if an Indenture Event of Default set forth in clause (f), (k), (l), (o), (p), (q) or (r) thereof occurs, the Servicer is required to cause the Collateral Agent to use commercially reasonable efforts to sell or securitize all non-Delinquent Loans and non-Defaulted Loans within thirty (30) days of the date on which such Termination Event or Indenture Event of Default occurred.  In the event that all non-Delinquent Loans and non-Defaulted Loans have not been so sold or securitized, on such thirtieth (30th) day the Collateral Agent shall hold an auction (a "Termination Event Auction") of the remaining non-Delinquent Loans and non-Defaulted Loans for settlement not later than the forty-fifth (45th) day following the date on which such Termination Event or Indenture Event of Default occurred (the "Final Settlement Date").  If a Termination Event described in clause (d), (p) or (q) in Section 11.2 of the Mortgage Loan Purchase Agreement occurs and, as a result of the occurrence of such Termination Event, any Swap Counterparty reasonably believes, in its sole discretion, that there will be a material impairment in the value of the Mortgage Loans, the Servicer shall, at the written request of such Swap Counterparty, use commercially reasonable efforts to sell or securitize all non-Delinquent Loans and non-Defaulted Loans in the manner described in Section 11.2 of the Mortgage Loan Purchase Agreement and, in the event all non-Delinquent and non-Defaulted Loans have not been so sold or securitized, the Collateral Agent shall hold a Termination Event Auction in the manner described in Section 11.2 of the Mortgage Loan Purchase Agreement.  Additionally, pursuant to Section 4.1 of the Mortgage Loan Purchase and Servicing Agreement in the event that any Series of Notes becomes due and payable (a "Repayment Event"), whether pursuant to the terms thereof or by the occurrence of an Indenture Event of Default that results in the acceleration of the maturities of the Notes or Optional Redemption, maturity or otherwise, the Servicer is required to arrange for the sale or securitization of Mortgage Loans at such times and in such manner so that the proceeds of the sale or securitization, together with amounts received by the Issuer in connection with any Interest Rate Swap, are available to pay amounts due and owing on such Notes at any time (each, a "Repayment Date").

In connection with any such Termination Event Auction or Repayment Event [RATED BIDDER] ("Bank"), the Servicer, the Collateral Agent and the Issuer agree as follows:

(a)    With respect to the Termination Event Auction:

(i)    the Bank shall participate in a Termination Event Auction and agrees to make a binding bid (the "Bid") for all Mortgage Loans which, as of the Auction Date, are non-Defaulted Loans or non-Delinquent Loans.  The amount of the Bid shall be determined in the sole discretion of the Bank and such Bid shall remain in effect until the Final Settlement Date; and

(ii)    if the Issuer accepts the Bid, the Issuer shall notify the Bank and the Collateral Agent of such acceptance and the principal balance of Mortgage Loans to be purchased by the Bank (which amount may be all or a portion of the principal balance of the Mortgage Loans) in writing not later than two (2) Business Days prior to the Final Settlement

Exh. B-2

Date.  Any such purchase of Mortgage Loans by the Bank shall be settled on or prior to the Final Settlement Date;

(b)      With respect to any Repayment Event, if requested by the Collateral Agent;

(i)      the Bank agrees to make a Bid for the Mortgage Loans specified by the Collateral Agent which, as of the Bid date, are non-Defaulted Loans or non-Delinquent Loans.  The amount of the Bid shall be determined in the sole discretion of the Bank and such Bid shall remain in effect until such Repayment Date; and

(ii)      if the Issuer accepts the Bid, the Issuer shall notify the Bank and the Collateral Agent of such acceptance and the principal balance of Mortgage Loans to be purchased by the Bank (which amount may be all or a portion of the principal balance of the Mortgage Loans) in writing on or prior to such Repayment Date.  Any such purchase of Mortgage Loans by the Bank shall be settled on or prior to such Repayment Date.

In consideration of the above agreement, the Issuer shall pay the Bank such fee as shall be separately agreed between the Issuer and the Bank.

This Agreement shall remain in full force and effect until all the Notes have been paid in full.  This Agreement and the Bank's rights and obligations hereunder may not be assigned or otherwise transferred by the Bank, whether by operation of law or otherwise, unless (i) the Issuer, the Servicer and the Collateral Agent consent in writing to such assignment, (ii) the assignee has expressly assumed the obligations of the Bank hereunder by written instrument in form and substance satisfactory to the Issuer, the Servicer and the Collateral Agent and (iii) Rating Agency Confirmation with respect to such assignment has been received by the Issuer.

This agreement shall be governed by the internal laws of the State of New York and may be executed in counterparts.

