IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------ x
                                                  :   Chapter 11
In re:                                            :
                                                  :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC.,            :
a Delaware corporation, et al.,                   :
                                                  :   Jointly Administered
      Debtors.                                    :
                                                  :   Ref. Docket No. 1491
                                                  :   Hearing Date: October 31, 2007 at 10:00 a.m. (ET)
------------------------------------------------ x
```

**DEBTORS' OBJECTION TO MOTION FOR DISCLOSURE
UNDER U.S.C. § 363, § 1106, AND BANKRUPTCY RULE 2004, DIRECTING
EXAMINATION OF, AND PRODUCTION OF DOCUMENTS BY DEBTORS AND
COMPLAINT FOR INJUNCTION AND PROTECTION OF TAX ESCROW
ACCOUNTS AND REQUEST FOR APPOINTMENT OF CONSUMER PRIVACY
OMBUDSMAN PURSUANT TO U.S.C. § 332 AND TRUSTEE OR EXAMINER
<u>PURSUANT TO U.S.C. § 1104 FILED BY LAURA BEALL</u>**

American Home Mortgage Holdings, Inc. ("<u>AHM Holdings</u>"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "<u>AHM</u>" or the "<u>Debtors</u>"),[1] hereby file this

objection (the "<u>Objection</u>") to the *Motion for Disclosure Under U.S.C. § 363, § 1106, and*

*Bankruptcy Rule 2004, Directing Examination of, and Production of Documents By Debtors and*

*Complaint for Injunction and Protection of Tax Escrow Accounts and Request for Appointment*

*of Consumer Privacy Ombudsman Pursuant to U.S.C. § 332 and Trustee or Examiner Pursuant*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("<u>AHM Investment</u>"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("<u>AHM Acceptance</u>"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("<u>AHM Servicing</u>"), a Maryland corporation (7267); American Home Mortgage Corp. ("<u>AHM Corp.</u>"), a New York corporation (1558); American Home Mortgage Ventures LLC ("<u>AHM Ventures</u>"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("<u>Homegate</u>"), a New York corporation (7491); and Great Oak Abstract Corp. ("<u>Great Oak</u>"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

*to U.S.C. § 1104* [Docket No. 1491] (the "Motion") filed by Laura Beall (the "Movant"), *pro se.*

In support of such Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Simply stated, it appears as if the Movant has filed the Motion because she is dissatisfied with her mortgage, and despite having alternative means by which to obtain relief,[2] has decided to appear before this Court in search of assistance. The Debtors do not own the Movant's loan, as her loan is owned by a third party securitization trust. The Debtors, however, continue to service the loan with high quality through their fully staffed servicing business. Although not without sympathy for the Movant's situation, the Debtors submit that the relief sought by the Movant should be denied because it is either moot, or wholly unsupported by the facts set forth in the Motion.

2.      Although the relief the Movant is seeking is somewhat unclear, as set forth in the Motion's title, it appears as if the Movant is requesting that this Court order: (i) an examination of, and production of documents by, the Debtors pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Request"); (ii) the appointment of a trustee or examiner pursuant to section 1104 of the Bankruptcy Code; (iii) the appointment of a consumer privacy ombudsman pursuant to section 363 of the Bankruptcy Code; and (iv) certain injunctive relief. The Debtors respectfully submit that all relief requested in the Motion should be denied.

3.      The Rule 2004 Request should be denied because it is now moot. The Debtors have take every reasonable step to ensure that they have provided the Movant with all information, which is in their possession or control, regarding the Movant or her mortgage that they are permitted to provide. Moreover, the Movant's request that this Court appoint a trustee

---

[2] The Debtors maintain a loss mitigation department to assist mortgagors who are having difficulties making mortgage payments, and the Debtors would be happy to provide such assistance to the Movant.

DB02:6318597.4                                                                                              066585.1001

or examiner should be denied because the Motion fails to advance any facts that indicate the appointment of such trustee or examiner is necessary, or in the best interests of the estates. The Movant's request for the appointment of a consumer privacy ombudsman should also be denied because, with respect to all sales that have taken place thus far in these cases, and may take place in the future, the Debtors have rigorously complied, or will comply, with their privacy policies. Finally, the Movant's request for injunctive relief should be denied because the request is procedurally improper.

## BACKGROUND

4.      As set forth in greater detail in the Motion, the Movant is a mortgagor with respect to a mortgage originated by AHM Corp., and serviced by AHM Servicing. Motion at p. 2.

5.      In August 2007, the Movant sent the Debtors a qualified written request pursuant to the Real Estate Settlement and Procedures Act ("RESPA"). Motion at p. 3. In the Motion, the Movant alleges that she was informed by the Debtors that they did not receive her response and, moreover, were not obligated to respond due to their chapter 11 filing. Id. at p. 3-4. Despite the Movant's assertions to the contrary, the Debtors did receive the Movant's request, and promptly responded on September 13, 2007, thereby notifying the Movant that her correspondence had been received and that a response was forthcoming. A copy of this correspondence is attached hereto as Exhibit A.

6.      On September 26, 2007, less than two weeks later, the Debtors responded to the Movant's request, and provided, among other things, the following information: (i) the amount of the unpaid principal balance on the loan; (ii) the amount due on the Movant's account, including late charges; (iii) a copy of the Movant's complete payment history; (iv) a copy of the

3

Hud-1; (v) copies of the current and previous escrow account disclosure statements; (vi) a copy of the Movant's Note Agreement; (vii) a copy of the Movant's Truth in Lending statement; (viii) a copy of the Deed of Trust; and (ix) a notification that, on July 20, 2007, an escrow analysis had been performed on the Movant's account, and effective as of the September 1, 2007 payment, the Movant's monthly payment was adjusted to $4,447.31. A copy of this correspondence is attached hereto as Exhibit B.

