**EXHIBIT C**

**EXHIBIT A**

**Cure Escrow Agreement**

Cure Escrow Agreement (this "Escrow Agreement"), dated as of _____, 2007, by and among, American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc., a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, "Sellers"), and North Fork Bank, a Division of Capital One, N.A., as escrow agent (the "Escrow Agent").

WITNESSETH

Whereas, AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser") and Sellers have previously entered into an Asset Purchase Agreement, dated as of September 25, 2007 (the "Asset Purchase Agreement"), involving the purchase of certain assets and the assumption of certain liabilities of Sellers by Purchaser;

WHEREAS, Purchaser and Sellers have previously entered into the First Amendment to the Asset Purchase Agreement, dated as of October [ ] 2007;

WHEREAS, the Bankruptcy Court entered the Sale Approval Order (the "Order") on _____, 2007;

WHEREAS, Paragraph 4.1 of the Asset Purchase Agreement and Paragraph 32 of the Order contemplate that, at the Initial Closing, Purchaser will deliver to the Escrow Agent $10,000,000.00 in immediately available funds (the "Cure Escrow") in order to satisfy the Sellers' Cure Amount (as defined in the Order);

WHEREAS, Paragraph 35 of the Order provides that the allowed cure claims for each Assumed Contract for the period prior to the Initial Closing (such allowed cure claims, collectively "Allowed Cure Claims") shall be paid exclusively from the funds in the Cure Escrow;

WHEREAS, Paragraph 36 of the Order provides that all Setoff Claims, to the extent allowed (such allowed Setoff Claims, collectively "Allowed Setoff Claims"), shall be paid exclusively from the funds in the Cure Escrow;

WHEREAS, Paragraph 39 of the Order provides that all Transfer Cost Claims, to the extent allowed (such allowed Transfer Cost Claims, collectively "Allowed Transfer Cost Claims"), shall be paid exclusively from the funds in the Cure Escrow;

WHEREAS, Paragraphs 33, 34 and 35 of the Order set forth procedures for the filing and resolution of cure claims, Setoff Claims and Transfer Cost Claims,

WHEREAS, Sellers desire to appoint the Escrow Agent to act as escrow agent hereunder in the manner hereinafter set forth and the Escrow Agent is willing to act in such capacity;

Now therefore, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers and the Escrow Agent hereby agree as follows:

1. Cure Reserves.

   (a) The Escrow Agent shall establish and maintain on behalf of the parties hereto, an interest bearing account (the "Escrow Account") in the name of Sellers, subject to the terms and conditions of this Escrow Agreement. Funds held in the Escrow Account shall be applied and disbursed only as provided herein. The Escrow Agent shall, to the extent required by law, segregate the funds held in the Escrow Account from its other funds held as an escrow agent.

   (b) At the Initial Closing, Purchaser shall deliver the Cure Escrow to the Escrow Agent for deposit in the Escrow Account pursuant to Paragraph 4.1 of the Asset Purchase Agreement.

   (c) The Cure Escrow shall be delivered by wire transfer to the following account of the Escrow Agent (or to such other account of the Escrow Agent as the Escrow Agent shall notify Sellers and Purchaser in writing prior to the transfer of funds and which account Sellers and Purchaser approve):

   ABA No.: 021407912
   Account No.:
   Account Name: America Home Mortgage Investment Corp.
   Cure Escrow Account

   (d) The Escrow Agent shall immediately upon receipt confirm in writing to Sellers and Purchaser its receipt of the Cure Escrow.

   (e) Funds on deposit in the Escrow Account shall be held in an interest bearing depository account with the Escrow Agent.

   (f) Parent shall be deemed the owner of the Cure Escrow held in the Escrow Account. As such, Parent shall be responsible for the preparation of all tax returns associated with the investments therein and shall pay all costs relating to such returns, including taxes, fines and penalties and interest. The Escrow Account shall be assigned the federal tax identification number of Parent. Parent shall provide Escrow Agent, at any time upon request of Escrow Agent, with a Form W-8 or W-9 to evidence Parent is not subject to any back-up withholding under the United States Internal Revenue Code. Parent shall report all income, if any, that is earned on, or derived from, the Cure Escrow as its income, in the taxable year or years in which such income is properly includible and pay any taxes attributable thereto. Except as required by applicable law, the Escrow Agent has no duty to withhold or file any report or any tax liability under any federal or state income tax, local or state property tax, local or state sales or use taxes, or any other tax by any taxing authority.

