EXHIBIT A

## Cure Escrow Agreement

CURE ESCROW AGREEMENT (this "Escrow Agreement"), dated as of _____, 2007, by and among AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser"), American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc., a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, "Sellers"), and North Fork Bank, a Division of Capital One, N.A., as escrow agent (the "Escrow Agent").

## WITNESSETH

WHEREAS, Purchaser and Sellers have previously entered into an Asset Purchase Agreement, dated as of September 25, 2007 (the "Asset Purchase Agreement"), involving the purchase of certain assets and the assumption of certain liabilities of Sellers by Purchaser;

WHEREAS, the Bankruptcy Court entered the Sale Approval Order on _____, 2007;

WHEREAS, Section 4.1 of the Asset Purchase Agreement contemplates that, at the Initial Closing, Purchaser will deliver to the Escrow Agent in immediately available funds, for each Assumed Contract, the Initial Cure Amount for such Assumed Contract (each, a "Cure Reserve" and, collectively, the "Cure Reserves");

WHEREAS, Purchaser and Sellers desire to appoint the Escrow Agent to act as escrow agent hereunder in the manner hereinafter set forth and the Escrow Agent is willing to act in such capacity;

NOW THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser, Sellers and the Escrow Agent hereby agree as follows:

1.   Cure Reserves.

(a)   The Escrow Agent shall establish and maintain on behalf of the parties hereto, an interest bearing account (the "Escrow Account") in the name of Sellers, subject to the terms and conditions of this Escrow Agreement. Funds held in the Escrow Account shall be applied and disbursed only as provided herein. The Escrow Agent shall, to the extent required by law, segregate the funds held in the Escrow Account from its other funds held as an escrow agent.

(b)   At the Initial Closing, Purchaser shall deliver to the Escrow Agent for deposit in the Escrow Account the Cure Reserves required pursuant to Section 4.1 of the Asset Purchase Agreement.

(c)    The Cure Reserves shall be delivered by wire transfer to the following account of the Escrow Agent (or to such other account of the Escrow Agent as the Escrow Agent shall notify Sellers and Purchaser in writing prior to the transfer of funds and which account Sellers and Purchaser approve):

> ABA No.: 021407912
> Account No.:
> Account Name:  America Home Mortgage Investment Corp.
>                Cure Escrow Account

(d)    The Escrow Agent shall immediately upon receipt confirm in writing to Sellers and Purchaser its receipt of the Cure Reserves.

(e)    Funds on deposit in the Escrow Account shall be held in an interest bearing depository account with the Escrow Agent.

(f)    Parent shall be deemed the owner of the Cure Reserves in the Escrow Account. As such, Parent shall be responsible for the preparation of all tax returns associated with the investments therein and shall pay all costs relating to such returns, including taxes, fines and penalties and interest. The Escrow Account shall be assigned the federal tax identification number of Parent. Parent shall provide Escrow Agent, at any time upon request of Escrow Agent, with a Form W-8 or W-9 to evidence Parent is not subject to any back-up withholding under the United States Internal Revenue Code. Parent shall report all income, if any, that is earned on, or derived from, the Cure Reserves as its income, in the taxable year or years in which such income is properly includible and pay any taxes attributable thereto. Except as required by applicable law, the Escrow Agent has no duty to withhold or file any report or any tax liability under any federal or state income tax, local or state property tax, local or state sales or use taxes, or any other tax by any taxing authority.

(g)    The parties hereto acknowledge that, in accordance with Section 11 of the Sale Approval Order, the Cure Reserves and all accrued interest thereon (subject to the provisions of Section 2 below with respect to the withdrawal and disbursement thereof) are subject to the Administrative Agent's existing security interests in and liens as provided in the Cash Collateral Order.

2.    Distributions.

(a)    Funds on deposit in the Escrow Account shall be withdrawn and disbursed by the Escrow Agent only in accordance with this Section 2.

(b)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which (i) state (A) that a settlement has been negotiated or a Final Order has been issued determining, with respect to an Assumed Contract, the actual amount payable in order to cure all defaults on such Assumed Contract as of the date the Sale Approval Order was entered by the Bankruptcy Court and effectuate the assumption by Sellers of such Assumed Contract and the assignment thereof to Purchaser (or Purchaser's designee) pursuant to Section 365 of the Bankruptcy Code (the "Actual Cure Amount") and (B) the Actual Cure Amount for such Assumed Contract and the amount, if any, by which the Cure Reserve for such Assumed

Contract exceeds the Actual Cure Amount for such Assumed Contract (the "Excess Cure Reserve") and (ii) direct that (A) the Actual Cure Amount for such Assumed Contract be paid to the counterparty to such Assumed Contract by the Escrow Agent from the Cure Reserve for such Assumed Contract and (B) any Excess Cure Reserve for such Assumed Contract and all accrued interest income on the Cure Reserve for such Assumed Contract be paid, on behalf of Sellers, to the Administrative Agent, by the Escrow Agent from the Cure Reserve for such Assumed Contract, the Escrow Agent shall, on the business day specified in such written instructions, which shall be at least two business days after the Escrow Agent's receipt of such written instructions, disburse for the Cure Reserve for such Assumed Contract (x) to the counterparty to such Assumed Contract, the Actual Cure Amount specified in such written instructions in accordance with the wire transfer instructions set forth in such written instructions and (y) on behalf of Sellers, to the Administrative Agent, any Excess Cure Reserve for such Assumed Contract specified in such written instructions and all accrued interest income on the Cure Reserve for such Assumed Contract in accordance with the wire transfer instructions set forth in such written instructions.

(c)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which (i) state Purchaser has designated an Assumed Contract as an Excluded Contract pursuant to the provisions of the Asset Purchase Agreement and (ii) direct that the Cure Reserve for such Assumed Contract and all accrued interest income on the Cure Reserve for such Assumed Contract be paid, on behalf of Sellers, to the Administrative Agent, by the Escrow Agent from the Cure Reserve for such Assumed Contract, the Escrow Agent shall, on the business day specified in such written instructions, which shall be at least two business days after the Escrow Agent's receipt of such written instructions, disburse, on behalf of Sellers, to the Administrative Agent, the Cure Reserve for such Assumed Contract and all accrued interest income on the Cure Reserve for such Assumed Contract specified in such written instructions in accordance with the wire transfer instructions set forth in such written instructions.

(d)    Either Purchaser on the one hand or Sellers on the other hand (the "Notifying Party") may notify the Escrow Agent and the other party (the "Recipient") that the Notifying Party believes there should be a disbursement of Cure Reserves and accrued interest income thereon (an "Escrow Action"). Any such notice (the "Notice") shall state the Escrow Action being requested and the reason that the Notifying Party believes such Escrow Action should occur. The Recipient shall have ten calendar days from its receipt of the Notice to provide notice to the Escrow Agent and the Notifying Party disputing the Notifying Party's assertion that such Escrow Action should occur. If the Escrow Agent does not receive notice disputing such assertion within ten calendar days after the Recipient receives the Notice, the Escrow Agent shall take such Escrow Action as directed by the Notifying Party. If the Escrow Agent receives notice disputing such assertion within ten days after the Recipient receives the Notice, the Escrow Agent shall not take any Escrow Action until the Escrow Agent receives either an order of the Bankruptcy Court, which order has become final and not subject to appeal and has been certified by the clerk of the Bankruptcy Court or other appropriate official, or joint written notice signed by Purchaser and Sellers indicating that the dispute has been resolved and directing the Escrow Agent to take a specific Escrow Action (collectively, a "Final Resolution"). Within two business days of its receipt of the written evidence of a Final Resolution required above in this Section 2(e), the Escrow Agent shall take the specified Escrow Action. The Escrow Agent shall be entitled to rely, exclusively, on any representation jointly made by

- 3 -

Purchaser and Sellers in writing in relation to any Escrow Action, and shall take Escrow Actions from time to time as directed in any such joint written instruction from Purchaser and Sellers or pursuant to a Final Resolution.

3.      Termination of Escrow Agreement. This Escrow Agreement shall terminate upon (a) disbursement of all of the funds in the Escrow Account by the Escrow Agent in accordance with this Escrow Agreement or (b) upon transfer of all amounts in the Escrow Account then in the possession of the Escrow Agent to a successor escrow agent in accordance with the terms of Section 6 below or to the Bankruptcy Court or such other party as shall be ordered by the Bankruptcy Court.

