**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------x
In re:                                          :  Chapter 11
                                                :
AMERICAN HOME MORTGAGE                          :  Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et      :
al.,¹                                           :  Jointly Administered
                                                :
        Debtors.                                :  Hearing Date: October 31, 2007 at 10:00 a.m. (ET)
                                                x  Objection Deadline: October 31, 2007 at 10:00 a.m. (ET)
------------------------------------------------------------
```

**EMERGENCY MOTION OF DEBTORS PURSUANT TO SECTIONS 105(a), 361, 362, 363, 364, AND 552 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(b) FOR ENTRY OF INTERIM AND FINAL STIPULATED ORDERS EXTENDING THE DEBTORS' LIMITED USE OF CASH COLLATERAL**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors") hereby move (this "Motion") for the entry of interim (the "Interim Stipulated Order") and final (the "Final Stipulated Order") stipulated orders authorizing the Debtors, pursuant to sections 105(a), 361, 362, 363, 364 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to continue to use Cash Collateral (as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

defined herein) in accordance with the Budget (as defined herein) through November 15, 2007[2] (the "Extended Termination Date"). In support of this motion (the "Motion"), the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On August 14, 2007, the Office of the United States Trustee for the District of Delaware (the "Trustee") appointed an official committee of unsecured creditors (the "Committee").

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 361, 362, 363, 364 and 552 of the Bankruptcy Code, Bankruptcy Rule 4001(b) and Local Rule 4001-2.

## BACKGROUND OF THE DEBTORS

### I. The Debtors

4. Prior to the Petition Date the Debtors' business primarily entailed the origination, servicing and sale of mortgage loans as well as investment in mortgage-backed securities and mortgage loans resulting from the securitization of residential mortgage loans. Collectively, the Debtors, prior to August 3, 2007, employed over 7,500 people and constituted one of the largest mortgage bankers in the country.

---

[2] The Debtors reserve the right to seek a further extension of the Extended Termination Date.

2

## II. The Debtors' Loan Servicing Business

5. One segment of the Debtors' business is the loan servicing business (the "Servicing Business"), which is an active and revenue producing unit that is conducted through AHM Servicing. As this Court is well aware, the Servicing Business has been and remains a very important and profitable part of the Debtors' business. Loans are serviced primarily for the trusts of the Debtors' securitizations and for Fannie Mae, Ginnie Mae and other third-party purchasers of the loans originated by the Debtors. Servicing Business activities are designed and implemented to ensure that the borrowers repay each loan in a mortgage servicing portfolio in accordance with its terms. The Debtors' Servicing Business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries and enables the Debtors to maintain control over the collection and default mitigation processes.

6. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion. The weighted-average servicing fee on the Debtors' servicing portfolio as of December 31, 2006, was 0.347% of the principal amount of each loan serviced. These servicing fees are typically collected from the monthly payments made by the borrowers on the loans. In addition, the Debtors receive other remuneration for loan servicing, including float benefits representing interest earned on collection accounts where mortgage payments are held pending remittance to investors, as well as mortgagor-contracted fees such as late fees and, in some cases, prepayment penalties.

## III. The Debtors' Credit Facility with Bank of America

7. One of the Debtors financing instruments is a credit facility with Bank of America, N.A. (the "Administrative Agent"), as administrative agent, swing line lender and a lender and other lenders (collectively, the "Lenders"). Pursuant to a credit agreement dated

August 10, 2006 (as amended and restated and together with all agreements, documents, notes and instruments delivered pursuant thereto or in connection therewith, the "Loan Agreement") by and between certain of the Debtors (the "Borrowers")[3] and the Lenders, the Lenders made various loans, advances and extensions of credit to or for the benefit of the Borrowers.

        8.    The Administrative Agent, for the benefit of itself and the Lenders, asserts that the obligations under the Loan Agreement are secured by security interests and liens (together, the "Liens") in certain of the Debtors' assets, as set forth in the security and collateral agency agreement, dated August 30, 2004 by and between the Borrowers and the Lenders (the "Security Agreement"), which include all Mortgage Loans[4]; all Warehouse-Related Mortgage Backed Securities; all rights of any of the Borrowers under all Take-Out Commitments, Hedging Arrangements and all rights to deliver Mortgage Loans and/or Warehouse-Related Mortgage Backed Securities; all accounts maintained with broker-dealers by any Borrower for the purpose of carrying out transactions under Take-Out Commitments and hedge contracts and other futures and futures options transactions involving Mortgage Loans and/or Warehouse-Related Mortgage Backed Securities; all rights to service, administer and/or collect Mortgage Loans; all Servicing Rights; all Servicing Receivables; all accounts, escrow accounts, contract rights and general intangibles constituting or relating to any of the foregoing; all files, documents, instruments, surveys, certificates, correspondence, appraisals, computer programs, tapes, discs, cards, accounting records and other books, records, information and data of the Borrowers relating to the foregoing; the Funding Account, the Settlement Account, the Mortgage Backed Securities

---

[3] The Borrowers are American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc., American Home Mortgage Servicing, Inc. and American Home Mortgage Corp. Additionally, American Home Mortgage Holdings Inc. is a guarantor under the Loan Agreement

[4] All capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Security Agreement.

