# EXHIBIT 1

## (Interim Stipulated Order)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case Nos. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | Related Docket Nos. 554 & _____ |
| | ) | |

**FIRST INTERIM STIPULATION AND ORDER EXTENDING LIMITED USE OF CASH COLLATERAL PURSUANT TO THE FINAL ORDER (I) AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL, (II) GRANTING REPLACEMENT LIENS AND ADEQUATE PROTECTION TO CERTAIN PRE-PETITION SECURED PARTIES AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

## WHEREAS:

A.       On August 6, 2007 (the "Petition Date"), American Home Mortgage Holdings, Inc. and certain of its affiliates (the "Debtors")[1] filed with this Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1005(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

B.       On August 7, 2007, this Court entered its *Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001* [D.I. 68].

---

[1]       The Debtors are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

C.     On September 4, 2007, this Court entered its *Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* [D.I. 554] (the "Final Cash Collateral Order"), a copy of which is attached hereto.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Final Cash Collateral Order.

D.     The Final Cash Collateral Order authorizes the Debtors to use the Pre-Petition Collateral, including the Cash Collateral, solely in accordance with the terms and conditions set forth therein through no later than October 31, 2007.

E.     On October 30, 2007, this Court entered its *Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief* [D.I. 1711], attached to which is a copy of the Asset Purchase Agreement (the "APA") pursuant to which the Servicing Business is being sold.

F.     In order to ensure that the Debtors have sufficient cash necessary to continue operating the Servicing Business until the Initial Closing (as such term is defined in the APA), the Debtors and the Administrative Agent have agreed to a limited extension of the use of Cash Collateral.  Without such continued use of Cash Collateral, the Debtors will be unable to pay necessary expenses of the Servicing Business including, without limitation, payroll and servicing advances to the date of the Initial Closing, thereby risking immediate and irreparable harm to the Debtors and their estates.  The ability of the Debtors to fund the Servicing Business through the use of Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets.

Accordingly, the parties to this First Interim Stipulation and Order seek immediate entry hereof pursuant to Bankruptcy Rule 4001(b)(2) in connection with the Debtors' immediate need to obtain continued use of Cash Collateral pursuant to the terms of the Final Cash Collateral Order, as amended and supplemented by this First Interim Stipulation and Order.

**NOW, THEREFORE,** the parties hereto hereby stipulate and agree to amend and supplement the Final Cash Collateral Order as follows:

1.     The following new paragraph is hereby added to the Final Cash Collateral Order following paragraph M on page 6 of the Final Cash Collateral Order:

> N.     On October 30, 2007 this Court entered its *Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief* [D.I. 1711], attached to which is a copy of the Asset Purchase Agreement (the "APA") pursuant to which the Servicing Business is being sold.

2.     Paragraph 6 of the Final Cash Collateral Order is hereby amended and replaced in its entirety with the following new paragraph 6:

> 6.     As additional adequate protection and without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors shall pay indefeasibly in cash:  (A) immediately upon entry of the Interim Order and on the first business day of each week thereafter, to the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Lenders, in permanent reduction of the outstanding principal amount of the Indebtedness, all amounts on deposit in the Collateral Agent Accounts, the Cash Collateral Accounts and the Construction Lock Box Account (other than amounts maintained in the Servicing Account) on each such date; (B) (x) following the entry of the Interim Order, to the Administrative Agent, for the benefit of the Pre-Petition Secured Parties, an amount equal to all incurred but unpaid usual and customary fees, expenses and costs of the Pre-Petition Secured Parties, including administrative or collateral fees, owing as of the Petition Date; and (y) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Administrative Agent under the Credit Agreement arising prior to the Petition Date; (C) (x) on September 5, 2007, in permanent reduction of Indebtedness, all Cash Collateral on hand in respect

of the Servicing Business (including, without limitation, all funds in the Servicing Account) in excess of $10 million, (y) on October 24, 2007, in permanent reduction of Indebtedness, all Cash Collateral on hand in respect of the Servicing Business (including, without limitation, all funds in the Servicing Account) in excess of $5 million, and (z) on the Initial Closing Date (as defined in the APA), in permanent reduction of Indebtedness, all Cash Collateral on hand in respect of the Servicing Business (including, without limitation, all funds in the Servicing Account) other than an amount of Cash Collateral necessary to pay the disbursements set forth in the Budget that were properly and actually incurred prior to the Initial Closing Date pursuant to this Final Order (including any extensions or amendments hereof), which amount shall be acceptable to the Administrative Agent in its reasonable discretion with any disputes regarding such amount to be resolved by the Court (it being understood that notwithstanding anything to the contrary in this Final Order or elsewhere, the Administrative Agent and the Pre-Petition Secured Lenders shall not be obligated to fund any such disbursements from any source other than cash balances on hand from "Sources of Cash" set forth in the Budget); and (D) on a current basis, to the Administrative Agent, for the benefit of the Pre-Petition Secured Parties, (x) all incurred but unpaid usual and customary fees, expenses, and costs of the Pre-Petition Secured Parties, including administrative or collateral fees, arising subsequent to the Petition Date, and (y) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Administrative Agent under the Credit Agreement arising subsequent to the Petition Date. The payment of the fees, expenses and disbursements set forth in this paragraph 6 of the Final Order (including professional fees and expenses of Kaye Scholer LLP, Potter Anderson & Corroon LLP and any other professionals or advisors retained by or on behalf of the Administrative Agent) shall be made within ten (10) days after the receipt by the Debtors (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors, the United States Trustee and the Committee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors, the Committee or the United States Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Administrative Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees. The Collateral Agent is hereby authorized and directed to transfer all amounts on deposit in the Collateral Agent Accounts to the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Lenders, which amounts will be applied by the Administrative Agent in permanent reduction of the outstanding principal amount of the Indebtedness. Each of the Pre-Petition Secured Lenders is hereby authorized and directed to transfer all amounts on deposit with each such Pre-Petition Secured Lender which constitute proceeds of the Pre-Petition Collateral or the Collateral to the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Lenders, which amounts will be applied by the Administrative Agent in permanent reduction of the outstanding principal amount of the Indebtedness.

