## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                                   :   Chapter 11
                                                         :
AMERICAN HOME MORTGAGE                                    :   Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                           :
a Delaware corporation, et al.,                          :   Jointly Administered
                                                         :
      Debtors.                                           :   Ref. Docket No.: _____
                                                         :
-------------------------------------------------------- x
```

### ORDER PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING AND AUTHORIZING THE SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTORS AND BEAR STEARNS MORTGAGE CAPITAL CORP. AND EMC MORTGAGE CORP. RESOLVING ADVERSARY PROCEEDING (07-51701)

Upon consideration of the motion (the "Motion")[1] of American Home Mortgage

Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect

affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively,

"AHM" or the "Debtors"),[2] seeking entry of an order pursuant to Rule 9019(a) of the Federal

Rules of Bankruptcy Procedure ("Bankruptcy Rules") and section 105(a) of Title 11 of the

United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") approving the settlement

agreement by and between the Debtors and Bear Stearns Mortgage Corp. ("BSMCC") and EMC

Mortgage Corp. ("EMC" together with the Debtors and BSMCC, the "Parties") resolving

adversary proceeding (07-51701) (the "Settlement Agreement"); and due and sufficient notice of

the Motion having been given; and it appearing that the relief requested in the Motion is in the

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).   The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

best interest of the Debtors, their estates and creditors; and after due deliberation and sufficient

cause appearing therefor; it is hereby

      ORDERED, that the relief requested in the Motion is hereby granted; and it is

further

      ORDERED, that the Settlement Agreement, attached hereto as Exhibit A, is

approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019; and it is

further

      ORDERED, that either Party is authorized to file a *Notice of Dismissal* in the

Adversary Proceeding when this Order becomes final and nonappealable;  and it is further

      ORDERED, that this Court shall retain jurisdiction to hear any and all disputes

arising out of the interpretation or enforcement of this Order.

Dated:  Wilmington, Delaware
      November _____, 2007

                                                  _____
                                                  Christopher S. Sontchi
                                                  United States Bankruptcy Judge

## EXHIBIT A

### Settlement Agreement

EXECUTION COPY

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is entered into as of the 22nd day of October, 2007 by **Bear Stearns Mortgage Capital Corporation** ("BSMCC") and **EMC Mortgage Corporation** ("EMC") (collectively, "Plaintiffs"), on the one hand, and **American Home Mortgage Investment Corporation, American Home Mortgage Corporation, American Home Mortgage Acceptance Inc.**, and **American Home Mortgage Servicing, Inc.** ("Debtor-Defendants"), on the other.

WHEREAS, on August 6, 2007 (the "Commencement Date"), the Debtor-Defendants and other of their affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware;

WHEREAS, BSMCC and the Debtor-Defendants are parties to a Whole Loan Master Repurchase Agreement dated as of June 23, 2004 and, together with Deutsche Bank National Trust Company (the "Custodian"), a Custody Agreement dated as of June 23, 2004, (as amended, supplemented and otherwise modified on November 22, 2004 and August 29, 2005, the "Repurchase Agreement");

WHEREAS, on or about August 24, 2007, Plaintiffs commenced an Adversary Proceeding (the "Adversary Proceeding") by filing a Complaint for Declaratory and Injunctive Relief against Debtor-Defendants, Adversary Proceeding Number 07-51701 (CSS); and

WHEREAS, Debtor-Defendants have denied, and continue to deny, all liability with regard to Plaintiffs' claims; and

WHEREAS, both Plaintiffs and Debtor-Defendants believe it is in their respective best interests to compromise and settle without further litigation and on the terms set forth in this Settlement Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants contained herein, Plaintiffs and Debtor-Defendants (collectively, the "Settling Parties") agree as follows:

1.  <u>Payment and Release of Collateral by Plaintiffs.</u>

a.  In settlement of the Adversary Proceeding and to compensate the Debtor-Defendants for the estimated internal costs associated with transferring Servicing Rights from Debtor-Defendants to Plaintiffs, Plaintiffs will pay to Debtor-Defendants the net sum of ONE-HUNDRED THOUSAND DOLLARS ($100,000) without interest (the "Settlement Amount"). Such payment shall be made payable to American Home Mortgage Servicing, Inc.

b.  Plaintiffs will cause to be transferred to Debtor-Defendants, pursuant to the instructions provided by Debtor-Defendants, the following "Non-MSR-Related Collateral" as defined below:

i)  the security known as AHM 2004-1 IIA with Original Face Amount of $3,015,925 with CUSIP No. 02660TAJ2.

ii)  all Principal and Interest (P&I) received by Bear Stearns on account of the above security based on the following schedule:

9/25/07  $25,941.11

and additional trailing P&I related to the above security. For example, if transfer occurs in October 2007, then the 10/25/07 P&I and 11/26/07 P&I payments.

        iii)    Cash collateral balances unrelated to the P&I payments believed to be $28,051 as of October 10, 2007 based on the collateral statement received from Bear Stearns.

        iv)    Interest on cash balances held by Bear Stearns using an industry standard rate of Fed Funds effective for cash collateral balances held by a swap or repo counterparty.

        c.    Plaintiffs will pay the Settlement Amount and release the Non-MSR-Related Collateral described in Paragraph 1(b) to Debtor-Defendants no later than two (2) business days after completion of Debtor-Defendants' obligations under Paragraph 2 below (the "Settlement Payment Date"), provided, that notwithstanding anything herein to the contrary, in the event Plaintiffs do not timely pay when due, the Settlement Amount shall accrue liquidated damages of $1,000/day calculated from and after the Transfer Date (as defined below), plus the cost of collection, including reasonable attorneys' fees.

        2.    <u>Transfer of Servicing Rights by Debtor-Defendants.</u>  Debtor-Defendants will convey to EMC, no later than November 2, 2007 (the "Transfer Date") all Servicing Rights, as defined below, related to the Purchased Mortgage Loans under the Master Repurchase Agreement, dated as of June 23, 2004, and related to Debtor-Defendants' loan number 1001126393.

        a. Definitions:

        i.    "<u>Servicing Rights</u>" include:  (a) all rights to service the Purchased Mortgage Loans; (b) all rights to receive servicing fees, additional servicing compensation (including without limitation any late fees, assumption fees, prepayment penalties or premiums due in connection with a principal prepayment (if any), other penalties, fees or

3

similar payments with respect to the Purchased Mortgage Loans, and income on escrow accounts or other receipt in or with respect to the Purchased Mortgage Loans), reimbursements or indemnification for servicing the Purchased Mortgage Loans, and any payments received in respect of the foregoing and proceeds thereof; (c) the right to collect, hold and disburse Escrow Payments or other similar payments with respect to the Purchased Mortgage Loans, Escrow Accounts and any amounts actually collected with respect thereto and to receive interest income on such amounts to the extent permitted by applicable law; (d) all accounts and other rights to payment related to any of the property described in this paragraph; (e) possession and use of any and all mortgage files in Debtor-Defendants' possession pertaining to the Purchased Mortgage Loans or pertaining to the past, present or prospective servicing of the Purchased Mortgage Loans; (f) all rights and benefits relating to the direct solicitation of the related Mortgagors for refinancing or modification of the Purchased Mortgage Loans and attendant right, title and interest in and to the list of such Mortgagors and data relating to their respective Mortgage Loans; (g) all rights, powers and privileges incident to any of the foregoing; and (h) all agreements or documents creating, defining or evidencing any of the foregoing rights to the extent they relate to such rights and all rights of the Company thereunder including, but not limited to, any clean-up calls and termination options.

        ii.      "Custodial Accounts" means the accounts in which Custodial Funds are deposited subsequent to the Commencement Date and held by Debtor-Defendants pursuant to the Repurchase Agreement.

        iii.     "Custodial Funds" means all funds collected subsequent to the Commencement Date and held by Debtor-Defendants with respect to the related Mortgage

**EXECUTION COPY**

Loans including, but not limited to, all principal and interest funds and any other funds due to the Investor that are maintained by Debtor-Defendants relating to the Purchased Mortgage Loans.

        iv.    "Escrow Account" means the accounts in which Escrow Funds are deposited subsequent to the Commencement Date and held by a Debtor-Defendants pursuant to the Repurchase Agreement.

        v.    "Escrow Funds" means funds collected subsequent to the Commencement Date and held by the Debtor-Defendants with respect to the Purchased Mortgage Loans for the payment of taxes, assessments, insurance premiums, ground rents, funds from hazard insurance loss drafts, other mortgage escrow and impound items, and similar charges (including interest accrued thereon for the benefit of the Mortgagors under the Purchased Mortgage Loans, if applicable), maintained by Debtor-Defendants relating to the Purchased Mortgage Loans.

        b.  Upon the terms and subject to the conditions of this Settlement Agreement, Debtor-Defendants shall, on the Transfer Date, transfer and assign to EMC, and EMC shall, on the Transfer Date, assume from Debtor-Defendants, all right, title, interest and obligation of Debtor-Defendants in and to: (i) the Servicing Rights, and all rights related thereto, (ii) the Advances, (iii) the Custodial Funds and Escrow Funds, (iv) the Mortgage Files in Debtor-Defendants' possession, (v) the exclusive right to enter into arrangements that generate, or to otherwise receive, ancillary income with respect to the Mortgage Loans, and (vi) the right to collect and retain prepayment charges. The Servicing Rights that are being transferred by Debtor-Defendants on the Transfer Date shall be transferred and assigned to and accepted by EMC on an "as is", "where is" and "with all faults" conditions, free of any warranties or representations whatsoever, whether express or implied, except as expressly set forth in this

Settlement Agreement. On the Transfer Date, the Debtor-Defendants shall deliver to EMC such

other instruments of assignment, transfer and conveyance, and do such other acts as are

reasonably necessary to effectuate the transfer, assignment and delivery to EMC of the right, title

and interest of the Debtor-Defendants in and to the Servicing Rights to be sold, transferred,

assigned and delivered to EMC on such date free and clear of any encumbrances.

c. In connection with the transfer of Servicing Rights from Debtor-

Defendants to EMC or any sub-servicer designated by EMC, EMC and Debtor-Defendants shall

follow the Servicing Transfer Instructions, attached hereto as <u>Exhibit B</u>. The Servicing Transfer

Instructions may be modified by mutual agreement between Debtor-Defendants and EMC.

d. No later than ten (10) days before the Transfer Date hereunder, Debtor-

Defendants shall provide EMC with a preliminary tape(s) containing the information necessary

to transfer the Servicing Rights to be sold on the Transfer Date and within one (1) business day

after the Transfer Date, Debtor-Defendants shall deliver to EMC the final data tapes.

e. No later than two (2) business days prior to the Transfer Date, Debtor-

Defendants shall, in accordance with the Servicing Transfer Instructions, provide EMC, EMC's

sub-servicer or EMC's other designee with the data, information and materials reasonably

necessary for EMC, EMC's sub-servicer or EMC's other designee to service the Mortgage

Loans, including, but not limited to, all Mortgage Files or electronic images pertaining to the

Mortgage Loans and the related servicing records in Debtor-Defendants' possession, mortgage

notes (including e-Notes), riders, loan modification documents, and servicing files, but excluding

the final data tapes. Debtor-Defendants shall provide EMC with prior written notice of the

carrier, shipping arrangements, and insurance arrangements with respect to the delivery of the

Mortgage Files.

6

**EXECUTION COPY**

f. On or before the Transfer Date, Debtor-Defendants shall appoint EMC to be their true and lawful agent and attorney-in-fact, in the form of the Special and Limited Power of Attorney attached hereto as Exhibit A, with respect to each Mortgage Loan in the Debtor-Defendants' name, place, and stead: (i) to effectuate the transfer of servicing to EMC or its designee; (ii) to complete (to the extent necessary) and to cause to be submitted for filing or recording in the appropriate public filing or recording offices all assignments of mortgage, deeds of trust, or similar documents, assignments, or reassignments of rents, leases and profits, in each case in favor of EMC, and all Form UCC-2 or UCC-3 assignments of financing statements and all other comparable instruments or documents with respect to the Purchased Mortgage Loans, and to evidence, provide notice of and perfect such assignments and conveyances in favor of EMC in the pubic records of the appropriate filing and recording offices; (iii) to file or record in the appropriate public filing or recording offices all other Mortgage Loan documents to be recorded which have not been submitted for filing or recordation by Debtor-Defendants on or before the date hereof or which have been so submitted but are subsequently lost or returned unrecorded or unfiled as a result of actual or purported defects therein, in order to evidence, provide notice of and perfect such documents in the public record of the appropriate filing and recording offices; and (iv) to do and perform all acts in connection with the servicing, administration and management of the Purchased Mortgage Loans, including but not limited to: (1) execution and delivery of customary consents or waivers and other instruments and documents; (2) consent to transfers of any Purchased Mortgage Loans and assumptions of the Mortgage Notes and related Mortgages; (3) collect any Insurance Proceeds and other Liquidation Proceeds; (4) effectuate foreclosure or other conversions of the ownership of the mortgage property securing any Purchased Mortgage Loan; (5) to sign any necessary assignments of

**EXECUTION COPY**

Mortgage to give fully the lienholder rights over from the Debtor-Defendants to EMC; (6)

execute and deliver any and all instruments of satisfaction or cancellation or of partial or full

release or discharge and all other comparable instruments, with respect to the Purchased

Mortgage Loans, and with respect to the Mortgaged Properties; and (7) execute all documents

customarily and reasonably necessary and appropriate for the transfer post-foreclosure of the

previously Mortgaged Properties to third parties, and then to collect the sales proceeds from that

transfer; provided that all actual out-of-pocket costs incurred by the Debtor-Defendants shall be

reimbursed by the Plaintiffs.

        g. Notwithstanding the foregoing, Debtor-Defendants shall be responsible

for preparing and sending goodbye letters related to the Mortgage Loans at least ten (10) days

prior to the Transfer Date, provided that all actual out-of-pocket costs incurred by the Debtor-

Defendants shall be reimbursed by the Plaintiffs.  EMC shall send hello letters no later than

fifteen (15) days after the Transfer Date.

        h. Debtor-Defendants will not disburse any funds on the line of credit for

all Home Equity Line of Credit ("HELOC") Loans included in the Mortgage Loans as of the

close of business one (1) day prior to the Transfer Date. Any request for funds received after the

close of business one (1) day prior to the Transfer Date shall be sent via overnight delivery to:

        EMC Mortgage Corporation

        Attention: Patty Lester

        2780 Lake Vista Drive

        Lewisville, TX  75067

        In addition, Debtor-Defendants shall produce the billing statements for the

customers on the HELOC Loans as of one (1) day prior to the Transfer Date. All billing file

8

EXECUTION COPY

information related to the HELOC Loans, including any prior unpaid bill records, shall be included in the final data tapes to be transferred to EMC within one (1) business day after the Transfer Date.

      i. Notwithstanding the foregoing, if a Mortgage Loan already is registered with the Mortgage Electronic Registration System ("MERS"), which enables members to execute and deliver an Assignment of Mortgage Instrument with respect to a Mortgage Loan to MERS for recording in the office of the appropriate local jurisdiction, Debtor-Defendants shall follow the requirement of MERS to reflect in the records of MERS the transfer of the Servicing Rights to the Mortgage Loan from Debtor-Defendants to EMC. Debtor-Defendants shall continue the transmission of recording information of the Mortgage Instruments to MERS after the Transfer Date, until all such recording information is received and transmitted to MERS and EMC, which in any event and under all circumstances shall be completed not later than three (3) days after the Transfer Date. Plaintiffs shall bear all costs associated with the registration of a Mortgage Loan with MERS, to the extent done before the Transfer Date, including, without limitation, the related preparation and recordation of an assignment of Mortgage Instrument, and all costs associated with the reflection of the transfer of Servicing to the Mortgage Loan in the records of MERS. For each Mortgage Loan registered with MERS, Debtor-Defendants shall provide EMC with the MERS mortgage loan identification number in an electronic format acceptable to the parties.

      j. No later than five (5) days prior to the Transfer Date, Debtor-Defendants shall provide EMC with an electronic file of the Mortgage Loans which shall set forth whether each Mortgage Loan is or is not covered by a Tax Service Contract as of one (1) business day prior to the Transfer Date (the "Cut-off Date").

EXECUTION COPY

        k.  No later than five (5) days prior to the Transfer Date, Debtor-Defendants shall provide EMC with an electronic file of the related Mortgage Loans which shall set forth whether each Mortgage Loan is or is not covered by fully transferable life-of-loan flood contract as of the Cut-off Date.  Within five (5) days following the Transfer Date, Debtor-Defendants shall assign and transfer, in an electronic file format, the transferable life-of-loan flood certifications and contract information to EMC.

        l.  Debtor-Defendants shall take all such actions as may be necessary to transfer or record all right, title and interest in the Mortgage Loans to EMC and the Servicing Rights with respect to the Mortgage Loans to EMC, consisting of:  (i) assigning nominal title to the related Mortgage Loans to EMC; (ii) preparing or causing to be prepared all prior intervening assignments of mortgage instruments, and recording such assignments of mortgage instruments; and (iii) endorsing or causing to be endorsed the related Mortgage Notes.  Plaintiffs shall bear all actual out-of-pocket costs associated with the preparation and recording of the assignments of mortgage instruments described in (i) and (ii) above, and the preparation of the endorsements described in (iii) above.  Debtor-Defendants shall forward to the Custodian the original recorded assignments of mortgage instruments upon return from the recording office on a weekly basis and forward to EMC a report of all original recorded assignments delivered to Custodian.  Debtor-Defendants shall (i) provide or assist EMC in the procurement or execution of such affidavits, land court orders or other documents as it currently uses to evidence EMC's ownership of such Servicing Rights, and (ii) prepare such endorsements or prepare and record such intervening assignments of mortgage instruments as may be required to reflect of record EMC's ownership of such Servicing Rights in any jurisdiction or recording office that refuses to

accept the documents described in clause (i) as proof of EMC's ownership of such Servicing

Rights, and Plaintiffs shall in each case bear all actual out-of-pocket costs associated therewith.

m. Debtor-Defendants shall be responsible for ensuring all documents

comprising the Mortgage File in the possession of the Debtor-Defendants, related to the

Mortgage Loans and that are not already held by the Custodian, are transferred to EMC in a

timely manner including, but not limited to, Mortgage Notes (including e-Notes), riders, loan

modification documents and servicing files.

n. On or prior to the Transfer Date, Debtor-Defendants and EMC shall

execute and deliver the documents required to be executed and delivered under this Settlement

Agreement, in form and substance reasonably satisfactory to EMC and Debtor-Defendants, and

shall execute and deliver such other instruments or documents as EMC and Debtor-Defendants

shall reasonably determine are necessary or appropriate to effectuate or evidence the transactions

contemplated hereby.

