## Exhibit A

**Engagement Letter**

Michael Strauss
Chief Executive Officer
American Home Mortgage Holdings, Inc.
538 Broadhollow Road
Melville, NY 11747

**Allen & Overy LLP**
1221 Avenue of the Americas
New York NY 10020

Tel          212 610 6300
Fax          212 610 6399
Direct line  212 756 1125
Personal fax 212 610 6399
pamela.chepiga@allenovery.com

October  , 2007

Dear Mr. Strauss:

**Terms of Engagement**

I am writing to you on behalf of Allen & Overy LLP to confirm the basis on which we will provide advice and/or services to American Home Mortgage Holdings, Inc. and its direct and indirect affiliates and subsidiaries, (the **Company**)[1], for the limited purposes set forth below, in respect of each of the matters (the **Matters**) on which Allen & Overy LLP is instructed by the Company. Allen & Overy LLP shall also represent the officers and directors of American Home Mortgage Holdings, Inc. who were employed by, or were directors of, the Company at the time of Company's Chapter 11 filings, and as to whom no conflict exists (collectively, the **D&Os**). At the present time, we are not aware of any potential conflict between the Company and its D&Os and believe that a joint representation will be the most cost effective means of avoiding excessive legal fees for the Company's bankruptcy estate.

The terms of our engagement are governed by this letter and its appendix which sets forth the general terms of our engagement (together the or this **Letter**). Additionally, Allen & Overy LLP's retention by the Company is subject to and dependent upon the approval of the retention by the United States Bankruptcy Court for the District of Delaware.

1.      **Relationship**

I will be your overall relationship partner (**Relationship Partner**) and the partner with overall responsibility for the conduct of the Matters. You will be our principal contact at the Company (the **Principal Client Contact**). The general terms of Appendix 1 will apply to Allen & Overy LLP's relationship with the Company.

---

[1] The term Company shall be defined to include all the Debtors that filed for bankruptcy on August 6, 2007: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

## 2.    Fees

Our fees will be charged at the following rates: partners and/or counsel ($730 - $825), associates ($340 - $650), and paralegals ($185 - $225). Payment of Allen & Overy LLP's fees on the Matters will be subject to approval by the United States Bankruptcy Court for the District of Delaware.

In addition to our fees, Allen & Overy will bill for reasonable out-of-pocket expenses and other charges, which are likely to include airfare, meals and hotel accommodations, telephone and other communications charges, court fees, press release distribution, research, duplicating and printing, and reasonable professional expenses and disbursements incurred by Allen & Overy (the **Expenses**). The Expenses may include charges for the services of information technology experts who are able to assist with electronic discovery requests and, similarly, for the services of all other necessary experts. (In the event extraordinary or significant expenses are incurred, such as transcript costs and large mailings, the Company agrees that it will pay those expenses directly or will promptly reimburse us separately from our normal invoice procedure.) Allen & Overy will bill for such reasonable expenses in accordance with its standard practices, which may be periodically updated.

If you have any queries regarding an invoice, please let us know as soon as reasonably practicable.

We hope that you will be satisfied with our work. However, if for whatever reason you have any queries or concerns, please do not hesitate to contact me at any time. If I am unavailable, arrangements will be made for you to speak to another partner to assist with the resolution of any issues.

## 3.    Initial Matters

The Company has engaged Allen & Overy LLP to serve as counsel with respect to the Securities and Exchange Commission's (SEC) continuing inquiries regarding the Company's activities immediately prior to and following its entrance into bankruptcy. We anticipate that the scope of this work will include, but not be limited to, the production of documents to the SEC as well as responding to any additional requests for information, the interview of witnesses, and the submission of written factual and legal analysis, as needed. Additionally, the scope of our engagement includes responding to any requests from other regulatory entities.

We have also been engaged to represent the Company in a number of currently pending securities class action litigations. We anticipate that the scope of this work will also include representation of the Company in any additional securities litigations that make substantially similar claims and/or are based on substantially similar allegations.

For the avoidance of doubt, we will not be responsible for advice regarding any bankruptcy-related issues, general corporate governance, or any litigation issues aside from those regulatory and securities-related issues described above.

## 4.    Conflicts

As noted above, Allen & Overy LLP will represent the D&Os as to whom no conflict exists. At the present time, we unaware of the existence of any such conflict. Nonetheless, in order to ensure that Allen & Overy LLP is not disqualified from its continuing representation of the Company in the future, each and every D&O who is presently named in a pending securities class action litigation will be asked to sign the representation agreement substantially in the form attached hereto as Appendix 2. Any D&O who elects not to sign such a representation agreement will not be represented by Allen & Overy LLP.

To the extent that future litigations are brought against individuals who are not currently named, Allen & Overy LLP will request that any such individual sign the representation agreement included at Appendix 2 before agreeing to act on that individual's behalf.

Yours truly

ALLEN & OVERY LLP


By: ..............................................
    Partner for and on behalf of Allen & Overy LLP


The appointment of Allen & Overy LLP on the above terms is agreed.

American Home Mortgage Holdings, Inc., et. al.


By: ....................................... Date: ......................................
    Name
    Title

# APPENDIX 1

## GENERAL TERMS REGARDING YOUR RELATIONSHIP WITH A&O

1. **Definitions**

1.1 For the purposes of the Letter, unless the context otherwise requires:

**Allen & Overy LLP** is a limited liability partnership incorporated in England and Wales with registered number OC 306763 and registered office at One Bishops Square, London, E1 6AO;

**partner** is a title and individuals described as partners are members, partners, shareholders or employees of, or consultants to, Allen & Overy LLP or an affiliate of Allen & Overy LLP. A list of the members of Allen & Overy LLP is available for inspection at One Bishops Square, London, E1 6AO; "we", "us" and "our" are references to the relevant member(s) of Allen & Overy LLP providing advice and/or services to the Group on a particular Matter; and "you", "yourself" and "your" are references to the Company and the D&Os.

