## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
In re:                                                         :   Chapter 11
                                                               :
AMERICAN HOME MORTGAGE                                          :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1] :
                                                               :   Jointly Administered
         Debtors.                                              :
                                                               :   **Ref. Docket No. 1713**
-------------------------------------------------------------- x

### DEBTORS' OPPOSITION TO THE EMERGENCY MOTION OF
### DB STRUCTURED PRODUCTS, INC. FOR LIMITED STAY PENDING APPEAL

The debtors and debtors in possession in the above cases (collectively, "AHM" or

the "Debtors"), by and through their undersigned counsel, hereby request that this Court deny the

motion [Docket No. 1713] (the "Stay Motion") by DB Structured Products ("DBSP") for a stay

pending appeal of the Court's order entered October 30, 2007 (the "Sale Order"), which

approved, among other things, the Debtors' sale and assignment of the Debtors' rights to service

loans owned by DBSP (the "DBSP Servicing Rights") under that certain Master Mortgage Loan

Purchase and Servicing Agreement between the Debtors and DBSP (the "MLPSA"). In support

of their opposition to the Stay Motion, the Debtors respectfully represent as follows:

1. In the Stay Motion, DBSP seeks a limited stay of the Sale Order, solely to the

extent that the Sale Order authorizes the transfer and assignment of the DBSP Servicing Rights.

DBSP erroneously suggests in the Stay Motion that a stay pending appeal can be fashioned that

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp.
("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558);
American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

would stay the effectiveness of the Sale Order solely as regarding the DBSP Servicing Rights, and that such stay would not affect the Debtors' ability to close the sale. However, the asset purchase agreement (the "APA") entered into between the Debtors and AH Mortgage Acquisition Co., Inc. (the "Buyer") requires, as a condition to the Buyer closing the sale, that the Sale Approval Order has been entered, has become final, and is not subject to any stay of effectiveness. APA, at § 8.1(b).

2. Accordingly, the APA as submitted with the Sale Order states that any stay of the Sale Order pending appeal authorizes the Buyer to not consummate the sale in its entirety, even if the only issue on appeal is the Debtors' right to transfer the DBSP Servicing Rights to the Buyer.

**A.      The Stay Motion will be rendered moot by an amendment to the APA.**

3. In light of the serious potential for harm to the Debtors' estate based upon DBSP's Stay Motion and anticipated appeal, subsequent to DBSP's filing of the Stay Motion, the Debtors, Buyer, and other parties in interest agreed to a modification of the APA, as the APA relates to the sale and transfer of the DBSP Servicing Rights. Under the APA submitted with the Sale Order, the DBSP Servicing Rights were included in the list of servicing agreements that must be transferred to the Buyer immediately upon closing as a condition thereof. However, the Debtors and Buyer agreed to an amendment to the APA (the "Second Amendment")[2] that places the DBSP Servicing Rights on a separate schedule 1.1(l) of "Disputed Servicing Agreements." Pending a decision on DBSP's appeal, the mortgage loans under the MLPSA will continue to be serviced by the Debtors through the later of Final Closing (as defined in the APA) and September 30, 2008, and the portion of the total purchase price under the APA relating to the

---

[2] The Second Amendment will be filed prior to the hearing on this Motion.

unpaid principal balance of the loans serviced under the MLPSA will be escrowed, subject to the final resolution of the appeal.

4. Based on the Second Amendment, the Debtors submit that the Stay Motion is moot, as the amended APA now affords the Debtors the opportunity to close the sale despite the existence of DBSP's appeal. At the same time, the Second Amendment preserves DBSP's rights if successful on appeal, and would not render such appeal moot.

5. Upon information and belief, the Buyer agreed to the Second Amendment to permit a closing despite DBSP's appeal only because of the relatively small unpaid principal balance relating to the DBSP Servicing Rights.[3]

**B.     Even if the Stay Motion were not moot, DBSP would not have satisfied the standard for obtaining a stay pending appeal.**

6. A stay pending appeal constitutes extraordinary relief for which the moving party carries a heavy burden. Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985) ("[o]n a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy"); Belcher v. Birmingham Trust Nat'l Bank, 395 F.2d 685, 686 (5th Cir. 1968) (stay pending appeal is an "extraordinary remedy"). Stays pending appeal "are a disfavored remedy because they interrupt the ordinary process of judicial review and postpone relief for the prevailing party." Dellums v. Smith, 577 F. Supp. 1456, 1457 (N.D. Cal. 1984), rev'd on other grounds, 797 F.2d 817 (9th Cir. 1986).

