# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                                   :  Chapter 11
                                                         :
                                                         :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                   :
HOLDINGS, INC., a Delaware corporation, et al.,[1]       :  Jointly Administered
                                                         :
    Debtors.                                             :  Ref. Docket No. 1778, 1791
                                                         :
-------------------------------------------------------- x
```

### DEBTORS' (I) OBJECTION TO EXPEDITED MOTION TO SHORTEN NOTICE AND FOR EMERGENCY HEARING ON THE MOTION AND JOINDER OF UBS REAL ESTATE SECURITIES INC. TO EMERGENCY MOTION OF DB STRUCTURED PRODUCTS, INC. FOR LIMITED STAY PENDING APPEAL; AND (II) MOTION TO STRIKE PORTIONS OF THE MOTION AND JOINDER OF UBS REAL ESTATE SECURITIES INC. TO EMERGENCY MOTION OF DB STRUCTURED PRODUCTS, INC. FOR LIMITED STAY PENDING APPEAL

The debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), by and through their undersigned counsel, hereby request that this Court enter an order (i) denying the *Expedited Motion to Shorten Notice and For Emergency Hearing on the Motion and Joinder of UBS Real Estate Securities Inc. to Emergency Motion of DB Structured Products, Inc. For Limited Stay Pending Appeal* [Docket No. 1791] (the "Motion to Shorten"); and (ii) striking portions of the *Motion and Joinder of UBS Real Estate Securities Inc. to Emergency Motion of DB Structured Products, Inc. For Limited Stay Pending Appeal* [Docket No. 1778] (the "UBS Motion") to the extent that the UBS Motion requests relief beyond that sought in the *Emergency Motion of DB Structured Products, Inc. For Limited Stay Pending*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

*Appeal* [Docket No. 1713] (the "DB Motion"). In support of the relief requested herein (the "Objection"), the Debtors respectfully represent as follows:

1. The Debtors file the Objection in response to the improper attempt by UBS Real Estate Securities Inc. ("UBS") to seek relief that is beyond the scope of relief requested in the DB Motion, two days before a hearing on the DB Motion is scheduled.

2. DB Structured Products, Inc. ("DB") filed the DB Motion on October 30, 2007, the same day that the order approving the Debtors' sale of its servicing business [Docket No. 1711] (the "Sale Order") was entered by the Court. The DB Motion was accompanied by a motion to shorten notice, and the Court scheduled a hearing on the DB Motion to take place on November 7, 2007. The Court's scheduling of the DB Motion for hearing on November 7 afforded the Debtors a reasonable time to respond.[2]

3. Notably, the DB Motion only seeks to stay the Sale Order insofar as the Sale Order authorizes the transfer of DB's rights under a servicing agreement between DB and the Debtors.

4. By its Motion to Shorten, UBS seeks to expedite consideration of the UBS Motion, requesting that this Court permit the UBS Motion to be considered on two calendar days notice with an objection deadline of approximately twenty-four hours.[3] The basis for this extremely short time frame appears to be, quite simply, that UBS wishes to be heard prior to the ten-day appeal period for the Sale Order expires pursuant to Bankruptcy Rule 6004(h).

---

[2] The Debtors timely filed a response to the DB Motion on November 5, 2007 (the "Response"). As indicated in the Response, the Debtors and AH Mortgage Acquisition Co., Inc. (the "Buyer"), in consultation with the Official Committee of Unsecured Creditors and Bank of America, N.A., as Administrative Agent, agreed to amend the asset purchase agreement with the Buyer (the "APA") in a manner which would delay the transfer of the DB servicing rights pending appeal and obviate any need for a stay.

[3] The caption of the UBS Motion indicates that UBS initially demanded that the Debtor respond to the UBS Motion in less than six hours after the UBS Motion was filed. The Motion to Shorten suggests that the Debtors should be granted an additional twenty hours to file its response to the UBS Motion.

Certainly, this is not a deadline that could have caught UBS by surprise. DB filed the DB Motion, with detailed arguments in support of its position, on the day that the Sale Order was entered. The UBS Motion, which does little more than incorporate arguments of DB by reference, was filed six days later.

5. UBS argues that the issues raised in the UBS Motion are identical to those raised in the DB Motion,[4] so no prejudice would result in shortening notice on the UBS Motion. This is simply untrue.

6. First, the issues raised by the UBS Motion and the DB Motion are not identical, because no loans owned by UBS are transferred pursuant to the Sale Order. UBS and DB do not stand in the same shoes as each other. The UBS Motion is truly a separate and distinct motion, dressed up in a joinder's clothing. The DB Motion did *not* request a stay of the Sale Order insofar as the Sale Order authorizes the transfer of *UBS's* rights under a servicing agreement between **UBS** and the Debtors (defined in the UBS Motion as the "RESI MLPSA"). Accordingly, the relief sought by UBS, requesting a stay of the effectiveness of the Sale Order as it relates to the transfer of the rights to service *UBS's* loans, is entirely new, and is beyond the scope of what was requested in the DB Motion and addressed in the Debtors' Response.[5]

7. Second, it is entirely unclear what UBS seeks to stay. By the DB Motion, DB seeks to stay the effectiveness of the transfer of rights to service a portfolio of loans owned by DB and serviced by the Debtors, with an unpaid principal balance of less than $180 million.

---

[4] Incredibly, UBS offers no explanation for why, if the issues in the DB Motion and UBS Motion are identical, it took UBS until mere hours before the agenda deadline for the November 7 hearing to file the UBS Motion, particularly since the UBS Motion simply parrots the arguments made by DB in the DB Motion.

[5] To the extent that UBS seeks to join in the relief sought by DB – requesting a stay of the Sale Order insofar as the Sale Order authorizes the transfer of *DB's* rights under a servicing agreement between *DB* and the Debtors – the Debtors submit that UBS lacks standing to do so, as UBS has no interest in, nor is it a party to, the agreement between DB and the Debtors. This, however, belies the fiction that the UBS Motion is a true joinder in any sense.

The testimony at trial, and the arguments of the parties at the sale hearing, focused on these loans serviced through the servicing agreement entered into prepetition between DB and the Debtors (defined in the DB Motion as the "MLPSA"), and did not deal with securitized loans, which are serviced pursuant to separate agreements. Based on the record at the sale hearing, and the limited relief requested in the DB Motion, DB's anticipated appeal of the Sale Order relates solely to the loans *owned* by DB, a fact made clear by DB in the DB Motion.

8.  The UBS Motion attempts to mirror the arguments in the DB Motion but fails to indicate what loans UBS owns that it believes are implicated by the Sale Order. In fact, the Debtors' records indicate that they do not service *any* loans owned by UBS through the RESI MLPSA. Any loans that previously may have been owned by UBS and serviced by the Debtors were transferred by UBS into one of a number of securitization trusts, and the trustees of such trusts have consented to the entry of the Sale Order.[6]

9.  Third, significant prejudice would result in shortening notice for the UBS Motion. The Debtors and other parties in interest have worked diligently in the days following the filing of the DB Motion to reach a resolution that, the Debtors submit, moots the DB Motion.

---

[6] To the extent UBS objects to the effect of the Sale Order with respect to loans UBS does not own, it is questionable whether UBS has standing to be heard on appeal. In any event, since no loans are owned by UBS, UBS cannot make the requisite showing that (i) it is likely to succeed on the merits, (ii) it risks irreparable harm absent a stay, (iii) a stay will not injure other interested parties, and (iv) the public interest militates in favor of a stay. Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); see also, In re ANC Rental Corp., 2002 WL 1058196, at *2 (D. Del. May 22, 2002). Because UBS owns no loans that are serviced under the RESI MLPSA, and because UBS does not own the loans that were transferred to various securitized trusts, it is difficult to discern any harm UBS would face absent a stay. Further, for the reasons set forth more fully in the Debtors' Response to the DB Motion, which is incorporated as if set forth fully herein, there is a risk of significant harm to the Debtors if the Sale Order is stayed. The Debtors reserve their rights to respond fully to the merits of the UBS Motion if properly noticed for a hearing in the future, including the right to assert that UBS would be obligated to post a bond in the full amount of the purchase price to be realized by the Debtors under the APA.

The purposeful delay on the part of UBS in filing the UBS Motion has severely impeded the ability of the Debtors to fully respond to the issues raised by UBS.

10.    Finally, the timing of the UBS Motion smacks of gamesmanship. UBS was certainly aware of the entry of the Sale Order, and was likely aware of the DB Motion shortly after its entry.[7] Rather than providing the Debtors with notice and as much opportunity as possible under the circumstances to respond to the UBS Motion, UBS waited until approximately 10:15 a.m. – immediately before the Debtors are required by this Court's Local Rules to submit an agenda for the November 7 hearing – to request entirely new relief from this Court.[8] UBS's attempt to interject additional requests for relief into the November 7 hearing at the eleventh hour is untimely and inappropriate.

11.    The Court should not countenance UBS's last-minute Motion to Shorten, which foments an "emergency" of UBS's own creation. The Motion to Shorten should be denied, or to the extent the Court is inclined to grant the Motion to Shorten, the Debtors should be granted a reasonable period of time in which to respond thereto.

12.    UBS also appears to argue that it is entitled to the affirmative relief it requests by way of a "joinder" in the DB Motion. As stated above, UBS's "joinder" is nothing of the sort. UBS's "joinder" to the DB Motion is irrelevant to the Court's determination as to the basis for staying the Sale Order as to the loans DB owns, as the facts alleged in the UBS Motion relate to a completely different set of loans and a completely different set of factual circumstances.

---

[7] UBS's Delaware counsel, who also represents DB in connection with the DB Motion, filed the DB Motion six days ago on behalf of DB.

[8] Additionally, UBS attempts to raise additional issues that should have been raised in the UBS Motion for the first time in the Motion to Shorten, which was filed at approximately 4:00 p.m. on November 5.

5

13. Pursuant to Rule 12(f), made applicable by Fed. R. Bankr. P. 7012(b), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter...." Fed. R. Civ. Pro. 12(f). "Rule 12(f) was substantially derived from former equity Rule 21 and reflects an inherent power of the court to reduce pleadings, to expedite the administration of justice and to prevent abuse of its process." *Johnson v. McDow (In re Johnson)*, 236 B.R. 510, 521 (D.D.C. 1999), citing *Manville Sales Corporation v. Paramount Systems, Inc.*, 1988 U.S. Dist. LEXIS 4751 (E.D. Pa. 1988). UBS's attempt to seek affirmative relief under the guise of a "joinder" to the DB Motion, is precisely the sort of abusive conduct that justifies the striking of the UBS Motion.

**[continued on next page]**

WHEREFORE, the Debtors respectfully request that this Court enter an order (i) denying the Motion to Shorten, (ii) striking the UBS Motion to the extent that the UBS Motion requests relief beyond the limited relief requested in the DB Motion, and (iii) granting any other and further relief the Court deems just and appropriate.

Dated: Wilmington, Delaware
November 6, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession