# **EXHIBIT A**

Settlement Agreement

EXECUTION COPY

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is entered into as of the

22nd day of October, 2007 by **Bear Stearns Mortgage Capital Corporation** ("BSMCC") and

**EMC Mortgage Corporation** ("EMC") (collectively, "Plaintiffs"), on the one hand, and

**American Home Mortgage Investment Corporation, American Home Mortgage**

**Corporation, American Home Mortgage Acceptance Inc.,** and **American Home Mortgage**

**Servicing, Inc.** ("Debtor-Defendants"), on the other.

WHEREAS, on August 6, 2007 (the "Commencement Date"), the Debtor-

Defendants and other of their affiliates filed voluntary petitions for relief under chapter 11 of title

11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court

for the District of Delaware;

WHEREAS, BSMCC and the Debtor-Defendants are parties to a Whole Loan

Master Repurchase Agreement dated as of June 23, 2004 and, together with Deutsche Bank

National Trust Company (the "Custodian"), a Custody Agreement dated as of June 23, 2004, (as

amended, supplemented and otherwise modified on November 22, 2004 and August 29, 2005,

the "Repurchase Agreement");

WHEREAS, on or about August 24, 2007, Plaintiffs commenced an Adversary

Proceeding (the "Adversary Proceeding") by filing a Complaint for Declaratory and Injunctive

Relief against Debtor-Defendants, Adversary Proceeding Number 07-51701 (CSS); and

WHEREAS, Debtor-Defendants have denied, and continue to deny, all liability

with regard to Plaintiffs' claims; and

EXECUTION COPY

WHEREAS, both Plaintiffs and Debtor-Defendants believe it is in their respective best interests to compromise and settle without further litigation and on the terms set forth in this Settlement Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants contained herein, Plaintiffs and Debtor-Defendants (collectively, the "Settling Parties") agree as follows:

1.   Payment and Release of Collateral by Plaintiffs.

a.   In settlement of the Adversary Proceeding and to compensate the Debtor-Defendants for the estimated internal costs associated with transferring Servicing Rights from Debtor-Defendants to Plaintiffs, Plaintiffs will pay to Debtor-Defendants the net sum of ONE-HUNDRED THOUSAND DOLLARS ($100,000) without interest (the "Settlement Amount"). Such payment shall be made payable to American Home Mortgage Servicing, Inc.

b.   Plaintiffs will cause to be transferred to Debtor-Defendants, pursuant to the instructions provided by Debtor-Defendants, the following "Non-MSR-Related Collateral" as defined below:

i)   the security known as AHM 2004-1 IIA with Original Face Amount of $3,015,925 with CUSIP No. 02660TAJ2.

ii)   all Principal and Interest (P&I) received by Bear Stearns on account of the above security based on the following schedule:

9/25/07   $25,941.11

and additional trailing P&I related to the above security. For example, if transfer occurs in October 2007, then the 10/25/07 P&I and 11/26/07 P&I payments.

        iii)    Cash collateral balances unrelated to the P&I payments believed to be $28,051 as of October 10, 2007 based on the collateral statement received from Bear Stearns.

        iv)    Interest on cash balances held by Bear Stearns using an industry standard rate of Fed Funds effective for cash collateral balances held by a swap or repo counterparty.

        c.    Plaintiffs will pay the Settlement Amount and release the Non-MSR-Related Collateral described in Paragraph 1(b) to Debtor-Defendants no later than two (2) business days after completion of Debtor-Defendants' obligations under Paragraph 2 below (the "Settlement Payment Date"), provided, that notwithstanding anything herein to the contrary, in the event Plaintiffs do not timely pay when due, the Settlement Amount shall accrue liquidated damages of $1,000/day calculated from and after the Transfer Date (as defined below), plus the cost of collection, including reasonable attorneys' fees.

        2.    <u>Transfer of Servicing Rights by Debtor-Defendants.</u>  Debtor-Defendants will convey to EMC, no later than November 2, 2007 (the "Transfer Date") all Servicing Rights, as defined below, related to the Purchased Mortgage Loans under the Master Repurchase Agreement, dated as of June 23, 2004, and related to Debtor-Defendants' loan number 1001126393.

        a. Definitions:

        i.    "<u>Servicing Rights</u>" include: (a) all rights to service the Purchased Mortgage Loans; (b) all rights to receive servicing fees, additional servicing compensation (including without limitation any late fees, assumption fees, prepayment penalties or premiums due in connection with a principal prepayment (if any), other penalties, fees or

3

similar payments with respect to the Purchased Mortgage Loans, and income on escrow accounts or other receipt in or with respect to the Purchased Mortgage Loans), reimbursements or indemnification for servicing the Purchased Mortgage Loans, and any payments received in respect of the foregoing and proceeds thereof; (c) the right to collect, hold and disburse Escrow Payments or other similar payments with respect to the Purchased Mortgage Loans, Escrow Accounts and any amounts actually collected with respect thereto and to receive interest income on such amounts to the extent permitted by applicable law; (d) all accounts and other rights to payment related to any of the property described in this paragraph; (e) possession and use of any and all mortgage files in Debtor-Defendants' possession pertaining to the Purchased Mortgage Loans or pertaining to the past, present or prospective servicing of the Purchased Mortgage Loans; (f) all rights and benefits relating to the direct solicitation of the related Mortgagors for refinancing or modification of the Purchased Mortgage Loans and attendant right, title and interest in and to the list of such Mortgagors and data relating to their respective Mortgage Loans; (g) all rights, powers and privileges incident to any of the foregoing; and (h) all agreements or documents creating, defining or evidencing any of the foregoing rights to the extent they relate to such rights and all rights of the Company thereunder including, but not limited to, any clean-up calls and termination options.

        ii.    "Custodial Accounts" means the accounts in which Custodial Funds are deposited subsequent to the Commencement Date and held by Debtor-Defendants pursuant to the Repurchase Agreement.

        iii.    "Custodial Funds" means all funds collected subsequent to the Commencement Date and held by Debtor-Defendants with respect to the related Mortgage

Loans including, but not limited to, all principal and interest funds and any other funds due to the Investor that are maintained by Debtor-Defendants relating to the Purchased Mortgage Loans.

    iv. "Escrow Account" means the accounts in which Escrow Funds are deposited subsequent to the Commencement Date and held by a Debtor-Defendants pursuant to the Repurchase Agreement.

    v. "Escrow Funds" means funds collected subsequent to the Commencement Date and held by the Debtor-Defendants with respect to the Purchased Mortgage Loans for the payment of taxes, assessments, insurance premiums, ground rents, funds from hazard insurance loss drafts, other mortgage escrow and impound items, and similar charges (including interest accrued thereon for the benefit of the Mortgagors under the Purchased Mortgage Loans, if applicable), maintained by Debtor-Defendants relating to the Purchased Mortgage Loans.

    b. Upon the terms and subject to the conditions of this Settlement Agreement, Debtor-Defendants shall, on the Transfer Date, transfer and assign to EMC, and EMC shall, on the Transfer Date, assume from Debtor-Defendants, all right, title, interest and obligation of Debtor-Defendants in and to: (i) the Servicing Rights, and all rights related thereto, (ii) the Advances, (iii) the Custodial Funds and Escrow Funds, (iv) the Mortgage Files in Debtor-Defendants' possession, (v) the exclusive right to enter into arrangements that generate, or to otherwise receive, ancillary income with respect to the Mortgage Loans, and (vi) the right to collect and retain prepayment charges. The Servicing Rights that are being transferred by Debtor-Defendants on the Transfer Date shall be transferred and assigned to and accepted by EMC on an "as is", "where is" and "with all faults" conditions, free of any warranties or representations whatsoever, whether express or implied, except as expressly set forth in this

5

Settlement Agreement. On the Transfer Date, the Debtor-Defendants shall deliver to EMC such other instruments of assignment, transfer and conveyance, and do such other acts as are reasonably necessary to effectuate the transfer, assignment and delivery to EMC of the right, title and interest of the Debtor-Defendants in and to the Servicing Rights to be sold, transferred, assigned and delivered to EMC on such date free and clear of any encumbrances.

c. In connection with the transfer of Servicing Rights from Debtor-Defendants to EMC or any sub-servicer designated by EMC, EMC and Debtor-Defendants shall follow the Servicing Transfer Instructions, attached hereto as Exhibit B. The Servicing Transfer Instructions may be modified by mutual agreement between Debtor-Defendants and EMC.

d. No later than ten (10) days before the Transfer Date hereunder, Debtor-Defendants shall provide EMC with a preliminary tape(s) containing the information necessary to transfer the Servicing Rights to be sold on the Transfer Date and within one (1) business day after the Transfer Date, Debtor-Defendants shall deliver to EMC the final data tapes.

e. No later than two (2) business days prior to the Transfer Date, Debtor-Defendants shall, in accordance with the Servicing Transfer Instructions, provide EMC, EMC's sub-servicer or EMC's other designee with the data, information and materials reasonably necessary for EMC, EMC's sub-servicer or EMC's other designee to service the Mortgage Loans, including, but not limited to, all Mortgage Files or electronic images pertaining to the Mortgage Loans and the related servicing records in Debtor-Defendants' possession, mortgage notes (including e-Notes), riders, loan modification documents, and servicing files, but excluding the final data tapes. Debtor-Defendants shall provide EMC with prior written notice of the carrier, shipping arrangements, and insurance arrangements with respect to the delivery of the Mortgage Files.

6

f. On or before the Transfer Date, Debtor-Defendants shall appoint EMC to be their true and lawful agent and attorney-in-fact, in the form of the Special and Limited Power of Attorney attached hereto as <u>Exhibit A</u>, with respect to each Mortgage Loan in the Debtor-Defendants' name, place, and stead: (i) to effectuate the transfer of servicing to EMC or its designee; (ii) to complete (to the extent necessary) and to cause to be submitted for filing or recording in the appropriate public filing or recording offices all assignments of mortgage, deeds of trust, or similar documents, assignments, or reassignments of rents, leases and profits, in each case in favor of EMC, and all Form UCC-2 or UCC-3 assignments of financing statements and all other comparable instruments or documents with respect to the Purchased Mortgage Loans, and to evidence, provide notice of and perfect such assignments and conveyances in favor of EMC in the pubic records of the appropriate filing and recording offices; (iii) to file or record in the appropriate public filing or recording offices all other Mortgage Loan documents to be recorded which have not been submitted for filing or recordation by Debtor-Defendants on or before the date hereof or which have been so submitted but are subsequently lost or returned unrecorded or unfiled as a result of actual or purported defects therein, in order to evidence, provide notice of and perfect such documents in the public record of the appropriate filing and recording offices; and (iv) to do and perform all acts in connection with the servicing, administration and management of the Purchased Mortgage Loans, including but not limited to: (1) execution and delivery of customary consents or waivers and other instruments and documents; (2) consent to transfers of any Purchased Mortgage Loans and assumptions of the Mortgage Notes and related Mortgages; (3) collect any Insurance Proceeds and other Liquidation Proceeds; (4) effectuate foreclosure or other conversions of the ownership of the mortgage property securing any Purchased Mortgage Loan; (5) to sign any necessary assignments of

7

Mortgage to give fully the lienholder rights over from the Debtor-Defendants to EMC; (6) execute and deliver any and all instruments of satisfaction or cancellation or of partial or full release or discharge and all other comparable instruments, with respect to the Purchased Mortgage Loans, and with respect to the Mortgaged Properties; and (7) execute all documents customarily and reasonably necessary and appropriate for the transfer post-foreclosure of the previously Mortgaged Properties to third parties, and then to collect the sales proceeds from that transfer; provided that all actual out-of-pocket costs incurred by the Debtor-Defendants shall be reimbursed by the Plaintiffs.

g. Notwithstanding the foregoing, Debtor-Defendants shall be responsible for preparing and sending goodbye letters related to the Mortgage Loans at least ten (10) days prior to the Transfer Date, provided that all actual out-of-pocket costs incurred by the Debtor-Defendants shall be reimbursed by the Plaintiffs. EMC shall send hello letters no later than fifteen (15) days after the Transfer Date.

h. Debtor-Defendants will not disburse any funds on the line of credit for all Home Equity Line of Credit ("HELOC") Loans included in the Mortgage Loans as of the close of business one (1) day prior to the Transfer Date. Any request for funds received after the close of business one (1) day prior to the Transfer Date shall be sent via overnight delivery to:

> EMC Mortgage Corporation
>
> Attention: Patty Lester
>
> 2780 Lake Vista Drive
>
> Lewisville, TX 75067

In addition, Debtor-Defendants shall produce the billing statements for the customers on the HELOC Loans as of one (1) day prior to the Transfer Date. All billing file

8

information related to the HELOC Loans, including any prior unpaid bill records, shall be included in the final data tapes to be transferred to EMC within one (1) business day after the Transfer Date.

i. Notwithstanding the foregoing, if a Mortgage Loan already is registered with the Mortgage Electronic Registration System ("MERS"), which enables members to execute and deliver an Assignment of Mortgage Instrument with respect to a Mortgage Loan to MERS for recording in the office of the appropriate local jurisdiction, Debtor-Defendants shall follow the requirement of MERS to reflect in the records of MERS the transfer of the Servicing Rights to the Mortgage Loan from Debtor-Defendants to EMC. Debtor-Defendants shall continue the transmission of recording information of the Mortgage Instruments to MERS after the Transfer Date, until all such recording information is received and transmitted to MERS and EMC, which in any event and under all circumstances shall be completed not later than three (3) days after the Transfer Date. Plaintiffs shall bear all costs associated with the registration of a Mortgage Loan with MERS, to the extent done before the Transfer Date, including, without limitation, the related preparation and recordation of an assignment of Mortgage Instrument, and all costs associated with the reflection of the transfer of Servicing to the Mortgage Loan in the records of MERS. For each Mortgage Loan registered with MERS, Debtor-Defendants shall provide EMC with the MERS mortgage loan identification number in an electronic format acceptable to the parties.

j. No later than five (5) days prior to the Transfer Date, Debtor-Defendants shall provide EMC with an electronic file of the Mortgage Loans which shall set forth whether each Mortgage Loan is or is not covered by a Tax Service Contract as of one (1) business day prior to the Transfer Date (the "Cut-off Date").

k. No later than five (5) days prior to the Transfer Date, Debtor-Defendants shall provide EMC with an electronic file of the related Mortgage Loans which shall set forth whether each Mortgage Loan is or is not covered by fully transferable life-of-loan flood contract as of the Cut-off Date. Within five (5) days following the Transfer Date, Debtor-Defendants shall assign and transfer, in an electronic file format, the transferable life-of-loan flood certifications and contract information to EMC.

l. Debtor-Defendants shall take all such actions as may be necessary to transfer or record all right, title and interest in the Mortgage Loans to EMC and the Servicing Rights with respect to the Mortgage Loans to EMC, consisting of: (i) assigning nominal title to the related Mortgage Loans to EMC; (ii) preparing or causing to be prepared all prior intervening assignments of mortgage instruments, and recording such assignments of mortgage instruments; and (iii) endorsing or causing to be endorsed the related Mortgage Notes. Plaintiffs shall bear all actual out-of-pocket costs associated with the preparation and recording of the assignments of mortgage instruments described in (i) and (ii) above, and the preparation of the endorsements described in (iii) above. Debtor-Defendants shall forward to the Custodian the original recorded assignments of mortgage instruments upon return from the recording office on a weekly basis and forward to EMC a report of all original recorded assignments delivered to Custodian. Debtor-Defendants shall (i) provide or assist EMC in the procurement or execution of such affidavits, land court orders or other documents as it currently uses to evidence EMC's ownership of such Servicing Rights, and (ii) prepare such endorsements or prepare and record such intervening assignments of mortgage instruments as may be required to reflect of record EMC's ownership of such Servicing Rights in any jurisdiction or recording office that refuses to

accept the documents described in clause (i) as proof of EMC's ownership of such Servicing Rights, and Plaintiffs shall in each case bear all actual out-of-pocket costs associated therewith.

m. Debtor-Defendants shall be responsible for ensuring all documents comprising the Mortgage File in the possession of the Debtor-Defendants, related to the Mortgage Loans and that are not already held by the Custodian, are transferred to EMC in a timely manner including, but not limited to, Mortgage Notes (including e-Notes), riders, loan modification documents and servicing files.

n. On or prior to the Transfer Date, Debtor-Defendants and EMC shall execute and deliver the documents required to be executed and delivered under this Settlement Agreement, in form and substance reasonably satisfactory to EMC and Debtor-Defendants, and shall execute and deliver such other instruments or documents as EMC and Debtor-Defendants shall reasonably determine are necessary or appropriate to effectuate or evidence the transactions contemplated hereby.

o. Plaintiffs shall be responsible for all transfer and recording fees, out-of-pocket costs and expenses actually incurred by Debtor-Defendants with respect to the transfer of Servicing Rights, the delivery of Mortgage Loan files and related documents, the preparation and mailing of goodbye letters.

3. Notice of Settlement. Debtor-Defendants or their Counsel shall take all necessary steps, within two (2) days of the execution of this Settlement Agreement, to notify the United States Bankruptcy Court for the District of Delaware, Case No. 07-11047 (CSS) of the settlement of the Adversary Proceeding, and to obtain approval under Fed. R. Bankr. P. 9019, provided that the Settlement Amount shall be kept confidential from third parties other than the Court and the Official Committee of Unsecured Creditors. Notwithstanding anything to the

11

contrary herein, this settlement stipulation is subject to the approval of the Bankruptcy Court. Thereafter, the Settling Parties will cooperate in taking any other action that may be necessary to dismiss the Adversary Proceeding with prejudice and to obtain all necessary approvals.

4.      Representations and Warranties.  Each of the Settling Parties represents that it, she, or he has read and understands the scope and effect of each provision of this Settlement Agreement and has had the opportunity to consult with counsel for further explanation of the Settlement Agreement's terms, covenants, and provisions.  Each of the undersigned Settling Parties represents that it, she, or he has executed the Settlement Agreement freely, voluntarily, and with authority, intending to be bound thereby.  Each party represents that it, she, or he has been duly authorized to enter into this Settlement Agreement.

5.      Costs and Fees.  Except as specified herein, each party will bear its, her, or his own costs, attorneys' fees, and expenses incurred in connection with this Settlement Agreement and all steps necessary to effectuate the terms of this Settlement Agreement.

6.      Cooperation.  The Settling Parties will cooperate in the preparation, execution, and delivery of all documents that may be necessary to implement the purpose of this Settlement Agreement, and to cause the same to have full force and effect.

7.      Not an Admission.  This Settlement Agreement is entered into solely for the convenience of the parties thereto.  Neither this Settlement Agreement nor the fact of its execution will constitute any admission or acknowledgement of liability or wrongdoing on the part of any of the Settling Parties.  The Settling Parties will not offer this Settlement Agreement or the fact of its execution into evidence in any proceeding other than a proceeding to approve or enforce this Settlement Agreement or any of its terms.

12

8.    Controlling Law. The terms and conditions of this Settlement Agreement are contractual in nature and shall be construed and governed in accordance with the laws of the State of New York as applied to contracts entered into and performed entirely within that State.

9.    Jurisdiction. Any and all claims or controversies that arise from or in any way pertain to this Settlement Agreement will be brought in the first instance exclusively before the United States Bankruptcy Court for the District of Delaware. If, however, the United States Bankruptcy Court for the District of Delaware will not accept the dispute, then any claims or controversies that arise from or in any way pertain to this Settlement Agreement will be brought exclusively in the United States District Court for the Southern District of New York or, if competent jurisdiction cannot be found therein, in the Supreme Court of the State of New York, County of New York, and the Settling Parties hereby expressly and irrevocably consent to the exclusive jurisdiction of such courts in connection with any such claim or controversy, and expressly and irrevocably waive any and all objections to such courts' exercise of personal jurisdiction over them.

10.    Confidentiality. The Settling Parties signing below agree that the Settlement Amount, the terms of this Settlement Agreement, and all negotiations relating to this Settlement Agreement (referred to herein as "Confidential Information") shall be kept strictly confidential and shall not be made known to anyone who is not a party to this Settlement Agreement. The Settling Parties expressly agree that they will not disclose Confidential Information to any person affiliated with any media, news, television, radio, broadcast, telecommunications, reporting or publishing entity or organization or any other person, organization or entity who disseminates news to the general public. Notwithstanding the

13

foregoing, this confidentiality provision shall not prevent the Settling Parties or their counsel from responding to valid and enforceable subpoenas.

11.    No Third Party Beneficiaries. Nothing in this Settlement Agreement shall be construed to create any rights enforceable by any party other than Plaintiffs and Debtor-Defendants.

12.    Mutual Limited Release. Effective on the Settlement Payment Date, subject to the performance of all obligations hereunder, Plaintiffs hereby release and waive all claims (as that term is defined in section 101(5) of the Bankruptcy Code), except claims related to principal and interest payments received by the Debtor-Defendants with respect to the Mortgage Loans, against Debtor-Defendants or their affiliates, and the Debtor-Defendants hereby release and waive all claims against Plaintiffs or their affiliates, in each case limited to the Mortgage Loans, the Servicing Rights, and any of the other transactions contemplated by the Repurchase Agreement. The Settling Parties reserve all rights and defenses with respect to the principal and interest payments received by the Debtor-Defendants with respect to the Mortgage Loans.

13.    Integrated Agreement.

Exhibits A and B to this Settlement Agreement are incorporated into and constitute an integral part of this Settlement Agreement.

This Settlement Agreement, together with Exhibits A and B annexed hereto, contains the entire agreement between the Settling Parties and supersedes any and all prior and contemporaneous agreements or understandings, written or oral, with respect to the subject matter hereof. Each of the Settling Parties acknowledges that no promises or inducements have

14

been made that caused any party to execute this Settlement Agreement other than those that are expressly set forth herein.

The headings, subheadings or titles in this Settlement Agreement are used for purposes of convenience only and have no legal force, meaning or effect.

This Settlement Agreement may not be amended or revised except by a writing executed by an authorized representative of each of the Settling Parties.

All notices under this Settlement Agreement shall be sent by fax and first class mail to the following address:

> If to Plaintiffs:    Andrew W. Stern, Esq.
>
> Sidley Austin LLP
> 787 Seventh Avenue
> New York, NY 10019
> Telephone: (212) 839-5300
> Facsimile: (212) 839-5599
>
> If to Debtor-Defendants:  Susheel Kirpalani, Esq.
>
> Quinn Emanuel Urquhart Oliver & Hedges, LLP
> 51 Madison Avenue, 22nd Floor
> New York, NY 10010
> Telephone: (212) 849-7000
> Facsimile:  (212) 849-7100

13.    <u>Signatures and Effective Date.</u>  This Settlement Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.  This Settlement Agreement will become effective as soon as all parts of this Settlement Agreement have been executed by all of the Settling Parties and a complete set of original executed signature pages has been received by counsel for Plaintiffs.

**EXECUTION COPY**

WHEREFORE, the Settling Parties hereby acknowledge their agreement and consent to the terms and conditions set forth above through their respective signatures as contained below.

BEAR STEARNS MORTGAGE CAPITAL
CORPORATION

By: _____
Name: Paul H. Friedman
Title: Senior V.P.


EMC MORTGAGE CORPORATION


By: _____
Name: _____
Title: _____


AMERICAN HOME MORTGAGE
INVESTMENT CORPORATION


By: _____
Name: _____
Title: _____

16

**EXECUTION COPY**

WHEREFORE, the Settling Parties hereby acknowledge their agreement and

consent to the terms and conditions set forth above through their respective signatures as

contained below.

BEAR STEARNS MORTGAGE CAPITAL
CORPORATION

By: _____
Name: _____
Title: _____

EMC MORTGAGE CORPORATION

By: _____
Name:  Debbie Braff
Title:  Senior Vice President

AMERICAN HOME MORTGAGE
INVESTMENT CORPORATION

By: _____
Name: _____
Title: _____

16

**EXECUTION COPY**

WHEREFORE, the Settling Parties hereby acknowledge their agreement and
consent to the terms and conditions set forth above through their respective signatures as
contained below.

BEAR STEARNS MORTGAGE CAPITAL
CORPORATION

By: _____
Name: _____
Title: _____


EMC MORTGAGE CORPORATION

By: _____
Name: _____
Title: _____


AMERICAN HOME MORTGAGE
INVESTMENT CORPORATION

By: _____
Name: _Alan Horn_____
Title: _EVP/General Counsel_____

16

**EXECUTION COPY**

AMERICAN HOME MORTGAGE
CORPORATION

By: _____
Name: _Alan Horn_____
Title: _EVP/ General Counsel____


AMERICAN HOME MORTGAGE
ACCEPTANCE INC.

By: _____
Name: _Alan Horn_____
Title: _EVP/ General Counsel____


AMERICAN HOME MORTGAGE SERVICING,
INC.

By: _____
Name: _Alan Horn_____
Title: _EVP/ General Counsel____

17

**EXECUTION COPY**

## EXHIBIT A

## SPECIAL AND LIMITED POWER OF ATTORNEY AND COVENANTS

### from AMERICAN HOME MORTGAGE SERVICING, INC. in favor of EMC MORTGAGE CORPORATION

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, the Settlement Agreement dated as of October __, 2007 (the "Settlement Agreement") between Bear Stearns Mortgage Capital Corporation ("BSMCC") and EMC Mortgage Corporation ("EMC") (collectively, "Plaintiffs"), on the one hand, and American Home Mortgage Investment Corporation, American Home Mortgage Corporation, American Home Mortgage Acceptance Inc., and American Home Mortgage Servicing, Inc. ("Debtor-Defendants"), on the other, provides for the transfer of the Servicing Rights and the servicing functions by Debtor-Defendants to EMC for certain Mortgage Loans (the "Mortgage Loans"). Initially capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Master Repurchase Agreement, between BSMCC and American Home Mortgage Investment Corporation, dated as of June 23, 2004.

NOW, THEREFORE, **American Home Mortgage Servicing, Inc.**, as the transferor of the related servicing functions for the Mortgage Loans under the Settlement Agreement (hereinafter referred to as "Principal"), acting through its duly authorized officer _____ _____, as the _____ of the Principal, DOES HEREBY:

1.    constitute and appoint each **Authorized Officer** (which are referred to collectively as "Attorneys" and individually as "Attorney") of **EMC Mortgage Corporation**, as the successor servicer, individually, as a true and lawful attorney for Principal (but only for the purposes expressly set forth herein);

2.    for and in the name and stead of Principal, as the seller and prior servicer, and in connection with the servicing of the Mortgage Loans, authorize and empower each such Attorney to:

(a)    endorse, negotiate, deliver and deposit any checks, draft, money order or other form of payment instrument payable to Principal and tendered as payment on the Mortgage Loans;

(b)    endorse, execute, seal, acknowledge, deliver and file (including, without limitation, the recording or filing with the appropriate public officials) the following:

(1)    any documents or instruments (i) to endorse any promissory note for the Mortgage Loan to the Investor or its successor in interest, (ii) to assign any Mortgage or any other security instrument for the Mortgage Loan to EMC as servicer, (iii) to maintain and protect the validity, priority or value of the lien and security interest created by any Mortgage on

the related Mortgaged Property and any other security instrument for the Mortgage Loan, including without limitation the notification of any property tax authorities and any casualty or mortgage insurers with respect to such Mortgaged Property and the Mortgage Loan, (iv) to represent the interests of and act as the lender of the Mortgage Loan in connection with the default, collection, liquidation or foreclosure of any such Mortgage Loan and the related Mortgaged Property, the bankruptcy of the related borrower or any lawsuit or legal proceeding involving the related Mortgaged Property, and (v) to appoint any successor or substitute trustee under a Mortgage that consists of a deed of trust;

(2)    any modifications, waivers, assumptions, amendments or agreements for subordination or forbearance of any Mortgage, promissory note or any other documents related to the Mortgage Loan; and

(3)    any instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments with respect to any Mortgage or the related Mortgaged Property for the Mortgage Loan; and

(c)    institute and pursue foreclosure proceedings or obtain a deed in lieu of foreclosure so as to effect ownership of any Mortgaged Property in the name or on behalf of the Investor and manage and liquidate any resulting REO; and

3.    further authorize and empower each such Attorney, for and in the name and stead of Principal, to (a) file and record this Special and Limited Power of Attorney with the appropriate public officials; and (b) appoint and name such substitute attorneys with all authority and powers hereunder, provided that such substitute attorneys are duly elected and qualified officers of successor servicer.

Principal covenants and grants to the Attorneys full authority and power to execute any documents and instruments and to do and perform any act that is necessary or appropriate to effect the intent and purposes of the foregoing authority and powers hereunder. Principal further ratifies and confirms each act that the Attorneys shall lawfully do or cause to be done in accordance with the authority and powers granted hereunder. The foregoing authority and powers shall not be deemed invalidated solely by reason of any action or omission of any Attorneys appointed hereunder. Principal covenants and agrees that, from time to time at the request of Successor Servicer, Principal shall execute instruments confirming all of the foregoing authority and powers of any Attorneys. Without actual notice to the contrary, any person may rely on authorities and powers granted hereunder and any actions of the Attorneys taken pursuant to such authorities and powers as the valid, binding and enforceable actions of Principal and that all conditions hereunder to the exercise of such actions by the Attorneys have been completed and are satisfied.

**EXECUTION COPY**

This power of attorney is irrevocable by Principal.

IN WITNESS WHEREOF, Principal has caused this instrument to be signed by its duly authorized officer as of October __, 2007.

<div style="margin-left:40%">

**American Home Mortgage Servicing, Inc.**, as Principal


By: _____


Name: _____

Title: _____

</div>


_____
      Witness


## ACKNOWLEDGMENT


STATE OF_____)
                      ) ss:
COUNTY OF_____)

On the ___ day of _____, 2007, before me personally appeared the above-named _____, on behalf of **American Home Mortgage Servicing, Inc.**, to me known and known by me to be the _____ of said corporation, and acknowledged said instrument so executed to be his free act and deed in said capacity and the free act and deed of said corporation.


My commission expires:


_____
      Notary Public

**EXECUTION COPY**

## **EXHIBIT B**

[See Attached]



# EMC Mortgage Corporation

# Servicing Transfer Instructions

# Welcome to EMC Mortgage Corporation!

We are glad to have you as our business partner and look forward to a smooth and successful servicing transfer. EMC will be contacting you to discuss the Servicing Transfer Instructions that were provided to your company and also address any other questions you may have regarding the transfer.

Should you have any questions in the meantime, please feel free to contact your assigned Acquisition Coordinator or the Servicing Account Management Department at: **800-695-7695 x4863 or x7208** or via email at: **servicingacctmanagement@bear.com**.

Thank you for your business and we look forward to a mutual and profitable business relationship.

Sincerely,

Nancy Mixson
Manager – Servicing Account Management

# Table of Contents

Section I        Servicing Transfer Instructions        4
1.01        Electronic Data for Loan Boarding        5
1.02        Other System Reports        5
1.03        Contact and Collection Histories        6
1.04        Data Definitions        6
1.05        Servicing Change Notifications        6
1.06        Hazard Insurance        8
1.07        Optional Products        8
1.08        Taxes        8
1.09        PMI/MIP/HUD        9
1.10        Escrow        9
1.11        Foreclosure        10
1.12        Bankruptcy        10
1.13        Loss Mitigation/Workout        11
1.14        Assumptions and Modifications        11
1.15        Collateral Documents and MERS Instructions        11
1.16        Files        13
1.17        IRS Reporting        15
1.18        Remitting of Funds        15
1.19        Contact Information        19

Section II        ARM Information        21
Section III        HELOC Information        22
Section IV        Interest Only Loans        23
Section V        Repurchase Requirements        24

Exhibit I        Master Record Data File
Exhibit II        ARM Data File Format
Exhibit III        HELOC Data File
Exhibit IV        Final Trial Balance Standard Report Format
Exhibit V        Transaction History Standard Report
Exhibit VI        Imaging Import Requirements
Exhibit VII – A        Remittance Template Actual Basis
Exhibit VII – B        Remittance Template Scheduled Basis
Exhibit VIII        Funds Advice
Exhibit IX        EMC Sample Goodbye Letter

# Section I
# Servicing Transfer Instructions

This document contains the Servicing Transfer Instructions that EMC Mortgage Corporation requires when acquiring the servicing of loans.

**Dates for this servicing transfer are set as follows:**

| | |
|---|---|
| ▪ **Cutoff Date:** | **Month, Day, Year** |
| ▪ **Funding Date:** | **Month, Day, Year** |
| ▪ **Goodbye Letter Date:** | **Month, Day, Year** |
| ▪ **Preliminary Data Tape with Record Layout:** | **Month, Day, Year** |
| ▪ **Transfer Date:** | **Month, Day, Year** |
| ▪ **Final Data Tape with Record Layout to be received by:** | **Month, Day, Year** |

Within **three (3)** business days after the **Transfer Date**, Prior Servicer shall deliver to EMC with respect to such mortgage loans all records, files and information required to complete the Servicing transfer. Unless otherwise specified all reports will be in an electronic format acceptable to Servicer.

The Seller (i) shall comply with any applicable laws and regulations regarding the privacy and security of Consumer Information including, but not limited to the Gramm-Leach-Bliley Act, Title V, Subtitle A, 15 U.S.C. § 6801 et seq., (ii) shall not use Consumer Information in any manner inconsistent with any applicable laws and regulations regarding the privacy and security of Consumer Information, (iii) shall not disclose Consumer Information to third parties except at the specific written direction of EMC, (iv) shall maintain adequate physical, technical and administrative safeguards to protect Consumer Information from unauthorized access as provided by the applicable laws and regulations, and (v) shall immediately notify EMC of any actual or suspected breach of the confidentiality of Consumer Information. Consumer Information includes, but is not limited to, all personal information about Mortgagors (including the Mortgagor's loan number) that is supplied to EMC by or on behalf of the Seller.

Secured data transfer methods and storage media supported by EMC are:

| *Data Transfer Method* | *Storage Media* |
|---|---|
| 1. Bear IFT | 1. CD |
| 2. PGP Encryption, Version 7.0.3 or higher | 2. Optical |
| 3. For other encryption methods, please contact your assigned Acquisition Coordinator. | 3. USB Hard Drive |

4

## 1. Electronic Data for Loan Boarding
Provide one copy each of the following reports that reflects acquisition loan status by the **Preliminary Data Tape Date with Record Layout** and a second copy of each that reflects final loan status by the **Final Data Tape Date with Record Layout/Transfer.**

- Master Status Report with record layout (MSP Users: T-309, Non-MSP Users: **Exhibit I**)

- ARM Data File **Exhibit II** with record layout (Must be provided by both MSP and Non MSP Users)

- HELOC Data File **Exhibit III** with record layout (Must be provided by both MSP and Non MSP Users).

Exhibits I, II and III should be completed and be provided in TXT format tab delineated.

## 2. Other System Reports
Provide one trial balance that reflects acquisition balances by the **Preliminary Data Tape Date with Record Layout**. Provide a second trial balance that reflects final transfer balances by the **Final Data Tape Date with Record Layout/Transfer Date**. Provide the following reports:

- A Preliminary Trial Balance report (MSP Users: 4TB), reflecting acquired balances. This report will include:

    a) Loan Number
    b) Current Principal Balance (*)
    c) Payment Amount (P & I only) (*)
    d) Tax & Insurance Payment Amount (*)
    e) Total Payment Amount (*)
    f) Escrow Balance (*)
    g) Escrow Advance Balance (*)
    h) Suspense Balance (*)
    i) Restricted Escrow Balance/Loss Draft Balance (*)
    j) HUD Balance (if Title One loan) (*)
    k) Late Charge Balance (*)
    l) Mortgagor Recoverable Corporate Advance Balance (*)
    m) Current Due Date
    n) Interest Rate
    o) Deferment Interest Balance
    p) Other Fee Balances

Fields followed with an asterisk (*) should be totaled. Non MSP clients, refer to **Exhibit IV** for the **required** "Final Trial Balance Standard Report" format.

- A Master Record Status Report (MSP Users: T-309) report. Provide one copy that reflects acquisition loan status by the **Preliminary Data Tape Date with Record Layout**. Provide a second copy that reflects final loan status by the **Final Data Tape Date with Record Layout /Transfer Date**

- Transaction histories (MSP Users: 45C and P4CJ) covering the life of loan up to the **Final Data Tape Date with Record Layout/ Transfer Date.** Non MSP clients, refer to **Exhibit V** for the **required** "Transaction History Standard" format. The loan histories must include the customer's loan number, due date, transaction dates, effective date, type of transaction, and transaction amounts for all transactions involving changes to principal and interest, fee assessment, fee repayment, corporate advance assessment, corporate advance repayment, escrow disbursements and payments, and modifications. Each loan history must reflect the final transaction(s) associated with this loan transfer and show all final balances as $0.00.

- An *Interim Servicing Remittance Report* reflecting all activity from the cutoff date to transfer date is to be received by EMC with the final balance report. (MSP Users: S213, S214, S215, P139, S50Y)
- Additional reports as requested in the sections below.

3. **Contact and Collection Histories (servicing notes)** (MSP Users: 54E), Provide a copy of any customer service and collection comments placed on all loans. These can be sent *electronically* or by hard copy. This information needs to be sent no later than the established **Final Data Tape Date with Record Layout/Transfer Date.**

4. **Data Definitions**
Provide Data Definitions along with codes and descriptions for: ARM Plans, ARM Index Codes, all Process and Disbursement Stops, Transaction Codes Listing, Prepayment Penalty Header Codes , Hazard Coverage Type Codes, Foreclosure, Loss Mitigation, Default, REO, Bankruptcy codes, Recoverable Corporate Advance Transaction Code Listing and Master Record Codes.   A Data Definition should be provided by the **Preliminary Data Tape Date with Record Layout** and the **Final Data Tape Date with Record Layout/Transfer.**

5. **Servicing Change Notifications / Letters**
Provide a copy of each of these documents for each loan:

- Goodbye Letter
- Hazard Insurance Mortgagee Change Notification
- Change of Servicing Notification – PMI
- Change of Servicing Notification – Optional Products
- Change of Servicing Notification - Flood Tracking
- Change of Servicing Notification - Tax Tracking
- Change of Servicing Notification - Attorney
- Change of Servicing Notification - Trustee

6

**These notices/letters should be sent no later than the Goodbye Letter Date. A copy of each type of letter template must be submitted to EMC Mortgage for approval via email or fax prior to mailing.**

### Good-bye Letter Information Is As Follows:

On the Goodbye Letter Date, the Seller will inform all Mortgagors in writing of the change in servicer from the Seller to EMC or its designee, all in accordance with applicable law. The Seller's standard goodbye letter must be pre-approved by EMC prior to the Settlement Date. EMC requests that its goodbye letter represented by Exhibit IX or a similar form be used for all Mortgage Loans. Should the Seller choose to use their own form of goodbye letter, the Seller acknowledges that EMC's review of the Seller's goodbye letter will not be a review for statutory or regulatory compliance purposes, and that the Seller will have the sole responsibility for such compliance. In either case, the goodbye letter must identify the effective Servicing Transfer Date, and must include both the Seller Loan number and the new EMC Loan number. A copy of each goodbye letter sent to the mortgagor must be included in the Mortgage File upon shipping.

The following information, as applicable, should be included in each Mortgagor goodbye letter:
All Loans Except HELOCs:
Customer Service Telephone and Hours of Operation:
1-800-723-3004 7:00 am to 9:00 pm, CST, Monday through Thursday and 7:00 am to 7:00 pm, CST on Friday

HELOC Loans
Customer Service Telephone and Hours of Operation:
1-866-475-7329, 7:00 am to 7:00 pm, CST, Monday through Friday

Customer Service Correspondence Address:
EMC Mortgage Corporation
800 State Highway 121 Bypass
Lewisville, Texas 75067-4180

Payment Address:
EMC Mortgage Corporation
PO Box 660530
Dallas, Texas 75266-0530

### The Mortgagee Clause Should Read As Follows:
EMC Mortgage Corporation
It's Successor's and/or Assign's
P.O. Box 7589
Springfield, OH  45501-7589

6. **Hazard Insurance**

Perform the following:

- Cancel all force placed policies on loans effective as of the transfer date and notify the insurance company of the transfer.
- Pay all hazard and flood premiums which become due prior to and within 30 days following **Transfer Date. DO NOT DISBURSE ANY PREMIUMS AFTER THE TRANSFER DATE.** EMC will disburse all premiums after the Transfer Date.

Provide the following:

- A list of policies expired due to unpaid premiums as of the transfer date.
- A list of all loans that have temporary binder coverage as of the transfer date.
- A list of all loans which had been covered under a force-placed policy. Include the force placed carriers, their address, phone number and contact.
- A list of all pending loss drafts, including amounts.
- A separate file with copies of all documentation relating to the loss draft claim including the insurance adjustment, letters, copies of checks, inspection reports, and amounts released to the borrower and/or contractors.
- A list of loans with flood insurance.
- A file from your flood certification vendor containing flood certification data for each loan.

For all lists, include loan number, policy number, and applicable dates. (MSP Users: 10P-3). This information must be sent by the **Transfer Date.**

7. **Optional Products**

If EMC is doing business with the same vendors, transfer the existing coverage. Premiums should be remitted up until the day of transfer to the appropriate vendor.

Provide the following:

- A list of all loans that had an optional product including A&H, life insurance, accidental death insurance, etc. The list should include insurance company, loan number, placement date, monthly premium amount and last monthly premium paid and a short description or code indicating the type of product. This information must be sent 30 days prior to the **Transfer Date.**
- **A copy of the master and/or individual policies for the insurance coverage.**
- If the policy will be canceled notify the vendor, refund any remaining premium to the customer and instruct the customer to contact the vendor to maintain coverage.

8. **Taxes**

Perform the following:

- Pay all items due or that become due within 30 days following **Transfer Date. DO NOT DISBURSE ANY TAXES AFTER THE TRANSFER DATE.** EMC will disburse all items after the **Transfer Date.**

Provide the following:
- As of the transfer date, provide EMC Mortgage Corporation with a detailed report sorted by state including loan number, payee code and tax parcel number for all delinquent taxes on non-escrowed loans.
- *An open items report* for escrowed loans for all pending activity (MSP Users: 10P-2) through the **Transfer Date** + 60 days.
- A detailed report of any outstanding tax issues including the appropriate correspondence and explanation of the situation as of the transfer date.
- A list of all open tax items
- Any tax bills and original tax receipts for the loans being transferred.
- A report listing all loans with multiple tax parcels.

The tax bills and receipts must be sent via overnight mail to:
Fidelity National Tax Services, Inc.
3100 New York Drive
Pasadena, CA 91107

## 9. **PMI/MIP/HUD**
Perform the following:
- Pay all items due or that become due within 30 days following **Transfer Date.**
  **DO NOT DISBURSE ANY PREMIUMS AFTER THE TRANSFER DATE.**
  EMC will disburse all items after the Transfer Date.

Provide the following:
- A list of policies expired due to unpaid premiums, as of the transfer date.
- A list of loans with pending MI claims, as well as all claim documentation for each loan.

On Conventional Loans, provide the following:
- Provide the individual loan PMI certificates
- List of all loans with PMI to include the loan number; PMI company; PMI certificate number; next due date; last amount paid.

For all lists, include loan number, policy number, and applicable dates. This information must be sent by the **Transfer Date.**

Instruct HUD to forward all future renewal billings to:
EMC Mortgage Corporation
MIP Department
P O Box 293150
Lewisville, Texas 75029-3150

## 10. Escrow
Perform the following:
- Pay all interest on escrow through the **Transfer Date** and credit all balances appropriately.
- Effective immediately refrain from performing an escrow analysis prior to the transfer date. If an escrow analysis is required, a copy must be provided.

9

Provide the following:
- List of loans with restricted escrow funds and explanation of funds.
- A copy of the last escrow analysis for all escrowed loans.
- An escrow payee list that includes Payee ID, company name, addresses, phone number, and contact information.

Any reports (hard copy and electronic) available from your system are requested and should include: (MSP Users: 1AT). These reports should be sent to your assigned Acquisition Coordinator.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding. The final reports should be generated as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

11. **Foreclosure**
- ***You must notify the Foreclosure attorney that the loans are being transferred and to proceed with the Foreclosure process. A Foreclosure should not be put on hold without the prior written approval of EMC.***

- Provide a list of loans in Foreclosure, the date referred to the attorney, attorney name and phone number, foreclosure status, who is holding the original documents and any sale dates scheduled within 60 days of transfer.
- A listing of loans with corporate and escrow advances due to delinquency including copies of invoices and escrow ledgers to support these advances. (Include supporting documentation sufficient to identify and verify date, amount, and nature of advances. Examples would include copies of vendor invoices, sub-system detail or other itemized listing by loan.)
- A list of all contact people for the Foreclosure, Bankruptcy, and Foreclosure Claims area.
- Bid instructions for any loans with a sale date occurring within 15 days after the Transfer Date must be provided upon transfer.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding. The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**. (MSP Users: 2FW)

12. **Bankruptcy**

- You must notify your Bankruptcy Attorney that the loans are being transferred and transfer notices need to be filed with the Trustee. Provide a copy of the notice letter to the trustee.
- Provide a list of loans in Bankruptcy including, filing date, case number, district, chapter, post-petition due date, attorney name and phone number, bankruptcy status, copy of the bankruptcy plan, copy of the proof of claim including copies of supporting invoices for any expense included in the plan. (Include supporting documentation sufficient to identify and verify date,

amount, and nature of advances.  Examples would include copies of vendor invoices, sub-system detail or other itemized listing by loan.)
- Loan level listing of all agreed orders or stipulation agreements with the current status on each of the cases.
- A listing of all pending relief from stays within 60 days of transfer.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**. (MSP Users: 1BW)

### 13. Loss Mitigation/Workout
Provide the following:
- A list of all loans with an active repayment plan or pending workout/loss mitigation.  Include the workout file or loss mitigation file including written documentation of the Loss Mitigation/Workout arrangements. Include a copy of the original signed agreement with all terms and conditions as well as copies of all supporting invoices included in the plan.
- Provide a list of any loans currently in a deed-in-lieu process and the status of the deed-in-lieu.
- On Short Sales, provide copies of recent property valuation, Sales contract, HUD-1 Settlement statement, realtor/broker contact information, borrower financials, hardship letter and approval letter.
- Provide a list of all loans pending a VA refund.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

### 14. Assumptions and Modifications
Provide a list of all loans with pending and/or completed assumptions or modifications. Provide a copy of the file including the assumption or modification agreement and all pertinent details, including title search.

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

### 15. Collateral Documents and MERS Instructions

Trailing Collateral Documents for EMC Serviced Loans should be shipped via Overnight Mail to:

> EMC Mortgage Corporation
> Attn: Collateral Management
> 2780 Lake Vista Drive
> Lewisville, Texas 75067-3884

Collateral Trailing Documents include but are not limited to:
- Original Recorded Deeds of Trust/Mortgages
- Final Title Policies
- Original Recorded Intervening Assignments
- Completed Unrecorded Assignments

Servicer should provide EMC with an "Outstanding Collateral Exception Report" at the time of servicing.

In order for the Collateral Management Department to better serve you, attach a transmittal cover sheet with the documents referencing loan number, borrower name and document type. If the documents are 1st and 2nd liens, reference the loan amount for each lien.

### MERS

MERS Delivery Instructions for Loans sold Servicing Released to EMC Mortgage Corporation

### EMC Mortgage Corporation Org ID:  1000221

Direct Registrations must be completed within ten (10) calendar days of the funding date.  Funding date is defined as the date on which interest begins to accrue (loan closing date).

All Transfer of Beneficial and Servicing Rights (TOBR/TOSR) must be completed no later than fourteen (14) days after the effective transfer date (the date defined in the Purchase and Sale Agreement, on which the buyer begins servicing the loans on its servicing system).

Org ID's for Registrations and TOBR/TOSR transfers to EMC.

- Servicer:  1000221
- Investor:  1000221
- Custodian:    Wells Fargo:  1000573
                LaSalle:      1000567

Required Data Elements for MERS Loans:
- MIN#
- MOM Indicator
- Registration Date

MERS Contact:  Questions regarding loan level MERS issues should be emailed to **EMCMERS@bear.com**

16. **Files**

The mortgage files must contain copies of all the documents in the collateral files and all other documents and information relating to the origination and servicing of the mortgage loans through the date on which the files are delivered to the Servicer. (See detailed listings below) Files are to be forwarded to the designated parties listed below in accordance with the time frames specified in this document or the applicable purchase contract or interim servicing agreement. Begin sending these files **immediately after funding and no later than 15 days prior to transfer date**.

The last shipment of files should arrive no later than the **Final Data Tape Date.**
**NOTE: IF YOUR COMPANY CAN PRODUCE ELECTRONIC IMAGES, REVIEW EXHIBIT VI FOR FORMATTING REQUIREMENTS.**

The Servicing Files must be:

- Boxed in Seller loan number order with an inventory sheet and boxes numerically labeled (example: Box 1 of 75, Box 2 of 75, etc.)
- Each box must be clearly marked with the Sub Deal ID/Trade Name **(DO NOT Commingle Deals)**
- 1st and 2nd liens identified separately
- Special loans (i.e. ARMS, Buydowns, HELOCs, etc.) must be boxed separately and labeled as such.
- A contact name and phone number placed on the shipping label for a reference in case any questions may arise.
- All trailing documents must be received by EMC within **three (3)** business days of the transfer date.
- Send a list of the tracking number to the assigned Acquisitions Coordinator.

**All Files and Servicing Trailing Documents Should Be Shipped Via Overnight Mail to:**

**Servicing Files:**
EMC Mortgage Corporation
c/o SOURCECORP
Dock B
Mail Stop: EMC BULK
2200 Chemsearch Blvd.
Irving, Texas 75062

**Servicing Trailing Documents/Default Files:**
EMC Mortgage Corporation
Attn: Acquisitions Coordinator
2780 Lake Vista Drive
Lewisville, Texas 75067-3884

Servicing files should include:
- Copies of current hazard and flood policies
- Copies of all Notice of Change letters for ARM loans
- Notifications of sale to MI companies, insurance agencies, taxing authorities and tax contractors
- Tax service contract information and tax parcel number

Modification/Assumption Files
- Modification, assumption or any other agreement which alters the contractual terms of the loan and /or security instrument

Collection Files
- Collection comments since time of purchase or the prior twelve (12) months, whichever is less

Loss Mitigation/Workout/Forbearance Files
- Copies of any pending or proposed loan workout plans, including but not limited to:
  - Repay Plans
  - Forbearance proposals
  - Modifications
  - Deferment Agreements
  - Deed-in-lieu proposals
  - Assumptions proposals
  - Short sale proposals
  - Copies of all borrower correspondence

Bankruptcy Files
- Servicer's attorney and contact information
- Debtor's attorney and contact information
- BK petition
- Proof of Claim
- Reorganization Plan
- Adequate Protection Order (APO) or Relief of Stay (ROS) order
- ROS motion
- Dismissal/discharge order and/or a list of loans that have been dismissed/discharged

Foreclosure Files
- Trustee/attorney names and contact information
- Breach Letter
- Notice of Default/Complaint
- Foreclosure title report
- Foreclosure bid worksheet (if available)
- Actual/projected foreclosure sale date

REO Files
- Copy of foreclosure deed
- Foreclosure bid worksheet with supporting Broker Price Opinions or Agent Price Opinion attached
- Copies of any property inspection reports
- Copies of any listing agreements
- Copies of any listing activity reports
- Copies of any offers received
- Copies of any rehabilitation work orders and/or contractor invoices

17. **IRS Reporting**

It is the Prior Servicer's responsibility to provide all required IRS reporting information to the IRS covering the period in which your company serviced the loan.

18. **Remitting Of Funds**

All funds must be remitted with backup providing loan level detail in the form of the EMC approved Trial Balance (Exhibit IV), Remittance Report (Exhibit VII-A or Exhibit VII-B as applicable), or in sufficient detail in the form of Exhibit VIII to permit appropriate application of funds including:

- Seller Loan Number
- EMC Loan Number
- Amount of Remittance
- Purpose of Remittance (Escrow, Interim PI, Borrower Payments, etc.)

### A. *After Funding Date and before Transfer Date.*

If you are **NOT** applying funds to the borrower's account (per your MLPA) remit according to the following instructions:

- **Borrower payments and payoffs,** that are received after the Funding Date and before the Transfer Date by Servicers who are not interim servicing or interim reporting, **SHOULD NOT** be applied to the borrower's account and **SHOULD** be remitted to EMC within forty-eight (48) hours of receipt in accordance with the Mortgage Loan Purchase Agreement (MLPA) along with remittance back up in the form of Exhibit VII or Exhibit VIII.

    *Wiring instructions*:    Send notification and wire back up in electronic format to emcfundsadvice@bear.com and send funds as follows:

    Bank Name:  JPMorgan Chase
    For Credit to:  EMC Mortgage Corporation
    ABA# 02100021
    For Credit to Account # 07001224500
    Type:  Borrower Funds (Borrower Name & Account #)
    Sender's Name and Phone #

    *Overnight mailing instructions for checks.* Send notification and remittance back up in electronic format to emcfundsadvice@bear.com. Send items and enclosed back up, including loan level detail to:

    EMC Mortgage Corporation
    Attn: Cashiering Department
    800 State Highway 121 Bypass
    Lewisville, Texas 75067-4180

15

If you **ARE** applying funds to the borrower's account (per your MLPA) remit according to the following instructions:

- **Interim principal, interest and payoff payments,** that are received after the Funding Date and before the Transfer Date by Servicers who interim service and interim report, should be properly posted to the borrower's account and remitted to EMC in accordance with the Interim Servicing Agreement which is an exhibit of the Mortgage Loan Purchase Agreement (MLPA). Refer to the Interim Servicing Agreement for interim servicing instructions.

## B. At Transfer Date

**Short Interim Collections:** Principal and interest amounts and payoff amounts posted to the applicable borrower account on all loans interim serviced and interim reported, must be wire transferred to EMC within three (3) business days of the Transfer Date. See **Exhibit VII-A – Remittance Template for Actual Basis reporting or Exhibit VII-B – Remittance Template for Scheduled Basis reporting, as applicable,** for required format of wire backup. Send notification and wire back up in electronic format to emcfundsadvice@bear.com and send funds as follows.

*Wiring instructions are:*

> Bank Name:  JPMorgan Chase
> For Credit to:  EMC Mortgage Corporation
> ABA# 02100021
> For Credit to Account # 07001227347
> Type:  Interim PI
> Sub-Deal ID: _____
> Attn:  Accounting Acquisitions

**Escrow Funds**

Taxes and Insurance (T&I) balances including suspense balances and claims (if not previously netted from the Funding Amount), are required to be wire transferred to EMC within three (3) business days of the Transfer Date. Send notification and wire back up in the form of Exhibit IV in electronic format to emcfundsadvice@bear.com and send funds as follows.

*Wiring instructions are:*

> Bank Name:  JPMorgan Chase
> For Credit to:  EMC Mortgage Corporation
> ABA# 02100021
> For Credit to Account # 07001227347
> Type:  Escrow Funds
> Sub-Deal ID: _____
> Attn:  Accounting Acquisitions

16

**Corporate or Servicer Advances**
The Prior Servicer should provide a loan-level, itemized accounting of all mortgagor recoverable expenses or advances including supporting documentation sufficient to identify and verify date, amount, and nature of advances. Examples would include copies of vendor invoices, sub-system detail or other itemized listing by loan.   (Fidelity MSP Clients should provide DDCH screen prints for all accounts)

EMC and the Prior Servicer may agree, in advance of the Transfer Date, that Corporate or Servicer Advances may be netted from other funds due EMC. Otherwise, EMC will reimburse the Prior Servicer for Corporate or Servicer Advances upon receipt of a request for interim expenses accompanied by copies of the corresponding invoices.

## C. Funds Received After Transfer Date

**Borrower Payments or Payoffs Received after Transfer**
Payments received on or after the Transfer Date should be properly endorsed to EMC Mortgage Corporation and remitted within twenty four (24) hours of receipt along with remittance back up in the form of Exhibit VII or Exhibit VIII.
> *Wiring instructions*:   Send notification and wire back up in electronic format to emcfundsadvice@bear.com and send funds as follows:

> > Bank Name:  JPMorgan Chase
> > For Credit to:  EMC Mortgage Corporation
> > ABA# 02100021
> > For Credit to Account #07001224500
> > Type:  Borrower Funds
> > Sender's Name and Phone # _____

> *Overnight mailing instructions*:  Send notification and remittance back up in electronic format to emcfundsadvice@bear.com. Send items and enclosed back up including loan level detail to:

> > EMC Mortgage Corporation
> > Attn: Cashiering Department
> > 800 State Highway 121 Bypass
> > Lewisville, Texas 75067-4180

Any payments received 60 days past the Transfer Date must be returned to the mortgagor with a copy of the goodbye letter or other evidence indicating that the loan has been transferred to EMC.  **NOTE: At your option, you may provide EMC with a limited power of attorney; allowing EMC to endorse check(s) made payable to you.**

**NSF Checks received after Transfer**

All borrower checks returned for non-sufficient funds which were not reversed by the Prior Servicer prior to the Transfer Date should be handled as follows:

- Request reimbursement from EMC within ninety (90) days of Transfer Date.

- Forward the NSF item along with a copy of the payment history, NSF date, and amount due back to Prior Servicer.

- Upon receipt, EMC will reverse funds from the appropriate account and forward funds via wire transfer to the Prior Servicer within twenty (20) business days.

Mailing Instructions for NSF Items:

EMC Mortgage Corporation
Attn: Cashiering Department
800 State Highway 121 Bypass
Lewisville, Texas 75067-4180
emccashieringacquisitions@bear.com

**Other Checks Received after Transfer**

All checks received after the Transfer Date other than those for borrower payments, borrower payoffs, and NSF's, should be handled as follows:

- Checks should be properly endorsed.

- Checks should be clearly identified with the Prior Servicer's loan number in the upper right-hand corner.

- Funds should be accompanied by the Funds Advice for post transfer miscellaneous funds, Exhibit VIII, providing a detailed inventory including the Prior Servicer's loan number, EMC loan number, the date the funds were received by the Prior Servicer, amount due each account, and the purpose of each check (i.e., tax refund, loss draft, payment of special insurance, etc.).

- Send notification and remittance back up in electronic format to emcfundsadvice@bear.com. Checks should be forwarded with remittance back up enclosed via overnight mail to:

EMC Mortgage Corporation
Attn: Cashiering Department
800 State Highway 121 Bypass
Lewisville, Texas 75067-4180

18

## 19. Contact Information

**The following numbers are provided for your information; however your primary point of contact for servicing transfers should be your assigned Acquisition Coordinator.**

| | | |
|---|---|---|
| Senior Vice President<br>Acquisition Operations | Debbie Pratt<br>dpratt@bear.com | **214-626-2832** |

**New Loan Boarding**

| | | |
|---|---|---|
| Asst. Vice President<br>Email Address:<br>Fax: | Stephanie Courtney<br>scourtney@bear.com | 214-626-3388<br><br>469-759-4718 |
| Acquisitions Supervisor<br>Email Address:<br>Fax: | LaRena Lewis<br>larena.lewis@bear.com | 214-626-2746<br><br>469-759-4718 |

**Automated Boarding**

| | | |
|---|---|---|
| Manager<br>Email Address:<br>Fax: | Tricia Jarzombek<br>tjarzombek@bear.com | 214-626-2584<br><br>214-626-3704 |
| Supervisor<br>Email Address:<br>Fax: | Letty Bazan<br>lbazan@bear.com | 214-626-2915<br><br>214-626-3704 |

**Servicing Account Management**
**(Seller Post Transfer Issues)**

| | | |
|---|---|---|
| Manager<br>Email Address:<br>Fax: | Nancy Mixson<br>nmixson@bear.com | 214-626-3762<br><br>469-759-4753 |
| Asst. Vice President<br>Email Address:<br>Fax: | Ruth Price<br>rprice@bear.com | 214-626-4863<br><br>469-759-4753 |
| Servicing Account Manager<br>Email Address:<br>Fax: | Joel Martinez<br>joel.martinez@bear.com | 214-626-7208<br><br>469-759-4753 |

**Acquisitions Accounting**

| | | |
|---|---|---|
| Asst Vice President<br>Email Address: | Jason Whitmire<br>jwhitmire@bear.com | 214-626-3611 |
| Supervisor<br>Email Address: | Lori Ziebell<br>ziebell@bear.com | 214-626-3317 |
| Supervisor – Flow<br>Email Address: | Clarence Brown<br>cbrown@bear.com | 214-626-3386 |
| Supervisor – Treasury<br>Email Address: | Liz Tarbutton<br>ltarbutton@bear.com | 214-626-3637 |

19

<u>**Contact Information Continued**</u>

**LSBO**
**(Loans Serviced by Others)**

| | | |
|---|---|---|
| Manager | Teresa Patrick | 972-444-2872 |
| Email Address: | tpatrick@bear.com | |
| | | |
| Supervisor | Tonya McDougald | 972-831-3450 |
| Email Address: | tonya.mcdougald@bear.com | |

**Collateral Management**

| | | |
|---|---|---|
| Supervisor-Quality Control | Paul Stevenson | 214-626-4227 |
| Email Address | pstevenson@bear.com | |
| Exception Research Fax Number | | 214-626-2520 |
| | | |
| Supervisor – Research | Gwen Lillie | 214-626-3903 |
| Email Address | glillie@bear.com | |
| | | |
| Exception Reporting Coordinator | Thomas Simpson | 214-626-2703 |
| Email Address | tlsimpson@bear.com | |
| | | |
| MERS Administrator | Laurie M. Castille | 214-626-2219 |
| Email Address | lcastille@bear.com | |

**Payoff Department**

| | | |
|---|---|---|
| Supervisor | Diane Ruggles | 972-444-4806 |
| Email address | mortgagepayoffs@bear.com | |

**Executive Servicing**
**Conduit Liaison**                emcconduitliaison@bear.com    1-800-695-7695 x3199

# Section II
# ARM Information

Provide:

- All applicable ARM Specifications and Rate and Payment Change Histories.

- An ARM Passport for all MSP Users.(see required fields in Exhibit II)

- A listing of your ARM "Plan" Codes and ARM Index Code Definitions and Descriptions.

- If you keep separate ARM files, include these files when shipping the servicing files.

- A report of the payment options provided to the borrower on all monthly option ARM loans.


**Optional Enhancements (MSP/Fidelity)**

IP 1391- ARM Monthly Options
IP 1416- Interest Only ARM Loans
IP 1830- Interest Only Fixed Rate Mortgage Loans

These reports should be provided for preliminary review by the **Preliminary Data Date** and also at final transfer for boarding.  The final reports should be ordered as of **Transfer Date** and received by EMC on the **Final Data Tape Date**.

**MSP Users refer to Exhibit II for the required ARM passport fields. Non-MSP Users should provide the same critical data for ARMS as referenced in this Exhibit.  This file needs to be in text format (tab delineated).**

21