IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x    Chapter 11

In re:                                                        :
                                                              :    Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC.,    :
a Delaware corporation, et al.,[1]                            :    Jointly Administered
                                                              :
                                        Debtors.              :    **Objection Deadline: November 13, 2007 at 10:00 a.m. (ET)**
                                                              :    **Hearing Date: November 14, 2007 at 10:00 a.m. (ET)**
-------------------------------------------------------------x

## DEBTORS' MOTION FOR AUTHORITY TO MODIFY
## NON-INSIDER EMPLOYEE RETENTION PLAN

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above case (collectively, "AHM" or the "Debtors"), hereby submit

this motion (the "Motion") for entry of an order pursuant to sections 105(a) and 363(b) of the

Bankruptcy Code authorizing the Debtors to modify its non-insider employee retention plan to

deem the assignments of certain of the Debtors' employees complete and pay them their

Deferred Payments and Final Payments (as defined below). In support of this Motion, the

Debtors respectfully represent as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number,
are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage
Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage
Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing,
Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a
New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware
limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation
(7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of
the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address
is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## BACKGROUND[2]

### A.    General Background

1.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.    On August 14, 2007, the Office of the United States Trustee for the District of Delaware (the "Trustee") appointed an official committee of unsecured creditors (the "Committee").

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are section 105(a) and 363(b) of the Bankruptcy Code, the final order approving the Non-Insider Retention Motion, and the order approving the sale of the Debtors' loan servicing business.

### B.    The Debtors' Loan Servicing Business and the Sale Thereof

4.    One segment of the Debtors' business is the loan servicing business (the "Servicing Business"), which is an active and revenue producing unit that is conducted through AHM Servicing. As this Court is well aware, the Servicing Business is an important and profitable part of the Debtors' business. The Servicing Business services loans primarily for the trusts of the Debtors' securitizations and for Fannie Mae and other third-party purchasers of loans originated by the Debtors.

5.    Conducting the Servicing Business includes: (i) collecting and remitting loan payments received from the borrowers; (ii) making required advances; (iii) accounting for

---

[2]    Capitalized terms in the background section shall have the meanings ascribed to them below in this Motion.

DB02:6343110.4                                                                                   066585.1001

principal and interest; (iv) customer service; (v) holding escrow or impound funds for payment of taxes and insurance; and, if applicable; (vi) contacting delinquent borrowers and supervising foreclosures and property dispositions in the event of unremedied defaults. Proper loan servicing requires diligence and sensitivity in order to maximize collections, particularly on delinquent loans, and at the same time compliance with applicable laws and regulations.

6.      On the Petition Date, the Debtors filed an Emergency Motion for Orders: (A) (i) Approving Sale Procedures; (ii) Scheduling a Hearing to Consider Sale of Certain Assets Used In the Debtors' Loan Servicing Business; (iii) Approving Form and Manner of Notice Thereof; and (iv) Granting Related Relief; and (B) (i) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing and Approving Purchase Agreement Thereto; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief [Docket No. 11]. Subsequently, the Debtors filed their Motion for Order Pursuant to Sections 105(a), 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in Such Sale; (C) Directing that Certain Notices of Such Sale and Deadline be Given; and (D) Authorizing, on an Interim Basis, the Debtors to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing [Docket No. 865].

7.      On August 9, 2007, the Court entered an order [Docket No. 113] authorizing certain procedures with respect to an auction for the Servicing Business, and on September 25, 2007 the Court entered an order [Docket No. 937] approving, among other

3

things, certain revised sale procedures and bid protections.

       8.     After a fiercely contested hearing that lasted several days, by Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), this Court approved the sale (the "Sale") of the Servicing Business to AH Mortgage Acquisition Co., Inc. (the "Purchaser") pursuant to the terms of an asset purchase agreement (the "Asset Purchase Agreement").

       9.     Under the terms of the Asset Purchase Agreement, the Sale will close in two steps - an initial (or economic) close (the "Initial Close") currently anticipated to occur within the next couple of weeks and a final (or legal) close (the "Final Close") that is anticipated to take place on or prior to September 30, 2008.  The reason for this two-step process is that currently the Purchaser has not yet satisfied all licensure requirements required to operate the Servicing Business.  In order to accommodate the Purchaser, between the Initial Close and the Final Close (the "Interim Period"), the Debtors will operate the Servicing Business for the benefit of the Purchaser; however, although the Debtors will be operating the Servicing Business during this period, the Purchaser, pursuant to the terms of the Asset Purchase Agreement, is: (1) entitled to all income derived from the Servicing Business, (2) obligated for any losses of the Servicing Business, and (3) required to fund all working capital needs of the Servicing Business, including all the expenses, wages, benefits, etc. related to certain of the Servicing Business employees.  Additionally, under the terms of the Asset Purchase Agreement, during the Interim Period, the Purchaser has the authority to make decisions with respect to certain Servicing Business employees, including setting the salaries

4

and benefits to be provided to those employees.[3]

### C.   The Debtors' Loan Servicing Employees

10.   As noted above, the Debtors are selling their Servicing Business as a going concern. This was accomplished in part because the Servicing Business employees possess the required skill, expertise and familiarity to successfully maintain the Debtors' Servicing Business throughout the sale process. Additionally, the loan servicing employees' knowledge and diligence was crucial in successfully litigating the many disputes that arose in connection with the Sale of the Servicing Business.

11.   Absent the effort from these employees, the Debtors may have been unable to maintain the Servicing Business as a going concern long enough to complete the sale process and may have lost their ability to preserve one of their most valuable assets.

12.   Pursuant to the non-insider employee retention plan (the "Non-Insider Employee Retention Plan"), described in more detail below, Servicing Business employees that are not members of senior management or insiders (the "Non-Insider Employees"), are eligible to receive retention payments up to an amount equal to forty (40) percent of their regular compensation. The Non-Insider Employee Retention Plan was designed to incentivize the Non-Insider Servicing Business Employees to remain employed by the Debtors through the sale of the Servicing Business.

---

[3]   At the Initial Close, the Purchaser will become financially responsible for 300 Servicing Business employees (the "Transferring Employees") including the responsibility to pay the accrued vacation of the Transferring Employees, AHM will remain financially responsible for 28 Servicing Business employees, and 62 Servicing Business employees will be terminated. Upon the Final Close, the Transferring Employees will become employees of the Purchaser.

5

D.    **The Debtors' Non-Insider Retention Plan**

13.    On August 6, 2007, the Debtors filed a Motion for approval of a Non-Insider Employee Retention Plan (the "Non-Insider Retention Motion") [Docket No. 10].  On August 9, 2007, this Court entered an interim order approving the Non-Insider Retention Motion and on August 24, 2007, this Court entered a final order (the "Final Order") approving the Non-Insider Retention Motion.  Pursuant to the Final Order, Non-Insider Employees shall earn retention bonuses on the following terms:[4]

   a.  Non-Insider Employees who work for one week or less will be entitled to double time for hours worked.

   b.  Non-Insider Employees who work for more than one week shall be eligible to earn retention payments payable in an amount equal to forty (40) percent of the employees' total compensation earned during such time interval (each, a "Retention Payment" and, collectively, the "Retention Payments").

   c.  Retention Payments shall be earned daily and payable as follows: (i) twenty (20) percent of the Retention Payment (or eight (8) percent of the employee's regular bi-monthly compensation) shall be payable on the pay date following the bi-monthly period earned (the "Bi-Monthly Payments"); and (ii) for those employees retained less than three (3) months, eighty (80) percent of the Retention Payment (or thirty-two (32) percent of the employee's regular compensation earned during the chapter 11 cases) will be paid when the employee's assignment is complete (the "Deferred Payments").  If, however, an employee is retained for three (3) months or more, partial distributions of the Deferred Payment will be paid monthly to the employee beginning on the last pay date of November (the "Post-Quarter Monthly Payments").  Regardless of whether an employee is entitled to any Post-Quarter Monthly Payments, no less than twenty-five (25) percent of the Retention Payment (or ten (10) percent of the employee's regular compensation) earned during the chapter 11 cases will be held until the involuntary dismissal

---

[4]    The following is a summary of the Non-Insider Retention Plan.  For a complete description of the plan, please refer to the Non-Insider Retention Motion.

DB02:6343110.4                                                                                               066585.1001

of such employee (the "Final Payment"). Non-Insider
Employees who resign or are dismissed for cause prior to the end
of the quarter shall not be eligible to receive any unpaid Post-
Quarter Monthly Payments or the Final Payment.

14.    At the time the Debtors filed the Non-Insider Retention Motion, it was

not contemplated that the sale of the Servicing Business would be structured as a two-step

process with an Interim and a Final Close. Rather, it was envisioned that at the time the

Debtors received the economic benefit from the sale of the Servicing Business, the Servicing

Business employees either would be terminated or transfer to the purchaser and, at that time,

the Servicing Business employees would be paid their Deferred Payments and Final Payments.

### RELIEF REQUESTED

15.    As stated above, with respect to the Servicing Business employees, the

Debtors initiated the Non-Insider Employee Retention Plan in order to successfully maintain

the Debtors' Servicing Business throughout the sale process. Now that the Sale has been

approved and the Debtors will receive the economic benefit of the Sale upon the Initial Close,

the Debtors seek entry of an order authorizing the Debtors to clarify and modify the Non-

Insider Employee Retention Plan to deem the assignments of the Transferring Employees

complete and to pay them their Deferred Payments and Final Payment upon the Initial Close.[5]

Upon payment of the Deferred Payments and Final Payment, the Non-Insider Employee

Retention Plan with respect to the Transferring Employees will terminate[6] and the salaries of

the Transferring Employees will return to the level that would have been in place but for the

---

[5]    The budget attached to the Cash Collateral stipulation recently approved by this Court includes amounts to
pay the Deferred Payments and Final Payments of the Servicing Business employees.

[6]    Except for the Transferring Employees, the Non-Insider Employee Retention Plan will continue with respect
to all non-insider employees currently covered under the plan.

7

Non-Insider Employee Retention Plan with whatever amendments or modifications that may be implemented by the Purchaser after the Initial Close.[7]

## APPLICABLE AUTHORITY

16.     Under the Non-Insider Employee Retention Plan, as approved by this Court, non-insider Servicing Business employees earn a Retention Payment payable in an amount equal to forty (40) percent of their compensation by remaining employed by the Debtors and assisting the Debtors in maintaining the value of the Servicing Business throughout the sale process. While the employees earn their Retention Payment daily, the majority (80% in some instances) is paid upon completion of the employee's assignment, with twenty-five (25) percent held until the involuntary dismissal of such employee. As the Transferring Employees' assignments will be complete upon the Initial Close, in that the Debtors will have successfully sold the Servicing Business and will have received the proceeds from the Purchaser, the Debtors should be authorized to pay them their Deferred Payments and Final Payments and return their salaries to the level that would have been in place but for the Non-Insider Employee Retention Plan with whatever amendments or modifications may be implemented by the Purchaser after the Initial Close.[8] The Debtors believe that this action should be authorized as it is consistent with the intent and purpose of the Non-Insider Employee Retention Plan – providing the Transferring Employees with Retention Payments to

---

[7]  The Debtors understand that the Purchaser has decided to modify the benefits program and increase the salaries of certain of the Transferring Employees after the economic close. Further, the Debtor believes that any increase in salaries or modifications of benefits plans of the Transferring Employees would be an ordinary course transaction and is authorized by the Sale Order. Moreover, since the Purchaser is reimbursing the Debtors for these salaries and benefits, the changes will have no effect on the Debtors' finances.

[8]  Although the Debtors will technically be the employers of the Transferring Employees until the Final Close, for purposes of the Non-Insider Employee Retention Plan their assignments should be deemed complete as of the Initial Close. After the Initial Close, all work performed by the Transferring Employees will be for the benefit of the Purchaser.

8

remain with the Debtors throughout the sale process and then discontinuing the Retention
Payments and paying them their Deferred Payments and Final Payment upon the Debtors
receiving the economic benefit from the Sale.

17.     Section 363(b) of the Bankruptcy Code authorizes the Debtors, with the
Court's approval, to modify the Non-Insider Employee Retention Plan.  Section 363(b)(1)
provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the
ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Court
authorization pursuant to Section 363(b) is appropriate where there exists a sound business
justification for the proposed transaction.  See, e.g., Myers v. Martin (In re Martin), 91 F.3d
389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's
judgment concerning use of property under Section 363(b) when there is a legitimate business
justification); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that
the Third Circuit has adopted the "sound business purpose" test for use of property under
Section 363).

18.     Moreover, where a debtor seeks to use, sell or lease assets of the estate
pursuant to Section 363 of the Bankruptcy Code, the debtor's good faith business judgment
regarding the proposed transaction should not be disturbed absent a showing that the
transaction constitutes an abuse of discretion or is contrary to the interests of the creditors.  See
In re Thrifty Liquors, Inc., 26 B.R. 26, 28 (Bankr. D. Mass. 1982).  Thus, pursuant to Section
363(b)(1), the Debtors, as debtors in possession, may modify the Non-Insider Employee
Retention Plan, if done for a sound business purpose.

19.     The Debtors have determined that the modification of the Non-Insider
Employee Retention Plan to permit the payment of the Deferred Payments and Final Payments

9

to the Transferring Employees upon the Initial Close will accomplish a sound business purpose as the modification is consistent with the intended purpose of the Non-Insider Employee Retention Plan – to retain the services of the Servicing Business employees through the sale of the Servicing Business in order to preserve and maximize the value of that asset.

20.    In requesting the relief sought herein, the Debtors also rely on the provisions of section 105(a) of the Bankruptcy Code. Section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As the relief requested herein will ensure that the purpose of the Non-Insider Employee Retention Plan is achieved, the Debtors believe section 105(a) gives this Court the authority to authorize the Debtors to approve the modifications to the Non-Insider Employee Retention Plan as set forth above.

21.    For the foregoing reasons, the Debtors respectfully submit that the clarification and modification of the Non-Insider Employee Retention Plan is an appropriate exercise of the Debtors' business judgment and is in the best interest of the Debtors, their creditors, and their estates; and should be approved under sections 105(a) and 363 of the Bankruptcy Code.

**NOTICE**

22.    Notice of this Motion will be provided to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America; (iv) Counsel to the Agent for the Debtors' Postpetition Lender; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

10

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form annexed hereto, granting the relief requested in the Motion and such

other and further relief as may be just and proper.


Dated: Wilmington, Delaware
      November 6, 2007        YOUNG CONAWAY STARGATT & TAYLOR, LLP


James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Edward J. Kosmowski (No. 3849)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

11