# EXHIBIT A

## LSB INTEREST ONLY EQUITY LINE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $107,500.00 | 01-21-2005 | 01-21-2020 | 0008016135 | 82400 | 0008016135 | 00701 | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** TONY R. THORPE
TANYA W. THORPE
4516 SOUTHPORT RD
GREENSBORO, NC 27410

**Lender:** Lexington State Bank
(LSB The Bank)
38 West 1st Avenue
Lexington, NC 27292

**CREDIT LIMIT:** $107,500.00                **DATE OF AGREEMENT:** January 21, 2005

**Introduction.** This LSB INTEREST ONLY EQUITY LINE AGREEMENT ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through Lexington State Bank. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Lexington State Bank. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay Lexington State Bank, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "mortgage or deed of trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until January 21, 2020 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of North Carolina, following the perfection of the mortgage or deed of trust, and the meeting of all of our other conditions and will continue as follows: Fifteen (15) years from the opening date. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. Notwithstanding the foregoing, in no event will the time during which you may obtain credit advances on the Credit Line exceed thirty (30) years.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued **FINANCE CHARGES**. You will make 179 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment.

In any event, if your Credit Line balance falls below $100.00, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges; then to any voluntary credit life and disability insurance premiums; and then to unpaid principal.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:00 PM Eastern Standard Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of One Hundred Seven Thousand Five Hundred & 00/100 Dollars ($107,500.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the mortgage or deed of trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the mortgage or deed of trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your property. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your property. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

  **Credit Line Checks.** Writing a preprinted "Special Check" that we will supply to you.

  **Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

  **Other Methods.** Waiver of Fees.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Special Checks in the following circumstances:

  **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Special Check.

  **Post-dated Checks.** Your Special Check is post-dated. If a post-dated Special Check is paid and as a result any other check is returned or not paid, we are not responsible.

  **Stolen Checks.** Your Special Checks have been reported lost or stolen.

  **Unauthorized Signatures.** Your Special Check is not signed by an "Authorized Signer" as defined below.

  **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Special Check.

If we pay any Special Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Special Check. The Special Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Special Checks along with your periodic billing statements; however, your use of each Special Check will be reflected on your periodic statement as a credit advance. We do not "certify" Special Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

  **Credit Line Special Check Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Special Checks.

    **Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $100.00. This means any Special Check must be written for at least the minimum advance amount.

  **In Person Request Limitations.** The following transaction limitations will apply to your Credit Line and requesting an advance in person.

    **Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $100.00.

  **Other Methods Limitations.** The following transaction limitations will apply to your Credit Line and accessing by other methods.

EXHIBIT

| Loan No: 0008016135 | LSB INTEREST ONLY EQUITY LINE AGREEMENT (Continued) | Page 2 |
|---|---|---|

**Other Transaction Requirements. Waiver of Fees.** If your line amount is $10,000.00 or greater, and you elect to receive a minimum advance of $10,000.00 at closing, we (LSB) will pay all applicable fees to third parties and also waive the $50.00 Loan Fee. The initial advance of $10,000.00 or greater must remain outstanding for a minimum period of 90 days. If at any time during that 90-day period the full initial advance is repaid we may, at our discretion, charge your LSB Equity Line account to offset the third parties fees paid on your behalf.

**Authorized Signers.** The words "Authorized Signer" on Special Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Special Checks.** If you lose your Special Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (800) 876-6505. You also can notify us at Lexington State Bank P O Box 707, Lexington, NC 27292.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by a Mortgage in the amount of $107,500.00 dated January 21, 2005 on property located in Horry County, South Carolina.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the mortgage or deed of trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay FINANCE CHARGES, not calculated by applying a Periodic Rate, as set forth below:

**Additional Finance Charges.** The following additional FINANCE CHARGES will be charged to your Credit Line or paid in cash:

| | | | In Cash | |
|---|---|---|---|---|
| Loan Fees (Waived): | | | | $50.00 |
| Flood Fees : | Financed | $10.00 | | |

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the Wall Street Journal's Prime Rate (the "Index"). We will use the most recent Index value available to us as of the first day of the month following a change in the Index for any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect monthly after remaining fixed for one day. In no event will the corresponding ANNUAL PERCENTAGE RATE be less than 4.000% per annum or more than the lesser of 16.000% or the maximum rate allowed by applicable law. Today the Index is 5.250% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.000% | 6.250% | 0.01712% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Payment of Closing Costs.** If you elect to charge your Credit Line Account to pay the closing costs associated with your Credit Line (such as title insurance premiums, appraisal fees, credit report fees, and recording fees), the total of these charges will be reflected as "closing costs" on your first periodic billing statement.

**Returned Items.** You may be charged $20.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $25.00 when you request a stop payment on your account.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Automatic Advance Fee. The amount of this other charge is: 5.00.

**Security Interest Charges.** You agree to pay all security interest charges related to your Credit Line as set forth below:

| Attorney Fees | $325.00 |
|---|---|
| Recording Fees | $13.00 |
| Appraisal Fees | $288.13 |
| Total | $626.13 |

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

**LSB INTEREST ONLY EQUITY LINE AGREEMENT**
(Continued)

Loan No: 0008016135          Page 3

includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Special Checks and any other access devices. Any use of Special Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Special Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Special Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Lexington State Bank, (LSB The Bank), 38 West 1st Avenue, Lexington, NC 27292.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the mortgage or deed of trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Lexington State Bank, (LSB The Bank), 38 West 1st Avenue, Lexington, NC 27292.

**Credit Life Insurance Option.** Credit Life Insurance is not required for this LSB Equity Line Account. No such Credit Life Insurance will be provided unless the attached "Disbursement Request and Authorization" and Separate application for Credit Life Insurance is made and approved.

**Interest After Judgment.** I agree that the rate of interest provided for in this Note and Security Agreement shall apply after you obtain Judgment against me until the Judgment is satisfied.

**Fee.** For any modification, extension, or renewal a fee consistent with North Carolina Law may be charged.

**Waiver of Fees.** If your line is $10,000.00 or greater, and you elect to receive a minimum advance of $10,000.00 at closing, we (LSB) will pay all applicable fees to third parties and also waive the $50.00 Loan Fee. The initial advance of $10,000.00 or greater must remain outstanding for a minimum period of 90 days. If at any time during the 90-day period the full initial advance is repaid we may, at our discretion charge your LSB Equity Line to offset the fees that we paid on your behalf.

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of North Carolina.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the mortgage or deed of trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the mortgage or deed of trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

| | | |
|---|---|---|
| Loan No: 0008016135 | **LSB INTEREST ONLY EQUITY LINE AGREEMENT**<br>(Continued) | Page 4 |

**BORROWER:**

X _____  X _____
TONY R. THORPE                    TANYA W. THORPE

Effective Disbursement Date: _1-21-05_

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

| Loan No: 0008016135 | LSB  TEREST ONLY EQUITY LINE A(  :EMENT<br>(Continued) | Page 5 |

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

> Lexington State Bank
> Post Office Box 707
> Lexington, NC 27293-0707

or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

> Your name and account number.
> The dollar amount of the suspected error.
> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LASER PRO Lending, Ver. 5.25.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved.  - NC  c:\CFI\PL\D25.FC  TR-47483  PR-E

# EXHIBIT B

JAN-21-2005 FRI 03:14 PM BELLAMY                         FAX NO. 8434483022                P. 02

#00080l6135                      869792

**RE RECORDED TO CORRECT THE FRONT PAGE OF THE MTG. TO REFLECT NORTH CAROLINA***

Please return to:
The Bellamy Law Firm
1000 29th Avenue North
Myrtle Beach, SC 29577
Attn: Lois D.

FILED
HORRY COUNTY, S.C.
2005 FEB -1 AM 10:44
BALLERY V. SKIPPER
REGISTRAR OF DEEDS

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on January 13, 2005. The Mortgagor is **Tony R. Thorpe and Tanya W. Thorpe** ("Borrower"). This Security Instrument is given to **Lexington State Bank, a North Carolina Bank** which is organized and existing under the laws of ~~Kentucky~~ North Carolina and whose address is 2804 Fairlawn Drive, Winston Salem, N.C. ("Lender").

Borrower owes Lender the principal sum of **One Hundred and Seven Thousand Five Hundred and no/100(U.S. $107,500.00) dollars.**

This debt is evidenced by Borrower's agreement with Lexington State Bank Interest Only Equity Line Agreement dated the same date as this Security Instrument, which provides for monthly payments, with a maturity date of January 21, 2020.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modification of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in Horry, South Carolina:

See Exhibit "A", attached hereto, for legal description.

which has the address of   8560 Queensway Blvd., #1503 Myrtle Beach, SC 29752
("Property Address");

SOUTH CAROLINA-Single Family-FNMA/FHLMC
UNIFORM INSTRUMENT     Form 3041 9/90
                       Amended 12/93
                       Page 1 of 6                                                Initial: H
                                                                                           TWT

MORTGAGE                           Poor Quality Due To
3916  1267                         Condition of Orginal
                                   Ballery V. Skipper, ROD

EXHIBIT
1267

JAN-21-2005 FRI 03:16 PM BELLAMY          FAX NO. 8434483022          P. 07

22. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall be come null and void. Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. **Waivers.** Borrower waives all rights of homestead exemption in the Property. Borrower waives the right to assert any statute providing appraisal rights which may reduce any deficiency judgment obtained by Lender against Borrower in the event of foreclosure under this Security Instrument.

24. **Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to one hundred fifty percent (150%) of the original principal amount of the Note plus interest thereon, attorney's fees and court costs.

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check Applicable box(es)]

- ☐ Adjustable Rate Rider
- ☐ Graduated Payment Rider
- ☐ Balloon Rider
- ☐ V.A Rider
- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Rate Improvement Rider
- ☒ Other(s) [specify] **Legal Description**
- ☐ 1-4 Family Rider
- ☐ Biweekly Payment Rider
- ☐ Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (Seal) -Borrower
Tony R. Thorpe

_____ (Seal) -Borrower
Tanya W. Thorpe

Witness 1

Witness 2 (Notary)

_____ (Seal) -Borrower

_____ (Seal) -Borrower

STATE OF NORTH CAROLINA - COUNTY OF Forsyth          ACKNOWLEDGMENT

Before me personally appeared the undersigned witness and made oath that s/he saw the within named Borrower sign, seal and as his act and deed, deliver the within written Mortgage; and that s/he, with the other witness herein, witnessed the execution thereof.

Witness 1

Sworn before me this 13th day of January, 2005

Notary Public for North Carolina
My commission expires: Aug 29 2006
(Notary Seal)

OFFICIAL SEAL
Notary Public, North Carolina
County of Forsyth
DAVID F. LUDOLF
My Commission Expires August 29, 2006

Poor Quality Due To Condition of Original
Ballery V. Skipper, ROD

Page 6 of 6

Form 3041 9/90

EXHIBIT "A"

**ALL AND SINGULAR,** that certain **Unit No. 1503, Brighton at Kingston Plantation Horizontal Property Regime,** Horry County, South Carolina, a Horizontal Property Regime established pursuant to the South Carolina Horizontal Property Act, Section 27-31-10, et seq., 1976 South Carolina Code of laws as amended and submitted by Master Deed of Brighton at Kingston Plantation Horizontal Property Regime, dated July 5, 2000 and recorded July 10, 2000 in Deed Book 2279 at Page 212, and as said Master Deed may thereafter be amended from time to time. Together with an appurtenant, undivided percentage interest in the Common Elements, all as defined and set forth in the Master Deed (the Unit and undivided interest in the Common Elements being herein collectively referred to as the "Unit"); Together with all rights and entitlements, and subject to all easements, conditions, and restrictions, as set forth in the Master Deed.

This being the identical property conveyed to the Mortgage by Deed of Jay W. Schwartz, dated January 19, 2005 and recorded January 24, 2005 in Deed Book 2851 at Page 315, records of Horry County, South Carolina.

Poor Quality Due To
Condition of Orginal
Ballory V. Skipper, ROD

/273