IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x  Chapter 11
In re:                                                           :
                                                                 :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                           :
HOLDINGS, INC., a Delaware corporation, et al.,[1]               :  Jointly Administered
                                                                 :
                                        Debtors.                 :  Hearing Date: November 28, 2007 at 10:00 a.m.
                                                                 :  Objection Deadline: November 21, 2007 at 4:00 p.m.
---------------------------------------------------------------- x

**MOTION OF DEBTORS FOR ORDER EXTENDING THE DEADLINE
PURSUANT TO SECTION 365(d)(4) TO ASSUME OR REJECT
<u>UNEXPIRED LEASES OF NONRESIDENATIAL REAL PROPERTY</u>**

The above-captioned debtors and debtors-in-possession (collectively, "<u>AHM</u>" or the "<u>Debtors</u>") hereby move the Court (the "<u>Motion</u>"), by undersigned counsel, pursuant to section 365(d)(4) of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq</u>. (the "<u>Bankruptcy Code</u>") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for entry of an order extending the time for the Debtors to assume or reject any of the leases, subleases or other agreements to which any of the Debtors are a party that may be considered an unexpired lease of nonresidential real property through and including March 3, 2008. In support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF CASE AND JURISDICTION

1. On August 6, 2007 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("<u>AHM Servicing</u>"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007. No trustee or examiner has been appointed.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 365(d)(4) of the Bankruptcy Code, along with Bankruptcy Rule 6006.

## THE DEBTORS' BUSINESS[2]

4. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

5. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference as if fully set forth herein at length.

offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006. For the third quarter of 2006, AHM was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

6. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

7. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

8. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

9. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity

crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

10. On the Petition Date, the Debtors filed a motion [Docket No. 11], seeking authority, *inter alia*, to sell substantially all assets relating to the Debtors' mortgage loan servicing business (the "Servicing Business"). After a week long trial that commenced on October 15, 2007, by Order dated October 30, 2007 [Docket No. 1711], the Court approved the sale (the "Sale") of the Servicing Business to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and supplemented, and including all schedules, exhibits, and attachments thereto, the "APA").

## RELEVANT BACKGROUND

11. To date, the Debtors have filed four motions seeking rejection of certain unexpired leases of nonresidential real property. This Court approved these motions by Orders dated September 20, 2007, October 1, 2007, October 2, 2007, and October 17, 2007 [Docket Nos. 843, 1018, 1110, 1600] (collectively, the "Rejection Orders"). Under the Rejection Orders, the Debtors have rejected the vast majority of their real property leases.

12. On August 15, 2007, the Debtors filed the Motion for an Order, Pursuant to Sections 105, 363, 365 and 554 of the Bankruptcy Code, Establishing Procedures for the (i) Assumption and Assignment of Real Property Leases and/or Other Executory Contracts and (ii) Sale or Abandonment of Furniture, Fixtures and Equipment Located Therein [Docket No. 183] (the "Assumption and Assignment Motion"). Pursuant to the Assumption and Assignment Motion, the Debtors sought to establish procedures to, among other things, assume and assign certain real property leases. The Assumption and Assignment Motion was approved by Order dated August 24, 2007 [Docket No. 359] (the "Assumption and Assignment Order"). To date,

4

pursuant to the Assumption and Assignment Order, the Debtors have assumed and assigned approximately forty (40) unexpired leases of non-residential real property related to the Debtors' loan origination business.

13. On September 28, 2007, the Debtors filed the Motion for an Order Extending the Deadline Pursuant to section 365(d)(4) to Assume or Reject Unexpired Leases of Nonresidential Real Property [Docket No. 1012] (the "Limited Extension Motion"). Pursuant to the Limited Extension Motion, the Debtors requested that the deadline to assume or reject the Debtors' unexpired leases of nonresidential real property related to the Servicing Business, and identified as Purchased Assets (as defined in the APA) pursuant to the Sale, be extended until March 3, 2008. By Order dated October 15, 2007 [Docket No. 1552] (the "Limited Extension Order"), this Court approved the Limited Extension Motion.

14. The Debtors hereby request an extension of the deadline to assume or reject their remaining unexpired leases of nonresidential real property (collectively, the "Real Property Leases"), which would include any and all nonresidential real property leases that (i) have not been rejected pursuant to the Rejection Orders, (ii) have not been assumed and assigned pursuant to the Assumption and Assignment Order, or (iii) are not the subject of the Limited Extension Order.

## RELIEF REQUESTED

15. By this Motion, the Debtors request entry of an order, pursuant to section 365(d)(4) of the Bankruptcy Code, granting a 90-day extension of the original 120-day period to assume or reject nonresidential real property (the "Assumption/Rejection Period"), which

currently expires on December 4, 2007,[3] through and including March 3, 2008. Such an extension of the Assumption/Rejection Period is without prejudice to the rights of the Debtors to seek further extensions of the time to assume or reject any of the Real Property Leases with the consent of the counterparties to the Real Property Leases (collectively, the "Lessors") as contemplated by section 365(d)(4)(B)(ii) of the Bankruptcy Code.

### BASIS FOR REQUESTED RELIEF

16. Section 365(d)(4)(A) – (B) of the Bankruptcy Code provides that:

   (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—

      (i) the date that is 120 days after the date of the order for relief; or

      (ii) the date of the entry of an order confirming a plan.

   (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

      (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

---

[3] The Debtors are serving this Motion upon all known lessors under the Real Property Leases. However, in the event that any Lessor may have been omitted from the service list through inadvertence, clerical error or any other reason, this Court may enter an order extending the time in which the Debtors may assume or reject such Real Property Leases, so long as the Debtors have made a good faith effort to identify and serve all known Lessors. See In re American Healthcare Mgmt., Inc., 900 F.2d 827, 830 (5th Cir. 1990) (holding that an order extending time for debtor to assume or reject leases may be entered by bankruptcy court without affording other parties notice and a hearing). Inclusion or omission of any instrument in or from this Motion does not constitute an admission by the Debtors that such instrument is or is not a true lease. Moreover, the Debtors reserve any and all rights, claims and defenses with respect to characterization of the Real Property Leases pursuant to sections 365(d)(3) and (4) of the Bankruptcy Code or otherwise.

11 U.S.C. § 365(d)(4)(A)-(B). Thus, for "cause" the Court can order a 90-day extension of the period during which a chapter 11 debtor may assume or reject nonresidential real property leases upon the filing of a motion seeking that relief within the Assumption/Rejection Period.

17. Courts have recognized the benefits to granting additional time under section 365(d)(4) of the Bankruptcy Code. See In re Channel Home Ctrs., Inc., 989 F.2d 682, 687-88 (3d Cir. 1993), cert. denied, 510 U.S. 865 (1993); In re GST Telecom Inc., 2001 WL 686971 (D. Del. 2001). As the Third Circuit Court of Appeals has stated, "nothing prevents a bankruptcy court from granting an extension because a particular debtor needs additional time to determine whether the assumption or rejection of particular leases is called for by the plan of reorganization that it is attempting to develop." Channel Home Ctrs., 989 F.2d at 689; see also Coleman Oil Co. v. Circle K Corp. (In re Circle K Corp.), 127 F.3d 904, 909 (9th Cir. 1997), cert. denied, 118 S. Ct. 1166 (1998) (noting that bankruptcy courts often grant debtor's request for an extension).

18. The term "cause" as used in section 365(d)(4) is not defined in the Bankruptcy Code. In determining whether cause exists for an extension of the 120-Day Period, courts have relied on several factors, including the following:

    (1)    whether the debtor was paying for the use of the property;

    (2)    whether the debtor's continued occupation . . . could damage the lessor beyond the compensation available under the Bankruptcy Code;

    (3)    whether the lease is the debtor's primary asset; and

    (4)    whether the debtor has had sufficient time to formulate a plan of reorganization.

South St. Seaport L. P. v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 760-61 (2d Cir. 1996) (quoting Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105-06 (2d Cir. 1982)); see also In re Wedtech Corp., 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987); Channel Home Ctrs.,

989 F.2d at 689 ("[I]t is permissible for a bankruptcy court to consider a particular debtor's need for more time in order to analyze leases in light of the plan it is formulating." (citing Wedtech, 72 B.R. at 471-72).

19. In this case, the Burger Boys and other factors weigh heavily in favor of granting the requested extension. First, the Debtors are currently paying for the use of the properties at the applicable lease rates and are continuing to perform their other undisputed obligations under the Real Property Leases in a timely fashion to the extent required by section 365(d)(3) of the Bankruptcy Code.

20. Second, there is no reason why the Debtors' proposed extension of the time to assume or reject could or would damage the Lessors beyond the compensation that is available to the Lessors under the Bankruptcy Code. Pending the Debtors' election to assume or reject the Real Property Leases, the Debtors will perform their undisputed obligations arising from and after the Petition Date in a timely fashion, to the extent required by section 365(d)(3) of the Bankruptcy Code, including the payment of post-petition rent.

21. Third, certain of the Real Property Leases, including the lease of the Debtors' corporate headquarters in Melville, New York, may be important and valuable assets of the Debtors' estates.

22. Fourth, the Debtors should not be forced at this relatively early stage of their chapter 11 cases to either (i) prematurely assume the Real Property Leases and incur potentially significant and unnecessary administrative claims or (ii) reject the Real Property Leases and lose the opportunity to obtain value for such leases. At this point in the cases, the Debtors have not had an opportunity to fully explore their options. Moreover, the Debtors submit that they have been diligent thus far in these bankruptcy cases in rejecting real property

leases where it was abundantly clear that their creditors and estates would not be benefited, but rather, burdened by the continuation of such leases. Furthermore, the Debtors believe that they have either rejected or assumed and assigned the majority of their unexpired leases of nonresidential real property.

23.     Since the Petition Date, the Debtors have focused primarily on maximizing the value of the Debtors' estates for the benefit of their stakeholders through the orderly liquidation of their assets. To that end, the Debtors have solicited, negotiated and sought approval for the sale of certain of the Debtors' assets. The largest of these, the Sale of the Servicing Business, was approved after a week-long trial that commenced on October 15, 2007. As a result of the expedited and lengthy sale process of the Servicing Business and the other matters that the Debtors faced during the initial stage of these cases, the Debtors have not had ample opportunity to evaluate all of their remaining Real Property Leases.

24.     In sum, the Debtors submit that ample "cause" exists for the Court to extend the Assumption/Rejection Period for the Real Property Leases through and including March 3, 2008.

## NOTICE

25.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the Lessors; (v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order in the form annexed hereto as Exhibit A granting a 90-day extension of the Assumption/Rejection Period for the Real Property Leases through and including March 3, 2008, and such other and further relief as is just and proper.

Dated:   Wilmington, Delaware
         November 8, 2007

                                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                    _____
                                    James L. Patton, Jr. (No. 2202)
                                    Pauline K. Morgan (No. 3650)
                                    M. Blake Cleary (No. 3614)
                                    Sean M. Beach (No. 4070)
                                    Matthew B. Lunn (No. 4119)
                                    Kara Hammond Coyle (No. 4410)
                                    Kenneth J. Enos (No. 4544)
                                    The Brandywine Building
                                    1000 West Street, 17th Floor
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 571-6600
                                    Facsimile: (302) 571-1253

                                    Counsel for Debtors and Debtors in Possession

DB02:6284530.6                                                              066585.1001