IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x   Chapter 11
In re:                                                           :
                                                                 :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                           :
HOLDINGS, INC., a Delaware corporation, et al.,[1]               :   Jointly Administered
                                                                 :
                           Debtors.                              :   Hearing Date: November 28, 2007 at 10:00 a.m.
                                                                 :   Objection Deadline: November 20, 2007 at 4:00 p.m.
---------------------------------------------------------------- x

**MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 363 AND 554 AND BANKRUPTCY RULE 6004 APPROVING
CERTAIN PROCEDURES GOVERNING THE SALE, DONATION OR
<u>ABANDONMENT OF MISCELLANEOUS ASSETS</u>**

The above captioned-debtors and debtors in possession (the "<u>Debtors</u>") hereby move the Court (the "<u>Motion</u>"), pursuant to sections 105(a), 363(b), 363(f) and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for entry of an order (i) approving certain procedures (the "<u>Sale Procedures</u>") by which the Debtors may market and consummate the sales of office furniture, equipment, computers and computer related equipment, and other miscellaneous personal property (collectively, the "<u>Miscellaneous Assets</u>"); (ii) authorizing the Debtors to donate Miscellaneous Assets; and (iii) authorizing the Debtors to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("<u>AHM Holdings</u>") (6303); American Home Mortgage Investment Corp. ("<u>AHM Investment</u>"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("<u>AHM Acceptance</u>"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("<u>AHM Servicing</u>"), a Maryland corporation (7267); American Home Mortgage Corp. ("<u>AHM Corp.</u>"), a New York corporation (1558); American Home Mortgage Ventures LLC ("<u>AHM Ventures</u>"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("<u>Homegate</u>"), a New York corporation (7491); and Great Oak Abstract Corp. ("<u>Great Oak</u>"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

abandon Miscellaneous Assets. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f) and 554(a) of the Bankruptcy Code and Bankruptcy Rule 6004.

## BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed The Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

5. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference as if fully set forth herein at length.

2

loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the

Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

9. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

10. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

11. On the Petition Date, the Debtors filed a motion [Docket No. 11], seeking authority, *inter alia*, to sell substantially all assets relating to the Debtors' mortgage loan servicing business (the "Servicing Business"). After a week long trial that commenced on October 15, 2007, by Order dated October 30, 2007 [Docket No. 1711], the Court approved the sale of the Servicing Business to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and supplemented, and including all schedules, exhibits, and attachments thereto).

**RELIEF REQUESTED**

12. By this Motion, the Debtors seek entry of an order (i) approving the Sale Procedures authorizing the Debtors to sell the Miscellaneous Assets outside of the ordinary course of their business free and clear of all liens, claims and encumbrances pursuant to section

363(b) and 363(f) of the Bankruptcy Code, (ii) authorizing the Debtors to donate Miscellaneous Assets to the charity of the Debtors choosing pursuant to section 363(b) of the Bankruptcy Code, and (iii) authorizing the Debtors to abandon Miscellaneous Assets pursuant to section 554 of the Bankruptcy Code.

## BASIS FOR THE RELIEF REQUESTED

13.  The Debtors have accumulated certain assets, including, but not limited to furniture, fixtures, tables, computers and computer related equipment, office equipment and supplies that are no longer necessary to the Debtors' business operations due to, among other things, the shutdown of the Debtors' loan origination business. In the exercise of their sound business judgment, the Debtors have determined that the prompt sale or other disposition of the Miscellaneous Assets without Court approval of each individual disposition is in the best interest of the Debtors' estates and their creditors and will enable the Debtors to maximize the potential recovery for the sale of the Miscellaneous Assets. The Debtors desire to sell or otherwise dispose of the Miscellaneous Assets in order to eliminate costs associated with maintaining unnecessary assets, reduce or eliminate the need for paying storage charges, and maximize the value of the Debtors' estates for the benefit of their stakeholders.

14.  The Miscellaneous Assets have a relatively modest aggregate value. The Debtors submit that the entry of an order approving the sale, donation, or abandonment of Miscellaneous Assets without further notice or hearing, other than that set forth below, is warranted under the circumstances of the Debtors' Chapter 11 cases.

**A.**    **Procedures for the Sale of the Miscellaneous Assets**

15.  <u>Transactions Subject to the Sale Procedures</u>: In connection with the sale of the Miscellaneous Assets, the Debtors seek authorization to sell such assets for consideration,

not to exceed $100,000 for any given Proposed Sale (as defined below), without further notice to any party, other than the filing of a Sale Notice (as defined below). If a proposed sale of any Miscellaneous Assets exceeds $100,000, the Debtors will file a separate motion seeking approval of such sale.

16. <u>Notice of Proposed Sales</u>: After the Debtors enter into a contract to sell any Miscellaneous Assets that are subject to the Sale Procedures, or otherwise anticipate a transaction that is subject to these procedures (the "<u>Proposed Sale</u>"), the Debtors will file with the Court a notice of such Proposed Sale (the "<u>Sale Notice</u>") and serve the Sale Notice by overnight delivery, facsimile or hand delivery on the following parties: (i) the Office of the United States Trustee (the "<u>U.S. Trustee</u>"); (ii) all known parties holding or asserting liens, claims, encumbrances or other interests in the Miscellaneous Assets that are the subject of the Proposed Sale and their respective counsel, if known; (iii) counsel to the Committee; and (iv) counsel to the Debtors' postpetition lender (collectively, the "<u>Notice Parties</u>").

17. <u>Contents of Sale Notice</u>: The Sale Notice will include: (i) a description of the Miscellaneous Assets that are the subject of the Proposed Sale; (ii) the location of such Miscellaneous Assets; (iii) the economic terms of the Proposed Sale; (iv) the identity of any nondebtor party to the Proposed Sale and specify whether that party is an "affiliate" or "insider" as those terms are defined under section 101 of the Bankruptcy Code; (v) the identity of the party, if any, holding liens, claims, encumbrances or other interests in such Miscellaneous Assets; and (vi) if applicable, a statement indicating that all such liens, claims, encumbrances or interests are capable of monetary satisfaction or that the parties may object to the Proposed Sale.

18. <u>Objection Procedures</u>: The Notice Parties, other than the Committee, will have five (5) business days after the Sale Notice is filed and served to object to a Proposed Sale

DB02:6233870.9

066585.1001

and to file such objection with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and to serve such objection by overnight delivery or hand delivery on the Notice Parties and counsel to the Debtors (the "<u>Sale Objection Deadline</u>"). The Committee will have ten (10) days following the filing and service of the Sale Notice to file with the Court and serve an objection to the Proposed Sale (the "<u>Committee's Sale Objection Deadline</u>" and together with the Sale Objection Deadline, the "<u>Sale Objection Deadlines</u>"). In the absence of an objection on or before the Sale Objection Deadlines, the Debtors may consumate the Proposed Sale without further notice or hearing and such Proposed Sale will be deemed fully authorized by the Court.

19. If an objection to a Proposed Sale is timely filed and served by the Sale Objection Deadlines, the Debtors will not proceed with the Proposed Sale unless (i) the objection is withdrawn or otherwise resolved; or (ii) this Court overrules such objection at the next regularly schedule omnibus hearing that is at least five (5) business days after service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is agreed to by the objecting party and the Debtors.

20. <u>Conditions of Sale</u>: All buyers will acquire Miscellaneous Assets sold by the Debtors pursuant to these Sale Procedures "AS IS-WHERE IS," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any other purposes; <u>provided</u>, <u>however</u>, that buyers will take title to Miscellaneous Assets free and clear of liens, claims, encumbrances and other interests pursuant to Bankruptcy Code section 363(f), with all such liens, claims, encumbrances and other interests, if any, attaching to the proceeds of the sale of Miscellaneous Assets.

7

**B.      Procedures for the Donation of Miscellaneous Assets**

21.    The Debtors intend to sell the Miscellaneous Assets, but, in the event the Debtors cannot sell the Miscellaneous Assets or determine that a proposed sale is not in the best interests of the Debtors' estates and creditors, the Debtors may determine to donate such Miscellaneous Assets to the charity of their choosing (the "Proposed Donee"). The Proposed Donee shall be determined within the sole discretion of the Debtors.

22.    Notice of Proposed Donation: After the Debtors determine to donate Miscellaneous Assets (the "Proposed Donation"), the Debtors will file with the Court a notice of such Proposed Donation (the "Donation Notice") and serve the Donation Notice by overnight delivery, facsimile or hand delivery on the Notice Parties

23.    Contents of Donation Notice: The Donation Notice will include: (i) a description of the Miscellaneous Assets that are the subject of the Proposed Donation; (ii) the location of such Miscellaneous Assets; (iii) the estimated value of such Miscellaneous Assets; (iv) the identity of the Proposed Donee and specify whether that party is an "affiliate" or "insider" as those terms are defined under section 101 of the Bankruptcy Code; and (v) the identity of the party, if any, holding liens, claims, encumbrances or other interests in the Miscellaneous Assets to be donated.

24.    Objection Procedures: The Notice Parties, other than the Committee, will have five (5) business days after the Donation Notice is filed and served to object to a Proposed Donation and to file such objection with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and to serve such objection by overnight delivery or hand delivery on the Notice Parties and counsel to the Debtors (the "Donation Objection Deadline"). The Committee will have ten (10) days following the filing

and service of the Donation Notice to file with the Court and serve an objection to the Proposed Donation (the "Committee's Donation Objection Deadline" and together with the Donation Objection Deadline, the "Donation Objection Deadlines"). In the absence of an objection on or before the Donation Objection Deadlines, the Notice Parties will have been deemed to consent to such Proposed Donation, the Debtors may make the Proposed Donation without further notice or hearing and such Proposed Donation will be deemed fully authorized by the Court.

25. If an objection to a Proposed Donation is timely filed with the Court and served on the Notice Parties and counsel for the Debtors by the Donation Objection Deadlines, the Debtors will not proceed with the Proposed Donation unless (i) the objection is withdrawn or otherwise resolved; or (ii) this Court overrules such objection at the next regularly schedule omnibus hearing that is at least five (5) business days after service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is agreed to by the objecting party and the Debtors.

C. **Procedures for the Abandonment of Miscellaneous Assets**

26. If the Debtors are unable to sell any Miscellaneous Assets and the Debtors determine not to donate any Miscellaneous Assets, the Debtors propose to abandon such Miscellaneous Assets.

27. Notice of Proposed Abandonment: If the Debtors determine to abandon any Miscellaneous Assets (the "Proposed Abandonment"), the Debtors will file with the Court a notice of such abandonment (the "Notice of Abandonment") and serve the Notice of Abandonment by overnight delivery, facsimile or hand delivery on the Notice Parties and the party currently in possession of the Miscellaneous Assets subject to the Proposed Abandonment.

28. <u>Contents of Notice of Abandonment</u>: The Notice of Abandonment will include: (i) a description of the Miscellaneous Assets that are the subject of the Proposed Abandonment; (ii) the location of such Miscellaneous Assets; (iii) the estimated value of such Miscellaneous Assets; (iv) the identity of the party currently in possession of the Miscellaneous Assets subject to the Proposed Abandonment and specify whether that party is an "affiliate" or "insider" as those terms are defined under section 101 of the Bankruptcy Code; and (iv) the identity of the party, if any, holding liens, claims, encumbrances or other interests in the Miscellaneous Assets to be abandoned.

29. <u>Objection Procedures</u>: The Notice Parties and the party currently in possession of the Miscellaneous Assets subject to the Proposed Abandonment shall have ten (10) days after the Notice of Abandonment is filed and served to object to a Proposed Abandonment (the "<u>Abandonment Objection Deadline</u>") and to file any objections with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and to serve such objections by overnight delivery or hand delivery on the Notice Parties and counsel to the Debtors. In the absence of an objection on or before the Abandonment Objection Deadline, the Debtors may abandon such Miscellaneous Assets without further notice or a hearing, and such Proposed Abandonment will be deemed fully authorized by the Court.

30. If an objection to a Proposed Abandonment is timely filed and served, the Debtors will not proceed with the Proposed Abandonment unless (i) the objection is withdrawn or otherwise resolved; or (ii) this Court overrules such objection at the next regularly schedule omnibus hearing that is at least five (5) days after the service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is agreed to by the objecting party and the Debtors.

DB02:6233870.9

066585.1001

31.     If any Proposed Sale or Proposed Donation or abandonment includes computers and/or computer related equipment, the Debtors will remove all information and software applications from the computers and related computer equipment. Additionally, the Debtors will back-up and store the information existing on such computers and computer related equipment.

## LEGAL ARGUMENT

### A.   The Sale of Miscellaneous Assets Represents an Exercise of the Debtors' Business Judgment

32.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

33.     The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested

11

persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. Abbotts Dairies, 788 F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

34. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R.

531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

35.   There is more than ample business justification for the approval of the Sale Procedures and the sale of the Miscellaneous Assets in accordance with the Sale Procedures. The Debtors believe that the sale of the Miscellaneous Assets will inure to the benefit of the Debtors' estates and creditors and, therefore, represents the exercise of the Debtors' sound business judgment.

36.   The Debtors' proposed sale of the Miscellaneous Assets is in "good faith" within the meaning of the Abbotts Dairies analysis. The Debtors represent that no insider will gain an unfair advantage from the sales pursuant to the Sale Procedures. Moreover, as set forth above, the Debtors will provide the Notice Parties with a reasonable opportunity to review the adequacy of the price received for any sale of the Miscellaneous Assets in the event that such sales are equal to or less than $100,000.

37.   Bankruptcy Rule 2002(a)(2) generally requires a minimum of 20 days' notice of proposed sales of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2).

38.   The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing. 11 U.S.C. § 102(1).

39. Similarly, the court in In re Lomas Fin. Corp. held that notice is appropriate under Bankruptcy Code section 102(1) where it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 212 B.R. 46, 54 (Bankr. D. Del. 1997) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

40. The Debtors believe that the notice and objection procedures contained in the Sale Procedures are justified under the circumstances. The Sale Procedures are designed to maximize the value realized from the sales of the Miscellaneous Assets. Because the asset sales are of a relatively *de minimis* value, the usual process of obtaining Court approval of each individual sale would impose unnecessary administrative burdens on the Court; would be prohibitively expensive to the Debtors' estates; and in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.

41. Additionally, the Debtors believe that the manner of notice proposed in the Sale Procedures is more than appropriate and preserves parties' due process rights. The Debtors will serve notice of each Proposed Sale on the Notice Parties. As such, all of the key constituencies in these cases and any party whose rights may be effected by a sale will receive adequate notice.

42. Finally, as noted above, the "notice and a hearing" requirement contained in Bankruptcy Code section 363(b)(1) is satisfied absent a hearing where there is an opportunity for a hearing and no party in interest timely requests a hearing. 11 U.S.C. § 102(1).

**B.    The Sales of Miscellaneous Assets Should be Approved under 11 U.S.C. § 363(f)**

43. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in

14

such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a *bona fide* dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. See 11 U.S.C. § 363(f); In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

44. The Debtors expect that their secured lenders will have no objection to the relief requested herein. Accordingly, the requirements of section 363(f) of the Bankruptcy Code are met, and the proposed disposition of Miscellaneous Assets should be approved "free and clear" of any such liens, claims or interests, with any such liens to attach to the proceeds of the sale.

## C.  **Donation of Miscellaneous Assets**

45. The Debtors believe that any Proposed Donation of the Miscellaneous Assets will be in the exercise of their sound business judgment. As set forth above, because the Debtors have ceased their loan origination business operations, Miscellaneous Assets are not being used by the Debtors and, therefore, have minimal value to the Debtors. Additionally, the Debtors continue to incur costs associated with the Miscellaneous Assets for maintenance, safekeeping and storage. The Debtors submit that the donations of certain Miscellaneous Assets will allow the Debtors to reduce the burdens on the Debtors' estates associated with the maintenance, storage and safekeeping of the Miscellaneous Assets while providing benefits to charitable organizations. For the foregoing reasons, the Debtors request authorization pursuant

to section 363(b) of the Bankruptcy Code to donate certain of the Miscellaneous Assets to the charities of the Debtors' choosing.

**D.    Abandonment of Miscellaneous Assets**

46.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The Debtors propose to abandon the Miscellaneous Assets that cannot be sold or donated pursuant to the respective procedures in order to eliminate the burdens and administrative costs associated with such Miscellaneous Assets. Put differently, the Debtors may determine that it is more cost effective to abandon certain Miscellaneous Assets than to transport or continue to store the Miscellaneous Assets. Accordingly, the decision to abandon such Miscellaneous Assets is supported by the Debtors' business judgment and is in the best interests of the Debtors' estates to abandon any Miscellaneous Assets not sold or donated pursuant to the Sale Procedures.

**D.    Waiver of the Stay Period Under Bankruptcy Rule 6004(h)**

47.    Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property of the estate "is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

48.    The Debtors have ceased loan originations, rejected leases and are in the process of collecting the Miscellaneous Assets. The Debtors are incurring costs to transport and store the Miscellaneous Assets, and such costs provide little or no benefit to the Debtors' estates. This burden on the Debtors' estates gives rise to the Debtors' need to consumate the Proposed Sales quickly. In addition, the Debtors have already begun to receive, without solicitation, offers

for certain of the Miscellaneous Assets. As such, sound business reasons mandate waiving the stay typically applicable to a sale of the Miscellaneous Assets.

49. Recognizing the demonstrable benefits resulting from streamlined procedures to sell small assets, this Court and others have approved procedures substantially similar to the Sale Procedures proposed in this Motion. See e.g., In re HomeBanc Mortgage Corp., Case No. 07-11079 (KJC) (Bankr. D. Del. Oct. 17, 2007) (approving sale of miscellaneous assets outside the ordinary course of business); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. May 16, 2007) (same); In re Premium Papers Holdco, LLC, Case No. 06-10269 (CSS) (Bankr. D. Del. June 8, 2006) (same); In re Foamex International Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Nov. 17, 2005) (same); In re Cone Mills Corp., Case No. 03-12944 (MFW) (Bankr. D. Del. February 12, 2004) (same).

## CONCLUSION

50. For the reasons set forth above, the Debtors seek authorization, pursuant to sections 105(a), 363(b)(1), 363(f) and 554(a) of the Bankruptcy Code, to (i) sell Miscellaneous Assets, pursuant to the Sale Procedures; (ii) donate Miscellaneous Assets; and (iii) abandon Miscellaneous Assets.

## NOTICE

51. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Debtors' postpetition lender; (v) the Securities and Exchange Commission; and (vi) all other parties entitled to notice under Del. Bankr. LR 2002-1(b).

WHEREFORE, the Debtors request entry of an order granting the relief requested herein, substantially in the form attached hereto as <u>Exhibit A</u>, and granting such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
        November 8, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession