**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Case No. 07-11047 (CSS) |
| | : | Jointly Administered |
| Debtors. | : | **Hearing Date: November 28, 2007 at 10:00 a.m.** **Objection Deadline: November 20, 2007 at 4:00 p.m.** |

**MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING AND APPROVING PROCEDURES FOR THE SALE OF LOANS OWNED BY OF CERTAIN NON-DEBTOR SUBSIDIARIES**

The debtors and debtors-in-possession in the above-captioned jointly administered cases (collectively, "AHM" or the "Debtors") hereby move this Court (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order authorizing and approving procedures for the sale of mortgage loans owned by Broadhollow Funding, LLC, ("Broadhollow") and Melville Funding, LLC ("Melville" and together with Broadhollow, the "Non-Debtor Subsidiaries") without any further need to seek this Court's approval of such sales. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303) ("AHM Holding"); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## STATUS OF THE CASE AND JURISDICTION

1. On August 6, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4. An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007.

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are sections 105(a), 363(b) and 541 of the Bankruptcy Code, as each such section may be applicable.

## GENERAL BACKGROUND[2]

A. The Debtors' Business

6. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage

---

[2] A detailed description of the Debtors' businesses and related business information is set forth in the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [D.I. 2] and is incorporated herein by reference.

loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors.

7. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets surrounding the quality of subprime mortgages caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans – began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

9. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

10. In the short time available after these events, and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their

liquidity crisis outside the bankruptcy forum and, accordingly, commenced these chapter 11 cases to preserve and maximize the value of their estates through orderly sales of their assets.

B. The Broadhollow and Melville Loan Auction and Sale

11. Broadhollow and Melville are non-Debtor special purpose entities established by AHM Investment to fund a portion of its prime mortgage origination. Prior to the Petition Date, Broadhollow and Melville owned approximately 5,700 mortgage loans.

12. By Order dated August 22, 2007 [D.I. 282], the Court approved sale procedures (the "Sale Procedures") and the sale of mortgage loans owned directly by the Non-Debtor Subsidiaries. On September 26, 2007, AHM Servicing, in accordance with the Sale Procedures, conducted an auction (the "Auction") for the sale of the (i) Broadhollow Non-Performing Loans; (ii) Melville Non-Performing Loans; (iii) Broadhollow Agency Eligible Performing Loans; (iv) Broadhollow Agency Non-Eligible Performing Loans; (v) Melville Agency Eligible Performing Loans; and (vi) Melville Non-Agency Eligible Performing Loans (as such terms are defined in the Sale Procedures). As result of the Auction, all but 32 mortgage loans owned by the Non-Debtor Subsidiaries, with an aggregate unpaid principal balance of $7,200,883 as of November 7 2007 (collectively, the "Non-Debtor Loans"),[3] were sold at the Auction. The Non-Debtor Loans were not sold at that time for various reasons.

**RELIEF REQUESTED**

13. By this Motion, the Debtors seek entry of an order authorizing and approving procedures permitting the Non-Debtor Subsidiaries to take all appropriate actions to sell the Non-Debtor Loans, without further order of the Court pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

---

[3] Since the Auction, one of the 32 mortgage loans has been paid off.

**BASIS FOR RELIEF REQUESTED**

14. The Non-Debtor Loans do not constitute property of the Debtors' estates within the meaning of section 541(a)(1) of the Bankruptcy Code since the ownership of the Non-Debtor Loans is vested in Non-Debtor Subsidiaries. However, because the Debtors are either the direct or ultimate parent companies of the Non-Debtor Subsidiaries, certain buyers may be concerned that Court approval is necessary to consummate the sale of any Non-Debtor Loans. The proposed Sale Notice Procedures (as defined and described below) will provide certainty to the sale process of the Non-Debtor Loans.

15. The Debtors propose to establish the following procedures (the "Sale Notice Procedures") for the sale of the Non-Debtor Loans:

i. The Debtors shall give written notice (a "Sale Notice") of a proposed sale of any Non-Debtor Loans to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the Debtors' postpetition lenders (the "DIP Lender"); and (d) any party known to assert a lien on the Non-Debtor Loans (collectively, the "Non-Debtor Loan Sale Notice Parties") at least ten (10) days prior to closing such sale or effectuating such transfer (the "Notice Period"); *provided, however,* that in the event the Debtors receive a higher and/or better offer from another bidder (an "Improved Offer") after providing such notice, the Debtors may elect, in their discretion, to close on such Improved Offer on the later of (i) the end of the Notice Period and (ii) three (3) business days after written notice of such Improved Offer has been delivered to the Non-Debtor Loan Sale Notice Parties (such later date being the "Improved Offer Notice Period"), subject to and in accordance with the procedures provided herein.

ii. The Sale Notice shall consist of (a) a disclosure that the Sale Notice is being provided in accordance with the order approving this Motion, (b) an identification of the Non-Debtor Loans being sold, (c) a general description of the relationship of the potential purchaser, or potential purchasers in the event more than one purchaser is still being considered as of the time the Sale Notice is provided, (d) the estimated purchase price, (e) the proposed application of the sale proceeds, and (f) a summary of the proposed significant terms of the sale agreement; *provided, however,* that the Sale Notice shall be deemed fully confidential and shall not be

shared with any party other than the Non-Debtor Loan Sale Notice Parties absent written consent from the Debtors or further order of this Court.

iii. Objections to a proposed sale as set forth in a Sale Notice shall be filed with the Court and served on counsel for the Debtors and the Non-Debtor Loan Sale Parties by the later of the end of the Notice Period or the Improved Notice Period, as applicable.

iv. If no written objections are filed and served in accordance with the Sale Notice Procedures, the Non-Debtor Subsidiaries are authorized by the Court to take any and all actions, and to execute any and all resolutions and other documents necessary to effectuate such sale, without any further need to seek the Court's review or approval of such sale, and any objection filed after the expiration of the 10-day objection period shall be deemed untimely and shall not be considered by the Court.

v. If a written objection is filed and served in accordance with the Sale Notice Procedures that cannot be resolved, a hearing on the matter will be scheduled with the Court so as to seek the Court's determination of (a) whether the sale of a Non-Debtor Loan requires this Court's approval, and (b) if Court approval is required, whether to approve the proposed sale.

vi. Upon consummation of a sale of a Non-Debtor Loan, the Debtors will file and serve a notice of consummation of the Non-Debtor Loan sale on the Non-Debtor Loan Sale Notice Parties and those parties that have requested notice pursuant to Bankruptcy Rule 2002.

vii. Notwithstanding anything to the contrary herein, the foregoing procedures may be modified with respect to any particular sale of Non-Debtor Loans as and to the extent agreed in writing by the Non-Debtor Loan Sale Notice Parties.

16. Approval of the foregoing Sale Notice Procedures is in the best interests of the Debtors' estates, their creditors and other parties in interest. The Sale Notice Procedures will provide the Non-Debtor Loan Sale Notice Parties with a reasonable opportunity to consider the significant terms of each Non-Debtor Loan sale prior to the consummation of such sale. At the same time, absent an objection, the Debtors, if required, will be permitted to take all appropriate actions necessary to effectuate such sale with little delay and without any further need to seek the

Court's review or approval of such sale. Moreover, the Sale Notice Procedures will allow the Debtors' management to focus on the chapter 11 process at large without having to repeatedly assess or make a determination as to whether a particular aspect, or the terms, of each Non-Debtor Loan sale requires the Debtors to seek Court approval. Finally, the Sale Notice Procedures will give prospective buyers of the Non-Debtor Loans comfort that the sale is being conducted under a procedure approved by the Court.

17. As stated above, the Debtors do not believe that the Non-Debtor Loans constitute property of their estates pursuant to section 541 of the Bankruptcy Code. However, to the extent that the Non-Debtor Loans are property of the estates, approval of the sale of the Non-Debtor Loans pursuant to the Sale Notice Procedures is appropriate under section 363(b) of the Bankruptcy Code. Where a debtor seeks to use, sell or lease assets of the estate pursuant to section 363 of the Bankruptcy Code, the debtor's good faith business judgment regarding the proposed transaction should not be disturbed absent a showing that the transaction constitutes an abuse of discretion or is contrary to the interests of the creditors. *See Myers v. Martin (In re Martin)*, 91 F.3d 389,396 (3d Cir. 1996); *In re Thrifty Liquors, Inc.*, 26 B.R. 26, 28 (Bankr. D. Mass. 1982); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-150 (3d Cir. 1986). The court in *Abbotts Dairies* stressed two factors which the debtor must establish in order to obtain court authorization of a sale or use of property of the estate pursuant to section 363 of the Bankruptcy Code. First, the transaction must result from the exercise of the debtor's sound business judgment and second, the debtor must be acting in "good faith." *Id.* at 150.

18. For the reasons previously set forth herein, the Debtors believe that the proposed sales of the Non-Debtor Loans through the Sale Notice Procedures represents the exercise of the Debtors' sound business judgment and would be in "good faith" within the

meaning of the *Abbotts Dairies* analysis. The Debtors represent that no insider will gain an unfair advantage from the sales proposed herein. Moreover, as set forth above, the Debtors will provide the Non-Debtor Loan Sale Notice Parties with a reasonable opportunity to review the adequacy of the Non-Debtor Loan sales contemplated by the Sale Notice Procedures.

**NOTICE**

19. The Debtors will serve this Motion on (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Administrative Agent; (iv) counsel to the DIP Lender; and (v) those parties who have requested notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors hereby respectfully request that the Court enter an order, in substantially the form attached hereto as Exhibit A, (i) authorizing and approving the Sale Notice Procedures; (ii) authorizing the Debtors to take necessary actions to sell the Non-Debtor Loans without further Order of the Court; and (iii) granting the Debtors such other relief as is necessary.

Dated: Wilmington, Delaware
November 8, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession