UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                          :   Chapter 11
                                                                :
AMERICAN HOME MORTGAGE                                          :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]              :
                                                                :   Jointly Administered
        Debtors.                                                :
                                                                :   Hearing Date: November 14, 2007 at 10:00 a.m.
                                                                :   Objection Deadline: November 14, 2007 at 9:00 a.m.
---------------------------------------------------------------- x

**MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING CERTAIN DEBTORS TO OBTAIN LIMITED
RECOURSE POSTPETITION FINANCING AND GRANT OF CERTAIN LIENS AND
SECURITY INTEREST PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364(c); (II)
SCHEDULING FINAL HEARING PURSUANT TO
BANKRUPTCY RULE 4001(c); AND (III) GRANTING RELATED RELIEF**

American Home Mortgage Investment Corp., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc., each a debtor and debtor in possession (collectively, the "Debtor Borrowers"), hereby submit this motion (the "Motion") for entry of interim and final orders, pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") (i) authorizing the Debtor Borrowers to obtain limited recourse postpetition financing and grant certain liens and security interest pursuant to Bankruptcy Code sections 105, 362, 363, 364(c)(2), and 364(c)(3); (ii) scheduling a final hearing on the Motion pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1] The Debtors (as defined below) in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303) ("AHM Holding"); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580) (collectively, "AHM" or the "Debtors"). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Rules"); and (iii) granting related relief. In support of this Motion, the Debtor Borrowers respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 362, 363, 364(c)(2), and 364(c)(3) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

## GENERAL BACKGROUND[2]

2. On August 6, 2007 (the "Petition Date"), AHM Holding, AHM Investment, AHM Acceptance, AHM Servicing, AHM Corp., AHM Ventures, Homegate, and Great Oak (collectively, the "Debtors") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 2], which is incorporated by reference as if fully set forth herein at length.

## AUTHORITY TO USE CASH COLLATERAL

5.      On the Petition Date, the Debtors filed a motion [Docket No. 16] (the "Cash Collateral Motion") requesting the authority to use the cash derived from operating the Debtors' mortgage loan servicing business (the "Servicing Business"), which serves as collateral (the "Cash Collateral") held by Bank of America, N.A., as administrative agent, swing line lender and a lender and other lenders, pursuant to that certain Second Amended and Restated Credit Agreement dated August 10, 2006 (as amended and restated and together with all agreements, documents, notes and instruments delivered pursuant thereto or in connection therewith, the "Loan Agreement"). On September 4, 2007, the Court entered a final order approving the Cash Collateral Motion [Docket No. 554] (the "Final Cash Collateral Order")[3] and authorizing the Debtors to use Cash Collateral through on October 31, 2007, unless extended.

6.      On October 30, 2007, the Debtors filed a motion [Docket No. 1731] (the "Second Cash Collateral Motion") requesting, among other things, that the termination date of the Debtors' ability to use Cash Collateral be extended to November 15, 2007. On October 31, 2007, the Court approved the Second Cash Collateral Motion extending the use of Cash Collateral through November 16, 2007 on an interim basis and scheduled a final hearing on the Second Cash Collateral Motion for November 14, 2007 [Docket No. 1731] (the "Interim Stipulated Cash Collateral Order"). The Interim Stipulated Cash Collateral Order additionally modified the Final Cash Collateral Order to, among other things, make the Initial Closing a Termination Event. As a result, upon the occurrence of the Initial Closing, the Debtors will no

---

[3] Capitalized terms not defined in this section shall have the meanings provided in the Final Cash Collateral Order. The description of the terms of the Final Cash Collateral Order herein is for descriptive purposes only. To the extent this description and the terms of the Final Cash Collateral Order vary, the Final Cash Collateral Order shall control.

longer have the right to use Cash Collateral pursuant to the terms of the Final Cash Collateral Order to operate the Servicing Business.

### APPROVAL OF THE DIP FACILITY

7.  On the Petition Date, the Debtors, other than AHM Servicing, filed a motion seeking approval to enter into a postpetition debtor-in-possession credit facility in the principal amount of $50 million pursuant to that certain *Debtor-in-Possession Loan and Security Agreement*, dated as of August 6, 2007 (together with any and all exhibits and schedules annexed thereto, and as may be modified or amended from time-to-time, the "DIP Facility"). By Order dated August 7, 2007, the Court approved the DIP Facility on an interim basis [Docket No. 67] and by Order dated September 4, 2007, the Court approved the DIP Facility on a final basis (the "Final DIP Order") [Docket No. 555]. The availability under the DIP Facility, however, is not permitted to fund the Servicing Business operations.

### SALE OF THE SERVICING BUSINESS

8.  On the Petition Date, the Debtors filed a motion [Docket No. 11] (the "Sale Motion") requesting, among other things, authority to establish sale procedures and approve the sale of the Servicing Business. By Order dated August 9, 2007, [Docket No. 113], the Court granted the Sale Motion to the extent it requested the establishment of sale procedures (the "Original Procedures Order"). After the selection of AH Mortgage Acquisition Co., Inc. ("AH Mortgage Acquisition" or the "Purchaser"), the Debtors, through the Order dated September 25, 2007 [Docket No. 937] (the "Revised Procedures Order"), granted the Purchaser

- 4 -

certain auction protections and modified the sale procedures for the sale of the Servicing Business.[4]

9. By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved the sale (the "Sale") of the Servicing Business to the Purchaser pursuant to the terms of that certain Asset Purchase Agreement dated September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[5] The Sale will be closed in two steps; an initial (or economic) closing currently anticipated to occur in mid-November (the "Initial Closing") and a final closing anticipated to occur on or prior to September 30, 2008 (the "Final Closing").

10. The APA provides that from and after the Initial Closing, the Purchaser will fund the obligations associated with the Servicing Business. As a result, pursuant to section 6.14(b) of the APA, the Sellers agreed to grant the Purchaser, as of the Initial Closing, a first priority (subject only to any Permitted Liens) lien on and security interest in all of the Purchased Assets and the Sellers' cash and cash equivalents and other proceeds received in connection with the Servicing Business after the Initial Closing and to promptly seek approval of the grant of such lien and security interest pursuant to section 364(c) of the Bankruptcy Code. Further, paragraph 10 of the Sale Order approves the Sellers' grant of the aforementioned lien and

---

[4] Through the Revised Procedures Order the Court approved, on an interim basis, the Debtors' grant of a valid, binding enforceable and perfected (a) first priority security interest in and lien on all the Purchaser's Collateral (as defined in the Revised Procedures Order) that was not encumbered by a Permitted Lien or a lien with respect to any Financing; and (b) security interest in and lien on the Purchaser's Collateral that is immediately junior to any Permitted Lien or a lien with respect to any Financing to AH Mortgage Acquisition. The interim approval of the granting of such security interest and liens was however conditioned upon AH Mortgage Acquisition being selected as the Successful Bidder, entry of the Sale Order approving the Sale of the Servicing Business pursuant to the terms of the APA, payment of the Purchase Price, and the occurrence of the Initial Closing

[5] Capitalized terms not defined in this section shall have the meanings provided in the APA. The description of the terms of the APA herein is for descriptive purposes only. To the extent this description and the terms of the APA vary, the APA shall control.

security interest upon the payment of the Purchase Price at the Initial Closing. To fund the working capital of the Servicing Business upon payment of the Purchase Price in accordance with the provisions of the APA and from and after the Initial Closing as contemplated by the APA and the Sale Order, the Debtor Borrowers seek approval of the Limited Recourse DIP Credit Facility (as defined below). The funding provided pursuant to the Limited Recourse DIP Credit Facility will replace the use of Cash Collateral by the Debtors pursuant to the terms of the Final Cash Collateral Order to operate the Servicing Business.

## RELIEF REQUESTED

11. By this Motion, the Debtor Borrowers request entry of interim and final orders, pursuant to sections 105(a), 362, 363, 364(c)(2) and 364(c)(3):

    (a)    authorizing the Debtor Borrowers to obtain postpetition financing pursuant to the terms set forth in the limited recourse credit facility (the "Limited Recourse DIP Credit Facility"),[6] substantially in the form annexed as Exhibit A to the proposed interim order approving the Motion, which is annexed hereto as Exhibit 1 (the "Interim Order"), in the principal amount of $50,000,000 from AH Mortgage Acquisition and other financial institutions acceptable to AH Mortgage Acquisition;

    (b)    authorizing the Debtor Borrowers to grant, pursuant to section 364(c)(2) of the Bankruptcy Code, the Administrative Agent, on behalf of the Secured Parties, as security for the full and timely payment and performance of all of the Obligations a valid, binding, enforceable, and perfected (a) security interest in and lien on all (i) the Purchased Assets, of every kind or type whatsoever, tangible, intangible, real, personal and mixed, whether now owned or existing or hereafter acquired or arising and regardless of where located, whether within the United States or in other locations, and all cash and cash equivalents earned in connection with the Servicing Business from and after the Initial Closing until the later of the Final Closing or the payment of the Reconciliation Payment; and (ii) all proceeds, products, rents and profits, whether tangible

---

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Limited Recourse DIP Credit Facility.

or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof that is not encumbered by a Permitted Lien;

(c) authorizing the Debtor Borrowers to grant, pursuant to section 364(c)(3) of the Bankruptcy Code, the Administrative Agent, on behalf of the Secured Parties, as security for the full and timely payment and performance fo all of the Obligations a valid, binding, enforceable, and perfected security interest in and lien on the Collateral that is immediately junior to any Permitted Lien;

(d) authorizing the Debtor Borrowers, on an interim basis, to forthwith borrow $35,000,000 under the terms of the Limited Recourse DIP Credit Facility; and

(e) scheduling, pursuant to Bankruptcy Rule 4001, within 30 days of the entry of the Interim Order, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the balance of the Limited Recourse DIP Credit Facility on a final basis, as set forth in this Motion and the Limited Recourse DIP Credit Facility.

**BASIS FOR RELIEF REQUESTED**

12.   The Limited Recourse DIP Credit Facility is necessary because the closing of the Sale will occur in two steps. The Initial Closing (at which the Purchaser will pay the Purchase Price) is expected to occur in mid-November. The Final Closing (at which legal title to the Purchased Assets will pass to the Purchaser), however, is not expected to occur for at least a few months. To date, the Debtors have operated the Servicing Business through the use of Cash Collateral. However, upon the Initial Closing and payment of the Purchase Price in accordance with the APA, the liens under the Loan Agreement on the Purchased Assets will be released and the Debtors will no longer be using Cash Collateral to operate the Servicing Business until the Final Closing. To satisfy the working capital needs associated with the Servicing Business, the APA contemplates that the Purchaser will be granted liens on the Purchased Assets and will

arrange, obtain or provide financing. The Limited Recourse DIP Facility is the financing being provided by the Purchaser to satisfy the working capital needs associated with the Servicing Business from the Initial Closing to the Final Closing.

13. The liability of the Debtor Borrowers under the Limited Recourse DIP Credit Facility is limited solely to the extent of the Purchased Assets. The Lenders are not being provided on liens on any assets other than the Purchased Assets and will not be entitled to a superpriority or other claim against the Debtor Borrowers. As set forth in section 3.05 of the Limited Recourse DIP Credit Facility, in the event of a default, any action taken by the Administrative Agent or the Lenders shall be limited solely to the Purchased Assets. The Limited Recourse DIP Credit Facility has been negotiated in good faith and at arm's length between the Debtor Borrowers and the Administrative Agent. The Debtor Borrowers believe that the terms of the Limited Recourse DIP Credit Facility are fair and reasonable, reflect the Debtor Borrowers' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Approval of the Limited Recourse DIP Credit Facility is necessary so that the Debtors can proceed with the Initial Closing and the consummation of the Sale of the Purchased Assets.

A.    Terms of the Limited Recourse DIP Credit Facility

14. The terms of the Limited Recourse DIP Credit Facility are more specifically set forth in the Limited Recourse DIP Credit Facility attached as Exhibit A to the Interim Order.[7] The key provisions of the Limited Recourse DIP Credit Facility are as follows:[8]

---

[7] The Limited Recourse DIP Credit Facility attached as Exhibit A to the Interim Order is in substantially final form, but is still being reviewed and edited by the Debtors, the Administrative Agent, the Committee and Bank of America, N.A.. Any material modifications will be identified for the Court at or prior to the hearing on the Motion.

(a) <u>Borrowers</u>: AHM Investment, AHM Corp., and AHM Servicing

(b) <u>Facility</u>: $50,000,000

(c) <u>Type of Facility</u>: Senior secured limited recourse debtor-in-possession credit facility, comprised of a $50,000,000 revolving credit facility.

(d) <u>Interim Availability</u>: $35,000,000

(e) <u>Purpose</u>: To support the working capital needs of the Servicing Business to the extent permitted under the Limited Recourse DIP Credit Facility and in the Ordinary Course of Business.

(f) <u>Administrative Agent</u>: AH Mortgage Acquisition Co, Inc.

(g) <u>Lenders</u>: AH Mortgage Acquisition Co, Inc. and other financial institutions acceptable to the Administrative Agent.

(h) <u>Maturity Date</u>: The date which is the earliest of (a) the Final Closing Date, and (b) such earlier date on which either (i) all Loans shall become due and payable, in whole, in accordance with the terms of this Loan Agreement and the other Loan Documents or (ii) all Loans and all other Obligations for the payment of money shall be paid in full and the Commitments and this Loan Agreement are terminated.

(i) <u>Interest Rates and Interest Periods</u>: Loans will bear interest at the Eurodollar Rate plus the Applicable Margin and will be available at the rates and for the Interest Periods stated below. The Eurodollar Rate shall be a periodic fixed rate equal to LIBOR plus the Applicable Margin, which is 3%. The Eurodollar Rate will be fixed for Interest Periods of 1 month.

(j) <u>Default Rate</u>: Upon the occurrence and during the continuance of any Event of Default, the Applicable Margin will increase by 2.00% per annum.

(k) <u>Facility Fee</u>: The Borrowers shall pay to each Lender under the Facility, a facility fee on such Lender's Pro Rata Share of the Maximum Credit from the Limited Recourse DIP Credit Facility until the Maturity Date or, if later, the date on which all the Loans shall have been fully and finally repaid, at a rate equal to 0.50% per annum, payable in arrears (i) on each Monthly Payment Date,

---

[8] To the extent that the terms set forth herein differ from the terms in the attached proposed Interim Order and the Limited Recourse DIP Credit Facility, the Interim Order and the Limited Recourse DIP Credit Facility shall govern.

DB02:6346565.5    066585.1001

commencing on the first Monthly Payment Date following the Closing Date, (ii) on the Maturity Date and (iii) if later than the Maturity Date, the date on which all the Loans shall have been fully and finally repaid.

(l) Loans: Loans will be in minimum principal amounts of $1,000,000 and integral multiples of $100,000 (or such lesser amount or integral as the Administrative Agent shall agree). Loans will be available on same day notice.

(m) Collateral: Upon the payment of the Purchase Price (as defined in the APA) and the occurrence of the Initial Closing, the Purchased Assets, of every kind or type whatsoever, tangible, intangible, real, personal and mixed, whether now owned or existing or hereafter acquired or arising and regardless of where located, whether within the United States or in other locations, and all cash and cash equivalents earned in connection with the Servicing Business from and after the Initial Closing until the later of the Final Closing and the payment of the Reconciliation Payment; and (ii) all proceeds, products, rents and profits, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof (collectively, (i) and (ii), the "Collateral") that is not encumbered by a Permitted Lien.

(n) Priority and Security: The Administrative Agent, on behalf of the Secured Parties, shall have, as security for the full and timely payment and performance of all of the Obligations, a valid, binding, enforceable, and perfected (a) pursuant to section 364(c)(2) of the Bankruptcy Code, security interest in and lien on all (i) the Collateral that is not encumbered by a Permitted Lien; and (b) pursuant to section 364(c)(3) of the Bankruptcy Code, security interest in and lien on the Collateral that is immediately junior to any Permitted Lien. For the avoidance of doubt, notwithstanding anything to contrary in the Limited Recourse DIP Credit Facility or in any other Loan Document, the Secured Parties shall not have, and nothing in the Limited Recourse DIP Credit Facility shall be construed as granting the Secured Parties a security interest in or lien on any (i) proceeds of the Sale, (ii) proceeds of the B of A Collateral received by the Sellers before the Initial Closing Date but not paid to B of A as of the Initial Closing Date (which proceeds of the B of A Collateral shall be held in trust and segregated for the benefit of the B of A and paid to B of A in the manner set forth in the Cash Collateral Order, regardless of whether the Termination Date (as defined in the Cash Collateral

Order) has occurred), (iii) assets of the Sellers that are not being purchased by AHM Acquisition pursuant to the Purchase Agreement, or (iv) any other assets of the AHM Borrowers used in the Servicing Business not being purchased by the AHM Acquisition, in accordance with the terms of the Purchase Agreement.

(o) Limited Recourse: NOTWITHSTANDING ANYTHING IN THE LIMITED RECOURSE DIP CREDIT FACILITY OR IN ANY OTHER LOAN DOCUMENT TO THE CONTRARY, THE LIABILITY OF THE DEBTOR BORROWERS IS LIMITED SOLELY TO THE EXTENT, BUT ONLY TO THE EXTENT, OF THE INTEREST OF EACH DEBTOR BORROWER IN THE COLLATERAL ONLY. IN THE EVENT OF DEFAULT, INCLUDING, WITHOUT LIMITATION, ANY DEFAULT ARISING AS A RESULT OF ANY BREACH OF ANY REPRESENTATION, WARRANTY OR COVENANT MADE BY THE BORROWERS UNDER ANY LOAN DOCUMENTS, ANY ACTION TAKEN BY, AND ALL REMEDIES OF, THE ADMINISTRATIVE AGENT OR ANY LENDER AGAINST THE DEBTOR BORROWERS UNDER THE LIMITED RECOURSE DIP CREDIT FACILITY OR ANY OTHER LOAN DOCUMENT SHALL BE LIMITED TO THE COLLATERAL AND NO ATTACHMENT, EXECUTION OR OTHER ACTION OR PROCESS SHALL BE SOUGHT, ISSUED OR LEVIED UPON ANY ASSETS, PROPERTIES OR FUNDS OF THE DEBTOR BORROWERS OTHER THAN THE COLLATERAL. IN THE EVENT OF ENFORCEMENT BY THE ADMINISTRATIVE AGENT OR ANY LENDER OF THEIR REMEDIES HEREUNDER, NO JUDGMENT FOR ANY DEFICIENCY UPON THE OBLIGATIONS SHALL BE OBTAINED BY THE SECURED PARTIES AGAINST THE DEBTOR BORROWERS. THE PROVISIONS OF SECTION 3.05 OF THE LIMITED RECOURSE DIP CREDIT FACILITY SHALL SURVIVE THE TERMINATION OF THE LIMITED RECOURSE DIP CREDIT FACILITY AND ANY OTHER LOAN DOCUMENT.

(p) Remedies: Upon the occurrence and during the continuance of an Event of Default, the sole and exclusive remedy of the Secured Parties with respect to the Collateral shall be limited to the collection by the Secured Party of the cash proceeds thereof upon the receipt of the same by the Debtor Borrowers and the application of such cash proceeds to the repayment of the Obligations. Neither the Administrative Agent nor any other Secured Party shall have the right to foreclose upon, or sell, lease, transfer, assign or otherwise dispose of any of the Collateral or

otherwise enforce their security interest or Lien upon the Collateral other than with respect to the cash proceeds thereof in accordance with section 3.05(b) of the Limited Recourse DIP Credit Facility.

(q) Purchase Agreement Obligations: Nothing in the Limited Recourse DIP Credit Facility or the Loan Documents is intended to, nor shall it (i) limit, modify or affect the obligations of the AH Mortgage Acquisition as "Purchaser" under the APA, including, without limitation the obligation of AH Mortgage Acquisition to provide liquidity or working capital in accordance with section 6.2 of the APA, or (ii) expand or increase the obligations of the Debtor Borrowers under the APA. Any failure or inability of the Debtor Borrowers to perform or comply with their obligations under the APA that is due to the exercise by the Secured Parties of their remedies pursuant to Paragraph 7 of the Interim Order or the Limited Recourse DIP Credit Facility shall not constitute a default or be deemed a breach by the Debtor Borrowers under the APA.

(r) Conditions Precedent to Initial and Subsequent Loans: The obligation of the Lenders to make any Loans, as more fully set forth in section 5 of the Limited Recourse DIP Credit Facility, is subject to the following conditions precedent: (a) the Initial Closing Date shall have occurred; (b) no Default or Event of Default shall have occurred and be continuing or would result from the making of such Loans; (c) both immediately prior to the making of such Loan and also after giving effect thereto and to the intended use thereof, the representation and warranties made by each Borrower in section 6 of the Limited Recourse DIP Credit Facility, shall be true and complete on and as of the date of the making of such Loan in all material respects with the same force and effect as if made on and as of such date; (d) following the funding of such Loan: (i) the aggregate principal amount of Loans advanced by any Lender will not exceed its respective Commitment; (ii) the aggregate principal amount of Loans outstanding will not exceed the Maximum Credit; (e) the Administrative Agent and each Lender shall have received a Borrowing Notice; and (f) the Orders shall not have been stayed.

(s) Events of Default: The Limited Recourse DIP Credit Facility and the Financing Order contain certain customary events of default. By way of example, and as more fully set forth in section 8 of the Limited Recourse DIP Credit Facility, the following constitute "Events of Default": (a) failure to pay principal or interest; (b) a default under other Loan Documents that remains unremedied for five (5) days; (c) false or misleading representations, warrantees, or certifications; (d) termination of any Loan Document; (e) any of the Chapter 11 Cases are converted to chapter 7; and (f) any of the

- 12 -

> Chapter 11 Cases are dismissed and the order dismissing such case(s) does not provide for termination of the Commitments and full payment of the Obligations of the Debtor Borrowers.

B.  Provisions that Potentially Implicate Local Rule 4001-2

15. Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requires that certain provisions contained in the Limited Recourse DIP Credit Facility be highlighted, and that the Debtor Borrowers must provide justification for the inclusion of such highlighted provision(s).

16. Paragraph 18 of the Interim Order provides for a waiver of the provisions of section 506(c) of the Bankruptcy Code. The waiver of the provisions of section 506(c) of the Bankruptcy Code is appropriate given that the Limited Recourse DIP Credit Facility is new financing provided by the Purchaser to fund the operations of the Servicing Business from the Initial Closing through the Final Closing. Moreover, the financing provided pursuant to the Limited Recourse DIP Credit Facility was contemplated by the APA. As such, paragraph 18 of the Sale Order specifically provided for a waiver of Bankruptcy Code section 506(c) with respect to the Collateral. Except to conform to certain defined terms, Paragraph 18 of the Interim Order is identical to Paragraph 18 of the Sale Order. Accordingly, the Debtor Borrowers submit that the waiver of section 506(c) of the Bankruptcy Code is appropriate in this case.

C.  The Limited Recourse DIP Credit Facility Should Be Approved

17. Bankruptcy Code section 364(c) provides:

(c)   If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt —

- 13 -

    (1)    with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

    (2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or

    (3)    secured by a junior lien on property of the estate that is subject to a lien.

18. Section 6.2(a) of the APA requires the Sellers to operate the Servicing Business from the Initial Closing to the Final Closing in the Ordinary Course of Business (as defined in the APA) for the benefit (and risk) of the Purchaser. However, because the liens under the Loan Agreement on the Purchased Assets will be released upon the Initial Closing, the Debtors will no longer be using Cash Collateral, the current source of funds, to operate the Servicing Business. As such, section 6.2(a) of the APA requires the Purchaser, at the Purchaser's cost and expense, to provide or arrange financing to enable the Sellers to operate the Servicing Business from the Initial Closing to the Final Closing. In connection with the Purchaser obtaining such financing, section 6.14(a) of the APA requires the Sellers to reasonably cooperate with the Purchaser. Further to, among other things, facilitate the arrangement of financing, the Sellers agreed, pursuant to section 6.14(b) of the APA, to grant the Purchaser a first priority lien and security interest (subject only to Permitted Liens and Liens to secure the Financing) in all of the Purchased Assets.

19. The Purchaser is providing financing to operate the Servicing Business through the terms of the Limited Recourse DIP Credit Facility. As provided in section 6.14(b) of the APA, the Sellers are required to promptly seek approval of the financing provided by the Purchaser under Bankruptcy Code section 364(c). Approval of the Limited Recourse DIP Credit Facility and the limited recourse to the Debtors complies and is consistent with the terms of the

APA and the Sale Order. Specifically, section 3.05 of the Limited Recourse DIP Credit Facility provides that liability of the Debtor Borrowers is limited solely to Purchased Assets and if an Event of Default occurs, the sole and exclusive remedy of the Secured Parties is limited to the collection by the Secured Parties of the cash proceeds received by the Debtor Borrowers from the Collateral. Further, as provided in section 1.05 of the Limited Recourse DIP Credit Facility, the terms of the Limited Recourse DIP Credit Facility shall not limit, modify or affect the obligations of the Purchaser under the APA or expand or increase the obligations of the Debtor Borrowers under the APA. Moreover, any failure or inability of the Debtor Borrowers to perform or comply with their obligations under the APA that is due to the exercise by the Secured Parties of their remedies pursuant to Paragraph 7 of the Interim Order or the Limited Recourse DIP Credit Facility shall not constitute a default or be deemed a breach by the Debtor Borrowers under the APA. Accordingly, to comply with the terms of the APA, it is necessary and appropriate to authorize the Debtor Borrowers to obtain the limited recourse postpetition financing to the extent and pursuant to the terms contained herein, in the Limited Recourse DIP Credit Facility, the proposed Interim Order attached hereto as Exhibit 1, and the proposed Final Order.[9]

20.    The Limited Recourse DIP Credit Facility is exactly as the title suggests; the recourse of the Administrative Agent and Lenders to the Debtor Borrowers is limited solely to the Purchased Assets. The Limited Recourse DIP Credit Facility is necessary to "bridge the gap" between the Initial Closing and the Final Closing because from and after the Initial Closing, although being operated by the Debtors, the Servicing Business is being operated for the benefit (and risk) of the Purchaser. As a result, the Limited Recourse DIP Credit Facility was

---

[9] The proposed form of Final Order will be filed separately.

contemplated by the APA and the liens on the Purchased Assets were approved through the Sale Order.

21.     The terms and conditions of the Limited Recourse DIP Credit Facility are fair and reasonable and were negotiated by the parties in good faith and at arm's length. Accordingly, the Administrative Agent and the Lenders should be accorded the benefits of Bankruptcy Code section 364(e) with respect to the postpetition financing under the Limited Recourse DIP Credit Facility.

22.     The Debtor Borrowers further request that the automatic stay provisions of section 362 of the Bankruptcy Code be vacated and modified to the extent necessary so as to permit the Administrative Agent or the Lenders to exercise, upon the occurrence of an Event of Default (as defined in the Limited Recourse DIP Credit Facility and the proposed Interim Order) and the giving of five (5) business days' written notice to the Debtor Borrowers, all rights and remedies provided for in the Limited Recourse DIP Credit Facility and the proposed Interim Order as entered by the Court.

D.    The Interim Approval Should Be Granted

23.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtor Borrowers' estates.

24.     The Debtor Borrowers request that the Court hold and conduct an interim hearing to consider entry of the proposed Interim Order authorizing the Debtor Borrowers from

and after the entry of the Interim Order until the Final Hearing to borrow $35,000,000 pursuant to the terms of the Limited Recourse DIP Credit Facility. This relief will enable the Purchaser and the Debtor Borrowers to operate the Servicing Business from and after the Initial Closing and therefore, avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest, pending the Final Hearing.

## NOTICE

25. Notice of this Motion has been given by facsimile or overnight delivery to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (d) counsel to AH Mortgage Acquisition; (e) any known lien holders of the Debtor Borrowers; and (f) all parties entitled to notice under Local Rule 2002-1(b). The Debtor Borrowers submit that, under the circumstances, no further notice of the hearing on the interim financing is necessary and request that any further notice be dispensed with and waived.

26. The Debtor Borrowers further respectfully request that the Court schedule the Final Hearing and authorize it to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, by first-class mail upon (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (d) counsel to AH Mortgage Acquisition; (e) any known lien holders of the Debtor Borrowers; and (f) all parties entitled to notice under Local

Rule 2002-1(b). The Borrowers request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 2002-1.

WHEREFORE, the Debtor Borrowers respectfully requests that the Court enter an order (i) granting the relief requested herein and (ii) granting such other relief as is just and proper.

Dated: Wilmington, Delaware
November 12, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession