IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                           :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                  :
                                                                 :   Jointly Administered
     Debtors.                                                    :
                                                                 :
                                                                 :   Ref. Docket No. 11, 1711
---------------------------------------------------------------- x

## CERTIFICATION OF COUNSEL REGARDING DEBTORS' ENTRY INTO SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT

On August 6, 2007, the above-captioned debtors and debtors-in possession (the "Debtors") filed the *Emergency Motion of the Debtors for Orders: (A) (i) Approving Sale Procedures; (ii) Scheduling a Hearing to Consider Sale of Certain Assets Used In the Debtors' Loan Servicing Business; (iii) Approving Form and Manner of Notice Thereof; and (iv) Granting Related Relief; and (B) (i) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing and Approving Purchase Agreement Thereto; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief* [Docket No. 11] (the "Sale Motion"). On October 30, 2007, the Court entered an order approving the Sale Motion [Docket No. 1711] (the "Sale Order").

Among other things, the Sale Order authorized the sale of the Debtors' loan servicing business in accordance with that certain Asset Purchase Agreement dated as of September 25, 2007 (a copy of which is annexed to the Sale Order as Exhibit A-1) (as amended from time to time, and including all schedules, exhibits, and attachments thereto, including the

Ancillary Agreements (as such term is defined therein) to be entered into by and among the parties as contemplated therein, collectively, the "APA").[1]

Section 11.4 of the APA permits amendment of the APA by a written instrument signed by all of the parties to the APA, with the prior written consent of Bank of America, N.A., as Administrative Agent for certain lenders under that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 (the "Administrative Agent"), and with prior consultation with the official committee of unsecured creditors appointed in these cases (the "Committee"). Further, Paragraph 27 of the Sale Order provides that:

> Prior to the Final Closing, the APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties and in accordance with the terms thereof, without further order of the Court, provided, however, that (a) any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates; and (b) five (5) business days prior written notice is given to the counsel to (i) the Administrative Agent, and (ii) the Committee. Notice of any modification, amendment or supplement to the APA will be filed by the Debtors with the Court.

Sale Order, at ¶27 (together, the "Modification Provisions").

In response to the motion [Docket No. 1713] (the "Stay Motion") filed by DB Structured Products ("DBSP"), seeking a stay pending appeal of the Sale Order, and consistent with the Modification Provisions, the Debtors, in consultation with AH Mortgage Acquisition Co., Inc. (the "Buyer"), the Administrative Agent, and the Committee, agreed to the Second Amendment to Asset Purchase Agreement, a copy of which is annexed hereto as Exhibit A (the "Amendment"). The Amendment modifies the APA by designating the agreement by which the Debtors serviced the loans owned by DBSP as a Disputed Servicing Agreement.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the APA.

Although the Modification Provisions arguably authorize the Debtors to enter into the Amendment without further order of the Court, the Buyer has requested, out of an abundance of caution, that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, approving the Debtors' entry into the Amendment. The Debtors respectfully request that the Court enter the Order at its earliest convenience without further notice or hearing.

Dated:   Wilmington, Delaware
         November 13, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Sean T. Greecher
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Sean T. Greecher (No. 4484)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

# EXHIBIT A

**EXECUTION VERSION**

SECOND AMENDMENT
TO ASSET PURCHASE AGREEMENT

This Second Amendment to Asset Purchase Agreement dated as of November 6, 2007 (this "Second Amendment"), is entered into by and among AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser"), American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc, a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, the "Sellers").

WHEREAS, Purchaser and Sellers are parties to that certain Asset Purchase Agreement dated as of September 25, 2007, as amended by that certain First Amendment to Asset Purchase Agreement, dated as of November 1, 2007 (the "Agreement");

WHEREAS, Section 11.4 of the Agreement permits amendment of the Agreement by a written instrument signed by all of the parties to the Agreement with the prior written consent of the Administrative Agent (as defined in the Agreement) and with prior consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases (as defined in the Agreement); and

WHEREAS, the parties to the Agreement desire to amend certain provisions of the Agreement pursuant to this Second Amendment in order to amend the provisions relating to Disputed Servicing Agreements,

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1.   Definitions. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Agreement.

Section 2.   Amended Definition. Section 1.1 of the Agreement is amended by deleting the definitions of "Disputed Servicing Agreement" and "Purchaser Subservicing Agreement" as they appear therein and respectively inserting the following definitions in their place:

> "Disputed Servicing Agreement" means a Servicing Agreement described in and set forth on Schedule 1.1(k) or on Schedule 1.1(l).

> "Purchaser Subservicing Agreement" means a servicing agreement to be executed on behalf of each of Sellers and Purchaser, in form and substance reasonably satisfactory to Sellers and Purchaser, under which Purchaser will, after the Final Closing, serve as a subservicer for certain Mortgage Loans and with respect to any Disputed Servicing Agreements that, as of the Final

Closing, have not become Purchased Assets in accordance with Section 4.4.

Section 3.     Dispute Escrow. The Agreement is amended by deleting Section 4.4 of the Agreement and inserting the following new Section 4.4 of the Agreement in its place:

Section 4.4     Dispute Escrow. At the Initial Closing, Purchaser shall deliver to the Dispute Escrow Agent, to be held pursuant to the Dispute Escrow Agreement, an amount equal to 0.92% of the unpaid principal balance (as set forth in the Initial Closing Date Report) of the Mortgage Loans under the Disputed Servicing Agreements (such amount, as adjusted pursuant to Section 4.1(c), the "Dispute Amount") in immediately available funds. With respect to each Disputed Servicing Agreement, Sellers shall use their commercially reasonable efforts to (i) negotiate a settlement or have issued as soon as possible a Final Order determining whether such Disputed Servicing Agreement was terminated at or prior to the Petition Date in the case of any Disputed Servicing Agreement set forth on Schedule 1.1(k); or (ii) defend (or negotiate a resolution of) any appeal of the Sale Approval Order relating to the Disputed Servicing Agreement set forth on Schedule 1.1(l), provided, that Sellers may, in their reasonable discretion, determine that Sellers will not seek to negotiate a settlement or have issued a Final Order with respect to any one or more Disputed Servicing Agreements set forth on Schedule 1.1(k) or, with the written consent of the Administrative Agent and after consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases, to defend (or negotiate a resolution of) any appeal of the Sale Approval Order relating to the Disputed Servicing Agreement set forth on Schedule 1.1(l), and provided further, that, without the prior written consent of Purchaser, Sellers shall not agree to a settlement (including any resolution of any appeal of the Sale Approval Order) which adversely affects Purchaser's rights and benefits under a Disputed Servicing Agreement if it otherwise were to become a Purchased Asset or which adversely affects Purchaser's rights and benefits under this Agreement or the Sale Approval Order. To the extent requested by Sellers, Purchaser shall use its commercially reasonable efforts to assist in any negotiations with respect to Disputed Servicing Agreements or defense of any appeal of the Sale Approval Order relating to any Disputed Servicing Agreements. For each Disputed Servicing Agreement set forth on Schedule 1.1(k) for which a settlement is negotiated or a Final Order is issued determining that such Disputed Servicing Agreement was not terminated at or prior to the Petition Date and for the Disputed Servicing Agreement set forth on Schedule 1.1(l) with respect to which the Sale Approval Order becomes a Final

Order permitting transfer of such Disputed Servicing Agreement to Purchaser as contemplated by this Agreement and in the same manner as Servicing Agreements are to be transferred under the Sale Approval Order in the form entered on October 30, 2007, Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver the portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to the Administrative Agent on behalf of Sellers and such Servicing Agreement shall be a Purchased Asset. For each Disputed Servicing Agreement set forth on Schedule 1.1(k) for which a Final Order is issued determining that such Disputed Servicing Agreement was terminated at or prior to the Petition Date and for each Disputed Servicing Agreement set forth on Schedule 1.1(l) for which a Final Order is issued determining that transfer of such Disputed Servicing Agreement to Purchaser as contemplated by this Agreement and in the same manner as Servicing Agreements are to be transferred under the Sale Approval Order in the form entered on October 30, 2007, is not permissible, or, with respect to either type of Disputed Servicing Agreement, with respect to which Sellers reasonably determine (with the written consent of the Administrative Agent and after consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases in the case of a determination regarding the Disputed Servicing Agreement set forth on Schedule 1.1(l)) that neither a negotiated settlement nor a Final Order will be sought (including a determination not to defend any appeal of the Sale Approval Order with respect to the Disputed Servicing Agreement set forth on Schedule 1.1(l)), Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver the portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to Purchaser and such Servicing Agreement shall be an Excluded Asset. In the event any Disputed Servicing Agreement has not become an Excluded Asset pursuant to the foregoing sentence by the later of (i) Final Closing and (ii) September 30, 2008, Purchaser may elect to (a) treat such Servicing Agreement as an Excluded Asset and Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver any portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to Purchaser or (b) treat such Servicing Agreement as a Purchased Asset and Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver any portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to an account or accounts designated by the Administrative Agent (pursuant to the Sale Approval Order) on behalf of Sellers.

Section 4.   Subservicing of AHM Loans. Section 6.10(f) of the Agreement is amended by deleting subclause (i) as it appears therein and inserting the following subclause (i):

> (i) Mortgage Loans serviced under the Disputed Servicing Agreements that, as of the Final Closing Date, have not become Purchased Assets and, prior to the sale to a third party, the Servicing Rights Held for Sale and

Section 5.   Schedules. The Agreement is amended by adding Schedule 1.1(l) as set forth on Exhibit A.

Section 6.   Minimum Sale Proceeds. Schedule 8.2(e) to the Agreement is deleted and Schedule 8.2(e) as set forth on Exhibit B is inserted in its place.

Section 7.   Consent; Consultation. Sellers jointly and severally represent and warrant to Purchaser that Sellers have obtained the prior written consent of the Administrative Agent to enter into this Second Amendment and have consulted with the official committee of unsecured creditors appointed in the Bankruptcy Cases prior to entering into this Second Amendment.

Section 8.   Amendment. This Second Amendment may be amended, modified and supplemented only by a written instrument signed by all of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Second Amendment. Sellers shall not agree to amend, modify or supplement this Second Amendment, or waive any provision of this Second Amendment without the prior written consent of the Administrative Agent and without prior consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases.

Section 9.   Counterparts. This Second Amendment may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when two or more counterparts have been signed by each of the parties and delivered to the other parties. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

Section 10.   Entire Agreement; No Third Party Beneficiaries. The Agreement as amended by this Second Amendment (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and thereof, except for the Confidentiality Agreement, which shall remain in full force and effect until the Initial Closing Date, and (b) is not intended to confer any rights or remedies upon any Person other than the parties hereto and thereto, including without limitation any Business Employee or Transferred Employee.

Section 11.   Governing Law. THIS SECOND AMENDMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH (A) THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO RULES GOVERNING THE CONFLICT OF LAWS AND, (B) TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

IN WITNESS WHEREOF, Purchaser and Sellers have executed this First Amendment or caused this First Amendment to be executed by their respective officers thereunto duly authorized as of the date first written above.

AH MORTGAGE ACQUISITION CO., INC.,
as Purchaser

By: _____
Name: DAVID H. STORPER
Title: VICE PRESIDENT

AMERICAN HOME MORTGAGE
INVESTMENT CORP.,
as Seller and Debtor and Debtor-in-Possession

By:_____
Name:
Title:

AMERICAN HOME MORTGAGE CORP,
as Seller and Debtor and Debtor-in-Possession

By:_____
Name:
Title:

AMERICAN HOME MORTGAGE SERVICING,
INC.,
as Seller and Debtor and Debtor-in-Possession

By:_____
Name:
Title:

IN WITNESS WHEREOF, Purchaser and Sellers have executed this Second Amendment or caused this Second Amendment to be executed by their respective officers thereunto duly authorized as of the date first written above.

          AH MORTGAGE ACQUISITION CO., INC.,
          as Purchaser

By: _____
    Name:
    Title:

AMERICAN HOME MORTGAGE
    INVESTMENT CORP.,
    as Seller and Debtor and Debtor-in-Possession

By: *[signature]*
    Name: Michael Strauss
    Title: Chief Executive Officer

AMERICAN HOME MORTGAGE CORP,
    as Seller and Debtor and Debtor-in-Possession

By: *[signature]*
    Name: Michael Strauss
    Title: President

AMERICAN HOME MORTGAGE
    SERVICING, INC.,
    as Seller and Debtor and Debtor-in-Possession

By: *[signature]*
    Name: Michael Strauss
    Title: President.

# EXHIBIT A

## Schedule 1.1(l)

### Disputed Contract

| NAME OF AGREEMENT | TYPE OF AGREEMENT/ARRANGEMENT |
|---|---|
| Master Mortgage Loan Purchase and Servicing Agreement, dated as of May 1, 2006, by and among American Home Mortgage Corp. (Seller), American Home Mortgage Servicing, Inc. (Servicer) and DB Structured Products, Inc. (Initial Purchaser) | Loan Sale/Servicing Agreement |

## EXHIBIT B

### Schedule 8.2(e)

| If the Initial Closing Servicing Balance is: | | The Minimum Net Proceeds are: |
|---|---|---|
| Greater than ($Billion) | and less than or equal to ($Billion) | |
| 38.00 | 38.25 | $405,253,050.82 |
| 38.25 | 38.50 | $407,432,078.60 |
| 38.50 | 38.75 | $409,615,134.15 |
| 38.75 | 39.00 | $411,802,217.49 |
| 39.00 | 39.25 | $413,993,328.60 |
| 39.25 | 39.50 | $416,188,467.49 |
| 39.50 | 39.75 | $418,387,634.15 |
| 39.75 | 40.00 | $420,590,828.60 |
| 40.00 | 40.25 | $422,798,050.82 |
| 40.25 | 40.50 | $425,009,300.82 |
| 40.50 | 40.75 | $427,224,578.60 |
| 40.75 | 41.00 | $429,431,488.32 |
| 41.00 | ----- | $431,587,738.32 |
| | | plus 0.92% of the portion of the Initial Closing Servicing Balance over $41.00 Billion |

## **EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                           :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                  :
                                                                 :   Jointly Administered
         Debtors.                                                :
                                                                 :   **Docket Ref. No. 11, 1711, \_\_\_\_**
---------------------------------------------------------------- x

## ORDER APPROVING DEBTORS' ENTRY INTO
## SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT

Upon consideration of the request of the above-captioned debtors and debtors-in possession (the "Debtors") for the issuance of an order approving the Debtors' entry into that certain Second Amendment to Asset Purchase Agreement, dated November \_\_, 2007 (the "Amendment"); and it appearing that the Court has jurisdiction over this matter and the relief requested; and it appearing that the Debtors' entry into the Amendment is consistent with, and authorized by, this Court's *Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (a) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (b) Granting Certain Related Relief* [Docket No. 1711]; and it appearing that the Debtors' entry into the Amendment is in the best interest of the Debtors, its estates, and its creditors; and after due deliberation; it is hereby

ORDERED, that the Debtors are authorized to enter into the Amendment.

Dated: Wilmington, Delaware
       November \_\_\_\_, 2007

_____
Christopher S. Sontchi
United States Bankruptcy Judge