# EXHIBIT A

**EXECUTION VERSION**

SECOND AMENDMENT
TO ASSET PURCHASE AGREEMENT

This Second Amendment to Asset Purchase Agreement dated as of November 6, 2007 (this "Second Amendment"), is entered into by and among AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser"), American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc, a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, the "Sellers").

WHEREAS, Purchaser and Sellers are parties to that certain Asset Purchase Agreement dated as of September 25, 2007, as amended by that certain First Amendment to Asset Purchase Agreement, dated as of November 1, 2007 (the "Agreement");

WHEREAS, Section 11.4 of the Agreement permits amendment of the Agreement by a written instrument signed by all of the parties to the Agreement with the prior written consent of the Administrative Agent (as defined in the Agreement) and with prior consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases (as defined in the Agreement); and

WHEREAS, the parties to the Agreement desire to amend certain provisions of the Agreement pursuant to this Second Amendment in order to amend the provisions relating to Disputed Servicing Agreements,

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1.    Definitions. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Agreement.

Section 2.    Amended Definition. Section 1.1 of the Agreement is amended by deleting the definitions of "Disputed Servicing Agreement" and "Purchaser Subservicing Agreement" as they appear therein and respectively inserting the following definitions in their place:

> "Disputed Servicing Agreement" means a Servicing Agreement described in and set forth on Schedule 1.1(k) or on Schedule 1.1(l).

> "Purchaser Subservicing Agreement" means a servicing agreement to be executed on behalf of each of Sellers and Purchaser, in form and substance reasonably satisfactory to Sellers and Purchaser, under which Purchaser will, after the Final Closing, serve as a subservicer for certain Mortgage Loans and with respect to any Disputed Servicing Agreements that, as of the Final

Closing, have not become Purchased Assets in accordance with Section 4.4.

Section 3.   Dispute Escrow. The Agreement is amended by deleting Section 4.4 of the Agreement and inserting the following new Section 4.4 of the Agreement in its place:

Section 4.4    Dispute Escrow. At the Initial Closing, Purchaser shall deliver to the Dispute Escrow Agent, to be held pursuant to the Dispute Escrow Agreement, an amount equal to 0.92% of the unpaid principal balance (as set forth in the Initial Closing Date Report) of the Mortgage Loans under the Disputed Servicing Agreements (such amount, as adjusted pursuant to Section 4.1(c), the "Dispute Amount") in immediately available funds. With respect to each Disputed Servicing Agreement, Sellers shall use their commercially reasonable efforts to (i) negotiate a settlement or have issued as soon as possible a Final Order determining whether such Disputed Servicing Agreement was terminated at or prior to the Petition Date in the case of any Disputed Servicing Agreement set forth on Schedule 1.1(k); or (ii) defend (or negotiate a resolution of) any appeal of the Sale Approval Order relating to the Disputed Servicing Agreement set forth on Schedule 1.1(l), provided, that Sellers may, in their reasonable discretion, determine that Sellers will not seek to negotiate a settlement or have issued a Final Order with respect to any one or more Disputed Servicing Agreements set forth on Schedule 1.1(k) or, with the written consent of the Administrative Agent and after consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases, to defend (or negotiate a resolution of) any appeal of the Sale Approval Order relating to the Disputed Servicing Agreement set forth on Schedule 1.1(l), and provided further, that, without the prior written consent of Purchaser, Sellers shall not agree to a settlement (including any resolution of any appeal of the Sale Approval Order) which adversely affects Purchaser's rights and benefits under a Disputed Servicing Agreement if it otherwise were to become a Purchased Asset or which adversely affects Purchaser's rights and benefits under this Agreement or the Sale Approval Order. To the extent requested by Sellers, Purchaser shall use its commercially reasonable efforts to assist in any negotiations with respect to Disputed Servicing Agreements or defense of any appeal of the Sale Approval Order relating to any Disputed Servicing Agreements. For each Disputed Servicing Agreement set forth on Schedule 1.1(k) for which a settlement is negotiated or a Final Order is issued determining that such Disputed Servicing Agreement was not terminated at or prior to the Petition Date and for the Disputed Servicing Agreement set forth on Schedule 1.1(l) with respect to which the Sale Approval Order becomes a Final

Order permitting transfer of such Disputed Servicing Agreement to Purchaser as contemplated by this Agreement and in the same manner as Servicing Agreements are to be transferred under the Sale Approval Order in the form entered on October 30, 2007, Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver the portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to the Administrative Agent on behalf of Sellers and such Servicing Agreement shall be a Purchased Asset. For each Disputed Servicing Agreement set forth on Schedule 1.1(k) for which a Final Order is issued determining that such Disputed Servicing Agreement was terminated at or prior to the Petition Date and for each Disputed Servicing Agreement set forth on Schedule 1.1(l) for which a Final Order is issued determining that transfer of such Disputed Servicing Agreement to Purchaser as contemplated by this Agreement and in the same manner as Servicing Agreements are to be transferred under the Sale Approval Order in the form entered on October 30, 2007, is not permissible, or, with respect to either type of Disputed Servicing Agreement, with respect to which Sellers reasonably determine (with the written consent of the Administrative Agent and after consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases in the case of a determination regarding the Disputed Servicing Agreement set forth on Schedule 1.1(l)) that neither a negotiated settlement nor a Final Order will be sought (including a determination not to defend any appeal of the Sale Approval Order with respect to the Disputed Servicing Agreement set forth on Schedule 1.1(l)), Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver the portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to Purchaser and such Servicing Agreement shall be an Excluded Asset. In the event any Disputed Servicing Agreement has not become an Excluded Asset pursuant to the foregoing sentence by the later of (i) Final Closing and (ii) September 30, 2008, Purchaser may elect to (a) treat such Servicing Agreement as an Excluded Asset and Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver any portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to Purchaser or (b) treat such Servicing Agreement as a Purchased Asset and Sellers and Purchaser shall instruct the Dispute Escrow Agent to deliver any portion of the Dispute Amount (together with any interest and earnings allocable thereto) related to such Servicing Agreement to an account or accounts designated by the Administrative Agent (pursuant to the Sale Approval Order) on behalf of Sellers.

Section 4.    Subservicing of AHM Loans. Section 6.10(f) of the Agreement is amended by deleting subclause (i) as it appears therein and inserting the following subclause (i):

> (i) Mortgage Loans serviced under the Disputed Servicing Agreements that, as of the Final Closing Date, have not become Purchased Assets and, prior to the sale to a third party, the Servicing Rights Held for Sale and

Section 5.    Schedules. The Agreement is amended by adding Schedule 1.1(l) as set forth on Exhibit A.

Section 6.    Minimum Sale Proceeds. Schedule 8.2(e) to the Agreement is deleted and Schedule 8.2(e) as set forth on Exhibit B is inserted in its place.

Section 7.    Consent; Consultation. Sellers jointly and severally represent and warrant to Purchaser that Sellers have obtained the prior written consent of the Administrative Agent to enter into this Second Amendment and have consulted with the official committee of unsecured creditors appointed in the Bankruptcy Cases prior to entering into this Second Amendment.

Section 8.    Amendment. This Second Amendment may be amended, modified and supplemented only by a written instrument signed by all of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Second Amendment. Sellers shall not agree to amend, modify or supplement this Second Amendment, or waive any provision of this Second Amendment without the prior written consent of the Administrative Agent and without prior consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases.

Section 9.    Counterparts. This Second Amendment may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when two or more counterparts have been signed by each of the parties and delivered to the other parties. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

Section 10.    Entire Agreement; No Third Party Beneficiaries. The Agreement as amended by this Second Amendment (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and thereof, except for the Confidentiality Agreement, which shall remain in full force and effect until the Initial Closing Date, and (b) is not intended to confer any rights or remedies upon any Person other than the parties hereto and thereto, including without limitation any Business Employee or Transferred Employee.

Section 11.    Governing Law. THIS SECOND AMENDMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH (A) THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO RULES GOVERNING THE CONFLICT OF LAWS AND, (B) TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

IN WITNESS WHEREOF, Purchaser and Sellers have executed this First Amendment or caused this First Amendment to be executed by their respective officers thereunto duly authorized as of the date first written above.

AH MORTGAGE ACQUISITION CO., INC.,
as Purchaser

By: _____
Name: DAVID H. STORPEN
Title: VICE PRESIDENT

AMERICAN HOME MORTGAGE
INVESTMENT CORP.,
as Seller and Debtor and Debtor-in-Possession

By: _____
Name:
Title:

AMERICAN HOME MORTGAGE CORP,
as Seller and Debtor and Debtor-in-Possession

By: _____
Name:
Title:

AMERICAN HOME MORTGAGE SERVICING, INC.,
as Seller and Debtor and Debtor-in-Possession

By: _____
Name:
Title:

IN WITNESS WHEREOF, Purchaser and Sellers have executed this Second Amendment or caused this Second Amendment to be executed by their respective officers thereunto duly authorized as of the date first written above.

        AH MORTGAGE ACQUISITION CO., INC.,
        as Purchaser

By: _____
      Name:
      Title:

AMERICAN HOME MORTGAGE
INVESTMENT CORP.,
as Seller and Debtor and Debtor-in-Possession

By: _____
      Name: Michael Strauss
      Title: Chief Executive Officer

AMERICAN HOME MORTGAGE CORP,
as Seller and Debtor and Debtor-in-Possession

By: _____
      Name: Michael Strauss
      Title: President

AMERICAN HOME MORTGAGE
SERVICING, INC.,
as Seller and Debtor and Debtor-in-Possession

By: _____
      Name: Michael Strauss
      Title: President

EXHIBIT A

Schedule 1.1(l)

Disputed Contract

| NAME OF AGREEMENT | TYPE OF AGREEMENT/ARRANGEMENT |
|---|---|
| Master Mortgage Loan Purchase and Servicing Agreement, dated as of May 1, 2006, by and among American Home Mortgage Corp. (Seller), American Home Mortgage Servicing, Inc. (Servicer) and DB Structured Products, Inc. (Initial Purchaser) | Loan Sale/Servicing Agreement |

# EXHIBIT B

## Schedule 8.2(e)

| If the Initial Closing Servicing Balance is: | | The Minimum Net Proceeds are: |
|---|---|---|
| Greater than ($Billion) | and less than or equal to ($Billion) | |
| 38.00 | 38.25 | $405,253,050.82 |
| 38.25 | 38.50 | $407,432,078.60 |
| 38.50 | 38.75 | $409,615,134.15 |
| 38.75 | 39.00 | $411,802,217.49 |
| 39.00 | 39.25 | $413,993,328.60 |
| 39.25 | 39.50 | $416,188,467.49 |
| 39.50 | 39.75 | $418,387,634.15 |
| 39.75 | 40.00 | $420,590,828.60 |
| 40.00 | 40.25 | $422,798,050.82 |
| 40.25 | 40.50 | $425,009,300.82 |
| 40.50 | 40.75 | $427,224,578.60 |
| 40.75 | 41.00 | $429,431,488.32 |
| 41.00 | ----- | $431,587,738.32 plus 0.92% of the portion of the Initial Closing Servicing Balance over $41.00 Billion |