## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------- x
In re:                                                             :    Chapter 11
                                                                   :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                             :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                    :
                                                                   :    Jointly Administered
        Debtors.                                                   :
                                                                   :    Doc. Ref. No. 1700, 1925
                                                                   :
------------------------------------------------------------------- x
```

### CERTIFICATION OF COUNSEL REGARDING DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001(d) AND 9019(a) FOR AN ORDER APPROVING AND AUTHORIZING SETTLEMENT AGREEMENT WITH SOCIÉTÉ GÉNÉRALE, AS ADMINISTRATIVE AGENT, AND BARTON CAPITAL LLC

On October 29, 2007, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] filed the Debtors' Motion Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 4001(d) and 9019(a) For an Order Approving and Authorizing Settlement Agreement With Société Générale, as Administrative Agent, and Barton Capital LLC [Docket No. 1700] (the "Motion").

At the hearing on the Motion held November 14, 2007, the Court indicated its intent to approve the Motion upon the Debtors' presentation of an executed version of the settlement agreement which is the subject of the Motion (the "Agreement").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp, a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Attached hereto as Exhibit 1 is a form of order (the "Order") approving the

Motion, with a fully executed Agreement attached thereto. Accordingly, it is requested that the

Order be entered at the earliest convenience of the Court.


Dated:  Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
       November 14, 2007

                                   /s/ Sean T. Greecher
                           James L. Patton, Jr. (No. 2202)
                           Robert S. Brady (No. 2847)
                           Pauline K. Morgan (No. 3650)
                           Sean M. Beach (No. 4070)
                           Sean T. Greecher (No. 4484)
                           The Brandywine Building
                           1000 West Street, 17th Floor
                           Wilmington, Delaware 19801
                           Telephone: (302) 571-6600
                           Facsimile: (302) 571-1253

                           Counsel for Debtors and Debtors-in-Possession

# Exhibit 1

**Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
In re: : Chapter 11
:
AMERICAN HOME MORTGAGE HOLDINGS, INC., : Case No. 07-11047 (CSS)
a Delaware corporation, et al., :
: Jointly Administered
Debtors. :
------------------------------------------------------------------ x **Docket Ref. No. 1700**

## ORDER APPROVING AND AUTHORIZING SETTLEMENT AGREEMENT WITH SOCIÉTÉ GÉNÉRALE, AS ADMINISTRATIVE AGENT, AND BARTON CAPITAL LLC

Upon consideration of the motion (the "Motion")[1] of American Home Mortgage

Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect

affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively,

"AHM" or the "Debtors"),[2] seeking the issuance of an order, pursuant to Bankruptcy Rules

4001(d) and 9019(a) and Bankruptcy Code section 105(a) approving the Settlement Agreement, a

copy of which is attached hereto as Exhibit A; and it appearing that the Court has jurisdiction

over this matter and the relief requested in the Motion pursuant to 28 U.S.C. sections 157 and

1335; and it appearing that this is a core proceeding pursuant to 28 U.S.C. section 157(b); due

and sufficient notice of the Motion having been given; and it appearing that the relief requested

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Agreement.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

in the Motion is in the best interest of the Debtors, their estates and creditors; and all objections (if any) to the requested relief having been resolved, withdrawn or overruled; and upon the record in these cases; and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED, that the relief requested in the Motion is hereby granted as provided herein; and it is further

ORDERED, that the Agreement in the form attached hereto as Exhibit A is approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 4001(d) and 9019; and it is further

ORDERED, that pursuant to the terms of the Agreement, the Debtors are authorized and empowered to enter into, perform, execute and deliver all documents and take all actions necessary to implement the terms of the Agreement contemplated herein, all of which are approved; and it is further

ORDERED, that the Debtors shall retain the right to assert any and all affirmative defenses to any Retained Claims asserted against the Debtors; and it is further

ORDERED, that the Cooperation Fee shall be paid directly to the Administrative Agent in accordance with the *Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* [Docket No. 554] (together with any extensions or amendments thereto, the "Cash Collateral Order"), regardless of whether the Termination Date (as defined in the Cash Collateral Order) has occurred; and it is further

ORDERED, that this Court shall retain jurisdiction to hear and determine any and all disputes arising out of the implementation of this Order.

Dated:  Wilmington, Delaware
              _____, 2007

                                   _____
                                   Christopher S. Sontchi
                                   United States Bankruptcy Judge

## Exhibit A

**Agreement**

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement"), is entered into as of this __ day of
October__, 2007, by and among American Home Mortgage Corp., a New York corporation
("AHM"), American Home Mortgage Servicing, Inc. (f/k/a Columbia National, Incorporated), a
Maryland corporation ("AHMS" and together with AHM, collectively, "Sellers"), Société
Générale, a banking corporation organized under the laws of France, acting in its capacity as
Administrative Agent for the Purchasers party to the MLPSA (as defined below), and Barton
Capital LLC, as Conduit Purchaser and Committed Purchaser under the MLPSA ("Buyers").
Buyers and Sellers are collectively referred to herein as the "parties" and individually as a
"party."

WHEREAS, Sellers and Buyers entered into that certain Mortgage Loan Purchase and
Sale Agreement, dated October 16, 2006 (as amended from time to time, the "MLPSA")
executed by Sellers and Buyers;

WHEREAS, in connection with the MLPSA, Sellers, Buyers, and Deutsche Bank
National Trust Company (the "Custodian") executed that certain Custodial Agreement, dated as
of October 16, 2006 (the "Custodial Agreement");

WHEREAS, in connection with the MLPSA, American Home Mortgage Holdings, Inc.
and American Home Mortgage Investment Corp., and the Buyers executed that certain
Performance Guaranty, dated as of October 16, 2006 (the "Performance Guaranty");

WHEREAS, under the terms of the MLPSA, Buyers from time to time have purchased
100% undivided ownership interests in Mortgage Loans from AHM, for which AHMS is
obligated to collect principal and interest payments, hold collections in trust, and remit
collections to Buyers (the "Subject Mortgage Loans");

WHEREAS, Buyers desire to implement the transfer of the servicing obligations with
respect to the Subject Mortgage Loans and in accordance with the MLPSA;

WHEREAS, on August 1, 2007, Société Générale delivered to Sellers a certain notice
("Service Notice") declaring a Termination Date under the MLPSA, allegedly terminating
AHMS' servicing rights thereunder and allegedly effecting a transfer of the servicing of the
Subject Mortgage Loans to Buyers, who would thereafter designate the party to act as successor
servicer for the Subject Mortgage Loans on behalf of Buyers (the "Servicing Transferee");

WHEREAS, on August 6, 2007, Sellers and certain of Sellers' affiliates (collectively, the
"Debtors") each filed for Chapter 11 bankruptcy protection in the United States Bankruptcy
Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on August 6, 2007, the Debtors filed the *Emergency Motion of the Debtors
for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of
Certain Assets Used in Debtors' Loan Servicing Business; (III) Approving Form and Manner of
Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets*

*Free and Clear of Liens, Claims, Encumbrances and Other Interests; (II) Authorizing and
Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of
Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related
Relief* (the "Sale Motion");

WHEREAS, on September 13, 2007, Buyers filed an objection to the Sale Motion
[Docket No. 733] (the "Sale Objection") and a motion for relief from the automatic stay to
effectuate the transfer of servicing rights under the MLPSA [Docket No. 734] (the "Stay Relief
Motion"); and

WHEREAS, Sellers and Buyers now desire, in full and final settlement and resolution of
the Sale Objection and the Stay Relief Motion, to terminate the MLPSA and implement the
transfer of the servicing of the Subject Mortgage Loans, in accordance with this Agreement;

NOW, THEREFORE, Sellers and Buyers, for good and valuable consideration, the
receipt and adequacy of which is hereby acknowledged, intending to be legally bound hereby,
agree as follows:

1.    Capitalized terms used in this Agreement and not otherwise defined herein shall
have the meaning ascribed to such terms in the MLPSA unless otherwise indicated.

2.    Upon the entry of a final order of the Bankruptcy Court approving this
Agreement, the parties agree that the MLPSA shall be deemed terminated as permitted by
Section 11.01 of the MLPSA and from and after the execution of this Agreement, the parties
shall only have those specific obligations set forth in this Agreement with respect to any
Mortgage Loans purchased by Buyers under the MLPSA.

3.    Buyers shall retain their current ownership rights with respect to all Mortgage
Loans (including Subject Mortgage Loans) and related interests (including but not limited to
servicing rights and other Mortgage Loan Assets), purchased in accordance with the MLPSA
prior to the date of this Agreement free and clear of any and all liens, claims, interests or pledges
arising by, through, or under any of the Seller Parties (defined below).

4.    With respect to any Mortgage Loans purchased by Buyers prior to the date of this
Agreement, Sellers shall use their commercially reasonable efforts to resolve any and all
document exceptions, including all outstanding trailing documents such as a Final Title Policy
and recorded mortgage or other issues rendering any Mortgage Loan to be a Defective Mortgage
Loan, as well as use commercially reasonable efforts to resolve any underwriting exceptions to
any Mortgage Loans. Sellers shall also use commercially reasonable efforts to cooperate with
Buyers in Buyers' efforts to sell the Mortgage Loans to the applicable Approved Takeout
Investors or other third-parties in Buyers' sole discretion.

5.    (a)    Sellers shall (i) upon the later of five (5) business days of the entry of a
final order of the Bankruptcy Court approving this Agreement or five (5) business days after
receiving notification from the Buyer of the identity of the Servicing Transferee (the "Transfer
Date"): (x) commence transferring all files and documents, including electronic files relating to

the Subject Mortgage Loans and all escrow amounts or other funds held by Sellers with respect to the Subject Mortgage Loans to the Servicing Transferee or such other servicer designated in writing by Buyers, including providing updated data on the Subject Mortgage Loans in a format reasonably acceptable to the Servicing Transferee and (y) continue providing all files, documents and other information relating to the Subject Mortgage Loans to the Buyers or the Servicing Transferee as reasonably requested and as necessary to effectuate the successful transition of servicing to the Servicing Transferee, including the satisfaction of any document exceptions identified by the Servicing Transferee; (ii) immediately upon the entry of a final order of the Bankruptcy Court (x) remit into the Collection Account, pursuant to the wire instructions set forth on Exhibit B attached hereto, an amount equal to $2,666,000, which amount shall reflect the amount of P&I Collections collected by the Sellers on the Buyers' behalf from July 1, 2007 through and including July 31, 2007 and (y) remit, immediately upon receipt, into the Collection Account, pursuant to the wire instructions set forth on Exhibit B attached hereto, all P&I Collections received by the Debtors after August 1, 2007 (collectively, the "P&I Payment"); (iii) provide Buyers with access and cooperation during normal business hours  upon not less than 48 hours notice to Sellers, including onsite access to Sellers' facility in Melville, New York and Texas and personnel access, in accordance with Exhibit C attached hereto and (iv) use commercially reasonable efforts to ensure that all transfers to the Servicing Transferee (except those transfers set forth in subparagraph (a)(i)(y) of this paragraph 5), delivery of all "goodbye" letters (as hereinafter described in this paragraph 5(a)) to the Subject Mortgage Loan borrowers, and any other obligations of Sellers under this paragraph 5(a) within fifteen (15) business days from the Transfer Date, unless otherwise agreed by the parties.  For this purpose, Sellers shall cooperate with Buyers or any Servicing Transferee to obtain the consent or approval of any third party underwriter or any other insurer or guarantor that may be necessary in connection with the transfer of servicing rights, as well as use commercially reasonable efforts to cooperate and coordinate with Servicing Transferee and/or Buyers to comply with any applicable so-called "goodbye" letter requirements or other applicable requirements of the Real Estate Settlement Procedures Act or other applicable legal or regulatory requirement associated with transfer of the servicing of the Subject Mortgage Loans.  Any "goodbye" letter shall be in form and substance reasonably satisfactory to Buyers.

   (b) In the event that after the execution of this Agreement, Sellers receive any documents or funds on account of the Mortgage Loans, it is agreed that such documents or funds, as applicable, do not constitute the property of the Sellers or of the Sellers' bankruptcy estates and Sellers shall immediately notify Buyers of such receipt and immediately forward such property to Servicing Transferee, unless directed otherwise by Buyers.  In the event any borrower under any Subject Mortgage Loan contacts Sellers regarding its Mortgage Loan, such borrower shall be referred to Servicing Transferee.

   6. For and in consideration of the services to be provided by Sellers hereunder and in lieu of any other amounts that may be payable to Sellers under the terms of the MLPSA, including, without limitation, any Completion Fee or Servicing Fee, Buyers shall pay Sellers the sum of $150,000.00 (the "Cooperation Fee") by wire transfer of immediately available funds to the account designated in Exhibit "A" to this Agreement, $75,000 of which is to be paid upon the Sellers' transfer of the P&I Payment, and $75,000 of which is to be paidwithin five (5) Business Days of the Sellers' satisfaction of their obligations under paragraph 5(a), above. Upon payment of the Cooperation Fee, Buyers shall have no further payment obligations to Sellers under the

MLPSA or this Agreement and to the extent otherwise payable, any Completion Fees or Servicing Fees shall be waived.

The parties agree that the Sellers' failure to perform their obligations hereunder will cause irreparable injury to the Buyers that cannot be compensated by money damages and that specific performance shall be an appropriate remedy for such performance failures.

7.      The servicing obligations with respect to the Subject Mortgage Loans shall be transferred and assigned to and accepted by Buyers on an "as is," "where is" and "with all faults" condition, free of any warranties or representations whatsoever, whether express or implied, except as expressly set forth in this Agreement, including, without limitation, paragraph 4 of this Agreement.

8.      (a)      Upon Buyers' satisfaction of their obligations under this Agreement and subject to Bankruptcy Court approval, Sellers hereby unconditionally release Buyers and Buyers' officers, directors, partners, stockholders, employees, representatives, attorneys, agents and affiliates (collectively with Buyers, "Buyer Parties"), of and from any and all liabilities, debts, guarantees, claims, demands, actions, causes of action, suits, controversies, disputes, dues, sums of money, accounts, reckonings, bonds, bills, covenants, promises, variances, trespasses, damages, judgments, executions, commitments, responsibilities, obligations and rights to payment of any kind or nature whatsoever, in law, admiralty, equity, arbitration or otherwise, whether known or unknown, direct or indirect, absolute or contingent, accrued or unaccrued, matured or unmatured, disputed or undisputed, secured or unsecured, *in personam* or *in rem*, and whether or not reflected, or required to be reflected, in any party's financial statements (collectively, "Liabilities"), arising under or in connection with the MLPSA, the Performance Guaranty, Custodial Agreement, or any other agreement or document executed or delivered in connection therewith. Sellers further agree not to challenge Buyers' ownership rights and interests relating to the Mortgage Loans and Mortgage Loan Assets (including servicing rights); provided, however, that the release granted by Sellers shall have no effect upon the continuing rights, Liabilities and obligations of Buyers under this Agreement. Sellers represent and warrant to Buyers that neither Seller has sold, assigned, granted, or transferred to any other person or entity any claim, demand, or cause of action that Sellers have, may have had or in the future may have with respect to the MLPSA, the Custodial Agreement or any other agreement or document executed or delivered in connection therewith.

(b)      Upon Sellers' satisfaction of their obligations under this Agreement and subject to Bankruptcy Court approval, Buyers hereby unconditionally release Sellers and Sellers' respective officers, directors, partners, stockholders, employees, representatives, attorneys, agents and affiliates (collectively with Sellers, "Seller Parties"), of and from any and all Liabilities arising under or in connection with the MLPSA, the Performance Guaranty, the Custodial Agreement or any other agreement or document executed or delivered in connection therewith; provided, however, that the foregoing release granted by Buyers shall have no effect upon the continuing rights, Liabilities and obligations of Sellers under this Agreement, and provided further that the Buyer Parties shall not release AHM Corp., American Home Mortgage Holdings, Inc. and American Home Mortgage Investment Corp. from Liabilities in respect of certain claims the Buyer Parties may have against the Seller Parties, which unreleased claims are

solely limited to claims existing under sections 7.01 or 2.04(c) of the MLPSA, the Performance Guarantee or the Custodial Agreement, and are further limited to claims that arise out of or on account of violations of applicable law in connection with the origination, underwriting, investigation, documentation, settlement, or servicing of the Mortgage Loans under the Real Estate Settlement Procedures Act, the Truth in Lending Act, the Home Ownership and Equity Protection Act or any other law, rule or regulation relating to usury, predatory lending, high cost lending, truth-in-lending, fair credit billing, fair credit reporting, equal credit opportunity, fair debt collection practices, privacy and other applicable federal, state and local consumer protection laws (the "Retained Claims"). The parties agree that this Agreement shall not be construed as creating any administrative claims under section 503(b) of the Bankruptcy Code or otherwise on account of the Retained Claims. This Agreement shall not create, enhance, or diminish the Buyer Parties' rights to assert Retained Claims against the Seller Parties under the MLPSA, the Performance Guarantee or the Custodial Agreement. Buyers represent and warrant to Sellers that Buyers have not sold, assigned, granted, or transferred to any other person or entity any claim, demand, or cause of action that Buyers have, may have had or in the future may have with respect to the MLPSA, the Performance Guarantee and the Custodial Agreement.

9.    No party may assign such party's rights or obligations under this Agreement without obtaining the prior written consent of the other parties hereto. Notwithstanding the foregoing, nothing in this Agreement shall impair Buyers' ability to sell or otherwise transfer or assign its interests in the Mortgage Loans, including the corresponding servicing rights of such loans.

10.    This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof, supersedes all existing agreements among the parties with respect to such matters, and shall not be modified or amended except by a further written document signed by all parties.

11.    No provision hereof may be waived except by an agreement in writing signed by the waiving party. Any waiver by any party of a breach of any provision of this Agreement shall not operate as or be construed to be a waiver of any other breach of that provision or of any breach of any other provision of this Agreement. The failure of a party to insist upon strict adherence to any term of this Agreement on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

12.    The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns including any chapter 7 trustee appointed in the Sellers' bankruptcy cases.

13.    This Agreement does not create, and shall not be construed as creating, any rights enforceable by any person not a party to this Agreement. Sellers and Buyers mutually represent to each other that they have not assigned their rights under the MLPSA to any other entity and that no other entity may assert rights under the MLPSA as a third-party beneficiary or otherwise.

14.    All notices and other communications required or permitted under this Agreement shall be in writing and shall be delivered personally or sent by: (i) registered mail, or certified mail, return receipt requested; (ii) a nationally-recognized courier service guaranteeing next-day delivery, charges pre-paid; or (iii) facsimile (with the original promptly sent by any of the foregoing methods). Any such notices shall be addressed to the receiving party at such party's address set forth below, or at such other address as may from time to time be furnished by similar notice by either party.

If to Buyers, to:

Société Générale
1221 Avenue of the Americas
New York, NY 10020
Attention: James F. Ahern, Managing Director
Facsimile: (212) 278-7320

With copies (which shall not constitute notice) to:

Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Attention: Matthew A. Clemente, Esquire
Facsimile: (312) 853-7036

If to Sellers, to:

American Home Mortgage Corp.
520 Broadhollow Road
Mellville, New York 11747
Attention: Mr. Craig Pino
                Executive Vice President & Treasurer
Facsimile: (516) 495-5411

With copies (which shall not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Attention: Craig D. Grear, Esquire
Facsimile: (302) 576-3296

Any such notice or communication shall be effective upon (i) personal delivery, (ii) upon transmission by facsimile and subsequent receipt by the sender of a facsimile confirmation report, (iii) one day after it is sent, if sent by courier, or (iv) three (3) days after it is sent, if sent by registered or certified mail, as the case may be.

15.     The effectiveness of this Agreement, and the parties' obligations to perform hereunder, is conditioned upon the entry of a final order of the Bankruptcy Court approving this Agreement in its entirety, which order and supporting pleadings shall be in form and substance reasonably satisfactory to the parties hereto. If any provision of this Agreement, or any part thereof, is declared invalid, illegal, or incapable of being enforced by any court of competent jurisdiction for any reason whatsoever, all of the remaining provisions of this Agreement shall nevertheless continue in full force and effect, and no provision shall be deemed dependent upon any other provisions unless so expressed herein. The invalid unenforceable provision shall be interpreted, if possible, so as to render it enforceable on a limited and reasonable basis. Notwithstanding the foregoing, upon any binding determination by a court of competent jurisdiction that (i) Buyers are not entitled to retain any portion of any Mortgage Loans, including servicing rights and related interests, or any portion of the Collections paid to Buyers under the MLPSA or this Agreement or (ii) any provision of this Agreement is unenforceable, then the releases issued by Buyers and Sellers in paragraph 8 shall be revoked and of no force and effect, and Sellers shall repay to Buyers the Cooperation Fee no later than three (3) Business Days after such a determination.

16.     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to any conflict of law provisions thereunder.

17.     Each of the parties to this Agreement participated in the drafting of this Agreement and the interpretation of any ambiguity contained in this Agreement will not be affected by the claim that a particular party drafted any provision hereof.

18.     Each of the parties to this Agreement mutually represents that each of the persons executing this Agreement on behalf of it is duly authorized to execute and deliver this Agreement on behalf of such party, and that each party has full power and authority to enter into this Agreement.

*{Signature Page Follows}*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above-written.

Sellers:

AMERICAN HOME MORTGAGE CORP.

By:_____
    Name: Craig Pino
    Title: EVP & Treasurer

AMERICAN HOME MORTGAGE
SERVICING, INC.

By:_____
    Name: Craig Pino
    Title: EVP & Treasurer

Buyers:

SOCIETE GENERALE, as Administrative Agent

By:_____
    Name:
    Title:

BARTON CAPITAL LLC, as Conduit Purchaser and Committed Purchaser

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above-written.

Sellers:

AMERICAN HOME MORTGAGE CORP.

By:_____
      Name:
      Title:

AMERICAN HOME MORTGAGE
SERVICING, INC.

By:_____
      Name:
      Title:

Buyers:

SOCIETE GENERALE, as Administrative Agent

By:_____
      Name:  James F. Ahern
      Title:  Managing Director

BARTON CAPITAL LLC, as Conduit Purchaser
and Committed Purchaser

By:_____
      Name:
      Title:

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above-written.

Sellers:

AMERICAN HOME MORTGAGE CORP.

By:_____
     Name:
     Title:

AMERICAN HOME MORTGAGE
SERVICING, INC.

By:_____
     Name:
     Title:

Buyers:

SOCIETE GENERALE, as Administrative Agent

By:_____
     Name:
     Title:

BARTON CAPITAL LLC, as Conduit Purchaser
and Committed Purchaser

By: _Doris J. Hearn_
     Name:   Doris J. Hearn
     Title:    Vice President