# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : |
| | : Chapter 11 |
| AMERICAN HOME MORTGAGE | : Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | : |
| | : Jointly Administered |
| Debtors. | : |
| | : Re: Docket No. 1967 |

## INTERIM ORDER PURSUANT TO SECTIONS 105(a), 362, AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (A) APPROVING LIMITED RECOURSE DEBTOR-IN-POSSESSION FINANCING, (B) GRANTING LIENS, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF

Upon the Motion for Interim and Final Orders (I) Authorizing Certain Debtors to Obtain Postpetition Financing and Grant Security Interests Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364(c); (II) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(c); and (III) Granting Related Relief (the "Motion") dated November 12, 2007 of American Home Mortgage Investment Corp. ("AHMIC"), American Home Mortgage Corp. ("AHMC"), and American Home Mortgage Servicing, Inc. ("AHMS"), seeking, *inter alia*:

(i) authorization for debtors AHMIC, AHMC, and AHMS (collectively, the "Borrowers") to obtain limited recourse postpetition financing (the "Limited Recourse DIP Facility") pursuant to sections 105(a), 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by entering into that certain $50,000,000 Debtor-in-Possession Loan and Security Agreement dated November [__], 2007 (as the same may be amended, supplemented, or otherwise modified from time to time, the "Limited Recourse DIP Credit Agreement"[1], a

---

[1] Capitalized terms used herein but not otherwise defined herein shall have the meanings set forth in the Limited Recourse DIP Credit Agreement.

NY1-4039493v9
DB02:6370574.1

066585.1001

substantially final copy of which is annexed hereto as Exhibit "A") by and among the Borrowers, the several lenders from time to time party thereto (collectively, the "Lenders"), AH Mortgage Acquisition Co., Inc., in its capacity as Lender and Administrative Agent (collectively, the Lenders and the Administrative Agent, the "Secured Parties"), subject to the terms and conditions set forth in this Order, the Limited Recourse DIP Credit Agreement, and all related security and other agreements, documents, notes, and instruments executed or delivered pursuant hereto or in connection herewith or therewith (collectively, with the Limited Recourse DIP Credit Agreement, and as any of the same shall be amended, restated, supplemented or otherwise modified from time to time in accordance with this Interim Order, the "Limited Recourse DIP Financing Documents");

(ii) the granting of liens and security interests in favor of the Administrative Agent for the benefit of the Secured Parties pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code; and

(iii) requesting, pursuant to Bankruptcy Rules 2001 and 4001, that an interim hearing (the "Emergency Interim Hearing") be held before the Court on an emergency basis to consider entry of this interim order, and further requesting that a final hearing (the "Final Hearing") thereafter be held before the Court to consider entry of a final order (the "Final Order") authorizing the financing contemplated by the Limited Recourse DIP Financing Documents, pursuant to the notice and other provisions set forth in the Motion.

The Emergency Interim Hearing having been held on November 14, 2007, and upon all of the pleadings filed with the Court and upon the record of the Emergency Interim Hearing, and after due deliberation and consideration, and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS PURSUANT TO BANKRUPTCY RULE 7052:**

A.      **Commencement of Cases.** On August 6, 2007 (the "Commencement Date"), each of the debtors in the above-captioned cases (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108. On August 14, 2007, the United States Trustee for the District of Delaware appointed The Official Committee of Unsecured Creditors (the "Committee") in these cases. Pursuant to order of the Court, the Debtors' cases are being jointly administered under the case number above.

B.      **Jurisdiction and Venue.** The Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for proceedings on the Motion is proper in this Court pursuant to 28 U.S.C. § 1409.

C.      **Notice.** Notice by facsimile, hand delivery, email and/or overnight courier of the Emergency Interim hearing has been given to (a) the United States Trustee, (b) counsel for the Administrative Agent, (c) counsel for Bank of America, N.A. as administrative agent with respect to a certain secured second amended and restated credit agreement dated as of August 10, 2006, (d) the Committee, and (e) those parties that have entered their appearance and requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Such notice satisfies Bankruptcy Rule 4001(c) and (d).

D.      **Sale of Servicing Business.** On October 30, 2007, this Court entered its Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A)

Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, and (ii) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief [D.I. 1711] (the "Sale Order"). Pursuant to the Sale Order, AH Home Mortgage Acquisition Co., Inc. (in such capacity, the "Purchaser") has been granted a first priority security interest in and lien on Purchaser's Collateral (as defined in the Sale Order) effective upon the Initial Closing (as defined in the Purchase Agreement (defined below)) and the right to assign such security interest and lien in connection with a Financing. In connection with the Purchase Agreement approved pursuant to the Sale Order, the Borrowers agreed to take certain actions in connection with a Financing.

    E.    **Willingness to Lend**. The Lenders are willing to make the Limited Recourse DIP Facility available and to make the loans and advances pursuant to the terms of the Limited Recourse DIP Financing Documents, but only if the Administrative Agent on behalf of the Lenders is granted a security interest in and liens on the Collateral (as defined in Paragraph 8 below), pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, in the priority set forth herein.

    F.    **Business Judgment and Good Faith**. Based on the record before the Court, the terms of the Limited Recourse DIP Facility are fair, just, and reasonable under the circumstances, are consistent with the Purchase Agreement approved by the Court pursuant to the Sale Order, are appropriate for secured financing to a debtor in possession, reflect the Borrowers' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Based on the record before the Court, the terms of the Limited Recourse DIP Facility have been negotiated in good

faith and at arm's length by and among the parties, with all parties represented by counsel. Based on the record before the Court, any credit extended under the terms of the Limited Recourse DIP Facility is hereby found to be extended in good faith by the Lenders as that term is used in section 364(e) of the Bankruptcy Code. Based on the record before the Court, the Secured Parties are hereby found to be acting in good faith within the meaning of section 364(e) of the Bankruptcy Code in closing the transactions contemplated in the Limited Recourse DIP Financing Agreements after the entry of this Interim Order. Based on the record before the Court, none of the Secured Parties is an "insider" or "affiliate" of any of the Debtors (as such terms are defined in the Bankruptcy Code).

G.      **Property of the Estate**. Each item of the Collateral constitutes property of the estate of at least one of the Borrowers.

H.      **Good Cause**. Authorizing the Limited Recourse DIP Facility and other relief granted herein is appropriate to provide the Borrowers with liquidity to support working capital needs to the extent incurred in the Ordinary Course of Business and as permitted by the Limited Recourse DIP Facility for the purpose of operating the Servicing Business (as defined in the Purchase Agreement) between the Initial Closing and the Final Closing (as defined in the Purchase Agreement).

Based on the foregoing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.      The Motion is granted in accordance with the terms of this Interim Order. Any objections to the Motion with respect to entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2. The Borrowers are hereby authorized upon the Initial Closing, pursuant to the terms of this Interim Order and the terms and conditions of the Limited Recourse DIP Financing Documents, to borrow funds under the Limited Recourse DIP Facility in such amount or amounts as may be available to or for the benefit of the Borrowers from the Secured Parties, which shall not exceed the aggregate amount (the "Interim Amount") equal to $35,000,000 during the period from the entry of this Interim Order through the entry of the Final Order, in accordance with, and subject to, the terms of the Limited Recourse DIP Financing Documents and this Interim Order.

3. Except as otherwise expressly set forth in this Interim Order, the terms and conditions of the Limited Recourse DIP Financing Documents are hereby approved in all respects. Upon execution and delivery by the Borrowers of the Limited Recourse DIP Financing Documents, the Limited Recourse DIP Financing Documents shall constitute valid and binding obligations of the Borrowers, enforceable against each of the Borrowers in accordance with their terms; *provided*, notwithstanding any other provision of this Interim Order or of the Limited Recourse DIP Financing Documents, the Borrowers shall not, prior to the entry of the Final Order approving the Limited Recourse DIP Financing Documents, borrow an aggregate principal amount of Loans more than the Interim Amount. The Limited Recourse DIP Financing Documents shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Borrowers and the Secured Parties. All provisions in the Limited Recourse DIP Financing Documents are binding and enforceable in full even if not expressly referenced in this Interim Order.

4. The Borrowers are hereby authorized and directed to do and perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the

execution of all security agreements, financing statements, and other filings and registrations) which may be required or necessary for the Borrowers' performance under the Limited Recourse DIP Financing Documents.

5.      Each officer of each Borrower, and each such other individual as may be so authorized by the Board of Directors of such Borrower, acting singly, is hereby authorized to execute and deliver any and all of the Limited Recourse DIP Financing Documents and related documents, such execution and delivery to be conclusive of their respective authority to act in the name and on behalf of the Borrowers.

6.      AHMS is hereby authorized to act as the Administrative Borrower on behalf of each other Borrower with respect to the Borrowers' rights and obligations under the Limited Recourse DIP Financing Documents, including, without limitation, requesting Loans thereunder. Subject in all cases to the limited recourse provisions set forth in Paragraph 7 below and in Section 3.05 of the Limited Recourse DIP Credit Agreement (collectively, the "Limited Recourse Provisions"), each Borrower shall be jointly and severally liable for all Obligations of the Borrowers arising under the Limited Recourse DIP Financing Documents (collectively, the "Limited Recourse DIP Obligations"). Any notice given to, or demand made on, any Borrower by the Secured Parties, pursuant to this Interim Order or the Limited Recourse DIP Financing Documents shall constitute notice to, or demand on, all Borrowers without any requirement to provide any such notice or demand (or copy thereof) to the other Borrowers.

7.      Notwithstanding anything contained herein, in the Limited Recourse DIP Credit Agreement or in any other Loan Document to the contrary, the liability of the Borrowers is limited solely to the extent, but only to the extent, of the interest of each Borrower in the Collateral only. Upon the occurrence and during the continuance of an Event of Default, any

action taken by the Administrative Agent or any Lender against the Borrowers under the Limited Recourse DIP Credit Agreement or any other Loan Document shall be limited to the Collateral and no attachment, execution or other action or process shall be sought, issued or levied upon any assets, properties or funds of the Borrowers other than the Collateral. In the event of enforcement by the Administrative Agent or any Lender of their remedies under the Limited Recourse DIP Credit Agreement, no judgment for any deficiency upon the Obligations shall be obtained by the Secured Parties against the Borrowers. Any foreclosure on the Collateral by the Administrative Agent under the Limited Recourse DIP Credit Agreement which results in the Administrative Agent obtaining possession or ownership of the Purchased Assets (as defined in the Purchase Agreement) shall be deemed to satisfy and relieve the Borrowers of any requirement under the Purchase Agreement to deliver to the Purchaser any such Purchased Assets over which the Administrative Agent has obtained possession or ownership. Upon the occurrence and during the continuance of an Event of Default, the sole and exclusive remedy of the Secured Parties with respect to the Collateral shall be limited to the collection by the Secured Parties of the cash proceeds thereof upon the receipt of the same by the Borrowers and the application of such cash proceeds to the repayment of the Obligations. Neither the Administrative Agent nor any other Secured Party shall have the right to foreclose upon, or sell, lease, transfer, assign or otherwise dispose of any of the Collateral or otherwise enforce their security interest or lien upon the Collateral other than with respect to the cash proceeds thereof in accordance with Section 3.05(b) of the Limited Recourse DIP Credit Agreement.

**LIENS AND COLLATERAL**

8. Upon the payment of the Purchase Price (as defined in the Purchase Agreement) at the Initial Closing in accordance with the provisions of the Purchase Agreement and as further

protection to the Secured Parties and to secure the repayment of the Limited Recourse DIP Obligations, the Administrative Agent, for the benefit of the Secured Parties, shall have and is hereby granted (subject to the occurrence of the Initial Closing): (a) pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, and perfected security interest in and lien on all (i) the Purchased Assets (as such term is defined in that certain Asset Purchase Agreement by and among the Borrowers, as sellers, and AH Mortgage Acquisition Co., Inc., as purchaser, dated September 25, 2007 as amended, restated, supplemented or otherwise modified from time to time with the consent of the Administrative Agent, the "Purchase Agreement") of every kind or type whatsoever, tangible, intangible, real, personal and mixed, whether now owned or existing or hereafter acquired or arising and regardless of where located, whether within the United States or in other locations, and all cash and cash equivalents earned in connection with the Servicing Business (as defined in the Purchase Agreement) from and after the Initial Closing (as defined in the Purchase Agreement) until the later of the Final Closing (as defined in the Purchase Agreement) or the payment of the Reconciliation Payment (as defined in the Purchase Agreement); and (ii) all proceeds, products, rents and profits, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof (collectively, (i) and (ii), the "Collateral") that is not encumbered by a Permitted Lien; and (b) pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, enforceable, and perfected security interest in and lien on the Collateral that is immediately junior to any Permitted Lien. The liens arising pursuant to the foregoing sentence shall not be released until the earliest of (a) the Final Closing, (b) the Termination Date (as defined in the Purchase

Agreement) and (c) the Administrative Agent's written consent; except that with respect to any Disputed Servicing Agreement (as defined in the Purchase Agreement) that is designated an Excluded Contract (as defined in the Purchase Agreement) as provided in the Purchase Agreement, the liens arising pursuant to the foregoing sentence shall be automatically released upon such designation, and Bank of America, N.A.'s lien and security interest in such Excluded Contract shall automatically reattach upon such designation without any further action, by the Borrower, the Secured Parties, Bank of America, N.A. or the Bankruptcy Court and without the need for the entry of an order (with such liens to have the same priority and rights as existed prior to the Initial Closing). Notwithstanding the foregoing, if any Permitted Lien is voided, extinguished, or determined not to be valid, the liens granted to the Administrative Agent pursuant to this paragraph shall, notwithstanding anything to the contrary in section 551 of the Bankruptcy Code, be deemed first priority liens without any further action by the Borrowers, the Secured Parties, or the Bankruptcy Court.

9. Notwithstanding anything to the contrary herein, the Secured Parties shall not have, and nothing herein shall be construed as granting the Secured Parties a security interest in or lien on any (i) proceeds of the Sale (as defined in the Purchase Agreement), (ii) proceeds of the B of A Collateral received by the Sellers (as defined in the Purchase Agreement) on or before the Initial Closing Date (as defined in the Purchase Agreement) but not paid to Bank of America, N.A. as of the Initial Closing Date (which proceeds of the B of A Collateral shall be held in trust and segregated for the benefit of the Bank of America, N.A. and paid to Bank of America, N.A. in the manner set forth in that certain Final Order (i) Authorizing Debtors' Use of Cash Collateral and (ii) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Creditors, dated September 4, 2007, entered by the Bankruptcy Court in the Bankruptcy

Cases, as extended and amended by the (a) First Interim Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 entered on October 31, 2007 and (b) First Final Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral, and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties entered on November 14, 2007 (the "Cash Collateral Order"), regardless of whether the Termination Date (as defined in the Cash Collateral Order) has occurred), (iii) assets of the Sellers that are not being purchased by AH Mortgage Acquisition Co., Inc. pursuant to the Purchase Agreement, or (iv) any other assets of the Debtors used in the Servicing Business not being purchased by the AH Mortgage Acquisition Co., Inc., in accordance with the terms of the Purchase Agreement.

10. The liens and security interests granted to the Administrative Agent herein and pursuant to the Limited Recourse DIP Facility in the Collateral shall not (a) be subject to any lien or security interest that is avoided and preserved for the benefit of the Borrowers' estates as a result of any Avoidance Actions, or (b) be subordinated to or made pari passu with any other lien or security interest pursuant section 364(d) of the Bankruptcy Code or otherwise.

11. After the Initial Closing and prior to the earlier of the Final Closing and the Termination Date (as defined in the Purchase Agreement), no other liens in or priority status with respect to the Collateral, other than Permitted Liens, shall have priority superior to or pari passu with the liens granted by this Interim Order to the Secured Parties, or shall be granted in the

Collateral while any portion of the Limited Recourse DIP Obligations remains outstanding, absent the express written consent of the Administrative Agent.

12. After the Initial Closing, this Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Administrative Agent's liens upon the Collateral, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction, or the taking of any other action to validate or perfect such liens or security interests in the Collateral or to entitle the Administrative Agent to the priorities granted herein. The Administrative Agent shall not be required to file any financing statements, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to perfect the Administrative Agent's liens and security interests granted by or pursuant to this Interim Order or the Limited Recourse DIP Financing Documents.

13. Any provision of any lease or other license, contract, or other agreement that requires the consent or approval of one or more Persons, or requires the payment of any fees or obligations to any Person, in order for any of the Borrowers to pledge, grant, or otherwise perfect the Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect.

14. After the Initial Closing, should the Secured Parties, in their sole discretion (but not as a requirement hereunder), from time to time choose to file financing statements, notices of lien or similar instruments, take possession of any Collateral as permitted by the Limited Recourse DIP Financing Documents, or take any other action to validate or perfect any such security interests or liens in the Collateral, the Borrowers and their officers are hereby directed to execute any such documents or instruments as the Secured Parties may reasonably request, and

all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of the Initial Closing.

15. After the Initial Closing, the Secured Parties may, in their discretion, file a copy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any similar office in any jurisdiction in which the Collateral is located, and, in such event, the applicable filing or recording officer or registrar is authorized to file or record such copy of this Interim Order.

16. After the Initial Closing and prior to the earlier of the Final Closing and the Termination Date (as defined in the Purchase Agreement), until such time as all Limited Recourse DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the Limited Recourse DIP Financing Documents, the Borrowers shall not in any way prime or otherwise adversely affect the liens on the Collateral granted under this Interim Order by granting a subsequent lender or a party-in-interest a superior or pari passu lien pursuant to sections 364 of the Bankruptcy Code or otherwise.

17. After the Initial Closing and prior to the earlier of the Final Closing and the Termination Date (as defined in the Purchase Agreement), until such time as all Limited Recourse DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the Limited Recourse DIP Financing Documents, the Borrowers shall not create, permit, or suffer to exist any liens on the Collateral other than Permitted Liens.

18. After the Initial Closing and prior to the earlier of the Final Closing and the Termination Date (as defined in the Purchase Agreement), neither the Collateral nor the Secured Parties shall be subject to surcharge, pursuant to sections 105(a) or 506(c) of the Bankruptcy

Code or otherwise, by any of the Borrowers or any other party, and no such consent shall be implied from any action, inaction, or acquiescence by the Secured Parties, <u>provided, however,</u> that the Borrowers may use the Collateral to pay the disbursements set forth in the Budget (as defined in the Purchase Agreement) that were properly and actually incurred by the Borrowers prior to the Final Closing Date; <u>provided further, however,</u> that all rights of B of A under the Cash Collateral Order are hereby preserved.

19. In no event shall the Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

20. Notwithstanding anything in this Interim Order to the contrary, the liens and security interests granted to the Administrative Agent shall not extend to any assets that are not Collateral.

**REMEDIES**

21. Notwithstanding the provisions of section 362 of the Bankruptcy Code and without any further order of, or application or motion to, the Court, in the event of the occurrence of an Event of Default, and at all times thereafter, and without any restriction or restraint by any stay under section 362 of the Bankruptcy Code against the enforcement of the liens and security interests or any other rights granted in the Collateral to the Secured Parties pursuant to the Limited Recourse DIP Financing Documents, the Administrative Agent may, by written notice to the Borrowers as provided in the Limited Recourse DIP Financing Documents, (a) terminate forthwith all or any portion of the Limited Recourse DIP Facility and the Secured Parties' obligation to make any further loans or advances, (b) declare the Limited Recourse DIP Obligations to be immediately due and payable, and (c) subject to the Limited Recourse

Provisions, exercise the sole rights and remedies against the Collateral allowed under Paragraph 7 of this Order and Section 3.05 of the Limited Recourse DIP Financing Documents.

22. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted to grant the liens and security interests to the Secured Parties contemplated by the Limited Recourse DIP Financing Documents and this Interim Order, and subject to the Limited Recourse Provisions, is further lifted to the extent of the exercise by the Secured Parties of any rights or remedies permitted under this Interim Order and under the Limited Recourse DIP Financing Documents.

## OTHER PROVISIONS

23. **Use of Proceeds.** From and after the Initial Closing, the Borrowers shall use the proceeds of the Loans solely in accordance with and subject to the conditions set forth in this Interim Order and the Limited Recourse DIP Financing Documents. Nothing in this Interim Order shall be construed to require the Lenders to make advances or extensions of credit or other financial accommodations to permit the Borrowers to make any payments, except to the extent expressly provided for in this Interim Order and the Limited Recourse DIP Financing Documents.

24. **Bank Accounts.** Any proceeds of the sale, lease or other disposition of the Collateral, including all Cash Collateral of the Secured Parties, shall be used in accordance with the provisions of this Interim Order and the Limited Recourse DIP Financing Documents and shall be applied in payment of the Borrowers' obligations under, and in the manner provided in, the Limited Recourse DIP Financing Documents. The Borrowers are authorized and directed to deposit such proceeds of the Collateral into such account or accounts as the Administrative Agent shall direct and as provided for in the Limited Recourse DIP Financing Documents, and

upon such deposit, such proceeds of the Collateral shall become the sole and exclusive property of the Secured Parties and may be applied by the Administrative Agent against the Borrowers' obligations as provided in the Limited Recourse DIP Financing Documents. The Borrowers are deemed to have irrevocably waived any right to direct the manner of application of any payments to the Secured Parties or any other receipts by the Secured Parties of proceeds of any of the Collateral, including all of the Lenders' Cash Collateral, other than as expressly set forth in this Interim Order and the Limited Recourse DIP Financing Documents. The Borrowers are hereby directed to establish one or more bank accounts as provided in the Limited Recourse DIP Financing Documents, into which all of the Lenders' Cash Collateral shall be held.

25.     **Immediate Effectiveness.** Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

26.     **Survival.** (a) The terms and provisions of this Interim Order and the Limited Recourse DIP Financing Documents, and the liens and security interests granted to the Administrative Agent and payment provisions contained in this Interim Order and the Limited Recourse DIP Financing Documents shall continue in full force and effect until the Limited Recourse DIP Obligations are indefeasibly paid in full in cash, and Limited Recourse DIP Financing Documents are terminated.

(b)     The liens, security interests and other rights and remedies granted to the Secured Parties by the provisions of this Interim Order, as well as the Borrowers' obligations pursuant to the Limited Recourse DIP Financing Documents and this Interim Order, shall continue beyond

and survive the expiration of this Interim Order, and, to the extent permitted by applicable law, shall not be modified, altered or impaired in any manner by (a) any other financing or extension of credit or incurrence of indebtedness by any of the Borrowers under section 364 of the Bankruptcy Code or otherwise (except as contemplated by the Limited Recourse DIP Financing Documents), (b) the entry of an order or orders confirming any plan or plans of reorganization or liquidation in these cases, or (c) the entry of an order converting these cases to cases under chapter 7 of the Bankruptcy Code, suspending, or dismissing these cases.

(c)     This Interim Order and DIP Financing Documents shall be valid, binding and enforceable by the Secured Parties against the Borrowers, their respective successors and assigns, including, without limitation, any chapter 11 or chapter 7 trustee appointed as a representative of any of the Borrowers' estates; *provided*, the Secured Parties shall have no obligation to extend any financing to any such chapter 11 or chapter 7 trustee or similar person.

(d)     If any provision of this Interim Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity and priority of any of the Limited Recourse DIP Obligations incurred under this Interim Order and the Limited Recourse DIP Financing Documents, and, prior to the effective date of any such modification, vacation, reversal or stay, the validity, enforceability or priority of the Limited Recourse DIP Obligations shall be governed in all respects by the original provisions of this Interim Order, and the Secured Parties and Lender-Related Parties shall be entitled to all the rights, privileges and benefits granted herein. The transactions contemplated by the Limited Recourse DIP Facility have been entered into by the Secured Parties in good faith, and, as a result, the Secured Parties are entitled to the

protections afforded by Section 364(c) of the Bankruptcy Code in the event of any reversal or modification of this Interim Order.

(c)     Under no circumstances, except with the written consent of the Administrative Agent, shall the liens, rights and remedies granted to the Secured Parties pursuant to or in connection with the Limited Recourse DIP Financing Documents and this Interim Order be modified, altered or impaired in any manner by a chapter 11 plan or order of confirmation of a chapter 11 plan for any of the Borrowers.

27.     **No Waiver of Secured Parties' Rights.**  Notwithstanding anything to the contrary herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the Secured Parties under the Bankruptcy Code or under non-bankruptcy law.

28.     **Conflicts.**  To the extent of any conflict between or among the express terms or provisions of any of the Limited Recourse DIP Financing Documents and the Motion, the terms and provisions of the Limited Recourse DIP Financing Documents shall govern. To the extent of any conflict between or among the express terms or provisions of any of the Limited Recourse DIP Financing Documents or the Motion on the one hand, and the terms and provisions of this Interim Order on the other hand, the terms and provisions of this Interim Order shall govern.

29.     **Amendments.**  The Borrowers and the Secured Parties may finalize, amend, modify, supplement or waive any provision of the Limited Recourse DIP Financing Documents if such amendment, modification, supplement or waiver is permitted under the terms of the Limited Recourse DIP Financing Documents and is not material (in the good faith judgment of the Secured Parties and the Borrowers) without any need to apply to, or receive further approval from, the Court.

30.     **No Third Party Beneficiaries.**  No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Interim Order or the Limited Recourse DIP Financing Documents.

31.     **Purchaser Agreement Obligations**.  Notwithstanding anything else in this Interim Order or the Limited Recourse DIP Financing Documents to the contrary, (a) in the event of any conflict between terms and provisions of this Limited Recourse DIP Financing Documents and the Sale Order or the Purchase Agreement, the terms and provisions of the Sale Order and the Purchase Agreements shall prevail, and (b) nothing in this Interim Order or the Limited Recourse DIP Financing Documents is intended to, nor shall it (i) limit, modify or affect the obligations of AH Mortgage Acquisition as "Purchaser" under the Purchase Agreement, including, without limitation the obligation of AH Mortgage Acquisition to provided liquidity or working capital in accordance in Section 6.2 of the Purchase Agreement, or (ii) expand or increase the obligations of the Borrowers under the Purchase Agreement.  Any failure or inability of the Borrowers to perform or comply with their obligations under the Purchase Agreement that is due to the exercise by the Secured Parties of their remedies pursuant to Paragraph 7 of this Interim Order or the Limited Recourse DIP Financing Documents shall not constitute a default or be deemed a breach by the Borrowers of their obligations to the Purchaser under the Purchase Agreement.

32.     **Retention of Jurisdiction.**  The Court shall retain jurisdiction to hear and determine all matters arising from this Interim Order and its implementation.

33.     **Headings.**  Paragraph headings used herein are solely for a convenience and shall convey no substantive import.

34.  **Final Hearing.** The Final Hearing on the Motion shall be held before the Court on the 28th day of November, 2007 at 10:00 a.m. in Courtroom 5, 6th Floor, at 824 Market Street, Wilmington, Delaware 19801. The Borrowers shall mail copies of this Interim Order and notice of the Final Hearing (including the Objection Deadline, as such term is hereinafter defined) to the parties that were given notice of the Interim Hearing and to any other party which has filed a request for notices with this Court. Any party in interest objecting to the relief sought in the Final Order shall file with the court (with a courtesy copy to chambers) its written objection and serve such objection so as to be received no later than November 21, 2007 by 4:00 p.m. local Delaware time (the "Objection Deadline"), on (i) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 100 West Street, 17th Floor, Wilmington, Delaware 19889-0391, Attention Joel Waite, Esq., Counsel to the Debtors; (ii) Jones Day, 222 East 41st Street, New York, New York 10017, Attention: Erica M. Ryland, Esq. and Scott J. Friedman, Esq. and Greenberg Traurig LLP, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801, Attention: Victoria Counihan, Esq., Counsel to the Administrative Agent; (iii) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attention: Margot B. Schonholtz, Esq., and Scott D. Talmadge, Esq. and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801, Attention: Laurie Selber Silverstein, Esq., Counsel for Bank of America, N.A.; (iv) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 and (v) Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022 (Attention Mark S. Indelicato), Attorney for the Official Committee of Unsecured Creditors.

Dated: November 14, 2007
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE