1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 07-11047-css

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


AMERICAN HOME MORTGAGE HOLDINGS, INC.,


        Debtor.


- - - - - - - - - - - - - - - - - - - - -x

                United States Bankruptcy Court

                824 North Market Street

                5th Floor

                Wilmington, Delaware


                November 9, 2007

                4:05 PM


B E F O R E:

HON. CHRISTOPHER S. SONTCHI

U.S. BANKRUPTCY JUDGE

2

1

2   HEARING re Motion and Joinder of UBS Real Estate Securities

3   Inc. to Emergency Motion of DB Structured Products, Inc. for

4   Limited Stay Pending Appeal.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Transcribed by:  Penina Wolicki

25

3

1    A P P E A R A N C E S :

2    YOUNG CONAWAY STARGATT & TAYLOR, LLP

3         Attorneys for Debtor

4         The Brandywine Building

5         1000 West Street

6         17th Floor

7         Wilmington, DE 19801

8

9    BY:   PAULINE K. MORGAN, ESQ.

10        JAMES L. PATTON, JR.

11

12

13   HAHN & HESSEN LLP

14        Attorneys for Official Committee of Unsecured Creditors

15        488 Madison Avenue

16        New York, NY 10022

17

18   BY:   MARK S. INDELICATO, ESQ.

19

20

21

22

23

24

25

4

1    BLANK ROME LLP

2         Attorneys for Official Committee of Unsecured Creditors

3         Chase Manhattan Centre

4         1201 Market Street

5         Suite 800

6         Wilmington, DE 19801

7

8    BY:   DAVID CARICKHOFF, ESQ.

9

10   PILLSBURY WINTHROP SHAW PITTMAN LLP

11        Attorneys for UBS Real Estate Securities, Inc.

12        1540 Broadway

13        New York, NY 10036

14

15   BY:   RICHARD ANTONOFF, ESQ.

16        BRANDON JOHNSON, ESQ.

17

18   POTTER ANDERSON & CARSON LLP

19        Attorneys for Bank of America, N.A.

20        Hercules Plaza

21        1313 North Market Street

22        Wilmington, DE 19801

23

24   BY:   LAURIE SELBER SILVERSTEIN, ESQ.

25   KAYE SCHOLER LLP

5

1       Attorneys for Bank of America, N.A.

2       425 Park Avenue

3       New York, NY 10022

4

5   BY:   SCOTT D. TALMADGE, ESQ. (TELEPHONICALLY)

6       MARGOT SCHONHOLTZ, ESQ.

7

8   MORRIS, NICHOLS, ARSHT & TUNNELL LLP

9       Attorneys for Assured

10      Chase Manhattan Centre

11      18th Floor

12      1201 North Market Street

13      Wilmington, DE 19899

14

15  BY:   DANIEL B. BUTZ, ESQ.

16

17  MILBANK, TWEED, HADLEY & MCCLOY LLP

18      Attorneys for Creditor ABN AMRO

19      610 South Figueroa Street

20      30th Floor

21      Los Angeles, CA 90017

22

23  BY:   ROBERT J. MOORE, ESQ.

24      FRED NEUFELD, ESQ. (TELEPHONICALLY)

25

6

1    GREENBERG TRAURIG, LLP

2           Attorneys for WRL Recovery Fund

3           The Nemours Building

4           1007 North Orange Street

5           Suite 1200

6           Wilmington, DE 19801

7

8    BY:   VICTORIA COUNIHAN, ESQ.

9

10   BINGHAM MCCUTCHEN, LLP

11          Attorneys for Deutsche Bank Structured Products

12          150 Federal Street

13          Boston, MA 02110

14

15   BY:   ANDREW J. GALLO, ESQ.

16          (TELEPHONICALLY)

17

18   BINGHAM MCCUTCHEN, LLP

19          Attorneys for Deutsche Bank Structured Products

20          399 Park Avenue

21          New York, NY 10022

22

23   BY:   STEVE WILAMOWSKY, ESQ.

24          (TELEPHONICALLY)

25

7

1  ASHBY & GEDDES, P.A.

2        Attorneys for UBS Real Estate Securities, Inc.

3        500 Delaware Avenue

4        Wilmington, DE 19899

5

6  BY:   DON A. BESKRONE, ESQ.

7        AMANDA M. WINFREE, ESQ.

8

9

10  UNITED STATES DEPARTMENT OF JUSTICE

11        Office of the US Trustee

12        844 King Street

13        Wilmington, DE 19801

14

15  BY:   JOSEPH J. MCMAHON, ESQ.

16

17

18  JONES DAY

19        Attorneys for AH Mortgage Acquisition Co.

20        222 East 41st Street

21        New York, NY 10017

22

23  BY:   BENJAMIN ROSENBLUM , ESQ.

24        (TELEPHONICALLY)

25

8

P R O C E E D I N G S

1

2          THE CLERK:  All rise.

3          THE COURT:  Please be seated.

4          MS. MORGAN:  Good afternoon, Your Honor.

5          THE COURT:  Good afternoon, Ms. Morgan.

6          MS. MORGAN:  Pauline Morgan from Young Conaway

7    Stargatt & Taylor on behalf of the debtors.  Your Honor, with

8    the Court's permission, we'd like to take the second matter on

9    the agenda first, which is the limited objection of Assured --

10         THE COURT:  Yes.

11         MS. MORGAN:  -- to the debtor's sale order.  And

12   before we get to that, I think Ms. Counihan wants to present a

13   pro hoc motion.

14         THE COURT:  Yes.

15         MS. COUNIHAN:  Good afternoon, Your Honor.  Victoria

16   Counihan on behalf of AH Mortgage Acquisition Company.  Your

17   Honor, on the phone today for AH Mortgage is Michael Weinberg

18   from Jones Day.  I realize that we didn't file pro hoc papers

19   for him so I would request that I be able to orally pro hoc him

20   today in case he has anything to add to this particular matter.

21   And we'll follow up with a written motion.

22         THE COURT:  All right.  He's a member of the Bar

23   somewhere?

24         MS. COUNIHAN:  He's a member of the Bar of the State

25   of New York and maybe someplace else.  He can chime in

9

1          MR. WEINBERG:  Actually it's not New York, the State

2     of Texas.

3          MS. COUNIHAN:  Sorry, Texas.

4          THE COURT:  State of Texas, that's the Republic of

5     Texas.  That's fine.

6          MR. WEINBERG:  That's right, Your Honor.

7          MS. COUNIHAN:  Thank you, Your Honor.

8          THE COURT:  In the interest of comedy, I'll recognize

9     your juris -- your foreign jurisdiction, and you'll be allowed

10    to appear.

11         MR. WEINBERG:  Thank you.

12         THE COURT:  Mr. Butz.

13         MR. BUTZ:  Good afternoon, Your Honor.  For the

14    record, Daniel Butz from Morris, Nichols, Arsht & Tunnell on

15    behalf of Assured Guarantee.  I just want to take the time to

16    thank the Court for scheduling our objection.  And I'm pleased

17    to inform the Court that the matter has been resolved.  The

18    purchaser has agreed to provide a letter to Assured

19    acknowledging that Assured's rights under the servicing

20    agreement in question are going to be abided by from and after

21    the assignment of the servicing agreement to the purchaser.

22    And on that basis, we will be withdrawing our objection.

23         THE COURT:  All right.  Thank you.

24         MR. BUTZ:  Thank you, Your Honor.  May I be excused?

25         THE COURT:  Yes.  You'll just file a notice of

1    withdrawal.

2              MR. BUTZ:  Yes.

3              THE COURT:  Thank you.  All right.

4              MR. ANTONOFF:  Good afternoon, Your Honor.  Rick

5    Antonoff from Pillsbury, Winthrop, Shaw, Pittman in New York,

6    on behalf of UBS Real Estate Securities, Inc.  With me is my

7    colleague Brandon Johnson and our Delaware counsel, Don

8    Beskrone and Amanda Winfree.  Mr. Johnson and I have been

9    admitted to these proceedings pro hoc.  We thank Your Honor for

10   hearing our motion.  We're here on a motion for a limited stay

11   of the Court's October 30th sale order to hold our contract in

12   abeyance pending an appeal being taken by UBS, similar to the

13   appeal that's being taken by DB Structured Products of the sale

14   order.

15             UBS filed objections and reservations of rights to

16   the sale order and -- I'm sorry, objections in response to the

17   sale motion, principally on the basis that there are defaults

18   under the contract that we think need to be cured before the

19   debtor can assume them and assign them.  The Court overruled

20   our objection in its oral ruling on October 23rd, on the basis

21   that the default resides on the loan purchase and repurchase

22   provisions of the contract which the Court found are severable

23   from the loan servicing provisions of the contract, and that

24   the loan servicing provisions can be assumed and assigned

25   without regard for the defaults on the loan purchase and

11

1    repurchase provisions.

2              We, on behalf of UBS, and I won't speak for DB

3    Structured Products, but based on reading their pleadings, we

4    think that they agree with us that the Court erred in applying

5    the factors used to determine whether a single contract can be

6    severed, can be broken up, and specifically we, UBS, believes

7    that the nature of the provisions are the same and that the

8    provisions are wholly interrelated.  The Court also said in the

9    October 23rd ruling that the contract is non-executory and can

10   be sold under Section 363.  And we believe that that ruling

11   contradicts controlling Third Circuit law under the Integrated

12   case.

13             We filed a notice of appeal, and in order to assure

14   that our appeal is not merely academic and has some meaning, we

15   are seeking a stay so that we don't -- a limited stay, so that

16   we don't find ourselves in a position where we prevail in our

17   appeal, but our contract was transferred in violation of what

18   we then know to be my client's legal rights.  It would be

19   cumbersome to have to come back to Court and try to wrest our

20   contract back from the buyer, and therein lies our irreparable

21   harm.  They close, we have no remedy.  In contrast, we believe

22   that the debtors really do not suffer any -- any harm, or need

23   not suffer any harm.  The debtors and the buyer have put DB's

24   contract on a suspense schedule, and they could do the same

25   with UBS's contract.  The fact that they choose not to isn't

1  irreparable harm, in fact it's their choice.  And to the extent

2  they choose not to, they've manufactured their own harm and it

3  is in fact, not only irreparable -- not only reparable, it's

4  easily reparable, and in balancing the relative harms, it's

5  much easier to hold our contract in abeyance now than to try to

6  undo the transfer of our contract later.

7          THE COURT:  Let me ask you a question in connection

8  with that.  Your client does not currently own the mortgage

9  loans being serviced under your MLPSA, is that correct?

10          MR. ANTONOFF:  That is correct.

11          THE COURT:  Why should I stay the transfer of those

12  servicing rights -- well, maybe this goes more to the public

13  interest prong.  But I'm concerned about the rights of the

14  holders of the trust certificates whose mortgages that are

15  under either of those trust certificates, need to be serviced.

16  And it's going to either be done by the debtor or by the buyer.

17          MR. ANTONOFF:  Or --

18          THE COURT:  So -- well, or whom?  I don't know what

19  the --

20          MR. ANTONOFF:  I think many -- many of the -- I

21  don't' know exactly which trusts are holding these loans, but I

22  think from day one of this case, many of them have been trying

23  to wrest servicing away from the debtor and transfer them to

24  third-party servicers.  So I don't think it will --

25          THE COURT:  Well -- well, wait a minute.  Many of

1   them, who are you talking about?

2           MR. ANTONOFF:  Well, I don't -- as I said, I don't

3   know which trusts, but there have been efforts to try to get

4   servicing -- from the beginning of this case, to get servicing

5   released.

6           THE COURT:  Right.

7           MR. ANTONOFF:  I think there are a number of

8   adversary proceedings pending on that issue.

9           THE COURT:  Relating to servicing?

10          MR. ANTONOFF:  Relating to getting servicing -- yeah,

11  I mean, before the sale.  I think that that's --

12          THE COURT:  I'm not aware of any.  I'm aware of

13  adversary proceedings in connection with loan repurchase

14  agreements.  And I'm aware of stay relief motions.  But I'm not

15  aware of any pending adversary proceedings by securitization

16  trusts to recover the servicing rights.  Maybe I'm mistaken,

17  but.

18          MR. ANTONOFF:  And maybe I am, but I think it's --

19          THE COURT:  My point sort of is the here and now of

20  it, which is, I'm concerned about the potential harm to the

21  holders of the certificates and the securitization vehicles,

22  and the effect that may have on the people who actually are

23  the -- now the mortgagees.  And I -- what's your response to

24  their potential harm?

25          MR. ANTONOFF:  Well, their loans certainly do have to

14

1    be serviced.  And I think that there's a --

2          THE COURT:  I guess this dovetails a little bit with

3    the debtor's standing argument that they make, which is the --

4          MR. ANTONOFF:  Well, but our -- our harm is that we

5    get -- we prevail on the appeal, our contract is gone, and we

6    have no way to have our rights redressed.  Our right -- if the

7    contract should not have been severed, and the debtor was

8    required to cure the default, we won't be able to get our

9    contract back.

10         THE COURT:  Well, let's play that out.  All right.

11   Let's assume that I was incorrect and that your contract -- the

12   MLPSA at issue was not severable, and to assume and assign it

13   they would have had to cure the defaults.  If they close, they

14   go to a final close before your appellate rights are

15   determined, or fully -- if they go to a final close before your

16   appeal is over, and then the Appellate Court says, you know,

17   Judge, you got it wrong, those contracts were not severable,

18   and as a result they can only be assumed and assigned co

19   monere, but that's already occurred because of the closing.  Is

20   there anything in the sale order that affects your right to

21   assert a claim for monetary damages relating to -- relating to

22   that inappropriate, if you would, sale?

23         MR. ANTONOFF:  Well, the sale order, at that point,

24   would be reversed.

25         THE COURT:  Well, but it's moot, it's equitably moot.

1          MR. ANTONOFF:  Well, I mean, and that's the other

2   problem, actually, is that by the time they close they moot our

3   appeal.  So I think the only way to preserve our right to that

4   appeal is to stay the order with respect to our contract.

5          THE COURT:  No, no, no.  I'm assuming that you're

6   appeal is going to mooted.  My question is, why don't you still

7   have a -- is there anything that -- even if that happens,

8   they -- in other words they close before the appeal is over and

9   the Appellate Court tells me, whether it's the District Court

10  or the Third Circuit, tells me I'm wrong, that it was a non-

11  severable contract that should not have been transferred in

12  pieces.  What are your remedies at that point?  Don't you have

13  a claim against the debtors' estate?

14          MR. ANTONOFF:  Um, I --

15          THE COURT:  You currently have a claim against the

16  debtors' estate.

17          MR. ANTONOFF:  -- I think in that case, UBS would

18  have a claim.  And I think it would be a claim entitled to

19  administrative priority, because the damages arose on post

20  petition --

21          THE COURT:  All right.

22          MR. ANTONOFF:  -- transaction.

23          THE COURT:  So you're not hurt.  So you're not hurt.

24  There's no harm.  Because if I -- if their -- as a matter of

25  fact, you may be better off, because assume your appellate

1   rights are determined before the final close, and assume the

2   Court says, you know what, it is not severable and can only be

3   assumed and assigned co monere, in that situation, one of two

4   things happens.  They take the contract and pay your cure

5   claim --

6           MR. ANTONOFF:  Uh-huh.

7           THE COURT:  -- or they don't, more likely, and don't

8   pay your cure claim, and you have an unsecured claim, which is

9   what you have already.  Whereas, if you close, what you're

10  telling me now, is if they close before the appeal is

11  determined, you'd still have an administrative expense claim

12  under your theory.  So you're in the same spot, one or the

13  other.  What you really want, is basically, the Court to

14  specifically enforce your contract.  But you don't get that.

15  You get -- I mean, you know, generally speaking you don't get

16  specific performance of contracts.  You get damages for

17  breaches of contracts.  And even if it's a Court approved

18  breach, it gives rise to damages.

19          MR. ANTONOFF:  Right.  And if I know that -- that my

20  damages can be asserted in the form of an administrative

21  expense claim, that's a -- I think that that would be a good

22  result.

23          THE COURT:  Well, you're not -- you're not -- you

24  want an advisory opinion from me, then.  I guess your response

25  is, I'm putting you in a tough spot, Judge.  I'm being unfair.

1    I'm sort of saying, assuming you'd have an administrative

2    expense claim so I should just sit down and not worry about it.

3    But, Judge, you're not actually telling me I'll have an

4    administrative expense claim.

5            MR. ANTONOFF:  No.  But if I don't have that, then I

6    do have harm.

7            THE COURT:  Right.

8            MR. ANTONOFF:  And if I --

9            THE COURT:  Well, do you --

10           MR. ANTONOFF:  -- if I'm --

11           THE COURT:  -- you have a claim.

12           MR. ANTONOFF:  -- relegated to a prepetition

13   unsecured claim for what should have been a cure paid at the

14   time of assumption and assignment, certainly a lot worse off,

15   particularly in an estate that's in this financial condition,

16   where it's questionable whether prepetition unsecured claims

17   will get anything.

18           THE COURT:  Well, I'm -- that's interesting.  I guess

19   it would be parallel to an argument that an administrative

20   claim in an administratively insolvent estate would give rise

21   to irreparable harm, and thus specific performance should be

22   granted.  But I think I've previously ruled in this case, maybe

23   I haven't, I don't know.  There are a lot of rulings in this

24   case, that absent some evidence of administrative insolvency a

25   fight about whether the debtor may or may not be able to pay a

 1    claim, isn't in and of itself sufficient to demonstrate

 2    irreparable harm.

 3         MR. ANTONOFF:  Well, ordinarily, if there was no

 4    question that a cure had to be paid, it would be paid, probably

 5    from the sale proceeds at the time of the assignment -- of

 6    assumption and assignment.  If that could be somehow preserved

 7    through an escrow of funds, that might protect us and --

 8         THE COURT:  Right.  In this case --

 9         MR. ANTONOFF:  -- reduce the harm.

10         THE COURT:  -- that's right.  In this case we have

11    a --

12         MR. ANTONOFF:  Well, there's a cure escrow --

13         THE COURT:  --there's a cure escrow --

14         MR. ANTONOFF:  -- but it's not for the kinds of --

15         THE COURT:  -- but it would be in --

16         MR. ANTONOFF:  -- defaults that we're asserting.

17         THE COURT:  -- right.

18         MR. ANTONOFF:  So, just to finish off.  We think that

19    the Integrated decision alone is a strong argument for

20    likelihood of success on the merits.  We strongly disagree with

21    the debtor's argument that somehow the Fleming decision

22    undermines Integrated.  Fleming is a 365 case that had to do

23    with the inability of the assignee to perform, specifically the

24    supply of goods out of a specific facility which had been

25    closed.  It has nothing to do with 363 or Integrated.  We think

1    on the strength of that alone, that there's a strong likelihood

2    of success.  Add to that the severance issue which, I think,

3    Your Honor probably knows more than anyone, having struggled

4    with it, is a close question and a tough question.

5          And just to address some of the points that were made

6    by the debtor in their opposition.  We don't think that by

7    selling the loans that were purchased from American Home, UBS

8    agreed to sever the contact.  First of all, purchase of the

9    loans and UBS's ability to sell them in the secondary market,

10   are linked to the fact that American Home was also servicing

11   them.  We bought them on a servicing retained basis.  And that

12   servicing is not assignable by American Home without UBS's

13   consent.  And I think in determining the severability issue,

14   the Court really has to look at the contract, divorced of the

15   bankruptcy case.  If American Home was still a healthy company

16   and was originating loans, UBS would still be buying loans and

17   would be buying them with the servicing.

18          THE COURT:  I'm not sure about that.  I'm not sure

19   anybody's buying loans right now.  But certainly not

20   nonconforming loans.

21          MR. ANTONOFF:  Well, and American Home actually was,

22   you know, is not or was not a sub-prime lender.  It was a --

23          THE COURT:  They're all day though.

24          MR. ANTONOFF:  -- all day.  And --

25          THE COURT:  Some jumbo loans.

1       MR. ANTONOFF:  -- and then finally, if Your Honor is

2   inclined to grant the stay, we don't think that a bond should

3   be necessary, in view of the fact that we are -- we are here in

4   Court.  We are a creditworthy entity, and we also think it's

5   highly unlikely that the sale would not close merely because

6   our contract is held in abeyance.  Thank you.  Unless you have

7   any questions for me.

8       THE COURT:  Well, do you have any evidence for the

9   Court as to the viability of UBS Real Estate Securities, Inc.,

10  its net worth or?

11      MR. ANTONOFF:  No.  No, I don't, but I think --

12      THE COURT:  I mean, I know UBS.  We all know UBS.

13  But it's a special purpose entity.

14      MR. ANTONOFF:  UBS Real Estate Securities, Inc. is

15  not a special purpose entity, it's a business -- it's --

16      THE COURT:  Operating --

17      MR. ANTONOFF:  -- it is an operating affiliate of UBS

18  AG, the parent company.  And I think that their financial

19  condition and net worth are matters of public record.

20      THE COURT:  Okay.  Thank you.  Opposition?

21      MR. PATTON:  Your Honor, given all I've read and all

22  I've heard today, I think I'm just here to answer any questions

23  you may have.  I haven't heard anything that, I think, requires

24  me to respond to it, unless you have an issue you would like me

25  to address.

1        THE COURT:  Well, help me out on this -- help me out

2   on why there is no irreparable harm or is there irreparable

3   harm.  I know you take the position there isn't, obviously, but

4   why there is no irreparable harm to UBS if I don't grant this

5   stay pending appeal?

6        MR. PATTON:  Well, very simply, if there's no

7   irreparable -- your analysis was spot-on.  I -- and I'm --

8        THE COURT:  Well, thank you.

9        MR. PATTON:  -- and I say that not to suck up.  The

10  bottom line is that they have a claim today.  They have, if we

11  are wrong about our analysis, a claim for cure payment.  If we

12  assume and assign their contract that's what the provisions

13  provide in the APA, that's what Your Honor provided in your --

14  in your order approving the sale.  We are obligated to make

15  those payments.  The existence -- the existence of a claim and

16  the creation of a claim does not rise to the level of

17  irreparable harm.  And it was in this case where Your Honor

18  previously ruled that the threat of potential administrative

19  insolvency is not in and of itself a basis for finding that

20  there is irreparable harm or the need for an extraordinary

21  remedy.  I believe that was in connection with the merge

22  argument.

23        THE COURT:  It may have been the Credit Suisse in the

24  adversary proceeding.  I can't --

25        MR. PATTON:  Yeah.  And it's -- the --we've been

22

1    puzzled about the position of UBS right up to the point of

2    today's hearing for a variety of reasons.  One is that we've

3    remained unclear, and I'm still fairly unclear, about what it

4    is that they are legitimately -- wrong word, what they are

5    genuinely concerned about, since the servicing rights have

6    already been transferred under the AARs to the trusts that are

7    holding the underlying mortgages.  And none of those

8    securitization trusts are objecting to this transfer.  They've

9    all agreed to the sale order and have withdrawn any objections

10   that they may have.  So, I still remain somewhat puzzled about

11   what harm they suffer, period, with respect to this order

12   and -- as a result of that, I've remained somewhat at a loss to

13   determine how to try to come to terms with them to resolve

14   whatever issues they may have.  It's difficult for me to

15   fashion a remedy that might resolve their issues when I

16   don't --

17              THE COURT:  Well --

18              MR. PATTON:  -- really understand what the economics

19   are.

20              THE COURT:  -- yeah.  You know, I -- it's -- I think

21   the only way you resolve their objection is to pay them.

22              MR. PATTON:  Right.

23              THE COURT:  Which they're not -- you're not willing

24   to do.  And I think it goes to, I don't know if it rises to a

25   standing level, but it goes to sort of, the divorce -- the

1   divorce of the servicing versus ownership issues versus claims

2   issues.  Because UBS no longer holds the securities that are

3   receiving the benefit of the transaction.

4            MR. PATTON:  That's right.

5            THE COURT:  They hold claims against the estate for

6   EPDs, I assume, and for premium recapture payments.  And

7   because of that separation between the economic interest in the

8   ongoing business and the claim, there's I think -- there's a

9   dichotomy there that makes it difficult to analyze the

10  situation, and I think, frankly, cuts against them on the

11  merits of their argument that these claims aren't severable,

12  that these contracts weren't severable.  I don't -- I really --

13  I don't have any other questions for you, Mr. Patton.  I really

14  don't.  Thank -- so thank you.

15           MR. PATTON:  Thank you, Your Honor.

16           THE COURT:  Is there anyone else who wishes to be

17  heard?  Let me see if there's anyone else who wants to be heard

18  before I hear a reply.

19           MR. INDELICATO:  Good afternoon, Your Honor.  Mark

20  Indelicato from Hahn & Hessen.  Just because it's 4:30 in

21  Delaware and I'm here, I feel compelled to say something, but

22  it's going to be very brief, Your Honor.  I believe Mr. Patton

23  has laid it out, and we joined in them.  The issue that they

24  raised initially is why can't they just put us on the disputed

25  contract list as we did with UBS -- with DB.  Well, that

1    doesn't work, Your Honor, as you pointed out, because there are

2    no MSRs related to it, and if you follow the contract through,

3    the only reason you're on that is because the portion of the

4    purchase price is being held in reserve.  Here there are no

5    MSRs associated with that, so we would put them on a contract

6    with a zero balance.  I'm not sure it gets you anyplace in

7    addition, and it doesn't work through the terms of the contract

8    to do that.

9            The other thing, Your Honor, is that they really are

10   only looking for some assurance from this Court that their

11   claim to the extent they ultimately are successful in appeal

12   for assumption and assignment, is going to be titled to

13   administrative priority status.  The claim is what it is.  If

14   the over -- if the District Court of the Court of Appeals

15   overrules this Court, they'll have whatever claims they have,

16   the same claims that they have today.  They were not part of

17   the process that negotiated for the claims escrow.  And if the

18   Court will recall, the claims escrow is a fixed amount and the

19   parties agreed to that.  And so there was a lot of give and

20   take in this.  They chose to stay out of that and assert their

21   rights on appeal, and as a result of that choice, they get

22   whatever rights they get.  They don't get the right to appeal

23   and have better rights than had they participated in the -- in

24   the sale process to begin with.  They chose to appeal.  They'll

25   get whatever rights the law allows them.  If it's a

1    superpriority administrative claim, or an administrative claim,

2    or whatever claim it is, that's what they'll have.  So, Your

3    Honor, we don't believe they're entitled to a stay pending

4    appeal. We don't believe there's any irreparable harm.  Their

5    claim will be what it will be.  We think the Court should deny

6    their motion.

7             THE COURT:  All right.  Thank you.  Anyone else?

8    Anyone on the phone?

9             MR. TALMADGE:  Your Honor, Scott Talmadge, and I'll

10   take up virtually no time.  We have joined in the debtor's

11   objection and stand by our joinder made by Mr. Patton.

12            THE COURT:  All right, thank you.  I'll hear a reply.

13            MR. ANTONOFF:  Just two very brief points.  One on

14   Mr. Indelicato's comments.  It's not really fair.  We were not

15   invited to participate in the cure escrow.  We were told that

16   it was not addressed to the kinds of cure that we were looking

17   for, that it was really just servicing cures that were covered

18   by the escrow.  On the issue of irreparable harm, it occurs to

19   me, that I don't know the answer to this question, but Your

20   Honor asked who would service the loans.  And I suppose the

21   answer is, whomever is servicing the DB Structured Products

22   loans that are subject to servicing agreements or MLPSAs that

23   are not being transferred, pending appeal.

24            THE COURT:  Well, that's not going to get you --

25   they've settled.  I mean they've settled their stay pending

1 appeal request.

2         MR. ANTONOFF:  Right.

3         THE COURT:  They're not in front of me.

4         MR. ANTONOFF:  Their contract is not going to be

5 transferred.  So wherever their contract is and whoever is

6 servicing those --

7         THE COURT:  Well, I don't know if that's necessarily

8 true.  My memory is that there's been an amendment to the asset

9 purchase agreement, and they're being put into some sort of

10 disputed category.  But that at final close, well, let me --

11 Mr. Patton, what happens at final close to the DB Structured

12 contract if the appeal is not yet resolved?

13         MR. PATTON:  If the appeal is not resolved when you

14 get to the final close.  I think at that point -- Your Honor, I

15 think practical answer is we need to get the appeal resolved by

16 the time we get to the final close.  I don't think that's been

17 pinned out, has it?

18         THE COURT:  Ms. Morgan may know.

19         MS. MORGAN:  Your Honor, under the APA, those that

20 are on the disputed schedule, we have up to one year to resolve

21 the issues by appeal, or in the case of terminated contracts,

22 by litigation, before this Court.  So within a year, if we

23 prevail, the money that will be sitting in escrow will go to B

24 of A, pursuant to the APA.  And if DB Structured prevails on

25 appeal, then their servicing rights would not be transferred

1    and WLR would get its money back.

2            THE COURT:  And at that time, servicing would have to

3    go to someone else.

4            MS. MORGAN:  Correct.

5            THE COURT:  And if the appeal isn't resolved at final

6    close, but a year hasn't expired, the debtors pay -- oh, no,

7    they don't pay.  They've already -- we had this conversation at

8    the -- at the discussion over the final order.  The issue then

9    would be, the buyer still services --

10           MS. MORGAN:  On our behalf.  That's right.

11           THE COURT:  -- and they're obligated to do that under

12   the APA.

13           MS. MORGAN:  That's right.  And we have to pay for

14   that, Your Honor.

15           THE COURT:  Oh, you do pay for that.

16           MS. MORGAN:  Yes.

17           THE COURT:  All right.  All right.

18           MR. ANTONOFF:  So I think that takes care of who

19   services.

20           THE COURT:  Thank you.

21           MR. ANTONOFF:  Thank you, Your Honor.

22           THE COURT:  I'm going to deny the motion.  The

23   standards controlling a request for a stay pending appeal are

24   the same for seeking injunctive relief.  One, whether the stay

25   applicant has made a strong showing that it is likely to

1    succeed on the merits.  Two, whether the applicant will be

2    irreparably harmed absent a stay.  Three, whether issuance of

3    the stay will substantially injure the other parties interested

4    in the proceedings.  And four, whether -- where the public

5    interest lies.  It's a test like any injunction test.

6    Irreparable harm is, I think, the number one issue.  And I

7    think likelihood of success on the merits is right there with

8    it.  And I think both of those issues fall against the

9    applicant in this case.

10               Taking irreparable harm first.  Really, what this is

11   is a concern that the appeal will become equitably moot.

12   That's really what this is about.  And there are cases that I

13   think make sense, that say in and of itself that does not

14   constitute irreparable harm.  Moreover, I think that if there

15   is an issue beyond the concern about equitable mootness, it

16   goes to whether the claim that will arise will get paid.  And

17   that is a significant and important issue to any creditor.  But

18   again, we're in the world of economic contract, and money

19   damages is all anybody's entitled to, generally speaking, for

20   breach of contract.  And claims in the bankruptcy estate, are

21   what they are.  They're either unsecured, secured, or

22   administrative.  That's it.  And whether someone may be or may

23   be not categorized in one way or the other, and whether or not

24   a plan ultimately can pay those claims a hundred cents on the

25   dollar or not, really are economic issues, that absent some

¹ specific evidence that indicates that someone's going to be

² left holding the bag, I think do not rise to the level of

³ irreparable harm.

⁴       That dovetails in, in this case, I think, with the

⁵ factor regarding likelihood of success on the merits.  I take

⁶ the argument seriously.  I know any applicant seeking a stay

⁷ pending appeal from the trial court is always in a difficult

⁸ situation.  The Courts spend a lot of time and energy thinking

⁹ about it.  And if I hadn't thought I was right, I wouldn't have

¹⁰ ruled the way I ruled.  So you're in a difficult situation.

¹¹ You had to convince me I was wrong.  Now, I'm often wrong, but

¹² I think in this case I was not wrong.  And I think I read the

¹³ cases correctly.  I read the facts correctly.  And I don't

¹⁴ think the Integrated case is inconsistent with my ruling, nor

¹⁵ do I think Fleming is inconsistent with the Integrated case,

¹⁶ nor do I think it cuts against my ruling.  That ruling was

¹⁷ twenty-seven pages.  It took me about twenty-five minutes to

¹⁸ read it into the record, and I won't go through it again.

¹⁹       I think it was important that it dealt with the

²⁰ issues in many cases for a number of different reasons, and

²¹ often in alternative reasons.  There was a finding that the

²² contract were non-executory and subject to sale under 363, and

²³ the non-assignability clauses are unenforceable ipso facto

²⁴ clauses under 363(L).  There was an alternative finding that if

²⁵ they were executory, that they were severable and they could be

30

1  assumed and assigned under the bankruptcy code and 365 -- oh,

2  boy, (M), maybe.  I can't remember, frankly, again made those

3  ante-assignment provisions non-enforceable.  I think that's

4  important because the Deutschbank papers and the UBS papers,

5  sort of cherry picked one little piece of it.  I don't think

6  that's fair to the overall reading, and I don't think it's fair

7  to the sale order that was approved.

8          So I don't think there's a threat of irreparable

9  harm.  I don't think there's a likelihood of success on the

10  merits.  I think there is a significant issue on the balance of

11  harms, that the debtors and the debtors' estates and creditors

12  could be harmed by issuing a stay pending appeal.  The contract

13  is what it is.  The Court's not going to get involved in a game

14  of chicken with the buyer with the -- with the estate's well-

15  being sort of being held hostage by that.  The contract says

16  what it said.  They do have the right not to go to the economic

17  close in the event there is a stay pending.  And the Court

18  takes that seriously.

19          Even if I were to grant a stay, I would require a

20  bond in the full amount of 500 million dollars. I don't know

21  whether or not your client's willing to provide that, but in

22  any event, I think the public -- the balancing the harms, also

23  favors denying the stay.  And finally, with the public

24  interest, I think that really comes down to the instability in

25  the mortgage market, the instability in the credit markets in

1   general, and the fact that the parties who own these mortgages

2   aren't in Court today.  These mortgages need to be serviced,

3   that even if there is -- where there is this agreement that the

4   buyer will continue to service, I have real concerns over how

5   that will play out.  There were some issues when we were

6   negotiating the order in Court over whether additional funds

7   might be required, may not be required.  I don't know how it

8   was resolved one way or the other.  But in any event, I think

9   there is risk to the holders of those mortgages that they won't

10  be serviced if they're not done through this transaction.  And

11  that risk is going to affect the market in general, and the

12  market for these securities, specifically.

13          And it's significant to me that the people who hold

14  the economic stake in asset that's being serviced aren't here

15  complaining about it.  So I think this really comes down to

16  concern over the priority of a claim.  And I hear that every

17  day.  And I just don't think it rises to the level of

18  irreparable harm.  So, for those reasons, I'm going to deny the

19  motion, and request that the debtors submit an order.

20          MR. PATTON:  Very well, Your Honor.  Thank you.  I

21  believe that's all we have for the agenda today, Your Honor.

22          THE COURT:  All right.  Anything else?  Thank you

23  very much.  I hope you have a pleasant weekend.  Sorry to start

24  you so late, but I was supposed to be in trial all day, and

25  then it finished early, so.

32

1          MS. MORGAN:  Thank you, Your Honor.

2          THE COURT:  I apologize for keeping Mr. Indelicato in

3     Delaware past 4 o'clock.  This hearing is adjourned.

4          MR. INDELICATO:  My pleasure, Your Honor.

5       (Proceedings concluded at: 4:40 p.m.)

33

**I N D E X**

**RULINGS**

Page      Line

Motion for Stay Pending    31        18

Appeal Denied

34

1

2                          C E R T I F I C A T I O N

3

4     I Penina Wolicki, court approved transcriber, certify that the

5     foregoing is a correct transcript from the official electronic

6     sound recording of the proceedings in the above-entitled

7     matter.

8

9     _____  __November 15, 2007_____

10    Signature of Transcriber              Date

11

12    _____PENINA WOLICKI_____

13    typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**AARs** 22:6
**abeyance** 10:12
  12:5 20:6
**abided** 9:20
**ability** 19:9
**able** 8:19 14:8
  17:25
**ABN** 5:18
**above-entitled** 34:6
**absent** 17:24 28:2
  28:25
**academic** 11:14
**acknowledging**
  9:19
**Acquisition** 7:19
  8:16
**add** 8:20 19:2
**addition** 24:7
**additional** 31:6
**address** 19:5 20:25
**addressed** 25:16
**adjourned** 32:3
**administrative**
  15:19 16:11,20
  17:1,4,19,24
  21:18 24:13 25:1
  25:1 28:22
**administratively**
  17:20
**admitted** 10:9
**adversary** 13:8,13
  13:15 21:24
**advisory** 16:24
**affect** 31:11
**affiliate** 20:17
**afternoon** 8:4,5,15
  9:13 10:4 23:19
**AG** 20:18
**agenda** 8:9 31:21
**agree** 11:4
**agreed** 9:18 19:8
  22:9 24:19
**agreement** 9:20,21
  26:9 31:3
**agreements** 13:14

25:22
**AH** 7:19 8:16,17
**allowed** 9:9
**allows** 24:25
**alternative** 29:21
  29:24
**Amanda** 7:7 10:8
**amendment** 26:8
**America** 4:19 5:1
**American** 1:8 19:7
  19:10,12,15,21
**amount** 24:18
  30:20
**AMRO** 5:18
**analysis** 21:7,11
**analyze** 23:9
**ANDERSON** 4:18
**ANDREW** 6:15
**Angeles** 5:21
**answer** 20:22 25:19
  25:21 26:15
**ante-assignment**
  30:3
**Antonoff** 4:15 10:4
  10:5 12:10,17,20
  13:2,7,10,18,25
  14:4,23 15:1,14
  15:17,22 16:6,19
  17:5,8,10,12 18:3
  18:9,12,14,16,18
  19:21,24 20:1,11
  20:14,17 25:13
  26:2,4 27:18,21
**anybody's** 19:19
  28:19
**anyplace** 24:6
**APA** 21:13 26:19
  26:24 27:12
**apologize** 32:2
**appeal** 2:4 10:12,13
  11:13,14,17 14:5
  14:16 15:3,4,6,8
  16:10 21:5 24:11
  24:21,22,24 25:4
  25:23 26:1,12,13
  26:15,21,25 27:5
  27:23 28:11 29:7

30:12 33:7
**Appeals** 24:14
**appear** 9:10
**appellate** 14:14,16
  15:9,25
**applicant** 27:25
  28:1,9 29:6
**applying** 11:4
**approved** 16:17
  30:7 34:4
**approving** 21:14
**argument** 14:3
  17:19 18:19,21
  21:22 23:11 29:6
**arose** 15:19
**Arsht** 5:8 9:14
**ASHBY** 7:1
**asked** 25:20
**assert** 14:21 24:20
**asserted** 16:20
**asserting** 18:16
**asset** 26:8 31:14
**assign** 10:19 14:12
  21:12
**assignable** 19:12
**assigned** 10:24
  14:18 16:3 30:1
**assignee** 18:23
**assignment** 9:21
  17:14 18:5,6
  24:12
**associated** 24:5
**assume** 10:19
  14:11,12 15:25
  16:1 21:12 23:6
**assumed** 10:24
  14:18 16:3 30:1
**assuming** 15:5 17:1
**assumption** 17:14
  18:6 24:12
**assurance** 24:10
**assure** 11:13
**Assured** 5:9 8:9
  9:15,18
**Assured's** 9:19
**Attorneys** 3:3,14
  4:2,11,19 5:1,9,18

6:2,11,19 7:2,19
**Avenue** 3:15 5:2
  6:20 7:3
**aware** 13:12,12,14
  13:15

**B**

**B** 1:22 5:15 26:23
**back** 11:19,20 14:9
  27:1
**bag** 29:2
**balance** 24:6 30:10
**balancing** 12:4
  30:22
**Bank** 4:19 5:1 6:11
  6:19
**bankruptcy** 1:2,14
  1:24 19:15 28:20
  30:1
**Bar** 8:22,24
**based** 11:3
**basically** 16:13
**basis** 9:22 10:17,20
  19:11 21:19
**beginning** 13:4
**behalf** 8:7,16 9:15
  10:6 11:2 27:10
**believe** 11:10,21
  21:21 23:22 25:3
  25:4 31:21
**believes** 11:6
**benefit** 23:3
**BENJAMIN** 7:23
**Beskrone** 7:6 10:8
**better** 15:25 24:23
**beyond** 28:15
**BINGHAM** 6:10
  6:18
**bit** 14:2
**BLANK** 4:1
**bond** 20:2 30:20
**Boston** 6:13
**bottom** 21:10
**bought** 19:11
**boy** 30:2
**Brandon** 4:16 10:7
**Brandywine** 3:4

**breach** 16:18 28:20
**breaches** 16:17
**brief** 23:22 25:13
**Broadway** 4:12
**broken** 11:6
**Building** 3:4 6:3
**business** 20:15 23:8
**Butz** 5:15 9:12,13
  9:14,24 10:2
**buyer** 11:20,23
  12:16 27:9 30:14
  31:4
**buying** 19:16,17,19

**C**

**C** 3:1 8:1 34:2,2
**CA** 5:21
**care** 27:18
**CARICKHOFF**
  4:8
**CARSON** 4:18
**case** 1:4 8:20 11:12
  12:22 13:4 15:17
  17:22,24 18:8,10
  18:22 19:15 21:17
  26:21 28:9 29:4
  29:12,14,15
**cases** 28:12 29:13
  29:20
**categorized** 28:23
**category** 26:10
**Centre** 4:3 5:10
**cents** 28:24
**certainly** 13:25
  17:14 19:19
**certificates** 12:14
  12:15 13:21
**certify** 34:4
**Chase** 4:3 5:10
**cherry** 30:5
**chicken** 30:14
**chime** 8:25
**choice** 12:1 24:21
**choose** 11:25 12:2
**chose** 24:20,24
**CHRISTOPHER**
  1:23

**Circuit** 11:11 15:10
**claim** 14:21 15:13
  15:15,18,18 16:5
  16:8,8,11,21 17:2
  17:4,11,13,20
  18:1 21:10,11,15
  21:16 23:8 24:11
  24:13 25:1,1,2,5
  28:16 31:16
**claims** 17:16 23:1,5
  23:11 24:15,16,17
  24:18 28:20,24
**clauses** 29:23,24
**CLERK** 8:2
**client** 12:8
**client's** 11:18 30:21
**close** 11:21 14:13
  14:14,15 15:2,8
  16:1,9,10 19:4
  20:5 26:10,11,14
  26:16 27:6 30:17
**closed** 18:25
**closing** 14:19
**code** 30:1
**colleague** 10:7
**come** 11:19 22:13
**comedy** 9:8
**comes** 30:24 31:15
**comments** 25:14
**Committee** 3:14
  4:2
**company** 8:16
  19:15 20:18
**compelled** 23:21
**complaining** 31:15
**Conaway** 3:2 8:6
**concern** 28:11,15
  31:16
**concerned** 12:13
  13:20 22:5
**concerns** 31:4
**concluded** 32:5
**condition** 17:15
  20:19
**connection** 12:7
  13:13 21:21
**consent** 19:13

**constitute** 28:14
**contact** 19:8
**continue** 31:4
**contract** 10:11,18
  10:22,23 11:5,9
  11:17,20,24,25
  12:5,6 14:5,7,9,11
  15:4,11 16:4,14
  19:14 20:6 21:12
  23:25 24:2,5,7
  26:4,5,12 28:18
  28:20 29:22 30:12
  30:15
**contracts** 14:17
  16:16,17 23:12
  26:21
**contradicts** 11:11
**contrast** 11:21
**controlling** 11:11
  27:23
**conversation** 27:7
**convince** 29:11
**correct** 12:9,10
  27:4 34:5
**correctly** 29:13,13
**Counihan** 6:8 8:12
  8:15,16,24 9:3,7
**counsel** 10:7
**court** 1:2,14 8:3,5
  8:10,14,22 9:4,8
  9:12,16,17,23,25
  10:3,19,22 11:4,8
  11:19 12:7,11,18
  12:25 13:6,9,12
  13:19 14:2,10,16
  14:25 15:5,9,9,15
  15:21,23 16:2,7
  16:13,17,23 17:7
  17:9,11,18 18:8
  18:10,13,15,17
  19:14,18,23,25
  20:4,8,9,12,16,20
  21:1,8,23 22:17
  22:20,23 23:5,16
  24:10,14,14,15,18
  25:5,7,12,24 26:3
  26:7,18,22 27:2,5

  27:11,15,17,20,22
  29:7 30:17 31:2,6
  31:22 32:2 34:4
**Courts** 29:8
**Court's** 8:8 10:11
  30:13
**covered** 25:17
**creation** 21:16
**credit** 21:23 30:25
**creditor** 5:18 28:17
**creditors** 3:14 4:2
  30:11
**creditworthy** 20:4
**cumbersome** 11:19
**cure** 14:8,13 16:4,8
  17:13 18:4,12,13
  21:11 25:15,16
**cured** 10:18
**cures** 25:17
**currently** 12:8
  15:15
**cuts** 23:10 29:16

**D**

**D** 5:5 8:1 33:2
**damages** 14:21
  15:19 16:16,18,20
  28:19
**Daniel** 5:15 9:14
**Date** 34:10
**DAVID** 4:8
**day** 7:18 8:18 12:22
  19:23,24 31:17,24
**DB** 2:3 10:13 11:2
  23:25 25:21 26:11
  26:24
**DB's** 11:23
**DE** 3:7 4:6,22 5:13
  6:6 7:4,13
**dealt** 29:19
**debtor** 1:10 3:3
  10:19 12:16,23
  14:7 17:25 19:6
**debtors** 8:7 11:22
  11:23 15:13,16
  27:6 30:11,11
  31:19

**debtor's** 8:11 14:3
  18:21 25:10
**decision** 18:19,21
**default** 10:21 14:8
**defaults** 10:17,25
  14:13 18:16
**Delaware** 1:3,17
  7:3 10:7 23:21
  32:3
**demonstrate** 18:1
**Denied** 33:7
**deny** 25:5 27:22
  31:18
**denying** 30:23
**DEPARTMENT**
  7:10
**determine** 11:5
  22:13
**determined** 14:15
  16:1,11
**determining** 19:13
**Deutschbank** 30:4
**Deutsche** 6:11,19
**dichotomy** 23:9
**different** 29:20
**difficult** 22:14 23:9
  29:7,10
**disagree** 18:20
**discussion** 27:8
**disputed** 23:24
  26:10,20
**District** 1:3 15:9
  24:14
**divorce** 22:25 23:1
**divorced** 19:14
**dollar** 28:25
**dollars** 30:20
**Don** 7:6 10:7
**dovetails** 14:2 29:4

**E**

**E** 1:22,22 3:1,1 8:1
  8:1 33:2 34:2
**early** 31:25
**easier** 12:5
**easily** 12:4
**East** 7:20

**economic** 23:7
  28:18,25 30:16
  31:14
**economics** 22:18
**effect** 13:22
**efforts** 13:3
**either** 12:15,16
  28:21
**electronic** 34:5
**Emergency** 2:3
**energy** 29:8
**enforce** 16:14
**entitled** 15:18 25:3
  28:19
**entity** 20:4,13,15
**EPDs** 23:6
**equitable** 28:15
**equitably** 14:25
  28:11
**erred** 11:4
**escrow** 18:7,12,13
  24:17,18 25:15,18
  26:23
**ESQ** 3:9,18 4:8,15
  4:16,24 5:5,6,15
  5:23,24 6:8,15,23
  7:6,7,15,23
**estate** 2:2 4:11 7:2
  10:6 15:13,16
  17:15,20 20:9,14
  23:5 28:20
**estates** 30:11
**estate's** 30:14
**event** 30:17,22 31:8
**evidence** 17:24
  20:8 29:1
**exactly** 12:21
**excused** 9:24
**executory** 29:25
**existence** 21:15,15
**expense** 16:11,21
  17:2,4
**expired** 27:6
**extent** 12:1 24:11
**extraordinary**
  21:20

**F**

**F** 1:22 34:2
**facility** 18:24
**fact** 11:25 12:1,3
  15:25 19:10 20:3
  31:1
**facto** 29:23
**factor** 29:5
**factors** 11:5
**facts** 29:13
**fair** 25:14 30:6,6
**fairly** 22:3
**fall** 28:8
**fashion** 22:15
**favors** 30:23
**Federal** 6:12
**feel** 23:21
**fight** 17:25
**Figueroa** 5:19
**file** 8:18 9:25
**filed** 10:15 11:13
**final** 14:14,15 16:1
  26:10,11,14,16
  27:5,8
**finally** 20:1 30:23
**financial** 17:15
  20:18
**find** 11:16
**finding** 21:19 29:21
  29:24
**fine** 9:5
**finish** 18:18
**finished** 31:25
**first** 8:9 19:8 28:10
**fixed** 24:18
**Fleming** 18:21,22
  29:15
**Floor** 1:16 3:6 5:11
  5:20
**follow** 8:21 24:2
**foregoing** 34:5
**foreign** 9:9
**form** 16:20
**found** 10:22
**four** 28:4
**frankly** 23:10 30:2

**G**

**FRED** 5:24
**front** 26:3
**full** 30:20
**fully** 14:15
**Fund** 6:2
**funds** 18:7 31:6

**G**

**G** 8:1
**GALLO** 6:15
**game** 30:13
**GEDDES** 7:1
**general** 31:1,11
**generally** 16:15
  28:19
**genuinely** 22:5
**getting** 13:10
**give** 17:20 24:19
**given** 20:21
**gives** 16:18
**go** 14:14,15 26:23
  27:3 29:18 30:16
**goes** 12:12 22:24,25
  28:16
**going** 9:20 12:16
  15:6 23:22 24:12
  25:24 26:4 27:22
  29:1 30:13 31:11
  31:18
**good** 8:4,5,15 9:13
  10:4 16:21 23:19
**goods** 18:24
**grant** 20:2 21:4
  30:19
**granted** 17:22
**GREENBERG** 6:1
**Guarantee** 9:15
**guess** 14:2 16:24
  17:18

**H**

**HADLEY** 5:17
**Hahn** 3:13 23:20
**happens** 15:7 16:4
  26:11
**harm** 11:21,22,23
  12:1,2 13:20,24

14:4 15:24 17:6
  17:21 18:2,9 21:2
  21:3,4,17,20
  22:11 25:4,18
  28:6,10,14 29:3
  30:9 31:18
**harmed** 28:2 30:12
**harms** 12:4 30:11
  30:22
**healthy** 19:15
**hear** 23:18 25:12
  31:16
**heard** 20:22,23
  23:17,17
**hearing** 2:2 10:10
  22:2 32:3
**held** 20:6 24:4
  30:15
**help** 21:1,1
**Hercules** 4:20
**Hessen** 3:13 23:20
**highly** 20:5
**hoc** 8:13,18,19 10:9
**hold** 10:11 12:5
  23:5 31:13
**holders** 12:14
  13:21 31:9
**holding** 12:21 22:7
  29:2
**HOLDINGS** 1:8
**holds** 23:2
**Home** 1:8 19:7,10
  19:12,15,21
**HON** 1:23
**Honor** 8:4,7,15,17
  9:6,7,13,24 10:4,9
  19:3 20:1,21
  21:13,17 23:15,19
  23:22 24:1,9 25:3
  25:9,20 26:14,19
  27:14,21 31:20,21
  32:1,4
**hope** 31:23
**hostage** 30:15
**hundred** 28:24
**hurt** 15:23,23

**I**

**important** 28:17
  29:19 30:4
**inability** 18:23
**inappropriate**
  14:22
**inclined** 20:2
**inconsistent** 29:14
  29:15
**incorrect** 14:11
**Indelicato** 3:18
  23:19,20 32:2,4
**Indelicato's** 25:14
**indicates** 29:1
**inform** 9:17
**initially** 29:15
**injunction** 28:5
**injunctive** 27:24
**injure** 28:3
**insolvency** 17:24
  21:19
**insolvent** 17:20
**instability** 30:24,25
**Integrated** 11:11
  18:19,22,25 29:14
  29:15
**interest** 9:8 12:13
  23:7 28:5 30:24
**interested** 28:3
**interesting** 17:18
**interrelated** 11:8
**invited** 25:15
**involved** 30:13
**ipso** 29:23
**irreparable** 11:20
  12:1,3 17:21 18:2
  21:2,2,4,7,17,20
  25:4,18 28:6,10
  28:14 29:3 30:8
  31:18
**irreparably** 28:2
**issuance** 28:2
**issue** 13:8 14:12
  19:2,13 20:24
  23:23 25:18 27:8
  28:6,15,17 30:10

**issues** 22:14,15
  23:1,2 26:21 28:8
  28:25 29:20 31:5
**issuing** 30:12

**J**

**J** 5:23 6:15 7:15
**JAMES** 3:10
**Johnson** 4:16 10:7
  10:8
**joinder** 2:2 25:11
**joined** 23:23 25:10
**Jones** 7:18 8:18
**JOSEPH** 7:15
**JR** 3:10
**Judge** 1:24 14:17
  16:25 17:3
**jumbo** 19:25
**juris** 9:9
**jurisdiction** 9:9
**JUSTICE** 7:10

**K**

**K** 3:9
**KAYE** 4:25
**keeping** 32:2
**kinds** 18:14 25:16
**King** 7:12
**know** 11:18 12:18
  12:21 13:3 14:16
  16:2,15,19 17:23
  19:22 20:12,12
  21:3 22:20,24
  25:19 26:7,18
  29:6 30:20 31:7
**knows** 19:3

**L**

**L** 3:10
**laid** 23:23
**late** 31:24
**LAURIE** 4:24
**law** 11:11 24:25
**left** 29:2
**legal** 11:18
**legitimately** 22:4
**lender** 19:22

letter 9:18
let's 14:10,11
level 21:16 22:25
  29:2 31:17
lies 11:20 28:5
likelihood 18:20
  19:1 28:7 29:5
  30:9
limited 2:4 8:9
  10:10 11:15
line 21:10 33:5
linked 19:10
list 23:25
litigation 26:22
little 14:2 30:5
LLP 3:2,13 4:1,10
  4:18,25 5:8,17 6:1
  6:10,18
loan 10:21,23,24,25
  13:13
loans 12:9,21 13:25
  19:7,9,16,16,19
  19:20,25 25:20,22
longer 23:2
look 19:14
looking 24:10
  25:16
Los 5:21
loss 22:12
lot 17:14,23 24:19
  29:8

M

M 7:7 30:2
MA 6:13
Madison 3:15
Manhattan 4:3
  5:10
manufactured 12:2
MARGOT 5:6
Mark 3:18 23:19
market 1:15 4:4,21
  5:12 19:9 30:25
  31:11,12
markets 30:25
matter 1:6 8:8,20
  9:17 15:24 34:7

matters 20:19
MCCLOY 5:17
MCCUTCHEN
  6:10,18
MCMAHON 7:15
mean 13:11 15:1
  16:15 20:12 25:25
meaning 11:14
member 8:22,24
memory 26:8
merely 11:14 20:5
merge 21:21
merits 18:20 23:11
  28:1,7 29:5 30:10
Michael 8:17
MILBANK 5:17
million 30:20
minute 12:25
minutes 29:17
mistaken 13:16
MLPSA 12:9 14:12
MLPSAs 25:22
monere 14:19 16:3
monetary 14:21
money 26:23 27:1
  28:18
MOORE 5:23
moot 14:25,25 15:2
  28:11
mooted 15:6
mootness 28:15
Morgan 3:9 8:4,5,6
  8:6,11 26:18,19
  27:4,10,13,16
  32:1
Morris 5:8 9:14
mortgage 1:8 7:19
  8:16,17 12:8
  30:25
mortgagees 13:23
mortgages 12:14
  22:7 31:1,2,9
motion 2:2,3 8:13
  8:21 10:10,10,17
  25:6 27:22 31:19
  33:6
motions 13:14

MSRs 24:2,5

N

N 3:1 8:1 33:2 34:2
name 34:13
nature 11:7
necessarily 26:7
necessary 20:3
need 10:18 11:22
  12:15 21:20 26:15
  31:2
negotiated 24:17
negotiating 31:6
Nemours 6:3
net 20:10,19
NEUFELD 5:24
New 3:16 4:13 5:3
  6:21 7:21 8:25
  9:1 10:5
Nichols 5:8 9:14
non 15:10
nonconforming
  19:20
non-assignability
  29:23
non-enforceable
  30:3
non-executory 11:9
  29:22
North 1:15 4:21
  5:12 6:4
notice 9:25 11:13
November 1:19
  34:9
number 13:7 28:6
  29:20
NY 3:16 4:13 5:3
  6:21 7:21
N.A 4:19 5:1

O

O 1:22 8:1 34:2
objecting 22:8
objection 8:9 9:16
  9:22 10:20 22:21
  25:11
objections 10:15,16

22:9
obligated 21:14
  27:11
obviously 21:3
occurred 14:19
occurs 25:18
October 10:11,20
  11:9
Office 7:11
official 3:14 4:2
  34:5
oh 27:6,15 30:1
Okay 20:20
ongoing 23:8
operating 20:16,17
opinion 16:24
opposition 19:6
  20:20
oral 10:20
orally 8:19
Orange 6:4
order 8:11 10:11
  10:14,16 11:13
  14:20,23 15:4
  21:14 22:9,11
  27:8 30:7 31:6,19
ordinarily 18:3
originating 19:16
overall 30:6
overruled 10:19
overrules 24:15
ownership 23:1
o'clock 32:3

P

P 3:1,1 8:1
Page 33:5
pages 29:17
paid 17:13 18:4,4
  28:16
papers 8:18 30:4,4
parallel 17:19
parent 20:18
Park 5:2 6:20
part 24:16
participate 25:15
participated 24:23

particular 8:20
particularly 17:15
parties 24:19 28:3
  31:1
Patton 3:10 20:21
  21:6,9,25 22:18
  22:22 23:4,13,15
  23:22 25:11 26:11
  26:13 31:20
Pauline 3:9 8:6
pay 16:4,8 17:25
  22:21 27:6,7,13
  27:15 28:24
payment 21:11
payments 21:15
  23:6
pending 2:4 10:12
  13:8,15 21:5 25:3
  25:23,25 27:23
  29:7 30:12,17
  33:6
Penina 2:24 34:4
  34:12
people 13:22 31:13
perform 18:23
performance 16:16
  17:21
period 22:11
permission 8:8
petition 15:20
phone 8:17 25:8
picked 30:5
piece 30:5
pieces 15:12
Pillsbury 4:10 10:5
pinned 26:17
Pittman 4:10 10:5
plan 28:24
play 14:10 31:5
Plaza 4:20
pleadings 11:3
pleasant 31:23
Please 8:3
pleased 9:16
pleasure 32:4
PM 1:20
point 13:19 14:23

15:12 22:1 26:14
**pointed** 24:1
**points** 19:5 25:13
**portion** 24:3
**position** 11:16 21:3
22:1
**post** 15:19
**potential** 13:20,24
21:18
**POTTER** 4:18
**practical** 26:15
**premium** 23:6
**prepetition** 17:12
17:16
**present** 8:12
**preserve** 15:3
**preserved** 18:6
**prevail** 11:16 14:5
26:23
**prevails** 26:24
**previously** 17:22
21:18
**price** 24:4
**principally** 10:17
**printed** 34:13
**priority** 15:19
24:13 31:16
**pro** 8:13,18,19 10:9
**probably** 18:4 19:3
**problem** 15:2
**proceeding** 21:24
**proceedings** 10:9
13:8,13,15 28:4
32:5 34:6
**proceeds** 18:5
**process** 24:17,24
**Products** 2:3 6:11
6:19 10:13 11:3
25:21
**prong** 12:13
**protect** 18:7
**provide** 9:18 21:13
30:21
**provided** 21:13
**provisions** 10:22
10:23,24 11:1,7,8
21:12 30:3

**public** 12:12 20:19
28:4 30:22,23
**purchase** 10:21,25
19:8 24:4 26:9
**purchased** 19:7
**purchaser** 9:18,21
**purpose** 20:13,15
**pursuant** 26:24
**put** 11:23 23:24
24:5 26:9
**putting** 16:25
**puzzled** 22:1,10
**P.A** 7:1
**p.m** 32:5

---
**Q**
**question** 9:20 12:7
15:6 18:4 19:4,4
25:19
**questionable** 17:16
**questions** 20:7,22
23:13

---
**R**
**R** 1:22 3:1 8:1 34:2
**raised** 23:24
**read** 20:21 29:12
29:13,18
**reading** 11:3 30:6
**real** 2:2 4:11 7:2
10:6 20:9,14 31:4
**realize** 8:18
**really** 11:22 16:13
19:14 22:18 23:12
23:13 24:9 25:14
25:17 28:10,12,25
30:24 31:15
**reason** 24:3
**reasons** 22:2 29:20
29:21 31:18
**recall** 24:18
**recapture** 23:6
**receiving** 23:3
**recognize** 9:8
**record** 9:14 20:19
29:18
**recording** 34:6

**recover** 13:16
**Recovery** 6:2
**redressed** 14:6
**reduce** 18:9
**regard** 10:25
**regarding** 29:5
**related** 24:2
**relating** 13:9,10
14:21,21
**relative** 12:4
**released** 13:5
**relegated** 17:12
**relief** 13:14 27:24
**remain** 22:10
**remained** 22:3,12
**remedies** 15:12
**remedy** 11:21
21:21 22:15
**remember** 30:2
**reparable** 12:3,4
**reply** 23:18 25:12
**Republic** 9:4
**repurchase** 10:21
11:1 13:13
**request** 8:19 26:1
27:23 31:19
**require** 30:19
**required** 14:8 31:7
31:7
**requires** 20:23
**reservations** 10:15
**reserve** 24:4
**resides** 10:21
**resolve** 22:13,15,21
26:20
**resolved** 9:17 26:12
26:13,15 27:5
31:8
**respect** 15:4 22:11
**respond** 20:24
**response** 10:16
13:23 16:24
**result** 14:18 16:22
22:12 24:21
**retained** 19:11
**reversed** 14:24
**RICHARD** 4:15

**Rick** 10:4
**right** 8:22 9:6,23
10:3 13:6 14:6,10
14:20 15:3,21
16:19 17:7 18:8
18:10,17 19:19
22:1,22 23:4
24:22 25:7,12
26:2 27:10,13,17
27:17 28:7 29:9
30:16 31:22
**rights** 9:19 10:15
11:18 12:12,13
13:16 14:6,14
16:1 22:5 24:21
24:22,23,25 26:25
**rise** 8:2 16:18 17:20
21:16 29:2
**rises** 22:24 31:17
**risk** 31:9,11
**ROBERT** 5:23
**ROME** 4:1
**ROSENBLUM**
7:23
**ruled** 17:22 21:18
29:10,10
**ruling** 10:20 11:9
11:10 29:14,16,16
**rulings** 17:23 33:4

---
**S**
**S** 1:23 3:1,18 8:1
**sale** 8:11 10:11,13
10:16,17 13:11
14:20,22,23 18:5
20:5 21:14 22:9
24:24 29:22 30:7
**saying** 17:1
**says** 14:16 16:2
30:15
**schedule** 11:24
26:20
**scheduling** 9:16
**SCHOLER** 4:25
**SCHONHOLTZ**
5:6
**Scott** 5:5 25:9

**seated** 8:3
**second** 8:8
**secondary** 19:9
**Section** 11:10
**secured** 28:21
**securities** 2:2 4:11
7:2 10:6 20:9,14
23:2 31:12
**securitization**
13:15,21 22:8
**see** 23:17
**seeking** 11:15
27:24 29:6
**SELBER** 4:24
**sell** 19:9
**selling** 19:7
**sense** 28:13
**separation** 23:7
**seriously** 29:6
30:18
**service** 25:20 31:4
**serviced** 12:9,15
14:1 31:2,10,14
**servicers** 12:24
**services** 27:9,19
**servicing** 9:19,21
10:23,24 12:12,23
13:4,4,9,10,16
19:10,11,12,17
22:5 23:1 25:17
25:21,22 26:6,25
27:2
**settled** 25:25,25
**sever** 19:8
**severability** 19:13
**severable** 10:22
14:12,17 15:11
16:2 23:11,12
29:25
**severance** 19:2
**severed** 11:6 14:7
**Shaw** 4:10 10:5
**showing** 27:25
**Signature** 34:10
**significant** 28:17
30:10 31:13
**SILVERSTEIN**

4:24
similar 10:12
simply 21:6
single 11:5
sit 17:2
sitting 26:23
situation 16:3
    23:10 29:8,10
sold 11:10
someone's 29:1
someplace 8:25
somewhat 22:10,12
SONTCHI 1:23
sorry 9:3 10:16
    31:23
sort 13:19 17:1
    22:25 26:9 30:5
    30:15
sound 34:6
South 5:19
speak 11:2
speaking 16:15
    28:19
special 20:13,15
specific 16:16
    17:21 18:24 29:1
specifically 11:6
    16:14 18:23 31:12
spend 29:8
spot 16:12,25
spot-on 21:7
stake 31:14
stand 25:11
standards 27:23
standing 14:3
    22:25
Stargatt 3:2 8:7
start 31:23
State 8:24 9:1,4
States 1:2,14 7:10
status 24:13
stay 2:4 10:10
    11:15,15 12:11
    13:14 15:4 20:2
    21:5 24:20 25:3
    25:25 27:23,24
    28:2,3 29:6 30:12

30:17,19,23 33:6
STEVE 6:23
Street 1:15 3:5 4:4
    4:21 5:12,19 6:4
    6:12 7:12,20
strength 19:1
strong 18:19 19:1
    27:25
strongly 18:20
Structured 2:3
    6:11,19 10:13
    11:3 25:21 26:11
    26:24
struggled 19:3
subject 25:22 29:22
submit 31:19
substantially 28:3
sub-prime 19:22
succeed 28:1
success 18:20 19:2
    28:7 29:5 30:9
successful 24:11
suck 21:9
suffer 11:22,23
    22:11
sufficient 18:1
Suisse 21:23
Suite 4:5 6:5
superpriority 25:1
supply 18:24
suppose 25:20
supposed 31:24
sure 19:18,18 24:6
suspense 11:24

                T
T 34:2,2
take 8:8 9:15 16:4
    21:3 24:20 25:10
    29:5
taken 10:12,13
takes 27:18 30:18
talking 13:1
Talmadge 5:5 25:9
    25:9
Taylor 3:2 8:7
TELEPHONIC...

5:5,24 6:16,24
    7:24
telling 16:10 17:3
tells 15:9,10
terminated 26:21
terms 22:13 24:7
test 28:5,5
Texas 9:2,3,4,5
thank 9:7,11,16,23
    9:24 10:3,9 20:6
    20:20 21:8 23:14
    23:14,15 25:7,12
    27:20,21 31:20,22
    32:1
theory 16:12
thing 24:9
things 16:4
think 8:12 10:18
    11:4 12:20,22,24
    13:7,11,18 14:1
    15:3,17,18 16:21
    17:22 18:18,25
    19:2,6,13 20:2,4
    20:11,18,22,23
    22:20,24 23:8,10
    25:5 26:14,15,16
    27:18 28:6,7,8,13
    28:14 29:2,4,12
    29:12,14,15,16,19
    30:3,5,6,8,9,10,22
    30:24 31:8,15,17
thinking 29:8
Third 11:11 15:10
third-party 12:24
thought 29:9
threat 21:18 30:8
Three 28:2
time 9:15 15:2
    17:14 18:5 25:10
    26:16 27:2 29:8
titled 24:12
today 8:17,20
    20:22 21:10 24:16
    31:2,21
today's 22:2
told 25:15
tough 16:25 19:4

transaction 15:22
    23:3 31:10
Transcribed 2:24
transcriber 34:4,10
transcript 34:5
transfer 12:6,11,23
    22:8
transferred 11:17
    15:11 22:6 25:23
    26:5,25
TRAURIG 6:1
trial 29:7 31:24
true 26:8
trust 12:14,15
Trustee 7:11
trusts 12:21 13:3
    13:16 22:6,8
try 11:19 12:5 13:3
    22:13
trying 12:22
Tunnell 5:8 9:14
TWEED 5:17
twenty-five 29:17
twenty-seven 29:17
two 16:3 25:13 28:1
typed 34:13

                U
UBS 2:2 4:11 7:2
    10:6,12,15 11:2,6
    15:17 19:7,16
    20:9,12,12,14,17
    21:4 22:1 23:2,25
    30:4
UBS's 11:25 19:9
    19:12
Uh-huh 16:6
ultimately 24:11
    28:24
Um 15:14
unclear 22:3,3
underlying 22:7
undermines 18:22
understand 22:18
undo 12:6
unenforceable
    29:23

unfair 16:25
United 1:2,14 7:10
unsecured 3:14 4:2
    16:8 17:13,16
    28:21
U.S 1:24

                V
variety 22:2
vehicles 13:21
versus 23:1,1
viability 20:9
Victoria 6:8 8:15
view 20:3
violation 11:17
virtually 25:10

                W
wait 12:25
want 9:15 16:13,24
wants 8:12 23:17
way 14:6 15:3
    22:21 28:23 29:10
    31:8
weekend 31:23
Weinberg 8:17 9:1
    9:6,11
weren't 23:12
West 3:5
we'll 8:21
we're 10:10 18:16
    28:18
we've 21:25 22:2
wholly 11:8
WILAMOWSKY
    6:23
willing 22:23 30:21
Wilmington 1:17
    3:7 4:6,22 5:13
    6:6 7:4,13
Winfree 7:7 10:8
Winthrop 4:10
    10:5
wishes 23:16
withdrawal 10:1
withdrawing 9:22
withdrawn 22:9

**WLR** 27:1
**Wolicki** 2:24 34:4
  34:12
**word** 22:4
**words** 15:8
**work** 24:1,7
**world** 28:18
**worry** 17:2
**worse** 17:14
**worth** 20:10,19
**wouldn't** 29:9
**wrest** 11:19 12:23
**written** 8:21
**WRL** 6:2
**wrong** 14:17 15:10
  21:11 22:4 29:11
  29:11,12

**X**

**x** 1:5,12 33:2

**Y**

**yeah** 13:10 21:25
  22:20
**year** 26:20,22 27:6
**York** 3:16 4:13 5:3
  6:21 7:21 8:25
  9:1 10:5
**Young** 3:2 8:6

**Z**

**zero** 24:6

**0**

**02110** 6:13
**07-11047-css** 1:4

**1**

**1000** 3:5
**10017** 7:21
**10022** 3:16 5:3 6:21
**10036** 4:13
**1007** 6:4
**1200** 6:5
**1201** 4:4 5:12
**1313** 4:21
**15** 34:9

**150** 6:12
**1540** 4:12
**17th** 3:6
**18** 33:6
**18th** 5:11
**19801** 3:7 4:6,22
  6:6 7:13
**19899** 5:13 7:4

**2**

**2007** 1:19 34:9
**222** 7:20
**23rd** 10:20 11:9

**3**

**30th** 5:20 10:11
**31** 33:6
**363** 11:10 18:25
  29:22
**363(L)** 29:24
**365** 18:22 30:1
**399** 6:20

**4**

**4** 32:3
**4:05** 1:20
**4:30** 23:20
**4:40** 32:5
**41st** 7:20
**425** 5:2
**488** 3:15

**5**

**5th** 1:16
**500** 7:3 30:20

**6**

**610** 5:19

**8**

**800** 4:5
**824** 1:15
**844** 7:12

**9**

**9** 1:19
**90017** 5:21