**Privileged & Confidential Attorney Work Product**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| CUTISHA T. CAUTHORNE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CHOICE TITLE & | ) | Civil Action File #_____ |
| SETTLEMENT LLC | ) | |
| | ) | |
| AMY PORTERFIELD | ) | |
| | ) | |
| AGGRESSIVE MORTGAGE | ) | |
| CORP. | ) | |
| | ) | |
| KIMBERLY GARNETT | ) | |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| | ) | |
| Defendants, | ) | |

**COMPLAINT**

NOW COMES Cutisha T. Cauthorne, by counsel, and for her Complaint against the defendants states as follows:

**VENUE AND JURISDICTION**

1.  Plaintiff is a citizen of the Commonwealth of Virginia residing in Spotsylvania County. This action arises under the Consumer Protection Act, 15 U.S.C. §1601 et seq., and Regulation Z of the Federal Reserve Board, 12 C.F.R. Part 226. Jurisdiction is conferred on this Court by Section 130(e) of the Consumer Protection Act, 15 U.S.C. §1640(e), and by 28 U.S.C. §1337.

**PREDICATE FACTS**

2.      On or about August 18, 2006, Plaintiff purchased a home, her principal dwelling, at 5417 Silver Maple Lane, Fredericksburg, Virginia (the "Property") (Fredericksburg is the mailing address; the Property is physically located in Spotsylvania County). The purchase price was $431,470. Financing for the purchase was provided by defendant American Home Mortgage Corp. ("American Home"), which loaned Plaintiff $409,850 secured by a first deed of trust on the Property (the "Initial Loan").

3.      Plaintiff became dissatisfied with the terms of the Initial Loan, and on or about October 2006 she contacted Defendant Kimberly Garnett ("Garnett"), an employee of Defendant Aggressive Mortgage Corp. ("Aggressive") and a broker for American Home about refinancing the Initial Loan. Garnett assured Plaintiff that she, Garnett, could obtain better loan terms for Plaintiff than those contained in the Initial Loan; specifically that she could obtain a loan with a lower interest rate than the 8.540% required by the Initial Loan and that could obtain fixed payments for five (5) years instead of the one (1) year called for in the Initial Loan. Both of these proffered features, a better interest rate and fixed payments for a longer period, induced Plaintiff to pursue a refinance (the "Refinance").

4.      Garnett, acting within the scope of her authority as an employee of Aggressive and a broker for American Home, brokered the Refinance with American Home and arranged with Defendant First Choice Title & Settlement LLC ("First Choice") to close the Refinance. Despite the requirement of the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et seq., that Aggressive furnish Plaintiff with a good faith estimate of closing costs, no such estimate was provided prior to the closing of the Refinance.

5.      Closing of the Refinance was set for November 27, 2006.  On that day, Defendant Amy Porterfield ("Porterfield"), acting within the scope of her authority as an employee of First Choice, came to Plaintiff's home with the closing documents. As she reviewed the closing documents, Plaintiff became increasingly concerned that the figures on the closing documents did not match those previously provided by Garnett. Plaintiff declined to close.

6.      One major discrepancy in the closing documents presented by Porterfield on November 27 was the Truth in Lending disclosure, which showed twenty (20) fixed monthly payments (the "20 Fixed TIL") as opposed to the sixty (60) Garnett had assured Plaintiff were a condition of the Refinance. After she declined to close on November 27, Plaintiff confronted Garnett with this inconsistency. Garnett assured Plaintiff that Plaintiff's understanding of fixed payments for 5 years was correct, and as proof faxed to Plaintiff a Truth in Lending statement showing 60 fixed monthly payments (the "60 Fixed TIL"). In reliance upon this and other reassurances given by Garnett, Plaintiff agreed to close the Refinance.

7.      Closing was rescheduled for November 30, 2006 at the First Choice offices.  The closing documents presented by Porterfield and coordinated by Garnett, were dated November 27, 2006.  Garnett, who was not present at the closing, and Porterfield, who was the settlement agent, urged Plaintiff to execute the backdated closing documents. The effect of this was to shorten Plaintiff's rescission period from three days to a few hours. For good measure, Porterfield instructed Plaintiff that, should she decide to rescind in the few hours remaining on November 30, the rescission notice should be faxed to First Choice.

8.  Not only were the closing documents backdated, but they contained terms worse than those contained in the Initial Loan. The Refinance interest rate was 9.814%, higher than the 8.540% of the Initial Loan. The Refinance instituted a prepayment penalty where the Initial Loan provided for no such penalty. Instead of fixed payments for 5 years, Porterfield presented to Plaintiff for signature the 20 Fixed TIL that Plaintiff had protested to Garnett. Plaintiff refused to sign the 20 Fixed TIL. Instead, she signed the 60 Fixed TIL previously provided by Garnett. After the closing, Porterfield gave Plaintiff a copy of the closing documents, except that the 60 Fixed TIL was not among the documents Plaintiff received from Porterfield.

9.  After closing on November 30, 2006, Plaintiff again became concerned that the terms of the Refinance were no improvement over her existing loan and were in fact worse. She attempted to cancel the Refinance pursuant to the instructions she had been given by Porterfield for doing so. Specifically, she faxed to First Choice a notice of rescission prior to midnight on the night of November 30.

10. On December 1, 2006, Plaintiff was barraged by phone calls from Garnett, demanding that Plaintiff cancel her rescission which, based upon false and deceptive reassurances from Garnett that the Refinance benefited the Plaintiff, Plaintiff attempted to do.

11. In the wake of the events just described, Plaintiff requested a copy of the 60 Fixed TIL she signed at the November 30 closing. Instead, she received a copy of the 20 Fixed TIL to which her purported signature had been forged. Exhibit 1.

12. The Defendants, and each of them, combined and conspired to force Plaintiff into a loan that she didn't need and that, in fact, did not benefit her financially. The only

beneficiaries of the Refinance were the Defendants, who profited through fees and ancillary charges. So eager were the defendants to secure such fees and ancillary charges, and to protect themselves after the Refinance, that one of them, as of yet unidentified, forged the Plaintiff's signature on the 20 Fixed TIL.

## CAUSES OF ACTION

## COUNT I - TRUTH IN LENDING VIOLATIONS

13. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 as if fully set forth herein.

14. American Home owed Plaintiff a duty under 15 U.S.C. 1638(b)(2) and 12 U.S.C 226.?? to provide her with a good faith estimate of closing costs, but failed to do so.

15. American Home owed Plaintiff a duty under 15 U.S.C. 1635(a) and 12 C.F.R. 226.23 to provide her with a three day rescission period in which to cancel the Refinance, but failed to do so.

16. American Home owed Plaintiff a duty under 15 U.S.C. 163?? and 12 C.F.R. 226.34 not to refinance the Property within a year of the Initial Closing unless such refinance was in Plaintiff's interest, and by providing her with terms in the Refinance that were worse than those in the Initial Closing, American Home breached that duty.

17. Upon receipt of Plaintiff's desire to rescind the Refinance, American Home owed Plaintiff a duty under 15 U.S.C. 1635(b) and 12 C.F.R. 226.23 to return to Plaintiff all money collected from her at closing of the Refinance to terminate its the security interest in the Property, but failed to do so.

    WHEREFORE, Plaintiff seeks

## COUNT II - COMMON LAW CIVIL CONSPIRACY

18. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 as if fully set forth herein.

19. Defendants conspired to deprive Plaintiff of her rights under the Truth in Lending Act. By demanding that she execute backdated documents, they conspired to reduce her statutory three day rescission period to a few hours. By presenting her with the 60 Fixed TIL prior to closing, they conspired to induce her to close and by substituting the 20 Fixed TIL at closing, they conspired to obtain her signature on a document that would cover their false and misleading inducement. By giving her inaccurate instructions for exercising her rescission right, they sought to prevent her from rescinding. By forging her signature to the 20 Fixed TIL, they sought to cover their conspiracy and to create false documentation to conceal their misrepresentations.

20. Plaintiff has suffered damages as a direct result of the conspiracy alleged. As a result of the Refinance, she paid off the Initial Loan and substituted therefore an inferior loan with less favorable terms. She incurred $5810 in needless closing costs in the Refinance. After 20 months, the monthly payments on the Refinance will escalate from the current $1342.20, which she can afford, to $3854.69, an amount she cannot afford and which the defendants knew she could not afford. The payments required under the Initial Loan totaled $1,516,592.46, whereas the payments required under the Refinance total $1,800,007.47, for and additional cost to Plaintiff of $283,415.01.

WHEREFORE, Plaintiff seeks compensatory damages against defendants in the sum of $289,225.01, punitive damages in an amount to be determined, and interest from November 30, 2006.

### COUNT III – INTENTIONAL TORT - FORGERY

21.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 as if fully set forth herein.

22.     By forging her name to the 20 Fixed TIL, a defendant yet to be identified committed the intentional tort of forgery.

23.     As a result of the forgery, Plaintiff was damaged.

WHEREFORE, Plaintiff seeks compensatory damages against defendants in the sum of $50,000, punitive damages in an amount to be determined, and interest from November 30, 2006.

Breach of fiduciary duty?

DECLARATORY JUDGMENT ACT (to declare Am Home lien unenforceable)(see Tluchak letter of Feb. 14, 2007.)

VIOLATION of RESPA (as to Aggressive Mortgage)(failure to furnish good faith estimate of closing costs)(note that GFE dated 11/9/06 shows 1st Mortgage payment of $2554.11 whereas 1/9/07 statement shows 1342.20)(see also p. 36 of 46 page fax from IRON MOUNTAIN that is GFE dated 11/9/06 showing 1st Mortgage payment of $1327.11, so we have two GFEs dated 11/9/06 which show different 1st mortgage payments).

- 8 -

                                     Cutisha T. Cauthorne

                                     By Counsel

_____
John C. Warley (VSB #09066)
The Law Office of John C. Warley
1320 Central Park Blvd., Suite 227
Fredericksburg, VA. 22401
540-907-4663
540-907-4665 (f)

Counsel for Plaintiff