## EXHIBIT A

## SERVICING TRANSFER GUIDELINES

## SERVICING TRANSFER GUIDELINES

On a date (the "Transfer Date") that is designated by Credit Suisse First Boston Mortgage Capital LLC ("CS Mortgage"), but that is no later than April 30, 2008, the Debtors shall transfer to CS Mortgage or its designee, all right, title, and interest in the servicing of the mortgage loans that are the subject of the Mortgage Repurchase Agreement (the "Mortgage Loans") and related Custodial Agreement, dated September 13, 2006 among CS Mortgage, the Debtors, and Deutsche Bank National Trust Company (the "Custodian"), including, without limitation, all rights to collect fees and other payments made on account of the Mortgage Loans and the Records and Asset Files relating thereto (the "Servicing Rights"); provided, however, that CS Mortgage will provide the Debtors with not less than two business days' notice of the Transfer Date; and provided further, however, that the Transfer Date will be at least five days following the date on which the Court enters an order approving this Global Settlement Agreement (the "Approval Date"). The Debtors shall transfer the Servicing Rights in accordance with these Servicing Transfer Guidelines. These Servicing Transfer Guidelines may be modified only upon the written consent of both Parties. The Debtors, CS Mortgage and its designee, if any, shall cooperate in connection with the transfer of the Servicing Rights and shall use good-faith efforts to cause the transfer in an efficient nondisruptive manner.

Capitalized terms used, but not otherwise defined herein, shall have the respective definitions assigned to such terms in the Global Settlement Agreement, dated as of November 16, 2007 (the "Global Settlement Agreement"), between and among CS Mortgage, Credit Suisse Securities (USA) LLC ("CS Securities"), and DLJ Mortgage Capital Inc. ("DLJ" and, collectively with CS Mortgage and CS Securities, "CSFB") and American Home Mortgage Investment Corporation ("AHMIC"), and each of its direct and indirect subsidiaries as debtors and debtors in possession (collectively with AHMIC, the "Debtors"). All obligations under these Servicing Transfer Guidelines are qualified by section 1.2 of the Global Settlement Agreement which provides that the Debtors shall use good-faith efforts in connection with the transfer of the Servicing Rights. In the event there is a conflict between the terms of these Servicing Transfer Guidelines and the Global Settlement Agreement, the Global Settlement Agreement controls.

The Debtors shall use good-faith efforts to ensure the Mortgage Files related to the Mortgage Loans are intact and to resolve any document exceptions to the Mortgage Files. CSFB reserves the right to assert as a defense that any deficiency that is incurable with respect to a Mortgage File may impact the ultimate value of the underlying Mortgage Loan.

On or prior to the date of execution of the Global Settlement Agreement, the Debtors shall provide CS Mortgage and its designee all information and documents within their possession concerning the three Mortgage Loans that are construction loans (the "Construction Loans"), including, without limitation, all collector comments related to the Construction Loans.

Upon the terms and subject to the conditions of the Global Settlement Agreement, the Debtors shall, on the Transfer Date, transfer and assign to CS Mortgage or its designee, and CS Mortgage or its designee shall, on the Transfer Date, assume from Debtors, all right, title, interest and obligation of the Debtors in and to: (i) the Servicing Rights, and all rights related thereto, (ii) the Advances, (iii) the Custodial Funds and Escrow Funds, (iv) the Mortgage Files in the Debtors' possession, (v) the exclusive right to enter into arrangements that generate, or to otherwise receive, ancillary income with respect to the Mortgage Loans, and (vi) the right to collect and retain prepayment charges.

The Servicing Rights that are being transferred by the Debtors on the Transfer Date shall be transferred and assigned to and accepted by CS Mortgage or its designee on an "as is", "where is" and "with all faults" conditions, free of any warranties or representations whatsoever, whether express or implied, except as expressly set forth in the Global Settlement Agreement. On the Transfer Date, the Debtors shall deliver to CS Mortgage or its designee such other instruments of assignment, transfer and conveyance, and do such other acts as are reasonably necessary to effectuate the transfer, assignment and delivery to CS Mortgage or its designee of the right, title and interest of the Debtors in and to the Servicing Rights.

No later than one business day after the Debtors and CSFB execute the Global Settlement Agreement, the Debtors shall provide CS Mortgage or its designee with a preliminary tape(s) containing the information necessary to transfer the Servicing Rights on the Transfer Date and within one (1) business day after the Transfer Date, the Debtors shall deliver to CS Mortgage or its designee the final data tapes.

In addition to the forgoing, on a date to be agreed upon by the Parties, the Debtors shall provide CS Mortgage or its designee with the data, information and materials reasonably necessary for CS Mortgage or CS Mortgage's designee to service the Mortgage Loans, including, but not limited to, all Mortgage Files or electronic images pertaining to the Mortgage Loans and the related servicing records in Debtors' possession, mortgage notes (including e-Notes), riders, loan modification documents, and servicing files, but excluding the final data tapes. The Debtors shall provide CS Mortgage or its designee with prior written notice of the carrier, shipping arrangements, and insurance arrangements with respect to the delivery of the Mortgage Files.

On or before the Transfer Date, the Debtors shall appoint CS Mortgage or its designee to be their true and lawful agent and attorney-in-fact, in the form of the Special and Limited Power of Attorney attached hereto as Exhibit A, with respect to each Mortgage Loan in the Debtors' name, place, and stead:

(i) to effectuate the transfer of servicing to CS Mortgage or its designee;

(ii) to complete (to the extent necessary) and to cause to be submitted for filing or recording in the appropriate public filing or recording offices all assignments

of mortgage, deeds of trust, or similar documents, assignments, or reassignments of rents, leases and profits, in each case in favor of CS Mortgage or its designee, and all Form UCC-2 or UCC-3 assignments of financing statements and all other comparable instruments or documents with respect to the Mortgage Loans, and to evidence, provide notice of and perfect such assignments and conveyances in favor of CS Mortgage or its designee in the public records of the appropriate filing and recording offices;

(iii)   to file or record in the appropriate public filing or recording offices all other Mortgage Loan documents to be recorded which have not been submitted for filing or recordation by the Debtors on or before the date hereof or which have been so submitted but are subsequently lost or returned unrecorded or unfiled as a result of actual or purported defects therein, in order to evidence, provide notice of and perfect such documents in the public record of the appropriate filing and recording offices; and

(iv)   to do and perform all acts in connection with the servicing, administration and management of the Mortgage Loans, including but not limited to:

(1)   execution and delivery of customary consents or waivers and other instruments and documents;

(2)   consent to transfers of any Mortgage Loans and assumptions of the Mortgage Notes and related Mortgages;

(3)   collect any Insurance Proceeds and other Liquidation Proceeds;

(4)   effectuate foreclosure or other conversions of the ownership of the mortgage property securing any Mortgage Loan;

(5)   to sign any necessary assignments of Mortgage or endorsements to give fully the lienholder rights over from the Debtors to CS Mortgage or its designee;

(6)   execute and deliver any and all instruments of satisfaction or cancellation or of partial or full release or discharge and all other comparable instruments, with respect to the Mortgage Loans, and with respect to the Mortgaged Properties; and

(7)   execute all documents customarily and reasonably necessary and appropriate for the transfer post-foreclosure of the previously Mortgaged Properties to third parties, and then to collect the sales proceeds from that transfer.

The Debtors shall be responsible for preparing and sending goodbye letters related to the Mortgage Loans at least ten (10) days after to the Transfer Date. CSFB or its designee shall send hello letters no later than fifteen (15) days after the Transfer Date.

Notwithstanding the foregoing, if a Mortgage Loan already is registered with the Mortgage Electronic Registration System ("MERS"), which enables members to execute and deliver an Assignment of Mortgage Instrument with respect to a Mortgage Loan to MERS for recording in the office of the appropriate local jurisdiction, Debtors shall follow the requirement of MERS to reflect in the records of MERS the transfer of the ownership of the Mortgage Loans and of the Servicing Rights from the Debtors to CSFB or its designee. The Debtors shall continue the transmission of recording information of the Mortgage Instruments to MERS after the Transfer Date, until all such recording information is received and transmitted to MERS and CSFB, which in any event and under all circumstances shall be completed not later than three (3) days after the Transfer Date. The Debtors' shall bear all costs associated with the registration of a Mortgage Loan with MERS, to the extent done before the Transfer Date, including, without limitation, the related preparation and recordation of an assignment of Mortgage Instrument, and all costs associated with the reflection of the transfer of Servicing to the Mortgage Loan in the records of MERS. For each Mortgage Loan registered with MERS, the Debtors shall provide CS Mortgage or its designee with the MERS mortgage loan identification number in an electronic format acceptable to the parties.

Within 15 days of the Transfer Date, the Debtors shall provide CS Mortgage or its designee with an electronic file of the Mortgage Loans which shall set forth whether each Mortgage Loan is or is not covered by a Tax Service Contract as of one (1) business day prior to the Transfer Date (the "Cut-off Date").

Within one (1) business day of the Transfer Date, the Debtors shall provide CS Mortgage or its designee with an electronic file of the related Mortgage Loans which shall set forth whether each Mortgage Loan is or is not covered by fully transferable life-of-loan flood contract as of the Cut-off Date. Within five (5) business days following the Transfer Date, the Debtors shall assign and transfer, in an electronic file format, the transferable life-of-loan flood certifications and contract information to CS Mortgage or its designee.

The Debtors shall take all such actions as may be necessary to transfer or record all right, title and interest in the Mortgage Loans to CS Mortgage or its designee and the Servicing Rights with respect to the Mortgage Loans to CS Mortgage or its designee, consisting of:

(i)  assigning nominal title to the related Mortgage Loans to CS Mortgage or its designee;

(ii)  preparing or causing to be prepared all prior intervening assignments of mortgage instruments, and recording such assignments of mortgage instruments; and

(iii)  endorsing or causing to be endorsed the related Mortgage Notes.

The Debtors shall bear all actual out-of-pocket costs associated with the preparation and recording of the assignments of mortgage instruments described in (i) and (ii) above, and the preparation of the endorsements described in (iii) above.

The Debtors shall forward to the Custodian the original recorded assignments of mortgage instruments upon return from the recording office on a weekly basis and forward to CS Mortgage or its designee a report of all original recorded assignments delivered to Custodian.

The Debtors shall (i) provide or assist CS Mortgage or its designee in the procurement or execution of such affidavits, land court orders or other documents as it currently uses to evidence CS Mortgage's ownership of such Servicing Rights, and (ii) prepare such endorsements or prepare and record such intervening assignments of mortgage instruments as may be required to reflect of record CS Mortgage or its designee's ownership of such Servicing Rights in any jurisdiction or recording office that refuses to accept the documents described in clause (i) as proof of CS Mortgage or its designee's ownership of such Servicing Rights, and the Debtors shall in each case bear all actual out-of-pocket costs associated therewith.

The Debtors shall be responsible for ensuring all documents comprising the Mortgage File in the possession of the Debtors, related to the Mortgage Loans and that are not already held by the Custodian, are transferred to CS Mortgage or its designee in a timely manner including, but not limited to, Mortgage Notes (including e-Notes), riders, loan modification documents and servicing files.

On or prior to the Transfer Date, the Debtors and CS Mortgage or its designee shall execute and deliver the documents required to be executed and delivered under the Global Settlement Agreement, in form and substance reasonably satisfactory to CS Mortgage or its designee and the Debtors, and shall execute and deliver such other instruments or documents as CS Mortgage or its designee and the Debtors shall reasonably determine are necessary or appropriate to effectuate or evidence the transactions contemplated hereby.

The Debtors shall be responsible for all transfer and recording fees, out-of-pocket costs and expenses actually incurred with respect to the transfer of Servicing Rights, the review, inspection, and delivery of Mortgage Loan Files and related documents, the preparation and mailing of goodbye letters.

## EXHIBIT A

## SPECIAL AND LIMITED POWER OF ATTORNEY AND COVENANTS

## from AMERICAN HOME MORTGAGE SERVICING, INC.
## in favor of SUCESSOR SERVICER

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, the Global Settlement Agreement dated as of November __, 2007 (the "Global Settlement Agreement") between and among Credit Suisse First Boston Mortgage Capital LLC ("CS Mortgage"), Credit Suisse Securities (USA) LLC ("CS Securities"), and DLJ Mortgage Capital, Inc. ("DLJ" and, collectively with CS Mortgage and CS Securities, "CSFB") and American Home Mortgage Investment Corporation ("AHMIC"), and each of its direct and indirect subsidiaries as debtors and debtors in possession (collectively with AHMIC, the "Debtors") provides for the transfer of the Servicing Rights and the servicing functions by Debtor to CSFB or its designee (each, a "Successor Servicer") for certain Mortgage Loans (the "Mortgage Loans"). Initially capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Master Repurchase Agreement, between CSFB and the Debtors, dated as of September 13, 2006.

NOW, THEREFORE, **American Home Mortgage Servicing, Inc.**, as the transferor of the related servicing functions for the Mortgage Loans under the Global Settlement Agreement (hereinafter referred to as "Principal"), acting through its duly authorized officer _____, as the _____ of the Principal, DOES HEREBY:

1. constitute and appoint each **Authorized Officer** (which are referred to collectively as "Attorneys" and individually as "Attorney") of **the Successor Servicer**, as the successor servicer, individually, as a true and lawful attorney for Principal (but only for the purposes expressly set forth herein);

2. for and in the name and stead of Principal, as the seller and prior servicer, and in connection with the servicing of the Mortgage Loans, authorize and empower each such Attorney to:

(a) endorse, negotiate, deliver and deposit any checks, draft, money order or other form of payment instrument payable to Principal and tendered as payment on the Mortgage Loans;

(b) endorse, execute, seal, acknowledge, deliver and file (including, without limitation, the recording or filing with the appropriate public officials) the following:

(1) any documents or instruments (i) to endorse any promissory note for the Mortgage Loan to the Investor or its successor in interest, (ii) to assign any Mortgage or any other security instrument for the Mortgage Loan to CSFB as servicer, (iii) to maintain and protect the validity, priority or value of the lien and security interest created by any Mortgage on the related Mortgaged Property and any other security instrument for the Mortgage Loan, including without limitation the notification of any property tax authorities and any casualty or mortgage insurers with respect to such Mortgaged Property and the Mortgage Loan, (iv) to represent the interests of and act as the lender of the Mortgage Loan in connection with the default, collection, liquidation or foreclosure of any such Mortgage Loan and the related Mortgaged Property, the bankruptcy of the related borrower or any lawsuit or legal proceeding involving the related Mortgaged Property, and (v) to appoint any successor or substitute trustee under a Mortgage that consists of a deed of trust;

(2) any modifications, waivers, assumptions, amendments or agreements for subordination or forbearance of any Mortgage, promissory note or any other documents related to the Mortgage Loan; and

(3) any instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments with respect to any Mortgage or the related Mortgaged Property for the Mortgage Loan; and

(c) institute and pursue foreclosure proceedings or obtain a deed in lieu of foreclosure so as to effect ownership of any Mortgaged Property in the name or on behalf of the Investor and manage and liquidate any resulting REO; and

(d) to take any and all actions reasonably necessary to effectuate the proper servicing of the Mortgage Loans.

3. further authorize and empower each such Attorney, for and in the name and stead of Principal, to (a) file and record this Special and Limited Power of Attorney with the appropriate public officials; and (b) appoint and name such substitute attorneys with all authority and powers hereunder, provided that such substitute attorneys are duly elected and qualified officers of successor servicer.

Principal covenants and grants to the Attorneys full authority and power to execute any documents and instruments and to do and perform any act that is necessary or appropriate to effect the intent and purposes of the foregoing authority and powers hereunder. Principal further ratifies and confirms each act that the Attorneys shall lawfully do or cause to be done in accordance with the authority and powers granted hereunder. <u>The foregoing authority and powers shall not be deemed invalidated solely by reason of any action or omission of any Attorneys appointed hereunder.</u> Principal covenants and agrees that, from time to time at the request of Successor Servicer, Principal shall execute instruments confirming all of the foregoing authority and powers of any Attorneys. Without actual notice to the contrary, any person may rely on authorities and powers granted hereunder and any actions of the Attorneys taken pursuant to such authorities and

powers as the valid, binding and enforceable actions of Principal and that all conditions hereunder to the exercise of such actions by the Attorneys have been completed and are satisfied.

This power of attorney is irrevocable by Principal.

IN WITNESS WHEREOF, Principal has caused this instrument to be signed by its duly authorized officer as of November __, 2007.

**American Home Mortgage Servicing, Inc.**, as Principal

By:_____

Name:_____

Title:_____

_____
Witness

## ACKNOWLEDGMENT

STATE OF _____ )
                          ) ss:
COUNTY OF _____ )

On the ___ day of _____, 2007, before me personally appeared the above-named, _____, on behalf of **American Home Mortgage Servicing, Inc.**, to me known and known by me to be the _____ of said corporation, and acknowledged said instrument so executed to be his free act and deed in said capacity and the free act and deed of said corporation.

My commission expires:

_____
Notary Public