IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| -------------------------------------------------------------- x | Chapter 11 |
| In re: | : |
| | : Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : Jointly Administered |
| | : |
| Debtors. | : **Hearing Date: December 21, 2007 at 10:00 a.m.** |
| | : **Objection Deadline: December 14, 2007 at 4:00 p.m.** |
| -------------------------------------------------------------- x | |

**FIFTH MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105, 365 AND 554 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 6006 AND 6007, AUTHORIZING THE
DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND TO ABANDON CERTAIN FURNITURE, FIXTURES, AND EQUIPMENT**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby

move the Court (the "Motion"), pursuant to sections 105(a), 365(a), and 554(a) of title 11 of the

United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 6006 and 6007

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing

the Debtors to: (i) reject certain unexpired nonresidential real property leases identified on

Exhibit A (collectively, the "Rejected Leases"); (ii) reject certain executory contracts identified

on Exhibit B (collectively, the "Rejected Contracts"); and (iii) abandon any property remaining

at the premises subject to the Rejected Leases or the Rejected Contracts including, but not

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp.
("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558);
American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

limited to, furniture, fixtures and equipment (collectively, the "FF&E").[2]  In support of this

Motion, the Debtors respectfully represent as follows:

## STATUS OF CASE AND JURISDICTION

1.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have

continued in possession of their properties and have continued to operate their businesses as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      An official committee of unsecured creditors (the "Committee") was

appointed on August 14, 2007.  No trustee or examiner has been appointed.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates

for the relief requested herein are sections 105(a), 365(a) and 554(a) of the Bankruptcy Code,

along with Bankruptcy Rules 6006, 6007, and 9014.

## BACKGROUND OF DEBTORS

4.      Prior to the filing of these bankruptcy cases, AHM's business primarily

entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage

loans and mortgage-backed securities resulting from the securitizations of residential mortgage

loans.  AHM also invested in securitized mortgage loans originated by others and originated and

sold mortgage loans to institutional investors.  AHM offered an array of mortgage products and

primarily made loans to borrowers with good credit profiles.  Most of its portfolio consisted of

securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

---

[2]  The Debtors submit that they have been and will continue to take steps to collect and preserve any information
located in the premises subject to the Rejected Leases or the Rejected Contracts consistent with SEC guidelines and
applicable consumer privacy laws.

066585.1001

5.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion.  As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia.  Certain of the Debtors originated mortgages through a network of loan origination offices.  In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents.  AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006, and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

6.      A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing.  The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes.  As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.  AHM continues to conduct its servicing business, which constitutes a valuable asset of the Debtors' estates.

## EVENTS LEADING TO THE CHAPTER 11 FILING

7.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages.  These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

8.      The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities.  The surge in mortgage delinquencies for

3

subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

9.      In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders -- the financial institutions that provide short term credit facilities needed to originate and purchase loans -- began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

10.      On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

11.      The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business.  As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.  The Debtors now employ approximately 700 persons who are absolutely essential to the Debtors' continued operations, although that number is expected to decline as various wind-up tasks are completed, the retail branches are closed and the Debtors' remaining assets are sold.

12.      In the wake of these events, the Debtors, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions.  Additionally, the

4

Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans owned by the Debtors, residual securities in securitization trusts and scratch and dent loans, to financial and strategic investors.

13.     Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELIEF REQUESTED

14.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to sections 105(a), 365(a), and 554(a) of the Bankruptcy Code, authorizing the:  (i) rejection of the Rejected Leases; (ii) rejection of the Rejected Contracts; and (iii) abandonment of the FF&E remaining at the premises subject to the Rejected Leases and the Rejected Contracts.  Further, the Debtors request that rejection of the Rejected Leases and the Rejected Contracts be effective retroactively as of November 30, 2007.

## BASIS FOR RELIEF REQUESTED

### A.     Rejection of the Rejected Leases and the Rejected Contracts

15.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease."  11 U.S.C. § 365(a); see also University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992).  The Court may approve a debtor's rejection of an executory contract or unexpired lease if such rejection is made in the exercise of such debtor's sound business judgment, and if such rejection benefits its estate.  See, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); NLRB v. Bildisco & Bildisco (In re

Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); In re Patterson, 119 B.R.

59 (E.D. Pa. 1990). See, also, In re Federated Dep't. Stores, Inc., 131 B.R. 808, 811 (S.D. Ohio

1991) ("Courts traditionally have applied the business judgment standard in determining whether

to authorize the rejection of executory contracts and unexpired leases"); Westbury Real Estate

Ventures, Inc. v. Bradlees, Inc. (In re Bradlees, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y.

1996) ("[u]nder the business judgment test, . . . [a court should approve a debtor's proposed

rejection] if the debtor can demonstrate that rejection will benefit the estate").  It is enough if a

debtor determines in its business judgment that a benefit will be realized. Sharon Steel Corp.,

872 F.2d at 39 (citing Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-

Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)).  The business judgment

standard requires that the Court approve the debtor's business decision unless that judgment is

the product of bad faith, whim or caprice.  Lubrizol Enter., Inc. v. Richmond Metal Finishers,

756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

       16.     As an integral component of the Debtors' efforts to maximize value for

their estates and creditors by, among other things, eliminating unnecessary operating costs, the

Debtors have determined, in the exercise of their business judgment, that it is in the best interest

of their estates and creditors to avoid the accrual of any further obligations under the Rejected

Leases and the Rejected Contracts.  The economic burden associated with performing under

these agreements, the wind-down of the Debtors' operations, and the lack of interest for potential

assignment provide sufficient bases to justify the relief sought herein.

       17.     Moreover, the Debtors have reviewed the Rejected Leases and the

Rejected Contracts and determined that they hold no material economic value to the Debtors or

their estates and are not essential to the conduct of the Debtors' bankruptcy cases.  The rejection

6

of the Rejected Leases and the Rejected Contracts will eliminate the Debtors' obligation to perform, and the accrual of any further administrative expense obligations under the Rejected Leases and the Rejected Contracts.[3]  Accordingly, the Debtors submit that the rejection of the Rejected Leases and the Rejected Contracts is within their sound business judgment and is in the best interest of the Debtors, their estates, creditors and other parties-in-interest.

**B.**      **Retroactive Rejection**

18.      The Debtors request that this Court approve the rejection of the Rejected Leases and Rejected Contracts effective as of November 30, 2007.  Bankruptcy courts are empowered to grant retroactive rejection of executory contracts and unexpired leases under sections 105(a) and 365(a) of the Bankruptcy Code.  See e.g., Thinking Machines Corp. v. Mellon Fin. Serv. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995) (recognizing that bankruptcy courts are courts of equity that may enter orders authorizing retroactive rejection); In re Amber's Stores, Inc., 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (same).

19.      Courts in this jurisdiction have previously considered the question of retroactive rejection of unexpired leases and executory contracts.  See, e.g., In re Namco Cybertainment, Inc., Case No. 98-173 (Bankr. D. Del. 1998) (Walsh, J.).  In In re Namco Cybertainment, the Court permitted retroactive rejection on the condition that (a) the premises (and the keys thereto) were surrendered with an unequivocal statement of abandonment to the landlord; (b) the motion was filed and served on the landlord; (c) the official committee has

---

[3]   The Debtors do not concede that any of the Rejected Leases or Rejected Contracts are, in fact, unexpired or executory.  Indeed, the Debtors contend that certain of the Rejected Leases and Rejected Contracts included on Exhibit A and Exhibit B have either expired or been terminated prior to the Petition Date.  Nonetheless, out of an abundance of caution, such agreements are included in the relief requested herein.  The Debtors also reserve their rights to argue that any claim for damages arising from the rejection of the Rejected Leases or Rejected Contracts is limited to the remedies available under any applicable termination provision of such Rejected Lease or Rejected Contract, or that any such claim is an obligation of a third party, and not that of the Debtors.

7

consented to the relief requested in the motion; and (d) the debtor acknowledged that it would not have the right to withdraw the motion.

20.     The Debtors will have effectively satisfied the criteria for retroactive rejection of the Rejected Leases and the Rejected Contracts by or before November 30, 2007. The Debtors will send letters (the "Rejection Letters") to each of the known counterparties to the Rejected Leases and the Rejected Contracts unequivocally surrendering any property subject to such agreements, in a manner to be received by the counterparties prior to November 30, 2007. Second, the filing and service of this Motion further informs each of the counterparties to the Rejected Leases and the Rejected Contracts that the Debtors are unequivocally surrendering any property subject to the Rejected Leases and the Rejected Contracts as of November 30, 2007. To the extent that any keys were in the possession of the Debtors, such keys have previously been surrendered or are being enclosed with the respective Rejection Letters. Finally, the Debtors hereby acknowledge that they will not have the right to withdraw the Motion.

**C.     Abandonment of Certain FF&E**

21.     In the event that there is any remaining FF&E left at the premises subject to the Rejected Leases or the Rejected Contracts after November 30, 2007, the Debtors request authority to abandon such FF&E. Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554. See In re New Century TRS Holdings, Case No. 07-10416 (Bankr. D. Del. April 24, 2007) (Carey, J.).

22.     The Debtors propose to abandon the FF&E at the premises subject to the Rejected Leases and the Rejected Contracts because it would be more cost-effective to do so than to transport, store and sell the FF&E, which has little value. As a result, the decision to

reject the Rejected Leases and the Rejected Contracts and abandon the FF&E located in the premises subject to the Rejected Leases and the Rejected Contracts is supported by the Debtors' sound business judgment and is in the best interests of their estates, creditors, and other parties-in-interest. For the reasons set forth above, the Debtors seek authorization, pursuant to sections 105(a), 365(a), and 554(a) of the Bankruptcy Code, to reject the Rejected Leases and the Rejected Contracts and abandon any FF&E remaining at the premises of such Rejected Leases and Rejected Contracts as of November 30, 2007.

## NOTICE

23.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the counterparties to the Rejected Leases and the Rejected Contracts; (v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

066585.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto authorizing: (i) the rejection of the Rejected Leases and the Rejected Contracts as of November 30, 2007; (ii) authorizing the abandonment of the FF&E; and (iii) granting such other and further relief as this Court deems just and proper.

Dated:    Wilmington, Delaware
          November 28, 2007

                                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                    _____
                                    James L. Patton, Jr. (No. 2202)
                                    Joel A. Waite (No. 2925)
                                    Pauline K. Morgan (No. 3650)
                                    Sean M. Beach (No. 4070)
                                    Matthew B. Lunn (No. 4119)
                                    Kara Hammond Coyle (No. 4410)
                                    Kenneth J. Enos (No. 4544)
                                    The Brandywine Building
                                    1000 West Street, 17th Floor
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 571-6600
                                    Facsimile: (302) 571-1253

                                    Counsel for Debtors and Debtors in Possession

066585.1001

## EXHIBIT A

### Real Property Leases to be Rejected

| LEASED PREMISES | LANDLORD | EFFECTIVE DATE OF REJECTION |
|---|---|---|
| Suite 100<br>Primera Four<br>300 Primera Boulevard<br>Lake Mary, Florida 32746 | Sun Life Assurance Company of Canada<br>c/o Crescent Resources LLC<br>300 Primera Blvd., Suite 140<br>Lake Mary, FL 32746 | November 30, 2007 |
| 1 Centerview Drive<br>Rockingham Building at<br>Meadowview Crossing<br>Suite 101<br>Greensboro, NC 27407 | Sequoia Investments XIV, LLC<br>P.O. Box 1028<br>Eureka, CA 95502-1028 | November 30, 2007 |
| 800 Virginia Avenue<br>Suite 48<br>Fort Pierce, FL 34947 | Turner Realty Enterprise, Inc. d/b/a<br>ReMax Coastal Realty<br>800 Virginia Avenue, Suite 48<br>Fort Pierce, FL 34947 | November 30, 2007 |
| 3600 O'Donnell Street<br>Baltimore, MD 21224 | Baltimore Home Team, LLC<br>3600 O'Donnell Street<br>Baltimore, MD 21224 | November 30, 2007 |
| 6801 Falls of Neuse Road<br>Suite 102<br>Raleigh, NC 27615 | PPSF, LLC<br>c/o Bill Owens<br>9131 Anson Way<br>Raleigh, NC 27615 | November 30, 2007 |
| 4700 Rowlett Road<br>Rowlett, TX 75088 | Bobby Roan<br>4700 Rowlett Road<br>Rowlett, TX 75088 | November 30, 2007 |

## EXHIBIT B

### Executory Contracts to be Rejected

| DESCRIPTION OF CONTRACT | COUNTERPARTY TO CONTRACT | EFFECTIVE DATE OF REJECTION |
|---|---|---|
| Storage Unit 168<br>West Market Self Storage<br>5019 West Market Street<br>Greensboro, NC 27407<br><br>(storage agreement) | West Market Self Storage<br>c/o Rob and Evelyn Zimmerman<br>5019 West Market Street<br>Greensboro, NC 27407 | November 30, 2007 |
| Storage Unit 581<br>Eagle Self Storage, Inc.<br>4101 Highway 93 South<br>Missoula, MT 59804<br><br>(storage agreement) | Eagle Self Storage, Inc.<br>c/o Robert P. McCue<br>P.O. Box 18185<br>4101 Highway 93 South<br>Missoula, MT 59808 | November 30, 2007 |
| Storage Unit A023<br>20292 Cooks Bay Drive<br>Lake Forest, CA 92630<br><br>(storage agreement) | Public Storage, Inc.<br>c/o Jerri Stacy<br>20292 Cooks Bay Drive<br>Lake Forest, CA 92630 | November 30, 2007 |
| Unit #5036<br>401 East 4th Street<br>Bridgeport, PA 19405<br><br>(storage agreement) | Locker Room Storage Inc.<br>401 East 4th Street<br>Bridgeport, PA 19405 | November 30, 2007 |
| 17300 Henderson Pass MSA<br>Suite 100<br>San Antonio, TX 78232<br><br>(marketing and service agreement) | Farm Bureau Bank FSB<br>17300 Henderson Pass<br>San Antonio, TX 78232 | November 30, 2007 |
| Corporate Services Commercial Account Agreement between American Express Travel Related Services Company, Inc. and American Home Mortgage Corp.<br><br>(corporate credit card agreement) | American Express Company<br>Corporate Services Operations<br>AESC-P<br>20022 North 31st Avenue<br>Mail Code AZ-08-03-11<br>Phoenix, AZ 85027 | November 30, 2007 |
| Service Agreement for Konica Minolta 7020 copier formerly located at 6767 North Wickham Road, Suite 211, Melbourne, FL | Ameritek Office Solutions<br>4250 St. Johns Parkway<br>Sanford, FL 32771 | November 30, 2007 |

| | | |
|---|---|---|
| 32940<br><br>(copier service agreement) | | |
| Maintenance Agreement for Ricoh 2035E copier formerly located at 818 West Riverside Avenue, Spokane, WA<br><br>(copier service agreement) | Associated Business Systems<br>7440 SW Bonita Road<br>Portland, OR 97224-8028 | November 30, 2007 |
| Maintenance Agreement for Ricoh 2045eSP copier formerly located at 6255 Sheridan Drive, Williamsville, NY<br><br>(copier service agreement) | Brian Parisi Copier Systems<br>4915 Genesee Street<br>Cheetowaga, NY 14255 | November 30, 2007 |
| Maintenance Agreement for Sharp SD-2260 copier formerly located at 910 Lakeridge Way SW, Olympia, WA 98502<br><br>(copier service agreement) | Capital Business Machines<br>P.O. Box 1456<br>Olympia, WA 98507 | November 30, 2007 |
| Software Support Agreement for Minolta A551 copier formerly located at 261 Brownfield Road, Douglas WY<br><br>(copier support agreement) | Capital Business Systems<br>P.O. Box 508<br>Cheyenne, WY 82003-0508 | November 30, 2007 |
| Maintenance Agreement for Toshiba T120 fax machine formerly located at 1885 North Kolb Road, Tuscon, AZ 85715<br><br>(fax machine service agreement) | CB Document Solutions<br>4320 East Cotton Center Boulevard<br>Suite 100<br>Phoenix, AZ 85040-8852 | November 30, 2007 |
| Service Agreement for Toshiba DP125 fax machine (serial number 03080028) formerly located at 17744 Skypark Circle, Irvine, CA<br><br>(fax machine service agreement) | Coast to Coast<br>8 Vanderbilt<br>P. O. Box 57077<br>Irvine, CA 92619-7077 | November 30, 2007 |
| Service Agreement for Toshiba DP125 fax machine (serial number 03080033) formerly located at 17744 Skypark Circle, Irvine, CA<br><br>(fax machine service agreement) | Coast to Coast<br>8 Vanderbilt<br>P. O. Box 57077<br>Irvine, CA 92619-7077 | November 30, 2007 |
| Service Agreement for Toshiba | Coast to Coast | November 30, 2007 |

| | | |
|---|---|---|
| DP85F fax machine (serial number 03080053) formerly located at 17744 Skypark Circle, Irvine, CA<br><br>(fax machine service agreement) | 8 Vanderbilt<br>P. O. Box 57077<br>Irvine, CA 92619-7077 | |
| Service Agreement for Toshiba DP85F fax machine (serial number 03080058A) formerly located at 17744 Skypark Circle, Irvine, CA<br><br>(fax machine service agreement) | Coast to Coast<br>8 Vanderbilt<br>P. O. Box 57077<br>Irvine, CA 92619-7077 | November 30, 2007 |
| Service Agreement for Toshiba DP85F fax machine (serial number 03080237) formerly located at 17744 Skypark Circle, Irvine, CA<br><br>(fax machine service agreement) | Coast to Coast<br>8 Vanderbilt<br>P. O. Box 57077<br>Irvine, CA 92619-7077 | November 30, 2007 |
| Service Agreement for Toshiba DP125 fax machine (serial number 04100013) formerly located at 17744 Skypark Circle, Irvine, CA<br><br>(fax machine service agreement) | Coast to Coast<br>8 Vanderbilt<br>P. O. Box 57077<br>Irvine, CA 92619-7077 | November 30, 2007 |
| Service Agreement for Ricoh 450 copier formerly located at 200 North Main Street, Graham, NC 27253<br><br>(copier service agreement) | Coeco Office Systems<br>P.O. Box 2425<br>Greenville, NC 27836 | November 30, 2007 |
| Hardware Maintenance Agreement for hardware formerly located at 3000 East Coliseum Boulevard, Fort Wayne, IN<br><br>(hardware maintenance agreement) | Current Mechanical<br>2120 East Washington Boulevard<br>Suite A<br>Fort Wayne, IN 46803-1357 | November 30, 2007 |
| Maintenance Agreement for Ricoh copiers<br><br>(copier service agreement) | DocuSystems<br>1000 Highway 50 East<br>Myrtle Beach, SC 29577 | November 30, 2007 |
| Maintenance Agreement for Ricoh AF3045 copier formerly located at 800 East High Street, Lexington, KY<br><br>(copier service agreement) | Duplicator Sales and Service Inc.<br>831 East Broadway<br>Louisville, KY 40204 | November 30, 2007 |

| | | |
|---|---|---|
| Maintenance Agreement for Ricoh A2045eSP copier formerly located at 55 Westlake Road, Hardy, VA<br><br>(copier service agreement) | Electronic Systems, Inc.<br>369 Edwin Drive<br>Virginia Beach, VA 23462-4522 | November 30, 2007 |
| Maintenance Agreement for I2200 copier formerly located at 760 Foxpointe Drive, Sycamore, IL<br><br>(copier service agreement) | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |
| Maintenance Agreement for H500N printer formerly located at 1245 East Diehl Road, Naperville, IL 60563<br><br>(printer service agreement) | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |
| Maintenance Agreement for F3175 fax machine (serial number UYR58827) formerly located at 1245 East Diehl Road, Naperville, IL 60563<br><br>(fax machine service agreement) | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |
| Maintenance Agreement for F3170 fax machine formerly located at 1245 East Diehl Road, Naperville, IL 60563<br><br>(fax machine service agreement) | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |
| Maintenance Agreement for F1100 fax machine (serial number UKL07360) formerly located at 1245 East Diehl Road, Naperville, IL 60563<br><br>(fax machine service agreement) | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |
| Maintenance Agreement for I8500 copier formerly located at 760 Foxpointe Drive, Sycamore, IL<br><br>(copier service agreement) | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |
| Maintenance Agreement for F1100 fax machine (serial number UKL07343) formerly located at 760 Foxpointe Drive, Sycamore, IL | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |

| (fax machine service agreement) | | |
|---|---|---|
| Maintenance Agreement for F3175 fax machine (serial number UYR51276) formerly located at 1245 East Diehl Road, Naperville, IL 60563<br><br>(fax machine service agreement) | Gordon Fleisch Company, Inc.<br>P.O. Box 992<br>Madison, WI 53701-0992 | November 30, 2007 |
| Maintenance Agreement for Ricoh AF 3045SPF copier formerly located at 1275 North University Drive, Coral Springs, FL<br><br>(copier service agreement) | Halsey & Griffith Office Solutions<br>1170 Northwest 163rd Drive<br>Miami, FL 33169 | November 30, 2007 |
| Maintenance Agreement for Ricoh AF 3035SP copier formerly located at 12230 Forest Hill Boulevard, Wellington, FL<br><br>(copier service agreement) | Halsey & Griffith Office Solutions<br>1170 Northwest 163rd Drive<br>Miami, FL 33169 | November 30, 2007 |
| Maintenance Agreement for mailing equipment (serial number FAH 9651)<br><br>(mailing equipment service agreement) | Innovative Mailing & Shipping Systems, Inc.<br>415 Oser Avenue<br>Suite K<br>Happauge, NY 11788 | November 30, 2007 |
| Maintenance Agreement for mailing equipment formerly located at 75 Rowland Way, Novato, CA<br><br>(mailing equipment service agreement) | International Mailing Equipment<br>336 North 12th Street<br>Sacramento, CA 95814 | November 30, 2007 |
| Maintenance Agreement for Xerox T120F fax machine formerly located at 406 7th Street, Bay City, MI 48706<br><br>(fax machine service agreement) | Michigan Office Solutions<br>2859 Walkent Drive NW<br>Grand Rapids, MI 49514-0587 | November 30, 2007 |
| Maintenance Agreement for 20072 copier system formerly located at 13024 Hesperia Road, Victorville, CA<br><br>(copier service agreement) | Office Works<br>15401 Anacapa Road<br>Victorville, CA 92392 | November 30, 2007 |

| | | |
|---|---|---|
| Maintenance Agreement for copiers formerly located at 3975 Fair Ridge Drive, Suite 315N, Fairfax, VA 22033<br><br>(copier service agreement) | Offix<br>10222 Battleview Parkway<br>Manassas, VA 20109 | November 30, 2007 |
| Maintenance Agreement for Ricoh 4420L fax machine formerly located at 1060 Maitland Center Commons, Maitland, FL<br><br>(fax machine service agreement) | Saxon Business Systems<br>P.O. Box 4908<br>Miami Lakes, FL 33014 | November 30, 2007 |
| Service Agreement for 1375 East Woodfield Drive, Schaumburg, IL 60173<br><br>(office setup service agreement) | U.S. Bank<br>CM-9690<br>St. Paul, MN 55170-9690 | November 30, 2007 |
| Maintenance Agreement for Ricoh AF2035E copier formerly located at 1799 Michelle Lane, Greenwood, IN<br><br>(copier service agreement) | Van Ausdall & Farrar<br>P.O. Box 664250<br>Indianapolis, IN 46266 | November 30, 2007 |
| Maintenance Agreement for Sharp AR810 copier formerly located at 4100 RCA Boulevard, Palm Beach Gardens, FL | Zeno Office Solutions<br>P.O. Box 23687<br>Tampa, FL 33623 | November 30, 2007 |