## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

AMERICAN HOME MORTGAGE
HOLDINGS, INC., a Delaware corporation, *et al.*,

Debtors.

Chapter 11

Case No. 07-1 1047 (CSS)

(Jointly Administered)

## INITIAL OMNIBUS CURE CLAIM OF DEUTSCHE BANK NATIONAL TRUST CO. AS TRUST ADMINISTRATOR AND/OR INDENTURE TRUSTEE AGAINST CURE ESCROW

1.    *Name of Claimant and Name/Address Where Notices Should be Sent.* In accordance with paragraph 33 of the Sale Approval Order,[1] this omnibus cure claim (the *"Initial Cure Claim"*) is made by Deutsche Bank National Trust Co. as the Trust Administrator and/or Indenture Trustee (*"DBNTC"*) with respect to 22 mortgaged backed securities trusts, containing approximately $25 billion in current principal amount of mortgage loans originated and serviced by Debtor entities; (b) 8 mortgage backed securities trusts, containing several billion dollars in current principal amount of mortgage loans, a substantial portion of which were or were originated and are serviced by Debtor entities and (c) 7 mortgage backed securities trusts containing several billion dollars in current principal amount of mortgage loans, a substantial portion of which were originated by Debtor entities, but which are serviced by third parties (collectively, the "DBNTC Trusts"). The undersigned is duly authorized and empowered to make this Initial Cure Claim on behalf of DBNTC.

---

[1] Unless otherwise indicated, capitalized terms not defined herein shall have the same meaning ascribed to such terms in the Order Pursuant to Sections 105, 363, 364, *365,* and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief (the *"Sale Approval Order")* (Docket No. 1711).

10817746.2

- 2 -

DBNTC, files this Cure Notice for the period ending October 31, 2007 in the aggregate amount of $750,528.34, subject to the reservation of rights set forth below as follows:

a.      Indemnification for the fees and expense of outside counsel through October 31, 2007 in connection with the bankruptcy proceeding and the sale of the servicing business to the Purchaser the amount of $468,397.98, consisting of $459,897.98 for Nixon Peabody LLP and $8500.00 for Pepper Hamilton LLP;

b.      $54,390.00 for indemnification for the extraordinary fees and expenses of DBNTC in connection with default administration through October 31, 2007; and

c.      $227,740.36 for fees and expenses for which Financial Guaranty Insurance Company has claimed reimbursement from the DBNTC Trust known as American Home Mortgage Investment Trust 2005-1 with respect to breaches by Debtor American Home Mortgage Servicing, Inc. (the "FGIC Fee Claim"). A copy of the letter asserting the FGIC Fee Claim is attached hereto as Exhibit A.

All court orders and notices with respect to this Initial Cure Claim should be sent to:

Deutsche National Bank Trust Co.
Attn: Brendan Meyer
60 Wall Street
New York, NY 10005
(212) 250-2921

**With copies to:**

John Rosenthal, Esq.
Nixon Peabody LLP
Two Embarcadero Center
San Francisco, CA 94111-3996
(415) 984-8319

And

Dennis Drebsky, Esq.
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
Phone: (212) 940-3000

10817746.2

- 3 -

## Procedural Background

On August 6, 2007 (the "*Petition Date* "), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

On August 6, 2007, the Debtors filed their Emergency Motion of the Debtors for Orders:  (A)(I) Approving Sales Procedures; (II) Scheduling A Hearing to Consider Sale of Certain Assets Used in the Debtor's Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Fee and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (the "*Motion*"). The Court approved the Motion on August 7, 2007, establishing certain auction and sales procedures with respect to the loan servicing business, establishing August 27, 2007 as the date upon which assumption notices were required to be filed.

On or about August 27, 2007, the Debtors filed their Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations (the "*Assumption Notice*"). The Debtors proposed a cure amount of "$0" for each of the servicing agreements listed on the schedule attached to the Assumption Notice.

The Debtors filed a Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if Any, (the "*Modified Assumption Notice* ") which added additional contracts to the list of those contracts to be assumed and established an extended objection deadline to September 20, 2007.

On September 20, 2007 DBNTC filed its Objection and Reservation of Rights to the

10817746.2

- 4 -

Motion, Assumption Notice and Sale of the Loan Servicing Business. (Doc. No. 832).

Based upon resolutions reached with the Debtors, including but not limited to the establishment of a Cure Escrow in the amount of $10,000,000 to cover any cure costs as set forth in the Sale Approval Order entered on the docket on October 30, 2007, DBNTC withdrew its objections to the sale. Pursuant to Paragraph 33 of the Sale Approval Order, DBNTC has the right to assert a claim against the Cure Escrow for amounts owed under the terms of its Servicing Agreements with respect to the servicing business.

2.    *Basis for Claim.* Under the terms of the relevant servicing agreements and related fee letter agreements, the Debtors have agreed to pay the fees and expenses of the Trustee in connection with the transfer of the servicing of the mortgage loans or in connection with the performance of their duties in connection with the administration of the DBNTC Trusts. In addition, DBNTC is entitled to be indemnified in connection with any and all claims, losses and costs incurred by it as a result of the actions of the servicer. DBNTC has retained the law firms of Nixon Peabody LLP and Pepper Hamilton LLP to perform legal services on its behalf in connection with these bankruptcy proceedings and the transfer of the servicing business to a third party. The legal fees and expenses of outside counsel relate to extraordinary default management and sale of the Debtors' loan servicing business. As of October 31, 2007 these fees and expenses total $407,483.90. These fees and expenses will be updated through the Initial Close within thirty days of the receipt of the notice thereof. In addition, DBNTC has incurred internal costs for extraordinary default management including, but not limited to, additional staffing and staff overtime in the amount of $54,390.00. Finally, the FGIC has asserted the FGIC Fee Claim against American Home Mortgage Investment Trust 2005-1 in the amount of $227,740.36 through October 31, 2007. DBNTC estimates the transfer costs through the Final Close will be $250,000, exclusive of any incremental additions to the FGIC Fee Claim.

10817746.2

- 5 -

3.      *Reservation of Certain Rights.* The Debtors have represented in their cure notices that no defaults exist under the terms of the Servicing Agreements. As such DBNTC reserves its rights to further amend this claim in the event it becomes aware of the following types of breaches:

a. Litigation. The servicer's indemnification obligations include an indemnity for any losses suffered as a result of any litigation brought against a trust or the Master Servicer as a result of, *inter alia,* any unfair debt collection practices employed by AHM as servicer. While DBNTC is not aware of any litigation seeking to hold it or any trust liable (or seeking to set off against any note held by a trust), DBNTC notes that (a) the Debtors Statement of Financial Affairs reveal more than 1 00 actions brought by or against the Debtors as of the date of the petition, and (b) the servicer regularly institutes foreclosure proceedings which theoretically may give rise to counterclaims (whether or not meritorious) against the servicer and/or the trusts, trustees or master servicer. Such DBNTC cannot be certain that these are no litigation matters which might give rise to an indemnity claim.

b. Assignments. The servicer's indemnification obligations would include an indemnity as a result of the failure of the servicer to adequately reflect the transfer of the relevant mortgage loan on either the MERS system or the appropriate recording office. DBNTC currently does not have sufficient information to determine whether the Purchaser or Seller will complete or have completed all necessary filings and therefore it reserves its right to assert further claims to the extent of any damage caused by any such failure.

c. General Breaches of Servicing Standards. The Indemnity Claim would also cover damages arising from the Debtors' breach of their obligations under the Servicing Agreements. The Debtors have represented that there are no such claims by asserting zero as the cure amount, and DBNTC is currently unaware of any such breaches. Thus DBNTC reserves the right to supplement or amend this claim if such representation proves incorrect.

d. Incorporation by Reference of Master Servicers' and Insurers' Claims. Wells Fargo Bank, N.A., Citimortgage, Inc., and GMAC Mortgage each act as master servicers and/or back-up servicers for certain of the DBNTC Trusts (the "Master/Backup Servicers") and, in such capacities, act as agents of the DBNTC Trusts. In addition, Financial Guaranty Insurance Company, Assured Guaranty and CIFG each act as certificate insurers with respect to certain certificates issued by certain of the DBNTC Trusts (the "Certificate Insurers"). DBNTC hereby incorporates by reference any and all cure claims asserted by the Master/Backup Servicers and the Certificate Insurers to the extent that such cure claims assert, describe or include liabilities, losses, damages, claims, costs or expenses

10817746.2

that have been or may be suffered by the DBNTC Trusts or that have been or may become reimburseable or indemnifiable to any of the Master/Backup Servicers or Certificate Insurers by the DBNTC Trusts (including, without limitation, the FGIC Fee Claim and any extraordinary fees and expenses any other Certificate Insurer or Master/Backup Servicer).

4.      DBNTC also asserts this Initial Cure Amount pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending The Debtors' Time to Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 (the "Cash Management Order") (Docket No. 66). The Cash Management Order provides that:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court, In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands one each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties.

Cash Management Order, page 6.

> The Cash Management Order further provides that:
> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provisions of the Securitization Documents in accordance with the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents.

Cash Management Order, pages 7-8.   DBNTC reserves the right to assert claims for indemnification and its monitoring efforts as administrative priority expense claims.

*Reservation of Rights to Document Claim.* DBNTC reserves its rights to support its claim

with any additional documents but believes all of the relevant agreements are in the control of the Debtors.

5.    *General Reservation of Rights and Claims.* DBNTC expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses and claims which it may have against the Debtors or any subsidiaries, creditors, management and other parties under the Bankruptcy Code, and the rights and benefits at law or in equity to all the rights and interests under and with respect to the Servicing Agreement.

6.    The filing of this Initial Cure Claim is not intended to be and should not be construed as (a) an election of a remedy, a waiver of any past, present or future defaults or events of default or a waiver or limitation of any rights, claims or causes of action of DBNTC; (b) a consent by DBNTC to the jurisdiction of this Court with respect to the subject matter of this claim, any objection or other proceeding commenced in this case or otherwise involving DBNTC; or (c) a waiver of any right to (i) move to withdraw reference, or otherwise challenge the jurisdiction of this Court, with respect to the subject matter of this claim, any objection or other proceeding commenced in this case against or otherwise involving DBNTC; or (ii) assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving DBNTC. DBNTC specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be

asserted against DBNTC by the Debtors, any of its successors and assigns or by any trustee for the Debtors' estate.

Dated: November 29, 2007

**Nixon Peabody LLP**

By: /s/ Dennis J. Drebsky
Dennis J. Drebsky
Attorney in Fact and Authorized Representative
437 Madison Avenue
New York, NY 10022
(212) 940- 3091

10817746.2

# FGIC

Financial Guaranty Insurance Company
125 Park Avenue
New York, NY 10017
T 212-312-3000
F 212-312-3093

November 12, 2007

Deutsche Bank National Trust Company
1761 East St. Andrew Place
Santa Ana, CA 92705
Attn: Trust Administration AH0501

Re:      American Home Mortgage Investment Trust 2005-1 (the "Trust")

Ladies and Gentlemen:

Reference is made to the Indenture and the Insurance Agreement set forth on Exhibit A hereto relating to the above referenced Trust (the "Transaction Documents"). Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms found in the Insurance Agreement.

On August 6, 2007, American Home Mortgage Servicing, Inc. ("AHM Servicing"), together with certain affiliates, filed Chapter 11 bankruptcy in the District of Delaware (the "Bankruptcy"). AHM Servicing acted as the HELOC Servicer for the Trust.

Financial Guaranty Insurance Company ("FGIC") acts as the Insurer for the Class IX-A Notes issued by the Trust. Section 3.07(a) of the Indenture provides that FGIC shall be reimbursed from the flow of funds for any amounts owed to FGIC pursuant to the Insurance Agreement, including but not limited to fees and expenses of counsel incurred by FGIC in connection with the Bankruptcy. Under Section 3.03(c) of the Insurance Agreement, FGIC is entitled to be paid:

> [A]ny and all charges, fees, costs and expenses that [FGIC] may reasonably pay or incur, including reasonable attorneys' and accountants' fees and expenses, in connection with (i) the enforcement, defense or preservation of any rights in respect of any of the Operative Documents, including defending, monitoring or participating in any litigation of proceeding (including any insolvency proceeding in respect of any Transaction participant of any affiliate thereof) relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such a party) or the Transaction . . . .

Section 10.16 of the Amended and Restated Trust Agreement similarly provides that all such enforcement costs are reimbursable to FGIC. Under Section 3.06 of the Insurance Agreement, the Trust is jointly and severally liable for all amounts due and payable to FGIC.

4816-8599-1937.4

*Exhibit "A"*

# FGIC

Section 3.05 of the Insurance Agreement provides that presentment by FGIC of a voucher or other evidence of payment is deemed prima facie evidence of the propriety thereof and the liability therefor to FGIC.

FGIC has incurred fees, costs and expenses identified in Exhibit B hereto in the aggregate amount of $227,740.36 for the period August 1, 2007 to October 31, 2007 and such amounts are properly reimbursable under the Transaction Documents (the foregoing, the "Reimbursement Amount"). FGIC hereby requests reimbursement of the Reimbursement Amount as set forth above.

Please promptly remit the Reimbursement Amount to FGIC via wire transfer pursuant to the remittance instructions below:

**Wire Transfer Remit To:**

| | |
|---|---|
| Correspondent Bank: | JP Morgan Chase Bank, New York |
| Fed ABA No: | 021000021 |
| Beneficiary A/C No: | 904951839 |
| Beneficiary A/C Name: | FGIC Concentration |
| REF: | American Home Bankruptcy |

Please contact the undersigned at (212) 312-3366 with any questions or additional requirements.

FINANCIAL GUARANTY INSURANCE COMPANY, as Insurer

By: _Stephen Holliday_
Stephen Holliday

4816-8599-1937.4

## AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al.*
### Service List

**Via U.S. Mail:**

James L. Patton, Jr., Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Bldg., 17th Floor
1000 West Street
Wilmington, DE 19899

Joseph M. McMahon, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207 - Lockbox #35
Wilmington, DE 19801

Bonnie Glantz Fatell, Esquire
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

Laurie S. Silverstein, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
P.O. Box 951
Wilmington, DE 19899

Victoria Counihan, Esquire
Greenberg Traurig
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Alan Horn, Esquire
General Counsel
American Home Mortgage Holdings, Inc.
538 Broadhollow Road
Melville, NY 11747

Mark Indelicato, Esquire
Hahn & Hessen LLP
488 Madison Avenue, 14th and 15th Floor
New York, NY 10022

Margot B. Schonholtz, Esquire
Scott D. Talmadge, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3596

Erica Ryland, Esquire
Corinne Ball, Esquire
Jones Day
222 East 41st Street
New York, NY 10017

Jeffrey M. Levine
Milestone Advisors, LLC
1775 Eye Street, NW, Suite 800
Washington, DC 20006

553707 1 11/21/07