# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case No. 07-11047-CSS |
| **HOLDINGS, INC., et. al.,** | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: December 14, 2007, at 4:00 p.m. (ET) |
| | ) | Hearing Date: December 21, 2007, at 10:00 a.m. (ET) |

## MOTION OF FINANCIAL GUARANTY INSURANCE COMPANY
## FOR RELIEF FROM THE AUTOMATIC STAY

Financial Guaranty Insurance Company ("FGIC") hereby requests this Court to modify the automatic stay to permit the termination and transition of the rights and responsibilities of each of American Home Mortgage Servicing, Inc. ("AHM Servicing") and American Home Mortgage Acceptance, Inc. ("AHM Acceptance") as servicers and subservicer under the HELOC Servicing Agreements (as defined below). In support of this Motion, FGIC respectfully represents as follows:

### I.    JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.    SUMMARY OF RELIEF REQUESTED

1.    FGIC is entitled to the relief herein because, among other reasons, (i) after the Debtors sell their Servicing Business to AH Mortgage Acquisition Co., Inc. (the "Purchaser"), the Debtors will have neither a source of funding nor the operational ability to service the HELOC Mortgage Loans (as defined below); (ii) there is now insufficient time for the Debtors to request any

assumption or other transfer of the HELOC Servicing Agreements by separate motion while protecting the rights and interests of FGIC; and (iii) continuing defaults exist under the HELOC Servicing Agreements and the servicing quality of AHM Servicing and AHM Acceptance has deteriorated and continues to deteriorate, to the direct economic detriment of FGIC and the non-debtor parties to the HELOC Servicing Agreements.

2.      FGIC has previously asserted, in its Complaint in adversary proceeding No. 07-51725 (the "Complaint") (D.I. 1447) and in an Objection (D.I. 718) and Supplemental Objection (D.I. 1036) to the Debtors' Sale Motion (as defined below), that, among other things, the servicing rights of AHM Servicing and AHM Acceptance were properly terminated before the filing of the Debtors' bankruptcy case and the Debtors cannot assume and assign or otherwise sell servicing rights respecting the HELOC Servicing Agreements. FGIC reserves all rights respecting the Complaint and the matters in the Objection and Supplemental Objection. This Motion is without prejudice to the Complaint and the matters in the Objection and Supplemental Objection, including FGIC's position that the servicing rights of AHM Servicing and AHM Acceptance were properly terminated before the filing of the Debtors' bankruptcy case.

3.      FGIC asserts cause for relief in this Motion that is independent of, and may be granted independent of, the relief requested in the Complaint.

## III.    FACTUAL BACKGROUND

*FGIC Securitizations*

4.      On August 6, 2007 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of title 11 of the United States Code.

5.      Prior to filing bankruptcy, AHM Servicing and AHM Acceptance were the contract servicers of certain home equity line of credit mortgage loans ("HELOC Mortgage

2

Loans") under the following HELOC Servicing Agreements (collectively, the "HELOC Servicing Agreements"):

(i)     HELOC Servicing Agreement dated as of March 23, 2005 among AHM Servicing, GMAC Mortgage, LLC as successor by merger to GMAC Mortgage Corporation ("GMAC"), as back-up servicer, American Home Mortgage Trust 2005-1 (the "2005-1 Trust"), as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as seller;

(ii) HELOC Servicing Agreement dated as of June 22, 2005 among AHM Servicing, as servicer, GMAC, as back-up servicer, American Home Mortgage Investment Trust 2005-2 (the "2005-2 Trust"), as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as seller;

(iii) HELOC Servicing Agreement dated as of October 7, 2005 among AHM Acceptance, as servicer, GMAC, as back-up servicer, American Home Mortgage Investment Trust 2005-4A (the "2005-4A Trust" and, together with the 2005-1 Trust and 2005-2 Trust, the "Trusts"), as issuer, U.S. Bank National Association, as the Indenture Trustee and AHM Acceptance, as seller; and

(iv)     HELOC Subservicing Agreement dated as of October 2, 2005 among the 2005-A4 Trust, AHM Servicing, AHM Acceptance and U.S. Bank National Association, as Indenture Trustee.

6.     The HELOC Servicing Agreements were delivered in the following three securitization transactions: American Home Mortgage Investment Trust 2005-1, American Home Mortgage Investment Trust 2005-2 and American Home Mortgage Investment Trust 2005-4A (collectively, the "FGIC Securitizations").

7.    The Trusts established in the FGIC Securitizations acquired and own HELOC Mortgage Loans and issued securities that are "backed" by, or that rely directly on, the HELOC Mortgage Loans and related collections owned by the Trusts as the source of payment. FGIC insured certain of the securities issued by the Trusts. FGIC, as insurer of certain securities in the FGIC Securitizations, relies directly on the HELOC Mortgage Loans for payment on such securities and will be harmed if collections on the HELOC Mortgage Loans are insufficient or interrupted. FGIC is an express third party beneficiary under the HELOC Servicing Agreements and holds rights against AHM Servicing and AHM Acceptance under the HELOC Servicing Agreements.[1]    Deutsche Bank National Trust Company and U.S. Bank National Association were appointed and are serving as the Indenture Trustees under the respective Indentures related to the FGIC Securitizations.    GMAC was the back-up servicer under the following separate back-up servicing agreements: (i) HELOC Back-Up Servicing Agreement dated as of March 23, 2005 among GMAC, as back-up servicer, American Home Mortgage Trust 2005-1, as issuer, and Deutsche Bank National Trust Company, as the Indenture Trustee, (ii) HELOC Back-Up Servicing Agreement dated as of June 22, 2005 among GMAC, as back-up servicer, American Home Mortgage Trust 2005-2, as issuer, and Deutsche Bank National Trust Company, as the Indenture Trustee and (iii) HELOC Back-Up Servicing Agreement dated as of October 7, 2005 among GMAC, as back-up servicer, American Home Mortgage Trust 2005-4A, as issuer, and U.S. Bank National Association, as the Indenture Trustee.    Wells Fargo Bank, National Association is serving as securities administrator in the FGIC Securitizations.

---

[1]    Additionally, the Insurance and Indemnity Agreements that relate to the HELOC Servicing Agreements also contain the acknowledgement of AHM Servicing and AHM Acceptance, in Section 2.02(k) and (l) thereof, that FGIC is a third party beneficiary of the HELOC Servicing Agreements. The Insurance and Indemnity Agreements also incorporate the representations, warranties and covenants of AHM Servicing and AHM Acceptance made in the HELOC Servicing Agreements and contain covenants for the benefit of FGIC that the HELOC Mortgage Loans would be serviced by AHM Servicing and AHM Acceptance in compliance with the HELOC Servicing Agreements.

8.      As asserted more fully in the Complaint, on August 2, 2007 GMAC, at the instruction of FGIC as required by the HELOC Servicing Agreements and pursuant to FGIC's and GMAC's rights under the HELOC Servicing Agreements, properly terminated the servicing rights of AHM Servicing and AHM Acceptance under each HELOC Servicing Agreement. The HELOC Servicing Agreements expressly provide in Section 6.01 thereof that upon the termination of AHM Servicing and AHM Acceptance as servicers, "all authority and power of the HELOC Servicer . . . shall pass to and be vested in [GMAC], pursuant to and under this Section 6.01." AHM Servicing and AHM Acceptance were replaced as servicer of the HELOC Mortgage Loans upon their termination with GMAC by the terms of the HELOC Servicing Agreements and the GMAC back-up servicing agreements and without any further action.[2] However, as noted above, the relief requested in this Motion may be granted independent of the Complaint.

*Debtors' Sale of the Mortgage Loan Servicing Business*

9.      On the Petition Date, the Debtors filed a motion (the "Sale Motion") seeking approval to sell the Debtors' Mortgage Loan Servicing Business. The Debtors also filed a form of asset purchase agreement. The Debtors subsequently proposed the Purchaser as the sole bidder for the Servicing Business and filed a separate asset purchase agreement (the "APA") among American Home Mortgage Investment Corp., American Home Mortgage Corp., AHM Servicing and the Purchaser, together with several exhibits and schedules thereto. Upon information and belief, bids for less than all of the Debtors' proposed servicing agreements were received but rejected by the Debtors.

---

[2]      FGIC is permitted, as more fully set forth in Sections 6.01 and 6.02 of the HELOC Servicing Agreements, to direct GMAC to appoint a successor HELOC Servicer other than GMAC. FGIC has not at this time directed the appointment of any successor HELOC Servicer other than GMAC.

10.     The Debtors filed notices, on August 27, 2007, September 10, 2007 and September 26, 2007, purporting to include the HELOC Servicing Agreements among the contracts sought to be assumed and assigned by the Debtors. The proposed APA also included the HELOC Servicing Agreements in its schedules as contracts to be assumed and assigned to the Purchaser. FGIC filed an Objection and a Supplemental Objection to the Sale Motion, objecting to the Sale Motion for the reasons set forth in such objections, including the pre-petition termination of the servicing rights under the HELOC Servicing Agreements referenced above.

11.     FGIC sought in good faith to negotiate a resolution of the Debtors' Sale Motion, the Objection and the Supplemental Objection. However, on the morning of the sale hearing, after requiring FGIC to review and evaluate the Sale Motion, two forms of asset purchase agreements, numerous related pleadings and notices and to participate in several depositions in Delaware and New York, the Debtors' filed a second notice of contracts to be excluded from the sale (the "Second Notice of Excluded Contracts") (D.I. 1546), excluding the HELOC Servicing Agreements in the FGIC Securitizations and additional HELOC servicing agreements from the Sale Motion and the proposed sale to the Purchaser. The APA was also amended by a First Amendment to the APA to exclude the HELOC Servicing Agreements in the FGIC Securitizations, and the additional HELOC servicing agreements, from the assets to be assigned and sold to the Purchaser. The Second Notice of Excluded Contracts specified that the Debtors may seek to transfer the HELOC Servicing Agreements by separate motion.

12.     After a week-long hearing on the Sale Motion, from October 15, 2007 to October 19, 2007, the Court entered an order on October 30, 2007 approving the sale of the Debtors' Servicing Business to the Purchaser. The sale to the Purchaser will close in two

steps—an "initial" or economic closing, which occurred on November 16, 2007, and a "final" or legal closing, which may occur in as soon as "a few months".[3]

*Purchaser's DIP Financing*

13.     Upon the initial closing under the APA, the Debtors' post-petition financing facility was replaced with a DIP facility provided by the Purchaser.  The Purchaser's DIP Facility was approved by the Court on an interim basis on November 14, 2007.  While the Purchaser's DIP facility provides financing to the Debtors to operate the Servicing Business pursuant to the APA during the interim period between the initial and final closings under the APA, the DIP facility does not provide financing to the Debtors for obligations under the HELOC Servicing Agreements.

## IV.     CAUSE FOR RELIEF FROM THE AUTOMATIC STAY

14.     By this Motion, FGIC seeks entry of an order modifying the automatic stay arising under Section 362 of the Bankruptcy Code to allow FGIC and the non-debtor parties to the HELOC Servicing Agreements to take any and all actions necessary to terminate and transfer AHM Servicing's and AHM Acceptance's rights as servicer and subservicer under the HELOC Servicing Agreements.

15.     The automatic stay may be modified pursuant to Section 362(d) of the Bankruptcy Code if "cause" exists.  11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code and is determined by courts in this district on a case by case basis.  In re Rexene Prods. Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citation omitted); see also In re Baldino, 116 F.3d 87, 90 (3d Cir. 1997) (stating that courts consider cause based upon "the totality of the circumstances in each particular case").  The legislative history of Section 362(d)

---

[3]     *See* Debtors' Motion for Interim and Final Orders Authorizing Certain Debtors to Obtain Limited Recourse Postpetition Financing from Purchaser (D.I. 1967), at page 7 ("The Initial Closing (at which the Purchaser will pay the Purchase Price) is expected to occur in mid-November.  The Final Closing (at which legal title to the Purchased Assets will pass to the Purchaser), however, is not expected to occur for at least a few months.").

indicates that "cause may be established by a single factor." In re Rexene Prods. Co., 141 B.R. at 576.

16.    Courts have identified a number of factors to be considered in a determination of "cause." The following factors are especially applicable in this case and each weighs in favor of granting FGIC the relief requested herein:   (i) the harm to the movant resulting from continuation of the stay outweighs any harm that may be suffered by the debtor if the stay is lifted; (ii) the debtor's inability to assume a contract and (iii) the debtor's continued postpetition defaults under a contract cause material harm to the non-debtor party. See, e.g., Peerless Ins. Co. v. Rivera, 208 B.R. 313, 315–18 (D. R.I. 1997) (granting relief from stay when harm suffered by non-debtor outweighed harm to debtor); In re Tudor Motor Lodge Assoc., Ltd. P'ship, 102 B.R. 936, 956–57 (Bankr. D. N.J. 1989) (stay lifted to permit non-debtor to terminate license agreement due to debtor's postpetition defaults); In re Future Growth Enters., Inc., 61 B.R. 469, 472 (Bankr. E.D. Pa. 1986) (granting relief from stay where debtor could not cure and, thus, could not assume, a contract).

17.    Cause exists to grant FGIC relief from the automatic stay. As set forth below, the harm to FGIC and the non-debtor parties to the HELOC Servicing Agreements resulting from continuation of the stay outweighs any harm that may be suffered by the Debtors if the stay is lifted. Additionally, for the reasons set forth below, including the timing of the final sale under the APA and continuing defaults, AHM Servicing and AHM Acceptance are unable to assume and assign the HELOC Servicing Agreements. Last, the Debtors' deteriorating servicing quality under the HELOC Servicing Agreements results in continuing harm to FGIC and the non-debtor parties to the HELOC Servicing Agreements.

*FGIC is at Material Economic Risk after the Initial Closing under APA*

18.    The relief requested herein must be granted because FGIC and the non-debtor parties to the HELOC Servicing Agreements are at material economic risk after the initial closing under the APA, which occurred on November 16, 2007.  The Debtors do not have financing to support the servicing of the HELOC Mortgage Loans.

19.    The scope and purpose of the financing to be provided by the Purchaser to the Debtors under the Purchaser's DIP facility does not include AHM Servicing's or AHM Acceptance's costs and expenses associated with servicing the HELOC Mortgage Loans subject to the HELOC Servicing Agreements.  On the contrary, the Purchaser's DIP facility is designed to protect only the Purchaser's interest in the Servicing Business and servicing contracts purchased under the APA, which do not include the HELOC Servicing Agreements.  Moreover, the permitted use of funds under the Purchaser's DIP facility is expressly limited to costs and expenses to operate the Servicing Business purchased under the APA which, as the "Servicing Business" is defined in the APA as amended by the First Amendment, does not include (and in fact appears to expressly exclude) the HELOC Servicing Agreements and expenses associated with servicing the HELOC Mortgage Loans.  Accordingly, after the initial closing under the APA AHM Servicing and AHM Acceptance lack financing to support the servicing of the HELOC Mortgage Loans under the HELOC Servicing Agreements.  A lack of financing to support servicing of the HELOC Mortgage Loans creates a substantial risk to FGIC and jeopardizes the ability of AHM Servicing and AHM Acceptance to service, and the quality of servicing of, the HELOC Mortgage Loans under the HELOC Servicing Agreements.

20.    In addition, while the Trusts purchased and own the HELOC Mortgage Loans, the Trusts did not assume the obligation to fund additional draws by borrowers under the

HELOC Mortgage Loans. Instead, at the closing of the FGIC Securitizations AHM Acceptance (or another American Home entity) retained, and still has, the obligation to fund additional draws by borrowers under the HELOC Mortgage Loans. However, the scope of the Purchaser's DIP facility does not provide AHM Acceptance with the ability to fund additional draws by borrowers under the HELOC Mortgage Loans. In fact, in the First Amendment to the APA the Debtors that are parties thereto expressly agreed (contrary to the interests of FGIC, non-debtor parties to the HELOC Servicing Agreements and borrowers under the HELOC Mortgage Loans) not to use proceeds of the Servicing Business subject to the APA to fund additional draws by borrowers under the HELOC Mortgage Loans.

21.     Accordingly, the Debtors have no financing to support servicing under the HELOC Servicing Agreements and FGIC and the non-debtor parties to the HELOC Servicing Agreements are at material economic risk. FGIC relies on competent servicing under the HELOC Servicing Agreements, including continued servicing advances, and uninterrupted collections on the HELOC Mortgage Loans. The harm to FGIC and the non-debtor parties to the HELOC Servicing Agreements in continuing the automatic stay outweighs any harm that may be suffered by the Debtors if the stay is lifted. In contrast, lifting the stay would not cause any significant harm to the Debtors. FGIC must be granted immediate relief from the automatic stay to protect its interests in the HELOC Mortgage Loans.

*FGIC is at Material Economic Risk upon the Final Closing under APA*

22.     The relief requested herein must be granted because FGIC and the non-debtor parties to the HELOC Servicing Agreements are also at material economic risk upon the final closing under the APA, which may occur in as soon as a few months. The Debtors will

have no servicing platform or employees to perform servicing under the HELOC Servicing Agreements after such closing.

23. As required by the APA, the Purchaser will pay the purchase price for the Servicing Business at the initial or "economic" closing, followed by an interim period during which the Debtors remain as servicers of the mortgage loans subject to the APA for the account of the Purchaser and the Purchaser applies for servicing licenses. Assuming completion of the Purchaser's licensing, a final or legal closing will occur pursuant to which legal title to the Debtors' servicing platform, i.e., the systems and infrastructure for the servicing business, and the vast majority of the Debtors' servicing agreements and related assets will pass to the Purchaser. The Purchaser will also retain all or substantially all of the Debtors' servicing management and staff. Thus, upon the final closing of the sale the Debtors will not have a servicing platform, servicing employees or the ability to service any mortgage loans, including the HELOC Mortgage Loans. As a result, FGIC and the other parties to the HELOC Servicing Agreements will be left with HELOC Mortgage Loans that are not being serviced. The certainty that AHM Servicing and AHM Acceptance will be incapable of servicing under the HELOC Servicing Agreements presents an absolutely unacceptable risk to FGIC and the non-debtor parties to the HELOC Servicing Agreements.

24. Moreover, because the timing of the final closing under the APA is not within the control of the Debtors, the closing date is uncertain and could occur within weeks or a few months. The final closing will be determined by the Purchaser's ability to obtain servicing licenses, and the Purchaser is very likely diligently pursuing such licenses. Based on the Debtors' motion to approve the Purchaser's DIP facility, the final closing may occur within a few months. The uncertainty, but apparent close proximity, of the timing of the final closing

11

under the APA presents an unwarranted risk to FGIC. FGIC, the Indenture Trustees and GMAC

need at least a few months "lead time" to accomplish the transition of servicing to GMAC. Such

transition of servicing will include, among other things, performance of the following obligations

by AHM Servicing and AHM Acceptance:

- transferring to GMAC all documents, files, records and data related to the HELOC Mortgage Loans;

- cooperating in connection with transition of servicing to GMAC, including sending "goodbye" letters to borrowers under the HELOC Mortgage Loans directing all future collections on the HELOC Mortgage Loans to GMAC;

- providing an accounting of all amounts collected; and

- paying the costs and expenses related to the transition of servicing to GMAC.

FGIC and the non-debtor parties to the HELOC Servicing Agreements should not be forced to

delay for an indeterminate amount of time the exercise of their rights in, and actions to protect

the value of, the HELOC Mortgage Loans. A servicing transition must occur while there are still

sufficient qualified personnel left at AHM Servicing and AHM Acceptance to carry out the

above-referenced obligations. FGIC must be granted relief now to begin the transition of

servicing to GMAC before the final closing under the APA (indeed, given the contemplated

timing of the final closing, there is a risk that such transition of servicing cannot be accomplished

in the time permitted).

25.    The timing of the final closing also does not permit the Debtors to, as

referenced in the Second Notice of Excluded Contracts, transfer the HELOC Servicing

Agreements by separate motion. Any such separate motion respecting the HELOC Servicing

Agreements would involve, at a minimum, additional notice and objection periods, and may also

involve an additional marketing and bidding process. Meanwhile, the Purchaser will acquire

ownership of the Debtors' servicing platform and retain the Debtors' servicing personnel, resulting in the inability of AHM Servicing and AHM Acceptance to service the HELOC Mortgage Loans and material harm to FGIC and the non-debtor parties to the HELOC Servicing Agreements.   Since the sale hearing, GMAC contacted the Debtors to determine whether the Debtors will attempt to assume and assign the HELOC Servicing Agreements.   Notwithstanding GMAC's attempts to obtain information from the Debtors respecting the HELOC Servicing Agreements, it is now approximately 45 days since the Debtors excluded the HELOC Servicing Agreements from the sale on October 15, 2007 (and 45 days closer to the final closing date under the APA) and the Debtors have not announced their proposed plan respecting the HELOC Servicing Agreements or transitioned servicing to GMAC.

26.     AHM Servicing and AHM Acceptance will also not be capable of engineering a subservicing arrangement for the HELOC Mortgage Loans with the Purchaser (or any other subservicer) after the final closing under the APA to allow Debtors additional time for a separate sale process.   After the final closing, the Debtors will be incapable not only of performing the HELOC Servicing Agreements, but also of satisfying any servicing defaults thereunder or related claims by FGIC and others.   Any such subservicing arrangement between the Debtors and the Purchaser (or any other subservicer) would leave FGIC and others with no recourse or remedy for any servicing defaults by the Debtors and thus should not be permitted. Also, AHM Servicing and AHM Acceptance will not qualify as a HELOC Servicer under the HELOC Servicing Agreements after the final closing under the APA (indeed, after the final closing the Debtors will be incapable of performing any oversight or monitoring of a subservicer, which is less than what is required by the HELOC Servicing Agreements).   Last, as this Court noted on the record during the October 25, 2007 hearing on the sale order relating to the Sale

13

Motion, in response to the Debtors' unsuccessful attempt to subservice the HELOC Mortgage Loans to the Purchaser after the final closing date, any subservicing arrangement by the Debtors would need to be presented by separate motion. The Debtors have failed to present any such motion, notwithstanding that the HELOC Servicing Agreements were excluded from the sale approximately 45 days ago. As set forth above, there is insufficient time for the Debtors to present a separate motion respecting the HELOC Servicing Agreements while still protecting the rights and interests of FGIC and others in the HELOC Mortgage Loans.

27.     Additionally, the Debtors have taken FGIC and the non-debtor parties to the HELOC Servicing Agreements through a lengthy and expensive motion and bidding process and required FGIC and others to, among other things, review and evaluate two forms of asset purchase agreements and two different methods of bidding procedures, file objections and participate in several depositions. The Debtors have already had their bite at the apple. The Debtors should not be permitted to conduct, and FGIC and the non-debtor parties to the HELOC Servicing Agreements should not be required to endure, yet another bidding and sale process.

28.     In sum, the time for the Debtors to address the HELOC Mortgage Loans was before the Debtors committed to sell their servicing platform and before the planned transition of the Debtors' servicing personnel. The landscape has now changed to the detriment of FGIC, based on the Debtors' own actions and sale, and FGIC should not be required to remain at substantial economic risk in this context. See, e.g., In re Tudor Motor Lodge, 102 B.R. at 956 (lifting the stay to avoid subjecting creditor to additional harm during an indefinite period of time); In re Consol. Indus. Corp., 330 B.R. 227, 233–35 (Bankr. N.D. Ind. 2001) (lifting the stay to minimize creditor's losses). The harm to FGIC and the non-debtor parties to the HELOC Servicing Agreements if the stay is not lifted outweighs any harm that may be suffered by the

Debtors if the stay is lifted. In contrast, lifting the stay would not cause any significant harm to the Debtors. Moreover, for the reasons set forth above, including the timing of the final sale under the APA, AHM Servicing and AHM Acceptance are unable to assume and assign the HELOC Servicing Agreements. FGIC must therefore be provided with immediate relief from the automatic stay to protect its interests in the HELOC Mortgage Loans and the HELOC Servicing Agreements.

*Continuing Defaults and Deteriorating Servicing*
*Quality Under the HELOC Servicing Agreements*

29.    The relief requested herein must also be granted because, even without considering the allegations in the Complaint, the Debtors' continuing defaults and deteriorating servicing under the HELOC Servicing Agreements result in harm to FGIC and the non-debtor parties to the HELOC Servicing Agreements.

30.    The performance of the HELOC Mortgage Loans under the HELOC Servicing Agreements has deteriorated significantly since the Debtors' bankruptcy filing. Cumulative losses on the HELOC Mortgage Loans have increased by .54% over the past three months, to over $23,602,057. Additionally, the 60-day delinquencies on the HELOC Mortgage Loans have also increased by 3.12% over the past three months.

31.    AHM Servicing and AHM Acceptance have not performed consistently with the requirements of the HELOC Servicing Agreements. Among other things, AHM Servicing and AHM Acceptance have since the commencement of their bankruptcy cases failed to deposit certain collections on the HELOC Mortgage Loans into the appropriate account as required by the HELOC Servicing Agreements, but instead have improperly diverted such collections to allow AHM Acceptance to fund new draws by borrowers under the HELOC Mortgage Loans. The HELOC Servicing Agreements require that where, as here, a "Rapid

Amortization Event" occurs under the Indentures in the FGIC Securitizations, all collections be applied to payment of principal and interest on the insured securities in the FGIC Securitizations. In September 2007 AHM Servicing and AHM Acceptance have instead diverted $1,093,692 in collections on the HELOC Mortgage Loans outside of the HELOC Servicing Agreements and away from holders of insured securities for their own benefit. Upon information and belief, similar amounts were diverted by AHM Servicing and AHM Acceptance in October and November, which would result in approximately $3,000,000 of collections on the HELOC Mortgage Loans thus far being diverted outside of the HELOC Servicing Agreements and away from holders of insured securities. The Debtors' improper disposition of collections is slowing the amortization of the outstanding securities to the detriment of FGIC.

32.    The deficient servicing of AHM Servicing and AHM Acceptance has imposed, and continues to impose, harm to FGIC and the Trusts. The deficient servicing increases FGIC's exposure on the insured securities in the FGIC Securitizations. Not only are FGIC and the Trusts deprived of the servicing they are entitled to under the HELOC Servicing Agreements, but the continued and improper efforts of AHM Servicing and AHM Acceptance to service under the HELOC Servicing Agreements based on the protection of the automatic stay prevents FGIC from properly transferring servicing under the HELOC Servicing Agreements to GMAC. Consequently, FGIC will be significantly harmed if the stay is continued. In contrast, lifting the stay would not cause any significant harm to the Debtors.

33.    Additionally, so long as AHM Servicing and AHM Acceptance are permitted to service the HELOC Mortgage Loans, AHM Acceptance will continue to avoid funding draws under the HELOC Mortgage Loans with its own funds (as opposed to the improper use of collections on the HELOC Mortgage Loans to fund such draws), FGIC's

16

exposure with respect to the insured securities in the FGIC Securitizations will continue to increase and FGIC's claims against AHM Servicing and AHM Acceptance will continue to increase.

34.     FGIC also believes, for reasons similar to those set forth in the motion for relief of CIFG Assurance North America, Inc. (D.I. 1955), which was recently filed in a similar context to this Motion, that there is no value for the estate in the HELOC Servicing Agreements in the FGIC Securitizations. The amount of the Debtors' defaults and the cure claims under the HELOC Servicing Agreements, including without limitation the approximate $3,000,000 of collections improperly diverted by the Debtors as discussed in Paragraph 31 above, would exceed the purchase price for servicing the HELOC Mortgage Loans under the HELOC Servicing Agreements. Given this fact and the Debtors' limited cash, it would not be an exercise of the Debtors' sound business judgment to transfer the HELOC Servicing Agreements and a purchaser of servicing under the HELOC Servicing Agreements would very likely not be available in any event. These conclusions are also supported by the previous failed attempt of the Debtors to transfer the HELOC Servicing Agreements. The Debtors have conceded, in the Debtors' Limited Response to the motion for relief of CIFG Assurance North America, Inc. (D.I. 2143), that they do not object to an orderly and prompt transition of their rights and obligations as servicer under the related HELOC servicing agreement to GMAC as the back-up servicer. The Court should order a similar result respecting the HELOC Servicing Agreements in the FGIC Securitizations.

35.     For the foregoing reasons, the Court should modify the automatic stay and permit FGIC and the non-debtor parties to the HELOC Servicing Agreements to take any and all

actions as are necessary to transfer servicing under the HELOC Servicing Agreements to GMAC.

## V.     EXHIBITS

36.     True and correct copies of the HELOC Servicing Agreements are attached hereto as Exhibit A.  True and correct copies of the Insurance and Indemnity Agreements are attached hereto as Exhibit B.  True and correct copies of the HELOC Back-Up Servicing Agreements are attached hereto as Exhibit C.  A proposed order is attached hereto as Exhibit D.

## VI.    RELIEF REQUESTED

WHEREFORE, FGIC respectfully requests that the Court enter an order (i) modifying the automatic stay to permit FGIC and the non-debtor parties to the HELOC Servicing Agreements to take any and all actions necessary to terminate AHM Servicing and AHM Acceptance as servicers and subservicer of the HELOC Mortgage Loans; (ii) directing AHM Servicing and AHM Acceptance and the Debtors to (a) transfer to GMAC all documents, files, records and data related to the HELOC Mortgage Loans; (b) cooperate in connection with transitioning the servicing function to GMAC, including sending "goodbye" letters to borrowers under HELOC Mortgage Loans directing all future collections on the HELOC Mortgage Loans to GMAC, (c) provide an accounting of all amounts collected on account of the HELOC Mortgage Loans, (d) pay all costs and expenses related to the transition of the servicing to GMAC; and (e) otherwise comply with the HELOC Servicing Agreements in transitioning the

servicing of the HELOC Mortgage Loans; and (iii) granting such other and further relief as the

Court deems equitable, just and proper.

Dated: Wilmington, Delaware
       November 29, 2007

                    **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

                    *Donna L. Culver*
                    Robert J. Dehney (No. 3578)
                    Donna L. Culver (No. 2983)
                    Chase Manhattan Centre, 18th Floor
                    1201 North Market Street
                    Wilmington, Delaware  19899
                    Telephone:  (302) 658-9200
                    Facsimile:  (302) 658-3989
                    Email:  rdehney@mnat.com
                    Email:  dculver@mnat.com

                    and

                    **KUTAK ROCK LLP**
                    Bruce A. Wilson, Esq. (admitted pro hac vice)
                    1650 Farnam Street
                    Omaha, Nebraska  68102
                    Telephone:  (402) 346-6000
                    Facsimile:  (402) 346-1148
                    Email:  bruce.wilson@kutakrock.com

                    ATTORNEYS FOR FINANCIAL GUARANTY INSURANCE COMPANY