IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | Objection Deadline: November 29, 2007 |

**CURE CLAIM AND OBJECTION OF CITIMORTGAGE, INC. FOR
THE PERIOD PRIOR TO ENTRY OF THAT CERTAIN SALE ORDER
(Docket Nos. 11, 1703 and 1711)**

CitiMortgage, Inc. ("CMI") submits its objection to the debtors' proposed cure amount and its liquidated cure claim pursuant to paragraphs 25, 28, 30 and 32-38 of this Court's October 30, 2007 "Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief" [Docket No. 1711] (the "Sale Order").

**I.    Background**

1.    CMI is the counterparty to two servicing agreements that are Assumed Contracts[1] the debtors listed on Schedule I to the Sale Order. [Schedule I [Docket No. 1703] at 1, 16-17 at index reference 1.1(j)am and 21 at index reference 1.1(j)bf]. CMI is, therefore, a Certain Objector entitled to file a liquidated cure claim. [Sale Order ¶ 33].

2.    The Sale Order defines the Initial Cure Amounts as "the maximum amounts owed or claimed to be owed with respect to defaults relating to such Assumed Contract related to acts or omissions that occurred prior to the date of the entry of this Order." [Sale Order ¶ 33].

---

[1]    For all capitalized terms or phrases CMI uses in this cure claim, but that CMI has not separately defined in this claim, CMI is using the term or phrase as the Sale Order defines it.

1635373

3.   Paragraph 35 of the Sale Order provides, in pertinent part:

> The Initial Cure Amount and the Interim Cure Amount (together with all amounts payable in respect of Transfer Cost Claims and Setoff Claims, the "<u>Sellers' Cure Amount</u>") shall constitute all amounts owed, if any, with respect to defaults relating to the Assumed Contracts relating to acts or omissions that occurred prior to the Initial Closing;

[Sale Order ¶ 35].

4.   Accordingly, CMI is entitled to be paid as the Initial Cure Amount due it all amounts necessary to cure defaults occurring before October 30, 2007.

## II.   Veterans Land Board Veterans Housing Assistance Program (Loan Sale and Servicing Agreement with CitiMortgage)

5.   On August 11, 1994, Columbia National, Inc. (which entity changed its name to American Home Mortgage Servicing, Inc. effective August 1, 2004) signed an Application to participate in the Veterans Land Board Veterans Housing Assistance Program, in which it agreed, among other things, to service certain mortgage loans and to be bound by the Veterans Land Board's Guide (the "VLB Guide") and its Program Guidelines (the "VLB Guidelines"). Although the debtors advise that they do not have a copy of this agreement, CMI believes this is the servicing agreement to which the debtors refer at pages 1 and 21 of Schedule I. The Application, VLB Guide and VLB Guidelines are voluminous, and, therefore, CMI does not attach them. But, CMI will provide copies on reasonable request to interested parties needing to see them.

6.   Pursuant to Section 6.05 of the VLB Guide, among other agreements, the debtors agreed to pay:

> (iii) all costs and expenses incurred by the Administrator or the Board in investigating Participant's activities hereunder when, in the opinion of the Administrator or the Board, such investigation is warranted on the basis of adverse information about the Participant, and (iv) all costs and expenses incurred by the Administrator or the Board in connection with replacing Participant as a servicer of program loans in the event of default of Participant under the terms of this Guide.

Article I of the VLB Guide defines the "Administrator" to be CMI [VLB Guide at I-4] and defines "Participant" as the lending institution meeting the VLB Guidelines and approved to participate in the program, or, in this case, the debtor AHM Servicing [VLB Guide at I-10].

7.      Section 8.06 of the VLB Guide further provides:

> <u>Participant to Pay Legal Fees</u>. If it is determined in a judicial proceeding that Participant has failed to perform under any provision of this Guide, and if the Administrator or the Board shall employ attorneys or incur other expenses for the enforcement, performance, or observance of the terms of the Guide on the part of Participant, then the Administrator or the Board, as the case may be, to the extent permitted by Law, shall be reimbursed by Participant, on demand, for reasonable attorneys' fees and other out-of-pocket expenses.

[VLB Guide at VIII-2].

8.      In Section 10.310 of the VLB Guidelines, AHM Servicing, as the Participant, agreed to indemnify CMI, as the Administrator, from (among other things) any breach of a representation, warranty or responsibility under the servicing agreement. [VLB Guidelines at 66]. Among those provisions of the VLB Guidelines with which the debtors did not comply prepetition, the debtor AHM Servicing did not provide CMI with written notice of the significant changes in its financial position, as Section 10.305 of the VLB Guidelines requires. [VLB Guidelines at 64].

### III.    **HALO 2007-AR1 Master Loan Purchase and Sale Agreement**

9.      The second CMI Assumed Contract is the Master Loan Purchase and Sale Agreement all of the parties identify as the HALO 2007-AR1 agreement. [<u>See, e.g.</u>, Schedule I [Docket No. 1703] at 16-17]. Subsection 13.01 of the HALO 2007-AR1 agreement provides, in pertinent part:

> [T]he Seller or the Interim Servicer, as applicable, shall indemnify the Initial Purchaser and any subsequent Purchaser and hold them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that the Initial Purchaser and any subsequent Purchaser may sustain arising out of or based on the failure of the Seller or the Interim Servicer, as applicable, to perform its obligations under this Agreement . . . .

[Halo 2007-AR1 agreement at 48-49]. The HALO 2007-AR1 agreement (and its attachments) is voluminous, and, therefore, CMI does not attach it. But, CMI will provide copies on reasonable request to interested parties needing to see it.

### IV. Cure Claim and Objection

10. In Schedule I to the Sale Order, the debtors listed the Initial Cure Amounts under both of these CMI Assumed Contracts (the VLB Application and the HALO 2007-AR1 agreement) as -0-. [Schedule I [Docket No. 1703] at 1, 16-17 and 21].

11. In their November 26, 2007 Interim Period Cure Schedule [Docket No. 2166, Exh. A at 1, 16-17 and 21], the debtors listed the Proposed Interim Cure Amounts under both of these CMI Assumed Contracts as -0-.

12. Pursuant to the Assumed Contracts and the Sale Order, the debtors' Initial Cure Amounts due CMI include CitiMortgage's reasonable attorneys' fees and costs incurred in this proceeding up to October 30, 2007. CMI has incurred reasonable attorneys' fees in that period totaling $111,631.00 and reasonable costs in that period totaling $2,114.67, and as follows: (a) attorneys' fees incurred with Morris James LLP in the amount of $86,229.00; (b) costs incurred with Morris James LLP in the amount of $1,990.96; (c) attorneys' fees incurred with Featherstone Petrie DeSisto LLP in the amount of $25,402.00; and (d) costs incurred with Featherstone Petrie DeSisto LLP in the amount of $123.71.

13. CMI attaches as <u>Exhibit A</u> to this objection and claim the cover sheets for the applicable billing statements Morris James LLP and Featherstone Petrie DeSisto LLP provided to CMI and that CMI pays in the ordinary course after conducting its internal review procedures.[2] Because of the volume of the billing detail, and the attorney-client privilege and work product issues that arise with some of the detailed billing descriptions, CMI does not attach the full copies of the billing statements.

---

[2] The amounts of attorneys' fees due CMI are a small amount less than the sum of the fees on the attached billing statements because, in accord with the Sale Order, CMI has deducted from this cure claim the amounts billed for attorneys' fees incurred on October 30 and 31, 2007.

14.     It is black letter law that under 11 U.S.C. § 365(b)(1)(A), the Debtor may not assume and assign a contract unless the Debtor cures any defaults.

WHEREFORE, CMI respectfully requests that this Court enter an order (A) sustaining its objection to the debtors' proposed Initial Cure Amounts for the two CMI Assumed Contracts, (B) sustaining CMI's liquidated cure claim in the total amount of $113,745.67, and providing for a distribution to CMI from the Cure Escrow in that amount (or such alternate distribution and allowed claim as the Sale Order procedures provide), and (C) granting CMI such further relief as this Court deems just and proper.

Dated:  November 29, 2007

**MORRIS JAMES LLP**

*/s/ Brett D. Fallon*
Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware  19899-2306
Telephone:  (302)888-6888
Facsimile:   (302) 571-1750
Email:  bfallon@morrisjames.com

-and-

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 24005
Denver, Colorado  80202-5424
Telephone:  (303) 626-7139
Facsimile:   (303) 626-7101
Email:  apetrie@featherstonelaw.com

*Attorneys for CitiMortage, Inc.*

1635373