IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>                          Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>Filing Deadline: November 29, 2007 |

**INITIAL CURE AMOUNT AND TRANSFER
COST ESTIMATE OF CITIBANK, N.A., AS TRUSTEE**

      1.      Citibank, N.A. is the indenture trustee or trustee, paying agent and/or registrar (solely in those capacities, "Citibank"), for the following securitization trusts (collectively, the "Trusts"):

      (i)      American Home Mortgage Investment Trust 2004-3, Mortgage-Backed Notes ("AHMIT 2004-3");

      (ii)      American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-3 ("AHMA 2006-3");

      (iii)      American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-4 ("AHMA 2006-4");

      (iv)      GSR Mortgage Loan Trust 2006-AR2, Mortgage Pass-Through Certificates, Series 2006-AR2 ("GSR 2006-AR2"); and

      (v)      Structured Asset Mortgage Investments II Inc., Mortgage Pass-Through Certificates, Series 2007-AR1 ("SAMI 2007-AR1").[1]

      2.      On October 30, 2007, the Court entered the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007,

---

[1]     In addition, Citibank serves as a securities administrator in connection with two additional trusts (the "HALO Trusts"): (i) HSI Asset Loan Obligation Trust, Series 2007-AR1 ("HALO 2007-AR1"); and (ii) HSI Asset Loan Obligation Trust, Series 2007-1 ("HALO 2007-1"). This claim does not include Citibank's claims relating to the HALO Trusts. HALO 2007-1 is not being assumed and assigned and Citibank is not a party to the servicing agreement for HALO 2007-AR1. Citibank reserves its right to assert other claims relating to the HALO Trusts.

and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) The Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (B) Granting Certain Related Relief (Docket No. 1711) (the "Order").

3.      The Order authorized the Debtors to assume and assign certain servicing agreements to the purchaser of the mortgage loan servicing business, AH Mortgage Acquisition Co., Inc. (the "Purchaser"), in accordance with the terms of an Asset Purchase Agreement, dated as of September 25, 2007, as amended (the "APA"). The APA contemplates a two step closing of the sale transaction; an Initial Closing,[2] at which time the Purchaser pays for the business but the Debtors continue to perform under the servicing agreements; and a Final Closing, on or before September 30, 2008, at which time the servicing agreements will be assumed by the Debtors and assigned to the Purchaser.

4.      The Order required that the Debtors establish an escrow in the amount of $10 million for the payment of cure claims (the "Cure Escrow"). Order, para. 32. All Cure Claims that arose prior to the Initial Closing and all Transfer Cure Claims that arose prior to the Final Closing are to be satisfied from the Cure Escrow. To the extent the Cure Escrow does not suffice for the payment in full of all cure claims, any Counterparty may assert a general unsecured claim against the Debtors for the deficiency. Order, para. 35. The Purchaser will be obligated to pay the Debtors, for the benefit of the applicable Counterparty, any cure claims, other than Initial Cure Claims and Transfer Claims which will be paid from the Cure Escrow. This Claim does not include these amounts which will be the subject of separate claims to be filed after the Final Closing.

---

[2]      Defined terms not otherwise defined herein shall have the meanings set forth in the Order.

5.      This Initial Cure Amount is submitted pursuant to paragraph 33 of the Order which requires Citibank to file, within thirty (30) days of the entry of the Order, a liquidated cure amount representing the maximum amount owed or claimed to be owed with respect to defaults relating to Citibank's Assumed Contracts related to acts or omissions that occurred prior to the date of entry of the Order.  Cure claims that arise between October 29, 2007 and the Initial Closing ("Interim Period Cure Claims") are to be filed thirty (30) days after service of the Debtors' Interim Period Cure Schedule.  Order, para. 34.

6.      This Claim also sets forth Citibank's Transfer Cost Estimate pursuant to the Order.  The Order provides:  "Any Counterparty that intends to request payment of a Transfer Cost Claim must file and serve a good faith estimate of such reasonable and necessary costs within thirty (30) days of the entry of this Order."  Order, para. 34.  The Order defines "Transfer Costs" as "reasonable out of pocket costs and expenses incurred by a Counterparty as a result of such assumption and assignment or transfer and chargeable under the Assumed Contracts."  Order, para. 39.

7.      In accordance with the Order, the following agreements relating to the Trusts are being assumed by the Debtors and assigned to the Purchaser (collectively, the "Citibank Servicing Agreements:[3]

| Trust | Document | Citibank Role | Debtor Role in Assumed Contract[4] |
|-------|----------|---------------|-----------------------------------|
| AHMIT 2004-3 | Servicing Agreement dated as of September 29, 2004 among American Home Mortgage Servicing, Inc. ("AHM Servicing"), as Master Servicer, American Home Mortgage Investment Trust 2004-3 (the "AHMIT 2004-3 Trust"), as Issuer and Citibank, N.A., as Indenture Trustee | Indenture Trustee Paying Agent Registrar | AHM Servicing – Master Servicer |

---

[3]      The Order also provided for the assumption of the servicing agreements relating to HALO 2007-AR1.

[4]      Debtors other than AHM Servicing are parties to some of the Servicing Agreements.  The Order does not affect the rights, duties or obligations of those Debtors.

| Trust | Document | Citibank Role | Debtor Role in Assumed Contract[4] |
|---|---|---|---|
| AHMA 2006-3 | Servicing Agreement dated as of July 28, 2006 among Wells Fargo Bank, N.A, ("Wells Fargo"), as Master Servicer, Citibank, N.A., as Trustee, American Home Mortgage Corp. ("AHM Corp."), as Sponsor and AHM Servicing, as Servicer | Trustee Paying Agent Registrar | AHM Servicing – Servicer |
| AHMA 2006-4 | Servicing Agreement dated as of August 30, 2006 among Wells Fargo, as Master Servicer, Citibank, N.A., as Trustee, AHM Corp., as Sponsor, and AHM Servicing, as Servicer | Trustee Paying Agent Registrar | AHM Servicing – Servicer |
| GSR 2006-AR2 | Assignment, Assumption and Recognition Agreement dated as of April 1, 2006 among GS Mortgage Securities Corp., as Assignor, Citibank, N.A., (as Trustee), as Assignee, AHM Servicing, as Servicer, and AHM Corp., as Seller, and as acknowledged by Wells Fargo, as Master Servicer ; and Mortgage Loan Sale and Servicing Agreement between AHM Corp., as Seller, AHM Servicing, as Servicer and Goldman Sachs Mortgage Company, as Purchaser, dated as of December 1, 2005 | Trustee | AHM Servicing – Servicer |
| SAMI 2007-AR1 | Assignment, Assumption and Recognition Agreement dated as of January 31, 2007 among EMC Mortgage Corporation, as Assignor, Citibank, N.A. (as Trustee), as Assignee, AHM Corp., as Company, and AHM Servicing, as Servicer[5] | Trustee | AHM Servicing – Servicer |

8.     For each of the Citibank Servicing Agreements, Schedule I to the Order indicates

that the Initial Cure Amount is "$0.00."  Pursuant to the Order:

> this shall represent the maximum amounts owed or claimed to be owed with respect to defaults relating to Assumed Contracts related to acts or omissions that occurred prior to the date of the entry of this Order.  To the extent … a Certain Objector does not file a separate liquidated cure claim as provided above [within thirty (30) days of entry of the Order], the maximum amount owed to … a Certain Objector shall be the amount set forth on Schedule I to this Order [in each instance, $0 for each of the Citibank Servicing Agreements].

---

[5]     This agreement provides for the assignment to Citibank as trustee for SAMI 2007-AR1 of EMC Mortgage Corporation's rights in the Purchase Warranties and Servicing Agreement among EMC Mortgage Corporation, as Purchaser, AHM Corp., as Company, and AHM Servicing, as Servicer, dated as of March 1, 2006.

Order, para. 33.

 9. Citibank also asserts this Initial Cure Amount pursuant to the Order Pursuant to

Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to

Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to

Maintain and Use Existing Cash Management System, and (III) Extending The Debtors' Time to

Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 (the "Cash

Management Order") (Docket No. 66).  The Cash Management Order provides that:

> The Debtors shall perform each of their Securitization Servicing
> Functions in accordance with the terms and conditions of the
> Securitization Documents until the Termination Date (as defined
> below).  Without limiting the generality of the foregoing, the
> Debtors are authorized and directed to make all required Advances
> and to perform indemnification obligations as provided under the
> Securitization Documents without further application to, or order
> of, this Court,  In addition, parties to the securitization transactions
> are authorized free and clear of any constraints imposed by the
> Bankruptcy Code, including, without limitation, section 362 of the
> Bankruptcy Code, to continue any customary prepetition practices
> of billing, reporting or otherwise making demands on each other as
> to amounts due and to the extent that the relevant parties continue
> to agree to do so, of "netting" amounts currently due to and from
> such parties.

Cash Management Order, page. 6

 10. The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be
> considered a reasonable expense of administration of the
> securitization trust reimbursable under the indemnification
> provisions of the Securitization Documents in accordance with the
> Securitization Documents or, alternatively, such expenses shall be
> afforded administrative expense priority under section
> 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant
> Securitization Documents.

Cash Management Order, pages 7-8.  Citibank reserves the right to assert claims for

indemnification and its monitoring efforts as administrative priority expense claims.

11.     As trustee or indenture trustee, Citibank has the right to enforce the Debtors',

including, AHM Servicing's, obligations, representations and warranties under the Citibank

Servicing Agreements and other agreements relating to the Trusts (collectively, the "Transaction

Documents") for the benefit of itself and each Trust's noteholders and certificateholders.

## INITIAL CURE AMOUNT

12.     AHM Servicing, as Servicer or Master Servicer under the Citibank Servicing

Agreements (the "Servicer"), generally agreed to indemnify Citibank for:  (a) the Servicer's

failure to perform under the Servicing Agreements and the Transaction Documents; (b)

Citibank's performance of it's duties under the Transaction Documents; and (c) certain S.E.C.

reporting requirements.

13.     The Servicer also agreed to pay Citibank for all fees and expenses, including the

fees and expenses of counsel, relating to a transition of servicing.

14.     Citibank has been named (and may be named in the future) as a defendant in

litigations relating to the Trusts or the Servicer.  Most of these actions would probably be

commenced by mortgage loan obligors as direct claims or as counterclaims in foreclosure

proceedings and are defended by the Servicer.[6]  The Servicer is obligated to defend and

indemnify Citibank relating to these actions.  To the extent these claims arose on or before

October 29, 2007, and the Purchaser has not assumed the Servicer's indemnification obligation

to Citibank with respect thereto, this Initial Cure Amount includes Citibank's indemnification

claim relating to those matters.  Citibank does not maintain the files relating to these lawsuits

---

[6]     Citibank is aware of one litigation, <u>Tilton Jack v. American Brokers Conduit, et. al.</u>, Civil Action No.: 07-CV-30887 (NGG) (RML) (United States District Court E.D.N.Y.), which names AHM Servicing, Citibank and others as defendants.  This complaint does not liquidate damages against Citibank or any of the other defendants. The Debtors' schedules include some twenty pages of litigations and do not list Citibank as a party to those lawsuits.

because they are defended by the Servicer. The Debtors have represented that they have not defaulted on any of their servicing obligations. Based on this representations, Citibank has not included a liquidated amount for this indemnification claim and reserves the right to supplement this Initial Cure Amount to the extent it incurs any liability or there are any changes in the facts as represented by the Debtors.

15.       In order to ensure that the Trusts can enforce their rights with respect to mortgage loans owned by the Trusts, the Servicer is generally obligated to record with state and county land record offices, and for mortgages registered with the Mortgage Electronic Registration Systems, Inc. ("MERS"):  (a) the assignment of the mortgage loans to the Trusts, and (b) the transfer of servicing to the Purchaser. To the extent the Servicer failed to properly record the assignment of any of the mortgage loans to the Trusts, this Initial Cure Claim includes any fees and expenses related to the proper recordation of the mortgages. The Debtors have represented that there are no defaults under the any of their Servicing Agreements, including the Citibank Servicing Agreements. Based on this representation Citibank has not included a liquidated amount for the Servicer's failure to perform this obligation and its indemnification claim with respect thereto. To the extent the Debtors' representations are inaccurate or the Servicer fails to perform this obligation (which may not become known in the near term), Citibank reserves the right to amend this Initial Cure Amount to include damages for the Servicer's failure to properly record the mortgage loans.

16.       Citibank charges administration fees and seeks reimbursement of expenses relating to extraordinary services such as servicer defaults and servicer transactions. These fees are the hourly fees of Citibank's officers and any related expenses. The aggregate administration charge of Citibank through October 29, 2007 relating to the Trusts was $34,950.

17.     Citibank retained counsel to advise it relating to the Citibank Servicing Agreements, the Servicer's default and Debtors' sale of the servicing business.  Citibank retained Seward & Kissel LLP as its lead counsel and Cozen O'Connor as special Delaware counsel.  The aggregate fees and expenses of counsel through October 29, 2007 were $733,705.99 comprised of: (a) Seward & Kissel LLP: $698,647.19, and (b) Cozen O'Connor: $35,058.80.

18.     With respect to all of the foregoing, Citibank asserts its Initial Cure Amount in the aggregate amount of $768,655.99 comprised of: (a) bank default administration fees and expenses in the aggregate amount of $34,950.00, and (b) legal fees and expenses in the aggregate amount of $733,705.99.


**TRANSFER COST ESTIMATE**

19.     Pursuant to the Order, the Servicer is obligated to pay all of Citibank's Transfer Costs which include:  (a) bank administration fees (including boarding fees), and (b) legal fees and expenses.

20.     Transfer costs incurred through October 29, 2007 aggregate $768,655.99, as described above.  These amounts are included in the Initial Cure Amount.

21.     Citibank estimates that Transfer Costs, through and including September 30, 2008, the outside date for the Final Closing Date, will aggregate $1,338,656 comprised of actual Transfer Costs through October 29, 2007 of $768,655.99; and (b) estimated bank administration fees, expenses and boarding fees and legal fees and expenses from October 30, 2007 through September 30, 2008 of $570,000.

## RESERVATION OF RIGHTS

22.     This Initial Cure Amount includes all Cure Claims of Citibank through and including October 29, 2007 and Citibank's Transfer Cost Estimate.  In addition to the reservations set forth above, Citibank reserves the right to amend or supplement this Initial Cure Amount and Transfer Cost Estimate to the extent that it becomes aware of additional information concerning claims against the Servicer.

23.     The Debtors have repeatedly represented that there are no defaults in connection with their obligations as Servicer or Master Servicer under the Servicing Agreements, including the Citibank Servicing Agreements.  In preparing this Initial Cure Amount and Transfer Cost Estimate, Citibank has relied on the Debtors' and AHM Servicing's representations that there are no defaults under the Citibank Servicing Agreements.  To the extent the Debtors' representations are invalidated, repudiated or determined to be unwarranted or untrue, Citibank reserves the right to amend this Initial Cure Amount and Transfer Cost Estimate to include claims relating to any undisclosed breaches against any of the Debtors.

24.     Pursuant to the Sale Order, Citibank will be filing a supplemental cure claim for the period from October 30, 2007 to the Initial Closing, a Second Supplemental Cure Claim for the period from the Initial Closing to the Final Closing and a Transfer Claim through the Final Closing.

25.     Citibank expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses, and claims that it may have against any of the Debtors or any subsidiary or affiliate, creditors, management, and other parties under the Bankruptcy Code, the Citibank Servicing Agreements, the Transaction Documents, applicable law and/or equity.

26.     Nothing contained herein shall be construed as a waiver of any rights or remedies of holders of notes and certificates issued by the Trusts or Citibank with respect to the Transaction Documents.  Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of Citibank or the holders of the notes and certificates issued by the Trusts with respect to any other claims against any of the Debtors.


Dated:    Wilmington, Delaware
          November 29, 2007

                                        COZEN O'CONNOR


                                             /s/ John T. Carroll, III
                                        By: _____
                                             John T. Carroll, III (DE 4060)
                                             Suite 1400, Chase Manhattan Centre
                                             1201 North Market Street
                                             Wilmington, Delaware 19801
                                             (302) 295-2000

                                                  and

                                        SEWARD & KISSEL, LLP
                                             Ronald L. Cohen
                                             Arlene R. Alves
                                             One Battery Park Plaza
                                             New York, New York  10004
                                             (212) 574-1200

                                        Attorneys for Citibank, N.A., solely in its
                                        capacities as Indenture Trustee, Trustee,
                                        Administrator, Paying Agent and Registrar