UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>**Filing Deadline: November 29, 2007** |

**INITIAL CURE AMOUNT AND TRANSFER
COST CLAIM ESTIMATE OF
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE**

U.S. Bank National Association, in its capacity as trustee ("U.S. Bank"), by and through its undersigned counsel, files this Initial Cure Amount[1] and Transfer Cost Claim Estimate (collectively, the "Claim") pursuant to the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) The Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (B) Granting Certain Related Relief (Docket No. 1711) (the "Sale Order").

A.   **Background**

1.   U.S. Bank is the indenture trustee or trustee in connection with certain securitization trusts for which Debtors are the servicer, or are otherwise a party, and which are the subject of the Sale Order[2], as more specifically described as follows (collectively, the

---

[1]   Defined terms not otherwise defined herein shall have the meanings set forth in the Sale Order.

[2]   U.S. Bank is the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party but which are not the subject of the Sale Order.

"Trusts"):

    (i)    American Home Mortgage Investment Trust Series 2005-4A;

    (ii)    American Home Mortgage Investment Trust Series 2005-4C;

    (iii)    GSR Mortgage Loan Trust 2006-AR1, Mortgage Pass-Through Certificate Series 2006-AR1;

    (iv)    GSAA Home Equity Trust 2006-6;

    (v)    Bear Stearns Asset Backed Securities I Trust 2006-AC3; Asset-Backed Certificates, Series 2006-AC3;

    (vi)    GSAA Home Equity Trust 2006-9;

    (vii)    Bear Stearns Asset Backed Securities I Trust 2006-AC4, Asset-Backed Certificates, Series 2006-AC4;

    (viii)    J.P. Morgan Alternative Loan Trust 2006-A3, Mortgage Pass-Through Certificates;

    (ix)    MASTR Adjustable Rate Mortgage Trust 2006-OA2 Mortgage Pass-Through Certificates, Series 2006-OA2;

    (x)    MASTR Adjustable Rate Mortgage Trust 2007-1 Mortgage Pass-Through Certificates, Series 2007-1;

    (xi)    MASTR Adjustable Rate Mortgage Trust 2007-3 Mortgage Pass-Through Certificates, Series 2007-3;

    (xii)    Bear Stearns Asset Backed Securities I Trust 2007-AC1, Asset-Backed Certificates, Series 2007-AC1;

    (xiii)    Merrill Lynch Mortgage Investors Trust Mortgage Pass-Through Certificates, MLMI Series 2003-A6 ("MLMI 2003-A6");[3]

    (xiv)    MASTR Asset Securitization Trust 2006-2 Mortgage Pass-Through

---

Such trusts are not included in the following list of trusts because they are not the subject of the Sale Order and this Claim does not include U.S. Bank's claims related to such trusts. U.S. Bank may be the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party and which are the subject of the Sale Order but U.S. Bank has not been identified by Debtors, nor has it otherwise determined, that it is a party to such trusts. All rights to make claims against the Debtors in connection with and on behalf of all of such foregoing trusts are reserved and no waiver is hereby made.

[3]     See footnote 6.

Certificates Series 2006-2;[4] and

(xv)    MASTR Adjustable Rate Mortgage Trust 2006-OA1 Mortgage Pass-Through Certificates, Series 2006-OA1.[5]

2.    On October 30, 2007, the Court entered the Sale Order.

3.    The Sale Order provides that at the Initial Closing, $10,000,000 from the Purchase Price shall be placed into escrow in full satisfaction of the Sellers' Cure Amount. Sale Order, para. 32. To the extent the Cure Escrow is insufficient for the payment in full of all cure claims, any Counterparty may assert a general unsecured claim against the Debtors for the deficiency. Sale Order, para. 35.

4.    For each Assumed Contract, the Sale Order provides that Initial Cure Amounts may be filed within thirty (30) days of the entry of the Order, by, among others, Certain Objectors, as provided therein. U.S. Bank is such a "Certain Objector". More specifically, the Initial Cure Amounts are the liquidated cure amounts representing the maximum amount owed or claimed to be owed with respect to defaults relating to Assumed Contracts related to acts or omissions that occurred prior to the date of entry of the Sale Order. Sale Order, Para. 33. The Sale Order also provides that an Interim Period Cure Schedule is to be served by Debtors setting forth the proposed cure amount with respect to Assumed Contracts related to acts or omissions that occurred between October 30, 2007 and the Initial Closing. Objections to such proposed amount are to be filed thirty (30) days after service of the Debtors' Interim Period Cure Schedule. Sale Order, para. 34.

5.    The Sale Order also provides that Transfer Cost Claims are to be filed within thirty (30) days of the entry of the Sale Order. More specifically, the Sale Order provides: "Any

---

[4]    See footnote 7.
[5]    See footnote 8.

3

Counterparty that intends to request payment of a Transfer Cost Claim must file and serve a good faith estimate of such reasonable and necessary costs within thirty (30) days of the entry of this Order." Sale Order, para. 34. U.S. Bank is such a Counterparty. The Sale Order defines "Transfer Costs" as "reasonable out of pocket costs and expenses incurred by a Counterparty as a result of such assumption and assignment or transfer and chargeable under the Assumed Contracts." Sale Order, para. 39.

6. In accordance with the Sale Order, the following agreements, or portions thereof, relating to the Trusts are being assumed by the Debtors and assigned to the Purchaser (collectively, the "U.S. Bank Servicing Agreements"):

> Assignment, Assumption and Recognition Agreement, made on the 1st day of January, 2006, among American Home Mortgage Servicing, Inc., as seller, American Home Mortgage Corp. as servicer, U.S. Bank National Association, not in its individual capacity but solely as trustee on behalf of GSR mortgage Loan Trust 2006-AR1, and GS Mortgage Securities Corp., as assignor and is acknowledged by Wells Fargo Bank, N.A., as master servicer;

> Assignment, Assumption and Recognition Agreement made the 28th day of April, 2006, among American Home Mortgage Servicing, Inc., a Maryland corporation, American Home Mortgage Corp., GS Mortgage Securities Corp., a Delaware corporation, and U.S. Bank National Association, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2006-6, and as acknowledged by JPMorgan Chase Bank, National Association, as master servicer;

> Assignment, Assumption and Recognition Agreement, made as of April 28, 2006, among EMC Mortgage corporation, U.S. Bank National Association, not individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2006-AC3, Asset-Backed Certificates, Series 2006-AC3, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

> Assignment, Assumption and Recognition agreement, made the 26th day of April, 2006, among American Home Mortgage Servicing, Inc., a Maryland corporation, GS Mortgage Securities Corp., a Delaware corporation, and U.S. Bank National Association, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2006-9, and as acknowledged by JPMorgan Chase Bank, National Association, as master servicer;

> Assignment, Assumption and Recognition Agreement, made as of June 30, 2006, among EMC Mortgage Corporation, U.S. Bank National Association, not

individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2006-AC4, Asset-Backed Certificates, Series 2006-AC4, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

Assignment, Assumption and Recognition Agreement, dated as of June 1, 2006, entered into among J.P. Morgan Acceptance Corporation I, a Delaware corporation, U.S. Bank National Association, as trustee of J.P. Morgan Alternative Loan Trust 2006-A3, J.P. Morgan Mortgage Acquisition Corp., American Home Mortgage Servicing, Inc., as the servicer and Wells Fargo Bank, N.A.;

Assignment, Assumption and Recognition Agreement, dated as of November 15, 2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

Assignment, Assumption and Recognition Agreement, dated as of January 16, 2007, among UBS Real Estate Securities Inc., as Assignor, Mortgage Asset Securitization Transactions, Inc., as Assignee, American Home Mortgage Corp., and American Home Mortgage Servicing, Inc., as Servicer;

Assignment, Assumption and Recognition Agreement, dated as of May 15, 2007, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

Assignment, Assumption and Recognition Agreement, made as of January 30, 2007, among EMC Mortgage Corporation, U.S. Bank, National Association, not individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2007-AC1, Asset-Backed Certificates, Series 2007-AC1, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

RMBS Servicing Agreement, dated as of October 7, 2005, among Wells Fargo Bank, N.A., as RMBS Master Servicer, American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as Seller, and American Home Mortgage Acceptance, Inc., as RMBS Servicer;

RMBS Subservicing Agreement, dated as of October 7, 2005, among American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Servicing, Inc., as RMBS Subservicer, and American Home Mortgage Acceptance, Inc., as RMBS Servicer;

Servicing Agreement, dated as of October 7, 2005, among Wells Fargo Bank, N.A., as RMBS Master Servicer, American Home Mortgage Investment Trust 2005-4C, as Issuer, U.S. Bank National Association, as Indenture Trustee,

American Home Mortgage Acceptance, Inc., as Seller, and American Home Mortgage Servicing, Inc., as RMBS Servicer;

Master Mortgage Loan Purchase and Servicing Agreement, dated as of September 1, 2003, among Merrill Lynch Mortgage Capital, Inc., as Purchaser, and American Home Mortgage Corp., as Seller and Servicer;[6]

Assignment, Assumption and Recognition Agreement, dated as of March 29, 2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;[7] and

Assignment, Assumption and Recognition Agreement, dated as of April 20, 2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.[8]

7. U.S. Bank also asserts this Initial Cure Amount pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending The Debtors' Time to Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 (the "Cash Management Order") (Docket No. 66). The Cash Management Order provides that:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court, In addition, parties to the securitization transactions

---

[6] U.S. Bank sought confirmation from Debtors prior to entry of the Sale Order regarding the identification of the parties related to this Agreement as the Debtors' schedule did not identify U.S. Bank as associated with this Agreement. U.S. Bank has independently confirmed that this Agreement and the related trust (MLMI 2003-A6) are properly included in this claim of U.S. Bank as a Counterparty and/or "Certain Objector" under paragraph 33 of the Sale Order.

[7] Although Debtors' schedules do not identify U.S. Bank as associated with this Agreement, U.S. Bank has independently confirmed that this Agreement and the related trust are properly included in this claim of U.S. Bank as a Counterparty and/or "Certain Objector" under paragraph 33 of the Sale Order.

[8] *Id.*

6

> are authorized free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties

Cash Management Order, page. 6

    8.    The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provisions of the Securitization Documents in accordance with the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents

Cash Management Order, pages 7-8. U.S. Bank reserves the right to assert claims for indemnification and its monitoring efforts as administrative priority expense claims.

    9.    As trustee or indenture trustee, U.S. Bank has the right to enforce the Debtors' obligations, representations and warranties under the U.S. Bank Servicing Agreements and other related agreements for the benefit of itself and each Trust's noteholders and certificateholders.[9]

## B.   <u>Initial Cure Amount</u>

    10.    The Debtors, or certain of them including AHM Servicing, under the U.S. Bank Servicing Agreements (the "Servicer"), agreed to indemnify U.S. Bank for: (a) the Servicer's failure to perform under the Servicing Agreements and the related transaction documents

---

[9] With respect to the U.S. Bank Servicing Agreements, U.S. Bank is relying on its master servicers to enforce such obligations on its behalf and incorporates by reference any and all claims asserted by such master servicers on behalf of or against the Trusts. If such master servicers do not enforce such obligations on its behalf, U.S. Bank may be required to enforce such obligations itself. U.S. Bank by filing this Claim does not acknowledge, create or assume any obligations that do not otherwise exist. In addition, U.S. Bank incorporates by reference any and all claims asserted by any insurers of securities issued by any of the Trusts.

7

("Transaction Documents"); (b) U.S. Bank's performance of certain duties under the Transaction Documents; and (c) certain reporting requirements of the Securities Exchange Commission.

11.  The Servicer also agreed to pay U.S. Bank for all of its fees and expenses, including the fees and expenses of counsel, relating to a transition of servicing.

12.  U.S. Bank may have been named (and may be named in the future) as a defendant in litigation matters relating to the Trusts or the Servicer. With one exception, U.S. Bank is currently unaware, however, of any such litigation in which it is a named party.[10] Most of these actions were commenced by mortgage loan obligors and are being defended by the Servicer. The Servicer is obligated to defend and indemnify U.S. Bank relating to these actions. To the extent these claims arose prior to October 30, 2007, and the Purchaser has not assumed the Servicer's indemnification obligation to U.S. Bank with respect thereto, this Initial Cure Amount includes U.S. Bank's indemnification claim relating to these matters. U.S. Bank neither maintains files relating to, nor is it responsible to monitor these lawsuits, because they are to be defended by the Servicer. The Debtors, not U.S. Bank, have access to the information required to determine whether or not Debtors have breached their obligations under the U.S. Bank Servicing Agreements and the claim amounts arising from any such breach. This information has been requested but it has not been provided to U.S. Bank to date. Debtors have represented that no defaults exist and that there are no cure claims arising under the terms of the U.S. Bank Servicing Agreements. Based on these representations, U.S. Bank has not included a liquidated amount for this indemnification claim and reserves the right to supplement this Initial Cure Amount to the extent it incurs any liability, the Debtors provide further information to U.S.

---

[10]  U.S. Bank has reviewed the Debtors' Statement of Financial Affairs which lists more than 250 lawsuits. Only one of those actions expressly includes U.S. Bank as a party and U.S. Bank has no further information regarding this action.

8

Bank, or there are any changes in the facts as represented by the Debtors.

13. The Servicer is generally obligated (a) with respect to mortgage loans registered with the Mortgage Electronic Registration System, Inc. ("MERS"), to cause MERS to show on its records that U.S. Bank is the "investor" and the assignee of each mortgage securing such a mortgage loan, and to cause MERS to show on its records that the Purchaser is the servicer of those mortgage loans; and (b) with respect to mortgage loans not registered with MERS, to record with applicable state and/or county land record offices any mortgage assignments necessary for the enforcement of a defaulted mortgage loan on behalf of the applicable Trust. To the extent the Servicer failed to properly record the assignment of any of the mortgage loans to the Trusts, this Initial Cure Amount includes any fees and expenses related to the proper recordation of the mortgage assignment. Debtors have represented that they have not defaulted in these obligations and that there are no cure claims arising under the terms of the U.S. Bank Servicing Agreements. Moreover, because a breach of this representation by Debtors may not become apparent for years (when a mortgage loan defaults and the mortgage must be enforced by the successor servicer on behalf of the applicable Trust), U.S. Bank cannot provide a liquidated amount for the Servicer's failure to perform this obligation and its indemnification claim with respect thereto. Accordingly, and based on Debtors' representations, U.S. Bank has not included a liquidated amount for the Servicer's failure to perform these obligations and its indemnification claim with respect thereto. To the extent the Debtors' representations are inaccurate or the Servicer fails to perform these obligations, U.S. Bank reserves the right to amend this Claim to include such amounts arising from such claims.

14. Debtors have also represented that they have not defaulted in any other obligations under the U.S. Bank Servicing Agreements by representing that there are no cure claims arising in connection with same. U.S. Bank is currently unaware of any such breaches

9

but reserves the right to amend this Claim if such representations are inaccurate.

15.  With respect to the foregoing, U.S. Bank asserts its Initial Cure Amount in the aggregate amount of $362,596.00. This amount includes (a) default administration fees and expenses, and (b) legal fees and expenses, as more fully described below

16.  U.S. Bank is entitled to charge administration fees and reimbursement of expenses for its services related to this matter. These administration fees include the hourly fees of U.S. Bank's officers and any related expenses. The aggregate administration charges of U.S. Bank as of October 29, 2007 are $64,588.00.

17.  U.S. Bank retained Dorsey & Whitney, LLP to provide legal services in connection with these bankruptcy cases and the transfer of the servicing business. The aggregate fees and expenses of counsel as of October 29, 2007 are $298,008.00.

C.  **Transfer Cost Claim Estimate**

18.  Pursuant to the Sale Order, the Servicer is obligated to pay all of U.S. Bank's Transfer Costs which include (a) default administration fees and expenses, and (b) legal fees and expenses.

19.  Transfer Costs incurred through October 29, 2007 are in the aggregate amount of $362,596.00. This amount includes the default administration fees and the legal fees and expenses described and included in the above Initial Cure Amount.

20.  U.S. Bank estimates that Transfer Costs, through the date of the Final Closing, will aggregate $1,062,596.00 as follows: (a) actual Transfer Costs through October 29, 2007 in the amount of $362,596.00; and (b) estimated default administration fees and expenses, and legal fees and expenses from October 30, 2007 through the date of the Final Closing in the amount of $700,000.00.

**D.    Reservation of Rights**

21.    This Claim includes the Initial Cure Amount and estimate of Transfer Cost Claim of U.S. Bank. In addition to the reservations hereinabove, U.S. Bank reserves the right to amend or supplement this Claim to the extent that it becomes aware of additional information concerning claims against the Servicer or Transfer Costs and to support this Claim with additional documents and information.

22.    The Debtors have repeatedly represented that there are no defaults in connection with their obligations as Servicer or Master Servicer under the Servicing Agreements, including the U.S. Bank Servicing Agreements. In preparing this Claim, U.S. Bank has relied on the Debtors' representations that there are no defaults under the U.S. Bank Servicing Agreements. To the extent the Debtors' representations are invalidated, repudiated or determined to be unwarranted or untrue, U.S. Bank reserves the right to amend this Claim to include claims and amounts relating to any claims against any of the Debtors.

23.    Pursuant to the Sale Order, U.S. Bank may file additional claims.

24.    U.S. Bank expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses and claims which it may have against the Debtors or any affiliates, subsidiaries, creditors, management and other parties under the Bankruptcy Code, and the rights and benefits at law or in equity to all the rights and interests under and with respect to the Transaction Documents and the U.S. Bank Servicing Agreements.

25.    Nothing contained herein shall be construed as a waiver of any rights or remedies of holders of notes and certificates issued by the Trusts or U.S. Bank with respect to the Transaction Documents. Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of U.S. Bank or the holders of the notes and certificates issued by the Trusts with respect to any other claims against any of the Debtors.

Dated: Wilmington, Delaware
November 29, 2007

**DORSEY & WHITNEY (DELAWARE) LLP**

By: <u>e/ Eric Lopez Schnabel</u>
Eric Lopez Schnabel (Del No. 3672)
1105 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 425-7162

**DORSEY & WHITNEY LLP**
Charles Sawyer (MN #140351)
Katherine A. Constantine (MN #123341)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

*Attorneys for U.S. Bank National Association, in its capacity as Trustee*

12

4821-2299-4178\5