**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------

|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
| In re: | : |  |
|  | : | Case No. 07-11047 (CSS) |
| American Home Mortgage Holdings, Inc., _et al._.[1] | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | **Objections Due By: December 20, 2007 @ 4 p.m.** |
|  | : | **Hearing Date:  Only in the Event of an Objection** |

------------------------------------------------------------

**FIRST MONTHLY APPLICATION OF HAHN & HESSEN LLP, CO-COUNSEL**
**FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR**
**THE PERIOD FROM AUGUST 14, 2007 THROUGH AUGUST 31, 2007**

**SUMMARY SHEET**

Name of Applicant:                                **HAHN & HESSEN LLP**

Authorized to Provide Professional
Services to:                                         The Official Committee of Unsecured Creditors

Date of Retention:                               November 28, 2007 (effective August 14, 2007)

Period for which Compensation and
Reimbursement of Expenses is Sought:      August 14, 2007 through August 31, 2007

Amount of Compensation sought as
actual, reasonable and necessary:            $213,416.00

Amount of Expense Reimbursement sought
as actual, reasonable and necessary:         $3,416.60

This is a ☒ monthly ☐ interim ☐ final application.

|  |  |
|---|---|
| 80% OF FEES FOR PERIOD 8/1/07-8/30/07: | $170,732.80 (Holdback: $42,683.20) |
| 100% OF DISBURSEMENTS: | $3,416.60 |
| TOTAL DUE: | $174,149.40 |

---

[1]     The Debtors in these cases, are:  American Home Mortgage Holdings, Inc.; American Home Mortgage
Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.;
American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement
Services, Inc; and Great Oak Abstract Corp.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------

In re:

American Home Mortgage Holdings, Inc., *et al.* [2]

Debtors.

: Chapter 11
:
: Case No. 07-11047 (CSS)
: (Jointly Administered)
:
: **Objections Due By: December 20, 2007 @ 4 p.m.**
: **Hearing Date:  Only in the Event of an Objection**

---------------------------------------------------------------

## FIRST MONTHLY APPLICATION OF HAHN & HESSEN LLP,
## FOR ALLOWANCE OF FEES AND EXPENSES AS CO-COUNSEL
## TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
## FOR THE PERIOD AUGUST 14, 2007 THROUGH AUGUST 31, 2007

TO:    THE HONORABLE CHRISTOPHER S. SONTCHI,
       UNITED STATES BANKRUPTCY JUDGE:

          Pursuant to the provisions of sections 330 and 331 of Title 11, United States Code

(the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure and Rule

2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware,

HAHN & HESSEN LLP ("H&H") or (the "Applicant") submits this application seeking the

Court's approval of its first monthly request for compensation and reimbursement of expenses as

co-counsel to the Official Committee of Unsecured Creditors (the "Committee") during the

period of August 14, 2007 through August 31, 2007 (the "Compensation Period"), and in support

thereof respectfully represents:

---

[2]    The Debtors in these cases, are:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc; and Great Oak Abstract Corp.

1.      H&H submits this first monthly application for allowance of $216,832.60 for services provided to the Committee during the Compensation Period consisting of (i) fees in the amount of $213,416.00, and (ii) out-of-pocket expenses in the amount of $3,416.60.

### Background

2.      On August 6, 2007 (the "Petition Date"), American Home Mortgage Holdings, Inc., et al. and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code.  The Debtors have continued in the management and operation of their businesses as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in the Debtors' cases.

3.      On August 14, 2007, the United States Trustee for the District of Delaware appointed the Committee, which is comprised of the following seven (7) members:  Wilmington Trust Company; United Parcel Service, c/o The Receivable Management Services Corporation, Its Agent; The Bank of New York Trust Company, N.A.; Deutsche Bank National Trust Co.; as Trustee; Nomura Credit & Capital, Inc.; Impac Funding Corporation; and Waldners Business Environments, Inc.

4.      The Committee elected Wilmington Trust Company, as Trustee, and The Receivable Management Services Corporation, Agent for United Parcel Service, as Co-Chairpersons of the Committee.  The Committee then selected H&H as its counsel, Blank Rome LLP as co-counsel, and BDO Seidman as financial advisors.

5.      Pursuant to an order of this Court dated November 28, 2007, a copy of which is annexed hereto as Exhibit "A", H&H was authorized to represent the interests of the Committee under a general retainer, effective as of August 14, 2007.

128189.01600/21647448v.1

6.      The attorneys at H&H with primary responsibility for the representation of the Committee in this case are Jeffrey L. Schwartz, Mark S. Indelicato and Mark T. Power, each of whom is a partner at H&H.  Mr. Schwartz is a 1973 graduate of Cornell University and a 1976 graduate of New York University School of Law.  Mr. Indelicato is a 1982 graduate of New York University, Stern School of Business and a 1985 graduate of Fordham University School of Law.  Mr. Power graduated in 1985 from George Washington University and earned his Juris Doctor in 1988 from Boston College Law School.  In an effort to keep duplication of efforts down to a minimum, Applicant has allocated, where appropriate, the tasks performed by Mr. Schwartz, Indelicato and Power to separate and discrete tasks.  Mr. Schwartz has particular expertise regarding issues involving counter-parties to financial contracts in subprime lending, and has been particularly involved in these cases in that area.  Mr. Indelicato's and Mr. Power's legal careers have both been in the area of bankruptcy and creditors' rights, with a substantial focus on representing creditors committees in Chapter 11 cases.  As such, they are responsible for the day-to-day oversight of the case.

7.      This Monthly Fee Application is submitted in accordance with the Court's Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals, dated September 3, 2007 [Docket No. 547] (the "Administrative Fee Order").

## Summary of H&H Services During the Compensation Period

8.      From the outset, these cases have been extremely active and challenging, with a multitude of substantial motions and adversary proceedings commenced during the first few weeks of the case.  Applicant has devoted considerable time and attention at the inception of its retention in order to get up to speed quickly on the underlying facts and be able to respond appropriately to the myriad of expedited matters filed in the case.  During the month of August 2007, H&H expended 431.00 hours in connection with its services on behalf of the Committee. H&H submits that the services it has rendered to the Committee have been necessary and in the best interests of creditors and the Debtors' estates and have furthered the goals of all parties in interest.  H&H's services concentrated in, but were not limited to, the following areas:

**(a)      General; Case Administration**

9.      H&H expended 13.90 hours with respect to services under this category, for which total compensation amounts to $7,861.00.  Applicant's services included review of docket regarding status updates and review of recently filed pleadings.  Applicant's attorneys also frequently met or participated in conference calls with the Debtors and/or their professionals on multiple topics including, but not limited to, sale of the Broadhollow assets, deadlines regarding filing schedules and statement of affairs and the various adversary proceedings commenced against the Debtors.  Applicant also spent time attending to general administrative and case management matters and preparing service lists, contact sheets and e-mail distribution lists.

128189.01600/21647448v.1

**(b)**     **Creditors' Committee**

10.     H&H expended 190.10 hours with respect to services under this category, for which total compensation amounts to $74.509.00.  Applicant's services included reviewing the numerous motions filed by the Debtors at the inception of this proceeding as well as the adversary proceedings filed against the Debtors.  Pleadings were summarized for consideration by the Committee during our meetings.  Applicant spent time conducting research regarding the status of ex officio members to the Committee and issues concerning the Debtors' "Rabbi" trust.  Applicant drafted, reviewed, revised and finalized the Committee by-laws.  Applicant's services included frequent communications with Committee members through telephone conferences, face-to-face meetings, e-mails and memoranda.  Applicant prepared for and participated in several meetings with the Committee, local counsel and BDO, to discuss strategy and vote on various matters before the Committee.  Applicant also had multiple conference calls with Debtors and Debtors' counsel to address concerns raised by the Committee; and thereafter discussed results of these meetings with other parties-in-interest.  Applicant's attorneys met frequently on multiple topics including, but not limited to, numerous pending motions, first day orders and affidavits, motions concerning the proposed sales of assets and employees issues.

**(c)**     **Retentions**

11.     H&H expended 32.10 hours with respect to services under this category, for which total compensation amounts to $19,179.00.  Applicant spent time reviewing and revising prepared retention applications including retention papers of Applicant.  Applicant's services included discussions regarding the retention of Milestone Advisors, Kroll Zolfo Cooper and Phoenix Capital, including the Committee's issues and concerns regarding the specific terms

of their retention.  Applicant also reviewed various submissions by financial advisors seeking to be retained by the Committee and discussed same with the Committee.

**(d)    DIP and Cash Collateral/Investigation of Lien**

12.    H&H expended 76.40 hours with respect to services under this category, for which total compensation amounts to $40,734.50.  Applicant analyzed the terms of the proposed new post petition DIP financing between the Debtor and WLR Recovery Fund III, L.P. Applicant reviewed the terms of this DIP with the Committee and prepared a draft objection to the proposed DIP financing.  Applicant prepared for and participated in numerous teleconference calls to negotiate a resolution of the disputes concerning the terms of the proposed DIP financing.

13.    Applicant also reviewed and analyzed the proposed order authorizing the Debtors to utilize cash collateral which Bank of America, N.A. as Administrative Agent ("BofA") claimed an interest.  Applicant was involved in numerous discussions and meetings with representatives of the Debtors, BofA and their counsel to resolve all issued related thereto. Prior to resolving all such disputes it was necessary for the committee to draft and file an objection to the proposed cash collateral order.  Once the Objection was filed Applicant was able to resolve all outstanding disputes regarding the proposed cash collateral order.

**(e)    Sale of Assets**

14.    H&H expended 56.70 hours with respect to services under this category, for which total compensation amounts to $32,507.50.  At the inception of the case the Debtor scheduled for sale loans owned by a non debtor subsidiary with an unpaid principal balance in excess of $1 billion.  Applicant was required to very quickly review and analyze the relevant agreements to determine if a breakup fee should be paid by the Debtors estate and the

implications this sale would have on the Debtors' unsecured creditors. Applicant reviewed and participated in the negotiations of the terms of sale for these loans and attended several hearings regarding approval of these procedures. Applicant also began reviewing and analyzing draft asset purchase agreements for the sale of the Debtors servicing business.

**(f)**    **Litigation**

15.    H&H expended 51.80 hours with respect to services under this category, for which total compensation amounts to $32,375.00. Credit Suisse First Boston ("CSFB"), Morgan Stanley and Ginnie Mae commenced litigation immediately after the Petition Date to terminate the Debtors' servicing of their mortgage loans and requiring the Debtor to turn over all documentation so that servicing could be transferred to a new servicer. Application reviewed all pleadings and related issues. This was a central issue to the Debtors case. Applicant attended the hearings and had discussion with counsel for all parties in attempts to resolve their disputes.

**(g)**    **Employee Issues**

16.    H&H expended 10.00 hours with respect to services under this category, for which total compensation amounts to $6,250.00. Applicant's services included review of, response to and negotiations concerning the Debtors' KERP motion and interim order regarding wage and salary issues. Applicant spent time conducting research regarding the WARN Act, Top Hat Plans and Rabbi Trust. Applicant reviewed, revised and finalized objections to Debtors' wage and incentive compensation motions. Applicant had numerous conversations with the Debtors' professionals and its financial advisors to resolve disputes regarding the incentive compensation motions.

## H&H Fees for the Compensation Period

17.      Under all of the criteria normally examined in Chapter 11 reorganization cases, H&H's total requested compensation of $216,832.60 is reasonable in light of the significant work performed by H&H to date.  The hourly rate for each attorney and paraprofessional who performed the foregoing services on behalf of the Committee is set forth in detail in the prefixed Summary Cover Sheet.

18.      Annexed hereto and made a part hereof as Exhibit "B" are computer-generated invoices taken from the timesheets maintained by the individuals who performed services during the Compensation Period.  The invoices indicate the dates of and description of the services for which H&H seeks compensation, and the hours spent in performance of such services.

19.      In certain instances, H&H's time records may indicate that two or more attorneys attended the same meeting or hearing.  Where more than one attorney attended a meeting or hearing, it was due in part to the expertise related to a specific issue that one particular attorney was handling and/or because one attorney was more familiar with specific topics to be discussed or presented at the meeting or hearing.  Applicant made every effort to minimize such dual attendance while at the same time assuring that the interests of the Committee and the creditor body was adequately represented.  Applicant, therefore, believes that the time for both attorneys at such meetings and/or hearings are properly compensable.

20.      Based on the above and in accordance with the Administrative Fee Order, H&H requests allowance of monthly compensation for August 2007 in the amount of $213,416.00, and payment of $170,732.80 representing eighty percent (80%) of such compensation.

- 8 -

### Disbursements Incurred During the Compensation Period

21.     The annexed Exhibit "C" itemizes H&H's out-of-pocket expenses incurred in connection with its services during the Compensation Period.  Pursuant to Local Rule 2016-2(e), H&H's expenses are summarized in the prefixed Cover Sheet.  H&H charges its clients $0.10 per page photocopying expense.  Applicant charges its clients $1.25 per page for outgoing facsimile transmission but in accordance with the Local Rules of this court, seeks reimbursement of only $1.00 per page.  Actual long-distance carrier charges for outgoing facsimile transmission are reflected in the long-distance telephone charges.  H&H believes these expenses are reasonable and were necessarily made.  H&H respectfully requests reimbursement thereof in the sum of $3,416.60.

22.     In providing a reimbursable service, H&H does not make a profit on that service and does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay.

23.     H&H reserves the right to request in subsequent monthly applications reimbursement for expenses actually incurred during the Compensation Period but which do not appear on the annexed Exhibits "B" and "C" because either charges have not yet been posted in H&H's billing system, or have not yet been billed by a third party vendor.

**WHEREFORE**, H&H respectfully requests that the Court enter an order allowing compensation in the amounts set forth herein and provide such other and further relief as may be just and equitable.

Dated:    New York, New York
          November 30, 2007

                                    **HAHN & HESSEN LLP**
                                    Co-Counsel to The Official Committee of
                                    Unsecured Creditors of American Home Mortgage
                                    Holdings, Inc., et al. Debtors

                                    By: _____
                                         Mark S. Indelicato
                                         A Member of the Firm
                                         488 Madison Avenue
                                         New York, NY  10022
                                         (212) 478-7200
                                         (212) 478-7400 facsimile