IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br><br>Objection Deadline for GMACM: December 6, 2007 at 4:00 p.m.<br>Hearing Date: December 12, 2007 at 10:00 a.m.<br><br>Re: Docket No. 1955 |

### GMAC MORTGAGE LLC'S RESPONSE TO MOTION OF CIFG ASSURANCE NORTH AMERICA, INC. FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT TERMINATION OF THE RIGHTS AND RESPONSIBILITIES OF DEBTOR AS SERVICER UNDER THE HELOC SERVICING AGREEMENT FOR SERIES 2006-2

GMAC Mortgage LLC ("GMACM"), by and through its undersigned counsel, hereby submits its Response ("Response") to the Motion of CIFG Assurance North America, Inc. for Relief from the Automatic Stay to Permit Termination Rights and Responsibilities of Debtor as Servicer Under the HELOC Servicing Agreement for Series 2006-2 (the "Motion")[1], and in support hereof states as follows:

1. GMACM is the back-up servicer (the "Back-Up Servicer") with respect to a securitized portfolio of home equity line of credit mortgage loans (collectively, "HELOCs") known as the Series 2006-2 HELOC loan portfolio (the "2006-2 HELOCs") pursuant to the HELOC Back-Up Servicing Agreement dated June 30, 2006 between and among GMACM, as Back-Up Servicer, American Home Investment Trust 2006-2, as Issuing Entity, and Deutsche Bank Trust Company Americas, as Indenture Trustee (the "Back-Up Servicing Agreement") and the HELOC Servicing Agreement dated June 30, 2006 among GMACM, as Back-Up Servicer, American Home Mortgage Acceptance, Inc. ("AHMA" or "Servicer"), as HELOC Servicer,

---

[1] Any capitalized term used in this Response without definition shall have the definition contained in the Motion.

American Home Investment Trust 2006-2, as Issuing Entity, and Deutsche Bank Trust Company Americas, as Indenture Trustee (the "Servicing Agreement").

2. The 2006-2 HELOCs were issued by one or more of the Debtors and thereafter sold to a trust[2] (the "2006-2 Trust") pursuant to various documents and agreements, including the Mortgage Loan Purchase Agreement dated June 20, 2006 between American Home Mortgage Securities LLC, as Purchaser, and AHMA, as Sponsor (the "MLPA"), many of which are attached as exhibits to the Motion (collectively, the "2006-2 HELOC Documents").

3. Pursuant to the MLPA, AHMA sold and the 2006-2 Trust acquired and owns the 2006-2 HELOCs and the Additional Balances (as that term is defined in the 2006-2 HELOC Documents) under the 2006-2 HELOCs. See MLPA at Section 2.1(a). Although the 2006-2 Trust acquired the 2006-2 HELOCs, AHMA specifically retained, and the 2006-2 Trust did not assume, any obligation under any 2006-2 HELOC to fund any future draws. See MLPA at Section 2.1(a). The MLPA specifically provides that the purchaser is not obligated or permitted to fund any future draws under the 2006-2 HELOCs. Accordingly, the obligation to fund any draws under the 2006-2 HELOCs is an obligation of AHMA.

4. HELOCs are different from other types of mortgage loans because they operate in a similar fashion to revolving lines of credit. So long as no default exists under the HELOC, the borrower under the HELOC (a "HELOC Borrower") is permitted to borrow up to the borrowing limit and thereafter re-borrow principal amounts that he or she previously repaid. The "lender" under the 2006-2 HELOCs was AHMA (the "Lender").

---

[2]  The 2006-2 Trust issued various notes (the "Notes") that are "backed by" or that rely upon the 2006-2 HELOCs and collections thereunder as a source of payment with respect to the Notes.

5.  CIFG Assurance North America, Inc ("CIFG") is the credit enhancer under a certain insurance policy (the "CIFG Policy") that insures payment under the Notes to the holders of the Notes.

6.  As previously indicated, AHMA also served as the servicer of the 2006-2 HELOCs pursuant to the Servicing Agreement.

7.  Under the 2006-2 HELOC Documents, prior to the occurrence of a "Rapid Amortization Event" (hereinafter defined), the Servicer may use the principal and interest payments collected from the HELOC Borrowers to honor draw requests made under the 2006-2 HELOCs. To the extent that such funds are insufficient to cover the draw requests or to the extent that a Rapid Amortization Event has occurred, the Lender is obligated to fund that portion of the draw request that the Trust funds do not cover.

8.  As stated in the Motion, CIFG believes that a "HELOC Servicer Termination Event" occurred under the 2006-2 HELOC Documents due to, among other things, the payment performance of the 2006-2 HELOCs, the charge offs that have resulted from such payment performance and because AHMA failed to fulfill its contractual responsibilities under the HELOC Servicing Agreement[3].

9.  According to the 2006-2 HELOC Documents, upon the occurrence of a HELOC Servicer Termination Event, a "Rapid Amortization Event" automatically (and without the need to provide notice to the Servicer) occurs. Following the occurrence of a Rapid Amortization Event, all collections from the 2006-2 HELOCs (net of the fees and expenses of the Servicer and the Back-Up Servicer) are to be paid into the 2006-2 Trust and used to pay down the principal

---

[3] GMACM is without sufficient information to determine whether a HELOC Servicer Termination Event has occurred.

and interest due under the Notes. Thus, following a Rapid Amortization Event, the collections on account of the 2006-2 HELOCs are not allowed to be used to fund draw requests by the HELOC Borrowers. According to CIFG, AHMA ignored or failed to acknowledge the occurrence of a HELOC Servicer Termination Event and a Rapid Amortization Event and, in contravention of the HELOC Servicing Agreement, used some of the amounts paid to it by HELOC Borrowers on account of the 2006-2 HELOCs to fund, in part, draw requests by HELOC Borrowers. According to the Motion, this practice by AHMA resulted in more than $1,200,000 of collections being "wrongfully diverted" through July, 2007.

10. The Debtors sold the bulk of their mortgage loan servicing business (the "Servicing Business") to AH Mortgage Acquisition Co., Inc. (the "Purchaser"). The sale of the Servicing Business is to occur in two parts - an initial or economic closing, which occurred on November 16, 2007, and a final or legal closing anticipated to occur sometime in early 2008. Originally the servicing rights, if any, of AHMA, under the Servicing Agreement were to be sold to the Purchaser in connection with the sale of the Servicing Business. However, on the morning of the sale hearing, the Debtors, without any prior notice to GMACM or to CIFG or to anyone else with an interest in the 2006-2 HELOCs or the 2006-2 HELOC Documents, withdrew the servicing rights under the 2006-2 Servicing Agreement from the assets to be sold to the Purchaser. As far as GMACM is aware, the Debtors have not entered into any other agreements or filed any other motions to sell or otherwise address their servicing rights, if any, under the Servicing Agreement. Upon and following the final closing of the Servicing Business, the Debtors will lack the ability to service the 2006-2 HELOCs inasmuch as their entire servicing operation will be transferred to the Purchaser.

11.  GMACM believes that AHMA is no longer making loans to fund draw requests under the 2006-2 HELOCs. In addition, GMACM believes that the HELOC Borrowers have not received any notice from any Debtor that the 2006-2 HELOCs are "frozen" and that no further draw requests thereunder will be honored. This presents a very serious issue in that individual HELOC Borrowers may be incurring obligations believing that they can draw on their HELOC to fund such obligations.

12.  As expressed in the Motion, CIFG desires a lifting of the automatic stay so that AHMA may be terminated as Servicer under the Servicing Agreement, which may ultimately result in GMACM becoming the servicer of the 2006-2 HELOCs.

13.  Pursuant to Section 6.01 of the Servicing Agreement, CIFG has directed GMACM to join in the relief requested in the Motion. GMACM can neither admit nor deny a number of factual allegations contained in the Motion; however, GMACM is prepared to take over as servicer under the Servicing Agreement provided that it is accorded the authority to do so by this Court and by AHMA (in its capacity as Servicer), which is currently in the possession of the files, books, records and funds pertaining to the 2006-2 HELOCs.

14.  While GMACM is prepared to meet its obligations under the Servicing Agreement and the Back-Up Servicing Agreement, its obligation is to take over the servicing of the 2006-2 HELOCs, not to advance any funds in order to meet draw requests made by HELOC Borrowers. Further, because a Rapid Amortization Event may have occurred[4], the Servicer is

---

[4]  GMACM is not taking a position as to whether a Rapid Amortization Event occurred. However, to the extent that a Rapid Amortization Event has occurred, GMACM, as the new servicer, is not obligated to and thus has no intention of funding draw requests under the 2006-2 HELOCs. Inasmuch as GMACM has no obligation to and has no intention of taking over as Lender, GMACM, as the new servicer, believes that the HELOC Borrowers have the right to be notified that the 2006-2 HELOCs are "frozen" and that no further loans will be made to such HELOC Borrowers thereunder.

not permitted to use any of the payments made on account of the 2006-2 HELOCs to fund draw requests. Thus the 2006-2 HELOCs will no longer "revolve". It is GMACM's view that the HELOC Borrowers should be notified of this situation so that they do not rely on the HELOCs to fund any obligations they may incur. AHMA should be required to send a notice to the HELOC Borrowers since AHMA is the Lender under the 2006-2 HELOCs.

15.    Further, AHMA must comply with Servicing Agreement as it relates to the transfer of servicing to GMACM, or any other successor servicer, including, without limitation cooperating with GMACM in effecting the termination of AHMA's responsibilities and rights including, without limitation, the transfer to GMACM or the successor servicer for administration by it of (i) the property and amounts which are then or should be part of the Trust Estate or which thereafter become part of the Trust Estate; (ii) originals or copies of all documents of the Servicer reasonably requested by GMACM to enable it to assume the Servicer's duties thereunder; (iii) the rights and obligations of the Servicer with respect to the 2006-2 HELOCs; (iv) all cash amounts which shall at the time be deposited by the Servicer or should have been deposited to the Collection Account or the Payment Account (as those terms are defined in the 2006-2 HELOC Documents) or thereafter be received with respect to the 2006-2 HELOCs; and (v) all costs or expenses associated with the complete transfer of all servicing data and the completion, correction or manipulation of such servicing data as may be required by GMACM or any successor servicer to correct any errors or insufficiencies in the servicing data or otherwise to enable GMACM or successor servicer to service the 2006-2 HELOCs properly and effectively. In addition, AHMA must pay all reasonable costs and expenses (including, but not limited to, attorneys' fees and disbursements) incurred by GMACM or a successor servicer in connection with its succession as servicer.

16.    For all of the foregoing reasons, GMACM concurs with the Motion to the extent that it seeks relief from the automatic stay so that GMACM may take over as servicer with respect to the 2006-2 HELOCs; however GMACM requests additionally that this Court direct the Debtors to take the actions specified in paragraphs 14 and 15 of this Response in connection therewith.

WHEREFORE, GMAC Mortgage LLC respectfully requests that the Court enter an Order in the form attached hereto (i) modifying the automatic stay to permit CIFG and GMACM and any other non-Debtor parties to the Servicing Agreement, Back-Up Servicing Agreement and any other 2006-2 HELOC Documents to take any and all actions necessary to terminate AHMA as Servicer thereunder; (ii) directing AHMA to comply with Servicing Agreement as it relates to the transfer of servicing to GMACM, or any other successor servicer; (iii) directing AHMA to send a notice to the HELOC Borrowers that the 2006-2 HELOCs are "frozen" and that no further loans will be made to such HELOC Borrowers thereunder; and (iv) granting such other and further relief as the Court deems appropriate, just and proper.

Dated: December 6, 2007
       Wilmington, Delaware

REED SMITH LLP

By:    /s/ Kimberly E. C. Lawson
       Kimberly E. C. Lawson (No. 3966)
       1201 Market Street; Suite 1500
       Wilmington, DE 19801
       Telephone: (302) 778-7500
       Facsimile: (302) 778-7575
       E-mail: klawson@reedsmith.com

       and

       Robert P. Simons
       435 Sixth Avenue
       Pittsburgh, PA 15219
       Telephone: (412) 288-7294
       Facsimile: (412) 288-3063

- 8 -

and

Claudia Z. Springer
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420

Attorneys for GMAC Mortgage LLC