## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,[1]

      Debtors.

------------------------------------------------------------------ x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

**Objection Deadline: December 27, 2007 at 4:00 p.m. (ET)**
**Hearing Date:  January 4, 2008 at 11:00 a.m. (ET)**

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554 AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION OF CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS UPON PAYMENT OF REASONABLE COSTS AND EXPENSES

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") by and through their counsel, hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105, 363 and 554 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the Debtors to abandon and destroy hard copy duplicates of certain of the Debtors' mortgage loan files or, alternatively, to return such mortgage loan files to the owner of such loans upon payment of reasonable costs and expenses.  In support of the Motion, the Debtors respectfully represent and state as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this

case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory predicates for the relief requested herein are sections 105, 363 and 554 of the

Bankruptcy Code, as complimented by Rule 6007 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

2.      On the Petition Date each of the Debtors filed with this Court a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to

operate its business and manage its properties as a debtor in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or

examiner has been appointed.

A.      **The Debtors' Business**

5.      Prior to the filing of these bankruptcy cases, the Debtors' business

primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in

mortgage loans and mortgage-backed securities resulting from the securitizations of residential

mortgage loans.  The Debtors also invested in securitized mortgage loans originated by others

and originated and sold mortgage loans to institutional investors.  The Debtors offered an array

of mortgage products and made loans primarily to borrowers with good credit profiles.  Most of

their portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6.      As of December 31, 2006, the Debtors held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion.  As of December 31, 2006, the Debtors operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia.  Certain of the Debtors originated mortgages through a network of loan origination offices.  In addition, the Debtors originated loans obtained from mortgage brokers and purchased loans from correspondents.  The Debtors originated approximately $58.9 billion in aggregate principal amount of loans in 2006.  For the third quarter of 2006, the Debtors were ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7.      A large component of the Debtors' business is the servicing of loans, which is conducted through AHM Servicing.  The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes.  As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8.      In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

9.      The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business.  As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

10.      Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## B.      **Relevant Background**

11.      In the ordinary course of the Debtors' loan origination business, the Debtors maintain individual loan files, which include copies of consumer loan applications, closing documents, titles and home appraisals.  The Debtors' loan origination offices sent copies of their mortgage loan files to the Debtors' headquarters in the Melville, NY (the "Hard Copy Loan Files") for central storage in compliance with various federal and state laws governing the mortgage loan industry.

12.      Once the Hard Copy Loan Files were received and cataloged, the Debtors sent them to American Corporate Record Center, Inc., a non-affiliated third party-owned document storage facility (the "Storage Facility").  The Storage Facility currently stores approximately 1.1 million Hard Copy Loan Files (as well as certain other corporate files).  The

Storage Facility currently charges approximately $45,000/month for the storage of the Hard Copy Loan Files.

13.    The Debtors use a document storage management barcoding system (the "Barcode System") to coordinate the storage of the Hard Copy Loan Files. Through the Barcode System, the location and status of each Hard Copy Loan File is recorded.

14.    In September of 2005, the Debtors began imaging the Hard Copy Loan Files. The Debtors have imaged all of their Hard Copy Loan Files since September of 2005, approximately 490,000 files (the "E-Loan Files"). The E-Loan Files are maintained on secure servers, and the Debtors retain approximately four electronic copies of each E-Loan File.

15.    In addition to the E-Loan Files, the Debtors also maintain various subsets of the information contained in the E-Loan Files as alternative sources for certain information contained in such files. In the ordinary course of the Debtors' loan origination business, the Debtors utilized the UNIFY Loan Origination System ("UNIFY"). Through UNIFY, the Debtors can access (i) borrower information on a loan application; (ii) the borrower's credit report/credit score; (iii) underwriting information, including the automated underwriting decision, where applicable; (iv) and a regeneration of disclosures/closing documents. As a result, in addition to the Debtors' E-Loan Files, the information contained in such files can also be obtained by alternative sources if necessary.

16.    Despite the Debtors' imaging and maintenance of the 490,000 E-Loan Files, the Debtors continued to store the corresponding Hard Copy Loan Files (the "Duplicate Hard Copy Loan Files") in the Storage Facility. Accordingly, almost half of the Debtors' 1.1 million Hard Copy Loan Files are Duplicate Hard Copy Loan Files.

17.    Because the Hard Copy Loan Files (including the Duplicate Hard Copy Loan Files) contain confidential consumer information, federal regulations provide that the Debtors must "properly dispose of such information by taking reasonable measures to protect against unauthorized access to or use of the information in connection with its disposal." 16 C.F.R. § 682.3(a); see also 16 C.F.R. § 314.3 (requiring the development, implementation and maintenance of a comprehensive information security program that insures the security and confidentiality of customer information and protects against unauthorized access or use of such information). The Federal Trade Commission has determined, among several other methods, that "burning, pulverizing, or shredding of papers containing consumer information so that the information cannot practicably be read or reconstructed" are reasonable methods to dispose of the confidential consumer information. 16 C.F.R. § 682.3(b).

18.    Given the volume of Hard Copy Loan Files and the required methodology to properly dispose of the confidential consumer information contained therein, the Debtors anticipate that destruction of the Hard Copy Loan Files will take a substantial amount of time. Accordingly, the Debtors believe that it is imperative to begin the appropriate disposal of the Hard Copy Loan Files as soon as possible. Given that the Duplicate Hard Copy Loan Files are duplicative of the E-Loan Files, the Debtors submit that the destruction of the Duplicate Hard Copy Loan Files is the appropriate starting point for the lengthy destruction process.

19.    Through the Barcode System, the Debtors can effectively determine which Hard Copy Loan Files have been imaged and constitute Duplicate Hard Copy Loan Files. The Debtors will work with the Storage Facility to determine which storage boxes contain Duplicate Hard Copy Loan Files and will use the Debtors' Barcode System to confirm that each Duplicate Hard Copy Loan File has a corresponding E-Loan File prior to destruction.

20.    The Debtors estimate that destruction of the Duplicate Hard Copy Loan Files in accordance with applicable law will cost approximately $500,000 plus, among other things, costs and labor associated with the retrieval, review and scanning of such files prior to destruction.

## RELIEF REQUESTED

21.    By this Motion, the Debtors request entry of an order pursuant to sections 105, 363 and 554 of the Bankruptcy Code authorizing the Debtors to abandon and destroy the Duplicate Hard Copy Loan Files and to authorize expenditure of estate funds to complete the process or, alternatively, to return the Duplicate Hard Copy Loan Files to the owner of such loans upon written request and payment of all reasonable costs and expenses associated with the retrieval, review and return (the "Returned Loan Files"), in accordance with the federal and state laws which protect confidential consumer information.

## BASIS FOR RELIEF

22.    Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01 at 105-6 (15th ed. rev. 1999).

23.    As is the case with a trustee's decision to reject an executory contract,[2] the Court should apply the business judgment standard in reviewing the Debtors' decision to abandon property that is either of inconsequential value or burdensome to the estate. See In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary. . . . The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.") (internal citations omitted); Reich v. Burke (In re Reich), 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985) ("[I]f a trustee feels an asset is of inconsequential value and benefit to the estate *or* that it is 'burdensome to the estate,' he may abandon it." (emphasis in original)).

24.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the debtor's reasonable business judgment. See e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (same).

---

[2]    The decision to reject an executory contract is subject to the court's finding that such decision is a product of the debtor in possession's sound business judgment. See Sharon Steel Corp. v. National Fuel Gas Distr. Corp., 872 F.2d 36, 39 (3d Cir. 1989).

25.    The Debtors' abandonment of the Duplicate Hard Copy Loan Files is warranted under section 554(a) of the Bankruptcy Code, and the destruction, including the incurrence of costs associated with destruction, are permitted under section 363 of the Bankruptcy Code. The Debtors have shut down the loan origination business, sold the servicing business, and are liquidating their remaining assets. Accordingly, the Debtors no longer need the Duplicate Hard Copy Loan Files for their business operations. More significantly, the Duplicate Hard Copy Loan Files are not necessary to the Debtors' estates because they are duplicative of the E-Loan Files.

26.    In addition, the Duplicate Hard Copy Loan Files are burdensome because of the costs of maintaining them and the Debtors' need to ultimately destroy or remove all files from the Storage Facility in an expeditious and efficient manner. The Storage Facility charges approximately $45,000/month to maintain all of the Debtors' Hard Copy Loan Files, almost half of which are the Duplicate Hard Copy Loan Files. The Debtors have reviewed alternative storage options and determined that such options are cost prohibitive in light of the volume of Hard Copy Loan Files stored.   As such, the Debtors have determined that any continuing expense to store the Duplicate Hard Copy Loan Files is an unnecessary administrative burden on the estate.

27.    Moreover, federal regulations require that the Hard Copy Loan Files must be burned, pulverized or shredded to maintain the privacy of the consumers' confidential information.  See 16 C.F.R. § 6802. The Debtors believe that destruction or return of the Hard Copy Loan Files in accordance with the federal regulations could take several months to complete. The extensive timeframe necessitates that the Debtors begin effectuating the destruction or return as quickly as possible. The Debtors submit that destruction of the Duplicate

Hard Copy Loan Files or, alternatively, the return of the Hard Copy Loan Files to the legal

owner of the loans (upon payment of reasonable costs and expenses of retrieval, review and

return), which are duplicative of the E-Loan Files, is the most appropriate starting point.

        28.     The Debtors propose to pull the Duplicate Hard Copy Loan Files from the

Storage Facility, confirm that they are imaged on the Debtors' servers through the Barcode

System, and then destroy the Duplicate Hard Copy Loan Files in compliance with applicable

regulations. Given that each loan file will be scanned to limit the possibility that the Debtors are

not destroying non-imaged Hard Copy Loan Files, the Debtors submit that destruction of the

Duplicate Hard Copy Loan Files will not adversely affect any party in interest in this case.

        29.     In addition, the Debtors propose to deliver any Hard Copy Loan Files to

the legal owners of the underlying loans upon request by written sworn declaration (the

"Declaration") from such party to the Debtors via first class mail or e-mail as follows: 538

Broadhollow Road, Melville, NY 11747; (Chris.Cavaco@americahm.com); Attn. Chris Cavaco.

Each Declaration must, at a minimum, include: (i) a list by loan number of each loan file

requested; (ii) the name and contact information of the requesting party and a contact person;

(iii) a sworn declaration that such party legally owns each loan requested and that the declarant

has the requisite corporate authority to make such a declaration; and (iv) attestation that the party

shall pay all reasonable costs and expenses of retrieval, review and return of such loan files,

including labor and third party costs and expenses. The Debtors are requesting authorization to

honor written requests after receipt of a proper Declaration (without a commitment as to when

such files will be returned). However, as the Debtors are requesting authorization to begin the

destruction of the Duplicate Hard Copy Loan Files immediately, the Debtors may be unable to

honor a late request if the requested Hard Copy Loan File has been destroyed.

30.    For all of the foregoing reasons, the Debtors submit that their decision to abandon and destroy the Duplicate Hard Copy Loan Files or, alternatively, to return the Returned Loan Files is the product of the Debtors' sound business judgment and should therefore be approved.

## NOTICE

31.    Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Agent for the Debtors' Postpetition Lender; (v) the offices of the attorneys general of the fifty states and the District of Columbia; (vi) the Federal Trade Commission; (vii) all parties that hold an interest in the Hard Copy Loan Files; (viii) the class action plaintiffs; (ix) Wilbur Ross; (x) the Securities and Exchange Commission; (xi) the Storage Facility; and (xii) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

32.    No previous request for the relief sought in this Motion has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order (i) authorizing the Debtors to abandon and destroy the Duplicate Hard Copy Loan Files; (ii) authorizing the Debtors to expend funds of the estate for the purpose of disposing the Duplicate Hard Copy Loan Files; (iii) authorizing the Debtors to return Hard Copy Loan Files to the legal owners of the underlying loans; and (iii) granting the Debtors any further relief that the Court deems just and proper.

Dated: December 14, 2007
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

_____
James Patton (No. 2202)
Pauline Morgan (No. 3650)
Sean M. Beach (No. 4070)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to Debtors and Debtors in Possession