IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,

    Debtors.

------------------------------------------------------------------ x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

Hearing Date: January 4, 2008 at 11:00 a.m. (ET)
Objection Deadline: December 26, 2007 at 4:00 p.m. (ET)

## MOTION OF THE DEBTORS FOR APPROVAL OF SETTLEMENT AGREEMENT WITH THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS PURSUANT TO SECTIONS 105, 362 AND 553 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 4001(d) AND 9019

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] by this motion (the "Motion"), seek entry of an order, pursuant to sections 105, 362 and 553 of title 11 of the United States Code, §§ 101-1330 (the "Bankruptcy Code" ) and Rules 4001(d) and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order approving the settlement agreement by and between the Debtors and the Texas Comptroller of Public Accounts (the "Texas Comptroller" and together with the Debtors, the "Parties"), a copy of which is attached

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

as <u>Exhibit A</u> (the "<u>Settlement Agreement</u>") to the Order annexed hereto. In support of this Motion, the Debtors, by and through their attorneys, respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Rules 4001(d) and 9019 and Bankruptcy Code section 105(a).

## BACKGROUND

2. On August 6, 2007 (the "<u>Petition Date</u>"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>"). No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS

5. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and

sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

9. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

10. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

### THE SETTLEMENT AGREEMENT

11. Prior to the Petition Date, the Debtors conducted operations in many states, including Texas. As part of its taxing obligations with respect to the state of Texas, the Debtors were required to pay certain franchise taxes.

12. The Debtors and the Texas Comptroller have determined that a Texas franchise tax credit in the amount of $1,919,729.65, plus additional interest accruing at a rate of 5.066 % from December 14, 2007 through December 31, 2007, and then at the rate set by Texas Tax Code Sec. 111.064 from January 1, 2008, through the date of payment pursuant to the Settlement Agreement (the "Tax Credit"), exists for the 2006 tax year. Further, the Debtors and the Texas Comptroller have determined that a franchise tax liability in the amount of $134,939.33, plus additional interest accruing at a rate of 9.25 % from December 14, 2007 through December 31, 2007, and then at the rate established by Texas Tax Code Sec. 111.060

4

from January 1, 2008, through the date of payment pursuant to the Settlement Agreement (the "Tax Liability"), exists for the 2007 tax year.

13. In the best interest of the Debtors, their creditors and their estates, the Debtors have reached an agreement whereby the automatic stay imposed by Section 362 of the Bankrutpcy Code shall be lifted for the sole and express purpose of permitting the setoff of the Tax Credit and the Tax Liability pursuant to Section 553 of the Bankrutpcy Code. Pursuant to, and as a result of, the setoff, the Texas Comptroller and the Debtors agree that the Debtors are owed $1,780,937.50 (the "Net Tax Credit"), which amount is subject to slight variation because of interest accruing on both the Tax Credit and the Tax Liability. The Texas Comptroller has agreed to pay the Debtors the Net Tax Credit in full in cash within ten (10) business days of the entry of an order approving the Settlement Agreement.

## RELIEF REQUESTED

14. By this Motion, the Debtors seek entry of an order, pursuant to Bankruptcy Code sections 105, 362 and 553, and Bankruptcy Rules 4001(d) and 9019, approving the Settlement Agreement, and authorizing the Debtors and the Texas Comptroller to setoff mutual prepetition debts.

## BASIS FOR RELIEF REQUESTED

**A.  The Texas Comptroller is Entitled to Limited Relief From the Automatic Stay to Exercise the Right of Setoff**

15. "Section 553(a) recognizes and preserves the right of setoff where four conditions exist: (1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable." In re APF Co., et al., 264 B.R. 344, 354 (Bankr. D. Del. 2001).

16. Under section 362(d)(2) of the Bankruptcy Code, on request of a party in interest, the court shall grant relief from the automatic stay for cause. Under section 363(b) of the Bankruptcy Code, a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In general, a debtor may enter into a proposed transaction outside the ordinary course of business where the transaction represents an exercise of the debtor's sound business judgment. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 517 (7th Cir. 1991)); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 398 (Bankr. W.D. Pa. 1991).

17. The Debtors believe that the Texas Comptroller is entitled limited relief from the automatic stay to exercise the remedy of offset. See Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18-19 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553 provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.").

18. Parties owing mutual debts are permitted to state the account between them, to subtract the one from the other, and to pay only the balance. This practice is grounded in avoiding the absurdity of "making A pay B when B owes A." Matter of Bevill, Bresler & Schulman Asset Management, 896 F.2d 54, 57 (3d Cir. 1990); In re Metco Mining and Minerals, Inc., 171 B.R. 210, 216 (W.D. Pa 1994). The central premise behind the doctrine of setoff is "an ancient one well-grounded in practical logic: If A is indebted to B, and B is likewise indebted to

6

A, it makes sense simply to apply one debt in satisfaction of the other rather than require A and B to satisfy their mutual liabilities separately." In re Continental Airlines, 134 F.3d 536, 539 (Bankr. Del. 1998). In order for there to be mutuality, "each party must own his claim to his own right severally, with the right to collect in his own name against the debtor in his own right and severally." Metco, 171 B.R. at 217.

19.     The Debtors believe that the setoff agreement contemplated by the Settlement Agreement is valid under Section 553(a). First, the requirement of mutuality is satisfied. The Debtors are indebted to the Texas Comptroller on account of franchise taxes owed to the state of Texas for the 2007 tax year, and the Texas Comptroller is indebted to the Debtors on account of a tax credit with respect to Texas franchise taxes for the 2006 tax year. Second, the obligations of both the Debtors and the Texas Comptroller described in the Settlement Agreement arose prior to the Petition Date.[2] Finally, the obligations of both the Debtors and the Texas Comptroller are valid and enforceable.

**B.     The Settlement Agreement Represents a Reasonable Resolution of the Texas Comptroller's Setoff Rights.**

20.     Compromises are favored by bankruptcy courts. See In re Sassalos, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise . . . rests in the sound discretion of the judge."). Under Bankruptcy Rule 9019(a), the Court has the authority to approve a settlement if it is fair and equitable and in the best interests of the estate. See In re Louise's Inc., 211 B.R. 798 (D. Del. 1997); Fischer v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997). In considering whether to approve a compromise or settlement, a court must assess and balance the value of the claim that is being compromised against the

---

[2] The Texas franchise tax accrues on January 1st of each year.

7

value to the estate of accepting the compromise. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). Among other things, a bankruptcy court should consider: "1) The balance between the likelihood of success compared to the present and future benefits offered by the settlement; 2) Prospect of complex and protracted litigation if settlement is not approved; . . . and 3) The extent to which settlement is the product of arm's length bargaining." Fischer v. Pereira, 209 B.R. at 620 (quoting Nellis v. Shugrue, 165 B.R. 115, 122 (S.D.N.Y. 1994)).

21. The Debtors believe that the Settlement Agreement is fair and reasonable and is in the best interests of the Debtors, their creditors and their estates. The Texas Comptroller has communicated to the Debtors its desire to make a payment on account of the Net Tax Credit. However, the Texas Comptroller will not make such payment if it jeopardizes its right to effectuate a setoff. The Settlement Agreement avoids the administrative burden associated with requiring the Texas Comptroller to draft and file a motion requesting the authority to exercise its right of setoff, to which the Debtors would be required to respond. Further, approval of the Settlement Agreement will ensure that the Debtors receive the Net Tax Credit from the Texas Comptroller without any further delay.

22. The Settlement Agreement was negotiated at arm's length, and both the Debtors and the Texas Comptroller carefully scrutinized the amount and legitimacy of each other's alleged claim. The Debtors submit that the terms of the Settlement Agreement are fair and reasonable and in the best interests of the Debtors and their estates. Accordingly, the Debtors respectfully request that this Court approve the Settlement Agreement.

## NOTICE

23.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America; (iv) counsel to the Agent for the Debtors' Postpetition Lender; (v) the Texas Comptroller and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

24.     No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the Court enter an order approving the Motion substantially in the form annexed hereto and grant such other and further relief as it deems necessary and proper.

Dated: Wilmington, Delaware
December 14, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ 

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession