IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> AMERICAN HOME MORTGAGE HOLDINGS, INC., et al., <br><br> Debtors. | Chapter 11 <br><br> Case No. 07-11047 (CSS) <br> (Jointly Administered) <br><br> Re: Docket No. 2224 |

**GMAC MORTGAGE LLC'S RESPONSE TO MOTION OF FINANCIAL GUARANTY INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY**

GMAC Mortgage LLC ("GMACM"), by and through its undersigned counsel, hereby submits its Response ("Response") to the Motion of Financial Guaranty Insurance Company for Relief from the Automatic Stay (D.I. 2224; the "Motion")[1], and in support hereof states as follows:

1. GMACM is the back-up servicer (the "Back-Up Servicer") with respect to a securitized portfolio of home equity line of credit mortgage loans (collectively, "2005-1 HELOCs") known as the Series 2005-1 HELOC loan portfolio (the "2005-1 HELOCs") pursuant to the HELOC Back-Up Servicing Agreement dated March 23, 2005 among GMACM, as Back-Up Servicer, American Home Mortgage Trust 2005-1, as Issuer, and Deutsche Bank National Trust Company, as Indenture Trustee (the "2005-1 Back-Up Servicing Agreement") and the HELOC Servicing Agreement dated March 23, 2005 among GMACM, as Back-Up Servicer, American Home Mortgage Servicing, Inc. ("AHM Servicing"), as HELOC Servicer, American Home Mortgage Trust 2005-1, as Issuer, Deutsche Bank National Trust Company, as Indenture

---

[1] Any capitalized term used in this Response without definition shall have the definition contained in the Motion.

Trustee, and American Home Mortgage Acceptance, Inc. ("AHMA"), as Seller (the "2005-1 Servicing Agreement").

2. GMACM is the Back-Up Servicer with respect to a securitized portfolio of home equity line of credit mortgage loans (collectively, "2005-2 HELOCs") known as the Series 2005-2 HELOC loan portfolio (the "2005-2 HELOCs") pursuant to the HELOC Back-Up Servicing Agreement dated June 22, 2005 among GMACM, as Back-Up Servicer, American Home Mortgage Investment Trust 2005-2, as Issuer, and Deutsche Bank National Trust Company, as Indenture Trustee (the "2005-2 Back-Up Servicing Agreement") and the HELOC Servicing Agreement dated June 22, 2005 among GMACM, as Back-Up Servicer, AHM Servicing, as HELOC Servicer, American Home Mortgage Investment Trust 2005-2, as Issuer, Deutsche Bank National Trust Company, as Indenture Trustee, and AHMA, as Seller (the "2005-2 Servicing Agreement").

3. GMACM is the Back-Up Servicer with respect to a securitized portfolio of home equity line of credit mortgage loans (collectively, "2005-4A HELOCs") known as the Series 2005-4A HELOC loan portfolio (the "2005-4A HELOCs" and collectively with the 2005-1 HELOCs and the 2005-2 HELOCS, the "HELOCS") pursuant to the HELOC Back-Up Servicing Agreement dated October 7, 2005 among GMACM, as Back-Up Servicer, American Home Mortgage Trust 2005-4A, as Issuer, and U.S. Bank National Association, as Indenture Trustee (the "2005-4A Back-Up Servicing Agreement" and collectively with the 2005-1 Back-Up Servicing Agreement and the 2005-2 Back-Up Servicing Agreement, the "Back-Up Servicing Agreements") and the HELOC Servicing Agreement dated October 7, 2005 among GMACM, as Back-Up Servicer, AHMA, as HELOC Servicer, American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, and AHMA, as Seller

(the "2005-4A Servicing Agreement" and collectively with the 2005-1 Servicing Agreement and the 2005-2 Servicing Agreement, the "Servicing Agreements").

4. The 2005-1 HELOCs, the 2005-2 HELOCS and the 2005 4-A HELOCS (collectively, the "HELOCS") were issued by one or more of the Debtors and thereafter sold to the Trusts[2] pursuant to various documents and agreements, including the Mortgage Loan Purchase Agreement dated March 23, 2005 between American Home Mortgage Securities LLC, as Purchaser, and AHMA, as Seller (the "2005-1 MLPA")[3], the Mortgage Loan Purchase Agreement dated June 22, 2005 between American Home Mortgage Securities LLC, as Purchaser, and AHMA, as Seller (the "2005-2 MLPA")[4], and the Mortgage Loan Purchase Agreement dated October 7, 2005 between Bear Stearns Backed Securities I LLC, as Purchaser and AHMA, as Seller (the "2005-4A MLPA" and collectively with the 2005-1 MLPA and 2005-2 MLPA, the "MLPAs")[5], many of which are attached as exhibits to the Motion (respectively referred to as either the "2005-1 HELOC Documents," the "2005-2 HELOC Documents," or the "2005-4A HELOC Documents" and collectively, the "HELOC Documents").

5. Pursuant to the 2005-1 MLPA, the 2005-2 MLPA and the 2005-4A MLPA (collectivley, the "MLPAs"), AHMA sold to a Trust and such Trust acquired and currently owns certain of the HELOCs and the Additional Balances (as that term is defined in the HELOC Documents associated with the respective Trusts) under the HELOCs. See MLPAs at Section 2.1(a).

---

[2] The Trusts issued various notes (the "Notes") that are "backed by" or that rely upon the HELOCs and collections thereunder as a source of payment with respect to the Notes.
[3] A true and correct copy of the 2005-1 MLPA is attached hereto as Exhibit A.
[4] A true and correct copy of the 2005-2 MLPA is attached hereto as Exhibit B.
[5] A true and correct copy of the 2005-4A MLPA is attached hereto as Exhibit C.

6. Although each Trust acquired certain of the HELOCs, AHMA retained, and the Trusts did not assume, any obligation under any HELOC to fund any future draw requests by borrowers under the HELOCs (collectively, the "HELOC Borrowers"). See MLPAs at Section 2.1(a). The MLPAs specifically provide that the purchaser thereunder (i.e. the Trusts) is not obligated or permitted to fund any future draws under the HELOCs. Accordingly, the obligation to fund any draw requests under the HELOCs remains and has always been an obligation of AHMA.

7. HELOCs are different from other types of mortgage loans because they operate in a similar fashion to revolving lines of credit. So long as no default exists under the HELOC, the borrower under the HELOC (a "HELOC Borrower") is permitted to borrow up to the borrowing limit and thereafter re-borrow principal amounts that he or she previously repaid. The "lender" under the HELOCs is AHMA (the "Lender").

8. Each Trust issued notes to its investors which are backed by the HELOCs owned by such Trust and the stream of mortgage payments made thereunder.

9. Financial Guaranty Insurance Company ("FGIC") is the insurer under certain insurance policies (the "FGIC Policies") that insure the payment of the notes issued by the Trusts.

10. As previously indicated, AHM Servicing serves as the servicer of the 2005-1 HELOCs and the 2005-2 HELOCs and AHMA serves as the servicer of the 2005-4A HELOCs pursuant to the Servicing Agreements.

11. Under the HELOC Documents, prior to the occurrence of a "Rapid Amortization Event", the servicer may use a portion of the principal and interest payments collected from the HELOC Borrowers to honor draw requests made under the HELOCs. To the extent that such

funds are insufficient to cover the draw requests or to the extent that a Rapid Amortization Event has occurred, the Lender is obligated to fund that portion of the draw request that the Trust funds do not cover.

12. As stated in the Motion and the Complaint, GMACM, at the instruction of FGIC, properly terminated the AHM Servicing and AHMA as servicers under the respective Servicing Agreements on or about August 2, 2007 (prior to the Petition Date), by sending a notice of such termination to AHM Servicing or AHMA, as the case may be. While the Debtors have disputed whether the termination of the servicers was properly effectuated, GMACM is unaware of any challenge by either AHM Servicing or AHMA as to the form of notice provided to them by GMACM.

13. As stated in the Motion and Complaint, FGIC believes that a "HELOC Servicer Termination Event" occurred under the HELOC Documents due to, among other things, the payment performance of the HELOCs, the cumulative losses that have resulted from such payment performance and because AHMA and AHM Servicing have failed to fulfill their contractual responsibilities under the Servicing Agreements, including, without limitation, the failure of American Home Mortgage Investment Corp. and its consolidated subsidiaries to have a Tangible Net Worth (as defined in the Servicing Agreements and related Indentures) of at least $530 million.[6]

14. According to the HELOC Documents, upon the occurrence of a HELOC Servicer Termination Event, a "Rapid Amortization Event" automatically (and without the need to provide notice to the Servicer) occurs. Following the occurrence of a Rapid Amortization Event,

---

[6] GMACM is without sufficient information to determine whether a HELOC Servicer Termination Event has occurred.

all collections from the HELOCs (net of the fees and expenses of the servicer and the Back-Up Servicer) are to be paid into the Trusts and used to pay down the principal and interest due under the Notes. Thus, following a Rapid Amortization Event, the collections on account of the HELOCs are not allowed to be used to fund draw requests by the HELOC Borrowers. According to FGIC, AHMA and AHM Servicing ignored or failed to acknowledge the termination of the Servicing Agreements and the occurrence of HELOC Servicer Termination Events and Rapid Amortization Events and, in contravention of the Servicing Agreements, used some of the amounts paid to it by HELOC Borrowers on account of the HELOCs to fund, in part, draw requests by HELOC Borrowers. According to the Motion, this practice by AHMA and AHM Servicing resulted in more than $3,000,000 of collections being diverted from the Trusts through October, 2007.

15.  The Debtors sold the bulk of their mortgage loan servicing business (the "Servicing Business") to AH Mortgage Acquisition Co., Inc. (the "Purchaser"). The sale of the Servicing Business is to occur in two parts - an initial or economic closing, which occurred on November 16, 2007, and a final or legal closing anticipated to occur sometime in early 2008. Originally the servicing rights, if any, of AHMA and AHM Servicing, under the Servicing Agreements were to be sold to the Purchaser in connection with the sale of the Servicing Business. However, on the morning of the sale hearing, the Debtors, without any prior notice to GMACM or to FGIC or to anyone else with an interest in the HELOCs or the HELOC Documents, withdrew the servicing rights under the Servicing Agreements from the assets to be sold to the Purchaser. As far as GMACM is aware, the Debtors have not entered into any other agreements or filed any other motions to sell or otherwise address their servicing rights, if any, under the Servicing Agreements. Upon and following the final closing of the Servicing

Business, the Debtors will lack the ability to service the HELOCs inasmuch as their entire servicing operation will be transferred to the Purchaser.

16. GMACM believes that the Lender is no longer making loans to fund draw requests under the HELOCs. In addition, GMACM believes that the HELOC Borrowers have not received any notice from any Debtor that the HELOCs are "frozen" and that no further draw requests thereunder will be honored. This presents a very serious issue in that individual HELOC Borrowers may be incurring obligations believing that they can draw on their HELOC to fund such obligations.

17. As expressed in the Motion, FGIC desires a lifting of the automatic stay so that AHMA and AHM Servicing may be terminated as servicers under the Servicing Agreements, which may ultimately result in GMACM becoming the servicer of the HELOCs.

18. GMACM can neither admit nor deny a number of factual allegations contained in the Motion; however, GMACM is prepared to take over as servicer under the Servicing Agreements provided that it is accorded the authority to do so by this Court and by AHMA and AHM Servicing (in their capacity as servicers), which are currently in possession of the files, books, records and funds pertaining to the HELOCs.

19. While GMACM is prepared to meet its obligations under the Servicing Agreements and the Back-Up Servicing Agreements, its obligation is to take over the servicing of the HELOCs, *not to advance any funds in order to meet draw requests made by HELOC Borrowers.* Further, because a Rapid Amortization Event may have occurred,[7] the servicer of

---

[7] GMACM is not taking a position as to whether a Rapid Amortization Event occurred. However, to the extent that a Rapid Amortization Event has occurred, GMACM, as the new servicer, is not obligated to and thus has no intention of funding draw requests under the HELOCs. Inasmuch as GMACM has no obligation to and has no intention of taking over as Lender, GMACM, as the new servicer, believes that the HELOC Borrowers have
Continued on following page

the HELOCs is not permitted to use any of the payments made on account of the HELOCs to fund draw requests. Thus the HELOCs will no longer "revolve". It is GMACM's view that the HELOC Borrowers should be notified of this situation so that they do not rely on the HELOCs to fund any obligations they may incur. AHMA should be required to send a notice to the HELOC Borrowers since AHMA is the Lender under the HELOCs.

20. Further, AHMA and AHM Servicing must comply with Servicing Agreements as they relate to the transfer of servicing to GMACM, or any other successor servicer, including, without limitation, cooperating with GMACM in effecting the termination of AHMA's and AHM Servicing's responsibilities and rights including, without limitation, the transfer to GMACM or the successor servicer for administration by it of (i) the property and amounts which are then or should be part of the Trust Estates or which thereafter become part of the Trust Estates; (ii) originals or copies of all documents of the servicer reasonably requested by GMACM to enable it to assume the servicers' duties thereunder; (iii) the rights and obligations of the servicers with respect to the HELOCs; (iv) all cash amounts which shall at the time be deposited by the servicer or should have been deposited to the Collection Account or the Payment Account (as those terms are defined in the HELOC Documents) or thereafter be received with respect to the HELOCs; and (v) all costs or expenses associated with the complete transfer of all servicing data and the completion, correction or manipulation of such servicing data as may be required by GMACM or any successor servicer to correct any errors or insufficiencies in the servicing data or otherwise to enable GMACM or the successor servicer to service the HELOCs properly and effectively. In addition, AHMA and AHM Servicing must

---

Continued from previous page
    the right to be notified that the HELOCs are "frozen" and that no further loans will be made to such HELOC Borrowers thereunder.

pay all reasonable costs and expenses (including, but not limited to, attorneys' fees and disbursements) incurred by GMACM or a successor servicer in connection with its succession as servicer.

21. For all of the foregoing reasons, GMACM concurs with the Motion to the extent that it seeks relief from the automatic stay so that GMACM may take over as servicer with respect to the HELOCs; however GMACM requests additionally that this Court direct the Debtors to take the actions specified in paragraphs 19 and 20 of this Response in connection therewith.

WHEREFORE, GMAC Mortgage LLC respectfully requests that the Court enter an Order in the form attached hereto (i) modifying the automatic stay to permit FGIC and GMACM and any other non-Debtor parties to the Servicing Agreements, Back-Up Servicing Agreements and any other HELOC Documents to take any and all actions necessary to terminate AHMA and AHM Servicing as servicers thereunder; (ii) directing AHMA and AHM Servicing to comply with the Servicing Agreements as they relate to the transfer of servicing to GMACM, or any other successor servicer; (iii) directing AHMA to send a notice to the HELOC Borrowers that the HELOCs are "frozen" and that no further loans will be made to such HELOC Borrowers thereunder; and (iv) granting such other and further relief as the Court deems appropriate, just and proper.

Dated: December 17, 2007
      Wilmington, Delaware

REED SMITH LLP

By:   /s/ Kimberly E. C. Lawson
Kimberly E. C. Lawson (No. 3966)
1201 Market Street; Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: klawson@reedsmith.com

and

Robert P. Simons
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-7294
Facsimile: (412) 288-3063

and

Claudia Z. Springer
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420

Attorneys for GMAC Mortgage LLC