**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case No. 07-11047-CSS |
| **HOLDINGS, INC., et. al.,** | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | Objection Deadline: December 28, 2007, at 4:00 p.m. (ET) |
| | ) | |
| | ) | Hearing Date: January 4, 2008, at 11:00 a.m. (ET) |
| | ) | |

**MOTION OF ASSURED GUARANTY CORP.**
**FOR RELIEF FROM THE AUTOMATIC STAY**

Pursuant to 11 U.S.C. § 362(d), Assured Guaranty Corp. ("Assured") hereby moves (the "Motion") the Court for an order, in the form attached hereto, modifying the automatic stay to permit the termination and transition of the rights and responsibilities of American Home Mortgage Servicing, Inc. ("AHM Servicing") as servicer under the HELOC Servicing Agreement dated as of March 13, 2007 by and among AHM Servicing, GMAC Mortgage, LLC as successor by merger to GMAC Mortgage Corporation ("GMAC"), as back-up servicer, American Home Mortgage Investment Trust 2007-A (the "2007-A Trust"), as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), as sponsor (the "2007-A HELOC Servicing Agreement") (Exhibit A hereto). As grounds for this Motion, Assured respectfully represents as follows:

**BACKGROUND**

1.  On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code. The Debtors' cases are being jointly administered pursuant to an order of this Court entered on August 7, 2007.

2.  Prior to filing for bankruptcy relief, AHM Servicing was the contract servicer of certain home equity line of credit mortgage loans ("HELOC Mortgage Loans") under the 2007-A HELOC Servicing Agreement which was delivered in connection with the American Home Mortgage Investment Trust 2007-A securitization transaction (the "Assured Securitization").

3.  The 2007-A Trust established in the Assured Securitization acquired and owned HELOC Mortgage Loans and issued securities that are "backed" by, or that rely directly on, the HELOC Mortgage Loans and related collections owned by the 2007-A Trust as the source of payment. Assured insured certain of the securities issued by the 2007-A Trust, relies directly on the HELOC Mortgage Loans for payment on such securities and will be harmed if collections on the HELOC Mortgage Loans are insufficient or interrupted. Likewise, Assured is an express third party beneficiary under the 2007-A Servicing Agreement and holds rights against AHM Servicing under the 2007-A HELOC Servicing Agreement.[1] Deutsche Bank was

---

[1]  Additionally, the Insurance and Indemnity Agreement dated as of March 13, 2007, by and among Assured, American Home Mortgage Securities, LLC, American Home Mortgage Investment Corp. ("AHM Investment"), AHM Acceptance, the 2007-A Trust, AHM Servicing, GMAC and Deutsche Bank National Trust Company ("Deutsche Bank") in connection with the Assured Securitization (Exhibit B hereto), contains the acknowledgement of AHM Servicing, among others, that Assured has rights under the 2007-A Servicing Agreement and is a third-party beneficiary with respect to such rights. The Insurance Agreement also incorporates and restates the representations, warrants and covenants of AHM Servicing made in the 2007-A Servicing Agreement for the benefit of Assured that the HELOC Mortgage Loans would be serviced by AHM Servicing in compliance with the 2007-A Servicing Agreement.

appointed as and is serving as the Indenture Trustees under the Indenture related to the Assured Securitization and GMAC is the back-up servicer pursuant to the HELOC Back-Up Servicing Agreement dated as of March 13, 2007 among GMAC, as back-up servicer, the 2007-A Trust, as issuing entity, and Deutsche Bank, as the Indenture Trustee (Exhibit C hereto).

4. On the Petition Date, the Debtors filed a motion (the "<u>Sale Motion</u>") seeking approval to sell the Debtors' mortgage loan servicing business (the "<u>Servicing Business</u>"). The Debtors also filed a form of asset purchase agreement. The Debtors subsequently proposed AH Mortgage Acquisition Co., Inc. (the "<u>Purchaser</u>") as the sole bidder for the Servicing Business and filed a separate asset purchase agreement (the "<u>APA</u>") among American Home Mortgage Investment Corp., American Home Mortgage Corp., AHM Servicing and the Purchaser, together with several exhibits and schedules thereto.

5. On September 10 2007, the Debtors filed a notice (the "<u>Assumption Notice</u>") purporting to include the 2007-A HELOC Servicing Agreement among the contracts sought to be assumed and assigned by the Debtors and the proposed APA included the 2007-A HELOC Servicing Agreement in its schedules as a contract to be assumed and assigned to the Purchaser. Assured filed an objection to the sale motion and actively participated in discovery and other pre-hearing proceedings culminating in the October 15, 2007 hearing on the Sale Motion (the "<u>Sale Hearing</u>").

6. Despite inclusion of the 2007-A HELOC Servicing Agreement in the Assumption Notice and APA, on the morning of the Sale Hearing, the Debtors' announced on the record that they would not be seeking approval for the sale of the 2007-A HELOC Servicing Agreement (and certain other servicing agreements related to mortgage pools containing HELOCs) and thereafter filed a second notice of contracts to be excluded from the sale (the

"Second Notice of Excluded Contracts") which excluded the 2007-A HELOC Servicing Agreement from the Sale Motion and the proposed sale to the Purchaser. The APA was also amended by a First Amendment to the APA to exclude the 2007-A HELOC Servicing Agreement (among others) from the assets to be assigned and sold to the Purchaser.

7. Following a week-long hearing on the Sale Motion, on October 30, 2007, the Court entered an order approving the sale of the Debtors' Servicing Business to the Purchaser. The sale to the Purchaser will close in two steps—an "initial" or economic closing, which occurred on November 16, 2007, and a "final" or legal closing, which may occur in as soon as "a few months".[2]

8. Upon the initial closing under the APA, the Debtors' post-petition financing facility was replaced with a DIP facility provided by the Purchaser. The Purchaser's DIP Facility was approved by the Court on an interim basis on November 14, 2007. While the Purchaser's DIP facility provides financing to the Debtors to operate the Servicing Business pursuant to the APA during the interim period between the initial and final closings under the APA, the DIP facility does not provide financing to the Debtors for obligations under the 2007-A HELOC Servicing Agreement or the other HELOC Servicing Agreements previously excluded from the sale.

## JURISDICTION

9. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] *See* Debtors' Motion for Interim and Final Orders Authorizing Certain Debtors to Obtain Limited Recourse Postpetition Financing from Purchaser (D.I. 1967), at page 7 ("The Initial Closing (at which the Purchaser will pay the Purchase Price) is expected to occur in mid-November. The Final Closing (at which legal title to the Purchased Assets will pass to the Purchaser), however, is not expected to occur for at least a few months.").

**RELIEF REQUESTED**

10. By this Motion, Assured seeks entry of an order modifying the automatic stay arising under Section 362 of the Bankruptcy Code to allow Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement to take any and all actions necessary to terminate and transfer AHM Servicing's rights as servicer under the 2007-A HELOC Servicing Agreement. Assured is entitled to the relief requested herein because, among other things, (i) after the sale of the Servicing Business, the Debtors will have neither a source of funding nor the operational ability to service the HELOC Mortgage Loans; (ii) there is now insufficient time for the Debtors to request any assumption or other transfer of the 2007-A HELOC Servicing Agreement by separate motion while protecting Assured's rights and interests; and (iii) continuing defaults exist under the 2007-A HELOC Servicing Agreement which directly and negatively impact Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement.

**CAUSE EXISTS FOR GRANTING RELIEF FROM THE AUTOMATIC STAY**

11. The automatic stay may be modified pursuant to Section 362(d) of the Bankruptcy Code if "cause" exists. 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code and is determined by courts in this district on a case by case basis. In re Rexene Prods. Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citation omitted); see also In re Baldino, 116 F.3d 87, 90 (3d Cir. 1997) (stating that courts consider cause based upon "the totality of the circumstances in each particular case"). The legislative history of Section 362(d) indicates that "cause may be established by a single factor." In re Rexene Prods. Co., 141 B.R. at 576.

12. Courts have identified a number of factors to be considered in a determination of "cause." The following factors are especially applicable in this case and weigh decidedly in favor of granting Assured the relief requested herein: (i) the harm to the movant resulting from continuation of the stay outweighs any harm that may be suffered by the debtor if the stay is lifted; (ii) the debtor's inability to assume a contract and (iii) the debtor's continued postpetition defaults under a contract cause material harm to the non-debtor party. See, e.g., Peerless Ins. Co. v. Rivera, 208 B.R. 313, 315–18 (D. R.I. 1997) (granting relief from stay when harm suffered by non-debtor outweighed harm to debtor); In re Tudor Motor Lodge Assoc., Ltd. P'ship, 102 B.R. 936, 956–57 (Bankr. D. N.J. 1989) (stay lifted to permit non-debtor to terminate license agreement due to debtor's postpetition defaults); In re Future Growth Enters., Inc., 61 B.R. 469, 472 (Bankr. E.D. Pa. 1986) (granting relief from stay where debtor could not cure and, thus, could not assume, a contract).

13. Cause exists to grant Assured relief from the automatic stay. As set forth below, the harm to Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement resulting from continuation of the stay outweighs any harm that may be suffered by the Debtors if the stay is lifted. Additionally, for the reasons set forth below, including the timing of the final sale under the APA and continuing defaults, AHM Servicing is unable to assume and assign the 2007-A HELOC Servicing Agreement. Finally, the Debtors' continued defaults under the 2007-A HELOC Servicing Agreement threaten continued harm to Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement.

A. <u>Assured Is At Material Economic Risk After The Initial Closing Under The APA</u>

14. The relief requested herein must be granted because Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement are at material economic risk after

6

the initial closing under the APA, which occurred on November 16, 2007. The Debtors do not have financing to support the servicing of the HELOC Mortgage Loans.

15.   The scope and purpose of the financing to be provided by the Purchaser to the Debtors under the Purchaser's DIP facility does not include AHM Servicing's costs and expenses associated with servicing the HELOC Mortgage Loans subject to the 2007-A HELOC Servicing Agreement. To the contrary, the Purchaser's DIP facility is designed to protect only the Purchaser's interest in the Servicing Business and servicing contracts purchased under the APA, which do not include the 2007-A HELOC Servicing Agreement. Moreover, the permitted use of funds under the Purchaser's DIP facility is expressly limited to costs and expenses to operate the Servicing Business purchased under the APA which, as the "Servicing Business" is defined in the APA as amended by the First Amendment, does not include (and in fact appears to expressly exclude) the 2007-A and other HELOC Servicing Agreements and expenses associated with servicing the HELOC Mortgage Loans. Accordingly, after the initial closing under the APA, AHM Servicing lacks the financing to support the servicing of the HELOC Mortgage Loans under the 2007-A Servicing Agreements. A lack of financing to support servicing of the HELOC Mortgage Loans creates a substantial risk to Assured and jeopardizes the ability of AHM Servicing adequately to service the HELOC Mortgage Loans under the 2007-A HELOC Servicing Agreement.

16.   In addition, while the 2007-A Trust purchased and owns the HELOC Mortgage Loans, the Trust did not assume the obligation to fund additional draws by borrowers under the HELOC Mortgage Loans. Instead, at the closing of the Assured Securitization AHM Acceptance (or another Debtor entity) retained, and still has, the obligation to fund additional draws by borrowers under the HELOC Mortgage Loans. However, the scope of the Purchaser's DIP facility does not provide the Debtors with the ability to fund additional draws by borrowers

under the HELOC Mortgage Loans. In fact, in the First Amendment to the APA the Debtors that are parties thereto expressly agreed (contrary to the interests of Assured, non-debtor parties to the 2007-A HELOC Servicing Agreement and borrowers under the HELOC Mortgage Loans) not to use proceeds of the Servicing Business subject to the APA to fund additional draws by borrowers under the HELOC Mortgage Loans.

17. Accordingly, the Debtors have no financing to support servicing under the 2007-A HELOC Servicing Agreement and Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement are at material economic risk. Assured relies on competent servicing under the 2007-A HELOC Servicing Agreement, including continued servicing advances, and uninterrupted collections on the HELOC Mortgage Loans. The harm to Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement in continuing the automatic stay outweighs any harm that may be suffered by the Debtors if the stay is lifted. In contrast, lifting the stay would not cause any significant harm to the Debtors. Assured should be granted immediate relief from the automatic stay to protect its interests in the HELOC Mortgage Loans.

B. <u>Assured Is At Material Economic Risk Upon The Final Closing Under The APA</u>

18. The relief requested herein must be granted because Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement are also at material economic risk upon the final closing under the APA, which may occur in as soon as a few months. The Debtors will have no servicing platform or employees to perform servicing under the 2007-A HELOC Servicing Agreement after such closing.

19. As required by the APA, the Purchaser will pay the purchase price for the Servicing Business at the initial or "economic" closing, followed by an interim period during

which the Debtors remain as servicers of the mortgage loans subject to the APA for the account of the Purchaser and the Purchaser applies for servicing licenses. Assuming completion of the Purchaser's licensing, a final or legal closing will occur pursuant to which legal title to the Debtors' servicing platform, i.e., the systems and infrastructure for the servicing business, and the vast majority of the Debtors' servicing agreements and related assets will pass to the Purchaser. The Purchaser will also retain all or substantially all of the Debtors' servicing management and staff. Thus, upon the final closing of the sale the Debtors will not have a servicing platform, servicing employees or the ability to service any mortgage loans, including the HELOC Mortgage Loans. As a result, Assured and the other parties to the 2007-A HELOC Servicing Agreement will be left with HELOC Mortgage Loans that are not being serviced. The certainty that AHM Servicing will be incapable of servicing under the 2007-A HELOC Servicing Agreement presents an unacceptable risk to Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement.

20. Moreover, because the timing of the final closing under the APA is not within the control of the Debtors, the closing date is uncertain and could occur within weeks or a few months. The final closing will be determined by the Purchaser's ability to obtain servicing licenses, and the Purchaser is very likely diligently pursuing such licenses. Based on the Debtors' motion to approve the Purchaser's DIP facility, the final closing may occur within a few months. The uncertainty, but apparent close proximity, of the timing of the final closing under the APA presents an unwarranted risk to Assured. Assured, the Indenture Trustee and GMAC need some "lead time" to accomplish the transition of servicing to GMAC. Such transition of servicing will include, among other things, performance of the following obligations by AHM Servicing:

- transferring to GMAC all documents, files, records and data related to the HELOC Mortgage Loans;

- cooperating in connection with transition of servicing to GMAC, including sending "goodbye" letters to borrowers under the HELOC Mortgage Loans directing all future collections on the HELOC Mortgage Loans to GMAC;

- providing an accounting of all amounts collected; and

- paying the costs and expenses related to the transition of servicing to GMAC.

Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement should not be forced to delay for an indeterminate amount of time the exercise of their rights in, and actions to protect the value of, the HELOC Mortgage Loans. A servicing transition must occur while there are still sufficient qualified personnel left at AHM Servicing to carry out the above-referenced obligations. Assured must be granted relief now to begin the transition of servicing to GMAC before the final closing under the APA (indeed, given the contemplated timing of the final closing, there is a risk that such transition of servicing cannot be accomplished in the time permitted).

21. The timing of the final closing also does not permit the Debtors to, as referenced in the Second Notice of Excluded Contracts, transfer the 2007-A HELOC Servicing Agreement by separate motion. Any such separate motion respecting the 2007-A HELOC Servicing Agreement would involve, at a minimum, additional notice and objection periods, and may also involve an additional marketing and bidding process. Meanwhile, the Purchaser will acquire ownership of the Debtors' servicing platform and retain the Debtors' servicing personnel, resulting in the inability of AHM Servicing to service the HELOC Mortgage Loans and material harm to Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement. Significantly, the Debtors have already agreed to transfer servicing of certain HELOC

Mortgage Loans which are the subject of a separate securitization insured by CIFG Assurance North America, Inc. to GMAC although they have not committed to a plan (either to transfer servicing of or to assume and assign) the other HELOC servicing agreements excluded from the sale.

22. AHM Servicing will also not be capable of engineering a subservicing arrangement for the HELOC Mortgage Loans with the Purchaser (or any other subservicer) after the final closing under the APA to allow Debtors additional time for a separate sale process. After the final closing, the Debtors will be incapable not only of performing the 2007-A HELOC Servicing Agreement, but also of satisfying any servicing defaults thereunder or related claims by Assured or others. Any such subservicing arrangement between the Debtors and the Purchaser (or any other subservicer) would leave Assured and others with no recourse or remedy for any servicing defaults by the Debtors and thus should not be permitted. Also, AHM Servicing will not qualify as a HELOC Servicer under the 2007-A HELOC Servicing Agreement after the final closing under the APA (indeed, after the final closing the Debtors will be incapable of performing any oversight or monitoring of a subservicer, which is less than what is required by the 2007-A HELOC Servicing Agreement). Finally, as this Court noted on the record during the October 25, 2007 hearing on the sale order relating to the Sale Motion, any subservicing arrangement by the Debtors would need to be presented by separate motion. The Debtors have failed to present any such motion in the nearly two months that have elapsed since the October 25 hearing. As set forth above, there is insufficient time for the Debtors to present a separate motion respecting the 2007-A HELOC Servicing Agreement while still protecting the rights and interests of Assured and others in the HELOC Mortgage Loans.

23. Additionally, the Debtors have dragged Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement through a lengthy and expensive motion and

bidding process and required Assured and others to, among other things, review and evaluate two forms of asset purchase agreements and two different methods of bidding procedures, file objections and participate in several depositions. In sum, the time for the Debtors to address the HELOC Mortgage Loans was before they committed to sell their servicing platform and before the planned transition of the Debtors' servicing personnel. The landscape has now changed to the detriment of Assured, based on the Debtors' own actions and sale, and Assured should not be required to remain at substantial economic risk in this context. See, e.g., In re Tudor Motor Lodge, 102 B.R. at 956 (lifting the stay to avoid subjecting creditor to additional harm during an indefinite period of time); In re Consol. Indus. Corp., 330 B.R. 227, 233–35 (Bankr. N.D. Ind. 2001) (lifting the stay to minimize creditor's losses). The harm to Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement if the stay is not lifted outweighs any harm that may be suffered by the Debtors if the stay is lifted. In contrast, lifting the stay would not cause any significant harm to the Debtors. Moreover, for the reasons set forth above, including the timing of the final sale under the APA, AHM Servicing is unable to assume and assign the 2007-A HELOC Servicing Agreement. Assured should therefore be provided with immediate relief from the automatic stay to protect its interests in the HELOC Mortgage Loans and the 2007-A HELOC Servicing Agreement.

   C. Continuing Defaults Under The 2007-A Servicing Agreement

   24. The relief requested herein should also be granted because the Debtors' continuing defaults under the 2007-A HELOC Servicing Agreement result in harm to Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement.

   25. AHM Servicing has not performed consistently with the requirements of the 2007-A HELOC Servicing Agreement. Among other things, AHM Servicing has since the

commencement of their bankruptcy cases failed to deposit certain collections on the HELOC Mortgage Loans into the appropriate account as required by the 2007-A HELOC Servicing Agreement, but instead has improperly diverted such collections to allow funding of new draws by borrowers under the HELOC Mortgage Loans. The 2007-A HELOC Servicing Agreement requires that where, as here, a "Rapid Amortization Event" occurs under the Indenture in the Assured Securitization, all collections be applied to payment of principal and interest on the insured securities in the Assured Securitization. Instead, upon information and belief, since September 2007, AHM Servicing has diverted millions of dollars in collections on the HELOC Mortgage Loans outside of the 2007-A Servicing Agreement and away from holders of insured securities for their own benefit. The Debtors' improper disposition of collections is slowing the amortization of the outstanding securities to Assured's detriment.

26. Additionally, so long as AHM Servicing is permitted to service the HELOC Mortgage Loans, AHM Acceptance will continue to avoid funding draws under the HELOC Mortgage Loans with its own funds (as opposed to the improper use of collections on the HELOC Mortgage Loans to fund such draws), Assured's exposure with respect to the insured securities in the Assured Securitization will continue to increase and Assured's claims against AHM Servicing will continue to increase.

27. Assured also believes, for reasons similar to those set forth in the motion for relief of CIFG Assurance North America, Inc. (D.I. 1955), filed in a similar context to this Motion, that there is no value for the estate in the 2007-A HELOC Servicing Agreement in the Assured Securitization. This conclusion is further supported by the previous failed attempt of the Debtors to transfer the 2007 A HELOC Servicing Agreement. The Debtors have conceded, in the Debtors' Limited Response to the motion for relief of CIFG Assurance North America,

Inc. (D.I. 2143), that they do not object to an orderly and prompt transition of their rights and obligations as servicer under the related HELOC servicing agreement to GMAC as the back-up servicer and, in fact, the parties have consented to and the Court has today entered an order respecting transition of servicing under that agreement. [D.I. 2398]. The Court should order a similar result respecting the 2007-A HELOC Servicing Agreement.

28.     For the foregoing reasons, the Court should modify the automatic stay and permit Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement to take any and all actions as are necessary to transfer servicing under the 2007-A HELOC Servicing Agreement to GMAC.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Assured respectfully requests that the Court enter an order (i) modifying the automatic stay to permit Assured and the non-debtor parties to the 2007-A HELOC Servicing Agreement to take any and all actions necessary to terminate AHM Servicing as servicer of the 2007-A HELOC Servicing Agreement; (ii) directing AHM Servicing and the Debtors to (a) transfer to GMAC all documents, files, records and data related to the HELOC Mortgage Loans; (b) cooperate in connection with transitioning the servicing function to GMAC, including sending "goodbye" letters to borrowers under HELOC Mortgage Loans directing all future collections on the HELOC Mortgage Loans to GMAC, (c) provide an accounting of all amounts collected on account of the HELOC Mortgage Loans, (d) pay all costs and expenses related to the transition of the servicing to GMAC; and (e) otherwise comply with the 2007-A HELOC Servicing Agreement in transitioning the servicing of the HELOC Mortgage Loans; and (iii) granting such other and further relief as the Court deems equitable, just and proper.

Dated: Wilmington, Delaware
      December 17, 2007

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

    */s/ Donna L. Culver*
Robert J. Dehney (No. 3578)
Donna L. Culver (No. 2983)
Daniel B. Butz (No. 4227)
Chase Manhattan Centre, 18th Floor
1201 North Market Street
Wilmington, Delaware  19899
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

ATTORNEYS FOR ASSURED GUARANTY CORP.