## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | Objection Deadline: December 26, 2007 at 4:00 p.m. (ET) |

**INTERIM PERIOD CURE CLAIM AND OBJECTION OF CITIMORTGAGE, INC. TO DEBTORS' INTERIM PERIOD CURE SCHEDULE
(Docket Nos. 11, 1703, 1711, 2166, 2226 and 2236)**

CitiMortgage, Inc. ("CMI") submits its objection to the debtors' Interim Period Cure Schedule[1] and proposed interim cure amount, and its liquidated interim period cure claim, pursuant to paragraph 34 of this Court's October 30, 2007 "Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief" [Docket No. 1711] (the "Sale Order").

### I.  Background

1. CMI is the counterparty to two servicing agreements that are Assumed Contracts the debtors listed on Schedule I to the Sale Order. [Schedule I [Docket No. 1703] at 1, 16-17 at index 1.1(j)am and 21 at index 1.1(j)bf]. CMI is, therefore, a Certain Objector entitled to file a liquidated interim cure claim. [Sale Order ¶¶ 33, 34].

2. The Sale Order requires the Debtors to serve a schedule setting forth the proposed cure amount for Assumed Contracts necessary to cure defaults relating to Assumed Contract where those

---

[1] For all capitalized terms or phrases CMI uses in this interim cure claim, but that CMI has not separately defined in this claim, CMI is using the term or phrase as the Sale Order defines it.

1641360

defaults took place between the date of the Sale Order (October 30, 2007) and the Initial Closing (November 16, 2007). [Sale Order ¶ 34].

3. Paragraph 35 of the Sale Order provides, in pertinent part:

> The Initial Cure Amount and the Interim Cure Amount (together with all amounts payable in respect of Transfer Cost Claims and Setoff Claims, the "Sellers' Cure Amount") shall constitute all amounts owed, if any, with respect to defaults relating to the Assumed Contracts relating to acts or omissions that occurred prior to the Initial Closing;

[Sale Order ¶ 35].

4. CMI filed objections to the Debtor's proposed Initial Cure Amounts and a claim for the correct Initial Cure Amount [Docket Nos. 2226 and 2236].

5. In addition, CMI is entitled to be paid as the Interim Cure Amount due it all amounts necessary to cure defaults occurring between October 30, 2007 and November 16. 2007.

## II. Veterans Land Board Veterans Housing Assistance Program (Loan Sale and Servicing Agreement with CitiMortgage)

6. On August 11, 1994, Columbia National, Inc. (which entity changed its name to American Home Mortgage Servicing, Inc. effective August 1, 2004) signed an Application to participate in the Veterans Land Board Veterans Housing Assistance Program, in which it agreed, among other things, to service certain mortgage loans and to be bound by the Veterans Land Board's Guide (the "VLB Guide") and its Program Guidelines (the "VLB Guidelines"). Although the debtors advise that they do not have a copy of this agreement, CMI believes this is the servicing agreement to which the debtors refer at pages 1 and 21 of Schedule I. The Application, VLB Guide and VLB Guidelines are voluminous, and, therefore, CMI does not attach them. But, CMI will provide copies on reasonable request to interested parties needing to see them.

7. Pursuant to Section 6.05 of the VLB Guide, among other agreements, the debtors agreed to pay:

1641360

> (iii) all costs and expenses incurred by the Administrator or the Board in investigating Participant's activities hereunder when, in the opinion of the Administrator or the Board, such investigation is warranted on the basis of adverse information about the Participant, and (iv) all costs and expenses incurred by the Administrator or the Board in connection with replacing Participant as a servicer of program loans in the event of default of Participant under the terms of this Guide.

Article I of the VLB Guide defines the "Administrator" to be CMI [VLB Guide at I-4] and defines "Participant" as the lending institution meeting the VLB Guidelines and approved to participate in the program, or, in this case, the debtor AHM Servicing [VLB Guide at I-10].

8. Section 8.06 of the VLB Guide further provides:

> <u>Participant to Pay Legal Fees</u>. If it is determined in a judicial proceeding that Participant has failed to perform under any provision of this Guide, and if the Administrator or the Board shall employ attorneys or incur other expenses for the enforcement, performance, or observance of the terms of the Guide on the part of Participant, then the Administrator or the Board, as the case may be, to the extent permitted by Law, shall be reimbursed by Participant, on demand, for reasonable attorneys' fees and other out-of-pocket expenses.

[VLB Guide at VIII-2].

9. In Section 10.310 of the VLB Guidelines, AHM Servicing, as the Participant, agreed to indemnify CMI, as the Administrator, from (among other things) any breach of a representation, warranty or responsibility under the servicing agreement. [VLB Guidelines at 66]. Among those provisions of the VLB Guidelines with which the debtors did not comply prepetition, the debtor AHM Servicing did not provide CMI with written notice of the significant changes in its financial position, as Section 10.305 of the VLB Guidelines requires. [VLB Guidelines at 64].

III. **HALO 2007-AR1 Master Loan Purchase and Sale Agreement**

10. The second CMI Assumed Contract is the Master Loan Purchase and Sale Agreement that all of the parties identify as the HALO 2007-AR1 agreement. [See, e.g., Schedule I [Docket No. 1703] at 16-17]. Subsection 13.01 of the HALO 2007-AR1 agreement provides, in pertinent part:

3

1641360

> [T]he Seller or the Interim Servicer, as applicable, shall indemnify the Initial Purchaser and any subsequent Purchaser and hold them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that the Initial Purchaser and any subsequent Purchaser may sustain arising out of or based on the failure of the Seller or the Interim Servicer, as applicable, to perform its obligations under this Agreement . . . .

[Halo 2007-AR1 agreement at 48-49]. The HALO 2007-AR1 agreement (and its attachments) is voluminous, and, therefore, CMI does not attach it. But, CMI will provide copies on reasonable request to interested parties needing to see it.

### IV. The Cash Management Order

11. In addition, CMI also asserts its cure claim pursuant to the Order Pursuant to Sections 105(a), 345, and 503(B)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Company with Section 345 of the Bankruptcy Code, dated August 7, 2007 (the "Cash Management Order") (Docket No. 66). The Cash Management Order provides that:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court. In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties.

Cash Management Order, page 6.

4

1641360

12. The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provision of the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents.

Cash Management Order, pages 7-8.

## V. Cure Claim and Objection

13. In their November 26, 2007 Interim Period Cure Schedule [Docket No. 2166, Exh. A at 1, 16-17 and 21], the debtors listed the Proposed Interim Cure Amounts under both of these CMI Assumed Contracts as -0-.

14. Pursuant to the Assumed Contracts, the Sale Order and the Cash Management Order, the debtors' Interim Cure Amounts due CMI include CitiMortgage's reasonable attorneys' fees and costs incurred in this case from October 30, 2007 to and including November 16, 2007. CMI has incurred reasonable attorneys' fees in that period totaling $5,302.50 and reasonable costs in that period totaling $89.98 as follows: (a) attorneys' fees incurred with Morris James LLP in the amount of $2,185.50; (b) costs incurred with Morris James LLP in the amount of $82.90; (c) attorneys' fees incurred with Featherstone Petrie DeSisto LLP in the amount of $3,117.00; and (d) costs incurred with Featherstone Petrie DeSisto LLP in the amount of $7.08.

15. CMI attaches to this objection and interim period cure claim the cover sheets for the applicable billing statements Morris James LLP and Featherstone Petrie DeSisto LLP provided to CMI and that CMI pays in the ordinary course after conducting its internal review procedures.[2] Because of

---

[2] The amounts of interim period cure attorneys' fees due CMI are only a portion of the amount billed CMI in October and November 2007 because of the fact that those cure amounts consist of only fees incurred on October 30 and 31, 2007, and November 1-16, 2007.

5

1641360

the volume of the billing detail, and the attorney-client privilege and work product issues that arise with some of the detailed billing descriptions, CMI does not attach the full copies of the billing statements.

WHEREFORE, CMI respectfully requests that this Court enter an order (A) sustaining its objection to the debtors' proposed Interim Cure Period Schedule and the cure amounts listed for the two CMI Assumed Contracts, (B) sustaining CMI's Interim Period Cure Claim in the total amount of $5,392.48, and providing for a distribution to CMI from the Cure Escrow in that amount (or such alternate distribution and allowed claim as the Sale Order procedures provide), and (C) granting CMI such further relief as this Court deems just and proper.

Dated:  December 21, 2007

**MORRIS JAMES LLP**

*/s/ Brett D. Fallon*
Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware  19899-2306
Telephone:  (302) 888-6888
Facsimile:  (302) 571-1750
Email:  bfallon@morrisjames.com

-and-

Andrew J. Petrie (*admitted pro hac vice*)
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400S
Denver, Colorado  80202-5424
Telephone:  (303) 626-7139
Facsimile:  (303) 626-7101
Email:  apetrie@featherstonelaw.com

*Attorneys for CitiMortgage, Inc.*

1641360