IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | x | |
|---|---|---|
| ------------------------------------------------------------ | : | Chapter 11 |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : | |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Jointly Administered |
| Debtors. | : | |
| | : | **Hearing Date: January 14, 2008 2:00 p.m. EST** |
| ------------------------------------------------------------ | x | **Objection Deadline: January 7, 2008, 4:00 p.m. EST** |

**MOTION FOR AN ORDER AUTHORIZING AND APPROVING (I) THE DEBTORS'
EMPLOYMENT AND RETENTION OF DOVEBID, INC. AS AUCTIONEER; (II) THE
TERMS OF COMPENSATION TO DOVEBID; (III) A WAIVER OF LOCAL RULE
2016-2(d); AND (IV) PROCEDURES FOR DOVEBID'S SALE OF ASSETS
PURSUANT TO THE DOVEBID AGREEMENT AND THE AUCTION PROCEDURES**

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby file this motion (the "Motion") for entry of an order, pursuant to sections

327(a), 328(a) and 363 of title 11 of the United States Code 11 U.S.C. §§101-1330 (the

"Bankruptcy Code") and Rules 2014, 2016, 6004 and 6005 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), authorizing and approving (i) the employment and retention

of DoveBid, Inc. ("DoveBid") as auctioneer pursuant to the agreement between the Debtors and

DoveBid (the "DoveBid Agreement"), (ii) the terms of compensation to DoveBid as set forth in

the DoveBid Agreement, (iii) a waiver of Rule 2016-2(d) of the Local Rules of Bankruptcy

Procedure for the District of Delaware (the "Local Rules"), and (iv) the sale of Assets, as defined

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage
Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance,
Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM
Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York
corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability
company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great
Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd.,
Suite 200, Irving, Texas 75063.

herein, pursuant to the DoveBid Agreement and the auction procedures set forth herein (the

"Auction Procedures"). In support of this Motion, the Debtors respectfully submit as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for

the relief requested herein are sections 327(a), 328(a) and 363 of the Bankruptcy Code.

## BACKGROUND

2.        On August 6, 2007 (the "Petition Date"), each of the Debtors filed with

this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor

is continuing to operate its business and manage its properties as a debtor in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

3.        The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

4.        On August 14, 2007, the United States Trustee for the District of Delaware

appointed The Official Committee of Unsecured Creditors (the "Committee").  No trustee or

examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

5.        Prior to the filing of these bankruptcy cases, AHM's business primarily

entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage

loans and mortgage-backed securities resulting from the securitizations of residential mortgage

---

[2]        The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors'
Chapter 11 Petitions and First Day Relief (the "First Day Declaration") [Docket No. 2], which is incorporated by
reference as if fully set forth herein at length.

loans. AHM also invested in securitized mortgage loans originated by others and originated and

sold mortgage loans to institutional investors. AHM offered an array of mortgage products and

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of

securitized adjustable-rate mortgage loans of prime and alternate A quality.

6.    In the weeks prior to the Petition Date, an unprecedented disruption in the

credit markets caused major write-downs of the Debtors' loan and security portfolios and

consequently resulted in margin calls for hundreds of millions of dollars with respect to the

Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and

threatening the company's continued viability.

7.    The Debtors' inability to originate loans and the exercise of remedies by

certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the

Debtors to discontinue their retail and indirect loan origination business. As a result, on August

3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination

of over 6,500 employees.

8.    Unfortunately, in the short time available and given the severe financial

pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity

crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and

maximize the value of their estates through orderly sales of their assets.

## RELIEF REQUESTED

9.    By this Motion, the Debtors seek the entry of an order, pursuant to

sections 327(a), 328(a) and 363 of the Bankruptcy Code, authorizing and approving (i) the

employment and retention of DoveBid as auctioneer for the Debtors, (ii) the terms of

3

compensation to DoveBid as set forth in the DoveBid Agreement, (iii) a waiver of the

requirements of Local Rule 2016-2(d), and (iv) the sale of Assets, as defined herein, pursuant to

the terms of the DoveBid Agreement and the Auction Procedures.

## BASIS FOR THE RELIEF REQUESTED

10.    Prior to the Petition Date, the Debtors accumulated certain assets,

including, but not limited to, furniture, fixtures, tables, computers and computer related

equipment, office equipment and supplies, telephone equipment and other such personal property

commonly located in commercial office spaces (collectively, the "Assets").[3]  Due to the

shutdown of the Debtors' loan origination business prior to the Petition Date, the Assets are no

longer necessary to the Debtors' business operations.  In the exercise of their sound business

judgment, the Debtors have determined that the prompt sale of the Assets pursuant to the

Auction Procedures without Court approval of each auction and sale is in the best interest of the

Debtors' estates and their creditors and will provide an efficient mechanism for the Debtors to

maximize the recovery from the sale of the Assets.[4]  The Debtors desire to sell or otherwise

dispose of the Assets in order to eliminate costs associated with maintaining unnecessary assets,

reduce or eliminate the need for paying storage charges, and maximize the value of the Debtors'

estates for the benefit of their stakeholders.

11.    Additionally, the retention and employment of DoveBid will allow the

Debtors to auction and sell the Assets in an efficient and expeditious manner.  The Debtors

---

[3]    Assets do not include (i) personally identifiable information; (ii) property not owned by the Debtors and/or property leased by the Debtors from third parties; or (iii) interests which the Debtors may have in consumer credit transactions which are subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004) as amended from time to time).

[4]    By Order dated November 28, 2007 (the "Miscellaneous Asset Sale Order"), the Debtors are authorized to sell, donate or abandon miscellaneous assets pursuant to prescribed procedures.  The relief requested by this Motion is intended to complement and work in conjunction with the Miscellaneous Asset Sale Order as not all of the Debtors' Assets will be designated for auction or ultimately sold at auction.

4

believe that DoveBid is well suited to provide the auction services required by the Debtors

because of its specialized auction experience and sale of assets in chapter 11 proceedings.  The

Debtors therefore believe that the services of DoveBid will enable them to maximize the value of

the Assets.

### A.    Sale and Auction Procedures

12.    The Debtors propose to sell the Assets pursuant to the following Auction

Procedures:[5]

- **Plan of Sale**.  When and as the Debtors identify Assets they seek to dispose of by utilizing the services of DoveBid, the Debtors and DoveBid will negotiate and execute a mutually acceptable plan of sale (each a "Plan"), substantially in the form attached to the DoveBid Agreement, for each proposed auction of Assets.  Each Plan will address, among other things: (i) the Assets subject to a particular Auction; (ii) which Debtor entity owns the Assets; (iii) whether the Assets will be sold by public auction, private sale or otherwise; (iv) if the Assets are to be sold by public auction, whether the auction will be promoted on DoveBid's Website at www.dovebid.com as a "Featured On-Line Auction" or otherwise broadcast live over the Internet as a Webcast Auction and/or consigned into one or more Exchange Auctions; and (v) the estimated expenses of DoveBid.

- **Notice Procedures**.  After the Debtors and DoveBid develop a Plan, the Debtors will file and serve by overnight or hand delivery a copy of each such Plan to (i) the Office of the United States Trustee (the "U.S. Trustee"); (ii) all known parties holding or asserting liens, claims, encumbrances or other interests in the Assets subject to the Plan, if any; (iii) counsel to the Committee; and (iv) counsel to the Debtors' postpetition lender (the "DIP Lender") (collectively, the "Notice Parties").

- **Sale Objection Procedures**.  The Notice Parties will have ten (10) days after the Sale Notice is filed and served to object to a Plan and to file such objection with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and to serve such objection by overnight delivery or hand delivery on the Notice

---

[5]    The Auction Procedures set forth certain procedural aspects of the DoveBid Agreement and supplement the DoveBid Agreement with the Debtors' procedures for notice, objections, and electronic information storage for any Plan of Sale, as defined herein.

Parties and counsel to the Debtors (the "Plan Objection Deadline"). In the absence of an objection on or before the Plan Objection Deadline, the Debtors and DoveBid may proceed with the Plan without further notice or hearing and such Plan will be deemed fully authorized by the Court.

- If an objection to a Plan is timely filed and served by the Plan Objection Deadline, the Debtors will not proceed with the Plan unless (i) the objection is withdrawn or otherwise resolved; or (ii) this Court overrules such objection at the next regularly schedule omnibus hearing that is at least ten (10) days after service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is mutually agreeable to the objecting party and the Debtors.

- **Advertisement**. The Debtors will provide DoveBid with an allowance for the advertisement and marketing of each Sale, which allowance shall be set forth in the Plan. DoveBid will advertise and market each Sale which may included digital photography of the Assets, print and electronic media production, creative services, ad placements, brochures and catalogs, and telemarketing.

- **Conduct of Sales**. DoveBid may, in its discretion, offer the Assets for sale by piece or lot, and/or include the Assets in other sales conducted by DoveBid; provided, however, that the Assets will not be commingled with any third parties' assets. DoveBid will sell all Assets at auction to the highest bidder (subject only to the purchaser's timely payment in full and removal of purchased Assets); provided, however, no officer, director or affiliate of the Debtors shall be entitled to purchase any Assets pursuant to an auction conducted by DoveBid. DoveBid will not guarantee the consummation of any sale and is not responsible in the event a purchaser fails to complete a purchase. DoveBid will not permit any purchaser to take possession of Assets without full payment and DoveBid assumes the risk of collection for any equipment it allows to be removed.

- In the event that some Assets remain unsold (the "Unsold Assets") at the conclusions of a Sale, or a purchaser fails to perform its obligation to pay the purchase price of an Asset, DoveBid shall have the right to surrender, and shall have no further obligations with respect to the Unsold Assets; provided, however, DoveBid may, in its sole discretion, have the option of including the Unsold Assets in a subsequent sale event to be conducted within the following 60 day period which subsequent sale event shall be subject to a further Plan. The Debtors may request that DoveBid arrange for removal and temporary storage of any Unsold Assets; provided, however, that (i) DoveBid shall have no obligation to arrange for such removal or storage, and (ii) in the event that DoveBid consents to arrange for such removal and storage, the Debtors will reimburse DoveBid for the reasonable costs and expenses incurred by DoveBid in connection

6

therewith (any such reimbursement will be noted in the Settlement Report, as defined herein).

- **Conditions of Sale**. All buyers will acquire the Assets sold pursuant to the Auction Procedures "AS IS-WHERE IS," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended use or any other purposes; provided, however, that buyers will take title to the Assets free and clear of any liens, claims, encumbrances and other interests, if any, pursuant to Bankruptcy Code section 363(f), with all such liens, claims, encumbrances and other interests, if any, to attached to the proceeds of the sale of the Assets.

- **Collection and Disbursement of Sale Proceeds**. DoveBid will collect from the purchasers of the Assets the gross proceeds of each Plan, including any applicable sales taxes (which is payable by the buyers) and deposit such funds into a bank depository account maintained by DoveBid (the "Settlement Account"). All applicable sales taxes collected by DoveBid shall be paid to the appropriate taxing authorities out of the account. Thereafter, DoveBid shall be paid from the account its reimbursable expenses pursuant to Section 5 of this Agreement and amounts allocable to Buyer's Premium. Within ten (10) days of the date of the Auction, DoveBid shall issue a check to the Seller for 80% of the net proceeds collected and cleared from such Auction. Within thirty (30) days of the date of the Auction (or forty-five (45) days if the Auction includes multiple sellers), DoveBid shall issue the Seller a check for the balance of the proceeds from such Auction held in the account (the "Settlement Check") plus the Rebate described in Section 4 of the DoveBid Agreement, subject to open items and uncollected accounts, if any.

- **Settlement Report**. DoveBid shall also issue to the Debtors a settlement report (the "Settlement Report") showing, generally, a record of sales of the Assets and the allocation of the funds generated by such sales, including the compensation received by and the total amount of expenses reimbursed to DoveBid. Each Settlement Report shall be prepared in such a manner as to comply with Federal Rule of Bankruptcy Procedure 6004(f)(1).

- **Compensation Objection Procedures**. Based on the information provided in the Settlement Report, the Debtors will file and serve on the Notice Parties a report (the "Compensation Report") that identifies (i) the Assets sold and aggregate purchase price pursuant to the applicable Plan; (ii) the aggregate Buyer's Premium received by DoveBid pursuant to the applicable Plan; (iii) the aggregate Rebate remitted to the Debtors; and (iv) the aggregate expenses paid by the Debtors to DoveBid pursuant to the applicable Plan. The Notice Parties will have fifteen (15) days after the

7

Compensation Report is filed and served to object to the compensation provided to DoveBid disclosed in that Settlement Report and to file such objection with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and to serve such objection by overnight delivery or hand delivery on the Notice Parties, DoveBid and counsel to the Debtors (the "Compensation Objection Deadline").

- Unless an objection to the compensation or reimbursement of expenses provide to DoveBid pursuant to a Compensation Report is timely filed and served, DoveBid shall be entitled to receive the compensation and expense reimbursement provided in the Compensation Report without further order of the Court. If an objection to Compensation Report is filed and served by the Compensation Objection Deadline, the objection(s) will be heard at the next regularly schedule omnibus hearing that is at least ten (10) days after service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is mutually agreeable to the objecting party and the Debtors.

- **Insurance**. The Debtors shall be responsible for maintaining adequate insurance coverage pertaining to the Assets and their transfer to and from, and storage at, the site of any sale. If any sale is to occur at any location owned by the Debtors, the Debtors shall also maintain adequate liability insurance for the duration of each sale and related activities; provided, however, that DoveBid shall carry all worker's compensation insurance for DoveBid's employees in conformance with all applicable state and local laws.

- **Debtors' Information Technology Protocol:** If any Plan provides for the sale of computers and/or computer related equipment, the Debtors shall remove all information and software applications from the computers and/or computer related equipment. Additionally, the Debtors will back-up or store the information existing on such computers and/or computer related equipment.

## LEGAL ARGUMENT

A.    **Retention, Employment and Compensation of DoveBid as Auctioneer**

13.    Bankruptcy Code section 327(a) provides, in relevant part, as follows:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested

8

persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

14.    Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.  Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

15.    Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of . . . auctioneers . . . pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed R. Bankr. P. 2014

16.    The Debtors have a need to auction and sell the Assets in an expedient and efficient manner.  The Debtors have determined that, in their sound business judgment, the retention and employment of a qualified auctioneer, who has substantial experience in auctioning the assets of chapter 11 debtors is beneficial and will result in the greatest return from the disposition of such assets.  Accordingly, the Debtors seek to employ and retain DoveBid on the

9

terms and conditions set forth in the DoveBid Agreement, in the form attached hereto as <u>Exhibit</u> <u>A</u>.[6]

17.     The DoveBid Agreement provides that DoveBid will receive compensation on a percentage-fee basis for each Plan and that DoveBid is entitled to reimbursement for the actual and necessary expenses incurred by DoveBid from the gross proceeds of each Plan (the "<u>Fee Structure</u>").  DoveBid will collect payment from the buyers of any Assets at the rate of sixteen percent (16%) of the purchase price for each Asset (the "<u>Buyer's</u> <u>Premium</u>").  The Buyer's Premium shall be reduced in the amounts and for the reasons set forth below (such amounts not being exclusive):

- **Cash Payment Discount**.  The Buyer's Premium will be reduced by 1% of the purchase price of any Asset for which a purchaser pays by cash, cashier's check, company check (with a letter of guarantee) or wire transfer provided payment in full is received by DoveBid within 72 hours from receipt of DoveBid's invoice shall be collected by DoveBid directly from each purchaser in addition to the purchase price as bid for such disposition services.

- **Employee Purchase Discount**.  The Buyer's Premium shall be 0% and DoveBid shall receive no compensation for any Asset where the purchaser is a current employee of the Debtors and is purchased for their personal use or consumption.

Additionally, DoveBid shall remit to the Debtors with each Settlement Check an amount (the "<u>Rebate</u>") that is a percentage of the aggregate Gross Proceeds (as defined below) realized as a result of the sale of Assets sold subject to the respective Plan.  The Rebate shall be calculated as follows:

- With respect to those aggregate Gross Proceeds realized between $0 and $1,000,000, the Rebate shall equal 2%.

- With respect to those aggregate Gross Proceeds realized between $1,000,001 and $2,000,000, the Rebate shall equal 3%.

---

[6] An executed copy of the DoveBid Agreement will be filed prior to the hearing on the Motion.

10

- With respect to those aggregate Gross Proceeds realized in excess of $2,000,000, the Rebate shall equal 4%.

"Gross Proceeds" means the aggregate collected sales prices of all Assets sold pursuant to all Plans, excluding only sales tax and the Buyer's Premium collected. For the purposes of clarification, the Gross Proceeds from prior Sales shall be added to the Gross Proceeds from a current Sale to determine the applicable Rebate percentage owed to the Seller for the current Sale; provided, further, that the amount of the Rebate paid to the Seller shall be pro rated until the foregoing thresholds are satisfied. For example, if the Gross Proceeds of prior Sales aggregates $500,000 and the Gross Proceeds from a current Sale is $1,000,000, the Rebate percentage for the first $500,000 of the current Sale shall be 2% and the Rebate percentage for the remaining $500,000 of the current Sale shall be 3%.

18.     Section 328(a) of the Bankruptcy Code permits the retention and employment of professionals on a percentage basis. 11 U.S.C. § 328(a). The Debtors believe that the Fee Structure is fair and reasonable in light of (a) industry practice and prior precedent, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) DoveBid's extensive experience, and (d) the nature and scope of work to be performed by DoveBid.

19.     Additionally, the Debtors require a waiver of the information requirements of Local Rule 2016-2(d). DoveBid, in the ordinary course of its business, receives compensation on a percentage-fee basis. As such, submission of detailed time entry is unnecessary and would be unduly burdensome to DoveBid. Moreover, other than the reimbursement of expenses, DoveBid is being compensated by charging the buyer of the Assets a percentage premium. That premium is not being paid by the Debtors. Accordingly, the Debtors request that the submission of formal fee applications be waived pursuant to Local Rule 2016-2(g).

20.    Further, the Debtors request the authority to allow DoveBid's compensation and reimbursement for its actual and necessary expenses to be paid from the proceeds of each Plan, which have been deposited in the Settlement Account, without further order of this Court; provided, however, that any compensation or reimbursement of expenses made to DoveBid is subject to disgorgement in the event of an order of this court sustaining a properly filed objection under the standards of section 328 of the Bankruptcy Code and the Orders of this Court.

21.    To the best of the Debtors' knowledge, as set forth in the Affidavit of John Carroll (the "Affidavit"), a copy of which is attached hereto as Exhibit B, and incorporated herein by reference, the partners, principals and professional staff of DoveBid do not have any connections to the Debtors, its affiliates, creditors, or other parties-in-interest in this chapter 11 case. To the best of the Debtors' knowledge, DoveBid is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

22.    Based on the foregoing, the Debtors request that the Court enter an order approving the retention and employment of DoveBid as auctioneer to the Debtors and approving the compensation of DoveBid as set forth in the DoveBid Agreement.

**B.    The Sale of Assets Pursuant to the Auction Procedures Represents an Exercise of the Debtors' Business Judgment**

23.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary

12

course of business be based upon the sound business judgment of the debtors. In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

24.     The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. Abbotts Dairies, 788 F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

25.     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.

Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws."). Bankruptcy Rule 6004 authorizes "sales not in the ordinary course of business . . . by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

26.     There is more than ample business justification for the approval of the Auction Procedures and the sale of the Assets in accordance with the Auction Procedures. The Debtors believe that the sale of Assets will inure to the benefit of the Debtors' estates and creditors and, therefore, represents the exercise of the Debtors' sound business judgment.

27.     The proposed sale of the Assets pursuant to the Auction Procedures is in "good faith" within the meaning of the Abbotts Dairies analysis. The Debtors represent that no insider will gain an unfair advantage from the sales pursuant to the Auction Procedures.

14

Moreover, as set forth above, the Debtors will provide the Notice Parties with a reasonable opportunity to object to any Proposed Plan.

28.    Bankruptcy Rule 2002(a)(2) generally requires a minimum of 20 days' notice of proposed sales of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2).

29.    The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing.  11 U.S.C. § 102(1).

30.    Similarly, the court in In re Lomas Fin. Corp. held that notice is appropriate under Bankruptcy Code section 102(1) where it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 212 B.R. 46, 54 (Bankr. D. Del. 1997) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

31.    The Debtors believe that the notice and objection procedures contained in the Auction Procedures are justified under the circumstances.  The Auction Procedures are designed to maximize the value realized from the sales of the Assets.  Because the Auction Procedures contemplate the sale of a large number of Assets with a relatively de minimis value, the usual process of obtaining Court approval for each individual sale would impose unnecessary administrative burdens on the Court; would be prohibitively expensive to the Debtors' estates; and in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.

32.     Additionally, the Debtors believe that the manner of notice proposed in the Auction Procedures is more than appropriate and preserves parties' due process rights.  Once the Debtors and DoveBid agree upon the proposed expenditures and Plan, the Plan will be filed and served on the Notice Parties.  At that point (before any sale takes place) any party in interest may make inquiry concerning, or object to the proposed sale, including the projected sale expenses.  Assuming no objections are made and DoveBid completes the auction sale, the Settlement Report will be filed with the Court and served on the Notice Parties, and parties in interest will have an opportunity to review and object to any payments made to DoveBid pursuant to the Settlement Objection Procedures.  Further, while it is not possible for the Debtors to know who will purchase the Assets under each Plan prior to the occurrence of an auction, the Settlement Report will identify the purchasers of the Assets.

33.     Finally, as noted above, the "notice and a hearing" requirement contained in Bankruptcy Code section 363(b)(1) is satisfied absent a hearing where there is an opportunity for a hearing and no party in interest timely requests a hearing.  11 U.S.C. § 102(1).

C.     **The Sales of the Assets Should Be Approved Under  11 U.S.C § 363(f)**

34.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a *bona fide* dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  See 11 U.S.C. § 363(f); In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (section

16

363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

35.     The Debtors expect that their secured lenders will have no objection to the relief requested herein.  Accordingly, the requirements of section 363(f) of the Bankruptcy Code are met, and the proposed disposition of Assets should be approved "free and clear" of any such liens, claims or interests, with any such liens to attach to the proceeds of the sale.

## NOTICE

36.     Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the DIP Lender; (v) the Securities and Exchange Commission; and (vi) all other parties entitled to notice under Del. Bankr. LR 2002-1(b).

17

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein, substantially in the form attached hereto as <u>Exhibit C</u>, and granting such other and further relief as the Court deems just and proper.

Dated:    Wilmington, Delaware
          December 21, 2007

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              James L. Patton, Jr (No. 2202)
                              Joel A. Waite (No. 2925)
                              Pauline K. Morgan (No. 3650)
                              Sean M. Beach (No. 4070)
                              Matthew B. Lunn (No. 4119)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Counsel for Debtors and Debtors in Possession

DB02:6295443.10                                                    066585.1001

# EXHIBIT A

## DoveBid Agreement



# AGREEMENT FOR THE PROVISION OF
# ASSET DISPOSITION SERVICES

This Agreement for the Provision of Asset Disposition Services ("Agreement") is made as of December _____, 2007

BETWEEN:

> American Home Mortgage Corp., and its direct and indirect affiliates, as debtors-in-possession
> 538 Broadhollow Road
> Melville, New York 11747
> Attention:        Chris Cavaco
> Telephone:        (631) 622-2850
> Fax:              (__) ___-_____
>
>                    ("Seller"),

AND

> DoveBid, Inc., a Delaware corporation
> 27600 Northwestern Highway
> Suite 220
> Southfield, Michigan 48034
> Attention:        James Sklar
> Telephone:        (248) 353-8640
> Fax:              (248) 359-1345
>
>                    ("DoveBid")

WHEREAS, on August 6, 2007, Seller, and certain of its direct and indirect affiliates (collectively, the "**Debtors**"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"); and

WHEREAS, Seller anticipates that, from time to time in the future, it will wish to dispose of used or surplus capital assets, by public auction or otherwise; and

WHEREAS, Seller wishes to engage DoveBid to dispose of those assets on the terms and conditions set forth below;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged, DoveBid and Seller agree as follows:

1.              **REPRESENTATION:** From time to time during the twelve (12) month period following the date of this Agreement (the "**Initial Term**") and during an extension of the Initial Term pursuant to Section 14(b) below, Seller shall notify DoveBid when it wishes to dispose of used or surplus assets ("**Assets**"). Upon such notification and identification of certain assets, Seller and DoveBid shall use best efforts to negotiate and execute a mutually agreeable plan of sale (each, a "**Plan**"), in the form set forth in Exhibit A to this Agreement, by which Seller engages DoveBid on an exclusive basis to conduct sales ("**Sales**") of the Assets identified on Exhibit A-1 to the Plan on Seller's behalf. Each Plan shall address, among other things: (i) whether the Assets shall be sold by public auction, private treaty sale or otherwise, (ii) if the Assets are to be sold by public auction, whether the auction shall be promoted on DoveBid's Website at www.dovebid.com (the "**Website**") as a "Featured On-Line Auction" or otherwise broadcast live over the Internet as a Webcast Auction ("**Webcast Auction**"), and/or consigned into one or more Exchange Auction(s) ("**Exchange Auction(s)**"), meaning an online public auction to be conducted on behalf of multiple sellers of assets in similar asset categories, and (iii) the estimated amount of the expenses to be incurred by DoveBid. In the event the Assets are consigned into one or more Exchange Auction(s), the specific Exchange Auction(s) will be selected by DoveBid in its sole discretion in order to maximize the return to the Seller in consideration of numerous factors. With respect to those Assets consigned into Exchange Auctions hereunder, DoveBid may, at its discretion, (a) offer the Assets by the piece or by the lot and/or (b) split Seller's Assets into groups (but not commingled with any third parties' assets) for consignment into different Exchange Auctions, provided all Assets consigned hereunder will be offered for sale in an Exchange Auction to be conducted within a specific time period to be set forth in the Plan (the "**Sale Period**"). In the event any Asset remains unsold for any reason at the conclusion of the Sale, DoveBid shall have the option of including those Assets in a subsequent auction event to be conducted within the following 60 day period at its discretion, provided, however, that such auction shall be subject to a new Plan. In that event, the Sale Period shall be extended accordingly. Except as otherwise provided in a Plan executed by both Seller and DoveBid, the Sales shall be governed by the provisions of this Agreement. Once a Plan is executed by Seller and DoveBid, the Assets that are subject to such Plan may not be withdrawn, sold or disposed of except in accordance therewith. Notwithstanding the foregoing, in the event Seller does withdraw any Asset following the date DoveBid posts the Asset on the respective catalog on the Website, without waiving any other remedies, DoveBid will automatically deduct a withdrawal fee from the net proceeds in an amount equal to 5% of DoveBid's good faith estimate of likely selling price of such withdrawn Assets based upon sales of comparable assets.

DoveBid's engagement pursuant to this Agreement, and all of its and the Seller's obligations hereunder, are subject to and contingent upon the Court's approval of this Agreement.

2.              **CONDUCT OF THE SALES:**

(a)        DoveBid may, in its discretion, offer Assets for sale by the piece or by the lot, and/or include Assets in other sales conducted by DoveBid. Seller agrees that DoveBid may use its name, street address and logo in the advertising of the Sales, including press releases, as well as on the Website.

(b)        All Assets in the Auction shall be sold to the highest bidder (subject only to the purchaser's timely payment in full and removal of purchased Assets). In the event any Asset remains unsold for any reason at the conclusion of the Sale, DoveBid shall have the option of including those Assets in a subsequent sale event to be conducted within the following 60 day period at its discretion; provided, however, that such sale event shall be subject to a new Plan. DoveBid, however, does not guarantee that any sale will be completed, and DoveBid is not responsible in the event that a purchaser fails to live up to its agreement and complete a purchase.

3.              **DISCLAIMERS OF WARRANTIES:** DoveBid shall state both in its advertising for Sales and at any Sales that all Assets are being sold "as is, where is and with all faults" and with any additional disclaimers of warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose (but excluding any in-place transferable maintenance agreements). Seller acknowledges and agrees that DoveBid, in so stating, is in no way (a) representing or warranting to Seller that any purchaser of any Asset will not attempt to assert

a claim against Seller based on the alleged existence or breach of any alleged warranties, or (b) agreeing to indemnify or hold harmless Seller from or against any claim or liability asserted against Seller by any third party (including but not limited to any purchaser of any Assets at the Auction) based on the alleged existence or breach of any alleged warranties, or from or against any fees or expenses incurred by Seller in defending against any such claim or liability, except in each case as results from Auctioneer's negligence or willful misconduct. Seller acknowledges and agrees that DoveBid has no knowledge with respect to, and has no obligation to investigate, the merchantability or fitness for any particular use of any Asset.

4.         **COMPENSATION; REBATE:**  DoveBid shall charge each successful bidder its standard buyer's premium (the "**Buyer's Premium**") for its own account as compensation for disposition services provided up to and including each Sale.  The Buyer's Premium shall be 16% of the sales price of each Asset sold, and shall be collected by Auctioneer directly from each successful bidder, in addition to the purchase price as bid.  Notwithstanding the foregoing, a discount from the Buyer's Premium equal to 1 % of the sales price shall apply to purchasers who pay in the form of cash, cashier's check, company check (with a letter of guarantee) or wire transfer provided payment in full is received by DoveBid within 72 hours from receipt of DoveBid's invoice, shall be collected by DoveBid directly from each purchaser in addition to the purchase price as bid for such disposition services.  Payment to DoveBid of such Buyer's Premium by the successful bidder is not dependent on any other service provided by DoveBid in connection with each Sale.  Neither the Seller nor any of the Debtors shall be responsible in any way for payment or collection of the Buyer's Premium.  The Debtors may conduct an employee sale or sales with no compensation or fees flowing to DoveBid.  For such employee sale(s), the type and quantity of assets will be for personal use only.  Notwithstanding the foregoing, DoveBid shall remit to Seller, together with each Settlement Check following each Sale, a sum (each, a "**Rebate**") equal to a percentage of the aggregate Gross Proceeds (defined below) realized as a result of the sale of Assets sold subject to the respective Plan as follows:

(a)        With respect to those aggregate Gross Proceeds realized between $0 and $1,000,000, the Rebate shall equal 2%;

(b)        With respect to those aggregate Gross Proceeds realized between $1,000,001and $2,000,000, the Rebate shall equal 3%; and

(c)        With respect to those aggregate Gross Proceeds realized in excess of $2,000,000, the Rebate shall equal 4%.

As used herein, "**Gross Proceeds**" shall mean the aggregate collected sales prices of all Assets sold pursuant to all Plans, excluding only sales tax and Buyer's Premium collected.  For the purposes of clarification, the Gross Proceeds from prior Sales shall be added to the Gross Proceeds from a current Sale to determine the applicable Rebate percentage owed to the Seller for the current Sale; provided, further, that the amount of the Rebate paid to the Seller shall be pro rated until the foregoing thresholds are satisfied.  For example, if the Gross Proceeds of prior Sales aggregates $500,000 and the Gross Proceeds from a current Sale is $1,000,000, the Rebate percentage for the first $500,000 of the current Sale shall be 2% and the Rebate percentage for the remaining $500,000 of the current Sale shall be 3%.

5.         **SALE EXPENSES:**

(a)        **Advertising and Direct Marketing**:  In connection with each Sale and as provided in the Plan, Seller shall provide DoveBid an allowance toward certain Sale advertising expenses, which may include digital photography of the Assets, print and electronic media production, creative services, ad placement fees, brochure and catalog production, telemarketing, data list purchases, fax and email advertising and postage incurred in connection with such Sale.

(b)        **Labor**:  Seller agrees to reimburse DoveBid for labor expenses related to each Sale as set forth in the Plan.  Such labor includes services rendered in connection with the collection and disbursement of Auction Proceeds (as discussed under Paragraph 6 below).  Seller has the right to provide its own labor in part or in whole (or

subcontract to third parties) in connection with such services at its election as long as such persons demonstrate adequate competencies related to such services.

(c)     **Travel/Lodging**:  Seller agrees to reimburse DoveBid for DoveBid's actual travel expenses related to each Sale.

(d)     **Webcast Expenses**:  If DoveBid and Seller agree that a Sale to be conducted by public auction will be broadcast live over the Website, then Seller agrees to reimburse DoveBid for its actual expenses related to preparing for and conducting such broadcast.  Estimates for such amounts shall be set forth in the Plan.

(e)     **Miscellaneous**:  Seller also agrees to reimburse DoveBid for miscellaneous expenses related to each Sale, including accounting, equipment rental, insurance, permits, UCC searches/lien releases; and security/armored cars.

(f)     Seller acknowledges and agrees that all of the above expenses (collectively referred to as the "**Sale Allowance**") shall in all events be deducted from the gross proceeds and paid to DoveBid following each Sale, subject to adequate documentation and court approval, if required.  For purposes of this Agreement, "gross proceeds," means all revenue from the sale of Assets pursuant to this Agreement, excluding (i) any sales taxes collected by DoveBid, and (ii) any Buyer's Premium collected pursuant to Section 4 above. In the event that, in connection with a particular Sale, Seller requests changes to the Assets or to the DoveBid's set-up, Sale date or check-out plans (which changes may only be made with DoveBid's written consent), and such changes result in additional Sale expenses, Seller agrees that the Sale Allowance for such Sale may increase or decrease accordingly.

6.          COLLECTION AND DISBURSEMENT OF SALE PROCEEDS:

(a)     DoveBid shall collect from the purchasers of the Assets the gross proceeds, any applicable sales taxes and amounts due as Buyer's Premium and deposit such funds into a bank depository account maintained by the DoveBid.  Seller agrees that DoveBid may use funds in the account to discharge any liens on the Assets, encumbrances of record and personal property taxes ("**Liens**"); provided, however, that no such payments shall be made without the prior written consent of Seller (which consent may not be unreasonably withheld or delayed).  All applicable sales taxes collected by DoveBid shall be paid to the appropriate taxing authorities out of the account. Thereafter, DoveBid shall be paid from the account its reimbursable expenses pursuant to Section 5 of this Agreement and amounts allocable to Buyer's Premium.  Within ten (10) days of the date of the Auction, DoveBid shall issue a check to the Seller for 80% of the net proceeds collected and cleared from such Auction.  Within thirty (30) days of the date of the Auction (or forty-five (45) days if the Auction includes multiple sellers), DoveBid shall issue the Seller a check for the balance of the proceeds from such Auction held in the account (the "**Settlement Check**") plus the Rebate described in Section 4, subject to open items and uncollected accounts, if any.

(b)     In connection with each Sale, DoveBid shall also issue to Seller a settlement report (the "**Settlement Report**") showing, generally, a record of Sales and the allocation of the funds generated thereby.  Each Settlement Report shall be prepared in such a manner as to comply with Federal Rule of Bankruptcy Procedure 6004(f)(1).

(c)     Seller shall have responsibility for obtaining all court approvals necessary in connection with the settlement of Seller's auction account; provided, however, that DoveBid will provide all documentation reasonably requested by Seller.

(d)     Notwithstanding the provisions of Section 726(b) of the Bankruptcy Code, in all instances where the terms of this Agreement permit DoveBid to retain proceeds received from sales of the Assets (as compensation for Auction services, as reimbursement for expenses incurred in connection with the Auction or otherwise), DoveBid

shall have right to retain such proceeds without further order of the Court and without obtaining the approval of Seller or any other party. Moreover, DoveBid's right to retain such proceeds shall survive the conversion of Seller's bankruptcy proceeding into a proceeding under a different chapter of the federal bankruptcy code.

7.      **ASSET TRANSPORTATION AND RIGHT OF SURRENDER:** If needed, Asset transportation to the Sale premises for the Sale shall be arranged and paid for by Seller. In the event that walls or other structures must be removed or modified to remove the Assets sold at the Sale, all supervision and expense of such removal and modification shall be borne directly by the Seller and are not included in the Sale Allowance. Any labor costs that Seller directly or indirectly incurs in connection with the Sale shall be borne directly by Seller and are not included in the Sale Allowance. In the event that some Assets remain unsold at the conclusion of a Sale, or a purchaser fails to perform its obligation to pay the purchase price of an Asset, DoveBid shall have the right to surrender, and shall have no further obligations with respect to such Assets ("Unsold Assets") provided, however, DoveBid may, at its discretion, have the option of including those Assets in a subsequent Sale to be conducted within the following 60 day period. Seller may request that DoveBid arrange for the removal and temporary storage of any Unsold Assets; provided, however, that (i) DoveBid shall have no obligation to arrange for such removal or storage, and (ii) in the event that DoveBid consents to arrange for such removal and storage, Seller must reimburse DoveBid for the all costs and expenses incurred by DoveBid in connection therewith.    All costs and expenses related to the removal and storage of Unsold Assets shall be deducted from the gross proceeds separately and distinctly from, and shall not be deemed to be part of, the Sale Allowance.

8.      **UTILITY DISCONNECTION AND ASSET REMOVAL:** Immediately after each Sale, Seller shall disconnect all utilities to the sold Asset, including electric, gas, waste and water lines, at Seller's sole cost. Thereafter, the purchaser shall be solely responsible for rigging and shipping the sold Asset. DoveBid will assist with fulfillment of purchased Assets by providing a listing of capable movers and shippers and otherwise coordinating the removal process with the buyer's and their respective movers and shippers. Notwithstanding the foregoing, DoveBid will not be directly responsible for any Asset disconnection or removal. Seller acknowledges that with respect to any export transaction involving any of the Assets sold hereunder, and unless Seller and purchaser agree otherwise, Seller shall be the U.S. principal party in interest. Accordingly, Seller authorizes DoveBid to provide Seller's federal employer identification number ("EIN") to buyers, their agents, customs officials or similar parties for the purposes of completing a Shipper's Export Declaration form or any documentation necessary to facilitate the respective purchaser's export of the purchased Assets.

9.      **INSURANCE:** Seller shall be solely responsible for maintaining adequate insurance coverage pertaining to the Assets and their transfer to and from, and storage at, the site of any Sale. If any Sale is to occur at premises owned or leased by Seller, Seller also shall maintain adequate liability insurance for the duration of each Sale and related activities. DoveBid shall carry all workers' compensation insurance for DoveBid's employees in compliance with all applicable state and local laws.

10.     **DESTRUCTION OF ASSETS:** In the event of any loss, damage or destruction of any Assets, whether before or after a Sale, Seller shall remain liable to DoveBid for DoveBid's reimbursable expenses under Section 5 except to the extent that such loss, damage or destruction resulted from the negligence or intentional conduct of DoveBid. To the extent that Seller collects insurance proceeds payable on account of the destruction of any or all of the Assets after sale but prior to payment by a purchaser and such loss, damage or destruction of any or all of the Assets did not result from the negligence or intentional conduct of DoveBid, Seller shall set aside and hold in trust for the benefit of DoveBid a portion of such proceeds sufficient to pay DoveBid's reimbursable expenses under Section 5.

11.     **USE OF PREMISES:**

(a)      For the purposes of this Agreement, the "Premises" shall mean any location or facility where any of the Assets are stored or to be sold. Seller authorizes DoveBid and its representatives to enter upon and use the

Premises for the purposes of (i) storing the Assets thereupon, (ii) preparing for and conducting Sales, (iii) otherwise exhibiting Assets to prospective purchasers, and (iv) for such other purposes as are reasonable and necessary to conduct Sales.  Seller agrees that DoveBid shall not be charged a fee for the use of the Premises.  Seller further agrees that it shall furnish utilities to the Premises, at Seller's sole expense.

(b)       Seller acknowledges and agrees that DoveBid has no interest of any kind or nature in the Premises, and that DoveBid has no knowledge as to any previous use or occupancy of the Premises.  Seller acknowledges and agrees that DoveBid shall not be responsible for damage or injury to the Premises resulting from or arising in connection with the sale or removal of the Assets, except to the extent that such damage or injury is caused by DoveBid's negligence in the performance of its obligations hereunder.

12.       **NON-EXCLUSIVITY:**  Seller agrees that DoveBid shall be Seller's agent for the disposition of specified used and surplus capital assets during the term of this Agreement.

13.       **REPRESENTATIONS AND WARRANTIES:**  With respect to each Sale, Seller represents and warrants to DoveBid as follows:

(a)       Seller is authorized to execute and perform this Agreement, and this Agreement constitutes a valid and legally binding obligation of Seller, enforceable in accordance with its terms.

(b)       Seller now holds (and, up to the moment of sale provided for under this Agreement, will hold) good and marketable title to all Assets free and clear of any lien, security interest, leasehold interest, co-ownership interest or any other type of encumbrance or interest, provided, however, that certain of the Assets may be subject to the liens of the Debtors' post-petition lenders.

(c)       None of the Assets infringes or violates (or contains any parts or components which infringe or violate) any third party's copyright, patent, trademark, trade secret or other proprietary rights.

(d)       No sale of the Assets will constitute a bulk sale subject to the Bulk Transfer Article of the Uniform Commercial Code for any state in which any of the Assets are located.

(e)       No Hazardous Substances are contained in or made a part of the Assets.  For purposes of this Agreement, the term "Hazardous Substances" shall mean, either individually or collectively, any chemical, solid, liquid, gas, or other substance having the characteristics identified in, listed under, or designated pursuant to (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) as amended, 42 USCA Section 9601(4), as a "hazardous substance," (ii) the Resource, Conservation and Recovery Act, 42 USCA Sections 6903(5) and 6921, as a "hazardous waste," or (iii) any other laws, statutes, or regulations of a government or political subdivision or agency thereof, as presenting an imminent and substantial danger to the public health or welfare or to the environment, or as otherwise requiring special handling, collection, storage, treatment, disposal, or transportation. Seller agrees that nothing in this Agreement shall be construed to require DoveBid to remove any Hazardous Substances that are present on the Premises or are contained in or a part of the Assets.

Seller acknowledges and agrees that DoveBid is relying on the foregoing representations and warranties in proceeding to conduct the sales provided for under this Agreement.  Seller agrees to defend (by counsel reasonably satisfactory to DoveBid) and indemnify DoveBid and hold DoveBid harmless from and against any claim, demand, cause of action, liability or expense (including reasonable attorneys' fees) asserted against or incurred by DoveBid in connection with Seller's breach of any of its representations, warranties or obligations in this Agreement.  If any action at law or in equity is brought to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs from the other party.

14.       **TERMINATION; RENEWAL:**

(a)      Seller and DoveBid each shall have the right to terminate this Agreement if the other party breaches any material term or condition of this Agreement and fails to cure or otherwise remedy such breach within 30 days after written notice.  Additionally, Seller shall have the right to terminate this Agreement should DoveBid become the subject of a voluntary or involuntary petition in bankruptcy or any voluntary or involuntary proceeding relating to insolvency, receivership, liquidation, or assignment for the benefit of creditors, if such petition or proceeding is not dismissed within 60 days of filing.

(b)      The terms of this Agreement shall terminate upon the expiration of the Initial Term unless the parties mutually agree to extend the Term for a defined period of time.

15.      **PUBLICITY:**  DoveBid shall have the right to issue publicity concerning this Agreement and this Agreement and to use Seller's name and logo in its advertising materials.

16.      **TECHNOLOGY WARRANTY AND DISCLAIMER:  DOVEBID REPRESENTS AND WARRANTS TO SELLER THAT THE PROCESSES USED BY DOVEBID IN PROVIDING ITS SERVICES TO COMPANY AND/OR CONDUCTING SALES HEREUNDER DO NOT INFRINGE THIRD-PARTY INTELLECTUAL PROPERTY RIGHTS. DOVEBID DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN THE WEBSITE, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH THE WEBSITE, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED; PROVIDED, HOWEVER, THAT IN THE EVENT A SALE OF ASSETS IS DELAYED OR CANCELLED DUE TO DEFECTS  IN THE WEBSITE, DOVEBID  WILL BEAR ALL COSTS ASSOCIATED WITH SUCH DELAY OR CANCELLATION.**

17.      **INDEPENDENT PARTIES:**  This Agreement shall not be construed (i) to create a partnership or joint venture between Seller and DoveBid, or (ii) to imply that DoveBid is buying the assets of, or any interest in, Seller.

18.      **COUNTERPARTS; FACSIMILE SIGNATURES:**  This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original and all of which, when taken together, will be deemed to be but one and the same instrument.  Delivering signatures via facsimile shall be an acceptable means of executing this Agreement, and signatures so delivered shall be fully binding on the signing party.

19.      **GOVERNING LAW:**  This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of Delaware as applied to agreements made in Delaware, without regard to choice of law principles.

22.      **SEVERABILITY:**  The provisions of this Agreement shall be severable.  Should any part, term or provision of this Agreement be construed by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the legality, validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby.

23.        **COMPLETE AGREEMENT:**  This Agreement constitutes the entire understanding between the parties and replaces any and all prior agreements related to the Sales.  This Agreement may not be modified or amended except in writing signed by both parties.

AMERICAN HOME MORTGAGE CORP.                          DOVEBID, INC.
E.I.N.: _____           California Bond Number 57BSBAI7624

By: _____           By: _____

Name: _____      Name: _____

Title: _____        Title: _____

Date: _____       Date: _____

**Exhibit A**



**DOVEBID**®
Business Auctions &
Valuations Worldwide

## PLAN OF SALE

This Plan of Sale (the "**Plan**") is entered into as of _____, 200__ (the "**Effective Date**") by and between DoveBid, Inc. ("**DoveBid**") and American Home Mortgage Holdings, Inc. ("**Seller**") pursuant to Section 1 of that certain Agreement for the Provision of Asset Disposition Services made as of December __, 2007 between DoveBid and Seller (the "**Master Agreement**"). Terms used but not independently defined in this Plan shall have the meanings ascribed to them in the Master Agreement.

By executing below, Seller agrees to retain DoveBid on an exclusive basis to dispose of those Assets set forth on Exhibit A(1) to this Plan in the following manner:

❑   A Webcast Auction to be held on or about _____, 2007.

❑   The Assets will be consigned into DoveBid's _____ auction (the "Auction"), which will be held

on or about _____, 200__.

❑   A Featured On-Line Auction to be held on or about _____, 2007.

❑   A traditional on-site auction to be held on or about _____, 2007.

❑   Through private treaty sales to be held for a period of ____ days after the Effective Date.

The terms of the Master Agreement shall control the services provided by DoveBid pursuant to this Plan.

Acknowledged and agreed to:

| AMERICAN HOME MORTGAGE CORP. | DOVEBID, INC. |
|---|---|
| E.I.N.: _____ | California Bond Number 57BSBAI7624 |

By: _____        By: _____

Name: _____        Name: _____

Title: _____        Title: _____

Date: _____        Date: _____

## EXHIBIT A(1)

### ASSETS

066585.1001

## EXHIBIT (A)(2)

### Budgeted Expenses

**Advertising and Direct Marketing**

**Labor**

**Travel / Lodging**

**Webcast Expenses**

**Miscellaneous**

Total Budget (Not To Exceed):  $_____.

The parties acknowledge that the above line items are approximate estimates provided at the time the Plan is prepared and that DoveBid's expenses in any given category may vary, provided overall expenses incurred for which DoveBid seeks reimbursement shall not exceed the above stated aggregate figure.

## EXHIBIT B

### Dove Affidavit

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
In re:                                       :    Chapter 11
                                             :
AMERICAN HOME MORTGAGE                       :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al. :
                                             :    Jointly Administered
          Debtors.                           :
                                             :
                                             :
--------------------------------------------------------- x
```

## AFFIDAVIT OF JOHN CARROLL PURSUANT TO BANKRUPTCY RULES 2014 AND 2016 IN SUPPORT OF (I) THE DEBTORS' EMPLOYMENT AND RETENTION OF DOVEBID, INC. AS AUCTIONEER; (II) THE TERMS OF COMPENSATION TO DOVEBID; AND (III) A LIMITED WAIVER OF LOCAL RULE 2016-2(d)

STATE OF CALIFORNIA    )
                       ) ss:
COUNTY OF SAN MATEO )

JOHN CARROLL, being duly sworn, deposes and says:

1.      I am the Senior Vice President, Business Development of DoveBid, Inc. ("DoveBid"), with offices located at 1241 East Hillsdale Boulevard, Foster City, California 94404, and is familiar with the auctioning and private sale services that American Home Mortgage Holdings, Inc. and its above captioned affiliated debtors and debtors in possession (collectively, the "Debtors" or "AHM") require in connection with the sale of assets of the Debtors as described in the Agreement for the Provision of Asset Disposition Services by and between DoveBid and the Debtors (the "DoveBid Agreement").

2.      This Affidavit is submitted in support of the Debtors motion (the "Motion") to retain DoveBid as auctioneer with respect to certain designated assets in the Debtors' chapter 11 cases pursuant to the terms and conditions of the DoveBid Agreement and in

accordance with sections 327(a) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code") and to provide disclosure as required under Rules 2014(a) and 2106(a) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of this

Court.

      3.    DoveBid was formed in 1937 and is a well-known auctioneer and capital

asset sale advisor and appraiser with approximately 200 employees located in 29 offices

worldwide. DoveBid's management team is comprised of veteran auctioneers, seasoned

appraisers, and experienced and skilled account executives, all of whom have substantial

experience in conducting asset sales. DoveBid has conducted thousands of auctions and

privately negotiated sales with respect to over $5,000,000,000 worth of assets. DoveBid

maintains a substantial, proprietary database of buyers representing a range of industries around

the world. DoveBid is duly licensed in all states for which it is required to be licensed.

      4.    To the best of Deponent's knowledge, after due inquiry, neither Deponent

nor any other officer or employee of DoveBid has any relationship or interest materially adverse

to, or business association with any other attorney, creditor, the United States Trustee (or any

person employed by the United States Trustee) or other parties to these proceedings.

Notwithstanding the foregoing, DoveBid has in the past provided auction and/or appraisal

services for, and/or may presently be engaged to provide auction and/or appraisal services for

those creditors or interested parties set forth on Exhibit 1 attached hereto, all in matters unrelated

to these proceedings. I believe that DoveBid is qualified to serve as auctioneer in connection

with the sale of the assets to be designated by the Debtors as contemplated in the DoveBid

Agreement.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　066585.1001

5.      DoveBid proposes to serve as auctioneer for the designated assets in accordance with the DoveBid Agreement.

6.      DoveBid requests that the compensation earned by DoveBid for its services rendered and expenses incurred in connection therewith be payable in accordance with, and subject to, the DoveBid Agreement, without further Order of this Court.

7.      DoveBid, in the ordinary course of its business, receives compensation on a fixed-percentage basis.  Accordingly, DoveBid will not keep detailed time entries with respect to any work performed on behalf of the Debtors.

8.      No promises have been received by DoveBid, or by any officer or employee thereof, for compensation in these cases other than in accordance with the DoveBid Agreement.  DoveBid has no agreements to share any compensation received in these cases.

9.      For all foregoing reasons, I believe that DoveBid is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
JOHN CARROLL

Sworn to before me this
_14th_ day of December, 2007

_____
Notary Public

ALBORZ AHOURAI
Commission # 1576626
Notary Public - California
San Mateo County
My Comm. Expires Jun 4, 2009

*Notary Service Provided By:*

**The UPS Store**
**#4153**

Marlin Cove Shopping Center
1098 Foster City Blvd., Suite #106
Foster City, CA 94404
Phone: (650) 341-4000 Fax: (650) 341-5005

4

## EXHIBIT 1

### DoveBid Disclosures

Wells Fargo Bank, N.A.
SunTrust Asset Funding, LLC
Bear, Stearns & Co. Inc.
Wells Fargo
Nomura Credit & Capital, Inc.
EMC
Lehman Brothers Inc.
HSBC Bank
Credit Suisse First Boston
GMAC
Bank of America, N.A.
Barclays Bank plc
Credit Suisse First Boston Mortgage Capital LLC
Bear Stearns
AT&T Corp.
Bank of New York
Barclays Bank plc
Merrill Lynch Pierce Fenner & Smith, Inc.
Merrill Lynch Bank USA
ORIX Capital Markets, LLC
Young Conaway Stargatt & Taylor, LLP
Kroll Zolfo Cooper