IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., a Delaware corporation, | ) | Case No. 07-11047 (CSS) |
| et al.[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| ------------------------------------------------------- | ) | |
| Waldner's Business Environments Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 07-51697 (CSS) |
| | ) | |
| American Home Mortgage Corp., | ) | |
| | ) | |
| Defendant. | ) | **Obj. Deadline: January 7, 2008 at 4:00 p.m. (ET)** |
| ------------------------------------------------------- | ) | **Hearing Date: January 14, 2008 at 2:00 p.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 105(a)
FOR AN ORDER APPROVING AND AUTHORIZING STIPULATION AND SETTLEMENT
AGREEMENT BETWEEN DEBTOR AND WALDNER'S BUSINESS ENVIRONMENTS INC.**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by

this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a
Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland
corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267);
American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC
("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc.
("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York
corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except
for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

of Bankruptcy Procedure ("Bankruptcy Rules") and section 105(a) of title 11 of the United States

Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving a stipulation and settlement

agreement (the "Settlement Agreement") by and among American Home Mortgage Corp.

("AHM Corp.") and Waldner's Business Environments Inc. ("Waldner's"), a copy of which is

attached as Exhibit A to the proposed form of Order annexed hereto (the "Order"). Waldner's

and AHM Corp. are referred to herein as the "Parties." In support of the Motion, the Debtors

respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.      On August 6, 2007 (the "Commencement Date"), each of the Debtors filed

with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each

Debtor is continuing to operate its business and manage its properties as a debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). No

trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

5.    Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6.    As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7.    A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing

---

[2]    The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief (the "First Day Declaration") [Docket No. 2], which is incorporated by reference.

serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8.    In the weeks prior to the Commencement Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

9.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business.  As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

10.    Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

11.    On the Commencement Date, the Debtors filed a motion [Docket No. 11], seeking authority, *inter alia*, to sell substantially all assets relating to the Debtors' mortgage loan servicing business (the "Servicing Business").  After a week long trial that commenced on October 15, 2007, by Order dated October 30, 2007 [Docket No. 1711], the Court approved the sale of the Servicing Business to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that

certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and supplemented, and including all schedules, exhibits, and attachments thereto).

## RELEVANT BACKGROUND

12.　　On August 22, 2007, Waldner's filed a Complaint (the "Complaint") against AHM Corp. alleging that it had reclamation rights to certain goods consisting for the most part of furniture as more particularly described in the invoices annexed to the Complaint as Exhibit "A" (the "Reclaimed Goods"), for which AHM Corp. agreed to pay the aggregate sum of $348,061.05.

13.　　On October 24, 2007, Waldner's filed a proof of claim (the "Proof of Claim") against AHM Corp.'s estate for $348,061.05 and alleged that a portion thereof was entitled to administrative expense priority status pursuant to 11 U.S.C. § 503(b)(9) and that the entire amount was subject to Waldner's right of reclamation under 11 U.S.C. § 546(c)(1).

14.　　Both Waldner's and AHM Corp. each claim to possess various rights and/or defenses with respect to the allegations contained in the Complaint.

15.　　Since the filing of the Complaint, AHM Corp. and Waldner's have engaged in negotiations in an attempt to settle and resolve the claims of each without the necessity of costly and time-consuming litigation between the Parties.

## SUMMARY OF THE SETTLEMENT AGREEMENT

16.　　AHM Corp. and Waldner's believe it is in their respective best interests to compromise and settle, without further litigation, the Complaint on the terms and subject to the conditions set forth in the Settlement Agreement. The effectiveness of the Settlement Agreement

is conditioned upon approval of the Bankruptcy Court.  The principal terms of the Settlement

Agreement are as follows:[3]

    a.    Upon the Court's approval of the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019, Waldner's shall withdraw the Proof of Claim, with prejudice, and the Complaint shall be voluntarily dismissed, with prejudice.

    b.    Upon the Court's approval and execution of the Settlement Agreement, the Debtor shall immediately surrender possession of the Reclaimed Goods to Waldner's and cooperate with Waldner's to identify same and allow Waldner's a reasonable amount of time (not to exceed ten (10) business days from the time Debtor's counsel faxes a copy of the order approving the Settlement Agreement to each of Waldner's counsel at the fax numbers set forth below or by email) to retrieve and remove same from the Debtor's premises, at Waldner's sole cost and expense.  It is expressly understood that the Reclaimed Goods in Debtor's possession were shown to Waldner's representative at Debtor's main office prior to entering into the Settlement Agreement and such Reclaimed Goods were located in five (5) offices in the main office of Debtor.  All references to "Reclaimed Goods" herein and hereinafter shall be deemed to expressly include this clarification and limitation of the Reclaimed Goods in Debtor's possession  to be returned to Waldner's.

    c.    Upon execution of the Settlement Agreement, the Debtor shall not tamper with, destroy, damage, disassemble, fabricate, transport, remove, transfer, sell, assign, pledge, or otherwise dispose of the Reclaimed Goods, until such time that the Bankruptcy Court may authorize otherwise.

### RELIEF REQUESTED

17.    By this Motion, the Debtors respectfully request entry of an order

approving the Settlement Agreement pursuant to Bankruptcy Rule 9019 and section 105(a) of the

Bankruptcy Code.  The Debtors have weighed the costs, risks and disruption that would arise

from litigating the Complaint and the Proof of Claim against the compromises contained within

---

[3]    The summary of the Settlement Agreement is qualified in its entirety by the Settlement Agreement.  If there are any inconsistencies between the summary contained herein and the Settlement Agreement, the Settlement Agreement shall control.  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Settlement Agreement.

the Settlement Agreement. In the Debtors' judgment, the Settlement Agreement is fair and

reasonable and serves the best interests of the Debtors, their estates and creditors.

## BASIS FOR RELIEF REQUESTED

18.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after

a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The

settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is

encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344

B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d

1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical

manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective

Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424

(1968).

19.     In determining the fairness and equity of a compromise in bankruptcy, the

United States Court of Appeals for the Third Circuit has stated that it is important that the

bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective

opinion of the probabilities of ultimate success should the claims be litigated, and estimated the

complexity, expense and likely duration of such litigation, and other factors relevant to a full and

fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d

Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998)

(quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry

to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

20.     The Third Circuit Court of Appeals has enumerated four factors that

should be considered in determining whether a settlement should be approved. The four

enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

21.    The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

22.    The Debtors respectfully request that the Court approve the Settlement Agreement because the Settlement Agreement lies well above the lowest point in the range of reasonable potential litigation possibilities. In addition, each of the applicable Martin factors weighs in favor of approving the Settlement Agreement. Accordingly, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

A.  **The Probability Of Success In Litigation**

23.     As with all litigation, the probability that AHM Corp. will prevail in

defending the Complaint and in subsequent claim litigation with Waldner's is uncertain.  Absent

the Settlement Agreement, the disputes between AHM Corp. and Waldner's would have to be

litigated before the Court with no assurances of a favorable outcome.  The resolution of these

disputes with Waldner's under the terms of the Settlement Agreement, without the need for

further litigation, is a favorable outcome because it will save the Debtors significant time and

expense in the litigation of the Complaint and potential litigation in connection with the Proof of

Claim and result in a withdrawal of both the Complaint and the Proof of Claim, with prejudice.

B.  **The Complexity Of The Litigation Involved, And The Expense,
Inconvenience And Delay Necessarily Attending It**

24.     The Settlement Agreement satisfies the second factor in <u>Martin's</u> four-

factor test largely for the reasons set forth above in the discussion of the Debtors' probability of

success in litigation.  Litigation of the Complaint and the Proof of Claim would involve complex

legal issues and a potentially lengthy adversary proceeding, which would be expensive for the

estate and inconvenient for the parties.

C.  **The Paramount Interest Of Creditors**

25.     Entry into the Settlement Agreement serves the paramount interest of

creditors of the Debtors.  The Settlement Agreement's resolution of the Complaint and the Proof

of Claim represents a savings for the creditors by obviating further litigation, thereby saving the

expenses attendant to such litigation, while at the same time eliminating the Proof of Claim.

Further, the Reclaimed Goods to be surrendered to Waldner's under the Settlement Agreement

are not necessary for the administration of the Debtors' bankruptcy cases.  Therefore, the third

factor of <u>Martin's</u> four-factor test is satisfied and weighs in favor of the Court approving the

Settlement Agreement.

**D.    The Likely Difficulties In Collection**

26.    Finally, the fourth factor enunciated by the Third Circuit in <u>Martin,</u> is not

applicable under these circumstances.

**E.    Summary**

27.    The settlement of the Complaint and the Proof of Claim embodied in the

Settlement Agreement:  (i) is fair and equitable; (ii) represents a settlement that rests well above

the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the

expense, delay, inconvenience and uncertainty that would attend any litigation of the Parties'

issues; and (iv) advances the paramount interests of creditors.  Therefore, the Settlement

Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court

<u>NOTICE</u>

28.    Notice of this Motion will be provided to (i) the United States Trustee for

the District of Delaware; (ii) counsel to Bank of America, N.A., as Administrative Agent for the

lenders under that certain Credit Agreement dated August 30, 2004; (iii) Counsel to the Agent

for the Debtors' Postpetition Lender; (iv) counsel to the Creditors' Committee; (v) counsel to

Waldner's; and (vii) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is

required.

<u>NO PREVIOUS REQUEST</u>

29.    No prior request for the relief sought in this Motion has been made to this

or any other court.

WHEREFORE, the Debtors respectfully request that this Court issue and enter an

Order, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, (i)

approving the Settlement Agreement, and (ii) granting such other and further relief as may be

just and proper.

Dated:  Wilmington, Delaware
       December 21, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Curtis J. Crowther (No. 3238)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession