## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br><br>Re: Docket No. 2395 |

**OBJECTION OF FEDERAL HOME LOAN MORTGAGE CORPORATION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554 AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION OF CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS UPON PAYMENT OF REASONABLE COSTS AND EXPENSES**

Federal Home Loan Mortgage Corporation ("Freddie Mac"), by and through its undersigned counsel, hereby files this Objection (the "Objection") to the Motion For An Order Pursuant To 11 U.S.C. §§ 105, 363 And 554 Authorizing The (I) Abandonment And Destruction Of Certain Duplicate Mortgage Loan Files Or (II) Return Of Mortgage Loan Files To The Owner Of Such Loans Upon Payment Of Reasonable Costs And Expenses (the "Motion") (D.I. 2395) filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), and in support thereof states as follows:

### FACTUAL BACKGROUND

1.   On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.   Also on August 6, 2007, the Debtors filed their Emergency Motion Of The Debtors For An Order (I) Authorizing The Sale Of Such Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (II) Authorizing And Approving Purchase

Agreement Thereto; (III) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And (IV) Granting Related Relief (the "Sale Motion") (D.I. 11).

3. On September 10, 2007, Freddie Mac filed the Motion of Federal Home Loan Mortgage Corporation for an Order Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362 (D.I. 676) (the "Freddie Mac Stay Relief Motion"). As set forth more fully in the Freddie Mac Stay Relief Motion, Freddie Mac terminated the Debtors' right to service the Freddie Mac loan portfolio prior to the Petition Date.

4. On September 18, 2007, the Debtors and Freddie Mac executed two stipulations to resolve, *inter alia*, the Freddie Mac Stay Relief Motion, the parties' disputes concerning Freddie Mac's prepetition termination of the Debtors as servicer, and Freddie Mac's objections to the Sale Motion. The stipulations are identified as (i) the Stipulation of Settlement Between and Among the Debtors, Bank of America, N.A., and Federal Home Loan Mortgage Corporation Regarding Interim Servicing of Federal Home Loan Mortgage Corporation Loans (the Interim Servicing Stipulation"), and (ii) the Stipulation of Settlement Between and Among the Debtors and Federal Home Loan Mortgage Corporation Regarding the Sale of Servicing of Federal Home Loan Mortgage Corporation's Loans (the "Sale Stipulation" and collectively with the Interim Servicing Stipulation, the "Stipulations"), each of which is incorporated by reference herein. In sum, the Stipulations provide for, *inter alia*, an interim servicing transfer to Bank of America N.A. ("BofA") and a subsequent auction sale of the Freddie Mac servicing rights to be conducted in accordance with the Sale Stipulation separate and apart from the Debtors' Section 363 asset sale.

5. Specifically, the Interim Servicing Stipulation provides, among other things, that

> Debtors shall turn over the imaged, microfiche, hard copies and any other form of the Freddie Mac Files in its physical possession in their existing format, to BofA, which transfer shall begin no later than the date of the order approving this Stipulation and be substantially complete on or before November 2, 2007 . . . (hereinafter, the "Interim Hard Copy Servicing Transfer" . . .)

Interim Servicing Stipulation, ¶ 2, p. 5.

6. On or about September 20, 2007, the Bankruptcy Court entered orders approving the Stipulations.

7. As of November 2, 2007, the Debtors had failed to substantially complete the Interim Hard Copy Servicing Transfer in accordance with the Interim Servicing Stipulation. By way of a letter dated November 16, 2007[1], counsel for Freddie Mac advised counsel for the Debtors that the servicing files for about 50 percent (more than 2000) of the Freddie Mac mortgage loans had not yet been turned over to BofA, despite repeated and continual efforts to obtain them.

8. On or about November 27, 2007, counsel for the Debtor advised counsel for Freddie Mac that approximately 990 of the outstanding mortgage loan files had been shipped, and that the remainder of the files would be shipped on a rolling basis (at a rate of about a 200 per day) until the Interim Hard Copy Servicing Transfer was complete.

9. As of the date of this Objection, the Interim Hard Copy Servicing Transfer has still not been completed. Subject to verification, approximately 1147 of the Freddie Mac mortgage loan files have not been transferred to BofA in accordance with the Interim Servicing Stipulation. Additionally, it appears that hundreds of the original notes and recorded security instruments relating to the Freddie Mac mortgage loans have not been transferred. These

---

[1] A copy of the letter is attached hereto as <u>Exhibit A</u>.

documents are necessary for the processing of any payoffs, refinances, assumptions, foreclosures and other transactions involving the loans.

10.     On December 14, 2007, the Debtors filed the Motion, seeking authority to, *inter alia*, abandon and destroy approximately 490,000 "Duplicate Hard Copy Loan Files." The Motion also provides that the Debtors will "return the Duplicate Hard Copy Loan Files to the owner of such loans upon written request and payment of all reasonable costs and expenses associated with the retrieval, review and return." Motion, ¶ 21, p. 7.

## OBJECTION

11.     Pursuant to the Stipulations, which have been approved by the Court, the servicing rights related to the Freddie Mac portfolio were to be transferred to BofA on an interim basis pending a subsequent auction sale. It is now over seven weeks past the agreed-upon November 2, 2007 deadline and the Debtors have still failed to substantially complete the Interim Hard Copy Servicing Transfer in accordance with the Interim Servicing Stipulation.

12.     Despite this failure, the Debtors have now filed the Motion seeking authority to destroy almost half of the hard copy loan files in their possession. This request for authority to destroy almost one-half million unidentified loan files is especially problematic when viewed in light of the Debtors' ongoing inability to locate and transfer the Freddie Mac mortgage loan files to BofA in accordance with the Interim Servicing Stipulation. This inability to locate and forward Freddie Mac's loan files during the three month period since the Stipulations were executed is presumably indicative of a deficiency in the Debtors' recordkeeping and organization of mortgage loan files. To avoid the destruction of irreplaceable mortgage loan files, as well as original notes and security instruments, belonging to Freddie Mac, the Court should deny the

Debtors' Motion pending absolute completion of the Interim Servicing Transfer (as defined in the Interim Servicing Stipulation).

13. Denial of the Motion is appropriate given the relatively insignificant harm to the Debtors as weighed against the considerable damages which could be suffered by Freddie Mac in the event its loan files were destroyed. According to the Motion, the Debtors are currently paying approximately $45,000 per month to store 1.1 Million hard copy loan files. The immediate destruction of the 490,000 "Duplicate Hard Copy Loan Files" would save the Debtor approximately $20,000 per month, a relatively insignificant sum in this case. On the other hand, Freddie Mac stands to suffer considerable harm from any destruction of its mortgage loan files, including a potential inability (i) to enforce its rights under any loan for which the loan documents were inadvertently destroyed or (ii) to provide releases and/or discharges of the notes and security instruments upon payoff, as potentially required by the loan documents and applicable state law. It is the Debtors' failure to comply with the Interim Servicing Stipulation that has necessitated this Objection. Thus, the balance of the equities weighs in favor of denying the Debtors' Motion until the Interim Servicing Transfer has been finally and fully completed in accordance with the parties' Stipulations.

14. Additionally, Freddie Mac objects to the Motion to the extent that it seeks to impose upon Freddie Mac the "costs and expenses associated with the retrieval, review and return" of the Freddie Mac mortgage loan files. See Motion, ¶ 21, p. 7. Any attempt by the Debtors to impose such costs and expenses upon Freddie Mac is contrary to the parties' agreement embodied in the Stipulations. Specifically, the Sale Stipulation provides that Freddie Mac has a "first priority right of payment" from the proceeds generated by the auction sale of the Freddie Mac servicing rights, which includes payment in full of, *inter alia*, all costs incurred by

Freddie Mac with respect to an Interim Servicing Transfer. See Sale Stipulation, ¶ 3, p. 3; Acknowledgment Agreement, § 8(a)2, p. 5.[2] Accordingly, the Motion should be denied to the extent that it seeks to impose the costs of the Interim Servicing Transfer upon Freddie Mac in contravention of the Stipulations.

WHEREFORE, Freddie Mac respectfully requests that the Court (i) sustain the Objection; (ii) deny the relief requested in the Motion to the extent that the Debtors seek to destroy any files or records prior to full and final completion of the Interim Servicing Transfer to Freddie Mac; (iii) deny the relief requested in the Motion to the extent such relief is inconsistent with the Stipulations; and (iv) grant such other and further relief as is just and proper.

---

2  The Sale Stipulation provides, *inter alia*, that

> The Debtors acknowledge and agree that Freddie Mac has a first priority right of payment from the proceeds (the "Servicing Transfer Proceeds") generated by the Auction Sale. The total amount of "Freddie Mac's Claims" and "Freddie Mac's Servicing Transfer Costs" (as such terms are defined in the Acknowledgement Agreement) to be deducted from the Servicing Transfer Proceeds . . . will be determined as of the date of the Permanent Serving Transfer in accordance with the Acknowledgment Agreement.

Sale Stipulation, ¶ 1, p. 3. The Acknowledgement Agreement, executed by Freddie Mac, the Debtor and BofA on or about July, 2005 and incorporated into the Stipulations, defines "Freddie Mac's Servicing Transfer Costs" as

> all costs and expenses incurred by Freddie Mac relating to or arising from a Termination With Cause or a Termination Without Cause; all payments made or costs incurred by Freddie Mac with respect to an Interim Servicing Transfer; and all costs and expenses incurred by Freddie Mac in connection with an actual or proposed Permanent Servicing Transfer; and including Freddie Mac's attorneys' fees and costs.

Acknowledgement Agreement, § 8(a)2, p. 5.

Dated: December 26, 2007  
      Wilmington, Delaware

Respectfully submitted,

By: /s/ J. Cory Falgowski  
J. Cory Falgowski (No. 4546)  
REED SMITH LLP  
1201 Market Street, Suite 1500  
Wilmington, DE 19801  
Telephone: 302-778-7500  
Facsimile: 302-778-7575  
E-mail: jfalgowski@reedsmith.com

and

George Kielman, Esquire  
Associate General Counsel for Litigation  
Freddie Mac  
8200 Jones Branch Drive - MS 202  
McLean, VA 22102  
Telephone: 703-903-2640  
Facsimile: 703-903-3691  
E-mail: george_kielman@freddiemac.com

Counsel for Federal Home Loan Mortgage Corporation