IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AMERICAN HOME MORTGAGE | § | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, | § | (Jointly Administered) |
| et al., | § | |
| | § | |
| | § | Ref. Docket No. 2395 |
| Debtors. | § | Hearing Date: January 4, 2008 @ 11:00 a.m. |
| | § | Objections Due: December 27, 2007 @ 4:00 p.m. |

**OBJECTION OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363
AND 554 AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION OF
CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF
MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS
UPON PAYMENT OF REASONABLE COSTS AND EXPENSES**

JPMorgan Chase Bank, National Association ("JPMC"), by and through its undersigned counsel and in accordance with §§ 105, 363 and 554 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001, 6004, 6007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "FRBP"), hereby files this Objection (the "Objection") to the *Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363 and 554 Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan Files or (II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of Reasonable Costs and Expenses* [Dkt. No. 2395] (the "Motion"), and in support of its Objection, respectfully states as follows:

**BACKGROUND FACTS**

1. On August 6, 2007 (the "Petition Date"), American Home Mortgage Investment Corp. ("AHMIC") and certain of its affiliates and subsidiaries (collectively, the "Debtors" and, individually, a "Debtor") commenced voluntary cases under Chapter 11 of the Bankruptcy Code in this Court (the "Bankruptcy Cases"). The Debtors remain in possession of their property and are

managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an Official Committee of Unsecured Creditors. No Chapter 11 trustee or examiner has been appointed in these cases.

A.   **The 1/06 $200 Million Warehouse Facility.**

2.   JPMC is one of the Debtors' warehouse lenders. On or about January 24, 2006, AHMIC and American Home Mortgage Corp. ("AHM") entered into a $150 million senior, secured revolving warehouse facility (the "Warehouse Facility") with JPMC (as Administrative Agent and sole Lender), pursuant to that certain 1/06 SENIOR SECURED CREDIT AGREEMENT (as subsequently amended, supplemented and extended) (the "1/06 Credit Agreement"). In accordance with the 1/06 Credit Agreement, AHMIC and AHM executed the $150,000,000 1/06 JPMORGAN CHASE BANK SENIOR CREDIT NOTE in favor of JPMC on January 24, 2006 (the "1/06 Senior Note"). JPMC is the sole lender and administrative agent under the Warehouse Facility.

3.   Under Article VII of the 1/06 Credit Agreement, AHMIC and AHM granted a first-priority lien and security interest in, among other things, the pledged residential mortgage loans upon which the warehouse financing was to be extended, the underlying chattel paper and other loan documentation evidencing those loans, and all proceeds, accessions or other rights of any kind related to these loans (collectively, the "Warehouse Facility Collateral"). JPMC has, as Administrative Agent for the Warehouse Facility, perfected the liens and security interests granted to it in and against the Warehouse Facility Collateral.

4.   Since the 1/06 Credit Agreement was executed, JPMC, AHMIC and AHM have amended it four (4) separate times (collectively, the "1/06 Credit Amendments") including, without limitation, the 5/07 AMENDMENT TO SENIOR SECURED CREDIT AGREEMENT, dated May 14, 2007 (the "5/07 Amendment"). Among other things, the 5/07 Amendment further extended the 1/06

Credit Agreement's maturity date to May 12, 2008 and increased the Maximum Aggregate Commitment to $200,000,000. In conjunction with the 5/07 Amendment, AHMIC and AHM replaced the 1/06 Senior Note and the 4/06 Senior Note with the "$200,000,000 5/07 JPMORGAN CHASE BANK SENIOR CREDIT NOTE" (the "5/07 Senior Note") in favor of JPMC. The 5/07 Senior Note is the currently effective note under the Warehouse Facility in favor of JPMC. (The 1/06 Credit Agreement, as amended by the 1/06 Credit Amendments, together with any accompanying financing statements, and all other related documents are sometimes collectively referred to herein as the "Warehouse Facility Papers".)

5.  As of the Petition Date, the outstanding principal balance (not including accrued interest, fees, expenses and other charges) under the 1/06 Credit Agreement was approximately $158 million. On August 1, 2007, JPMC sent a Notice of Default to AHMIC and AHM declaring a default under the 1/06 Credit Agreement because of AHMIC's and AHM's inability to meet a July 27, 2007 margin call on the Warehouse Facility Collateral. The Debtors' failure to make payment on the Warehouse Facility and the commencement of these Bankruptcy Cases constitute defaults under the Warehouse Facility Papers pursuant to section 11.1 of the 1/06 Credit Agreement.

**B.    The JPMC Stay Relief Motion.**

6.  On November 21, 2007, JPMC filed the *Motion for Relief from Automatic Stay, Pursuant to 11 U.S.C. Sec. 362(d), to Foreclose on and Preserve Collateral Consisting of Outstanding Construction/Permanent Loans on Single-Family Residences* (the "Stay Relief Motion") [Docket No. 2135]. In the Stay Relief Motion, JPMC asserted, among other things, that it is entitled to relief from the automatic stay to permit it to exercise any and all rights it may have with respect to certain construction/permanent loans, including without limitation foreclosing on the construction/permanent loans under applicable non-bankruptcy law, advancing any and all amounts

necessary to fund required construction draws, taking over the servicing functions of American Home Mortgage Servicing, Inc. ("AHM Servicing") with regard to the construction/permanent loans, and performing whatever other actions may be necessary to protect the value of the construction/permanent loans and JPMC's liens and security interests therein, including, but not limited to, Hard Copy Loan Files (as defined below) constituting Warehouse Facility Collateral.

C.      **The Motion to Abandon and/or Destroy Loan Files.**

7.      On December 14, 2007, the Debtors filed the Motion seeking authority from the Court to abandon and/or destroy certain hard copies of individual consumer mortgage-loan files (the "Hard Copy Loan Files") in the Debtors' possession. The Debtors claim that the Hard Copy Loan Files consist of extra copies of "consumer loan applications, closing documents, titles and home appraisals" sent to their corporate headquarters in Melville, New York from various field offices. (Mtn. ¶ 11).

8.      According to the Debtors, they currently hold 1.1 million Hard Copy Loan Files in storage at American Corporate Record Center, Inc. (the "Storage Facility"), a third-party document storage facility. The Motion claims that the storage costs associated with keeping the Hard Copy Loan Files at the Storage Facility represent an "unnecessary administrative burden" on their estates and that the destruction of these files is an appropriate exercise of their business judgment. (Mtn. ¶¶ 23-26). The Debtors propose to retain approximately 490,000 electronic files (the "E-Loan Files") previously imaged from the Hard Copy Loan Files. It is not clear from the Motion whether the Debtors are limiting the proposed destruction to the Hard Copy Loan Files corresponding to the E-Loan Files (the "Duplicate Hard Copy Loan Files"), or whether they intend to destroy all Hard Copy Loan Files, although it appears that the latter is their ultimate intent. If the Debtors do intend to destroy all Hard Copy Loan Files, it is not clear that they have a plan in place to image all files

that are not yet imaged, or to ensure that the imaging process, if there is to be one, is accurate and complete.

9.  Certain of these Hard Copy Loan Files (and, perhaps, some Duplicate Hard Copy Loan Files) must reflect pledged residential mortgage loans that constitute Warehouse Facility Collateral of JPMC. JPMC, as the secured party in the Warehouse Facility Collateral, also has a lien and security interest in all documents (including all copies of such documents) associated with mortgage loans serving as its collateral. (1/06 Agr., § 7.1(b) & (h)). As explained in detail below, the Debtors' proposal to abandon and destroy the Hard Copy Loan Files fails to protect JPMC's interest in these documents and, for that reason, JPMC objects to the Motion.

## OBJECTION AND REQUEST FOR RELIEF

### A.  JPMC May Object to the Motion Under the Bankruptcy Code and Applicable Law.

10.  The Motion seeks authority to abandon and/or destroy the Hard Copy Loan Files under Bankruptcy Code §§ 105, 363 and 554. (Mtn. ¶ 21). Specifically, the Debtors seek to abandon the Hard Copy Loan Files under § 554 and to destroy them under § 363(e). (Id. ¶ 25). As a party holding a security interest in those certain Hard Copy Loan Files associated with its Warehouse Facility Collateral, JPMC may object to the files' proposed abandonment (and/or to the procedure for that abandonment) under Bankruptcy Code § 554 and FRBP 6007(a). 11 U.S.C. § 554; FED. R. BANKR. P. 6007(a) ("A party in interest may file and serve an objection [to abandonment] within 15 days of the mailing of the notice, or within the time fixed by the court."); *see also In re Thompson*, 193 B.R. 83, 84 (D.D.C. 1994) (holding that creditors and parties in interest may object to abandonment); *In re Caron*, 50 B.R. 27, 29-30 (Bankr. N.D. Ga. 1984) ("The purpose of the notification to parties in interest is to provide an opportunity for any potential opposition to the abandonment of such property to file objections and be heard by the Court.").

11. Even more important, however, JPMC, as the holder of a security interest in certain of the Hard Copy Loan Files the Debtors propose to destroy, has the right under Bankruptcy Code § 363(e) to adequate protection of its security interest. 11 U.S.C. § 363(e). Section 363(e) provides that a bankruptcy court may "prohibit or condition" a proposed use, sale, or lease of particular property as may be necessary to provide adequate protection of the interest of a third party in that property. *Id.; see also, e.g., In re Magness*, 972 F.2d 689, 697 (6th Cir. 1992) (holding that bankruptcy court could prohibit proposed sale of golf membership that interfered with the rights of third parties); *In re RB Furniture, Inc.*, 141 B.R. 706 (Bankr. C.D. Cal. 1992) (holding that any time a debtor-in-possession or trustee proposes to use property in which a third party has an interest, the bankruptcy court shall condition such use "'as is necessary to provide adequate protection of such interest'."). A party with an interest in property may object to the proposed use and seek adequate protection of its interest in accordance with the procedures outlined in FRBP 6004(b) and FRBP 4001(d), respectively. FED. R. BANKR. P. 4001(d); 6004(b).

12. JPMC does not object in principle to the Debtors' proposed abandonment of the Hard Copy Loan Files. JPMC recognizes that storing these documents is costly for the Debtors' estates. Under such circumstances, the Debtors' request to abandon their interest is reasonable. What concerns JPMC, though, is the Debtors' proposal to *destroy* these records according to a vague process that does not adequately protect JPMC's security interest in the Hard Copy Loan Files. *See* 11 U.S.C. § 363(e). In particular, the Motion contains multiple ambiguities and lacks sufficient safeguards to prevent the possible destruction of crucial data in the Hard Copy Loan Files. The remainder of this Objection outlines several of the more serious problems with this Motion.

B. <u>The Motion Does Not Adequately Protect JPMC's Security Interest in the Hard Copy Loan Files.</u>

13. The Motion does not adequately protect JPMC's security interest in the Hard Copy

Loan Files for several reasons. First, the Motion makes clear that not all of the Hard Copy Loan Files have been imaged and stored electronically as E-Loan Files as of the Motion's filing date. (Mtn. ¶¶ 13-16). Nevertheless, the Debtors propose ultimately to destroy all the Hard Copy Loan Files—even apparently those that have not yet been imaged. (Id. ¶¶ 25-30). JPMC flatly objects to the destruction of any files constituting its collateral unless they are imaged first. Destroying the Hard Copy Loan Files before they can be imaged will jeopardize the resale value of the underlying loans and, perforce, of JPMC's Warehouse Facility Collateral.

14.     Moreover, even if the Debtors make electronic copies of the Hard Copy Loan Files, JPMC's and its affiliates' past experience has revealed that the images in the Debtors' E-Loan Files are often incomplete and fragmentary. For example, in the past when the Debtors have transferred servicing of certain mortgage loans to JPMC and/or its designated servicer (such as in the context of a securitization transaction), JPMC and/or its designee have received imaged E-Loan Files. On occasion, critical documents have been missing from these E-Loan Files, or the electronic images themselves were illegible or only partially complete. In these instances, the parties have relied on the Hard Copy Loan Files to fill in the missing gaps and to locate usable copies for further imaging. For these reasons, destroying even the Duplicate Hard Copy Loan Files (let alone the remaining Hard Copy Loan Files not yet imaged) constituting Warehouse Facility Collateral risks undermining the quality of the documentation for the residential mortgage loans serving as JPMC's collateral. The lowered quality of this documentation will then, in turn, undermine the resale value of these loans, diminishing the Warehouse Facility Collateral's value. JPMC therefore objects to any destruction of the Hard Copy Loan Files, including any Duplicate Hard Copy Loan Files, constituting Warehouse Facility Collateral and requests that these copies be delivered directly to JPMC, or that a process be established to confirm to JPMC's satisfaction that any E-Loan Files are

complete, accurate and legible.

15. Second, to be fair, the Motion does contemplate a procedure by which "legal owners" (the Debtors' phrase) of the underlying loans may request the Hard Copy Loan Files associated with their loans. (Mtn., ¶¶ 29). This procedure could conceivably mitigate JPMC's concerns about the destruction of the Hard Copy Loan Files by providing JPMC and others in its position with a means to request delivery of these documents. However, the procedure proposed in the Motion is vague and ambiguous and does not adequately protect JPMC's security interest in the Hard Copy Loan Files. Among other things, the Motion does not describe any procedure to assure that it is feasible to locate specific Hard Copy Loan Files quickly and efficiently. That is of particular concern because the procedure lacks any time-table by which these requests may be made before the documents are destroyed. (Id.) The Motion does not establish a document-destruction schedule or impose any deadline to lodge a document request. On its face, the Motion grants the Debtors complete discretion to start destroying files at any time. Worse yet, the Motion simply asserts that the Debtors may refuse to grant a request to deliver documents if they have already been destroyed, raising the possibility that a requester could quickly send a proper demand for files only to find that the Debtors no longer have them. This is unacceptable.

16. In addition, the Motion also fails to outline the precise qualifications for a "legal owner" entitled to request Hard Copy Loan Files. (Mtn. ¶ 29). The phrase itself is left undefined. JPMC certainly believes it qualifies as a "legal owner", but the Motion contains nothing by which JPMC can determine whether the Debtors think likewise. To further confound this definitional problem, the Motion does not identify the party or parties entitled to decide in any particular case who qualifies as a "legal owner." On the face of the Motion's proposed order, the Debtors can make this decision all on their own. Further, the Motion proposes to shift the obligation to pay the

"reasonable costs and expenses of retrieval" to the requesting party. (Id.) In essence, the Debtors seek to impose the burden on their creditors to pay the reasonable costs of preserving the creditors' collateral which the Debtors seek permission to destroy for the Debtors' own convenience. Even if the creditors were to end up paying those costs, it would appear that the Debtors would have unfettered authority to decide what is "reasonable." The Motion also does not provide any procedure for resolving disputes between the Debtors and a purported "legal owner" regarding the legal owner's right to request particular Hard Copy Loan Files, the "reasonableness" of the expenses charged, and so on. At the very least, some sort of continuing role by this Court in adjudicating these kinds of issues is essential. If the Debtors cannot clarify these ambiguities, then JPMC objects to the relief sought in the Motion as not providing adequate protection of its security interest in the Hard Copy Loan Files.

17.    Third, the Motion does not identify the location of the Debtors' original loan documentation (i.e., the actual loan applications, closing documents, titles, and so on) or what impact this Motion may have on these originals. It is possible that the originals of some or all of these documents are held with appropriate collateral agents and/or designated depositories and should remain unaffected, but the Motion is silent on this point. According to the Motion, the Debtors' various loan origination offices would send copies of these documents to the Melville headquarters. (Mtn., ¶ 11). If that description is accurate, it begs the question of what has happened to the originals. The Debtors maintain that they have closed the origination offices. The Debtors' creditors therefore need to know where the original files are now and should be given some adequate assurance of the security of those files. If, on the other hand, the Debtors actually sent the original files to Melville, as JPMC suspects may be the case, the Debtors need to clarify that they do not intend to destroy original loan documents. JPMC would object to the Motion in its entirety if

the Debtors are in fact seeking to destroy any originals.

18. For these reasons, the relief requested in the Motion does not adequately protect JPMC's security interest in certain of the Hard Copy Loan Files constituting Warehouse Facility Collateral. 11 U.S.C. § 363(e); *Magness*, 972 F.2d at 697. JPMC requests that the Court either prohibit or condition the Debtors' proposed destruction of these Hard Copy Loan Files so that JPMC's security interest is adequately protected.

## RESERVATION OF RIGHTS

19. JPMC reserves the right to amend, supplement, modify, or withdraw this Objection in whole or in part at any time. JPMC does not waive any right it may have by filing this Objection. JPMC also reserves the right to provide additional briefing on the legal issues presented here. Finally, JPMC specifically reserves its right to seek relief from the automatic stay and/or to assert any other arguments with respect to any rights and remedies it may have *vis a vis* the Debtors.

**WHEREFORE**, JPMC requests that the Court: (i) either deny the Motion in its entirety or condition the relief sought in the Motion to provide adequate protection of JPMC's security interest in the Hard Copy Loan Files, pursuant to Bankruptcy Code § 363(e), and (ii) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>December 27, 2007 | LANDIS RATH & COBB LLP<br><br>/s/ Adam G. Landis<br>_____<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>919 Market Street, Suite 600<br>P.O. Box 2087<br>Wilmington, DE 19801<br>(302) 467-4400<br><br>-and-<br><br>LOCKE LORD BISSELL & LIDDELL LLP<br>Thomas H. Grace<br>Texas Bar No. 00785453<br>Federal I.D. No. 12618<br>W. Steven Bryant<br>Texas Bar No. 24027413<br>Federal I.D. No. 32913<br>600 Travis Street, Suite 3400<br>Houston, Texas 77002<br>Telephone: 713-226-1200<br>Facsimile: 713-223-3717<br><br>ATTORNEYS FOR JPMORGAN CHASE BANK,<br>NATIONAL ASSOCIATION,<br>AS ADMINISTRATIVE AGENT AND LENDER |