IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) |
| AMERICAN HOME MORTGAGE <br> HOLDINGS, INC., *et al.*, | ) Case No. 07-11047 (CSS) <br> ) <br> ) |
| Debtors. | ) **Objection Deadline: January 7, 2008 at 4:00 p.m. (ET)** <br> ) **Hearing Date: January 14, 2008 at 2:00 p.m. (ET)** |

**CITIMORTGAGE INC.'S MOTION TO LIFT THE AUTOMATIC STAY AND
TO COMPEL DEBTORS TO RELEASE LOAN DOCUMENTS**

CitiMortgage, Inc. ("CMI") moves this court to lift the automatic stay pursuant to Sections 362(d) and 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 4001(a)(1) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and to compel American Home Mortgage Corp., American Home Mortgage Servicing, Inc. and certain affiliates (collectively, the "Debtors" or "AHM") to return to CMI all Loan documentation relating to the mortgages Debtors sold to CMI pre-petition under the Correspondent Loan Purchase Agreement and attached addendums dated August 9, 2001 (the "2001 Correspondent Agreement"), the Correspondent Loan Purchase Agreement and attached addendums dated January 27, 2005 (the "2005 Correspondent Agreement"), the Bulk Purchase Amendment dated July 16, 2003 (the "2003 Amendment") and the Citimortage Correspondent Manual, last revised on February 8, 2007 (the "CMI Manual") (collectively, the "Correspondent Loan Agreements").

The Loan documents are, by operation of law and by agreement, CMI's property and are not, therefore, properly included in the Debtors' estates. Indeed, Debtors admit that they have only bare legal title to these documents in their Omnibus Response to Certain Objections to the Sale of Certain Assets and the Assumption and Assignment of Executory Contracts Relating to the Debtors' Loan Servicing Business (the "Omnibus Response"). [Docket No. 1443].

1642113

Moreover, Debtors must immediately hand over the Loan documentation without "payment of reasonable costs and expenses" (payments to which Debtors suggest they are entitled to in their Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363 and 554 Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan Files or (II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of Reasonable Costs and Expenses (the "Abandonment Motion")). [Docket No. 2395]. Debtors have no authority to abandon and destroy or otherwise request a retrieval fee for property Debtors do not own. (Although, Debtors seem to contradict themselves in their Abandonment Motion, in which they claim the documents are property of the estate. *See infra.*)

Debtors should have already turned over the Loan documents to CMI. Instead, they have continued to hold on to these documents in breach of the Correspondent Loan Agreements, and now have the temerity to request/require that CMI pay Debtors for the return of its own documents. If any party should be required to pay a fee, it should be the Debtors, because their failure to turn over these documents has caused CMI to incur additional fees and expenses.

Accordingly, CMI asks this Court to issue an order pursuant to Sections 362(d), 541(d) and its equitable powers under Section 105 lifting the stay and requiring Debtors to return the Loan documents without cost to CMI.

## JURISDICTION

1. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief CMI seeks in this motion are Sections 362(d), 541(d) and 105(a) of the Bankruptcy Code, and Bankruptcy Rules 4001(a)(1) and 9014.

## BACKGROUND

3.  Prior to filing their bankruptcy petitions, Debtors were in the business of originating mortgage loans and selling them in the secondary mortgage market to institutional investors. Debtors were, therefore, parties to a number of correspondent loan purchase agreements with institutional investors. Under these agreements, AHM as "correspondent" would sell to an investor mortgage loans on either a "servicing-retained" or "servicing-released" basis. If an investor bought loans on a "servicing-retained" basis, AHM would act as a servicer of the purchased loans; however, if an investor bought loans on a "servicing-released" basis, the investor maintained the right to service the purchased loans.

4.  On August 9, 2001 and January 27, 2005, AHM entered into the respective 2001 and 2005 Correspondent Agreements with CMI on a servicing-released basis. Attached as Exhibits 1 and 2 are true and correct copies of these agreements. For each Loan AHM offered for sale under the 2001 and 2005 Correspondent Agreements, AHM agreed to deliver the related Loan documentation in accordance with the CMI Manual. [Exhs. 1 and 2 §1]. Section 1 of both the 2001 and 2005 Correspondent Agreements specifically stated that, "[a]s of the date CMI purchase[d] each Loan, Correspondent w[ould] (i) transfer to CMI all of its right, title and interest in and to each Loan, including without limitation all documents held or subsequently acquired by Correspondent relating to each Loan and (ii) execute all documents necessary to transfer such right, title and interest to CMI." [Exhs. 1 and 2 §1]. Moreover, Section D of the 2003 Amendment to the 2001 Correspondent Agreement made delivery of the Loan documents "mandatory" (attached as Exhibit 3 is a true and correct copy of the 2003 Amendment). In the event that Loans were to be interim serviced for CMI, AHM was required to transfer the Loans at the Transfer Date defined in the 2003 Amendment. [Exh. 3 §G].

3

5. Section 900 of the CMI Manual set forth the guidelines AHM as Correspondent was to follow when preparing the Loan files for submission to CMI. Attached as Exhibit 4 is a true and correct copy of the relevant portions of Section 900 of the CMI Manual. Pursuant to the CMI Manual, AHM was to submit certain Loan documentation prior to purchase, and all other Loan documentation no later than one hundred and twenty (120) days after each Loan purchase. [Exh. 4 at 1].

6. As explained by the CMI Manual, the "timely receipt of post purchase documentation [was] critical to minimizing [CMI's] expenses as well as meeting [its] final pool certification deadlines." [Exh. 4 at 3]. It was thus CMI's policy, in its discretion, to require immediate repurchase of all defective Loans at the Repurchase Price specified by CMI if AHM failed to provide all of the documentation required by CMI "and/or fail[ed] to satisfy all other Loan specific or Correspondent Manual document requirements." [Exh. 4 at 3].

7. Additionally, the 2001 and 2005 Correspondent Agreements stated that, in the event AHM failed to perform "under the terms, conditions or obligations of th[ese] Agreement[s] or the CMI Manual (including but not limited to Correspondent's failure to timely deliver all documents and records associated with or related to all Loans purchased by CMI pursuant to th[ese] Agreement[s])," AHM was required to indemnify CMI or, at CMI's discretion, cure or repurchase the defective Loan within ten (10) business days of AHM's receipt of CMI's repurchase request. [Exhs. 1 and 2 §§ 10-11].

8. Notably, none of the Correspondent Loan Agreements required CMI to pay for the delivery of the documentation underlying each purchased Loan. To the contrary, Section 3 of both the 2001 and 2005 Correspondent Agreements and Section 900 of the CMI Manual stated that AHM, as Correspondent, was to "pay all costs and expenses incurred in connection with the transfer and delivery of Loans to CMI purchased pursuant to th[ese] Agreement[s], including but not limited to mortgage Loan

4

1642113

assignment preparation and recording fees, fees for title policy endorsements and continuations, and Correspondent attorneys' fees." [Exhs. 1 and 2 §3; Exh. 4 at 3].

9. On August 6, 2007 (the "Petition Date"), and before AHM delivered all Loan documentation to CMI pursuant to the Correspondent Loan Agreements, Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases"). This Court is jointly administering the Cases as per this Court's August 7, 2007 order. [Docket No. 60].

10. Debtors have repeatedly advised that "they filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets" (*see, e.g.*, Abandonment Motion ¶ 10 [Docket No.2395]) – thus confirming that, from the outset, these have been liquidation proceedings.

11. On August 6, 2007, Debtors filed the Sale Motion so that they could sell the servicing rights retained under servicing-retained loan agreements. [Docket Nos. 11-12].

12. On August 9, 2007, this Court entered its Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief, which established procedures for the sale of the Debtors' servicing business. [Docket No. 113].

13. On October 30, 2007, this Court entered an Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief. [Docket No. 1711].

14. Debtors did not assume the Correspondent Loan Agreements, and thus the Correspondent Loan Agreements were not assumed and assigned and/or purchased in the sale of its servicing business.

5

1642113

15. Debtors admitted in their Omnibus Response that the underlying mortgage loans relating to loan agreements[1] with investors were not property of the estate, and that Debtors *"have never asserted more than a possessory interest in this* property." (Omnibus Resp. at 4) (emphasis in original).

16. To date, AHM is in breach of the Correspondent Loan Agreements because it has failed to deliver a number of Loan documents to CMI. AHM must either deliver these documents immediately, or repurchase or otherwise cure the associated Loans.

17. CMI brings this motion to lift the stay so that it can recover the Loan documentation currently in Debtors' possession, and which Debtors have retained in breach of the Correspondent Loan Agreements. At a minimum, AHM is required to return the Loan documents listed in Exhibit 5 without any charge to CMI per the Correspondent Loan Agreements because they are not property of the estate pursuant to Section 541(d) of the Bankruptcy Code.

## ARGUMENT

I. **CMI Is Entitled to Relief from the Automatic Stay Pursuant to Sections 362(d) and 105(a) of the Bankruptcy Code in Order to Recover Loan Documents Debtors Still Owe CMI Because, as Debtors Have Admitted, Debtors Have, If Anything, Only a Mere Possessory Interest in the Documents, and, Therefore, the Documents Are Not Property of the Estate Pursuant to Section 541(d).**

18. Pursuant to Sections 362 and 541 of the Bankruptcy Code, a Chapter 11 petition serves to "create an estate" comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" and "automatically stays" actions against the debtor "to obtain possession of property of the estate or of property from the estate . . . ." 11 U.S.C. §§ 362(a)(3) and 541(a)(1).

19. The automatic stay is not, however, meant to be absolute, and, in appropriate instances, the bankruptcy court may, pursuant to Section 362(d), terminate, annul, modify or condition the stay on

---

[1] Although Debtors make this comment in reference to the Mortgage Loan Documents underlying its *servicing-retained* loan agreements, this fact applies with even greater force to the Mortgage Loan Documents underlying the servicing-released loan agreements, because Debtors have *no* interest, possessory or otherwise, in Loans (and underlying Loan documents) it sold outright to CMI and is not servicing.

1642113

the request of a party in interest and after notice and a hearing. *See* 11 U.S.C. § 362(d). For example, the court can terminate the stay to allow a party in interest to recover its property if "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). A bankruptcy court order terminating the stay is appropriate in this circumstance because property in which a debtor holds bare legal title, but not an equitable interest, is not property of the estate. 11 U.S.C. § 541(d); *see In re Kaiser Aluminum Corp.*, No. 02-10429(JFK), 2004 WL 97658, at *3 (Bankr. D. Del. Jan. 16, 2004) (Exhibit 5) (excluding from property of estate funds in which debtor held legal interest, but no equitable interest, and where agreement with third party showed third party's superior interest in the funds); *In re Edison Bros.*, 243 B.R. 231, 235 (Bankr. D. Del. 2000) ("[C]ourts have concluded that property which a debtor holds in trust (express or constructive) for another does not become property of the estate when the debtor files for bankruptcy.").

20.    To this end, courts have also used Section 105(a) to provide interested parties appropriate relief from the stay. Under Section 105(a), a court has the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of title 11." 11 U.S.C. § 105(a). It "is a powerful, versatile tool ... [that] empowers bankruptcy courts and district courts sitting in bankruptcy to fashion orders in furtherance of Bankruptcy Code provisions." *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005) (affirming district court's finding that Section 105(a) did not grant district court authority to exercise supplemental jurisdiction over debtors' post-confirmation state law claims alleging bankruptcy violations). Thus, a bankruptcy court's equitable powers enable it to "sift the circumstances ... to see that injustice or unfairness is not done in [the] administration of the bankrupt estate," as "[i]t is not the objective of the bankruptcy laws to confer windfalls on debtors." *Pepper v. Litton*, 308 U.S. 295, 308 (1939) (pre-Code decision affirming district court's use of its equitable powers); *In re Cybridge Corp.*, 312 B.R. 262, 272-73 (D.N.J. 2004) (citations omitted); *see Sears Roebuck & Co. v. Spivey*, 265

7

B.R. 357, 371 (E.D.N.Y. 2001) ("Section 105(a) of the Bankruptcy Code bestows on bankruptcy courts a specific equitable power to act in accordance with principles of justice and fairness ....[and gives] [b]ankruptcy courts [] broad latitude in exercising this power"; finding bankruptcy court had discretion under Section 105 to require judicial approval of redemption agreement, but remanding due to bankruptcy court's mistaken view of law).

21. Here, the Correspondent Loan Agreements establish that the Loan documents are CMI's property and were never property of the estate. Indeed, as Debtors admit in their Omnibus Response, AHM had, if anything, a mere possessory interest in these documents. A mere possessory interest in the Loan documents is not, however, sufficient to place these documents in the Debtors' estates. Consequently, Debtors, pursuant to Section 541(d), must immediately turn over all Loan documentation to CMI, without cost, or risk having to repurchase or otherwise cure the respective Loans. *See In re Malmart Mortgage Co.*, No. 87-11681-K, 1988 WL 1004731, at *3 (Bankr. D. Mass. Jan. 25, 1988) (Exhibit 6) (requiring debtor to turn over all notes, mortgages, books and records of mortgage loans not being serviced by debtor); *see also In re Cambridge Mortgage Corp.*, 92 B.R. 145, 152 (Bankr. D.S.C. 1988); *In re Fid. Standard Mortgage Corp.*, 36 B.R. 496, 500-501 (Bankr. S.D. Fla. 1983) ("Plaintiffs' interests in the various mortgages should be protected under 541(d)"); *In re Columbia Pac. Mortgage, Inc.*, 20 B.R. 259, 261-62 (Bankr. W.D. Wash. 1981) (reiterating Advisory Committee Notes discussion of 541(d)). The legislative history of Section 541(d) not only supports this result; it requires it. *See* The Advisory Committee Notes to 11 U.S.C. § 541(d) ("The seller of mortgages in the secondary mortgage market will often retain the original mortgage notes and related documents .... These facts are irrelevant and the seller's retention of the mortgage documents ... do[es] not change the trustee's obligation to turn the mortgages or interests in mortgages over to the purchaser .... Under section 541(d), the trustee is

required to recognize the purchaser's title to the mortgages or interests in mortgages and to turn this property over to the purchaser.").

22. Thus, CMI respectfully requests that this Court issue an order pursuant to Section 362(d) and its equitable powers that lifts the stay and requires Debtors to return CMI's Loan documents. These documents are not property of the estate under Section 541(d) and are obviously not necessary to the Debtors' effective reorganization, as they are currently seeking to abandon the documents (*see infra*).

## II. Debtors Cannot Abandon and Destroy, or Request a Retrieval Fee For, the Mortgage Loan Files Because, Contrary to Debtors' Abandonment Motion, The Documents Contained Therein are Not Property of the Estate and Debtors Risk Having to Repurchase or Otherwise Cure Relevant Mortgages If Debtors Do Not Return CMI's Documents as the Correspondent Loan Agreements Require.

23. In their recent Abandonment Motion, Debtors ask this Court to allow them to abandon and destroy, or require a retrieval fee for, CMI's Mortgage Loan Files currently in the Debtors' possession. First, the premise of the Abandonment Motion is flawed, because Debtors assume the Mortgage Loan Files are property of the estate. But, this is clearly not the case as set forth above.

24. It follows, then, that Debtors are not entitled to use "reasonable business judgment" to determine the ultimate fate of documents they do not own, and indeed, cannot hold the Mortgage Loan Files hostage by forcing CMI to pay a retrieval fee for its own property.[2] Rather, Debtors are required, pursuant to the Correspondent Loan Agreements, to return the Mortgage Loan Files and the documents contained therein to CMI or risk having to repurchase or otherwise cure the relevant Loans, which are now defective because CMI does not have these relevant documents.

25. While Debtors also seek to "abandon" property that is not theirs, even if this were properly considered an abandonment, Section 554 of the Bankruptcy Code does not permit them to, and

---

[2] A fee Debtors acknowledge is for expenses they will incur in any event, as their proposed course of destroying the files would require Debtors to incur and bear the cost of identifying and retrieving the files for the documents [Abandonment Mtn. ¶¶ 20-21] – both costs they improperly seek to shift to those parties requiring the return of their property.

debtors cite no authority for the proposition that they can properly shift costs of abandonment to third parties. *See* 11 U.S.C. § 554 ("After notice and a hearing, the trustee may abandon any *property of the estate* that is burdensome to the estate or that is of inconsequential value and benefit to the estate.") (emphasis added).

26. Accordingly, CMI asks this Court to issue an order pursuant to Sections 362(d) and 541(d), and its equitable powers under Section 105, lifting the stay and requiring Debtors to return the Loan documents, without cost, to CMI.

## CONCLUSION

27. The parties never intended that the Loan documentation would become AHM's property, either in or out of bankruptcy; in fact, they expressly agreed to the contrary per the Correspondent Loan Agreements. Indeed, this result is mandated not only by the parties' agreements, but also by the clear language of Section 541(d) and its legislative history. Accordingly, CMI respectfully requests that the Court enter an order:

    (a)    lifting the automatic stay;

    (b)    directing AHM to return any Loan documents held in its custody, without cost; and

    (c)    granting CMI such other and further relief as the Court determines is equitable, just and proper.

1642113

Dated: December 27, 2007

**MORRIS JAMES LLP**

*/s/ Brett D. Fallon*
Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6888
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com

-and-

Andrew J. Petrie *(admitted pro hac vice)*
FEATHERSTONE PETRIE DESISTO LLP
600 17th Street, Suite 2400S
Denver, Colorado 80202-5424
Telephone: (303) 626-7139
Facsimile: (303) 626-7101
Email: apetrie@featherstonelaw.com

*Attorneys for CitiMortgage, Inc.*

1642113