# **EXHIBIT 5**

Westlaw.

Not Reported in B.R.                                                                    Page 1
Not Reported in B.R., 2004 WL 97658 (Bkrtcy.D.Del.), 42 Bankr.Ct.Dec. 115
(Cite as: Not Reported in B.R.)

**H**In re Kaiser Aluminum Corp., Inc.
Bkrtcy.D.Del.,2004.

United States Bankruptcy Court,D. Delaware.
In re: KAISER ALUMINUM CORPORATION,
INC., et al., Debtor(s)
KAISER ALUMINUM & CHEMICAL
CORPORATION, Plaintiff,
v.
TRANSCONTINENTAL INSURANCE COMPANY
and National Union Fire Insurance Company of
Pittsburgh, PA Defendants.
**No. 02-10429(JFK), 02-6531(JKF).**

Jan. 16, 2004.

Daniel J. DeFranceschi, Gregory M. Gordon, Daniel
M. Winnika, and David G. Adams, for Plaintiff.
Kevin Gross, David C. Christian, II, Mohsin H.
Khambat, and Stephanie A. Weber, for Defendant
Transcontinental Insurance Company.
Frederick B. Rosner, and Michael S. Davis, for
Defendant National Union Fire Insurance Company
of Pittsburgh, PA.
William P. Bowden, Rafael X. Zahralddin-Aravena,
Lisa Beckerman, H. Rey Stroube, and Brian A.
Kilmer, for the Official Committee of Unsecured
Creditors.Related to Dkt. No. 18 Motion for Partial
Summary Judgment and Dkt. No. 28 Response to
Motion for Partial Summary Judgment and Cross-
Motion          for          Partial          Summary
JudgmentFITZGERALD, Bankruptcy J.

MEMORANDUM OPINION [FN1]

> FN1. The Court's jurisdiction was not at
> issue. This Memorandum Opinion
> constitutes our findings of fact and
> conclusions of law.

*1 Before the Court is Plaintiff Kaiser Aluminum &
Chemical Corporation's ("KACC") Motion for Partial
Summary Judgment on Counts I through VI of the
Complaint in this Adversary Proceeding and
Defendant Transcontinental Insurance Company's
("CNA") Cross-Motion for Partial Summary
Judgment on Counts I and III through VI.

Summary judgment is proper if there is no genuine
issue of material fact and if, viewing the facts in the
light most favorable to the non-moving party, the
moving party is entitled to judgment as a matter of
law. Carter v. McGrady, 292 F.3d 152, 157 (3rd
Cir.2002); seeFED. R. CIV. PRO. 56(c); Celotex
Corp. v. Carett, 477 U.S. 317 (1986). As noted by the
Third Circuit in Carter,"The judge's function at the
summary judgment stage is not to weigh the evidence
and determine the truth of the matter, but to
determine whether there is a genuine issue for trial.
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
249 (1986)."Carter, 292 F.3d at 157.

Based on a review of the pleadings and
representations of counsel, the Court finds that the
disputes in the Complaint and Counter-Motion are
straightforward issues of contract interpretation, that
these contracts are clear on their respective faces and
that there are no genuine issues of material fact in
dispute. Consequently, summary judgment pursuant
to Fed. R. Civ. Pro. 56(c) is appropriate.

For the reasons given below, the Court grants
KACC's motion for partial summary judgment as to
Count II and denies KACC's motion as to Counts I
and III through VI. The Court grants CNA's counter-
motion for partial summary judgment as to Counts I
and III through VI in part and defers in part for
further consideration.

On July 5, 1999, KACC's facility in Gramercy,
Louisiana, exploded (the "Plant Accident"). The
Plant Accident destroyed a substantial part of the
Gramercy plant and resulted in claims brought
against KACC and other parties potentially
responsible for the explosion (the "Third Party
Defendants") by individuals who were on the plant
site at the time of the Plant Accident (the "Inside-the-
Gate Claimants") or outside the plant site (the
"Outside-the-Gate Claimants").

At the time of the Plant Accident, KACC was insured
under third party liability policies issued by CNA and
National Union Fire Insurance Company of
Pittsburgh, PA ("National Union"and together with
CNA, "the Insurers"). [FN2] All monies expended to pay
claims and settlements on account of losses incurred
by the Inside- and Outside-the-Gate Claimants were

Not Reported in B.R.                                                                 Page 2
Not Reported in B.R., 2004 WL 97658 (Bkrtcy.D.Del.), 42 Bankr.Ct.Dec. 115
(Cite as: Not Reported in B.R.)

provided by the Insurers. The Insurers agree, and Plaintiff does not contest, that CNA was the last insurer to pay out funds. No money of KACC was used to fund settlements with these claimants.

FN2. A third insurer of KACC at the time of the Plant Accident, Old Republic Insurance Company, is not a party to this Adversary Proceeding.

KACC entered into settlement agreements with the following Inside- and Outside-the-Gate Claimants: (i) the Preliminary Settlement Agreement ("PSA") of November, 2000, entered into with a class of plaintiffs comprised of Outside-the-Gate claimants; (ii) three "Receipt, Partial Release, Indemnity and Contractual Reimbursement Agreements" with persons who were most seriously injured in the Plant Accident, Gary Guy and family (the "Guy Agreement"), Terrence Hayes and family (the "Hayes Agreement") and Todd Landry and family (the "Landry Agreement"); (iii) thirteen "Receipt, Partial Release, Indemnity and Contractual Reimbursement Agreements" with Inside-the-Gate Claimants other than Guy, Hayes and Landry ("Other Inside-the-Gate Agreements" and, collectively with all the above agreements, the "Settlement Agreements").

*2 Each Settlement Agreement includes language requiring KACC and the individual claimants to prosecute claims against Third Party Defendants. A certain percentage of any recoveries from Third Party Defendants are to be paid to "Released Parties" as directed by KACC (the "Third Party Recoveries"). The term "Released Parties" is defined in each of the Settlement Agreements to include KACC and its insurers.

The Complaint and Cross-Motion

In Count I of the Complaint, KACC seeks a declaratory judgment that the Third Party Recovery Funds from the Outside-the-Gate Claimants are property of, and belong to, KACC's bankruptcy estate. The value of these recovery funds as of the filing date of the Complaint was $3,825,000 and they are held in a trust account by KACC's insurance counsel, Heller Ehrman White & McAuliffe, LLP ("HEWM").FN3

FN3. The values of the Recovery Funds given in this Memorandum Order are taken from the Debtors' Complaint dated November 12, 2002, and do not include any settlements paid out or other additional deposits to the Recovery Funds after November 12, 2002, nor do they include interest since that date.

In Count II, KACC seeks a declaratory judgment that monies remaining in the Inside-the-Gate Settlement Fund are property of, and belong to, KACC's bankruptcy estate. The value of these recovery funds as of the filing date of the Complaint was $1,034,533.31 and they are held in a trust account by HEWM.

In Count III, KACC seeks a declaratory judgment that the Third Party Recovery Funds from the Other Inside-the-Gate Claimants are property of, and belong to, KACC's bankruptcy estate. The value of these recovery funds as of the filing date of the Complaint was $1,187,094.58 and they are held in a trust account by HEWM.

In Count IV, KACC seeks a declaratory judgment that the Guy Third Party Recovery Funds are property of, and belong to, KACC's bankruptcy estate. The value of these recovery funds as of the filing date of the Complaint was $2,477,270 and they are held in a trust account by HEWM.

In Count V, KACC seeks a declaratory judgment that the Hayes Third Party Recovery Funds are property of, and belong to, KACC's bankruptcy estate. The value of these recovery funds as of the filing date of the Complaint was $2,419,820 and they are held in a trust account by HEWM.

In Count VI, KACC seeks a declaratory judgment that the Landry Third Party Recovery Funds are property of, and belong to, KACC's bankruptcy estate. The value of these recovery funds as of the filing date of the Complaint was $2,740,000 and they are held in the registry of the United States District Court for the Eastern District of Louisiana.

Count VII of the Complaint seeks a money judgment in favor of KACC from CNA alleging wrongful withholding of proceeds to pay KACC's costs of defense. Neither KACC's Motion nor CNA's Cross-Motion addresses Count VII.

CNA's Cross-Motion asks the Court to deny KACC's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motion, recognize CNA's right, title and interest in the Third Party Recoveries, authorize the immediate transfer of all of the Third Party Recovery Funds to CNA and to allow discovery to determine rights to any remaining funds in the Inside-the-Gate Settlement Fund

Counts I and III through VI of the Complaint

In Counts I and III through VI of its Complaint, KACC seeks a declaratory judgement that the Third Party Recoveries are property of the bankruptcy estate and that KACC has both legal and equitable title to the Third Party Recoveries. KACC argues that the Third Party Recoveries must be paid to the Released Parties, that the Released Parties include KACC and that KACC has the right to direct payment, including to itself. Since the plain language of the Settlement Agreements, in KACC's interpretation, gives KACC a right to receive the Third Party Recoveries and the exclusive right to direct the disbursement, including the discretion to direct payment to itself, it follows that KACC has both a legal and equitable title to the Third Party Recoveries. This Court disagrees.

*3 In our Memorandum Opinion and Order denying CNA's motion to dismiss this adversary proceeding, this Court wrote that "KACC, a released party and THE party charged with directing the disposition of the funds, has a property interest in the proceeds [the Third Party Recoveries]." Memorandum Opinion and Order Denying Motion to Dismiss dated February 13, 2003, Adversary No. 02-6531 (JKF), Dkt. No. 13.This statement follows from 11 U.S.C. § 541(a)(1) that provides that "all legal *or* equitable interests of the debtor become the property of the bankruptcy estate."[Emphasis added.] This expansive definition of property of the estate, however, is limited by Bankruptcy Code section 541(d) which provides:
Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest .... becomes property of the estate .... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

Although we found that KACC had demonstrated a legal interest in the Third Party Recoveries sufficient to deny dismissal of this action, KACC has not established that it has an equitable interest in the recoveries. Indeed, it is evident from the pleadings

and arguments of counsel that KACC was under a preexisting duty at the time it entered into the Settlement Agreements to direct payments to the Insurers. Because, as will be seen, CNA is the entity with the first priority under the relevant insurance policies to recover certain funds, we look to the language of the CNA insurance policies. Article IV, § ff(1) of KACC's Insurance Policy with CNA states:
If [CNA] makes any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us their rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize such rights.[FN4]

> FN4. Section (N) of KACC's National Union Policy No. BE-357-07-17 contains nearly identical language:
> If an Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair those rights and must help us enforce them.
> Although National Union has deferred to CNA's right to the Third Party Recoveries on the grounds that CNA was the last insurer to pay the proceeds, this language from the National Union policy demonstrates that KACC was on notice and under contract with both of its insurers at the time that it executed the Settlement Agreements that recoveries were to be transferred to the appropriate insurer.

The CNA Policy further states that if more than one insurer or other person makes a payment to or for the benefit of a claimant against the insured, any amounts recovered shall be distributed in the following order:
(a) any party including [KACC] who has paid an amount above payment by this policy shall be reimbursed up to the amount they have paid.
(b) from any remaining balance, [CNA] will then be reimbursed up to the amount [CNA has] paid.
(c) from any remaining balance, amounts paid by any of [KACC's] underlying policies shall be reimbursed.

CNA Policy, Article IV, § f(2)[FN5]

> FN5. Section (N) of KACC's National Union Policy again contains nearly identical language.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                 Page 4
Not Reported in B.R., 2004 WL 97658 (Bkrtcy.D.Del.), 42 Bankr.Ct.Dec. 115
(Cite as: Not Reported in B.R.)

"An insured has a duty to read his insurance policy and he is bound by the provisions thereof if they are clear and unequivocal."*Hallowell v. State Farm Mut. Auto. Ins. Co., 443 A.2d 925, 928 (Del.1982).See also, Emmons v. Hartford Underwriters Ins. Co., 697 A.2d 742, 745 (Del.1997)* ("When the language of an insurance contract is clear and unequivocal, a party will be bound by the plain meaning").

*4 Article IV of the CNA Policy is clear and unequivocal. At the time KACC entered into the Settlement Agreements, KACC knew that the Insurers would fund the Settlement Agreements, that KACC would not contribute any funds and, thus, KACC could not qualify under priority (a) of the CNA policy for a right to recovery higher than its insurers. Consequently, KACC was under a preexisting duty at the time it executed the Settlement Agreements to transfer any Third Party Recoveries generated by the Settlement Agreements to the appropriate insurer.[FN6]

> FN6. The Court takes note of KACC's objection to the relevance of the two insurance policy provisions. Both CNA and National Union in their pleadings describe these provisions as "subrogation" provisions. KACC argues that subrogation rules do not apply to the Settlement Agreements because subrogation refers to the entry of the insurer into the rights of the insured to recover against third party tortfeasors and the recovery here is from the claimants. The Court find this analysis unduly restrictive of the meaning of subrogation. Courts have found that subrogation and reimbursement are often interchangeably used and the Court must look to the language in the insurance policy and the rights granted to the insurer to determine the parties' intent. *A. Copeland Enterprises, Inc., et al., v. Slidell Memorial Hospital, et al., 657 So.2d 1292, 1298-1299 (La.1995); accord Barreca v. Cobb, et al., 668 So.2d 1129 (La.1996)*. Here it is clear that KACC, CNA and National Union intended that if the insurer paid funds and KACC later recovered from any other party, the insurer was to be reimbursed.

The filing of the bankruptcy petition did not alter or modify this preexisting duty. "Federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests."*Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 492-93 (3rd Cir.1997), citing in support Butner v. United States, 440 U.S. 48, 54 (1979)* ("Congress has generally left the determination of property rights in the assets of the bankrupt's estate to state law").

The phrase in the Settlement Agreements providing that KACC had the power to direct the disposition of the funds cannot be interpreted to confer equitable ownership of the Third Party Receivables on KACC. When examining the Settlement Agreements, the Court is required to look to controlling Louisiana law.[FN7]

> FN7. Each of the Settlement Agreements was executed in Louisiana and each agreement contains a clause stipulating the substantive law of Louisiana as governing law, excluding choice of law rules.

Under Louisiana law, interpretation of contracts is a legal question.*Willard v. R & B Falcon Drilling USA, Inc., 836 So.2d 424, 428 (La. Ct.App. 1st Cir.2002)*. According to Louisiana rules of contract construction, the Court must give "contractual words their generally prevailing meaning unless the words have acquired a technical meaning."*Campbell v. Melton, 817 So.2d 69, 74-75 (La.2002)*.

"As directed by" is commonly used in legal parlance to indicate control without ownership. For example, settlement funds are often to be disbursed "as directed by" the court, yet no one considers the court the owner of the funds. Similarly, trust funds are often to be disbursed "as directed by" the Trustee, but it is well established that a trustee does not hold equitable title to trust funds.

In applying Louisiana law to the interpretation of the "as directed by" phrase in the Settlement Agreements, the Court finds that the phrase gives KACC a legal interest in the Third Party Receivables but only insofar as KACC functions as the equivalent of a trustee of a constructive trust for the benefit of the Insurers. When an insured receives money on account of loss reimbursement which should be paid to its insurer, the insured holds such money in trust.*Audubon Ins. Co. V. Farr, 453 So.2d 232, 235 (La.1984).See also Southern Pacific Transportation*

*Co. v. Chabert,* 973 F.2d 441 (5th Cir.1992), *cert. denied*507 U.S. 987 (1993) (''[W]hen the insured recovers from the tortfeasor an amount which, with the amount already received from his insurer, exceeds the loss actually sustained by him, he holds the excess as trustee for his insurer for whom it belongs); *Voss v. Mike & Tony's Steak House,* 230 So.2d 470, 472 (La.App. 1st Cir.1969) (''[s]ince [the insured] has received amounts in excess of his total loss, he holds the excess in trust for his insurer, which has previously reimbursed him for his loss''); *Penn Fire Ins. Co. v. Harrison,* 94 So.2d 92 (La.App. 1st Cir.1957) (''When the insured recovers from the tortfeasor an amount which, with the amount already received from his insurer, exceeds the loss actually sustained by him, he holds the excess as trustee for his insurer to whom it belongs'').

*5 The insurance companies alone paid the third parties' claims against KACC, and each of the Settlement Agreements released KACC from the claims and from any further liability for those claims. Thus, it follows that as a result of the Settlement Agreements, KACC had no actual losses attributable to those claims. Therefore, the Third Party Recovery Funds were funds received in excess of KACC's losses and KACC holds these Third Party Recovery Funds in trust for the Insurers.

Inasmuch as we have determined that KACC is a trustee for its Insurers' equitable rights to the Third Party Recoveries, we must deny KACC's motion for partial summary judgment as to Counts I and III through VI of the Complaint.

Having determined that the Insurers have an equitable interest in the Third Party Recovery Funds, it is necessary to determine the priority of each of the Insurers' rights to these funds. The Court takes note of the following statement in National Union's Memorandum of Points and Authorities in Opposition to Plaintiff Kaiser Aluminum and Chemical Corporation's Motion for Partial Summary Judgment (''National Union Memorandum''):
The subrogation clause in the National Union policy clarifies that any Third-Party Recoveries are payable to Transcontinental [CNA] first, until such time as the limits of the Transcontinental Policy are restored. Thereafter, the funds are to be reimbursed to National Union.

National Union Memorandum, Dkt. No. 25 at 12.The Court finds this statement supporting CNA's claim to

first priority, which is an admission against the interests of National Union, to be consistent with CNA's representation of its rights under the policies and uncontradicted by KACC.[FN8] Therefore, the Court finds that CNA has first priority equitable interest in the Third Party Recovery Funds until such time as the amounts CNA paid are reimbursed.[FN9]On the record before us, it follows that National Union has second priority equitable interest thereafter.

> FN8. The statement was affirmed on the record by National Union's counsel. Appendices to Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 19, Exh. 20, p. 87, lines 17-20.

> FN9. The Court also notes that restoration will increase the amount of insurance available for future claims under the CNA policy.

We grant in part CNA's Cross-Motion for Partial Summary Judgment insofar as it seeks a declaration of CNA's right, title and interest in the Third Party Recoveries. The Court will not take action on that part of CNA's Cross-Motion that seeks transfer of the Third Party Recovery Funds to CNA until the Court has current information on the funds in the Third Party Recovery accounts.

Therefore, within thirty days of entry of the Order accompanying this Memorandum Opinion, HEWM shall file an affidavit with supporting bank documentation listing all funds, including interest, in all Third Party Recovery Funds as of the date of this Order. Further, KACC shall request from the Clerk of the United States District Court for the Eastern District of Louisiana a statement of account of all funds held in the Landry Third Party Recovery Fund and submit this statement of account within thirty days of entry of this Order.

Neither KACC's Motion nor CNA's Cross-Motion addresses Count VII of the Complaint, in which KACC seeks recovery of defense expenses that have allegedly been withheld by CNA. Since KACC was a principal actor in negotiating all the Settlement Agreements and, but for its efforts, there may have been no Third Party Recovery Funds, it would be fundamentally unfair for the Court to allow transfer of the Third Party Recovery Funds to CNA without

determining what rights, if any, KACC has to recovery of its alleged defense costs under Count VII. Therefore, before the Court authorizes the transfer of any of the Third Party Recovery Funds to CNA, it will require that funds be deposited in the Clerk's Registry Account of the United States Bankruptcy Court for the District of Delaware in an amount sufficient to cover KACC's claim pending determination of the rights of all parties under Count VII of the Complaint (the "Reserve Amount"). Within 30 days hereof, the parties shall meet and confer to attempt to achieve consent as to the amount of the reserve and shall submit a proposed order establishing the amounts to be distributed and the Reserve Amount.

### Count II of the Complaint

*6 In Count II of its Complaint, KACC seeks a declaratory judgment that monies in the Inside-the-Gate Settlement Fund are property of the estate and that KACC has both legal and equitable title to these funds.

KACC, CNA and National Union set up the Inside-the-Gate Settlement Fund (the "Buy-Out Agreement") for claims by individuals other than Guy, Landry and Hayes who may have been present at the Gramercy plant and/or within the fence that surrounds the plant at the time of the Plant Accident. Unlike the other groups of claimants whose Settlement Agreements were funded by the Insurers on an individual basis, the Buy-Out Agreement provided $2.5 million "for the sole purpose of addressing Inside-the-Gate claims through a mediation process."Buy-Out Agreement ¶ 1.

The Buy-Out Agreement provided discretion to KACC in the use of any remaining funds after completion of the mediation effort:
If this fund is not completely exhausted by mediated settlements, the remainder may be used by [KACC] to defend and/or settle any claim brought by any individual listed in Exhibit 1 and/or any claims brought by any [KACC] employee, regardless of whether they were made while the mediation process was open or afterwards.

Buy-Out Agreement ¶ 2.

The Court finds that, in exchange for the funding and discretion granted to KACC in the use of any remaining funds, CNA and National Union received valuable consideration in KACC's agreement
... not to make any further demands on CNA or National Union to defend or indemnify against any claims brought by individuals listed on Exhibit 1 or claims brought by any [KACC] employee. Claims by "unknown" non-employees can still be presented to CNA for defense and indemnity under CNA's policy, should any be made.

Buy-Out Agreement ¶ 3.

The Buy-Out Agreement also contains a warranty by KACC that it had made a good faith effort to identify "presently known" non-employees that were on the plant premises at the time of the Plant Accident and KACC's recognition that the $2.5 million payment into the fund eroded the limits of National Union's policy.

The Court finds that, in exchange for the funding of the Inside-the-Gate Settlement Fund and broad releases for CNA and National Union with respect to existing and future claims from Other Inside-the-Gate Claimants, KACC was given unfettered use of monies remaining in the fund after the mediation process to defend and/or settle any claims asserted by existing, future, identified or unidentified Other Inside-the-Gate Claimants.

National Union argues that extrinsic evidence should be used to interpret this agreement and that the parties "understood" that the Insurers were entitled to a return of any funds not used for settlement. Besides the general abhorrence with which black letter contract law holds parol evidence, the law of Louisiana specifically rejects the use of extrinsic evidence where, as here, the words of the contract are clear and explicit.[FN10]

> FN10. Although Louisiana is clearly the governing law for the Settlement Agreements, further analysis is required to determine the governing law for the Buy-Out Agreement. The Buy-Out Agreement was signed in counterparts and was thus not signed in a particular place. This agreement does not contain a choice of law clause. KACC, CNA and National Union are headquartered in different states and have different states of incorporation. Louisiana is the jurisdiction of greatest contact for this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agreement because all the Inside-the-Gate Claims to be paid arose from injuries to residents of that state and the public policy and interests of Louisiana are thus most directly affected by the Buy-Out Agreement. It should also be noted that the case law regarding parol evidence in the Third Circuit is not inconsistent with Louisiana law.

**\*7** The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible to either explain or to contradict the terms of the instrument. _Willard,_ 836 So.2d at 428;_Gaubert v. Toyota Motor Sales, USA, Inc.,_ 770 So.2d 879, 881 (La. Ct.App. 1st Cir.2000)._See also Am. Totalisator Co., Inc. v. Fair Grounds Corp.,_ 3 F.3d 810, 813 (5th Cir.1993) ("Under Louisiana law, where the words of a contract are clear and explicit and lead to no absurd consequences, the contract's meaning and the intent of its parties must be sought within the four corners of the documents and cannot be explained or contradicted by extrinsic evidence") (citing LA. CIV.CODE ANN. art.2046). This contract is clear on its face and Kaiser retains both the legal and equitable interest in the remaining Settlement Fund proceeds.

Therefore, the Court concludes that when KACC filed its bankruptcy petition, all remaining monies in the Inside-the-Gate Settlement Fund became property of the estate. At the time of the bankruptcy filing, Kaiser enjoyed unfettered use of the fund, was under a continuing obligation to defend or settle claims with use of this fund and had released National Union and CNA from their obligations to defend these claims. Thus, KACC has both legal and equitable title to funds remaining in the Inside-the-Gate Settlement Fund.

An appropriate order will be entered.

### INTERIM ORDER

AND NOW, this 16th day of January, 2004, for the reasons expressed in the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Partial Summary Judgment is granted in part as to Count II only and denied in all other respects. Defendant

CNA's Cross-Motion for Partial Summary Judgment is granted in part as to Counts I, III, IV, V and VI and deferred in part for further proceedings.

IT IS FURTHER ORDERED that within thirty days of entry of this Order, Heller, Ehrman, White & McAuliffe, LLP, special counsel to the Debtors, shall file an affidavit with supporting bank documentation listing all funds on hand, including interest, in all Third Party Recovery Funds FN11 as of the date of this Order (the "Third Party Recovery Affidavits").

> FN11. Unless explicitly defined in this Order, capitalized terms in this Order have the meaning attributed to them in the attached Memorandum Opinion.

IT IS FURTHER ORDERED that the Debtors shall obtain from the Clerk of the United States District Court for the Eastern District of Louisiana a statement of account for all funds held in the Landry Third Party Recovery Fund (the "Landry Account Statement") and shall submit the Landry Account Statement within thirty days of entry of this Order.

IT IS FURTHER ORDERED that within thirty days hereof Plaintiff and the Defendants shall meet and confer to attempt to achieve consent as to the amount of funds to be deposited in the Clerk's Registry Account of the United States Bankruptcy Court for the District of Delaware to cover the full amount of Debtors' defense costs under Count VII of the Complaint (the "Reserve Amount") and shall submit a proposed order establishing the amounts to be distributed to defendant Transcontinental Insurance Company and the Reserve Amount (the "Proposed Order").

**\*8** IT IS FURTHER ORDERED that an appealable Final Judgment will be entered on all six Counts after the parties submit the Third Party Recovery Affidavits, the Landry Account Statement and the Proposed Order.

This Adversary Proceeding shall remain open to address Count VII of the Complaint and the remaining issues in Counts I and III through VI.

Plaintiff shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest and shall file an affidavit of service forthwith.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                          Page 8
Not Reported in B.R., 2004 WL 97658 (Bkrtcy.D.Del.), 42 Bankr.Ct.Dec. 115
**(Cite as: Not Reported in B.R.)**


Bkrtcy.D.Del.,2004.
In re Kaiser Aluminum Corp., Inc.
Not Reported in B.R., 2004 WL 97658
(Bkrtcy.D.Del.), 42 Bankr.Ct.Dec. 115

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.