# **EXHIBIT 6**

Westlaw.

Not Reported in B.R. Page 1
Not Reported in B.R., 1988 WL 1004731 (Bkrtcy.D.Mass.)
(Cite as: Not Reported in B.R.)

HIn re Malmart Mortg. Co.
Bkrtcy.D.Mass.,1988.
Only the Westlaw citation is currently available.
United States Bankruptcy Court, D. Massachusetts.
In re MALMART MORTGAGE COMPANY, INC.
Debtor
No. 87-11681-K.

Jan. 25, 1988.

MEMORANDUM OF DECISION ON MOTIONS OF FEDERAL NATIONAL MORTGAGE ASSOCIATION FOR RELIEF FROM STAY AND FOR ORDER COMPELLING TRUSTEE TO ASSUME OR REJECT EXECUTORY CONTRACT
KENNER, Bankruptcy J.

*1 The Federal National Mortgage Association ("FNMA") has filed motions for relief from the automatic stay and for an order compelling the Trustee to assume or reject the executory mortgage servicing contract between FNMA and the Debtor. Over the Trustee's opposition, the Court issued an order on January 14, 1988 allowing FNMA's motion for relief from stay. The Court's decision was based on 11 U.S.C. § 362(d)(2). Specifically, the Court found that the Debtor had no equity in the mortgage servicing contracts or in the underlying notes, mortgages, and related books and records, and that such property (the contracts, notes, mortgages, books and records) was not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

The second of these findings-that the property was not necessary to an effective reorganization-was not much contested. In order to prove that property is necessary to an effective reorganization, the Trustee most prove that there exists "a reasonable likelihood of a successful reorganization within a reasonable period of time."*In re Jug End in the Berkshires, Inc., 46 B.R. 892, 902 (Bankr.D.Mass.1985).* Here, the Trustee not only did not attempt to establish the likelihood of a successful reorganization; he made clear his opinion that no reorganization was possible and that the only realistic course was to operate the Debtor's business long enough to find buyers for the Debtor's mortgage servicing agreements and then to liquidate. The Court finds it unlikely that the Debtor will reorganize. Accordingly, the Court finds that the mortgage servicing contracts and the related notes, mortgages, books and records are not necessary to an effective reorganization.

The second issue-whether the Debtor had any equity in the notes, mortgages, books and records-was the parties' primary focus of contention. The parties seem to agree on at least some of the issues involved. Specifically, the Trustee does not challenge the well-established proposition that under § 541(d) and the case law interpreting it, standard secondary mortgage market transactions are purchases and sales of assets, not merely unsecured financing contracts. *In re Lemons & Associates, Inc.,* 67 B.R. 198, 208 (Bankr.D.Nev.1986); *In re Fidelity Standard Mortgage Corp.,* 36 B.R. 496, 499 (Bankr.S.D.Fla.1983); *In re Mortgage Funding, Inc.,* 48 B.R. 152, 154-155 (Bankr.D.Nev.1985); *In re Columbia Pacific Mortgage, Inc.,* 20 B.R. 259, 261-263 (Bankr.W.D. Washington 1981). The Court agrees with this proposition. Therefore, at least with respect to those mortgages the Debtor is servicing under "standard" secondary mortgage market arrangements-that is, all mortgages in the Debtor's FNMA portfolio except for those being serviced under FNMA's MBS regular servicing option and the MRS program-the question of equity is clear. The mortgages belong to the investor, FNMA. The Debtor has no equity in any of those loans and mortgages and related books and records.

*2 The MBS and MRS mortgage servicing arrangements differ from the standard arrangements in that under these servicing programs, the Debtor, not FNMA, bears the risk of loss on foreclosure. This is not a normal incident of investor ownership, but typically a feature of financing arrangements.

The Court concludes that, in view of all the circumstances, FNMA is more properly be treated as an owner than as a lender under the MBS and MRS servicing agreements. This conclusion stems from two primary considerations: the parties' description of the agreement and the contractual and transitory nature of the Debtor's risk of loss.

First, the parties' own characterization of their agreement, set forth in express contractual language, is relevant, though not conclusive and binding, as to the nature of their arrangement. Contractual language

Not Reported in B.R.  Page 2
Not Reported in B.R., 1988 WL 1004731 (Bkrtcy.D.Mass.)
**(Cite as: Not Reported in B.R.)**

is evidence of the parties' intent, and manifest intent is the central issue. The documents governing the relationship between the Debtor and FNMA consistently and unambiguously characterize the relationship as that of seller and purchaser.

Second, the fact that the Debtor bears the risk of loss appears to indicate, not that the Debtor has any equity in the notes and mortgages, but that the Debtor has a bargained for, contractual obligation to indemnify FNMA for foreclosure losses. I base this conclusion on the observation that the life of the Debtor's risk of loss is coterminous with the life of the servicing contract. The servicing agreement is structured such that, if either party were to cancel the agreement, the Debtor would bear no risk on any losses incurred after the cancellation. The risk would shift back to FNMA. If the Debtor's risk of loss were an indication that it held an equity interest in the notes and mortgages, the Debtor could not so easily rid itself of the risk of loss; to do so would require the execution of a purchase and sale agreement, not the mere termination of a servicing contract. Therefore, the risk of loss involved here is more properly characterized not as an incident of ownership, but as a bargained for, contractual obligation.

Furthermore, not all of the risk of loss falls on the Debtor. FNMA bears all the risk arising from fluctuations in the market sale of interest over the terms of the serviced mortgages. Therefore, even if allocation of risk were the sole indicator of ownership, ownership would remain an ambiguous issue.

As in *In re Lemon & Associates, Inc.,* 67 B.R. 198, 209-210 (Bankr.D.Nev.1986), this Court finds that the objective indications of the parties' intent outweigh the ambiguous counter-indications relating to risk of loss. Unlike the agreements in *In re Woodson Co.,* 813 F.2d 266, 272 (9th Cir.1987) and *In re S.O.A.W. Enterprises, Inc.,* 32 B.R. 279, 282-283 (Bankr.W.D. Texas 1983), which the courts found bore none of the indicia of purchase and sale agreements, the MBS and MRS servicing agreements are not as easily classified. They are neither standard purchase and sale agreements nor standard investor financing agreements. The MBS and MRS provisions are unique. The parties were free to structure the agreement as they saw fit and they chose to structure it as a purchase and sale agreement. Their intentional designation of the agreement as a purchase and sale was not a mere act of labeling that the Court is free to disregard in favor of the "substance" of the agreement. Rather, the parties' intentional and deliberate use of the words "purchase" and "sale" in itself made the agreement into a purchase and sale. Where the label and words used by the parties are the product of duress, misunderstanding, or inequity, or where they do not accurately reflect the parties' manifest intent, the Court may disregard the label; but no duress, misunderstanding, or inequity has been alleged here. The equities do not justify overriding the parties' express intent. Therefore, the Court concludes that the Debtor has no equity in the MBS and MRS mortgages.

*3 Nor does the Debtor have equity in the FNMA servicing contract itself. Normally, a servicing agreement would be deemed an asset of the estate. In this case, however, the Debtor would have to cure deficiencies of at least $2.5 million in its obligation to FNMA before assuming the agreement. 11 U.S.C. § 365(b)(1). The Debtor does not have the resources to cure the deficiency, so assumption and assignment of the agreement would be impossible.

In sum, the Debtor has no equity in the FNMA servicing agreement or in the underlying notes, mortgages, and related books and records. The Debtor should turnover to FNMA all of the notes, mortgages, books and records, including those related to the MBS and MRS servicing programs. FNMA's motion for an order compelling the assumption or rejection of the servicing agreement is rendered moot by the Court's having allowed FNMA's motion for relief from stay.

Bkrtcy.D.Mass.,1988.
In re Malmart Mortg. Co.
Not Reported in B.R., 1988 WL 1004731 (Bkrtcy.D.Mass.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.