## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x    Chapter 11

In re:                                                                  :

                                                                        :    Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE                                :

HOLDINGS, INC., a Delaware corporation, et al.,[1]  :    Jointly Administered

                                                                        :

    Debtors.                                            :    **Proposed Hearing Date: January 4, 2008 at 11:00 a.m.**
                                                                        :    **Proposed Objection Deadline: January 3, 2008 at 12:00 p.m.**

-------------------------------------------------------------- x

### NOTICE OF MOTION

TO:    The Office of the United States Trustee for the District of Delaware; counsel to the Committee; counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; counsel to agent for the Debtors' postpetition lenders; and all parties entitled to notice under Local Rule 2002-1(b).

        **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed the **Motion of the Debtors for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving (A) Procedures for AHM Servicing's Entry into Subservicing Agreements and (B) the Entry into One or More Subservicing Agreements** (the "Motion").

        **PLEASE TAKE FURTHER NOTICE** that the Debtors have requested that objections to the attached Motion be filed with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before **January 3, 2008 at 12:00 p.m.**.  At the same time, you must also serve a copy of the objection upon the undersigned counsel to the Debtors.

        **PLEASE TAKE FURTHER NOTICE** THAT THE DEBTORS HAVE REQUESTED THAT A HEARING ON THIS MATTER BE HELD ON **JANUARY 4, 2008 AT 11:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 5TH FLOOR, COURTROOM #6, WILMINGTON, DELAWARE 19801.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OF HEARING

Dated: Wilmington, Delaware
      December 27, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
M. Blake Cleary (No. 3614)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| AMERICAN HOME MORTGAGE | : Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : |
| | : Jointly Administered |
| Debtors. | : |
| | : **Hearing Date:  January 4, 2008 at 11:00 am** |
| | : **Objection Deadline:  January 3, 2008 at 12:00 p.m.** |

----------------------------------------------------------- x

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING (A) PROCEDURES FOR AHM SERVICING'S ENTRY INTO SUBSERVICING AGREEMENTS AND (B) THE ENTRY INTO ONE OR MORE SUBSERVICING AGREEMENTS

The debtors and debtors-in-possession in the above-captioned jointly administered cases (collectively, "AHM" or the "Debtors") hereby move this Court (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order approving procedures for the entry by American Home Mortgage Servicing, Inc. ("AHM Servicing") into subservicing agreements without further order of the Court and approving entry into one or more subservicing agreements.  In support of the Motion, the Debtors respectfully state as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION AND STATUS OF THE CASE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363(b).

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed The Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

## BACKGROUND

### A.      The Debtors' Business

5.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate-A quality.

6.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion.  As of December 31, 2006, AHM operated more than 550 loan-production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia.  Certain AHM entities originated mortgages through a network of loan origination offices.  In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents.  AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7.      A large component of AHM's business was the servicing of loans (the "Servicing Business"), which it conducted through AHM Servicing.  The Servicing Business entails, among other things, collecting mortgage payments, administering tax and insurance escrows, responding to borrower inquiries, and maintaining control over collection and default mitigation processes.  As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8.      The Debtors continued to operate the Servicing Business after the Petition Date and, as discussed further below, currently operate it for the benefit (and risk) of the Purchaser (as hereinafter defined).

**B.      The Sale of the Servicing Business**

9.      By that certain *Order (A) Approving (i) The Sale Of The Debtors Mortgage Servicing Business Free And Clear Of Liens, Claims And Interests, (ii) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (B) Granting Certain Related Relief* [D.I. 1711] dated October 30, 2007  (the "Sale Order"), the Court authorized the sale of the Servicing Business (the "Servicing Sale") to

-3-

AH Mortgage Acquisition Co., Inc. (the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as subsequently amended, the "APA").

10.    Under the APA, the Servicing Sale will close in two steps.[2]    At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing Date"), the Purchaser paid the Purchase Price (as defined in the APA) in the manner and to the parties in interest as contemplated by the APA.  From the Initial Closing Date until the "legal" close on the Final Closing Date (as defined in the APA), the Sellers (as defined in the APA) will continue to operate the servicing business in the Ordinary Course of Business (as defined in the APA), subject to the Bankruptcy Exceptions (as defined in the APA), but for the economic benefit (and risk) of the Purchaser.  Following the Initial Closing Date, the Purchaser (i) bears all of the upside benefit and downside risk of the Servicing Business; (ii) is responsible for providing the necessary working capital to fund the business; and (iii) is ultimately responsible for the operating expenses of the business.

**RELIEF REQUESTED**

11.    By this Motion, the Debtors seek entry of an order approving procedures for AHM Servicing's entry into subservicing agreements pursuant to sections 105 and 363 of the Bankruptcy Code, and authorizing AHM Servicing to enter into one or more subservicing agreements.

**BASIS FOR THE RELIEF REQUESTED**

**A.    The Request to Subservice**

12.    As noted above, prior to the filing of these chapter 11 cases, the Debtors business included, among other things, the origination of new mortgage loans and the servicing

---

[2]  The description of the APA in this Motion is by way of summary only.  To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

-4-

of mortgage loans. Many of these loans originated would be serviced by the Servicing Business, thus assuring that the Servicing Business would obtain additional servicing rights as existing mortgage loans were repaid in whole or in part. In addition, the Debtors also serviced mortgage loans originated by others. The Debtors, however, no longer originate mortgage loans, and thus the business for the Servicing Business has been contracting due to ordinary course attrition as mortgage loans are refinanced or repaid.

13.    The Purchaser entered into the APA in order to obtain, stabilize, and eventually expand the Servicing Business. In order to do so, the Purchaser intends to acquire additional loan servicing rights. Similar to the Purchaser's acquisition of servicing rights under the APA, the Purchaser, however, will not obtain legal title to those additional servicing rights until it has obtained the requisite regulatory approvals to do so. Moreover, until the Final Closing (as defined in the APA), the Purchaser will not own the Servicing Business necessary to perform servicing functions, and thus would require a subservicer for any servicing rights the Purchaser obtained.

14.    The Purchaser has therefore requested that AHM Servicing act as a subservicer for servicing rights that the Purchaser intends to acquire. After consulting with the Committee and Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006 (the "Administrative Agent"), AHM Servicing has agreed to do this, subject to Court approval. Each of the Administrative Agent and the Committee has no objection to, the Administrative Agent has consented to and the Committee affirmatively supports the relief requested herein. While the subservicing of mortgage loans may fall within the ordinary course of business (such that Court approval is not required), the Debtors are seeking authorization to enter into subservicing

agreements with one or more parties from whom the Purchaser may ultimately acquire subservicing rights.

15.    The Debtors request that they not be required to file copies of the subservicing agreements for several reasons. First, the subservicing agreements contain information that the Purchaser or the third party may deem confidential or proprietary. Second, subservicing of mortgage loans is no different than the core business of the Servicing Business – the servicing of mortgage loans. Thus, the performance under the subservicing agreements would be ordinary course-type performance of the Servicing Business. If entry into subservicing agreements are ordinary course transactions, AHM Servicing could enter into them without filing (or seeking approval of) the actual documents. Finally, the pricing and other matters do not impact the Debtors' estates.

16.    The pricing and other matters contained in the subservicing agreements will not affect the estates because, as described in the APA, following the Initial Closing, the Purchaser -- not the Debtors' estates -- bears all of the upside benefit and downside risk of the Servicing Business. That is, all of the revenues generated by the Servicing Business will ultimately run to the benefit of the Purchaser as a "Source of Cash" under Exhibit G of the APA, which will increase the Reconciliation Payment (as defined in the APA). Conversely, all of the ordinary course expenses incurred in connection with the Servicing Business will ultimately be borne by the Purchaser either through (a) the Purchaser's responsibility to provide the necessary working capital to fund the Servicing Business or (b) a reduction in the Reconciliation Payment as contemplated by the APA. Moreover, as revenues earned by the Servicing Business, those payments would be subject to the liens of the Purchaser under both the Sale Order and the limited recourse postpetition credit facility (the "Limited Recourse DIP") approved by the Court

DB02:6459968.1                                                                                          066585.1001

on a final basis on November 28, 2007 and would be required to be maintained in separate

accounts as contemplated by Section 6.14(d) of the APA.[3]  Moreover, to be clear, it will be the

Purchaser paying the purchase price for the additional servicing rights, not AHM Servicing or

the other Debtors.  AHM Servicing is only intended to act as subservicer of the additional

servicing rights.  Finally, to avoid additional risk to AHM Servicing and the other Debtors from

the additional subservicing, the Purchaser has agreed to provide the following form of indemnity:

> AH Mortgage Acquisition Co., Inc. hereby agrees (A) to indemnify and hold harmless
> American Home Mortgage Servicing, Inc. and its Affiliates[4] from and against any
> Losses[5] arising as a result of or in connection with the provision of services by American
> Home Mortgage Servicing, Inc. pursuant to, or otherwise arising out of or in connection
> with, that certain [Describe the Subservicing Agreement], and (B) that until the later of (i)
> the Final Closing Date (as defined in the APA) and (ii) the satisfaction of (or the
> establishment of reserves in the amount of) any and all indemnity claims outstanding at
> the Final Closing arising in favor of American Home Mortgage Servicing, Inc. and its
> Affiliates in connection with services provided by American Home Mortgage Servicing,
> Inc. pursuant to the [Describe the Subservicing Agreement], AH Mortgage Acquisition
> Co., Inc. shall not encumber its assets through the incurrence or issuance of indebtedness
> for borrowed money or withdraw or distribute any of its capital, other than withdrawals
> or distributions in amounts equal to any amounts received by AH Mortgage Acquisition
> Co., Inc. as an adjustment to the Purchase Price (as defined in the APA), including,
> without limitation, amounts received pursuant to <u>Section 4.1(c)</u> or <u>Section 4.4</u> of the APA.
> AH Mortgage Acquisition Co., Inc. further agrees that the [Describe the Subservicing
> Agreement] shall provide that upon the assignment of [Describe the Subservicing
> Agreement] by American Home Mortgage Servicing, Inc. to AH Mortgage Acquisition
> Co., Inc. at the Final Closing Date, AH Mortgage Acquisition Co., Inc. shall assume all
> of American Home Mortgage Servicing, Inc.'s obligations and liabilities arising under
> the [Describe the Subservicing Agreement], whether arising prior to or after the Final
> Closing Date.  Finally, AH Mortgage Acquisition Co., Inc. shall use commercially
> reasonable efforts to secure a release in favor of American Home Mortgage Servicing,

---

[3] The Purchaser has requested that the Order approving these procedures make this point clear.  The
Purchaser has also requested its liens under the Sale Order and the Limited Recourse DIP, which cover cash
generated by the Servicing Business (and thus would include revenues from subservicing) also extend to the
subservicing rights themselves.  Finally, the Purchaser has requested that such subservicing rights, and the proceeds
thereof, and the revenues generated with respect thereto, not be subject to any other liens, claims, encumbrances or
interests other than those in favor of the Purchaser.

[4] "Affiliates" has the meaning provided in section 101(2) of the Bankruptcy Code.

[5] "Loss" or "Losses" means any and all actual losses, damages, deficiencies, claims, costs or expenses,
including without limitation, reasonable attorneys' fees and disbursements and those internal and administrative
costs and expenses that are reasonable and documented.

066585.1001

Inc. of all claims arising out of or in connection with the [Describe the Subservicing Agreement], such release to be effective upon the assignment of [Describe the Subservicing Agreement] to AH Mortgage Acquisition Co., Inc.

17. Because (i) the Purchaser rather than AHM Servicing or the other Debtors will be paying the purchase price for additional servicing rights, (ii) liabilities incurred by AHM Servicing under subservicing agreements described herein or entered into pursuant to the Subservicing Procedures (as defined below) and incurred in accordance with Sections 6.1 and 6.2 of the APA will be deemed "Assumed Liabilities" for purposes of Section 2.5 of the APA[6] and (iii) the Purchaser has agreed to provide substantially the foregoing indemnity with respect to the provision of subservicing: (a) the Debtors have agreed, subject to Court approval, to cause AHM Servicing to enter into one or more subservicing agreements as described herein, subject to the Debtors' review and consent, and, the Committee's and the Administrative Agent's review, of one or more forms of subservicing agreements to which the Committee and the Administrative Agent will not unreasonably object and to which the Debtors will not unreasonably withhold their consent or unreasonably delay the execution thereof and (b) the Debtors have agreed to (1) file one or more Subservicing Notices (as defined below) as reasonably requested by the Purchaser and (2), assuming either no objection to the Proposed Subservicing (as defined below) has been filed by the Subservicing Objection Deadline (as defined below) or any such objections have been withdrawn, overruled or otherwise resolved, cause AHM Servicing to enter into one or more subservicing agreements with respect to such Proposed Subservicing and the Committee and the Administrative Agent have agreed, subject to their prior review of any proposed form or forms of subservicing agreements, that they will not unreasonably object to any Proposed

---

[6] Section 2.5 of the APA reads as follows: "On the terms and subject to the conditions set forth herein and as additional consideration for the Purchased Assets, at the Final Closing, Purchaser shall assume and discharge or perform when due in accordance with their respective terms and subject to the respective conditions thereof, the Assumed Liabilities. Other than the Assumed Liabilities, Purchaser shall not assume any Liability of any nature or kind whatsoever of Sellers."

Subservicing or to AHM Servicing entering into such additional subservicing agreements, <u>so long as</u> (with respect to each of subparts (a) and (b) of this paragraph 17) the Purchaser provides AHM Servicing an indemnity with respect to the provision of such subservicing, in substantially the form set forth above.

**B.    The Approval Procedures**

18.    The Debtors propose the following procedures (the "<u>Subservicing Procedures</u>") with respect to AHM Servicing's entry into subservicing agreements.

19.    <u>Transactions Subject to the Procedures</u>:  In connection with the potential acquisition by the Purchaser of additional servicing rights, the Debtors propose that AHM Servicing be permitted to enter into subservicing agreements with the proposed seller of such servicing rights (the "<u>Servicing Rights Seller</u>"), and to grant liens in favor of the Purchaser with respect to subservicing rights related thereto (the "<u>New Subservicing Rights</u>"), without further notice to any party, other than the filing of a Subservicing Notice.

20.    <u>Subservicing Notice</u>:  Before a subservicing agreement entered into in connection with these procedures can become effective, the Debtors will file with the Court a notice (the "<u>Subservicing Notice</u>") of such proposed subservicing (the "<u>Proposed Subservicing</u>") and serve the Subservicing Notice by overnight delivery, facsimile, hand delivery, or electronic mail on the following parties: (i) the Office of the United States Trustee (the "<u>U.S. Trustee</u>"); (ii) counsel to the Committee; (iii) counsel to the Debtors' postpetition lender; (iv) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006, and (v) counsel to the Purchaser (collectively, the "<u>Notice Parties</u>").

21.    <u>Contents of Subservicing Notice</u>:  The Subservicing Notice will include: (i) the identity of the Servicing Rights Seller, (ii) the approximate amount of the unpaid principal

-9-

balance (or estimate thereof) for which the subservicing relates, and (iii) a copy of an indemnity by the Purchaser providing for substantially the same protection for the Debtors as described above in paragraph 16. A form of the proposed Subservicing Notice is annexed hereto as Exhibit A.

22. <u>Objection Procedures</u>: The Notice Parties will have five (5) business days after the Subservicing Notice is filed and served to object to a Proposed Subservicing and to file such objection with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and to serve such objection by overnight delivery or hand delivery on the Notice Parties and counsel to the Debtors (the "<u>Subservicing Agreement Objection Deadline</u>"). In the absence of an objection on or before the Subservicing Agreement Objection Deadline, AHM Servicing may enter into and perform under the subservicing agreements contemplated by the Subservicing Notice without further notice or hearing and such subservicing will be deemed fully authorized by the Court, and such subservicing rights shall be subject to the liens in favor of the Purchaser under the Sale Order and Limited Recourse DIP Facility without further Order of the Court.

23. If an objection to a Proposed Subservicing is timely filed and served by the Subservicing Agreement Objection Deadline, AHM Servicing will not proceed with the Proposed Subservicing unless (i) the objection is withdrawn or otherwise resolved; or (ii) this Court overrules such objection at the next regularly scheduled omnibus hearing that is at least five (5) business days after service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is agreed to by the objecting party and the Debtors.

**C.    Request for Approval of Proposed Subservicing**

24. By this Motion, the Debtors request approval of the following proposed subservicing:

Servicing Rights Seller:        Greenwich Capital Financial Products, Inc.

Unpaid Principal Balance:     $6.3 billion (estimated)

25.      With respect to this proposed subservicing, the Debtors submit that the

Notice Parties will have more than the five (5) business days contemplated by the Subservicing

Procedures.  Accordingly, AHM Servicing should be authorized to enter into one or more

subservicing agreements with respect to Greenwich Capital Financial Products, Inc.[7]

### Legal Argument

26.      Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a

debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor must

demonstrate a sound business justification for a sale or use of assets outside of the ordinary

course of business.  See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996);

Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d

Cir. 1983);  Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re

Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson

Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

27.      Here, there is a sound business justification for entry into the subservicing

agreements.  The APA contemplates that the Sellers operate the Servicing Business in the

Ordinary Course of Business (subject to the Bankruptcy Exceptions) and to use commercially

reasonable efforts to maintain the Servicing Business, keep available the services of officers and

employees, and maintain existing relationships with various parties.  By entering into the

subservicing agreements, AHM Servicing will be performing additional servicing, which will

---

[7]An executed indemnity agreement will be filed 2 business days prior to the hearing on the Motion.

066585.1001

further the Sellers' ability to maintain the Servicing Business, retain employees, and maintain existing relationships with various parties. Absent entering into subservicing agreements, the Servicing Business may further contract, exposing the Sellers to additional potential risk regarding their performance under the APA. In addition, AHM Servicing will not be bearing the cost of acquiring these subservicing rights or be ultimately responsible for the costs of performing under the subservicing agreements. The Purchaser will directly pay the costs to acquire the additional servicing rights and the Purchaser will be ultimately responsible for the costs of performing the servicing through the Reconciliation Payment.

28.    Bankruptcy Rule 2002(a)(2) requires a minimum of 20 days notice of proposed use, sale or lease of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2).

29.    The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing.  11 U.S.C. § 102(1).

30.    The Debtors believe that the notice and objection procedures contained in the Subservicing Procedures are justified under the circumstances. Because the subservicing costs ultimately will not be borne by the Debtors' estates, and relate to functions carried out by AHM Servicing in the ordinary course of its business, the usual process of obtaining Court approval of each subservicing would impose unnecessary administrative burdens on the Court and costs on the Debtors, and, in some instances, may hinder AHM Servicing's ability to obtain the subservicing rights.

31.    Additionally, the Debtors believe that the manner of notice proposed in the Subservicing Procedures is more than appropriate and preserves parties' due process rights. The Debtors will serve notice of each Proposed Subservicing on the Notice Parties. As such, all of the key constituencies in these cases will receive adequate notice.

32.    Finally, as noted above, the "notice and a hearing" requirement contained in Bankruptcy Code section 363(b)(1) is satisfied absent a hearing where there is an opportunity for a hearing and no party in interest timely requests a hearing. 11 U.S.C. § 102(1).

33.    For the foregoing reasons, the Debtors believe that the Subservicing Procedures and AHM Servicing's entry into subservicing agreements represents an exercise of their sound business judgment, and is in the best interest of their estates. Moreover, each of the Administrative Agent and the Committee has no objection to, the Administrative Agent has consented to and the Committee affirmatively supports the relief requested herein.

## WAIVER OF THE STAY PERIOD UNDER BANKRUPTCY RULE 6004(h)

34.    Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property of the estate "is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). To the extent Bankruptcy Rule 6004(h) or a similar Bankruptcy Rule is applicable, the Debtors request a waiver of the stay to enable them to implement the subservicing procedures and subservicing described in paragraphs 24 and 25 as quickly as possible.

## CONCLUSION

35.    For the foregoing reasons, the Debtors request that the Court approve the Subservicing Procedures and authorize AHM Servicing to enter into the subservicing agreements described in paragraphs 24 and 25.

## NOTICE

36.    Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Debtors' postpetition lender; (v) counsel to the Purchaser; and (vi) all other parties entitled to notice under Del. Bankr. LR 2002-1(b).

DB02:6459968.1                                                          066585.1001

WHEREFORE, the Debtors request entry of an order granting the relief requested herein, substantially in the form attached hereto as Exhibit B, and granting such other and further relief as the Court deems just and proper.

Dated:    Wilmington, Delaware
          December 27, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

**Exhibit A**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

In re:                                           :  Chapter 11
                                                 :
AMERICAN HOME MORTGAGE                           :  Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[8]  :
                                                 :  Jointly Administered
        Debtors.                                 :
                                                 :  **Hearing Date:**
                                                 :  **Objection Deadline:**
------------------------------------------------------------- x

### SUBSERVICING NOTICE

TO:     (I) OFFICE OF THE UNITED STATES TRUSTEE, (II) COUNSEL TO THE
        CREDITORS' COMMITTEE, (III) COUNSEL TO THE DEBTORS'
        POSTPETITION LENDERS, (IV) COUNSEL TO BANK OF AMERICA, N.A.,
        AS ADMINISTRATIVE AGENT, AND (V) COUNSEL TO THE PURCHASER

        PLEASE TAKE NOTICE that American Home Mortgage Servicing, Inc., an above-
captioned debtor and debtor in possession ("AHM Servicing"), proposes to entered into a
subservicing agreement with respect to the servicing rights described on Schedule 1 hereto (the
"Proposed Subservicing") in accordance with the Order Pursuant To Sections 105 And 363 Of
The Bankruptcy Code Approving (A) Procedures For AHM Servicing's Entry Into Subservicing
Agreements And (B) The Entry Into One Or More Subservicing Agreements, dated January __,
2008 (the "Subservicing Order").

        PLEASE TAKE FURTHER NOTICE that objections to the Proposed Subservicing, if
any, must be filed on or before [_____] (the "Objection Deadline") with the United States
Bankruptcy Court for the District of Delaware, 5th Floor, 824 Market Street, Wilmington,
Delaware, 19801. At the same time, you must also serve a copy of the objection upon the
undersigned counsel to the Debtors and the Notice Parties set forth in the Subservicing Order so
that the response is received on or before the Objection Deadline.

---

[8]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: American Home Mortgage Holdings, Inc., (6303); American Home Mortgage
Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland
corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American
Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware
limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and
Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent
Blvd., Suite 200, Irving, Texas 75063.

PLEASE TAKE FURTHER NOTICE THAT SHOULD AN OBJECTION BE TIMELY FILED, A HEARING ON THE PROPOSED SUBSERVICING WILL BE HELD BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI, UNITED STATES BANKRUPTCY JUDGE, ON [_____] IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 5TH FLOOR, WILMINGTON, DELAWARE.

PLEASE TAKE FURTHER NOTICE THAT, IF YOU FAIL TO TIMELY OBJECT TO THE PROPOSED SUBSERVICING, THE DEBTORS ARE AUTHORIZED, PURSUANT TO THE SUBSERVICING ORDER, TO ENTER INTO THE SUBSERVICING AGREEMENT(S) CONTEMPLATED BY THE PROPOSED SUBSERVICING DESCRIBED ON SCHEDULE 1 HERETO, AND TO GRANT TO THE PURCHASER LIENS ON SUCH SUBSERVICING RIGHTS, IN EACH CASE WITHOUT FURTHER NOTICE OR HEARING.

Wilmington, Delaware
_____ ____, 200_

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

DB02:6459968.1                                                                 066585.1001

Schedule 1 to Subservicing Notice


Servicing Rights Seller


Unpaid Principal Balance


A copy of the indemnity with respect to the Proposed Subservicing is Annexed Hereto As Schedule 2.

Schedule 2 to Subservicing Agreement

Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
In re:                                    :   Chapter 11
                                          :
AMERICAN HOME MORTGAGE                    :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,⁹ :
                                          :   Jointly Administered
        Debtors.                          :
                                          :   Ref. Docket No.
------------------------------------------------------------ x
```

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF**
**THE BANKRUPTCY CODE APPROVING (A) PROCEDURES**
**FOR AHM SERVICING'S ENTRY INTO SUBSERVICING AGREEMENTS**
**AND (B) THE ENTRY INTO ONE OR MORE SUBSERVICING AGREEMENTS**

Upon consideration of the motion (the "Motion")[10] of the above-captioned debtors and

debtors in possession, pursuant to sections 105(a) and 363(b) of title 11 of the United States

Code (the "Bankruptcy Code") for entry of an order approving procedures for AHM Servicing's

entry into subservicing agreements without further order of the Court and approving entry into

one or more subservicing agreements; this Court finds and concludes that: (a) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334; (b) this proceeding is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) venue of this proceeding and the Motion in

this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (d) the legal and factual bases set

---

[9]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: American Home Mortgage Holdings, Inc., (6303); American Home Mortgage
Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland
corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American
Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware
limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and
Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent
Blvd., Suite 200, Irving, Texas 75063.

[10]     All capitalized terms not otherwise defined herein have the meanings ascribed in the Motion.

forth in the Motion and at the hearing (if any), establish just cause for the relief granted herein; (e) the Debtors have established good business justification for the relief sought in the Motion; and (f) reasonable and adequate notice of the Motion was provided, and no further or other notice is necessary.

Based upon the above findings and conclusions, and after due deliberation and sufficient cause appearing therefor;

ORDERED that the Motion is granted; and it is further

ORDERED that AHM Servicing is hereby authorized to enter into the subservicing agreements in accordance with the Subservicing Procedures; and it is further

ORDERED that, before a subservicing agreement entered into in connection with these procedures can become effective, the Debtors shall file with the Court, upon the Purchaser's reasonable request, a notice (the "Subservicing Notice") of such proposed subservicing (the "Proposed Subservicing") and serve the Subservicing Notice by overnight delivery, facsimile, hand delivery, or electronic mail on the following parties:  (i) the Office of the United States Trustee (the "U.S. Trustee"); (ii) counsel to the Committee; (iii) counsel to the Debtors' postpetition lender; (iv) counsel to counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006, and (v) counsel to the Purchaser (collectively, the "Notice Parties"); and it is further

ORDERED that the Subservicing Notice shall include:  (i) the identity of the Servicing Rights Seller, (ii) the approximate amount of the unpaid principal balance (or estimate thereof) for which the subservicing relates, and (iii) a copy of an indemnity by the Purchaser and providing for substantially the same protection for AHM Servicing and the Debtors as described

in paragraph 16 of the Motion. The form of the proposed Subservicing Notice is annexed to the Motion as Exhibit A is hereby approved; and it is further

ORDERED that the Notice Parties shall have five (5) business days after the Subservicing Notice is filed and served to object to a Proposed Subservicing and to file such objection with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and to serve such objection by overnight delivery or hand delivery on the Notice Parties and counsel to the Debtors (the "Subservicing Agreement Objection Deadline"); and it is further

ORDERED that in the absence of an objection on or before the Subservicing Agreement Objection Deadline or such objection having been withdrawn, overruled or otherwise resolved, AHM Servicing is hereby authorized to and shall enter into and perform under the subservicing agreements contemplated by the Subservicing Notice, each without further notice or hearing and such subservicing shall be deemed fully authorized by the Court, and the subservicing rights under each of such subservicing agreements and the one or more subservicing agreements with Greenwich Capital Financial Products, Inc. contemplated by paragraphs 24 and 25 of the Motion shall be subject to the liens in favor of the Purchaser under the Sale Order, the APA (and related documents), and Limited Recourse DIP Facility without further Order of the Court (and, for the sake of clarity, the proceeds of such servicing rights, and the revenues generated thereby, are a "Source of Cash" for purposes of Exhibit G of the APA, are to be maintained in separate accounts as contemplated by Section 6.14(d) of the APA and, are subject to the liens in favor of the Purchaser under the Sale Order and Limited Recourse DIP Facility); and it is further

066585.1001

ORDERED that except for the claims and liens in favor of the Purchaser granted pursuant to this Order, the Sale Order, the APA (and related documents) or the order approving the Limited Recourse DIP, any and all subservicing rights of AHM Servicing acquired under the authority of this Order, and the proceeds thereof and the revenues (or cash or other funds) earned with respect thereto, shall not be subject to any liens, claims, encumbrances, and interests; and it is further

ORDERED that if an objection to a Proposed Subservicing is timely filed and served by the Subservicing Agreement Objection Deadline, AHM Servicing shall not proceed with the Proposed Subservicing unless (i) the objection is withdrawn or otherwise resolved; or (ii) this Court overrules such objection at the next regularly scheduled omnibus hearing that is at least five (5) business days after service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is agreed to by the objecting party and the Debtors; and it is further

ORDERED that the Committee and the Administrative Agent shall not, subject to their prior review of any proposed form or forms of subservicing agreements, unreasonably object to any Proposed Subservicing or to AHM Servicing entering into additional subservicing agreements pursuant to the Subservicing Procedures, so long as the Purchaser provides AHM Servicing and its Affiliates an indemnity with respect to the provision of such subservicing, in substantially the form as described in paragraph 16 of the Motion; and it is further

ORDERED that AHM Servicing is hereby authorized to and shall enter into one or more subservicing agreements with Greenwich Capital Financial Products, Inc. as contemplated in paragraphs 24 and 25 of the Motion, subject to the Debtors', the Committee's and the Administrative Agent's review of the forms of subservicing agreements to which the Committee and the Administrative Agent shall not unreasonably object and to which the Debtors

shall not unreasonably withhold their consent or unreasonably delay the execution thereof; and it further

ORDERED that notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order; and it is further

ORDERED that this Court will retain jurisdiction regarding the interpretation, implement, or all matters related to this Order.

Dated: Wilmington, Delaware
     January \_\_\_\_, 2008

                                   _____
                                   Christopher S. Sontchi
                                   United States Bankruptcy Judge