## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x

In re:

AMERICAN HOME MORTGAGE
HOLDINGS, INC., a Delaware corporation, et al.,[1]

        Debtors.

---------------------------------------------------------------- x

: Chapter 11
:
: Case No. 07-11047 (CSS)
:
: Jointly Administered
:
:
: **Proposed Hearing Date: January 4, 2008 at 11:00 a.m.**
: **Proposed Objection Deadline: January 3, 2008 at 12:00 p.m.**

### NOTICE OF MOTION

TO:    The Office of the United States Trustee for the District of Delaware; counsel to the Committee; counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; counsel to agent for the Debtors' postpetition lenders; and all parties entitled to notice under Local Rule 2002-1(b).

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed the **Motion of the Debtors for Orders Pursuant to Sections 105, 107(b) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002 and 9018 Authorizing the Debtors to Undertake Certain Activities to Prepare for Consummation of the Previously-Approved Sale of their Servicing Business** (the "Motion").

      **PLEASE TAKE FURTHER NOTICE** that the Debtors have requested that objections to the attached Motion be filed with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before **January 3, 2008 at 12:00 p.m.**.  At the same time, you must also serve a copy of the objection upon the undersigned counsel to the Debtors.

      **PLEASE TAKE FURTHER NOTICE** THAT THE DEBTORS HAVE REQUESTED THAT A HEARING ON THIS MATTER BE HELD ON **JANUARY 4, 2008 AT 11:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 5TH FLOOR, COURTROOM #6, WILMINGTON, DELAWARE 19801.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OF HEARING

Dated: Wilmington, Delaware
December 27, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
M. Blake Cleary (No. 3614)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
In re:                                      :  Chapter 11
                                            :
AMERICAN HOME MORTGAGE                      :  Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1] :
                                            :  Jointly Administered
        Debtors.                            :
                                            :  Hearing Date:  January 4, 2008 at 11:00 a.m.
                                            :  Objection Deadline:  January 3, 2008 at 12:00 p.m.
------------------------------------------------------------- x
```

## MOTION OF THE DEBTORS FOR ORDERS PURSUANT TO SECTIONS 105, 107(b), AND 363 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002 AND 9018 AUTHORIZING THE DEBTORS TO UNDERTAKE CERTAIN ACTIVITIES TO PREPARE FOR CONSUMMATION OF THE PREVIOUSLY-APPROVED SALE OF THEIR SERVICING BUSINESS

The debtors and debtors-in-possession in the above-captioned jointly administered cases (collectively, "AHM" or the "Debtors") hereby move this Court (the "Motion") pursuant to sections 105(a), 107(b) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") for entry of certain orders authorizing the Debtors to undertake certain activities to prepare for the consummation of the previously-approved sale of their loan servicing business, and certain related relief as set forth more fully herein.  In support of the Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION AND STATUS OF THE CASE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 107(b) and 363(b).

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed The Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

## BACKGROUND

A.      **The Debtors' Business**

5.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate-A quality.

6.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion.  As of December 31, 2006, AHM operated more than 550 loan-production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia.  Certain AHM entities originated mortgages through a network of loan origination offices.  In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents.  AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7.      A large component of AHM's business was the servicing of loans (the "Servicing Business"), which it conducted through AHM Servicing.  The Servicing Business entails, among other things, collecting mortgage payments, administering tax and insurance escrows, responding to borrower inquiries, and maintaining control over collection and default mitigation processes.  As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8.      The Debtors continued to operate the Servicing Business after the Petition Date and, as discussed further below, currently operate it for the benefit (and risk) of the Purchaser (as hereinafter defined).

**B.      The Sale of the Servicing Business**

9.      By that certain *Order (A) Approving (i) The Sale Of The Debtors Mortgage Servicing Business Free And Clear Of Liens, Claims And Interests, (ii) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (B) Granting Certain Related Relief* [D.I. 1711] dated October 30, 2007  (the "Sale Order"), the Court authorized the sale of the Servicing Business (the "Servicing Sale") to

AH Mortgage Acquisition Co., Inc. (the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as subsequently amended, the "APA").

10.    Under the APA, the Servicing Sale will close in two steps.    At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing Date"), the Purchaser paid the Purchase Price (as defined in the APA) in the manner and to the parties in interest as contemplated by the APA.  From the Initial Closing Date until the "legal" close on the Final Closing Date (as defined in the APA), the Sellers (as defined in the APA) will continue to operate the servicing business in the Ordinary Course of Business (as defined in the APA), subject to the Bankruptcy Exceptions (as defined in the APA), but for the economic benefit (and risk) of the Purchaser.  Following the Initial Closing Date, the Purchaser (i) bears all of the upside benefit and downside risk of the Servicing Business; (ii) is responsible for providing the necessary working capital to fund the Servicing Business; and (iii) is ultimately responsible for the operating expenses of the Servicing Business.

## RELIEF REQUESTED

11.    By this Motion, the Debtors seek entry of an order pursuant to section 363 of the Bankruptcy Code authorizing certain of the Debtors to (i) create one or more non-debtor business entities, which may include, without limitation, corporations, limited liability companies, limited partnerships, trusts, general partnerships and other like entities (a "Transition Entity" or "Transition Entities") for the purpose of entering into certain agreements relating to the transition of the Purchased Assets from the Sellers to the Purchaser or relating to the continued operation of the Servicing Business (the "Transition Entities Agreements"), (ii) fund the Transition Entities with amounts sufficient to perform their respective obligations under the Transition Entities Agreements, (iii) enter into that certain Fourth Amendment to the APA, a

copy of which is annexed hereto as Exhibit A (the "Fourth Amendment"), which provides, among other things, that the Debtors' interests in the Transition Entities will be deemed Purchased Assets under certain provisions of the APA,[2] and (iv) enter into that certain Employment Agreement, between American Home Mortgage Servicing, Inc ("AHM Servicing") and David M. Friedman (the "Employment Agreement") relating to the employment of Mr. Friedman.

12.    In addition, the Debtors seek entry of an order pursuant to section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 authorizing them to file the Employment Agreement, in substantially final form, with the Court under seal, and directing that the Employment Agreement remain under seal, confidential and not be made available to anyone, except for the Court, the office of the U.S. Trustee, counsel to the Committee, counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006 (the "Administrative Agent"), the Purchaser, counsel to the Purchaser, and counsel to the DIP Lenders, or others (i) at the discretion of the Debtors, provided the Purchaser consents, (ii) at the sole discretion of the Purchaser, upon the occurrence of the Final Closing, or (iii) upon further order of the Bankruptcy Court.

13.    Finally, in light of the nature of the relief requested herein, the Debtors seek authorization pursuant to Bankruptcy Rule 2002 to limit service of the Motion to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Administrative Agent; (iv) counsel to the Debtors' postpetition lender; (v) counsel to the Purchaser; and (vi) all other parties entitled to notice under Del. Bankr. LR 2002-1(b).

---

[2]    The description of the APA, the Fourth Amendment, and the Employment Agreement in this Motion is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the applicable document, the terms of the applicable document are controlling.

066585.1001

## ARGUMENT

### A.    Authorization to Create the Transition Entities.

14.    The Transition Entities will be non-debtors formed for the purpose of

entering into, and performing under, the Transition Entities Agreements, to assist the Debtors in

transitioning the Purchased Assets to the Purchaser at the Final Closing and facilitate the

continued operation of the Servicing Business.  By way of illustration, the Transition Entities

Agreements may include agreements relating to telephone services, software contracts or trustee

services agreements.[3]  At the Final Closing, by virtue of the Fourth Amendment (discussed

below), the Debtors' interests in the Transition Entities would be transferred to the Purchaser.  At

that time, the Transition Entities would remain obligated under the Transition Entities

Agreements, but the Transition Entities would become subsidiaries of the Purchaser.

Accordingly, the creation of the Transition Entities and their subsequent transfer to the Purchaser

upon Final Closing would provide a smooth transition of the Servicing Business from the

Debtors to the Purchaser, which in turn benefits all parties-in-interest to these proceedings,

including the Debtors' creditors, employees, customers, and counter-parties to executory

contracts.  Moreover, as the Servicing Business has continued its operations, and as it prepares

for the transition, it has become increasingly necessary to enter into new agreements to facilitate

the operations and transition.  However, counterparties have been reluctant to enter into

contractual relationships with the Debtors due to the fact that they filed for relief under the

Bankruptcy Code.  Debtors believe that the counterparties will more readily enter into contracts

---

[3]    Since the Transition Entities are non-debtors, the Debtors are not seeking approval of any
Transition Entities Agreements, and this description of the Transition Entities Agreements is provided for illustrative
purposes only.

066585.1001

with the non-debtor Transition Entities since they are not debtors in these proceedings and will

become subsidiaries of the Purchaser upon the Final Closing.

**B.      Authorization to Fund the Transition Entities.**

15.      Prior to the Final Closing, the Transition Entities will be funded by the

Sellers to the extent necessary to meet any obligations incurred in connection with the Transition

Entities Agreements, but the only sources of funding would be the revenues and/or working

capital of the Servicing Business. As provided in the APA, following the Initial Closing, the

Purchaser -- not the Debtors' estates -- bears all of the upside benefit and downside risk of the

Servicing Business. That is, all of the revenues generated by the Servicing Business will

ultimately run to the benefit of the Purchaser as a "Source of Cash" under Exhibit G of the APA,

which will increase the Reconciliation Payment (as defined in the APA). Conversely, all of the

ordinary course expenses incurred in connection with the Servicing Business will ultimately be

borne by the Purchaser either through (a) the Purchaser's responsibility to provide the necessary

working capital to fund the Servicing Business or (b) a reduction in the Reconciliation Payment

as contemplated by the APA. Moreover, as revenues earned by the Servicing Business, those

payments would be subject to the liens of the Purchaser under both the Sale Order and the

limited recourse postpetition credit facility (the "Limited Recourse DIP") approved by the Court

on a final basis on November 28, 2007 and would be required to be maintained in separate

accounts as contemplated by Section 6.14(d) of the APA. Accordingly, the Debtors' estates will

not suffer any negative economic impact if permitted to fund the Transition Entities' obligations.

Additionally, as described in more detail in paragraph 17 below, the Transition Entities will be

transferred to the Purchaser at the Final Closing and the Transition Entities and their assets are

deemed to be Purchased Assets for purposes of, among other Sections, Section 6.2(c) of the APA

pursuant to which the Purchaser, following the Final Closing, will indemnify the Sellers for

-7-

Losses arising from the Sellers' ownership thereof after the Initial Closing, except for Losses

arising out of (i) the Sellers' or their affiliates' bad faith, willful misconduct or gross negligence

or (ii) the Sellers' breach of the APA.

### C.    Authorization to Enter Into the Fourth Amendment.

16.    The Sale Order, among other things, authorized the sale of the Debtors'

loan servicing business in accordance with the APA.  Section 11.4 of the APA permits

amendment of the APA by a written instrument signed by all of the parties to the APA, with the

prior written consent of the Administrative Agent, and with prior consultation with the

Committee.  Further, Paragraph 27 of the Sale Order provides that:

> Prior to the Final Closing, the APA and any related agreements,
> documents, or other instruments may be modified, amended, or
> supplemented by the parties thereto, in a writing signed by all
> parties an in accordance with the terms thereof, without further
> order of the Court, provided, however, that (a) any such
> modification, amendment, or supplement does not have a material
> adverse effect on the Debtors' estates; and (b) five (5) business
> days prior written notice is given to the counsel to (i) the
> Administrative Agent, and (ii) the Committee.  Notice of any
> modification, amendment or supplement to the APA will be filed
> by the Debtors with the Court.

Sale Order, at ¶ 27 (together, the "Modification Provisions").

17.    The Debtors, in consultation with the Purchaser, the Administrative Agent,

and the Committee, have agreed to the Fourth Amendment to facilitate the use of the Transition

Entities to consummate the Servicing Sale.  Each of the Administrative Agent and the

Committee has no objection to, the Administrative Agent has consented to and the Committee

affirmatively supports the Sellers entering into the Fourth Amendment.  The Fourth Amendment

modifies the APA by providing that the Debtors' interest in the Transition Entities, the assets of

the Transition Entities and the Employment Agreement will be deemed to be Purchased Assets

for the purposes of, among other things, Section 6.2(c) of the APA.  The Transition Entities and

the Employment Agreement will be transferred to the Purchaser upon the Final Closing and

Purchaser, following the Final Closing, will indemnify the Sellers pursuant to Section 6.2(c) of

the APA, with respect to any Losses arising out of the Sellers' ownership thereof after the Initial

Closing, except for Losses arising out of (i) the Sellers' or their affiliates' bad faith, willful

misconduct or gross negligence or (ii) the Sellers' breach of the APA.  Although the

Modification Provisions arguably authorize the Debtors to enter into the Fourth Amendment

without further order of the Court, the Purchaser has requested, out of an abundance of caution,

that the Court enter an order approving the Debtors' entry into the Fourth Amendment.

     **D.**     **Authorization to Enter Into the Employment Agreement.**

     18.     Mr. Friedman, as Executive Vice President of AHM Servicing, runs the

Servicing Business.  Throughout these chapter 11 cases, Mr. Friedman has played an important

role in maximizing the value of the Debtors' estates for the benefit of the Debtors' stakeholders,

and Mr. Friedman remains an integral part of the Servicing Business.  At this delicate stage of

the proceedings, Mr. Friedman's skills, experience with the company, and familiarity with the

industry are critical to maintaining the Servicing Business and successfully transitioning the

Servicing Business from the Debtors to the Purchaser.  Accordingly, the Debtors, in consultation

with the Administrative Agent and the Committee, and Mr. Friedman have agreed that he should

continue to be employed by the Debtors, and eventually with the Purchaser, upon the terms and

conditions set forth in the Employment Agreement.  Each of the Administrative Agent and the

Committee has no objection to, the Administrative Agent has consented to and the Committee

affirmatively supports AHM Servicing entering into the Employment Agreement.

     19.     The Debtors will not bear any negative economic effect associated with

entry into the Employment Agreement.  Under the Employment Agreement, any claims Mr.

Friedman may have against AHM Servicing are limited to the assets of the Servicing Business

-9-

and any net revenue generated by the Servicing Business after the Initial Closing, and upon the

Initial Closing, the Purchaser assumed both the economic benefits and risks of the Servicing

Business. Upon the Final Closing, the Employment Agreement provides that AHM Servicing

will assign to the Purchaser all of AHM Servicing's rights and benefits under the Employment

Agreement and the Purchaser will assume all of AHM Servicing's liabilities and obligations

under the Employment Agreement. Additionally, as described in more detail in paragraph 17

above, the Employment Agreement will be deemed to be a Purchased Asset under Section 6.2(c)

the APA, pursuant to which the Purchaser, after the Final Closing, will indemnify the Sellers for

Losses arising from the Sellers' ownership thereof after the Initial Closing, except for Losses

arising out of (i) the Sellers' or their affiliates' bad faith, willful misconduct or gross negligence

or (ii) the Sellers' breach of the APA. Moreover, liabilities incurred by AHM Servicing under

the Employment Agreement in accordance with Sections 6.1 and 6.2 of the APA will be deemed

to be "Assumed Liabilities" for purposes of Section 2.5 of the APA.[4]

### E.    Authorization to File the Employment Agreement Under Seal.

20.    The Employment Agreement contains proprietary information which the

Purchaser does not wish to be made public, and has requested that it be filed with the Court

under seal. Since the Court and representatives of all key stakeholders in this case will have

access to the Employment Agreement, and since the obligations thereunder on the part of the

Servicing Business will not have any negative economic effect on the Debtors, the Debtors

respectfully submit that the requested seal is appropriate.

---

[4] Section 2.5 of the APA reads as follows: "On the terms and subject to the conditions set forth herein and as additional consideration for the Purchased Assets, at the Final Closing, Purchaser shall assume and discharge or perform when due in accordance with their respective terms and subject to the respective conditions thereof, the Assumed Liabilities. Other than the Assumed Liabilities, Purchaser shall not assume any Liability of any nature or kind whatsoever of Sellers."

F.    **Limiting Notice.**

21.    In the present circumstances, the relief requested will have no adverse

impact on the Debtors' estates or the interests of their creditors.  The Debtors have consulted

with both the Committee and the Administrative Agent, and both have expressed no objections

to the relief requested, the Administrative Agent has consented to the relief requested and the

Committee affirmatively supports the relief requested.  All parties who have appeared in these

cases and properly requested notice will receive notice of the Motion.  Accordingly, the Debtors

believe that their request to dispense with notice to the broad universe is both fair and practical.

## LEGAL AUTHORITIES

### 1.  Use, Sale or Lease of Property

22.    A debtor in possession, "after notice and a hearing, may use, sell, or lease,

other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Use

of estate property outside of the ordinary course of business may be authorized if the debtor

demonstrates a "sound business purpose" for it.  See, e.g., Myers v. Martin (In re Martin), 91

F.3d 389, 395 (3d Cir. 1996); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel

Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983);  Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward

Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In

re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

23.    Once the debtor articulates a valid business justification for a particular

form of relief, the Court reviews the debtor's request under the "business judgment rule."  The

business judgment rule "is a presumption that in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action was

in the best interests of the Company."  In re Integrated Resources, Inc., 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

-11-

24.    Here, there is a sound business justification for creating and funding the Transition Entities and entering into the Fourth Amendment and the Employment Agreement. The APA contemplates that the Debtors operate the Servicing Business in the Ordinary Course of Business (subject to the Bankruptcy Exceptions) and to use commercially reasonable efforts to maintain the Servicing Business, keep available the services of officers and employees, and maintain existing relationships with various parties.   The requested relief will facilitate the transition between the Debtors and the Purchaser, which will benefit all parties-in-interest.  In addition, the Debtors' and their estates are protected from any downside risk.

### 2. Filing Under Seal

25.    Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders that will protect entities from potential harm that may result from the disclosure of certain confidential information.   This section provides, in relevant part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may --
>
> (1)    protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2)    protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).

26.    Bankruptcy Rule 9018 defines the procedures by which a party may move for relief under section 107(b) of the Bankruptcy Code, and provides, in relevant part, that "[o]n motion, or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information ...." Fed. R. Bankr. P. 9018.

-12-

27.    The Debtors submit that good cause exists for the Court to grant the relief requested herein because the Employment Agreement contains confidential commercial information which is proprietary in nature.  Given the fact that entry into the Employment Agreement will have no adverse effect on the Debtors' estates, the Debtors respectfully submit that cause exists to file it under seal.

### 3.  Limited Notice

28.    The Bankruptcy Rules require that notice of proposed use, sale or lease of estate property outside the ordinary course of business to be provided by mail to all parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2).

29.    The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing.  11 U.S.C. § 102(1).  For the reasons set forth above, the Debtors respectfully submit that limiting notice as requested is appropriate in these particular circumstances.

### WAIVER OF THE STAY PERIOD UNDER BANKRUPTCY RULE 6004(H)

30.    Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property of the estate "is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  To the extent Bankruptcy Rule 6004(h) or a similar Bankruptcy Rule is applicable, the Debtors request a waiver of the stay to enable them to implement the above as quickly as possible.

## CONCLUSION

31.    For the foregoing reasons, the Debtors request that the Court approve the

Motion and authorize the Debtors to (i) create the Transition Entities, (ii) fund the Transition

Entities, (iii) enter into the Fourth Amendment, (iv) enter into the Employment Agreement, (v)

file the Employment Agreement under seal, and (vi) provide notice of the Motion as provided for

herein.

## NOTICE

32.    Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii)

counsel to the Committee; (iii) counsel to the Administrative Agent; (iv) counsel to the Debtors'

postpetition lender; (v) counsel to the Purchaser; and (vi) all other parties entitled to notice under

Del. Bankr. LR 2002-1(b).

DB02:6459970.1

066585.1001

WHEREFORE, the Debtors request entry of an order (a) authorizing the filing of

the Employment Agreement under seal, substantially in the form of Exhibit B hereto, (b)

granting the remainder of the relief requested herein, substantially in the form attached hereto as

Exhibit C, and (c) granting such other and further relief as the Court deems just and proper.


Dated:      Wilmington, Delaware
            December 27, 2007

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              _____
                              James L. Patton, Jr. (No. 2202)
                              Joel A. Waite (No. 2925)
                              Pauline K. Morgan (No. 3650)
                              Sean M. Beach (No. 4070)
                              Matthew B. Lunn (No. 4119)
                              Kara Hammond Coyle (No. 4410)
                              Kenneth J. Enos (No. 4544)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Counsel for Debtors and Debtors in Possession

# EXHIBIT A

FOURTH AMENDMENT
TO ASSET PURCHASE AGREEMENT

This Fourth Amendment to Asset Purchase Agreement dated as of January __, 2008 (this "Fourth Amendment"), is entered into by and among AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser"), American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing, Inc, a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, the "Sellers").

WHEREAS, Purchaser and Sellers are parties to that certain Asset Purchase Agreement, dated as of September 25, 2007, as amended by that certain First Amendment to Asset Purchase Agreement, dated as of November 1, 2007, that certain Second Amendment to Asset Purchase Agreement, dated as of November 6, 2007, and that certain Third Amendment to Asset Purchase Agreement dated as of November 16, 2007 (the "Agreement");

WHEREAS, Section 11.4 of the Agreement permits amendment of the Agreement by a written instrument signed by all of the parties to the Agreement with the prior written consent of the Administrative Agent (as defined in the Agreement) and with prior consultation with the official committee of unsecured creditors (the "Committee") appointed in the Bankruptcy Cases (as defined in the Agreement); and

WHEREAS, the parties to the Agreement desire to amend certain provisions of the Agreement pursuant to this Fourth Amendment in order to clarify the assets that will be acquired on the Final Closing Date by Purchaser.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1.    Definitions.  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Agreement.

Section 2.    Formation of Transition Entities.  The Company shall cause one or more entities (which may include, without limitation, corporations, limited liability companies, limited partnerships, trusts, general partnerships and the like entities) (each a "Transition Entity" and collectively the "Transition Entities") to be formed and organized in the jurisdictions and the manner as reasonably specified by Purchaser.  From the date of such formation until the Final Closing, the Company shall (a) hold beneficially and of record all capital stock and other securities of and ownership interests in the Transition Entities, (b) own such capital stock, securities and ownership interests free and clear of all Claims and Liens other than any New Financing Liens and Permitted Liens and (c) cause the Transition Entities to own their respective assets free and clear of all Claims and Liens other than New Financing Liens and Permitted Liens.  For purposes of the prior sentence, contracts entered into by the Transition Entities in accordance with the provisions of the Agreement (including Sections 6.1 and 6.2 thereof) shall

be deemed "Assumed Contracts" with respect to the definition of "Permitted Lien" in Section 1.1 of the Agreement and the capital stock, securities of and ownership interests in the Transition Entities and the assets of the Transition Entities shall be deemed "Purchased Assets" with respect to the definition of "Permitted Lien" in Section 1.1 of the Agreement. All Liabilities incurred by the Company in connection with the formation and organization of the Transition Entities in accordance with this <u>Section 2</u> shall be deemed to be incurred in connection with the operation of the Business in the Ordinary Course. For purposes of <u>Sections 2.7(b), 6.1, 6.2(a)-(c), 6.3, 6.5, 6.9, 6.14(b)</u> and <u>6.14(d)</u> of the Agreement, the business of the Transition Entities shall be deemed to be a part of the Business. For purposes of <u>Sections 6.1, 6.2(a)-(c), 6.5, 6.7, 6.14(b)</u> and <u>6.14(d)</u> of the Agreement, the assets of the Transition Entities shall be deemed Purchased Assets and for purposes of <u>Sections 6.1, 6.2(a) and 6.5</u> of the Agreement, the Contracts of the Transition Entities shall be deemed Assumed Contracts. For purposes of <u>Sections 2.7(b), 6.1, 6.2(a)-(c), 6.5, 6.7, 6.14(b)</u> and <u>6.14(d)</u> of the Agreement, the capital stock and other securities of and ownership interests in the Transition Entities shall be deemed Purchased Assets. In addition, for purposes of subpart (ii) of the last sentence of <u>Section 2.7(b)</u> of the Agreement, the Liabilities of the Transition Entities incurred in the operation of the Business pursuant to <u>Sections 6.1</u> and <u>6.2</u> shall be deemed to be Assumed Liabilities.

       Section 3.    <u>Transfer of Ownership Interests</u>. At the Final Closing, the Company shall, for no additional consideration, deliver to Purchaser, as Purchased Assets, a certificate or certificates duly endorsed in blank for transfer with respect to any capital stock and other securities of and ownership interests in the Transition Entities or such other transfer instruments and documentation reasonably requested by Purchaser with respect to the ownership interests in the Transition Entities each in form and substance reasonably acceptable to Purchaser.

       Section 4.    <u>Assignment and Assumption of Employment Agreement and Subservicing Agreements</u>. The Company shall enter into an employment agreement with David Friedman (the "<u>Friedman Agreement</u>") in substantially the form attached hereto as Exhibit A. The Company shall also enter into one or more subservicing agreements for the performance of certain servicing rights currently held by Greenwich Capital Financial Products, Inc. (the "<u>Greenwich Subservicing Agreements</u>"), subject to the Debtors' review and consent to one or more forms of subservicing agreement, which such consent thereto and execution thereof will not be unreasonably withheld or delayed, so long as Purchaser provides the Company an indemnity in substantially the form attached hereto as Exhibit B, and subject to the Administrative Agent's and the Committee's review in accordance with the Subservicing Order (as defined below). From time to time, upon Purchaser's reasonable request, Sellers will file with the Bankruptcy Court one or more Subservicing Notices (as defined in the Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving (A) Procedures for AHM Servicing's Entry Into Subservicing Agreements and (B) the Entry Into One or More Subservicing Agreements, entered on January __, 2008 (the "<u>Subservicing Order</u>")) and, assuming either no objection to the Proposed Subservicing (as defined in the Subservicing Order) or any such objections having been withdrawn, overruled or otherwise resolved, the Company shall enter into one or more subservicing agreements with respect to each such Proposed Subservicing (each a "<u>Subservicing Agreement</u>" and collectively, together with the Greenwich Subservicing Agreements, the "<u>Subservicing Agreements</u>"), so long as Purchaser provides the Company an indemnity in substantially the form attached hereto as Exhibit B. Pursuant to the Subservicing Order, the Administrative Agent and the Committee are to not unreasonably object to any Proposed

                                                              

Subservicing or to the Company entering into any Subservicing Agreements with respect to such Proposed Subservicing, subject to their prior review of any proposed form or forms of such Subservicing Agreements. For purposes of Sections 2.7(b), 6.2(a)-(c), 6.3, 6.5, 6.7, 6.9, 6.14(b) and 6.14(d) of the Agreement, the Friedman Agreement and the Subservicing Agreements shall be deemed to be a part of the Business, and to be Purchased Assets and Assumed Contracts. In addition, for purposes of Sections 2.5 and 2.7(b) of the Agreement, Liabilities incurred by the Company under the Friedman Agreement or the Subservicing Agreements in accordance with Sections 6.1 and 6.2 of the Agreement shall be deemed Assumed Liabilities. Any indemnity provided to the Company with respect to the Subservicing Agreements pursuant to this Section 4 shall be in addition to, and not in limitation of, any rights Sellers may have under the last sentence of Section 6.14(c) of the Agreement; provided that in no event shall Sellers be entitled to duplicative recovery for the same Losses. For the avoidance of doubt, Subservicing Agreements shall constitute "servicing agreements" as such term is used in Section 6.14(c) of the Agreement.

Section 5.    Limitation on Assignment of Liens and Financing. Notwithstanding the provisions of Section 6.14(a) of the Agreement permitting assignment, Purchaser agrees that Purchaser will not assign the lien on and security interest in the Purchased Assets granted to Purchaser pursuant to Section 6.14(b) of the Agreement unless the assignee of such lien and security interest agrees that it shall be subject to the same counterclaims, defenses and rights of set-off as if such lien and security interest remained directly held by Purchaser.

Section 6.    Consent; Consultation. Sellers jointly and severally represent and warrant to Purchaser that Sellers have obtained the prior written consent of the Administrative Agent to enter into this Fourth Amendment and have consulted with the Committee prior to entering into this Fourth Amendment.

Section 7.    Amendment. This Fourth Amendment may be amended, modified and supplemented only by a written instrument signed by all of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Fourth Amendment. Sellers shall not agree to amend, modify or supplement this Fourth Amendment, or waive any provision of this Fourth Amendment without the prior written consent of the Administrative Agent and without prior consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases.

Section 8.    Counterparts. This Fourth Amendment may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when two or more counterparts have been signed by each of the parties and delivered to the other parties. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

Section 9.    Entire Agreement; No Third Party Beneficiaries. The Agreement as amended by this Fourth Amendment (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and thereof, except for the Confidentiality Agreement, which shall remain in full force and effect until the Initial Closing Date, and (b) is not intended to confer any rights

or remedies upon any Person other than the parties hereto and thereto, including without limitation any Business Employee or Transferred Employee.

Section 10.    Governing Law.  THIS FOURTH AMENDMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH (A) THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO RULES GOVERNING THE CONFLICT OF LAWS AND, (B) TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, Purchaser and Sellers have executed this Fourth Amendment or caused this Fourth Amendment to be executed by their respective officers thereunto duly authorized as of the date first written above.

AH MORTGAGE ACQUISITION CO., INC.,
as Purchaser


By: _____
        Name:
        Title:

AMERICAN HOME MORTGAGE
    INVESTMENT CORP.,
    as Seller and Debtor and Debtor-in-Possession


By: _____
        Name:
        Title:

AMERICAN HOME MORTGAGE CORP,
    as Seller and Debtor and Debtor-in-
    Possession


By: _____
        Name:
        Title:

AMERICAN HOME MORTGAGE
    SERVICING, INC.,
    as Seller and Debtor and Debtor-in-Possession


By: _____
        Name:
        Title:

## Exhibit A

Friedman Agreement

Exhibit B

Form of Indemnity

AH Mortgage Acquisition Co., Inc. hereby agrees (A) to indemnify and hold harmless American Home Mortgage Servicing, Inc. and its Affiliates from and against any Losses arising as a result of or in connection with the provision of services by American Home Mortgage Servicing, Inc. pursuant to, or otherwise arising out of or in connection with, that certain [Describe the Subservicing Agreement], and (B) that until the later of (i) the Final Closing Date (as defined in the APA) and (ii) the satisfaction of (or the establishment of reserves in the amount of) any and all indemnity claims outstanding at the Final Closing arising in favor of American Home Mortgage Servicing, Inc. and its Affiliates in connection with services provided by American Home Mortgage Servicing, Inc. pursuant to the [Describe the Subservicing Agreement], AH Mortgage Acquisition Co., Inc. shall not encumber its assets through the incurrence or issuance of indebtedness for borrowed money or withdraw or distribute any of its capital, other than withdrawals or distributions in amounts equal to any amounts received by AH Mortgage Acquisition Co., Inc. as an adjustment to the Purchase Price (as defined in the APA), including, without limitation, amounts received pursuant to Section 4.1(c) or Section 4.4 of the APA. AH Mortgage Acquisition Co., Inc. further agrees that the [Describe the Subservicing Agreement] shall provide that upon the assignment of [Describe the Subservicing Agreement] by American Home Mortgage Servicing, Inc. to AH Mortgage Acquisition Co., Inc. at the Final Closing Date, AH Mortgage Acquisition Co., Inc. shall assume all of American Home Mortgage Servicing, Inc. obligations and liabilities, whether arising prior to or after the Final Closing Date. Finally, AH Mortgage Acquisition Co., Inc. shall use commercially reasonable efforts to secure a release in favor of American Home Mortgage Servicing, Inc. of all claims arising out of or in connection with the [Describe the Subservicing Agreement], such release to be effective upon the assignment of [Describe the Subservicing Agreement] to AH Mortgage Acquisition Co., Inc.

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                                  : Chapter 11
                                                        :
AMERICAN HOME MORTGAGE                                   : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]       :
                                                        : Jointly Administered
        Debtors.                                        :
                                                        : **Ref. Docket No.**

------------------------------------------------------------ x

## ORDER AUTHORIZING THE DEBTORS TO FILE THE EMPLOYMENT AGREEMENT OF DAVID M. FRIEDMAN UNDER SEAL AS REQUESTED BY THE MOTION OF THE DEBTORS FOR ORDERS PURSUANT TO SECTIONS 105, 107(b), AND 363 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002 AND 9018 AUTHORIZING THE DEBTORS TO UNDERTAKE CERTAIN ACTIVITIES TO PREPARE FOR CONSUMMATION OF THE PREVIOUSLY-APPROVED SALE OF THEIR SERVICING BUSINESS

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession, pursuant to sections 105, 107(b) and 363 of the Bankruptcy Code and

Bankruptcy Rule 9018, seeking authorization for, among other relief, the Debtors to file the

Employment Agreement under seal; and the Court having determined that granting the relief

requested in the motion with respect to the filing the Employment Agreement under seal is

appropriate; and it appearing that due and adequate notice of the Motion has been given, and that

no other or further notice need be given; and after due deliberation and sufficient cause

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2]     All capitalized terms not otherwise defined herein have the meanings ascribed in the Motion.

appearing therefor;

**IT IS HEREBY ORDERED** that the Motion is granted with respect to the relief relating to filing the Employment Agreement under seal pursuant to section 107(b) of the Bankruptcy Code;

**IT IS FURTHER ORDER** that the Employment Agreement shall remain under seal, confidential and not be made available to anyone, except for the Court, the office of the U.S. Trustee, counsel to the Committee, counsel to the Administrative Agent, the Purchaser, counsel to the Purchaser, and counsel to the DIP Lenders, or others (i) at the discretion of the Debtors, provided the Purchaser consents, (ii) at the sole discretion of the Purchaser, upon the occurrence of the Final Closing, or (iii) upon further order of the Bankruptcy Court;

**IT IS FURTHER ORDERED** that the office of the U.S. Trustee, counsel to the Committee, counsel to the Administrative Agent, the Purchaser, counsel to the Purchaser, and counsel to the DIP Lenders, shall keep confidential the Employment Agreement, provided, however, that upon the occurrence of the Final Closing, the Purchaser in its sole discretion may make the Employment Agreement available to others; and

**IT IS FURTHER ORDERED** that this Court will retain jurisdiction regarding the interpretation, implement, or all matters related to this Order.

Dated: Wilmington, Delaware
      January ____, 2007

                                       _____
                                       Christopher S. Sontchi
                                       United States Bankruptcy Judge

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------- x
In re:                                    :  Chapter 11
                                          :
AMERICAN HOME MORTGAGE                    :  Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1] :
                                          :  Jointly Administered
        Debtors.                          :
                                          :  **Ref. Docket No.**
----------------------------------------------------------- x


**ORDER APPROVING MOTION OF THE DEBTORS FOR ORDERS PURSUANT TO
SECTIONS 105, 107(b), AND 363 OF THE BANKRUPTCY CODE, AND BANKRUPTCY
RULES 2002 AND 9018  AUTHORIZING THE DEBTORS TO UNDERTAKE CERTAIN
ACTIVITIES TO PREPARE FOR CONSUMMATION OF THE PREVIOUSLY-
APPROVED SALE OF THEIR SERVICING BUSINESS**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession, and upon consideration of the supporting papers and the files and records

in these cases, and upon the arguments and testimony presented at the hearing before the Court

(if any), and any objections to the Motion having been withdrawn or overruled on the merits, this

Court finds and concludes that: (a) the Court has jurisdiction over this matter pursuant to 28

U.S.C. § 157 and 1334; (b) this proceeding is a core proceeding pursuant to 28 U.S.C. §

157(b)(2); (c) venue of this proceeding and the Motion in this District is proper pursuant to 28

U.S.C. §§  1408 and 1409; (d) the legal and factual bases set forth in the Motion and at the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: American Home Mortgage Holdings, Inc., (6303); American Home Mortgage
Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland
corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American
Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware
limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and
Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent
Blvd., Suite 200, Irving, Texas 75063.

[2]     All capitalized terms not otherwise defined herein have the meanings ascribed in the Motion.

hearing (if any), establish just cause for the relief granted herein; (e) the Debtors have established good business justification for the relief sought in the Motion; (f) the terms and provisions of the Fourth Amendment, the Employment Agreement and the transactions authorized thereunder were entered into and made in good faith by all parties thereto; (g) the relief requested is in the best interest of the Debtors, their estates, and their creditors; (h) the Debtors' entry into the Fourth Amendment is consistent with, and authorized by, the Sale Order and the APA; and (i) reasonable and adequate notice of the Motion was provided, and no further or other notice is necessary.

Based upon the above findings and conclusions, and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that the Motion is granted;

**IT IS FURTHER ORDER** that where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact;

**IT IS FURTHER ORDERED** that the Sellers are authorized to create, incorporate, form, organize or otherwise bring into existence one or more Transition Entities in accordance with applicable state law.  Upon the existence of a Transition Entity, the Sellers' interest in such Transition Entity shall immediately become a Purchased Asset and be subject to the liens in favor of the Purchaser granted pursuant to the Sale Order, the APA (and related documents) and the order approving the Limited Recourse DIP;

**IT IS FURTHER ORDERED** that except for the claims and liens in favor of the Purchaser granted pursuant to the Sale Order, the APA (and related documents) or the order approving the Limited Recourse DIP, all interests of the Sellers in the Transition Entities shall not in any way be subject to any liens, claims, encumbrances, and interests;

**IT IS FURTHER ORDERED** that the Sellers are authorized to fund the Transition Entities, provided, however, the Sellers shall not fund the Transition Entities other than with funds that (a) have been transferred by the Purchaser to the Sellers as working capital pursuant to a non-recourse line of credit provided by the Purchaser or otherwise, or (b) have been generated by the operation of the Servicing Business, and are thereby subject to a lien held by the Purchaser;

**IT IS FURTHER ORDERED** that the Debtors shall not have any direct liability to counterparties to any Transition Entities Agreements;

**IT IS FURTHER ORDERED** that (a) the Sellers are authorized to enter into and perform all of their obligations under the Fourth Amendment, and that all such obligations shall constitute legal, valid and binding obligations of the Sellers enforceable in accordance with their respective terms and (b) the Sellers shall enter into the Fourth Amendment in substantially the form annexed to the Motion as Exhibit A;

**IT IS FURTHER ORDERED** that AHM Servicing is authorized to enter into and perform all of its obligations under the Employment Agreement, and that all such obligations shall constitute legal, valid and binding obligations of AHM Servicing enforceable in accordance with their respective terms;

**IT IS FURTHER ORDERED** that in the event that this Order is hereafter reversed, stayed, modified or vacated by a subsequent order of this Court or any other court of competent jurisdiction, such reversal, stay, modification or vacatur shall not impair, release or affect the validity of any rights granted to the parties to the Fourth Amendment or Employment Agreement hereunder or the validity of any transaction consummated pursuant to and in reliance

on the foregoing paragraphs of this Order prior to the effective date of such reversal, stay, modification or vacatur;

       **IT IS FURTHER ORDERED** that notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order;

       **IT IS FURTHER ORDERED** that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion;

       **IT IS FURTHER ORDERED** that this Court will retain jurisdiction regarding the interpretation, implement, or all matters related to this Order.

Dated: Wilmington, Delaware
      January _____, 2008

                             _____

                             Christopher S. Sontchi
                             United States Bankruptcy Judge