IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------- x
In re:                                                              :  Chapter 11
                                                                    :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                               :  Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                     :
                                                                    :  Jointly Administered
        Debtors.                                                    :
                                                                    :  **Objection Deadline: Jan. 3, 2008 at 12:00 p.m. (ET)**
                                                                    :  **Hearing Date:  Jan. 4, 2008 at 11:00 a.m. (ET)**
-------------------------------------------------------------------- x

## NOTICE OF MOTION

TO:        (I) THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE;
           (II) THE CREDITORS' COMMITTEE; (III) COUNSEL TO BANK OF
           AMERICA, N.A., AS ADMINISTRATIVE AGENT FOR CERTAIN LENDERS
           UNDER THAT CERTAIN SECOND AMENDED AND RESTATED CREDIT
           AGREEMENT DATED AS OF AUGUST 10, 2006; (IV) COUNSEL TO THE
           AGENT FOR THE DEBTORS' POSTPETITION LENDER; AND (V) ALL
           PARTIES ENTITLED TO NOTICE UNDER DEL. BANKR. L.R. 2002-1(B).

        The above-captioned debtors and debtors-in-possession (the "Debtors") have filed
the **DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 9019 APPROVING AND AUTHORIZING
STIPULATION BETWEEN THE DEBTORS AND BANK OF AMERICA, N.A., AS
ADMINISTRATIVE AGENT, RESOLVING MOTION FOR RELIEF FROM STAY WITH
RESPECT TO CERTAIN CONSTRUCTION-TO-PERM MORTGAGE LOANS** (the
"Motion").

        The Debtors have requested that responses to the Motion, if any, be filed on or
before **January 3, 2008 at 12:00 p.m. (ET)** (the "Objection Deadline") with the United States
Bankruptcy Court for the District of Delaware, 3rd Floor, 824 N. Market Street, Wilmington,
Delaware 19801. At the same time, you must also serve a copy of the response upon the
undersigned counsel to the Debtors so that the response is received on or before the Objection
Deadline.

        THE DEBTORS HAVE REQUESTED THAT A HEARING ON THE MOTION
BE HELD ON **JANUARY 4, 2008 AT 11:00 A.M. (ET)** BEFORE THE HONORABLE
CHRISTOPHER S. SONTCHI, UNITED STATES BANKRUPTCY COURT, 6th FLOOR, 824
N. MARKET STREET, WILMINGTON, DELAWARE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated:    Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
          December 27, 2007

          James L. Patton, Jr. (No. 2202)
          Joel A. Waite (No. 2925)
          Pauline K. Morgan (No. 3650)
          Matthew B. Lunn (No. 4119)
          Patrick A. Jackson (No. 4976)
          The Brandywine Building
          1000 West Street, 17th Floor
          Wilmington, Delaware 19801
          Telephone: (302) 571-6600
          Facsimile: (302) 571-1253

          Counsel for Debtors and
          Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                                   :    Chapter 11
                                                         :
AMERICAN HOME MORTGAGE                                    :    Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                           :
a Delaware corporation, et al.,                          :    Jointly Administered
                                                         :
          Debtors.                                       :    **Objection Deadline: January 3, 2008 at 12:00 p.m. (ET)**
                                                         :    **Hearing Date: January 4, 2008 at 11:00 a.m. (ET)**
------------------------------------------------------------ x

**DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING AND AUTHORIZING STIPULATION BETWEEN THE DEBTORS AND BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT, RESOLVING MOTION FOR RELIEF FROM STAY WITH RESPECT TO CERTAIN CONSTRUCTION-TO-PERM MORTGAGE LOANS**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] by this motion

(the "Motion"), seek approval, pursuant to section 105(a) of Title 11 of the United States Code,

11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), of the Stipulation and Order by and Between

the Debtors and Bank of America, N.A., as Administrative Agent, Resolving Motion for Relief

from Stay with Respect to Construction-to-Perm Mortgage Loans (the "Stipulation and Order"),

a copy of which in substantially final form is attached hereto as Exhibit A.[2]  In support of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] An executed copy of the Stipulation and Order will be filed prior to the hearing on the Motion.

Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed The Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS

5.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans.  AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors.  AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles.  Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate-A quality.

6.      As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7.      In July of 2004, AHM assembled a team of experienced construction lending and mortgage banking professionals to establish a residential construction-to-permanent mortgage loan business. AHM's construction loan business (the "Construction Loan Business") was a full-service construction and renovation lending operation, beginning from the point of closing on the construction loan through draw administration and to a final permanent mortgage loan. In the first full year of originating construction-to-permanent mortgage loans (the "Construction-to-Perm Loans"), annual closing volume for the Construction Loan Business was approximately $113 million, which was followed by approximately $300 million in the second year. Through July 31, 2007, the Construction-to-Perm Loan closing volume was approximately $201 million.

8.      AHM financed the Construction Loan Business primarily using short-term credit facilities (the "Warehouse Facilities") from third-party lenders and lender syndicates (collectively with their respective Administrative Agents, the "Warehouse Lenders"). AHM generally funded a portion of each required advance under a Construction-to-Perm Loan using its

own funds, and financed the remainder of each advance by drawing on the respective Warehouse Facility.

## EVENTS LEADING TO THE CHAPTER 11 FILING

9.      Beginning in late 2006, and continuing through 2007, the credit markets became concerned over the quality of subprime mortgages and, specifically, the increasing default rates on such mortgages.  These concerns became exacerbated by the failure of two major hedge funds with concentrated investments in subprime loans.

10.     The concern in the credit markets has spread beyond the subprime market and has been reflected in the widening of the spread between the rate of interest on U.S. Treasury issued securities and general corporate debt securities.  The surge in mortgage delinquencies for subprime home loans also generated anxiety in the market about borrowers with adjustable rate mortgages scheduled to reset with higher rates in 2007 and 2008.

11.     In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of AHM's loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to AHM's loans.  During this time, certain of the Warehouse Lenders began to exercise remedies against AHM, thereby restricting its ability to originate loans and threatening its continued viability.

12.     On July 27, 2007, AHM Investment announced that its Board of Directors had decided to delay payment of its quarterly cash dividend on the company's common stock and anticipated delaying payment of its quarterly cash dividends on its preferred stock to preserve liquidity.

13.     AHM's inability to originate loans and the exercise of remedies by certain Warehouse Lenders created a severe liquidity crisis and forced AHM to discontinue its retail and indirect loan origination business.  As a result, on August 3, 2007, AHM implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

14.     In the wake of these events, AHM, assisted by counsel and professional advisors, sought alternative funding sources and capital infusions.  Additionally, AHM engaged in efforts to sell its businesses and assets (including, but not limited to, loans owned by AHM, residual securities in securitization trusts, and "scratch and dent" loans) to financial and strategic investors.

15.     Unfortunately, in the short time available and given the severe financial pressures facing it, AHM was unsuccessful in its efforts to resolve its liquidity crisis outside the bankruptcy forum and, accordingly, filed for chapter 11 protection to preserve and maximize the value of its business through orderly sales of its assets.

## RELEVANT BACKGROUND

16.     Prior to the Petition Date and pursuant to that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 (as amended and restated and together with all agreements, documents, notes and instruments delivered pursuant thereto or in connection therewith, the "Loan Agreement") by and between certain of the Debtors (the "Borrowers and Guarantors")[3] and Bank of America, N.A., as administrative agent (the "Administrative Agent") for itself and certain other banking and financial institutions as prepetition secured lenders (the "Prepetition Secured Parties"), the Prepetition Secured Parties

---

[3]     The Borrowers are AHM Investment, AHM Acceptance, AHM Servicing, and AHM Corp.  Additionally, AHM Holdings and AHM Investment are guarantors under the Loan Agreement.

made various loans, advances and extensions of credit to or for the benefit of the Borrowers. As set forth in the Cash Collateral Orders (as hereafter defined) and subject to the rights of the Committee as provided therein, the Debtors admitted that as of the Petition Date the Borrowers and Guarantors were justly and lawfully indebted to the Prepetition Secured Parties in the aggregate principal amount of approximately $1,104,550,000 in respect of loans and other advances made, together with accrued and unpaid interest and costs and expenses including, without limitation, attorneys' fees, agent's fees, other professional fees and disbursements and all other obligations owing under the Loan Agreements (collectively, the "Indebtedness").

17.     As set forth in the Cash Collateral Orders (as hereafter defined) and subject to the rights of the Committee as provided therein, the Debtors admitted that to secure the Indebtedness, pursuant to a certain Security and Collateral Agency Agreement dated as of August 30, 2004 (as heretofore amended, restated, modified, ratified or supplemented from time to time, the "Security Agreement"), they granted valid, perfected, enforceable, first priority liens upon and security interests to the Administrative Agent (for the ratable benefit of the Prepetition Secured Parties) in the property described in the Security Agreement (together with any other property in or upon which the Administrative Agent holds a lien upon or security interest in, the "Collateral"), including the BofA Construction-to-Perm Loans (as hereafter defined).

18.     On the Petition Date, the Debtors sought authority to use cash upon which the Administrative Agent, for the ratable benefit of itself and the Prepetition Secured Parties, held security interests and liens (the "Cash Collateral") through filing the Motion of the Debtors Pursuant to Sections 105(a), 361, 362, 363, 364, and 552 of the Bankruptcy Code and Bankruptcy Rule 4001(b) for Entry of Interim and Final Orders (A) Authorizing Limited Use of Cash Collateral in Connection with Operating the Servicing Business; (B) Granting Adequate

Protection; and (C) Scheduling a Final Hearing on the Motion [D.I. 16] (the "Cash Collateral Motion"). On August 7, 2007, the Court entered an interim order [D.I. 68] approving the relief requested by the Cash Collateral Motion on an interim basis. On September 4, 2007, the Court entered a final order [D.I. 554] (the "Final Order") approving the relief requested by the Cash Collateral Motion on a final basis. Pursuant to the Final Order, the Court authorized the Debtors to use Cash Collateral on a limited basis in accordance with the budget attached to the Final Order through October 31, 2007.

19.     On October 31, 2007, the Court approved the First Interim Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [D.I. 1731], which extended the Debtors' use of Cash Collateral, on an interim basis, through November 16, 2007. By the First Final Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties, which was approved by the Court on November 14, 2007 [D.I. 2002] (together with the Final Order, the "Cash Collateral Orders"), the Debtors' authorized use of Cash Collateral was extended from October 31, 2007 through November 16, 2007 on a final basis.

20.     On September 21, 2007, the Debtors filed a motion requesting approval of sale procedures and the authority to sell the Construction Loan Business free and clear of all liens, claims, encumbrances and other interests. On October 4, 2007, the Court entered an order [D.I. 1175] (i) approving sale procedures with respect to the sale of the Construction Loan Business, (ii) scheduling a hearing on the sale (the "Sale Hearing") and setting objection and

bidding deadlines (the "Bid Deadline") with respect to the sale, and (iii) approving the form and manner of notice of an auction (the "Auction") and the Sale Hearing. However, despite the Debtors' efforts to market the Construction Loan Business, the Debtors did not receive an acceptable bid on or before the Bid Deadline. The Auction was therefore canceled, and the Sale Hearing was adjourned so that the Debtors could continue their marketing efforts with respect to the Construction Loan Business.

21.    The Debtors subsequently received a proposal from a potential purchaser (the "Potential Purchaser") to purchase the Construction-to-Perm Loans in which the Administrative Agent held security interests and liens (the "BofA Construction-to-Perm Loans"). The Debtors, however, determined not to proceed with a sale of the BofA Construction-to-Perm Loans to the Potential Purchaser.

22.    On December 4, 2007, the Administrative Agent filed a motion [D.I. 2255] (the "Stay Relief Motion") requesting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow the Administrative Agent to sell the BofA Construction-to-Perm Loans to the Potential Purchaser. The BofA Construction-to-Perm Loans are specifically identified on Exhibit A annexed to the Stipulation and Order. In the Stay Relief Motion, the Administrative Agent asserted that the amounts outstanding under the BofA Construction-to-Perm Loans as of the date thereof was $30,478,019.73.

23.    The Debtors dispute the allegations raised and the relief requested in the Stay Relief Motion. The Debtors believe that they can obtain greater value for the BofA Construction-to-Perm Loans than the value estimated to be realized from the sale to the Potential Purchaser proposed by the Administrative Agent in the Motion.

24.    Certain of the Debtors and WLR Recovery Fund, III, L.P., as administrative agent for the lenders (the "DIP Lenders") pursuant to that certain Debtor-in-Possession Loan and Security Agreement, dated as of August 6, 2007 (together with any and all exhibits and schedules annexed thereto, and as may be modified or amended from time-to-time, the "DIP Facility") have agreed to amend the DIP Facility to, among other things, consent to the Debtors' use of their cash, on which the DIP Lenders have a lien, to pay the Administrative Agent the Payment Amount (as hereafter defined) (the "First DIP Facility Amendment"). Contemporaneously with the filing of this Motion, the Debtors will file a motion seeking approval of the First DIP Facility Amendment.

25.    The Debtors and the Administrative Agent (collectively, the "Parties") have engaged in arm's-length, good-faith negotiations and have reached an agreement, embodied in the Stipulation and Order, with respect to the relief requested in the Stay Relief Motion.

26.    The Committee has reviewed and consented to the terms of the Stipulation and Order.

## STIPULATION AND ORDER[4]

27.    Pursuant to the Stipulation and Order, which is expressly conditioned on Court approval of the First DIP Facility Amendment, the Debtors will essentially "purchase" the BofA Construction-to-Perm Loans free of the liens of the Pre-Petition Secured Parties by paying the Administrative Agent the Payment Amount (as hereafter defined) from (i) proceeds from the payoff, refinancings, or pay-downs of BofA Construction-to-Perm Loans and (ii) to the extent necessary, the DIP Lenders' cash collateral as provided by the First DIP Facility Amendment.

---

[4] All terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Order.

Upon tender of the Payment Amount, which shall be applied to the outstanding principal balance of the Indebtedness, the Administrative Agent's liens in the BofA Construction-to-Perm Loans shall be deemed released, and the Stay Relief Motion shall be deemed withdrawn with prejudice.

28. The principal terms of the Stipulation and Order are set forth below:[5]

i. Within one business day following (i) approval of the Stipulation and Order and (ii) entry of an Order approving the First DIP Facility Amendment by the Court (the "Payment Date"), the Debtors shall pay to the Administrative Agent an amount (the "Payment Amount") equal to $9,143,406, less all amounts actually received by the Administrative Agent from the Debtors on account of the BofA Construction-to-Perm Loans from November 28, 2007 to the Payment Date (the "Paid Sums"), including, without limitation, payoffs, refinancing, or pay-downs of the BofA Construction-to-Perm Loans. The Payment Amount shall be made from funds other than funds which constitute Collateral or the proceeds of Collateral. The Payment Amount shall be by wire transfer of immediately available funds to an account, which shall be designated by the Administrative Agent in writing on or before January 4, 2008.

ii. Until the Payment Date, the Debtors shall continue to make all payments to the Administrative Agent that are required by and in accordance with the Cash Collateral Orders in respect of the BofA Construction-to-Perm Loans.

iii. The Payment Amount shall be applied by the Administrative Agent in permanent reduction of the outstanding principal balance of the Indebtedness.

iv. Upon receipt of the Payment Amount and the Paid Sums, the Administrative Agent's security interest in and lien upon the BofA Construction-to-Perm Loans, the servicing rights associated therewith and the proceeds thereof (other than the Paid Sums), shall be deemed and hereby are released. The Administrative Agent shall take any and all actions reasonably necessary to effectuate the release of such Liens, effective as of the Debtors' payment of the Payment Amount, provided, however, that any actual and necessary out-of-pocket costs incurred in taking such actions shall be borne by the Debtors.

---

[5] The terms of the Stipulation and Order set forth herein are a summary only. To the extent of any inconsistency between the summary herein and the Stipulation and Order, the terms of the Stipulation and Order shall govern.

v.    Upon payment of the Payment Amount and the Paid Sums in accordance with the terms of the Stipulation and Order, the Stay Relief Motion shall be deemed withdrawn with prejudice, and the Administrative Agent shall promptly file a notice of withdrawal of the Stay Relief Motion with prejudice.

vi.   The Debtors shall take all necessary steps to obtain Court approval of the Stipulation and Order at the hearing on the Stay Relief Motion currently scheduled for January 4, 2008, or at the earliest subsequent hearing date as permitted by the Court. The Stipulation and Order shall be effective only upon (i) entry by the Court of the Stipulation and Order and (ii) entry of an Order by the Court approving the First DIP Facility Amendment. In the event that the Court does not enter the Stipulation and Order or approve the First DIP Facility Amendment, the terms of the Stipulation and Order shall be of no force or effect.

## RELIEF REQUESTED AND BASIS THEREFOR

29.    By this Motion, the Debtors are seeking approval and entry of the Stipulation and Order pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a). The Debtors have weighed the costs, risks and disruption that would arise from a contested stay relief hearing concerning the BofA Construction-to-Perm Loans against the compromises contained within the Stipulation and Order. In the Debtors' judgment, the Stipulation and Order is fair and reasonable and serves the best interests of the Debtors, their estates and creditors because, among other reasons, it will result in the release of liens encumbering approximately $30 million in unpaid principal balance of Construction-to-Perm Loans in exchange for payment of only $9.3 million—over $4 million of which has already been paid to the Administrative Agent as a result of borrower refinancings.

## STANDARDS FOR SETTLEMENTS

30.    Rule 9019 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The settlement of time-consuming and

burdensome litigation, especially in the bankruptcy context, is encouraged. <u>In re Penn Cent.</u>

<u>Transp. Co.</u>, 596 F.2d 1002 (3d Cir. 1979).  The Supreme Court has recognized that "in

administering a reorganization proceeding in an economical and practical manner, it will often be

wise to arrange the settlement of claims in which there are substantial and reasonable doubts."

<u>In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson</u>, 390 U.S. 414

(1986).

      31.     Approval of a proposed settlement is within the "sound discretion" of the

Court.  <u>In re Neshaminy Office Bldg. Assocs.</u>, 62 B.R. 798, 803 Bankr. E.D. Pa. 1986).  The

Court must determine whether the proposed settlement is in the "best interests of the estate."  <u>See</u>

<u>In the Matter of Energy Cooperative, Inc.</u>, 886 F.2d 921, 927 (7th Cir. 1989).  In determining

whether to approve an motion to settle a controversy, the Court must determine whether it is fair,

reasonable and adequate by examining four factors:

> (a) the probability of success in the litigation; (b) the difficulties, if
> any, to be encountered in the matter of collection: (c) the
> complexity of the litigation involved, and the expense,
> inconvenience and delay necessarily attending it; and (d) the
> paramount interest of the creditors and a proper deference to their
> reasonable views in the premises.

<u>Official Comm. of Unsec. Cred. Of Penn. Truck Lines, Inc., v. Penn Truck Lines, Inc. (In re</u>

<u>Penn Truck Lines, Inc.)</u>, 150 B.R. 595, 598 (Bankr. E.D. Pa. 1992).  The Court should not

substitute its judgment for that of the Debtors.  <u>Neshaminy Office Building Associates</u>, 62 B.R.

at 803.  Nor should the Court decide the numerous questions of law or fact raised by the

litigation at issue; rather, the Court should canvass the issues to see whether the settlement falls

within the range of reasonableness.  <u>In re W.T. Grant & Co.</u>, 699 F.2d 599, 608 (2d Cir. 1983),

<u>cert</u>. <u>denied</u>, 464 U.S. 22 (1983).  In addition, "because the bankruptcy judge is unequally

situated to consider the equities and reasonableness of a particular compromise, approval or

denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion."
Neshaminy Office Bldg. Assocs., 62 B.R. at 803 (citing In re Patel, 43 B.R. 500, 505 (Bankr.
N.D. Ill. 1984)).

32.    The Stipulation and Order is in the best interest of the Debtors, their
estates and creditors, because, among other reasons, it gives the Debtors the opportunity to
explore non-sale alternatives to liquidating the BofA Construction-to-Perm Loans such as,
without limitation, working with borrowers and third-party lenders to facilitate refinancing of
such loans. The Debtors and their financial advisors have determined that a non-sale alternative
will likely generate more value for the bankruptcy estates than a sale to the Potential Purchaser
would have. Indeed, during the pendency of this dispute several Construction-to-Perm Loans
have refinanced, resulting in more than $4 million in proceeds that will serve to reduce the
Payment Amount. The Debtors believe that proceeds of future refinancings will more than
exceed approximately $5 million remaining Payment Amount, resulting in the realization of
significant value for the Debtors' estates and creditors.

33.    Moreover, by agreeing to the terms of the Stipulation and Order, the
Debtors are able to avoid the commencement of yet another costly and contentious dispute in
these chapter 11 cases. The resolution of this dispute with the Administrative Agent without the
need for litigation is a favorable outcome because it will preserve estate resources by avoiding
administrative expenses that would otherwise have been incurred to preserve the Debtors' right
to dispose of the BofA Construction-to-Perm Loans at the time and in the manner they see fit.

## NOTICE

34.    Notice of this Motion will be provided to (i) the United States Trustee for
the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Administrative Agent;

(iv) Counsel to the administrative agent for the DIP Lenders; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

### NO PREVIOUS REQUEST

35.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court approve and enter the Stipulation and Order, and grant such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware
          December 27, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and
Debtors in Possession

## EXHIBIT A

### STIPULATION AND ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                                      :    Chapter 11
                                                            :
AMERICAN HOME MORTGAGE                                      :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,            :
                                                            :    Jointly Administered
         Debtors.                                           :
                                                            :    Docket Ref. No. 2255
------------------------------------------------------------ x
```

**STIPULATION AND ORDER BY AND BETWEEN THE DEBTORS
AND BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT,
RESOLVING MOTION FOR RELIEF FROM STAY WITH RESPECT TO
CONSTRUCTION-TO-PERM MORTGAGE LOANS**

American Home Mortgage Holdings, Inc., and certain of its direct and indirect

affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively,

the "Debtors"),[1] and Bank of America, N.A., as administrative agent (the "Administrative

Agent") for itself and certain other banking and financial institutions as prepetition secured

lenders (the "Prepetition Secured Parties") under that certain Second Amended and Restated

Credit Agreement dated as of August 10, 2006, hereby stipulate and agree pursuant to this

Stipulation and Order (the "Stipulation and Order") as follows:

**WHEREAS:**

A.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with

the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a
Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979);
American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home
Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited
liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak
Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road,

petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Prior to the Petition Date and pursuant to that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006 (as amended and restated and together with all agreements, documents, notes and instruments delivered pursuant thereto or in connection therewith, the "Loan Agreement") by and between certain of the Debtors (the "Borrowers and Guarantors")[2] and the Prepetition Secured Parties, the Prepetition Secured Parties made various loans, advances and extensions of credit to or for the benefit of the Borrowers. As set forth in the Cash Collateral Orders (as hereafter defined) and subject to the rights of the Committee (as hereafter defined) as provided therein, the Debtors admitted that as of the Petition Date the Borrowers and Guarantors were justly and lawfully indebted to the Prepetition Secured Parties in the aggregate principal amount of approximately $1,104,550,000 in respect of loans and other advances made, together with accrued and unpaid interest and costs and expenses including, without limitation, attorneys' fees, agent's fees, other professional fees and disbursements and all other obligations owing under the Loan Agreements (collectively, the "Indebtedness").

C.    As set forth in the Cash Collateral Orders and subject to the rights of the Committee as provided therein, the Debtors admitted that to secure the Indebtedness, pursuant to

---

Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2]    The Borrowers are American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc., American Home Mortgage Servicing, Inc. and American Home Mortgage Corp. Additionally, American Home Mortgage Holdings Inc. and American Home Mortgage Investment Corp. are guarantors under the Loan Agreement.

2

a certain Security and Collateral Agency Agreement dated as of August 30, 2004 (as heretofore amended, restated, modified, ratified or supplemented from time to time, the "Security Agreement"), they granted valid, perfected, enforceable, first priority liens upon and security interests to the Administrative Agent (for the ratable benefit of the Prepetition Secured Parties) in the property described in the Security Agreement (together with any other property in or upon which the Administrative Agent holds a lien upon or security interest in, the "Collateral"), including the BofA Construction-to-Perm Loans (as hereafter defined).

      D.      On the Petition Date, the Debtors sought authority to use cash upon which the Administrative Agent, for the ratable benefit of itself and the Prepetition Secured Parties, held security interests and liens (the "Cash Collateral") through filing the *Motion of the Debtors Pursuant to Sections 105(a), 361, 362, 363, 364, and 552 of the Bankruptcy Code and Bankruptcy Rule 4001(b) for Entry of Interim and Final Orders (A) Authorizing Limited Use of Cash Collateral in Connection with Operating the Servicing Business; (B) Granting Adequate Protection; and (C) Scheduling a Final Hearing on the Motion* [D.I. 16] (the "Cash Collateral Motion"). On August 7, 2007, the Court entered an interim order [D.I. 68] approving the relief requested by the Cash Collateral Motion on an interim basis. On September 4, 2007, the Court entered a final order [D.I. 554] (the "Final Order") approving the relief requested by the Cash Collateral Motion on a final basis. Pursuant to the Final Order, the Court authorized the Debtors to use Cash Collateral on a limited basis in accordance with the budget attached to the Final Order through October 31, 2007.

      E.      On October 31, 2007, the Court approved the *First Interim Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate*

*Protection to Certain Pre-Petition Secured Parties* [D.I. 1731], which extended the Debtors' use of Cash Collateral, on an interim basis, through November 16, 2007. By the *First Final Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties*, which was approved by the Court on November 14, 2007 [D.I. 2002], the Debtors' authorized use of Cash Collateral was extended from October 31, 2007 through November 16, 2007 on a final basis (together with the Final Order, the "Cash Collateral Orders").

F.      On September 21, 2007, the Debtors filed a motion requesting approval of sale procedures and the authority to sell construction-to-perm loans and related servicing rights and the construction loan platform related to the Debtors' construction loan business free and clear of all liens, claims, encumbrances and other interests. On October 4, 2007, the Court entered an order [D.I. 1175] (i) approving sale procedures with respect to the sale of the construction-to-perm loans and the construction loan platform, (ii) scheduling a hearing on the sale (the "Sale Hearing") and setting objection and bidding deadlines (the "Bid Deadline") with respect to the sale, and (iii) approving the form and manner of notice of an auction (the "Auction") and the Sale Hearing. However, despite the Debtors' efforts to market the construction-to-perm loans and construction loan platform, the Debtors did not receive an acceptable bid on or before the Bid Deadline. The Auction was therefore canceled, and the Sale Hearing was adjourned so that the Debtors could continue their marketing efforts with respect to the construction loans and construction loan platform.

G.      The Debtors subsequently received a proposal from a potential purchaser (the "Potential Purchaser") to purchase the BofA Construction-to-Perm Loans. The Debtors,

however, determined not to proceed with a sale of the BofA Construction-to-Perm Loans to the Potential Purchaser.

      H.     On December 4, 2007, the Administrative Agent filed a motion [D.I. 2255] (the "Motion") requesting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow the Administrative Agent to sell the construction-to-perm loans in which the Administrative Agent held security interests and liens (the "BofA Construction-to-Perm Loans") to the Potential Purchaser. The BofA Construction-to-Perm Loans are specifically identified on Exhibit A annexed hereto.

      I.     The Debtors dispute the allegations raised and the relief requested in the Motion. The Debtors believe that they can obtain greater value for the BofA Construction-to-Perm Loans than the value estimated to be realized from the sale to the Potential Purchaser proposed by the Administrative Agent in the Motion.

      J.     Certain of the Debtors and WLR Recovery Fund, III, L.P., as administrative agent for the lenders (the "DIP Lenders") pursuant to that certain *Debtor-in-Possession Loan and Security Agreement*, dated as of August 6, 2007 (together with any and all exhibits and schedules annexed thereto, and as may be modified or amended from time-to-time, the "DIP Facility") have agreed to amend the DIP Facility to, among other things, consent to the Debtors' use of their cash, on which the DIP Lenders have a lien, to pay the Administrative Agent the Payment Amount (as defined below) (the "First DIP Facility Amendment").

      K.     The Debtors and the Administrative Agent (collectively, the "Parties") have engaged in arm's length, good faith negotiations and have reached an agreement with respect to the relief requested in the Motion.

              

L.      The Official Committee of Unsecured Creditors (the "Committee") has reviewed and consented to the terms of this Stipulation and Order.

**NOW, THEREFORE,** the parties hereto hereby stipulate and agree as follows:

1.      Within one business day following (i) approval of this Stipulation and Order and (ii) entry of an Order approving the First DIP Facility Amendment by the Court (the "Payment Date"), the Debtors shall pay to the Administrative Agent an amount (the "Payment Amount") equal to $9,143,406, less all amounts actually received by the Administrative Agent from the Debtors on account of the BofA Construction-to-Perm Loans from November 28, 2007 to the Payment Date (the "Paid Sums"), including, without limitation, payoffs, refinancing, or pay-downs of the BofA Construction-to-Perm Loans.[3] The Payment Amount shall be made from funds other than funds which constitute Collateral or the proceeds of Collateral.  The Payment Amount shall be by wire transfer of immediately available funds to an account, which shall be designated by the Administrative Agent in writing on or before January 4, 2008.

2.      Until the Payment Date, the Debtors shall continue to make all payments to the Administrative Agent that are required by and in accordance with the Cash Collateral Orders in respect of the BofA Construction-to-Perm Loans.

3.      The Payment Amount shall be applied by the Administrative Agent in permanent reduction of the outstanding principal balance of the Indebtedness.

4.      Upon receipt of the Payment Amount and the Paid Sums, the Administrative Agent's security interest in and lien upon the BofA Construction-to-Perm Loans, the servicing rights associated therewith and the proceeds thereof (other than the Paid Sums), shall be deemed and hereby are released.  The Administrative Agent shall take any and all

---

[3]      As of the date of this Stipulation and Order, the Paid Sums were in the amount of $4,178,134.47, which amount may increase between the date of this Stipulation and Order and the Payment Date.

DB02:6435190.11                                                                                          066585.1001

actions reasonably necessary to effectuate the release of such Liens, effective as of the Debtors' payment of the Payment Amount, provided, however, that any actual and necessary out-of-pocket costs incurred in taking such actions shall be borne by the Debtors.

5.    Upon payment of the Payment Amount and the Paid Sums in accordance with the terms of this Stipulation and Order, the Motion shall be deemed withdrawn with prejudice, and the Administrative Agent shall promptly file a notice of withdrawal of the Motion with prejudice.

6.    The Debtors shall take all necessary steps to obtain Court approval of this Stipulation and Order at the hearing on the Motion currently scheduled for January 4, 2008, or at the earliest subsequent hearing date as permitted by the Court. This Stipulation and Order shall be effective only upon (i) entry by the Court of the Stipulation and Order and (ii) entry of an Order by the Court approving the First DIP Facility Amendment. In the event that the Court does not enter this Stipulation and Order or approve the First DIP Facility Amendment, the terms hereof shall be of no force or effect.

7.    The Court shall retain exclusive jurisdiction to interpret, enforce, and resolve any disputes arising under or related to this Stipulation and Order. Any motion or application brought before the Court to resolve any dispute arising under or related to this Stipulation and Order shall be brought on proper notice in accordance with the relevant Federal Rules of Bankruptcy Procedure and the Local Rules of the Court.

8.    This Stipulation and Order may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signature transmitted by facsimile shall be deemed an original signature for purposes of this Stipulation and Order.

7

9.      This Stipulation and Order shall constitute the entire agreement between the Parties with respect to the subject matter hereof and shall supersede any previous negotiations, commitments, writings, orders or judgments with respect to such subject matter, and no provision of this Stipulation and Order may be changed except by a written instrument executed by the Parties and approved by the Court.

10.     Nothing contained in this Stipulation and Order shall affect the Administrative Agent's and the Prepetition Secured Lenders' rights and remedies regarding any other assets of the Debtors, other than the BofA Construction-to-Perm Loans, that constitute Collateral and/or the Administrative Agent's and the Prepetition Secured Lenders' rights and remedies under the Loan Agreement, the Security Agreement and the Cash Collateral Orders or any other agreements among the Administrative Agent, the Prepetition Secured Lenders and the Debtors, and applicable law.

11.     Nothing contained in this Stipulation and Order shall affect the Debtors' rights and defenses regarding any other assets of the Debtors, other than the BofA Construction-to-Perm Loans, that constitute Collateral and/or the Debtors' rights and remedies under the Loan Agreement, the Security Agreement and the Cash Collateral Orders or any other agreements among the Administrative Agent, the Prepetition Secured Lenders and the Debtors, and applicable law.

12.     The parties hereto consent to the exclusive jurisdiction of the Court for all matters concerning this Stipulation and Order to the fullest extent that the Court has jurisdiction under 28 U.S.C. § 1334.

DB02:6435190.11                                                                 066585.1001

13.     It is acknowledged that each Party has participated in and jointly consented to the drafting of this Stipulation and Order and that any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

Dated: December __, 2007
          Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

POTTER ANDERSON & CORROON LLP

_____
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
M. Blake Cleary (No. 3614)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for Debtors and
Debtors in Possession*

_____
Laurie Selber Silverstein (No. 2396)
P. O. Box 951
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19899
Telephone: (302) 984-6000

-and-

KAYE SCHOLER LLP
Margot B. Schonholtz
Mark F. Liscio
Scott D. Talmadge
425 Park Avenue
New York, NY 10022
Telephone (212) 836-8000
Facsimile (212) 836-8689

*Counsel for Bank of America, N.A. as
Administrative Agent under that
certain Second Amended and Restated
Credit Agreement, dated as of August 10, 2006*

**CONSENTED TO BY THE COMMITTEE:**

BLANK ROME LLP

_____
Bonnie Glantz Fatell (No. 3809)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200

**SO ORDERED**
this __ day of January, 2008


_____

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

# EXHIBIT A

| Loan Number |
| --- |
| 679767 |
| 1098320 |
| 1151532 |
| 1151710 |
| 1151753 |
| 1151879 |
| 1151887 |
| 1151895 |
| 1151905 |
| 1152233 |
| 1156284 |
| 1176729 |
| 1176731 |
| 1176732 |
| 1385671 |
| 1388624 |
| 1407699 |
| 1430145 |
| 1475588 |
| 1488304 |
| 1495170 |
| 1501378 |
| 1501592 |
| 1525179 |
| 1564905 |
| 1579688 |
| 1588786 |
| 1589092 |
| 1596679 |
| 1599023 |
| 1603410 |
| 1617811 |
| 1639373 |
| 1656197 |
| 1669615 |
| 1683522 |
| 1694352 |
| 1701457 |
| 1702185 |
| 1704047 |
| 1708076 |
| 1710576 |
| 1710661 |
| 1719340 |
| 1723672 |
| 1727186 |
| 1730074 |
| 1731062 |
| 1741368 |
| 1741510 |
| 1743804 |
| 1752139 |
| 1753632 |
| 1756053 |
| 1756218 |
| 1760589 |
| 1761431 |
| 1761975 |

| Loan Number |
| --- |
| 1769743 |
| 1771030 |
| 1774054 |
| 1775187 |
| 1777697 |
| 1780785 |
| 1786522 |
| 1787576 |
| 1790334 |
| 1792393 |
| 1793888 |
| 1794900 |
| 1795876 |
| 1796854 |
| 1796945 |
| 1801887 |
| 1804670 |
| 1807254 |
| 1809134 |
| 1809521 |
| 1812582 |
| 1815731 |
| 1816070 |
| 1817849 |
| 1822300 |
| 1829059 |
| 1833529 |