IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br><br>Objection Deadline: December 28, 2007 at 4:00 p.m.<br>Hearing Date: January 4, 2008 at 11:00 a.m.<br><br>Re: Docket No. 2416 |

## GMAC MORTGAGE LLC'S RESPONSE TO MOTION OF ASSURED GUARANTY CORP. FOR RELIEF FROM THE AUTOMATIC STAY

GMAC Mortgage LLC ("GMACM"), by and through its undersigned counsel, hereby submits its Response ("Response") to the Motion of Assured Guaranty Corp. for Relief from the Automatic Stay (D.I. 2416) (the "Motion")[1], and in support hereof states as follows:

1. GMACM is the back-up servicer (the "Back-Up Servicer") with respect to a securitized portfolio of home equity line of credit mortgage loans known as the Series 2007-A HELOC loan portfolio (the "2007-A HELOCs") pursuant to the HELOC Back-Up Servicing Agreement dated March 13, 2007 among GMACM, as Back-Up Servicer, American Home Mortgage Investment Trust 2007-A, as Issuing Entity, and Deutsche Bank National Trust Company, as Indenture Trustee (the "Back-Up Servicing Agreement") and the HELOC Servicing Agreement dated March 13, 2007 among GMACM, as Back-Up Servicer, American Home Mortgage Servicing, Inc. ("AHM Servicing"), as HELOC Servicer, American Home Mortgage Investment Trust 2007-A, as Issuing Entity, Deutsche Bank National Trust Company, as Indenture Trustee, and American Home Mortgage Acceptance, Inc. ("AHMA"), as Sponsor (the "Servicing Agreement").

---

[1] Any capitalized term used in this Response without definition shall have the definition contained in the Motion.

2. The HELOCs were issued by one or more of the Debtors and thereafter sold to the Trust pursuant to various documents and agreements, including the Mortgage Loan Purchase Agreement between American Home Mortgage Securities LLC, as Purchaser, and AHMA, as Sponsor (the "MLPA"), some of which are attached as exhibits to the Motion (respectively referred to as "HELOC Documents").

3. Pursuant to the MLPA, AHMA sold to the Trust and the Trust acquired and currently owns the HELOCs and the Additional Balances (as that term is defined in the HELOC Documents) under the HELOCs. See MLPA at Section 2.1(a).

4. Although the Trust acquired the HELOCs, AHMA retained, and the Trust did not assume, any obligation under any HELOC to fund any future draw requests by borrowers under the HELOCs (collectively, the "HELOC Borrowers"). See MLPA at Section 2.1(a). The MLPA specifically provides that the purchaser thereunder (i.e. the Trust) is not obligated or permitted to fund any future draws under the HELOCs. Accordingly, the obligation to fund any draw requests under the HELOCs remains and has always been an obligation of AHMA.

5. HELOCs are different from other types of mortgage loans because they operate in a similar fashion to revolving lines of credit. So long as no default exists under the HELOC, the borrower under the HELOC is permitted to borrow up to the borrowing limit and thereafter re-borrow principal amounts that he or she previously repaid. The "lender" under the HELOCs is AHMA (the "Lender").

6. The Trust issued notes (the "Notes") to its investors which are backed by the HELOCs owned by the Trust and the stream of mortgage payments made thereunder.

7. Assured Guaranty Corp. ("Assured") is the insurer under a certain insurance policy (the "Assured Policy") that insures the payment of the notes issued by the Trust.

8. As previously indicated, AHM Servicing serves as the servicer of the HELOCs pursuant to the Servicing Agreement.

9. Under the HELOC Documents, prior to the occurrence of a "Rapid Amortization Event", the servicer may use a portion of the principal and interest payments collected from the HELOC Borrowers to honor draw requests made under the HELOCs. To the extent that such funds are insufficient to cover the draw requests or to the extent that a Rapid Amortization Event has occurred, the Lender is obligated to fund that portion of the draw request that the Trust funds do not cover.

10. As stated in the Motion, Assured believes that a "HELOC Servicer Termination Event" occurred under the HELOC Documents because, among other things, AHM Servicing failed to fulfill its contractual responsibilities under the Servicing Agreements[2].

11. According to the HELOC Documents, upon the occurrence of a HELOC Servicer Termination Event, a "Rapid Amortization Event" automatically (and without the need to provide notice to the Servicer) occurs. Following the occurrence of a Rapid Amortization Event, all collections from the HELOCs (net of the fees and expenses of the servicer and the Back-Up Servicer) are to be paid into the Trust and used to pay down the principal and interest due under the Notes. Thus, following a Rapid Amortization Event, the collections on account of the HELOCs are not allowed to be used to fund draw requests by the HELOC Borrowers. According to Assured, AHM Servicing ignored or failed to acknowledge the termination of the Servicing Agreement and the occurrence of HELOC Servicer Termination Events and Rapid Amortization Events and, in contravention of the Servicing Agreement, used some of the

---

[2] GMACM is without sufficient information to determine whether a HELOC Servicer Termination Event has occurred.

amounts paid to it by HELOC Borrowers on account of the HELOCs to fund, in part, draw requests by HELOC Borrowers. According to the Motion, this practice by AHM Servicing resulted in millions of dollars of collections being diverted from the Trust.

12. The Debtors sold the bulk of their mortgage loan servicing business (the "Servicing Business") to AH Mortgage Acquisition Co., Inc. (the "Purchaser"). The sale of the Servicing Business is to occur in two parts - an initial or economic closing, which occurred on November 16, 2007, and a final or legal closing anticipated to occur sometime in early 2008. Originally the servicing rights, if any, of AHM Servicing, under the Servicing Agreement were to be sold to the Purchaser in connection with the sale of the Servicing Business. However, on the morning of the sale hearing, the Debtors, without any prior notice to GMACM or to Assured or to anyone else with an interest in the HELOCs or the HELOC Documents, withdrew the servicing rights under the Servicing Agreement from the assets to be sold to the Purchaser. As far as GMACM is aware, the Debtors have not entered into any other agreements or filed any other motions to sell or otherwise address their servicing rights, if any, under the Servicing Agreement. Upon and following the final closing of the Servicing Business, the Debtors will lack the ability to service the HELOCs inasmuch as their entire servicing operation will be transferred to the Purchaser.

13. GMACM believes that the Lender is no longer making loans to fund draw requests under the HELOCs. In addition, GMACM believes that the HELOC Borrowers have not received any notice from any Debtor that the HELOCs are "frozen" and that no further draw requests thereunder will be honored. This presents a very serious issue in that individual HELOC

Borrowers may be incurring obligations believing that they can draw on their HELOC to fund such obligations[3].

14.  As expressed in the Motion, Assured desires a lifting of the automatic stay so that AHM Servicing may be terminated as servicer under the Servicing Agreement, which may ultimately result in GMACM becoming the servicer of the HELOCs.

15.  GMACM can neither admit nor deny a number of factual allegations contained in the Motion; however, GMACM is prepared to take over as servicer under the Servicing Agreement provided that it is accorded the authority to do so by this Court and by AHM Servicing (in its capacity as servicer), which is currently in possession of the files, books, records and funds pertaining to the HELOCs.

16.  While GMACM is prepared to meet its obligations under the Servicing Agreement and the Back-Up Servicing Agreement, its obligation is to take over the servicing of the HELOCs, *not to advance any funds in order to meet draw requests made by HELOC Borrowers*. Further, because a Rapid Amortization Event may have occurred[4], the servicer of the HELOCs is not permitted to use any of the payments made on account of the HELOCs to

---

[3]  On December 20, 2007, GMACM filed GMAC Mortgage LLC's Motion to Compel the Debtors to Send Notice to the HELOC Borrwers Regarding the "Freezing" of the HELOC Loans (the "Motion to Compel") requesting that the Court enter an order compelling AHMA and AHM Servicing to send a notice to the HELOC borrowers regarding the status of funding under the HELOC loans under the various trusts for which GMACM serves as either the master servicer or back-up servcer. As the Motion to Compel is currently pending before the Court and is scheduled to be heard at the same hearing as the Motion, GMACM is only asserting the notice issues in this Response as a precautionary measure and will pursue its request for notice under the Motion to Compel.

[4]  GMACM is not taking a position as to whether a Rapid Amortization Event occurred. However, to the extent that a Rapid Amortization Event has occurred, GMACM, as the new servicer, is not obligated to and thus has no intention of funding draw requests under the HELOCs. Inasmuch as GMACM has no obligation to and has no intention of taking over as Lender, GMACM, as the new servicer, believes that the HELOC Borrowers have the right to be notified that the HELOCs are "frozen" and that no further loans will be made to such HELOC Borrowers thereunder.

fund draw requests. Thus the HELOCs will no longer "revolve". It is GMACM's view that the HELOC Borrowers should be notified of this situation so that they do not rely on the HELOCs to fund any obligations they may incur. AHMA should be required to send a notice to the HELOC Borrowers since AHMA is the Lender under the HELOCs.

17. Further, AHM Servicing must comply with Servicing Agreement as it relates to the transfer of servicing to GMACM, or any other successor servicer, including, without limitation, cooperating with GMACM in effecting the termination of AHM Servicing's responsibilities and rights including, without limitation, the transfer to GMACM or the successor servicer for administration by it of (i) the property and amounts which are then or should be part of the Trust Estate or which thereafter become part of the Trust Estate; (ii) originals or copies of all documents of the servicer reasonably requested by GMACM to enable it to assume the servicer's duties thereunder; (iii) the rights and obligations of the servicer with respect to the HELOCs; (iv) all cash amounts which shall at the time be deposited by the servicer or should have been deposited to the Collection Account or the Payment Account (as those terms are defined in the HELOC Documents) or thereafter be received with respect to the HELOCs; and (v) all costs or expenses associated with the complete transfer of all servicing data and the completion, correction or manipulation of such servicing data as may be required by GMACM or any successor servicer to correct any errors or insufficiencies in the servicing data or otherwise to enable GMACM or the successor servicer to service the HELOCs properly and effectively. In addition, AHM Servicing must pay all reasonable costs and expenses (including, but not limited to, attorneys' fees and disbursements) incurred by GMACM or a successor servicer in connection with its succession as servicer.

18. Pursuant to the Order Granting, In Part, Motion of CIFG Assurance North America, Inc. for Relief From the Automatic Stay to Permit Termination of the Rights and Responsibilities of Debtor as Servicer Under the HELOC Servicing Agreement for Series 2006-2 (D.I. 2398) (the "CIFG Order") and the Order Granting, In Part, Motion of Financial Guaranty Insurance Company for Relief from the Automatic Stay to Permit Transfer of the Rights and Responsibilities of Debtor as Servicer Under the HELOC Servicing Agreements for Series 2005-1, 2005-2 and 2005-4A (D.I. 2484) (the "FGIC Order"), the servicing for the Series 2005-1, 2005-2, 2005-4A and 2006-2 trusts will be transferred effective as of January 11, 2008 to GMACM.

19. In the Debtors Motion for an Order Pursuant to 11 U.S.C. §§ 105 and 554 Authorizing the Abandonment of HELOC Servicing Rights Under the 2004-4 HELOC Servicing Agreements and Granting Related Relief (D.I. 2523) (the "Motion to Abandon"), the Debtors request authorization to abandon the HELOC Servicing Rights (as that term is defined in the Motion to Abandon) under the Series 2004-4 trust effective as of January 11, 2008.

20. Accordingly, since all of the other series for which GMACM is either the master servicer or the back-up servicer will be transferred to GMACM on January 11, 2008, GMACM requests that the HELOCs also be transferred to GMACM on January 11, 2008.

21. For all of the foregoing reasons, GMACM concurs with the Motion to the extent that it seeks relief from the automatic stay so that GMACM may take over as servicer with respect to the HELOCs; however, GMACM requests additionally that this Court direct the Debtors to take the actions specified in paragraph 17 of this Response in connection therewith. In addition, GMACM requests that the effective date of the transfer of the HELOCs be January 11, 2008 as is the case with all of the other HELOCs for which GMACM is either the master

servicer or the back-up servicer. GMACM reserves its rights and will argue regarding the notice issues discussed above and more fully in the Motion to Compel in connection with its Motion to Compel.

WHEREFORE, GMAC Mortgage LLC respectfully requests that the Court enter an Order (i) modifying the automatic stay to permit Assured and GMACM and any other non-Debtor parties to the Servicing Agreement, Back-Up Servicing Agreement and any other HELOC Documents to take any and all actions necessary to terminate AHM Servicing as servicer thereunder effective as of January 11, 2008; (ii) directing AHM Servicing to comply with the Servicing Agreement as it relates to the transfer of servicing to GMACM, or any other successor servicer; and (iii) granting such other and further relief as the Court deems appropriate, just and proper.

Dated: December 28, 2007
       Wilmington, Delaware

REED SMITH LLP

By: /s/ Kimberly E. C. Lawson
Kimberly E. C. Lawson (No. 3966)
1201 Market Street; Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: klawson@reedsmith.com

and

Robert P. Simons
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-7294
Facsimile: (412) 288-3063

and

Claudia Z. Springer
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420

Attorneys for GMAC Mortgage LLC