IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------------- x | | Chapter 11 |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : | |
| HOLDINGS, INC., a Delaware corporation, et al., | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: Jan. 4, 2008 at 11:00 a.m.** |
| | : | **Ref. Docket Nos. 2397** |
| ------------------------------------------------------------------- x | | |

**DEBTORS' OBJECTION TO MOTION OF EDWARD ABRAM, JR., NAJLA WAHEED,
RICHARD ZEMEL, ROSALYN CEASAR, DUSTIN JONES, JOHN SOGLUIZZO AND
ANTHONY FAUX, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED, FOR (i) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO
SECTION 362 OF THE BANKRUPTCY CODE TO RESUME PENDING WAGE AND
HOUR LITIGATION AGAINST THE DEBTORS IN A NON-BANKRUPTCY COURT
AND (ii) AN EXTENSION OF OR RELIEF WITH RESPECT TO THE BAR DATE**

The above-captioned debtors and debtors-in-possession (the "Debtors")[1] object

(the "Objection") to the Motion of Edward Abram, Jr., Najla Waheed, Richard Zemel, Rosalyn

Ceasar, Dustin Jones, John Sogluizzo And Anthony Faux, On Behalf Of Themselves And All

Others Similarly Situated, For (i) Relief From The Automatic Stay Pursuant To Section 362 Of

The Bankruptcy Code To Resume Pending Wage And Hour Litigation Against The Debtors In A

Non-Bankruptcy Court And (ii) An Extension Of Or Relief With Respect To The Bar Date

[Docket No. 2397] (the "Motion")[2]. In support of this Objection, the Debtors respectfully

represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] All defined terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

## INTRODUCTION

1.      On June 20, 2007, Movants initiated the in the action entitled <u>Edward</u>
<u>Abram, et al. v. American Home Mortgage Investment Corp., et al.</u>, Case No.: C07-03252
(U.S.D.C., N.D. Ca. 2007) ("Abram Action") in the Northern District of California.

2.      On July 31, 2007, Movants filed the First Amended Complaint in the
Northern District of California.

3.      On August 9, 2007, the Debtors filed a Notice of Bankruptcy, a copy of
which is attached hereto as <u>Exhibit A</u>, in the Abram Action.

4.      On October 8, 2007, the Debtors filed and served the Motion of the
Debtors for an Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e)
Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of
Notice Thereof [Docket No. 1373] (the "Bar Date Motion") on Movants' counsel.  Movants did
not file any response to the Bar Date Motion.

5.      On October 30, 2007, the Debtors served Movants' counsel with the Order
Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates for
Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No.
1708].

6.      On November 6, 2007, the Debtors served Movants and their counsel and
7600 current and former employees with the Notice of Bar Dates for Filing of Proofs of Claim
setting forth a Bar Date of January 11, 2008 [Docket No. 1802] (the "Bar Date Notice").

7.      On December 17, 2007, Movants filed the Motion seeking (1) relief from
the automatic stay in order to (i) seek conditional class certification under 29 U.S.C. §216(b),
(ii) seek class certification under Federal Rule 23 for claims under California, New York,

2

066585.1001

Illinois, Wisconsin, Colorado, New Jersey, and Washington state law in the California Court, and (iii) authority to provide potential class members with written "opt-in-notice"; and (2) a brief extension of the bar date or alternatively a ruling of this Court that Movants' timely-filed class proof of claim is deemed timely-filed on behalf of each person who eventually returns an "opt-in" form or otherwise becomes a member of the class to be certified in the California suit.

## ARGUMENT

### I.    Movants Have Failed To Meet Their Burden To Show Sufficient Cause To Lift The Stay

8.    The stay may only be lifted for "cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). The burden of establishing such "cause" is on the party seeking relief from the automatic stay. Wilmington Trust Co. v. Aardvark, Inc. (In re Aardvark, Inc.), Civ. Act. No. 96-412-SLR, 1997 U.S. Dist. LEXIS 3304, *13 (D. Del. Mar. 4, 1997); In re Rexene Prods. Co., 141 B.R. 574, 577 (Bankr. D. Del. 1992). Accordingly, Movants bear the burden of establishing "cause" within the meaning of section 362(d)(1) of the Bankruptcy Code.

9.    The term "cause" is not defined in the Bankruptcy Code, and "[t]here is no rigid test for determining whether sufficient cause exists to modify an automatic stay." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993) (citing IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.), 938 F.2d 731, 734-37 (7th Cir. 1991)); see In re W.R. Grace & Co., Case No. 01-01139 (JKF), 2007 Bankr. LEXIS 1214, *6-7 (Bankr. D. Del. Apr. 13, 2007). In resolving motions for relief from the stay to pursue legal action against the debtor, "courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." Id. In balancing the competing interests of the debtor and the movant, courts consider the following factors: "(1) the prejudice that would be

suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted." Id.

10.     Movants allege that cause exists to modify the stay because (i) potential class members must file a consent form in order for an individual's claim to attach to the First Amended Complaint, or further modified complaints, (Motion at ¶ 13); (ii) the statute of limitations for putative class members continues to run, (Motion at ¶ 16); (iii) of the broad remedial purposes of the FLSA (Motion at ¶ 17); (iv) the Debtors did not likely provide notice to former employees of the bar date (Motion at ¶ 18); and (v) it is more efficient to bring a joint FLSA and Rule 23 certification motion, (Motion at ¶ 19).

11.     However, as set forth below and in the Affidavit of Marc S. Wenger ("Wenger Affidavit"), attached hereto as Exhibit B, Movants contentions are unsupported, and more importantly, legally inaccurate. As a result, Movants have failed to establish even the basic *prima facia* requirements for relief from the automatic stay and, therefore, the Motion should be denied.

### A.    The Policies Underlying the Automatic Stay Weigh in Favor of Denying the Relief Requested by Movants

12.     The automatic stay is one of the fundamental debtor and creditor protections provided by the Bankruptcy Code. Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.), 142 F.3d 631, 637 (3d Cir. 1998) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296). It gives the debtor a breathing spell from its creditors by stopping all collection efforts, harassment, and foreclosure actions, thus relieving the debtor of the financial pressures that drove it into bankruptcy and facilitating the debtor's attempts to reorganize. Id. For creditors, the automatic stay prevents the state-law "race of the diligent," whereby creditors who

4

act first to pursue their remedies against the debtor's property obtain payment of their claims in preference to, and to the detriment of, other creditors. See id.

13.     The Debtors filed for chapter 11 protection to liquidate their business and assets in an orderly fashion in order to maximize the value of the bankruptcy estates available for distribution to creditors. The automatic stay is essential to this process; without it, the Debtors' management and professionals would be tied up in litigation with individual creditors such as the Movants rather than focusing on ongoing operations, sale of the Debtors remaining assets and negotiating and drafting of a plan of reorganization. See In re W.R. Grace & Co., Case No. 01-01139 (JKF), 2007 Bankr. LEXIS 1214, *10 (Bankr. D. Del. Apr. 13, 2007) (denying relief from stay to pursue litigation that would be "a distraction from the reorganization process"). Movants have offered no explanation of why they need to prosecute their claims now rather than during the claims reconciliation process like other, similarly situated creditors.

### B.     The Debtors Will Be Significantly Prejudiced If the Stay is Lifted

14.     The Movants correctly note that prejudice to the debtor is the primary consideration in balancing the competing interests of debtor and movant in determining whether to lift the stay to permit litigation in another forum. Motion at ¶ 21. As further discussed below, Movants will not be prejudiced by continuation of the stay. The Debtors, on the other hand, would be significantly prejudiced by lifting the stay. Movants assert that the Debtors will only have to respond to a *single* motion in the Abram Action and that such response "will not cause the Debtors to expend significant time or resources." Motion at ¶ 22. As set forth in greater detail in the Wenger Affidavit, however, this is simply not the case.

15.     As a threshold matter, Movants cannot file their motion for permission to proceed as a collective action under the Fair Labor Standards Act ("FLSA") and/or class

certification under Rule 23, until the Debtors answer the First Amended Complaint.[3] If the stay

is lifted to permit the Movants to seek class certification (conditional or otherwise), the Debtors

will be forced to expend significant time and resources evaluating various litigation strategies

before filing an answer. Moreover, should the Debtors decide to bring a motion for change of

venue, as discussed in the Wenger Affidavit, such motion would have to be addressed before

conditional class certification under 29 U.S.C. § 216(b) or class certification under Rule 23 could

be adjudicated. A venue motion could take months to resolve, and would likely require

extensive briefing by the parties.

      16.     Even if motions for conditional class certification under 29 U.S.C. §

216(b) are rarely denied as the Movants assert (which, as discussed in the Wenger Affidavit, is

inaccurate), an FLSA defendant is ordinarily afforded an opportunity for discovery on the issue

of the appropriateness of conditional class certification. See Wenger Affidavit at ¶ 8. And Rule

23 class certification is a much more stringent standard,[4] which will certainly entail discovery.

In any event, the Debtors will have to do extensive discovery simply to determine the

composition of the putative class.

---

[3] Under the FLSA, an action by a plaintiff on behalf of himself and others who are "similarly situated" is brought solely pursuant to 29 U.S.C. § 216(b). Under § 216(b), an employee cannot join the action unless he or she consents in writing to do so and such consent is filed with the Court. 29 U.S.C. § 216(b). Although a District Court has discretionary power to authorize a plaintiff to send notice to potential class members under the "opt-in" provision of the FLSA, it may do so only under "appropriate circumstances." Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335 (2d Cir. 1978); Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). To determine whether "appropriate circumstances" exist, the threshold issue is whether the named plaintiffs have demonstrated that potential class members are "similarly situated" to them. See 29 U.S.C. § 216(b); Hoffman, 982 F. Supp. at 261. In determining whether potential class members are similarly situated, Courts generally require plaintiffs to make a factual showing sufficient to demonstrate that there is a "factual nexus between the [named plaintiffs] situation and the situation of other current and former [employees]. Hoffman, 982 F. Supp. at 262.

[4] A party seeking class certification bears the burden of showing that the requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied, and that the putative class falls within one of the three categories set forth in Rule 23(b). E.g., Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 291 (2d Cir. 1999), cert. denied, 529 U.S. 1107 (2000). Additionally, the Supreme Court has directed that a trial court should not certify a class action prior to conducting a "rigorous analysis" to determine whether the prerequisites of Rule 23 have been satisfied. General Telephone Co. v. Falcon, 457 U.S. 147, 161 (1982); Caridad, 191 F.3d at 291.

         

17.    As set forth in the First Amended Complaint, the Collective Class (FLSA) purportedly includes all persons who are or were employed by the Debtors as loan officers and classified as "exempt" for the three years prior to the filing of the Abram Action. In addition, the Class allegedly includes: all persons who are or were employed by the Debtors as loan officers and classified as "exempt" within the various statute of limitations of individual states, as applicable to the individual class members. Although this definition of the purported class members is extremely broad, upon information and belief, the Debtors believe that potential class members are either all or mostly "outside" loan officers.[5] Notwithstanding the fact that the Debtors have yet to file an answer to the First Amended Complaint, undoubtedly any answer will assert as one of the Debtors' defenses that Movants (i.e., outside loan officers) are exempt from FLSA and/or applicable state law under the "outside sales exemption."[6]

18.    In order to appropriately preserve its defenses, the Debtors will have to expend significant resources to conduct discovery regarding the extent that potential class members performed their job consistent with the outside sales exemption and inconsistently with the other putative class members, a factors going to the issue of whether the putative collective action members are similarly situated, and thus, whether it is appropriate to conditionally certify the class. See, e.g., Mike v. Safeco Ins. Co. of America, 274 F. Supp.2d 216, 220 (D. Conn. 2003)( Before authorizing conditional collective action certification, and the sending of notice to potential collective action members, "the court must be satisfied that there is a basis to conclude

---

[5] The Debtors have a settlement pending in Manley v. American Home Mortgage Investment Corp. et al., 04-CV-08606, (S.D.N.Y.) to resolve a wage and hour class action of its inside loan officers. Accordingly, the Debtors believe that the only potential class member are "outside" loan officers.

[6] See 29 U.S.C. § 213(a)(1)(exempting outside salespersons from the minimum wage and overtime provisions of the FLSA).

066585.1001

that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.").

19.    Accordingly, even the decision on whether to conditionally certify the class, that is, to determine whether the potential opt-ins are similarly situated to each other, will involve a very "fact-intensive inquiry dependent on each employee's job responsibilities and duties." Lisa Evancho v. Sanofi-Aventis U.S. Inc., et al., Civil Action No. 07-2266 at 6 (D.N.J. Dec. 18, 2007) )(holding that employees status under the FLSA may vary even if they hold the same job title, if the job responsibilities and duties differ, especially where the differences are relevant to the statutory criteria of the FLSA.).[7]

20.    Further, the definition of "exempt" employee varies from state to state, requiring the court to conduct a factual inquiry, employee-by-employee, to determine whether such employee is an "exempt" employee under a particular state's law.  In light of this very specific employee-by-employee inquiry, the Debtors would be severely prejudiced if they are not permitted, prior to an adjudication of class certification, to conduct discovery to determine who the members of the purported class are.  As such, the Movants' statement that responding to a "single motion" will not require "significant time or resources" is simply incorrect.

C.    **Movants Will Not be Prejudiced if the Stay is Continued**

21.    Establishing that the balance of hardships tip in favor of an unsecured creditor to obtain relief from the stay imposes a significant burden on movants, "which is rarely, if ever, sustained on the basis of pure allegations." In re Ronald Perlstein Enterprises, Inc., 70 B.R. 1005, 1014-1015 (E.D. Pa. 1987).

---

[7] A copy of Evancho is attached hereto as Exhibit C.

066585.1001

22.     Movants in the instant case do not allege any harm whatsoever that they will suffer should the stay be continued.  Rather, they argue that as-yet-unidentified third parties "who have not received notice of their right to file a consent form in the Abram Action are suffering the deterioration of their claims with each day that passes...notice of the pending lawsuit is imperative so that employees are informed of their opportunity to pursue their claims before they fall victim to the statute of limitations."  Motion at ¶ 16.  Even if the Movants had standing to make this argument (which, as discussed below, they do not), it is plainly at odds with section 108(c) of the Bankruptcy Code, which provides, in pertinent part:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . , and such period has not expired before the date of the filing of the petition, then such period does not expire until *the later of—*
>
> (1) *the end of such period*, including any suspension of such period occurring on or after the commencement of the case; *or*
>
> (2) *30 days after notice of the termination or expiration of the stay* under section 362 . . . of this title . . . with respect to such claim.

11 U.S.C. § 108(c) (emphasis added).  Unless the stay is terminated by the Court, the stay continues until the earliest of closing of the case, dismissal of the case, or confirmation of the plan of reorganization.  11 U.S.C. § 362(c)(2).  Thus, under section 108(c) the statute of limitations is tolled as to putative class members until thirty days after the Debtors' plan is confirmed.

23.     Contrary to Movants' assertion that employees are unaware of their right to file a consent form in the Abram Action, as set forth in the Wenger Affidavit, since the filing of the First Amended Complaint at least 58 additional plaintiffs have filed opt-in forms and will also likely file proof of claim forms in these cases.  Wegner Affidavit at ¶3.

9

**D.    Movants Are Not Likely To Succeed In Obtaining Conditional Class Certification Under 29 U.S.C. § 216(b) and/or Class Certification Under Rule 23**

24.    Even under the most lenient standards for conditional class certification, as set forth in the opinions attached to the Motion as Exhibit D, plaintiffs must establish that class members are "similarly situated." Yet, Movants have not provided any evidence to establish a nexus between the claims of the various potential class members.

25.    In the interest of preserving estate resources, upon the filing of the Chapter 11 cases the Debtors and their professionals stopped their evaluation and analysis of the Abram Action. Nevertheless, based upon the minimal analysis the Debtors have conducted, it is unlikely that Movants can satisfy the *de minimus* standard for conditional certification under 29 U.S.C. §216(b), never mind the more stringent requirements of class certification under Rule 23.

26.    A mere allegation that purported class members are similarly situated is not sufficient to obtain conditional certification under 29 U.S.C. § 216(b). In Evancho, for example, the court held that a motion for conditional class certification may be denied where "plaintiffs allege that potential class members are similarly situated because they were improperly classified by their employer as exempt from the FLSA." Evancho, Civil Action No. 07-2266 at 6; see also Reich v. Homier Distrib. Co., Inc., 362 F. Supp.2d 1009, 1013-15 (N.D. Ind. 2005) (denying motion for conditional certification because plaintiff and potential collective action member were not similarly situated, as application of FLSA exemption would depend on each employee's specific duties). The Evancho court further held that even without reaching the merits of whether certain exemptions applied, based on differences in job descriptions and duties of employees with the same employment positions, plaintiffs were not "similarly situated" and thus, conditional certification was inappropriate. Id. at 11.

10

27.    Similarly, the Debtors can, and if they are required to respond to the First Amended Complaint and motion for certification will, provide evidence of different job descriptions and duties among outside loan officers. Indeed, many if not all of the loan officers employed by the Debtors were originally employees of various mortgage companies acquired by the Debtors during the relevant statutory periods. As a result the employment policies, job descriptions and duties of the loan officers were not part of a common policy or plan, but were governed by various commission agreements, job descriptions, job duties and pay practices. Movants on the other hand, have failed to provide any evidence that the outside sales employee exemption does not apply to the plaintiffs or putative class members.[8] As such, Movants cannot meet either the *de minimus* standard for conditional class certification under 29 U.S.C. § 216(b) or the more stringent standard for class certification under Rule 23.

28.    Further, the First Amended Complaint includes both federal and state law claims, including California, New York, Illinois, Wisconsin, Colorado, New Jersey, and Washington state law claims. The laws of these states alone establish that the Movants and potential class members are not "similarly situated." For instance, class members with potential "wage and hour" claims under New York State law include those who worked for the Debtors at any time from six years prior to initiation of the Abram Action until entry of a judgment in such action. See New York Labor Law Article 6, § 198(3). Accordingly, class member who fall within this definition may not necessarily have a claim under FLSA, which only allows claims for three years prior to initiation of the Abram Action.

29.    In sum, because the Debtors will be significantly prejudiced by lifting the stay, and that the Movants are not likely to succeed on the merits in obtaining class certification

---

[8] A copy of Fact Sheet #17E explaining the exemption for outside sales employees under the FLSA is attached hereto as Exhibit D.

11

under 29 U.S.C. § 216(b) or Rule 23, consideration of the competing interests of the Debtors and the Movants supports continuation of the stay, to effectuate *its* broad remedial purposes (which benefit the Debtors and all their creditors) rather than the narrower purposes served by the FLSA (which benefit the Movants alone).

## II.    The Court Should Not Grant Unknown Third Parties Relief from the Bar Date

30.    The Movants, each of whom had notice of these bankruptcy proceedings, notice of the Bar Date and ample opportunity to file their own proofs of claim, nonetheless seek extension of the Bar Date (or, alternatively, an advisory ruling as to the efficacy of the Movants' class proof of claim vis-à-vis future, late-filed proofs of claim) for the benefit of an as-yet-unidentified group of putative class members. Notably, however, the Motion does not explain in what way the current Bar Date affects the rights of the Movants or, alternatively, argue why the Movants should be afforded third-party standing to assert the rights of putative class members.

31.    While section 1109(b) of the Bankruptcy Code provides that any "party in interest . . . may raise and be heard on any issue" in bankruptcy, it is well settled that this provision does not (indeed, *cannot*) override constitutional and prudential limitations on standing observed in other contexts. Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 160-161 (D.N.J. 2005) ("[M]inimum constitutional and prudential requirements of standing still apply to parties-in-interest in a bankruptcy case."); In re A.P.I. Inc., 331 B.R. 828, 856 (Bankr. D. Minn. 2005) (holding that a party objecting to a chapter 11 plan "must establish its standing to be heard under the bedrock principles that apply to *all* federal courts, as well as its statutory right to participate in the case under § 1109(b)" (emphasis in original)).

32.    The Supreme Court has repeatedly emphasized that "standing is not dispensed in gross." Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996). That is, standing "does not

refer simply to a party's capacity to appear in court," but rather, "is gauged by the specific common-law, statutory or constitutional claims that [the] party presents." Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 77 (2000). Thus, standing is determined *issue by issue*, not contested matter by contested matter, and a party "may be the real party in interest and have standing in one respect while he may lack standing for another purpose." In re Ofty Corp., 44 B.R. 479, 481 (Bankr. D. Del. 1984).

### A. The Movants Do Not Have Standing to Move for an Extension of the Bar Date on Behalf of Claimants They Do Not Represent

33.    The "irreducible constitutional minimum" for standing consists of three elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). First, the party seeking relief must have suffered an "injury in fact," defined by the Supreme Court as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. (internal quotations, citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of . . . ." Id. Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (internal quotations omitted). Accord Pitt News v. Fisher, 215 F.3d 354, 359 (3d Cir. 2000) (observing that the three elements of Article III standing are injury-in-fact, causation, and redressability), cert. denied, 531 U.S. 1113 (2001). The party invoking the jurisdiction of the federal court "bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

34.    The Motion does not explain what, if any, "legally protected interest" *of the Movants* is threatened by the Bar Date and, as such, it is equally unclear whether the causation and redressability factors of constitutional standing are met. Accordingly, the Movants have not met their burden of establishing they have standing to seek extension of the Bar Date.

13

35.    Moreover, in addition to the *constitutional* requirements for standing, the

Supreme Court has crafted *prudential* limitations on "the class of persons who may invoke the

courts' decisional remedial powers." Warth v. Seldin, 422 U.S. 490, 499 (1975) (emphasis

added).  One such limitation, which is closely related to the "injury in fact" element of

constitutional standing, is that a party "generally must assert his own legal rights and interests,

and cannot rest his claim to relief on the legal rights or interests of third parties." Id.; In re ANC

Rental Corp., 278 B.R. 714, 719 (Bankr. D. Del. 2002) ("While section 1109 allows a creditor to

be heard on any issue in a bankruptcy case, it does not change the general principle of standing

that a party may assert only its own legal interests and not the interests of another." (citing In re

James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992) (non-lessor creditor did not have

standing to seek relief based on provision of the Bankruptcy Code protecting lessors,

specifically)).  Indeed, "[t]hird-party standing is of special concern in the bankruptcy context," In

re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000) (quoting Kane v. Johns-Manville

Corp., 843 F.2d 636, 644 (2d Cir. 1988)), and the Third Circuit has "generally taken a restrictive

view" of it, In re Combustion Eng'g, Inc., 391 F.3d 190, 220 n.28 (3d Cir. 2004).  Accord In re

Orlando Investors, L.P., 103 B.R. 593, 596 (Bankr. E.D. Pa. 1989) (holding that parties lacked

standing to object to chapter 11 plan on the basis "the distribution provided to their fellow equity

holders is too small").

36.    The Motion offers no explanation of why the general rule barring third-

party standing in bankruptcy does not apply or, alternatively, should not be enforced as to the

Movants.  As such, the Debtors are unable to prepare a response on this point and reserve all

their rights to supplement this Objection should the Movants advance additional arguments on

the issue of third-party standing.

**B.**     **The Court Should Not Provide the Movants with an Advisory Opinion as to the Scope and Efficacy of Their Class Proof of Claim**

37.     As an alternative to extension of the Bar Date, the Movants seek a ruling from the Court that their class proof of claim will constitute a timely-filed proof of claim with respect to anyone who eventually becomes a class member. Apart from undermining the purpose of filing proof of claim,[9] such a ruling would plainly constitute an advisory opinion on hypothetical facts that may or may not materialize. Thus, even if the Movants had standing to seek such a ruling (which, as discussed above, they do not), the Court should not issue it until the matter is ripe for adjudication. See Shaw Group, Inc. v. Next Factors, Inc. (In re Stone & Webster, Inc.), 359 B.R. 102, 111 (Bankr. D. Del. 2007) ("The constitutional limitation of federal jurisdiction to actual cases and controversies stands as a direct prohibition to the issuance of advisory opinions." (citing Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir. 1992)); In re Orion Ref. Corp., Case No. 03-11483, 2004 Bankr. LEXIS 188, *3-4 (Bankr. D. Del. Feb. 19, 2004) ("It is a fundamental principle of jurisprudence that courts should decide actual cases or controversies and not give advisory opinions.").

38.     Movants are free to file their class proof of claim before the Bar Date, and other class members (if any) are free to argue in the future that their claims were, thus, adequately preserved. Of course, prudent class members would also file *individual* proofs of claim (e.g., to preserve their rights in the event the class is never certified, or is later

---

[9]  As the Second Circuit has noted, the primary purpose of requiring proofs of claim "is to ensure that all those involved in the proceeding will be made aware of the claims against the debtor's estate and will have an opportunity to contest those claims." In re Chateugay Corp., 94 F.3d 772, 777 (2d Cir. 1996) (quoting Liona Corp. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 605 (2d Cir. 1991)). The Movants' class proof of claim obviously will not apprise parties in interest of the extent or validity of claims against the Debtors' estates held by as-yet-unidentified class members.

decertified),[10] which might obviate any dispute over the efficacy of the *class* proof of claim.

And claimants filing individual proofs of claim after the Bar Date might not need to rely on the

class proof of claim at all, to the extent they can prove, e.g., that they had no notice of these

bankruptcy cases and/or the Bar Date, or that their failure to file a timely proof of claim was the

result of excusable neglect, see Fed. R. Bankr. P. 9006(b)(1). Given the variety of potential

factual circumstances and procedural postures presented by the claims of putative class

members, it would be premature at this point to issue a blanket ruling as to the scope and

efficacy of the class proof of claim as to the claim of any one putative class member, much less

the claims of an amorphous group of class members.

---

[10] If conditional certification is granted notice will be sent to potential class members and discovery in the action will proceed. See Douglas Pontius v. Delta Financial Corp., et al., Civil Action No. 04-1737 (W.D. Pa. 2005)(relying on Lusardi v. Lechner, 855 F.2d 1062 (3d Cir. 1988)). Once discovery is complete, a defendant may move to decertify the class, and a higher standard will be applied to determine whether the class members are in fact similarly situated. See id. During this second stage, the court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which are individual to each plaintiff; and (3) fairness and procedural considerations. Id. at 30 (citing Thiessen v. General Electric Capital Corp., 267 F.3d 1095 (10th Cir. 2001). The more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action. Anderson v. Cagles Inc., 2007 U.S. App. Lexis 13654, *18 (11th Cir. June 11, 2007). Indeed, where the exempt or non-exempt status needs to be determined on an employee-by-employee basis, the case should not proceed collectively and should be decertified. See King v. West Corp., 2006 U.S. Dist. Lexis 3926, *41 (D. Neb. Jan. 13, 2006) (refusing to certify a collective action after completion of discovery and noting the exempt or non-exempt status of 177 opt-in plaintiffs would need to be determined on a job-by-job, or an employee-by-employee basis, resulting in essentially individual trials, even if a class were certified. The necessity of such individualized inquiries renders class certification improper in this case); Morisky v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493 (D. N.J. 2000) (refusing to certify a collective action of 141 employees who claimed they were misclassified as exempt employees because determining the exempt status required an individual, fact-specific analysis of each employees' job responsibilities). The Debtors believe they can defeat conditional certification of the Movants' class and, if not, that a subsequent motion for decertification will be successful. If the class is decertified, the opt-in plaintiffs are dismissed without prejudice and the named plaintiffs proceed to trial. See Pontius at 5 (citing Lusardi, 118 F.R.D. at 361).

16

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order

denying the Motion and granting the Debtors such other and further relief as is just and proper.

Dated:     Wilmington, Delaware
           December 28, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
John T. Dorsey (No. 2988)
Sharon M. Zieg (No. 4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

17

# EXHIBIT A

Dbt f !4;18.dw 14363. N KKl!!!!Epdvn f ou52!!!!!!Gjrhe!1: 02303118!!!!!Qbhf !2!pg2

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**EDWARD ABRAMM, JR.,**

           Plaintiff(s),

    v.

**AMERICAN HOME MORTGAGE
INVESTMENT CORP.,**

           Defendant(s),

                            /

No. **C07-03252 MJJ**

**Clerk's Notice**

     (Plaintiff is required to serve, and file proof of service with the Court, any party involved not listed on the attached proof of service.)

YOU ARE NOTIFIED THAT the Court has vacated all deadlines and hearings currently on calendar.

Dated: September 12, 2007

                             FOR THE COURT,

                             Richard W. Wieking, Clerk

                             By: _Alfred Amistoso_

                               Alfred Amistoso
                               Courtroom Deputy

Please refer to Judge Jenkins' Standing Order located at www.cand.uscourts.gov for additional information. Pursuant to the Standing Order, the rescheduling of a hearing date for a motion does not change the date on which an opposition brief or reply brief is due; any opposition brief remains due not less than 21 days prior to the date of the *originally noticed* hearing and any reply brief is due not less than 14 days prior to the *originally noticed* hearing date.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

IN RE:

AMERICAN HOME MORTGAGE
HOLDINGS, INC., ET AL.,

Debtors.

Index No.:  07-11047 (CSS)

**AFFIDAVIT OF**
**MARC S. WENGER**

------------------------------------------------------------x

I, MARC S. WENGER, being duly sworn, depose and state as follows:

1.      I am a member of the law firm JACKSON LEWIS LLP, employment law counsel in the ordinary course for American Home Mortgage Holdings, Inc., *et al.*, Debtors in the above-captioned action.  I make this Affidavit based on my own personal knowledge, information and belief and submit it in opposition to the Motion by the named Plaintiffs ("Movants") in the action entitled Edward Abram, et al. v. American Home Mortgage Investment Corp., et al., Case No.: C07-03252 (U.S.D.C., N.D. Cal. 2007) ("Abram"), seeking relief from the stay in this proceeding.

2.      I make this Affidavit to correct certain misstatements contained in Movants' motion papers regarding the impact of lifting the stay as to the claims asserted in the Abram action.  Movants seek permission to proceed in the Abram action with a motion to send Notice inviting potential class members to opt-in to the action based on representations that this is a quick and easy process that will be accomplished in short order and at little expense.  (See, e.g., the assertion at paragraph 22 of the motion that "Responding to this single motion will not cause Debtors to expend significant time or resources.")  This is far from accurate.  The following is intended to give the Court a sense of the effort and expense that lifting the stay as to Abram would entail.

3.    At the time of the filing of the bankruptcy petition, Debtors had not yet responded to the Amended Complaint. Accordingly, if the stay is lifted, Debtors would be obligated to complete their analysis of the claims asserted against them and to submit an appropriate response to adequately protect their interests. This is assuming that Plaintiffs do not choose to file another amended complaint. The case was commenced in June 2007 by four named Plaintiffs asserting claims under the federal Fair Labor Standards Act ("FLSA") and four state wage and hour laws. A month later, Plaintiffs filed the Amended Complaint adding three more named Plaintiffs and three additional state law claims. Since then, numerous additional claimants have filed opt-in forms and it is reasonable to assume that Plaintiffs would, given the opportunity, file another amended complaint to add additional state law claims on behalf of any claimants who reside in states not covered by the existing state law claims. It is worth noting that approximately 58 claimants have filed opt-in forms, indicating that, contrary to Movants' dire predictions, potential class members are aware of this case. Any further amendment of the complaint would inevitably delay the date for Debtors to respond and, ultimately, the date for submission of a motion to send Notice.

4.    Movants' motion to send Notice would not likely precede Debtors' response to either the existing Amended Complaint or a second amended complaint, as there are substantial issues that must be resolved prior to addressing the issue of Notice. For example, at the time of the filing of the petition, Debtors were evaluating the option of a motion to change venue. Although the current named Plaintiffs reside in seven different states, they chose to bring the action in the Northern District of California because they, no doubt, deemed it to be the most advantageous jurisdiction to their claim. Debtors have the right to evaluate whether that jurisdiction is appropriate and to make a motion for a change of venue if they deem it necessary.

2

A venue motion would need to be resolved prior to addressing the issuance of Notice so that the court in which the action will ultimately be heard may address the Notice issue. Briefing and deciding such a motion and implementing any order would conceivably take several months.

5.    Debtors would also have the right to move to dismiss any of the claims pleaded in the Amended Complaint as to which the Court lacked jurisdiction. At the time of the filing of the petition herein, Debtors were evaluating grounds to move to dismiss all state law claims based on a lack of pendent jurisdiction. See, e.g., Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 992-993 (C.D. Cal. 2006)(declining to certify Rule 23 class of pendent state law plaintiffs and questioning propriety of supplemental jurisdiction over state law claims, citing Leuthold v. Destination Am., 224 F.R.D. 462, 470 (N.D. Cal. 2004)). Such a motion must be decided prior to addressing the issue of Notice because the content of the Notice would be unsettled until the specific claims presented in the action are established.

6.    A jurisdictional motion would also impact the scope of the class to whom the Notice might be issued. For example, if the New York state law claims are not dismissed for lack of pendent jurisdiction, Plaintiffs could seek to send Notice of the action to all loan officers employed in New York for the six-year period prior to the filing of the Complaint. On the other hand, if the New York state law claim is dismissed, loan officers employed by Debtors in New York more than three years prior to the filing of the Complaint (based on the federal statute of limitations) would not get Notice. Thus, the jurisdictional issue must be resolved for the parties to determine who appropriately should receive the Notice. This motion, like the venue motion, would take several months to resolve.

7.     Even after the parties resolve issues with respect to the pleadings, the appropriate forum and the court's jurisdiction over the claims asserted, the parties will not be ready to send Notice. Permission to issue Notice is not a foregone conclusion. The core claim in this case is a demand for overtime pay for outside loan officers. Debtors maintain that their outside loan officers were exempt from the Fair Labor Standards Act and any applicable state law under, *inter alia*, the outside sales exemption. Based on this exemption, *inter alia*, Debtors would oppose the issuance of Notice on the grounds that all loan officers are not similarly situated for purposes of coverage under this exemption. This issue would require an examination of the extent to which loan officers engage in sales activities outside Debtors' offices. Contrary to Movants' assertion, courts do not routinely grant certification in FLSA cases involving loan officers. See, e.g., Vinole v. Countrywide Home, Inc., 2007 U.S. Dist. LEXIS 86402 (S.D. Cal. 2007)(granting defendant's motion to deny class certification under Rule 23 to class of loan officers)(copy attached); Williams v. Accredited Home Lenders, Inc., 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. 2006)(discovery demonstrated that class was "unmanageable" and conditional certification of class of loan officers under 29 U.S.C. § 216(b) was not appropriate)(copy attached); Olivo v. GMAC Mortgage Corp., 374 F. Supp. 2d 545 (E.D. Mich. 2004)(likely applicability of outside sales exemption to loan officer plaintiffs rendered plaintiffs "unable" to demonstrate common policy or plan in violation of FLSA, thus they were not "similarly situated" for the purposes of 29 U.S.C. § 216(b)).   The U.S. Department of Labor has issued an Administrator's opinion letter analyzing a group of "sales force" mortgage loan officers and finding them exempt. See Wage and Hour Opinion Letter No. FLSA2006-11 (March 31, 2006)(copy attached).

4

8.    In cases of this nature, it is not uncommon for the parties to submit affidavits from numerous witnesses regarding the sales activities of potential class members. Often courts permit the parties to conduct depositions and written discovery regarding this specific issue prior to addressing Notice. Such discovery may result in a narrowing of the scope of the potential class. For example, regulatory revisions to the FLSA overtime exemptions in 2004 recognized an exemption for highly compensated employees. <u>See</u> 29 CFR § 541.601. If this exemption applies to some of the potential class members, it may be necessary to modify the scope of the class definition and, thus, the group to whom Notice might ultimately be sent.

9.    While it may be premature to determine how much discovery might be necessary in the <u>Abram</u> matter prior to addressing the issue of Notice, it is worth noting that another putative class action under the FLSA brought against Debtors was pending for over one year while discovery was conducted without any motion for Notice. <u>Nielsen v. American Home Mortgage Corp.</u>, Case No. 06-CV-01161 (D. Oregon Aug. 14, 2006). Depending on the information adduced during discovery, it is possible that the parties might even file motions or cross-motions for summary judgment prior to or simultaneous with the motion to send Notice.

10.    It is fair to say that many months would transpire before the parties would be properly prepared to address the issue of Notice. In another FLSA class action brought against Debtors, <u>Manley et al. v. American Home Mortgage Investment Corporation</u>, Case No. 04-CV-08606 (S.D.N.Y. Nov. 1, 2004), over one year elapsed from the filing of the Answer to the issuance of Notice, and even then, Notice was issued only to a narrowly defined group of <u>inside</u> loan officers.

11.    Lastly, it should be noted that the lifting of the stay as to <u>Abram</u> could be used in support of similar applications on behalf of the Plaintiffs in <u>Nielsen</u>, <u>Manley</u> and other claimants asserting wage and hour violations, which would undoubtedly have a significant impact on the Debtors.

Marc S. Wenger

Sworn to before me this
28th day of December, 2007.

Notary Public

ELISSA BETH ALI
Notary Public, State of New York
No. 01SP4890486
Qualified in Suffolk County
Commission Expires June 1, 2011

# Attachment

 **U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

**March 31, 2006**                                                                          **FLSA2006-11**

Dear **Name\***,

This is in response to your request for an opinion regarding whether certain "sales force" mortgage loan officers qualify for the minimum wage and overtime exemption for outside sales employees set forth in section 13(a)(1) of the Fair Labor Standards Act (FLSA) (copy enclosed). It is our opinion that the "sales force" loan officers you describe qualify as exempt outside sales employees.

Your request involves mortgage loan officers, also referred to as loan originators, who perform their work primarily outside the employer's offices; you expressly exclude from the request loan officers who "perform their work mainly within the office." The mortgage loan officers at issue meet with customers to sell mortgage loan packages. These "sales force" loan officers are responsible for originating their own sales by contacting prospective clients and by developing and maintaining referral sources. The "sales force" loan officers spend a significant amount of time away from their employer's place of business in performing their principal duty of selling the loan products offered by their employer. The "sales force" loan officers meet with prospective clients at locations other than the employer's business, such as a client's home or other locations away from the employer's place of business. They meet with clients in person to sell mortgage loan packages; their contact with clients by telephone, mail, and e-mail is adjunct to these in-person contacts. The "sales force" loan officers also obtain credit information and other necessary documentation for the loan application process. They make in-person calls on real estate agents and brokers, financial advisors, and other potential referral sources to develop borrower leads. The "sales force" loan officers also engage in marketing and promotional activities in support of their own sales. The "sales force" loan officers have considerable flexibility to set their working hours and to schedule the tasks they perform during the workday.

You state that the "sales force" loan officers are "customarily and regularly" engaged away from the employer's place of business and offices in their homes. The "sales force" loan officers spend some time in their employer's office taking loan applications, attending meetings, completing paperwork, and preparing marketing and sales materials in support of their own sales efforts. Additional activities that may be performed at the employer's place of business or the employees' home offices include: checking and bringing databases of loan products for sale and referral services up to date; calling, writing to, or communicating by e-mail with clients or prospects with whom the "sales force" loan officers have been dealing during their outside sales activities; talking to such clients or prospects in the office about their particular loan transactions; calling, writing to, or communicating by e-mail with lists of prospective clients, loan product vendors, and referral sources with whom the "sales force" loan officers may not have had prior contact; and preparing loan applications and other forms for loan sales initiated or negotiated by the "sales force" loan officers during outside sales activities.

Section 13(a)(1) of the FLSA provides an exemption from the minimum wage and overtime requirements of the Act for "any employee employed . . . in the capacity of outside salesman." The Department's regulations define that statutory phrase as including "any employee":

    (1)  Whose primary duty is:

        (i)   making sales within the meaning of section 3(k) of the Act, or

        (ii)  obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

    (2)  Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

 **U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

29 C.F.R. § 541.500 (copy enclosed). "Primary duty" means "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700 (copy enclosed). FLSA section 3(k) defines "sale" as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." *See also* 29 C.F.R. § 541.501 (copy enclosed).

Under 29 C.F.R. § 541.701 (copy enclosed), "[t]he phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."

The regulations provide further guidance regarding what it means to be "engaged away from the employer's place of business" for purposes of 29 C.F.R. § 541.500. "The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls." 29 C.F.R. § 541.502 (copy enclosed). Outside sales employees may perform promotional work as an exempt outside sales activity if it "is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations." 29 C.F.R. § 541.503 (copy enclosed). Whether promotional work is to be considered exempt is determined on a case-by-case basis. *Id .*

It is the position of the Wage and Hour Division that employees of finance companies who obtain and solicit mortgages may be exempt outside sales employees if they are "customarily and regularly engaged away from their employer's place of business in obtaining mortgages from brokers and individuals." Field Operations Handbook (FOH) § 22e02 (copy enclosed). "Work incidental to the employee's obtaining the mortgage, such as obtaining credit information from the mortgagor, before and after the sale would qualify as exempt work if done with respect to [the employee's] own sales." *Id.*

Your letter also refers to FOH § 22e06 (copy enclosed), which lists several activities that real estate sales employees may perform at the employer's place of business in conjunction with outside sales work without losing the outside sales exemption. These activities include:

1. Bringing a multiple listing book up to date;

2. Calling prospects with whom the sales employee has been dealing during outside sales activities;

3. Dictating or writing letters to such prospects;

4. Talking to such prospects in the office about their particular transactions;

5. Calling a list of prospective buyers or sellers of homes with whom the sales employee has had no prior contact;

6. Preparing a contract and other forms required for a sale negotiated during the sales employee's outside sales activity; and

7. Talking to a "walk-in" prospect with whom the employee has had no prior contact and showing photographs and discussing terms on specific houses, if such activity results in subsequent outside sales activity with the prospect.



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

*Id.* You suggest that these duties are analogous to the tasks performed by the "sales force" loan officers while at their employer's place of business or their home office. For purposes of this letter, "employer's place of business" includes the employee's home office, because "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property." 29 C.F.R. § 541.502.

Based on the information you have provided, the "sales force" loan officers appear to meet the requirements for the outside sales exemption. First, the "sales force" loan officers fulfill the sales requirement of the exemption. Their principal duty is the sale of mortgage loan packages. According to WH Opinion Letter January 15, 1971 (copy enclosed), "an employee who actually obtains an application for . . . a loan would be engaged in exempt work; the consideration . . . being the . . . interest paid for the amount loaned." Therefore, the sale of mortgage loan packages meets the definition of sales in section 3(k) of the FLSA. *See* FOH § 22e02.

Second, whether "sales force" loan officers are "customarily and regularly engaged away from the employer's place of business" depends on the extent to which they engage in sales or solicitations, or related activities, outside of the employer's place or places of business. By meeting clients outside of the employer's place of business in order to initiate sales, such as at the clients' homes, the "sales force" loan officers fulfill the "outside" requirement of the outside sales exemption. Activities employees perform that are incidental to their outside sales or solicitations also qualify as exempt outside sales work, but only if the incidental activity is in support of their own sales and not just generally "directed towards stimulating the sales of [the] company." 69 Fed. Reg. 22,160, 22,163 (Apr. 23, 2004) (copy enclosed). *See also* 29 C.F.R. §§ 541.500(b) and 541.503. In addition, the frequency of performing qualifying exempt outside sales activities must "normally and recurrently [be] performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701. This type and frequency of exempt outside sales activity is implicit in your representation that "sales force" loan officers "perform their work primarily outside the office." Of course, "sales force" loan officers who do not engage in outside sales activity as a normal and recurrent part of their workweek fail to meet the exemption's requirements.

Finally, the "sales force" loan officers may qualify for the outside sales exemption even though they may perform some activities at their employer's place of business, so long as the inside sales activity is incidental to and in conjunction with qualifying outside sales activity. *See Olivo v. GMAC Mortgage Co.,* 374 F. Supp. 2d 545, 551 (E.D. Mich. 2004). The performance of activities related to the sales of mortgage loan packages made outside the employer's place of business does not disqualify the "sales force" loan officer from the exemption. Activities such as making phone calls, sending e-mails, and meeting with clients in the office are considered exempt if performed incidental to or in conjunction with the "sales force" loan officer's own outside sales activities. 29 C.F.R. § 541.503; FOH § 22e02.

Therefore, although each "sales force" loan officer must be evaluated on an individual basis to determine whether he or she qualifies for the outside sales exemption, those employees whose job duties match the duties described above would be exempt from the minimum wage and overtime requirements of the FLSA.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

 **U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

We trust that this letter is responsive to your inquiry.

Sincerely,

Alfred B. Robinson, Jr.
Acting Administrator

Enclosures:
29 C.F.R. §§ 541.500-.503
29 C.F.R. § 541.700-.701
69 Fed. Reg. 22,160, 22,163 (Apr.23, 2004)
FOH §§ 22e02, 22e06
WH Opinion Letter January 15, 1971


\* *Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. § 552(b)(7)*

# EXHIBIT C

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
LISA EVANCHO, et al.,               :
                                    :   CIVIL ACTION NO. 07-2266 (MLC)
         Plaintiffs,                :
                                    :       MEMORANDUM OPINION
    v.                              :
                                    :
SANOFI-AVENTIS U.S. INC., et al.,   :
                                    :
         Defendants.                :
                                    :
```

**COOPER, District Judge**

Plaintiffs, Lisa Evancho, J. Aleth Guiriba, and Patricia
Maki (collectively, "plaintiffs"), bring this action against
defendants, Sanofi-Aventis U.S. Inc. and Sanofi-Aventis U.S. LLC
(collectively, "defendants"), on behalf of themselves and others
similarly situated, asserting violations of, inter alia, (1) the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., (2)
the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 Pa. Const.
Stat. Ann. § 333.01, et seq., (3) Sections 201, 202, 226(a), (b),
226.7, 510, and 1174 of the California Labor Code and applicable
California Industrial Welfare Commission Wage Orders, and (4)
California's unfair competition law, Cal. Bus. & Prof. § 17200,
et seq. (Dkt. entry no. 126, 2d Am. Compl.)[1] Plaintiffs allege
the FLSA claims as a collective action pursuant to 29 U.S.C. §

---

[1] The proper plaintiffs as named in the complaint here are
Lisa Evancho, J. Aleth Guiriba, and Patricia Maki. (See 2d Am.
Comp.) The Court will direct the Clerk of the Court to terminate
the additional plaintiffs listed on the docket and grant
plaintiffs leave to file a Third Amended Complaint naming
additional plaintiffs.

("Section") 216(b), and allege the Pennsylvania and California state-law claims as class actions pursuant to Federal Rule of Civil Procedure ("Rule") 23. (See id.)[2] Plaintiffs now move for conditional collective action certification, Hoffman-LaRoche notice, and equitable tolling as to the FLSA claims. (Dkt. entry no. 121.) Defendants cross-move to strike plaintiffs' Pennsylvania and California state-law class allegations pursuant to Rule 23(d)(4). (Dkt. entry no. 133.) The Court, for the reasons stated herein, will (1) deny the motion for conditional collective action certification, Hoffman-LaRoche notice, and equitable tolling, and (2) grant the cross motion to strike plaintiffs' state-law class allegations.

### BACKGROUND

Defendants are members of a pharmaceutical company. (2d Am. Compl., at ¶ 7.) They employ thousands of pharmaceutical representatives ("PRs") to provide information about and obtain sales of defendants' pharmaceutical products. (Dkt. entry no. 121, Pl. Br., at 4; dkt. entry no. 127, Def. Opp'n Br., at 15.)[3]

_____

[2] Plaintiffs Lisa Evancho and J. Aleth Guiriba also assert claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., as a class action pursuant to Rule 23. (See 2d Am. Compl.) These allegations will not be addressed as they are not relevant to the motions here.

[3] Defendants state that defendant Sanofi-Aventis U.S. Inc. is not a proper defendant, as PRs are employed by defendant Sanofi-Aventis U.S. LLC. (Def. Opp'n Br., at 1 n.1.) But Defendants have not moved to dismiss defendant Sanofi-Aventis U.S. Inc., and the parties have not stipulated to remove that defendant as a defendant in this action. For ease of reference, the Court will use the term "defendants" in this memorandum opinion.

PRs have the job title of "Sales Professional." (Pl. Br., at 4 n.5; Def. Opp'n Br., at 1.)[4] They work in one of four business units, either (1) Internal Medicine, (2) Cardiovascular, (3) Metabolism, or (4) Specialty Products. (Def. Opp'n Br., at 1.) They have various types of clients, including primary care physicians, specialists, and institutional clients. (Id.) They are paid a salary and are eligible for bonuses based on their job performance. (Def. Opp'n Br., at 5.)

PRs work in ninety-nine different regions in the United States. (Def. Opp'n Br., at 4.) Each region consists of approximately eight districts. (Id.) The number of PRs working in each district varies depending on, inter alia, geographic and demographic factors relevant to each district. (Id.) Each region has a Regional Sales Director, and each district has a District Sales Manager. (Id.) The Regional Sales Directors' responsibilities include, inter alia, overseeing the District Sales Managers. (Pl. Br., at 4.) The District Sales Managers' responsibilities include, inter alia, supervising all sales activity throughout their designated region and overseeing the PRs. (Id.)

---

[4] It appears that some PRs have various prefixes to their title of "Sales Professional", including, for example, "Senior", "Executive", "Specialty", "Oncology", or "Medical Center." (Pl. Br., at 4 n.5). Defendants, however, refer to the PRs simply as "Sales Professionals." (See Def. Opp'n Br.)

3

Plaintiff Lisa Evancho has been employed by the defendants as a PR in Pennsylvania since December 2005. (2d Am. Compl., at ¶ 8.) She asserts the Pennsylvania state-law class allegations under the PMWA against defendants pursuant to Rule 23, alleging that defendants, _inter alia_, failed to (1) provide overtime compensation, and (2) maintain accurate time records. (2d Am. Compl., at ¶ 66-74.) Plaintiff J. Aleth Guiriba was formerly employed by the defendants as a PR in California, from 1978 through 2006. (2d Am. Compl., at ¶ 9.) Plaintiff Patricia Maki also was formerly employed by the defendants as a PR in California, from December 2003 to November 2004. (2d Am. Compl., at ¶ 10.) Plaintiffs J. Aleth Guiriba and Patricia Maki allege that defendants violated California law by, _inter alia_, (1) failing to (a) provide overtime compensation, (b) maintain accurate time records, (c) pay for missed meal and rest periods, (d) pay wages due upon the termination of employment, and (e) furnish itemized wage statements, and (2) engaging in unlawful or unfair business acts or practices. (2d Am. Compl., at ¶¶ 75-106.) All three plaintiffs assert the FLSA claims as a collective action against the defendants pursuant to Section 216(b), alleging defendants, _inter alia_, failed to (1) provide overtime compensation, and (2) maintain accurate time records. (_Id._ at ¶¶ 59-65.)

Plaintiffs now move for conditional collective action certification, _Hoffman-LaRoche_ notice, and equitable tolling.

4

(Dkt. entry no. 121.)   Defendants cross-move to strike
plaintiffs' state-law class allegations pursuant to Rule
23(d)(4).   (Dkt. entry no. 133.)

### DISCUSSION

I.  **Plaintiffs' Motion for Conditional Collective Action
    Certification, Hoffman-LaRoche Notice, and Equitable Tolling**

   **A. Conditional Collective Action Certification and Hoffman-
   LaRoche Notice**

   An FLSA action may proceed as a collective action under

Section 216(b) if the potential collective action members are

"similarly situated." 29 U.S.C. § 216(b); Moeck v. Gray Supply

Corp., No. 03-1950, 2006 WL 42368, at *4 (D.N.J. Jan. 6, 2006).

A two-tier test applies when making this determination.  Moeck,

2006 WL 42368, at *4.  The Court first determines whether it

should conditionally certify a collective action and give notice

of the action to potential collective action members at the

notice stage, occurring early in the case.  Id.; Morisky v. Pub.

Serv. Elec. & Gas Co., 111 F.Supp.2d 493, 497 (D.N.J. 2000).  The

Court usually only has minimal evidence before it at this stage,

in the form of pleadings and affidavits submitted by parties.

Morisky, 111 F.Supp.2d at 497.  As such, the Court uses a fairly

lenient standard to determine whether potential collective action

members are similarly situated.  Id.

   Certification at the notice stage, however, is not automatic;

substantial allegations that the putative class members were

together the victims of a single decision, policy, or plan
infected by discrimination are required. Id. Unsupported
assertions of widespread violations are not sufficient. Freeman
v. Wal-Mart Stores, Inc., 256 F.Supp.2d 941, 945 (W.D. Ark.
2003). Plaintiffs must show a factual nexus between their
situation and the situation of other current and former employees
sufficient to determine that they are similarly situated.
Aquilino v. Home Depot, Inc., No. 04-4100, 2006 WL 2583563, at *2
(D.N.J. Sept. 7, 2006). There must be a basis to conclude that
questions common to a potential group of plaintiffs would
predominate a determination of the merits in the case. Mike v.
Safeco Ins. Co. of Am., 274 F.Supp.2d 216, 220 (D. Conn. 2003).

   The Court makes a second determination after discovery is
nearly complete and the case is ready for trial. Morisky, 111
F.Supp.2d at 497. At this stage, the Court has more information
before it, and thus applies a stricter standard to determine
whether the collective action members are "similarly situated"
and thus can proceed to trial as a collective action. Moeck,
2006 WL 42368, at *4; Morisky, 111 F.Supp.2d at 497.

   A motion for conditional class certification may be denied,
however, even under the less strict standard applied at the
notice stage, if plaintiffs allege that potential collective
action members are similarly situated because they were
improperly classified by their employer as exempt from the FLSA.

See <u>Aguirre v. SBC Commc'ns, Inc.</u>, No. 05-3198, 2006 WL 964554, at *7 (S.D. Tex. Apr. 11, 2006). Employees' status under the FLSA may vary, even if they have the same job title, if their job responsibilities and duties differ among each other. See <u>id.</u>; <u>Diaz v. Elecs. Boutique of Am., Inc.</u>, No. 04-0840, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005). This is because such differences are relevant to the statutory criteria of the FLSA exemptions. See <u>Aguirre</u>, 2006 WL 964554, at *7; <u>Diaz</u>, 2005 WL 2654270, at *4.

Potential collective action members, thus, are not "similarly situated" as to FLSA status when that status may differ depending on their job responsibilities and duties. See, e.g., <u>Aguirre</u>, 2006 WL 964554, at *7 (denying motion for conditional certification because differences among potential plaintiffs' job responsibilities and duties predominated over similarities); <u>Diaz</u>, 2005 WL 2654270, at *4 (denying motion for conditional certification because plaintiff was not similarly situated to others with same job title, as job responsibilities differed); <u>Reich v. Homier Distrib. Co., Inc.</u>, 362 F.Supp.2d 1009, 1013-15 (N.D. Ind. 2005) (denying motion for conditional certification because plaintiff and potential collective action members were not similarly situated, as application of FLSA exemption would depend on each employee's specific duties).

This case is at the notice stage as little discovery has taken place. (Pl. Br., at 2; Def. Opp'n Br., at 1.) Plaintiffs argue that notice-stage certification and dissemination of notice is appropriate here because PRs have (1) the same primary job duty, and (2) been classified by defendants as exempt from the FLSA. (Pl. Br., at 12-14.) Defendants contend that all PRs are not "similarly situated" as to a uniform illegal policy, because they fall within either the "outside sales" or "administrative" exemption to the FLSA. (Def. Opp'n Br., at 15-40.)

The FLSA exempts "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). An employee meets this exemption when, <u>inter alia</u>, that employee's "primary duty" consists of "making sales." 29 C.F.R. § 541.500. Whether an employee is engaged in "making sales" within the meaning of this exemption is a fact-intensive inquiry dependent on each employee's job responsibilities and duties. <u>Nielsen v. Devry, Inc.</u>, 302 F.Supp.2d 747, 756 (W.D. Mich., 2003) ("[i]n deciding whether an employee is an outside salesperson, the Court must look beyond labels and descriptions and also inquire into the particular facts of the actual work performed.") Plaintiffs argue that "visiting medical professionals to deliver sanofi-aventis product information", does not constitute a "primary duty" of "making sales" in order to fall within this exemption. (Pl. Br., at 12.) Defendants point out, however, that PRs

8

selling dermatological products, for example, are engaged in
"making sales", as they sell pharmaceutical products directly to
physicians, as opposed to only delivering product information.
(Def. Opp'n Br., at 17.)  Whether a particular PR's job
responsibilities and duties consist of "making sales", therefore,
may differ among PRs.  (See id.)

     The administrative exemption exempts any employee "employed
in a bona fide . . . administrative . . . capacity."  29 U.S.C. §
213(a)(1).  An employee meets the administrative exemption when,
inter alia, that employee's "primary duty includes the exercise
of discretion and independent judgment with respect to matters of
significance."  29 C.F.R. § 541.200(a)(3).  Plaintiffs contend
that the "duty to deliver pre-approved product information to
medical professionals using pre-approved means" does not satisfy
this requirement in order to exempt PRs as administrative
employees.  (Pl. Br., at 12-13.)  For example, plaintiffs state
that their work is "closely monitored and directed", and that
they are "required to adhere closely to written materials
provided to [them] by [their employer] when [speaking] with
medical professionals."  (Dkt. entry no. 121, Decl. of Lisa
Evancho, at ¶ 6; dkt. entry no. 121, Decl. of Aleth Guiriba, at ¶
6; dkt. entry no. 121, Decl. of Patricia Maki, ¶ 6.)

     Some of defendants' declarations, however, suggest that this
is not accurate for other PRs.  (See, e.g., dkt. entry no. 127,

9

Decl. of Susan Zanetti, at ¶ 3 (stating that "[w]hile there are guidelines as to when we should be in the field, no one on any given day tells me when I must be at work or doing anything in particular"); dkt. entry no. 127, Decl. of Jennifer Walker, at ¶ 7 (stating that "[i]t would be impossible to follow a script [when visiting a client] given the need to adapt to the particular circumstances of each visit"); dkt. entry no. 127, Decl. of Justin Mott, at ¶¶ 5, 7 (stating that "I am not required to adhere strictly to [Sanofi-Aventis's] recommendations" and "I am free to discuss with physicians whatever topics I feel are appropriate").)[5] Whether PRs' job responsibilities and duties involve the exercise of discretion and judgment, therefore, may differ among PRs.  (See id.)

    While the Court need not reach the merits of these exemption arguments at this point, these differences between various PRs' descriptions of their job responsibilities and duties show that status under the FLSA may vary among plaintiffs and potential collective action members.  See Aguirre, 2006 WL 964554, at *7; Diaz, 2005 WL 2654270, at *4.  Thus, at this juncture, it appears that plaintiffs are not "similarly situated" to potential collective action members as to their status under the FLSA, so

_____

    [5] Plaintiffs have objected to the declarations submitted by defendants in opposition to plaintiffs' motion.  (Dkt. entry no. 153.)  The Court has considered these objections and finds them to be without merit.

conditionally certifying a collective action pursuant to Section
216(b) would be inappropriate.  See Aguirre, 2006 WL 964554, at
*7; Diaz, 2005 WL 2654270, at *4.  Further, as the Court is
denying plaintiffs' motion for conditional collective action
certification, it will not facilitate notice to potential
collective action members.

   B. Equitable Tolling

   The statute of limitations under the FLSA is not tolled
until an individual party plaintiff files written consent to join
the action.  29 U.S.C. § 256.  As such, even if a complaint
alleging FLSA claims as a collective action is filed, a potential
collective action member's claims will not be tolled unless that
claimant files written consent to join the action.  Id.; see also
Perella v. Colonial Transit, Inc., 148 F.R.D. 147, 149 (W.D. Pa.
1991) ("[A] claim is not asserted, for purposes of the statute of
limitations, until both the complaint and the claimant's
individual written consent are filed.")  Some courts, as a
result, when granting a motion for conditional collective action
certification, have equitably tolled the statute of limitations
for potential collective action members when they have been
unable to join the action through no fault of their own.  See,
e.g., Baldozier v. Am. Family Mut. Ins. Co., 375 F.Supp.2d 1089,
1093 (D. Colo. 2005); Adams v. Inter-Con Sec. Sys., Inc., 242
F.R.D. 530, 543 (N.D. Cal. 2007).  The Court here, however,

intends to deny the motion for conditional collective action certification, as discussed supra. As such, it will not equitably toll the FLSA claims as to unknown prospective claimants because plaintiffs have not shown there are potential collective action members similarly situated to the plaintiffs for whom equitable tolling may be justified.[6]

## II. Defendants' Cross Motion to Strike Plaintiffs' State-Law Class Allegations

Plaintiffs alleging violations of the FLSA may proceed in a collective action pursuant to Section 216(b), as discussed supra. Any individual who wishes to become a member of such a collective action, however, must affirmatively consent, or opt-in, to join the action. 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); Moeck, 2006 WL 42368, at *4. "Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." Moeck, 2006 WL 42368, at *5.

---

[6] Equitable tolling is appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has timely asserted rights mistakenly in the wrong forum. Genarie v. PRD Mgmt., Inc., No. 04-2082, 2006 WL 436733, at *15 (D.N.J. Feb. 17, 2006).

12

State law class actions brought pursuant to Rule 23, by contrast, include all putative class members in the class action unless those individuals expressly state otherwise, or opt-out of the action.   Fed.R.Civ.P. 23(c)(2)(B); Hyman v. WM Fin. Servs., Inc., No. 06-4038, 2007 WL 1657392, at *2 (D.N.J. June 7, 2007).   FLSA plaintiffs may not certify a class under Rule 23; they must proceed as an opt-in collective action pursuant to Section 216(b).   De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 306 (3d Cir. 2003).

Plaintiffs here are attempting to bring both an FLSA "opt-in" collective action and state-law Rule 23 "opt-out" class actions, both based on claims related to defendants' failure to provide overtime compensation to PRs.   (Dkt. entry no. 156, Pl. Opp'n Br., at 2.)   Plaintiffs, however, are not permitted to "circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA", as this would "undermine Congress's intent to limit these types of claims to collective actions."   See Moeck, 2006 WL 42368, at *5; see also Otto v. Pocono Health Sys., 457 F.Supp.2d 522, 524 (M.D. Pa. 2006) (granting defendants' motion to dismiss plaintiffs' PMWA claims when plaintiffs also alleged violations of the FLSA because "[t]o allow [a] Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in

crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement"); Himmelman v. Cont'l Cas. Co., No. 06-166, 2006 WL 2347873, at *1-*2 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss plaintiff's state-law class allegations relating to overtime compensation under Rule 23 as legally incompatible with FLSA collective action); Herring v. Hewitt Assocs., Inc., No. 06-267, 2006 WL 2347875, at *1-*2 (D.N.J. Aug. 11, 2006) (same).  Therefore, even if, assuming arguendo, jurisdiction exists here for the state-law claims, plaintiffs cannot simultaneously bring a Rule 23 state-law class action and an FLSA collective action for overtime compensation. See Moeck, 2006 WL 42368, at *5.[7]

---

[7] Defendants argue that allowing plaintiffs' FLSA opt-in collective action and state-law opt-out class action to proceed together would violate the Rules Enabling Act.  (Def. Br., at 11-16.)  The Court need not address this argument, but notes that several courts confronted with this argument have rejected it. See, e.g., Lehman v. Legg Mason, Inc., No. 06-2484, 2007 WL 2768519, at *4-*5 (M.D. Pa. Sept. 20, 2007) (holding that Rules Enabling Act does not preclude FLSA collective actions and state-law class actions to proceed together); Westerfield v. Wash. Mut. Bank, No. 06-2817, 2007 WL 2162989, at *1-*2 (E.D.N.Y. July 26, 2007) (same); Klein v. Ryan Beck Holdings, Inc., No. 06-3460, 2007 WL 2059828, at *5-*7 (S.D.N.Y. July 13, 2007) (same); Farhy v. Janney Montgomery Scott, LLC, Nos. 06-3202 & 06-3969, 2007 WL 1455764, at *1 (E.D. Pa. Apr. 26, 2007) (same).

## CONCLUSION

The Court, for the reasons stated _supra_, will (1) deny the motion for conditional collective action certification, _Hoffman-LaRoche_ notice, and equitable tolling, and (2) grant the cross motion to strike. The Court will issue an appropriate order.


                                        ____s/ Mary L. Cooper_____
                                        **MARY L. COOPER**
                                        United States District Judge

**Dated:** December 18, 2007

15

# EXHIBIT D

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



U.S. Wage and Hour Division
(November 2007)

# Fact Sheet #17F:  Exemption for Outside Sales Employees Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information on the exemption from minimum wage and overtime pay provided by Section 13(a)(1) of the Fair Labor Standards Act as defined by Regulations, 29 CFR Part 541.

The FLSA requires that most employees in the United States be paid at least the federal minimum wage for all hours worked and overtime pay at time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek.

However, Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as bona fide executive, administrative, professional and outside sales employees.  Section 13(a)(1) and Section 13(a)(17) also exempt certain computer employees.  To qualify for exemption, employees generally must meet certain tests regarding their job duties and be paid on a salary basis at not less than $455 per week.  Job titles do not determine exempt status.  In order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the Department's regulations.

See other fact sheets in this series for more information on the exemptions for executive, administrative, professional, and computer employees, and for more information on the salary basis requirement.

## Outside Sales Exemption

To qualify for the outside sales employee exemption, all of the following tests must be met:

- The employee's primary duty must be making sales (as defined in the FLSA), or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
- The employee must be customarily and regularly engaged away from the employer's place or places of business.

The salary requirements of the regulation do not apply to the outside sales exemption.  An employee who does not satisfy the requirements of the outside sales exemption may still qualify as an exempt employee under one of the other exemptions allowed by Section 13(a)(1) of the FLSA and the Part 541 regulations if all the criteria for the exemption is met.

### Primary Duty
"Primary duty" means the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

### Making Sales
"Sales" includes any sale, exchange, contract to sell, consignment for sales, shipment for sale, or other disposition.  It includes the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property.

### Obtaining Orders or Contracts for Services or for the Use of Facilities

Obtaining orders for "the use of facilities" includes the selling of time on radio or television, the solicitation of advertising for newspapers and other periodicals, and the solicitation of freight for railroads and other transportation agencies. The word "services" extends the exemption to employees who sell or take orders for a service, which may be performed for the customer by someone other than the person taking the order.

### Customarily and Regularly

The phrase "customarily and regularly" means greater than occasional but less than constant; it includes work normally done every workweek, but does not include isolated or one-time tasks.

### Away from Employer's Place of Business

An outside sales employee makes sales at the customer's place of business, or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property.

### Promotion Work

Promotion work may or may not be exempt outside sales work, depending upon the circumstances under which it is performed. Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work. However, promotion work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work.

### Drivers Who Sell

Drivers who deliver products and also sell such products may qualify as exempt outside sales employees only if the employee has a primary duty of making sales. Several factors should be considered in determining whether a driver has a primary duty of making sales, including a comparison of the driver's duties with those of other employees engaged as drivers and as salespersons, the presence or absence of customary or contractual arrangements concerning amounts of products to be delivered, whether or not the driver has a selling or solicitor's license when required by law, the description of the employee's occupation in collective bargaining agreements, and other factors set forth in the regulation.

### Where to Obtain Additional Information

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

When the state laws differ from the federal FLSA, an employer must comply with the standard most protective to employees. Links to your state labor department can be found at www.dol.gov/esa/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

U.S. Department of Labor                                    1-866-4-USWAGE
Frances Perkins Building                                    TTY: 1-866-487-9243
200 Constitution Avenue, NW                                 **Contact Us**
Washington, DC 20210