## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------------- x | |
| In re: | : Chapter 11 |
| | : |
| AMERICAN HOME MORTGAGE HOLDINGS, | : Case No. 07-11047 (CSS) |
| INC., a Delaware corporation, et al.,[1] | : |
| | : Jointly Administered |
| Debtors. | : |
| | : Hearing Date: January 14, 2008 at 2:00 p.m. (ET) |
| | : Objection Deadline: January 7, 2008 at 4:00 p.m. (ET) |
| ------------------------------------------------------- x | |

### DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a), 328(a) AND 330(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MULDOON MURPHY & AGUGGIA LLP AS SPECIAL COUNSEL, *NUNC PRO TUNC* TO DECEMBER 15, 2007

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), respectfully

represent as follows:

### SUMMARY OF RELIEF REQUESTED

1.      By this application (the "Application"), the Debtors request that this Court

enter an order pursuant to sections 327(a), 328(a) and 330(a) of title 11 of the United States

Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the employment and retention of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Muldoon Murphy & Aguggia LLP ("Muldoon", or the "Firm") as special counsel to the Debtors, *nunc pro tunc* to December 15, 2007, in connection with the Debtors' sale of American Home Bank (the "Thrift").

## STATUS OF CASE AND JURISDICTION

2.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007. No trustee or examiner has been appointed.

4.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C.§ 157(b)(2) Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a), 328(a) and 330(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## GENERAL BACKGROUND

### A.      The Debtors' Business

5.      Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and

066585.1001

primarily made loans to borrowers with good credit profiles.  Most of its portfolio consisted of

securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

**B.**      **Events Leading to the Chapter 11 Filing**

        6.     In the weeks prior to the Petition Date, an unprecedented disruption in the

credit markets caused major write-downs of the Debtors' loan and security portfolios and

consequently resulted in margin calls for hundreds of millions of dollars with respect to the

Debtors' loans.  During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and

threatening AHM's continued viability.

        7.     The Debtors' inability to originate loans and the exercise of remedies by

certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the

Debtors to discontinue their retail and indirect loan origination business.  As a result, on August

3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination

of over 6,500 employees.  The Debtors now employ or contract approximately 650 persons who

are absolutely essential to the Debtors' continued operations, although that number is expected to

decline as various wind-up tasks are completed and the Debtors' remaining assets are sold.

        8.     In the wake of these events, the Debtors, assisted by counsel and

professional advisors, sought alternative funding sources and capital infusions.  Additionally, the

Debtors engaged in efforts to sell their businesses and assets, including, but not limited to, loans

owned by the Debtors, residual mortgage-backed securities in securitization trusts and "scratch

and dent" loans, to financial and strategic investors.

        9.     Unfortunately, in the short time available and given the severe financial

pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity

3

crisis outside the bankruptcy forum and, accordingly, filed these chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## C.    The Liquidation Process

10.    Since the Petition Date, the sale of the Debtors' mortgage servicing business (the "Servicing Business") had been a focus of the Debtors' efforts to maximize value for their creditors.  By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), after a five-day hearing, this Court approved the sale (the "Servicing Sale") of the Servicing Business to AH Mortgage Acquisition Co., Inc. (the "Purchaser") for a purchase price estimated to be $450-500 million.  The Servicing Sale will be closed in two steps - an initial (or economic) closing that has already occurred and a final closing anticipated to occur on or prior to September 30, 2008.

11.    In addition to the Servicing Sale, the Debtors have successfully completed separate sales of certain servicing rights, certain mortgage loans and other miscellaneous assets.

## RELEVANT BACKGROUND

12.    The Thrift is a non-debtor subsidiary of AHM Holdings that conducts certain banking services.  The Thrift was acquired by the Debtors in October of 2006 and operates from one branch located in Chicago, Illinois.  The Thrift provides branch and web-based services to its clients and offers its clients both deposit accounts and loan financing.  As of August 31, 2007, the Thrift had sixteen full-time employees.

13.    The contemplated sale of the Thrift (the "Thrift Sale") involves special and complex regulatory matters related to the interpretation and application of the federal banking and acquisition of control laws.  In addition to the interpretation and application of these federal laws and regulations, the Debtors will need the advice and analysis of experienced

4

counsel as it relates to the application and interpretation of these laws as they may arise under various circumstances contemplated by the Thrift Sale.  Accordingly, the Thrift Sale will require counsel who is familiar with the federal banking and acquisition of control laws and the processes and procedures of the regulatory agencies that oversee the Thrift, the Office of Thrift Supervision (the "OTS") and the Federal Deposit Insurance Company (the "FDIC").

14.    To that end, the Debtors initiated a post-petition search for a special counsel to assist in the disposition of the Thrift.  In connection therewith, the Debtors contacted Muldoon to assist in their efforts.  On or about December 15, 2007, the Debtors and Muldoon reached an agreement regarding Muldoon's retention and employment by the Debtors, the terms of which are set forth in the engagement letter (the "Engagement Letter"), attached hereto as Exhibit A.

## RELIEF REQUESTED AND REASONS THEREFOR

15.    By this Application, the Debtors seek to employ and retain Muldoon, effective as of December 15, 2007, under the terms of the Engagement Letter, substantially in the form attached hereto, as special counsel ("Special Counsel") to perform legal services in connection with the Thrift Sale as described below.  In support of this Application, the Debtors also submit the Declaration of Christina M. Gattuso (the "Gattuso Declaration"), attached hereto as Exhibit B.  Muldoon will not advise the Debtors regarding bankruptcy matters.

16.    The Debtors seek to retain Muldoon as Special Counsel because of Muldoon's vast experience in corporate and financial transactions, including regulatory banking matters.  This extensive experience in handling complex transactional matters makes Muldoon specially suited to deal effectively with many of the potential legal issues that may arise in connection with the Thrift sale.  Accordingly, Muldoon is well qualified to serve as Special

066585.1001

Counsel to the Debtors pursuant to section 327(a) of the Bankruptcy Code. The Debtors further request, as Muldoon has been employed by and counseling the Debtors since December 15, 2007, that the Court's order approving Muldoon's retention be entered *nunc pro tunc* as of that date.

17.    In addition, the attorney in charge of this engagement is Paul M. Aguggia. Mr. Aguggia focuses his practice on corporate and securities matters, regulatory matters, and mergers and acquisitions, with a particular focus on representing financial institutions. Mr. Aguggia and other attorneys at Muldoon have served as counsel and provided advice regarding regulatory matters to parties on both sides of transactions involving the acquisition of control of banking institutions.

18.    As a result of their work with the Debtors since December 15, 2007, Muldoon has become familiar with the Thrift, the Debtors' business, and the relevant regulatory issues which may arise. Accordingly, the Debtors believe that Muldoon's retention as Special Counsel to assist in these regulatory matters is in the best interest of their estates, their creditors and other parties in interest.

A.    **Disclosures and Disinterestedness**

19.    As set forth more fully in the Gattuso Declaration, Muldoon has represented, currently represents, and will continue to represent entities that are claimants of, or interest holders in the Debtors, in matters completely unrelated to the Debtors or the Debtors' pending chapter 11 cases as set forth in the Gattuso Declaration. Muldoon has not, does not, and will not represent any entities or any of their respective affiliates or subsidiaries, in matters related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases.

6

**B.    Services to be Provided[2]**

20.    The Debtors respectfully request entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) authorizing them to employ and retain Muldoon as Special Counsel to provide services in connection with the Thrift Sale, which include, but are not limited to:

a)    Providing information and advising AHM with respect to the interpretation and application of the federal banking laws and regulations, including those relating to the acquisition of control of the Thrift;

b)    Reviewing and providing advice to AHM with respect to the federal acquisition of control laws and regulations as applied to specific circumstances, including an analysis of any regulatory interpretations that might apply to such circumstances; and

c)    Preparing and reviewing, if requested, any regulatory notices or applications that may be required to facilitate the Thrift Sale and will serve as AHM's liaison with the banking regulators, including the OTS and the FDIC.

**C.    Payment of Fees and Expenses**

21.    Subject to Court approval under section 330(a) of the Bankruptcy Code, compensation will be payable to Muldoon on an hourly basis, plus reimbursement of actual, necessary expenses and other changes incurred by the Firm.  As is the case with respect to rates charged in non-bankruptcy matters of this type, Muldoon's rates are subject to periodic adjustment to reflect economic and other conditions.  Currently, the hourly rates of attorneys at

---

[2]    The summary of services to be provided by Muldoon are qualified in their entirety by the Engagement Letter.  If there are inconsistencies between the summary provided herein and the Engagement Letter, the Engagement Letter shall govern.

Muldoon range from $215 to $495.  The hourly rates charged for Muldoon's paralegals range from $160 to $180.

22.    The hourly rates of the primary attorneys from Muldoon assigned to this matter are as follows:

- Paul M. Aguggia        $495
- Christina M. Gattuso   $415
- Kelli Provenzano       $215

23.    The Firm estimates that its fee (excluding disbursement and other charges) for the services described in this Application will be $75,000.  However, such amount is meant only as an estimate, and the Firm provides no guarantees as to the total amount of its fees in these cases.  This fee is based on the acquisition process proceeding in an expeditious manner and not encountering significant unforeseen or unusual delays or issues.  If, at any time during the Firm's representation, the scope of its services is materially expanded because of unanticipated issues or complications, additional revisions to the documentation occasioned by significant or repeated changes in the Thrift Sale, substantial delays in the consummation of the Thrift Sale due to regulatory matters or market conditions, or for any other reason the Firm determines that its fee quote will be exceeded, the Firm will notify the Debtors and consult with the Debtors regarding the same.

24.    The Firm's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time.  It is Muldoon's policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's case.  The expenses

charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals" and telecopier charges. The firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its other clients. Muldoon believes that it is appropriate to charge these expenses to the particular client rather than increasing the hourly rates and spreading the expenses among all clients. Muldoon has received no fees from the Debtors and holds no retainer.

25.     The Debtors desire to retain Muldoon to provide the services set forth above and believe that the retention and employment of Muldoon pursuant to the terms set forth in the Engagement Letter is necessary and in the best interest of their estates, their creditors and other parties in interest.

## NOTICE

26.     Notice of this Motion will be given to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 10, 2006; (iv) counsel to the DIP Lender; and (v) all parties entitled to notice under Delaware Bankruptcy Local Rule 2002-1(B). The Debtors submit that, under the circumstances, no further notice is required.

27.     No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto (i) authorizing the retention of Muldoon as Special Counsel pursuant ot the terms of the Engagement Letter substantially in the form attached hereto and (ii) granting such other and further relief as the Court deems just and proper.

Dated: December 28, 2007    YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
    Wilmington, Delaware

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------- x

In re:                                                                  :       Chapter 11
                                                                        :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                                   :       Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                                       :
                                                                        :       Jointly Administered
        Debtors.                                                        :
                                                                        :       **Ref. Docket No. _____**
---------------------------------------------------------------------- x

### ORDER PURSUANT TO SECTIONS 327(a), 328(a) AND 330(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) AUTHORIZING THE RETENTION AND EMPLOYMENT OF MULDOON MURPHY & AGUGGIA LLP AS SPECIAL COUNSEL, *NUNC PRO TUNC* TO DECEMBER 15, 2007

Upon consideration of the application of the above-captioned debtors and debtors in possession (the "Debtors") for an order authorizing the retention and employment of Muldoon Murphy & Aguggia LLP ("Muldoon", or the "Firm") as special counsel to the Debtors in connection with the Debtors' sale of American Home Bank (the "Thrift"), *nunc pro tunc* to December 15, 2007 (the "Application")[2]; and the Court having reviewed the Gattuso Declaration attached to the Application as Exhibit B; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and that Muldoon's retention and employment is necessary and is in the best interests of the Debtors, their estates and their creditors; and that Muldoon is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] All capitalized terms not herein defined shall have the same meaning as ascribed to them in the Application.

as required by section 327(a) of the Bankruptcy Code; and that due and adequate notice of the

Application having been given under the circumstances; and upon due deliberation and sufficient

cause appearing therefore, it is hereby

ORDERED that the Application is granted and approved; and it is further

ORDERED that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code,

the Debtors, as debtors in possession, are authorized to employ and retain Muldoon as Special

Counsel to the Debtors in connection with the Thrift Sale, *nunc pro tunc* to December 15, 2007,

pursuant to the terms and conditions substantially set forth in the Engagement Letter, as modified

by this Order, and in accordance with Muldoon's normal hourly rates and disbursement policies

as set forth in the Gattuso Declaration; and it is further

ORDERED that, notwithstanding the Engagement Letter, Muldoon shall be

compensated in accordance with the procedures set forth in sections 330 and 331 of the

Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the court, guidelines

established by the Office of the United States Trustee, and such other procedures as may be fixed

by order of this Court; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters,

claims, rights or disputes arising from or related to the implementation of this Order.

Dated:     January ____, 2008
        Wilmington, Delaware             _____
                                     Christopher S. Sontchi
                                     United States Bankruptcy Judge

2

## EXHIBIT A

**Engagement Letter**

December ___, 2007

**Via Email and Federal Express**

Alan Horn, Esq.
General Counsel
American Home Mortgage Holdings, Inc.
520 Broadhollow Road
Melville, New York 11747

Dear Mr. Horn:

This letter sets forth the terms of an engagement whereby our firm would provide regulatory advice to American Home Mortgage Holdings, Inc. ("AHM"), as a debtor and debtor-in-possession, with respect to the proposed sale of AHM's thrift subsidiary, American Home Bank, FSB (the "Bank").

### 1.    Scope of Representation.

As special counsel, we will provide information and advice to AHM with respect to the interpretation and application of the federal banking laws and regulations, including those relating to the acquisition of control of the Bank. We will also review and provide advice to AHM with respect to the federal acquisition of control laws and regulations as applied to specific circumstances, including an analysis of any regulatory interpretations that might apply to such circumstances. To the extent requested by AHM, we would prepare or review any regulatory notices or applications that may be required to facilitate the sale of the Bank and will serve as AHM's liaison with the banking regulators, including the Office of Thrift Supervision and Federal Deposit Insurance Corporation.

### 2.    Staffing.

Christina M. Gattuso and I will be the primary attorneys overseeing this matter. Other attorneys and paralegals of the firm will provide assistance as necessary.

Alan Horn, Esq.
December ___, 2007
Page 2

### 3.    Fees and Expenses.

Our time will be billed on an hourly basis at rates that range from $215 to $495 per hour for attorneys and $160 to $180 per hour for paralegals. These rates are subject to adjustment annually. We will bill you monthly for the professional services rendered each month. It is our understanding that you will agree to pay such amounts promptly upon receipt of the invoice.

We estimate that our fee (excluding disbursements and other charges) for the services described herein would be $75,000. Our fee is based on the acquisition process proceeding in an expeditious manner and not encountering significant unforeseen or unusual delays or issues. If, at any time during our representation, the scope of our services is materially expanded because of unanticipated issues or complications, additional revisions to the documentation occasioned by significant or repeated changes in the proposed transaction, substantial delays in the consummation of an acquisition due to regulatory matters or market conditions, or for any other reason, we determine that our fee quote will be exceeded, we will so notify and consult with you.

We will also bill for reimbursement on a monthly basis for any expenses we incur in connection with the engagement. These expenses, which are separate and apart from our fees, will typically include, but are not limited to, charges for photocopying, messenger and delivery, air freight, computerized research, travel (including mileage, parking, airfare, lodging, meals and ground transportation), long distance telephone, telecopying and word processing charges. To the extent we directly provide any of these services, we reserve the right to adjust the amount we charge, at any time or from time to time, as we deem appropriate, in light of our direct costs, our estimated overhead allocable to the services, and outside competitive rates.

### 4.    Terms of Representation.

AHM is free at any time to terminate our services for any reason, in which case we will bill AHM for fees and expense disbursements accrued to the date of termination, as well as those fees and expenses disbursements, if any, we incur in ending the relationship.

We reserve the right to withdraw from our representation at any time for good cause, such as failure to pay fees and disbursements promptly, or insistence upon a course of conduct which we believe to be inappropriate or improper. In such an event, AHM will be obligated to pay the fees and disbursements accrued to the date of termination.

Following the conclusion of our representation, we will return to AHM any of its papers that you request. Our own files, including lawyer work product, pertaining to this matter will be retained by the firm. Those files and any of the documents that you do not request us to return to AHM will be kept confidential. In order to minimize unnecessary storage expenses, however, we shall destroy or otherwise dispose of any documents or other materials retained by us five (5) years after the termination of our representation of AHM, unless AHM advises us otherwise in writing.

Alan Horn, Esq.
December ___, 2007
Page 3

* * * * *

     If you are in agreement with the terms and conditions of our representation as set forth in this letter, please sign both copies of this letter where indicated and return a signed copy of the letter to me and retain one copy for your records. If you have any questions about this letter, do not hesitate to contact me.

     We are pleased to have this opportunity to work with you and look forward to a mutually rewarding working relationship.

                    Very truly yours,

                    MULDOON MURPHY & AGUGGIA LLP

                    Paul M. Aguggia

CMG/tmo

cc:    Kevin Nystrom, Esq.
       Kroll Zolfo Cooper

**ACCEPTED:**

**AMERICAN HOME MORTGAGE HOLDINGS, INC.**

By:    _____
       Alan Horn, General Counsel

Date:   _____

308195.doc

## EXHIBIT B

**Declaration in Support of Retention**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------  x
In re:                                              :   Chapter 11
                                                    :
AMERICAN HOME MORTGAGE HOLDINGS,  :   Case No. 07-11047 (CSS)
INC., a Delaware corporation, et al.,¹              :
                                                    :   Jointly Administered
         Debtors.                                   :
                                                    :
----------------------------------------------------  x
```

**DECLARATION OF CHRISTINA M. GATTUSO**
**IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a),**
**328(a) AND 330(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a)**
**FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**MULDOON MURPHY & AGUGGIA LLP AS SPECIAL COUNSEL,**
***NUNC PRO TUNC* TO DECEMBER 15, 2007**

Christina M. Gattuso, hereby declares, under penalty of perjury:

1.      I am a member of the firm of Muldoon Murphy & Aguggia LLP

("Muldoon" or the "Firm"), a law firm with offices at 5101 Wisconsin Avenue, NW, Suite 500

Washington, DC 20016.

2.      I submit this declaration in connection with the application of American

Home Mortgage Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and

debtors in possession (collectively, "AHM" or the "Debtors") to employ and retain Muldoon,

*nunc pro tunc* to December 15, 2007, as Special Counsel to the Debtors ("Special Counsel") in

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

connection with their sale of American Home Bank (the "Application")[2], at its normal hourly rates in effect from time to time, and in accordance with its normal reimbursement policies, pursuant to section 327(a) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and to provide the disclosure required under Rules 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein. I will supplement this declaration if additional information becomes available during the pendency of these cases concerning any relationship between the creditors or interest holders of the Debtors and Muldoon.

### MULDOON'S PRE-PETITION RELATIONSHIP WITH THE DEBTORS

3.    Muldoon has not previously represented the Debtors and is not a creditor or equity holder of the Debtors. Muldoon has not received any retainer from the Debtors.

### MULDOON'S DISCLOSURE PROCEDURES

4.    Muldoon, which employs approximately 28 attorneys, has a large and complex legal practice that encompasses the representation of select financial institutions and commercial corporations, some of which are or may consider themselves to be creditors, equity holders, or other parties in interest in the Debtors' pending chapter 11 cases, or otherwise to have interests in these cases.

5.    In preparing this declaration, I used a set of procedures developed by Muldoon to comply with ethical constraints, including the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") regarding the retention

---

[2] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Application.

of professionals by debtors and statutory committees under the Bankruptcy Code (the "Muldoon Disclosure Procedures"). Pursuant to the Muldoon Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this declaration and to ascertain Muldoon's connection to such parties:

       (a)     Based on the best information currently available, a list of the Debtors' forty (40) largest unsecured creditors as reflected in the Debtors' bankruptcy petitions and related filings, together with a list of its current executive officers and directors, holders of 5% or more of the Debtors' voting securities, and other potentially material adverse parties in interest as of the Petition Date was developed through discussions with senior management of the Debtors and Debtors' counsel (the "Potential Party List"). To the best of my knowledge, the Potential Party List is the most comprehensive of potential claimants against or interest holders in the Debtors currently available. The Debtors may supplement the list and Muldoon will supplement its disclosures herein at the time of such supplements as may be necessary.

       (b)     Muldoon maintains a database containing the name of each current and former client, the name of the parties who are or were related or adverse to such current or former client, and the names of the Muldoon personnel who are or were responsible for current or former matters for such client (the "Database"). Muldoon maintains the Database to include additional entities that become related to current and former clients.

       (c)     Muldoon compared the names included in the Potential Party List to the names in the Database to identify any matches, determine whether such matches are current or former clients and identify the Muldoon personnel responsible for such matters (the "Client Match List").

3

(d)    Using information in the Database and by making specific inquiries of Muldoon personnel, I verified that Muldoon did not represent any entity on the Client Match List in connection with the Debtors or these chapter 11 cases. An attorney under my supervision and I then reviewed the Client Match List and deleted obvious name coincidences. The remaining client connections were compiled for purposes of preparing this declaration.

## MULDOON'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THESE CHAPTER 11 CASES

6.    Muldoon is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that Muldoon, its partners, counsel and associates: (a) are not creditors, equity security holders or insiders of the Debtors; (b) are not and were not, within two (2) years before the date of the filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and (c) does not have an interest materially adverse to the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason, except as otherwise stated herein.

7.    Following the foregoing procedures, entities in the Client Match List in which Muldoon had represented the client in the last three years were reviewed by me or an attorney working under my supervision and from such review it was determined that, in respect of each connection between Muldoon and such parties, Muldoon does not hold or represent an interest that is adverse to the Debtors' estates, except as otherwise stated herein.

8.    To the best of my knowledge and information, the annual fees paid in the past three years to Muldoon by any one of the parties on the Potential Party List did not exceed 1% (one percent) of Muldoon's annual gross revenue for such year.

4

9.      From the Potential Party List, Muldoon currently represents Wilmington Trust Company in connection with providing advice on captive insurance companies and matters related thereto, which are wholly unrelated to the Debtors' and these chapter 11 cases.

10.     Muldoon has not, does not, and will not represent any entity or any respective affiliates or subsidiaries thereof, in matters directly related to the Debtors or their chapter 11 cases or in other matters directly adverse to the Debtors during the pendency of these chapter 11 cases. Muldoon may in the future represent entities that are claimants of, or interest holders in, the Debtors in matters totally unrelated to the Debtors.

11.     As a matter of retention and disclosure policy, Muldoon will continue to apply the Muldoon Disclosure Procedures as additional information concerning entities having a material connection to the Debtors is developed and will file appropriate supplemental disclosures with this Court, if necessary.

12.     Muldoon will work with the Debtors' other counsel to coordinate tasks in matters where any particular firm cannot be adverse to opposing parties and to otherwise ensure there is no duplication of effort.

## MULDOON'S RATES AND BILLING PRACTICES

13.     Subject to Court approval under section 330(a) of the Bankruptcy Code, compensation will be payable to Muldoon on an hourly basis, plus reimbursement of actual, necessary expenses and other changes incurred by the Firm. As is the case with respect to rates charged in non-bankruptcy matters of this type, Muldoon's rates are subject to periodic adjustment to reflect economic and other conditions. Currently, hourly rates of attorneys at Muldoon range from $215 to $495. The hourly rates charged for Muldoon's paralegals range from $160 to $180. Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time.

5

14.    The hourly rates of the primary attorneys from Muldoon assigned to this matter are as follows:

- Paul M. Aguggia          $495
- Christina M. Gattuso      $415
- Kelli Provenzano         $215

15.    Muldoon's disbursement policies pass through all out-of-pocket expenses at actual cost, or at estimated actual cost when the actual cost is difficult to determine. These expenses include facsimiles, toll calls, overtime meals, computerized research, deliveries, court costs, transcript fees, travel, clerk fees, certain secretarial and other overtime expenses, and other expenses.

16.    No promises have been received by Muldoon or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Muldoon has no agreement with any other entity to share with such entity any compensation received by Muldoon or by any such entity.

17.    The Debtors' Application requests approval of its retention of Muldoon as Special Counsel on rates, terms and conditions consistent with what Muldoon charges non-title 11 debtors, namely, prompt payment of its hourly rates as adjusted from time to time and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable. Subject to these terms and conditions, and consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, Muldoon intends to apply for compensation for professional services rendered in these

6

chapter 11 cases at its customary hourly rates and for reimbursement of expenses incurred in connection therewith.

18.    The foregoing constitutes the statement of Muldoon pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

19.    I certify that the foregoing statements are true and correct to the best of my knowledge information and belief.

Washington, DC

December 28, 2007

                                    _____
                                    Christina M. Gattuso
                                    A Member of the Firm

DB02:6455107.5                                    066585.1001