IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al.*, | ) ) ) | Case No. 07-11047 (CSS) |
| | ) | **Hearing Date: January 4, 2008 at 11:00 a.m.** |
| Debtors. | ) | **Objection Deadline: January 3, 2008 at 12:00 p.m.** |

**CITIMORTGAGE, INC.'S LIMITED OBJECTION TO DEBTORS'
MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF
THE BANKRUPTCY CODE APPROVING (A) PROCEDURES FOR AHM
SERVICING'S ENTRY INTO SUBSERVICING AGREEMENTS AND
<u>(B) THE ENTRY INTO ONE OR MORE SUBSERVICING AGREEMENTS</u>
(Docket No. 2525)**

CitiMortgage, Inc. ("CMI") hereby objects, in accordance with Sections 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 4001(a)(1) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Motion of American Home Mortgage Corp., American Home Mortgage Servicing, Inc. and certain affiliates (collectively, the "Debtors" or "AHM") For an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving (A) Procedures for AHM Servicing's Entry into Subservicing Agreements and (B) the Entry into One or More Subservicing Agreements (the "Subservicing Motion") (Docket No. 2525).

CMI objects to the Subservicing Motion because Debtors are seeking a blanket pre-approval to expand their business in ways that are not part of their ordinary course of business, and to enter into additional servicing agreements without providing CMI with further adequate assurances of future performance on the CMI contracts Debtors currently service, all of which violates the Sale Order[1] and is

---

[1]    All terms not defined herein shall have the meanings ascribed to them in the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief (the "Sale Order") [Docket No. 1711] and the Debtors' Omnibus Response

1643125

contrary to Debtors' representations in the Omnibus Response they filed addressing the various objections to their proposed sale of the servicing business. Compounding these problems, Debtors propose to undertake these new responsibilities without notice to the counterparties under the other servicing agreements they have committed to honor.

Although Debtors are currently able to operate the assumed and assigned loan servicing business with AHM Servicing's remaining workforce – a workforce that was initially reduced prepetition because of Debtors' precarious financial standing – it is not at all clear whether Debtors can perform equally as well if they take on additional loan servicing responsibilities. Thus, before Debtors undertake work on additional servicing contracts, they must provide further adequate assurances of future performance to CMI by commencing a review of the current workforce to determine whether those employees can handle additional subservicing contracts without affecting the service Debtors must provide on CMI's existing servicing agreements. Section 365(f) of the Bankruptcy Code, Section 6.2(g) of the APA and CMI's assumed servicing agreements require that action. *See infra.*

CMI also objects to Debtors' Subservicing Motion to the extent that it limits too narrowly the "key constituencies" that are to receive notice and be involved in the approval procedures for the purchase of proposed subservicing agreements. Indeed, CMI, and other counterparties in a similar position, are also key constituents. Importantly, as stated above, CMI stands to be adversely affected by Debtors' proposed actions and thus is entitled to have a say in the process.

The parties that are currently scheduled to receive notice – the Official Committee of Unsecured Creditors (the "Committee") and Bank of America, N.A., as Administrative Agent – do not and cannot adequately represent CMI's interests in the approval process, as neither are in a position similar to CMI's (*i.e.*, neither party has an equal interest in seeing that the loans Debtors currently service continue

---

to Certain Objections to the Sale of Certain Assets and the Assumption and Assignment of Executory Contracts Relating to the Debtors' Loan Servicing Business (the "Omnibus Response"). [Docket No. 1443].

to be administered in an efficient and productive manner when and as Debtors seek to expand their business to accommodate the Purchaser's wishes). To the contrary, both the Committee and the Administrative Agent do not appear to have an interest in whether the Purchaser increases its potential income by taking on more servicing work (without regard to whether Debtors can efficiently handle their existing obligations under the Assumed Contracts and diluting assets used to service the Assumed Contracts to handle additional servicing obligations during the Interim Period), and it is, therefore, no wonder why both of these parties have given their blessings to the proposed arrangement.

Accordingly, CMI respectfully asks this Court to deny Debtors' Subservicing Motion and issue an order that requires Debtors to give further adequate assurances of future performance to CMI and expands the approval procedures before Debtors are allowed to enter into additional servicing agreements.

## JURISDICTION

1.  The Court has jurisdiction over this objection pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  The statutory predicates for the relief CMI seeks in this objection are Sections 363(b) and 365(f) of the Bankruptcy Code, and Bankruptcy Rules 4001(a)(1) and 9014.

## BACKGROUND

3.  Prior to filing their bankruptcy petitions, AHM was in the business of originating and servicing mortgage loans, and selling both its loans and its servicing capabilities in the secondary mortgage market to institutional investors. AHM was, therefore, party to a number of mortgage loan purchase and servicing agreements with institutional investors and lenders. Under these agreements, AHM as "seller" would sell to an investor or lender as "third party purchaser" mortgage loans on either

3

a "servicing-retained" or a "servicing-released" basis. If an investor bought loans on a "servicing-retained" basis, AHM would act as the subservicer of the purchased loans (vs. if an investor bought loans on a "servicing-released" basis, the investor maintained the right to service the purchased loans).

4. In certain circumstances, AHM, pursuant to an assumption and recognition agreement, sold a pool of these mortgage loans to a third-party purchaser for resale to a successive securitization trust. In these types of transactions, the third-party purchaser would assign the pool of mortgage loans to a trust (pursuant to a separate pooling agreement) for purposes of enforcing the parties' rights and remedies under the loan purchase agreement, while the "master servicer" or "assignee" under the assignment retained its right to enforce all of AHM's obligations as they related to the pool of loans under both the assignment and loan purchase agreements.

5. On June 21, 2006, AHM entered into the Master Loan Purchase and Sale Agreement ("MLPSA") with HSBC Bank USA, National Association ("HSBC") for HSBC's purchase of mortgage loans on a servicing-retained basis. CMI attaches as Exhibit A a true and correct copy of the MLPSA. It was the parties' stated intent that, following HSBC's purchase of the Loans from AHM, HSBC would in the future sell some or all of the loans to one or more purchasers as a "whole loan transfer" in some form of securitization transaction. (Exhibit A at 1).

6. On July 1, 2007, HSBC resold the loans to a securitization trust, and assigned its rights under the MLPSA to CMI pursuant to the Assignment, Assumption and Recognition Agreement ("AA&R Agreement"). CMI attaches as Exhibit B a true and correct copy of the AA&R Agreement. CMI, as the "Master Servicer" under the AA&R Agreement, retained the right to enforce all of the obligations of AHM as they related to the assigned loans under the MLPSA and the AA&R Agreement. (Exhibit B at 2).

1643125

7. Pursuant to Section 11 of the MLPSA, AHM as subservicer agreed to service and administer CMI's loans in accordance with the terms and provisions of the MLPSA, set forth in detail in the Servicing Addendum attached as Exhibit 9 to the MLPSA. (Exhibit A, Section 11 at 40-41 and Exhibit 9). Pursuant to Exhibit 9 of the MLPSA, CMI set forth specific instructions for the servicing of its loans, and in particular reserved its ability to assess AHM's compliance with servicing criteria and monitor AHM's utilization of additional servicers to fulfill AHM's servicing obligations. (Exhibit A at Exhibit 9 at Subsections 11.30-11.31).

8. On August 11, 1994, Columbia National, Inc. (which entity changed its name to American Home Mortgage Servicing, Inc. effective August 1, 2004) signed an Application to participate in the Veterans Land Board Veterans Housing Assistance Program (the "VLB Agreement"), in which it agreed, among other things, to service certain mortgage loans and to be bound by the Veterans Land Board's Guide (the "VLB Guide") and its Program Guidelines (the "VLB Guidelines"). Although Debtors advised that they do not have a copy of this VLB Agreement, CMI believes this is the servicing agreement to which the debtors refer at pages 1 and 21 of Schedule I at Docket No. 1703. Article I of the VLB Guide defines the "Administrator" to be CMI (VLB Guide at I-4).

9. On August 6, 2007 (the "Petition Date"), Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases"). This Court is jointly administering the Cases as per this Court's August 7, 2007 Order. (Docket No. 60).

10. On August 6, 2007, Debtors filed the Sale Motion so that they could sell the servicing rights retained under servicing-retained loan agreements, and in which they included the MLPSA, the AA&R and the VLB Agreement. (Docket Nos. 11-12).

11. On August 9, 2007, this Court entered its Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business;

(III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief, which established procedures for the sale of the Debtors' servicing business. (Docket No. 113).

12. On October 30, 2007, this Court entered an Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief (the "Sale Order") (Docket No. 1711). Pursuant to the Sale Order, Debtors assumed the MLPSA, the AA&R and the VLB Agreement (collectively, the "CMI Agreements") and all of the rights and responsibilities thereunder, and assigned the CMI Agreements in its sale of the loan servicing business to AH Mortgage Acquisition Co., Inc. (the "Purchaser"). (Sale Order at 4 and Exhibit C).

13. The Purchaser assumed the CMI Agreements pursuant to the APA, in part by providing adequate assurance of its future performance of and under the CMI Agreements, within the meaning of Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. (Sale Order at 9, 26-27). Specifically, Debtors demonstrated the Purchaser's ability to meet its operational qualifications by touting the fact that, while it did not have the licenses or the expertise necessary to conduct the business, the Purchaser would hire Debtors' former employees to carry on the loan servicing business. (Omb. Resp. at 57).

14. The APA, which sets forth both the Debtors' and the Purchaser's responsibilities in servicing CMI's loans under the CMI Agreements, states that AHM, not the Purchaser, is responsible for directing Debtors' management policies. (Sale Order, Exhibit A-1 (APA) at 39). Notably, pursuant to Section 6.2(g) of the APA, Debtors are responsible for undertaking a review of the number of Business Employees they deem "reasonably necessary" to service the current portfolio of loans, and Debtors

remain legally responsible for any liabilities the Business incurs as a result of its hiring decisions. (Sale Order, Exhibit A-1 (APA) at 41).

15. Pursuant to the Subservicing Motion, Debtors now seek to take on additional servicing responsibilities, without setting forth how they have or whether they intend to undertake any review of their current workforce to determine its ability to take on additional servicing work. Moreover, pursuant to the Subservicing Motion, Debtors seek to take on additional servicing responsibilities (and thus further strain its workforce) without providing CMI an opportunity to protect its own interests and ensure that Debtors do not compromise the servicing on its loans pursuant to the CMI Agreements by overextending themselves in this proposed out-of-the-ordinary-course-of-business expansion. All of this is further to the Purchaser's stated goal of undertaking a roll-up in the mortgage servicing business – something not necessarily calculated to protect the counterparties' interests.

16. CMI objects to the Subservicing Motion and requests that this Court deny the motion and instead issue an order that requires Debtors to: (a) provide further adequate assurances of its ability to service effectively CMI's loans before Debtors are able to take on additional servicing responsibilities, and (b) expand the Subservicing Motion's proposed approval procedures to include CMI as a key constituent that is to be notified of future proposed subservicing agreements, and given an opportunity to object if necessary or appropriate.

## OBJECTIONS

**I. Debtors Cannot Take on Additional Servicing Contracts Without Providing CMI (and Similarly-Situated Counterparties and Institutional Investors) Further Adequate Assurances of Future Performance, Pursuant to Section 365(f) of the Bankruptcy Code.**

17. Section 365 of the Bankruptcy Code allows a debtor to assume and assign an executory contract "only if" the assignee can provide "adequate assurance of future performance." 11 U.S.C. §§ 365(a) and (f)(2)(B); *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001). Section 2-609

1643125

of the Uniform Commercial Code – from which Section 365 of the Bankruptcy Code derives its language – provides that a party may demand "adequate assurance of future performance" in writing when "reasonable grounds for insecurity arise with respect to the performance of either party...." Official Comments 2-4 to Uniform Commercial Code § 2-609 (1972 ed., rev. 2003). Thus, this is a continuing obligation (for the debtor) and a continuing right (for the counterparty). What constitutes adequate assurance is a highly factual analysis and is one courts will measure by commercial standards in the business. *See id.*

18. This statutory requirement protects the non-debtor party by relieving the trustee and the bankruptcy estate from liability for contract breaches arising after the assignment. *See* 11 U.S.C. § 365(k); *In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007); *Cinicola*, 248 F.3d at 120. Moreover, bankruptcy courts, "in authorizing assumptions and assignment[s] of unexpired leases[,] must be sensitive to the rights of the non-debtor contracting party ... and the policy requiring that the non-debtor receive the full benefit of his or her bargain." *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1990) (citation omitted).

19. At the Sale Hearing, Debtors provided adequate assurance of the Purchaser's future performance by providing evidence of the Purchaser's ability to meet certain financial and operational qualifications. (Omb. Resp. at 57). Specifically, Debtors touted that the Purchaser would have a "quality" workforce because it would be hiring Debtors' former employees, and that Debtors' remaining workforce would continue servicing the mortgage loans in accordance with applicable legal and contractual obligations under both the APA and the various servicing agreement, including the CMI Agreements. (*Id.* at 13-14, 57-8). Thus, although Debtors have technically assigned the CMI Agreements, for all practical purposes they remain responsible for meeting all of the servicing obligations under the CMI Agreements, and, pursuant to Section 6.2(g) of the APA, are solely

responsible for any liabilities the Business incurs as a result of AHM Servicing's hiring decisions. (Sale Order, Exhibit A-1 (APA) at 41). The fact that the Purchaser has offered additional indemnities does not on its face alter this liability. (See proposed indemnity clause at page 7 of Subservicing Motion).

20. In the Subservicing Motion, Debtors now attempt to take on additional servicing work without setting forth how or whether Debtors intend to change their operations in order to handle the additional workload, all of which violates Section 6.2(g) of the APA and Section 11 of the MLPSA. This Court should not allow Debtors to take on this additional burden without providing CMI with further adequate assurances of future performance, i.e., that they will be able to take on additional servicing work without comprising their performance on existing servicing contracts. (And, one can question whether the economies of scale they apparently seek to reap should inure solely to the benefit of the Purchaser in effecting its roll-up where it lacks the necessary qualifications to undertake the Business on its own.) CMI thus respectfully requests that this Court deny Debtors' Subservicing Motion until it can provide CMI (and other counterparties and institutional investors) with these further adequate assurances.

**II.    Debtors Must Revise Their Proposed Approval Procedures to Include Both CMI and Other Counterparties and Institutional Investors in the Approval Process, as These Parties Are Key Constituents With Unrepresented Interests in These Proposed Transactions.**

21. As discussed above, CMI, and other similarly-situated counteparties (and institutional investors), are interested parties Debtors should include as "key constituents" in their proposed approval procedures to take place before AHM Servicing enters into additional subservicing agreements. CMI, along with similar counterparties and investors, have played a key role in Debtors' sale of its loan servicing business, and have interests in these proceedings that neither the lenders nor the unsecured creditors committee represent or protect (although they have already blessed the procedures and are the sole parties to which Debtors propose to give notice).

1643125

22. Accordingly, CMI respectfully requests that this Court deny Debtors' Subservicing Motion to the extent it purports to limit too narrowly the interested parties that are to be involved in the approval process for AHM Servicing's acquisition of additional servicing work.

## CONCLUSION

For all of these reasons, CMI respectfully requests that the Court deny Debtors' Subservicing Motion as proposed, and instead enter its Order:

(a) requiring Debtors to provide CMI (and similarly-situated counterparties and institutional investors) with further adequate assurances of future performances before AHM Servicing can take on additional servicing work;

(b) requiring Debtors to expand the Approval Procedures of the Subservicing Motion to include CMI as a party entitled to notice and to participate in the approval process; and

(c) granting CMI such other and further relief as the Court determines is equitable, just and proper.

Dated: January 3, 2008

**MORRIS JAMES LLP**

Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6888
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com

-and-

1643125

10

Andrew J. Petrie *(admitted pro hac vice)*
FEATHERSTONE PETRIE DESISTO LLP
600 17th Street, Suite 2400S
Denver, Colorado 80202-5424
Telephone: (303) 626-7139
Facsimile: (303) 626-7101
Email: apetrie@featherstonelaw.com

*Attorneys for CitiMortgage, Inc.*

1643125