**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: AMERICAN HOME MORTGAGE HOLDINGS, INC., et al., Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br>**Objection Deadline: January 3, 2008 at 12:00 p.m.**<br>**Hearing Date: January 4, 2008 at 11:00 a.m.**<br>**Re: Docket No. 2527** |
|---|---|

**GMAC MORTGAGE LLC'S RESPONSE TO MOTION OF THE DEBTORS FOR ORDERS PURSUANT TO SECTIONS 105, 107(b), AND 363 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002 AND 9018 AUTHORIZING THE DEBTORS TO UNDERTAKE CERTAIN ACTIVITIES TO PREPARE FOR CONSUMMATION OF THE PREVIOUSLY-APPROVED SALE OF THEIR SERVICING BUSINESS**

GMAC Mortgage LLC ("GMACM"), by and through its undersigned counsel, hereby submits its Response ("Response") to the Motion of the Debtors for Orders Pursuant to Sections 105, 107(b), and 363 of the Bankruptcy Code, and Bankruptcy rules 2002 and 9018 Authorizing the Debtors to Undertake Certain Activities to Prepare for Consummation of the Previously-Approved Sale of Their Servicing Business (D.I. 2527) (the "Motion")[1], and in support hereof states as follows:

1. GMACM is the back-up servicer (the "Back-Up Servicer") with respect to a securitized portfolio of home equity line of credit mortgage loans known as the Series 2007-SD1 HELOC loan portfolio (the "2007-SD1") pursuant to the HELOC Back-Up Servicing Agreement dated March 13, 2007 among GMACM as Back-Up Servicer, American Home Mortgage Investment Trust 2007-SD1, as Issuing Entity and Deutsche Bank National Trust Company, as Indenture Trustee (the "Back-Up Servicing Agreement") and the HELOC Servicing Agreement

1 Any capitalized term used in this Response without definition shall have the definition contained in the Motion.

dated March 13, 2007 among GMACM, as Back-Up Servicer, American Home Mortgage Servicing, Inc. ("AHM Servicing"), as HELOC Servicer, American Home Mortgage Investment Trust 2007-SD1, as Issuing Entity, Deutsche Bank National Trust Company, as Indenture Trustee, and American Home Mortgage Acceptance, Inc. ("AHMA"), as Sponsor (the "Servicing Agreement").

2.   The Servicing Agreement contains specific and material criteria that a proposed assignee of the servicing function must satisfy in order for the proposed assignee to be eligible to assume the rights and obligations of the servicer under the Servicing Agreement.

3.   In order to be eligible to assume the role of servicer under the Servicing Agreement, the proposed new servicer must meet the following criteria, among others:

  a.   it must be engaged in the business of originating and servicing mortgage loans comparable to the HELOCs;

  b.   it must be authorized to transact business in the state or states in which the mortgaged properties are situated;

  c.   it must be a Freddie Mac or Fannie Mae approved servicer (*see* § 5.02 of the Servicing Agreement);

  d.   it must be a member of the MERS system in good standing (*see* § 6.02 of the Servicing Agreement);

  e.   it must be an entity with a minimum net worth of not less than $10 million (*see* § 6.02 of the Servicing Agreement);

  f.   it must be reasonably satisfactory to GMACM (*see* § 5.02 of the Servicing Agreement and approved by the applicable insurer , if any (see applicable insurance and indemnity agreements);

g. it must be willing and able to satisfy each and every covenant and condition to be performed or observed by the servicer under the Servicing Agreement (*see* § 5.02 of the Servicing Agreement); and

h. any assignment of the servicing rights cannot result in a qualification, reduction, or withdrawal by any of the Rating Agencies of the rating existing on the applicable class of Notes issued in connection with the applicable securitizations and in effect immediately prior to the proposed assignment (*see* § 5.02 of the Servicing Agreement).

4. Further, in order to assume the role of the servicer under the Servicing Agreement, the proposed new servicer must be prepared to undertake all of the obligations and responsibilities of the outgoing servicer which include, among others, the following:

a. advance funds from time to time to pay certain expenses associated with the HELOCs;

b. maintain proper levels of coverage on hazard insurance (fire insurance and extended coverage) on the mortgaged properties securing the HELOCs (*see* § 3.11 of the Servicing Agreement);

c. maintain a blanket fidelity bond and an errors and omissions insurance policy covering the servicer's officers, employees or other persons acting on its behalf in connection with its activities under the Servicing Agreement (*see* § 3.11 of the Servicing Agreement);

d. supervise any and all subservicers that it may contract with, remaining obligated and liable for its own misconduct and the misconduct of any such subservicers; and

e. comply with indemnification obligations covering all liability, loss, costs and expenses arising from or related to breaches of the Servicing Agreement or reporting

obligations-including legal fees and other costs relating to any transfer of the servicer's obligations to a successor servicer (*See* § 5.06 of the Servicing Agreement).

5. Accordingly, the Servicing Agreement may not be assumed by a Debtor and assigned to a third party without the assignor-Debtor meeting its burden of proof that the proposed assignee satisfies or has the means to satisfy specific and material requirements imposed by the Servicing Agreement or other documents related thereto.

6. On September 20, 2007, GMACM filed its Objection to Emergency Motion of the Debtors for Orders: (A)(1) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims and Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (D.I. 857) (the "Objection"), which is incorporated herein by reference.

7. On October 2, 2007, GMACM filed its Supplemental Objection of to Emergency Motion of the Debtors for Orders: (A)(1) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims and Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (D.I. 1071) (the "Supplemental Objection"), which is incorporated herein by reference.

8. On October 30, 2007, the Court entered the Order (A) Approving (i) The Sale Of The Debtors' Mortgage Servicing Business Free And Clear Of Liens, Claims And Interests, (ii) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (B) Granting Certain Related Relief (D.I. 1711) (the "Sale Order"), which authorized the Debtors to sell their servicing business to AH Mortgage Acquisition Co., Inc. (the "Purchaser").

9. The Sale Order provides, among other things, for a two step closing as follows: the first step, which occurred on November 16, 2007, transferred to the Purchaser the right to service the mortgage loans that were part of the servicing platform being acquired. The second and final closing (which is likely to occur during the first or second quarter of 2008) will transfer to the Purchaser legal title to the servicing platform.

10. Pursuant to the Sale Order, the Servicing Agreement is an executory contract pursuant to Section 365 of the Bankruptcy Code that will be assumed by the Debtors and assigned to the Purchaser in connection with the sale of the Servicing Business.

11. The Court made specific findings in the Sale Order regarding the Debtors' ability to cure defaults under the Servicing Agreement and regarding the Purchaser's ability to satisfy the Purchaser's Cure Amount (as defined in the Sale Order) and provide adequate assurance of its future performance of and under the Servicing Agreement within the meaning of Sections 365(b)(1) and 365(f)(2).

12. After litigation and extensive negotiations, GMACM consented to the assumption and assignment of the Servicing Agreement in accordance with the protections offered through the Sale Order and the Bankruptcy Code.

13. In the Motion, the Debtors seek authority to create non-debtor business entities (the "Transition Entities") to enter into certain agreements relating to the transition of the Purchased Assets from the Debtors to the Purchaser for the continued operation of the Servicing Business, which agreements the Debtors refer to as the Transition Entities Agreements[2].

14. The Motion does not specifically address the timing or mechanism for the transfer of the Purchased Assets from the Debtors to the Transition Entities, however, the Motion states that the Transition Entities are to become subsidiaries of the Purchaser upon the Final Closing.

15. From the brief description provided in the Motion, it appears that the Servicing Agreement will be assigned to a Transition Entity (rather than the Purchaser) and the Purchaser will acquire the stock of the Transition Entity. Thus, it appears that the Purchaser will not actually become the assignee of the Servicing Agreement and therefore will not ultimately become the servicer under the Servicing Agreement.

16. Part of the rationale for the two-part closing was to allow time for the Purchaser to obtain, among other things, the necessary licenses and approvals to, among other things, assume the rights and obligations of the Debtors under the Servicing Agreement.

17. It is unclear from the Motion whether the Transition Entity will meet, among other things, the qualifications to become a servicer under the Servicing Agreement. Further, based upon the Motion and the fact that the Debtors are not providing a copy of the Transfer Entities Agreements, GMACM is not able to determine how the cure and other obligations will be handled under the Servicing Agreement. For example, it is unclear from the Motion whether the Transition Entity will have any obligation to pay the Purchaser's cure obligations under the

---

2 The Debtors do not attach any Transition Entities Agreements to the Motion and specifically note that they are not seeking approval of any Transition Entities Agreements since the new entities are non-debtors. *See* Motion at page 6, fn 3.

Servicing Agreement or whether the Transition Entity will be able to provide adequate protection of future performance of and under the Servicing Agreement within the meaning of Sections 365(b)(1) and 365(f)(2) if the Transition Entity is the ultimate assignee.

18. Based upon the limited information available in the Motion, GMACM is also unable to determine whether the relief sought will limit or restrict the protections afforded to GMACM under the Sale Order and Bankruptcy Code. In addition, it is unclear how the relief sought will limit or eliminate the ability of the Court to oversee the sale process and transfer of the Purchased Assets.

19. While GMACM would not be opposed to the relief sought in the Motion if it was assured that the protections afforded to it in the Sale Order and in the Bankruptcy Code were being preserved, the Motion does not provide that comfort and leaves many questions unanswered. The Debtors should can respond to the issues and inquiries raised by GMACM in this Response at the hearing on the Motion.

WHEREFORE, GMACM respectfully requests that the Court compel the Debtors to preserve the protections afforded to GMACM as Back-Up Servicer in the Sale Order and under the Bankruptcy Code and to deny the relief requested in the Motion to the extent that such relief would erode such protections and require the Debtors to provide additional information regarding the Transition Entities and the Transfer Entities Agreements and the actual mechanism and procedures for the assumption and assignment of the Servicing Agreement and grant such other and further relief as the Court deems appropriate, just and proper.

Dated: January 3, 2008
Wilmington, Delaware

REED SMITH LLP

By: /s/ Kimberly E. C. Lawson

Kimberly E. C. Lawson (No. 3966)
1201 Market Street; Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: klawson@reedsmith.com

and

Robert P. Simons
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-7294
Facsimile: (412) 288-3063

and

Claudia Z. Springer
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420

Attorneys for GMAC Mortgage LLC