# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br><br>**Objection Deadline: January 3, 2008 at 12:00 p.m.**<br>**Hearing Date: January 4, 2008 at 11:00 a.m.**<br><br>**Re: Docket No. 2527** |

### RESIDENTIAL FUNDING COMPANY LLC'S RESPONSE TO MOTION OF THE DEBTORS FOR ORDERS PURSUANT TO SECTIONS 105, 107(b), AND 363 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002 AND 9018 AUTHORIZING THE DEBTORS TO UNDERTAKE CERTAIN ACTIVITIES TO PREPARE FOR CONSUMMATION OF THE PREVIOUSLY-APPROVED SALE OF THEIR SERVICING BUSINESS

Residential Funding Company, LLC, f/k/a Residential Funding Corporation ("GMAC-RFC"), by and through its undersigned counsel, hereby submits its Response ("Response") to the Motion of the Debtors for Orders Pursuant to Sections 105, 107(b), and 363 of the Bankruptcy Code, and Bankruptcy rules 2002 and 9018 Authorizing the Debtors to Undertake Certain Activities to Prepare for Consummation of the Previously-Approved Sale of Their Servicing Business (D.I. 2527) (the "Motion")[1], and in support hereof states as follows:

1.  GMAC-RFC is a party to that certain Seller/Servicer Contract ("Contract") pursuant to which certain of the Debtors sold certain loans to GMAC-RFC and/or serviced those loans on behalf of GMAC-RFC in accordance with the terms of that certain Residential Funding Seller and Servicer Guide, as amended, supplemented or otherwise modified, from time to time (the "Guide", together with the Contract, collectively, the "Agreement").

---

[1] Any capitalized term used in this Response without definition shall have the definition contained in the Motion.

2. Pursuant to the Contract, the Seller/Servicer sold certain loans to, and/or serviced certain loans for, GMAC-RFC, which GMAC-RFC agreed to purchase subject to the terms and conditions set forth in the Guides.

3. Section 1 of the Seller/Servicer Contract provides that the Debtor Servicer "acknowledges that it has received and read the Guides" and further that "[a]ll provisions of the Guides are incorporated by reference into and make a part of [the Seller/Servicer Contract], and shall be binding upon the parties." *See* Seller/Servicer Contract, § 1. Finally, Section 1 of the Seller/Servicer Contract expressly states that the Debtors are entitled to sell the Loans and/or service the Loans for GMAC-RFC so long as GMAC-RFC authorized the Debtors to do so. *See* id.

4. The purpose of Guides is to "offer[] a continual and competitive source of mortgage financing to meet the needs of the residential market." *See* Guides, § 100. Adherence to the requirements of the Guides accomplishes this objective by setting "standards for effective and efficient mortgage servicing for all product types including Jumbo A, Expanded Criteria, Credit Gap, AlterNet, and Home Equity." *See* id.

5. Accordingly, adherence to the terms and conditions of the Guides is required under, and is a part of, the Seller/Servicer Contract and is necessary for GMAC-RFC to attain its stated objectives and ensure the effective and efficient mortgage servicing of the Loans.

6. The Agreement contains specific and material criteria that any proposed assignee or purchaser of the servicing rights must satisfy to be eligible to assume the obligations of servicer under the Agreement. While these criteria are primarily set forth in the Guides, because the Guides are expressly incorporated by reference into and "make a part of" the Seller/Servicer

Contract, the criteria are also expressly required under the Seller/Servicer Contract. *See* Seller/Servicer Contract, § 1.

7. In order to be eligible to assume the obligations of servicer under the Agreement, the proposed new servicer must meet, *inter alia*, the following criteria:

- Satisfy GMAC-RFC Client/Servicer Eligibility Standards as outlined in Chapter 2 of the Guides
- Provide a completed GMAC-RFC Client/Servicer Application and have it approved by GMAC-RFC
- Provide necessary documentation requested in connection with the Client/Servicer Application
- Comply with all terms of the Agreement.

*See* Guides, Chapter 2 Servicer Eligibility.

8. Compliance with the terms of the Agreement, requires, *inter alia*, that the Servicer should be:

- Fannie Mae and/or Freddie Mac-approved and in good standing
- A member of BIF or SAIF under the FDIC or NCUSIF and in good standing if a financial institution
- In compliance with all capital and other requirements, as set forth by the Office of Thrift Supervision, the FDIC, or the Office of the Controller of Currency, or any other State or federal regulatory agency that is applicable to the Servicer
- A HUD-approved mortgagee

- If servicing Loans registered with MERS, the Servicer must be a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS.

*See* Guides, § 200(A).

9. In addition to the foregoing eligibility requirements, any purchaser or assignee of the servicing rights under the Agreement must also:

- maintain a certain GAAP tangible net worth requirements (defined as GAAP total net worth minus any intangible assets). For the Loans purchased on a retained basis and therefore serviced by RFC, the GAAP tangible net worth requirement is $500,000. *See* Guides, § 210(B)
- Have two years of conventional mortgage loan originations
- $25 million in conventional mortgage loan originations in the last 12 months immediately preceding assumption of the servicer obligations
- $100 million in conventional mortgage loan portfolio currently serviced
- Staff knowledgeable in originating, quality control, selling and servicing conventional mortgage loans.

*See* Guides, § 200(D).

10. Moreover, to assume the role of the servicer under the Agreement at issue, the proposed new servicer must be prepared to undertake all of the obligations and responsibility of the outgoing servicer which include, among others, the following:

- Maintenance of fidelity, errors, and omissions insurance in the amounts required under Agreement. (*See* Guides, § 200(E))

- Fully indemnify and agree, jointly and severally with the Debtors, to hold GMAC-RFC, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs, and expenses (including reasonable attorneys' fees) that may arise as a result of the transferee's failure to comply with applicable law or GMAC-RFC transfer of servicing requirements as set forth in the Guides. (*See* Guides, § 211)

- Indemnify GMAC-RFC from and hold it harmless against all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees and expenses resulting from any Event of Servicer Default, including but not limited to any act or failure to act or breach of any warranty or representation or obligation contained in or made pursuant to the Agreement. (*See* Guides, § 219)

- Account for all Loans sold to GMAC-RFC in accordance with the requirements of the particular Loan Program, or if special requirements are not defined, then in accordance with industry standards. (*See* Guides, § 300)

- Undertake all activities required to protect GMAC-RFC and/or its investor's interest in the Mortgage in the event of a foreclosure of the property or a bankruptcy of the Borrower, such as: (a) preparing foreclosure package; (b) finding missing documents and/or assignments; (c) resolving any title issues that are the result of the Seller's or Servicer's action or inaction; (d) managing attorneys; (e) working with the borrower

to resolve the delinquency through loss mitigation activities; and (f) handling bankruptcy management activities. (*See* Guides, § 301)

- Account for individual Loans in accordance with the requirements of a particular GMAC-RFC Loan Program, or if no such requirements are available, then in accordance with the amortization accounting method described in the Guides. (*See* Guides, § 302)

- Properly apply and account for the Loan payments. (*See* Guides, § 303)

- Make the required monthly remittances in accordance with Section 312 of the Guides

- Make advances to principal and interest custodial accounts and advances to the Escrow/Impound Account as required in Sections 315 and 316 of the Guides

- Service the loans in accordance with applicable State and federal law, the loan documents, mortgage insurance requirements, the Client/Servicer Contract and the Guides, as amended from time to time. (*See* Guides, Chapter 4)

- Make all necessary interest rate and payment adjustments in accordance with the terms of the Note, and must otherwise service the Loan in accordance with the Loan Documents, and the Agreement. (*See* Guides, § 405)

- Verify that all necessary insurance coverage is in place for each Loan, monitor compliance with the insurance requirements, and settle insurance claims. (*See* Guides, §§ 413-418)

- Servicing Loan delinquencies in accordance with Sections 419-422 of the Guides, including interviewing the Borrower and inspecting the Property.
- Taking appropriate action to protect GMAC-RFC's interest during Bankruptcy proceedings in which the Borrower is a debtor, including, without limitation, complying with all applicable laws and regulations, obtaining competent legal counsel, accurately completing and timely filing a proof of claim, determining whether the Borrower intends to keep the property, and filing appropriate actions in the Bankruptcy Court to lift the stay or abandon the property. (*See* Guides, § 437)
- Servicing the Loan through foreclosure proceedings in accordance with Sections 438 through 443 of the Guides.

11. Accordingly, the Agreement may not be assumed by the Debtors and assigned to a third party without the assignor and/or Debtors meeting their burden of proof that the proposed assignee satisfies or has the means to satisfy specific and material requirements imposed by the Agreement or other documents related thereto.

12. On September 20, 2007, GMAC-RFC filed its Objection Of Residential Funding Company LLC To The Debtors' Proposed Cure Amounts In Connection With Emergency Motion Of The Debtors For Orders: (A)(I) Approving Sale Procedures; (II) Scheduling A Hearing To Consider Sale Of Certain Assets Used In Debtors' Loan Servicing Business; (III) Approving Form And Manner Of Notice Thereof And (IV) Granting Related Relief; And (B)(I) Authorizing The Sale Of Such Assets Free And Clear Of Liens, Claims And Encumbrances, And Other Interests; (II) Authorizing And Approving Purchase Agreement Thereto; (III) Approving The Assumption And Assignment Of Certain Executory Contracts And

Unexpired Leases Related Thereto; And (IV) Granting Related Relief (D.I. 859) (the "Objection"), which is incorporated herein by reference.

13. On October 2, 2007, GMAC-RFC filed its Supplemental Objection Of Residential Funding Company, LLC To Emergency Motion Of The Debtors For Orders: (A)(I) Approving Sale Procedures; (II) Scheduling A Hearing To Consider Sale Of Certain Assets Used In Debtors' Loan Servicing Business; (III) Approving Form And Manner Of Notice Thereof And (IV) Granting Related Relief; And (B)(I) Authorizing The Sale Of Such Assets Free And Clear Of Liens, Claims And Encumbrances, And Other Interests; (II) Authorizing And Approving Purchase Agreement Thereto; (III) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And (IV) Granting Related Relief (D.I. 1061) (the "Supplemental Objection"), which is incorporated herein by reference.

14. On October 30, 2007, the Court entered the Order (A) Approving (i) The Sale Of The Debtors' Mortgage Servicing Business Free And Clear Of Liens, Claims And Interests, (ii) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (B) Granting Certain Related Relief (D.I. 1711) (the "Sale Order"), which authorized the Debtors to sell their servicing business to AH Mortgage Acquisition Co., Inc. (the "Purchaser").

15. The Sale Order provides, among other things, for a two step closing as follows: the first step, which occurred on November 16, 2007, transferred to the Purchaser the right to service the mortgage loans that were part of the servicing platform being acquired. The second and final closing (which is likely to occur during the first or second quarter of 2008) will transfer to the Purchaser legal title to the servicing platform.

16.     Pursuant to the Sale Order, the Debtors the Agreement is an executory contract pursuant to Section 365 of the Bankruptcy Code that's servicing rights will be assumed by the Debtors and assigned to the Purchaser in connection with the sale of the Servicing Business.

17.     The Court made specific findings in the Sale Order regarding the Debtors' ability to cure defaults under the Agreement and regarding the Purchaser's ability to satisfy the Purchaser's Cure Amount (as defined in the Sale Order) and provide adequate assurance of its future performance of and under the Agreement within the meaning of Sections 365(b)(1) and 365(f)(2).

18.     After litigation and extensive negotiations, GMAC-RFC consented to the assumption and assignment of the servicing rights under the Agreement in accordance with the protections offered through the Sale Order and the Bankruptcy Code.

19.     In the Motion, the Debtors seek authority to create non-debtor business entities (the "Transition Entities") to enter into certain agreements relating to the transition of the Purchased Assets from the Debtors for the Purchaser or the continued operation of the Servicing Business, which agreements the Debtors refer to as the Transition Entities Agreements[2].

20.     The Motion does not specifically address the timing or mechanism for the transfer of the Purchased Assets from the Debtors to the Transition Entities, however, the Motion states that the Transition Entities will become subsidiaries of the Purchaser upon the Final Closing.

21.     From the brief description provided in the Motion, it appears that the Agreement will be assigned to the Transition Entity (rather than the Purchaser) and the Purchaser will acquire the stock of the Transition Entity. Thus, it appears that the Purchaser will not actually

---

[2] The Debtors do not attach any Transition Entities Agreements to the Motion and specifically note that they are not seeking approval of any Transition Entities Agreements since the new entities are non-debtors. *See* Motion at page 6, fn 3.

become the assignee of the Agreement and therefore will not ultimately become the servicer under the Agreement.

22. Part of the rationale for the two-part closing was to allow time for the Purchaser to obtain, among other things, the necessary licenses and approvals to, among other things, assume the rights and obligations of the Debtors under the Agreement.

23. It is unclear from the Motion whether the Transition Entity will meet, among other things, the qualifications to become a servicer under the Agreement. Further, based upon the Motion and the fact that the Debtors are not providing a copy of the Transfer Entities Agreements, GMAC-RFC is not able to determine how the cure and other obligations will be handled under the Agreement. For example, it is unclear from the Motion whether the non-debtor entity will have any obligation to pay the Purchaser's cure obligations under the Agreement or whether the Transition Entity will be able to provide adequate protection of future performance of and under the Agreement within the meaning of Sections 365(b)(1) and 365(f)(2) if the Transition Entity is the ultimate assignee.

24. Based upon the limited information available in the Motion, GMAC-RFC is also unable to determine whether the relief sought will limit or restrict the protections afforded to GMAC-RFC under the Sale Order and Bankruptcy Code. In addition, it is unclear how the relief sought will limit or eliminate the ability of the Court to oversee the sale process and transfer of the Purchased Assets.

25. While GMAC-RFC would not be opposed to the relief sought in the Motion if it was assured that the protections afforded to it in the Sale Order and in the Bankruptcy Code were being preserved, the Motion does not provide that comfort and leaves many questions

unanswered. The Debtors should respond to the issues and inquiries raised by GMAC-RFC in this Response at the hearing on the Motion.

WHEREFORE, GMACRFC respectfully requests that the Court compel the Debtors to preserve the protections afforded to GMAC-RFC in the Sale Order and under the Bankruptcy Code and to deny the relief requested in the Motion to the extent that such relief would erode such protections and require the Debtors to provide additional information regarding the Transition Entities and the Transfer Entities Agreements and the actual mechanism and procedures for the assumption and assignment of the Agreement and grant such other and further relief as the Court deems appropriate, just and proper.

Dated: January 3, 2008
      Wilmington, Delaware

REED SMITH LLP

By: /s/ Kimberly E. C. Lawson
Kimberly E. C. Lawson (No. 3966)
1201 Market Street; Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: klawson@reedsmith.com

and

Robert P. Simons
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-7294
Facsimile: (412) 288-3063

and

Claudia Z. Springer
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420

Attorneys for Residential Funding
Company, LLC, f/k/a Residential Funding
Corporation