IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                          : Chapter 11
                                                :
AMERICAN HOME MORTGAGE                          : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al., :
                                                : Jointly Administered
                                                :
    Debtors.                                    : Ref. Docket No. 2525
                                                : Hearing Date: January 4, 2008 at 11:00 a.m.
---------------------------------------------------------------- x

### NOTICE OF FILING OF EXECUTED INDEMNITY AGREEMENT

On December 27, 2007, the above-captioned Debtors filed the Motion of the Debtors for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving (A) Procedures for AHM Servicing's Entry into Subservicing Agreements and (B) the Entry into One or More Subservicing Agreements (the "Motion") (Docket No. 2525). Attached hereto as Exhibit A is an executed version of the Indemnity Agreement referenced in Footnote 7 of the Motion.

Dated:   Wilmington, Delaware
         January 3, 2008

                                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                    _____
                                    James L. Patton, Jr. (No. 2202)
                                    Pauline K. Morgan (No. 3650)
                                    Sean M. Beach (No. 4070)
                                    Matthew B. Lunn (No. 4119)
                                    The Brandywine Building
                                    1000 West Street, 17th Floor
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 571-6600
                                    Facsimile: (302) 571-1253

                                    Counsel for Debtors and Debtors in Possession

# **EXHIBIT A**

**Execution Copy**

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement dated as of January 3, 2008 (this "Agreement"), is entered into by and between AH Mortgage Acquisition Co., Inc., a Delaware corporation (the "Purchaser"), and American Home Mortgage Servicing, Inc., a Maryland corporation, as a debtor and debtor-in-possession (the "Company").

WHEREAS, the Purchaser, American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession, American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and the Company are parties to that certain Asset Purchase Agreement, dated as of September 25, 2007, as amended from time to time (the "Purchase Agreement"), pursuant to which the Purchaser is acquiring, among other things, certain mortgage loan servicing rights;

WHEREAS, the Purchaser intends to acquire additional mortgage loan servicing rights (the "Greenwich Servicing Rights") from Greenwich Capital Financial Products, Inc. ("Greenwich") with respect to certain mortgage loans for which Greenwich currently has the right to appoint the service provider (the "Greenwich Loans");

WHEREAS, the Purchaser has requested that the Company act as a subservicer for the Greenwich Loans and to enter into one or more agreements to subservice the Greenwich Loans with the master servicer of the Greenwich Loans, the trustees of the trusts holding the Greenwich Loans and/or any other parties that may be necessary for the Company to subservice the Greenwich Loans or assume agreements to subservice the Greenwich Loans from the existing subservicers (collectively, the "Greenwich Subservicing Agreements"); and

WHEREAS, the Purchaser has agreed to indemnify the Company and its Affiliates (as defined below) with respect to the Greenwich Subservicing Agreements as described herein.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1.    Definitions. As used in this Agreement, in addition to the terms defined elsewhere herein, the following terms have the meanings set forth below when used herein with initial capital letters; provided that capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Purchase Agreement.

"Affiliates" has the meaning provided in section 101(2) of the Bankruptcy Code.

"Loss" or "Losses" means any and all actual losses, damages, deficiencies, claims, costs or expenses, including without limitation, reasonable attorneys' fees and disbursements and those internal and administrative costs and expenses that are reasonable and documented.

Section 2.    Indemnification. The Purchaser shall (a) indemnify and hold harmless the Company and its Affiliates from and against any Losses arising as a result of or in connection with the provision of services by the Company pursuant to, or otherwise arising out of or in

DLI-6164269v3

connection with, the Greenwich Subservicing Agreements, and (b) that until the later of (i) the Final Closing Date and (ii) the satisfaction of (or the establishment of reserves in the amount of) any and all indemnity claims outstanding at the Final Closing arising in favor of the Company and its Affiliates in connection with services provided by the Company pursuant to the Greenwich Subservicing Agreements, the Purchaser shall not encumber its assets through the incurrence or issuance of indebtedness for borrowed money or withdraw or distribute any of its capital, other than withdrawals or distributions in amounts equal to any amounts received by the Purchaser as an adjustment to the Purchase Price, including, without limitation, amounts received pursuant to Section 4.1(c) or Section 4.4 of the Purchase Agreement. The Purchaser further agrees that each Greenwich Subservicing Agreement shall provide that upon the assignment of such Greenwich Subservicing Agreement by the Company to the Purchaser at the Final Closing Date, the Purchaser shall assume all of the Company's obligations and liabilities arising under such Greenwich Subservicing Agreement, whether arising prior to or after the Final Closing Date. Finally, the Purchaser shall use commercially reasonable efforts to secure a release in favor of the Company of all claims arising out of or in connection with each Greenwich Subservicing Agreement, such release to be effective upon the assignment of such Greenwich Subservicing Agreement to the Purchaser.

Section 3. Termination Upon No Final Order. If the Bankruptcy Court shall have not issued a Final Order by January 18, 2008, in a form acceptable to the Purchaser in its sole discretion approving that certain Motion of the Debtors for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving (A) Procedures for AHM Servicing's Entry Into Subservicing Agreements and (B) the Entry Into One or More Subservicing Agreements filed with the Bankruptcy Court on December 27, 2007, then this Agreement will terminate and be of no force or effect, ab initio, without any further action by any of the parties hereto.

Section 4. Amendment. This Agreement may be amended, modified and supplemented only by a written instrument signed by all of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Agreement.

Section 5. Counterparts. This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when two or more counterparts have been signed by each of the parties and delivered to the other parties. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

Section 6. Entire Agreement; No Third Party Beneficiaries. This Agreement (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and thereof, except for the Purchase Agreement, and (b) is not intended to confer any rights or remedies upon any Person other than the parties hereto and thereto.

DLI-6164269v3

Section 7. <u>Governing Law</u>. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH (A) THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO RULES GOVERNING THE CONFLICT OF LAWS AND, (B) TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the Purchaser and the Company have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

                                AH MORTGAGE ACQUISITION CO., INC.,
                                as Purchaser

By: _____
      Name: JOSH SEEGOPAUL
      Title: VICE PRESIDENT

AMERICAN HOME MORTGAGE
   SERVICING, INC.,
   as the Company and Debtor and
   Debtor-in-Possession

By: _____
      Name:
      Title:

DLI-6164269

IN WITNESS WHEREOF, the Purchaser and the Company have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

                                    AH MORTGAGE ACQUISITION CO., INC.,
                                        as Purchaser

By: _____
       Name:
       Title:

AMERICAN HOME MORTGAGE
    SERVICING, INC.,
    as the Company and Debtor and
    Debtor-in-Possession

By: _____
       Name: Alan Horn
       Title: Executive Vice President, General Counsel

DLI-6164269