# EXHIBIT A

FIRST AMENDMENT AGREEMENT dated as of December __, 2007 (this "Amendment Agreement"), by and among American Home Mortgage Investment Corp., as a debtor and a debtor-in-possession, a Maryland corporation (the "Parent"), the affiliates of the Parent set forth in the Loan Agreement referred to below, each as a debtor and a debtor-in-possession (together with the Parent, individually a "Borrower" and, collectively, the "Borrowers"), the lenders party hereto (each individually a "Lender" and, collectively, the "Lenders") and WLR Recovery Fund III, L.P., a Delaware limited partnership, as administrative agent for the Lenders (in such capacity, the "Administrative Agent") under the Debtor-in-Possession Loan and Security Agreement August 6, 2007 (as the same may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), by and among the Borrowers, the Lenders and the Administrative Agent, as in effect on the date hereof.

WHEREAS, AH Mortgage Acquisition Co., Inc. ("Purchaser"), a Delaware corporation, is acquiring certain assets related to the loan mortgage servicing businesses (the "Servicing Business") of the Parent, American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc., a Maryland corporation, as a debtor and debtor-in-possession (collectively, the "Sellers") pursuant to an Asset Purchase Agreement (the "Purchase Agreement") dated as of September 25, 2007, by and among Purchaser and Sellers, which Purchase Agreement was approved by order of the Bankruptcy Court dated October 30, 2007;

WHEREAS, the Borrowers have determined that they will not need the full amount of the $50 million Total Commitment provided for in the Loan Agreement and in discussions with the Administrative Agent have agreed to reduce the Total Commitment under the Loan agreement to $35 million, which will result in a corresponding reduction in the amount of the Interest Escrow Subaccount.

WHEREAS, certain other issues under the Loan Agreement have arisen in connection with the operation of the Borrowers' Chapter 11 cases that require certain waivers and modifications of the Loan Agreement;

NOW, THEREFORE, each Borrower, each of the undersigned Lenders and the Administrative Agent hereby agree as follows:

SECTION 1.   Defined Terms.   Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Loan Agreement, as amended hereby.

SECTION 2.   Amendments to Loan Agreement.   On the First Amendment Effective Date:

(a)   Each of (x) the third paragraph of the recitals to the Loan Agreement, (y) the third sentence of Section 2.01 of the Loan Agreement and (z) Schedule B to the Loan Agreement, shall be amended by replacing each reference therein to "$50,000,000" with a reference to $35,000,000".

(b)   Section 1.01 of the Loan Agreement shall be amended by inserting the following definitions:

"Acquisition Agreement" means the Asset Purchase Agreement dated as of September 25, 2007, by and among AH Mortgage Acquisition Co., Inc., the Parent and the other Borrowers party thereto, as amended, supplemented or otherwise modified from time to time.

"Advances" has the meaning ascribed thereto in Section 1.1 of the Acquisition Agreement.

"BofA Construction Loans" means the construction to permanent loans in which BofA, as administrative agent under the B of A Credit Agreement, holds security interests and liens.

"Initial Closing" has the meaning ascribed thereto in Section 2.7 of the Acquisition Agreement.

"LPMI" means lender purchased mortgage insurance.

"LPMI Advances" means the sum of (i) the unreimbursed LPMI premium payments made by Borrowers from Borrowers' cash between August 6, 2007 and November 16, 2007 in the amount of approximately $7,007,612 and (ii) the $5,457,055 payment made from Borrowers' cash on or about November 15, 2007 to fund an escrow with BofA, pending a resolution of disputes between the Debtors and BofA related to LPMI payment obligations.

"LPMI Reserve Amount" means, at any time on and after November 16, 2007, an amount equal to (i) $12,000,000 minus (ii) the aggregate amount of funds recovered from the LPMI Advances in an amount not to exceed $12,000,000.

(c)    Section 1.01 of the Loan Agreement is hereby amended to replace the following definition in its entirety:

"'Maturity Date" means the date which is the earliest of (a) the effective date of a plan of reorganization in the Chapter 11 Cases that has been confirmed by an order of the Bankruptcy Court, (b) the first anniversary of the Closing Date, (c) the sale of all or substantially all of the Borrowers' assets, whether under Section 363 of the Bankruptcy Code, a confirmed plan of reorganization or otherwise; (d) the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (e) the dismissal of any of the Chapter 11 Cases; (f) September 7, 2007, if the Final Order has not been entered by the Bankruptcy Court on or prior to such date, (g) such earlier date on which either (A) all Loans shall become due and payable, in whole, in accordance with the terms of this Loan Agreement and the other Loan Documents or (B) all Loans and all other Obligations for the payment of money shall be paid in full and the Commitments and this Loan Agreement are terminated, and (h) the date of consummation of a sale of all or substantially all of the equity interest or all or substantially all of the assets of the Specified Banking Subsidiary.'

(d)    Section 2.01 of the Loan Agreement is hereby amended and restated in its entirety as follows:

"2.01    Loans.  Subject to fulfillment of the conditions precedent set forth in Sections 5.01 and 5.02 hereof, and provided that no Default or Event of Default shall have occurred and be continuing hereunder, each Lender hereby severally agrees, from time to time, on the terms and conditions of this Loan Agreement and the other Loan Documents, to make loans (individually, a

"Loan"; collectively, the "Loans") to the Borrowers in Dollars, on any Business Day (but the Borrowers will endeavor to limit requests for Loans to not more frequently than once weekly) from and including the Closing Date to but excluding the Maturity Date in an aggregate principal amount at any one time outstanding not to exceed such Lender's Pro Rata Share of the Total Commitment as in effect from time to time. Subject to the terms and conditions of this Loan Agreement, during such period the Borrowers may borrow, repay and reborrow Loans hereunder. In no event shall the Lenders be obligated to make a Loan when any Default or Event of Default has occurred and is continuing, and in no event shall the aggregate principal amount of all Loans outstanding at any time exceed an amount equal to (i) $35,000,000 minus (ii) the LPMI Reserve Amount in effect at such time, as reduced from time to time in accordance with Section 2.06 (the amount maximum amount available to be borrowed pursuant to this Section 2.01 shall be referred to herein as the "Maximum Credit"); provided, further, that at all times prior to the Final Order, the Maximum Credit shall equal the Interim Amount."

(c)   Section 6.18 of the Loan Agreement shall be amended and restated in its entirety as follows:

"6.18   Use of Proceeds. The Borrowers will use the proceeds of the Loans (i) to finance working capital, (ii) for other general corporate purposes of the Borrowers in accordance with the Budget and (iii) to fund (A) Lender Expenses and fees pursuant to Section 3.07, (B) the repayment of any other Obligations and (C) to fund the making or purchasing of Advances pursuant to the Acquisition Agreement after the Initial Closing pursuant to Section 6.17 of the Acquisition Agreement."

SECTION 3.   Consent. Section 6.18 of the Loan Agreement requires the Borrowers to use the proceeds of the Loans solely for the purposes set forth in Section 6.18, including, among other things, in accordance with the Budget. In addition, Section 7.16 does not permit the Borrowers to make any loan, advance or other investment to any other Person. To the extent the Lenders' consent is required, the Borrowers have requested that the Lenders consent to a use of the Borrowers cash that is not presently provided for in the Budget so that the Borrowers can use an amount of Borrowers' cash in an aggregate amount not to exceed $7,000,000 to obtain the release of BofA's liens on the BofA Construction Loans (the "Construction Loan Advance"). On the First Amendment Effective Date, the Lenders consent to the Construction Loan Advance in an amount not to exceed $7,000,000 notwithstanding any limitation or prohibition set forth in the Loan Agreement.

SECTION 4.   Limited Lien on the BofA Construction Loans. Upon the Borrowers' payment of the Construction Loan Advance, the Lenders shall have a first priority lien on the BofA Construction Loans, which lien shall be released when the Borrowers have recovered from the collection, payoff, compromise, sale or other disposition of the BofA Construction Loans, an amount equal to the Construction Loan Advance. The Lenders acknowledge that any amounts recovered by Borrowers from the collection, payoff, compromise, sale or other disposition of the BofA Construction Loans in excess of the Construction Loan Advance will be free and clear of its liens and will be placed in escrow by the Borrowers to be used for the benefit of general unsecured creditors or as otherwise permitted by the Bankruptcy Court.

SECTION 5.   Consent to Disposition of BofA Construction Loans. Notwithstanding anything in the Loan Agreement to the contrary, upon and following the attachment of Lenders' lien to the BofA Construction Loans pursuant to Section 4 of this Amendment, the Lenders agree that the

Borrowers may collect, compromise, sell or otherwise dispose of the BofA Construction Loans in any manner that the Borrowers deem appropriate, subject to obtaining any necessary Bankruptcy Court approval, and that no consent of the Lenders to any such collection, compromise, sale or other disposition shall be required.

SECTION 6.  Waiver as to LPMI Advances.  In connection with the establishment of the LPMI Reserve pursuant to this Amendment, the Lenders waive any default that might have occurred under the Loan Agreement as a result of Borrowers having made the LPMI Advances.

SECTION 7.  Fees.  On the First Amendment Effective Date, the Parent shall pay to the Administrative Agent, for its own account, an amendment fee in the amount of $100,000.

SECTION 8.  Conditions.  This Amendment Agreement shall become effective as of the date set forth above on the date (the "First Amendment Effective Date") that the following conditions precedent have been satisfied:

(a)  Amendment Agreement.  This Agreement shall have been executed by each Borrower, the Administrative Agent and each Lender.

(b)  Payment of Fees.  The Administrative Agent shall have received the fee required to be paid pursuant to Section 4 hereof.

(c)  Court Order.  The Bankruptcy Court shall have entered an order approving this Amendment Agreement.

SECTION 9.  Effectiveness; Counterparts.  This Amendment Agreement shall become effective when counterparts hereof which, when taken together, bear the signatures of each of the Borrowers, the Administrative Agent and the Lenders shall have been received by the Administrative Agent. This Amendment Agreement may not be amended nor may any provision hereof be waived except pursuant to a writing signed by each of the Borrowers, the Administrative Agent and the Lenders. This Amendment Agreement may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute but one contract. Delivery of an executed counterpart of a signature page of this Amendment Agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart of this Amendment Agreement.

SECTION 10.  Representations.  Each Borrower represents and warrants to the Administrative Agent and each Lender that, after giving effect to this Amendment Agreement, (a) the representations and warranties set forth in Section 6 of the Loan Agreement are true and correct in all material respects on and as of the First Amendment Effective Date, except to the extent such representations and warranties expressly relate to an earlier date, and (b) no Default or Event of Default has occurred and is continuing.

SECTION 11.  Effect of Amendment.  Except as expressly set forth herein, this Amendment Agreement shall not by implication or otherwise limit, impair, constitute a waiver of, or otherwise affect the rights and remedies of the Lenders or the Administrative Agent under the Loan Agreement, and shall not alter, modify or in any way affect any of the terms, conditions, obligations, covenants, guarantees, pledges, grants of security or other agreements contained in the Loan Agreement,

all of which are ratified and affirmed in all respects and continue in full force and effect. Nothing herein shall be deemed to entitle any Borrower to a consent to, or a waiver, amendment, modification or other change of, any of the terms, conditions, obligations, covenants, guarantees, pledges, grants of security or other agreements contained in the Loan Agreement in similar or different circumstances. This Amendment Agreement shall apply and be effective only with respect to the provisions of the Loan Agreement specifically referred to herein. Each Borrower hereby acknowledges receipt of and consents to the terms of this Amendment Agreement.

SECTION 12. <u>Notices</u>. All notices hereunder shall be given in accordance with the provisions of Section 11.03 of the Loan Agreement.

SECTION 13. <u>Applicable Law; Waiver of Jury Trial</u>. (A) THIS AMENDMENT AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

(B) EACH PARTY HERETO HEREBY AGREES AS SET FORTH IN SECTIONS 11.10 AND 11.11 OF THE LOAN AGREEMENT AS IF EACH SUCH SECTION WERE SET FORTH IN FULL HEREIN.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment Agreement to be executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

        WLR RECOVERY FUND III, L.P.,
        as a Lender and as the Administrative Agent

        By:    WLR Recovery Associates III LLC,
                  its General Partner

        By: _____
            Name:
            Title:

        AMERICAN HOME MORTGAGE
        INVESTMENT CORP.

        By: _____
            Name:
            Title:

        AMERICAN HOME MORTGAGE
        HOLDINGS, INC.

        By: _____
            Name:
            Title:

NYI-4026370v8
DB02:6456210.1

066585.1001

AMERICAN HOME MORTGAGE CORP.

By: _____
    Name:
    Title:

AMERICAN HOME MORTGAGE ACCEPTANCE, INC.

By: _____
    Name:
    Title:

AMERICAN HOME MORTGAGE VENTURES LLC

By: _____
    Name:
    Title:

HOMEGATE SETTLEMENT SERVICES, INC.

By: _____
    Name:
    Title:

GREAT OAK ABSTRACT CORP.

By: _____
    Name:
    Title: