## EXHIBIT A

### The Fourth Amendment

FOURTH AMENDMENT
TO ASSET PURCHASE AGREEMENT

This Fourth Amendment to Asset Purchase Agreement dated as of January __, 2008 (this "Fourth Amendment"), is entered into by and among AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser"), American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing, Inc, a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, the "Sellers").

WHEREAS, Purchaser and Sellers are parties to that certain Asset Purchase Agreement, dated as of September 25, 2007, as amended by that certain First Amendment to Asset Purchase Agreement, dated as of November 1, 2007, that certain Second Amendment to Asset Purchase Agreement, dated as of November 6, 2007, and that certain Third Amendment to Asset Purchase Agreement dated as of November 16, 2007 (the "Agreement");

WHEREAS, Section 11.4 of the Agreement permits amendment of the Agreement by a written instrument signed by all of the parties to the Agreement with the prior written consent of the Administrative Agent (as defined in the Agreement) and with prior consultation with the official committee of unsecured creditors (the "Committee") appointed in the Bankruptcy Cases (as defined in the Agreement); and

WHEREAS, the parties to the Agreement desire to amend certain provisions of the Agreement pursuant to this Fourth Amendment in order to clarify the assets that will be acquired on the Final Closing Date by Purchaser.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1.    Definitions.  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Agreement.

Section 2.    Formation of Transition Entities.  The Company shall cause one or more entities (which may include, without limitation, corporations, limited liability companies, limited partnerships, trusts, general partnerships and the like entities) (each a "Transition Entity" and collectively the "Transition Entities") to be formed and organized in the jurisdictions and the manner as reasonably specified by Purchaser. From the date of such formation until the Final Closing, the Company shall (a) hold beneficially and of record all capital stock and other securities of and ownership interests in the Transition Entities, (b) own such capital stock, securities and ownership interests free and clear of all Claims and Liens other than any New Financing Liens and Permitted Liens and (c) cause the Transition Entities to own their respective assets free and clear of all Claims and Liens other than New Financing Liens and Permitted Liens. For purposes of the prior sentence, contracts entered into by the Transition Entities in accordance with the provisions of the Agreement (including Sections 6.1 and 6.2 thereof) shall

be deemed "Assumed Contracts" with respect to the definition of "Permitted Lien" in <u>Section 1.1</u> of the Agreement and the capital stock, securities of and ownership interests in the Transition Entities and the assets of the Transition Entities shall be deemed "Purchased Assets" with respect to the definition of "Permitted Lien" in <u>Section 1.1</u> of the Agreement. All Liabilities incurred by the Company in connection with the formation and organization of the Transition Entities in accordance with this <u>Section 2</u> shall be deemed to be incurred in connection with the operation of the Business in the Ordinary Course. For purposes of <u>Sections 2.7(b), 6.1, 6.2(a)-(c), 6.3, 6.5, 6.9, 6.14(b)</u> and <u>6.14(d)</u> of the Agreement, the business of the Transition Entities shall be deemed to be a part of the Business. For purposes of <u>Sections 6.1, 6.2(a)-(c), 6.5, 6.7, 6.14(b)</u> and <u>6.14(d)</u> of the Agreement, the assets of the Transition Entities shall be deemed Purchased Assets and for purposes of <u>Sections 6.1, 6.2(a) and 6.5</u> of the Agreement, the Contracts of the Transition Entities shall be deemed Assumed Contracts. For purposes of <u>Sections 2.7(b), 6.1, 6.2(a)-(c), 6.5, 6.7, 6.14(b)</u> and <u>6.14(d)</u> of the Agreement, the capital stock and other securities of and ownership interests in the Transition Entities shall be deemed Purchased Assets. In addition, for purposes of subpart (ii) of the last sentence of <u>Section 2.7(b)</u> of the Agreement, the Liabilities of the Transition Entities incurred in the operation of the Business pursuant to <u>Sections 6.1</u> and <u>6.2</u> of the Agreement shall be deemed to be Assumed Liabilities.

Section 3.    <u>Transfer of Ownership Interests</u>. At the Final Closing, the Company shall, for no additional consideration, deliver to Purchaser, as Purchased Assets, a certificate or certificates duly endorsed in blank for transfer with respect to any capital stock and other securities of and ownership interests in the Transition Entities or such other transfer instruments and documentation reasonably requested by Purchaser with respect to the ownership interests in the Transition Entities each in form and substance reasonably acceptable to Purchaser.

Section 4.    <u>Subservicing Agreements</u>. The Company shall enter into or be assigned and assume one or more subservicing agreements (the "<u>Greenwich Subservicing Agreements</u>") for the performance of the servicing of certain mortgage loans with respect to which Greenwich Capital Financial Products, Inc. has the right to appoint the servicer of such loans, subject to (a) the Debtors' review and consent to one or more forms of subservicing agreement, which such consent thereto and execution thereof will not be unreasonably withheld or delayed and (b) the Administrative Agent's and the Committee's review in accordance with the Subservicing Order (as defined below), and so long as Purchaser provides the Company an indemnity in substantially the form attached hereto as Exhibit A. From time to time, upon Purchaser's reasonable request, Sellers will file with the Bankruptcy Court one or more Subservicing Notices (as defined in the Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving (A) Procedures for AHM Servicing's Entry Into Subservicing Agreements and (B) the Entry Into One or More Subservicing Agreements, entered on January __, 2008 (the "<u>Subservicing Order</u>")) and, assuming either no objection to the Proposed Subservicing (as defined in the Subservicing Order) or any such objections having been withdrawn, overruled or otherwise resolved, the Company shall enter into one or more new subservicing agreements or assume one or more existing subservicing agreements, as applicable, with respect to each such Proposed Subservicing (each a "<u>Subservicing Agreement</u>" and collectively, together with the Greenwich Subservicing Agreements, the "<u>Subservicing Agreements</u>"), so long as Purchaser provides the Company an indemnity in substantially the form attached hereto as Exhibit A. The Administrative Agent and the Committee may object to any Proposed Subservicing or to the Company entering into or assuming, as applicable, any Subservicing Agreements with respect to such Proposed

Subservicing only in accordance with the Subservicing Order. For purposes of <u>Sections 2.7(b), 6.2(a)-(c), 6.3, 6.5, 6.7, 6.9, 6.14(b)</u> and <u>6.14(d)</u> of the Agreement, the Subservicing Agreements shall be deemed to be a part of the Business, and to be Purchased Assets and Assumed Contracts. In addition, for purposes of <u>Sections 2.5</u> and <u>2.7(b)</u> of the Agreement, Liabilities incurred by the Company under the Subservicing Agreements in accordance with <u>Sections 6.1</u> and <u>6.2</u> of the Agreement shall be deemed Assumed Liabilities. Any indemnity provided to the Company with respect to the Subservicing Agreements pursuant to this <u>Section 4</u> shall be in addition to, and not in limitation of, any rights Sellers may have under the last sentence of <u>Section 6.14(c)</u> of the Agreement; provided that in no event shall Sellers be entitled to duplicative recovery for the same Losses. For the avoidance of doubt, Subservicing Agreements shall constitute "servicing agreements" as such term is used in <u>Section 6.14(c)</u> of the Agreement.

Section 5.    <u>Limitation on Assignment of Liens and Financing</u>. Notwithstanding the provisions of <u>Section 6.14(a)</u> of the Agreement permitting assignment, Purchaser agrees that Purchaser will not assign the lien on and security interest in the Purchased Assets granted to Purchaser pursuant to <u>Section 6.14(b)</u> of the Agreement unless the assignee of such lien and security interest agrees that it shall be subject to the same counterclaims, defenses and rights of set-off as if such lien and security interest remained directly held by Purchaser.

Section 6.    <u>Consent; Consultation</u>. Sellers jointly and severally represent and warrant to Purchaser that Sellers have obtained the prior written consent of the Administrative Agent to enter into this Fourth Amendment and have consulted with the Committee prior to entering into this Fourth Amendment.

Section 7.    <u>Amendment</u>. This Fourth Amendment may be amended, modified and supplemented only by a written instrument signed by all of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Fourth Amendment. Sellers shall not agree to amend, modify or supplement this Fourth Amendment, or waive any provision of this Fourth Amendment without the prior written consent of the Administrative Agent and without prior consultation with the official committee of unsecured creditors appointed in the Bankruptcy Cases.

Section 8.    <u>Counterparts</u>. This Fourth Amendment may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when two or more counterparts have been signed by each of the parties and delivered to the other parties. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

Section 9.    <u>Entire Agreement; No Third Party Beneficiaries</u>. The Agreement as amended by this Fourth Amendment (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and thereof, except for the Confidentiality Agreement, which shall remain in full force and effect until the Initial Closing Date, and (b) is not intended to confer any rights or remedies upon any Person other than the parties hereto and thereto, including without limitation any Business Employee or Transferred Employee.

Section 10.    Governing Law.  THIS FOURTH AMENDMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH (A) THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO RULES GOVERNING THE CONFLICT OF LAWS AND, (B) TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

**[SIGNATURES ON FOLLOWING PAGE]**

DI1-6163778v9

IN WITNESS WHEREOF, Purchaser and Sellers have executed this Fourth Amendment or caused this Fourth Amendment to be executed by their respective officers thereunto duly authorized as of the date first written above.

AH MORTGAGE ACQUISITION CO., INC.,
as Purchaser

By: _____
　　　　　Name:
　　　　　Title:

AMERICAN HOME MORTGAGE
INVESTMENT CORP.,
as Seller and Debtor and Debtor-in-Possession

By: _____
　　　　　Name:
　　　　　Title:

AMERICAN HOME MORTGAGE CORP,
as Seller and Debtor and Debtor-in-
Possession

By: _____
　　　　　Name:
　　　　　Title:

AMERICAN HOME MORTGAGE
SERVICING, INC.,
as Seller and Debtor and Debtor-in-Possession

By: _____
　　　　　Name:
　　　　　Title:

## Exhibit A

### Form of Indemnity

AH Mortgage Acquisition Co., Inc. hereby agrees (A) to indemnify and hold harmless American Home Mortgage Servicing, Inc. and its Affiliates from and against any Losses arising as a result of or in connection with the provision of services by American Home Mortgage Servicing, Inc. pursuant to, or otherwise arising out of or in connection with, that certain [Describe the Subservicing Agreement], and (B) that until the later of (i) the Final Closing Date (as defined in the APA) and (ii) the satisfaction of (or the establishment of reserves in the amount of) any and all indemnity claims outstanding at the Final Closing arising in favor of American Home Mortgage Servicing, Inc. and its Affiliates in connection with services provided by American Home Mortgage Servicing, Inc. pursuant to the [Describe the Subservicing Agreement], AH Mortgage Acquisition Co., Inc. shall not encumber its assets through the incurrence or issuance of indebtedness for borrowed money or withdraw or distribute any of its capital, other than withdrawals or distributions in amounts equal to any amounts received by AH Mortgage Acquisition Co., Inc. as an adjustment to the Purchase Price (as defined in the APA), including, without limitation, amounts received pursuant to Section 4.1(c) or Section 4.4 of the APA. AH Mortgage Acquisition Co., Inc. further agrees that the [Describe the Subservicing Agreement] shall provide that upon the assignment of [Describe the Subservicing Agreement] by American Home Mortgage Servicing, Inc. to AH Mortgage Acquisition Co., Inc. at the Final Closing Date, AH Mortgage Acquisition Co., Inc. shall assume all of American Home Mortgage Servicing, Inc. obligations and liabilities, whether arising prior to or after the Final Closing Date. Finally, AH Mortgage Acquisition Co., Inc. shall use commercially reasonable efforts to secure a release in favor of American Home Mortgage Servicing, Inc. of all claims arising out of or in connection with the [Describe the Subservicing Agreement], such release to be effective upon the assignment of [Describe the Subservicing Agreement] to AH Mortgage Acquisition Co., Inc.