UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                          .    Chapter 11
                                .
AMERICAN HOME MORTGAGE          .    Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware      .    (Jointly Administered)
corporation, *et al.*,          .
                                .    December 12, 2007
                                .    12:00 p.m.
            Debtors.            .    (Wilmington)
                                .


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE CLERK: All rise.

2          THE COURT: Please be seated.  Good afternoon.

3          MR. CLEARY: Good morning, Your Honor.  Or, good

4    afternoon, Your Honor.  May it please the Court, Blake Cleary

5    of Young, Conaway, Stargatt & Taylor on behalf of American

6    Home Mortgage Holdings, Inc. and it's affiliated Debtors and

7    Debtors in Possession.  Moving right through the amended

8    agenda that was filed yesterday, item no. 1 is the 2004

9    motion.  This motion has been resolved, and an order, I guess

10   an order will be submitted.  The next, next four matters are

11   matters that have been adjourned by agreement of the parties,

12   unless Your Honor has any questions or concerns with that.

13   And then that brings us to agenda item no. 6, which is

14   Mortgage Electronic Registration Systems' motion.  I

15   understand that an order has been entered granting that

16   relief as well.  Which then brings us to a series of motions

17   for relief from stay, where certificates of no objection have

18   been filed.  And I guess with that, I would turn it over to

19   Adam Hiller to address the Court's issues to the extent the

20   Court has concerns with respect to those items.  And then

21   return for our matters.

22          THE COURT: All right.  Mr. Hiller

23          MR. HILLER: Good afternoon, Your Honor.  Adam

24   Hiller on behalf of various movants reflected on items 7

25   through 19 of the agenda.  Your Honor, these were motions for

1    relief from stay, and we did file what I termed qualified

2    certificates of no objection.  Your Honor, in each of these

3    instances, the Debtors filed a reservation of rights in

4    connection with the motion.  Essentially, as always,

5    asserting that they were reserving their rights with respect

6    to property once our client foreclosed on it, under

7    applicable non-bankruptcy law.  That being no problem, we

8    were, were not certain about the proper procedural way of

9    presenting the, presenting it to the Court on an unopposed

10   basis, so I invented a form called, Qualified Certificate of

11   No Objection, in which I recited that a reservation of rights

12   had been filed, but no opposition had been made to the

13   motion.  We were unable, unfortunately, to get the, the

14   copies of those over to chambers before today's hearing, so I

15   wanted to make sure to come to the Court, and explain to the

16   Court exactly what has occurred and - -

17           THE COURT: Okay.

18           MR. HILLER:  - - give Your Honor the opportunity to

19   instruct us in a different way of presenting that in the

20   future, or saying that that's fine.

21           THE COURT: Well I think, well, let's deal with

22   what's actually in front of the Court first.  Do you have

23   orders?

24           MR. HILLER: Yes, Your Honor.

25           THE COURT: You may approach.  Any objection to

1    entry of the orders, Mr. Cleary?  All right.  The Debtors did

2    send over the CNO's, but they didn't send over the orders,

3    so.  Creativity is probably not to be rewarded, so rather

4    than using a CNO, I think you can use a CNO, frankly.  I

5    don't think you need to qualify it as qualified.  If you're

6    changing an order, it needs to be certification of counsel,

7    and if you're not changing the order it needs to be under

8    CNO.  So I would just file a CNO that indicates a reservation

9    of rights has been filed.

10              MR. HILLER: Okay.

11              THE COURT: I'll enter these orders after the

12    hearing.

13              MR. HILLER: Thank you, Your Honor.

14              MR. CLEARY: Your Honor, that brings us to, I guess

15    agenda item no. 20, which is a notice that we filed in

16    connection with the construction loan sales.  As Your Honor

17    may recall, there was a stipulation with ABN AMRO whereby

18    there were certain arrangements made with ABN for the

19    disposition of those construction loans.  And if certain

20    triggering events happen, then ABN would, or the Debtors

21    could put those loans to ABN, and that has occurred.  Those

22    triggering events have occurred.  So we're in the process of

23    putting those loans, and transferring, conveying the leasing,

24    whatever the proper terminology is, to ABN.  ABN has come

25    back and requested that that date occur sometime in the

1    future.   In exchange, they've asked that the Debtors continue

2    to perform under the construction loans.   There's a funding

3    stipulation that's been in place, and it's continued by this

4    stipulation to permit the draws to be funded on a current

5    basis.

6            THE COURT: All right.   So if a consumer has a draw

7    that's approved by the inspector, the consumer actually gets

8    the funds.

9            MR. CLEARY: That's correct.

10           THE COURT: Under the stipulation.   Okay.

11           MR. CLEARY: Subject to ABN funding us, then we fund

12   the borrower.

13           THE COURT: But that's going, that's happening.

14           MR. CLEARY: That's - -

15           THE COURT: Unlike, unlike, for instance, the Bank

16   of America loans.

17           MR. CLEARY: That's correct.

18           THE COURT: All right.

19           MR. CLEARY: And so this is a stipulation that would

20   continue that would give ABN AMRO additional time to find an

21   ultimate holder for the construction loans.   And so we would

22   respectfully request that the Court approve that stipulation.

23   Unfortunately, I noticed in my hearing binder, and I don't

24   know if it was submitted to the Court, an order approving

25   that stipulation.   So if Your Honor is inclined to approve

1    it, I would follow up today with a cert of counsel with an

2    order, a simple order approving the stipulation.

3              THE COURT: I'll just so order the stipulation.

4              MR. CLEARY: Okay.  Thank you, Your Honor.  I

5    apologize for the inconvenience.

6              THE COURT: That's all right.  This is the second

7    stipulation between Debtors and ABN AMRO?

8              MR. CLEARY: Correct.

9              THE COURT: All right.  Does anyone wish to be heard

10   in connection with the matter?

11             MR. CLEARY: It's, it's the second stipulation with

12   respect to this subject matter.  There are other stipulations

13   with ABN, but they're recited in the second stipulation.

14             THE COURT: Regarding post-petition advances and

15   sale of construction loan portfolio.  Right?

16             MR. CLEARY: Correct.  Correct, Your Honor.

17             THE COURT: Okay.  Yes, sir.

18             MR. MOORE: Your Honor, hello.  Robert Moore of

19   Milbank, Tweed, Hadley & McCloy on behalf of ABN.  And I'd

20   simply like to confirm that ABN is continuing to fund under

21   the same terms as set forth in the original stipulation and a

22   so ordered approach to the stipulation would be acceptable to

23   us.  We're in the process of putting together the mechanism

24   to transfer the loans to an ABN related entity, and the issue

25   relates to having the appropriate servicing and origination

1    licenses in place.

2          THE COURT: All right.

3          MR. MOORE: And that process is ongoing.

4          THE COURT: Okay.

5          MR. MOORE: Thank you, Your Honor.

6          THE COURT: You're welcome.

7          MR. CLEARY: Your Honor, agenda item no. 21 is the

8    motion of CIFG for relief from the automatic stay, and I'll

9    turn it over to counsel to CIFG, Stefanie Greer.

10          THE COURT: Okay.  Give me just a sec.  Yes.  Mr.

11    Bowden.

12          MR. BOWDEN: Good afternoon, Your Honor.  Bill

13    Bowden of Ashby & Geddes on behalf of CIFG Assurance.  I

14    wanted to introduce Your Honor to my co-counsel, Stefanie

15    Greer, who's with the King & Spalding firm and will be making

16    the presentation on behalf of CIFG.

17          THE COURT: All right.  Thank you.  Welcome.

18          MS. GREER: Thank you, Your Honor.  Stefanie Greer

19    from King & Spalding on behalf of CIFG.  We're here today on

20    CIFG's motion for relief from the stay to terminate the

21    Debtors as servicer of certain HELOC mortgage loans.  The

22    Debtors filed a response, and joinders were filed by Deutsche

23    Bank and GMAC.  I'm pleased to report we have an agreement

24    with the Debtor.  Which we will, and we intend to present the

25    proposed order at the appropriate time.  However, although we

1   do have an agreement with the Debtor, and this should be

2   quite simple, there are certain parties here that, although

3   they don't oppose the substantive relief that we've

4   requested, they do have certain requests for provisions in

5   the order, which we believe are extraneous to the relief that

6   we've requested, that the Debtors believe are extraneous, and

7   that we really do not believe need to be addressed at this

8   hearing.  We understand these issue primarily to be GMAC's to

9   be first the timing of the transition of these HELOC mortgage

10  loans from the Debtor to GMAC.  The second is the inclusion

11  in the order of specific language regarding terms and

12  conditions of the transition.  We believe that the current

13  order adequately addresses this issue.  And the third issue

14  that GMAC has is a notice that they want to provide to

15  borrowers that there's going to be no further funding under

16  these HELOC loans.  Again, Your Honor, we believe that all of

17  these issues are extraneous.  We do have an agreement with

18  the Debtors on the terms of the motion.  No one objects to

19  the substantive relief.  So I ask Your Honor, if you'd like

20  to hear from the other parties first, or if you'd like me to

21  walk through the agreed upon order between the Debtors and

22  CIFG.

23          THE COURT: Well let's, let's finish your piece

24  first, and then I'll deal with the objections.

25          MS. GREER: Okay.  I have a black line showing the

1    changes from the order that we filed with the Court.  May I

2    approach with that?

3            THE COURT: Yes.  Thank you.

4            MS. GREER: Just running through this quickly, Your

5    Honor.  The first portion of the changes are just to reflect

6    the responses received.

7            THE COURT: Okay.  Hang on.  Slow down.  I'm not

8    going to let you go through it fast.

9            MS. GREER: Okay.

10           THE COURT: All right.  I'm into the ordered

11   paragraphs.  So you can run me through them.

12           MS. GREER: All right.  What this, the first ordered

13   paragraph clarifies that the motion is granted to the extent

14   set forth in the order.  The second ordered paragraph makes

15   it clear that we are transferring the, we're terminating the

16   Debtors as servicer, and transferring the rights and

17   responsibilities - - and I'm going to add in the word

18   responsibilities when we submit this order, if and when we

19   submit this order - - of American Home as servicer.  This

20   basically clarifies what rights are being transferred.  And

21   we identify them as the servicing rights for later on in the

22   order.

23           THE COURT: All right.  So you're terminating the

24   automatic stay to terminate the Debtor as servicer.

25           MS. GREER: Yes.

1          THE COURT: And to transfer the rights - -

2          MS. GREER: The rights and responsibilities of the

3   Debtors - -

4          THE COURT: As servicer - -

5          MS. GREER: Yes.

6          THE COURT:  - - to GMAC?

7          MS. GREER: Yes.

8          THE COURT: All right.

9          MS. GREER: We've taken out this paragraph which the

10  Debtors referred to as the transition conditions.

11         THE COURT: Um-hum.

12         MS. GREER: We've addressed that later on.  So we'll

13  just take that out for now and I'll explain that in a bit.

14  This next paragraph clarifies that the Debtors are entitled

15  to servicing fees that are incurred but not yet paid as of

16  the date of transition.

17         THE COURT: Okay.  Hang on.  Okay.

18         MS. GREER: The next paragraph, Your Honor, makes,

19  it provides that the termination will be effective as of

20  January 14th, 2008.  And that as of such time the Debtors are

21  relieved of any obligations - -

22         THE COURT: Okay.

23         MS. GREER:  - - as servicer under the documents.

24         THE COURT: Okay.  Okay.

25         MS. GREER: Following that, Your Honor, is a

1   provision requiring the Debtors to cooperate with GMAC to

2   transfer the servicing rights to GMAC.  And just for future

3   reference, this is one of the provisions that GMAC has an

4   issue with.  And they'll, I'm sure, address that.

5           THE COURT: Now your client owns the loans.

6           MS. GREER: Our client is the insurer of the - -

7           THE COURT: Of the insurer end of the loans.

8           MS. GREER:  - - securities.  Yeah.

9           THE COURT: All right.  GMAC's agreed to be

10  servicer.

11          MS. GREER: GMAC has agreed to be servicer.

12  Although under the documents, once CIFG directs them to

13  terminate the Debtors as servicer, they become servicer

14  automatically.

15          THE COURT: They're the backup servicer - -

16          MS. GREER: They, they don't - -

17          THE COURT:  - - under the agreement.

18          MS. GREER:  - - necessarily have a say.

19          THE COURT: All right.

20          MS. GREER: The following - -

21          THE COURT: Presumably at some point they signed an

22  agreement that said that that was going to happen.

23          MS. GREER: Yes, Your Honor.  They are parties to

24  the HELOC servicing agreement.  They're also parties to the

25  HELOC backup servicing agreement.

1           THE COURT: All right.

2           MS. GREER: So I don't think there's any dispute,

3   and GMAC will correct me if I'm wrong, that GMAC has an

4   obligation to service these loans.

5           THE COURT: Okay.

6           MS. GREER: The following paragraphs are

7   reservations of rights of the Debtors, CIFG, GMAC, and the

8   Indentured Trustee with respect to the transaction generally.

9   I have to make one correct that GMAC's counsel has pointed

10  out to me.  To be sure in the last sentence that we refer to

11  the mortgage purchase agreement.  Other than that, these

12  provisions are identical.  The next one, two, three, four

13  provisions.  Or five provisions, actually.

14          THE COURT: All right.

15          MS. GREER: And I will just point out something in

16  the CIFG paragraph.  That CIFG is waiving their right to

17  assert an administrative claim for a limited period after

18  entry of the order.  So between entry of the order and that

19  January 14th date.  That was something the Debtors requested

20  and was part of our compromise.

21          THE COURT: All right.

22          MS. GREER: The final, final substantive paragraph

23  is, provides an additional time and extends the bar date to

24  allow GMAC and CIFG to file any claims relating to the

25  transition.  If the transition is not going to occur until

1  January 14th, the bar date is January 11th.  That gives us some

2  time to understand if and whatever claims we may have, and

3  file appropriate claims with the Debtors.

4        THE COURT: Okay.

5        MS. GREER: So I'm sure Mr. Cleary will let me know

6  if I have misstated or missed anything.

7        THE COURT: All right.

8        MR. CLEARY: (Microphone not recording.)

9        THE COURT: Mr. Cleary.

10        MS. GREER: Oh, I'm sorry.  You're right.  I've

11  forgotten to correct, on the, let's see, on page 3, the first

12  ordered paragraph.  It is further ordered that

13  notwithstanding anything to the contrary in the order.  I had

14  forgotten to strike the last sentence which is, Reduced by

15  any and all fees and costs associated with the transition of

16  the servicing to GMAC.  That was just an error in the back

17  and forth last night between myself and Mr. Cleary.

18        THE COURT: All right.

19        MS. GREER: So we will, if and when we're submitting

20  that order, we will make sure that it's corrected.  I will

21  cede podium to Mr. Cleary and, if he has any comments, we can

22  go from there.

23        MR. CLEARY: Your Honor, I don't believe I have any

24  comments with respect to the form of order.  As you can

25  imagine, there was many hours that went into this form of

1    order to reach an accommodation that we believe is beyond

2    what is customary in a, an order granting relief from stay.

3    But we were willing to enter into these arrangements to

4    facilitate the transfer of these HELOCs.  So with that we

5    would respectfully request that the Court enter the form of

6    order as proposed.

7             THE COURT: All right.  Well basically it's, there's

8    a lot of language here.  But basically as I understand it,

9    there's stay relief to allow for the termination and

10   transfer.  There's an agreement as to the transfer date.

11   There's a provision requiring cooperation.  And there's

12   reservations of rights.  That's all I see.

13            MS. GREER: That's all there is, Your Honor.

14            THE COURT: All right.

15            MS. GREER: Excuse me.  And a limited waiver.  But I

16   - -

17            THE COURT: Where's the limited waiver?

18            MS. GREER: It's on the top of - -

19            THE COURT: Limited waiver by whom?

20            MS. GREER:  - - page 5.

21            THE COURT: Limited waiver by your client - -

22            MS. GREER: Right.

23            THE COURT:  - - of administrative expense claims.

24            MS. GREER: Exactly.

25            THE COURT: All right.

1          MS. GREER: And Your Honor, again, the, CIFG, who's

2     the movant, and the only party that filed this motion, and

3     the Debtors, agree to this relief and we believe that this

4     appropriately deals with the relief that we're seeking.

5     Again, we believe that the, any additional provisions would

6     be extraneous to the order.

7          THE COURT: All right.  And how, in any way, does

8     this affect the rights of GMAC?

9          MS. GREER: This, this order does not affect the

10    rights of GMAC.

11         THE COURT: Well, it sets a deadline whereby which

12    - -

13         MS. SPRINGER: May I speak?

14         THE COURT: It sets a deadline by which they have to

15    take the - -

16         MS. GREER: The servicing.

17         THE COURT:  - - to take the loans.

18         MS. GREER: Right.  That, that's - -

19         THE COURT: Is that, is that consistent with the,

20    the, their pre-petition agreement?

21         MS. GREER: It's consistent with the agreement.  And

22    if you look at the language, Your Honor, basically what this

23    says is that the servicing rights, the more, the rights and

24    obligations of, as servicer of the HELOC mortgage loans shall

25    be deemed terminated effective as of January 14th.  And AHMA

1   shall be relieved of the obligations as servicer.  So what

2   this does is it relieves the Debtors of their obligations.

3   It doesn't necessarily direct GMAC to take over the

4   servicing.  That will be taken care of as between us and

5   GMAC.  Obviously, CIFG intends to direct GMAC to take over

6   these loans, and it is our understanding that they intend to

7   take over these, the servicing of these loans.

8           THE COURT: Well how many loans are we talking about

9   here?

10          MS. GREER: The HELOC mortgage loan pool I think is,

11  I think this one is about 500 loans.  Although I'm not 100%

12  sure, Your Honor.

13          THE COURT: Well who's going to service these

14  people's loans.

15          MS. GREER: GMAC is going to be serving, servicing

16  these loans.  Pursuant to the documents, GMAC has an

17  obligation to service these loans.

18          THE COURT: All right.

19          MS. GREER: Upon direction from CIFG.

20          THE COURT: All right.  Well, let me hear from GMAC.

21  Ms. Springer.

22          MS. SPRINGER: Good morning, Your Honor.  Claudia

23  Springer for GMAC Mortgage Corporation.  Your Honor, I,

24  before I get started on my main concern about this motion,

25  I'd like to address a couple of points that I think were,

1    were not completely accurate.  In the, in the form of order

2    that's been presented, I think there's the language that says

3    something like AHM's obligations as servicer will terminate

4    as of January 14th.  I want to make it perfectly clear that

5    there are obligations in the servicing agreement of AHM that

6    last after their, quote, "servicing obligations" terminate.

7    And that has to be understood.  There are cooperation

8    provisions and transition provisions that need to be complied

9    with in order for the transition to run smoothly.  And GMAC

10   does not agree that AHM's obligations under that agreement

11   end on January 14th.  They may not have to service the loans

12   after GMAC has taken over the servicing, whenever that date

13   is, but there are obligations to respond to questions, to

14   make sure the loans are transferred over to GMAC in an

15   orderly fashion, to provide GMAC with documentation which

16   shows what they did when they were in charge of these loans

17   so that we are not at a loss to take over from where they

18   left off.  So that's my first issue.  My second issue, I

19   think, is much more fundamental.  Do you want me to point out

20   where that is.

21           THE COURT: No, I saw it.  I'm trying to figure out

22   where servicer is defined.

23           MS. SPRINGER: I think it's defined in the

24   agreement, actually.

25           THE COURT: It's a capitalized term in the order.

1          MS. SPRINGER: Or it may be in the motion.

2          THE COURT: You've changed, you've changed servicer

3    from lower case to initial capitalization in the second

4    ordered paragraph, but you haven't defined it.  So what do

5    you mean?

6          MS. GREER: Servicer is defined in the HELOC

7    servicing agreement, Your Honor.  And we will, we can make

8    that very clear.

9          THE COURT: All right.  It needs to be clear.

10         MS. SPRINGER: But what Ms. Greer did not make clear

11   is that the document itself is not very clear.  And - -

12         THE COURT: Well, I can't, I can't - -

13         MS. SPRINGER:  - - the document - -

14         THE COURT:  - - fix that Ms. Springer.

15         MS. SPRINGER: I understand that, Your Honor.  But

16   what I am trying to say is that there are obligations of

17   American Home Acceptance, under this document.  I don't want

18   there to be any confusion.  Whether you call them a servicer,

19   or a sponsor, or what have you.  There are obligations that

20   last after the servicing obligations have been transitioned

21   over to GMAC as backup servicer.

22         THE COURT: Well you're - -

23         MS. SPRINGER: Because we, we will then become the

24   servicer, but we cannot possibly know what happened before we

25   became the servicer.

1          THE COURT: Are you, are you a party to that

2   agreement?

3          MS. SPRINGER: Yes.

4          THE COURT: To the, that gives, that purports to

5   give the Debtors these obligations?

6          MS. SPRINGER: Yes.

7          THE COURT: And is there anything in this order

8   releasing the Debtors?

9          MS. SPRINGER: Well - -

10         THE COURT: From their obligations under this

11  contract?

12         MS. SPRINGER: I think it's confusing.  I think

13  frankly this language that says - -

14         THE COURT: It says, AHMA's rights an obligations as

15  servicer shall be deemed terminated effective as of January

16  14, 2008.

17         MS. SPRINGER: Right.  I think that - -

18         THE COURT: And shall be relieved of the obligations

19  as servicer after that date.

20         MS. SPRINGER: Right.

21         THE COURT: And your point is - -

22         MS. SPRINGER: My point is - -

23         THE COURT:  - - that you - -

24         MS. SPRINGER:  - - any, any obligations that do not

25  terminate under that agreement as of the date that they no

1    longer service, as far as we're concerned, are not

2    terminated.  Now they may move to reject that agreement.

3    They may do whatever they need to do.

4         THE COURT: Well, even if they - -

5         MS. SPRINGER: I don't even know if they can reject

6    it.  But the bottom line is that is not something that we

7    will agree to in this form of order.  As the incoming

8    servicer.  And I know Ms. Greer said that we were, whatever

9    we've asked for is extraneous, but I beg to differ with her.

10   We are going to be the servicer under this contract.  I would

11   say that our comments are not extraneous.  We have some - -

12        THE COURT: Don't get - -

13        MS. SPRINGER:  - - concerns about this.

14        THE COURT: Don't get excited.

15        MS. SPRINGER: Okay.

16        THE COURT: All right.  I understand your point.

17        MS. SPRINGER: Okay.  My second point, Your Honor,

18   is some, is a point of, you know, fundamental fairness and

19   notification that I'm very troubled about.  We have, we

20   believe that there is, that there has been a lack of

21   disclosure here to the individual HELOC borrowers under these

22   loans.  As Your Honor is well aware, the way HELOCs work is

23   that they are lines of credit.  Generally they go out

24   sometimes ten, sometimes twenty years.  Where individual

25   consumers can borrow and repay money under their loans.  And

1    generally the way that's done is that the lender gives them a

2    checkbook.  And essentially what happens is the consumer goes

3    and writes a check.  And the check presumably clears.  Okay.

4    Well, in this particular situation, American Home Acceptance

5    wears two hats.  They wear the hat as the servicer, and the

6    hat as the lender.  What's supposed to happen, if the, if we

7    didn't have the situation that we currently find ourselves

8    in, is that if a borrower goes to write a check, that check

9    is supposed to clear.  And it clears because American Home

10   Acceptance provides the funding necessary to clear that

11   check.  Well that isn't going to happen anymore.  American

12   Home Acceptance is no longer going to be funding those draws.

13   And GMAC is not obligated to fund any draws.  GMAC is

14   strictly in there as the backup servicer to take over the

15   servicing obligations that American Home Acceptance, as

16   servicer, is no longer going to be providing.  Which means

17   that if a person who has borrowed money, or who has taken out

18   one of these HELOCs, goes to write a check, that check is

19   going to bounce.  And that person doesn't have the knowledge

20   or the wherewithal to protect themselves against an

21   embarrassing or even a financially damaging situation,

22   because they never got the notice from American Home

23   Acceptance that they weren't lending anymore, and that they

24   are now going out of business, essentially.  So while Mr.

25   Cleary may argue that this may not be the correct procedural

1  posture to mandate that the Debtor sends the notice, I would

2  argue that everybody that's got an interest in this, but for

3  the consumers, are represented in court today.  And as far as

4  I'm concerned, those folks deserve to get a notification that

5  says that American Home Acceptance is no longer making loans

6  under these HELOCs, and for you to take whatever protective

7  measures you need to take, if you need to take any.  And that

8  is my main concern.  Lastly, we have a concern about the, the

9  date of January 14th.  As far as we are concerned, we would

10  prefer the end of the month rather than the middle of the

11  month.  It is, you know, when you're transitioning loans to

12  another servicer, it is better to have them done at the end

13  of a month than the beginning of the month.  However that, in

14  my order of priorities, that is at the bottom.  The

15  notification one is at the top.  Thank you, Your Honor.

16          THE COURT: You're welcome.

17          MR. STRATTON: Good afternoon, Your Honor.  David

18  Stratton for Deutsche Bank National Trust Company.  We serve

19  as Trustee or Indentured Trustee for, I think it totals up 37

20  different mortgage backed securities trusts, including the

21  trust that effects or has a relationship with these HELOC

22  loans.

23          THE COURT: All right.

24          MR. STRATTON: We support GMAC's position on this.

25  And there's really two issues.  One is the notice to

1    borrowers.  If I understood counsel correctly, there's 500

2    borrowers, so it would seem in the scheme of this case, and

3    looking around the courtroom the costs that are being

4    associated with its administration, that giving notice would

5    be a diminimous expense.  And it would also seem to me that

6    giving the borrowers notice would eliminate some of the

7    confusion associated with the transition, eliminate the

8    potential for claims against the estate, or third parties, I

9    don't know who, borrower goes out and writes a check against

10   a home equity loan, check bounces, borrower ends up with a

11   claim against the estate perhaps.  So it seems to me that

12   it's prophylactic that might well be worth the little bit of

13   expense we're talking about.  With respect to the second

14   issue, paragraph 15, that is that the, the Debtors are

15   required to comply with the terms of their agreements with

16   GMAC in transitioning, transitioning service.  It seems to me

17   that that's only stating the obvious, and shouldn't be as

18   controversial as it seems to be.  Although I do note, and I

19   need to look at the form of order, Because I haven't seen it

20   before now, but I do note that in one paragraph they sort of

21   go halfway to the point.  If I can find the language, Your

22   Honor.  I apologize, because I've got lots of papers floating

23   around up here.  Here it is.  This is how I was taught to do

24   this in a trial seminar.  Have lots of papers on the podium,

25   and fumble around.  I apologize for that.  In, I think it's

1    the third page, the last decretal paragraph.  It is further

2    ordered that the Debtor shall cooperate with GMAC to

3    transition, to transfer the servicing rights to GMAC.  It

4    seems to me that that should be pursuant to whatever

5    agreements - -

6                THE COURT: Yup.  I understand.

7                MR. STRATTON:  - - are between the parties.  And

8    second, the proviso that the Debtor shall not be required to

9    cooperate to the extent commercially practicable, shall only

10   be required to cooperate to the extent commercially

11   practicable.  It seems to me, again, that could significantly

12   limit, or cut back on, their contractual obligations.  Or,

13   put differently, the contract should define what's

14   appropriate and what's not.  Otherwise, we could be in a

15   situation where there's a, essentially GMAC has a mess

16   dropped into its lap.  There's losses on these loans which

17   will funnel through to the beneficiaries of the trusts for

18   which we are service trustee or indentured trustee.  And

19   that's our concern, is to avoid, to the greatest extent

20   possible, any losses on these loans.

21               THE COURT: Okay.  Thank you.

22               MR. STRATTON: If Your Honor has any questions, I'd

23   be happy to answer them.

24               THE COURT: No.

25               MR. STRATTON: Thank you.

1          MR. McMAHON: Your Honor, good afternoon.  Joseph

2    McMahon for the United States Trustee.  Your Honor, we didn't

3    file papers relating to the motion, but we did want to

4    express support of GMAC's position as it relates to

5    specifically the notice issue.  We're concerned about the

6    prospect of consumers out there who may be unaware as to what

7    is going on precisely with respect to the home equity lines

8    of credit that they obtained from American Home prior to the

9    bankruptcy.  We believe that it's an issue of fundamental

10   fairness, and while we would, I guess, would reserve the

11   right to address that issue in the manner that the Court

12   deems appropriate after Your Honor rules upon it, we do

13   believe that it's an issue that can be addressed today, and

14   should be.  It doesn't seem like cost is a huge issue, given

15   the number of borrowers that we're talking about.  And it

16   would be entirely appropriate for the Debtor to incur that

17   expense to avoid what might be a more significant impact upon

18   the consumers.  Especially during this time of the year, at

19   this holiday season, where they may be incurring obligations

20   that they will find out they will not be able to meet if they

21   were relying upon those lines of credit.  Thank you.

22          THE COURT: You're welcome.

23          MR. INDELICATO: Good afternoon, Your Honor.  Mark

24   Indelicato from Hahn & Hessen on behalf of the Committee.

25   Your Honor, as with the US Trustee we didn't file pleadings

1    with respect to this motion.  We had spoken to the Debtor,

2    and given that they were in essence consenting to the motion,

3    and we reviewed it, we agreed with them, we felt that there

4    was no sense filing pleadings.  We would reserve our rights.

5    We have not seen the latest version of the order, so we would

6    like to see it before it's submitted to the Court.  Your

7    Honor, with respect to the notice, we are also mindful of the

8    concerns expressed by the US Trustee and GMAC.  But

9    unfortunately I'm not so sure the issue is easily addressed

10   as they had, they had represented to the Court.  While Ms.

11   Springer has represented to the Court that GMAC has no

12   obligation to fund, that may in fact be true.  But it's

13   asking for a legal conclusion based on documents that are not

14   before Your Honor.  My concern is, and I think that all the

15   parties should work together to draft an appropriate notice

16   to these parties, because quite honestly if my HELOC wasn't

17   going to be honored, I'd want to know, and I think that's

18   quite appropriate.  But they may have other rights against

19   other parties.  GMAC, or the insurer, or other parties.  And

20   to simply say, Your, your HELOC is no longer going to be

21   honored and obligated, and it is not going to, you know,

22   revolve, I think requires a finding of fact and conclusions

23   of law of this Court, based on documents that haven't been

24   put before Your Honor.  I'm happy to work with the parties to

25   get an appropriate notice out quickly to inform the parties

1   that there, there may not be any funding under this from

2   American Home, and there may be other rights available to

3   them.  But to just say that it's not going to be revolved, I

4   think Your Honor, may be a misstatement.  I'm not sure it's

5   the appropriate notice to send out.  So that, that was the

6   Committee's concerns about that, Your Honor.

7           THE COURT: Well, there's no question that the

8   Debtor is not going to fund these.

9           MR. INDELICATO: That's correct, Your Honor.

10          THE COURT: And when, how long has the Debtor not

11  been funding them?

12          MR. INDELICATO: I believe we've had conversations

13  with the Debtors since the inception of the case.  And I know

14  in some instances the lenders asserted rapid amortization

15  events, which means the Debtor had no funding available.  But

16  I'll let Debtors' counsel respond.  But my understanding is

17  they haven't been funding these since the filing.

18          THE COURT: Okay.

19          MR. CLEARY: Let me back up, Your Honor, so you make

20  sure we understand how the HELOCs work, because I think it

21  answers the question you're asking.  Have they been funded?

22  And I think you can answer that two ways.  Have the Debtors

23  written a check?  I don't think so.  But have the Debtors

24  been required to write a check for, to a borrower?  I think

25  the answer to that is no.  So you back up and you understand

1   the HELOCs.  The HELOC is a revolving line of credit.  So

2   what happens is every month we collect principle and interest

3   payments from all of the borrowers.  And then in a managed

4   amortization event, you take those monies, people will make

5   draws, those draws will be funded, and the rest will be

6   remitted to the trust.  The trust then administers, and it

7   goes out to the ultimate note holders who have purchased

8   these mortgage backed instruments.  So have the HELOCs been

9   funded?  I think the answer to that is yes.  I don't know

10  that they haven't been funded in terms of from a consumer

11  perspective.  So I guess that's point one.  Point two, I

12  would support Mr. Indelicato.  I think it's premature to send

13  any notice, and especially I think it's misleading to send a

14  notice that would say AHM is not going to lend.  Because

15  that, again, presupposes facts that this Court hasn't ruled

16  on, hasn't been presented.  We treat the relief that's in

17  this order that we've presented to you, really we can think

18  of these things as two things.  And we presented this at the

19  servicing sale.  They were either an executory contract or

20  they were a property right.  We're treating this as a

21  property right that we have.  The right basically to collect

22  a small piece of the fees that come in from the borrowers.

23  And what essentially we're doing by this granting of this

24  relief is we're abandoning our rights to collect that fee.

25  And when you abandon your rights, you abandon your rights.

1    And so, which then feeds into point number 2 - -

2          THE COURT: Well, yeah, that leads you directly to

3    the second point.  So.

4          MR. CLEARY: Leads right to direct point number 2 is

5    I don't believe Mr. Indelicato, or any other creditor, wants

6    me to expend administrative dollars on an asset that we are

7    abandoning.

8          THE COURT: Well I think it leads you into the issue

9    of if that's what you're doing, aren't these two ordered

10   paragraphs at the bottom of page 3 overreaching?  Because

11   what you're really doing is providing relief from the

12   automatic stay to allow for the transfer of the servicing

13   rights.  And what you're doing in these paragraphs, I think

14   arguably is more than that.  You're, it's not just that

15   you're walking away, it's you're walking away under certain

16   terms and conditions which may limit the rights and, rights

17   of parties like GMAC to, to assert claims or request services

18   from the Debtors.

19         MR. CLEARY: Well, I - - I mean, we're abandoning

20   the asset.

21         THE COURT: Well, you know you're not, because this

22   isn't a motion under 554.

23         MR. CLEARY: We treat it as a - -

24         THE COURT: It's a stay relief motion.

25         MR. CLEARY: But - -

1          THE COURT: So stay relief is being granted to allow

2    for whoever has a property right to pursue that right

3    notwithstanding the Bankruptcy Code.

4          MR. CLEARY: And that, that's my point.  If we want

5    to go back to the beginning of a motion for relief from stay,

6    we can do that.  And we can take out all of the provisions

7    that we've agreed to in this form of order.  And I would, I

8    would present to Your Honor, I think the order should simply

9    say that the automatic stay has been lifted, terminated,

10   modified so that the parties can exercise their non-

11   bankruptcy, state law contractual rights.  And then at the

12   same time, that would not prevent the Debtor from abandoning

13   its rights.  And so we tried to streamline that process, and

14   save the estate the administrative expenses and the, the

15   unknown of what would be - -

16         THE COURT: Well - -

17         MR. CLEARY:  - - required upon us from complying

18   with agreement that we are effectively - - I mean, I

19   understand Your Honor's concern, it's not on a motion to

20   abandon.  But, again, that's how we're treating it.  And if

21   you'd like us to go through the procedural mechanism of

22   abandoning, then we're more than willing to do that.  But I

23   don't think it's going to change the outcome of what should

24   happen with respect to these property rights.

25         THE COURT: Well the problem becomes when you take

1   something like stay relief and these, these orders, I mean we

2   all know how they work in negotiating.  They tend to mushroom

3   and take on a life of their own, and this provision gets

4   thrown in and that provision gets thrown in.  And it becomes

5   a slippery slope.  And soon you're well beyond what you've

6   actually, what was actually asked of the Court, which is just

7   stay relief.  So I'm concerned.  I think you can fairly read

8   that this provision that says that the Debtors' rights and

9   obligations as servicer shall be deemed terminated, and the

10  Debtors shall be relieved of obligations as servicer, as of a

11  date.  To go further than simply providing stay relief to

12  allow the party who has a right to terminate the Debtors'

13  servicing position in connection with these loans to – - but

14  to actually give the Debtors affirmative relief of limiting

15  their potential exposure under that contractual obligation.

16  And then the next paragraph, I think, can be fairly read as

17  perhaps limiting the Debtors' rights.  By putting a require

18  - - I don't know what they are.  Okay.  I can't, I haven't

19  parsed through the HELOC servicing provisions.  But I don't

20  understand why the, the order simply can't provide what

21  relief was requested in the first place, which was that there

22  be stay relief to allow for the termination of the servicing.

23          MR. CLEARY: If Your Honor wants a one order - -

24          THE COURT: To the backup servicer.

25          MR. CLEARY: If Your Honor is ruling that there's a,

1    a one order, one so ordered paragraph that says - -

2            THE COURT: Well - -

3            MR. CLEARY:  - - the relief is, then I think that's

4    probably - -

5            THE COURT: What I'm ruling is, is I'm, what I'm

6    saying is I'm troubled with these two further ordered

7    paragraphs.  Now it may be if they're not there, everything

8    else has to drop out.  Because I understand it was a

9    negotiated order.  But I think Ms. Springer has raised, and

10   Mr. Stratton, have raised valid points, and at least as

11   written, I, I don't think I can approve the two paragraphs I

12   just mentioned.

13           MR. CLEARY: Well you know, Your Honor, I would ask

14   that Your Honor read further into the order, and consistent

15   with those, because I think what, you know, if you cut to the

16   quick of what Ms. Springer is asking, she's asking you to, to

17   basically tell her she has an administrative claim for any

18   expenses.

19           THE COURT: No.

20           MR. CLEARY: So - -

21           THE COURT: No, no.

22           MR. CLEARY: - - I think - -

23           THE COURT: No, no.

24           MR. CLEARY:  - - if you go to the order that

25   preserves her right to assert that claim, then - -

1              THE COURT: No.

2              MR. CLEARY:  - - she's got that right.

3              THE COURT: No, no.  What she - - no, no.

4              MR. CLEARY: If we don't - -

5              THE COURT: That's not what she's asking for, Mr.

6    Cleary.  She's saying you can't limit her, you should not be

7    permitted, in the terms of agreeing to stay relief, to limit

8    whatever rights she has.  Now you may have defenses to those

9    rights.  It may be that they're administrative, it may be

10   that they're not administrative.  It may be that she can seek

11   specific performance, it may be that she can't.  But the

12   problem, I won't put words in her mouth, but I think the

13   problem she has is that this order is going beyond simply

14   providing stay relief.  It's saying you will, the Debtors

15   will be absolved of any further liability as of January 14,

16   2008.  And that may or may not be consistent with the pre-

17   petition contract that everybody signed.  My view of this

18   situation is, all that's, all that should be happening here

19   is that the stay should be being lifted to allow for CIFG to

20   go to a backup servicer.  And that the contractual rights and

21   obligations under the pre-petition agreements are what they

22   are in that connection.  Beginning, middle, and end of the

23   story.

24              MR. CLEARY: Let me make sure I understand.  Because

25   I'm reading the paragraph again.  And it say that AHMA's

1    rights and obligations as servicer shall be deemed terminated

2    effective January 14.  And that was put in there so that

3    everybody had a date certain within which GMAC would

4    presumably start servicing, and the Debtors would essentially

5    stop servicing.  And then it says, And that AHM shall be

6    relieved of the obligations as servicer of the HELOC mortgage

7    loans from and after the 14th.  So that people don't,

8    borrowers don't look to us to perform those obligations as

9    servicer.

10           THE COURT: Somebody point me, somebody needs to

11    point me to the definition of servicer.  All right?  This is

12    a, this is just an aside.  I hate orders that don't have

13    defined terms that are in the order.  Even if they reference

14    the motion.

15           MS. SPRINGER: Your Honor, may I, may I - - excuse

16    me for interrupting.  I want to, would like to make a

17    suggestion.  This is actually the first productive

18    conversation - - albeit it's in front of the Judge, which is

19    inappropriate - - that we've started to have about this form

20    of order.  And I would suggest that maybe the parties take a

21    ten or fifteen minute break to go out in the hall and see if

22    we can work something out.  Both with respect to the issues

23    that were, you know, raised today, and including, but not

24    limited to the notification that, that I raised, but that was

25    seemingly agreed to by other parties in the courtroom.  And

1   you know, if I'm understanding correctly, not disagreed to by

2   the Creditors Committee.  So is it, would it be acceptable if

3   we had a few minutes to talk about this just among counsel

4   today?  To see if we can come to some resolution, and then

5   present it to Your Honor, and see if Your Honor is okay with

6   it.

7           THE COURT: Mr. Cleary?  Do you want to go

8   negotiate?

9           MR. CLEARY: I, you know, Your Honor, if it makes

10  your life easier, I'm always glad to talk.  But we have spent

11  I can't tell you how many hours - - you'll see them when you

12  see our fee application - - trying to negotiate a form of

13  order that is acceptable.  But I will take one more try at

14  it.

15          THE COURT: Does CIFG agree?

16          MS. GREER: That's fine, Your Honor.  I agree with

17  Mr. Cleary, but we'll give it a shot.

18          THE COURT: Okay.

19          MS. LAWSON: Your Honor, Kim Lawson.  I do have

20  definitions for Your Honor, if you want me to bring up the

21  HELOC servicing agreement, and then the indenture, there's

22  two different definitions that need to be referred to.  The

23  first is in the actual servicing agreement, the first

24  introductory paragraph that defines HELOC servicer.  And then

25  in the definitions of the indenture, it defines servicer, and

1   refers to that definition in the servicing agreement.  So I

2   can bring both of those documents to Your Honor if you would

3   like.  May I approach?

4          THE COURT: Yeah.  Thank you.  Well that, all right.

5   I have no idea what that means in the order at this point.

6   Because all that, all that really does is identify a person.

7   It doesn't identify obligations.  Is that your point?

8          MS. GREER: I think what we can do is we can go

9   through and clarify it a different way.

10          THE COURT: All right.

11          MS. GREER: I think everybody's intention is the

12   same, which is their obligations as servicer and that in the

13   roles the responsibilities as servicer.  And we can, I think

14   we can fix that, Your Honor.

15          THE COURT: All right.  How long is, how long are

16   the pre-trial conferences going to take, Mr. Cleary?  Mr.

17   Tecce?

18          MR. CLEARY: I guess, I - - the FGIC one, I don't

19   think will take more than five minutes.  And I would turn it

20   over to Mr. Tecce to address the others.

21          THE COURT: My whole point is if we're going to take

22   a recess to allow for negotiations, if there are people who

23   are here for the pre-trials, let's skip to the pre-trials,

24   let's do those, and then we'll take a break where you can

25   negotiate the order.

1           MR. TECCE: Thank you, Your Honor.

2           MR. CLEARY: Your Honor, I'm sorry.  There's only,

3    there's only one of me in the courtroom, and I suspect I need

4    to be here for the FGIC - -

5           THE COURT: Yeah, yeah.  You don't need to negotiate

6    until we take a break.

7           MR. CLEARY: Thank you, Your Honor.

8           THE COURT: But I don't want to hold - - there's a

9    whole host of people here who, who will leave as soon as the

10   pre-trial is over.  This is the first time there's only been

11   one Young Conaway lawyer in the hearing.  Three months.

12   They're all across the hall?  Oh, okay.

13          MR. CLEARY: No comment, Your Honor.

14          MR. SCHILTZ: Good afternoon, Your Honor.  Todd

15   Schiltz.  I believe that brings us to agenda item no. 22.

16          THE COURT: Right.

17          MR. SCHILTZ: That is a pre-trial conference in the

18   Wells Fargo Bank N.A. versus American Home Mortgage and Bear

19   Stearns Entities.  I am here on behalf of plaintiff, Wells

20   Fargo.  This is an interpleader action, Your Honor.  Wells

21   Fargo is a securities administrator for certain mortgage

22   backed securities.  In that role it essentially collects cash

23   that is to be distributed out to the holders of mortgage

24   certificates.  After the filing of the petition in this

25   matter it came to our attention that we are holding $1.8

1    million of money that essentially there is a dispute about as

2    to whether it belongs to the Debtor or to the Bear Stearns

3    entities.  And we have brought the interpleader action in an

4    effort to resolve that dispute.  The complaints, and amended

5    complaint was filed in November.  The answers were filed just

6    yesterday, Your Honor.  So while the parties have had some

7    preliminary discussions about scheduling, and it seems like

8    we can all agree on a schedule that's consistent with Your

9    Honor's scheduling order, we don't anticipate any significant

10   problems, we do need some additional time to get that all in

11   place and to move forward with this matter.  There is one

12   issue that has arisen as a result of the filing of the

13   answers yesterday.  The Bear entities filed a cross claim

14   against the Debtors as part of their answer.  And there is a,

15   an issue between those defendants as to whether essentially

16   that is going to turn what is a relatively narrow

17   interpleader action into a much larger dispute.  The parties

18   were in discussion prior to the hearing today to try to

19   address that issue one way or another.  Whether they're going

20   to agree to keep it narrow, or they're going to expand it.

21   And again, that's one of the issues that I think they need to

22   resolve amongst themselves before we can finalize the terms

23   of the scheduling order that we'll put in place in this

24   matter.  The last piece of information that I have for the

25   Court, and for the parties, is that Wells continues to hold

1   the money.  It has deposited those funds into a money market

2   account.  And that's how it will hold those funds, unless

3   otherwise directed by the Court.  And that the parties who

4   are the ultimate beneficiaries of this money will receive

5   that interest that's earned during the interim period.

6           THE COURT: All right.  So you're, what's your

7   proposal on how to go forward?  You want to continue the

8   scheduling conference for a month, or?

9           MR. SCHILTZ: I - - would that be enough time, do

10  you think?

11          THE COURT: I mean, it's whatever your, you're the

12  plaintiff, so whatever you prefer.

13          MR. SCHILTZ: Well, Your Honor, we certainly have no

14  objection, because frankly, while we are the plaintiff, we're

15  also a, nobody's brought any claims or asserted any - -

16          THE COURT: You're just holding the money.

17          MR. SCHILTZ: I'm just holding the money.

18          THE COURT: All right.  Okay.  I'll hear from the

19  other parties.  Thank you.

20          MR. STERN: Good afternoon, Your Honor.  Andrew

21  Stern from Sidley Austin for the Bear Stearns entities.  I

22  think that what's been said is correct, Your Honor.  I think

23  that if we had, given the holidays, if we put this out into,

24  even into early January, second week of January, whatever

25  works for Your Honor, we'll have a schedule set by that time.

1    In the, in the answer and cross claims filed yesterday, Bear

2    Stearns did assert a cross claim against American Home, and,

3    and frankly, it hadn't occurred to us, the issue that Mr.

4    Tecce raised with me this morning, which is that this may

5    force American Home to put in compulsory counter claims and

6    make what is currently, I think, a very narrow dispute about

7    this sum of money into perhaps something broader and perhaps

8    unnecessary.  So we're going to try to work that out with,

9    with the Debtors.  And I, I have every expectation we'll be

10   able to do that, and be able to come back to Your Honor with

11   a scheduling order that just addresses the narrow issues that

12   I think the Wells Fargo complaint raised.

13         THE COURT: All right.  Mr. Tecce.

14         MR. TECCE: Your Honor, I actually don't have much

15   more to add at this point.  Other than I think it was the

16   Debtors' intention, at least, to keep this as a very

17   straightforward suit.  The interpleader suit.  The

18   introduction of the cross claim does create a fork in the

19   road, if you will, and I will be working with Bear, I guess,

20   to see if we can resolve that, and determine what the scope

21   of the suit will be going forward.

22         THE COURT: All right.  What we'll do is we'll

23   continue the status conference, or pre-trial, I guess initial

24   scheduling conference to January 4th at 11 a.m., which is our

25   next omnibus hearing date.  Well, our first omnibus hearing

1  date in January.  And in the interim, if you reach a deal as

2  to how to proceed, you may submit a scheduling order under

3  certification of counsel, and then at which point, unless you

4  really want to be heard, there's no reason to be heard on

5  January 4th.  So - -

6          MR. TECCE: Thank you, Your Honor.

7          THE COURT:  - - all right.  Okay.  Then we have

8  FGIC.

9          MR. FITZPATRICK (Telephonic): Your Honor, Jeremy

10  Fitzpatrick for Financial Guarantee Insurance Company.  I

11  have with me on the phone Bruce Wilson.  Your Honor, I

12  understand that we have reached an agreement with the

13  Debtors' counsel regarding a scheduling order, which I

14  believe they have to hand to you.  The only items that are

15  not determined in that order, as you will see, are paragraphs

16  6 and 7, which deal with the pre-trial conference and a trial

17  date.  We have provided in that order, if it is acceptable to

18  the Court for discovery to end in March, and we would ask the

19  Court to schedule the pre-trial and trial as near that point

20  as possible for the reason that the servicing deals that are

21  insured by Financial Guarantee are not part of the deals in

22  the purchase agreement, and there is a significant concern

23  about who will be servicing those deals when the deal is

24  completed.  So there is some urgency.  And that is a matter

25  which we have separately addressed to the Court in a motion

1    for relief very similar to the one that was just addressed to

2    the Court.

3              THE COURT: All right.

4              MR. FITZPATRICK (Telephonic): So in sum, Your

5    Honor, we have a, a scheduling order, a scheduling order that

6    is agreed to by the parties, is my understanding.  We do need

7    a pre-trial conference and a trial date which FGIC would ask

8    would be as soon as possible.

9              MR. CLEARY: Your Honor, Blake Cleary on behalf of

10   the Debtors.  I think counsel did get it right.  There is a

11   motion for relief from stay pending.  This is, this is

12   another HELOC situation.  There are three HELOCs that are the

13   subject of, where FGIC is a credit enhancer on those HELOCs.

14   So I suspect we'll be back here on December 21 under similar

15   circumstances as you heard with respect to CIFG.  Hopefully

16   we can negotiate a form of order on that relief from stay.

17   But I think with that form of order, you know, with the entry

18   of an order lifting the stay, I don't see a need for the

19   adversary to go forward.  I think if there's any claims that

20   arise, it should be done in the claims process, rather than

21   adversary.  I think it's a lot more economical, economical

22   for the estate, because the relief they're requesting is, is

23   not unlike that that's in the motion for relief from stay.

24   So, but with that, I think there was a form of order that was

25   circulated.  I need to confirm that it's acceptable to our

1  side, but I believe that it is.  And then it would only

2  require a trial date be set, which is one of the open items

3  in the form of order.  So we'll proceed any way Your Honor

4  sees fit.

5          THE COURT: Well, can I see the form of order, at

6  least as it currently exists?

7          MR. CLEARY: I'll give you what was handed to me by

8  Sharon Zieg before I came over - -

9          THE COURT: All right.

10         MR. CLEARY:  - - Your Honor.

11         THE COURT: Thank you.  Has there been any discovery

12  in this matter?

13         MR. FITZPATRICK (Telephonic): Your Honor, it's

14  Jeremy Fitzpatrick, for the plaintiff.  There has not been

15  discovery.  We will be serving discovery very shortly.  If

16  not today, tomorrow.  We have not yet had an answer filed by

17  the Debtors, which is part of the reason we haven't sent

18  discovery yet.

19         THE COURT: Have you had your, have you had your

20  discovery conference?

21         MR. FITZPATRICK (Telephonic): We have conferred,

22  Your Honor, for those purposes, yes.  Your Honor, it's Jeremy

23  Fitzpatrick again.  I would just state that I don't think

24  we're in complete agreement with the Debtors regarding the

25  assertion that granting the relief from the stay would

1    eliminate the need for the adversary.  As we've seen in the

2    hearing that was just before the Court, there are a lot of

3    complicated issues that aren't going to be completely cleared

4    up by lifting the stay.  And we are interested in negotiating

5    a potential resolution.  But we have also been unable to do

6    so so far, despite having tried to do so.  And we would ask

7    the Court to set the, address a schedule that the parties

8    have agreed to, as well as a trial date not long after that

9    for the reason of being able to protect the, the, those

10   individuals whose loans are being serviced under these

11   arrangements, and who, there is significant question who the

12   servicer will be once the purchase is complete, because these

13   deals are not going over.

14        THE COURT: All right.  Well I'm not going to set a

15   trial date today.  I'll pencil in a pre-trial conference

16   date, subject, obviously, to Mr. Cleary being able to, to

17   decide what an appropriate time is.  I'm loath to set a trial

18   date, you know, six months out, five months out, four months

19   out.  No discovery has occurred.  It's an extremely

20   aggressive discovery schedule.  Although I'm sure the parties

21   understand what they're getting into, I would not be at all

22   surprised if it slipped.  I'm not saying it should, but I

23   mean, all fact discovery completed by Feb. 1.  I don't know

24   how you can proceed that quickly.  But you can certainly give

25   it a try.  I'm happy to give you a pre-trial date, but I'm

1    not going to give you a trial date today.  And the last thing

2    that happens is case dispositive motions need to be filed by

3    March 10, with briefing, so I'll give you a pre-trial in mid

4    to late April.

5          MR. FITZPATRICK (Telephonic): Thank you, Your

6    Honor.  It's Jeremy Fitzpatrick.  And to the extent that I

7    wasn't clear in pointing it out before, we do hope that a

8    majority of the issues involved in the adversary can be

9    addressed if the motion for relief is granted.  And that is,

10   in part, the reason for the aggressive schedule, in that the

11   Court's order may, although it's not quite clear completely,

12   largely address the issues that are present in the adversary.

13         THE COURT: All right.

14         MR. FITZPATRICK (Telephonic): Thank you, Your

15   Honor.

16         THE COURT: Frankly, you can have really any day

17   you'd like in that April time frame.  Other than - - well,

18   any Monday, Tuesday, or Wednesday in that time frame.  I'll

19   be traveling every Thursday that month.  So I know the 21st is

20   Passover.  So how about the 14th?  That's a Monday.  At 10

21   a.m.?

22         MR. FITZPATRICK (Telephonic): That works, that

23   works for the plaintiff, Your Honor.

24         MR. CLEARY: That's fine, Your Honor.

25         THE COURT: All right.  I'll pencil that in, and

1    then Mr. Cleary you can submit an order under, well I guess

2    Ms. Dawson, you should submit the scheduling order under

3    certification of counsel since you're the plaintiff.

4            MR. CLEARY: I failed to write down the time for

5    April 14th.

6            THE COURT: Ten a.m.

7            MR. CLEARY: Ten a.m.?  Thank you.

8            THE COURT: And that's the pre-trial.

9            MR. CLEARY: Thank you, Your Honor.

10           MR. FITZPATRICK (Telephonic): Thank you, Your

11   Honor.

12           THE COURT: If it turns out that date doesn't work,

13   you know, just get back with Ms. Gadson and come up with a

14   date that works.

15           MR. CLEARY: Thank you, Your Honor.

16           THE COURT: AHM v. Triad.

17           MR. TECCE: Good morning, Your Honor.  James Tecce

18   of Quinn Emanuel.  First I'd like to thank the Court for

19   considering our schedules and letting us proceed before the,

20   before the break.  Your Honor, this adversary proceeding is,

21   was commenced by American Home Mortgage Investment Corp. and

22   American Home Mortgage Servicing Inc. against Triad Guarantee

23   Insurance Corp.  It asserts two causes of action, and was

24   filed on November 4.  It asserts a breach of contract claim

25   and a claim for declaratory judgment.  It is a, there's a

1    dispute concerning the payment of private mortgage insurance

2    claims.  The Debtors procured private mortgage insurance with

3    Triad.

4              THE COURT: Okay.

5              MR. TECCE: And there were fourteen claims that have

6    been submitted that have not been paid, and the Debtors

7    assert that they should be paid.  The, the total amount in

8    dispute in the complaint is currently $1.3 million.  We have

9    had a, a first meeting, or a conference if you will, with

10   Triad's attorneys earlier this week to discuss scheduling

11   dates, and I, I think that we are very close to being in a

12   position to submit a proposed scheduling order that's

13   consistent with the, with the judge's form of order.  We were

14   actually able to, to reach an agreement about the deadlines,

15   at least subject to people's rights to come back to the Court

16   to seek an extension.  But I, I think the way it will shake

17   out is that the fact discovery will be completed within 150

18   days, as opposed to the 120 days in the Judge's order, and

19   the expert discovery within 210 days.  It's the Debtors',

20   it's the Debtors' position, and Triad's counsel may tell you

21   otherwise, that this is a fairly straightforward case that

22   hopefully can be, can be prosecuted quite quickly.  And it

23   involves a straightforward and short two or three page

24   insurance agreement and coverage of the claims.  But as I've

25   said, we hope to, in the next day or two, submit the proposed

1   form of order.  I think the parties will be able to agree to

2   the terms of that form of order.  And unless Your Honor has

3   any questions, that's all we have to advise with respect to

4   the status of this matter.

5           THE COURT: Mr. Mangan.

6           MR. MANGAN: Good afternoon, Your Honor.  Kevin

7   Mangan on behalf of Triad Guaranteed Insurance Company.  I

8   don't disagree with Mr. Tecce as far as we're working on

9   getting a schedule.  It was December 6th we filed an answer

10  and counter claim to the complaint.  Your Honor, all the

11  pleadings have, the complaint and the answer and counter

12  claim have been filed with an accompanying motion to file

13  under seal.  Just so you're aware of that.  And we will be,

14  they've been unopposed, both motions.  When the plaintiff

15  filed their complaint they filed it with that motion, and we

16  filed our answer and counter claim.  I assume we will be

17  filing completion of briefing in that this is an adversary.

18          THE COURT: Well, does the Debtor object to the

19  entry of the order - - I have it sitting on my desk, but I

20  haven't done anything with it, because the, no response or

21  CNO had been filed.

22          MR. MANGAN: Correct.

23          MR. TECCE: Your Honor, we actually don't have, not

24  only do, we don't have an objection to the complaint being

25  under seal.  It's actually not our issue in the sense that

1    the insurance policy requires that, that the terms of the

2    policy be kept confidential.  And we did not want to run

3    afoul of that policy.  So when we filed our complaint, and we

4    attached the insurance policy to the back of it, we filed it

5    under seal.  It, it's not, it's not our position, one way or

6    the other, whether it has to be kept under seal or not.  If

7    Triad insists on keeping it under seal, we don't have an

8    objection to that, but if Triad is okay with unsealing it,

9    that's fine with us as well.

10           MR. MANGAN: We would keep it under seal at this

11   point, Your Honor.

12           MR. INDELICATO: Your Honor, Mark Indelicato on

13   behalf of the Committee.  Your Honor, we have asked for

14   copies of the redacted answer, and so we have no problem with

15   it being under seal, as long as the Committee is provided

16   unredacted copies.

17           THE COURT: The redacted copy?  You're not going to

18   be able to tell much.

19           MR. INDELICATO: No, no.  Unredacted copies, Your

20   Honor.

21           THE COURT: Oh, okay.  I was going to tell you - -

22           MR. INDELICATO: Yes, I know.

23           THE COURT:  - - because I mean, every affirmative

24   defense is redacted, and - -

25           MR. INDELICATO: Yes.  We did notice that, Your

1  Honor.

2         THE COURT: Yeah.  Well, I have to say, I'll take it

3  under advisement, because it seems - - I didn't get a chance

4  to compare the redacted versus the unredacted provisions, but

5  it seemed like the redaction was rather heavy.  But I

6  understand the issue of keeping the exhibit and any specific

7  references to it confidential.  So why don't you - - well,

8  I'll take it that the Debtor has no, no response.

9         MR. TECCE: That's correct, Your Honor.

10         THE COURT: Or no objection.  So I'll take that

11  matter under advisement.

12         MR. MANGAN: And if Your Honor needs any further

13  information from me, I'll stand ready to - -

14         THE COURT: Yeah.

15         MR. MANGAN:  - - provide that.

16         THE COURT: If I have any questions, I'll, we'll get

17  on the telephone and have a conference.

18         MR. MANGAN: Very good.  Thank you, Your Honor.  As

19  far as the schedule is concerned, we have been working with

20  the plaintiff in coming up with that.  One of the, the

21  drawbacks is, again, we just filed on December 6th.  We

22  haven't had an opportunity to see the plaintiff's response to

23  the answer and the counter claim.  We haven't had initial

24  disclosures as of yet.  So we do reserve our rights to come

25  back and address further scheduling, if we need that.  So I

1   just wanted to let the Court know.

2           THE COURT: All right.  Well let's, let's do what we

3   did in the first adversary, which is let's continue this

4   scheduling conference to January 4th.  In the interim, if you

5   come up with an agreed order, just submit it under

6   certification of counsel.  You can put hard dates in there.

7   You don't need to put 150 days, you know, after the answer.

8   That, you want to put, you know, May 15th.  That's probably

9   actually preferable.  That those, those time periods are in

10  that form of order to give people an idea of what's

11  acceptable, not necessarily for them to put that.

12          MR. MANGAN: Your Honor, even if we go to January

13  4th, there's issues that may develop as we go along in

14  discovery.  So I just wanted to - -

15          THE COURT: Well, I mean, any scheduling order is

16  - -

17          MR. MANGAN: Correct.

18          THE COURT:  - - people have the right to seek a

19  further extension for cause.  I understand.

20          MR. MANGAN: Very good.  Thank you, Your Honor.

21          MR. TECCE: Your Honor that actually concludes the

22  matters in which I was responsible.  May I be excused?

23          THE COURT: Yes.  I, I was going to adjourn the

24  hearing, but Mr. Chipman wants to say something.

25          MR. CHIPMAN: Your Honor, this doesn't involve

1    counsel.  I just have a quick housekeeping matter I wanted to

2    bring to Your Honor's attention.  If Your Honor recalls - -

3    it's William Chipman - -

4           THE COURT: You represent Countrywide, correct?

5           MR. CHIPMAN: William Chipman, Edwards, Angell,

6    Palmer & Dodge on behalf of Countrywide.  If Your Honor

7    recalls, at the sale trial to Wilbur Ross, we had settled our

8    objections with the Debtors, Bank of America, and the

9    Committee.  We are in the process of documenting the

10   resolution of our objections, and we've been working with the

11   Debtors through November, and now into December.  We kind of

12   got put on the back burner, because obviously the Debtors had

13   to first focus on closing the Ross transaction.  I just rise

14   to alert Your Honor to the fact that we would like to, if at

15   all possible, file our resolution, with the agreement of the

16   Debtors and the Committee and Bank of America, under a

17   certification of counsel.  The reason is is the servicing

18   rights that Countrywide is supposed to be getting back were

19   supposed to be transferred in November, and that didn't

20   happen because everyone was busy on the Ross transaction.

21   We'd like to get them back by December.  Otherwise the, every

22   month that we delay in transferring back the servicing

23   rights, the economic terms of the deal become less favorable

24   to Countrywide.  So I just wanted to rise - -

25          THE COURT: Well this, this, this is, this is an

1   order approving a stipulation resolving your objection?  Is

2   that what this is?

3           MR. CHIPMAN: Yes, Your Honor.  It's basically a

4   transfer of the servicing rights back to Countrywide that was

5   disclosed at the sale hearing.  But I just wanted to, because

6   so much time has gone by, I wanted to make sure Your Honor

7   was aware that if the Debtors send over the resolution under

8   certification of counsel that time is of the essence.  In

9   other words, to transfer servicing rights – –

10          THE COURT: Are you – –

11          MR. CHIPMAN:  – – we need to get the hello and

12  goodbye letters out right away, or we slip into January.  And

13  that's the only reason I rise, Your Honor.

14          THE COURT: Well, I'm here every day.  And

15  certifications usually don't sit on my desk very long.  So

16  with the proviso that I reserve the right to either not

17  approve it on its merits, or decide a 9019 motion is more

18  appropriate, I'll look at it when it comes in.  But I

19  appreciate the heads up that it's coming.

20          MR. CLEARY:  Thanks, Your Honor.  I don't know that

21  it's been back burnered.  We'll reserve all our rights on

22  that, but thank you for considering it.

23          THE COURT: I'm sure everyone's doing the best they

24  can.  All right.

25          MR. CHIPMAN:  Thank you, Your Honor.  I just wanted

1    to - - I didn't want Your Honor to be surprised when it came

2    through, that's all.  Thank you.

3          THE COURT: I would, I would have.  So thank you.

4    Okay.  Let's - - they've been busy negotiating around you out

5    in the hallway, Mr. Cleary, so why don't you go find out what

6    you've agreed to, and we'll take a recess until quarter to

7    two.

8          UNIDENTIFIED SPEAKER: Thank you, Your Honor.

9          UNIDENTIFIED SPEAKER: Thank you, Your Honor.

10     (Whereupon at 1:21 p.m. a recess was taken in the

11   hearing in this matter.)

12     (Whereupon at 1:53 p.m. the hearing in this matter

13   reconvened and the following proceedings were had:)

14          THE CLERK: All rise.

15          THE COURT: Please be seated.

16          MR. BOWDEN: Good afternoon, Your Honor.  Back on

17   the record Bill Bowden of Ashby & Geddes for CIFG.  I'm going

18   to, I'm going to turn the podium over to counsel for GMAC.

19   I'm pleased to report that we have, I believe, reached

20   agreement on the terms of an order, which we're going to walk

21   Your Honor through.  Then we will retire to my office, I'll,

22   we'll black line the order, circulate it amongst counsel, and

23   hopefully get it submitted to Your Honor under certification

24   of counsel.

25          THE COURT: Okay.

1          MS. SPRINGER: Good afternoon, Your Honor.  The

2   first thing, Your Honor, that we've done is to I think take

3   care of the lack of clarity in the, I think it's the second

4   it is hereby ordered paragraph.  There will be no defined

5   terms anymore, as far as servicer is concerned.  It will

6   read, It is further ordered that the automatic stay imposed

7   by §362 of the Bankruptcy Code is hereby modified to permit

8   CIFG, GMAC, and the parties to the HELOC servicing agreement

9   to take any and all actions necessary to terminate AHMA in

10  its role as servicer, lower case s, under the HELOC servicing

11  agreement, and transfer the rights and responsibilities of

12  AHMA as, lower case, servicer, under the HELOC servicing

13  agreement of the HELOC mortgage loans, pursuant to the HELOC

14  servicing agreements to GMAC.

15          THE COURT: Okay.

16          MS. SPRINGER: Next, we are with respect to the it

17  is hereby ordered, it is further order language that refers

18  to the transfer of the servicing rights and the cooperation

19  that is to be given by the Debtors, we've agreed that we will

20  keep the language in there as is, but it is understood that

21  all parties reserve all rights to come before this Court

22  again to determine what exactly is commercially practicable

23  and whether or not the Debtors, or anyone else for that

24  matter, has an obligation to expend funds in order to meet

25  the obligations of this provision.

1            THE COURT: All right.  Okay.

2            MS. SPRINGER: And then lastly, Your Honor, there

3    were some little nits in the agreement that will be fixed.

4    Some references to agreements that were inadvertently dropped

5    out will be put back in.  That are part of the package of

6    documents that deal with these HELOC loans.  Lastly, the

7    notice to the individual HELOC borrowers.  What's been

8    decided is that we would like to come back before Your Honor,

9    on January 4th, hopefully to report that we all, and I'm

10   including everyone in the courtroom that's spoken about this,

11   agreed as to a form of notice to go out to the HELOC

12   borrowers.  But if we cannot come to an agreement on, first

13   of all, whether a notice should go out, and what the form of

14   that notice ought to look like, then we would like to be back

15   in front of Your Honor on January 4th for the Court to

16   consider the arguments made and evidence put on by the

17   parties regarding whether an order, whether a notice ought to

18   go out, and if so, who should send it, and what it should

19   say.

20           THE COURT: All right.  And that will be related to

21   this motion?

22           MS. SPRINGER: It will be related to these HELOCs.

23   I think our view is that, at least GMAC's view is that, you

24   know, we would like to, you know, we're agreeable to keeping

25   that a separate and apart from a, an order being entered on

 1   this motion.

 2          THE COURT: Okay.  My question is, I'm always happy

 3   to see you, Ms. Springer.  My question is simply, what's the

 4   procedural mechanism that you'll be before the Court under?

 5          MR. CLEARY: I think it would be a new motion, Your

 6   Honor.

 7          THE COURT: A new motion.  All right.

 8          MS. SPRINGER: Yeah.  I apologize, Your Honor.  We

 9   would, the reason I would like to set the hearing now is, I

10   guess, I'm putting the cart before the horse, but we do

11   intend to file a motion and presumably ask for an expedited

12   hearing date of January 4th, if that's not within the number

13   of days we have to give notice to the parties.

14          THE COURT: All right.  Well, I'll, I expect I'll

15   grant that motion, but I'm not promising.

16          MS. SPRINGER: Thank you.

17          THE COURT: And by that motion, I mean the motion to

18   shorten.

19          MS. SPRINGER: Thank you.

20          THE COURT: I understand the time frame.  Okay.  You

21   look confused.

22          MR. CLEARY: I guess we were trying to figure out

23   the process of submitting the order.  But I guess we need to

24   clean it up, and then submit it under cert of counsel.  I

25   believe the representations made by Ms. Springer were

1    correct.  We would come back before Your Honor on a motion to

2    determine whether, one, it is appropriate to send the notice,

3    and two, what the notice should say if the Court makes the

4    first ruling.  And second of all, the reservation of rights

5    provisions that are in the form of order would not cut off

6    GMAC's ability to assert an administrative claim for whatever

7    it deemed appropriate, nor would it cut off any rights the

8    Debtors have, or the Committee, for that matter, I guess.  Or

9    any other party to object to the request for an

10   administrative  claim.

11          THE COURT: All right.  All right.

12          MR. BOWDEN: Your Honor, again for the record Bill

13   Bowden for CIFG.  Unless Your Honor has any questions for

14   myself, my co-counsel, or any other parties, I think we're

15   done.  We'll circulate a revised form of order granting

16   CIFG's motion for relief from the stay on the terms that have

17   been discussed at length today, and hopefully have it before

18   Your Honor under certification of counsel tomorrow.

19          THE COURT: All right.  That's fine.  Mr. Stratton,

20   you're on board?

21          MR. STRATTON: Absolutely, Your Honor.

22          THE COURT: All right.  Okay.  Good I'll await the

23   order.  Anything further for today?  You can have your

24   documents back, Ms. Springer.

25          MS. SPRINGER: Thank you.

1          THE COURT: All right.  Thank you very much.

2   Hearing is adjourned.

3          MR. BOWDEN: Thanks, Your Honor.

4          MR. CLEARY: Thank you, Your Honor.

5      (Whereupon at 2:00 p.m. the hearing in this matter was

6   concluded for this date.)

7

8

9

10

11

12

13

14

15

16

17

18          I, Jennifer Ryan Enslen, approved transcriber for

19   the United States Courts, certify that the foregoing is a

20   correct transcript from the electronic sound recording of the

21   proceedings in the above entitled matter.

22

23    _/s/Jennifer Ryan Enslen_                  ___01/07/08___
      Jennifer Ryan Enslen
24    43 Bay Boulevard
      Newark, DE 19702
25    (302)836-1905