# Exhibit A

## FIRST AMENDMENT TO LEASE AGREEMENT

This **FIRST AMENDMENT TO LEASE AGREEMENT** (the "Amendment") made as of December 29, 2006 by and between **LBA MELVILLE ASSOCIATES**, with an address c/o Netrex LLC, Manager, 270 South Service Rd., Suite 45, Melville, New York 11747 (the "Landlord"), and **AMERICAN HOME MORTGAGE CORP.**, having an address at 538 Broadhollow Rd., Melville, New York 11747 (the "Tenant").

## W I T N E S S E T H

WHEREAS, Landlord and Tenant entered into a certain Standard Form of Office Lease dated on or about July 20, 2006 for approximately twenty thousand (20,000) square feet (the "Demised Premises") in that certain premises known as and located at 270 South Service Rd., Melville, New York (the "Lease");

WHEREAS, Paragraph 32B of the Rider to the Lease provides that Tenant has the option to expand the Demised Premises by an additional eight thousand (8,000) square feet;

WHEREAS, Tenant hereby desires to exercise its option to expand the Demised Premises by approximately eight thousand (8,000) square feet; and

WHEREAS, the parties desire to modify the terms of the Lease only upon and subject to the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration exchanged by Landlord and Tenant, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. For purposes of this Agreement, capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to them in the Lease (as amended or otherwise modified hereby).

2. In accordance with Paragraph 32B of the Lease Rider, Tenant hereby exercises its option to expand the Demised Premises, effective January 1, 2007 (the "Effective Date").

3. The Demised Premises is accordingly increased to approximately twenty-eight thousand (28,000) square feet, and such term shall be, as and wherever used in the Lease, deemed to refer to the Demised Premises as modified hereby.

4. The provisions of Lease Rider Paragraph 32B (i)–(v) are hereby effective as of the Effective Date. Attached to this Amendment is a revised <u>Exhibit B</u> to the Lease which, as of the Effective Date, shall replace and supercede the original <u>Exhibit B</u> to the Lease.

5. In connection with the exercise of this option, and prior to the Effective Date, Landlord shall allow Tenant access to the expansion space in order to enable Tenant to, among other things, repaint the walls, carpet the floors and do such other things as necessary, consistent with the Lease, to make the space ready for occupancy on or prior to the Effective Date.

6.  Tenant shall be entitled to occupy the expansion space as soon as Tenant shall have completed the work described in Paragraph 5 hereof. In consideration for the exercise of the option and for the expenses incurred by Tenant in accordance with Paragraph 5 of this Amendment. Tenant shall be entitled to an abatement of basic rent with respect to the new space herein leased for such period of time between the time that the new space is made available to Tenant for occupancy and the Effective Date  Rent on the new space leased herein shall commence on the Effective Date  In consideration of Tenant's expenses incurred by it in accordance with Paragraph 5 hereof, Landlord agrees to give Tenant a rent concession equal to $30,000 00.  Such concession shall be realized by Tenant by way of a credit to Tenant's rent obligations under the Lease in the amount of $2,000.00 for each of the first fifteen (15) months of the Term, commencing on the Effective Date.

7.  Prior to the commencement of any work by Tenant as described in Paragraph 5 of this Amendment, or occupancy of the additional space, Tenant shall deliver to Landlord a certificate of insurance showing the insurance required to be maintained by the Tenant under the Lease. including the additional space, and listing Landlord as a loss payee and additional named insured thereon

8.  Except as expressly set forth herein, Tenant accepts the additional space in its "as is" condition without any work on the part of Landlord, except as provided in the following sentence.  Prior to the Commencement Date, Landlord shall complete the following items of repair at its sole cost and expense:

    (i)    replace stained, damaged and missing ceiling tiles with new tiles of the type consistent with those in the remainder of the Demised Premises;

    (ii)   repair or replace all non-working or incomplete (e.g., missing lenses) light fixtures (including ballasts and bulbs);

    (iii)  repair or replace all mechanical systems (e.g. HVAC, electrical, etc.) as necessary to ensure that all such systems are in working order;

    (iv)   removal of one glass door (opposite the main bathroom in the additional space) and replacement thereof with sheetrock wall, and the relocation of one additional door to the demising wall between the Demised Premises and the adjacent tenant and provide copies of all keys for all locks in the additional space; and

    (v)    removal of all furnishings and personal property stored in the additional space and turn-over of the additional space to Tenant in broom clean condition.

9.  Except as modified and extended by this Amendment, the Lease and all of the covenants, agreements, terms, provisions and conditions therein shall remain in full force and effect and are hereby ratified and affirmed  The covenants, agreements, terms, provisions and conditions contained in this Amendment shall bind the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties hereto and their respective permitted successors and assigns  By the execution and delivery of this Amendment, Tenant and Landlord each agrees and acknowledges that the Tenant and Landlord have performed all of their obligations under the Lease and that there are no outstanding breaches or defaults on the part of Landlord or Tenant through and on the date of this Amendment.  In the event of any conflict between the provisions of this Amendment and the Lease, the provisions contained in this Amendment shall prevail and be paramount.

2

IN WITNESS WHEREOF, Landlord and Tenant have entered into this Amendment as of the date first written above, and acknowledged to one another that they possess the requisite authority to enter into this transaction and to sign this Amendment.

LANDLORD:

**LBA MELVILLE ASSOCIATES**
By NETREX LLC, Manager

By: _____
Charles E. Becker
Authorized Signatory

TENANT:

**AMERICAN HOME MORTGAGE CORP.**

By: _____
Name: Ken Rubenstein
Title: Vice President

3



EXHIBIT B

TENANT PARKING

15
12
15
30
31
13
9
12

137 TOTAL
SPACES

ADDITIONAL
TENANT
PARKING
(as of 1/1/07)

5
4
11
11
10
7
6

54 Additional
Spaces

TOTAL TENANT
PARKING
(as of 1/1/07):

191 Spaces

Additional Tenant Parking
(54 additional spaces)

A 35 — Lease, Business Premises.
Loft Office or Store 11-99

DISTRIBUTED BY Blumberg Excelsior Inc.
NYC 10013

# This Lease made the    day of  July, 2006    between

LBA MELVILLE ASSOCIATES, with an office at 270 South Service Road, Suite 45, Melville, NY 11747,
Attention: NETREX LLC, Manager

hereinafter referred to as LANDLORD, and

AMERICAN HOME MORTGAGE CORP., a New York    Corporation with offices at 538 Broadhollow Road,
Melville, NY 11747

hereinafter jointly, severally and collectively referred to as TENANT.

## Witnesseth, that the Landlord hereby leases to the Tenant, and the Tenant hereby hires and takes

from the Landlord approximately Twenty Thousand (20,000)    square feet

in the building known as 270 South Service Road, Melville, NY, as shown on Exhibit A annexed hereto.

to be used and occupied by the Tenant as sales and administrative offices for Tenant.

and for no other purpose. for a term xxxxxxxxxxxxx of three (3) years to commence on August 1, 2006and to end

on July 31, 2009    unless sooner terminated as hereinafter provided, at the ANNUAL RENT as

as set forth in    Rider 3    hereof

all payable in equal monthly instalments in advance on the first day of each and every calendar month during said term,

except the first instalment, which shall be paid upon the execution hereof.

### THE TENANT JOINTLY AND SEVERALLY COVENANTS:

FIRST.—That the Tenant will pay the rent as above provided.

**REPAIRS**

**ORDINANCES AND VIOLATIONS**

**ENTRY**

**INDEMNIFY LANDLORD**

SECOND.—That, throughout said term the Tenant will take good care of the demised premises, fixtures and appurtenances, and all alterations, additions and improvements to either; make all repairs in and about the same necessary to preserve them in good order and condition, which repairs shall be in quality and class, equal to the original work; promptly pay the expense of such repairs; suffer no waste or injury; give prompt notice to the Landlord of any fire that may occur; execute and comply with all laws, rules, orders, ordinances and regulations at any time issued or in force (except those requiring structural alterations), applicable to the demised premises or to the Tenant's occupation thereof, of the Federal, State and Local Governments, and of each and every department, bureau and official thereof, and of the New York Board of Fire Underwriters; permit at all times during usual business hours, the Landlord and representatives of the Landlord to enter the demised premises for the purpose of inspection, and to exhibit them for purposes of sale or rental; suffer the Landlord to make repairs and improvements to all parts of the building, and to comply with all orders and requirements of governmental authority applicable to said building or to any occupation thereof; suffer the Landlord to erect, use, maintain, repair and replace pipes and conduits in the demised premises and to the floors above and below; forever indemnify and save harmless the Landlord against any and all liability, penalties, damages, expenses and judgments arising from injury during said term to person or property of any nature, occasioned wholly or in part by any act or acts, omission or omissions of the Tenant, or of the employees, guests, agents, assigns or undertenants of the Tenant and also for any matter or thing growing out of the occupation of the demised premises or of the streets, sidewalks or vaults adjacent thereto; permit, during the six months next prior to the expiration of the term the usual notice "To Let" to be placed and to remain unmolested in a conspicuous place upon the exterior of the demised premises; repair, at or before the end of the term, all injury done by the installation or removal of furniture and property; and at the end of the term, to quit and surrender the demised premises with all alterations, additions and improvements in good order and condition.

**MOVING INJURY SURRENDER**

**NEGATIVE COVENANTS**

**OBSTRUCTION SIGNS**

**AIR CONDITIONING**

THIRD.—That the Tenant will not disfigure or deface any part of the building, or suffer the same to be done, except so far as may be necessary to affix such trade fixtures as are herein consented to by the Landlord; the Tenant will not obstruct, or permit the obstruction of the street or the sidewalk adjacent thereto; will not do anything, or suffer anything to be done upon the demised premises which will increase the rate of fire insurance upon the building or any of its contents, or be liable to cause structural injury to said building; will not permit the accumulation of waste or refuse matter, and will not, without the written consent of the Landlord first obtained in each case, either sell, assign, mortgage or transfer this lease, underlet the demised premises or any part thereof, permit the same or any part thereof to be occupied by anybody other than the Tenant and the Tenant's employees, make any alterations in the demised premises, use the demised premises or any part thereof for any purpose other than the one first above stipulated, or for any purpose deemed extra hazardous on account of fire risk, nor in violation of any law or ordinance. The Tenant will not obstruct or permit the obstruction of the light, halls, stairway or entrances to the building, and will not erect or inscribe any sign, signals or advertisements unless and until the style and location thereof have been approved by the Landlord; and if any be erected or inscribed without such approval, the Landlord may remove the same. No water cooler, air conditioning unit or system or other apparatus shall be installed or used without the prior written consent of Landlord.

### IT IS MUTUALLY COVENANTED AND AGREED, THAT

FOURTH.—If the demised premises shall be partially damaged by fire or other cause without the fault or neglect of Tenant, Tenant's servants, employees, agents, visitors or licensees, the damages shall be repaired by and at the expense of Landlord and the rent until such repairs shall be made shall be apportioned according to the part of the demised premises which is unable by Tenant. But

**RE-POSSESSION BY LANDLORD**

If the Tenant shall make default in the payment of the rent reserved hereunder, or any item of "additional rent" herein mentioned, or any part of either or in making any other payment herein provided for, or if the notice last above provided for shall have been given and if the condition which was the basis of said notice shall exist at the expiration of said ten days' period, the Landlord may immediately, or at any time thereafter, re-enter the demised premises and remove all persons and all or any property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law, or by force or otherwise, without being liable to indictment, prosecution or damages therefor, and re-possess and enjoy said premises together with all additions, alterations and improvements. In any such case or in the event that this lease be "terminated" before the commencement of the term, as above provided, the Landlord may either re-let the demised premises or any part or parts thereof for the Landlord's own account, or may, at the Landlord's option, re-let the demised premises or any part or parts thereof as the agent of the Tenant, and receive the rents therefor, applying the same first to the payment of such expenses as the Landlord may have incurred, and then to the fulfillment of the covenants of the Tenant herein, and the balance, if any, at the expiration of the term first above provided for, shall be paid to the Tenant. Landlord may rent the premises for a term extending beyond the term hereby granted without releasing Tenant from any liability. In the event that the term of this lease shall expire as above in this subdivision "Sixth" provided, or terminate by summary proceedings or otherwise, and if the Landlord shall not re-let the demised premises for the Landlord's own account, then whether or not the premises be re-let, the Tenant shall remain liable for, and the Tenant hereby agrees to pay to the Landlord, until the time when this lease would have expired but for such termination or expiration, the equivalent of the amount of all of the rent and "additional rent" reserved herein, less the avails of reletting, if any, and the same shall be due and payable by the Tenant to the Landlord on the several rent days above specified, that is, upon each of such rent days the Tenant shall pay to the Landlord the amount of deficiency then existing. The Tenant hereby expressly waives any and all right of redemption in case the Tenant shall be dispossessed by judgment or warrant of any court or judge, and the Tenant waives and will waive all right to trial by jury in any summary proceeding hereafter instituted by the Landlord against the Tenant in respect to the demised premises. The words "re-enter," and "re-entry" as used in this lease are not restricted to their technical legal meaning. Land agrees to use commercially reasonable efforts and to otherwise mitigate its damages resulting from the termination of this Lease due to Tenant's default.

**REMEDIES ARE CUMULATIVE**

In the event of a breach or threatened breach by the Tenant of any of the covenants or provisions hereof, the Landlord shall have the right of injunction and the right to invoke any remedy allowed at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for.

**LANDLORD MAY PERFORM**

SEVENTH.—If the Tenant shall make default in the performance of any covenant herein contained, the Landlord may immediately, or at any time thereafter, without notice, perform the same for the account of the Tenant. If a notice of mechanic's lien be filed against the demised premises or against premises of which the demised premises are part, for, or purporting to be for, labor or material alleged to have been furnished, or to be furnished to or for the Tenant at the demised premises, and if the Tenant shall fail to take such action as shall cause such lien to be discharged within thirty days after the filing of such notice, the Landlord may pay the amount of such lien or discharge the same by deposit or by bonding proceedings, and in the event of such deposit or bonding proceedings, the Landlord may require the lienor to prosecute an appropriate action to enforce the lienor's claim. In such case, the Landlord may pay any judgment recovered on such claim. Any amount paid or expense incurred by the Landlord as in this subdivision of this lease provided, and any amount as to which the Tenant shall be in default for or in respect to the use of water, electric current or sprinkler supervisory service, and any expense incurred or sum of money paid by the Landlord by reason of the failure of the Tenant to comply with any provision hereof, or in defending any such action, shall be deemed to be "additional rent" for the demised premises, and shall be due and payable by the Tenant to the Landlord on the first day of any succeeding month, or, at the option of the Landlord, on the first day of any succeeding month. The receipt by the Landlord of any installment of the regular stipulated rent hereunder or any of said "additional rent" shall not be a waiver of any other "additional rent" then due.

**ADDITIONAL RENT**

**AS TO WAIVERS**

EIGHTH.—The failure of the Landlord to insist, in any one or more instances upon a strict performance of any of the covenants of this lease, or to exercise any option herein contained, shall not be construed as a waiver or a relinquishment for the future of such covenant or option, but the same shall continue and remain in full force and effect. The receipt by the Landlord of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach and no waiver by the Landlord of any provision hereof shall be deemed to have been made unless expressed in writing and signed by the Landlord. Even though the Landlord shall consent to an assignment hereof no further assignment shall be made without express consent in writing by the Landlord

**COLLECTION OF RENT FROM OTHERS**

NINTH.—If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than the Tenant the Landlord may collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, and no such collection shall be deemed a waiver of the covenant herein against assignment and underletting, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of the Tenant from the further performance by the Tenant of the covenants herein contained on the part of the Tenant.

**MORTGAGES**

TENTH.—This lease shall be subject and subordinate at all times, to the lien of the mortgages now on the demised premises, and to all advances made or hereafter to be made upon the security thereof, and subject and subordinate to the lien of any mortgage or mortgages which at any time may be made a lien upon the premises. The Tenant will execute and deliver such further instrument or instruments subordinating this lease to the lien of any such mortgage or mortgages as shall be desired by any mortgagee or proposed mortgagee

**IMPROVEMENTS**

ELEVENTH.—All improvements made by the Tenant to or upon the demised premises, except said trade fixtures, shall when made, at once be deemed to be attached to the freehold, and become the property of the Landlord, and at the end or other expiration of the term, shall be surrendered to the Landlord in as good order and condition as they were when installed, reasonable wear and damages by the elements excepted

**NOTICES**

TWELFTH.—Any notice or demand which under the terms of this lease or under any statute must or may be given or made by the parties hereto shall be in writing and shall be given or made by mailing the same by certified or registered mail addressed to the respective parties at the addresses set forth in this lease

**NO LIABILITY**

THIRTEENTH.—The Landlord shall not be liable for any failure of water supply or electrical current, sprinkler damage, or failure of sprinkler service, nor for injury or damage to person or property caused by the elements or by other tenants or persons in said building, or resulting from steam, gas, electricity, water, rain or snow, which may leak or flow from any part of said buildings, or from the pipes, appliances or plumbing works of the same, or from the street or sub-surface, or from any other place, nor for interference with light or other beneficial easements howsoever caused, nor for any damage caused by operations in construction of any public or quasi-public work, neither shall the Landlord be liable for any latent defect in the building

**NO ABATEMENT**

FOURTEENTH.—No diminution or abatement of rent, or other compensation shall be claimed or allowed for inconvenience or discomfort arising from the making of repairs or improvements to the building or to its appliances, nor for any space taken to comply with any law, ordinance or order of a governmental authority. In respect to the various "services," if any, herein expressly or impliedly agreed to be furnished by the Landlord to the Tenant, it is agreed that there shall be no diminution or abatement of the rent, or any other compensation, for interruption or curtailment of such "service" when such interruption or curtailment shall be due to accident, alterations or repairs desirable or necessary to be made or to inability or difficulty in securing supplies or labor for the maintenance of such "service" or to some other cause, not gross negligence on the part of the Landlord. No such interruption or curtailment of any such "service" shall be deemed a constructive eviction. The Landlord shall not be required to furnish, and the Tenant shall not be entitled to receive, any of such "services" during any period wherein the Tenant shall be in default in respect to the payment of rent. Neither shall there be any abatement or diminution of rent because of making of repairs, improvements or decorations to the demised premises after the date above fixed for the commencement of the term, it being understood that rent shall, in any event, commence to run at such date as above fixed.

**RULES, ETC**

FIFTEENTH.—The Landlord may prescribe and regulate the placing of safes, machinery, quantities of merchandise and other things. The Landlord may also prescribe and regulate which elevator and entrances shall be used by the Tenant's employees, and for the Tenant's shipping. The Landlord may make such other and further rules and regulations as, in the Landlord's judgment, may from time to time be needful for the safety, care or cleanliness of the building, and for the preservation of good order therein. The Tenant and the employees and agents of the Tenant will observe and conform to all such rules and regulations

**SHORING OF WALLS**

SIXTEENTH.—In the event that an excavation shall be made for building or other purposes upon land adjacent to the demised premises or shall be contemplated to be made, the Tenant shall afford to the person or persons causing or to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person or persons shall deem to be necessary to preserve the wall or walls, structure or structures upon the demised premises from injury and to support the same by proper foundations

**VAULT SPACE**

SEVENTEENTH.—No vaults or space not within the property line of the building are leased hereunder. Landlord makes no representation as to the location of the property line of the building. Such vaults or space as Tenant may be permitted to use or occupy are to be used or occupied under a revocable license and if such license be revoked by the Landlord as to the use or part or all of the vaults or space Landlord shall not be subject to any liability; Tenant shall not be entitled

THE TENANT FURTHER COVENANTS:

**IF A FIRST FLOOR**

TWENTY-SECOND.—If the demised premises or any part thereof consist of a store, or of a first floor, or of any part thereof, the Tenant will keep the sidewalk and curb in front thereof clean at all times and free from snow and ice, and will keep insured in favor of the Landlord, all plate glass therein and furnish the Landlord with policies of insurance covering the same.

**INCREASED FIRE INSURANCE RATE**

TWENTY-THIRD.—XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

RIDER 9

**WATER RENT**

TWENTY-FOURTH.—If a separate water meter be installed for the demised premises, or any part thereof, the Tenant will keep the same in repair and pay the charges made by the municipality or water supply company for or in respect to the consumption of water, as and when bills therefor are rendered. If the demised premises, or any part thereof, be supplied with water through a meter which supplies other premises, the Tenant will pay to the Landlord, as and when bills are rendered therefor, the Tenant's proportionate part of all charges which the municipality or water supply company shall make for all water consumed through said meter, as indicated by said meter. Such proportionate part shall be fixed by apportioning the respective charge according to floor-area-against-all-of-the-rentable-floor area, in the building (exclusive of the basement) which shall have been occupied during

**SEWER**

the period of the respective charges, taking into account the period that each part of such area was occupied. Tenant agrees to pay as additional rent the Tenant's proportionate part, determined as aforesaid of the sewer rent or charge imposed or assessed upon the building of which the premises are a part.

**ELECTRIC CURRENT**

TWENTY-FIFTH.—XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

RIDER 31

**SPRINKLER SYSTEM**

TWENTY-SIXTH.—If there now is or shall be installed in said building a "sprinkler system" the Tenant agrees to keep the appliances thereto in the demised premises in repair and good working condition, and if the New York Board of Fire Underwriters or the New York Fire Insurance Exchange or any bureau, department or official of the State or local government requires or recommends that any changes, modifications, alterations or additional sprinkler heads or other equipment be made or supplied by reason of the Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or if such changes, modifications, alterations, additional sprinkler heads or other equipment in the demised premises are necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate as fixed by said Exchange, or by any Fire Insurance Company, the Tenant will at the Tenant's own expense, promptly make and supply such changes, modifications, alterations, additional sprinkler heads or other equipment, as additional rent hereunder the Tenant will pay to the Landlord, annually in advance, throughout the term xx its Pro Rata Share toward the contract price for sprinkler supervisory service

**SECURITY**

TWENTY-SEVENTH.—The sum of __$0__
is deposited by the Tenant herein with the Landlord herein as security for the faithful performance of all the covenants and conditions of the lease by the said Tenant. If the Tenant faithfully performs all the covenants and conditions on his part to be performed, then the sum deposited shall be returned to said Tenant _____Dollars

**NUISANCE**

TWENTY-EIGHTH.—This lease is granted and accepted on the especially understood and agreed condition that the Tenant will conduct his business in such a manner, both as regards noise and kindred nuisances, as will in no wise interfere with, annoy, or disturb any other tenants, in the conduct of their several businesses, or the landlord in the management of the building; under penalty of forfeiture of this lease and consequential damages

**BROKERS COMMISSIONS**

TWENTY-NINTH.—The Landlord hereby recognizes    Oxford & Simpson                    as the broker who negotiated and consummated this lease with the Tenant herein, and agrees that if as, and when the Tenant exercises the option, if any, contained herein to renew this lease, or fails to exercise the option, if any, contained therein to cancel this lease, the Landlord will pay to said broker a further commission in accordance with the rules and commission rates of the Real Estate Board in the community. A sale, transfer, or other disposition of the Landlord's interest in said lease shall not operate to defeat the Landlord's obligation to pay the said commission to the said broker. The Tenant herein hereby represents to the Landlord that the said broker is the sole and only broker who negotiated and communicated this lease with the Tenant.

**WINDOW CLEANING**

THIRTIETH.—The Tenant agrees that it will not require, permit, suffer, nor allow the cleaning of any window, or windows, in the demised premises from the outside (within the meaning of Section 202 of the Labor Law) unless the equipment and safety devices required by law, ordinance, regulation or rule, including, without limitation, Section 202 of the New York Labor Law, are provided and used, and unless the rules, or any supplemental rules of the Industrial Board of the State of New York are fully complied with; and the Tenant hereby agrees to indemnify the Landlord, Owner, Agent, Manager and/or Superintendent, as a result of the Tenant's requiring, permitting, suffering, or allowing any window, or windows in the demised premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and/or rules.

**VALIDITY**

THIRTY-FIRST.—The invalidity or unenforceability of any provision of this lease shall in no way affect the validity or enforceability of any other provision hereof.

**EXECUTION & DELIVERY OF LEASE**

THIRTY-SECOND.—In order to avoid delay, this lease has been prepared and submitted to the Tenant for signature with the understanding that it shall not bind the Landlord unless and until it is executed and delivered by the Landlord.

**EXTERIOR OF PREMISES**

THIRTY-THIRD.—XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

**PLATE GLASS**

THIRTY-FOURTH.—The Landlord shall replace at the expense of the Tenant any and all broken glass in the skylights, doors and walls in and about the demised premises. The Landlord may insure and keep insured all plate glass in the skylights, doors and walls in the demised premises, for and in the name of the Landlord and bills for the premiums therefor shall be rendered by the Landlord to the Tenant at such times as the Landlord may elect, and shall be due from and payable by the Tenant when rendered, and the amount thereof shall be deemed to be, and shall be paid as, additional rent.

**WAR EMERGENCY**

THIRTY-FIFTH.—This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in nowise be affected, impaired or excused because Landlord is unable to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repairs, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Landlord is prevented or delayed from so doing by reason of governmental preemption in connection with a National Emergency declared by the President of the United States or in connection with any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency.

THE LANDLORD COVENANTS

**QUIET POSSESSION**

FIRST.—That if and so long as the Tenant pays the rent and "additional rent" reserved hereby, and performs and observes the covenants and provisions hereof, the Tenant shall quietly enjoy the demised premises, subject, however, to the terms of this lease, and to the premises above mentioned, provided however, that this covenant shall be conditioned upon the retention of title to the premises by Landlord

**XXXXXXXX**

**HEAT**

SECOND.—Subject to the provisions of Paragraph "Fourteenth" above the Landlord will furnish the following respective services: XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX Heat. XXXXXXXXXX
XXXXXXXXXX in the cold season in each year

**RIDER**

In addition to the pre-printed portion of the Lease, the Parties agree to, and hereby incorporate herein by reference, the provisions contained in the attached Rider to Lease Agreement and Footnotes to Lease
Agreement

ACKNOWLEDGMENT IN NEW YORK STATE (RPL 309-a)

State of New York, County of                                    ss.:

On                                    before me, the undersigned,
personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to me the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

ACKNOWLEDGMENT OUTSIDE NEW YORK STATE (RPL 309-b)

State of                    County of                    ss.:

On                                    before me, the undersigned,
personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in

(insert city or political subdivision and state or county or other place acknowledgment taken)

_____
(signature and office of individual taking acknowledgment)

ACKNOWLEDGMENT BY SUBSCRIBING WITNESS(ES)

State of New York
County of Suffolk                                    ss.:

On July 27, 2006    before me, the undersigned,
personally appeared
        Arlene Parks
the subscribing witness(es) to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in (if the place of residence is in a city, include the street and street number, if any, thereof);

**ARLENE PARKS**
Notary Public State of New York
No. 01PA6111185
Qualified in Suffolk County
Commission Expires June 4, 20 08

that he/she/they know(s)

to be the individual(s) described in and who executed the foregoing instrument; that said subscribing witness(es) was (were) present and saw said

execute the same; and that said witness(es) at the same time subscribed his/her/their name(s) as a witness(es) thereto.
( ☐ if taken outside New York State insert city or political subdivision and state or country or other place acknowledgment taken. And that said subscribing witness(es) made such appearance before the undersigned in

_____
_____ )

_____
(signature and office of individual taking acknowledgment)

BUILDING .................................................

Premises ..................................................

Landlord

to

Tenant

L E A S E

GUARANTY

FOOTNOTES TO LEASE AGREEMENT
BETWEEN
LBA MELVILLE ASSOCIATES, LANDLORD
AND
AMERICAN HOME MORTGAGE CORP., TENANT

The following changes and additions to the pre-printed portion of the Lease to which these footnotes are attached correspond to the footnote designations appearing in such pre-printed portion, and these changes are incorporated therein by reference and made a part thereof as if set forth therein.

1.    beyond the applicable cure period

2.    receiving written notice of same

3.    or by nationally-recognized overnight courier service

4.    Notices as provided in this Lease shall be given as follows:

|  |  |
|---|---|
| To Landlord: | LBA Melville Associates<br>c/o Netrex LLC, Manager<br>270 South Service Rd., Suite 45<br>Melville, NY 11747<br>Attn: Peter I. Cavallaro, Esq. |
| To Tenant: | American Home Mortgage Corp.<br>538 Broadhollow Rd.<br>Melville, NY 11747<br>Attn: VP Corporate Real Estate |
| With a Copy to: | American Home Mortgage Corp.<br>538 Broadhollow Rd.<br>Melville, NY 11747<br>Attn: General Counsel |

5.    and upon reasonable notice to Tenant

6.    In connection with Landlord's entry of the Demised Premises pursuant to this Section, Landlord shall use all reasonable efforts to minimize any disruption to or interference with the conduct of Tenant's business

RIDER TO LEASE AGREEMENT
BETWEEN
LBA MELVILLE ASSOCIATES, LANDLORD
AND
AMERICAN HOME MORTGAGE CORP., TENANT


1.    **DEFINITIONS**.  As used in this Lease, the following phrases shall have the following meanings:

A.    "Commencement Date" shall mean August 1, 2006, except as otherwise provided in Rider 32 hereof. In the event the Lease should commence on a date other than the first (1st) of the month, Tenant's base rent and additional rent shall be pro-rated.

B.    "Common Areas" shall mean all the land and building of which the Demised Premises are a part and shall further include (i) areas on or below ground used for landscaping, sidewalks, walkways, parking areas, utilities, approaches, exists and entrances, and (ii) utility rooms and areas within the building of which the Demises Premises is a part which rooms or areas are not located exclusively within an area demised to a particular tenant, but shall not include the Demises Premises or, except as aforesaid, any part of the building of which the Demised Premises is a part.

C.    "Demised Premises" shall mean approximately Twenty Thousand (20,000) square feet of rentable space in the building known as 270 S. Service Rd., Melville, NY 11747, which space is more fully described on *Exhibit A* attached hereto and made a part hereof in a building of approximately 131,000 square feet.

D.    "Demised Term" shall mean a period of three (3) years commencing on August 1, 2006 and ending on July 31, 2009.

E.    "Electric Pro Rata Share" shall mean thirty-nine and 94/100 percent (39.94%).

F.    "Pro Rata Share" shall mean fifteen and 26/100 percent (15.26%).

2.    **"AS-IS" CONDITION**.

A.    Except as expressly set forth herein, Tenant accepts the Demised Premises in its "as is" condition without any work on the part of Landlord. Tenant acknowledges that the Demised Premises is being leased from Landlord with all furnishings and fixtures presently contained therein.

B.    Prior to the Commencement Date, Landlord shall complete the following items of repair at its sole cost and expense:

(i)    replace stained, damaged and missing ceiling tiles with new tiles of the type consistent with those in the immediate space;

(ii)    repair or replace all non-working or incomplete (e.g., missing lenses) light fixtures (including ballasts and bulbs);

(iii)    repair or replace all mechanical systems (e.g., HVAC, electrical, etc.) as necessary to ensure that all such systems are in working order;

2

(iv)    repair or replace all damaged doors and any non-working door hardware;  and

(v)    provide copies of all keys for all locks in the Demised Premises.

C.    Rent shall not be payable until Landlord shal have completed the items set forth in subsection B of this Rider 2.  In the event such items are not completed prior to the Commencement Date, rent shall accrue, but shall not be payable until Landlord shall have completed those items.

3.    **BASE RENT.**

The base rent (which shall be the basic rent exclusive of all other items of additional rent to be paid hereunder) for the Demised Premises for each year during the Demised Term shall be the sum of $330,000.00 per annum payable in equal monthly installments in advance of $27,500.00 on the first (1st) day of each and every month.  Upon execution of this Lease, Tenant shall pay to Landlord the sum of $27,500.00 as and for the first month's rent.

4.    **INCREASE IN TAXES.**

A.    In the event that the real estate taxes and any other applicable taxes, assessments or levies, payable with respect to the building and land on which it is located, for any tax year in which this Lease is in effect shall be greater than the amount of such taxes due and payable over the 2006/2007 school tax year, whether by reason of an increase in either the tax rate or the imposition of any tax on real estate such as, not now levied, assessed or imposed or for any other reason, Tenant shall pay to Landlord within fifteen (15) days after the date that Landlord forwards to Tenant a bill for increase in taxes, together with a copy of the actual tax bill, as additional rent for the Lease year in which such date occurs, an amount equal to the Pro Rata Share of the difference between the amount of such tax or installment and the corresponding tax or installment paid for the said 2006/2007 tax year.

B.    The term "Taxes" shall be deemed to include all real estate taxes and assessments, special or otherwise and sewer levies or rents, upon or with respect to the Building and the land allocated to it including all parking areas (hereinafter called the "Real Property"), but excluding penalties and interest thereon and excise taxes on Landlord's gross or net rentals or other income, income franchise, transfer, gift, estate, succession, inheritance and capital stock taxes.  If, due to any change in the method of taxation, any other tax shall be substituted for, or levied against Landlord or any owner of the building or the Real Property in lieu of any real estate taxes, assessments or sewer levies or rents upon or with respect to the Real Property, such tax shall be included in the term taxes for the purpose of this Lease Agreement.  Landlord represents that it has received no notice of any impending assessment nor is it aware of any such assessment.

C.    Failure on the part of the Tenant to make the payments for taxes due hereunder shall be deemed a default under the terms of this Lease.  Landlord shall have the right to apply after expiration of applicable notice and cure periods, if any, any future Base Rent paid by Tenant first to the payment of such taxes in the event the Tenant shall default in the payment of same.

D.    Upon the execution of the Lease herein, taxes shall be pro rated and adjusted in accordance with the Lease commencement date herein and upon the expiration of the Lease, the taxes shall be pro rated and adjusted in accordance with the expiration date of the Lease herein

The payments toward taxes shall be deemed Additional Rent and Landlord shall have all of the same rights and remedies with regard to the payment of said additional rent as it has for item of base rent hereunder.

5.   **ALTERATIONS**

Tenant shall make no changes in or to the Demised Premises of any nature without Landlord's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.   Subject to the provisions of this Lease, Tenant may, at Tenant's sole expense, make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the Demised Premises by using contractors first approved by Landlord (which shall include ECCO Electric). Tenant shall, prior to making any such alterations, additions, improvements or installations, at its expense, obtain any and all required permits, approvals and certificates required by any governmental or quasi-governmental bodies and (on completion) certificates of occupancy of final approval, and shall promptly deliver to Landlord duplicate copies of such permits, approvals and certificates.   Tenant agrees to carry, and to require any and all contractors and sub-contractors to carry, such worker's compensation, general liability, personal and property damage insurance as Landlord may require.   Tenant shall deliver to Landlord unconditional written waivers of mechanics' liens upon the real property in which the real property is located, for all work, labor and services to be performed and materials to be furnished in connection with such work, signed by all contractors, sub-contractors, materialmen and laborers to be involved in such work.   Notwithstanding the foregoing, if any materialman's or mechanic's lien shall be imposed upon the Demised Premises or the real property of which the Demised Premises is a part, Tenant shall immediately (but no later than thirty (30) days after receiving written notice thereof) cause such lien to be discharged, at Tenant's sole expense, including by filing any necessary bond.

6.   **REPAIRS.**

Landlord shall maintain and repair the public portions of the building, both exterior and interior.   Tenant shall, throughout the Demised Term, take good care of the Demised Premises and the furniture, fixtures and appurtenances therein and at its sole expense make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear excepted.   Provided that Tenant, at its sole cost and expense, contracts with and maintains in effect a preventive maintenance contract with an HVAC maintenance company approved by Landlord, covering the HVAC system serving the Demised Premises, Landlord shall be responsible at its sole cost and expense for all structural repairs and/or replacements of the HVAC system servicing the Demised Premises.   Landlord shall be responsible, at its cost and expense, to maintain the skylight in the main lobby of the Demised Premises.   Notwithstanding the foregoing, all damage or injury to the Demised Premises or to any other part of the building, or to its fixtures, equipment and appurtenances, whether requiring structural or nonstructural repairs, caused by or resulting from carelessness, omission, neglect or improper conduct of Tenant, its servants, employees, invitees or licensees, shall be repaired promptly by Tenant at its sole cost and expense, to the satisfaction of Landlord.   Tenant shall also repair all damage to the building and the Demised Premised caused by the moving of Tenant's fixtures, furniture or equipment.   All the aforesaid repairs shall be of quality or class equal to the original work or construction.   If Tenant fails after thirty (30) days' notice to proceed with due diligence to make repairs required to be made by Tenant, the same may be made by the Landlord at the expense of Tenant and the expenses thereof incurred by Landlord shall be collectible as additional rent after rendition of a bill or statement therefor.   Tenant shall give Landlord prompt notice of any defective condition in any plumbing, heating system or electrical lines located in, servicing or passing through the Demised Premises and following such notice, Landlord shall remedy the condition with due diligence but at the

4

expense of Tenant if repairs are necessitated by damage or injury attributable to Tenant, Tenant's servants, agents, employees, invitees or licensees as aforesaid. There shall be no allowance to Tenant for a diminution of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance or injury to business arising from Landlord, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building or the Demised Premises or in and to the fixtures, appurtenances or equipment thereof. The provisions of this Rider 6 with respect to the making of repairs shall not apply in the case of fire or other casualty which are otherwise provided for in this Lease.

7.    <u>ASSIGNMENT</u>.

Tenant, for itself, its heirs, distributes, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage, or encumber this Lease, nor sublet or underlet, or suffer or permit the Demised Premises or any part thereof to be used by others, without the express, prior written consent of the Landlord in each instance, which shall not be unreasonably withheld, conditioned or delayed. If this Lease be assigned, or if the Demised Premises or any part thereof be underlet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, under-tenant or occupant as Tenant, or a release of Tenant from the future performance by Tenant of covenants on the part of Tenant herein contained. The consent by Landlord to an assignment or underletting shall not in any way be construed to relieve Tenant from obtaining the express consent in writing of Landlord to any further assignment or underletting. Notwithstanding the foregoing, Tenant shall have the right without Landlord's consent to assign this Lease or sublet all or a portion of the Demised Premises to any parent company or subsidiary of Tenant, or to any other entity controlling, controlled by or under the common control of Tenant, in any case, by way of merger, consolidation or the acquisition of all or substantially all of Tenant's assets. Tenant shall cause written notice of any such permitted assignment or sublet to be provided to Landlord within ten (10) days' prior thereto.

8.    <u>ADDITIONAL SERVICES PROVIDED BY LANDLORD</u>.

A.    Water for ordinary lavatory purposes, but if Tenant uses or consumes water for any other purposes or in unusual quantities (of which fact Landlord shall be the sole judge), Landlord may install a water meter at Tenant's expense which Tenant shall thereafter maintain at Tenant's expense in good working order and repair to register such water consumption and Tenant shall pay for water as provided for in Section 24 of the printed portion of this Lease.

B.    Tenant shall have access to the Demised Premises on a 24-hour/7 days per week basis. Landlord shall provide air conditioning/cooling to the Demised Premises.

C.    Landlord shall have no responsibility or liability for failure to supply the services agreed to herein. Landlord reserves the right to stop services of the heating, plumbing, air conditioning, power systems or other services, if any, when necessary by reason of accident or for repairs, alterations, replacements or improvements necessary or desirable in the judgment of Landlord for as long as may be reasonably required by reason thereof or by reason of strikes, accidents, laws, order or regulations or any other reason beyond the control of Landlord. If services are interrupted for more than two (2) business days, rent shall abate until such time as Landlord is able to restore such services.

9.    INCREASE IN INSURANCE.

In the event there is an increase in the cost of insurance, whether by increase in rate or increase in coverage (including liability insurance, fire insurance with extended coverage, vandalism and malicious mischief and rent insurance), for the building and property in which the Demised Premises forms a part other than that caused by another tenant in the Building of which the Demised Premises are a part who is, under its lease, responsible for such increase, Tenant herein shall pay its Pro Rata Share of the increased rates. The base rate shall be that rate in effect for the building and property herein during the year 2006. In any event, Tenant shall be liable for all increases in insurance rates caused by Tenant's use and occupancy of the Demised Premises. All increases herein shall be due and payable as additional rent and shall be payable within fifteen (15) days after the submission by the Landlord to the Tenant of a bill for said increase

10.    CLEANING.

Tenant shall be solely responsible for the cleaning and maintenance of the Demised Premises.

11.    INSURANCE.

A.    Tenant, at its expense, shall maintain at all times during the term of this lease, public liability insurance in respect to the Demised Premises and the conduct or operation of business therein with Landlord as an additional named insured, with limits of not less than $2 million for bodily injury or death to any one person, $4 million for bodily injury or death to any number of persons in any one occurrence and $500,000.00 for property damage. Tenant shall deliver to Landlord evidence satisfactory to Landlord of such fully paid-for policies no later than the Commencement Date. Tenant shall procure and pay for renewal of such insurance from time to time before the expiration thereof and Tenant shall deliver to Landlord such renewal policy at least thirty (30) days before the expiration of any existing policy. All such policies shall be issued by companies of recognized responsibility licensed to do business in New York State and insurance certificates shall contain a provision whereby the same cannot be canceled or modified unless Landlord is given at least twenty (20) days' prior written notice of such cancellation or modification. This insurance to be obtained by Tenant shall be deemed the primary insurance in the event of any claim.

B.    Landlord represents that throughout the Demised Term it will maintain liability insurance and an all risk casualty insurance policy with a replacement cost rider

12.    WAIVER OF SUBROGATION.

The Tenant and Landlord, each for their successors or assigns, hereby waive and relinquish any and all right or claim of any kind against the other arising out of or connected with any damage to the premises or to property therein, or any fire or other casualty resulting from the act, failure, omission or neglect of the other or its respective agents, servants, employees, licensees, tenants or otherwise. Tenant shall obtain a Waiver of Subrogation against the Landlord in all insurance coverage obtained by it, provided that same is available in New York.

13    SUBORDINATION

A.    This Lease is subject and subordinate, in all respects, to all ground leases and/or underlying leases and to all mortgages which may now or hereafter be placed on or affect such leases, and/or the real property of which the Demised Premises form a part, or any part or parts

6

of such real property, and/or Landlord's interest or estate therein, and to each advance made and/or hereafter to be made under any such mortgages, and to all renewals, modifications, consolidations, replacements and extensions thereof and all substitutions therefor. This paragraph shall be self-operative and no further instrument of subordination shall be required. In confirmation of such subordination, Tenant shall execute and deliver promptly any certificate that Landlord and/or Lessor under any ground or underlying lease and/or their respective successors in interest may request.

B.     Without limitation of any of the provisions of this Lease, in the event that any mortgagee or its assigns shall succeed to the interest of Landlord or of any successor-Landlord and/or shall have become lessee under a new ground or underlying lease, then, at the option of such mortgagee, this Lease shall, nevertheless, continue in full force and effect and Tenant shall and does hereby agree to attorn to such mortgagee or its assigns and to recognize such mortgagee or its respective assigns as its Landlord. Landlord will use its best efforts to obtain a non-disturbance agreement from any current or future ground lessor or mortgagee.

C.     Tenant shall, at any time and from time to time, upon not less than ten (10) days' prior notice to Landlord, execute, acknowledge and deliver to Landlord a statement, in writing, certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modification) and the dates to which the rent, additional rent and other charges have been paid in advance, if any, and stating whether or not to the best knowledge of the signor of such certificate, whether Landlord is in default in performance of any covenant, agreement, term, provision or condition contained in this Lease, and if so, specifying each such default of which the signor may have knowledge, it being intended that any such statement delivered pursuant hereto may be relied upon by any prospective purchaser or lessee of said real property or any interest or estate therein, any mortgagee or prospective mortgagee thereof or any prospective assignee of any mortgage thereof.

14.    **LATE CHARGES**.

There shall be a late charge of $50.00 per day, commencing with the first (1st) day of the month in the event Tenant shall not have paid its rent by the fifteenth (15th) day of the month after receiving written notice from Landlord. This charge shall be deemed additional rent and added to the rent for the month in which the rent shall be due and the Landlord shall have all right with respect to said additional rent as it has for non-payment of all other rent due under the terms of this Lease.

15.    **NO WAIVER BY LANDLORD**.

The receipt of rent by the Landlord, with knowledge of any breach of this Lease by Tenant or of any default on the part of the Tenant in the observance or performance of any of the conditions or covenants of this Lease, shall not be deemed to be a waiver of any provision of this Lease except to the extent of the rent paid or performance rendered. No failure on the part of the Landlord to enforce any covenant or provision herein contained, nor any waiver of any right thereunder by the Landlord, unless in writing, shall discharge or invalidate such covenant or provision or affect the right of the Landlord to enforce the same in the event of any subsequent breach or default. The receipt by the Landlord of any rent or any other sum of money paid by the Tenant after the termination, in any manner of the term herein demised, or after the giving by the Landlord of any notice hereunder to effect such termination, shall not reinstate, continue or extend the term herein demised, or destroy, or in any manner impair the efficacy of any such notice of termination as may have been given hereunder by the Landlord to the Tenant prior to the receipt of any such sum of money or other consideration, unless the Landlord shall have so agreed in writing. Neither acceptance of the keys nor any other act or

thing done by the Landlord or any agent or employee during the term herein demised shall be deemed to be an acceptance of a surrender of said premises, excepting only an agreement in writing signed by the Landlord accepting or agreeing to accept such a surrender.

16.   DEFAULT AND CURE.

A.   If Tenant defaults in fulfilling any of the covenants of this Lease other than the covenants for the payment of rent or additional rent, or if the Demised Premises become vacant or deserted, then in any one or more of such events, upon Landlord serving a written thirty (30) days notice upon Tenant specifying the nature of said default and upon the expiration of said thirty (30) days, if Tenant shall have failed to comply with or remedy such default, then Landlord may serve a written notice of cancellation of this Lease upon which this Lease and the Demised Term shall end.

B.   If Tenant defaults in fulfilling the covenants for the payment of rent or additional rents, then, upon Landlord serving a written ten (10) days notice upon Tenant specifying the nature of said default and upon the expiration of said ten (10) days, if Tenant shall have failed to comply with or remedy such default, then Landlord may serve a written notice of cancellation of this Lease upon which this Lease and the Demised Term shall end.

17.   HOLDOVER.

If Tenant shall hold over after the end of the term, such holding over shall be unlawful and in no manner constitute a renewal or an extension of the Lease, and no notice of any kind shall be required prior to any commencement of summary proceedings, and Tenant hereby waives any such right. However, during such time, Tenant shall abide by all the obligations of this Lease including payment of rent at a monthly rate equal to one and one-half (1 1/2) times the amount of rent due during the final month of occupancy before the end of the expired term, plus any escalations or additional rent provided for.

18.   FINANCIAL STATEMENT OF TENANT.

It is understood and agreed by and between the parties hereto that, in the event Landlord makes application to a bank, insurance company or a lending institution for a mortgage loan, and if financial statements prepared by a CPA are required by said lending institution, if requested from Tenant, then, and in that event, Tenant hereby agrees to promptly furnish the most recently prepared statements to Landlord which financial statement of Tenant shall be held as confidential by Landlord and the recipient. Tenant agrees to provide to Landlord copies of its annual certified financial statements upon request from Landlord not more than one (1) time per calendar year during the Demised Term.

19.   PARKING.

Tenant shall have the right to use one hundred thirty-seven (137) parking spaces in the parking area servicing the Building of which the Demised Premises form a part, which spaces shall be specifically designated by Landlord as shown on *Exhibit B* annexed hereto. Tenant shall be provided with tags (or similar means of identification selected by Landlord) for all of its employee vehicles and visitors to enable Landlord to properly enforce this restriction. Landlord shall cause ten (10) of such parking spaces to be marked "Reserved" for certain employees of Tenant as Tenant shall designate.

20.    TENANT INDEMNIFICATION.

Subject to the terms of this Lease, the Tenant shall indemnify and save the Landlord and its successors and assigns and the Demised Premises harmless against any and all claims, obligations, liabilities, violations, governmental orders, suits, causes of action, judgments, damages, whether civil or criminal, or both, of any and all kind or nature to which Landlord may be subject in connection with any pollution and/or hazardous waste resulting from spills of any chemicals or other waste materials or otherwise at the Demised Premises or any other property caused by or resulting from the use and the operation of the Demised Premises by the Tenant, its successors and assigns, whether such pollution and/or hazardous waste shall effect the Demised Premises or other premises or both, including injuries to persons, loss of life and damage to property. This indemnification and save harmless agreement shall also cover any and all liens for hazardous water clean-up expenses in favor of the US, NYS or any political subdivision thereof including the County of Suffolk and Town of Huntington, and any governmental department of any of the foregoing. This indemnification shall include but not be limited to reasonable legal fees and other charges to which the Landlord may be put in defending against any proceedings in connection with the foregoing. This indemnification and save harmless agreement shall survive the termination of the Lease. The foregoing indemnification shall not apply to any environmental condition on or affecting the Premises arising before the commencement of the term of this Lease.

21.    NUISANCE.

A.    Tenant shall not regularly suffer, allow or permit any noxious or offensive or obnoxious vibration, noise or odors.

B.    Tenant shall not interfere with the normal operation of any other Tenant's business, in the building located on 270 South Service Rd., Melville, NY, of which the Demised Premises forms a part, in any way either by noise, odor, vibration, obstruction, a nuisance under way either by noise, odor, vibration, obstruction or any other nuisance that would inhibit routine business. A breach of this provision or any other provision of this Lease related to it shall be deemed a material breach of this Lease

22.    BROKER.

This Lease Agreement is entered into by the Landlord in reliance upon the express representation by the Tenant that no broker other than Oxford & Simpson ("Broker") was involved in the transaction herein, and Tenant agrees to indemnify Landlord against, and hold Landlord harmless from, all claims for brokerage from any other broker and any incidental costs incurred in defending an action for same, including without limitation, attorneys' fees and expenses. Landlord represents to Tenant that no other broker introduced Tenant to Landlord. Landlord shall pay a commission to the Broker by separate agreement.

23.    LANDLORD'S ESTATE AND PROPERTY.

Tenant shall look only to Landlord's estate and property in the land and the building (or the proceeds thereof) for the satisfaction of Tenant's remedies for the collection of a judgment or other judicial process, requiring the payment of money by Landlord in the event of any default by Landlord hereunder, and no other property or assets of Landlord or its partners or principals, disclosed or undisclosed, shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of Landlord and Tenant hereunder or Tenant's use or occupancy of the Premises.

24.    **REPOSSESSION**

A.    On the last day of the term hereof or on the earlier termination thereof, Tenant shall peaceably and quietly leave, surrender and deliver up to Landlord the Demised Premises broom-clean, together with the building or any new building and all alterations, changes, additions and improvements which may have been made upon the Premises (except movable furniture, equipment and trade fixtures put in at the expense of Tenant) in good repair and good order and safe condition, and free and clear of any stains or residue, except for reasonable wear and tear. Tenant, on or before said date, shall remove all of Tenant's personal property from the Demised Premises and all property not so removed shall be deemed to have been abandoned and may be appropriated, sold, stored, destroyed or otherwise disposed of by Landlord, without notice to Tenant and without obligation to account therefor. Tenant shall not remove any of Landlord's furniture or fixtures that were a part of or contained in the Demised Premises on the Commencement Date. Tenant's obligations under this paragraph shall be deemed to survive the expiration or other termination of this Lease

B.    Any and all improvements in and to the Demised Premises and any and all structures or fixtures, except Tenant's trade fixtures and equipment and Tenant's furniture, installed by Tenant which shall attach to the realty shall be deemed attached to the freehold and automatically become the property of the Landlord upon installation unless Landlord shall elect otherwise, which election shall be made by giving notice not less than thirty (30) days' prior to the expiration or other termination of this Lease. Except as otherwise provided herein, notwithstanding anything herein to the contrary, it shall be deemed that all plumbing and electrical installations shall be attached to the realty and shall become the property of the Landlord upon their installation.

25.    **ESTOPPEL CERTIFICATE**

In the event any Lender to Tenant requires, Landlord will deliver to Tenant or such lender on not less than ten (10) days' prior written notice an estoppel certificate containing the information generally required in Rider 13C hereof.

26.    **CONFLICT, INVALIDITY OR UNENFORCEABILITY**

The invalidity or unenforceability of any portion of the within Lease Agreement shall in no way affect the validity or enforceability of any other provisions herein. Whenever in this Lease there is any conflict between provisions of the printed portion of the Lease and the typewritten portion of the Lease (including this Rider), the typewritten portion shall be deemed to supersede the printed portion.

27    **APPLICABLE AUTHORITY AND JURISDICTION**

Any reference in the printed portion of this Lease to the City of New York are deemed deleted and where applicable, the Town of Huntington and/or their applicable local governmental authority and their ordinances shall be substituted in lieu thereof. In any controversy involving the Landlord and Tenant under this Lease Agreement, it is hereby agreed that the Courts of the State of New York in and for the County of Suffolk be deemed the jurisdiction for purposes of any controversy involving this Lease herein, and the laws of the State of New York shall be applicable.

28.    **MAILING OR DELIVERY OF LEASE**

It is understood and agreed that the mailing and delivery of this Agreement does not constitute an offer and shall not have any validity or be binding on any party whatsoever until

each party shall execute the said Lease Agreement and a fully-executed copy delivered to each party.

29.    **COMMENCEMENT DATE**

Tenant shall occupy the Demised Premises by no later than August 1, 200629.

30.    **COMMON AREAS**

Throughout the Demised Term, the Landlord will maintain, at its sole cost and expense, all common areas of which the Demised Premises are a part.

31.    **ELECTRIC**

A.    Throughout the Demised Term, the Tenant will pay to the Landlord as and for additional rent hereunder its Electric Pro Rata Share of the Landlord's gas and electric charges for the building of which the Demised Premises are a part (excluding those portions of the building which are separately metered and paid directly by other tenants). Such additional rent shall be payable within fifteen (15) days after receipt by Tenant of a bill from the Landlord for such charges, accompanies by a bill from which such charges are derived. Landlord, at any time during the Demised Term, may determine, in its sole discretion, to separately meter the Demised Premises for utilities. If Landlord so elects, Tenant shall thereafter pay its own actual charges (based upon actual usage and consumption) for such utilities without regard to the references to Tenant's Electric Pro Rata Share contained herein.

B.    Tenant covenants and agrees that at all times with respect to its use of electric current: (i) such use shall be normal and customary, (ii) such use shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and (iii) Tenant may not use any electrical equipment which, in Landlord's reasonable opinion, will overload such installations or interfere with the use of the building or the premises by any other tenants in the building.

32.    **OPTION TO EXTEND;  OPTION TO EXPAND SPACE**

A.    Provided Tenant is not then in default hereunder beyond the expiration of any applicable notice or cure period, Tenant shall have the option to extend this Lease for one (1) additional year ("Additional Year") on all of the terms and conditions as are herein set forth. For the Additional Year, if Tenant has not at or prior to such time exercised the option set forth in subsection B of this Rider 32, the base rent, which shall be the basic rent (exclusive of all other items of additional rent to be paid hereunder) for the Demised Premises shall be the sum of $340,000.00 per annum, payable in equal monthly installments in advance of $28,333,34 on the first (1st) day of each and every month of the Additional Year. For the Additional Year, if Tenant has at or prior to such time exercised the option set forth in subsection B of this Rider 32, the base rent, which shall be the basic rent (exclusive of all other items of additional rent to be paid hereunder) for the Demised Premises shall be the sum of $476,000.00 per annum, payable in equal monthly installments in advance of $39,666 67 on the first (1st) day of each and every month of the Additional Year.

B.    Tenant shall have the option during the Demised Term to be exercised not later than January 31, 2009, to expand the Demised Premises by an additional eight thousand (8,000) square feet as shown on *Exhibit A* annexed hereto (the "Additional Space"), In which case this Lease shall be deemed amended in the following respects:

(i)    The Demised Premises shall be increased to twenty-eight thousand (28,000) square feet;

11

(ii)    Tenant's Pro Rata share shall be increased to twenty-one and 36/100 percent (21.36%)

(iii)   Tenant's Electric Pro Rata share shall be increased to fifty-five and 92/100 percent (55.92%);

(iv)   Tenant's parking spaces shall be increased to one hundred ninety-one (191);

(v)    If Tenant has not, at or prior to the time it exercises its options contained in this subsection B to this Rider 32, exercised the option set forth in subsection A of this Rider 32, Tenant's base rent (exclusive of all other items of additional rent to be paid hereunder) for the Demised Premises for each year of the Demised Term shall be  the sum of $462,000.00 per annum payable in equal monthly installments in advance of $38,500.00 on the first (1st) day of each and every month of the Additional Year.  If Tenant has, at or prior to the time it exercises its options contained in this subsection B to this Rider 32, exercised its option set forth in subsection A of this Rider 32, Tenant's base rent (exclusive of all other items of additional rent to be paid hereunder) for the Demised Premises for the Additional Year shall be the sum of $476,000.00 per annum payable in equal monthly installments in advance of $39,666.67 on the first (1st) day of each and every month of the Additional Year.

C.    Landlord shall not lease the Additional Space to any other party without giving Tenant at least thirty (30) days' prior written notice of its intent to do so.  Tenant shall then have the right to exercise its option contained in subsection B of this Rider 32 within such thirty (30) day period.  If Tenant fails to do so (or elects not to do so), then Landlord shall be free to lease such space on such terms and conditions as it deems appropriate.

D.    In the event that Tenant elects not to lease the Additional Space, and Landlord leases same to a third party, Landlord shall have the right to convert the two bathrooms located in the Demised Premises (adjacent to the Additional Space) into common bathrooms for the use of Tenant and such other tenant.  In such event, an equitable adjustment shall be made to this Lease to reflect the respective rights and obligations of Tenant and such other tenant with respect to such shared space.  The cost of converting the bathroom space for use by more than one tenant shall not be borne by Tenant.  Landlord shall use all reasonable efforts to ensure that the conversion and resulting shared use does not have an adverse affect on the Tenant's use of the Demised Premises nor compromise the security or access to the Demised Premises.

33.    **EARLY OCCUPANCY**.

Notwithstanding the Commencement Date herein set forth, in the event that Tenant elects to accept the Demised Premises prior to August 1, 2006, Landlord shall permit Tenant to move into the Demised Premises rent-free on such earlier business day as Tenant shall designate in writing to Landlord, at least two (2) business prior thereto.  The parties agree that if Tenant so elects, this Lease shall commence on such move-in date.  Rent shall commence on the Commencement Date.   Nothing contained in this paragraph shall have the effect of changing the end of the Demised Term from July 31, 2009.

34.    **SIGNAGE**.  Tenant shall have the right, at its sole cost and expense, to display a sign in size and content reasonably acceptable to Landlord, and conforming in all respects with

12

applicable law, advertising Tenant, as depicted on _Exhibit B_ hereto and as follows: (i) a monument sign in the center of the north lawn in front of the building adjacent to the South Service Road (which shall not be less than fifty (50) feet west nor more than one hundred (100) feet west of the existing curb cut off the South Service Road on the northeast corner of the property) and (ii) a directional slot sign, proximate to the curb cut located at the northeast corner of the property, in the existing pylon sign at that location.  Tenant shall have the sole responsibility, at its expense, for obtaining any and all required governmental or administrative permits or approvals necessary for the placement of any such sign.  No such sign shall require any variance, special use permit or other special approval (other than a sign permit) from any governmental authority without Landlord's prior written approval.  All such signs shall contain only a single name for Tenant, unless Landlord approves otherwise in writing.

35.    **GUARANTY.**  Landlord has advised Tenant that it would not enter into this Lease unless Tenant provides sufficient guarantors of its performance.  Accordingly, Tenant has represented that its parent corporation will execute the guarantee annexed hereto as _Exhibit C_.

LBA MELVILLE ASSOCIATES

By: _____
    Name:
    Title:

AMERICAN HOME MORTGAGE CORP.

By: _____
    Name: ALAN HORN
    Title: EVP

13

GUARANTY

The undersigned, AMERICAN HOME MORTGATE INVESTMENT CORP., with an addess at 538 Broadhollow Rd., Melville, NY 11747 ("Guarantor"), in order to induce LBA Melville Associates ("Landlord") to enter into a Lease dated on or about the date hereof with Guarantor's subsidiary, AMERICAN HOME MORTGAGE CORP., ("Tenant"), for a portion of the building known as 270 South Service Rd., Melville, NY, does hereby, subject to the limitations set forth below, unconditionally and irrevocably guarantee the full and prompt payment by Tenant of all amounts due under such Lease as the same may be renewed, extended, amended or modified (the "Lease") and the observance and performance by Tenant of any and all covenants and obligations contained in the Lease.

This Guaranty shall be a continuing guaranty and liability hereunder shall in no way be affected or diminished by any renewal, extension, amendment or modification of the Lease or any waiver of any of the provisions thereof. The Guarantor hereby waives any notice of default under the Lease. Landlord may exercise any remedy under this Guaranty without first resorting to any security or any other remedies to enforce Tenant's obligations under the Lease. Landlord agrees, however, that it will not seek to enforce this Guaranty until the lapse of any applicable cure period under the Lease.

The Guarantor agrees to pay Landlord any actual out-of-pocket costs and expenses, including without limitation, reasonable attorneys' fees, incurred in connection with the collection of any amount due or the enforcement of any right under this Guaranty. Guarantor waives rights to jury trial and the right to interpose any counterclaim or consolidate any other action with an action on this Guaranty. This Guaranty shall be binding upon and shall inure to the benefit of the successors and assigns of the Guarantor and Landlord. This Guaranty may not be changed, terminated, modified or waived orally, but only by a writing signed by the Landlord and the Guarantor. If this Guaranty is signed by more than one person, the obligations hereunder shall be joint and several.

This Guaranty shall remain and continue in full force and effect notwithstanding, and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of (a) any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership, trusteeship or other similar action or proceeding affecting Tenant whether or not notice of any of the foregoing is given to Guarantor or (b) Tenant no longer being majority-owned by Guarantor. No payment by Guarantor hereunder shall entitle Guarantor to be subrogated to any right of Landlord.

This Guaranty shall be deemed to have been made in the State of New York and the rights and liabilities of Landlord and Guarantor shall be determined in accordance with the laws of the State of New York. Guarantor hereby consents to the jurisdiction of the courts of the State of New York in connection with any action on this Guaranty and Guarantor agrees that the appropriate venue of any such action shall lie in such courts. Guarantor consents to service of process upon it by registered or certified mail addressed to Guarantor at the address set forth above, which service shall be effective upon receipt with a thirty (30) day period to reply.

Terms defined in the Lease and not otherwise defined herein shall have the same meaning where used herein.

14

IN WITNESS WHEREOF, the undersigned has executed this Guaranty.

Dated: August 1, 2006                    AMERICAN HOME MORTGAGE INVESTMENT CORP.

By:    _____
       Name: ALAN HORN
       Title: EVP

### SIGNER'S ACKNOWLEDGEMENT:

I am the officer of Guarantor who executed this Guaranty, and I hereby personally represent and warrant to Landlord that (i) the Guarantor is authorized to enter into the Guaranty and (ii) all necessary corporate and other actions necessary for the Guarantor to enter into the Guaranty have been taken.

_____
Name: ALAN HORN
Date: 7/27/06

### CORPORATE SECRETARY'S ACKNOWLEDGEMENT:

_____, the corporate officer of Guarantor who signed the above Guaranty and Signer's Acknowledgement, is, as of the date hereof, the duly authorized _____ of the Guarantor and is authorized by the Guarantor to execute this Guaranty on behalf of Guarantor. The above signature of such officer is such person's genuine signature and the Guaranty has been duly executed on behalf of Guarantor.

_____
Name: ALAN HORN
Secretary of Guarantor
Date: 7/27/06

15



EXHIBIT A

DEMISED PREMISES

Approx. 20,000 square feet

ADDITIONAL OPTION SPACE
(pursuant to Rider 32B of the Lease)

Approx. 8,000 square feet



EXHIBIT B

TENANT PARKING

15
12
15
30
31
13
9
12
———
137 TOTAL
SPACES