IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,              :
                                                             :   Jointly Administered
                                                             :
        Debtors.                                             :   Ref. Docket No. 2477
                                                             :   Hearing Date: January 14, 2008 at 2:00 p.m.
------------------------------------------------------------ x

**NOTICE OF FILING OF AGREEMENT FOR THE PROVISION OF
<u>ASSET DISPOSITION SERVICES</u>**

On December 21, 2007, the above-captioned Debtors filed the Motion for an Order Authorizing and Approving (I) The Debtors' Employment and Retention of DoveBid, Inc. as Auctioneer; (II) The Terms of Compensation to DoveBid; (II) A Waiver of Local Rule 2016(d); and (IV) Procedures for DoveBid's Sale of Assets Pursuant to the DoveBid Agreement and the Auction Procedures (the "<u>Motion</u>") (Docket No. 2477). Attached hereto is the executed version of the Agreement for the Provision of Asset Disposition Services.

Dated:   Wilmington, Delaware
         January 8, 2008

                                        YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                        /s/ James L. Patton
                                        _____
                                        James L. Patton, Jr. (No. 2202)
                                        Pauline K. Morgan (No. 3650)
                                        Sean M. Beach (No. 4070)
                                        Matthew B. Lunn (No. 4119)
                                        The Brandywine Building
                                        1000 West Street, 17th Floor
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 571-6600
                                        Facsimile: (302) 571-1253

                                        Counsel for Debtors and Debtors in Possession



# AGREEMENT FOR THE PROVISION OF
# ASSET DISPOSITION SERVICES

This Agreement for the Provision of Asset Disposition Services ("Agreement") is made as of December _____, 2007

BETWEEN:

    American Home Mortgage Corp., and its direct and indirect affiliates, as debtors-in-possession
    538 Broadhollow Road
    Melville, New York 11747
    Attention:    Chris Cavaco
    Telephone:    (631) 622-2850
    Fax:    (___) ___-____

    ("Seller"),

AND

    DoveBid, Inc., a Delaware corporation
    27600 Northwestern Highway
    Suite 220
    Southfield, Michigan 48034
    Attention:    James Sklar
    Telephone:    (248) 353-8640
    Fax:    (248) 359-1345

    ("DoveBid")

    WHEREAS, on August 6, 2007, Seller, and certain of its direct and indirect affiliates (collectively, the "**Debtors**"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"); and

    WHEREAS, Seller anticipates that, from time to time in the future, it will wish to dispose of used or surplus capital assets, by public auction or otherwise; and

    WHEREAS, Seller wishes to engage DoveBid to dispose of those assets on the terms and conditions set forth below;

    NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged, DoveBid and Seller agree as follows:

    **1.**    **REPRESENTATION:** From time to time during the twelve (12) month period following the date of this Agreement (the "**Initial Term**") and during any extension of the Initial Term pursuant to Section 14(b)

below, Seller shall notify DoveBid when it wishes to dispose of used or surplus assets ("**Assets**"). Upon such notification and identification of certain assets, Seller and DoveBid shall use best efforts to negotiate and execute a mutually agreeable plan of sale (each, a "**Plan**"), in the form set forth as Exhibit A to this Agreement, by which Seller engages DoveBid on an exclusive basis to conduct sales ("**Sales**") of the Assets identified on Exhibit A-1 to the Plan on Seller's behalf. Each Plan shall address, among other things: (i) whether the Assets shall be sold by public auction, private treaty sale or otherwise, (ii) if the Assets are to be sold by public auction, whether the auction shall be promoted on DoveBid's Website at www.dovebid.com (the "**Website**") as a "Featured On-Line Auction" or otherwise broadcast live over the Internet as a Webcast Auction ("**Webcast Auction**"), and/or consigned into one or more Exchange Auction(s) ("**Exchange Auction(s)**"), meaning an online public auction to be conducted on behalf of multiple sellers of assets in similar asset categories, and (iii) the estimated amount of the expenses to be incurred by DoveBid. In the event the Assets are consigned into one or more Exchange Auction(s), the specific Exchange Auction(s) will be selected by DoveBid in its sole discretion in order to maximize the return to the Seller in consideration of numerous factors. With respect to those Assets consigned into Exchange Auctions hereunder, DoveBid may, at its discretion, (a) offer the Assets by the piece or by the lot and/or (b) split Seller's Assets into groups (but not commingled with any third parties' assets) for consignment into different Exchange Auctions, provided all Assets consigned hereunder will be offered for sale in an Exchange Auction to be conducted within a specific time period to be set forth in the Plan (the "**Sale Period**"). In the event any Asset remains unsold for any reason at the conclusion of the Sale, DoveBid shall have the option of including those Assets in a subsequent auction event to be conducted within the following 60 day period at its discretion, provided, however, that such auction shall be subject to a new Plan. In that event, the Sale Period shall be extended accordingly. Except as otherwise provided in a Plan executed by both Seller and DoveBid, the Sales shall be governed by the provisions of this Agreement. Once a Plan is executed by Seller and DoveBid, the Assets that are subject to such Plan may not be withdrawn, sold or disposed of except in accordance therewith. Notwithstanding the foregoing, in the event Seller does withdraw any Asset following the date DoveBid posts the Asset on the respective catalog on the Website, without waiving any other remedies, DoveBid will automatically deduct a withdrawal fee from the net proceeds in an amount equal to 5% of DoveBid's good faith estimate of likely selling price of such withdrawn Assets based upon sales of comparable assets.

DoveBid's engagement pursuant to this Agreement, and all of its and the Seller's obligations hereunder, are subject to and contingent upon the Court's approval of this Agreement.

2.    **CONDUCT OF THE SALES:**

(a)    DoveBid may, in its discretion, offer Assets for sale by the piece or by the lot, and/or include Assets in other sales conducted by DoveBid. Seller agrees that DoveBid may use its name, street address and logo in the advertising of the Sales, including press releases, as well as on the Website.

(b)    All Assets in the Auction shall be sold to the highest bidder (subject only to the purchaser's timely payment in full and removal of purchased Assets). In the event any Asset remains unsold for any reason at the conclusion of the Sale, DoveBid shall have the option of including those Assets in a subsequent sale event to be conducted within the following 60 day period at its discretion; provided, however, that such sale event shall be subject to a new Plan. DoveBid, however, does not guarantee that any sale will be completed, and DoveBid is not responsible in the event that a purchaser fails to live up to its agreement and complete a purchase.

3.    **DISCLAIMERS OF WARRANTIES:** DoveBid shall state both in its advertising for Sales and at any Sales that all Assets are being sold "as is, where is and with all faults" and with any additional disclaimers of warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose (but excluding any in-place transferable maintenance agreements). Seller acknowledges and agrees that DoveBid, in so stating, is in no way (a) representing or warranting to Seller that any purchaser of any Asset will not attempt to assert a claim against Seller based on the alleged existence or breach of any alleged warranties, or (b) agreeing to indemnify or hold harmless Seller from or against any claim or liability asserted against Seller by any third party

(including but not limited to any purchaser of any Assets at the Auction) based on the alleged existence or breach of any alleged warranties, or from or against any fees or expenses incurred by Seller in defending against any such claim or liability, except in each case as results from Auctioneer's negligence or willful misconduct. Seller acknowledges and agrees that DoveBid has no knowledge with respect to, and has no obligation to investigate, the merchantability or fitness for any particular use of any Asset.

4. **COMPENSATION; REBATE:** DoveBid shall charge each successful bidder its standard buyer's premium (the "**Buyer's Premium**") for its own account as compensation for disposition services provided up to and including each Sale. The Buyer's Premium shall be 16% of the sales price of each Asset sold, and shall be collected by Auctioneer directly from each successful bidder, in addition to the purchase price as bid. Notwithstanding the foregoing, a discount from the Buyer's Premium equal to 1 % of the sales price shall apply to purchasers who pay in the form of cash, cashier's check, company check (with a letter of guarantee) or wire transfer provided payment in full is received by DoveBid within 72 hours from receipt of DoveBid's invoice, shall be collected by DoveBid directly from each purchaser in addition to the purchase price as bid for such disposition services. Payment to DoveBid of such Buyer's Premium by the successful bidder is not dependent on any other service provided by DoveBid in connection with each Sale. Neither the Seller nor any of the Debtors shall be responsible in any way for payment or collection of the Buyer's Premium. The Debtors may conduct an employee sale or sales with no compensation or fees flowing to DoveBid. For such employee sale(s), the type and quantity of assets will be for personal use only. Notwithstanding the foregoing, DoveBid shall remit to Seller, together with each Settlement Check following each Sale, a sum (each, a "**Rebate**") equal to a percentage of the aggregate Gross Proceeds (defined below) realized as a result of the sale of Assets sold subject to the respective Plan as follows:

(a) With respect to those aggregate Gross Proceeds realized between $0 and $1,000,000, the Rebate shall equal 2%;
(b) With respect to those aggregate Gross Proceeds realized between $1,000,001 and $2,000,000, the Rebate shall equal 3%; and
(c) With respect to those aggregate Gross Proceeds realized in excess of $2,000,000, the Rebate shall equal 4%.

As used herein, "**Gross Proceeds**" shall mean the aggregate collected sales prices of all Assets sold pursuant to all Plans, excluding only sales tax and Buyer's Premium collected. For the purposes of clarification, the Gross Proceeds from prior Sales shall be added to the Gross Proceeds from a current Sale to determine the applicable Rebate percentage owed to the Seller for the current Sale; provided, further, that the amount of the Rebate paid to the Seller shall be pro rated until the foregoing thresholds are satisfied. For example, if the Gross Proceeds of prior Sales aggregates $500,000 and the Gross Proceeds from a current Sale is $1,000,000, the Rebate percentage for the first $500,000 of the current Sale shall be 2% and the Rebate percentage for the remaining $500,000 of the current Sale shall be 3%.

5. **SALE EXPENSES:**

(a) **Advertising and Direct Marketing**: In connection with each Sale and as provided in the Plan, Seller shall provide DoveBid an allowance toward certain Sale advertising expenses, which may include digital photography of the Assets, print and electronic media production, creative services, ad placement fees, brochure and catalog production, telemarketing, data list purchases, fax and email advertising and postage incurred in connection with such Sale.

(b) **Labor**: Seller agrees to reimburse DoveBid for labor expenses related to each Sale as set forth in the Plan. Such labor includes services rendered in connection with the collection and disbursement of Auction Proceeds (as discussed under Paragraph 6 below). Seller has the right to provide its own labor in part or in whole (or subcontract to third parties) in connection with such services at its election as long as such persons demonstrate adequate competencies related to such services.

(c) **Travel/Lodging**: Seller agrees to reimburse DoveBid for DoveBid's actual travel expenses related to each Sale.

(d) **Webcast Expenses**: If DoveBid and Seller agree that a Sale to be conducted by public auction will be broadcast live over the Website, then Seller agrees to reimburse DoveBid for its actual expenses related to preparing for and conducting such broadcast. Estimates for such amounts shall be set forth in the Plan.

(e) **Miscellaneous**: Seller also agrees to reimburse DoveBid for miscellaneous expenses related to each Sale, including accounting, equipment rental, insurance, permits, UCC searches/lien releases; and security/armored cars.

(f) Seller acknowledges and agrees that all of the above expenses (collectively referred to as the "**Sale Allowance**") shall in all events be deducted from the gross proceeds and paid to DoveBid following each Sale, subject to adequate documentation and court approval, if required. For purposes of this Agreement, "gross proceeds," means all revenue from the sale of Assets pursuant to this Agreement, excluding (i) any sales taxes collected by DoveBid, and (ii) any Buyer's Premium collected pursuant to Section 4 above. In the event that, in connection with a particular Sale, Seller requests changes to the Assets or to the DoveBid's set-up, Sale date or check-out plans (which changes may only be made with DoveBid's written consent), and such changes result in additional Sale expenses, Seller agrees that the Sale Allowance for such Sale may increase or decrease accordingly.

6. **COLLECTION AND DISBURSEMENT OF SALE PROCEEDS:**

(a) DoveBid shall collect from the purchasers of the Assets the gross proceeds, any applicable sales taxes and amounts due as Buyer's Premium and deposit such funds into a bank depository account maintained by the DoveBid. Seller agrees that DoveBid may use funds in the account to discharge any liens on the Assets, encumbrances of record and personal property taxes ("**Liens**"); provided, however, that no such payments shall be made without the prior written consent of Seller (which consent may not be unreasonably withheld or delayed). All applicable sales taxes collected by DoveBid shall be paid to the appropriate taxing authorities out of the account. Thereafter, DoveBid shall be paid from the account its reimbursable expenses pursuant to Section 5 of this Agreement and amounts allocable to Buyer's Premium. Within ten (10) days of the date of the Auction, DoveBid shall issue a check to the Seller for 80% of the net proceeds collected and cleared from such Auction. Within thirty (30) days of the date of the Auction (or forty-five (45) days if the Auction includes multiple sellers), DoveBid shall issue the Seller a check for the balance of the proceeds from such Auction held in the account (the "**Settlement Check**") plus the Rebate described in Section 4, subject to open items and uncollected accounts, if any.

(b) In connection with each Sale, DoveBid shall also issue to Seller a settlement report (the "**Settlement Report**") showing, generally, a record of Sales and the allocation of the funds generated thereby. Each Settlement Report shall be prepared in such a manner as to comply with Federal Rule of Bankruptcy Procedure 6004(f)(1).

(c) Seller shall have responsibility for obtaining all court approvals necessary in connection with the settlement of Seller's auction account; <u>provided, however</u>, that DoveBid will provide all documentation reasonably requested by Seller.

(d) Notwithstanding the provisions of Section 726(b) of the Bankruptcy Code, in all instances where the terms of this Agreement permit DoveBid to retain proceeds received from sales of the Assets (as compensation for Auction services, as reimbursement for expenses incurred in connection with the Auction or otherwise), DoveBid shall have right to retain such proceeds without further order of the Court and without obtaining the approval of Seller

or any other party. Moreover, DoveBid's right to retain such proceeds shall survive the conversion of Seller's bankruptcy proceeding into a proceeding under a different chapter of the federal bankruptcy code.

7. **ASSET TRANSPORTATION AND RIGHT OF SURRENDER:** If needed, Asset transportation to the Sale premises for the Sale shall be arranged and paid for by Seller. In the event that walls or other structures must be removed or modified to remove the Assets sold at the Sale, all supervision and expense of such removal and modification shall be borne directly by the Seller and are not included in the Sale Allowance. Any labor costs that Seller directly or indirectly incurs in connection with the Sale shall be borne directly by Seller and are not included in the Sale Allowance. In the event that some Assets remain unsold at the conclusion of a Sale, or a purchaser fails to perform its obligation to pay the purchase price of an Asset, DoveBid shall have the right to surrender, and shall have no further obligations with respect to such Assets ("Unsold Assets") provided, however, DoveBid may, at its discretion, have the option of including those Assets in a subsequent Sale to be conducted within the following 60 day period. Seller may request that DoveBid arrange for the removal and temporary storage of any Unsold Assets; provided, however, that (i) DoveBid shall have no obligation to arrange for such removal or storage, and (ii) in the event that DoveBid consents to arrange for such removal and storage, Seller must reimburse DoveBid for the all costs and expenses incurred by DoveBid in connection therewith. All costs and expenses related to the removal and storage of Unsold Assets shall be deducted from the gross proceeds separately and distinctly from, and shall not be deemed to be part of, the Sale Allowance.

8. **UTILITY DISCONNECTION AND ASSET REMOVAL:** Immediately after each Sale, Seller shall disconnect all utilities to the sold Asset, including electric, gas, waste and water lines, at Seller's sole cost. Thereafter, the purchaser shall be solely responsible for rigging and shipping the sold Asset. DoveBid will assist with fulfillment of purchased Assets by providing a listing of capable movers and shippers and otherwise coordinating the removal process with the buyer's and their respective movers and shippers. Notwithstanding the foregoing, DoveBid will not be directly responsible for any Asset disconnection or removal. Seller acknowledges that with respect to any export transaction involving any of the Assets sold hereunder, and unless Seller and purchaser agree otherwise, Seller shall be the U.S. principal party in interest. Accordingly, Seller authorizes DoveBid to provide Seller's federal employer identification number ("EIN") to buyers, their agents, customs officials or similar parties for the purposes of completing a Shipper's Export Declaration form or any documentation necessary to facilitate the respective purchaser's export of the purchased Assets.

9. **INSURANCE:** Seller shall be solely responsible for maintaining adequate insurance coverage pertaining to the Assets and their transfer to and from, and storage at, the site of any Sale. If any Sale is to occur at premises owned or leased by Seller, Seller also shall maintain adequate liability insurance for the duration of each Sale and related activities. DoveBid shall carry all workers' compensation insurance for DoveBid's employees in compliance with all applicable state and local laws.

10. **DESTRUCTION OF ASSETS:** In the event of any loss, damage or destruction of any Assets, whether before or after a Sale, Seller shall remain liable to DoveBid for DoveBid's reimbursable expenses under Section 5 except to the extent that such loss, damage or destruction resulted from the negligence or intentional conduct of DoveBid. To the extent that Seller collects insurance proceeds payable on account of the destruction of any or all of the Assets after sale but prior to payment by a purchaser and such loss, damage or destruction of any or all of the Assets did not result from the negligence or intentional conduct of DoveBid, Seller shall set aside and hold in trust for the benefit of DoveBid a portion of such proceeds sufficient to pay DoveBid's reimbursable expenses under Section 5.

11. **USE OF PREMISES:**

(a) For the purposes of this Agreement, the "Premises" shall mean any location or facility where any of the Assets are stored or to be sold. Seller authorizes DoveBid and its representatives to enter upon and use the Premises for the purposes of (i) storing the Assets thereupon, (ii) preparing for and conducting Sales, (iii) otherwise

exhibiting Assets to prospective purchasers, and (iv) for such other purposes as are reasonable and necessary to conduct Sales. Seller agrees that DoveBid shall not be charged a fee for the use of the Premises. Seller further agrees that it shall furnish utilities to the Premises, at Seller's sole expense.

(b) Seller acknowledges and agrees that DoveBid has no interest of any kind or nature in the Premises, and that DoveBid has no knowledge as to any previous use or occupancy of the Premises. Seller acknowledges and agrees that DoveBid shall not be responsible for damage or injury to the Premises resulting from or arising in connection with the sale or removal of the Assets, except to the extent that such damage or injury is caused by DoveBid's negligence in the performance of its obligations hereunder.

12. **NON-EXCLUSIVITY:** Seller agrees that DoveBid shall be Seller's agent for the disposition of specified used and surplus capital assets during the term of this Agreement.

13. **REPRESENTATIONS AND WARRANTIES:** With respect to each Sale, Seller represents and warrants to DoveBid as follows:

(a) Seller is authorized to execute and perform this Agreement, and this Agreement constitutes a valid and legally binding obligation of Seller, enforceable in accordance with its terms.

(b) Seller now holds (and, up to the moment of sale provided for under this Agreement, will hold) good and marketable title to all Assets free and clear of any lien, security interest, leasehold interest, co-ownership interest or any other type of encumbrance or interest, provided, however, that certain of the Assets may be subject to the liens of the Debtors' post-petition lenders.

(c) None of the Assets infringes or violates (or contains any parts or components which infringe or violate) any third party's copyright, patent, trademark, trade secret or other proprietary rights.

(d) No sale of the Assets will constitute a bulk sale subject to the Bulk Transfer Article of the Uniform Commercial Code for any state in which any of the Assets are located.

(e) No Hazardous Substances are contained in or made a part of the Assets. For purposes of this Agreement, the term "Hazardous Substances" shall mean, either individually or collectively, any chemical, solid, liquid, gas, or other substance having the characteristics identified in, listed under, or designated pursuant to (i) the <u>Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA)</u> as amended, 42 USCA Section 9601(4), as a "hazardous substance," (ii) the <u>Resource, Conservation and Recovery Act</u>, 42 USCA Sections 6903(5) and 6921, as a "hazardous waste," or (iii) any other laws, statutes, or regulations of a government or political subdivision or agency thereof, as presenting an imminent and substantial danger to the public health or welfare or to the environment, or as otherwise requiring special handling, collection, storage, treatment, disposal, or transportation. Seller agrees that nothing in this Agreement shall be construed to require DoveBid to remove any Hazardous Substances that are present on the Premises or are contained in or a part of the Assets.

Seller acknowledges and agrees that DoveBid is relying on the foregoing representations and warranties in proceeding to conduct the sales provided for under this Agreement. Seller agrees to defend (by counsel reasonably satisfactory to DoveBid) and indemnify DoveBid and hold DoveBid harmless from and against any claim, demand, cause of action, liability or expense (including reasonable attorneys' fees) asserted against or incurred by DoveBid in connection with Seller's breach of any of its representations, warranties or obligations in this Agreement. If any action at law or in equity is brought to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs from the other party.

14. **TERMINATION; RENEWAL:**

DB02:6436484.3

066585.1001

6

(a) Seller and DoveBid each shall have the right to terminate this Agreement if the other party breaches any material term or condition of this Agreement and fails to cure or otherwise remedy such breach within 30 days after written notice. Additionally, Seller shall have the right to terminate this Agreement should DoveBid become the subject of a voluntary or involuntary petition in bankruptcy or any voluntary or involuntary proceeding relating to insolvency, receivership, liquidation, or assignment for the benefit of creditors, if such petition or proceeding is not dismissed within 60 days of filing.

(b) The terms of this Agreement shall terminate upon the expiration of the Initial Term unless the parties mutually agree to extend the Term for a defined period of time.

15. **PUBLICITY:** DoveBid shall have the right to issue publicity concerning this Agreement and this Agreement and to use Seller's name and logo in its advertising materials.

16. **TECHNOLOGY WARRANTY AND DISCLAIMER:** DOVEBID REPRESENTS AND WARRANTS TO SELLER THAT THE PROCESSES USED BY DOVEBID IN PROVIDING ITS SERVICES TO COMPANY AND/OR CONDUCTING SALES HEREUNDER DO NOT INFRINGE THIRD-PARTY INTELLECTUAL PROPERTY RIGHTS. DOVEBID DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN THE WEBSITE, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH THE WEBSITE, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED; PROVIDED, HOWEVER, THAT IN THE EVENT A SALE OF ASSETS IS DELAYED OR CANCELLED DUE TO DEFECTS IN THE WEBSITE, DOVEBID WILL BEAR ALL COSTS ASSOCIATED WITH SUCH DELAY OR CANCELLATION.

17. **INDEPENDENT PARTIES:** This Agreement shall not be construed (i) to create a partnership or joint venture between Seller and DoveBid, or (ii) to imply that DoveBid is buying the assets of, or any interest in, Seller.

18. **COUNTERPARTS; FACSIMILE SIGNATURES:** This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original and all of which, when taken together, will be deemed to be but one and the same instrument. Delivering signatures via facsimile shall be an acceptable means of executing this Agreement, and signatures so delivered shall be fully binding on the signing party.

19. **GOVERNING LAW:** This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of Delaware as applied to agreements made in Delaware, without regard to choice of law principles.

22. **SEVERABILITY:** The provisions of this Agreement shall be severable. Should any part, term or provision of this Agreement be construed by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the legality, validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby.

**23.**     **COMPLETE AGREEMENT:** This Agreement constitutes the entire understanding between the parties and replaces any and all prior agreements related to the Sales. This Agreement may not be modified or amended except in writing signed by both parties.

| AMERICAN HOME MORTGAGE CORP. | | DOVEBID, INC. |
|---|---|---|
| E.I.N.: _____ | | California Bond Number 57BSBAI7624 |
| By: *[signature]* | By: | _____ |
| Name: Alan B. Horn | Name: | _____ |
| Title: Executive Vice President, General Counsel & Secretary | Title: | _____ |
| Date: 12-27-07 | Date: | _____ |

23.     **COMPLETE AGREEMENT:** This Agreement constitutes the entire understanding between the parties and replaces any and all prior agreements related to the Sales. This Agreement may not be modified or amended except in writing signed by both parties.

| AMERICAN HOME MORTGAGE CORP. | | DOVEBID, INC. |
| --- | --- | --- |
| E.I.N.: _____ | | California Bond Number 57BSBAI7624 |
| By: _____ | By: | *Romie Castelli* |
| Name: _____ | Name: | Romie Castelli |
| Title: _____ | Title: | SVP – North America |
| Date: _____ | Date: | 1-7-08 |

**Exhibit A**



## PLAN OF SALE

This Plan of Sale (the "**Plan**") is entered into as of _____, 200__ (the "**Effective Date**") by and between DoveBid, Inc. ("**DoveBid**") and American Home Mortgage Holdings, Inc. ("**Seller**") pursuant to Section 1 of that certain Agreement for the Provision of Asset Disposition Services made as of December __, 2007 between DoveBid and Seller (the "**Master Agreement**"). Terms used but not independently defined in this Plan shall have the meanings ascribed to them in the Master Agreement.

By executing below, Seller agrees to retain DoveBid on an exclusive basis to dispose of those Assets set forth on <u>Exhibit A(1)</u> to this Plan in the following manner:

- ❏ A Webcast Auction to be held on or about _____, 2007.

- ❏ The Assets will be consigned into DoveBid's _____ auction (the "Auction"), which will be held on or about _____, 200__.

- ❏ A Featured On-Line Auction to be held on or about _____, 2007.

- ❏ A traditional on-site auction to be held on or about _____, 2007.

- ❏ Through private treaty sales to be held for a period of ____ days after the Effective Date.

The terms of the Master Agreement shall control the services provided by DoveBid pursuant to this Plan.

Acknowledged and agreed to:

| AMERICAN HOME MORTGAGE CORP. E.I.N.: | DOVEBID, INC. California Bond Number 57BSBAI7624 |
|---|---|
| By: *(signature)* | By: _____ |
| Name: Alan B. Horn | Name: _____ |
| Title: Executive Vice President, General Counsel & Secretary | Title: _____ |
| Date: 12-27-07 | Date: _____ |

## EXHIBIT A(1)

**ASSETS**

## EXHIBIT (A)(2)

## Budgeted Expenses

**Advertising and Direct Marketing**

**Labor**

**Travel / Lodging**

**Webcast Expenses**

**Miscellaneous**

Total Budget (Not To Exceed):  $_____.

The parties acknowledge that the above line items are approximate estimates provided at the time the Plan is prepared and that DoveBid's expenses in any given category may vary, provided overall expenses incurred for which DoveBid seeks reimbursement shall not exceed the above stated aggregate figure.