IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------------ x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : | |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: January 14, 2008 at 2:00 p.m. (ET)** |
| ------------------------------------------------------------------ x | : | **Docket Ref. No. 2515** |

## DEBTORS' OBJECTION TO MOTION OF CITIMORTGAGE, INC. TO LIFT THE AUTOMATIC STAY AND COMPEL THE DEBTORS TO RELEASE LOAN DOCUMENTS

The above-captioned debtors and debtors-in-possession (the "Debtors" or "AHM") file this objection (the "Objection") to the Motion of CitiMortgage, Inc. ("CMI") to Lift the Automatic Stay and Compel Debtors to Release Loan Documents [Docket No. 2515] (the "Motion[2]") filed on December 27, 2007. In support of this Objection, the Debtors respectfully represent as follows:

1.      Through its Motion, CMI does not seek to lift the stay in order to pursue its remedies under the Correspondent Loan Agreements, but rather requests the extraordinary, unwarranted and procedurally improper relief of specific performance under a pre-petition agreement. Specifically, CMI seeks an order requiring the Debtors to return at Debtors' cost any Loan documents in their possession relating to mortgages the Debtors sold to CMI pre-petition.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

Even if the Correspondent Loan Agreements contemplated that such expense be borne by AHM (which the Debtors dispute[3]), this relief would in essence elevate CMI's claim under pre-petition agreements to administrative status at the expense of all other creditors and without any benefit whatsoever to the estates.  Accordingly, the Debtors submit that CMI has failed to meet its burden to establish cause to lift the automatic stay or to obtain an order compelling the Debtors to specifically perform under pre-petition agreements and the Motion must be denied.

      2.     A motion for relief from stay "is not designed to short circuit non-bankruptcy substantive and procedural requirements." Grimes v. Munoz (In re Munoz), 83 B.R. 334, 338 (Bankr. E.D. Pa. 1988) (citing In re W.L. Bradley Co., Inc., 75 B.R. 505 (Bankr. E.D. Pa. 1987)).  Rather, "the effect of granting relief from the stay is to allow a creditor to proceed and assert non-bankruptcy created rights (e.g. state law rights) ...." in the proper forum. Id.  A motion for relief does not provide a basis for substantive relief. See Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 32 (1st Cir. 1994) ("The limited grounds set forth in the statutory language, read in the context of the overall scheme of §362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate."); Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985) (relief from stay

---

[3] The Debtors dispute that the Correspondent Loan Agreements require AHM to pay all costs associated with the transfer of loans.  Section 15 of the Correspondent Loan Agreements provide:

> If [AHM] fails to timely deliver, in accordance with the applicable terms and conditions specified on the CMI Manual, all documents and records associated with or related to any Loan purchased by CMI pursuant to this Agreement, Correspondent shall also give CMI and its officer, employees, or designated representatives reasonable access to Correspondent's premises in order to allow CMI to retrieve, prepare or otherwise obtain all such documents and records.

Exhibits 1 and 2 to Motion at § 15.  Section 15 does not include any provision setting forth who bears the cost of such retrieval.

                                        

hearings are limited in scope to adequacy of protection, equity, and necessity to an effective

reorganization, and validity of underlying claims is not litigated).

        3.     In its Motion, CMI requests that the Court enter an order "directing AHM

to return any Loan documents held in its custody, without cost." Motion at ¶ 27. Clearly, this

request for specific performance of the Correspondent Loan Agreements goes beyond the

procedural and summary relief granted on a motion for relief from the stay.

        4.     Moreover, requiring the Debtors to produce at their cost the Loan

documents would provide an administrative priority to an expense that amounts to nothing more

than alleged damages for a pre-petition breach of contract claim. See  Ben Franklin Hotel

Assoc., 186 F.3d 301, 305 (3d. Cir. 1998) (citations omitted) ("An equitable remedy will give

rise to a right of payment, and therefore be deemed a 'claim,' when the payment of monetary

damages is an alternative to the equitable remedy."); Air Line Pilots Assoc. v. Continental

Airlines (In re Continental Airlines), 125 F.3d 120, 136 (finding right to seniority integration

constitutes a claim under the Bankruptcy Code because it gives rise to payment, thus not entitled

to specific performance); In re Nickels Midway Pier, LLC, 341 B.R. 486 (D.N.J. 2006) ("The

fact that a creditor's specific performance remedy is preferable to a damages remedy does not

mean that a creditor's right to specific performance cannot be reduced to a claim in

Bankruptcy."); Credit Suisse First Boston Mortgage Capital, LLC v. American Home Mortgage

Corp. (In re American Home Mortgage Holdings, Inc.), Ch. 11 Case No. 07-11047 (CSS), Adv.

No. 07-51684 (CSS), slip op. at 53 and 103 (Bankr. D. Del. August 17, 2007) (denying a request

for preliminary injunction requiring transfer of files and servicing rights, even though the

Plaintiff asserted that the Debtors had no right to continue servicing and were in violation of the

contract, because the moving party could not sustain its burden of establishing irreparable injury

3

given that it had a claim against the debtors' estates for any damages resulting from any breach, which is an economic injury compensable in money.).

5.      The Debtors should not be required to incur an administrative expense to return the Loan documents if the expense provides no benefit to the estates. See 11 U.S.C. § 503(b)(1)(A) (administrative expense will be allowed if "actual, necessary costs and expenses of preserving the estate…"). In analogous cases, courts have concluded that breach of lease return conditions do not qualify for administrative expense priority but instead are general unsecured claims. In re Continental, 146 B.R. 520, 528 (Bankr. D. Del. 1992) (damages for breach of lease for failure to comply with lease return conditions relating to plane engines were not entitled to administrative priority because there was no showing that the cost to render the engine compliant would have resulted in a benefit the estate); In re Cardinal Export Corp., 30 B.R. 682, 685 (Bankr. E.D. N.Y. 1983) (claim for breach of lease for failure to return store in broom-clean condition not entitled to priority administrative status because such expenditure provides no benefit to the estate, thus entitled only to general unsecured status).

6.      CMI is not entitled to anything more than a claim for monetary damages resulting from any alleged breach of the Loan Correspondent Agreements.[4] As CMI highlights in the Motion, if the Debtors fail to return the Loan documents, the Debtors "risk having to repurchase or otherwise cure the relevant Loans, which are now defective because CMI does not have the relevant documents." Motion at ¶24. Both a repurchase and a cure obligation are claims for economic injury compensable in money damages. See Ben Franklin Hotel, 186 F.3d at 305. Accordingly, by its own admission, CMI cannot contend that no adequate remedy at law exists for the Debtors failure to return the Loan documents.

7.      Here, the Debtors are in possession of certain Loan documents related to

---

[4] The Debtors reserve all objections and defenses to any claims asserted by CMI.

loans purchased under the Loan Correspondent Agreements. The Loan documents are housed in a warehouse facility that the Debtors lease from a third-party. To locate the approximate 18,700 loans sold to CMI will require large amounts of estate resources. These CMI loan files are not kept separate; instead, they are commingled with the loan files of other purchasers. To locate and retrieve this volume of documents requires significant employee time, which, in turn, requires the Debtors to maintain a larger workforce for a greater length of time. In addition, due to the volume of loans, shipping costs would also be significant.

8.      While the Loan documents themselves are not property of the Debtors' estate, the Debtors do have a possessory interest in the Loan Documents which does constitute property of the estate.[5] The Debtors are not paid to maintain or service these files. Thus, no benefit can be derived for the estates by expending the man-hours to locate and collect and expending estate dollars to ship voluminous files to CMI. In this manner, the return of the Loan documents at CMI's expense is the same as a landlord having to pay to return its premise to broom clean condition with a remedy of a general unsecured claim for the amount to clean the premises. Cardinal., 30 B.R. at 685.

9.      The Debtors are willing to collect and ship the Loan documents to CMI provided that CMI absorb the actual cost to locate and ship the documents. Or, in the alternative, the Debtors will located and segregate the Loan documents; provided CMI pays the cost to the Debtors' estates for this service. Despite the Loan Correspondent Agreements contemplating that CMI be provided access to retrieve delinquent document requests, given that the 18,700

---

[5] See Hartman v. PMF Rentals (In re Hartman), Civ. 03-337, 2004 U.S. Dist. LEXIS 5691, 18 (W.D. Pa. March 22, 2004) (finding that the debtors' "possessory interest in the trailers was property of their bankruptcy estate"); In re Whitt, 79 B.R. 611, 615 (Bankr. E.D. Pa. 1987) ("The Debtor's tenancy or even her bare possessory interest in her residence is a 'legal or equitable interest' which is clearly 'property of the estate' by the terms of 11 U.S.C. § 541(a)." (interior quotation omitted)); Di Giorgio v. Lee (In re Di Giorgio), 200 B.R. 664, 673 (C.D. Cal. 1996), vacated on other grounds, 134 F.3d 971 (9th Cir. 1998) ("The legislative history indicates that Congress intended the estate to include possessory interests.").

CMI loan files are intermingled with over a million loan files of other purchasers that contain confidential personal information, no one other than the Debtors and their agents are in a position to locate and segregate the Loan documents. Moreover, the Loan documents are located in a leased warehouse that covers approximately eighty thousand square feet and can only be electronically searched and located using an indexing system that is proprietary of the storage company that maintains the warehouse. It would create a chaotic and untenable situation if all lenders and purchasers were granted access to trample through the warehouse looking for files creating a serious risk of lost or damaged files. The Debtors are not seeking to make a profit, only to create an orderly process and spare the estate from bearing costs that provide no benefit or potential for benefit to the estates.

10.    Given there is no authority for CMI's request to impose a significant administrative expense and burden on the Debtors' estates and CMI has failed to establish cause to lift the automatic stay to pursue what is an alleged unsecured claim[6], such relief requested in the Motion should be denied.

---

[6] CMI has not alleged any reason why its claim, if any, cannot be resolved through the normal claims reconciliation process.

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion to the extent set forth herein and grant the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      January 9, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
Sharon M. Zieg (No. 4196)
Erin Edwards (No. 4392)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession