# The First Class Lease
## Motor Vehicle Lease Agreement — NEW YORK

Deal #218730, Stock #53699

**Parties:**
- Lease Date: 01/22/2005
- No. of Months in Lease: 24 (Lease Term)
- Lessor (Dealer): MERCEDES-BENZ MANHATTAN, INC.
- Address: 536 WEST 41ST STREET, NEW YORK, NY 10036
- Lessee: AMERICAN HOME MORTGAGE CORP
- Billing Address: 538 BROADHOLLOW ROAD, MELVILLE, NY 11747
- Address of principal garage location: 367 GREAT PLAINS RD, SOUTHAMPTON, NY 11968

**Vehicle Information:**
- XX New ☐ Used   VIN: WDBNG76J25A453580
- 2005 MERCEDES-BENZ S600V 4D SED 75
- Year / Make / Model / Body Style / Odometer reading

**Optional Factory Equipment:**
- ☐ CD Player S/N _____   ☐ Telephone S/N _____
- XX Other (please specify): STETELITE RADIO KIT

**Primary Intended Use:**
- Personal, Family, or Household Purposes ___
- Business, Commercial, or Agricultural Purposes ___

WARNING: Important consumer protections may not apply if this Lease indicates that Lessee(s) is leasing the vehicle primarily for business, commercial or agricultural purposes.

Unless otherwise specified, "I," "me" and "my" refer to the Lessee, and "you" and "your" refer to the Lessor, Lessor's assignee, or Lessor's servicing agent. The disclosures in this Lease are made on behalf of the Lessor and its assignee(s). I agree to lease the vehicle described above on the terms and conditions in this Lease.

## Consumer Leasing Act Disclosures

| 1. Amount Due at Lease Signing or Delivery (Itemized below) | 2. Monthly Payments | 3. Other Charges (not part of my Total Monthly Payments) | 4. Total of Payments (The amount I will have paid by the end of the Lease) |
|---|---|---|---|
| $ 29999.99 | a. My First Total Monthly Payment of $ 2500.00 is due on 01/22/2005, followed by 23 payments of $ 2500.00 due on the 22nd of each month. b. The total of my Total Monthly Payments is $ 60000.00 (this is a Single Payment Lease if this amount equals the amount or line 5a.) | a. Disposition Fee (if I do not purchase the vehicle) $ 350.00<br>b. N/A $ None<br>c. Total $ 350.00 | (1 + 2b + 3c − 5a − 5f)<br>$ 87849.99 |

**Itemization of Amount Due at Lease Signing or Delivery**

5. Amount Due at Lease Signing or Delivery:
- a. First Total Monthly Payment (or Single Payment) (includes sales/use taxes) $ 2500.00
- b. Capitalized Cost Reduction
  - Cash +$ 18890.57
  - Net Trade-in Allowance +$ None
  - N/A +$ None
- c. Pro Rata Base Monthly Payment (___ days) +$ None
- d. Acquisition Fee (if not capitalized) +$ 1500.00
- e. Sales/use tax on: b, c, d, h and i, as applicable +$ 1784.17
- f. Security Deposit (refundable) +$ None
- g. First year's title, license and registration fees −$ 17.75
- h. TAX −$ 5250.00
- i. Waste Tire Recycling Fee, $12.50/DIC FEE, $5.00 +$ 57.50
- j. Total =$ 29999.99

6. How the Amount Due at Lease Signing or Delivery will be paid:
- a. Net Trade-in Allowance $ None
- b. Rebates and noncash credits +$ None
- c. Amount to be paid in cash +$ 29999.99
- d. N/A +$ None
- e. Total =$ 29999.99

7. My monthly payment is determined as shown below:
- a. Gross Capitalized Cost: The agreed upon value of the vehicle is $127613.81 and any items I pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) $127613.81
- b. Capitalized Cost Reduction: The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the Gross Capitalized Cost −$ 18890.57
- c. Adjusted Capitalized Cost: The amount used in calculating my Base Monthly Payment (or Base Single Payment) = $108723.24
- d. Residual Value: The value of the vehicle at the end of the Lease used in calculating my Base Monthly Payment (or Base Single Payment) −$ 65350.89
- e. Depreciation and any amortized amounts: The amount charged for the vehicle's decline in value through normal use and for other items paid over the Lease term =$ 43372.35
- f. Rent Charge: The amount charged in addition to the Depreciation and any amortized amounts +$ 16627.65
- g. Total of Base Monthly Payments (or Base Single Payment): The Depreciation and any amortized amounts plus the Rent Charge =$ 60000.00
- h. Lease Payments: The number of payments in my Lease ÷ 24
- i. Base Monthly Payment (or Base Single Payment) =$ 2500.00
- j. Monthly (or Base Single Payment) Sales/Use Taxes +$ None
- k. N/A +$ None
- l. Total Monthly Payment (or Total Single Payment) =$ 2500.00

**Early Termination.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of 30000 miles (Mileage Allowance) for the term of this Lease, at the rate of 20¢ per mile for each of the first 5,000 excess miles and 25¢ per mile for each additional mile thereafter.

**Purchase Option at End of Lease Term.** I have an option to purchase the vehicle ("as is") at the end of the Lease term for its Residual Value, plus a Purchase Option Fee of $ 150.00, plus all official fees and taxes. See Section 18 for more information.

**Other Important Terms.** See the Lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

8. Itemization of Gross Capitalized Cost
- a. Agreed upon value of the vehicle $ 127613.81
- b. Sales/Use Tax +$ None
- c. Luxury Tax +$ None
- d. Other Tax N/A +$ None
- e. Acquisition Fee (if capitalized) −$ None
- f. Prior credit or lease balance on trade-in vehicle +$ None
- g. Optional Warranty/Service Contract +$ None
- h. N/A +$ None
- i. N/A +$ None
- Gross Capitalized Cost =$ 127613.81

9. Trade-In Vehicle
- Year N/A   Make N/A
- Model N/A

10. Estimated Fees and Taxes
- a. Total title, license and registration fees and total sales/use taxes $ 7082.17
- b. Luxury tax +$ None
- c. N/A +$ None
- Total Estimated Fees/Taxes =$ 7082.17

I agree to pay all vehicle registration, title and license fees, sales/use taxes, and all personal property/vehicle excise taxes for the term of the Lease (including any extensions of the term of this Lease). The total is an estimate only because it is based on current rates and fees and the vehicle's current garage location. For some of these items, you will invoice me after you have been billed by the taxing authorities. Some bills will be received after the Lease terminates. I agree to pay within 10 days of being invoiced.

11. Mileage Allowance/Refund
- 30000 I agree to this Mileage Allowance for the term of this Lease.
- The Base Monthly Payment and Residual Value for this Lease have been calculated, in part, using the Mileage Allowance entered for the term of this Lease.
- Extra Mileage Refund at Scheduled End of Lease
- At the scheduled end of the Lease term, you will refund 15¢ per mile for the unused miles between N/A miles and N/A miles, less any amounts I owe under this Lease, unless:
  - (a) the vehicle is destroyed or stolen; (b) I default or end this Lease early;
  - (c) I purchase the vehicle; or (d) the refund is less than $1.00.

12. New and Used Vehicle Warranty
- If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer.
- If the vehicle is used, it is not covered by a warranty unless identified below:
  - ___ Remainder of standard new vehicle warranty from manufacturer
  - ___ Used vehicle warranty from manufacturer
  - ___ Used vehicle warranty from Lessor (Dealer)
  - ___ Used vehicle warranty from other third-party provider

You are assigning me your rights under any such warranty. I am leasing the vehicle "as is" and understand that, unless otherwise prohibited by law, and except as provided above, you do not make any warranties as to the vehicle's condition, merchantability, suitability, or fitness for a particular purpose.

13. Optional Extended Warranty/Service Plans
- ___ I choose the optional coverage(s) for the price(s) indicated, below.
- Coverages will be for None months or None miles, whichever happens first. These coverages are not provided by the Lessor. I must pursue all matters related to these coverages, including refunds, through the provider. The terms and conditions for these coverages are in a separate contract, which I have received and read.
- If the price of these coverages is also included in the Itemization of Gross Capitalized Cost, then e.g., it will be included in the Base Monthly Payments. If not, I have paid for the coverages in full upon signing this Lease.
- Service Agreement $ None   Extended Warranty Agreement $ None
- Coverage Provider(s): _____

## Additional New York Lease Disclosures

**Capitalized Cost.** The sum of the Adjusted Capitalized Cost and any Capitalized Cost Reduction. The Capitalized Cost and the amount of the Base Monthly Payment (or Base Single Payment) may be negotiable. $127613.81

**Adjusted Capitalized Cost.** The amount which is capitalized in connection with the Lease and is used in determining the amount of my Base Monthly Payment (or Base Single Payment). This amount plus the Additional Early Termination Charge will be used in determining the legal limit on my early termination liability. $108723.24

**Additional Early Termination Charge.** An additional amount, the unamortized portion of which will be used in determining my early termination liability. This amount represents the total costs and damages, in addition to the Adjusted Capitalized Cost, which you would incur if this Lease were to be terminated before I had made any rental payments. Although the Adjusted Capitalized Cost is not referred to in the early termination provisions of this Lease (Section 20), the Adjusted Capitalized Cost and the Additional Early Termination Charge may be used to compare the early termination provisions of competing lessors. $ 4348.92

**Estimated Residual Value.** $ 65350.89

## Notices/Signatures

**LESSEE**

NOTICE TO THE LESSEE: 1. Do not sign this Lease before reading it or if it contains any blank space. 2. Lessee is entitled to a completely filled in copy of this Lease when Lessee signs it.

By signing below, I acknowledge that I have received a completed copy of this Lease, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES AND PRIVACY POLICY ON THE REVERSE SIDE.

MOTOR VEHICLE LEASE AGREEMENT
AMERICAN HOME MORTGAGE CORP
- Lessee: [signature]
- By: [signature]   Title: President
- Driver's license number/State: 799 433 042

**LESSOR SIGNATURE AND ASSIGNMENT**

By signing below, the Lessor (or DCFS that is Lessor, by its attorney-in-fact) accepts the terms and conditions of this Lease. If Lessor is not DCFS Trust, Lessor assigns all right, title, and interest in this Lease, vehicle and guaranty to DCFS Trust.

X [signature]   Title _____

**GUARANTY**

The Guarantor(s) named below absolutely and unconditionally guarantee(s) payment of all amounts owed under this Lease. This means that the Lessee(s) fail(s) to pay any money owed, Guarantor(s) will pay it. All Guarantor(s) shall be jointly and severally liable and agree that this Guaranty shall not be affected by any changes to this Lease. Guarantor(s) also agree to be liable for all fees and costs, including attorneys' fees, that the Lessor incurs in enforcing this Lease or Guaranty.

Guarantor(s) has/have received a completed copy of this Lease and Guaranty at the time of signing.

X [signature]                  X _____
  Guarantor                       Guarantor

  Print Name                      Print Name
  Address                         Address
  Address                         Address

**INSURANCE VERIFICATION**

Lessor (or Dealer) has verified that the insurance coverage described in Section 16 is in force on the date of this Lease. All matters regarding insurance should be sent to: Mercedes-Benz Credit, P.O. Box 1800, Roanoke, TX 76262-1800.

- TRAVELLERS   Policy No. 9467726811011
- JERRY ROSENBLUM   (718) 423-5555
- 41-40 BELL BLVD, BAYSIDE, NY 11361

NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.
THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE ARE A PART OF THIS LEASE.

84-001-5290 NY (6/04)
MBC-704NY   MBC – ORIGINAL   CUSTOMER – WHITE   DEALER – YELLOW   FILING – GREEN

### 14. Maintenance

I will, at my own expense, service the vehicle according to the manufacturer's recommendations and keep it in good condition and running order. I will also keep complete maintenance booklets and return them with the vehicle.

### 15. Prohibited Uses of Vehicle

I will not use or allow anyone else to use the vehicle: (a) in a way that violates the law or the terms of my insurance policy; (b) to transport goods or people for pay; or (c) outside the United States.

In addition, I will not use or allow anyone else to use the vehicle for more than 30 days outside the state where I first registered it or recorded the title unless I first have your written consent.

I will not physically change the vehicle's body or interior in any way unless I first get your written consent. If I add parts to the vehicle that cannot be removed without harming the vehicle's usefulness or value, I understand that these parts become your property. You may inspect the vehicle at any reasonable time.

**I will not assign or sublease any interest in the vehicle or this Lease.** I will keep the vehicle and Lease free from all liens.

### 16. Insurance

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

During the term of this Lease and until I return the vehicle, I will maintain primary insurance acceptable to you. The insurance will provide the following minimum coverages:

a. comprehensive fire and theft coverage and collision coverage, each for the actual cash value of the vehicle and with a maximum deductible of $2,500; and

b. liability insurance for at least:
   i. $100,000 per person and $300,000 per occurrence for bodily injury or death; and
   ii. $50,000 per occurrence for property damage.

I will list you as "Loss Payee" for the coverages in 16a and as "Additional Insured" for the coverages in 16b. If I carry excess or umbrella liability insurance, it will include your interest to the extent permitted by law.

I will give you written proof of my insurance coverage upon request. Also, I will inform you at least 30 days in advance, in writing, if any term of my insurance changes or the policy is to be canceled. If I fail to maintain the required insurance, or fail to provide you proof of insurance, I will be in default.

For claims arising under my insurance that concern physical damage to the vehicle, I appoint you as my attorney-in-fact to initiate, settle, or release the claim. You may also sign any proofs of claim or loss on my behalf and receive and sign my name on any settlement, draft, or check. I also give you a security interest in any money paid under my insurance.

### 17. Damage, Destruction, or Loss of Vehicle

If, during the term of this Lease and until I return the vehicle to you, it is damaged, destroyed, stolen, abandoned, or taken by any judicial or governmental authority, I am financially responsible. I will notify you within 10 days of any of these events.

If the vehicle is stolen, destroyed, or, in your opinion, damaged beyond reasonable repair, you reserve the right to terminate this Lease and I will pay you as follows:

**Required Insurance/Gap Waiver**

NOTICE: In the event of a theft or physical damage loss, I shall not be responsible for the entire contract balance. I shall, however, remain responsible to you for an amount equal to: the actual cash value of the vehicle as of the date of the loss; the deductible portion of any physical damage insurance I provide; and Total Monthly Payments or other amounts due and owing under this Lease up to the time of your receipt of any loss settlement proceeds. If I have physical damage insurance in place at the time of the loss, the actual cash value of the vehicle shall have the same meaning as that contained in the coverage. If this is a Single Payment Lease, you will refund the portion of my Total Monthly Payments that is unused as of the time you receive the loss settlement proceeds.

This subsection will not apply and I will be in default if I accept a cash value settlement from my insurance company without first consulting you. Further, I may not assign my rights under this subsection to anyone else unless I first get your written approval.

**No Insurance**

If I do not have insurance as required by this Lease, or my insurance company denies part or all of my claim, I shall still remain responsible for an amount equal to the actual cash value of the vehicle, and for any other amounts becoming due and owing under the Lease up until the time you receive the actual cash value amount.

### 18. Purchase Option

If this Lease goes to full term, I may purchase the vehicle "as is" (in its condition at that time) at its Residual Value (see Section 7d), plus a Purchase Option Fee in the amount indicated on the front of this Lease, any unpaid or overdue amounts under this Lease, official fees, taxes, and other charges required by law.

I will re-register and re-title the vehicle in my name at the time I purchase it. If I fail to do so, you reserve the right to cancel the registration.

### 19. Return of Vehicle

a. **Documentation and amounts due:**
If I do not purchase the vehicle at the end of the Lease term, I will promptly return it to you in the same condition as when this Lease began (except for normal wear and use) at a mutually agreed time and place and pay:

1) any unpaid or overdue amounts due under this Lease; 2) a Disposition Fee (see Section 3); 3) any official fees or taxes related to Lease termination; and 4) $500 if any maintenance booklets are missing (see Section 14).

In addition, I will complete and sign a federal/state odometer statement.

b. **Full Lease term – charge for excess mileage and excess wear and use:**
If this Lease goes to full term and the vehicle has been driven excess miles, I will pay the excess mileage charges, plus applicable taxes. If the vehicle has been subjected to excess wear and use (defined below), I will pay the amount it would cost to make all related repairs, or the amount of a true itemized estimate by an unaffiliated, licensed appraiser, plus applicable taxes, whether or not you, in your sole discretion, actually make the repairs.

**Excess wear and use includes:**
1) damage to the major driveline components (engine, transmission, differential); 2) damage to the vehicle's frame; 3) damage to the interior or exterior that is beyond ordinary wear and use; 4) missing and broken parts or accessories, including optional factory equipment identified in this Lease; 5) missing tires, tires of unequal size (diameter), tires that have sidewall plugs, cuts or exposed cords, wheels that are broken or cracked; 6) stars, cracks, holes or plugs regardless of size in the windshield, other glass or lenses; 7) vehicle has not been maintained according to the manufacturer's specifications (maintenance must be documented); 8) after market alterations not installed by an authorized Mercedes-Benz dealer; and 9) any damage that makes the vehicle unsafe or unlawful to operate.

c. **Full Lease term – failure to return the vehicle:**
If, after this Lease has gone to full term, I do not return the vehicle to you, I must pay you the purchase price in Section 18, unless you agree to an extension in writing. I will pay you an amount equal to a Total Monthly Payment (Section 7) for each month (or portion of) up until the time you receive the purchase price or written extension agreement. Accepting any Lease payments after this Lease ends does not automatically mean you agree to extend this Lease.

### 20. Early Termination

**EARLY TERMINATION MAY REQUIRE ME TO PAY A SUBSTANTIAL CHARGE.**

I may terminate this Lease early if: I am in full compliance with the terms of this Lease and I satisfy all of my early termination obligations.

a. **Voluntary Early Termination:**
I may end this Lease early. If I do, I will pay you an amount equal to the sum of the following:

1) any Lease payments or other amounts due under the Lease at the time of termination; 2) a Disposition Fee (see Section 3); 3) the Balance Subject to Rent Charges, computed in accordance with the constant yield method; and 4) an Additional Early Termination Charge of 4% of 3), above.

The "constant yield method" is the method of determining the Rent Charge portion of each Base Monthly Payment or Base Single Payment, pursuant to which the Rent Charge for each computational period is earned monthly, in advance, by multiplying the constant rate implicit in the lease times the Balance Subject to Rent Charges.

At any given time during the scheduled term of a lease, the Balance Subject to Rent Charges is determined by subtracting from the Adjusted Capitalized Cost the scheduled Base Monthly Payments (or Base Single Payment) through the date of early termination, and adding to the difference the cumulative accrued Rent Charges through the date of early termination, earned monthly, in advance.

In the case of either a monthly payment or a single payment lease, the Rent Charge calculations are based on the assumption that Lessor will receive the Base Monthly Payments or the Base Single Payment on their exact due dates and that the Lease goes to its full term.

---

b. **Default:**
I will be in default and, subject to any right I may have to cure my default, you may terminate this Lease early if:

1) I have given false or misleading information on my credit application; 2) I do not make a payment when it is due; 3) a lien or other claim is made against this Lease or the vehicle; 4) a bankruptcy petition is filed by or against me; 5) I have defaulted under any other lease, retail contract, or agreement I have with you; and/or 6) I do not comply with any of this Lease's terms.

If I default, you, or anyone you choose may, as applicable law permits, peacefully take back the vehicle without notifying me. I may recover any personal property in the vehicle only if I claim the property within 20 days after you take back the vehicle. If you take back the vehicle, I must pay your actual and reasonable expenses of retaking, storing and transporting the vehicle. Further, I must pay you the total amount in Section 20a, plus all collection and legal costs, including attorneys' fees not to exceed 15% of what I owe.

If I am in default solely because I fail to make a payment when it is due, within 25 days after you send me written notice, I may cure my default and reinstate the Lease by paying all past due amounts and late charges and, if you have taken possession of the vehicle, the actual and reasonable costs of repossession and storage. Timely payment of these amounts restores my rights and options under the Lease. If I default again because I fail to make a payment when it is due after I reinstate the Lease the first time, you may exercise your rights without giving me another reinstatement notice.

If you get back the vehicle, and I do not reinstate the Lease, you may dispose of it by public or private sale or lease. If you do, I must pay you the costs of preparing and disposing of the vehicle. You will subtract the Proceeds from the amount I owe you. The Proceeds are the proceeds you receive from the disposition of the vehicle. My Security Deposit will be used to pay any amounts I may owe. Any unused portion will be returned to me.

I may, within 10 days after you get back the vehicle and at my own cost, supply you with a professional appraisal of the wholesale value of the vehicle by a mutually acceptable, independent third party. In that case, the appraisal amount will be final and binding and will be substituted for the Proceeds in the paragraph above.

### 21. Assignment and True Lease

I understand you may assign your rights and obligations under this Lease at any time to anyone, including DCFS Trust, without first notifying me. If assigned, throughout the Lease, "you" and "your" also refer to DCFS Trust or other assignee. DaimlerChrysler Services North America LLC ("Mercedes-Benz Credit") has agreed to be the servicing agent of DCFS Trust. As agent for DCFS Trust, Mercedes-Benz Credit has the power to act on DCFS Trust's behalf to administer, enforce and defend this Lease. I agree to pay all amounts due under this Lease to Mercedes-Benz Credit. **I understand this is a true lease and that I do not have equity or other ownership rights in the vehicle unless I purchase it from you.**

### 22. Late Charges/Traffic Tickets

If all or a portion of a Total Monthly Payment is 10 or more days late, I will pay you either $50 or 5% of the unpaid amount, whichever is less. If any payment item is returned or rejected for any reason, I will pay you a $25 fee or other amount as allowed by law. I will also pay you a $25 fee, or other amount as allowed by law, if I do not pay a parking and/or traffic ticket and the ticket is sent to you. If you are required to pay the ticket, I will reimburse you.

### 23. Indemnity

If you are subjected to any claims, losses, injuries, expenses, or costs related to the use, maintenance, or condition of the vehicle, I will pay all of your resulting costs and expenses, including attorneys' fees.

### 24. Notices

You will send notices and correspondence to me at the billing address I provided on this Lease. If this address or the garage address changes, I will inform you, in writing, within 30 days of the change.

### 25. Applicable Law

The laws of the state in which the Lessor (Dealer) has its principal place of business will govern this Lease and any disputes that may arise between us.

### 26. Security Deposit

You may use my Security Deposit to pay any amount I owe under this Lease at Lease termination. Otherwise, you will return it to me at the end of this Lease. I will not earn interest, increases or profits on my Security Deposit (unless required by law). If my Security Deposit is $750 or more, it shall earn interest at the prevailing rate for similar type deposits. You shall be entitled to retain an amount equal to 1%, per annum, of the amount deposited on my behalf as an administrative expense.

### 27. Entire Agreement

This Lease is the entire agreement between you and me, and is binding upon us and anyone who may assume our interests in it. You and I agree that any changes to this Lease must be in writing and signed by each of us. If you waive any provision of this Lease, or if any provision is found to be unenforceable, the rest of this Lease will remain valid and enforceable. **To the extent permitted by law, I give you permission to monitor and record any telephone conversation between you and I.**

### 28. Delivery

I accept delivery of the vehicle described in this Lease and acknowledge that it is equipped as described, is in good operating order and condition, and has the odometer reading recorded on this Lease in the Vehicle information section.

### 29. Payment Obligations

I may not change or stop any Lease payments for any reason, even if I do not receive an invoice, and even if the vehicle is stolen, destroyed, seized by the government, a court, experiences mechanical problems, or does not satisfactorily perform. If I experience mechanical or other difficulties with the vehicle, I will pursue these issues with the manufacturer.

### 30. Title

I will ensure that the vehicle's title is registered in your name. I will register the vehicle in the manner you tell me and will pay all license, title, and registration costs. I will maintain the vehicle's registration as required by law.

---

### Important Arbitration Disclosures

**The following Arbitration provisions significantly affect my rights in any dispute with you. Please read this carefully before signing the Lease.**

For purposes of the Arbitration provisions, the terms "us" and "our" refer to the Lessee and Lessor, and Lessor's successors and assignees.

1. If either of us chooses, any dispute between us will be decided by arbitration and not in court.

2. If a dispute is arbitrated, each of us will give up the right to a trial by a court or a jury trial.

3. I agree to give up any right I may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and I agree to give up any right I may have to consolidate my arbitration with the arbitration of others.

4. The information that can be obtained in discovery from each other or from third persons in an arbitration is generally more limited than in a lawsuit.

5. Other rights that each of us would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this Lease, arbitration clause or the arbitrability of any issue), between us or Lessor's employees, agents, successors or assigns, which arise out of or relate to a credit application, this Lease, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at the election of either of us (or the election of any such third party), be resolved by a neutral, binding arbitration and not by a court action. Whoever first demands arbitration may choose to proceed under the applicable rules of the American Arbitration Association, or its successor, which may be obtained by mail from the American Arbitration Association, Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or the Internet at http://www.adr.org/, or the applicable rules of JAMS, or its successor, which may be obtained by mail from JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614 or on the Internet at: http://www.jamsadr.com or the applicable rules of the National Arbitration Forum, or its successor, which may be obtained by mail from the Forum, P.O. Box 50191, Minneapolis, Minnesota 55405-0191, or on the Internet at http://www.arbitration-forum.com.

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. The arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which I reside. If I demand arbitration first, I will pay my arbitration filing fees or case management fees required by the applicable rules up to $125, and you will pay any additional initial filing fee or case management fee. You will pay the whole filing fee or case management fee if you demand arbitration first. You will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent me from requesting that the applicable arbitration entity reduce or waive my fees, or that you voluntarily pay an additional share of said fees, based upon my financial circumstances or the nature of my claim.

This Lease evidences a transaction involving interstate commerce. Any arbitration under this Lease shall be governed by the Federal Arbitration Act (9 USC 1, et seq.). Judgment upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both of us retain the right to exercise self-help remedies and to seek provisional remedies from a court pending final determination of the dispute by the arbitrator. Neither of us waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court. If any provision of this arbitration agreement is found to be unenforceable or invalid, that provision shall be severed and the remaining provisions shall be given full effect as if the severed provision had not been included.

---

### Privacy Notice

**Categories of Information You Collect**
You collect nonpublic personal information about me from the following sources:
• Information you receive from me on applications and other forms
• Information about my transactions with you, your affiliates, or others; and
• Information you receive from consumer reporting agencies and other outside sources.

**Categories of Information You Disclose**
You may disclose all of the information that you collect, as described above.

**Categories of Affiliates and Third Parties to Whom You Disclose Information About Current and Former Customers**
You may disclose all of the information that you collect, which relates to your transactions or experiences with me, among your affiliated companies. Companies, which are affiliated with you, mean any company that controls you, any company you control, or any company that is in your "family of companies." In other words, it is any company that is in your "family of companies." You may disclose all of the information that you collect, as described above, to companies that perform marketing services on your behalf or to other financial institutions with whom you have joint marketing agreements.

You may also disclose all of the information that you collect, as described above, with other nonaffiliated third parties as permitted by law.

**Opting Out of Disclosure**
Because you only disclose information to nonaffiliated third parties as permitted by law or through a joint marketing arrangement, opt outs of such disclosures are not required.

**Policies and Practices to Protect the Confidentiality and Security of Nonpublic Personal Information**
You restrict access to nonpublic personal information about me to those employees, outside contractors, and businesses which jointly market your products and services, who need or may need to know that information to provide products or services to me. You maintain physical, electronic, and procedural safeguards that comply with federal regulations to protect my nonpublic personal information.

**Privacy Policy Changes and Future Disclosures**
You may from time to time change your Privacy Policy. Therefore, you reserve the right to disclose any and all information to your affiliates and other nonaffiliated third parties as permitted by law.

84-001-5290 NY (8/04)
MBC-704NY