## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------------------------- x | Chapter 11 |
| In re: | : |
| | : Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : Jointly Administered |
| | : |
| Debtors. | : Hearing Date: January 14, 2008 at 2:00 p.m. |
| ------------------------------------------------------------------- x | Objection Deadline: January 7, 2008 at 4:00 p.m. |
| | Related Document Nos. 2391, 2392, 2394, 2403, 2580, 2605, and 2617 |

### STATEMENT AND RESERVATION OF RIGHTS OF AH MORTGAGE ACQUISITION CO., INC. TO NORTHWEST TRUSTEE SERVICES, INC.'S APPLICATIONS FOR ALLOWANCE AND APPROVAL OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FORECLOSURE PROFESSIONALS TO THE DEBTORS-IN-POSSESSION

AH Mortgage Acquisition Co., Inc. (the "Purchaser") hereby submits this Statement and

Reservation of Rights (the "Reservation of Rights") to the *First, Second, and Third Interim*

*Monthly and First Quarterly Applications of Northwest Trustee Services, Inc. for Allowance and*

*Approval of Compensation for Services Rendered and Reimbursement of Expenses as*

*Foreclosure Professionals to the Debtors-in-Possession* for the period from August 6, 2007 to

October 31, 2007 [D.I. 2391, 2392, 2394, and 2403, as supplemented by 2580], and in support of

the Reservation of Rights the Purchaser respectfully states as follows:

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## BACKGROUND

A.   **Status of the Case**

1.     On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.     On August 14, 2007, the United States Trustee for the District of Delaware appointed The Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed.

4.     On September 12, 2007, the Court entered that certain Order Approving the Retention and Employment of Northwest Trustee Services, Inc. ("NTS") as Foreclosure Professionals for the Debtors Nunc Pro Tunc to the Petition Date [D.I. 713] (the "Retention Order").

B.   **The Sale of the Servicing Business**

5.     By that certain *Order (A) Approving (i) The Sale Of The Debtors Mortgage Servicing Business Free And Clear Of Liens, Claims And Interests, (ii) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (B) Granting Certain Related Relief* [D.I. 1711] dated October 30, 2007  (the "Sale Order"), the Court authorized the sale of the Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as subsequently amended, the "APA").

6.      Under the APA, the Servicing Sale will close in two steps.[2]   At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing Date"), the Purchaser paid the Purchase Price (as defined in the APA) in the manner and to the parties in interest as contemplated by the APA.

C.      **The Fee Applications**

7.      On December 14, 2007, NTS filed its fee applications requesting compensation for services rendered and reimbursement of expenses as foreclosure professionals to the Debtors for the months of August, September, and October (the "Fee Applications").  On December 17, 2007, NTS filed its *Quarterly Application for Compensation for Services Rendered and Reimbursement of Expenses as Foreclosure Professionals to the Debtors-in-Possession for the Period from August 6, 2007 through October 31, 2007.*

D.      **Committee's "Limited Objection"**

8.      On January 7, 2008, the Committee filed its *Limited Objection and Joinder of the Official Committee of Unsecured Creditors to Northwest Trustee Services, Inc.s Applications for Allowance and Approval of Compensation for Services Rendered and Reimbursement of Expenses as Foreclosure Professionals to the Debtors-in-Possession* [D.I. 2617] (as it relates to the limited objection, the "Committee Objection").  The Committee Objection states that the Committee does not object to the amount or reasonableness of the fees sought by NTS.  Rather, the Committee Objection seeks entry of an order requiring that all fees and expenses sought by NTS be paid solely from the proceeds of the Servicing Business.

---

[2] The description of the APA in this Motion is by way of summary only.  To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

## RESERVATION OF RIGHTS

9.     The Purchaser objects to the relief requested by the Committee Objection, that is, that an order should be entered that forces the Purchaser to bear all of NTS's costs by requiring that all of NTS's fees and expenses be paid solely from the Servicing Business. The Initial Closing occurred on November 16, 2007, and NTS's Fee Applications relate to the period from August 6, 2007 through October 31, 2007. The APA is clear that the Purchaser should not bear these pre-Initial Closing expenses. Section 2.6 of the APA states that Sellers shall "retain and be liable and responsible for all Retained Liabilities." Section 1.1 of the APA defines "Retained Liabilities" as all "Claims and Liabilities of any kind or nature whatsoever of a Seller or any of its Affiliates or affecting any the Purchased Assets (other than the Assumed Liabilities), including any Claims and Liabilities . . . relating to any action, event, circumstance or condition occurring or existing *on or prior to the Initial Closing Date. . .*" [emphasis added]. Also, the definition of "Assumed Liabilities" in Section 1.1 of the APA includes the assumption of "all Losses incurred by Sellers of their Affiliates in the operation of the Business pursuant to Sections 6.1 and 6.2 or otherwise arising as a result of, or in connection with, the continued ownership by Sellers of the Purchased Assets and operation of the Business *after the Initial Closing. . .*" [emphasis added]. Moreover, Section 6.2(b) of the APA states that " *[f]rom the Initial Closing until the Final Closing*, all profits and Losses of the Business shall be solely for the account of Purchaser, and Purchaser shall be solely responsible for all Losses, costs and expenses of the Business *during such period* and shall bear all Liabilities of the Business and all Losses incurred by Sellers or their Affiliates in the operation of the Business or otherwise arising as a result of, or in connection with, the continued ownership by Sellers of the Purchased Assets and the operation of the Business *after the Initial Closing. . .*" [emphasis added]. Finally, footnote (f) of Exhibit G to the APA, which sets forth the basis on which the Sellers and Purchaser are to prepare the

Reconciliation Report, which is the mechanism by which the Sellers and Purchaser are to reconcile the profits and losses of the period between the Initial Closing and Final Closing, states that uses of cash for the Servicing Business during this period shall *not* include any liabilities or obligations "accrued at or prior to the Initial Closing". These provisions, among others in the APA, make clear the Purchaser's and the Sellers' intent that the assets of the Servicing Business are not to be utilized to pay pre-Initial Closing expenses such as the fees and expenses of NTS.

10.     Finally, to the extent these fees and expenses relate to assets or contracts that are not Purchased Assets, the proceeds of the Servicing Business should not be utilized to pay them, regardless of the timing. As stated in Section 12, of the First Amendment to Asset Purchase Agreement, dated as of November 1, 2007, "[a]fter the Initial Closing, the Retained Liabilities and Excluded Assets shall be deemed *not* to be part of the Business." [emphasis added]. This, coupled with the following from Section 6.14(d), make clear that proceeds from the Servicing Business are not to be utilized to pay expenses that do not relate to the Purchased Assets:

> Except as otherwise required under any Servicing Agreement, including, without limitation, any requirements relating to deposits of cash and cash equivalents received by Sellers as insurance and tax escrows or principal and interest payments with respect to any Mortgage Loan, Sellers will deposit all cash and cash equivalents received in connection with the Business and the Purchased Assets during the period from the Initial Closing until the later of the Final Closing and payment of the Reconciliation Payment in cash accounts that are separate from any other accounts maintained or used by Sellers or any of their Affiliates. *The cash in such accounts will be used only for the operation of the Business in the Ordinary Course* [emphasis added].

Accordingly, the Purchaser respectfully submits that it would be inappropriate at this time to grant the relief sought by the Committee Objection, particularly in light of posture of the requested relief and the fact that the Committee Objection references no support for the proposition that these fees and expenses should be paid solely from the Servicing Business.

Alternatively, if this Court were inclined to grant the relief requested in the Committee Objection, the Purchaser hereby reserves its rights in all respects under the APA, including, without limitation, the right to file a claim for damages against the Sellers' estates.

WHEREFORE, the Purchaser hereby reserves its right in all respects under the APA and respectfully requests that the Court (i) deny the relief requested in the Committee Objection and (ii) grant the Purchaser such other and further relief as is just and appropriate.

Dated:     Wilmington, Delaware
           January 10, 2008

                              GREENBERG TRAURIG, LLP

                              Victoria W. Counihan (BAR #3488)
                              The Nemours Building
                              1007 North Orange Street, Suite 1200
                              Wilmington, DE 19801
                              (302) 661-7000

                              and

                              JONES DAY
                              Benjamin Rosenblum (BAR #4752)
                              222 East 41st Street
                              New York, NY 10017-6702
                              (212) 326-3939

                              Counsel for AH Mortgage Acquisition Co., Inc.