IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.[1] | ) | Case No. 07-11047 (CSS) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Obj. Deadline: January 25, 2008 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: February 1, 2008 at 11:00 a.m. (ET)** |

**NOTICE OF MOTION**

TO: (I) THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE; (II) THE CREDITORS' COMMITTEE; (III) COUNSEL TO BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT FOR CERTAIN LENDERS UNDER THAT CERTAIN SECOND AMENDED AND RESTATED CREDIT AGREEMENT DATED AS OF AUGUST 10, 2006; (IV) COUNSEL TO THE AGENT FOR THE DEBTORS' POSTPETITION LENDER; (V) COUNSEL TO ACRC; AND (VI) ALL PARTIES ENTITLED TO NOTICE UNDER DEL. BANKR. LR 2002-1(B).

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession (the "Debtors") have filed the **DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING AND AUTHORIZING TERM SHEET BETWEEN AMERICAN HOME MORTGAGE AND AMERICAN CORPORATE RECORD CENTER, INC.** (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that objections to the attached Motion must be filed with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before **4:00 p.m. (ET) on January 25, 2008**. At the same time, you must also serve a copy of the objection upon the undersigned counsel.

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

**PLEASE TAKE FURTHER NOTICE** THAT A HEARING ON THIS MATTER WILL BE HELD ON **FEBRUARY 1, 2008 AT 11:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 5TH FLOOR, COURTROOM #6, WILMINGTON, DELAWARE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OF HEARING.

Dated: Wilmington, Delaware
January 10, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Curtis J. Crowther (No. 3238)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.[1] | ) | Case No. 07-11047 (CSS) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Obj. Deadline: January 25, 2008 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: February 1, 2008 at 11:00 a.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING AND AUTHORIZING TERM SHEET BETWEEN AMERICAN HOME MORTGAGE AND AMERICAN CORPORATE RECORD CENTER, INC.**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and sections 105(a), 363 and 506 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving a term sheet (the "Term Sheet") between the Debtors and American Corporate Record Center, Inc. ("ACRC"), a copy of which is attached as Exhibit A to the proposed form of Order annexed hereto (the "Order"). The Debtors and ACRC are referred to herein as the "Parties." In support

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Rule 9019(a) and sections 105(a), 363 and 506 of the Bankruptcy Code.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Commencement Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

5. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief (the "First Day Declaration") [Docket No. 2], which is incorporated by reference.

loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8. In the weeks prior to the Commencement Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began

to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

9. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

10. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

11. On the Commencement Date, the Debtors filed a motion [Docket No. 11], seeking authority, *inter alia*, to sell substantially all assets relating to the Debtors' mortgage loan servicing business (the "Servicing Business"). After a week long trial that commenced on October 15, 2007, by Order dated October 30, 2007 [Docket No. 1711], the Court approved the sale of the Servicing Business to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and supplemented, and including all schedules, exhibits, and attachments thereto).

**RELEVANT BACKGROUND**

12. The Debtors and ACRC are parties to a Record and Storage and Service Agreement effective as of November 21, 2005 (the "Agreement"). Pursuant to the Agreement, ACRC maintains storage for over one million files for the Debtors. ACRC also maintains a proprietary electronic indexing system of the files that enables search and retrieval.

13. ACRC has asserted a prepetition claim in the amount of $276,000 against the Debtors' estates (the "Prepetition Claim").

14. Additionally, ACRC has asserted a warehouseman's lien and filed a secured claim (collectively, the "Liens"), against the files held in storage on account of the Prepetition Claim.

15. The Parties have been negotiating changes/modifications to the Agreement and a resolution of the Liens and Prepetition Claim in order to continue the mutually beneficial relationship between the Parties.

**SUMMARY OF THE TERM SHEET**

16. The Debtors and ACRC believe it is in their respective best interests to modify the Agreement and resolve the Prepetition Claim, and other issues that exist between them in connection with the Agreement, in accordance with the Term Sheet. The effectiveness of the Term Sheet is conditioned upon approval of the Bankruptcy Court.

17. The Term Sheet's salient economic provisions can be summarized as follows: [3]

- ACRC will fix the rates charged for storage related services for a period of 6 months from the date of the Term Sheet. ACRC otherwise has the ability to increase rates under the Agreement;
- The Debtors have agreed to a minimum storage charges amount of $45,000.00 for a period of 6 months from the date of the Term Sheet. This amount had been the minimum charged by ACRC prior to the bankruptcy filing;
- The Debtors will pay ACRC $200,000.00 on account of the Prepetition Claim. ACRC will, in turn, waive any and all other secured claims against the Debtors and will waive, in advance, any

[3] The summary of the Term Sheet is qualified in its entirety by the Term Sheet. If there are any inconsistencies between the summary contained herein and the Term Sheet, the Term Sheet shall control. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Term Sheet.

potential contract rejection damages claims. In addition, if ACRC recovers certain amounts from third parties in exchange for ACRC's release of liens relating to the files being stored, the Debtors are entitled to receive up to $50,000.00 back from ACRC;

- The Debtors have agreed to establish an escrow account in the principal sum of $1 million for the sole purpose of document destruction or mass removal/relocation costs relating to the documents in storage. This escrow will automatically reduce based on the percentage of cartons removed from the storage facility. In addition, any income earned on the escrow account will be the sole property of AHM.

## RELIEF REQUESTED

18. By this Motion, the Debtors respectfully request entry of an order approving the Term Sheet pursuant to Bankruptcy Rule 9019 and sections 105(a), 363 and 506 of the Bankruptcy Code. The Debtors have weighed the costs, risks and disruption that would arise from any litigation over the terms of the Agreement and the Liens against the compromises contained within the Term Sheet. In the Debtors' judgment, the Term Sheet is fair and reasonable and serves the best interests of the Debtors, their estates and creditors.

## BASIS FOR RELIEF REQUESTED

19. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

20. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

21. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

22. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the

range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

23. The Debtors respectfully request that the Court approve the Term Sheet because the Term Sheet lies well above the lowest point in the range of reasonable potential litigation possibilities. In addition, each of the applicable Martin factors weighs in favor of approving the Term Sheet. Accordingly, the Term Sheet should be approved pursuant to Bankruptcy Rule 9019.

**A. The Probability Of Success In Litigation**

24. Absent the Term Sheet, the disputes between the Debtors and ACRC would have to be litigated before the Court with no assurances of a favorable outcome. The resolution of these disputes with ACRC under the terms of the Term Sheet is a favorable outcome because it will save the Debtors significant time and expense in any attendant litigation.

**B. The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It**

25. The Term Sheet satisfies the second factor in Martin's four-factor test largely for the reasons set forth above in the discussion of the Debtors' probability of success in litigation. Litigation over the Liens and the Agreement would involve complex legal issues and a potentially lengthy adversary proceeding, which would be expensive for the estate and inconvenient for the parties. Additionally, the assertion of the liens or litigation over the Prepetition Claim could result in significant disruption of Debtors' operations or impact Debtors' ability to perform under other contracts or agreements.

**C. The Paramount Interest Of Creditors**

26. Entry into the Term Sheet serves the paramount interest of creditors of the Debtors. The Term Sheet's resolution of the Liens and the Prepetition Claim represents a savings for the creditors by obviating litigation, thereby saving the expenses attendant to such litigation, while at the same time eliminating the Liens and reducing the Prepetition Claim. Therefore, the third factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the Term Sheet.

**D. The Likely Difficulties In Collection**

27. Finally, the fourth factor enunciated by the Third Circuit in Martin is not applicable under these circumstances.

**E. Summary**

28. The resolution and compromise of the disputes and issues between the Debtors and ACRC as embodied in the Term Sheet: (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay, inconvenience and uncertainty that would attend any litigation of the Parties' issues; and (iv) advances the paramount interests of creditors. Therefore, the Term Sheet satisfies Bankruptcy Rule 9019 and should be approved by the Court

**NOTICE**

29. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iii) Counsel to the Agent for the Debtors' Postpetition Lender; (iv) counsel to the Creditors' Committee; (v) counsel to ACRC; and (vii) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**NO PREVIOUS REQUEST**

30. No prior request for the relief sought in this Motion has been made to this or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court issue and enter an Order, pursuant to Bankruptcy Rule 9019 and sections 105(a), 363 and 506 of the Bankruptcy Code, (i) approving the Term Sheet, and (ii) granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
January 10, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Curtis J. Crowther (No. 3238)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.[1] | ) | Case No. 07-11047 (CSS) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ------------------------------------------------------- | ) | **Doc. Ref. No.** |

**ORDER APPROVING AND AUTHORIZING TERM SHEET BETWEEN AMERICAN HOME MORTGAGE AND AMERICAN CORPORATE RECORD CENTER, INC.**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for entry of an order approving the approving a term sheet (the "Term Sheet") between the Debtors and American Corporate Record Center, Inc. ("ACRC") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105(a), 363 and 506 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"); and it appearing that the Term Sheet and the relief requested in the Motion is in the best interests of the Debtors, their creditors and their estates; and it appearing that the Court has jurisdiction to consider the Motion and the relief requested therein; and due notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefore; it is hereby

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

ORDERED, that the relief requested in the Motion is hereby granted; and it is further

ORDERED, that the Term Sheet attached hereto as Exhibit A is approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019; and it is further

ORDERED, that the Debtors are authorized and empowered to take all necessary steps to carry out and otherwise effectuate the terms, conditions and provisions of the Term Sheet; and it is further

ORDERED, that this Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Order.

Date: Wilmington, Delaware
February ____, 2008

______________________________
Christopher S. Sontchi
United States Bankruptcy Judge