1

1

2   UNITED STATES BANKRUPTCY COURT

3   DISTRICT OF DELAWARE

4   Case No. 07-11047-css

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   AMERICAN HOME MORTGAGE HOLDINGS, INC.,

9

10          Debtor.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14                  United States Bankruptcy Court

15                  824 North Market Street

16                  5th Floor

17                  Wilmington, Delaware

18

19                  November 21, 2007

20                  10:11 AM

21

22   B E F O R E:

23   HON. CHRISTOPHER S. SONTCHI

24   U.S. BANKRUPTCY JUDGE

25

2

1

2  **HEARING re Debtors' Motion Pursuant to Sections 105 and 362 of**

3  **the Bankruptcy Code and Bankruptcy Rules 4001(d) and 9019(a)**

4  **for an Order Approving and Authorizing Global Settlement**

5  **Agreement with Credit Suisse First Boston Mortgage Capital LLC,**

6  **Credit Suisse Securities (USA) LLC and DLJ Mortgage Capital**

7  **Inc.**

8

9  **HEARING re Emergency Motion of Cutisha Cauthorne for an Order**

10  **for Relief from the Automatic Stay Under Section 362 of the**

11  **Bankruptcy Code**

12

13

14

15

16

17

18

19

20

21

22

23

24

25  **Transcribed by:  Lisa Bar-Leib**

3

A P P E A R A N C E S :

YOUNG CONAWAY STARGATT & TAYLOR, LLP

      Attorneys for Debtor

      The Brandywine Building

      1000 West Street

      17th Floor

      Wilmington, DE 19801

BY:   ROBERT S. BRADY, ESQ.

LAW OFFICES OF DANIEL HOGAN

      Attorneys for Cutisha Cauthorne

      1701 Shallcross Avenue

      Suite C

      Wilmington, DE 19806

BY:   DANIEL K. HOGAN, ESQ.

WEIL, GOTSHAL & MANGES LLP

      Attorneys for

      767 Fifth Avenue

      New York, NY 10153

BY:   CHRISTOPHER J. MARCUS, ESQ.

4

1

2   HAHN & HESSEN LLP

3        Attorneys for Official Committee of Unsecured Creditors

4        488 Madison Avenue

5        New York, NY 10022

6

7   BY:   MARK S. INDELICATO, ESQ.

8        (TELEPHONICALLY)

9

10  GREENBERG TRAURIG, LLP

11       Attorneys for AIG Mortgage Acquisition

12       The Nemours Building

13       1007 North Orange Street

14       Suite 1200

15       Wilmington, DE 19801

16

17  BY:   VICTORIA W. COUNIHAN, ESQ.

18

19

20

21

22

23

24

25

5

1                    P R O C E E D I N G S

2           THE CLERK:  All rise.

3           THE COURT:  Please be seated.

4           MR. BRADY:  Good morning, Your Honor.  Robert Brady

5     on behalf of American Home Mortgage Holdings, Inc.  Your Honor,

6     if we may, Mr. Marcus of Weil Gotshal is on the train on the

7     way down.  I understand, due to weather issues, the train is

8     delayed.  I believe it's fog.  And if we can take the stay

9     relief matter --

10          THE COURT:  That's fine.

11          MR. BRADY:  -- first

12          THE COURT:  That's fine.

13          MR. BRADY:  -- and then turn to the CSFB settlement.

14    So I'll yield the podium to Mr. Hogan.

15          THE COURT:  Okay.  Thank you.  Good morning, Mr.

16    Hogan.

17          MR. HOGAN:  Good morning, Your Hogan.  Your Honor,

18    first let me thank you for allowing this matter to be heard on

19    an expedited basis.  I appreciate that very much as does my

20    client.

21          Your Honor, this matter, as you're aware from the

22    pleadings that have been filed, relates to our request for

23    emergency relief from the automatic stay.  The purpose of the

24    request for this emergency relief is to prosecute an action in

25    federal court in Virginia for claims against American Home

6

1    Mortgage together with other defendants.  The factual predicate

2    for the motion relates to a refinancing of a primary residence

3    of a one Ms. Cauthorne.  The facts are that in November of

4    2006, she entered into a refinance transaction.  She attempted

5    to back out of the transaction utilizing the three-day right of

6    rescission and attempted to do that and was talked out of that

7    process.  The long and short of it is that there's an

8    allegation that one of the primary documents for that

9    refinance, that being the Federal Truth in Lending Disclosure

10   Statement, was in fact forged and her signature was affixed to

11   that inappropriately.

12          The reason that's so fundamentally important, Your

13   Honor, is because it changed -- apparently changed the term of

14   the adjustment period of her loan from sixty months to twenty

15   months.

16          THE COURT:  The dealer changed it?  The deal is just

17   the disclosure.  But the rider would be the document that

18   affects -- the adjustable rate rider would be the document that

19   affects what the period is.

20          MR. HOGAN:  That's correct, Your Honor, but the

21   TILA -- or the Federal Truth in Lending Disclosure Statement

22   together with that rider to the primary promissory note are the

23   two documents that apparently --

24          THE COURT:  Were changed.

25          MR. HOGAN:  -- were changed.  And as a result of

7

1    that, there's a cause of action which accrues relative to

2    Regulation Z in RESPA that has a one-year statute of

3    limitation.  The parties that would be brought before the court

4    in a federal court action include not only American Home

5    Mortgage but the other players, the brokers and the individuals

6    who apparently were responsible, allegedly responsible, for the

7    forgery.

8         And so, we've got an issue of a statute of

9    limitations -- I understand the debtors' arguments with regard

10    to 108(c) but insofar as the actions of the various parties are

11    intertwined and the parties to that action have to be brought

12    before November 27 of 2007.  The action needs to be filed.

13    There's an issue about whether full and complete justice can be

14    rendered if American Home Mortgage is somehow severed from that

15    law suit and we're forced to deal with the claims process as

16    the debtor has indicated.

17         The alleged actions of these defendants are so

18    factually intertwined and they're based on notions of

19    conspiracy, forgery and then, of course, the Federal Truth in

20    Lending actions that I mentioned before.  American Home

21    Mortgage is necessary and indispensable to that action and in

22    its absence, justice cannot be adequately rendered as to what

23    actually happened with regard to the alleged forgery.

24         The other point that I would make, Your Honor, is

25    that there's a real world issue here aside from the statutory

8

1    arguments that might be made.  As it relates to Ms. Cauthorne,

2    if she has to wait and utilize the claims process in this

3    bankruptcy proceeding, she'll very likely lose her house while

4    she waits for that process to unfold.  If we can bring this

5    matter before the federal court down in Virginia, there's a

6    real likelihood that the matter can be resolved, that the

7    insurance, to the extent there is insurance applicable, that

8    the debtor has that would cover such an action, we would not in

9    any way prejudice the estate or take any action relative to the

10   estate.  We'd really just pursue the insurance proceeds.

11           So based on that, Your Honor, judicial economy and

12   significant prejudice to my client indicate that -- and weigh

13   in favor of giving us relief from the stay for us to pursue

14   this federal court action.

15           THE COURT:  Okay.  Mr. Brady?

16           MR. BRADY:  Good morning, Your Honor.  Robert Brady

17   on behalf of the debtors.  Just to begin, Your Honor, movant

18   has the burden here to meet the standards for relief from stay

19   and again, to note for the record, no evidence has been

20   presented in connection with the motion.  Addressing first,

21   Your Honor, the request for emergency relief, the basis given

22   by the movant on why this matter needs to be heard on an

23   emergency basis is a statute's running on November 27th.

24   Obviously, it's not running with respect to the debtor.  108(c)

25   makes it clear that that period is told with respect to the

1    debtor.  There's nothing to prevent this plaintiff from

2    initiating a suit against the other potential defendants who

3    are not debtors in this proceeding before the statute of

4    limitations runs on 11/27.

5          So in the first instance, we would argue there is no

6    emergency here.  They can initiate the suit if they want to

7    come back on proper notice with an evidentiary record to

8    determine whether the stay should be lifted to add American

9    Home.  They can do that on the appropriate time periods.

10         Turning to the merits of the motion, Your Honor, they

11   cite three reasons on why the stay should be lifted.  One, this

12   claim is likely to be covered by insurance.  Two, that AHM is

13   an indispensable necessary party.  Three, the plaintiff is

14   likely to succeed on the merits.

15         It may help the Court if I can explain the

16   relationship of the origination process.  Now I don't have a

17   witness either; based on the short time, I was not able to have

18   a witness available today.  I could do so if Your Honor sets an

19   evidentiary hearing.  But I can make representations to Your

20   Honor on how the process works from my understanding of it.

21   And again, if we need to put on evidence on that point, we

22   could.

23         In this instance, Aggressive Home Mortgage is the

24   broker.  They're an independent broker.  They're not affiliate

25   or subsidiary of the debtor.  The debtor has a non-exclusive

1   contractual relationship with Aggressive Home Mortgage.  So the

2   debtor has products available, mortgage products available, and

3   it makes them available to the broker to go out to originate

4   loans.  The broker also sells products from other originators.

5   It could be Countrywide, it could be Wells Fargo.  But

6   basically, the broker has at his or her disposal a number of

7   mortgage products available to the borrower.  It's the broker

8   that decides to match the borrowers' needs and to provide them

9   with a certain product.  The broker then collects all of the

10  data.  The broker collects the information on income,

11  appraisals, all the other data.  The broker also selects the

12  settlement agent.  In this case, the settlement agent was First

13  Choice Title.  American Home has no say in who the settlement

14  agent is.  That is a relationship between the broker and

15  whomever they chose to settle the loan.  And it's the broker

16  and the settlement agent that have all duties to comply with

17  the federal laws, the disclosure requirements and all the other

18  elements of a closing.

19      AHM has no involvement in the origination process

20  other than to review the data collected to confirm it meets the

21  underwriting standards necessary for the products being sold

22  and then it funds the loan when it's notified that the three-

23  day rescission period has expired after the closing.  So again,

24  American Home is not involved in this process until it's

25  advised when the rescission period is ended and it funds the

1  loan.  AHM in all ways relies on the broker and the settlement

2  agent to bring that loan to that period and to collect the data

3  and make the necessary disclosures.

4          In connection with the closing, AHM receives a

5  closing protection letter.  And that letter is issued by the

6  title company and that's usually arranged for by the settlement

7  agent.  The settlement agent is actually the insured under the

8  title policy.

9          So turning to movant's first argument that the debtor

10  has insurance that could cover this claim, well time has been

11  short.  We've conducted a preliminary review.  We're not aware

12  of any insurance that the debtor has that would cover this

13  claim.  In fact, to the extent there is a claim, the insurance

14  that would cover it is the insurance issued by the title agency

15  with the settlement agent as the insured.

16          Second, the argument that the debtor is a necessary

17  and indispensable party -- the draft complaint barely mentions

18  AHM and there's a good reason.  As I described the process, the

19  alleged claims that the movant has here all relate to the

20  origination process, actions by the settlement agent or by the

21  broker.  In fact, it is typical and standard that the

22  rescission letter is required to be sent to the funder of the

23  loan, in this case American Home Mortgage.  And there's a

24  reason for that.  If American Home receives a rescission letter

25  within the three days after the closing, it doesn't fund the

12

1    loan.

2            THE COURT:  Right.

3            MR. BRADY:  The loan never happens.  In this case, I

4    think by the movant's own admission, the rescission letter was

5    faxed to the broker not to American Home.

6            Another fact we discovered, Your Honor, is American

7    Home sold this loan.  This loan is owned by Countrywide and

8    movant should know that because the movant's payments have been

9    going to Countrywide.  So American Home has no say over the

10   foreclosure process.

11           THE COURT:  Well, movant doesn't know who owns the

12   loan.  Movant knows who services the loan.  We've had extensive

13   hearings on that distinction.  I don't know who owns my

14   mortgage.  I know who the servicer is.

15           MR. BRADY:  Right.  Understood, Your Honor.  I can

16   represent -- my client has advised me again if we need an

17   evidentiary hearing we could, that oh, Countrywide does own

18   this loan and we no longer own it.  Typically in this

19   situation, what would happen is if American Home is named in

20   such a suit, it cross-claims against the broker and the

21   settlement agent, if they're named.  If they're not named, it's

22   a third party complaint.  But typically, these cases are

23   handled with the focus of the case being against the broker and

24   the settlement agent.

25           I took a quick look at the schedules, Your Honor. It

1    appears on the pre-petition litigation schedule, there's about

2    twenty-two actions that look like something like that.  So

3    there is a risk, Your Honor, if you lift the stay and let them

4    proceed to proceed with this suit that we'll have twenty-two

5    similar requests.  And the bar date is January 11th.  Potential

6    plaintiffs like this who have not yet filed suit, you know, may

7    be out there.

8            So we would submit that Your Honor should deny this

9    without prejudice, let the bar date, let the debtor understand

10   the universe of these claims.  It potentially could be

11   something the debtor chooses to go through an ADR process with.

12   We don't know yet.  We have to evaluate whether that would work

13   given the inclusion of other third parties.  But there may be a

14   more efficient way to deal with these types of claims after we

15   know the universe.  And we won't know that until January 11th.

16   So we would ask that it be denied without prejudice and that

17   the debtors will handle this through the claims administration

18   process.  If the plaintiff finds themselves in a situation

19   where there's a motion to dismiss or something by the other

20   defendants in the suit because AHM hasn't been named, they can

21   come back before the Court and seek relief at that point to the

22   extent they can meet the standards.  But they haven't met them

23   today.

24           MR. HOGAN:  Your Honor, may I be heard just on a

25   couple matters factually?  Thank you.  As I understand the

1   settlement process, having conducted myself in excess of

2   probably 15,000 settlements over the course of my practice as

3   an attorney here in Delaware, I can tell you, Your Honor, that

4   with regard to the process, the underwriting process, the front

5   end process before a loan is closed, the debtor's

6   representation that American Home Mortgage has no involvement

7   until they fund the loan is simplistic at best and it's

8   inaccurate.  I mean, in terms of the preparation of the actual

9   documents, American Home Mortgage is the one who prepares the

10  documents.  They come from American Home Mortgage.  They're

11  involved heavily in the underwriting process and ultimately,

12  what our claims are about relate to the documents where there's

13  a spoliation issue with regard to what the documents provide

14  and there's an issue there.  But the Court needs to understand

15  that these documents were actually prepared by American Home

16  Mortgage.

17          The other point I would make, Your Honor, relates to

18  the insured closing letter.  Debtors articulated to the Court

19  that in fact the insured closing letter represents that the

20  settlement agent is the insured on that.  But that's not the

21  case, Your Honor.  What an insured closing letter does, or a

22  protection letter as it's sometimes referred to, is articulates

23  to the mortgage company that the agent in question has the

24  authority to issue a title policy on this particular

25  transaction.  It doesn't mean that the settlement agent is the

1   insured of that transaction; it's a representation that that

2   settlement agent can, in fact, issue a policy of title

3   insurance which inures to the benefit of, in this case,

4   American Home Mortgage.  And so, the representation that, in

5   fact, there is no insurance in this is inaccurate insofar as I

6   understand it a title policy, a lender's title policy, was

7   issued in favor of American Home Mortgage, not in favor of the

8   settlement agent, not in favor of Mrs. Cauthorne.  Only in a

9   purchase transaction would there be a simultaneous issue where

10  there'd be an owner's policy as well as a lender's policy

11  issued.  Just so I'm clear on that, as we understand it, there

12  is insurance in that regard.

13         The final point I would make, Your Honor, relates to

14  the debtors' representation that there is, in fact, a real

15  possibility that in the event that they're brought into this

16  suit that they're going to cross-claim the other defendants in

17  the matter.  I think that speaks exactly to our point.  We have

18  a controversy in issue that relates to factual issues that

19  occurred a year ago.  And they're all vastly intertwined; they

20  all relate to conspiracy, forgery and, as I said, the Federal

21  Truth in Lending requirements.

22         If we're forced to sue the other parties and leave

23  American Home Mortgage on the sidelines to be resolved at a

24  different time, we're never going to have final justice.

25  There's never going to be any economy.  It's never going to be

¹ resolved, at least in the short term that we need it resolved.

² Thank you, Your Honor.

³         THE COURT:  You're welcome.

⁴         MR. INDELICATO (TELEPHONICALLY):  Your Honor, if I

⁵ may?  It's Mark Indelicato from Hahn & Hessen on behalf of the

⁶ committee.

⁷         THE COURT:  Yes.

⁸         MR. INDELICATO:  Just to address a few points, I'd

⁹ like to echo what debtors' counsel said.  I believe there's a

¹⁰ real possibility -- we've heard several -- and I don't mean

¹¹ this in a pejorative sense but disgruntled borrowers coming

¹² before the Court and while I don't want to minimize the

¹³ situation of the plaintiff, I believe they are just yet another

¹⁴ one of a disgruntled borrower.  And I believe Mr. Brady is

¹⁵ correct that if we grant relief from the stay on this instance,

¹⁶ on this minimal showing, I think we could potentially have

¹⁷ significant additional litigation in the case regarding these

¹⁸ kinds of litigations.

¹⁹         I would also echo Mr. Brady's comments that this

²⁰ really does seem to be -- and I think counsel for plaintiff's

²¹ comment should indicate that there is a significant factual

²² dispute even if this Court were to hear it and I don't think on

²³ such short notice it's an appropriate forum to decide the

²⁴ issues.  There are a lot of issues and I took a brief look at

²⁵ the papers, Your Honor.  And the allegations that if this is

1  not resolved quickly, plaintiff will potentially lose their

2  house.  I don't minimize that but if one looks at the documents

3  themselves, the issue about whether or not this was a twenty-

4  month or a five-year arm, I don't believe really goes to the

5  issue of whether or not they would lose their home.  This is

6  apparently -- and again, the facts will tell us if we need to

7  get into them -- another situation in where a borrower banked

8  on the fact that the real estate market would continue to

9  appreciate and that they assumed whether it is a twenty-month

10  arm or a five-year arm that the value of the house would

11  appreciate and that they would be able to continue to refinance

12  at lower rates.  This was a forty-year loan with significant

13  payments to be due whether it would be up to five years or two

14  years.

15          So, Your Honor, I believe that the debtor has

16  satisfied their burden and this motion should be denied.  In

17  the alternative, I think it should be set down for an

18  evidentiary hearing so that we can truly understand the nature

19  of this and the Court can determine whether or not the stay

20  should be lifted.  Thank you.

21          THE COURT:  All right.  First, I'll take the pending

22  statute of limitations issue.  And I gave Mr. Hogan his early

23  hearing due to his allegations about the statue of limitations.

24  And of course 108(c) stays the statute of limitations as

25  applies to the debtor but does not to the nondebtor parties

1   that would be subject to the litigation.  So there is no

2   concern at least on an emergent basis that any rights against

3   the debtor will somehow expire if I don't grant this motion.

4          Also, I'm not sure, frankly, even if 108(c) wasn't

5   applicable, why a filing of a proof of claim prior to the

6   expiration of the statute of limitations asserting claims

7   including claims on arrest -- but I may or not preserve those.

8   But in any event, that's unnecessary since the statute won't

9   run.

10          I don't think that I've heard any allegations -- and

11   again, I think Mr. Brady makes and Mr. Indelicato make very

12   valid points that there is no evidence in front of the Court

13   today whatsoever.  And hearing the back and forth of counsel,

14   there is a dispute.  There are disputes about the nature of the

15   closing, the nature of how closings work in Virginia and

16   whether there's insurance.  And those are issues that are

17   simply raised by the counsel back and forth doing the best they

18   can in short order to respond to the issues but they're not

19   evidence.  And I think there are evidentiary issues that are

20   critical to the ultimate decision as to whether or not to grant

21   stay relief.

22          So I don't think I have a record -- well, I don't

23   have a record today that would -- under which I'd be able to

24   grant stay relief.  And I don't have an emergency with a

25   pending -- with a statute of limitations about to expire that

1  would put me in a position where it would be appropriate

2  notwithstanding the lack of evidence to enter some

3  extraordinary relief in order to protect the rights of the

4  individual here, which I take very, very seriously.  And I

5  think Mr. Indelicato, frankly -- I think his comments don't

6  take appropriately seriously the allegations of fraud involved

7  here and the allegations -- and the difference between a one-

8  year fixed and a five-year fixed on when the arm kicks in.

9  It's obviously a significant issue.

10         So I'm not going to deny the motion without prejudice

11  but I'm not going to grant the motion.  I'm going to deem this

12  as a preliminary hearing under the Bankruptcy Code and I think

13  we need to schedule an evidentiary hearing on proper notice in

14  the time frame in order to -- for the Court to have an

15  evidentiary record before it where I can grant the motion on

16  its -- or deny the motion on its merits.  And in the meantime,

17  there's nothing to prevent the plaintiff or purported plaintiff

18  to file lawsuit in Virginia and we'll have a hearing in short

19  order, certainly not in a day but in an appropriate amount of

20  time.  And there should be time, if I do grant the motion, in

21  order for the complaint to be amended to add the debtor, if

22  necessary, to the lawsuit.

23         So when do we want a hearing?  And I know Mr. Hogan

24  would like one as soon as possible.  So let me hear from Mr.

25  Brady on when he'd like the hearing.  And, Mr. Hogan, you're

1  going to have to have some sort of evidence in front of the

2  Court.

3          MR. HOGAN:  Thank you, Your Honor.

4          MR. BRADY:  Ideally, Your Honor, from the debtors'

5  perspective, we'd like to have it in January after the bar date

6  has passed so that we can understand the universe of these

7  claims or potential claims.

8          THE COURT:  Well, the problem is -- this will get

9  filed in Richmond?

10          MR. HOGAN:  That's my understanding.  Yes, Your

11  Honor.

12          THE COURT:  Is that part of that rocket docket -- do

13  they have that rocket docket in Richmond --

14          MR. HOGAN:  I can't --

15          THE COURT:  -- where it goes to trial in, like, three

16  months --

17          MR. HOGAN:  I can't speak to that.

18          THE COURT:  -- or is that North --

19          MR. HOGAN:  I can't speak to that, Your Honor.  I

20  don't know.

21          THE COURT:  Well, there is a lot going on.

22          MR. HOGAN:  From our perspective, Your Honor --

23          THE COURT:  When's the bar date?  January 11th?

24          MR. BRADY:  Yes, Your Honor.

25          THE COURT:  Unfortunately, of course, the winter

1    holidays are coming up and that puts big blocks in time.  And I

2    have a new case where I know there's going to be some sales

3    going on in late December.  So I expect they're going to want

4    some of my time.  Could you live with the week of the 14th of

5    January, Mr. Hogan?

6            MR. HOGAN:  We'd prefer it sooner, Your Honor, but

7    if -- you know, we're at the Court's discretion, of course.

8            THE COURT:  Well, let's -- why don't you work

9    together to reach a mutually acceptable date the week of

10   January 14th?  And just let chambers know and I'll schedule it.

11   I have availability that whole week.  There's a few hearings

12   here and there but nothing we can't schedule around.  And it'll

13   just be this hearing.  It won't be an omnibus or anything else.

14   So it shouldn't take more than a couple hours.

15           MR. HOGAN:  I wouldn't think so.  Thank you, Your

16   Honor.

17           THE COURT:  So work with Mr. Brady and your client to

18   come up with something the week of January 14th and just let

19   Ms. Gadson know.

20           MR. BRADY:  Your Honor, if we may ask the Court's

21   indulgence for just a brief recess.  There's been some e-mail

22   traffic.  Mr. Marcus has arrived on the CSFB settlement.  I

23   think we need just a couple minutes to catch up and make sure

24   we understand where we are and hopefully we'll be in a position

25   to present it in ten minutes.

1    THE COURT:  Okay, that's fine.  I do have a hearing

2  at 11 but -- so let's try to move it along.  But --

3    MR. MARCUS:  Actually, Your Honor, I think we

4  probably need about ten seconds and I think then we can go

5  ahead.

6    THE COURT:  All right.  Well, I won't even leave the

7  bench.  How about that?  We'll take a recess and you can go in

8  the back of the courtroom.  Mr. Hogan, you can leave.

9    MR. HOGAN:  Thank you, Your Honor.

10    (Pause)

11    MR. BRADY:  For once, Your Honor, I overestimated the

12  amount of time that would be necessary.

13    THE COURT:  All right.

14    MR. BRADY:  So I think I have, like, a nine minute

15  credit future request for continuances.

16    THE COURT:  Well, now, if we're going to keep score.

17  Your deficit is well beyond nine minutes.

18    MR. BRADY:  It stays -- I believe it stays by now.

19  Your Honor, turning to matter 1 on the agenda, I believe we are

20  in a position to present that now.

21    THE COURT:  Okay.

22    MR. BRADY:  I am pleased to present this, Your Honor.

23  This has been a very long, very difficult negotiation for both

24  parties really that began with the commencement of the case.

25  CSFB filed their adversary proceeding on the petition date and

1    the parties have both been engaged in litigation and

2    discussions basically since then.  So I think both sides are

3    very pleased that we've reached this resolution and the parties

4    can move on.

5         We started the negotiations over the agreement that

6    is the subject of the adversary proceeding.  But ultimately,

7    this settlement resolves claims and disputes under five

8    separate agreements between the parties.  Taking those, Your

9    Honor, in slightly different order than they're presented in

10   the stipulation but turning first to the mortgage repurchase

11   agreement, that is the agreement that is the subject of the

12   adversary proceeding.

13        And there's really two components of the settlement

14   with respect to the mortgage repurchase agreement.  One

15   involves the sale of the actual mortgage loans.  As the

16   agreement indicates, CS will market those loans.  They're going

17   to show us the offering list of who they would offer those

18   loans to for sale.  Debtor has the right to augment that list.

19   If the loans sell for an amount in excess of the advance amount

20   under the repurchase agreement, the debtors would receive that

21   excess.  If it sells for less than the advance amount, CS will

22   receive an unsecured deficiency claim.  the debtors have

23   reserved the right to contest that claim just on two grounds:

24   one, for any calculation error in the calculation of the

25   deficiency claim; and two, if the debtors contend that the sale

24

1  was not conducted in a commercially reasonable manner.  And so

2  there's a number of provisions of the settlement agreement that

3  deal with that reservation of rights by the debtor to challenge

4  the sale for commercial reasonableness.

5        CS will have the right to file a claim for attorneys'

6  fees in connection with this agreement.  The debtors and the

7  committee have the right to review those attorneys' fees and to

8  contest those on grounds of reasonableness.  Any ultimate

9  attorneys' fee claim that's allowed would be an unsecured claim

10  in the debtors' case.

11        The settlement also involves the servicing transfer.

12  Now, it may be that servicing transfers with the sale of the

13  loans but it may be that servicing transfers separate from the

14  sale of the loans.  That will be at CS' direction up until end

15  of April 2008.  Debtors have an obligation to service unless

16  directed otherwise by CS until April -- as of April.  It must

17  transition by the end of the month.

18        We've agreed to cooperate.  The parties have been

19  working through that.  There are servicing guidelines, transfer

20  guidelines, that are attached that will serve as the basis for

21  the transfer of these in accordance with the stipulation.  As

22  always an important point to the committee and the debtors,

23  there's a process by which the debtor gets paid back its

24  advances in connection with the servicing.

25        Turning to the securities repurchase agreement, CS

25

asserts that the debtors owe approximately 1.6 million in

repurchase obligations under that agreement.  CS is holding

approximately 1.4 million in cash collateral.  The agreement

allows a setoff of that and then a waiver of any deficiency

claim under that agreement.

        The TBA agreement, CS asserts that there is a claim

of approximately 836,000 dollars owed by the debtors under that

agreement to CS.  They've agreed to waive that under this.  The

DLJ purchase agreement, CS asserts an early payment default

claim of at least 2.8 million dollars.  They've agreed to waive

that as part of the global settlement.  And then a servicing

agreement is referenced, Your Honor.  The parties are not aware

of any claims or disputes under that agreement but it is

covered by the mutual release.

        This agreement does provide for mutual releases

between the debtors and CS.  Section 5.3 identifies carve-outs

from those releases.  CS is a party to the Bank of America

facility.  Obviously, they're not waiving any claims they may

have in relation to the B of A facility nor are the debtors.

Obviously, the commercial reasonableness challenge that the

debtors have reserved is not released.

        There's three construction loans that are involved in

this process.  And there's a reservation of rights in the

carve-out from the release in connection with certain acts that

may occur in connection with the construction loans.  It does

1    not cover contracts that are not identified.  The committee,

2    Your Honor, had not done an exhaustive review of the full

3    relationship between CS.  We believe this may be it, these five

4    agreements, but to the extent there are other agreements that

5    the parties were not aware of, there's no release being granted

6    in connection with that.  And obviously, the obligations under

7    the global settlement are not being released.

8            The committee, Your Honor, has been involved in all

9    aspects of this and they've been very helpful to the process of

10   working with the debtors and CS to bring a resolution here.

11   They've agreed to support the settlement and to be bound by

12   it -- any order entered by Your Honor.  This does fully resolve

13   the adversary proceeding that's pending before the Court.  It

14   also resolves the debtors' Rule 2004 motion against CS which

15   has been pending for some time.

16           Based on that, Your Honor, we're not aware of any

17   objections.  I believe the purchaser of the servicing business

18   has one reservation of rights they'd like to put on the record.

19   But I think Your Honor can take judicial notice of the

20   litigation that was going on between the parties, the cost, the

21   time and delay that has occurred in connection with that

22   litigation and that a settlement is appropriate and a global

23   settlement of the issues is appropriate so that the parties can

24   complete their obligations under the settlement agreement and

25   move on.

1      THE COURT:  All right.  Does anyone else wish to be

2  heard in connection with this matter?

3      MR. INDELICATO:  Your Honor, Mark Indelicato again on

4  behalf of the committee.  Again, I echo everything Mr. Brady

5  said as this was a very tough negotiation between all the

6  parties.  Every paragraph, almost every word, in the settlement

7  was negotiated.  I believe all the parties negotiated in good

8  faith and we believe, as we said, in this DIP and to the

9  parties that this settlement was in the best interest of the

10  estate.  And we fully support the settlement and would urge the

11  Court to approve the settlement agreement.

12      THE COURT:  Okay, thank you.

13      MR. MARCUS:  For the record, Your Honor, Christopher

14  Marcus, Weil, Gotshal & Manges for Credit Suisse.  I also

15  wanted to echo what Mr. Brady and what Mr. Indelicato said and

16  I also wanted to thank the Court for the Court's indulgence

17  throughout this process, not just today given my late train,

18  but also throughout the entire adversary proceeding the time

19  you gave us to continue with negotiations and improve the

20  settlement agreement.  That was obviously very helpful and so I

21  just wanted to put that on the record as well, thanks to the

22  Court.

23      THE COURT:  All right.  You're welcome.  Ms.

24  Counihan?

25      MS. COUNIHAN:  Good morning, Your Honor. Victoria

1   Counihan from Greenberg Traurig on behalf of AIG Mortgage

2   Acquisition, the purchaser.  Your Honor, obviously, this is a

3   very complicated settlement.  We are not standing here today to

4   get in the way of Your Honor approving the settlement but we do

5   want to make it clear that the purchaser is not specifically

6   consenting to the settlement and we're not waiving any of our

7   rights that we have under the asset purchase agreement to the

8   extent that the settlement or the transactions that are going

9   to occur under the settlement may trigger things in the asset

10  purchase agreement.

11          THE COURT:  All right.

12          MS. COUNIHAN:  So as between my client and the

13  debtors, the asset purchase agreement is going to control the

14  relationship and should continue to control.

15          THE COURT:  Very well.  Understood.

16          MR. MARCUS:  I guess just to be clear on the record,

17  Credit Suisse would also reserve its rights to oppose anything

18  they might raise given the hearing we have today.  But I

19  think -- a reservation of rights --

20          THE COURT:  Well, why would you be -- how are you a

21  party-in-interest to the APA between the debtor and the buyer?

22          MR. MARCUS:  I'm not sure that we would have any

23  rights.  I think the issue is with respect to a contract that

24  may have been assumed.  So we may or may not be in it standing

25  here today.  I don't know that we would be.

29

1          THE COURT:  Oh, I understand.  All right.  Well, I

2    understand Ms. Counihan's comment and I think everyone's rights

3    are reserved in connection with all those aspects.  And I did

4    not -- I think her point was simply she's not consenting to the

5    settlement but she's not opposing it either and so her client

6    will rest on its rights under the sale order and the APA.

7          Anything further?  Well, I'm certainly prepared to

8    approve the settlement.  It meets -- easily meets the criteria

9    to approve settlements, resolves a longstanding, well-thought

10   series of motions and adversary proceedings and the Court is

11   happy to be in a position to approve a resolution of those

12   issues.

13         MR. BRADY:  Thank you, Your Honor.  If I may

14   approach, I have a form of order.

15         THE COURT:  Yes, please.  Thank you.  Anything else?

16         MR. BRADY:  Nothing further for the debtors, Your

17   Honor.

18         THE COURT:  The Court's entered the order.  It'll be

19   docketed.  The hearing is adjourned.  Thank you very much.

20         (Whereupon these proceedings were concluded at 10:47

21   a.m.)

22

23

24

25

30

**I N D E X**

**R U L I N G S**

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Motion of Cutisha Cauthorne for an order for relief from automatic stay continued to future evidentiary hearing | 19 | 12 |
| Debtors' motion for approval of global settlement between debtors and Credit Suisse granted | 29 | 11 |

31

# C E R T I F I C A T I O N

I, Lisa Bar-Leib, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          January 10, 2008

Signature of Transcriber                   Date


Lisa Bar-Leib

typed or printed name

**A**

**able** 9:17 17:11 18:23
**above-entitled** 31:6
**absence** 7:22
**acceptable** 21:9
**accrues** 7:1
**Acquisition** 4:11 28:2
**action** 5:24 7:1,4 7:11,12,21 8:8,9 8:14
**actions** 7:10,17,20 11:20 13:2
**acts** 25:24
**actual** 14:8 23:15
**add** 9:8 19:21
**additional** 16:17
**address** 16:8
**Addressing** 8:20
**adequately** 7:22
**adjourned** 29:19
**adjustable** 6:18
**adjustment** 6:14
**administration** 13:17
**admission** 12:4
**ADR** 13:11
**advance** 23:19,21
**advances** 24:24
**adversary** 22:25 23:6,12 26:13 27:18 29:10
**advised** 10:25 12:16
**affiliate** 9:24
**affixed** 6:10
**agency** 11:14
**agenda** 22:19
**agent** 10:12,12,14 10:16 11:2,7,7,15 11:20 12:21,24 14:20,23,25 15:2 15:8
**Aggressive** 9:23 10:1

**ago** 15:19
**agreed** 24:18 25:8 25:10 26:11
**agreement** 2:5 23:5 23:11,11,14,16,20 24:2,6,25 25:2,3,5 25:6,8,9,12,13,15 26:24 27:11,20 28:7,10,13
**agreements** 23:8 26:4,4
**ahead** 22:5
**AHM** 9:12 10:19 11:1,4,18 13:20
**AIG** 4:11 28:1
**allegation** 6:8
**allegations** 16:25 17:23 18:10 19:6 19:7
**alleged** 7:17,23 11:19
**allegedly** 7:6
**allowed** 24:9
**allowing** 5:18
**allows** 25:4
**alternative** 17:17
**amended** 19:21
**America** 25:17
**American** 1:8 5:5 5:25 7:4,14,20 9:8 10:13,24 11:23,24 12:5,6,9,19 14:6,9 14:10,15 15:4,7 15:23
**amount** 19:19 22:12 23:19,19,21
**APA** 28:21 29:6
**apparently** 6:13,23 7:6 17:6
**appears** 13:1
**applicable** 8:7 18:5
**applies** 17:25
**appraisals** 10:11
**appreciate** 5:19 17:9,11
**approach** 29:14
**appropriate** 9:9

16:23 19:1,19 26:22,23
**appropriately** 19:6
**approval** 30:10
**approve** 27:11 29:8 29:9,11
**approving** 2:4 28:4
**approximately** 25:1,3,7
**April** 24:15,16,16
**argue** 9:5
**argument** 11:9,16
**arguments** 7:9 8:1
**arm** 17:4,10,10 19:8
**arranged** 11:6
**arrest** 18:7
**arrived** 21:22
**articulated** 14:18
**articulates** 14:22
**aside** 7:25
**aspects** 26:9 29:3
**asserting** 18:6
**asserts** 25:1,6,9
**asset** 28:7,9,13
**assumed** 17:9 28:24
**attached** 24:20
**attempted** 6:4,6
**attorney** 14:3
**attorneys** 3:4,13,21 4:3,11 24:5,7,9
**augment** 23:18
**authority** 14:24
**Authorizing** 2:4
**automatic** 2:10 5:23 30:7
**availability** 21:11
**available** 9:18 10:2 10:2,3,7
**Avenue** 3:14,22 4:4
**aware** 5:21 11:11 25:12 26:5,16
**a.m** 29:21

**B**

**B** 1:22 25:19

**back** 6:5 9:7 13:21 18:13,17 22:8 24:23
**Bank** 25:17
**banked** 17:7
**bankruptcy** 1:2,14 1:24 2:3,3,11 8:3 9:12
**bar** 13:5,9 20:5,23
**barely** 11:17
**Bar-Leib** 2:25 31:4 31:12
**based** 7:18 8:11 9:17 26:16
**basically** 10:6 23:2
**basis** 5:19 8:21,23 18:2 24:20
**began** 22:24
**behalf** 5:5 8:17 16:5 27:4 28:1
**believe** 5:8 16:9,13 16:14 17:4,15 22:18,19 26:3,17 27:7,8
**bench** 22:7
**benefit** 15:3
**best** 14:7 18:17 27:9
**beyond** 22:17
**big** 21:1
**blocks** 21:1
**borrower** 10:7 16:14 17:7
**borrowers** 10:8 16:11
**Boston** 2:5
**bound** 26:11
**Brady** 3:10 5:4,4 5:11,13 8:15,16 8:16 12:3,15 16:14 18:11 19:25 20:4,24 21:17,20 22:11,14,18,22 27:4,15 29:13,16
**Brady's** 16:19
**Brandywine** 3:5
**brief** 16:24 21:21

**bring** 8:4 11:2 26:10
**broker** 9:24,24 10:3,4,6,7,9,10,11 10:14,15 11:1,21 12:5,20,23
**brokers** 7:5
**brought** 7:3,11 15:15
**Building** 3:5 4:12
**burden** 8:18 17:16
**business** 26:7
**buyer** 28:21

**C**

**C** 3:2,15 5:1 31:2,2
**calculation** 23:24 23:24
**Capital** 2:5,6
**carve-out** 25:24
**carve-outs** 25:16
**case** 1:4 10:12 11:23 12:3,23 14:21 15:3 16:17 21:2 22:24 24:10
**cases** 12:22
**cash** 25:3
**catch** 21:23
**cause** 7:1
**Cauthorne** 2:9 3:13 6:3 8:1 15:8 30:6
**certain** 10:9 25:24
**certainly** 19:19 29:7
**certify** 31:4
**challenge** 24:3 25:20
**chambers** 21:10
**changed** 6:13,13,16 6:24,25
**Choice** 10:13
**chooses** 13:11
**chose** 10:15
**Christopher** 1:23 3:25 27:13
**cite** 9:11

**claim** 9:12 11:10,13
11:13 18:5 23:22
23:23,25 24:5,9,9
25:5,6,10
**claims** 5:25 7:15
8:2 11:19 13:10
13:14,17 14:12
18:6,7 20:7,7 23:7
25:13,18
**clear** 8:25 15:11
28:5,16
**CLERK** 5:2
**client** 5:20 8:12
12:16 21:17 28:12
29:5
**closed** 14:5
**closing** 10:18,23
11:4,5,25 14:18
14:19,21 18:15
**closings** 18:15
**Code** 2:3,11 19:12
**collateral** 25:3
**collect** 11:2
**collected** 10:20
**collects** 10:9,10
**come** 9:7 13:21
14:10 21:18
**coming** 16:11 21:1
**commencement**
22:24
**comment** 16:21
29:2
**comments** 16:19
19:5
**commercial** 24:4
25:20
**commercially** 24:1
**committee** 4:3 16:6
24:7,22 26:1,8
27:4
**company** 11:6
14:23
**complaint** 11:17
12:22 19:21
**complete** 7:13
26:24
**complicated** 28:3

**comply** 10:16
**components** 23:13
**CONAWAY** 3:3
**concern** 18:2
**concluded** 29:20
**conducted** 11:11
14:1 24:1
**confirm** 10:20
**connection** 8:20
11:4 24:6,24
25:24,25 26:6,21
27:2 29:3
**consenting** 28:6
29:4
**conspiracy** 7:19
15:20
**construction** 25:22
25:25
**contend** 23:25
**contest** 23:23 24:8
**continuances** 22:15
**continue** 17:8,11
27:19 28:14
**continued** 30:7
**contract** 28:23
**contracts** 26:1
**contractual** 10:1
**control** 28:13,14
**controversy** 15:18
**cooperate** 24:18
**correct** 6:20 16:15
31:5
**cost** 26:20
**Counihan** 4:17
27:24,25 28:1,12
**Counihan's** 29:2
**counsel** 16:9,20
18:13,17
**Countrywide** 10:5
12:7,9,17
**couple** 13:25 21:14
21:23
**course** 7:19 14:2
17:24 20:25 21:7
**court** 1:2,14 5:3,10
5:12,15,25 6:16
6:24 7:3,4 8:5,14

8:15 9:15 12:2,11
13:21 14:14,18
16:3,7,12,22
17:19,21 18:12
19:14 20:2,8,12
20:15,18,21,23,25
21:8,17 22:1,6,13
22:16,21 26:13
27:1,11,12,16,22
27:23 28:11,15,20
29:1,10,15,18
**courtroom** 22:8
**Court's** 21:7,20
27:16 29:18
**court-approved**
31:4
**cover** 8:8 11:10,12
11:14 26:1
**covered** 9:12 25:14
**credit** 2:5,6 22:15
27:14 28:17 30:11
**Creditors** 4:3
**criteria** 29:8
**critical** 18:20
**cross-claim** 15:16
**cross-claims** 12:20
**CS** 23:16,21 24:5
24:14,16,25 25:2
25:6,8,9,16,17
26:3,10,14
**CSFB** 5:13 21:22
22:25
**Cutisha** 2:9 3:13
30:6

————————

**D**
**D** 5:1 30:2
**DANIEL** 3:12,18
**data** 10:10,11,20
11:2
**date** 13:5,9 20:5,23
21:9 22:25 31:10
**day** 10:23 19:19
**days** 11:25
**DE** 3:8,16 4:15
**deal** 6:16 7:15
13:14 24:3

**dealer** 6:16
**debtor** 1:10 3:4
7:16 8:8,24 9:1,25
9:25 10:2 11:9,12
11:16 13:9,11
17:15,25 18:3
19:21 23:18 24:3
24:23 28:21
**debtors** 2:2 7:9
8:17 9:3 13:17
14:18 15:14 16:9
20:4 23:20,22,25
24:6,10,15,22
25:1,7,16,19,21
26:10,14 28:13
29:16 30:10,11
**debtor's** 14:5
**December** 21:3
**decide** 16:23
**decides** 10:8
**decision** 18:20
**deem** 19:11
**default** 25:9
**defendants** 6:1
7:17 9:2 13:20
15:16
**deficiency** 23:22,25
25:4
**deficit** 22:17
**Delaware** 1:3,17
14:3
**delay** 26:21
**delayed** 5:8
**denied** 13:16 17:16
**deny** 13:8 19:10,16
**described** 11:18
**DESCRIPTION**
30:5
**determine** 9:8
17:19
**difference** 19:7
**different** 15:24
23:9
**difficult** 22:23
**DIP** 27:8
**directed** 24:16
**direction** 24:14

**disclosure** 6:9,17
6:21 10:17
**disclosures** 11:3
**discovered** 12:6
**discretion** 21:7
**discussions** 23:2
**disgruntled** 16:11
16:14
**dismiss** 13:19
**disposal** 10:6
**dispute** 16:22
18:14
**disputes** 18:14 23:7
25:13
**distinction** 12:13
**DISTRICT** 1:3
**DLJ** 2:6 25:9
**docket** 20:12,13
**docketed** 29:19
**document** 6:17,18
**documents** 6:8,23
14:9,10,12,13,15
17:2
**doing** 18:17
**dollars** 25:7,10
**draft** 11:17
**due** 5:7 17:13,23
**duties** 10:16

————————

**E**
**E** 1:22,22 3:2,2 5:1
5:1 30:2 31:2
**early** 17:22 25:9
**easily** 29:8
**echo** 16:9,19 27:4
27:15
**economy** 8:11
15:25
**efficient** 13:14
**either** 9:17 29:5
**electronic** 31:5
**elements** 10:18
**emergency** 2:9
5:23,24 8:21,23
9:6 18:24
**emergent** 18:2
**ended** 10:25

engaged 23:1
enter 19:2
entered 6:4 26:12
  29:18
entire 27:18
error 23:24
ESQ 3:10,18,25 4:7
  4:17
estate 8:9,10 17:8
  27:10
evaluate 13:12
event 15:15 18:8
everyone's 29:2
evidence 8:19 9:21
  18:12,19 19:2
  20:1
evidentiary 9:7,19
  12:17 17:18 18:19
  19:13,15 30:8
exactly 15:17
excess 14:1 23:19
  23:21
exhaustive 26:2
expect 21:3
expedited 5:19
expiration 18:6
expire 18:3,25
expired 10:23
explain 9:15
extensive 12:12
extent 8:7 11:13
  13:22 26:4 28:8
extraordinary 19:3
e-mail 21:21

**F**

F 1:22 31:2
facility 25:18,19
fact 6:10 11:13,21
  12:6 14:19 15:2,5
  15:14 17:8
facts 6:3 17:6
factual 6:1 15:18
  16:21
factually 7:18
  13:25
faith 27:8

Fargo 10:5
favor 8:13 15:7,7,8
faxed 12:5
federal 5:25 6:9,21
  7:4,19 8:5,14
  10:17 15:20
fee 24:9
fees 24:6,7
Fifth 3:22
file 19:18 24:5
filed 5:22 7:12 13:6
  20:9 22:25
filing 18:5
final 15:13,24
finds 13:18
fine 5:10,12 22:1
first 2:5 5:11,18
  8:20 9:5 10:12
  11:9 17:21 23:10
five 17:13 23:7 26:3
five-year 17:4,10
  19:8
fixed 19:8,8
Floor 1:16 3:7
focus 12:23
fog 5:8
forced 7:15 15:22
foreclosure 12:10
foregoing 31:5
forged 6:10
forgery 7:7,19,23
  15:20
form 29:14
forth 18:13,17
forty-year 17:12
forum 16:23
frame 19:14
frankly 18:4 19:5
fraud 19:6
front 14:4 18:12
  20:1
full 7:13 26:2
fully 26:12 27:10
fund 11:25 14:7
fundamentally
  6:12
funder 11:22

funds 10:22,25
further 29:7,16
future 22:15 30:7

**G**

G 5:1 30:4
Gadson 21:19
given 8:21 13:13
  27:17 28:18
giving 8:13
global 2:4 25:11
  26:7,22 30:10
go 10:3 13:11 22:4
  22:7
goes 17:4 20:15
going 12:9 15:16,24
  15:25,25 19:10,11
  19:11 20:1,21
  21:2,3,3 22:16
  23:16 26:20 28:8
  28:13
good 5:4,15,17 8:16
  11:18 27:7,25
Gotshal 3:20 5:6
  27:14
grant 16:15 18:3,20
  18:24 19:11,15,20
granted 26:5 30:11
Greenberg 4:10
  28:1
grounds 23:23 24:8
guess 28:16
guidelines 24:19,20

**H**

Hahn 4:2 16:5
handle 13:17
handled 12:23
happen 12:19
happened 7:23
happens 12:3
happy 29:11
hear 16:22 19:24
heard 5:18 8:22
  13:24 16:10 18:10
  27:2
hearing 2:2,9 9:19

12:17 17:18,23
  18:13 19:12,13,18
  19:23,25 21:13
  22:1 28:18 29:19
  30:8
hearings 12:13
  21:11
heavily 14:11
help 9:15
helpful 26:9 27:20
Hessen 4:2 16:5
Hogan 3:12,18 5:14
  5:16,17,17 6:20
  6:25 13:24 17:22
  19:23,25 20:3,10
  20:14,17,19,22
  21:5,6,15 22:8,9
holding 25:2
Holdings 1:8 5:5
holidays 21:1
home 1:8 5:5,25
  7:4,14,20 9:9,23
  10:1,13,24 11:23
  11:24 12:5,7,9,19
  14:6,9,10,15 15:4
  15:7,23 17:5
HON 1:23
Honor 5:4,5,17,21
  6:13,20 7:24 8:11
  8:16,17,21 9:10
  9:18,20 12:6,15
  12:25 13:3,8,24
  14:3,17,21 15:13
  16:2,4,25 17:15
  20:3,4,11,19,22
  20:24 21:6,16,20
  22:3,9,11,19,22
  23:9 25:12 26:2,8
  26:12,16,19 27:3
  27:13,25 28:2,4
  29:13,17
hopefully 21:24
hours 21:14
house 8:3 17:2,10

**I**

Ideally 20:4

identified 26:1
identifies 25:16
important 6:12
  24:22
improve 27:19
inaccurate 14:8
  15:5
inappropriately
  6:11
include 7:4
including 18:7
inclusion 13:13
income 10:10
Indelicato 4:7 16:4
  16:5,8 18:11 19:5
  27:3,3,15
independent 9:24
indicate 8:12 16:21
indicated 7:16
indicates 23:16
indispensable 7:21
  9:13 11:17
individual 19:4
individuals 7:5
indulgence 21:21
  27:16
information 10:10
initiate 9:6
initiating 9:2
insofar 7:10 15:5
instance 9:5,23
  16:15
insurance 8:7,7,10
  9:12 11:10,12,13
  11:14 15:3,5,12
  18:16
insured 11:7,15
  14:18,19,20,21
  15:1
interest 27:9
intertwined 7:11
  7:18 15:19
inures 15:3
involved 10:24
  14:11 19:6 25:22
  26:8
involvement 10:19

14:6
**involves** 23:15
    24:11
**issue** 7:8,13,25
    14:13,14,24 15:2
    15:9,18 17:3,5,22
    19:9 28:23
**issued** 11:5,14 15:7
    15:11
**issues** 5:7 15:18
    16:24,24 18:16,18
    18:19 26:23 29:12
**it'll** 21:12 29:18

**J**

**J** 3:25
**January** 13:5,15
    20:5,23 21:5,10
    21:18 31:9
**JUDGE** 1:24
**judicial** 8:11 26:19
**justice** 7:13,22
    15:24

**K**

**K** 3:18
**keep** 22:16
**kicks** 19:8
**kinds** 16:18
**know** 12:8,11,13,14
    13:6,12,15,15
    19:23 20:20 21:2
    21:7,10,19 28:25
**knows** 12:12

**L**

**L** 30:4
**lack** 19:2
**late** 21:3 27:17
**law** 3:12 7:15
**laws** 10:17
**lawsuit** 19:18,22
**leave** 15:22 22:6,8
**lender's** 15:6,10
**Lending** 6:9,21
    7:20 15:21
**letter** 11:5,5,22,24

12:4 14:18,19,21
    14:22
**let's** 21:8 22:2
**lift** 13:3
**lifted** 9:8,11 17:20
**likelihood** 8:6
**limitation** 7:3
**limitations** 7:9 9:4
    17:22,23,24 18:6
    18:25
**LINE** 30:5
**Lisa** 2:25 31:4,12
**list** 23:17,18
**litigation** 13:1
    16:17 18:1 23:1
    26:20,22
**litigations** 16:18
**live** 21:4
**LLC** 2:5,6
**LLP** 3:3,20 4:2,10
**loan** 6:14 10:15,22
    11:1,2,23 12:1,3,7
    12:7,12,12,18
    14:5,7 17:12
**loans** 10:4 23:15,16
    23:18,19 24:13,14
    25:22,25
**long** 6:7 22:23
**longer** 12:18
**longstanding** 29:9
**look** 12:25 13:2
    16:24
**looks** 17:2
**lose** 8:3 17:1,5
**lot** 16:24 20:21
**lower** 17:12

**M**

**Madison** 4:4
**Manges** 3:20 27:14
**manner** 24:1
**Marcus** 3:25 5:6
    21:22 22:3 27:13
    27:14 28:16,22
**Mark** 4:7 16:5 27:3
**market** 1:15 17:8
    23:16

**match** 10:8
**matter** 1:6 5:9,18
    5:21 8:5,6,22
    15:17 22:19 27:2
    31:7
**matters** 13:25
**mean** 14:8,25 16:10
**meet** 8:18 13:22
**meets** 10:20 29:8,8
**mentioned** 7:20
**mentions** 11:17
**merits** 9:10,14
    19:16
**met** 13:22
**million** 25:1,3,10
**minimal** 16:16
**minimize** 16:12
    17:2
**minute** 22:14
**minutes** 21:23,25
    22:17
**month** 17:4 24:17
**months** 6:14,15
    20:16
**morning** 5:4,15,17
    8:16 27:25
**mortgage** 1:8 2:5,6
    4:11 5 5:6 6:1 7:5
    7:14,21 9:23 10:1
    10:2,7 11:23
    12:14 14:6,9,10
    14:16,23 15:4,7
    15:23 23:10,14,15
    28:1
**motion** 2:2,9 6:2
    8:20 9:10 13:19
    17:16 18:3 19:10
    19:11,15,16,20
    26:14 30:6,10
**motions** 29:10
**movant** 8:17,22
    11:19 12:8,11,12
**movant's** 11:9 12:4
    12:8
**move** 22:2 23:4
    26:25
**mutual** 25:14,15

**mutually** 21:9

**N**

**N** 3:2 5:1 30:2,4
    31:2
**name** 31:13
**named** 12:19,21,21
    13:20
**nature** 17:18 18:14
    18:15
**necessary** 7:21
    9:13 10:21 11:3
    11:16 19:22 22:12
**need** 9:21 12:16
    16:1 17:6 19:13
    21:23 22:4
**needs** 7:12 8:22
    10:8 14:14
**negotiated** 27:7,7
**negotiation** 22:23
    27:5
**negotiations** 23:5
    27:19
**Nemours** 4:12
**never** 12:3 15:24
    15:25,25
**new** 3:23 4:5 21:2
**nine** 22:14,17
**nondebtor** 17:25
**non-exclusive** 9:25
**North** 1:15 4:13
    20:18
**note** 6:22 8:19
**notice** 9:7 16:23
    19:13 26:19
**notified** 10:22
**notions** 7:18
**notwithstanding**
    19:2
**November** 1:19 6:3
    7:12 8:23
**number** 10:6 24:2
**NY** 3:23 4:5

**O**

**O** 1:22 5:1 31:2
**objections** 26:17

**obligation** 24:15
**obligations** 25:2
    26:6,24
**obviously** 8:24 19:9
    25:18,20 26:6
    27:20 28:2
**occur** 25:25 28:9
**occurred** 15:19
    26:21
**offer** 23:17
**offering** 23:17
**OFFICES** 3:12
**official** 4:3 31:5
**oh** 12:17 29:1
**Okay** 5:15 8:15
    22:1,21 27:12
**omnibus** 21:13
**once** 22:11
**one-year** 7:2
**oppose** 28:17
**opposing** 29:5
**Orange** 4:13
**order** 2:4,9 18:18
    19:3,14,19,21
    23:9 26:12 29:6
    29:14,18 30:6
**originate** 10:3
**origination** 9:16
    10:19 11:20
**originators** 10:4
**overestimated**
    22:11
**owe** 25:1
**owed** 25:7
**owned** 12:7
**owner's** 15:10
**owns** 12:11,13

**P**

**P** 3:2,2 5:1
**PAGE** 30:5
**paid** 24:23
**papers** 16:25
**paragraph** 27:6
**part** 20:12 25:11
**particular** 14:24
**parties** 7:3,10,11

13:13 15:22 17:25 22:24 23:1,3,8 24:18 25:12 26:5 26:20,23 27:6,12
**party** 9:13 11:17 12:22 25:17
**party-in-interest** 28:21
**passed** 20:6
**Pause** 22:10
**payment** 25:9
**payments** 12:8 17:13
**pejorative** 16:11
**pending** 17:21 18:25 26:13,15
**period** 6:14,19 8:25 10:23,25 11:2
**periods** 9:9
**perspective** 20:5,22
**petition** 22:25
**plaintiff** 9:1,13 13:18 16:13 17:1 19:17,17
**plaintiffs** 13:6
**plaintiff's** 16:20
**players** 7:5
**pleadings** 5:22
**please** 5:3 29:15
**pleased** 22:22 23:3
**podium** 5:14
**point** 7:24 9:21 13:21 14:17 15:13 15:17 24:22 29:4
**points** 16:8 18:12
**policy** 11:8 14:24 15:2,6,6,10,10
**position** 19:1 21:24 22:20 29:11
**possibility** 15:15 16:10
**possible** 19:24
**potential** 9:2 13:5 20:7
**potentially** 13:10 16:16 17:1
**practice** 14:2

**predicate** 6:1
**prefer** 21:6
**prejudice** 8:9,12 13:9,16 19:10
**preliminary** 11:11 19:12
**preparation** 14:8
**prepared** 14:15 29:7
**prepares** 14:9
**present** 21:25 22:20,22
**presented** 8:20 23:9
**preserve** 18:7
**prevent** 9:1 19:17
**pre-petition** 13:1
**primary** 6:2,8,22
**printed** 31:13
**prior** 18:5
**probably** 14:2 22:4
**problem** 20:8
**proceed** 13:4,4
**proceeding** 8:3 9:3 22:25 23:6,12 26:13 27:18
**proceedings** 29:10 29:20 31:6
**proceeds** 8:10
**process** 6:7 7:15 8:2,4 9:16,20 10:19,24 11:18,20 12:10 13:11,18 14:1,4,4,5,11 24:23 25:23 26:9 27:17
**product** 10:9
**products** 10:2,2,4,7 10:21
**promissory** 6:22
**proof** 18:5
**proper** 9:7 19:13
**prosecute** 5:24
**protect** 19:3
**protection** 11:5 14:22
**provide** 10:8 14:13

25:15
**provisions** 24:2
**purchase** 15:9 25:9 28:7,10,13
**purchaser** 26:17 28:2,5
**purported** 19:17
**purpose** 5:23
**Pursuant** 2:2
**pursue** 8:10,13
**put** 9:21 19:1 26:18 27:21
**puts** 21:1

**Q**

**question** 14:23
**quick** 12:25
**quickly** 17:1

**R**

**R** 1:22 3:2 5:1 30:4 31:2
**raise** 28:18
**raised** 18:17
**rate** 6:18
**rates** 17:12
**reach** 21:9
**reached** 23:3
**real** 7:25 8:6 15:14 16:10 17:8
**really** 8:10 16:20 17:4 22:24 23:13
**reason** 6:12 11:18 11:24
**reasonable** 24:1
**reasonableness** 24:4,8 25:20
**reasons** 9:11
**receive** 23:20,22
**receives** 11:4,24
**recess** 21:21 22:7
**record** 8:19 9:7 18:22,23 19:15 26:18 27:13,21 28:16
**recording** 31:6
**referenced** 25:12

**referred** 14:22
**refinance** 6:4,9 17:11
**refinancing** 6:2
**regard** 7:9,23 14:4 14:13 15:12
**regarding** 16:17
**Regulation** 7:2
**relate** 11:19 14:12 15:20
**relates** 5:22 6:2 8:1 14:17 15:13,18
**relation** 25:19
**relationship** 9:16 10:1,14 26:3 28:14
**relative** 7:1 8:9
**release** 25:14,24 26:5
**released** 25:21 26:7
**releases** 25:15,17
**relief** 2:10 5:9,23 5:24 8:13,18,21 13:21 16:15 18:21 18:24 19:3 30:7
**relies** 11:1
**rendered** 7:14,22
**represent** 12:16
**representation** 14:6 15:1,4,14
**representations** 9:19
**represents** 14:19
**repurchase** 23:10 23:14,20 24:25 25:2
**request** 5:22,24 8:21 22:15
**requests** 13:5
**required** 11:22
**requirements** 10:17 15:21
**rescission** 6:6 10:23,25 11:22,24 12:4
**reservation** 24:3 25:23 26:18 28:19

**reserve** 28:17
**reserved** 23:23 25:21 29:3
**residence** 6:2
**resolution** 23:3 26:10 29:11
**resolve** 26:12
**resolved** 8:6 15:23 16:1,1 17:1
**resolves** 23:7 26:14 29:9
**RESPA** 7:2
**respect** 8:24,25 23:14 28:23
**respond** 18:18
**responsible** 7:6,6
**rest** 29:6
**result** 6:25
**review** 10:20 11:11 24:7 26:2
**Richmond** 20:9,13
**rider** 6:17,18,22
**right** 6:5 12:2,15 17:21 22:6,13 23:18,23 24:5,7 27:1,23 28:11 29:1
**rights** 18:2 19:3 24:3 25:23 26:18 28:7,17,19,23 29:2,6
**rise** 5:2
**risk** 13:3
**Robert** 3:10 5:4 8:16
**rocket** 20:12,13
**Rule** 26:14
**Rules** 2:3
**run** 18:9
**running** 8:23,24
**runs** 9:4

**S**

**S** 1:23 3:2,10 4:7 5:1 30:4
**sale** 23:15,18,25 24:4,12,14 29:6

**sales** 21:2
**satisfied** 17:16
**schedule** 13:1
    19:13 21:10,12
**schedules** 12:25
**score** 22:16
**seated** 5:3
**Second** 11:16
**seconds** 22:4
**Section** 2:10 25:16
**Sections** 2:2
**securities** 2:6 24:25
**seek** 13:21
**selects** 10:11
**sell** 23:19
**sells** 10:4 23:21
**sense** 16:11
**sent** 11:22
**separate** 23:8
    24:13
**series** 29:10
**seriously** 19:4,6
**serve** 24:20
**service** 24:15
**servicer** 12:14
**services** 12:12
**servicing** 24:11,12
    24:13,19,24 25:11
    26:17
**set** 17:17
**setoff** 25:4
**sets** 9:18
**settle** 10:15
**settlement** 2:4 5:13
    10:12,12,13,16
    11:1,6,7,15,20
    12:21,24 14:1,20
    14:25 15:2,8
    21:22 23:7,13
    24:2,11 25:11
    26:7,11,22,23,24
    27:6,9,10,11,20
    28:3,4,6,8,9 29:5
    29:8 30:10
**settlements** 14:2
    29:9
**severed** 7:14

**Shallcross** 3:14
**she'll** 8:3
**short** 6:7 9:17
    11:11 16:1,23
    18:18 19:18
**show** 23:17
**showing** 16:16
**sidelines** 15:23
**sides** 23:2
**signature** 6:10
    31:10
**significant** 8:12
    16:17,21 17:12
    19:9
**similar** 13:5
**simplistic** 14:7
**simply** 18:17 29:4
**simultaneous** 15:9
**situation** 12:19
    13:18 16:13 17:7
**sixty** 6:14
**slightly** 23:9
**sold** 10:21 12:7
**SONTCHI** 1:23
**soon** 19:24
**sooner** 21:6
**sort** 20:1
**sound** 31:6
**speak** 20:17,19
**speaks** 15:17
**specifically** 28:5
**spoliation** 14:13
**standard** 11:21
**standards** 8:18
    10:21 13:22
**standing** 28:3,24
**STARGATT** 3:3
**started** 23:5
**Statement** 6:10,21
**States** 1:2,14
**statue** 17:23
**statute** 7:2,8 9:3
    17:22,24 18:6,8
    18:25
**statute's** 8:23
**statutory** 7:25
**stay** 2:10 5:8,23

8:13,18 9:8,11
    13:3 16:15 17:19
    18:21,24 30:7
**stays** 17:24 22:18
    22:18
**stipulation** 23:10
    24:21
**Street** 1:15 3:6 4:13
**subject** 18:1 23:6
    23:11
**submit** 13:8
**subsidiary** 9:25
**succeed** 9:14
**sue** 15:22
**Suisse** 2:5,6 27:14
    28:17 30:11
**suit** 7:15 9:2,6
    12:20 13:4,6,20
    15:16
**Suite** 3:15 4:14
**support** 26:11
    27:10
**sure** 18:4 21:23
    28:22

**T**

**T** 31:2,2
**take** 5:8 8:9 17:21
    19:4,6 21:14 22:7
    26:19
**talked** 6:6
**TAYLOR** 3:3
**TBA** 25:6
**TELEPHONIC...**
    4:8 16:4
**tell** 14:3 17:6
**ten** 21:25 22:4
**term** 6:13 16:1
**terms** 14:8
**thank** 5:15,18
    13:25 16:2 17:20
    20:3 21:15 22:9
    27:12,16 29:13,15
    29:19
**thanks** 27:21
**they'd** 26:18
**things** 28:9

**think** 12:4 15:17
    16:16,20,22 17:17
    18:10,11,19,22
    19:5,5,12 21:15
    21:23 22:3,4,14
    23:2 26:19 28:19
    28:23 29:2,4
**third** 12:22 13:13
**three** 9:11,13 10:22
    11:25 20:15 25:22
**three-day** 6:5
**TILA** 6:21
**time** 9:9,17 11:10
    15:24 19:14,20,20
    21:1,4 22:12
    26:15,21 27:18
**title** 10:13 11:6,8
    11:14 14:24 15:2
    15:6,6
**today** 9:18 13:23
    18:13,23 27:17
    28:3,18,25
**told** 8:25
**tough** 27:5
**traffic** 21:22
**train** 5:6,7 27:17
**transaction** 6:4,5
    14:25 15:1,9
**transactions** 28:8
**Transcribed** 2:25
**transcriber** 31:4,10
**transcript** 31:5
**transfer** 24:11,19
    24:21
**transfers** 24:12,13
**transition** 24:17
**Traurig** 4:10 28:1
**trial** 20:15
**trigger** 28:9
**truly** 17:18
**Truth** 6:9,21 7:19
    15:21
**try** 22:2
**turn** 5:13
**turning** 9:10 11:9
    22:19 23:10 24:25
**twenty** 6:14 17:3

**twenty-month** 17:9
**twenty-two** 13:2,4
**two** 6:23 9:12 17:13
    23:13,23,25
**typed** 31:13
**types** 13:14
**typical** 11:21
**typically** 12:18,22

**U**

**U** 30:4
**ultimate** 18:20 24:8
**ultimately** 14:11
    23:6
**understand** 5:7 7:9
    13:9,25 14:14
    15:6,11 17:18
    20:6 21:24 29:1,2
**understanding**
    9:20 20:10
**Understood** 12:15
    28:15
**underwriting**
    10:21 14:4,11
**unfold** 8:4
**Unfortunately**
    20:25
**United** 1:2,14
**universe** 13:10,15
    20:6
**unnecessary** 18:8
**unsecured** 4:3
    23:22 24:9
**urge** 27:10
**USA** 2:6
**usually** 11:6
**utilize** 8:2
**utilizing** 6:5
**U.S** 1:24

**V**

**valid** 18:12
**value** 17:10
**various** 7:10
**vastly** 15:19
**Victoria** 4:17 27:25
**Virginia** 5:25 8:5

18:15 19:18

**W**

**W** 4:17
**wait** 8:2
**waits** 8:4
**waive** 25:8,10
**waiver** 25:4
**waiving** 25:18 28:6
**want** 9:6 16:12
  19:23 21:3 28:5
**wanted** 27:15,16,21
**wasn't** 18:4
**way** 5:7 8:9 13:14
  28:4
**ways** 11:1
**weather** 5:7
**week** 21:4,9,11,18
**weigh** 8:12
**Weil** 3:20 5:6 27:14
**welcome** 16:3
  27:23
**Wells** 10:5
**well-thought** 29:9
**West** 3:6
**we'll** 13:4 19:18
  21:24 22:7
**we're** 7:15 11:11
  15:22,24 21:7
  22:16 26:16 28:6
**we've** 7:8 11:11
  12:12 16:10 23:3
  24:18
**whatsoever** 18:13
**When's** 20:23
**Wilmington** 1:17
  3:8,16 4:15
**winter** 20:25
**wish** 27:1
**witness** 9:17,18
**word** 27:6
**work** 13:12 18:15
  21:8,17
**working** 24:19
  26:10
**works** 9:20
**world** 7:25

**wouldn't** 21:15

**X**

**x** 1:5,12 30:2

**Y**

**year** 15:19 19:8
**years** 17:13,14
**yield** 5:14
**York** 3:23 4:5
**YOUNG** 3:3

**Z**

**Z** 7:2

**0**

**07-11047-css** 1:4

**1**

**1** 22:19
**1.4** 25:3
**1.6** 25:1
**10** 31:9
**10:11** 1:20
**10:47** 29:20
**1000** 3:6
**10022** 4:5
**1007** 4:13
**10153** 3:23
**105** 2:2
**108(c)** 7:10 8:24
  17:24 18:4
**11** 22:2 30:10
**11th** 13:5,15 20:23
**11/27** 9:4
**12** 30:6
**1200** 4:14
**14th** 21:4,10,18
**15,000** 14:2
**17th** 3:7
**1701** 3:14
**19** 30:6
**19801** 3:8 4:15
**19806** 3:16

**2**

**2.8** 25:10
**2004** 26:14

**2006** 6:4
**2007** 1:19 7:12
**2008** 24:15 31:9
**21** 1:19
**27** 7:12
**27th** 8:23
**29** 30:10

**3**

**362** 2:2,10

**4**

**4001(d)** 2:3
**488** 4:4

**5**

**5th** 1:16
**5.3** 25:16

**7**

**767** 3:22

**8**

**824** 1:15
**836,000** 25:7

**9**

**9019(a)** 2:3