IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                           :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                  :
                                                                 :   Jointly Administered
    Debtors.                                                     :
                                                                 :   Hearing Date: February 1, 2008 at 11:00 a.m. (ET)
                                                                 :   Objection Deadline: January 25, 2008 at 4:00 p.m. (ET)
---------------------------------------------------------------- x

**MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO SECTIONS
105 AND 363 OF THE BANKRUPTCY CODE, *NUNC PRO TUNC*, APPROVING
PAYMENT OF TRAVEL AND ENTERTAINMENT EXPENSES INCURRED BY
CERTAIN OF THE DEBTORS' TERMINATED EMPLOYEES**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] by this motion (the "Motion"), seek entry of an order, *nunc pro tunc*, pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving the payment of travel and entertainment expenses (the "T&E Expenses") incurred by certain of the Debtors' terminated employees. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION AND STATUTORY PREDICATE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

5. Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and

---

[2] The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief (the "First Day Declaration") [Docket No. 2], which is incorporated by reference as if fully set forth herein at length.

primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6. As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7. A large component of AHM's business is the servicing of loans, which is conducted through AHM Servicing. The servicing business collects mortgage payments, administers tax and insurance escrows, responds to borrower inquiries, and maintains control over collection and default mitigation processes. As of December 31, 2006, AHM Servicing serviced approximately 197,000 loans with an aggregate principal amount of approximately $46.3 billion.

8. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

9. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees (the "Terminated Employees").

10. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## THE TRAVEL AND ENTERTAINMENT EXPENSES

11. As is customary with most large businesses, prior to the Petition Date, the Debtors reimbursed their employees who incurred and paid a variety of approved business-related expenses, including the T&E Expenses, in the ordinary course of performing their duties for the Debtors. Most employees incurred and paid such expenses by using corporate or personal credit cards, and were subsequently reimbursed by the Debtors after submission and approval of expense reimbursement requests.

12. On the Petition Date, the Debtors filed a motion [Docket No. 9] (the "Employee Motion") requesting the authority to pay certain pre-petition wages, compensation and employee benefits, including unpaid compensation to Terminated Employees, and continue payment of wages, compensation and employee benefit programs in the ordinary course of business and to pay other costs and expenses relating to the same. Included among the relief requested in the Employee Motion was authorization to reimburse the T&E Expenses to current employees, but not to Terminated Employees because the definition "Employee" in the

Employee Motion did not include Terminated Employees. On August 7, 2007, the Court entered an Order [Docket No. 69] (the "Employee Wage Order") authorizing the relief sought in the Employee Motion.

13. Subsequent to the entry of the Employee Wage Order, the Debtors reimbursed T&E Expenses to current employees. Recently, however, the Debtors discovered that they also inadvertently reimbursed T&E Expenses to 236 Terminated Employees. The aggregate amount of T&E Expenses reimbursed to the Terminated Employees was approximately $190,249.

## RELIEF REQUESTED

14. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, approving the payment of T&E Expenses to the Terminated Employees, *nunc pro tunc*.

## BASIS FOR THE RELIEF REQUESTED

15. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) (2004). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition claims where the debtors articulate "some business justification, other than the mere appeasement of major creditors"); *see also In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing, pursuant to section 363, a contractor to pay prepetition claims of some suppliers who were potential lien claimants, because the payments were necessary for the general contractors to release funds owed to the debtors).

16. In addition, the Debtors respectfully submit that the Court is able to authorize the Debtors' payment of the T&E Expenses to the Terminated Employees pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity of payment. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

17. "The ability of the Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). This equitable common law principle "was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C & S.W.R. Co.*, 106 U.S. 286, 1 S. Ct. 140, 27 L.Ed 117 (1882) and it is commonly referred to as either the 'doctrine of necessity' or the 'necessity of payment' rule." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176. "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 – a successful reorganization." *Id.* at 825-26.

18. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay certain critical prepetition claims, even though such

payment is not explicitly authorized under the Bankruptcy Code. *See In re Columbia Gas System*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) *citing In re Lehigh & New England Rwy Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'").

19. The Debtors submit that there is a sound business justification and compelling reason for the approval of the payment of T&E Expenses to the Terminated Employees. The cost and effort the Debtors would have to expend in seeking repayment of the T&E Expenses largely outweighs any value the Debtors would receive from such efforts. All but one of the 236 T&E Expenses paid were less than $5,000, and in fact, the overwhelming majority of T&E Expenses paid were less than $1,000.00. The filing costs for initiating 236 adversary actions alone would significantly reduce the recovery the Debtors might obtain. Moreover, when coupled with the time the Debtors and their professionals would expend initiating and litigating each action, recoupment of the T&E Expenses is cost-prohibitive.

20. Put differently, the Debtors submit that litigating the repayment of the T&E Expenses would likely not assist the Debtors in reaching their goal of maximizing the value of these estates. In fact, in certain instances it may actually cost more to recoup the payment than the actual payment itself.

21. Accordingly, for the foregoing reasons, the Debtors respectfully submit that the relief requested herein is appropriate and should be approved by this Court.

## RESERVATION OF RIGHTS

22.     The Debtors reserve any and all rights to object to or otherwise contest claims submitted by Terminated Employees, or commence proceedings to recover amounts paid to Terminated Employees on account of T&E Expenses on any and all bases.

## NOTICE

23.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America; (iv) Counsel to the Agent for the Debtors' Postpetition Lender; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

24.     No prior request for the relief sought in this Motion has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully seek entry of an order, *nunc pro tunc*, in substantially the form attached hereto as Exhibit A, (i) approving the payment of the T&E Expenses to the Terminated Employees; and (ii) granting related relief.

Dated:   Wilmington, Delaware      YOUNG CONAWAY STARGATT & TAYLOR, LLP
         January 11, 2008

*/s/ [signature]*
_____
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession