# EXHIBIT A

**Engagement Agreement**

**CB Richard Ellis** EXCLUSIVE SALES LISTING AND COMMISSION AGREEMENT

CB RICHARD ELLIS, INC.
BROKERAGE AND MANAGEMENT
LICENSED REAL ESTATE BROKER

1. In consideration of the listing for sale of the real property hereinafter described ("the Property") by CB RICHARD ELLIS, INC. ("Broker"), and Broker's agreement to use commercially reasonable efforts to effect a sale of same in accordance with the terms hereof, the undersigned ("Owner") hereby grants to Broker the exclusive right to sell the Property for a period commencing January 11, 2008 and ending midnight July 31, 2008 (the "Term"), which Term may be terminated by either party with or without cause upon thirty (30) days written notice, at a price to be determined for the Property listed below upon the following terms: Cash or terms acceptable to Owner. References herein to the Property shall be understood to include all portions of the office building located at 538 Broadhollow Road, Melville, NY 11747. The Property will be marketed without a formal asking price.

2. Owner acknowledges that it is currently operating under Chapter 11 Bankruptcy Protection and that this Agreement and the provisions herein are subject to the US Bankruptcy Code, the powers of the Bankruptcy Court (herein after defined) and the approval of Owner's appointed Trustee.

    Owner agrees to pay Broker, together with any co-broker, cooperating builder or outside broker, an aggregate sales commission equal to 1.5% of the gross sales price for the Property up to $35 million and 5.0% of the gross sales price for the Property that exceeds $35 million (which shall include any existing mortgage that is assumed) (the "Commission"). This Commission shall be earned and payable at the time of the "Closing" (as defined below) for services rendered if, during the Term: (a) the Property is sold to a purchaser procured by Broker, Owner or anyone else; and (b) Owner contributes or conveys the Property to a partnership, joint venture or other business entity or other transfer or disposition of the Property. Outside brokers or co-brokers will be paid by their principals; provided, however, notwithstanding anything contained in this Agreement to the contrary, under no circumstances shall the Owner its Trustee or the Bankruptcy Court have any liability to Broker or any third party claiming through Broker for any commission, finder's or referral fee or other compensation in excess of the Commission and Broker covenants and agrees to indemnify and hold harmless Owner from and against any and all such claims, suits, judgments, obligations, costs, losses, expenses and liabilities (including reasonable attorney's fees) arising therefrom to the extent commissions paid hereunder. Any and all fees and commissions due hereunder are subject to the approval of the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and shall be paid in accordance with sections 328, 330 and 331 of the Bankruptcy Code, such Federal Rules of Bankruptcy Procedure as may be applicable from time to time, and rules or procedures fixed by the Bankruptcy Court. Notwithstanding anything contained herein, or any law, custom or practice to the contrary, Owner's obligation to pay Broker or any cooperating broker, co-broker or outside broker or third party, the Commission as provided in this Agreement is subject to and contingent upon the consummation of a settlement (as evidenced by the execution and delivery of a deed to the Property by Owner or a transfer or other instrument divesting Owner of its ownership interests and rights in and to the Property) on the Property in accordance with the terms as evidenced by a fully executed Agreement of Sale by all necessary parties and the remittance of the closing proceeds from such sale in accordance with a closing statement approved and signed by the Owner and the Bankruptcy Court (the "Closing").

3. Owner further agrees that Owner shall pay Broker a commission in accordance with paragraph 2 above, if, within ninety (90) calendar days after the expiration or termination of the Term the Property is sold to, or Owner enters into a contract of sale of the Property with, or negotiations continue, resume or commence and thereafter continue leading to a sale of the Property to any person or entity (including his/her/its successors, assigns or affiliates) with whom Broker has negotiated (either directly or through another broker or agent) or to whom the Property has been submitted prior to the expiration or termination of the Term (the "Prospects"). Broker agrees to submit a written list of such Prospects to Owner not later than ten (10) calendar days following the expiration or termination of the Term, together with written records of Broker that documents that such Prospect: (a) had been contacted by Broker in regard to the Property either (i) in person, or (ii) by telephone, and had received written information from Broker about the Property; or (b) had initiated contact with Broker in regard to the Property either (i) in person, or (ii) by telephone, and had received written information from Broker about the Property; provided, however, that if a written offer has been submitted it shall not be necessary to include the offeror's name on the list.

4. Commissions shall be payable hereunder at the time of Closing.

5. Unless otherwise provided herein, the terms of sale shall be cash. Any offer may contain normal and customary contingencies such as those relating to the condition of the Property, title report, and timing of Closing, upon such terms and conditions which are satisfactory and acceptable to Owner in its sole and absolute discretion and as approved by the Bankruptcy Court.

6. Owner and Broker agree that the Property will be offered in compliance with all applicable anti-discrimination laws.

7. Owner agrees to cooperate with Broker by referring to Broker all inquiries of anyone interested in the Property. Owner and its counsel will be responsible for determining the legal sufficiency of a purchase and sale agreement and other documents relating to any transaction contemplated by this Agreement.

8. Owner agrees to disclose to Broker and to prospective purchasers any and all information which Owner has regarding present and future zoning and environmental matters affecting the Property and regarding the condition of the Property, including, but not limited to structural, mechanical and soils conditions, the presence and location of asbestos, PCB transformers, other toxic, hazardous or contaminated substances, and underground storage tanks in, on or about the Property. Broker is authorized to disclose any such information to prospective purchasers.

9. Owner represents that it has an interest in the Property and has the authority to execute this Agreement that, except as may be set forth in an addendum attached hereto, no person or entity who has an ownership interest in the Property is a foreign person as defined in the Foreign Investment in Real Property Tax Act (commonly known as "FIRPTA").

10. The parties hereto agree to comply with all applicable federal, state and local laws, regulations, codes, ordinances and administrative orders having jurisdiction over the parties, property or the subject matter of this Agreement, including, but not limited to, the 1964 Civil Rights Act and all amendments thereto, the Foreign Investment In Real Property Tax Act, the Comprehensive Environmental Response Compensation and Liability Act, and The Americans With Disabilities Act.

11. If either party is required to institute legal action against the other party relating to this Agreement or any agreement of which it is a part, the prevailing party in such litigation shall be entitled to reasonable attorneys' fees and costs.

12. In the event of any dispute between Owner and Broker relating to this Agreement, the Property or Owner or Broker's performance hereunder, Owner and Broker agree that (to the extent possible) the Bankruptcy Court, shall have exclusive jurisdiction to hear and resolve any such dispute.

13. Owner agrees to provide reimbursement to Broker for all reasonable out-of-pocket expenses incurred during the preparation of the offering packages and the actual marketing of the Property up to a maximum of $7,500. These expenses may include, but are not limited to, cost of graphics, photographs, printing, lease summaries, financial analysis and advertising costs directly relating to the marketing of the Property. When requesting reimbursement, Broker will provide Owner with copies of actual receipts as verification of all individual expenses. Payment shall be made upon approval of the Bankruptcy Court.

14. This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, negotiations and agreements, whether oral or written. No amendment, alteration, cancellation or withdrawal of this Agreement shall be valid or binding unless made in writing and signed by both Owner and Broker. This Agreement shall be binding upon, and shall benefit, the heirs, successors and assignees of the parties. Each signatory to this Agreement represents and warrants that he or she has full authority to sign this Agreement of behalf of the party for whom he or she signs and that this Agreement binds such party.

15. Owner acknowledges that Broker is not obligated to and has made no independent investigation of the physical conditions of the Property including, but not limited to, the condition of all structures (exterior and interior) on the Property, the electrical and mechanical systems thereof, the fixtures, personal property and equipment therein, or of any environmental matters with respect thereto, or of hazardous substances thereon, if any (collectively, the "Physical Conditions"). All documents and materials, investigations, reports and information with respect to the Physical Conditions shall be prepared by or for the Owner and shall be furnished to prospective purchasers on behalf of Owner who (as between Owner and Broker) shall be solely responsible for same. Owner agrees to indemnify and hold Broker harmless, solely based on the willful misconduct or gross negligence of Owner, from and against all claims, costs, liabilities, settlements and judgments (collectively "claims") and all costs of defense against such claims (including attorney's fees and disbursements), suffered or incurred by Broker which arise out of or relate to the Physical Conditions, Owner's title and/or the marketability thereof.

16. Because of the substantial number of brokers and salespersons employed by Broker, one of our brokers or brokerage teams may, on occasion, represent a prospective purchaser seeking to acquire either the Property or, as the case may be, Owner's interest in the Property, which representation is independent of the Broker's selling agency team's representation of the Owner. In such cases, Broker will disclose its dual role in the potential transaction to both Owner, Prospective Purchaser and the Bankruptcy Court and will implement its usual internal safeguards to assure complete confidentiality to both Owner and Prospective Purchaser in their respective dealings with and through Broker. Owner agrees that such occasional dual representation may occur, subject to appropriate disclosure and consents to payment of Broker's commissions as provided for hereinabove or where a Prospective Purchaser has agreed to pay its own broker, as may be called for not only by this agreement but also by Broker's separate commission agreement with that Prospective Purchaser.

17. Assignability. The obligations of Broker may not be delegated and, Broker may not assign, transfer, pledge, encumber, hypothecate or otherwise dispose of this Agreement, or any of its rights hereunder, and any attempted delegation or disposition shall be null and void and without effect.

18. <u>Severability</u>. Any provision(s) of this Agreement which shall be invalid or void shall in no way affect, impair or invalidate any other provisions hereof, and the remaining provisions hereof shall remain in full force and effect.

The undersigned Owner hereby acknowledges receipt of a copy of this Agreement.

APPROVED this _____ day of _____ 2007

Broker:
**CB Richard Ellis, Inc.**
Licensed Real Estate Broker

By: _____
           **Authorized Signator**

Title :  _____

Authorized by: *[signature]*
           **Jeffrey R. Whelan**
           **An Authorized Signatory**

a(n)   _____A New York Corporation_____
[Print or type legal status of Owner - e.g., partnership, corporation or sole proprietorship, and name of state where formed]
American Home Mortgage Corp.
538 Broadhollow Road

Contact Info:   **Philip Heilpern**

           **CB Richard Ellis, Inc.**
           **88 Froehlich Farm Boulevard**
           **Woodbury, NY 11797**

Address:   Melville, NY 11747

Telephone:   **516-677-1700**

Telephone :  _____

---

**CONSULT YOUR ADVISORS** - This document has legal consequences. No representation or recommendation is made by Broker as to the legal or tax consequences of this Agreement or the transaction(s) that it contemplates. These are questions for your attorney and financial advisors.

# EXHIBIT B

**Affidavit in Support of Retention**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :  Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                           :  Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                  :
                                                                 :  Jointly Administered
      Debtors.                                                   :
---------------------------------------------------------------- x

**AFFIDAVIT IN SUPPORT OF THE DEBTORS' APPLICATION
PURSUANT TO SECTION 327(a) AND 328(a) OF THE BANKRUPTCY
CODE FOR ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF CB RICHARD ELLIS, INC. AS A REAL
ESTATE BROKER, *NUNC PRO TUNC* TO JANUARY 10, 2008**

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NASSAU     )

Phillip Heilpern, being duly sworn, deposes and says:

1. I am Senior Vice President of CB Richard Ellis, Inc. ("CBRE"), 88 Froehlich Farm Blvd., Suite 100, Woodbury, New York, NY. This affidavit (the "Affidavit") is submitted in support of the Debtors' Application Pursuant to Section 327(a) and 328(a) of the Bankruptcy Code for Order Authorizing the Retention and Employment of CB Richard Ellis, Inc. as a Real Estate Broker, *Nunc Pro Tunc* to January 10, 2008 (the "Application"), in connection with the Debtors' sale of certain real property located at 538 Broadhollow Road, Melville, New York (the "Broadhollow Property").

2. CBRE is a "disinterested person" within the meaning of 11 U.S.C. Section 101(14). CBRE has no business, professional or other connection with the Debtor or the Trustee herein or with their attorneys, and does not represent, not will it represent, any interest adverse to the estate in the matters in which it is to be engaged.

3. CBRE is not employed or connected with the Debtor, the Trustee, any creditor, or other party in interest, their respective attorneys and accountants with respect to this Chapter 11 matter. CBRE maintains records of all of its clients. CBRE has reviewed such records as well as the entities listed on the Debtor's list of creditors provided to CBRE to determine any connections with the Debtor. The aforementioned list of creditors was provided by Debtor's counsel. This Affidavit is based on the information available to CBRE on the date hereof.

4. CBRE may have represented in the past, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtor and this Chapter 11 case. As part of its practice, CBRE also appears in cases, proceedings and transactions involving many different attorneys and accountants, some of which may represent claimants and parties-in-interest in this Chapter 11 case. CBRE does not represent any such entity in connection with this Chapter 11 case or have any relationship with any such entity, attorneys, accountants or advisors that would be adverse to the Debtor or its estates. As set forth in the attached Schedule I, CBRE has in the past and/or currently represents parties involved in this Chapter 11 case in matters which are wholly unrelated to these bankruptcy cases.

5. As previously stated CBRE is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14), as modified by Section 1107(b), in that, to the best of my knowledge, CBRE, its members and employees:

   a. are not creditors, equity security holders, or insiders;
   b. are not and were not within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and
   c. does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

2

6. Despite the efforts described above to identify and disclose CBRE's connections with parties in interest in this Chapter 11 case, CBRE is unable to state with absolute certainty that every client relationship or other connection has been disclosed. In this regard, if CBRE discovers additional material information that it determines requires disclosure, it will promptly file a supplemental disclosure with this Court.

7. CBRE intends to apply for compensation for professional services rendered in connection with this Chapter 11 case, subject to approval of the Bankruptcy Court for the District of Delaware (the "Court"), and compliance with applicable provisions of the Bankruptcy Code and other orders of the Court. The Debtors have agreed to pay CBRE a commission (the "Commission") equal to 1.5% of the gross sales price for the Broadhollow Property up to $35 million and 5.0% of the gross sales price for the Broadhollow Property that exceeds $35 million (which shall include any existing mortgage that is assumed), plus reimbursement of actual, necessary expenses and other charges incurred by CBRE up to a maximum of $7,500, pursuant to the terms of the Exclusive Sales Listing and Commission Agreement (the "Engagement Agreement").

8. The Commission set forth above is within CBRE's standard range of commission rates for work of this nature. The Commission is set at a level designed to fairly compensate CBRE for the work of its professionals, and to cover fixed and routine overhead expenses. It is CBRE's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, document imaging, charges for mailing supplies (including, without limitation, envelopes and labels) provided by CBRE to outside copying services for use in mass mailings, travel expenses,

expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses, approved by the client, such as secretarial and other overtime. CBRE will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to CBRE's other clients.

9. I have not agreed to share with any person (except members and consultants of my firm) the compensation to be paid for the services rendered in this case.

WHEREFORE, affiant respectfully prays for the entry of the annexed order and for such other and further relief as may be just and proper.

_____
Philip M. Heilpern
Senior Vice President

Sworn to before me this 10th day of January, 2008.

_____
Notary Public
My Commission Expires: 11-22-2009

LYNNE A. MILIONE
Notary Public, State of New York
No. 01MI5020628
Qualified in Suffolk County
Commission Expires November 22, 20___

4

## SCHEDULE I

| Entity | Transactions Involving CBRE |
|---|---|
| American Home Mortgage V, LLC | Ongoing - tenant rep (agency, or management contract) |
| Goldman Sachs Asset Management, LP | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Bank of America | Ongoing - tenant rep (agency, or management contract) |
| Bank of New York | Ongoing - tenant rep (agency, or management contract) |
| Citibank | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Citigroup | Ongoing - tenant rep (agency, or management contract) |
| Dallas County | Incidental - co-brokerage - one-off space dispositions/acquisitions |
| Fannie Mae | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Federal Home Loan Mortgage Corp. | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Fidelity Mortgage Affiliates | Incidental - co-brokerage - one-off space dispositions /acquisitions |
| GMAC | Ongoing - tenant rep (agency, or management contract) |
| Greenwich Capital Markets | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Merrill Lynch Pierce Fenner & Smith, Inc. | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Natixis Real Estate Capital Inc. | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Orix Capital Markets, LLC | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Regus Business Center LLC | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Societe Generale | Ongoing - tenant rep (agency, or management contract) |
| Sovereign Bank | Ongoing - tenant rep (agency, or management contract) |
| Transwestern | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| UBS Securities | Ongoing - tenant rep (agency, or management contract) |
| United Guaranty Services Inc. | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Wachovia Bank NA | Ongoing - tenant rep (agency, or management contract) |
| Washington Mutual | Ongoing - tenant rep (agency, or management contract) |
| Zurich American Insurance Company | Incidental - co-brokerage - one-off space dispositions/acquisitions |
| Young Conaway Stargatt & Taylor, LLP | Ongoing - tenant rep (agency, or management contract) |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | Ongoing - tenant rep (agency, or management contract) |
| Phoenix Capital, Inc. | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Deutsche Bank | Ongoing - tenant rep (agency, or management contract) |
| Morgan Stanley | Ongoing - tenant rep (agency, or management contract) |
| Wilmington Trust Company | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| JP Morgan Chase Bank | Ongoing - tenant rep (agency, or management contract) |

| SCHEDULE I | |
|---|---|
| (Continued) | |
| **Entity** | **Transactions Involving CBRE** |
| Wells Fargo Bank | Ongoing - tenant rep (agency, or management contract) |
| SunTrust Asset Funding, LLC | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Bear, Stearns & Co | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Citigroup Global Markets Realty | Ongoing - tenant rep (agency, or management contract) |
| EMC | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Lehman Brothers | Ongoing - tenant rep (agency, or management contract) |
| HSDC Bank | Ongoing - tenant rep (agency, or management contract) |
| Barclays | Ongoing - tenant rep (agency, or management contract) |
| IndyMac, FSB | Ongoing - tenant rep (agency, or management contract) |
| Credit Suisse First Boston | Ongoing - tenant rep (agency, or management contract) |
| Triad Guaranty Insurance Corporation | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| Royal Bank of Scotland | Ongoing - tenant rep (agency, or management contract) |
| ZC Sterling Corporation | Incidental - co-brokerage - one-off space dispositions /acquisitions |
| American Express | Ongoing - tenant rep (agency, or management contract) |
| Opteum Financial Services, LLC | Incidental - co-brokerage - one-off space dispositions/ acquisitions |
| IXIS Real Estate Capital | Incidental - co-brokerage - one-off space dispositions/ acquisitions |