## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ---------------------------------------------------------------- x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : | |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: February 1, 2008 at 11:00 a.m.** |
| | : | **Objection Deadline: January 25, 2008 at 4:00 p.m.** |
| ---------------------------------------------------------------- x | | |

### APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP AS TAX SERVICES PROVIDERS FOR THE DEBTORS, *NUNC PRO TUNC* AS OF JANUARY 14, 2008

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby

submit this application (the "Application"), pursuant to sections 327(a), 330 and 331 of title 11

of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 2014(a) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), for an order authorizing the employment and retention

of Deloitte Tax LLP as tax services providers for the Debtors, effective as of January 14, 2008.

In support of this Application, the Debtors submit the Declaration of John Niemiec in Support of

the Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

*Nunc Pro Tunc* Approval of Deloitte Tax LLP as Tax Servicers Providers for the Debtors,

attached hereto as <u>Exhibit A</u> (the "<u>Niemiec Declaration</u>").  In further support of the Application,

the Debtors respectfully represent as follows:

<u>**Jurisdiction**</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested

herein are sections 327(a), 330 and 331 of the Bankruptcy Code.

<u>**Background**</u>[2]

2.      On August 6, 2007, the Debtors each filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their

properties and have continued to operate their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.      An official committee of unsecured creditors (the "<u>Committee</u>") was

appointed on August 14, 2007.  No trustee or examiner has been appointed.

<u>**Relief Requested**</u>

4.      By this Application, the Debtors seek to employ and retain Deloitte Tax

LLP  ("<u>Deloitte Tax</u>"), effective as of January 14, 2008, pursuant to sections 327(a), 330 and 331

of the Bankruptcy Code, to perform various tax compliance and tax consulting services as

described herein and consistent with the terms and conditions of the engagement letter between

the Debtors and Deloitte Tax, dated January 11, 2008 (the "<u>Engagement Letter</u>"), a copy of

---

[2]  The facts set forth herein are derived from the Declaration of Michael Straus In Support of the Debtors' Chapter
11 Petitions and First Day Relief [D.I. 2], which is incorporated by reference as if fully set forth herein at length.

2

which is attached hereto as <u>Exhibit B</u>.

### Basis for Relief

5.    Deloitte Tax has rendered tax services to the Debtors for several years, and as a result, has considerable knowledge concerning the Debtors, and is already familiar with the Debtors' business affairs to the extent necessary for the scope of the proposed and anticipated services.  Thus, the Debtors respectfully submit that the employment and retention of Deloitte Tax would be in the best interests of the Debtors, their estates and their creditors.

6.    Further, Deloitte Tax has extensive experience and knowledge in performing the scope of the work described below.  The firm's experience in tax matters is widely recognized, and it regularly provides such services to large and complex business entities.  Thus, the Debtors believe that Deloitte Tax is well suited and qualified to serve as the Debtors' tax services providers in a cost-effective, efficient, and timely manner.

### Services to be Rendered

7.    If retained, Deloitte Tax, as disclosed in the Engagement Letter,[3] will render various tax services to the Debtors.  In particular, Deloitte Tax will perform, among others, the following services:

(a)    Review of the calculation of taxable income for American Home Mortgage Investment Corp. for the year ended December 31, 2007 and the subsequent year end in 2008;

(b)    Preparation or review of Form 1120 for American Home Mortgage Holdings, Inc. and its subsidiaries for the year ended December 31, 2007 and the subsequent year end in 2008;

(c)    Preparation or review of Form 1120 REIT or Form 1120 for American

---

[3]    Any references to or summaries of the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein.  Capitalized terms and phrases herein shall have the meanings ascribed to such terms in the Engagement Letter.

Home Mortgage Investment Corp. and its subsidiaries for the year ended December 31, 2007 and the subsequent year end in 2008;

(d)     Research and consultation regarding tax return filing issues with respect to trust preferred securities, amortization of mortgage servicing rights and tax accounting with respect to inter-company transactions;

(e)     Preparation of federal and state partnership income tax returns for Bayliss Trust;

(f)     Research and consultation with respect to federal and state income tax issues regarding multi series joint ventures or other joint ventures of American Home Mortgage Investment Corp. or American Home Mortgage Holdings, Inc. and subsidiaries;

(g)     Research and consultation with respect to potential loan and/or securities sales;

(h)     Research, consultation and preparation of responses with respect to federal, state and local income tax notices received from taxing authorities;

(i)     Representation, research and consultation with respect to income tax audits; and

(j)     Research, consultation and filing of claims for refund with respect to the New York State Mortgage recording tax.

Subject to the Court's approval of Deloitte Tax's retention hereunder, the scope of postpetition services Deloitte Tax anticipates providing to the Debtors is limited to those more significant services described above, and other services found in the Engagement Letter, both of which are set forth in greater detail in the Engagement Letter. However, when specific tax assistance desired by the Debtors from Deloitte Tax is identified, and such assistance involves either (i) contemplated fees in excess of $1,000,000 or (ii) a potential tax liability in excess of $5,000,000, the Debtors and Deloitte Tax will execute a separate work order, in the form set forth in Exhibit A to the Engagement Letter, and such work order will be filed with the Court.

4

**Professional Compensation**

8.    Pursuant to section 330 of the Bankruptcy Code, the Debtors may retain Deloitte Tax on reasonable terms and conditions.  The Debtors submit that the terms and conditions under the Engagement Letter, which are similar to the terms and conditions Deloitte Tax offers to similar clients for similar services, are reasonable.

9.    Subject to this Court's approval, and pursuant to the terms and conditions of the Engagement Letter, the Debtors understand that Deloitte Tax intends to apply to the Court for allowance of compensation and reimbursement of expenses for tax services performed for the Debtors in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding local rules, the guidelines established by the Office of the U.S. Trustee for the District of Delaware and orders of this Court, and pursuant to any additional procedures that may be, or already have been established by this Court in these chapter 11 cases.  The hourly rates, subject to periodic adjustments, charged by Deloitte Tax professionals anticipated to provide services to the Debtors pursuant to this Application are as follows:

| Partner/Principal/Director | $490 |
|---|---|
| Tax Senior Manager | $405 |
| Tax Manager | $305 |
| Tax Senior | $255 |
| Tax Staff | $195 |
| Tax Administrative Staff | $75 |

In the normal course of business, Deloitte Tax revises its regular hourly rates to reflect changes in responsibilities, increased experience and increased costs of doing business.  Changes in the hourly rates will be noted on the invoices for the first time period in which the revised rates

become effective.

10.    In addition to compensation for professional services, Deloitte Tax will seek reimbursement for reasonable and necessary expenses incurred in connection with the services performed for the Debtors, including the costs of transportation, lodging, working meals, telephone, photocopying and messenger services.

11.    The Debtors believe the compensation arrangements provided for in the Engagement Letter are consistent with, and typical of arrangements entered into by Deloitte Tax and other accounting firms with respect to rendering similar services for clients such as the Debtors.

<b><u>Disinterestedness</u></b>

12.    In reliance on the Niemiec Declaration, the Debtors believe Deloitte Tax is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Deloitte Tax:

    (a)  is not a creditor, an equity security holder, or an insider of the Debtors;

    (a)  is not and was not, within two years before the date of the filing of the petition, a director, an officer, or an employee of the Debtors; and

    (b)  does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

Accordingly, the Debtors believe that Deloitte Tax is eligible for retention by the Debtors under the Bankruptcy Code.

13.    To the best of the Debtors' knowledge, except as otherwise set forth in the Niemiec Declaration, neither Deloitte Tax nor any principal, partner or director thereof: (i) has any connection with the Debtors, their creditors, equity holders, attorneys or other professionals

6

or any other parties-in-interest (based upon a list provided to Deloitte Tax), or the United States

Trustee or the Assistant United States Trustee for the District of Delaware or their attorney

assigned to these chapter 11 cases; or (ii) holds or represents an interest adverse to the Debtors'

estates. Accordingly, the Debtors believe that Deloitte Tax is a "disinterested person" as that

term is defined in section 101(14) of the Bankruptcy Code.

14.    In the event that additional disclosure is necessary, Deloitte Tax will

promptly file a supplemental affidavit with this Court setting forth any facts and circumstances

relevant thereto.

## Indemnification

15.    The Engagement Letter provides for an indemnity of Deloitte Tax by the

Debtors. See Engagement Letter, p. 13 at ¶ 15. Notwithstanding the language in paragraph 15

regarding indemnification, such indemnity is modified by the proposed order approving this

Application as follows (the "Modified Indemnification Provisions"):

(a)    Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are
authorized to indemnify, and shall indemnify, Deloitte Tax, in accordance
with the Engagement Letter, for any claim arising from, related to or in
connection with their performance of the tax services described in the
Engagement Letter;

(b)    Deloitte Tax shall not be entitled to indemnification, contribution, or
reimbursement pursuant to the Engagement Letter for services other than the
tax services provided under the Engagement Letter, unless such services and
the indemnification, contribution, or reimbursement therefore are approved by
this Court;

(c)    Notwithstanding anything to the contrary in the Engagement Letter, the
Debtors shall have no obligation to indemnify any person, or provide
contribution, or reimbursement to any person, for any claim or expense that is
either (i) judicially determined (the determination having become final) to
have arisen primarily from that person's gross negligence or willful
misconduct, or (ii) settled prior to a judicial determination as to that person's
gross negligence or willful misconduct, but determined by this Court, after
notice and a hearing, to be a claim or expense for which that person should not

7

receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the proposed order on this Application; and

(d) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Deloitte Tax believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the proposed order on this Application), including without limitation the advancement of defense costs, Deloitte Tax must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify Deloitte Tax.

16.     The Debtors submit that the Modified Indemnification Provisions are similar to other indemnification provisions that are routinely approved by bankruptcy courts in this District.

### Notice

17.     Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Debtors' postpetition lender; (v) the Securities and Exchange Commission; and (vi) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

8

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto (i) authorizing the employment and retention of Deloitte Tax as tax services providers *nunc pro tunc* as of January 14, 2008, and (ii) granting such other and further relief as this Court deems just and proper.

Dated:      Wilmington, Delaware
            January 14, 2008

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP


                              _____
                              James L. Patton, Jr. (No. 2202)
                              Pauline K. Morgan (No. 3650)
                              Matthew B. Lunn (No. 4119)
                              Kenmeth J. Enos (No. 4544)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Counsel for the Debtors and Debtors in Possession

9

**Exhibit A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., et al.,[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

## DECLARATION OF JOHN NIEMIEC
## IN SUPPORT OF THE APPLICATION FOR AN ORDER PURSUANT
## TO SECTION 327 (A) OF THE BANKRUPTCY CODE AUTHORIZING
## THE *NUNC PRO TUNC* APPROVAL OF DELOITTE TAX LLP
## AS TAX SERVICES PROVIDERS FOR THE DEBTORS

JOHN NIEMIEC, deposes and says:

1.     I am a director of the firm of Deloitte Tax LLP ("Deloitte Tax"), which

has an office located at Two Hilton Court, Parsippany, New Jersey 07054. I make this

declaration in support of the Application for an Order Pursuant to Section 327(a) of the

Bankruptcy Code Authorizing the approval of Deloitte Tax as Tax Services Providers for the

Debtors (the "Employment Application"). The above–captioned debtors (the "Debtors") seek to

---

[1] The Debtor in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: American Home Mortgage Holdings, Inc., ("AHM Holdings")
(6303); American Home Mortgage Investment Corp. ("AHM Investment"), Maryland
corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a
Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Sericing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp.."), a New York
corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware
limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New
York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation
(8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747,
except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

00233-001\DOCS_DE:129780.4

retain Deloitte Tax *nunc pro tunc* to January __, 2008 pursuant to the terms and conditions set forth in the Engagement Letter, attached hereto as Exhibit 1.

2.      The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

3.      Except as set forth herein or as set forth on the attached Exhibit 2, to my knowledge based on reasonable inquiry, (1) Deloitte Tax, and the partners, principals, and directors of Deloitte Tax (the "Deloitte Tax Partners/Directors") that are anticipated to provide the services as part of the engagement team on the engagement for which Deloitte Tax is to be retained in these chapter 11 cases (the "AHM Engagement Team"), and the employees of Deloitte Tax who are anticipated to provide the services as part of the AHM Engagement Team, do not hold or represent any interest adverse to any of the Debtors with respect to the matters on which Deloitte Tax is to be retained in these Chapter 11 cases, and (2) Deloitte Tax and the Deloitte Tax Partners/Directors have no relationship to any of the Debtors, any of the Debtors' significant creditors, other known parties-in-interest in these chapter 11 cases, or to the Debtors' attorneys that are known to be assisting the Debtors in these chapter 11 cases, except as described herein or as set forth on the attached Exhibit 2.

4.      From time to time, Deloitte Tax and its affiliates have provided, currently provide or may currently provide services and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these chapter 11 cases.

2

5.    As described below, Deloitte Tax has undertaken a search to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals or other entities with significant relationships with the Debtors identified on a schedule provided to Deloitte Tax. Deloitte Tax and its affiliates have or may have provided professional services to, currently provide or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these chapter 11 cases to certain of the Debtors' creditors, other parties-in-interest, or to attorneys and accountants that are known to us to be assisting the Debtors or various committees.  Additionally, certain of these creditors, parties-in-interest, attorneys or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to, Deloitte Tax or its affiliates and the Deloitte Tax Engagement Partners/Principals/Directors in matters unrelated to these chapter 11 cases.

6.    Deloitte Tax provided prepetition tax services to the Debtors.  Deloitte Tax received $98,423 from the Debtors in the ninety days prior to August 6, 2007 (the "Petition Date").  As of the Petition Date, approximately $75,000 was owed by the Debtors to Deloitte Tax in respect of services provided prior to such date.  Subject to approval of the Employment Application, Deloitte Tax has agreed not to seek recovery of this amount.

7.    Deloitte & Touche LLP ("Deloitte & Touche"), an affiliate of Deloitte Tax, also provided prepetition services to the Debtors, including as their auditors.  Deloitte & Touche received $201,000 from the Debtors in the ninety days prior to August 6, 2007 (the

3

"Petition Date"). As of the Petition Date, $389,750 was owed from the Debtors to Deloitte & Touche in respect of services provided prior to such date. Subject to approval of the Employment Application, Deloitte & Touche has agreed not to seek recovery of this amount.

8.      To check upon and disclose possible relationships with parties-in-interest in these chapter 11 cases, Deloitte Tax researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other such entities with significant relationships with the Debtors. The identities of these parties in interest were provided to Deloitte Tax by counsel to the Debtors.

9.      Despite the efforts described above to identify and disclose Deloitte Tax's connections with the parties-in-interest in these chapter 11 cases, because Deloitte Tax is a nationwide firm with tens of thousands of employees, and because the Debtors are a large enterprise, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

10.     From this internal search, Deloitte Tax has determined that certain relationships should be disclosed as follows.

        a.      Deloitte Tax provides services in matters unrelated to these chapter 11 cases to certain of the Debtors' largest unsecured creditors and other affiliated entities listed on Exhibit 2.

4

b.      Law firms identified on Exhibit 2, including Bingham, McCutchen LLP; Blank, Rome, Comisky & McCaul; Duane Morris LLP; Cadwalader, Wickersham & Taft; Hahn & Hessen LLP; Jones Day; Kirkland & Ellis LLP; Reed Smith LLP; Sidley Austin Brown & Wood LLP; Weil, Gotshal & Manges LLP have provided, currently provide and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to these chapter 11 cases, and/or Deloitte Tax and/or its affiliates have provided, currently provide, and may in the future provide services to such firms

c.      In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its principal competitors which together with their affiliates, may be parties-in-interest in these chapter 11 cases.  For example, from time to time, Deloitte Tax and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

d.      Certain financial institutions or their respective affiliates (including Bank of America, N.A., Barclays Bank PLC, Chase Manhattan Bank, N.A., Citigroup, Inc., Wachovia Corporation and Wells Fargo Bank, N.A.) listed on Exhibit 2 are lenders to an affiliate of Deloitte Tax. Deloitte Tax is a guarantor of such indebtedness.  These financial institutions have also financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Tax and its affiliates.

e.      It has come to the attention of Deloitte Tax that certain parties purporting to be purchasers of stock of American Home Mortgage Investment Corporation ("AHMIC") filed a putative securities class action complaint in the United States District Court for the Eastern District of New York on August 27, 2007.  The action relates to alleged purchases of AHMIC stock in the spring of 2007.  It is my understanding that Deloitte & Touche is named as one of the defendants in that complaint.  In addition, it has come to the attention of Deloitte Tax that Deloitte & Touche has received requests for information from certain regulatory bodies in connection with inquiries relating to AHMIC.

f.      Following the commencement of these chapter 11 cases, Deloitte Tax conducted interviews of, and made an offer of employment to, a staff tax accountant of the Debtors; however, this individual declined to accept the offer and, to my knowledge, is no longer employed by the Debtors.

g.      Deloitte Tax and/or its affiliates has provided professionals services to Michael Strauss, the chief executive officer of the Debtors. Such services were last performed in October of 2005.

5

h.      Certain parties-in-interest may be adverse to and/or involved in litigation matters with Deloitte Tax and/or its affiliates in connection with matters unrelated to these chapter 11 cases.

11.      Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these chapter 11 cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, and the attorney therefor assigned to these chapter 11 cases

12.      Except as may be disclosed herein, to the best of my knowledge, Deloitte Tax and the Deloitte Tax Partners/Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax and the Deloitte Tax Partners/Directors are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

13.      Subject to the terms of the Engagement Letter, Deloitte Tax proposes to render, as may be requested by the Debtors and as may be agreed to by Deloitte Tax, various tax services (the "Tax Services") which may include the following:

- Review of the calculation of taxable income for American Home Mortgage Investment Corp for the year ended December 31, 2007 and subsequent year end in 2008 including related research and consultation with respect to, but not limited to, the following; Federal Excise Tax, New York State issues, Excess Inclusion Income, Spillback dividends, 2007 dividends and 2008 dividends.
- Research and consultation with respect to, but not limited to, the following; tax return filing issues with respect to trust Preferred securities, amortization of mortgage servicing rights, REMIC issues, tax accounting with respect to inter-company transactions, REIT compliance and principal only strips, REIT compliance and swaps, IRC 382 and built-in gains and Taxable Mortgage Pool issues.
- Preparation of Federal and State Partnership income tax returns for Bayliss Trust.

6

- Research and consultation with respect to federal and state income tax issues regarding multi series joint ventures of American Home Mortgage Investment Corp. or American Home Mortgage Holdings, Inc. and subsidiaries.
- Research, consultation and preparation of calculations with respect to Premium amortization, Discount accretion, Original Issue Discount, Excess Inclusion Income and Securitization taxable income.
- Due diligence, consultation and research with respect to proposed divestures.
- Research and consultation with respect to New York State Sales and Use tax audits and consultation on issues including reviewing and filing for potential refund claims.
- Research and consultation with respect to potential loan and or/securities sales.
- Preparation or review of Form 1120 REIT or Form 1120 for American Home Mortgage Investment Corp. and subsidiaries for the year ended December 31, 2007 and subsequent year ending in 2008, including related research and consultation.
- Preparation or review of Form 1120 for American Home Mortgage Holding, Inc. and subsidiaries for the year ended December 31, 2007, and subsequent year ending 2008, including related research and consultation.
- Research and consultation with respect to REIT compliance pursuant to Internal Revenue Code Section 856 through 858 and other referenced or applicable code sections.
- Research, consultation and preparing responses with respect to Federal, state and local income tax notices received from taxing authorities.
- Preparation or review of state income tax returns for American Home Mortgage Investment Corp. and subsidiaries for the year ending in 2008, including related research with respect to filing issues.
- Representation, research and consultation and the filing of claims for refund with respect to the New York State Mortgage recording Tax.

14.     Deloitte Tax has significant qualifications and experience in performing

the scope of work described above that is the subject of Deloitte Tax's retention to provide post-

petition services to the Debtors.

15.     Deloitte Tax intends to apply to the Court for allowance of compensation

and reimbursement of expenses consistent with the terms of the Engagement Letter, the

Employment Application and this Declaration, the applicable provisions of the Bankruptcy

7

Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court of

the District of Delaware, the United States Trustee Guidelines and the Orders of this Court.

16.     Subject to the terms of the Engagement Letter, Deloitte Tax will charge

hourly rates in performing the Tax Services. Deloitte Tax will charge the following hourly rates

for the provision of the Tax Services:

| *Classification* | *Hourly Billing Rate* |
|---|---|
| Partner/Director | $490 |
| Senior Manager | $405 |
| Manager | $305 |
| Senior | $255 |
| Staff | $195 |
| Tax Adminstrative Staff | $ 75 |

17.     In the normal course of business, Deloitte Tax may revise the hourly rates

set forth above to reflect changes in responsibilities, increased experience, and increased costs of

doing business. Accordingly, Deloitte Tax requests that the aforementioned rates be revised to

the hourly rates that will be in effect from time to time. Changes in regular hourly rates will be

noted on the invoices for the first time period in which the revised rates became effective.

18.     Except as otherwise set forth in the Engagement Letter, the professional

fees charged for Tax Services are calculated from the actual hours expended in providing the

services multiplied by the hourly billing rates for the specific personnel involved. In addition,

reasonable expenses, including travel, report production, delivery services, and other expenses

incurred in providing the services, will be included in the total amount billed.

19.     Deloitte Tax requests that it be permitted to submit monthly invoices for

services rendered and expenses incurred. Such invoices will contain reasonable detail consistent

with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to

8

these chapter 11 cases. Deloitte Tax requests that the invoices, after appropriate review, be paid

in a manner consistent with the payment of other retained professionals in this matter, consistent

with any administrative orders, if any, that would apply to interim payments.

20.    All payments rendered pursuant to Deloitte Tax's retention by the Debtors

must be approved by an Order of this Court and based upon the filing by Deloitte Tax of

appropriate interim and final applications for allowance of compensation and reimbursement of

expenses.

21.    Deloitte & Touche has completed a reorganization of some of its business

units, including its financial advisory services, tax services, solutions, human capital and

outsourcing business functions. This reorganization is intended to align the organizational

structure more closely with the manner in which business is conducted. These business

functions are now being conducted by entities affiliated with Deloitte & Touche, including

Deloitte Financial Advisory Services LLP ("Deloitte FAS"), Deloitte Consulting LLP ("Deloitte

Consulting"), and Deloitte Tax. Accordingly, some services incidental to the tasks to be

performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now

employed by or associated with Deloitte FAS, Deloitte Consulting, Deloitte Touche and/or their

respective subsidiaries, including subsidiaries located outside of the United States. The fees and

expenses with respect to such services will be included in the fee applications of Deloitte Tax

22.    Deloitte Tax has received no promises regarding compensation in these

chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this

Declaration. Deloitte Tax has no agreement with any nonaffiliated entity to share any

compensation earned in these Chapter 11 cases.

9

Dated: January _11_, 2008

Declarant:   John Niemiec
Title:   Director

10

**EXHIBIT "1"**

Engagement Letter

## EXHIBIT "2"

Parties-in-Interest for whom Deloitte Tax LLP or its affiliates has provided or is currently
providing services in matters unrelated to these chapter 11 cases or with whom such parties have
other relationships including banking relationships.

ABN-AMRO Bank
American Express
Bank of New York (Inc.), The
Bank of America, N.A.
Barclays Bank PLC
Bear Stearns
Bingham McCutchen LLP
Blank, Rome, Comisky & McCaul
Calyon
CB Richard Ellis
Chase Manhattan Bank, N.A.
Citibank, N.A.
Citigroup
Countrywide Financial
Credit Suisse First Boston
Deutsche Bank AG
Duane Morris LLP
Cadwalader Wickersham & Taft
Duke University
Fannie Mae Foundation
First American Bank
General Motors Corporation
GMAC
Goldman, Sachs & Co
Hahn & Hessen LLP
HSBC Holdings PLC
Impac Funding Corporation
Indymac Bancorp
Jones Day
JP Morgan Chase Bank, N.A.
Kirkland & Ellis
Lehman Brothers Inc.
Liquid Funding Ltd
Luminent Mortgage Capital Inc.
MassHousing
Merrill Lynch & Company
Morgan Stanley
Nationsbank Corporation

NCNB Corporation
Natixis
Nomura Funds
NWQ Limited Partnerships
NWQ Investment Management Company
Opteum Financial Services LLC
Orix Real Estate Capital Markets LLC
Reed Smith LLP
Regus Business Centre Corporation
Royal Bank of Scotland Group PLC
Sidley Austin Brown and Wood LLP
Societe Generale SA
SunTrust Bank Inc.
Transwestern Investment
Trident III, L.P. and coinvestment funds
UBS AG
UBS Capital Americas
Washington Mutual Bank
Wachovia Corporation
Weil, Gotshal & Manges LLP
Wells Fargo Bank, N.A.
Zurich Holding Company of America, Inc.

00233-001\DOCS_DE:129780.4

**Exhibit B**

066585.1001

# Deloitte.

January 11, 2008

Deloitte Tax LLP
Two Hilton Court
Parsippany, NJ 07054-0319
USA

Tel: +1 973 683 7000
Fax: +1 973 683 7459
www.deloitte.com

Mr. Robert Bernstein
American Home Mortgage Investment Corp. and subsidiaries
538 Broadhollow Road
Melville, NY 11747

Dear Rob,

This letter is to confirm the mutual understanding between Deloitte Tax LLP ("Deloitte Tax") and American Home Mortgage Investment Corp. and subsidiaries ("Client") with respect to the tax consulting services and tax return review and/or preparation services that Deloitte Tax will provide for Client. Deloitte Tax professionals will be available to provide tax consultation and tax return review and/or preparation services ("tax assistance") on federal, foreign, state and local tax matters on an as-requested basis.

**The tax assistance that we propose may include but not be limited to the following:**

- Review of the calculation of taxable income for American Home Mortgage Investment Corp for the year ended December 31, 2007 and subsequent year end in 2008 including related research and consultation with respect to, but not limited to, the following; Federal Excise Tax, New York State tax issues, Excess Inclusion Income, Spillback dividends, 2007 dividends and 2008 dividends.
- Research and consultation with respect to, but not limited to, the following; tax return filing issues with respect to trust Preferred securities, amortization of mortgage servicing rights, REMIC issues, tax accounting with respect to inter-company transactions, REIT compliance and principal only strips, REIT compliance and swaps, IRC 382 and built-in gains and taxable mortgage pool issues.
- Preparation of Federal and State Partnership income tax returns for Bayliss Trust.
- Research and consultation with respect to federal and state income tax issues regarding multi series joint ventures or other joint ventures of American Home Mortgage Investment Corp. or American Home Mortgage Holdings, Inc. and subsidiaries.
- Research, consultation and preparation of calculations with respect to Premium amortization, Discount accretion, Original Issue Discount, Excess Inclusion Income and Securitization taxable income.
- Due diligence, consultation and research with respect to proposed divestures.
- Research and consultation with respect to New York State Sales and Use tax audits and consultation on issues including reviewing and filing for potential refund claims.
- Research and consultation with respect to preparation of foreign Trust tax returns.
- Research and consultation with respect to potential loan and /or securities sales.
- Preparation or review of Form 1120 REIT or Form 1120 for American Home Mortgage Investment Corp. and subsidiaries for the year ended December 31, 2007 and subsequent year ending in 2008, including related research and consultation.
- Preparation or review of Form 1120 for American Home Mortgage Holdings, Inc. and subsidiaries for the year ended December 31, 2007, and subsequent year ending in 2008, including related research and consultation.
- Research and consultation with respect to REIT compliance pursuant to Internal Revenue Code

Member of
Deloitte Touche Tohmatsu

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

Sections 856 through 858 and other referenced or applicable code sections.

- Research, consultation and preparing responses with respect to Federal, state and local income tax notices received from taxing authorities.
- Preparation or review of state income tax returns for American Home Mortgage Investment Corp. and subsidiaries and American Home Mortgage Holdings, Inc. and subsidiaries for the year ended December 31, 2007, and subsequent year ending in 2008, including related research with respect to filing issues.
- Representation, research and consultation with respect to income tax audits.
- Research, consultation and the filing of claims for refund with respect to the New York State Mortgage recording tax.

This engagement letter ("Engagement Letter") will establish the terms and conditions that will apply to the tax assistance provided pursuant to this agreement.

## SCOPE AND TERMS

Client and Deloitte Tax agree that the terms of this letter will apply to all tax assistance provided by Deloitte Tax to Client during the period set forth above, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

As the specific assistance desired by Client from Deloitte Tax is identified, Client and Deloitte Tax will execute a separate work order ("Work Order") when such tax assistance involves either (1.) contemplated fees in excess of $1,000,000, or (2.) a potential tax liability in excess of $5,000,000. The request for assistance should be in the form of a Work Order as set forth in Exhibit A attached to this Engagement Letter (or a substantially similar form). The request for tax assistance should reference this Engagement Letter and clearly describe the specific details of the tax assistance anticipated pursuant to the Work Order (including scope of work, deliverables, timing, client responsibilities and fees). Once executed by Deloitte Tax and Client, such Work Order will be binding upon the parties.

All rights and obligations of Deloitte Tax and Client described in this Engagement Letter will apply to each Work Order. In the event of any conflict or inconsistency between the terms of this Engagement Letter and the terms of any Work Order, the terms of this Engagement Letter shall control. Notwithstanding the immediately preceding sentence, in the event that a Work Order expressly provides that certain provisions therein shall control over specified provisions of this Engagement Letter, then, to the extent that such provisions of the Work Order conflict or are inconsistent with the specified provisions of this Engagement Letter, such provisions of the Work Order shall control. If a Work Order is not executed, as previously described, the terms of this Engagement Letter will apply to the tax assistance provided.

This engagement may be terminated by either party at any time by giving written notice to the other party not less than thirty (30) calendar days before the effective date of termination. In the event of termination pursuant to this paragraph, Client agrees to compensate Deloitte Tax under the terms of this Engagement Letter for services performed and expenses incurred through the effective date of engagement termination.

It is contemplated that the tax assistance requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such assistance, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

Deloitte Tax may prepare income tax returns that are subject to this engagement letter based on the information that Client has provided to us. Deloitte Tax will rely on this information as being accurate and complete and will neither verify the information nor perform any procedures designed to discover errors or inaccuracies, although Deloitte Tax may ask Client representatives to clarify or supplement the information provided to Deloitte Tax. Since the returns will reflect information that is under Client's exclusive control, Client has the ultimate responsibility for their accuracy; therefore, Client should review each return carefully before signing and filing the returns.

Client may engage Deloitte Tax to review Client's return(s). Consequently, only those review steps described in the Exhibit B to this Engagement Letter will be performed. **Deloitte Tax does not warrant or represent to Client that the Deloitte Tax review steps will enable Deloitte Tax to identify every error, potential issue, disclosure, election, filing, or notice requirement in Client's tax returns.** Upon completion of the Deloitte Tax review, Deloitte Tax will report to Client our findings, issues, and questions.

Client's returns may be selected for review by taxing authorities, who may not agree with the positions reflected on the tax returns. Any adjustments proposed by taxing authorities are subject to certain rights of appeal. In that event, if permissible, Deloitte Tax would generally be available to represent Client before the appropriate taxing authority for an additional fee. Because of the lack of clarity in the law, however, Deloitte Tax cannot provide assurance that the positions asserted by taxing authorities will ultimately be sustained.

As part of this engagement, Deloitte Tax will not advise Client on the requirements necessary for complying with the MeF System (and applicable state requirements). For purposes of this Engagement Letter, Deloitte Tax assumes no responsibility to electronically transmit Client's federal or state tax returns to the IRS (or applicable states).

## REPORTABLE TRANSACTIONS

The Internal Revenue Service ("IRS") and several states have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their federal and/or state income tax returns and, when necessary, by filing a copy of that disclosure form with the Internal Revenue Service and/or the applicable state tax authority. These rules impose significant disclosure obligations that may encompass transactions entered into in the normal course of business. Failure to make the appropriate disclosures could result in substantial penalties. Client is responsible for ensuring that it has properly disclosed all reportable transactions. Deloitte Tax will not be responsible for any penalties resulting from Client's failure to make any required disclosure in a complete, accurate, and timely manner.

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

The Deloitte Tax assistance included within the scope of this Engagement Letter does not include any undertaking by Deloitte Tax to identify any reportable transactions or disclosure obligations unless specifically described in this Engagement Letter, a separate Work Order, or other written agreement. If Client is unclear about the scope or application of the relevant reportable transaction disclosure obligations or may have participated in reportable transaction, Deloitte Tax recommends that Client immediately discuss the matter and potential disclosure obligations with a Deloitte Tax or other qualified tax professional.

Upon Client's request, Deloitte Tax will assist Client in determining whether a transaction may be subject to Federal or a specific state's reportable transaction disclosure rules for a separate fee. Deloitte Tax will rely on the factual information described or provided by Client as accurate and complete in providing the specific tax assistance requested by Client. Deloitte Tax is not responsible for any other transactions for which disclosure may have been required but which have not been brought to the attention of Deloitte Tax and included within the scope of the specific engagement. Deloitte Tax will provide Client with a separate memorandum supporting the reportable transaction conclusions, and the rationale for such conclusions, if specifically engaged by Client to provide such documentation. The relevant documentation will only address Client's federal and/or specific state(s) potential reportable transaction disclosure considerations or obligations as identified and described in the applicable the Engagement Letter or Work Order. In that case, the Deloitte Tax documentation will be based on a review and application of the relevant disclosure provisions to the specific information, books and records, and facts described or provided to Deloitte Tax by Client. Please note that Federal Treasury regulations provide that the receipt of an opinion regarding the tax consequences of a transaction is not relevant to the determination of whether the transaction is the same or substantially similar to an IRS "listed transaction" (a specific type of reportable transaction).

Any disclosure potentially required by or made pursuant to the reportable transaction provisions is separate and distinct from any other disclosure that Client may be required to or choose to make with its tax return (e.g., disclosure on federal Form 8275 or similar state disclosure). Unless specifically requested, this Engagement Letter does not cover such other disclosures. In no event will the tax assistance provided pursuant to this Engagement Letter encompass any analysis or advice with respect to any financial accounting information or disclosure.

## CAVEATS AND CONDITIONS

Client acknowledges and agrees that any tax assistance provided pursuant to this agreement will be based solely upon:

(a)    The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

(b)    Deloitte Tax's assumption that there will be timely execution, delivery and performance as may be required by any representation or documents submitted by Client with respect to Deloitte Tax's tax assistance;

(c)    The understanding that Deloitte Tax will only be responsible to provide tax assistance with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.);

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

(d)  Client acknowledges that Client will maintain ultimate responsibility for all management decisions and management functions. Client understands and agrees that the ultimate responsibility, with respect to the appropriate application and interpretation of any oral or written communications, rests with management of Client. Deloitte Tax will not be held liable for any misinterpretations of oral or written communications regarding the application of tax assistance.

(e)  Client's understanding that any tax assistance provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax assistance is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax assistance being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax assistance;  .

(f)  Client's understanding and agreement that the results of Deloitte Tax's tax assistance may be audited and challenged by the IRS and other tax authorities, who may not agree with our positions. In this regard, Client understands that the result of any tax assistance is not binding on the IRS, or other tax authorities or the courts and should never be considered a representation, warranty, or guarantee that the IRS or the courts will concur with our advice or opinion; and

(g)  Deloitte Tax, as a result of providing such tax assistance, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Client before the appropriate tax authorities, if permissible, for an additional fee that is mutually agreed upon.

## PROFESSIONAL FEES AND EXPENSES

The Deloitte Tax professional fees for tax assistance, other than for assistance described in a specific Work Order or separate Engagement Letter with a different fee arrangement, will be based on hourly rates, which vary depending upon the experience level of the professionals involved, plus reasonable expenses not to exceed 10% of the fee. We have attached Exhibit C which notes the hourly rates to be billed by Deloitte Tax. Deloitte Tax will send Client bills as the work is performed, which are payable upon receipt subject to any applicable Bankruptcy Court (as defined below) order, rules or procedures.

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

Deloitte Tax may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by the Client in its bankruptcy cases (the "Cases") on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of Deloitte Tax as tax service providers for the Client is not issued by the Bankruptcy Court in the Cases on or before sixty (60) days from the date of this engagement letter on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte Tax in its sole discretion, or (c) the application of the Client seeking such order is denied by the Bankruptcy Court in the Cases. In any such event, the Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Cases. For purpose of this engagement letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

## ACCEPTANCE

This Engagement Letter, together with the General Business Terms attached and incorporated by reference, constitutes the entire agreement between the Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature also constitutes acknowledgement of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions, please do not hesitate to call John Niemiec at 973-683-6741.

Very truly yours,

Deloitte Tax LLP

By: John Niemiec

AGREED AND ACCEPTED:

American Home Mortgage Investment Corp.,
on behalf of itself and its
Subsidiaries and/or affiliates

By: _____
Printed
Name: _Alan Horn_
Title: _EVP_
Date: _1/14/08_

**Exhibit A**

**WORK ORDER**

| Work Order Number: | Authorized Start Date: |
|---|---|

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP and [Client] dated [*Date*].

**Description of Tax Assistance and Deliverable:**

**Estimated Timing for Services (including Critical Path, Milestones, and Deliverables, if applicable):**

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

**Client Responsibilities:**

**Other Terms (if applicable):**

**[Client]**                                    **Deloitte Tax LLP**

By: _____               By: _____
Printed                                         Printed
Name: _____               Name: _____
Title: _____               Title: _____
Date: _____               Date: _____
                                               Address: _____

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008


**Exhibit B**

**ADDENDUM TO AGREEMENT BETWEEN**
**Deloitte Tax LLP and**
**American Home Mortgage Investment Corp. and Subsidiaries**

**LIST OF SPECIFIC TAX RETURN REVIEW**
**PROCEDURES TO BE PERFORMED**

1. Reference and reconcile taxable income and the balance sheet reported in the returns to the income and balance sheet reported on the financial statements.

2. Compare prior year return with current year return.

3. Read supporting statements and schedules.

4. Read the provision to return reconciliation.

5. Read elections made for the year. We will not determine if all potential elections are included in the returns.

6. Read disclosure of transactions identified to us by Client.

7. Analyze book/tax differences (M-1's or M-3's) for reasonableness.

   (a) With respect to fixed assets and the related depreciation M-1 or M-3, the scope of services is limited to a "reasonableness" check of schedules, which reconcile to the prior year return. Deloitte Tax will not perform a detailed analysis of the depreciation schedules.

8. Analyze federal and selected state tax credit calculations for reasonableness. Deloitte Tax will not analyze or verify supporting data.

9. Read tax credit and net operating loss carry-forward schedules.

10. Analyze any new or changed accounting methods.

11. Discuss any significant or unusual transactions that occurred during the year.

12. Upon completion of our review procedures we expect to sign the federal and state income tax returns that we have substantially reviewed.

The procedures that we specifically will not perform are:

1. Deloitte Tax will not analyze the regular tax, AMT and ACE depreciation calculations. Deloitte Tax will rely on your depreciation schedules.

2. Deloitte Tax will not analyze your workpapers supporting your state apportionment.

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008


**Exhibit C**
**Deloitte Tax Hourly Rates**

| | |
|---|---|
| Tax Partner/Principal/Director | $490 per hour |
| Tax Senior Manager | $405 per hour |
| Tax Manager | $305 per hour |
| Tax Senior | $255 per hour |
| Tax Staff | $195 per hour |
| Tax Administrative Staff | $ 75 per hour |

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

## DELOITTE TAX LLP GENERAL BUSINESS TERMS

**1.     Services.**  It is understood and agreed that Deloitte Tax LLP's ("Deloitte Tax") services (the "Services") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. For purposes of these terms and the Engagement Letter, the "Client" shall mean American Home Mortgage Investment Corp. and its subsidiaries and/or affiliates. American Home Mortgage Investment Corp. represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.

**2.     Payment of Invoices.**  Subject to any applicable Bankruptcy Court orders, rules or procedures, Deloitte Tax's invoices are due within thirty (30) days of the invoice date. Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within (30) days of the invoice date. The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

**3.     Term.**  Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services. This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination, provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. Deloitte Tax may terminate this engagement upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory, or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board, or the Securities and Exchange Commission), or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

**4.     Ownership of Deloitte Tax Property.**  To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property. Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing.

**5.     Limitation on Warranties.**  THIS IS A SERVICES ENGAGEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE. DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE CLIENT'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

**PROFESSIONAL FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.**

6.      **"( Intentionally Omitted )".**

7.      **Client Responsibilities.**  The Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services. The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities hereunder and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client. The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8.      **Force Majeure.**  Except for the payment of money, neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.      **Limitation on Actions.**  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10.     **Independent Contractor** Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of the Services. It is understood and agreed that Deloitte Tax is an independent contractor and that Deloitte Tax is not, and will not be considered to be, an agent, partner, or representative of the Client.

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

**11.    Confidentiality.** To the extent that, in connection with this engagement, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the Client, Deloitte Tax will not disclose such information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals, and employees), or to other subcontractors, in each case, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto, or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax independently of any disclosures made by the Client to Deloitte Tax of such information. In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge, and ideas. In addition, the Client acknowledges and agrees that any such information that comes to the attention of Deloitte Tax in the course of performing this engagement may be considered and used by Deloitte & Touche LLP in the context of responding to its professional obligations as the independent accountants for the Client.

**12.    Survival and Interpretation.** The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties limitation on damages, limitations on actions, confidentiality, survival and interpretation, assignment, waiver of jury trial, governing law, indemnification, information and data, and third party and internal use shall survive the expiration or termination of this engagement. For purposes of these terms Deloitte Tax shall mean Deloitte Tax LLP and for purposes of these terms shall also mean Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor, shall have any liability hereunder to the Client or any other person and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax in connection with this engagement. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings. **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

**13.    Assignment and Subcontracting.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party. The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

part of the assets or business of Deloitte Tax. Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

**14.** **Waiver of Jury Trial.** DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.

**15.** **Indemnification.** The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims, to the extent such Claims arise out of any act or omission by the Client or any of its personnel. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

**16.** **Governing Law, Venue and Jurisdiction, and Severability.** These terms, the Engagement Letter, including exhibits and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

**17.** **Information and Data.** Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

**18.** **Third Parties and Internal Use.** Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Engagement Letter. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Engagement Letter, All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

**19.**   **Certain Tax Disclosures and Reporting.** In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter. The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

**20.**   **Accountant / Client Privilege – IRC §7525.** The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings. The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege and the Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege and Deloitte Tax will cooperate with the Client's reasonable instructions relating to the confidentiality privilege. Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties. The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege. Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules. The Client agrees to hold Deloitte Tax harmless from and also assumes responsibility for any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

## Deloitte Tax Privacy Notice

### Introduction

This privacy notice applies to clients who obtain services from Deloitte Tax. Deloitte Tax refers to Deloitte Tax LLP and its subsidiaries.

### Information Collection

Deloitte Tax may collect personally identifiable information ("PII") from you such as:

- Home address
- Home telephone number
- Date of birth
- Government identifiers (such as social security number)

In connection with our client acceptance process, Deloitte Tax may collect PII about you that may be considered sensitive. This could include, for example, history of any criminal activity.

Deloitte Tax may also collect PII about you from, among other places:

- Information you provide directly to us
- Information regarding the services that Deloitte Tax provides or has previously provided to you
- Information Deloitte Tax receives from our affiliated entities or third parties relating to the establishment of our relationship or the provision of services to you

This information can be received in any manner, including in in-person discussions, telephone conversations, and electronic or other written communications.

### Information Use

Deloitte Tax collects PII about you to:

- Establish or maintain our relationship with you
- Provide you with services you have requested
- Keep you informed of services we think may be of interest to you

Without PII, Deloitte Tax may be unable to provide you with the services you have requested.

### Disclosure of Information

Deloitte Tax may share PII about you with others as permitted by contractual agreement or as required by law, such as:

- Our affiliates
- Third parties in connection with the provision of services to you
- Government entities and regulatory bodies
- Those with whom you have requested us to share information

Deloitte Tax requires third parties who perform services for us to agree to treat PII about you confidentially and securely.

Unless restricted by law, regulation, contract or professional standards, Deloitte Tax may transfer PII about you outside the United States to other countries for the purposes described in this privacy notice.

Deloitte Tax will provide notice and obtain your consent before:

- Sharing PII about you with an unaffiliated third party who is not performing services for us, except if such sharing is otherwise permitted by this privacy notice, or
- Using sensitive PII about you for purposes not described in this privacy notice

Deloitte Tax does not sell or lease PII about you to others.

### Access

You may request access to the PII that Deloitte Tax has about you. You may also request the correction, amendment or deletion of PII about you that is inaccurate. Deloitte Tax will treat requests for access, correction, amendment or deletion of PII about you in accordance with its internal policies and applicable legal requirements.

Mr. Robert Bernstein
American Home Mortgage Investment Corp.
January 11, 2008

**Information Security**
Deloitte Tax maintains reasonable physical, administrative and technical safeguards to protect PII from loss, misuse, or unauthorized access, disclosure, alteration or destruction. Our personnel and the personnel of our affiliates are provided access to PII about you only if they have a need to know the information in connection with a legitimate business purpose, such as (i) the provision of services to you or (ii) to help identify other services that Deloitte Tax and its affiliates offer that may be of interest or use to you.

**Changes to This Privacy Notice**
Deloitte Tax reserves the right to change this privacy notice. Deloitte Tax will provide you with a revised privacy notice that reflects such changes as required by law.

**Questions**
If you have any questions or concerns regarding this notice, please contact your engagement partner/principal/direct