UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE[1]

| | |
|---|---|
| In re | ) CASE NO. 07-11049 (CSS) |
| | ) |
| AMERICAN HOME MORTGAGE | ) Chapter 11 |
| ACCEPTANCE, INC. | ) |
| | ) PROOF OF CLAIM |
| Debtor. | ) |
| | ) [Notice hereof filed concurrently in Case |
| | ) No. 07-11047] |

ELVIN VALENZUELA and PHYLLIS VALENZUELA, by and through their undersigned counsel of record, on behalf of themselves and all other members of the general public similarly situated, submit this proof of claim.

1. The basis of this claim is as described in Exhibit "A" hereto, and is evidenced, in part, by loan-related documents, true and correct copies of which are attached hereto as Exhibit "B" and incorporated herein by this reference.

2. No judgment has been entered with respect to this claim.

3. The total amount of this claim at the time this case was filed is not known at this time, but estimated to be not less than $50,000 individually, and not less than $100 million in the

---

[1] This Case is related to and jointly administered with the following: American Home Mortgage Holdings, Inc. 07-11047; American Home Mortgage Investment Corp. 7-11048; American Home Mortgage Servicing, Inc. 07-11050; American Home Mortgage Corp. 07-11051; American Home Ventures LLC 07-11052; Homegate Settlement Services, Inc. 07-11053; and Great Oak Abstract Corp. 07-11054

aggregate, plus statutory attorneys' fees and other amounts as yet undetermined.

4. The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

Dated:  January 10, 2008

                              SPIRO MOSS BARNESS LLP

                                 /s/ Daniel I. Barness

                            By_____
                                DANIEL I. BARNESS
                            (CSB # 104203)
                            11377 W. Olympic Blvd., Fifth Floor
                            Los Angeles, CA 90064
                            Telephone: (310) 235-2468
                            Facsimile (310) 235-2456
                            E-mail: daniel@spiromoss.com

                            Attorneys for Elvin Valenzuela and Phyllis Valenzuela, individually and on behalf of similarly situated members of the general public, Claimants

**EXHIBIT "A" TO PROOF OF CLAIM**

The claims herein arise pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.;* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.;* and other applicable statutory and common law.  Claimants, individually, and on behalf of all others similarly situated, bring this claim against Debtors based, in part, on Debtors'[2] failure to clearly and conspicuously disclose to Claimants and the Class Members, in Debtors' Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Claimants and the Class members would be paying on the Note(s).

This claim also concerns Debtors' unlawful, fraudulent and unfair business acts or practices.  Debtors engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Debtors' profits, even as Debtors knew their conduct would cause many of these consumers to lose their homes through foreclosure.

Claimants, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendant.  The Option ARM loan sold to Claimants and the Class is a deceptively devised financial product. The loan has a variable rate feature with payment caps.

---

[2] As used herein "Debtor/Debtors" refers to the Debtor herein, and all other Debtors in the jointly administered cases to which this case is related, including any parent corporation, subsidiary or joint-venture sister corporation which may be a debtor in any of the jointly administered cases, who are, or may hereafter be found to be, jointly liable with the captioned Debtor to Claimants and to the Class whom they seek to represent.

3

The product was sold based on the promise of a low fixed payment based on a low listed interest rate, when in fact Claimants and the Class were charged a different, much greater interest rate than promised. Further, Debtors failed to disclose, and by omission, failed to inform Claimants of the fact that Debtors' Option ARM loan was designed to, and did, cause negative amortization to occur.

Debtors sold their Option ARM loan product to consumers, including Claimants, in a false or deceptive manner. Debtors' loan documents indicated that the loan would have a very low payment for the first three (3) to five (5) years and there is no indication of negative amortization. In furtherance of their scheme, Debtors listed a low "teaser" rate in the Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter "TILDS") to lure Claimants and the Class members into purchasing Debtors' Option ARM loan product. However, the low "teaser" rate was illusory, a false promise. Claimants and others similarly situated did not receive the benefit of the low rate promised to them. Once execution of Debtors' loan documents was completed, the interest rate applied to Claimants's and Class members' loans was immediately and significantly increased.

Based on the Debtors' representations, Claimants and the Class members agreed to finance their primary residence through Debtors' Option ARM loan. After, the purported three (3) - five (5) year fixed interest period, Claimants and the Class members reasonably believed, based on the representations contained in the documents Debtors provided to Claimants and the Class members, that they would be able to refinance their loan and get a new loan before their scheduled payments increased. However, the payment schedule provided by Debtors failed to disclose, and by omission, failed to inform these consumers that due to the negative amortization

that was purposefully built into these loans, Claimants and the Class members would be unable to refinance their homes as there would be little or no equity left to refinance.

In stark contrast to this reality, Defendant, through the standardized loan documents they created and supplied to Claimants, stated that negative amortization was only a mere possibility. Debtors concealed and failed to disclose the fact that the loan, as presented and designed, in fact, guaranteed negative amortization. Debtors failed to disclose and omitted the objectively material fact that negative amortization was absolutely certain to occur if consumers followed the payment schedule listed by Debtors in the TILDS. This information was objectively material and necessary for consumers to make an informed decision because this would have revealed that the loan's principal balance would increase if the payment schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest and payment rates re-set.

At all times relevant, Defendant, and each of them, knew or should have known, or were reckless in not knowing, that: (i) the payment rate provided to Claimants and the Class members were insufficient to pay both interest and principle; (ii) that negative amortization was certain to occur if Claimants and the Class members made payments according to the payment schedule provided by Defendant; and (iii) that loss of equity and/or loss of Claimants's and the Class members residence was substantially certain to occur if Claimants and the Class members made payments according to the payment schedule provided by Defendant.

In spite of its knowledge, Debtors sold its Option ARM loans with the promise of a low payment and interest rate. Defendant failed to disclose and/or concealed by making partial representations of material facts when Debtors had exclusive knowledge of material facts that negative amortization was certain to occur. This concealed and omitted information was not

5

known to Claimants and the Class members and which, at all times relevant, Debtors failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Claimants and all others similarly situated.  Because the ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note and the payment disclosed by Debtors were insufficient to pay both principle and interest, negative amortization occurred.

The Option ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

Debtors engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

Debtors' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Claimants or others similarly situated would receive a home loan promised.

Claimants contend that these claims should be class claims, and any litigation arising therefrom should be conducted pursuant to F.R. Bankr. Proc. 7023.  Their claims against Debtors are asserted on their own behalf and on behalf of all persons similarly situated in the United States.    The class that Claimants seek to represent is all people who have claims against Debtors as described hereinabove.

The class which Claimants seek to represent is so numerous that joinder of all such persons is impracticable without the class claim/class action mechanism.  Disposition of their claims by way of such class treatment is thus a benefit to the parties and to the Court.  The

class which Claimants represents is easily ascertainable from the loan documentation and other records maintained by Debtor.

There is a well-defined community of interest and common questions of law and fact involved affecting the parties to be represented. There are common facts which establish Debtor's liability under TILA, UFC and other applicable statutory authority and common law, and the same law would apply to those facts. Proof of a common set of facts will establish the right of each member of the class to recover. The remedies of the aggrieved class members will be determined by reference to such common facts and law. The claims of Claimants are typical of those of the class and Claimants will fairly and adequately represent the interests of the class. The class claim mechanism is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class claim treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class claim. The cost to, and burden on, the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

EXHIBIT "B"

EXHIBIT "B"