## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**LENDER OR LENDER'S AGENT:** American Home Mortgage Acceptance, Inc.
1500 W. Shaw Avenue, Suite 403
Fresno, CA  93711

☐ Preliminary   ☒ Final

*DATE:* 06/23/05
*LOAN NO.:*
*Type of Loan:* Conventional
APP NO.:0000898255

**BORROWERS:**   Elvin Valenzuela
Phyllis Valenzuela

**ADDRESS:**      5522 West Perez Avenue
**CITY/STATE/ZIP:**Visalia, CA  93291
**PROPERTY:**     5522 West Perez Avenue
Visalia, CA 93291

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.067  % | $ 385,457.34 | $ 286,015.22 | $ 671,472.56 |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 12 | $937.57 | August 1, 2005 | 12 | $1,007.89 | August 1, 2006 |
| 12 | $1,083.48 | August 1, 2007 | 12 | $1,164.74 | August 1, 2008 |
| 12 | $1,252.10 | August 1, 2009 | 299 | $2,020.41 | August 1, 2010 |
| 1 | $2,020.61 | July 1, 2035 | | | |

**DEMAND FEATURE:**   ☒☒ This loan does not have a Demand Feature.    ☐ This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**
☒☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been   provided to you earlier.
THE CURRENT INDEX RATE IS 2.504%

**SECURITY:**  You are giving a security interest in the property located at:   5522 West Perez Avenue
Visalia, CA 93291

**ASSUMPTION:**   Someone buying this property   ☐ cannot assume the remaining balance due under original mortgage terms
☒☒ may assume, subject to lender's conditions, the remaining balance due under   original mortgage terms.

**FILING / RECORDING FEES:**    $

**PROPERTY INSURANCE:**   ☒☒ Property hazard insurance in the amount of $   291,500.00   with a mortgagee clause to the lender
is a required condition of this loan. Borrower may purchase this insurance from   any insurance company acceptable to the lender.
Hazard insurance   ☐ is   ☒☒ is not available through the lender at an estimated cost of   N/A   for a   year term.

**LATE CHARGES:**   If your payment is more than   15   days late, you will be charged a late charge of   5.000   % of the overdue payment.

**PREPAYMENT:**   If you pay off your loan early, you
☒☒ may   ☐ will not   have to pay a penalty.
☐ may   ☒☒ will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding   non-payment, default, required repayment in full before scheduled date,   and prepayment refunds and penalties.
**e** means estimate

I/We hereby acknowledge reading and receiving a complete copy of this   disclosure.

Elvin Valenzuela _____   BORROWER / DATE      Phyllis Valenzuela _____   BORROWER / DATE

_____ BORROWER / DATE      _____ BORROWER / DATE

**ALTA POLICY** must contain Endorsements 8.1,100,116,111.5 with liability in the amount of our loan.

**LIABILITY SUBJECT ONLY TO:** 2004/05 All PAID

Funds may be used for account of the vestees, and you will record all instruments when you comply with the following:

1.  Issue said form of Policy showing title vested as required herein.
2.  Issue said form of Policy free from encumbrances except items 1,2 pc 3-5ok 6-7 out of preliminary Title Report dated April 22, 2005.

Secondary financing in the amount of $0.00        has been approved.

**FHA OR VHA:   BUYER CANNOT BE CHARGED FOR ANY ENDORSEMENTS TO ALTA POLICIES.**

**TITLE INSURANCE.** A standard ALTA title insurance policy with all necessary endorsements (i.e. adjustable rate, environmental lien, easement, encroachment, address, etc.), and without deletions must be obtained at closing. Any deviation from the standard ALTA policy is unacceptable. No exceptions from coverage, unusual conditions for coverage, etc. are allowed without the express WRITTEN consent of American Brokers Conduit. The title policy must insure that American Brokers Conduit has a valid first lien on the subject property. A title insurance binder dated no more than 30 days prior to closing must be obtained at the closing deleting all exceptions and mortgages. All taxes, bonds, and assessments coming due on or before the due date of the first monthly payment must be paid at closing and are not included in the escrow account being established by American Brokers Conduit. Title insurance must be for no more or less than the amount of the mortgage. **The insured on the title policy must read:** American Brokers Conduit, its successors and assigns **as their interest may appear.**

American Brokers Conduit will require a closing protection letter from the title company prior to closing the loan.

**ESCROW IMPOUNDS FOR TAXES AND/OR INSURANCE.**

All taxes, bonds and assessments coming due on **August 1, 2005**        must be paid at closing and are not included in the escrow account being established by the Lender.

**CLOSING STIPULATION(S)**

The following documents or conditions must be satisfied and/or presented at time of closing. In the event you are unsure of the acceptability of any document(s) you must contact the Lender. In no event may you accept any alternative document(s) or unilaterally waive any requirement unless written authorization is provided to you by the lender.

**All of the documents provided herewith are required to be signed, regardless of whether they appear to be duplicates previously provided to the borrower(s).**

**Stipulations to be satisfied:**

If a Power of Attorney is to be used in connection with this loan closing, you must follow the document execution instructions set forth on ADDENDUM "E".

**The following items are required Prior to Funding:**

1. Broker to provide final 1003. typed - signed by the borrower/broker

2. HUD-1 to evidence payoff of citimtg
wells fargo   with an outstanding balance of $256138
28496
.

3. The Notice of Right to Cancel must be signed at closing.

4. Provide Hazard Policy for a minimum of loan amount or replacement cost coverage, with a minimum of 3 months remaining on policy.

5. Provide copy of appraisers current license.

6. The lock for this loan will expire on 08/22/05.  If the loan will not close

**(Attachment Continued Next Page)**

**Additional Terms and Conditions Attachment (Continued from Addendum B)**

AND fund by this date, please contact Secondary prior to expiration to extend the lock.

7. With the exception of 30-day accounts, evidence of payoff of the following debts must be included in the loan file.

| Borrower | Creditor | Account Number | Balance |
|---|---|---|---|
| Elvin Valenzuela | WELLS FARGO BANK NV | 65465465362041998 | 27613.00 |
| Elvin Valenzuela | CITIMORTGAGE INC | 11914121200 | 252961.00 |

*‑ 0↻ ꟾ ꟷ꘍ꓽ*

## ADJUSTABLE RATE NOTE

### 12-MTA INDEX – PAYMENT AND RATE CAPS

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ____125.000%_ OF THE ORIGINAL AMOUNT (OR $ _364,375.00_____ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

_____June 23, 2005_____          _____Visalia_____          _____California_____

(City)                          (State)

_5522 West Perez Avenue, Visalia, CA 93291_____

(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ____291,500.00_____ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ___American Home Mortgage Acceptance, Inc._____ _____ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. First I will pay interest at a yearly rate of ____1.000__ %. The interest rate I will pay may change. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, "Payments" refer to Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I Will make my monthly payments on ____1st_____ day of each month beginning on __August, 2005_____, I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on ___July 1, 2035_____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at _PO Box 660029, Dallas, TX   75266-0029_____ _____, or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $_937.57_____, unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and Interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of August , 2005 , _____, and on that day every month thereafter. Each such day is called a "Change Date"

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ __Three and 440 Thousandths_____ percentage points __3.440__ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ___Nine and 950 Thousandths_____ _____ percentage points __9.950__ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing _____August 1, 2006_____ , and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 day prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my Payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a

Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to _____125.000% of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that __125.000%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __Five_____ anniversary of the due date of the first monthly payment, and on that same day every __Five_____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

### WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)     _____(Seal)
Elvin Valenzuela                -Borrower   Phyllis Valenzuela             -Borrower

_____(Seal)     _____(Seal)
                                -Borrower                                  -Borrower

_____(Seal)     _____(Seal)
                                -Borrower                                  -Borrower

_____(Seal)     _____(Seal)
                                -Borrower                                  -Borrower

DOC #:943338                    APPL #:0000898255

# GOOD FAITH ESTIMATE
## CENTRAL VALLEY MORTGAGE, INC.

| | |
|---|---|
| Lender: | **CENTRAL VALLEY MORTGAGE** |
| Address: | **1830 South Mooney Blvd.  Suite 100** |
| | **Visalia,  Ca  93277** |
| Applicant(s): | **ELVIN VALENZUELA & PHYLLIS VALENZUELA** |
| Property Address: | **5522 W PEREZ** |
| | **VISALIA, CA 93291** |

| | |
|---|---|
| Sales Price: | |
| Base Loan Amount: | **286,000.00** |
| Total Loan Amount: | **286,000.00** |
| Interest Rate: | **1.000 %** |
| Type of Loan: | **Conventional** |
| Preparation Date: | **May 10, 2005** |
| Loan Number: | **98-2432** |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement which you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | $ | | 1100 | TITLE CHARGES: | $ | |
|---|---|---|---|---|---|---|---|
| 801. A | Origination Fee  @ 1.000% | $ | 2,860.00 | 1101. A | Closing or Escrow Fee | $ | 200.00 |
| 802. | Discount Fee | $ | 0.00 | 1102. | Abstract or Title Search | $ | 0.00 |
| 803. | Appraisal Fee    (S   350.00 Paid) | $ | 0.00 | 1103. | Title Examination | $ | 0.00 |
| 804. A | Credit Report | $ | 17.00 | 1105. | Document Preparation Fee | $ | 0.00 |
| 805. | Lender's Inspection Fee | $ | 0.00 | 1106. | Notary Fee | $ | 75.00 |
| 806. | Mortgage Insurance Application Fee | $ | 0.00 | 1107. | Attorney's Fee | $ | 0.00 |
| 807. | Assumption Fee | $ | 0.00 | 1108. A | Title Insurance | $ | 550.00 |
| 808. | Mortgage Broker Fee | $ | 0.00 | | | $ | |
| 810. | Tax Related Service Fee | $ | 75.00 | | | $ | |
| 811. | Application Fee | $ | 0.00 | | | $ | |
| 812. | Commitment Fee | $ | 0.00 | | | $ | |
| 813. | Lender's Rate Lock-In Fee | $ | 0.00 | | | $ | |
| 814. A | Processing Fee | $ | 395.00 | 1200 | GOVERNMENT RECORDING AND TRANSFER CHARGES: | | |
| 815. | Underwriting Fee | $ | 0.00 | 1201. A | Recording Fee | $ | 100.00 |
| 816. | Wire Transfer Fee | $ | 81.00 | 1202. | City/County Tax/Stamps | $ | 0.00 |
| 817. | Yield spread premium to mortgage broker: | $ | | 1203. | State Tax/Stamps | $ | 0.00 |
| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | 1204. | Intangible Tax | $ | 0.00 |
| 901. A | Interest    @ $7.9444/day for 1 days | $ | 7.94 | | | $ | |
| 902. | Mortgage Insurance Premium | $ | 0.00 | | | $ | |
| 903. | Hazard Insurance Premium | $ | 0.00 | | | $ | |
| 904. | County Property Taxes | $ | 0.00 | | | $ | |
| 905. | Flood Insurance | $ | 0.00 | | | $ | |
| | | $ | | 1300 | ADDITIONAL SETTLEMENT CHARGES: | | |
| | | $ | | 1301. | Survey | $ | 0.00 |
| 1000 | RESERVES DEPOSITED WITH LENDER: | | | 1302. | Pest Inspection | $ | 0.00 |
| 1001. | Hazard Ins.    @ $42.0000/mo. for 2 months | $ | 84.00 | | | $ | |
| 1002. | Mortgage Ins. | $ | 0.00 | | | $ | |
| 1004. | Tax & Assmt.   @ $292.0000/mo. for 3 months | $ | 876.00 | | | $ | |
| 1006. | Flood Insurance | $ | 0.00 | | | $ | |
| 1008. | Aggregate Escrow Adjustment | $ | 0.00 | TOTAL ESTIMATED SETTLEMENT CHARGES: | | $ | 5,320.94 |
| "S"/"B" designates those costs to be paid by Seller/Broker. | | | | "A" designates those costs affecting APR.  "F" designates financed costs. | | | |

| TOTAL ESTIMATED MONTHLY PAYMENT: | | | | TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: (From/To Borrower) | | | |
|---|---|---|---|---|---|---|---|
| Principal & Interest | $ | 919.89 | | Total Loan Amount | +$ | 286,000.00 | |
| Real Estate Taxes | $ | 292.00 | | Payoffs | - $ | 280,867.00 | |
| Hazard Insurance | $ | 42.00 | | Estimated Closing Costs | - $ | 4,353.00 | |
| Flood Insurance | $ | | | Estimated Prepaid Items / Reserves | - $ | 967.94 | |
| Mortgage Insurance | $ | | | Total Paid Items | +$ | 350.00 | |
| Other | $ | | | Other | - $ | | |
| TOTAL MONTHLY PAYMENT | $ | 1,253.89 | | Cash To Borrower | | 162.06 | |

THIS SECTION IS COMPLETED ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED.  Listed below are providers of service which we required you to use.  The charges indicated in the Good Faith Estimate above are based upon the corresponding charge of the below designated providers.

| ITEM NO. | NAME & ADDRESS OF PROVIDER | TELEPHONE NO. | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 0 | | | |
| 0 | | | |
| 0 | | | |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA).  Additional Information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, If your application is to purchase residential property and the Lender will take a first lien on the property.

| | | | |
|---|---|---|---|
| Applicant  **ELVIN VALENZUELA** | 5/10/05  Date | Applicant  **PHYLLIS VALENZUELA** | 5/11/05  Date |
| Applicant | Date | Applicant | Date |

[X] This Good Faith Estimate is being provided by **CENTRAL VALLEY MORTGAGE, INC.**
a mortgage broker, and no lender has yet been obtained.

OMB Approval No. 2502-0265

| A. Settlement Statement | B. Type of Loan |
|---|---|

**First American Title Company**
Final Statement

| | |
|---|---|
| 1-5. Loan Type  Conv. Unins. | |
| 6.    File Number  5405-2651234JB | |
| 7.    Loan Number  881809 | |
| 8.    Mortgage Insurance Case Number | |

C.   Note:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

D.   Name of Borrower:  Elvin Valenzuela, Phyllis Valenzuela
        1030 West Seeger Avenue, Visalia, CA 93277

E.   Name of Seller:

F.   Name of Lender:  American Brokers Conduit, Inc.
        1500 W. Shaw Avenue, Suite 403
        Fresno, CA 93711

G.   Property Location: 1030 West Seeger Avenue, Visalia, CA 93277

H.   Settlement Agent: First American Title Company
        Address: 1850 South Central Street, Visalia, CA 93277

Place of Settlement Address: 1850 South Central Street, Visalia, CA 93277

I.
Settlement Date: 07/01/2005

Print Date: 07/01/2005, 11:29 AM

Disbursement Date: 07/01/2005

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 3,630.16 | 403. Total Deposits | |
| 104. Supplemental Summary | 83,878.33 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| **120. Gross Amount Due From Borrower** | **87,508.49** | **420. Gross Amount Due To Seller** | |
| **200. Amounts Paid By Or In Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 88,000.00 | 502. Settlement charges (line 1400) | |
| 203. Existing loan(s) taken subject | | 503. Existing loan(s) taken subject | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513 | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | **88,000.00** | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from Borrower (line 120) | 87,508.49 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 88,000.00 | 602. Less reductions in amounts due to Seller (line 520) | |
| 303. Cash ( From) (X To) Borrower | 491.51 | 603. | |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____        Date: 7/1/05

File No. 5405-2651234JB

| L. Settlement Charges | | |
|---|---|---|
| **700. Total Sales/Broker's Commission based on price** | | |
| Division of Commission (line 700) as follows | **Paid From Borrower's Funds at Settlement** | **Paid From Seller's Funds at Settlement** |
| 701. | | |
| 702. | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. Items Payable in Connection with Loan** | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee - Central Valley Mortgage | 450.00 | |
| 804. Credit Report - Central Valley Mortgage | 17.00 | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Premium | | |
| 807. Assumption Fee | | |
| 808. Tax Service Fee - American Brokers Conduit, Inc. | 75.00 | |
| 809. Flood Certification Fee - American Brokers Conduit, Inc. | 15.00 | |
| 810. Administration Fee - American Home Mortgage Acceptance, inc. | 595.00 | |
| 811. Wire Fee - American Home Mortgage Acceptance, Inc. | 25.00 | |
| 812. Yield Spread Premium - Central Valley Mortgage          POC $1,760.00 | | |
| 813. Loan Origination Fee - Central Valley Mortgage | 880.00 | |
| 814. Processing Fee - Central Valley Mortgage | 200.00 | |
| Supplemental Summary | | |
| **900. Items Required by Lender to be Paid in Advance** | | |
| 901. Interest | | |
| 902. | | |
| 903. Hazard Insurance Premium for | | |
| 904. | | |
| 905. | | |
| Supplemental Summary | | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Hazard Insurance 4 mo(s) @$44.00/mo | 176.00 | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes 6 mo(s) @$93.03/mo | 558.18 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | -186.02 | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee | | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Fee | | |
| 1106. Notary Fee | | |
| 1107. Attorney Fee | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance – See supplemental page for breakdown of individual fees and payees | 685.00 | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage $88,000.00 | | |
| 1110. Owner's coverage $0.00 | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| 1114. | | |
| 1115. | | |
| 1116. | | |
| 1117. | | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. *Recording fees: Deed $0.00 Mortgage $65.00 Release $0.00 | 65.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Notary to Emilie Freitas | 75.00 | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1314. | | |
| Supplemental Summary | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | **3,630.16** | |

| Supplemental Page<br>HUD-1 Settlement Statement | File No.<br>5405-2651234JB |
|---|---|
| **First American Title Company**<br>**Final Statement** | Loan No.<br>881809 |
| | Settlement Date:<br>07/01/2005 |

Borrower Name & Address:  Elvin Valenzuela, Phyllis Valenzuela
1030 West Seeger Avenue, Visalla, CA 93277

Seller Name & Address:

| Section L. Settlement Charges continued | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 1108.    Supplemental Summary | 685.00 | | |
| a) Eagle OneRate-Line 1108 includes Line 1101 charges - First American Title Company | | 685.00 | |
| 1201.    Supplemental Summary | 65.00 | | |
| a) Record Trust Deed - First American Title Company | | 65.00 | |

| Section J. Summary of Borrower's Transaction continue | | Borrower Charges | Borrower Credits |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | | |
| 104.    Supplemental Summary | 83,878.33 | | |
| a) Principal Balance    - Mission Hills Mortgage | | 83,253.59 | |
| Interest on Payoff Loan 06/30/05 to 07/06/05 @$14.826000/day | | 103.78 | |
| Statement/Forwarding Fee | | 60.00 | |
| Interest to 6-30-05 | | 450.96 | |
| Fax Fee | | 10.00 | |
| 200. Amounts Paid By Or In Behalf of Borrower | | | |

| The following Section is restated from the Settlement Statement Page 1 | | | |
|---|---|---|---|
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | 87,508.49 | 601. Gross Amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 88,000.00 | 601. Less reductions in amounts due to Seller (line 520) | |
| 303. Cash ( From) (X To) Borrower | 491.51 | 603. | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1 Settlement Statement.

LENDER NAME AND ADDRESS:

# SERVICING DISCLOSURE STATEMENT

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. □2601 et seq.) you have certain rights under that Federal law. This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**
If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**
Section 6 of RESPA (12 U.S.C. □2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your loan servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day, excluding public holidays (State or Federal), Saturday and Sunday.

**Damages and Costs**
Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimated**
1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

A. [X] We may assign, sell or transfer the servicing of your loan sometime while the loan is outstanding.
   We are able to service your loan, and we [ ] will [X] will not [ ] haven't decided whether to service your loan.

B. [X] We do not service mortgage loans, and [X] We have not serviced mortgage loans in the past three (3) years. [ ] We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

C. [X] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
   [X] sell all of the mortgage servicing;
   [ ] retain all of the mortgage servicing; or
   [ ] assign, sell or transfer _____ % of the mortgage servicing.

2. For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:
   [ ] 0 to 25%   [ ] 26 to 50%   [ ] 51 to 75%   [X] 76 to 100%

This estimate [ ] does [X] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. A. [ ] We have previously assigned, sold or transferred the servicing of first lien mortgage loans.
   B. [ ] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED (Rounded to Nearest Quartile - 0%, 25%, 50%, 75%, or 100%) |
|------|------|
| 2001 | 100% |
| 2002 | 100% |
| 2003 | 100% |

This information [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.

_Michelle L Vau_ (signature)
LENDER (Signature not Mandatory)          DATE _5/10/05_

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_____   DATE _5/10/05_      _Phyllis Valenzuela_ (signature)   DATE _5/11/05_

_____   DATE                _____   DATE

**INSTRUCTIONS TO PREPARER:** Select either item 3(A) or item 3(B), except if you chose the provision in 1(B) stating: "We do not service mortgage loans, and we have not serviced loans in the past three (3) years", all of item 3 should be omitted. The information in item 3(B) is for the previous three (3) calendar years. The information does not have to include the previous calendar year if the statement is prepared before March 31 of the next calendar year. If the percentage of servicing transferred is less than 12%, the word "nominal" or the actual percentage amount of servicing transfers may be used.

GENESIS 2000, INC. * W17.0 * (800) 882-0504                              Form MSTDisc (08/95)

# DISCLOSURE NOTICES

| Applicant(s) | Property Address |
|---|---|
| Elvin & Phyllis Valenzuela | 5522 W Perez Vis Ca 93291 |

---

[X]   **OCCUPANCY STATEMENT**

This is to certify that I/We   [X] do   [ ] do not intend to occupy the subject property as my/our principal residence. I/We hereby certify under penalty of U.S. Criminal Code Section 1010 Title 18 U.S.C., that the above statement submitted for the purpose of obtaining mortgage insurance under the National Housing Act is true and correct.

**FAIR CREDIT REPORTING ACT**

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of denied credit due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of section 615(b) of the Fair Credit Reporting Act.

**EQUAL CREDIT OPPORTUNITY ACT**

The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. Income which you receive as alimony, child support or separate maintenance need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan. Income from these and other sources, including part-time or temporary employment, will not be discounted by this lender because of your sex or marital status. However, we will consider very carefully the stability and probable continuity of any income you disclose to us. The Federal Agency that administers compliance with this law concerning this creditor is:   **Federal Trade Commission**
**12345 Any Street, Room 13209, Any Town, ST 00000**

[X]   **RIGHT TO FINANCIAL PRIVACY ACT**

I/we acknowledge that this is notice to me/us as required by The Right to Financial Privacy Act of 1978 that the Veterans Administration (in the case of a VA Loan) or Department of Housing and Urban Development (in the case of an FHA Loan) has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to me/us. Financial records involving my/our transactions will be available to the VA (in the case of a VA Loan) or to HUD (in the case of an FHA Loan) without further notice or authorization but will not be disclosed or released to another government agency or department without my/our consent, except as required or permitted by law.

[X]   **INFORMATION DISCLOSURE AUTHORIZATION**

I/We hereby authorize you to release to **CENTRAL VALLEY MORTGAGE, INC.** _____ for verification purposes, Information concerning:   [X] Employment History, dates, title(s), income, hours worked, etc.   [X] Banking (checking & savings) account of record.   [X] Mortgage loan rating, (opening date, high credit, payment amount, loan balance and payment.   [X] Any information deemed necessary in connection with consumer credit report for real estate transaction. This information is for the confidential use of this lender in compiling a mortgage loan credit report. A copy of this authorization may be deemed to be the equivalent of the original and may be used as a duplicate original.

[ ]   **ANTI-COERCION STATEMENT**

The insurance laws of this state provide that the lender may not require the applicant to take insurance through any particular insurance agent or company to protect the mortgaged property. The applicant, subject to the rules adopted by the Insurance Commissioner, has the right to have the insurance placed with an insurance agent or company of his choice, provided the company meets the requirements of the lender. The lender has the right to designate reasonable financial requirements as to the company and the adequacy of the coverage.

I have read the foregoing statement, or the rules of the Insurance Commissioner relative thereto, and understand my rights and privileges and those of the lender relative to the placing of such insurance.

I have selected the following agencies to write the insurance covering the property described above:

Insurance Co. Name: _____
Agent: _____

[X]   **FLOOD INSURANCE NOTIFICATION**

Federal regulations require us to inform you that the property used as security for this loan is located in an area identified by the U.S. Secretary of Housing & Urban Development as having special flood hazards and that in the event of damage to the property caused by flooding in a Federally-declared disaster, Federal disaster relief assistance, if authorized, will be available for the property.

At the closing you will be asked to acknowledge your receipt of this information. If you have any questions concerning this notice, kindly contact your loan officer.

**IMPORTANT:** Please notify your insurance agent that the "loss payee" clause for the mortgagee on both the hazard and flood insurance must read as follows, unless otherwise advised: _____

[X]   **CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES**

I/We hereby acknowledge receipt from **CENTRAL VALLEY MORTGAGE, INC.** _____ of a copy of the book titled "CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES" published by the Federal Reserve Board and the Federal Home Loan Bank Board which is provided in addition to other required adjustable rate mortgage disclosures.

I/We hereby certify that I/we have read the Notices set forth above and fully understand all of the above.

| | | |
|---|---|---|
| _____ | 5/11/05 | Phyllis Valenzuela  5/11/05 |
| APPLICANT | DATE | APPLICANT   DATE |
| _____ | | _____ |
| APPLICANT | DATE | APPLICANT   DATE |

Form DiscNote (03/95)

## MORTGAGE BROKER FEE DISCLOSURE

You have applied to a mortgage broker for a residential mortgage loan. The mortgage broker will submit your application for a residential mortgage loan to a participating lender with which it from time to time contracts upon such terms and conditions as you may request or a lender may require. The lenders have asked that we furnish this form to you to clarify the role of mortgage broker concerning your loan application.

SECTION 1. NATURE OF RELATIONSHIP

In connection with this mortgage loan:

* The mortgage broker may be acting as an independent contractor for clarification.
* The mortgage broker has entered into separate independent contractor agreements with various lenders.
* While the mortgage broker seeks to assist you in meeting your financial needs, it does not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or best terms available in the market.

SECTION 2. THE MORTGAGE BROKER'S COMPENSATION

The lenders whose loan products are distributed by the mortgage broker generally provide their products to the mortgage broker at a wholesale rate.

* The retail price of a mortgage broker offers you-your interest rate; local points and fees-will include the mortgage broker's compensation.
* In some cases, the mortgage broker may be paid all of its compensation by either you or the lender.
* Alternatively, the mortgage broker may be paid a portion of its compensation by both you and the lender. For example, in some cases if you would rather pay a lower interest rate, you may pay higher up-front points and fees.
* Also, in some cases, if you would rather pay less up=front, you may wish to have some or all of the mortgage broker's fees paid directly by the lender, which will result in a higher interest rate and higher monthly payments than you otherwise would be required to pay.
* The mortgage broker may also be paid by the lender based on:
    1. The value of the mortgage loan or the related servicing rights in the market place.
    2. Other services, goods or facilities performed or provided by the mortgage broker to the lender.

You may work with the mortgage broker to select the method in which it receives its compensation depending on your financial needs, subject to the lender's program requirements and credit underwriting guidelines.

The amount of fees and charges that you pay in connection with your loan will be estimated on your Good Faith Estimate. The final amounts will be disclosed on your HUD-1 or HUD-1A Settlement Statement.

By signing below, applicant(s) acknowledge that you have read and understand this document. You also acknowledge that you have received a copy of this document.

Applicant(s)

_____  5/1/05          _____  5/1/05
Name                                      Name                    Date


_____                   _____
Address                                   Address

# APPRAISAL DISCLOSURE

| Borrower Name(s): Elvin E. Phyllis Valenzuela | Lender: **CENTRAL VALLEY MORTGAGE, INC. 1830 SO. MOONEY BLVD., #B VISALIA, CA 93277** |
|---|---|
| Property Address: 5522 W Peace Vis Ca 93291 | Date: 5/10/05 |
| | Loan Number: |

You have the right to a copy of the appraisal report obtained in connection with your application for credit provided that, if required, you have paid for or are willing to pay for the appraisal. You can get a copy of this report by writing to us at the address listed above. We must hear from you no later than 90 days after you are notified about the action taken on your credit application. (If you withdraw your application, you must make your request for an appraisal report within 90 days of the withdrawal.) You can telephone us, instead of writing, but by doing so you are not assured of preserving your rights.

_____ -Borrower    5/10/05 Date

_____ -Borrower    5/11/05 Date

_____ -Borrower    _____ Date

_____ -Borrower    _____ Date

GENESIS 2000, INC. * W17.0 * (800) 882-0504

Form AppDisc (3/05)



# Borrower's Certification & Authorization

### Certification

The undersigned certify the following:

1. I/We have applied for a mortgage loan from   **CENTRAL VALLEY MORTGAGE, INC.**
   In applying for the loan,

   I/We completed a loan application containing various information on the purpose of the loan, the amount and source of the downpayment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/We omit any pertinent information.

2. I/We understand and agree that   **CENTRAL VALLEY MORTGAGE, INC.**
   reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### Authorization to Release Information

To Whom It May Concern:

1. I/We have applied for a mortgage loan from   **CENTRAL VALLEY MORTGAGE, INC.**
   As part of the application process,   **CENTRAL VALLEY MORTGAGE, INC.**
   may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to   **CENTRAL VALLEY MORTGAGE, INC.**
   and to any investor to whom   **CENTRAL VALLEY MORTGAGE, INC.**
   may sell my mortgage, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. **CENTRAL VALLEY MORTGAGE, INC.**       or any investor that purchases the mortgage may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to   **CENTRAL VALLEY MORTGAGE, INC.**
   or the investor that purchased the mortgage is appreciated.

| | | |
|---|---|---|
| Borrower's Signature | 5/10/08 Date | 564177345 Social Security Number |
| Borrower's Signature | 5/11/05 Date | 550082754 Social Security Number |

CENTRAL VALLEY MORTGAGE, INC.

# THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

Lending institutions are prohibited from bringing up, in the taking of applications for loans, certain specific subjects which lend themselves to discrimination. They are as follows:

a) Whether or not you have or will have children.
   (Although inquiring as to the number and age of dependents is proper).

b) Whether or not there exist child care problems.

c) Whether or not there will be interruptions of income due to childbirth.

d) Whether or not you are receiving alimony, child support
   or separate maintenance. (Unless voluntarily disclosed as a
   source of additional income which you wish to be considered).

e) Whether you are widowed, divorced, or single.
   (Allowable designations are: married, unmarried, separated).

f) Whether or not your telephone number is listed.

Lending institutions must take and report action on your application "within a reasonable time." If the application is denied, reasons MUST be given if requested.

THIS IS TO CERTIFY THAT I (WE) HAVE READ THE ABOVE INFORMATION AND THAT A COPY OF THIS FORM HAS BEEN GIVEN TO ME (US) FOR MY (OUR) RECORDS.

| | | | |
|---|---|---|---|
| _Borrower's Signature_ | _5/10/05_ Date | _Phyllis Valenzuela_ Borrower's Signature | _5/11/05_ Date |
| rower's Signature | Date | Borrower's Signature | Date |

V17.0 * (800) 882-0504                                                                 Form ECOA (03/95)



**CENTRAL VALLEY MORTGAGE, INC.**

# THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977

# FAIR LENDING NOTICE

IT IS ILLEGAL TO DISCRIMINATE IN THE PROVISIONS OF OR IN THE AVAILABILITY OF FINANCIAL ASSISTANCE BECAUSE OF THE CONSIDERATION OF:

1. TRENDS, CHARACTERISTICS OR CONDITIONS IN THE NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION, UNLESS THE FINANCIAL INSTITUTION CAN DEMONSTRATE IN THE PARTICULAR CASE THAT SUCH CONSIDERATION IS REQUIRED TO AVOID AN UNSAFE AND UNSOUND BUSINESS PRACTICE; OR

2. RACE, COLOR, RELIGION, SEX, MARITAL STATUS, NATIONAL ORIGIN OR ANCESTRY.

IT IS ILLEGAL TO CONSIDER THE RACIAL, ETHNIC, RELIGIOUS OR NATIONAL ORIGIN COMPOSITION OF A NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION OR WHETHER OR NOT SUCH COMPOSITION IS UNDERGOING CHANGE, OR IS EXPECTED TO UNDERGO CHANGE, IN APPRAISING A HOUSING ACCOMMODATION OR IN DETERMINING WHETHER OR NOT, OR UNDER WHAT TERMS AND CONDITIONS, TO PROVIDE FINANCIAL ASSISTANCE.

THESE PROVISIONS GOVERN FINANCIAL ASSISTANCE FOR THE PURPOSE OF THE PURCHASE, CONSTRUCTION, REHABILITATION OR REFINANCING OF ONE TO FOUR UNIT FAMILY RESIDENCES OCCUPIED BY THE OWNER AND FOR THE PURPOSE OF THE HOME IMPROVEMENT OF ANY ONE TO FOUR UNIT FAMILY RESIDENCE.

IF YOU HAVE QUESTIONS ABOUT YOUR RIGHTS, OR IF YOU WISH TO FILE A COMPLAINT, CONTACT THE MANAGEMENT OF THIS FINANCIAL INSTITUTION OR:

**OFFICE OF THE CONTROLLER OF THE CURRENCY**
**WESTERN DISTRICT**
**50 FREMONT STREET, SUITE 3900**
**SAN FRANCISCO, CA  94105-2292**

# ACKNOWLEDGEMENT OF RECEIPT

I (WE) RECEIVED A COPY OF THIS NOTICE

| | | | |
|---|---|---|---|
| _Borrower's Signature_ | _5/9/05_ Date | _Phillis Valenzuela_ | _5/11/05_ Date |
| Borrower's Signature | Date | Borrower's Signature | Date |

Form FLN (03/95)



# CENTRAL VALLEY MORTGAGE

1830 S Mooney Blvd St B
Visalia Ca 93277
559-733-5010 Fax 559-733-5007

Thank you for your recent application with Central Valley Mortgage. We
are looking forward to doing business with you. The appraisal and credit
report fee is required to process your loan and receive final approval from
our underwriters. This fee varies upon appraiser used and which company is
used to pull the credit. Your good faith estimate has the exact charges
rendered. The fee is paid directly to the companies that charge for their
services. This fee is not charged by Central Valley Mortgage or paid to
Central Valley Mortgage. If for any reason you decided to cancel the
process of your loan this is a non-refundable fee. We make no promises of a
value by the appraiser and give no guarantee of value. The appraiser is
licensed independent contractor and the appraised value will be determined
by the appraiser.

**Thank you**

_____ 5/9/05
Name

_____ 5/11/05
Name



# Central Valley Mortgage
**1830 S. Mooney Blvd Space B**
**Visalia Ca 93277**

### California Credit Score Notice
Notice to the Home Loan Applicant

In connection with your application for a home loan, the lender must disclose to you the score that a credit bureau distributed to users and the lender used in connection with your home loan and the key factors affecting you credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information a credit bureau or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history pattern change, and how credit scoring technologies change.

Because the core is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit repots may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the credit bureau at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The credit bureau plays in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on the loan application.

If you have any question concerning the terms of the loan, contact the lender.

One or more of the following credit bureaus will provide the credit score.

| Experian | Equifax | Transunion |
|---|---|---|
| Po Box 2002 | PO BOX 742041 | PO BOX 4000 |
| Allen Texas 75013 | Atlanta GA. 30374 | Chester, Ca 19016 |
| 888-397-3742 | 800-865-1111 | 866-887-2673 |

Your acknowledgement below signifies that this written notice was provided to you.

_____ 5/6/05
Borrower          Date

_____ 5/11/05
Co-Borrower       Date

DATE: 5/10/05

FROM:

Central Valley Mortgage
1830 South Mooney Blvd Space B
Visalia Ca, 93277

BORROWER(S): Elvin Valenzuela

Phyllis Valenzuela

PROPERTY ADDRESS: 5522 W Perez

Vis Ca

93291

To Whom It May Concern:

The purpose of our current loan request is:

To payoff Debt

_____ 5/10/05
Borrower                              564 17 7345
                                     Social Security

_____
Co-Borrower                          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
                                     Social Security



# CENTRAL VALLEY MORTGAGE

## LOCK IN POLICY

I/We understand and accept the following in regards to locking our loan with Central Valley Mortgage.

1.  Your loan may be locked at any time during your loan process. Depending on the type of loan you have, the length of time on the lock may vary.

2.  There is no fee to lock your loan.

3.  Because the interest rate and points will vary on a daily basis, it is Not the responsibility of Central Valley Mortgage to call you and inform you of a rate change. It is your responsibility to call Central Valley Mortgage to find out what the interest rate and points are.

4.  You must inform your loan officer or His/Her loan processor when you want to lock. Be specific as to interest rate, points and length of time for the lock.

    _____Lock in at _____% @ _____Discount points for ____Days

    _____I we choose not to lock at this time and understand our interest rate and points are not guaranteed until we do so.

I/We acknowledge and accept the above conditions

_____   5/10/05
Loan Consultant     Date

_____
Loan Processor     Date

_____   5/10/05
Borrower           Date

_____   5/11/05
Co/Borrower

OMB Approval No. 2502-0265

| A. Settlement Statement | B. Type of Loan |
|---|---|

## First American Title Company
### Final Statement

| B. Type of Loan | |
|---|---|
| 1-5.  Loan Type  Conv. Unins. | |
| 6.  File Number 5405-2651217JB | |
| 7.  Loan Number 898255 | |
| 8.  Mortgage Insurance Case Number | |

C.  **Note:**  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

D.  Name of Borrower:  Elvin Valenzuela, Phyllis Valenzuela
5522 West Perez Avenue, Visalia, CA 93291

E.  Name of Seller:

F.  Name of Lender:  American Brokers Conduit, Inc.
1500 W. Shaw Avenue, Suite 403
Fresno, CA 93711

G.  Property Location:  5522 West Perez Avenue, Visalia, CA 93291

H.  Settlement Agent: First American Title Company
Address: 1850 South Central Street, Visalia, CA 93277

Place of Settlement Address: 1850 South Central Street, Visalia, CA 93277

I.  Settlement Date: 07/06/2005

Print Date: 07/05/2005, 7:19 PM

Disbursement Date: 07/06/2005

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 7,495.52 | 403. Total Deposits | |
| 104. Supplemental Summary | 254,813.87 | 404. | |
| 105. Supplemental Summary | 28,490.31 | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| **120. Gross Amount Due From Borrower** | **290,799.70** | **420. Gross Amount Due To Seller** | |
| 200. Amounts Paid By Or In Behalf of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 291,500.00 | 502. Settlement charges (line 1400) | |
| 203. Existing loan(s) taken subject | | 503. Existing loan(s) taken subject | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513 | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | **291,500.00** | **520. Total Reduction Amount Due Seller** | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | 290,799.70 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 291,500.00 | 602. Less reductions in amounts due to Seller (line 520) | |
| **303. Cash ( From) (X To) Borrower** | **700.30** | 603. | |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____  Date 7/6/05

\* See Supplemental Page for details.

File No. 5405-2651217JB

## L. Settlement Charges

| 700. Total Sales/Broker's Commission based on price | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| Division of Commission (line 700) as follows | | | |
| 701. | | | |
| 702. | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| **800. Items Payable in Connection with Loan** | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee  - Central Valley Mortgage | POC $400.00 | | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Premium | | | |
| 807. Assumption Fee | | | |
| 808. Tax Service Fee - American Brokers Conduit, Inc. | | 75.00 | |
| 809. Flood Certification Fee - American Brokers Conduit, Inc. | | 15.00 | |
| 810. Administration Fee - American Home Mortgage Acceptance, Inc. | | 595.00 | |
| 811. Wire Fee - American Home Mortgage Acceptance, Inc. | | 25.00 | |
| 812. Yield Spread Premium - Central Valley Mortgage | POC $8,745.00 | | |
| 813. Processing Fee - Central Valley Mortgage | | 395.00 | |
| 814. Broker Fee - Central Valley Mortgage | | 2,915.00 | |
| Supplemental Summary | | | |
| **900. Items Required by Lender to be Paid in Advance** | | | |
| 901. Interest | | | |
| 902. | | | |
| 903. Hazard Insurance Premium for | | | |
| 904. | | | |
| 905. | | | |
| Supplemental Summary | | | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. Hazard Insurance 9 mo(s) @$89.25/mo | | 803.25 | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes 6 mo(s) @$290.83/mo | | 1,744.98 | |
| 1005. Annual assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | -267.71 | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee | | | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title Insurance Binder | | | |
| 1105. Document Fee | | | |
| 1106. Notary Fee | | | |
| 1107. Attorney Fee | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance – See supplemental page for breakdown of individual fees and payees | | 1,055.00 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's coverage $291,500.00 | | | |
| 1110. Owner's coverage $0.00 | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1114. | | | |
| 1115. | | | |
| 1116. | | | |
| 1117. | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. *Recording fees: Deed $0.00 Mortgage $65.00 Release $0.00 | | 65.00 | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps: | | | |
| 1204. | | | |
| 1205. | | | |
| 1206. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Notary to Emilie Freitas | | 75.00 | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| 1314. | | | |
| Supplemental Summary | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | 7,495.52 | |

\* See Supplemental Page for details.

| Supplemental Page<br>HUD-1 Settlement Statement | File No.<br>5405-2651217JB |
|---|---|
| **First American Title Company**<br>Final Statement | Loan No.<br>898255 |
| | Settlement Date:<br>07/06/2005 |

Borrower Name & Address: Elvin Valenzuela, Phyllis Valenzuela
5522 West Perez Avenue, Visalia, CA 93291

Seller Name & Address:

| Section L. Settlement Charges continued | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 1108.    Supplemental Summary | 1,055.00 | | |
| a) Eagle OneRate-Line 1108 includes Line 1101 charges - First American Title Company | | 1,055.00 | |
| 1201.    Supplemental Summary | 65.00 | | |
| a) Record Trust Deed - First American Title Company | | 65.00 | |

| Section J. Summary of Borrower's Transaction continue | | | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | Borrower Charges | Borrower Credits |
| 104.    Supplemental Summary | 254,813.87 | | |
| a) Principal Balance    - CitiMortgage c/o Five Star Service Corporation | | 252,371.84 | |
| Interest on Payoff Loan 06/01/05 to 07/08/05 @$49.072300/day | | 1,864.75 | |
| Late Charge | | 106.18 | |
| Statement/Forwarding Fee | | 60.00 | |
| Reconveyance Fee | | 45.00 | |
| Recording Fee | | 7.00 | |
| PMI Premium | | 359.10 | |
| 105.    Supplemental Summary | 28,490.31 | | |
| a) Principal Balance    - Wells Fargo | | 27,613.51 | |
| Interest on Payoff Loan 07/06/05 to 07/08/05 @$7.260000/day | | 21.78 | |
| Termination Fees | | 500.00 | |
| Fax Fee | | 10.00 | |
| Statement/Forwarding Fee | | 30.00 | |
| Reconveyance Fee | | 45.00 | |
| Interest through 75-05 | | 270.02 | |
| 200. Amounts Paid By Or In Behalf of Borrower | | | |
| The following Section is restated from the Settlement Statement Page 1 | | | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | 290,799.70 | 601. Gross Amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 291,500.00 | 601. Less reductions in amounts due to Seller (line 520) | |
| 303. Cash ( From) (X To) Borrower | 700.30 | 603. | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

RESPA (Rev-2/95)

# Initial Escrow Account Disclosure Statement

App #    0000898255

Date:    06/23/05    Loan Number:    Case Number:

Servicer's Name and Address:

American Home Mortgage Acceptance, Inc.
538 Broadhollow Road
Melville, NY 11747

Toll Free Number:

Borrowers:    Elvin Valenzuela    Property Address:
Phyllis Valenzuela    5522 West Perez Avenue
Visalia, CA 93291

Mailing Address:    5522 West Perez Avenue
Visalia, CA 93291

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.

| Month (or Period) | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Initial Deposit: | | | $ | 1,493.02 |
| 08/05 | 332.83 | .00 | | 1,825.85 |
| 09/05 | 332.83 | .00 | | 2,158.68 |
| 10/05 | 332.83 | .00 | | 2,491.51 |
| 11/05 | 332.83 | 1,745.00 | County Property Taxes | 1,079.34 |
| 12/05 | 332.83 | .00 | | 1,412.17 |
| 01/06 | 332.83 | .00 | | 1,745.00 |
| 02/06 | 332.83 | .00 | | 2,077.83 |
| 03/06 | 332.83 | 1,745.00 | County Property Taxes | 665.66 |
| 04/06 | 332.83 | .00 | | 998.49 |
| 05/06 | 332.83 | .00 | | 1,331.32 |
| 06/06 | 332.83 | 504.00 | Hazard Insurance | 1,160.15 |
| 07/06 | 332.83 | .00 | | 1,492.98 |

**(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)**

Cushion selected by servicer:    $    665.66

[ ] Your    mortgage payment for the coming year will be $    of which $    will be for principal and interest and $    will go into your escrow account.

[X] Your first    Monthly    mortgage payment for the coming year will be $    1,270.40 of which $    937.57    will be for principal and interest and $    332.83    will go into your escrow account. The terms of your loan may result in changes to the monthly principal and interest payments during the year.

^~ -503R (5302)    VMP MORTGAGE FORMS - (800)521-7291    2/95



## EMAIL CLOSING PACKAGE COVER PAGE

**RECIPIENT INFORMATION:**

|  |  |
|---|---|
| Recipient Company: | FIRST AMERICAN TITLE COMPANY |
| Recipient Contact: | |
| Recipient Phone #: | (559) 635-6810 |
| Recipient E-Mail: | |

**SENDER INFORMATION:**

|  |  |
|---|---|
| Sender Company: | American Home Mortgage |
| Sender Contact: | **Julie Black** |
| Telephone #: | 559-650-4321 |
| Sender Fax #: | |
| Sender Email: | JBlack@abconduit.com |

**LOAN INFORMATION:**

|  |  |
|---|---|
| Loan Application #: | 0000898255 |
| Borrower(s): | Elvin Valenzuela and Phyllis Valenzuela |
| Property Address: City,State and Zip: | 5522 West Perez Avenue Visalia , CA  93291 |
| Loan Closing Date: | June 23, 2005 |



**Prepayment Fee Note Addendum**

This Note Addendum is made this ___23rd___ day of _ June, 2005 _____and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of        **American Home Mortgage Acceptance, Inc.**

(the "Lender") and dated as of even date herewith ( the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the _ **THIRD** _____ anniversary of the date of the Note, the Prepayment Fee shall be equal to ____ **TWO** ____ percent (2 **000** %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

**NOTICE TO THE BORROWER**
**Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**Elvin Valenzuela** _____(Seal)          **Phyllis Valenzuela** _____(Seal)
                                          -Borrower                                              -Borrower

_____(Seal)          _____(Seal)
                                          -Borrower                                              -Borrower

_____(Seal)          _____(Seal)
                                          -Borrower                                              -Borrower

_____(Seal)          _____(Seal)
                                          -Borrower                                              -Borrower

MULTISTATE PREPAY NOTE RIDER
MTA-11/04
    Doc # 943398/ Image: 943398.prn  App# 0000898255
    Page 2 of 2

**Prepayment Rider**

This Prepayment Rider is made this ___23rd___day of _____June, 2005_____
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower")
to secure Borrower's Note (the "Note") to   **American Home Mortgage Acceptance, Inc.**

(the "Lender" or "Noteholder").

of the same date and covering the Property described in the Security Instrument  and located at;
    **5522 West Perez Avenue  Visalia, CA 93291**

[Property Address]

**PREPAYMENT COVENANTS.  In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:**

I have the right to make payments of principal before they are due. Any payment of
principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid
principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid
principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the ___THIRD___ anniversary of
the date after the execution of the Security Instrument, the Prepayment Fee shall be equal
to _____Two_____percent ( 2.000  %) of the original loan
amount. Thereafter, prepayment shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a
full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting
from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the
foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but
unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am
doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount
prepaid and then to the principal balance of the Note which shall not reduce the amount of

monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Elvin Valenzuela                      -Borrower

_____(Seal)
Phyllis Valenzuela                    -Borrower

_____(Seal)
                                      -Borrower

_____(Seal)
                                      -Borrower

_____(Seal)
                                      -Borrower

_____(Seal)
                                      -Borrower

_____(Seal)
                                      -Borrower

_____(Seal)
                                      -Borrower

## ADJUSTABLE RATE RIDER

### 12-MTA INDEX - PAYMENT AND RATE CAPS

THIS ADJUSTABLE RATE RIDER is made this __23rd__ day of __June, 2005_____,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower")   to   secure   Borrower's   Adjustable   Rate   Note   (the   "Note")   to
American Home Mortgage Acceptance, Inc.
(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:
5522 West Perez Avenue, Visalia, CA  93291

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT
INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL
AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY
BORROWED, BUT NOT MORE THAN ___125.000%___ OF THE ORIGINAL
AMOUNT (OR $__364,375.00__ ). MY INTEREST RATE CAN NEVER EXCEED
THE LIMIT STATED IN THE NOTE AND RIDER.  A BALLOON PAYMENT MAY
BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

### A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.
First I will pay interest at a yearly rate of __1.000__ %. The interest rate I will pay may change.
The interest rate I will pay will thereafter change in accordance with Section 4 of the Note.

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the _____1st_____ day of _____August, 2005_____, and on that day every month thereafter. Each such day is called a "Change Date"

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____Three and 440 Thousandths_____ percentage points _____3.440_____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than _____9.950_____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing _____August 1st, 2006_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine

the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 day prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated

### Amortization

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to   125.000%   of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that     125.000%  limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the   Five   anniversary of the due date of the first monthly payment, and on that same day every  Five   year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

DOC #:943341                    APPL #:0000898255

                                                                        Rev 7/27/04

monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee;  (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee

DOC #:943342          APPL #:0000898255

Rev 7/27/04

to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.


_____(Seal)       _____(Seal)
Elvin Valenzuela          -Borrower   Phyllis Valenzuela       -Borrower


_____(Seal)       _____(Seal)
                          -Borrower                            -Borrower


_____(Seal)       _____(Seal)
                          -Borrower                            -Borrower


_____(Seal)       _____(Seal)
                          -Borrower                            -Borrower


DOC #:943343                    APPL #:0000898255

Page 5 of 5

Recording Requested By:

Return To:
American Home Mortgage Acceptance, Inc.
520 Broadhollow Road
Melville, NY 11747

Prepared By:
Julie Black
1500 W. Shaw Ave
Suite 403
Fresno, CA
93711 ———————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN  100314000008982554

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated June 23, 2005                    ,
together with all Riders to this document.
(B) "Borrower" is Elvin Valenzuela and Phyllis Valenzuela, Husband amd Wife

Borrower is the trustor under this Security Instrument.
(C) "Lender" is American Home Mortgage Acceptance, Inc.

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #:324541                      APPL #:0000898255
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

-6A(CA) (0005).01
Page 1 of 15    UM31 9906.01      Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is  538 Broadhollow Road, Melville, NY  11747

(D) "**Trustee**" is First American Title

(E) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "**Note**" means the promissory note signed by Borrower and dated  June 23, 2005
The Note states that Borrower owes Lender Two Hundred Ninety One Thousand Five
Hundred and No/100                                                                      **Dollars**
(U.S. $291,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   July 1, 2035              .

(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

**PREPAYMENT RIDER**

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC #:324542                    APPL #:0000898255

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor In Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                     of   Tulare                                            :

| [Type of Recording Jurisdiction] | [Name of Recording Jurisdiction] |

Lot 102 of Marseille Subd. Unit No. 2, In The City of Visalia, County of Tulare, State of California, According to the Map thereof recorded in Book 38, Page 36 of Maps, Tulare County Records.

Parcel ID Number:  077-250-053-000                             which currently has the address of
5522 West Perez Avenue                                                                                    [Street]
Visalia                                                    [City] , California 93291         [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324543                        APPL #:0000898255

                                                                 Initials: _____

-6A(CA) (0005).01                        Page 3 of 15                                           Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

DOC #:324548                    APPL #:0000898255

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC #:324549                              APPL #:0000898255

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC  #:324550                              APPL #:0000898255

 -6A(CA) (0005).01                     Page 10 of 15                    Initials: _____            Form 3005  1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower´s Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower´s Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC  #:324551          APPL #:0000898255

Initials: _____

-6A(CA) (0005).01                Page 11 of 15                Form 3005  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC  #:324552          APPL #:0000898255

Initials: _____

-6A(CA) (0005).01                    Page 12 of 15                    Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324553                    APPL #:0000898255

Initials: _____

-6A(CA) (0005).01                    Page 13 of 15                    Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
Elvin Valenzuela                        -Borrower

_____ (Seal)
Phyllis Valenzuela                      -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

**State of California**
**County of** Tulare

}  ss.

On                                    before me,

                                                                    personally appeared

Elvin Valenzuela and Phyllis Valenzuela

                                            , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_____  _____  _____(Seal)



DOC  #:324555              APPL #:0000898255

-6A(CA) (0005).01              Page 15 of 15      Initials: _____      Form 3005  1/01

## ADDENDUM C-INSURANCE COVERAGES

**INSURANCE COVERAGES:**

The following insurance coverages which are indicated must be obtained at the closing, and be reviewed by you to make certain that they are correct and in full force and effect.  The insurance coverages must be evidenced by the standard documentation used in your state. Do not close this loan if you are not certain that the following insurance coverages are correct, are in full force and effect, and properly protect the Lender.

        **X    TITLE INSURANCE.**  A standard ALTA title insurance policy with all necessary endorsements (i.e. adjustable rate, environmental lien, easement, encroachment, address, etc.), and without deletions must be obtained at closing.  Any deviation from the standard ALTA policy is unacceptable.  No exceptions from coverage, unusual conditions for coverage, etc. are allowed without the express WRITTEN consent of American Home Mortgage Acceptance, Inc..  The title policy must insure that American Home Mortgage Acceptance, Inc. has a valid first lien on the subject property. A title insurance binder dated no more than 30 days prior to closing must be obtained at the closing deleting all exceptions and mortgages. All taxes, bonds, and assessments coming due on or before the due date of the first monthly payment must be paid at closing and are not included in the escrow account being established by American Home Mortgage Acceptance, Inc..  Title insurance must be for no more or less than the amount of the mortgage. **The insured on the title policy must read:**

**American Home Mortgage Acceptance, Inc., its successors and assigns as their interest may appear.**

        **ALTA POLICY** must contain Endorsements 8.1,100,116,111.5 with liability in the amount of our loan.
        **LIABILITY SUBJECT ONLY TO:** 2004/05 All PAID
        Funds may be used for account of the vestees, and you will record all insturments when you comply with the following:
        1.  Issue said form of Policy showing title vested as required herein.
        2.  Issue said form of Policy free from encumbrances except items 1,2 pc 3-5ok 6-7 out of preliminary Title Report dated April 22, 2005
        Secondary financing in the amount of $0.00 has been approved.
        **FHA OR VA : BUYER CANNOT BE CHARGED FOR ANY ENDORSEMENTS TO ALTA POLICIES.**

        **X    HAZARD INSURANCE.** Hazard Insurance must be evidenced by an insurance policy (in New York, a binder is acceptable) from and insurance company with a Bests rating of "B+" or better, and a paid receipt.  For purchase transactions, a new policy effective for one year from the date of the closing with a paid receipt for the entire premium must be provided at closing by the borrower.  Insurance must be for full replacement value or for $0.00 , with a deductible of not more than $1,000.00. The policy must include a standard loss payee clause naming American Home Mortgage Acceptance, Inc., its successors and assigns as their interest may appear, PO Box 100504, Florence, SC 29501-0504.

Addendum D

# CORRESPONDENT/BROKER FEES

As the settlement agent, you are responsible for collecting from the borrower, all amounts due the correspondent / broker at the time of closing. The fees due are set forth below and on the Hud-1 statement. **These fees have not been deducted from the amount funded.**

The total amount due the correspondent must be deducted from the amount disclosed and a check issued by you for that amount, or you may collect certified funds for the amount due from the borrower.

In addition to the amounts due the correspondent /broker from the borrower, lender has included in the amount funded a servicing release premium in the amount of  **$8,745.00**  which is reflected on the Hud-1 as a P.O.C. item from the lender to the correspondent.

Please issue a check for the premium payable to the correspondent/broker and forward same along with the amount due from the borrower, **$3,310.00**  directly to the correspondent at the address set forth below.

Correspondent / Broker Address:

CENTRAL VALLEY MORTGAGE INC.
1830 S. MOONEY BLVD, SUITE 100
VISALIA CA 93277

| HUD # | DESCRIPTION | POC | BAMT | SAMT | OAMT |
|-------|-------------|-----|------|------|------|
| 816 | Broker Application Fee to CENTRAL VALLEY MORTGAGE INC. | | | | |
| 817 | Broker Credit Report Fee | | | | |
| 818 | Broker Appraisal | ( 400.00 ) | | | |
| 819 | Broker Courier Fee | | | | |
| 820 | Broker Fee to CENTRAL VALLEY MORTGAGE INC. | | 2,915.00 | | |
| 821 | Broker Origination to CENTRAL VALLEY MORTGAGE INC. | | | | |
| 822 | Broker Discount to CENTRAL VALLEY MORTGAGE INC. | | | | |
| 823 | Broker Processing to CENTRAL VALLEY MORTGAGE INC. | | 395.00 | | |
| 824 | Broker Other 4 to CENTRAL VALLEY MORTGAGE INC. | | | | |

## ADDENDUM  E

## POWER OF ATTORNEY INSTRUCTIONS

POWER OF ATTORNEY DOCUMENT EXECUTION INSTRUCTIONS

If this loan will close using a Power of Attorney, the Agent or Attorney in Fact must execute all of the loan documents on behalf of the Principal as follows:

1. The Agent or Attorney in Fact must sign the Principals name on the signature line above the Principal's name and next to that signature print the words "by his/her attorney in fact" then sign his/her own name (the attorney in facts name).

EXAMPLE

Jane Doe gives John Doe a Power of Attorney, all loan documents would be signed as follows:

(Jane Doe's signature) by (John Doe signature) her attorney in fact.


   2. A photocopy of the executed power of attorney must be returned to the lender with the loan documents.



# DEFINITION OF TRUTH-IN-LENDING TERMS

## ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

## PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

## FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

## AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate/Settlement Statement (HUD-1 or 1A). For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

## TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable) over the life of the loan.

## PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable) over the life of the loan. These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

| Form **4506-T**<br>(January 2004)<br><br>Department of the Treasury<br>Internal Revenue Service | **Request for Transcript of Tax Return**<br>▶ **Do not sign this form unless all applicable parts have been completed.**<br>**Read the instructions on page 2.**<br>▶ **Request may be rejected if the form is incomplete, illegible, or any required**<br>**part was blank at the time of signature.** | OMB No. 1545-1872 |
|---|---|---|

**TIP:** Use new Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use **Form 4506**, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| **1a** Name shown on tax return. If a joint return, enter the name shown first.<br>Elvin Valenzuela | **1b First social security number on tax return or**<br>**employer identification number (see instructions)**<br>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 |
|---|---|
| **2a** If a joint return, enter spouse's name shown on tax return | **2b Second social security number if joint tax return** |

**3**   Current name, address (including apt., room, or suite no.), city, state, and ZIP code

Elvin Valenzuela
5522 West Perez Avenue, Visalia, CA  93291

**4**   Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

**5**   If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**CAUTION:** *Lines 6 and 7 must be completed if the third party requires you to complete Form 4506-T. Do not sign Form 4506-T if the third party requests that you sign Form 4506-T and lines 6 and 7 are blank.*

**6**   **Product requested.** Most requests will be processed within 10 business days. If the product requested relates to information from a return filed more than 4 years ago, it may take up to 30 days. Enter the return number here and check the box below. ▶ _____

**a**   **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are generally available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years  .  .  .  .  .  .  .  .  .  .  .  .  ☐

**b**   **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns  .  .  .  .  .  .  .  .  .  .  ☐

**c**   **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ☐

**d**   **Verification of Nonfiling,** which is proof from the IRS that you did not file a return for the year  .  .  .  .  .  .  .  .  ☐

**e**   **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2003, filed in 2004, will not be available from the IRS until 2005. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ☐

**CAUTION:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

**7**   **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T.

_____ / _____ / _____          _____ / _____ / _____          _____ / _____ / _____          _____ / _____ / _____

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

|  |  |  | Telephone number of taxpayer on<br>line 1a or 2a<br>(   ) |
|---|---|---|---|
| **Sign<br>Here** | ▶ Signature (see instructions) | Date |  |
|  | ▶ Title (if line 1a above is a corporation, partnership, estate, or trust) |  |  |
|  | ▶ Spouse's signature | | Date |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 37667N          Form **4506-T** (1-2004)

Doc # 943067/ Image: 4506Tf1.prn App# 0000898255

Form 4506-T (1-2004)            Page **2**

## A Change To Note

• **New Form 4506-T**, Request for Transcript of Tax Return, is used to request tax return transcripts, tax account transcripts, W-2 information, 1099 information, verification of non-filing, and a record of account. **Form 4506**, Request for Copy of Tax Return, is now used only to request copies of tax returns.

## Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series) and one for all other transcripts.

**Note:** *If you are requesting more than one transcript or other product and the chart below shows two different service centers, mail your request to the service center based on the address of your most recent return.*

### Chart for individual transcripts (Form 1040 series)

| If you lived in and filed an individual return: | Mail or fax to the Internal Revenue Service at: |
| --- | --- |
| Maine, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team 310 Lowell St. Stop 679 Andover, MA 01810<br><br>978-691-6859 |
| Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, West Virginia, Rhode Island | RAIVS Team 4800 Buford Hwy. Stop 91 Chamblee, GA 30341<br><br>678-530-5326 |
| Arkansas, Colorado, Kentucky, Louisiana, New Mexico, Oklahoma, Tennessee, Texas | RAIVS Team 3651 South Interregional Hwy. Stop 6716 Austin, TX 78741<br><br>512-460-2272 |
| Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888<br><br>559-253-4992 |
| Delaware, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, Wisconsin | RAIVS Team Stop 841-6700 Kansas City, MO 64999<br><br>816-823-7667 |
| Ohio, Virginia | RAIVS Team 5333 Getwell Rd. Stop 2826 Memphis, TN 38118<br><br>901-546-4175 |

| Connecticut, District of Columbia, Maryland, New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team DP SE 135 Philadelphia, PA 19255-0695<br><br>215-516-2931 |
| --- | --- |

### Chart for all other transcripts

| If you lived in: | Mail to the Internal Revenue Service at: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team Mail Stop 6734 Ogden, UT 84201<br><br>801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800F Cincinnati, OH 45250<br><br>859-669-3592 |

**Line 1b.** Enter your employer identification number if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 11 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Tax Products Coordinating Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send the form to this address. Instead, see **Where to file** on this page.

♻ *Printed on recycled paper*

Form **4506-T**
(January 2004)

Department of the Treasury
Internal Revenue Service

# Request for Transcript of Tax Return

► Do not sign this form unless all applicable parts have been completed.
Read the instructions on page 2.
► Request may be rejected if the form is incomplete, illegible, or any required
part was blank at the time of signature.

OMB No. 1545-1872

**TIP:** Use new Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use Form **4506**, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a  Name shown on tax return. If a joint return, enter the name shown first. | 1b  First social security number on tax return or employer identification number (see instructions) |
|---|---|
| Phyllis Valenzuela | 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 |

| 2a  If a joint return, enter spouse's name shown on tax return | 2b  Second social security number if joint tax return |
|---|---|
| | |

**3**  Current name, address (including apt., room, or suite no.), city, state, and ZIP code

Phyllis Valenzuela
5522 West Perez Avenue, Visalia, CA  93291

**4**  Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

**5**  If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**CAUTION:** Lines 6 and 7 must be completed if the third party requires you to complete Form 4506-T. **Do not** sign Form 4506-T if the third party requests that you sign Form 4506-T and lines 6 and 7 are blank.

**6**  **Product requested.** Most requests will be processed within 10 business days. If the product requested relates to information from a return filed more than 4 years ago, it may take up to 30 days. Enter the return number here and check the box below.  ►_____

**a**  **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are generally available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years . . . . . . . . . . . . . . . . . . ☐

**b**  **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns . . . . . . . . . . . . . . ☐

**c**  **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**d**  **Verification of Nonfiling,** which is proof from the IRS that you did not file a return for the year . . . . . . . . . . ☐

**e**  **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2003, filed in 2004, will not be available from the IRS until 2005. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 . . . . . . . . . . . . . . . . . . . ☐

**CAUTION:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**7**  **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T.

_____/_____/_____   _____/_____/_____   _____/_____/_____   _____/_____/_____

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
(      )

**Sign Here**

► Signature (see instructions)                    Date

► Title (if line 1a above is a corporation, partnership, estate, or trust)

► Spouse's signature                              Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 37667N          Form **4506-T** (1-2004)

Doc # 943067/ Image: 4506Tf1.prn App# 0000898255

Form 4506-T (1-2004)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page **2**

## A Change To Note

● **New Form 4506-T**, Request for Transcript of Tax Return, is used to request tax return transcripts, tax account transcripts, W-2 information, 1099 information, verification of non-filing, and a record of account. **Form 4506**, Request for Copy of Tax Return, is now used only to request copies of tax returns.

## Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series) and one for all other transcripts.

**Note:** *If you are requesting more than one transcript or other product and the chart below shows two different service centers, mail your request to the service center based on the address of your most recent return.*

## Chart for individual transcripts (Form 1040 series)

| If you lived in and filed an individual return: | Mail or fax to the Internal Revenue Service at: |
| --- | --- |
| Maine, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team 310 Lowell St. Stop 679 Andover, MA 01810<br><br>978-691-6859 |
| Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, West Virginia, Rhode Island | RAIVS Team 4800 Buford Hwy. Stop 91 Chamblee, GA 30341<br><br>678-530-5326 |
| Arkansas, Colorado, Kentucky, Louisiana, New Mexico, Oklahoma, Tennessee, Texas | RAIVS Team 3651 South Interregional Hwy. Stop 6716 Austin, TX 78741<br><br>512-460-2272 |
| Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888<br><br>559-253-4992 |
| Delaware, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, Wisconsin | RAIVS Team Stop 841-6700 Kansas City, MO 64999<br><br>816-823-7667 |
| Ohio, Virginia | RAIVS Team 5333 Getwell Rd. Stop 2826 Memphis, TN 38118<br><br>901-546-4175 |

| Connecticut, District of Columbia, Maryland, New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team DP SE 135 Philadelphia, PA 19255-0695<br><br>215-516-2931 |
| --- | --- |

## Chart for all other transcripts

| If you lived in: | Mail to the Internal Revenue Service at: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team Mail Stop 6734 Ogden, UT 84201<br><br>801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800F Cincinnati, OH 45250<br><br>859-669-3592 |

**Line 1b.** Enter your employer identification number if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information. Providing your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 11 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Tax Products Coordinating Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send the form to this address. Instead, see **Where to file** on this page.

 Printed on recycled paper

**LENDER:** American Home Mortgage Acceptance, Inc.

**LOAN AMOUNT:** $291,500.00

**BORROWER(S):**
Elvin Valenzuela
Phyllis Valenzuela

**PROPERTY ADDRESS:**
5522 West Perez Avenue
Visalia, CA   93291

## COMPLIANCE AGREEMENT

In consideration of the mortgage loan ("the loan") made by the Lender to the undersigned and to induce the Lender to make the Loan, the undersigned Borrower(s), do(es) hereby represent, covenant, and agree as follows:

Upon request of the Lender or closing agent for Lender, or Lender's successors or assigns, the undersigned Borrower(s) will re-execute any document or instrument signed in connection with the Loan, or will execute any document or instrument that should have been signed at or before the closing of the Loan, or which was incorrectly drafted and/or incorrectly signed, and agree to fully cooperate in the adjustment or correction of clerical errors and in the execution or correction of any and all loan closing documentation deemed necessary or desirable in the reasonable discretion of the Lender to sell, convey, guaranty or market the Loan to any entity, including but not limited to, an investor, the Federal National Mortgage Association (FNMA), the Government National Mortgage Association (GNMA), the Federal Home Loan Mortgage Corporation (FHLMC), the Department of Housing and Urban Development, the Veterans Administration, or any Municipal Bonding Authority.

Failure or refusal of Borrower(s) to execute the required additional documents, or to correct those already executed within ten (10) days of Lenders request to do so, shall constitute a default under the terms of the loan documents and shall give Lender the option of declaring all sums secured by the loan documents immediately due and payable.

DATED:

_____
Elvin Valenzuela

_____
Phyllis Valenzuela

Sworn to before me this

_____
Notary Public

# CALIFORNIA
## Insurance Disclosure

**Loan Number**
0000898255

**Borrower**
Elvin Valenzuela
Phyllis Valenzuela

**Property Address**
5522 West Perez Avenue, Visalia, CA   93291

California Civil Code Section 2955.5(a) states:

"No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

Your acknowledgment below signifies that this written notice was provided to you pursuant to the state statute.

| | | | |
|---|---|---|---|
| Elvin Valenzuela | Date | Phyllis Valenzuela | Date |
| | Date | | Date |
| | Date | | Date |
| | Date | | Date |

-1039(CA)  (0001)    DOC  #:329491     VMP MORTGAGE FORMS - (800)521-7291     APPL #:0000898255     1/00
UM31 0001



Form **W-9**
(Rev. January 2002)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give form to the requester.
Do not send to the IRS.

Name

Elvin Valenzuela

Business name, if different from above

Check appropriate box: [X] Individual/Sole proprietor   [ ] Corporation   [ ] Partnership   [ ] Other ▶ _____   [ ] Exempt from backup withholding

Address (number, street, and apt. or suite no.)

5522 West Perez Avenue

City, state, and ZIP code

Visalia, CA  93291

List account number(s) here (optional)

Requester's name and address (optional)

American Home Mortgage Acceptance, Inc.
538 Broadhollow Road
Melville, NY  11747

*Print or type. See Specific Instructions on page 2.*

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 2.

Note: *If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

Social security number

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

or

Employer identification number

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, **and**

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here | Signature of U.S. person ▶ _____  Date ▶ _____

## Purpose of Form

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

If you are a foreign person, use the appropriate Form W-8. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

Note: *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments after December 31, 2001 (29% after December 31, 2003). This is called "backup withholding."

Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 2 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions on page 2 and the separate **Instructions for the Requester of Form W-9.**

### Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

(VMP) -9030   (0202).01          Form **W-9**   (Rev. 1-2002)
VMP MORTGAGE FORMS - (800)521-7291          DOC #:65701   APPL #:0000898255
Page 1 of 2          UM51 0202.01



Form W-9 (Rev. 1-2002)

## Specific Instructions

**Name.** If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Exempt from backup withholding.** If you are exempt, enter your name as described above, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the Instructions for the Requester of Form W-9.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

Note: If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

## Part I - Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.**

If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are an LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) above), and are owned by an individual, enter your SSN (or "pre-LLC" EIN, if desired). If the owner of a disregarded LLC is a corporation, partnership, etc., enter the owner's EIN.

Note: See the chart on this page for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office. Get Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web site at www.irs.gov.

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note: Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

Caution: A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

## Part II - Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see Exempt from backup withholding above.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

### Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

Form **W-9**
(Rev. January 2002)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give form to the requester.
Do not send to the IRS.

| | |
|---|---|
| Name | |
| Phyllis Valenzuela | |
| Business name, if different from above | |

Check appropriate box: [X] Individual/Sole proprietor  [ ] Corporation  [ ] Partnership  [ ] Other ▶  [ ] Exempt from backup withholding

Address (number, street, and apt. or suite no.)
5522 West Perez Avenue

City, state, and ZIP code
Visalia, CA  93291

Requester's name and address (optional)
American Home Mortgage Acceptance, Inc.
538 Broadhollow Road
Melville, NY  11747

List account number(s) here (optional)

*Print or type. See Specific Instructions on page 2.*

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part 1 instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 2.

**Note:** *If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

Social security number
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

or

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), **and**
2. I am not subject to backup withholding because: **(a)** I am exempt from backup withholding, or **(b)** I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or **(c)** the IRS has notified me that I am no longer subject to backup withholding, **and**
3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here | Signature of U.S. person ▶ | | Date ▶

## Purpose of Form

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**Use Form W-9 only** if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

**If you are a foreign person, use the appropriate Form W-8, see Pub. 515,** Withholding of Tax on Nonresident Aliens and Foreign Entities.

**Note:** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments **after** December 31, 2001 (29% **after** December 31, 2003). This is called "backup withholding."

Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 2 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions on page 2 and the separate **Instructions for the Requester of Form W-9.**

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

VMP-9030 (0202).01        Form **W-9**  (Rev. 1-2002)        DOC #:65701    APPL #:0000898255
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 2

UM51 0202.01



Form W-9 (Rev. 1-2002)

## Specific Instructions

**Name.** If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Exempt from backup withholding.** If you are exempt, enter your name as described above, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the Instructions for the Requester of Form W-9.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**Note:** *If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.*

## Part I - Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.**

If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a **sole proprietor** and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are an LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) above), and are owned by an individual, enter your SSN (or "pre-LLC" EIN, if desired). If the owner of a disregarded LLC is a corporation, partnership, etc., enter the owner's EIN.

**Note:** *See the chart on this page for further clarification of name and TIN combinations.*

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office. Get Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at www.irs.gov.

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** *Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.*

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II - Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see Exempt from backup withholding above.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

### Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
|    b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your **individual name**, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** *If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.*

(USPS)-9030 (0202).01

# SIGNATURE/NAME AFFIDAVIT

**DATE:**   June 23, 2005

**LOAN #:**   0000898255

**BORROWER:**   Elvin Valenzuela & Phyllis Valenzuela

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

| Elvin Valenzuela | | |
|---|---|---|
| (Print or Type Name) | | Signature |
| Phyllis Valenzuela | | |
| (Print or Type Name) | | Signature |
| | | |
| (Print or Type Name) | | Signature |
| | | |
| (Print or Type Name) | | Signature |

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

| | | |
|---|---|---|
| (Print or Type Name) | | Signature |
| | | |
| (Print or Type Name) | | Signature |
| | | |
| (Print or Type Name) | | Signature |
| | | |
| (Print or Type Name) | | Signature |

and that                                                                                        are one
and the same person.

Subscribed and sworn (affirmed) before me
this                  day of                              ,                    .

_____
Notary Public in and for

the State of
County of

My Commission Expires:

VMP -304 (9101)        VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291        1/91

Doc #: 062701

# Borrower's Certification & Authorization

## Certification

APP # 0000898255

The undersigned certify the following:

1. I/We have applied for a mortgage loan from        American Home Mortgage Acceptance, Inc.
   *(lender)* . In applying for the loan, I/we completed a loan
   application containing various information on the purpose of the loan, the amount and source of the down
   payment, employment and income information, and assets and liabilities. I/We certify that all of the
   information is true and complete. I/We made no misrepresentations in the loan application or other
   documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that        American Home Mortgage Acceptance, Inc.
   *(lender)*   reserves the right to change the mortgage loan review process
   to a full documentation program. This may include verifying the information provided on the application with
   the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly
   make any false statements when applying for this mortgage, as applicable under the provisions of Title 18,
   United States Code, Section 1014.

## Authorization to Release Information

To Whom It May Concern:

1. I/We have applied for a mortgage loan from        American Home Mortgage Acceptance, Inc.
   *(lender)* . As part of the application process,
   American Home Mortgage Acceptance, Inc.                                                    *(lender)*
   may verify information contained in my/our loan application and in other documents required in connection
   with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to        American Home Mortgage Acceptance, Inc.
   *(lender)* , and to any investor to whom
   American Home Mortgage Acceptance, Inc.                                    *(lender)*  may sell my/our mortgage,
   any and all information and documentation that they request. Such information includes, but is not limited to,
   employment history and income; bank, money market, and similar account balances; credit history; and
   copies of income tax returns.

3. American Home Mortgage Acceptance, Inc.
   *(lender)*  or any investor that purchases the mortgage may address this authorization to any party named in the
   loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to        American Home Mortgage Acceptance, Inc.
   *(lender)*  or the investor that purchased the mortgage is appreciated.

**NOTICE TO BORROWERS:**   This is notice to you as required by the Right to Financial Privacy Act of 1978 that
HUD/FHA has a right of access to financial records held by financial institutions in connection with the
consideration or administration of assistance to you. Financial records involving your transaction will be
available to HUD/FHA without further notice or authorization but will not be disclosed or released by this
institution to another Government Agency or Department without your consent except as required or permitted
by law.

Date: _____  _____

| | | |
|---|---|---|
| Elvin Valenzuela | (Borrower's Signature) | 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 |
| | | (Social Security Number) |
| Phyllis Valenzuela | (Borrower's Signature) | 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 |
| | | (Social Security Number) |

∧—-50 (9210)            VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291                      10/92

DOC #:065401     Image:1050          APPL #:0000898255



# OCCUPANCY AGREEMENT

**DATE:**  June 23, 2005
**BORROWER:**  Elvin Valenzuela
Phyllis Valenzuela


**LOAN #:**  0000898255
**PROPERTY ADDRESS:**  5522 West Perez Avenue
Visalia, California  93291


The undersigned Borrower(s) of the above captioned property understand that one of the conditions of the loan is that Borrower(s) occupy the subject property and Borrower(s) do hereby certify as follows:

1. Borrower intends to occupy the property as Borrower's primary residence.

2. Borrower intends to occupy the property during the 12 month period immediately following the loan closing as the primary residence of the Borrower (i.e., the property will be "owner occupied").

3. If Borrower's intention changes prior to the loan closing, Borrower agrees to notify Lender immediately of that fact.

4. Borrower understands that Lender may not make the loan in connection with subject property without this Occupancy Agreement.

5. Borrower acknowledges Lender has relied upon the Borrower's representation of occupancy in securing said loan, the interest rate or funding said loan.

**THE UNDERSIGNED BORROWER(S) ACKNOWLEDGES AND AGREES THAT:**

**1. ANY MISREPRESENTATION OF OCCUPANCY BY BORROWER(S);**

**2. BORROWER(S) FAILURE TO OCCUPY THE PROPERTY AS THE PRIMARY RESIDENCE (i.e. OWNER-OCCUPIED) DURING THE 12 MONTH PERIOD FOLLOWING THE LOAN CLOSING;**

**SHALL CONSTITUTE A DEFAULT UNDER THE NOTE AND SECURITY INSTRUMENT EXECUTED IN CONNECTION WITH SAID LOAN AND, UPON THE OCCURRENCE OF SAID DEFAULT, THE WHOLE SUM OF PRINCIPAL AND INTEREST PAYABLE PURSUANT TO SAID NOTE PLUS COSTS AND FEES SHALL BECOME IMMEDIATELY DUE AT THE OPTION OF THE HOLDER THEREOF AND/OR LENDER MAY ADJUST THE INTEREST RATE TO BE EQUIVALENT TO THAT OF A NON-OWNER OCCUPIED LOAN.**

Borrower(s) understand that it is a Federal Crime punishable by fine or imprisonment or both to knowingly make any false statement concerning any of the above facts, as applicable under the provisions of Title 18 U.S.C., Sec. 1014.

I declare that the foregoing Agreement is true and correct and agree to said terms of Agreement allowing Lender discretion to call loan due and/or adjust the interest rate based upon any misrepresentation of occupancy.


| Borrower  Elvin Valenzuela | Date | Borrower  Phyllis Valenzuela | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

**-599** (9008).03        VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291        8/90

**NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW FEDERAL RESERVE REGULATION Z**
**NOTICE OF RIGHT TO RESCIND (GENERAL)**

**NOTICE OF RIGHT TO CANCEL**

_____ Conventional _____ ACCOUNT NO. ___0000898255___ ___ _____
(Identification of Transaction)

**1. Your Right to Cancel**

      You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

      (1)    The date of the transaction, which is                ; or
      (2)    The date you received your Truth in Lending disclosures; or
      (3)    The date you received this notice of your right to cancel.

      If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

      You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**2. How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
              American Home Mortgage
              520 Broadhollow Road
              Melville, NY 11747 Attn. **Mail Stop 800**

      You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

      If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____     _____

SIGNATURE                                           DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____     _____     _____     _____
BORROWER/OWNER  Elvin Valenzuela     DATE     BORROWER/OWNER               DATE

_____     _____     _____     _____
BORROWER/OWNER               DATE     BORROWER/OWNER               DATE

DOC #:942349                 APPL #:0000898255
-68 (9712)    UM31 9712.02        12/97
VMP MORTGAGE FORMS - (800)521-7291

**NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW FEDERAL RESERVE REGULATION Z**
**NOTICE OF RIGHT TO RESCIND (GENERAL)**

**NOTICE OF RIGHT TO CANCEL**

Conventional _____    ACCOUNT NO. __0000898255__
(Identification of Transaction)

**1. Your Right to Cancel**

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1) The date of the transaction, which is                          ; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**2. How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747 **Attn. Mail Stop 800**

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                                                    DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____          _____          _____          _____
BORROWER/OWNER  Elvin Valenzuela          DATE          BORROWER/OWNER                                 DATE

_____          _____          _____          _____
BORROWER/OWNER                             DATE          BORROWER/OWNER                                 DATE

DOC #:942349                    APPL #:0000898255
-68 (9712)    UM31 9712.02        12/97
VMP MORTGAGE FORMS · (800)521-7291

**NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW FEDERAL RESERVE REGULATION Z**
**NOTICE OF RIGHT TO RESCIND (GENERAL)**

**NOTICE OF RIGHT TO CANCEL**

Conventional _____ **ACCOUNT NO.** 0000898255
(Identification of Transaction)

**1. Your Right to Cancel**

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)   The date of the transaction, which is                                        ; or
(2)   The date you received your Truth in Lending disclosures; or
(3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**2. How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747 **Attn. Mail Stop 800**

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                                                              DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

| | | | |
|---|---|---|---|
| BORROWER/OWNER  Phyllis Valenzuela | DATE | BORROWER/OWNER | DATE |
| BORROWER/OWNER | DATE | BORROWER/OWNER | DATE |

DOC #:942349                        APPL #:0000898255
-68 (9712)    UM31 9712.02            12/97
VMP MORTGAGE FORMS - (800)521-7291

**NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW FEDERAL RESERVE REGULATION Z**
**NOTICE OF RIGHT TO RESCIND (GENERAL)**

**NOTICE OF RIGHT TO CANCEL**

Conventional _____   ACCOUNT NO. __0000898255____
(Identification of Transaction)

**1. Your Right to Cancel**

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)   The date of the transaction, which is                                    ; or
(2)   The date you received your Truth in Lending disclosures; or
(3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**2. How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747 **Attn. Mail Stop 800**

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of                (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____                                    _____
SIGNATURE                                                            DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____   _____        _____   _____
BORROWER/OWNER  Elvin Valenzuela    DATE          BORROWER/OWNER                      DATE

_____   _____        _____   _____
BORROWER/OWNER            DATE                    BORROWER/OWNER                      DATE

DOC #:942349                          APPL #:0000898255
^~ -68 (9712)    UM31 9712.02          12/97
VMP MORTGAGE FORMS - (800)521-7291

**NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW FEDERAL RESERVE REGULATION Z**
**NOTICE OF RIGHT TO RESCIND (GENERAL)**

**NOTICE OF RIGHT TO CANCEL**

_____Conventional_____ _____ ___ ____    ACCOUNT NO. ___0000898255_____ ____
(Identification of Transaction)

**1. Your Right to Cancel**

> You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:
>
> (1) The date of the transaction, which is                                                    ; or
> (2) The date you received your Truth in Lending disclosures; or
> (3) The date you received this notice of your right to cancel.
>
> If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.
>
> You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**2. How to Cancel**

> If you decide to cancel this transaction, you may do so by notifying us in writing, at:
>                          American Home Mortgage
>                          520 Broadhollow Road
>                          Melville, NY 11747  **Attn. Mail Stop 800**
>
> You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.
>
> If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of
>                              (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
> **I WISH TO CANCEL**
>
> _____        _____
> SIGNATURE                                      DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____          _____
BORROWER/OWNER   Phyllis Valenzuela    DATE    BORROWER/OWNER                      DATE

_____          _____
BORROWER/OWNER                        DATE    BORROWER/OWNER                      DATE

DOC #:942349                          APPL #:0000898255
^~ -68 (9712)    UM31 9712.02            12/97
     VMP MORTGAGE FORMS - (800)521-7291



# TAX INFORMATION SHEET

**Application Number:** 0000898255    **BORROWER(S):** Elvin Valenzuela, Phyllis Valenzuela
**PROPERTY ADDRESS:** 5522 West Perez Avenue Visalia, CA 93291

| Tax Information: | Total annual total tax: | Last installment paid date: | Next installment due date: |
| --- | --- | --- | --- |
| **County Property Taxes** | $3,490.00 | 03/01/05 | 11/01/05 |

**Tax authorities - list the name and address for the taxing authority for each:**

**County Property Taxes**

Name of Collector _____        Name of Collector _____

Address _____        Address _____

**Tax ID Number/Parcel #/Apn#:** 077-250-053-000

Name of Collector _____        Section: _____

Address _____        Block: _____

Name of Collector _____        Lot: 102

Address _____

**Closing Agents Certification: I certify that all taxes due within 60 days of closing will be paid by the closing agent or attorney.**

Closing Agent: _____        Date: _____

Document No. 8800J5/(11/00)

# RESPA SERVICING DISCLOSURE

Lender: American Home Mortgage Acceptance, Inc.
        1500 W. Shaw Avenue, Suite 403
        Fresno, CA 93711

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. ``Servicing'' refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, *whether or not your loan servicing is transferred.* If you send a ``qualified written request'' to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A ``qualified written request'' is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1. The following is the best estimate of what will happen to the        servicing of your mortgage loan:

[X] We may assign, sell or transfer the servicing of your loan while the loan is outstanding.    We [X] are able to service your loan and we [ ] will [ ] will not [X] haven't decided whether to service your loan.

**OR**

[ ] We do not service mortgage loans,    [ ] and we have not serviced mortgage loans in the past three years.    We [ ] presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

[ ] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:

[ ] sell all of the mortgage servicing    [ ] retain all of the mortgage servicing

[ ] assign, sell or transfer        % of the mortgage servicing

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is:

_____ [0 to 25%] or [NONE]    __X__ 26 to 50%    _____ 51 to 75%    _____ [76 to 100%] or [ALL]

This estimate [ ] does [X] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. [ ] We have previously assigned, sold, or transferred the servicing of federally related mortgage loans.

**OR**

[X] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| Year | Percentage of Loans Transferred | (Rounded to nearest quartile - 0%, 25%, 50%, 75%, or 100%) |
|------|--------------------------------|--------------|
| 2002 | 75%-100% % | |
| 2003 | 75%-100% % | |
| 2004 | 50%-75% % | |

This information [ ] does [X] does not include assignments, sales or transfers to affiliates or subsidiaries.

June 12, 2005                                    American Home Mortgage Acceptance, Inc.
Date                                             Present Servicer or Lender

**ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT**

**I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.**

Applicant   Elvin Valenzuela                    Date        Applicant   Phyllis Valenzuela                    Date

Applicant                                        Date        Applicant                                        Date

**TAX ESCROW ACCOUNT DESIGNATION OF**
**MORTGAGE INVESTING INSTITUTION**
**TO RECEIVE TAX BILLS**


I designate the Bank or other Mortgage Investing Institution(s) listed below,its successors and assigns to receive all tax bills for my real property (described below) for so long as the real property tax escrow account now being established shall remain in effect.


**(1) BORROWER(S):**

                    Elvin Valenzuela
                    Phyllis Valenzuela

**(2) PROPERTY ADDRESS:**

                    5522 West Perez Avenue
                    Visalia, CA   93291

**(3) Section, Block, and Lot:**
                    ,   , 102

**(4) Mailing Address (If different from #2 above):**



**(5) Signatures:**

                    DATED:


                    _____
                    Elvin Valenzuela

                    _____
                    Phyllis Valenzuela

**(6) Mortgage Investing Institution:**


Document No. 960901/(9/97)

## TEMPORARY MORTGAGE PAYMENT COUPONS

Application Number:  1000898255

Due Date:  December 1, 2005

Amount Due:                        $1,270.40

Remit to:
      American Home Mortgage Servicing, Inc.
      ATT: Payment Processing
      PO Box 660029
      Dallas, TX 75266-0029
      Customer Service:  1-877-304-3100

------------------------------------------------------------
(Cut along dotted line above)

Application Number:  1000898255

Due Date:  January 1, 2006

Amount Due:                        $1,270.40

Remit to:
      American Home Mortgage Servicing, Inc.
      ATT: Payment Processing
      PO Box 660029
      Dallas, TX 75266-0029
      Customer Service:  1-877-304-3100

------------------------------------------------------------
(Cut along dotted line above)
(Cut along dotted line above)

Application Number:  1000898255

Due Date:  February 1, 2006

Amount Due:                        $1,270.40

Remit to:    American Home Mortgage Servicing, Inc.
      ATT: Payment Processing
      PO Box 660029
      Dallas, TX 75266-0029
      Customer Service:  1-877-304-3100

------------------------------------------------------------
(Cut along dotted line above)

Application Number:  1000898255
Due Date:  March 1, 2006
Amount Due:                        $1,270.40
Remit to:
      American Home Mortgage Servicing, Inc.
      ATT: Payment Processing
      PO Box 660029
      Dallas, TX 75266-0029
      Customer Service:  1-877-304-3100

------------------------------------------------------------
(Cut along dotted line above)

Application Number:  1000898255
Due Date:  April 1, 2006
Amount Due:                        $1,270.40
Remit to:
      American Home Mortgage Servicing, Inc.
      ATT: Payment Processing
      PO Box 660029
      Dallas, TX 75266-0029
      Customer Service:  1-877-304-3100

------------------------------------------------------------
(Cut along dotted line above)
Document No. 961502/(10/00)

American Home Mortgage Acceptance, Inc.
538 Broadhollow Road
Melville , NY  11747

**MONTHLY PAYMENT INFORMATION LETTER**

Application Number:  1000898255


**BORROWER(S):**
Elvin Valenzuela,  Phyllis Valenzuela
**PROPERTY ADDRESS:**
5522 West Perez Avenue
Visalia, CA   93291




Dear Borrower(s):

We wish to congratulate you on the purchase/refinance of your residence and
sincerely hope that you will enjoy the many benefits of home ownership.

In accordance with the terms of the Note and Mortgage, your first monthly
payment is due on the 1st of every month.  Your payments should be mailed to
the Bank at the following address:


    American Home Mortgage Servicing, Inc.
    ATT: Payment Processing
    PO Box 660029
    Dallas, TX 75266-0029

During the term of your loan you may expect the amount of your monthly payment
to fluctuate because of changing requirements for taxes, insurance and
assessments.  Your payment must be received by the Bank prior to the 16th of
each month in order to avoid a late charge.  At present and until further
notice, your monthly payment is as follows:


**PRINCIPAL AND INTEREST:**          $937.57

**MONTHLY ESCROW DEPOSITS:**
Real Estate Taxes      $290.83
Fire Insurance         $42.00

**TOTAL MONTHLY ESCROW:**       $332.83

**TOTAL MONTHLY PAYMENT:**      $1,270.40

In case you do not receive the regular monthly coupons before your first
payment is due, kindly use one of the enclosed temporary coupons when making
that payment.  Should you have any questions regarding your payment please
contact the Customer Service Department at (877) 304-3100, please reference
your loan number, 1000898255.

## CALIFORNIA PER DIEM INTEREST DISCLOSURE

Lender:  American Home Mortgage Acceptance, Inc.
538 Broadhollow Road, Melville, NY  11747

Borrower(s): Elvin Valenzuela, Phyllis Valenzuela

Property Address: 5522 West Perez Avenue
Visalia, CA  93291

In this disclosure, the terms "I," "me," and "my" mean the above-named borrower(s), and the terms "you" and "your" mean the above-named Lender.

I understand and acknowledge that pursuant to applicable California law:

- You may not commence to accrue, and I will not be required to pay, per diem interest on my loan on a day that is more than one (1) day prior to recording of the mortgage or deed of trust securing repayment of my loan (the "Security Instrument").
- Notwithstanding the foregoing, I may request that you arrange for the recording of the Security Instrument on a Monday or on a day immediately following a bank holiday.
- If you agree to my request to arrange for the recording of the Security Instrument on a Monday or on a day immediately following a bank holiday:

  I. per diem interest will commence to accrue on the business day immediately preceding the day of recording;
  II. This may result in additional per diem interest charges that I will be required to pay; and
  III. You must disclose to me in writing (1) the amount of additional per diem interest charge to accommodate recording on a Monday or on a day immediately following a bank holiday, and (2) that it may be possible to avoid the additional per diem charge by recording the Security Instrument on a day immediately following a business day.

My choice is indicated below:

☐    Please arrange for the recording of the Security Instrument on a day immediately following a business day.

☐    Please arrange for the recording of the Security Instrument on _____, a date that is either a Monday or a day immediately following a bank holiday.  I understand that in order to accommodate recording on that date, I will be charged, and I agree to pay, additional per diem interest for ____ ____ days at $8.10 per day, for a total additional per diem interest charge of $ ____ ____.  I also understand that it may be possible to avoid this additional per diem interest charge by recording the Security Instrument on a day immediately following a business day.

By signing below, I acknowledge that I have received and read this disclosure.  This disclosure is neither a contract nor a commitment to lend.

Elvin Valenzuela _____    Date _____        Phyllis Valenzuela _____    Date _____

_____    Date _____        _____    Date _____

Doc # 942893/ Image: CAPDID.prn  App# 0000898255

## DISCLOSURE OF CREDIT SCORE INFORMATION

| Borrower Name:<br>Elvin Valenzuela | Lender:<br>American Home Mortgage Acceptance, Inc.<br>538 Broadhollow Road<br>Melville, NY 11747 |
|---|---|
| Property Address:<br>5522 West Perez Avenue<br>Visalia, CA 93291 | |
| | Date:<br>June 12, 2005 |

We are providing the following credit score information in connection with your loan application.

| | Experian<br>P.O. Box 2002<br>Allen, TX 75013<br>1-888-397-3742 | Equifax<br>P.O. Box 740241<br>Atlanta, GA 30374<br>1-800-685-1111 | Trans Union<br>P.O. Box 4000<br>Chester, PA 19016<br>1-866-887-2673 |
|---|---|---|---|
| **Credit Score Provider** | | | |
| **Current/Most Recent Credit Score** | | 690 | |
| **Key Factors Adversely Affecting Score** | | 14 - Length of time accounts have been established<br>28 - Number of accounts established<br>08 - Number of recent inquiries<br>10 - Proportion of balance to high credit on bank revolving or all revolving accounts | |
| **Range of Possible Credit Scores** | | 300 - 850 | |
| **Date of Credit Score** | | June 12, 2005 | |

## CREDIT SCORE NOTICE

| Borrower Name(s):<br>Elvin Valenzuela, Phyllis Valenzuela | Lender:<br>American Home Mortgage Acceptance, Inc.<br>538 Broadhollow Road<br>Melville, NY  11747 |
|---|---|
| | Date:<br>June 12, 2005 |

### NOTICE TO THE HOME LOAN APPLICANT

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

One or more of the following consumer reporting agencies will provide the credit score:

| **Experian** | **Equifax Credit Information Services** | **Trans Union** |
|---|---|---|
| P.O. Box 2002 | P.O. Box 740241 | P.O. Box 4000 |
| Allen, TX 75013 | Atlanta, GA 30374 | Chester, PA 19016 |
| 1-888-397-3742 | 1-800-685-1111 | 1-866-887-2673 |

Your acknowledgment below signifies that this written notice was provided to you.

| Borrower  Elvin Valenzuela | Date | Borrower  Phyllis Valenzuela | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

DOC #:335141                                        APPL #:0000898255



## EQUAL CREDIT OPPORTUNITY ACT NOTICE
### Applicable to All States

The Federal Equal Opportunity Act prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this is Federal Trade Commission, 11000 Wilshire Boulevard, Suite 13209, Los Angeles, CA 90024.

#### ACKNOWLEDGMENT OF RECEIPT

I/We received a copy of this notice.

| | | | |
|---|---|---|---|
| Borrower's Signature | Date | Borrower's Signature | Date |
| Borrower's Signature | Date | Borrower's Signature | Date |

## CALIFORNIA FAIR LENDING NOTICE
### Applicable to California Properties Only

### THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977
### STATE OF CALIFORNIA

It is illegal to discriminate in the provision of or in the availability of financial assistance because of the consideration of:

1.  Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation, unless the financial institution can demonstrate in the particular case that such consideration is required to avoid an unsafe and unsound business practice; or

2.  Race, color, religion, sex, marital status, national origin or ancestry.

It is illegal to consider the racial, ethnic, religious or national origin composition of a neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change, in appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.

These provisions govern financial assistance for the purpose of the purchase, construction, rehabilitation or refinancing of one-to-four unit family residences occupied by the owner and for the purpose of the home improvement of any one-to-four unit family residence.

If you have any questions about your rights, or if you wish to file a complaint, contact the management of this financial institution or:

Department of Corporations
320 West 4th Street, Suite 750
Los Angeles, CA 90013-1105

**Notice to California Applicants: A married applicant may apply for an individual account.**

## OCCUPANCY CERTIFICATION

DATE: JUNE 12, 2005                  APPLICATION NUMBER: 0000898255
APPLICANT (S): ELVIN VALENZUELA      ADDRESS:  5522 WEST PEREZ AVENUE
               PHYLLIS VALENZUELA             VISALIA, CA 93291


Gentleman:

The undersigned, having applied for a loan to be secured by a Mortgage or Deed of Trust on the referenced property, certifies as follows (check one):


_____A.  PRINCIPAL RESIDENCE:  The property will be occupied by me/us as our primary
         residence.


_____B.  SECOND HOME: The property will be a second home used in addition to my/our
         primary residence(s).  Any rental income from the property may not be used to qualify
         for the mortgage application.


_____C.  INVESTMENT PROPERTY:  This property will not be occupied by me/us and will be
         considered strictly an investor unit.

I/We fully understand that this certification is made for the purpose of determining eligibility, the applicable interest rate, and fees associated with this loan. I/We fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false insured or guaranteed loans under the provisions of Title 18, United States Code, Section 1014.


Date: _____      Applicant: _____

Date: _____      Co-Applicant: _____

Date: _____      Co-Applicant: _____

Date: _____      Co-Applicant: _____

Loan No: 121901608

Elvin VALENZUELA
5522 W PEREZ AVENUE
VISALIA, CA 93291

Date:    August 11, 2005

Borrower:   Elvin VALENZUELA

Address:   5522 W PEREZ AVENUE, VISALIA, CA 93291

RE: Application #   121901608

Dear Valued Customer(s):

Your mortgage broker/lender,   Central Valley Mortgage Inc
has submitted your loan application to IndyMac Bank, F.S.B. to make a credit decision on your loan application.
In connection with your loan application, we are enclosing the documents below which are marked with an 'X' . Some of these
documents require you to complete them by signing and dating the document and returning in the enclosed self-addressed, stamped
envelope. We appreciate your quick response to returning the necessary documents so that we may complete your loan application.
Please read the following instructions for each document provided:

## DOCUMENTS REQUIRING ACTION:

[X]    PRIVACY POLICY DISCLOSURE STATEMENT: This document provides our policy with respect to your private personal
financial information. Please retain this Disclosure for your records.

[X]    APPRAISAL DISCLOSURE: This document explains your rights to receive a copy of the appraisal report for the property
which is the subject of the loan request. There are two copies enclosed. Please have ALL applicants sign and date this disclosure.
Return the completed disclosure and keep one copy for your records.

[ ]    RESPA SERVICING DISCLOSURE: This document explains your rights if the servicing of your loan is transferred to another
company. There are two copies enclosed. Please have ALL applicants sign and date this disclosure. Return the completed
disclosure and keep one copy for your records.

[X]    ADJUSTABLE RATE MORTGAGE, BALLOON OR HOME EQUITY LINE OF CREDIT PROGRAM DISCLOSURE: This
document provides information on the Adjustable Rate Mortgage or Home Equity Line of Credit program you have selected. There
are two copies enclosed. Please have ALL applicants sign and date this disclosure. Return the completed disclosure and keep one
copy for your records.

[X]    DISCLOSURE NOTICE: This document provides information to you regarding insurance and other items. Please have ALL
applicants sign and date this document. Return completed document and keep one copy for your records.

[ ]    ESCROW ACCOUNT DISCLOSURE: This document provides information on Escrow/Impound Accounts. Please complete
and have ALL applicants sign and date this document. Return completed document and keep one copy for your records.

[ ]    FLOOD INSURANCE DISCLOSURE: This document provides flood insurance information. It also gives you notice that your
property is in a Special Flood Hazard Area and you need to obtain flood insurance coverage. Please have all applicants sign and date
this document. Return the completed document and keep one copy for your records.

[X]    BORROWER DATE OF FUNDING REQUEST: This document provides information regarding the interest on your loan .
Please have all applicants sign and date this document. Return the completed document and keep one copy for your records. (CA)

[ ]    NOTICE CONCERNING EXTENSIONS OF CREDIT: This notice contains important information regarding Texas Cash Out
loans. Please have all applicants sign and date this document. Return the completed document and keep one copy for your records.

[ ]    NOTICE OF INTENT TO APPLY FOR JOINT CREDIT: This notice acknowledges your intent to apply for joint credit.

## DOCUMENTS WITH NO ACTION REQUIRED:

[ ]    DEFINITION OF TRUTH-IN-LENDING TERMS: This document provides definitions to the terms used in the Truth-in-Lending
Statement (NOTICE TO CUSTOMER REQUIRED BY LAW AND FEDERAL RESERVE REGULATION Z). Please retain this document
for your records.

[ ]    TRUTH-IN-LENDING STATEMENT (NOTICE TO CUSTOMER REQUIRED BY LAW AND FEDERAL RESERVE
REGULATION Z): This disclosure provides information on the cost of the loan over the life of the loan. Please retain this document for
your records.

[ ]    GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES: This disclosure provides information on the cost of obtaining the
loan. Please retain this document for your records.

[ ]    REQUIRED SERVICE PROVIDER NOTICE: This disclosure provides information on service providers used in connection
with your loan application. Please retain this disclosure for your records.

[ ]    DISCLOSURE OF CANCELLATION OF PRIVATE MORTGAGE INSURANCE/LENDER PAID MORTGAGE
INSURANCE/SELF-INSURANCE BY LENDER AND/OR PRIVATE MORTGAGE INSURANCE DISCLOSURE. These disclosures
provide information regarding your rights with respect to the cancellation of mortgage insurance. Please retain this Disclosure for your
records.

[X]    ANTI-PREDATORY LENDING DISCLOSURE: This Disclosure provides information regarding No Income Verification Loans,
Cash Out or Prepayment features you may have selected on your loan. Please retain this Disclosure for your records.

[ ]    DISCOUNT POINT DISCLOSURE: This disclosures describes the option to pay additional discount points to obtain a lesser
interest rate. Please retain this disclosure for your records. (AK, GA, IL, MA, NJ, NY, NM, NC)

[ ]    BUYING YOUR HOME BOOKLET: This booklet describes the costs involved in obtaining a loan for the purchase of a
property. Please retain this booklet for your records.

[ ]    CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES: This booklet explains what an adjustable rate mortgage
is and how the interest rate and payment can change during the term of the loan. Please retain this booklet for your records.

[X]    UNDERSTANDING THE ROLE OF YOUR MORTGAGE BROKER AND MORTGAGE BROKER COMPENSATION: This
brochure will assist you in understanding the specific part of the mortgage loan transaction related to the mortgage broker
compensation. Please retain this brochure for your records.

[X]    CONSUMER HANDBOOK ON WHAT YOU SHOULD KNOW ABOUT HOME EQUITY LINES OF CREDIT. This booklet
explains what a Home Equity Line of Credit (HELOC) is and how the interest rate and payment can change during the term of the loan.
Please retain this booklet for your records.

If you have any questions regarding these documents, please contact    Customer Service
at    877-200-3139    . Thank you.

Loan No: 121901608
August 11, 2005

# NOTICE OF RIGHT TO RECEIVE A
# COPY OF THE APPRAISAL REPORT

Borrower(s):  Elvin VALENZUELA         Property:  5522 W PEREZ AVENUE, VISALIA, CA
                                                  93291

You have the right to a copy of the appraisal report obtained in connection with your application for credit provided that, if required, you have paid for or are willing to pay for the appraisal. You can get a copy of this report by writing us at the address listed below. We must hear from you no later than 90 days after you are notified about the action taken on your credit application. If you withdraw your application, you must make your request for an appraisal report within 90 days of the withdrawal.

In your letter, please give us the following information:

Your Name:

Your Address:

Your Telephone Number:

Lender Name and Address:  IndyMac Bank, F.S.B.
                          7667 Folsom Boulevard, Suite 101
                          Sacramento, CA 95826
                          Attn: File Allocation Department

I acknowledge receipt of this notice.

_____    _____    _____    _____
Elvin VALENZUELA           (Borrower) (Date)    PHYLLIS VALENZUELA         (Borrower) (Date)


_____    _____    _____    _____
                           (Borrower) (Date)                               (Borrower) (Date)

Notice of Right to Receive a Copy of the Appraisal Report (Multistate)
IndyMac Bank, F.S.B.                          Page 1 of 1                                80103MU 5/01

IndyMac Bank, F.S.B., a federally chartered savings bank
## HOME EQUITY LINE OF CREDIT DISCLOSURE

Date:  August 11, 2005                    Loan #:   121901608

This disclosure contains important information about our Home Equity Line of Credit. You should read it carefully and keep a copy for your records.

**Availability of Terms:** All of the terms described below are subject to change. If these terms change (other than a change in the annual percentage rate resulting from movements in the index) and you decide, as a result, not to enter into an agreement with us, you are entitled to a refund of any fees that you paid to us or anyone else in connection with your application.

**Security Interest:** We will take a mortgage on your home. You could lose your home if you do not meet the obligations in your agreement with us.

**Possible Actions:** Under certain circumstances, we can (1) terminate your line, require you to pay us the entire outstanding balance in one payment, and charge you certain fees; (2) refuse to make additional extensions of credit; (3) reduce your credit limit; or (4) make specific changes to the terms that are set forth in your agreement with us.

We can terminate your line, require you to pay us the entire outstanding balance in one payment, and charge you certain fees if:

(1) you engage in fraud or material misrepresentation in connection with your Line of Credit;
(2) you do not meet the repayment terms; or
(3) your action or inaction adversely affects the collateral or our rights in the collateral.

We can refuse to make additional extensions of credit or reduce your credit limit if:

(1) the value of the dwelling securing the line declines significantly below its appraised value for the purposes of the line;
(2) we reasonably believe you will not be able to meet the repayment requirements due to a change in your financial circumstances;
(3) your payment history on this home equity Line of Credit is not satisfactory;
(4) you are in default of an obligation of the agreement;
(5) government action prevents us from imposing the annual percentage rate provided in the agreement;
(6) government action impairs our security interest such that the value of the interest is less than 120 percent of the credit line;
(7) a regulatory agency has notified us that continued advances would constitute an unsafe and unsound business practice; or
(8) the maximum annual percentage rate is reached.

The initial agreement permits us to make certain changes in the terms of the line at specified times or upon the occurrence of specified events.

**Minimum Payment Requirements:** You can obtain credit advances for _____10_____ years (the "draw period"). During this period, payments will be due monthly. Your minimum monthly payment will equal the amount, if any, by which your outstanding principal loan balance exceeds your credit limit, plus the greater of: (a) $100.00; or (b) the amount of accrued but unpaid finance charges, late charges, and any other charges due. The minimum monthly payments during the draw period may not reduce the principal that is outstanding on your line.

After the draw period ends, you will no longer be able to obtain credit advances and must pay the outstanding balance on your account (the "repayment period"). The length of the repayment period is __10__ years. During the repayment period, payments will be due monthly. Your minimum monthly payment will equal the amount of accrued interest, late charges and any other charges due plus __.8333__ % of the principal balance outstanding on the last day of the draw period.

**Fees And Charges:** To open, use and maintain a line of credit, you must pay the following fees to us:

| | | | |
|---|---|---|---|
| Application Fee | $ | 0.00 | (due at application) |
| Points | $ | 125.00 | (due when account is opened) |
| Flood Certification Fee | $ | 0.00 | (due when account is opened) |
| Processing Fee | $ | 0.00 | (due when account is opened) |
| Origination Fee | $ | 0.00 | (due when account is opened) |
| Annual Charge | $ | 75.00 | (due annually) |
| Termination Fee | $ | 500.00 | (if you release or reconvey the mortgage during the first 3 years after funding) |
| Other | $ | 0.00 | (when payable) |

You also must pay certain fees to third parties. These fees generally total between $ ____0.00____ and $ ____4,416.00____ . If you ask, we will give you an itemization of the fees you will have to pay to third parties.

**IndyMac HELOC Disclosure**

8480283 (0412)          VMP Mortgage Solutions, Inc. (800)521-7291

I065
(1/2005)

Loan No: 121901608

**Minimum Draw Requirements:** The minimum credit advance that you can receive using a check is $ ___250.00___ . There is no minimum draw requirement for other means of accessing the line of credit.

**Tax Deductibility:** You understand that we (including our employees and representatives) do not make any representations or warranties to you about the tax consequences - including the deductibility of interest or fees - of you establishing or using this line of credit, and we will not be liable if interest or fees are not deductible. You should consult a tax advisor regarding the deductibility of interest and charges under the plan.

**Variable Rate Feature:** Our home equity lines of credit have a variable rate feature and the annual percentage rate (corresponding to the periodic rate) and the minimum monthly payment can change as a result. The annual percentage rate includes only interest and not other costs.

The initial annual percentage rate is "discounted" - it is not based on the index and margin used for later rate adjustments. The initial rate will be in effect for ___one___ month(s) from the opening of this account.

After the initial rate period, the annual percentage rate is based on the value of an index. The index is the Wall Street Journal Prime Rate and is published in the Money Rates section of the Wall Street Journal. To determine the annual percentage rate that will apply to your line, we add a margin to the value of the index. We may substitute a new index and margin if the index described above becomes unavailable. Any new index will have a historical movement similar to the original and, together with a new margin, will produce a similar interest rate.

Ask us for the current index value, margin, discount and annual percentage rate. After you open a credit line, rate information will be provided on periodic statements that we send you.

**Rate Changes and Limitations:** After the initial rate period, the annual percentage rate can change each month. There is no limit on the amount by which the rate can change in any one-year period.

The maximum ANNUAL PERCENTAGE RATE (corresponding to the periodic rate) that can apply under any option is 18%, or the maximum amount permitted under applicable law, whichever is less.

**Minimum Payment Examples:**

**5-Year Draw Period - 10-Year Repayment Period:** If you made only the minimum payments and took no other credit advances, it would take 15 years to pay off a credit advance of $10,000 at an ANNUAL PERCENTAGE RATE of 3.99%. During that period, you would make 60 monthly payments of $100.00 followed by 120 payments varying between $65.00 and $46.62.

**10-Year Draw Period - 10-Year Repayment Period:** If you made only the minimum payments and took no other credit advances, it would take 20 years to pay off a credit advance of $10,000 at an ANNUAL PERCENTAGE RATE of 3.99%. During that period, you would make 120 monthly payments of $100.00 followed by 120 payments varying between $2.06 and $1.48.

**15-Year Draw Period - 10-Year Repayment Period:** If you made only the minimum payments and took no other credit advances, it would take approximately 10.1 years to pay off a credit advance of $10,000 at an ANNUAL PERCENTAGE RATE of 3.99%. During that period, you would make 122 monthly payments of $100.00.

**5-Year Draw Period - 15-Year Repayment Period:** If you made only the minimum payments and took no other credit advances, it would take 20 years to pay off a credit advance of $10,000 at an ANNUAL PERCENTAGE RATE of 3.99%. During that period, you would make 60 monthly payments of $100.00 followed by 180 payments varying between $49.52 and $31.08.

**10-Year Draw Period - 15-Year Repayment Period:** If you made only the minimum payments and took no other credit advances, it would take 25 years to pay off a credit advance of $10,000 at an ANNUAL PERCENTAGE RATE of 3.99%. During that period, you would make 120 monthly payments of $100.00 followed by 180 payments varying between $1.57 and $0.99.

**15-Year Draw Period - 15-Year Repayment Period:** If you made only the minimum payments and took no other credit advances, it would take approximately 10.1 years to pay off a credit advance of $10,000 at an ANNUAL PERCENTAGE RATE of 3.99%. During that period, you would make 122 monthly payments of $100.00.

**Maximum Rate and Payment Examples:** If you had an outstanding balance of $10,000 at the beginning of the draw period, the minimum monthly payment at the maximum ANNUAL PERCENTAGE RATE of 18% would be $150.00. This annual percentage rate could be reached in the first month following the initial rate period.

If you had an outstanding balance of $10,000 at the beginning of the repayment period, the minimum monthly payment at the maximum ANNUAL PERCENTAGE RATE of 18% would be $233.33 for **10-Year Repayment Period** and $205.56 for **15-Year Repayment Period**. The maximum annual percentage rate during the repayment period could be reached in the first month.

Loan No: 121901608

**Historical Examples:**  The following tables show how the annual percentage rate and the minimum payments for a single $10,000 credit advance would have changed based on changes in the index over the last 15 years. The index values are from the first day of December 2004. While only one payment amount per year is shown, payments would have varied during each year of the repayment period. The table assumes that no additional credit advances were taken, that only the minimum payment was made, and that the rate remained constant during each year. It does not necessarily indicate how the index or your payments would change in the future.

**Historical Examples:**

### 10-Year Repayment Period

| Year | Index (%) | Margin (%) | Annual Percentage Rate (%) | 5-YEAR DRAW Minimum Monthly Payments ($) | 10-YEAR DRAW Minimum Monthly Payments ($) | 15-YEAR DRAW Minimum Monthly Payments ($) |
|------|-----------|------------|---------|---------|---------|---------|
| 1990 | 10.000 | 0.500 | 9.490* | 100.00 | 100.00 | 100.00 |
| 1991 | 7.500 | 0.500 | 8.000 | 100.00 | 100.00 | 100.00 |
| 1992 | 6.000 | 0.500 | 6.500 | 100.00 | 100.00 | 100.00 |
| 1993 | 6.000 | 0.500 | 6.500 | 100.00 | 100.00 | 100.00 |
| 1994 | 8.500 | 0.500 | 9.000 | 100.00 | 100.00 | 100.00 |
| 1995 | 8.750 | 0.500 | 9.250 | 120.89 | 100.00 | 100.00 |
| 1996 | 8.250 | 0.500 | 8.750 | 112.01 | 100.00 | 100.00 |
| 1997 | 8.500 | 0.500 | 9.000 | 107.54 | 100.00 | 100.00 |
| 1998 | 7.750 | 0.500 | 8.250 | 98.41 | 100.00 | 100.00 |
| 1999 | 8.500 | 0.500 | 9.000 | 95.77 | 100.00 | 100.00 |
| 2000 | 9.500 | 0.500 | 10.000 | 92.89 | 70.24 | 100.00 |
| 2001 | 5.000 | 0.500 | 5.500 | 75.73 | 52.41 | 100.00 |
| 2002 | 4.250 | 0.500 | 4.750 | 70.91 | 48.34 | 100.00 |
| 2003 | 4.000 | 0.500 | 4.500 | 67.60 | 46.03 | 100.00 |
| 2004 | 5.000 | 0.500 | 5.500 | 65.14 | 46.49 | 100.00** |

### 15-Year Repayment Period

| Year | Index (%) | Margin (%) | Annual Percentage Rate (%) | 5-YEAR DRAW Minimum Monthly Payments ($) | 10-YEAR DRAW Minimum Monthly Payments ($) | 15-YEAR DRAW Minimum Monthly Payments ($) |
|------|-----------|------------|---------|---------|---------|---------|
| 1990 | 10.000 | 0.500 | 9.490* | 100.00 | 100.00 | 100.00 |
| 1991 | 7.500 | 0.500 | 8.000 | 100.00 | 100.00 | 100.00 |
| 1992 | 6.000 | 0.500 | 6.500 | 100.00 | 100.00 | 100.00 |
| 1993 | 6.000 | 0.500 | 6.500 | 100.00 | 100.00 | 100.00 |
| 1994 | 8.500 | 0.500 | 9.000 | 100.00 | 100.00 | 100.00 |
| 1995 | 8.750 | 0.500 | 9.250 | 99.96 | 100.00 | 100.00 |
| 1996 | 8.250 | 0.500 | 8.750 | 93.00 | 100.00 | 100.00 |
| 1997 | 8.500 | 0.500 | 9.000 | 90.53 | 100.00 | 100.00 |
| 1998 | 7.750 | 0.500 | 8.250 | 82.88 | 100.00 | 100.00 |
| 1999 | 8.500 | 0.500 | 9.000 | 82.69 | 100.00 | 100.00 |
| 2000 | 9.500 | 0.500 | 10.000 | 82.86 | 58.53 | 100.00 |
| 2001 | 5.000 | 0.500 | 5.500 | 62.00 | 39.74 | 100.00 |
| 2002 | 4.250 | 0.500 | 4.750 | 57.22 | 37.87 | 100.00 |
| 2003 | 4.000 | 0.500 | 4.500 | 54.49 | 36.03 | 100.00 |
| 2004 | 5.000 | 0.500 | 5.500 | 54.94 | 37.52 | 100.00** |

\* These two figures represent a Discount of 1.51%. Your Discount or Premium may be different.
\*\*Balance will be paid off during this year.

**YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES, WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.**

I/We acknowledge receipt and have read the Home Equity Line of Credit Disclosure and the "When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit" brochure.

| | | |
|---|---|---|
| _____ (Seal) | | _____ (Seal) |
| Elvin VALENZUELA    -Borrower | | PHYLLIS  VALENZUELA    -Borrower |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |

**IndyMac Bank, F.S.B.**

Date: August 11, 2005                                           Loan #:  121901608

## DISCLOSURE NOTICE

| Applicant(s) | Property Address |
|---|---|
| Elvin VALENZUELA | 5522 W PEREZ AVENUE, VISALIA, CA 93291 |

### RIGHT TO CHOOSE TITLE INSURANCE COMPANY AND CLOSING/ESCROW AGENT OR CLOSING ATTORNEY

You have the right to select your own closing attorney/closing agent/escrow agent and title insurance company to close your loan transaction provided that the agent or company will provide the lender with a Closing Protection Letter (unless state law prohibits such letter) and that the company meets the minimum financial requirements required by IndyMac Bank.

☐ I/we agree that we have voluntarily selected the use of a title company to provide title insurance and a closing/escrow agent or closing attorney to close our loan transaction.

☐ I/we agree that we do not wish to select a title insurance company to provide title insurance and a closing/escrow agent or closing attorney to close our loan for us. We are allowing another entity to choose these services for us but will hold IndyMac Bank harmless for any issues that arise from not choosing our own service providers.

### FAIR CREDIT REPORTING ACT

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnish to you upon written request made within a reasonable period of time. In the event denied credit due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the adverse action, pursuant to provision of Section 615 (b) of the Fair Credit Reporting Act.

### EQUAL CREDIT OPPORTUNITY/FAIR HOUSING ACTS

The Equal Credit Opportunity and Fair Housing Acts prohibit creditors from discriminating against credit applicants on a basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract), handicap or familial status; because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. Income which you receive as alimony, child support or separate maintenance need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan. Income from these and other sources, including part-time or temporary employment, will not be discounted by this lender because of your sex or marital status. However, we will consider very carefully the stability and probable continuity of any income that you disclose to us. The Federal Agency that regulates this company is the Office of Thrift Supervision.

### FHA LOANS ONLY

If you prepay your loan on other than the regular installment date, you may be assessed interest charges until the end of that month.

### GOVERNMENT LOANS

RIGHT TO FINANCIAL PRIVACY ACT OF 1978 - This is notice to you as required by the Right to Financial Privacy Act of 1978 that the Department of Housing and Urban Development or Department of Veterans Affairs has a right of access to financial records held by a financial institution in connection with the consideration of administration of assistance to you. Financial records involving your transaction will be available to the Department of Housing and Urban Development or Department of Veterans Affairs without further notice or authorization but will not be disclosed or released or released to another Government agency or Department without consent except as required or permitted by law.

### EMPLOYMENT CERTIFICATION

An approval for a loan is based upon employment, income and obligations as shown on the loan application. At closing, the applicant and co-applicant/spouse, if applicable, are required to execute a sworn statement affirming that they are currently working as previously reported, have not received notice of layoff nor have knowledge of pending layoff, and that outstanding obligations are substantially the same as reported on the application. Should a change occur in your employment or financial status prior to the loan closing, immediately notify your loan consultant, as it will be necessary to obtain approval of any changes.

### ANTI-COERCION STATEMENT

The insurance laws of this state provide that the lender may not require the applicant to take insurance through any particular insurance agent or company to protect the mortgaged property. The applicant, subject to the rules adopted by the Insurance Commissioner, has the right to have the insurance placed with an insurance agent or company of his/her choice, provided the company meets the requirements of the lender. The lender has the right to designate reasonable financial requiements as to the company and adequacy of the coverage.

I have read the foregoing statement, or the rules of the Insurance Commissioner relative thereto, and understand my rights and privileges and those of the lender relative to the placing of such insurance.

I have selected the following agent/company to write the insurance covering the property described above:

| Insurance Company Name | Agent's Address |
|---|---|
| Agent's Name | Agent's Telephone Number |

### CUSTOMER IDENTIFICATION NOTICE

The USA PATRIOT Act, a federal law, requires all financial institutions to obtain sufficient information to verify your identity when creating a new banking relationship. You may be asked several questions including your name, address and date of birth, and to provide one or more forms of identification to fulfill this requirement. In some instances, we require other identifying documents and/or use a third party information provider for verification purposes. Of course, our established Privacy Policy helps protect your personal information.

I/We hereby certify that I/we have read the Notices set forth above and fully understand all of the above. In addition to these Notices, I /we the applicant(s) certify that I/we have received the "Buying Your Home," and "What You Should Know About Home Equity Lines of Credit" or the "Consumer Handbook on Adjustable Rate Mortgages" (CHARM booklet) , if applicable.

| Elvin VALENZUELA | Date | PHYLLIS VALENZUELA | Date |
|---|---|---|---|
|  | Date |  | Date |

IndyMac Bank
Disclosure Notice

I004
10/04

Loan #: 121901608

## BORROWER DATE OF FUNDING REQUEST

*Your Instructions On Closing - When Interest Begins To Accrue On Your Loan*

Prior to the date that your closing agent calls for closing, IndyMac Bank, F.S.B. (hereinafter "IndyMac") will provide instructions to its wiring agent to wire funds to be received by your closing agent up to one business day prior to the scheduled closing. As such, your closing agent should have sufficient time to verify the existence of good funds and both cause the recordation of the security instrument in connection with your loan and close your transaction no later than the business day following receipt of IndyMac's funding wire.  In certain counties in California, closing agents may also request a "special recording" which would permit the recordation of the security instrument following the County Recorder's morning deadline.

Since IndyMac is responsible to pay interest on its credit lines beginning as of the date of funding (i.e., the date IndyMac wires funds to your closing agent), your loan will also begin to accrue interest as of the date of funding.  Typically funding occurs up to one business day prior to the recording of IndyMac's security instrument and the closing of your loan.   The interest per day on your loan is based on an interest rate of 3.990    which is $ 10.71    per day.  The maximum interest that may be charged for funding over a weekend period would be 4 days which totals $ 42.85    . We have calculated 4 days so that if the loan funds over a holiday weekend, we have given you the maximum that could be charged. You may figure your own interest for that period by multiplying the number of days from the date of funding to the date of closing by the per day interest amount.  In order to reduce the amount of interest charged prior to closing, it is important that you discuss closing procedures with your closing agent and arrange a closing date that is not a Monday or the day following a bank holiday.

**I/we acknowledge and agree to the foregoing and instruct IndyMac to wire loan proceeds on the date requested by my/our closing agent. I/we acknowledge that by complying with my/our closing agent's instructions in this regard, IndyMac will facilitate the closing of escrow on the date I/we have requested. I/we also understand and agree that interest will begin to accrue on my/our IndyMac loan from and after the date that loan proceeds are wired pursuant to my closing agent's request.  Finally, I/we acknowledge that I/we have agreed to the designation of the closing agent in this transaction.**

Dated: August 11, 2005

Elvin VALENZUELA                          PHYLLIS VALENZUELA 

IndyMac Bank
Borrower Date of Funding Request Disclosure

I156
06/03

## INDYMAC ANTI-PREDATORY LENDING DISCLOSURE

| | |
|---|---|
| Applicant(s)<br>Elvin VALENZUELA | Property Address<br>5522 W PEREZ AVENUE<br>VISALIA, CA 93291 |
| Loan No: 121901608 | Date: August 11, 2005 |

This disclosure provides information that is contained in IndyMac's anti-predatory lending policy. The section or sections where a box is marked are applicable to your transaction. Please read this information carefully. Your signature on this document certifies that you have read and understand the implications of obtaining this loan.

### NO INCOME AND/OR ASSET VERIFICATION LOAN DISCLOSURE

[ ] You have applied for a home loan where the lender has not verified your income and/or assets by traditional verification methods, or where your income and/or assets may not have been disclosed on your loan application.

Our loan approval decision, including our assessment of your ability to repay the loan, was based on your credit history and any proposed change in your monthly mortgage payment. The source of your income may or may not have been considered. We did not specifically consider the amount of your monthly income in our decision to approve this loan. The value of your assets may or may not have been considered. In exchange for not having to disclose and/or document your income and/or asset information, you may be required to pay a higher interest rate on the loan and/or additional fees.

Your initial monthly payment of principal, interest, taxes and insurance will be $ N/A

Without verification of your income and/or asset value, it may be difficult to fully assess the additional risk that may be associated with this mortgage. If you cannot afford to make this payment or you fail to meet the other obligations in your loan documents, you could lose your home, and any money you have put into it.

**DO NOT SIGN YOUR LOAN DOCUMENTS IF YOU BELIEVE YOU WILL BE UNABLE TO MEET YOUR PAYMENT AND OTHER FINANCIAL OBLIGATIONS.**

### CASH OUT REFINANCE DISCLOSURE

[X] You have applied for a home loan in which you will be using the equity (taking cash-out ) of the home.

You have indicated that you are obtaining a loan for purposes of taking cash out which may reduce the equity in your property. This loan may increase your payments which you may, in the future, be unable to pay due to future unforeseen circumstances. While this new loan may reduce your total monthly payments by paying off other debt with the equity in your home, you may, in fact, make more payments and therefore pay more interest than if you had maintained your current debt structure. Also, if you incur more debt through new installment loans or by using your credit cards, you may find yourself in a worsened position as now you have a greater mortgage payment and the same or more debt than you had before.

You have the right and IndyMac encourages you to seek credit counseling, before becoming obligated to this mortgage loan, to help you understand the risks and benefits of the transaction you are contemplating. If you are interested in such counseling, please call the National Foundation for Credit Counseling at (800) 388-2227.

**DO NOT TAKE THIS LOAN IF YOU BELIEVE YOU WILL BE UNABLE TO MEET YOUR PAYMENT AND OTHER FINANCIAL OBLIGATIONS.**

### PREPAYMENT PENALTY DISCLOSURE

[X] You have applied for a loan which may or may not contain a prepayment penalty.

You have applied for a loan with IndyMac through a mortgage broker. One important aspect of your loan is deciding whether you wish to have a "prepayment penalty" on your loan. A prepayment penalty is a charge for paying off your loan early or making more than the required monthly scheduled payments. Typically, prepayment penalties can be charged any time between the closing of the loan and 3 years. You have the right to select the period of time for which the prepayment penalty is in force, within the prepayment penalty options presented by the lender for your particular loan program. Some loan programs may not allow for a prepayment penalty.

The charging of the prepayment penalty may be beneficial to you because the lender will typically lower the interest rate of the loan. Typically, a longer prepayment penalty term will result in a lower interest rate. Prepayment penalties can be costly, depending on the length of the prepayment penalty and the calculation used.

We encourage you to discuss your prepayment options with your mortgage broker to determine if a loan with a prepayment penalty feature makes economic sense for you. YOU SHOULD REQUIRE THAT THE BROKER PROVIDE YOU RATES AND TERMS WITH AND WITHOUT A PREPAYMENT PENALTY TO MAKE THAT ASSESSMENT.

If your loan contains a prepayment penalty, there will be an "Addendum to a Fixed Rate, Balloon or Arm Note" as part of your closing documents.

**DO NOT TAKE THIS LOAN IF YOU DO NOT WANT TO BE BOUND BY THE PROVISIONS OF THE PREPAYMENT PENALTY.**

I/We hereby certify that I/we have read the Disclosures set forth above and fully understand all of the above.

| | | | |
|---|---|---|---|
| Elvin VALENZUELA | Date | PHYLLIS VALENZUELA | Date |
| | Date | | Date |

# NOTICE TO HOME LOAN APPLICANT

Date: August 11, 2005                    Loan Number :121901608

| Borrower(s) Name/Address | Lender Name/Address |
|---|---|
| Elvin VALENZUELA<br><br>5522 W PEREZ AVENUE<br>VISALIA, CA 93291 | IndyMac Bank, F.S.B., a federally chartered savings bank<br><br>155 North Lake Avenue<br>Pasadena, CA 91101 |

| Property Address |
|---|
| 5522 W PEREZ AVENUE, VISALIA, CA 93291 |

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer-generated summary calculated at the time of the request and is based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

The Consumer Credit Report vendor used for this loan was:

   American Reporting Company, LLC
   4020 Lake Washington Blvd  NE  Ste
   Kirkland, WA 98033
   800-992-1058

| Credit Bureau Name/Address/ Phone | Score | Key Factors affecting Your Credit Scores-See Addendum | | |
|---|---|---|---|---|
| Equifax (EFX) / Beacon Score<br>PO Box 105873<br>Atlanta, GA 30348<br>Toll Free (888) 841-7335<br>www.equifax.com | 672 | 40 | 14 | 18 |
| | | Range of scores possible: 300-950 | | |
| Experian (XPN) / Fair Isaac Score<br>PO Box 9601<br>Allen, TX 75013-2104<br>Toll Free (888) 397-3722<br>www.experian.com | 705 | 10 | 8 | 18 |
| | | Range of scores possible: 300-850 | | |
| TransUnion (TUC) / Empirica Score<br>PO Box 4000<br>Chester, PA 19016<br>Toll Free (866) 887-2673<br>www.transunion.com | 686 | 39 | 2 | 8 |
| | | Range of scores possible: 300-900 | | |

Credit Report Date: August  4, 2005

Your acknowledgment below signifies that this written notice was provided to you.

Elvin VALENZUELA _____  Date _____     PHYLLIS VALENZUELA _____  Date _____

_____  Date _____                         _____  Date _____

_____  Date _____                         _____  Date _____



## NOTICE TO HOME LOAN APPLICANT - ADDENDUM
### Key Factors Affecting Your Credit Scores

**Equifax (EFX) and Experian (XPN)**

| | |
|---|---|
| 0 | No adverse risk factors |
| 1 | Account balances too high |
| 2 | Too many delinquencies |
| 3 | Too few revolving accounts |
| 4 | Too many revolving accounts |
| 5 | Too many accounts with balances |
| 6 | Too many consumer finance accounts |
| 7 | Account payment history too new to rate |
| 8 | Too many inquiries last 12 months |
| 9 | Too many accounts recently opened |
| 10 | Revolving balance to credit limit ratio too high |
| 11 | Revolving balances too high |
| 12 | Revolving accounts too new |
| 13 | Recent delinquencies |
| 14 | Accounts too new |
| 15 | Lack of recent bank revolving data |
| 16 | Lack of recent revolving data |
| 17 | No recent non-mortgage balance data |
| 18 | Number of delinquent accounts |
| 19 | Too few accounts paid as agreed |
| 20 | Recent adverse public record or collection |
| 21 | Amount past due on accounts |
| 22 | Serious delinquency public record or collection |
| 23 | Number of revolving accounts with balances |
| 24 | No recent revolving balances |
| 25 | Length of installment loan history |
| 26 | Number of revolving accounts |
| 28 | Number of accounts |
| 29 | No recent bank/national revolving balances |
| 30 | Length of time since most recent account opening |
| 31 | Too few accounts with recent payment data |
| 32 | No recent installment loan data |
| 33 | Loan balance to loan amount ratio too high |
| 34 | Delinquent account balances too high |
| 36 | Length of time installment loans have been established |
| 37 | Number of finance company accounts relative to length of finance history |
| 38 | Serious delinquency public record or collection |
| 39 | Serious delinquency |
| 40 | Adverse public record or collection |
| 46 | Payment due on accounts |
| 98 | Lack of recent auto loan data |
| 99 | Lack of recent consumer finance loan data |

**TransUnion (TUC)**

| | |
|---|---|
| 0 | No adverse risk factors |
| 1 | Account balances too high |
| 2 | Too many delinquencies |
| 3 | Loan balance to loan amount ratio too high |
| 4 | Lack of recent installment loan data |
| 5 | Too many accounts with balances |
| 6 | Too many consumer finance accounts |
| 7 | Account payment history too new to rate |
| 8 | Too many inquiries last 12 months |
| 9 | Too many accounts recently opened |
| 10 | Revolving balance to credit limit ratio too high |
| 11 | Revolving balances too high |
| 12 | Revolving accounts too new |
| 13 | Recent delinquencies |
| 14 | Accounts too new |
| 15 | Lack of recent bank revolving data |
| 16 | Lack of recent revolving data |
| 17 | No recent non-mortgage balance data |
| 18 | Number of delinquent accounts |
| 19 | Date of last inquiry too recent |
| 20 | Recent adverse public record or collection |
| 21 | Amount past due on accounts |
| 22 | Serious delinquency |
| 23 | Number of revolving accounts with balances |
| 24 | No recent revolving balances |
| 26 | Number of revolving accounts |
| 27 | Too few accounts currently paid as agreed |

| 28 | Number of accounts |
| 29 | No recent bankcard balances |
| 30 | Length of time since most recent account opening |
| 31 | Amount owed on delinquent accounts |
| 36 | Payments due on accounts |
| 38 | Serious delinquency public record or collection |
| 39 | Serious delinquency |
| 40 | Adverse public record or collection |
| 41 | No recent retail balances |
| 42 | Lack of recent consumer finance loan data |
| 43 | Lack of recent mortgage loan data |
| 50 | Lack of recent retail account data |
| 56 | Amount owed on retail accounts |
| 97 | Lack of recent auto loan data |
| | |
| | |

# OPTION ARM WORKSHEET

## CENTRAL VALLEY MORTGAGE

**Give Your Borrowers Options with THE OPTION ARM**

**Step 1**
Pick product, loan amount, line of pricing

| 1 | MO. MTA | $ Loan Amt | LTV |
|---|---------|-----------|-----|
| 0.00% points | | $291,500 | 60.7 % |

Locked-In

**Step 2**
Identify index, margin, fully indexed rate*

| MTA | 2.504% + |
| Margin | 3.440% + |
| F.I.R* | = | 5.944% |

**Step 3**
Identify the payment options, how to calculate, and get value

| 1 Minimum Monthly Payment (start rate = )% | 1.000% | Payment $ | $937.58 |
| 2 Interest Only (Loan Amt x FIR /365 x 30) | | Payment $ | $1,443.90 |
| 3 Principle and Interest 30 or 40 yr term (Based on FIR) | | Payment $ | $1,737.21 |
| 4 Principle and Interest 15 yr term (Based on FIR) | | Payment $ | $2,451.03 |

* Deferred Interest may occur when Minimum Payment is exercised and Interest Only option is larger.

**Step4**
Calculate max monthly w/payment cap
Base of minimum payment

| | | | | |
|------|----------|---|-------|----------|
| Year 1 | $937.58 | x | 1.075 | $937.58 |
| Year 2 | $1,007.90 | x | 1.075 | $1,007.90 |
| Year 3 | $1,083.49 | x | 1.075 | $1,083.49 |
| Year 4 | $1,083.49 | x | 1.075 | $1,164.75 |
| Year 5 | $1,164.75 | x | 1.075 | $1,252.11 |

**Step5**
Compare to preferred Fixed Rate Mortgage

| FRM Rate | 6.750% % Monthly Payment | $1,890.66 |
| Option 3 Payment above | | |
| Payment Difference $ | $1,737.21 | |
| | $153.45 Savings | |

* or more if making minimum payment

**Not to exceed Payment Option 3 Using LifeCap as Calculation*
Interest Rate Life Cap = 10.95**

**Maximum Monthly Payment w/Cap (5 yrs.)**

Year 1 — $937.58
Year 2 — $1,007.90
Year 3 — $1,083.49
Year 4 — $1,164.75
Year 5 — $1,252.11

HUD's Statements
Copy B Fraud Credit



**American Brokers Conduit**

A Division of American Home Mortgage

**Doc Date:** June 23, 2005
**Application #:** 0000898255

**Name:** Elvin Valenzuela
        Phyllis Valenzuela

**Settlement Agent:**
FIRST AMERICAN TITLE COMPANY
1850 SOUTH CENTRAL STREET
Visalia, CA 93277

**Contact:**
**Telephone:** (559) 635-6810
**Fax:** (559) 636-5694

**CLOSING STIPULATION(S)**

The following documents or conditions must be satisfied and/or presented at time of closing.  In the event you are unsure of the acceptability of any document(s) you must contact the Lender.  In no event may you accept any alternative document(s) or unilaterally waive any requirement unless written authorization is provided to you by the lender.

**All of the documents provided herewith are required to be signed, regardless of whether they appear to be duplicates previously provided to the borrower(s).**

**Stipulations to be satisfied:**
If a Power of Attorney is to be used in connection with this loan closing, you must follow the document execution instructions set forth on ADDENDUM "E".

**The following items are required Prior to Funding:**

1. Broker to provide final 1003. typed - signed by the borrower/broker

2. HUD-1 to evidence payoff of citimtg
wells fargo   with an outstanding balance of $256138
28496
.

3. The Notice of Right to Cancel must be signed at closing.

4. Provide Hazard Policy for a minimum of loan amount or replacement cost coverage, with a minimum of 3 months remaining on policy.

5. Provide copy of appraisers current license.

6. The lock for this loan will expire on 08/22/05.  If the loan will not close AND fund by this date, please contact Secondary prior to expiration to extend the lock.

7. With the exception of 30-day accounts, evidence of payoff of the following debts must be included in the loan file.

| Borrower | Creditor | Account Number | Balance |
|---|---|---|---|
| Elvin Valenzuela | WELLS FARGO BANK NV | 65465465362041998 | 27613.00 |
| Elvin Valenzuela | CITIMORTGAGE INC | 11914121200 | 252961.00 |

**American Home Mortgage Corp.**

American Home Mortgage Corp of New York • AHM Mortgage • American Brokers
Conduit • HLB Mortgage • MortgageSelect.com • New England Home Mortgage •
mTeam Financial

**Privacy Policy Notice**

At AMERICAN HOME MORTGAGE Corp. your privacy is important to us. That is why we work hard to uphold your privacy. The information that you provide us is always kept in the strictest of confidence. We have no intentions of selling your nonpublic personal information to any nonaffiliated third parties. We make this commitment to you with pride, because your trust is the foundation of our business.

To protect your privacy and maintain your confidence in us, we have developed the following policies. These policies describe the strict standards we have in place to protect your confidentiality. Therefore, we ask you to please read this information carefully.

We will tell you the sources of nonpublic personal information we collect from you. We will then tell you what steps we take to protect that information.

We first define some terms used in this notice:

**We, our** and **us** mean AMERICAN HOME MORTGAGE Corp., and names we do business under including, AHM Mortgage, American Home Mortgage Corp of New York, American Brokers Conduit, HLB Mortgage, mTeam Financial, MortgageSelect.com and New England Home Mortgage.

**You** and **your** mean the following individuals:
— Those **consumers** who have provided us with nonpublic personal information for the purpose of determining whether he or she qualifies for a mortgage loan; and
     — Those **customers** who have obtained real estate settlement services from us.

**Nonpublic personal information** means personally identifiable financial information about you that we collect in connection with providing a financial product or service to you. This does not include information that is available from public sources, such as government real estate records.

**Affiliate** means a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company as us.

**Nonaffiliated third party** means a company that is not an affiliate of ours.

We collect nonpublic personal information about you from the following sources:
— Information we receive from you on applications or other forms;
— Information about your transactions with us, our affiliates, or others; and
— Information we receive from a consumer reporting agency.

**We do not disclose any nonpublic personal information about our consumers, customers, or former customers to anyone, except as permitted by law.**

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.