UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  | : |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| AMERICAN HOME MORTGAGE | | |
| HOLDINGS, INC., a Delaware corporation | : | |
| *et al.,* [1] | | |
|  | : | Case Number 07-11047 (CSS) |
| Debtors. | | (Jointly Administered) |
|  | : | |

Hearing Date: February 1, 2008 at 11:00 A.M.

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE
APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP AS TAX SERVICES
PROVIDERS FOR THE DEBTORS, <u>NUNC PRO TUNC</u> AS OF JANUARY 14, 2008
(DOCKET ENTRY # 2722)**

In support of her objection to the application of the Debtors for an order authorizing the

employment and retention of Deloitte Tax LLP ("Deloitte Tax") as tax services providers for the

Debtors, <u>nunc pro tunc</u> as of January 14, 2008 (the "Application"), Kelly Beaudin Stapleton, United

States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, avers:

<u>INTRODUCTION</u>

1.      Under (i) 28 U.S.C. § 1334, (ii) (an) applicable order(s) of the United States

District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C.

---

[1]

      The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: AHM Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address  for all of the Debtors is 538 Broadhollow Road, Melville, New York  11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

§ 157(b)(2), this Court has jurisdiction to hear and determine the Application and this objection.

2.      Under 28 U.S.C. § 586(a)(3)(I), the U.S. Trustee is charged with monitoring applications filed under 11 U.S.C. § 327 "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." This duty is part of the U.S. Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Application and the issues raised in this objection.

## GROUNDS/BASES FOR RELIEF

4.      The U.S. Trustee objects to the Application on the following grounds:

(a.)      In paragraph 9(d) of the declaration of John Niemiec in support of the Application, Deloitte Tax discloses that Deloitte & Touche LLP (together with Deloitte Tax, "Deloitte") is a defendant in a putative securities class action lawsuit related to the firm's pre-petition employment by American Home Mortgage Investment Corporation ("AHMIC"). A copy of the complaint, titled Marlin v. Citigroup Global Markets, Inc., et al. (No. 07-cv-3580 (E.D.N.Y.)), is attached as **Exhibit A**. The complaint centers on the May 4, 2007 offering through which AHMIC issued and sold to Citigroup Global Markets Inc. 4,000,000 shares of its common stock at $23.10 per share. AHMIC's equity was trading at less than $1 per share on the eve of its bankruptcy filing (approximately three months after the May 4 offering). In the complaint, the plaintiff avers that Deloitte & Touche LLP

"is named in the Offering Materials as having prepared and certified certain reports and valuations used in connection with the Offering Materials, including the consolidated financial statements for 2004, 2005, and 2006, and AHM management's report on the effectiveness of internal control over financial reporting as of December 31, 2006."[2]

The Marlin docket indicates that the litigation is in an early stage (a hearing on motions for the appointment of the lead plaintiff and counsel for the class was scheduled for January 23, 2008). The Marlin docket also indicates that Deloitte & Touche LLP's time to answer or otherwise respond to the complaint has been extended. A copy of the Marlin docket is attached as **Exhibit B**. A copy of the stipulation extending Deloitte & Touche LLP's time to answer or respond to the complaint is attached as **Exhibit C**. The docket (entry # 25) indicates that the stipulation was "so ordered."

In paragraph 9(d) of the Niemiec declaration, Deloitte Tax also discloses that Deloitte & Touche LLP "has received requests for information from certain regulatory bodies in connection with inquiries relating to AHMIC."

Deloitte & Touche LLP is described in paragraph 7 of the Niemiec declaration as an "affiliate" of Deloitte Tax.

11 U.S.C. § 327(a) states:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold

---

[2] The term "Offering Materials" is defined in paragraph 3 of the Marlin complaint. When the term is used in this Objection, it has the same meaning.

Additionally, the Supreme Court's recent decision in Stoneridge Investment Partners LLC v. Scientific-Atlanta, Inc., 552 U.S. _____ (2008), does not appear to impact plaintiff's claim against Deloitte & Touche LLP. Generally speaking, the Stoneridge Court addressed the question of whether there is a private right of action for aiding and abetting a violation of section 10(b) of the Securities Exchange Act of 1934. In Marlin, the plaintiff is seeking relief against Deloitte under section 11 of the Securities Act of 1933. Ex. A ¶ 71.

or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Courts have defined the "interest adverse" language in 11 U.S.C. § 327 in the following terms:

(1)  to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
(2) to possess a predisposition under circumstances that render such a bias against the estate.

See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.), 432 F.3d 347, 356 (5th Cir. 2005) (citations omitted);  In re eToys, Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005).

Further, the term "disinterested person" is defined in 11 U.S.C. § 101(14)(C) as including a person that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

Here, Deloitte & Touche LLP has an interest in minimizing its own liability.  Deloitte & Touche LLP's defense strategy with respect to liability in the Marlin litigation will necessarily involve pointing the finger at third parties, including the Debtors.  Accordingly, Deloitte possesses or asserts an economic interest that creates an actual or potential dispute in which the Debtors' estates are rival claimants; Deloitte holds or represents an interest adverse to the Debtors' estates and, by extension, is ineligible to be employed under 11 U.S.C. § 327(a).  Similarly, Deloitte Tax is not a "disinterested person" because it has an interest materially adverse to both the interests of the Debtors' estates and a class of their equity security holders by reason of Deloitte & Touche LLP's pre-petition connection(s) with the Debtors.  The Application should be denied.

4

(b.)    In the event that this Court determined that Deloitte & Touche LLP's status as a defendant in the <u>Marlin</u> litigation did not disqualify Deloitte Tax from serving as a professional under 11 U.S.C. § 327(a), there are other issues with respect to Deloitte Tax's "disinterestedness." First, Deloitte & Touche LLP, an affiliate of Deloitte Tax, is a co-defendant in litigation in which the firm may seek to assert affirmative claims against the Debtors related to its preparation of the Offering Materials. The Application and the accompanying declaration are devoid of any discussion as to whether Deloitte & Touche LLP has rights to payment (e.g., contribution and indemnity) which it may assert against AHMIC or other Debtors in connection with the services that are the subject of the <u>Marlin</u> litigation. In the unlikely event that this Court were to authorize the employment of Deloitte Tax, both Deloitte Tax and Deloitte & Touche LLP should be obligated to waive <u>all</u> claims against the Debtors' estates, including claims relating to the <u>Marlin</u> litigation. <u>See</u> 11 U.S.C. §§ 101(14)(A) (defining "disinterested person" as a person that is not a "creditor"), 101(10) (defining "creditor" as an entity which has a pre-petition "claim" against the debtor), and 101(5)(A) (defining "claim" as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."); <u>see also</u> <u>United States Trustee v. Price Waterhouse</u>, 19 F.3d 138 (3d Cir. 1994).

Next, paragraphs 6 and 7 of the Niemiec declaration indicate that, in the event Deloitte Tax's employment is authorized, both Deloitte Tax and Deloitte & Touche LLP will "not . . . seek recovery" of certain pre-petition nonpayment claims. The language used in the declaration falls short of an explicit waiver of the claims. Again, in the unlikely event that this Court were to authorize the employment of Deloitte Tax, both Deloitte Tax and Deloitte & Touche LLP should explicitly waive the aforementioned claims.

Finally, the disclosures in paragraphs 6 and 7 in the Niemiec declaration do not provide sufficient information for the U.S. Trustee to determine whether Deloitte Tax and/or Deloitte & Touche LLP received preferential transfers during the 90 days prior to the Debtors' bankruptcy filings. Deloitte Tax should provide the U.S. Trustee with a grid or spreadsheet which provides the following details for payments made by the Debtors to Deloitte Tax and (separately) Deloitte & Touche LLP within the year prior to the Debtors' bankruptcy filings: invoice date, invoice amount, date(s) of service covered by invoice, payment date, and payment amount. Retainer payments and draws should be specifically identified as such on the submission. See In re Pillowtex, Inc., 304 F.3d 246 (3d Cir. 2002); United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.), 180 F.3d 504 (3d Cir. 1999).

(c.)    The parameters of the Debtors' proposed engagement of Deloitte Tax are described in (i) paragraph 7 of the Application and (ii) pages 1-2 of the January 11, 2008 engagement letter attached as Exhibit 1 to the Niemiec declaration. First, the U.S. Trustee is presently evaluating whether all of the services listed are permitted non-audit services under section 10A of the Securities Exchange Act of 1934, as amended by the Sarbanes-Oxley Act of 2002 (see 15 U.S.C. § 78j-1(g)); the U.S. Trustee reserves the right to object at or before the hearing on the Application if she determines that certain services are not permitted non-audit services. Further, to the extent that the specified services are permitted non-audit services, neither the Debtors nor Deloitte Tax represent that the Debtors' board(s) of directors authorized Deloitte Tax to perform the services. See 15 U.S.C. § 78j-1(h). If the Debtors' board(s) of directors authorized the services, the Debtors should supplement the record with the appropriate information.

(d.)    In paragraph 21 of the Niemiec declaration, Deloitte Tax indicates that, due to a

reorganization of some of its business units, certain services "incidental" to the services of Deloitte

Tax may be performed by personnel employed by/associated with a number of Deloitte affiliates,

including Deloitte & Touche LLP.  The Debtors seek to employ a single entity – Deloitte Tax.  To

the extent that the Debtors seek to employ personnel from other Deloitte units, the Debtors should

formally employ such entities to avoid running afoul of the compensation-sharing prohibitions

contained in 11 U.S.C. § 504.  See In re Winstar Communications, Inc., 378 B.R. 756, 761 (Bankr.

D. Del. 2007) (construing 11 U.S.C. § 504 in accordance with the plain meaning of its terms).

     (e.)     Paragraphs 5 and 7 of the "Deloitte Tax LLP General Business Terms" appended to

the engagement letter (titled "Limitation on Warranties" and "Limitation on Actions," respectively)

contain unreasonable terms of employment which should not be approved.  Paragraph 5 of the

engagement letter contains the following sentence: "The client's exclusive remedy for any breach

of [its warranty of good faith/due professional care] shall be for Deloitte Tax, upon receipt of written

notice, to use diligent efforts to cure such breach, or failing any cure in a reasonable period of time,

the return of professional fees paid to Deloitte Tax hereunder with respect to the services giving rise

to such breach."  This Court has previously indicated that it does not permit estate professionals to

limit their exposure in connection with the engagement, and the aforementioned sentence runs afoul

of that rule.  See In re United Cos. Fin. Corp., 241 B.R. 521 (Bankr. D. Del. 1999); In re Dailey Int'l,

No. 99-1233 (Bankr. D. Del. July 1, 1999).  A copy of the Dailey International opinion is attached

as **Exhibit D**.  Paragraph 7 of the "General Business Terms," titled "Limitation on Actions,"

provides:

> [n]o action, regardless of form, relating to this engagement, may be
> brought by either party more than one year after the cause of action
> has accrued, except that an action for nonpayment may be brought
> by a party not later than one year following the date of the last

payment due to the party bringing the action.

Simply put, it is both unreasonable and inconsistent with the aforementioned authorities to truncate the Debtors' rights to prosecute causes of action against Deloitte Tax.

(f.)    In paragraph 15 of the Application and paragraph 15 of the "Deloitte Tax LLP General Business Terms," the Debtors seek permission to indemnify Deloitte Tax on certain terms. The indemnity terms are unreasonable unless breach of contract is expressly "carved out" of the proposed  indemnity in the form of order.  See In re United Artists Theatre Co., 315 F.3d 217, 234 (3d Cir. 2003) (describing breach of contract as being "hardly an indemnity-eligible activity").

## CONCLUSION

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Application.

Respectfully submitted,

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE**


BY:  /s/ Joseph J. McMahon, Jr.
Joseph J. McMahon, Jr., Esquire (# 4819)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE  19801
(302) 573-6491
(302) 573-6497 (Fax)

Date:  January 25, 2008