UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| ------------------------------------------------------------X | | |
| WALDNER'S BUSINESS ENVIRONMENTS | ) | |
| INC., | ) | |
| Plaintiff, | ) | |
| -against- | ) | Adv. Pro. No. 07-51697 (CSS) |
| | ) | |
| AMERICAN HOME MORTGAGE CORP., | ) | |
| | ) | Hearing Date: TBD |
| Defendant. | ) | Objection Deadline: TBD |
| ------------------------------------------------------------X | | |

**EMERGENCY MOTION OF WALDNER'S BUSINESS ENVIRONMENTS, INC.
FOR ENTRY OF AN ORDER COMPELLING DEBTOR TO COMPLY
WITH ORDER APPROVING STIPULATION OF SETTLEMENT
AND RETURN RECLAIMED GOODS**

TO THE HONORABLE CHRISTOPHER SONTCHI,
UNITED STATES BANKRUPTCY JUDGE:

Waldner's Business Environments, Inc. (the "Plaintiff" or "Waldner's"), by its co-attorneys Ruskin Moscou Faltischek, P.C. and Saul Ewing LLP, as and for its Emergency Motion for the Entry of an Order (the "Proposed Order") Compelling American Home Mortgage Corp. (the "Defendant" or the "Debtor") to comply with the terms of that certain Stipulation and Settlement Agreement between the Debtor and Waldner's dated December 19, 2007 (the "Stipulation") and return the Reclaimed Goods (as defined below) to Waldner's, and granting other relief, respectfully represents as follows:

## BACKGROUND

1. On August 6, 2007 (the "Petition Date"), the Debtor and certain affiliates filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

2. The Debtor continues in the management and operation of its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On August 22, 2007, the Plaintiff filed a Complaint (the "Complaint"), annexed hereto as **Exhibit "A"**, against Defendant alleging that the Plaintiff had a reclamation right to furniture goods delivered to the Debtor, as more particularly described in the invoices (the "Invoices") annexed to the Complaint. The Invoices described furniture for which the Defendant agreed to pay, upon competed installation, the aggregate sum of $348,061.05. The Complaint defined all goods listed in the Invoices as the "Reclaimed Goods".

4. On October 24, 2007, the Plaintiff filed a proof of claim (the "Proof of Claim"), annexed hereto as **Exhibit "B"**, against the Defendant's estate for $348,061.05 and alleged that a portion thereof was entitled to administrative expense priority status pursuant to 11 U.S.C. § 503(b)(9) and, as alleged in the Complaint, that the entire amount was subject to Plaintiff's right of reclamation of the goods delivered to the Debtor pursuant to 11 U.S.C. § 546(c)(1)[1].

5. As discussed with more particularity below, the Debtor agreed to Waldner's reclamation of the Reclaimed Goods. The Debtor's counsel and Waldner's counsel also discussed and reached an agreement whereby Waldner's would recover all of the Reclaimed

---

[1] Additionally, upon the Court's approval of the Stipulation, Waldner's agreed to withdraw the Proof of Claim, with prejudice. It has not withdrawn the Proof of Claim because the Debtor has failed to comply with the Stipulation and return all of the Reclaimed Goods. Waldner's never agreed to withdraw its Proof of Claim upon a return of anything less than all of the Reclaimed Goods.

Goods. The Parties thereafter documented their agreement in the Stipulation, which is annexed hereto as **Exhibit "C"**.

6. On January 10, 2008, this Court entered an Order approving the Stipulation under Bankruptcy Rule 9019 (the "9019 Order"). A copy of the 9019 Order is annexed hereto as **Exhibit "D"**.

7. On January 15, 2008, Waldner's sought to retake possession of the Reclaimed Goods from the Debtor at its main office at 538 Broadhollow Road, Melville, New York (the "Main Office"). As discussed in greater detail below, at such time Waldner's was advised by the Debtor that the Debtor would not turn over the Reclaimed Goods, notwithstanding the fact that "Reclaimed Goods" is defined in the third "whereas" clause at page two of the Stipulation as "… goods … as more particularly described in the invoices annex to the Complaint as Exhibit "A". The Invoices in turn specifically identified each and every each item to be returned to Waldner's. Hence the term "Reclaimed Goods", as defined in the Stipulation, means every item listed on the Invoices annexed to the Complaint.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to consider this Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9. This Motion is also properly heard by this Court because the 9019 Order states "that the Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Order".

10. Importantly, paragraph 12 of the Stipulation states "[a]ll disputes regarding this Stipulation shall be <u>decided</u> by the Bankruptcy Court." (emphasis added).

## RELEVANT FACTS

11. The Stipulation is clear and unambiguous on its face in that the term "Reclaimed Goods" is defined in the third "whereas" clause at page two of the Stipulation as "… goods … as more particularly described in the invoices annex to the Complaint as Exhibit "A". The Invoices in turn specifically identified each and every each item to be returned to Waldner's. Hence the term "Reclaimed Goods", as defined in the Stipulation, means <u>every</u> item listed on the Invoices annexed to the Complaint. The relevant facts set forth below also bear this out to the extent the Court requires additional information.

12. Shortly after Waldner's made Federal Rule of Civil Procedure 26(a) Initial Disclosures to the Debtor on or about October 5, 2007, the Parties began to focus their efforts on resolving the adversary proceeding.

13. As set forth in the affidavit of Matthew V. Spero, Esq. in Support of the Emergency Motion, duly sworn to on January 30, 2008, annexed hereto as **Exhibit "E"** (the "Spero Affidavit"), the Debtor, by its counsel Curtis Crowther, Esq. of Young Conaway Stargatt & Taylor, LLP, and the counsel for Waldner's engaged in discussions to resolve the adversary proceeding that was commenced upon the filing of the Complaint. During these discussions, counsel for the Debtor and counsel for Waldner's discussed and agreed to a return of all of the Reclaimed Goods due to the fact that: a) none of the Reclaimed Goods were of any use to the Debtor and the Debtor "did not care" about the Reclaimed Goods; b) that the universe of reclamation claims filed by all creditors against the Debtor was so small that there was little chance that a settlement with Waldner's for a return of all of the Reclaimed Goods would

prejudice future negotiations with other reclaiming creditors; and c) that the agreed-upon purchase price of all of the Reclaimed Goods did not warrant the litigation time and effort that would be required to fully litigate the adversary proceeding since the Debtor might expect to only recover a relatively nominal or *de minimus* amount in a subsequent liquidation sale of the Reclaimed Goods. Spero Affidavit ¶ 6.

14. Waldner's counsel stated repeatedly to the Debtor's counsel, by telephone and by e-mail, that Waldner's was to recover all of the Reclaimed Goods under the Stipulation. Spero Affidavit ¶ 7. At no point did the Debtor's counsel state that the understanding, intent, or agreement to be reflected in the Stipulation would result in a limitation on Waldner's claim to recover all of the Reclaimed Goods. Spero Affidavit ¶ 7. At no point did the Debtor's counsel identify any of the goods, by invoice number or otherwise, to which it believed Waldner's was not entitled to under the Stipulation. Spero Affidavit ¶ 7.

15. To this end, Waldner's representatives were dispatched to the Debtor's office to account for and inventory the goods in the Debtor's possession and confirm that those goods constituted all of the Reclaimed Goods.

16. As stated in the affidavits of Anne Marie Guerra, Waldner's sales account manager, and William Hein, Waldner's project manager, each sworn to on January 30, 2008 and annexed hereto as **Exhibits "F"** and **"G"**, respectively, (the "Affidavits"), on October 18, 2007 Ms. Guerra and Mr. Hein met with Tom Trepanier of the Debtor to walk through the Main Office to prepare an inventory of goods on hand and confirm that those goods (the "Inventory") constituted all of the Reclaimed Goods.

17. The Affidavits indicate that Ms. Guerra and Mr. Hein worked with Mr. Trepanier and did confirm that the Inventory reflected all of the Reclaimed Goods. Affidavits, ¶ ¶ 5, 6. At

one point, Mr. Trepanier even advised Ms. Guerra and Mr. Hein that boxes which were blocking access to some 80 work stations to be returned could be moved so as to permit Waldner's clear access to remove all of such work stations. Affidavits, ¶ 7.

18. While inventorying all of the Reclaimed Goods with Mr. Trepanier, representative photographs were taken by Ms. Guerra and Mr. Hein, including photographs of a portion of the aforementioned 80 work stations to be returned. Affidavits, ¶ 8. These photographs were taken in the presence of Mr. Trepanier. Affidavits, ¶ 8. Copies of these photographs are annexed hereto as **Exhibit "H"**.

19. While Waldner's conducted its Inventory of all of the Reclaimed Goods with Mr. Trepanier, at <u>no time</u> did the Debtor disclose that it sought to return anything less than all of the Reclaimed Goods as listed in the Invoices annexed to the Complaint. Affidavits, ¶ ¶ 6, 9.

20. On January 15, 2008, Alan Freeman, Waldner's Project Manager, was dispatched to the Debtor's office to arrange for recovery of all of the Reclaimed Goods. At this time Mr. Freeman was told that Waldner's would not be permitted to take possession of all of the Reclaimed Goods, but only of a lesser amount of the Reclaimed Goods. *See* Affidavit of Alan Freeman sworn to on January 30, 2008, annexed hereto as **Exhibit "I"**.

21. Demand for return of the Reclaimed Goods was subsequently made by letters to the Debtor's counsel dated January 16, 2008 and January 18, 2008, copies of which are annexed hereto as **Exhibit "J"**. The Debtor nonetheless continues to refuse to allow removal by Waldner's of all of the Reclaimed Goods.

22. As sworn to in the Affidavits and the Spero Affidavit, at no time did the Debtor express that it believed Waldner's would receive less than all of all of the Reclaimed Goods,

notwithstanding that Waldner's representatives and its counsel repeatedly discussed with the Debtor and its counsel that Waldner's would receive all of the Reclaimed Goods.

## RELIEF REQUESTED

23. "Reclaimed Goods" is defined in the third "whereas" clause at page two of the Stipulation as "… goods … as more particularly described in the invoices annex to the Complaint as Exhibit "A". The Invoices specifically identified each item subject to reclamation. As evidenced by signed delivery tickets previously transmitted to Debtor's counsel as part of Rule 26(a) Initial Disclosures, the Debtor received all of the Reclaimed Goods.

24. Paragraph 2 of the Stipulation describes the Reclaimed Goods to be returned to Waldner's:

> Upon the Court's approval and execution of this Stipulation, the Debtor shall immediately surrender possession of the Reclaimed Goods to Waldner's and cooperate with Waldner's to identify same and allow Waldner's a reasonable amount of time (not to exceed ten (10) business days from the time Debtor's counsel faxes a copy of the order approving this Stipulation to each of Waldner's counsel at the fax numbers set forth below or by email) to retrieve and remove same from the Debtor's premises, at Waldner's sole cost and expense. It is expressly understood that the Reclaimed Goods in Debtor's possession were shown to Waldner's representative at Debtor's main office prior to entering into this Stipulation and such Reclaimed Goods were located in five (5) offices in the main office of Debtor. All references to "Reclaimed Goods" herein and hereinafter shall be deemed to expressly include this clarification and limitation of the Reclaimed Goods in Debtor's possession to be returned to Waldner's.

25. The Debtor has refused to return all of the Reclaimed Goods, asserting that only those goods located in five offices (otherwise unspecified) within the Main Office of the Debtor would be released. In doing so, the Debtor is attempting to redefine "Reclaimed Goods", in direct contravention of the understanding, intent, and agreement reached between the Parties.

26.  The language of the Stipulation is clear. "Reclaimed Goods" is and always has been a defined term meaning all of the Reclaimed Goods listed in the Invoices attached to the Complaint.

27.  By the clear terms of the Stipulation, the Debtor conceded and admitted that all of Reclaimed Goods are <u>in fact</u> in its possession and <u>in fact</u> were shown to Waldner's representative at the Main Office. Consistent with the expressed understanding, intent, and agreement of the Parties, the Stipulation can only be read to mean that the Debtor located <u>all</u> of the Reclaimed Goods in five offices, not that the quantity of the Reclaimed Goods to be returned were to be any less than all of the Reclaimed Goods.

28.  This is the *precise reason* why the term "Reclaimed Goods" was a defined term meaning <u>all</u> goods listed on the Invoices. There was never any need to define "five offices" because the Stipulation stated it was "*expressly understood*" that the "Reclaimed Goods" (a defined term meaning <u>all</u> of the Reclaimed Goods), were shown to Waldner's representatives, were to be returned to Waldner's, and were now contained in five offices of the Main Office.

29.  The Debtor's refusal to permit the removal of all of the Reclaimed Goods violates the understanding, intent, and agreement of the Parties, and is nothing less than an attempt to perpetuate a fraud. At no time was it agreed, or even discussed, that anything less than all of the Reclaimed Goods were to be returned to Waldner's. The Parties always had agreed that the entire Reclaimed Goods would be returned. Counsel discussed a return of all of the Reclaimed Goods, the Parties agreed to a return of all of the Reclaimed Goods, the Debtor showed Waldner's and worked with Waldner's to account for all of the Reclaimed Goods during the Inventory, and Waldner's agreed to withdraw all of its claims and dismiss the Complaint in reliance upon the understanding and agreement that all of the Reclaimed Goods would be

returned. If the Debtor did not intend to surrender all of the Reclaimed Goods, it was under a duty to disclose that very material fact. Instead, it masked its intentions and misled Waldner's.

30. Any argument that less than all of the Reclaimed Goods are to be returned is without merit. The Stipulation defines Reclaimed Goods as <u>all</u> of those goods set forth in the Invoices and contains an express provision that all of the Reclaimed Goods are located at the Main Office and were shown to Waldner's during the Inventory. It is nonsensical to believe that Waldner's would have agreed to accept a return of some *unidentified portion* of the Reclaimed Goods that the Debtor *chose* to store in five *unidentified* offices that *only the Debtor had dominion and control over*, <u>and</u> withdraw its Proof of Claim with prejudice. The Debtor did not disclose, at any time, that the "five offices" contained less than all of the Reclaimed Goods (indeed, it could not since paragraph 2 of the Stipulation clearly states that "it is expressly understood that the Reclaimed Goods in Debtor's possession <u>were shown</u> to Waldner's representative at Debtor's main office ... and such Reclaimed Goods <u>were located</u> in five offices of the main office of the Debtor"). If the Debtor intended to surrender less than the Reclaimed Goods, it and its counsel had an affirmative duty to inform Waldner's and its counsel of this fact, especially since Waldner's counsel repeatedly discussed a return of all of the Reclaimed Goods with Debtor's counsel. Regrettably, it chose not to do so.

31. Waldner's can only believe that the Debtor either misled Waldner's as to its true intentions or is attempting to engage in revisionist damage control so that it may now use or sell the goods that it previously agreed to return.

32. For the Debtor to now claim that the entire agreement is premised on a return of some lesser amount of the Reclaimed Goods, which lesser amount of Reclaimed Goods was never <u>once</u> even discussed or identified, defies logic.

33. Since the language of the Stipulation is clear, the Debtor should be compelled to comply with its terms and immediately surrender possession of all of the Reclaimed Goods to Waldner's.

WHEREFORE, Waldner's respectfully requests that this Court grant its Emergency Motion for the Entry of an Order Compelling the Debtor to Comply with the Terms of the Stipulation and Return all of the Reclaimed Goods to Waldner's.

*/s/ Mark Minuti*

Mark Minuti (No. 2659)
Patrick J. Reilley (No. 4451)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Ph: (302) 421-6800
Fax: (302) 421-8573

-and-

Harold S. Berzow (HB-8261)
Matthew V. Spero (MS-3991)
**RUSKIN MOSCOU FALTISCHEK, P.C.**
East Tower, 15th Floor
1425 RexCorp Plaza
Uniondale, NY 11556-1425
Ph: (516) 663-6604
Fax: (516) 663-6804

Co-Attorneys for Waldner's Business Environments, Inc.

Dated: January 30, 2008