# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

IN RE:                          :    **Chapter 11**
                                :
    **American Home Mortgage**    :    **Jointly Administered**
    **Holdings, Inc. et al.,**    :    **Under Case No. 07-11047 (CSS)**
                                :
                                :    **RE: DOCKET # 2754**
    **Debtors**              :

## OBJECTION TO SALE OF LOANS
## FREE AND CLEAR OF LIENS OR LIABILITIES

Paula Rush, pro se, hereby renews the request for demand to know the true

owner or master servicer of her loan pursuant to TILA 1641(f)(2). Since the hearing date of Oct.

31, this issue has not been resolved. The assertion of non-compliance remains the same. Once

again the Debtor's are proceeding to attempt to sell loans under a description that could fit my

loan description,  and therefore I renew my request for disclosure.

Plaintiff respectfully request the Court consider the Debtor's continued attempts to sell

off loan assets free and clear of liens and liabilities and neglecting to add the protection under

363(o) as provided for under the 2005 Bankruptcy Abuse and Consumer Protection Act. The

Debtor's attorney's stated, they usually beat everyone to the punch and put it in, it never quite

seems to make it in their filings.

---

The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number
are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment
Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Investment"), a Maryland corporation (1979);  American Home Mortgage Servicing, Inc. ( "AHM Servicing"),
aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558);
American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
 ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

Objector avers as follows:

1. I strongly object to loans sold under the circumstances which the Debtor categorizes as being: 60 days or more delinquent, in default, and/or that may contain some underwriting or compliance issues, being sold to a former financing partner to avoid liabilities on such loans. Loans I like to call, hot potato loans. No one wants to be holding them at the end of the day. Unless they can get them without the baggage of all that silly consumer protection stuff and all the benefits of MI insurance.

2. In some cases, these loans could even be sold to the very people who might otherwise already hold some portion of existing liability before the sale due to the role of: a financing partner to whom the Debtor owes money to against the loans (credit swap or other credit enhancement), or a master servicer or indenture trustee (which comes with certain responsibilities to both the borrowers, compliance issues and investors in trusts). These loans all the sudden look much better when a hedge fund or financing partner buys them for pennies on the dollar and then forecloses enforcing them for 100 cents on the dollar.

3. In the New Century bankruptcy, loans were sold for less then 30 cents on the dollar to insider DIP financing partner and then the purchaser turned around and enforced those loans for 100 cents on the dollar. In that case, Attorney General Marc Dann is the only one who petitioned for protections for OHIO borrowers, and only OHIO borrowers got any protection. I'm very concerned that case law is being established to enable these practices to flourish to the detriment of borrowers and against what Congress intended in the 2005

4. In the Bankruptcy Abuse and Consumer Protection Act, Congress had the foresight to add 363(o) to the bankruptcy code and it should be observed to protect the consumers. I've been in Washington DC visiting Senators and will continue to until I get to the bottom of these

important issues. In fact a bill has currently passed the House and is in the Senate which addresses specific consumer protection issues- H.R. 3915: Mortgage Reform and Anti-Predatory Lending Act of 2007.

5.   I assert these loan assets are a small number of loans and the borrowers should be afforded the opportunity to bid on their loans, or offered the loans at the same price as the bids. For the price of a stamp this Court could order the Debtor's to give homeowners a 30 to 60 day window in which to purchase the interest in their property from the Debtor's estate. At less than face value of between 30 to 55 cents on the dollar, homeowners may be able to refinance out of the Debtor's lien, and the estate may avoid litigation pending or probable litigation against loans with underwriting and compliance issues, as described by Debtors.

6.   According to the sale petition, the loans offered are as follows:

**71** Unencumbered <u>Non-Performing</u>  with an aggregate unpaid balance of 23 million owned by the Debtors but subject to AH Mortgage Acquisition liens.
**46** BofA <u>Non-Performing</u> Loans with an aggregate unpaid balance of 14 million owned by Debtors but are a portion of the collateral securing obligations to prepetition secured lenders (Bank of America).
**307** JPM <u>Non-Performing</u> loans with an aggregate unpaid balance of 115 million owned by the Debtors but are a portion of the collateral securing obligations to prepetition secured lender (JP Morgan).

FOR A TOTAL OF - **424 Loans**

7.   **541 Bankruptcy Code**:

541 defines liens of a third party held by the debtor on property of a third party, or beneficial rights and interests that the debtor may have in property of another. Only the debtor's interest in such property becomes property of the estate.

Section <u>541 (a)</u> is an <u>all-embracing definition</u> which includes charges on property, such as <u>liens held by the debtor on property of a third party</u>, or <u>beneficial rights and interests that the debtor may have in property of another. However, only the debtor's interest in such property becomes property of the estate.</u>

If the debtor holds bare legal title or holds property in trust for another, <u>only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541.</u>

Section 541(d) of the House amendment is derived from section 541(e) of the Senate amendment <u>and reiterates the general principle that where the debtor holds bare legal title without any equitable interest, that the estate acquires bare legal title without any equitable interest in the property.</u>

Thus, where the debtor held only legal title to the property and the beneficial interest in that property belongs to another, such as exists in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest in the property.

Though this paragraph will include choses in action and claims by the debtor against others, it is <u>not intended to expand the debtor's rights against others more than they exist at the commencement of the case. He could take no greater rights than the debtor himself had.</u>

### 8.  363 Bankruptcy Code

Section 363(k) of the House amendment is derived from the third sentence of section 363(e) of the Senate amendment. The provision indicates that a <u>secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof in the event the creditor is undersecured, with respect to property that is subject to a lien that secures the allowed claim of the sale of the property.</u>
Senate report no. 95–989

*This section defines the right and powers of the trustee with respect to the use, sale or lease of property and <u>the rights of other parties that have interests in the property involved</u>. It applies in both liquidation and reorganization cases.

9.  Cash collateral is Negotiable instruments and documents of title, in which an

entity other than the estate has an interest, such as a lien or a co-ownership interest.

*Subsection (a) defines "cash collateral" as cash, <u>negotiable instruments, documents of title,</u> securities, deposit accounts, or other cash equivalents <u>in which the estate and an entity other than the estate have an interest, such as a lien or a co-ownership interest</u>. The definition is not restricted to property of the estate that is cash collateral on the date of the filing of the petition.

*Subsection (c) governs use, sale, or lease in the ordinary course of business. If the business of the debtor is authorized to be operated under § 721, 1108, or 1304 of the bankruptcy code, then the trustee may use, sell, or lease property in the ordinary course of business or enter into ordinary course transactions without need for notice and hearing. <u>This power is subject to several limitations.</u>

10. The Court should consider the adequate protection issue and the interest that a

homeowner may have in the property including counter claims, set-off's, and other remedies.

Class actions and regulatory actions may ensue under which homeowners who may not even

know at this point in time they have remedies available to them, may become aware of them in

the future. This court should not do anything to undermine those rights.

*Under subsections (d) and (e), the use, sale, or lease of property is <u>further limited</u> by the concept of <u>adequate protection</u>. Sale, use, or lease of property in which an entity other than the estate has an interest may be effected only to the extent not inconsistent with any relief from the stay granted to that interest's holder. Moreover, the court may prohibit or condition the use, sale, or lease as is necessary to provide adequate protection of that interest.

11. Subsection (e) provides that an entity that has an interest in such property may bid at the

sale thereof and set off against the purchase price up to amount of such entity's claim. The bid at

the sale would be determinative of value.

*Again, the trustee has the burden of proof on the issue of adequate protection. <u>Subsection (e) also provides that where a sale of the property is proposed, an entity that has an interest in such property may bid at the sale thereof and set off against the purchase price up to the amount of such entity's claim.</u> No prior valuation under section <u>506</u> <u>(a)</u> would limit this bidding right, since the <u>bid at the sale would be determinative of value.</u>

12. Property being sold under subsection (f) states the trustee can sell free and clear of an

entity other than the estate, if the interest is a lien and the sale price of the property is greater

than the amount secured by the lien. The sale of mortgage notes for less than face value does not

square with this statute.

*Subsection (f) permits sale of property free and clear of any interest in the property of an entity other than the estate. The trustee may sell free and clear if applicable nonbankruptcy law permits it, if the other entity consents, <u>if the interest is a lien and the sale price of the property is greater than the amount secured by the lien,</u> if the interest is in bona fide dispute, or if the other entity could be compelled to accept a money satisfaction of the interest in a legal or equitable proceeding. Sale under this subsection is subject to the adequate protection requirement. Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.

13. <u>ANY</u> holder of <u>ANY</u> interest in the property being sold will be permitted to bid at a sale

free and clear of other interests. I propose homeowner be given the opportunity to bid.

*At a sale free and clear of other interests, **any holder of any interest** in the property being sold will be permitted to bid. If that holder is the high bidder, he will be permitted to offset the value of his interest against the purchase price of the property. Thus, in the most common situation, a holder of a lien on property being sold may bid at the sale and, if successful, may offset the amount owed to him that is secured by the lien on the property (but may not offset other amounts owed to him) against the purchase price, and be liable to the trustee for the balance of the sale price, if any.

14. The estate will realize significantly less for the sale of the estate's interest if another party to the property ( the homeowner) is not given the same opportunity to bid. The partition of the property is impracticable, and the benefit of the estate does not outweigh the detriment to the homeowner. The homeowner should be given a first right of refusal at the price at which the sale is to be consummated.

*Subsection (h) permits sale of a co-owner's interest in property in which the debtor had an underlined ownership interest such as a joint tenancy, a tenancy in common, or a tenancy by the entirety. Such a sale is permissible only if partition is impracticable, if sale of the estate's interest would realize significantly less for the estate that sale of the property free of the interests of the co-owners, and if the benefit to the estate of such a sale outweighs any detriment to the co-owners. Subsection (i) provides protections for co-owners and spouses with dower, curtesy, or community property rights. It gives a right of first refusal to the co-owner or spouse at the price at which the sale is to be consummated.

15. These loans are descibed as having possible actionable issues associated with them which could include forfeiture or modification of the interest that American Home or other parties associated with these loans may have.

*Subsection (k) [enacted as (l)] permits the trustee to use, sell, or lease property notwithstanding certain bankruptcy or ipso facto clauses that terminate the debtor's interest in the property or that work a forfeiture or modification of that interest. This subsection is not as broad as the anti-ipso facto provision in proposed 11 U.S.C. 541 (c)(1).

16. In the case of the Broadhollow loans, the Debtor's former financing partners purchased the loans for less then face value as revealed in the subsequent Bank of America lawsuit. I assert this is collusive bidding and the property owners were given no opportunity to bid.

*Subsection (m) [enacted as (n)] is <u>directed at collusive bidding on property</u> sold under this section. <u>It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders.</u> The trustees may also recover the excess of the value of the property over the purchase price, and may recover any costs, attorney's fees, or expenses incurred in voiding the sale or recovering the difference. In addition, the court is authorized to grant judgment in favor of the estate and against the collusive bidder if the agreement controlling the sale price was entered into in willful disregard of this subsection. The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances.

17. I hereby give notice that Paula Rush asserts her objection to this sale or any other sale which might include the  security interest held on property 2651 Peery Drive Churchville Md. 21028, loan number #1001222336. On April 3, 2007 Ms. Rush sent a RESPA qualified written request (or notification of issues)  and a TILA loan rescission letter which was not answered as required under federal law (RESPA)  and to date has never been answered by American Home Mortgage.

18. Objector would also like to bring to this Court's attention numerous instances of inaccurate information which has been presented to this Court.

19. 363 (o)

Debtor's attorney asserts they usually beat the Trustee to the punch and include it in loan sale petitions. They did not include it in the Broadhollow & Melville loan sales, nor have they included it in the current petition. They only included it in the Loan Servicing APA after it was petitioned for by the Trustee, Docket #1060, and after Plaintiff requested it.

20. TILA 1641(f)(2)

Debtor's attorney, Mr. Brady, asserted in Court that this is not a statute that American Home is under any obligation to comply with. The petition was reviewed by Weiner, Brodsky, Sidman, Kider and Young, Conaway, Stargatt & Taylor, and was discussed with Mr. John Kalas, according to bankruptcy records for fee application of Weiner, Brodsky, Sidman, Kider and

Young. It is unclear if all counsel came to the conclusion that they did not have to comply or if it was even discussed. However it was Debtor's attorney, Mr. Brady who did certify to this court they did not have to comply. Upon review of other statements in transcripts, it is clear that on occasion the Debtor's attorney simply asks the Debtor for the answer. Through this process I think it is clear that on more then one occasion, the parties attempting to communicate or argue for or against certain issues, have not fully made themselves well versed on the topic in question.

21. This is problematic when the topics are about consumer protections both inside and outside of the bankruptcy codes. Federal laws which assert rights of borrowers that are not supposed to be lost in bankruptcy process in favor of the rights of a Debtor when the issues sound in Fraud.

22. The witness who Mr. Brady put on the stand, Steven Dickman, Senior Vice President of Loan Administration, either made materially false statements, and affirmed the normal pattern and practice of American Home is not to comply with RESPA or TILA requirements, or doesn't understand the laws himself. The witness asserts that it is at the Master Servicer and true owner of the note's direction that AHM does not comply. Stating - That's what they pay us for. So he is asserting it is also the intention of the these parties to not comply with TILA 1641(f)(2). Wells Fargo has revealed they are master servicer on over 150,000 of American Home Mortgage loans, and it is unclear if this is Wells Fargo's position. Plaintiff is in the process of making further inquiries to determine and resolve that issue.

23. Ms Beall has a tape in which American Home states that Wells Fargo is the master servicer of her loan, and a letter from Wells Fargo stating they "are not" the master servicer of her loan. Her loan is not found in MERS.

24. In transcripts before this court during the hearing for the sale of Broadhollow and

Melville loans, the Debtor's witness Damian Vaulo, stated as follows:

"Well, as stated by counsel, they are high quality loans, meaning A-paper loans, agency eligible paper, Fannie, Freddie, Ginnie Mae, which is the highest quality paper. Jumbo prime loans, which is also <u>A-paper</u> of high quality,  and what makes high quality, you know, <u>A-paper</u> loans is higher FICA scores, you know, lower loan to devalued ( to value) ratios, which generally trade higher in the secondary market, tried(trade) at the highest prices and generally of the Broadhollow/Melville, they're all the – a majority of the loans are of the <u>higher quality A-paper."</u>

25. In truth and in fact, on Aug 8, 2007 Bloomberg reported that American Home Mortgage's

Broadhollow Funding LLC extended maturities on commercial paper after being unable to roll

over $150 million of the debt. Broadhollow had $138 million of subordinated notes cut to <u>Ba1</u>,

the highest speculative grade, from <u>Baa2</u>. <u>The notes remain on watch for further downgrade</u>.

So in fact and in truth, well before the hearing for the sale of these notes, American Home knew

that the notes were not A-paper and were on watch for further downgrade.

26. Considering the Debtor is once again petitioning to sell mortgage notes free and clear of

liens and liabilities, plaintiff is reasserting the original request for demand to know the true

owner of the note or master servicer as required under TILA 1641(f)(2). Plaintiff has confirmed

with legal counsel at the FTC, Alician Brown 202-326-3079 Division of Financial Practice that

this is a provision of  Federal Law and informed Plaintiff that they know of no other conflicting

laws or statutes which would negate the request.

27. Plaintiff has communicated with RESPA, Ms. Eddy Norsleet 202-708-0502 X3559,

who has been around since the S&L crisis, and was informed that the definition of a RESPA

qualified written request includes any requests which a borrower asserts that may affect the

servicing of the loan.

28. American Home Mortgage Servicing has decided and asserted on multiple occasions

in this court they do not feel my request was a "qualified written request." The Debtor

also states, through counsel, that due to the fact that Plaintiff filed a lawsuit, they did not have to respond because it became a legal matter. RESPA has informed Plaintiff that this is not the case. American Home Mortgage has decided not to respond to Mona Dobben's RESPA request and Laura Beall has American Home on tape saying they do not have to comply due to being in bankruptcy.

29. The simple answer is the servicing of the loan goes on whether a lawsuit is initiated or not. So RESPA states that as long as American Home continues to service the loan they are required to respond. The response may be, we feel the issues you assert are invalid and we refuse to honor your request to change anything, however this would be a response, as required. They are required to respond to issues and investigate the issues presented. They are then to provide in such correspondence the name and contact number for a person within the company the borrower can contact to discuss the decision.

30. The statute is very clear, and American Home needs to produce evidence of legal statutes that negate the duty to answer based on their assertions.

31. The Debtor asserts in their pleading that they are selling these assets under the laws of the State of New York, which does allow for assignee liability for certain high cost loans including servicer violations. According to Standard and Poors, the maximum securitization trust exposure is the loan may be rendered void, plus attorney's fees and costs, and the loss indicative loss severity is 163%. There are no mitigating factors.

32. American Home Mortgage has access to adequate internal counsel, including, Alan Horn and John Kalas, and outside counsel of Young, Conaway, Stargatt & Taylor plus Weiner, Brodsky, Kidman, and others. According to Court documents filed alll of these parties reviewed

the previous petition.

33. On October 31, 2007, in this Court the Debtors attorney, Mr. Brady, put Mr Dickman the stand representing American Home Mortgage Servicing unit in reference to RESPA and complaince issues. During the same hearing, Mr. Brady asserted convincingly that American Home Mortgage did not have any duty to comply with disclosure under TILA 1641(f)(2). These issues are false , misleading, and just another example of the total disregard for any principles of good faith or fair dealing.

34. The petition at issue states clearly the loans American Home is intending to sell may have some compliance or underwriting issues. This description would fit my loan. The issue of who is the holder in due course of this note is key to determining whether the bankruptcy estate, or some other unknown entity is the party of interest associated with this loan.  This issue  "holder in due course" of this mortgage note needs to be resolved. Upon information and belief, my mortgage note may have been a repurchase and is currently held in any one of the Debtor entity many Debtor and Non-Debtor subsidiaries.

35. It  appears from the loan file documents provided to me, my  loan initially went into a pool 021/0000001 and then moved into 514/0000014 and then transferred to 330/0000001 in September of 2006 after default. On the bank account numbers I do see number sequences which suggest possible associations with these numbers.

36. My Note says American Brokers Conduit is "lender" and Andrew Valentine is "trustee" MERS is the nominee and the beneficiary. The Loan Corporation to American Brokers Conduit is the only assignment provided in the loan file.  <u>MERS says servicer is </u>- American Home Mortgage Holdings Inc (6303) Foreclosure says Cohn Goldberg & Deutsche is the substitute Trustee.  American Home Mortgage claims they sold my loan pre petition and it's in a trust.

Loan history shows the loan may be back in the same loan pool it was in when it was originated - American Home Mortgage Corp. (1558) NY

37. I'm in the process of getting bank records to identify in what bank account the payments were processed through as the bank accounts have been identified in these bankruptcy filings.

38. My loan file which was provided by American Home Mortgage also revealed TRIAD as the loan insurer. American Home proceeded to attempt to collect mortgage insurance on my loan according to servicing records first on Jan 4, 2007 and again May 14, 2007.

39. American Home Mortgage Debtor funds are paying to fight a lawsuit in which another party is supposed to own the loan. Shouldn't that unknown person step up to defend the loss of their asset? The mortgage insurance they were counting on will become a problem because TRIAD won't pay the claim on a loan with a fraudulent inflated appraisal.

40. Servicing records show that American Home knew by March 27, 2007 I asserted issues against my loan and planned to file an adversary proceeding and on March 29, 2007 American Home knew that I did request loan rescission. By April 3, 2007 American Home had received my formal letter of loan rescission which asserted my issues. On May 2, 2007 American Home Mortgage was served with my lawsuit. Despite all of that, On May 14, 2007 American Home looked once again to TRIAD to make a claim on my loan. Without ever doing any investigation into my claims as required under RESPA and making a fraudulent claim against the contract with TRIAD. They failed to alert TRIAD after they were already informed that I had asserted issues of loan rescission and fraud in origination. These are issues would prevent them from collecting on the insurance issued by TRIAD.

41. It also reveals they purposefully continued to proceed ignoring and failing to investigate any claims as required under RESPA. So it is obvious American Home Mortgage never took the

proper steps to investigate my claims, respond to my inquiries or to alert the appropriate parties of interest, ie: TRIAD the insurer, and the unknown note holder, master servicer, or indenture trustee, as the case may be. These parties to whom my loan was owned and insured had legal rights under securitization contracts that American Home may have failed to honor.

42. American Home Mortgage has the right, if they feel they had nothing to do with the origination issues to pursue the Broker, Settlement agent, and the Appraiser legally for the damages they suffered in relation to my claims. American Home can't do this because they in fact control each and every one of these parties through ABA agreements and contracts. They accept captive reinsurance, they use Homegate Settlement Services and Great Oak Abstract to fee split. American Broker Conduit prepares and approves all the Good Faith estimates and Final Closing documents. American Home Mortgage through American Brokers Conduit offer marketing materials and marketing seminars to brokers to train them to sell – THE AHM way. American Brokers Conduit provides the brokers with a rate sheet based incentive upon which the YSP payments are based on. So it is abundantly clear that the parties to the transaction are all AGENTS of American Home Mortgage. As your honor stated in Catisha Cauthorne's hearing, a first year law student could argue agency relationship.

43. My loan file is incomplete and missing some important documents, such as credit report, the rate sheet provided to the broker, many lines of servicing dialogue are blacked out, and other items are missing as defined under Docket #282 as contents of a mortgage file. The information in my file has no proof that my note was ever assigned to anyone other then American Brokers Conduit.

44. Debtor's attorney stated at the hearing on Oct. 31, 2007 that in general on one occasion the mortgage was sold and then securitized and on two occasions the mortgage was securitized

and then sold.(referencing Ms. Rush, Beall, and Dobben) He asserted unequivocally the mortgage notes are <u>not owned</u> by American Home Mortgage.

45. According to published reports, American Home Mortgage in fact originates, securitizes and holds the securities. This has become problematic for numerous financial institutions as has been revealed in the OHIO Deutsche Bank rulings preventing foreclosures. The reason is clear, the entities who created these securtized trusts did so under securities laws, and they did not follow proper assignment protocal. Proper assignments and chain of title is essential in proving ownership of a note.  As set forth in numerous pleadings in this case, lost notes lessen the value of mortgages due to these problems with asserting rights against the mortgagor.

46. The true parties of interest, if any, other then the Debtor's must make important decisions about the valuable assets. I assert this issue also brings important questions to the surface of how Plaintiff's loan may not be part of the bankrupt entities, but bankrupt entity money may have been used, and continues to be used to defend the lawsuit. If American Home Mortgage does not "own" my loan anymore, as they claim, then the rescission remedy will affect not them, but whomever "owns" the note. So why isn't that person the one defending the action I'm asserting.

47. American Home did fail to alert TRIAD as to the true status of my loan, so can it be clear that other parties of interest have been notified. American Home failed to include my lawsuit in the initial pleading before the first sales of assets. American Home failed to notify me as stated in filings that: vi. Entities known to the Debtors to possess and/or exercise any control over any of the Assets to be sold. vii. entities known to the Debtors to assert any rights in any action of any of  the Assets. ix. All other entities which the Debtors believe may have a claim against the Debtor's estate. TRIAD and Bank of  America are asserting misrepresentations or false communications or lack thereof.

48. This filing will serve as notice to any and all prospective purchasers of this note
of the issues regarding this loan, to the bankruptcy Trustee if the true owner is one of the
American Home Mortgage bankrupt entities, or to the true owner of the note which has
yet to be revealed.  This filing also serves as notice to nay parties of interest or
creditors American Home has failed to engage in loss mitigation, has repeatedly ignored and
failed to address  issues presented by Ms. Rush, and has repeatedly threatened her with
foreclosure. American Home has failed to answer the RESPA Qualified Written Requests.
American Home has failed to respond to disclosure under TILA 1641(f)(2) which I
intend tohold the master servicer and/or indenture trustee responsible for allowing the breach. It
is their duty under securitization documents to ensure loans are serviced properly. Failure to do
so breaches their contractual and fiduciary duty to the investors in those trusts. American Home
Mortgage repeatedly fails to employ principle of good faith and fair dealing thereby
negligently managing either an asset of the estate or an asset of the true owner of the note. I have
identified numerous issues which could easily be brought as class action litigation. For  the
investors it will be they who suffer, not the Debtor.

49. Once again loans may be sold without any protective paragraph of under 363(o) after
counsel falsely asserted they usually, "beat them to the punch," and voluntarily add it. This in
fact is just another blantant lie, as the Broadhollow loans, and now these do not contain any such
protections.

50. Plaintiff strongly objects if her loan is included in any of these transactions. Debtors are
using the bankruptcy court to relieve them of liabilities due to legal complaints that sound in
Fraud. I also assert that under 363 and 541 of the bankruptcy code, I'm entitled to purchase the
interest in my loan for the same value as offered to any other entity. If American Home

proposes to sell my loan for less then face value, as they did with the Broadhollow non-performing loans, I'm entitled to the same price.

51. I assert that insider trading may in fact be taking place as loans are being transferred to related financing partners for less then face value with no liens or liabilities and those financing partner can turn around and enforce those loans for 100 cents on the dollar. Citigroup who is one of the parties to the Broadhollow and Melville loan sales is under legal action related to the stock offering in April it underwrote for American Home Mortgage. I believe all of these issues should be investigated as possibly being subject to scrutiny under insider trading claims in bankruptcy.

In re Arm, 87 F.3d 1046 (9th Cir. 1996)
"We make clear, what we have not held before, that the indirect benefit to the debtor from a fraud in which he participates is sufficient to prevent the debtor from receiving the benefits that bankruptcy law accords the honest person. *See In re Ashley*, 903 F.2d 599, 604, n. 4 (9th Cir.1990)."

In re Begun, 136 B.R. 490, 494 (Bankr. S.D. Ohio 1992)
"False Pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression . . . . A false pretense has been defined to include a "mute charade" where the debtor's conduct is designed to convey an impression without oral representation. . A "false representation" on the other hand is an expressed misrepresentation.

In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992)
§ 523(a)(2)(B).
"This court has not previously ruled on what a creditor must prove in a nondischargeability action under section 523(a)(2)(B). However, we have held that, to recover under companion section 523(a)(2)(A), the creditor must show:
a representation of fact by the debtor,
that was material
that the debtor knew at the time to be false,
(4)that the debtor made with the intention of deceiving the creditor,
upon which the creditor relied,
that the creditor's reliance was reasonable,
that damage proximately resulted from the misrepresentation."
Same test applies in both (a)(2)(A) and (B) cases. *Siriani* concentrates on burden of proof regarding proximate cause - did creditor have reasonable prospects of collecting - and reasonable reliance.

In re Levy, 951 F.2d 196 (9th Cir. 1991), *cert. denied*, 504 U.S. 985 (1992)
Punitive damage award not excepted from discharge under § 523(a)(2).

In re Rose, 934 F.2d 901, 903 (7th Cir. 1991)
"Larceny is proven for 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner"

In re Graziano, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983)
Embezzlement = "fraudulent appropriation by a person to whom such property has been entrusted or into whose hands it has lawfully come."

In re Gonzales, 22 B.R. 58 (9th Cir. B.A.P. 1982)
Subcontractor used trust fund money to pay others. Held, "Not necessary to prove an intentional wrong by a debtor where it is shown that debtor committed a defalcation with respect to funds held in trust."

In re Peklar, 260 F.3d 1035 (9th Cir. B.A.P. 2001)
"A judgment for conversion under California substantive law decides only that the defendant has engaged in the "wrongful exercise of dominion" over the personal property of the plaintiff. It does not necessarily decide that the defendant has caused "willful and malicious injury" within the meaning of § 523(a)(6)."

In re Jercich, 238 F.3d 1202 (9th Cir. 2001), *cert. denied*, 533 U.S. 930 (2001)
Although a simple breach of contract is not actionable under § 523(a)(6), "where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." Tortious conduct does not have to be independent of the breach of contract. Here, debtor was found to have the "clear ability" to pay wages, but willfully "chose not to."
"We hold...that under *Geiger,* the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct."

In re Riso, 978 F.2d 1151 (9th Cir. 1992)
Breach of right of first refusal was a breach of contract - "An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct."
In re Britton, 950 F.2d 602 (9th Cir. 1991)
Punitive damages not discharged under § 523(a)(6). Review of standard.
In re Littleton, 942. F.2d 551 (9th Cir. 1991)
(a)(6) and (a)(4) - embezzlement
In re Itule, 114 B.R. 206 (9th Cir. B.A.P. 1990)
Willful conversion - calculation of damages.

In re Britton, 950 F.2d 602 (9th Cir. 1991)
Punitive damages not discharged under § 523(a)(6). Review of standard.
In re Littleton, 942. F.2d 551 (9th Cir. 1991)
(a)(6) and (a)(4) - embezzlement
In re Itule, 114 B.R. 206 (9th Cir. B.A.P. 1990)

17

Willful conversion - calculation of damages.

52.    Upon the filing of this bankruptcy case, the estate was created. The property known as 2651 Peery Drive Churchville Md. 21028 , loan number #1001222336 became property of the estate, or is the subject of other assets which numerous banks and government entities are in the process petitioning the court to regain control of. This includes, but is not limited to, all of the debtor's legal or equitable property interests, servicing rights, escrow accounts, loan modification rights, as well as interests in property either recovered by a trustee, preserved for the benefit of the estate, or ordered transferred to the estate, such as avoidable preferences and fraudulent transfers. 11 U.S.C. §541 (aX1-7).

53.    Paula Rush renews her assertion that the Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of affording relief only to an "honest but unfortunate debtor." Congress did not favor giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws. Accordingly, Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt .... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

54.    It is not only the actual value of the "money, property, services, or . . . credit" the debtor obtained through fraud that is non-dischargeable in bankruptcy, but also treble "punitive" damages and attorneys fees and costs related to the fraud. This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in Cohen v. de la Cruz. Debts which can't be discharged in bankruptcy....(8) Debts incurred due to false

statements made with the intent to deceive (9) Fraud committed in a fiduciary capacity, such as

embezzlement or larceny (10) Punitive damage claims for "willful and malicious" acts

55.   Plaintiff moves this court pursuant to U.S.C. § 332 et seq. in order to

protect the property rights pursuant to U.S.C. §363 et seq. of all borrowers whose loans are now

part of the Debtor's estate and to protect the interest of all borrowers in reference

to currently pending sales of negotiable instruments, documents of title, deposit accounts, and

other assets of the estate under 363(a)(b)(1), which may or may not include Ms. Rush's property.

56.   Plaintiff moves this court, for the bankruptcy trustee as the representative of the

estate, pursuant to U.S.C. §323 (a) and U.S.C. §363 (a) to protect all  negotiable instruments,

documents of title, securities, deposit accounts, whenever acquired in which the estate and an

entity other than the estate have an interest and includes the proceeds, or profits of property and

the fees, charges, accounts or other payments for the use or occupancy, whether existing before

or after the commencement of a case.

57.   In this capacity the bankruptcy trustee pursuant to §323 (b) has the capacity to sue

and to be sued. The relief requested will protect the Debtor's estate from further legal action due

to the negligent actions of American Home Mortgage et al, during the Chapter 11

liquidation process.

58.  All borrowers, including but not limited to Ms. Rush,  have the right to know the

true owner of the note as defined under U.S.C. §741(2)(A) et seq; and any entity that has a claim

as defined under U.S.C. §741(2)(B)et seq.

59.  Secured Claims. Secured claims are defined as including "liens,"

11 U.S.C. § 101(37), "security," 11 U.S.C. § 101(49), "security interest," 11 U.S.C. § 101(51),

"security agreement" 11 U.S.C. § 101(50), and "secured claim," 11 U.S.C. § 506(a). An allowed

claim secured by a lien on property in which the estate has an interest, or that is subject to setoff,

is a "secured claim" to the extent of the value of the creditor's interest in the estate's interest in

the property, or the amount subject to setoff. 11 U.S.C. § 506(a). A secured claim carries the

right to "adequate protection" of collateral. 11 U.S.C. §§ 361-364; see United Sav. Ass'n v.

Timbers of Inwood Forest Assocs., 484 U.S. 365 (1988).

60.   Important issues need to be addressed concerning "customer property" as defined

under U.S.C. §741(4)et seq.,  including the security, and proceeds of such security, property,

received, acquired, or held by or for the account of the debtor, from or for the securities account

of a customer. Property such as deed of trust, securities, and escrow accounts which may have

been unlawfully converted that is the lawful property of the estate.

61.   Borrowers have the right to disclosure of any known and unknown parties of

interest in their notes, including but not limited to any and all loan financing partners, credit

default swap partners, guarantors, master loan servicer, credit insurers, credit enhancement

providers, whether that party insures an individual loan or an entire loan pool, including  any

party who as defined under 741 (7) (A)(i) which owns a security interests or provides insurance

associated with a particular loan or  loan pool that carries any credit enhancements, or any

guarantee as defined under 741 (A)(ix).

62.   The Debtor's estate, and other known and unknown parties of interest are being

unreasonably exposed  to losses due to fraudulent and negligent acts on the part of, mortgage

brokers, other vendors such as foreclosure attorneys, and remaining "AHM" employees. Current

employees, which are being paid a 40% premium from the Debtor's estate for their continued

services, employed by "AHM" Servicing Center are not conducting themselves with honesty, integrity or within the legal guidelines required by the investors, or insures of the loans in which they are servicing.

63.  Plaintiff has determined that in fact TRIAD was the loan insurer and this court is well aware of the current dispute between American Home and TRIAD.  American Home did represent to TRIAD  that Ms. Rush's loan had no pending legal issues and attempted to make a insurance claim on two occasions. AHM Debtors may be attempting a quick sale of Plaintiff's note without the purchaser accepting the liability associated with the loan.

64.   This filing will serve as notice to all parties of interest,  if no alternative resolution can be found, Ms. Rush will be seeking Relief from stay, to continue the case currently stayed in Greenbelt Md. Federal court before the Honorable Judge Willam Nickerson, case WMN-07-CV-854.

65.  Debtor's have asserted over and over again that they do not believe that Ms. Rush cooorespondance qualified as a RESPA qualified written request. They have stated over and over again that due to pending litigation they do not have to answer RESPA letters. Ms. Rush has confirmed directly with RESPA in Washington DC that this is just not true. As long as the servicer remains the servicer during pending litigation they still must answer all cooorespondance.

66.  The RESPA statute does not in any way relieve them of that requirement. Debtor's have asserted by way of letter from Young Conaway Stargatt  Taylor, that they do not have to discuss Ms. Dobben's issue with Ms. Rush acting as a consumer advocate for her. However RESPA clearly states an advocate can speak for a borrower to the servicer. No where in the statute does it say, unless the servicer doesn't like the advocate. To date American Home Mortgage has failed to respond to Ms. Dobben's issues.

67.  Any assignee or purchaser of loan notes and Deeds of Trust and loan

servicing rights must be informed of any potential liability which attaches with the transfer of

those notes.  All borrower rights need to be protected.

## TRUTH IN LENDING ACT (TILA) 15 USC 1601-1667f

Sec. 1635. - Right of rescission.
Any consumer who has the right to rescind a transaction under section 1635 of this title may
rescind the transaction as against any assignee of the obligation.
Sec. 1641. - Liability of assignees;
(f) Treatment of servicer
(2) Servicer not treated as owner on basis of assignment for administrative convenience A
servicer of a consumer obligation arising from a consumer credit transaction shall not be treated
as the owner of the obligation for purposes of this section on the basis of an assignment of the
obligation from the creditor or another assignee to the servicer solely for the administrative
convenience of the servicer in servicing the obligation. **Upon written request by the obligor,
the servicer shall provide the obligor, to the best knowledge of the servicer, with the name,
address, and telephone number of the owner of the obligation or the master servicer of the
obligation. ( emphasis added)**
(3) "Servicer" defined
For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2)
of title 12.

68.  Borrowers have the right to disclosure of any known and unknown parties of

interest in their notes, including but not limited to any and all loan financing partners, credit

default swap partners, guarantors, master loan servicer, credit insurers, credit enhancement

providers, whether that party insures an individual loan or an entire loan pool, including  any

party who as defined under 741 (7) (A)(i) which owns a security interests or provides insurance

associated with a particular loan or  loan pool that carries any credit enhancements, or any

guarantee as defined under 741 (A)(ix).

69.  Judges are now digging deeper and it is becoming increasingly difficult for the

Lenders to hide the in the complex web displayed in this case of refusing to provide the

information of who actually owns the interest in these mortgages. Whether it is for protection of

the upper level party investors, or a sick game of borrower torture tactics, it is illegal under

Federal Law TILA 1641(f)(2) not to disclose that information.

In *In re Foreclosure Cases*, **Judge Christopher A. Boyko** made it clear that the Federal District Court would challenge this common state court practice of proceeding with a foreclosure without having to present an actual mortgage or assignment in the plaintiff-lender's name.

In *In re Foreclosure Cases*, the named plaintiff-lenders alleged that they were the holders of the applicable notes and mortgages underlying the real properties at issue. However, in each of the foreclosure cases, the attached notes and mortgages **identified the mortgagee and promisee as the original lending institution** - one other than the named plaintiff-lender before the court. Further, in each of the cases, the preliminary judicial reports attached as exhibits to the complaints made no reference to the named plaintiff-lenders in the recorded chain of title and showed no interest.

Judge Boyko **admonished counsel** in stating that: "The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate."

70.  Petitioner moves this Court to consider the potential harm in the near term and the long term in creating case law in relatively new territory, which will be relied on over and over again in reference to the sale of loan assets when an originator/lender and subsequent loan servicer enters bankruptcy. Giving due regard to the intentions of the Bankruptcy Abuse and Consumer Protection Act passed in 2005 and the additional bills on the Senate floor which seek to enhance and clarify even further the consumer protection issues at hand.

71. As a consumer  advocate, Petitioner makes this impassioned plea on behalf of all 197,000 borrowers who are in fact  spread out all over country may not be able to speak for themselves and have no idea that potentially their rights may be affected as they are blissfully unaware. American Home originated loans up to Aug of 2007 and those loans have extended rights which could stretch over three years or more down the road.  Their fate and protections are in the hands of this court.

_____
Paula Rush pro se
2651 Peery Drive Churchville MD 21028
443-676-3509    410-914-5315

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2008, a copy of the foregoing Motion was

delivered to:


Counsel for Debtors:
Pauline K. Morgan, Esquire
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box. 391
Wilmington DE 19899-0391
Phone: 302-571-6600
Fax: 302-571-0453


Joseph  M. McMahon Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
Phone: 302-573-6491
Fax: 302-573-6497



Paula Rush pro se
2651 Peery Drive
Churchville MD 21028
443-676-3509
410-914-5315