## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                              :        **Chapter 11**
                                    :
    **American Home Mortgage**      :        **Jointly Administered**
    **Holdings, Inc. et al.,**      :        **Under Case No. 07-11047 (CSS)**
                                    :
                                    :        **RE: DOCKET # 2754**
    **Debtors**                     :

### OBJECTION TO SALE OF LOANS
### FREE AND CLEAR OF LIENS OR LIABILITIES

Laura Beall, pro se, hereby renews the request for demand to know the true

owner and master servicer of her loan #1000570969 under ("TILA"), 15 U.S.C. Title 15, Chapter

41, Subchapter 1641(f)(2). The Debtor's are proceeding to attempt to sell loans under a

description that fits my loan, therefore I renew my request for disclosure.

Ms. Beall respectfully requests the Court consider the Debtor's attempts to sell

these loan assets free and clear of liens and liabilities in order to negate the protections

borrowers have as stated in their Deed of Trust, the document that pledged their home as

collateral, under the agreed terms that their rights under RESPA and TILA would be honored.

363(o) as provided for under the 2005 Bankruptcy Abuse and Consumer Protection Act.

---

1.   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Investment"), a Maryland corporation (1979);  American Home Mortgage Servicing, Inc. ( "AHM Servicing"), aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558); American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Ms. Beall strongly objects to loans sold under the circumstances which the Debtor

categorizes as being: 60 days or more delinquent, in default, and/or that may contain some underwriting or compliance issues, being sold to a former financing partner to avoid liabilities on such loans.

I assert these loan assets are a small number of loans and the borrowers should be afforded the opportunity to bid on their loans, or offered the loans at the same price as the bids.

According to the sale petition, the loans offered are as follows:

71 Unencumbered Non-Performing with an aggregate unpaid balance of 23 million owned by the Debtors but subject to AH Mortgage Acquisition liens.

46 BofA Non-Performing Loans with an aggregate unpaid balance of 14 million owned by Debtors but are a portion of the collateral securing obligations to prepetition secured lenders (Bank of America).

307 JPM Non-Performing loans with an aggregate unpaid balance of 115 million owned by the Debtors but are a portion of the collateral securing obligations to prepetition secured lender(JP Morgan).

FOR A TOTAL OF - 424 Loans

**Bankruptcy Code says:**

Section 541 (a) is an all-embracing definition which includes charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interests that the debtor may have in property of another. However, only the debtor's interest in such property becomes property of the estate.

If the debtor holds bare legal title or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541.

Section 541(d) of the House amendment is derived from section 541(e) of the Senate amendment and reiterates the general principle that where the debtor holds bare legal title without any equitable interest, that the estate acquires bare legal title without any equitable interest in the property.

**Thus, where the debtor held only legal title to the property and the beneficial interest in that property belongs to another, such as exists in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest in the property.**

Though this paragraph will include choices in action and claims by the debtor against others, it is **not intended to expand the debtor's rights against others more than they exist at the commencement of the case. He could take no greater rights than the debtor himself had.**

# 363

Section 363(k) of the House amendment is derived from the third sentence of section 363(e) of the Senate amendment. The provision indicates that a **secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof in the event the creditor is undersecured, with respect to property that is subject to a lien that secures the allowed claim of the sale of the property.**
Senate report no. 95–989

This section defines the right and powers of the trustee with respect to the use, sale or lease of property and **the rights of other parties that have interests in the property involved**. It applies in both liquidation and reorganization cases.

Subsection (a) defines "cash collateral" as cash, **negotiable instruments, documents of title,** securities, deposit accounts, or other cash equivalents **in which the estate and an entity other than the estate have an interest, such as a lien or a co-ownership interest**. The definition is not restricted to property of the estate that is cash collateral on the date of the filing of the petition.

Subsection (c) governs use, sale, or lease in the ordinary course of business. If the business of the debtor is authorized to be operated under § 721, 1108, or 1304 of the bankruptcy code, then the trustee may use, sell, or lease property in the ordinary course of business or enter into ordinary course transactions without need for notice and hearing. **This power is subject to several limitations.** First, the court may restrict the trustee's powers in the order authorizing operation of the business. Second, with respect to cash collateral, the trustee **may not** use, sell, or lease cash collateral except upon court authorization after notice and a hearing**, or with the consent of each entity that has an interest in such cash collateral**.

Under subsections (d) and (e), the use, sale, or lease of property is **further limited** by the concept of **adequate protection**. Sale, use, or lease of property in which an entity other than the **estate has an interest may be effected only to the extent not inconsistent with any relief from the stay granted to that interest's holder. Moreover, the court may prohibit or condition the use, sale, or lease as is necessary to provide adequate protection of that interest**.

Again, the trustee has the burden of proof on the issue of adequate protection. **Subsection (e) also provides that where a sale of the property is proposed, an entity that has an interest in such property may bid at the sale thereof and set off against the purchase price up to the amount of such entity's claim**. No prior valuation under section 506 (a) would limit this bidding right, since the **bid at the sale would be determinative of value.**

Subsection (f) permits sale of property free and clear of any interest in the property of an entity other than the estate. The trustee may sell free and clear if applicable nonbankruptcy law permits it, if the other entity consents, **if the interest is a lien and the sale price of the property is greater than the amount secured by the lien,** if the interest is in bona fide dispute, or if the other entity could be compelled to accept a money satisfaction of the interest in a legal or equitable proceeding. Sale under this subsection is subject to the adequate protection requirement. Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.

**\*\*At a sale free and clear of other interests, any holder of any interest in the property being sold will be permitted to bid.** If that holder is the high bidder, he will be permitted to offset the value of his interest against the purchase price of the property. Thus, in the most common situation, a holder of a lien on property being sold may bid at the sale and, if successful, may offset the amount owed to him that is secured by the lien on the property (but may not offset other amounts owed to him) against the purchase price, and be liable to the trustee for the balance of the sale price, if any.

Subsection (h) permits sale of a co-owner's interest in property in which the debtor had an **undivided ownership interest** such as a joint tenancy, a tenancy in common, or a tenancy by the entirety. Such a sale **is permissible only** if partition is impracticable, if sale of the estate's interest would realize significantly less for the estate that sale of the property free of the interests of the co-owners, **and if the benefit to the estate of such a sale outweighs any detriment to the co-owners. Subsection (i) provides protections for co-owners** and spouses with dower, curtesy, or community property rights. It gives a **right of first refusal to the co-owner** or spouse **at the price at which the sale is to be consummated.**

Subsection (k) [enacted as (l)] permits the trustee to use, sell, or lease property notwithstanding certain bankruptcy or ipso facto clauses that terminate the debtor's interest in the property or that **work a forfeiture or modification of that interest**. This subsection is not as broad as the anti-ipso facto provision in proposed 11 U.S.C. 541 (c)(1).

\*\*Subsection (m) [enacted as (n)] is **directed at collusive bidding on property** sold under this section. **It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders.** The trustees may also recover the excess of the value of the property over the purchase price, and may recover any costs, attorney's fees, or expenses incurred in voiding the sale or recovering the difference. In addition, the court is authorized to grant judgment in favor of the estate and against the collusive bidder if the agreement controlling the sale price was entered into in willful disregard of this subsection. The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances.

I hereby give notice that Ms. Beall asserts her objection to this sale or any other sale

which might include the security interest held on property 11002 Blue Roan Road, Oakton

Virginia 22124, loan number #1000570969. On August 28, 2007 Laura Beall sent a RESPA

qualified written request (or notification of issues)  and a TILA loan rescission letter which was

not answered as required under federal law (RESPA)  and to date has never been answered by

American Home Mortgage.

First American Title has already confirmed an overcharge of $381.13 for title insurance.

Refund check after being confronted with the overcharge.. This overcharge was on the HUD-1

which American Brokers Conduit/ American Home Mortgage prepared. This overcharge in and

of itself, is way over the tolerance for rescission in foreclosure of a $35- mistake.

      Objector would like to bring to this Court's attention numerous instances of

inaccurate information which has been presented to this Court.

1.  TILA 1641(f)(2)
Debtor's attorney, Mr. Brady, asserted in Court that this is not a statute that American Home is
under any obligation to comply with. The petition was reviewed by Weiner, Brodsky, Sidman,
Kider and Young, Conaway, Stargatt & Taylor, and was discussed with Mr. John Kalas,
according to bankruptcy records for fee application of Weiner, Brodsky, Sidman, Kider and
Young. It is unclear if all counsel came to the conclusion that they did not have to comply or if it
was even discussed. However it was Debtor's attorney, Mr. Brady who did certify to this court
they did not have to comply.  Upon review of other statements in transcripts, it is clear that on
occasion the Debtor's attorney simply asks the Debtor for the answer. Through this process I
think it is clear that on more then one occasion, the parties attempting to communicate or argue
for or against certain issues, have not fully made themselves well versed on the topic in question.
This is problematic when the topics are about consumer protections both inside and outside of
the bankruptcy codes. Federal laws which assert rights of borrowers that are not supposed to be
lost in bankruptcy process.

2.  The witness who Mr. Brady put on the stand, Steven Dickman, Senior Vice President of
Loan Administration, either made materially false statements, and affirmed the
normal pattern and practice of American Home is not to comply with RESPA or TILA
requirements, or doesn't understand the laws himself. The witness asserts that it is at the Master
Servicer and true owner of the note's direction that AHM  does not comply. Stating - That's what
they pay us for. So he is asserting it is also the intention of the these parties to not comply with
TILA 1641(f)(2). Wells Fargo has revealed they are master servicer on over 150,000 of
American Home Mortgage loans, and it is unclear if this is Wells Fargo's position. Plaintiff is in
the process of making further inquiries to determine and resolve that issue.

3. In transcripts before this court during the hearing for the sale of Broadhollow and Melville loans, the Debtor's witness Damian Vaulo, stated as follows:

"Well, as stated by counsel, they are high quality loans, meaning A-paper loans, agency eligible paper, Fannie, Freddie, Ginnie Mae, which is the highest quality paper. Jumbo prime loans, which is also A-paper of high quality, and what makes high quality, you know, A-paper loans is higher FICA scores, you know, lower loan to devalued ( to value) ratios, which generally trade higher in the secondary market, tried(trade) at the highest prices and generally of the Broadhollow/Melville, they're all the – a majority of the loans are of the higher quality A-paper."

In truth and in fact, on Aug 8, 2007 Bloomberg reported that American Home Mortgage's Broadhollow Funding LLC extended maturities on commercial paper after being unable to roll over $150 million of the debt.
Broadhollow had $138 million of subordinated notes cut to Ba1, the highest speculative grade, from Baa2. The notes remain on watch for further downgrade.

So in fact and in truth, well before the hearing for the sale of these notes, American Home knew that the notes were not A-paper and were on watch for further downgrade.

Considering the Debtor is once again petitioning to sell mortgage notes free and clear of liens and liabilities, Ms. Beall is reasserting the original request for demand to know the true owner of the note and master servicer as required under TILA 1641(f)(2).

American Home Mortgage told Ms. Beall via Ms. Waters that they are not required to comply to TILA and/RESPA due to their bankruptcy status.. RESPA states that as long as American Home continues to service the loan they are required to respond.

The response may be, we feel the issues you assert are invalid and we refuse to honor your request to change anything, however this would be a response, as required. They are required to respond to issues and investigate the issues presented. They are then to provide in such correspondence the name and contact number for a person within the company the borrower can contact to discuss the decision.

The statute is very clear, and American Home needs to produce evidence of legal statutes that negate the duty to answer based on their assertions.

The petition at issue states clearly the loans American Home is intending to sell may have some compliance or underwriting issues. This description would fit my loan. The issue of who is the holder in due course of this note is key to determining whether the bankruptcy estate, or some other unknown entity is the party of interest associated with this loan. This issue "holder in due course" of this mortgage note needs to be resolved. Upon information and belief, my mortgage note may have been a repurchase and is currently held in any one of the Debtor entity many Debtor and Non-Debtor subsidiaries.

I was told by the same V. P. of the servicing unit that my loan was in either pool AHMIT 2004-1 or AHMIT 2004-2.  And that Wells Fargo was the Master Servicer of the pool my loan is in.

This was again stated by the V.P. to an executive of Wells Fargo during a conference call I requested and was a part of.

Wells Fargo's Corporate Trust Services division sent me 2 letters, 10/25/07 and 12/3/07 stating that they are not the master servicer of the pool my loan is in.

In addition I received confirmation from S & P in writing on 12/12/07 that Wells Fargo is the master servicer of loan pool series 2004-1, dated 12/12/07.

On November 11, 2007 I received a demand letter from the law firm of Samuel White stating that my mortgage note has been lost, destroyed or misplaced.  It made no reference to who owned my loan or which loan pool it was in.  And he refused to address the issue with me.

This concludes that I was provided false information by American Home Mortgage, a violation of under ("TILA"), 15 U.S.C. Title 15, Chapter 41, Subchapter 1641(f) (2).  I am asserting fraudulent concealment.

Debtor's attorney stated at the hearing on Oct. 31, 2007 referring to Ms. Rush's, Ms. Dobben's and Ms. Beall loas that in general on one occasion the mortgage was sold and then securitized and on two occasions the mortgage was securitized . He asserted unequivocally the mortgage notes are not owned by American Home Mortgage.

This has become problematic for numerous financial institutions as has been revealed in the OHIO Deutsche Bank rulings preventing foreclosures. The reason is clear, the entities who created these securtized trusts did so under securities laws, and they did not follow proper assignment protocal. Proper assignments and chain of title is essential in proving ownership of a note. As set forth in numerous pleadings in this case, lost notes lessen the value of mortgages due to these problems with asserting rights against the mortgagor.

The true parties of interest, if any, other then the Debtor's must make important decisions about the valuable asset.

This filing will serve as notice to any and all prospective purchasers of this note of the issues regarding this loan, to the bankruptcy Trustee if the true owner is one of the American Home Mortgage bankrupt entities, or to the true owner of the note which has yet to be revealed. This filing also serves as notice to nay parties of interest or creditors American Home has failed to engage in loss mitigation, has repeatedly ignored and failed to address issues presented by Ms. Beall, and has repeatedly threatened her with foreclosure. American Home has failed to answer the RESPA Qualified Written Requests.

34.    Laura Beall is alleging that mortgage fraud was committed in her loan origination by an agent/partner of American Brokers Conduit.  Laura Beall has alerted American Home to this issue and has been met with a total lack of regard, and she had no recourse without cooperation except to initiate costly litigation and incur further damages.

American Home has failed to respond to disclosure under TILA 1641(f)(2) which I intend to hold the master servicer and/or indenture trustee responsible for allowing the breach. It is their duty under securitization documents to ensure loans are serviced properly. Failure to do so breaches their contractual and fiduciary duty to the investors in those trusts. American Home Mortgage repeatedly fails to employ principle of good faith and fair dealing thereby being negligent in managing either an asset of the estate or an asset of the true owner of the note in these instances..   .

Laura Beall strongly objects if her loan is included in any of these transactions. Debtors are using the bankruptcy court to intentionally relieve them of liabilities due to legal complaints that sound in fraud.

I also assert that under 363 I'm entitled to purchase the interest in my loan for the same value as offered to any other entity. Meaning, if American Home proposes to sell my loan for

In re Arm, 87 F.3d 1046 (9th Cir. 1996)
"We make clear, what we have not held before, that the indirect benefit to the debtor from a fraud in which he participates is sufficient to prevent the debtor from receiving the benefits that bankruptcy law accords the honest person. *See In re Ashley*, 903 F.2d 599, 604, n. 4 (9th Cir.1990)."

In re Begun, 136 B.R. 490, 494 (Bankr. S.D. Ohio 1992)
"False Pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression . . . . A false pretense has been defined to include a "mute charade" where the debtor's conduct is designed to convey an impression without oral representation. . A "false representation" on the other hand is an expressed misrepresentation.

In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992)
§ 523(a)(2)(B).
"This court has not previously ruled on what a creditor must prove in a nondischargeability action under section 523(a)(2)(B). However, we have held that, to recover under companion section 523(a)(2)(A), the creditor must show:

(1) a representation of fact by the debtor,
(2) that was material
(3) that the debtor knew at the time to be false,
(4) that the debtor made with the intention of deceiving the creditor,
(5) upon which the creditor relied,
(6) that the creditor's reliance was reasonable,
(7) that damage proximately resulted from the misrepresentation."
Same test applies in both (a)(2)(A) and (B) cases. *Siriani* concentrates on burden of proof regarding proximate cause - did creditor have reasonable prospects of collecting - and reasonable reliance.

In re Levy, 951 F.2d 196 (9th Cir. 1991), *cert. denied*, 504 U.S. 985 (1992)
Punitive damage award not excepted from discharge under § 523(a)(2).

In re Rose, 934 F.2d 901, 903 (7th Cir. 1991)
"Larceny is proven for 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner"

In re Graziano, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983)
Embezzlement = "fraudulent appropriation by a person to whom such property has been entrusted or into whose hands it has lawfully come."

In re Gonzales, 22 B.R. 58 (9th Cir. B.A.P. 1982)
Subcontractor used trust fund money to pay others. Held, "Not necessary to prove an intentional wrong by a debtor where it is shown that debtor committed a defalcation with respect to funds held in trust."

In re Peklar, 260 F.3d 1035 (9th Cir. B.A.P. 2001)
"A judgment for conversion under California substantive law decides only that the defendant has engaged in the "wrongful exercise of dominion" over the personal property of the plaintiff. It does not necessarily decide that the defendant has caused "willful and malicious injury" within the meaning of § 523(a)(6)."

In re Jercich, 238 F.3d 1202 (9th Cir. 2001), *cert. denied*, 533 U.S. 930 (2001)
Although a simple breach of contract is not actionable under § 523(a)(6), "where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." Tortious conduct does not have to be independent of the breach of contract. Here, debtor was found to have the "clear ability" to pay wages, but willfully "chose not to."
"We hold...that under *Geiger,* the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct."

In re Riso, 978 F.2d 1151 (9th Cir. 1992)
Breach of <u>right of first refusal</u> was a breach of contract - "An intentional breach of

contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct."
In re Britton, 950 F.2d 602 (9th Cir. 1991)
Punitive damages not discharged under § 523(a)(6). Review of standard.
In re Littleton, 942. F.2d 551 (9th Cir. 1991)
(a)(6) and (a)(4) - embezzlement
In re Itule, 114 B.R. 206 (9th Cir. B.A.P. 1990)
Willful conversion - calculation of damages.

25.     Upon the filing of this bankruptcy case, the estate was created. The property

known as 11002 Blue Roan Raod, Oakton Virginia 22124 Drive,  loan number #1000570969

became property of the  estate, or is the subject of other assets which

numerous banks and government entities are in the process petitioning the court to regain control

of.  This includes, but is not limited to, all of the debtor's legal or equitable property interests,

servicing rights, escrow accounts, loan modification rights, as well as interests in property either

recovered by a trustee, preserved for the benefit of the estate, or ordered transferred to the estate,

such as avoidable preferences and fraudulent transfers. 11 U.S.C. §541 (aX1-7).

26.     Laura Beall renews her assertion that the Bankruptcy Code has long prohibited

debtors from discharging liabilities incurred on account of alleged fraud, carrying forth a basic

policy of affording relief only to an "honest but unfortunate debtor." Congress did not favor

giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy)

over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws. Accordingly,

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt

…. for money, property, services, or an extension, renewal, or refinancing of credit, to the extent

obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

In re Arm, 87 F.3d 1046 (9th Cir. 1996)
"We make clear, what we have not held before, that the indirect benefit to the debtor from a fraud in which he participates is sufficient to prevent the debtor from receiving the benefits that

bankruptcy law accords the honest person. *See In re Ashley*, 903 F.2d 599, 604, n. 4 (9th Cir.1990)."

In re Begun, 136 B.R. 490, 494 (Bankr. S.D. Ohio 1992)
"False Pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression . . . . A false pretense has been defined to include a "mute charade" where the debtor's conduct is designed to convey an impression without oral representation. . A "false representation" on the other hand is an expressed misrepresentation.

In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992)
§ 523(a)(2)(B)."This court has not previously ruled on what a creditor must prove in a nondischargeability action under section 523(a)(2)(B). However, we have held that, to recover under companion section 523(a)(2)(A), the creditor must show:
(1) a representation of fact by the debtor,
(2) that was material
(3) that the debtor knew at the time to be false,
(4) that the debtor made with the intention of deceiving the creditor,
(5) upon which the creditor relied,
(6) that the creditor's reliance was reasonable,
(7) that damage proximately resulted from the misrepresentation."
Same test applies in both (a)(2)(A) and (B) cases. *Siriani* concentrates on burden of proof regarding proximate cause - did creditor have reasonable prospects of collecting - and reasonable reliance.

In re Levy, 951 F.2d 196 (9th Cir. 1991), *cert. denied*, 504 U.S. 985 (1992)
Punitive damage award not excepted from discharge under § 523(a)(2).

In re Rose, 934 F.2d 901, 903 (7th Cir. 1991)
"Larceny is proven for 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner"

In re Graziano, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983)
Embezzlement = "fraudulent appropriation by a person to whom such property has been entrusted or into whose hands it has lawfully come."
In re Peklar, 260 F.3d 1035 (9th Cir. B.A.P. 2001)
"A judgment for conversion under California substantive law decides only that the defendant has engaged in the "wrongful exercise of dominion" over the personal property of the plaintiff. It does not necessarily decide that the defendant has caused "willful and malicious injury" within the meaning of § 523(a)(6)."

In re Jercich, 238 F.3d 1202 (9th Cir. 2001), *cert. denied*, 533 U.S. 930 (2001)
Although a simple breach of contract is not actionable under § 523(a)(6), "where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." Tortious conduct does not have to be independent of the breach of contract. Here, debtor was found to have the "clear ability" to pay wages, but willfully "chose not to."

"We hold...that under *Geiger*, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct."

In re Riso, 978 F.2d 1151 (9th Cir. 1992)
Breach of <u>right of first refusal</u> was a breach of contract - "An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct."

In re Britton, 950 F.2d 602 (9th Cir. 1991)
Punitive damages not discharged under § 523(a)(6). Review of standard.
In re Littleton, 942. F.2d 551 (9th Cir. 1991)
(a)(6) and (a)(4) - embezzlement
In re Itule, 114 B.R. 206 (9th Cir. B.A.P. 1990)
Willful conversion - calculation of damages.

27.    It is not only the actual value of the "money, property, services, or . . . credit" the debtor obtained through fraud that is non-dischargeable in bankruptcy, but also treble "punitive" damages and attorneys fees and costs related to the fraud. This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in <u>Cohen v. de la Cruz</u>. Debts which can't be discharged in bankruptcy....(8) Debts incurred due to false statements made with the intent to deceive (9) Fraud committed in a fiduciary capacity, such as embezzlement or larceny (10) Punitive damage claims for "willful and malicious" acts

33.    Plaintiff moves this court pursuant to U.S.C. § 332 et seq. in order to protect the property rights pursuant to U.S.C. §363 et seq. of all borrowers whose loans are now part of the Debtor's estate and to protect the interest of all borrowers in reference to currently pending sales of negotiable instruments, documents of title, deposit accounts, and other assets of the estate under 363(a)(b)(1), which may or may not include Laura Beall's property.

35.    Ms. Beall moves this court, for the bankruptcy trustee as the representative of the

estate, pursuant to U.S.C. §323 (a) and U.S.C. §363 (a) to protect all negotiable instruments,

documents of title, securities, deposit accounts, whenever acquired in which the estate and an

entity other than the estate have an interest and includes the proceeds, or profits of property and

the fees, charges, accounts or other payments for the use or occupancy, whether existing before

or after the commencement of a case.

36. If the Debtor's estate is the true owner of the note, then the bankruptcy trustee is

responsible pursuant to §323 (a) for preserving the assets of the estate of

American Home or any of it's affiliated bankrupt entities. This should include any attempts to

sell Non-Debtor subsidiary property through this Court. The trustee is also required to

ascertain the conduct of Debtors in reference to fraudulent transfer of assets leading up to or

through the bankruptcy proceedings.

37. All borrowers, including but not limited to Laura Beall, have the right to know the

true owner of the note as defined under U.S.C. §741(2)(A) et seq; and any entity that has a claim

as defined under U.S.C. §741(2)(B)et seq.

38. Secured Claims. Secured claims are defined as including "liens,"

11 U.S.C. § 101(37), "security," 11 U.S.C. § 101(49), "security interest," 11 U.S.C. § 101(51),

"security agreement" 11 U.S.C. § 101(50), and "secured claim," 11 U.S.C. § 506(a). An allowed

claim secured by a lien on property in which the estate has an interest, or that is subject to setoff,

is a "secured claim" to the extent of the value of the creditor's interest in the estate's interest in

the property, or the amount subject to setoff. 11 U.S.C. § 506(a). A secured claim carries the

right to "adequate protection" of collateral. 11 U.S.C. §§ 361-364; see United Sav. Ass'n v.

Timbers of Inwood Forest Assocs., 484 U.S. 365 (1988).

39.   Important issues need to be addressed concerning "customer property" as defined

under U.S.C. §741(4)et seq.,  including the security, and proceeds of such security, property,

received, acquired, or held by or for the account of the debtor, from or for the securities account

of a customer. Property such as deed of trust, securities, and escrow accounts which may have

been unlawfully converted that is the lawful property of the estate.

40.   Borrowers have the right to disclosure of any known and unknown parties of

interest in their notes, including but not limited to any and all loan financing partners, credit

default swap partners, guarantors, master loan servicer, credit insurers, credit enhancement

providers, whether that party insures an individual loan or an entire loan pool, including  any

party who as defined under 741 (7) (A)(i) which owns a security interests or provides insurance

associated with a particular loan or  loan pool that carries any credit enhancements, or any

guarantee as defined under 741 (A)(ix).

41.   Borrowers need to be assured that all rights and remedies under TILA and

RESPA and personal information as required is protected and preserved in the American Home

bankrutpcy  proceedings.  Any assignee or purchaser of loan notes and Deeds of Trust and loan

servicing rights must be informed of any potential liability which attaches with the transfer of

those notes.  All borrower rights need to be protected under:

**TRUTH IN LENDING ACT (TILA) 15 USC 1601-1667f**
Sec. 1635. - Right of rescission.
Any consumer who has the right to rescind a transaction under section 1635 of this title may
rescind the transaction as against any assignee of the obligation.

Sec. 1641. - Liability of assignees;
<u>(f) Treatment of servicer</u>
(2) Servicer not treated as owner on basis of assignment for administrative convenience A
servicer of a consumer obligation arising from a consumer credit transaction shall not be treated
as the owner of the obligation for purposes of this section on the basis of an assignment of the
obligation from the creditor or another assignee to the servicer solely for the administrative

convenience of the servicer in servicing the obligation. **Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation. ( emphasis added)**
(3) "Servicer" defined
For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of title 12.

42.  Borrowers have the right to disclosure of any known and unknown parties of

interest in their notes, including but not limited to any and all loan financing partners, credit

default swap partners, guarantors, master loan servicer, credit insurers, credit enhancement

providers, whether that party insures an individual loan or an entire loan pool, including  any

party who as defined under 741 (7) (A)(i) which owns a security interests or provides insurance

associated with a particular loan or  loan pool that carries any credit enhancements, or any

guarantee as defined under 741 (A)(ix).

43.  Judges are now digging deeper and it is becoming increasingly difficult for the

Lenders to hide the in the complex web displayed in this case of refusing to provide the

information of who actually owns the interest in these mortgages. Whether it is for protection of

the upper level party investors, or a sick game of borrower torture tactics, it is illegal under

Federal Law TILA 1641(f)(2) not to disclose that information.

In *In re Foreclosure Cases*, *Judge Christopher A. Boyko* made it clear that the Federal District Court would challenge this common state court practice of proceeding with a foreclosure without having to present an actual mortgage or assignment in the plaintiff-lender's name.

In *In re Foreclosure Cases*,  the named plaintiff-lenders alleged that they were the holders of the applicable notes and mortgages underlying the real properties at issue. However, in each of the foreclosure cases, the attached notes and mortgages **identified the mortgagee and promisee as the original lending institution** - one other than the named plaintiff-lender before the court. Further, in each of the cases, the preliminary judicial reports attached as exhibits to the complaints made no reference to the named plaintiff-lenders in the recorded chain of title and showed no interest.

 Judge Boyko **admonished counsel** in stating that: "The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal

compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate."

_____

Laura Beall
11002 Blue Roan Road
Oakton, Virginia 22124
(703) 691-9092
(703) 352-9602, fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2008, a copy of the foregoing Motion was hand

delivered to:


Counsel for Debtors:
Pauline K. Morgan, Esquire
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box. 391
Wilmington DE 19899-0391
Phone: 302-571-6600
Fax: 302-571-0453


Joseph  M. McMahon Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
Phone: 302-573-6491
Fax: 302-573-6497




                                                    Date:_____
                                        Laura Beall, pro se
                                        11002 Blue Roan Road
                                        Oakton, Virginia  22124
                                         (703) 691-9092
                                         (703) 352-9602, fax

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2008, a copy of the foregoing Motion was hand

delivered to:


Counsel for Debtors:
Pauline K. Morgan, Esquire
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box. 391
Wilmington DE 19899-0391
Phone: 302-571-6600
Fax: 302-571-0453


Joseph M. McMahon Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
Phone: 302-573-6491
Fax: 302-573-6497


*Laura Beall* Date: 1-28-08
Laura Beall, pro se
11002 Blue Roan Road
Oakton, Virginia 22124
(703) 691-9092
(703) 352-9602, fax

18

compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate."

*Laura Beall* 1-28-08

Laura Beall
11002 Blue Roan Road
Oakton, Virginia 22124
(703) 691-9092