# Exhibit 1

## Settlement Agreement

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into as of the 31st day of January, 2008 between and among Natixis Real Estate Capital Inc. f/k/a IXIS Real Estate Capital Inc. ("Natixis") and American Home Mortgage Investment Corporation ("AHMIC"), and each of its direct and indirect subsidiaries as debtors and debtors in possession (collectively with AHMIC, the "Debtors"). Natixis and the Debtors are referred to herein as the "Parties".

WHEREAS, on August 6, 2007 (the "Commencement Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court");

WHEREAS, prior to the Commencement Date, Natixis and certain of the Debtors entered into the Third Amended and Restated Master Repurchase Agreement, dated as of July 15, 2005 (as amended, the "Repurchase Agreement"), among Natixis, American Home Mortgage Corp. ("AHMC"), AHMIC, American Home Mortgage Acceptance, Inc. ("AHMA"), American Home Mortgage Holdings, Inc. ("AHMH") and American Home Mortgage Servicing, Inc. f/k/a Columbia National, Incorporated ("AHMS");

WHEREAS, as of January 31, 2008, the Debtors are holding in a segregated account (the "P&I Account") $ 36,272.87 in principal and interest payments made by the Mortgagors (as defined in the Repurchase Agreement) to the Debtors relating to the Mortgage Loans (as defined below), whether collected prior to or after the Commencement Date. The Debtors are also holding in a segregated account (the "T&I

Account") $ 38,220.20 in tax and insurance payments made by the Mortgagors to the Debtors relating to the Mortgage Loans, whether collected prior to or after the Commencement Date;

WHEREAS, prior to the Commencement Date, Natixis, the Debtors and Deutsche Bank National Trust Company, as Custodian and Disbursement Agent, entered into the Third Amended and Restated Custodial and Disbursement Agreement, dated as of January 29, 2007 (as amended, the "Custodial Agreement", sometimes referred to with the Repurchase Agreement as the "Agreements");

WHEREAS, Natixis allegedly delivered a Notice of Default and Reservation of Rights, dated August 3, 2007 ("Notice of Seller's Defaults"), to the Debtors;

WHEREAS, on or about October 29, 2007, Natixis filed a Motion for Relief from the Automatic Stay (the "Stay Relief Motion"), seeking, among other things, the transfer of Servicing Rights (as defined below) and the transfer to Natixis of proceeds in connection with purported purchases by certain investors ("Take-Out Investors") of Mortgage Loans, including the Mortgage Loans identified in Exhibit A (the "Unreleased Loans");

WHEREAS, Natixis has consented from time to time to adjourn the Stay Relief Motion, pending resolution of the matters contained herein;

WHEREAS, Natixis and the Debtors believe it is in their respective best interests to compromise and settle without further litigation, solely with respect to those

matters contained herein, the Stay Relief Motion and the Parties' respective rights and obligations under the Repurchase Agreement and Custodial Agreement;

NOW, THEREFORE, Natixis and the Debtors agree as follows:

## ARTICLE I

## MORTGAGE REPURCHASE AGREEMENT

1.1    Notwithstanding any statements contained herein, this Settlement Agreement shall not effect, establish or in any way transfer either of the Parties' rights, title or interest with respect to the Unreleased Loans set forth on Exhibit A. For purposes of this Settlement Agreement, the Unreleased Loans are not included in the term Mortgage Loans as defined in this Settlement Agreement.

1.2    Transfer of Servicing.    Effective on March 1, 2008, (the "Servicing Transfer Date"), the Debtors shall transfer to Natixis or its designee, all right, title, and interest in the servicing of the mortgage loans excluding the Excluded HELOC Loans (as defined below) and the Unreleased Loans (listed on Exhibit A), that are the subject of the Repurchase Agreement (the "Mortgage Loans"), including, without limitation, all rights to collect fees and other payments made on account of the Mortgage Loans (the "Servicing Rights"); less any unreimbursed advances appropriately made by the Debtors in accordance with those mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related mortgaged property is located and any servicing fees, if such servicing fees are paid to the Debtors pursuant to a written agreement between the Parties existing as of the date hereof; and provided further, however, that the Servicing

Transfer Date will be no earlier than the date on which the Court enters an order approving this Settlement Agreement (the "Approval Date").

The Debtors shall transfer the Servicing Rights in accordance with the Servicing Transfer Guidelines set forth in Exhibit B annexed hereto, which may be modified only upon written consent of the Parties. Natixis (or its designee) intends to prepare and send goodbye/hello letters related to the Mortgage Loans on or about the fifteenth day prior to the Servicing Transfer Date but, in any event, within such time as complies with applicable law. Natixis shall bear all costs and fees associated with the preparation and mailing of such goodbye/hello letters.

1.3    Mortgage Files. The Debtors shall use good-faith efforts to ensure any and all instruments, agreements and other books, records, and reports and data with respect to the Mortgage Loans (excluding the Excluded HELOC Loans and Unreleased Loans), including the credit files related to the Mortgage Loans and any other instruments necessary to document or service a mortgage loan (collectively, the "Mortgage Files") in the Debtors' possession, are intact and to resolve any document exceptions to the Mortgage Files and the servicing files within a reasonable time after the discovery thereof to the extent such documents exist.

1.4    Servicing Transfer Cooperation. The Debtors, Natixis and its designee, if any, shall cooperate in connection with the transfer of the Servicing Rights and shall use good faith efforts to cause the transfer in an efficient, non-disruptive manner.

1.5    Exercise of Rights Under Repurchase Agreement. In accordance with Section 13(a)(4)(B) of the Repurchase Agreement, in lieu of selling the Mortgage Loans,

Natixis shall give the Debtors credit against the aggregate unpaid Repurchase Price and any other amounts due from the Debtors under the Repurchase Agreement. Natixis agrees that the Proofs of Claim filed on January 11, 2008 against AHMH, AHMIC, AHMA, AHMS and AHMC [(claim numbers 8918, 1819, 8920, 8921 and 8922, respectively)] solely with respect to the Mortgage Loans shall be reduced to zero. Natixis shall maintain a contingent claim for (i) any breach by the Debtors of this Settlement Agreement, (ii) any claims or causes of action that arise out of or are related to any contract between Natixis and the Debtors other than the Repurchase Agreement and the Custodial Agreement, and (iii) any claims that any deficiencies in the Mortgage Files, as required to be transferred to Natixis under the Servicing Transfer Guidelines, that ultimately impacts the value of the underlying Mortgage Loan.

1.6     HELOC Loans. The home equity line of credit loans identified in Exhibit C (the "Excluded HELOC Loans") are expressly excluded from the Mortgage Loans and shall be retained, abandoned or disposed of by the Debtors in their discretion. The Debtors consent to provide notice to borrowers under the Excluded HELOC Loans that neither the Debtors, as lender, nor any other entity will honor draw requests under the Excluded HELOC Loans. For the avoidance of doubt, the only home equity line of credit loans included in the Mortgage Loans are the two home equity line of credit loans identified in Exhibit D.

1.7     P&I Account; T&I Account. On or within three business days after the Servicing Transfer Date, the Debtors shall transfer to Natixis or its designee, by wire transfer, any and all amounts in the T&I Account less any unreimbursed advances appropriately made by the Debtors in accordance with those mortgage servicing practices

of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related mortgaged property is located. On or within three business days after the Servicing Transfer Date, and on a monthly basis thereafter, the Debtors shall transfer to Natixis or its designee, by wire transfer, all amounts in the P&I Account, less any unreimbursed advances appropriately made by the Debtors in accordance with those mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related mortgaged property is located and any servicing fees, if such servicing fees are paid to the Debtors pursuant to a written agreement between the Parties existing as of the date hereof. On or within seven business days after the Servicing Transfer Date, the Debtors will provide payment histories for the Mortgage Loans. Natixis will have 30 days from receipt of the payment histories to advise the Debtors if any payments posted or that should have been posted to the system were not included in the amounts transferred by the Debtors from the T&I Account and the P&I Account. If after the Servicing Transfer Date, Natixis or the Debtors discover that any payments posted or that should have been posted to the system after the Petition Date, were received by the Debtors, but not included in the amounts transferred by the Debtors from the T&I Account and the P&I Account or the Debtors receive additional funds relating to any Mortgage Loan, the Debtors will remit such funds, less any unreimbursed advances appropriately made by the Debtors in accordance with those mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related mortgaged property is located and any servicing fees, if such servicing fees are

paid to the Debtors pursuant to a written agreement between the Parties existing as of the date hereof, within three business days to Natixis or its designee.

## ARTICLE II

## MUTUAL RELEASES

2.1   Release by Debtors. Each of the Debtors and their successors and assigns, hereby waive, release and forever discharge Natixis and each of its past, present and future officers, directors, partners, members, employees, agents and servants from any and all claims, obligations, demands, actions, causes of action and liabilities, of whatsoever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract or under other applicable law, whether known or unknown, and whether anticipated or unanticipated, including, without limitation, claims, obligations, demands, actions, causes of action and liabilities arising from or relating to the Mortgage Loans that are the subject of this Settlement Agreement (excluding the Unreleased Loans and any claims or causes of action the Debtors may have related to Natixis improperly setting a Purchase Price (as defined in the Repurchase Agreement) or Margin Base under section 4.a. of the Repurchase Agreement within the period that is 120 days prior to the Petition Date) (including, without limitation the Excluded HELOC Loans), and/or the Debtors' assertion that Natixis caused or contributed to the commencement of the Debtors' chapter 11 cases.

2.2   Release by Natixis. Natixis and its successors and assigns, hereby waives, releases and forever discharges the Debtors and each of their past, present and future officers, directors, partners, members, employees, agents and servants from any and all

claims, obligations, demands, actions, causes of action and liabilities, of whatsoever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract or under other applicable law, whether known or unknown, and whether anticipated or unanticipated, including, without limitation, claims, obligations, demands, actions, causes of action and liabilities arising from or relating to the Mortgage Loans that are the subject of this Settlement Agreement (excluding the Unreleased Loans).

2.3    Limitation of Releases.    The Parties acknowledge and agree that the releases set forth in Sections 2.1 and 2.2 above shall not include or have any effect upon the following claims and causes of action which are expressly preserved and retained by the respective Party:

- Claims or causes of action of Natixis or the Debtors that arise from or are related to any contract between Natixis and Debtors other than the Repurchase Agreement and the Custodial Agreement;

- Waiver, release or discharge from any obligations under, or the breach of, this Settlement Agreement;

- Claims or causes of action of Natixis that arise as a result of any deficiency in the Mortgage Files, as required to be transferred to Natixis under the Servicing Transfer Guidelines, that ultimately impacts the value of the underlying Mortgage Loan; and

- Claims or causes of action that the Parties have related to the Unreleased Loans.

2.4     <u>Discovery of Additional Facts</u>.  The consequences of the foregoing release provisions have been explained by each of the Parties' respective attorneys.  Each of the Parties acknowledge that they may hereafter discover facts different from, or in addition to, those which they now know or believe to be true and agree that this Settlement Agreement and the releases contained herein shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

2.5     <u>Waiver of Benefits</u>.  To the extent applicable law would not otherwise recognize the releases in Sections 2.1 and 2.2 as constituting a full and final release applying to all unknown and unanticipated claims, the Parties hereby expressly waive all rights or benefits which any one or all of them may have now or in the future under any such applicable law.

ARTICLE III

MISCELLANEOUS

3.1     <u>Approval of Settlement</u>.  The Debtors shall take all reasonable steps necessary to obtain approval of this Settlement Agreement by February 1, 2008.

3.2     <u>The Stay Relief Motion</u>.  The Parties agree that the Emergency Motion of Natixis for Relief from the Automatic Stay shall remain pending subject to resolution of matters related to the Unreleased Loans.  Natixis and the Debtors reserve all rights with respect to such matters.

3.3    Further Actions.    On or after the Approval Date, the Parties shall cooperate in taking any action and preparing, executing, and delivering any documents that may be necessary to implement the purpose of this Settlement Agreement.

3.4    Due Authorization.    Each of the Parties represents that it, she, or he has read and understands the scope and effect of each provision of this Settlement Agreement and has had the opportunity to consult with attorneys for further explanation of the Settlement Agreement's terms, covenants, and provisions.    Each of the undersigned Parties represents that it, she, or he has executed the Settlement Agreement freely, voluntarily, and with authority, intending to be bound thereby.    Each party represents that it, she, or he has been duly authorized to enter into this Settlement Agreement.

3.5    No Admission.    This Settlement Agreement shall not constitute or be deemed to constitute any admission or acknowledgement of liability or wrongdoing on the part of any of the Parties. The Parties will not offer this Settlement Agreement or the fact of its execution into evidence in any proceeding other than a proceeding to approve or enforce this Settlement Agreement or any of its terms.

3.6    Controlling Law.    The terms and conditions of this Settlement Agreement are contractual in nature and shall be construed and governed in accordance with the laws of the State of Delaware as applied to contracts entered into and performed entirely within that state.

3.7    Jurisdiction.    The Court shall retain jurisdiction to interpret and enforce the terms of this Settlement Agreement.

3.8     Integrated Agreement. This   Settlement   Agreement,   including   the Servicing Transfer Guidelines, contains the entire agreement between the Parties and supersedes any and all prior and contemporaneous agreements or understandings, written or oral, with respect to the subject matter hereof. Each of the Parties acknowledges that no promises or inducements have been made that caused any party to execute this Settlement Agreement other than those that are expressly set forth herein.

3.9     Headings.   The headings, subheadings or titles in this Settlement Agreement are used for purposes of convenience only and have no legal force, meaning, or effect.

3.10    Amendments. This Settlement Agreement may not be amended or revised except by a writing executed by an authorized representative of each of the Parties.

3.11    Signatures and Effective Date.   This Settlement Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument, and it shall constitute sufficient proof of this Settlement Agreement to present any copy, copies, or facsimiles signed by the parties hereto to be charged. This Settlement Agreement will become effective as soon as all parts of this Settlement Agreement have been executed by all of the Parties and upon Court approval.

WHEREFORE, the Parties acknowledge their agreement and consent to the terms and conditions set forth above through their respective signatures below.

NATIXIS REAL ESTATE CAPITAL INC.
f/k/a IXIS REAL ESTATE CAPITAL INC.

By: _____
Name: ANTHONY MALANGA
Title: MANAGING DIRECTOR

By: _____
Name: Christopher Hayden
Title: Managing Director

AMERICAN HOME MORTGAGE
INVESTMENT CORPORATION AND
EACH OF ITS DIRECT AND INDIRECT
SUBSIDIARIES, AS DEBTORS AND
DEBTORS IN POSSESSION

By: _____
Name: _____
Title: _____

## EXHIBIT A

### UNRELEASED LOANS

| LOAN ID | BORROWER | ORIGINATION | ORIGINAL BAL. | UPB | DELIVERY DATE | LOANS DELIVERED TO |
|---------|----------|-------------|---------------|-----|---------------|--------------------|
| 1759239 | BUTLER | 5/10/2007 | $ 5,000.00 | $ 5,000.00 | 6/5/2007 | MARYLAND COMMUNITY DEV. ADMIN |
| 1579356 | CHANDLER | 5/14/2007 | $ 225,000.00 | $ 220,994.94 | 5/25/2007 | MARYLAND COMMUNITY DEV. ADMIN |
| 1822647 | KIRKWOLD | 6/29/2007 | $ 231,000.00 | $ 97,392.33 | 7/20/2007 | US BANK |
| 1822647 | KIRKWOLD | 6/29/2007 | $ 231,000.00 | $ 131,862.07 | 7/20/2007 | US BANK |
| 1773144 | PHILLIPS | 6/29/2007 | $ 54,468.00 | $ 54,468.00 | 7/19/2007 | PENNSYLVANIA HOUSING FINANCE AGENCY |
| 1675872 | SWANSON | 3/27/2007 | $ 5,000.00 | $ 5,000.00 | 4/12/2007 | MARYLAND COMMUNITY DEV. ADMIN |
| 1694500 | HAAS | 3/21/2007 | $ 5,000.00 | $ 5,000.00 | 4/6/2007 | MARYLAND COMMUNITY DEV. ADMIN |
| 1738521 | RASDAL | 4/18/2007 | $ 15,000.00 | $ 15,000.00 | 5/3/2007 | US BANK |
| 1805949 | SPIVEY | 6/28/2007 | 117,000.00 | $ 116,941.73 | 7/18/2007 | US BANK |

066585.1001

## EXHIBIT B

### SERVICING TRANSFER GUIDELINES

## SERVICING TRANSFER GUIDELINES

On March 1, 2008 (the "Servicing Transfer Date") the Debtors shall transfer to Natixis Real Estate Capital Inc. f/k/a/ IXIS Real Estate Capital Inc. ("Natixis") or its designee, all right, title, and interest in the servicing of the mortgage loans excluding the Excluded HELOC Loans and the Unreleased Loans, that are the subject of the Repurchase Agreement and the related Custodial Agreement (the "Mortgage Loans"), including, without limitation, all rights to collect fees and other payments made on account of the Mortgage Loans, less any unreimbursed advances appropriately made by the Debtors in accordance with those mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related mortgaged property is located and any servicing fees, if such servicing fees are paid to the Debtors pursuant to a written agreement between the Parties existing as of the date hereof, as of the Servicing Transfer Date (the "Servicing Rights"); provided, however, that the Servicing Transfer Date will be no later than March 1, 2008. The Debtors shall transfer the Servicing Rights in accordance with these Servicing Transfer Guidelines. These Servicing Transfer Guidelines may be modified only upon the written consent of both Parties. The Debtors, Natixis and its designee, if any, shall cooperate in connection with the transfer of the Servicing Rights and shall use good-faith efforts to cause the transfer in an efficient nondisruptive manner.

Capitalized terms used, but not otherwise defined herein, shall have the respective definitions assigned to such terms in the Settlement Agreement, dated as of January 31, 2008 (the "Settlement Agreement"), between and among Natixis and American Home Mortgage Investment Corporation ("AHMIC"), and each of its direct and indirect subsidiaries as debtors and debtors in possession (collectively with AHMIC, the "Debtors"). All obligations under these Servicing Transfer Guidelines are qualified by Section 1.3 of the Settlement Agreement which provides that the Debtors shall use good-faith efforts in connection with the transfer of the Servicing Rights. In the event there is a conflict between the terms of these Servicing Transfer Guidelines and the Settlement Agreement, the Settlement Agreement controls.

The Debtors shall use good-faith efforts to ensure the Mortgage Files related to the Mortgage Loans in its possession are intact and to resolve any document exceptions to the Mortgage Files to the extent such documents exist.

Upon the terms and subject to the conditions of the Settlement Agreement, the Debtors shall, on the Servicing Transfer Date, transfer and assign to Natixis or its designee, and Natixis or its designee shall, on the Servicing Transfer Date, assume from Debtors, all right, title, interest and obligation of the Debtors in and to: (i) the Servicing Rights, and all rights related thereto, (ii) the escrow funds held under the Custodial Agreement, (iii) the Mortgage Files in the Debtors' possession, (iv) the exclusive right to enter into arrangements that generate, or to otherwise receive, ancillary income with respect to the Mortgage Loans, (v) the right to collect and retain prepayment charges, and (vi) all proceeds of the Mortgage Loans.

The Servicing Rights that are being transferred by the Debtors on the Servicing Transfer Date shall be transferred and assigned to and accepted by Natixis or its designee on an "as is", "where is" and "with all faults" conditions, free of any warranties or representations whatsoever, whether express or implied, except as expressly set forth in the Settlement

Agreement. On the Servicing Transfer Date, the Debtors shall deliver to Natixis or its designee such other instruments of assignment, transfer and conveyance, and do such other acts as are reasonably necessary to effectuate the transfer, assignment and delivery to Natixis or its designee of the right, title and interest of the Debtors in and to the Servicing Rights.

The Debtors have already provided Natixis with a preliminary tape containing the information necessary to transfer the Servicing Rights on the Servicing Transfer Date and within three (3) business day after the Servicing Transfer Date, the Debtors shall deliver to Natixis or its designee the final data tapes.

In addition to the foregoing, on a date to be agreed upon by the Parties, the Debtors shall provide Natixis or its designee with the data, information and materials reasonably necessary for Natixis or its designee to service the Mortgage Loans, including, but not limited to, all Mortgage Files or electronic images pertaining to the Mortgage Loans and the related servicing records in Debtors' possession, mortgage notes (including e-Notes), riders, loan modification documents, and servicing files, but excluding the final data tapes. The Debtors shall provide Natixis or its designee with prior written notice of the carrier, shipping arrangements, and insurance arrangements with respect to the delivery of the Mortgage Files. Natixis

On or before the Servicing Transfer Date, the Debtors shall appoint Natixis or its designee to be their true and lawful agent and attorney-in-fact, in the form of the Special and Limited Power of Attorney attached hereto as Exhibit A, with respect to each Mortgage Loan (excluding the Excluded HELOC Loans and the Unreleased Loans) in the Debtors' name, place, and stead:

(i)     to effectuate the transfer of servicing to Natixis or its designee;

(ii)    to complete (to the extent necessary) and to cause to be submitted for filing or recording in the appropriate public filing or recording offices all assignments of mortgage, deeds of trust, or similar documents, assignments, or reassignments of rents, leases and profits, in each case in favor of Natixis or its designee, and all Form UCC-2 or UCC-3 assignments of financing statements and all other comparable instruments or documents with respect to the Mortgage Loans, and to evidence, provide notice of and perfect such assignments and conveyances in favor of Natixis or its designee in the public records of the appropriate filing and recording offices;

(iii)   to file or record in the appropriate public filing or recording offices all other Mortgage Loan documents to be recorded which have not been submitted for filing or recordation by the Debtors on or before the date hereof or which have been so submitted but are subsequently lost or returned unrecorded or unfiled as a result of actual or purported defects therein, in order to evidence, provide notice of and perfect such documents in the public record of the appropriate filing and recording offices; and

(iv)    to do and perform all acts in connection with the servicing, administration and management of the Mortgage Loans, including but not limited to:

2

(1)     execution and delivery of customary consents or waivers and other instruments and documents;

(2)     consent to transfers of any Mortgage Loans and assumptions of the Mortgage Notes and related Mortgages;

(3)     collect any insurance proceeds and other liquidation proceeds;

(4)     effectuate foreclosure or other conversions of the ownership of the mortgage property securing any Mortgage Loan;

(5)     to sign any necessary assignments of Mortgage or endorsements to give fully the lienholder rights over from the Debtors to Natixis or its designee;

(6)     execute and deliver any and all instruments of satisfaction or cancellation or of partial or full release or discharge and all other comparable instruments, with respect to the Mortgage Loans, and with respect to the Mortgaged Properties; and

(7)     execute all documents customarily and reasonably necessary and appropriate for the transfer post-foreclosure of the previously Mortgaged Properties to third parties, and then to collect the sales proceeds from that transfer.

Natixis (or its designee) intends to prepare and send goodbye/hello letters related to the Mortgage Loans on or about the fifteenth day prior to the Servicing Transfer Date but, in any event, within such time as complies with applicable law.

Notwithstanding the foregoing, if a Mortgage Loan already is registered with the Mortgage Electronic Registration System ("MERS"), which enables members to execute and deliver an Assignment of Mortgage (as defined in the Repurchase Agreement) with respect to a Mortgage Loan to MERS for recording in the office of the appropriate local jurisdiction, Debtors shall follow the requirement of MERS to reflect in the records of MERS the transfer of the ownership of the Mortgage Loans and of the Servicing Rights from the Debtors to Natixis or its designee. The Debtors shall continue the transmission of recording information of the Assignment of Mortgage to MERS after the Servicing Transfer Date, until all such recording information is received and transmitted to MERS and Natixis, which in any event and under all circumstances shall be completed not later than three (3) days after the Servicing Transfer Date. The Debtors shall bear all costs associated with the registration of a Mortgage Loan with MERS, to the extent done before the Servicing Transfer Date, including, without limitation, the related preparation and recordation of an Assignment of Mortgage, and all costs associated with the reflection of the transfer of Servicing to the Mortgage Loan in the records of MERS. For each Mortgage Loan registered with MERS, the Debtors shall provide Natixis or its designee with the MERS mortgage loan identification number in an electronic format acceptable to the parties.

Within three (3) business day of the Servicing Transfer Date, the Debtors shall provide Natixis or its designee with an electronic file of the related Mortgage Loans in its possession which shall set forth whether each Mortgage Loan is or is not covered by fully transferable life-of-loan flood contract as of the Cut-off Date. Within five (5) business days following the Servicing Transfer Date, the Debtors shall assign and transfer, in an electronic file

format, the transferable life-of-loan flood certifications and contract information to Natixis or its designee.

The Debtors shall take all such actions as may be necessary to transfer or record all right, title and interest in the Mortgage Loans to Natixis or its designee and the Servicing Rights with respect to the Mortgage Loans to Natixis or its designee, consisting of:

(i)     assigning title to the related Mortgage Loans to Natixis or its designee;

(ii)     preparing or causing to be prepared all prior intervening assignments of mortgage instruments, and recording such assignments of mortgage instruments; and

(iii)     endorsing or causing to be endorsed the related Mortgage Notes.

The Debtors shall bear all actual out-of-pocket costs associated with the preparation and recording of the assignments of mortgage instruments described in (i) and (ii) above, and the preparation of the endorsements described in (iii) above.

The Debtors shall forward to Deutsche Bank National Trust Company (the "Custodian") the original recorded assignments of mortgage instruments upon return from the recording office on a weekly basis and forward to Natixis or its designee a report of all original recorded assignments delivered to Custodian.

The Debtors shall (i) provide or assist Natixis or its designee in the procurement or execution of such affidavits, land court orders or other documents as it currently uses to evidence Natixis' ownership of such Servicing Rights, and (ii) prepare such endorsements or prepare and record such intervening assignments of mortgage instruments as may be required to reflect of record Natixis or its designee's ownership of such Servicing Rights in any jurisdiction or recording office that refuses to accept the documents described in clause (i) as proof of Natixis or its designee's ownership of such Servicing Rights, and the Debtors shall in each case bear all actual out-of-pocket costs associated therewith.

The Debtors shall be responsible for ensuring all documents comprising the Mortgage Files in the possession of the Debtors, related to the Mortgage Loans and that are not already held by the Custodian, are transferred to Natixis or its designee in a timely manner including, but not limited to, Mortgage Notes (as defined in the Repurchase Agreement) (including e-Notes), riders, loan modification documents and servicing files. Notwithstanding the foregoing, the Excluded HELOC Loans and Unreleased Loans are expressly excluded from the exercise of rights by Natixis and shall be held by the Debtor.

On or prior to the Servicing Transfer Date, the Debtors and Natixis or its designee shall execute and deliver the documents required to be executed and delivered under the Settlement Agreement, in form and substance reasonably satisfactory to Natixis or its designee and the Debtors, and shall execute and deliver such other instruments or documents as Natixis or its designee and the Debtors shall reasonably determine are necessary or appropriate to effectuate or evidence the transactions contemplated hereby.

4

**SPECIAL AND LIMITED POWER OF ATTORNEY AND COVENANTS**

**from AMERICAN HOME MORTGAGE SERVICING, INC.
in favor of SUCESSOR SERVICER**

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, the Settlement Agreement dated as of _____, 2008 (the "Settlement Agreement") between and among Natixis Real Estate Capital Inc. f/k/a/ IXIS Real Estate Capital Inc. ("Natixis") and American Home Mortgage Investment Corporation ("AHMIC"), and each of its direct and indirect subsidiaries as debtors and debtors in possession (collectively with AHMIC, the "Debtors") provides for the transfer of the Servicing Rights and the servicing functions by Debtor to Natixis or its designee (each, a "Successor Servicer") for certain Mortgage Loans, excluding the Excluded HELOC Loans and the Unreleased Loans, as set forth in the Settlement Agreement (the "Mortgage Loans"). Initially capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Master Repurchase Agreement, between Natixis and the Debtors, dated as of July 15, 2005.

NOW, THEREFORE, **American Home Mortgage Servicing, Inc.,** as the transferor of the related servicing functions for the Mortgage Loans under the Settlement Agreement (hereinafter referred to as "Principal"), acting through its duly authorized officer _____, as the _____ of the Principal, DOES HEREBY:

1.      constitute and appoint each **Authorized Officer** (which are referred to collectively as "Attorneys" and individually as "Attorney") of **the Successor Servicer,** as the successor servicer, individually, as a true and lawful attorney for Principal (but only for the purposes expressly set forth herein);

2.      for and in the name and stead of Principal, as the seller and prior servicer, and in connection with the servicing of the Mortgage Loans, authorize and empower each such Attorney to:

(a)      endorse, negotiate, deliver and deposit any checks, draft, money order or other form of payment instrument payable to Principal and tendered as payment on the Mortgage Loans;

(b)      endorse, execute, seal, acknowledge, deliver and file (including, without limitation, the recording or filing with the appropriate public officials) the following:

(1)      any documents or instruments (i) to endorse any promissory note for the Mortgage Loan to the Investor or its successor in interest, (ii) to assign any Mortgage or any other security instrument for the Mortgage Loan to Natixis as servicer, (iii) to maintain and protect the validity, priority or value of the lien and security interest created by any Mortgage on the related Mortgaged Property and any other security instrument for the Mortgage Loan including without limitation the notification of any property tax authorities and any casualty or mortgage insurers with respect to such Mortgaged Property and the Mortgage Loan, (iv) to represent the interests of and act as the lender of the Mortgage Loan in connection with the default, collection, liquidation or foreclosure of any such Mortgage Loan and the related Mortgaged Property, the bankruptcy of the related borrower or any lawsuit or legal proceeding

involving the related Mortgaged Property, and (v) to appoint any successor or substitute trustee under a Mortgage that consists of a deed of trust;

(2)    any modifications, waivers, assumptions, amendments or agreements for subordination or forbearance of any Mortgage, promissory note or any other documents related to the Mortgage Loan; and

(3)    any instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments with respect to any Mortgage or the related Mortgaged Property for the Mortgage Loan; and

(c)    institute and pursue foreclosure proceedings or obtain a deed in lieu of foreclosure so as to effect ownership of any Mortgaged Property in the name or on behalf of the Investor and manage and liquidate any resulting REO; and

(d)    to take any and all actions reasonably necessary to effectuate the proper servicing of the Mortgage Loans.

3.    further authorize and empower each such Attorney, for and in the name and stead of Principal, to (a) file and record this Special and Limited Power of Attorney with the appropriate public officials; and (b) appoint and name such substitute attorneys with all authority and powers hereunder, provided that such substitute attorneys are duly elected and qualified officers of successor servicer.

Principal covenants and grants to the Attorneys full authority and power to execute any documents and instruments and to do and perform any act that is necessary or appropriate to effect the intent and purposes of the foregoing authority and powers hereunder. Principal further ratifies and confirms each act that the Attorneys shall lawfully do or cause to be done in accordance with the authority and powers granted hereunder. The foregoing authority and powers shall not be deemed invalidated solely by reason of any action or omission of any Attorneys appointed hereunder. Principal covenants and agrees that, from time to time at the request of Successor Servicer, Principal shall execute instruments confirming all of the foregoing authority and powers of any Attorneys. Without actual notice to the contrary, any person may rely on authorities and powers granted hereunder and any actions of the Attorneys taken pursuant to such authorities and powers as the valid, binding and enforceable actions of Principal and that all conditions hereunder to the exercise of such actions by the Attorneys have been completed and are satisfied.

DB02:6549991.1    066585.1001

This power of attorney is coupled with an interest and is irrevocable by Principal.

IN WITNESS WHEREOF, Principal has caused this instrument to be signed by its duly authorized officer as of _____, 2008.

**American Home Mortgage Servicing, Inc.**, as Principal

By:_____

Name:_____

Title:_____

_____
Witness

## ACKNOWLEDGMENT

STATE OF           )
                      ) ss:
COUNTY OF       )

On the ____ day of _____, 2008, before me personally appeared the above-named, _____, on behalf of **American Home Mortgage Servicing, Inc.**, to me known and known by me to be the corporation, and acknowledged said instrument so executed to be his free act and deed in said capacity and the free act and deed of said corporation.

My commission expires:

_____
Notary Public

## EXHIBIT C

### EXCLUDED HELOC LOANS

| LOAN ID | BORROWER | UNPAID PRINCIPAL BALANCE | |
|---------|----------|--------------------------|---|
| 1320993 | GILSON | $ | 0.00 |
| 1372151 | BALL | $ | 0.00 |
| 1379029 | BARWHANI | $ | 0.00 |
| 1472161 | LAO | $ | 0.00 |
| 1478935 | MERGEL | $ | 0.00 |
| 1493796 | SMITH | $ | 0.00 |
| 1512464 | EARLE | $ | 0.00 |
| 1513984 | GONZALEZ | $ | 0.00 |
| 1521292 | DeFILIPPO | $ | 0.00 |

## EXHIBIT D

### INCLUDED HELOC LOANS

| LOAN ID | BORROWER | UNPAID PRINCIPAL BALANCE |
|---------|----------|--------------------------|
| 1752166 | MASTRANUNZIO | $ 85,000.00 |
| 1765146 | RUGGIERO | $ 30,000.00 |