## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,[1]

      Debtors.

---------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

**Ref. Docket No. 2395**

**Hearing Date: February 14, 2008 at 11:00 a.m. (ET)**
**Supplemental Objection Deadline: February 11, 2008 at
4:00 p.m. (ET)**

### LIMITED REPLY AND SUPPLEMENT TO MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554 AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION OF CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS UPON PAYMENT OF REASONABLE COSTS AND EXPENSES

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors") by and through their counsel, hereby file this limited reply and supplement (the

"Limited Reply") to its Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363, and 554

Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan Files or

(II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of Reasonable

Costs and Expenses [Docket No. 2395] (the "Document Destruction/Return Motion"). In

support of this Limited Reply, the Debtors respectfully represent and state as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

1.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this

case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory predicates for the relief requested herein are sections 105, 363 and 554 of title 11 of the

United States Code (the "Bankruptcy Code"), as complimented by Rule 6007 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.    General Background

2.    On the Petition Date each of the Debtors filed with this Court a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to

operate its business and manage its properties as a debtor in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.    The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

4.    On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or

examiner has been appointed.

### B.    Hard Copy Loan Files

5.    In the ordinary course of the Debtors' pre-petition loan origination

business, the Debtors maintain individual loan files, which include copies of consumer loan

applications, closing documents, titles and home appraisals.  The Debtors' loan origination

offices sent their mortgage loan files to the Debtors' headquarters in Melville, NY (collectively,

the "Hard Copy Loan Files") for central storage in compliance with applicable federal and state

laws.

6.      Upon receipt of the Hard Copy Loan Files, the Debtors reviewed such

files for any collateral documents (i.e., original note, mortgage copy (recorded mortgage if

received back), title insurance (binder or commitment); related addenda to mortgage or note; and

paper assignments). Collateral documents were immediately pulled from the file, copied, and

forwarded to the respective custodian for the underlying loan. The Debtors catalogued the Hard

Copy Loan Files in their loan database and management system, the UNIFI Loan Origination

System ("UNIFI").[2] Through UNIFI, the Debtors can access (i) borrower information on a loan

application; (ii) the borrower's credit report/credit score; (iii) underwriting information,

including the automated underwriting decision, where applicable; (iv) and a regeneration of

disclosures/closing documents.

7.      The Debtors utilize UNIFI's document storage management barcoding

system (the "Barcode System") to coordinate the storage of the Hard Copy Loan Files. Through

the Barcode System, the box identification and status of each Hard Copy Loan File is recorded.

Depending on the preference of the owner of the underlying loan, the Debtors either (i) sent the

original Hard Copy Loan File to American Corporate Record Center, Inc. ("ACRC"), a non-

affiliated third party-owned document storage facility or (ii) sent the original Hard Copy Loan

File to the owner of the loan and created a photocopy (collectively, the "Copied Loan Files") of

the Hard Copy Loan File to be sent to ACRC. ACRC currently stores approximately 1.5 million

Hard Copy Loan Files (including Copied Loan Files).

---

[2] In addition to UNIFI, the Debtors utilize another access database system to track files such that there is a combination of systems used to track and locate stored files.

8.      In September of 2005, the Debtors began imaging the Hard Copy Loan Files. The Debtors have imaged all of their Hard Copy Loan Files since September of 2005, approximately 490,000 files (the "E-Loan Files"). The E-Loan Files are maintained on secure servers, and the Debtors retain approximately four electronic copies of each E-Loan File.

9.      Despite the Debtors' imaging and maintenance of the 490,000 E-Loan Files, the Debtors continued to store the corresponding Hard Copy Loan Files (the "Duplicate Hard Copy Loan Files") at the ACRC facility. Accordingly, almost one-third of the Debtors' 1.5 million Hard Copy Loan Files are Duplicate Hard Copy Loan Files. Because the Hard Copy Loan Files include the Copied Loan Files, a subset of the Duplicate Hard Copy Loan Files are merely photocopies of the original Hard Copy Loan Files that were previously sent to the owner of the underlying loan.

10.     Given the volume of Hard Copy Loan Files and the required methodology to properly dispose of the confidential consumer information contained therein, the Debtors anticipate that return and/or destruction of the Hard Copy Loan Files will take a substantial amount of time. Accordingly, the Debtors believe that it is imperative to take appropriate action with respect to the Hard Copy Loan Files as soon as possible.

C.      **ACRC**

11.     The Debtors and ACRC are parties to a Record and Storage and Service Agreement effective as of November 21, 2005 (the "ACRC Agreement"). Pursuant to the Agreement, ACRC maintains storage for the Hard Copy Loan Files and various other corporate documents. ACRC currently charges approximately $45,000/month for the storage of the Hard Copy Loan Files. Additionally, ACRC provides storage-related services such as document retrieval, delivery, photocopying, refiling, archiving, destruction and/or termination of shelf

space. ACRC's current rate schedule for these and other storage-related services is attached hereto as Exhibit A.

12.    In connection with the storage of the Hard Copy Loan Files, ACRC maintains a proprietary electronic indexing system of the Debtors' (and other customers') files that enables search and retrieval. Although the Debtors' are able to identify in which box a particular Hard Copy Loan File is located through UNIFI, the Debtors must rely on ACRC's indexing system to determine the location of the particular box within ACRC's 80,000-square foot storage facility.

13.    Since the Petition Date, ACRC has asserted a prepetition claim in the amount of $276,000 against the Debtors' estates (the "Prepetition Claim"). ACRC asserted a warehouseman's lien and filed a secured claim (collectively, the "Liens") against the files held in storage on account of the Prepetition Claim. In accordance with ACRC's assertion of the Liens, ACRC has intermittently denied the Debtors access to the Hard Copy Loan Files during these chapter 11 cases.

14.    In an effort to resolve the Liens asserted against the Debtors,[3] and the Prepetition Claim, the Debtors and ACRC negotiated and entered into a Term Sheet, effective as of December 13, 2007 (the "ACRC Term Sheet"). The Court approved the ACRC Term Sheet on January 30, 2008 [Docket No. 2804].

15.    Pursuant to the ACRC Term Sheet, ACRC will, among other things, fix the rates charged for storage related services for a period of at least six (6) months from the date

---

[3]    The ACRC Term Sheet does not release Liens that may be asserted in connection with another party that may request files from ACRC.

of the ACRC Term Sheet or June 13, 2008.  ACRC will not charge any other customer/entity

through AHM lower rates/charges than are charged to AHM for the same or similar services.

16.    The Debtors agreed to, among other things, endeavor to establish a

document relocation and/or destruction program within six (6) months of the date of the ACRC

Term Sheet.

**D.    The Document Destruction/Return Motion**

17.    On December 14, 2007, the Debtors filed their Document

Destruction/Return Motion seeking entry of an order, pursuant to sections 105, 363 and 554 of

the Bankruptcy Code, authorizing the Debtors to abandon and destroy the Duplicate Hard Copy

Loan Files and to authorize expenditure of estate funds to complete the process or, alternatively,

to return Hard Copy Loan Files (to the extent the request is received prior to destruction of same)

to the owner of such loans upon written request and payment of all reasonable costs and

expenses associated with the retrieval, review and return.

18.    By the Document Destruction/Return Motion, the Debtors proposed that

the legal owners of the underlying loans (collectively, the "Owners") must request such Hard

Copy Loan Files from the Debtors by sworn, written declaration (the "Loan File Return

Declaration").  Each Loan File Return Declaration must, at a minimum, include:  (i) a list by

AHM loan number of each loan file requested; (ii) the name and contact information of the

requesting entity and a contact person; (iii) a sworn declaration that such entity legally owns

each loan file requested and that the declarant has the requisite corporate authority to make such

a declaration; and (iv) attestation that the party shall pay all reasonable costs and expenses of

retrieval, review and return of such loan files, including labor and third party costs and expenses.

Duplicate Hard Copy Loans that were not subject to a Loan File Return Declaration were to be destroyed by the Debtors.

19.    The Debtors received several objections on various grounds by parties asserting an interest in various Hard Copy Loan Files.

20.    On January 14, 2008, the Court entered an order authorizing the immediate abandonment and destruction of only those Duplicate Hard Copy Loan Files for loans that did not close (i.e., files related to withdrawn, cancelled or rejected loans) (the "Duplicate Withdrawn or Denied Loan Files") [Docket No. 2724]. The remainder of the relief sought in the Document Destruction/Return Motion was adjourned.

## RELIEF REQUESTED AND BASIS THEREFOR

21.    Based on the responses filed and conversations with certain investors, the Debtors believe that there is significant interest in creating a document return program. Accordingly, by this Limited Reply, and consistent with the Document Destruction/Return Motion, the Debtors request entry of an order pursuant to sections 105, 363 and 554 of the Bankruptcy Code authorizing the Debtors to return Hard Copy Loan Files to the Owner of such loans upon written request, received no later than the Return Request Deadline (as defined below), and payment of all reasonable costs and expenses associated with the retrieval, review and return (the "Returned Loan Files").[4]

---

[4]    By the Limited Reply and Supplement, the Debtors are addressing only issues relating to the return of Hard Copy Loan Files, in their possession and control, to the Owners. The Debtors reserve all rights with respect to the remaining relief requested in the Document Destruction/Return Motion, including seeking authority to destroy any loan files where the Owner does not request return of the documents.

1.    **The Hard Copy Loan Files are Property of the Estate**

22.    Without question, the Debtors have an ownership interest in the Copied Loan Files. In the pre-petition course of dealing with the Debtors, the Owners of the loans underlying the Copied Loan Files requested and received the original Hard Copy Loan Files. The Copied Loan Files were maintained solely as part of the Debtors' records and to remain compliant with federal and state regulations regarding mortgage loan origination and brokerage licensing.

23.    Although the original Hard Copy Loan Files held by the Debtors may be property of their respective Owners, the Debtors do have a possessory interest in the Hard Copy Loan Files. Such possessory interest constitutes property of the estate. See Hartman v. PMF Rentals (In re Hartman), Civ. 03-337, 2004 U.S. Dist. LEXIS 5691, 18 (W.D. Pa. March 22, 2004) (finding that the debtors' "possessory interest in the trailers was property of their bankruptcy estate"); In re Whitt, 79 B.R. 611, 615 (Bankr. E.D. Pa. 1987) ("The Debtor's tenancy or even her bare possessory interest in her residence is a "legal or equitable interest" which is clearly "property of the estate" by the terms of 11 U.S.C. § 541(a)." (interior quotation omitted)); Di Giorgio v. Lee (In re Di Giorgio), 200 B.R. 664, 673 (C.D. Cal. 1996), vacated on other grounds, 134 F.3d 971 (9th Cir. 1998) ("The legislative history indicates that Congress intended the estate to include possessory interests.").

2.    **Establishing a Bar Date for Filing a Return Declaration**

24.    By the Document Destruction/Return Motion, the Debtors proposed that the Owners must request such Hard Copy Loan Files by a sworn Loan File Return Declaration. The Debtors proposed, given the time constraints in the ACRC Settlement and the volume of Hard Copy Loan Files at the ACRC facility, to destroy Duplicate Hard Copy Loan Files

immediately. Such timeframe for destruction required that Owners immediately prepare the

Loan File Return Declaration and failure to do so was essentially at "Owners' risk." In lieu of

immediate destruction of files, the Debtors propose to establish a March 14, 2008 at 4:00 p.m.

(ET) (the "Return Request Deadline") as the date by which the Owners are required to file and

serve their Loan File Return Declaration on the Debtors. The Debtors submit that the

establishment of the Return Request Deadline appropriately balances the concerns of the Owners

regarding premature destruction of the Owners' Hard Copy Loan Files with the Debtors' need to

reduce the volume of Hard Copy Loan Files in storage. Establishing the Return Request

Deadline is of particular importance given that the Hard Copy Loan Files are no longer necessary

to the Debtors' estate and the costs associated with storing these unnecessary files are subject to

increase within a few short months.

        25.      The Debtors propose that the Loan File Return Declaration filed and

received by the Return Request Deadline must, at a minimum, include: (i) a list of each Hard

Copy Loan File requested, identified by AHM loan number; (ii) the name and contact

information of the Owner and a contact person; (iii) a sworn declaration that the Owner legally

owns each loan requested and that the declarant has the requisite corporate authority to make

such a declaration; (iv) the Owner's preferred method to receive the Hard Copy Loan Files,

including (a) retrieval/pick-up; (b) delivery (with location); or (c) imaged DVD;[5] (v) an

attestation that the Owner shall pay all reasonable costs and expenses of associated with the

preferred delivery method (as outlined more fully below) Hard Copy Loan Files; and (vi) an

acknowledgment that such costs are subject to increase in connection with increased costs

charged by ACRC or other third party vendors.

---

[5]      As described infra, the costs will vary based on the method chosen.

26.     The Debtors submit that the information requested in the Loan File Return Declaration is necessary given the constant change in loan ownership in the secondary market of the loan industry. The Debtors' information in the UNIFI system is based solely on the information of the Debtors and reflect only their initial loan sales. To the extent that the purchaser of a Debtors' loan has resold a particular loan, they may no longer have a right to receive the Hard Copy Loan File. Providing a third party with consumer confidential information for a loan in which the entity does not own may violate state and federal consumer privacy laws. In contrast, to the extent that an Owner purchased such a loan from the secondary market, the Debtors may have no record of the loan being subsequently purchased by the Owner. Accordingly, for an Owner who requests merely "all of their" loan files, the Debtors may have an incomplete record of such files.

**3.      Return of the Hard Copy Loan Files at the Owners' Expense is Reasonable**

27.     Although the Debtors have a possessory interest in the Hard Copy Loan Files related to loans purchased by various Owners, such files are housed at the ACRC storage facility. To locate each Hard Copy Loan File purchased by a particular Owner will require significant estate resources. The Hard Copy Loan Files are not kept separate; instead, they are commingled with the Hard Copy Loan Files of other purchasers. Moreover, each individual loan has two (a "credit" and "legal" file) or more components which may not be located within the same box.

28.     As stated above, the Debtors are bound to ACRC's current rate schedule, attached hereto as Exhibit A. To reduce the cost for pulling individual Hard Copy Loan Files and refiling boxes in the ACRC facility, the Debtors propose a "one touch per box" system wherein the Debtors will pull a box once from ACRC, sort all of the Hard Copy Loan Files in the

box based upon the Owners' Declaration (or lack thereof), and produce the Hard Copy Loan Files to their respective Owners' on a rolling basis. Each box contains approximately 8-12 Hard Copy Loan Files. Once the box is removed from ACRC, ACRC will permanently terminate the file and carton from its warehouse and records. Based on the rate schedule, under the Debtors' proposal, ACRC will charge each box, among other things, rates related to the following:

- Carton Retrieval Requests
- Delivery
- Transportation Costs to the Debtors' office facilities in Melville, NY
- Termination of Storage Space
- Termination of Computer Record (per carton)
- Termination of Computer Record (per file)
- Labor charges.

29.    Moreover, the location, retrieval, and sorting of this volume of documents requires significant time, which, in turn, requires the Debtors to hire contract employees or retain employees for a greater length of time. The Debtors estimate that the current cost to retrieve and sort each Hard Copy Loan File is approximately $3.50 (the "Retrieval Cost") based on ACRC's present rate structure.[6]

30.    The Debtors estimate that the cost for delivery in the United States, including retrieval, mail preparation, postage and labor to ship each Hard Copy Loan File to the appropriate Owner, is approximately $6.25 (the "Shipping Cost").[7]

31.    The Debtors have also provided the Owners with the option of having their Hard Copy Loan Files imaged on a DVD to be shipped to them. Due to the additional time

---

[6]    The Retrieval Cost is a "per file" allocation and is based upon an average of 10 Hard Copy Loan Files per box. Individual loans may have several Hard Copy Loan Files, and the Owners may be subject to two or more Retrieval Costs to receive all of the documents in the Debtors' possession relating to a particular loan.
[7]    The Shipping Cost is inclusive of the Retrieval Cost. As with Retrieval Costs, the Shipping Cost is a "per file" allocation and is based upon an average of 10 Hard Copy Loan Files per box. Individual loans may have several Hard Copy Loan Files, and the Owners may be subject to two or more Shipping Costs to receive all of the documents in the Debtors' possession relating to a particular loan.

and costs related to preparing the Hard Copy Loan Files for scanning, quality control of the imaging process, creation of the DVD, and shipping, the Debtors estimate that the cost to retrieve, image, create and ship a DVD is approximately $13.00 per Hard Copy Loan File (the "DVD Cost" and collectively with the Retrieval Costs and Shipping Costs, the "Return Costs").[8]

32.    The Debtors are willing to collect and ship or image the Hard Copy Loan Files to the Owners provided that the Owners absorb the actual cost to locate and ship or image such files. Given that the Owners' Hard Copy Loan Files are intermingled with over a million loan files of other purchasers that contain confidential personal information, no one other than the Debtors and their agents are in a position to locate and segregate the Hard Copy Loan Files. Moreover, the Hard Copy Loan Files are located in a leased warehouse that covers approximately eighty thousand square feet and can only be electronically searched and located using an indexing system that is proprietary of the storage company that maintains the warehouse. As a result of the consumer privacy laws and the serious risk of lost or damaged files, the Debtors cannot simply grant access to the Owners to retrieve their files. Even if the Debtors could do so, it would be more cost effective for the Owners to adhere to the procedures set forth herein because ACRC is contractually obligated to give the Debtors the best price for its services and ACRC could assert a lien on the files vis a vis any third party. The Debtors are not seeking to make a profit, only to create an orderly process and spare the estate from bearing costs that provide no benefit or potential for benefit to the estates.

---

[8]    The DVD Cost is inclusive of the Retrieval Cost. As with Retrieval Costs, the DVD Cost is a "per file" allocation and is based upon an average of 10 Hard Copy Loan Files per box. Individual loans may have several Hard Copy Loan Files, and the Owners may be subject to two or more Shipping Costs to receive all of the documents in the Debtors' possession relating to a particular loan.

33.    If required to bear the burden to segregate and ship all the Hard Copy

Loan Files, the Debtors estimate that such costs would be in excess of $5.25 million.  Requiring

the Debtors' estates to bear such costs would provide an administrative priority to an expense

that amounts to nothing more than alleged damages for a pre-petition breach of contract claim.

See Ben Franklin Hotel Assoc., 186 F.3d 301, 305 (3d. Cir. 1998) (citations omitted) ("An

equitable remedy will give rise to a right of payment, and therefore be deemed a 'claim,' when

the payment of monetary damages is an alternative to the equitable remedy."); Air Line Pilots

Assoc. v. Continental Airlines (In re Continental Airlines), 125 F.3d 120, 136 (finding right to

seniority integration constitutes a claim under the Bankruptcy Code because it gives rise to

payment, thus not entitled to specific performance); In re Nickels Midway Pier, LLC, 341 B.R.

486 (D.N.J. 2006) ("The fact that a creditor's specific performance remedy is preferable to a

damages remedy does not mean that a creditor's right to specific performance cannot be reduced

to a claim in Bankruptcy."); Credit Suisse First Boston Mortgage Capital, LLC v. American

Home Mortgage Corp. (In re American Home Mortgage Holdings, Inc.), Ch. 11 Case No. 07-

11047 (CSS), Adv. No. 07-51684 (CSS), slip op. at 53 and 103 (Bankr. D. Del. August 17, 2007)

(denying a request for preliminary injunction requiring transfer of files and servicing rights, even

though the Plaintiff asserted that the Debtors had no right to continue servicing and were in

violation of the contract, because the moving party could not sustain its burden of establishing

irreparable injury given that it had a claim against the debtors' estates for any damages resulting

from any breach, which is an economic injury compensable in money.).

34.    The Debtors should not be required to incur an administrative expense to

retrieve and deliver the Returned Loan Files if the expense provides no benefit to the estates.

See 11 U.S.C. § 503(b)(1)(A) (administrative expense will be allowed if "actual, necessary costs

and expenses of preserving the estate..."). Assuming that the Debtors are not reimbursed, no benefit can be derived for the estates by expending the man-hours to locate and collect and expending estate dollars to ship voluminous files to the Owners.[9]  In this manner, the return of Returned Loan File documents at the Owners' expense is the same as a landlord having to pay to return its premise to broom clean condition with a remedy of a general unsecured claim for the amount to clean the premises.  In re Cardinal Export Corp., 30 B.R. 682, 685 (Bankr. E.D. N.Y. 1983) (claim for breach of lease for failure to return store in broom-clean condition not entitled to priority administrative status because such expenditure provides no benefit to the estate, thus entitled only to general unsecured status).

        35.      In analogous cases, courts have concluded that breach of lease return conditions do not qualify for administrative expense priority but instead are general unsecured claims.  In re Continental, 146 B.R. 520, 528 (Bankr. D. Del. 1992) (damages for breach of lease for failure to comply with lease return conditions relating to plane engines were not entitled to administrative priority because there was no showing that the cost to render the engine compliant would have resulted in a benefit the estate);  In re Cardinal Export Corp., 30 B.R. 682, 685 (Bankr. E.D. N.Y. 1983) (claim for breach of lease for failure to return store in broom-clean condition not entitled to priority administrative status because such expenditure provides no benefit to the estate, thus entitled only to general unsecured status).  Accordingly, the Owners are not entitled to anything more than a claim for monetary damages resulting from any alleged breach of the relevant loan documents.

---

[9] As set forth in the motion to approve the Term Sheet with ACRC, the Debtors and ACRC estimate that the cost for bulk destruction of the Hard Copy Loan Files is approximately $1 million.

36.     For all of the foregoing reasons, the Debtors submit that their decision to return the Returned Loan Files, upon written request by the Return Request Deadline and upon payment of reasonable costs and expenses of retrieval, review and return of such loan files, is consistent with bankruptcy law and federal and state laws regarding consumer privacy and the product of the Debtors' sound business judgment and should therefore be approved.

## NOTICE

37.     Notice of this Limited Reply will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Agent for the Debtors' Postpetition Lender; (v) the offices of the attorneys general of the fifty states and the District of Columbia; (vi) the Federal Trade Commission; (vii) all parties that hold an interest in the Hard Copy Loan Files; (viii) the class action plaintiffs; (ix) Wilbur Ross; (x) the Securities and Exchange Commission; (xi) ACRC; and (xii) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order (i) authorizing the Debtors to return Hard Copy Loan Files to the Owners upon the terms and conditions set forth herein; and (iii) granting the Debtors any further relief that the Court deems just and proper.

Dated: _February 5_, 2008
Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

James Patton (No. 2202)
Pauline Morgan (No. 3650)
Sean M. Beach (No. 4070)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x

In re:                                                    :    Chapter 11

                                                      :

AMERICAN HOME MORTGAGE HOLDINGS, INC.,    :    Case No. 07-11047 (CSS)

a Delaware corporation, et al.,[1]                        :

                                                      :    Jointly Administered

Debtors.                                                  :

----------------------------------------------------------------- x    Ref. Docket Nos. 2395 and ____

### SECOND ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554
### AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION
### OF CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF
### MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS UPON PAYMENT
### OF REASONABLE COSTS AND EXPENSES

Upon consideration of the Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363 and 554 Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan Files or (II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of Reasonable Costs and Expenses [2395] and the Debtors' limited reply and supplement related thereto (the "Motion");[2] and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court finding good and sufficient cause to grant the Motion, and good and adequate notice of the Motion having been given, it is hereby

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

ORDERED that the Motion is granted to the extent set forth herein; and it is further

ORDERED that any objections to the Motion related to the relief granted herein are hereby overruled, withdrawn or resolved; and it is further

ORDERED that the Debtors are authorized to return the Hard Copy Loan Files to the legal owners (collectively, the "Owners") of the underlying loans upon request as set forth below and upon payment of reasonable expenses for the retrieval, shipment and/or imaging as requested; and it is further

ORDERED that any Owner seeking the return of their Hard Copy Loan Files must file and serve a completed Loan File Return Declaration so that it is received no later than March 14, 2008 (the "Return Request Deadline") to: (i) the Debtors, 538 Broadhollow Road, Melville, NY 11747, Attn. Chris Cavaco; and (ii) Debtors' counsel, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, Attn. Margaret B. Whiteman, Esq.; and it is further

ORDERED that the Loan File Return Declaration must, at a minimum, include: (i) a list of each Hard Copy Loan File requested, identified by AHM loan number; (ii) the name and contact information of the Owner and a contact person; (iii) a sworn declaration that the Owner legally owns each loan requested and that the declarant has the requisite corporate authority to make such a declaration; (iv) the Owner's preferred method to receive the Hard Copy Loan Files, including (a) retrieval/pick-up; (b) delivery (with location); or (c) imaged DVD; (v) an attestation that the Owner shall pay all reasonable costs and expenses of associated with the preferred delivery method (as outlined more fully below) Hard Copy Loan Files; and (vi) an acknowledgment that such costs are subject to increase in connection with increased costs charged by ACRC; and it is further

ORDERED that the Owners shall be responsible for the Return Costs applicable to the method of delivery selected within the Loan File Return Declaration; and it is further

ORDERED that the Return Costs for each method of delivery, as identified in the Debtors' Limited Reply, shall be deemed reasonable costs and expenses for the return of such files for the duration of the ACRC Term Sheet; and it is further

ORDERED that the Return Costs are subject to increase depending on the rates charged by ACRC; and it is further

ORDERED that the remaining relief requested in the Motion and all objections related thereto are hereby adjourned to March 27, 2008 at 11:00AM; and it is further

ORDERED that this Court shall retain jurisdiction over all affected parties with respect to any matters, claims, or rights arising from or related to the implementation and interpretation of this order.

Dated: February ___, 2008
      Wilmington, Delaware

 

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
In re:                                           :   Chapter 11
                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,           :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,¹                 :
                                                 :   Jointly Administered
         Debtors.                                :
------------------------------------------------- x   Ref. Docket Nos. 2395 and ____
```

### SECOND ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554
### AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION
### OF CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF
### MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS UPON PAYMENT
### OF REASONABLE COSTS AND EXPENSES

Upon consideration of the Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363

and 554 Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan

Files or (II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of

Reasonable Costs and Expenses [2395] and the Debtors' limited reply and supplement related

thereto (the "Motion");² and it appearing that the Court has jurisdiction over this matter pursuant

to 28 U.S.C. §§ 157 and 1334; and the Court finding good and sufficient cause to grant the

Motion, and good and adequate notice of the Motion having been given, it is hereby

---

¹     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage
Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland
corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267);
American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a
Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491);
and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd.,
Suite 200, Irving, Texas 75063.

²     Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the
Motion.

ORDERED that the Motion is granted to the extent set forth herein; and it is further

ORDERED that any objections to the Motion related to the relief granted herein are hereby overruled, withdrawn or resolved; and it is further

ORDERED that the Debtors are authorized to return the Hard Copy Loan Files to the legal owners (collectively, the "Owners") of the underlying loans upon request as set forth below and upon payment of reasonable expenses for the retrieval, shipment and/or imaging as requested; and it is further

ORDERED that any Owner seeking the return of their Hard Copy Loan Files must file and serve a completed Loan File Return Declaration so that it is received no later than March 14, 2008 (the "Return Request Deadline") to: (i) the Debtors, 538 Broadhollow Road, Melville, NY 11747, Attn. Chris Cavaco; and (ii) Debtors' counsel, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, Attn. Margaret B. Whiteman, Esq.; and it is further

ORDERED that the Loan File Return Declaration must, at a minimum, include: (i) a list of each Hard Copy Loan File requested, identified by AHM loan number; (ii) the name and contact information of the Owner and a contact person; (iii) a sworn declaration that the Owner legally owns each loan requested and that the declarant has the requisite corporate authority to make such a declaration; (iv) the Owner's preferred method to receive the Hard Copy Loan Files, including (a) retrieval/pick-up; (b) delivery (with location); or (c) imaged DVD; (v) an attestation that the Owner shall pay all reasonable costs and expenses of associated with the preferred delivery method (as outlined more fully below) Hard Copy Loan Files; and (vi) an acknowledgment that such costs are subject to increase in connection with increased costs charged by ACRC; and it is further

ORDERED that the Owners shall be responsible for the Return Costs applicable to the method of delivery selected within the Loan File Return Declaration; and it is further

ORDERED that the Return Costs for each method of delivery, as identified in the Debtors' Limited Reply, shall be deemed reasonable costs and expenses for the return of such files for the duration of the ACRC Term Sheet; and it is further

ORDERED that the Return Costs are subject to increase depending on the rates charged by ACRC; and it is further

ORDERED that the remaining relief requested in the Motion and all objections related thereto are hereby adjourned to March 27, 2008 at 11:00AM; and it is further

ORDERED that this Court shall retain jurisdiction over all affected parties with respect to any matters, claims, or rights arising from or related to the implementation and interpretation of this order.

Dated: February ___, 2008
      Wilmington, Delaware

                                                  _____

                                                  The Honorable Christopher S. Sontchi
                                                  United States Bankruptcy Judge