IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                         :    Chapter 11
                                                               :
AMERICAN HOME MORTGAGE HOLDINGS,                               :    Case No. 07-11047 (CSS)
INC., a Delaware corporation, et al.,[1]                       :
                                                               :    Jointly Administered
                          Debtors.                             :
                                                               :    Hearing Date: February 28, 2008 at 11:00 a.m. (ET)
                                                               :    Objection Deadline: February 21, 2008 at 4:00 p.m. (ET)
---------------------------------------------------------------x

## DEBTORS' MOTION FOR AN ORDER APPROVING THE ASSUMPTION OF UNEXPIRED LEASE AGREEMENTS OF NONRESIDENTIAL REAL PROPERTY WITH AFP ASSOCIATES, LTD. LOCATED AT FREEPORT OFFICE CENTERS I & II IN IRVING, TEXAS

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submit this motion (the "Motion"), pursuant to sections 105 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing and approving the assumption of certain unexpired lease agreements of nonresidential real property with AFP Associates, Ltd. (the "Landlord") located at the Freeport Office Centers I & II in Irving, Texas, as more specifically identified on Exhibit A attached hereto (collectively, the "Freeport Office Lease Agreements"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

DB02:6548036.7                                                                          066585.1001

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested are sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rules 6006, and 9014.

## BACKGROUND

2. On August 6, 2007 (the "Petition Date") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the companies' continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the

Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELEVANT BACKGROUND

7. Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. After a five (5) day evidentiary hearing, by Order dated October 30, 2007, (the "Sale Order") [Docket No. 1711], the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., (the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as subsequently amended, the "APA").

8. Pursuant to the APA, the Servicing Sale will close in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close on the Final Closing,[2] the Debtors agreed to operate the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser. The Final Closing has not yet occurred, but is required to occur no later than September 30, 2008.

---

[2] Unless otherwise defined in this Motion, all capitalized terms used herein shall have the meanings set forth in the APA. Description of the APA in this Motion is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

9. The Freeport Office Lease Agreements, identified on <u>Exhibit A</u> attached hereto, which are also identified on Schedule 1.1(b) to the APA, are among the Purchased Assets that will be transferred to the Purchaser on the Final Closing. *See* APA § 2.1(b). On September 28, 2007, the Debtors filed the *Debtors' Motion for Order Extending the Deadline Pursuant to Section 365(d)(4) to Assume or Reject Unexpired Lease of Nonresidential Real Property* [Docket No. 1012] seeking an extension of the deadline to assume or reject the Freeport Office Lease Agreements to March 3, 2008 (the "<u>Current Deadline</u>"). The relief requested was granted by Order, dated October 15, 2007 (the "<u>Limited Extension Order</u>") [Docket No. 1552].

10. The APA provides that if the Sellers are required to either assume or reject a nonresidential real property under section 365(d)(4) of the Bankruptcy Code after the Initial Closing, but prior to the Final Closing, "Sellers shall undertake commercially reasonable efforts to obtain an extension of the [Section 365(d)(4)] deadline, and if they are unable to obtain such extension, shall assume such lease if so directed by Purchaser in writing." *See* APA, § 6.16.

11. The Debtors initiated communications with the Landlord in mid-January 2008 in attempt to obtain a consensual extension of the Bankruptcy Code section 365(d)(4) deadline. However, the Debtors were not successful in obtaining a consensual extension from the Landlord on satisfactory terms. The Debtors communicated their inability to obtain a consensual extension to the Purchaser. Accordingly, by letter dated February 4, 2008 and as contemplated by section 6.16 of the APA, the Purchaser directed the Debtors to assume the Freeport Office Lease Agreements. Pursuant to the terms of the APA and the authority previously granted in the Sale Order, the Debtors will assign the Freeport Office Lease Agreements to the Purchaser upon the occurrence of the Final Closing.

## RELIEF REQUESTED

12.     By this Motion, the Debtors request entry of an order (i) authorizing and approving the assumption of the Freeport Office Lease Agreements by the Debtors pursuant to sections 105(a) and 365 of the Bankruptcy Code and (ii) waiving the requirements of Bankruptcy Rule 6006(d).

## BASIS FOR RELIEF

I.     Assumption of Freeport Office Lease Agreements

13.     Section 365 of the Bankruptcy Code authorizes a trustee or debtor in possession to assume and assign or reject an executory contract or unexpired lease subject to the Bankruptcy Court's approval. 11 U.S.C. § 365. The decision whether an executory contract or unexpired lease should be assumed and assigned or rejected depends on the debtor's exercise of its "business judgment." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing business judgment as "traditional"); In re III Enterprises Inc. V, 163 B.R. 453, 469 (Bankr. E.D. PA. 1994) (citations omitted) ("generally, a court will give great deference to a debtor's decision to assume or reject the contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment - a standard which we have concluded many times is not difficult to meet"). The Bankruptcy Code further requires that a debtor in possession satisfy certain requirements at the time of assumption if a default exists under the contract or lease to be assumed. 11 U.S.C. § 365(b).

14.     Here, it is without question that sound business judgment exists for the approval of the assumption of the Freeport Office Lease Agreements. First, the Debtors, through testimony at the Sale Hearing, demonstrated sound business judgment existed for approval of the Servicing Sale, including the assumption and assignment of the Assumed Contracts, which included the Freeport Office Lease Agreements. The property subject to the Freeport Office

Lease Agreements serves as the operational headquarters of the Servicing Business and thus, the assumption and assignment of the Freeport Office Lease Agreements was an integral and negotiated component of the Servicing Sale. Accordingly, preserving the ability to occupy and utilize the premises is of significant importance to the Debtors and the Purchaser.

15. Second, as stated previously, pursuant to the Limited Extension Order, the Current Deadline to assume or reject the Freeport Office Lease Agreements is March 3, 2008. Pursuant to section 365(d)(4) of the Bankruptcy Code, if a court has already granted an extension of a debtor's time to assume an unexpired nonresidential real property lease, "the court may grant a subsequent extension only upon the prior written consent of the landlord in each instance." 11 U.S.C. §365(d)(4)(B)(ii). Despite commercially reasonable efforts to do so, the Debtors and the Landlord were unable to reach a consensual agreement to extend the Current Deadline. The Debtors must therefore assume the Freeport Office Lease Agreements prior to the expiration of the Current Deadline to avoid the Freeport Office Lease Agreements being deemed rejected under section 365(d)(4) of the Bankruptcy Code. Moreover, in accordance with section 6.16 of the APA, the Purchaser, by letter dated February 4, 2008, has directed the Sellers to assume the Freeport Office Lease Agreements.

16. Third, there is no harm or prejudice to the Debtors, the Landlord, or the Debtors' creditors, by authorizing and approving the assumption of the Freeport Office Lease Agreements. The Purchaser is responsible for the losses, costs, and expenses of the Servicing Business incurred during the period from the Initial Closing until the Final Closing, including the costs incurred under the Freeport Office Lease Agreements during such period. *See* APA, § 6.2(b). Even if the Sellers later reject the Freeport Office Lease Agreements, pursuant to the APA, the Purchaser is obligated to indemnify the Sellers for an amount equal to (x) any administrative expense priority claim under 503 of the Bankruptcy Code that arises from such

rejection for the period of two years following the earlier of (A) the rejection date and (B) fifteen business days following the date that the Purchaser notifies the Sellers of its request to treat such lease as a rejected contract, minus (y) the product of (1) the amount of such lessor's unsecured claim that would have been allowed if such lease had been rejected as of the Initial Closing Date multiplied by (2) a reasonable estimate of the recovery percentage on account of general unsecured claims. *See* APA, § 6.16. Further, pursuant to the terms of the APA and the authority granted in the Sale Order, the Debtors will assign the Freeport Office Lease Agreements to the Purchaser or its designee upon the Final Closing.

17. Finally, no cure amounts are due under the Freeport Office Lease Agreements. As demonstrated in connection with the Servicing Sale, there were no cure amounts due under the Freeport Office Lease Agreements through and including the Initial Closing. Additionally, the Debtors are current on all obligations under the Freeport Office Lease Agreements since the Initial Closing.

18. Based on the foregoing reasons, the assumption of the Freeport Office Lease Agreements is a sound exercise of the Debtors' business judgment.

## NOTICE

19. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the Landlord; (v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; (vii) counsel to the Purchaser; and (viii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

DB02:6548036.7                                                                 066585.1001

WHEREFORE, the Debtors respectfully request entry of an order in the form attached hereto as <u>Exhibit B</u> granting the relief requested and such other and further relief as is just and proper.

Dated: Wilmington, Delaware
February 8, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

# EXHIBIT A

## Real Property Leases

| | |
|---|---|
| Leases: | Office Building Lease, dated as of January 31, 2005, by and among AFP Associates, Ltd., as landlord, American Home Mortgage Servicing, Inc., as tenant, and American Home Mortgage Investment Corp., as guarantor |
| | Commencement Date Agreement, dated as of March 7, 2005, by and between AFP Associates, Ltd., as landlord, and American Home Mortgage Servicing, Inc., as tenant |
| | First Amendment to Lease, dated as of September 18, 2006, by and among AFP Associates, Ltd., as landlord, American Home Mortgage Servicing, Inc., as tenant, and American Home Mortgage Investment Corp., as guarantor |
| Leased Premises: | Freeport Office Center II, 4600 Regent Blvd, Irving, TX 75063<br>Freeport Office Center I, 4650 Regent Blvd, Irving, TX 75063 |
| Landlord: | AFP Associates, Ltd. c/o West World Management, Inc.<br>4 Manhattanville Road<br>Purchase, New York 10577 |