# EXHIBIT A

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334  (248) 855-5508

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**Aurora Loan Services, L.L.C.,**
a foreign limited liability company,

      Plaintiff,

v.

**American Home Mortgage Corp. of New York d/b/a
American Broker Conduit**, a foreign corporation,

      Defendant.

_____/

Lefkofsky & Gorosh, P.C.
Bruce M. Gorosh (P35455)
Lauren D. Honet (P43935)
Attorneys for Plaintiff
31500 Northwestern Highway, Suite 105
Farmington Hills, Michigan 48334
(248) 855-5508

_____/



07-717249 CH  6/28/2007
JDG:MICHAEL JAMES CALLAHAN
AURORA LOAN SERVICES LLC
VS
AMERICAN HOME MORTGAGE CORP OF

FILED
CATHY M. GARRETT
WAYNE COUNTY CLERK

JUN 2 8 2007

BY_____

## COMPLAINT FOR PRIORITY, TO QUIET TITLE AND FOR OTHER RELIEF

NOW COMES Plaintiff, Aurora Loan Services, L.L.C., a foreign limited liability company, by and through its attorneys, Lefkofsky & Gorosh, P.C., and for its Complaint for Priority, to Quiet Title and for Other Relief, state as follows:

1.      Plaintiff, Aurora Loan Services, L.L.C. ("Aurora") is a foreign limited liability company doing business in the City of Detroit, Wayne County, Michigan.

2.      Defendant, American Home Mortgage Corp. of New York d/b/a American Broker Conduit ("American Broker") is a foreign corporation doing business in the City of Detroit, Wayne County, Michigan.

3.      The subject of this lawsuit concerns real property located in the City of Detroit, County of Wayne, State of Michigan, described as:

F:\F\FATICO\Aurora Loan\May\Pleadings\Complaint 01.doc

The North 20 feet of Lot 902, and the South 20.01 feet of Lot 901, including the adjoining ½ vacated alley at the rear thereof, Warrendale Parkside Subdivision No. 3, as recorded in Liber 57, Page 67 of Plats, Wayne County Records.

Commonly known as: 9359 Fielding, Detroit, Michigan 48228
Tax Identification No.:  Ward 22  Item 103350

(the "Property").

4.      Jurisdiction and venue are proper in this Court for the reason that the lawsuit involves title to real property and said relief is exclusively within the equitable jurisdiction of this Court regarding claims to real property located in the City of Detroit, Wayne County, Michigan.

## GENERAL ALLEGATIONS

5.      On or about July 18, 2005, American Home Mortgage Corp of New York d/b/a American Broker Conduit ("American Broker") originated two different loans to Djuan May, a married man, repayment of which were secured by mortgages on the Property.

6.      The intended first mortgage loan was in the original amount of $84,800.00, and was secured by what was intended to be a first mortgage recorded against the Property with the Wayne County Register of Deeds on November 4, 2005 at Liber 43790, Page 1488.  This mortgage was ultimately assigned to Aurora Loan Services, L.L.C. by Corporate Assignment of Mortgage dated January 30, 2007 and recorded with the Wayne County Register of Deeds on February 1, 2007 in Liber 45932, Page 417 (the "Aurora First Mortgage").  Attached as **Exhibit "A"** is a copy of the Aurora First Mortgage which is incorporated herein by reference thereto.

LEFKOFSKY & GORSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334   (248) 855-5508

7. The intended second mortgage loan was in the original amount of $10,600.00, and was secured by what was intended to be a second mortgage recorded against the Property with the Wayne County Register of Deeds on November 4, 2005 at Liber 43790, Page 1455 (the "American Broker Second Mortgage"). Attached as **Exhibit "B"** is a copy of the American Broker Second Mortgage which is incorporated herein by reference thereto.

8. Aurora subsequently foreclosed on its intended first mortgage and a sheriff's deed on mortgage sale was issued on February 21, 2007 and recorded with the Wayne County Register of Deeds on March 2, 2007 in Liber 46037, Page 488 (the "Aurora Mortgage Sheriff's Deed"). Attached as **Exhibit "C"** is a copy of the Aurora Mortgage Sheriff's Deed which is incorporated herein by reference thereto.

9. Due to the abandonment of the Property and in accordance with MCLA 600.3241a, the redemption period on the Aurora Mortgage Sheriff's Deed expired on March 28, 2007 and therefore, title to the Property has vested to Aurora.

10. As evidence by the above referenced recording information, the above referenced mortgages were recorded out of order, in that the Aurora First Mortgage in the amount of $84,800.00, the intended first mortgage, was recorded at Liber 43790, Page **1488** and the $10,600.00 American Broker Second Mortgage, the intended second mortgage, was recorded at Liber 43790, Page **1455**.

11. Notwithstanding the improper recording, the Aurora First Mortgage is and was superior to the American Broker Second Mortgage.

12. Michigan is a "race-notice" state with respect to recording priority.

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334    (248) 855-5508

3

13.    American Broker had notice of the Aurora First Mortgage in the amount of $84,800.00 and further had notice that it was subject to and subordinate to the Aurora First Mortgage.

14.    It is clear and unequivocal that American Broker knew that its $10,600.00 intended second mortgage was subject to and subordinate to the Aurora First Mortgage in the amount of $84,800.00, for the reason, among other things, that the $10,600.00 intended second mortgage states on the face of the document that it is a "MICHIGAN-SECOND MORTGAGE." See **Exhibit "B."**

15.    Upon information and belief, the American Broker Second Mortgage has been paid off.

16.    Upon information and belief, despite being paid off, American Broker has failed to execute and record a discharge of the American Broker Mortgage.

## COUNT I – PRIORITY

17.    Plaintiff realleges and incorporates the preceding paragraphs as if specifically set forth below.

18.    The Aurora First Mortgage on the Property is and was superior to and a priority over the American Broker Second Mortgage on the Property.

19.    American Broker had actual knowledge of the prior and superior Aurora First Mortgage.

20.    The interest of Aurora in the Property is superior to and has priority over the interest claimed by American Broker as the American Broker Second Mortgage was granted and

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334    (248) 855-5508

accepted with notice that the Aurora First Mortgage was already in existence, making the American Broker Second Mortgage junior to the Aurora First Mortgage.

21.     As further evidence of American Broker's junior status, at the time both the Aurora and the American Broker loans were closed, the HUD Settlement Statement referred to the proceeds from the American Home Second Mortgage as "proceeds towards 2nd mortgage." Attached as **Exhibit "D"** is a copy of the HUD Settlement Statement which is incorporated herein by reference thereto.

22.     Michigan is a "race-notice" state with respect to mortgage priority and it is clear that American Broker had notice of the Aurora First Mortgage and further had notice that the American Broker Second Mortgage was a junior and second mortgage.

WHEREFORE, Plaintiff, Aurora Loan Services, L.L.C., a foreign limited liability company, requests that this Court grant to Plaintiff, Aurora, a Judgment of Priority, determining that:

a.  The Aurora First Mortgage is prior and superior to the American Broker Second Mortgage;

b.  Due to the expiration of the redemption period set forth in the Aurora Sheriff's Deed, title to the Property has vested in Aurora, and American Broker's interest in the Property is hereby be terminated;

c.  Grant Aurora its actual costs and attorneys' fees incurred in this matter; and

d.  Grant any and all such other relief that the Court deems just and fair.

## COUNT II –ACTION TO QUIET TITLE

23.     Plaintiff realleges and incorporates the preceding paragraphs as if specifically set forth below.

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334   (248) 855-5508

24.     The Aurora First Mortgage on the Property is and was superior to and a priority over the American Broker Second Mortgage on the Property.

25.     The Aurora First Mortgage on the Property is and was superior to and a priority over the American Broker Second Mortgage which was intended to be a second mortgage on the Property.

26.     As both loans were closed the same day, at the same time, American Broker had actual knowledge that the Aurora First Mortgage was intended to be prior and superior to the American Broker Second Mortgage when it closed on the American Broker Second Mortgage in the amount of $10,600.00 and took its intended second mortgage to secure repayment.

27.     American Broker's own documents declare the $10,600.00 intended second mortgage to be a "Michigan - Second Mortgage." See **Exhibit "B."**

28.     The Aurora First Mortgage and the American Broker Second Mortgage were inadvertently recorded in the wrong order.

29.     Upon information and belief, the American Broker Second Mortgage was paid in full and Plaintiff is entitled to an Order Quieting Title to the Property in Aurora Loan Services, L.L.C.

30.     As the Aurora First Mortgage was foreclosed, and the redemption period on the Aurora Mortgage Sheriff's Deed expired on March 28, 2007, title to the Property has vested to Aurora.

31.     At this time, the American Broker Second Mortgage remains a cloud on title which needs to be removed.

WHEREFORE, Plaintiff, Aurora Loan Services, L.L.C., a foreign limited liability company, respectfully requests this Court grant to Plaintiff the following relief:

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334    (248) 855-5508

a. Due to the expiration of the redemption period as set forth in the Aurora Mortgage Sheriff's Deed, and Defendant's failure to redeem, title to the Property has vested to Aurora Loan Services, L.L.C.;

b. That the $10,600.00 American Broker Second Mortgage was and is subordinate to the $84,800.00 Aurora First Mortgage;

c. That due to the expiration of the redemption period as set forth in the Aurora Mortgage Sheriff's Deed, and American Broker's failure to redeem, any interest that American Broker may have had in the Property, if any, is hereby terminated;

d. That any interest in the Property claimed by American Broker pursuant to the $10,600.00 American Broker Second Mortgage, or by any assignee of American Broker, shall be and hereby is terminated;

e. That the Judgment quieting title may be recorded with the Wayne County Register of Deeds to reflect the termination and discharge of the $10,600.00 American Broker Second Mortgage;

f. That Plaintiff be awarded its costs and attorney fees so wrongfully incurred herein; and

g. That Plaintiffs be awarded such other and further relief that the court deems just and fair.

## COUNT III – FAILURE TO DISCHARGE MORTGAGE

32.     Plaintiff realleges and incorporates all preceding paragraphs of this complaint as if specifically set forth below.

33.     MCLA §565.41 provides that after a mortgage has been paid or otherwise satisfied, the mortgagee shall prepare, file and record a discharge of the mortgage.

34.     MCLA §565.44(1) provides that if a mortgagee refuses or neglects to discharge the mortgage, the mortgagee is liable for all actual damages caused by the neglect or refusal to anyone who has an interest in the mortgaged premises.

35.     MCLA §565.44 (2) provides, in this instance, that the filing of the discharge shall be performed within 75 days after being requested to file the discharge of mortgage.

F:\F\FATICO\Aurora Loan\May\Pleadings\Complaint 01.doc

36.     Upon information and belief, the debt that was secured by the American Broker Second Mortgage on the Property was paid to American Broker on or about April 3, 2007.

37.     It has been more than 75 days since American Broker was required to file the discharge of the American Broker Second Mortgage on the Property.

38.     American Broker has neglected and failed to discharge the American Broker Second Mortgage despite the underlying debt believing to be satisfied and despite being requested to comply with the statutory requirements and file the discharge of the American Broker Second Mortgage.

39.     As a result of American Broker's breach of its statutory duty, Aurora has incurred, and is continuing to incur damages.

40.     Pursuant to statutory authority, American Broker is liable to Aurora for its actual damages and may be liable for double its actual damages.

WHEREFORE, Plaintiff, Aurora Loan Services, L.L.C., a foreign limited liability company, respectfully requests that this Court enter a Judgment in favor of Aurora and against, Defendant, American Home Mortgage Corp of New York d/b/a American Broker Conduit Company, a foreign corporation, as follows:

    a.  American Broker's interest, if any, in the Property shall be declared subject and inferior to the Aurora First Mortgage and that a Judgment may be recorded with the Wayne County Register of Deeds to so indicate;

    b.  American Broker shall be ordered to record a discharge of the American Broker Second Mortgage wit the Wayne County Register of Deeds within seven days of the entry of the Judgment;

    c.  If American Broker fails to record a discharge of the American Broker Second Mortgage within seven days of entry of the Judgment, the Judgment itself may be recorded with the Wayne County Register of Deeds to provide record notice of said discharge;

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334    (248) 855-5508

d. American Broker shall be ordered to pay to Aurora $1,000.00 pursuant to MCLA §565.44(1);

e. American Broker shall be ordered to pay to Aurora double its actual costs pursuant to MCLA §565.44(1); and

f. Aurora shall be granted such other and further relief that this Court deems just and equitable.

## COUNT IV – DECLARATORY RELIEF

41.     Plaintiff realleges and incorporates the preceding paragraphs as if specifically set forth below.

42.     That pursuant to MCR 2.605, this court may declare the rights of the parties to this suit.

43.     That pursuant to the facts set forth above, Plaintiff respectfully requests that this court enter Judgment Quieting Title to the Property and that title to the Property shall vest to Aurora Loan Services, L.L.C., and further, that any interest in the Property asserted by American Broker pursuant to the $10,600.00 American Broker Second Mortgage, or otherwise, be terminated and deemed to be of no further force or effect.

WHEREFORE, Plaintiff, Aurora Loan Services, L.L.C., a foreign limited liability company, respectfully requests this Court grant to Plaintiff the following relief:

a. Due to the expiration of the redemption period as set forth in the Aurora Mortgage Sheriff's Deed, and American Broker's failure to redeem, title to the Property has vested to Aurora Loan Services, L.L.C.;

b. That the $10,600.00 American Broker Second Mortgage was and is subordinate to the $84,800.00 Aurora First Mortgage;

c. That due to the expiration of the redemption period as set forth in the Aurora Mortgage Sheriff's Deed, the $10,600.00 American Broker Second Mortgage is terminated and discharged;

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334    (248) 855-5508

9

d. That any interest in the Property claimed by American Broker pursuant to the $10,600.00 American Broker Second Mortgage, or by any assignee of American Broker, shall be and is hereby terminated;

e. That the Judgment quieting title may be recorded with the Wayne County Register of Deeds to reflect the termination of the $10,600.00 American Broker Second Mortgage;

f. That Plaintiff be awarded its costs and attorney fees so wrongfully incurred herein; and

g. That Plaintiffs be awarded such other and further relief that the court deems just and fair.

Respectfully submitted,

**Lefkofsky & Gorosh, P.C.**

By: _____

Bruce M. Gorosh (P35455)
Lauren D. Honet (P43935)
Attorneys for Plaintiff
31500 Northwestern Highway, Suite 105
Farmington Hills, MI 48334
(248) 855-5508

Dated: June 27, 2007

LEFKOFSKY & GOROSH, P.C., SUITE 105, 31500 NORTHWESTERN HIGHWAY, FARMINGTON HILLS, MI 48334    (248) 855-5508

10

F:\F\FATICO\Aurora Loan\May\Pleadings\Complaint 01.doc

**694991 NOV 4 2005**

Li-43790        Pa-1488
205501879   11/04/2005
Bernard J. Youngblood
Wayne Co. Register of Deeds

Lamont - Rhodes Title

# MORTGAGE

Return To:
American Home Mortgage Acceptance, Inc.
520 Broadhollow Road
Melville, NY 11747

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 18, 2005
together with all Riders to this document.
(B) "Borrower" is Djuan May, A MARRIED MAN

Borrower's address is 5674 Willow Creek, Canton, MI 48187
. Borrower is the mortgagor under this Security Instrument.

DOC  #:317391                  APPL #:0000904161
MICHIGAN-Single  Family- Fannie  Mae/Freddie  Mac UNIFORM  INSTRUMENT                              Form 3023 1/01

-6(MI) (0005)
Page 1 of 15      0931 0005      Initials: ___
VMP MORTGAGE FORMS - (800)521-7291

Mtg 18pss Sre

Li-43790          Pa-1489

(C) "Lender" is  American Home Mortgage Acceptance, Inc.

Lender is a  Corporation
organized and existing under the laws of  State of New York
Lender's address is  538 Broadhollow Road, Melville, NY  11747 .

Lender is the mortgagee under this Security Instrument.

(D) "Note"  means the promissory note signed by Borrower and dated  July 18, 2005
The Note states that Borrower owes Lender Eighty Four Thousand Eight Hundred and
No/100                                                                                     Dollars
(U.S. $ 84,800.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    August 1, 2035

(E) "Property"  means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan"  means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders"  means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider  ☒ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider          ☐ Other(s) [specify]

(H) "Applicable Law"  means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments"  means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer"  means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items"  means those items that are described in Section 3.

(L) "Miscellaneous Proceeds"  means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

(M) "Mortgage Insurance"  means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment"  means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC #:317392              APPL #:0000904141
-6(MI) (0008)                    Page 2 of 15              Initials ___          Form 3023 1/01

Li-43790      Pa-1490

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the    County                                         [Type of Recording Jurisdiction]
of    Wayne                                          : [Name of Recording Jurisdiction]
SEE ATTACHED LEGAL DESCRIPTION

Parcel ID Number:  WARD 22 ITEM 103350                          which currently has the address of
9359 Fielding                                                                      [Street]
Detroit                                          [City] , Michigan   48228           [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC  #:317393                      APPL #:0000904141

VMP -6(MI) (0009)                        Page 3 of 15        Initials         Form 3023 1/01

Li-43790    Pn-1491

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

DOC #:317394    APPL #:0000904141

-6(MI) (0005)    Page 4 of 15    Initial    Form 3023 1/01

Li-43790       Pa-1492

for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

DOC #:317395          APPL #:0000904141

-6(MI) (0008)         Page 5 of 15                            Form 3023 1/01

Li-43790        Pa-1493

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and

DOC  #:317396              APPL #:0000904141

-6(MI) (0005)              Page 6 of 15              Form 3023 1/01

Li-43790      Pn-1494

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

DOC #:317397          APPL #:0000904141

@@@-6(MI) (0005)          Page 7 of 15          Initials:          Form 3023 1/01

Li-43790        Pa-1495

**9. Protection of Lender´s Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

DOC #:317398            APPL #:0000906141

-6(MI) (0005)            Page 8 of 15            Initials:            Form 3023 1/01

Li-43790        Pa-1496

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

DOC #:317399                      APPL #:0000904141

-6(MI) (0005)                     Page 9 of 15                    Initials: ___              Form 3023 1/01

Li-43790        Pn-1497

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of

DOC #:317400                    APPL #:0000904141

-6(MI) (0008)                   Page 10 of 15                                      Form 3023 1/01

Li-43790        Pa-1498

address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the

DOC #:317401                APPL #:0000904141

-6(MI) (0005)               Page 11 of 15              Initials:              Form 3023 1/01

Li-43790    Pu-1499

following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

DOC #:317402                APPL #:0000904141

-6(MI) (0005)                Page 12 of 15                              Form 3023 1/01

LI-43790    Pa-1500

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

DOC #:317403          APPL #:0000904141

-6(MI) (0005)              Page 13 of 15          Initials:          Form 3023 1/01

Li-43790      Pa-1501

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   Djuan May                    -Borrower

_____          _____ (Seal)
                                                                 -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                        -Borrower

DOC #:317404                APPL #:0000904141

-6(MI) (0005)                    Page 14 of 15                Form 3023 1/01

Li-43790        Pn-1502.

STATE OF MICHIGAN,      WAYNE                                    County ss:

The foregoing instrument was acknowledged before me this    July 18, 2005
by   Djuan May, A MARRIED MAN

MAX A. HORVATH, JR.
Notary Public, Wayne County, Michigan
My Commission Expires, November 8, 2008
Acting in the County of Wayne

Notary Public,

County, Michigan

This instrument was prepared by
American Home Mortgage Acceptance, Inc.
Gwendolyn Hogan
33481 W 14 Mile Road
Suite 100
Farmington Hills, MI   48331

DOC  #:317405              APPL #:0000904141

-6(MI) (0005)                  Page 15 of 15          Initials            Form 3023 1/01

Li-43790    Pa-1503

# 1-4 FAMILY RIDER

THIS 1-4 FAMILY RIDER is made this    18th    day of  July, 2005    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  American Home Mortgage Acceptance, Inc.

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at:

9359 Fielding, Detroit, MI  48228
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in Security Instrument, the following items now or hereafter attached to the Property
to the extent they are fixtures are added to the Property description, and shall also constitute the Property
covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now
or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and
light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs,
water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers,
awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors,
cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto,
shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as
the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a
change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the
change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental
body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the
other hazards for which insurance is required by Section 5.

DOC  #:320721                 APPL #:0000904141
MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for Michigan        UM31  0008        Page 1 of 2                          Initials 
@-57R(MI) (0008)                      VMP MORTGAGE FORMS - (800)521-7291                Form 3170 1/01

Li-43790     Pa-1504

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
Djuan May                      -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                -Borrower

DOC #:320722                   APPL #:0000904141                Form 3170 1/01
VMP-57R(MI) (0008)                  Page 2 of 2

Li-43790          Pa-1505
First American Title Company

Commitment Number:  LRT05-0341

**SCHEDULE C**
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

LAND SITUATED IN THE CITY OF DETROIT, COUNTY OF WAYNE, STATE OF MICHIGAN TO-WIT:

THE NORTH 20 FEET OF LOT 902, AND THE SOUTH 20.01 FEET OF LOT 901, INCLUDING THE ADJOINING 1/2 VACATED ALLEY AT THE REAR THEREOF, WARRENDALE PARKSIDE SUBDIVISION NO. 3, AS RECORDED IN LIBER 57, PAGE 67 OF PLATS, WAYNE COUNTY RECORDS.

COMMONLY KNOWN AS: 9359 FIELDING

ALTA Commitment
Schedule C                                          (LRT05-0341/LRT05-0341/27)

8014 64 4.43 SEP 0 1 '06

Li-45254        Pa-508
206438696    9/01/2006   09:00AM
Bernard J. Younsblood
Wayne Co. Resister of Deeds

## CORPORATE ASSIGNMENT OF MORTGAGE

Wayne, Michigan
SELLER'S SERVICING #:0120076278 "MAY"
POOL #: ACTIVE
OLD SERVICING #: 1000904141

MERS #: 100025400003315075 VRU #: 1-888-679-6377
Date of Assignment: August 23rd, 2006
Assignor: AMERICAN HOME MORTGAGE ACCEPTANCE, INC. at 520 BROADHOLLOW ROAD, MELVILLE, NY 11747
Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at G 4318 MILLER ROAD, FLINT, MI 48507

Executed By: DJUAN MAY, A MARRIED MAN  To: AMERICAN HOME MORTGAGE ACCEPTANCE, INC.
Date of Mortgage: 07/18/2005 Recorded:  11/04/2005  in Book/Reel/Liber: 43790 Page/Folio: 1488 as Instrument No.: R 205501879  In Wayne, Michigan

Property Address: 9359 FIELDING, DETROIT, MI 48228

Legal:  LAND SITUATED IN THE CITY OF DETROIT, COUNTY OF WAYNE, STATE OF MICHIGAN TO-WIT:

THE NORTH 20 FEET OF LOT 902, AND THE SOUTH 20.01 FEET OF LOT 901, INCLUDING THE ADJOINING 1/2 VACATED VALLEY AT THE REAR THEREOF, WARRENDALE PARKSIDE SUBDIVISION NO 3, AS RECORDED IN LIBER 57, PAGE 67 OF PLATS, WAYNE COUNTY RECORDS

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $84,800.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

AMERICAN HOME MORTGAGE/ACCEPTANCE, INC.
On August 28, 2006

By:
Andrew Valentine  SR vice President

STATE OF New York
COUNTY OF Suffolk

On August 25, 2006 before me, James SFiroudis, a Notary Public in and for Queens County in the State of New York, personally appeared Andrew Valentine SR VP, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Expires 8/23/2008

JAMES SFIROUDIS
Notary Public, State of New York
No. 01SF6114650
Qualified in Queens County
Commission Expires Aug. 23, 2008 area for notarial seal)

Prepared By:   Joann Rein,  AURORA LOAN SERVICES 601 5TH AVE, PO BOX 1706, SCOTTSBLUFF, NE 69363-1706 308-635-3500
When Recorded Return To: Joann Rein AURORA LOAN SERVICES P.O. Box 1706, Scottsbluff, NE  69363-1706

*CHI*CHIALSI*08/23/2006 08:34:14 AM* ALSI*01ALSIA00000000000000000319879* MNVAYNE* 0120076278 MISTATE_MORT_ASSIGN_ASSN **JLHALSI*

ASG  9  4R  1P  3  CMD

WAYNE, MI  Document:MG AS 45254.508                         Page:1 of 1

Printed on:4/27/2007 3:42:31 PM

```
Li-45932        Pa-417
207050844    2/01/2007    09:12AM
Bernard J. Youngblood
Wayne Co. Register of Deeds
```

2007 FEB -1  AM 9:02

FC

## CORPORATE ASSIGNMENT OF MORTGAGE

Wayne, Michigan
SELLER'S SERVICING #:0120076278 "MAY"
OLD SERVICING #: 1000904141

MERS #: 1000254000003315075 VRU #: 1-888-679-6377
Date of Assignment: January 30th, 2007
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. A DELAWARE CORPORATION at G4318
MILLER ROAD, FLINT, MI 48507
Assignee: AURORA LOAN SERVICES LLC at 601 5TH AVENUE, PO BOX 1706, SCOTTSBLUFF, NE 69361

Executed By: DJUAN MAY, A MARRIED MAN  To: AMERICAN HOME MORTGAGE ACCEPTANCE, INC.
Date of Mortgage: 07/18/2005 Recorded: 11/04/2005 in Book/Reel/Liber: 43790 Page/Folio: 1488 as Instrument
No.: R 205501879  in Wayne, Michigan

Property Address: 9359 FIELDING, DETROIT, MI 48228

Legal: LAND SITUATED IN THE CITY OF DETROIT, COUNTY OF WAYNE, STATE OF MICHIGAN TO-WIT
THE NORTH 20 FEET OF LOT 902, AND THE SOUTH 20 01 FEET OF LOT 901, INCLUDING THE ADJOINING 1/2
VACATED VALLEY AT THE REAR THEREOF, WARRENDALE PARKSIDE SUBDIVISION NO 3, AS RECORDED
IN LIBER 57, PAGE 67 OF PLATS, WAYNE COUNTY RECORDS  # 1022103350

    KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of
$64,800.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or
owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein
contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial
interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage and Note.

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. A DELAWARE CORPORATION
On January 30th, 2007

By
NANCY L WALKER, Vice-President

STATE OF NEBRASKA
COUNTY OF Scotts Bluff

ON January 30th, 2007, before me, JOANN REIN, a Notary Public in and for the County of Scotts Bluff County, State
of Nebraska, personally appeared NANCY L WALKER, Vice-President, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

JOANN REIN
Notary Expires: 12/27/2008

GENERAL NOTARY - State of Nebraska
JOANN REIN
My Comm. Exp. Dec. 27, 2008

(This area for notarial seal)

Prepared By:    Susan Lindhorst, AURORA LOAN SERVICES 601 5TH AVE, PO BOX 1706, SCOTTSBLUFF,
NE 69363-1706 308-635-3500
                                    Lindhorst AURORA LOAN SERVICES P.O. Box 1706, Scottsbluff, NE

When recorded return to:
e-Title
PO Box 5041
Troy MI 48007-5041
    191.1225

"SFL"SFLALSI"01/30/2007 09:24:26 AM" ALSI01ALSIA000000000000000000359443" MIWAYNE" 0120076278 MISTATE_MORT_ASSIGN_ASSN_"SFLALSI"

Branch :LEG,User :LG13                    Comment:                                    Station Id :BWXT

**694987 NOV 4 2005**

Li-43790          Pa-1455
205501871  11/04/2005
Bernard J. Youngblood
Wayne Co. Register of Deeds

## MORTGAGE

MIN 100024200009042074

THIS MORTGAGE is made this  18th        day of July, 2005          , between
the Mortgagor,  Djuan May, A MARRIED MAN

, whose address is

5674 Willow Creek, Canton, MI  48187

(herein "Borrower"), and the Mortgagee,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined,
and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has
an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
American Brokers Conduit

("Lender") is organized and existing under the laws of State of New York
and has an address of 538 Broadhollow Road, Melville, NY  11747

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S.$  10,600.00
which indebtedness is evidenced by Borrower's note dated   July 18, 2005              and extensions
and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on   August 1, 2020              ;
TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this
Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does
hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and
assigns) and to the successors and assigns of MERS, with power of sale, the following described property located
in the County of  Wayne
State of Michigan:
SEE ATTACHED LEGAL DESCRIPTION

MICHIGAN - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT  WITH MERS

DOC #:329661          APPL #:0000904207

-76N(MI) (0309)        Page 1 of 8                                Form 3823
VMP MORTGAGE FORMS - (800)521-7291                Amended 2/01

*handwritten left margin:* Lamont - Rhodes Title

*handwritten bottom:* Mtg Mess S n

Branch :LEG,User :LG13                    Comment:                    Station Id :BWXT

Li-43790                    Pa-1456

which has the address of 9359 Fielding                              [Street],
Detroit                              [City], Michigan 48228          [Zip Code]
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage

DOC #:329662                    APPL #:0000904207

@2-76N(MI) (0203)                    Page 2 of 4                              Form 3823

Li-43790          Pa-1457

is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 17 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence

DOC #:329663          APPL #:0000904207

[signature]                    initials: [initials]                    Form 3823

[stamp] -76N(MI) (0207)                    Page 3 of 6

Branch :LEG,User :LG13                Comment:                                    Station Id :BWXT

Li-43790          Pa-1458

of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale hereby granted and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof. Lender shall publish and post the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. [Omitted]

20. Release. Upon payment of all sums secured by this Mortgage, Lender shall prepare and file a discharge of this Mortgage without charge to Borrower, and shall pay the fee for recording the discharge.

REQUEST FOR NOTICE OF DEFAULT
———————————AND FORECLOSURE UNDER SUPERIOR ———————————
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witnesses:

_____        _____ (Seal)
                               Djuan May              -Borrower

_____        _____ (Seal)
                                                      -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                              -Borrower

(Sign Original Only)

STATE OF MICHIGAN,  WAYNE                          County ss:
The foregoing instrument was acknowledged before me this   July 18, 2005
by   Djuan May, A MARRIED MAN

MAX A. HORVATH, JR.
Notary Public, Wayne County, Michigan
My Commission Expires, November 8, 2006
Acting in the County of Wayne

_____
Notary Public,
                                                  County, Michigan

This instrument was prepared by
Gwendolyn Hogan
33481 N 14 Mile Road, Suite 100
Farmington Hills, MI  48331
DOC #:329664                    APPL #:0000904207
-76N(MI) (0005)                 Page 4 of 6                    Form 3823

Li-43790          Pa-1459

# 1-4 FAMILY RIDER

THIS 1-4 FAMILY RIDER is made this    18th        day of  July, 2005                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  American Brokers Conduit .

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

9359 Fielding, Detroit, MI  48228
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in Security Instrument, the following items now or hereafter attached to the Property
to the extent they are fixtures are added to the Property description, and shall also constitute the Property
covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now
or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and
light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs,
water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers,
awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors,
cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto,
shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as
the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a
change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the
change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental
body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the
other hazards for which insurance is required by Section 5.

DOC #:320721            APPL #:0000904207
MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for Michigan                      Page 1 of 2
(logo)-57R(MI) (0008)        UM31 0008        VMP MORTGAGE FORMS - (800)521-7291            Initials: _____        Form 3170 1/01

Branch :LEG,User :LG13                    Comment:                    Station Id :BWXT

Li-43790        Pa-1460

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
Djuan Hay                -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower

DOC #:320722                 APPL #:0000904207                 Form 3170 1/01
VMP-57R(MI) (0008)              Page 2 of 2

Li-43790          Pg-1461

First American Title Company

Commitment Number:  LRT05-0341A

### SCHEDULE C
### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

LAND SITUATED IN THE CITY OF DETROIT, COUNTY OF WAYNE, STATE OF MICHIGAN TO-WIT:

THE NORTH 20 FEET OF LOT 902, AND THE SOUTH 20.01 FEET OF LOT 901, INCLUDING THE ADJOINING 1/2 VACATED ALLEY AT THE REAR THEREOF, WARRENDALE PARKSIDE SUBDIVISION NO. 3, AS RECORDED IN LIBER 57, PAGE 67 OF PLATS, WAYNE COUNTY RECORDS.

COMMONLY KNOWN AS: 9359 FIELDING

ALTA Commitment
Schedule C                                          (LRT05-0341A/LRT05-0341A/33)

2007 MAR -2 PM 3:28

# FILE DO NOT MAIL

Bernard J. Youngblood
Wayne County Register of Deeds
March 02, 2007  03:28 PM
Liber 46037 Page 988-992
$207205754   SHO  FEE: $27.00

## SHERIFF'S DEED ON MORTGAGE FORECLOSURE

THIS INDENTURE made the February 21, 2007 between     Adrienne Sanders     a deputy sheriff in and for Wayne County, Michigan, party of the first part, and Aurora Loan Services, LLC, 601 Fifth Avenue Scottsbluff, NE, 69361, party of the second part (hereinafter called the grantee).

Witnesseth, that whereas, Djuan May, a Married Man, whose address is 5674 Willow Creek, Canton, MI 48187, made a certain mortgage to American Home Mortgage Acceptance, Inc. (hereinafter called "Mortgagee"), which was duly recorded in the office of the Register of Deeds of Wayne County in Liber 43790, Page 1488, Wayne County Records.  Said mortgage is now held by Aurora Loan Services, LLC by assignment dated January 30, 2007 and recorded on February 1, 2007in Liber 45932, Page 417, Wayne County Records.

WHEREAS, said mortgage contained a power of sale which has become operative by reason of default in the terms and conditions of the mortgage; and

WHEREAS, no suit or proceeding at law or in equity has been instituted to recover the debt secured by the mortgage or any part thereof; and

WHEREAS, by virtue of the power of sale, and pursuant to the statutes of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in the mortgage that the premises, or some part of them, would be sold on the 21st day of February, 2007, at the Jefferson Avenue entrance to the Coleman A. Young Municipal Center in Detroit, that being the place of holding the Circuit Court for Wayne County wherein the premises are located; and

WHEREAS, pursuant to said notice I did, at 1:00 p.m., local time, on the date stated above, expose for sale at public vendue the said lands and tenements described below, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of __Ninety Thousand Three Hundred Seventeen & 77/100 Dollars($90,317.77)__, that being the highest bid therefore and the grantee being the highest bidder; and

WHEREAS, said lands and tenements are situated in the City of Detroit, Wayne County, Michigan, and are more particularly described as:

The North 20 feet of Lot 902, and the South 20.01 feet of Lot 901, including the adjoining one-half vacated alley at the rear thereof, Warrendale Parkside Subdivision No. 3, as Recorded in Liber 57, Page 67 of Plats, Wayne County Records.

Tax# 1022103350
More commonly known as 9359 Fielding

Now, this indenture Witnesseth, that I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain, and sell unto the grantee, its successors and assigns, FOREVER, all the estate, right, title, and interest which the said Mortgagor(s) had in said land and tenements and every part thereof, on 18th day of July, 2005, that being the date of said mortgage, or any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoove forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could, or ought to sell the same.
In witness whereof I have set my hand and seal.

_A Sanders_   Adrienne Sanders
Deputy Sheriff in and for the County of Wayne, Michigan

State of Michigan
County of Wayne

This Sheriff's Deed on Mortgage Sale was acknowledged before me this February 21, 2007, by ___Adrienne Sanders___, Deputy Sheriff for Wayne County, Michigan.

_____, Notary Public
Wayne County, Michigan
My Commission Expires:

Yolanda Diaz
Notary Public, State of Michigan
County of Wayne
My commission expires 8/20/20'

County Revenue Required.
Exempt from State Real Estate Transfer Tax
pursuant to MCLA §207.526(u)

File Number: 191.1223 Loan Type: CONV

**STATE OF MICHIGAN**
Wayne County
March 02, 2007  03:28:00 PM
Receipt# 26605

**REAL ESTATE TRANSFER TAX**
$59.95 - CO
$8.80 - ST
Stamp # 4944

99.55

$255F

L 46037 - P 989

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY MORTGAGE SALE - Default has been made in the conditions of a mortgage made by Djuan May, a Married Man, to American Home Mortgage Acceptance, Inc., Mortgagee, dated July 18, 2005 and recorded November 4, 2005 in Liber 43790, Page 1488, Wayne County Records, Michigan. Said mortgage is now held by Aurora Loan Services, LLC by assignment. There is claimed to be due at the date hereof the sum of Eighty-Seven Thousand Seven Hundred Twelve and 30/100 Dollars ($87,712.30) including interest at 7.75% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue at the Jefferson Avenue entrance to the Coleman A. Young Municipal Center in Detroit in Wayne County, Michigan at 1:00 p.m. on FEBRUARY 21, 2007. Said premises are located in the City of Detroit, Wayne County, Michigan, and are described as: The North 28 feet of Lot 902, and the South 20.01 feet of Lot 901, including the adjoining one-half vacated alley at the rear thereof, Warrendale Parkside Subdivision No. 3, as Recorded in Liber 57, Page 67 of Plats, Wayne County Records. The redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA A600.3241a, in which case the redemption period shall be 30 days from the date of such sale. TO ALL PURCHASERS: The foreclosing mortgagee can rescind the sale. In that event, your damages, if any, are limited solely to the return of the bid amount tendered at sale, plus interest. Dated: January 23, 2007 Orlans Associates, P.C. Attorneys for Servicer P.O. Box 5041 Troy, MI 48007-5041 (248) 457-1000    File No. 191.1223 (1-23)(2-13)

**EVIDENCE OF SALE**

(Affidavit of Publisher)

STATE OF MICHIGAN
ss.
COUNTY OF WAYNE

Resa T. Rodgers being duly sworn deposes and says that a notice, a true copy of which is annexed hereto, and published in Detroit Legal News, a newspaper printed and circulated in said State and County on January 23, January 30, February 6, February 13, 2007 A.D. and that he/she is the principal clerk of the printers of said newspaper and knows the facts stated herein.

Resa T. Rodgers
Subscribed and sworn before me on this 13th day of February 2007 A.D.

Dawn M Keith
Notary Public Oakland County, Michigan. My commission expires: December 18, 2007  Acting in Wayne County, Michigan.

(Affidavit of Posting)

STATE OF MICHIGAN
ss.
COUNTY OF WAYNE

Jerry Williams  being duly sworn, deposes that on the 27th day of January, 2007 A.D, he/she posted a notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said notice by attaching the same in a secure manner to  the front door.

CIRCLE IF

MultiUnit    Mobile/Manufactured Home    Vacant    No Dwelling

Jerry Williams
Subscribed and sworn before me on this 2nd day of February 2007 A.D.

Deborah L. Elick
Notary Public Wayne County, Michigan. My commission expires: November 19, 2007 .  Acting in Wayne County, Michigan.

Attorney Office: Orlans Associates P.C.
Attorney File# 191.1223
Notice ID# 358831

Description: Wayne,MI Document-Book.Page 46037.988 Page: 2 of 5
Order: ase Comment:

**NON-MILITARY AFFIDAVIT**
State of Michigan
    ss.
County of Oakland

The undersigned, being first duly sworn, states that upon investigation she/he is informed and believes that none of the persons named in the notice attached to the sheriff's deed of mortgage foreclosure, nor any person upon whom they or any of them were dependent, were in the military service of the United States at the time of sale or for six months prior thereto; nor the present grantee(s).

The undersigned further states that this affidavit is made for the purpose of preserving a record and clearing title by virtue of The Servicemembers Civil Relief Act of 2003, as amended.

_Annette Matthews_

Annette Matthews

Subscribed and sworn to before me this 16th day of February, 2007

_Susan E. Solwold_

Susan E. Solwold, Notary Public
Oakland County Acting in Oakland County, Michigan
My Commission Expires: 08/23/2007

**AFFIDAVIT OF AUCTIONEER and CERTIFICATE OF REDEMPTION PERIOD**
State of Michigan
    ss.
County of Wayne

_Adrienne Sanders_ _____ being first duly sworn, deposes and says that he is a Deputy Sheriff of said Wayne County; that he/she acted as Auctioneer, and made the sale as described in the annexed Deed pursuant to the annexed printed notice; that said sale was opened at 1:00 p.m., local time, on the 21st day of February, 2007, at Jefferson Avenue entrance to the Coleman A. Young Municipal Center in Detroit, that being the place of holding the Circuit Court for Wayne County, and said sale was kept open for the space of one hour; that the highest bid for the lands and tenements therein described was **Ninety Thousand Three Hundred Seventeen & 77/100 Dollars($90,317.77)**; made by Aurora Loan Services, LLC, that said sale was in all respects open and fair; and that he/she did strike off and sell said lands and tenements to said bidders, which purchased the said lands and tenements fairly, and in good faith, as deponent verily believes.

I DO HEREBY CERTIFY that the within Sheriff's Deed will become operative at the expiration of the redemption period, August 21, 2007, unless said date falls on a weekend, at which point the redeeming party or anyone claiming under him, will have until 5:00pm the following Monday to perfect their redemption; OR the property is determined abandoned pursuant to MCLA 600.3241a, in which case the redemption period will be 30 days from the date of sale, OR should the Sheriff's Deed not be recorded within 20 days from the date of the foreclosure sale, in which case the redemption period will be 6 months from the date of recording. The foreclosing mortgagee can rescind the sale in the event a 3rd party buys the property and there is a simultaneous resolution with the borrower.

_Adrienne Sanders_
            Adrienne Sanders
            Deputy Sheriff
Wayne County, Michigan

Subscribed and sworn to before me this 21st day of February, 2007.

_____ Notary Public  Yolanda Diaz
Wayne County, Michigan      Notary Public, State of Michigan
My commission expires:          County of Wayne
                    My commission expires 8/20/2013
Drafted by and when recorded return to:
**Susan C. Myers**
**Orlans Associates, P.C.**
**P.O. Box 5041**
**Troy, MI 48007-5041**
**(248) 457-1000    File No: 191.1223**

**ATTN REGISTER OF DEEDS:** Please send all Redemption notifications and funds collected in your office to Orlans Associates, P.C., P.O. Box 5041, Troy, MI 48007-5041.

**ATTN PURCHASERS:** This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest. Please be advised that all 3rd party bidders are responsible for preparing and recording the Sheriff's Deed. ORLANS ASSOCIATES, P.C. Hereby expressly disclaims all liability relating to the foreclosure, preparation and recording of the Sheriff's Deed.

07:408

ORIGINAL!

L 46037 - P 991

## AFFIDAVIT DECLARING REDEMPTION DESIGNEE

STATE OF MICHIGAN)
                            ss)
COUNTY OF OAKLAND)

Susan C. Myers, being first duly sworn, deposes and says:

1.   That she is the duly authorized attorney for Aurora Loan Services, LLC and is familiar with the facts set forth herein.

2.   This affidavit is being filed to declare the redemption amount in relation to the property located in the City of Detroit, County of Wayne further described as:

**The North 20 feet of Lot 902, and the South 20.01 feet of Lot 901, including the adjoining one-half vacated alley at the rear thereof, Warrendale Parkside Subdivision No. 3, as Recorded in Liber 57, Page 67 of Plats, Wayne County Records.**

Commonly Known as: 9359 Fielding     Tax ID #: 1022103350

3.   On or about July 18, 2005 a mortgage was executed between Djuan May, a Married Man to American Home Mortgage Acceptance, Inc. for $84,800 on July 18, 2005, recorded November 4, 2005 in Liber 43790, Page 1488, Wayne County Records.
4.   Said mortgage is currently held by Aurora Loan Services, LLC.
5.   Said mortgage is scheduled for foreclosure on the 21st day of February, 2007 for, $90,317.77.
6.   Redemption must include $90,317.77, plus interest at the rate of 7.75% from February 21st, 2007; at a per diem amount of $19.18; plus additional expenses for Taxes; Redemption of Senior Liens; Condominium Assessments; Homeowner Assessments; Community Association Assessments; or Premiums for Insurance Policies and Redemption Servicing Fee.  **An authorized computation of the above can be received only from the designee listed below.**
7.   The Redemption Servicing Fee, as allowed by Michigan Statue is $200.00, plus recording costs.  The servicing fee is payable to Orlans Associates, P.C. and will be added to the redemption amount.

TO ORDER A REDEMPTION COMPUTATION CALL:
ORLANS ASSOCIATES, P.C., REDEMPTION DEPARTMENT
P.O. Box 5041
Troy, MI 48007-5401
248-457-1000 x 291

8.   Aurora Loan Services, LLC hereby appoints Orlans Associates, P.C. as its designee and pursuant to MCLA 600.3240 declares that a computation of the amount to redeem done by any other than Orlans Associates, P.C. is subject to the designee's audit of said computation and such redemption funds are subject to rejection.

9.   A written, official computation of the redemption amount will be prepared by Orlans Associates, P.C., within a reasonable period of time for any and all who request such a computation.

10.  Any redemption made without a written, current, computation provided by Orlans Associates, P.C. will be subject to audit and potential subsequent rejection of said funds.

11.  Attention: REGISTER OF DEEDS; DO NOT accept redemption funds without a written, current redemption computation from Orlans Associates, P.C. Acceptance of funds without an Orlans Associates, P.C. computation will subject that redemption to an audit and potential subsequent rejection of the redemption funds.

12. The within Sheriff's Deed will become operative at the expiration of the redemption period, August 21, 2007, unless said date falls on a weekend, at which point the redeeming party or anyone claiming under him, will have until 5:00pm the following Monday to perfect their redemption; OR the property is determined abandoned pursuant to MCLA 600.3241a, in which case the redemption period will be 30 days from the date of sale, OR should the Sheriff's Deed not be recorded within 20 days from the date of the foreclosure sale, in which case the redemption period will be 6 months from the date of recording.

Further affiant sayeth not.

Susan C. Myers
Attorney for Aurora Loan Services, LLC
Subscribed and sworn to before me this 16th day of February, 2007, by Susan C. Myers

Susan E. Solwold, Notary Public
Oakland County Acting in Oakland County, Michigan
My Commission Expires:  08/23/2007

Drafted by and when recorded return to:          Date Dated: 02/16/07
Susan C. Myers
Orlans Associates, P.C.
P.O. Box 5041
Troy, Michigan 48007-5401
(248) 457-1000      File Number:  191.1223

**AFFIDAVIT OF POSTING**

State of Michigan
County of Oakland

Chris Cook, being duly sworn, states that on the __Y__ day of __Feb__, 2007, he (re)inspected the premises located at 9359 Fielding, Detroit, MI 48228 and that after inspecting the premises and finding same to be vacant he posted this notice by attaching same in a secure manner to the front door.

_____
Chris Cook, Process Server

Acknowledged, subscribed and sworn before me,
a notary public for the said county, this __16__ day
of __February__, 2007.

_____
Notary Public

Oakland County, Michigan
My Commission expires: _____

PATRINA R ANTHONY
Notary Public - Michigan
Oakland County
My Commission Expires Mar 17, 2008

Drafted by and when recorded return to:
Susan C. Myers, Attorney at Law
Orlans Associates P.C.
P.O. Box 5041
Troy, MI 48007
248-457-1000
Orlans File Number: 191.1223
File Name: Djuan May

2007 FEB 28  AM 9: 25

BERNARD J. YUNGBLUT
REGISTER OF DEEDS
WAYNE COUNTY, MI

**AFFIDAVIT OF ABANDONMENT**
**PURSUANT TO M.C.L.A 600.3241a**

STATE OF MICHIGAN
COUNTY OF OAKLAND

Susan C. Myers, does hereby swear and affirm the following:

1. That she is an attorney on behalf of Aurora Loan Services, LLC.
2. That she is personally aware of the facts recited below.
3. That a mortgage was given by Djuan May, a Married Man  to American Home Mortgage Acceptance, Inc., and recorded in Liber 43790, Page 1488 of Wayne County Records.
4. Said mortgage is in default and a foreclosure sale is imminent.
5. The Subject property is situated in the City of Detroit, County of Wayne, State of Michigan, described as follows:
   The North 20 feet of Lot 902, and the South 20.01 feet of Lot 901, including the adjoining one-half vacated alley at the rear thereof, Warrendale Parkside Subdivision No. 3, as Recorded in Liber 57, Page 67 of Plats, Wayne County Records.
   Tax #1022103350
   Commonly known as: 9359 Fielding
6. On January 19, 2007, the mortgaged premises were inspected and the inspection did not reveal that the mortgagor or any persons claiming under the mortgagor were presently occupying or intending to occupy the premises.
7. A notice was posted on the subject property noting the mortgagee considers the property abandoned and the foreclosure is being completed pursuant to MCLA 600.3241a.
8. Unless the mortgagor, the mortgagee's heirs, or a person lawfully claiming under one of them gives notice, within 15 days of receipt of the notice provided by first class mail to the mortgagee, stating that the property is not abandoned than the mortgagor will lose all rights of ownership 30 days after the foreclosure sale.

   Notices shall be sent to the following address:
   Orlans Associates P.C.
   P.O. Box 5041
   Troy, MI 48007

9. This affidavit is being recorded subsequent to the expiration of the 15 day notice provision (that parties of interest have to declare the subject property is NOT abandoned), therefore the property is presumed abandoned in accordance with the aforementioned statue (MCLA 600.3241a).

   On February 1, 2007, a copy of this notice was mailed by certified mail, return receipt requested, to the mortgagor's last known address.

   Susan C. Myers, Attorney for Aurora Loan Services,
   LLC

   On this 1st day of February, 2007, before me personally appeared Susan C. Myers, attorney for Aurora Loan Services, LLC known to be the person described herein, and who executed the foregoing Affidavit of Abandonment and who acknowledges that she voluntarily executed same.

Susan E. Solwold, Notary Public
Oakland County Acting in Oakland County,
Michigan
My Commission Expires: 8/23/2007

Date Dated: February 1, 2007
Drafted by and when recorded return to:
Susan C. Myers, Attorney at Law
Orlans Associates P.C.
P.O. Box 5041
Troy, MI 48007
248-457-1000    File Number 191.1223
File Name: Djuan May

| A. | | B. TYPE OF LOAN: | | |
|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | | 1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ JNV. INS. | | |
| SETTLEMENT STATEMENT | | 6. FILE NUMBER: LRT05-0341 | 7. LOAN NUMBER: 0000904141 | |
| | | 8. MORTGAGE INS CASE NUMBER: | | |

C. NOTE:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.
Items marked *[POC]* were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0   3/98   (LRT05-0341/LRT05-0341/23)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Djuan May 5674 Willow Creek Canton, MI 48187 | Venture Investment Corporation 1044 Williamson Circle Pontiac, MI 48340 | American Home Mortgage Acceptance, Inc 520 Broadhollow Raod Melville, NY 11747 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 9359 Fielding Detroit, MI 48228 Wayne County, Michigan | Lamont-Rhodes Title Agency  PLACE OF SETTLEMENT  1386 E Jefferson Avenue  Detroit, Michigan  48207 | July 18, 2005 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 106,000.00 | 401. Contract Sales Price | 106,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 2,082.96 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes   07/18/05 to 07/01/06 | 2,450.61 | 406. City/Town Taxes   07/18/05 to 07/01/06 | 2,450.61 |
| 107. County Taxes   07/18/05 to 12/01/05 | 178.97 | 407. County Taxes   07/18/05 to 12/01/05 | 178.97 |
| 108. Assessments   to | | 408. Assessments   to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 110,712.56 | **420. GROSS AMOUNT DUE TO SELLER** | 108,629.58 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 84,800.00 | 502. Settlement Charges to Seller (Line 1400) | 4,194.52 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Proceeds Towards 2nd Mortgage | 9,612.38 | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Sellers Concession | 1,827.40 | 509. Sellers Concession | 1,827.40 |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes   to | | 510. City/Town Taxes   to | |
| 211. County Taxes   to | | 511. County Taxes   to | |
| 212. Assessments   to | | 512. Assessments   to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 96,239.78 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 6,021.92 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 110,712.56 | 601. Gross Amount Due To Seller (Line 420) | 108,629.58 |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 96,239.78 ) | 602. Less Reductions Due Seller (Line 520) | ( 6,021.92 ) |
| **303. CASH ( X FROM ) ( TO ) BORROWER** | 14,472.78 | **603. CASH ( X TO ) ( FROM ) SELLER** | 102,607.66 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND
ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY
THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Borrower _____        Seller   Venture Investment Corporation
Djuan May                                        BY: _____
                                                 President or Vice President
                                          ATTEST: _____
                                                 Secretary/Treasurer

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE
FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS
TRANSACTION.
_____
Lamont-Rhodes Title Agency
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON
CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>**JUDICIAL DISTRICT**<br>3rd    **JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS AND COMPLAINT** | **CASE NO.**<br>07-      -CH |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| CAYMC, Two Woodward Avenue, Detroit, MI 48226-3413 | (313) 224-5510 |

| Plaintiff name(s), address(es), and telephone no(s). | | Defendant name(s), address(es), and telephone no(s). |
|---|---|---|
| Argent Loan Services, L.L.C., a foreign limited liability company | v | American Home Mortgage Corp. of New York d/b/a American Broker Conduit, a foreign corporation<br>Resident Agent: CSC-Lawyers Incorporating Service<br>601 Abbott Road<br>East Lansing, MI 48823 |

| Plaintiff attorney, bar no., address, and telephone no. |
|---|
| Bruce M. Gorosh (P35455)<br>Lauren D. Honet (P43935)<br>Lefkofsky & Gorosh, P.C.<br>31500 Northwestern Highway, Suite 105<br>Farmington Hills, MI 48334        (248) 855-5508 |

**SUMMONS**    **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires | Court clerk |
|---|---|---|
| | | |

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**    *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains    ☐ is no longer    pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint/
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains    ☐ is no longer    pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Wayne County, MI | Wayne County, MI |

| Place where action arose or business conducted |
|---|
| Detroit, Wayne County, MI |

06/27/2007
_____
Date

Signature of attorney/plaintiff    Lauren D. Honet (P43935)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (6/04)  **SUMMONS AND COMPLAINT**    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)