IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047-CSS |
| HOLDINGS, INC., a Delaware | ) | |
| corporation, et al., | ) | Ref. Docket No. 2395, 2517 and 2888 |
| | ) | |
| Debtors. | ) | Hearing Date: February 14, 2008 at 11:00 a.m. (ET) |
| | ) | Objection Deadline: February 11, 2008 at 4:00 p.m. (ET) |
| | ) | |

**CITIMORTGAGE, INC'S SUPPLEMENTAL OBJECTION AND RESPONSE TO DEBTORS' "LIMITED REPLY AND SUPPLEMENT TO MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 544 AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION OF CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS UPON PAYMENT OF REASONABLE COSTS AND EXPENSES"**

CitiMortgage, Inc. (or, "CMI") submits its supplemental objection and its response to the Debtors' pleading styled "Limited Reply and Supplement to Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363 and 544 Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan Files or (II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of Reasonable Costs and Expenses" [Dkt. No. 2888].[1]

CMI timely objected to the Debtors' proposal to destroy Hard Copy Loan Files or to charge CMI for the return of the loan files it owns. [Dkt. No. 2517]. CMI also moved for relief from the automatic stay to compel American Home Mortgage Corp., American Home Mortgage Servicing, Inc. and certain affiliates (collectively, the "Debtors" or "AHM") to return to CMI all Mortgage Loan Documents relating to the non-deficient Mortgages Debtors sold to CMI pre-petition. [Dkt. No. 2515]. CMI seeks the return, without charge, of all Hard Copy Loan Files and loan documentation relating to the mortgages Debtors sold to CMI pre-petition under the

---

[1] For the purposes of this Response, CMI will use all defined terms as the Debtors define them in the Limited Reply or the Document Destruction/Return Motion.

1693222

Correspondent Loan Purchase Agreement and attached addendums dated August 9, 2001 (the "2001 Correspondent Agreement"), the Correspondent Loan Purchase Agreement and attached addendums dated January 27, 2005 (the "2005 Correspondent Agreement"), the Bulk Purchase Amendment dated July 16, 2003 (the "2003 Amendment") and the CitiMortage Correspondent Manual, last revised on February 8, 2007 (the "CMI Manual") (collectively, the "Correspondent Loan Agreements").[2]

There are 3 overarching reasons why CMI objects to the procedures Debtors propose:

    A.    The Hard Copy Loan Files are CMI's property, and property in which the debtors have no protectable interest.

    B.    Debtors cannot properly charge CMI for the release of its property when, in the legislative history to Section 541(d) of the Bankruptcy Code, Congress twice observed that debtors have the obligation to turn this property over to the purchaser / owner.

    C.    Because the Hard Copy Loan Files are not property of the estate, Section 554 of the Bankruptcy Code and the abandonment procedures for which it provides do not apply.

Tellingly, Debtors admit that, at best, they have only bare legal title to these documents, confirming this is exactly the situation Congress addressed in Section 541(d) of the Bankruptcy Code. See Omnibus Response to Certain Objections to the Sale of Certain Assets and the Assumption and Assignment of Executory Contracts Relating to the Debtors' Loan Servicing Business [Docket No. 1443]; Ltd. Reply & Supp. [Dkt. No. 2888] ¶ 23 .

---

[2]    CMI attached true and correct copies of the Correspondent Loan Agreements and the CMI Manual to its motion for relief from stay [Dkt. No. 2515, Exhs. 1, 2, 3 & 4], but, in the interest of not further burdening the Court with copies, CMI does not attach additional copies to this pleading.

1693222

## STATEMENT OF PERTINENT FACTS

1.  On August 9, 2001 and January 27, 2005, respectively, AHM entered into the 2001 and 2005 Correspondent Agreements with CMI on a servicing-released basis. For each Loan AHM offered for sale under the 2001 and 2005 Correspondent Agreements, AHM agreed to deliver the related Loan documentation in accordance with the CMI Manual. Section 1 of both the 2001 and 2005 Correspondent Agreements specifically stated that, "[a]s of the date CMI purchase[d] each Loan, Correspondent w[ould] (i) transfer to CMI all of its right, title and interest in and to each Loan, including without limitation all documents held or subsequently acquired by Correspondent relating to each Loan and (ii) execute all documents necessary to transfer such right, title and interest to CMI." Moreover, Section D of the 2003 Amendment to the 2001 Correspondent Agreement made AHM's delivery of the Loan documents "mandatory." In the event Debtors were to provide CMI interim servicing of the Loans, the agreements required AHM to transfer the Loans at the Transfer Date defined in the 2003 Amendment.

2.  Section 900 of the CMI Manual set forth the guidelines AHM (as "Correspondent") was to follow when preparing the Loan files to deliver to CMI. Pursuant to the CMI Manual, AHM was to submit certain Loan documentation before CMI purchased the Loan, and all other Loan documentation no later than one hundred and twenty (120) days after CMI purchased each Loan.

3.  As the CMI Manual explained, the "timely receipt of post purchase documentation [was] critical to minimizing [CMI's] expenses as well as meeting [its] final pool certification deadlines." It was CMI's policy, in its discretion, to require AHM immediately to repurchase all defective Loans at the Repurchase Price CMI specified if and when AHM failed to

provide all of the documentation CMI required "and/or fail[ed] to satisfy all other Loan specific or Correspondent Manual document requirements."

4. In addition, the 2001 and 2005 Correspondent Agreements stated that, in the event AHM failed to perform "under the terms, conditions or obligations of th[ese] Agreement[s] or the CMI Manual (including but not limited to Correspondent's failure to timely deliver all documents and records associated with or related to all Loans purchased by CMI pursuant to th[ese] Agreement[s])," AHM must indemnify CMI or, at CMI's discretion, cure or repurchase the defective Loan within ten (10) business days of AHM's receipt of CMI's repurchase request.

5. Notably, none of the Correspondent Loan Agreements required CMI to pay for the delivery of the documentation underlying each purchased Loan. To the contrary, Section 3 of both the 2001 and 2005 Correspondent Agreements and Section 900 of the CMI Manual stated that AHM, as Correspondent, was to "pay all costs and expenses incurred in connection with the transfer and delivery of Loans to CMI purchased pursuant to th[ese] Agreement[s], including but not limited to mortgage Loan assignment preparation and recording fees, fees for title policy endorsements and continuations, and Correspondent attorneys' fees."

6. On August 6, 2007 (the "Petition Date"), and before AHM delivered all Loan documentation to CMI pursuant to the Correspondent Loan Agreements, Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. This Court is jointly administering these cases as per this Court's August 7, 2007 order. [Docket No. 60].

7. On October 30, 2007, this Court entered its Order authorizing the Debtors' sale of their servicing rights under the servicing-retained loan agreements (which agreements are not the subject of this supplemental objection) in its Order Pursuant to Sections 105, 363, 364, 365, and

1693222

503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief. [Docket No. 1711].

8.  Debtors did not assume the Correspondent Loan Agreements, and thus the Correspondent Loan Agreements were not assigned and/or purchased as part of the sale of their servicing business.

9.  Debtors now assert that their agreement with the document storage facility, ACRC, releases the warehouseman's liens as to them, but not as to any other party that may request the files from ACRC. (Ltd. Reply & Supp. [Dkt. No. 2888] ¶ 14 & n. 3, at 5). That is not, however, what the Court-approved term sheet provides. In this Court's January 30, 2008 Order Approving And Authorizing Term Sheet Between American Home Mortgage and American Corporate Record Center Inc. [Docket No. 2804], the term sheet that this Court approved and attached to its order states: "ACRC shall relinquish, waive and/or release any and all liens (whether statutory or otherwise, including but not limited to any warehouseman's lien) on the records in storage at ACRC's facility . . . ." [id. Exh. A ¶ 3].

### RESPONSE

A.  **The Loan Documents At Issue Are Not Property Of The Debtors' Estate**

10. Because the debtor-intermediary holds, at best, bare legal title to the property and does not acquire equitable title, the property does not become Section 541 "property of the estate."

1693222

11. The well-settled rule is that property in which a debtor holds bare legal title, but not an equitable interest, is not property of the estate. 11 U.S.C § 541(d); see In re Kaiser Aluminum Corp., No. 02-10429(JFK), 2004 WL 97658, at *3 (Bankr. D. Del. Jan. 16, 2004) (excluding from property of estate funds in which debtor held legal interest, but no equitable interest; where agreement with third party showed third party's superior interest in the funds); In re Edison Bros., 243 B.R. 231, 235 (Bankr. D. Del. 2000) ("[C]ourts have concluded that property which a debtor holds in trust (express or constructive) for another does not become property of the estate when the debtor files for bankruptcy."); see also Begier v. IRS, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' "); United States v. Whiting Pools, Inc., 462 U.S. 198, 204 n.8 (1983) (bankruptcy estate does not include "property of others in which the debtor ha[s] some minor interest such as a lien or bare legal title").

12. Debtors assert that they have a "possessory interest" and that their "possessory interest" is property of the estate. (Ltd. Reply & Supp. [Dkt. No. 2888] at 8). That interest is precisely the type of "minor interest" that Whiting Pools directs is not property of the estate. Unfortunately for Debtors, the three cases on which the debtors rely (see id.) do not apply to the mortgage loans and Hard Copy Loan Files' documents that are the subject of the Debtors' motion and CMI's supplemental objection.

13. The first case on which Debtors rely is Hartman v. PMF Rentals (In re Hartman), Civ. 03-337, 2004 U.S. Dist. LEXIS 5691, 18 (W.D. Pa. March 22, 2004), also found at 2004 WL 724470. (Ltd. Reply & Supp. [Dkt. No. 2888] at 8). There, the issue was whether a creditor had violated the automatic stay when it repossessed leased equipment. As it relates to Debtors' assertions, the case merely holds that, under the governing Pennsylvania law, a lessee's holdover

1693222

possession of personal property after the prepetition termination of the lease was a possessory interest that the automatic stay would protect. 2004 WL 724470 at *6. Demonstrating the fact that this case has no bearing on the issues this Court must address, that court noted:

> Under Pennsylvania law, the possessory interest of the lessee is not terminated until the lessor actually recovers possession. Therefore, the Debtors still had available to them the option of paying the delinquent rental and continuing in possession of the leased property. Debtors also had the option under their Chapter 13 bankruptcy proceeding of paying the delinquent rental under their Plan and paying their current rental either under the Plan or as a cost of doing business.

Id. There are no such options and no analogous options that these Debtors have in these liquidating Chapter 11 proceedings.

14. The second case on which Debtors rely is In re Whitt, 79 B.R. 611, 615 (Bankr. E.D. Pa. 1987). (Ltd. Reply & Supp. [Dkt. No. 2888] at 8). In a low-income housing tenant's long-running dispute with the housing authority, that case also looked to whether there had been a violation of the automatic stay, but in the context of the landlord's eviction proceeding. There, the court again looked to Pennsylvania for the governing law. The court held the landlord would need to move for relief from stay based on its finding that: "The Debtor's tenancy or even her bare possessory interest in her residence is a 'legal or equitable interest' which is clearly 'property of the estate' by the terms of 11 U.S.C. § 541(a). 79 B.R. at 615.

15. The third and final case on which Debtors rely is Di Giorgio v. Lee (In re Di Giorgio), 200 B.R. 664, 673 (C.D. Cal. 1996), vacated on other grounds, 134 F.3d 971 (9th Cir. 1998). (Ltd. Reply & Supp. [Dkt. No. 2888] at 8). In this case, the court addressed, and found the Bankruptcy Code preempted, a California statute that allowed a landlord to execute on a prepetition judgment awarding it possession of its leasehold notwithstanding a post-judgment

1693222

bankruptcy filing. As it might pertain to Debtors' motion, the court merely held that, under California law, even possession of real property was a protected interest under Section 541(a)(1). Id. at 671.[3] The court further noted that a "possessory interest" did not warrant a denial of a request for relief from the automatic stay. Id. at 673-74.

16. Not one of these cases addresses – or even mentions – the property for which 11 U.S.C. § 541(d) specifically provides. Simply put, these three cases do not apply to these mortgage loan documents and do not apply to the facts of this case. Furthermore, the Hartman and Whitt cases are based on Pennsylvania law, and, at best, stand only for the proposition that a creditor must seek bankruptcy court permission before divesting a debtor of a possessory interest – precisely the step CMI has taken here in moving for relief from stay [Dkt. No. 2515]. And, because Di Giorgio was limited to a debtor's interest in residential real property under California law, it has no bearing on the issues before this Court.

**B. Section 541(d) Of The Bankruptcy Code Requires Debtors To Turn The Mortgage Loan Documents Over To CMI**

17. In discussing the revisions to Section 541(d), Congress stated:

> The seller of mortgages in the secondary mortgage market will often retain the original mortgage notes and related documents and the seller will not endorse the notes to reflect the sale to the purchaser. Similarly, the purchaser will often not record the purchaser's ownership of the mortgages or interests in mortgages under state recording statutes. These facts are irrelevant and <u>the seller's retention of the mortgage documents and the purchaser's decision not to record do not change the trustee's obligation to turn the mortgages or interests in mortgages over to the purchaser</u>. The application of section 541(d) to secondary mortgage market transactions will not be affected by the terms of

---

[3] And, that court narrowly limited its ruling to apply only to possessory interests in residential real property. 200 B.R. at 672. And, further demonstrating that this decision does not apply, that court placed great weight on the facts that Congress had twice declined to amend the Bankruptcy Code to exclude from property of the bankruptcy estate "any interest of the debtor as a tenant under the rental of residential real property that has terminated before the commencement of the case." Id. at 672-73.

> the servicing agreement between the mortgage servicer and the purchaser of the mortgages. <u>Under section 541(d), the trustee is required to recognize the purchaser's title to the mortgages or interests in mortgages and to turn this property over to the purchaser.</u> It makes no difference whether the servicer and the purchaser characterize their relationship as one of trust, agency, or independent contractor.

House Report No. 95-595 H.R. Rep. 95-595, *549, 1978 U.S.C.C.A.N. 5963,**6524 - 6525 (1977) (emphasis added).

18. Thus, regardless of whether Debtors attempt to characterize their involvement with CMI as a relationship of trust, agency or independent contractor, the bare legal title they claim does not affect their obligation to turn the documents over to CMI.

C. **The Abandonment Remedy Debtors Seek To Exercise Exists Only For Property Of The Estate, And Does Not Permit The Debtors To Shift The Expenses Of Their Decision To Abandon To The Owners Of The Loans**

19. Section 554(a) specifically limits the debtors' abandonment remedy to "property of the estate." 11 U.S.C. § 554(a).

20. Debtors have not cited any authority that would permit them to condition their proposed abandonment of this property on compelling the undisputed owner to first pay their costs of abandoning this property. In fact, when Congress intended to allow the estate to recover the expenses of disposing of property, Congress specifically knew how to use and did use clear and unambiguous language to that effect. See 11 U.S.C. § 506(c); <u>In re American Pad & Paper Co.</u>, 478 F.3d 546, 552 (2d Cir. 2007) (Congress' explicit mention of one thing in a statute implies its intent to exclude similar things that were not specifically mentioned) (citing <u>U.S. v. Landmesser</u>, 378 F.3d 308, 313 n.8 (3d Cir.2004); <u>see generally</u> <u>U.S. v. Polanco</u>, 451 F.3d 308, 310 (3d Cir. 2006) ("*[i]nclusio unius est exclusio alterius* is a key canon in our interpretive arsenal"). That language – or anything similar – is conspicuously absent from Section 544.

1693222

21. In attempting to cobble together some plausible explanation as to why they can charge owners for the return of their property, Debtors now assert that their agreement with the document storage facility, ACRC, releases the warehouseman's liens as to them, but not as to any other party that may request the files from ACRC. (Ltd. Reply & Supp. [Dkt. No. 2888] ¶ 14 & n. 3, at 5). That is not what the Court-approved term sheet provides. In this Court's January 30, 2008 Order Approving And Authorizing Term Sheet Between American Home Mortgage and American Corporate Record Center Inc. [Docket No. 2804], the term sheet that this Court approved and attached to its order states: "ACRC shall relinquish, waive and/or release any and all liens (whether statutory or otherwise, including but not limited to any warehouseman's lien) on the records in storage at ACRC's facility ...." [Id. Exh. A ¶ 3]. ACRC's release is not constrained as Debtors now argue.

WHEREFORE, for all of these reasons, CMI asks that this Court deny the debtors' motion and not allow them to surcharge CMI for the return of the Hard Copy Loan Files that are indisputably its property.

Dated: February 11, 2008

**MORRIS JAMES LLP**

Brett D. Fallon (DE Bar No. 2480)
Ericka F. Johnson (DE Bar No. 5024)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: 302-888-6888
Facsimile: 302-571-1750
Email: bfallon@morrisjames.com
        ejohnson@morrisjames.com

-and-

1693222

- 11 -

        Andrew J. Petrie (admitted *pro hac vice*)
        FEATHERSTONE PETRIE DESISTO LLP
        600 Seventeenth Street, Suite 2400-S
        Denver, Colorado 80202-5424
        Telephone: 303-626-7100
        Facsimile: 303-626-7101
        Email: apetrie@featherstonelaw.com

        *Attorneys for CitiMortgage, Inc.*