IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : Case No. 07-11047 (CSS) |
| American Home Mortgage Holdings, Inc., a Delaware Corporation, et al.,[1] | : Jointly Administered |
| | : Hearing Date: February 14, 2008 at 11 a.m. (ET) |
| Debtors. | : Objection Deadline: February 11, 2008 at 4 p.m. (ET) |
| | : Related to Docket No. 2888 |

**OBJECTION OF WELLS FARGO FUNDING, INC. TO DEBTORS' LIMITED REPLY AND SUPPLEMENT TO MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554 AUTHORIZING THE (I) ABANDONMENT AND DESTRUCTION OF CERTAIN DUPLICATE MORTGAGE LOAN FILES OR (II) RETURN OF MORTGAGE LOAN FILES TO THE OWNER OF SUCH LOANS UPON PAYMENT OF REASONABLE COSTS AND EXPENSES**

Wells Fargo Funding, Inc. ("Wells Fargo Funding") hereby files this supplemental objection (the "Supplemental Objection") to the limited reply and supplement of the above-captioned debtors and debtors-in-possession (the "Debtors") to the motion seeking an order of this Court pursuant to sections 105, 363 and 554 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the (i) abandonment and destruction of certain duplicate mortgage loan files or (ii) return of mortgage loan files to the owner of such loans upon payment of reasonable costs and expenses (the "Supplemental Motion").

### SUMMARY OF OBJECTION

1. By their Supplemental Motion, the Debtors seek authorization to pass through to Wells Fargo Funding and similarly situated institutional investors the costs and burdens of their agreement with ACRC despite the fact that Wells Fargo Funding is not a party to the ACRC

---

[1] The Debtors are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp. (3914); American Home Mortgage Acceptance, Inc. (1979); American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp. (1558); American Home Mortgage Ventures LLC (1407); Homegate Settlement Services, Inc. (7491); and Great Oak Abstract Corp. (8580). The address for Debtors is 538 Broadhollow Road, Melville, New York 11747, except for American Home Mortgage Servicing, Inc., whose address if 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

agreement and irrespective of the Debtors' obligations to turnover the Wells Fargo Files pursuant to the terms of the Agreements.

2. In addition, the Debtors' Supplemental Motion proposes a process fraught with uncertainty and which places all of the risk of loss with Wells Fargo Funding. Indeed, the Debtors' proposal fails to establish any definitive timeframe for the turnover of the mortgage loan files stored at the ACRC facility, and subjects institutional investors such as Wells Fargo Funding to potentially material increases in the costs and expenses related to the turnover process. Further adding to these deficiencies, the Debtors' proposal provides neither the Debtors nor ACRC with any incentive to turnover the loan files in a timely or cost effective manner. For these reasons, the Debtors' proposal should only be approved on the limited terms set forth in greater detail below.

**PROCEDURAL BACKGROUND**

3. On December 14, 2007, the Debtors filed the Motion for an Order Pursuant to 11 U.S.C. § 105, 363 and 554 Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan Files or (II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of Reasonable Costs and Expenses [Docket No. 2395] (the "Motion").

4. On December 27, 2007, Wells Fargo Funding responded to the Motion filing the Objection of Wells Fargo Funding, Inc. to the Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105, 363 and 554 Authorizing the (I) Abandonment and Destruction of Certain Duplicate Mortgage Loan Files or (II) Return of Mortgage Loan Files to the Owner of Such Loans Upon Payment of Reasonable Costs and Expenses [Docket No. 2506] (the "Objection").

5.    On February 5, 2008, the Debtors filed the Supplemental Motion [Docket No. 2888].

6.    Wells Fargo Funding incorporates herein the factual allegations and legal arguments set forth in the Objection.

**OBJECTION**

7.    In the Supplemental Motion, the Debtors propose that institutional investors, whose documents are stored at the ACRC facility and who want their loan files returned, must submit a declaration setting forth certain information relating to the specific loan files, including (i) an attestation that the owner of such files agrees to pay the Debtors' reasonable costs and expenses associated with retrieving and sorting the mortgage loan files, and (ii) an acknowledgment that such costs and expenses may increase over time as the costs charged by ACRC increase. See Supplemental Motion at ¶18. To cover their costs and expenses in connection with retrieving and sorting the mortgage loan files, the Debtors propose charging investors $3.50 per "Hard Copy Loan File," a price the Debtors submit is based on ACRC's rate schedule. See Supplemental Motion at ¶29 & Exhibit A to the Supplemental Motion.

8.    Significantly, the Debtors also note that each mortgage loan stored at the ACRC facility may be stored in two or more separate files in the same or separate boxes, and that they intend to charge investors $3.50 for each file that comprises a mortgage loan, rather than $3.50 for a complete mortgage loan file. Thus, Wells Fargo Funding's financial exposure could be significantly greater than $3.50 per mortgage loan. See Supplemental Motion at FN6. Additionally, the pricing structure quoted by the Debtors in the Supplemental Motion is only fixed until June 2008, at which time it is subject to change because ACRC will be entitled to

renegotiate its pricing schedule with the Debtors, and the Debtors are reserving the right to pass any pricing increase through to institutional investors.

9.  In proposing the foregoing procedure, the Debtors go to great lengths to highlight the significant burdens and costs to their estates to locate, retrieve and turn over the files stored at the ACRC facility, including that the ACRC facility is over eighty thousand square feet, the files of the various institutional investors are commingled in storage boxes, and only through use of ACRC's proprietary indexing system can the Debtors navigate through the morass in order to identify and turnover the Wells Fargo Files. See Supplemental Motion at ¶32.

10.  What the Debtors fail to mention, however, is that these burdensome document storage conditions are not only outside of industry norms, but also a predicament entirely of their own making. As an initial matter, the Loan Purchase Agreement expressly forbids the Debtors from transferring the Wells Fargo Files to any third party absent Wells Fargo Funding's consent. See Zip Fund Amendment at ¶5. Wells Fargo Funding never consented to having the Wells Fargo Files stored at the ACRC facility, despite the Debtors' representation in the Supplemental Motion that mortgage loan files were sent to the ACRC facility at the request of institutional investors.[2] See Supplemental Motion at ¶7. Moreover, sections 10 and 11 of the Zip Fund Amendment provide for the turnover of the Wells Fargo Files to Wells Fargo Funding upon request and neither section contemplates that Wells Fargo Funding must reimburse the costs and expenses incurred by the Debtors in connection therewith.[3]  See Zip Fund Amendment §§ 10 & 11. It is inequitable for the Debtors, after having placed the Wells Fargo Files in the hands of a

---

[2]  In fact, Wells Fargo Funding was unaware that the Wells Fargo Files were being stored at the ACRC facility until approximately one week prior to the Petition Date.
[3]  Indeed, over the course of the parties' business relationship, Wells Fargo Funding has on many occasions requested loan files from the Debtors pursuant to the Loan Purchase Agreement and the Debtors have never previously charged Wells Fargo Funding the costs and expenses associated with these requests.

third party vendor in violation of the Loan Purchase Agreement, to now ask that this Court to conclude that Wells Fargo Funding should bear the financial consequences of the Debtors' course of conduct without having any meaningful input into the process.

11.    Wells Fargo Funding further objects to the Debtors' characterization of Wells Fargo Funding's claim for turnover of the Wells Fargo Files as "nothing more than alleged damages for a pre-petition breach of contract claim." See Supplemental Motion at ¶33.  In so arguing, the Debtors cite a series of cases that stand for the uncontroversial proposition that "[a]n equitable remedy will give rise to a right of payment, and therefore be deemed a 'claim,' when the payment of monetary damages is an alternative to the equitable remedy."  See Ben Franklin Hotel Assoc., 186 F.3d 301, 305 (3d Cir. 1998); Ohio v. Kovacs, 469 U.S. 274, 282-83 (1985). It is well settled, however, that money damages are not an adequate alternative to the remedy of specific performance of a contractual obligation when the contractual obligation involves a unique asset.  See Ben Franklin Hotel Assoc., 186 F.3d at 306 (holding that money damages were not a viable remedy to the loss of a partnership asset, which was a "unique business opportunity for its owners."); Sheerin v. Davis (In re Davis), 3 F.3d 113, 116 (5th Cir. 1993) (holding that judgment awarding equitable remedies in connection with dispute over ownership of real property could not be discharged in bankruptcy because the equitable remedies could not be reduced to money).  It is equally well settled under Minnesota law, which governs the Agreements, that money damages are not an adequate alternative to specific performance of an obligation to turnover unique personal property.  See Allan Block Corp. v. E. Dillon & Co., 509 F. Supp. 2d 795, 812 (D. Minn. 2007) (requiring defendant to turn over patented molds and technology because monetary award was inadequate); Blankenfeld v. Smith, 290 Minn. 475,

477, 188 N.W.2d 872, 873 (Minn. 1971) (specifically enforcing the sale of corporate stock where "[t]here was no evidence introduced that the stock was available other than from defendant").

12. It is without question that the Wells Fargo Files, which were created specifically in connection with the origination of mortgage loans that contain sensitive financial and personal information are unique personal property which cannot be replaced by an award of money damages. Consequently, Wells Fargo Funding's right to specific performance of the Debtors' turnover obligations pursuant to the terms of the Agreements cannot be reduced to mere "damages for a pre-petition breach of contract claim."

13. Wells Fargo Funding also objects to the process contemplated by the Debtors in the Motion and Supplemental Motion for turning over the Wells Fargo Files. Of course Wells Fargo Funding supports the Debtors' stated desire to turnover the Wells Fargo Files and is sensitive to the practical considerations relative to that process. Nevertheless, Wells Fargo Funding submits that the process must provide greater certainty than that currently proposed by the Debtors in the Motion and the Supplemental Motion.

14. The most glaring omission in the Debtors' proposal is the lack of a committed time frame for the turnover of the Wells Fargo Files. Wells Fargo Funding has patiently and in good faith worked with the Debtors from the inception of these cases to recover the Wells Fargo Files, only to be consistently frustrated by a lack of resolution. And now over five months into this case, as Wells Fargo Funding faces the very real prospect of being unable to sell pools of mortgage loans due to the lack of supporting loan files, the Debtors propose an open-ended process where the principle actors – the Debtors and ACRC – have no economic or other incentive to complete the turnover in a timely manner.

15.     Equally problematic is the lack of a fixed pricing structure. The Debtors' quoted price per "file" is fixed only through June 2008, at which time the cost to have the Wells Fargo Files returned may rise substantially based on pricing negotiations to which Wells Fargo Funding will not be a party and in which the Debtors have little incentive to bargain aggressively because any increased costs will be simply passed through. Upon information and belief, the Debtors are heavily reliant on ACRC's cooperation to complete the turnover process. Moreover, upon information and belief, the Debtors are ACRC's most significant source of income. Thus, ACRC has every economic incentive to slow the process, while the Debtors, who are passing the burden along to their creditors, have little incentive to speed the process.

16.     Additionally, the Debtors contemplate charging investors $3.50 for each component of a mortgage loan file stored separately at the ACRC facility. Consequently, a complete mortgage loan file may cost an investor $7 or more, greatly increasing the financial burden for an investor such as Wells Fargo Funding, who has files stored at the ACRC facility for approximately 185,000 mortgage loans. Depending on the number of component parts comprising a particular mortgage loans file, the cost to Wells Fargo Funding may range anywhere from $647,500 at the low end to $1.3 million or more.

17.     Moreover, there is little explanation in the Supplemental Motion regarding how the Debtors determined that $3.50 per loan file component was a fair and reasonable estimate of their costs for retrieving and sorting the loan files.[4] Based on the Debtors' proposed pricing structure, it is very possible that Wells Fargo Funding alone could shoulder almost a quarter of

---

[4] Wells Fargo Funding further submits that the purchase price it paid for the mortgage loans purchased from the Debtors pursuant to the Loan Purchase Agreement included the costs associated with the Debtors' interim servicing and document retention obligations. Consequently, by seeking to recover the costs and expenses associated with turning over the Wells Fargo Files, the Debtors may potentially receive a double recovery with respect to these costs and expenses.

the total cost of retrieving all of the loan files stored at the ACRC facility – which the Debtors have stated would cost approximately $5.25 million – although it owns only approximately ten percent of all of the loan files stored in that facility. See Supplemental Motion at ¶33.

18.    Wells Fargo Funding supports having its property returned to it, as contemplated in the Motion and the Supplemental Motion. Nevertheless, Wells Fargo Funding respectfully requests that the Court impose some reasonable limitations on time and cost that would provide a degree of certainty to affected parties, such as Wells Fargo Funding. Wells Fargo Funding also believes that reasonable limitations on time and cost will incentivize all parties involved to complete the turnover process in a time effective manner. Absent such limitations, Wells Fargo Funding respectfully submits that the relief requested in the Motion and the Supplemental Motion is inappropriate and respectfully requests that such Motions be denied.

## **CONCLUSION**

Based on the foregoing, Wells Fargo Funding respectfully requests the Court limit any relief granted to the Debtors in connection with the Motion or the Supplemental Motion in the manner as proposed herein and in the Objection.

Dated: February 11, 2008

_____
Karen C. Bifferato (No. 3279)
Marc J. Phillips (No. 4445)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-0380

-and-

Paul S. Caruso
David A. Hall
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Attorneys for Wells Fargo Funding, Inc.

#591597v1