# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GLORIA T. KIRK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:06-cv-2603 V |
| | ) |
| AMERICAN HOME MORTGAGE CORP., | ) JURY DEMANDED |
| ALAN B. HORN, Individually and as an Officer of | ) |
| AMERICAN HOME MORTGAGE CORP.; and | ) |
| JOHN MANGLARDI, Individually and as an | ) |
| Officer of AMERICAN HOME MORTGAGE CORP., | ) |
| | ) |
| Defendants, | ) |
| | ) |

## FIRST AMENDED COMPLAINT

Plaintiff, Gloria T. Kirk, files this First Amended Complaint against and sues the Defendant, American Home Mortgage Corp., Alan B. Horn, individually and as an officer of American Home Mortgage Corp., and John Manglardi, individually and as an officer of American Home Mortgage Corp., and for her causes of action state to this Court as follows:

1. Plaintiff, Gloria T. Kirk, ("Plaintiff or "Ms. Kirk") is an adult resident and citizen of Shelby County, Tennessee.

2. Defendant, American Home Mortgage Corp., ("Defendant" or "American Home Mortgage") is a New York corporation, is a wholly owned subsidiary of American Home Investment Corporation a publicly owned corporation whose shares of stock are publicly traded, at all pertinent times hereinafter was authorized to and was and doing

Page 1 of 14

residential mortgage lending business in the State of Tennessee as a registrant or licensee as approved by the Commissioner of the Department of Financial Institutions, has its principal place of business in Melville, New York, and had a local branch office in Memphis, Tennessee at 3242 Players Club Circle, Memphis, Tennessee 38125 ("Memphis Office").

3. Defendant, Alan B. Horn, was at all times pertinent hereinafter an officer of American Home Mortgage and is one of two individuals who made the decision to terminate the employment of Ms. Kirk as the Branch Manager of the Memphis Office of American Home Mortgage. On information and belief, Defendant, Alan B. Horn is a resident of the State of New York and does not regularly conduct business in the State of Tennessee.

4. Defendant, John Manglardi, was at all times hereinafter an officer of American Home Mortgage and is one of two individuals who made the decision to terminate the employment of Ms. Kirk as the Branch Manager of the Memphis Office of American Home Mortgage. On information and belief, John Manglardi is a resident of the State of Illinois and does not regularly conduct business in the State of Tennessee.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy is greater than $75,000.00, exclusive of interest and costs. Venue is appropriate in this district since the wrongful conduct of American Home Mortgage and the effect of the discharge decision by Alan B. Horn and John Manglardi caused damage to Ms. Kirk in Shelby County, Tennessee.

6. On or about December 31, 2004, Ms. Kirk, who had considerable experience in the residential mortgage lending business based on her many years of work

in the business, was offered employment by American Home Mortgage as the Branch Manager of its Memphis Office.

7. Pursuant to Tenn. Code Ann. § 45-13-102(1), as the Branch Manager, Ms. Kirk was the individual who was in charge of and responsible for the business operations of American Home Mortgage at its Memphis Office.

8. Prior to December 8, 2005, American Home Mortgage never advised the Plaintiff what she was to do as the Branch Manager if an examiner or auditor from the Tennessee Department of Financial Institutions ("TDFI") appeared unannounced at the Memphis office of American Home Mortgage and requested at that time to audit or examine the books, records, accounts, or files. Plaintiff had the general understanding from her years in the mortgage origination loan business that she should probably report it to her superior or the home office of the company.

9. On December 8, 2005, at approximately 9:04 am Ms. Kirk received a telephone call from Melissa at Southwind Executive Suites, where the Memphis Office was located, informing her that auditors from the TDFI were in the office to see her and to conduct an audit or examination of the company.

10. On December 8, 2005 at approximately 9:07 am Ms. Kirk telephoned Mike Kuehl, a mortgage loan originator in the Memphis Office, to discuss the matter with him. The substance of the telephone conversation concerned the fact that the auditors were in the office and he should get to the office as soon as possible in case he was needed.

11. On December 8, 2005 at approximately 9:20 am Ms. Kirk telephoned Jimmy Harrison the Branch Manager of the Jackson, Tennessee office of American

Home Mortgage who had been with American Home Mortgage for many years. Mr. Harrison was a person Ms. Kirk would sometimes contact if she had a question about a policy, practice, procedure or what American Home Mortgage would expect her to do in a particular situation. Ms. Kirk informed Mr. Harrison that the auditors or examiners were in the Memphis office to conduct an unscheduled and immediate audit or examination. Ms. Kirk asked Mr. Harrison what she should do in this situation. Mr. Harrison stated that she had to let the auditors or examiners in the office and Ms. Kirk said she knew that was the case. Mr. Harrison asked Ms. Kirk if she had anything to hide and she said informed him that she did not. Ms. Kirk asked who she should contact about the fact that the auditors were in the office to conduct the examination. Mr. Harrison said at first he did not know who she should contact but after thinking about the matter and continuing the discussion with Ms. Kirk he got on his computer and found the name of John Kalas and Jim Palumbo who handled legal compliance matters for American Home Mortgage Corp. Mr. Harrison told Ms. Kirk to call 516-495-7037 and ask for John Kalas.

12.   On December 8, 2005 at 10:21 am Plaintiff telephoned 516-495-7037 and spoke with a person who identified himself as John Kalas. From her telephone conversation, she understood Mr. Kalis handled legal compliance matters for American Home Mortgage. Ms. Kirk informed Mr. Kalas that the auditors or examiners from the TDFI were in the Memphis office of American Home Mortgage to conduct an audit or examination. Mr. Kalas informed her to allow the auditors to conduct the audit or examination. Ms. Kirk said she would send in the audit or examination results to him. Mr. Kalas said that would be fine. Mr. Kalas did not inform Ms. Kirk that she should contact any other person at American Home Mortgage or politely deny the auditors

access and contact Alan B. Horn. Mr. Kalas did not inform Mr. Horn of this conversation he had with Ms. Kirk.

13. On December 8, 2005 at approximately 10:27 am Ms. Kirk telephoned Jimmy Harrison again and informed him of her discussion with John Kalas. Ms. Kirk thanked him for directing her to John Kalas. They then generally discussed the audit process and what Ms. Kirk should expect.

14. On December 8, 2005 around 10:30 to 10:45 am Ms. Kirk arrived at the Memphis office of American Home Mortgage and introduced herself to the auditors who were in the conference room. As Ms. Kirk recalls she excused herself and telephoned Gregg Murphy's office from her office telephone. Mary Lou Northcut, Gregg Murphy's assistant, answered the telephone and advised her Gregg Murphy and Mike Serkes were in the Cayman Islands on a trip.

15. Ms. Kirk returned to the conference room and allowed the auditors access to the requested files, documents, records and other information.

16. At the completion of the audit on December 8, 2005 or the next day Ms. Kirk emailed or efaxed the results of the audit to the number given to her by the person identified to her as John Kalas. In addition, she made a mailed a copy of the audit or examination results to John Kalas by regular United States mail.

17. Pursuant to Tenn. Code Ann. § 45-13-112, the Commissioner's designated representatives have access to the offices and places of business, books, accounts, papers, records, files, safes and vaults of all licensees and registrants, including American Home Mortgage and expected to have immediate access to the premises and books, accounts,

papers, records, files, safes, and vaults of all licensees and registrants when they appear for an examination.

18. Knowing that the Commissioner's representatives had the statutory right to make unannounced examinations and after first telephoning her supervisor, Gregg Murphy, who was unavailable, as was his supervisor, and after checking her understanding of her obligations to cooperate with the Commissioner's designated representatives with the Branch Manager of the Jackson, Tennessee, office, who confirmed her understanding that she must allow the Commissioner's representatives access to the Memphis Office and after speaking with John Kalas, Ms. Kirk, the person responsible for the business operations of the Memphis Office by law, allowed the Commissioner's representatives access to the place of business and the books, records, accounts, papers, and files of American Home Mortgage located in the Memphis Office.

19. The examination conducted by the Commissioner's representatives concluded that two mortgage loan originators who were actively working for American Home Mortgage did not yet have their registration approved by the Commissioner, contrary to the understanding of Ms. Kirk. All registration forms and applications were handled by representatives in the home office of American Home Mortgage at 520 Broadhollow Road, Melville, New York 11747. Ms. Kirk learned after the examination report was submitted to her that the responsible person(s) at the home office had not taken the necessary action required by the laws of the State of Tennessee to register the two mortgage loan originators.

20. On or about June 28, 2006, Alan B. Horn sent an email to Gregg Murphy which had the subject heading "RE: TN Exam," and which stated as follows:

"Gregg,

The correct protocol is as you stated...if an examiner shows up on site and demands information, or wants to speak to anyone from the company, that examiner is to be denied access politely, and referred to me. Any inquiry from a regulator, whether by phone, mail or in person, should not be responded to by the branch, and needs to be referred to me immediately.

Alan"

21. On or about June 28, 2006, Alan B. Horn and John Manglardi made the decision to terminate the employment of Ms. Kirk as the Branch Manager of the Memphis Office because she violated the policy of American Home Mortgage and allowed the auditors access to the books, records and accounts of American Home Mortgage.

22. On Or about June 28, 2006, John Manglardi directed Gregg Murphy to drive to Memphis and terminate Ms. Kirk's employment as the Branch Manager of American Home Mortgage for violating company policy for allowing the auditors access to the Memphis Office of American Home Mortgage.

23. On or about June 28, 2006, Ms. Kirk's employment with American Home Mortgage was terminated by Gregg Murphy, District Manager for the southeastern area, who, after inviting her to and having dinner with her at a local restaurant and while leaving the restaurant, told her that she had violated company policy by allowing the Commissioner's designated representatives access to the Memphis Office of American Home Mortgage. Mr. Murphy told Ms. Kirk, "You never should have let the auditors in."

24. Ms. Kirk understood that as a Branch Manager by law she could not refuse the Commissioner's designated representative access to the Memphis Office.

25. The State of Tennessee has, by statute, a strong public policy requiring businesses, under the regulation of the Commissioner of the Department of Financial Institutions which are engaged in the residential mortgage lending business, to give immediate access to the Commissioner's designated representatives. By statute the Branch Manager is the individual responsible for assuring that the Commissioner's designated representatives have access to such business and its accounts, records, papers, files and other financial documents to assure compliance with the laws and regulations of the State of Tennessee. The laws and regulations governing the residential mortgage lending business are intended to protect the safety and general welfare of all consumers, mortgagors, and members of the public and to assure such businesses are operating in a lawful manner.

26. The State of Tennessee has, by statutory and common law, a strong public policy favoring the protection of its citizens, consumers and investors from unlawful activities relating to the residential mortgage lending business and the employees and agents are responsible for and must fully and promptly cooperate with the Commissioner's designated representatives request to examine the business affairs of a duly licensed and registered residential lending business operating in the State of Tennessee. Any delay in allowing the Commissioner's designated representatives immediate access when demanded would allow businesses subject to the Commissioner's authority to change, modify, manipulate, alter or even destroy business records in an effort to conceal unlawfully and improper activity.

27. On or about March 23, 2007, the Plaintiff first learned that John Manglardi and Alan B. Horn made the decision to discharge her from her employment with American Home Mortgage.

28. Ms. Kirk's employment with American Home Mortgage was negligently, or in the alternative, recklessly or intentionally, terminated in violation of the laws of the State of Tennessee.

29. The acts and conduct of John Manglardi and Alan B. Horn in making the decision in their capacity as officers of American Home Mortgage to terminate Ms. Kirk's employment were negligent in that they failed to become aware of and comply with applicable Tennessee statutes governing American Home Mortgage and the conducting of audits or examinations by the TDFI.

30. In the alternative, the acts and conduct of John Manglardi and Alan B. Horn in making the decision in their capacity as officers of American Home Mortgage to terminate Ms. Kirk's employment were recklessly or intentionally taken knowing the laws of the State of Tennessee prohibited the company policy of denying access to auditors from the TDFI.

### Count I

#### Violation of the Tennessee Public Policy Protection Act
#### Tenn. Code Ann. § 50-1-304

31. The Plaintiff restates and realleges the statements made in paragraphs 1 – 30 of this First Amended Complaint, which statements are incorporated by reference as if set forth verbatim hereinafter.

32. At all times pertinent Ms. Kirk was the Branch Manager of the Memphis office of American Home Mortgage. Ms. Kirk had an obligation to comply with the law

as the Branch Manager. Ms. Kirk allowed the Commissioner's designated representatives who appeared previously to conduct an examination of the books, records, papers, accounts, files and other financial type documents of American Home Mortgage. Ms. Kirk refused to follow a company policy denying access to the Commissioner's designated representatives who appear and demand to examine the business and books, records, papers and accounts of the Memphis Office of American Home Mortgage. Alan B. Horn and John Manglardi in their capacity as officers of American Home Mortgage decided to and did terminate Ms. Kirk's employment with American Home Mortgage. The sole reason for Ms. Kirk's termination was because she refused to violate the law of the State of Tennessee and provided the requested access to the Commissioner's designated representatives and refused to follow an illegal company policy.

33.   As a result of her wrongful termination, the Plaintiff has suffered and is continuing to suffer damages.

## Count II

### Violation of the Tennessee Common Law

34.   The Plaintiff restates and realleges the statements made in paragraphs 1 – 30 of this First Amended Complaint, which statements are incorporated by reference as if set forth verbatim hereinafter.

35.   At all times pertinent Ms. Kirk was the Branch Manager of the Memphis office of American Home Mortgage. Ms. Kirk had an obligation to comply with the law as the Branch Manager. Ms. Kirk allowed the Commissioner's designated representatives who appeared previously to conduct an examination of the books, records, papers, accounts, files and other financial type documents of American Home Mortgage. Ms.

Kirk refused to follow a company policy denying access to the Commissioner's designated representatives who appear and demand to examine the business and books, records, papers and accounts of the Memphis Office of American Home Mortgage. Alan B. Horn and John Manglardi in their capacity as officers of American Home Mortgage decided to and did terminate Ms. Kirk's employment with American Home Mortgage. A substantial factor in the decision of the Defendant to terminate Ms. Kirk's employment was because she refused to violate the law of the State of Tennessee and provided access to the Commissioner's designated representatives and refused to follow an illegal company policy.

36. As a result of her wrongful termination, the Plaintiff has suffered and is continuing to suffer damages.

## Count III

### Negligent Supervision, Negligent Termination, Negligent Adoption of Unlawful Company Employment Policy, and Negligent Training of Officers

37. The Plaintiff restates and realleges the statements made in paragraphs 1 – 30 of this First Amended Complaint, which statements are incorporated by reference as if set forth verbatim hereinafter.

38. American Home Mortgage negligently adopted a company policy as set forth hereinabove in Alan B. Horn's email to Gregg Murphy which violated the laws of the State of Tennessee.

39. American Home Mortgage had a duty under applicable law to properly supervise and train its officers in the laws of the various states in which American Home Mortgage conducts its mortgage lending business, including the State of Tennessee. In addition, American Home Mortgage had a duty to adopt only company policies which

complied with the laws of the State of Tennessee and the regulations of the TDFI. American Home Mortgage breached its duty to supervise and train its officers in that it failed to properly supervise its officers by supplying them with the necessary training and knowledge of the laws of the State of Tennessee to make lawful decisions in their capacity as officers of American Home Mortgage. In addition, American Home Mortgage breached its duty to operate in a lawful manner when it adopted the company policy referred to hereinabove which violated the laws of the State of Tennessee. As a result of the breach of these duties, on June 28, 2006, Alan B. Horn and John Manglardi negligently decided to and did in fact terminate Ms. Kirk's employment as the Branch Manager of the Memphis office of American Home Mortgage because she failed to follow a negligently adopted company policy which violated the laws of the State of Tennessee.

40.    Ms. Kirk had an obligation to comply with the law as the Branch Manager of the Memphis Office of American Home Mortgage. Ms. Kirk allowed the Commissioner's designated representatives who appeared previously to conduct an examination of the books, records, papers, accounts, files and other financial type documents of American Home Mortgage. Ms. Kirk refused to follow a company policy denying access to the Commissioner's designated representatives who appear and demand to examine the business and books, records, papers and accounts of the Memphis Office of American Home Mortgage. Alan B. Horn and John Manglardi in their capacity as officers of American Home Mortgage decided to and did terminate Ms. Kirk's employment with American Home Mortgage. A substantial factor in the decision of the Defendant to terminate Ms. Kirk's employment was because she refused to violate the

law of the State of Tennessee and provided access to the Commissioner's designated representatives and refused to follow an illegal company policy.

41.     As a result of her wrongful termination, the Plaintiff has suffered and is continuing to suffer damages.

WHEREFORE, premises considered, the Plaintiff requests and prays that:

1.      for all counts in the First Amended Complaint against all Defendants, this Court enter a judgment against the Defendant awarding the Plaintiff compensatory damages; back pay; front pay in lieu of reinstatement (in the total amount of $682,074.13); damages for emotional distress, embarrassment and humiliation (in the total amount of $250,00.00), lost future earnings, medical expenses, health insurance costs (in the total amount of $350,483.89), and lost past and future employment benefits ($150,000.00), for a total award of $1,432,558.02, which amount is in excess of $75,000.00, exclusive of interest and costs, to compensate the Plaintiff for her losses and damages;

2.      for all counts in the First Amended Complaint, this Court enter a judgment against the Defendant awarding the Plaintiff reasonable attorneys fees, costs, litigation related expenses (in the total amount of $250,000.00), and pre-judgment interest as allowed by law in such amount as this Court deems appropriate and just;

3.      for all counts in the First Amended Complaint, this Court award the Plaintiff such other, further, general and additional relief to which the Plaintiff is entitled including punitive damages (in the amount of $500,000.00) in the event the conduct of Alan B. Horn and/or John Manglardi is determined to be reckless or intentional rather than negligent; and

4.      for all counts in the First Amended Complaint, a jury is demanded to try the issues presented.

W. STEPHEN GARDNER
Attorney for Plaintiff

MULLINS GARDNER PLC
Morgan Keegan Tower
50 North Front Street, Suite 1075
Memphis, Tennessee 38103
Tennessee Supreme Court No. 6236
901.527.2000 General Telephone
901.484.2359 Direct Telephone
sgardner@mullinsgardner.com