IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                      :    Chapter 11
                                                            :
AMERICAN HOME MORTGAGE HOLDINGS,                            :    Case No. 07-11047 (CSS)
INC., a Delaware corporation, et al.,                       :
                                                            :    Jointly Administered
        Debtors.                                            :
                                                            :    **Objection Deadline: February 22, 2008 at 4:00 p.m. (ET)**
                                                            :    **Hearing Date:  February 28, 2008 at 11:00 a.m. (ET)**
------------------------------------------------------------ x

## NOTICE OF MOTION

TO:    (I) THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE; (II)
       THE CREDITORS' COMMITTEE; (III) COUNSEL TO BANK OF AMERICA, N.A.,
       AS ADMINISTRATIVE AGENT FOR CERTAIN LENDERS UNDER THAT CERTAIN
       SECOND AMENDED AND RESTATED CREDIT AGREEMENT DATED AS OF
       AUGUST 10, 2006; (IV) COUNSEL TO THE AGENT FOR THE DEBTORS'
       POSTPETITION LENDER; (V) COUNSEL TO ABN AMRO BANK N.V.; AND (VI)
       ALL PARTIES ENTITLED TO NOTICE UNDER DEL. BANKR. LR 2002-1(B).

        The above-captioned debtors and debtors-in-possession (the "Debtors")[10] have
filed the **DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND
SECTIONS 105(a), 363(b)(1) AND 503(c)(3) OF THE BANKRUPTCY CODE AND FOR
AN ORDER APPROVING AND AUTHORIZING THIRD STIPULATION BETWEEN
CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING: (1) POST-
PETITION ADVANCES; (2) SERVICING PAYMENTS; AND (3) MORTGAGE LOAN
REFINANCINGS** (the "Motion").

        Responses to the Motion, if any, must be filed on or before **February 22, 2008 at
4:00 p.m. (ET)** (the "Objection Deadline") with the United States Bankruptcy Court for the
District of Delaware, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801.  At the
same time, you must also serve a copy of the response upon the undersigned counsel to the
Debtors so that the response is received on or before the Objection Deadline.

---

[10] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland
corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home
Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a
New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company
(1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New
York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747,
except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

A HEARING ON THE MOTION WILL BE HELD ON **FEBRUARY 28, 2008 AT 11:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI, UNITED STATES BANKRUPTCY COURT, 6th FLOOR, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated:    Wilmington, Delaware
          February 13, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
In re:                                             :   Chapter 11
                                                   :
AMERICAN HOME MORTGAGE HOLDINGS,                   :   Case No. 07-11047 (CSS)
INC., a Delaware corporation, et al.,              :
                                                   :   Jointly Administered
        Debtors.                                   :
                                                   :   Objection Deadline: February 22, 2008 at 4:00 p.m. (ET)
                                                   :   Hearing Date:  February 28, 2008 at 11:00 a.m. (ET)
-------------------------------------------------- x
```

### DEBTORS' MOTION, PURSUANT TO BANKRUPTCY RULE 9019 AND SECTIONS 105(a), 363(b)(1) AND 503(c)(3) OF THE BANKRUPTCY CODE, FOR AN ORDER APPROVING AND AUTHORIZING THIRD STIPULATION BETWEEN CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING: (1) POST-PETITION ADVANCES; (2) SERVICING PAYMENTS; AND (3) MORTGAGE LOAN REFINANCINGS

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] by this motion

(the "Motion"), seek entry of an order, pursuant to Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure ("Bankruptcy Rules") and sections 105(a), 363(b)(1) and 503(c)(3) of

Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving

the Third Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding: (1) Post-

Petition Advances; (2) Servicing Payments; and (3) Mortgage Loan Refinancings (the "Third

Post-Petition Advances Stipulation"), a copy of which is attached as Exhibit 1 to the proposed

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

form of Order annexed hereto at <u>Exhibit D</u>, by and among the certain Debtors, as identified in the Third Post-Petition Advances Stipulation (the "<u>ABN MRA Debtors</u>"), and ABN AMRO Bank N.V. ("<u>ABN</u>" and together with the ABN MRA Debtors, the "<u>Parties</u>"). In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### GENERAL BACKGROUND

1.      On August 6, 2007 (the "<u>Petition Date</u>") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>"). No trustee or examiner has been appointed.

4.      In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

5.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

6.    Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007, (the "Sale Order") [Docket No. 1711], the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC. (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

7.    Pursuant to the APA, the Servicing Sale will close in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final

---

[2]  All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

Closing"), the Debtors agreed to operate the Servicing Business in the Ordinary Course of

Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the

Purchaser. The Final Closing has not yet occurred, but is required to occur no later than

September 30, 2008.

## RELEVANT BACKGROUND

8.       On August 22, 2007, the AHM MRA Debtors and ABN entered into the

"Stipulation Between Certain Debtors and ABN AMRO Bank N.V.; Order Thereon" (the "First

Post-Petition Advances Stipulation"), a copy of which is attached hereto as Exhibit A, pursuant

to which, among other things, ABN agreed to fund certain Additional Mortgagor Advances in

connection with the construction loans and the conventional mortgages (collectively, the

"Mortgage Loans") that are the subject of that certain Master Repurchase Agreement, dated as of

February 28, 2007, between the AHM MRA Debtors and ABN, and to fund certain Servicing

Payments, as each of those capitalized terms are described and defined in the First Post-Petition

Advances Stipulation. The Court entered its order approving the First Post-Petition Advances

Stipulation on August 22, 2007 [Docket No. 284].

9.       On or about September 21, 2007, ABN and the AHM MRA Debtors

entered into the "Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding

Marketing and Sale of Certain Construction Loans and Servicing Rights; and Order Thereon"

(the "Sale Procedures Stipulation"), a copy of which is attached hereto as Exhibit B, pursuant to

which, among other things, the AHM MRA Debtors and ABN (a) agreed on the procedures

under which the Mortgage Loans that were the subject of the Master Repurchase Agreement

would be marketed and sold; (b) agreed that, upon entry of an order approving the Sale

Procedures Stipulation, ABN would be obligated to pay the AHM MRA Debtors the ABN

Payment (as defined in the Sale Procedures Stipulation) in the amount of $700,000, and (c)

further agreed (as provided in paragraph 20 of the Sale Procedures Stipulation) that "upon . . .

the ABN MRA Debtors' conveyance, transfer, quitclaim, release, and/or turnover and delivery of

possession of the Mortgage Loans and the Servicing Rights to ABN pursuant to paragraphs 12(b)

or 17 [of the Sale Procedures Stipulation] . . . , ABN shall not retain, nor shall it assert, a claim or

interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with

respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided,

however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of

any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA

Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner

inconsistent with the ABN MRA Agreements, the ABN [First] Post-Petition Advances

Stipulation, or the Advances Order, and the Debtors reserve the right to object to or contest the

exercise of such retained right" (the "Waiver of Claims Provision").

10.    On October 4, 2007, the Court entered its order approving the Sale

Procedures Stipulation [Docket No. 1176], and entered a related order approving the sales

procedures [Docket No. 1175].

11.    An auction for the Mortgage Loans was scheduled for October 29, 2007.

Only one bid for the Mortgage Loans was received by the Bid Deadline from a Qualified Bidder,

and the Debtors filed a notice with the Court cancelling the auction [Docket No. 1695], and

notified the parties.

12.    Paragraphs 17 and 18 of the Sale Procedures Stipulation provided  that if

there were no Qualified Bids for the Mortgage Loans, or if ABN exercised its right to notify the

AHM MRA Debtors not to accept the Successful Bid at the Auction, then: (a) ABN would pay to

AHM the $700,000 ABN Payment; and (b) within twenty business days of the Bid Deadline or such later date that the parties might agree to, the AHM MRA Debtors would transfer, convey and turn over to ABN all of the AHM MRA Debtors' rights in and to the Mortgage Loans. On November 8, 2007, ABN made the ABN Payment.

13.    On December 3, 2007, ABN and the AHM MRA Debtors entered into the "Second Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Post-Petition Advances and Sale of Construction Loan Portfolio; Order Thereon" (the "Second Post-Petition Advances Stipulation"), a copy of which is attached hereto as Exhibit C, pursuant to which the AHM MRA Debtors agreed to use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through March 31, 2008, and ABN agreed to continue making Additional Mortgagor Advances in an amount up to $70 million and to make Servicing Payments as provided in the budget attached to the Second Post-Petition Advances Stipulation.

14.    On December 12, 2007, the Court entered its "Order Approving Second Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Post-Petition Advances and Sale of Construction Loan Portfolio; Order Thereon," [Docket No. 2355] approving the Second Post-Petition Advances Stipulation.

15.    Due to regulatory issues delaying ABN's request that the AHM MRA Debtors turnover their rights in and to the Mortgage Loans to ABN as provided in the Sale Procedures Stipulation and Second Post-Petition Advances Stipulation, ABN has requested that the Debtors keep the construction loan servicing group in place through June 30, 2008 to service the remaining Mortgage Loans, and to offer certain refinancing incentives to the borrowers under

those Mortgage Loans at ABN's expense, and the Debtors have agreed to do so subject to the

terms of this Third Post-Petition Advances Stipulation and approval thereof by the Court.

## THIRD POST-PETITION ADVANCES STIPULATION

16.    The principal terms of the Third Post-Petition Advances Stipulation are set

forth below:[3]

i.    Each of the Recitals contained in (i) paragraphs 2 through 10 of the First Post-Petition Advances Stipulation, (ii) paragraphs 2 through 9 of the Sale Procedures Stipulation, and (iii) paragraphs 2 through 9 of the Second Post-Petition Advances Stipulation are incorporated herein by this reference, and, unless amended herein, the Agreements contained in those three stipulations shall remain in full force and effect.

ii.    Paragraph 12 of the First Post-Petition Advances Stipulation is hereby amended to increase the reference therein from "$32 million" to "$70 million" (the same $70 million amount that governed the Second Post-Petition Advances Stipulation).  ABN shall continue to fund certain Additional Mortgagor Advances and Servicing Payments (as such terms are defined in the First Post-Petition Advances Stipulation) in connection with the Mortgage Loans in accordance with the terms of the First Post-Petition Advances Stipulation and the Second Post-Petition Advances Stipulation.

iii.    ABN shall pay its pro-rata share of the 2008 Budget amounts, as the term "pro-rata" is used in the first Post-Petition Advances Stipulation, on the same terms as provided for payment of the Budget amounts in the First Post-Petition Advances Stipulation.

iv.    The Debtors shall use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through June 30, 2008; provided, that, ABN (i) continues to make Additional Mortgagor Advances and Servicing Payments in accordance with the provisions of the First Post-Petition Advances Stipulation and the Second Post-Petition Advances Stipulation; and (ii) that nothing herein shall nullify or otherwise effect the Waiver of Claims Provision pursuant to paragraph 15 of the Second Post-Petition Advances Stipulation.

---

[3] The terms of the Stipulation set forth herein are a summary only.  To the extent of any inconsistency between the summary herein and the Stipulation, the terms of the Stipulation shall govern.

v.  ABN shall fund all of the Debtors' obligations under a new stay and incentive bonus plan, the terms of which are described in this Stipulation (the "Bonus Plan"), for the employees working in the construction loan servicing group (the "Construction Loan Employees"), in an amount not to exceed $450,000 (the "Bonus Pool"), which Bonus Plan is designed to motivate the Construction Loan Employees to negotiate and effectuate compromises of the (i) Mortgage Loans and (ii) the construction loans the Debtors received the authority to compromise by Order dated February 1, 2008 [Docket No. 2860] (the "Construction Loans").

vi.  Under the incentive portion of the Bonus Plan, the Construction Loan Employees will be entitled to receive payments from the Bonus Pool if the following milestones are reached:  (i) a 60% reduction of the aggregate unpaid principal balance ("UPB") of the Mortgage Loans and the Construction Loans (the "60% Milestone"); (ii) a 80% reduction of the aggregate UPB of the Mortgage Loans and the Constructions Loans (the "80% Milestone"); and (iii) a 90% reduction of the aggregate UPB of the Mortgage Loans and the Construction Loans (the "90% Milestone").  The aggregate UPB of the Mortgage Loans for purposes of determining the 60% Milestone, 80% Milestone and the 90% Milestone shall be the aggregate UPB of the Mortgage Loans and the Construction Loans as of close of business on February 8, 2008.

vii.  If the 60% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 10% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.  If the 60% Milestone is reached, Karen Gowins will be entitled to receive 20% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

viii.  If the 80% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 15% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.  If the 80% Milestone is reached, Karen Gowins will be entitled to receive 30% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

ix.  If the 90% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 25% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.  If the 90% Milestone is reached, Karen Gowins will be entitled to receive 50% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

x.   Under the stay portion of the Bonus Plan, the Construction Loan
     Employees, other than Karen Gowins, will be entitled to receive their
     allocated portion of the Bonus Pool provided that they remain
     employed by the Debtors, and they are not terminated for cause by the
     Debtors, through the earlier of June 30, 2008 or the date each of the
     Mortgage Loans and Construction Loans are compromised or the
     Debtors determine that no additional Mortgage Loans and
     Construction Loans will be compromised.

xi.  In the event (i) the AHM MRA Debtors are unable to keep in place the
     construction loan servicing group through June 30, 2008 or the
     completion of the compromises of all the Mortgage Loans and
     Construction Loans, or (ii) ABN exercises its rights in and to the
     Mortgage Loans to request the turnover of the AHM MRA Debtors'
     rights in and to the Mortgage Loans to ABN as provided in paragraphs
     17 and 18 of the Sale Procedures Stipulation (as modified by the
     Second Post-Petition Advances Stipulation) prior to June 30, 2008 or
     the completion of the compromises of all the Mortgage Loans and
     Construction Loans, ABN shall be obligated for the pro-rated portion
     of the Bonus Pool related to the incentive portion of the Bonus Plan
     and 100% of the portion of the Bonus Pool related to the stay portion
     of the Bonus Plan.  For example, if only a 30% reduction of the UPB
     of the Mortgage Loans and the Construction Loans has been obtained,
     ABN will be obligated to fund ½ of the Bonus Pool allocated to the
     60% Milestone and 100% of the Bonus Pool allocated to the stay
     portion of the Bonus Plan.

xii. The turnover of the AHM MRA Debtors' rights in and to the Mortgage
     Loans to ABN as provided in paragraphs 17 and 18 of the Sale
     Procedures Stipulation shall: (a) be conditioned upon ABN's
     performance of each of the payment obligations contained in the First
     and Second Post-Petition Advances Stipulations and the Third Post-
     Petition Advances Stipulation, and (b) occur on the first business day
     that is fifteen calendar days after ABN provides written notice to the
     AHM MRA Debtors and their counsel that it has obtained an
     acceptable substitute servicer and/or transferee (or such later date as
     the AHM MRA Debtors and ABN may mutually agree to), and upon
     such transfer and substitution of servicer, ABN shall no longer be
     obligated to make any further Servicing Payments.  In the event the
     AHM MRA Debtors are unable to keep in place the construction loan
     servicing group to service the Mortgage Loans despite their reasonably
     commercial efforts to keep the construction loan servicing group in
     place, then the AHM MRA Debtors shall provide written notice (in
     advance of discontinuing service, but only if practicable) to ABN of
     the last day they will be servicing the Mortgage Loans (after which the
     AHM MRA Debtors shall have no obligation to service the Mortgage

Loans), and the parties thereupon shall effectuate the conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN.

xiii.   On the date the Debtors convey, transfer, quit claim, release and/or turnover and deliver possession of the Mortgage Loans and Servicing Rights to ABN pursuant to the terms of the Third Post-Petition Advances Stipulation, ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the First Post-Petition Advances Stipulation, the Advances Order, the Second Post-Petition Advances Stipulation or the Third Post-Petition Advances Stipulation, and the Debtors reserve the right to object to or contest the exercise of such retained right.

xiv.   ABN authorizes and requests that the Debtors offer principal reductions and similar incentives to borrowers under the Mortgage Loans to encourage such borrowers to refinance their loans with other lenders such incentives to be agreed upon between the Debtors and ABN, and all such incentives, in whatever form, to be entirely a cost of ABN and not the Debtors or their estates.  Upon the closing of any such refinancing of a Mortgage Loan and the distribution of the net proceeds thereof to ABN, the releases and waivers of claims contained in the Waiver of Claims Provision (referred to in paragraph 3 therein) shall immediately apply to each such refinanced Mortgage Loan.

xv.   Upon completion of the compromise of all the Mortgage Loans and the Construction Loans or determination by the Debtors that no other Mortgage Loans or Construction Loans will be compromised, the Debtors will file a report (the "Report").  The Report will identify (i) each Mortgage Loan or Construction Loan by loan number that has been compromised, (ii) the amount of the unpaid principal balance as of the date of compromise of each compromised Mortgage Loan or Construction Loan, and (iii) the amount of the compromised unpaid principal balance of each Mortgage Loan or Construction Loan.  ABN consents to the Debtors filing the Report and, if requested, will support a request by the Debtors to the filing of the Report under seal.

## RELIEF REQUESTED

17.    By this Motion, the Debtors are seeking approval of the Third Post-Petition Advances Stipulation pursuant to Bankruptcy Rule 9019 and sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code.  Pursuant to the Third Post-Petition Advances Stipulation, the Debtors have agreed to use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through June 30, 2008.  In return, ABN has agreed to (i) continue funding its pro rata share of the budget for the servicing of the Debtors' construction loan portfolio to the second quarter of calendar 2008, (ii) fund a $450,000 Bonus Pool[4] to incentivize the construction loan servicing group to negotiate and effectuate compromises of the Mortgage Loans and Construction Loans, and (iii) waive certain claims against the Debtors and their estates.  In the Debtors' judgment, the above-outlined compromises contained in the Third Post-Petition Advances Stipulation are fair and reasonable and serve the best interests of the Debtors, their estates and creditors.

## BASIS FOR RELIEF REQUESTED

**A.    The Third Post-Petition Advances Stipulation Should be Approved Pursuant to Bankruptcy Rule 9019(a)**

18.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement."  The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged.  In re Penn Central Transp. Co., 596 F.2d 1002 (3d Cir. 1979).  The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable

---

[4] The establishment of the Bonus Plan is in addition to the previously entered "Order Authorizing Payment of Incentive Pay to Senior Management Pursuant to Sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code" [Docket No. 2210], a portion of the cost of which (approximately 70-75%) is being paid by ABN by virtue of their funding of the business under the Budget.

doubts." In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390

U.S. 414 (1986).

19.     Approval of a proposed settlement is within the "sound discretion" of the

Bankruptcy Court. In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (Bankr. E.D.

Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of

the estate." See In the Matter of Energy Cooperative, Inc., 886 F.2d 921, 927 (7th Cir. 1989). In

determining whether to approve an motion to settle a controversy, a Bankruptcy Court must

determine whether it is fair, reasonable and adequate by examining four factors:

> (a) the probability of success in the litigation; (b) the difficulties, if
> any, to be encountered in the matter of collection: (c) the
> complexity of the litigation involved, and the expense,
> inconvenience and delay necessarily attending it; and (d) the
> paramount interest of the creditors and a proper deference to their
> reasonable views in the premises.

Official Comm. of Unsec. Cred. Of Penn. Truck Lines, Inc. v. Penn Truck Lines, Inc. (In re Penn

Truck Lines, Inc.), 150 B.R. 595, 598 (Bankr. E.D. Pa. 1992). The Court should not substitute

its judgment for that of a trustee. Neshaminy Office Building Assoc., 62 B.R. at 803. The Court

is not to decide the numerous questions of law or fact raised by litigation, but rather should

canvas the issues to see whether the settlement falls below the lowest point in the range of

reasonableness. In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464

U.S. 22 (1983). In addition, "because the bankruptcy judge is unequally situated to consider the

equities and reasonableness of a particular compromise, approval or denial of a compromise will

not be disturbed on appeal absent a clear abuse of discretion." Neshaminy Office Building

Assoc., 62 B.R. at 803, citing In re Patel, 43 B.R. 500, 505 (Bankr. N.D. Ill. 1984).

20.     As noted above, the Third Post-Petition Advances Stipulation is in the best

interest of the Debtors, their estates and creditors as, pursuant to the terms thereunder, ABN has

agreed to, among other things, (i) continue funding its pro rata share of the budget for servicing of the Debtors' construction loan portfolio, which was to expire in March 2008, to the second quarter of calendar 2008, (ii) fund a $450,000 Bonus Pool to incentivize the construction loan servicing group to negotiate and effectuate compromises of the Mortgage Loans, as well as the Construction Loans, and (iii) waive certain claims against the Debtors and their estates.

21.    In particular, prior to entrance into the Third Post-Petition Advances Stipulation, there was no incentive for the Construction Loan Employees to compromise certain construction loans. Specifically, on January 4, 2008, the Court approved a stipulation (the "BofA Stipulation") between the Debtors and Bank of America, N.A. (the "Administrative Agent"), as administrative agent for itself and certain other banking and financial institutions, pursuant to which the Administrative Agent released its liens on certain construction loans (the "BofA Loans") [See Docket No. 2593]. On February 1, 2008, the Court entered the "Order Pursuant to Bankruptcy Rule 9019(a) Authorizing the Debtors to Compromise Certain Construction Loans Without Further Notice or Hearing" [Docket No. 2860] (the "Construction Loan Order"), pursuant to which the Court authorized the Debtors to compromise and settle any and all claims of, or against, the Debtors arising under or related to the BofA Loans. Importantly, pursuant to the Third Post-Petition Advances Stipulation, ABN is providing an incentive for the Debtors' Construction Loan Employees to effectuate compromises of the ABN Construction Loans and Mortgage Loans, as well as the BofA Loans. This added incentive, which is solely at the cost and expense of ABN, undoubtedly benefits the Debtors as the Debtors' employees will be motivated to compromise loans, which will, in turn, add value to the Debtors' estates. Indeed, with respect to compromises of the BofA Loans, pursuant to the BofA

Stipulation, the Debtors will receive all of the value achieved in excess of the payoff amount of the Administrative Agent's secured claim.

**B.      The Compromising of Loans, as Contained in the Third Post-Petition Advances Stipulation, Should be Approved Pursuant to Sections 363(b) and 102(1) of the Bankruptcy Code and Bankruptcy Rule 9019**

22.      Section 363 of the Bankruptcy Code provides, in pertinent part, that the debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

23.      Section 102(1) of the Bankruptcy Code provides that the phrase "after notice and a hearing"

> (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
> (B) authorizes an act without an actual hearing if such notice is given properly and if—
> (i) such a hearing is not timely requested by a party in interest; or
> > (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.

11 U.S.C. § 102(1) (emphasis added)

24.      Though not a "use, sale or lease" of estate property strictly speaking, compromise of the Mortgage Loans and Construction Loans with the borrowers implicates section 363(b)(1) of the Bankruptcy Code because it is the functional equivalent of a "sale" of the Mortgage Loans and Construction Loans. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999), citing In re Telesphere Communications, Inc., 179 B.R. 544, 552 n.7 (Bankr. N.D. Ill. 1994) ("There is no difference in the effect on the estate between the sale of a claim (by way of assignment) to a third party and a settlement of the claim with the adverse party.")).

25.    However, unlike approval of a "use, sale or lease" of estate property, which is governed by Bankruptcy Rule 6004, approval of the compromise of the estate's right to payment from a third party is governed by Bankruptcy Rule 9019. Compare Fed. R. Bankr. P. 6004 ("Use, Sale, or Lease of Property") with Fed. R. Bankr. P. 9019 ("Compromise and Arbitration"); see Northview Motors, 186 F.3d at 351 n.4 ("Bankruptcy Rule 9019 provides the procedure for the required court approval.").

26.    Bankruptcy Rule 9019(b) provides, in relevant part, that, "[a]fter notice and such hearing as the court may direct, the court may fix a class or classes of controversies and authorize the [debtor in possession] to compromise or settle controversies within such class or classes *without further hearing or notice*." Fed. R. Bankr. P. 9019(b) (emphasis added). This is consistent with the provisions of sections 363(b)(1) and 102(1) of the Bankruptcy Code which, taken together, require court approval of non-ordinary course transactions but permit flexibility in determining when, and under what circumstances, an actual hearing will be required. See 11 U.S.C. §§ 363(b)(1) and 102(1); Telesphere, 179 B.R. at 552 n.8. Thus, pursuant to Bankruptcy Rule 9019(b), a bankruptcy court may authorize the settlement of certain classes of claims without further notice or hearing, where such settlement will produce a minimum threshold of value for the estate. See, e.g., Boyd v. North End Auto Sales, Inc. (In re Check Reporting Serv., Inc.), 137 B.R. 653 (Bankr. W.D. Mich. 1992) (discussing prior order authorizing chapter 7 trustee, without further order of the court, to settle pending preference actions for at least 25% of the amount of judgment demanded).

27.    As noted above, compromises are favored in bankruptcy to minimize litigation and expedite administration of the bankruptcy estate. In re Martin, 91 F.3d at 393. Pursuant to Bankruptcy Rule 9019, however, the Court must determine whether a proposed

settlement is in the best interest of the bankruptcy estate. See <u>Law Debenture Trust Co. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)</u>, 339 B.R. 91, 96 (D. Del. 2006) (citing <u>Martin</u>, 91 F.3d at 394);[5] <u>In re RNI Wind Down Corp.</u>, 348 B.R. 286, 297 (Bankr. D. Del. 2006) (Sontchi, J.). Although the particular <u>Martin</u> factors, as enumerated earlier, are somewhat difficult to apply given the nature of the Mortgage Loans and Construction Loans and the non-litigation posture of the request to compromise such loans, the Debtors submit that the broader <u>Martin</u> analysis supports the relief requested.

28.    The "claims being compromised" for purposes of the <u>Martin</u> analysis are, of course, the Mortgage Loans and Construction Loans.[6] The Debtors believe the intrinsic value of the Mortgage Loans and Construction Loans (i.e., if they were funded out and converted to permanent loans) is no less than 100% of their UPBs. However, because the Debtors are unable to continue funding the Mortgage Loans and Construction Loans, and were unable to find a serious buyer willing to do so, the Debtors must now liquidate the loans in order to maximize the realizable value for the benefit of the Debtors' estates.

29.    The Debtors and their financial advisors have determined that offering incentives to borrowers and third-party lenders to refinance the Mortgage Loans and

---

[5] The <u>Kaiser Aluminum</u> and <u>Martin</u> opinions concerned the approval of a settlement under Bankruptcy Rule 9019(a), which is admittedly different from fixing a class of claims and authorizing future settlements thereof pursuant to Bankruptcy Rule 9019(b). However, because the substantive requirements for approval of any settlement derive from section 363(b)(1) of the Bankruptcy Code, case law decided under Bankruptcy Rule 9019(a) should be equally applicable to Bankruptcy Rule 9019. See <u>Martin</u>, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."); <u>Northview Motors</u>, 186 F.3d at 351 n.4 ("Bankruptcy Rule 9019(a), a rule of procedure, cannot, by itself, create a substantive requirement of judicial approval of the Trustee's settlement of Northview's claims against Chrysler. However, we adhere to our ruling in <u>Martin</u> that Section 363 of the Code is the substantive provision requiring court approval."). <u>Accord Telesphere</u>, 179 B.R. at 551-53 (tracing origin of "best interest of the estate" standard for approval of settlement to case law construing section 363(b) of the Bankruptcy Code).

[6] As stated previously, on February 1, 2008, the Court entered the Construction Loan Order, pursuant to which the Court authorized the Debtors, for the same reasons as enumerated herein, to compromise and settle any and all claims of, or against, the Debtors arising under or related to certain construction loans.

Construction Loans is likely the most expedient method of liquidating them while also maximizing their value for the benefit of the Debtors' estates. Because the loans will be refinanced in the open market, the Debtors submit that the amount of the UPB a lender would be willing to refinance for a borrower with respect to a given property is a fair approximation of the "value" (i.e., the orderly liquidation value) of the Mortgage Loan or Construction Loan secured by that property.[7] Accordingly, with respect to each settlement of a Mortgage Loan or Construction Loan leading to refinancing by a third-party lender, the Debtors will be receiving equivalent value for the Mortgage Loan or Construction Loan. Put another way, the "value to the estate of the acceptance of the compromise" under the Martin analysis will be equal to the "value of the claim that is being compromised.".

## C.    The Bonus Plan as Contained in the Third Post-Petition Advances Stipulation Should Be Evaluated under Section 503(c)(3) of the Bankruptcy Code, Using the Same Standard as Section 363(b) of the Bankruptcy Code

30.    As noted above, section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(I). Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a "sound business purpose" for it. See In re Lionel Corp., 722 F. 2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."); In re Delaware Hudson Ry. Co., 124 B.R. 169, 179 (Bankr. Del. 1991).

---

[7] By way of comparison, in a typical Bankruptcy Rule 9019 motion concerning a litigation claim, the amount of the settlement is determined by the litigants themselves without "market testing" of any kind. In such circumstances, the Debtors submit that closer scrutiny by the bankruptcy court is warranted and the four Martin factors are more clearly relevant.

31.    Once the debtor articulates a valid business justification for a particular form of relief, the Court reviews the debtor's request under the "business judgment rule." The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources. Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

32.    The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See id.; see also In re Martin, 91 F.3d at 395 (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention program, stating that "[i]n determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions.").

33.    Section 503(c), which is applicable in all bankruptcy cases filed after October 2005, provides criteria for courts to use in approving certain types of payments to insiders and "other transfers or obligations that are outside the ordinary course of business." Section 503(c) comprises three subsections: (1) a general prohibition against retention plans for insiders; (2) limitations on severance payments; and (3) standards governing other transfers to certain employees and consultants, among others, that are outside of the ordinary course. For the reasons set forth herein, neither section 503(c)(1) nor section

503(c)(2) are applicable to evaluating the Bonus Plan as contained in the Third Post-Petition Advances Stipulation.

34.    By the statute's plain language, section 503(c)(1) pertains solely to retention plans of insiders and section 503(c)(2) addresses only the requirements for severance plans, and neither provision applies to performance-based incentive plans. See, e.g., In re Nobex Corp., No. 05-20050, January 12, 2006, Hearing Tr. at 67 (Bankr. D. Del. 2006) (Walrath, J.); In re Calpine Corp., No. 05-60200, April 26, 2006 Hearing Tr. at 87 (Bankr. S.D.N.Y. 2006) (Lifland, J.). Indeed, one court recently held that:

> If sections 503(c)(1) and (c)(2) are not operative, a court may consider whether the payments are permissible under section 503(c)(3), which limits payments made to management and employees, among others, outside the ordinary course, unless such payments are shown to be justified under the facts and circumstances of chapter 11 case. As one treatise points out, the test appears to be no more stringent a test than the one courts must apply in approving any administrative expense under 503(b)(1)(A).

In re Dana Corporation, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006).

35.    The Bonus Plan is intended to provide neither bonuses for retention of insiders, nor severance pay. Rather, the Bonus Plan is composed of two parts: (1) an incentive plan for the Construction Loan Employees, including Karen Gowins who qualifies as an insider; and (2) a stay plan for Construction Loan Employees who are not insiders (i.e., excluding Karen Gowins). Under the incentive portion of the Bonus Plan, the Construction Loan Employees will be entitled to receive payments from the Bonus Pool if certain milestones are reached. Under the stay portion of the Bonus Plan, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive their allocated portion of the Bonus Pool provided that they remain employed by the Debtors, and they are not terminated for cause by the Debtors, through the earlier of June 30, 2008 or the date each of the Mortgage Loans and Construction Loans are

compromised or the Debtors determine that no additional Mortgage Loans or Construction Loans will be compromised.

36.    Because the Bonus Plan is designed to motivate the Construction Loan Employees to negotiate and effectuate compromises of the (i) Mortgage Loans and (ii) the Construction Loans, the incentive portion of the Bonus Plan is property characterized as a sale-related incentive plan, not a retention plan for insiders subject to the requirements of Bankruptcy Code section 503(c)(1).  Likewise, as the stay portion of the Bonus Plan explicitly carves out any insiders, Bankruptcy Code section 503(c)(1) is not applicable.

37.    Furthermore, the Bonus Plan does not constitute severance for insiders subject to the provisions of Bankruptcy Code section 503(c)(2), because it does not provide benefits to insiders upon termination of their employment with the Debtors.  See 11 U.S.C. § 503(c)(2).  As stated above, Karen Gowins, the sole Construction Loan Employee qualified as an insider, has been explicitly carved out of the stay portion of the Bonus Plan.

38.    As sections 503(c)(1) and (c)(2) are not applicable, to the extent that distributions under the Bonus Plan are payments "outside the ordinary course of business," they should be evaluated under section 503(c)(3).  See, e.g., Nobex Corp., Case No. 05-20050, January 12, 2006, Hearing Tr. at 67; In re Musicland Holding Corp., Case No. 06-10064 (Bernstein, J.) (Bankr. S.D.N.Y. Feb. 1, 2006) (debtor continuing to provide incentive bonuses under management incentive plan did not violate section 503(c) of the Bankruptcy Code); In re Dana Corporation, 2006 WL 3479406 at *12; In re Werner Holding Co. (DE). Inc., Case No. 06-10578 (Carey, J.) (Bankr. D. Del. July 20, 2006, August 22, 2006, and December 20, 2006) (ordering various relief requested in connection with debtor's incentive bonus plans pursuant to sections 363(b) and 503(c) of the Bankruptcy Code).

39.     Section 503(c)(3) states, in relevant part, that "there shall be neither allowed nor paid ... other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case...."  Since courts have begun to analyze various payments under section 503(c)(3), they have been unanimous in holding that they must use the "business judgment" standard as the proper standard for determining whether incentive programs and the payments thereunder are justified. See, e.g., In re Werner Holding Co. (DE). Inc., Case No. 06-10578 (Carey, J.) (Bankr. D. Del. July 20, 2006, August 22, 2006, and December 20, 2006); In re Nobex Corporation, No. 05-20050 (Sontchi, J.) (Bankr. D. Del. May 15, 2006 and Dec. 21, 2005); In re Riverstone Networks. Inc., No. 06-10110 (Sontchi, J.) (Bankr. D. Del. March 28, 2006); In re Pliant Corporation, No. 06-100001 (Walrath, J.) (Bankr. D. Del. March 14, 2006).

40.     Indeed, in the Nobex case, Judge Walrath stated that:

> [Section] (c)(3) was meant to provide a standard, albeit not as clear, for any other transfers or obligations outside the ordinary course of business.... I read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside the ordinary course of business are those that are justified by the facts and circumstances of the case.... I find it quite frankly nothing more than a reiteration of the standard under 363 ... under which courts had previously authorized transfers outside the ordinary course of business and that [are], based on the business judgment of the debtor....

January 12, 2006, Hearing Tr. at 86-87, In re Nobex Corp., Case No. 05-20050 (Walrath, J.) (Bankr. D. Del.) (an order approving the management incentive plan at issue was entered January 20, 2006). See also In re Dana Corporation, 2006 WL 3479406 at *6 (Bankr. S.D.N.Y. 2006) (Judge Lifland agreeing that management incentive programs should be evaluated under the business judgment standard).

D.    **The Bonus Plan Satisfies a Sound Business Purpose and Should Be Authorized by this Court Pursuant to Sections 363(b)(1) and 503(c)(3)**

41.    Entrance into the Bonus Plan, pursuant to the terms of the Third Post-Petition Advances Stipulation, satisfies a sound business purpose. To begin with, the Bonus Plan will incentivize the Construction Loan Employees to negotiate and compromise the Mortgage Loans and Construction Loans, which will, in turn, help to maximize value and reduce claims for the benefit of the Debtors' estates and creditors. Indeed, the incentive bonuses are tied directly to the proceeds received by the Debtors as a result of the compromise of the Construction Loans and Mortgage Loans. Thus, the motivations of the Construction Loan Employees are aligned with the motivations of the Debtors and their creditors.

42.    Secondly, the Debtors' ability to preserve the value of their assets and reduce claims would be substantially hindered if the Debtors are unable to properly incentivize their employees. The fact that the Debtors are essentially now in the business of preserving assets for sale and winding down their operations, makes it virtually impossible to attract any employees, let alone those equal to the caliber of the Construction Loan Employees. Authorization to implement the Bonus Plan will provide the Debtors' employees with a greater sense of financial security thereby minimizing the need to seek other employment which would otherwise distract the employees from the necessary tasks they need to perform for the Debtors. Providing incentives to encourage employees to focus on the Debtors' objectives, and to motivate them to provide optimal levels of performance, is necessary to successfully maintain the business.

43.    Third, ABN is funding the Bonus Plan. Thus, there is no economic downside to the Debtors' entrance into the Bonus Plan.

44.     Finally, targeted incentive programs have repeatedly been recognized by this and other courts, as having particular value in motivating employees. See, e.g., In re American Home Mortgage Holdings, Inc., et al., Case No. 07-11047 (Sontchi, J.) (Bankr. D. Del. November 28, 2007); In re Werner Holding Co. (DE), Inc., Case No. 06-10578 (Carey, J.) (Bankr. D. Del. Dec. 27, 2006) (approving employee incentive plan providing for cash payments as rewards for attainment of collective operational restructuring goals and personal performance goals in support); In re Nellson Nutraceutical, Inc., Case No. 06-10073 (Sontchi, J.) (Bankr. D. Del. July 18, 2006); In re Global Home Products LLC, Case No. 06-10340 (Gross, J.) (Bankr. D. Del. May 30, 2006) (approving management incentive program provided that plan participants fulfilled their obligations to the debtors through the closing of a sale of substantially all of the Debtors' assets); In re Riverstone Networks, Inc., Case No. 06-10110 (Sontchi, J.) (Bankr. D. Del. Apr. 3, 2006) (approving an employee bonus program providing for cash payments for successful completion of certain individual and company performance goals); In re Pliant Corp., Case No. 06-10001 (Walrath, J.) (Bankr. D. Del. Feb. 21, 2006) (approving management incentive compensation plan providing for cash awards for achievement of organizational performance goals and personal performance goals); In re Nobex Corp., Case No. 05-20050 (Walrath, J.) (Bankr. D. Del. Jan. 20, 2006) (approving "sale-related incentive pay" to officers, contingent on a successful sale of the company for a price in excess of that offered by an existing, stalking horse bidder, in connection with the debtor's pursuit of a sale of the company).

**E.      The Third Post-Petition Advances Stipulation May Additionally Be Authorized Pursuant to Section 105(a) of the Bankruptcy Code**

45.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]. " 11 U.S.C. § 105(1).

46.     The Debtors strongly and reasonably believe that approval of the Third Post-Petition Advances Stipulation is critical to their ability to maximize returns to creditors. Among other benefits, the Stipulation will extend the Budget to June 2008, will provide the Debtors' Construction Loan Employees with an incentive to compromise Mortgage Loans and Construction Loans, and will result in a reduction of claims against the Debtors' estates (by ABN's waiver of certain claims).

47.     The Debtors respectfully submit that the entrance into the Third Post-Petition Advances Stipulation is an appropriate exercise of the Debtors' business judgment; is necessary and in the best interest of the Debtors, their creditors, and their estates; and should be approved pursuant to Bankruptcy Rule 9019 and sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code.

## NOTICE

48.     Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America; (iv) Counsel to the Agent for the Debtors' Postpetition Lender; (v) counsel to ABN; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

49.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court issue and enter an order, in the form attached hereto as Exhibit D, (i) pursuant to sections 363(b)(1), 503(c)(3) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Third Post-Petition Advances Stipulation, and (ii) granting such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware           YOUNG CONAWAY STARGATT & TAYLOR, LLP
          February 13, 2008

                                         _____
                                         James L. Patton, Jr. (No. 2202)
                                         Pauline K. Morgan (No. 3650)
                                         M. Blake Cleary (No. 3614)
                                         Matthew B. Lunn (No. 4119)
                                         Kara Hammond Coyle (No. 4410)
                                         The Brandywine Building
                                         1000 West Street, 17th Floor
                                         Wilmington, Delaware 19801
                                         Telephone: (302) 571-6600
                                         Facsimile: (302) 571-1253

                                         Counsel for Debtors and Debtors in Possession

**EXHIBIT A**

**First Post-Petition Advances Stipulation**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **AMERICAN HOME MORTGAGE** | ) Case Nos.  07-11047 (CSS) |
| **HOLDINGS, INC., et al.,**[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing: August 22, 2007 |

### STIPULATION BETWEEN CERTAIN DEBTORS
### AND ABN AMRO BANK N.V.; ORDER THEREON

1.     Chapter 11 Debtors and Debtors in Possession American Home Mortgage

Acceptance, Inc., ("AHMA"), American Home Mortgage Corp. ("AHMC"), American Home

Mortgage Investment Corp. ("AHMI"), and American Home Mortgage Servicing, Inc.

("AHMS") on the one hand and ABN AMRO Bank N.V. ("ABN" ) on the other hand (AHMA,

AHMC, AHMI, AHMS and ABN, collectively, the "Parties") hereby enter into this Stipulation

(the "Stipulation"), by and through their respective counsel of record, effective as of the date of

entry of an order approving this Stipulation, based upon the following Recitals.

<u>Recitals</u>

2.     On August 6, 2007 (the "Petition Date"), the Debtors commenced voluntary cases

(the "Bankruptcy Cases") under title 11, chapter 11 of the United States Code, 11 U.S.C. §§ 101,

et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of

---

[1]   The Debtors and Debtors in Possession are American Home Mortgage Holdings, Inc., American
Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage
Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC,
Homegate Settlement Services, Inc., and Great Oak Abstract Corp. (individually, a "Debtor," and
collectively, the "Debtors").

Delaware (the "Court"). The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an official committee of unsecured creditors.

3.    ABN asserts that the Debtors that are Parties hereto – AHMA, AHMC, AHMI, and AHMS – are parties to a Master Repurchase Agreement, dated as of February 28, 2007 (as may have been supplemented and amended from time to time prior to the Petition Date, the "ABN MRA"), under which AHMS, AHMA, AHMC and AHMI are Sellers (in such capacities, the "Sellers"), AHMS is the Servicer (in such capacity, the "Servicer"), and ABN, it its capacity as Agent for the Purchasers, is the Buyer.

4.    ABN asserts that AHMS, AHMA, AHMC, AHMI, ABN and others are parties to a number of additional agreements related to the ABN MRA, including but not limited to the following:

(a)  a Custodial Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AHMI as Sellers, AHMS as the Servicer, ABN as Agent, and Deutsche Bank National Trust Company ("Deutsche Bank") as Custodian;

(b)  an Account Control Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AHMI as Sellers, AHMS as Servicer, ABN as Agent, and Deutsche Bank as Bank (the "Account Control Agreement");

(c)  an Electronic Tracking Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AHMI as Sellers, AHMS as Servicer, MERSCORP, Inc. as Electronic Agent, Mortgage Electronic Registration Systems, Inc., and ABN as Agent.

2

(d)  a Letter Agreement, dated as of February 28, 2007, by and among AHMS, AHMA, AHMC and AHMI as Sellers, AHMS as Servicer, Amsterdam Funding Corporation as the initial Conduit Purchaser, the other Conduit Purchasers from time to time, ABN, as a Committed Purchaser, the other Committed Purchasers from time to time, ABN as Group Agent for the ABN AMRO Group, the other Group Agents from time to time, and ABN as Agent for the Conduit Purchasers and the Committed Purchasers (the "Letter Agreement"); and

(e)  a Performance Guaranty, dated as of February 28, 2007, made by AHMI and American Home Mortgage Holdings, Inc. in favor of ABN as Agent, the Group Agents and other Indemnified Parties under the ABN MRA.

5.     The agreements referred to in paragraphs 3 and 4 (copies of which are attached to the Declaration of William J. Fitzgerald at docket no. 34 in the Bankruptcy Cases) are referred to collectively hereinafter as the "Agreements."

6.     ABN asserts, but the Debtors do not concede, that the Agreements are agreements and transactions of the kind described in Bankruptcy Code § 561(a).

7.     ABN asserts, but the Debtors do not concede, that pursuant to the Agreements and during a five-month period prior to the Petition Date, ABN purchased from the Sellers approximately four hundred and thirty (430)  mortgage loans (such mortgage loans, collectively with all documentation evidencing such loans, the "Mortgage Loans") in the original principal amount of approximately $222 million. The Mortgage Loans are residential construction loans made by the Sellers to mortgagors (the "Mortgagors") who are constructing or renovating single-family homes pursuant to mortgage contracts (the "Mortgage Contracts") between the Sellers and the Mortgagors. ABN asserts that as of July 31, 2007: (i) the Mortgagors owed

3

approximately $145 million in the aggregate in connection with advances made to the Mortgagors under the Mortgage Loans (the "Mortgagor Advances"); and (ii) up to approximately $77 million in the aggregate in additional advances were, subject to the terms of the respective Mortgage Loans, available to be drawn by the Mortgagors in respect of the Mortgage Loans to fund the completion of the construction or renovation projects (the "Additional Mortgagor Advances"). ABN asserts that under the Agreements the Sellers funded the Mortgagor Advances through the sale of the Mortgage Loans to ABN.

8.    ABN asserts, but the Debtors do not concede, that prior to the commencement of the Bankruptcy Cases, on or about August 1, 2007 and August 3, 2007, ABN delivered to Sellers and Servicer what ABN asserts to be notices of events of default under the Agreements (the "Default Notices").

9.    ABN asserts, but the Debtors do not concede, that on August 17, 2007, ABN delivered to Sellers a letter of that same date (the "Consent Letter") pursuant to which ABN consented to the Sellers' use of Post-Petition Collections (as that term is defined in paragraph 13 below) on a one-time basis, in an amount of up to $355,668.60, to make Additional Mortgagor Advances, to be governed in all respects by the Agreements and this Stipulation and such Order of the Court as may be entered thereon.

10.    The Parties enter into this Stipulation for the purposes of: (i) permitting, but not obligating, ABN to fund certain Additional Mortgagor Advances by Sellers, including but not limited to any Additional Mortgagor Advances made pursuant to the Consent Letter; and (ii) authorizing and directing ABN to make the Servicing Payments (as that term is defined in paragraph 17 below) to the Sellers for continued post-Petition Date servicing of the Mortgage Loans.

4

11.    Based upon the foregoing, the Parties hereby stipulate and agree as follows.

Agreements

12.    The Sellers hereby are authorized to make funding requests to ABN in the manner provided for in the Agreements in an amount not to exceed $32 million in the aggregate to fund Additional Mortgagor Advances by Sellers to Mortgagors under the Mortgage Contracts in respect of existing Mortgage Loans, and ABN hereby is authorized, but shall not be obligated, to fund such requested Additional Mortgagor Advances to Sellers in respect of existing Mortgage Loans in the manner set forth in paragraph 13 below.

13.    All "Collections," as that term is defined in the ABN MRA, received by any of the Sellers on and after the Petition Date (the "Post-Petition Collections") shall be deposited into the "Buyer Account," as required by and defined in the Account Control Agreement, or, alternatively, in a segregated Debtor in Possession account, to be disposed of as provided in the Agreements and this Stipulation; and Sellers shall account to ABN for all Collections received by any of the Sellers prior to the Petition Date and in the possession of the Debtors on the Petition Date, and all pre-Petition Date Collections now in the possession of the Debtors shall not be used by any of the Debtors for any purpose except pursuant to further order of the Court. ABN hereby is authorized to provide funds (but shall have no obligation to provide funds, and may at any time refuse to provide funds or refuse to continue to provide funds) to Sellers for the Additional Mortgagor Advances and is authorized and directed to make the Servicing Payments by: (a) written authorization to Sellers to use the Post-Petition Collections to fund the Mortgagor Advances and Servicing Payments; or (b) in the event there are insufficient Post-Petition Collections to fund the requested Mortgagor Advances or Servicing Payments, by making

5

transfers of funds to the Sellers pursuant to, and subject to all of the terms and conditions of, the Agreements and this Stipulation (clauses (a) and (b) collectively, the "ABN Advances").

14.    The ABN Advances shall be governed in all respects by the Agreements and this Stipulation; provided, however, that in the event of any inconsistency between the terms of the Agreements and the terms of this Stipulation, the terms of this Stipulation shall govern. All ABN Advances shall be used by the Sellers for the purpose of making Additional Mortgagor Advances under the applicable Mortgage Contract in respect of an existing Mortgage Loan or applied as Servicing Payments. In the event and to the extent that any of the Sellers does not use ABN Advances to fund Additional Mortgagor Advances or for Servicing Payments, such ABN Advances shall be returned to ABN within two business days after receipt by Sellers of a written request from ABN for return of such funds.

15.    The ABN Advances (but not including the Servicing Payments), to the extent they are new money and not derived from Post-Petition Collections, are not and shall not become "property of the estate," as such term is defined in section 541 of the Bankruptcy Code, of the Sellers or any other Debtor. Notwithstanding anything to the contrary in any other order of the Court, including but not limited to any order approving Debtor in Possession financing, the use of cash collateral, or the approval of cash management procedures and practices, none of the ABN Advances made to fund Additional Mortgagor Advances shall be used as, become or be deemed to constitute collateral for any outstanding or future obligation of the Debtors; provided, however, that such ABN Advances made to fund Additional Mortgagor Advances remain subject to the protective security interest provided for in Section 6 of the ABN MRA. Notwithstanding any provision to the contrary in this Stipulation, the ABN Advances shall not constitute a loan, advance or extension of credit to the Sellers or any other Debtor, and nothing contained herein

6

shall be deemed to grant to ABN an administrative expense or any other claim in respect of the ABN Advances; provided, however, that ABN preserves and reserves the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments already earned by the Sellers) applied or used by any of the Sellers in any manner inconsistent with the Agreements or this Stipulation.

16.    Notwithstanding any other provision in this Stipulation, ABN shall not, in respect of any ABN Advances or expenses incurred in connection with the transactions contemplated by this Stipulation, assert or seek to enforce: (a) an administrative or priority claim against any of the Debtors; (b) a lien against or security interest in any property of any Debtor's estate which constitutes "Pre-Petition Collateral" (as defined in the Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (together with any final order entered in connection therewith, the "Cash Collateral Order")) or "Collateral" (as defined in the Cash Collateral Order); or (c) any other lien against or security interest in any property of any Debtor's estate, other than and specifically excluding the protective security interest provided for in Section 6 of the ABN MRA.

17.    The Sellers have prepared the following budget ("Budget") for the remainder of calendar 2007 for servicing the Mortgage Loans and the other construction loans that the Sellers serviced prior to the Petition Date: for the month of August 2007, $168,036; for the month of September 2007, $164,436; for the month of October 2007, $161,196; for the month of November 2007, $195,107; and for the month of December 2007, $276,659. The Sellers hereby are authorized to submit monthly requests to ABN for payment of ABN's pro-rata share of the Budget, and ABN agrees, and hereby is authorized and directed, to make such payments (the

"Servicing Payments"); provided, however, that the Servicing Payments shall not exceed eighty percent of the monthly budgeted amounts stated in the immediately preceding sentence, and such Servicing Payments shall be due and payable only so long as the Sellers (or their successors or designees as allowed under the Agreements or pursuant to subsequent Court order) are servicing the Mortgage Loans, but in any event Sellers shall be paid the Servicing Payments for post-Petition Date services already provided. The term "pro rata" as used in this paragraph shall mean ABN's share of the total number of construction loans serviced by the Sellers (which the Parties presently believe is approximately 80%). ABN's agreement to pay such servicing costs shall be without prejudice to its rights under the Agreements (including its right to designate a replacement servicer) and the Default Notices, and shall not constitute a waiver, modification or amendment of any provision of the Agreements or the Default Notices. The Sellers agree to provide ABN with a monthly reconciliation of the actual servicing costs against the budgeted amounts stated in this paragraph, and the actual amounts due as Servicing Payments shall be adjusted accordingly based upon the agreements of the Parties or subsequent Court order, and prior written notice to counsel for the Consent Parties (as that term is defined in paragraph 23 below).

18.    The Sellers shall continue to provide ABN with reports on Collections, Mortgagor Advances and related matters in the same manner the Sellers accounted to ABN prior to the Petition Date in accordance with the Agreements.

19.    Each of the Parties, and all parties in interest in the Bankruptcy Cases, reserve all rights with respect to the Collections, including but not limited to the proper characterization and treatment of Collections under the Agreements.

8

20.    Nothing contained herein shall modify, terminate or transfer, or be deemed to effectuate a modification, termination or transfer of, the Sellers' rights, if any, to service or administer any mortgage loans and related activities.

21.    Each of the Parties reserves all rights with respect to the Agreements and the Default Notices, and nothing in this Stipulation is intended, or shall be deemed in any legal proceeding, to waive, amend or modify any provision of, or any rights of any Parties under, the Agreements or the Default Notices.

22.    The Mortgagors are not direct or third party beneficiaries of this Stipulation.

23.    This Stipulation may not be amended or modified except pursuant to a writing that is signed by all Parties and consented to by each of the Official Creditors Committee, the Administrative Agent under the Cash Collateral Order, and the administrative agent under any debtor-in-possession financing agreements then in effect (collectively the "Consent Parties"), and approved by the Court; provided however that in the absence of consent by all of the Consent Parties, the amendment or modification may be presented to the Court upon at least ten days prior written notice to counsel for the Consent Parties.

24.    Whether or not this Stipulation is approved by the Court, nothing contained herein may be used as, or deemed to be, an admission of liability of any of the Parties with respect to any matter.

25.    This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same document.

26.    The Parties hereto represent and warrant to each other that they are authorized to execute this Stipulation, that each has full power and authority to enter into and perform in accordance with the terms of this Stipulation, and that this Stipulation is duly executed and

9

delivered and constitutes a valid and binding agreement in accordance with its terms, subject, in all respects in the case of AHMA, AHMC, AHMI and AHMS, to Court approval.

27.    This Stipulation shall become effective immediately upon entry of an order approving the Stipulation.

Dated: August 21, 2007
        Wilmington, Delaware

ABN AMRO BANK N.V., by its counsel,

MILBANK, TWEED, HADLEY &
McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

    -and-

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., AMERICAN HOME
MORTGAGE CORP., AMERICAN HOME
MORTGAGE INVESTMENT CORP.,
ANERICAN HOME MORTGAGE
SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT &
TAYLOR LLP

Robert S. Brady (No. 2847)
Sharon M. Zieg (No. 4196)
Edwin J. Harron (No. 3396)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

SO ORDERED this ___22nd___ day of August, 2007.

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

10

**EXHIBIT B**

**Sale Procedures Stipulation**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case Nos. 07-11047 (CSS) |
| **HOLDINGS, INC., et al.,**[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

### STIPULATION BETWEEN CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING MARKETING AND SALE OF CERTAIN CONSTRUCTION LOANS AND SERVICING RIGHTS; AND ORDER THEREON

American Home Mortgage Acceptance, Inc., ("AHMA"), American Home Mortgage Corp. ("AHMC"), American Home Mortgage Investment Corp. ("AHMI"), and American Home Mortgage Servicing, Inc. ("AHMS") as Chapter 11 Debtors and Debtors in Possession on the one hand, and ABN AMRO Bank N.V. ("ABN") on the other hand (AHMA, AHMC, AHMI, AHMS and ABN, collectively, the "Parties"), hereby enter into this Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Marketing and Sale of Certain Construction Loans and Servicing Rights (the "Stipulation"), by and through their respective counsel of record, effective as of the date of entry of an order approving this Stipulation, based upon the following Recitals.

---

[1]  The Debtors and Debtors in Possession are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp. (individually, a "Debtor," and collectively, the "Debtors").

DB02:6236342.6

066585.1001

## Recitals

1.      On August 6, 2007 (the "Petition Date"), the Debtors commenced voluntary cases (the "Bankruptcy Cases") under chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

2.      ABN asserts that the Debtors that are Parties hereto – AHMA,  AHMC, AHMI, and AHMS (collectively, the "ABN MRA Debtors") – are parties to a Master Repurchase Agreement, dated as of February 28, 2007 (as such Agreement may have been supplemented and amended from time to time prior to the Petition Date, the "ABN MRA"), among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), and ABN, in its capacity as Agent for the "Purchasers" under the ABN MRA (defined as Buyer).

3.      ABN asserts that the ABN MRA Debtors, ABN, and others are parties or will become parties to a number of additional agreements related to the ABN MRA, including but not limited to the following existing agreements:

(a) a Custodial Agreement, dated as of February 28, 2007, among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), ABN (defined as Agent), and Deutsche Bank National Trust Company (defined as Custodian);

(b) an Account Control Agreement, dated as of February 28, 2007 (the "Account Control Agreement"), among the ABN MRA Debtors (defined  as Sellers), AHMS

2

(defined as Servicer), ABN (in its capacity as "Agent" for the "Purchasers," as defined in the ABN MRA), and Deutsche Bank National Trust Company (defined as Bank);

(c) an Electronic Tracking Agreement, dated as of February 28, 2007, among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), MERSCORP, Inc. (defined as Electronic Agent), Mortgage Electronic Registration Systems, Inc., and ABN (defined as Agent).

(d) a Letter Agreement, dated as of February 28, 2007 (the "Letter Agreement"), among the ABN MRA Debtors (defined as Sellers), AHMS (defined as Servicer), Amsterdam Funding Corporation (defined as the initial Conduit Purchaser), the other Conduit Purchasers from time to time, ABN (defined as a Committed Purchaser), the other Committed Purchasers from time to time, ABN as Group Agent for the ABN AMRO Group, the other Group Agents from time to time, and ABN as Agent for the Conduit Purchasers and the Committed Purchasers ; and

(e) a Performance Guaranty, dated as of February 28, 2007, among AHMI and American Home Mortgage Holdings, Inc. (defined as Performance Guarantors) in favor of ABN as Agent.

4.    The agreements referred to in paragraphs 3 and 4 (copies of which are attached to the Declaration of William J. Fitzgerald  at docket no. 34 in the Bankruptcy Cases) are referred to collectively hereinafter as the "ABN MRA Agreements."

5.    ABN asserts, but the Debtors do not concede, that the ABN MRA Agreements are agreements and transactions of the kind described in Bankruptcy Code § 101(47)

6.    ABN asserts, but the Debtors do not concede, that pursuant to the ABN MRA Agreements and during a five-month period prior to the Petition Date, ABN purchased

3

from ABN MRA Debtors approximately four hundred and thirty (430) mortgage loans in the original aggregate principal amount of approximately $222 million (such mortgage loans, collectively with all documentation evidencing such loans, the "Mortgage Loans"). The Mortgage Loans are residential construction loans made by the ABN MRA Debtors to mortgagors (the "Mortgagors") who are constructing or renovating single-family homes pursuant to mortgage contracts (the "Mortgage Contracts") between the ABN MRA Debtors and the Mortgagors. ABN asserts that as of July 31, 2007:    (a) the Mortgagors owed approximately $145 million in the aggregate in connection with advances made to the Mortgagors under the Mortgage Loans (the "Mortgagor Advances"); and (b) up to approximately $77 million in the aggregate in additional advances were, subject to the terms of the respective Mortgage Loans, available to be drawn by the Mortgagors in respect of the Mortgage Loans to fund the completion of the construction or renovation projects (the "Additional Mortgagor Advances"). ABN asserts that under the Agreements the ABN MRA Debtors funded the Mortgagor Advances through the sale of the Mortgage Loans to ABN.

7.    ABN asserts, but the Debtors do not concede, that prior to the commencement of the Bankruptcy Cases, on or about August 1, 2007 and August 3, 2007, ABN delivered to the ABN MRA Debtors what ABN asserts to have been notices of events of default under the ABN MRA Agreements (the "Default Notices"), pursuant to which Default Notices ABN asserts, but the Debtors do not concede, that the Termination Date and the Repurchase Date, as defined in the ABM MRA, occurred for each transaction under the ABN MRA Agreements and ABN designated AHMS to perform the duties of the Servicer until further notice pursuant to paragraph 13 of the Letter Agreement.

4

8.    The ABN MRA Debtors and ABN entered into that certain Stipulation Between Certain Debtors and ABN AMRO Bank N.V., dated August 21, 2007 (the "ABN Post-Petition Advances Stipulation"), for the purposes of, among other things: (a) permitting, but not obligating, ABN to fund certain Additional Mortgagor Advances by ABN MRA Debtors, including but not limited to any Additional Mortgagor Advances made pursuant to the Consent Letter (as that term is defined in paragraph 9 of the ABN Post-Petition Advances Stipulation); and (b) authorizing and directing ABN to make the Servicing Payments (as that term is defined in paragraph 17 of the ABN Post-Petition Advances Stipulation) to the Debtors for continued post-Petition Date servicing of the Mortgage Loans.  The Court entered its order approving the Stipulation on August 22, 2007 (the "Advances Order").

9.    The Parties enter into this Stipulation for the purposes of agreeing to:  (a) a process under which the Mortgage Loans and the rights to service such Mortgage Loans shall be marketed for sale and either sold pursuant to the highest and best bid or conveyed, transferred, quitclaimed, released and/or turned over and delivered to ABN for servicing, collection and disposition at ABN's own expense; (b) the treatment to be accorded to the proceeds of such sale; and (c) the consideration to be paid by ABN to the ABN MRA Debtors upon consummation of such sale to a third party or such conveyance, transfer, quitclaim, release, and/or turnover and delivery to ABN.

Based upon the foregoing, the Parties hereby stipulate and agree as follows:

## Agreements

10.    The Mortgage Loans and the rights to service such Mortgage Loans, including but not limited to the rights presently being exercised by ABN MRA Debtors under paragraph 13 of the Letter Agreement (the "Servicing Rights"), shall be marketed by the ABN

5

MRA Debtors and offered for sale pursuant to an auction process in conformity with Sale Procedures in the form attached hereto as Exhibit A and incorporated herein by this reference (the "Sale Procedures"). ABN irrevocably consents to the ABN MRA Debtors' conveyance, transfer, quitclaim, release, and/or turnover and delivery of the Mortgage Loans and Servicing Rights to a Successful Bidder or Next Highest Bidder (both as defined in the Sale Procedures) free and clear of any claims, rights or interests of ABN.

11.    Upon entry of a final order approving this Stipulation that becomes non-appealable, ABN shall be obligated to pay the ABN MRA Debtors $700,000.00 (the "ABN Payment"), which shall thereupon be indefeasibly earned and shall not be subject of any setoff or other defense by ABN.

12.    In the event that the Successful Bid (as defined in the Sale Procedures) for purchase of the Mortgage Loans and Servicing Rights is in an amount that is equal to or less than the sum of (i) the ABN Payment, plus (ii) the Repurchase Price (as defined in the ABN MRA; defined hereinafter as the "Payoff Amount") with respect to the Mortgage Loans and Servicing Rights as of the anticipated closing date on such Successful Bid, as estimated in good faith by ABN in a Payoff Demand delivered by ABN to the ABN MRA Debtors immediately prior to the Bid Deadline (as defined in the Sale Procedures) (the "Payoff Demand," and together with the ABN Payment, the "Hurdle Amount"), then ABN shall have the right, to be exercised in its sole discretion and without any obligation to consult with the Debtors or any other party in interest, either: (a) to notify and instruct the ABN MRA Debtors to accept the bid that ABN determines to be the highest and best bid (the "Mandatory Sell Bid"); or (b) to notify and instruct the ABN MRA Debtors not to accept such bid (the "ABN Put Right").

6

13.     In the event that a Qualified Bid for the purchase of the Mortgage Loans and Servicing Rights, whether made prior to the Bid Deadline or at the Auction (as defined in the Bid Procedures), is in an amount that is greater than the Hurdle Amount (a "Topping Bid"), then: (a) the ABN Put Option shall expire; and (b) the ABN MRA Debtors shall have the obligation to designate as the Successful Bid (or the Next Highest Bid, if applicable) the Topping Bid or, after consultation with the Consent Parties and ABN, such other Qualified Bid made at the Auction as may be higher than the Topping Bid.

14.     Upon consummation of a Mandatory Sell Bid in accordance with paragraph 12 (a) above: (a) the ABN MRA Debtors shall receive from the escrow account holding the Minimum Deposit (as defined in the Sale Procedures) the ABN Payment; and (b) ABN shall receive, if and only if the ABN Payment has been paid in full, (i) all funds remaining in such escrow account, plus (ii) payment directly from the purchaser by wire transfer of an amount equal to the difference between the purchase price in the Mandatory Sell Bid and the Minimum Deposit.

15.     Upon consummation of a Successful Bid (or a Next Highest Bid, if applicable) in accordance with paragraph 13 above: (a) the ABN MRA Debtors shall receive from the escrow account holding the Minimum Deposit the sum of (i) the ABN Payment, plus (ii) all funds, if any, remaining in such escrow account, but in an amount not to exceed the amount by which the purchase price in the Successful Bid (or the Next Highest Bid, if applicable) exceeds the Hurdle Amount; and (b) ABN shall receive the sum of (i) all funds, if any, remaining in such escrow account after distribution to the ABN MRA Debtors of the amounts identified in subsection (a) above, plus (ii) payment directly from the purchaser by wire transfer of an amount equal to the difference between the purchase price in the Successful Bid

7

(or the Next Highest Bid, if applicable) and the Minimum Deposit (the aggregate of (b)(i) and (b)(ii), the "ABN Receipt"); and (c) ABN shall pay to the ABN MRA Debtors, within two business days after the close of escrow, the amount, if any, by which the ABN Receipt exceeds the Payoff Demand. At such time after the closing of escrow that ABN reconciles and determines the actual Payoff Amount, ABN shall pay to the ABN MRA Debtors, or the ABN MRA Debtors shall pay to ABN, whichever is appropriate, the difference, if any, between such actual Payoff Amount and the Payoff Demand, which shall be paid as soon as practicable after the closing.

16.    In no event shall this Stipulation be construed to permit ABN to recover on account of the ABN MRA Agreements and the ABN Post-Petition Advances Stipulation an amount in excess of the sum of (a) the ABN Payment, and (b) the Payoff Amount, whether from the proceeds of the sale of, or forfeiture of any Minimum Deposit related to, the Mortgage Loans and Servicing Rights or otherwise.

17.    In the event ABN exercises the ABN Put Right in accordance with paragraph 12 (b) above, then, without further Court order: (a) within two business days after exercising such ABN Put Right, ABN shall deliver to the ABN MRA Debtors the ABN Payment; and (b) no later than 20 business days following exercise of such ABN Put Right, or such later date as may be agreed to by the Parties, the ABN MRA Debtors shall convey, transfer, quitclaim, release, and/or turnover and deliver to ABN all of the ABN MRA Debtors' rights to and possession of the Mortgage Loans and the Servicing Rights, free and clear of the claims or interests of the Debtors and any and all other parties in interest in the Bankruptcy Cases (other than any rights of Purchasers under the ABN MRA, but solely with respect to their interests as Purchasers).

8

18.    In the event that no Qualified Bid for the purchase of the Mortgage Loans and Servicing Rights is received on or before the Bid Deadline, then, without further Court order: (a) within two business days after the Bid Deadline, ABN shall deliver to the ABN MRA Debtors the ABN Payment; and (b) no later than 20 business days after the Bid Deadline, or such later date as may be agreed to by the Parties, the ABN MRA Debtors shall convey, transfer, quitclaim, release, and/or turnover and deliver to ABN all of the ABN MRA Debtors' rights to and possession of the Mortgage Loans and the Servicing Rights, free and clear of the claims or interests of the Debtors and any and all other parties in interest in the Bankruptcy Cases (other than any rights of Purchasers under the ABN MRA, but solely with respect to their interests as Purchasers).

19.    Proceeds of the sale of Assets (as defined in the Sale Procedures) that are not proceeds of the Sale of the Mortgage Loans and Servicing Rights shall not be affected by this Stipulation.

20.    The sale of the Mortgage Loans and the Servicing Rights to the prevailing bidder as determined pursuant to paragraphs 12(a) or 13 above shall be free and clear of the liens, claims, or ownership or other interests of ABN, and upon either consummation of such a sale or the ABN MRA Debtors' conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN pursuant to paragraphs 12(b) or 17 above, ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then

9

remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the ABN Post-Petition Advances Stipulation, or the Advances Order, and the Debtors reserve the right to object to or contest the exercise of such retained right.

21.     Pending the entry of an order of the Court approving this Stipulation, nothing contained in this Stipulation shall modify, terminate or transfer, or be deemed to effectuate a modification, termination or transfer of, the ABN MRA Debtors' rights, if any, to service or administer Mortgage Loans, the ownership interest asserted by ABN in all Collections (as that term is defined in the ABN MRA) on deposit from time to time in accounts held in the name of one or more of the Debtors, and the respective rights of all Parties under the ABN MRA Agreements, the Default Notices, the ABN Post-Petition Advances Stipulation, and the Advances Order. To that end, pending the entry of an order of the Court approving this Stipulation, each of the Parties reserves all of its rights with respect to the ABN MRA Agreements, the Default Notices, the ABN Post-Petition Advances Stipulation, and the Advances Order, and nothing in this Stipulation is intended, or shall be deemed in the Bankruptcy Cases or any legal proceeding, to waive, amend or modify any provision of, or any rights of any Parties under, the ABN MRA Agreements, the Default Notices, the ABN Post-Petition Advances Stipulation, or the Advances Order; provided, however, that upon entry of a final order of the Court approving this Stipulation that has become non-appealable, this Stipulation and the agreements contained herein shall be binding upon the Parties in all respects.

22.     The Mortgagors are not direct or third party beneficiaries of this Stipulation.

23.     This Stipulation may not be amended or modified except pursuant to a writing that is signed by all Parties and consented to by each of the Committee, the

DB02:6236342.6                                                                066585.1001

Administrative Agent under the Court's Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties entered September 4, 2007, and the Administrative Agent under the Final Order Pursuant to Sections 105(a), 362 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (A) Approving Debtor-In-Possession Financing, (B) Granting Liens and Granting Superpriority Administrative Claims and (C) Granting Related Relief (collectively the "Consent Parties"), and the agent for the Debtors' post-petition lenders, and approved by the Court; provided, however, that in the absence of consent by all of the Consent Parties, the amendment or modification may be presented to the Court for approval upon at least three days prior written notice to counsel for the Consent Parties.

24.     Whether or not this Stipulation is approved by the Court, nothing contained herein may be used as, or deemed to be, an admission of liability of any of the Parties with respect to any matter. In the event that this Stipulation is not approved by the Court, the Parties automatically shall revert to the pre-settlement positions.

25.     This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same document.

26.     The Parties hereto represent and warrant to each other that, subject to entry in the Bankruptcy Cases of an order approving this Stipulation, they are authorized to execute this Stipulation, each has full power and authority to enter into and perform in accordance with the terms of this Stipulation, and this Stipulation is duly executed and delivered and constitutes a valid and binding agreement in accordance with its terms.

11

27.    This Stipulation shall become effective immediately upon entry of an

order approving the Stipulation.

Dated:  August 21, 2007
Wilmington, Delaware

ABN AMRO BANK N.V., by its counsel,

MILBANK, TWEED, HADLEY &
McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

and

RICHARDS, LAYTON & FINGER, P.A.

_____/s/ Mark. D. Collins_____
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC.,  AMERICAN HOME
MORTGAGE CORP., AMERICAN HOME
MORTGAGE INVESTMENT CORP.,
AMERICAN HOME MORTGAGE
SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT &
TAYLOR LLP

_____
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253

**IT IS SO ORDERED,**

This 4th day of October, 2007.

_____
The Honorable Christopher S. Sontchi,
United States Bankruptcy Judge

12

## EXHIBIT C

**Second Post-Petition Advances Stipulation**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case Nos. 07-11047 (CSS) |
| **HOLDINGS, INC., et al.,** | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## SECOND STIPULATION BETWEEN CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING POST-PETITION ADVANCES AND SALE OF CONSTRUCTION LOAN PORTFOLIO; ORDER THEREON

American Home Mortgage Acceptance, Inc., American Home Mortgage Corp.,

American Home Mortgage Investment Corp., and American Home Mortgage Servicing, Inc.

(collectively, the "AHM MRA Debtors") as chapter 11 debtors and debtors in possession on the

one hand, and ABN AMRO Bank N.V. ("ABN") on the other hand (the AHM MRA Debtors

and ABN, collectively, the "Parties"), hereby enter into this "Second Stipulation Between

Certain Debtors and ABN AMRO Bank N.V. Regarding Post-Petition Advances and Sale of

Construction Loan Portfolio" (the "Second Stipulation"), by and through their respective counsel

of record, effective as of the date of entry of an order approving this Second Stipulation, based

upon the following Recitals.

### Recitals

1.    On August 6, 2007 (the "Petition Date"), the Debtors[1] commenced

voluntary cases (the "Bankruptcy Cases") under chapter 11 of Title 11, United States Code, 11

U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the

---

[1]    The Debtors and Debtors in Possession are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp. (individually, a "Debtor," and collectively, the "Debtors").

District of Delaware (the "Court"). The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an official committee of unsecured creditors.

2.    On August 22, 2007, the AHM MRA Debtors and ABN entered into the "Stipulation Between Certain Debtors and ABN AMRO Bank N.V.; Order Thereon" (the "Post-Petition Advances Stipulation"), pursuant to which, among other things, ABN agreed to fund certain Additional Mortgagor Advances in connection with the Mortgage Loans that are the subject of the Master Repurchase Agreement, dated as of February 28, 2007, between the AHM MRA Debtors and ABN, and to fund certain Servicing Payments, as each of those capitalized terms are described and defined in the Post-Petition Advances Stipulation. The Court entered its order approving the Post-Petition Advances Stipulation on August 22, 2007 (docket no. 284).

3.    On or about September 21, 2007, ABN and the AHM MRA Debtors entered into the "Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Marketing and Sale of Certain Construction Loans and Servicing Rights; and Order Thereon" (the "Sale Procedures Stipulation"), pursuant to which, among other things, the AHM MRA Debtors and ABN: (a) agreed on the procedures under which the Mortgage Loans that were the subject of the Master Repurchase Agreement would be marketed and sold; (b) agreed that, upon entry of an order approving the Sale Procedures Stipulation, ABN would be obligated to pay the AHM MRA Debtors the ABN Payment (as defined in the Sale Procedures Stipulation) in the amount of $700,000, and (c) further agreed (as provided in paragraph 20 of the Sale Procedures Stipulation) that "upon…the ABN MRA Debtors' conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to

2

ABN pursuant to paragraphs 12(b) or 17... [of the Sale Procedures Stipulation], ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the ABN Post-Petition Advances Stipulation, or the Advances Order, and the Debtors reserve the right to object to or contest the exercise of such retained right" (the "Waiver of Claims Provision").

4.     On October 4, 2004, the Court entered its order approving the Sale Procedures Stipulation (docket no. 1176), and entered a related order approving the sales procedures (docket no. 1175).

5.     An auction for the Mortgage Loans was scheduled for October 29, 2007. Only one bid for the Mortgage Loans was received by the Bid Deadline from a Qualified Bidder, and the Debtors filed a notice with the Court cancelling the auction (docket no. 1695), and notified the parties.

6.     Paragraphs 17 and 18 of the Sale Procedures Stipulation provided that if there were no Qualified Bidder for the Mortgage Loans, or if ABN exercised its right to notify the AHM MRA Debtors not to accept the Successful Bid at the Auction, then: (a) ABN would pay to AHM the $700,000 ABN Payment; and (b) within twenty business days of the Bid Deadline or such later date that the parties might agree to, the AHM MRA Debtors would transfer, convey and turn over to ABN all of the AHM MRA Debtors' rights in and to the Mortgage Loans.

7.     On November 8, 2007, ABN made the ABN Payment.

8.     ABN has requested that the applicable twenty business day deadline in paragraphs 17 or 18 of the Sale Procedures Stipulation be extended to provide ABN additional time to find a substitute servicer and/or transferee with respect to the Mortgage Loans.  The AHM MRA Debtors have agreed to use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through the remainder of calendar 2007 and the first quarter of calendar 2008, as long as ABN (i) continues to make Additional Mortgagor Advances and Servicing Payments in accordance with the provisions of the Post-Petition Advances Stipulation (as amended and supplemented herein), and (ii) agrees the Waiver of Claims Provision shall be effective pursuant to paragraph 15 below.

9.     Attached hereto as Exhibit A and incorporated herein by reference is the Debtor's budget for the servicing of the Debtors' construction loan portfolio for  first quarter of calendar 2008 (the "2008 Budget").

10.    Based upon the foregoing, the Parties hereby stipulate and agree as follows.

### Agreements

11.    Each of the Recitals contained in paragraphs 2 through 10 of the Post-Petition Advances Stipulation and each of the Recitals contained in paragraphs 2 through 9 of the Sale Procedures Stipulation are incorporated herein by this reference, and, unless amended herein, the Agreements contained in those two stipulations shall remain in full force and effect.

12.    Paragraph 12 of the Post-Petition Advances Stipulation is hereby amended to increase the reference therein from "$32 million" to "$70 million."

DB02:6360681.7

066585.1001

13.     ABN shall pay its pro-rata share of the 2008 Budget amounts, as the term "pro-rata" is used in the Post-Petition Advances Stipulation, on the same terms as provided for payment of the Budget amounts in the Post-Petition Advances Stipulation.

14.     The turnover of the AHM MRA Debtors' rights in and to the Mortgage Loans to ABN as provided in paragraphs 17 and 18 of the Sale Procedures Stipulation shall: (a) be conditioned upon ABN's performance of each of the payment obligations contained in the Post-Petition Advances Stipulation and this Second Stipulation, and (b) occur on the first business day that is fifteen calendar days after ABN provides written notice to the AHM MRA Debtors and their counsel that it has obtained an acceptable substitute servicer and/or transferee (or such later date as the AHM MRA Debtors and ABN may mutually agree to), and upon such transfer and substitution of servicer, ABN shall no longer be obligated to make any further Servicing Payments.  In the event the AHM MRA Debtors are unable to keep in place the construction loan servicing group to service the Mortgage Loans despite their reasonably commercial efforts to keep the construction loan servicing group in place, then AHM MRA Debtors shall provide written notice (in advance of discontinuing service, but only if practicable) to ABN of the last day they will be servicing the Mortgage Loans (after which the AHM MRA Debtors shall have no obligation to service the Mortgage Loans), and the parties thereupon shall effectuate the conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN.

5

15. On the date the Debtors convey, transfer, quit claim, release and/or turnover and deliver possession of the Mortgage Loans and Servicing Rights to ABN pursuant to the terms of this Second Stipulation, ABN hereby shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the ABN Post-Petition Advances Stipulation, the Advances Order, or this Second Stipulation, and the Debtors reserve the right to object to or contest the exercise of such retained right.

16. This Second Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

17. The Parties hereto represent and warrant to each other that, subject to entry of an order approving this Second Stipulation, they are authorized to execute this Second Stipulation, each has full power and authority to enter into and perform in accordance with the terms of this Second Stipulation, and this Second Stipulation is duly executed and delivered and constitutes a valid and binding agreement in accordance with its terms.

18.    This Second Stipulation shall become effective immediately upon entry of

an order approving the Second Stipulation.

Dated: December 3, 2007
       Wilmington, Delaware

ABN AMRO BANK N.V.,
by its counsel,

MILBANK, TWEED, HADLEY &
McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

       -and-

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., AMERICAN HOME
MORTGAGE CORP., AMERICAN HOME
MORTGAGE INVESTMENT CORP.,
AMERICAN HOME MORTGAGE
SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT &
TAYLOR LLP

M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

7

## EXHIBIT D

**Proposed Form of Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------- x
In re:                                          :    Chapter 11
                                                :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,          :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                 :
                                                :    Jointly Administered
        Debtors.                                :
                                                :    Docket Ref. No.
-------------------------------------------------------------------- x
```

### ORDER APPROVING AND AUTHORIZING THIRD STIPULATION BETWEEN CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING: (1) POST-PETITION ADVANCES; (2) SERVICING PAYMENTS; AND (3) MORTGAGE LOAN REFINANCINGS

Upon consideration of the motion (the "Motion")[1] of American Home Mortgage

Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect

affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively,

"AHM" or the "Debtors"),[2] seeking the issuance of an order, pursuant to Bankruptcy Rule 9019

and sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code, approving the Third

Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding (1) Post-Petition

Advances; (2) Servicing Payments; and (3) Mortgage Loan Refinancings (the "Third Post-

Petition Advances Stipulation") by and among the certain of the Debtors and ABN AMRO Bank

N.V. ("ABN"); and due and sufficient notice of the Motion having been given; and it appearing

that the relief requested in the Motion is in the best interest of the Debtors, their estates and

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

creditors; and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED, that the relief requested in the Motion is hereby granted; and it is

further

ORDERED, that the Third Post-Petition Advances Stipulation attached hereto as

Exhibit 1 is approved pursuant to sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy

Code and Bankruptcy Rule 9019, and the Debtors are authorized to take all actions required or

authorized under the Third Post-Petition Advances Stipulation; and it is further

ORDERED, that this Court shall retain jurisdiction to hear any and all disputes

arising out of the implementation of this Order.

Dated:  Wilmington, Delaware
        _____, 2008


                                        _____
                                        Christopher S. Sontchi
                                        United States Bankruptcy Judge

**EXHIBIT 1**

**Third Post-Petition Advances Stipulation**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case Nos.  07-11047 (CSS) |
| **HOLDINGS, INC., et al.,** | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

### THIRD STIPULATION BETWEEN CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING: (1) POST-PETITION ADVANCES; (2) SERVICING PAYMENTS; AND (3) MORTGAGE LOAN REFINANCINGS

American Home Mortgage Acceptance, Inc.,  American Home Mortgage Corp., American Home Mortgage Investment Corp., and American Home Mortgage Servicing, Inc. (collectively, the "AHM MRA Debtors") as chapter 11 debtors and debtors in possession on the one hand, and ABN AMRO Bank N.V. ("ABN" ) on the other hand (the AHM MRA Debtors and ABN, collectively, the "Parties"), hereby enter into this "Third Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding: Post-Petition Advances; (2) Servicing Payments; and (3) Loan Refinancings" (the "Third Post-Petition Advances Stipulation"), by and through their respective counsel of record, effective as of the date of entry of an order approving this Third Post-Petition Advances Stipulation, based upon the following Recitals.

### Recitals

1.    On August 6, 2007 (the "Petition Date"), the Debtors[1] commenced voluntary cases (the "Bankruptcy Cases") under chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the

---

[1]     The Debtors and Debtors in Possession are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp. (individually, a "Debtor," and collectively, the "Debtors").

DB02:6557875.6                                                                                          066585.1001

District of Delaware (the "Court"). The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an official committee of unsecured creditors.

2.      On August 22, 2007, the AHM MRA Debtors and ABN entered into the "Stipulation Between Certain Debtors and ABN AMRO Bank N.V.; Order Thereon" (the "First Post-Petition Advances Stipulation"), pursuant to which, among other things, ABN agreed to fund certain Additional Mortgagor Advances in connection with the construction loans and the conventional mortgages (collectively, the "Mortgage Loans") that are the subject of the Master Repurchase Agreement, dated as of February 28, 2007, between the AHM MRA Debtors and ABN, and to fund certain Servicing Payments, as each of those capitalized terms are described and defined in the First Post-Petition Advances Stipulation. The Court entered its order approving the First Post-Petition Advances Stipulation on August 22, 2007 (docket no. 284).

3.      On or about September 21, 2007, ABN and the AHM MRA Debtors entered into the "Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Marketing and Sale of Certain Construction Loans and Servicing Rights; and Order Thereon" (the "Sale Procedures Stipulation"), pursuant to which, among other things, the AHM MRA Debtors and ABN agreed on the procedures under which the Mortgage Loans that were the subject of the Master Repurchase Agreement would be marketed and sold; (b) agreed that, upon entry of an order approving the Sale Procedures Stipulation, ABN would be obligated to pay the AHM MRA Debtors the ABN Payment (as defined in the Sale Procedures Stipulation) in the amount of $700,000, and (c) further agreed (as provided in paragraph 20 of the Sale Procedures Stipulation) that "upon . . . the ABN MRA Debtors' conveyance, transfer, quitclaim, release,

2

and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN pursuant to paragraphs 12(b) or 17 [of the Sale Procedures Stipulation] . . . , ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the ABN [First] Post-Petition Advances Stipulation, or the Advances Order, and the Debtors reserve the right to object to or contest the exercise of such retained right" (the "Waiver of Claims Provision").

4.      On October 4, 2007, the Court entered its order approving the Sale Procedures Stipulation (docket no. 1176), and entered a related order approving the sales procedures (docket no. 1175).

5.      An auction for the Mortgage Loans was scheduled for October 29, 2007. Only one bid for the Mortgage Loans was received by the Bid Deadline from a Qualified Bidder, and the Debtors filed a notice with the Court cancelling the auction (docket no. 1695), and notified the parties.

6.      Paragraphs 17 and 18 of the Sale Procedures Stipulation provided that if there were no Qualified Bidder for the Mortgage Loans, or if ABN exercised its right to notify the AHM MRA Debtors not to accept the Successful Bid at the Auction, then: (a) ABN would pay to AHM the $700,000 ABN Payment; and (b) within twenty business days of the Bid Deadline or such later date that the parties might agree to, the AHM MRA Debtors would

3

transfer, convey and turn over to ABN all of the AHM MRA Debtors' rights in and to the Mortgage Loans.

       7.     On November 8, 2007, ABN made the ABN Payment.

       8.     On December 3, 2007, ABN and the AHM MRA Debtors entered into the "Second Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Post-Petition Advances and Sale of Construction Loan Portfolio; Order Thereon" (the "Second Post-Petition Advances Stipulation"), pursuant to which the AHM MRA Debtors agreed to use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through March 31, 2008, and ABN agreed to continue making Additional Mortgagor Advances in an amount up to $70 million and to make Servicing Payments as provided in the budget attached to the Second Post-Petition Advances Stipulation.

       9.     On December 12, 2007, the Court entered its "Order Approving Second Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Post-Petition Advances and Sale of Construction Loan Portfolio; Order Thereon," (docket no. 2355) approving the Second Post-Petition Advances Stipulation.

      10.    Due to regulatory issues delaying ABN's request that the AHM MRA Debtors turnover their rights in and to the Mortgage Loans to ABN as provided in the Sale Procedures Stipulation and Second Post-Petition Advances Stipulation, ABN has requested that the Debtors keep the construction loan servicing group in place through June 30, 2008 to service the remaining Mortgage Loans, and to offer certain refinancing incentives to the borrowers under those Mortgage Loans at ABN's expense, and the Debtors have agreed to do so subject the terms of this Third Post-Petition Advances Stipulation and approval thereof by the Court.

4

11.    Attached hereto as Exhibit A and incorporated herein by reference is the Debtor's budget for the servicing of the Debtors' construction loan portfolio for second quarter of calendar 2008 (the "2008 Budget").

12.    Based upon the foregoing, the Parties hereby stipulate and agree as follows.

### Agreements

13.    Each of the Recitals contained in (i) paragraphs 2 through 10 of the First Post-Petition Advances Stipulation, (ii) paragraphs 2 through 9 of the Sale Procedures Stipulation, and (iii) paragraphs 2 through 9 of the Second Post-Petition Advances Stipulation are incorporated herein by this reference, and, unless amended herein, the Agreements contained in those three stipulations shall remain in full force and effect.

14.    Paragraph 12 of the First Post-Petition Advances Stipulation is hereby amended to increase the reference therein from "$32 million" to "$70 million" (the same $70 million amount that governed the Second Post-Petition Advances Stipulation). ABN shall continue to fund certain Additional Mortgagor Advances and Servicing Payments (as such terms are defined in the First Post-Petition Advances Stipulation) in connection with the Mortgage Loans in accordance with the terms of the First Post-Petition Advances Stipulation and the Second Post-Petition Advances Stipulation.

15.    ABN shall pay its pro-rata share of the 2008 Budget amounts, as the term "pro-rata" is used in the first Post-Petition Advances Stipulation, on the same terms as provided for payment of the Budget amounts in the First Post-Petition Advances Stipulation.

16.    The Debtors shall use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through June 30, 2008.

DB02:6557875.6                    066585.1001

provided, that, ABN (i) continues to make Additional Mortgagor Advances and Servicing Payments in accordance with the provisions of the First Post-Petition Advances Stipulation and the Second Post-Petition Advances Stipulation; and (ii) that nothing herein shall nullify or otherwise effect the Waiver of Claims Provision pursuant to paragraph 15 of the Second Post-Petition Advances Stipulation.

17.     ABN shall fund all of the Debtors' obligations under a new stay and incentive bonus plan, the terms of which are described in this Stipulation (the "Bonus Plan"), for the employees working in the construction loan servicing group (the "Construction Loan Employees"), in an amount not to exceed $450,000 (the "Bonus Pool"), which Bonus Plan is designed to motivate the Construction Loan Employees to negotiate and effectuate compromises of the (i) Mortgage Loans and (ii) the construction loans the Debtors received the authority to compromise by Order dated February 1, 2008 (docket no. 2860) (the "Construction Loans").

18.     Under the incentive portion of the Bonus Plan, the Construction Loan Employees will be entitled to receive payments from the Bonus Pool if the following milestones are reached:  (i) a 60% reduction of the aggregate unpaid principal balance ("UPB") of the Mortgage Loans and the Construction Loans (the "60% Milestone"); (ii) a 80% reduction of the aggregate UPB of the Mortgage Loans and the Constructions Loans (the "80% Milestone"); and (iii) a 90% reduction of the aggregate UPB of the Mortgage Loans and the Construction Loans (the "90% Milestone").  The aggregate UPB of the Mortgage Loans for purposes of determining the 60% Milestone, 80% Milestone and the 90% Milestone shall be the aggregate UPB of the Mortgage Loans and the Construction Loans as of close of business on February 8, 2008.

19.     If the 60% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 10% of their allocated portion of the Bonus Pool

for the incentive portion of the Bonus Plan. If the 60% Milestone is reached, Karen Gowins will be entitled to receive 20% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

20.     If the 80% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 15% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan. If the 80% Milestone is reached, Karen Gowins will be entitled to receive 30% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

21.     If the 90% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 25% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan. If the 90% Milestone is reached, Karen Gowins will be entitled to receive 50% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

22.     Under the stay portion of the Bonus Plan, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive their allocated portion of the Bonus Pool provided that they remain employed by the Debtors, and they are not terminated for cause by the Debtors, through the earlier of June 30, 2008 or the date each of the Mortgage Loans and Construction Loans are compromised or the Debtors determine that no additional Mortgage Loans and Construction Loans will be compromised.

23.     In the event (i) the AHM MRA Debtors are unable to keep in place the construction loan servicing group through June 30, 2008 or the completion of the compromises of all the Mortgage Loans and Construction Loans, or (ii) ABN exercises its rights in and to the Mortgage Loans to request the turnover of the AHM MRA Debtors' rights in and to the

7

Mortgage Loans to ABN as provided in paragraphs 17 and 18 of the Sale Procedures Stipulation (as modified by the Second Post-Petition Advances Stipulation) prior to June 30, 2008 or the completion of the compromises of all the Mortgage Loans and Construction Loans, ABN shall be obligated for the pro-rated portion of the Bonus Pool related to the incentive portion of the Bonus Plan and 100% of the portion of the Bonus Pool related to the stay portion of the Bonus Plan. For example, if only a 30% reduction of the UPB of the Mortgage Loans and the Construction Loans has been obtained, ABN will be obligated to fund ½ of the Bonus Pool allocated to the 60% Milestone and 100% of the Bonus Pool allocated to the stay portion of the Bonus Plan.

24.    The turnover of the AHM MRA Debtors' rights in and to the Mortgage Loans to ABN as provided in paragraphs 17 and 18 of the Sale Procedures Stipulation shall: (a) be conditioned upon ABN's performance of each of the payment obligations contained in the First and Second Post-Petition Advances Stipulations and this Third Post-Petition Advances Stipulation, and (b) occur on the first business day that is fifteen calendar days after ABN provides written notice to the AHM MRA Debtors and their counsel that it has obtained an acceptable substitute servicer and/or transferee (or such later date as the AHM MRA Debtors and ABN may mutually agree to), and upon such transfer and substitution of servicer, ABN shall no longer be obligated to make any further Servicing Payments. In the event the AHM MRA Debtors are unable to keep in place the construction loan servicing group to service the Mortgage Loans despite their reasonably commercial efforts to keep the construction loan servicing group in place, then the AHM MRA Debtors shall provide written notice (in advance of discontinuing service, but only if practicable) to ABN of the last day they will be servicing the Mortgage Loans (after which the AHM MRA Debtors shall have no obligation to service the Mortgage Loans),

and the parties thereupon shall effectuate the conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN.

     25.    On the date the Debtors convey, transfer, quit claim, release and/or turnover and deliver possession of the Mortgage Loans and Servicing Rights to ABN pursuant to the terms of the Third Post-Petition Advances Stipulation, ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the First Post-Petition Advances Stipulation, the Advances Order, the Second Post-Petition Advances Stipulation or the Third Post-Petition Advances Stipulation, and the Debtors reserve the right to object to or contest the exercise of such retained right.

     26.    ABN authorizes and requests that the Debtors offer principal reductions and similar incentives to borrowers under the Mortgage Loans to encourage such borrowers to refinance their loans with other lenders such incentives to be agreed upon between the Debtors and ABN, and all such incentives, in whatever form, to be entirely a cost of ABN and not the Debtors or their estates.  Upon the closing of any such refinancing of a Mortgage Loan and the distribution of the net proceeds thereof to ABN, the releases and waivers of claims contained in the Waiver of Claims Provision (referred to in Paragraph 3 herein) shall immediately apply to each such refinanced Mortgage Loan.

DB02:6557875.6

066585.1001

27.    Upon completion of the compromise of all the Mortgage Loans and the Construction Loans or determination by the Debtors that no other Mortgage Loans or Construction Loans will be compromised, the Debtors will file a report (the "Report").  The Report will identify (i) each Mortgage Loan or Construction Loan by loan number that has been compromised, (ii) the amount of the unpaid principal balance as of the date of compromise of each compromised Mortgage Loan or Construction Loan, and (iii) the amount of the compromised unpaid principal balance of each Mortgage Loan or Construction Loan.  ABN consents to the Debtors filing the Report and, if requested, will support a request by the Debtors to the filing of the Report under seal.

28.    This Third Post-Petition Advances Stipulation is subject to approval by the Court.

29.    The Debtors reserve the right to withdraw consideration of the Third Post-Petition Advances Stipulation at any time and in their sole discretion.

30.    This Third Post-Petition Advances Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

31.    The Parties hereto represent and warrant to each other that, subject to entry of an order approving this Third Post-Petition Advances Stipulation, they are authorized to execute this Third Post-Petition Advances Stipulation, each has full power and authority to enter into and perform in accordance with the terms of this Third Post-Petition Advances Stipulation, and this Third Post-Petition Advances Stipulation is duly executed and delivered and constitutes a valid and binding agreement in accordance with its terms.

DB02:6557875.6                                        066585.1001

32.    This Third Post-Petition Advances Stipulation shall become effective

immediately upon entry of an order approving the Third Post-Petition Advances Stipulation.

Dated:  February 13, 2008
            Wilmington, Delaware

ABN AMRO BANK N.V.,
by its counsel,

MILBANK, TWEED, HADLEY &
McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:     (213) 629-5063

and

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., AMERICAN HOME
MORTGAGE CORP., AMERICAN HOME
MORTGAGE INVESTMENT CORP.,
AMERICAN HOME MORTGAGE
SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

11

## EXHIBIT A

**2008 Budget**

**Exhibit A**
**American Home Mortgage**
CTP Group Budget per the Third Stipulation Between Certain Debtors and ABN AMRO Bank N.V.

|  | Jan-08 | Feb-08 | Mar-08 | Apr-08 | May-08 | Jun-08 |
|---|---|---|---|---|---|---|
| **Projected Expenses** | | | | | | |
| Inspections | $ 9,700 | $ 5,700 | $ 6,500 | $ 6,300 | $ 5,100 | $ 2,400 |
| Title Updates | 6,305 | 3,705 | 4,225 | 4,095 | 3,315 | 1,560 |
| Data Processing | 600 | 600 | 600 | 600 | 600 | 600 |
| Overnight & Postage | 150 | 150 | 100 | 100 | 75 | 50 |
| Facilities | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | |
| Salaries | 76,918 | 70,125 | 63,333 | 63,333 | 63,333 | 63,333 |
| EIP Bonus[1] | 0 | 77,350 | 40,600 | 75,000 | 67,000 | 45,000 |
| Benefits | 6,000 | 6,000 | 5,000 | 5,000 | 5,000 | 4,500 |
| Misc | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | | | | | | |
| Total Expenses | $104,673 | $168,630 | $125,358 | $159,428 | $149,423 | $122,443 |

1) Subject to confirmation of targets being obtained and funding has occurred by AHM.