## EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------------- x
In re:                                 :    Chapter 11

                                      :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,  :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                  :
                                      :    Jointly Administered
      Debtors.                        :
                                      :    **Doc. Ref. No. 137**
--------------------------------------------------------------------- x

**ORDER, PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY LEASES AND THE SALE OF FURNITURE, FIXTURES AND EQUIPMENT LOCATED THEREIN; (II) APPROVING THE TERMS OF THE LETTER AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[1] of American Home Mortgage

Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect

affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively,

"AHM" or the "Debtors"),[2] for entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of

the United States Code (the "Bankruptcy Code") (i) authorizing the sale of certain assets (the "Office

Assets"), including the assumption and assignment of certain real property leases (the "Office Leases")

and the sale of furniture, fixtures, and equipment contained therein (the "FFE"), to Indymac Bank

F.S.B. ("IMB") or other party submitting a higher or better offer; (ii) approving the terms of the letter

agreement dated August 7, 2007, by and between the Debtors and IMB, attached hereto as Exhibit 1

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

*, with the exception of leased equipment*

                                                066585.1001

(the "Letter Agreement"); and (iii) granting related relief; and the Court having reviewed the Letter Agreement, and upon the record of the hearing held on August 24, 2007; and after due deliberation and sufficient cause appearing therefor, the Court hereby makes the following:

FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

A.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

C.    For the reasons set forth in the Motion, due and adequate notice of the Motion, the Letter Agreement, the hearing, and the subject matter thereof has been provided to all parties in interest herein, and no other or further notice is necessary. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

D.    The Sale is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the Sale. The Debtors are the owners of the FFE and have good and marketable title to the same and have the authority to sell, assign and transfer their right, title and interest thereto. There are no brokers involved in the transaction and the Sale is a legal and valid transfer of ownership to IMB.

E.    The Letter Agreement was negotiated and proposed, and has been entered into by the parties, in good faith, from arm's length bargaining positions, and without collusion.

---

[3] When appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. See Fed. R. Bankr. P. 7052.

Page 2

IMB is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protection thereof. Neither the Debtors nor IMB have engaged in any conduct that would cause or permit the Letter Agreement, or the sale of the Office Assets to IMB pursuant thereto and hereto, to be avoided under Bankruptcy Code section 363(n).

G.     Under the circumstances, and due and adequate notice having been provided, it is the best interests of the Debtors, their creditors, and all other parties in interest herein that the Office Assets be sold to IMB in a sale under section 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002(c)(1) and 6004(f)(1).

H.     Notwithstanding the opportunity to purchase the Office Assets being afforded to the Potential Bidders through, among other means, service of the Motion and the Letter Agreement, IMB was the only party to submit an acceptable offer for the Office Assets. The consideration provided by IMB for the Office Assets pursuant to the Letter Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Office Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

H.     The Debtors are authorized to sell the Office Assets free and clear of all interests of any kind or nature whatsoever because one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) have been satisfied. Those holders of interests who did not object to the Motion or the relief requested therein, or who imposed and then withdrew their objections, are deemed to have consented to the sale pursuant to Bankruptcy Code section 363(f)(2). Those holders of interests who did object fall within one or more of the other

subsections of Bankruptcy Code section 363(f) and·are adequately protected by having their interests, if any, attach to the proceeds of the sale of the Office Assets.

I.      In connection with the Motion, the Debtors have represented to this Court that they are not seeking to (i) sell or lease personally identifiable information or (ii) interests in consumer credit contracts.

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, the Debtors are hereby authorized and empowered (i) to enter into the Letter Agreement; (ii) to assume and assign the Office Leases, listed on Exhibit 2 hereto, to IMB; and (iii) to sell, transfer, and convey the Office Assets to IMB.

3.      The Letter Agreement and all of its terms are APPROVED, and this Order and the Letter Agreement shall be binding upon the Debtors, all creditors of the Debtors, and any trustees appointed in these proceedings or any trustees appointed in any subsequent proceedings under chapter 7 or chapter 11 of the Bankruptcy Code relating to the Debtors, and all other parties in interest herein.

4.      Upon the date of closing of the sale of the Office Assets (the "Closing Date"), the Office Assets shall be transferred to IMB free and clear of all liens, claims, encumbrances, or other interests, except as set forth in the Motion and Letter Agreement, pursuant to Bankruptcy Code sections 105(a) and 363; provided, however, that any existing liens, including the liens of the Debtors' postpetition lender, shall attach to the proceeds of the sale of the Office Assets in the order of priority and with the same validity, force and effect that such lien may have against the Office Assets at the time of the Sale. All persons and entities

DB02:6199831.2                                                                          066585.1001

(including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, and trade and other creditors) holding interests of any kind or nature whatsoever against or in the Debtors or the Office Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to the Debtors, the Office Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Office Assets to IMB, hereby are forever barred, estopped, and permanently enjoined from asserting against IMB, its successors or assigns, or the Office Assets, such persons' or entities' interests.

5.    Neither the execution nor performance of the License Agreement, nor the assumption of the Office Leases by the Debtors, nor the assignment of the Office Leases to the Purchaser, nor any of the conditions regarding the Debtors or this case described in Bankruptcy Code section 365(b)(2) shall constitute a default under any of the Offices Leases, now or at an time hereafter.

6.    IMB is hereby granted and is entitled to all of the protections provided to a good faith purchaser of the Office Assets under Section 363(m) of the Bankruptcy Code.

7.    Pursuant to Bankruptcy Code section 363(b), the Debtors and IMB, as well as their officers, employees, and agents, shall be, and hereby are, authorized to take any and all actions and/or execute any and all documents as may be necessary or desirable to consummate the transactions contemplated by the Letter Agreement. Any actions taken by the Debtors and IMB necessary or desirable to consummate such transactions prior to the entry of this Order are hereby ratified.

Page 5

8.    The Letter Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or counterparties to the Office Leases.

9.    The Debtors shall provide a notice identifying the proposed cure amount for each of the Office Leases to each non-Debtor party to an Office Lease no later than two (2) business days following entry of this Order. Such notice shall, among other things, list the Debtors' proposed cure amount (the "Proposed Cure Amount"). The deadline by which non-Debtor parties to the Office Leases must file an objection (the "Cure Amount Objection") to their scheduled Proposed Cure Amount is **September 7, 2007 at 4:00 p.m. (prevailing Eastern time)** (the "Cure Objection Deadline"). Such parties must also serve a copy of the Cure Amount Objection so as to be received no later than the Cure Objection Deadline on the same day to:  (i) American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Alan Horn, General Counsel); (ii) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn.: James L. Patton, Jr.), counsel to the Debtors; (iii) Milestone Advisors, LLC 1775 Eye Street, NW, Suite 800, Washington, DC 20006 (Attn.: Jeffrey M. Levine); and (iv) Pachulski Stang Ziehl Young Jones & Weintraub, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn.: Curtis Hehn) and Orrick, Herrington & Sutcliffe LLP, The Orrick Building, 405 Howard Street, San Francisco, CA 94105 (Attn: Frederick D. Holden, Jr.), counsel to IMB. Such non-debtor parties shall (i) be forever barred from objecting to the Proposed Cure Amount and from asserting any additional cure or other amounts with respect to such Office Lease and the Debtors shall be

Page 6

entitled to rely solely upon the Proposed Cure Amount; and (ii) be deemed to have consented to the assumption and assignment of such Office Lease and shall be forever barred and estopped from asserting or claiming against the Debtors or such other successful bidder or any other assignee of the Office Lease that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such Office Lease.

10.    The failure specifically to include any particular provisions of the Letter Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Letter Agreement be authorized and approved in its entirety.

11.    There is no assumption of liabilities by IMB other than as set forth in the Letter Agreement; IMB is not a successor to the Debtors, nor is the Purchaser a successor employer of any current or former employees of the Debtors who are hired by the Purchaser; upon the closing of the Sale approved hereunder and solely with respect to the Office Assets under the Sale, the creditors, employees and equity holders of the Debtors, are permanently and forever barred, restrained and enjoined from asserting any claims or enforcing any remedies, or commencing or continuing in any manner any action or proceeding of any kind against the Purchaser with respect to the Office Assets on account of any liens, claims or liabilities or asserting any claims or enforcing any remedies under any theory of successor liability, de facto merger, or substantial continuity; on the closing date, this Order shall be construed and shall constitute for all purposes a full and complete general assignment, conveyance and transfer of all of the Office Assets or a bill of sale transferring good and marketable title in such Office Assets to the Purchaser on the closing date; no bulk sales or similar laws are applicable to the sale; if, following entry of this Order approving the sale of the Office Assets free and clear of liens, any person or entity that held a lien on the Office Assets fails or refuses to deliver a release of lien or

Page 7

similar release to evidence such sale free and clear, the Purchaser is authorized to file or record

such release in the name or on behalf of such person or entity; all persons and entities, including

filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies or units, governmental departments or units,

secretaries of state, federal, state or local officials and all other persons who may be required by

operation of law, the duties of their office, or contract, to accept, file register or otherwise record

or release any documents or instruments, or who may be required to report or insure any title or

state of title to any of the Office Asset are directed to strike all recorded liens, interests and

encumbrances against the Office Assets from their records, official or otherwise; and each and

every federal, state and governmental agency or department, and any other person or entity, is

hereby directed to accept any and all documents and instruments necessary or appropriate to

consummate the transactions approved by this Order; and this Order is binding in all respects,

solely with respect to the Office Assets under the Sale, upon the creditors and equity holders of

the Debtors, all non-debtor parties to any assumed Office Leases or other assumed contracts or

leases, any official committees appointed in these cases, all successors and assigns of the

Debtors, any trustees, examiners or "responsible persons" or other fiduciaries appointed in these

cases or upon conversion to chapter 7 of the Bankruptcy Code. Nothing in this paragraph or this

Order shall be construed as a finding or conclusion that the transactions which are the subject of

the Motion are exempt under 11 U.S.C. § 1146(a).

      12.    Upon the closing of the Sale, and except as otherwise expressly provided

in the Letter Agreement, IMB shall not be liable for any claims against, and liabilities and

obligations of, the Debtors or any of the Debtors' predecessors or affiliates. Without limiting the

generality of the foregoing, (a) IMB shall have no liability or obligation to pay wages, bonuses,

Page 8

severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plan) or make any other payment to employees or former employees of the Debtors, (b) IMB shall have no liability or obligation in respect of any collective bargaining agreement, employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection of termination of any such plan, program agreement or benefit), (c) IMB shall in no way be deemed a party or assignee of any such employee benefit, agreement, plan or program, (d) and all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against IMB any claims arising from or relating to such employee benefit, agreement, plan or program.

13.    As provided by Bankruptcy Rule 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after entry thereof and shall be effective and enforceable immediately.

14.    This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of the Letter Agreement or this Order.

Dated: Wilmington, Delaware
        August 2⁴, 2007

Christopher S. Sontchi
United States Bankruptcy Judge

Page 9

# **EXHIBIT B**

AUG. 9. 2007  3:38PM    AMERICAN-HOME-MORTGAGE                     NO. 2477   P. 1

**INDYMAC BANK, F.S.B.**
888 E. Walnut Street
Pasadena, CA 91101

August 7, 2007

American Home Mortgage
538 Broad Hollow Road
Melville, NY 11747

Attention: Mr. Michael Strauss

Dear Michael:

Per our discussions, attached is a License Agreement (the "License") for your execution on behalf of American Home Mortgage ("AHM") that will allow Indymac Bank F.S.B. ("IMB") to conduct operations out of the offices set forth on Exhibit "A" (collectively, the "Offices" and each, individually, an "Office"). The License Agreement is submitted in connection with IMB's bid to assume the leases (the "Office Leases") for the Offices and to purchase the furniture, fixtures, and equipment located in the Offices (the "FFE" and, together with the Office Leases, collectively, the "Office Assets"). The terms of IMB's offer to purchase are as subsequently set forth herein. We understand, and you agree, that upon your acceptance of IMB's bid to acquire the Office Assets, AHM will submit a motion in AHM's pending bankruptcy case seeking (i) the Bankruptcy Court's approval of IMB's purchase of the Office Assets subject to any higher and better bids that AHM may receive for the Office Assets; (ii) bid procedures for purposes of conducting an auction of the Office Assets (the "Auction"); and (iii) approving IMB's occupation and use of the Offices in accordance with the License pending the Auction and IMB's purchase of the Office Assets, with the granting of the License to be in lieu of any break-up fee or other bid protections being provided to IMB. AHM will seek to have such motion heard and approved by the Bankruptcy Court within two days after the date of this letter.

Subject to any extension IMB may grant, in writing, in its sole and absolute discretion, this letter and the commitments in it will be of no force or effect unless (1) IMB is granted by AHM access to and use of all of the Offices by August 8, 2007; (2) the License is signed this day (by midnight August 7, 2007 Pacific Daylight Time) by AHM; and (3) AHM shall have filed with the Bankruptcy Court by August 10, 2007 an emergency motion (or motions) for the approval of the License Agreement and the Auction procedures.

As consideration for the purchase of the Office Assets, IMB shall (i) pay AHM a cash payment of $2,500,000 (the "Cash Payment"); (ii) assume the following liabilities in connection with the Office Assets: (a) phone company arrearages with respect to any of the Office Assets in an amount not to exceed $50,000; and (b) amounts necessary to satisfy any other arrearages, liens, or security interests with respect to the Offices and the Office Assets in an amount not to exceed $50,000 (collectively, the "Assumed Liabilities"); (iii) take assignment of and assume all liabilities under the Office Leases that are not Excluded Leases (hereinafter defined); and (iv) pay AHM an amount equal to the security deposits, if any, held by landlords in connection with the Office Leases that are not Excluded Leases, less (a) any charges made or claims retained by the landlords with regard to their security deposit relating to AHM's occupancy and (b) any amounts paid by IMB to the landlords to cure any of AHM's defaults or other obligations under the Office Leases. If IMB designates any additional offices ("Additional Offices") to be included as Offices and as part of the Office Assets and as the result of such addition of the Additional Offices (net of any removed Offices ("Removed Offices") related to Excluded Leases (as defined below)), sixty percent (60%) of the book value of the FFE at the Offices plus Additional Offices minus the Removed Offices exceeds the Cash Payment, then the Cash Payment shall be increased by an amount equal to sixty percent (60%) of

OHS West:260282165.3

American Home Mortgage
August 7, 2007
Page 2

AHM's book value of the FFE for FFE not paid for (at the 60% of book value rate) as part of the Cash Payment. Notwithstanding the foregoing, the Cash Payment shall be decreased by the amount, if any, that IMB pays for any cure costs in connection with the assumed Office Leases or any other costs attributable to the Office Assets that are collectively in excess of the Assumed Liabilities. Notwithstanding anything to the contrary in this letter, any payments by IMB to third parties to cure arrearages or pay claims secured by liens or security interests with respect to the Premises shall be deducted from the Cash Payment. Subject to the payment of any cure amounts and other claims with respect to the Office Leases from the Cash Payment, the Office Assets shall be transferred to IMB free and clear of any claims, arrearages, liens or encumbrances. IMB's obligation to make the Cash Payment shall be subject to AHM's certification and confirmation (as acknowledged pursuant to AHM's counter-signature below) that since August 1, 2007 it has not removed or authorized the removal, and from this day forward it will not remove or authorize the removal, of any of the FFE reflected on Exhibit "A" from the Offices, and that all such FFE will be included in the bill of sale to IMB.

Notwithstanding the foregoing, within 10 business days of the granting of the License, IMB may, by written notice to AHM, elect to exclude (i) up to ten percent (10%) of the Office Leases from the Office Assets to be acquired by IMB as listed on Exhibit "A" plus any Office Leases for Additional Offices (as identified in writing by IMB to AHM within 10 business days of the granting of the License), and (ii) any Office Leases that IMB reasonably determines to be ten percent (10%) or more over market in rent and other financial obligations. Any Office Leases so excluded are referred to herein as "Excluded Leases." IMB's offer to acquire the Office Assets is contingent upon approval by the Bankruptcy Court of a sale and assignment of the Office Assets that permits IMB to assume Office Leases for not less than seventy-five percent (75%) of the Offices, after exclusion of the Excluded Leases.

Pursuant to the License Agreement, IMB will gain the right to use the Offices, together with the FFE and various utilities and support services related to the operations of the Offices. Under the terms of the License, as set forth therein, IMB would be responsible for payment of all expenses, including rent, utility services, phone usage, security, janitorial, cleaning, and other costs, in connection with the use of the Offices and would reimburse AHM for the same together with a payment of $25,000 per month for any administrative costs incurred by AHM in connection with the License.

Please sign and fax (or scan and email) back to me a signed copy of this offer and the License at (626) 535 - 4180. Upon receipt, I will countersign the License Agreement and fax it back to you. Please provide a preferred fax number. To facilitate the payments contemplated by this letter, please also send me a completed and signed Form W-9.

Sincerely,

INDYMAC BANK, F.S.B.

Jules Vogel
Executive Vice President

OHS West:260282165.3

American Home Mortgage
August 7, 2007
Page 3


## ACCEPTED, ACKNOWLEDGED AND AGREED

American Home Mortgage

By: _____
Name: _Stephen A. Hozie_____
Title: _EVP & CFO_____

Date: **August 7, 2007**

DHS West:260282165.3

AUG. 9. 2007  3:38PM   AMERICAN-HOME-MORTGAGE                    NO. 2477   P. 4

Exhibit A

| Branch Name | City | State | Address | Cost Code |
|---|---|---|---|---|
| Alameda CA 390 | Alameda | CA | 1312 Webster Street | 02050 |
| Albuquerque Uptown NM 2171 | Albuquerque | NM | 6400 Uptown Blvd. NE | 02114 |
| Anaheim CA 169 | Anaheim | CA | 2099 E. Crescent Ave. | 04169 |
| Apple Grove CA 345 | Apple Grove | CA | 6119 S. Main St. | 00245 |
| Bellingham WA 2138 | Bellingham | WA | 1725 Iowa Street | 02138 |
| Big Sky 2463 | Big Sky | MT | 50 Meadow Village Suite 203 | 8706 |
| Bloomington MN 8039 | Bloomington | MN | 1600 West 82nd St | 80309 |
| Boise ID 3020 | Boise | ID | 6910 W Fireweed | 03023 |
| Bozeman Main MT 2729 | Bozeman | MT | 2225 W. Main St | 02729 |
| Campbell Campbell CA 340 | Campbell | CA | 51 E. Campbell Avenue | 00340 |
| Central Lafayette LA 3331 | Lafayette | LA | 319 Guilbeau Road | 03331 |
| Carlbad CA 777 | Carlbad | CA | 17777 Center Court Drive | 00777 |
| Chandler AZ 01512 | Chandler | AZ | 275 S. Arizona Ave. | 01512 |
| Chaska MN 7331 | Chaska | MN | 11077 Madison Blvd. Ste 200 | 01143 |
| Cheyenne WY 503 | Cheyenne | WA | 4315-F East Fireblade | 00503 |
| Coeur D'Alene ID 2227 | Coeur D'Alene | ID | 1221 Ironwood Dr | 02227 |
| Colored Springs Street CA 392 | Corona | CA | 2803 Briggs Street | 00392 |
| Del Rio Rancho TGU TX 2475 | Del Rio | TX | 6027 E. Oltorf Street | 02475 |
| Eagle ID 2674 | Eagle | ID | 4621 L Sharp Drive | 02674 |
| Escanaba | Escanaba | WA | 21829 76th Ave. West, Ste 110 | #N/A |
| Elk Grove CA 3315 | Elk Grove | CA | 9595 E Stockton Blvd | 03315 |
| Germantown TX 2160 | Germantown | TX | 2030 Long Prairie Road | 02160 |
| Glendale AZ 3321 | Glendale | AZ | 5835 W Main Blvd | 03321 |
| Grand Junction 1st CO 0422 | Grand Junction | CO | 2474 Patterson Road | #N/A |
| Greenwood Village CO 2504 | Greenwood Village | CO | 8101 Blad Prentice Avenue | 02504 |
| Gresham OR 2024 | Gresham | OR | 501 N First Main | 02024 |
| Helena MT 2054 | Helena | MT | 825 Great Northern Boulevard | 02271 |
| Hoquiam NY 552 | Hoquiam | NY | 2370 Corporate Circle | 08204 |
| Honolulu HI 02484 | Honolulu | HI | 797 Bishop Street | 02484 |
| Honolulu Hawaii CA 3333 | Honolulu | HI | 224 N. Park Cblc | 03333 |
| Indian Wells CA 314 | Indian Wells | CA | 74-199 Parkway, 111 | 02031 |
| Iowa Area IA 2695 | West Des Moines | IA | 2825 Westown Parkway | 02695 |
| Kings Fl 2152 | Kings | FL | 6081 Gatlin Highway | 02152 |
| Kapolei HI 2011 | Kapolei | HI | 1001 Kamokila Boulevard | 02011 |
| Kirkland WA 2170 | Kirkland | WA | 701 Fifth Avenue | 02170 |
| La Jolla CA 311 | La Jolla | CA | 1223 Broadton Square | 02170 |
| Lahaina HI 2512 | Lahaina | HI | 222 Papalana Street | 02512 |
| Lakewood CO 2072 | Lakewood | WA | 5816 100th Street | 02072 |
| Las Vegas NV 339 | Las Vegas | NV | 777 North Rainbow Blvd. | 00339 |
| Larven IN 2316 | Larven | IN | 9283 West Baseline Park Blvd | 02316 |
| Littleton CO 2065 | Littleton | CO | 9280 W. Cross Drive | 02065 |
| Long Beach Signal CA 307 | Long Beach | CA | 3981 Kilroy Airport Way | 00307 |
| Menlo Grove MN 1109 | Menlo Grove | MN | 7167 East Creek Blvd | 01109 |
| Missoula MT 2305 | Missoula | MT | 1422 Fairdale Avenue | 02305 |
| Modesto CA 561 | Modesto | CA | 1129 Ninth Street | 00561 |
| Monterey CA 336 | Monterey | CA | 609 Abrego Street | 00336 |
| Nuonee 2291 | Monroe | ID | 224 12th Avenue South | 02291 |
| Park Experience Mortgage | Colorado Springs | CO | 2850 W Centerfield Hill Street | #N/A |
| Pomona CA 324 | Pomona | CA | 3301 Towngate Avenue | 02324 |
| Portland OR 2058 | Portland | OR | 10210 SW Greenburg Road | 02058 |
| Portland CA 2291 | Portland | OR | 10210 SW Greenburg Rd | 02231 |
| Rancho Cucamonga CA 309 | Rancho Cucamonga | CA | 9060 Haven Ave. #330 | 00309 |

AUG. 9. 2007 3:39PM    AMERICAN-HOME-MORTGAGE                    NO. 2477   P. 5

| BranchName | City | State | Address | Cost Center |
|---|---|---|---|---|
| Riverside CA 316 | Riverside | CA | 3735 Adams Street | 00310 |
| Roseville CA 304 | Roseville | CA | 1506 Eureka Road | 00314 |
| Rowlett TX 2078 | Rowlett | TX | 6200 Rowlett Drive | 03136 |
| Sacramento CA 2002 | Sacramento | CA | 1610 Arden Way | 02402 |
| Salinas CA 1321 | Salinas | CA | 23 Soledad Street | 01321 |
| Salt Lake City UT 2144 | Salt Lake City | UT | 6615 South 3000 East | 02104 |
| Scottsdale 1 AZ 1110 | Scottsdale | AZ | 8700 Buck Vista Boulevard | 01110 |
| Scottsdale Verdura 1 AZ 257 | Scottsdale | AZ | 8700 E. Via De Ventura | 00257 |
| Sherwood OR 2105 | Sherwood | OR | 20615 SW Roy Rogers Road | 02105 |
| Sioux Falls SD 343 | Sioux Falls | SD | 3409 West 47th Street | 00343 |
| Sonora CA 146 | Sonora | CA | 79 N. Washington Street | 00146 |
| Temecula CA 2469 | Temecula | CA | 27911 Ynez Road | 02469 |
| Thornton CO 3325 | Thornton (Ortega Springs) | CO | 2603 Eisenhofer Mill Street | 03325 |
| Torrance CA 113 | Torrance | CA | 27893 Skypark Drive | 00113 |
| Walnut Creek CA 208 | Walnut Creek | CA | 500 Ygnacio Valley Road | 00208 |
| West Linn OR 2201 | West Linn | OR | 19140 Blankenship Rd. | 02201 |
| Yakima WA 2462 | Yakima | WA | 917 Triple Crown Way | 02162 |
| Yucca Valley CA 315 | Yucca Valley | CA | 56051 29 Palms Highway | 00315 |
| Total: | 70 | | | |

ABV SH

## LICENSE AGREEMENT

This **LICENSE AGREEMENT** ("License Agreement") is made and entered into as of the 7th day of August, 2007, between AMERICAN HOME MORTGAGE ("Licensor"), and INDYMAC BANK, F.S.B. ("Licensee") for the right to use the office space, and all furniture, fixtures and equipment located within such office space, including utilities, telephone and Internet service supplied to such office space and all other items owned, rented, leased or otherwise controlled by Licensor at the office locations listed on Exhibit "A" attached hereto (such office space and all furniture, fixtures, equipment, utilities, telephone service and Internet service are collectively referred to herein as the "Premises"), with reference to the following:

**LICENSE.** Licensor hereby grants to Licensee a license to use the Premises and Licensee hereby accepts such license to use the Premises from Licensor on the terms and conditions set forth in this License Agreement. From and after the Effective Date (defined below), to preserve the confidentiality of Licensee's documentation maintained at the Premises, Licensor shall not grant any other person or entity the right to use or access the Premises without Licensee's prior written consent. Notwithstanding the foregoing, Licensor shall have the right to enter the Premises upon reasonable prior notice to Licensee; provided, however, that during any such entry by Licensor, the parties shall implement reasonable procedures to protect the confidentiality of Licensee's documentation and other information within the Premises. The foregoing license shall include Licensee's right to use software applications on Licensor's computers and other intellectual property within the Premises, to the extent permitted by applicable law as reasonably determined by Licensee; provided, however, the license shall exclude any right to use Licensor's loan origination system, Licensor's point-of-sale system and any proprietary software developed by or especially for Licensor. Licensee shall have access to and may use the Premises seven days per week, twenty-four hours per day, three hundred sixty-five days per year. Licensee and its employees, agents and invitees shall have the right to use the parking spaces in the parking area allocated to the Premises in accordance with the applicable leases in common with other users of the buildings containing the Premises.

**TERM.** The term of this License Agreement ("Term") shall commence on the date Licensee obtains access to the Premises (the "Effective Date") and shall continue thereafter until terminated by either party upon not less than fifteen (15) business days notice. The Term shall expire at midnight on the date specified in the written notice from either party electing to terminate this License Agreement.

This License Agreement shall be of no force or effect unless the Effective Date occurs by August 8, 2007, unless that deadline is mutually extended by each of Licensor and Licensee in its sole and absolute discretion. Effective upon execution of this License Agreement, Licensor shall cause Licensee to have access to and use of all of the Premises.

**MONTHLY LICENSE FEE. SERVICES.** During the Term, Licensee shall pay Licensor a fee (the "License Fee") equal to (i) the amount of the actual monthly rent and additional rent, including operating expenses, utilities, real estate taxes and insurance, payable by Licensor with respect to the Premises pursuant to the applicable leases for the Premises for the period that Licensee is provided access to and use of the Premises, plus (ii) the amount of the actual monthly charges payable by Licensor to third parties for all facility and telecommunication service contracts servicing the Premises, plus (iii) $25,000 per month (the "Licensor Services Component") (prorated for any partial months) to cover the cost of four (4) Licensor employees (or contractors) providing bill processing/accounts payable services related to the Premises and telecommunications/data network/computer desktop/Internet support to the Premises and Licensee's employees working at or remotely from the office locations constituting the Premises, until such time as Licensee assumes responsibility for providing such services directly. Licensor makes no representations or warranties with respect to any services so provided, including, without limitation, the quality or adequacy of any services provided to Licensee under this License Agreement. To facilitate the calculation of the License Fee, Licensor shall deliver to Licensee (a) complete copies of each of Licensor's leases with respect to the Premises within three (3) days after the Effective Date, and (b) copies of each of the invoices from the applicable third parties for the portion of the License Fee payable pursuant to subclause (ii) above. Prior to the approval of this License Agreement by the United States Bankruptcy Court in the Licensor's pending Bankruptcy case, Licensor shall pay the License Fee weekly on each Friday, prorated for its actual days of occupancy based on the actual number of days in the applicable calendar

month (with the first such payment to be paid on or before August 10). Upon approval of this License Agreement by the United States Bankruptcy Court in the Licensor's pending Bankruptcy case, Licensee shall pay the remainder of the License Fee for the calendar month of August (or, if Bankruptcy Court approval is not obtained until September, then for the calendar month of September), 2007 in full. The License Fee shall be calculated based on a schedule provided by Licensor of landlords and other payees and amounts (setting forth the name, address and amount due for each landlord and other vendor for the month of August) to be paid solely with respect to the calendar month of August, 2007 with respect to the Premises (which payments shall be subject to reconciliation in subsequent months based upon landlord- and vendor-specific invoices). Thereafter, Licensee shall pay Licensor the License Fee on or before the date the applicable portion of the License Fee is due and payable in accordance with the terms of the applicable lease or other agreement with or invoice from the applicable third-party provider. The Licensor Services Component of the License Fee shall be paid by Licensee to Licensor on or before the ninth (9th) day of the applicable calendar month, provided, however, that until the Bankruptcy Court in the Licensor's Pending Bankruptcy case approves this License Agreement, the Licensor Services Component of the License Fee shall be prorated and paid concurrently with the License Fee. Licensee shall pay all of the License Fee to Licensor (at Licensor's address set forth below or at such other address as Licensor shall identify in writing to Licensee) and Licensor shall pay to the applicable landlord or other third party provider all amounts payable to such applicable landlord or third party provider. The License Fee for any partial month during the Term shall be prorated based on the actual number of days in the applicable calendar month that Licensee has the use of and access to the Premises to the extent Licensor is able to receive a pro-rated refund under any lease or third party vendor service (unless such termination is caused by Licensor, in which event Licensee shall be entitled to prorate regardless of whether Licensor is entitled to receive a prorated refund under the lease or third party vendor service). Prior to any payment by Licensee to Licensor pursuant to this License Agreement, Licensor shall deliver to Licensee a completed and signed Form W-9.

Notwithstanding anything to the contrary in this License Agreement, Licensee shall have no obligation to pay Licensor for any period of time that Licensee is denied physical access to the Premises or any portion thereof and, if Licensee is denied physical access to any portion of the Premises for any period longer than 24 hours, Licensee may, at its sole option, elect to terminate the license with respect to such portion of the Premises and, upon such termination, Licensee shall have no further obligation for any portion of the License Fee accruing after such termination and with respect to such portion of the Premises. In the event of such a termination, Licensor shall refund to Licensee any payments of the License Fee made by Licensee that are allocable to the period of time subsequent to such termination to the extent Licensor is able to receive a pro-rated refund under any lease or third party vendor service (unless such termination is caused by Licensor, in which event Licensee shall be entitled to the refund regardless of whether Licensor is entitled to receive a prorated refund under the lease or third party vendor service). Except for the License Fee payable pursuant to this paragraph, in no event shall Licensee be liable or obligated to Licensor or any other party, for any other amounts whatsoever for Licensor's grant of the license and the use of the Premises in accordance with the terms of this License Agreement.

The services provided to Licensee at the Premises shall include all utilities, including without limitation, electricity and heating, ventilation and air conditioning, and janitorial services. Such services will be provided in the same manner and to the extent that such services were provided to the Premises immediately prior to the Effective Date and Licensor makes no representation or warranty with respect to such services, including, without limitation, the quality or adequacy of such services.

Licensor shall allow Licensee access to the Internet via Licensor's telephone, cable modem, ISDN or DSL service and equipment within the Premises, whichever is available and selected by Licensee, provided that Licensor makes no representation and warranties with respect to the same and shall, in no event, be responsible for any loss or damages to Licensee arising out of such use. Licensee shall have the right to have mail delivered to Licensee at the Premises and to permit third-party courier services to deliver and retrieve packages at the Premises.

CONDITION OF OFFICE SPACE. Licensee shall accept the Premises in its "as-is" condition and "as-built" configuration existing on the Effective Date.

OHS West:260282163.3                                  2

**PERMITTED USE.**  Licensee shall use the Premises only for general office purposes and for purposes of conducting consumer retail lending services, including, without limitation, the origination, documentation, and administration of loans and mortgages. The foregoing permitted uses are collectively referred to in this License Agreement as the "Permitted Use".

**CARE, MAINTENANCE AND REPAIR.**  Licensee shall, at its sole expense, keep the Premises in a clean, neat and orderly condition (ordinary wear and tear excepted), and in compliance with all applicable laws.

**INSURANCE.**  During the Term, Licensee, at its sole expense, shall obtain and maintain policies of commercial general liability insurance, including personal injury, bodily injury, death and broad form property damage, in such limits as Licensee, with Licensor's consent (which consent shall not be unreasonably withheld) may determine are reasonably appropriate for the Premises and the operation of the Permitted Use. Licensee shall cause Licensor to be listed as an additional named insured on all policies of insurance obtained by Licensee with respect to the Premises and Licensee's use of the Premises.

**CONSUMER CONFIDENTIAL INFORMATION.**  Licensor shall use its best effort to remove, before the Effective Date, any and all consumer confidential information at any of the Premises, including, without limitation, any and all customer loan profiles ("Consumer Confidential Information"). Licensee shall use its best efforts to package and deliver to the Licensor, at addresses to be provided to Licensee, any Consumer Confidential Information that Licensee discovers remaining at the Premises on or after the Effective Date.

**LICENSEE'S PROPERTY.**  All of Licensee's equipment and supplies delivered to the Premises by Licensee, together with all other personal property owned by Licensee and located within the Premises after the Effective Date, shall remain the property of Licensee, shall not be subject to any lien or claim of ownership by Licensor and may be removed by Licensee from time to time during the Term or upon the termination of this License Agreement.

**NOTICES.**  Notices between Licensor and Licensee shall be in writing, and shall be effectively served by personal delivery or Certified or Registered Mail as follows (in which case, the date of receipt or refusal shall be the date of notice):

To Licensee:

> IndyMac Bank, F.S.B.
> 888 East Walnut Street
> Pasadena, California 91101
> Attn: Corporate Real Estate

With a copy to:

> CB Richard Ellis, Inc.
> 355 South Grand Avenue
> Los Angeles, CA 90071
> Attn: Mark Sprague

To Licensor:

> American Home Mortgage
> 538 Broad Hollow Road
> Melville, NY 11747
> Attn: Mr. Kevin Nystrom

**INDEMNIFICATION BY LICENSEE.**  Licensee shall indemnify, defend and hold Licensor harmless from any and all claims, losses, costs (including, without limitation, reasonable attorneys' fees and costs), damages and

OHS West:260282163.3                             3

liens (collectively, "Claims") which Licensor actually incurs as a direct result of Licensee's or its employees' or invitees' use of or damage to, the Premises or failure to vacate the Premises upon termination of this License Agreement. Such rights of indemnity shall exclude (a) any and all Claims resulting from or related to Licensor's gross negligence or willful misconduct, (b) any Claims or other liabilities resulting from any claims of breach or default by the landlords under Licensor's leases for the Premises unless the same are as a direct result of activities conducted by Licensee at the Premises that do not constitute a Permitted Use, and (c) normal wear and tear in connection with Licensee's use of the Premises in accordance with this License Agreement.

**INDEMNIFICATION BY LICENSOR.** Licensor shall indemnify, defend and hold Licensee harmless from any and all Claims which Licensee actually incurs as a direct result of Licensor's execution and delivery of this License Agreement, including any Claims resulting from Licensor's failure to pay any amounts due to landlord's or third-party service providers from amounts remitted to Licensor as part of the License Fee. Such rights of indemnity shall exclude (a) Claims of Licensor's landlords in connection with any use of the Premises by Licensee that is not a Permitted Use, and (b) all Claims resulting from or related to Licensee's gross negligence or willful misconduct.

**MISCELLANEOUS.** No waiver by either party of any breach hereunder shall be implied from any omission by that party to take any action on account of such breach if such breach persists or be repeated, and no express written waiver shall affect any breach other than the breach specified in the express written waiver and only to the extent therein stated. This License Agreement, along with Exhibit "A" attached hereto, constitutes the entire and exclusive agreement between Licensor and Licensee with respect to the use of the Premises by Licensee. This License Agreement may be altered, amended or modified only by an instrument in writing signed by both Licensor and Licensee. This License Assignment shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflicts of law principles. This License Agreement may be executed in counterparts, all of which shall constitute the same License Agreement, notwithstanding that all parties are not signatory to the same or original counterpart. Licensor and Licensee each represent and warrant to the other that (a) subject to United States Bankruptcy Court approval, each party has the full right, power and lawful authority to enter into this License Agreement and to consummate the transactions contemplated herein, and (b) this License Agreement has been duly authorized by all necessary corporate action.

(Signature Page Follows Immediately)

The parties have executed this License Agreement as of the date first set forth above.

LICENSEE:
INDYMAC BANK, F.S.B., a federally chartered savings bank

By: _____

LICENSOR:

AMERICAN HOME MORTGAGE

By: _____

## EXHIBIT A

## DESCRIPTION OF THE LOCATIONS OF THE PREMISES

Exhibit A

| BranchName | City | State | Address | Cost Center |
|---|---|---|---|---|
| Alameda CA 350 | Alameda | CA | 1515 Webster Street | 00910 |
| Albuquerque Uptown NM 2171 | Albuquerque | NM | 6600 Uptown Blvd. NE | 02171 |
| Anaheim CA 367 | Anaheim | CA | 2293 S. Crescensted | 00369 |
| Angels Camp CA 345 | Angels Camp | CA | 1259 S. Main St. | 00345 |
| Bellingham WA 1189 | Bellingham | WA | 11256 State Street | 02189 |
| Big Sky 2185 | Big Sky | MT | 59 Meadow Village Suite 203 | #NA |
| Bloomington MN 2019 | Bloomington | MN | 16000 West 82nd St. | 42059 |
| Boise ID 2371 | Boise | ID | 385A W Riverside | 02035 |
| Bozeman Main MT 2229 | Bozeman | MT | 2253 W McLarity | 02229 |
| Campbell Campbell CA 340 | Campbell | CA | 511 E. Campbell Avenue | 00340 |
| Carmel Carmel by LA 1331 | Carmel | LA | 519 Cannery Road | 00331 |
| Chandler AZ 377 | Chandler | CA | 17777 Center Court Drive | 00177 |
| Chandler AZ 0312 | Chandler | AZ | 725 N Arizona Place | 00312 |
| Clarks MN 1311 | Clarks | MN | 1107 Meridian Blvd. Ste 200 | 01312 |
| Clearwater WY 353 | Clearwater | WA | A515-F East Pershing | 00345 |
| Coeur d'Alene ID 2227 | Coeur D'Alene | ID | 1221 Ironwood Dr. | 02227 |
| Concord Suttee Street CA 392 | Concord | CA | 1181 Bailey Street | 00362 |
| Del Rio Border TX317 TX 2415 | Del Rio | TX | 6093 Gibbs Street | 02082 |
| Enid ID 2474 | Enid | ID | 4823 Acres Drive | 00084 |
| Edmonds | Edmonds | WA | 24020 96th Ave West, Ste 110 | #NA |
| Elk Grove CA 1215 | Elk Grove | CA | 9151 Shaldon Blvd | 40015 |
| Elsewummmmtrd TX 2160 | Navasota Mound | TX | 5652 East Cactus Road | 01601 |
| Glendale AZ 2221 | Glendale | AZ | 6455 W West Blvd | 00302 |
| Grand Junction CO 421 | Grand Junction | CO | 2476 Patterson Road | 00172 |
| Greenwood Village CO 2304 | Greenwood Village | CO | 8101 East Prentice Avenue | 02604 |
| Gresham OR 2357 | Gresham | OR | 105 North Main | 02357 |
| Helena MT 3304 | Helena | MT | 825 Great Northern Boulevard | 03304 |
| Henderson NV 351 | Henderson | NV | 2270 Corporate Circle | 00357 |
| Honolulu HI 00901 | Honolulu | HI | 737 Bishop Street | 02401 |
| Houston Kingwood TX 3333 | Houston | TX | 720 Rock Oak | 03333 |
| Indian Wells CA 324 | Indian Wells | CA | 74-839 Parkway 111 | 02211 |
| Iowa Ames IA 2035 | West Des Moines | IA | 3259 Westown Parkway | 02095 |
| Kent WA 2442 | Kent | HI | 4056 Koala Highway | 02422 |
| Scottsdale | Scottsdale | HI | 1002 Scottsdale Boulevard | 02411 |
| Kirkland WA 2570 | Kirkland | WA | 101 Parkplace | 02570 |
| La Jolla CA 311 | La Jolla | CA | 4225 Executive Square | 00311 |
| Lakeland FL 2267 | Lakeland | HI | 1221 Tynehurst Street | 01242 |
| Lakewood WA 0072 | Lakewood | WA | 5800 100th Street | 02072 |
| Las Vegas NV 353 | Las Vegas | NV | 221 East Badwinkle Blvd | 00353 |
| Layton UT 3310 | Layton | UT | 929 West Heritage Park Blvd | 03310 |
| Lewiston CO 2365 | Lakewood | CO | 9260 W Cross Drive | 02365 |
| Lincoln Haymarket CA 2307 | Lincoln | CA | 5760 Kilmar Alfred Way | 00367 |
| Medi Grass MN 1290 | Maple Grove | MN | 7797 Elm Creek Blvd. | 01290 |
| Mesa Scottsdale | Mesa | MT | 4802 Dearborn Avenue | 02505 |
| Modesto CA 361 | Modesto | CA | 1450 Ninth Street | 00361 |
| Monterey CA 356 | Monterey | CA | 495 Alvara Street | 00356 |
| Moses ID 2327 | Nampa | ID | 2239 Cantrell Road | 02605 |
| Park Rancheco Mortgage | Olympia Budget | CO | 7290 Southeast Hill Street | #NA |
| Pomona CA 324 | Pomona | CA | 3101 Temple Avenue | 00324 |
| Portland OR 2355 | Portland | OR | 10220 SW Greenburg Road | 02459 |
| Portland OR 2351 | Portland | OR | 10230 SW Greenburg Rd | 02211 |
| Rancho Cucamonga CA 309 | Rancho Cucamonga | CA | 9450 Haven Ave #250 | 00095 |

| Branch Name | City | State | Address | Cost Center |
|---|---|---|---|---|
| Riverside CA 319 | Riverside | CA | 3728 Adams Street | 03010 |
| Roseville CA 344 | Roseville | CA | 1508 Eureka Road | 03014 |
| Rowlett TX 3739 | Rowlett | TX | 4700 Rowlett Drive | 03338 |
| Sacramento CA 2682 | Sacramento | CA | 1680 Arden Way | 03010 |
| Salinas CA 1321 | Salinas | CA | 2 Salinas Street | 41012 |
| Salt Lake City UT 1141 | Salt Lake City | UT | 6415 South 3000 East | 02114 |
| Scottsdale AZ 1116 | Scottsdale | AZ | 8700 Rees Vista Boulev | 41010 |
| Scottsdale Ventura 1 AZ 2397 | Scottsdale | AZ | 8570 N. Via De Ventura | 41287 |
| Sherwood OR 3109 | Sherwood | OR | 20962 SW Roy Rogers Road | 02057 |
| Sioux Falls SD 243 | Sioux Falls | SD | 3409 West 49th Street | 02103 |
| Susuns CA 145 | Susuns | CA | 72 N. Washington Street | 02146 |
| Temecula CA 1489 | Temecula | CA | 27499 Ynez Road | 02009 |
| Todgerbat CO 3123 | Colorado Springs | CO | 25633 Timberline Hill Street | 03721 |
| Turners CA 313 | Turners | CA | 2783 Skypark Drive | 50313 |
| Walnut Creek CA 1038 | Walnut Creek | CA | 1390 Ygnacio Valley Road | 00234 |
| West Linn OR 2211 | West Linn | OR | 1800 Blankenship Rd | 02231 |
| Yelm WA 3182 | Yelm | WA | 9717 Yelm Canoa View | 02162 |
| Yucca Valley CA 315 | Yucca Valley | CA | 56321 29 Palms Highway | 00215 |
| Total | 70 | | | |

## EXHIBIT C

## Beach, Sean

**From:** Holden, Frederick D. Jr. [fholden@orrick.com]
**Sent:** Wednesday, December 05, 2007 2:42 PM
**To:** Beach, Sean
**Subject:** RE: AHM - MOT Extending 365 (d)(4)

I agree. Nice work. Thanks.
I'll call the lawyer for the LaJolla landlord.
Fred

-----Original Message-----
From: Beach, Sean [mailto:SBEACH@ycst.com]
Sent: Wednesday, December 05, 2007 11:11 AM
To: Holden, Frederick D. Jr.
Subject: AHM - MOT Extending 365 (d)(4)

    <<1905 - MOT Extending 365 (d)(4).pdf>> Fred, Attached are the
365(d)(4) motion and order.  Based on the definition of Real Property Leases in the Motion
and the approval of the extension, it seems clear to me that we are covered.  Let me know
if you agree.
Thanks. SMB

Sean M. Beach
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Phone: 302-571-6621
Facsimile: 302-576-3281
sbeach@ycst.com

To ensure compliance with requirements imposed by the Internal Revenue Service in Circular
230 on tax practitioners, we inform you that, unless we expressly state otherwise in this
communication (including any attachments), any federal tax advice contained in this
communication is not intended or written to be used, and cannot be used, for the purpose
of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or
recommending to another party any transaction or other matter addressed herein.

This message may contain confidential attorney-client communications or other protected
information.  If you believe you are not an intended recipient (even if this message was
sent to your e-mail address), you may not use, copy, or retransmit it.  If you believe you
received this message by mistake, please notify us by return e-mail, and then delete this
message.  Thank you for your cooperation.

-----Original Message-----
From: Laskin, Debbie
Sent: Wednesday, December 05, 2007 2:07 PM
To: Beach, Sean
Subject: Emailing: 1905 - MOT Extending 365 (d)(4)


The message is ready to be sent with the following file or link
attachments:

1905 - MOT Extending 365 (d)(4)


Note: To protect against computer viruses, e-mail programs may prevent sending or
receiving certain types of file attachments.  Check your e-mail security settings to
determine how attachments are handled.

================================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax
advice contained in this communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-
related penalties under the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s) addressed herein.

================================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE INTENDED RECIPIENT OF THE
TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-MAIL
IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS
STRICTLY PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND
PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/

**EXHIBIT D**

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON

ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN
EDMON L. MORTON
JOHN E. TRACEY

JOSEPH M. BARRY
RYAN M. BARTLEY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
MICHELE SHERRETTA BUDICAK
JEFFREY T. CASTELLANO
DOUGLAS T. COATS (MD ONLY)
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
KERRIANNE MARIE FAY
IAN S. FREDERICKS
JAMES J. GALLAGHER
WILLIAM E. GAMGORT
SEAN T. GREECHER
NATHAN D. GROW
STEPHANIE L. HANSEN
JAMES L. HIGGINS
PATRICK A. JACKSON
DAWN M. JONES
KAREN E. KELLER

JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
EVANGELOS KOSTOULAS
JOHN C. KUFFEL
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
ADRIA B. MARTINELLI
KATHALEEN MCCORMICK
MICHAEL W. MCDERMOTT
TAMMY L. MERCER
MARIBETH L. MINELLA
D. FON MUFTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
ROBERT F. POPPITI, JR.
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
RICHARD J. THOMAS
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
KAREN L. PASCALE
SETH J. REIDENBERG
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6612
DIRECT FAX: (302) 576-3296
cgrear@ycst.com

February 7, 2008

Frederick D. Holden, Jr.
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

      Re:   *In re American Home Mortgage Holdings, Inc.,*
            Ch. 11 Case No. 07-11047 (CSS)

Dear Fred:

      As you are aware, on August 7, 2007, American Home Mortgage Holdings, Inc., and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above-referenced cases (collectively, the "Debtors") and Indymac Bank F.S.B. ("Indymac") entered into a letter agreement (the "Letter Agreement"), pursuant to which the Debtors agreed to assume and assign certain real property leases, and sell certain furniture, fixtures and equipment ("FF&E") located therein, to Indymac.

      In addition to executing the Letter Agreement, on August 7, 2007, the Debtors and Indymac also entered into a license agreement (the "License Agreement"), pursuant to which Indymac was granted the right to use certain of the Debtors' leased office space, as well as all FF&E located within such office space, until such time as the United States Bankruptcy Court for the District of Delaware (the "Court") approved the Letter Agreement. Unfortunately, the sale transaction has not been consummated.

066585.1001

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

Frederick D. Holden, Jr.
February 7, 2008
Page 2

On August 24, 2007, the Court entered orders approving the Letter Agreement [Docket No. 357] (the "Sale Order") and the License Agreement [Docket No. 356]. Pursuant to the Sale Order, the Debtors were authorized to assume and assign ninety-eight (98) office leases (collectively, the "Office Leases"), and to sell the FF&E located therein, to Indymac (collectively, the "Sale"). The Sale was anticipated to close on or before September 30, 2007 (at which time the License Agreement would terminate).

In anticipation of closing the Sale by September 30, 2007, the Debtors filed a Notice of (I) Assumption and Assignment of Certain Real Property Leases and Sale of Furniture, Fixtures and Equipment Located Therein; and (II) Proposed Cure Obligations, if Any [Docket No. 425] (the "Original Cure Notice") and a Corrected Notice of (I) Assumption and Assignment of Certain Real Property Leases and Sale of Furniture, Fixtures and Equipment Located Therein; and (II) Proposed Cure Obligations, if Any [Docket No. 541] (the "Corrected Cure Notice," and collectively with the Original Cure Notice, the "Cure Notice"). Pursuant to the Cure Notice, the Debtors listed the proposed amounts necessary to cure any defaults under the Office Leases (collectively, the "Cure Amounts").

On September 17, 2007, the Court entered the Order Establishing and Fixing Cure Amounts Related to Order, Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, (I) Authorizing the Assumption and Assignment of Certain Real Property Leases and the Sale of Furniture, Fixtures and Equipment Located Therein; (II) Approving the Terms of the Letter Agreement; and (III) Granting Related Relief [Docket No. 778] (the "Cure Order"). Pursuant to the Cure Order, the Court fixed the Cure Amounts for the Office Leases through and including September 30, 2007. The Cure Amounts were listed through and including September 30, 2007, as, again, the Sale was anticipated to close on or before September 30, 2007.

Since entry of the Sale Order, the Debtors have actively tried to close the Sale with Indymac and have endeavored to meet all of Indymac's demands. Despite the Debtors' best efforts, however, Indymac has repeatedly failed to close.

**This letter serves to provide Indymac with notice that, pursuant to section 365(d)(4) of title 11, United States Code, the Debtors' deadline to assume or reject their unexpired leases of non-residential real property expires on March 3, 2008.** Unless assumed sooner, after 4:00 p.m. on March 3, 2008, all of the Debtors' remaining non-residential real property leases will be deemed rejected. Thus, in order for the Office Leases to be assumed and assigned to Indymac, the Sale <u>must</u> close on or prior to March 3, 2008. To that end, the Debtors stand ready and able to immediately close the Sale.

**This letter also constitutes notice that, if the Sale does not close prior to March 3, 2008, the License Agreement shall be terminated as of March 3, 2008.** Pursuant to the License Agreement, the Debtors or Indymac may terminate the Agreement upon not less than fifteen (15) business days notice. The Debtors are hereby providing sixteen (16) business days notice of termination of the License Agreement on March 3, 2008.

066585.1001

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Frederick D. Holden, Jr.
February 7, 2008
Page 3

On February 1, 2008, the Debtors sent Indymac what should be a final version of the Asset Purchase Agreement related to the Sale (the "APA"). On February 5, 2008, Indymac circulated final schedules to the APA. We are hopeful that these recent events indicate that Indymac is now prepared to fulfill its obligations under the Letter Agreement and close the transaction.

In the event the Sale does not close on or prior to March 3, 2008, however, Indymac is put on notice that the Debtors will not be able to assume and assign the Office Leases to Indymac. Moreover, to the extent that the Sale does not close on or prior to March 3, 2008, the Debtors reserve any and all rights to pursue any and all claims and causes of action against Indymac for any damages associated with Indymac's failure to close the transaction as a result of the lapse of the section 365(d)(4) deadline. The Debtors also reserve their right to seek an order from the Court compelling Indymac to close the Sale, as well as other appropriate relief, prior to March 3, 2008.

As failing to close the Sale is obviously not in the best interests of either party, please contact us to address the final closing economics as soon as possible.

Sincerely,

Craig D. Grear

cc:    Sean M. Beach, Esquire
       Kara Hammond Coyle, Esquire
       James J. Gallagher, Esquire
       Mr. John Nelligan
       Mr. Saad Irfani

**EXHIBIT E**

## Final Branch List - 8/21/07

| # | BranchName | Address | City | State | Cost Center |
|---|---|---|---|---|---|
| 1 | Alameda CA 330 | 1512 Webster Street | Alameda | CA | 00330 |
| 2 | Albuquerque Uptown NM 2171 | 6000 Uptown Blvd. NE | Albuquerque | NM | 02171 |
| 3 | Anaheim CA 369 | 2390 E. Orangewood | Anaheim | CA | 00369 |
| 4 | Angels Camp CA 345 | 1239 S. Main St. | Angels Camp | CA | 00345 |
| 5 | Bellingham WA 2188 | 1756 Iowa Street | Bellingham | WA | 02188 |
| 6 | Big Sky 2883 | 50 Meadow Village Suite 205 | Big Sky | MT | 2883 |
| 7 | Bloomington MN 2039 | 1600 West 82nd St | Bloomington | MN | 02039 |
| 8 | Boise ID 2025 | 8850 W Emerald | Boise | ID | 02025 |
| 9 | Bozeman Main MT 2729 | 2618 W. Main St. | Bozeman | MT | 02729 |
| 10 | Caldwell ID 2169 | 2805 Blaine Street | Caldwell | ID | 02169 |
| 11 | Campbell Campbell CA 340 | 51 E. Campbell Avenue, Suite 170 | Campbell | CA | 00340 |
| 12 | Cedar Rapids IA 2017 | 3053 Center Point Road NE | Cedar Rapids | IA | 02017 |
| 13 | Cerritos CA 377 | 17777 Center Court Drive | Cerritos | CA | 00377 |
| 14 | Chandler AZ 01312 | 25 S Arizona Place | Chandler | AZ | 01312 |
| 15 | Chaska MN 1313 | 1107 Hazeltine Blvd. Ste 500 | Chaska | MN | 01313 |
| 16 | Coeur d'Alene ID 2227 | 1221 Ironwood Dr | Coeur D Alene | ID | 02227 |
| 17 | Tenderfoot CO 3323 | 2630 Tenderfoot Hill Street | Colorado Sprin | CO | 03323 |
| 18 | Columbia Gateway | 6996 Columbia Gateway Drive, Suite 102 | Columbia | MD | |
| 19 | Concord Sutter Street CA 302 | 1800 Sutter Street | Concord | CA | 00302 |
| 20 | Coral Gables FL 2951 | 4621 Ponce De Leon Blvd | Coral Gables | FL | 02951 |
| 21 | Cornelius NC 2732 | 19930 W. Catawba Avenue, Suite 140 | Cornelius | NC | 02732 |
| 22 | Del Rio Border FCU TX 2475 | 600 E. Gibbs Street | Del Rio | TX | 02475 |
| 23 | Des Moines University IA 2020 | 6600 University Ave. | Des Moines | IA | 2020 |
| 24 | Eagle ID 2074 | 738 S. Bridgeway Place / The Gemstar Building | Eagle | ID | 02074 |
| 25 | Edmonds 2415 | 21920 76th Ave. West, Ste 110 | Edmonds | WA | 2415 |
| 26 | Elk Grove CA 3315 | 9355 E Stockton Blvd | Elk Grove | CA | 03315 |
| 27 | Flowermound TX 2163 | 3305 Long Prairie Road | Flower Mound | TX | 02163 |
| 28 | Frisco TX 2205 | 2595 Dallas Parkway | Frisco | TX | 02205 |
| 29 | Gaithersburg MD 515 | 481 N. Fredrick Ave, Suite 420 | Gaithersburg | MD | 00515 |
| 30 | Glendale AZ 3321 | 5859 W Talavi Blvd | Glendale | AZ | 03321 |
| 31 | Grand Junction 1st CO 422 | 2478 Patterson Road | Grand Junction | CO | 00422 |
| 32 | Greenwood Village CO 2004 | 8101 East Prentice Avenue | Greenwood Vill | CO | 02004 |
| 33 | Gresham OR 2057 | 320 North Main | Gresham | OR | 02057 |
| 34 | Helena MT 3334 | 825 Great Northern Boulevard | Helena | MT | 03334 |
| 35 | Henderson NV 351 | 2370 Corporate Circle | Henderson | NV | 00351 |
| 36 | Hilton Head Island SC 2773 | 10 Executive Park Road, Suite 101 | Hilton Head Island | SC | 02773 |
| 37 | Honolulu HI 02401 | 737 Bishop Street | Honolulu | HI | 02401 |
| 38 | Houston Galleria TX 3332 | 730 N. Post Oak Road | Houston | TX | 03332 |
| 39 | Houston Kingwood TX 3333 | 20869 Lake Houston pkwy | Houston | TX | 03333 |
| 40 | Indian Wells CA 314 | 74-890 Highway 111 | Indian Wells | CA | 00314 |
| 41 | Irvine CA 300 | 111 Pacifica, Suite 305 | IRVINE | CA | 00300 |
| 42 | Irvine CA 3314 | 111 Pacifica | Irvine | CA | 03314 |
| 43 | Retail West Division Executive & Support 398 | 111 Pacifica, Suite 305 | Irvine | CA | 00398 |
| 44 | Kapaa HI 2422 | 4-361 Kuhio Highway | Kapaa | HI | 02422 |
| 45 | Kapolei HI 2411 | 1001 Kamokila Boulevard | Kapolei | HI | 02411 |
| 46 | Kirkland WA 2170 | 401 Parkplace | Kirkland | WA | 02170 |
| 47 | La Jolla CA 311 | 4275 Executive Square | La Jolla | CA | 00311 |
| 48 | Lafayette LA 3335 | 318A Guilbeau Road | Lafayette | LA | 03335 |
| 49 | Lahaina HI 2942 | 222 Papalaua Street | Lahaina | HI | 02942 |
| 50 | Lakewood, Gig Harbor WA 02072 | 5808 100th Street Suite A | Lakewood / Ta | WA | 02072 |
| 51 | Las Vegas NV 353 | 777 North Rainbow Blvd. | Las Vegas | NV | 00353 |

| # | BranchName | Address | City | State | Cost Center |
|---|---|---|---|---|---|
| 52 | Layton UT 3330 | 920 West Heritage Park Blvd | Layton | UT | 03330 |
| 53 | Littleton CO 2005 | 9200 W Cross Drive | Littleton | CO | 02005 |
| 54 | Long Beach Kilroy CA 307 | 3780 Kilroy Airport Way | Long Beach | CA | 00307 |
| 55 | Maple Grove MN 1309 | 7767 Elm Creek Blvd. | Maple Grove | MN | 01309 |
| 56 | Miami FL 2821 | 12751 S Dixie Highway | Miami | FL | 02821 |
| 57 | Miami FL 2940 | 200 South Biscayne Blvd, Suite 1930 | Miami | FL | 02940 |
| 58 | Miami Beach FL 2926 | 828 Washington Avenue | Miami Beach | FL | 02926 |
| 59 | Missoula MT 2045 | 1802 Dearborn Avenue | Missoula | MT | 02045 |
| 60 | Modesto CA 361 | 1150 Ninth Street | Modesto | CA | 00361 |
| 61 | Monroe Re/Max Desk Rental | 14961 Chain Lake Rd. #159 | Monroe | WA | |
| 62 | Monterey CA 356 | 659 Abrego Street | Monterey | CA | 00356 |
| 63 | Charleston SC 2626 | 2000 Sam Rittenberg Boulvard. Suite 3009 | N Charleston | SC | 02626 |
| 64 | Nampa ID 2075 | 724 12th Avenue South | Nampa | ID | 02075 |
| 65 | New City NY 7 | 200B South Main Street | New City | NY | 00007 |
| 66 | Palm Beach Gardens FL 2950 | 4100 RCA Boulevard, Suite 100 | Palm Beach Gardens | FL | 02950 |
| 67 | Plantation FL 2829 | 801 S University Drive, Suite 130 | Plantation | FL | 02829 |
| 68 | Pomona CA 324 | 3191 Temple Avenue | Pomona | CA | 00324 |
| 69 | Portland OR 2058 | 10220 SW Greenburg Road Suite 245 | Portland | OR | 02058 |
| 70 | Portland OR 2230 | 700 NE Multnomah Street Suite 450 | Portland | OR | 02230 |
| 71 | Raleigh National NC 2050 | 3717 National Drive, Suite 106 | Raleigh | NC | 02050 |
| 72 | Rancho Cucamonga CA 00309 | 9680 Haven Avenue | Rancho Cucam | CA | 309 |
| 73 | Reno NV 367 | 5470 Kietzke Lane, Ste 210 | Reno | NV | 00367 |
| 74 | Riverside CA 3313 | 5225 Canyon Crest Dr | Riverside | CA | 03313 |
| 75 | Roseville CA 344 | 1508 Eureka Road | Roseville | CA | 00344 |
| 76 | Sacramento CA 2402 | 1610 Arden Way | Sacramento | CA | 02402 |
| 77 | St. Louis MO 2199 | 4409 Meramec Bottom Road | Saint Louis | MO | 02199 |
| 78 | Salt Lake City UT 2144 | 6415 South 3000 East | Salt Lake City | UT | 02144 |
| 79 | Sarasota Tamiami FL 2828 | 950 South Tamiami Trail, Suite 208 | Sarasota | FL | 02828 |
| 80 | Scottsdale 3 AZ 1310 | 8700 East Vista Bonita | Scottsdale | AZ | 01310 |
| 81 | Scottsdale Camelback AZ 2002 | 6991 East Camelback Road | Scottsdale | AZ | 02002 |
| 82 | Scottsdale Ventura 1 AZ 357 | 8700 E. Via De Ventura | Scottsdale | AZ | 2003 |
| 83 | Sherwood OR 2193 | 20512 SW Roy Rogers Road | Sherwood | OR | 02193 |
| 84 | Sioux Falls SD 343 | 3409 West 47th Street | Sioux Falls | SD | 00343 |
| 85 | Sonora CA 346 | 79 N. Washington Street | Sonora | CA | 00346 |
| 86 | Spokane WA 2228 | 818 W Riverside Ave | Spokane | WA | 02228 |
| 87 | Tampa FL 2218 | 1511 Westshore Blvd, Suite 720 | Tampa | FL | 02216 |
| 88 | Temecula CA 2409 | 27450 Ynez Road | Temecula | CA | 02409 |
| 89 | The Woodlands TX 2130 | 21 Waterway Ave | The Woodlands | TX | 02130 |
| 90 | Torrance CA 313 | 2780 Skypark Drive | Torrance | CA | 00313 |
| 91 | Wailuku HI 2421 | 2200 Main Street | Wailuku | HI | 02421 |
| 92 | Walnut Creek CA 338 | 500 Ygnacio Valley Road | Walnut Creek | CA | 00338 |
| 93 | Iowa Area IA 2095 | 2829 Westown Parkway, Suite 220 | West Des Moin | IA | 02095 |
| 94 | West Linn OR 2201 | 1800 Blankenship Rd | West Linn | OR | 02201 |
| 95 | Westminster CO 2410 | 1400 W. 122nd Avenue | Westminster | CO | 02410 |
| 96 | Woodbury MN 3311 | 6043 Hudson Road | Woodbury | MN | 03311 |
| 97 | Yakima WA 2162 | 917 Triple Crown Way | Yakima | WA | 02162 |
| 98 | Yucca Valley CA 315 | 56351 29 Palms Highway | Yucca Valley | CA | 00315 |

**EXHIBIT F**



MILESTONE ADVISORS, LLC
1775 Eye Street NW, Suite 800
Washington, DC 20006
*CONFIDENTIAL*

## Figure 1

| Preliminary AHM Closing Purchase Price Calculation | | |
|---|---|---|
| Category | Amount | Comments |
| Minimum Cash Payment ($) | $2,500,000.00 | |
| Plus Security Deposits ($) | $400,570.98 | 19% holdback to be released pending verification within 45 days after close or when all estoppels are received by IMB |
| Net Cash Payment Without Cures ($) | $2,900,570.98 | |
| Plus Reimbursement for Inadvertent Aug / Sep Rent Payment ($) (See Figure 2) | $24,884.02 | |
| Less Landlord Cure Amount ($) (See Figure 3) | ($291,352.42) | IMB will pay cure amounts directly. Amount is net of $50K IMB responsibility |
| Net Cash Payment ($) | $2,634,102.58 | |
| Final true up ($) (See Figure 5) | ($618,095.66) | |
| Telecom Arrearages ($) | $0.00 | |
| Proposed Net Advance At Closing Pre-Property Tax ($) | $2,016,006.91 | |
| IMB Property Tax Payment ($) | $0.00 | $91k in property taxes to be paid post closing. Estimate based on 2007 property tax bills |
| **Post Closing Payments** | | |
| Security Deposits - to be paid by IMB | $92,761.12 | |
| Property Tax - to be paid by IMB | $90,886.52 | |
| Sales Tax - to be paid by AHM | ($175,002.10) | |
| Net Closing Price ($) | $2,024,652.45 | |

## Figure 2

| Month Rent Check Cashed | Branches - Aug/Sept Rent Checks Cashed where Cure Amount = $0 | Rent Check Amount | Cure Amount |
|---|---|---|---|
| Aug | 3780 Kilroy Airport Way/Kilroy Airport Center Long Beach-Phase II Bldg 4/Suite 225, Long Beach, CA | $2,500.00 | $0.00 |
| | Reimbursement from IndyMac (Aug) | $2,500.00 | |
| Sep | 6996 Columbia Gateway Drive / Westridge Corporate Center / Building B, Columbia, MD | $1,200.00 | $0.00 |
| Sep | 1800 Sutter Street / 1800 Sutter Street / Suite 450 - 4th Floor, Concord, CA | $2,000.00 | $0.00 |
| Sep | 6415 South 3000 Est / The Old Mill Business Centre II / 2nd Floor, Salt Lake City, UT | $3,619.61 | $0.00 |
| Sep | 10220 SW Greenburg Road / Three Lincoln Center / Suite 245, Portland, OR | $6,704.41 | $0.00 |
| Sep | 9355 E. Stockton Blvd, Elk Grove, CA | $8,860.00 | $0.00 |
| | Reimbursement from IndyMac (Sep) | $22,384.02 | |
| | Total Reimbursement from IndyMac | $24,884.02 | |

## Figure 3

| Landlord Cure Amount Adjustment | |
|---|---|
| Landlord Cure Amount (per Court Order 9/17/07) | ($383,054.65) |
| IMB Responsibility | 50,000.00 |
| Net Landlord Cure Amount | ($333,054.65) |
| | |
| Adjustment for Inadvertent payment of Aug rent (See Figure 4) | $8,295.75 |
| Expired leases and to be Cured Directly by AHM | $33,406.48 |
| | |
| **Adjusted Net Landlord Cure Amount** | **($291,352.42)** |



Page 2

**Figure 4**

| Month Rent Check Cashed | Branches - Aug Rent Checks Cashed where Cure Amount <> $0 | Rent Check Amount | Cure Amount |
|---|---|---|---|
| Aug | 3053 Center Point Road NE / Suite A, Grand Rapids, IA | $1,500.00 | $3,475.00 |
| Aug | 5859 W Talavi Blvd, Glendale, AZ | $6,795.75 | $6,795.75 |
| | **Adjustment to Net Landlord Cure Amount (Aug)** | **$8,295.75** | |
| | | | |
| | **Total Adjustment to Net Landlord Cure Amount** | **$8,295.75** | |

**Figure 5**

| True up Calc for Aug, Sep, Oct, Nov, Dec, Jan Non-Rental Exp Category | Amount |
|---|---|
| August Non-rental payment **Received** from IndyMac[1] | $271,199.55 |
| August Actual Non-rental expenses | 159,300.59 |
| Adjustment for August | ($111,898.96) |
| | |
| September Non-rental payment **Received** from IndyMac | $231,445.47 |
| September Actual Non-rental expenses | 29,234.68 |
| Adjustment for September | ($202,210.79) |
| | |
| October Non-rental payment **Received** from IndyMac | $231,445.47 |
| October Actual Non-rental expenses | 30,367.43 |
| Adjustment for October | ($201,078.04) |
| | |
| November 1st to 21st Non-rental payment **Received** from IndyMac | $173,584.10 |
| November Actual Non-rental expenses | 14,426.23 |
| Adjustment for November | ($159,157.87) |
| | |
| November 22nd to November 30th License Agreement **NOT Received** from IndyMac | $6,250.00 |
| | |
| Month of December License Agreement **NOT Received** from IndyMAC | $25,000.00 |
| Month of January License Agreement **NOT Received** from IndyMAC | $25,000.00 |
| | |
| **Final true up** | **($618,095.66)** |

[1] August non-rental payment included payment for operating lease expenses. All subsequent payments excluded operating lease expenses as equipment leases were not assumed by IMB.