UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, *et al.*, | Case No. 07-11047(CSS) |
| Debtors. | January 25, 2008<br>10:00 a.m.<br>(Wilmington) |
| CALYON NEW YORK BRANCH, | |
| Plaintiff, | Adv. Proceeding No. 07-51704(CSS) |
| v. | |
| AMERICAN HOME MORTGAGE CORP., | |
| Defendants. | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

THE CLERK: All rise.

THE COURT: Please be seated.

MR. DORSEY: Good morning, Your Honor. John Dorsey on behalf of the Debtors. The only item on the agenda this morning, Your Honor, is the Calyon versus American Home adversary proceeding. And I believe this is plaintiff's, we were supposed to have a mini-hearing, which I think is resolved, and a status conference. So I'll turn it over to plaintiff's counsel.

THE COURT: It's resolved?

MR. DORSEY: I believe so, Your Honor.

THE COURT: Oh, good.

MR. DORSEY: Yes.

THE COURT: Good morning Mr. Ackerly.

MR. ACKERLY: Good morning, Your Honor. Ben Ackerly, along with Jason Harbour and Tom Rice and Michael Busenkell on behalf of Calyon New York Branch. The two, two matters that were scheduled for this morning, one involved the payment of the money and the turnover of the mortgage files, we have reached an agreement on that issue so that it would not be necessary to present any evidence on that. And I have a stipulation that I could hand up to the Court that both parties would sign, if I can approach the bench.

THE COURT: Yes, please. Thank you.

MR. ACKERLY: Your Honor, what this basically

provides in a nutshell is that the money that has been collected, and is in the segregated account, and the money that will be collected in the future, will be paid over on a monthly basis to Calyon, except there will be a reserve amount set aside in the segregated account of $5 million, to cover any potential exposure on the servicing fee, once that issue is determined. And then with respect to the mortgage files provision for cooperation in helping us get the files completed, and have that done by March 1st. So it's satisfactory to us. Did I correctly state that, Mr. Tecce?

MR. TECCE: That's correct. That's correct, Your Honor.

THE COURT: Okay. Thank you Mr. Tecce. All right. I'll approve it. I'm happy to approve it.

MR. ACKERLY: Thank you, sir.

THE COURT: And I take it that that resolves, within a certain amount, the urgency in connection with the Phase 2 trial, although I understand you'd still like that issue decided as soon as possible.

MR. ACKERLY: Yes, sir.

THE COURT: Right.

MR. ACKERLY: And I think with respect to that issue, I think if, if the Court can provide guidance as to the trial date, I think we can work backwards with respect to the cutoff dates from here to the trial date.

THE COURT: All right.

MR. ACKERLY: I will say, we, we had proposed in our stipulation an April 18th trial date, and the Debtor had proposed a June 30th trial date. We believe, Your Honor, that the matter should be tried sooner rather than later. There are essentially two issues that will come up in Phase 2. The first is the question of the August 1st termination of the repurchase agreement and the servicing rights under the repurchase agreement. And with respect to that issue, the documentary evidence on that is already in the record. The letters and all that were filed in connection with Phase 1. It's hard to conceive right now that there would be a whole lot more to that than what's there. At least as far as our case on that is concerned. The other issue, the other issue in the case will, will be whether the Debtors are entitled to a servicing fee going back to August 6th, and if so what amount of the servicing fee. I think the, I think the - -

THE COURT: And also the effect of the expiration of - -

MR. ACKERLY: Correct.

THE COURT: - - under its terms on November 20th.

MR. ACKERLY: The expiration, the November 20th, 2007 expiration. So those are essentially what we see as the, as the two issues in the case. It's hard to imagine that a whole lot of discovery could be required. You will remember

Phase 1 of this case involved four parties, and essentially some more issues. And certainly more complicated issues. And we were able to compress the discovery and everything in that case, I think within about, you know, 30 days or so.

THE COURT: But that was, that was quite an undertaking. Wouldn’t you agree?

MR. ACKERLY: It was, it was an undertaking. But, but the point is that involved four parties, we’re only, we’re down to two parties now. So we’ve cut the body of lawyers in the case, and parties in the case, in half. So, you know, I would think we could, we could do it within that schedule again, if we had to. Without, without too much problem. The, the, I think the fundamental issue here on, on accelerating the schedule is just simply for the benefit of the estate. And that may sound a little, a little funny here, but the longer the Debtor continues to service the mortgages without assurance that it’s going to get paid for servicing the mortgages, places the Debtor and the estate at risk of doing, of doing that and not getting compensated for it. Also, also the, the longer lawyers have to prepare for a trial, the more they will spend in preparing for a trial. And so it’s going to, it’s going to clearly cost the estate more if this, if this case is tried in June then if it’s tried in April.

THE COURT: Well, I don’t know if I agree with that.

I think, certainly if I gave them a year, they'd spend a year doing it. But if I try to compress it into a week, the inefficiencies of trying to get ready in a week are mighty. And people tend to, in my experience, overstaff a case. And just, I mean, inefficiencies. You get duplicative effort. You get things going nuts, just because people don't have time to be organized. I know you're not asking for a week. You're asking for April.

MR. ACKERLY: Right. Well, I mean, I, I've always been a fundamental believer in the longer the debtor stays in bankruptcy, the worse it's going to be for creditors, because it's going to cost more. And, you know, you have administrative expenses growing. The quicker you can get a debtor in and out of bankruptcy, generally - -

THE COURT: Well - -

MR. ACKERLY: - - the better.

THE COURT: I agree. Although, again, this is a liquidating case, so this, this company comes out, out of bankruptcy on a gurney. It doesn't, it doesn't reorganize.

MR. ACKERLY: Well, I, I agree with that. But the gurney will weigh less because of the administrative expenses that will be burdened on the gurney when it, when it comes out.

THE COURT: Right.

MR. ACKERLY: And so the quicker you can get it out

of bankruptcy, the quicker you can stop the bleeding, even if it's a corpse. And so, you know, we, we think - -

THE COURT: I think our analogy just self destructed. But, but I give you credit for trying, staying with me as long as you could.

MR. ACKERLY: Well you used the phrase gurney.

THE COURT: I know. It's my fault.

MR. ACKERLY: Okay. I will, I will, I will disclose to the Court, and to Mr. Tecce, because one of Mr. Tecce's arguments is that they don't have enough time to prepare for this, given there are other, other things that are on their plate. And I can't speak to what's on their plate, but we will be filing, later today, a motion to alter or amend the Court's decision on Phase 1. That, that motion will go solely to the issue, the Court's conclusion that the re, the mortgages were sold servicing retained. It will only address that conclusion that the Court made. That the mortgages were sold servicing retained. It will not address the Court's conclusion that the servicing is severable. Just the mortgaging, the sales were sold mortgages retained. That's the issue that will be addressed. So again, you know, like any post-trial motion, it, no discovery, anything will be required on that. I think they have, under the local rules, 15 days to respond to that. We maybe have some days to respond that. Then, if the Court's inclined, the Court can

have a hearing on, on that motion. But we will be filing that, and I wanted to disclose that to counsel and the Court, although I don't think that should play any material effect on when we schedule, schedule this, this trial. But I didn't want that to catch anybody by surprise.

THE COURT: That's fair enough.

MR. ACKERLY: So I think, Your Honor, if we, we can, we can't agree on, we haven't been able to agree on a trial date. We have fundamentally different views on when this thing should be tried. And we would, you know, if the Court's aligned to, inclined to, you know, put it in the, put it in the middle, or put it in May, you know, that's, that's something we can ultimately live with. But we don't see any reason thing thing should be put out until the end of June.

THE COURT: All right.

MR. ACKERLY: Thank you.

THE COURT: Thank you, Mr. Ackerly. And how many - - I'm sorry. Before - - how many days do you anticipate? Just one or two? Or three?

MR. ACKERLY: Oh, I'm sorry. I said last week a half a day. I think I will revise that to max of a day. And I, I don't think there would be, I can't imagine there being more than two witnesses on either side.

THE COURT: All right. So I'll double that and say two.

MR. ACKERLY: I've doubled it already. I mean, the only evidence, really, I think, has to do with the fee.

THE COURT: Understood.

MR. ACKERLY: The servicing fee.

THE COURT: Understood.

MR. TECCE: Good morning, Your Honor.

THE COURT: Good morning.

MR. TECCE: James Tecce, Quinn Emmanuel, on behalf of the Debtors. Your Honor, just, let me apologize in advance for not having an agreement on dates. I think it's something that lawyers should try and endeavor to do, and I, I would not be here arguing for different dates unless I really, unless the estates, I thought, had a very credible argument as to why they, as to why there's no need to depart from what would be a standard trial track of this case. If the Court will recall, last week we were here arguing for additional time, and Calyon's point, I believe, as to why the trial had to proceed on an emergent basis was because they were lacking certain things necessary to make the mortgage loans liquid. And over the diligent efforts, and frankly a considerable amount of time in the last, of the period of time from the last hearing, we've worked to get them everything that they need, as embodied in the stipulation, to, to cure that deficiency. So from our perspective, there can be no argument at this point that there's exigency at all

as to why Phase 2 has to proceed on an emergent basis. We have done everything that we can do to, to remedy that situation. And at this point, Your Honor, I'd also like to remind the Court that last week Calyon walked us through its complaint, and stated, basically, that the issues in the Phase 2 trial would consist of approximately 8 of their 11 causes of action. We proceeded on two causes of, or two issues, if you will, in the Phase 1 trial for two and a half months. And we were running at full throttle, full clip to meet that, that short period of time. And at this point, Calyon proposes to file a complaint, a new complaint, on the first of February. And under the Rules, Your Honor, again, we're not asking for an extension of time, what we're asking for is basically to follow the typical schedule here. And under the Rules, Calyon would file a complaint, I believe they propose on February 1, under the Rules of Civil Procedure, we'd have 30 days just to answer that. And then, using the Court's guidelines, we would typically, in a regular case, have 120 days to complete fact discovery after the answer. And 60 days after that for expert discovery. And we're not even asking the Court - - or we weren't actually, until this morning's announcement, which I'll get to in a second. Our proposal, they way I came up with the June 30 date was just to say, you'll file your complaint on the 1st of February, we'll have the regular period of time to

answer. Not asking for an extension of time. Just the regular period of time. We'll answer in 30 days. And from, and 120 days from that date is June 30. We'll have the trial when you typically would conclude fact discovery.

THE COURT: Um-hum.

MR. TECCE: And the reason why I set it up that way, Your Honor, is number one, again, I'm not asking for even the regular period of time, I'm saying we'll cut 60 days off that to accommodate your request, just to try and be reasonable. And, you know, the point being that during the months of February and March, Your Honor, we already have adversary proceedings that we have schedules for. We have the Wells Fargo adversary proceeding. We have the Triad adversary proceeding. We have the Bank of America adversary proceeding. And also have the Wells Fargo interpleader action. These are all actions that have, that I, over the last two months, I've negotiated and, and put on the calendar. And that's just for me. For, for the period of time in - - not that my schedule should govern, but my point being that the estates have other work to do - -

THE COURT: Yeah.

MR. TECCE: - - during this period of time. And what we're proceeding towards, with the perceived exigency, is another decision on, on the issue of servicing, when the estate's dedicated a tremendous amount of time preparing a

case, and putting a case to the Court, and getting a decision on servicing already. So we've dedicated a lot of time, and we've, we've been responsive to Calyon's request for emergency and expedited relief. We didn't want to do it, but we did it anyway. And at this point, Your Honor, the, there's simply no, no need and no showing of exigency as to why it has to go forward any more quickly than it has. And I'd just like to state for the record, Your Honor, that I put the proposal together to Calyon with the June 30 trial date, and that was, I had no idea at the time that now, over the next 30 days, I'll also have to dedicate time responding to a motion to amend the Court's judgment. Which is also going to take time away from anything else that we would be doing. So while I've asked for 120 days from what would be a period of time for us to answer their new complaint, the June 30 trial date. I haven't seen the motion yet. I don't know how, how much, how long it would take. But I would just submit, Your Honor, that dealing with that motion, we should have a little more time, frankly, to deal with that motion first, and, rather than have to proceed again on a dual track. Again, there's been now showing of exigency as to why this has to be decided as quickly as it is.

THE COURT: Thank you.

MR. TECCE: Thank you.

THE COURT: Mr. Ackerly, any response?

MR. ACKERLY: Just, just let me address two points, Your Honor. The, the, as we indicated last week, the amended complaint that we're going to file is simply going to add a paragraph to address the November 20th termination. When we filed this complaint, and it was - -

THE COURT: But that adds a fairly significant issue - -

MR. ACKERLY: Sure.

THE COURT: I'm sorry. But that adds a fairly significant issue that has to be dealt with.

MR. ACKERLY: I don't disagree, I don't disagree with that, I'm just trying to, I'm trying to point out when we filed this complaint, and it was expedited, we thought the whole complaint would be resolved by November 20th. And that's why that issue wasn't - -

THE COURT: Right. I understand.

MR. ACKERLY: - - wasn't in there. And so that's all we are adding, is the fact that what we, what I'll call the automatic termination of the contract on November 20th. I don't think, you know, it is a different, it is another issue.

THE COURT: Okay.

MR. ACKERLY: But I don't think it's a comp, a complicated issue. And you know, as far as the exigency of the situation, Your Honor, you know, this case was expedited,

it was, it was bifurcated, but there was no indication that it, when it was going to be bifurcated that it was going to be substantially slowed down. And it is, I mean, what we are trying to do here is to maximize the value of these mortgages so that there will be a small deficiency claim. Or maybe no deficiency claim. But at least a smaller deficiency claim. And getting this adversary proceeding resolved will assist us in maximizing the value. Because there are uncertainties that remain with respect to servicing. And so we believe it will benefit the estate to allow us to get, get the issues resolved, so that we can sell the mortgages clean. Thank you.

THE COURT: All right. All right. First of all, I, I compliment the parties on working diligently in negotiating and submitting the stipulation and order relating to the issues that were raised at the last hearing. It was obviously a large effort, and I think did a lot to resolve some of the open issues. And notwithstanding Mr. Ackerly’s argument, I think those are the key issues that would have required a trial in a more unusual time frame, and a faster time frame. I, I am cognizant of the entire case, and the demands that are placed on the Debtor to try to deal with the various adversary proceedings and other motions arising in a very complicated case. I continue to believe that the servicing issue is a separate issue aside from ownership, and

while it may affect the ability to receive certain amounts in connection with selling or, these mortgages, or liquefying the assets, if you will, I don't think its outcome determinative. And as a result, I am more comfortable, and I think it makes more sense, to have this procedure, especially given the upcoming post-trial motions, again I don't know what exactly they'll say, but we'll deal with them when we deal with them. So I'm going to schedule trial in June. That said, my own schedule, starting June 30th I am out of the office for a significant amount of time at a workshop, and then on summer vacation with my family. So I don't want to jam you right up to the back of that, in case there's any slippage in the trial for whatever reason. So I'm going to schedule this, I'm going to give you two full days in mid-June, unless you tell me - - no, hang on. I just messed up. Unless anyone tells me they don't work, I was going to give you July, excuse me, June 16th and 17th. All day. And if you have your Blackberries, or whatever, let me know whether that's a bad date.

MR. ACKERLY: Would it be possible, Your Honor, to do the 17th and 18th. I will be coming back from a two week vacation.

THE COURT: Oh, gosh.

MR. ACKERLY: I mean it - -

THE COURT: Well, do we, do we need to, do you want

to kick it back another week, then? Or - -

MR. ACKERLY: I said this is going to be very simple and short. So - -

THE COURT: All right.

MR. ACKERLY: - - I just - -

THE COURT: You're going to stick by that, aren't you?

MR. ACKERLY: I'm sticking by that.

THE COURT: The 17th and 18th is fine. The only problem with the 18th is we may have to take a break in the afternoon to hear my normal Chapter 7 omnibus calendar. Which usually doesn't take very long. My consumer calendar. But that would be the second day of trial. 17th and 18th work for you, Mr. Tecce?

MR. TECCE: It does, thank you, Your Honor.

THE COURT: All right. So we'll, I'll put that on the schedule. I'll give you all day June 17th and 18th I'll let you work back from that, and just submit an agreed scheduling order under certification of counsel. What time would you like to start those days?

MR. TECCE: I'm at Your Honor's convenience.

THE COURT: Well, I usually start at 10, but with trial, that frankly seems a little wasteful. So, because you end up spending an hour or more getting organized. So can we start at nine?

MR. TECCE: Yes.

MR. ACKERLY: Yes, sir.

THE COURT: All right. We'll start at 9 each day. If you can't come to an agreement, which I assume is highly unlikely, just get me on the phone, and we'll work it out. Anything else?

MR. ACKERLY: Nothing, Your Honor.

MR. TECCE: Thank you, Your Honor.

MR. ACKERLY: Thank you.

THE COURT: Thank you. Have a pleasant day. Hearing is adjourned.

(Whereupon at 10:30 a.m. the hearing in this matter was concluded for this date.)

I, Jennifer Ryan Enslen, approved transcriber for the United States Courts, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above entitled matter.

*/s/Jennifer Ryan Enslen* 02/11/08

Jennifer Ryan Enslen
43 Bay Boulevard
Newark, DE 19702
(302)836-1905