## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:                                              : Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                              : Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                     :
a Delaware corporation, et al.,[1]                  : Jointly Administered
                                                    :
                                                    :
    Debtors.                                        :
                                                    : **Objection Deadline:  March 6, 2008 at 4:00 p.m. (ET)**
                                                    : **Hearing Date:  March 13, 2008 at 10:00 a.m. (ET)**

------------------------------------------------------- x

**DEBTORS' MOTION FOR ORDER, PURSUANT TO BANKRUPTCY RULE 9019 AND SECTIONS 105 AND 362 OF THE BANKRUPTCY CODE, APPROVING THE SETTLEMENT AGREEMENT BY AND BETWEEN THE AMERICAN HOME MORTGAGE CORP. AND CARLA MARTIN RESOLVING CERTAIN PENDING PREPETITION LITIGATION**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement (the "Settlement Agreement") by and between American Home Mortgage Corp. ("AHM Corp.") and Carla Martin ("Martin" or the "Plaintiff"), resolving certain prepetition litigation captioned Martin v. Dillman, American Home Mortgage Corp. and GMAC Mortgage Corporation, Case No. 07-AS01601, Superior Court of California (the "Complaint"), attached hereto as Exhibit A. In support of this Motion, the Debtors respectfully state and represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Complaint 200, Irving, Texas 75063.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested are Bankruptcy Rule 9019 and sections 105(a) and 362 of the Bankruptcy Code.

## BACKGROUND[2]

2.      On August 6, 2007 (the "Petition Date") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5.      In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

---

[2] A detailed description of the Debtors' businesses and related business information is set forth in the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [D.I. 2] and is incorporated herein by reference.

6.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7.    Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007, (the "Sale Order") [Docket No. 1711], the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC. (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[3]

8.    Pursuant to the APA, the Servicing Sale will close in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors agreed to operate the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the

---

[3]  All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

Purchaser. The Final Closing has not yet occurred, but is required to occur no later than September 30, 2008.

## RELEVANT BACKGROUND

9.     On or about April 5, 2007, Martin filed the Complaint which named American Home Mortgage Corp. ("AHM Corp.") as a co-defendant. The Complaint alleged that on or about September 25, 2005, Martin, as trustee of the Barbara Fike Revocable Living Trust, dated August 13, 1992, entered into a purchase agreement (the "Purchase Contract") pursuant to which Martin agreed to sell and Ron and Melissa Dillman (together, the "Dillmans") agreed to purchase certain real property located at 7207 Whyte Avenue, Citrus Heights, California (the "Property"). To that end, the Dillmans executed a note in favor of AHM Corp., d/b/a American Brokers Conduit executed a note (the "AHM Corp. Note") in the amount of $126,000 to fund the transaction contemplated by the Purchase Contract. The AHM Corp. Note was secured by a Deed of Trust on the Property executed by the Dillmans in favor or AHM Corp. (the "AHM Corp. Deed of Trust") which was recorded on October 24, 2005.

10.     The Complaint further alleged that pursuant to the terms of the Purchase Contract, the Dillmans and Martin contemporaneously executed a second note in favor of Martin (the "Martin Note") in the amount of $126,000. Under the terms of the Martin Note, the Dillmans were to pay the accrued interest on a monthly basis from January 21, 2006 through January 21, 2007 (the "Monthly Payments") and pay the balance owing on the Martin Note after the expiration of this twelve month period. The Martin Note was also secured by a certain Deed of Trust with Assignment of Rents executed by the Dillmans in favor of Martin (the "Martin Deed of Trust") which was also recorded on October 24, 2005.

11.     By the Complaint, Martin sought damages for the alleged breach of contract against the Dillmans as a result of their alleged failure to make the requisite Monthly

Payments (Count I) and sought judicial foreclosure on the Property (Count II). In seeking

judicial foreclosure, Martin alleged and sought a judgment from the Superior Court of California

(the "California Court") that the Martin Deed of Trust was senior in priority to the AHM Corp.

Deed of Trust.[4]

12.     First American Title Insurance Company ("First American"), AHM

Corp.'s title insurer, subsequently undertook AHM Corp.'s defense to the Complaint. Due to the

issues relating to the order in which the escrow holder actually recorded the respective deeds of

trust, a dispute arose as to the proper priority status of the deeds of trust.

13.     As a result of subsequent discussions between the AHM Corp., First

American and Martin (collectively, the "Parties"), the Parties have reached a consensual

resolution as to Count II, pursuant to the terms of the Settlement Agreement, attached hereto as

Exhibit B.

## TERMS OF THE SETTLEMENT AGREEMENT[5]

14.     The Settlement Agreement, in relevant part, provides that:

a.     First American shall, on behalf of AHM Corp., pay Martin
$12,500 (the "Settlement Amount") within ten (10) days
after entry of a Bankruptcy Court order approving the
Settlement Agreement which becomes final and
nonappealable;

b.     Upon entry of a final and nonappealable order approving
the Settlement Agreement and Martin's receipt of the
Settlement Amount, Martin shall dismiss the Complaint
with prejudice as it relates to AHM Corp.;

---

[4] A default was entered by the California Court on June 18, 2007. However, because the litigation was stayed
pursuant to section 362 of the Bankruptcy Code prior to the California Court conducting what is termed a Prove Up
Hearing pursuant to the California Code of Civil Procedure at which time the Plaintiff may show cause for the
granting of the non-monetary relief requested in instances when a default has been entered, a default judgment was
never entered in this case.
[5] This summary is solely for convenience. To the extent that the summary differs from the Settlement Agreement,
the Settlement Agreement shall govern. All capitalized terms in this section not otherwise defined shall have the
meaning ascribed to them in the Settlement Agreement.

c.    The Parties fully release and forever discharge each other, together with all of the other's past and present officers, directors, shareholders, partners, employees, spouses, agents, managers, brokers, attorneys, insurers, representatives, affiliates, heirs, successors, guarantors and sureties of and from any and all claims, demands, disputes, actions, causes of action, liabilities, obligations, losses, and expenses of whatever kind or nature, whether known or unknown, suspected or unsuspected, accrued or unaccrued, and whether at law or in equity, that in any manner arise out of or in connection with or relate to any of the matters, transactions occurrence, omissions, events, disputes, and claims that gave rise to the Complaint. Without limiting the intended broad scope and generality of this section, the foregoing releases extend to and include any and all claims, causes, cross-complaints and counterclaims asserted, or which could have been asserted, in the Complaint by any Party, including any by Martin against the escrow holder on the transaction giving rise to the AHM Corp's Deed of Trust, and the employees thereof;

d.    Each Party shall bear his/her/its own attorneys' fees, costs, and expenses incurred in connection with the Complaint and in connection with the matters, transactions, and claims settled by this Settlement Agreement.

### RELIEF REQUESTED

15.    By this Motion, pursuant to sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors request entry of an order approving the Settlement Agreement, substantially in the form attached hereto as Exhibit B.

### BASIS FOR RELIEF REQUESTED

16.    Section 105(a) of the Bankruptcy Code states, in pertinent part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

17.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. See

In re Penn Central Transportation Co., 596 F.2d 1102, 1113 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'" (quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968))). In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has noted that a bankruptcy court should "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." See In re Penn Central Transportation Co., 596 F.2d at 1153; see also In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("the ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'" (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997))).

18.     More recently, the Third Circuit Court of Appeals enumerated the following four-factor test to be used in deciding whether a settlement should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re RFE Industries, Inc., 283 F.3d 159, 165 (3d Cir. 2002) (citation omitted).

19.     Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court. See In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986). The bankruptcy court should not substitute its judgment for that of the debtor. Id. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should

canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983).

20.    In the Debtors' judgment, the resolutions embodied in the Settlement Agreement are reasonable and in the best interest of the Debtors, their estates, their creditors and other parties in interest. Moreover, a review of the above-referenced factors clearly demonstrates that the terms of the Settlement Agreement are reasonable under the circumstances. Although the AHM Corp., through litigation, may ultimately prevail, the Debtors acknowledge, as with all litigation, that there is an inherent risk in this litigation if it is permitted to proceed. Moreover, the Settlement Amount is limited to insurance proceeds and is being paid in its entirety by First American. Thus, there is no cost to the Debtors' estate.

21.    Pursuant to section 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition operates as a stay with respect to "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case." 11 U.S.C. § 362(a)(1). Thus, to the extent that the Settlement Agreement implicates the automatic stay pursuant to section 362 of the Bankruptcy Code, the Debtors also request that the automatic stay be modified solely to effectuate the terms of Settlement Agreement.

22.    Based on the foregoing reasons, the Debtors submit that the Settlement Agreement is fair and reasonable and that approval of the Settlement Agreement by and between AHM Corp. and Martin is in the best interest of the Debtors, their estates, their creditors and other parties in interest.

## NOTICE

23.     Notice of this Motion shall be served on (i) the United States Trustee For the District of Delaware; (ii) the Committee; (iii) counsel to the Administrative Agent; (iv) counsel to the DIP Lender; (v) counsel Carla Martin; (vi) Counsel to First American; and (vii) all parties entitled to notice under Del. Bankr. LR 2002-1(B).  The Debtors submit that no other notice is necessary under the circumstances.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit C, granting the relief requested herein and granting the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      February 21, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

# EXHIBIT A

## Complaint

DOUGLAS H. KRAFT, ESQ. (State Bar No. 155127)
MARTHA EVENSEN OPICH, ESQ. (State Bar No. 95117)
DOUGLAS KRAFT & ASSOCIATES
7509 Madison Avenue, Suite 111
Citrus Heights, California 95610
Telephone: (916) 880-3040
Facsimile: (916) 880-3045
E-Mail: dkraft@douglaskraft.com

FILED
ENDORSED

APR - 6 2007

By    A. VLAISAVICH
Deputy Clerk

Attorneys for Plaintiff Carla Martin

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

SACRAMENTO COUNTY

CARLA MARTIN, an individual, as Trustee )
of The Barbara Fike Revocable Living Trust )
dated August 13, 1992 )
                   Plaintiff, )
                                  )
vs. )
                                    )
RON DILLMAN, an individual; MELISSA )
DILLMAN, an individual; AMERICAN )
HOME MORTGAGE CORP., a New York )
corporation, dba American Brokers Conduit; )
GMAC MORTGAGE CORPORATION, a )
Pennsylvania corporation, dba ditech.com; )
and DOES 1-50, )
                                    )
                Defendants. )
_____ )

CASE NO.  07AS01601

**COMPLAINT FOR:**

**1) BREACH OF CONTRACT -
PROMISSORY NOTE
2) FORECLOSURE UNDER DEED
OF TRUST - (CCP § 726)**

KEYD 6

KEYD 37

SUMMONS ISSUED

I.

**JURISDICTION**

    1.    Plaintiff CARLA MARTIN ("Martin") is, and at all times mentioned herein was,

an individual acting in her capacity of as Trustee of a revocable inter vivos trust validly formed

and existing under the laws of the State of California.

    2.    Defendant RON DILLMAN ("Mr. Dillman") is an individual, residing in the

County of Sacramento, California.

1

3.    Defendant MELISSA DILLMAN ("Mrs. Dillman") is an individual, residing in the County of Sacramento, California.

4.    Defendant AMERICAN HOME MORTGAGE CORP. ("AHMC") is a corporation organized and existing under the laws of the State of New York, doing business in California as American Brokers Conduit, holding an interest in the real property located in the County of Sacramento, California, that is the subject of this action.

5.    Defendant GMAC MORTGAGE CORPORATION ("GMAC"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, doing business in California as ditech.com, holding an interest in the real property located in the County of Sacramento, California, that is the subject of this action.

6.    Venue is proper in the Superior Court of Sacramento County as the real property that is the subject of this action, that secures the obligations alleged herein, is located in Sacramento County, California.

7.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and thereupon alleges, that each of the fictitiously named Defendants is liable to Plaintiff for the obligations alleged herein, or hold an interest in the real property that is the subject of this action.

## II.

## GENERAL ALLEGATIONS

8.    Pursuant to a California Residential Purchase Agreement and Joint Escrow Instructions dated September 29, 2005, between Mr. Dillman and Mrs. Dillman (together, the "Dillmans"), as Buyer, and Martin, as Seller (the "Purchase Contract"), the Dillmans agreed to purchase from Martin, and Martin agreed to sell to the Dillmans, the fee interest in that certain real property located in Sacramento County, California, commonly known as 7207 Whyte Avenue, Citrus Heights, California (the "Real Property").

2

9.     Pursuant to the terms of the Purchase Contract, the Dillmans executed and delivered to Martin that certain Straight Note dated October 12, 2005, in the principal amount of One Hundred Twenty-Six Thousand and No/100 ($126,000.00) (the "Note") representing a portion of the purchase price to be paid to Martin for the sale of the Real Property pursuant to the Purchase Contract.  A true and correct copy of the Note is attached hereto as **Exhibit A** and incorporated herein by this reference.

10.     Under the terms of the Note, interest accrued on the unpaid balance at seven percent (7.00%) per annum (the "Note Rate").

11.     Under the terms of the Note, the Dillmans promised to pay accrued interest monthly commencing January 21, 2006, and continuing until January 21, 2007 (the "Interest Installments"), and if not so paid, interest shall thereafter bear like interest as the principal.

12.     Under the terms of the Note and the Purchase Contract, the balance owing was due and payable in twelve months from the date of the Note.

13.     In addition, under the terms of the Note, upon the occurrence of a default in payment of any installment of interest, the whole sum of principal and interest shall become immediately due and payable at the option of Martin.

14.     Under the terms of the Note, should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added to the Note as attorneys' fees.

15.     The Note is secured by that certain Deed of Trust With Assignment of Rents, executed by the Dillmans, as trustor, in favor of Martin, as beneficiary, and recorded in the Official Records of Sacramento County on October 24, 2005, in Book 20051024 at Page 2348 (the "Deed of Trust"), encumbering the Real Property, as more particularly described in Exhibit A to the Deed of Trust.  A true and correct copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by this reference.

16.     The Dillmans became in default under the terms of the Note as the Dillmans failed to pay the Interest Installments due under the Note commencing with the Interest Installment due

3

1    on February 21, 2006, and each month thereafter (the "Interest Default"). In addition, the

2    Dillmans failed to pay the balance owing under the Note within twelve (12) months.

3        17.    As a result of the Interest Default, the whole sum of principal and interest under

4    the Note became immediately due and payable in full.

5        18.    On or about March 15, 2007, the Dillmans made a payment to Martin under the

6    Note of $22,749.00, of which $11,233.39 was applied to accrued and unpaid interest, and

7    $11,515.61 was applied to principal.

8        19.    The Dillmans remain in default as the Dillmans have failed, and continue to fail to

9    pay in full all principal, interest and other amounts owing under the Note.

10       20.    As of April 3, 2007, the amount due and owing under the Note is $114,927.46,

11   consisting of principal in the amount of $114,484.39, and accrued and unpaid interest in the

12   amount of $443.07.

13       21.    Under the terms of the Note, interest continues to accrue under the Note from

14   April 3, 2007, at the Note Rate of 7.00% per annum, or $21.96 per day, compounded monthly.

15       22.    In addition to the foregoing amounts, Martin has incurred attorneys fees in

16   collection of the Note in an amount to be determined according to proof.

17   **III.**

18   **FIRST CAUSE OF ACTION**

19   **Breach of Contract - Promissory Note**

20   **(Ron Dillman and Melissa Dillman)**

21       23.    Plaintiff hereby incorporates herein by reference each and every allegation

22   contained in Paragraphs 8 through 22 as if set forth and fully alleged herein.

23       24.    As more fully alleged in paragraphs 8 through 22 herein, the Dillmans are

24   indebted to Martin under the Note.

25       25.    The Dillmans are in breach of contract under the Note as the Dillmans have failed

26   to pay the Interest Installments under the Note when due and have failed to pay the balance

27   owing under the Note within twelve (12) months.

28   

4

26.     All principal, interest and other amounts owing under the Note are due and

payable in full.

27.     As of April 3, 2007, the amount due and owing under the Note is $114,927.46,

consisting of principal in the amount of $114,484.39, and accrued and unpaid interest in the

amount of $443.07.

28.     Under the terms of the Note, interest continues to accrue under the Note from

April 3, 2007, at the Note Rate of 7.00% per annum, or $21.96 per day, compounded monthly.

29.     In addition to the foregoing amounts, under the terms of the Note, Martin is

entitled to reasonable attorneys' fees and costs incurred by Martin in connection with the

collection of the Note.

30.     In spite of Plaintiff's demands for payment in full, the Dillmans have failed, and

continue to fail to pay all principal, interest, and other amounts due and owing under the Note,

which are now all immediately due and payable.

**WHEREFORE,** Plaintiff Martin prays for judgment against the Dillman and Doe

Defendants as more fully set forth below.

### IV.

### SECOND CAUSE OF ACTION

### Judicial Foreclosure of Deed of Trust - CCP Section 726

### (Ron Dillman, Melissa Dillman, AHMC, and GMAC)

31.     Plaintiff hereby incorporates herein by reference each and every allegation

contained in paragraphs 8 through 22, as if set forth and fully alleged herein.

32.     This is an action, inter alia, to foreclose on the Deed of Trust encumbering the

Real Property located in Sacramento County, California, as more particularly described in the

Exhibit A to the Deed of Trust attached hereto as **Exhibit B.**

33.     For valuable consideration and to secure performance of its obligations to Martin

under the Note, among other things, the Dillmans, as trustor, executed and delivered to Martin, as

beneficiary, the Deed of Trust.

5

34.     Martin is the lawful owner and holder of the Note and the Deed of Trust.

35.     The Deed of Trust was duly acknowledged and was recorded with the County Recorder of Sacramento County, California, senior in priority to the interests of AHMC and GMAC in the Real Property.

36.     The Dillmans are now in default under the terms of the Note as the Dillmans have failed to pay in full the monthly payments of interest due under the Note on February 21, 2006, and each month thereafter and have failed to pay all amounts owing under the Note within twelve (12) months.

37.     All principal, interest and other amounts owing under the Note are due and payable in full.

38.     The Dillmans have failed, and continue to fail to pay all principal, interest and other amounts owing under the Note.

39.     Under the terms of the Note, if Martin institutes any suit or action to collect the Note, Martin shall be entitled to reasonable attorneys' fees.

**WHEREFORE,** Plaintiff Martin prays for judgment against the Dillmans, AHMC, GMAC and Doe defendants as more fully set forth below.

### VI.

### **PRAYER**

**WHEREFORE,** Plaintiff prays judgment as follows:

**On its First Cause of Action:**

Judgment against the Dillmans and the Doe defendants as follows:

A.     For the sum of $114,927.46, consisting of principal in the amount of $114,484.39, and accrued and unpaid interest in the amount of $443.07, plus interest accruing under the Note after April 3, 2007, at the Note Rate of 7.00% per annum, or $21.96 per day through the date of entry of judgment, compounded monthly;

B.     For post judgment interest on the judgment amount, accruing at the legal rate of interest;

6

C.    For attorneys' fees costs of suit herein, according to proof;

D.    For post judgment attorneys' fees and costs incurred in the enforcement and collection of the Judgment, including any attorneys fees and costs incurred in the context of any Bankruptcy Proceeding; and

E.    For such other and further relief as the Court may deem just and proper.

**On its Second Cause of Action**:

Judgment against the Dillmans, AHMC, GMAC, and the Doe Defendants as follows:

A.    The Borrower is indebted to Martin in the amount of $114,927.46, consisting of principal in the amount of $114,484.39, and accrued and unpaid interest in the amount of $443.07, plus interest accruing under the Note after April 3, 2007, at the Note Rate of 7.00% per annum, or $21.96 per day through the date of entry of judgment, compounded monthly;

B.    That the Deed of Trust hereinabove referred to and attached as **Exhibit B** is senior in priority to the interests of AHMC and GMAC in the Real Property.

C.    That the Deed of Trust hereinabove referred to and attached as **Exhibit B** be foreclosed and that usual judgment be made for sale of all property subject thereto according to law by the Sheriff or Marshall of Sacramento County or by a commissioner or other person to be appointed by the court;

D.    That Plaintiff Martin is permitted to become a purchaser at the foreclosure sale;

E.    That the proceeds of the sale be applied in payment of the amounts due to Plaintiff Martin;

F.    That when the time for redemption has lapsed, the Sheriff, Marshal, commissioner or other person appointed by the Court execute a deed to the purchasers of the Real Property, the improvements thereon and the other property described in the Deed of Trust, or any part thereof, acquired at the sale, and that the purchasers be let into possession of the real property on production of the said deed and be permitted to take possession thereof;

G.    For post judgment interest on the judgment amount, accruing at the legal rate of interest;

7

H.    For attorneys' fees and costs according to proof;

I.    For post judgment attorneys' fees and costs incurred in the enforcement and collection of the Judgment, including any attorneys' fees and costs incurred in the contest of any Bankruptcy Proceeding; and

J.    For such other relief as the Court may deem just and proper.

DATED: April 5, 2007                    DOUGLAS KRAFT & ASSOCIATES

By: _____
    DOUGLAS H. KRAFT, ESQ.,
    Attorneys for Plaintiff,
    CARLA MARTIN, an individual, as Trustee of The
    Barbara Fike Revocable Living Trust dated
    August 13, 1992

8

Complaint for Breach of Contract, Foreclosure Under Deed of Trust

## VERIFICATION

I, Douglas H. Kraft, declare:

I am an attorney at law admitted to practice before all courts of the State of California and have my office in Sacramento County, California, and am the attorneys for CARLA MARTIN, an individual, as Trustee of The Barbara Fike Revocable Living Trust dated August 13, 1992. Plaintiff in the above-entitled action. Plaintiff is unable to make this verification because Plaintiff is located outside of Sacramento County, and for that reason, I make this verification on Plaintiffs behalf. I have read the foregoing Complaint for BREACH OF CONTRACT - PROMISSORY NOTE, and FORECLOSURE UNDER DEED OF TRUST, and I am informed and believe that the matters therein are true and on that ground allege that the matters stated therein are true.

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. This Verification is executed this 5th day of April 2007, at Citrus Heights, California.

Douglas H. Kraft, Esq.

9



EXHIBIT A     EXHIBIT B

07AS01601

DO NOT DESTROY THIS NOTE. When paid, this note and the Deed of Trust must be surrendered to the trustee with request for reconveyance.

# STRAIGHT NOTE
### (This Note Contains a "DUE-ON-SALE" Clause)

$126,000.00 _____ Sacramento _____, California, October 12, 2005

We, the Undersigned _____ after date,

for value received,

promise to pay to: One Hundred Twenty Six Thousand and No US or order,

at place designated by Beneficiary _____

the sum of One HundredTwenty Six Thousand and No /100 Only _____ Dollars,

with interest from _OCTOBER 21, 2005_____ until paid, at the rate of 7% per cent, per annum,

payable on the 21st day of January 2006 and continuing unitl the 21st day of January, 2007, until the entire unpaid principal balance and any interest due thereof shall become due and payable in full. _____

Should interest not be so paid, it shall thereafter bear like interest as the principal, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law. Should default be made in the payment of any installment of interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note.

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees. Principal and interest payable in lawful money of the United States of America. This note is secured by a certain DEED OF TRUST toALLIANCE TITLE COMPANY, a California corporation, as TRUSTEE.

_____
Ron Dillman

_____
Melissa Dillman

snotedos (rev. 07/21/98)



**EXHIBIT B**

07AS01601

RECORDING REQUESTED BY
Alliance Title Company
AND WHEN RECORDED MAIL TO

Name    Carla Martin
Street
Address    6304 Stoneyland Avenue
City,State    Citrus Heights, CA 95621
Zip

Order No.  1238193A-808-DH1

Sacramento County Recording
Craig A Kraser, Clerk/Recorder
BOOK 20051024 PAGE 2348
Check Number  428
Monday, OCT 24, 2005   3:39:01 PM
Ttl Pd    $27.00    Nbr-0003933232
JLW/14/2-4

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (This Deed of Trust contains a "DUE-ON-SALE" clause)

This DEED OF TRUST, made October 18, 2005, between

Ron Dillman and Melissa Dillman, herein called TRUSTOR,
whose address is 8119 Butternut Drive , Citrus Heights, CA  95521
      (Number and Street)      (City)      (State)      (Zip)

Alliance Title Company, a California Corporation, herein called TRUSTEE, and

Carla Martin, Trustee of The Barbara Fike Revocable Living Trust, dated August 13, 1992 herein called
BENEFICIARY,

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that property in the
City of Citrus Heights, County of Sacramento, California, described as:

All that certain real property in the City of Citrus Heights, County of Sacramento, State of California, described as
follows:

Lot 30, as shown on the "Plat of Grand Oaks Unit No. 5", recorded in the Office of the County Recorder of Sacramento
County, August 28, 1959, in Book 56 of Maps, No.(s) 25.

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein
in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall
have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing
the same, immediately due and payable.

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon
Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of $ 126,000.00, with interest thereon according to the terms of a promissory note or notes of
even date, with a maturity year of  2005   herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the
performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and
interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they
are secured by this Deed of Trust.

D-8 (Page 1)                                    3/94                               sfawlaw rev. (01-1993)



To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of trust recorded in the book and page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|--------|------|------|--------|------|------|--------|------|------|--------|------|------|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3788 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-28 | 615 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4785 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 601 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego SERIES 5 Book 1964, Page 149774 | | | | | |

Said agreements, terms and provisions contained in said subdivision A and B, (identical in all counties are printed on the reverse side hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by laws.

The foregoing assignment of rents is absolute unless initialed here, in which case, the assignment serves as additional security.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at this address hereinbefore set forth.

Dated: __October 18, 2005__

STATE OF CALIFORNIA
COUNTY OF Sacramento _____ S.S. }

On _October 19, 2005_ before me,
_Denise Elliott_

a Notary Public in and for said County and State, personally appeared
_Ron Dillman and Melissa Dillman_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Denise Elliott_

_Ron Dillman_
Ron Dillman

_Melissa Dillma_
Melissa Dillman

DENISE ELLIOTT
COMM. # 1519569
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO COUNTY
COMM. EXP. OCT. 29, 2008

(This area for official notarial seal)

D-8 (Page 2)                                                          3/94

**DO NOT RECORD**

The following is a copy of Subdivision A and B of the fictious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

**A.   To protect the security of this Deed of Trust, Trustor agrees:**

(1)   To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)   To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)   To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)   To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)   To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

**B.   It is mutually agreed:**

(1)   That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)   That at any time or from time to time, without affecting the liability of any person for the payment of the indebtedness secured hereby, Trustee may reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)   That upon written request of beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matter or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5)   That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)   That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either at a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the persons legally entitled thereto.

(7)   Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8)   That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9)   That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

REQUEST FOR FULL RECONVEYANCE

TO AMSTAR Title Company  TRUSTEE:

The undersigned is the legal owner and holder of the note or notes, and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated _____

Signature must be notarized

_____

Please mail Deed of Trust,
Note and Reconveyance to _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

☐ 000/004                                                         AMSTAR1                                                         XXX  21:01  8002/02/20

11381935 -808 -DH1

**Exhibit A**
**Legal Description**

All that certain real property in the City of Citrus Heights, County of Sacramento, State of California, described as follows:

Lot 137 of South Roseville, according to the Official Plat thereof, filed in the Office of the Recorder of Sacramento County, California, on November 4, 1926, in Book 19 of Maps, Map No. 8.

# EXHIBIT B

**Settlement Agreement**

## MUTUAL COMPROMISE, SETTLEMENT AND GENERAL RELEASE

1.     This agreement of Mutual Compromise, Settlement and General Release ("the Agreement") is made by and among Carla Martin as Trustee of the Barbara Fike Revocable Living Trust dated August 13, 1992 ("Martin") and American Home Mortgage Corp. ("AHMC" and, together with Martin, "the Parties").

2.     Martin sued *inter alia* AHMC in Sacramento County Superior Court, case no. 07AS01601 ("the Action"). AHMC disputes that Martin is entitled to any relief against AHMC in the Action or otherwise.

3.     The disputes between Martin and AHMC are generally and fully compromised, settled and released on the terms set forth below.

4.     The effectiveness of this Agreement shall be subject to approval by the court in which the bankruptcy case of AHMC is pending, which approval AHMC agrees to seek immediately and in good faith. AHMC need not execute this Agreement prior to approval by the bankruptcy court, but approval by the bankruptcy court upon application by AHMC shall substitute for AHMC's signature hereon.

5.     AHMC's title insurer shall, on behalf of AHMC, pay to Martin the sum of $12,500 within 10 days of approval of this Agreement by the bankruptcy court.

6.     Upon such approval by the the bankruptcy court and receipt of payment in the amount of $12,500 on behalf of AHMC, Martin shall dismiss the action with prejudice as to AHMC.

7.     In consideration of performance of the obligations this Agreement requires, and for other valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties do hereby fully release and forever discharge each other, together with all of the other's past and present officers, directors, shareholders, partners, employees, spouses, agents, managers, brokers, attorneys, insurers, representatives, affiliates, heirs, successors, guarantors and sureties of and from any and all claims, demands, disputes, actions, causes of action, liabilities, obligations, losses, and expenses of whatever kind or nature, whether known or unknown, suspected or unsuspected, accrued or unaccrued, and whether at law or in equity, that in any manner arise out of or in connection with or relate to any of the matters, transactions, occurrence , omissions, events, disputes, and claims that gave rise to the Action. Without limiting the intended broad scope and generality of this paragraph, the foregoing releases extend to and include any and all claims, causes of action, cross-complaints and counterclaims asserted, or which could have been asserted, in the Action by any Party, including any by Martin against the escrow holder on the transaction giving rise to AHMC's deed of trust, and the employees thereof.

8.    The mutual releases set forth in paragraph 18 above are intended to be complete and final and to fully and forever compromise and extinguish all claims, demands, disputes, actions, causes of action, liabilities, and obligations of any kind or description, whether known or unknown, foreseen or unforeseen, patent or latent, which may now exist or may hereafter accrue, and therefore the Parties, for themselves and their respective successors and assigns, expressly waive the benefit of the provisions of California Civil Code section 1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

9.    This Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, arbitration or other proceeding at law or in equity which may be instituted or attempted in any forum in breach of this Agreement.

10.    Each Party shall bear his/her/its own attorneys' fees, costs, and expenses incurred in connection with the Action and in connection with the matters, transactions, and claims settled by this Agreement.

11.    The rights and obligations specified in this Agreement shall inure to the benefit of and bind the heirs, successors, personal representatives, and assigns of the Parties hereto.

12.    Each Party hereby affirms, acknowledges, and warrants that he/she/it has completely reviewed the terms of this Agreement with his/her/its own legal counsel and fully understands and appreciates the meaning and effect of this instrument and voluntarily accepts the benefits and obligations thereof, and that further, there have been no representations made to any Party that are being relied upon unless they are specifically set forth in this Agreement.

13.    This Agreement is the result of a compromise of disputed claims and shall not at any time, for any purpose whatsoever, be deemed or treated as an admission of liability or responsibility by any Party.

14.    The terms of this Agreement are intended by the Parties as a complete integration and final exclusive expression of the terms of their settlement and compromise. No promises, representations, understandings, arrangements, or agreements of any kind have been made or agreed to by any Party to this Agreement other than those which are expressly set forth herein.

15.    Notwithstanding any rule or maxim of interpretation to the contrary, any ambiguity or uncertainty in this Agreement shall not be construed against any Party based upon authorship of any of the provisions herein contained.

16.    As used in this Agreement, the singular or plural number and the neuter, masculine or feminine gender shall each include the other whenever the context so indicates.

17.    This Agreement shall be fully enforceable pursuant to California Code of Civil Procedure section 664.6. In the event either Party commences an action or other legal

2

proceeding to enforce any term or provision of this Agreement, the prevailing Party shall be entitled to recover, in addition to all other relief, its attorney's fees and costs of suit.

18.    This Agreement cannot be modified, except by a written document signed by both the Parties.

19.    This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of California.

20.    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

DATED: _1–11–08_

By _Carla Martin_
Carla Martin, as Trustee of the Barbara Fike Revocable Living Trust dated August 13, 1992

Approved as to form and content

DOUGLAS KRAFT & ASSOCIATES

By: _____
Douglas H. Kraft, Esq.
Attorneys for Carla Martin, as Trustee of the Barbara Fike Revocable Living Trust dated August 13, 1992

AMERICAN HOME MORTGAGE CORP.

By: _____

Its: _____

Approved as to form and content

McDONOUGH HOLLAND & ALLEN PC

By: _____
Mary E. Olden
Attorneys for American Home Mortgage Corp.

3

1061606v1 20131/0295