UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS,                                 :   Case No. 07-11047 (CSS)
INC., a Delaware corporation, et al.,[1]                         :
                                                                 :   Jointly Administered
        Debtors.                                                 :
                                                                 :   Objection Deadline: March 6, 2008 at 4:00 p.m. (ET)
                                                                 :   Hearing Date: March 13, 2008 at 10:00 a.m. (ET)
                                                                 :   (Waiver of Local Rule Requested)
---------------------------------------------------------------- x

## DEBTORS' APPLICATION PURSUANT TO SECTION 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF CB RICHARD ELLIS, INC. AS A REAL ESTATE BROKER, *NUNC PRO TUNC* TO FEBRUARY 22, 2008

The above-captioned debtors and debtors in possession in these chapter 11 cases (the "Debtors"), by this application (the "Application"), seek entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving the retention and employment of CB Richard Ellis ("CBRE") as a real estate broker for the Debtors, *nunc pro tunc* to February 22, 2008, in connection with the Debtors' efforts to sell certain real property located at 950 N. Elmhurst Rd., Mt. Prospect, Illinois (the "Mt. Prospect Property"). In support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Mt. Prospect Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND

2. On August 6, 2007 (the "Petition Date") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the

short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7.  Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007, (the "Sale Order") [Docket No. 1711], the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC. (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

8.  Pursuant to the APA, the Servicing Sale will close in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors agreed to operate the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser. The Final Closing has not yet occurred, but is required to occur no later than September 30, 2008.

---

[2] All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

DB02:6557722.3  066585.1001

## RELEVANT BACKGROUND

9. American Home Mortgage Corp. ("AHM Corp.") is the owner of the Mt. Prospect Property, pursuant to a certain Assignment of Beneficial Interest agreement by and between North Star Trust Company, dated June 28, 2004. AHM Corp. and Park National Bank and Trust of Chicago are parties to a certain note ("Note"), in the amount of $1,007,000, secured by a mortgage (the "Mortgage") on the Mt. Prospect Property.

10. AHM Corp. and the Debtors are now winding down their business affairs, liquidating their assets and will soon no longer have a use for the Mt. Prospect Property. In order to maximize the value of their estates, the Debtors wish to dispose of its interest, distribute the proceeds to their creditors, and relieve themselves of the burdens associated with the Mt. Prospect Property.

11. To that end, the Debtors initiated a post-petition search for a real estate broker to assist in the disposition of the Mt. Prospect Property. In connection therewith, the Debtors contacted CBRE to assist in their efforts. The Debtors and CBRE reached an agreement regarding CBRE's retention and employment by the Debtors, the terms of which are substantially set forth in the Exclusive Sales Listing Agreement (the "Engagement Agreement"), attached hereto as Exhibit A.

## RELIEF REQUESTED

12. By this Application, the Debtors seek entry of an order, pursuant to sections 327(a) and 328(a) the Bankruptcy Code and Bankruptcy Rule 2014 authorizing and approving the retention and employment of CBRE as the Debtors' real estate broker, *nunc pro tunc* to February 22, 2008, pursuant to the terms substantially set forth of the Engagement Agreement.

13. In light of the commission based fee arrangement described below, the Debtors also request that the information requirements of Local Rule 2016-2(d) be waived, or alternatively, modified and waived to the extent necessary to permit CBRE to submit time records in half hour increments.

## BASIS FOR RELIEF REQUESTED

14. Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

15. Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

16. "Professionals" pursuant to section 327 of the Bankruptcy Code have been described as those persons who play a central role in or are intimately involved with the administration of the debtor's estate. In re American Tissue, 331 B.R. 169, 173 (Bankr. D. Del. 2005); In re First Merchants Acceptance Corporation, No. 97-1500, 1997 Bankr. LEXIS 2245 at *6 (Bankr. D. Del. December 15, 1997). Accordingly, courts generally hold that real estate agents brokers are "professionals" pursuant to section 327 of the Bankruptcy Code when acting

5

on behalf of the debtor to sell real estate of the debtor. F/S Airlease II, Inc. v. Simon, 844 F.2d 99, 108 (3d. Cir. 1999), cert. denied, 488 U.S. 852 (1988). See also In re Channel 2 Associates, 88 B.R. 351, 352 (Bankr. D.N.M. 1988); In re 31-33 Corp., 100 B.R. 744, 746 (Bankr. E.D. Pa. 1989).

17. In the instant case, the Debtors are seeking authority to employ CBRE to assist in the sale of the Mt. Prospect Property, a significant asset of AHM Corp.'s estate and which sal may result in significant value to the Debtors' estates. See First Merchants Acceptance Corporation, 1997 Bankr. LEXIS 2245 at *8-9 (finding that one of the factors to consider in whether a person is a "professional" pursuant to section 327 is whether the person controls, manages, administers, invest, purchases or sells assets that are significant to the debtor's reorganization). Accordingly, the Debtors believe that retention of CBRE pursuant to section 327 of the Bankruptcy Code is appropriate under the circumstances.

18. Bankruptcy Rule 2014 further provides, in relevant part, as follows: "An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee." Fed R. Bankr. P. 2014.

A. **CBRE's Qualifications**

19. The Debtors have selected CBRE based on its experience and expertise in providing corporate real estate services. CBRE is a real estate brokerage and consulting firm and an S&P 500 company headquartered in Los Angeles, California. With over 24,000 employees and more than 300 offices worldwide, CBRE has extensive experience in representing corporations with respect to their respective real estate issues, including, but not limited to, acquisition, sales, dispositions, and leases. Moreover, CBRE's professionals have extensive experience in consulting and strategic planning in connection with real estate brokerage, and its

professionals have consummated hundreds of commercial real estate sale transactions involving a wide range of industries. In addition, in anticipation of its retention, CBRE has become familiar with the Mt. Prospect Property and the issues related thereto, including, but not limited to, the relevant agreements with respect to the Mt. Prospect Property.

20. The Debtors require qualified professionals to render essential services in connection with the sale of the Mt. Prospect Property. Based on CBRE's experience and the Debtors' business judgment, the Debtors believe that the employment of CBRE is in the best interest of the Debtors' estates, their creditors, and other parties in interest.

**B.** **Terms of the Engagement Agreement**[3]

21. As more fully set forth in the Engagement Agreement, the terms of the Engagement Agreement include the following:

    a. The Debtors shall grant CBRE the exclusive right to sell or otherwise dispose of the Mt. Prospect Property for a period commencing February 22, 2008 and ending midnight November 30, 2008 (the "Term").

    b. CBRE agrees to use commercially reasonable efforts to effect a sale or transfer of the Mt. Prospect Property during the Term. The Mt. Prospect Property will be marketed at $2,450,000.

    c. The Debtors agree to pay CBRE an aggregate sales commission equal to 2.5% of the first $1,600,000 of the gross sales price for the Mt. Prospect Property and 12.0% of the gross sales price for the Mt. Prospect Property that exceeds $1,600,000 (the "Commission"). This Commission shall be earned for services rendered if, during the Term: (a) the Mt. Prospect Property is sold to a purchaser procured by CBRE, the Debtors or anyone else; or (b) the AHM Corp. contributes or conveys the Mt. Prospect Property to a partnership, joint venture, or other business entity.

---

[3] The services to be provided by CBRE and the compensation structure are explained in their entireties in the Engagement Agreement. If there are any inconsistencies between the summary contained herein and the Engagement Agreement, the Engagement Agreement shall govern. Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Engagement Agreement.

        d.      Outside brokers or co-brokers will be paid by their principals; provided, however, notwithstanding anything contained in the Engagement Agreement to the contrary, under no circumstances shall the Debtors, their Trustee or the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") have any liability to CBRE or any third party claiming through CBRE for any commission, finder's or referral fee or other compensation in excess of the Commission and CBRE covenants and agrees to indemnify and hold harmless the Debtors from and against any and all such claims, suits, judgments, obligations, costs, losses, expenses and liabilities (including reasonable attorney's fees) arising therefrom to the extent of commissions paid under the Engagement Agreement.

        e.      Any and all fees and Commissions due under the Engagement Agreement shall be subject to the approval of the Bankruptcy Court and shall be paid in accordance with sections 328, 330 and 331 of the Bankruptcy Code, such Federal Rules of Bankruptcy Procedure as may be applicable from time to time, and rules or procedures fixed by the Bankruptcy Court and shall be paid at Closing.

        f.      The Debtors further agree that they shall pay CBRE a commission in accordance with paragraph c. above, if, within ninety (90) calendar days after the expiration or termination of the Term the Mt. Prospect Property is sold to, or the AHM Corp. enters into a contract of sale of the Mt. Prospect Property with, or negotiations continue, resume or commence and thereafter continue leading to a sale of the Mt. Prospect Property to any person or entity (including his/her/its successors, assigns or affiliates) with whom CBRE has negotiated (either directly or through another broker or agent) or to whom the Mt. Prospect Property has been submitted prior to the expiration or termination of the Term.

        g.      The Debtors agree to cooperate with CBRE by referring to CBRE all inquiries of anyone interested in the Mt. Prospect Property.

## C.    Approval of Fee Structure Pursuant to Section 328(a) of the Bankruptcy Code

      22.     In accordance with the terms of the Engagement Agreement, the Debtors seek approval of the fee structure pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or

percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a), therefore, permits the Court to approve the fee structure proposed in the Engagement Agreement.

23. The Debtors believe that the fee structure is fair and reasonable in light of (a) industry practice and prior precedent, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) CBRE's extensive experience with respect to real estate services, and (d) the nature and scope of work to be performed by CBRE.

**D.    Disclosures and Disinterestedness**

24. Section 327(a) of the Bankruptcy Code provides that a trustee or debtor in possession is authorized to employ professional persons who do not hold or represent an interest adverse to the estate and who are "disinterested persons" to represent or assist the trustee in carrying out the trustee's duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

25. As more fully set forth in the Affidavit of Christopher Connelly (the "Connelly Declaration"), attached hereto as Exhibit B, to the best of its knowledge, information and belief, CBRE is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and does not hold an interest adverse to the Debtors. Moreover, to the best of the Debtors' knowledge, information and belief, other than in connection with these cases, CBRE does not have any connection with the Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or its respective attorneys or accountants, except as set forth in the Connelly Affidavit.

26. Based on the foregoing, the Debtors believe that the services of a real estate broker, and CBRE in particular, under the terms and conditions set forth in this Application and the Engagement Agreement are necessary to maximize the value of the Debtors' interest in the Mt. Prospect Property and is in the best interest of the Debtors, their estates, their creditors and all parties in interest.

## NOTICE

27.  Notice of this Application will be given to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain second amended and restated credit agreement, dated as of August 10, 2006; (iv) counsel to the DIP Lender; and (v) all parties entitled to notice under Delaware Bankruptcy Local Rule 2002-1(B). The Debtors submit that, under the circumstances, no further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto, approving the retention and employment of CBRE as the Debtors' real estate broker, and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware  
February 22, 2008

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

_/s/ James L. Patton, Jr._

James L. Patton, Jr. (No. 2202)  
Pauline K. Morgan (No. 3650)  
Sean M. Beach (No. 4070)  
Matthew B. Lunn (No. 4119)  
Donald J. Bowman, Jr. (No. 4383)  
The Brandywine Building  
1000 West Street - 17th Floor  
P.O. Box 391  
Wilmington, Delaware 19899  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

Counsel to Debtors and Debtors in Possession