## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------  x
In re:                                                        :  Chapter 11
                                                              :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                        :  Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                               :
                                                              :  Jointly Administered
         Debtors.                                             :
                                                              :  Ref. Docket No.: 2972
------------------------------------------------------------  x
```

### DECLARATION OF ROBERT J. SEMPLE IN SUPPORT OF
### THE DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
### AND SECTIONS 105(a), 363(b)(1) AND 503(c) OF THE BANKRUPTCY CODE
### FOR AN ORDER APPROVING AND AUTHORIZING THIRD STIPULATION
### BETWEEN CERTAIN DEBTORS AND ABN AMRO BANK N.V. REGARDING:
### (1) POST-PETITION ADVANCES; (2) SERVICING PAYMENTS;
### AND (3) MORTGAGE LOAN REFINANCINGS

I, Robert J. Semple, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Director of Kroll Zolfo Cooper ("KZC"). KZC is one of the world's leading financial advisory, interim management and litigation support firms, with a team of restructuring and litigation specialists in North America and, through its affiliates, in Europe/UK, specializing in advising debtors, creditors, investors and court-appointed officials in formal bankruptcy proceedings and out-of-court workouts. I have been employed by KZC since October 2000.

2.      On August 14, 2007, American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, the "Debtors"),[1] filed the *Application of Debtors Pursuant to Sections 105 and 363 of the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home

*Bankruptcy Code for Approval of the Agreement with Kroll Zolfo Cooper LLC, Stephen F. Cooper and Kevin Nystrom* (the "Retention Application"), pursuant to which the Debtors sought approval of the standard services agreement dated August 6, 2007 by and between the Debtors and KZC, Stephen F. Cooper and Kevin Nystrom (the "Engagement Agreement"). On September 4, 2007, the Court entered an order approving the Retention Application [D.I. 606] (the "Retention Order").

3.    I have been assigned by KZC to perform services required of KZC under the Engagement Agreement as approved by the Retention Order. Specifically, in connection with KZC's services to the Debtors under the Engagement Agreement, I have been tasked with, among other things, managing the liquidation of the Debtors' construction loans and construction loan platform. I report directly to Stephen F. Cooper, Chief Restructuring Officer of the Debtors, and Kevin Nystrom, Director of Restructuring of the Debtors.

4.    I submit this declaration (the "Declaration") in support of the *Debtors' Motion Pursuant to Bankruptcy Rule 9019 and Sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code and For an Order Approving and Authorizing Third Stipulation Between Certain Debtors and ABN AMRO Bank, N.V. Regarding: (1) Post-Petition Advances; (2) Servicing Payments; and (3) Mortgage Loan Refinancings* (the "Motion") [D.I. 2972]. Pursuant to the Motion, the Debtors seek entry of an order pursuant to sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 authorizing and approving the

---

Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

2

Third Post-Petition Advances Stipulation,[2] the compromise of the Mortgage Loans and the Bonus Plan for the Construction Loan Employees.

       5.     All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by senior officers or employees with the Debtors, upon information supplied to me by the Debtors' professionals and consultants, or upon my opinion based on my experience and knowledge with respect to the Debtors' operations, financial condition and related business issues. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtors.

       6.     I participated in the negotiation of the Third Post-Petition Advances Stipulation and have reviewed and am familiar with the Motion. This Declaration is submitted to provide an evidentiary basis for the Court to enter an order approving the Motion and the Third Post-Petition Advances Stipulation.

       7.     On September 21, 2007, the Debtors filed a motion [D.I. 900] (the "Construction Sale Motion") to authorize the sale of the Debtors' construction loan business, as a whole or in parts, and to establish procedures with respect to the same. On October 4, 2007, the Court entered an Order [D.I. 1175] approving sale procedures and scheduling a hearing to consider the sale of the construction loans and construction loan platform. Despite extending the bid deadline and adjourning the sale hearing, very few bids materialized for the construction loan platform or the individual construction loan portfolios. In the exercise of their business judgment and in light of their fiduciary duties to creditors, the Debtors decided not to accept any

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

066585.1001

of the bids and, instead, to explore non-sale alternatives for realizing value from the construction loans.

8.     As more fully set forth in the Motion, the AHM MRA Debtors and ABN have entered into three prior stipulations with respect to the Mortgage Loans and the servicing of the Mortgage Loans, each of the stipulations have been approved by separate Orders of the Court.  Through the terms of the Sale Procedures Stipulation, if there were no Qualified Bids for the Mortgage Loans, or if ABN exercised its right to notify the AHM MRA Debtors not to accept the Successful Bid at Auction, then (a) ABN would pay the Debtors $700,000 and (b) within twenty business days of the Bid Deadline or such later agreed to date, the AHM MRA Debtors would transfer, convey and turnover to ABN all of the Debtors' rights in and to the Mortgage Loans.  ABN paid the Debtors the $700,000 on November 8, 2007.  Pursuant to the Second Post-Petition Advances Stipulation, the AHM MRA Debtors agreed to use commercially reasonable efforts to keep the construction loan servicing group in place through March 31, 2008 and ABN agreed to continue making Additional Mortgage Advances up to $70 million and to make Servicing Payments as provided in the budget attached thereto.

9.     Due to regulatory issues delaying ABN's request that the AHM MRA Debtors turnover their rights in and to the Mortgage Loans to ABN as provided in the Sale Procedures Stipulation and the Second Post-Petition Advances Stipulation, ABN contacted me and requested that the Debtors keep the construction loan servicing group in place through June 30, 2008 to service the remaining Mortgage Loans and to offer certain refinancing initiatives to borrowers under the Mortgage Loans, similar to the authority granted to the Debtors to compromise certain construction loans by Order dated February 1, 2008 [D.I. 2860] (the "Construction Loans").  In connection with such request, ABN offered to fund all of the Debtors'

obligations with respect to a stay and incentive plan for the Construction Loan Employees in an amount not to exceed $450,000.

10.    There are many sound business reasons for the Debtors to enter into the Third Post-Petition Advances Stipulation.  Specifically, through the Third Post-Petition Advances Stipulation (i) ABN will continue funding its pro rata share of the budget for servicing the construction loan portfolios through June 30, 2008, which funding commitment under the Second Post-Petition Advances Stipulation is scheduled to expire on March 31, 2008; (ii) an incentive and stay bonus plan fund solely by ABN in an amount not to exceed $450,000 will be established to incentivize the Construction Loan Employees to compromise not only the Mortgage Loans, but also the Construction Loans; and (iii) ABN will waive certain claims against the Debtors and their estates.

11.    The ability to compromise the Mortgage Loans is in the best interests of the Debtors' estates and is supported by sound business reasons.  I actively participated in the Debtors' efforts to sell the construction loan portfolios and construction loan platform.  The Debtors, however, did not receive any bids that would have provided sufficient value to the Debtors' estates to justify the sale of the construction loan portfolios or the construction loan platform.  Based on my experience, the current market conditions and fluctuation of interest rates, offering incentives to borrowers and third party lenders to refinance the Mortgage Loans is the most expedient method of liquidating the Mortgage Loans while also maximizing their value for the benefit of the Debtors' estates.

12.    Additionally, the establishment of the Bonus Plan for the Construction Loan Employees is justified under the facts and circumstances of the Debtors' chapter 11 cases.  There are currently seven (7) Construction Loan Employees that will participate in the Bonus

Plan, which has both stay and incentive components. Only two of the Construction Loan Employees that will participate in the Bonus Plan have titles that may suggest they are insiders of the Debtors; David Hall, Vice President and Karen Gowins, Senior Vice President.

13.     With respect to David Hall, based on my discussions with the Debtors' senior management, Mr. Hall, despite having the title of Vice President, is not an officer of the Debtors. Vice Presidents are managerial employees of the Debtors. Vice Presidents do not have control over the Debtors' business operations and do not participate in policy making decisions or functions. Vice Presidents further are not appointed by the Debtors' board of directors, their compensation is not controlled by the board of directors and they do not have the authority to hire employees.

14.     Under the stay component of the Bonus Plan, the Construction Loan Employees, other than Karen Gowins, will be eligible to receive their allocated portion of the Bonus Pool if they remain employed by the Debtors through the earlier of June 30, 2008 or the date each of the Mortgage Loans and Construction Loans are compromised or the Debtors determine that no additional Mortgage Loans and Construction Loans will be compromised.

15.     Under the incentive component of the Bonus Plan, the Construction Loan Employees will be eligible to receive payments from the Bonus Pool if the combined unpaid principal balances of the Mortgage Loans and Construction Loans ("UPB") are reduced to the following milestones: (i) a 60% reduction of the aggregate UPB of the Mortgage Loans and the Construction Loans (the "60% Milestone"); (ii) a 80% reduction of the aggregate UPB of the Mortgage Loans and the Constructions Loans (the "80% Milestone"); and (iii) a 90% reduction of the aggregate UPB of the Mortgage Loans and the Construction Loans (the "90% Milestone").

6

066585.1001

16.    If the 60% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 10% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.  Karen Gowins will be entitled to receive 20% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan, if the 60% Milestone is reached.  If the 80% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 15% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.  Karen Gowins will be entitled to receive 30% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan, if the 80% Milestone is reached.  If the 90% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 25% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.  If the 90% Milestone is reached, Karen Gowins will be entitled to receive 50% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

17.    Because the incentive component of the Bonus Plan is directly tied to the reduction of the UPBs of the Mortgage Loans and Construction Loans through compromises, the Bonus Plan will incentivize the Construction Loan Employees to negotiate and compromise the Mortgage Loans and the Construction Loans.  The compromise of the Mortgage Loans and Construction Loans furthers the Debtors' efforts to maximize the value of the Debtors' estates and reduce, and in some instances, eliminate claims.  The establishment of the Bonus Plan thus will motivate the Construction Loan Employees to perform at an optimal level.

18.    The Bonus Plan further is cost neutral to the Debtors.  The maximum amount to paid to the Construction Loan Employees under the Bonus Plan is $450,000, which amount ABN has agreed to fund in its entirety.  Even though the Bonus Plan is being funded by

7

ABN, the incentives under the Bonus Plan are tied to actively compromising not only the Mortgage Loans, but also the Construction Loans. Prior to the Third Post-Petition Advances Stipulation and the Bonus Plan provided for therein, there was no direct incentive for the Construction Loan Employees to compromise the Construction Loans. The inclusion of the Construction Loans therefore incentivizes the Construction Loan Employees to compromise the Construction Loans. Such incentive directly adds value to the Debtors' estates for the benefit of the general unsecured creditors because the Debtors will receive all of the value realized from the compromise of the Construction Loans in excess of the payoff amount (the "Payoff Amount") provided in the stipulation with Bank of America, N.A., which stipulation was approved by Order dated January 4, 2008 [D.I. 2593]. Specifically, amounts received by the Debtors in excess of the Payoff Amount, by agreement between the Debtors and the Committee, will be placed in an account for the benefit of general unsecured creditors.

19.    The Third Post-Petition Advances Stipulation was presented to the Debtors' Chief Restructuring Officer and Director of Restructuring and approved. The terms of the Third Post-Petition Advances Stipulation were negotiated at arms' length, without collusion, in good faith, and with the parties being represented by counsel.

DB02:6587771.3                                                                                     066585.1001

WHEREFORE, for the reasons set forth herein, I believe the Motion and Third Post-Petition Advances Stipulation should be approved.

Dated: February _26_, 2008

Robert J. Semple

DB02:6587771.3

066585.1001