## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al., | Case No. 07-11047 (CSS) |
| | Jointly Administered |
| Debtors. | **Hearing Date: March 27, 2008 at 11:00 a.m. (ET)**<br>**Objection Deadline: March 17, 2008 at 4:00 p.m. (ET)** |

-------------------------------------------------------------------x

### MOTION OF THE DEBTORS FOR THE ENTRY OF AN ORDER APPROVING THE STIPULATION BY AND AMONG THE DEBTORS, CERTAIN CURRENT AND FORMER DIRECTORS AND OFFICERS OF THE DEBTORS, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY, TO ENFORCE INSURANCE POLICY IN FAVOR OF INSURED PERSONS

The above-captioned debtors and debtors in possession (collectively, "AHM" or the "Debtors") hereby move this Court (this "Motion") for entry of an order approving the stipulation ("Stipulation")[1] by and among certain present and former directors, officers, and employees of the Debtors (together with all other present and former directors, officers and employees of any of the Debtors who are now, or in the future, named or otherwise required to incur legal and related expenses covered by the Insurance Policies, the "Insured Persons"), the Debtors, and the Official Committee of Unsecured Creditors (the "Creditors' Committee") granting relief from the automatic stay, to enforce the Insured Persons' rights to receive payments of insurance policy proceeds up to $5.0 million in the aggregate for all Insured Persons pursuant to the Debtors' primary directors, officers and corporate liability insurance policy ("Primary Insurance Policy") with American International Group, Inc., National Union Fire

---

[1] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Stipulation.

Insurance Company of Pittsburgh, Pa. (the "Primary Insurer"). A copy of the Stipulation is attached as Exhibit 1 to the Order annexed hereto.[2]

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1134. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). The basis for the relief requested herein is sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code.

## BACKGROUND

2.      On August 6, 2007 (the "Petition Date") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.      On August 14, 2007, the United States Trustee for the District of Delaware appointed the Creditors' Committee. No trustee or examiner has been appointed.

4.      In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise

---

[2]  The copy of the Stipulation attached to the Order has not been executed. However, the Stipulation has been reviewed by the Creditors' Committee and counsel to the Insured Persons, and the Debtors will submit an executed version of the Stipulation before, or at the hearing.

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

       5.     The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

       6.     Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## THE ACTIONS

       7.     As described above, in the weeks leading up to the filing of these cases, primarily as a result of a perfect storm of chaos throughout the credit markets, the Debtors' fortunes took a drastic turn for the worse, which culminated in the filing of these bankruptcy cases. Because of this downturn in their businesses, approximately nineteen (19) complaints commencing securities class action lawsuits were filed in the days preceding and following the Petition Date. Certain of these complaints named the Insured Persons as defendants. In connection with these matters and other actions covered by the Insurance Policies, Insured Persons have made and likely will continue to make demands under the Primary Insurance Policy to advance defense costs to them. A schedule listing these actions is attached as Exhibit A to the Stipulation.

## THE INSURANCE POLICIES

8.      Prior to the Petition Date, the Debtors purchased: (i) the Primary
Insurance Policy, which provides up to $10 million in coverage, (ii) three excess insurance
policies, providing an additional $30 million in coverage, specifically for the benefit of the
Debtors and the Insured Persons, and (iii) one excess insurance policy, providing an additional
$10 million coverage for the benefit of the Insured Persons.  Under these policies, the Insured
Persons are entitled to have certain legal fees and expenses incurred by the Insured Persons in the
defense of actions covered by the policies advanced to them, subject to the insurance providers'
right to be repaid to the extent any person is not entitled to such payment under the policies.

9.      The Debtors have been advised that the Primary Insurer is prepared to
advance defense costs to the Insured Persons.  However, they have also been advised that the
Primary Insurer cannot risk exposing itself to liability for violating the automatic stay by
extending coverage, in the event it is determined that the Insurance Proceeds are property of the
estates.  Therefore, the parties have entered into the Stipulation requesting relief from the
automatic stay, to the extent the stay applies, to enforce the Insured Persons' rights and/or
receive payments of Defense Costs (as that term is defined in the Primary Insurance Policy)
under the Primary Insurance Policy, up to $5.0 million in the aggregate for all Insured Persons.
As such, the Insured Persons will be able to access up to $5.0 million of coverage out of a total
$50.0 million in coverage under the Debtors' various directors, officers and corporate liability
policies.

10.      The Debtors submit that the resolution embodied in the Stipulation
adequately protects the rights of the Insured Persons, while at the same time protecting the

creditors of the Debtors' estates. Accordingly, the Debtors believe that the Stipulation is a fair,

reasonable and appropriate manner in which to apportion the Insurance Proceeds at this time.

### RELIEF REQUESTED

11.    By this Motion, the Debtors request entry of an order approving the

Stipulation.

### BASIS FOR THE RELIEF REQUESTED

12.    Section 362(a) of the Bankruptcy Code provides that the commencement

of a bankruptcy case operates as an "automatic stay" of any act to obtain property of the debtor's

estate. 11 U.S.C. § 362(a). Section 541 of the Bankruptcy Code provides that a debtor's estate

is comprised of "all legal or equitable interests of the debtor in property as of the commencement

of the case." 11 U.S.C. § 541(a)(1).

13.    In In re Allied Digital Technologies Corp., 306 B.R. 505 (Bankr. D. Del.

2004) the court considered whether and to what extent the proceeds of directors and officers

insurance policies constitute property of the estate. In conducting this analysis, the court

explained that there are essentially three types of insurance policies that a corporation may

purchase. The insurance policy may provide direct, unsubordinated coverage to the debtor

corporation. In these instances, the court stated that the proceeds of the policy are clearly

property of the estate. Allied, 306 B.R. at 512. Alternatively, the insurance policy may provide

direct coverage solely to the directors and officers; providing only indemnification coverage to

the debtor. In these instances, the court stated that the proceeds of the policy are not property of

the estate. Id. Lastly, and in between these extremes, are insurance policies in which coverage

exits for the directors and officers, as well as the debtor. In this instance, the court stated that,

"the proceeds will be property of the estate if depletion of the proceeds would have an adverse

effect on the estate to the extent the policy actually protects the estate's other assets from diminution." Id.

14.    Assuming insurance proceeds are property of the estate, section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> (d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
>> (1) for cause, including lack of adequate protection of an interest in property;

11 U.S.C. § 362(d).  The policy at issue in Allied provided direct coverage to directors and officers, and limited coverage to the debtor for indemnification for amounts paid to defendants. Allied, 306 B.R. at 513.  Under those circumstances, the court held that the proceeds of the policies were not property of the estate, but that, even if they were, cause existed to grant relief from the stay to permit payment to the directors and officers. Id.  The court went on to state that, "[I]t is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers. ..." Id.  Finally, the court explained that, "[W]ithout funding, the Individual Defendants will be prevented from conducting a meaningful defense to the Trustee's claims and may suffer substantial and irreparable harm. The directors and officers bargained for this coverage." Id. at 515.

15.    In In re Arter & Hadden L.L.P., the insurance policy at issue covered the debtor, as well as certain of the debtor's officers and employees, who demanded coverage. Arter, 335 B.R. 666 (Bankr. N.D. Ohio 2005).  The Bankruptcy Court for the Northern District of Ohio held that the proceeds were property of the estate. Arter, 335 B.R. at 674.  However, it found that there was "cause to lift the automatic stay because the Executive and Management

Committee members may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense of the Trustee's Complaint." Id.

16.     In these cases, the Debtors have determined in their business judgment, following consultation with the Creditors' Committee and counsel to certain of the Insured Persons, that the benefit to the estates from distributing the proceeds of the Insurance Policies on an ongoing basis on the terms and conditions set forth in the Stipulation warrant lifting the automatic stay, to the extent it may apply, without determining whether or to what extent the proceeds of the policies may constitute property of the estates.  Indeed, if such relief is not granted, and the Insured Persons do not receive access to the proceeds of the Insurance Policies, they may face irreparable harm.  The Parties believe that the negotiated Stipulation is fair, reasonable and in the best interests of the Debtors, their creditors and their estates.  See In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998); see also Cosoff v. Rodman (In re W. T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (stating that the court should only reject negotiated compromise where it falls "below the lowest point in the range of reasonableness").

17.     Accordingly, the Debtors request that the Court enter an Order approving the Stipulation.

**NOTICE**

18.     Notice of this Motion will be provided to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the Creditors' Committee; (iii) counsel to Bank of America; (iv) counsel to the Agent for the Debtors' Postpetition Lender; (v) the Insured Persons identified in the Stipulation; (vi) the Primary Insurer; and (vii) all parties entitled to notice under

Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

19.    No previous motion for the relief sought herein has been made to this or another Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.


Dated: Wilmington, Delaware
        February ꓘꓘ , 2008

                                    YOUNG CONAWAY STARGATT & TAYLOR, LLP


                                    _____
                                    James L. Patton, Jr. (No. 2202)
                                    Pauline K. Morgan (No. 3650)
                                    Sean M. Beach (No. 4070)
                                    Matthew B. Lunn (No. 4119)
                                    Kenneth J. Enos (No. 4544)
                                    The Brandywine Building
                                    1000 West Street, 17th Floor
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 571-6600
                                    Facsimile: (302) 571-1253

                                    Counsel for Debtors and Debtors in Possession