**EXHIBIT C**

# EAGLE TSG FORECLOSURE TITLE POLICY
# AND
# COMMITMENT FOR TITLE INSURANCE

## FORECLOSURE TITLE POLICY

UPON PAYMENT OF THE PREMIUM AND SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE SCHEDULE OF EXCEPTIONS, CONDITIONS AND STIPULATIONS AND OTHER PROVISIONS OF THIS POLICY

### *First American Title Insurance Company*

A CALIFORNIA CORPORATION, HEREIN CALLED THE COMPANY, INSURES, AS OF DATE OF POLICY, AGAINST ACTUAL MONETARY LOSS OR DAMAGE, NOT EXCEEDING THE LIABILITY AMOUNT SHOWN IN SCHEDULE A, SUSTAINED OR INCURRED BY THE INSURED BY REASON OF THE FOLLOWING COVERED RISKS:

**COVERED RISKS**

1. THE TITLE TO THE ESTATE OR INTEREST IN THE LAND DESCRIBED HEREIN BEING VESTED OTHER THAN AS SHOWN IN SCHEDULE A;

2. DEFECTS, LIENS AND ENCUMBRANCES AFFECTING THE TITLE;

3. INVALIDITY OF THE FORECLOSURE BASED UPON A PETITION FOR RELIEF FILED BY OR AGAINST THE VESTEE SHOWN IN SCHEDULE A, UNDER TITLE 11 UNITED STATES CODE (BANKRUPTCY) WITH THE CLERK OF ANY COURT OF COMPETENT JURISDICTION MORE THAN FIFTEEN (15) CALENDAR DAYS PRIOR TO DATE OF POLICY.

4. THE MORTGAGE SHOWN IN PARAGRAPH 9 OF SCHEDULE A NOT HAVING SUFFICIENT PRIORITY, AS A MATTER OF LAW, TO EXTINGUISH THE INTEREST OF THE VESTEE SHOWN IN PARAGRAPH 7 OF SCHEDULE A AND THE LIENS AND ENCUMBRANCES SHOWN AS EXCEPTION(S) IN PART III OF THE SCHEDULE OF EXCEPTIONS UPON COMPLETION OF A LAWFULLY CONDUCTED FORECLOSURE;

5. THE LAND IS NOT LOCATED IN THE AREA DESCRIBED IN PARAGRAPH 2 OF SCHEDULE B, PART III;

6. THE NAMES AND ADDRESSES OF PARTIES ENTITLED TO NOTICE OF FORECLOSURE PURSUANT TO APPLICABLE LAW BEING OTHER THAN AS SHOWN IN SCHEDULE B, PART I;

7. THE NAMES AND ADDRESSES OF FEDERAL, AND STATE AUTHORITIES ENTITLED TO NOTICE OF FORECLOSURE PURSUANT TO APPLICABLE LAW BEING OTHER THAN AS SHOWN IN SCHEDULE B, PART II; AND,

8. ANY OF THE NEWSPAPERS, IF LISTED, IN PARAGRAPH 1 OF SCHEDULE B, PART III FAILING TO QUALIFY AS A PUBLICATION FOR NOTICE OF THE FORECLOSURE PURSUANT TO APPLICABLE LAW.

THE COMPANY WILL ALSO PAY THE COSTS, ATTORNEYS' FEES AND EXPENSES INCURRED IN DEFENSE OF THE TITLE, AS INSURED, BUT ONLY TO THE EXTENT PROVIDED IN THE CONDITIONS AND STIPULATIONS.

By: TODD BRACHTENBACH
Assistant Secretary
PH: (925) 688-3288
FX: (877) 514-2930

*First American Title Insurance Company*

BY _____ PRESIDENT

ATTEST _____ SECRETARY

# SCHEDULE A

PREMIUM:   $ 600.00          POLICY AND COMMITMENT NO.:   3403869
                              YOUR REF. NO.:   07-71961

1. FORECLOSURE TITLE POLICY
   DATE OF POLICY:   JULY 27, 2007          LIABILITY AMOUNT:   $ 297,000.00

2. FORECLOSURE TITLE POLICY
   INSURED:   **FIVE STAR SERVICE CORPORATION, AS TRUSTEE**

3. COMMITMENT
   PROPOSED INSURED:   **AND CITIMORTGAGE INC., AS BENEFICIARY**

4. COMMITMENT DATE   JULY 27, 2007          COMMITMENT AMOUNT:   $297,000.00

5. THE POLICY THE COMPANY IS COMMITTING TO ISSUE TO THE PROPOSED INSURED IS AN ALTA EAGLEEDGE™ HOMEOWNERS POLICY.

6. THE ESTATE OR INTEREST IN THE LAND WHICH IS COVERED BY THIS POLICY AND COMMITMENT IS:

   **A FEE**

7. TITLE TO THE ESTATE OR INTEREST IN THE LAND IS VESTED IN:

   **BEATRIZ AVILA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

8. THE LAND REFERRED TO IN THIS POLICY AND COMMITMENT, IS SITUATED IN **CITY OF IMPERIAL**, COUNTY OF **IMPERIAL** STATE OF **CALIFORNIA**, AND DESCRIBED IN **EXHIBIT A**.

9. MORTGAGE SUBJECT OF THE FORECLOSURE:

   A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS OF $296,793.00, AND ANY OTHER AMOUNTS OR OBLIGATIONS SECURED THEREBY, RECORDED OCTOBER 16, 2006 AS INSTRUMENT NO. 2006-048763 OF OFFICIAL RECORDS.
   DATED:               OCTOBER 12, 2006.
   TRUSTOR:             BEATRIZ AVILA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY.
   TRUSTEE:             FIRST AMERICAN TITLE COMPANY.
   BENEFICIARY:         MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR
   LENDER:              AMERICAN HOME MORTGAGE, A CORPORATION.

   NOTE 1: A REQUEST FOR NOTICE OF DEFAULT AND SALE PURSUANT TO SECTION 2924b OF THE CALIFORNIA CIVIL CODE WAS RECORDED OCTOBER 16, 2006 AS INSTRUMENT NO. 2006-048764 OF OFFICIAL RECORDS.

   NOTE 2: AN INSTRUMENT ENTITLED "ASSIGNMENT OF DEED OF TRUST", RELATING TO THE ABOVE MENTIONED DEED OF TRUST, WAS RECORDED JULY 27, 2007 AS INSTRUMENT NO. **07-029219** OF OFFICIAL RECORDS, EXECUTED BY MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. TO CITIMORTGAGE, INC.

   NOTE 3: A DOCUMENT RECORDED JULY 27, 2007 AS INSTRUMENT NO. **07-029220** OF OFFICIAL RECORDS PROVIDES THAT FIVE STAR SERVICE CORPORATION, A CALIFORNIA CORPORATION WAS SUBSTITUTED AS TRUSTEE UNDER THE DEED OF TRUST.

   NOTE 4: NOTICE OF DEFAULT RECORDED JULY 27, 2007 AS INSTRUMENT NO. **07-029221** OF OFFICIAL RECORDS.

# INFORMATION FOR TRUSTEE

**SCHEDULE B – PART I : 10-DAY, 1 MONTH AND COURTESY MAILINGS**

1. THE NAMES AND ADDRESSES OF PERSONS WHO HAVE RECORDED REQUESTS, AS PROVIDED BY SECTION 2924b (a) AND (d) OF THE CIVIL CODE, FOR A COPY OF NOTICE OF DEFAULT AND FOR A COPY OF NOTICE OF SALE ARE:

   AMERICAN HOME MORTGAGE
   538 BROADHOLLOW RD
   MELVILLE NY 11747
   (REQUEST FOR NOTICE)

   BEATRIZ AVILA
   2661 OASIS STREET
   IMPERIAL CA 92251
   (TRUSTOR UNDER FCL DEED OF TRUST)

2. THE NAMES AND ADDRESSES OF ADDITIONAL PERSONS WHO, AS PROVIDED BY SECTION 2924b (c) (1) AND (2) OF THE CIVIL CODE, ARE ENTITLED TO RECEIVE A COPY OF NOTICE OF DEFAULT AND A COPY OF NOTICE OF SALE ARE:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
   P.O. BOX 2026
   FLINT MI 48501-2026
   (REGARDING ITEM #4)

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
   C/O AMERICAN HOME MORTGAGE
   520 BROADHOLLOW ROAD
   MELVILLE NY 11747
   (REGARDING ITEM #4)

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
   C/O AMERICAN HOME MORTGAGE
   538 BROADHOLLOW RD
   MELVILLE NY 11747
   (REGARDING ITEM #4)

3. WHILE THE CALIFORNIA CIVIL CODE UNDER SECTION 2924b DOES NOT REQUIRE COPIES OF NOTICES OF DEFAULT AND NOTICES OF SALE TO BE SENT TO THE FOLLOWING PARTIES, THESE NOTICES MAY BE SENT TO THE NAMES AND ADDRESS AS SHOWN:

   NONE


**IMPORTANT NOTICE REGARDING MILITARY STATUS:** ATTENTION IS CALLED TO THE SERVICEMEMBERS CIVIL RELIEF ACT WHICH CONTAINS INHIBITIONS AGAINST THE SALE OF THE LAND UNDER A MORTGAGE IF THE VESTEE IS ENTITLED TO THE BENEFITS OF THE ACT.

**SCHEDULE B – PART II : STATE AND FEDERAL MAILINGS**

4. THE NAMES AND ADDRESSES OF STATE TAXING AGENCIES WHICH, AS PROVIDED BY SECTION 2924b (c) (3) OF THE CIVIL CODE, ARE ENTITLED TO RECEIVE A COPY OF NOTICE OF SALE ARE:

   NONE

5.  ATTENTION IS CALLED TO THE FEDERAL TAX LIEN ACT OF 1966 (PUBLIC LAW 89-719) WHICH, AMONG OTHER THINGS, PROVIDES FOR THE GIVING OF WRITTEN NOTICE OF SALE IN A SPECIFIED MANNER TO THE SECRETARY OF TREASURY OR HIS DELEGATE AS A REQUIREMENT FOR THE DISCHARGE OR DIVESTMENT OF A FEDERAL TAX LIEN IN A NON-JUDICIAL SALE, AND ESTABLISHES WITH RESPECT TO SUCH LIEN A RIGHT IN THE UNITED STATES TO REDEEM THE PROPERTY WITHIN A PERIOD OF 120 DAYS FROM THE DATE OF ANY SUCH SALE:

    **NONE**

## SCHEDULE B – PART III : NEWSPAPER, APN, ADDRESS

6.  NEWSPAPERS QUALIFYING AS A PUBLICATION FOR NOTICE OF THE FORECLOSURE PURSUANT TO APPLICABLE LAW:

    **IMPERIAL VALLEY PRESS**
    **205 NORTH EIGHTH STREET**
    **EL CENTRO, CA 92243**
    **760 337-3400**
    **DEADLINE: EVERYDAY EXCEPT SATURDAY**

7.  THE LAND REFERRED TO IN THIS POLICY IS LOCATED IN:    **CITY OF IMPERIAL**

    IF NOT IN A CITY, JUDICIAL DISTRICT IN WHICH SAID LAND IS LOCATED:

    WITH AN ADDRESS OF:    **2661 OASIS STREET, IMPERIAL, CALIFORNIA 92251**

    ASSESSORS PARCEL OR TAX IDENTIFICATION NO.:    **064-013-008**

## EXHIBIT A

THE LAND IS SITUATED IN **CITY OF IMPERIAL**, COUNTY OF **IMPERIAL** STATE OF **CALIFORNIA**, AND DESCRIBED AS FOLLOWS:

LOT 16, DESERT MIRAGE ESTATES UNIT NO. 1, IN THE CITY OF IMPERIAL, COUNTY OF IMPERIAL, STATE OF CALIFORNIA, ACCORDING TO MAP ON FILE IN BOOK 24, PAGE 56 OF FINAL MAP ON FILE IN THE OFFICE OF THE COUNTY RECORDER OF IMPERIAL COUNTY.

## SCHEDULE OF EXCEPTIONS

THIS FORECLOSURE TITLE POLICY DOES NOT AND THE POLICY THE COMPANY IS COMMITTING TO ISSUE IN SCHEDULE A WILL NOT INSURE AGAINST LOSS OR DAMAGE, AND THE COMPANY WILL NOT PAY COSTS, ATTORNEYS' FEES AND EXPENSES, WHICH ARISE BY REASON OF:

## PART I

1. ANY DISCREPANCIES OR CONFLICTS IN BOUNDARY LINES, ANY SHORTAGES IN AREA, OR ANY ENCROACHMENT OR OVERLAPPING OF IMPROVEMENTS.

2. ANY FACTS, RIGHTS, INTEREST OR CLAIMS WHICH ARE NOT SHOWN BY THE PUBLIC RECORDS BUT WHICH COULD BE ASCERTAINED BY AN ACCURATE SURVEY OF THE LAND OR BY MAKING INQUIRY OF PERSONS IN POSSESSION THEREOF.

3. EASEMENTS, LIENS OR ENCUMBRANCES OR CLAIMS THEREOF, WHICH ARE NOT SHOWN BY THE PUBLIC RECORDS.

4. ANY LIEN, OR RIGHT TO LIEN FOR SERVICES, LABOR OR MATERIAL IMPOSED BY LAW AND NOT SHOWN BY THE PUBLIC RECORDS.

5. COVENANTS, CONDITIONS AND RESTRICTIONS, IF ANY, SHOWN BY THE PUBLIC RECORDS.

6. EASEMENTS OR SERVITUDES, IF ANY, APPEARING IN THE PUBLIC RECORDS.

7. ANY LEASE, GRANT, EXCEPTION OR RESERVATION OF MINERAL RIGHTS APPEARING IN THE PUBLIC RECORDS.

8. ALL ASSESSMENTS AND TAXES NOT YET DUE AND PAYABLE AT DATE OF POLICY AND DATE OF COMMITMENT.

9. THE MORTGAGE DESCRIBED OR REFERRED TO IN PARAGRAPH 9 OF SCHEDULE A.

## PART II - ADDITIONAL EXCEPTIONS (SENIOR)

THE FOLLOWING ARE ALSO EXCEPTIONS TO COVERAGE IN THIS FORECLOSURE TITLE POLICY THAT HAVE PRIORITY OVER THE MORTGAGE AND WILL BE SHOWN IN THE SCHEDULE OF EXCEPTIONS IN THE POLICY THE COMPANY IS COMMITTING TO ISSUE IN PARAGRAPH 5 OF SCHEDULE A UPON COMPLETION OF A LAWFULLY CONDUCTED FORECLOSURE AND HAVING MET THE COMMITMENT REQUIREMENTS:

1. GENERAL TAXES, IF UNPAID AND ASSESSMENTS, IF ANY.

TAX ACCOUNT NO **064-013-008**

NOTE: DUE TO TAX ASSESSOR INFORMATION UPGRADES IN **IMPERIAL** COUNTY, THE PUBLIC RECORDS ARE NOT AVAILABLE. WHEN THE RECORDS ARE AVAILABLE, AN ENDORSEMENT TO THE GUARANTEE WILL BE ISSUED UPON REQUEST.

2. SUPPLEMENTAL TAXES FOR THE FISCAL YEAR **2006-2007**, ASSESSED UNDER CHAPTER 3.5 COMMENCING WITH SECTION 75 OF THE CALIFORNIA REVENUE AND TAXATION CODE.
FIRST INSTALLMENT: $1,317.16, OPEN.
DUE DATE: DECEMBER 10, 2007.
SECOND INSTALLMENT: $1,317.16, OPEN.
DUE DATE: APRIL 10, 2008.
A.P. NO.: 990-034-485.

3. THE PROPERTY COVERED HEREIN LIES WITHIN THE BOUNDARIES OF VARIOUS ASSESSMENT DISTRICTS AND ANY AMENDMENTS THERETO.

## PART III -AFFECTED EXCEPTIONS (JUNIOR)

THE FOLLOWING ARE ALSO EXCEPTIONS TO COVERAGE IN THIS FORECLOSURE TITLE POLICY BUT WILL NOT BE SHOWN IN THE SCHEDULE OF EXCEPTIONS IN THE POLICY THE COMPANY IS COMMITTING TO ISSUE IN PARAGRAPH 5 OF SCHEDULE A UPON COMPLETION OF A LAWFULLY CONDUCTED FORECLOSURE AND HAVING MET THE COMMITMENT REQUIREMENTS:

4. A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS OF **$74,198.00**, AND ANY OTHER AMOUNTS OR OBLIGATIONS SECURED THEREBY, RECORDED **OCTOBER 16, 2006** AS INSTRUMENT NO. **2006-048764** OF OFFICIAL RECORDS.

| | |
|---|---|
| DATED: | **OCTOBER 11, 2006.** |
| TRUSTOR: | **BEATRIZ AVILA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY.** |
| TRUSTEE: | **FIRST AMERICAN TITLE COMPANY.** |
| BENEFICIARY: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR** |
| LENDER: | **AMERICAN HOME MORTGAGE.** |

## COMMITMENT FOR TITLE INSURANCE

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE SCHEDULE OF EXCEPTIONS, CONDITIONS AND STIPULATIONS AND OTHER PROVISIONS OF THIS POLICY AND COMMITMENT:

1. THE COMPANY AGREES TO ISSUE AN *EAGLE*EDGE™ ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE TO THE PROPOSED INSURED ACCORDING TO THE TERMS OF THIS POLICY AND COMMITMENT SUBJECT TO THE FOLLOWING:

   A. THE COMPANY MAY SHOW AS EXCEPTIONS IN SCHEDULE B OF THE POLICY THE COMPANY IS COMMITTING TO ISSUE ANY ADDITIONAL DEFECTS, LIENS, ENCUMBRANCES OR OTHER MATTERS AFFECTING TITLE THAT APPEAR FOR THE FIRST TIME IN THE PUBLIC RECORDS, OR THAT ARE CREATED OR ATTACH, BETWEEN THE COMMITMENT DATE AND THE DATE ALL OF THE REQUIREMENTS SET FORTH BELOW ARE MET.

   B. IF THE REQUIREMENTS SET FORTH BELOW HAVE NOT BEEN MET WITHIN ONE YEAR FOLLOWING THE PUBLIC AUCTION FORECLOSURE SALE DATE OF THE MORTGAGE SUBJECT OF THE FORECLOSURE OUR OBLIGATION TO ISSUE A POLICY WILL END.

   C. THE COMPANY SHALL HAVE NO OBLIGATION TO ISSUE THE POLICY PURSUANT TO THIS COMMITMENT UNLESS THE PROPOSED INSURED HAS MET THE REQUIREMENTS SET FORTH BELOW AND THE PROPOSED INSURED IS THE GRANTEE IN OR RECIPIENT OF THE FORECLOSURE DEED.

2. THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT WILL END AT THE EARLIER OF THE END OF THE PERIOD REFERRED TO IN PARAGRAPH 1(B) ABOVE OR WHEN THE *EAGLE*EDGE™ ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE IS ISSUED AND THEN THE COMPANY'S LIABILITY AND OBLIGATION WILL BE SOLELY UNDER THAT POLICY TO THE INSURED NAMED THEREIN.

## COMMITMENT REQUIREMENTS

**THE FOLLOWING REQUIREMENTS MUST BE MET:**

1. PAY US THE PREMIUMS, FEES AND CHARGES FOR THE POLICY.

2. COMPLETION OF THE FORECLOSURE SATISFACTORY TO US OF THE MORTGAGE SHOWN IN SCHEDULE A, PARAGRAPH 9

3. FORECLOSURE DEED SATISFACTORY TO US CREATING THE INTEREST IN THE LAND TO BE INSURED MUST BE SIGNED, DELIVERED AND RECORDED.

4. YOU MUST TELL US IN WRITING THE NAME OF ANYONE NOT REFERRED TO IN THIS COMMITMENT WHO WILL GET AN INTEREST IN THE LAND OR WHO WILL MAKE A LOAN ON THE LAND. WE MAY MAKE ADDITIONAL REQUIREMENTS OR EXCEPTIONS RELATING TO THE INTEREST OR THE LOAN.

5. ADDITIONAL DOCUMENTS SATISFACTORY TO US TO CREATE THE INTEREST IN THE LAND TO BE INSURED WHICH MUST BE SIGNED, DELIVERED AND RECORDED.

6. PAY REAL PROPERTY TAXES AND ASSESSMENTS THAT ARE DUE AND PAYABLE UNLESS SHOWN AS PAID.

7. ANY OTHER REQUIREMENTS:

## EXCLUSIONS FROM COVERAGE

1. The following matters are expressly excluded from the coverage of this Policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

(a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the Land; (iii) a separation in ownership or a change in the dimensions or area of the Land or any parcel of which the Land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy.
(b) Any governmental police power not excluded by 1(a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the Public Records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
(a) created, suffered, assumed or agreed to by the Insured Claimant;
(b) not known to the Company, whether or not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this Policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy; or
(e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the estate or interest insured by this Policy.

4. Any claim, which arises out of the transaction vesting in the Insured the estate or interest insured by this Policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
(a) the transaction creating the estate or interest insured by this Policy being deemed a fraudulent conveyance or fraudulent transfer; or
(b) the transaction creating the estate or interest insured by this Policy being deemed a preferential transfer except where the preferential transfer results from the failure:
(i) to timely record the instrument of transfer; or
(ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

**1. DEFINITION OF TERMS.**
The following terms when used in this Policy and Commitment mean:
(a) "Foreclosure Deed": the sheriffs deed, clerks deed, trustees deed or other conveyance document which vests title or creates an interest to the Land in the purchaser at a mortgage foreclosure sale.
(b) "Insured": the foreclosure title policy insured named in Schedule A.
(c) "Insured Claimant": an insured claiming loss or damage.
(d) "Knowledge" or "Known": actual knowledge, not constructive knowledge or notice which may be imputed to an Insured by reason of the Public Records as defined in this Policy or any other records which impart constructive notice of matters affecting the Land.
(e) "Land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "Land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the Land is insured by this Policy.
(f) "Mortgage": mortgage, deed of trust, trust deed, or other security instrument.
(g) "Proposed Insured": the commitment proposed insured named in Schedule A.
(h) "Public Records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the Land is located.

**2. Notice of Claim to be Given by Insured Claimant.**
An Insured shall notify the Company promptly in writing in case knowledge shall come to an Insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as stated herein, and which might cause loss or damage for which the Company may be liable by virtue of this Policy and Commitment. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any Insured under this Policy and Commitment unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**3. Duty to Defend or Prosecute.**
(a) Upon written request by the insured and subject to the options contained in Section 5 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action that allege matters not insured against by this policy.
(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.
(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

4. **Proof of Loss or Damage.**
In addition to and after the notices required under Section 2 of these Conditions and Stipulations have been provided to the Company, a proof of loss or damage signed and sworn to by the Insured shall be furnished to the Company within ninety (90) days after the Insured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Policy and Commitment that constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Insured to provide the required proof of loss or damage, the Company's obligation to the Insured under the Policy and Commitment shall terminate. In addition, the Insured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the Insured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above Section, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Policy and Commitment to the Insured for that claim.

5. **Options to Pay or Otherwise Settle Claims; Termination of Liability.**
In case of a claim under this Policy and Commitment, the Company shall have the following additional options:
(a)   To Pay or Tender Payment of the Liability Amount or to Purchase the Indebtedness.
The Company shall have the option to pay or settle or compromise for or in the name of the Insured any claim which could result in loss to the Insured within the coverage of this Policy and Commitment, or to pay the full amount of this Policy and Commitment or, if this Policy and Commitment is issued for the benefit of a holder of a Mortgage or a lienholder, the Company shall have the option to purchase the indebtedness secured by that Mortgage or that lien for the amount owing thereon, together with any costs, reasonable attorneys' fees and expenses incurred by the Insured Claimant which were authorized by the Company up to the time of purchase.
The purchase, payment or tender of payment of the full amount of the Policy and Commitment shall terminate all liability of the Company hereunder. In the event after notice of claim has been given to the Company by the Insured the Company offers to purchase the indebtedness, the owner of the indebtedness shall transfer and assign the indebtedness, together with any collateral security, to the Company upon payment of the purchase price.
Upon the exercise by the Company of the option provided for in Section (a) the Company's obligation to the Insured under this Policy and Commitment for the claimed loss or damage, other than to make the payment required in that Section, shall terminate, including any obligation to continue the defense or prosecution of any litigation, and the Policy and Commitment shall be surrendered to the Company for cancellation.
(b)   To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.
To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this Policy and Commitment, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.
Upon the exercise by the Company of the option provided for in Section (b) the Company's obligation to the Insured under this Policy and Commitment for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation.

6. **Determination and Extent of Liability.**
This Policy and Commitment is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this Policy and Commitment and only to the extent herein described, and subject to the Exclusions From Coverage and other provisions of this Policy and Commitment.
The liability of the Company under this Policy and Commitment to the Insured shall not exceed the least of:
(a)   the Liability Amount stated in Paragraph 2 of Schedule A;
(b)   the amount of the unpaid principal indebtedness secured by the Mortgage described in Paragraph 9 of Schedule A, as limited or provided under Section 5 of these Conditions and Stipulations or as reduced under Section 8 of these Conditions and Stipulations, at the time the loss or damage insured against by this Policy and Commitment occurs, together with interest thereon; or
(c)   the difference between the value of the estate or interest covered hereby as stated herein and the value of the estate or interest subject to any defect, lien or encumbrance insured against by this Policy and Commitment.

7. **Limitation of Liability.**
(a)   If the Company establishes the title, the validity of the foreclosure process and sale whether by re-foreclosure, strict foreclosure or otherwise, or removes the alleged defect, lien or encumbrance, or cures the lack of notice of the default or foreclosure sale, or otherwise establishes the priority of the lien of the Mortgage Subject of the Foreclosure, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, the validity of the foreclosure process and sale, or the priority of the lien of the Mortgage Subject of the Foreclosure, as insured.
(c)   The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

8. **Reduction or Termination of Liability.**
(a)   All payments under this Policy and Commitment, except payments made for costs, attorneys' fees and expenses pursuant to Section 3 shall reduce the Liability Amount pro tanto.
(b)   The coverage provided by this Foreclosure Title Policy terminates (i) if the default which gave rise to the foreclosure is either waived by the owner of the indebtedness secured by the Mortgage subject of the Foreclosure or cured; or (ii) when the Proposed Insured has met the Commitment Requirements and is the grantee in or recipient of the Foreclosure Deed but in any event coverage shall terminate one (1) year following the public auction foreclosure sale date.

9. **Payment of Loss.**
(a) No payment shall be made without producing this Policy and Commitment for endorsement of the payment unless the Policy and Commitment has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within thirty (30) days thereafter.

10. **Subrogation Upon Payment or Settlement.**
Whenever the Company shall have settled and paid a claim under this Policy and Commitment, all right of subrogation shall vest in the Company unaffected by any act of the Insured Claimant.
The Company shall be subrogated to and be entitled to all rights and remedies which the Insured would have had against any person or property in respect to the claim had this Policy and Commitment not been issued. If requested by the Company, the Insured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Insured shall permit the Company to sue, compromise or settle in the name of the Insured and to use the name of the Insured in any transaction or litigation involving these rights or remedies.
If a payment on account of a claim does not fully cover the loss of the Insured the Company shall be subrogated to all rights and remedies of the Insured after the Insured shall have recovered its principal, interest, and costs of collection.

11. **Liability Limited to This Policy and Commitment; Policy and Commitment Entire Contract.**
(a)   This Policy and Commitment together with all endorsements, if any, attached hereto by the Company is the entire Policy and Commitment and contract between the Insured and the Company. In interpreting any provision of this Policy and Commitment, this Policy and Commitment shall be construed as a whole.
(b)   Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Policy and Commitment.
(c)   No amendment of or endorsement to this Policy and Commitment can be made except by a writing endorsed hereon or attached hereto and authorized by the Company.

12. **Notices, Where Sent.**
All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Policy and Commitment and shall be addressed to the Company at 1 First American Way, Santa Ana, California 92707, or to the office which issued this Policy and Commitment.