IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| AMERICAN HOME MORTGAGE ) | |
| HOLDINGS, INC., a Delaware corporation, ) | Case No. 07-11047 (CSS) |
| et al.[1] ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | **Ref. Docket Nos. 3054, 3056, 3058 &** |
| ) | **3143** |
| ---------------------------------------------------------- ) | |

### DEBTORS' OBJECTION TO MOTION OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT, UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 7033 AND 7034, TO SHORTEN DEBTORS' TIME TO RESPOND TO DISCOVERY IN CONNECTION WITH THE MOTION OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT, FOR RELIEF FROM AUTOMATIC STAY

The above-captioned debtors and debtors-in-possession (the "Debtors") object to the Motion of Bank of America, N.A., as Administrative Agent (the "Administrative Agent"), Under Federal Rules of Bankruptcy Procedure 7033 and 7034, to Shorten Debtors' Time to Respond to Discovery in Connection with the Motion of Bank of America, N.A., as Administrative Agent, for Relief from Automatic Stay [Docket No. 3143] (the "Motion[2]") filed on March 3, 2008.[3] In support of this Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

[3] This Objection pertains only to the Motion. The Debtors will be filing a separate objection to the Motion of Bank of America, N.A., as Administrative Agent, for Relief from Automatic Stay [Docket No. 3054] (the "Stay Relief Motion").

## **OBJECTION**

### I. Shortening the Time for Debtors to Respond to the Discovery Requests And Scheduling the Final Hearing As Early As March 27, 2008 Will Prejudice the Debtors.

1. Through its Motion, the Administrative Agent is seeking to contrive a purported emergency that simply does not exist. Even if the Administrative Agent's concerns as expressed in the Motion have risen to the level of an emergency from its own perspective, it is an emergency of the Administrative Agent's own making. Expediting the discovery process and the consideration of the Stay Relief Motion is not necessary to protect the rights of the Administrative Agent and will cause significant prejudice to the Debtors and their estates.

2. As a preliminary matter, the Motion "puts the rabbit in the hat" and presumes that the Court has already conducted a preliminary hearing and determined that the Stay Relief Motion should be heard on March 27, 2008. The Motion thereby attempts to shortcut the practices and procedures of this Court and restrict the Debtors' rights to address the Court at the preliminary hearing on discovery and scheduling matters. In fact, Del. Bankr. L.R. 4001-1(c)(iii) specifically contemplates that at the preliminary hearing on a motion for relief from stay, the Court may "set a date by which the parties shall exchange supporting documentation ..." and "set a date and time for a final hearing." The Administrative Agent has scheduled the Stay Relief Motion for a preliminary hearing on March 13, 2008. At that time, both parties' timing issues can be fully addressed with the Court. However, since the Administrative Agent has effectively already accelerated the process by filing the Motion, the Debtors will attempt to outline some of their discovery issues in this response.[4]

---

[4] The Debtors are early in the process of reviewing documents in response to the Administrative Agent's Discovery Requests and reserve the right to object to those requests on any and all grounds permitted by the Bankruptcy Rules and/or seek an appropriate protective order against the Administrative Agent for its burdensome Discovery Requests.

3. Despite the Administrative Agent's assertion that the Discovery Requests are not onerous, given what it describes as a limited number of interrogatories and requests for production, the amount of potentially responsive materials that will need to be identified, reviewed and segregated is staggering.[5]

4. With respect to the document requests, as will be more fully addressed at the preliminary hearing, because the requests are overly broad, the Debtors cannot possibly produce the requested information early. The majority of the discovery requests ask for information about the Mortgage Loans for the period beginning six weeks prior to the Petition Date. Extending the relevant search period in this manner significantly increases the time it will take for the Debtors to respond, since, as discussed below, the Debtors did not maintain records or refer to the Mortgage Loans in a manner which would permit any type of streamlined search.

5. Prior to the Petition Date, the Capital Markets group at AHM Corp., which consisted of approximately 350 employees, was responsible for facilitating the sale of mortgage loans. The mortgage loans were sold by type and identified by loan number -- not by warehouse lender such as Bank of America, N.A.[6] So, to ascertain whether any email to or from any of these 350 employees discussed selling one or a group of the Mortgage Loans, each email that refers to any loan number will need to be reviewed and then cross-referenced to the loan numbers for each of the approximately 3,400 Mortgage Loans. The Capital Markets group now consists of three individuals who were involved in the sale of mortgage loans, and nineteen administrative staff. For these individuals to identify and gather documents responsive to just

---

[5] For example Request for Production No. 3 requests: "All documents relating to Your efforts to sell or otherwise dispose of all or any portion of the Mortgage Loans from June 30, 2007 to present." and Requests for Production No. 4 requests: "All communications between You and any Potential Purchaser of all or any portion of the Mortgage Loans regarding such loans from June 30, 2007 to present." These requests alone could entail tens-of-thousands of pages of materials.

[6] The Mortgage Loans were funded through Bank of America, N.A.'s warehouse line.

Requests for Production Nos. 3 and 4 would be an arduous task. The Debtors do not believe it is even feasible to complete such a massive and burdensome review within 30 days, let alone by March 14, 2008.

6. Moreover, as explained to counsel for the Administrative Agent, the Debtors also need time to take discovery of the Administrative Agent and to adequately prepare for the hearing on the Stay Relief Motion. The Debtors served their First Set of Interrogatories and Requests for Production Directed to the Administrative Agent on March 4, 2008, and will need adequate time to analyze the Administrative Agent's responses well in advance of the hearing on the Stay Relief Motion. In addition, the Debtors will also need to take deposition(s) of the Administrative Agent's witnesses, and may also need time to retain any expert(s) necessary in their defense of the Stay Relief Motion.

7. And, of course, the Administrative Agent will also be taking at least one deposition of the Debtors. In fact, when it filed its Stay Relief Motion, the Administrative Agent contemporaneously filed and served a Notice of Deposition of the Debtors pursuant to Fed.R.Civ.P. 30(b)(6) and scheduled the deposition for <u>March 31, 2008</u>. Obviously, at the time it filed its Stay Relief Motion, even the Administrative Agent did not contemplate that the hearing on the Stay Relief Motion would be held on March 27. Having received the Document Requests with the required 30 day response period and the Notice of Deposition scheduled for March 31 simultaneously with the Stay Relief Motion, the Debtors justifiably presumed that the Administrative Agent would not be seeking to have the Stay Relief Motion heard until mid-April, at the earliest. It seems that the Motion seeking expedited consideration was an afterthought on the part of the Administrative Agent -one intended to disadvantage the Debtors.

8. As set forth above, and as will be more fully addressed at the preliminary

hearing, the Debtors cannot fully respond to the Administrative Agent's discovery, conduct its own discovery and adequately prepare for the hearing on the Stay Relief Motion within the expedited schedule requested by the Administrative Agent.

## II. The Administrative Agent Fails to Establish Good Cause to Shorten the Time for Debtors to Respond to the Discovery Requests.

9. The Administrative Agent fails to establish good cause why the Court should exercise its discretion to shorten the time for the Debtors to comply with the Discovery Requests, especially in light of the prejudice to be suffered by the Debtors if such request is granted. See Williams v. Board of County Comm'rs, 2000 U.S. Dist. LEXIS 10542,*4 (D. Kan. 2000) (denying plaintiff's motion to shorten the time to respond to requests for production where the plaintiff failed to establish good cause for shortening the time period).

10. No true exigency exists to warrant the request to expedite this process. As conceded in the Motion, the Administrative Agent has made repeated requests and placed consistent pressure upon the Debtors to sell all of the Administrative Agent's collateral, including the Mortgage Loans. In fact, the Administrative Agent's primary concern has been speed, at times to the detriment of the estates' ability to recover a fair and adequate price for the collateral. Yet, the Administrative Agent took no action with respect to the Mortgage Loans until the filing of its Stay Relief Motion. After all of this time, clearly the Administrative Agent cannot credibly claim a sudden change in circumstances, or a sudden decline in the purported value of the Mortgage Loans, to justify expedited consideration of the Stay Relief Motion. The fact that the Administrative Agent chose to wait six months from the Petition Date to seek relief from the stay or adequate protection suggests that there

is no need for expedited consideration of the Stay Relief Motion.[7]

11.     The Administrative Agent also erroneously contends that shortening the Debtors' time to respond is "especially necessary given that the Debtors are now improperly refusing to provide the Administrative Agent and its representatives with information required pursuant to the Final Cash Collateral Order." Motion at ¶¶ 8-9. The Administrative Agent further, erroneously, alleges that the Debtors will no longer "provide the Administrative Agent's financial advisors with routine access to the Debtors' books, records and personnel..." and will only provide information relating to the Mortgage Loans through discovery requests. Motion at ¶ 9.

12.     In reality, the Debtors have maintained an open door policy to the Administrative Agent and its advisors throughout these cases and have attempted to accommodate reasonable requests for information as quickly as possible. However, as the Administrative Agent was preparing to file its Stay Relief Motion, its advisors, FTI Consulting ("FTI"), delivered an "agenda" and request for voluminous information to the Debtors (the "Agenda") and "informed" the Debtors that they would be appearing at the Debtors' headquarters in Melville in a few short days to essentially interview the Debtors about a host of topics – a request that went far beyond the requirements of the Final Cash Collateral Order. A copy of the Agenda is attached hereto as Exhibit A.

13.     The Debtors have never "refused" to comply with the Final Cash Collateral Order, as evidenced by the letter from Pauline K. Morgan to Scott D. Talmadge

---

[7] The Administrative Agent's request for adequate protection was triggered by the filing of its Stay Relief Motion. Thus, the only relevant diminution in value of the Mortgage Loans is any diminution occuring from and after the filing of the Stay Relief Motion. See e.g., In re Wilson, 70 Bankr. 46, 48 (Bankr. N.D. Ill. 1987) ("requiring adequate protection to cover depreciation from the date that adequate protection is sought holds two benefits which are consistent throughout all such cases. First, the rule does not reward the creditor for inaction. . . . Second, this rule puts the debtor on notice at the time the creditor's motion is filed that at a future point in time the collateral will have to be relinquished or payments will have to be made.")

dated February 26, 2008 attached hereto as <u>Exhibit B</u> (the "<u>Morgan Letter</u>"). The Morgan Letter provides in pertinent part:

> The Debtors also intend to respond to the Administrative Agent's reasonable requests for information to the extent required by the Final Cash Collateral Order. However, with respect to the issues raised in the [Stay Relief] Motion, the Administrative Agent may not circumvent applicable rules of procedure under the guise of requesting information pursuant to the Final Cash Collateral Order. FTI's recent request and proposed agenda extended far beyond the scope of the Final Cash Collateral Order…. All requests for inspection and access to the Debtors' books and records under the Final Cash Collateral Order should be in writing to counsel for the Debtors. We are in the process of compiling the documents requested in FTI's agenda, to the extent they fit within the scope of the Final Cash Collateral Order and are not the subject of litigation, and will advise you as soon as they are available for inspection.

In fact, the Debtors' representatives delivered documents to FTI on March 1, 2008, in response to the Agenda, as evidenced by the email from Bret Fernandes of Kroll Zolfo Cooper LLC to Jon Moyer at FTI attached hereto as <u>Exhibit C</u>.

14. Given that the Debtors are complying with the Final Cash Collateral Order and will also provide requested documentation to the Administrative Agent through the Discovery Requests at issue in this Motion, the Administrative Agent has no "need" to receive the responses to the Discovery Requests early so that "Mortgage Loans may be monitored pending a hearing on the Stay Relief Motion".

15. In summary, the Administrative Agent simply has not established good or sufficient cause to expedite the Court's consideration of the Stay Relief Motion, especially in light of the prejudice to be suffered by the Debtors.

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion and grant the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
       March 5, 2008

                                       YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                       */s/*

                                       Pauline K. Morgan (No. 3650)
                                       John T. Dorsey (No. 2988)
                                       Erin Edwards (No. 4392)
                                       The Brandywine Building
                                       1000 West Street, 17th Floor
                                       Wilmington, Delaware 19801
                                       Telephone: (302) 571-6600
                                       Facsimile: (302) 571-1253

                                       Counsel for Debtors and
                                       Debtors in Possession

# **EXHIBIT A**



FTI Consulting
2001 Ross Avenue
Suite 400
Dallas, TX 75201
214.397.1600 telephone
214.397.1790 facsimile
www.fticonsulting.com

# Agenda Items for 2/22/08 Call with AHM

1. Status of Scratch and Dent Sale

2. Status of Sale of Conforming Fixed to Countrywide

    - Provide list of loans that Countrywide has excluded and indicate reason for exclusion.
    - Did changes in GSE guidelines cause the exclusions? If so, please describe the changes in the guidelines.
    - Is Lehman Bros. going to purchase all loans excluded by Countrywide?
    - Confirm pricing and estimated date of closing.

3. Additional MSR Sales and Timetable

    - Provide a list of all pending MSR sales and their current status, including timetable.
    - For all MSR sales that have closed but additional payments are due from the buyer, provide a schedule of the payments owed, the timing of the payments, and describe any contingencies that affect the amount or timing of the additional payments.

4. State Bond Loans Serviced by Others

    - Provide a tape with loan level detail for each of these loans.
    - Provide reconciliation of all loan payments made by these borrowers since the Petition Date.
    - What is the status of the Debtors' communications with the various State Agencies?
    - What is the Debtors' plan to sell all remaining State Bond loans which are not purchased by the various State Agencies?

5. UNIFY Data Tapes

    - Provide UNIFY data tapes for the entire loan portfolio as of month end for July, August, September, October, and November, 2007.

6. REO

    - Provide detailed list of REO properties as of the Petition Date.
    - Provide detailed list of REO properties at the end of each month for August, September, October, November, December, 2007, and January, 2008.
    - Provide schedule of any sales and additions for each of the months referenced above.
    - For each REO property sold, provide full accounting of the net sales proceeds.

7. Delinquent 2nd Liens

    - What is the current plan for these loans given that the proposal with Real Time Solutions does not appear to be a workable plan?

8. Performing 2nd Liens and HELOCs

    - What is the Debtor doing to liquidate this portfolio of loans?

9. Option ARMS and Hybrid Option ARMS

    - What is the Debtor doing to liquidate this portfolio of loans?

10. Reconciliation of DB Accounts

    - Provide the support for the reconciliation of all monies on deposit in the DB accounts.

F T I

## **EXHIBIT B**

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

PAULINE K. MORGAN
DIRECT DIAL: 302-571-6707
DIRECT FAX:  302-576-3318
pmorgan@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

February 26, 2008

Via E-Mail

Scott D. Talmadge, Esquire
Kaye Scholer LLP
415 Park Avenue
New York, NY 10022-3598

> Re:  American Home Mortgage Holdings, Inc., et al.
>      Case No. 07-11047 (CSS)

Dear Scott:

    This will respond to your letter dated February 25, 2008 and will supplement the e-mail response provided by Bob Brady on February 25, 2008.

    First, your assertion that "[t]he Debtors have recently canceled" certain of our regularly scheduled Tuesday and Thursday conference calls is not quite accurate. Although the Debtors and the Administrative Agent have held regular teleconferences since the commencement of the chapter 11 cases, there have been many times when one or both parties have suggested rescheduling or cancellation of the calls for various reasons. It has become standard practice for representatives of the Debtors and the Administrative Agent to confer in advance of the scheduled teleconferences to determine whether a teleconference is necessary. In fact, we cannot recall any instance in which the Debtors unilaterally canceled the call without consulting with the Administrative Agent. Specifically, with respect to the February 21, 2008 teleconference, Kevin Nystrom advised Jay Wampler that the Debtors were not fully prepared to address certain of the issues on the agenda and suggested that the call be rescheduled for one day later – until February 22, 2008. Unfortunately, Jay was not available on the 22nd.

    The Debtors have fully cooperated with the Administrative Agent's reasonable requests for information throughout these chapter 11 cases. However, now that the Administrative Agent has moved for relief from the automatic stay (the "Motion") and propounded discovery (the "Discovery Requests"), we must necessarily be more formal in our communications. The Debtors intend to respond to the Discovery Requests in accordance with the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

    The Debtors also intend to respond to the Administrative Agent's reasonable requests for information to the extent required by the Final Cash Collateral Order. However, with respect to the issues raised in the Motion, the Administrative Agent may not circumvent applicable rules of procedure under the guise of requesting information pursuant to the Final Cash Collateral Order.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Scott D. Talmadge, Esquire
February 26, 2008
Page 2

FTI's recent request and proposed agenda extended far beyond the scope of the Final Cash Collateral Order. The Administrative Agent should understand that FTI will not be permitted to dictate the scheduling of meetings and demand that the Debtors' representatives make themselves available on shortened notice to discuss items on FTI's agenda. All requests for inspection and access to the Debtors' books and records under the Final Cash Collateral Order should be in writing to counsel for the Debtors. We are in the process of compiling the documents requested in FTI's agenda, to the extent they fit within the scope of the Final Cash Collateral Order and are not the subject of litigation, and will advise you as soon as they are available for inspection.

Very truly yours,

Pauline K. Morgan

PKM:dw
cc: James L. Patton, Jr., Esq.
    Robert S. Brady, Esq.

# **EXHIBIT C**

**From:** Fernandes, Bret [mailto:BFernandes@Kroll.com]
**Sent:** Sat 3/1/2008 3:01 PM
**To:** jon.moyer@fticonsulting.com
**Cc:** Taylor, Mitchell; Morgan, Pauline; Dorsey, John; Lymbery, Mark
**Subject:**

Jon,
The combination of the notes below and the attached files reflect our current responses to the FTI request for data from the agenda dated Feb 22 (see attached file - Agenda for 2-22-08 call with Kroll - final.pdf). As previously discussed, this is a partial response as certain items are subject to the BofA request for interrogatories/discovery.

Condensed Request List and Related Comments:

1. Status of S&D Loan Sale:  See attached file - BofA Bid Matrix 02.28.08.xls.

2. Status of Sale of Conforming to Countrywide:  No response provided at this time.

3. MSR Sales and Timetable:  See attached file - BofA related MSR transactions - 2-29-08.xls

4. State Bond Loans:  No response provided at this time

5. UNIFY Data Tapes:  As explained previously, UNIFY is a live system with no ability to look back in history for data. FTI has received the UNIFY data for Dec and Jan and will receive each month-end going forward. The periods requested (July 07 through Nov 07) cannot be generated. I have sent a listing of the UNIFY data fields to Servicing to see if they have the ability to produce any of the data on a historical basis. I have not yet heard back on that question.

6. REO - See attached file - BofA REO Listing (08-06-07 thru 02-19-08).xls. This file reflects and identifies all REO at the filing date as well as all REO subsequent to the filing date up to Feb 19. Any REO liquidated over that same period is identified in the file. We have requested a "full accounting" of the net sale proceeds from Servicing and will forward to YCST upon receipt. We did not try to reflect the requested month-end REO data as the data was not readily available and we did not see the benefit of such a breakout.

7. Delinquent 2nd Liens:  No response provided at this time

8. Performing 2nds and HELOCs:  No response provided at this time

9. Option ARMS and Hybrids:  No response provided at this time

10. Reconciliation of DB Accounts:  Data has been periodically provided to FTI. There is a call tentatively scheduled for Mon, March 3, between FTI and Mark Lymbery to walk through the reconciliation data.

Please let me know if you have any questions. Best to reach me on my cell at 858-336-5130.

Thanks and have a good weekend.

-Bret



**Bret Fernandes,** Corporate Advisory & Restructuring
Kroll Zolfo Cooper | 777 South Figueroa, Suite 2400, Los Angeles, CA, 90017
Office 213.443.1125 | Fax 213.443.6077 | Cell 858.336.5130 | bfernandes@kroll.com

www.krollzolfocooper.com

This communication contains information that is confidential, proprietary in nature, and may also be attorney-client privileged and/or work product privileged. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s) or the person responsible for delivering it to the intended recipient(s), please note that any form of dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify the sender and delete the original communication. Thank you for your cooperation.

Please be advised that neither Kroll, its affiliates, its employees or agents accept liability for any errors, omissions or damages caused by delays of receipt or by any virus infection in this message or its attachments, or which may otherwise arise as a result of this e-mail transmission.