**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-11047 (CSS) |
| | Jointly Administered |
| Debtors. | **Hearing Date: March 27, 2008 at 11:00 a.m. (ET)** **Objection Deadline: March 20, 2008 at 4:00 p.m. (ET)** **(Waiver of Local Rule Requested)** |

**APPLICATION OF THE DEBTORS FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 327(b) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRICEWATERHOUSECOOPERS LLP AS TAX ADVISORS TO THE DEBTORS, *NUNC PRO TUNC* TO FEBRUARY 12, 2008**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submit this application (the "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for an order authorizing the employment and retention of PricewaterhouseCoopers LLP ("PwC") as tax advisors to the Debtors, *nunc pro tunc* to February 12, 2008. In support of this Application, the Debtors submit the Affidavit of Thomas

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Geppel (the "Geppel Affidavit"), attached hereto as Exhibit A. In further support of the Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## Background

2. On August 6, 2007 (the "Petition Date") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7. Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

8. Pursuant to the APA, the Servicing Sale will close in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors agreed to operate the Servicing Business in the Ordinary Course of

[2] All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser. The Final Closing has not yet occurred, but is required to occur no later than September 30, 2008.

**Relief Requested**

9. By this Application, the Debtors seek to employ and retain PwC as tax advisors, *nunc pro tunc* to February 12, 2008, pursuant to the terms and conditions substantially set forth in the engagement letter between the Debtors and PwC, dated February 12, 2008 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit B.

**Basis for Relief**

10. Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

11. Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

12. The Debtors require the services to be provided by PwC to assist in the

administration of the Debtors' estates. PwC has extensive experience and knowledge in performing the scope of the work described below. PwC's experience in tax matters is widely recognized, and it regularly provides such services to large and complex business entities in other chapter 11 cases. Thus, the Debtors believe that PwC is well suited and qualified to serve as the Debtors' tax advisors in a cost-effective and efficient manner.

13. Moreover, the Debtors have already retained PwC as an ordinary course professional to assert and perfect claims for Social Security and state and federal unemployment tax-related credits properly owing to the Debtors.[3] Although the services PwC would provide pursuant to this Application are separate and distinct from those it would provide as an ordinary course professional, PwC has acquired significant knowledge with respect to the Debtors' business affairs, which would allow PwC to provide the services contemplated in the Engagement Letter in the most cost-effective and efficient manner. Thus, the Debtors respectfully submit that the employment and retention of PwC would be in the best interests of the Debtors, their estates and creditors.

**Services to be Rendered**[4]

14. If retained, as disclosed in the Engagement Letter, PwC will render

---

[3] On December 21, 2007, the Debtors filed their Fifth Supplemental List of Ordinary Course Professionals [Docket No. 2488] and provided notice that they intended to retain PwC as an ordinary course professional. No objections were filed to the Notice. On February 19, 2008, the Debtors filed the Affidavit In Support of Employment of PricewaterhouseCoopers, LLP as a Professional Utilized in the Ordinary Course of Business [Docket No. 3031] (the "PwC OCP Affidavit"). Objections to the relief requested in the PwC OCP Affidavit are due on or before 4:00 p.m. (ET) on March 11, 2008. If retained as an ordinary course professional, PwC will assert and perfect claims against federal and state taxing authorities for Social Security and state and federal unemployment tax-related credits properly owing to the Debtors, as more fully set forth in the PwC OCP Affidavit and the engagement letter attached thereto. Importantly, the services PwC would provide as an ordinary course professional are entirely separate and distinct from those it would provide pursuant to this Application, if granted.

[4] Any references to or summaries of the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein. Capitalized terms and phrases herein shall have the meanings ascribed to such terms in the Engagement Letter.

various tax services to the Debtors. In particular, PwC will perform, among others, the following services:

a. Review of the calculation of taxable income for American Home Mortgage Investment Corp. for the year ended December 31, 2007 and subsequent year end in 2008 including related research and consultation with respect to, but not limited to, the following: Federal Excise Tax, New York State tax issues, Excess Inclusion Income, Spillback dividends, 2007 dividends and 2008 dividends;

b. Research and consultation with respect to, but not limited to, the following: tax return filing issues with respect to trust Preferred securities, amortization of mortgage servicing rights, REMIC issues, tax accounting with respect to inter-company transactions, REIT compliance and principal only strips, REIT compliance and swaps, IRC 382 and built-in gains and taxable mortgage pool issues;

c. Preparation of Federal and State Partnership income tax returns for Bayliss Trust;

d. Research and consultation with respect to federal and state income tax issues regarding multi series joint ventures or other joint ventures of American Home Mortgage Investment Corp. or American Home Mortgage Holdings, Inc. and subsidiaries;

e. Research, consultation and preparation of calculations with respect to Premium amortization, Discount accretion, Original Issue Discount, Excess Inclusion Income and Securitization taxable income;

f. Due diligence, consultation and research with respect to proposed divestures;

g. Research and consultation with respect to New York State Sales and Use tax audits and consultation on issues including reviewing and filing for potential refund claims;

h. Research and consultation with respect to preparation of foreign Trust tax returns;

i. Research and consultation with respect to potential loan and/or securities sales;

j. Preparation or review of Form 1120 REIT or Form 1120 for American Home Mortgage Investment Corp. and subsidiaries for the year ended December 31, 2007 and subsequent year ending in 2008, including related research and consultation;

k. Preparation or review of Form 1120 for American Home Mortgage Holdings, Inc. and subsidiaries for the year ended December 31, 2007, and subsequent year ending in 2008, including related research and consultation;

l. Research and consultation with respect to REIT compliance pursuant to Internal Revenue Code Sections 856 through 858 and other referenced or applicable code sections;

m. Research, consultation and preparing responses with respect to Federal, state and local income tax notices received from taxing authorities;

n. Preparation or review of state income tax returns for American Home Mortgage Investment Corp. and subsidiaries and American Home Mortgage Holdings, Inc. and subsidiaries for the year ended December 31, 2007 and subsequent year ending in 2008, including related research with respect filing issues;

o. Representation, research and consultation with respect to income tax audits;

p. Research, consultation and the filing of claims for refund with respect to the New York State Mortgage recording tax; and

q. Render such other tax advice or perform such other related duties as may be requested by the Debtors to further assist in the administration of the Debtors' bankruptcy estates.

Subject to the Court's approval of PwC's retention hereunder, the scope of postpetition services PwC anticipates providing to the Debtors pursuant to the Application shall be limited to those services found in the Engagement Letter.

**Professional Compensation**

15. Pursuant to section 330 of the Bankruptcy Code, the Debtors may retain PwC on reasonable terms and conditions. The Debtors submit that the terms and conditions under the Engagement Letter, which are similar to the terms and conditions PwC offers to similar clients for similar services, are reasonable.

16. Subject to this Court's approval, and pursuant to the terms and conditions

of the Engagement Letter, the Debtors understand that PwC intends to apply to the Court for allowance of compensation and reimbursement of expenses for tax services performed for the Debtors in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding local rules, the guidelines established by the Office of the United States Trustee for the District of Delaware and orders of this Court, and pursuant to any additional procedures that may be, or already have been established by this Court in these chapter 11 cases. The hourly rates, subject to periodic adjustments, charged by PwC professionals anticipated to provide services to the Debtors pursuant to this Application are as follows:

| | |
|---|---|
| Partner | $700 |
| Managing Director | $585 |
| Director | $485 |
| Manager | $380 |
| Senior Associate | $285 |
| Associate | $205 |

In the normal course of business, PwC revises its regular hourly rates to reflect changes in responsibilities, increased experience and increased costs of doing business. Changes in the hourly rates will be reflected on the invoices for the first time period in which the revised rates become effective. Also, PwC will be compensated for all reasonable costs and expenses associated with its personnel complying with the requirements of the Bankruptcy Code, orders of this Court or applicable guidelines set forth by the Office of the United States Trustee for the District of Delaware, including, but not limited to, completing the appropriate retention

documents, affidavit of disinterestedness and fee applications.[5]

17. In addition to compensation for professional services, PwC will seek reimbursement for reasonable and necessary expenses incurred in connection with the services performed for the Debtors, including, but not limited to, the costs of transportation, lodging, working meals, telephone, photocopying and messenger services.

18. Pursuant to Local Rule 2016-2(d), in a motion for compensation and reimbursement of expenses, activities must be billed in tenths of an hour. It is not the general practice of PwC employees, however, to keep records in such increments as PwC's customary practice is to provide a detailed description of the services rendered and the amount of time spent on each date in half-hour increments. The Debtors believe that PwC's customary practice with respect to time descriptions will still provide the ability for this Court to appropriately review and evaluate the services provided by PwC. Furthermore, because it would be more efficient for PwC to continue in its customary time-keeping practices, the Debtors respectfully seek a waiver of Local Rule 2016-2(d) to permit PwC to submit its time records in half-hour increments.

19. The Debtors believe the compensation arrangements provided for in the Engagement Letter are consistent with and typical of arrangements entered into by PwC and other accounting firms with respect to rendering similar services for clients such as the Debtors.

**Disinterestedness**

20. In reliance on the Geppel Affidavit, the Debtors believe PwC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that

---

[5] To ensure such compliance, PwC will consult with its internal bankruptcy advisors. Due to the specialized nature of the services provided by these bankruptcy advisors, PwC has established specific billing rates for such advisors. The rate per hour for the PwC bankruptcy advisors by level of experience are as follows: Partner: $570; Director/Senior Manager: $500; Manager: $360; Senior Associate: $260; Associate: $205; and Paraprofessional: $135. These rates are subject to periodic adjustment.

PwC:

a. is not a creditor, an equity security holder, or an insider of the Debtors;

b. is not and was not, within two years before the date of the filing of the petition, a director, an officer, or an employee of the Debtors; and

c. does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

Accordingly, the Debtors believe that PwC is eligible for retention by the Debtors under the Bankruptcy Code.

21. To the best of the Debtors' knowledge, except as otherwise set forth in the Geppel Affidavit, neither PwC nor any principal, partner or director thereof: (i) has any connection with the Debtors, their creditors, equity holders, attorneys or other professionals or any other parties-in-interest, or the United States Trustee or the Assistant United States Trustee for the District of Delaware or their attorney assigned to these chapter 11 cases; or (ii) holds or represents an interest adverse to the Debtors' estates.

22. In the event that additional disclosure is necessary, PwC will promptly file a supplemental affidavit with this Court setting forth any facts and circumstances relevant thereto.

**Indemnification**

23. The Engagement Letter provides for the indemnification of PwC by the Debtors (the "Indemnification Provision"). Notwithstanding the Indemnification Provision, such indemnity shall be modified to the extent set forth below (the "Modified Indemnification Provision"):

a. PwC shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than those described in the Engagement Letter, unless such services and indemnification therefore are approved by the Court;

b. The Debtors shall have no obligation to indemnify PwC, or provide contribution or reimbursement to PwC, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from PwC's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of PwC's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which PwC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, PwC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, PwC must file an application therefore in this Court, and the Debtors may not pay any such amounts to PwC before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by PwC for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify PwC. All parties in interest shall retain the right to object to any demand by PwC for indemnification, contribution or reimbursement.

24. The Debtors submit that the Modified Indemnification Provision is similar to other indemnification provisions that are routinely approved by this Court.

**Notice**

25. Notice of this Application will be provided to (i) the United States Trustee

for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Debtors' postpetition lender; (v) the Securities and Exchange Commission; and (vi) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, (i) authorizing the employment and retention of PwC as tax advisors to the Debtors, *nunc pro tunc* to February 12, 2008, and (ii) granting such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
March 5, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession