## Exhibit A

**Geppel Affidavit**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
In re:                                                             :    Chapter 11
                                                                   :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                             :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                    :
                                                                   :    Jointly Administered
         Debtors.                                                  :
------------------------------------------------------------------ x

### AFFIDAVIT IN SUPPORT OF THE DEBTORS' APPLICATION PURSUANT TO SECTION 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PRICEWATERHOUSECOOPERS LLP AS TAX ADVISORS *NUNC PRO TUNC* TO FEBRUARY 12, 2008

STATE OF New York        )
                         ) ss.
COUNTY OF New York       )

Thomas Geppel, being duly sworn, deposes and says:

1. I am a Partner of PricewaterhouseCoopers LLP ("PricewaterhouseCoopers"), 300 Madison Avenue, New York, New York, 10017. This affidavit (the "Affidavit") is submitted in support of the Debtors' Application Pursuant to Section 327(a) and 328(a) of the Bankruptcy Code for Order Authorizing the Retention and Employment of PricewaterhouseCoopers LLP as tax advisors, *Nunc Pro Tunc* to February 12, 2008 (the "Application").

2. PricewaterhouseCoopers is a "disinterested person" within the meaning of 11 U.S.C. Section 101(14). PricewaterhouseCoopers has no business, professional or other connection with the Debtors or the Trustee herein or with their attorneys, and does not represent, not will it represent, any interest adverse to the estate in the matters in which it is to be engaged.

3. PricewaterhouseCoopers is not employed or connected with the Debtors, the Trustee, any creditor, or other party in interest, their respective attorneys and accountants with respect to these Chapter 11 cases. PricewaterhouseCoopers maintains records of all of its

clients. PricewaterhouseCoopers has reviewed such records as well as the entities listed on the Debtors' list of creditors provided to PricewaterhouseCoopers to determine any connections with the Debtors. The aforementioned list of creditors was provided by Debtors' counsel. This Affidavit is based on the information available to PricewaterhouseCoopers on the date hereof.

4. PricewaterhouseCoopers may have represented in the past, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors and these Chapter 11 cases. As part of its practice, PricewaterhouseCoopers also appears in cases, proceedings and transactions involving many different attorneys and accountants, some of which may represent claimants and parties-in-interest in these Chapter 11 cases. PricewaterhouseCoopers does not represent any such entity in connection with these Chapter 11 cases or have any relationship with any such entity, attorneys, accountants or advisors that would be adverse to the Debtors or their estates. As set forth in the attached Schedule I, PricewaterhouseCoopers has in the past and/or currently represents parties involved in these Chapter 11 cases in matters which are wholly unrelated to these bankruptcy cases.

5. As previously stated PricewaterhouseCoopers is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14), as modified by Section 1107(b), in that, to the best of my knowledge, PricewaterhouseCoopers, its members and employees:

    a. are not creditors, equity security holders, or insiders;
    b. are not and were not within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtors; and
    c. does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

6. Despite the efforts described above to identify and disclose PricewaterhouseCoopers' connections with parties in interest in these Chapter 11 cases,

PricewaterhouseCoopers is unable to state with absolute certainty that every client relationship or other connection has been disclosed. In this regard, if PricewaterhouseCoopers discovers additional material information that it determines requires disclosure, it will promptly file a supplemental disclosure with the Bankruptcy Court for the District of Delaware (the "Court").

7. PricewaterhouseCoopers intends to apply for compensation for professional services rendered in connection with this Chapter 11 case, subject to approval of the Court, and compliance with applicable provisions of the Bankruptcy Code and other orders of the Court. The Debtors have agreed to pay PricewaterhouseCoopers based on the time required by our professionals to complete the engagement and at individual hourly rates accounting to the experience and skill required. Below are our hourly rates by level:

| Level | Rate |
|---|---|
| Partner | $700 |
| Managing Director | $585 |
| Director | $485 |
| Manager | $380 |
| Senior Associate | $285 |
| Associate | $205 |

Hourly rates may be revised from time to time, and the adjusted rates will be reflected in the monthly billings.

8. The PricewaterhouseCoopers professionals providing the tax advisory services will consult with internal PricewaterhouseCoopers bankruptcy advisors to ensure compliance with the requirements of the Bankruptcy Code, as well as to decrease the overall fees associated with the administrative aspects of PricewaterhouseCoopers postpetition engagements. The services provided by these PricewaterhouseCoopers bankruptcy advisors shall include, but are not limited to, assistance with the bankruptcy retention documents; assistance with the required disinterestedness disclosures; and assistance with completion of the requisite fee applications, and assistance with compliance with the other applicable Bankruptcy Rules, Local Rules, orders of this Court and guidelines established by the Untied States Trustee. Due to the

specialized nature of the services, and consistency between bankruptcy venues, specific billing rates have been established for these bankruptcy advisors.[1]

9. PricewaterhouseCoopers will also bill for reasonable out-of-pocket expenses, including our internal per ticket charges for booking travel, expenses for "working meals," as well as non-ordinary overhead expenses such as secretarial and other overtime. PricewaterhouseCoopers will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to PricewaterhouseCoopers' other clients.

10. PricewaterhouseCoopers will maintain reasonably detailed records of its fees and any actual and necessary costs and expenses incurred in connection with the aforementioned services. It is not the general practice of PricewaterhouseCoopers employees who provide the tax advisory services to keep detailed time records (i.e. increments of one-tenth of an hour (six minutes)) similar to those customarily kept by attorneys who are compensated through the Bankruptcy Court. The customary practice of PricewaterhouseCoopers provides a description of the services rendered and the amount of time spent on each date, in half-hour (.5) increments, in rendering services on behalf of their clients. These time descriptions still provide the ability to review the time entries and evaluate the services provided by our professionals. Accordingly, to the extent necessary based on the foregoing, PricewaterhouseCoopers respectfully seeks a waiver of the information requirements set forth in Local Rule 2016-2(d) in accordance with Local Rule 2016-2(h).

11. The fee arrangement set forth above is within PricewaterhouseCoopers' standard fee arrangement for work of this nature. The fee arrangement is set at a level designed

---

[1] The rate per hour for the PricewaterhouseCoopers bankruptcy advisors by level of experience will be as follows: Partner: $570; Director/Senior Manager: $500; Manager: $360; Senior Associate: $260; Associate: $205 and Paraprofessional: $135. These rates are subject to periodic adjustments.

to fairly compensate PricewaterhouseCoopers for the work of its professionals, and to cover fixed and routine overhead expenses.

12. I have not agreed to share with any person (except members and consultants of my firm) the compensation to be paid for the services rendered in this case.

WHEREFORE, affiant respectfully prays for the entry of the annexed order and for such other and further relief as may be just and proper.

*[signature]*

THOMAS GEPPEL, Partner
PricewaterhouseCoopers LLP
300 Madison Avenue
New York, NY 10017

Sworn to before me this 26th day of February 2008.

*[signature]*
Notary Public
My Commission Expires: 06-23-2011

JUANA CRUZ
Notary Public, State of New York
No. 01CR5080926
Qualified in Nassau County
Commission Expires June 23, 20 11

# **PWC RELATIONSHIPS IDENTIFIED**

This information is being provided in connection with the Affidavit in Support of the Debtors' Application Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code for Order Authorizing the Retention and Employment of PricewaterhouseCoopers, LLP as Tax Advisors, *Nunc Pro Tunc* to February 12, 2008 (the "Affidavit") (hereinafter, together with its affiliates, for this purpose only, "PricewaterhouseCoopers").

PricewaterhouseCoopers or its affiliates currently perform or have previously performed services as described in the Affidavit and/or in matters unrelated to these Chapter 11 Cases to the following individuals or entities or have other relationships with such entities, such as banking relationships.

| Party Name | Relationship Type within Chapter 11 Case |
|---|---|
| ABN Amro Bank, N.V. | Adverse |
| American Express | Adverse |
| American Home Mortgage Assets LLC | Client Affiliate |
| American Home Mortgage Corp. | Client |
| American Stock Transfer & Trust Company | Adverse |
| Banc of America Securities, LLC | Adverse |
| Bank of America | Adverse |
| Bank of America, N.A. | Adverse (Warehouse Lender) |
| Bank of America, N.A. | Adverse |
| Bank of America, N.A. | Adverse |
| Bank of New York | Adverse |
| Barclays Bank PLC | Adverse (Warehouse Lender) |
| Bear Stearns | Adverse (Warehouse Lender) |
| Bear, Stearns & Co. Inc. | Adverse |
| Calyon | Adverse |
| CB Richard Ellis on behalf of Cascade II/Principal Life Insurance Company | Adverse |
| Citibank | Adverse |
| Citigroup Global Markets Realty Corp. | Adverse |
| CNI Reinsurance, Ltd. | Client Affiliate |
| Countrywide | Adverse |
| Countrywide Capital | Adverse |
| Countrywide Capital | Adverse |
| Credit Suisse | Adverse |
| Credit Suisse First Boston Mortgage Capital LLC | Adverse (Warehouse Lender) |
| Deutsche Bank | Adverse |
| Deutsche Bank AG | Adverse |
| Deutsche Bank Securities Inc. | Adverse |
| Fidelity Mortgage Affiliates | Adverse |

## PWC RELATIONSHIPS IDENTIFIED

| Party Name | Relationship Type within Chapter 11 Case |
| --- | --- |
| First American Bank | Adverse |
| FNMA | Adverse |
| GMAC | Adverse |
| Goldman Sachs Asset Management, L.P. | Shareholder |
| Greenwich Capital Financial Products, Inc. | Adverse |
| HSBC | Adverse |
| Huntington Bancshares Inc. | Adverse |
| Impac Funding Corporation | Adverse |
| IndyMac Bank, F.S.B. | Adverse |
| IXIS Real Estate Capital, Inc. | Adverse (Warehouse Lender) |
| Janney Montgomery Scott LLC | Adverse |
| John A. Johnston | Client Affiliate (D&O) |
| JPMorgan Chase | Adverse |
| JPMorgan Chase Bank, National Association, as Trustee | Adverse |
| Lehman Brothers Inc. | Adverse |
| MassHousing | Adverse |
| Merrill Lynch Bank USA | Adverse |
| Merrill Lynch Pierce Fenner & Smith, Inc. | Adverse |
| Morgan Stanley | Adverse |
| Morgan Stanley Capital Services Inc. | Adverse |
| Munder Capital Management | Shareholder |
| NWQ Investment Management Company, LLC | Shareholder |
| Orix Capital Markets, LLC | Adverse |
| Societe Generale | Adverse |
| Stonehenge Capital, LLC | Adverse |
| STWB Inc. | Adverse |
| SunTrust Asset Funding, LLC | Adverse |
| The Royal Bank of Scotland plc | Adverse |
| Transwestern | Adverse |
| UBS | Adverse |
| UBS Real Estate Securities | Adverse (Warehouse Lender) |
| United Guaranty Services, Inc. | Adverse |
| Wachovia Bank, N.A. | Adverse |
| Washington Mutual | Adverse |
| Wilmington Trust Company | Adverse |
| ZC Sterling Corporation | Adverse |
| Zurich American Insurance Company | Adverse |

## Exhibit B

**Engagement Letter**

# PricewaterhouseCoopers

February 12, 2008

PricewaterhouseCoopers LLP
PricewaterhouseCoopers Center
300 Madison Avenue
New York NY 10017
Telephone (646) 471 3000
Facsimile (813) 286 6000

Mr. Alan Horn
Executive Vice President & General Counsel
American Home Mortgage Corporation
538 Broadhollow Road
Melville, NY 11747

Dear Mr. Horn:

This letter confirms that PricewaterhouseCoopers LLP ("we" or "us" or "PwC") is pleased to be engaged to provide the services described below to American Home Mortgage Corporation ("AHM" or "you" or "Client").

**Scope of Our Services**

You are engaging us to provide the following services (the "Services"):

- Review of the calculation of taxable income for American Home Mortgage Investment Corp for the year ended December 31, 2007 and subsequent year end in 2008 including related research and consultation with respect to, but not limited to, the following; Federal Excise Tax, New York State tax issues, Excess Inclusion Income, Spillback dividends, 2007 dividends and 2008 dividends.
- Research and consultation with respect to, but not limited to, the following; tax return filing issues with respect to trust Preferred securities, amortization of mortgage servicing rights, REMIC issues, tax accounting with respect to inter-company transactions, REIT compliance and principal only strips, REIT compliance and swaps, IRC 382 and built-in gains and taxable mortgage pool issues.
- Preparation of Federal and State Partnership income tax returns for Bayliss Trust.
- Research and consultation with respect to federal and state income tax issues regarding multi series joint ventures or other joint ventures of American Home Mortgage Investment Corp. or American Home Mortgage Holdings, Inc. and subsidiaries.
- Research, consultation and preparation of calculations with respect to Premium amortization, Discount accretion, Original Issue Discount, Excess Inclusion Income and Securitization taxable income.
- Due diligence, consultation and research with respect to proposed divestures.
- Research and consultation with respect to New York State Sales and Use tax audits and consultation on issues including reviewing and filing for potential refund claims.
- Research and consultation with respect to preparation of foreign Trust tax returns.
- Research and consultation with respect to potential loan and /or securities sales.
- Preparation or review of Form 1120 REIT or Form 1120 for American Home Mortgage Investment Corp. and subsidiaries for the year ended December 31, 2007 and subsequent year ending in 2008, including related research and consultation.

# PricewaterhouseCoopers

Mr. Alan Horn
American Home Mortgage Corporation
February 12, 2008
Page 2

- Preparation or review of Form 1120 for American Home Mortgage Holdings, Inc. and subsidiaries for the year ended December 31, 2007, and subsequent year ending in 2008, including related research and consultation.
- Research and consultation with respect to REIT compliance pursuant to Internal Revenue Code Sections 856 through 858 and other referenced or applicable code sections.
- Research, consultation and preparing responses with respect to Federal, state and local income tax notices received from taxing authorities.
- Preparation or review of state income tax returns for American Home Mortgage Investment Corp. and subsidiaries and American Home Mortgage Holdings, Inc. and subsidiaries for the year ended December 31, 2007, and subsequent year ending in 2008, including related research with respect to filing issues.
- Representation, research and consultation with respect to income tax audits.
- Research, consultation and the filing of claims for refund with respect to the New York State Mortgage recording tax.
- Render such other tax advice or perform such other related duties as may be requested by the Client to further assist in the administration of the Client's bankruptcy estates.

With regard to the preparation/review of tax returns, we reserve the right to request an extension to file such returns.

**Ownership and Use**

We are providing these Services solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material delivered to you under this engagement letter, except as follows: PwC will own its working papers and preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which may have been discovered or created by PwC as a result of its provision of the Services. You will have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us. Any spreadsheets or software tools that PwC provides to Client are for Client's convenience and are provided as is. PwC will not be responsible for results obtained by anyone other than PwC from the use of those items.

**Your Responsibilities**

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You



Mr. Alan Horn
American Home Mortgage Corporation
February 12, 2008
Page 3

are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.

**Fees and Expenses**

Our fee is based on the time required by our professionals to complete the engagement. Individual hourly rates vary according to the experience and skill required. Below are our hourly rates by level:

| | |
|---|---|
| Partner | $700 |
| Managing Director | $585 |
| Director | $485 |
| Manager | $380 |
| Senior Associate | $285 |
| Associate | $205 |

Hourly rates may be revised from time to time, and the adjusted rates will be reflected in billings.

We will also bill AHM for all reasonable costs and expenses associated with our personnel complying with the requirements of the Bankruptcy Code, Court Orders or applicable guidelines set forth by the United States Trustee which shall include, but are not limited to, completing the appropriate retention documents, affidavit of disinterestedness and fee application.

We also will bill AHM for our reasonable out-of-pocket expenses, including, but not limited to, the costs of transportation, lodging, working meals, telephone, photocopying and messenger services, and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of running our travel department in a manner to maximize cost savings.

The amount of our fee is based on the assumption that we will receive the information and assistance as detailed throughout this agreement. In the event we believe an additional fee is required as the result of the failure of AHM to meet any of these requests or for any other reason, we will inform you promptly.

**Payment Schedule**

Any and all fees and expenses are subject to Bankruptcy Court approval and shall be paid in accordance with sections 328, 330 and 331 of the Bankruptcy Code, such Federal Rules of Bankruptcy Procedure as may be applicable and rules or procedures fixed by the Bankruptcy Court.

**Termination and Dispute Resolution**

Either party may terminate the Services by giving written notice to that effect.



Mr. Alan Horn
American Home Mortgage Corporation
February 12, 2008
Page 4

During the Bankruptcy proceedings, the dispute resolution provisions are as follows:

1. The Client and PwC have agreed, subject to the Bankruptcy Court's approval of this Application, that: (1) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by PwC to the Client as outlined in this Application, including any matter involving a successor in interest or agent of any of the Client or of PwC, shall be brought in the Bankruptcy Court or the District Court for the District of Delaware if such District Court withdraws the reference; (2) PwC and the Client and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (3) PwC and the Client, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (4) if the Bankruptcy Court or the District Court do not have or retain jurisdiction over the foregoing claims and controversies, PwC and the Client, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit A to this letter; and (5) judgment on any arbitration award may be entered in any court having proper jurisdiction.

2. Further, PwC has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the Bankruptcy Court or the District Court for the District of Delaware (if such District Court withdraws the reference) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this letter or the services provided hereunder.

If the Client emerges from the Bankruptcy proceedings, this engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Indemnification**

You agree to indemnify and hold us harmless from and against any and all third party claims resulting from any of the Services or Deliverables under this agreement, except to the extent determined to have resulted from our gross negligence or other intentional misconduct relating to such Services and/or Deliverables.

**Regulatory Matters**

Notwithstanding anything to the contrary in this agreement, you have no obligation of confidentiality with respect to any materials, advice or portions of Deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Other Written Advice.** Based on our discussions, it is anticipated that the written advice PricewaterhouseCoopers provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating



Mr. Alan Horn
American Home Mortgage Corporation
February 12, 2008
Page 5

that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements.** Treasury Regulations Section 1.6011-4 requires that taxpayers disclose to the IRS their participation in certain reportable transactions. Additionally, certain states have adopted rules with purposes similar to Treasury Regulations under Internal Revenue Code Section 6011. You agree to advise us if you determine that any matter covered by this agreement is a reportable transaction that is required to be disclosed under Section 1.6011-4, or is a transaction requiring disclosure to a particular state under such state's particular statutes or regulations.

Similar rules under Internal Revenue Code Sections 6111 and 6112 require that we submit information returns and maintain lists of certain client engagements if we are material advisors to clients that have participated in a reportable transaction. Additionally, certain states have adopted rules similar in scope to Internal Revenue Code Sections 6111 and 6112, thereby creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this agreement.

**Internal Revenue Code Section 6694 Preparer Standards.**

In order for PricewaterhouseCoopers to review or provide advice with respect to a federal tax return or claim for refund due after December 31, 2007 (including extensions) without disclosure, positions of which we are aware must have a more likely than not likelihood of prevailing on the merits. If a position does not meet the "more likely than not" standard, but has a reasonable basis, we will advise you about required disclosures and your penalty exposure, if any. If it is concluded that disclosure is required, we will advise you about the form of disclosure necessary.

With respect to positions that do not clearly meet the more likely than not standard, our work will include discussions with you regarding the particular position and may require consultation with a PricewaterhouseCoopers subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

Several states also have standards regarding positions taken on returns and claims for refund. For instance, California has a standard similar to the federal standard that applies to certain California tax returns. We will discuss these issues with you as appropriate.

**Other Matters**

By entering into this engagement letter, you are binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or

# PricewaterhouseCoopers

Mr. Alan Horn
American Home Mortgage Corporation
February 12, 2008
Page 6

agreements with respect to the Services, and any changes must be agreed to in writing.

\* \* \* \* \*

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with Tom Geppel at 646-471-3078 or Greg Fetter at 646-471-1202. If the Services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

*PricewaterhouseCoopers LLP*

PricewaterhouseCoopers LLP

By: *Tom Geppel*

**Tom Geppel**

**ACKNOWLEDGED AND AGREED:**

**American Home Mortgage Corporation, on behalf of its subsidiaries and affiliates**

**Signature of client official:** _____

**Please print name:** _____

**Title:** _____

**Date:** _____

# EXHIBIT A

## Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in this Agreement. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

## Mediation

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator will be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

## Arbitration

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("AAA Rules').