IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                           :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                  :
                                                                 :   Jointly Administered
    Debtors.                                                     :
                                                                 :   Ref. Docket Nos. 3054, 3056
                                                                 :   Hrg. Date: Mar. 13, 2008 at 10:00 a.m.
---------------------------------------------------------------- x

## DEBTORS' PRELIMINARY OBJECTION TO THE MOTION OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT, FOR RELIEF FROM AUTOMATIC STAY, PURSUANT TO 11 U.S.C. § 362(d), ALLOWING THE ADMINISTRATIVE AGENT TO EXERCISE ITS RIGHTS AS A SECURED CREDITOR

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] hereby object (the "Preliminary Objection") to the Motion of Bank of America, N.A., as Administrative Agent (the "Administrative Agent") for Relief From Automatic Stay, Pursuant to 11 U.S.C. § 362(d), Allowing the Administrative Agent to Exercise its Rights as a Secured Creditor, D.I. 3054 (the "Motion"), filed February 22, 2008. In support of this Preliminary Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

DB02:6630877.4                                                                                    066585.1001

## PRELIMINARY STATEMENT

The primary purpose of this Preliminary Objection is to outline the *appropriate* legal standard for determining whether the Administrative Agent has made its *prima facie* case for "cause" for relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code. Notwithstanding *ipse dixit* to the contrary in the Motion, the Administrative Agent has *not* provided evidence (or even alleged facts) sufficient to establish "cause" for relief from the stay. Indeed, as discussed below, the Motion is chock-full of irrelevant accusations but is silent as to critical elements of the Administrative Agent's case. Accordingly, it is difficult for the Debtors to formulate a complete and meaningful response to the Motion, and the Debtors reserve the right to supplement this Preliminary Objection as necessary to the extent that discovery from the Administrative Agent reveals any relevant facts or viable legal theories.

The secondary purpose of this Preliminary Objection is to assure the Court and parties in interest that the Debtors' rejection of the Administrative Agent's proposed course of action with respect to the Mortgage Loans[2] at issue is not the result of laziness, incompetence, "reckless optimism," or any so-called "leadership vacuum." Rather, it is the result of a deliberate exercise of the Debtors' business judgment, after consideration of *all* relevant factors, *including* the current market conditions.

Having insisted as part of the Cash Collateral Order that the Debtors concede it is in fact *over*-secured, the Administrative Agent[3] cannot now be heard to complain, without further explanation, that it is "the" party in interest with respect to the Mortgage Loans and bears "all" the risk of diminution in value of such loans. Indeed, were the Administrative Agent and

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

[3] For ease of reference, the term "Administrative Agent" means the Administrative Agent and/or the Secured Parties, as the context requires.

its lender syndicate the only creditors who would be affected by the sale of the Mortgage Loans for an unreasonably low price in a depressed market, the Debtors would be more than happy to leave the Administrative Agent to its folly. However, this is demonstrably not the case. Due in no small part to the Debtors' sound exercise of business judgment in liquidating the Administrative Agent's other collateral during these bankruptcy cases, the Administrative Agent is likely to recover more than it ever anticipated and may in fact be oversecured. And even if the Administrative Agent is undersecured, not *all* property of the Debtors' bankruptcy estates constitutes collateral of the Administrative Agent. Thus, to the extent that liquidation of the Mortgage Loans will determine the size of the Administrative Agent's deficiency claim (if any) payable from general assets of the estate, *every* creditor has an interest in maximizing the realizable value of the Mortgage Loans. The Administrative Agent, in its haste to avoid further involvement in these bankruptcy cases, is obviously willing to accept forced liquidation value for these assets and to spread any resulting loss among the members of its syndicate. As fiduciaries for *all* creditors in these bankruptcy cases, however, the Debtors do not have this luxury, and are required to explore non-"fire sale" alternatives for realizing value from the Mortgage Loans.

For the avoidance of doubt, in the unlikely event the Administrative Agent makes a *prima facie* showing of "cause" for relief from the automatic stay, the Debtors are fully prepared to defend their business judgment and to establish that now is the worst possible time to sell the Mortgage Loans and that the Administrative Agent's lien in such Mortgage Loans is adequately protected against any future diminution in value by, among other things, regular principal and interest payments from borrowers (and prepayments due to refinancings), which payments are deposited directly into a collateral account and swept weekly by the Administrative Agent in accordance with the Cash Collateral Order. It is this steady stream of income that

distinguishes the Mortgage Loans from other collateral of the Administrative Agent that has been liquidated (or is to be liquidated) by the Debtors during these bankruptcy cases, all of which are more fairly characterized as "wasting" assets.

## BACKGROUND

As of the Petition Date, the approximately $1.077 billion Indebtedness to the Administrative Agent was secured by essentially three types of collateral: (i) the assets of the Debtors' mortgage loan servicing business, including servicing rights, the servicing platform, and the right to recover servicing advances (collectively, the "Servicing Assets"); (ii) certain construction-to-permanent mortgage loans originated and serviced by the Debtors (the "Construction Loans"); and (iii) certain mortgage loans originated and serviced by the Debtors (the "Whole Loans"), along with any proceeds thereof such as, e.g., real estate owned as a result of foreclosures (the "REO" and, collectively with the Servicing Assets, Construction Loans, and Whole Loans, the "Pre-Petition Collateral").

### I.     The Cash Collateral Order

In the Cash Collateral Order, the Administrative Agent consented to the Debtors' use of the Pre-Petition Collateral, including the limited use of cash collateral, "upon the protections, terms and conditions provided for" therein. (D.I. 554 at ¶ J.) In addition, the Administrative Agent asserted, and the Debtors agreed not to contest, "that the value of the Pre-Petition Collateral exceeds the amount of the Indebtedness." (Id. at ¶ E.) Subject to certain rights of the Committee that will expire on March 12, 2008, the Debtors' agreement not to challenge that the Administrative Agent is oversecured is currently "binding on the Debtors and all other parties in interest . . . *for all purposes*". (D.I. 554 at ¶ 20 (emphasis added); *see* D.I. 3154.)

"[A]s adequate protection for, and to secure payment of an amount equal to the Collateral Diminution" (defined as "the aggregate diminution of the value of the Pre-Petition Collateral . . . from and after the Petition Date"), the Cash Collateral Order granted the Administrative Agent a post-petition security interest in the Pre-Petition Collateral and any proceeds thereof (collectively, the "Collateral"). (D.I. 554 at ¶¶ 3-4.) As "additional adequate protection," the Cash Collateral Order required the Debtors to make periodic cash payments in certain amounts (including the payment of the Administrative Agent's post-petition attorneys' fees and expenses until expiration of the Cash Collateral Order), and to remit all proceeds of the Pre-Petition Collateral and Collateral into collateral accounts to be swept by the Administrative Agent on a weekly basis. (D.I. 554 at ¶¶ 5-6, *as amended by* D.I. 2002 at ¶ 2.) The Cash Collateral Order contained specific provisions and deadlines concerning the Debtors' sale of the Servicing Assets, but did not prescribe the method or timing of the sale of any other Collateral. (*See* D.I. 554 at ¶¶ 5-6, *as amended by* D.I. 2002 at ¶ 3.).

The Cash Collateral Order expired by its terms on November 16, 2007. (D.I. 554 at ¶ 11, *as amended by* D.I. 2002 at ¶ 3.) Following such expiration, the Cash Collateral Order provides that, "until the Indebtedness has been indefeasibly paid in full in cash, the Administrative Agent shall be entitled to receive all proceeds from the collection, sale, disposition or liquidation of the Collateral", including principal and interest received from borrowers on the Construction Loans and Whole Loans (net of applicable servicing fees). (*See* D.I. 2002 at ¶ 3.) On information and belief, the Debtors have made (and continue to make) all required payments to the Administrative Agent under the Cash Collateral Order.

## II. Post-Petition Dispositions of the Collateral

As noted in the Motion, from the beginning of these bankruptcy cases the Debtors have been engaged in the systematic liquidation of their assets, including (but by no means limited to) the Collateral. The primary concern was the sale of the Servicing Assets, which was mandated by the Administrative Agent and which the Debtors accomplished between the Petition Date and October 30, 2007, in several discrete transactions for certain Servicing Assets—*see, e.g.,* D.I. 610 (order approving sale of Barclays servicing rights), and D.I. 1619 (order approving sale of EMC mortgage rights)—and a single transaction for substantially all of the remaining Servicing Assets, *see* D.I. 1711 (order approving sale of servicing business to AH Mortgage Acquisition Co., Inc.).

On August 24, 2007 (D.I. 358), the Debtors obtained authority to sell REO in the ordinary course of business, with proceeds of such sales to be remitted to the Administrative Agent in accordance with the Cash Collateral Order.

On October 4, 2007 (D.I. 1175), the Debtors obtained authority to sell the Construction Loans. Despite the Debtors' marketing efforts and several extensions of the bid deadline, however, the Debtors did not receive a bid for the Construction Loans that they believed, in their business judgment, was acceptable.

On December 4, 2007, the Administrative Agent filed motion for relief from the automatic stay with respect to the Construction Loans (D.I. 2255) (the "<u>Construction Loan Stay Relief Motion</u>"). In this motion, the Administrative Agent sought to compel the sale of the Construction Loans to a potential bidder for a price the Debtors had already determined was insufficient, complaining that the Debtors had "inexplicably refused" to provide the potential bidder with reasonable due diligence and were "holding the Administrative Agent's collateral

hostage." In point of fact, the Debtors were exploring non-sale alternatives to realizing value from the Construction Loans (including, e.g., offering the borrowers incentives to refinance or otherwise prepay the loans, which would result in the immediate realization of outstanding principal balances).

Fortunately for the Debtors, the Administrative Agent's dogged insistence on selling the Construction Loans provided an opportunity for a consensual resolution of the Construction Stay Relief Motion. With the approval of the Committee, the Debtors "purchased" the Construction Loans free of the Administrative Agent's liens using funds borrowed under the Debtors' DIP facility. (*See* D.I. 2593 (order approving stipulation resolving Construction Loan Stay Relief Motion).) The Debtors subsequently obtained authority (D.I. 2860) to compromise the Construction Loans in order to facilitate refinancing or other prepayment thereof. As of the date of this Preliminary Objection, the Debtors have very nearly recouped the "purchase price" paid to the Administrative Agent for the Construction Loans from the proceeds of such loans and refinancings and/or other prepayments thereof,[4] and expect that future proceeds from the more than $22.7 million in UPB of remaining Construction Loans will produce value for the unsecured creditors of the Debtors' estates that would not otherwise have been available had the Administrative Agent been successful in forcing a sale to the potential bidder.

On December 22, 2007, the Debtors sought authority (D.I. 2490) to cell certain non-performing Whole Loans (the "Non-Performing Loans"), which sale is currently in process.

The remaining Whole Loans, i.e., the "Mortgage Loans" at issue in the Motion, consist generally of *performing* loans. And given the depressed state of the mortgage markets, the Debtors have concluded that a sale of the Mortgage Loans at this time would be hasty and

---

[4] In fact, the Debtors have realized 99.9% of the UPBs of the Construction Loans that have refinanced/prepaid loans to date. And certain other Construction Loans have converted to permanent mortgages.

imprudent. However, consistent with their fiduciary duties to creditors, and notwithstanding the Administrative Agent's bald assertions to the contrary, the Debtors are constantly evaluating the market conditions and all available sale and non-sale alternatives for maximizing the value of these assets.

The Administrative Agent asserts in the Motion that, as a result of the Debtors' liquidation of Collateral and other payments to the Administrative Agent post-petition, the Indebtedness has been reduced to approximately $505 million.[5] The Administrative Agent also asserts that the unpaid principal balance ("UPB") of the Mortgage Loans is approximately $584 million. On information and belief: (i) approximately $1.6 million of the sale proceeds from the sale of the servicing business has been escrowed for the benefit of the Administrative Agent pending resolution of disputes concerning certain Servicing Assets; and (ii) approximately $17 million in UPB of Non-Performing Loans constituting Collateral are currently being marketed for sale.

## ARGUMENT

### I. The Administrative Agent has not Alleged Sufficient Facts to Establish a *Prima Facie* Case for "Cause" for Relief from the Automatic Stay under § 362(d)(1)

Section 362(d)(1) of the Bankruptcy Code provides for modification of the automatic stay on request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Under § 362(g), the moving party has the burden of proof as to the debtor's lack of equity in the property at issue, and the party opposing relief from the stay has the burden on all other issues. 11 U.S.C. § 362(g). "Nonetheless, the moving party first must establish its *prima facie* case.

---

[5] The Debtors reserve all rights with respect to determining the actual amount of the Indebtedness, but accept the Administrative Agent's estimate for purposes of this Preliminary Objection.

Failure to prove a *prima facie* case requires denial of the requested relief." *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) (Sontchi, J.) (citing *Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause, . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.")).

As discussed below, the Motion, though rich in hyperbole and irrelevant factual allegations, is silent on most of the necessary elements of the Administrative Agent's case, including: (i) the putative value of the Administrative Agent's lien in the Mortgage Loans as of the date of the Motion; (ii) the putative aggregate value of the Administrative Agent's Collateral (including, but not limited to the Mortgage Loans); (iii) the likelihood and amount of any anticipated depreciation in the value of the Administrative Agent's lien in the Mortgage Loans from and after the date of the Motion; and (iv) any meaningful explanation of the Administrative Agent's valuation method(s) with respect to the foregoing. As such, the Debtors do not believe that the facts pleaded in the Motion, *even if taken as true*, are sufficient to make a *prima facie* showing to entitlement to relief from the stay. Thus, unless the Administrative Agent provides something more at the evidentiary hearing on the Motion than it has alleged in the Motion itself, the Debtors will not be put to their burden of proof under § 362(g) and the Motion should be denied.

    A.    **Diminution in the value of *collateral*, without more, does not establish "cause" for relief from the stay; to make its *prima facie* case, the Administrative Agent must allege diminution in the value of its *lien***

Section 362(d)(1) of the Bankruptcy Code defines "cause" to include "lack of adequate protection of *an interest in property*" of the movant. 11 U.S.C. § 362(d)(1) (emphasis added). Section 361 of the Bankruptcy Code, which defines the contours of adequate protection,

similarly speaks to "adequate protection . . . of *an interest of an entity in property.*" 11 U.S.C. § 361 (emphasis added). A secured creditor's "interest" in the collateral securing its claim, of course, is its *lien*, as distinct from *the collateral* itself. *See In re Lane*, 108 B.R. 6, 8 (Bankr. D. Mass. 1989).[6] Accordingly, the Administrative Agent's "interest in property" that is entitled to adequate protection under §§ 362(d)(1) and 361 of the Bankruptcy Code is its *lien* in the Mortgage Loans, as distinct from *the Mortgage Loans* themselves.

In the Motion, the Administrative Agent cites a number of cases for the proposition that diminution in the value of a secured creditor's *collateral* constitutes *prima facie* "cause" for relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code. *United States Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988); *In re George*, 315 B.R. 624, 628-29 (Bankr. S.D. Ga. 2004); *In re Bushee*, 319 B.R. 542, 551 (Bankr. E.D. Tenn. 2004); *In re Planned Sys., Inc.*, 78 B.R. 852, 862-63 (Bankr. S.D. Ohio 1987). Then, after a very brief discussion of the alleged diminution in the value of the Mortgage Loans following the Petition Date (which, as discussed below, is irrelevant even if true) and the likelihood of continued diminution in value at some undisclosed (or unknown) rate,[7] the Administrative Agent concludes it has made its threshold showing of "cause" and puts the Debtors to their burden of proving it is adequately protected. However, one need look no further

---

[6] According to the legislative history of § 361 of the Bankruptcy Code: "Adequate protection of an interest of an entity in property is intended to protect a creditor's *allowed secured claim*." 124 Cong. Rec. H 11,092 (Sept. 28, 1978); S 17,408-9 (Oct. 6, 1978) (emphasis added). Under § 506(a) of the Bankruptcy Code, the "allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property" – in other words, an allowed claim is a secured claim only to the extent of the value of the creditor's *lien* in the collateral. The value of a lien in collateral and the value of the collateral itself are two distinct concepts, the former being capped at the amount of the allowed claim. *In re Lane*, 108 B.R. at 8; *see* 11 U.S.C. § 506(a).

[7] To be fair, the Motion does allege that the servicing fee applicable to the Mortgage Loans will increase from $15 to $25 per mortgage loan over the next several months. Based on an estimated 3,400 Mortgage Loans, this would result in an increase of approximately $34,000 per month in aggregate servicing fees for the $584 million in UPB of Mortgage Loans securing the $505 million in remaining Indebtedness. The Debtors seriously doubt that this *de minimis* increase in servicing fees was a driving force behind the Motion.

than the cases cited in the Motion to see that diminution in value of collateral is only sufficient to establish cause for relief from stay where the movant is *undersecured*.

As primary support for its assertion that diminishing collateral value constitutes "cause" for relief from the stay, the Administrative Agent quotes the following passage from Justice Scalia's opinion in *Timbers*:

> It is common ground that the "interest in property" referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay.

484 U.S. at 370. Taken out of context, this passage might suggest that a secured creditor is entitled to adequate protection of the value of its *collateral* as opposed to the value of its *lien* in the collateral. However, the passage continues: "Thus, it is agreed that if *the apartment project in this case* had been declining in value petitioner would have been entitled, under § 362(d)(1), to cash payments or additional security in the amount of the decline, as § 361 describes." *Id.* (emphasis added). The apartment project at issue in *Timbers* was worth less than the amount of the claim it secured, which was of central importance to the question presented in that case. *Id.* at 369 ("We granted certiorari to determine whether *undersecured creditors* are entitled to compensation under 11 U. S. C. § 362(d)(1) for the delay caused by the automatic stay in foreclosing on their collateral." (emphasis added).)

If a creditor is *undersecured*, of course, the value of its collateral and the value of its lien in such collateral are one in the same, and any diminution in the value of the collateral directly threatens the value of the creditor's "interest in property" for adequate protection purposes. Thus, Justice Scalia's statement in *Timbers* is not surprising, nor are the *George* and *Planned Systems* courts' conclusions that depreciation in the value of the *undersecured* creditors' collateral was sufficient "cause" for relief from the stay. *See George*, 315 B.R. at 629 (scheduled

claim of secured creditor exceeded scheduled value of the collateral); *Planned Systems*, 78 B.R. at 862 (Bankr. S.D. Ohio 1987) (creditor proved at trial that it was undersecured). Indeed, the *Planned Systems* court specifically held that *both* a lack of equity *and* a diminution in the value of the collateral were necessary to establish "cause" under § 362(d)(1):

> [T]he mere non-existence of equity is not sufficient to establish a *prima facie* case of lack of adequate protection under § 362(d)(1). If [a secured creditor] is to make out a *prima facie* case for lifting the stay, it must show that the value of its collateral, *and, thus, the value of its lien*, is diminishing.

78 B.R. at 862 (emphasis added).[8] *Accord Bank of N.Y. v. Epic Resorts-Palm Springs Marquis Villas, LLC (In re Epic Capital Corp.)*, 290 B.R. 514, 526 (Bankr. D. Del. 2003) (Walrath, J.) (citing *Timbers* for the proposition that "an undersecured creditor whose collateral is decreasing in value is entitled to adequate protection payments").

Not only does the Motion lack any allegation that the Administrative Agent is undersecured,[9] but the Cash Collateral Order contains an affirmative representation that the Administrative Agent is in fact *oversecured*, which representation is binding upon the Debtors "for all purposes" (including, presumably, the Motion and this Preliminary Objection). However, at this juncture, the Administrative Agent must choose one or the other. If it is undersecured, as the legal arguments in the Motion suggest, it must come out and say so, or else it cannot establish the necessary link between diminution in the value of the Mortgage Loans and diminution in the value of its *lien* in the Mortgage Loans, which, as discussed above, is the specific "interest in property" that is entitled to adequate protection under §§ 362(d)(1) and 361.

---

[8] The Administrative Agent also cites *Bushee*, 319 B.R. at 551 as "recognizing that cause exists to lift the automatic stay when collateral is decreasing in value". While the *Bushee* opinion does state this proposition, it does so only in dictum and cites *Planned Systems* as its sole authority. However, as discussed above, *Planned Systems* explicitly held that *both* a lack of equity *and* a diminution in value in the collateral are necessary to establish "cause" under § 362(d)(1).

[9] Notably, the Construction Loan Stay Relief Motion was premised upon *both* § 362(d)(1) (cause) *and* (d)(2) (lack of equity, property unnecessary for an effective reorganization), whereas the Motion is premised solely upon (d)(1). At a minimum, this suggests the Administrative Agent's failure to allege it is undersecured was deliberate.

If the Administrative Agent is indeed oversecured, then it must expand its threshold showing of "cause" to include some explanation of why its equity cushion is insufficient to provide adequate protection of its lien in the Mortgage Loans. *See In re Morysville Body Works, Inc.*, 86 B.R. 51, 57 (Bankr. E.D. Pa. 1988) (no *prima facie* cause where creditor failed to establish insufficiency of equity cushion); *In re Jug End in Berkshires, Inc.*, 46 B.R. 892, 900 (Bankr. D. Mass. 1985) (burden shifts to debtor where creditor establishes "*prima facie* case under § 362(d)(1) of an inadequate equity cushion"); *In re Kane*, 27 B.R. 902, 905 (Bankr. M.D. Pa. 1983) (*prima facie* cause requires showing the equity cushion is inadequate). As such, unless and until the Administrative Agent decides whether it is under- or oversecured, it cannot establish a *prima facie* case for "cause" for relief from the stay and the Motion should be denied whether or not the Debtors make any showing of adequate protection.

    **B.**    **Any diminution in value of the Mortgage Loans between the Petition Date and the date of the Motion is irrelevant; the Administrative Agent is only entitled to adequate protection from and after the date of its adequate protection demand**

The Administrative Agent appears to believe that diminution in the value of the Mortgage Loans between the Petition Date and the date of the Motion, if established, would demonstrate its lack of adequate protection and, thus, "cause" for relief from the stay. It also complains throughout the Motion of the Debtors' "failure" to provide adequate protection prior to the filing of the Motion, which obviously implies that the Debtors were under some affirmative duty to provide the Administrative Agent adequate protection prior to the filing of the Motion. However, this is simply not the case. As § 361 of the Bankruptcy Code makes clear, adequate protection may be required under §§ 362, 363, or 364. The obligation to provide adequate protection arises automatically whenever the debtor in possession (i) uses cash collateral pursuant to § 363(c)(2) or (ii) grants a priming or *pari passu* lien on encumbered

property pursuant to § 364(d). Otherwise, the obligation to provide adequate protection arises only "on request of a party in interest" under § 362(d)(1) (for relief from the automatic stay for lack of adequate protection) or § 363(e) (to prohibit or condition proposed use, sale, or lease of estate property). Because the Mortgage Loans are not cash collateral and the Debtors have not purported to grant a lien in them pursuant to § 364, any obligation of the Debtors to provide adequate protection to the Administrative Agent with respect to the Mortgage Loans could have arisen only under § 362(d)(1) or § 363(e), either of which would have required a formal "request" from the Administrative Agent.

In light of the structure of the Bankruptcy Code's adequate protection provisions, it is well-established that "adequate protection may only be awarded from the date movants seek relief" under § 362(d)(1) and/or § 363(e). *In re Continental Airlines*, 146 B.R. 536, 539-540 (Bankr. D. Del. 1992) (citing *In re Best Prods. Co.*, 138 B.R. 155 (Bankr. S.D.N.Y. 1992)); *see In re Wilson*, 70 B.R. 46, 48 (Bankr. N.D. Ill. 1987). Accordingly, for adequate protection purposes, a secured creditor's lien in collateral is appropriately valued as of the date of the adequate protection request (as opposed to the bankruptcy filing date), and the creditor is only entitled to receive adequate protection of its lien against subsequent decline in value (as opposed to all post-petition decline in value). *Id.* The benefits of this bright-line rule are twofold: "First, the rule does not reward the creditor for inaction . . . . Second, th[e] rule puts the debtor on notice at the time the creditor's motion is filed that at a future point in time the collateral will have to be relinquished or payments will have to be made." *In re Wilson*, 70 B.R. at 48.

In the Cash Collateral Order, the Administrative Agent explicitly consented to the Debtors' "use" of the Mortgage Loans, subject to certain bargained-for protections such as the grant of a post-petition lien in the Mortgage Loans and proceeds thereof, remittance of all

collections from such loans to collateral accounts for the benefit of the Administrative Agent, and certain periodic cash payments. The Cash Collateral Order expired on November 16, 2007. Between that date and February 22, 2008, the Administrative Agent made no formal request under § 362(d)(1) or § 363(e) for additional adequate protection of its lien in the Mortgage Loans. Yet now, some *three months* after the Debtors rejected the Administrative Agent's proposed adequate protection stipulation and rebuffed the Administrative Agent's proposed time frame for the sale of the Mortgage Loans, the Administrative Agent cries foul and asserts what appears to be a demand for adequate protection retroactive to the Petition Date. Because the Administrative Agent is only entitled to adequate protection of its lien from and after the date of the Motion, however, any evidence of diminution in value between the Petition Date and the Motion date is utterly irrelevant. Thus, even if the Administrative Agent decides whether it is under- or oversecured for purposes of its Motion, the Administrative Agent will need to establish that the Mortgage Loans are likely to decline in value from and after the Motion date. As it stands, the only allegations in the Motion that speak to this possibility are generic references to poor market conditions, increased delinquencies (though the data is only through January 2008), decreasing real property values, none of which, at least without more quantitative analysis,[10] is sufficient to carry the Administrative Agent's burden of establishing "cause" for relief from the stay. *See In re Reice*, 88 B.R. 676, 684 (Bankr. E.D. Pa. 1988) (finding that "vague, undocumented allegations that the [collateral] is depreciating by an unspecified dollar amount" were insufficient to establish "cause" for relief from the stay).

---

[10] As discussed below, any such quantitative analysis of the value of the Administrative Agent's lien in the Mortgage Loans would have to include a valuation of all Collateral securing the Indebtedness, not just the Mortgage Loans.

### C. Any valuation of the Administrative Agent's Collateral for adequate protection purposes must take into account *all* of the Collateral

The Debtors submit that, for purposes of the Motion, a valuation of *all* of the Collateral of the Administrative Agent, and not merely the Mortgage Loans, is necessary in order to determine (i) whether the Administrative Agent is under- or oversecured, (ii) the amount and sufficiency of the Administrative Agent's equity cushion, if any, and (iii) the value of the Administrative Agent's lien in the Mortgage Loans. This is consistent with Delaware law in this area, *see In re MCM, Inc.*, 95 B.R. 307 (Bankr. D. Del. 1988) (independently valuing each item of collateral in determining whether secured creditor had established "cause" for relief from stay); *In re O. Duggan Co.*, 28 B.R. 820 (Bankr. D. Del. 1983) (same), as well as the Cash Collateral Order, which defines "Collateral Diminution" as the "*aggregate* diminution in value of the Pre-Petition Collateral." (D.I. 554 at ¶ 4.)

### D. Forced liquidation value is not the presumptive (or even an appropriate) valuation of the Collateral for adequate protection purposes

The Debtors submit that, to make its *prima facie* case for "cause" for relief from the stay, the Administrative Agent must provide at least some quantitative analysis of the alleged value of its Collateral (including, but not limited to, the Mortgage Loans), along with a basic explanation of its valuation method. As it had in the Construction Stay Relief Motion, the Administrative Agent in the Motion presupposes that "value" of the Mortgage Loans is equal to the best offer the Administrative Agent could get on the open market. However, "value" under § 361 of the Bankruptcy Code is a much more flexible concept. As noted in the legislative history to § 361:

> The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the

courts will develop a hard and fast rule that will apply in every case. The time and method of valuation is not specified precisely, in order to avoid that result. There are an infinite number of variations possible in dealings between debtors and creditors, the law is continually developing, and new ideas are continually being implemented in this field. The flexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing.

Neither is it expected that the courts will construe the term value to mean, in every case, forced liquidation value or full going concern value. There is wide latitude between those two extremes.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 338-40 (1977).

In light of the nature of the collateral at issue and the obvious non-sale alternatives to maximizing value therefrom (e.g., continuing to collect the income stream, offering incentives to refinance), the Court should not accept as presumptively valid (or even as superficially plausible) a valuation of the Mortgage Loans based purely on the "fire sale" method proposed by the Administrative Agent.

## II.     The Administrative Agent's Interest in the Mortgage Loans is Adequately Protected

Although the Debtors seriously doubt whether the Administrative Agent will be able to put the Debtors to their burden of establishing adequate protection at the hearing on the Motion, the Debtors will be prepared to meet such burden if called upon to do so. The Debtors submit that the Administrative Agent is adequately protected by, among other things: (i) its equity cushion (that is, in the event the Administrative Agent decides it is oversecured for purposes of the Motion); (ii) its post-petition liens in the Mortgage Loans and the proceeds thereof granted pursuant to the Cash Collateral Order; and (iii) its receipt of continued payments from borrowers under (and proceeds of refinancings or other prepayments of) the Mortgage Loans. Of course, the foregoing is not an exclusive list and the Debtors reserve the right to supplement and elaborate upon it at the hearing on the Motion, to the extent necessary.

### III. Relief from the Automatic Stay, if Granted, Would not Entitle the Administrative Agent to Affirmative, Substantive Relief

The specific relief requested in the Motion is an order "allowing the Administrative Agent to sell or dispose of the Mortgage Loans" and "permitting the transfer of the servicing of the Mortgage Loans to the Administrative Agent's designee." (Motion ¶ 32.) As in the Construction Loan Stay Relief Motion, it appears the Administrative Agent is seeking this Court's assistance (or at the very least, its blessing) in carrying out the sale of the Mortgage Loans. However, a stay relief motion "is not designed to short circuit non-bankruptcy substantive and procedural requirements." *Grimes v. Munoz (In re Munoz)*, 83 B.R. 334, 338 (Bankr. E.D. Pa. 1988). Rather, "the effect of granting relief from the stay is to allow a creditor to proceed and assert non-bankruptcy created rights (e.g. state law rights)" in the proper forum. *Id.* A motion for relief from the stay is not the appropriate procedural vehicle for obtaining affirmative substantive relief. *See Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 32 (1st Cir. 1994) ("The limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate."); *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985) (relief from stay hearings are limited in scope to adequacy of protection, equity, and necessity to an effective reorganization, and validity of underlying claims is not litigated).

If the Court is inclined to lift the automatic stay as to the Mortgage Loans, it should nevertheless decline the Administrative Agent's invitation to endorse any proposed plan of liquidation for such loans. What the Administrative Agent does after receiving relief from the

stay is governed exclusively by non-bankruptcy law and is not a matter for this Court. If the Administrative Agent wishes to wrest the servicing of the Mortgage Loans from AH Mortgage Acquisition Co., Inc. and transfer servicing to its own designee pending a sale of the Mortgage Loans for an unreasonably low price in a depressed market, it must proceed at its own peril and at its own expense.

## RESERVATION OF RIGHTS

The Debtors reserve the right to amend, modify, or supplement this Preliminary Objection based upon information obtained from the Administrative Agent in discovery or otherwise, or as a result of subsequent developments. The Debtors further reserve the right to challenge the commercial reasonableness of any disposition of the Mortgage Loans by the Administrative Agent.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order denying the Motion and granting the Debtors such other and further relief as is just and proper.

Dated:   Wilmington, Delaware
         March 6, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/*

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
John T. Dorsey (No. 2988)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession