## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | ) |
| Corporation, <u>et al.</u>,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |
| | ) **Hearing Date:  March 13, 2008, at 10:00 AM (ET)** |
| | ) **Objection Deadline: March 10, 2008, at 4:00 PM (ET)** |
| | ) |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECUREDCREDITORS TO MOTION OF THE DEBTORS FOR ORDERS: (A)(I) APPROVING SALE PROCEDURES; (II) APPROVING PAYMENT OF EXPENSE REIMBURSEMENT; (III) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN NON-PERFORMING LOANS; (IV) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (V) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF NON-PERFORMING LOANS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING SALE AGREEMENT THERETO; (III) AUTHORIZING THE <u>DISTRIBUTIONOF THE PROCEEDS; AND (IV) GRANTING RELATED RELIEF</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of American Home Mortgage Holdings, Inc., *et al.*, (collectively, the "<u>Debtors</u>") hereby objects to the proposed sale of certain non-performing loans that were the property of the Debtors' estates pursuant to the "Motion Of The Debtors For Orders: (A)(I) Approving Sale Procedures; (II) Approving Payment Of Expense Reimbursement; (III) Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving Form And Manner Of Notice Thereof; And (V) Granting Related Relief; And (B)(I) Authorizing The Sale Of Non-Performing Loans Free And Clear Of Liens, Claims, Encumbrances And Other Interests; (II) Authorizing And Approving Sale

---

[1]  The Debtors are the following entities:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

Agreement Thereto; (III) Authorizing The Distribution of The Proceeds; And (IV) Granting Related Relief" [Docket No. 2490] (the "Motion") for the following reasons:

1.      On December 22, 2007, the Debtors filed the Motion seeking to establish procedures for the sale of certain non-performing loans that were the property of the Debtors' estates.  On February 1, 2008, this Court entered the "Order Pursuant To Sections 105 And 363 Of The Bankruptcy Code: (I) Approving Sale Procedures; (II) Approving Expense Reimbursement; (III)Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving Form And Manner Of Notice Thereof; And (V) Granting Related Relief" [Docket No. 2858] (the "Procedures Order").  On or about February 15, 2008, the Debtors filed and served their "Notice of Modified Bid Deadlines and Sale Related Dates" which, as permitted by the Procedures Order, extended certain deadlines relating to the proposed sale of assets and the hearing to consider approval of that sale.  As currently scheduled, the Debtors are expecting to receive final bids on March 11, 2008, and the hearing to consider the proposed sale is scheduled for March 13, 2008.

2.      The Committee generally supports the Debtors' Motion and the proposed sale of the assets described therein.  The Committee, however, objects to the proposed sale of the assets described in the Motion only to the extent that it proposes to distribute certain proceeds of the sale to JPMorganChase Bank, N.A. ("JPMorgan") and Bank of America, N.A. ("BofA") as is more fully described below.

3.      Pursuant to the Motion, the Debtors propose to sell, among other assets, (a) 327 loans having an unpaid principal balance of approximately $127 million that are alleged to be subject to the security interests of JPMorgan pursuant to that certain Senior Secured Credit Agreement, dated as of January 23, 2006 (the "JPMorgan Credit Agreement"); and (b) 208 loans with an unpaid principal balance of approximately $14 million alleged to be subject to the security interest of BofA pursuant to (i) the Second Amended and Restated Credit Agreement

dated as of August 10, 2006, executed by the Debtors as Borrowers, BofA as Administrative Agent, Swing Line Lender and as a Lender, Calyon and Deutsche Bank Securities, Inc., as Co-Syndication Agents, Citibank, N.A., JPMorgan and Merrill Lynch Bank USA as Co-Documentation Agents, and Banc of America Securities LLC, as Sole Lead Arranger and Sole Book Manager (the "BofA Credit Agreement"); and (ii) the Security and Collateral Agency Agreement dated August 30, 2004, executed by and among Debtors AHM Servicing, AHM Corp., and AHM Acceptance as Borrowers, BofA as Administrative Agent, and DBNTC as Collateral Agent (the "BofA Security Agreement"), and to distribute the proceeds of the sale attributable to those loans to JPMorgan and to BofA.  [Motion, at page 6, paragraph 12(b) and (c).]

4.      Both prior to and following the filing of these chapter 11 cases, the Debtors either foreclosed upon or received in lieu of foreclosure certain real property assets that were the subject of certain of the non-performing loans that are to be sold pursuant to the Motion.  These real estate assets (collectively, the "REO Assets") are also to be sold pursuant to the Motion and although not explicitly stated in the Motion, the Committee understands that the Debtors propose to distribute the proceeds attributable to these REO Assets to JPMorgan and BofA.  The Committee has been informed by the Debtor that, as of February 28, 2008, of the 327 loans allegedly subject to the security interest of JPMorgan, 34 loans having and unpaid principal balance of $10,991,135 have been foreclosed (or the underlying real property has been given to the Debtors in lieu of foreclosure) while of the 208 loans allegedly subject to the security interest of BofA, 3 loans having an unpaid principal balance of $1,196,545 have been foreclosed (or the underlying real property has been given to the Debtors in lieu of foreclosure).[2]

---

[2] The number of REO Assets may vary as new loans are foreclosed and more REO Assets are created.

5.      Following the foreclosures (or receipt of real estate in lieu of foreclosure) neither JPMorgan nor BofA took any steps to perfect their security interest in the REO Assets.[3]  Because the security interests of JPMorgan and BofA in the mortgage loans were perfected only under article 9 of the Uniform Commercial Code and neither institution obtained a perfected security interest in real property, the security interest, if any, of JPMorgan and BofA became unperfected when the Debtors acquired real property pursuant to foreclosure or deed in lieu of foreclosure. *See In re Seaway Express Corp*., 912 F.2d 1125 (9th Cir. 1990).

6.      In *Seaway Express*, a creditor with a security interest in inventory and accounts receivable contended that its security interest continued in a parcel of real property that was received in settlement and exchange for a receivable that previously was the collateral of the creditor.  *Id*. at 1127.  The Ninth Circuit ruled against the secured creditor finding that since it did not perfect its security interest in real property, but only in personal property under Article 9, the secured creditor was unperfected in the real property even though the property was received as proceeds of its accounts receivable.  *Id*.  The Court held that article 9 was inapplicable to the creation and perfection of a lien on real property, even real property received as proceeds of collateral, and therefore, the secured creditor's interest was unperfected and avoidable under section 544 of the Bankruptcy Code.  *Id*.  Like the secured creditor in the *Seaway Express* case either (a) JPMorgan and BorA hold no security interest in the REO Assets or (b) the security interest in such REO assets can be avoided by the Debtors pursuant to Bankruptcy Code section 544(a)(3).

---

[3]     To do so would not have been difficult.  JPMorgan and BofA would simply have been required to record in the relevant real property records.  As far as the Committee is aware, they did not do so.

7.      There is, accordingly, a clear and objective basis to conclude that the security interests of JPMorgan and BofA in the REO Assets are not valid and/or may be avoided by the Debtors or, at the very least, such interests are in *bona fide* dispute.

8.      Section 363(f)(4) of the Bankruptcy Code permits the sale of the REO Assets free and clear of any interest that is in *bona fide* dispute, such as the interests claimed by JPMorgan and BofA.  For example, in *In re Gaylord Grain, LLC*, 306 B.R. 624 (8th Cir. B.A.P. 2004), the court found that where the creditors appear to have failed to perfect their security interest in vehicles, the trustee could sell the vehicles pursuant to Bankruptcy Code section 363(f)(4) even where an adversary proceeding had not yet been filed to avoid the security interests of the creditors.  *Id.* at 627-28.  The court stated that "although the trustee did not file an adversary proceeding seeking to avoid the liens in question, he may nevertheless sell free and clear of the bank's liens if he can show, pursuant to 11 U.S.C. § 544, an objective basis for avoiding the liens, and thus establish a bona fide dispute for purposes of 11 U.S.C. § 363(f)(4)".  *Id.* at 628. The Court found that where it appeared that the perfection of the creditors' security interest was doubtful, the 363(f)(4) standard had been satisfied and the trustee could sell the assets free and clear of the creditors' claims.  *Id.* at 627-28; s*ee also*, *In re Collins* 180 B.R. 447, 452 (Bankr. E.D. VA 1995) ("courts must determine 'whether there is an objective basis for either a factual or legal dispute as to the validity of the debt.'  *In re Octagon Roofing,* 123 Bankr. 583, 590 (Bankr. N.D. Ill. 1991) (*citing In re Busick,* 831 F.2d 745, 750 (7th Cir. 1987).  Clearly this standard does not require the Court to resolve the underlying dispute, just determine its existence.").

9.      Accordingly, the Debtors may proceed to sell the REO Assets, but rather than distribute the proceeds therefrom, the Debtors should establish an escrow to which the disputed liens of JPMorgan and BofA shall attach pending a resolution of this dispute.  The creation of

- 5 -

such an escrow will provide adequate protection for the interests of JPMorgan and BofA pending the resolution of this dispute.

10.    Thus, as indicated above, while the Committee generally supports the relief requested in the Motion, the Committee objects to the extent that the Motion seeks authority to distribute the proceeds of the REO Assets to JPMorgan and/or BofA until such time as the dispute concerning the extent, validity and avoidability of their security interests in the REO Assets has been determined.  Instead, the proceeds of the contemplated sale attributable to the REO Assets should be placed in escrow to which the disputed liens of JPMorgan and BofA may attach until a ruling concerning the validity and avoidability of their liens has been issued by this Court.

Dated: Wilmington, Delaware
      March 10, 2008

LAW OFFICES OF JOSEPH J. BODNAR

    /s/ Joseph J. Bodnar

Joseph J. Bodnar (No. 2512)
2101 North Harrison Street, Suite 101
Wilmington, Delaware 19802
(302) 652-5506

     -and-

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett (*Pro hac vice* application pending)
Jeanne Irving (*Pro hac vice* application pending)
Michael A. Morris (*Pro hac vice* application pending)
Joshua D. Morse (*Pro hac vice* application pending)
865 S. Figueroa Street, Suite 2900
Los Angeles, California 90017
(213) 694-1200

*Proposed Special Conflicts Counsel for*
*Official Committee of Unsecured Creditors*

665015.03