# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
                                                  : Chapter 11
In re:                                            :
                                                  : Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS,                  :
INC., a Delaware corporation, et al.,[1]          : Jointly Administered
                                                  :
        Debtors.                                  : Ref. Docket Nos.: 3053
                                                  :
                                                  :
------------------------------------------------- x
```

## CERTIFICATION OF COUNSEL REGARDING ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF CB RICHARD ELLIS, INC. AS DEBTORS' REAL ESTATE BROKER, *NUNC PRO TUNC* TO FEBRUARY 22, 2008

On February 22, 2008, the above-captioned debtors and debtors-in-possession (collectively, "AHM" or the "Debtors"), in the above-captioned jointly administered cases by and through their undersigned attorneys, filed the Debtors' Application Pursuant to Section 327(a) and 328(a) of the Bankruptcy Code for Order Authorizing the Retention and Employment of CB Richard Ellis, Inc. as Debtors' Real Estate Broker, *Nunc Pro Tunc* to February 22, 2008 (the "Application") [D.I. 3053].

On or about February 26, 2008, the Office of the United States Trustee (the "Trustee") contacted the Debtors and expressed an informal objection to paragraph 13 of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Engagement Agreement[2] which permitted CB Richard Ellis, Inc. ("CBRE") to simultaneously represent a prospective purchaser of the Mt. Prospect Property.

As a result of discussions between the Debtors, CBRE and the Trustee, a consensual resolution with respect to the Trustee's informal objection was reached, the terms of which are reflected in the revised proposed form of order (the "Revised Order"), attached hereto as Exhibit A. For the Court's convenience, a blackline of the Revised Order is also attached hereto as Exhibit B. The Revised Order was provided to the Official Committee of Unsecured Creditors (the "Committee") prior to the filing of this Certification. The Committee has consented to the terms of the Revised Order. No other objections or responses to the Application were received by the Debtors.

WHEREFORE, the Debtors respectfully requests that the Court enter the Revised Order attached hereto as Exhibit A, without further notice or hearing at the Court's earliest convenience.

Dated: Wilmington, Delaware
      March 10, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

---

[2] All capitalized terms not defined herein shall have the same meaning ascribed to them in the Application.

066585.1001

**Exhibit A**

**Revised Order**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                                  :   Chapter 11
                                                        :
AMERICAN HOME MORTGAGE HOLDINGS,                        :   Case No. 07-11047 (CSS)
INC., a Delaware corporation, et al.,[1]               :
                                                        :   Jointly Administered
         Debtors.                                       :
                                                        :   Ref. Docket Nos.:  3053
------------------------------------------------------- x
```

### ORDER PURSUANT TO SECTION 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF CB RICHARD ELLIS, INC. AS A REAL ESTATE BROKER, *NUNC PRO TUNC* TO FEBRUARY 22, 2008

Upon consideration of the application for an order authorizing the retention and

employment of CB Richard Ellis, Inc. as a real estate broker, *nunc pro tunc* to February 22, 2008

(the "Application")[2], of the above-captioned debtors and debtors in possession (the "Debtors");

and the Court having reviewed the Connelly Affidavit, attached hereto as Exhibit A; and it

appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

and that CBRE's retention and employment is necessary and is in the best interests of the

Debtors, their estates and their creditors; and that CBRE is a "disinterested person," as defined in

section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy

Code; and that due and adequate notice of the Application having been given under the

circumstances; and upon due deliberation and sufficient cause appearing therefore, it is hereby

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Mt. Prospect Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] All capitalized terms not herein defined shall have the same meaning as ascribed to them in the Application.

066585.1001

ORDERED, that the Application is approved to the extent set forth herein; and it is further

ORDERED, that the Debtors are authorized to retain and employ CBRE as their real estate broker under the terms substantially set forth in the Engagement Agreement, effective February 22, 2008; and it is further

ORDERED, that notwithstanding anything to the contrary in either the Application, Engagement Agreement or Connelly Affidavit, CBRE shall not also represent a prospective purchaser seeking to acquire any interest in the Mt. Prospect Property; and it is further

ORDERED, that CBRE shall be compensated in accordance with the Engagement Agreement, sections 328, 330 and 331 of the Bankruptcy Code, such Federal Rules of Bankruptcy Procedure as may be applicable from time to time, the rules of this Court and such procedures as may be fixed by order of this Court; and it is further

ORDERED, that CBRE shall file interim and final fee applications for allowance of its compensation and expenses with respect to its services on behalf of the Debtors with the Court in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court; provided, however, that CBRE may submit time records in half-hour increments; and it is further

ORDERED, that this Court has and shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the interpretation, implementation and enforcement of this Order.

Dated:    Wilmington, Delaware
          March _____, 2008
                                        _____
                                        Christopher S. Sontchi
                                        United States Bankruptcy Judge

2

066585.1001

# EXHIBIT A

**Engagement Agreement**


CB RICHARD ELLIS

**EXCLUSIVE SALES LISTING AGREEMENT**
CB RICHARD ELLIS, INC.
BROKERAGE AND MANAGEMENT
LICENSED REAL ESTATE BROKER

1. In consideration of the listing for sale the real property hereinafter described (the "Property") by CB Richard Ellis, Inc. ("Broker") and Broker's agreement to use its best efforts to effect a sale of same, the undersigned ("Owner") hereby grants to Broker the exclusive right to sell the Property for a period commencing February 22, 2008, and ending midnight November 30, 2008, (the "Term") which Term may be terminated by either party with or without cause upon thirty (30) day written notice. Property will be marketed at $2,450,000.00.

The Property is situated in the City of Mount Prospect, County of Cook, State of Illinois, is located at 950 Elmhurst Road, Elmhurst Illinois and is further described as 950 Elmhurst Road, Elmhurst, Illinois.

References herein to the Property shall be understood to include portions of the Property.

2. Owner agrees to pay Broker a sales commission in accordance with Broker's Schedule of Sale Commissions (the "Schedule"), a copy of which is executed by Owner, attached hereto and hereby made a part hereof. This commission shall be earned for services rendered, if, during the Term: (a) the Property is sold to a purchaser procured by Broker, Owner, or anyone else or (b) Owner contributes or conveys the Property to a partnership, joint venture, or other business entity. Outside brokers or co-brokers will be paid by their principals; provided, however, notwithstanding anything contained in this Agreement to the contrary, under no circumstances shall the Owner its Trustee or the Bankruptcy Court have any liability to Broker or any third party claiming through Broker for any commission, finder's or referral fee or other compensation in excess of the Commission and Broker covenants and agrees to indemnify and hold harmless Owner from and against any and all such claims, suits, judgments, obligations, costs, losses, expenses and liabilities (including reasonable attorney's fees) arising therefrom to the extent of commissions paid hereunder. Any and all fees and commissions due hereunder are subject to the approval of the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and shall be paid in accordance with sections 328, 330 and 331 of the Bankruptcy Code, such Federal Rules of Bankruptcy Procedure as may be applicable from time to time, and rules or procedures fixed by the Bankruptcy Court. Notwithstanding anything contained herein, or any law, custom or practice to the contrary, Owner's obligation to pay Broker or any cooperating broker, co-broker or third party, the Commission as provided in this Agreement is subject to and contingent upon the consummation of a settlement (as evidenced by the execution and delivery of a deed to the Property by Owner or a transfer or other instrument divesting Owner of its ownership interests and rights in and to the Property) on the Property in accordance with the terms as evidenced by a fully executed Agreement of Sale by all necessary parties and the remittance of the closing proceeds from such sale in accordance with a closing statement approved and signed by the Owner and the Bankruptcy Court (the "Closing").

3. Owner further agrees that Owner shall pay Broker a commission in accordance with the Schedule, if, within ninety (90) calendar days after the expiration or termination of the Term the Property is sold to, or Owner enters into a contract of sale of the Property with, or negotiations continue, resume or commence and thereafter continue leading to a sale of the Property to any person or entity (including his/her/its successors, assigns or affiliates) with whom Broker has negotiated (either directly or through another broker or agent) or to whom the Property has been submitted prior to the expiration or termination of the Term (the "Prospects"). Broker is authorized to continue negotiations with the Prospects. Broker agrees to submit a written list of such Prospects to Owner not later than ten (10) calendar days following the expiration or termination of the Term, together with written records of Broker that documents that such Prospect: (a) had been contacted by Broker in regard to the Property either (i) in person, or (ii) by telephone, and had received written information from Broker about the Property; or (b) had initiated contact with Broker in regard to the Property either (i) in person, or (ii) by telephone, and had received written information from Broker about the Property; provided, however, that if a written offer has been submitted it shall not be necessary to include the offeror's name on the list.

4. As used in this Agreement the term "sale" shall include an exchange of the Property, and also the granting of an option to purchase the Property. Owner agrees that in the event such an option is granted, Owner shall pay Broker a sales commission in accordance with the Schedule on the price paid for the option and for any extensions thereof. This commission shall be paid upon receipt by Owner of any such payment(s). In the event such an option is exercised, whether during the Term or thereafter,

Owner shall also pay Broker a sales commission on the gross sales price of the Property, in accordance with the Schedule. Notwithstanding the foregoing, to the extent that all or part of the price paid for the option or any extension thereof is applied to the sales price of the Property, then any commission previously paid by Owner to Broker on account of such option payment(s) shall be credited against the commission payable to Broker on account of the exercise of the option.

5.  Commissions shall be payable hereunder when earned or at the earlier of closing of escrow, recordation of the deed, or taking of possession by the purchaser or tenant.

6.  Unless otherwise provided herein, the terms of sale shall be, at the option of the purchaser, either cash or cash to any existing loan. Any offer may contain normal and customary contingencies such as those relating to the condition of the Property, title report, and timing of closing.

7.  Owner agrees to cooperate with Broker in bringing about a sale of the Property and to refer immediately to Broker all inquiries of anyone interested in the Property. All negotiations are to be through Broker. Broker is authorized to accept a deposit from any prospective purchaser and to handle it in accordance with the instructions of the parties unless contrary to applicable law. Broker is exclusively authorized to advertise the Property and, exclusively, to place a sign(s) on the Property if, in Broker's opinion, such would facilitate the sale of the Property. Owner and its counsel will be responsible for determining the legal sufficiency of any purchase and sale agreement and other documents relating to any transaction contemplated by this Agreement.

8.  In the event the Property is removed from the market due to the opening of an escrow or acceptance of an offer to purchase the Property during the Term, or any extension thereof, and the sale is not consummated for any reason then, in that event, the Term shall be extended for a period of time equal to the number of days that the escrow had been opened and/or the Property had been removed from the market, whichever is longer, provided that, in no event shall such extension(s) exceed ninety (90) calendar days in the aggregate.

9.  Owner agrees to disclose to Broker and to prospective tenants or purchasers any and all information which Owner has regarding present and future zoning and environmental matters affecting the Property and regarding the condition of the Property, including, but not limited to structural, mechanical and soils conditions, the presence and location of asbestos, PCB transformers, other toxic, hazardous or contaminated substances, and underground storage tanks in, on, or about the Property. Broker is authorized to disclose any such information to prospective purchasers or tenants.

10. Owner represents that it is the owner of the Property and that, except as may be set forth in an addendum attached hereto, no person or entity who has an ownership interest in the Property is a foreign person as defined in the Foreign Investment in Real Property Tax Act (commonly known as "FIRPTA").

11. If earnest money or similar deposits made by a prospective purchaser or tenant are forfeited, in addition to any other rights of Broker pursuant to this Agreement, Broker shall be entitled to one-half (1/2) thereof, but not to exceed the total amount of the anticipated commission.

12. To the extent permitted by applicable law, Broker is authorized to deduct its commissions from any deposits, payments or other funds, including proceeds of sale or rental payments, paid by a purchaser or tenant in connection with a transaction contemplated by this Agreement, and Owner hereby irrevocably assigns said funds and proceeds to Broker to the extent necessary to pay said commissions. Broker is authorized to provide a copy of this Agreement to any escrow or closing agent working on such transaction, and such escrow or closing agent, or tenant, is hereby instructed by Owner to pay Broker's commissions from any such funds or proceeds available. Owner shall remain liable for the entire amount of said commissions regardless of whether Broker exercises its rights under this paragraph.

13. Owner and Broker designate the individual(s) identified below as the legal agent(s) of Owner, to the exclusion of all other licensees of Broker (individually or collectively referred to as "Designated Agent(s)"). Owner acknowledges that Broker is a national brokerage firm and that in some cases it may represent prospective purchasers or tenants. Owner desires that the Property be presented to such persons or entities, and consents to any dual representation created in the event that such purchaser or tenant is also represented by Designated Agent(s). Designated Agent(s) shall not disclose the confidential information of one principal to the other.

Designated Agent(s): Robert D. Graham, Thomas A. Rusthoven and Ted H. Buenger.

DB02:6448992.4                                 2                          066585.1001

14. In the event that the Property becomes the subject of foreclosure proceedings prior to the expiration of this Agreement, then this Agreement shall be deemed suspended until such time as the Owner may reacquire the Property within the Term. If this Agreement is suspended pursuant to this paragraph, Broker shall be free to enter into a listing agreement with any receiver, the party initiating the foreclosure, the party purchasing the Property at a foreclosure sale, or any other person having an interest in the Property.

15. In the event of any dispute between Owner and Broker relating to this Agreement, the Property or Owner or Broker's performance hereunder, Owner and Broker agree that (to the extent possible) the Bankruptcy Court, shall have exclusive jurisdiction to hear and resolve any such dispute. With respect to any dispute over which the Bankruptcy Court has no jurisdiction, Owner and Broker agree that such dispute shall be resolved by means of binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction. Depositions may be taken and other discovery obtained during such arbitration proceedings to the same extent as authorized in civil judicial proceedings in the State of Illinois. The arbitrator(s) shall be limited to awarding compensatory damages and shall have no authority to award punitive, exemplary or similar type damages. The prevailing party in the arbitration proceeding shall be entitled to recover its expenses, including the costs of the arbitration proceeding, and reasonable attorneys' fees from the non-prevailing party.

16. This Agreement, and all of the obligations of Broker arising hereunder, are subject to the approval of the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are contingent upon the Bankruptcy Court's entry and issuance of an Order, pursuant to the Bankruptcy Code authorizing the retention and employment of CB Richard Ellis, Inc., as Real Estate Broker in accordance with the terms of this Agreement.

17. Each signatory to this Agreement represents and warrants that (s)he has full authority to sign this Agreement on behalf of the party for whom (s)he signs and that this Agreement binds such party.

18. This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, negotiations and agreements, whether oral or written. Owner and Broker each represent and warrant to the other that in entering into this Agreement, they are not relying upon any discussions, representations, understandings or agreements, other than the matters specifically stated herein. No amendment, alteration, cancellation or withdrawal of this Agreement or its terms, including the amount of commission or the time of payment of commission, shall be valid or binding unless made in writing and signed by both Owner and Broker. This Agreement shall be binding upon, and shall benefit, the heirs, successors, and assignees of the parties. In the event any clause, provision, paragraph or term of this Agreement shall be deemed to be unenforceable or void based on any controlling state or federal law, the remaining provisions hereof, and each part, shall remain unaffected and shall continue in full force and effect.

19. The parties hereto agree to comply with all applicable federal, state and local laws, regulations, codes, ordinances and administrative orders having jurisdiction over the parties, property or the subject matter of this Agreement, including, but not limited to, the 1964 Civil Rights Act and all amendments thereto, the Foreign Investment In Real Property Tax Act, the Comprehensive Environmental Response Compensation and Liability Act, and The Americans With Disabilities Act. Owner and Broker agree that the Property will be offered in compliance with all applicable anti-discrimination laws. Broker acknowledges and agrees that it is illegal to refuse to display or sell to any person because of such person's membership in any class protected by Article 3 of the Illinois Human Rights Act.

20. Except to the extent set forth herein, the obligations of Broker may not be delegated and, Broker may not assign, transfer, pledge, encumber, hypothecate or otherwise dispose of this Agreement, or any of its rights hereunder, and any attempted delegation or disposition shall be null and void and without effect.

21. Any provision(s) of this Agreement which shall be invalid or void shall in no way affect, impair or invalidate any other provisions hereof, and the remaining provisions hereof shall remain in full force and effect.

22. Broker shall accept delivery of and present all offers and counteroffers to buy or sell the Owner's property.

23. Broker shall assist the Owner in developing, communicating, negotiating and presenting offers, counteroffers, and notices that relate to the offers and counteroffers until a purchase agreement is signed and all contingencies are satisfied or waived.

24. Broker shall answer the Owners' questions relating to offers, counteroffers, notices, and contingencies.

The undersigned Owner hereby acknowledges receipt of a copy of this Agreement.

Accepted:

American Home Mortgage Corporation

CB Richard Ellis, Inc.
Licensed Real Estate Broker

A(n) _____
                    (Owner)

By: _____ *Jeffrey A Barnett* _____

By: _____

Title: Managing Director

Title: ~~Director, Corporate Real Estate~~   EVP CoH

Address: 20 N. Martingale, # 100
              Schaumburg, IL 60173

Address:  538 Broadhollow Road
              Melville, NY 11747

Telephone: 847-706-4940

Telephone: ~~631.022.5772~~ 516-396-7703 CoH

Date:  2.27.08

Date:

┌─────────────────────────────────────────────────────────────────┐
│ **CONSULT YOUR ADVISORS** – This document has legal consequences.  No representation or recommendation is made by Broker as │
│ to the legal or tax consequences of this Agreement or the transaction(s) which it contemplates.  These are questions for your attorney and │
│ financial advisors. │
└─────────────────────────────────────────────────────────────────┘


**CB RICHARD ELLIS**

**SCHEDULE OF SALE COMMISSIONS**
CB RICHARD ELLIS, INC.  (CHICAGO AREA OFFICE)
BROKERAGE AND MANAGEMENT
LICENSED REAL ESTATE BROKER

FOR PROPERTY AT 950 N. Elmhurst Road, Mount Prospect, Illinois.

As to sales of improved real property, Broker's commission shall be 2.5% of the first $1,600,000.00 of the gross sales price plus 12% of the gross sales price in excess thereof.  Gross sales price shall include any and all consideration received or receivable, in whatever form, including but not limited to assumption or release of existing liabilities. The Property is deemed to be improved. The commission shall be paid when earned or at the close of escrow through escrow, or if there is no escrow, then upon recordation of the deed; provided, however, that if the transaction involves an installment contract, then payment shall be made upon execution of such contract. In the event Owner contributes or conveys the Property or any interest therein to a joint venture, partnership, or other business entity, the commission shall be calculated on the fair market value of the Property, less the value of the interest in the Property retained by or transferred to Owner, as the case may be, and shall be paid at the time of the contribution or transfer. If Owner is a partnership, corporation, or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a commission in connection with such sale or transfer, the commission shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid at the time of the transfer.

The provisions hereof are subject to the terms and provisions of any Exclusive Sales Listing Agreement, Exclusive Leasing Listing Agreement, Exclusive Subleasing Listing Agreement, Exclusive Representation Agreement or other agreement to which this Schedule may be attached and which is executed by the parties hereto.

In the event Owner fails to make payments within the time limits set forth herein, then from the date due until paid, the delinquent amount shall bear interest at the maximum rate permitted in the state in which the office of Broker executing this Schedule is located. If Broker is required to institute legal action against Owner relating to this Schedule or any agreement to which it is attached, Broker shall be entitled to reasonable attorneys' fees and costs.

Owner hereby acknowledges receipt of a copy of this Schedule and agrees that it shall be binding upon its heirs, successors and assignees. In the event Owner sells or otherwise disposes of its interest in the Property, Owner shall remain liable for payment of the commissions provided for in this Schedule and any agreement of which it is a part, unless the purchaser or transferee assumes all of such obligations in writing in such form as is acceptable to Broker.

APPROVED this _____ day of _____, 20____

CB Richard Ellis, Inc.
Licensed Real Estate Broker

By: _Jeffrey S Barrett_

Title: Managing Director

Date:  2-27-08

American Home Mortgage Corp.
Owner

By: _(signature)_

Title: EVP

Date: 2/27/08

DB02:6541273.2

066585.1001

**Exhibit B**

**Blackline**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x
---------- :    Chapter 11
In re: :
: Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE :
HOLDINGS, INC., : Jointly Administered
a Delaware corporation, et al.,[1] :
: **Ref. Docket ~~No~~Nos.: 3053 &._____**
Debtors. x
------------------------------------------------------- 
----------

## ORDER PURSUANT TO SECTION 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF CB RICHARD ELLIS, INC. AS A REAL ESTATE BROKER, *NUNC PRO TUNC* TO FEBRUARY 22, 2008

Upon consideration of the application for an order authorizing the retention and

employment of CB Richard Ellis, Inc. as a real estate broker, *nunc pro tunc* to February 22, 2008

(the "Application")[2], of the above-captioned debtors and debtors in possession (the "Debtors");

and the Court having reviewed the Connelly Affidavit, attached ~~to the Application~~hereto as

Exhibit ~~B~~A; and it appearing that the Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334; and that CBRE's retention and employment is necessary and is in the

best interests of the Debtors, their estates and their creditors; and that CBRE is a "disinterested

person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a)

of the Bankruptcy Code; and that due and adequate notice of the Application having been given

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Mt. Prospect Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.□

[2] All capitalized terms not herein defined shall have the same meaning as ascribed to them in the Application.

under the circumstances; and upon due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED, that the Application is approved to the extent set forth herein; and it is further

ORDERED, that the Debtors are authorized to retain and employ CBRE as their real estate broker under the terms substantially set forth in the Engagement Agreement, effective February 22, 2008; and it is further

ORDERED, that notwithstanding anything to the contrary in either the Application, Engagement Agreement or Connelly Affidavit, CBRE shall not also represent a prospective purchaser seeking to acquire any interest in the Mt. Prospect Property; and it is further

ORDERED, that CBRE shall be compensated in accordance with the Engagement Agreement, sections 328, 330 and 331 of the Bankruptcy Code, such Federal Rules of Bankruptcy Procedure as may be applicable from time to time, the rules of this Court and such procedures as may be fixed by order of this Court; and it is further

ORDERED, that CBRE shall file interim and final fee applications for allowance of its compensation and expenses with respect to its services on behalf of the Debtors with the Court in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court; provided, however, that CBRE may submit time records in half-hour increments; and it is further

066585.1001

ORDERED, that this Court has and shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the interpretation, implementation and enforcement of this Order.

Dated:    Wilmington, Delaware

March _____ -, 2008_____
                    Christopher S. Sontchi
                                    United States Bankruptcy Judge

DB02:6557722.36557722.4                                                                          066585.1001