UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | ) Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al.*, | ) Case No. 07-11047 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Objection Deadline: March 31, 2008 at 4:00 p.m. (ET) |
| | ) Hearing Date: April 14, 2008 @ 10:00 a.m. (ET) |

**MOTION OF COUNTRYWIDE FOR ENTRY OF ORDER
ALLOWING LATE FILING OF PROOFS OF CLAIM**

Countrywide Home Loans, Inc., Countrywide Bank, F.S.B., ReconTrust Bank, N.A. and Landsafe (collectively, **"Countrywide"**), by and through their undersigned counsel, hereby move the Court (the **"Motion"**), pursuant to Rules 3003(c)(2), 3003(c)(3) and 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), to allow late filing of Countrywide's proofs of claim (individually, a **"Claim"** collectively, the **"Claims"**), one business day beyond the Bar Date (as defined below). In support of this Motion, Countrywide respectfully submits as follows:

## BACKGROUND

1.  On August 6, 2007 (the **"Petition Date"**) the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the **"Cases"**).

2.  The Court established Friday, January 11, 2008, as the bar date for filing proofs of claim against the Debtors' estates (the **"Bar Date"**). All proofs of claim were to be filed with AHM's claims noticing agent, EPIC Bankruptcy Solutions, LLC (the **"Claims Agent"**), on or before the Bar Date.

WLM 512871.1

3. In December 2007, Countrywide requested Katherine M. Windler ("**Mrs. Windler**"), a bankruptcy attorney with Bryan Cave LLP, in Santa Monica, California, assist Countrywide in the preparation and filing of Countrywide's Claims in these Cases.

4. On Thursday, January 10, 2008, working directly alongside her legal secretary, Pamela Davis ("**Ms. Davis**"), Mrs. Windler and Ms. Davis assembled the Claims[1], together with all accompanying exhibits.

5. In total, Mrs. Windler and Ms. Davis, assembled ten (10) Claims in final form, which were placed in four (4) separate Federal Express delivery packages, to be filed for Countrywide with AHM's Claims Agent in New York, NY.

6. The ten (10) Claims consisted of: (a) four (4) Claims asserted by Countrywide Home Loans, Inc. against AHM (Claim Nos. 9326, 9327, 9328 and 9329); (b) one (1) Claim asserted by Countrywide Bank, F.S.B. against AHM (Claim No. 9440); (c) one (1) Claim asserted by ReconTust Bank, N.A. against AHM (Claim No. 9441); and (d) four (4) Claims asserted by Landsafe against AHM (Claim Nos. 9442, 9443, 9444 and 9445).

7. Mrs. Windler instructed Ms. Davis to retain a complete set of the Claims as a precautionary step taken in the highly unlikely event Mrs. Windler could not confirm delivery of the Claims in New York on Friday, January 11, 2008, so that, if necessary, Mrs. Windler and Ms. Davis would have copies of Claims scanned and sent via electronic transmission, printed in New York by an attorney service, and hand-delivered to the Claims Agent.

---

[1] Copies of the Claims are attached to the Declaration of Katherine M. Windler in Support of Motion of Countrywide for Entry of Order Allowing Late Filing of Proofs of Claim (the "**Windler Declaration**") filed contemporaneously herewith as "Composite Exhibit A" and are incorporated herein by reference.

WLM 512871.1

8. On the morning of Friday, January 11, 2008, Ms. Davis checked the Federal Express tracking system and verified that each of the Federal Express packages containing the Claims had, in fact, arrived in New York. *See* Windler Declaration "Composite Exhibit C."

9. On January 15, 2008, Mrs. Windler received the returned Federal Express envelopes with the conformed copies of the Claims and learned, for the first time, that the Claims were not actually received by the Claims Agent until Monday, January 14, 2008, one business day after the Bar Date.

10. Thereafter, Mrs. Windler and Ms. Smith confirmed with Federal Express by telephone that each of the Federal Express packages containing the Claims was properly addressed and had the proper box checked for early morning delivery with the proper fee paid for overnight delivery (not 2-day delivery).

11. Ms. Smith printed new tracking reports that indicated for the first time that the four Federal Express packages transmitting the Claims to New York never actually were in New York on Friday January 11, 2008, but had actually sat in Tennessee the entire weekend from January 11 through 13, 2008.

12. This new, updated tracking information directly contradicted the print out obtained on Friday, January 11, 2008, which wrongfully represented that the Federal Express packages containing the Claims were physically in New York on Friday, January 11, 2008.

13. Immediately upon learning of Federal Express' errors, Mrs. Windler contacted both Countrywide and Countrywide's undersigned Delaware counsel in the AHM bankruptcy cases.

14. Mrs. Windler informed them of the issues and sought the assistance of Countrywide's Delaware counsel in contacting AHM's counsel to determine whether AHM

would stipulate to the deemed timely filing of the Claims (the "**Stipulation**") based on the facts contained in: (i) the Windler Declaration; (ii) the Declaration of Pamela Davis in Support of Motion of Countrywide for Entry of Order Allowing Late Filing of Proofs of Claim (the "**Davis Declaration**"); and (iii) the Declaration of June Smith in Support of Motion of Countrywide for Entry of Order Allowing Late Filing of Proofs of Claim (the "**Smith Declaration**"), each of which have been <u>filed contemporaneously herewith</u> and are incorporated herein, and hereby made a part hereof by reference.

15. On January 17, 2008, Countrywide's Delaware counsel discussed the aforementioned issues with AHM's counsel and forwarded the Windler Declaration, Davis Declaration and Smith Declaration to AHM's counsel.

16. Since January 17, 2008, counsel for Countrywide and counsel for the Debtors have been engaged in good faith negotiations on the Stipulation, however, as of the date hereof, the parties have been unable to reach an agreement. Because the Stipulation was not finalized, Countrywide has filed the instant motion seeking an order form the Court allowing the late filing of the Claims.

## JURISDICTION

17. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED

18. By this Motion, Countrywide seeks an order allowing the Claims to be filed one business day beyond the Bar Date.

19. Pursuant to Federal Rules of Bankruptcy Procedure 3003(c)(2) and (c)(3) and 9006(b)(1), courts may extend the period for filing a proof of claim where the late filing resulted

WLM 512871.1

from excusable neglect. In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), the Supreme Court held that a creditor could file its proof of claim outside bar date where the failure to timely file was the result of excusable neglect. Relying on Rule 9006(b)(1), the Supreme Court found that excusable neglect extends even to failures that are within a party's control:

> First, the Rule [9006(b)(1)] grants a reprieve to out-of-time filings that were delayed by "neglect." The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or, closer to the point for our purposes, "to leave undone or unattended to *esp[ecially] through carelessness*." Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness. Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Id.* at 388.

20. Four factors are considered in deciding whether excusable neglect has been shown to permit a proof of claim after the bar date. The factors are: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

21. The Third Circuit Court of Appeals has adopted the *Pioneer* factors in finding excusable neglect to permit a proof of claim after the bar date. *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 130 (3d Cir. 1999) (finding that Bankruptcy Court abused its discretion by refusing to find excusable neglect). In addition, in the Third Circuit, "[a]ll factors

must be considered and balanced; *no one factor trumps the others.*" *In re Garden Ridge Corp.*, 348 B.R. 642, 645 (Bankr. D. Del. 2006) (emphasis added) (quoting *Hefta v. Official Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir. 2005)).

22. Courts in this District consider several factors to determine prejudice:

> [1] whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; [2] whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; [3] whether payment of the claim would jeopardize the success of the debtor's reorganization; [4] whether allowance of the claim would adversely impact the debtor actually or legally; and [5] whether allowance of the claim would open the floodgates to other future claims.

*Garden Ridge*, 348 B.R. at 646 (citing *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)*, No. 00-2426, 2004 WL 2283599 *4 (D. Del. October 4, 2004)). The Third Circuit Court of Appeals concurs with other circuit courts that "prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." *O'Brien*, 188 F.3d at 127. Indeed, in this Circuit, "Prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence. " *Id.*

23. "A finding of excusable neglect is based on equity and depends on the particular circumstances and facts of the case." *Garden Ridge*, 348 B.R. at 645. In *Garden Ridge*, the creditor's claim was listed on the debtors' schedules as an unsecured non-priority liquidated debt. The creditor received a copy of the schedules but disagreed with the amount listed. Aware of the bar date, the creditor filed a late proof of claim as a result of its carelessness. After filing the late claim, the bankruptcy court confirmed the debtors' plan of reorganization which gave the Committee the authority to challenge general unsecured claims. The Committee filed an objection to the untimely proof of claim because (1) it would result in prejudice by reducing the value of claims held by other creditors, and (2) the creditor failed to provide any reason for its

delay in filing the late proof of claim or did not make any showing that the delay was not within its reasonable control. *Id.* at 646-47. Notwithstanding the creditor's admission that it was solely to blame for filing the late claim, the court rejected the Committee's arguments, found excusable neglect and permitted the late claim. The instant case presents even more compelling reasons in finding excusable neglect and allowing the late filing of the Claims.

A.  **There is no Prejudice to the Debtors in Allowing the Claims to be Filed One Business Day Beyond the Bar Date**

24.     The Debtors have not been surprised or caught unaware by the assertion of the Claims. Well before the Bar Date, the Debtors were made aware of the substantial claims Countrywide had against the Debtors. The Debtors and Countrywide have been discussing Countrywide's Claims, at least in part, during the resolution of Countrywide's objection to the sale of the servicing business to AH Mortgage Acquisition Co., Inc. and the negotiation of the corresponding servicing rights sale to Countrywide.[2]

25.     Furthermore, as soon as Countrywide learned that its Claims were received one day late by the Claims Agent, Countrywide immediately called counsel to the Debtors to alert them of the issue in an attempt to reach a consensual resolution.

26.     Additionally, allowing the Claims to be filed one day late would not force the return of amounts already paid out under any plan or affect a distribution to creditors because the Debtors have yet to propose a plan. *In re Worldwide Direct, Inc.*, No. 99-108-MFW, at 12-13 (Bankr. D. Del. December 2, 1999) (there is less prejudice than in *Pioneer* and *O'Brien* where

---

[2] On December 20, 2007, this Court entered the Order (I) Resolving Objections of Countrywide Bank, N.A. to Debtors' Motion Authorizing the Sale of the Debtors' Servicing Business; (II) Authorizing the Private Sale of Certain Servicing Rights to Countrywide Bank, N.A. Free and Clear of Liens, Claims and Interests; (III) Approving the Terms of the Purchase and Interests; and (IV) Granting Related Relief [Docket No. 2462] (the "**Sale Order**"). Furthermore, Countrywide disclosed it had substantial repurchase and premium recapture claims against the Debtors in pleadings filed with this Court well prior to the Bar Date. *See e.g.* Countrywide's objection to the AH Mortgage Acquisition Co., Inc. sale filed on September 5, 2007 [Docket No. 614].

WLM 512871.1

there has been no distribution to creditors and no plan filed)[3]. Here, as in *Worldwide Direct*, there will be no conceivable prejudice to creditors by Countrywide being paid its Claims in accordance with the priorities established by the Bankruptcy Code, if the Claims are allowed to be filed one day late. *Id.*

27. This Court has previously rejected the argument that allowing late filed claims will open the floodgates to other future claims. This Court is required by *Pioneer* and *O'Brien* cases to address each request to file a late claim on its own merits and if there were a flood of late claims, it might evidence that the Debtors had not given adequate notice. *Id.* at 13.

28. Finally, allowing the late filing of Countrywide's Claims will not jeopardize the success of the Debtors' reorganization or adversely impact the Debtors in any way. Because this is a liquidating rather than a reorganizing chapter 11 case, allowing Countrywide to file the Claims one business day late will not result in prejudice because the "reorganizational purpose" served by setting bar dates in inapplicable. See e.g. *In re Sacred Heart Hospital of Norristown*, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995). For the reasons set forth above, allowing the Countrywide Claims to be filed one day late will in no way prejudice the Debtors.

**B.   The Length of the Delay was De Minimis**

29. The length of delay in filing the Claims on the next business day (i.e., Monday, January 14, 2008) and any potential impact upon the Debtors' Cases is *de minimis* for the reasons set forth above.

**C.   The Reason for the Delay**

30. The reason for the delay was due to Federal Express and its errors in (x) not adhering to its own forms and instructions for next day delivery, and (y) incorrectly reporting in

---

[3]   A copy of the *Worldwide Direct* opinion is attached hereto as <u>Exhibit A</u>.

its tracking system (upon which Mrs. Windler relied) that the Federal Express packages transmitting the Claims had arrived in New York when in fact they had not.

**D.     Countrywide has Acted in Good Faith.**

31.    As evidenced by the Declarations submitted in support of this Motion, all times Bryan Cave, Mrs. Windler and Countrywide have acted in good faith.

## CONCLUSION

32.    For the foregoing reasons, Countrywide respectfully requests that this Court enter an order allowing the Claims to be filed one business day beyond the Bar Date.

## NOTICE

33.    Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors; (c) counsel to the Committee; and (d) all parties that have requested notice in these cases pursuant to Rule 2002 of the Bankruptcy Rules. In light of the nature of the relief requested herein, Countrywide submits that no other or further notice is required.

34.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, Countrywide respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit "B", granting the relief requested and grant such other and further relief as may be just and proper.

WLM 512871.1

Dated: Wilmington, Delaware
March 11, 2008

Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP

William E. Chipman, Jr. (No. 3818)
919 North Market Street
15th Floor
Wilmington, Delaware 19801
(302) 777-7770

*Counsel to Countrywide Bank, F.S.B., Countrywide Home Loans, Inc.; ReconTrustBank, N.A. and Landsafe*

- 10 -

WLM 512871.1