# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE | ) | Chapter 11 |
|  | ) |  |
| WORLDWIDE DIRECT, INC., | ) | Case Nos. 99-108 (MFW) |
| et al., | ) | through 99-127 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) | Under Case No. 99-108 (MFW) |

### OPINION[1]

## I.    INTRODUCTION

This case is before the Court on the Motion of Norweb plc
("Norweb") for Extension of the Deadline to File Cure Claim or,
Alternatively, for Leave to File Cure Claim after Bar Date.
After a hearing and briefing by the parties, we grant Norweb's
motion.

## II.    JURISDICTION

This Court has jurisdiction over this matter, which is a
core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1),
(b)(2)(A), (B) and (O).

## III.    PROCEDURAL AND FACTUAL BACKGROUND

Norweb was a party to a certain agreement executed on
May 29, 1997, between Norweb and ConQuest Operator Services Corp.

---

[1]    This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052, which is applicable to contested
matters pursuant to Rule 9014.

("ConQuest") for an enhanced calling card and voice services market in the United Kingdom ("the Agreement"). On November 17, 1997, Norweb executed a novation agreement with Conquest and SmarTalk Teleservices, Inc. ("the Debtor") pursuant to which the Debtor assumed all obligations of ConQuest under the Agreement.

On January 19, 1999, Worldwide Direct, Inc., and its eighteen affiliates, including the Debtor, (collectively "the Debtors") filed for relief under chapter 11 of the Bankruptcy Code. Concurrent with the commencement of their chapter 11 proceedings, the Debtors filed a motion seeking court approval of the sale of substantially all of the Debtors' assets to AT&T Corp. ("AT&T") or the prevailing bidder at an auction ("the Sale Motion"). At the same time, the Debtors filed a motion to establish a deadline by which parties to all executory contracts and unexpired leases to be assigned under the Sale Motion ("the Assigned Agreements") must object to the proposed assumption and assignment of those agreements or assert that a cure payment was due on assignment ("the Cure Motion").[2]

---

[2]     Section 365(b) of the Bankruptcy Code states that a debtor may not assume an executory contract or unexpired lease on which there has been a default "... unless, at the time of assumption of such contract or lease, the debtor - (A) cures or provides adequate assurance that the debtor will promptly cure such default; (B) compensates, or provides adequate assurance that the debtor will promptly compensate a party other than the debtor ... for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b)(1).

On January 29, 1999, we granted the Cure Motion and established February 11, 1999, as the deadline for any party to an Assigned Agreement to assert a cure claim. The Order required that the Debtors "... mail a notice of the Deadline, in substantially the form of the Deadline Notice, to the parties to the Assigned Agreements, enclosing for each entity a true, complete and correct copy of its Assigned Agreement." (See Order dated January 29, 1999 at p.6.)

On March 2, 1999, the Debtors filed a supplemental motion seeking an extension of the cure deadline. We granted the supplemental motion and by order dated March 3, 1999, set March 25, 1999, as the bar date to file a claim for cure payment. The same notice requirements were applicable.

On March 18, 1999, we entered an order granting the Sale Motion which authorized and directed the Debtors to assume and assign the Assigned Agreements, including the Norweb Agreement, to AT&T. The sale closed on April 1, 1999.

On May 17, 1999, Norweb filed its motion for extension of the deadline to file its cure claim or, alternatively, for leave to file its cure claim after the bar date asserting that cure payments in the amount of £538,350.51, or approximately $800,000, are owed to Norweb. In its motion, Norweb asserts that it should be allowed to file a late cure claim because 1) Norweb did not receive proper notice of the deadline to file a cure claim; and

3

2) even if notice was proper, Norweb's failure to file a timely claim is the result of excusable neglect. The Debtors objected stating that they had mailed the Cure Deadline Notice to Norweb and Norweb had failed to file a timely claim. The Debtors argue that they are prejudiced by Norweb's delay because, had Norweb filed a timely claim, the Debtors may not have assigned the Agreement to AT&T, or may have negotiated an adjustment of the sale price as a result of the large cure claim.[3] A hearing on the Norweb Motion was held on June 22, 1999. The parties subsequently filed briefs in support of their positions.

## IV.  DISCUSSION

Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure permits the court to "fix and for cause shown ... extend the time within which proofs of claim or interest may be filed." Consequently, the bar date is very similar to a statute of limitations and, with some exceptions, creditors must strictly comply with the deadline. In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995)(citing In re Macmillan, 186 B.R. 35, 49 (Bankr. S.D.N.Y. 1995)); In re Drexel Burnham Lambert Group, Inc., 129 B.R. 22, 24 (Bankr. S.D.N.Y. 1991). However, the courts will allow a party to file a late claim where notice is

---

[3]  Under the terms of the Sale Agreement, the Debtors are responsible for paying all cure claims.

4

inadequate or the party's inaction is due to excusable neglect.
Pioneer Investment Services Co. v. Brunswick Associates Limited
Partnership, 507 U.S. 380, 395 (1993); Keene Corp., 188 B.R. at
907.


A.    Notice

Norweb's first argument is that it should be entitled to
file its cure claim because it did not receive adequate notice of
the deadline.  Norweb asserts that the notices which the Debtors
claim to have sent were incorrectly addressed and did not have
the proper postage.  Those items which were received by Norweb
did not give adequate notice of the bar date.

The Debtors, on the other hand, argue that they mailed
several Deadline Notices to Norweb.  Norweb appears on the
Debtors' service list five times at four different addresses.
The Debtors assert that it mailed four Deadline Notices to Norweb
at all four addresses, one of which is Norweb's correct address.
Furthermore, the Debtors assert that because the items were
mailed, there is a presumption of receipt by the addressee which
is not overcome by mere denial of receipt.  In re Grand Union,
204 B.R. 864, 870 (Bankr. D. Del. 1997).  Rather, the Debtors
argue Norweb must present affirmative evidence that the notices
were not properly mailed.

In general, due process requires notice that is "reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for response." Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995)(quoting In re Eagle Bus Mfg., 62 F.3d 730, 735 (5th Cir. 1995)). If notice does not meet this criteria it is deemed inadequate and, consequently, precludes discharge of a claim in bankruptcy. Chemetron, 72 F.3d at 346. Nonetheless, whether a creditor has received adequate notice of a bar date is to be determined on a case-by-case basis. Grand Union, 204 B.R. at 871.


　　　　1.　Reasonably Calculated to Reach Interested Parties

We agree with the Debtors' general statement that "it is a well established rule that the bar date notice is presumed to have been received by the creditor when ... the debtor offers proof that it was timely and properly mailed." Id. at 870; see also Williams v. Williams, 185 B.R. 598, 599 (9th Cir. B.A.P. 1995); In re Trump Taj Mahal Assocs., 156 B.R. 928, 938-39 (Bankr. D.N.J. 1993); In re Schepps Food Stores, Inc., 152 B.R. 136, 139 (Bankr. S.D. Tex. 1993). We also agree that mere denial of receipt is not enough to rebut the presumption of receipt by the creditor. Eagle Bus, 62 F.3d at 735. However, we note that the presumption is that notice which is correctly mailed is

6

received.  Id.  We find that Norweb has presented sufficient evidence that the Deadline Notices were not correctly mailed by the Debtors, thereby rebutting the presumption that they were received.

The Debtors submitted proof that the Deadline Notice was mailed to Norweb, at the four different addresses, before the supplemental cure deadline.  The Debtors also submitted proof of the United States Postal Services' procedures for returned foreign addressed mail.  According to those procedures, if a package is sent with the wrong foreign address or contains insufficient postage for foreign delivery, the package would be returned to the sender.  The Debtors assert that only two (of the four) Cure Deadline Notice packages addressed to Norweb were returned.

Norweb, however, offered evidence that at least three of the four Cure Deadline Notice packages sent by the Debtors were incorrectly addressed.  The Debtors' service list itself evidences that three of the four packages the Debtors sent to Norweb were sent to the wrong address.

The Debtors' service list also demonstrates that the notices which were sent to other foreign creditors/parties were mailed at the first class foreign rate while the packages sent to Norweb, one of which was presented as evidence, were mailed at the domestic rate.  (Transcript of Hearing at 92-96.)  The first

7

class foreign rate for the one package received by Norweb (the Sale Motion) is $25.00 (the overseas rate), but the postage paid on the package was only $3.20 (the domestic rate for mail of that weight). (See Movant's Exh. 7 (the Sale Motion); and Movant's Reply Brief at Exh. 1 (First Class Domestic Rates), Exh. 2 (International Postage Rates and Fees).)

We find, based on the evidence presented, that all the Notices sent by the Debtors were to an incorrect address and/or contained insufficient postage. Thus, we conclude that the Debtors' Deadline Notice mailing to Norweb was not accomplished in a manner reasonably calculated to reach Norweb. See Eagle Bus, 62 F.3d at 735-36 ("[t]o determine if mailing was accomplished the courts may consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed ...").

,

### 2. Reasonably Conveys All Required Information

Not only must the notice be reasonably calculated to reach all interested parties, but the notice must contain all information required for the recipient to take the necessary steps. In the instant case, Norweb did receive three items from the Debtors, but the items received contained papers which made no mention of the Cure Motion or the Cure Deadline Notice. The three packages Norweb received contained the following:

8

- correspondence dated March 3, 1999, advising
  Norweb of the commencement of the Debtor's
  bankruptcy proceeding and the applicability of the
  automatic stay;

- the Sale Motion which was received on March 8,
  1999;

- correspondence dated March 25, 1999 indicating
  that AT&T intended to assume the Norweb Agreement.

None of these contained any reference to the cure deadline.


3.   Permits Reasonable Time for Response

Adequate notice should provide the interested party with
adequate time to respond.  Norweb contends that it first received
notice of the cure deadline by a fax[*] of the Cure Deadline Order
on April 16, 1999 (after the March 25, 1999, deadline).
Accordingly, Norweb was not put on notice of the cure deadline
before it passed and as a result could not take the necessary
action.  Since Norweb did not learn of the bar date to file a
cure claim until almost one month after the supplemental cure
deadline and 15 days after the sale to AT&T, we conclude that the
notice received by Norweb of the cure deadline did not afford
Norweb a reasonable time to respond.

As a result of the foregoing analysis, we conclude that
Norweb did not receive adequate notice of the bar date to file

---

[*]  Neither party has explained why this fax was sent.

9

its cure claim and thus should be afforded an extension of the deadline in order to file its claim.

B.    Excusable Neglect

Norweb also argues that its failure to file a timely cure payment was the result of excusable neglect.    Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure states in relevant part that:

> ... when an act is required or allowed to be
> done at or within a specified period by these
> rules or by notice given thereunder or by
> order of court, the court for cause shown may
> at any time in its discretion ... on motion
> made after the expiration of the specified
> period permit the act to be done where the
> failure to act was the result of excusable
> neglect.

Fed. R. Bankr. P. 9006(b)(1).

"A party seeking to extend the bar date pursuant to Bankruptcy Rule 9006 bears the burden of proving excusable neglect by a preponderance of the evidence."    In re Food Barn Stores, Inc., 214 B.R. 197, 200 (8th Cir. B.A.P. 1997); In re Brown, 223 B.R. 82, 84 (Bankr. M.D.N.C. 1997); In re Lee Way Holding Co., Inc., 178 B.R. 976, 985 (Bankr. S.D. Ohio 1995); In re R.H. Macy & Co., Inc., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993); Trump Taj Mahal, 156 B.R. at 936.

The Supreme Court has held that, in determining whether a party's neglect is "excusable," the following four factors should

10

be considered: "1) the danger of prejudice to the debtor, 2) the
length of the delay and its potential impact on judicial
proceedings, 3) the reason for the delay including whether it was
within the reasonable control of the movant, and 4) whether the
movant acted in good faith." Pioneer, 507 U.S. at 395.

More recently, the Third Circuit has expounded upon the
Pioneer test for excusable neglect. See In re O'Brien
Environmental Energy, Inc., No. 98-6331, 1999 WL 707781 (3d Cir.
Sept. 13, 1999).

### 1. Prejudice to Debtor

Norweb argues that the Debtors will not suffer prejudice
because Norweb's claim is for pre-petition services rendered to
the Debtors and there would be a windfall to the Debtors if the
Debtors did not pay that claim. Second, because this is a
liquidating rather than a reorganizing chapter 11 case, Norweb
asserts allowance of its late claim will not result in prejudice
because the "reorganizational purpose" served by setting bar
dates is inapplicable. See, e.g., In re Sacred Heart Hospital of
Norristown, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995). Lastly,
Norweb asserts that the Debtors listed Norweb on Schedule F as a
creditor holding a claim that is "contingent, unliquidated and
undisputed" and, thus, the Debtors had anticipated Norweb's cure
claim.

11

The Debtors, on the other hand, argue that they will suffer prejudice because 1) if Norweb had asserted its claim before the cure deadline, the Debtors may have decided not to assume and assign the Norweb Agreement due to the large cure payment; 2) Norweb will receive 100% of its claim leaving a smaller amount to be disbursed to the remaining creditors; and 3) allowing Norweb's late claim will open the door for other claimants to assert untimely cure claims.

We easily reject the Debtors' last two arguments. Norweb's claim, as a cure claim, is entitled to be paid in full pursuant to section 365(b)(1)(A). Thus, the fact that Norweb will be paid in full, while the general unsecured creditors will not, is not the type of prejudice to the Debtors which is contemplated by Pioneer or O'Brien. O'Brien also dealt with a late cure claim (also entitled to be paid in full) and the Court rejected the assertion of prejudice there. 1999 WL 707781, at *9-12. Furthermore, the assertion of prejudice was even stronger in O'Brien since the debtor had already made the plan distribution and had failed to reserve adequately for the late filed cure claim. Id. at *9. The Court concluded "[w]e believe that Pioneer requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue. Otherwise, 'virtually all late filings would be condemned by this factor'." Id. (citations omitted).

12

In this case, there is even less prejudice. There has been no distribution to creditors and no Plan filed. There will be no conceivable prejudice to creditors by Norweb being paid its claim in accordance with the priorities established by the Code.

Similarly, the Debtors' dire predictions of a flood of late filed cure claims is unfounded. We are required by the Pioneer and O'Brien cases to address each request to file a late claim on its own merits. In fact, if there were a flood of such claims which we were to find meritorious, it might evidence that the Debtors had not given adequate notice. The Debtors are not entitled to be excused from giving adequate notice simply because they would be "prejudiced" by the filing of legitimate claims.

In assessing the prejudice factor in the O'Brien case, the Third Circuit considered it relevant that the debtor had listed the claim as undisputed and unsecured on its schedules. Thus, there was no question that the debtor was aware of the claim and had not contested it. Moreover, payment of the claim would not jeopardize the reorganization. To the Third Circuit it appeared that the only prejudice that would result from allowing the claim was the "loss of a windfall" to the debtor. O'Brien, 1999 WL 707781, at *11.

Similarly, we conclude that the Debtors will not suffer prejudice if Norweb is allowed to assert its late claim because, as in the O'Brien case, the Debtors were aware of Norweb's claim

13

as evidenced in its schedules.[5] Further, the Debtors assumed and assigned the Norweb Agreement and were aware that this obligated them to cure any defaults existing under that agreement.[6] We assume that the Debtors intended to make the cure payment had it been timely submitted and thus would not be prejudiced by being required to pay a claim they had anticipated.[7] Moreover, if we were to allow the Debtors to assume and assign the Norweb Agreement without curing Norweb's claim, the result would be a "windfall" to the Debtors.  See O'Brien, 1999 WL 707781, at *12.

### 2.    Length of Delay

The Debtors argue that the length of delay in Norweb's filing its cure claim is substantial and unreasonable because notice was provided to Norweb nine weeks in advance of the assumption and assignment of the Norweb Agreement and seven weeks before the hearing on the Sale Motion; yet Norweb did not file its cure claim until eleven weeks after the cure deadline.

---

[5]    The fact that the Debtors listed the claim as "contingent, unliquidated or disputed" does not change our conclusion.

[6]    See n.2 supra.

[7]    Although the Debtors assert they could have deleted the Agreement from those assigned or negotiated a price adjustment with AT&T had it known of the size of the Norweb claim, we find no evidence of this. The Sale Agreement included the Norweb Agreement as an asset to be sold and provided that the Debtors were obligated to pay all cure claims. Therefore, we see no basis for the Debtors' assertion.

Norweb, however, emphasizes that less than four months lapsed between the Petition Date and the filing of its motion. Further, Norweb argues it was not aware of the bar date because it did not receive adequate notice of the cure deadline or the supplemental cure deadline, and any delay from those dates is, therefore, not relevant. It filed its Motion 31 days after it learned of the bar date (by a fax received on April 16, 1999).

According to O'Brien, the length of delay should be considered in absolute terms. Id. at *13. However, we do not determine the effect of the length of delay solely from the standpoint of the Debtors. Id. In this case, Norweb did not receive actual notice of the cure deadline until April 16, 1999, twenty-two days after the supplemental cure deadline. One month later, Norweb filed its late cure claim. We do not, under the circumstances, consider an eight week delay from the cure deadline to be significant. See, e.g., Chemetron, 72 F.3d at 350 (remanding to determine excusable neglect where motion to file late claim occurred two years after plan was confirmed); Eagle Bus, 62 F.3d at 740 (finding excusable neglect where delay was six to eight months).


### 3.    Reason for Delay

Norweb asserts, among other things, that its failure to file a timely claim was due to its unfamiliarity with the United

15

States bankruptcy process; its failure to receive adequate notice of the deadline to file a cure claim; and its confusion as to which contracts were being assumed and assigned by the Debtors.

The Debtors counter that Norweb, as an entity doing business with a United States corporation, has an affirmative duty to familiarize itself with United States laws.

In discussing this factor, the Supreme Court in _Pioneer_ considered similar arguments: that the claimant was a sophisticated businessman who had received actual notice of the bar date and that his counsel was an experienced bankruptcy practitioner. 507 U.S. at 385-86. Nonetheless, the Court found the delay was excusable because the bar date notice was not prominently displayed (but "hidden" in the Notice of the meeting of creditors) and was unusual (typically bar date notices are sent separately). _Id._ at 398.

Similarly, in this case, the pleadings actually received by Norweb did not prominently apprise it of the cure bar date. Further, although Norweb had been advised that its contract was being assumed, even if it had been familiar with the Bankruptcy Code, it would not have been unreasonable for it to assume that its cure claim would be paid without any further action on its part. Norweb had sent invoices to the Debtors pre-petition setting forth its claims, which the Debtors never disputed. Section 365 expressly requires the cure of any defaults. Neither

16

the Code nor Rules establish a deadline or procedure for filing a cure claim. The Debtors' Motion for establishment of a cure deadline is thus an unusual procedure. Under Pioneer, Norweb's failure to file a claim (when it did not, in fact, receive a prominent notice of the cure claim deadline) was excusable neglect.

The O'Brien case also supports our conclusion. In O'Brien, the debtor's "notice" of disallowance of the creditor's cure claim was buried in an Application that dealt with many other matters. One paragraph of that Application stated that, if any creditor not otherwise identified in the Application felt it had a cure claim, it was required to file an objection. The debtor in O'Brien asserted that the failure of the creditor, who acknowledged receiving the Application, to object was not excusable.

The Third Circuit disagreed and held that "while it is certainly relevant that the delay in this case was due in part to this lack of care on the part of [the creditor], the concept of excusable neglect clearly anticipates this, i.e., neglect on the part of the party seeking to be excused." O'Brien, 1999 WL 707781, at *12. The Third Circuit found the creditor's delay in filing its cure claim to be reasonable because the delay was in part due to the confusing nature of the notice. Id. The Third Circuit noted that "the parties agree that the Federal Rules of

17

Bankruptcy Procedure do not explicitly prescribe a procedure for establishing cure claim amounts payable upon the assumption of executory contracts.  They also agree that case law concerning this issue is lacking."  Id. at *6.  While the Court found that proceeding by Motion or Application (rather than by Adversary Complaint) was acceptable, it still held that the "notice" provided within the Application was inadequate.  Id. at *6-7.

Similarly, we disagree with the Debtors' argument that Norweb should have familiarized itself with American bankruptcy laws and thereby surmised that, because the Debtors were assuming the Norweb Agreement, it was required to ascertain whether there was a cure deadline.  We find that the reason for Norweb's delay in filing its cure claim is due in part (if not entirely) to the fact that Norweb did not receive adequate notice from the Debtors of the cure deadline.

4.    Good Faith

There is no dispute that Norweb acted in good faith.  Thus, there is no need to analyze this factor.

18

V.   CONCLUSION

In light of the foregoing, we conclude that Norweb has not only provided sufficient evidence that adequate notice of the cure deadline was not provided, but has also satisfied all of the factors of the Pioneer test for excusable neglect. Accordingly, the cure deadline will be extended to allow Norweb to file its cure claim.

An appropriate Order is attached.

BY THE COURT:

Dated: December 2, 1999

Mary F. Walrath
United States Bankruptcy Judge

19

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE                                    )    Chapter 11
                                         )
WORLDWIDE DIRECT, INC.,                  )    Case Nos. 99-108 (MFW)
et al.,                                  )    through 99-127 (MFW)
                                         )
              Debtors.                   )    Jointly Administered
                                         )    Under Case No. 99-108 (MFW)

O R D E R

AND NOW, this 2ND day of DECEMBER, 1999, upon

consideration of the Motion of Norweb plc for Extension of

Deadline to File Cure Claim or Alternatively for Leave to File

Cure Claim After Bar Date, and after briefing by the parties and

a hearing, it is hereby

ORDERED that Norweb's Motion is GRANTED; and it is further

ORDERED that the deadline for Norweb to file its cure claim

is hereby extended to twenty days from the date of this Order.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc:  See attached

<u>SERVICE LIST</u>

Bruce Bennett, Esquire
James O. Johnston, Esquire
Hennigan Mercer & Bennett
601 South Figueroa Street
Suite 3300
Los Angeles, CA  90017
Attorneys for Debtors and
Debtors in Possession

Laura Davis Jones, Esquire
Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor, LLP
11th Floor, Rodney Square North
P.O. Box 391
Wilmington, DE  19899-0391
Attorneys for Debtors and
Debtors in Possession

Joseph J. Wielebinski, Esquire
Joe E. Marshall, Esquire
Mina Brees, Esquire
Munsch Hardt Kopf & Harr, P.C.
4000 Fountain Place
1445 Ross Avenue
Dallas, TX  75202-2790
Attorneys for Official Committee
of Unsecured Creditors

Joanne B. Wills, Esquire
Steven Kortanek, Esquire
Klehr Harrison Harvey Branzburg
  & Ellers LLP
919 Market Street
Suite 1000
Wilmington, DE  19801
Attorneys for Official Committee
of Unsecured Creditors

Lloyd A. Palans, Esquire
Karen W. Fries, Esquire
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102
Attorneys for Norweb plc

Arthur G. Connolly, III, Esquire
Karen C. Bifferato, Esquire
Connolly Bove Lodge & Hutz
1220 Market Street
P.O. Box 2207
Wilmington, DE  19899
Attorneys for Norweb plc

Philip Mindlin, Esquire
Amy Wolf, Esquire
David Bryan, Esquire
Wachtell Lipton Rosen & Katz
51 W. 52nd Street
New York, NY  10019
Attorneys for AT&T Corp.

David Stratton, Esquire
Pepper Hamilton, LLP
1201 Market Street
Suite 1600
P.O. Box 1709
Wilmington, DE  19899-1709
Attorneys for AT&T Corp.

John D. McLaughlin, Jr., Esquire
Daniel K. Astin, Esquire
Office of U.S. Trustee
601 Walnut Street
Curtis Center, Suite 950 West
Philadelphia, PA  19106