# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| AMERICAN HOME MORTGAGE ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, ) | |
| et al., ) | Jointly Administered |
| ) | |
| Debtors ) | Ref. Docket Nos. 2490, 2858 and 2997 |

## ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE: (I) AUTHORIZING THE SALE OF JPM NON-PERFORMING LOANS AND REO PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING SALE AGREEMENT THERETO; (III) AUTHORIZING THE DISTRIBUTION OF THE PROCEEDS; AND (IV) GRANTING RELATED RELIEF

Upon the consideration of the motion (the "Motion")[1] of American Home Mortgage Holdings, Inc., and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"),[2] pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), for entry of an order: (i) authorizing the sale or sales (the "Sale") of the JPM Non-Performing Loans (as defined in the Sale Procedures) and REO Property (as defined in the Sale Agreement) free and clear of liens, claims, encumbrances, and interests, pursuant to the Sale Agreement, (ii) authorizing and approving the Sale Agreement related

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion, Sale Procedures, or Sale Agreement, as applicable.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

thereto, (iii) authorizing the distribution of certain of the proceeds from the Sale to JPMorgan Chase Bank, N.A. ("JPMorgan"), under that certain Senior Secured Credit Agreement, dated as of January 23, 2006 (the "JPM Credit Agreement"), and (iv) granting such other related relief as the Court deems just and proper; and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and the Court having entered an order on February 1, 2008 [Docket No. 2858] (the "Sale Procedures Order"), approving the Sale Procedures and the form of Notice of Bid Deadlines and Sale, and scheduling the Bid Deadlines and a hearing (the "Sale Hearing") to approve the Sale of the JPM Non-Performing Loans and REO Property; and upon the record of the hearing on the Motion held on March 13, 2008, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor:

FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Motion are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

C. For the reasons set forth in the Motion, due and adequate notice of the Motion, and the subject matter thereof has been provided to all parties-in-interest herein, and no other or further notice is necessary. A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

D. Granting the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief requested herein.

E. The Sale Agreement between the Debtors and Lehman Capital, A Division of Lehman Brothers Holdings Inc. (the "Purchaser"), as the Successful Bidder, annexed hereto as Exhibit A (the "Sale Agreement") has been entered into by the parties in good faith, from arms-length bargaining positions and without collusion. The Purchaser purchasing the pool of JPM Non-Performing Loans and REO Property in accordance with the Sale Procedures and pursuant to the Sale Agreement is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protection thereof. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Sale Agreement, or the Sale of the JPM Non-Performing Loans and REO Property, to be avoided under 11 U.S.C. § 363(n).

F. Under the circumstances, and due and adequate notice having been provided, it is in the best interests of the Debtors, their creditors, and all other parties-in-interest herein that the JPM Non-Performing Loans and REO Property be sold to the Purchaser under section 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002(c)(1) and 6004(f)(1).

G. The consideration provided by the Purchaser for the JPM Non-Performing Loans and REO Property (i) is fair and reasonable, (ii) represents the highest bid for the JPM Non-Performing Loans and REO Property received by the Debtors, and (iii) is not less than the value of the JPM Non-Performing Loans and REO Property. The purchase of the JPM Non-Performing Loans and REO Property is unavoidable under the Bankruptcy Code (including,

without limitation Section 363(n)) and/or the laws of the United States or any state, territory or possession thereof.

H.  The Debtors are authorized to sell the JPM Non-Performing Loans and REO Property free and clear of all interests of any kind or nature whatsoever, except for Permitted Encumbrances (as defined in the Sale Agreement), with such interests transferring and attaching to the proceeds of the Sale with the same validity and priority as such interests had in the JPM Non-Performing Loans and REO Property immediately prior to the Sale, because one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) have been satisfied. Those holders of interests who did not object to the Motion or the relief requested therein, or who interposed and then withdrew their objections, are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2). Those holders of interests who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their interests, if any, attach to the proceeds of the Sales of the JPM Non-Performing Loans and REO Property.

I.  Notwithstanding anything to the contrary in this Order or the Sale Agreement, to the extent any of the JPM Non-Performing Loans and REO Property are determined to be an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), the Purchaser shall remain subject to the same claims and defenses that are related to such consumer credit transaction or such consumer credit contract to the same extent as the Purchaser would be subject to such claims and defenses of the consumer if such interest had been purchased at a sale not under section 363 of the Bankruptcy Code, as provided for in section 363(o) of the Bankruptcy Code.

J.    The Debtors are not selling personally identifiable information to the Purchaser. Additionally, (i) the privacy policy given by Debtors to homeowners does not prohibit the sale contemplated under the Sale Agreement and (ii) the sale is consistent with the privacy policy given by the Debtors to homeowners.

K.    The Committee filed an objection to the Sale as it relates to the distribution of Sale proceeds to JPMorgan with respect to the proceeds received on account of certain REO Property contained in the Sale (the "REO Proceeds").

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is granted as set forth herein.

2.    Except as otherwise expressly provided in this Order, all objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, are hereby overruled and denied on the merits.

3.    The Sale Agreement is hereby approved and shall apply with respect to the JPM Non-Performing Loans and REO Property (as defined in the Sale Agreement).

4.    Pursuant to this Order and sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors and the Purchaser, as well as their respective officers, employees, and agents, shall be, and hereby are, authorized to take any and all actions and/or execute any and all documents as may be necessary or desirable to consummate the transactions contemplated by the Sale Agreement and to sell, transfer, and convey the JPM Non-Performing Loans and REO Property. The Debtors shall transfer the JPM Non-Performing Loans and REO Property to the Purchaser upon and as of the closing date and such transfer shall constitute a legal, valid, binding and effective transfer of such JPM Non-Performing Loans and REO Property.

5. Upon consummation of the Sale, the JPM Non-Performing Loans and REO Property shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, or other interests to the fullest extent permitted pursuant to Bankruptcy Code sections 105 and 363, except with respect to the Permitted Encumbrances.

6. This Order and the Sale Agreement shall be binding upon the Debtors, the Purchaser, all creditors of the Debtors, and any trustees appointed in these proceedings or any trustees appointed in any subsequent proceedings under chapter 7 or chapter 11 of the Bankruptcy Code relating to the Debtors, and all other parties-in-interest.

7. The Purchaser shall be deemed to be good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protection thereof.

8. The failure specifically to include any particular provisions of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety.

9. Upon consummation of the Sale, all liens, claims, interests, and encumbrances of any kind or character against the JPM Non-Performing Loans and REO Property (including without limitation the liens and security interests of JPMorgan), except for the Permitted Encumbrances, shall attach to the proceeds of the Sale to the same extent and at the same level of priority as to the JPM Non-Performing Loans and REO Property prior to the Sale's consummation.

10. Notwithstanding anything to the contrary herein or in the Sale Agreement, all proceeds of the Sale received shall be paid to AHM Corp., on behalf of itself and AHM Acceptance, and distributed or retained as follows:

i.   AHM Corp. shall pay the Expense Reimbursement(s) to the extent any Expense Reimbursement is due and payable under the terms and requirements of the Sale Procedures Order and Sale Procedures.

ii.  AHM Corp. shall retain, in escrow, in a segregated, interest bearing account, the amount of the Servicing Advances paid as of the Cut-off Date in the amount of $2,787,878.00 (the "Servicing Advance Escrow") subject to the rights of JPMorgan to, among other things, challenge or object to the validity or reasonableness of the Servicing Advances. The Debtors will provide JPMorgan with reasonably detailed supporting documentation of the Servicing Advances (the "Servicing Advances Documentation") at the closing of the Sale or as soon as practicable thereafter, but in no event more than five (5) business days after the closing of the Sale. Absent JPMorgan's written objection within thirty (30) days, AHM Corp. may indefeasibly release those Servicing Advances paid as of the Cut-off Date. Nothing set forth herein shall constitute a waiver by JPMorgan of its rights to challenge or object to the amount of the Servicing Advances on any basis whatsoever, nor the Debtors rights and defenses to any such challenge or objection. To the extent that JPMorgan objects to any part of the Servicing Advances, the Debtors shall not release those funds until there is an agreement between the parties or a final order of the Court directing the Debtors to release such funds.

iii. AHM Corp. shall retain, in escrow, in a segregated, interest bearing account, the amount of the Servicing Advances accrued, but not paid as of the Cut-off Date (the "Accrued Servicing Advances") in the amount of $740,000.00 (the "Accrued Servicing Advance Escrow"), subject to the rights of JPMorgan to, among other things, challenge or object to the validity or reasonableness of the Accrued Servicing Advances. The Debtors will provide JPMorgan with reasonably detailed supporting documentation of the Accrued Servicing Advances (the "Accrued Servicing Advances Documentation") at the closing of the Sale or as soon as practicable thereafter, but not later than ninety (90) days from the Closing Date or such later period agreed to by JPMorgan. Absent JPMorgan's written objection within thirty (30) days of receipt of any Accrued Servicing Advances Documentation, AHM Corp. may indefeasibly release those funds related to such Accrued Servicing Advances. Nothing set forth herein shall constitute a waiver by JPMorgan of its rights to challenge or object to the amount of the Accrued Servicing Advances on any basis whatsoever, nor the Debtors rights and defenses to any such challenge or objection. To the extent that JPMorgan objects to any part of the Accrued Servicing Advances, the Debtors shall not release those funds until there is an agreement between the parties or a final order of the Court directing the Debtors to release such funds. To the extent that any funds remain in the Accrued Servicing Advances

Escrow after application to the Servicing Advances that remained unpaid as of the Cut-off Date, such funds shall be promptly distributed to JPMorgan.

    iv.    AHM Corp. shall retain, in escrow, in a segregated, interest bearing account, the amount of REO Proceeds. The REO Proceeds shall be held in escrow as set forth in subparagraphs 10(iv)(a) and (b) below.

        a.   Sellers shall provide a quitclaim deed for each REO Property (as defined in the Sale Agreement) in a form acceptable to the Purchaser (each a "<u>Quitclaim Deed</u>") no later than March 25, 2008 (the "<u>Quitclaim Deed Deadline</u>"). The Purchase Price (as defined in the Sale Agreement) for any REO Property for which a Quitclaim Deed is delivered to Purchaser on or prior to the Quitclaim Deed Deadline shall be held in further escrow pursuant to subparagraph (b) below. If a Quitclaim Deed is not delivered to Purchaser with respect to one or more REO Properties on or prior to the Quitclaim Deed Deadline, the Purchase Price for such one or more REO Properties shall be promptly distributed to Purchaser and such one or more REO Properties for which a Quitclaim Deed is not delivered to Purchaser by the Quitclaim Deed Deadline shall revert to the Debtors' estates. Sellers are prohibited from selling or otherwise disposing of any REO Property (as defined in the Sale Agreement) or any interest therein prior to the Quitclaim Deed Deadline.

        b.   AHM Corp. shall retain, in escrow, in a segregated, interest bearing account, the amount of REO Proceeds received with respect to each REO Property for which a Quitclaim Deed is delivered to Purchaser in accordance with subparagraph (a) above until the earlier of (1) an agreement between JPMorgan, the Debtors and the Committee; and (2) a final order of this Court directing the Debtors to release the funds. Notwithstanding the foregoing, the Debtors shall be entitled to use any portion of the REO Proceeds to satisfy any repurchase obligation under the Sale Agreement with respect to each REO Property where the applicable Seller does not have title of record thereto such as will be insurable at regular rates by a title company licensed to transact business in the related jurisdiction. Nothing contained herein shall be deemed an admission by JPMorgan that, prior to the closing of the Sale, a Mortgage Loan was converted to REO Property

    v.    The Purchase Price for each Withdrawn Loan shall be held in the Withdrawn Loan Escrow by the Debtors pending delivery of the Required Documents or a properly executed bailee letter agreement to Purchaser. The Withdrawn Loan Escrow shall be distributed as provided in Section

2.04(c) of the Sale Agreement. Upon receipt of any Withdrawn Loan Escrow funds, the Debtors shall distribute such Sale proceeds to JPMorgan pursuant to paragraph 10(vii) of this Order.

vi. AHM Corp. shall retain, in escrow, in a segregated, interest bearing account, the amount of $800,000.00 (the "Delinquent Taxes Escrow") to satisfy delinquent taxes as of the Closing Date affecting the REO Property and/or Mortgage Loans, as applicable, except to the extent such delinquency exists during a grace period for payment of such taxes (the "Delinquent Taxes"). The Debtors will provide JPMorgan with reasonably detailed supporting documentation of the Delinquent Taxes (the "Delinquent Tax Documentation"). Absent JPMorgan's written objection within five (5) business days of receipt of the Delinquent Tax Documentation, AHM Corp. may indefeasibly release those funds related to such Delinquent Taxes. Nothing set forth herein shall constitute a waiver by JPMorgan of its rights to challenge or object to the amount of the Delinquent Taxes on any basis whatsoever, nor the Debtors rights and defenses to any such challenge or objection. To the extent that JPMorgan objects to any part of the Delinquent Taxes, the Debtors shall not release those funds until there is an agreement between the parties or a final order of the Court directing the Debtors to release such funds. To the extent that any funds remain in the Delinquent Taxes Escrow after application to the Delinquent Taxes that remained unpaid as of the Closing Date, such funds shall be promptly distributed to JPMorgan. To the extent that the Delinquent Taxes Escrow is insufficient to satisfy all Delinquent Taxes, JPMorgan shall be solely responsible for payment of any remaining Delinquent Taxes or to reimburse the Debtors or their estates for any and all payments made to satisfy such Delinquent Taxes. Any remaining funds contained in the Delinquent Tax Escrow shall be distributed to JPM, in accordance with paragraph 10(vii), no later than one hundred twenty (120) days after the Sale is closed, subject to JPM's ongoing obligation to pay or reimburse the Debtors or their estates for any and all payments made to satisfy such Delinquent Taxes, consistent with the terms of this Order.

vii. AHM Corp. shall distribute all Sale proceeds, other than those held pursuant to paragraph 10(i)-(vi), to JPMorgan within two (2) business days after the Sale is closed, subject to the Debtors' rights, if any, to seek (a) disgorgement of such proceeds from JPMorgan in connection with a final order disallowing JPMorgan's secured claim or otherwise invalidating JP Morgan's liens or (b) to surcharge JPMorgan's collateral in connection with the Sale, upon agreement with JPMorgan or motion pursuant to section 506(c) or other provision of the Bankruptcy Code or under any theory at law or in equity and subject to JPMorgan's right to object or consent thereto. Notwithstanding the foregoing, any repurchase obligations under the Sale Agreement with respect to each Mortgage Loan

that does not secure a first lien on the related Mortgaged Property shall be satisfied by JPMorgan to the extent JPMorgan has received the Sale proceeds related to such applicable Mortgage Loan.

11. To the extent that there are any inconsistencies between the Sale Agreement and this Order, the terms of this Order shall govern.

12. Upon the closing of the Sale, the Debtors' rights and obligations to service the JPM Non-Performing Loans and REO Property with respect to such Sale shall terminate and the Purchaser shall have the right to designate a new servicer; provided, however, that the Debtors shall provide interim servicing for the JPM Non-Performing Loans and REO Property pursuant to the Sale Agreement following the closing of each of the Sales until the JPM Non-Performing Loans and REO Property are transferred to a replacement servicer and the Debtors shall be entitled to receive the fees and costs for such interim servicing set forth in the Sale Agreement.

13. Pursuant to Bankruptcy Rules 7062, 9014 and 6004(h), this Order shall be effective immediately upon entry.

14. This Court shall retain exclusive jurisdiction over any matters related to arising from the implementation of this Order and the Sale Agreement.

Dated: March 14, 2008
Wilmington, Delaware

Christopher S. Sontchi
United States Bankruptcy Judge