IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       :   Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                              :
a Delaware corporation, et al.,[1]                           :   Jointly Administered
                                                             :
     Debtors.                                                :   Objection Deadline: April 7, 2008 at 4:00 p.m. (ET)
                                                             :   Hearing Date: April 14, 2008 at 10:00 a.m. (ET)
------------------------------------------------------------ x

**DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING
AND AUTHORIZING THE CONSENT ORDER BETWEEN CERTAIN
DEBTORS AND THE COMMISSIONER OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF INSURANCE, SECURITIES AND BANKING**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submit this motion (the "Motion") for entry of an order, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving the Consent Order (the "Consent Order"), attached as Exhibit A to the proposed form of Order annexed hereto, by and among AHM Corp., AHM Acceptance and AHM Servicing (collectively, the "Consent Order Debtors") and the Commissioner of the District of Columbia Department of Insurance, Securities and Banking (the "Commissioner," and together with the Consent Order Debtors, the "Parties"). In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Petition Date") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the

short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7. Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

8. Pursuant to the APA, the Servicing Sale will close in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors agreed to operate the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser. The Final Closing has not yet occurred, but is required to occur no later than September 30, 2008.

---

[2] All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

**RELEVANT BACKGROUND**

9. Prior to the Petition Date, AHM Corp. and AHM Acceptance provided information to the Commissioner that they had approved nine (9) loans worth approximately $3,000,000 (the "D.C. Loans") related to residential real property located in the District of Columbia, which loans were scheduled to close between July 30, 2007 and August 17, 2007. However, prior to the scheduled closings of the D.C. Loans, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate and fund loans.

10. On August 13, 2007, the Commissioner issued a Temporary Order to Cease and Desist to the Consent Order Debtors, which required AHM Corp. and AHM Acceptance to, among other things, cease engaging in the activities of a mortgage lender and mortgage broker with respect to any residential property located in the District of Columbia, and place in an escrow account any fees already collected from consumers in the District of Columbia with respect to pending mortgage loan applications.

11. Until September 30, 2007, AHM Corp. and AHM Acceptance held twenty-six (26) mortgage lender and mortgage broker licenses in the District of Columbia. Currently, the Debtors have one (1) pending renewal application, which was submitted on behalf of AHM Servicing for the renewal of its dual authority mortgage license for the period from October 1, 2007 to September 30, 2008 (the "Application").

12. On October 12, 2007, at a status hearing before the Commissioner, AHM Corp. and AHM Acceptance confirmed that the Application was the only such application pending in the District of Columbia. While the Application remained under review, the Commissioner issued certain continuation letters, thereby authorizing AHM Servicing to

continue to provide services to existing mortgages.

## **CONSENT ORDER**[3]

13. In the Consent Order, the Commissioner alleges, but the Debtors do not concede, that AHM Corp. and AHM Acceptance violated the Mortgage Lender and Broker Act of 1996, D.C. Official Code § 26-1101 et. seq. (the "Act") by, among other things, failing to continuously maintain a surety bond for as long as any of their licenses remained in effect under the Act, and failing to perform written agreements with borrowers. The Commissioner further alleges, but the Debtors do not concede, that AHM Corp. and AHM Acceptance violated the Act by not disbursing funds in accordance with agreements connected with, and promptly upon closing of, a mortgage loan (collectively, the "Commissioner's Allegations").

14. After good faith negotiations among the Parties, the Debtors and the Commissioner have agreed to resolve the Commissioner's Allegations without the need for the Debtors to admit or deny such allegations or to otherwise continue litigation with respect to such allegations. Moreover, through the terms of the Consent Order, the Commissioner has agreed to grant the Application.

15. The principal terms of the Consent Order are set forth below:[4]

   a. AHM Corp., and AHM Acceptance, and any and all officers, directors, employees, independent contractors, or agents operating on behalf of AHM Corp. and AHM Acceptance, and their successors or assigns, shall immediately cease engaging in the activities of a mortgage lender and/or mortgage broker in the District of Columbia or otherwise related to any residential property in the District of Columbia;

   b. AHM Servicing shall pursue completion of the Application before the Continuation Letters expire, and upon compliance with all licensing

---

[3] All terms not otherwise defined in this section shall have the meanings ascribed to them in the Consent Order.

[4] The terms of the Consent Order set forth herein are a summary only. To the extent there is any inconsistency between the summary herein and the Consent Order, the terms of the Consent Order shall govern.

requirements, the renewal license of AHM Servicing shall be issued conditioned on compliance with the Consent Order;

c. Within thirty (30) days from the end of each quarter, or as soon thereafter as available, AHM Servicing shall provide to the Commissioner copies of any monthly operating reports for the applicable preceding quarter for AHM Servicing that have been filed with the Court;

d. Within thirty (30) days from the end of each quarter, AHM Servicing shall provide to the Commissioner a report on any outstanding consumer complaints involving AHM Servicing's business in the District of Columbia, together with AHM Servicing's response to such complaints; and

e. The Commissioner shall be deemed to have provided a notice of appearance in the Debtors' bankruptcy cases, in compliance with Bankruptcy Rule 2002, and shall be entitled to service of all notices and pleadings consistent with such laws;

f. AHM Servicing shall provide the Commissioner with a copy of any correspondence from any federal, state or local authority or law enforcement agency documenting the revocation or suspension of its license; and

g. Any reporting requirements placed on AHM Servicing by the Consent Order shall expire upon the Final Closing for the Servicing Business.

## RELIEF REQUESTED AND BASIS THEREFOR

16. By this Motion, the Debtors request entry of an order approving the Consent Order pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. The Debtors have weighed the costs, risks and disruption that would arise from potential litigation with the District of Columbia concerning the Commissioner's Allegations against the compromises contained within the Consent Order. Moreover, the Debtors have considered the importance of maintaining licenses necessary to operate on the Servicing Business, including the license that is the subject of the Application. Because AHM Servicing will continue to service mortgage loans in the District of Columbia until the Final Closing of the Servicing Sale, AHM

Servicing must be licensed to service loans in the District of Columbia. In the Debtors' business judgment, the Consent Order is fair and reasonable and serves the best interests of the Debtors, their estates and creditors because its approval should ensure that the Debtors will continue to be licensed to service mortgage loans in the District of Columbia.

## STANDARDS FOR SETTLEMENTS

17. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transp. Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'" (quoting In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968))).

18. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Cent. Transp. Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entm't Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'")).

19. The Third Circuit Court of Appeals has enumerated four factors that

should be considered in determining whether a compromise should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

20.    Furthermore, the decision to approve a compromise "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in In re Martin, 91 F.3d at 393. In making its decisions, the bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Bldg. Assocs., 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities." (internal citations and quotations omitted)).

21.    Here, the Consent Order is in the best interest of the Debtors, their estates, creditors and other parties in interest because it will ensure that the AHM Servicing will be licensed to service mortgage loans in the District of Columbia. Because AHM Servicing currently services mortgage loans in the District of Columbia, it must be licensed to service such mortgage loans. Furthermore, pursuant to section 6 of the APA, AHM Servicing is required to