IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., a Delaware corporation, | ) Case No. 07-11047 (CSS) |
| et al.[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Ref. Docket Nos. 3279, 3318** |
| -------------------------------------------------------- | ) |

**DEBTORS' OBJECTION TO JOINT MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS AND BANK OF AMERICA, N.A., AS
ADMINISTRATIVE AGENT, FOR AN EXPEDITED HEARING ON AND TO
SHORTEN NOTICE PERIOD OF THE JOINT MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS AND BANK OF AMERICA, N.A.,
AS ADMINISTRATIVE AGENT, FOR ENTRY OF FINAL STIPULATION AND
ORDER RESOLVING ALL REMAINING ISSUES WITH RESPECT TO THE
FINAL ORDER (I) AUTHORIZING DEBTORS' LIMITED USE OF CASH
COLLATERAL AND (II) GRANTING REPLACEMENT LIENS AND ADEQUATE
PROTECTION TO CERTAIN PRE-PETITION SECURED PARTIES**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby

object (the "Objection") to the Joint Motion of the Official Committee of Unsecured Creditors

(the "Committee") and Bank of America, N.A., as Administrative Agent (the "Administrative

Agent"), for an Expedited Hearing on and to Shorten Notice Period (the "Motion to Shorten"

[D.I. 3279]) of the Joint Motion of the Committee and the Administrative Agent (the "Settlement

Motion" [D.I. 3318]) for Entry of a Final Stipulation and Order (the "Settlement Stipulation")

Resolving all Remaining Issues with Respect to the Final Order (I) Authorizing Debtors'

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [D.I. 554] (as amended from time to time, the "Final Cash Collateral Order"), filed on March 13, 2008.  In support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

After several months of negotiations with the Administrative Agent and numerous extensions of the Committee's deadline to commence actions against the Administrative Agent, the Committee's "global settlement" with the Administrative Agent—the Committee's veritable *raison d'être* in these chapter 11 cases—has finally arrived.  But under the guise of delivering value to its constituency consummate with its bargaining power, the Committee has in fact delivered its constituency to the Administrative Agent on a silver platter, by submitting to the Administrative Agent's control in all remaining disputes in these chapter 11 cases.  Having co-opted the Committee, the Administrative Agent now seeks to fast-track the Court's consideration of the Settlement Stipulation.  But the motives for doing so are transparent and have little to do with the exigencies cited in the Motion to Shorten, which, as discussed below, are either illusory or manufactured.

The Administrative Agent, perhaps concerned that the Committee's constituency will see that the Settlement Stipulation is of dubious value to the Debtors' estates, wants the Court to bless the agreement after as little review as possible.  In addition, having openly declared war against the Debtors by filing its motion for relief from the automatic stay with respect to the Debtors' portfolio of performing mortgage loans (the "Stay Relief Motion" [D.I. 3054]), the Administrative Agent wants approval of the Settlement Stipulation as soon as possible so it can begin using the Committee as its public face in the stay relief litigation and,

2

more importantly, so it can begin using the fee-shifting provisions of the Settlement Stipulation to exert financial leverage against the Debtors.[2]  The Committee's reasoning for supporting shortened notice to its constituency of such a "global" settlement is less clear, but just as troubling.  Perhaps it was an element of the "bargain" insisted upon by the Administrative Agent.

If the Settlement Stipulation truly is the result of *bona fide*, arm's-length negotiations and represents an exchange of reasonably equivalent value between the Committee and the Administrative Agent, then the Committee and the Administrative Agent should have no problem with the Settlement Stipulation seeing the light of day, on *full* notice to *all* creditors.[3]  The Motion to Shorten should be denied.

## OBJECTION

I.    **The Settlement Stipulation is troubling for several reasons and, if approved, will neutralize the Committee and predetermine much of the remaining agenda of these bankruptcy cases; the Settlement Motion should be heard only after full notice to *all* creditors.**

The Settlement Stipulation goes well beyond settlement of the "Remaining Issues" between the Committee and the Administrative Agent, and arguably constitutes a plan *sub rosa* which, if approved, would lock in components of claim allowance and plan structure without the protections of the plan confirmation process (and, notably, in violation of the Debtors' exclusivity rights).  What follows are some troubling elements of the Settlement Stipulation and/or Motion that militate in favor of putting the Settlement Motion out on *full* notice to all creditors:

---

[2]    The Debtors filed a preliminary objection to the Stay Relief Motion (the "Stay Relief Objection" [D.I. 3175]), arguing primarily that the Administrative Agent had failed to allege a *prima facie* case for "cause" for relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code.  Discovery and further briefing concerning the Stay Relief Motion is currently underway, and the matter is scheduled to be heard at the April 16, 2008.

[3]    Local Rule 2002-1 requires a motion to be served upon, among others, "all parties whose rights are affected by the motion."  Del. Bankr. L.R. 2002-1(b).  Given the extraordinary scope of the Settlement Stipulation, the Debtors submit that all creditors are affected by the Settlement Motion and should be given notice thereof.

- **No extension of Committee deadline in the event the Settlement Stipulation is denied.** Paragraph 1 of the Settlement Stipulation provides for an extension of the Committee deadline in the event of an appeal from or a motion to reconsider the grant of the Settlement Motion, but does not provide for an extension of the deadline if the Settlement Motion is denied. This essentially coerces the Court into (i) hearing the Settlement Motion on shortened notice or (ii) approving the Settlement Motion to avoid forfeiture of the Committee's rights. As discussed below, the Committee deadline should be extended to permit denial of the Settlement Motion without prejudice to the Committee's rights. Alternatively, upon denial of the Settlement Motion the Committee's rights should be revived and transferred to the Debtors.

- **General unsecured creditors receive distributions of property of the estate whether or not priority creditors are paid in full.** The trust fund for general unsecured creditors created by paragraph (e) of the Settlement Stipulation, which is "to be distributed pursuant to a confirmed chapter 11 plan," may constitute a class-skipping gift. To the extent any of the beneficiaries of this trust fund are general unsecured creditors of an estate that will not pay priority claims in full, creation of the trust fund may violate (or at the very least, implicate) the absolute priority rule. *See In re Armstrong World Indus.*, 432 F.3d 507, 514 (3d Cir. 2005) (holding that absolute priority rule implicated by "give-ups" from senior creditors to junior creditors); *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (holding that compliance with absolute priority rule is important factor to consider in approving a pre-plan settlement under Bankruptcy Rule 9019).

- **Administrative Agent receives post-petition attorneys' fees whether or not it is over-secured.** Paragraph 3(f) and (i) of the Settlement Stipulation appear to saddle the bankruptcy estate with all of the Administrative Agent's attorneys' fees up to and including the resolution of the Stay Relief Motion, and to permit the Administrative Agent to apply all Cash Receipts to its attorney's fees *before* applying them to the principal amount of its prepetition claim. Thus, the Administrative Agent may receive payment of post-petition attorneys' fees even if it is under-secured. *Contra* 11 U.S.C. § 506(b) (providing for payment of attorneys' fees to *over*-secured creditors).

- **Administrative Agent's putative deficiency claim is allowed and insulated from § 510(c) subordination prospectively and without any mechanism for review.** Paragraph 3(g) of the Settlement Stipulation provides for the allowance of the Administrative Agent's proof of claim in an unspecified amount without any mechanism for review of such claim. Moreover, this paragraph mandates that the Administrative Agent's deficiency claim be treated *pari passu* with all other allowed unsecured claims, which appears to (i) dictate the treatment of the deficiency claim in the Debtors' as-yet unfiled plan of reorganization, and (ii) bless all past and future conduct of the Administrative Agent by immunizing it from equitable subordination of the deficiency claim pursuant to § 510(c) of the Bankruptcy Code. This is particularly troubling in light of the Committee's

4

decision to support the Stay Relief Motion and allow the Administrative Agent to
control the liquidation of its remaining collateral.

- **Committee prospectively waives its right to oppose the Administrative Agent**
  **_on any matter whatsoever._**  Paragraph 5 of the Settlement Stipulation is
  particularly egregious, requiring the Committee to remain neutral ("or, in its
  discretion, support the Administrative Agent") with respect to _anything_ affecting
  the Administrative Agent's collateral, rights, or claims from now until the
  conclusion of these chapter 11 cases (which is, conceivably, _everything_ in these
  cases).  By virtue of this provision, the Committee prospectively blesses
  everything the Administrative Agent may do in these cases.  As an afterthought,
  and _only after the Debtors expressed their vehement opposition to this provision_,
  the parties included language in paragraph 5 of the Settlement Stipulation that
  pays lip service to the Committee's fiduciary duties.  But this is too little too late.
  The Committee's willingness to leave the proverbial fox in charge of guarding the
  henhouse is all too apparent from the original Settlement Stipulation,[4] and the
  new language merely permits the Committee to support or propose a plan, while
  still requiring the Committee to back down if the Administrative Agent opposes
  it.

- **No reporting requirement to the Debtors and the post-confirmation trust.**
  Paragraph 6 requires the Administrative Agent to make quarterly reports to the
  Committee as to its application of payments to its claims.  Given that the
  Settlement Stipulation precludes the Committee from doing anything with this
  information, the reporting obligation obviously needs to run to (i) the Debtors and
  (ii) any post-confirmation trust.

- **Settlement Motion contains no meaningful discussion of the estate's claims**
  **regarding REO Properties, and overstates the risk associated with litigation**
  **of such claims.**  As will be discussed in the Debtors' forthcoming objection to the
  Settlement Motion, the estate's claims regarding the REO Properties did not
  involve "highly complex legal and factual issues," and the Administrative
  Agent—_not_ the Debtors' estates—bore most of the risk of an unfavorable result.
  The Settlement Motion trumpets the value achieved for the estates as a result of
  the Administrative Agent's release of its liens on the Designated REO Properties,
  but provides no meaningful discussion of the litigation that would have resulted in
  the absence of such settlement.  As such, the Settlement Motion contains
  insufficient information for parties in interest to evaluate the reasonableness of the
  settlement.

---

[4]     The executed Settlement Stipulation originally circulated to Debtors' counsel is attached hereto as
Exhibit A.

- **Designated REO Properties are counted as collateral for purposes of determining whether the Administrative Agent's claim is adequately secured.** Paragraph 3(h) of the Settlement Stipulation counts the proceeds of the Designated REO Properties toward the value of the Administrative Agent's collateral, which is inappropriate given the Committee's prior assertion that the Administrative Agent's liens in the vast majority of these properties were unperfected and avoidable.

- **Settlement Motion provides no discussion of the Administrative Agent's anticipated recovery, which makes it impossible for creditors to assess the value of the sharing arrangement.** The crown jewel of the Settlement Stipulation is the sharing arrangement between the Administrative Agent and the Committee, which is touted as aligning the interests of the Administrative Agent and other creditors. However, as suggested both by the arguments made in the Stay Relief Motion and by the 94% sharing threshold in the Settlement Stipulation, the Administrative Agent appears to believe it is under-secured (though, as noted in the Debtors' Stay Relief Objection,[5] the Administrative Agent has yet to take a position on this crucial point). As such, the sharing arrangement is of questionable value to the Debtors' estates, and the Settlement Motion contains no discussion whatsoever of the Administrative Agent's anticipated recovery, which would be necessary to establish otherwise.[6]

- **Partial substantive consolidation by creating a "trust" fund containing undifferentiated assets of multiple debtors' estates.** Paragraph (e) of the Settlement Stipulation provides that the proceeds of the Designated REO Properties and any Cash Receipts shared by the Administrative Agent will be "held in trust for the general unsecured creditors of the Debtors," without any allocation of such funds as between the Debtors' respective estates. Unless and until the Debtors' estates are substantively consolidated, the property and liabilities of the respective estates must be traced so as to prevent the unjust enrichment of certain Debtors' estates at the expense of the others.

In light of the foregoing issues, and given the extraordinary scope of the

Settlement Stipulation, the Debtors submit that (i) *all* creditors are affected by the Settlement

---

[5]    Paragraph 10 of the Settlement Motion describes the Stay Relief Objection as resting "principally" on the tension between the Administrative Agent's interests and the interests of unsecured creditors, which misses the point. That the sharing arrangement ostensibly aligns the interests of the Administrative Agent and unsecured creditors does not change the fact that the Stay Relief Motion fails to allege a *prima facie* case for "cause" for relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code.

[6]    Indeed, on this point in particular, the paucity of the Rule 9019 procedures compared with the disclosure and solicitation procedures embedded into the plan confirmation process is most apparent. *Compare* Fed. R. Bankr. P. 9019(a) (On motion . . . the court may approve a compromise or settlement.") *with* 11 U.S.C. § 1125(b) (requiring disclosure statement to contain "adequate information"), (a)(1) (defining "adequate information" as "information of a kind, and in sufficient detail, . . . that would enable . . . a hypothetical investor . . . to make an informed judgment about the plan").

6

Motion and should be served with it, and (ii) those creditors who are served with the Settlement

Motion should be given more than ten days' notice to respond.[7]

## II.    The Committee and the Administrative Agent fail to establish good cause for shortened notice and an expedited hearing on such a monumental and controversial settlement.

The Committee and the Administrative Agent half-heartedly offer two reasons

that the Settlement Motion "needs" to be heard on shortened notice: first, so that the Committee

will know whether they will be required to support the Stay Relief Motion; second, so that the

Committee will know whether they need to file an adversary proceeding or a contested matter

with respect to the Remaining Issues on or before their March 31, 2008 deadline. Neither of

these reasons should compel the Court to shorten notice. The alleged exigencies giving rise to

the "need" for shortened notice were manufactured by—or, at the very least, are entirely within

the control of—the Committee and the Administrative Agent.

With respect to the Committee's position on the Stay Relief Motion, Paragraph

4(i) of the Settlement Stipulation requires the Committee to file a written statement in support of

the Stay Relief Motion "as soon as practicable after the date that the Committee and the

Administrative Agent execute this Stipulation and Order." As such, the Committee need not

wait for the Settlement Stipulation to be approved or denied to "inform them" how to proceed—

that ship has sailed. That the Committee has not yet filed their written statement in support of

the Stay Relief Motion is, in all likelihood, because the Administrative Agent has not finished

"approving" it.[8] If the "Committee" files this written statement and the Settlement Stipulation is

not approved, the Debtors will have no quarrel with the Committee withdrawing the statement

---

[7]    The Settlement Motion was served by hand and by mail after hours on a Friday night (March 14, 2008), which will provide most parties in interest with less than ten days' notice of the proposed hearing.
[8]    Paragraph 4 of the Settlement Stipulation requires the Committee's written statement to be "in a form reasonably acceptable to the Administrative Agent".

and joining in the Debtors' Stay Relief Objection.  In the meantime, the Debtors are more than capable of looking out for the interests of unsecured creditors and, to the extent there are any issues of particular concern to the Committee, the Debtors are more than willing to address them in the briefing on their Stay Relief Objection.  While the lock-up and gag provisions of the Settlement Stipulation are onerous, they do not appear to prevent the Committee from working with the Debtors on a contingency plan in the event that the Settlement Motion is denied.  (*See* Settlement Stipulation ¶ 4 (Committee must "support[] the Stay Relief Motion *at the hearings thereon*" (emphasis added)), ¶ 5 (Committee may not "*oppose* the Administrative Agent or the Pre-Petition Secured Parties" (emphasis added).)  Indeed, the Committee would be abdicating its fiduciary responsibilities to its constituency if it were *not* concurrently planning for this contingency.

With respect to the Committee's filing of an adversary proceeding or a contested matter against the Administrative Agent before the March 31, 2008, deadline, any necessary pleading(s) should already be drafted and waiting in the wings.  As the Settlement Stipulation is not binding until approved by the Court, nothing prevents the Committee from filing a placeholder pleading by the March 31, 2008, deadline, subject to later withdrawal if the Settlement Motion is granted.  Upon information and belief, the Committee has recently engaged special conflict counsel to handle matters relating to Bank of America and other creditors where current Committee counsel have a conflict.  As such, the Committee now has the means to pursue any necessary litigation against the Administrative Agent.

If the Administrative Agent does not wish to suffer the indignity of an adverse pleading from the Committee, it can simply extend the Committee's deadline, which it has done several times already.  Indeed, by virtue of paragraph 1 of the Settlement Stipulation, the

8

Administrative Agent has already consented to an extension of the deadline to two business days after entry of any order reconsidering or reversing approval of the Settlement Stipulation. Given the amount of time it would take to prosecute a motion to reconsider and/or an appeal, this could potentially be *several* months from now. As such, any suggestion in the Motion to Shorten that the March 31, 2008, deadline is fixed and immutable is disingenuous at best.

Finally, the Committee's deadline was originally established (and subsequently extended) *by order of this Court.* As such, this Court has the inherent power to further extend the deadline if equity so requires. *See* 11 U.S.C.§ 105(a); *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 265 n.5 (3d Cir. 1991); *In re Argose, Inc.,* 372 B.R. 705, 708 (Bankr. D. Del. 2007) ("Under section 105(a), the Court may modify an order if it is equitable to do so."). The Debtors respectfully submit that, under the circumstances, extension of the Committee's deadline pursuant to § 105(a) of the Bankruptcy Code would be more appropriate than shortening notice of the Settlement Motion pursuant to Bankruptcy Rule 9006(c).

Because the value of the Administrative Agent's remaining collateral is central to *both* the resolution of the Stay Relief Motion (to determine whether, and to what extent, the Administrative Agent is entitled to adequate protection vis-à-vis the mortgage loans at issue) *and* any evaluation of the reasonableness of the Settlement Stipulation (to determine whether the sharing arrangement is likely to provide any value to the Debtors' estates), the Debtors submit that the Settlement Motion should be scheduled for hearing along with the Stay Relief Motion on April 16, 2008. Indeed, the discovery process underway in connection with the Stay Relief Motion is absolutely necessary for the Debtors, all parties in interest, and the Court to determine what value, if any, the estates would receive from the proposed sharing arrangement, and

9

additional, limited discovery may be necessary to fully evaluate the appropriateness of the

Settlement Stipulation.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court deny the relief

requested in the Motion to Shorten, set the Settlement Motion for hearing on April 16, 2008, and

grant the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
        March 17, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
John T. Dorsey (No. 2988)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and
Debtors in Possession

DB02:6662522.3    066585.1001

# EXHIBIT A

12

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case Nos. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | ) | |
| | ) | Related Docket Nos. 554, 2002, 2284, |
| Debtors, | ) | 2855, 3142, 3172 and [___] |
| | ) | |
| | ) | |

FINAL STIPULATION AND ORDER RESOLVING ALL
REMAINING ISSUES WITH RESPECT TO THE FINAL ORDER
(I) AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL
AND (II) GRANTING REPLACEMENT LIENS AND ADEQUATE
PROTECTION TO CERTAIN PRE-PETITION SECURED PARTIES

**WHEREAS:**

A.  On August 6, 2007 (the "Petition Date"), American Home Mortgage Holdings, Inc.
and certain of its affiliates (the "Debtors")[1] filed with this Court voluntary petitions for relief
under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors'
chapter 11 cases are being jointly administered pursuant to Rule 1005(b) of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules"). Each Debtor is continuing to operate its
business and manage its properties as a debtor in possession pursuant to sections 1107(a) and
1108 of the Bankruptcy Code.

B.  On August 14, 2007, the Office of the United States Trustee formed the Official
Committee of Unsecured Creditors of the Debtors (the "Committee").

---

[1]     The Debtors are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc.,
American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage
Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great
Oak Abstract Corp.

C. On September 4, 2007, this Court entered its *Final Order (I) Authorizing Debtors'
Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to
Certain Pre-Petition Secured Parties* [D.I. 554] (as subsequently amended by the *First Final
Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to the Final Order
(I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens
and Adequate Protection to Certain Pre-Petition Secured Parties* [D.I. 2002], the *Stipulation and
Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and
(II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured
Parties* [D.I. 2284], the *Second Stipulation and Order Regarding the Final Order (I) Authorizing
Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate
Protection to Certain Pre-Petition Secured Parties* [D.I. 2855], the *Third Stipulation and Order
Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and
(II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured
Parties* [D.I. 3142] and the *Fourth Stipulation and Order Regarding the Final Order
(I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens
and Adequate Protection to Certain Pre-Petition Secured Parties* [D.I. 3172], the "Cash
Collateral Order"). A copy of the Cash Collateral Order is attached hereto as Exhibit A.
Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such
terms in the Cash Collateral Order.

D. Solely for purposes of the settlement and compromises set forth in this Stipulation
and Order, the Administrative Agent and the Committee have established a benchmark level of
Indebtedness owing to the Pre-Petition Secured Parties as of the Petition Date of
$1,082,867,194.76, consisting of the Debtors' obligations for repayment of loans made under the

2

Credit Agreement, payment of accrued and unpaid interest thereon, payment of certain fees owed pursuant to the Credit Agreement, and reimbursement of certain fees and expenses incurred by the Pre-Petition Secured Parties prior to the Petition Date (the "Benchmark Pre-Petition Claim").

E.  Pursuant to the Cash Collateral Order, the Committee's time to assert any claim or commence any action against the Pre-Petition Secured Parties to challenge the Indebtedness or the Pre-Petition Secured Parties' security interests and liens has passed, except with respect to the Committee's right to file an adversary proceeding or contested matter solely for purposes of seeking a determination of the Remaining Issues, which are set forth in Paragraph 1 of the *Second Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* [D.I. 2855]. The Committee has agreed to waive the right to file any such proceeding or contested matter and has released all claims relating to the Remaining Issues pursuant to and subject to the entry of this Stipulation and Order.

F.  On February 22, 2008, the Administrative Agent filed the *Motion of Bank of America, N.A., As Administrative Agent, for relief from Automatic Stay, Pursuant to 11 U.S.C. §362(d), Allowing the Administrative Agent to Exercise Its Rights as a Secured Creditor*, filed [D.I. 3054] (the "Stay Relief Motion"). The Stay Relief Motion seeks modification of the automatic stay to, among other things, permit the Administrative Agent to sell certain Mortgage Loans constituting Collateral.

G.  The Committee and the Administrative Agent have negotiated a resolution of the Remaining Issues subject to approval by the Court, and the Committee has agreed to support the Stay Relief Motion, all pursuant to the terms set forth below.

3

**NOW THEREFORE**, the Committee and the Administrative Agent, for good and valuable consideration, the receipt of which is acknowledged, hereby stipulate and agree as follows:

1. <u>Waiver and Release of the Remaining Issues.</u>  Effective immediately upon the Court's approval of this Stipulation and Order, the Committee's time to file an adversary proceeding or contested matter with respect to the Remaining Issues shall expire, and the Committee, on behalf of itself and the Debtors' estates, shall irrevocably waive and release any and all rights and claims with respect to the Remaining Issues; *provided, however*, that the terms of this Stipulation and Order shall be deemed null and void and of no force or effect in the event this Stipulation and Order does not become a final, nonappealable order.  If a motion to reconsider, reargue or modify or a notice of appeal is timely filed from the Court's entry of this Stipulation and Order, (a) the Committee's deadline to file an adversary proceeding or contested matter with respect to the Remaining Issues shall be extended until the earlier of this Stipulation and Order (i) becoming a final, nonappealable order and (ii) if this Stipulation and Order does not become a final, nonappealable order, until 5:00 p.m. (prevailing eastern time) on the second business day after entry of an order substantively modifying or reversing the Court's approval of this Stipulation and Order, and (b) pending the final determination of such motion to reconsider, reargue or modify or such appeal, all net proceeds of the Designated REO Properties (as defined in  paragraph 2 below) and all of the Estate Share (as defined in paragraph 3(e) below) shall be held in escrow by an escrow agent reasonably acceptable to the Administrative Agent and the Committee. Nothing contained herein shall be deemed to give any party standing to (i) oppose the Court's approval of this Stipulation and Order, (ii) file a motion to reconsider, reargue or

modify this Stipulation and Order in any way, or (iii) file a notice of appeal of the Court's entry

of this Stipulation and Order.

    2.  Certain REO Property. Subject to the Court's approval of this Stipulation and Order:

(i) the Pre-Petition Secured Parties' claims and liens on the REO Properties that were subject to

Mortgage Loans, which are set forth on Exhibit B hereto (collectively the "Designated REO

Properties") shall be irrevocably waived and released; (ii) the Pre-Petition Secured Parties shall

have no responsibility for the Designated REO Properties; and (iii) all expenses incurred or

advances made in connection with the Designated REO Properties, including the costs of sale or

other disposition thereof, shall be paid solely by the Debtors' estates and not from proceeds of

Collateral.

    3.  Sharing of Applicable Cash Receipts.

        (a) After cash receipts from (i) the Collateral, (ii) a trustee or liquidating trustee appointed by the Court or (iii) any Debtor (which is party to any of the Loan Documents) on account of the Collateral or otherwise (such Debtors, collectively, the "Applicable Debtors," and such cash receipts, the "Cash Receipts") have, from and after the Petition Date, been indefeasibly paid to the Pre-Petition Secured Parties and irrevocably applied to the permanent reduction of the Indebtedness in an amount equal to 94% of the Benchmark Pre-Petition Claim, i.e., $1,017,895,163.07, 90% of the next $12,031,857.72 of Cash Receipts shall be paid to the Administrative Agent, and the remaining 10% shall be paid to the Debtors' estates.

        (b) After Cash Receipts have, from and after the Petition Date, been indefeasibly paid to the Pre-Petition Secured Parties and irrevocably applied to the permanent reduction of the Indebtedness in an amount equal to 95% of the Benchmark Pre-Petition Claim, i.e., $1,028,723,835.02, 75% of the next $36,095,573.16 of Cash Receipts shall be paid to the Administrative Agent, and the remaining 25% shall be paid to the Debtors' estates.

        (c) After Cash Receipts have, from and after the Petition Date, been indefeasibly paid to the Pre-Petition Secured Parties and irrevocably applied to the permanent reduction of the Indebtedness in an amount equal to 97.5% of the Benchmark Pre-Petition Claim, i.e., $1,055,795,514.89, 50% of the next $54,143,359.74 of Cash Receipts shall be paid to the Administrative Agent, and the remaining 50% shall be paid to the Debtors' estates.

(d) After Cash Receipts have, from and after the Petition Date, been indefeasibly paid to the Pre-Petition Secured Parties and irrevocably applied to the permanent reduction of the Indebtedness in an amount equal to 100% of the Benchmark Pre-Petition Claim, i.e., $1,082,867,194.76, 50% of all additional proceeds of Collateral shall be paid to the Administrative Agent (until 100% of the Total Lender Obligations, as defined in subparagraph 3(i) below, have been indefeasibly paid in cash in full), and 50% shall be paid to the Debtors' estates.[2]

(e) All amounts paid to the Debtors pursuant to subparagraphs 3(a)-(d) are defined collectively as the "Estate Share." The Estate Share and any proceeds of the Designated REO Properties (after payment of any applicable expenses incurred or advances made in connection with such Designated REO Properties) shall be held in trust for the benefit of general unsecured creditors of the Debtors to be distributed pursuant to a confirmed chapter 11 plan or further order of the Court. All amounts paid to the Pre-Petition Secured Parties pursuant to subparagraphs 3(a)-(d) are defined collectively as the "Pre-Petition Secured Parties' Share."

(f) From and after the later of (x) the date that this Stipulation and Order is so ordered by the Court and (y) the date that the Stay Relief Motion has been decided by the Court (the "Expense Shift Date"), all reasonable fees and expenses incurred by the Administrative Agent shall be paid from the Pre-Petition Secured Parties' Share.

(g) If, after application of all Cash Receipts, there remains outstanding any unsatisfied obligations arising prior to the Petition Date asserted in the proof of claim filed in these cases by the Administrative Agent on behalf of the Pre-Petition Secured Parties on January 10, 2008 (Claim No. 8165) (the "Total Pre-Petition Obligations"), the Pre-Petition Secured Parties shall have an allowed unsecured claim against the Applicable Debtors in the amount of such deficiency (the "Deficiency Claim"). The Deficiency Claim shall be *pari passu* with all other allowed unsecured claims against the Applicable Debtors' estates, *provided, however*, that the Pre-Petition Secured Parties shall not be entitled to receive on account of the Deficiency Claim any distributions from the Estate Share or the Designated REO Properties.

(h) For the avoidance of doubt, the aggregate amount of the Estate Share and all net proceeds of the Designated REO Properties shall be included in the calculation of the value of the Collateral for purposes of establishing that the claims of the Pre-Petition Secured Parties are adequately secured, notwithstanding that such proceeds of Collateral are paid to the Debtors' estates and not the Pre-Petition Secured Parties.

(i) Subject to the payment of reasonable fees and expenses incurred by the Administrative Agent prior to Expense Shift Date, the Administrative Agent shall

---

[2]     For illustrative purposes only, annexed hereto as Exhibit C is a chart showing the allocation of Cash Receipts to be shared between the Pre-Petition Secured Parties and the Debtors' estates pursuant to subparagraphs 3(a)-(d) hereof.

6

apply all of the Cash Receipts as follows: first, to reduce the amount of the Benchmark Prepetition Claim, second, to reduce the remaining unsatisfied Total Pre-Petition Obligations, if any, and third, to satisfy post-petition interest, fees, expenses and any other obligations under the Loan Documents arising from and after the Petition Date. All obligations referred to in this subparagraph 3(i) are defined collectively as the "Total Lender Obligations."

4. Committee to Support Administrative Agent's Stay Relief Motion. In light of the Committee's desire to maximize the value of the Debtors' estates, and in consideration for the Pre-Petition Secured Parties' agreement to make available the Estate Share and the Designated REO Properties for the benefit of unsecured creditors as provided herein, the Committee shall support the Stay Relief Motion by: (i) filing with the Court a written statement in support of granting the relief requested in the Stay Relief Motion, in a form reasonably acceptable to the Administrative Agent, as soon as practicable after the date that the Committee and the Administrative Agent execute this Stipulation and Order; (ii) supporting the Stay Relief Motion at the hearings thereon; and (iii) taking all other actions reasonably requested by the Administrative Agent in furtherance of the relief requested in the Stay Relief Motion.

5. Additional Committee Support. With respect to all motions, contested matters or adversary proceedings in these chapter 11 cases concerning or affecting the Collateral or the claims or rights of the Pre-Petition Secured Parties in and to the Collateral or validly arising under the Loan Documents, the Committee shall either remain neutral or, in its discretion, support the Administrative Agent and the Pre-Petition Secured Parties, but under no circumstances shall the Committee oppose the Administrative Agent or the Pre-Petition Secured Parties. Nothing contained herein shall restrict the Committee's right to enforce the terms of this Stipulation and Order.

6. Reports. Prior to the dissolution of the Committee, the Administrative Agent shall deliver to counsel for the Committee quarterly reports on the application of any Cash Receipts to

7

the Total Lender Obligations.  The Administrative Agent agrees that if the relief requested in the

Stay Relief Motion is granted by the Court, the Administrative Agent will sell or otherwise

dispose of the Mortgage Loans in the manner provided in the Credit Agreement, the Security

Agreement and applicable law.

      7.  <u>Modification of the Cash Collateral Order</u>.  The terms of the Cash Collateral Order

are hereby modified by this Stipulation and Order and except as modified hereby shall remain in

full force and effect.

      8.  <u>Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction with respect to

all disputes arising out of this Stipulation and Order.

      9.  <u>Headings</u>.  The paragraph headings used in this Stipulation and Order are for ease of

reference only and shall not have any substantive or interpretive meaning.

      10. <u>Execution</u>.  This Stipulation and Order may be executed in one or more counterparts,

each of which shall be deemed an original, and all of which, when taken together, shall constitute

one and the same instrument.  Facsimile versions of signatures hereto shall be deemed original

signatures, which may be relied upon by any party and shall be binding on the respective signor.

      11. <u>Effectiveness</u>.  This Stipulation and Order shall be effective upon entry by the Court.

In the event that the Court does not enter this Stipulation and Order, the terms hereof shall be of

no force or effect.

Dated: March ___, 2008
         Wilmington, Delaware


_____
BLANK ROME LLP
Bonnie Glantz Fatell *(BGF)*
1201 Market Street Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6423

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Mark T. Power
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Official*
*Committee of Unsecured Creditors*


_____
POTTER ANDERSON & CORROON LLP
Laurie Selber Silverstein (No. 2396)
P.O. Box 951
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19899
Telephone: (302) 984-6000

-and-

KAYE SCHOLER LLP
Margot B. Schonholtz
Mark F. Liscio
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Counsel for Bank of America, N.A. as*
*Administrative Agent under that*
*certain Second Amended and Restated*
*Credit Agreement, dated as of August 10, 2006*


**SO ORDERED**
this _____ day of _____, 2008


_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

9