# EXHIBIT B

AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-SD1

ISSUING ENTITY

WELLS FARGO BANK, N.A.

SECURITIES ADMINISTRATOR

AND

DEUTSCHE BANK NATIONAL TRUST COMPANY

INDENTURE TRUSTEE

INDENTURE

DATED AS OF MARCH 13, 2007

MORTGAGE-BACKED NOTES

## TABLE OF CONTENTS

Page

## ARTICLE I

## DEFINITIONS

Section 1.01  Definitions...................................................................................................3
Section 1.02  Incorporation by Reference of Trust Indenture Act...................................3
Section 1.03  Rules of Construction ...............................................................................3

## ARTICLE II

## ORIGINAL ISSUANCE OF NOTES

Section 2.01  Form.........................................................................................................5
Section 2.02  Execution, Authentication and Delivery...................................................5
Section 2.03  Acceptance of Mortgage Loans by Indenture Trustee...............................5
Section 2.04  Acceptance of Class IV-A Cap Contract by Owner Trustee .....................7

## ARTICLE III

## COVENANTS

Section 3.01  Collection of Payments with respect to the Mortgage Loans and HELOCs..............8
Section 3.02  Maintenance of Office or Agency..............................................................8
Section 3.03  Money for Payments To Be Held in Trust; Paying Agent........................8
Section 3.04  Existence ...................................................................................................9
Section 3.05  Payment of Available Funds....................................................................10
Section 3.06  The Group IV Reserve Fund....................................................................12
Section 3.07  The Supplemental Reserve Fund. ............................................................12
Section 3.08  [Reserved]...............................................................................................13
Section 3.09  [Reserved]...............................................................................................13
Section 3.10  Other Matters With Respect to the Notes. ..............................................13
Section 3.11  Protection of Trust Estate........................................................................14
Section 3.12  Opinions as to Trust Estate. ....................................................................15
Section 3.13  Performance of Obligations. ....................................................................15
Section 3.14  Negative Covenants .................................................................................16
Section 3.15  Annual Statement as to Compliance .......................................................16
Section 3.16  Representations and Warranties Concerning the Mortgage Loans and
              HELOCs....................................................................................................17
Section 3.17  Amendments to Servicing Agreements ....................................................17
Section 3.18  Servicers as Agents and Bailees of the Indenture Trustee.......................17
Section 3.19  Investment Company Act .........................................................................17
Section 3.20  Issuing Entity May Consolidate, etc. .......................................................17
Section 3.21  Successor or Transferee. ..........................................................................20

i

Section 3.22 No Other Business ..................................................................................................20
Section 3.23 No Borrowing .........................................................................................................20
Section 3.24 Guarantees, Loans, Monthly Advances and Other Liabilities ................................20
Section 3.25 Capital Expenditures...............................................................................................20
Section 3.26 Determination of Note Interest Rate .......................................................................20
Section 3.27 Restricted Payments................................................................................................21
Section 3.28 Notice of Events of Default .....................................................................................21
Section 3.29 Further Instruments and Acts...................................................................................21
Section 3.30 Statements to Noteholders ......................................................................................21
Section 3.31 [Reserved]................................................................................................................21
Section 3.32 [Reserved]................................................................................................................21
Section 3.33 [Reserved]................................................................................................................21
Section 3.34 Replacement Class IV-A Cap Contract ..................................................................21
Section 3.35 [Reserved]................................................................................................................22
Section 3.36 [Reserved]................................................................................................................22
Section 3.37 Certain Representations Regarding the Trust Estate. .............................................22
Section 3.38 Allocation of Realized Losses. ...............................................................................23

## ARTICLE IV

## THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE

Section 4.01 The Notes.................................................................................................................25
Section 4.02 Registration of and Limitations on Transfer and Exchange of Notes;
              Appointment of Note Registrar and Certificate Registrar. ....................................25
Section 4.03 Mutilated, Destroyed, Lost or Stolen Notes............................................................28
Section 4.04 Persons Deemed Owners .........................................................................................28
Section 4.05 Cancellation .............................................................................................................29
Section 4.06 Book-Entry Notes ....................................................................................................29
Section 4.07 Notices to Depository ..............................................................................................30
Section 4.08 Definitive Notes .......................................................................................................30
Section 4.09 Tax Treatment..........................................................................................................30
Section 4.10 Satisfaction and Discharge of Indenture .................................................................31
Section 4.11 Application of Trust Money......................................................................................32
Section 4.12 [Reserved]................................................................................................................32
Section 4.13 Repayment of Monies Held by Paying Agent .........................................................32
Section 4.14 Temporary Notes .....................................................................................................32
Section 4.15 Representations Regarding ERISA..........................................................................32

## ARTICLE V

## DEFAULT AND REMEDIES

Section 5.01 Events of Default .....................................................................................................35
Section 5.02 Acceleration of Maturity; Rescission and Annulment............................................35
Section 5.03 Collection of Indebtedness and Suits for Enforcement by Indenture Trustee. ........36
Section 5.04 Remedies; Priorities................................................................................................38

Section 5.05  Optional Preservation of the Trust Estate ...............................................39
Section 5.06  Limitation of Suits .................................................................................40
Section 5.07  Unconditional Rights of Noteholders To Receive Principal and Interest...............40
Section 5.08  Restoration of Rights and Remedies.........................................................41
Section 5.09  Rights and Remedies Cumulative ...............................................................41
Section 5.10  Delay or Omission Not a Waiver................................................................41
Section 5.11  Control By Noteholders ...........................................................................41
Section 5.12  Waiver of Past Defaults ...........................................................................41
Section 5.13  Undertaking for Costs .............................................................................42
Section 5.14  Waiver of Stay or Extension Laws .............................................................42
Section 5.15  Sale of Trust Estate.................................................................................42
Section 5.16  Action on Notes .....................................................................................44
Section 5.17  Performance and Enforcement of Certain Obligations.............................................44

## ARTICLE VI

### THE INDENTURE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 6.01  Duties of Indenture Trustee and Securities Administrator. .....................................45
Section 6.02  Rights of Indenture Trustee and the Securities Administrator................................47
Section 6.03  Individual Rights....................................................................................48
Section 6.04  Indenture Trustee's and Securities Administrator's Disclaimer............................48
Section 6.05  Notice of Event of Default.......................................................................48
Section 6.06  Reports by Securities Administrator to Holders and Tax Administration..............49
Section 6.07  Compensation and Indemnity ...................................................................49
Section 6.08  Replacement of Indenture Trustee and the Securities Administrator ....................49
Section 6.09  Successor Indenture Trustee and Successor Securities Administrator by
              Merger..................................................................................................51
Section 6.10  Appointment of Co-Indenture Trustee or Separate Indenture Trustee. ..................51
Section 6.11  Eligibility; Disqualification .....................................................................52
Section 6.12  Preferential Collection of Claims Against Issuing Entity.......................................53
Section 6.13  Representations and Warranties ...............................................................53
Section 6.14  Directions to Indenture Trustee ...............................................................53
Section 6.15  The Agents...........................................................................................54
Section 6.16  Administrative Duties. ............................................................................54
Section 6.17  Records ...............................................................................................56
Section 6.18  Additional Information to be Furnished .....................................................56
Section 6.19  Execution of Class IV-A Cap Contract and Other Documents...............................56
Section 6.20  Indenture Trustee's Application For Instructions From the Issuing Entity. ..........57
Section 6.21  Limitation of Liability.............................................................................57
Section 6.22  Assignment of Rights, Not Assumption of Duties..............................................58
Section 6.23  Collateral Account. ................................................................................58

## ARTICLE VII

### NOTEHOLDERS' LISTS AND REPORTS

Section 7.01  Issuing Entity To Furnish Indenture Trustee Names and Addresses of Noteholders ................................................................................................................... 60
Section 7.02  Preservation of Information; Communications to Noteholders. ............................. 60
Section 7.03  [Reserved]. ............................................................................................................ 60
Section 7.04  Reports by Indenture Trustee ................................................................................ 60
Section 7.05  Statements to Noteholders .................................................................................... 60

## ARTICLE VIII

### ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01  Collection of Money ............................................................................................ 64
Section 8.02  Trust Accounts. .................................................................................................... 64
Section 8.03  Officer's Certificate ............................................................................................. 64
Section 8.04  Termination Upon Distribution to Noteholders .................................................... 65
Section 8.05  Release of Trust Estate ........................................................................................ 65
Section 8.06  Surrender of Notes Upon Final Payment ............................................................. 65
Section 8.07  Optional Redemption of the Notes. ...................................................................... 65
Section 8.08  Collection of Mortgage Loan Payments. .............................................................. 66
Section 8.09  Withdrawals from the Payment Account. ............................................................. 67

## ARTICLE IX

### SUPPLEMENTAL INDENTURES

Section 9.01  Supplemental Indentures Without Consent of Noteholders .................................... 70
Section 9.02  Supplemental Indentures With Consent of Noteholders ......................................... 72
Section 9.03  Execution of Supplemental Indentures ................................................................. 73
Section 9.04  Effect of Supplemental Indenture ........................................................................ 73
Section 9.05  Conformity with Trust Indenture Act ................................................................... 74
Section 9.06  Reference in Notes to Supplemental Indentures .................................................... 74

## ARTICLE X

### MISCELLANEOUS

Section 10.01  Compliance Certificates and Opinions, etc. ......................................................... 74
Section 10.02  Form of Documents Delivered to Indenture Trustee ............................................. 76
Section 10.03  Acts of Noteholders. ........................................................................................... 76
Section 10.04  Notices etc., to Indenture Trustee, Issuing Entity, Securities Administrator and Rating Agencies ............................................................................................ 77
Section 10.05  Notices to Noteholders; Waiver .......................................................................... 78
Section 10.06  Conflict with Trust Indenture Act ....................................................................... 78
Section 10.07  Effect of Headings .............................................................................................. 78
Section 10.08  Successors and Assigns ....................................................................................... 78
Section 10.09  Separability ........................................................................................................ 79
Section 10.10  Benefits of Indenture .......................................................................................... 79

Section 10.11  Legal Holidays ......................................................................................................79

Section 10.12  GOVERNING LAW...............................................................................................79

Section 10.13  Counterparts...........................................................................................................79

Section 10.14  Recording of Indenture .........................................................................................79

Section 10.15  Issuing Entity Obligation ......................................................................................80

Section 10.16  No Petition .............................................................................................................80

Section 10.17  Inspection...............................................................................................................80

## EXHIBITS

Exhibit A-1    —    Form of Class [_]-A-[_] Notes
Exhibit A-2    —    Form of Class [_]-M-[_] Notes
Exhibit B    —    Mortgage Loan Schedule
Exhibit C    —    [Reserved]
Exhibit D    —    Form of Class IV-A Cap Contract
Exhibit E    —    [Reserved]
Exhibit F    —    [Reserved]
Exhibit G    —    [Reserved]
Exhibit H    —    Form of Initial Certification
Exhibit I    —    Form of Final Certification
Exhibit J    —    Form of Request for Release
Exhibit K    —    Form of Rule 144A Investment Representation
Exhibit L    —    Form of Certificate of Non-Foreign Status
Exhibit M    —    Form of Investment Letter
Exhibit N    —    Form of Transferor Certificate
Exhibit O    —    Form of ERISA Letter
Exhibit P    —    Form of Transferee Certificate
Exhibit Q    —    Form of Lender Transferor Certificate


Appendix A    —    Definitions

This Indenture, dated as of March 13, 2007, is entered into among American Home Mortgage Investment Trust 2007-SD1, a Delaware statutory trust, as Issuing Entity (the "Issuing Entity"), Deutsche Bank National Trust Company, a national banking association, as Indenture Trustee (the "Indenture Trustee"), and Wells Fargo Bank, N.A., a national banking association, as Securities Administrator (the "Securities Administrator").

## WITNESSETH THAT:

Each party hereto agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Holders of the Issuing Entity's Mortgage-Backed Notes, Series 2007-SD1 (the "Notes").

## GRANTING CLAUSE

The Issuing Entity hereby Grants to the Indenture Trustee at the Closing Date, as trustee for the benefit of the Holders of the Notes, all of the Issuing Entity's right, title and interest in and to, whether now existing or hereafter created, (a) the Mortgage Loans, Eligible Substitute Mortgage Loans and the proceeds thereof and all rights under the Related Documents; (b) the HELOCs, related Eligible Substitute Mortgage Loans and the proceeds thereof and all rights under the Related Documents; (c) additional Draws under the HELOCs conveyed to the Issuing Entity; (d) the rights of the Issuing Entity under the Class IV-A Cap Contract and all payments received under the Class IV-A Cap Contract; (e) all funds on deposit from time to time in the Supplemental Reserve Fund and in all proceeds thereof; (f) all funds on deposit from time to time in the Group IV Reserve Account and in all proceeds thereof; (g) all funds on deposit from time to time in the Collection Account allocable to the Mortgage Loans and HELOCs excluding any investment income from such funds; (h) all funds on deposit from time to time in the Payment Account and in all proceeds thereof; (i) all rights under (i) the Mortgage Loan Purchase Agreement as assigned to the Issuing Entity, with respect to the Mortgage Loans and the HELOCs, as assigned to the Issuing Entity (ii) the Servicing Agreements and (iii) any title, hazard and primary insurance policies with respect to the Mortgaged Properties; and (j) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in respect of, any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing (collectively, the "Trust Estate" or the "Collateral").

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any other amounts owing in respect of, the Notes, equally and ratably without prejudice (except as otherwise provided herein), priority or distinction, and to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The Indenture Trustee, as trustee on behalf of the Holders of the Notes, acknowledges such Grant, accepts the trust under this Indenture in accordance with the provisions hereof and agrees to perform its duties as Indenture Trustee as required herein.

# ARTICLE I

# DEFINITIONS

Section 1.01    <u>Definitions.</u>    For all purposes of this Indenture, except as otherwise expressly provided herein or unless the context otherwise requires, capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Definitions attached hereto as Appendix A which is incorporated by reference herein.  All other capitalized terms used herein shall have the meanings specified herein.

Section 1.02    <u>Incorporation by Reference of Trust Indenture Act</u>.    Whenever this Indenture refers to a provision of the Trust Indenture Act (the "TIA"), the provision is incorporated by reference in and made a part of this Indenture.  The following TIA terms used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the indenture securities means the Issuing Entity and any other obligor on the indenture securities.

All other TIA terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by Commission rules have the meanings assigned to them by such definitions.

Section 1.03    <u>Rules of Construction</u>.  Unless the context otherwise requires:

(i)    a term has the meaning assigned to it;

(ii)    an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted accounting principles as in effect from time to time;

(iii)    "or" is not exclusive;

(iv)    "including" means including without limitation;

(v)    words in the singular include the plural and words in the plural include the singular; and

(vi)    any agreement, instrument, statute, regulation or rule defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument, statute, regulation or rule as from time to time amended, modified or supplemented

and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

ARTICLE II

ORIGINAL ISSUANCE OF NOTES

Section 2.01    Form.  The Class IV-A, Class IV-M-1, Class IV-M-2, Class IV-M-3, Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes, together with the Securities Administrator's certificate of authentication, shall be in substantially the form set forth in Exhibits A-1 and A-2 to this Indenture, respectively, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods (with or without steel engraved borders).

The terms of the Notes set forth in Exhibits A-1 and A-2 to this Indenture are part of the terms of this Indenture.

Section 2.02    Execution, Authentication and Delivery.  The Notes shall be executed on behalf of the Issuing Entity by any of its Authorized Officers.  The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuing Entity shall bind the Issuing Entity, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

The Securities Administrator shall upon Issuing Entity Request authenticate and deliver each Class of Notes for original issue in an aggregate initial principal amount equal to the Initial Note Principal Balance for such Class of Notes.

Each of the Notes shall be dated the date of its authentication.  The Notes shall be issuable as registered Notes and shall be issuable in the minimum initial Note Principal Balances of $100,000 and in the integral multiples of $1 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Securities Administrator by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

Section 2.03    Acceptance of Mortgage Loans by Indenture Trustee.

(a)    The Indenture Trustee shall acknowledge receipt of, subject to the exceptions the Indenture Trustee notes pursuant to the procedures described below, the documents (or certified copies thereof) referred to in Section 2.1(b) of the Mortgage Loan Purchase Agreement, and to declare that it holds and will continue to hold those documents and any amendments, replacements or supplements thereto and all other assets of the Trust Estate, in trust for the use and benefit of all present and future Holders of the Notes.  No later than the Closing Date, with

5

respect to the Mortgage Loans and HELOCs (or, with respect to any Eligible Substitute Mortgage Loan, within 5 days after the receipt by the Indenture Trustee thereof and, with respect to any documents received after the Closing Date, promptly thereafter), the Indenture Trustee shall, for the benefit of the Noteholders, review each Mortgage File delivered to it and to execute and deliver, or cause to be executed and delivered, to the Sponsor, the RMBS Servicer, the HELOC Back-Up Servicer and the HELOC Servicer an Initial Certification in the form annexed hereto as Exhibit H.  In conducting such review, the Indenture Trustee shall ascertain whether all required documents described in Section 2.1(b)(i) to (v) (except clause (v)(ii)) of the Mortgage Loan Purchase Agreement, with respect to the Mortgage Loans and HELOCs, have been executed and received and whether those documents relate, to the Mortgage Loans and HELOCs, as applicable, it has received, as identified in Exhibit B to this Indenture, as supplemented (provided, however, that with respect to those documents described in subclause (b)(vi) of such section, the Indenture Trustee's obligations shall extend only to documents actually delivered pursuant to such subclause).  In performing any such review, the Indenture Trustee may conclusively rely on the purported due execution and genuineness of any such document and on the purported genuineness of any signature thereon.  If the Indenture Trustee finds any document constituting part of the Mortgage File not to have been executed or received, or to be unrelated to the Mortgage Loans or HELOCs identified in Exhibit B to this Indenture or to not conform with the review criteria set forth in Exhibit H (a "defect"), the Indenture Trustee shall promptly notify the Sponsor of such finding and the Sponsor's obligation to cure such defect or repurchase or substitute for the related Mortgage Loan.  To the extent the Indenture Trustee has not received a Mortgage File with respect to any of the Mortgage Loans or HELOCs by the Closing Date, the Indenture Trustee shall not require the deposit of cash into the Payment Account or any other account to cover the amount of that Mortgage Loan or HELOC and shall solely treat such Mortgage Loan or HELOC as if it were in breach of a representation or warranty; provided that the aggregate Stated Principal Balance of such Mortgage Loans and HELOCs does not exceed 1% of the Group IV Cut-off Date Balance.

(b)      No later than 180 days after the Closing Date, the Indenture Trustee will review, for the benefit of the Noteholders, the Mortgage Files and will execute and deliver or cause to be executed and delivered to the Sponsor, the RMBS Servicer, the HELOC Back-Up Servicer and the HELOC Servicer, a Final Certification in the form annexed hereto as Exhibit I.  In conducting such review, Indenture Trustee will ascertain whether an original of each document described in subclauses (b)(ii)-(iv) of Section 2.1 of the Mortgage Loan Purchase Agreement, with respect to the Mortgage Loans and HELOCs, required to be recorded has been returned from the applicable recording office with evidence of recording thereon or a certified copy has been obtained from such recording office.  If the Indenture Trustee finds any document constituting part of the Mortgage File has not been executed or received, or to be unrelated, to the Mortgage Loans and HELOCs identified in Exhibit B to this Indenture or to appear defective on its face, the Indenture Trustee shall promptly notify the Sponsor.

(c)      Upon deposit by the Sponsor of the Repurchase Price in the Payment Account as certified to the Indenture Trustee, and receipt of request for release, the Indenture Trustee shall release to the Sponsor or the RMBS Servicer, the HELOC Back-Up Servicer or the HELOC Servicer, as applicable, the related Mortgage File and the Indenture Trustee shall execute and deliver all instruments of transfer or assignment, without recourse, representation or warranty, furnished to it by the Sponsor or the RMBS Servicer, the HELOC Back-Up Servicer and the

HELOC Servicer, as applicable, as are necessary to vest in the Sponsor or the RMBS Servicer, the HELOC Back-Up Servicer or the HELOC Servicer, as applicable, title to and rights under the related Mortgage Loan or HELOC.  Such purchase shall be deemed to have occurred on the date on which the deposit of the Repurchase Price in the Payment Account was received by the Securities Administrator.  The Securities Administrator shall amend the applicable Mortgage Loan Schedule to reflect such repurchase and shall promptly provide a copy of the amended Mortgage Loan Schedule to the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer, the HELOC Back-Up Servicer and the Indenture Trustee.

Section 2.04    <u>Acceptance of Class IV-A Cap Contract by Owner Trustee</u>.  The Owner Trustee acknowledges receipt of the Class IV-A Cap Contract and declares that it holds and will continue to hold this document and any amendments, replacements or supplements thereto and all other assets of the Trust Estate as Owner Trustee in trust for the use and benefit of all present and future Holders of the Notes.  Subject to the terms of this Indenture, the Owner Trustee shall enforce the Class IV-A Cap Contract in accordance with its terms.

ARTICLE III

COVENANTS

Section 3.01    Collection of Payments with respect to the Mortgage Loans and HELOCs. The Securities Administrator shall establish and maintain an Eligible Account (the "Payment Account") in which the Securities Administrator shall deposit, on the same day as it is received from the RMBS Master Servicer, RMBS Servicer, HELOC Back-up Servicer or the HELOC Servicer, each remittance received by the Securities Administrator with respect to the Mortgage Loans and HELOCs.  The Securities Administrator shall make all payments of principal of and interest on the Notes, subject to Section 3.03, and as provided in Section 3.05 herein, from monies on deposit in the Payment Account.

Section 3.02    Maintenance of Office or Agency.  The Issuing Entity will maintain an office or agency where, subject to satisfaction of conditions set forth herein, Notes may be surrendered for registration of transfer or exchange, and where notices and demands to or upon the Issuing Entity in respect of the Notes and this Indenture may be served.  The Issuing Entity hereby initially appoints the Securities Administrator to serve as its agent for the foregoing purposes.  Such surrenders may be made at the office of the Securities Administrator located at Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479, Attention: American Home Mortgage Investment Trust 2007-SD1.  Notices and demands may be made or delivered at the Corporate Trust Office, and the Issuing Entity hereby appoints the Securities Administrator as its agent to receive all such surrenders, notices and demands.

Section 3.03    Money for Payments To Be Held in Trust; Paying Agent.  (a) As provided in Section 3.01, all payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn from the Payment Account pursuant to Section 3.01 shall be made on behalf of the Issuing Entity by the Securities Administrator or by the Paying Agent, and no amounts so withdrawn from the Payment Account for payments of Notes shall be paid over to the Issuing Entity except as provided in this Section 3.03.  The Issuing Entity hereby appoints the Securities Administrator as its Paying Agent.

The Issuing Entity will cause each Paying Agent other than the Indenture Trustee and the Securities Administrator, to execute and deliver to the Indenture Trustee and the Securities Administrator an instrument in which such Paying Agent shall agree with the Indenture Trustee and the Securities Administrator (and if the Indenture Trustee or the Securities Administrator acts as Paying Agent it hereby so agrees), subject to the provisions of this Section 3.03, that such Paying Agent will:

(a)    hold all sums held by it for the payment of amounts due with respect to the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(b)    give the Indenture Trustee notice of any default by the Issuing Entity of which it has actual knowledge in the making of any payment required to be made with respect to the Notes;

8

(c)     at any time during the continuance of any such default, upon the written request of the Indenture Trustee or the Securities Administrator, forthwith pay to the Person designated in such request all sums so held in trust by such Paying Agent;

(d)     immediately resign as Paying Agent and forthwith pay to such Person as directed by the Securities Administrator or Indenture Trustee, as applicable, all sums held by it in trust for the payment of Notes if at any time it ceases to meet the standards required to be met by a Paying Agent at the time of its appointment;

(e)     comply with all requirements of the Code with respect to the withholding from any payments made by it on any Notes of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith; and

(f)     not commence a bankruptcy proceeding against the Issuing Entity in connection with this Indenture.

The Issuing Entity may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, by Issuing Entity Request direct any Paying Agent to pay to the Person designated therein all sums held in trust by such Paying Agent, such sums to be held by such designee upon the same trusts as those upon which the sums were held by such Paying Agent; and upon such payment by any Paying Agent to such designee, such Paying Agent shall be released from all further liability with respect to such money.

Subject to applicable laws with respect to escheat of funds, any money held by the Securities Administrator or any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for one year after such amount has become due and payable shall be discharged from such trust and be paid to the Issuing Entity; and the Holder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuing Entity for payment thereof (but only to the extent of the amounts so paid to the Issuing Entity), and all liability of the Securities Administrator or such Paying Agent with respect to such trust money shall thereupon cease; provided, however, that the Securities Administrator or such Paying Agent, before being required to make any such repayment, shall at the expense and direction of the Issuing Entity cause to be published once, in an Authorized Newspaper published in the English language, notice that such money remains unclaimed and that, after a date specified therein which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuing Entity.  The Securities Administrator may also adopt and employ, at the expense and direction of the Issuing Entity, any other reasonable means of notification of such repayment (including, but not limited to, mailing notice of such repayment to Holders whose Notes have been called but have not been surrendered for redemption or whose right to or interest in monies due and payable but not claimed is determinable from the records of the Securities Administrator or of any Paying Agent, at the last address of record for each such Holder).

Section 3.04   Existence.  The Issuing Entity will keep in full effect its existence, rights and franchises as a statutory trust under the laws of the State of Delaware (unless it becomes, or any successor Issuing Entity hereunder is or becomes, organized under the laws of any other state or of the United States of America, in which case the Issuing Entity will keep in full effect

its existence, rights and franchises under the laws of such other jurisdiction) and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes, the Mortgage Loans and each other instrument or agreement included in the Trust Estate.

Section 3.05    Payment of Available Funds.

(a)    On each Payment Date from amounts on deposit in the Payment Account in accordance with Section 8.02 hereof, the Securities Administrator shall pay to the Persons specified below, to the extent provided therein in accordance with the statement furnished by the Securities Administrator pursuant to Section 7.05 hereof for such Payment Date, the Group IV Available Funds for such Payment Date.

(b)    On each Payment Date, the Securities Administrator shall withdraw from the Payment Account the Group IV Available Funds for such Payment Date and make the following payments in the order of priority described below, in each case to the extent of the Group IV Available Funds remaining for such Payment Date:

(i)    from the Group IV Available Funds, to the Holders of the Class IV-A Notes the Accrued Note Interest for such Class for such Payment Date;

(ii)    from the remaining Group IV Available Funds for such Payment Date, to the Holders of the Class IV-M-1 Notes, the Accrued Note Interest for such Class for such Payment Date;

(iii)    from the remaining Group IV Available Funds and for such Payment Date, to the Holders of the Class IV-M-2 Notes, the Accrued Note Interest for such Class for such Payment Date;

(iv)    from the remaining Group IV Available Funds for such Payment Date, to the Holders of the Class IV-M-3 Notes, the Accrued Note Interest for such Class for such Payment Date; and

(v)    any remainder for such Payment Date (to the extent not included as a part of the Group IV Principal Distribution Amount as provided in Section 3.05(c) below) shall be included in the Net Monthly Excess Cashflow and allocated as described in Section 3.05(d) below.

(c)    On each Payment Date the Holders of each Class of Group IV Notes shall be entitled to receive payments in respect of principal to the extent of the Group IV Principal Distribution Amount in the following amounts and order of priority:

(i)    the Group IV Principal Distribution Amount shall be allocated to the Class IV-A Notes until the Note Principal Balance thereof has been reduced to zero;

(ii)    any remaining Group IV Principal Distribution Amount, sequentially, to the holders of the Class IV-M-1, Class IV-M-2, Class IV-M-3, Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes, in that order, until the Note Principal Balance of such Class is reduced to zero; and

(iii)    any remainder as part of the Net Monthly Excess Cashflow relating to Loan Group IV to be allocated as described in Section 3.05(d) below.

(d)    On each Payment Date, any Net Monthly Excess Cashflow for the Group IV Loans shall be paid as follows, in each case to the extent of remaining Net Excess Monthly Cashflow for the Group IV Loans, as follows:

(i)    sequentially, to the Holders of the Class IV-A, Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes, in that order, in an amount equal to any Accrued Note Interest (for this purpose only, excluding any Accrued Note Interest remaining unpaid from the prior Payment Date) for that Class for such Payment Date, to the extent not previously reimbursed;

(ii)    sequentially, to the Holders of the Class IV-A, Class IV-M-1, Class IV-M-2 and IV-M-3 Notes, in that order, in an amount equal to any Accrued Note Interest for that Class, to the extent not previously reimbursed;

(iii)    sequentially, to the Holders of the Class IV-M-1, Class IV-M-2, Class IV-M-3, Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes, in that order, in each case, in an amount equal to any Allocated Realized Loss Amount for that Class, to the extent not previously reimbursed;

(iv)    to the Group IV Reserve Fund, any remaining Net Monthly Excess Cashflow, to be allocated as described under Section 3.06 below until the Note Principal Balances of the Class IV-A Notes and Class IV-M Notes have been reduced to zero; and

(v)    any remaining amounts will be distributed to the Certificate Paying Agent, as designee of the Issuing Entity, for the benefit of the Holders of the Trust Certificates, as provided herein and in the Trust Agreement.

(e)    On each Payment Date, any payments received from the Class IV-A Cap Contract Provider with respect to the Class IV-A Cap Contract will be allocated in the following order of priority (after payment of the Net Monthly Excess Cashflow as described in Section 3.05(d) above):

(i)    first, to the Class IV-A Notes, any Accrued Note Interest for such Class, to the extent remaining unpaid from the related Net Monthly Excess Cashflow for such Class for that Payment Date; and

(ii)    second, any remaining amounts shall be distributed as part of the Net Monthly Excess Cashflow as described in Section 3.05(d) above.

Section 3.06    The Group IV Reserve Fund.

On the Closing Date, the Securities Administrator shall establish the Group IV Reserve Fund for the benefit of the holders of the Group IV Notes.  The Securities Administrator shall deposit into the Group IV Reserve Fund the amounts specified in Section 3.05(d).  With respect to any Payment Date and after payments made pursuant to Section 3.05 hereof, the Securities Administrator shall allocate any funds on deposit in the Group IV Reserve Fund as needed in the following order of priority:

(1)    sequentially, to the Holders of the Class IV-A, Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes, in that order, the Accrued Note Interest for such Class for such Payment Date;

(2)    sequentially, to the Holders of the Class IV-A Notes, Class IV-M-1, Class IV-M-2 and Class IV-M-3, in that order, in each case, an amount up to the Realized Losses on the Group IV Loans for such Due Period until the Note Principal Balance of each such Class is reduced to zero;

(3)    sequentially, to the Holders of the Class IV-M-1, Class IV-M-2, Class IV-M-3, Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes, in that order, in each case, in an amount equal to any Allocated Realized Loss Amount for that Class, to the extent not previously reimbursed.

The Securities Administrator shall hold any remaining funds in the Group IV Reserve Fund uninvested and shall apply them on future Payment Dates until the Note Principal Balances of the Class IV-A Notes and Class IV-M Notes have been reduced to zero at which time any remaining funds shall be distributed to the Holders of the Trust Certificates, as provided herein and in the Trust Agreement.

Section 3.07    The Supplemental Reserve Fund.

On the Closing Date, the Securities Administrator shall establish the Supplemental Reserve Fund for the benefit of the holders of the Class IV-A Notes and the Class IV-M Notes. The Securities Administrator shall deposit into the Supplemental Reserve Fund amounts received by it pursuant to Section 3.07 of the 2007-A Indenture.  With respect to any Payment Date, the Securities Administrator shall allocate any funds on deposit in the Supplemental Reserve Fund as needed, after funds in the Group IV Reserve Fund have been applied as indicated above, in the following order of priority:

(1)     sequentially, to the Holders of the Class IV-A Notes, Class IV-M-1, Class IV-M-2 and Class IV-M-3, in that order, in each case, an amount up to the Realized Losses on the Group IV Loans for such Due Period until the Note Principal Balance of each such Class is reduced to zero;

(2)     sequentially, to the Holders of the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes, in that order, in each case, in an amount equal to any Allocated Realized Loss Amount for that Class, to the extent not previously reimbursed;

(3)     sequentially, to the Holders of the Class IV-A, Class IV-M-1, Class IV-M-2, and Class IV-M-3 Notes, in that order, the Accrued Note Interest for such Class for such Payment Date to the extent not previously reimbursed; and

(4)     sequentially, to the Holders of the Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes, in that order, in each case, in an amount equal to any Allocated Realized Loss Amount for that Class, to the extent not previously reimbursed.

The Securities Administrator shall hold any remaining funds in the Supplemental Reserve Fund uninvested and shall apply them on future Payment Dates until the Note Principal Balances of the Class IV-A Notes and Class IV-M Notes have been reduced to zero at which time any remaining funds shall be distributed to the Holders of the Trust Certificates, as provided herein and in the Trust Agreement.

Section 3.08    [Reserved]

Section 3.09    [Reserved]

Section 3.10    <u>Other Matters With Respect to the Notes</u>.

(a)     Each distribution with respect to a Book-Entry Note shall be paid to the Depository, as Holder thereof, and the Depository shall be responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures.  Each Depository Participant shall be responsible for disbursing such distribution to the Note Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent.  Each brokerage firm shall be responsible for disbursing funds to the Note Owners that it represents.  None of the Indenture Trustee, the Note Registrar, the Paying Agent, the Depositor, the Securities Administrator, the HELOC Back-Up Servicer, the HELOC Servicer, the RMBS Master Servicer or the RMBS Servicer shall have any responsibility therefor except as otherwise provided by this Indenture.

(b)     On each Payment Date, the Certificate Paying Agent shall deposit in the Certificate Distribution Account all amounts it received pursuant to Section 3.05 for the purpose of distributing such funds to the Certificateholders.

(c)     Any installment of interest or principal, if any, payable on any Note that is punctually paid or duly provided for by the Issuing Entity on the applicable Payment Date shall, if such Holder shall have so requested at least five Business Days prior to the related Record Date, be paid to each Holder of record on the preceding Record Date, by wire transfer to an

account specified in writing by such Holder reasonably satisfactory to the Securities Administrator as of the preceding Record Date or in all other cases or if no such instructions have been delivered to the Securities Administrator, by check to such Noteholder mailed to such Holder's address as it appears in the Note Register in the amount required to be distributed to such Holder on such Payment Date pursuant to such Holder's Notes; *provided*, *however*, that the Securities Administrator shall not pay to such Holders any amount required to be withheld from a payment to such Holder by the Code.

(d)    The principal of each Note shall be due and payable in full on the Final Scheduled Payment Date for such Note as provided in the forms of Note set forth in Exhibits A-1 and A-2 to this Indenture.  All principal payments on the Notes shall be made to the Noteholders entitled thereto in accordance with the Percentage Interests represented by such Notes.  Upon notice (such notice to include the Final Scheduled Payment Date) to the Securities Administrator by the Issuing Entity, the Securities Administrator shall notify the Person in whose name a Note is registered at the close of business on the Record Date preceding the Final Scheduled Payment Date or other final Payment Date (including any final Payment Date resulting from any redemption pursuant to Section 8.07 hereof).  Such notice shall to the extent practicable be mailed no later than five Business Days prior to such Final Scheduled Payment Date or other final Payment Date and shall specify that payment of the principal amount and any interest due with respect to such Note at the Final Scheduled Payment Date or other final Payment Date will be payable only upon presentation and surrender of such Note and shall specify the place where such Note may be presented and surrendered for such final payment.  No interest shall accrue on the Notes on or after the Final Scheduled Payment Date or any such other final Payment Date.

Section 3.11    Protection of Trust Estate.

(a)    The Issuing Entity will from time to time prepare, execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i)    maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(ii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iii)    cause the Issuing Entity or related Servicer to enforce any of the rights to the Mortgage Loans or the HELOCs, as applicable; or

(iv)    preserve and defend title to the Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties.

(b)    Except as otherwise provided in this Indenture, neither the Indenture Trustee nor the Securities Administrator shall remove any portion of the Trust Estate that consists of money or is evidenced by an instrument, certificate or other writing from the jurisdiction in which it was

held at the date of the most recent Opinion of Counsel delivered pursuant to Section 3.12 hereof (or from the jurisdiction in which it was held as described in the Opinion of Counsel delivered on the Closing Date pursuant to Section 3.12(a) hereof, if no Opinion of Counsel has yet been delivered pursuant to Section 3.12(b) hereof), unless the Indenture Trustee and the Securities Administrator shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions.

The Issuing Entity hereby designates the Indenture Trustee its agent and attorney-in-fact to sign any financing statement, continuation statement or other instrument required to be signed pursuant to this Section 3.11 upon the Issuing Entity's preparation thereof and delivery to the Indenture Trustee.

Section 3.12    Opinions as to Trust Estate.

(a)    On the Closing Date, the Issuing Entity shall furnish to the Indenture Trustee and the Owner Trustee an Opinion of Counsel either stating that, in the opinion of such counsel, such action has been taken with respect to the recording and filing of this Indenture, any indentures supplemental hereto, and any other requisite documents, and with respect to the execution and filing of any financing statements and continuation statements, as are necessary to perfect and make effective the lien and first priority security interest in the Collateral and reciting the details of such action, or stating that, in the opinion of such counsel, no such action is necessary to make such lien and first priority security interest effective.

(b)    On or before April 15 in each calendar year, beginning in 2008, the Issuing Entity shall furnish to the Indenture Trustee an Opinion of Counsel at the expense of the Issuing Entity either stating that, in the opinion of such counsel, such action has been taken with respect to the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and with respect to the execution and filing of any financing statements and continuation statements as is necessary to maintain the lien and first priority security interest in the Collateral and reciting the details of such action or stating that in the opinion of such counsel no such action is necessary to maintain such lien and security interest. Such Opinion of Counsel shall also describe the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and the execution and filing of any financing statements and continuation statements that will, in the opinion of such counsel, be required to maintain the lien and security interest in the Collateral until December 31 in the following calendar year.

Section 3.13    Performance of Obligations.

(a)    The Issuing Entity will punctually perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate.

(b)    The Issuing Entity may contract with other Persons to assist it in performing its duties under this Indenture, and any performance of such duties by a Person identified to the

Indenture Trustee in an Officer's Certificate of the Issuing Entity shall be deemed to be action taken by the Issuing Entity.

(c)     The Issuing Entity will not take any action or permit any action to be taken by others which would release any Person from any of such Person's covenants or obligations under any of the documents relating to the Mortgage Loans and HELOCs or under any instrument included in the Trust Estate, or which would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any of the documents relating to the Mortgage Loans and HELOCs or any such instrument, except such actions as the related Servicer is expressly permitted to take in the related Servicing Agreement. The Indenture Trustee, as pledgee of the Mortgage Loans and HELOCs may exercise the rights of the Issuing Entity to direct the actions of the RMBS Servicer pursuant to the RMBS Servicing Agreement and the HELOC Servicer pursuant to the HELOC Servicing Agreement.

Section 3.14   <u>Negative Covenants</u>.  So long as any Notes are Outstanding, the Issuing Entity shall not:

(a)     except as expressly permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the Trust Estate, unless directed to do so by the Indenture Trustee;

(b)     claim any credit on, or make any deduction from the principal or interest payable in respect of, the Notes (other than amounts properly withheld from such payments under the Code) or assert any claim against any present or former Noteholder, by reason of the payment of the taxes levied or assessed upon any part of the Trust Estate;

(c)     (A) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Notes under this Indenture except as may be expressly permitted hereby, (B) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Trust Estate or any part thereof or any interest therein or the proceeds thereof or (C) permit the lien of this Indenture not to constitute a valid first priority security interest in the Trust Estate; or

(d)     waive or impair, or fail to assert rights under, the Mortgage Loans and HELOCs, or impair or cause to be impaired the Issuing Entity's interest in the Mortgage Loans and HELOCs, the Mortgage Loan Purchase Agreement or in any Basic Document, if any such action would materially and adversely affect the interests of the Noteholders.

Section 3.15   <u>Annual Statement as to Compliance</u>.  The Issuing Entity will deliver to the Indenture Trustee, by March 1 of each year commencing with the calendar year 2008, an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

(a)     a review of the activities of the Issuing Entity during the previous calendar year and of its performance under this Indenture has been made under such Authorized Officer's supervision; and

(b)     to the best of such Authorized Officer's knowledge, based on such review, the Issuing Entity has complied with all conditions and covenants under this Indenture throughout such year, or, if there has been a default in its compliance with any such condition or covenant, specifying each such default known to such Authorized Officer and the nature and status thereof.

Section 3.16    Representations and Warranties Concerning the Mortgage Loans and HELOCs.  The Indenture Trustee, as pledgee of the Mortgage Loans and HELOCs, shall have the benefit of the representations and warranties made by the Sponsor in the Mortgage Loan Purchase Agreement concerning the Sponsor and the Mortgage Loans and HELOCs to the same extent as though such representations and warranties were made directly to the Indenture Trustee.  If a Responsible Officer of the Indenture Trustee has actual knowledge of any breach of any representation or warranty made by the Sponsor in the Mortgage Loan Purchase Agreement, the Indenture Trustee shall promptly notify the Sponsor of such finding and of the Seller's obligation to cure such defect or repurchase or substitute for the related Mortgage Loan or HELOC.

Section 3.17    Amendments to Servicing Agreements.  The Issuing Entity covenants with the Indenture Trustee that it will not enter into any amendment or supplement to any Servicing Agreement except in compliance therewith and without the prior written consent of the Indenture Trustee, which shall be given at the direction of the Holders.

Section 3.18    Servicers as Agents and Bailees of the Indenture Trustee.  Solely for purposes of perfection under Section 9-305 of the Uniform Commercial Code or other similar applicable law, rule or regulation of the state in which such property is held by the related Servicer, the Issuing Entity and the Indenture Trustee hereby acknowledge that the related Servicer is acting as bailee of the Indenture Trustee in holding amounts on deposit in the related Protected Account, as well as its bailee in holding any Related Documents released to the related Servicer, and any other items constituting a part of the Trust Estate which from time to time come into the possession of the related Servicer.  It is intended that, by the related Servicer's acceptance of such bailee arrangement, the Indenture Trustee, as a secured party of the Mortgage Loans or HELOCs, as applicable, will be deemed to have possession of such Related Documents, such monies and such other items for purposes of Section 9-305 of the Uniform Commercial Code of the state in which such property is held by the related Servicer.  The Indenture Trustee shall not be liable with respect to such documents, monies or items while in possession of the related Servicer.

Section 3.19    Investment Company Act.  The Issuing Entity shall not become an "investment company" or be under the "control" of an "investment company" as such terms are defined in the Investment Company Act of 1940, as amended (or any successor or amendatory statute), and the rules and regulations thereunder (taking into account not only the general definition of the term "investment company" but also any available exceptions to such general definition); *provided, however,* that the Issuing Entity shall be in compliance with this Section 3.19 if it shall have obtained an order exempting it from regulation as an "investment company" so long as it is in compliance with the conditions imposed in such order.

Section 3.20    Issuing Entity May Consolidate, etc.

(a)    The Issuing Entity shall not consolidate or merge with or into any other Person, unless:

(i)    the Person (if other than the Issuing Entity) formed by or surviving such consolidation or merger shall be a Person organized and existing under the laws of the United States of America or any state or the District of Columbia and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form reasonably satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on all Notes and all amounts payable to the Indenture Trustee, the Cap Contract Provider, the payment to the Certificate Paying Agent of all amounts due to the Certificateholders, and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuing Entity to be performed or observed, all as provided herein;

(ii)    immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing;

(iii)    the Rating Agencies shall have notified the Issuing Entity and the Indenture Trustee that such transaction shall not cause the rating of the Notes to be reduced, qualified, suspended or withdrawn or to be considered by either Rating Agency to be below investment grade;

(iv)    the Issuing Entity shall have received an Opinion of Counsel (and shall have delivered a copy thereof to the Securities Administrator and the Indenture Trustee) to the effect that such transaction will not (A) result in a "significant modification" of the Notes under Treasury Regulation section 1.1001-3, or adversely affect the status of the Notes as indebtedness for federal income tax purposes;

(v)    any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi)    the Issuing Entity shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each stating that such consolidation or merger and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for or relating to such transaction have been complied with (including any filing required by the Exchange Act), and that such supplemental indenture is enforceable.

(b)    The Issuing Entity shall not convey or transfer any of its properties or assets, including those included in the Trust Estate, to any Person, unless:

(i)    the Person that acquires by conveyance or transfer the properties and assets of the Issuing Entity, the conveyance or transfer of which is hereby restricted, shall (A) be a United States citizen or a Person

organized and existing under the laws of the United States of America or any state thereof, (B) expressly assume, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form satisfactory to the Indenture Trustee and, the due and punctual payment of the principal of and interest on all Notes and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuing Entity to be performed or observed, all as provided herein, (C) expressly agree by means of such supplemental indenture that all right, title and interest so conveyed or transferred shall be subject and subordinate to the rights of the Holders of the Notes, (D) unless otherwise provided in such supplemental indenture, expressly agree to indemnify, defend and hold harmless the Securities Administrator and the Indenture Trustee against and from any loss, liability or expense arising under or related to this Indenture and the Notes and (E) expressly agree by means of such supplemental indenture that such Person (or if a group of Persons, then one specified Person) shall make all filings with the Commission (and any other appropriate Person) required by the Exchange Act in connection with the Notes;

(ii)    immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing;

(iii)    the Rating Agencies shall have notified the Issuing Entity and the Indenture Trustee that such transaction shall not cause the rating of the Notes to be reduced, qualified, suspended or withdrawn;

(iv)    the Issuing Entity shall have received an Opinion of Counsel (and shall have delivered a copy thereof to the Securities Administrator and the Indenture Trustee) to the effect that such transaction will not (A) result in a "substantial modification" of the Notes under Treasury Regulation section 1.1001-3, or adversely affect the status of the Notes as indebtedness for federal income tax purposes, or (B) if 100% of the Certificates and the Retained Notes (to the extent that such Retained Notes have not received a "will be debt" opinion) are not owned by American Home Mortgage Acceptance, Inc., cause the Trust to be subject to an entity level tax for federal income tax purposes;

(v)    any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi)    the Issuing Entity shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each stating that such conveyance or transfer and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

Section 3.21    Successor or Transferee.

(a)    Upon any consolidation or merger of the Issuing Entity in accordance with Section 3.20(a), the Person formed by or surviving such consolidation or merger (if other than the Issuing Entity) shall, following the Issuing Entity's satisfaction of all of the conditions precedent set forth therein with respect thereto, succeed to, and be substituted for, and may exercise every right and power of, the Issuing Entity under this Indenture with the same effect as if such Person had been named as the Issuing Entity herein.

(b)    Upon a conveyance or transfer of all the assets and properties of the Issuing Entity pursuant to Section 3.20(b), the Issuing Entity, following its satisfaction of all of the conditions precedent set forth herein with respect thereto, will be released from every covenant and agreement of this Indenture to be observed or performed on the part of the Issuing Entity with respect to the Notes immediately upon the delivery of written notice to the Indenture Trustee of such conveyance or transfer.

Section 3.22    No Other Business.    The Issuing Entity shall not engage in any business other than as set forth with respect thereto in the Trust Agreement and other than financing, purchasing, owning and selling and managing the Mortgage Loans and HELOCs and the issuance of the Notes and Certificates in the manner contemplated by this Indenture and the Basic Documents and all activities incidental thereto.

Section 3.23    No Borrowing.    The Issuing Entity shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes under this Indenture.

Section 3.24    Guarantees, Loans, Monthly Advances and Other Liabilities.    Except as contemplated by this Indenture or the Basic Documents, the Issuing Entity shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

Section 3.25    Capital Expenditures.    The Issuing Entity shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty).

Section 3.26    Determination of Note Interest Rate.    On each Interest Determination Date the Securities Administrator shall determine One-Month LIBOR and Six-Month LIBOR and the related Note Interest Rate for each Class of related Notes for the following Accrual Period and shall make such information available pursuant to Section 7.05 hereof to the Issuing Entity and the Depositor.  The establishment of One-Month LIBOR and Six-Month LIBOR on each Interest Determination Date by the Securities Administrator and the Securities Administrator's calculation of the rate of interest applicable to each Class of applicable Notes for the related Accrual Period shall (in the absence of manifest error) be final and binding.

Section 3.27   <u>Restricted Payments</u>.  The Issuing Entity shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuing Entity or otherwise with respect to any ownership or equity interest or security in or of the Issuing Entity, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; *provided, however,* that the Issuing Entity may make, or cause to be made, (x) distributions and payments to the Securities Administrator, the Owner Trustee, the Indenture Trustee, the Certificate Registrar, the Certificate Paying Agent, the Noteholders and the Certificateholders as contemplated by, and to the extent funds are available for such purpose under this Indenture and the other Basic Documents and (y) payments to the related Servicer and the RMBS Master Servicer pursuant to the terms of the related Servicing Agreement and the RMBS Master Servicing Agreement.  The Issuing Entity will not, directly or indirectly, make payments to or distributions from the Payment Account or Collection Account, as applicable, except in accordance with this Indenture and the Basic Documents.

Section 3.28   <u>Notice of Events of Default</u>.  The Issuing Entity shall give the Indenture Trustee and the Rating Agencies prompt written notice of each Event of Default hereunder and under the Trust Agreement.

Section 3.29   <u>Further Instruments and Acts</u>.  Upon request of the Indenture Trustee, the Issuing Entity will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

Section 3.30   <u>Statements to Noteholders</u>.   On each Payment Date, the Securities Administrator shall make available on the Securities Administrator's website, www.ctslink.com (or deliver at the recipient's option), to each Noteholder and Certificateholder the statement prepared by the Securities Administrator pursuant to and in the manner provided for in Section 7.05 hereof.

Section 3.31   [Reserved]

Section 3.32   [Reserved]

Section 3.33   [Reserved]

Section 3.34   <u>Replacement Class IV-A Cap Contract</u>.  Upon early termination of the Class IV-A Cap Contract other than in connection with the optional termination of the trust, the Securities Administrator, at the written direction of the Depositor, will use reasonable efforts to appoint a successor class IV-A cap contract provider to enter into a new class IV-A cap contract with the Owner Trustee on behalf of the Issuing Entity on terms substantially similar to the Class IV-A Cap Contract, with a successor class IV-A cap contract provider, meeting all applicable eligibility requirements. The Securities Administrator will apply any Class IV-A Cap Contract Termination Payment received by it from the original Class IV-A Cap Contract Provider in connection with such early termination of the Class IV-A Cap Contract to the upfront payment required to appoint the successor class IV-A cap contract provider.

If the Securities Administrator is unable to appoint a successor class IV-A cap contract provider within 30 days of the early termination of the Class IV-A Cap Contract, then the Securities Administrator will deposit any Class IV-A Cap Contract Termination Payment received from the original Class IV-A Cap Contract Provider into a separate, non-interest bearing reserve account and will, on each subsequent Payment Date, withdraw from the amount then remaining on deposit in such reserve account an amount equal to the payment, if any, that would have been paid to the Securities Administrator by the original Class IV-A Cap Contract Provider calculated in accordance with the terms of the original Class IV-A Cap Contract, and distribute such amount in accordance with the terms of this Indenture.

Section 3.35    [Reserved]

Section 3.36    [Reserved]

Section 3.37    <u>Certain Representations Regarding the Trust Estate</u>.

(a)    With respect to that portion of the Collateral described in clauses (a) through (h) of the Granting Clause, the Issuing Entity represents to the Indenture Trustee that:

(i)    This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in the Collateral in favor of the Indenture Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Issuing Entity.

(ii)    The Collateral constitutes "deposit accounts" or "instruments," as applicable, within the meaning of the applicable UCC.

(iii)    The Issuing Entity owns and has good and marketable title to the Collateral, free and clear of any lien, claim or encumbrance of any Person.

(iv)    The Issuing Entity has taken all steps necessary to cause the Indenture Trustee to become the account holder of the Collateral.

(v)    Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuing Entity has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Collateral.

(vi)    The Collateral is not in the name of any Person other than the Issuing Entity or the Indenture Trustee.  The Issuing Entity has not consented to the bank maintaining the Collateral to comply with instructions of any Person other than the Indenture Trustee.

(b)    With respect to that portion of the Collateral described in clauses (i) and (h) of the Granting Clause, the Issuing Entity represents to the Indenture Trustee that:

(i)    This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in the Collateral in favor of the Indenture Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Issuing Entity.

(ii)    The Collateral constitutes "general intangibles" within the meaning of the applicable UCC.

(iii)    The Issuing Entity owns and has good and marketable title to the Collateral, free and clear of any lien, claim or encumbrance of any Person.

(iv)    Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuing Entity has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Collateral.

(c)    With respect to any Collateral in which a security interest may be perfected by filing, the Issuing Entity has not authorized the filing of, and is not aware of any financing statements against, the Issuing Entity, that include a description of collateral covering such Collateral, other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated.  The Issuing Entity is not aware of any judgment or tax lien filings against the Issuing Entity.

(d)    The Issuing Entity has caused or will have caused, within ten days of the Closing Date, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in all Collateral granted to the Indenture Trustee hereunder in which a security interest may be perfected by filing.  Any financing statement that is filed in connection with this Section 3.37 shall contain a statement that a purchase or security interest in any collateral described therein will violate the rights of the secured party named in such financing statement.

(e)    The foregoing representations may not be waived and shall survive the issuance of the Notes.

Section 3.38    Allocation of Realized Losses.

(a)    Any Realized Losses on the Group IV Mortgage Loans will be allocated or covered on any Payment Date, in accordance with the statement for such Payment Date provided by the Securities Administrator pursuant to Section 7.05 hereof, as follows: *first*, to the Net Monthly Excess Cashflow; *second*, to the Class IV-M-6 Notes, in reduction of the Note Principal Balance thereof, until reduced to zero; *third*, to the Class IV-M-5 Notes, in reduction of the Note Principal Balance thereof, until reduced to zero; *fourth,* to the Class IV-M-4 Notes, in reduction of the Note Principal Balance thereof, until reduced to zero; *fifth*, to the Class IV-M-3 Notes, in reduction of the Note Principal Balance thereof, until reduced to zero; *sixth,* to the Class IV-M-2 Notes, in reduction of the Note Principal Balance thereof, until reduced to zero; and *seventh*, to

the Class IV-M-1 Notes, in reduction of the Note Principal Balance thereof, until reduced to zero.

      (b)      No Realized Losses shall be allocated to the Class IV-A Notes.

ARTICLE IV

THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE

Section 4.01    The Notes.  Each Class of Offered Notes shall be registered in the name of a nominee designated by the Depository and have an aggregate Note Principal Balance not exceeding the Initial Note Principal Balance of such Class.  With respect to the Offered Notes, Beneficial Owners will hold interests in such Notes through the book-entry facilities of the Depository in minimum initial Note Principal Balances of $100,000 and integral multiples of $1 in excess thereof. The Non-Offered Notes will be issued in fully registered definitive physical form in minimum dollar denominations of $25,000 and integral multiples of $1 in excess thereof.

The Indenture Trustee and the Securities Administrator may for all purposes (including the making of payments due on the Notes) deal with the Depository as the authorized representative of the Beneficial Owners with respect to the Offered Notes for the purposes of exercising the rights of Holders of the Notes hereunder.  Except as provided in the next succeeding paragraph of this Section 4.01, the rights of Beneficial Owners with respect to the Offered Notes shall be limited to those established by law and agreements between such Beneficial Owners and the Depository and Depository Participants.  Except as provided in Section 4.08 hereof, Beneficial Owners shall not be entitled to definitive certificates for the Offered Notes as to which they are the Beneficial Owners.  Requests and directions from, and votes of, the Depository as Holder of the Offered Notes shall not be deemed inconsistent if they are made with respect to different Beneficial Owners.  The Securities Administrator may establish a reasonable record date in connection with solicitations of consents from or voting by Noteholders and give notice to the Depository of such record date.  Without the consent of the Issuing Entity and the Securities Administrator, no Offered Note may be transferred by the Depository except to a successor Depository that agrees to hold such Note for the account of the Beneficial Owners.

In the event the Depository Trust Company resigns or is removed as Depository, the Depositor with the approval of the Issuing Entity may appoint a successor Depository.  If no successor Depository has been appointed within 30 days of the effective date of the Depository's resignation or removal, each Beneficial Owner shall be entitled to certificates representing the Offered Notes it beneficially owns in the manner prescribed in Section 4.08.

The Notes shall, on original issue, be executed on behalf of the Issuing Entity by the Owner Trustee, not in its individual capacity but solely as Owner Trustee, authenticated by the Securities Administrator and delivered by the Securities Administrator to or upon an Issuing Entity Request.

Section 4.02    Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Note Registrar and Certificate Registrar.

(a)    The Issuing Entity shall cause to be kept at the Corporate Trust Office of the Note Registrar a Note Register in which, subject to such reasonable regulations as it may prescribe, the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes as herein provided.

Subject to the restrictions and limitations set forth below, upon surrender for registration of transfer of any Note at the office designated by the Securities Administrator, the Issuing Entity shall execute and the Note Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes in authorized initial Note Principal Balances evidencing the same Class and aggregate Percentage Interests.

Subject to the foregoing, at the option of the Noteholders, Notes may be exchanged for other Notes of like tenor and in authorized initial Note Principal Balances evidencing the same Class and aggregate Percentage Interests upon surrender of the Notes to be exchanged at the office designated by the Note Registrar.  Whenever any Notes are so surrendered for exchange, the Issuing Entity shall execute and the Securities Administrator shall authenticate and deliver the Notes which the Noteholder making the exchange is entitled to receive.  Each Note presented or surrendered for registration of transfer or exchange shall (if so required by the Note Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer in form reasonably satisfactory to the Note Registrar duly executed by the Holder thereof or his attorney duly authorized in writing with such signature guaranteed by a commercial bank or trust company located or having a correspondent located in the city of New York.  Notes delivered upon any such transfer or exchange will evidence the same obligations, and will be entitled to the same rights and privileges, as the Notes surrendered.

No service charge shall be made for any registration of transfer or exchange of Notes, but the Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes.

The Issuing Entity hereby appoints the Securities Administrator as (i) Certificate Registrar to keep at its Corporate Trust Office a Certificate Register pursuant to Section 3.09 of the Trust Agreement in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges thereof pursuant to Section 3.05 of the Trust Agreement and (ii) Note Registrar under this Indenture.  The Securities Administrator hereby accepts such appointments. The Securities Administrator shall provide the Indenture Trustee with a copy of the Certificate Register and the Note Register upon the Indenture Trustee's written request.

(b)      No Person shall become a Holder of a Class IV-M-4, Class IV-M-5 or Class IV-M-6 Note (unless such Note received a "will be debt" opinion) until it shall establish its non-foreign status by submitting to the Paying Agent an IRS W-9 and the Certificate of Non-Foreign Status set forth in Exhibit L hereto.

No transfer, sale, pledge or other disposition of a Note shall be made unless such transfer, sale, pledge or other disposition is exempt from the registration requirements of the Securities Act and any applicable state securities laws or is made in accordance with said Act and laws. In the event of any such transfer, the Note Registrar or the Depositor shall prior to such transfer require the transferee to execute (A) either (i) (a) an investment letter in substantially the form attached hereto as Exhibit K (or in such form and substance reasonably satisfactory to the Note Registrar and the Depositor) which investment letter shall not be an expense of the Trust, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the RMBS Master Servicer, the HELOC Back-Up Servicer, the RMBS Servicer, the HELOC Back-

26

Up Servicer, the Sponsor or the Depositor and which investment letter states that, among other things, such transferee (1) is a "qualified institutional buyer" as defined under Rule 144A, acting for its own account or the accounts of other "qualified institutional buyers" as defined under Rule 144A, and (2) is aware that the proposed transferor intends to rely on the exemption from registration requirements under the Securities Act of 1933, as amended, provided by Rule 144A or (ii) (a) a written Opinion of Counsel acceptable to and in form and substance satisfactory to the Note Registrar and the Depositor that such transfer may be made pursuant to an exemption, describing the applicable exemption and the basis therefor, from said Act and laws or is being made pursuant to said Act and laws, which Opinion of Counsel shall not be an expense of the Trust, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the RMBS Master Servicer, the HELOC Back-Up Servicer, the RMBS Servicer, the HELOC Back-Up Servicer, the Sponsor or the Depositor and (b) either (1) the transferee executes a representation letter, substantially in the form of Exhibit M hereto, and the transferor executes a representation letter, substantially in the form of Exhibit N hereto, each acceptable to and in form and substance satisfactory to the Note Registrar certifying the facts surrounding such transfer, which representation letters shall not be an expense of the Trust, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the RMBS Master Servicer, the HELOC Back-Up Servicer, the RMBS Servicer, the HELOC Back-Up Servicer, the Sponsor or the Depositor or (2) an Opinion of Counsel has been rendered by nationally recognized tax counsel stating that such Notes will be treated as debt for federal income tax purposes and (B) the Certificate of Non-Foreign Status (in substantially the form attached hereto as Exhibit L) acceptable to and in form and substance reasonably satisfactory to the Note Registrar, which certificate shall not be an expense of the Trust, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the RMBS Master Servicer, the HELOC Back-Up Servicer, the RMBS Servicer, the HELOC Back-Up Servicer, the Sponsor or the Depositor. The Holder of a Note desiring to effect such transfer shall, and does hereby agree to, indemnify the Trust, the Owner Trustee, the Indenture Trustee, the Paying Agent, the Note Registrar, the RMBS Master Servicer, the HELOC Back-Up Servicer, the RMBS Servicer, the HELOC Servicer and the Depositor against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No offer, sale, transfer or other disposition (including pledge) of any Note shall be made to any affiliate of the Depositor or the Issuing Entity, other than the initial transfer of the Notes to the Depositor.

With respect to the restriction on transfer of the Notes contained in this Section 4.02 and in Section 4.15, any transferor providing an Opinion of Counsel shall (i) deliver such opinion to the appropriate addressees, (ii) confirm the acceptability of such opinion with the applicable addressees and (iii) inform the Note Registrar of delivery and confirmation described in clause (i) and clause (ii).

Notwithstanding any provision herein to the contrary, in the event that any restrictions on transfer contained in this Section 4.02 apply to any Note that is a Book-Entry Note, then (i) in lieu of delivering any transfer letter, certificate or affidavit referred to herein, the transferee and/or transferor of any interest in such Note will instead be deemed to have made the representations and warranties set forth in Exhibits K through Q, as applicable, and (ii) neither the Securities Administrator nor the Note Registrar shall (a) have any duty or obligation to

enforce or monitor such transfer restriction or (b) incur any liability in respect of any transfer made in violation of any such restriction on transfer.

Section 4.03    Mutilated, Destroyed, Lost or Stolen Notes.  If (i) any mutilated Note is surrendered to the Securities Administrator, or the Securities Administrator receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Securities Administrator such security or indemnity as may be required by it to hold the Issuing Entity and the Securities Administrator harmless, then, in the absence of notice to the Issuing Entity, the Note Registrar or the Securities Administrator that such Note has been acquired by a bona fide purchaser, and provided that the requirements of Section 8-405 of the UCC are met, the Issuing Entity shall execute, and upon Issuing Entity Request the Securities Administrator shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note; *provided*, *however*, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the Issuing Entity may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof.  If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuing Entity and the Securities Administrator shall be entitled to recover such replacement Note (or such payment) from the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assignee of such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuing Entity or the Securities Administrator in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuing Entity may require the payment by the Holder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Indenture Trustee and the Securities Administrator) connected therewith.

Every replacement Note issued pursuant to this Section 4.03 in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuing Entity, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 4.03 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 4.04    Persons Deemed Owners.  Prior to due presentment for registration of transfer of any Note, the Issuing Entity, the Indenture Trustee, the Paying Agent and any agent of the Issuing Entity or the Indenture Trustee or the Paying Agent may treat the Person in whose name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other

purposes whatsoever, whether or not such Note be overdue, and neither the Issuing Entity, the Indenture Trustee, the Paying Agent nor any agent of the Issuing Entity or the Indenture Trustee or the Paying Agent shall be affected by notice to the contrary.

Section 4.05    Cancellation.  All Notes surrendered for payment, registration of transfer, exchange or redemption shall, if surrendered to any Person other than the Securities Administrator, be delivered to the Securities Administrator and shall be promptly cancelled by the Securities Administrator.  The Issuing Entity may at any time deliver to the Securities Administrator for cancellation any Notes previously authenticated and delivered hereunder which the Issuing Entity may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Securities Administrator.  No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided in this Section 4.05, except as expressly permitted by this Indenture.  All cancelled Notes may be held or disposed of by the Securities Administrator in accordance with its standard retention or disposal policy as in effect at the time unless the Issuing Entity shall direct by an Issuing Entity Request that they be destroyed or returned to it; *provided*, *however*, that such Issuing Entity Request is timely and the Notes have not been previously disposed of by the Securities Administrator.

Section 4.06    Book-Entry Notes.  The Offered Notes, upon original issuance, will be issued in the form of typewritten Notes representing the Book-Entry Notes, to be delivered to The Depository Trust Company, the initial Depository, or its designated custodian, by, or on behalf of, the Issuing Entity.  The Offered Notes shall initially be registered on the Note Register in the name of Cede & Co., the nominee of the initial Depository, and no Beneficial Owner will receive a Definitive Note representing such Beneficial Owner's interest in such Note, except as provided in Section 4.08.  With respect to such Notes, unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to Beneficial Owners pursuant to Section 4.08:

(i)    the provisions of this Section 4.06 shall be in full force and effect;

(ii)    the Note Registrar, the Paying Agent and the Indenture Trustee shall be entitled to deal with the Depository for all purposes of this Indenture (including the payment of principal of and interest on the Notes and the giving of instructions or directions hereunder) as the sole Holder of the Notes, and shall have no obligation to the Beneficial Owners of the Notes;

(iii)    to the extent that the provisions of this Section 4.06 conflict with any other provisions of this Indenture, the provisions of this Section 4.06 shall control;

(iv)    the rights of Beneficial Owners shall be exercised only through the Depository and shall be limited to those established by law and agreements between such Owners of Notes and the Depository and/or the Depository Participants.  Unless and until Definitive Notes are issued pursuant to Section 4.08, the initial Depository will make book-entry transfers among the Depository Participants and receive and

transmit payments of principal of and interest on the Notes to such Depository Participants; and

(v)    whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Holders of Notes evidencing a specified percentage of the Note Principal Balances of the Notes, the Depository shall be deemed to represent such percentage with respect to the Notes only to the extent that it has received instructions to such effect from Beneficial Owners and/or Depository Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Indenture Trustee.

Section 4.07    Notices to Depository.  Whenever a notice or other communication to the Noteholders is required under this Indenture, unless and until Definitive Notes shall have been issued to Beneficial Owners pursuant to Section 4.08, the Securities Administrator shall give all such notices and communications specified herein to be given to Holders of the Offered Notes to the Depository, and shall have no obligation to the Beneficial Owners.

Section 4.08    Definitive Notes.  If (i) the Depositor advises the Indenture Trustee and the Securities Administrator or the Note Registrar in writing that the Depository is no longer willing or able to properly discharge its responsibilities as clearing agency with respect to the Offered Notes and the Depositor is unable to locate a qualified successor within 30 days, (ii) the Depositor, at its option (with the consent of the Securities Administrator, which consent shall not by unreasonably withheld), elects to terminate the book-entry system through the Depository or (iii) after the occurrence of an Event of Default, any Note Owner materially and adversely affected thereby may, at its option, request and receive a Definitive Note evidencing such Note Owner's Percentage Interest in the related Class of Offered Notes.  Upon surrender to the Note Registrar of the global Offered Notes or definitive  typewritten Notes representing the Book-Entry Notes by the Depository, accompanied by registration instructions, the Note Registrar will re-issue the Book-Entry Notes as Definitive Notes issued in the respective Note Principal Balances owned by individual Note Owners.  None of the Issuing Entity, the Note Registrar or the Securities Administrator shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions.  Upon the issuance of Definitive Notes, the Securities Administrator, the Indenture Trustee and the Note Registrar shall recognize the Holders of the Definitive Notes as Noteholders.

Section 4.09    Tax Treatment.  The Issuing Entity has entered into this Indenture, and the Notes will be issued with the intention that, for federal, state and local income, single business and franchise tax purposes, the Notes (other than the Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes, which at the time of issuance, American Home Mortgage Investment Corp. or one of its qualified REIT subsidiaries acquires beneficial ownership thereof) will qualify as indebtedness.  The Issuing Entity and the Securities Administrator and the Indenture Trustee (in accordance with Section 6.06 hereof), by entering into this Indenture, and each Noteholder, by its acceptance of its Note (and each Beneficial Owner by its acceptance of an interest in the applicable Book-Entry Note), agree to treat the Notes for federal, state and local income, single business and franchise tax purposes as indebtedness.

Section 4.10    <u>Satisfaction and Discharge of Indenture</u>.  This Indenture shall cease to be of further effect with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of Noteholders to receive payments of principal thereof and interest thereon, (iv) Sections 3.03 and 3.05, (v) the rights and immunities of the Securities Administrator hereunder (including the rights of the Indenture Trustee and the Securities Administrator under Section 6.07) and the obligations of the Securities Administrator under Section 4.11 and (vi) the rights of Noteholders as beneficiaries hereof with respect to the property so deposited with the Securities Administrator payable to all or any of them, and the Indenture Trustee, on demand of and at the expense of the Issuing Entity, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes and shall release and deliver the Collateral to or upon the Issuing Entity Request, when

(A)    either

(1)    all Notes theretofore authenticated and delivered (other than (i) Notes that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 4.03 hereof and (ii) Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuing Entity and thereafter repaid to the Issuing Entity or discharged from such trust, as provided in Section 3.03) have been delivered to the Securities Administrator for cancellation; or

(2)    all Notes not theretofore delivered to the Securities Administrator for cancellation

a.    have become due and payable,

b.    will become due and payable at the Final Scheduled Payment Date within one year, or

c.    have been called for early redemption and the Trust has been terminated pursuant to Section 8.07 hereof,

and the Issuing Entity, in the case of a. or b. above, has irrevocably deposited or caused to be irrevocably deposited with the Securities Administrator cash or direct obligations of or obligations guaranteed by the United States of America (which will mature prior to the date such amounts are payable), in trust for such purpose, in an amount sufficient to pay and discharge the entire indebtedness on such Notes then outstanding not theretofore delivered to the Securities Administrator for cancellation when due on the Final Scheduled Payment Date or other final Payment Date and has delivered to the Securities Administrator a verification report with respect to such direct obligations or obligations guaranteed by the United States of America from a nationally recognized accounting firm certifying that the amounts deposited with the Securities Administrator are sufficient to pay and discharge the entire indebtedness of such Notes, or, in the case of c. above, the Issuing Entity shall have complied with all requirements of Section 8.07 hereof; and

(B)    the Issuing Entity has delivered to the Indenture Trustee and the Securities Administrator, an Officer's Certificate and an Opinion of Counsel, each meeting the applicable

requirements of Section 10.01 hereof, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with and, if the Opinion of Counsel relates to a deposit made in connection with Section 4.10(A)(2)b. above, such opinion shall further be to the effect that such deposit will constitute an "in-substance defeasance" within the meaning of Revenue Ruling 85-42, 1985-1 C.B. 36, and in accordance therewith, the Issuing Entity will be the owner of the assets deposited in trust for federal income tax purposes.

Section 4.11    Application of Trust Money.    All monies deposited with the Securities Administrator pursuant to Section 4.10 hereof shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent or the Certificate Paying Agent as designee of the Issuing Entity, as the Securities Administrator may determine, to the Holders of Securities, of all sums due and to become due thereon for principal and interest or otherwise; but such monies need not be segregated from other funds except to the extent required herein or required by law.

Section 4.12    [Reserved]

Section 4.13    Repayment of Monies Held by Paying Agent.    In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all monies then held by any Person other than the Securities Administrator under the provisions of this Indenture with respect to such Notes shall, upon demand of the Issuing Entity, be paid to the Securities Administrator to be held and applied according to Section 3.05 and thereupon such Person shall be released from all further liability with respect to such monies.

Section 4.14    Temporary Notes.    Pending the preparation of any Definitive Notes, the Issuing Entity may execute and upon its written direction, the Securities Administrator may authenticate and make available for delivery, temporary Notes that are printed, lithographed, typewritten, photocopied or otherwise produced, in any denomination, substantially of the tenor of the Definitive Notes in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Notes may determine, as evidenced by their execution of such Notes.

If temporary Notes are issued, the Issuing Entity will cause Definitive Notes to be prepared without unreasonable delay.    After the preparation of the Definitive Notes, the temporary Notes shall be exchangeable for Definitive Notes upon surrender of the temporary Notes at the office of the Securities Administrator located at Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479, without charge to the Holder.    Upon surrender for cancellation of any one or more temporary Notes, the Issuing Entity shall execute and, upon Issuing Entity Request, the Securities Administrator shall authenticate and make available for delivery, in exchange therefor, Definitive Notes of authorized denominations and of like tenor, class and aggregate principal amount.    Until so exchanged, such temporary Notes shall in all respects be entitled to the same benefits under this Indenture as Definitive Notes.

Section 4.15    Representations Regarding ERISA.    By acquiring an Offered Note or interest therein, each Holder of such Note or Beneficial Owner of any such interest will be deemed to represent that either (1) it is not acquiring such Note with Plan Assets or (2) (A) the

acquisition, holding and transfer of such Note will not give rise to a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and (B) the Offered Note is rated investment grade or better and such person believes that the Offered Note is properly treated as indebtedness without substantial equity features for purposes of Department of Labor regulation 29 C.F.R. § 2510.3-101 (the "DOL Regulations"), and agrees to so treat the Note. Alternatively, regardless of the rating of the Offered Note, such person may provide the Securities Administrator and the Owner Trustee with an opinion of counsel, which opinion of counsel will not be at the expense of the Issuing Entity, the Sponsor, the Depositor, any Underwriter, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the RMBS Master Servicer, the HELOC Back-Up Servicer or any successor servicer which opines that the acquisition, holding and transfer of such Offered Note or interest therein is permissible under applicable law, will not constitute or result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Issuing Entity, the Sponsor, the Depositor, any Underwriter, the Owner Trustee, the Indenture Trustee, the RMBS Servicer, the RMBS Master Servicer, the HELOC Servicer, the HELOC Back-Up Servicer or the Securities Administrator or any successor servicer to any obligation in addition to those undertaken in the Indenture.

No transfer of Non-Offered Notes that are Definitive Notes or any interest therein shall be made to any Person unless the Note Registrar is provided with an Opinion of Counsel which establishes to its satisfaction that the purchase of Non-Offered Notes, operation of the Trust and management of Trust assets are permissible under applicable law, will not constitute or result in any prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Depositor, the Owner Trustee, the Note Registrar, the Securities Administrator, the Sponsor the RMBS Master Servicer, the RMBS Servicer, the HELOC Back-Up Servicer, the HELOC Servicer or any successor servicer to any obligation or liability (including obligations or liabilities under ERISA or Section 4975 of the Code) in addition to those undertaken in this Agreement, which Opinion of Counsel shall not be an expense of the Depositor, the Owner Trustee, the Indenture Trustee, the Note Registrar, the Securities Administrator, the RMBS Master Servicer, the RMBS Servicer, the HELOC Back-Up Servicer, the HELOC Servicer or the Sponsor. In lieu of such Opinion of Counsel, a Person acquiring such Non-Offered Notes may provide a certification in the form of Exhibit O hereto to the Depositor, the Owner Trustee and the Note Registrar, which the Depositor, the Owner Trustee, the Indenture Trustee, the Note Registrar, the Securities Administrator, the RMBS Master Servicer, the RMBS Servicer, the HELOC Back-Up Servicer, the HELOC Servicer and the Sponsor may rely upon without further inquiry or investigation. Neither an Opinion of Counsel nor a certification will be required in connection with the initial transfer of any such Non-Offered Note by the Depositor to an affiliate of the Depositor (in which case, the Depositor or any affiliate thereof shall be deemed to have represented that such affiliate is not a Plan or a Person investing Plan Assets) and the Owner Trustee and the Note Registrar shall be entitled to conclusively rely upon a representation (which, upon the request of the Owner Trustee or the Note Registrar, shall be a written representation) from the Depositor of the status of such transferee as an affiliate of the Depositor.

Notwithstanding any provision herein to the contrary, in the event that any restrictions on transfer contained in this Section 4.15 apply to any Note that is a Book-Entry Note, then (i) in lieu of delivering any transfer letter, certificate or affidavit referred to herein, the transferee and/or transferor of any interest in such Note will instead be deemed to have made the

representations and warranties set forth in Exhibits K through Q, as applicable, and (ii) neither the Securities Administrator nor the Note Registrar shall (a) have any duty or obligation to enforce or monitor such transfer restriction or (b) incur any liability in respect of any transfer made in violation of any such restriction on transfer.

ARTICLE V

DEFAULT AND REMEDIES

Section 5.01   Events of Default.   The Issuing Entity shall deliver to the Indenture Trustee, within five days after learning of the occurrence of an Event of Default, written notice in the form of an Officer's Certificate of any event which with the giving of notice and the lapse of time would become an Event of Default under clause (c) or (d) of the definition of "Event of Default", its status and what action the Issuing Entity is taking or proposes to take with respect thereto.  The Indenture Trustee shall not be deemed to have knowledge of any Event of Default unless a Responsible Officer has actual knowledge thereof or unless written notice of such Event of Default is received by a Responsible Officer and such notice references the Notes, the Trust Estate or this Indenture.

Section 5.02   Acceleration of Maturity; Rescission and Annulment.   If an Event of Default should occur and be continuing, then and in every such case the Indenture Trustee (i) with respect to the Notes, at the written direction of the Holders of Notes representing not less than a majority of the aggregate Note Principal Balance of the Notes, and upon any such declaration the unpaid Note Principal Balance of the Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable.

At any time after such declaration of acceleration of maturity with respect to an Event of Default has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter in this Article V provided, (i) with respect to the Notes, the Holders of the Notes representing not less than a majority of the aggregate Note Principal Balance of each Class of Notes, by written notice to the Issuing Entity and the Indenture Trustee, may waive the related Event of Default and rescind and annul such declaration and its consequences if, as certified to the Indenture Trustee:

(a)      the Issuing Entity has paid or deposited with the Securities Administrator a sum sufficient to pay:

(A)      all payments of principal of and interest on the Notes and all other amounts that would then be due hereunder or under the Notes if the Event of Default giving rise to such acceleration had not occurred; and

(B)      all sums paid or advanced by the Indenture Trustee or the Securities Administrator, as applicable, hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee or the Securities Administrator, as applicable, and its respective agents and counsel.

(b)      All Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.12.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03    <u>Collection of Indebtedness and Suits for Enforcement by Indenture Trustee</u>.

(a)    The Issuing Entity covenants that if (i) default is made in the payment of any interest on any Note when the same becomes due and payable, and such default continues for a period of five days, or (ii) default is made in the payment of the principal of or any installment of the principal of any Note when the same becomes due and payable, the Issuing Entity shall, upon demand of the Securities Administrator, with respect to the Notes at the written direction of the Holders of a majority of the aggregate Note Principal Balances of the Notes, pay to the Securities Administrator, the Holders of Notes, the whole amount then due and payable on the related Notes for principal and interest, with interest at the applicable Note Interest Rate upon the overdue principal, and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel.

(b)    In case the Issuing Entity shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, subject to the provisions of Section 4.12 and Section 10.16 hereof, may institute a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuing Entity or other obligor upon the Notes and collect in the manner provided by law out of the property of the Issuing Entity or other obligor upon the Notes, wherever situated, the monies adjudged or decreed to be payable.

(c)    If an Event of Default occurs and is continuing, the Indenture Trustee, subject to the provisions of Section 4.12 and Section 10.16 hereof, may, as more particularly provided in Section 5.04 hereof, in its discretion, proceed to protect and enforce its rights and the rights of the Noteholders by such appropriate Proceedings as directed in writing by the Holders of a majority of the aggregate Note Principal Balances of each Class of Notes, to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d)    In case there shall be pending, relative to the Issuing Entity or any other obligor upon the Notes or any Person having or claiming an ownership interest in the Trust Estate, Proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuing Entity or its property or such other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuing Entity or other obligor upon the Notes, or to the creditors or property of the Issuing Entity or such other obligor, the Indenture Trustee, as directed in writing by the Holders of a majority of the aggregate Note Principal Balances of each Class of Notes, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(i)      to file and prove a claim or claims for the whole amount of principal and interest owing and unpaid in respect of the Notes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful misconduct or bad faith) and of the Noteholders allowed in such Proceedings;

(ii)      unless prohibited by applicable law and regulations, to vote on behalf of the Holders of Notes in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)      to collect and receive any monies or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the Noteholders and of the Indenture Trustee on their behalf, and

(iv)      to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee or the Holders of Notes allowed in any judicial proceedings relative to the Issuing Entity, its creditors and its property;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such Noteholders to make payments to the Indenture Trustee, and, in the event that the Indenture Trustee shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee.

(e)      Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof or to authorize the Indenture Trustee to vote in respect of the claim of any Noteholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f)      All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Indenture Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative thereto, and any such action or proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee

and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Notes, subject to Section 5.05 hereof.

(g)    In any Proceedings brought by the Indenture Trustee (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Indenture Trustee shall be a party), the Indenture Trustee shall be held to represent all the Holders of the Notes, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

(h)    When the Indenture Trustee incurs expenses or renders services in connection with an Event of Default specified in clause (e) of the definition thereof or any other related Proceedings the expenses (including the reasonable charges and expenses of its counsel) and the compensation for the services are intended to constitute expenses of administration under any applicable Federal or state bankruptcy, insolvency or other similar law.

Section 5.04    Remedies; Priorities.

(a)    If an Event of Default shall have occurred and be continuing and if an acceleration has been declared and not rescinded pursuant to Section 5.02 hereof, the Indenture Trustee, subject to the provisions of Section 10.16 hereof, may and shall, with respect to the Notes, at the written direction of the Holders of a majority of the aggregate Note Principal Balances of the Notes, do one or more of the following (subject to Section 5.05 hereof):

(i)    institute Proceedings in its own name and as trustee of an express trust for the collection of all amounts then payable on the Notes or under this Indenture with respect thereto, whether by declaration or otherwise, enforce any judgment obtained, and collect from the Issuing Entity and any other obligor upon such Notes monies adjudged due;

(ii)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Trust Estate;

(iii)    exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and the Holders of the Notes; and

(iv)    sell the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private sales called and conducted in any manner permitted by law;

*provided*, *however*, that the Indenture Trustee may not sell or otherwise liquidate the Trust Estate following an Event of Default, unless (A) the Indenture Trustee receives the consent of the Holders of 100% of the aggregate Note Principal Balance of the Notes then outstanding, (B) it is determined that the proceeds of such sale or liquidation distributable to the Holders of the Notes are sufficient to discharge in full all amounts then due and unpaid upon such Notes for principal and interest or (C) it is determined that the Mortgage Loans and HELOCs will not continue to provide sufficient funds for the payment of principal of and interest on the applicable Notes as they would have become due if the Notes had not been declared due and payable, and the Indenture Trustee receives the consent of the holders of 66 2/3% of the aggregate Note Principal

Balance of the Notes then outstanding.  In determining such sufficiency or insufficiency with respect to clause (B) and (C), the Indenture Trustee may, but need not, obtain and rely upon an opinion (obtained at the expense of the Trust) of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose.  Notwithstanding the foregoing, so long as an Event of RMBS Master Servicer Termination has not occurred, any Sale of the Trust Estate shall be made subject to the continued servicing of the Mortgage Loans by the related Servicer as provided in the related Servicing Agreement.

(b)      If the Indenture Trustee or the Securities Administrator collects any money or property with respect to the Group IV Loans, pursuant to this Article V, it shall pay out the money or property in the following order as determined by the Securities Administrator:

FIRST: to the Indenture Trustee, the Securities Administrator, the RMBS Master Servicer, the HELOC Back-Up Servicer and the Servicers for amounts due and not previously paid under the Basic Documents;

SECOND: to the Class IV-A Cap Contract Provider, any amounts due and unpaid to the Class IV-A Cap Contract Provider under the Class IV-A Cap Contract;

THIRD: to the Group IV Noteholders, the amount of interest then due and unpaid on the related Notes, first, to the Class IV-A Noteholders, the related Accrued Note Interest for such Class, and second, to the Class IV-M Noteholders, sequentially, according to the amounts due and payable on such Notes for interest;

FOURTH: to the Group IV Noteholders the amount of principal then due and unpaid on the Group IV Notes, and to each such Noteholder, pro rata, without preference or priority of any kind, until the Note Principal Balance of each such Class is reduced to zero;

FIFTH: to the Class IV-M Notes, in order of payment priority as set forth in Section 3.38, the amount of any related Allocated Realized Loss Amount not previously paid; and

SIXTH: to the payment of the remainder, if any, to the holders of the Trust Certificates on behalf of the Issuing Entity.

The Securities Administrator may fix a Record Date and Payment Date for any payment to Noteholders pursuant to this Section 5.04.  At least 15 days before such Record Date, the Securities Administrator shall mail to each Noteholder a notice that states the record date, the Payment Date and the amount to be paid.

Section 5.05    Optional Preservation of the Trust Estate.  If the Notes have been declared to be due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, and shall, at the written direction of the Holders of a majority of the aggregate Note Principal Balances of the Notes, elect to take and maintain possession of the Trust Estate.  It is the desire of the parties hereto and the Noteholders that there be at all times sufficient funds for the payment of principal of and interest on the Notes and other obligations of the Issuing Entity and the Indenture Trustee,

shall take such desire into account when determining whether or not to take and maintain possession of the Trust Estate. In determining whether to take and maintain possession of the Trust Estate, the Indenture Trustee may, but need not, obtain and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose.

Section 5.06    <u>Limitation of Suits</u>.    No Holder of any Note, shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless and subject to the provisions of Section 10.16 hereof:

> (i)    such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;

> (ii)    the Holders of not less than 25% of the aggregate Note Principal Balances of the Notes have made a written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

> (iii)    such Holder or Holders have offered to the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in complying with such request;

> (iv)    the Indenture Trustee, for 60 days after its receipt of such notice of request and offer of indemnity, has failed to institute such Proceedings;

> (v)    no direction inconsistent with such written request has been given to the Indenture Trustee during such 60-day period by the Holders of a majority of the Note Principal Balances of the Notes; and

> (vi)    It is understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided.

Subject to the last paragraph of Section 5.11 herein, in the event the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders of Notes, each representing less than a majority of the Note Principal Balances of the Notes, the Indenture Trustee shall take the action requested by the group of Holders representing the largest percentage of the Note Principal Balance.

Section 5.07    <u>Unconditional Rights of Noteholders To Receive Principal and Interest</u>. Notwithstanding any other provisions in this Indenture, the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, if any, on such Note on or after the respective due dates thereof expressed in such Note or in this

Indenture and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 5.08    Restoration of Rights and Remedies.    If the Indenture Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee or to such Noteholder, then and in every such case the Issuing Entity, the Indenture Trustee and the Noteholders shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Indenture Trustee and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.09    Rights and Remedies Cumulative.    No right or remedy herein conferred upon or reserved to the Indenture Trustee or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise.    The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.10    Delay or Omission Not a Waiver.    No delay or omission of the Indenture Trustee or any Holder of any Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein.    Every right and remedy given by this Article V or by law to the Indenture Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.11    Control By Noteholders.    (i) With respect to the Notes, the Holders of a majority of the aggregate Note Principal Balances of Notes, shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the related Notes or exercising any trust or power conferred on the Indenture Trustee; provided that:

(a)    such direction shall not be in conflict with any rule of law or with this Indenture;

(b)    any direction to the Indenture Trustee to sell or liquidate the Trust Estate shall be by Holders of Notes representing not less than 100% of the Note Principal Balances of the Notes; and

(c)    the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction of the Holders of Notes representing a majority of the Note Principal Balances of the Notes.

Notwithstanding the rights of Noteholders set forth in this Section 5.11 the Indenture Trustee need not take any action that it determines might involve it in liability.

Section 5.12    Waiver of Past Defaults.    Prior to the declaration of the acceleration of the maturity of the Notes as provided in Section 5.02 hereof, with respect to the Notes, the Holders

of Notes representing not less than a majority of the aggregate Note Principal Balance of each Class of Notes may waive any past Event of Default and its consequences except an Event of Default (a) with respect to payment of principal of or interest on any of the Notes, or (b) in respect of a covenant or provision hereof which cannot be modified or amended without the consent of the Holder of each Note.  In the case of any such waiver, the Issuing Entity, the Indenture Trustee and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively, but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Upon any such waiver, any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Section 5.13    Undertaking for Costs.    All parties to this Indenture agree, and each Holder of any Note and each Beneficial Owner of any interest therein by such Holder's or Beneficial Owner's acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.13 shall not apply to (a) any suit instituted by the Indenture Trustee, (b) any suit instituted by any Noteholder, or group of Noteholders, in each case holding in the aggregate more than 10% of the Note Principal Balances of the Notes or (c) any suit instituted by any Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture.

Section 5.14    Waiver of Stay or Extension Laws.    The Issuing Entity covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuing Entity (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.15    Sale of Trust Estate.

(a)    The power to effect any sale or other disposition (a "Sale") of any portion of the Trust Estate pursuant to Section 5.04 hereof is expressly subject to the provisions of Sections 5.05 and 5.11(b) hereof and this Section 5.15.  The power to effect any such Sale shall not be exhausted by any one or more Sales as to any portion of the Trust Estate remaining unsold, but shall continue unimpaired until the entire Trust Estate shall have been sold or all amounts payable on the Notes and under this Indenture shall have been paid.  The Indenture Trustee may from time to time postpone any public Sale by public announcement made at the

time and place of such Sale.  The Indenture Trustee hereby expressly waives its right to any amount fixed by law as compensation for any Sale.

(b)     The Indenture Trustee shall not in any private Sale sell the Trust Estate, or any portion thereof, unless

(1)     the Holders of all Notes consent to or direct the Indenture Trustee to make, such Sale, or

(2)     the proceeds of such Sale would be not less than the entire amount which would be payable to the Noteholders under the Notes on the Payment Date next succeeding the date of such Sale, or

(3)     it is determined that the conditions for retention of the Trust Estate set forth in Section 5.05 hereof cannot be satisfied (in making any such determination, the Indenture Trustee may rely upon an opinion of an Independent investment banking firm obtained and delivered as provided in Section 5.05 hereof), the Holders of Notes representing at least 100% of the Note Principal Balances of the Notes consent to such Sale.

The purchase by the Indenture Trustee of all or any portion of the Trust Estate at a private Sale shall not be deemed a Sale or other disposition thereof for purposes of this Section 5.15(b).

(c)     [Reserved]

(d)     In connection with a Sale of all or any portion of the Trust Estate,

(1)     any Holder or Holders of Notes may bid for and purchase the property offered for sale, and upon compliance with the terms of sale may hold, retain and possess and dispose of such property, without further accountability, and may, in paying the purchase money therefor, deliver any Notes or claims for interest thereon in lieu of cash up to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon, and such Notes, in case the amounts so payable thereon shall be less than the amount due thereon, shall be returned to the Holders thereof after being appropriately stamped to show such partial payment;

(2)     the Indenture Trustee may, but is in no event obligated to, bid for and acquire the property offered for Sale in connection with any Sale thereof, and, subject to any requirements of, and to the extent permitted by, applicable law in connection therewith, may purchase all or any portion of the Trust Estate in a private sale, and, in lieu of paying cash therefor, may make settlement for the purchase price by crediting the gross Sale price against the sum of (A) the amount which would be distributable to the Holders of the Notes and Holders of Certificates as a result of such Sale in accordance with Section 5.04(b) hereof on the Payment Date next succeeding the date of such Sale and (B) the expenses of the Sale and of any Proceedings in connection therewith which are reimbursable to it, without being required to produce the Notes in order to complete any such Sale or in order for the net Sale price to be credited against such Notes, and any property so acquired by the Indenture Trustee shall be held and dealt with by it in accordance with the provisions of this Indenture;

(3)     the Indenture Trustee shall execute and deliver an appropriate instrument of

conveyance, prepared by the Issuing Entity and satisfactory to the Indenture Trustee, transferring its interest in any portion of the Trust Estate in connection with a Sale thereof;

(4)     the Indenture Trustee is hereby irrevocably appointed the agent and attorney-in-fact of the Issuing Entity to transfer and convey its interest in any portion of the Trust Estate in connection with a Sale thereof, and to take all action necessary to effect such Sale; and

(5)     no purchaser or transferee at such a Sale shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent or see to the application of any monies.

Section 5.16    <u>Action on Notes</u>.    The Indenture Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture.  Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the Noteholders shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuing Entity or by the levy of any execution under such judgment upon any portion of the Trust Estate or upon any of the assets of the Issuing Entity.  Any money or property collected by the Indenture Trustee or the Securities Administrator shall be applied in accordance with Section 5.04(b) hereof.

Section 5.17    <u>Performance and Enforcement of Certain Obligations</u>.

(a)     Promptly following a request from the Indenture Trustee to do so, the Issuing Entity in its capacity as holder of the Mortgage Loans and HELOCs, shall take all such lawful action as the Indenture Trustee may request to cause the Issuing Entity to compel or secure the performance and observance by the Sponsor and the related Servicer, as applicable, of each of their obligations to the Issuing Entity under or in connection with the Mortgage Loan Purchase Agreement, the Servicing Agreements, and to exercise any and all rights, remedies, powers and privileges lawfully available to the Issuing Entity under or in connection with the Mortgage Loan Purchase Agreement, the Servicing Agreements to the extent and in the manner directed by the Indenture Trustee, as pledgee of the Mortgage Loans, including the transmission of notices of default on the part of the Sponsor or the related Servicer thereunder and the institution of legal or administrative actions or proceedings to compel or secure performance by the Sponsor or the related Servicer of each of their obligations under the Mortgage Loan Purchase Agreement and the Servicing Agreements, as applicable.

(b)     The Indenture Trustee, as pledgee of the Mortgage Loans and the Servicing Agreement, may, and at the direction of  the Holders of 66-2/3% of the Note Principal Balances of the Notes, shall exercise all rights, remedies, powers, privileges and claims of the Issuing Entity against the Sponsor or the related Servicer under or in connection with the Mortgage Loan Purchase Agreement and the Servicing Agreements, including the right or power to take any action to compel or secure performance or observance by the Sponsor or the related Servicer, as the case may be, of each of their obligations to the Issuing Entity thereunder and to give any consent, request, notice, direction, approval, extension or waiver under the Mortgage Loan Purchase Agreement and the Servicing Agreements, as the case may be, and any right of the Issuing Entity to take such action shall not be suspended.

ARTICLE VI

THE INDENTURE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 6.01    Duties of Indenture Trustee and Securities Administrator.

(a)    If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs.

(b)    Except during the continuance of an Event of Default:

(i)    the Indenture Trustee and the Securities Administrator undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee or the Securities Administrator; and

(ii)    in the absence of bad faith on its part, the Indenture Trustee and the Securities Administrator may each conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, reports, documents, Issuing Entity Requests or other instruments or opinions furnished to each of the Indenture Trustee and the Securities Administrator and conforming to the requirements of this Indenture; however, the Indenture Trustee and the Securities Administrator shall examine the certificates, reports, documents, Issuing Entity Requests or other instruments and opinions to determine whether or not they conform to the requirements of this Indenture (but need not confirm or investigate the accuracy of mathematical calculations or other facts stated therein).

(c)    The Indenture Trustee and the Securities Administrator may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)    this paragraph does not limit the effect of paragraph (b) of this Section 6.01;

(ii)    neither the Indenture Trustee nor the Securities Administrator shall be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts;

(iii)    neither the Indenture Trustee nor the Securities Administrator shall be liable with respect to any action it takes or omits to take in good faith in accordance with a written direction received by it

45

from Noteholders, the Certificateholders or the Issuing Entity, which they are entitled to give under the Basic Documents;

(iv)    neither the Indenture Trustee nor the Securities Administrator shall be liable for interest or income on any money received by it, except, in the case of the Securities Administrator, as set forth in the Basic Documents;

(v)    money held in trust by the Indenture Trustee or the Securities Administrator need not be segregated from other trust funds except to the extent required by law or the terms of this Indenture or the Trust Agreement;

(vi)    no provision of this Indenture or other Basic Document shall require the Indenture Trustee or the Securities Administrator to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or indemnity satisfactory to it against such risk or liability is not reasonably assured to it;

(vii)    every provision of this Indenture or other Basic Document relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Section and to the provisions of the TIA;

(viii)    the Indenture Trustee shall enter into and execute and act in accordance with the RMBS Master Servicing Agreement, the RMBS Servicing Agreement, the HELOC Servicing Agreement, the HELOC Back-Up Servicing Agreement and the Trust Agreement; in no event however, shall the Indenture Trustee or the Securities Administrator have any liability for any act or omission of the RMBS Master Servicer, the HELOC Servicer, the RMBS Servicer, the HELOC Back-Up Servicer or the Owner Trustee, and the Indenture Trustee is not responsible for the terms of any such agreement or their sufficiency for any purpose;

(ix)    the Indenture Trustee shall not be deemed to have notice or knowledge of any Default or Event of Default, any Servicer Default or other event unless a Responsible Officer of the Indenture Trustee has actual knowledge thereof or unless written notice of any such event that is in fact an Event of Default, Default, Servicer Default or other event is received by the Indenture Trustee at its Corporate Trust Office and such notice references the Notes or Certificates generally, the Issuing Entity, the Trust Estate or this Indenture;

(x)    the Securities Administrator shall have no liability for any act or omission of the Indenture Trustee; and

(xi)    the Indenture Trustee shall have no liability for any act or omission of the Securities Administrator.

Section 6.02    Rights of Indenture Trustee and the Securities Administrator.

(a)    The Indenture Trustee and the Securities Administrator may rely conclusively on and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by it to be genuine and to have been signed or presented by the proper Person, party or parties.  The Indenture Trustee and the Securities Administrator need not investigate any fact or matter stated in any such document.

(b)    Before the Indenture Trustee or the Securities Administrator acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel.  Neither the Indenture Trustee nor the Securities Administrator shall be liable for any action it takes or omits to take in good faith in reliance on and in accordance with an Officer's Certificate or Opinion of Counsel.

(c)    Subject to the provisions of Section 6.01(c), neither the Indenture Trustee nor the Securities Administrator shall be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers.

(d)    The Indenture Trustee  and the Securities Administrator may each consult with counsel of its selection, and the written advice or Opinion of Counsel with respect to legal matters relating to this Indenture and the Notes or any Basic Document shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the written advice or Opinion of such counsel.

(e)    For the limited purpose of effecting any action to be undertaken by each of the Indenture Trustee and the Securities Administrator, but not specifically as a duty of the Indenture Trustee or the Securities Administrator in the Indenture, each of the Indenture Trustee and the Securities Administrator may execute any of the trusts or powers hereunder or perform any duties hereunder, either directly or by or through agents, attorneys, custodians or nominees appointed with due care, and shall not be responsible for any willful misconduct or negligence on the part of any agent, attorney, custodian or nominee so appointed.

(f)    [Reserved].

(g)    In order to comply with laws, rules and regulations applicable to banking institutions, including those relating to the funding of terrorist activities and money laundering, each of the Indenture Trustee and the Securities Administrator is required to obtain, verify and record certain information relating to individuals and entities which maintain a business relationship with the Indenture Trustee and/or the Securities Administrator.  Accordingly, each of the parties agrees to provide to the Indenture Trustee and/or the Securities Administrator upon its request from time to time such party's complete name, address, tax identification number and such other identifying information together with copies of such party's constituting

47

documentation, securities disclosure documentation and such other identifying documentation as may be available for such party.

(h)     Whenever in the administration of this Indenture the Indenture Trustee or the Securities Administrator shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Indenture Trustee or the Securities Administrator (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, conclusively rely upon an Officer's Certificate of the Issuing Entity.

(i)     The rights, privileges, protections, immunities and benefits given to the Indenture Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Indenture Trustee and the Securities Administrator in each of its capacities hereunder, and to each custodian employed to act hereunder.

(j)     The Indenture Trustee and the Securities Administrator may request that the Issuing Entity deliver an Officer's Certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Officer's Certificate may be signed by any person authorized to sign an Officer's Certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

Section 6.03   <u>Individual Rights</u>.   Each of the Indenture Trustee and the Securities Administrator in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuing Entity or its Affiliates with the same rights it would have if it were not Indenture Trustee or Securities Administrator, as applicable,  subject to the requirements of the Trust Indenture Act.  Any Note Registrar, co-registrar or co-paying agent may do the same with like rights.  However, the Indenture Trustee must comply with Sections 6.11 and 6.12 hereof.

Section 6.04   <u>Indenture Trustee's and Securities Administrator's Disclaimer</u>.   The Indenture Trustee and the Securities Administrator shall not be responsible for and make no representation as to the validity or adequacy of this Indenture, the Notes or any other Basic Document, it shall not be accountable for the Issuing Entity's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Issuing Entity in the Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than with respect to the Securities Administrator's certificate of authentication.

Section 6.05   <u>Notice of Event of Default</u>.  Subject to Section 5.01, the Indenture Trustee shall promptly mail to each Noteholder notice of the Event of Default after it is known to a Responsible Officer of the Indenture Trustee, unless such Event of Default shall have been waived or cured.  Except in the case of an Event of Default in payment of principal of or interest on any Note, the Indenture Trustee may withhold the notice if and so long as a committee of its Responsible Officers in good faith determines that withholding the notice is in the best interests of Noteholders.

Section 6.06    <u>Reports by Securities Administrator to Holders and Tax Administration</u>. The Securities Administrator shall deliver to each Noteholder such information as may be required to enable such holder to prepare its federal and state income tax returns.

The Securities Administrator shall prepare and file (or cause to be prepared and filed), on behalf of the Owner Trustee, all information reports on Form 1099 required to be provided to Noteholders and the Holder of the Certificates.  The Securities Administrator shall prepare and file all tax returns required to be filed on behalf of the Trust pursuant to Section 5.03 of the Trust Agreement.  All tax returns and information reports shall be signed by the Owner Trustee as provided in Section 5.03 of the Trust Agreement.

Section 6.07    <u>Compensation and Indemnity</u>.  The Indenture Trustee is entitled to receive a fee as compensation for its duties as agreed to by the Indenture Trustee and the RMBS Master Servicer, and which shall be paid by the RMBS Master Servicer.  The Indenture Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Securities Administrator is entitled to receive a fee as compensation for its duties as agreed to by the Securities Administrator and the RMBS Master Servicer, and which shall be paid by the RMBS Master Servicer. The Issuing Entity shall reimburse the Indenture Trustee and the Securities Administrator as provided in Section 8.02(c) for all reasonable out-of-pocket expenses incurred or made by it, including costs of collection.  Such expenses shall include reasonable compensation and expenses, disbursements and advances of the Indenture Trustee's or Securities Administrator's agents, counsel, accountants and experts.  The Issuing Entity shall indemnify the Indenture Trustee and the Securities Administrator as provided in Section 8.02(c) against any and all loss, liability, claims, damage, costs or expense (including reasonable attorneys' fees and expenses) incurred by it in connection with the administration of this Trust and the performance of its duties hereunder and under the other Basic Documents.  The Indenture Trustee and the Securities Administrator shall notify the Issuing Entity promptly of any claim for which it may seek indemnity.  Failure by the Indenture Trustee, the Securities Administrator to so notify the Issuing Entity shall not relieve the Issuing Entity of its obligations hereunder.  The Issuing Entity shall defend any such claim, and the Indenture Trustee and the Securities Administrator may have separate counsel and the Issuing Entity shall pay the fees and expenses of such counsel. The Issuing Entity is not obligated to reimburse any expense or indemnify against any loss, liability or expense incurred by the Indenture Trustee, the Securities Administrator or any of its agents, counsel, accountants or experts through the Indenture Trustee's or such agent's, counsel's, accountant's or expert's own willful misconduct, negligence or bad faith.

The Issuing Entity's payment and indemnity obligations to the Indenture Trustee or the Securities Administrator pursuant to this Section 6.07 shall survive the discharge of this Indenture and the termination or resignation of the Indenture Trustee or the Securities Administrator.  If the Indenture Trustee or the Securities Administrator incurs expenses after the occurrence of an Event of Default with respect to the Issuing Entity, the expenses are intended to constitute expenses of administration under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or similar law.

Section 6.08    <u>Replacement of Indenture Trustee and the Securities Administrator</u>.  No resignation or removal of the Indenture Trustee or the Securities Administrator and no appointment of a successor Indenture Trustee or successor Securities Administrator shall become

effective until the acceptance of appointment by the successor Indenture Trustee or successor Securities Administrator pursuant to this Section 6.08.  The Indenture Trustee or the Securities Administrator may resign at any time by so notifying the Issuing Entity.  The Holders of a majority of Note Principal Balances of each Class of Notes may remove the Indenture Trustee or the Securities Administrator by so notifying the Indenture Trustee or the Securities Administrator and may appoint a successor Indenture Trustee or successor Securities Administrator.  The Issuing Entity shall remove the Indenture Trustee or Securities Administrator , as applicable, if:

> (i)    the Indenture Trustee fails to comply with or qualify pursuant to the provisions of Section 6.11 hereof;

> (ii)    the Indenture Trustee or the Securities Administrator is adjudged a bankrupt or insolvent;

> (iii)    a receiver or other public officer takes charge of the Indenture Trustee or the Securities Administrator or its property; or

> (iv)    the Indenture Trustee or the Securities Administrator otherwise becomes incapable of acting.

> (v)    If the Indenture Trustee or the Securities Administrator resigns or is removed or if a vacancy exists in the office of the Indenture Trustee or the Securities Administrator for any reason (the Indenture Trustee or the Securities Administrator in such event being referred to herein as the retiring Indenture Trustee or retiring Securities Administrator), the Issuing Entity shall promptly appoint a successor Indenture Trustee or successor Securities Administrator.

Each of a successor Indenture Trustee or successor Securities Administrator shall deliver a written acceptance of its appointment to the retiring Indenture Trustee, retiring Securities Administrator and to the Issuing Entity.  Thereupon, the resignation or removal of the retiring Indenture Trustee or retiring Securities Administrator shall become effective, and the successor Indenture Trustee or successor Securities Administrator shall have all the rights, powers and duties of the Indenture Trustee or Securities Administrator under this Indenture.  Each of the successor Indenture Trustee and successor Securities Administrator shall mail a notice of its succession to Noteholders.  The retiring Indenture Trustee or retiring Securities Administrator shall promptly transfer all property held by it as Indenture Trustee or Securities Administrator to the successor Indenture Trustee or successor Securities Administrator.

If a successor Indenture Trustee or successor Securities Administrator does not take office within 30 days after the retiring Indenture Trustee or retiring Securities Administrator resigns or is removed, the retiring Indenture Trustee or retiring Securities Administrator, the successor Indenture Trustee or successor Securities Administrator, the Issuing Entity or the Holders of a majority of Note Principal Balances of the Notes may petition any court of competent jurisdiction for the appointment of a successor Indenture Trustee or successor Securities Administrator.

Notwithstanding the replacement of the Indenture Trustee or the Securities Administrator pursuant to this Section, the Issuing Entity's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee or retiring Securities Administrator.

Section 6.09    <u>Successor Indenture Trustee and Successor Securities Administrator by Merger</u>.   If the Indenture Trustee or Securities Administrator consolidates with, merges or converts into, or transfers all or substantially all of its corporate trust business or assets to, another corporation, company or banking association, the resulting, surviving or transferee corporation, without any further act, shall be the successor Indenture Trustee or successor Securities Administrator; provided, that, in the case of the Indenture Trustee, such corporation, company or banking association shall be otherwise qualified and eligible under Section 6.11 hereof.   The Indenture Trustee and Securities Administrator shall each provide the Rating Agencies and the Issuing Entity with prior written notice, and the Noteholders with prompt written notice, of any such transaction.

If at the time such successor or successors by merger, conversion or consolidation to the Securities Administrator and any of the Notes shall have been authenticated but not delivered, any such successor to the Securities Administrator may adopt the certificate of authentication of any predecessor securities administrator and deliver such Notes so authenticated; and if at that time any of the Notes shall not have been authenticated, any successor to the Securities Administrator may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Securities Administrator; and in all such cases such certificates shall have the full force which is in the Notes or in this Indenture provided that the certificate of the Securities Administrator shall have.

Section 6.10    <u>Appointment of Co-Indenture Trustee or Separate Indenture Trustee</u>.

(a)      Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Trust Estate may at the time be located, the Indenture Trustee shall have the power and may execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Trust Estate, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders, such title to the Trust Estate, or any part hereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee may consider necessary or desirable.   No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11 hereof.

(b)      Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions

(i)      all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of

any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Trust Estate or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)    no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)    the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(iv)    Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article VI. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Indenture Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording protection to, the Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(v)    Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

Section 6.11    Eligibility; Disqualification.    (a) The Indenture Trustee shall at all times satisfy the requirements of TIA § 310(a). The Indenture Trustee shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition and it or its parent shall have a long-term debt rating of Baa3 or better by Moody's and BBB or better by Standard & Poor's. The Indenture Trustee shall comply with TIA § 310(b), including the optional provision permitted by the second sentence of TIA § 310(b)(9); *provided*, *however*, that there shall be excluded from the operation of TIA § 310(b)(1) any indenture or indentures under which other securities of the Issuing Entity are outstanding if the requirements for such exclusion set forth in TIA § 310(b)(1) are met.

(b)     The Securities Administrator (i) may not be an Originator, the RMBS Master Servicer, RMBS Servicer, the Depositor or an affiliate of the Depositor unless the Securities Administrator is in an institutional trust department, (ii) must be authorized to exercise corporate trust powers under the laws of its jurisdiction of organization, and (iii) must be rated at least "A/F1" by Fitch, if Fitch is a Rating Agency (or such rating acceptable to Fitch pursuant to a rating confirmation), or the equivalent rating by S&P or Moody's.  If no successor Securities Administrator shall have been appointed and shall have accepted appointment within 60 days after the Securities Administrator ceases to be the securities administrator pursuant to Section 6.08, then the Indenture Trustee shall become the successor Securities Administrator in accordance with this Article VI and in such capacity shall perform the duties of the Securities Administrator pursuant to this Agreement.  The Indenture Trustee shall notify the Rating Agencies of any change of Securities Administrator.

Section 6.12     Preferential Collection of Claims Against Issuing Entity.  The Indenture Trustee shall comply with TIA § 311(a), excluding any creditor relationship listed in TIA § 311(b).  An Indenture Trustee who has resigned or been removed shall be subject to TIA § 311(a) to the extent indicated.

Section 6.13     Representations and Warranties.  The Indenture Trustee hereby represents that:

(a)     The Indenture Trustee is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(b)     The Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Indenture Trustee by all necessary corporate action.

(c)     The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the articles of association or bylaws of the Indenture Trustee or any material agreement or other instrument to which the Indenture Trustee is a party or by which it is bound which would adversely affect its performance under this Indenture; and

(d)     There are no proceedings or investigations pending or to, the Indenture Trustee's knowledge, threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Indenture Trustee: (A) asserting the invalidity of this Indenture (B) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (C) seeking any determination or ruling that might materially and adversely affect the performance by the Indenture Trustee of its obligations under, or the validity or enforceability of, this Indenture.

Section 6.14     Directions to Indenture Trustee.  The Indenture Trustee is hereby directed:

(a)     to accept the pledge of the Mortgage Loans and hold the assets of the Trust Estate in trust for the Noteholders; and

(b)     to take all other actions as shall be required to be taken by it under the terms of this Indenture.

Section 6.15    The Agents.  The provisions of this Indenture relating to the limitations of the Indenture Trustee's liability and to its indemnity, rights and protections shall inure also to the Paying Agent and Note Registrar.

Section 6.16    Administrative Duties.

(a)     The Securities Administrator agrees to perform all of the duties of the Issuing Entity under the Depository Agreement. In addition to its duties performed under the Depository Agreement, the Securities Administrator shall take all appropriate action that is the duty of the Issuing Entity to take with respect to the following matters under the Trust Agreement, the Mortgage Loan Purchase Agreement and the Indenture (references are to sections of the Indenture):

(i)     The Securities Administrator shall notify the Owner Trustee if the Securities Administrator obtains actual knowledge or receives written notice that any withholding tax is imposed on the Trust's payments (or allocations of income) to a Certificateholder;

(ii)     the duty to cause the Note Register to be kept if the Issuing Entity assumes the duties of Note Registrar, and to give the Indenture Trustee notice of any appointment of a new Note Registrar and the location, or change in location, of the Note Register (Section 4.02);

(iii)     causing the preparation of the Notes for execution by the Owner Trustee upon the registration of any transfer or exchange of the Notes or execution of a supplemental indenture (Sections 4.02, 4.03 and 9.06);

(iv)     [reserved];

(v)     causing the preparation of Definitive Notes in accordance with the instructions of any Clearing Agency (including the preparation of any temporary notes) (Section  4.14);

(vi)     the maintenance of an office for registration of transfer or exchange of Notes (Section 3.02);

(vii)     [reserved];

(viii)     [reserved];

(ix)     [reserved];

(x)    the notification to the Owner Trustee of the Issuing Entity's non-compliance with its negative covenants or restricted payment covenants upon actual knowledge or receipt of written notice by a Responsible Officer of the Securities Administrator of such non-compliance (Sections 3.09 and 3.25);

(xi)    the furnishing of the Indenture Trustee with the names and addresses of Holders of Notes during any period when the Securities Administrator is not the Note Registrar (Section 7.01).

(b)    In carrying out the foregoing duties or any of its other obligations under this Indenture, the Securities Administrator and the Indenture Trustee may enter into transactions with or otherwise deal with any of its Affiliates; provided, however, that the terms of any such transactions or dealings shall be in accordance with any directions received from the Issuing Entity and shall be, in the Securities Administrator's or the Indenture Trustee's opinion, no less favorable to the Issuing Entity than would be available from unaffiliated parties.

(c)    The Securities Administrator in its capacity as the Certificate Registrar, and upon a request received from the Owner Trustee, shall promptly notify the Certificateholders of (i) any change in the Corporate Trust Office of the Owner Trustee, (ii) any amendment to the Trust Agreement requiring notice be given to the Certificateholders and (iii) any other notice required to be given to the Certificateholders by the Owner Trustee under the Trust Agreement.

(d)    With respect to matters that in the reasonable judgment of the Indenture Trustee are non-ministerial, the Indenture Trustee shall not take any action pursuant to this Article VII unless within a reasonable time before the taking of such action, the Indenture Trustee shall have notified the Owner Trustee and the Rating Agencies of the proposed action and the Rating Agencies shall have notified the Issuing Entity in writing that such transaction shall not cause their respective ratings of the Notes, to be reduced, qualified, suspended or withdrawn and the Owner Trustee shall not have withheld consent or provided an alternative direction.  For the purpose of the preceding sentence, "non-ministerial matters" shall include:

(i)    the amendment of or any supplement to the Indenture;

(ii)    the initiation of any claim or lawsuit by the Issuing Entity and the compromise of any action, claim or lawsuit brought by or against the Issuing Entity (other than in connection with the collection of the Mortgage Loans);

(iii)    the amendment, change or modification of this Indenture or any of the other Basic Documents; and

(iv)    the appointment of successor Paying Agents and successor Indenture Trustees pursuant to the Indenture or the appointment of a successor RMBS Master Servicer or the consent to the assignment by the Certificate Registrar, Paying Agent or Indenture Trustee of its obligations under the Indenture; and

(v)    the removal of the Indenture Trustee;

provided, however, that the Owner Trustee shall receive notices of items pursuant to clause (i) above and with respect to clause (iii) above to the extent it is a party to the related Basic Document.

Section 6.17    Records.  The Securities Administrator shall maintain appropriate books of account and records relating to services performed under this Indenture, which books of account and records shall be accessible for inspection by the Issuing Entity at any time during normal business hours.

Section 6.18    Additional Information to be Furnished.  The Indenture Trustee shall furnish to the Issuing Entity from time to time such additional information regarding the Mortgage Loans, the HELOCs and the Notes as the Issuing Entity shall reasonably request, to the extent such information is readily available to it.

Section 6.19    Execution of Class IV-A Cap Contract and Other Documents.  (a) The Owner Trustee is hereby directed to execute and deliver the Class IV-A Cap Contract on behalf of Party B (as defined therein) and to exercise the rights, perform the obligations, and make the representations of Party B thereunder, solely in its capacity as Owner Trustee on behalf of Party B (as defined therein) and not in its individual capacity.

The Seller, the Servicers, the RMBS Master Servicer, the HELOC Back-Up Servicer, the Depositor and the Noteholders (by acceptance of their Notes) acknowledge and agree that:

(i)    the Owner Trustee shall execute and deliver the Group IV Contract on behalf of Party B (as defined therein),

(ii)    the Owner Trustee shall exercise the rights, perform the obligations, and make the representations of Party B thereunder, solely in its capacity as Owner Trustee on behalf of Party B (as defined therein) and not in its individual capacity, and

(iii)    the Securities Administrator is hereby directed to exercise the rights and perform the obligations of Party B under the Class IV-A Cap Contract on behalf of the Owner Trustee.

Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Owner Trustee shall apply to the Owner Trustee's execution of the Class IV-A Cap Contract, and the performance of its duties and satisfaction of its obligations thereunder.

Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Securities Administrator shall apply to the Securities Administrator's performance of the duties and obligations of Party B under the Class IV-A Cap Contract.

The Issuing Entity hereby directs the Indenture Trustee to enter into and execute the Servicing Agreements and any related document.    The Owner Trustee hereby acknowledges

receipt by it of the Cap Contract. Upon receipt thereof from the Class IV-A Cap Contract Provider under the Class IV-A Cap Contract, except as otherwise provided herein, the Securities Administrator shall deposit into the Payment Account an amount equal to all amounts actually received by it from the Class IV-A Cap Contract Provider under the Class IV-A Cap Contract, in each case not previously deposited into the Payment Account.

(b)    In the event that the Class IV-A Cap Contract Provider fails to perform any of its obligations under the Class IV-A Cap Contract (including, without limitation, its obligation to make any payment or transfer collateral), or breaches any of its representations and warranties thereunder, or in the event that any Event of Default, Termination Event, or Additional Termination Event (each as defined in the Class IV-A Cap Contract) occurs with respect to the Class IV-A Cap Contract, the Securities Administrator shall, promptly following actual notice of such failure, breach or event by a Responsible Officer of the Securities Administrator, notify the Depositor and send any notices and make any demands, on behalf of the Trust, required to enforce the rights of the Trust under the Class IV-A Cap Contract.

In the event that the Class IV-A Cap Contract Provider's obligations are guaranteed by a third party under a guaranty relating to the Class IV-A Cap Contract (such guaranty the "Guaranty" and such third party the "Guarantor"), then to the extent that the Class IV-A Cap Contract Provider fails to make any payment by the close of business on the day it is required to make payment under the terms of the Class IV-A Cap Contract, the Securities Administrator shall, promptly following actual notice of the Class IV-A Cap Contract Provider's failure to pay, demand that the Guarantor make any and all payments then required to be made by the Guarantor pursuant to such Guaranty; provided, that the Securities Administrator shall in no event be liable for any failure or delay in the performance by the Class IV-A Cap Contract Provider or any Guarantor of its obligations hereunder or pursuant to the Class IV-A Cap Contract and the Guaranty, nor for any special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits) in connection therewith.

Section 6.20    Indenture Trustee's Application For Instructions From the Issuing Entity.

Any application by the Indenture Trustee for written instructions from the Issuing Entity may, at the option of the Indenture Trustee, set forth in writing any action proposed to be taken or omitted by the Indenture Trustee under this Indenture and the date on and/or after which such action shall be taken or such omission shall be effective.  The Indenture Trustee shall not be liable for any action taken by, or omission of, the Indenture Trustee in accordance with a proposal included in such application on or after the date specified in such application (which date shall not be less than three Business Days after the date any officer of the Issuing Entity actually receives such application, unless any such officer shall have consented in writing to any earlier date) unless prior to taking any such action (or the effective date in the case of an omission), the Indenture Trustee shall have received written instructions in response to such application specifying the action to be taken or omitted.

Section 6.21    Limitation of Liability.

It is understood by the parties hereto other than Deutsche Bank National Trust Company (the "Bank") that the sole recourse of the parties hereto other than the Bank in respect of the

obligations of the Trust hereunder and under the other documents contemplated thereby and related thereto to which it is a party shall be to the parties hereto other than the Bank. In addition, the Bank is entering into this Indenture and the other documents contemplated thereby and related thereto to which it is a party solely in its capacity as Indenture Trustee under the Indenture and not in its individual capacity (except as expressly stated herein) and in no case shall the Bank (or any Person acting as successor Indenture Trustee under the Indenture) be personally liable for or on account of any of the statements, representations, warranties, covenants or obligations stated to be those of the Issuing Entity hereunder or thereunder, all such liability, if any, being expressly waived by the parties hereto and any person claiming by, through or under such party, provided, however, that the Bank (or any such successor Indenture Trustee) shall be personally liable hereunder and thereunder for its own negligence or willful misconduct or for its material breach of its covenants, representations and warranties contained herein or therein, to the extent expressly covenanted or made in its individual capacity. In no event shall the Indenture Trustee in any capacity hereunder, be liable under or in connection with this Indenture for indirect, special, incidental, punitive or consequential losses or damages of any kind whatsoever, including but not limited to lost profits, whether or not foreseeable, even if the Indenture Trustee has been advised of the possibility thereof and regardless of the form of action in which such damages are sought. The provisions of this section shall survive the termination of the Indenture and the resignation or removal of the Indenture Trustee.

Section 6.22    Assignment of Rights, Not Assumption of Duties.

Anything herein contained to the contrary notwithstanding, (a) the Issuing Entity shall remain liable under this Indenture and each Basic Document to which it is a party to the extent set forth therein to perform all of its duties and obligations thereunder to the same extent as if this Indenture had not been executed, (b) the exercise by the Indenture Trustee or any Holder of any of their rights, remedies or powers hereunder shall not release the Issuing Entity from any of its duties or obligations under each of such documents to which it is a party and (c) none of any Holder nor the Indenture Trustee shall have any obligation or liability under any of such documents to which the Issuing Entity is a party by reason of or arising out of this Indenture, nor shall any Holder or the Indenture Trustee be obligated to perform any of the obligations or duties of the Issuing Entity thereunder or, except as expressly provided herein with respect to the Indenture Trustee, to take any action to collect or enforce any claim for payment assigned hereunder or otherwise.

Section 6.23    Collateral Account.

The Securities Administrator is hereby directed to perform the obligations of the Custodian as defined under the Group IV Cap Credit Support Annex (the "Group IV Cap Custodian").

On or before the Closing Date, the Group IV Cap Custodian shall establish a Group IV Cap Collateral Account (the "Group IV Cap Collateral Account"). The Group IV Cap Collateral Account shall be held in the name of the Group IV Cap Custodian in trust for the benefit of the Noteholders. The Group IV Cap Collateral Account must be an Eligible Account and shall be entitled "American Home Mortgage Investment Trust 2007-SD1, Mortgage-Backed Notes,

Series 2007-SD1, Group IV Cap Collateral Account, Wells Fargo Bank, N.A., as Group IV Cap Custodian for the benefit of holders of Mortgage-Backed Notes, Series 2007-SD1."

The Group IV Cap Custodian shall credit to Group IV Cap Collateral Account all collateral (whether in the form of cash or securities) posted by the Class IV-A Cap Contract Provider to secure the obligations of the Class IV-A Cap Contract Provider in accordance with the terms of the Class IV-A Cap Contract. Except for investment earnings, the Class IV-A Cap Contract Provider shall not have any legal, equitable or beneficial interest in the Group IV Cap Collateral Account other than in accordance with this Agreement, the Class IV-A Cap Contract and applicable law. The Group IV Cap Custodian shall maintain and apply all collateral and earnings thereon on deposit in the Group IV Cap Collateral Account in accordance with Group IV Cap Credit Support Annex.

Cash collateral posted by the Class IV-A Cap Contract Provider in accordance with the Group IV Cap Credit Support Annex shall be invested at the direction of the Class IV-A Cap Contract Provider in accordance with the requirements of the Group IV Cap Credit Support Annex. All amounts earned on amounts on deposit in the Group IV Cap Collateral Account (whether cash collateral or securities) shall be for the account of and taxable to the Class IV-A Cap Contract Provider.

Upon the occurrence of an Event of Default or Specified Condition (each as defined in the Class IV-A Cap Contract) with respect to the Class IV-A Cap Contract Provider or upon occurrence or designation of an Early Termination Date (as defined in the Class IV-A Cap Contract) as a result of any such Event of Default or Specified Condition with respect to the Class IV-A Cap Contract Provider, and, in either such case, unless the Class IV-A Cap Contract Provider has paid in full all of its Obligations (as defined in the Group IV Cap Credit Support Annex) that are then due, then any collateral posted by the Class IV-A Cap Contract Provider in accordance with the Group IV Cap Credit Support Annex shall be applied to the payment of any Obligations due to Party B (as defined in the Class IV-A Cap Contract) in accordance with the Group IV Cap Credit Support Annex. Any excess amounts held in such Group IV Cap Collateral Account after payment of all amounts owing to Party B under the Class IV-A Cap Contract shall be withdrawn from the Group IV Cap Collateral Account and paid to the Class IV-A Cap Contract Provider in accordance with the Group IV Cap Credit Support Annex.

ARTICLE VII

NOTEHOLDERS' LISTS AND REPORTS

Section 7.01    <u>Issuing Entity To Furnish Indenture Trustee Names and Addresses of Noteholders</u>.  The Securities Administrator on behalf of the Issuing Entity will furnish or cause to be furnished to the Indenture Trustee at such times as the Indenture Trustee may request in writing, within 30 days after receipt by the Issuing Entity of any such request, a list of the names and addresses of the Holders of Notes as of a date not more than 10 days prior to the time such list is furnished.

Section 7.02    <u>Preservation of Information; Communications to Noteholders</u>.

(a)    The Securities Administrator shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Holders of Notes received by the Securities Administrator in its capacity as Note Registrar.  The Securities Administrator may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished..

(b)    Noteholders may communicate pursuant to TIA § 312(b) with other Noteholders with respect to their rights under this Indenture or under the Notes.

(c)    The Issuing Entity, the Indenture Trustee and the Note Registrar shall have the protection of TIA § 312(c).

Section 7.03    [Reserved].

Section 7.04    <u>Reports by Indenture Trustee</u>.  If required by TIA § 313(a) and such requirement is not otherwise satisfied, within 60 days after each January 30 beginning with March 31, 2008, the Indenture Trustee shall prepare, based on information provided to it, and furnish to the Securities Administrator, and the Securities Administrator shall mail to each Noteholder as required by TIA § 313(c), a brief report dated as of such date that complies with TIA § 313(a).  The Indenture Trustee also shall comply with TIA § 313(b).

A copy of each report at the time of its mailing to Noteholders shall be filed by the Securities Administrator with the Commission via EDGAR.

Section 7.05    <u>Statements to Noteholders</u>.  With respect to each Payment Date, the Securities Administrator shall make available via the Securities Administrator's website, initially located at www.ctslink.com, to each Noteholder and each Certificateholder, the Indenture Trustee, each Class IV-A Cap Contract Provider, the Depositor, the Owner Trustee, the Paying Agent and each Rating Agency, a statement setting forth the following information as to the Notes, to the extent applicable:

(i)    the aggregate amount of collections with respect to the Mortgage Loans and HELOCs;

(ii)    the Group IV Available Funds and Net Monthly Excess Cash Flow, payable to each Class of Noteholders for such Payment Date;

(iii)    (a) the amount of such distribution to each Class of Notes applied to reduce the Note Principal Balance thereof and (b) the aggregate amount included therein representing Principal Prepayments;

(iv)    the amount of such distribution to Holders of each Class of Notes allocable to interest;

(v)    the amount of any distribution to the Trust Certificates;

(vi)    if the distribution to the Holders of any Class of Notes is less than the full amount that would be distributable to such Holders if there were sufficient funds available therefor, the amount of the shortfall;

(vii)    the number and the aggregate Stated Principal Balance of the Mortgage Loans and HELOCs as of the end of the related Due Period;

(viii)    the aggregate Note Principal Balance of each Class of Notes, after giving effect to the amounts distributed on such Payment Date, separately identifying any reduction thereof due to Realized Losses and the aggregate Note Principal Balance of all of the Notes after giving effect to the distribution of principal on such Payment Date;

(ix)    the number and aggregate Stated Principal Balances of Mortgage Loans, using the OTS method, (a) as to which the Monthly Payment is delinquent for 31-60 days, 61-90 days, 91 or more days, respectively, (b) in foreclosure and (c) that have become REO Property, in each case as of the end of the preceding calendar month;

(x)    the amount of payments from the Class IV-A Cap Contract;

(xi)    the amount of any Advances and Compensating Interest payments;

(xii)    the aggregate Realized Losses with respect to the related Payment Date and cumulative Realized Losses since the Closing Date;

(xiii)    the number and aggregate Stated Principal Balance of Mortgage Loans and HELOCs repurchased pursuant to the Mortgage Loan Purchase Agreement for the related Payment Date and cumulatively since the Closing Date;

(xiv)    to the extent reported to the Securities Administrator, the book value of any REO Property;

(xv)    the amount of any Prepayment Interest Shortfalls or Relief Act Shortfalls for such Payment Date;

(xvi)  the aggregate Stated Principal Balance of Mortgage Loans and HELOCs purchased pursuant to Section 3.18 of the related Servicing Agreement for the related Payment Date and cumulatively since the Closing Date;

(xvii)  the amounts withdrawn from Loan Group IV and used to make payments to Noteholders on that Payment Date, the amount remaining on deposit following such Payment Date;

(xviii) the HELOC Servicing Fee and RMBS Servicing Fee for such Payment Date;

(xix)  if a Stepdown Date has occurred;

(xx)  the percentage of cumulative losses under a Servicer Termination Event;

(xxi)  the number and aggregate Stated Principal Balances of HELOCs (a) as to which the Monthly Payment are 100 days or more delinquent, (b) in foreclosure or (c) that have become REO Property; and

(xxii)  the aggregated Stated Principal Balance of the three largest HELOCs as of such Payment Date.

Notwithstanding any provisions of this Indenture to the contrary, the statements described in this Section 7.05 may be aggregated with the monthly statements required to be provided by Sections 3.30 and 7.05 of the 2007-A Indenture.

Items (iii)(a) and (iv) above shall be presented on the basis of a Note having a $1,000 denomination.  In addition, by January 31 of each calendar year following any year during which the Notes are outstanding, the Securities Administrator shall furnish a report to each Noteholder of record if so requested in writing at any time during each calendar year as to the aggregate of amounts reported pursuant to (iii)(a) and (iv) with respect to the Notes for such calendar year.

The Securities Administrator may conclusively rely upon the remittance reports provided by the RMBS Master Servicer and the HELOC Servicer to the Securities Administrator pursuant to the RMBS Master Servicing Agreement and the HELOC Servicing Agreement, as applicable, in the Securities Administrator's preparation of its Statement to Noteholders and on information provided to it by the Class IV-A Cap Contract Provider.

The Securities Administrator will make the monthly statements provided for in this Section (and, at its option, any additional files containing the same information in an alternative format) available each month to Noteholders, other parties to this Agreement and any other interested parties via the Securities Administrator's website.  The Securities Administrator's website shall initially be located at www.ctslink.com.  Parties that are unable to use the website are entitled to have a paper copy mailed to them via first class mail by calling the customer service desk at 301-815-6600 and indicating such.  The Securities Administrator may have the right to change the way the monthly statements are distributed in order to make such distribution

more convenient and/or more accessible to the above parties and the Securities Administrator shall provide timely and adequate notification to all above parties regarding any such changes.

The Securities Administrator shall be entitled to rely on but shall not be responsible for the content or accuracy of any information provided by third parties for purposes of preparing the monthly statement, and may affix thereto any disclaimer it deems appropriate in its reasonable discretion (without suggesting liability on the part of any other party hereto).

## ARTICLE VIII

## ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01    Collection of Money.  Except as otherwise expressly provided herein, the Indenture Trustee or the Securities Administrator may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Securities Administrator pursuant to this Indenture. The Securities Administrator shall apply all such money received by it as provided in this Indenture.  Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Trust Estate, of which a Responsible Officer of the Indenture Trustee has actual knowledge or has received written Notice, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article V.

Section 8.02    Trust Accounts.

(a)    On or prior to the Closing Date, the Issuing Entity shall cause the Securities Administrator to establish and maintain, in the name of the Indenture Trustee, for the benefit of the Noteholders, the Payment Account as provided in Section 3.01 hereof.

(b)    All monies deposited from time to time in the Payment Account and the Certificate Distribution Account and all deposits therein pursuant to this Indenture (other than deposits of any gain or income on investments thereof) are for the benefit of the Noteholders and the Certificateholders.   The funds in the Certificate Distribution Account shall be held uninvested. The amount at any time credited to the Payment Account may be invested in the name of the Securities Administrator, in the Permitted Investments, or deposited in demand deposits with such depository institutions, as determined by the Securities Administrator.  All Permitted Investments shall mature or be subject to redemption or withdrawal on or before, and shall be held until, the next succeeding Payment Date if the obligor for such Permitted Investment is the Securities Administrator or, if such obligor is any other Person, the Business Day preceding such Payment Date

(c)    On each Payment Date, the Securities Administrator as Paying Agent, shall be entitled to withdraw from the Payment Account the all amounts reimbursable by the Issuing Entity or from the Payment Account to the Indenture Trustee, the Securities Administrator and the other parties specified therein pursuant to Section 8.09 hereof and any provision of any Basic Document, and shall distribute all remaining amounts on deposit in the Payment Account to the Noteholders in respect of the Notes and to such other persons in the order of priority set forth in Section 3.05 hereof (except as otherwise provided in Section 5.04(b) hereof).

Section 8.03    Officer's Certificate.  The Indenture Trustee shall receive at least seven Business Days' notice when requested by the Issuing Entity to take any action pursuant to Section 8.05(a) hereof, accompanied by copies of any instruments to be executed, and the

Indenture Trustee shall also require, as a condition to such action, an Officer's Certificate, in form and substance satisfactory to the Indenture Trustee, stating the legal effect of any such action, outlining the steps required to complete the same, and concluding that all conditions precedent to the taking of such action have been complied with.

Section 8.04    <u>Termination Upon Distribution to Noteholders</u>.  This Indenture and the respective obligations and responsibilities of the Issuing Entity, the Securities Administrator and the Indenture Trustee created hereby shall terminate upon the distribution to Noteholders, the Certificate Paying Agent on behalf of the Certificateholders and the Indenture Trustee of all amounts required to be distributed pursuant to Article III; *provided, however,* that in no event shall the trust created hereby continue beyond the expiration of 21 years from the death of the survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof.

Section 8.05    <u>Release of Trust Estate</u>.

(a)    Subject to the payment of its fees and expenses, the Indenture Trustee may, and when required by the provisions of this Indenture shall, execute instruments to release property from the lien of this Indenture, or convey the Indenture Trustee's interest in the same, in a manner and under circumstances that are not inconsistent with the provisions of this Indenture, including for the purposes of any repurchase by the RMBS Servicer of a Mortgage Loan pursuant to Section 3.18 of the related Servicing Agreement.  No party relying upon an instrument executed by the Indenture Trustee as provided in Article VIII hereunder shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent, or see to the application of any monies.

(b)    The Indenture Trustee shall, at such time as (i) there are no Notes Outstanding and (ii) all sums then due and unpaid to the Indenture Trustee, the Securities Administrator and the RMBS Master Servicer pursuant to this Indenture have been paid, release any remaining portion of the Trust Estate that secured the Notes from the lien of this Indenture.

(c)    The Indenture Trustee shall release property from the lien of this Indenture pursuant to this Section 8.05 only upon receipt of a request from the Issuing Entity accompanied by an Officers' Certificate and an Opinion of Counsel stating that all applicable requirements have been satisfied, except as otherwise provided in clause (a).

Section 8.06    <u>Surrender of Notes Upon Final Payment</u>.  By acceptance of any Note, the Holder thereof agrees to surrender such Note to the Note Registrar promptly, prior to such Noteholder's receipt of the final payment thereon.

Section 8.07    <u>Optional Redemption of the Notes</u>.

(a)    The Holder of the Trust Certificate, or if there is no single holder, the Majority Certificateholder shall have the option to purchase the Group IV Loans and the related the assets of the Trust and thereby redeem the Group IV Notes after the Payment Date on which the aggregate Stated Principal Balance of the Group IV Loans, and properties acquired in respect thereof has been reduced to less than 20% of the aggregate Stated Principal Balance of the Group IV Loans as of the Cut-off Date.

(b)    The aggregate redemption price (the "Redemption Price") for the Group IV Notes in connection with any termination pursuant to clause (a) above will be equal to 100% of the aggregate outstanding Note Principal Balance of the related Notes plus and accrued and unpaid interest thereon at the Note Interest Rate through the date on which the related Notes are redeemed in full together with all amounts due and owing to the RMBS Master Servicer, the Services, the HELOC Back-Up Servicer and the Securities Administrator and the Indenture Trustee under this Indenture or any other applicable Basic Document (which amounts shall be specified in writing upon request of the Issuing Entity by the Indenture Trustee, the Securities Administrator, the Servicers, the HELOC Back-Up Servicer or the RMBS Master Servicer, as applicable).

(c)    In order to exercise the foregoing option with respect to any Notes, the Majority Certificateholder shall provide written notice of its exercise of such option and the Redemption Price to the Indenture Trustee, the Securities Administrator, the Issuing Entity, the Owner Trustee, the RMBS Master Servicer and the applicable Servicer at least 15 days prior to its exercise.  Following receipt of the notice, the Securities Administrator shall provide written notice to the applicable Noteholders of the final payment on the applicable Notes.  In addition, the Majority Certificateholder shall, not less than one Business Day prior to the proposed Payment Date on which such redemption is to be made, deposit the Redemption Price specified in (b) above with the Securities Administrator, who shall deposit the Redemption Price into the Payment Account and shall, on the Payment Date after receipt of the funds, apply such funds to make final payments of principal and interest on the Notes in accordance with Sections 3.05 or 3.06, as applicable, hereof and payment to itself, the Securities Administrator and the RMBS Master Servicer as set forth in (b) above.  If for any reason the amount deposited by the Majority Certificateholder is not sufficient to make such redemption or as the Indenture Trustee or the Securities Administrator is notified such redemption cannot be completed for any reason, (a) the amount so deposited by the Majority Certificateholder with the Securities Administrator shall be immediately returned to the Majority Certificateholder in full and shall not be used for any other purpose or be deemed to be part of the Trust Estate and (b) the Note Principal Balance of the applicable Notes shall continue to bear interest at the related Note Interest Rate.

Section 8.08    Collection of Mortgage Loan Payments.

The Securities Administrator shall establish a segregated account in the name of the Securities Administrator for the benefit of the Noteholders (the "Payment Account"), which shall be an Eligible Account, in which the Securities Administrator shall deposit or cause to be deposited any amounts representing payments on and any collections in respect of the Mortgage Loans due subsequent to the Cut-off Date (other than in respect of the payments referred to in the following paragraph) within forty-eight (48) hours following receipt thereof, including the following payments and collections received or made by it (without duplication):

(i)    Any amounts withdrawn from a Protected Account and remitted to the Securities Administrator by the related Servicer;

(ii)    Any Monthly Advance and any Compensating Interest Payments required to be made by the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer;

66

(iii)    Any amounts required to be deposited with respect to losses on investments of deposits in the Protected Account and remitted to the Securities Administrator by the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer and any amounts required to be deposited with respect to losses on investments of deposits in the Payment Account and remitted by the RMBS Master Servicer or the HELOC Servicer to the Securities Administrator; and

(iv)    Any other amounts received by or on behalf of the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer and required to be deposited in the Payment Account pursuant to the RMBS Master Servicing Agreement or the related Servicing Agreement.

All amounts deposited to the Payment Account shall be held by the Securities Administrator in the name of the Indenture Trustee in trust for the benefit of the Noteholders in accordance with the terms and provisions of the RMBS Master Servicing Agreement or the related Servicing Agreement and this Indenture. The requirements for crediting the Payment Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of (i) late payment charges or assumption, tax service, statement account or payoff, substitution, satisfaction, release and other like fees and charges, need not be credited by the RMBS Master Servicer, Securities Administrator, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer to the Payment Account or remitted by the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer to the Securities Administrator for deposit in the Payment Account, as applicable. In the event that the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer shall remit or cause to be remitted to the Securities Administrator for deposit to the Payment Account any amount not required to be credited thereto, the Securities Administrator, upon receipt of a written request therefor signed by a Servicing Officer of the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer, shall promptly transfer such amount to the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer, any provision herein to the contrary notwithstanding.

The amount at any time credited to the Payment Account may be invested, in the name of the Indenture Trustee, or its nominee, for the benefit of the Noteholders, in Eligible Investments. All Eligible Investments shall mature or be subject to redemption or withdrawal on or before, and shall be held until, the next succeeding Payment Date. Any and all investment earnings on amounts on deposit in the Payment Account from time to time shall be for the account of the RMBS Master Servicer. The Securities Administrator from time to time shall be permitted to withdraw or receive distribution of any and all investment earnings from the Payment Account for payment to the RMBS Master Servicer.  The risk of loss of moneys required to be distributed to the Noteholders resulting from such investments shall be borne by and be the risk of the RMBS Master Servicer. The RMBS Master Servicer shall deposit the amount of any such loss in the Payment Account within two Business Days of receipt of notification of such loss but not later than the Business Day prior to the Payment Date on which the moneys so invested are required to be distributed to the Noteholders.

Section 8.09    <u>Withdrawals from the Payment Account</u>.

(a)     The Securities Administrator shall, from time to time as provided herein, make withdrawals from the Payment Account of amounts on deposit therein pursuant to this Section 8.09 that are attributable to the Mortgage Loans for the following purposes (without duplication):

(i)     To make payments to the Noteholders and Certificateholders as provided in this Indenture and the Trust Agreement on a Payment Date;

(ii)     to the extent deposited to the Payment Account, to reimburse the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer for previously unreimbursed expenses incurred in maintaining individual insurance policies pursuant to Sections 3.10 or 3.11 of the related Servicing Agreement, or Liquidation Expenses, paid pursuant to Section 3.13 of the related Servicing Agreement or otherwise reimbursable pursuant to the terms of the RMBS Master Servicing Agreement or the related Servicing Agreement, such withdrawal right being limited to amounts received on the related Mortgage Loans (other than any Repurchase Price in respect thereto) which represent late recoveries of the payments for which such advances were made, or from related Liquidation Proceeds;

(iii)     reserved;

(iv)     to pay to the Sponsor, with respect to any Mortgage Loan or HELOC or property acquired in respect thereof that has been purchased or otherwise transferred to the Sponsor, all amounts received thereon and not required to be distributed to Noteholders as of the date on which the related Purchase Price or Repurchase Price is determined;

(v)     to reimburse the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer for any Monthly Advance of its own funds or any advance of such party's own funds, the right of the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer to reimbursement pursuant to this subclause (v) being limited to amounts received (including, for this purpose, the Repurchase Price therefor, Insurance Proceeds and Liquidation Proceeds) which represent late payments or recoveries of the principal of or interest on such Mortgage Loan or HELOC respecting which such Monthly Advance or advance was made;

(vi)     to reimburse the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer from Insurance Proceeds or Liquidation Proceeds relating to a particular Mortgage Loan or HELOC for amounts expended by the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer pursuant to Section 3.13 of the related Servicing Agreement in connection with the restoration of the related Mortgaged Property which was damaged by the Uninsured Cause or in connection with the liquidation of such Mortgage Loan or HELOC;

(vii)    to pay the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer, as appropriate, from Liquidation Proceeds or Insurance Proceeds received in connection with the liquidation of any Mortgage Loan or HELOC, the amount which such party would have been entitled to receive under subclause (ii) of this Subsection 8.09(a) as servicing compensation on account of each defaulted Monthly Payment on such Mortgage Loan or HELOC if paid in a timely manner by the related Mortgagor, but only to the extent that the aggregate of Liquidation Proceeds and Insurance Proceeds with respect to such Mortgage Loan or HELOC, after any reimbursement to the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer, pursuant to other subclauses of this Subsection 8.09 (a), exceeds the outstanding Stated Principal Balance of such Mortgage Loan or HELOC plus accrued and unpaid interest thereon at the related Mortgage Rate less the related Servicing Fee Rate to but not including the date of payment (in any event, the aggregate amount of servicing compensation received by the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer with respect to any defaulted Monthly Payment shall not exceed the applicable Servicing Fee);

(viii)    to reimburse the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer for any Nonrecoverable Advance previously made, and not otherwise reimbursed pursuant to this Subsection 8.09(a);

(ix)    to reimburse the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer for any Monthly Advance or advance, after a Realized Loss has been allocated with respect to the related Mortgage Loan or HELOC if the Monthly Advance or advance has not been reimbursed pursuant to clause (v);

(x)    to reimburse the RMBS Master Servicer for expenses, costs and liabilities incurred by and reimbursable to it pursuant to Sections 3.02 and 5.03 of the RMBS Master Servicing Agreement, to the extent that the RMBS Master Servicer has not already reimbursed itself for such amounts from the Payment Account;

(xi)    to pay to the RMBS Servicer, as additional servicing compensation, any Foreclosure Profit to the extent not retained by the RMBS Servicer;

(xii)    to reimburse or pay the RMBS Servicer any such amounts as are due thereto under the RMBS Servicing Agreement and have not been retained by or paid to the RMBS Servicer, to the extent provided in the RMBS Servicing Agreement;

(xiii)    to reimburse the Securities Administrator, the RMBS Master Servicer, the Indenture Trustee and the Owner Trustee for expenses, costs and liabilities incurred by or reimbursable to it pursuant to this RMBS Master

Servicing Agreement, this Indenture and the Other Basic Documents, to the extent such amounts have not already been paid or reimbursed to such parties from the Payment Account;

(xiv)    to withdraw any other amount deposited in the Payment Account that was not required to be deposited therein pursuant to Section 3.06; and

(xv)    to clear and terminate the Payment Account following a termination of the Trust pursuant to Section 8.01 of the Trust Agreement.

(xvi)    In connection with withdrawals pursuant to clauses (ii), (iii), (iv), (v), (vi), (vii) and (ix), the RMBS Master Servicer's and RMBS Servicer's entitlement thereto is limited to collections or other recoveries on the related Mortgage Loan, and the RMBS Master Servicer and RMBS Servicer shall keep and maintain separate accounting, on a Mortgage Loan by Mortgage Loan basis, for the purpose of justifying any withdrawal from the Payment Account pursuant to such clauses.

(b)    Notwithstanding the provisions of this Section 8.09, the related Servicer is entitled to deduct from amounts received by it or from the related account maintained by such Servicer, prior to deposit in the Payment Account, any portion to which such Servicer is entitled under the applicable Servicing Agreement as servicing compensation (including income on Eligible Investments) or reimbursement of any reimbursable Monthly Advances or Servicing Advances made by such Servicer.

## ARTICLE IX

## SUPPLEMENTAL INDENTURES

Section 9.01    Supplemental Indentures Without Consent of Noteholders.

(a)    Without the consent of the Holders of any Notes but with prior notice to the Rating Agencies and the Owner Trustee, the Issuing Entity, the Securities Administrator and the Indenture Trustee, when authorized by an Issuing Entity Request, at any time and from time to time, may enter into one or more indentures supplemental hereto (which shall conform to the provisions of the TIA as in force at the date of the execution thereof), in form satisfactory to the Indenture Trustee, for any of the following purposes:

(i)    to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Indenture Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property;

(ii)    to evidence the succession, in compliance with the applicable provisions hereof, of another person to the Issuing Entity, and the assumption by any such successor of the covenants of the Issuing Entity herein and in the Notes contained;

70

(iii)    to add to the covenants of the Issuing Entity, for the benefit of the Holders of the Notes, or to surrender any right or power herein conferred upon the Issuing Entity;

(iv)    to convey, transfer, assign, mortgage or pledge any property to or with the Indenture Trustee;

(v)    to cure any ambiguity, to correct or supplement any provision herein or in any supplemental indenture that may be inconsistent with any other provision herein or in any supplemental indenture;

(vi)    to make any other provisions with respect to matters or questions arising under this Indenture or in any supplemental indenture; provided, that such action shall not materially and adversely affect the interests of the Holders of the Notes as evidenced by an Opinion of Counsel;

(vii)    to evidence and provide for the acceptance of the appointment hereunder by a successor trustee with respect to the Notes and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article VI hereof; or

(viii)    to modify, eliminate or add to the provisions of this Indenture to such extent as shall be necessary to effect the qualification of this Indenture under the TIA or under any similar federal statute hereafter enacted and to add to this Indenture such other provisions as may be expressly required by the TIA as evidenced by an Opinion of Counsel;

provided, however, that no such indenture supplements shall be entered into unless the Indenture Trustee shall have received an Opinion of Counsel as to the enforceability of any such indenture supplement, and that, except for indenture supplements entered into for the purposes described in (v) and (viii) above, such indenture supplements shall not adversely affect in any material respect the interests of any Noteholder and to the effect that (i) such indenture supplement is permitted hereunder and (ii) entering into such indenture supplement will not result in a "substantial modification" of the Notes under Treasury Regulation Section 1.1001-3 or adversely affect the status of the Notes as indebtedness for federal income tax purposes.

The Indenture Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

(b)    The Issuing Entity, the Securities Administrator and the Indenture Trustee, when authorized by an Issuing Entity Request, may, also without the consent of any of the Holders of the Notes and prior notice to the Rating Agencies, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or

eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; *provided, however,* that such action as evidenced by an Opinion of Counsel, (i) is permitted by this Indenture, (ii) shall not adversely affect in any material respect the interests of any Noteholder and (iii) if 100% of the Certificates and the Retained Notes (to the extent that such Retained Notes have not received a "will be debt" opinion) are not owned by American Home Mortgage Acceptance, Inc., cause the Issuing Entity to be subject to an entity level tax for federal income tax purposes.

Section 9.02    <u>Supplemental Indentures With Consent of Noteholders</u>.    The Issuing Entity, the Securities Administrator and the Indenture Trustee, when authorized by an Issuing Entity Request, also may, with prior notice to the Rating Agencies and, with the consent of the Holders of not less than a majority of the Note Principal Balance of each Class of Notes affected thereby, by Act (as defined in Section 10.03 hereof) of such Holders, delivered to the Issuing Entity, the Securities Administrator and the Indenture Trustee, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; *provided, however,* that no such supplemental indenture shall, without the consent of the Holder of each Note affected thereby:

(i)    change the date of payment of any installment of principal of or interest on any Note, or reduce the principal amount thereof or the interest rate thereon, change the provisions of this Indenture relating to the application of collections on, or the proceeds of the sale of, the Trust Estate and to payment of principal of or interest on the Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(ii)    reduce the percentage of the Note Principal Balances of the Notes, or any Class of Notes, the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(iii)    modify or alter the provisions of the proviso to the definition of the term "Outstanding" or modify or alter the exception in the definition of the term "Holder";

(iv)    reduce the percentage of the Note Principal Balances of the Notes, or any Class of Notes, required to direct the Indenture Trustee to direct the Issuing Entity to sell or liquidate the Trust Estate pursuant to Section 5.04 hereof;

(v)    modify any provision of this Section 9.02 except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture or the Basic Documents cannot be modified or waived without the consent of the Holder of each Note affected thereby;

(vi)    modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Note on any Payment Date (including the calculation of any of the individual components of such calculation); or

(vii)    permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Trust Estate or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive the Holder of any Note of the security provided by the lien of this Indenture;

Any such action shall not adversely affect in any material respect the interest of any Holder (other than a Holder who shall consent to such supplemental indenture) as evidenced by an Opinion of Counsel (provided by the Person requesting such supplemental indenture) delivered to the Indenture Trustee.

It shall not be necessary for any Act of Noteholders under this Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Promptly after the execution by the Issuing Entity, the Securities Administrator and the Indenture Trustee of any supplemental indenture pursuant to this Section 9.02, the Indenture Trustee shall mail to the Owner Trustee and the Holders of the Notes to which such amendment or supplemental indenture relates a notice setting forth in general terms the substance of such supplemental indenture.  Any failure of the Indenture Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 9.03    Execution of Supplemental Indentures.  In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article VI or the modification thereby of the trusts created by this Indenture, the Indenture Trustee shall be entitled to receive, and subject to Sections 6.01 and 6.02 hereof, shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture and that all conditions precedent thereto have been complied with.  The Indenture Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section 9.04    Effect of Supplemental Indenture.    Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and shall be

deemed to be modified and amended in accordance therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Issuing Entity and the Holders of the Notes shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture and the Notes for any and all purposes.

Section 9.05    Conformity with Trust Indenture Act.  Every amendment of this Indenture and every supplemental indenture executed pursuant to this Article IX shall conform to the requirements of the Trust Indenture Act as then in effect so long as this Indenture shall then be qualified under the Trust Indenture Act.

Section 9.06    Reference in Notes to Supplemental Indentures.  Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article IX may, and if required by the Securities Administrator shall, bear a notation in form approved by the Depositor as to any matter provided for in such supplemental indenture.  If the Issuing Entity or the Securities Administrator shall so determine, new Notes so modified as to conform, in the opinion of the Securities Administrator and the Issuing Entity, to any such supplemental indenture may be prepared and executed by the Issuing Entity and authenticated and delivered by the Securities Administrator in exchange for Outstanding Notes.

ARTICLE X

MISCELLANEOUS

Section 10.01  Compliance Certificates and Opinions, etc.  (a) Upon any application or request by the Issuing Entity to the Indenture Trustee to take any action under any provision of this Indenture, the Issuing Entity shall furnish to the Indenture Trustee (i) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1)    a statement that each signatory of such certificate or opinion has read or has caused to be read such covenant or condition and the definitions herein relating thereto;

(2)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)    a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation as is necessary to enable such signatory to express an

74

informed opinion as to whether or not such covenant or condition has been complied with;

(4)    a statement as to whether, in the opinion of each such signatory, such condition or covenant has been complied with; and

(5)    if the signatory of such certificate or opinion is required to be Independent, the statement required by the definition of the term "Independent".

(b)    Prior to the deposit of any Collateral or other property or securities with the Indenture Trustee that is to be made the basis for the release of any property or securities subject to the lien of this Indenture, the Issuing Entity shall, in addition to any obligation imposed in Section 10.01 (a) or elsewhere in this Indenture, furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days prior to such deposit) to the Issuing Entity of the Collateral or other property or securities to be so deposited and a report from a nationally recognized accounting firm verifying such value.

(c)    Whenever the Issuing Entity is required to furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of any signer thereof as to the matters described in clause (i) above, the Issuing Entity shall also deliver to the Indenture Trustee an Independent Certificate from a nationally recognized accounting firm as to the same matters, if the fair value of the securities to be so deposited and of all other such securities made the basis of any such withdrawal or release since the commencement of the then current fiscal year of the Issuing Entity, as set forth in the certificates delivered pursuant to clause (i) above and this clause (ii), is 10% or more of the Note Principal Balances of the Notes, but such a certificate need not be furnished with respect to any securities so deposited, if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the then outstanding Note Principal Balances of the Notes.

(d)    Whenever any property or securities are to be released from the lien of this Indenture, the Issuing Entity shall also furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days prior to such release) of the property or securities proposed to be released and stating that in the opinion of such person the proposed release will not impair the security under this Indenture in contravention of the provisions hereof.

(e)    Whenever the Issuing Entity is required to furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of any signer thereof as to the matters described in clause (iii) above, the Issuing Entity shall also furnish to the Indenture Trustee an Independent Certificate as to the same matters if the fair value of the property or securities and of all other property or securities released from the lien of this Indenture since the commencement of the then-current calendar year, as set forth in the certificates required by clause (iii) above and this clause (iv), equals 10% or more of the Note Principal Balances of the Notes, but such certificate need not be furnished in the case of any release of property or securities if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the then outstanding Note Principal Balances of the Notes.

Section 10.02  Form of Documents Delivered to Indenture Trustee.  In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuing Entity may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous.  Any such certificate of an Authorized Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Sponsor or the Issuing Entity, stating that the information with respect to such factual matters is in the possession of the Sponsor or the Issuing Entity, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee, it is provided that the Issuing Entity shall deliver any document as a condition of the granting of such application, or as evidence of the Issuing Entity's compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such application or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such document shall in such case be conditions precedent to the right of the Issuing Entity to have such application granted or to the sufficiency of such certificate or report.  The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 10.03  Acts of Noteholders.

(a)    Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the Issuing Entity.  Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01 hereof) conclusive in

favor of the Indenture Trustee and the Issuing Entity, if made in the manner provided in this Section 10.03 hereof.

(b)    The fact and date of the execution by any person of any such instrument or writing may be proved in any manner that the Indenture Trustee deems sufficient.

(c)    The ownership of Notes shall be proved by the Note Registrar.

(d)    Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee or the Issuing Entity in reliance thereon, whether or not notation of such action is made upon such Note.

Section 10.04  Notices etc., to Indenture Trustee, Issuing Entity, Securities Administrator and Rating Agencies.  Any request, demand, authorization, direction, notice, consent, waiver or act of Noteholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or act of Noteholders is to be made upon, given or furnished to or filed with:

(a)    the Indenture Trustee by any Noteholder or by the Issuing Entity shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Indenture Trustee at the Corporate Trust Office.  All notices to the Indenture Trustee shall be deemed effective only upon actual receipt.  The Indenture Trustee shall promptly transmit any material notice received by it from the Noteholders to the Issuing Entity; or

(b)    the Issuing Entity by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing and mailed first-class, postage prepaid to the Issuing Entity addressed to: American Home Mortgage Investment Trust 2007-SD1, in care of Wilmington Trust Company, City of Wilmington, County of New Castle, State of Delaware at Rodney Square North, 1100 North Market Street, Wilmington, DE 19890, or at any other address previously furnished in writing to the Indenture Trustee by the Issuing Entity.  The Issuing Entity shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee; or

(c)    the Securities Administrator by the Indenture Trustee, any Noteholder or by the Issuing Entity shall be sufficient if made, given, furnished or filed in writing and mailed first-class, postage prepaid to the Securities Administrator addressed to: P.O. Box 98, Columbia, MD 21046 or for overnight deliveries, 9062 Old Annapolis Road, Columbia, MD, 21045, Attention: AHM 2007-SD1, or at any other address previously furnished in writing to the Indenture Trustee by the Securities Administrator.  The Securities Administrator shall promptly transmit any written notice received by it from the Noteholders to the Indenture Trustee and the Issuing Entity; or

(d)    Notices required to be given to the Rating Agencies by the Issuing Entity, the Indenture Trustee or the Owner Trustee shall be in writing, mailed first-class postage pre-paid, (i) to S&P, at the following address: Standard & Poor's, 55 Water Street, 41st Floor, New York, New York 10041; and (ii) to Moody's, at the following address: Moody's Investors Service, Inc.,

99 Church Street, New York, New York 10007; or as to each of the foregoing, at such other address as shall be designated by written notice to the other parties.

Section 10.05 <u>Notices to Noteholders; Waiver</u>.  Where this Indenture provides for notice to Noteholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if made, given, furnished or filed in writing and mailed, first-class, postage prepaid to each Noteholder affected by such event, at such Person's address as it appears on the Note Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.  In any case where notice to Noteholders is given by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder shall affect the sufficiency of such notice with respect to other Noteholders, and any notice that is mailed in the manner herein provided shall conclusively be presumed to have been duly given regardless of whether such notice is in fact actually received.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.  Waivers of notice by Noteholders shall be filed with the Indenture Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agencies, failure to give such notice shall not affect any other rights or obligations created hereunder, and shall not under any circumstance constitute an Event of Default.

Section 10.06 <u>Conflict with Trust Indenture Act</u>.  If any provision hereof limits, qualifies or conflicts with another provision hereof that is required to be included in this Indenture by any of the provisions of the Trust Indenture Act, such required provision shall control.

The provisions of TIA §§ 310 through 317 that impose duties on any Person (including the provisions automatically deemed included herein unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

Section 10.07 <u>Effect of Headings</u>.  The Article and Section headings herein are for convenience only and shall not affect the construction hereof.

Section 10.08 <u>Successors and Assigns</u>.  All covenants and agreements in this Indenture and the Notes by the Issuing Entity shall bind its successors and assigns, whether so expressed or not.  All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 10.09  Separability.  In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 10.10  Benefits of Indenture.  Nothing in this Indenture or in the, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Noteholders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 10.11  Legal Holidays.  In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 10.12  GOVERNING LAW.  THIS INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS EXCEPT SECTIONS 5-1401 AND 5-1402 OF NEW YORK GENERAL OBLIGATIONS LAWS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

The parties to this Indenture each hereby irrevocably submits to the non exclusive jurisdiction of any New York State or federal court sitting in the Borough of Manhattan in The City of New York in any action or proceeding arising out of or relating to the Notes, this Indenture or the transactions contemplated hereby, and all such parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such New York State or federal court and hereby irrevocably waive, to the fullest extent that they may legally do so, the defense of an inconvenient forum to the maintenance of such action or proceeding.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS INDENTURE, THE NOTES OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 10.13  Counterparts.  This Indenture may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 10.14  Recording of Indenture.  If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuing Entity and at its expense accompanied by an Opinion of Counsel at its expense (which may be counsel to the Indenture Trustee or any other counsel reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 10.15 <u>Issuing Entity Obligation</u>.    No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuing Entity, the Owner Trustee or the Indenture Trustee on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuing Entity or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Indenture Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuing Entity, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner Trustee have no such obligations in their individual capacity) and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing to such entity.    For all purposes of this Indenture, in the performance of any duties or obligations of the Issuing Entity hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Article VI, VII and VIII of the Trust Agreement.

Section 10.16 <u>No Petition</u>.    The Indenture Trustee, by entering into this Indenture, and each Noteholder, by accepting a Note, hereby covenant and agree that they will not at any time prior to one year from the date of termination hereof, institute against the Depositor or the Issuing Entity, or join in any institution against the Depositor or the Issuing Entity of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the Basic Documents, provided, however, that nothing herein shall prohibit the Indenture Trustee from filing proofs of claim.

Section 10.17 <u>Inspection</u>.    The Issuing Entity agrees that, at its expense, on reasonable prior notice, it shall permit any representative of the Indenture Trustee, during the Issuing Entity's normal business hours, to examine all the books of account, records, reports and other papers of the Issuing Entity, to make copies and extracts therefrom, to cause such books to be audited by Independent certified public accountants, and to discuss the Issuing Entity's affairs, finances and accounts with the Issuing Entity's officers, employees, and Independent certified public accountants, all at such reasonable times and as often as may be reasonably requested. The Indenture Trustee shall cause its representatives to hold in confidence all such information except to the extent disclosure may be required by law, regulation, administrative or regulatory authority (and all reasonable applications for confidential treatment are unavailing) and except to the extent that the Indenture Trustee may reasonably determine that such disclosure is consistent with its obligations hereunder, provided, however, that the Indenture Trustee may disclose such information, on a confidential basis, to its agents, attorneys and auditors in connection with the performance of its responsibilities under this Indenture.

IN WITNESS WHEREOF, the Issuing Entity, the Securities Administrator and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

AMERICAN HOME MORTGAGE
INVESTMENT TRUST 2007-SD1, as
Issuing Entity

By:  WILMINGTON TRUST COMPANY,
not in its individual capacity, but solely
as Owner Trustee


By: _____
Name:
Title:


WELLS FARGO BANK, N.A., as
Securities Administrator


By: _____
Name:
Title:


DEUTSCHE BANK NATIONAL TRUST
COMPANY, not in its individual capacity,
but solely as Indenture Trustee


By: _____
Name:
Title:


By: _____
Name:
Title:

STATE OF _____        )

                                           ) ss.:

COUNTY OF _____        )

       On this 13th day of March, 2007, before me personally appeared _____ to me known, who being by me duly sworn, did depose and say, that he is the _____ of Deutsche Bank National Trust Company, one of the entities described in and which executed the above instrument; and that he signed his name thereto by like order.

                                        Notary Public

                                        _____

                                        NOTARY PUBLIC

[NOTARIAL SEAL]

STATE OF _____                )
_____                 ) ss.:
COUNTY OF _____                    )

    On this 13th day of March, 2007, before me personally appeared _____ to me known, who being by me duly sworn, did depose and say, that he is the _____ of Deutsche Bank National Trust Company, one of the corporations described in and which executed the above instrument; and that he signed his name thereto by like order.

                                       Notary Public


                                       _____
                                       NOTARY PUBLIC


[NOTARIAL SEAL]

STATE OF _____          )

_____  ) ss.:

COUNTY OF _____          )

      On this 13th day of March, 2007, before me personally appeared _____ to me known, who being by me duly sworn, did depose and say, that he is the _____ of Wells Fargo Bank, N.A., one of the entities described in and which executed the above instrument; and that he signed his name thereto by like order.

                              Notary Public


                              _____

                              NOTARY PUBLIC


[NOTARIAL SEAL]

STATE OF DELAWARE         )

                                         ) ss.:

COUNTY OF NEW CASTLE     )

      On this 13th day of March, 2007 before me personally appeared _____ to me known, who being by me duly sworn, did depose and say, that she is a(n) _____ of the Wilmington Trust Company, one of the entities described in and which executed the above instrument; and that she signed her name thereto by like order.

                                        Notary Public

                                        _____

                                        NOTARY PUBLIC

[NOTARIAL SEAL]

EXHIBIT A-1

## CLASS IV-A NOTES

**UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE SECURITIES ADMINISTRATOR OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO.  OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO.  OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

**THE HOLDER OF THIS NOTE OR BENEFICIAL OWNER OF ANY INTEREST HEREIN WILL BE DEEMED TO REPRESENT TO ONE OF THE REPRESENTATIONS CONTAINED IN SECTION 4.15 OF THE INDENTURE.**

**THIS NOTE IS A NON-RECOURSE OBLIGATION OF THE ISSUING ENTITY, AND IS LIMITED IN RIGHT OF PAYMENT TO AMOUNTS AVAILABLE FROM THE TRUST ESTATE AS PROVIDED IN THE INDENTURE REFERRED TO BELOW.  THE ISSUING ENTITY IS NOT OTHERWISE PERSONALLY LIABLE FOR PAYMENTS ON THIS NOTE.**

**PRINCIPAL OF THIS NOTE IS PAYABLE OVER TIME AS SET FORTH HEREIN. ACCORDINGLY, THE OUTSTANDING PRINCIPAL OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON THE FACE HEREOF.**

**THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE RESOLD OR TRANSFERRED UNLESS IT IS REGISTERED PURSUANT TO SUCH ACT AND LAWS OR IS SOLD OR TRANSFERRED IN TRANSACTIONS WHICH ARE EXEMPT FROM REGISTRATION UNDER SUCH ACT AND UNDER APPLICABLE STATE LAW AND IS TRANSFERRED IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4.02 OF THE INDENTURE REFERRED TO HEREIN.**

**AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-SD1**
**MORTGAGE-BACKED NOTES, SERIES 2007-SD1**
**CLASS IV-A**

AGGREGATE NOTE PRINCIPAL                    NOTE INTEREST
BALANCE: $[_____]                    RATE: Adjustable Rate


INITIAL NOTE PRINCIPAL                    NOTE NO.  1
BALANCE OF THIS NOTE: $[_____]


PERCENTAGE INTEREST: 100%                    CUSIP NO: [_____]


American Home Mortgage Investment Trust 2007-SD1 (the "Issuing Entity"), a Delaware statutory trust, for value received, hereby promises to pay to Cede & Co. or registered assigns, the principal sum of $[_____] in monthly installments on the twenty-fifth day of each month or, if such day is not a Business Day, the next succeeding Business Day (each a "Payment Date"), commencing in March 2007 and ending on or before the Payment Date occurring in July 2046 (the "Final Scheduled Payment Date") and to pay interest on the Note Principal Balance of this Note (this "Note") outstanding from time to time as provided below.

This Note is one of a duly authorized issue of the Issuing Entity's Mortgage-Backed Notes, Series 2007-SD1 (the "Notes"), issued under an Indenture dated as of March 13, 2007 (the "Indenture"), among the Issuing Entity, Deutsche Bank National Trust Company, as indenture trustee (the "Indenture Trustee") and Wells Fargo Bank, N.A., as securities administrator (the "Securities Administrator") to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights thereunder of the Issuing Entity, the Indenture Trustee, the Securities Administrator and the Holders of the Notes and the terms upon which the Notes are to be authenticated and delivered.  All terms used in this Note which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

Payments of principal and interest on this Note will be made on each Payment Date to the Noteholder of record as of the related Record Date.  The "Note Principal Balance" of a Note as of any date of determination is equal to the initial Note Principal Balance thereof, reduced by the aggregate of all amounts previously paid with respect to such Note on account of principal.

The principal of, and interest on, this Note are due and payable as described in the Indenture, in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.  All payments made by the Issuing Entity with respect to this Note shall be equal to this Note's pro rata share of the aggregate payments on all Class IV-A Notes as described above, and shall be applied as between interest and principal as provided in the Indenture.

All principal and interest accrued on the Notes, if not previously paid, will become finally due and payable at the Final Scheduled Payment Date.

The Holder of the Trust Certificate, or if there is no single Holder, the Majority Certificateholder, shall have the option to purchase the assets of the Trust related to Loan Group IV and thereby redeem the Class IV-A Notes and Class IV-M Notes after the Payment Date on which the aggregate Stated Principal Balance of the Group IV Loans and properties acquired in respect thereof has been reduced to less than 20% of the aggregate Stated Principal Balance of the Group IV Loans as of the Cut-Off Date.

The Issuing Entity shall not be liable upon the indebtedness evidenced by the Notes except to the extent of amounts available from the Trust Estate which constitutes security for the payment of the Notes. The assets included in the Trust Estate will be the sole source of payments on the Class IV-A Notes, and each Holder hereof, by its acceptance of this Note, agrees that (i) such Note will be limited in right of payment to amounts available from the Trust Estate as provided in the Indenture and (ii) such Holder shall have no recourse to the Issuing Entity, the Owner Trustee, the Indenture Trustee, the Depositor, the Sponsor, the Securities Administrator, the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer, the HELOC Back-Up Servicer or any of their respective affiliates, or to the assets of any of the foregoing entities, except the assets of the Issuing Entity pledged to secure the Class IV-A Notes pursuant to the Indenture and the rights conveyed to the Issuing Entity under the Indenture.

Any payment of principal or interest payable on this Note which is punctually paid on the applicable Payment Date shall be paid to the Person in whose name such Note is registered at the close of business on the Record Date for such Payment Date by check mailed to such person's address as it appears in the Note Register on such Record Date, except for the final installment of principal and interest payable with respect to such Note, which shall be payable as provided below. Notwithstanding the foregoing, upon written request with appropriate instructions by the Holder of this Note delivered to the Securities Administrator at least five Business Days prior to the Record Date, any payment of principal or interest, other than the final installment of principal or interest, shall be made by wire transfer to an account in the United States designated by such Holder. All reductions in the principal amount of a Note effected by payments of principal made on any Payment Date shall be binding upon all Holders of this Note and of any Note issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof, whether or not such payment is noted on such Note. The final payment of this Note shall be payable upon presentation and surrender thereof on or after the Payment Date thereof at the office or agency designated by the Securities Administrator and maintained by it for such purpose pursuant to Section 3.02 of the Indenture.

Subject to the foregoing provisions, each Note delivered under the Indenture, upon registration of transfer of or in exchange for or in lieu of any other Note, shall carry the right to unpaid principal and interest that were carried by such other Note.

If an Event of Default as defined in the Indenture shall occur and be continuing with respect to the Notes, the Notes may become or be declared due and payable in the manner and with the effect provided in the Indenture. If any such acceleration of maturity occurs prior to the payment of the entire unpaid Note Principal Balance of the Notes, the amount payable to the

Holder of this Note will be equal to the sum of the unpaid Note Principal Balance of this Note, together with accrued and unpaid interest thereon as described in the Indenture.  The Indenture provides that, notwithstanding the acceleration of the maturity of the Notes, under certain circumstances specified therein, all amounts collected as proceeds of the Trust Estate securing the Notes or otherwise shall continue to be applied to payments of principal of and interest on the Notes as if they had not been declared due and payable.

This Note has not been and will not be registered under the Securities Act of 1933, as amended, or the securities laws of any State and may be resold or transferred unless it is registered pursuant to such act and laws or is sold or transferred in transactions which are exempt from registration under such act and under applicable state law and is transferred in accordance with the provisions of Section 4.02 of the Indenture referred to herein.

The Holder of this Note or Beneficial Owner of any interest herein is deemed to represent that either (1) it is not acquiring the Note with Plan Assets or (2) (A) the acquisition, holding and transfer of a Note will not give rise to a nonexempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and (B) the Notes are rated investment grade or better and such person believes that the Notes are properly treated as indebtedness without substantial equity features for purposes of the DOL Regulations, and agrees to so treat the Notes. Alternatively, regardless of the rating of the Notes, such person may provide the Indenture Trustee, the Securities Administrator and the Owner Trustee with an opinion of counsel, which opinion of counsel will not be at the expense of the Issuing Entity, the Sponsor, the Initial Purchaser, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the RMBS Master Servicer, the HELOC Servicer, the RMBS Servicer or the HELOC Back-Up Servicer, which opines that the acquisition, holding and transfer of such Note or interest therein is permissible under applicable law, will not constitute or result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Issuing Entity, the Sponsor, the Depositor, the Initial Purchaser, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the RMBS Master Servicer, the HELOC Servicer, the RMBS Servicer or the HELOC Back-Up Servicer to any obligation in addition to those undertaken in the Indenture.

As provided in the Indenture and subject to certain limitations therein set forth, the transfer of this Note may be registered on the Note Register of the Issuing Entity.  Upon surrender for registration of transfer of, or presentation of a written instrument of transfer for, this Note at the office or agency designated by the Issuing Entity pursuant to the Indenture, accompanied by proper instruments of assignment in form satisfactory to the Securities Administrator, one or more new Notes of any authorized denominations and of a like aggregate then outstanding Note Principal Balance, will be issued to the designated transferee or transferees.

Prior to the due presentment for registration of transfer of this Note, the Issuing Entity, the Indenture Trustee and the Securities Administrator and any agent of the Issuing Entity, the Indenture Trustee and the Securities Administrator may treat the Person in whose name this Note is registered as the owner of such Note (i) on the applicable Record Date for the purpose of making payments and interest of such Note, and (ii) on any other date for all other purposes whatsoever, as the owner hereof, whether or not this Note be overdue, and neither the Issuing

Entity, Securities Administrator, the Indenture Trustee nor any such agent of the Issuing Entity, the Indenture Trustee and the Securities Administrator shall be affected by notice to the contrary.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Issuing Entity and the rights of the Holders of the Notes under the Indenture at any time by the Issuing Entity and the Holders of a majority of each Class of Notes affected thereby.  The Indenture also contains provisions permitting the Holders of Notes representing not less than a majority of the aggregate Note Principal Balance of the Notes, to waive any past Event of Default and its consequences except an Event of Default (a) with respect to payment of principal of or interest on any of the Notes, or (b) in respect of a covenant or provision of the Indenture which cannot be modified or amended without the consent of the Holder of each Note.  Any such waiver by the Holder, at the time of the giving thereof, of this Note (or any one or more predecessor Notes) shall bind the Holder of every Note issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof, whether or not notation of such consent or waiver is made upon such Note.  The Indenture also permits the Issuing Entity, the Owner Trustee, the Securities Administrator and the Indenture Trustee, following prior notice to the Rating Agencies, to amend or waive certain terms and conditions set forth in the Indenture without the consent of the Holders of the Notes issued thereunder.

Initially, the Notes will be registered in the name of Cede & Co.  as nominee of DTC, acting in its capacity as the Depository for the Notes.  The Notes will be delivered by the clearing agency in denominations as provided in the Indenture and subject to certain limitations therein set forth.  The Notes are exchangeable for a like aggregate then outstanding Note Principal Balance of Notes of different authorized denominations, as requested by the Holder surrendering same.

Unless the Certificate of Authentication hereon has been executed by the Securities Administrator by manual signature, which may be in counterpart, this Note shall not be entitled to any benefit under the Indenture, or be valid or obligatory for any purpose.

Anything herein to the contrary notwithstanding, except as expressly provided in the Basic Documents, neither the Owner Trustee nor the Securities Administrator, each in their individual capacities, nor any of their respective partners, beneficiaries, agents, officers, directors, employees, or successors or assigns, shall be personally liable for, nor shall recourse be had to any of them for, the payment of principal of or interest on, or performance of, or omission to perform, any of the covenants, obligations or indemnifications contained in this Note, it being expressly understood that said covenants, obligations and indemnifications have been made solely by the Trust to the extent of the assets of the Trust.  The holder of this Note by the acceptance hereof agrees that, except as expressly provided in the Basic Documents, the Holder shall have no claim against any of the foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse to, and enforcement against, the assets of the Trust Estate for any and all liabilities, obligations and undertakings contained in this Note.

AS PROVIDED IN THE INDENTURE, THIS NOTE AND THE INDENTURE CREATING THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND

GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN.

IN WITNESS WHEREOF, the Issuing Entity has caused this instrument to be duly executed by Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee.

Dated: March 13, 2007

<div align="right">

AMERICAN HOME MORTGAGE
INVESTMENT TRUST 2007-SD1

BY:    WILMINGTON TRUST
       COMPANY, not in its individual
       capacity but solely in its capacity as
       Owner Trustee


By:    _____
       Authorized Signatory

</div>

<div align="center">

SECURITIES ADMINISTRATOR'S CERTIFICATE OF AUTHENTICATION

</div>

This is one of the Notes referred to in the within-mentioned Indenture.

WELLS FARGO BANK, N.A., as Securities Administrator


By:    _____
       Authorized Signatory

<u>ABBREVIATIONS</u>

The following abbreviations, when used in the inscription on the face of the Note, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | |
|---|---|---|
| TEN COM | -- | as tenants in common |
| TEN ENT | -- | as tenants by the entireties |
| JT TEN | -- | as joint tenants with right of survivorship and not as tenants in common |
| UNIF GIFT MIN ACT | -- | _____ Custodian |

     _____

     (Cust)           (Minor)

     under    Uniform    Gifts    to    Minor    Act

     _____

                         (State)

ADDITIONAL ABBREVIATIONS MAY ALSO BE USED THOUGH NOT IN THE ABOVE LIST.

## ASSIGNMENT

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY SELLS, ASSIGNS AND TRANSFERS UNTO

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE:

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)

_____
the within Note and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to transfer said Note on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____    _____

Signature Guaranteed by    _____

NOTICE: The signature(s) to this assignment must correspond with the name as it appears upon the face of the within Note in every particular, without alteration or enlargement or any change whatsoever.  Signature(s) must be guaranteed by a commercial bank or by a member firm of the New York Stock Exchange or another national securities exchange.  Notarized or witnessed signatures are not acceptable.

EXHIBIT A-2

## CLASS [__]-M-[__] NOTES

**THIS NOTE IS SUBORDINATED IN RIGHT OF PAYMENT TO THE CLASS [__]-A-[__] NOTES AND [CLASS [__]-M-[__]] NOTES AS DESCRIBED IN THE INDENTURE.**

**[For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE SECURITIES ADMINISTRATOR OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO.  OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO.  OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.]**

**THE HOLDER OF THIS NOTE OR BENEFICIAL OWNER OF ANY INTEREST HEREIN WILL BE DEEMED TO REPRESENT TO ONE OF THE REPRESENTATIONS CONTAINED IN SECTION 4.15 OF THE INDENTURE.**

**THIS NOTE IS A NON-RECOURSE OBLIGATION OF THE ISSUING ENTITY, AND IS LIMITED IN RIGHT OF PAYMENT TO AMOUNTS AVAILABLE FROM THE TRUST ESTATE AS PROVIDED IN THE INDENTURE REFERRED TO BELOW.  THE ISSUING ENTITY IS NOT OTHERWISE PERSONALLY LIABLE FOR PAYMENTS ON THIS NOTE.**

**PRINCIPAL OF THIS NOTE IS PAYABLE OVER TIME AS SET FORTH HEREIN.  ACCORDINGLY, THE OUTSTANDING PRINCIPAL OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON THE FACE HEREOF.**

**THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE RESOLD OR TRANSFERRED UNLESS IT IS REGISTERED PURSUANT TO SUCH ACT AND LAWS OR IS SOLD OR TRANSFERRED IN TRANSACTIONS WHICH ARE EXEMPT FROM REGISTRATION UNDER SUCH ACT AND UNDER APPLICABLE STATE LAW AND IS TRANSFERRED IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4.02 OF THE INDENTURE REFERRED TO HEREIN.**

**[For the Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes] NO TRANSFER OF THIS NOTE SHALL BE MADE UNLESS THE NOTE REGISTRAR SHALL HAVE RECEIVED EITHER (i) A REPRESENTATION LETTER FROM THE TRANSFEREE OF THIS NOTE TO THE EFFECT THAT SUCH TRANSFEREE IS NOT AN**

**EMPLOYEE BENEFIT PLAN OR OTHER PLAN SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), OR SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), OR A PERSON ACTING ON BEHALF OF ANY SUCH PLAN OR USING THE ASSETS OF ANY SUCH PLAN, OR (ii) IF THIS NOTE IS PRESENTED FOR REGISTRATION IN THE NAME OF A PLAN SUBJECT TO ERISA OR SECTION 4975 OF THE CODE (OR COMPARABLE PROVISIONS OF ANY SUBSEQUENT ENACTMENTS), OR A TRUSTEE OF ANY SUCH PLAN, OR ANY OTHER PERSON WHO IS USING THE ASSETS OF ANY SUCH PLAN TO EFFECT SUCH ACQUISITION, AN OPINION OF COUNSEL TO THE EFFECT THAT THE PURCHASE OF NOTES, OPERATION OF TRUST AND MANAGEMENT OF TRUST ASSETS ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY PROHIBITED TRANSACTION UNDER ERISA OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE DEPOSITOR, THE SELLER, THE OWNER TRUSTEE, THE INDENTURE TRUSTEE, THE NOTE REGISTRAR, THE SECURITIES ADMINISTRATOR, THE RMBS MASTER SERVICER, THE RMBS SERVICER, THE HELOC SERVICER OR THE HELOC BACK-UP SERVICER TO ANY OBLIGATION OR LIABILITY (INCLUDING OBLIGATIONS OR LIABILITIES UNDER ERISA OR SECTION 4975 OF THE CODE) IN ADDITION TO THOSE UNDERTAKEN IN THE INDENTURE, WHICH OPINION OF COUNSEL SHALL NOT BE AN EXPENSE OF THE DEPOSITOR, THE SELLER, THE OWNER TRUSTEE, THE INDENTURE TRUSTEE, THE NOTE REGISTRAR, THE RMBS MASTER SERVICER, THE SECURITIES ADMINISTRATOR, THE RMBS SERVICER, THE HELOC SERVICER OR THE HELOC BACK-UP SERVICER.**

**AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-SD1**
**MORTGAGE-BACKED NOTES, SERIES 2007-SD1**
**CLASS IV-M-[___]**

AGGREGATE NOTE PRINCIPAL   NOTE INTEREST
BALANCE: $[_____]      RATE: [_____]


INITIAL NOTE PRINCIPAL     NOTE NO.  1
BALANCE OF THIS NOTE: $[_____]


PERCENTAGE INTEREST: 100%    CUSIP NO: [_____]


   American Home Mortgage Investment Trust 2007-SD1 (the "Issuing Entity"), a Delaware statutory trust, for value received, hereby promises to pay to [_____] or registered assigns, the principal sum of $[_____] in monthly installments on the twenty-fifth day of each month or, if such day is not a Business Day, the next succeeding Business Day (each a "Payment Date"), commencing in March 2007 and ending on or before the Payment Date occurring in July 2046 (the "Final Scheduled Payment Date") [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [and to pay interest on the Note Principal Balance of this Note (this "Note") outstanding from time to time as provided below].

   This Note is one of a duly authorized issue of the Issuing Entity's Mortgage-Backed Notes, Series 2007-SD1 (the "Notes"), issued under an Indenture dated as of March 13, 2007 (the "Indenture"), among the Issuing Entity, Deutsche Bank National Trust Company, as indenture trustee (the "Indenture Trustee") and Wells Fargo Bank, N.A., as securities administrator (the "Securities Administrator") to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights thereunder of the Issuing Entity, the Indenture Trustee, the Securities Administrator and the Holders of the Notes and the terms upon which the Notes are to be authenticated and delivered.  All terms used in this Note which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

   Payments of principal [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [and interest] on this Note will be made on each Payment Date to the Noteholder of record as of the related Record Date.  The "Note Principal Balance" of a Note as of any date of determination is equal to the initial Note Principal Balance thereof, reduced by the aggregate of all amounts previously paid with respect to such Note on account of principal.

   The principal of, [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [and interest on], this Note are due and payable as described in the Indenture, in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.  All payments made by the Issuing Entity with respect to this Note shall be

equal to this Note's pro rata share of the aggregate payments on all Class IV-M-2 Notes as described above, and shall be applied [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] as [between interest and] principal as provided in the Indenture.

All principal and interest accrued on the Notes, if not previously paid, will become finally due and payable at the Final Scheduled Payment Date.

The Holder of the Trust Certificate, or if there is no single Holder, the Majority Certificateholder, shall have the option to purchase the assets of the Trust related to Loan Group IV and thereby redeem the Class IV-A Notes and Class IV-M Notes after the Payment Date on which the aggregate Stated Principal Balance of the Group IV Loans and properties acquired in respect thereof has been reduced to less than 20% of the aggregate Stated Principal Balance of the Group IV Loans as of the Cut-Off Date.

The Issuing Entity shall not be liable upon the indebtedness evidenced by the Notes except to the extent of amounts available from the Trust Estate which constitutes security for the payment of the Notes. The assets included in the Trust Estate will be the sole source of payments on the Class IV-M-[__] Notes, and each Holder hereof, by its acceptance of this Note, agrees that (i) such Note will be limited in right of payment to amounts available from the Trust Estate as provided in the Indenture and (ii) such Holder shall have no recourse to the Issuing Entity, the Owner Trustee, the Indenture Trustee, the Depositor, the Sponsor, the Securities Administrator, the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer, the HELOC Back-Up Servicer or any of their respective affiliates, or to the assets of any of the foregoing entities, except the assets of the Issuing Entity pledged to secure the Class IV-M-[__] Notes pursuant to the Indenture and the rights conveyed to the Issuing Entity under the Indenture.

Any payment of principal [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [or interest] payable on this Note which is punctually paid on the applicable Payment Date shall be paid to the Person in whose name such Note is registered at the close of business on the Record Date for such Payment Date by check mailed to such person's address as it appears in the Note Register on such Record Date, except for the final installment of principal [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [and interest] payable with respect to such Note, which shall be payable as provided below. Notwithstanding the foregoing, upon written request with appropriate instructions by the Holder of this Note delivered to the Securities Administrator at least five Business Days prior to the Record Date, any payment of principal [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [or interest], other than the final installment of principal [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [or interest], shall be made by wire transfer to an account in the United States designated by such Holder. All reductions in the principal amount of a Note effected by payments of principal made on any Payment Date shall be binding upon all Holders of this Note and of any Note issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof, whether or not such payment is noted on such Note. The final payment of this Note shall be payable upon presentation and surrender thereof on or after the Payment Date thereof at the office or agency designated by the Securities Administrator and maintained by it for such purpose pursuant to Section 3.02 of the Indenture.

Subject to the foregoing provisions, each Note delivered under the Indenture, upon registration of transfer of or in exchange for or in lieu of any other Note, shall carry the right to unpaid principal and interest that were carried by such other Note.

If an Event of Default as defined in the Indenture shall occur and be continuing with respect to the Notes, the Notes may become or be declared due and payable in the manner and with the effect provided in the Indenture.  If any such acceleration of maturity occurs prior to the payment of the entire unpaid Note Principal Balance of the Notes, the amount payable to the Holder of this Note will be equal to the sum of the unpaid Note Principal Balance of this Note, [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [together with accrued and unpaid interest thereon as described in the Indenture].   The Indenture provides that, notwithstanding the acceleration of the maturity of the Notes, under certain circumstances specified therein, all amounts collected as proceeds of the Trust Estate securing the Notes or otherwise shall continue to be applied to payments of principal of and interest on the Notes as if they had not been declared due and payable.

This Note has not been and will not be registered under the Securities Act of 1933, as amended, or the securities laws of any State and may be resold or transferred unless it is registered pursuant to such act and laws or is sold or transferred in transactions which are exempt from registration under such act and under applicable state law and is transferred in accordance with the provisions of Section 4.02 of the Indenture referred to herein.

[For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [The Holder of this Note or Beneficial Owner of any interest herein is deemed to represent that either (1) it is not acquiring the Note with Plan Assets or (2) (A) the acquisition, holding and transfer of a Note will not give rise to a nonexempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and (B) the Notes are rated investment grade or better and such person believes that the Notes are properly treated as indebtedness without substantial equity features for purposes of the DOL Regulations, and agrees to so treat the Notes.  Alternatively, regardless of the rating of the Notes, such person may provide the Indenture Trustee, the Securities Administrator and the Owner Trustee with an opinion of counsel, which opinion of counsel will not be at the expense of the Issuing Entity, the Sponsor, the Initial Purchaser, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the RMBS Master Servicer, the HELOC Servicer, the RMBS Servicer or the HELOC Back-Up Servicer, which opines that the acquisition, holding and transfer of such Note or interest therein is permissible under applicable law, will not constitute or result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Issuing Entity, the Sponsor, the Depositor, the Initial Purchaser, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the RMBS Master Servicer, the HELOC Servicer, the RMBS Servicer or the HELOC Back-Up Servicer to any obligation in addition to those undertaken in the Indenture.]

[For the Class IV-M-4, Class IV-M-5 and Class IV-M-6 Notes] [No transfer of this Note may be made except in accordance with Section 4.15 of this Indenture].

As provided in the Indenture and subject to certain limitations therein set forth, the transfer of this Note may be registered on the Note Register of the Issuing Entity.  Upon surrender for registration of transfer of, or presentation of a written instrument of transfer for,

this Note at the office or agency designated by the Issuing Entity pursuant to the Indenture, accompanied by proper instruments of assignment in form satisfactory to the Securities Administrator, one or more new Notes of any authorized denominations and of a like aggregate then outstanding Note Principal Balance, will be issued to the designated transferee or transferees.

Prior to the due presentment for registration of transfer of this Note, the Issuing Entity, the Indenture Trustee and the Securities Administrator and any agent of the Issuing Entity, the Indenture Trustee and the Securities Administrator may treat the Person in whose name this Note is registered as the owner of such Note (i) on the applicable Record Date for the purpose of making payments and interest of such Note, and (ii) on any other date for all other purposes whatsoever, as the owner hereof, whether or not this Note be overdue, and neither the Issuing Entity, Securities Administrator, the Indenture Trustee nor any such agent of the Issuing Entity, the Indenture Trustee and the Securities Administrator shall be affected by notice to the contrary.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Issuing Entity and the rights of the Holders of the Notes under the Indenture at any time by the Issuing Entity and the Holders of a majority of each Class of Notes affected thereby.  The Indenture also contains provisions permitting the Holders of Notes representing not less than a majority of the aggregate Note Principal Balance of the Notes, to waive any past Event of Default and its consequences except an Event of Default (a) with respect to payment of principal of or interest on any of the Notes, or (b) in respect of a covenant or provision of the Indenture which cannot be modified or amended without the consent of the Holder of each Note.  Any such waiver by the Holder, at the time of the giving thereof, of this Note (or any one or more predecessor Notes) shall bind the Holder of every Note issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof, whether or not notation of such consent or waiver is made upon such Note.  The Indenture also permits the Issuing Entity, the Owner Trustee, the Securities Administrator and the Indenture Trustee, following prior notice to the Rating Agencies, to amend or waive certain terms and conditions set forth in the Indenture without the consent of the Holders of the Notes issued thereunder.

Initially, the Notes will be registered in the name of [_____].  [For the Class IV-M-1, Class IV-M-2 and Class IV-M-3 Notes] [The Notes will be delivered by the clearing agency in denominations as provided in the Indenture and subject to certain limitations therein set forth.]  The Notes are exchangeable for a like aggregate then outstanding Note Principal Balance of Notes of different authorized denominations, as requested by the Holder surrendering same.

Unless the Certificate of Authentication hereon has been executed by the Securities Administrator by manual signature, which may be in counterpart, this Note shall not be entitled to any benefit under the Indenture, or be valid or obligatory for any purpose.

Anything herein to the contrary notwithstanding, except as expressly provided in the Basic Documents, neither the Owner Trustee nor the Securities Administrator, each in their individual capacities, nor any of their respective partners, beneficiaries, agents, officers, directors, employees, or successors or assigns, shall be personally liable for, nor shall recourse be

had to any of them for, the payment of principal of or interest on, or performance of, or omission to perform, any of the covenants, obligations or indemnifications contained in this Note, it being expressly understood that said covenants, obligations and indemnifications have been made solely by the Trust to the extent of the assets of the Trust.   The holder of this Note by the acceptance hereof agrees that, except as expressly provided in the Basic Documents, the Holder shall have no claim against any of the foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse to, and enforcement against, the assets of the Trust Estate for any and all liabilities, obligations and undertakings contained in this Note.

AS PROVIDED IN THE INDENTURE, THIS NOTE AND THE INDENTURE CREATING THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN.

IN WITNESS WHEREOF, the Issuing Entity has caused this instrument to be duly executed by Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee.

Dated: March 13, 2007

<div style="margin-left:50%;">

AMERICAN HOME MORTGAGE
INVESTMENT TRUST 2007-SD1

BY:    WILMINGTON TRUST
COMPANY, not in its individual
capacity but solely in its capacity as
Owner Trustee

By:    _____
Authorized Signatory

</div>

SECURITIES ADMINISTRATOR'S CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture.

WELLS FARGO BANK, N.A., as Securities Administrator

By:    _____
Authorized Signatory

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of the Note, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | |
|---|---|---|
| TEN COM | -- | as tenants in common |
| TEN ENT | -- | as tenants by the entireties |
| JT TEN | -- | as joint tenants with right of survivorship and not as tenants in common |
| UNIF GIFT MIN ACT | -- | _____ Custodian |

<div>

UNIF GIFT MIN ACT   --   _____ Custodian

_____
  (Cust)              (Minor)

under   Uniform   Gifts   to   Minor   Act
_____
                 (State)

</div>

ADDITIONAL ABBREVIATIONS MAY ALSO BE USED THOUGH NOT IN THE ABOVE LIST.

<u>ASSIGNMENT</u>

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY SELLS, ASSIGNS AND TRANSFERS UNTO

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE:

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)

_____

the within Note and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to transfer said Note on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____    _____

Signature Guaranteed by    _____

NOTICE: The signature(s) to this assignment must correspond with the name as it appears upon the face of the within Note in every particular, without alteration or enlargement or any change whatsoever.  Signature(s) must be guaranteed by a commercial bank or by a member firm of the New York Stock Exchange or another national securities exchange.  Notarized or witnessed signatures are not acceptable.

EXHIBIT B

MORTGAGE LOAN SCHEDULE

(FILED MANUALLY)

EXHIBIT C

[RESERVED]

EXHIBIT D

FORM OF CLASS IV-A CAP CONTRACT

EXHIBIT E

[RESERVED]

EXHIBIT F

[RESERVED]

EXHIBIT G

[RESERVED]

EXHIBIT H

FORM OF INITIAL CERTIFICATION

March 13, 2007

AMERICAN HOME MORTGAGE SECURITIES LLC
538 Broadhollow Road
Melville, New York 11747

AMERICAN HOME MORTGAGE SERVICING, INC.
7142 Columbia Gateway Drive
Columbia, Maryland 21046

GMAC Mortgage, LLC
100 Witmer Road
Horsham, Pennsylvania 19044

Attention: American Home Mortgage Investment Trust 2007-SD1

>           Re:     Indenture, dated as of March 13, 2007 (the "Indenture"), among American
>                   Home Mortgage Investment Trust 2007-SD1, a Delaware statutory trust,
>                   as issuing entity (the "Issuing Entity"), Deutsche Bank National Trust
>                   Company, as indenture trustee (the "Indenture Trustee") and Wells Fargo
>                   Bank, N.A., as securities administrator (the "Securities
>                   Administrator")

Ladies and Gentlemen:

        In accordance with Section 2.03(a) of the Indenture and Section 2.1(b)(i)-(v) of
the Mortgage Loan Purchase Agreement, dated as of March 13, 2007, between American Home
Mortgage Acceptance, Inc. and American Home Mortgage Securities LLC (the "MLPA", and
together with the Indenture, the "Agreements"), the undersigned, as Indenture Trustee, hereby
certifies that as to each Mortgage Loan listed in the related Mortgage Loan Schedule (other than
any Mortgage Loan paid in full or listed on the exception report attached hereto) it has reviewed
the Mortgage File and the related Mortgage Loan Schedule and has determined that: (i) all
documents required to be included in the Mortgage File pursuant to Section 2.1(b)(i)-(v), except
for 2.1(b)(ii), of the MLPA are in its possession; (ii) such documents have been reviewed by it
and appear regular on their face and relate to such Mortgage Loan; and (iii) based on
examination by it, and only as to such documents, the information set forth in items (iii) and (v)
of the definition or description of "Mortgage Loan Schedule" is correct.

        The Indenture Trustee has made no independent examination of any documents
contained in each Mortgage File beyond the review specifically required in the above-referenced
Agreements. The Indenture Trustee makes no representation that any documents specified in
clause (vi) of Section 2.1 (b) of the MLPA should be included in any Mortgage File. The
Indenture Trustee makes no representations as to and shall not be responsible to verify: (i) the

validity, legality, sufficiency, enforceability, due authorization, recordability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the related Mortgage Loan Schedule, (ii) the collectability, insurability, effectiveness, perfection, priority or suitability of any such Mortgage Loan, or (iii) the existence of any hazard insurance policy or assumption, modification, written assurance or substitution agreement with respect to any Mortgage File if no such documents appear in the Mortgage File delivered to the Indenture Trustee.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Indenture.

DEUTSCHE BANK NATIONAL
TRUST COMPANY,
as Indenture Trustee


By: _____
Name:
Title:

EXHIBIT I

FORM OF FINAL CERTIFICATION

, 200__

AMERICAN HOME MORTGAGE SECURITIES, LLC
538 Broadhollow Road
Melville, New York 11747

AMERICAN HOME MORTGAGE SERVICING, INC.
7142 Columbia Gateway Drive
Columbia, Maryland 21046

GMAC Mortgage, LLC
100 Witmer Road
Horsham, Pennsylvania 19044

Attention: American Home Mortgage Investment Trust 2007-SD1

> Re:    Indenture, dated as of March 13, 2007 (the "Indenture"), between American Home Mortgage Investment Trust 2007-SD1, a Delaware business trust, as Issuing Entity (the "Issuing Entity"),  Deutsche Bank National Trust Company, as Indenture Trustee (the "Indenture Trustee") and Wells Fargo Bank, N.A., as Securities Administrator (the "Securities Administrator")

Ladies and Gentlemen:

In accordance with Section 2.03(a) of the Indenture and Section 2.1(b)(i)-(v) of the Mortgage Loan Purchase Agreement, dated as of March 13, 2007, between American Home Mortgage Acceptance, Inc. and American Home Mortgage Securities LLC (the "MLPA", and together with the Indenture, the "Agreements"), the undersigned, as Indenture Trustee, hereby certifies that as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the exception report attached hereto) it has received the documents set forth in Section 2.1(b)(i)-(v) (except clause (v)(ii)) of the MLPA.

The Indenture Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Agreements. The Indenture Trustee makes no representation that any documents specified in clauses (v)(ii) and (vi) of Section 2.1 (b) should be included in any Mortgage File. The Indenture Trustee makes no representations as to and shall not be responsible to verify: (i) the validity, legality, sufficiency, enforceability, due authorization, recordability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the related Mortgage Loan Schedule, (ii) the collectability, insurability, effectiveness, perfection, priority or suitability of any such Mortgage Loan, or (iii) the existence of any hazard insurance policy or assumption,

modification, written assurance or substitution agreement with respect to any Mortgage File if no such documents appear in the Mortgage File delivered to the Indenture Trustee.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Indenture.

DEUTSCHE BANK NATIONAL
TRUST COMPANY,
as Indenture Trustee


By: _____
Name:
Title:

EXHIBIT J

FORM OF REQUEST FOR RELEASE

DATE:

TO:

RE:    REQUEST FOR RELEASE OF DOCUMENTS

In connection with your administration of the Mortgage Loans, we request the release of the Mortgage File described below.

Servicing Agreement Dated:
Series #:
Account #:
Pool #:
Loan #:
Borrower Name(s):
Reason for Document Request: (circle one)          Mortgage Loan Prepaid in Full
                                                   Other
                                                   Mortgage Loan Repurchased

PLEASE DELIVER THE MORTGAGE FILE TO

"We hereby certify that all amounts received or to be received in connection with such payments which are required to be deposited have been deposited as provided in the RMBS Servicing Agreement."

[Name of Master Servicer]
Authorized Signature
*************************************************************************
TO INDENTURE TRUSTEE:   Please acknowledge this request, and check off documents being enclosed with a copy of this form. You should retain this form for your files in accordance with the terms of the Indenture.

Enclosed Documents: [ ]    Promissory Note
                    [ ]    Primary Insurance Policy
                    [ ]    Mortgage or Deed of Trust
                    [ ]    Assignment(s) of Mortgage or Deed of Trust
                    [ ]    Title Insurance Policy
                    [ ]    Other:

_____
Name
_____
Title
_____
Date

EXHIBIT K

FORM OF RULE 144A INVESTMENT REPRESENTATION

Description of Rule 144A Securities, including CUSIP numbers:

_____

_____

_____

_____

The undersigned seller, as registered holder (the "Seller"), intends to transfer the Rule 144A Securities described above to the undersigned buyer (the "Buyer").

1.    In connection with such transfer and in accordance with the agreements pursuant to which the Rule 144A Securities were issued, the Seller hereby certifies the following facts: Neither the Seller nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security from, or otherwise approached or negotiated with respect to the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action, that would constitute a distribution of the Rule 144A Securities under the Securities Act of 1933, as amended (the "1933 Act"), or that would render the disposition of the Rule 144A Securities a violation of Section 5 of the 1933 Act or require registration pursuant thereto, and that the Seller has not offered the Rule 144A Securities to any person other than the Buyer or another "qualified institutional buyer" as defined in Rule 144A under the 1933 Act.

2.    The Buyer warrants and represents to, and covenants with, the Owner Trustee, the Note Registrar and the Depositor (as defined in the Indenture (the "Agreement"), dated as of March 13, 2007, among American Home Mortgage Investment Trust 2007-SD1, (the "Issuing Entity"), Deutsche Bank National Trust Company, as Indenture Trustee (the "Indenture Trustee"), and Wells Fargo Bank, N.A., as Securities Administrator (the "Securities Administrator") pursuant to Section 4.02 of the Agreement and Deutsche Bank National Trust Company, as indenture trustee, as follows:

a. The Buyer understands that the Rule 144A Securities have not been registered under the 1933 Act or the securities laws of any state.

b. The Buyer considers itself a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Rule 144A Securities.

c. The Buyer has been furnished with all information regarding the Rule 144A Securities that it has requested from the Seller, the Indenture Trustee, the Owner

Trustee, the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer.

d. Neither the Buyer nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security from, or otherwise approached or negotiated with respect to the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action, that would constitute a distribution of the Rule 144A Securities under the 1933 Act or that would render the disposition of the Rule 144A Securities a violation of Section 5 of the 1933 Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Rule 144A Securities.

e. The Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the 1933 Act and has completed either of the forms of certification to that effect attached hereto as Annex 1 or Annex 2. The Buyer is aware that the sale to it is being made in reliance on Rule 144A. The Buyer is acquiring the Rule 144A Securities for its own account or the accounts of other qualified institutional buyers, understands that such Rule 144A Securities may be resold, pledged or transferred only (i) to a person reasonably believed to be a qualified institutional buyer that purchases for its own account or for the account of a qualified institutional buyer to whom notice is given that the resale, pledge or transfer is being made in reliance on Rule 144A, or (ii) pursuant to another exemption from registration under the 1933 Act.

3. The Buyer warrants and represents to, and covenants with, the Seller, the Indenture Trustee, the Owner Trustee, the Note Registrar, the RMBS Master Servicer, the Securities Administrator, the RMBS Servicer, the HELOC Servicer, the HELOC Back-Up Servicer and the Depositor that either (1) the Buyer is (A) not an employee benefit plan (within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")), or a plan (within the meaning of Section 4975(e)(1) of the Internal Revenue Code of 1986 ("Code")), which (in either case) is subject to ERISA or Section 4975 of the Code (each, a "Plan"), and (B) is not directly or indirectly purchasing the Rule 144A Securities on behalf of, as investment manager of, as named fiduciary of, as trustee of, or with "plan assets" of a Plan, or (2) the Buyer understands that registration of transfer of any Rule 144A Securities to any Plan, or to any Person acting on behalf of any Plan, will not be made unless such Plan delivers an opinion of its counsel, addressed and satisfactory to the Note Registrar and the Depositor, to the effect (A) that the purchase and holding of the Rule 144A Securities by, on behalf of or with "plan assets" of any Plan, (B) operation of the Trust and (C) management of Trust assets are permissible under applicable law, would not constitute or result in a prohibited transaction under ERISA or Section 4975 of the Code, and would not subject the Depositor, the Owner Trustee, the Indenture Trustee, the Note Registrar, the Securities Administrator, the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer to any obligation or liability (including liabilities under ERISA or

Section 4975 of the Code) in addition to those undertaken in the Agreement, which Opinion of Counsel shall not be an expense of the Depositor, the Owner Trustee, the Note Registrar, the Indenture Trustee, the Securities Administrator, the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer.

        4. This document may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same document.

        IN WITNESS WHEREOF, each of the parties has executed this document as of the date set forth below.


_____        _____

Print Name of Seller                       Print Name of Buyer


By: _____       By: _____

    Name:                              Name:

    Title:                                Title:

Taxpayer Identification:              Taxpayer Identification:

No. _____       No. _____

Date: _____       Date: _____

<div align="right">ANNEX 1 TO EXHIBIT K</div>

QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

[FOR BUYERS OTHER THAN REGISTERED INVESTMENT COMPANIES]

The undersigned hereby certifies as follows in connection with the Rule 144A Investment Representation to which this Certification is attached:

1. As indicated below, the undersigned is the President, Chief Financial Officer, Senior Vice President or other executive officer of the Buyer.

2. In connection with purchases by the Buyer, the Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933 ("Rule 144A") because (i) the Buyer owned and/or invested on a discretionary basis $_____[1]  in securities (except for the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A) and (ii) the Buyer satisfies the criteria in the category marked below.

____  Corporation, etc. The Buyer is a corporation (other than a bank, savings and loan association or similar institution), Massachusetts or similar business trust, partnership, or charitable organization described in Section 501(c)(3) of the Internal Revenue Code.

____  Bank. The Buyer (a) is a national bank or banking institution organized under the laws of any State, territory or the District of Columbia, the business of which is substantially confined to banking and is supervised by the State or territorial banking commission or similar official or is a foreign bank or equivalent institution, and (b) has an audited net worth of at least $25,000,000 as demonstrated in its latest annual financial statements, a copy of which is attached hereto.

____  Savings and Loan. The Buyer (a) is a savings and loan association, building and loan association, cooperative bank, homestead association or similar institution, which is supervised and examined by a State or Federal authority having supervision over any such institutions or is a foreign savings and loan association or equivalent institution and (b) has an audited net worth of at least $25,000,000 as demonstrated in its latest annual financial statements.

____  Broker-Dealer. The Buyer is a dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934.

---

[1]     Buyer must own and/or invest on a discretionary basis at least $100,000,000 in securities unless Buyer is a dealer, and, in that case, Buyer must own and/or invest on a discretionary basis at least $10,000,000 in securities.

___ <u>Insurance Company</u>. The Buyer is an insurance company whose primary and predominant business activity is the writing of insurance or the reinsuring of risks underwritten by insurance companies and which is subject to supervision by the insurance commissioner or a similar official or agency of a State or territory or the District of Columbia.

___ <u>State or Local Plan</u>. The Buyer is a plan established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees.

___ <u>ERISA Plan</u>. The Buyer is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974.

___ <u>Investment Adviser</u>. The Buyer is an investment adviser registered under the Investment Advisers Act of 1940.

___ <u>SBIC</u>. The Buyer is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

___ <u>Business Development Company</u>. The Buyer is a business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

___ <u>Trust Fund</u>. The Buyer is a trust fund whose trustee is a bank or trust company and whose participants are exclusively (a) plans established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees, or (b) employee benefit plans within the meaning of Title I of the Employee Retirement Income Security Act of 1974, but is not a trust fund that includes as participants individual retirement accounts or H.R. 10 plans.

3.  The term "<u>securities</u>" as used herein <u>does not include</u> (i) securities of Issuing Entity that are affiliated with the Buyer, (ii) securities that are part of an unsold allotment to or subscription by the Buyer, if the Buyer is a dealer, (iii) bank deposit Notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements, (vi) securities owned but subject to a repurchase agreement and (vii) currency, interest rate and commodity swaps.

4.  For purposes of determining the aggregate amount of securities owned and/or invested on a discretionary basis by the Buyer, the Buyer used the cost of such securities to the Buyer and did not include any of the securities referred to in the preceding paragraph. Further, in determining such aggregate amount, the Buyer may have included securities owned by subsidiaries of the Buyer, but only if such subsidiaries are consolidated with the Buyer in its financial statements prepared in accordance with generally accepted accounting principles and if the investments of such subsidiaries are managed under the Buyer's direction. However, such securities were not included if the Buyer is a majority-owned, consolidated subsidiary of another enterprise and the Buyer is not itself a reporting company under the Securities Exchange Act of 1934.

5.  The Buyer acknowledges that it is familiar with Rule 144A and understands that the seller to it and other parties related to the Certificates are relying and will continue to rely on the statements made herein because one or more sales to the Buyer may be in reliance on Rule 144A.

| _____ | _____ | |
|---|---|---|
| Yes | No | Will the Buyer be purchasing the Rule 144A Securities only for the Buyer's own account? |

6.  If the answer to the foregoing question is "no", the Buyer agrees that, in connection with any purchase of securities sold to the Buyer for the account of a third party (including any separate account) in reliance on Rule 144A, the Buyer will only purchase for the account of a third party that at the time is a "qualified institutional buyer" within the meaning of Rule 144A. In addition, the Buyer agrees that the Buyer will not purchase securities for a third party unless the Buyer has obtained a current representation letter from such third party or taken other appropriate steps contemplated by Rule 144A to conclude that such third party independently meets the definition of "qualified institutional buyer" set forth in Rule 144A.

7.  The Buyer will notify each of the parties to which this certification is made of any changes in the information and conclusions herein. Until such notice is given, the Buyer's purchase of Rule 144A Securities will constitute a reaffirmation of this certification as of the date of such purchase.

_____
Print Name of Buyer

By:  _____
    Name:
    Title:

Date:  _____

QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

[FOR BUYERS THAT ARE REGISTERED INVESTMENT COMPANIES]

The undersigned hereby certifies as follows in connection with the Rule 144A Investment Representation to which this Certification is attached:

1. As indicated below, the undersigned is the President, Chief Financial Officer or Senior Vice President of the Buyer or, if the Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933 ("Rule 144A") because Buyer is part of a Family of Investment Companies (as defined below), is such an officer of the Adviser.

2. In connection with purchases by Buyer, the Buyer is a "qualified institutional buyer" as defined in SEC Rule 144A because (i) the Buyer is an investment company registered under the Investment Company Act of 1940, and (ii) as marked below, the Buyer alone, or the Buyer's Family of Investment Companies, owned at least $100,000,000 in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year. For purposes of determining the amount of securities owned by the Buyer or the Buyer's Family of Investment Companies, the cost of such securities was used.

_____        The Buyer owned $_____ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

_____        The Buyer is part of a Family of Investment Companies which owned in the aggregate $_____ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

3. The term "Family of Investment Companies" as used herein means two or more registered investment companies (or series thereof) that have the same investment adviser or investment advisers that are affiliated (by virtue of being majority owned subsidiaries of the same parent or because one investment adviser is a majority owned subsidiary of the other).

4. The term "securities" as used herein does not include (i) securities of Issuing Entity that are affiliated with the Buyer or are part of the Buyer's Family of Investment Companies, (ii) bank deposit Notes and certificates of deposit, (iii) loan participations, (iv) repurchase agreements, (v) securities owned but subject to a repurchase agreement and (vi) currency, interest rate and commodity swaps.

5. The Buyer is familiar with Rule 144A and understands that each of the parties to which this certification is made are relying and will continue to rely on the statements made herein because one or more sales to the Buyer will be in reliance on Rule 144A. In addition, the Buyer will only purchase for the Buyer's own account.

6.    The undersigned will notify each of the parties to which this certification is made of any changes in the information and conclusions herein. Until such notice, the Buyer's purchase of Rule 144A Securities will constitute a reaffirmation of this certification by the undersigned as of the date of such purchase.

_____

Print Name of Buyer


By: _____

      Name:

      Title:


IF AN ADVISER:

_____

Print Name of Buyer


Date: _____

EXHIBIT L

CERTIFICATE OF NON-FOREIGN STATUS

This Certificate of Non-Foreign Status ("certificate") is delivered pursuant to Section 4.02 of the Indenture, dated as of March 13, 2007 (the "Indenture"), among American Home Mortgage Investment Trust 2007-SD1, (the "Issuing Entity"), Deutsche Bank National Trust Company, as Indenture Trustee (the "Indenture Trustee"), and Wells Fargo Bank, N.A., as Securities Administrator (the "Securities Administrator"), in connection with the acquisition of, transfer to or possession by the undersigned, whether as beneficial owner for U.S. federal income tax purposes (the "Beneficial Owner"), or nominee on behalf of the Beneficial Owner of the Class [IV-M-4] [IV-M-5] [IV-M-6] Notes, Series 2007-SD1 (the "Note"). Capitalized terms used but not defined in this certificate have the respective meanings given them in the Indenture.

Each holder must complete Part I, Part II (if the holder is a nominee), and in all cases sign and otherwise complete Part III.

In addition, each holder shall submit with the Certificate an IRS Form W-9 relating to such holder.

To confirm to the Trust that the provisions of Sections 871, 881 or 1446 of the Internal Revenue Code (relating to withholding tax on foreign partners) do not apply in respect of the Note held by the undersigned, the undersigned hereby certifies:

Part I -    Complete Either A or B

    A.    Individual as Beneficial Owner

        1.    I am (The Beneficial Owner is) not a non-resident alien for purposes of U.S. income taxation;

        2.    My (The Beneficial Owner's) name and home address are:

            ; and

        3.    My (The Beneficial Owner's) U.S. taxpayer identification number (Social Security Number) is

    B.    Corporate, Partnership or Other Entity as Beneficial Owner

        1.    _____ (Name of the Beneficial Owner) is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Code and Treasury Regulations;

        2.    The Beneficial Owner's office address and place of incorporation (if applicable) is
            ; and

3.     The Beneficial Owner's U.S. employer identification number is _____.

Part II -           Nominees

If the undersigned is the nominee for the Beneficial Owner, the undersigned certifies that this certificate has been made in reliance upon information contained in:

an IRS Form W-9

a form such as this or substantially similar

provided to the undersigned by an appropriate person and (i) the undersigned agrees to notify the Note Registrar at least thirty (30) days prior to the date that the form relied upon becomes obsolete, and (ii) in connection with change in Beneficial Owners, the undersigned agrees to submit a new Certificate of Non-Foreign Status to the Note Registrar promptly after such change.

Part III -           Declaration

The undersigned, as the Beneficial Owner or a nominee thereof, agrees to notify the Note Registrar within sixty (60) days of the date that the Beneficial Owner becomes a foreign person. The undersigned understands that this certificate may be disclosed to the Internal Revenue Service by the Note Registrar and any false statement contained therein could be punishable by fines, imprisonment or both.

Under penalties of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief it is true, correct and complete and will further declare that I will inform the Trust of any change in the information provided above, and, if applicable, I further declare that I have the authority* to sign this document.

_____
Name

_____
Title (if applicable)

_____
Signature and Date

*Note: If signed pursuant to a power of attorney, the power of attorney must accompany this certificate.

EXHIBIT M

FORM OF INVESTMENT LETTER [NON-RULE 144A]

[DATE]

Wilmington Trust Company, as Owner Trustee
Rodney Square North, 1100 North Market Street,
Wilmington, DE 19890

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

> Re:    American Home Mortgage Investment Trust 2007-SD1 Notes,
> Series 2007-SD1, Class [___] (the "Notes")

Ladies and Gentlemen:

In connection with our acquisition of the above-captioned Notes, we certify that (a) we understand that the Notes are not being registered under the Securities Act of 1933, as amended (the "Act"), or any state securities laws and are being transferred to us in a transaction that is exempt from the registration requirements of the Act and any such laws, (b) we are an "accredited investor," as defined in Regulation D under the Act, and have such knowledge and experience in financial and business matters that we are capable of evaluating the merits and risks of investments in the Notes, (c) we have had the opportunity to ask questions of and receive answers from the Depositor concerning the purchase of the Notes and all matters relating thereto or any additional information deemed necessary to our decision to purchase the Notes, (d) we are not an employee benefit plan that is subject to the Employee Retirement Income Security Act of 1974, as amended, or a plan that is subject to Section 4975 of the Internal Revenue Code of 1986, as amended, nor are we acting on behalf of any such plan, (e) we are acquiring the Notes for investment for our own account and not with a view to any distribution of such Notes (but without prejudice to our right at all times to sell or otherwise dispose of the Notes in accordance with clause (g) below), (f) we have not offered or sold any Notes to, or solicited offers to buy any Notes from, any person, or otherwise approached or negotiated with any person with respect thereto, or taken any other action which would result in a violation of Section 5 of the Act, and (g) we will not sell, transfer or otherwise dispose of any Notes unless (1) such sale, transfer or other disposition is made pursuant to an effective registration statement under the Act or is exempt from such registration requirements, and if requested, we will at our expense provide an opinion of counsel satisfactory to the addressees of this certificate that such sale, transfer or other disposition may be made pursuant to an exemption from the Act, (2) the purchaser or transferee of such Non-Offered Note has executed and delivered to you a certificate to substantially the same effect as this certificate, and (3) the purchaser or transferee has otherwise complied with any conditions for transfer set forth in the Indenture.

Very truly yours,

[TRANSFEREE]


By: _____
        Authorized Officer

EXHIBIT N

<u>TRANSFEROR CERTIFICATE</u>

Wilmington Trust Company, as Owner Trustee
Rodney Square North, 1100 North Market Street
Wilmington, DE 19890

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

> Re: <u>Proposed Transfer of Notes, Class [\_\_\_], American Home Mortgage Investment Trust 2007-SD1</u>

Gentlemen:

This certification is being made by _____ (the "Transferor") in connection with the proposed Transfer to _____ (the "Transferee") of a non-offered note, Class [\_\_\_] (the "Non-Offered Note") representing \_\_\_% fractional undivided interest in American Home Mortgage Investment Trust 2007-SD1 (the "Trust"), issued pursuant to an Indenture, dated as of March 13, 2007 (the "Indenture"), among American Home Mortgage Investment Trust 2007-SD1, (the "Issuing Entity"), Deutsche Bank National Trust Company, as Indenture Trustee (the "Indenture Trustee"), and Wells Fargo Bank, N.A., as Securities Administrator (the "Securities Administrator"). Initially capitalized terms used but not defined herein have the meanings assigned to them in Appendix A to the Indenture. The Transferor hereby certifies, represents and warrants to, and covenants with, the Company, the Owner Trustee and the Note Registrar that:

Neither the Transferor nor anyone acting on its behalf has (a) offered, pledged, sold, disposed of or otherwise transferred any Non-Offered Note, any interest in any Non-Offered Note or any other similar security to any person in any manner, (b) has solicited any offer to buy or to accept a pledge, disposition or other transfer of any Non-Offered Note, any interest in any Non-Offered Note or any other similar security from any person in any manner, (c) has otherwise approached or negotiated with respect to any Non-Offered Note, any interest in any Non-Offered Note or any other similar security with any person in any manner, (d) has made any general solicitation by means of general advertising or in any other manner, or (e) has taken any other action, that (as to any of (a) through (e) above) would constitute a distribution of the Notes under the Securities Act of 1933 (the "Act"), that would render the disposition of any Non-Offered Note a violation of Section 5 of the Act or any state securities law, or that would require registration or qualification pursuant thereto. The Transferor will not act in any manner set forth in the foregoing sentence with respect to any Non-Offered Note. The Transferor has not and will not sell or otherwise transfer any of the Notes, except in compliance with the provisions of the Indenture.

Date: _____

_____
Name of Transferor

_____
Signature

_____
Name

_____
Title

EXHIBIT O

FORM OF ERISA LETTER

[DATE]

Wilmington Trust Company, as Owner Trustee
Rodney Square North, 1100 North Market Street
Wilmington, DE 19890

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

Re:    Proposed Transfer of Notes, Class [Class I-M-1][Class I-M-2][Class I-M-3][Class I-M-4][Class I-M-5][Class I-M-6] Notes, <u>American Home Mortgage Investment Trust 2007-SD1 (the "Notes")</u>

Gentlemen:

This certification is being made by _____ (the "Transferee") in connection with the proposed Transfer by _____ (the "Transferor") of non-offered note (the "Non-Offered Note") representing __% fractional undivided interest in American Home Mortgage Investment Trust 2007-SD1 (the "Trust"), issued pursuant to an Indenture, dated as of March 13, 2007 (the "Indenture"), among American Home Mortgage Investment Trust 2007-SD1, (the "Issuing Entity"), Deutsche Bank National Trust Company, as Indenture Trustee (the "Indenture Trustee"), and Wells Fargo Bank, N.A., as Securities Administrator (the "Securities Administrator"). Initially capitalized terms used but not defined herein have the meanings assigned to them in Appendix A to the Indenture. The Transferor hereby certifies, represents and warrants to, and covenants with, the Company, the Owner Trustee and the Note Registrar that:

(i)      either (a) or (b) is satisfied, as marked below:

____   a.    The Transferor is not any employee benefit plan or other plan subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Section 4975 of the Internal Revenue Code of 1986 (the "Code")(each, a "Plan"), a Person acting, directly or indirectly, on behalf of a Plan or any Person acquiring such Non-Offered Note with "plan assets" of a Plan within the meaning of the Department of Labor regulation promulgated at 29 C.F.R. § 2510.3-101; or

____   b.    The Transferor is a Plan, a Person acting, directly or indirectly, on behalf of a Plan or a Person acquiring such Certificates with "plan assets" of a Plan within the meaning of the Department of Labor regulation promulgated at 29 C.F.R. § 2510.3-101 and has provided the Note Registrar with an Opinion of Counsel, satisfactory to the Depositor, the Owner Trustee, the Indenture Trustee, the Note Registrar and the Seller to the effect (A) that the purchase and holding of a Non-Offered Note by or on behalf of the Transferor (B) operation of the Trust and (C) management of Trust assets are permissible under applicable law, will not constitute or result in a prohibited

transaction under Section 406 of ERISA or Section 4975 of the Code (or comparable provisions of any subsequent enactments) and will not subject the Depositor, the Owner Trustee, the Indenture Trustee, the Note Registrar, the Sponsor, the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer to any obligation or liability (including liabilities under ERISA or Section 4975 of the Code) in addition to those undertaken in the Indenture, which opinion of counsel shall not be an expense of the Depositor, the Owner Trustee, the Indenture Trustee, the Note Registrar, the Securities Administrator, the Sponsor, the RMBS Master Servicer, the RMBS Servicer, the HELOC Servicer or the HELOC Back-Up Servicer; and

(ii)  the Transferor is familiar with the prohibited transaction restrictions and fiduciary responsibility requirements of Sections 406 and 407 of ERISA and Section 4975 of the Code and understands that each of the parties to which this certification is made is relying and will continue to rely on the statements made in this paragraph.

Very truly yours,

By:  _____
Name:  _____
Title:  _____

EXHIBIT P

FORM OF TRANSFEREE CERTIFICATE

Wilmington Trust Company, as Owner Trustee
Rodney Square North, 1100 North Market Street
Wilmington, DE 19890

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

      Re:     Proposed Transfer of Trust Notes, Class [_____],
              American Home Mortgage Investment Trust 2007-SD1 (the "Notes")

Gentlemen:

       This certification is being made by _____ (the "Transferee") in connection with the proposed Transfer by _____ (the "Transferor") of a non-offered note (the "Non-Offered Note") representing __% fractional undivided interest in American Home Mortgage Investment Trust 2007-SD1 (the "Trust"), issued pursuant to an Indenture, dated as of March 13, 2007 (the "Indenture"), among American Home Mortgage Investment Trust 2007-SD1, (the "Issuing Entity"), Deutsche Bank National Trust Company, as Indenture Trustee (the "Indenture Trustee"), and Wells Fargo Bank, N.A., as Securities Administrator (the "Securities Administrator"). Initially capitalized terms used but not defined herein have the meanings assigned to them in Appendix A to the Indenture. The Transferor hereby certifies, represents and warrants to, and covenants with, the Company, the Owner Trustee and the Note Registrar that:

       The Transferee is a REIT or a Qualified REIT Subsidiary within the meaning of Section 856(a) or Section 856(i) of the Code, respectively.

Date: _____

                              _____
                                  Name of Transferee

                              _____
                                    Signature

                              _____
                                    Name

                              _____
                                    Title

EXHIBIT Q

FORM OF LENDER TRANSFEROR CERTIFICATE

Wilmington Trust Company, as Owner Trustee
Rodney Square North, 1100 North Market Street
Wilmington, DE 19890

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

      Re:     Proposed Transfer of Notes, Class [_____],
             American Home Mortgage Investment Trust 2007-SD1 (the "Notes")

Gentlemen:

      This certification is being made by _____ (the "Transferor") in connection with the proposed pledge or transfer to _____ of Certificates representing __% fractional undivided interest in American Home Mortgage Investment Trust 2007-SD1, issued pursuant to an Indenture, dated as of March 13, 2007 (the "Indenture"), among American Home Mortgage Investment Trust 2007-SD1, (the "Issuing Entity"), Deutsche Bank National Trust Company, as Indenture Trustee (the "Indenture Trustee"), and Wells Fargo Bank, N.A., as Securities Administrator (the "Securities Administrator"). Initially capitalized terms used but not defined herein have the meanings assigned to them in Appendix A to the Indenture. The Transferor hereby certifies, represents and warrants to, and covenants with, the Owner Trustee, the Indenture Trustee and the Note Registrar that:

      (a) The Notes are being pledged by the Transferor to secure indebtedness of [_____] or is the subject of a loan agreement or repurchase agreement treated as secured indebtedness of [_____] for federal income tax purposes as permitted under the Indenture; or

      (b) The Notes are being transferred by the related lender under a loan agreement or repurchase agreement upon a default under any such indebtedness as permitted under the Indenture.

Date: _____

_____
Name of Transferor

_____
Signature

_____
Name

_____
Title