# EXHIBIT A

# COMMERCIAL LEASE

THIS LEASE, made and entered into as of the 29th day of December, 2005 by and between, McLAIN PARTNERS II (hereinafter called "Lessor") and <u>American Home Mortgage Corp.</u> (hereinafter called "Lessee"),

WITNESSETH, that the said Lessor for and in consideration of the rents, covenants and agreements hereinafter mentioned and hereby agreed to be paid, kept and performed by said Lessee, or Lessee's successors and assigns, has leased and by these presents does lease to said Lessee the following described premises, situated in the State of Missouri, to wit:

**PREMISES:** 4409 MERAMEC BOTTOM ROAD, SUITE B, ST. LOUIS, MO 63129, containing approximately <u>2800</u> square feet of floor space. The premises are part of the commercial center depicted on Exhibit A attached hereto and made a part hereof to be constructed by Lessor (the "Center"), and the location of the premises within the Center is also depicted thereon.

**USE OF** Use shall be for : Office/Administrative

**TERM AND** The term of this Lease shall be 3 years, commencing : May 1, 2006 – ending April 30, 2009. Lessor will give Lessee fifteen (15) days prior to occupancy April 1, 2006 for telephone and communication systems "hook up", "debugging" and furniture installation, at no charge to Lessee. Lessor shall give Lessee seven (7) days written notice of said Prior Occupancy. Lessor warrants that all phone service lines are delivered to the Premises.

Base rent shall be $16.00 per square foot per year, being $44,800.00 per year, payable in advance in equal monthly installments of $3,733.33 PER MONTH on the first day of each and every month during the said term. In addition, Lessee shall pay its prorata share of estimated insurance, taxes and common area maintenance expenses as hereinafter provided. Initially, such estimated payments shall be at the rate of $2.75 per square foot per year, payable in monthly installments on the first day of each and every month in the amount of $641.67. Base year is 2006.

**UTILITIES** Lessor will pay electric. Lessee will pay janitorial, security and phone expenses for the premises.

**CONSTRUCTION** Lessor shall cause the premises to be constructed in accordance with
**BY LESSOR:** plans and specifications to be approved by Lessor and Lessee, which approval shall not be unreasonably delayed, withheld or conditioned. Such construction shall be accomplished at the expense of Lessor.

Lessee and Lessor's offer to lease is contingent upon its ability to obtain all necessary governmental occupancy permits otherwise lease will become null and void.

**EXTENSION** Lessee shall be granted two (2) three (3) year options to extend the term of this
**OPTIONS:** Lease on the following terms and conditions: Renewal terms will be based on existing market rates. Lessee gives Lessor six (6) months prior written notice. Provided Lessee exercises its second renewal term, Lessor shall re-carpet and re-paint. Lessor shall adjust base year upon each renewal term.

**TERMINATION:** Lessee shall be granted one (1) termination option at the end of the second year of the term. Lessee will incur a penalty of the unamortized portion of construction costs and unamortized commissions paid by Lessor. This amount is equal to eight thousand five hundred and sixty six dollars and sixty six cents ($8,566.66). Lessor shall require one hundred and twenty (120 ) days written notice of such termination prior to the end of the second year.

INITIAL HERE: _____ & _____   PAGE 1 OF 11

3249808

| | |
|---|---|
| **PARKING:** | Lessor shall provide Lessee unallocated parking spaces for Lessee's use within the Center. Lessee acknowledges that only licensed passenger vehicles will be parked in parking lot and area surrounding the building and that they are not to be used for storage. Parking ratio is 6/1000 SF. |
| **SIGNAGE:** | Lessee shall have the right, at Lessee's expense, to install lighted building façade signage. All exterior signage will be subject to Lessor's approval, that will not be unreasonably delayed, withheld or conditioned, and will conform to all government requirements. Lessor will provide standard suite identification signage only. |
| **COMMON AREAS:** | Lessee and its employees, customers, guests and invitees shall have the non-exclusive right to use the entrances, drive lanes, parking lots, sidewalks and other areas of the Center provided for the common use of the lessees of the Center (the "Common Areas"). |
| **NON-COMPETE:** | Lessor shall not lease space within the surrounding buildings or complex to any other future lessees that will compete with Lessee. |
| **ASSIGNMENT OR SUBLETTING:** | This lease is not assignable, nor shall said premises or any part thereof be sublet, used or permitted to be used for any purpose other than above set forth without the written consent of the Lessor, which consent shall not be unreasonably delayed, withheld or conditioned. If this Lease is assigned or the premises or any part thereof sublet without the written consent of the Lessor, or if the Lessee shall become the subject of a court proceeding in bankruptcy or liquidating receivership or shall make an assignment for the benefit of creditors, this Lease may by such fact or unauthorized act be canceled at the option of the Lessor. Any assignment of this lease or subletting of said premises or any part thereof with the written consent of the Lessor shall not operate to release the Lessee from the fulfillment on Lessee's part of the covenants and agreements herein contained to be by said Lessee performed, nor authorize any subsequent assignment or subletting without the written consent of the Lessor Lessee shall retain all profits from such subleases, provided Lessee remains liable for lease payments required under the lease agreement. Notwithstanding anything to the contrary contained herein, Tenant shall have the right to assign this Lease without the Landlord's consent or notice to: (a) a subsidiary, affiliate or parent company; (b) any firm, corporation, or entity which the Tenant controls, is controlled by, or is under common control with; (c) any partnership in which it has a majority interest; or (d) to any entity which succeeds to all substantially all of its assets whether by merger, sale or otherwise. |
| **LATE FEE:** | If Lessor is not in receipt of the Lease payment by the 10th of the month due, the Lessee will be charged an additional $250.00 per month in late payment fees |
| **REPAIRS AND ALTERATIONS:** | All repairs or alterations deemed necessary by the Lessee shall be made by said Lessee at Lessee's cost and expense, and all repairs and alterations so made shall remain as a part of the realty. No other alterations shall be made without the prior written consent of Lessor, which consent shall not be unreasonably delayed, withheld or conditioned. |
| | Landlord certifies that the HVAC unit installed as part of Landlord's Work is new. Tenant's liability toward's the HVAC shall be limited to $500. |
| | The Lessor reserves the right to prescribe the form, size, character and location of any and all awnings affixed to and all signs which may be placed or painted upon any part of the |

INITIAL HERE _JC_ & _BM_    PAGE 2 OF 11

3249808

premises, and the Lessee agrees not to place any awning or sign on any part of the premises without the written consent of the Lessor (which consent shall not be unreasonably delayed, withheld or conditioned), or to bore or cut into any column, beam or any part the premises without the written consent of the Lessor (which consent shall not be unreasonably delayed, withheld or conditioned). The Lessee and all holding under said Lessee agrees to use reasonable diligence in the care and protection of said premises during the term of this Lease, to keep the water pipes, sewer drains, and heating apparatus in good order and to surrender said premises at the termination of this Lease in substantially the same and in as good condition as received, ordinary wear and tear and loss due to casualty excepted.

The Lessee agrees to keep said premises in good order and repair and free from any nuisance or filth upon or adjacent thereto, and not to use or permit the use of the same or any part thereof for any purpose forbidden by law or ordinance now in force or hereafter enacted in respect to the use or occupancy of said premises. The Lessor or legal representatives may, during all business hours of Lessee, except in an emergency, enter upon said premises for the purpose of examining the condition thereof and making such repairs as Lessor may see fit to make. Lessor will give 24 hours notice prior to any such entry, except in an emergency.

If the cost of insurance to said Lessor on said premises shall be increased by reason of the occupancy and nature of use of said premises by said Lessee or other person under said Lessee, all such increase over the existing rate shall be paid by said Lessee to said Lessor on demand.

**DAMAGE OR DESTRUCTION:** Lessor shall not be liable to said Lessee or any other person or corporation, including employees, for any damage to their person or property caused by water, rain, snow, frost, fire, storm and accidents, or by breakage, stoppage or leakage of water, gas, heating and sewer pipes or plumbing, upon, about or adjacent to said premises.

The destruction of said premises or the building containing said premises by fire or the elements or such material injury thereto so as to render said premises unquestionably untenantable for 90 days or more, shall at the option of either said Lessor or Lessee produce and work a termination of this Lease.

If the Lessor and Lessee cannot agree as to whether said building or premises are unquestionably untenantable for 90 days or more, the fact shall, at the option of either Lessor or Lessee, be determined by arbitration in St. Louis County in accordance with the rules of the American Arbitration Association.

If it is determined by arbitration, or agreement between the Lessor and the Lessee, that said building or premises are not unquestionably untenantable for 90 days or more, then Lessor must restore said building and/or said premises at Lessor's own expense, with reasonable speed and promptness, and in such case a just and proportionate part of the rent payable under this Lease shall be abated until said building and/or premises have been restored.

**DEFAULT:** Failure on the part of the Lessee to pay any installment of rent or increase of insurance rate promptly as above set out, as and when the same becomes due and payable, or failure of the Lessee promptly and faithfully to keep and perform each and every covenant, agreement and stipulation herein on the part of the Lessee to be kept and performed, shall at the option of the Lessor cause the forfeiture of this Lease; provided that, prior to declaring any such forfeiture, Lessor shall deliver written notice to Lessee specifying the failure in payment or performance by Lessee and permitting Lessee to cure such failure within 7 days following Lessee's receipt of such notice in the event of a failure to pay any sum due under this Lease or 30 days following Lessee's receipt of such notice in the event of any other failure by Lessee. If Lessor shall prevail in any court proceeding to enforce any term, covenant or

INITIAL HERE _____ & _____    PAGE 3 OF 11

3249808

condition hereof, the non-prevailing party shall reimburse the prevailing party for its costs and reasonable attorney's fees in connection with any such proceeding and in connection with the enforcement of any judgment or order rendered in such proceeding.

Possession of the premises and all additions and permanent improvements thereof shall be delivered to Lessor upon 10 day's written notice that Lessor has exercised said option, and thereupon Lessor shall be entitled and may take immediate possession of the premises, any other notice or demand being hereby waived. Any and all notices to be served by the Lessor upon the Lessee for any breach of covenant of this Lease, or otherwise, shall be served upon the Lessee in person, or left with anyone in charge of the premises, or posted upon some conspicuous part of said premises.

**RE-ENTRY:** Said Lessee will quit and deliver up the possession of said premises to the Lessor or Lessor's heirs, successors, agents, or assigns, when this lease terminates by limitation or forfeiture, with all window glass replaced, if broken, and with all keys, locks, bolts, plumbing fixtures, and heating appliances in as good order and condition as the same are now, or may hereafter be made by repair in compliance with all the covenants of this Lease, except for ordinary wear and tear and loss due to casualty.

But it is hereby understood, and Lessee hereby covenants with the Lessor, that such forfeiture, annulment or voidance shall not relieve the Lessee from the obligation of the Lessee to make the monthly payments of rent hereinbefore reserved, at the times and in the manner aforesaid; and in case of any such default of the Lessee, the Lessor may re-let the said premises as the agent for and in the name of the Lessee at any rental readily obtainable, applying the proceeds and avails thereof, first, to the payment of such expense as the Lessor may be put to in re-entering, and then to the payment of said rent as the same may from time to time become due, and toward the fulfillment of the other covenants and agreements of the Lessee herein contained, and the balance, if any, shall be paid to the Lessee; and the Lessee hereby covenants and agrees that if the Lessor shall recover or take possession of said premises as aforesaid, and be unable to re-let the same so as to realize a sum equal to the rent hereby reserved, the Lessee shall and will pay to the Lessor any and all loss of difference of rent for the residue of the term. The Lessee hereby gives to the Lessor the right to place and maintain its usual "for rent" signs upon the premises, in the place that the same are usually displayed on property similar to that herein demised, for the last thirty (30) days of this Lease.

**INSURANCE:** It is agreed Lessee shall maintain bodily injury liability and property damage insurance of not less than $1,000,000.00 each occurrence and $1,000,000.00 aggregate, protecting Lessee from liability to any individual, partnership or corporation by reason of any injury or damage sustained on the Lessee's premises. Lessor to be designated as additional insured. Certificate of insurance will be furnished to the Lessor.

**MAINTENANCE BY LESSOR:** Lessor shall maintain the Common Areas, including (without limitation) parking lot and walkway maintenance, lawn and shrubbery maintenance, common area lighting, snow removal, reasonable trash removal, and exterior exterminating. Lessor will provided all other maintenance services at Lessor's expense including HVAC, plumbing, sewer and lights, unless damage is due to Lessee's negligence. Lessor shall, at its expense, maintain the foundations, exterior walls, roofs and structure of all buildings within the Center.

**INSURANCE, CAM & TAXES:** During the term of this Lease, including any and all extension terms, Lessee shall pay its pro rata portion of Lessor's costs of maintaining Insurance (as hereinafter defined), CAM (as hereinafter defined) and Taxes (as hereinafter defined). The portion of such costs payable by Lessee shall be based on the ratio which is the number of square feet of gross area occupied by the Lessee in the Center in relationship to the total number of square

INITIAL HERE: _____ & _____   PAGE 4 OF 11

3249808

feet of gross area in the entire Center. Lessor and Lessee agree that the Lessee's share is based on 2800 square feet of a total of 72,520 square feet which is equal to 3.86 %. Initially, Taxes are estimated to cost $1.60 per square foot, insurance is estimated to cost $.15 per square foot, and CAM is estimated to cost $1.00 per square foot. Notwithstanding any provision to the contrary contained herein, Lessee's liability for the foregoing expenses shall not exceed 3% over the previous year's liability, except for Taxes, Insurance and public utilities.

Taxes shall include, without limitation, any tax, assessment or governmental charge (herein collectively referred to as "Tax" or "Taxes") imposed against the Center, or against any of Lessor's personal property used in the operation and/or maintenance of the Center. Taxes shall also include any special assessment levied or charged against the Center by any local municipality; provided that any such special assessment that can be paid in installments over any extended period of time shall be so paid. Such installments shall also include any applicable interest thereon. Taxes, as herein contemplated, are predicated on the present system of taxation in the state of Missouri. Therefore, if due to a future change in the method of taxation any rent, franchise, use, profit or other tax shall be levied against Lessor in lieu of any charge which would otherwise constitute a Tax, such rent, franchise, use, profit or other tax shall be deemed to be a Tax for the purposes herein. In the event Lessor is assessed with a Tax which Lessor, in its sole discretion, deems excessive, Lessor may challenge said Tax or may defer compliance therewith to the extent legally permitted; and, in the event thereof, Lessee shall be liable for Lessee's proportionate share of all costs in connection with such challenge or deferment, including any costs incurred by Lessor prior to the term of this Lease, to the extent that such costs relate to any Tax savings which may be realized during the lease term. The foregoing notwithstanding, Taxes shall not include any income taxes of Lessor.

Insurance shall include, without limitation, premiums and deductibles for liability, property damage, fire, workers compensation, rent and any and all other insurance (herein collectively referred to as "Insurance") which Lessor reasonably deems necessary to carry on, for, or in connection with the operation of the Center or the protection of the Center and the interests of Lessor and Lessor's agents. In addition thereto, in the event Lessee's use of the Premises should result in an increase of any of Lessor's Insurance premiums, Lessee shall pay to Lessor, upon demand, as Additional Rent, an amount equal to such increase in Insurance.

Common area maintenance (hereinafter referred to as "CAM") shall include all costs and expenses incurred by Lessor in operating and maintaining the Center including, without limitation: maintaining, repairing and replacing, as necessary, the Common Areas of the Center and all systems therein; the cost for all service agreements and subcontractor charges; common utilities; exterior and mall lighting; landscaping; snow removal; fire protection and security (if provided); any private trustee or indenture charges; wages/salaries and benefits of all employees engaged in the operation and management of the Center, together with any applicable social security taxes, employment taxes or other taxes levied against such wages/salaries; maintenance, repair and replacement, as necessary, of the sprinkler systems, downspouts, gutters and nonstructural portions of the roof, and all trunkline plumbing, electrical and mechanical systems (as distinguished from the branchline systems and fixtures); the paving, resealing and/or re-striping of all parking facilities, access roads, driveways, sidewalks and passageways; heating, ventilation and air conditioning ("HVAC") of the Common Areas of the Center, if applicable, as well as all repairs and maintenance to the HVAC units servicing such Common Areas; all Center signage; exterior painting and interior painting of the common areas of the Center; management fees; cleaning and vermin extermination; capital improvements which are required by any governmental authority to

INITIAL HERE: _____ & _____     PAGE 5 OF 11

3249808

keep the Center in compliance with all applicable statutes, codes and regulations; the amortized cost of any capital improvements which reduce other CAM charges, but in an amount not to exceed the CAM reduction for the relevant year; the rental and/or amortized costs of any machinery or equipment used in connection with the operation of the Center; and all other expenses incurred by Lessor for or on behalf of the Center. Notwithstanding any provision to the contrary contained herein, CAM charges shall not include any expense chargeable to a capital account or any capital improvement (other than aforesaid), ground lease rents or charges, principal or interest payments on any mortgage or deed of trust on the Center, brokers commissions, amortization or depreciation charges (other than aforesaid), any costs for which Lessor has been or is entitled to be paid or reimbursed by Lessee or any other lessee or third party, costs of alterations of the premises of other lessees of the Center, costs of repairing or replacing any defects in material or workmanship during the first year following completion of construction of the Center.

Lessor shall have the right to invoice Lessee monthly, quarterly, or otherwise from time to time, for Lessee's proportionate share of the Taxes, Insurance and CAM charges, as reasonably estimated by Lessor; and Lessee shall pay to Lessor, as Additional Rent, those amounts for which Lessee is invoiced within thirty (30) days after receipt of said invoice. Any monies paid in advance to Lessor by Lessee shall not accrue interest thereon. After each calendar year, Lessor shall deliver a statement to Lessee setting forth the actual amounts of Taxes, Insurance and CAM charges for the Center, itemized in reasonable detail, Lessee's proportionate share thereof and the total amount of payments paid by Lessee to Lessor for such purposes. In the event Lessee's actual obligation exceeds Lessee's payments, Lessee shall pay the difference to Lessor within thirty (30) days after receipt of Lessor's statement.

In the event this Lease expires on a date other than the end of a billing period, Lessee's obligation with respect to any amounts owed to Lessor shall survive the expiration of the lease term; and, at Lessor's option, Lessee shall pay such amounts (a) after the lease term when the same have been accurately determined within fifteen (15) days after receipt of Lessor's statement, or (b) in an amount reasonably estimated by Lessor prior to the expiration of the lease term.

Within ninety (90) days after receipt of each year-end statement, Lessee or its authorized agent shall have the right, at Lessee's sole cost and expense, to inspect and audit Lessor's records with respect to Taxes, Insurance and CAM and Lessee's proportionate share of Additional Rent, which audit shall be at the office of Lessor's managing agent, upon not less than five (5) days prior written notice, during said agent's normal business hours. Except as aforesaid, Lessor shall not be obligated to provide Lessee with detailed summaries or receipts for any expenses incurred by or on behalf of the Center, but Lessor shall provide Lessee with one or more statements setting forth such expenses, categorized by class and amount. Unless Lessee asserts specific errors within one hundred twenty (120) days after receipt of any year-end statement, said statement shall be deemed to be correct.

**SUBORDINATION:** From time to time either before or after the execution of this Lease and before the termination of the term thereof, Lessor may execute a mortgage or trust deed in the nature of a mortgage against the Center or the Lessor's interest therein. In such event, if requested by the mortgagee or trustee, the Lessee will subordinate its interest in this Lease to said mortgage or trust deed and will execute such subordination agreement or agreements as may be reasonably required by said mortgagee or trustee; provided however that so long as the Lessee shall not be in default under this lease, its right of possession and enjoyment of the premises shall be and remain undisturbed and unaffected by said mortgage or deed or by any

foreclosure proceedings thereunder and any subordination agreement executed pursuant to this paragraph of the Lease shall contain language specifically so providing.

**SECURITY DEPOSIT:** Lessee to pay security deposit equal to one month's base rent of $3,733.33 plus one month's prorata share in the amount of $641.67 of estimated insurance, taxes and common area maintenance to be held by Lessor to insure faithful performance of this Lease.

**CONSTRUCTION WAIVER** No waiver of any forfeiture, by acceptance of rent or otherwise, shall waive subsequent cause of forfeiture, or breach of any condition of this Lease; nor shall any consent by the Lessor to any assignment or subletting or said premises, or any part thereof, be held to waive or release any assignee or subleases from any of the foregoing conditions or covenants as against him or them; but every such assignee and sublessee shall be expressly subject thereto.

Whenever the word "Lessor" is used herein it shall be construed to include the heirs, executors, administrators, successors, assigns or legal representatives of the Lessor; and the word "Lessee" shall include the heirs, executors, administrators, successors, assigns or legal representatives of the Lessee and the words "Lessor" and "Lessee" shall include single and plural, individual or corporation, subject always to the restrictions herein contained, as to the subletting or assignment of this Lease.

**HOLDOVER:** Lessee requires the right to remain in its premises for up to 3 months after lease expiration under the same terms and condition as its original space leased, including rental rate and thereafter a rental rate not to exceed 125% of the base rate then being paid. Lessee further requires the right to terminate this holdover upon 30 days' notice.

**NOTICES:** Any notice, demand or other document to be given under this Lease shall be in writing and shall be delivered personally or sent by United States registered mail, return receipt requested, postage prepaid addressed to Tenant or Landlord at the appropriate respective address set forth below and the same shall be deemed delivered upon receipt, if personally delivered, or two (2) business days after deposit in the mail, if mailed. A party may change its address for receipt of notices by service of a notice of such change in accordance herewith.

If to Lessor:  McLain Partners II
11116 South Towne Square, Suite 300
St. Louis, MO 63123

If to Lessee prior to  American Home Mortgage Corp
538 Broadhollow Road
Melville, NY 11747
ATT: Thomas McCambridge
(631) 622-5772

With Copy to:
American Home Mortgage Corp
538 Broadhollow Rd
Melville, NY 11747
ATT: Accounts Payable

commencement of

INITIAL HERE _____ & _____    PAGE 7 OF 11

3249808

the term of this
Lease:

If to Lessee after

at the premises
With Copy to:
American Home Mortgage Corp
538 Broadhollow Road
Melville, NY  11747
ATT:  Thomas McCambridge
(631) 622-5772

With Copy to:
American Home Mortgage Corp
538 Broadhollow Rd
Melville, NY 11747
ATT: Accounts Payable

Commencement of
the term of this
Lease:

**[END OF PAGE.  SIGNATURES ON FOLLOWING PAGE.]**

IN WITNESS WHEREOF, the said parties aforesaid have duly executed the foregoing instrument or caused the same to be executed the day and year first above written.

\*\*Thomas M. McLain is a licensed Real Estate Broker in the State of Missouri and is Owner/Broker of McLain Partners II
\*\*McLain Properties is agent for McLain Partners II and does not represent Lessee
\*\*Elizabeth J. McLain is a licensed Real Estate Agent in the State of Missouri and is Owner/Agent of McLain PartnerII

LESSOR: McLAIN PARTNERS II

By _[signature]_ DATE: _1-25-06_
ELIZABETH McLAIN

Title _Owner - Agent_

LESSEE:

_[signature]_ DATE: _1/23/06_
ALAN HORN

Title _COP_

PLEASE MAKE ALL CHECKS PAYABLE TO:

McLAIN PARTNERS II
11116 SOUTH TOWNE SQ.
SUITE 300
ST. LOUIS, MO 63123
FID #43-1916131

INITIAL HERE _[initials]_ & _[initials]_     PAGE 9 OF 11
3249808

# General Information and Emergency Contact

Lessee Name: *American Home Mortgage Corp*

Address: *538 Broadhollow Road*
*Melville NY 11747*

Phone Number: *631-622-5772    631-622-5390*

Federal ID#: *13-3461558*

Social Security #: *n/A*

Emergency Contract Numbers: *631-622-5772*

INITIAL HERE: [initials]    &    [initials]    PAGE 10 OF 11

3249808

# EXHIBIT A

[Floor Plan of American Home Mortgage Corp Suite]

INITIAL HERE: _____ & _____          PAGE 11 OF 11

3249808



AMERICAN HOME MORTGAGE
SCALE ⅛"