FILED

2008 MAR 28  AM 10: 23

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**
_____X
                                    :
**In re:**                          :
                                    :  **Chapter 11**
**AMERICAN HOME MORTGAGE CORP**     :  **Case No. 1:07-BK-11051(CSS)**
                                    :
        Debtor.                     :
                                    :
_____X

**MOTION FOR LEAVE TO FILE LATE PROOF OF CLAIM**

Gil Quentin Alvarez, petitioner appearing PRO SE, a creditor of the **Debtor** **AMERICAN HOME MORTGAGE**, respectfully submits to this Honorable Court:

1. That on or about February 2008 Creditor appeared at the Eastern District of New York to file a suit PRO SE against American Home Mortgage and several of it's employees alleging violations of Section 6 of the Real Estate Settlement and Procedures Act  12 U.S.C. 2605, 2614 (RESPA), the Truth-In-Lending Act  15 U.S.C. 1601 et.seq. (TILA), Misrepresentation, Fraud and Negligence.  At the PRO SE desk, Creditor was informed that because **Debtor** was in bankruptcy, Creditor was barred from implementing a lawsuit for the damages incurred and from hauling **Debtor**'s employees and agents to face justice before the Honorable Court of the Eastern District of New York.  Creditor was advised to file a proof of claim in Bankruptcy Court.

2. This constituted the first time that Creditor became aware of the fact that **Debtor** **AMERICAN HOME MORTGAGE** was in bankruptcy or had filed a petition in bankruptcy under the name **AMERICAN HOME MORTGAGE CORP**.  That prior to February 2008, Creditor had never been advised by **Debtor AMERICAN HOME MORTGAGE**, or any officer, agent, attorney, servant or representative of the **Debtor** that they had filed for bankruptcy protection.

3. That upon telephoning the office of the bankruptcy clerk in March of 2008; your petitioner was advised that the final date for filing a proof of claim in this cause

was January 11, 2008, and that the time for filing claims has expired as a general rule.

4. That since March 10, 2005, **Debtor** and it's agents, employees, attorney's, servants and representatives have been aware or should have been aware that because of the serious misconduct intentionally and willfully committed against Creditor by **Debtor**, Creditor has incurred thousands of dollars in damages which if not for the unlawful misconduct by the **Debtor**, would not have occurred.

5. Creditor Gil Quentin Alvarez was a highly respected supervisor in the New York City Police Department and served the City of New York with distinction. During his long career in public service, Creditor NEVER engaged in deceit, fraud or any other underhanded misconduct. Creditor is a retired New York City Police Sergeant who was severely beaten by a prisoner and was forced to retire due to his injuries.

6. Creditor and his wife relocated to Florida after Creditor underwent years of surgery, physical therapy and vestibular rehabilitation.

7. On February 5, 2005, Creditor and his wife signed a contract for the sale and purchase of a home in Apopka, Florida. After signing the contract Creditor spoke with Lynette Warren an agent of **Debtor AMERICAN HOME MORTAGE** about obtaining a loan from the **Debtor**. Ms. Warren initially quoted the creditor a rate of 5.75%. After searching other companies, Creditor discovered that he could obtain a loan for 5.25%. When Creditor indicated this to Ms. Warren she *assured* him that she could provide creditor with this very rate (5.25%). Creditor was thereby induced by Ms. Warren based on her representation that she would secure him the same 5.25% rate and "*lock it in*", to agree to the loan from **Debtor AMERICAN HOME MORTGAGE** at *5.25%* (*Emphasis added*).

8. On several occasions, Creditor spoke with Ms. Warren who indicated that all was well with his mortgage request and that the closing would be ahead of schedule since the sellers wanted to sell their home quickly so that they could purchase another home in Tampa, Florida.

9. On March 10, 2005, Creditor was contacted by his real estate broker who indicated to Creditor that his mortgage was 5.75%. Creditor informed the broker

that this was incorrect since Ms. Warren had represented that she had locked Creditor in at 5.25%. Ms. Warren then contacted the Creditor and apologized profusely, stating that she had "totally messed up" and "screwed up." These apologies appeared to Creditor to be completely disingenuous.

10. On March 11, 2005 Creditor, at the closing, voiced his displeasure and unwillingness to be forced to accept the higher interest rate of 5.75% rather than the one represented to him which was 5.25%. Ms. Warren unilaterally proffered Creditor with a document offering Creditor a $600.00 credit on the purchase of another home. Creditor was forced to close on the home with a 5.75% interest rate because the seller was purchasing a home in Tampa, Florida that very same day. Had Creditor not elected to purchase the home, he would have been subject to legal action from the seller.

11. In April, 2005 Creditor spoke with an attorney, Bonita E. Zelman, who represented several fraternal organizations within the NYPD and agreed to assist Creditor at a reduced rate on a claim only basis in his interaction with the **Debtor AMERICAN HOME MORTGAGE**.

12. On April 7, 2005 Creditor and wrote a "Qualified Written Request" for relief pursuant to Section 6 of the Real Estate Settlement and Procedures Act (RESPA 12 U.S.C. 2605). During this time period, **Debtor AMERICAN HOME MORTAGE** was selling the mortgage to Wells Fargo Home Mortgage without informing them of the problems associated with this mortgage.

13. On April 11, 2005 attorney Bonita Zelman contacted Michael Strauss who is the Chairman, President and CEO of **Debtor AMERICAN HOME MORTGAGE** and informed him regarding the misconduct which had occurred to the Creditor. Upon information and belief, Mr. Strauss directed Mr. Alan B. Horn, the General Counsel, to handle the matter. Upon further information and belief, Mr. Horn then directed Ms. Stephanie Alagna, an agent and paralegal, to handle the matter.

14. On April 13, 2005 attorney Bonita Zelman also sent a "Qualified Written Request" to Wells Fargo Home Mortgage requesting inter alia, that they not go through with the transfer of the mortgage.

15. Instead of conducting an investigation into the misconduct committed by their agent, as they are required to by RESPA, **Debtor AMERICAN HOME MORTGAGE** by a letter dated April 29, 2005 lied in their response by indicating that the Creditor had accepted the interest rate of 5.75%. This would be the first of several fabricated versions that the **Debtor** would create in order to wrongfully deprive the Creditor of his rights under the TILA and RESPA and to wrongfully appropriate excess interest to which they were not entitled to.

16. **Debtor** also intentionally misrepresented to Wells Fargo Home Mortgage while they were conducting a RESPA investigation into this matter that Creditor's father-in-law had used the $600.00 credit offered by Ms. Warren, the **Debtor's** agent in Florida. This was an absolute and bald faced falsehood intentionally done to prevent and obstruct Wells Fargo's investigation into this matter.

17. Since **Debtor AMERICAN HOME MORTGAGE** showed no inclination to act appropriately, professionally or to follow the law; Creditor was forced to file complaints with the U.S. Department of Housing and Urban Development and the State of Florida Office of Financial Regulation.

18. In response to inquiries sent by the U.S. Department of Housing and Urban Development and the Florida Office of Financial regulation, **Debtor AMERICAN HOME MORTGAGE** by its employees, continued its pernicious pattern of deceit by continuing to fabricate intentional falsehoods and lies in regards to their commercial interaction with the Creditor (see written communications between Creditor, **Debtor** and other parties are attached hereto as supporting documents in exhibit A).

19. On November 21, 2005 the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development directed Mr. Strauss the Chairman, President and CEO of **Debtor AMERICAN HOME MORTGAGE** to reach a resolution with the Creditor and his attorney within 15 days. **Debtor AMERICAN HOME MORTGAGE** wrongfully refused (See exhibit C).

20. On October 17, 2006 the Office of Financial Regulation in the State of Florida took administrative action against **Debtor AMERICAN HOME MORTGAGE**. In a Stipulation and Consent Agreement the State of Florida fined the **Debtor** five

thousand dollars for their misconduct against the Creditor. This document is signed by Mr. Alan B. Horn, the General Counsel, on behalf of **Debtor** **AMERICAN HOME MORTGAGE** (See exhibit D).

21. Among the factual findings by the Florida Office of Financial Regulation were the following: a) The loan originator acting for the Respondent, Lynette Warren, promised Mr. Alvarez (Creditor) a 5.25% interest rate on a thirty year fixed mortgage. However, Ms. Warren failed to lock-in that 5.25% rate, and at closing, the rate had increased to 5.75%. Mr. Alvarez alleges that he had to accept a mortgage loan at 5.75% interest of face legal action. b) Over the thirty-year life of the mortgage, Mr. Alvarez will incur financial loss. Further, the loan originator's failure to lock-in the promised interest rate constituted negligence and incompetence in a mortgage financing transaction within the meaning of Section 494.0072(2)(b), Florida Statutes (See exhibit D, page 2).

22. As this Honorable Court is aware, this Stipulation and Consent Agreement entered into by the State of Florida Office of Financial Regulation and the **Debtor** **AMERICAN HOME MORTGAGE**, effectively estops the **Debtor** from now creating further fabrications and lies against the Creditor.

23. On December 4, 2006 attorney Bonita Zelman requested that Mr. Strauss the Chairman, President and CEO of Debtor **AMERICAN HOME MORTGAGE** set up a meeting with Wells Fargo Home Mortgage so as to settle this matter. As has been custom and practice, **Debtor** refused to settle this matter.

24. After receiving no response to repeated requests for a resolution to this matter, attorney Bonita Zelman contacted **Debtor** to request a settlement. **Debtor** asked Creditor's attorney to indicate Creditor's losses in the form of a letter. Creditor's attorney mailed said letter on April 5, 2007. This letter was mailed to John Kalas, an attorney employed by **Debtor AMERICAN HOME MORTGAGE.**

25. On April 13, 2007 **Debtor** after initially indicating their willingness to settle, and upon information and belief in knowing that they would file for bankruptcy protection, refused to settle.

26. That at no time did the **Debtor** or attorney for the **Debtor** despite the above constant and continuous history and notice, as evidenced by the supporting

documents attached to the proof of claim in exhibit A, advise or notify the trustee, the attorney for the trustee, or the bankruptcy judge of the misconduct and possible claims that arose from their misconduct toward the Creditor, contrary to the law in such cases.

27. Due process and equitable concerns require that a Creditor who does not have actual notice or knowledge of a bankruptcy must be permitted to file a proof of claim tardily.

28. **Debtor AMERICAN HOME MORTGAGE** was required to give notice that is reasonably calculated to reach all interested parties, reasonably conveys all required information of the bar date for the filing of proofs of claim.

29. That inasmuch as your petitioner did not have knowledge of the bankruptcy pending in this court, a proof of claim was not timely filed. Since movant (Creditor) had no knowledge or notice from the **Debtor**, the delay in filing was not within the reasonable control of the movant. Upon information and belief, **Debtor** has not listed the claim in the schedule.

30. That it would be in the best interests of justice that the proof of claim attached hereto be filed in this bankruptcy so that the Creditor may proceed to prosecute his claim in accordance with the law. The **Debtor** will not be harmed or injured by the filing of the proof of claim at this time any more than it would have been injured or damaged had the proof of claim been filed timely. The proof of claim would have been timely filed if the **Debtor** with its many agents, in-house counsel, employees who had actual knowledge of the facts herein, and/or the attorney for the **Debtor,** had advised or notified the Creditor and your petitioner herein of the bankruptcy situation.

31. To allow the **Debtor** not to answer for their misconduct in this forum would allow them to benefit from their unacceptable and illegal misconduct. Creditor begs this Honorable Court for an opportunity to be heard on his claim.

Dated: March 25, 2008

*[signature]*

Gil Quentin Alvarez
Petitioner, PRO SE
Address of Creditor:
542 Mt. Argyll Ct.
Apopka, Fl. 32712
Tel: 407-889-4098

Donald J. Bowan Jr. Esq.
Young, Conaway, Stargatt & Taylor
1000 West Street
17th Floor
Wilmington, De 19801