Very truly yours,

[RATED BIDDER]

By: _____
      Name:
      Title:

Accepted and Agreed as of the date written above:


BROADHOLLOW FUNDING, LLC


By:  American Home Mortgage Corp.,
      as Manager


By:_____
      Name:
      Title:


AMERICAN HOME MORTGAGE CORP.,


By:_____
      Name:
      Title:


DEUTSCHE BANK TRUST COMPANY AMERICAS,
      as Collateral Agent


By:_____
      Name:
      Title:

EXHIBIT C

FORM OF SERVICER REPORT

Broadhollow Funding, LLC,
    as Purchaser
American Home Mortgage Corp.,
    as Manager
Deutsche Bank Trust Company Americas,
    as Collateral Agent and as Indenture Trustee
The Short Term Note Dealers

Re:          Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004, by and among Broadhollow Funding, LLC, American Home Mortgage Corp., Columbia National, Incorporated and American Home Mortgage Investment Corp., (the "Mortgage Loan Purchase and Servicing Agreement"). Capitalized terms used herein shall have the meanings assigned to such terms in the Mortgage Loan Purchase and Servicing Agreement.

          Pursuant to Section 4.18 of the Mortgage Loan Purchase and Servicing Agreement, the Servicer hereby delivers the Servicer Report attached hereto as Schedule 1 for the [ ] 20, [-] Distribution Date.

          Pursuant to Section 4.6(f) of the Mortgage Loan Purchase and Servicing Agreement and by the delivery of this Servicer Report, the Servicer hereby requests the Collateral Agent to withdraw funds from the Collateral Account in an amount equal to the Servicing Fee pursuant to Section 6.3 of the Mortgage Loan Purchase and Servicing Agreement. The Servicing Fee shall be paid in the method and manner specified in the Security Agreement.

          COLUMBIA NATIONAL, INCORPORATED,
            as Servicer


          By: _____
            Name:
            Title:

SCHEDULE 1
SERVICER REPORT

Columbia National, Incorporated
as Servicer for Broadhollow Funding, LLC

Monthly Accounting and Reconciliating Report
Report Date
_____, _____

**ACTUAL**

| Section I – Pool Data | # of Loans | Principal | Interest |
|---|---|---|---|
| A.  Prior Month's Ending Pool Balance | | | |
| B.  New Loans Added | + | | |
| C.  New Loans Adjustments (Increase/Decrease Principal) | | | |
| D.  Loans Repurchased | - | | |
| E.  Loans Sold | - | | |
| F.  Loans Paid in Full | - | | |
| G.  Installment Collections | | | |
| H.  Curtailments | | | |
| I.  Adjustments (Increase/Decrease Principal) | | | |
| J.  Adjustments (Increase/Decrease Principal) | | | |
| **K.  Ending Pool Balance** | **=** | **$** | **$** |

| Section II – Remittance Data | | Remittance |
|---|---|---|
| A.  Scheduled Principal | | |
| B.  Curtailments | | + |
| C.  Principal Remittance | | = $ |
| D.  Interest Remittance | | + |
| E.  Interest Adjustments | | + |
| F.  Adjustments | | + |
| **G.  Total Remittance Amount** | | **$** |

| Section III – Financial Data re: Servicer | |
|---|---|
| A.  Tangible Net Worth | |
| B.  Consolidated Net Income During Previous Two Quarter-Period | |
| C.  Liquidity | |

EXHIBIT D

FORM OF SERVICER ADVANCE REPORT

Deutsche Bank Trust Company Americas
60 Wall Street
MS NYC60-2606
New York, New York 10005

Re:         Mortgage Loan Purchase and Servicing Agreement, dated as of May 27, 2004, by
            and among Broadhollow Funding, LLC, American Home Mortgage Corp. and
            American Home Mortgage Investment Corp. (the "Mortgage Loan Purchase and
            Service Agreement").  Capitalized terms used herein shall have the meanings
            assigned to such terms in the Mortgage Loan Purchase and Servicing Agreement.

            Pursuant to Section 4.22 of the Mortgage Loan Purchase and Servicing
Agreement, the Servicer hereby delivers the Servicer Advance Report.  Attached Schedule 1
details the Servicer Advances made by the Servicer pursuant to Section 4.9 of the Mortgage
Loan Purchase and Servicing Agreement.  Attached Schedule 2 details the Servicer Monthly
Advances made pursuant to Section 5.1 of the Mortgage Loan Purchase and Servicing
Agreement.

            Pursuant to Section 4.6(e) of the Mortgage Loan Purchase and Servicing
Agreement and by the delivery of this Servicer Advance Report, the Servicer hereby requests the
Collateral Agent to withdraw funds from the Collection Account to reimburse the Servicer for
Servicer Monthly Advances made pursuant to Section 5.1 of the Mortgage Purchase and
Servicing Agreement and for each Servicing Advance made pursuant to Section 4.9 of the
Mortgage Loan Purchase and Servicing Agreement.

                                    COLUMBIA NATIONAL, INCORPORATED,
                                        as Servicer


                                    By:_____
                                        Name:
                                        Title:

**SCHEDULE 1**

(Servicing Advances)

Exh. D-2

**SCHEDULE 2**

(Servicer Monthly Advances)

Exh. E-3