7.    After the filing of the Motion, the Debtors took all reasonable steps to provide the Movant with all information in their custody or control that is relevant to the Movant or the Movant's mortgage that they are permitted to provide.

## ARGUMENT

**A.    The Movant Has Failed to Establish "Good Cause" to Compel Disclosure Under Bankruptcy Rule 2004.**

8.    The Debtors submit that the Court should not compel disclosure pursuant to Bankruptcy Rule 2004, because they have taken every reasonable step to ensure that they have provided the Movant with all information, which is in their possession or control, regarding the Movant or her mortgage that they are permitted to provide.[3]

9.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. Proc. 2004(a). (emphasis added). While it is often said that the scope of a Rule 2004 examination is "unfettered and broad," it is well recognized that Rule 2004 is not without limits. See, e.g., In re Duratech Indus., Inc., 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) (stating that "[h]owever vigorous and broad discovery may be under a Rule 2004 examination, there are well-established limits even to

---

[3] The Debtors are not permitted to provide the Movant with any third party propriety information, including, but not limited to credit report information and desktop underwriting findings. Moreover, the Debtors have not provided the Movant with any information protected by the attorney-client privilege or the attorney-work product doctrine.

4

this free-and-easy practice"); In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex.

1998) (providing that "[a]lthough the scope of a Rule 2004 examination is very broad, there are

important limits to the scope of the examination"); In re Texaco Inc., 79 B.R. 551, 553 (Bankr.

S.D.N.Y. 1987) (stating that "the scope of the [Rule 2004] examination is not limitless").

10.    Subpart (b) of Bankruptcy Rule 2004 limits the scope of an examination of

a debtor to:

> [T]he acts, conduct, or property or to the liabilities and financial
> condition of the debtor, or to any matter which may affect the
> administration of the debtor's estate, or to the debtor's right to a
> discharge. In a . . . reorganization under chapter 11 of the Code, . .
> . the examination may also relate to the operation of any business
> and the desirability of its continuance, the source of any money or
> property acquired or to be acquired by the debtor for purposes of
> consummating a plan and the consideration given or offered
> therefor, and any other matter relevant to the case or to the
> formulation of a plan.

Fed. R. Bankr. Proc. 2004(b).

11.    A Rule 2004 examination may not be used for purposes of abuse or

harassment and should not "stray into matters which are not relevant to the basic inquiry." In re

Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). See also Duratech, 241 B.R. at 296 (noting

that "case law is replete with holdings that resort to Rule 2004 cannot include discovery

conducted in bad faith or for improper purposes"). "[T]he examination should not be so broad as

to be more disruptive and costly to the debtor than beneficial to the creditor." Texaco, 79 B.R. at

553; see also In re Drexel Burnham Lambert Group, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)

("Rule 2004 requires that we balance the competing interests of the parties, weighing the

relevance of and necessity of the information sought by examination."); Express One, 217 B.R.

at 217 ("[I]f the cost and disruption to the examinee outweigh the benefits to the examiner, the

request [for a Rule 2004 examination] should be denied.") (citing In re Eagle-Picher Indus., Inc.,

169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)).  The required discovery "should not encompass matters that will be unduly burdensome to the debtor and duplicative of previously furnished information or will not be required in order to evaluate or propose a plan of reorganization." Texaco, 79 B.R. at 553.

12.   The burden is on the Movant to establish "good cause" for the Rule 2004 examination.  See Express One, 217 B.R. at 217; Eagle-Picher, 169 B.R. at 134 (Bankr. S.D. Ohio 1994) (finding that "the one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks"); Drexel Burnham, 123 B.R. at 712 (finding that the "burden of showing good cause is an affirmative one").  "Good cause," in this context, generally "requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue hardship or injustice." Express One, 217 B.R. at 217 (citing In re Dinubilo, 177 B.R. 932, 943 (E.D. Ca. 1994)).  A movant that has made no showing of necessity should not be permitted to use Rule 2004 to search out claims against a debtor.  In re Cont'l Forge Co., Inc., 73 B.R. 1005, 1006 (Bankr. W.D. Pa. 1987) (ruling that Rule 2004 may not "be used as a vehicle for gathering confidential information for which no reasonable need is shown.").  In order to meet the high production standard of Rule 2004, a movant must show that the documents sought are more than merely relevant to his or her claim.  Drexel Burnham, 123 B.R. at 712 ("That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.").  Furthermore, "where the information purportedly sought is either already well-known or within the would-be examiner's possession," courts may find that the "good cause" requirement is not satisfied.  See In re Symington, 209 B.R. 678, 687-88 (Bankr. D. Md. 1997).

13.    The Motion fails to establish "good cause" to compel disclosure under Rule 2004 because, after the filing of the Motion, the Debtors took every reasonable step to ensure that they provided the Movant with all information in their possession or control regarding the Movant or her mortgage responsive to her "discovery requests" (with the exception of her credit report and related automated underwriting reports, which are proprietary to third parties, and any items protected by the attorney-client privilege or the attorney-work product doctrine).  Moreover, as described in detail above, prior to the filing of the Motion, in response to the Movant's RESPA qualified written request, the Debtors provided the Movant with a wealth of information relating to the Movant and her mortgage; complying with their RESPA obligations.[4]

---

[4] RESPA provides that:

> Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)

066585.1001

**B.     The Movant Has Introduced No Evidence Demonstrating the Need for the Appointment of a Trustee or Examiner.**

14.     The United States Court of Appeals for the Third Circuit has held that the appointment of a chapter 11 trustee is an extraordinary remedy that is the exception, and not the rule. See In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3d Cir. 1989). This is a result of a fundamental principle governing chapter 11 cases – that a debtor must be afforded an opportunity for a fresh start, and the opportunity to analyze and correct, to the extent required, existing operations. See, e.g., H.R. Rep. No. 595, 95th Cong., 1st Sess. 220 (1977) reprinted in 1978 U.S.C.C.A.N. 5787; see also Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 240-41 (4th Cir. 1987) (the policy behind chapter 11 is to afford a second chance to debtors).

15.     In complete accord with this principle is the tenet that a debtor should be permitted to continue operation of its business during the period in which the reorganization is pending. It is well-settled in this jurisdiction that a strong presumption exists in chapter 11 cases that the debtor should continue in control and possession of the business. See Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 385 F.3d 313, 320 (3d Cir. 2004); see also In re Marvel Entm't Group, Inc., Civ. A. No. 97-638-RRM (D. Del. Dec. 16, 1997), slip op. at 9-10 (citing In re Aardvark, Inc., 1997 WL 129346 at *3 (D. Del. Mar. 4, 1997)); In re Sharon Steel Corp., 871 F.2d at 1225. This strong presumption "finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations" during the bankruptcy case. See In re Marvel Entm't Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998) (citing In re Sharon Steel Corp., 871 F.2d at 1226). Similarly, the court in In re Stein & Day, Inc., 87 B.R. 290, 294 (Bankr. S.D.N.Y. 1988), stated that:

8

the appointment of a trustee in a chapter 11 case is not the usual procedure because 11 U.S.C. § 1108 contemplates that the debtor will continue to manage its property and operate its business. The court must weigh all of the factors and interests carefully because the appointment of a trustee is an extraordinary remedy which will cause additional expense to the estate.

16.    Because Congress intended the appointment of a chapter 11 trustee to be an extraordinary remedy, section 1104(a) of the Bankruptcy Code provides for the appointment of a trustee under only very limited circumstances, including:

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; [or]

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a). The Movant has failed to satisfy either standard, and therefore the request for the appointment of a trustee should be denied.

i.    **The Movant has failed to satisfy the requirement of Section 1104(a)(1) for the appointment of a trustee.**

17.    The facts set forth in the Motion clearly do not establish the type of egregious wrongdoing or managerial gross negligence required to establish "cause" under section 1104(a)(1). "'Since one would expect to find some degree of incompetence or mismanagement in most businesses which have been forced to seek the protection of chapter 11, the Court must find something more aggravated than simple mismanagement in order to appoint a trustee.'" Schuster v. Dragone (In re Dragone), 266 B.R. 268, 272 (D. Conn. 2001) (quoting In re Clinton Centrifuge, Inc., 85 B.R. 980, 983-84 (Bankr. E.D. Pa. 1988); Midatlantic Nat'l Bank v. Anchorage Boat Sales, Inc., 4 B.R. 635, 644-45 (Bankr. E.D.N.Y. 1980)); see also In re Gen.

9

Oil Distribs. Inc., 42 B.R. 402, 409 (Bankr. E.D.N.Y. 1984) ("'The language of subsection (a)(1) represents tacit recognition that some degree of mismanagement exists in virtually every insolvency case.'") (citation omitted).

18.    "Cause" under section 1104(a)(1) is reserved for cases in which clear and convincing evidence has been adduced from the most egregious fraudulent, dishonest, or negligent conduct on the part of a debtor's management. See, e.g., In re Sharon Steel Corp., 871 F.2d at 1228 (engaging in a systematic siphoning of the debtor's assets, removing property of the estate and executing improper or preferential transfers on the eve of filing); In re PRS Ins. Group, Inc., 274 B.R. 381, 385-86 (Bankr. D. Del. 2001) (diversion of almost $3.5 million for personal use of debtor's president, including almost $1.4 million to purchase or construct a home; $150,000 for his daughter's wedding; $90,000 for his wife and $70,000 for his children's tuition); In re N. Star Contracting Corp., 128 B.R. 66, 70 (Bankr. S.D.N.Y. 1991) (failure to maintain complete and accurate financial records combined with unsubstantiated and undocumented transactions).

19.    The Motion falls far short of presenting clear and convincing evidence that "cause" exists for the appointment of a trustee. In fact, the Movant's request for the appointment of a trustee is almost entirely unsupported; containing only several allegations regarding the Movant's personal experiences, which simply cannot be construed as presenting clear and convincing evidence of fraud, misconduct or gross mismanagement of the business. The Movant's inability to point to any legitimate basis for "cause" is fatal to her request.

20.    Ultimately, nowhere in the Motion does the Movant present any evidence that supports a finding of mismanagement or misconduct by the Debtors' current management

DB02:6318597.4                                                                                    066585.1001

team. Accordingly, the Movant's request to appoint a trustee under section 1104(a)(1) should be denied.

      ii.      **The Movant has failed to satisfy the requirement of Section 1104(a)(2) for the appointment of a trustee.**

      21.      Section 1104(a)(2) of the Bankruptcy Code permits a court to order the appointment of a trustee in chapter 11 cases if—and only if—such appointment is in the best interests of the debtor's estate (including the interest of the debtor itself), its creditors, and its equity security holders. See In re Sletteland, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001). The inquiry under section 1104(a)(2) is a cost-benefit analysis that balances the time and expense attendant to the appointment of a trustee against the potential benefits to be gained by the estate and other constituencies from the appointment. See In re Stein & Day, Inc., 87 B.R. 290, 295 (Bankr. S.D.N.Y. 1988). Where costs exceed benefits, a trustee is not in the best interests of the estate, creditors, and equity security holders. See In re Sovereign Estates, Ltd., 104 B.R. 702, 705 (Bankr. E.D. Pa. 1989) ("[T]he court 'may order appointment [of a trustee] *only* if the protection afforded by a trustee is needed and the costs and expenses of a trustee would not be disproportionately higher than the value of the protection afforded . . . .'") (citations omitted) (emphasis added).

      22.      The "best interests" test of section 1104(a)(2) is *not* a "catch-all" provision for the appointment of a trustee when "cause" cannot be established. See 7 Lawrence P. King, Collier on Bankruptcy § 1104.02[3][d][iii], at 1104-17 (15th ed. rev. 2002) ("Few situations come to mind in which grounds will exist for the appointment of a trustee under subsection (a)(2) although 'cause' for such appointment does not exist under subsection (a)(i)."). Thus, although the debtor's conduct need not fit precisely into the parameters for fraud, dishonesty, incompetence, or gross mismanagement, the movant's burden of proof continues to be high, and

11

mere unspecific allegations will not suffice.  See, e.g., In re Sletteland, 260 B.R. at 672 ("Under

these provisions, a creditor group, no matter how dominant, cannot justify the appointment of a

trustee or examiner simply by alleging that it would be in its interests.  It must show that the

appointment is in the interests of *all* those with a stake in the estate.") (emphasis added); see also

In re Sharon Steel, 871 F.2d at 1226 (noting that under both subsections, "[t]he movant . . . must

prove the need for a trustee by clear and convincing evidence").

  23. Despite the fact that it is the Movant's burden to establish the necessity for

the appointment of a trustee, nowhere in the Motion does the Movant explain how the best

interests of the Debtors' estates and their creditors are served by the appointment of a trustee.  To

the contrary, the appointment of a trustee here would not serve the best interests of the Debtors'

estates or creditors for several reasons.  First, the appointment of a trustee at this point in the

cases would displace current management at a critical juncture, when the Debtors are in the

process of consummating certain asset sales, and preparing for additional ones.  Second, the

removal of the current management team at such a sensitive time would result in delays that

would diminish the value received for assets, thereby resulting in the depletion of potential

creditor recoveries.  Third, the appointment of a trustee, the expenses associated with the

trustee's professionals, and the delay required for the trustee to "get up to speed" would add

additional—and indeed unnecessary—expenses to these cases.  See, e.g., In re N. Star

Contracting, 128 B.R. at 70 ("[C]osts of trustee will only burden this estate with additional

administrative expenses and will not be in the best interests of creditors"); Schuster, 266 B.R. at

271; In re Stein & Day, 87 B.R. at 295; see also In re F.A. Potts & Co., 20 B.R. 3, 7 (Bankr. E.D.

Pa. 1981) ("[E]xpense of a trustee is not to be lightly thrust upon a struggling corporation.").

Finally, to assist their management team during the pendency of these cases, the Debtors have

DB02:6318597.4

066585.1001

already engaged Kroll Zolfo Cooper to provide to them with the services of a chief restructuring officer, director of restructuring, and the services of other professional staff to serve as associate directors of restructuring.

24.    The Debtors submit that in these particular cases it is clearly not in the best interests of the estates and creditors to appoint a trustee. Accordingly, the Movant's request to appoint a trustee under section 1104(a)(2) should be denied.

### iii.    The Movant has failed to satisfy the requirements of Section 1104(c) for the appointment of an examiner.

25.    The Movant also seeks, apparently in the alternative, the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code. Section 1104(c) of the Bankruptcy Code provides:

> (c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has long recognized that the appointment of an examiner is not mandatory under section 1104(c)(2). In In re SA Telecommunications, Inc., Case Nos. 97-2395-2401 (PJW) (Bankr. D. Del. Mar. 27, 1998), the Bankruptcy Court denied the U.S. Trustee's motion for the appointment of an examiner. In doing so, Judge Walsh stated that his "view is that [1104](c)(2) is not mandatory"

13

and found that the appointment of an examiner would not be in the best interests of creditors. Id. Transcript of Hearing Held March 27, 1998; pp. 23:15-18; 81:19-21; 82:21-22, a copy of the cited pages are attached hereto as Exhibit C; accord In re Webcraft Techs., Inc. et. al., Case No. 93-1210 (HSB) (Bankr. D. Del. Nov. 4, 1993) (stating that appointment of an examiner is not mandatory even where $5 million debt threshold is satisfied). See also In re Rutenberg, 158 B.R. 230, 233 (Bankr. M.D. Fla. 1993) (denying appointment of examiner where it would "cause further delay in the administration" of the case); In re GHR Cos., Inc., 43 B.R. 165, 171, 175-76 (Bankr. D. Mass. 1984) (denying appointment of an examiner because of costs); In re Shelter Res. Corp., 35 B.R. 304-05 (Bankr. N.D. Ohio 1983) (stating that courts do not have to "slavishly and blindly follow so-called mandatory dictates of Section 1104(b)(2)").

26.    For the reasons discussed above, the appointment of an examiner here would not serve the best interests of the Debtors' estates. Moreover, the Movant has not introduced any evidence, nor does any evidence exist, that indicates the appointment of an examiner is in the best interests of the Debtors' creditors.

## C.    The Appointment of a Consumer Privacy Ombudsman is Not Merited in These Cases.

27.    The Movant's request to appoint a consumer privacy ombudsman in these cases should be denied because, with respect to all sales that have already taken place in these cases, and may take place in the future, the Debtors have rigorously complied, and will continue to comply, with their privacy policies.

28.    Section 363(b)(1) provides that a debtor may use, sell or lease, other than in the ordinary course of business, property of the estate,

> except that if the debtor, in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons

that are not affiliated with the debtor and if such policy is in effect
on the date of the commencement of the case, then the trustee may
not sell or lease personally identifiable information to any person
unless –

> (A) such sale or such lease is consistent with such policy;
> or

> (B) after appointment of a consumer privacy ombudsman in
> accordance with section 332, and after notice and a hearing,
> the court approves such sale or such lease –

>> (i) giving due consideration to the facts,
>> circumstances, and conditions of such sale or such
>> lease; and

>> (ii) finding that no showing was made that such sale
>> or such lease would violate applicable
>> nonbankruptcy law.

11 U.S.C. § 363(b)(1).  Section 332, referenced above, states as follows:

> If a hearing is required under section 363(b)(1)(B), the court shall
> order the United States trustee to appoint, not later than 5 days
> before the commencement of the hearing, 1 disinterested person
> (other than the United States trustee) to serve as the consumer
> privacy ombudsman in the case and shall require that notice of
> such hearing be timely given to such ombudsman.

11 U.S.C. § 332(a).

29.    A consumer privacy ombudsman should not be appointed as a matter of
course whenever a creditor requests.  For example, with the consent of all parties, Judge Shannon
appointed a consumer privacy ombudsman in In re Three A's Holdings, LLC, Case No. 06-
10886 (BLS), Docket No. 189 (Bankr. D. Del. Sept. 11, 2006).  In a September 6, 2006 hearing
to consider the issue, Judge Shannon stated, "As I understand it, under § 332, I direct [the U.S.
Trustee] to appoint one.  That's similar to an examiner process."  Id., Transcript of Hearing Held
on September 6, 2006; p. 11:16-20, a copy of the cited pages are attached hereto as Exhibit D.
Judge Shannon's statement makes it clear that a consumer privacy ombudsman is appointed in

15

the court's discretion. As it is clear that there are no statutory grounds for the appointment of an ombudsman in these cases, the Court should deny the Movant's request.

30.    The Debtors maintained various privacy policies prior to the filing of these cases and, in fact, had an entire department devoted to privacy compliance. Thus, pursuant to sections 332 and 363 of the Bankruptcy Code, to the extent that the Debtors sell personally identifiable information, (i) such sale must be consistent with the Debtors' privacy policies or (ii) this Court must appoint a consumer privacy ombudsman.

31.    Because the Debtors are in the process of liquidating substantially all of their assets, and will eventually be winding down their businesses, these cases have been, and will continue to be, a series of asset sales. With respect to each sale, the Debtors have taken every measure to ensure that all their privacy policies are followed. Further, the Debtors will continue to adhere to their privacy policies for the additional sales that are expected to occur in these cases going forward. Indeed, at the Court's request, at the August 20, 2007 omnibus hearing, the Debtors made a presentation to the Court regarding the assurance that all sales would be in compliance with their privacy policies, and that as a result, the appointment of a consumer privacy ombudsman was unnecessary. See In re American Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS), Transcript of Hearing Held on August 20, 2007; pp. 3:20-5:15, a copy of the cited pages are attached hereto as Exhibit E. This conclusion was neither questioned by the Court, nor the office of the United States Trustee. Id. at p. 5:10-15.

32.    Accordingly, the Debtors submit that the appointment of a consumer privacy ombudsman is not necessary in these cases.

066585.1001

**D.    The Movant's Request for an Injunction and Protection of Tax Escrow Accounts Must be Denied, For Among Other Reasons, Because the Request is Procedurally Improper.**

33.    Finally, based upon the title of the Motion, the Movant also apparently seeks "[an] injunction and protection of tax escrow accounts." Motion at p. 1.  Initially, it is important to note that the Movant has no standing to speak on behalf of borrowers other than herself.  Moreover, Movant presents no basis for the type of injunctive relief she is seeking. Indeed, Movant's request is extremely overbroad, unnecessary, and would be highly prejudicial to the Debtors and their creditors if granted.  More fundamentally, the Movant's request is procedurally defective because the Movant has failed to commence an adversary proceeding, as required by Bankruptcy Rule 7001(7).  Accordingly, the Movant's request should be denied.

34.    Bankruptcy Rule 7001(7) provides that an adversary proceeding is necessary "to obtain an injunction or other equitable relief." Fed. R. Bankr. Proc. 7001(7); see also Balt. County Md. v. IHS Liquidating LLC (In re Integrated Health Servs.), Case No. 00-389-MFW, 2006 U.S. Dist. LEXIS 8403, at *9 (D. Del. March 6, 2006) ("One type of bankruptcy dispute that must be resolved in an adversary proceeding is 'a proceeding to obtain an injunction.'"); MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Commc'ns, Inc.), 262 B.R. 893, 899 (D. Del. 2001) (failure to file the required adversary proceeding was alone sufficient reason for the Bankruptcy Court to deny the movant's request for injunctive relief); In re Cont'l Airlines, Inc., 236 B.R. 318, 326-27 (Bankr. D. Del. 1999) (stating that a request for injunctive relief by motion is procedurally defective, and that a proceeding to obtain injunctive relief must be commenced as an adversary proceeding).

35.    The Movant is essentially requesting that this Court issue an injunction against *all* tax escrow accounts.  However, as described in detail above, Bankruptcy Rule

17

7001(7) requires a party seeking injunctive relief to commence an adversary proceeding. Here, the Movant has failed to commence an adversary proceeding, and instead, simply seeks injunctive relief by way of a motion. As such, the Movant's request is procedurally defective, and for that reason, as well as many other reasons, the Movant's request for injunctive relief should be denied.

## RESERVATION OF RIGHTS

36.    The Debtors have endeavored to respond to all the arguments and requests for relief that the Movant has asserted in her Motion. The Motion more or less articulates that the Movant seeks: (i) the production and examination of documents pursuant to Bankruptcy Rule 2004; (ii) the appointment of a trustee or examiner pursuant to section 1104 of the Bankruptcy Code; (iii) the appointment of a consumer privacy ombudsman pursuant to section 363 of the Bankruptcy Code; and (iv) certain injunctive relief. However, the only relief outlined in the proposed form of order attached to the Motion is with regard to the Rule 2004 Request. The Debtors are mindful of the fact that the Movant is appearing before this Court *pro se*. The Movant's decision to represent herself, however, should not force the Debtors to embark on a scavenger hunt to locate the relief the Movant is seeking. Thus, to the extent the Movant is seeking additional relief, the Debtors reserve the right to amend, modify, or supplement this Objection, to file a reply to any response thereto, and to file additional objections to the relief sought in the Motion based upon information obtained from the Movant or subsequent developments in this dispute.

066585.1001

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order

denying the Motion and granting the Debtors such other and further relief as is just and proper.


Dated:      Wilmington, Delaware
            October 24,  2007


                    YOUNG CONAWAY STARGATT & TAYLOR, LLP


                    James L. Patton, Jr. (No. 2202)
                    Pauline K. Morgan (No. 3650)
                    Sean M. Beach (No. 4070)
                    Matthew B. Lunn (No. 4119)
                    Kara Hammond Coyle (No. 4410)
                    Kenneth J. Enos (No. 4544)
                    The Brandywine Building
                    1000 West Street, 17th Floor
                    Wilmington, Delaware 19801
                    Telephone: (302) 571-6600
                    Facsimile: (302) 571-1253

                    Counsel for Debtors and Debtors in Possession

DB02:6318597.4                                              066585.1001

# EXHIBIT A



**American Home Mortgage Servicing**

D.I.P.

September 13, 2007

Laura Beall
11002 Blue Roan Road
Oakton, VA 22124

Re: American Home Mortgage Loan Number 1000570969

Dear Valued Customer,

Thank you for your recent correspondence regarding the above referenced loan.

This letter will serve as acknowledgement that the Customer Care Research Department within American Home Mortgage Servicing, Inc. has received your correspondence regarding the above referenced account.

We will be reviewing your correspondence and will provide a response to you shortly. Should you have any questions or concerns in the meantime, please feel free to contact us toll free at 877-304-3100.

Respectfully,

Loan Administration Research
American Home Mortgage Servicing, Inc.

# EXHIBIT B

 **American Home Mortgage Servicing**

D.I.P.

September 26, 2007

Laura Beall
11002 Blue Roan Road
Oakton, VA 22124

RE: American Home Mortgage Loan Number 1000570969

Dear Laura Beall:

This letter is in reference to the correspondence received and forwarded to my attention for research and resolution. I would like to thank you for giving me the opportunity to address your concerns.

Please be advised, your regular monthly payment amount as of and prior to August 1, 2007 was $4,454.32. This amount included principal and interest in the amount of $3,765.05 and escrow in the amount of $689.27. The unpaid principal balance on August 1, 2007 was $523,832.98. The total amount due on your account as of August 1, 2007 was $4,642.57. This amount includes a late charge in the amount of $188.25 assessed on July 16, 2007.

A copy of your complete payment history with American Home Mortgage, which includes all funds we have received, is enclosed for your review. Per your request, a copy of the Hud-1 which reflects all fees and charges regarding your closing is also enclosed for your review. Copies of the current and previous escrow account disclosure statements are enclosed as verification of the escrow payment calculations and payment adjustments. The current interest rate on your loan is 8.625% and a copy of your Note Agreement is enclosed for verification of the calculations used for your interest rate. Copies of your Truth in Lending statement and the Deed of Trust are enclosed for your review.

An escrow analysis was completed on your account on July 20, 2007 effective with the September 1, 2007 payment, which adjusted your payment amount to $4,447.31.

Please be advised, American Home Mortgage is not obligated to provide you with copies of our internal policies and procedures regarding our business practices. Your correspondence has been forwarded to our Loss Mitigation Department, and they will address your specific concerns regarding loss mitigation issues separately.

 **American Home Mortgage Servicing**

Should you have any further questions or concerns, please do not hesitate to contact our Customer Care Department at 1-877-304-3100 (M-F 7:00am- 7:00pm CST).

Respectfully,


Candi Doddy
Loan Administration Research
American Home Mortgage Servicing, Inc.

Enclosures: Note, Deed of Trust, Detail Transaction History, Escrow Account Disclosure
Statements, Truth in Lending Statement, Hud-1

# EXHIBIT C

03/01/04  12:35 FAX                    PARCELS INC                              ☑022

1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In the matter of                    )
                                    )
SA TELECOMMUNICATIONS, INC.,        )
et al..                             ) Case Nos. 97-2395
                                    ) through 97-2401(PJW)
          Debtors.                  )


                        U.S. Bankruptcy Court
                        Sixth Floor
                        924 Market Street
                        Wilmington, Delaware



                        Friday, March 27, 1998
                        1:00 p.m.



BEFORE: HONORABLE PETER J. WALSH
        United States Bankruptcy Judge






                    WILCOX & FETZER
        1330 King Street - Wilmington Delaware   19801
                    (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters
COPY

03/01/04   12:35 FAX                          PARCELS INC                          Ⓐ023

23

1   these debtors, then how do you know if you need more

2   than one.  The answer is you don't.  You put an .

3   examiner in there, you get the information you need,

4   you get an independent report, versus three different

5   stacks of discovery, that you can work off of.

6            And even if Your Honor concludes that

7   you can only appoint an examiner in the case of SA

8   Tel, if you for some reason, take their representation

9   that this debt only relates to SA Tel, well, then,

10  wouldn't it be efficient to, since the same issues

11  relate to all the other estates, since the same issues

12  are going to relate to the proposal of the plan, to

13  let the examiner examine all of the books and records,

14  finances of those related entities?

15            THE COURT:  Well, first of all, I'm

16  going to point out that this Court has for years

17  consistently viewed 1104(c)(2) as not being a

18  mandatory provision.  So we're only talking about

19  whether it's in the interests of the creditors and any

20  equity holders and the interests of the estate to

21  appoint an examiner.  I assume that nobody challenges

22  the proposition that there's no value for equity here,

23  so that interest is --

24            MR. ASTIN:  I would ask Your Honor to



03/01/04  12:36 FAX                    PARCELS INC                         ⧉024

24

1   consider the Revco case.  But if Your Honor knows the

2   court's position, I will acknowledge that there are

3   other cases out there that think "shall" doesn't mean

4   shall.  The U.S. Trustee believes it does and I think

5   Revco and the Morganstern case is right on point.

6              THE COURT:  My view doesn't turn on the

7   word "shall" and I've ruled a number of times to this

8   effect, Judge Balick has, and I think I'm not going to

9   change this Court's view of that section.

10             MR. ASTIN:  So if you look at the best

11  interests of the creditors I will acknowledge that

12  everyone here today is going to argue that their

13  interests are best served by the stipulation.  But, of

14  course -- the answer is of course.  Not everybody in

15  this room represents all of the interests in this

16  case.

17             The Committee I think will acknowledge

18  that you can't -- the Court shouldn't consider the

19  vote of the Committee to be representative of the

20  large body of creditors out there because it's

21  lopsided.  If it wasn't, then committee counsel long

22  ago and far away between November, when this case was

23  filed, and this hearing would have looked at the issue

24  of substantive consolidation.  The bottom line is,

1   period and hopefully we will never have to address it

2   because the parties will have been able to work it

3   out.  Thank you.

4                THE COURT:  Anyone else?

5                MR. DeNATALE:  Your Honor, I do have a

6   copy of the stipulation that was actually executed by

7   each of the parties and that I would hand up for the

8   Court to so order if the Court is so inclined.

9                THE COURT:  Let me look at it.  I

10  haven't ruled yet.

11               Interesting debate and I'm going to

12  approve the stipulation and deny the U.S. Trustee's

13  motion for the appointment of an examiner for the

14  following reasons:

15               First of all, Section 1104(c)(1)

16  authorizes the appointment of an examiner where it is

17  in the interest of the creditors, the equity holders,

18  or other interests of the estate.  We're all agreed

19  that there's no equity interests here.  And I don't

20  think there's really an interest of the estate in the

21  sense that this is a liquidation case.  This company

22  is going nowhere, it's over.  The only interests are

23  those of the creditors and in amount we have 90

24  percent of those people opposing the relief that the

03/01/04  12:36 FAX                    PARCELS INC                           ☒026

89

1   trustee says they need.  That doesn't make any sense

2   to me to appoint an examiner when the U.S. Trustee

3   says it's needed to protect the creditors when 90

4   percent in amount of those creditors say we don't want

5   this relief.

6           Secondly, particularly in light of the

7   comment that Mr. DeNatale just made regarding Jay

8   Alix's assessment of what it would cost to find out

9   what the intercompany claims are and whether the eggs

10  can be unscrambled so as to have to avoid substantive

11  consolidation, we have the U.S. Trustee in order to

12  achieve his result putting a 30 day and $40,000 cap on

13  the examiner's effort.  I think if you buy it that

14  cheaply and permit that short a time, I think you're

15  going to get what you pay for and that is nothing that

16  would be of any value to the proceedings that we're

17  engaged in.  I think it will be a waste of $40,000 and

18  an unnecessary delay in the proceedings.

19          Thirdly, based upon my experience with

20  examiners what you're going to do with an examiner is

21  produce a document which is only going to continue the

22  combat that the creditors have been engaged in for

23  some time, because as sure as we're all sitting here

24  whatever the examiner says one or more of these three



81

```
 1   major creditors are going to disagree with it.  And so
 2   the examiner's report would simply serve as perhaps a
 3   convenient and concise statement of what the parties
 4   will be litigating over and it's not going to solve
 5   anything.  I think an examiner's report is an
 6   invitation to litigation and we already have that.
 7                Fourth, I take a different approach from
 8   the U.S. Trustee's position.  He claims we need
 9   someone independent who will look at the facts without
10   any bias and report accordingly.  My view is the best
11   way to develop facts is in an adversary proceeding and
12   that's what we do all the time in this Court.  And so
13   I think it's probably equally effective, if not more
14   effective, to have the fighting parties look at the
15   facts and take their positions, and if we're lucky it
16   will result in a settlement.  If not, we will be back
17   here and pick up where we would leave off today.
18                So for those reasons I don't think that
19   appointing an examiner would be in the best interests
20   of these proceedings, certainly not in the best
21   interests of the creditors.  And parties have observed
22   and it went without saying that this has been an
23   acrimonious four months since the case was filed.  And
24   to pile on an examiner shackled by a limited budget
```



82

1  and time frame I just think would be a waste.

2          Finally, this is not the beginning of

3  this case, it's the end of the case. And we're

4  looking at $44 million chasing a million and a half.

5  And I think it's time the parties realistically looked

6  at this nominal dividend that they are going to get

7  and reach an agreement that is going to settle it

8  without further debate about consolidation or

9  intercompany claims, because if we get to those issues

10 and we have hearings on the merits, the million and a

11 half is going to be spent in a matter of weeks.

12          In addition to the reasons I've already

13 given, in my view this is the wrong time and the wrong

14 case for the appointment of an examiner. So I'll deny

15 that motion.

16          MR. ASTIN:  Your Honor, to clarify Your

17 Honor's ruling, is Your Honor ruling as to

18 1104(c)(2)?  You mentioned best interests of the

19 creditors under (c)(1).  Our request for relief was

20 pursuant to (c)(2), (c)(1) in the alternative.

21          THE COURT:  My view is that (c)(2) is

22 not mandatory and for the same reasons I've already

23 given I'll deny the relief to the extent it is

24 premised on (c)(2).



# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| THREE A'S HOLDINGS, L.L.C., a | . | Case No. 06-10886(BLS) |
| Delaware Limited Liability | . | Jointly Administered |
| Company, *et al.,* | . | |
| | . | Sept. 6, 2006 (10 a.m.) |
| Debtors. | . | (Wilmington) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    issue.    That didn't –

2              THE COURT: It didn't seem very limited.

3              MR. KENNEY: Pardon me, Your Honor?

4              THE COURT: It didn't seem very limited on that

5    issue.

6              MR. KENNEY: Well, Your Honor, I think where they've

7    agreed to the appointment of an ombudsman, I think we simply

8    need to provide the Court with a very basic form of order to

9    provide for the appointment which we will submit to the Court

10   under certification, and they have names.  We would obviously

11   have to, you know, do our own review as well, and we would

12   try to make this as quick a process as possible.  We

13   understand there are some major time constraints, and we're

14   looking at it in terms of an ombudsman may actually add

15   something to the sale process.

16             THE COURT: As I understand it, under § 332, I

17   direct you to appoint one.  That's similar to an examiner

18   process; correct?  In terms of the appointment.  We don't

19   need a motion to appoint a consumer ombudsman, consumer

20   privacy ombudsman; is that correct?

21             MR. KENNEY: I think that's correct, Your Honor.

22   The Code is really ambiguous about that.  It almost seems

23   like it could be part of a motion for a bid procedures or it

24   could be done sua sponte.  The important thing is that people

25   be aware of the need for it in almost any case involving

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                    .        Chapter 11
                                          .
AMERICAN HOME MORTGAGE                     .        Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware                 .        (Jointly Administered)
corporation, *et al.,*                     .
                                          .        Aug. 20, 2007 (1:43 p.m.)
                Debtors.                    .        (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

3

1    don't want to double book them.  They were there first.  If

2    you do need more time tomorrow, let's try it today, but if

3    you do need more time, I have time in the morning, so, we can

4    –

5            MS. MORGAN: I'm not sure that works for me –

6            THE COURT: Okay.

7            MS. MORGAN:  – but we again thank the Court for

8    your indulgence.

9            THE COURT: All right.

10           MS. MORGAN: Those were the only scheduled items,

11   Your Honor.  There are two other things that Your Honor I

12   believe signed an order today indicating that you would hear,

13   and I'm sorry, the motion to shorten notice filed by Impact

14   Funding in connection with its stay relief motion, and I

15   think you also asked us at a prior hearing to report today to

16   the Court on our view, the debtors' view, as to whether a

17   consumer privacy ombudsman was needed so we can take that in

18   any order, but I'm prepared to discuss the ombudsman issue.

19           THE COURT: Let's do that first, yes.

20           MS. MORGAN: Okay.  Your Honor, under 363(b)(1), the

21   debtor may sell personally identifiable information without

22   the appointment of a consumer privacy ombudsman if the sale

23   is consistent with the debtors' privacy policies.  The

24   debtors' privacy policies in this case are consistent with

25   that.  The debtors provide consumers with a policy statement

1  at the time of the borrower's loan application, and we also

2  post those policies on the website.  They permit the sharing

3  of non-public information to employees, employees of the

4  debtors' suppliers, affiliates, service providers, and third

5  parties in connection with providing consumer credit or

6  servicing their accounts, and to third parties on an as-

7  needed basis to support delivery of products or services.

8  The consumers cannot opt out of those provisions, those

9  financial data sharing provisions.  The debtors are seeking

10  approval as Your Honor is aware of their loan servicing

11  business, which includes, among other things, servicing

12  rights and a servicing platform.  We're not selling email

13  lists or customer lists.  However, the disclosure of the

14  consumer non-public information is necessary for a buyer to

15  service the loans.  Again, we believe those disclosures are

16  consistent with the debtors' privacy policies, and we also

17  believe that this disclosure is permissible under the Gramm-

18  Leach Bliley Act.  Although that act prohibits a financial

19  institution from disclosing non-public information to a non-

20  affiliated third party without giving consumers notice, it

21  has exceptions, and a primary exception is the fact that it

22  permits financial institutions to disclose this information

23  as necessary to affect, administer, or enforce a transaction

24  in connection with a proposed or actual securitization or a

25  secondary market sale including sales of servicing rights,

1   which is exactly what we're doing here, Your Honor.   Also in

2   New Century, while I don't know what their policies provided,

3   Judge Carey in that case did provide that a sale of the

4   servicing business was indeed a secondary market sale within

5   the meaning of the act.   So we do believe that the law

6   permits us to do this without a consumer privacy ombudsman.

7   We have shared our policies with the U.S. Trustee, and I'll

8   let Mr. McMahon speak for himself, but I believe he agrees

9   with the debtors' position.

10          THE COURT: Thank you.   Mr. McMahon, any comment?

11          MR. McMAHON: Your Honor, Joseph McMahon for the

12  United States Trustee.   No objection as to the conclusion

13  that the debtors reach with respect to the need for a

14  consumer privacy ombudsman hearing.

15          THE COURT: Okay, thank you very much.

16          MS. MORGAN: Your Honor, I believe that leaves the

17  motion of Impact Funding -

18          THE COURT: Right.

19          MS. MORGAN:   - to shorten notice.

20          THE COURT: Mr. Lastowski.

21          MR. LASTOWSKI: Good afternoon, Your Honor.   Michael

22  Lastowski of Duane Morris, LLP, here today on behalf of

23  Impact Funding.   Your Honor, thank you very much for hearing

24  us this morning and entertaining our motion to shorten

25  notice.   I'm assuming the Court has read our motion, and if