    (g) The parties hereto acknowledge that, in accordance with Paragraph 11 of the Order, the Cure Escrow and all accrued interest thereon (subject to the provisions of Section 2 below with respect to the withdrawal and disbursement thereof) are subject to the Administrative Agent's existing security interests in and liens as provided in the Cash Collateral Order.

2. Distributions.

    (a) Funds on deposit in the Escrow Account shall be withdrawn and disbursed by the Escrow Agent only in accordance with this Section 2.

    (b) The determination of whether any claim or right shall be an Allowed Cure Claim, Allowed Setoff Claim, or an Allowed Transfer Cost Claim, and the dollar amount of any such Allowed Cure Claim, Allowed Setoff Claims, or Allowed Transfer Cost Claim, shall be pursuant to (a) a Final Order of the Bankruptcy Court, (as defined in the Order) or (b) a written agreement among the parties to the Assumed Contract with respect to which such claim(s) were made (a "Settlement") subject, in the case of Sellers, to the prior written consent of the Administrative Agent and the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases (the "Committee"). All Debtors and all Persons purporting to hold an Allowed Cure Claim, Allowed Setoff Claim, or Allowed Transfer Cost Claim shall follow the procedures set forth in the Order, or further Order of the Bankruptcy Court, in connection with such determinations.

    (c) In the event that, at any time (and from time to time), but at least thirty (30) days after the Initial Closing, the amount of the Cure Escrow then held in the Escrow Account, is greater than the aggregate maximum amount potentially payable to all Counterparties from the Cure Escrow (the "Maximum Payment Amount", and such excess amount, the "Excess Cure Reserve"), (i) the Sellers shall direct the Escrow Agent in writing that such Excess Cure Reserve and all accrued interest income thereon shall be paid, on behalf of Sellers, to the Administrative Agent, by the Escrow Agent and (ii) the Escrow Agent shall, on the Business Day specified in such written instructions, which shall be at least two Business Days after the Escrow Agent's receipt of such written instructions, disburse such amount specified in such written instructions, and all accrued interest income thereon, on behalf of Sellers, to the Administrative Agent in accordance with the wire transfer instructions set forth in such written instructions.

    (d) In furtherance and not in limitation of Section 2(c) above, in the event that at any time (and from time to time), but at least thirty (30) days after the Initial Closing, the Purchaser designates an Assumed Contract as an Excluded Contract pursuant to the provisions of the Asset Purchase Agreement and the amount of the Cure Escrow then held in the Escrow Account is greater than or equal to the Maximum Payment Amount, including all amounts potentially payable from the Cure Escrow with respect to such Excluded Contract (the "Excluded Contract Amount"), the Excluded Contract Amount shall constitute an Excess Cure Reserve and (i) the Sellers shall direct the Escrow Agent in writing that such Excess Cure Reserve and all accrued interest income thereon shall be paid, on behalf of Sellers, to the Administrative Agent, by the Escrow

Agent and (ii) the Escrow Agent shall, on the Business Day specified in such written instructions, which shall be at least two Business Days after the Escrow Agent's receipt of such written instructions, disburse such amount specified in such written instructions, and all accrued interest income thereon, on behalf of Sellers, to the Administrative Agent in accordance with the wire transfer instructions set forth in such written instructions.

(e) In the event that Purchaser designates an Assumed Contract as an Excluded Contract pursuant to the provisions of the Asset Purchase Agreement, and the Maximum Payment Amount (including the Excluded Contract Amount ) is greater than the amount of the Cure Escrow then held in the Escrow Account, the amount to be disbursed from the Escrow Account to the Administrative Agent (the "Pro Rated Excluded Contract Amount") shall be equal to the product of (i) the Excluded Contract Amount, multiplied by (ii) a fraction, the numerator of which shall be the Excluded Contract Amount and the denominator of which shall be the Maximum Payment Amount (including the Excluded Contract Amount). The Prorated Excluded Contract Amount shall be deemed an Excess Cure Reserve, and (i) the Sellers shall direct the Escrow Agent in writing that such Excess Cure Reserve and all accrued interest income thereon shall be paid, on behalf of Sellers, to the Administrative Agent, by the Escrow Agent and (ii) the Escrow Agent shall, on the Business Day specified in such written instructions, which shall be at least two Business Days after the Escrow Agent's receipt of such written instructions, disburse such amount specified in such written instructions, and all accrued interest income thereon, on behalf of Sellers, to the Administrative Agent in accordance with the wire transfer instructions set forth in such written instructions.

(f) In the event that the aggregate dollar amount of all Allowed Cure Claims, Allowed Setoff Claims, and Allowed Transfer Cost Claims exceeds the amount of the Cure Escrow, distributions to the Counterparties shall be made on a pro rata basis (after taking into account reductions in the Cure Escrow pursuant to Sections 2(c), (d) and (e) above). The good faith estimate of a Transfer Cost Claim filed and served pursuant to Paragraph 34 of the Order shall be used to calculate the existence of an Excess Cure Reserve and the Counterparties' pro rata share of the Cure Escrow prior to the final determination of the amount of such Allowed Transfer Cost Claim.

(g) If the Escrow Agent receives written instructions signed by the Sellers ("Disbursement Instructions") that (i) state that a Settlement has been negotiated with the prior written consent of the Administrative Agent and the Committee or a Final Order has been issued determining, with respect to an Assumed Contract, the actual the dollar amount of any such Allowed Cure Claim, Allowed Setoff Claim, Allowed Transfer Cost Claim, as the case may be, and (ii) direct that the Escrow Agent pay from the Cure Escrow the actual dollar amount of any such Allowed Cure Claim, Allowed Setoff Claim, Allowed Transfer Cost Claim, as the case may be, for such Assumed Contract to the Counterparty to such Assumed Contract, the Escrow Agent shall disburse to such Counterparty to such Assumed Contract the dollar amount specified in such Disbursement Instructions in accordance with the wire transfer instructions set forth in such Disbursement Instructions on the later of the business day specified in such Disbursement Instructions, which shall be at least two Business Days after the Escrow Agent's receipt of such Disbursement Instructions. Disbursements with respect to

Allowed Cure Claims and Allowed Setoff Claims shall be made promptly after the Final Closing Date and disbursements with respect to any Allowed Transfer Cost Claim shall be made promptly after the determination of the actual amount of such Allowed Transfer Cost Claim in accordance with the procedures set forth in the Order, or further Order of the Bankruptcy Court.

(h) The Sellers shall provide written notice (a "Disbursement Notice") to the Administrative Agent and Committee at least ___ Business Days in advance of sending notice disbursement instructions to the Escrow Agent. Within ___ Business Days after receipt of a Disbursement Notice, either the Administrative Agent or the Committee (the "Notifying Party") may notify the Escrow Agent and the Sellers that the Notifying Party believes there should not be a disbursement from the Cure Escrow and accrued interest income thereon (an "Escrow Action"). Any such notice (the "Dispute Notice") shall state the reason that the Notifying Party believes such Escrow Action should not occur. If the Escrow Agent receives a Dispute Notice, the Escrow Agent shall not take any Escrow Action until the Escrow Agent receives either an order of the Bankruptcy Court, which order has become final and not subject to appeal and has been certified by the clerk of the Bankruptcy Court or other appropriate official, or joint written notice signed by the Notifying Party and Sellers indicating that the dispute has been resolved and directing the Escrow Agent to take a specific Escrow Action (collectively, a "Final Resolution"). Within two Business Days of its receipt of the written evidence of a Final Resolution required above in this Section 2(h), the Escrow Agent shall take the specified Escrow Action. The Escrow Agent shall be entitled to rely, exclusively, on any representation jointly made by the Notifying Party and Sellers in writing in relation to any Escrow Action, and shall take Escrow Actions from time to time as directed in any such joint written instruction from the Notifying Party and Sellers or pursuant to a Final Resolution.

3. Termination of Escrow Agreement. This Escrow Agreement shall terminate upon (a) disbursement of all of the funds in the Escrow Account by the Escrow Agent in accordance with this Escrow Agreement or (b) upon transfer of all amounts in the Escrow Account then in the possession of the Escrow Agent to a successor escrow agent in accordance with the terms of Section 6 below, to the Bankruptcy Court, or to such other party as shall be ordered by the Bankruptcy Court.

4. Escrow Agent.

(a) Sellers, jointly and severally, agree to pay the Escrow Agent compensation for its services as Escrow Agent hereunder, as described on Schedule A annexed hereto, promptly upon request therefor, and to reimburse the Escrow Agent for all reasonable expenses of or disbursements incurred by the Escrow Agent in the performance of its duties hereunder, including the reasonable fees, expenses and disbursements of counsel to the Escrow Agent.

(b) The Escrow Agent may retain that portion of the Escrow Account equal to any such unpaid reasonable costs, expenses and fees incurred by the Escrow

Agent as contemplated by Section 4(a) above until such time as such costs, expenses and fees have been paid.

5.   Rights, Duties and Immunities of Escrow Agent. Acceptance by the Escrow Agent of its duties under this Escrow Agreement is subject to the following terms and conditions, which all parties to this Escrow Agreement hereby agree shall govern and control the rights, duties and immunities of the Escrow Agent:

(a)   The duties and obligations of the Escrow Agent shall be determined solely by the express provisions of this Escrow Agreement and the Escrow Agent shall not be liable, except for the performance of such duties and obligations as are specifically set out in this Escrow Agreement. The Escrow Agent shall not be required to inquire as to the performance or observation of any obligation, term or condition under any agreement or arrangement by Purchaser and Sellers. The Escrow Agent is not a party to, and is not bound by, any agreement or other document out of which this Escrow Agreement may arise. The Escrow Agent shall be under no liability to any party hereto by reason of any failure on the part of any other party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document. The Escrow Agent shall not be bound by any waiver, modification, termination or rescission of this Escrow Agreement or any of the terms hereof, unless evidenced by a writing delivered to the Escrow Agent signed by the proper party or parties and, if the duties or rights of the Escrow Agent are affected, unless it shall give its prior written consent thereto (which consent shall not be unreasonably withheld). This Escrow Agreement shall not be deemed to create a fiduciary relationship between the parties hereto under state or federal law.

(b)   The Escrow Agent shall not be responsible in any manner for the validity or sufficiency of this Escrow Agreement or of any property delivered hereunder, or for the value or collectibility of any note, check or other instrument, if any, so delivered, or for any representations made or obligations assumed by any party other than the Escrow Agent. Nothing herein contained shall be deemed to obligate the Escrow Agent to deliver any cash, instruments, documents or any other property referred to herein, unless the same shall have first been received by the Escrow Agent pursuant to this Escrow Agreement.

(c)   Sellers shall, jointly and severally, reimburse and indemnify the Escrow Agent for, and hold it harmless against, any loss, liability, costs or expenses, (including but not limited to reasonable counsel fees, disbursements and other charges of counsel incurred by Escrow Agent in any dispute, controversy, action or legal proceeding between it and one of the parties hereto, or between it and a third party) arising out of or in conjunction with its acceptance of, or the performance of its duties and obligations under this Escrow Agreement (except those arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith) as well as the costs and expenses of defending against any claim or liability arising out of or relating to this Escrow Agreement (except those costs and expenses of defending against any claim or liability arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith).

(d) The Escrow Agent shall be fully protected in acting on and relying upon any written notice direction, request, waiver, consent, receipt or other paper or document which the Escrow Agent in good faith believes to have been signed and presented by the proper party or parties. The Escrow Agent shall not be responsible for (i) the sufficiency or accuracy of the form of, or the execution, validity, value or genuineness of, any document or property received, held or delivered by it pursuant to the terms of this Escrow Agreement, or of any signature or endorsement on such document or property (other than the signature or endorsement of the Escrow Agent, if any), (ii) the lack of endorsement on such document, or (iii) any description set forth in such document. The Escrow Agent shall not be responsible or liable to the other parties hereto or to anyone else in any respect on account of the identity or authority of the persons executing or delivering or purporting to execute or deliver any document or property pursuant to the terms of this Escrow Agreement (other than the identity and authority of any person executing or delivering or purporting to execute or deliver any property on behalf of the Escrow Agent) or of the persons executing or delivering or purporting to execute and deliver this Escrow Agreement, other than the identity and authority of the person executing this Escrow Agreement on behalf of the Escrow Agent.

(e) The Escrow Agent shall not be liable for any error of judgment, or for any act done or step taken or omitted by it in good faith or for any mistake in act or law, or for anything which it may do or refrain from doing in connection herewith, except its own gross negligence, willful misconduct or bad faith. Notwithstanding any provisions in this Escrow Agreement to the contrary, the Escrow Agent shall not be liable for any special, indirect, punitive, exemplary or consequential damages or lost profits.

(f) The Escrow Agent may seek the advice of legal counsel in the event of any dispute or question as to the construction of any of the provisions of this Escrow Agreement or its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the written advice or opinion of such counsel.

(g) The parties hereto agree that should any dispute arise with respect to the payment, ownership or right of possession of the Escrow Account, the Escrow Agent is authorized and directed to retain in its possession, without liability to anyone, except for its bad faith, willful misconduct or gross negligence, all or any part of the Escrow Account until such dispute shall have been settled either by mutual agreement by the parties concerned or by the final order, decree or judgment of the Bankruptcy Court and a notice executed by the parties to the dispute or their authorized representatives shall have been delivered to the Escrow Agent setting forth the resolution of the dispute, which notice Sellers hereby agree to so execute and deliver to the Escrow Agent in the event that such an order, decree or judgment is obtained from or issued by the Bankruptcy Court. The Escrow Agent shall be under no duty whatsoever to institute, defend or partake in such proceedings.

(h) The Escrow Agent shall have no liability for loss arising from any cause beyond its control, including, but not limited to, the following: (i) the act, failure or neglect of any agent or correspondent selected by the other parties hereto; (ii) any

delay, error or omission or default of any mail, telephone or wireless agency or operator; and (iii) the acts or edicts of any government or governmental agency or other group or entity exercising governmental powers.

    (i)  The agreements set forth in this Section 5 shall survive the resignation or removal of the Escrow Agent, the termination of this Escrow Agreement and the payment of all amounts hereunder.

   6.  Resignation of Escrow Agent. The Escrow Agent shall have the right to resign upon twenty (20) days written notice to Sellers, the Committee, and the Administrative Agent. In the event of such resignation, Sellers, the Committee and the Administrative Agent shall mutually agree upon and appoint a successor escrow agent hereunder (subject to the provisions of Paragraph 8 of the Order) by delivering to the Escrow Agent a written notice of such appointment. Upon receipt of such notice, the Escrow Agent shall deliver to the designated successor escrow agent all money and other property held hereunder and shall thereupon be released and discharged from any and all further responsibilities whatsoever under this Escrow Agreement; provided, however, that the Escrow Agent shall not be deprived of its compensation earned prior to such time. If no successor escrow agent shall have been designated by the date specified in the Escrow Agent's notice, all obligations of the Escrow Agent hereunder shall nevertheless cease and terminate. Its sole responsibility thereafter shall be to keep safely all property then held by it and to deliver the same to a person designated by Sellers, the Committee and the Administrative Agent (subject to the provisions of Paragraph 8 of the Order) or in accordance with the direction of a final order or judgment of the Bankruptcy Court.

   7.  Notices. All instructions, claims, notices, consents, objections and other communications under this Escrow Agreement shall be in writing with a copy to the Administrative Agent and the Committee and shall, except as otherwise provided herein, be deemed to have been duly given and received when (i) delivered by hand, (ii) sent by facsimile (with receipt confirmed), or (iii) when received by the addressee, if sent by Express Mail, Federal Express or other reputable overnight delivery service, in each case, at the appropriate addresses and facsimile numbers as set forth below:

ESCROW AGENT:         North Fork Bank,
                 a Division of Capital One, N.A.
                 275 Broadhollow Road
                 Melville, New York 11747
                 Attention: Michael Weisbrod
                 Telephone: (631) 844-1376
                 Facsimile: (631) 844-1452

                 With copies (which shall not constitute notice) to:

                 North Fork Bank, a Division of Capital One, N.A.
                 275 Broadhollow Road
                 Melville, New York 11747
                 Attention: Legal Department
                 Facsimile: (631) 577-2836

| | |
|---|---|
| PURCHASER: | AH Mortgage Acquisition Co., Inc.<br>c/o WL Ross & Co. LLC<br>1166 Avenue of the Americas, 27th Floor<br>New York, New York 10036<br>Facsimile: (212) 317-4891<br>Attention: Mr. Wilbur L. Ross, Chairman<br><br>With copies (which shall not constitute notice) to:<br><br>Jones Day<br>222 East 41st Street<br>New York, New York 10017<br>Facsimile: (212) 755-7306<br>Attention: Robert A. Profusek, Esq. |
| SELLERS: | c/o American Home Mortgage Investment Corp.<br>538 Broadhollow Road<br>Melville, New York 11747<br>Facsimile: (516) 949-3929<br>Attention: Mr. Steven Cooper<br><br>With copies (which shall not constitute notice) to:<br><br>Kroll Zolfo Cooper<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Facsimile: (973) 618-9430<br>Attention: Elizabeth S. Kardos, Esq.<br><br>and<br><br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>Facsimile: (302) 571-1253<br>Attention: James L. Patton, Jr., Esq. |
| ADMINISTRATIVE AGENT: | Banc of America<br>Strategic Solutions, Inc.<br>901 Main Street, 66th Floor<br>Dallas, TX 75202<br>Facsimile: (214) 290-9475<br>Attention: Jay T. Wampler |

                                      With copies (which shall not constitute notice) to:

                                      Kaye Scholer LLP
                                      425 Park Avenue
                                      New York, New York 10022
                                      Facsimile: (212) 836-6545
                                      Attention: Mark F. Liscio, Esq.

COMMITTEE:                        Hahn & Hessen LLP
                                      488 Madison Avenue
                                      New York, New York 10022
                                      Facsimile: (212) 478-7400
                                      Attention: Mark S. Indelicato, Esq.

(or to such other addresses and facsimile numbers as a party may designate as to itself by notice to the other parties). Notwithstanding any of the foregoing, any computation of a time period which is to begin after receipt of a notice by the Escrow Agent shall run from the date of receipt by it.

       8.     Successors. This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided that this Escrow Agreement may not be assigned by any party without the prior written consent of the other parties, which consent shall not be unreasonably withheld.

       9.     Severability. If any portion or provision of this Escrow Agreement shall to any extent be declared illegal or unenforceable by a court of competent jurisdiction, then the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable, shall not be affected thereby, and each portion and provision of this Escrow Agreement shall be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law. The provisions hereof are severable, and in the event any provision hereof should be held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision hereof.

       10.     Amendments. Subject to the provisions of Paragraph 27 of the Order, this Escrow Agreement may be amended or modified at any time or from time to time in writing executed by the parties to this Escrow Agreement.

       11.     Governing Law. This Escrow Agreement shall be construed and interpreted, and the rights of the parties shall be determined, in accordance with the substantive laws of the State of New York, without regard to the conflict of laws principles thereof or of any other jurisdiction.

       12.     JURISDICTION. THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO RESOLVE ANY AND ALL DISPUTES ARISING UNDER THIS ESCROW AGREEMENT AND EACH OF THE PARTIES HERETO HEREBY EXPRESSLY CONSENTS TO SUCH EXCLUSIVE JURISDICTION.

13. Waiver. No waiver of any provision hereof shall be effective unless made in writing and signed by the waiving party. The failure of any party to require the performance of any term or obligation of this Escrow Agreement, or the waiver by any party of any breach of this Escrow Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach.

14. Defined Terms; Headings. Capitalized terms used herein and not otherwise defined in this Escrow Agreement shall have the meaning ascribed to them in the Asset Purchase Agreement or the Order, as the case may be. The headings and captions in this Escrow Agreement are for convenience of reference only and shall not in any way affect the meaning or interpretation of this Escrow Agreement.

15. Counterparts. This Escrow Agreement may be executed in any number of counterparts and by each of the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which together shall constitute one and the same agreement.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the date first written above.

        AMERICAN HOME MORTGAGE INVESTMENT CORP.
        as Seller and Debtor and Debtor-in-Possession

        By: _____
           Name:
           Title:


        AMERICAN HOME MORTGAGE CORP.
        as Seller and Debtor and Debtor-in-Possession

        By: _____
           Name:
           Title:


        AMERICAN HOME MORTGAGE SERVICING, INC.
        as Seller and Debtor and Debtor-in-Possession

        By: _____
           Name:
           Title:


        NORTH FORK BANK, a Division of Capital One, N.A.
        as Escrow Agent

        By: _____
           Name: Michael Weisbrod
           Title: Vice President