4.      Escrow Agent.

(a)      Purchaser and Sellers, jointly and severally, agree to pay the Escrow Agent compensation for its services as Escrow Agent hereunder, as described on Schedule A annexed hereto, promptly upon request therefor, and to reimburse the Escrow Agent for all reasonable expenses of or disbursements incurred by the Escrow Agent in the performance of its duties hereunder, including the reasonable fees, expenses and disbursements of counsel to the Escrow Agent. Notwithstanding the foregoing, and without prejudice to the Escrow Agent's rights hereunder, as between Purchaser on the one hand and Sellers on the other hand, Sellers shall bear 100% of the fees, costs and expenses of the Escrow Agent and of any indemnity obligation pursuant to Section 5(c) hereof.

(b)      The Escrow Agent may retain that portion of the Escrow Account equal to any such unpaid reasonable costs, expenses and fees incurred by the Escrow Agent as contemplated by Section 4(a) above until such time as such costs, expenses and fees have been paid.

5.      Rights, Duties and Immunities of Escrow Agent. Acceptance by the Escrow Agent of its duties under this Escrow Agreement is subject to the following terms and conditions, which all parties to this Escrow Agreement hereby agree shall govern and control the rights, duties and immunities of the Escrow Agent:

(a)      The duties and obligations of the Escrow Agent shall be determined solely by the express provisions of this Escrow Agreement and the Escrow Agent shall not be liable, except for the performance of such duties and obligations as are specifically set out in this Escrow Agreement. The Escrow Agent shall not be required to inquire as to the performance or observation of any obligation, term or condition under any agreement or arrangement by Purchaser and Sellers. The Escrow Agent is not a party to, and is not bound by, any agreement or other document out of which this Escrow Agreement may arise. The Escrow Agent shall be under no liability to any party hereto by reason of any failure on the part of any other party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document. The Escrow Agent shall not be bound by any waiver, modification, termination or rescission of this Escrow Agreement or any of the terms hereof, unless evidenced by a writing delivered to the Escrow Agent signed by the proper party or parties and, if the duties or rights of the Escrow Agent are affected, unless it shall give its prior written consent thereto (which consent shall not be unreasonably withheld). This

- 4 -

Escrow Agreement shall not be deemed to create a fiduciary relationship between the parties hereto under state or federal law.

(b)     The Escrow Agent shall not be responsible in any manner for the validity or sufficiency of this Escrow Agreement or of any property delivered hereunder, or for the value or collectibility of any note, check or other instrument, if any, so delivered, or for any representations made or obligations assumed by any party other than the Escrow Agent. Nothing herein contained shall be deemed to obligate the Escrow Agent to deliver any cash, instruments, documents or any other property referred to herein, unless the same shall have first been received by the Escrow Agent pursuant to this Escrow Agreement.

(c)     Purchaser and Sellers shall jointly and severally reimburse and indemnify the Escrow Agent for, and hold it harmless against, any loss, liability, costs or expenses, (including but not limited to reasonable counsel fees, disbursements and other charges of counsel incurred by Escrow Agent in any dispute, controversy, action or legal proceeding between it and one of the parties hereto, or between it and a third party) arising out of or in conjunction with its acceptance of, or the performance of its duties and obligations under this Escrow Agreement (except those arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith) as well as the costs and expenses of defending against any claim or liability arising out of or relating to this Escrow Agreement (except those costs and expenses of defending against any claim or liability arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith).

(d)     The Escrow Agent shall be fully protected in acting on and relying upon any written notice direction, request, waiver, consent, receipt or other paper or document which the Escrow Agent in good faith believes to have been signed and presented by the proper party or parties. The Escrow Agent shall not be responsible for (i) the sufficiency or accuracy of the form of, or the execution, validity, value or genuineness of, any document or property received, held or delivered by it pursuant to the terms of this Escrow Agreement, or of any signature or endorsement on such document or property (other than the signature or endorsement of the Escrow Agent, if any), (ii) the lack of endorsement on such document, or (iii) any description set forth in such document. The Escrow Agent shall not be responsible or liable to the other parties hereto or to anyone else in any respect on account of the identity or authority of the persons executing or delivering or purporting to execute or deliver any document or property pursuant to the terms of this Escrow Agreement (other than the identity and authority of any person executing or delivering or purporting to execute or deliver any property on behalf of the Escrow Agent) or of the persons executing or delivering or purporting to execute and deliver this Escrow Agreement, other than the identity and authority of the person executing this Escrow Agreement on behalf of the Escrow Agent.

(e)     The Escrow Agent shall not be liable for any error of judgment, or for any act done or step taken or omitted by it in good faith or for any mistake in act or law, or for anything which it may do or refrain from doing in connection herewith, except its own gross negligence, willful misconduct or bad faith. Notwithstanding any provisions in this Escrow Agreement to the contrary, the Escrow Agent shall not be liable for any special, indirect, punitive, exemplary or consequential damages or lost profits.

(f)    The Escrow Agent may seek the advice of legal counsel in the event of any dispute or question as to the construction of any of the provisions of this Escrow Agreement or its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the written advice or opinion of such counsel.

(g)    The parties hereto agree that should any dispute arise with respect to the payment, ownership or right of possession of the Escrow Account, the Escrow Agent is authorized and directed to retain in its possession, without liability to anyone, except for its bad faith, willful misconduct or gross negligence, all or any part of the Escrow Account until such dispute shall have been settled either by mutual agreement by the parties concerned or by the final order, decree or judgment of the Bankruptcy Court and a notice executed by the parties to the dispute or their authorized representatives shall have been delivered to the Escrow Agent setting forth the resolution of the dispute, which notice Purchaser and Sellers hereby agree to so execute and deliver to the Escrow Agent in the event that such an order, decree or judgment is obtained from or issued by the Bankruptcy Court. The Escrow Agent shall be under no duty whatsoever to institute, defend or partake in such proceedings.

(h)    The Escrow Agent shall have no liability for loss arising from any cause beyond its control, including, but not limited to, the following: (i) the act, failure or neglect of any agent or correspondent selected by the other parties hereto; (ii) any delay, error or omission or default of any mail, telephone or wireless agency or operator; and (iii) the acts or edicts of any government or governmental agency or other group or entity exercising governmental powers.

(i)    The agreements set forth in this Section 5 shall survive the resignation or removal of the Escrow Agent, the termination of this Escrow Agreement and the payment of all amounts hereunder.

6.    <u>Resignation of Escrow Agent</u>. The Escrow Agent shall have the right to resign upon twenty (20) days written notice to Sellers and Purchaser. In the event of such resignation, Sellers and Purchaser shall mutually agree upon and appoint a successor escrow agent hereunder (subject to the provisions of Section 8 of the Sale Approval Order) by delivering to the Escrow Agent a written notice of such appointment. Upon receipt of such notice, the Escrow Agent shall deliver to the designated successor escrow agent all money and other property held hereunder and shall thereupon be released and discharged from any and all further responsibilities whatsoever under this Escrow Agreement; <u>provided, however</u>, that the Escrow Agent shall not be deprived of its compensation earned prior to such time. If no successor escrow agent shall have been designated by the date specified in the Escrow Agent's notice, all obligations of the Escrow Agent hereunder shall nevertheless cease and terminate. Its sole responsibility thereafter shall be to keep safely all property then held by it and to deliver the same to a person designated by Sellers and Purchaser (subject to the provisions of Section 8 of the Sale Approval Order) or in accordance with the direction of a final order or judgment of the Bankruptcy Court.

7.    <u>Notices</u>. All instructions, claims, notices, consents, objections and other communications under this Escrow Agreement shall be in writing with a copy to the Administrative Agent and the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "Committee") and shall, except as otherwise provided herein, be deemed

to have been duly given and received when (i) delivered by hand, (ii) sent by facsimile (with receipt confirmed), or (iii) when received by the addressee, if sent by Express Mail, Federal Express or other reputable overnight delivery service, in each case, at the appropriate addresses and facsimile numbers as set forth below:

ESCROW AGENT:                          North Fork Bank, a Division of Capital One, N.A.
                                       275 Broadhollow Road
                                       Melville, New York 11747
                                       Attention: Michael Weisbrod
                                       Telephone: (631) 844-1376
                                       Facsimile: (631) 844-1452

                                       With copies (which shall not constitute notice) to:

                                       North Fork Bank, a Division of Capital One, N.A.
                                       275 Broadhollow Road
                                       Melville, New York 11747
                                       Attention: Legal Department
                                       Facsimile: (631) 577-2836

PURCHASER:                             AH Mortgage Acquisition Co., Inc.
                                       c/o WL Ross & Co. LLC
                                       1166 Avenue of the Americas, 27th Floor
                                       New York, New York 10036
                                       Facsimile: (212) 317-4891
                                       Attention: Mr. Wilbur L. Ross, Chairman

                                       With copies (which shall not constitute notice) to:

                                       Jones Day
                                       222 East 41st Street
                                       New York, New York 10017
                                       Facsimile: (212) 755-7306
                                       Attention: Robert A. Profusek, Esq.

SELLERS:                               c/o American Home Mortgage Investment Corp.
                                       538 Broadhollow Road
                                       Melville, New York 11747
                                       Facsimile: (516) 949-3929
                                       Attention: Mr. Steven Cooper

DLI-6141960v4

With copies (which shall not constitute notice) to:

Kroll Zolfo Cooper
101 Eisenhower Parkway
Roseland, New Jersey 07068
Facsimile: (973) 618-9430
Attention: Elizabeth S. Kardos, Esq.

and

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Facsimile: (302) 571-1253
Attention: James L. Patton, Jr., Esq.

ADMINISTRATIVE AGENT:    Banc of America
Strategic Solutions, Inc.
901 Main Street, 66th Floor
Dallas, TX 75202
Facsimile: (214) 290-9475
Attention: Jay T. Wampler

With copies (which shall not constitute notice) to:

Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Facsimile: (212) 836-6545
Attention: Mark F. Liscio, Esq.

COMMITTEE:    Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022
Facsimile: (212) 478-7400
Attention: Mark S. Indelicato, Esq.

(or to such other addresses and facsimile numbers as a party may designate as to itself by notice to the other parties). Notwithstanding any of the foregoing, any computation of a time period which is to begin after receipt of a notice by the Escrow Agent shall run from the date of receipt by it.

8.      Successors. This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided that this Escrow Agreement may not be assigned by any party without the prior written consent of the other parties, which consent shall not be unreasonably withheld.

- 8 -

9.      Severability.  If any portion or provision of this Escrow Agreement shall to any extent be declared illegal or unenforceable by a court of competent jurisdiction, then the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable, shall not be affected thereby, and each portion and provision of this Escrow Agreement shall be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law.  The provisions hereof are severable, and in the event any provision hereof should be held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision hereof.

10.      Amendments.  Subject to the provisions of Section 8 of the Sale Approval Order, this Escrow Agreement may be amended or modified at any time or from time to time in writing executed by the parties to this Escrow Agreement.

11.      Governing Law.  This Escrow Agreement shall be construed and interpreted, and the rights of the parties shall be determined, in accordance with the substantive laws of the State of New York, without regard to the conflict of laws principles thereof or of any other jurisdiction.

12.      JURISDICTION.  THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO RESOLVE ANY AND ALL DISPUTES ARISING UNDER THIS ESCROW AGREEMENT AND EACH OF THE PARTIES HERETO HEREBY EXPRESSLY CONSENTS TO SUCH EXCLUSIVE JURISDICTION.

13.      Waiver.  No waiver of any provision hereof shall be effective unless made in writing and signed by the waiving party.  The failure of any party to require the performance of any term or obligation of this Escrow Agreement, or the waiver by any party of any breach of this Escrow Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach.

14.      Defined Terms; Headings.  Capitalized terms used herein and not otherwise defined in this Escrow Agreement shall have the meaning ascribed to them in the Asset Purchase Agreement.  The headings and captions in this Escrow Agreement are for convenience of reference only and shall not in any way affect the meaning or interpretation of this Escrow Agreement.

15.      Counterparts.  This Escrow Agreement may be executed in any number of counterparts and by each of the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which together shall constitute one and the same agreement.

[Remainder of Page Intentionally Left Blank]

DLI-6141960v4

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the date first written above.

AH MORTGAGE ACQUISITION CO., INC.

By:_____

    Name:

    Title:


AMERICAN HOME MORTGAGE INVESTMENT CORP.

as Seller and Debtor and Debtor-in-Possession


By:_____

    Name:

    Title:


AMERICAN HOME MORTGAGE CORP.

as Seller and Debtor and Debtor-in-Possession


By:_____

    Name:

    Title:


AMERICAN HOME MORTGAGE SERVICING, INC.

as Seller and Debtor and Debtor-in-Possession


By:_____

    Name:

    Title:


NORTH FORK BANK, a Division of Capital One, N.A.

as Escrow Agent


By:_____

    Name: Michael Weisbrod

    Title: Vice President

**B**

**EXHIBIT B**

**Deposit Escrow Agreement**

DEPOSIT ESCROW AGREEMENT (this "Escrow Agreement"), dated as of September 25, 2007, by and among AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser"), American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc., a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, "Sellers"), and North Fork Bank, a Division of Capital One, N.A., as escrow agent (the "Escrow Agent").

**W I T N E S S E T H**

WHEREAS, contemporaneously with the execution and delivery of this Escrow Agreement, Purchaser and Sellers have entered into an Asset Purchase Agreement, dated as of September 25, 2007 (the "Asset Purchase Agreement"), involving the purchase of certain assets and the assumption of certain liabilities of Sellers by Purchaser;

WHEREAS, Purchaser and Sellers anticipate entry of the Sale Approval Order;

WHEREAS, Section 4.3 of the Asset Purchase Agreement contemplates that Purchaser will deliver to the Escrow Agent $15,000,000 in immediately available funds (the "Cash Deposit") simultaneously with the execution and delivery of this Agreement by each of the parties hereto;

WHEREAS, Purchaser and Sellers desire to appoint the Escrow Agent to act as escrow agent hereunder in the manner hereinafter set forth and the Escrow Agent is willing to act in such capacity;

NOW THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser, Sellers and the Escrow Agent hereby agree as follows:

1.    Cash Deposit.

(a)    The Escrow Agent shall establish and maintain on behalf of the parties hereto, an interest bearing account (the "Escrow Account") in the name of Purchaser, subject to the terms and conditions of this Escrow Agreement. Funds held in the Escrow Account shall be applied and disbursed only as provided herein. The Escrow Agent shall, to the extent required by law, segregate the funds held in the Escrow Account from its other funds held as an escrow agent.

(b)    Purchaser shall deliver the Cash Deposit to the Escrow Agent for deposit in the Escrow Account as required pursuant to Section 4.3 of the Asset Purchase Agreement.

(c)    The Cash Deposit shall be delivered by wire transfer to the following account of the Escrow Agent (or to such other account of the Escrow Agent as the Escrow Agent

shall notify Sellers and Purchaser in writing prior to the transfer of funds and which account
Sellers and Purchaser approve):

> ABA No.: 021407912
> Account No.: 312 407 3630
> Account Name: AH Mortgage Acquisition Co., Inc.
> Deposit Escrow Account

(d)    The Escrow Agent shall immediately upon receipt confirm in writing to
Sellers and Purchaser its receipt of the Cash Deposit.

(e)    Funds on deposit in the Escrow Account shall be held in an interest
bearing depository account with the Escrow Agent.

(f)    Purchaser shall be deemed the owner of the Cash Deposit in the Escrow
Account. As such, Purchaser shall be responsible for the preparation of all tax returns associated
with the investments therein and shall pay all costs relating to such returns, including taxes, fines
and penalties and interest. The Escrow Account shall be assigned the federal tax identification
number of Purchaser. Purchaser shall provide Escrow Agent, at any time upon request of
Escrow Agent, with a Form W-8 or W-9 to evidence Purchaser is not subject to any back-up
withholding under the United States Internal Revenue Code. Purchaser shall report all income, if
any, that is earned on, or derived from, the Cash Deposit as its income, in the taxable year or
years in which such income is properly includible and pay any taxes attributable thereto. Except
as required by applicable law, the Escrow Agent has no duty to withhold or file any report or any
tax liability under any federal or state income tax, local or state property tax, local or state sales
or use taxes, or any other tax by any taxing authority.

(g)    The parties hereto acknowledge that the Cash Deposit and all accrued
interest thereon (subject to the provisions of Section 2 below with respect to the withdrawal
disbursement thereof) are subject to the Administrative Agent's existing security interests and
liens as provided in the Cash Collateral Order.

2.    Distributions.

(a)    Funds on deposit in the Escrow Account shall be withdrawn and disbursed
by the Escrow Agent only in accordance with this Section 2.

(b)    If the Escrow Agent receives joint written instructions signed by Purchaser
and Sellers which state that the Initial Closing will occur pursuant to the Asset Purchase
Agreement, the Escrow Agent shall, on the Initial Closing Date (which shall be at least two
business days after the Escrow Agent's receipt of such written instructions), disburse, on behalf
of Sellers, to the Administrative Agent the Cash Deposit, together with all accrued interest
income thereon, in accordance with the wire transfer instructions set forth in such written
instructions.

(c)    If the Escrow Agent receives joint written instructions signed by Purchaser
and Sellers which state that the Asset Purchase Agreement has been validly terminated by Sellers
pursuant to Section 9.1(d)(ii) of the Asset Purchase Agreement, the Escrow Agent shall, within

- 2 -

two business days of receipt of such written instructions, disburse, on behalf of Sellers, to the Administrative Agent the Cash Deposit, together with all accrued interest income thereon, in accordance with the wire transfer instructions set forth in such written instructions.

(d)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which state that the Asset Purchase Agreement has been terminated other than by Sellers pursuant to Section 9.1(d)(ii) of the Asset Purchase Agreement, the Escrow Agent shall, within two business days of receipt of such written instructions, return to Purchaser the Cash Deposit, together with all accrued interest income thereon, in accordance with the wire transfer instructions set forth in such written instructions.

(e)    Either Purchaser on the one hand or Sellers on the other hand (the "Notifying Party") may notify the Escrow Agent and the other party (the "Recipient") that the Notifying Party believes it is entitled to, a disbursement of the Cash Deposit and accrued interest income thereon (an "Escrow Action").  Any such notice (the "Notice") shall state the Escrow Action being requested and the reason that the Notifying Party believes it is entitled to such Escrow Action.  The Recipient shall have ten calendar days from its receipt of the Notice to provide notice to the Escrow Agent and the Notifying Party disputing the Notifying Party's entitlement to such Escrow Action.  If the Escrow Agent does not receive notice disputing such entitlement to such Escrow Action within ten calendar days after the Recipient receives the Notice, the Escrow Agent shall take such Escrow Action as directed by the Notifying Party.  If the Escrow Agent receives notice disputing such entitlement to such Escrow Action within ten days after the Recipient receives the Notice, the Escrow Agent shall not take any Escrow Action until the Escrow Agent receives either an order of the Bankruptcy Court, which order has become final and not subject to appeal and has been certified by the clerk of the Bankruptcy Court or other appropriate official, or joint written notice signed by Purchaser and Sellers indicating that the dispute has been resolved and directing the Escrow Agent to take a specific Escrow Action (collectively, a "Final Resolution").  Within two business days of its receipt of the written evidence of a Final Resolution required above in this Section 2(e), the Escrow Agent shall take the specified Escrow Action.  The Escrow Agent shall be entitled to rely, exclusively, on any representation jointly made by Purchaser and Sellers in writing in relation to any Escrow Action, and shall take Escrow Actions from time to time as directed in any such joint written instruction from Purchaser and Sellers or pursuant to a Final Resolution.

3.    Termination of Escrow Agreement.  This Escrow Agreement shall terminate upon (a) disbursement of all of the funds in the Escrow Account by the Escrow Agent in accordance with this Escrow Agreement or (b) upon transfer of all amounts in the Escrow Account then in the possession of the Escrow Agent to a successor escrow agent in accordance with the terms of Section 6 below or to the Bankruptcy Court or such other party as shall be ordered by the Bankruptcy Court.

4.    Escrow Agent.

(a)    Purchaser and Sellers, jointly and severally, agree to pay the Escrow Agent compensation for its services as Escrow Agent hereunder, as described on Schedule A annexed hereto, promptly upon request therefor, and to reimburse the Escrow Agent for all reasonable expenses of or disbursements incurred by the Escrow Agent in the performance of its

duties hereunder, including the reasonable fees, expenses and disbursements of counsel to the Escrow Agent. Notwithstanding the foregoing, and without prejudice to the Escrow Agent's rights hereunder, as between Purchaser on the one hand and Sellers on the other hand each shall bear 50% of the fees, costs and expenses of the Escrow Agent and of any indemnity obligation pursuant to Section 5(c) hereof, except that if the Initial Closing occurs all such fees, costs, expenses and indemnities shall be paid by Purchaser.

(b)     The Escrow Agent may retain that portion of the Escrow Account equal to any such unpaid reasonable costs, expenses and fees incurred by the Escrow Agent as contemplated by Section 4(a) above until such time as such costs, expenses and fees have been paid.

5.     Rights, Duties and Immunities of Escrow Agent.  Acceptance by the Escrow Agent of its duties under this Escrow Agreement is subject to the following terms and conditions, which all parties to this Escrow Agreement hereby agree shall govern and control the rights, duties and immunities of the Escrow Agent:

(a)     The duties and obligations of the Escrow Agent shall be determined solely by the express provisions of this Escrow Agreement and the Escrow Agent shall not be liable, except for the performance of such duties and obligations as are specifically set out in this Escrow Agreement.  The Escrow Agent shall not be required to inquire as to the performance or observation of any obligation, term or condition under any agreement or arrangement by Purchaser and Sellers.  The Escrow Agent is not a party to, and is not bound by, any agreement or other document out of which this Escrow Agreement may arise.  The Escrow Agent shall be under no liability to any party hereto by reason of any failure on the part of any other party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  The Escrow Agent shall not be bound by any waiver, modification, termination or rescission of this Escrow Agreement or any of the terms hereof, unless evidenced by a writing delivered to the Escrow Agent signed by the proper party or parties and, if the duties or rights of the Escrow Agent are affected, unless it shall give its prior written consent thereto (which consent shall not be unreasonably withheld).  This Escrow Agreement shall not be deemed to create a fiduciary relationship between the parties hereto under state or federal law.

(b)     The Escrow Agent shall not be responsible in any manner for the validity or sufficiency of this Escrow Agreement or of any property delivered hereunder, or for the value or collectibility of any note, check or other instrument, if any, so delivered, or for any representations made or obligations assumed by any party other than the Escrow Agent.  Nothing herein contained shall be deemed to obligate the Escrow Agent to deliver any cash, instruments, documents or any other property referred to herein, unless the same shall have first been received by the Escrow Agent pursuant to this Escrow Agreement.

(c)     Purchaser and Sellers shall jointly and severally reimburse and indemnify the Escrow Agent for, and hold it harmless against, any loss, liability, costs or expenses, (including but not limited to reasonable counsel fees, disbursements and other charges of counsel incurred by Escrow Agent in any dispute, controversy, action or legal proceeding between it and one of the parties hereto, or between it and a third party) arising out of or in conjunction with its

- 4 -

acceptance of, or the performance of its duties and obligations under this Escrow Agreement (except those arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith) as well as the costs and expenses of defending against any claim or liability arising out of or relating to this Escrow Agreement (except those costs and expenses of defending against any claim or liability arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith).

(d)     The Escrow Agent shall be fully protected in acting on and relying upon any written notice direction, request, waiver, consent, receipt or other paper or document which the Escrow Agent in good faith believes to have been signed and presented by the proper party or parties. The Escrow Agent shall not be responsible for (i) the sufficiency or accuracy of the form of, or the execution, validity, value or genuineness of, any document or property received, held or delivered by it pursuant to the terms of this Escrow Agreement, or of any signature or endorsement on such document or property (other than the signature or endorsement of the Escrow Agent, if any), (ii) the lack of endorsement on such document, or (iii) any description set forth in such document. The Escrow Agent shall not be responsible or liable to the other parties hereto or to anyone else in any respect on account of the identity or authority of the persons executing or delivering or purporting to execute or deliver any document or property pursuant to the terms of this Escrow Agreement (other than the identity and authority of any person executing or delivering or purporting to execute or deliver any property on behalf of the Escrow Agent) or of the persons executing or delivering or purporting to execute and deliver this Escrow Agreement, other than the identity and authority of the person executing this Escrow Agreement on behalf of the Escrow Agent.

(e)     The Escrow Agent shall not be liable for any error of judgment, or for any act done or step taken or omitted by it in good faith or for any mistake in act or law, or for anything which it may do or refrain from doing in connection herewith, except its own gross negligence, willful misconduct or bad faith. Notwithstanding any provisions in this Escrow Agreement to the contrary, the Escrow Agent shall not be liable for any special, indirect, punitive, exemplary or consequential damages or lost profits.

(f)     The Escrow Agent may seek the advice of legal counsel in the event of any dispute or question as to the construction of any of the provisions of this Escrow Agreement or its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the written advice or opinion of such counsel.

(g)     The parties hereto agree that should any dispute arise with respect to the payment, ownership or right of possession of the Escrow Account, the Escrow Agent is authorized and directed to retain in its possession, without liability to anyone, except for its bad faith, willful misconduct or gross negligence, all or any part of the Escrow Account until such dispute shall have been settled either by mutual agreement by the parties concerned or by the final order, decree or judgment of the Bankruptcy Court and a notice executed by the parties to the dispute or their authorized representatives shall have been delivered to the Escrow Agent setting forth the resolution of the dispute, which notice Purchaser and Sellers hereby agree to so execute and deliver to the Escrow Agent in the event that such an order, decree or judgment is

obtained from or issued by the Bankruptcy Court. The Escrow Agent shall be under no duty whatsoever to institute, defend or partake in such proceedings.

(h)     The Escrow Agent shall have no liability for loss arising from any cause beyond its control, including, but not limited to, the following: (i) the act, failure or neglect of any agent or correspondent selected by the other parties hereto; (ii) any delay, error or omission or default of any mail, telephone or wireless agency or operator; and (iii) the acts or edicts of any government or governmental agency or other group or entity exercising governmental powers.

(i)     The agreements set forth in this Section 5 shall survive the resignation or removal of the Escrow Agent, the termination of this Escrow Agreement and the payment of all amounts hereunder.

6.     Resignation of Escrow Agent. The Escrow Agent shall have the right to resign upon twenty (20) days written notice to Sellers and Purchaser. In the event of such resignation, Sellers and Purchaser shall mutually agree upon and appoint a successor escrow agent hereunder (with the identity of such successor escrow agent to be reasonably satisfactory to the Administrative Agent and the Committee) by delivering to the Escrow Agent a written notice of such appointment. Upon receipt of such notice, the Escrow Agent shall deliver to the designated successor escrow agent all money and other property held hereunder and shall thereupon be released and discharged from any and all further responsibilities whatsoever under this Escrow Agreement; provided, however, that the Escrow Agent shall not be deprived of its compensation earned prior to such time. If no successor escrow agent shall have been designated by the date specified in the Escrow Agent's notice, all obligations of the Escrow Agent hereunder shall nevertheless cease and terminate. Its sole responsibility thereafter shall be to keep safely all property then held by it and to deliver the same to a person designated by Sellers and Purchaser (with the identity of the person so designated to be reasonably satisfactory to the Administrative Agent and the Committee) or in accordance with the direction of a final order or judgment of the Bankruptcy Court.

7.     Notices. All instructions, claims, notices, consents, objections and other communications under this Escrow Agreement shall be in writing with a copy to the Administrative Agent and the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "Committee") and shall, except as otherwise provided herein, be deemed to have been duly given and received when (i) delivered by hand, (ii) sent by facsimile (with receipt confirmed), or (iii) when received by the addressee, if sent by Express Mail, Federal Express or other reputable overnight delivery service, in each case, at the appropriate addresses and facsimile numbers as set forth below:

Escrow Agent:          North Fork Bank, a Division of Capital One, N.A.
                       275 Broadhollow Road
                       Melville, New York  11747
                       Attention:  Michael Weisbrod
                       Telephone:  (631) 844-1376
                       Facsimile:  (631) 844-1452

With copies (which shall not constitute notice) to:

North Fork Bank, a Division of Capital One, N.A.
275 Broadhollow Road
Melville, New York  11747
Attention:  Legal Department
Facsimile:  (631) 577-2836

Purchaser:            AH Mortgage Acquisition Co., Inc.
                     c/o WL Ross & Co. LLC
                     1166 Avenue of the Americas, 27th Floor
                     New York, New York  10036
                     Facsimile:  (212) 317-4891
                     Attention:  Mr. Wilbur L. Ross, Chairman

With copies (which shall not constitute notice) to:

Jones Day
222 East 41st Street
New York, New York  10017
Facsimile:  (212) 755-7306
Attention:  Robert A. Profusek, Esq.

Sellers:             c/o American Home Mortgage Investment Corp.
                     538 Broadhollow Road
                     Melville, New York 11747
                     Facsimile:  (516) 949-3929
                     Attention:  Mr. Steven Cooper

With copies (which shall not constitute notice) to:

Kroll Zolfo Cooper
101 Eisenhower Parkway
Roseland, New Jersey 07068
Facsimile:  (973) 618-9430
Attention:  Elizabeth S. Kardos, Esq.

and

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Facsimile:  (302) 571-1253
Attention:  James L. Patton, Jr., Esq.

DLI-6138772v11

Administrative Agent:    Banc of America
                         Strategic Solutions, Inc.
                         901 Main Street, 66th Floor
                         Dallas, TX 75202
                         Facsimile: (214) 290-9475
                         Attention: Jay T. Wampler

                         With copies (which shall not constitute notice) to:

                         Kaye Scholer LLP
                         425 Park Avenue
                         New York, New York 10022
                         Facsimile: (212) 836-6545
                         Attention: Mark F. Liscio, Esq.

Committee:               Hahn & Hessen LLP
                         488 Madison Avenue
                         New York, New York 10022
                         Facsimile: (212) 478-7400
                         Attention: Mark S. Indelicato, Esq.

(or to such other addresses and facsimile numbers as a party may designate as to itself by notice to the other parties). Notwithstanding any of the foregoing, any computation of a time period which is to begin after receipt of a notice by the Escrow Agent shall run from the date of receipt by it.

       8.     <u>Successors; Third-Party Beneficiaries</u>. This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided that this Escrow Agreement may not be assigned by any party without the prior written consent of the other parties, which consent shall not be unreasonably withheld. This Escrow Agreement is not intended to confer any rights or remedies upon any person other than the parties hereto except the rights of the Administrative Agent and the Committee (each of which shall be an express third-party beneficiary) set forth in Section 6 above and Section 10 below.

       9.     <u>Severability</u>. If any portion or provision of this Escrow Agreement shall to any extent be declared illegal or unenforceable by a court of competent jurisdiction, then the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable, shall not be affected thereby, and each portion and provision of this Escrow Agreement shall be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law. The provisions hereof are severable, and in the event any provision hereof should be held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision hereof.

      10.    <u>Amendments</u>. This Escrow Agreement may be amended or modified at any time or from time to time in writing executed by the parties to this Escrow Agreement. Any such

- 8 -

amendment or modification shall be in form reasonably satisfactory to the Administrative Agent and the Committee.

11.     Governing Law.  This Escrow Agreement shall be construed and interpreted, and the rights of the parties shall be determined, in accordance with the substantive laws of the State of New York, without regard to the conflict of laws principles thereof or of any other jurisdiction.

12.     JURISDICTION.  THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO RESOLVE ANY AND ALL DISPUTES ARISING UNDER THIS ESCROW AGREEMENT AND EACH OF THE PARTIES HERETO HEREBY EXPRESSLY CONSENTS TO SUCH EXCLUSIVE JURISDICTION.

13.     Waiver.  No waiver of any provision hereof shall be effective unless made in writing and signed by the waiving party.  The failure of any party to require the performance of any term or obligation of this Escrow Agreement, or the waiver by any party of any breach of this Escrow Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach.

14.     Defined Terms; Headings.  Capitalized terms used herein and not otherwise defined in this Escrow Agreement shall have the meaning ascribed to them in the Asset Purchase Agreement.  The headings and captions in this Escrow Agreement are for convenience of reference only and shall not in any way affect the meaning or interpretation of this Escrow Agreement.

15.     Counterparts.  This Escrow Agreement may be executed in any number of counterparts and by each of the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which together shall constitute one and the same agreement.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the date first written above.

AH MORTGAGE ACQUISITION CO., INC.

By:_____

    Name:
    Title:

AMERICAN HOME MORTGAGE INVESTMENT
    CORP. as Seller and Debtor and Debtor-in-Possession

By:_____

    Name:
    Title:

AMERICAN HOME MORTGAGE CORP.
    as Seller and Debtor and Debtor-in-Possession

By:_____

    Name:
    Title:

AMERICAN HOME MORTGAGE SERVICING, INC.
    as Seller and Debtor and Debtor-in-Possession

By:_____

    Name:
    Title:

NORTH FORK BANK, a Division of Capital One, N.A.
    as Escrow Agent

By:_____

    Name: Michael Weisbrod
    Title: Vice President

- 10 -

C

**EXHIBIT C**

## Dispute Escrow Agreement

DISPUTE ESCROW AGREEMENT (this "Escrow Agreement"), dated as of _____, 2007, by and among AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser"), American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc., a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, "Sellers"), and North Fork Bank, a Division of Capital One, N.A., as escrow agent (the "Escrow Agent").

## WITNESSETH

WHEREAS, Purchaser and Sellers have previously entered into an Asset Purchase Agreement, dated as of September 25, 2007 (the "Asset Purchase Agreement"), involving the purchase of certain assets and the assumption of certain liabilities of Sellers by Purchaser;

WHEREAS, the Bankruptcy Court entered the Sale Approval Order on _____, 2007;

WHEREAS, Section 4.4 of the Asset Purchase Agreement contemplates that, at the Initial Closing, Purchaser will deliver to the Escrow Agent in immediately available funds an amount equal to 0.92% of the unpaid principal balance (as set forth in the Initial Closing Date Report) of Mortgage Loans under the Disputed Servicing Agreements (as increased or decreased as provided herein, the "Dispute Amount");

WHEREAS, Purchaser and Sellers desire to appoint the Escrow Agent to act as escrow agent hereunder in the manner hereinafter set forth and the Escrow Agent is willing to act in such capacity;

NOW THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser, Sellers and the Escrow Agent hereby agree as follows:

1.  Dispute Amount.

    (a)    The Escrow Agent shall establish and maintain on behalf of the parties hereto, an interest bearing account (the "Escrow Account") in the name of Purchaser, subject to the terms and conditions of this Escrow Agreement. Funds held in the Escrow Account shall be applied and disbursed only as provided herein. The Escrow Agent shall, to the extent required by law, segregate the funds held in the Escrow Account from its other funds held as an escrow agent.

    (b)    Purchaser shall deliver to the Escrow Agent for deposit in the Escrow Account (i) at the Initial Closing, the amount required pursuant to the first sentence of

Section 4.4 of the Asset Purchase Agreement (the "Initial Closing Dispute Amount") and (ii) thereafter, the amount, if any, required pursuant to Section 4.1(c) of the Asset Purchase Agreement (the "Additional Dispute Amount"). The Dispute Amount shall be increased by the Additional Dispute Amount, if any, so delivered.

(c)    The Initial Closing Dispute Amount and the Additional Dispute Amount, if any, shall be delivered by wire transfer to the following account of the Escrow Agent (or to such other account of the Escrow Agent as the Escrow Agent shall notify Sellers and Purchaser in writing prior to the transfer of funds and which account Sellers and Purchaser approve):

> ABA No.: 021407912
> Account No.:
> Account Name:  AH Mortgage Acquisition Co., Inc.
>     Dispute Escrow Account

(d)    The Escrow Agent shall immediately upon receipt confirm in writing to Sellers and Purchaser its receipt of the Cash Initial Closing Dispute Amount and the Additional Dispute Amount, if any.

(e)    Funds on deposit in the Escrow Account shall be held in an interest bearing depository account with the Escrow Agent.

(f)    Purchaser shall be deemed the owner of the Dispute Amount in the Escrow Account. As such, Purchaser shall be responsible for the preparation of all tax returns associated with the investments therein and shall pay all costs relating to such returns, including taxes, fines and penalties and interest. The Escrow Account shall be assigned the federal tax identification number of Purchaser. Purchaser shall provide Escrow Agent, at any time upon request of Escrow Agent, with a Form W-8 or W-9 to evidence Purchaser is not subject to any back-up withholding under the United States Internal Revenue Code. Purchaser shall report all income, if any, that is earned on, or derived from, the Dispute Amount as its income, in the taxable year or years in which such income is properly includible and pay any taxes attributable thereto. Except as required by applicable law, the Escrow Agent has no duty to withhold or file any report or any tax liability under any federal or state income tax, local or state property tax, local or state sales or use taxes, or any other tax by any taxing authority.

(g)    The parties hereto acknowledge that, in accordance with Section 11 of the Sale Approval Order, the Initial Closing Dispute Amount, the Additional Dispute Amount and all accrued interest thereon (subject to the provisions of Section 2 below with respect to the withdrawal and disbursement thereof) are subject to the Administrative Agent's existing security interests in and liens as provided in the Cash Collateral Order.

2.    <u>Distributions</u>.

(a)    Funds on deposit in the Escrow Account shall be withdrawn and disbursed by the Escrow Agent only in accordance with this Section 2.

(b)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which (i) state that there has been an overpayment of Purchase Price previously paid

- 2 -

by Purchaser and a portion of such overpayment relates to a Disputed Servicing Agreement and (ii) direct that a specified portion of the Dispute Amount be paid to Purchaser by the Escrow Agent in accordance with Section 4.1(c) of the Asset Purchase Agreement, the Escrow Agent shall, within two business days of receipt of such instructions, disburse to Purchaser the portion of the Dispute Amount specified in such written instructions, together with all accrued interest income thereon, in accordance with the wire transfer instructions set forth in such written instructions. The Dispute Amount shall be decreased by the portion thereof, if any, so disbursed.

(c)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which (i) state that a settlement has been negotiated or a Final Order has been issued determining that a Disputed Servicing Agreement was not terminated at or prior to the Petition Date and, accordingly, such Disputed Servicing Agreement is a Purchased Asset and (ii) direct that a specified portion of the Dispute Amount be paid, on behalf of Sellers, to the Administrative Agent, by the Escrow Agent in accordance with Section 4.4 of the Asset Purchase Agreement, the Escrow Agent shall, within two business days after the Escrow Agent's receipt of such written instructions, disburse, on behalf of Sellers, to the Administrative Agent the portion of the Dispute Amount specified in such written instructions, together with all accrued interest income thereon, in accordance with the wire transfer instructions set forth in such written instructions.

(d)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which (i) state that a Final Order has been issued determining that a Disputed Servicing Agreement was terminated at or prior to the Petition Date or Sellers have determined that neither a negotiated settlement nor a Final Order will be sought with respect to a Disputed Servicing Agreement and, accordingly, such Disputed Servicing Agreement is an Excluded Asset and (ii) direct that a specified portion of the Disputed Amount be paid to Purchaser by the Escrow Agent in accordance with Section 4.4 of the Asset Purchase Agreement, the Escrow Agent shall, within two business days of receipt of such written instructions, disburse to Purchaser the portion of the Dispute Amount specified in such written instructions, together with all accrued interest income thereon, in accordance with the wire transfer instructions set forth in such written instructions.

(e)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which (i) state that Purchaser has elected to treat a Disputed Servicing Agreement that had not become an Excluded Asset by the later of the Final Closing and September 30, 2008 as an Excluded Asset and (ii) direct that a specified portion of the Disputed Amount be paid to Purchaser by the Escrow Agent in accordance with Section 4.4 of the Asset Purchase Agreement, the Escrow Agent shall, within two business days of receipt of such written instructions, disburse to Purchaser the portion of the Dispute Amount specified in such written instructions, together with all accrued interest income thereon, in accordance with the wire transfer instructions set forth in such written instructions.

(f)    If the Escrow Agent receives joint written instructions signed by Purchaser and Sellers which (i) state that Purchaser has elected to treat a Disputed Servicing Agreement that had not become an Excluded Asset by the later of the Final Closing and September 30, 2008 as a Purchased Asset and (ii) direct that a specified portion of the Disputed Amount be paid, on behalf of Sellers, to the Administrative Agent by the Escrow Agent in accordance with

- 3 -

Section 4.4 of the Asset Purchase Agreement, the Escrow Agent shall, within two business days of receipt of such written instructions, disburse, on behalf of Sellers, to the Administrative Agent the portion of the Dispute Amount specified in such written instructions, together with all accrued interest income thereon, in accordance with the wire transfer instructions set forth in such written instructions.

(g)    Either Purchaser on the one hand or Sellers on the other hand (the "Notifying Party") may notify the Escrow Agent and the other party (the "Recipient") that the Notifying Party believes it is entitled to a disbursement of the Dispute Amount and accrued interest income thereon (an "Escrow Action"). Any such notice (the "Notice") shall state the Escrow Action being requested and the reason that the Notifying Party believes it is entitled to such Escrow Action. The Recipient shall have ten calendar days from its receipt of the Notice to provide notice to the Escrow Agent and the Notifying Party disputing the Notifying Party's entitlement to such Escrow Action. If the Escrow Agent does not receive notice disputing such entitlement to such Escrow Action within ten calendar days after the Recipient receives the Notice, the Escrow Agent shall take such Escrow Action as directed by the Notifying Party. If the Escrow Agent receives notice disputing such entitlement to such Escrow Action within ten days after the Recipient receives the Notice, the Escrow Agent shall not take any Escrow Action until the Escrow Agent receives either an order of the Bankruptcy Court, which order has become final and not subject to appeal and has been certified by the clerk of the Bankruptcy Court or other appropriate official, or joint written notice signed by Purchaser and Sellers indicating that the dispute has been resolved and directing the Escrow Agent to take a specific Escrow Action (collectively, a "Final Resolution"). Within two business days of its receipt of the written evidence of a Final Resolution required above in this Section 2(e), the Escrow Agent shall take the specified Escrow Action. The Escrow Agent shall be entitled to rely, exclusively, on any representation jointly made by Purchaser and Sellers in writing in relation to any Escrow Action, and shall take Escrow Actions from time to time as directed in any such joint written instruction from Purchaser and Sellers or pursuant to a Final Resolution.

3.    Termination of Escrow Agreement.  This Escrow Agreement shall terminate upon (a) disbursement of all of the funds in the Escrow Account by the Escrow Agent in accordance with this Escrow Agreement or (b) upon transfer of all amounts in the Escrow Account then in the possession of the Escrow Agent to a successor escrow agent in accordance with the terms of Section 6 below or to the Bankruptcy Court or such other party as shall be ordered by the Bankruptcy Court.

4.    Escrow Agent.

(a)    Purchaser and Sellers, jointly and severally, agree to pay the Escrow Agent compensation for its services as Escrow Agent hereunder, as described on Schedule A annexed hereto, promptly upon request therefor, and to reimburse the Escrow Agent for all reasonable expenses of or disbursements incurred by the Escrow Agent in the performance of its duties hereunder, including the reasonable fees, expenses and disbursements of counsel to the Escrow Agent. Notwithstanding the foregoing, and without prejudice to the Escrow Agent's rights hereunder, as between Purchaser on the one hand and Sellers on the other hand, each shall bear 50% of the fees, costs and expenses of the Escrow Agent and of any indemnity obligation pursuant to Section 5(c) hereof.

-4-

(b)     The Escrow Agent may retain that portion of the Escrow Account equal to any such unpaid reasonable costs, expenses and fees incurred by the Escrow Agent as contemplated by Section 4(a) above until such time as such costs, expenses and fees have been paid.

5.      Rights, Duties and Immunities of Escrow Agent.  Acceptance by the Escrow Agent of its duties under this Escrow Agreement is subject to the following terms and conditions, which all parties to this Escrow Agreement hereby agree shall govern and control the rights, duties and immunities of the Escrow Agent:

(a)     The duties and obligations of the Escrow Agent shall be determined solely by the express provisions of this Escrow Agreement and the Escrow Agent shall not be liable, except for the performance of such duties and obligations as are specifically set out in this Escrow Agreement.  The Escrow Agent shall not be required to inquire as to the performance or observation of any obligation, term or condition under any agreement or arrangement by Purchaser and Sellers.  The Escrow Agent is not a party to, and is not bound by, any agreement or other document out of which this Escrow Agreement may arise.  The Escrow Agent shall be under no liability to any party hereto by reason of any failure on the part of any other party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  The Escrow Agent shall not be bound by any waiver, modification, termination or rescission of this Escrow Agreement or any of the terms hereof, unless evidenced by a writing delivered to the Escrow Agent signed by the proper party or parties and, if the duties or rights of the Escrow Agent are affected, unless it shall give its prior written consent thereto (which consent shall not be unreasonably withheld).  This Escrow Agreement shall not be deemed to create a fiduciary relationship between the parties hereto under state or federal law.

(b)     The Escrow Agent shall not be responsible in any manner for the validity or sufficiency of this Escrow Agreement or of any property delivered hereunder, or for the value or collectibility of any note, check or other instrument, if any, so delivered, or for any representations made or obligations assumed by any party other than the Escrow Agent.  Nothing herein contained shall be deemed to obligate the Escrow Agent to deliver any cash, instruments, documents or any other property referred to herein, unless the same shall have first been received by the Escrow Agent pursuant to this Escrow Agreement.

(c)     Purchaser and Sellers shall jointly and severally reimburse and indemnify the Escrow Agent for, and hold it harmless against, any loss, liability, costs or expenses, (including but not limited to reasonable counsel fees, disbursements and other charges of counsel incurred by Escrow Agent in any dispute, controversy, action or legal proceeding between it and one of the parties hereto, or between it and a third party) arising out of or in conjunction with its acceptance of, or the performance of its duties and obligations under this Escrow Agreement (except those arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith) as well as the costs and expenses of defending against any claim or liability arising out of or relating to this Escrow Agreement (except those costs and expenses of defending against any claim or liability arising out of or in connection with Escrow Agent's willful misconduct, gross negligence or bad faith).

- 5 -

(d)     The Escrow Agent shall be fully protected in acting on and relying upon any written notice direction, request, waiver, consent, receipt or other paper or document which the Escrow Agent in good faith believes to have been signed and presented by the proper party or parties. The Escrow Agent shall not be responsible for (i) the sufficiency or accuracy of the form of, or the execution, validity, value or genuineness of, any document or property received, held or delivered by it pursuant to the terms of this Escrow Agreement, or of any signature or endorsement on such document or property (other than the signature or endorsement of the Escrow Agent, if any), (ii) the lack of endorsement on such document, or (iii) any description set forth in such document. The Escrow Agent shall not be responsible or liable to the other parties hereto or to anyone else in any respect on account of the identity or authority of the persons executing or delivering or purporting to execute or deliver any document or property pursuant to the terms of this Escrow Agreement (other than the identity and authority of any person executing or delivering or purporting to execute or deliver any property on behalf of the Escrow Agent) or of the persons executing or delivering or purporting to execute and deliver this Escrow Agreement, other than the identity and authority of the person executing this Escrow Agreement on behalf of the Escrow Agent.

(e)     The Escrow Agent shall not be liable for any error of judgment, or for any act done or step taken or omitted by it in good faith or for any mistake in act or law, or for anything which it may do or refrain from doing in connection herewith, except its own gross negligence, willful misconduct or bad faith. Notwithstanding any provisions in this Escrow Agreement to the contrary, the Escrow Agent shall not be liable for any special, indirect, punitive, exemplary or consequential damages or lost profits.

(f)     The Escrow Agent may seek the advice of legal counsel in the event of any dispute or question as to the construction of any of the provisions of this Escrow Agreement or its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the written advice or opinion of such counsel.

(g)     The parties hereto agree that should any dispute arise with respect to the payment, ownership or right of possession of the Escrow Account, the Escrow Agent is authorized and directed to retain in its possession, without liability to anyone, except for its bad faith, willful misconduct or gross negligence, all or any part of the Escrow Account until such dispute shall have been settled either by mutual agreement by the parties concerned or by the final order, decree or judgment of the Bankruptcy Court and a notice executed by the parties to the dispute or their authorized representatives shall have been delivered to the Escrow Agent setting forth the resolution of the dispute, which notice Purchaser and Sellers hereby agree to so execute and deliver to the Escrow Agent in the event that such an order, decree or judgment is obtained from or issued by the Bankruptcy Court. The Escrow Agent shall be under no duty whatsoever to institute, defend or partake in such proceedings.

(h)     The Escrow Agent shall have no liability for loss arising from any cause beyond its control, including, but not limited to, the following:  (i) the act, failure or neglect of any agent or correspondent selected by the other parties hereto; (ii) any delay, error or omission or default of any mail, telephone or wireless agency or operator; and (iii) the acts or edicts of any government or governmental agency or other group or entity exercising governmental powers.

DLI-6141883v5

(i)    The agreements set forth in this Section 5 shall survive the resignation or removal of the Escrow Agent, the termination of this Escrow Agreement and the payment of all amounts hereunder.

6.    <u>Resignation of Escrow Agent</u>.  The Escrow Agent shall have the right to resign upon twenty (20) days written notice to Sellers and Purchaser.  In the event of such resignation, Sellers and Purchaser shall mutually agree upon and appoint a successor escrow agent hereunder (subject to the provisions of Section 8 of the Sale Approval Order) by delivering to the Escrow Agent a written notice of such appointment.  Upon receipt of such notice, the Escrow Agent shall deliver to the designated successor escrow agent all money and other property held hereunder and shall thereupon be released and discharged from any and all further responsibilities whatsoever under this Escrow Agreement; <u>provided, however</u>, that the Escrow Agent shall not be deprived of its compensation earned prior to such time.  If no successor escrow agent shall have been designated by the date specified in the Escrow Agent's notice, all obligations of the Escrow Agent hereunder shall nevertheless cease and terminate.  Its sole responsibility thereafter shall be to keep safely all property then held by it and to deliver the same to a person designated by Sellers and Purchaser (subject to the provisions of Section 8 of the Sale Approval Order) or in accordance with the direction of a final order or judgment of the Bankruptcy Court.

7.    <u>Notices</u>.  All instructions, claims, notices, consents, objections and other communications under this Escrow Agreement shall be in writing with a copy to the Administrative Agent and the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "Committee") and shall, except as otherwise provided herein, be deemed to have been duly given and received when (i) delivered by hand, (ii) sent by facsimile (with receipt confirmed), or (iii) when received by the addressee, if sent by Express Mail, Federal Express or other reputable overnight delivery service, in each case, at the appropriate addresses and facsimile numbers as set forth below:

ESCROW AGENT:                North Fork Bank, a Division of Capital One, N.A.
                             275 Broadhollow Road
                             Melville, New York  11747
                             Attention:  Michael Weisbrod
                             Telephone:  (631) 844-1376
                             Facsimile:  (631) 844-1452

                             With copies (which shall not constitute notice) to:

                             North Fork Bank, a Division of Capital One, N.A.
                             275 Broadhollow Road
                             Melville, New York  11747
                             Attention:  Legal Department
                             Facsimile:  (631) 577-2836

PURCHASER:

AH Mortgage Acquisition Co., Inc.
c/o WL Ross & Co. LLC
1166 Avenue of the Americas, 27th Floor
New York, New York 10036
Facsimile: (212) 317-4891
Attention: Mr. Wilbur L. Ross, Chairman

With copies (which shall not constitute notice) to:

Jones Day
222 East 41st Street
New York, New York 10017
Facsimile: (212) 755-7306
Attention: Robert A. Profusek, Esq.

SELLERS:

c/o American Home Mortgage Investment Corp.
538 Broadhollow Road
Melville, New York 11747
Facsimile: (516) 949-3929
Attention: Mr. Steven Cooper

With copies (which shall not constitute notice) to:

Kroll Zolfo Cooper
101 Eisenhower Parkway
Roseland, New Jersey 07068
Facsimile: (973) 618-9430
Attention: Elizabeth S. Kardos, Esq.

and

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Facsimile: (302) 571-1253
Attention: James L. Patton, Jr., Esq.

DLI-6141883v5

ADMINISTRATIVE AGENT:                 Banc of America
                                      Strategic Solutions, Inc.
                                      901 Main Street, 66th Floor
                                      Dallas, TX 75202
                                      Facsimile: (214) 290-9475
                                      Attention: Jay T. Wampler

                                      With copies (which shall not constitute notice) to:

                                      Kaye Scholer LLP
                                      425 Park Avenue
                                      New York, New York 10022
                                      Facsimile: (212) 836-6545
                                      Attention: Mark F. Liscio, Esq.

COMMITTEE:                            Hahn & Hessen LLP
                                      488 Madison Avenue
                                      New York, New York 10022
                                      Facsimile: (212) 478-7400
                                      Attention: Mark S. Indelicato, Esq.

(or to such other addresses and facsimile numbers as a party may designate as to itself by notice
to the other parties). Notwithstanding any of the foregoing, any computation of a time period
which is to begin after receipt of a notice by the Escrow Agent shall run from the date of receipt
by it.

8.      Successors. This Escrow Agreement shall be binding upon and inure to the
benefit of the parties hereto and their respective successors and assigns, provided that this
Escrow Agreement may not be assigned by any party without the prior written consent of the
other parties, which consent shall not be unreasonably withheld.

9.      Severability. If any portion or provision of this Escrow Agreement shall to any
extent be declared illegal or unenforceable by a court of competent jurisdiction, then the
application of such portion or provision in circumstances other than those as to which it is so
declared illegal or unenforceable, shall not be affected thereby, and each portion and provision of
this Escrow Agreement shall be construed by modifying or limiting it so as to be valid and
enforceable to the maximum extent compatible with, and possible under, applicable law. The
provisions hereof are severable, and in the event any provision hereof should be held invalid or
unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any
other provision hereof.

10.     Amendments. Subject to the provisions of Section 8 of the Sale Approval Order,
this Escrow Agreement may be amended or modified at any time or from time to time in writing
executed by the parties to this Escrow Agreement.

11.     Governing Law. This Escrow Agreement shall be construed and interpreted, and
the rights of the parties shall be determined, in accordance with the substantive laws of the State

of New York, without regard to the conflict of laws principles thereof or of any other jurisdiction.

12.     JURISDICTION. THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO RESOLVE ANY AND ALL DISPUTES ARISING UNDER THIS ESCROW AGREEMENT AND EACH OF THE PARTIES HERETO HEREBY EXPRESSLY CONSENTS TO SUCH EXCLUSIVE JURISDICTION.

13.     Waiver. No waiver of any provision hereof shall be effective unless made in writing and signed by the waiving party. The failure of any party to require the performance of any term or obligation of this Escrow Agreement, or the waiver by any party of any breach of this Escrow Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach.

14.     Defined Terms; Headings. Capitalized terms used herein and not otherwise defined in this Escrow Agreement shall have the meaning ascribed to them in the Asset Purchase Agreement. The headings and captions in this Escrow Agreement are for convenience of reference only and shall not in any way affect the meaning or interpretation of this Escrow Agreement.

15.     Counterparts. This Escrow Agreement may be executed in any number of counterparts and by each of the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which together shall constitute one and the same agreement.

[Remainder of Page Intentionally Left Blank]

- 10 -

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the date first written above.

AH MORTGAGE ACQUISITION CO., INC.

By:_____
    Name:
    Title:

AMERICAN HOME MORTGAGE INVESTMENT
CORP.
as Seller and Debtor and Debtor-in-Possession

By:_____
    Name:
    Title:

AMERICAN HOME MORTGAGE CORP.
as Seller and Debtor and Debtor-in-Possession

By:_____
    Name:
    Title:

AMERICAN HOME MORTGAGE SERVICING, INC.
as Seller and Debtor and Debtor-in-Possession

By:_____
    Name:
    Title:

NORTH FORK BANK, a Division of Capital One,
N.A.
as Escrow Agent

By:_____
    Name: Michael Weisbrod
    Title: Vice President

- 11 -