4

Safekeeping Account, and any and all Custodian Settlement Accounts and any and all funds at any time held in any such accounts (collectively, the "Prepetition Collateral"), and all proceeds and products derived from the Prepetition Collateral. More specifically and pertinent to the relief sought by this Motion, the Administrative Agent, for the benefit of itself and the Lenders, asserts first priority security interests and liens in all the assets of the Debtors' Servicing Business and all proceeds and products derived therefrom.

9. As of the Petition Date, the approximate outstanding balance owing under the Loan Agreement was $1,104,550,000.

### IV. Sale of the Loan Servicing Business

10. On the Petition Date, the Debtors filed their Emergency Motion of the Debtors for Orders: (A)(i) Approving Sale Procedures; (ii) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (iii) Approving Form and Manner of Notice Thereof; and (iv) Granting Related Relief; and (B)(i) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing and Approving Purchase Agreement Thereto; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief (D.I. 11; the "Sale Motion"). By Order dated August 9, 2007, (D.I. 113), this Court granted the Sale Motion to the extent it requested the establishment of sale procedures.

11. By Order dated October 30, 2007 (D.I. 1711; the "Sale Order"), this Court approved the sale (the "Sale") of the Servicing Business to AH Mortgage Acquisition Co., Inc. (the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement (as amended by the First Amendment to the Asset Purchaser Agreement and together with all exhibits and schedules thereto, the "APA"). The Sale will be closed in two steps; an initial (or economic)

closing currently anticipated to occur in mid-November (the "Initial Closing") and a final closing anticipated to occur on or prior to September 30, 2008.

## V. Debtors' Existing Use of Cash Collateral

12. To maintain the value of the Serving Business while a sale of the Servicing Business was pursued, on the Petition Date, the Debtors sought authority to use the cash derived from operating the Servicing Business which serves as collateral held by the Administrative Agent for the benefit of itself and the Lenders (the "Cash Collateral") through filing the Motion of the Debtors Pursuant to Sections 105(a), 361, 362, 363, 364, and 552 of the Bankruptcy Code and Bankruptcy Rule 4001(b) for Entry of Interim and Final Orders (A) Authorizing Limited Use of Cash Collateral in Connection with Operating the Servicing Business; (B) Granting Adequate Protection; and (C) Scheduling a Final Hearing on the Motion (D.I. 16; the "Cash Collateral Motion").

13. On September 4, 2007, this Court entered a final order approving the relief requested by the Cash Collateral Motion (D.I. 554; the "Final Order"). Pursuant to the Final Order, this Court authorized the Debtors to use Cash Collateral on a limited basis in accordance with the budget attached to the Final Order as Exhibit A (the "Existing Budget"). However, the Existing Budget only contemplated the use of Cash Collateral through the week beginning October 29, 2007, and, pursuant to the Final Order, the right to use Cash Collateral will expire on October 31, 2007, unless extended.

14. At the time this Court entered the Final Order, the Debtors anticipated they would close on a sale of the Servicing Business prior to October 31, 2007. However, the Debtors presently anticipate that the Initial Closing will occur in mid-November. As a result, the Debtors need to extend the use of Cash Collateral in order to fund the Servicing Business beyond October 31, 2007 through the Initial Closing. From and after the Initial Closing, the Purchaser

6

will fund all obligations associated with the Servicing Business in accordance with the terms of the APA and the Sale Order.

## RELIEF REQUESTED

15. The Debtors hereby request that this Court (i) enter the Interim Stipulated Order, (ii) schedule a final hearing, and (iii) enter the Final Stipulated Order. The Interim and Final Stipulated Orders provide for the continued use of Cash Collateral on the same terms as those set forth in the Final Order approved by this Court on September 4, 2007, with certain modifications. The primary modifications provided for in the proposed Interim Stipulated Order are:

(a) The Termination Date is extended from October 31, 2007 to November 15, 2007;

(b) A new budget is attached to replace the budget attached to the Final Order as Exhibit A;

(c) Paragraph 6 of the Final Order is modified to eliminate the provision providing for the use of certain funds for making advances under construction loans and to provide for the amounts in the Construction Lock Box Account to be paid over to the Administrative Agent;

(d) Language has been added to paragraph 6 to provide for all Cash Collateral related to the Servicing Business to be paid over to the Administrative Agent upon the Initial Closing except for an amount needed to pay budgeted expenses which have been properly and actually incurred but remain unpaid as of the Initial Closing (any dispute regarding such amount shall be determined by the Court);

(e) Language has been added at the end of paragraph 6 to require the Collateral Agent and the Prepetition Secured Lenders to transfer all Collateral in their possession to the Administrative Agent to be applied to the permanent reduction of the outstanding principal amount of the Indebtedness.

(f) Language has been added to paragraph 11 to make the Initial Closing a Termination Event; and

(g) Clarifying language has been added to paragraph 11 to provide that subject to further order of the Court and until the Indebtedness is

indefeasibly paid in full in cash, the Administrative Agent shall be entitled to receive all proceeds from the collection, sale, disposition or liquidation of the Collateral including, but not limited to, all collections of principal and interest on the Mortgage Loans as set forth in the Final Order (including any extensions or amendments thereof), regardless of whether the Termination Date has occurred.

16. The Debtors, with the assistance of their financial advisors, have prepared a revised budget (the "Budget"),[5] that shows the Debtors' projected expenditures through the Extended Termination Date and estimates the period in which such cash expenditures will either need to be paid or accrue.

## BASIS FOR RELIEF REQUESTED

17. The reasons supporting the Debtors' continued use of Cash Collateral are compelling. First and foremost, the continued use of Cash Collateral will enable the Debtors to preserve the value of the Servicing Business by funding the day-to-day operating expenses of the Servicing Business, including payments to remaining employees, until the Initial Closing. The continued use of Cash Collateral will allow the Debtors to further preserve the value of the Servicing Business until the Initial Closing. Absent the continued use of Cash Collateral, the Debtors will be unable to operate the Servicing Business in a manner necessary to maintain and maximize the value of such asset.

18. Moreover, unless the Debtors have continued access to the Cash Collateral, the value of the Collateral -- namely, the Servicing Business as a going concern -- will be seriously diminished. Simply stated, without the continued use of the Cash Collateral as requested by this Motion, the Debtors will suffer immediate and irreparable harm, their Servicing Business operations will cease and the operational value of the Servicing Business – which is significantly higher than its distressed liquidation value – will not be realized.

---

[5] A copy of the Budget is attached as Exhibit B to the Interim Stipulated Order.

## APPLICABLE LAW

19.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985); *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 36 (Bank S.D.N.Y. 1990).

20.     Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 15-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985), 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bank S.D.N.Y. 1990) 115 B.R. at 38. After the 15-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g., Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

21.     Adequate protection must be determined on a case-by-case basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period. *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge v. Production Credit Assoc. and Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich.

1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

22. As more fully set forth in the Final Order, as adequate protection for the use of the Lenders' Cash Collateral, the Debtors provided the Lenders with, *inter alia*, replacement liens in the form of security interests and liens only upon the same assets of the Servicing Business upon which they held a prepetition lien, subject only to valid, perfected and enforceable prepetition liens (if any) which are senior to the Lenders' Liens as of the Petition Date. By the Interim and Final Stipulated Orders, the Debtors seek to continue to provide the Lenders with adequate protection on the same terms provided for in the Final Order.

23. The terms and conditions on which the Debtors may continue to use Cash Collateral are substantially identical to the terms and conditions set forth in the Final Order, which were carefully designed to meet the dual goals of sections 361 and 363 and which were heavily negotiated by the Debtors, the Lenders and the Committee. If the Interim and Final Stipulated Orders are entered, the Debtors will have access to working capital to operate the Servicing Business and, pending the Initial Closing, maintain its value for the benefit of the Purchaser, the Lenders and other creditors. At the same time, the Lenders will continue to be adequately protected for consenting to such use. Therefore, the Debtors respectfully submit that the continued use of Cash Collateral on the terms set forth in the Interim and Final Stipulated Orders provides the Lenders with adequate protection and is in the best interest of the Debtors, their estates, their creditors and all parties in interest and therefore should be authorized by this Court.

## REQUEST FOR FINAL HEARING

24. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request the Court to set a date for a final hearing on this Motion.

## NOTICE

25. Notice of this Motion and entry of the Interim Stipulated Order will be given by e-mail and facsimile, if available, hand delivery or Federal Express overnight delivery to (i) the Trustee; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A.; (iv) counsel to the DIP lender; (v) counsel to the Purchaser; and (vi) those parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

DB02:6315069.6

066585.1001

WHEREFORE, the Debtors respectfully request entry of the Interim Stipulated Order, in the form annexed hereto as <u>Exhibit 1</u>, schedule a final hearing, enter the Final Stipulated Order following the final hearing, and such other and further relief as is just and proper.

Dated:   Wilmington, Delaware
         October 30, 2007

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              _____
                              James L. Patton, Jr. (No. 2202)
                              Joel A. Waite (No. 2925)
                              Pauline K. Morgan (No. 3650)
                              Ian S. Fredericks (No. 4626)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Attorneys for Debtors and Debtors in Possession