3.    Paragraph 11 of the Final Cash Collateral Order is hereby amended and replaced in its

entirety with the following new paragraph 11:

11.    The Debtors' use of the Collateral (including, without limitation, Cash Collateral) shall terminate (subject to any applicable notice requirements as set forth below) on the earliest to occur of (each such occurrence being hereinafter referred to as a "Termination Event"):  (a) November 15, 2007 (the "Expiration Date"); (b) the dismissal of the Cases or the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) the entry by this Court of one or more orders granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or the Pre-Petition Secured Parties without the written consent of the Administrative Agent (which consent may be withheld in its sole discretion) with respect to Pre-Petition Collateral or Collateral having an aggregate value in excess of $1,000,000; (d) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (e) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtors; (f) the failure by the Debtors to make any payment required pursuant to the Interim Order or this Final Order (including any extensions or amendments hereof) when due; (g) the failure by the Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to this Final Order (including any extensions or amendments hereof) when due or any such documents or other information shall contain a material misrepresentation; (h) the failure by the Debtors to observe or perform any of the material terms or material provisions contained herein; (i) the entry of an order of this Court approving the terms of any debtor-in-possession financing for any of the Debtors which creates any liens with respect to any of the Pre-Petition Collateral or the Collateral at any time or that allows any party to seek to enforce, directly or indirectly, an administrative or priority claim in respect thereto unless and until all of the Indebtedness has been indefeasibly paid in full in cash; (j) the entry of an order of this Court reversing, staying, vacating or otherwise modifying in any material respect the terms of the Interim Order, this Final Order or the *First Interim Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001* or (k) the occurrence of the Initial Closing Date (as defined in the APA).  On and after the occurrence of (x) a Termination Event specified in Clauses (a), (b), (c), (d), (e), (f), (i), (j) and (k) above, the Debtors shall immediately cease using Cash Collateral and (y) any other Termination Event, on the earlier of the third business day after the date on which the Debtors receive written notice from the Administrative Agent of such Termination Event (if on that date such Termination Event remains uncured) and the date upon which an officer of the Debtors obtains knowledge of any such Termination Event, the Debtors shall immediately cease using Cash Collateral (in each case in (x) and (y) above, the date of such cessation being referred to as the "Termination Date"); provided, however, that the Administrative Agent may, absent further order of the Court, withdraw or direct the Collateral Agent to withdraw from the Existing Accounts and the Cash Collateral Accounts, free from any stay imposed or applicable

pursuant to Sections 105 or 362 of the Bankruptcy Code, principal, fees and expenses payable to the Pre-Petition Secured Parties pursuant to paragraphs 5 and 6 of the Interim Order or this Final Order (including any extensions or amendments hereof) without further order of the Court following the Termination Date and apply the same to such obligations.  Subject to further order of this Court, if any, and until the Indebtedness has been indefeasibly paid in full in cash, the Administrative Agent shall be entitled to receive all proceeds from the collection, sale, disposition or liquidation of the Collateral including, but not limited to, all collections of principal and interest on the Mortgage Loans as set forth in this Final Order (including any extensions or amendments hereof) regardless of whether the Termination Date has occurred.  All notices set forth in this paragraph 11 shall be provided to the Debtors, the Committee and the United States Trustee.  Following the occurrence of the Termination Date, the Debtors shall not have the right to use Cash Collateral without the prior written consent of the Administrative Agent; provided, however, that (i) the Debtors shall have the right to seek authority from this Court to use Cash Collateral thereafter on proper notice to the Pre-Petition Secured Parties which request the Pre-Petition Secured Parties shall have the right to oppose and (ii) the Debtors may use Cash Collateral to pay the disbursements set forth in the Budget that were properly and actually incurred by the Debtors prior to the Termination Date.

4. The Budget attached as Exhibit A to the Final Cash Collateral Order shall be replaced with the attached Exhibit A.

5. The terms of the Final Cash Collateral Order except as modified hereby shall remain in full force and effect with respect to any use by the Debtors of the Collateral including, without limitation, Cash Collateral, for the periods both prior and subsequent to the entry by the Court of this First Stipulation and Order.

6. This First Interim Stipulation and Order may be executed in one or more counterparts, each of which shall be deemed an original, and all of which, when taken together, shall constitute one and the same instrument.  Facsimile versions of signatures hereto shall be deemed original signatures, which may be relied upon by any party and shall be binding on the respective signor.

7. This First Interim Stipulation and Order shall be effective upon entry by the Court. In the event that the Court does not enter this First Interim Stipulation and Order, the terms hereof shall be of no force or effect.

8.    The final hearing on this First Interim Stipulation and Order is scheduled for November __, 2007 at _____ before this Court.

9.    The Debtors shall promptly mail copies of this First Interim Stipulation and Order to the parties given notice of the Final Cash Collateral Order and to any other party which has filed a request for notices with this Court.  Any party in interest objecting to entry of a final order in respect of this First Interim Stipulation and Order shall serve and file written objections by no later than November __, 2007 at ____ which objections shall be served so as to be received on such date and time, upon: Young Conaway Stargatt & Taylor LLP, The Brandywine Building, 100 West Street, 17th Floor, Wilmington, Delaware 19889-0391, Attention Joel Waite, Esq., Attorneys for the Debtors and Debtors in Possession; (ii) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attention: Margot B. Schonholtz, Esq. and Scott D. Talmadge, Esq. and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801, Attention: Laurie Selber Silverstein, Esq., Attorneys for the Administrative Agent; (iii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attn.:  Mark S. Indelicato) Attorneys to the Official Committee of Unsecured Creditors and (iv) Jones Day, 222 East 41st Street, New York, New York 10017, Attention: Erica M. Ryland, Esq., Attorneys for DIP Lender; and (v) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801.

Dated: October __, 2007
         Wilmington, Delaware

_____
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
The Brandywine Building
1000 West Street, 17th Floor

_____
POTTER ANDERSON & CORROON LLP
Laurie Selber Silverstein (No. 2396)
P. O. Box 951
1313 N. Market Street, 6th Floor
Wilmington, Delaware  19899
Telephone: (302) 984-6000

Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

                                                    and

*Counsel for Debtors and*
*Debtors in Possession*

                                    KAYE SCHOLER LLP
                                    Margot B. Schonholtz
                                    Mark F. Liscio
                                    Scott D. Talmadge
                                    425 Park Avenue
                                    New York, NY 10022
                                    Telephone (212) 836-8000
                                    Facsimile (212) 836-8689

                                    *Counsel for Bank of America, N.A. as*
                                    *Administrative Agent under that*
                                    *certain Second Amended and Restated*
                                    *Credit Agreement, dated as of August 10, 2006*

**SO ORDERED**
this __ day of October, 2007

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------  x
In re:                                              :   Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                              :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,     :
                                                    :   Jointly Administered
                    Debtors.                        :
--------------------------------------------------  x   Ref. Docket No. 16
```

### FINAL ORDER (I) AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL AND (II) GRANTING REPLACEMENT LIENS AND ADEQUATE PROTECTION TO CERTAIN PRE-PETITION SECURED PARTIES

Upon the motion (the "Motion") dated August 6, 2007 of the above-referenced debtors, as debtors-in-possession (the "Debtors"), seeking this Court's authorization pursuant to Sections 105, 361, 362 and 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors to use the Pre-Petition Collateral (as herein defined), including a limited use of cash collateral, as such term is defined in Section 363 of the Bankruptcy Code ("Cash Collateral"), upon which Bank of America, N.A., as Administrative Agent (in such capacity, the "Administrative Agent") for itself and on behalf of Deutsche Bank National Trust Company, as Collateral Agent (in such capacity, the "Collateral Agent") and certain lenders (in such capacities, the "Pre-Petition Secured Lenders" and, together with the Administrative Agent and the Collateral Agent, the "Pre-Petition Secured Parties") under certain Loan Documents (as hereinafter defined and described) has first priority perfected security interests and liens; and a hearing (the "Interim Hearing") having been held by the Court on August 7, 2007 to consider the relief sought in the Motion at which Interim Hearing the Court entered an order (the "Interim Order") authorizing the use of the Pre-Petition Collateral, including the Cash Collateral, solely in accordance with the terms of the Interim Order; and the

Court having held a final hearing (the "Final Hearing") on September 4, 2007 to consider entry of this final order (the "Final Order") authorizing the Debtors' use of the Pre-Petition Collateral, including the Cash Collateral, through October 31, 2007 solely in accordance with the terms and conditions set forth in this Final Order; and the Court having considered the offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing and at the Final Hearing:

### NOW, THEREFORE,

A.      On August 6, 2007 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in these cases (the "Cases"), and each has continued with the management and operation of their respective businesses and properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee for the District of Delaware appointed The Official Committee of Unsecured Creditors (the "Committee") in these Cases.

B.      Prior to the Petition Date, the Pre-Petition Secured Lenders made certain loans and advances to the Debtors pursuant to and in accordance with the terms and conditions of that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 (as heretofore amended, restated, modified or supplemented from time to time, the "Credit Agreement" and, together with all other documentation executed in connection therewith, the "Loan Documents") among American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Corp., and American Home Mortgage Acceptance, Inc., as Borrowers, Bank of America, N.A., as Administrative Agent, Swing Line Lender, and a Lender, the Pre-Petition Secured Lenders, Calyon New York Branch and Deutsche Bank Securities Inc., as Co-Syndication Agents, Citibank, N.A., JPMorgan Chase Bank, N.A.

2

and Merrill Lynch Bank USA, as Co-Documentation Agents, and Banc of America Securities LLC, as Sole Lead Arranger and Sole Book Manager.

   C.   Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that as of the Petition Date the Debtors that are the Borrowers and the Guarantors (as such terms are defined in the Loan Documents) were justly and lawfully indebted to the Pre-Petition Secured Parties in the aggregate principal amount of approximately $1,104,550,000 in respect of loans and other advances made, together with accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Loan Documents (collectively, the "Indebtedness"). Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that the Indebtedness constitutes valid and binding obligations of the Debtors and that no portion of the Indebtedness or any amounts paid to the Pre-Petition Secured Parties or applied to the obligations owing under the Loan Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

   D.   Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that, pursuant to a certain Security and Collateral Agency Agreement dated as of August 30, 2004 (as heretofore amended, restated, modified, ratified or supplemented from time to time, the "Security Agreement" and, together with any and all other security agreements, pledge agreements, mortgages, deeds of trust, financing statements, assignments or other security documents, the

3

"Collateral Documents"), they have granted valid, perfected, enforceable, first priority liens upon and security interests in the property described in the Collateral Documents (collectively, the "Pre-Petition Collateral") to the Administrative Agent for the ratable benefit of the Pre-Petition Secured Parties to secure the Indebtedness. Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors further admit that the Administrative Agent's first priority liens upon and security interests in the Pre-Petition Collateral, for the ratable benefit of the Pre-Petition Secured Parties, are not subject to avoidance, subordination, recharacterization, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

E.      Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Pre-Petition Secured Parties assert, and the Debtors agree not to contest, that the value of the Pre-Petition Collateral exceeds the amount of the Indebtedness.

F.      Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors admit that as of the Petition Date funds on deposit with (x) the Pre-Petition Secured Parties or (y) other financial institutions for the benefit of the Pre-Petition Secured Parties pursuant to applicable contract or law (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts) (collectively, the "Depository Institutions") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Loan Documents and applicable law, for the ratable benefit of the Pre-Petition Secured Parties. All proceeds of the Pre-Petition Collateral (including cash on deposit at the Depository

4

Institutions as of the Petition Date) are Cash Collateral of the Pre-Petition Secured Parties. The Pre-Petition Secured Parties are entitled, pursuant to Sections 105, 361 and 363(e) of the Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for any diminution in value of the Pre-Petition Collateral, including, without limitation, resulting from the use of Cash Collateral.

G.    Without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), each Debtor hereby waives and releases any and all Claims (as such term is defined in the Bankruptcy Code) against each of the Pre-Petition Secured Parties, whether arising at law or in equity, including any re-characterization, subordination, avoidance or other claim arising under or pursuant to Section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

H.    The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and have an immediate need to obtain the continued use of the Cash Collateral in order to permit, among other things, the preservation and orderly disposition of the Debtors' servicing business  and servicing rights (including, the collection, service and administration of loans) upon which the Pre-Petition Secured Parties have a first priority perfected security interest (the "Servicing Business"). Without such funds, the Debtors will be unable to pay necessary expenses of the Servicing Business including, without limitation, payroll and servicing advances. The Debtors are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The ability of the Debtors to fund the Servicing Business through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets and to reorganize under the Bankruptcy Code.

5

I.    Notice of the requested relief sought at the Final Hearing was provided by the Debtors to: (a) the Office of the United States Trustee; (b) counsel to the Administrative Agent; (c) counsel to the Committee; and (d) the Debtors' forty largest unsecured creditors (on a consolidated basis) and any other party who entered its appearance and requested notice. Given the nature of the relief sought the Court concludes that sufficient and adequate notice of the Final Hearing has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014 and Section 102(1) of the Bankruptcy Code as required by Sections 361 and 363 of the Bankruptcy Code, and that no further notice of, or hearing on, the relief sought at the Final Hearing and the relief granted herein is necessary or required.

J.    The Pre-Petition Secured Parties are willing to consent to the Debtors' use of the Pre-Petition Collateral, including the limited use of Cash Collateral as provided in the Budget (as hereinafter defined) during the Budget Period (as hereinafter defined), solely upon the protections, terms and conditions provided for in this Final Order.

K.    Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (B), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

L.    Good, adequate and sufficient cause has been shown to justify entry of this Final Order. Among other things, granting the relief set forth in this Final Order will permit the Debtors to meet their expenses and to maximize value for the benefit of creditors.

M.    The terms of this Final Order were negotiated in good faith and at arm's length between the Debtors and the Pre-Petition Secured Parties.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION,**

6

THE EVIDENCE ADDUCED AT THE INTERIM HEARING AND THE FINAL HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:

1.      The Motion is granted in accordance with the terms of this Final Order. Any objections to the Motion with respect to entry of this Final Order that have not been withdrawn, waived, or settled, are hereby denied and overruled. Subject to the terms and conditions of this Final Order the Pre-Petition Secured Parties hereby consent to, and the Court hereby authorizes the Debtors' use of Cash Collateral solely and exclusively for the disbursements set forth in the budget which is attached as Exhibit A hereto (as such budget may be modified from time to time by the Debtors upon prior written consent as set forth below in this paragraph, the "Budget"), during the period (the "Budget Period") beginning on the Petition Date and ending on the Termination Date (as defined below in paragraph 11), plus payment of the fees and expenses pursuant to paragraphs 6(B) and 6(D) of this Final Order, and for no other purposes. The expenditures authorized in the Budget shall be adhered to on a line-by-line basis, on a cumulative basis during the Budget Period (i.e., unused amounts shall carry forward to successive weeks on a line-by-line basis), with no carry-over surplus to any other line item(s) or to a subsequent budget period, if any, except to the extent agreed to in writing as set forth below in this paragraph; provided, however, that with respect to the Servicing Advances line-item in the Budget, the Debtors may use Cash Collateral in excess of that set forth in the Budget for that particular line-item for each week so long as the percentage deviation ("Permitted Deviation") for such line-item during such week shall not exceed thirty (30%) percent, in the aggregate, of the amount set forth in the Budget for such line-item. The Debtors shall provide notice of any Permitted Deviation or proposed Non-Conforming Use (as defined and as set forth below) to

7

counsel for the DIP Administrative Agent and the Committee with copies to counsel for the Administrative Agent. The Administrative Agent may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (each such use of Cash Collateral, a "Non-Conforming Use"). If such written consent is given, and absent an objection from the Committee within one business day of receipt of notice, the Debtors shall be authorized pursuant to this Final Order to expend Cash Collateral for such Non-Conforming Use without further Court approval, and the Pre-Petition Secured Parties shall be entitled to all of the protections specified in this Final Order for any such Non-Conforming Use.

2.    The Debtors shall maintain their existing bank accounts (the "Existing Accounts") in accordance with the cash management system as set forth in the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code, that was approved by the Court on August 7, 2007. The Debtors are hereby directed to deposit all proceeds of Pre-Petition Collateral or Collateral (as defined in paragraph 3 below) as follows:  (a) all proceeds of sale and other amounts in respect of Mortgage Loans that constitute Pre-Petition Collateral or Collateral shall continue to be deposited into the accounts maintained by the Debtors prior to the Petition Date with the Collateral Agent (collectively, the "Collateral Agent Accounts") as was required prior to the Petition Date and (b) subject to the provisions of the second sentence of paragraph 10 hereof, all other proceeds of Pre-Petition Collateral or Collateral shall be deposited or transferred into the Cash Collateral Accounts within two business days regardless of where such funds are received. "Cash Collateral Accounts" shall mean, collectively, accounts opened and maintained with the

8

Administrative Agent for purposes of collecting proceeds of Collateral, and shall include accounts used to collect (i) the principal and interest in respect of Mortgage Loans that constitute Pre-Petition Collateral or Collateral, (ii) funds paid in respect of taxes and insurance (and to be held in a custodial account), (iii) funds received by the Debtors on account of servicing fees, servicing income, servicing interest income, servicing advances and all other income in respect of the Servicing Business (as defined below) (such account, the "Servicing Account"), and (iv) all other proceeds of sale, disposition or collection of any other Pre-Petition Collateral or Collateral. The Debtors are authorized and directed to establish other Cash Collateral Accounts with the Administrative Agent in furtherance of this Final Order. The Debtors shall not (i) transfer the Cash Collateral from any Debtor to another Debtor or any other party except as permitted in the Budget or as otherwise agreed to in writing by the Administrative Agent, or (ii) without the Administrative Agent's prior written consent, close any of the Existing Accounts, Collateral Agent Accounts, Cash Collateral Accounts or the Servicing Account or establish any new bank account into which Cash Collateral or the proceeds of Pre-Petition Collateral or Collateral will be deposited. The Debtors are prohibited from commingling the proceeds of Pre-Petition Collateral or Collateral with any other funds; provided, however, that to the extent Cash Collateral is commingled with any other funds, the Debtors shall as soon as reasonably practicable identify the portion of the commingled funds that constitute Cash Collateral and transfer the Cash Collateral to the appropriate Cash Collateral Account or Collateral Agent Account. The Debtors further agree that they will, within nine (9) business days following entry of the Interim Order and thereafter on the third business day following the end of each week thereafter, identify to the Administrative Agent the names, addresses and numbers of the Existing Accounts and all other current accounts, and furnish to the Administrative Agent a

9

066585.1001

summary of the balances and debits and credits for each such account (with such supporting detail as the Administrative Agent or its advisors may reasonably request).

3.    In addition to all the existing security interests and liens granted to or for the benefit of the Pre-Petition Secured Parties in and with respect to the Pre-Petition Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined below) and as an inducement to the Pre-Petition Secured Parties to permit the Debtors' continued use of the Cash Collateral as provided for in the Interim Order and in this Final Order, the Debtors granted pursuant to the Interim Order and hereby grant to the Administrative Agent for the ratable benefit of the Pre-Petition Secured Parties a security interest in and lien on the Pre-Petition Collateral and the proceeds, products, rents and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise (all of such property, the "Collateral"), senior to any other security interests or liens, subject only to valid, perfected and enforceable pre-petition liens (if any) which are senior to the Pre-Petition Secured Parties' liens or security interests as of the Petition Date.

4.    For purposes of this Final Order, "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of the Pre-Petition Collateral upon which the Pre-Petition Secured Parties have valid, perfected, enforceable and non-avoidable liens or security interests from and after the Petition Date for any reason including, without limitation, depreciation, sale, loss or use of the Pre-Petition Collateral, including Cash Collateral, whether in accordance with the terms and conditions of this Final Order, the Interim Order or otherwise. Cash Payments from the proceeds of the Pre-Petition Collateral made to the Administrative Agent pursuant to the Interim Order or paragraphs 5 and 6 of this Final Order shall not constitute Collateral Diminution.

10

5.     As additional adequate protection and without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors shall pay indefeasibly in cash to the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Lenders, in permanent reduction of the outstanding principal balance of the Indebtedness all proceeds (including, without limitation, repayment of servicer advances) from a collection, sale, lease or other disposition of Pre-Petition Collateral or Collateral (other than funds deposited into the Collateral Agent Accounts, the collection of principal and interest on Mortgage Loans in the ordinary course and funds deposited into the Servicing Account, all of which shall be applied in accordance with paragraph 6 of this Final Order), after deducting the necessary direct costs of the Debtors in connection therewith which are reasonably acceptable to the Administrative Agent (it being agreed that the fees, costs, and expenses of Kroll Zolfo Cooper are not to be deducted). If there is a dispute concerning whether an expense constitutes a necessary direct cost, the amount of such expense shall nevertheless be paid to the Administrative Agent, and the Debtors and the Committee reserve the right to seek a Court order directing reimbursement of such amount.   Such proceeds (i) will be paid directly to the Administrative Agent or (ii) if received by the Debtors, will be paid by the Debtors into the Cash Collateral Accounts to the Administrative Agent on the same business day as received by the Debtors. The Debtors shall continue the sales process as modified prior to entry of this Final Order as consented to by the Administrative Agent (the "Sales Process") for the Servicing Business pursuant to the bid procedures (the "Bid Procedures") annexed as Exhibit 1 to the Order Approving (I) Sales Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief [Docket No. 113].   The Debtors shall not,

11

without the prior written consent of the Administrative Agent which shall not be unreasonably withheld (i) alter or amend the Sales Process or the Bid Procedures or (ii) sell, lease or otherwise dispose of all or any portion of the Servicing Business other than in accordance with the Sales Process and Bid Procedures. The Debtors shall keep the Administrative Agent informed of the status of the Sale Process.

6.     As additional adequate protection and without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors shall pay indefeasibly in cash:  (A) immediately upon entry of the Interim Order and on the first business day of each week thereafter, to the Administrative Agent, for the ratable benefit of the Pre-Petition Secured Lenders, in permanent reduction of the outstanding principal amount of the Indebtedness, all amounts on deposit in the Collateral Agent Accounts and the Cash Collateral Accounts (other than (i) amounts maintained in the Servicing Account and (ii) up to $3 million at any one time in the BofA Construction Lockbox Account) on each such date; (B) (x) following the entry of the Interim Order, to the Administrative Agent, for the benefit of the Pre-Petition Secured Parties, an amount equal to all incurred but unpaid usual and customary fees, expenses and costs of the Pre-Petition Secured Parties, including administrative or collateral fees, owing as of the Petition Date; and (y) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Administrative Agent under the Credit Agreement arising prior to the Petition Date; (C) (x) on September 5, 2007, in permanent reduction of Indebtedness, all Cash Collateral on hand in respect of the Servicing Business (including, without limitation, all funds in the Servicing Account) in excess of $10 million and (y) on October 24, 2007, in permanent reduction of Indebtedness, all Cash Collateral on hand in respect

12

of the Servicing Business (including, without limitation, all funds in the Servicing Account) in excess of $5 million; and (D) on a current basis, to the Administrative Agent, for the benefit of the Pre-Petition Secured Parties, (x) all incurred but unpaid usual and customary fees, expenses, and costs of the Pre-Petition Secured Parties, including administrative or collateral fees, arising subsequent to the Petition Date, and (y) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Administrative Agent under the Credit Agreement arising subsequent to the Petition Date. The payment of the fees, expenses and disbursements set forth in this paragraph 6 of the Final Order (including professional fees and expenses of Kaye Scholer LLP, Potter Anderson & Corroon LLP and any other professionals or advisors retained by or on behalf of the Administrative Agent) shall be made within ten (10) days after the receipt by the Debtors (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors, the United States Trustee and the Committee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors, the Committee or the United States Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Administrative Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

7.    The security interests and liens granted to the Administrative Agent for the benefit of the Pre-Petition Secured Parties pursuant to paragraph 3 of the Interim Order and of this Final

13

Order shall not be subordinated to or made <u>pari passu</u> with any lien or security interest under Section 364 of the Bankruptcy Code or otherwise.

8.     The Debtors shall not grant any junior liens on any Pre-Petition Collateral or the Collateral at any time and no party shall seek to enforce, directly or indirectly, an administrative or priority claim in respect of any asset which constitutes Pre-Petition Collateral or the Collateral unless and until all of the Indebtedness has been indefeasibly paid in full in cash. Except as otherwise specifically provided for in paragraph 5 of this Final Order, no Cash Collateral shall be used to pay administrative expenses payable under Sections 328, 330 and 331 of the Bankruptcy Code (or other similar provisions), including professional fees and expenses incurred for any investigation, litigation or threatened litigation against any of the Pre-Petition Secured Parties or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the Pre-Petition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Indebtedness or the security interests or liens held by the Pre-Petition Secured Parties in the Collateral; <u>provided, however,</u> that Cash Collateral may be used to pay amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and fees payable to the Clerk of this Court.

9.     Without the necessity of the filing of financing statements, mortgages or other documents, the Interim Order and this Final Order shall be sufficient evidence of the Pre-Petition Secured Parties' perfected security interests and liens granted in the Collateral pursuant to the Interim Order and this Final Order. Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Administrative Agent to provide further

14

evidence of the perfection of the Pre-Petition Secured Parties' security interests and liens in the Collateral as provided for herein.

10.   The Debtors agree to furnish to the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent (i) weekly reports of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget, on a line-by-line basis showing any variance to the proposed corresponding line item of the Budget (the "Budget Reconciliation") and (ii) a report that demonstrates that all proceeds of Pre-Petition Collateral and Collateral have been identified and paid to the Administrative Agent and the Collateral Agent, as the case may be (the "Collateral Reconciliation"). By no later than September 25, 2007, the Debtors shall pay to the Administrative Agent all funds that were identified in the Collateral Reconciliation as proceeds of Pre-Petition Collateral or Collateral which were not previously paid to the Administrative Agent. The Budget Reconciliation shall be provided to the Administrative Agent so as actually to be received within three (3) business days following the end of each prior week. The Collateral Reconciliation shall be provided to the Administrative Agent  so as actually to be received by no later than September 21, 2007. As additional adequate protection, the Debtors shall provide to the Administrative Agent such other reports and information as the Administrative Agent may reasonably request.     The Administrative Agent and its representatives shall have the right upon reasonable prior notice to inspect and copy the Debtors' books and records. Such right to inspect the Debtors' books and records shall include the right of the Administrative Agent and its representatives to have access to all records and files of the Debtors pertaining to the Pre-Petition Collateral including, without limitation, records and files pertaining to Wet Mortgage Loans, Servicing Rights, Servicing

15

Contracts and Servicing Receivables (as such terms are defined in the Credit Documents) and to monitor the handling and disposition of the same.

11.    The Debtors' use of the Collateral (including, without limitation, Cash Collateral) shall terminate (subject to any applicable notice requirements as set forth below) on the earliest to occur of (each such occurrence being hereinafter referred to as a "Termination Event"): (a) October 31, 2007 (the "Expiration Date"); (b) the dismissal of the Cases or the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) the entry by this Court of one or more orders granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or the Pre-Petition Secured Parties without the written consent of the Administrative Agent (which consent may be withheld in its sole discretion) with respect to Pre-Petition Collateral or Collateral having an aggregate value in excess of $1,000,000; (d) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (e) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtors; (f) the failure by the Debtors to make any payment required pursuant to the Interim Order or this Final Order when due; (g) the failure by the Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to this Final Order when due or any such documents or other information shall contain a material misrepresentation; (h) the failure by the Debtors to observe or perform any of the material terms or material provisions contained herein; (i) the entry of an order of this Court approving the terms of any debtor-in-possession financing for any of the Debtors which creates any liens with respect to any of the Pre-Petition Collateral or the Collateral at any time or that allows any party to seek to enforce, directly or indirectly, an administrative or priority claim in respect thereto unless and until all of the Indebtedness has

DB02:6217418.2                                                          066585.1001

been indefeasibly paid in full in cash; or (j) the entry of an order of this Court reversing, staying, vacating or otherwise modifying in any material respect the terms of the Interim Order or this Final Order. On and after the occurrence of (x) a Termination Event specified in Clauses (a), (b), (c), (d), (e), (f), (i) and (j) above, the Debtors shall immediately cease using Cash Collateral and (y) any other Termination Event, on the earlier of the third business day after the date on which the Debtors receive written notice from the Administrative Agent of such Termination Event (if on that date such Termination Event remains uncured) and the date upon which an officer of the Debtors obtains knowledge of any such Termination Event, the Debtors shall immediately cease using Cash Collateral (in each case in (x) and (y) above, the date of such cessation being referred to as the "Termination Date"); provided, however, that the Administrative Agent may, absent further order of the Court, withdraw or direct the Collateral Agent to withdraw from the Existing Accounts and the Cash Collateral Accounts, free from any stay imposed or applicable pursuant to Sections 105 or 362 of the Bankruptcy Code, principal, fees and expenses payable to the Pre-Petition Secured Parties pursuant to paragraphs 5 and 6 of the Interim Order or this Final Order without further order of the Court following the Termination Date and apply the same to such obligations. All notices set forth in this paragraph 11 shall be provided to the Debtors, the Committee and the United States Trustee. Following the occurrence of the Termination Date, the Debtors shall not have the right to use Cash Collateral without the prior written consent of the Administrative Agent; provided, however, that (i) the Debtors shall have the right to seek authority from this Court to use Cash Collateral thereafter on proper notice to the Pre-Petition Secured Parties which request the Pre-Petition Secured Parties shall have the right to oppose and (ii) the Debtors may use Cash Collateral to pay the disbursements set forth in the Budget that were properly and actually incurred by the Debtors prior to the Termination Date.

17

12.     This Final Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Pre-Petition Secured Parties to seek additional or different adequate protection (including an amount equal to accrued and unpaid interest at the rates provided for in the Credit Agreement), move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take another action in the Cases and to appear and be heard in any matter raised in these Cases, (ii) the rights of the Pre-Petition Secured Parties to assert claims, arising prior to or after the Petition Date, for Obligations (as such term is defined in the Loan Documents) under or in respect of the Loan Documents, and (iii) any and all rights, remedies, claims and causes of action which the Administrative Agent or the Pre-Petition Secured Parties may have against any other party liable for the Indebtedness.

13.     No costs or expenses chargeable or alleged to be chargeable against the Collateral under Section 506(c) of the Bankruptcy Code shall be incurred in these proceedings without the Administrative Agent's prior written consent and nothing contained in this Final Order shall be deemed to be a consent by the Pre-Petition Secured Parties to any charge, lien, assessment or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise.

14.     The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby. The stay of Section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Final Order.

15.     The provisions of this Final Order shall be binding upon any trustee appointed during these Cases or upon a conversion to Cases under Chapter 7 of the Bankruptcy Code, and

18

any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to Chapter 7 cases, or dismissing the Cases, or any order which may be entered confirming or consummating any plan(s) of reorganization, and the terms and provisions of the Interim Order and this Final Order, as well as the priorities in payment, liens, and security interests granted pursuant to the Interim Order and this Final Order shall continue notwithstanding any conversion of the cases to chapter 7 cases under the Bankruptcy Code or the dismissal of the cases.

16.    [Deleted]

17.    Nothing contained in this Final Order shall be deemed to terminate, modify in any respect or release any obligations of any non-debtor guarantors to the Pre-Petition Secured Parties with respect to the Indebtedness.

18.    The terms of this Final Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Final Order by this Court. In the event this Court stays, modifies or vacates any of the provisions of this Final Order following any further hearing, such modifications, stays or vacation shall not affect the rights and priorities of the Pre-Petition Secured Parties granted pursuant to this Final Order.

19.    Notwithstanding any such stay, modification or vacation, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Final Order arising prior to the Pre-Petition Secured Parties' receipt of notice of the effective date of such stay, modification or vacation shall be governed in all respects by the original provision of this Final Order, and the Pre-Petition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens

19

granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to the Interim Order and this Final Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

20.    The Debtors' agreements, admissions and releases contained in paragraphs C, D, E, F and G of this Final Order: (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including the Committee, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than October 22, 2007 (or, in the case of a Committee, December 4, 2007), (x) challenging the amount, validity, enforceability, priority or extent of the Indebtedness or the Pre-Petition Secured Parties' security interests in and liens upon the Pre-Petition Collateral, or (y) otherwise asserting any claims or causes of action against the Pre-Petition Secured Parties on behalf of the Debtors' estates, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly filed as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding: (a) the Debtors' agreements, admissions and releases contained in paragraphs C, D, E, F and G of this Final Order shall be binding on all parties in interest, including the Committee; (b) the obligations of the Debtors under the Credit Documents shall constitute allowed claims for all purposes in these Cases, and any subsequent Chapter 7 case(s); (c) the Pre-Petition Secured Parties' security interests in and liens upon the Pre-Petition Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization,

20

066585.1001

subordination or otherwise avoidable; and (d) the Indebtedness and the Pre-Petition Secured Parties' security interests and liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' agreements, admissions and releases contained in paragraphs C, D, E, F and G of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Pursuant to this Final Order, the Committee shall be deemed to have standing to commence any such adversary proceeding or contested matter; provided, however, that nothing contained in this Final Order shall be deemed to grant standing to any other party to commence any such adversary proceeding or contested matter.

21.     The Administrative Agent acknowledges that under the Interim and Final Orders pursuant to Sections 105(a), 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (a) Approving Debtor-in-Possession Financing, (b) Granting Liens and Allowing Super Priority Administrative Claims, and (c) Granting Related Relief (collectively, the "DIP Order"), the Lender Parties (as defined in the DIP Order) have been granted a lien on and security interest in the Collateral (as defined in the DIP Credit Agreement that is referred to and defined in the DIP Order) (the "DIP Collateral") and that the DIP Collateral is separate and distinct from, and shall not constitute part of, the Collateral (as defined in this Final Order.)

22.     This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy

21

Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

23. No rights of any entity in connection with a contract or transaction of the kind listed in Sections 555, 556, 559, 560, and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Final Order.

24. In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Administrative Agent is authorized to file in the lead chapter 11 case (American Home Mortgage Holdings, Inc. (Case No. 07-11047 (CSS)) a single, master proof of claim on behalf of the Pre-Petition Secured Parties on account of any and all of their respective claims arising under the Loan Documents and hereunder (the "Master Proof of Claim") against each of the Debtors. ~~In addition, the~~ ~~Administrative Agent shall not be required to file a verified statement pursuant to Bankruptcy~~ ~~Rule 2019.~~

25. Upon the filing of the Master Proof of Claim against the Debtors, the Administrative Agent and each Pre-Petition Secured Party, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors of any type or nature whatsoever with respect to the Loan Documents, and the claim of each Pre-Petition Secured Party (and each of their respective successors and assigns), named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases. The Administrative Agent shall not be required to amend the Master Proof of Claim to reflect a

22

change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.

26.  The provisions of paragraphs 24 and 25 of this Final Order and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Pre-Petition Secured Party (or their successors in interest) to vote separately on any plan of reorganization proposed in these Cases.  The Administrative Agent shall not be required to file with the Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by the Debtors to the Pre-Petition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel for the Administrative Agent.

27.  Any notices, invoices, reports or financial statements given by or to the Debtors pursuant to this Final Order shall also be provided by the Debtors to the Committee and the DIP Lender or their advisors.

23

28.     The Administrative Agent and the Pre-Petition Secured Parties acknowledge and agree that they shall have no administrative expense or other priority claims against the Debtors' estates (whether pursuant to Section 507(b) of the Bankruptcy Code or otherwise) arising from any Collateral Diminution; provided, however, that the Administrative Agent and the Pre-Petition Secured Parties reserve the right to assert (and the Debtors and the Committee reserve the right to oppose) administrative expense or other priority claims against the Debtors' estates (whether pursuant to Section 507(b) of the Bankruptcy Code or otherwise) arising from the Debtors' failure to (i) identify and separate all Cash Collateral and to pay the same to the Administrative Agent as provided herein or (ii) dispose of, or pay the proceeds of, Pre-Petition Collateral or Collateral in accordance with the terms of this Final Order or further order, if any, of this Court.

Dated: Wilmington, Delaware
        September 4, 2007

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

24

# EXHIBIT A

AMERICAN HOME MORTGAGE
CASH BUDGET – SERVICING

| | Projected Week Ending | | | | | | | | | | | | | 13 Weeks Ended |
| | 8/10 | 8/17 | 8/24 | 8/31 | 9/7 | 9/14 | 9/21 | 9/28 | 10/5 | 10/12 | 10/19 | 10/26 | 11/2 | 11/2/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Opening Cash Balance** | $  - | $ 3.2 | $ 0.5 | $ 0.3 | $ 10.6 | $ 10.0 | $ 9.3 | $ 6.9 | $ 17.2 | $ 17.8 | $ 24.1 | $ 19.7 | $ 5.0 | $  - |
| **Sources of Cash** | | | | | | | | | | | | | | |
| Recovery of Advanced Expenses | 1.0 | 1.0 | 5.0 | 5.0 | 1.0 | 1.0 | 1.0 | 5.0 | 1.0 | 1.0 | 3.0 | 5.0 | 1.0 | 31.0 |
| Servicing Fees and Other Income | 4.0 | 5.0 | 3.0 | 8.0 | 4.0 | 5.0 | 7.0 | 8.0 | 4.0 | 5.0 | 5.0 | 7.0 | 8.0 | 73.0 |
| Investment Line Income/Int Credit | - | - | - | - | 3.0 | - | - | - | - | 3.0 | - | - | - | 6.0 |
| **Total Sources** | **5.0** | **6.0** | **8.0** | **13.0** | **8.0** | **6.0** | **8.0** | **13.0** | **5.0** | **9.0** | **8.0** | **12.0** | **9.0** | **110.0** |
| **Construction Loan Activity** | | | | | | | | | | | | | | |
| Pre Funding Construction Draw Requests | | | | | 1.2 | 0.9 | 0.6 | 0.3 | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | 6.3 |
| Advancing Construction Draw Requests | | | | | 1.2 | 0.9 | 0.6 | 0.3 | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | 6.3 |
| **Expenditures** | | | | | | | | | | | | | | |
| Non-Payroll & Allocated Costs | 0.7 | 0.6 | 0.4 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 7.7 |
| Payroll & Payroll Taxes | - | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | - | 1.6 | 9.5 |
| Retention Payments | - | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 3.2 | 3.8 |
| Health Insurance-BCBS | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 1.3 |
| Servicing Advances, Net | 1.0 | 8.0 | 6.0 | 2.0 | 2.0 | 6.0 | 8.0 | 2.0 | 2.0 | 2.0 | 10.0 | 4.0 | 2.0 | 55.0 |
| | **1.8** | **8.7** | **8.2** | **2.7** | **4.4** | **6.7** | **10.4** | **2.7** | **4.4** | **2.7** | **12.4** | **4.7** | **7.5** | **77.3** |
| **Other Cash Uses** | OPEN | | | | | | | | | | | | | OPEN |
| B of A expenses | | | | | 4.2 | | | | | | | | | 4.2 |
| Debt repayment | | | | | | | | | | | | 22.0 | | 22.0 |
| **Total Uses** | **1.8** | **8.7** | **8.2** | **2.7** | **8.6** | **6.7** | **10.4** | **2.7** | **4.4** | **2.7** | **12.4** | **26.7** | **7.5** | **103.5** |
| **Net Cash Flow** | $ 3.2 | $ (2.7) | $ (0.2) | $ 10.3 | $ (0.6) | $ (0.7) | $ (2.4) | $ 10.3 | $ 0.6 | $ 6.3 | $ (4.4) | $ (14.7) | $ 1.5 | $ 6.5 |
| **Closing Balance** | $ 3.2 | $ 0.5 | $ 0.3 | $ 10.6 | $ 10.0 | $ 9.3 | $ 6.9 | $ 17.2 | $ 17.8 | $ 24.1 | $ 19.7 | $ 5.0 | $ 6.5 | $ 6.5 |
| **BofA Construction Lockbox Account** | | | | | | | | | | | | | | |
| Opening Balance | OPEN | | | | $ 1.1 | 0.5 | 0.2 | 0.2 | 0.4 | 0.4 | 0.3 | 0.2 | 0.3 | $ 1.1 |
| Receipts | | | | | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.4 | 5.3 |
| Construction Advances | | | | | (1.2) | (0.9) | (0.6) | (0.3) | (0.7) | (0.7) | (0.7) | (0.6) | (0.6) | (6.3) |
| Closing Balance | | | | | $ 0.5 | 0.2 | 0.2 | 0.4 | 0.3 | 0.2 | 0.2 | 0.3 | 0.1 | $ 0.1 |

# EXHIBIT B

**AMERICAN HOME MORTGAGE**
**CASH BUDGET -- SERVICING**

| ($ millions) | Cumulative Actuals Through 10/19 | Projected Week Ending | | | | 4 Weeks Ending 11/16/2007 | Prior Budget Through 10/19/2007 | Cumulative Budget Through 11/16/2007 |
|---|---|---|---|---|---|---|---|---|
| | | 10/26 | 11/2 | 11/9 | 11/16 | | | |
| Opening Cash Balance | | $ 7.5 | $ 3.8 | $ 4.4 | $ 7.2 | $ 7.5 | | |
| **Sources of Cash** | | | | | | | | |
| Servicing Income | 2.5 | 1.0 | 1.0 | 2.0 | 3.0 | 7.0 | 6.5 | 9.8 |
| Other Fee Income | 4.0 | 0.2 | 0.2 | 0.1 | 0.2 | 0.6 | 7.9 | 10.0 |
| Investment Income | 0.3 | - | - | 1.6 | - | 1.6 | 0.6 | 4.6 |
| LPMI receipts | 0.5 | 0.7 | 0.2 | 1.1 | 1.2 | 3.2 | 1.1 | 1.7 |
| Recovery—HELOCs | | 0.4 | 0.4 | 0.4 | 0.4 | 1.6 | | |
| Recovery—P&I | | 7.0 | 1.0 | 1.0 | 1.0 | 10.0 | | |
| Advance/Recovery—Other | | (1.0) | (1.0) | (1.0) | (1.0) | (4.0) | | |
| **Total Sources** | 7.5 | 8.3 | 1.8 | 5.2 | 4.8 | 20.0 | 16.1 | 27.3 |
| **Uses of Cash** | | | | | | | | |
| Non-payroll and allocated costs | 2.5 | 1.5 | 0.6 | 0.6 | 0.6 | 3.3 | | 9.8 |
| Payroll and payroll taxes | 4.0 | 1.1 | - | 1.0 | - | 2.1 | | 10.0 |
| Retention payments | 0.3 | 0.1 | - | 0.1 | 3.8 | 4.0 | | 4.6 |
| Health Insurance BCBS | 0.5 | 0.3 | 0.1 | 0.1 | 0.1 | 0.6 | | 1.7 |
| LPMI reimbursed to corporate | | - | - | - | - | - | | |
| P&I Advances | | 1.0 | - | - | - | 1.0 | | |
| Advances—HELOCs | | 0.5 | 0.5 | 0.5 | 0.5 | 2.0 | | |
| Other outflows | | - | - | - | - | - | | |
| B of A expenses | 0.2 | 0.6 | - | - | 0.6 | 1.1 | - | 1.1 |
| Debt repayment/(Funding) | | 7.0 | - | - | - | 7.0 | | |
| **Total Uses** | 7.5 | 12.0 | 1.2 | 2.3 | 5.6 | 21.1 | 16.1 | 27.3 |
| Net Cash Flow | | (3.7) | 0.6 | 2.9 | (0.8) | (1.1) | | |
| Closing Balance | | $ 3.8 | $ 4.4 | $ 7.2 | $ 6.4 | $ 6.4 | | |