o. Plaintiffs shall be responsible for all transfer and recording fees, out-of-

pocket costs and expenses actually incurred by Debtor-Defendants with respect to the transfer of

Servicing Rights, the delivery of Mortgage Loan files and related documents, the preparation and

mailing of goodbye letters.

3.   Notice of Settlement. Debtor-Defendants or their Counsel shall take all

necessary steps, within two (2) days of the execution of this Settlement Agreement, to notify the

United States Bankruptcy Court for the District of Delaware, Case No. 07-11047 (CSS) of the

settlement of the Adversary Proceeding, and to obtain approval under Fed. R. Bankr. P. 9019,

provided that the Settlement Amount shall be kept confidential from third parties other than the

Court and the Official Committee of Unsecured Creditors.  Notwithstanding anything to the

11

contrary herein, this settlement stipulation is subject to the approval of the Bankruptcy Court. Thereafter, the Settling Parties will cooperate in taking any other action that may be necessary to dismiss the Adversary Proceeding with prejudice and to obtain all necessary approvals.

4.     <u>Representations and Warranties.</u>  Each of the Settling Parties represents that it, she, or he has read and understands the scope and effect of each provision of this Settlement Agreement and has had the opportunity to consult with counsel for further explanation of the Settlement Agreement's terms, covenants, and provisions.  Each of the undersigned Settling Parties represents that it, she, or he has executed the Settlement Agreement freely, voluntarily, and with authority, intending to be bound thereby.  Each party represents that it, she, or he has been duly authorized to enter into this Settlement Agreement.

5.     <u>Costs and Fees.</u>  Except as specified herein, each party will bear its, her, or his own costs, attorneys' fees, and expenses incurred in connection with this Settlement Agreement and all steps necessary to effectuate the terms of this Settlement Agreement.

6.     <u>Cooperation.</u>  The Settling Parties will cooperate in the preparation, execution, and delivery of all documents that may be necessary to implement the purpose of this Settlement Agreement, and to cause the same to have full force and effect.

7.     <u>Not an Admission.</u>  This Settlement Agreement is entered into solely for the convenience of the parties thereto.  Neither this Settlement Agreement nor the fact of its execution will constitute any admission or acknowledgement of liability or wrongdoing on the part of any of the Settling Parties.  The Settling Parties will not offer this Settlement Agreement or the fact of its execution into evidence in any proceeding other than a proceeding to approve or enforce this Settlement Agreement or any of its terms.

8.  Controlling Law. The terms and conditions of this Settlement Agreement are contractual in nature and shall be construed and governed in accordance with the laws of the State of New York as applied to contracts entered into and performed entirely within that State.

9.  Jurisdiction. Any and all claims or controversies that arise from or in any way pertain to this Settlement Agreement will be brought in the first instance exclusively before the United States Bankruptcy Court for the District of Delaware. If, however, the United States Bankruptcy Court for the District of Delaware will not accept the dispute, then any claims or controversies that arise from or in any way pertain to this Settlement Agreement will be brought exclusively in the United States District Court for the Southern District of New York or, if competent jurisdiction cannot be found therein, in the Supreme Court of the State of New York, County of New York, and the Settling Parties hereby expressly and irrevocably consent to the exclusive jurisdiction of such courts in connection with any such claim or controversy, and expressly and irrevocably waive any and all objections to such courts' exercise of personal jurisdiction over them.

10.  Confidentiality. The Settling Parties signing below agree that the Settlement Amount, the terms of this Settlement Agreement, and all negotiations relating to this Settlement Agreement (referred to herein as "Confidential Information") shall be kept strictly confidential and shall not be made known to anyone who is not a party to this Settlement Agreement. The Settling Parties expressly agree that they will not disclose Confidential Information to any person affiliated with any media, news, television, radio, broadcast, telecommunications, reporting or publishing entity or organization or any other person, organization or entity who disseminates news to the general public. Notwithstanding the

13

foregoing, this confidentiality provision shall not prevent the Settling Parties or their counsel from responding to valid and enforceable subpoenas.

11.    <u>No Third Party Beneficiaries.</u> Nothing in this Settlement Agreement shall be construed to create any rights enforceable by any party other than Plaintiffs and Debtor-Defendants.

12.    <u>Mutual Limited Release.</u> Effective on the Settlement Payment Date, subject to the performance of all obligations hereunder, Plaintiffs hereby release and waive all claims (as that term is defined in section 101(5) of the Bankruptcy Code), except claims related to principal and interest payments received by the Debtor-Defendants with respect to the Mortgage Loans, against Debtor-Defendants or their affiliates, and the Debtor-Defendants hereby release and waive all claims against Plaintiffs or their affiliates, in each case limited to the Mortgage Loans, the Servicing Rights, and any of the other transactions contemplated by the Repurchase Agreement. The Settling Parties reserve all rights and defenses with respect to the principal and interest payments received by the Debtor-Defendants with respect to the Mortgage Loans.

13.    <u>Integrated Agreement.</u>

<u>Exhibits A</u> and <u>B</u> to this Settlement Agreement are incorporated into and constitute an integral part of this Settlement Agreement.

This Settlement Agreement, together with <u>Exhibits A</u> and <u>B</u> annexed hereto, contains the entire agreement between the Settling Parties and supersedes any and all prior and contemporaneous agreements or understandings, written or oral, with respect to the subject matter hereof. Each of the Settling Parties acknowledges that no promises or inducements have

14

been made that caused any party to execute this Settlement Agreement other than those that are expressly set forth herein.

The headings, subheadings or titles in this Settlement Agreement are used for purposes of convenience only and have no legal force, meaning or effect.

This Settlement Agreement may not be amended or revised except by a writing executed by an authorized representative of each of the Settling Parties.

All notices under this Settlement Agreement shall be sent by fax and first class mail to the following address:

> If to Plaintiffs:    Andrew W. Stern, Esq.
>
> Sidley Austin LLP
> 787 Seventh Avenue
> New York, NY  10019
> Telephone: (212) 839-5300
> Facsimile: (212) 839-5599
>
> If to Debtor-Defendants:  Susheel Kirpalani, Esq.
>
> Quinn Emanuel Urquhart Oliver & Hedges, LLP
> 51 Madison Avenue, 22nd Floor
> New York, NY 10010
> Telephone: (212) 849-7000
> Facsimile:  (212) 849-7100

13.   <u>Signatures and Effective Date.</u>  This Settlement Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.  This Settlement Agreement will become effective as soon as all parts of this Settlement Agreement have been executed by all of the Settling Parties and a complete set of original executed signature pages has been received by counsel for Plaintiffs.

15

**EXECUTION COPY**

WHEREFORE, the Settling Parties hereby acknowledge their agreement and

consent to the terms and conditions set forth above through their respective signatures as

contained below.

BEAR STEARNS MORTGAGE CAPITAL
CORPORATION

By: _____
Name: Paul M. Friedman
Title: Senior V.P.

EMC MORTGAGE CORPORATION

By: _____
Name: _____
Title: _____

AMERICAN HOME MORTGAGE
INVESTMENT CORPORATION

By: _____
Name: _____
Title: _____

16

**EXECUTION COPY**

WHEREFORE, the Settling Parties hereby acknowledge their agreement and consent to the terms and conditions set forth above through their respective signatures as contained below.

BEAR STEARNS MORTGAGE CAPITAL
CORPORATION

By: _____
Name: _____
Title: _____

EMC MORTGAGE CORPORATION

By: _____
Name:  Debbie Eraff
Title:  Senior Vice President

AMERICAN HOME MORTGAGE
INVESTMENT CORPORATION

By: _____
Name: _____
Title: _____

16

OCT. 22. 2007  3:05PM    AMERICAN-HOME-MORTGAGE                NO. 3210   P.  1

**EXECUTION COPY**

       WHEREFORE, the Settling Parties hereby acknowledge their agreement and

consent to the terms and conditions set forth above through their respective signatures as

contained below.

                       BEAR STEARNS MORTGAGE CAPITAL
                       CORPORATION

                       By: _____
                       Name: _____
                       Title: _____

                       EMC MORTGAGE CORPORATION

                       By: _____
                       Name: _____
                       Title: _____

                       AMERICAN HOME MORTGAGE
                       INVESTMENT CORPORATION

                       By: _____
                       Name: _Alan Horn_____
                       Title: _EVP/General Counsel_____

16

**EXECUTION COPY**

AMERICAN HOME MORTGAGE
CORPORATION

By: _____
Name:    Alan Horn
Title:    EUP/ General Counsel


AMERICAN HOME MORTGAGE
ACCEPTANCE INC.

By: _____
Name:    Alan Horn
Title:    EUP/ General Counsel


AMERICAN HOME MORTGAGE SERVICING,
INC.

By: _____
Name:    Alan Horn
Title:    EUP/ General Counsel


17

EXECUTION COPY

## EXHIBIT A

### SPECIAL AND LIMITED POWER OF ATTORNEY AND COVENANTS

### from AMERICAN HOME MORTGAGE SERVICING, INC.
### in favor of EMC MORTGAGE CORPORATION

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, the Settlement Agreement dated as of October __, 2007 (the "Settlement Agreement") between Bear Stearns Mortgage Capital Corporation ("BSMCC") and EMC Mortgage Corporation ("EMC") (collectively, "Plaintiffs"), on the one hand, and American Home Mortgage Investment Corporation, American Home Mortgage Corporation, American Home Mortgage Acceptance Inc., and American Home Mortgage Servicing, Inc. ("Debtor-Defendants"), on the other, provides for the transfer of the Servicing Rights and the servicing functions by Debtor-Defendants to EMC for certain Mortgage Loans (the "Mortgage Loans"). Initially capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Master Repurchase Agreement, between BSMCC and American Home Mortgage Investment Corporation, dated as of June 23, 2004.

NOW, THEREFORE, **American Home Mortgage Servicing, Inc.**, as the transferor of the related servicing functions for the Mortgage Loans under the Settlement Agreement (hereinafter referred to as "Principal"), acting through its duly authorized officer _____ _____, as the _____ of the Principal, DOES HEREBY:

1.    constitute and appoint each **Authorized Officer** (which are referred to collectively as "Attorneys" and individually as "Attorney") of **EMC Mortgage Corporation**, as the successor servicer, individually, as a true and lawful attorney for Principal (but only for the purposes expressly set forth herein);

2.    for and in the name and stead of Principal, as the seller and prior servicer, and in connection with the servicing of the Mortgage Loans, authorize and empower each such Attorney to:

(a)    endorse, negotiate, deliver and deposit any checks, draft, money order or other form of payment instrument payable to Principal and tendered as payment on the Mortgage Loans;

(b)    endorse, execute, seal, acknowledge, deliver and file (including, without limitation, the recording or filing with the appropriate public officials) the following:

(1)    any documents or instruments (i) to endorse any promissory note for the Mortgage Loan to the Investor or its successor in interest, (ii) to assign any Mortgage or any other security instrument for the Mortgage Loan to EMC as servicer, (iii) to maintain and protect the validity, priority or value of the lien and security interest created by any Mortgage on

the related Mortgaged Property and any other security instrument for the Mortgage Loan, including without limitation the notification of any property tax authorities and any casualty or mortgage insurers with respect to such Mortgaged Property and the Mortgage Loan, (iv) to represent the interests of and act as the lender of the Mortgage Loan in connection with the default, collection, liquidation or foreclosure of any such Mortgage Loan and the related Mortgaged Property, the bankruptcy of the related borrower or any lawsuit or legal proceeding involving the related Mortgaged Property, and (v) to appoint any successor or substitute trustee under a Mortgage that consists of a deed of trust;

> (2) any modifications, waivers, assumptions, amendments or agreements for subordination or forbearance of any Mortgage, promissory note or any other documents related to the Mortgage Loan; and

> (3) any instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments with respect to any Mortgage or the related Mortgaged Property for the Mortgage Loan; and

> (c) institute and pursue foreclosure proceedings or obtain a deed in lieu of foreclosure so as to effect ownership of any Mortgaged Property in the name or on behalf of the Investor and manage and liquidate any resulting REO; and

3. further authorize and empower each such Attorney, for and in the name and stead of Principal, to (a) file and record this Special and Limited Power of Attorney with the appropriate public officials; and (b) appoint and name such substitute attorneys with all authority and powers hereunder, provided that such substitute attorneys are duly elected and qualified officers of successor servicer.

Principal covenants and grants to the Attorneys full authority and power to execute any documents and instruments and to do and perform any act that is necessary or appropriate to effect the intent and purposes of the foregoing authority and powers hereunder. Principal further ratifies and confirms each act that the Attorneys shall lawfully do or cause to be done in accordance with the authority and powers granted hereunder. The foregoing authority and powers shall not be deemed invalidated solely by reason of any action or omission of any Attorneys appointed hereunder. Principal covenants and agrees that, from time to time at the request of Successor Servicer, Principal shall execute instruments confirming all of the foregoing authority and powers of any Attorneys. Without actual notice to the contrary, any person may rely on authorities and powers granted hereunder and any actions of the Attorneys taken pursuant to such authorities and powers as the valid, binding and enforceable actions of Principal and that all conditions hereunder to the exercise of such actions by the Attorneys have been completed and are satisfied.

**EXECUTION COPY**

This power of attorney is irrevocable by Principal.

IN WITNESS WHEREOF, Principal has caused this instrument to be signed by its duly authorized officer as of October __, 2007.

**American Home Mortgage Servicing, Inc.,** as Principal

By: _____

Name: _____

Title: _____

_____
Witness

## ACKNOWLEDGMENT

STATE OF_____)
) ss:
COUNTY OF_____)

On the ___ day of _____, 2007, before me personally appeared the above-named _____, on behalf of **American Home Mortgage Servicing, Inc.,** to me known and known by me to be the _____ of said corporation, and acknowledged said instrument so executed to be his free act and deed in said capacity and the free act and deed of said corporation.

My commission expires:

_____
Notary Public

iii

**EXECUTION COPY**

**<u>EXHIBIT B</u>**

[See Attached]



# EMC Mortgage Corporation

# Servicing Transfer Instructions

Version 1 – 02/15/2007

# Welcome to EMC Mortgage Corporation!

We are glad to have you as our business partner and look forward to a smooth and successful servicing transfer. EMC will be contacting you to discuss the Servicing Transfer Instructions that were provided to your company and also address any other questions you may have regarding the transfer.

Should you have any questions in the meantime, please feel free to contact your assigned Acquisition Coordinator or the Servicing Account Management Department at: **800-695-7695 x4863 or x7208** or via email at: **servicingacctmanagement@bear.com**.

Thank you for your business and we look forward to a mutual and profitable business relationship.

Sincerely,

Nancy Mixson
Manager – Servicing Account Management

# Table of Contents

| | | |
|---|---|---|
| Section I | Servicing Transfer Instructions | 4 |
| 1.01 | Electronic Data for Loan Boarding | 5 |
| 1.02 | Other System Reports | 5 |
| 1.03 | Contact and Collection Histories | 6 |
| 1.04 | Data Definitions | 6 |
| 1.05 | Servicing Change Notifications | 6 |
| 1.06 | Hazard Insurance | 8 |
| 1.07 | Optional Products | 8 |
| 1.08 | Taxes | 8 |
| 1.09 | PMI/MIP/HUD | 9 |
| 1.10 | Escrow | 9 |
| 1.11 | Foreclosure | 10 |
| 1.12 | Bankruptcy | 10 |
| 1.13 | Loss Mitigation/Workout | 11 |
| 1.14 | Assumptions and Modifications | 11 |
| 1.15 | Collateral Documents and MERS Instructions | 11 |
| 1.16 | Files | 13 |
| 1.17 | IRS Reporting | 15 |
| 1.18 | Remitting of Funds | 15 |
| 1.19 | Contact Information | 19 |
| | | |
| Section II | ARM Information | 21 |
| Section III | HELOC Information | 22 |
| Section IV | Interest Only Loans | 23 |
| Section V | Repurchase Requirements | 24 |
| | | |
| Exhibit I | Master Record Data File | |
| Exhibit II | ARM Data File Format | |
| Exhibit III | HELOC Data File | |
| Exhibit IV | Final Trial Balance Standard Report Format | |
| Exhibit V | Transaction History Standard Report | |
| Exhibit VI | Imaging Import Requirements | |
| Exhibit VII – A | Remittance Template Actual Basis | |
| Exhibit VII – B | Remittance Template Scheduled Basis | |
| Exhibit VIII | Funds Advice | |
| Exhibit IX | EMC Sample Goodbye Letter | |

# Section I
# Servicing Transfer Instructions

This document contains the Servicing Transfer Instructions that EMC Mortgage Corporation requires when acquiring the servicing of loans.

**Dates for this servicing transfer are set as follows:**
- **Cutoff Date:**                                        Month, Day, Year
- **Funding Date:**                                       Month, Day, Year
- **Goodbye Letter Date:**                                Month, Day, Year
- **Preliminary Data Tape with Record Layout:**           Month, Day, Year
- **Transfer Date:**                                      Month, Day, Year
- **Final Data Tape with Record Layout to be received by:**    Month, Day, Year

Within **three (3)** business days after the **Transfer Date**, Prior Servicer shall deliver to EMC with respect to such mortgage loans all records, files and information required to complete the Servicing transfer. Unless otherwise specified all reports will be in an electronic format acceptable to Servicer.

The Seller (i) shall comply with any applicable laws and regulations regarding the privacy and security of Consumer Information including, but not limited to the Gramm-Leach-Bliley Act, Title V, Subtitle A, 15 U.S.C. § 6801 et seq., (ii) shall not use Consumer Information in any manner inconsistent with any applicable laws and regulations regarding the privacy and security of Consumer Information, (iii) shall not disclose Consumer Information to third parties except at the specific written direction of EMC, (iv) shall maintain adequate physical, technical and administrative safeguards to protect Consumer Information from unauthorized access as provided by the applicable laws and regulations, and (v) shall immediately notify EMC of any actual or suspected breach of the confidentiality of Consumer Information. Consumer Information includes, but is not limited to, all personal information about Mortgagors (including the Mortgagor's loan number) that is supplied to EMC by or on behalf of the Seller.

Secured data transfer methods and storage media supported by EMC are:

### *Data Transfer Method*

1. Bear IFT
2. PGP Encryption, Version 7.0.3 or higher
3. For other encryption methods, please contact your assigned Acquisition Coordinator.

### *Storage Media*

1. CD
2. Optical
3. USB Hard Drive

4

### 1.  Electronic Data for  Loan Boarding
Provide one copy each of the following reports that reflects acquisition loan status by the **Preliminary Data Tape Date with Record Layout** and a second copy of each that reflects final loan status by the **Final Data Tape Date with Record Layout/Transfer**.

- Master Status Report with record layout (MSP Users: T-309, Non-MSP Users: **Exhibit I**)

- ARM Data File **Exhibit II** with record layout (Must be provided by both MSP and Non MSP Users)

- HELOC Data File **Exhibit III** with record layout (Must be provided by both MSP and Non MSP Users).

Exhibits I, II and III should be completed and be provided in TXT format tab delineated.

### 2.  Other System Reports
Provide one trial balance that reflects acquisition balances by the **Preliminary Data Tape Date with Record Layout**.  Provide a second trial balance that reflects final transfer balances by the **Final Data Tape Date with Record Layout/Transfer Date**. Provide the following reports:

- A Preliminary Trial Balance report (MSP Users: 4TB), reflecting acquired balances. This report will include:

    a) Loan Number
    b) Current Principal Balance (*)
    c) Payment Amount (P & I only) (*)
    d) Tax & Insurance Payment Amount (*)
    e) Total Payment Amount (*)
    f) Escrow Balance (*)
    g) Escrow Advance Balance (*)
    h) Suspense Balance (*)
    i) Restricted Escrow Balance/Loss Draft Balance (*)
    j) HUD Balance (if Title One loan) (*)
    k) Late Charge Balance (*)
    l) Mortgagor Recoverable Corporate Advance Balance (*)
    m) Current Due Date
    n) Interest Rate
    o) Deferment Interest Balance
    p) Other Fee Balances

    Fields followed with an asterisk (*) should be totaled.  Non MSP clients, refer to **Exhibit IV** for the **required** "Final Trial Balance Standard Report" format.

5

- A Master Record Status Report (MSP Users: T-309) report. Provide one copy that reflects acquisition loan status by the **Preliminary Data Tape Date with Record Layout**. Provide a second copy that reflects final loan status by the **Final Data Tape Date with Record Layout /Transfer Date**

- Transaction histories (MSP Users: 45C and P4CJ) covering the life of loan up to the **Final Data Tape Date with Record Layout/ Transfer Date.** Non MSP clients, refer to **Exhibit V** for the **required** "Transaction History Standard" format. The loan histories must include the customer's loan number, due date, transaction dates, effective date, type of transaction, and transaction amounts for all transactions involving changes to principal and interest, fee assessment, fee repayment, corporate advance assessment, corporate advance repayment, escrow disbursements and payments, and modifications. Each loan history must reflect the final transaction(s) associated with this loan transfer and show all final balances as $0.00.

- An *Interim Servicing Remittance Report* reflecting all activity from the cutoff date to transfer date is to be received by EMC with the final balance report. (MSP Users: S213, S214, S215, P139, S50Y)
- Additional reports as requested in the sections below.

3. **Contact and Collection Histories (servicing notes)** (MSP Users: 54E), Provide a copy of any customer service and collection comments placed on all loans. These can be sent *electronically* or by hard copy. This information needs to be sent no later than the established **Final Data Tape Date with Record Layout/Transfer Date.**

4. **Data Definitions**
Provide Data Definitions along with codes and descriptions for: ARM Plans, ARM Index Codes, all Process and Disbursement Stops, Transaction Codes Listing, Prepayment Penalty Header Codes , Hazard Coverage Type Codes, Foreclosure, Loss Mitigation, Default, REO, Bankruptcy codes, Recoverable Corporate Advance Transaction Code Listing and Master Record Codes. A Data Definition should be provided by the **Preliminary Data Tape Date with Record Layout** and **the Final Data Tape Date with Record Layout/Transfer.**

5. **Servicing Change Notifications / Letters**
Provide a copy of each of these documents for each loan:

- Goodbye Letter
- Hazard Insurance Mortgagee Change Notification
- Change of Servicing Notification – PMI
- Change of Servicing Notification – Optional Products
- Change of Servicing Notification - Flood Tracking
- Change of Servicing Notification - Tax Tracking
- Change of Servicing Notification - Attorney
- Change of Servicing Notification - Trustee

6

**These notices/letters should be sent no later than the Goodbye Letter Date. A copy of each type of letter template must be submitted to EMC Mortgage for approval via email or fax prior to mailing.**

**Good-bye Letter Information Is As Follows:**

On the Goodbye Letter Date, the Seller will inform all Mortgagors in writing of the change in servicer from the Seller to EMC or its designee, all in accordance with applicable law.  The Seller's standard goodbye letter must be pre-approved by EMC prior to the Settlement Date.  EMC requests that its goodbye letter represented by Exhibit IX or a similar form be used for all Mortgage Loans. Should the Seller choose to use their own form of goodbye letter, the Seller acknowledges that EMC's review of the Seller's goodbye letter will not be a review for statutory or regulatory compliance purposes, and that the Seller will have the sole responsibility for such compliance.  In either case, the goodbye letter must identify the effective Servicing Transfer Date, and must include both the Seller Loan number and the new EMC Loan number.  A copy of each goodbye letter sent to the mortgagor must be included in the Mortgage File upon shipping.

The following information, as applicable, should be included in each Mortgagor goodbye letter:
All Loans Except HELOCs:
Customer Service Telephone and Hours of Operation:
1-800-723-3004 7:00 am to 9:00 pm, CST, Monday through Thursday and
7:00 am to 7:00 pm, CST on Friday

HELOC Loans
Customer Service Telephone and Hours of Operation:
1-866-475-7329, 7:00 am to 7:00 pm, CST, Monday through Friday

Customer Service Correspondence Address:
EMC Mortgage Corporation
800 State Highway 121 Bypass
Lewisville, Texas 75067-4180

Payment Address:
EMC Mortgage Corporation
PO Box 660530
Dallas, Texas 75266-0530

**The Mortgagee Clause Should Read As Follows:**
EMC Mortgage Corporation
It's Successor's and/or Assign's
P.O. Box 7589
Springfield, OH  45501-7589

7

6. **Hazard Insurance**

Perform the following:
- Cancel all force placed policies on loans effective as of the transfer date and notify the insurance company of the transfer.
- Pay all hazard and flood premiums which become due prior to and within 30 days following **Transfer Date. DO NOT DISBURSE ANY PREMIUMS AFTER THE TRANSFER DATE.** EMC will disburse all premiums after the Transfer Date.

Provide the following:
- A list of policies expired due to unpaid premiums as of the transfer date.
- A list of all loans that have temporary binder coverage as of the transfer date.
- A list of all loans which had been covered under a force-placed policy. Include the force placed carriers, their address, phone number and contact.
- A list of all pending loss drafts, including amounts.
- A separate file with copies of all documentation relating to the loss draft claim including the insurance adjustment, letters, copies of checks, inspection reports, and amounts released to the borrower and/or contractors.
- A list of loans with flood insurance.
- A file from your flood certification vendor containing flood certification data for each loan.

For all lists, include loan number, policy number, and applicable dates. (MSP Users: 10P-3). This information must be sent by the **Transfer Date**.

7. **Optional Products**

If EMC is doing business with the same vendors, transfer the existing coverage. Premiums should be remitted up until the day of transfer to the appropriate vendor.

Provide the following:
- A list of all loans that had an optional product including A&H, life insurance, accidental death insurance, etc. The list should include insurance company, loan number, placement date, monthly premium amount and last monthly premium paid and a short description or code indicating the type of product. This information must be sent 30 days prior to the **Transfer Date**.
- **A copy of the master and/or individual policies for the insurance coverage.**
- If the policy will be canceled notify the vendor, refund any remaining premium to the customer and instruct the customer to contact the vendor to maintain coverage.

8. **Taxes**

Perform the following:
- Pay all items due or that become due within 30 days following **Transfer Date. DO NOT DISBURSE ANY TAXES AFTER THE TRANSFER DATE.** EMC will disburse all items after the **Transfer Date**.

8

Provide the following:
- As of the transfer date, provide EMC Mortgage Corporation with a detailed report sorted by state including loan number, payee code and tax parcel number for all delinquent taxes on non-escrowed loans.
- *An open items report* for escrowed loans for all pending activity (MSP Users: 10P-2) through the **Transfer Date** + 60 days.
- A detailed report of any outstanding tax issues including the appropriate correspondence and explanation of the situation as of the transfer date.
- A list of all open tax items
- Any tax bills and original tax receipts for the loans being transferred.
- A report listing all loans with multiple tax parcels.

The tax bills and receipts must be sent via overnight mail to:
   Fidelity National Tax Services, Inc.
   3100 New York Drive
   Pasadena, CA  91107

### 9. **PMI/MIP/HUD**
Perform the following:
- Pay all items due or that become due within 30 days following **Transfer Date**. **DO NOT DISBURSE ANY PREMIUMS AFTER THE TRANSFER DATE.** EMC will disburse all items after the Transfer Date**.**

Provide the following:
- A list of policies expired due to unpaid premiums, as of the transfer date.
- A list of loans with pending MI claims, as well as all claim documentation for each loan.

On Conventional Loans, provide the following:
- Provide the individual loan PMI certificates
- List of all loans with PMI to include the loan number; PMI company; PMI certificate number; next due date; last amount paid.

For all lists, include loan number, policy number, and applicable dates. This information must be sent by the **Transfer Date**.

Instruct HUD to forward all future renewal billings to:
   EMC Mortgage Corporation
   MIP Department
   P O Box 293150
   Lewisville, Texas 75029-3150

### 10. **Escrow**
Perform the following:
- Pay all interest on escrow through the **Transfer Date** and credit all balances appropriately.
- Effective immediately refrain from performing an escrow analysis prior to the transfer date.  If an escrow analysis is required, a copy must be provided.

9

Provide the following:

- List of loans with restricted escrow funds and explanation of funds.
- A copy of the last escrow analysis for all escrowed loans.
- An escrow payee list that includes Payee ID, company name, addresses, phone number, and contact information.

Any reports (hard copy and electronic) available from your system are requested and should include: (MSP Users: 1AT). These reports should be sent to your assigned Acquisition Coordinator.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be generated as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

11. **Foreclosure**

- ***You must notify the Foreclosure attorney that the loans are being transferred and to proceed with the Foreclosure process. A Foreclosure should not be put on hold without the prior written approval of EMC.***

- Provide a list of loans in Foreclosure, the date referred to the attorney, attorney name and phone number, foreclosure status, who is holding the original documents and any sale dates scheduled within 60 days of transfer.
- A listing of loans with corporate and escrow advances due to delinquency including copies of invoices and escrow ledgers to support these advances. (Include supporting documentation sufficient to identify and verify date, amount, and nature of advances.  Examples would include copies of vendor invoices, sub-system detail or other itemized listing by loan.)
- A list of all contact people for the Foreclosure, Bankruptcy, and Foreclosure Claims area.
- Bid instructions for any loans with a sale date occurring within 15 days after the Transfer Date must be provided upon transfer.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**. (MSP Users: 2FW)

12. **Bankruptcy**

- You must notify your Bankruptcy Attorney that the loans are being transferred and transfer notices need to be filed with the Trustee. Provide a copy of the notice letter to the trustee.
- Provide a list of loans in Bankruptcy including, filing date, case number, district, chapter, post-petition due date, attorney name and phone number, bankruptcy status, copy of the bankruptcy plan, copy of the proof of claim including copies of supporting invoices for any expense included in the plan. (Include supporting documentation sufficient to identify and verify date,

10

amount, and nature of advances.  Examples would include copies of vendor invoices, sub-system detail or other itemized listing by loan.)
- Loan level listing of all agreed orders or stipulation agreements with the current status on each of the cases.
- A listing of all pending relief from stays within 60 days of transfer.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**. (MSP Users: 1BW)

13. **Loss Mitigation/Workout**
Provide the following:
- A list of all loans with an active repayment plan or pending workout/loss mitigation.  Include the workout file or loss mitigation file including written documentation of the Loss Mitigation/Workout arrangements. Include a copy of the original signed agreement with all terms and conditions as well as copies of all supporting invoices included in the plan.
- Provide a list of any loans currently in a deed-in-lieu process and the status of the deed-in-lieu.
- On Short Sales, provide copies of recent property valuation, Sales contract, HUD-1 Settlement statement, realtor/broker contact information, borrower financials, hardship letter and approval letter.
- Provide a list of all loans pending a VA refund.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

14. **Assumptions and Modifications**
Provide a list of all loans with pending and/or completed assumptions or modifications. Provide a copy of the file including the assumption or modification agreement and all pertinent details, including title search.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

15. **Collateral Documents and MERS Instructions**

Trailing Collateral Documents for EMC Serviced Loans should be shipped via Overnight Mail to:

> EMC Mortgage Corporation
> Attn:  Collateral Management
> 2780 Lake Vista Drive
> Lewisville, Texas 75067-3884

Collateral Trailing Documents include but are not limited to:
- Original Recorded Deeds of Trust/Mortgages
- Final Title Policies
- Original Recorded Intervening Assignments
- Completed Unrecorded Assignments

Servicer should provide EMC with an "Outstanding Collateral Exception Report" at the time of servicing.

In order for the Collateral Management Department to better serve you, attach a transmittal cover sheet with the documents referencing loan number, borrower name and document type. If the documents are 1st and 2nd liens, reference the loan amount for each lien.

**MERS**

MERS Delivery Instructions for Loans sold Servicing Released to EMC Mortgage Corporation

### EMC Mortgage Corporation Org ID: 1000221

Direct Registrations must be completed within ten (10) calendar days of the funding date. Funding date is defined as the date on which interest begins to accrue (loan closing date).

All Transfer of Beneficial and Servicing Rights (TOBR/TOSR) must be completed no later than fourteen (14) days after the effective transfer date (the date defined in the Purchase and Sale Agreement, on which the buyer begins servicing the loans on its servicing system).

Org ID's for Registrations and TOBR/TOSR transfers to EMC.

- Servicer: 1000221
- Investor: 1000221
- Custodian:   Wells Fargo:  1000573
              LaSalle:       1000567

Required Data Elements for MERS Loans:
- MIN#
- MOM Indicator
- Registration Date

MERS Contact: Questions regarding loan level MERS issues should be emailed to **EMCMERS@bear.com**

16. **Files**
The mortgage files must contain copies of all the documents in the collateral files and all other documents and information relating to the origination and servicing of the mortgage loans through the date on which the files are delivered to the Servicer. (See detailed listings below) Files are to be forwarded to the designated parties listed below in accordance with the time frames specified in this document or the applicable purchase contract or interim servicing agreement. Begin sending these files **immediately after funding and no later than 15 days prior to transfer date**.
The last shipment of files should arrive no later than the **Final Data Tape Date.**
**NOTE: IF YOUR COMPANY CAN PRODUCE ELECTRONIC IMAGES, REVIEW EXHIBIT VI FOR FORMATTING REQUIREMENTS**.

The Servicing Files must be:
- Boxed in Seller loan number order with an inventory sheet and boxes numerically labeled (example: Box 1 of 75, Box 2 of 75, etc.)
- Each box must be clearly marked with the Sub Deal ID/Trade Name **(DO NOT Commingle Deals)**
- 1st and 2nd liens identified separately
- Special loans (i.e. ARMS, Buydowns, HELOCs, etc.) must be boxed separately and labeled as such.
- A contact name and phone number placed on the shipping label for a reference in case any questions may arise.
- All trailing documents must be received by EMC within **three (3)** business days of the transfer date.
- Send a list of the tracking number to the assigned Acquisitions Coordinator.

**All Files and Servicing Trailing Documents Should Be Shipped Via Overnight Mail to:**

**Servicing Files:**
EMC Mortgage Corporation
c/o SOURCECORP
Dock B
Mail Stop: EMC BULK
2200 Chemsearch Blvd.
Irving, Texas 75062

**Servicing Trailing Documents/Default Files:**
EMC Mortgage Corporation
Attn: Acquisitions Coordinator
2780 Lake Vista Drive
Lewisville, Texas 75067-3884

Servicing files should include:
- Copies of current hazard and flood policies
- Copies of all Notice of Change letters for ARM loans
- Notifications of sale to MI companies, insurance agencies, taxing authorities and tax contractors
- Tax service contract information and tax parcel number

13

Modification/Assumption Files
- Modification, assumption or any other agreement which alters the contractual terms of the loan and /or security instrument

Collection Files
- Collection comments since time of purchase or the prior twelve (12) months, whichever is less

Loss Mitigation/Workout/Forbearance Files
- Copies of any pending or proposed loan workout plans, including but not limited to:
    - Repay Plans
    - Forbearance proposals
    - Modifications
    - Deferment Agreements
    - Deed-in-lieu proposals
    - Assumptions proposals
    - Short sale proposals
    - Copies of all borrower correspondence

Bankruptcy Files
- Servicer's attorney and contact information
- Debtor's attorney and contact information
- BK petition
- Proof of Claim
- Reorganization Plan
- Adequate Protection Order (APO) or Relief of Stay (ROS) order
- ROS motion
- Dismissal/discharge order and/or a list of loans that have been dismissed/discharged

Foreclosure Files
- Trustee/attorney names and contact information
- Breach Letter
- Notice of Default/Complaint
- Foreclosure title report
- Foreclosure bid worksheet (if available)
- Actual/projected foreclosure sale date

REO Files
- Copy of foreclosure deed
- Foreclosure bid worksheet with supporting Broker Price Opinions or Agent Price Opinion attached
- Copies of any property inspection reports
- Copies of any listing agreements
- Copies of any listing activity reports
- Copies of any offers received
- Copies of any rehabilitation work orders and/or contractor invoices

14

17. **IRS Reporting**

It is the Prior Servicer's responsibility to provide all required IRS reporting information to the IRS covering the period in which your company serviced the loan.

18. **Remitting Of Funds**

All funds must be remitted with backup providing loan level detail in the form of the EMC approved Trial Balance (Exhibit IV), Remittance Report (Exhibit VII-A or Exhibit VII-B as applicable), or in sufficient detail in the form of Exhibit VIII to permit appropriate application of funds including:
- Seller Loan Number
- EMC Loan Number
- Amount of Remittance
- Purpose of Remittance (Escrow, Interim PI, Borrower Payments, etc.)

A. *After Funding Date and before Transfer Date.*
If you are **NOT** applying funds to the borrower's account (per your MLPA) remit according to the following instructions:
- **Borrower payments and payoffs,** that are received after the Funding Date and before the Transfer Date by Servicers who are not interim servicing or interim reporting, **SHOULD NOT** be applied to the borrower's account and **SHOULD** be remitted to EMC within forty-eight (48) hours of receipt in accordance with the Mortgage Loan Purchase Agreement (MLPA) along with remittance back up in the form of Exhibit VII or Exhibit VIII.

     *Wiring instructions*:  Send notification and wire back up in electronic format to emcfundsadvice@bear.com and send funds as follows:

          Bank Name:  JPMorgan Chase
          For Credit to:  EMC Mortgage Corporation
          ABA# 02100021
          For Credit to Account # 07001224500
          Type:  Borrower Funds (Borrower Name & Account #)
          Sender's Name and Phone #

     *Overnight mailing instructions for checks.* Send notification and remittance back up in electronic format to emcfundsadvice@bear.com. Send items and enclosed back up, including loan level detail to:

          EMC Mortgage Corporation
          Attn: Cashiering Department
          800 State Highway 121 Bypass
          Lewisville, Texas 75067-4180

15

If you **ARE** applying funds to the borrower's account (per your MLPA) remit according to the following instructions:

- **Interim principal, interest and payoff payments**, that are received after the Funding Date and before the Transfer Date by Servicers who interim service and interim report, should be properly posted to the borrower's account and remitted to EMC in accordance with the Interim Servicing Agreement which is an exhibit of the Mortgage Loan Purchase Agreement (MLPA). Refer to the Interim Servicing Agreement for interim servicing instructions.

### B. At Transfer Date

**Short Interim Collections:** Principal and interest amounts and payoff amounts posted to the applicable borrower account on all loans interim serviced and interim reported, must be wire transferred to EMC within three (3) business days of the Transfer Date. See **Exhibit VII-A – Remittance Template for Actual Basis reporting or Exhibit VII-B – Remittance Template for Scheduled Basis reporting, as applicable,** for **required** format of wire backup. Send notification and wire back up in electronic format to emcfundsadvice@bear.com and send funds as follows.

*Wiring instructions are:*

> Bank Name:  JPMorgan Chase
> For Credit to:  EMC Mortgage Corporation
> ABA# 02100021
> For Credit to Account # 07001227347
> Type:  Interim PI
> Sub-Deal ID: _____
> Attn:  Accounting Acquisitions

**Escrow Funds**
Taxes and Insurance (T&I) balances including suspense balances and claims (if not previously netted from the Funding Amount), are required to be wire transferred to EMC within three (3) business days of the Transfer Date. Send notification and wire back up in the form of Exhibit IV in electronic format to emcfundsadvice@bear.com and send funds as follows.

*Wiring instructions are:*

> Bank Name:  JPMorgan Chase
> For Credit to:  EMC Mortgage Corporation
> ABA# 02100021
> For Credit to Account # 07001227347
> Type:  Escrow Funds
> Sub-Deal ID: _____
> Attn:  Accounting Acquisitions

16

**Corporate or Servicer Advances**
The Prior Servicer should provide a loan-level, itemized accounting of all mortgagor recoverable expenses or advances including supporting documentation sufficient to identify and verify date, amount, and nature of advances. Examples would include copies of vendor invoices, sub-system detail or other itemized listing by loan. (Fidelity MSP Clients should provide DDCH screen prints for all accounts)

EMC and the Prior Servicer may agree, in advance of the Transfer Date, that Corporate or Servicer Advances may be netted from other funds due EMC. Otherwise, EMC will reimburse the Prior Servicer for Corporate or Servicer Advances upon receipt of a request for interim expenses accompanied by copies of the corresponding invoices.

## C. Funds Received After Transfer Date

**Borrower Payments or Payoffs Received after Transfer**
Payments received on or after the Transfer Date should be properly endorsed to EMC Mortgage Corporation and remitted within twenty four (24) hours of receipt along with remittance back up in the form of Exhibit VII or Exhibit VIII.

*Wiring instructions*: Send notification and wire back up in electronic format to emcfundsadvice@bear.com and send funds as follows:

> Bank Name: JPMorgan Chase
> For Credit to: EMC Mortgage Corporation
> ABA# 02100021
> For Credit to Account #07001224500
> Type: Borrower Funds
> Sender's Name and Phone # _____

*Overnight mailing instructions*: Send notification and remittance back up in electronic format to emcfundsadvice@bear.com. Send items and enclosed back up including loan level detail to:

> EMC Mortgage Corporation
> Attn: Cashiering Department
> 800 State Highway 121 Bypass
> Lewisville, Texas 75067-4180

Any payments received 60 days past the Transfer Date must be returned to the mortgagor with a copy of the goodbye letter or other evidence indicating that the loan has been transferred to EMC. **NOTE: At your option, you may provide EMC with a limited power of attorney; allowing EMC to endorse check(s) made payable to you.**

17

**NSF Checks received after Transfer**

All borrower checks returned for non-sufficient funds which were not reversed by the Prior Servicer prior to the Transfer Date should be handled as follows:

- Request reimbursement from EMC within ninety (90) days of Transfer Date.

- Forward the NSF item along with a copy of the payment history, NSF date, and amount due back to Prior Servicer.

- Upon receipt, EMC will reverse funds from the appropriate account and forward funds via wire transfer to the Prior Servicer within twenty (20) business days.

Mailing Instructions for NSF Items:

> EMC Mortgage Corporation
> Attn: Cashiering Department
> 800 State Highway 121 Bypass
> Lewisville, Texas 75067-4180
> emccashieringacquisitions@bear.com

**Other Checks Received after Transfer**

All checks received after the Transfer Date other than those for borrower payments, borrower payoffs, and NSF's, should be handled as follows:

- Checks should be properly endorsed.

- Checks should be clearly identified with the Prior Servicer's loan number in the upper right-hand corner.

- Funds should be accompanied by the Funds Advice for post transfer miscellaneous funds, Exhibit VIII, providing a detailed inventory including the Prior Servicer's loan number, EMC loan number, the date the funds were received by the Prior Servicer, amount due each account, and the purpose of each check (i.e., tax refund, loss draft, payment of special insurance, etc.).

- Send notification and remittance back up in electronic format to emcfundsadvice@bear.com.  Checks should be forwarded with remittance back up enclosed via overnight mail to:

> EMC Mortgage Corporation
> Attn: Cashiering Department
> 800 State Highway 121 Bypass
> Lewisville, Texas 75067-4180

18

19. **Contact Information**

**The following numbers are provided for your information; however your primary point of contact for servicing transfers should be your assigned Acquisition Coordinator.**

| **Senior Vice President**<br>**Acquisition Operations** | **Debbie Pratt**<br>**dpratt@bear.com** | **214-626-2832** |
|---|---|---|
| **New Loan Boarding** | | |
| Asst. Vice President<br>Email Address:<br>Fax: | Stephanie Courtney<br>scourtney@bear.com | 214-626-3388<br><br>469-759-4718 |
| Acquisitions Supervisor<br>Email Address:<br>Fax: | LaRena Lewis<br>larena.lewis@bear.com | 214-626-2746<br><br>469-759-4718 |
| **Automated Boarding** | | |
| Manager<br>Email Address:<br>Fax: | Tricia Jarzombek<br>tjarzombek@bear.com | 214-626-2584<br><br>214-626-3704 |
| Supervisor<br>Email Address:<br>Fax: | Letty Bazan<br>lbazan@bear.com | 214-626-2915<br><br>214-626-3704 |
| **Servicing Account Management**<br>**(Seller Post Transfer Issues)** | | |
| Manager<br>Email Address:<br>Fax: | Nancy Mixson<br>nmixson@bear.com | 214-626-3762<br><br>469-759-4753 |
| Asst. Vice President<br>Email Address:<br>Fax: | Ruth Price<br>rprice@bear.com | 214-626-4863<br><br>469-759-4753 |
| Servicing Account Manager<br>Email Address:<br>Fax: | Joel Martinez<br>joel.martinez@bear.com | 214-626-7208<br><br>469-759-4753 |
| **Acquisitions Accounting** | | |
| Asst Vice President<br>Email Address: | Jason Whitmire<br>jwhitmire@bear.com | 214-626-3611 |
| Supervisor<br>Email Address: | Lori Ziebell<br>ziebell@bear.com | 214-626-3317 |
| Supervisor – Flow<br>Email Address: | Clarence Brown<br>cbrown@bear.com | 214-626-3386 |
| Supervisor – Treasury<br>Email Address: | Liz Tarbutton<br>ltarbutton@bear.com | 214-626-3637 |

19

**Contact Information Continued**

**LSBO**
**(Loans Serviced by Others)**

| | | |
|---|---|---|
| Manager<br>Email Address: | Teresa Patrick<br>tpatrick@bear.com | 972-444-2872 |
| Supervisor<br>Email Address: | Tonya McDougald<br>tonya.mcdougald@bear.com | 972-831-3450 |

**Collateral Management**

| | | |
|---|---|---|
| Supervisor-Quality Control<br>Email Address | Paul Stevenson<br>pstevenson@bear.com | 214-626-4227 |
| Exception Research Fax Number | | 214-626-2520 |
| Supervisor – Research<br>Email Address | Gwen Lillie<br>glillie@bear.com | 214-626-3903 |
| Exception Reporting Coordinator<br>Email Address | Thomas Simpson<br>tlsimpson@bear.com | 214-626-2703 |
| MERS Administrator<br>Email Address | Laurie M. Castille<br>lcastille@bear.com | 214-626-2219 |

**Payoff Department**

| | | |
|---|---|---|
| Supervisor<br>Email address | Diane Ruggles<br>mortgagepayoffs@bear.com | 972-444-4806 |

**Executive Servicing**
  **Conduit Liaison**        emcconduitliaison@bear.com    1-800-695-7695 x3199

# Section II
# ARM Information

Provide:

- All applicable ARM Specifications and Rate and Payment Change Histories.

- An ARM Passport for all MSP Users.(see required fields in Exhibit II)

- A listing of your ARM "Plan" Codes and ARM Index Code Definitions and Descriptions.

- If you keep separate ARM files, include these files when shipping the servicing files.

- A report of the payment options provided to the borrower on all monthly option ARM loans.

### Optional Enhancements (MSP/Fidelity)

IP 1391- ARM Monthly Options
IP 1416- Interest Only ARM Loans
IP 1830- Interest Only Fixed Rate Mortgage Loans

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding. The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

**MSP Users refer to <u>Exhibit II</u> for the required ARM passport fields. Non-MSP Users should provide the same critical data for ARMS as referenced in this Exhibit. This file needs to be in text format (tab delineated).**

21

# Section III
# Home Equity Line of Credit (HELOC)
# Information

For All HELOC Loans provide:

- A HELOC Passport for all MSP users or data file for all others. (See required fields in Exhibit III)

- A listing of your HELOC plan codes or Product ID definitions and descriptions.

- A copy of the Agreement/Note for each HELOC product type

- The latest bill file for all HELOC loans. (Fields needed are listed in Exhibit III)

- A list of all HELOC loans with payment disputes.

**MSP Users refer to Exhibit III for the required HELOC passport fields. Non-MSP Users should provide the same critical data for HELOCs as referenced in this Exhibit.  This file needs to be in text format (tab delineated).**

22

# Section IV
# Interest Only Loans

Provide a data file as of **Transfer Date** containing the following critical fields:

Loan #
Mortgagor's Name
Interest Rate
Payment Due Date
Term of Interest Only Period

# Section V
# Repurchase Requirements

**Remittance of Repurchase Funds**:

All repurchase funds should be wired to the following account:

| | |
|---|---|
| **Bank:** | **JPMorgan Chase Bank of Texas** |
| **Branch:** | **Irving, Texas** |
| **ABA #:** | **02100021** |
| **Account #:** | **000000713446771** |
| **Account Name:** | **EMC MORTGAGE CORPORATION - REPS AND WARRANTS** |
| | **ATTN: REP/WARRANTY CLAIMS SELLER CONTACT DESK** |

**Reps and Warrants Contact Number**      214-626-7272
Email Address:                                       **sellercontact@bear.com**.

24

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 1 | OLD-LOAN-NO | 13 | Seller/Servicer Loan Number | The previous servicer's number for acquired loans or, for new clients, the loan number prior to converting to the MSP system. |
| 2 | MTGR01-NAME-FIRST | 50 | Borrower 1 first name | Borrower 1 first name |
| 3 | MTGR01-NAME-MIDDLE | 50 | Borrower 1 middle name | Borrower 1 middle name |
| 4 | MTGR01-NAME-LAST | 50 | Borrower 1 last name | Borrower 1 last name |
| 5 | MTGR02-NAME-FIRST | 50 | Borrower 2 first name | Borrower 2 first name |
| 6 | MTGR02-NAME-MIDDLE | 50 | Borrower 2 middle name | Borrower 2 middle name |
| 7 | MTGR02-NAME-LAST | 50 | Borrower 2 last name | Borrower 2 last name |
| 8 | MTGR01-SSN | 11 | Borrower 1 SS# | A group of fields carrying the mortgagors' social security or tax ID numbers. |
| 9 | MTGR02-SSN | 11 | Borrower 2's SS# | The co-mortgagor's social security or tax ID number. |
| 10 | TELEPHONE-NO | 10 | Borrower's home telephone number | The mortgagor's primary telephone number. |
| 11 | TELE-NO-SECOND | 10 | Borrower's work or second telephone number | A group of fields for additional mortgagor/co-mortgagor telephone number. |
| 12 | NU-PROP-STREET-NUM | 10 | House number within property address. Use only if this is housed as a separate field on orig system. | The street number of the mortgagor's property address. |
| 13 | NU-PROP-ST-NAME | 50 | Street name within property address. Use only if this is housed as a separate field on orig system. | The street name of the mortgagor's property address. |
| 14 | NU-PROP-STREET-DIR | 10 | Street direction within property address. Use only if this is housed as a separate field on orig system. | The street direction of the mortgagor's property address. |
| 15 | NU-PROP-UNIT-NO | 12 | Unit number within property address | The number of units of the mortgagor's property addres. |
| 16 | NU-PROP-CITY | 50 | City name within property address | The name of the city in which the property is located. |
| 17 | PROP-STATE | 50 | Alpha state code (i.e. New York is 'NY') | The state abbreviation of the property address. |
| 18 | PROP-COUNTY | 50 | Full county name | The code that identifies the county where the property is located. |
| 19 | NU-PROP-ZIP | 5 | ZIP code within property address | The zip code withing property address. |
| 20 | PROP-SECTION | 12 | Value that identifies the lot number in which property resides (part of legal description) | The section number as defined on the deed. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 21 | PROP-SMSA-CODE | 4 | The U.S. Census Bureau Metropolitan Statistical Area Code (MSA) used in conjunction with an occupancy code to comply with HMDA. | The U.S. Census Bureau Metropolitan Statistical Area Code (MSA) used in conjunction with an occupancy code to comply with the Home Mortgage Disclosure Act of 1975. |
| 22 | PROP-SUB-DIVISION | 30 | Name of subdivision in which property resides (part of legal description) | The name of the subdivision in which the property is located. It is used to record the class of subdivision for Freddie Mac. The term metes and bounds can be entered when the subdivision name is long. |
| 23 | PROP-CENSUS-TRACT | 6 | A group of fields carrying the SMSA and census tract codes. | The geographical distribution of loans closed in order to comply with the Home Mortgage Disclosure Act of 1975. |
| 24 | NU-BILL-STREET-DIR | 50 | Street Direction within billing address.  Use only if this is housed as a separate field on orig system. | The street direction of the mortgagor's billing address. |
| 25 | NU-BILL-STREET-NAM | 50 | Street Name within billing address.  Use only if this is housed as a separate field on orig system. | The street name of the mortgagor's billing address. |
| 26 | NU-BILL-STREET-NUM | 10 | Street Number within billing address.  Use only if this is housed as a separate field on orig system. | The street number of the mortgagor's billing address. |
| 27 | NU-BILL-STATE | 50 | State location within mailing address.  Use only if STATE is loaded as a separate field. | The state abbreviation of the mailing address. |
| 28 | NU-BILL-CITY | 50 | City location within billing address.  Use only if CITY is loaded as a separate field. | |
| 29 | T-NU-BILL-ZIP-CODE | X(5) | ZIP code within mailing address | |
| 30 | T-NU-BILL-ZIP-SUFFIX | X(4) | ZIP+4 within mailing address | |
| 31 | LOAN-TYPE-HI-TYPE | 1 | Code used to flag a loan as a 1st or 2nd mortgage | A code that indicates whether the loan is a first or second mortgage. |
| 32 | LOAN-TYPE-LO-TYPE | 1 | Code that identifies a loan as Conventional Insured, Conventional Uninsured, VA, or FHA | A code that indicates the type of the loan, such as, FHA, VA, or conventional. |
| 33 | ORIG-MTG-AMT | 9 | Original loan amount | The amount originally borrowed as shown on the mortgage note. |
| 34 | CURRENT-ANNUAL-INT | 7 | The current percentage of interest being collected on the loan. | The current percentage of interest being collected on the loan. |
| 35 | 1ST-DUE-DATE | 8 | 1st payment due date on note | The date the first payment is due on the loan. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 36 | LOAN-TERM | 3 | Duration of loan period (in months) | The number of monthly payments needed to pay a loan in full. |
| 37 | LOAN-DATE | 8 | Date loan closed | The date the loan was closed. For HUD 235/265 loans, this is the first payment due date. |
| 38 | NOTE-DATE | 8 | Date of note | The date on the mortgage note. It must be on or after the application date. |
| 39 | LOAN-MATURES-DATE | 8 | Date loan matures, per note | The month and year the final payment is due on the loan. The date must be greater than the loan closing date. |
| 40 | INT-INDICATOR | 10 | A code that indicates if interest is earned in advance or arrears. | A code that indicates if interest is earned in advance or arrears. This field can be used for non-capitalized loans. |
| 41 | CURRENT-DUE-DATE | 8 | Current payment due date | The date the next payment is due. The date must be greater than the loan closing date and within five years of current date. |
| 42 | CURRENT-PRIN-BAL | 11 | Outstanding principal balance on 1st mortgage | The amount of principal that the mortgagor owes on the first mortgage or independent second mortgage. |
| 43 | CURRENT-P-I | 9 | Principal and Interest payment for 1st mortgage | The principal and interest portion of the mortgage payment for the first mortgage on the loan. |
| 44 | COUNTY-TAX | 7 | The portion of monthly escrow amount allocated for payment of county taxes | The total of the county tax deposit. |
| 45 | CITY-TAX | 7 | The portion of monthly escrow amount allocated for payment of city taxes. | The total of the city tax deposit |
| 46 | HAZARD-PREM | 7 | The portion of monthly escrow amount allocated for payment of hazard insurance. | The total of the hazard deposit. |
| 47 | MIP-PREM | 7 | The portion of monthly escrow amount allocated for payment of mortgage insurance either MIP or PMI. | The total of the Private mortgage insurance deposit. |
| 48 | LIEN | 7 | The portion of monthly escrow amount allocated to pay charges levied against a property by city or county government. | The total of the county tax deposit, city tax deposit, hazard deposit, mortgage insurance deposit, lien deposit, and o-s spread. |
| 49 | ESCROW-MTH-PMT | 7 | Total amount of escrow to be collected with each payment installment | The total of the county tax deposit, city tax deposit, hazard deposit, mortgage insurance deposit, lien deposit, and o-s spread. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 50 | TOT-PAYMT | 9 | Net payment per installment (sum of escrow payments + P&I less buydown subsidy) | The total of principal and interest, escrow, replacement reserve, optional insurance, etc. The total is recomputed if any of the payment elements are changed. For HUD 235/265 loans, this is the mortgagor's portion of the payment. |
| 51 | REP-RES-PAYMENT | 7 | Amount of Subsidy Due Each Month | The portion paid to replacement reserve or as buydown/subsidy each month, or the replacement reserve balance. |
| 52 | ESCROW-BAL-TN070 | 9 | Balance of escrow that was collected from originator as cash | The current balance of money held in the mortgagor's escrow account for payment of the mortgage insurance premium, hazard insurance premium, taxes, and liens. |
| 53 | SUSPENSE-BAL-TN070 | 9 | Outstanding balance of funds in suspense - applied as cash transaction | The amount of funds in suspense pending research to determine what portion goes to principal, interest, late charge, escrow, insurance, etc. on unapplied payments. |
| 54 | LC-ACCRUED-BALANCE | 9 | Total unpaid late charge balance | The balance of late charges on the loan. |
| 55 | REP-RES-BAL-TN070 | 7 | Amount of Total Subsidy Collected for and Remaining to be applied to the loan, which is to be posted as a cash transaction. | The balance of funds held in trust for replacement of major systems on commercial loans. |
| 56 | RES-ESCROW-TN069 | 9 | Outstanding restricted escrow balance - handled as a cash transaction posting. | The balance of monies held for insurance loss drafts, attorney's fees, or new loan completion funds. |
| 57 | REC-CORP-ADV-BAL | 9 | The amount of advances made on this loan for which you expect to receive repayment, such as foreclosure advances. | The amount of advances made on this loan for which you expect to receive repayment, such as foreclosure advances. |
| 58 | NONREC-CORP-ADV-BL | 9 | The amount of the advances made for a loan that are counted as losses, such as tax penalties. | The amount of the advances made for a loan that are counted as losses, such as tax penalties. |
| 59 | ESC-ADV-BAL | 7 | The amount of corporate monies advanced to replace overdrawn escrow funds. | The amount of corporate monies advanced to replace overdrawn escrow funds. |
| 60 | NSF-BAL | 7 | Total outstanding non-sufficient funds balance | The amount of NSF fees assessed but unpaid. |
| 61 | LC-FACTOR | 5 | Late charge percentage to be assessed on each late installment | This field contains the percentage used to calculate the late charge. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 62 | LC-MAX-RATE | 5 | Maximum late charge rate to be assessed | It contains the percentage used to determine the maximum limit of the late charge that may be assessed. |
| 63 | LC-MAX-AMT | 6 | Maximum late charge amount that can be assessed | It indicates the maximum dollar amount that can be assessed as a late charge for the loan. |
| 64 | LC-MIN-AMT | 4 | Minimum late charge amount to be assessed | It indicates the minimum dollar amount that can be assessed as a late charge for the loan. |
| 65 | GRACE-DAYS | 3 | Number of days beyond due date which may elapse before late charge assessment | The number of days that a loan may be delinquent before the system assesses late charges. |
| 66 | PMT-PERIOD | 30 | Number of payment periods per year | The number of payments to be made per year. |
| 67 | DIST-TYPE | 1 | Data to be derived from Product table. | A code that determines how payments are amortized. |
| 68 | OCCUPY-CURR | 35 | Code to indicate current status-- owner occupied, secondary residence, or investment property | The intended use of the property at the time the loan was originated. |
| 69 | OCCUPY-ORIG | 35 | Code to indicate original status--owner occupied, secondary residence, or investment property | The intended use of the property at the time the loan was originated. |
| 70 | PROPERTY-TYPE | 20 | Code which distinguishes the type of property (i.e. condo, coop, townhouse) | The type of property securing the loan. This field will be used for FHLBB and Freddie Mac MIDANET I reporting. |
| 71 | NO-OF-UNITS | 1 | Number of living units within the subject property | The number of units reporting on the Fannie Mae 2005 pool submission form. |
| 72 | PURPOSE-CODE | 30 | Code that identifies how loan proceeds will be used (i.e. purchase, refinance, cash-out, etc.) | The loan purpose for HMDA, Freddie Mac, and Fannie Mae reporting.  Ex: Purchase, Refinance, Refinance/Cash Out |
| 73 | PROPERTY-VALUE | 9 | Appraised value of subject property | The current appraised dollar value of the property. It is used for loans covered by PMI to determine when the principal balance falls below 75% of property value. |
| 74 | ORIG-PROP-VALUE | 9 | Original appraised value | The appraised dollar value of the property when the loan was originated. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 75 | ORIG OCCUPANCY-STAT | 1 | Indicates the original occupancy status: Occupied/principal residence, Second home or Investment property. & = Set field to blank. | The intended use of the property at the time the loan was originated. Ex: Occupied/principal residence. |
| 76 | PREPMT-PENALTY-IND | 20 | Code that identifies any prepayment penalty that may exist on a loan | The code that indicates whether a prepayment penalty applies to the loan. |
| 77 | PREPMT-PENALTY-HEADER | 20 | Description of the prepayment penalty calculation. | Description of the prepayment penalty calculation. |
| 78 | PREPMT-PENALTY-HARD-SOFT-INDICATOR | 20 | Code that identifies if the prepayment penalty is a Hard, Soft or Hard/Soft Hybrid. | Code that identifies if the prepayment penalty is a Hard, Soft or Hard/Soft Hybrid. |
| 79 | CURRENT-LTV | 5 | Current Loan to Value Ratio | The ratio of the amount of the loan to the appraised value or sales price of real property. |
| 80 | ORIG-LTV | 5 | Original Loan to Value ratio | The ratio of the amount of the loan to the appraised value or sales price of real property. |
| 81 | INTEREST-PD | 8 | Prepaid interest collected at closing received as actual cash | Prepaid interest collected at closing received as actual cash. Only 'closing' table product line of business where EMC is reporting interest collected at closing. |
| 82 | ASSUMP-DATE | 8 | Date loan was last assumed | The date the most recent assumption was processed. It is recommended to use the due date of the last payment paid by the prior owner. |
| 83 | CURR-APPRAISAL-DAT | 8 | Date of most recent appraisal | The date of the most current appraisal. |
| 84 | FLOOD-REQ-FLAG | 15 | Indicates if Flood is required | A code that indicates whether the property requires flood insurance. |
| 85 | FLOOD-PROGRAM | 1 | Code indicating the type of flood program (E=emergency, N=non-participating, P=probation, R=Regular(default), S=suspended.) | A code indicating the type of flood program. |
| 86 | HAZ-DESC-01 | 30 | 1st hazard insurance policy - description of coverage | This field is required. It indicates the hazard policy assigned to the loan. Ex: Homeowners, Flood or Earthquake. |
| 87 | HAZ-PAYEE-01 | 50 | 1st hazard insurance policy - code that identifies insurance company to be paid | The insurance company name and address on hazard insurance |
| 88 | HAZ-PREM-DUE-DT-01 | 8 | 1st hazard insurance policy - date premium is next due to be paid to insurance company | It indicates the date on which the next premium installment is due. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 89 | HAZ-EXP-DATE-01 | 8 | 1st hazard insurance policy - expiration date of current policy | It indicates the date on which the insurance policy expires. |
| 90 | HAZ-PREM-AMT-01 | 7 | 1st hazard insurance policy - total periodic premium | It indicates the amount to be paid when the next premium payment is due for this policy. |
| 91 | HAZ-TERM-01 | 20 | 1st hazard insurance policy - number of months in one policy term (usually 12) | This field indicates the number of months between insurance premium payments. |
| 92 | HAZ-AMT-COVER-01 | 7 | 1st hazard insurance policy - amount of coverage on property | It indicates the dollar amount of the coverage provided by this policy. |
| 93 | HAZ-TYPE-PAY-01 | 20 | 1st hazard insurance policy - code that identifies if premium is escrow or non-escrow | Code that identifies if premium is escrow or non-escrow |
| 94 | HAZ-POLCY-NO-RJ-01 | 20 | 1st hazard insurance policy - policy number assigned by insurance company | It indicates the number assigned to the policy by the insurance company on issuance. |
| 95 | HAZ-DESC-02 | 30 | 2nd hazard insurance policy - description of coverage | This field is required. It indicates the hazard policy assigned to the loan. |
| 96 | HAZ-PAYEE-02 | 50 | 2nd hazard insurance policy - code that identifies insurance company to be paid | The insurance company name and address on hazard insurance |
| 97 | HAZ-PREM-DUE-DT-02 | 8 | 2nd hazard insurance policy - date premium is next due to be paid to insurance company | It indicates the date on which the next premium installment is due. |
| 98 | HAZ-EXP-DATE-02 | 8 | 2nd hazard insurance policy - expiration date of current policy | It indicates the date on which the insurance policy expires. |
| 99 | HAZ-PREM-AMT-02 | 7 | 2nd hazard insurance policy - total periodic premium | It indicates the amount to be paid when the next premium payment is due for this policy. |
| 100 | HAZ-TERM-02 | 20 | 2nd hazard insurance policy - number of months in one policy term (usually 12) | This field indicates the number of months between insurance premium payments. |
| 101 | HAZ-AMT-COVER-02 | 7 | 2nd hazard insurance policy - amount of coverage on property | It indicates the dollar amount of the coverage provided by this policy. |
| 102 | HAZ-TYPE-PAY-02 | 20 | 2nd hazard insurance policy - code that identifies if premium is escrow or non-escrow | Code that identifies if premium is escrow or non-escrow |
| 103 | HAZ-POLCY-NO-RJ-02 | 20 | 2nd hazard insurance policy - policy number assigned by insurance company | It indicates the number assigned to the policy by the insurance company on issuance. |
| 104 | HAZ-DESC-03 | 30 | 3rd hazard insurance policy - description of coverage | This field is required. It indicates the hazard policy assigned to the loan. |
| 105 | HAZ-PAYEE-03 | 50 | 3rd hazard insurance policy - code that identifies insurance company to be paid | The insurance company name and address on hazard insurance |
| 106 | HAZ-PREM-DUE-DT-03 | 8 | 3rd hazard insurance policy - date premium is next due to be paid to insurance company | It indicates the date on which the next premium installment is due. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 107 | HAZ-EXP-DATE-03 | 8 | 3rd hazard insurance policy - expiration date of current policy | It indicates the date on which the insurance policy expires. |
| 108 | HAZ-PREM-AMT-03 | 7 | 3rd hazard insurance policy - total periodic premium | It indicates the amount to be paid when the next premium payment is due for this policy. |
| 109 | HAZ-TERM-03 | 20 | 3rd hazard insurance policy - number of months in one policy term (usually 12) | This field indicates the number of months between insurance premium payments. |
| 110 | HAZ-AMT-COVER-03 | 7 | 3rd hazard insurance policy - amount of coverage on property | It indicates the dollar amount of the coverage provided by this policy. |
| 111 | HAZ-TYPE-PAY-03 | 20 | 3rd hazard insurance policy - code that identifies if premium is escrow or non-escrow | Code that identifies if premium is escrow or non-escrow |
| 112 | HAZ-POLCY-NO-RJ-03 | 20 | 3rd hazard insurance policy - policy number assigned by insurance company | It indicates the number assigned to the policy by the insurance company on issuance. |
| 113 | TAX-PAYEE-01 | 10 | 1st Tax Item - Code that identifies the taxing authority to which that tax item will be paid | 1st Tax Item - Code that identifies the taxing authority to which that tax item will be paid |
| 114 | TAX-SEQ-NO-01 | 2 | 1st Tax Item - Code that identifies 1st, 2nd, 3rd, 4th, etc. occurrence of the tax item to be paid | The number used, along with the tax payee code, to match the tax ID number with the appropriate tax analysis information when paying bills. Assigned by servicer. |
| 115 | TAX-DISB-DATE-01 | 8 | 1st Tax Item - Date that taxes are next due for that particular tax item | The month and year the next scheduled disbursement is due. |
| 116 | TAX-DISB-AMT-01 | 9 | 1st Tax Item - Scheduled amount to be disbursed on next tax payment cycle | The amount of taxes paid. |
| 117 | TAX-BILL-CODE-01 | 1 | 1st Tax Item - Code that determines if this tax item is escrowed or non-escrowed | Code that identifies if this tax item is escrow or non-escrow |
| 118 | TAX-PAYEE-02 | 10 | 2nd Tax Item - Code that identifies the taxing authority to which that tax item will be paid | 2nd Tax Item - Code that identifies the taxing authority to which that tax item will be paid |
| 119 | TAX-SEQ-NO-02 | 2 | 2nd Tax Item - Code that identifies 1st, 2nd, 3rd, 4th, etc. occurrence of the tax item to be paid | The number used, along with the tax payee code, to match the tax ID number with the appropriate tax analysis information when paying bills. Assigned by servicer. |
| 120 | TAX-DISB-DATE-02 | 8 | 2nd Tax Item - Date that taxes are next due for that particular tax item | The month and year the next scheduled disbursement is due. |
| 121 | TAX-DISB-AMT-02 | 9 | 2nd Tax Item - Scheduled amount to be disbursed on next tax payment cycle | The amount of taxes paid. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 122 | TAX-BILL-CODE-02 | 1 | 2nd Tax Item - Code that determines if this tax item is escrowed or non-escrowed | Code that identifies if this tax item is escrow or non-escrow |
| 123 | TAX-PAYEE-03 | 10 | 3rd Tax Item - Code that identifies the taxing authority to which that tax item will be paid | 3rd Tax Item - Code that identifies the taxing authority to which that tax item will be paid |
| 124 | TAX-SEQ-NO-03 | 2 | 3rd Tax Item - Code that identifies 1st, 2nd, 3rd, 4th, etc. occurrence of the tax item to be paid | The number used, along with the tax payee code, to match the tax ID number with the appropriate tax analysis information when paying bills. Assigned by servicer. |
| 125 | TAX-DISB-DATE-03 | 8 | 3rd Tax Item - Date that taxes are next due for that particular tax item | The month and year the next scheduled disbursement is due. |
| 126 | TAX-DISB-AMT-03 | 9 | 3rd Tax Item - Scheduled amount to be disbursed on next tax payment cycle | The amount of taxes paid. |
| 127 | TAX-BILL-CODE-03 | 1 | 3rd Tax Item - Code that determines if this tax item is escrowed or non-escrowed | Code that identifies if this tax item is escrow or non-escrow |
| 128 | TAX-PAYEE-04 | 10 | 4th Tax Item - Code that identifies the taxing authority to which that tax item will be paid | 4th Tax Item - Code that identifies the taxing authority to which that tax item will be paid |
| 129 | TAX-SEQ-NO-04 | 2 | 4th Tax Item - Code that identifies 1st, 2nd, 3rd, 4th, etc. occurrence of the tax item to be paid | The number used, along with the tax payee code, to match the tax ID number with the appropriate tax analysis information when paying bills. Assigned by servicer. |
| 130 | TAX-DISB-DATE-04 | 8 | 4th Tax Item - Date that taxes are next due for that particular tax item | The month and year the next scheduled disbursement is due. |
| 131 | TAX-DISB-AMT-04 | 9 | 4th Tax Item - Scheduled amount to be disbursed on next tax payment cycle | The amount of taxes paid. |
| 132 | TAX-BILL-CODE-04 | 1 | 4th Tax Item - Code that determines if this tax item is escrowed or non-escrowed | Code that identifies if this tax item is escrow or non-escrow |
| 133 | TAX-CURR-1ST-NAME | 9 | First name of seller on purchase money mortgages. Borrower first Name for refinance mortgages. | The mortgagor's first name that appears on the current tax roll. |
| 134 | TAX-CURR-LAST-NAME | 14 | Last name of seller for purchase money mortgages. Last name of borrower for refinances. | The mortgagor's last name that appears on the current tax roll. |
| 135 | TAX-ID-NO-RJ-01 | 30 | 1st Tax Item - Tax/Parcel Identification number for that particular tax item | A group of fields carrying tax ID or parcel numbers. |
| 136 | TAX-ID-NO-RJ-02 | 30 | 2nd Tax Item - Tax/Parcel Identification number for that particular tax item | A group of fields carrying tax ID or parcel numbers. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 137 | TAX-ID-NO-RJ-03 | 30 | 3rd Tax Item – Tax/Parcel Identification number for that particular tax item | A group of fields carrying tax ID or parcel numbers. |
| 138 | TAX-ID-NO-RJ-04 | 30 | 4th Tax Item – Tax/Parcel Identification number for that particular tax item | A group of fields carrying tax ID or parcel numbers. |
| 139 | TAX-SERVICE-NUMBER | 15 | Contract number assigned to the loan by the tax service company | The contract number assigned to the loan by the tax service. |
| 140 | FLOOD-PROCESSED-DT | 8 | Date the flood mapping data master fields were updated | The date the community began participation in the flood mapping program. |
| 141 | FLOOD-COMMUNITY-DT | 8 | Date that community began participation in the flood insurance program. | The date the community began participation in the flood mapping program. |
| 142 | FLOOD-LOMA-R | 1 | Code indicating the reason for changes to flood data (A=Letter of Modification Amendment, N=None, neither A nor R, R = Letter of Map Revision) | A code indicating the reason for changes to flood data. |
| 143 | FLOOD-DETERMINE-DT | 8 | Determination date of the LOMA/R or flood zone | The determination date of the LOMA/R or flood zone. |
| 144 | FLOOD-CNTRCT-TYPE | 1 | Code indicating type of flood contract with the compliance company | A code indicating the type of flood contract with the compliance company. |
| 145 | FLOOD-COMMUNITY-NO | 6 | Number for the community in which the property is located on the flood insurance rate map | The number for the community in which the property is located on the flood insurance rate map. |
| 146 | FLOOD-PANEL-NO | 4 | Panel number on flood insurance rate map | The panel number on the flood insurance rate map. |
| 147 | FLOOD-SUFFIX-NO | 1 | Suffix no. of the flood insurance rate map | The suffix number on the flood insurance rate map. |
| 148 | FLOOD-ZONE | 3 | Zone in which the property is located on the flood indicator map | The zone in which the property is located on the flood indicator map. |
| 149 | FLOOD-ZONE-IND | 1 | Code that indicates whether the property is in a partial zone | A code that indicates whether the property is in a partial zone. |
| 150 | FLOOD-FIRM-DATE | 8 | Effective date of the flood insurance rate panel | The effective date of the flood insurance rate panel. |
| 151 | FLOOD-CMPCO | 40 | Identifies the company that produced the flood certification | The company used by the servicer to map the property (the compliance company). |
| 152 | FLOOD-MAPCO | 40 | Company used by compliance company to map the property | The company used by the compliance company to map the property (the mapping company). |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 153 | FLOOD-FEE | 5 | Fee charged for the mapping contract with the compliance co. | The fee charged for the mapping contract with the compliance company. |
| 154 | FLOOD-CERT-NO | 5 | Certification number assigned by flood mapping company for a given loan | The certification number assigned by the compliance company when the property is mapped. |
| 155 | FHA-ADP-CODE | 3 | ADP code applicable for an FHA loan | ADP code applicable for an FHA loan |
| 156 | FHA-SECTION | 3 | Section code which determines the type of MI on an FHA loan | The section of the Enabling Act under which the loan was insured by the Federal Housing Administration. For conventional insured loans, this is the insurance company code for the private mortgage insurance. |
| 157 | FHA-OFFICE | 3 | Office code assigned by HUD for an FHA loan | The office number assigned by the Federal Housing Administration. |
| 158 | FHA-CASE-NO | 6 | Case number assigned by HUD for an FHA loan | The case number assigned by the Federal Housing Administration. |
| 159 | FHA-CHECK-DIGIT | 1 | Check digit assigned by Federal Housing Administration as a part of the case number for an FHA loan. | The check digit assigned by the Federal Housing Administration. |
| 160 | PMI-GUAR-CERT-NO | 10 | PMI policy/certificate number | PMI policy/certificate number |
| 161 | POOL-PMI-PAYEE | 30 | PMI company insuring the loan via a pool PMI policy/certificate. | The PMI company insuring the loan via a pool PMI policy/certificate. |
| 162 | POOL-PMI-POLICY-NO | 10 | The pool policy or certificate number assigned by the insuring PMI company under which the loan is insured. | The pool policy or certificate number assigned by the insuring PMI company under which the loan is insured. |
| 163 | VA-NUMBER | 10 | Loan number assigned by VA for a VA-insured loan. This field does not include LH – | Serial number assigned to the loan by the Office of Origination. Loan numbers may be duplicated within the Office of Origination since each regional office traditionally assigned direct, GI, and vendee numbers from separate, but overlapping registers; however, loan numbers are unique to the OJ-OO Loan Type combination. |
| 164 | MIP-PMI-RATE | 5 | Renewal rate percentage for PMI loans | The percentage of the principal balance used to calculate the annual PMI premium. This field is usually 1/4 of 1% or 0.2500. |
| 165 | PMI-PCT-OF-COVER | 3 | Indicates the percentage of primary PMI coverage. | Indicates the percentage of primary PMI coverage. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 166 | MIP-PMI-TYPE | 10 | Determines type of FHA insurance (i.e. RBP) | Determines type of FHA insurance (i.e. RBP) |
| 167 | MIP-PMI-PAYEE | 10 | Code assigned to identify MI company (i.e. MGIC, FHA, RBP, etc.) | The PMI company insuring the loan. |
| 168 | MIP-PMI-TERM | 10 | Frequency of PMI installments (i.e. 12=annual, 01=monthly) | This field indicates whether the system updated the TERMINATION-DATE field or if it needs to calculate and update the field. |
| 169 | MIP-PMI-DISB-DUEDT | 8 | Date next MI disbursement is due | Date next MI disbursement is due |
| 170 | MIP-PMI-DISB-AMT | 9 | Amount of MI disbursement per installment | The portion of monthly escrow amount allocated for payment of mortgage insurance either MIP or PMI (disbursement type 310). |
| 171 | MIP-PMI-BILL-CODE | 20 | Code used to determine if MI is to be escrowed or non-escrowed | Code that identifies if this item is escrow or non-escrow |
| 172 | MIP-ANNIVERSARY-DT | 8 | Pending mortgage insurance anniversary date | The pending mortgage insurance anniversary date. |
| 173 | MIP-ANNUAL-PREMIUM | 7 | Amount of annual MIP premium | The mortgage insurance premium due for the next anniversary year. |
| 174 | YTD-MIP-REMITTED | 7 | Total of MI premiums paid since last anniversary date | Total of MI premiums paid since last anniversary date |
| 175 | MIP-CERT-DT | 8 | Date of the FHA mortgage insurance certificate endorsement | The date of the FHA mortgage insurance certificate endorsement. |
| 176 | MIP-UPFRONT-PREM | 7 | Amount of Upfront MIP premium that was paid in cash | Amount of Upfront MIP premium that was paid in cash |
| 177 | MIP-FINANCED-AMT | 7 | Amount of Upfront MIP premium that was financed with loan | Amount of Upfront MIP premium that was financed with loan |
| 178 | MIP-EXPIRE-DATE | 8 | The expiration date of the RBP MIP policy. | The expiration date of the RBP MIP policy. |
| 179 | PMI-CANC-DATE | 8 | The date based on amortization schedule(s) when a borrower may request cancellation of insurance, subject to any qualifying investor requirements. | This field indicates the date on which the insurance was cancelled. |
| 180 | PMI-TERMINATION-DT | 8 | Date on which monthly premiums are no longer required | The scheduled termination date of the insurance plan. The date should be one month greater than the last acceptable premium due date. |
| 181 | BLOCK | 6 | Block location within legal description | The block number as defined on the deed. |

12 of 15

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 182 | OPT-INS-PAYEE-01 | 40 | Identifies the payee for the 1st occurrence of optional insurance. | The insurance company name and address. |
| 183 | OPTINS-CERTNO-1-01 | 12 | 1st certificate number assigned by insurance carrier for 1st occurrence of optional insurance. | It indicates the certificate number assigned by the insurance company. |
| 184 | OPTINS-DUE-DATE-01 | 8 | Due date of the 1st occurrence of optional insurance. | This field indicates the due date of the payment to which this premium should have been added. |
| 185 | OPTINS-PREM-AMT-01 | 5 | 1st occurrence of optional insurance, premium amount. | This is the monthly premium amount. |
| 186 | GPM-PLAN-CODE | 1 | Code used to reference a template of GPM factors consistent for one product type | Code used to reference a template of GPM factors consistent for one product type |
| 187 | GPM-PERIOD | 3 | The number of months between changes for GPM. | The number of months between changes for GPM and buydown loans. |
| 188 | GPM-PI-01 | 7 | 1st Graduated Payment P&I Amount | The schedule that shows what the mortgagor's principal and interest payment is for the GPM period or what the subsidized amounts are for the buydown period. |
| 189 | BUYDOWN-AMT-01 | 7 | Amount of monthly subsidy for 1st buydown period | Amount of monthly subsidy for 1st buydown period |
| 190 | BUYDOWN-AMT-02 | 7 | Amount of monthly subsidy for 2nd buydown period | Amount of monthly subsidy for 2nd buydown period |
| 191 | BUYDOWN-AMT-03 | 7 | Amount of monthly subsidy for 3rd buydown period | Amount of monthly subsidy for 3rd buydown period |
| 192 | BUYDOWN-AMT-04 | 7 | Amount of monthly subsidy for 4th buydown period | Amount of monthly subsidy for 4th buydown period |
| 193 | BUYDOWN-AMT-05 | 7 | Amount of monthly subsidy for 5th buydown period | Amount of monthly subsidy for 5th buydown period |
| 194 | BUYDOWN-EXP-EFF-DT | 8 | Date buydown subsidy is set to expire | The date the buydown/subsidy schedule expires. |
| 195 | BUYDOWN-PERIOD | 2 | Number of months within one buydown period (usually 12) | Number of months within one buydown period (usually 12) |
| 196 | BUYDOWNSUBSIDY-IND | 20 | Indicator used to identify the source of buydown funds (i.e. borrower paid, lender paid, seller paid) | The entity who subsidized the loan. |
| 197 | PTS-PD-BY-BORROWER | 13 | Value that represents the total origination fee and discount points paid by borrower, seller, and lender. This value will appear on the borrower's 1098 statement | The dollar amount of points paid by the borrower. Only 'closing' table product line of business where EMC is reporting points collected at closing. |

**EXHIBIT I**

**Master Record Data File**

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 198 | ALT-DUE-DAY | 2 | The due day for biweekly loans, which is rolled 14 days as each payment is made. For semimonthly loans, this is the alternate due day (second payment of the month). | The due day for biweekly loans, which the system rolls 14 days as the borrower makes each payment. For semimonthly loans, this is the alternate due day (second payment of the month). |
| 199 | PREV-PAID-THRU-DT | 8 | The effective date of the last payment from which interest is calculated for daily simple interest loans. | The date, in MMDDYY format, through which the mortgagor paid interest on a daily simple interest (DSI) loan, ARM DSI loan |
| 200 | PAY-OPTION | 1 | A code that identifies the loan as biweekly or semimonthly. | A code that identifies the loan as biweekly or semimonthly. |
| 201 | INT-CALC-OPTION | 1 | Identifies the interest calculation option for a biweekly, daily simple interest, or rule of 78's loan. | The interest calculation option for a biweekly, daily simple interest (DSI), or rule of 78s loan. |
| 202 | 360-365-FACTOR | 1 | The number of days to be used for interest calculation option B, C, or D for biweekly or daily simple interest loans. | The number of days the system uses for interest calculation option B, C, or D for biweekly, daily simple interest (DSI), or ELOC loans. |
| 203 | DSI-IND-Y-N | 1 | Indicator that determines whether a loan is daily simply interest loan. | A code that indicates if the loan is an interest only loan. |
| 204 | DSI-INT-DUE | 7 | Amount of interest due on daily simple interest loan | The date on which the payment of interest ends so that the mortgage will begin to amortize with the first payment due after this date. |
| 205 | PURCHASE-PRICE | 11 | Value that represents the price paid for the subject property for a purchase transaction | The price paid for a loan by an investor purchasing the loan from the seller's warehouse. |
| 206 | BALLOON-TYPE | 1 | Data to be derived from Product table. | The type of balloon loan. |
| 207 | T-BALLOON-MATURE-DT | 8 | Maturity date for balloon loan | Maturity date for balloon loan |
| 208 | BAD-CHECK-TABLE | 12 | Indicates when in the month the payment was made or reversed. | A group of fields indicating the delinquency status of the loan. |
| 209 | LAST-ANAL | 8 | The month and year a final analysis of escrow requirements was last processed. | The month and year a final analysis of escrow requirements was last processed. |
| 210 | ORIGINATION-FEE | 9 | The amount paid by the borrower to receive the loan. | The lender's fee charged a borrower to prepare documents. Usually stated as a percentage of the face value of the loan. Only 'closing' table product line of business where EMC is reporting points collected at closing. |

EXHIBIT I

Master Record Data File

| Number | Field Name | Length | Business Description | Data Dictionary |
|---|---|---|---|---|
| 211 | ASSUMPTION-CODE | 1 | A code that indicates whether the mortgage is assumable. | A code that indicates whether the mortgage is assumable. |
| 212 | INSPECTION-DT | 8 | The date that the property inspection was requested or should be requested next. | The date that the property inspection was requested or should be requested next. |
| 213 | INSPECTION-STAT | 1 | Indicates if a property inspection has been ordered, has been performed, or should be ordered in the future. | A code that indicates whether a property inspection has been ordered, has been performed, or should be ordered in the futur |
| 214 | 1ST-CORP-ADV-DATE | 8 | The date on which the first corporate advance transaction was processed for a loan. | The date on which the first corporate advance transaction was processed for a loan. |
| 215 | LAST-CORP-ADV-DATE | 8 | The date on which the most recent corporate advance transaction was processed for a loan. | The date on which the most recent corporate advance transaction was processed for a loan. |
| 216 | VA-OFFICE-CODE | 3 | The VA office of jurisdiction as coded in the VA office header file. | The VA office of jurisdiction as coded in the VA office header file. |
| 217 | MERS-MIN | 18 | MERS loan number | MERS loan number |
| 218 | MERS-MIN-REG-DATE | 8 | Date loan was registered with MERS | Date loan was registered with MERS |
| 219 | MERS-MIN-REG-FLAG | 1 | Code used to flag loan for MERS registration | Code used to flag loan for MERS registration |
| 220 | MERS-MOM-FLAG | 1 | Indicates that a loan was originated with MERS as Original Mortgagee on the Mortgage or Deed of Trust. | Indicates that a loan was originated with MERS as Original Mortgagee on the Mortgage or Deed of Trust. |
| 221 | AMORT-BALLOON-TERM | 3 | Duration of balloon period (months). | Number of months during balloon period. |
| 222 | INTEREST-ONLY-TERM | 3 | Duration of Interest Only Period (months). Pertains to Fixed Rate and ARM loans. | Number of months (payments) during the interest only period.  Pertains to Fixed Rate and ARM loans. |

EXHIBIT II

ARM DATA REQUIREMENTS

| Number | Field Name | Length | Business View Name | Business Element Name | Data Dictionary |
|---|---|---|---|---|---|
| 1 | T-ORIG-MTG-AMT | 9 | ORIGINAL LOAN | ORIGINAL MORTGAGE AMOUNT | Per the note:  Original Mortgage Amount |
| 2 | T-ARM-ORIG-INT-RATE | 7 | ORIGINAL LOAN | ORIGINAL INTEREST RATE | Base/Original Interest Rate |
| 3 | T-1ST-DUE-DATE | 8 | ORIGINAL LOAN | FIRST DUE DATE | Per the Note:  First Payment Due Date |
| 4 | T-LOAN-TERM | 3 | ORIGINAL LOAN | ORIGINAL LOAN TERM | Per the Note:  The number of months between the first payment due date and the maturity due date. |
| 5 | T-ARMORIGIR-CHGEFFDT | 8 | NEW ARM | ARM ORIGINAL IR CHANGE DATE | Per the Note: First IR Change Effective Date |
| 6 | T-ARMORIGPI-CHGEFFDT | 8 | NEW ARM | ARM ORIGINAL PI CHANGE DATE | Per the Note: First PI Change Effective Date |
| 7 | T-ARM-PMTSBTWN-IRCHG | 3 | ARM INTEREST | ARM IR CHANGE PERIOD | # of Months between IR Changes |
| 8 | T-ARM-PMTSBTWN-PICHG | 3 | ARM PAYMENT | ARM PI CHANGE PERIOD | # of Months between PI Changes |
| 9 | T-ARMNXTIR-EFFCALCDT | 8 | NEW ARM | ARM NEXT IR CALC DATE | Date of the Next IR Change to be calculated (going forward from the date of running this report.) |
| 10 | T-ARMNXTPI-EFFCALCDT | 8 | NEW ARM | ARM NEXT PI CALC DATE | Date of the Next PI Change to be calculated (going forward from the date of running this report.) |
| 11 | T-ARM-INDEX-CODE-ID | 3 | ARM INTEREST | ARM INDEX CODE 1 | Your Index Description/Code |
| 12 | T-INDX-LEAD-MONTHS | 3 | ARM TIMING | ARM INDEX LEAD MONTHS 1 | Per the Note: The number of months from the IR change date to select the index value. |
| 13 | T-INDX-LEAD-DAYS | 3 | ARM TIMING | ARM INDEX LEAD DAYS 1 | Per the Note: The number of days from the IR change date to select the index value. |
| 14 | T-ARM-MARGIN | 8 | ARM INTEREST | ARM IR MARGIN RATE | Per the Note:  Stated margin to be added to the index value. |
| 15 | T-ARM-IR-RND-BASIS | 5 | ARM INTEREST | ARM IR ROUNDING TYPE | Is the rounding up, down, or to the nearest? |
| 16 | T-ARM-IR-RND-TYPE | 5 | ARM INTEREST | ARM IR ROUNDING FACTOR | IR rounding percent (ie, eighth, fourth) |
| 17 | T-ARMLIFEMAX-IRINCRT | 6 | ARM INTEREST | ARM IR MAX LIFE CEILING RATE | Per the Note/Life Of Loan: Maximum IR Possible |
| 18 | T-ARMLIFEMAX-IRDECRT | 6 | ARM INTEREST | ARM IR MAX LIFE FLOOR RATE | Per the Note/Life Of Loan: Lowest IR Possible |
| 19 | T-ARMLIFEMAX-IRDECRT | 6 | ARM INTEREST | ARM IR MAX LIFE FLOOR RATE | Per the Note/Life Of Loan: After First IR Change |

EXHIBIT II

ARM DATA REQUIREMENTS

| Number | Field Name | Length | Business View Name | Business Element Name | Data Dictionary |
|---|---|---|---|---|---|
| 20 | T-ARMMAXPERCHG-IRINC | 7 | ARM INTEREST | ARM FIRST IR MAX INCREASE RATE | IR Max Increase Cap for first IR Change Date |
| 21 | T-ARMMAXPERCHG-IRDEC | 7 | ARM INTEREST | ARM FIRST IR MAX DECREASE RATE | IR Max Decrease Cap for first IR Change Date |
| 22 | T-X-ARMMAXPERCGH-IRINC | 6 | ARM INTEREST | ARM IR MAX INCREASE RATE | Per the Note: Per change maximum IR Increase Cap |
| 23 | T-X-ARMMAXPERCGH-IRDEC | 6 | ARM INTEREST | ARM IR MAX DECREASE RATE | Per the Note: Per change maximum IR Decrease Cap |
| 24 | T-ARMMINPERCHG-IRINC | 6 | ARM INTEREST | ARM IR MIN IR INCREASE RATE | Per change minimum IR Increase Cap |
| 25 | T-ARMMINPERCHG-IRDEC | 6 | ARM INTEREST | ARM IR MIN IR DECREASE RATE | Per change minimum IR Decrease Cap |
| 26 | T-X-OPT-PIACTIVE-PCT | 7 | ARM PAYMENT | ARM OPT PI ACTIVE PERCENT | Optional limit on P&I increase |
| 27 | T-X-ARMPICALC-METH | 1 | ARM PAYMENT | ARM PI CALC METHOD CODE | Signifies if ARM PI is a fully amortized PG&E or if it is interest-Only |
| 28 | T-X-ARMMAXPERCHG-PIINC-PCT | 7 | ARM PAYMENT | ARM MAX P&I INCREASE PERCENT | Maximum percent PI increase from previous P&I payment |
| 29 | T-X-ARMMAXPERCHG-PIDEC-PCT | 7 | ARM PAYMENT | ARM MAX P&I DECREASE PERCENT | Maximum percent PI decrease from previous P&I payment |
| 30 | T-X-ARMPB-NEGAM-PCT | 3 | ARM PAYMENT | ARM PB NEGATIVE AMORT PCT | The maximum amount of negative amortized interest that is applied back onto the original principal balance. |
| 31 | T-360-365-FACTOR | 1 | SPECIAL LOANS | The 360 365 FACTOR | |
| 32 | T-X-ARMIRCALC-OPTCD | 1 | SPECIAL LOANS | INTEREST CALCULATION OPTION CODE | The IR change calculation method....i.e., a stated margin (per the note), an implied margin (uses a base index - per the Note) |
| 33 | T-MOD-AGREE-IND | 1 | N/A | MODIFIED FLAG | Indicates if the original Note has been modified. |
| 34 | T-ARMORIG-INIT-IDX | 7 | N/A | INITIAL INDEX VALUE | The initial index value used for loans loans with an interest calculation that calculates the difference between the current index value and the initial index value and adds or subtracts the difference from the original interest rate |

EXHIBIT II

ARM DATA REQUIREMENTS

| Number | Field Name | Length | Business View Name | Business Element Name | Data Dictionary |
|---|---|---|---|---|---|
| 35 | T-CONVT-OPTION-YN | 1 | N/A | CONVERSION OPTION STATUS CODE | A code that indicates the loan has an option to convert from an ARM to a fixed rate. Indicates if the loan has different amortization term for the purpose of P&I Calculations during the first 10 (i.e. 40 yr amort) and last 20 (i.e. 30 yr amort) years of the loan. |
| 36 | T-X-ARMDUAL-AMORT-IND | 1 | N/A | Dual Amortization Indicator | |
| 37 | T-ARM-PLAN-ID | 10 | NEW ARM | ARM Plan Code | Your Plan Description/Code |
| 38 | T-ARM-CHG-DATE-01 | 8 | N/A | T-ARM-CHG-DATE-01 | 1st scheduled ARM change date - history |
| 39 | T-ARM-CHG-DATE-02 | 8 | N/A | T-ARM-CHG-DATE-02 | 2nd scheduled ARM change date |
| 40 | T-ARM-CHG-DATE-03 | 8 | N/A | T-ARM-CHG-DATE-03 | 3rd scheduled ARM change date |
| 41 | T-ARM-CHG-DATE-04 | 8 | N/A | T-ARM-CHG-DATE-04 | 4th scheduled ARM change date |
| 42 | T-ARM-CHG-DATE-05 | 8 | N/A | T-ARM-CHG-DATE-05 | 5th scheduled ARM change date |
| 43 | T-ARM-CHG-DATE-06 | 8 | N/A | T-ARM-CHG-DATE-06 | 6th scheduled ARM change date |
| 44 | T-ARM-CHG-DATE-07 | 8 | N/A | T-ARM-CHG-DATE-07 | 7th scheduled ARM change date |
| 45 | T-ARM-CHG-DATE-08 | 8 | N/A | T-ARM-CHG-DATE-08 | 8th scheduled ARM change date |
| 46 | T-ARM-CHG-DATE-09 | 8 | N/A | T-ARM-CHG-DATE-09 | 9th scheduled ARM change date |
| 47 | T-ARM-CHG-DATE-10 | 8 | N/A | T-ARM-CHG-DATE-10 | 10th scheduled ARM change date |
| 48 | T-ARM-CHG-DATE-11 | 8 | N/A | T-ARM-CHG-DATE-11 | 11th scheduled ARM change date |
| 49 | T-ARM-CHG-DATE-12 | 8 | N/A | T-ARM-CHG-DATE-12 | 12th scheduled ARM change date |
| 50 | T-ARM-CHG-DATE-13 | 8 | N/A | T-ARM-CHG-DATE-13 | 13th scheduled ARM change date |
| 51 | T-ARM-CHG-DATE-14 | 8 | N/A | T-ARM-CHG-DATE-14 | 14th scheduled ARM change date |
| 52 | T-ARM-CHG-DATE-15 | 8 | N/A | T-ARM-CHG-DATE-15 | 15th scheduled ARM change date |
| 53 | T-ARM-CHG-DATE-16 | 8 | N/A | T-ARM-CHG-DATE-16 | 16th scheduled ARM change date |
| 54 | T-ARM-CHG-DATE-17 | 8 | N/A | T-ARM-CHG-DATE-17 | 17th scheduled ARM change date |
| 55 | T-ARM-CHG-DATE-18 | 8 | N/A | T-ARM-CHG-DATE-18 | 18th scheduled ARM change date |
| 56 | T-ARM-CHG-DATE-19 | 8 | N/A | T-ARM-CHG-DATE-19 | 19th scheduled ARM change date |
| 57 | T-ARM-CHG-DATE-20 | 8 | N/A | T-ARM-CHG-DATE-20 | 20th scheduled ARM change date |
| 58 | T-ARM-CHG-DATE-21 | 8 | N/A | T-ARM-CHG-DATE-21 | 21st scheduled ARM change date |
| 59 | T-ARM-CHG-DATE-22 | 8 | N/A | T-ARM-CHG-DATE-22 | 22nd scheduled ARM change date |
| 60 | T-ARM-CHG-DATE-23 | 8 | N/A | T-ARM-CHG-DATE-23 | 23rd scheduled ARM change date |
| 61 | T-ARM-CHG-DATE-24 | 8 | N/A | T-ARM-CHG-DATE-24 | 24th scheduled ARM change date |
| 62 | T-ARM-CHG-DATE-25 | 8 | N/A | T-ARM-CHG-DATE-25 | 25th scheduled ARM change date |
| 63 | T-ARM-INT-RATE-01 | 7 | N/A | T-ARM-INT-RATE-01 | 1st ARM Change Interest Rate (if predetermined) |
| 64 | T-ARM-INT-RATE-02 | 7 | N/A | T-ARM-INT-RATE-02 | 2nd ARM Change Interest Rate (if predetermined) |

3 of 6

EXHIBIT II

ARM DATA REQUIREMENTS

| Number | Field Name | Length | Business View Name | Business Element Name | Data Dictionary |
|---|---|---|---|---|---|
| 65 | T-ARM-INT-RATE-03 | 7 | N/A | T-ARM-INT-RATE-03 | 3rd ARM Change Interest Rate (if predetermined) |
| 66 | T-ARM-INT-RATE-04 | 7 | N/A | T-ARM-INT-RATE-04 | 4th ARM Change Interest Rate (if predetermined) |
| 67 | T-ARM-INT-RATE-05 | 7 | N/A | T-ARM-INT-RATE-05 | 5th ARM Change Interest Rate (if predetermined) |
| 68 | T-ARM-INT-RATE-06 | 7 | N/A | T-ARM-INT-RATE-06 | 6th ARM Change Interest Rate (if predetermined) |
| 69 | T-ARM-INT-RATE-07 | 7 | N/A | T-ARM-INT-RATE-07 | 7th ARM Change Interest Rate (if predetermined) |
| 70 | T-ARM-INT-RATE-08 | 7 | N/A | T-ARM-INT-RATE-08 | 8th ARM Change Interest Rate (if predetermined) |
| 71 | T-ARM-INT-RATE-09 | 7 | N/A | T-ARM-INT-RATE-09 | 9th ARM Change Interest Rate (if predetermined) |
| 72 | T-ARM-INT-RATE-10 | 7 | N/A | T-ARM-INT-RATE-10 | 10th ARM Change Interest Rate (if predetermined) |
| 73 | T-ARM-INT-RATE-11 | 7 | N/A | T-ARM-INT-RATE-11 | 11th ARM Change Interest Rate (if predetermined) |
| 74 | T-ARM-INT-RATE-12 | 7 | N/A | T-ARM-INT-RATE-12 | 12th ARM Change Interest Rate (if predetermined) |
| 75 | T-ARM-INT-RATE-13 | 7 | N/A | T-ARM-INT-RATE-13 | 13th ARM Change Interest Rate (if predetermined) |
| 76 | T-ARM-INT-RATE-14 | 7 | N/A | T-ARM-INT-RATE-14 | 14th ARM Change Interest Rate (if predetermined) |
| 77 | T-ARM-INT-RATE-15 | 7 | N/A | T-ARM-INT-RATE-15 | 15th ARM Change Interest Rate (if predetermined) |
| 78 | T-ARM-INT-RATE-16 | 7 | N/A | T-ARM-INT-RATE-16 | 16th ARM Change Interest Rate (if predetermined) |
| 79 | T-ARM-INT-RATE-17 | 7 | N/A | T-ARM-INT-RATE-17 | 17th ARM Change Interest Rate (if predetermined) |
| 80 | T-ARM-INT-RATE-18 | 7 | N/A | T-ARM-INT-RATE-18 | 18th ARM Change Interest Rate (if predetermined) |
| 81 | T-ARM-INT-RATE-19 | 7 | N/A | T-ARM-INT-RATE-19 | 19th ARM Change Interest Rate (if predetermined) |
| 82 | T-ARM-INT-RATE-20 | 7 | N/A | T-ARM-INT-RATE-20 | 20th ARM Change Interest Rate (if predetermined) |
| 83 | T-ARM-INT-RATE-21 | 7 | N/A | T-ARM-INT-RATE-21 | 21st ARM Change Interest Rate (if predetermined) |

EXHIBIT II

ARM DATA REQUIREMENTS

| Number | Field Name | Length | Business View Name | Business Element Name | Data Dictionary |
|---|---|---|---|---|---|
| 84 | T-ARM-INT-RATE-22 | 7 | N/A | T-ARM-INT-RATE-22 | 22nd ARM Change Interest Rate (if predetermined) |
| 85 | T-ARM-INT-RATE-23 | 7 | N/A | T-ARM-INT-RATE-23 | 23rd ARM Change Interest Rate (if predetermined) |
| 86 | T-ARM-INT-RATE-24 | 7 | N/A | T-ARM-INT-RATE-24 | 24th ARM Change Interest Rate (if predetermined) |
| 87 | T-ARM-INT-RATE-25 | 7 | N/A | T-ARM-INT-RATE-25 | 25th ARM Change Interest Rate (if predetermined) |
| 88 | T-ARM-PI-PAYMENT-01 | 9 | N/A | T-ARM-PI-PAYMENT-01 | 1st ARM Change - P&I payment scheduled (if predetermined) |
| 89 | T-ARM-PI-PAYMENT-02 | 9 | N/A | T-ARM-PI-PAYMENT-02 | 2nd ARM Change - P&I payment scheduled (if predetermined) |
| 90 | T-ARM-PI-PAYMENT-03 | 9 | N/A | T-ARM-PI-PAYMENT-03 | 3rd ARM Change - P&I payment scheduled (if predetermined) |
| 91 | T-ARM-PI-PAYMENT-04 | 9 | N/A | T-ARM-PI-PAYMENT-04 | 4th ARM Change - P&I payment scheduled (if predetermined) |
| 92 | T-ARM-PI-PAYMENT-05 | 9 | N/A | T-ARM-PI-PAYMENT-05 | 5th ARM Change - P&I payment scheduled (if predetermined) |
| 93 | T-ARM-PI-PAYMENT-06 | 9 | N/A | T-ARM-PI-PAYMENT-06 | 6th ARM Change - P&I payment scheduled (if predetermined) |
| 94 | T-ARM-PI-PAYMENT-07 | 9 | N/A | T-ARM-PI-PAYMENT-07 | 7th ARM Change - P&I payment scheduled (if predetermined) |
| 95 | T-ARM-PI-PAYMENT-08 | 9 | N/A | T-ARM-PI-PAYMENT-08 | 8th ARM Change - P&I payment scheduled (if predetermined) |
| 96 | T-ARM-PI-PAYMENT-09 | 9 | N/A | T-ARM-PI-PAYMENT-09 | 9th ARM Change - P&I payment scheduled (if predetermined) |
| 97 | T-ARM-PI-PAYMENT-10 | 9 | N/A | T-ARM-PI-PAYMENT-10 | 10th ARM Change - P&I payment scheduled (if predetermined) |
| 98 | T-ARM-PI-PAYMENT-11 | 9 | N/A | T-ARM-PI-PAYMENT-11 | 11th ARM Change - P&I payment scheduled (if predetermined) |
| 99 | T-ARM-PI-PAYMENT-12 | 9 | N/A | T-ARM-PI-PAYMENT-12 | 12th ARM Change - P&I payment scheduled (if predetermined) |
| 100 | T-ARM-PI-PAYMENT-13 | 9 | N/A | T-ARM-PI-PAYMENT-13 | 13th ARM Change - P&I payment scheduled (if predetermined) |
| 101 | T-ARM-PI-PAYMENT-14 | 9 | N/A | T-ARM-PI-PAYMENT-14 | 14th ARM Change - P&I payment scheduled (if predetermined) |
| 102 | T-ARM-PI-PAYMENT-15 | 9 | N/A | T-ARM-PI-PAYMENT-15 | 15th ARM Change - P&I payment scheduled (if predetermined) |

EXHIBIT II

ARM DATA REQUIREMENTS

| Number | Field Name | Length | Business View Name | Business Element Name | Data Dictionary |
|---|---|---|---|---|---|
| 103 | T-ARM-PI-PAYMENT-16 | 9 | N/A | T-ARM-PI-PAYMENT-16 | 16th ARM Change - P&I payment scheduled (if predetermined) |
| 104 | T-ARM-PI-PAYMENT-17 | 9 | N/A | T-ARM-PI-PAYMENT-17 | 17th ARM Change - P&I payment scheduled (if predetermined) |
| 105 | T-ARM-PI-PAYMENT-18 | 9 | N/A | T-ARM-PI-PAYMENT-18 | 18th ARM Change - P&I payment scheduled (if predetermined) |
| 106 | T-ARM-PI-PAYMENT-19 | 9 | N/A | T-ARM-PI-PAYMENT-19 | 19th ARM Change - P&I payment scheduled (if predetermined) |
| 107 | T-ARM-PI-PAYMENT-20 | 9 | N/A | T-ARM-PI-PAYMENT-20 | 20th ARM Change - P&I payment scheduled (if predetermined) |
| 108 | T-ARM-PI-PAYMENT-21 | 9 | N/A | T-ARM-PI-PAYMENT-21 | 21st ARM Change - P&I payment scheduled (if predetermined) |
| 109 | T-ARM-PI-PAYMENT-22 | 9 | N/A | T-ARM-PI-PAYMENT-22 | 22nd ARM Change - P&I payment scheduled (if predetermined) |
| 110 | T-ARM-PI-PAYMENT-23 | 9 | N/A | T-ARM-PI-PAYMENT-23 | 23rd ARM Change - P&I payment scheduled (if predetermined) |
| 111 | T-ARM-PI-PAYMENT-24 | 9 | N/A | T-ARM-PI-PAYMENT-24 | 24th ARM Change - P&I payment scheduled (if predetermined) |
| 112 | T-ARM-PI-PAYMENT-25 | 9 | N/A | T-ARM-PI-PAYMENT-25 | 25th ARM Change - P&I payment scheduled (if predetermined) |

EXHIBIT VII – A

Remittance Template for Interim Collections
Actual/Actual Reporting Basis

| SERVICER LOAN NUMBER | PRINCIPAL COLLECTED | INTEREST COLLECTED | SERVICE FEE COLLECTED | NET INTEREST REMITTED | ENDING ACTUAL BALANCE | NEXT DUE DATE | P&I CONSTANT | INTEREST RATE | PAYOFF DATE (IF APPLICABLE) | PREPAYMENT PENALTY AMOUNT (IF APPLICABLE) | PRIOR SERVICER | FUNDING DATE | CUT-OFF DATE | TRANSFER DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| The current servicer's loan number for the reporting period on Base/EMC owned loans. | The amount of principal collected during the reporting period. | The amount of interest collected during the reporting period. | The amount of service fee collected during the reporting period. | The net of service fees amount of interest remitted during the reporting period. | The actual principal balance outstanding as of the end of the reporting period. | The date the next payment is due. | The principal and interest portion of the mortgage payment. | The current percentage of interest being collected on the loan. | The date the loan is paid in full, if applicable. | The amount of prepayment penalty collected, if applicable. | Previous servicer's name | Trade settlement date when EMC purchased the loans | Date used for the purpose of establishing the balances purchased by EMC | Date servicing on the loans is transferred from the Seller/Prior Servicer |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

# EXHIBIT IV

## Final Trial Balance Template

| PRIOR SERVICER | FUNDING DATE | CUT-OFF DATE | TRANSFER DATE | EMC LOAN NUMBER | SERVICER LOAN NUMBER | NAME | NEXT DUE DATE | STATE | INTEREST RATE | SERVICE FEE RATE | P&I PAYMENT | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Previous servicer's name | Trade settlement date when EMC purchased the loans | Date used for the purpose of establishing the balances purchased by EMC | Date servicing on the loans is transferred from the Seller/Prior Servicer | EMC's assigned loan number. | The previous servicer's number for acquired loans. | Borrower 1 last name. | The date the next payment is due. | The state abbreviation of the property address. | The current percentage of interest being collected on the loan. | The current percentage of service fee being charged on the loan. | The principal and interest portion of the mortgage payment for the first mortgage on the loan. | The total of principal and interest, escrow, replacement reserve, optional insurance, etc. |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

\* If you are using Fidelity MSP to generate your loan transfer information, you may provide the following reports in place of this template.  P10N and 4TB or other additional reports reflecting fields not listed on these reports.

EXHIBIT IV

Final Trial Balance Template

| MONTHLY ESCROW PAYMENT | OPTIONAL A&H INSURANCE MONTHLY PAYMENT | LIFE INSURANCE MONTHLY PAYMENT | MONTHLY BUYDOWN AMOUNT | MONTHLY HUD 235 AMOUNT | MONTHLY MISC AMOUNT | INVESTOR LOAN NUMBER | PRINCIPAL BALANCE | ESCROW BALANCE | ESCROW ADVANCE BALANCE | SUSPENSE BALANCE | BUYDOWN FUNDS BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| The total of the county tax deposit, city tax deposit, hazard deposit, mortgage insurance deposit, lien deposit, and c+s spread. | This is the monthly optional insurance premium amount for A&H insurance. | This is the monthly optional insurance premium amount for life insurance. | The portion paid to replacement reserve or as buydown/subsidy each month. | The monthly portion of the payment for HUD 235 subsidy loans. | This is the monthly payment for any miscellaneous items. | The loan number assigned to the investor or purchaser. | The amount of principal that the mortgagor owes on the loan. | The current balance of money held in the mortgagor's escrow account for payment of the mortgage insurance premium, hazard insurance premium, taxes, and liens. | The amount of corporate monies advanced to replace overdrawn escrow funds. | The amount of funds in suspense pending research to determine what portion goes to principal, interest, escrow, insurance, etc. on late charge, unapplied payments. | The balance of monies held for buydown/subsidy. |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

EXHIBIT IV

Final Trial Balance Template

| RESTRICED ESCROW BALANCE | LATE CHARGE BALANCE | HUD 235 BALANCE | MERS MIN | MIN FLAG (Y/N) | RECOVERABLE CORP ADVANCE BALANCE | NON RECOVERABLE CORP ADVANCE BALANCE | ESCROWED LOAN (Y/N) | INTEREST ONLY LOAN (Y/N) | BUYDOWN (Y/N) | BANKRUPTCY (Y/N) | FORECLOSURE (Y/N) | MODIFICATION (Y/N) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| The balance of monies held for insurance loss drafts, attorney's fees, or new loan completion funds. | The balance of late charges of monies accrued on the loan. | The balance of monies held for HUD 235 subsidy. | MERS MIN registration number. | Flag indicating that loan is registered with MERS or not. | The amount of advances made on this loan for which you expect to receive repayment, such as foreclosure advances. | The amount of advances made for a loan that are counted as losses, such as tax penalties. | Comment indicating whether loan is escrowed or not. | Comment indicating whether the loan allows interest only payments or not. | Comment indicating whether the loan has a temporary buydown or not. | Comment indicating whether the loan is currently in bankruptcy or not. | Comment indicating whether the loan is currently in foreclosure or not. | Comment indicating whether the loan has been modified or not. |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |

EXHIBIT V

Transaction History

| PRIOR SERVICER | FUNDING DATE | CUT-OFF DATE | TRANSFER DATE | SELLER LOAN NUMBER | EMC LOAN NUMBER | NEXT DUE DATE | PROCESS DATE | EFFECTIVE DATE | TRANSACTION CODE | TRANSACTION AMOUNT | PRINCIPAL AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previous servicer's name | Trade settlement date when EMC purchased the loans | Date used for the purpose of establishing the balances purchased by EMC | Date servicing on the loans is transferred from the Seller/Prior Servicer | The previous servicer's number for acquired loans. | EMC's assigned loan number. | The date the next payment is due. | The date the transaction was processed by the system | The date the transaction is applicable to the account | Tran code associated with the specific transaction | Total amount of the transaction | The principal portion of the transaction on the loan |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

* If you are using Fidelity MSP to generate your loan transfer information, you may provide the following reports in place of this template:   45C and P4CJ

Page 1 of 2

EXHIBIT V

Transaction History

| ENDING PRINCIPAL BALANCE | INTEREST AMOUNT | ESCROW AMOUNT | ENDING ESCROW BALANCE | LATE FEES | CORPORATE ADVANCE / OTHER | TRANSACTION DESCRIPTION |
|---|---|---|---|---|---|---|
| The amount of principal that the mortgagor owes on the loan | The portion of the transaction that applies to interest | The portion of the transaction that applies to escrow | The current balance of money held in the mortgagor's escrow account for payment of the mortgage insurance premium, hazard insurance premium, taxes, and liens. | The portion of the transaction that applies to late fees | The portion of the transaction that applies to a corporate advance or other item | Detailed description of the type of transaction (regular payment, curtailment, etc.) |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

EXHIBIT VI

IMAGE INGESTION AND WORKFLOW

# Guidelines for Submitting Images for Imaging Repository

# Upload Process Overview

Images (or documents)and related metadata can be loaded into the EMC's imaging repository through a bulk upload process either via a secure FTP transmission or submission through approved media and a standardized format.  Depending on the nature of the services provided by the vendor to the EMC, either or both of the bulk uploading options can be utilized.  This document describes the processes and methodologies associated with these options.

## *FTP Transmission Method*

This method utilizes a dedicated FTP server to securely receive images provided by EMC's partners.  This secure method must be utilized:

> Secure FTP - Periodic transmission to EMC's Vendor SFTP server via the SFTP protocol

Exports from external imaging systems generate metadata output files and bundle them into batches with the associated images.  PARTNER processes utilize the File Transfer Protocol to transfer them to the EMC's Vendor server.  The server receives the batches and imports them into to the repository while providing import status to PARTNER.  This document provides the specifications for this process.

## *Direct to Imaging Vendor Method*

Under some circumstances it may be more appropriate to submit images and metadata to EMC's vendor other than through the Secure FTP Transmission Method described above. EMC's Vendor can import images under these circumstances via transmission methods described below and processes as specified in this document.

> For **bulk transfers or backfile conversions,** images and metadata can be submitted to EMC's Vendor on one of the following media types:

> DVD          For backfile conversions volumes of documents up to approximately 100GB
> LTO2 Tape     For high volumes of documents, approximately 100GB and greater

# File Definition and Submission Process

Whether utilizing the FTP Transmission method, or submitting data directly to FASTRIEVE, the methods for assembling the image and associated metadata files will be the same.  The process consists of four steps: 1.) Define the Image file Indices, 2) Collect image files for transfer, 3.) Create batch metadata file for collected images with indices identified in step 1, and 4.) Transfer metadata file and images to the appropriate import location.  These steps are defined in detail below.

## *Step 1: Define Indices (metadata)*

Each imaging vendor client defines a custom set of metadata.  Please work with Acquisition contact or account representative to obtain the list of fields needed for this data import.

In the example below, the fields Employee Number, First Name, Last Name, and SSN will be extracted from PARTNER's system to be imported into EMC's imaging repository.

| Index | Display | Can be | Display on | Drop | Determines | Field | Field Type |
|-------|---------|--------|------------|------|------------|-------|------------|

| Name | Name | Queried | Search Results List | Down List | Access Rights | Length | (Text, numeric, list, list translation, date or system) |
|------|------|---------|---------------------|-----------|---------------|--------|----------------------------------------------------------|
| (optional) | (provide name) | (Yes or No) | (provide choices) | (Yes or No) | | (maximum) | Alphanumeric, Date or Numeric |
| Empno | Employee Number | Yes | No | No | | 5 | Alphanumeric |
| Fname | First Name | Yes | No | No | | 20 | Alpha |
| Lname | Last Name | Yes | No | No | | 20 | Alpha |
| SSN | SSN | Yes | No | No | | 11 | Alpha |

**Special Instructions for Certain Attribute Types:**
* For List-type attributes (see Field Type above), a list of acceptable values must be provided by EMC. Values provided by PARTNER must be one of the acceptable values.
* For List Translation-type attributes, a list of acceptable values and translations from existing PARTNER values must be provided by EMC before import can commence.
* For Date type attributes, the associated field in the metadata file should be formatted as "MM/DD/YYYY" with a complete 4 digit year. Metadata files containing 2 digit years will fail. EMC's imaging vendor can be configured to accept Date/Time values in a Date-type field. Please work with your Acquisition representative and their vendor account representative to utilize this format.
* The imaging vendor's System-type attributes may not be provided in the incoming metadata file. They will be set automatically by the vendor upon import.

## Step 2: Create Document Image Files for Submission to EMC's Imaging Vendor

Image files sent to EMC's vendor must meet the following requirements:

    a.   The preferred import format is CCITT Group IV TIFF format, with filenames ending in ".tif".
          i.   TIFF files must be multi-page.[1]

    b.   Other file types, such as PDF, are accepted by EMC's vendor, but may provide EMC more limited functionality (for example, EMC's vendor user interface allows users to select tif or jpg images to be viewed in a PDF viewer by converting the stored (TIFF or JPG) image to PDF "on-the-fly", but this functionality is not currently available for other file formats. Other file types must be sent with an extension that will launch the appropriate application once it is loaded for viewing on the users PC. For example, PDF files must have a .pdf extension. Other valid extensions are below:

| | | | | |
|------|------|------|------|------|
| Tif | gif | pdf | djvu | dcx |
| tiff | bmp | rtf | pcx | |
| html | doc | txt | png | |
| htm | xls | xml | tga | |
| jpg | ppt | icd | img | |

    c.   Each image file in a given import must be uniquely named.

---

[1] Single-page TIFFs can be accommodated on a case by case basis, but must be configured as part of the initial import setup

## *Step 3: Create Batch Metadata File*

A metadata file will accompany the images to be transferred in order to identify the attribute values associated with a given image. Each batch should include one metadata file and one or more image files. For each image in the batch, the attribute values specified during step 1 must be written to the metadata file per the following specifications:

d.  The metadata (attribute) values must be placed into a single, pipe-delimited[2] text file with one file entry per line.

e.  The number of pages in the document image **must** be specified in the metadata and is typically just before the image path.
    i.  This number must not be 0, as it will cause errors for EMC personnel trying to access images.

f.  The path to the image file must be included in the metadata file. This field should be specified as the last field in each line of metadata and point to the relative location of the image to which the rest of the attributes refer. It should be all lowercase.

For example: An imaging process for EMC's Acquisition application might list an image at file path "clienthr_20050421_1\000000001.tif".

g.  The metadata file must be given a unique name. This name will become the EMC's vendor batch name, so it must be absolutely unique.

The vendor automatically records the name of the batch in its system during import. This allows us to later perform batch-level auditing and processing. For example, batches later identified as errored, incorrect or test may be requested to be deleted as a group. For this reason, the vendor requires unique batch names and the batch processing system which will refuse to import duplicate batch names.
    i.  It should reference the client name and application name. This is available from your Acquisition contact.
    ii.  It is often useful to append a format of the date and/or time the file was created to the filename in order to prevent duplicates.
        1.  If this is not feasible, an incremented number could be (carefully) used instead.
    iii.  It should end with a ".meta" extension.
    iv.  It should be all lowercase.

An example of a batch name that meets these criteria would be:
clienthr_20050421_1.meta

Using the attributes selected in Step 1, for the Acquisition example above, the contents of the metadata file might look like:

| Loan Number | First Name | Last Name | SSN | Number of Pages | File Path |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

---

[2] If the pipe "|" character will possibly appear in the data, another mutually-agreed-upon character may be used.



## *Step 4: Transfer to the onsite server*

Images and metadata should be archive (.zip or .tar)-ed together and securely transferred to the Vendor's FTP server using either Secure FTP.  To manage the processing of multiple clients, Vendor will assign EMC a separate directory for PARTNER.   Within that directory, PARTNER will drop archive files that contain both the .meta file and the images.  The metadata file (.meta) must reside in the root of the batch subdirectory, but the images may reside in subdirectories in the archive, as long as they are properly referenced in the .meta file.

Images and metadata must be electronically transferred or physically sent to a designated Vendor's Conversion center in the format specified above in a timely manner.  Import into the the Vendor's repository will follow file receipt, within the SLAs established between Vendor and EMC.

PARTNER will perform batch post-processing and control data flow to the repository (see Programming Requirements for FTP Transfers section).

# Changes to the Metadata File

Once the imports have been automated, changes to the metadata file (addition of fields, etc) must be coordinated with Vendor Support.  They must stop imports, change the import configuration and specifications, watch a single test batch process and then restart the automated imports.

Do not begin transferring newly-formatted files to Vendor without the involvement of Vendor Support.  Please contact your Acquisition Coordinator for instructions and contacts.

# Programming Requirements for FTP Transfers
## (PLEASE REVIEW CAREFULLY)

To ensure successful transmissions, implementers of export routines should pay attention to the following:

1. **Images should be submitted to Vendor in batches of multiple TIFF files per batch,** subject to the following guidelines:
    a. We expect to receive a relatively consistent stream of batches that do not average more than 1 batch per minute. **Please do not send us a series of many batches at once** (e.g., do not send all batches at the end of a shift).
    b. Batch size is not as critical as batch number, and can range from a few MB to as much as 150MB (or more if necessary). To accommodate a high document volume, it is preferable to increase the batch size in lieu of increasing the number of batches beyond 1 per minute (on average).
        i. Transferring batches of more than 150 MB is not recommend, since a failure at the end of transmission will require retransmission of the whole batch.

2. **When finished transferring the archive, use a .rdy file to signal completion.** The Vendor system automatically looks for files with a .rdy extension and uses those to signal the import process to pick up and process the import file. This reduces the possibility that Vendor begins to import a batch while PARTNER is still transferring the contents.

    The general practice is to:
    a. Write out the archive file first, then
    b. Write out a 0-byte file with the same name as the archive file, replacing the extension with ".rdy".

3. **The Vendor must receive complete batches. If any TIFF referenced in the .meta file isn't found on the disk, then the entire batch will not be processed.** Notifications sent out via email and log files are generated if batches are rejected.

# Notifications and Error Messages

EMC's Vendor provides two types of notifications available as a means to catch errors and/or audit the transfer process.

## *ErrorFile subdirectory*

If a batch fails to import for some reason, a log file will be generated and placed in the ErrorFile subdirectory of PARTNER's allotted FTP site. PARTNER is responsible for monitoring this subdirectory and correcting errored files as detailed in the reprocess files. These files will have a filename of the batch name with a .reprocess extension (i.e. clienthr_20050421_1.reprocess), and will contain just the records that could not be imported with a description of why EMC's vendor could not import the file.

## *ResponseFile subdirectory*

EMC's vendor can optionally provide confirmations of the successful receipt of images as follows:

1.  E-mail confirmations per batch, such as:  "'x' documents were imported from batch 'y'"
    An e-mail address must be submitted.

2.  CLIENT and/or PARTNER may request a ".results" file to be sent.  This file contains (unless otherwise specified) a mirror image of all the metadata for each image loaded into the vendor, along with the unique Object ID (assigned by the vendor) in lieu of the actual TIFF filename/path included in the original .meta file.  This data can be used for reconciliation purposes or to enable image-enabling a CLIENT application using the VENDOR API calls.

## EXHIBIT VII -- A

## Remittance Template for Interim Collections
### Actual/Actual Reporting Basis

| SERVICER LOAN NUMBER | PRINCIPAL COLLECTED | INTEREST COLLECTED | SERVICE FEE COLLECTED | NET INTEREST REMITTED | ENDING ACTUAL BALANCE | NEXT DUE DATE | P&I CONSTANT | INTEREST RATE | PAYOFF DATE (IF APPLICABLE) | PREPAYMENT PENALTY AMOUNT (IF APPLICABLE) | PRIOR SERVICER | FUNDING DATE | CUT-OFF DATE | TRANSFER DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| The current servicer's loan number for the reporting period on Bear/EMC owned loans. | The amount of principal collected during the reporting period. | The amount of interest collected during the reporting period. | The amount of service fee collected during the reporting period. | The net of service fee amount of interest remitted during the reporting period. | The actual principal balance outstanding as of the end of the reporting period. | The date the next payment is due. | The principal and interest portion of the mortgage payment. | The current percentage of interest being collected on the loan. | The date the loan paid in full, if applicable. | The amount of prepayment penalty collected, if applicable. | Previous servicer's name | Trade settlement date when EMC purchased the loans. | Date used for the purpose of establishing the balances purchased by EMC | Date servicing on the loans is transferred from the Seller/Prior Servicer |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

EXHIBIT VII – B

Remittance Template for Interim Collections
Scheduled/Scheduled Reporting Basis

| SERVICER LOAN NUMBER | PRINCIPAL COLLECTED | INTEREST COLLECTED | SERVICE FEE COLLECTED | NET INTEREST REMITTED | ENDING ACTUAL BALANCE | BEGINNING SCHEDULED BALANCE | ENDING SCHEDULED BALANCE | NEXT DUE DATE | P&I CONSTANT | INTEREST RATE | PAYOFF DATE (IF APPLICABLE) | PREPAYMENT PENALTY AMOUNT(IF APPLICABLE) | PRIOR SERVICER | FUNDING DATE | CUT-OFF DATE | TRANSFER DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| The current servicer's loan number for the reporting period on these EMC owned loans. | The amount of scheduled principal plus the amount of curtailments made during the reporting period. | The amount of scheduled interest due during the reporting period. | The amount of service fee collected during the reporting period. | The net (of service fee) amount of interest remitted during the reporting period. | The actual principal balance outstanding as of the end of the reporting period. | The scheduled principal balance as of the beginning of the reporting period. | The scheduled principal balance as of the end of the reporting period. | The date the next payment is due. | The principal and interest portion of the mortgage payment. | The current percentage of interest being collected on the loan. | The date the loan paid in full, if applicable. | The amount of prepayment penalty collected, if applicable. | Previous servicer's name | Trade settlement date when EMC purchased the loans | Date used for the purpose of establishing the balances purchased by EMC | Date servicing on the loans is transferred from the Seller/Prior Servicer |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

EXHIBIT VIII
Funds Advice (Wire or Check)

| SELLER LOAN NUMBER | EMC LOAN NUMBER | TOTAL AMOUNT | DATE FUNDS RECEIVED BY SELLER | PURPOSE OF THE ITEM | CLAIM REFERENCE NUMBER | CHECK / REFERENCE NUMBER |
|---|---|---|---|---|---|---|
| The loan number on your system | The EMC loan number | Total amount of the item | The date the funds were received at the Seller's office | The description of the item (ex. Claim, third party checks, tax refunds, loss drafts, etc.) | The claim reference number as provided by EMC. (if applicable) | The check number, fed reference number, etc. associated with the transaction (if applicable) |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

EXHIBIT IX
EMC SAMPLE GOODBYE LETTER

MM/DD/YYYY

Borrower's Name
Mailing Address
City, State, ZIP Code

RE:   **(Seller/Servicer)** Previous Loan Number:                    Property Address:  Street
EMC New Loan Number:                                                                   City, State, ZIP

Dear Mortgagor(s):

The servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from **(Seller/Servicer)** to EMC Mortgage Corporation (EMC) effective **(First Payment Due EMC Date)**. The assignment, sale, or transfer of the servicing of your mortgage is a part of your original loan agreement and does not affect any of the terms or conditions of the mortgage instruments other than terms directly related to the servicing of your loan. Except in limited circumstances, the law requires **(Seller/Servicer)** to send you notice of this transfer at least 15 days before the effective date of transfer. EMC must also send you this notice no later than 15 days after the effective date. To ensure a smooth transfer, please review the following information.

**CUSTOMER SERVICE INFORMATION:**

Your present servicer is **(Seller/Servicer)**.  If you have any questions relating to the transfer of servicing from your present servicer, call **(Seller/Servicer)** toll-free at 1-800-xxx-xxxx between ____a.m. and ____ p.m. on the following days:  **<fill in days>**.

Your new servicer will be EMC.  The business address for EMC is:  P.O. Box 141358, Irving, Texas 75014-1358.  The toll-free number for EMC is 1-800-723-3004.  If you have any questions relating to the transfer of servicing to your new servicer, call Customer Service between 7:00 a.m. and 9:00 p.m. CST Monday through Thursday, and between 7:00 a.m. and 7:00 p.m. CST on Friday.  You can also access mortgage information online at www.emcmortgageservicing.com.  *Para una explicacion en Espanol, del contenido de esta carta, por favor llama a nuestro Departamento de Servicios Al Cliente al 800-723-3004, los lunes a jueves durante las horas de 7:00 a.m. a 9:00 p.m. y viernes durante las horas de 7:00 a.m. a 7:00 p.m. Hora Central.*

**PAYMENT INFORMATION:**

The date that **(Seller/Servicer) will** stop accepting your payments is on **(1 day prior First Payment Due EMC Date)**. **The date that EMC will start accepting payments from you is (First Payment Due EMC Date)**.   Send all payments made on or after **(First Payment Due EMC Date)** to EMC.  Any payments received by, but not due to **(Seller/Servicer)** will be forwarded to EMC.

**PREAUTHORIZED PAYMENTS (ACH):**

If your loan payment was automatically drafted by **(Seller/Servicer)**, you will need to make new arrangements with EMC.  Look for enrollment information on your first monthly statement.

**FIRE/HAZARD/FLOOD INSURANCE:**
If you maintained an escrow account with **(Seller/Servicer)** to pay insurance premiums, EMC will continue to collect those funds and pay your insurance premiums from the account.  The fire, flood and/or homeowners insurance policy(s) carried on your property will be transferred to EMC and your policy(s) will remain in force.  **It is important that you contact your insurance agent to advise that your loan has been transferred and to mail future renewals to:** EMC Mortgage Corporation, Insurance Services, P. O. Box 7589, Springfield, OH 45501-7589. Your EMC loan number should be included on all insurance notices.

**PROPERTY TAXES:**
If you maintained an escrow account with **(Seller/Servicer)** to pay taxes, EMC will continue to collect the funds and pay the taxes. **If your property is located in a homeowner area that requires that the tax statement be mailed to you (Pennsylvania, New Jersey, or Illinois)**, please place your EMC loan number on the statement and forward a copy to our tax service:  EMC Mortgage Corporation, Tax Service, 4910 Rivergrade Rd. Building 550, Suite 301, Irwindale, CA 91706.

**OPTIONAL INSURANCE:**
Premiums for optional life and/or accident/disability insurance that were collected in your monthly payment will not transfer to EMC.  Please contact the insurance company to discuss continuing your existing coverage.

Sincerely,

Customer Service
**(Seller/Servicer)**

**REAL ESTATE SETTLEMENT PROCEDURE ACT (RESPA)**
You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C., 2605):  During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.  Section 6 of RESPA (12 U.S.C., 2605) GIVES YOU CERTAIN CONSUMER RIGHTS. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name, account number, and your reasons for the request.

No later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with written clarification regarding any dispute. A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions. During this 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure, if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.