2. **Records**

2.1 Unless you instruct us otherwise, we may destroy correspondence and other documents, including electronic copies, once we believe they need no longer be retained for legal reasons. If you wish us to keep documents for a longer period, we may charge for our storage costs.

3. **Other Parties**

3.1 Our advice and/or services are for your benefit and may not be used or relied upon by anyone else.

4. **Instructions to Third Parties**

4.1 We cannot accept liability for the acts and omissions of any third party we may instruct on your behalf.

5. **Electronic Communications**

5.1 We may communicate with you electronically. You accept the risks involved in such communication, except in the case of our negligence or wilful default.

5.2 We may monitor communications in accordance with applicable laws and regulations in order to establish facts, to determine that communications using our systems are relevant to our business or to comply with laws or regulatory practices and procedures.

6. **Conflicts/Relationships with Other Clients**

6.1 We believe that we do not represent or hold any adverse interest to the Company and D&Os with respect to the Matters. However, you are aware that we represent many other companies and individuals, and that it is possible that during the time we are representing you some of our present or future clients will have disputes or transactions with the Company and the D&Os. We recognize that unless we have received your written permission to do so, we shall be disqualified from representing any other client when applicable law so requires. Further, we recognize that you are not waiving any potential conflicts which were not disclosed in the Declaration of Pamela Rogers Chepiga in support of the *Application for an Order Authorizing the Debtors and Debtors in Possession to Employ and Retain Allen & Overy LLP, as Special Regulatory, Securities, and Class Action Litigation Counsel Pursuant to Section 327 of the Bankruptcy Code, Nunc Pro Tunc to September 7, 2007* [Docket No. 1320].

7. **Confidentiality**

7.1 We will of course treat any information which we obtain from you which is not in the public domain as confidential. However, we may sometimes have to disclose information to regulatory authorities or under rules of law or professional conduct. If so, we would (where both permissible and practicable) inform you of the request or requirement to disclose.

7.2 We may sometimes outsource support services such as word processing, translation and photocopying, on the basis that our suppliers have agreed or will agree to keep any information they receive from us confidential. We may also discuss your affairs with your other advisers.

7.3 We will ask your permission before publicly claiming credit for our work for you. However, when offering our services to others, we may disclose to them that we have acted for you, unless you instruct us to the contrary.

8. **Termination**

8.1 Our retainer in relation to the Matters will terminate upon the delivery of our final invoice in relation to the Matters and, if there is no invoice, when our work, as described in the relevant letter, is complete.

5

8.2  Either of us may terminate our representation of the Company and the D&Os at any time for any reason by written notice, subject on our part to the New York Code of Professional Responsibility and any other applicable laws or rules of professional conduct. The New York Code of Professional Responsibility also requires that we withdraw from our representation under certain circumstances. In the event we elect or are required to withdraw from our engagement, or you elect to terminate our engagement (a) we will take such steps as are reasonably practicable to avoid foreseeable prejudice to your interests and, if you so request, we will suggest to you possible successor counsel and provide it or you with all papers and property to which you are entitled and (b) you will take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to complete our withdrawal. If permission for withdrawal is required by a court, we will promptly apply for such permission and will not withdraw until we receive such permission, and you agree to engage successor counsel to represent you.

8.3  If our engagement is terminated in relation to the Matters, the provisions of this Appendix will continue to apply in respect of the Matters after termination.

9. **Enforceability of the Letter**

9.1  The Company enters into the Letter on its own behalf and as agent for the affiliate Companies and shall procure that the affiliate Companies comply with its terms.

9.2  Except for the Company, and any member, shareholder or employee of, or consultant to any member of Allen & Overy LLP or its affiliates, a person who is not a party to the Letter shall have no right to enforce any of its terms.

10. **Concerns, Jurisdiction and Governing Law**

10.1  The Bankruptcy Court for the District of Delaware has exclusive jurisdiction to settle any disputes which may arise out of or in connection with our engagement on any particular Matter or the Letter and you and we accordingly submit to the exclusive jurisdiction of the Bankruptcy Court for the District of Delaware.

10.2  The Letter and any disputes which may arise out of or in connection with it or our engagement on any particular Matter shall be governed by New York law unless otherwise agreed in writing.

6

## APPENDIX 2

## UNDERTAKING OF OFFICER AND/OR DIRECTOR JOINT REPRESENTATION

I, _____, hereby agree to be represented by Allen & Overy LLP with respect to the Securities and Exchange Commission's ongoing inquiries regarding American Home Mortgage Holdings, Inc. and its direct and indirect subsidiaries (the **Company**)[2] and with respect to currently pending securities class action litigations related to the events leading up to the Company's Chapter 11 filing. I acknowledge that, at this time, neither Allen & Overy LLP or myself is aware of any conflict of interest, actual or potential, between Allen & Overy LLP's representation of me and of Allen & Overy LLP's representation of the Company. Additionally, I hereby agree that should a conflict of interest arise at any future date, I will not object to Allen & Overy LLP's immediate discontinuation of its representation of me and its continued representation of the Company. Further, I hereby agree that, in the event that a future conflict arises, I irrevocably waive the right to use Allen & Overy LLP's present representation of me as grounds to seek Allen & Overy LLP's recusal from its continued representation of the Company.

_____

By:

---

[2]  The term Company shall be defined to include all the Debtors that filed for bankruptcy on August 6, 2007: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; American Home Mortgage Servicing, Inc., a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.