---

[3] The unpaid principal balance on the loans owned by DBSP is less than $180 million. There is no guarantee, and the Debtors believe it is unlikely, that the Buyer would be inclined to make similar accommodations with respect to other servicing rights to be transferred under the APA. Thus, the Debtors reserve all rights to contest similar requests of this court for stays pending appeal, and do not concede that any such requests, including DBSP's Stay Motion, have any merit.

7.    Federal Rule of Bankruptcy Procedure 8005 governs appeals from an order of the Bankruptcy Court and authorizes the Court under limited circumstances to stay an order pending an appeal therefrom. Fed. R. Bankr. P. 8005. In this Circuit, the applicable legal standard for determining whether to grant a stay is similar to the standard for a preliminary injunction request. Specifically, the Third Circuit Court of Appeals has held that courts must consider the following four factors in deciding whether to issue a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and
>
> (4) where the public interest lies.

Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); see also, In re ANC Rental Corp., 2002 WL 1058196, at *2 (D. Del. May 22, 2002). If the movant *fails to make a showing on any one of these four factors*, the court may deny the stay. Id. (citing In re Blackwell, 162 B.R. 117, 120 (E.D. Pa. 1993)) (emphasis added).

*i.    Likelihood of success on the merits.*

8.    To succeed on appeal, a party seeking a stay pending appeal must first demonstrate that this Court committed clear error in approving the sale. An appellate court would need to be left with the "'definite and firm conviction that a mistake has been committed.'" In re Del. & Hudson Ry. Co., 124 B.R. 169, 178 (D. Del. 1991) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Numerous objections to the proposed sale were filed by numerous interested parties, including two objections and a sur-reply from DBSP. The Court held a week-long trial on the Debtors' motion to approve the sale. As was

obvious to everyone in the courtroom throughout the sale hearing, this Court deliberated with great care after considering the evidence presented and the arguments of counsel, including the objections and arguments of DBSP, and ultimately ruled, based both upon its own findings of fact and upon several theories of applicable law, in the Debtors' favor. The Debtors believe that the record amply justifies the Court's decision. Yet, even assuming, *arguendo*, that reasonable minds can differ, DBSP must demonstrate that the Court's factfinding constitutes "clear error." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Based on this very high standard of review on appeal, even if the Stay Motion was not mooted, the Debtors submit that DBSP could not demonstrate a likelihood of success on the merits of its appeal.

ii.      *Irreparable harm to the moving party.*

9.      Even if the Buyer had not agreed to modify the APA to carve out the DBSP Servicing Rights and render the Stay Motion moot, no irreparable harm would have been suffered by DBSP to justify the grant of a stay pending appeal. The only identified harm – that absent a stay section 363(m) may render its appeal moot – is insufficient, by itself, to merit a stay pending appeal. Westinghouse Elec. Corp., 949 F.2d at 658 (holding that the fact that the decision on the stay may be dispositive of the appeal does not by itself justify "pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant" absent a stay); In re Trans World Airlines, Inc., 2001 Bankr. LEXIS 723, at *28 (Bankr. D. Del. Mar. 27, 2001) (holding that a threatened loss of appellate rights under section 363(m) is not sufficient, without more, for a showing of irreparable harm); In re Edwards, 228 B.R. 573, 580 (Bankr. E.D. Pa. 1999) (the fact that absent a stay, appeal will be rendered moot under 363(m), is not sufficient by itself to meet the movant's burden of establishing irreparable

harm); In re Baldwin United Corp., 45 B.R. 385, 386 (Bankr. S.D. Ohio 1984) (finding that if the

court were to accept the argument that section 363(m) is sufficient for a showing of irreparable

harm, then every order permitting the sale of property under section 363(b) would be stayed

pending appeal, a result clearly contrary to the purpose of § 363(m)). DBSP has failed to

articulate any harm it would suffer without a stay, let alone irreparable harm.[4]

        10.     Further, the Court heard evidence during the week-long sale hearing

regarding the two-step closing process built into the APA, which will ensure continuity of

service to the consumers under the mortgage loans being serviced. If no stay is granted and the

Buyer closes under the APA, there will be no decrease in the quality of servicing to be provided

to borrowers, which will preserve and protect the value of the mortgage loans to lenders such as

DBSP.

*iii.*    *Irreparable harm to the Debtors.*

        11.     As stated above, absent the Second Amendment which renders the Stay

Motion moot, the Buyer was not obligated to close unless or until the Sale Order became final

and not subject to any stay. The Court is certainly aware that there is an immediate need for the

Debtors to complete a sale of their servicing business. If the Buyer exercised its rights under the

APA to walk away from the sale based upon the Sale Order not becoming a final, unstayed order

(instead of modifying the APA for purposes of carving out the DBSP Servicing Rights from the

list of servicing agreements required to be delivered), the consequences to the estates would be

dire. Parties, including federal agencies, would likely seek to terminate their servicing

---

[4] To the extent DBSP argues that it could suffer monetary damages absent a stay, such damages would be nominal, at best. Further, monetary damages incurred do not constitute irreparable harm. Sampson v. Murray, 415 U.S. 61, 90 (1974); Manakee Prof'l. Med. Transp. Serv. v. Shalala, 71 F.3d 574, 581 (6th Cir. 1995); Tri County Home Health Servs., Inc. v. United States HHS (In re Tri County Home Health Servs., Inc.), 230 B.R. 106, 112 (Bankr. W.D. Tenn. 1999).

agreements with the Debtors. Because the Debtors are no longer originating mortgage loans, the value of the Debtors' servicing rights would continue to decline based upon ordinary business factors (such as the payment and refinancing of mortgage loans) as well. If the Buyer were unwilling to close the sale in the face of a stay or an appeal of the Sale Order, all value from the Debtors' servicing business could be lost. When viewed in contrast to the total absence of harm to a potential appellant, whose loans will continue to be serviced at the same or better level after the closing of the APA, a stay pending appeal is inappropriate.[5]

iv.          *Public Interest.*

12.    An appeal of the Sale Order would center upon whether the Debtors are entitled to transfer mortgage loan servicing rights from one entity to another, where the buyer entity will consist of the same personnel, servicing facilities and procedures, or whether the objecting party is entitled to force a forfeiture of the Debtors' rights to service the mortgage loans. If the sale closes, the objecting party *arguably* could find that its appellate rights are moot. Conversely, if the sale does not close because a stay is granted and the Buyer is unwilling to close, hundreds of thousands of consumers whose mortgages are serviced by the Debtors stand to be harmed.

13.    If a closing occurs under the APA, servicing of loans will continue uninterrupted. However, if a stay were granted and the Debtors were unable to close, all of the stability that has been negotiated for under the APA would be replaced by chaotic litigation with numerous parties, which the Debtors would have to fight with dwindling resources. These

---

[5] Indeed, the total absence of harm uncovers DBSP's true goal of effecting a forfeiture of the DBSP Servicing Rights so DBSP can obtain such rights for free, as opposed to permitting the Debtors to transfer the DBSP Servicing Rights for value, which value will be distributed to the Debtors' creditors, including the Administrative Agent, who lent money to the Debtors against the value of the DBSP Servicing Rights, among others.

circumstances could have serious negative consequences on the servicing of consumers' loans. As such, a stay, and the potential consequences arising thereafter if the Buyer were to exercise its right to not close the sale, would seriously harm the public interest, both in terms of the creditors of the Debtors which would potentially lose out on significant value obtained by the estates through closing of the servicing sale, and in terms of the individual customers of the Debtors who would face further uncertainty regarding the status of the servicer of their home loans.

14.    If the Buyer had not agreed to modify the APA for purposes of designating the DBSP Servicing Rights as disputed, the Debtors submit that DBSP would have been required, at minimum, to post a bond in the full amount of the Purchase Price (as defined in the APA), which is approximately $500 million, given the risk that the Buyer would exercise its right to not close in the face of a stay or appeal of the Sale Order.

15.    The purpose of a bond is to protect the non-appealing parties from *potential* losses resulting from the stay. In re United Merch. & Mfrs., Inc., 138 B.R. 426, 430 (D. Del. 1992) (citing In re Alwan Bros. Co., 112 B.R. 294, 296 (Bankr. C.D. Ill. 1990)); see Normco., 1997 WL 695722, at *2 (citing Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 760 (D.C. Cir. 1980) (the purpose of a bond is to secure the opposing party from loss resulting from a stay of execution). The bond is protective; there is no requirement that the adverse parties demonstrate *actual* losses that will result from a stay.

16.    As stated above, a failure to close the sale would potentially result in the Debtors' estates losing all value for the servicing rights and, absent the limited modification agreed to by the Buyer in this circumstance, the Debtors would have been faced with precisely this risk in connection with DBSP's Stay Motion. To the extent the Stay Motion was not mooted by the Second Amendment, and the Court had been inclined to grant the stay pending appeal, the

appropriate amount of a bond to secure the Debtors from loss would have been the full Purchase Price.

## CONCLUSION

Based upon the amendment to the APA agreed to among the Debtors, Buyer, and other parties in interest, the Debtors respectfully request that this Court deny the Stay Motion as moot, or if the Court finds it is not moot, deny the Motion based on its lack of merit, and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       November 5, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession