**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | ) |
| Corporation, et al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) **Hearing Date: April 28, 2008, at 2:00 PM (ET)** |
| | ) **Objection Deadline: April 21, 2008, at 4:00 PM (ET)** |
| | ) |

**APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF
HENNIGAN, BENNETT & DORMAN LLP, AS SPECIAL CONFLICTS
COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS *NUNC PRO TUNC* AS OF MARCH 3, 2008**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") herby submits this application (the "Application") for entry of an order in substantially the form attached hereto as Exhibit A, pursuant to sections 328 and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Committee to retain and employ Hennigan, Bennett & Dorman LLP ("HBD"), as special conflicts counsel to the Committee in these chapter 11 cases *nunc pro tunc* to March 3, 2008. In support of this Application, the Committee relies on the Morse Declaration (as defined herein), filed concurrently herewith. In further support of this Application, the Committee respectfully represents and states as follows:

---

[1] The Debtors are the following entities: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

664008.02

-2-

**JURISDICTION**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 328 and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014.

**BACKGROUND**

2. On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On August 14, 2007, the United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these chapter 11 cases. Pursuant to the First Amended Notice of Appointment of Committee of Unsecured Creditors, dated December 7, 2007, the current members of the Committee are: (a) Wilmington Trust Company; (b) Law Debenture Trust Company of New York; (c) Deutsche Bank National Trust Co.; (d) Nomura Credit & Capital, Inc.; (e) Impac Funding Corporation; (f) Waldners Business Environments, Inc.; and (g) United Parcel Service.

4. Certain of the Debtors are parties to that certain pre-petition Second Amended and Restated Credit Agreement dated as of August 10, 2006 (the "Pre-Petition Credit Agreement") under which Bank of America, N.A. ("BofA"), acts as administrative agent for itself and certain lenders, including, among others, JPMorgan Chase ("JPMorgan") (collectively, the "Pre-Petition Secured Lenders"). As of the Petition Date, the Debtors allege that they were indebted to the

-3-

Pre-Petition Secured Lenders under the Pre-Petition Credit Agreement in the aggregate principal amount of approximately $1,104,550,000. Pursuant to a Security Agreement dated as of August 30, 2004, as amended, modified, supplemented, ratified, and restated from time to time, BofA, for the ratable benefit of the Pre-Petition Secured Lenders, asserts first priority security interests in and liens upon certain of the Debtors' assets.

5. On August 27, 2007, this Court entered the Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 68] (the "Interim Cash Collateral Order"), pursuant to which the Debtors were authorized to use the cash collateral pledged to BofA (in its capacity as Administrative Agent for the Pre-Petition Credit Agreement) for the ratable benefit of the Pre-Petition Secured Lenders for the operations of the Debtors' servicing business until September 5, 2007. On September 4, 2007, this Court entered the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 554] (as subsequently amended by the First Final Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 2002], the Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 2284], the Second Stipulation and Order Regarding the Final Order (1) Authorizing Debtors' Limited Use of Cash Collateral and (II), Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket

No. 2855], the Third Stipulation and Order Regarding the Final Order (1) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 3142] and the Fourth Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 3172], the Fifth Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 3264], the "<u>Final Cash Collateral Order</u>"), pursuant to which the Debtors were authorized to use such cash collateral for the operation of their servicing business.

6. Pursuant to the Final Cash Collateral Order, the Committee retained the right to investigate the extent, validity and priority of BofA's asserted security interests in the Debtors' assets (the "<u>BofA Investigation</u>"), which right, pursuant to the Final Cash Collateral Order, as extended by agreement between the Committee and BofA, expires on March 23, 2008.

7. On December 22, 2007, the Debtors filed the "Motion Of The Debtors For Orders: (A)(I) Approving Sale Procedures; (II) Approving Payment Of Expense Reimbursement; (III) Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving Form And Manner Of Notice Thereof; And (V) Granting Related Relief; And (B)(I) Authorizing The Sale Of Non-Performing Loans Free And Clear Of Liens, Claims, Encumbrances And Other Interests; (II) Authorizing And Approving Sale Agreement Thereto; (III) Authorizing The Distribution of The Proceeds; And (IV) Granting Related Relief" [Docket No. 2490] (the "<u>Sale Motion</u>"). The Sale Motion sought to establish procedures for the sale of certain non-performing loans that were the property of the Debtors' estates including the distribution of proceeds,

following the closing of such sale, to, among other of the Debtors' creditors, BofA. On February 1, 2008, this Court entered the "Order Pursuant To Sections 105 And 363 Of The Bankruptcy Code: (I) Approving Sale Procedures; (II) Approving Expense Reimbursement; (III)Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving Form And Manner Of Notice Thereof; And (V) Granting Related Relief" [Docket No. 2858] (the "Sale Procedures Order"). Thereafter, on or about February 15, 2008, the Debtors filed and served their "Notice of Modified Bid Deadlines and Sale Related Dates," which, as permitted by the Sale Procedures Order, extended certain deadlines relating to the proposed sale of assets and the hearing to consider approval of that sale. At the time of HBD's was contacted regarding serving as special conflicts counsel to the Committee in these chapter 11 cases, the Debtors were expecting to receive final bids on March 11, 2008, and the hearing to consider the proposed sale of certain non-performing loans that were the property of the Debtors' estates was scheduled for March 13, 2008.[2]

## RELIEF REQUESTED

8.       By this Application, the Committee seeks the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 328 and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014, to retain and employ HBD (a) as special conflicts counsel in accordance with the terms of the form of retainer letter annexed hereto as Exhibit C (the "Retainer Letter") on certain matters, as described more fully below, related to representing the Committee's interests in connection with any matter in which the Committee may be adverse to BofA and/or JPMorgan, including any matter relating to the Debtors' use of BofA's cash collateral, the BofA Investigation or any contested matter or adversary proceeding in which the

---

[2]   On March 10, 2008, HBD, on behalf of the Committee, filed a limited objection to the proposed sale [Docket No. 3211] and was thereafter involved (prior to and during the March 13 hearing) in the consensual resolution of all issues raised in such objection.

Committee is adverse to BofA; any contested matter or adversary proceeding in which the Committee is adverse to JPMorgan; and (b) to perform all other necessary or appropriate legal services in connection with these chapter 11 cases as the Committee may so request. Because of the urgent need to retain special conflicts counsel, the Committee requests authority to retain HBD immediately.

## FACTS RELEVANT TO THE RELIEF REQUESTED

9. When it became apparent that a consensual resolution with BofA was not forthcoming in advance of the expiration of the time in which the Committee had to conclude the BofA Investigation, the Committee decided to retain HBD as its special conflicts counsel in order to avoid any issues with respect to actual or potential conflicts of interest arising from the fact, as previously disclosed, that BofA and certain of its affiliates are a client of the Committee's bankruptcy counsel. Due to certain existing relationships, the Committee's principal bankruptcy counsel cannot assert claims against or otherwise be directly adverse to BofA or JPMorgan in any contested matter or adversary proceeding.

*HBD's Qualifications*

10. As indicated by the biographical summaries annexed hereto as <u>Exhibit B</u>, HBD is highly qualified to serve as special conflicts counsel to the Committee in these chapter 11 cases. HBD has experience in virtually all aspects of the law that may arise in connection with the proposed representation. Further, HBD and/or its members have served as counsel in other large bankruptcy cases, including, but not limited to: the County of Orange; Adelphia Communications Corporation; Solutia Inc., and affiliates; The LTV Corporation and affiliates; Hawaiian Airlines, Inc.; WestPoint Stevens, Inc. and affiliates; Williams Communications Group, Inc., and CG Austria, Inc.; Federated Stores, Inc. (f/k/a Campeau Corporation U.S., Inc.) and affiliates; Komag, Incorporated (f/a/k/a HMT Technology Corporation); Peregrine Systems,

-6-

664008.02

Inc., and affiliate; Dade Behring Holdings, Inc.; WestStar Cinemas, Inc. d/b/a Mann Theaters; Liberty House, Inc.; Strouds, Inc.; Aureal Inc.; SmarTalk TeleServices, Inc.; L.A. Gear, Inc.; StorMedia Incorporated; Pacific Coin, Inc.; First Capital Holdings Corp.; RBX Corporation and affiliates; Tucson Electric Power Company; Equatorial Communications Corporation; Evergreen International Aviation, Inc. and affiliates; Crazy Shirts, Inc.; Opal Concepts, Inc., and affiliates; Westwood Equities Corp. (f/k/a Ticor); and House of Fabrics.

11. HBD has stated its desire and willingness to act in these cases and render the necessary professional services as special conflicts counsel for the Committee.

*Services to Be Provided by HBD*

12. Subject to further Order of the Court, the Committee proposes that HBD be employed to represent the Committee, in accordance with the terms of the Retainer Agreement, to provide, among other things, ordinary and necessary legal services as may be required in connection with the following:

    a. Any matter in which the Committee may be adverse to BofA, including any matter relating to the Debtors' use of BofA's cash collateral and the BofA Investigation;

    b. Any matter in which the Committee may be adverse to JPMorgan;

    c. Representing the Committee in other bankruptcy and/or commercial litigation matters in this Court or in other courts having jurisdiction over particular matters; and

    d. Providing such other advice and representation as may be necessary or appropriate in these chapter 11 cases relating to the foregoing.

13. As indicated in the Retainer Letter, however, the Committee does not intend for HBD to be responsible for the provision of substantive legal advice outside of the insolvency and business litigation areas, including advice in such areas as patent, securities, trademark, corporate, taxation, labor, criminal or real estate law. Further, the Committee does not intend for HBD to be required to devote attention to, form professional opinions as to, or advise the

Committee with respect to its disclosure obligations under federal securities or other nonbankruptcy laws or agreements.

*The Effectiveness of HBD's Employment*

14. On March 3, 2008, counsel to the Committee made initial contact with HBD regarding this engagement. A call was convened shortly after such initial contact to discuss the scope of open issues to which the Committee is adverse to BofA and JPMorgan and HBD's interest in serving as special conflicts counsel to the Committee. That night, lawyers at HBD reviewed certain of the initial analysis conducted by the Committee respecting the BofA Investigation. HBD determined the next morning, after conducting a preliminary check for conflicts, that it could accept the representation. Because of the expedited timetable on which objections to the Debtors' proposed sale of non-performing loans that were the property of the Debtors' estates were to be filed and the looming expiration of the time in which the Committee has to conclude the BofA Investigation, HBD immediately began working on an objection to the proposed distribution of proceeds pursuant to the Sale Procedures Order and continued its review of the analysis conducted by the Committee regarding the BofA Investigation. At the same time, HBD began preparing retention paperwork, including this Application, which was filed as promptly as possible after HBD accepted the retention.

15. Because of the short amount of time between the initial contact with HBD and the hearing on the proposed sale of non-performing loans and the expiration of the period in which the Committee has to conclude the BofA Investigation, the Committee was unable to obtain this Court's approval of HBD's retention as special conflicts counsel to the Committee prior to the commencement of work by HBD to represent and protect the Committee's interests with respect to matters in which Committee may be adverse BofA and/or JPMorgan. The Committee worked

diligently with HBD and filed this Application as soon as practicable.  Thus, the Committee submits that approving HBD's retention in these cases *nunc pro tunc* to March 3, 2008, is appropriate under the circumstances.

*Disclosure Concerning Conflicts of Interest*

16. To check and clear potential conflicts of interest in these cases, and based upon information known on or near the date of this Application, HBD researched its client database for the past thirteen (13) years to determine whether it had any relationships with the following entities (collectively, the "Interested Parties"):

   a. the Debtors;
   b. the Debtors' affiliates;
   c. the Debtors' warehouse lenders;
   d. the current members of the Committee;
   e. the 50 largest unsecured creditors for the Debtors on a consolidated bases;
   f. the Debtors' shareholders;
   g. the Debtors' directors and officers;
   h. other creditors of the Debtors;
   i. additional parties in interest; and
   j. the professionals of the Debtors and the Committee involved in these chapter 11 cases.

17. The identities of the Interested Parties were provided to HBD by the Committee and are set forth on Schedule 1 to the Declaration of Joshua D. Morse, an associate of HBD (the "Morse Declaration"), a copy of which is annexed hereto as Exhibit D, and incorporated herein by reference.  HBD has advised the Committee that it has not, does not, and will not represent any Interested Party with respect to matters related to the Debtors' chapter 11 cases.  HBD has further advised the Committee that, to the extent its research of its relationships with the Interested Parties indicated that it has represented in the past thirteen (13) years, or currently represents, any Interested Party in matters unrelated to these chapter 11 cases, the identities of

such Interested Party (and, for current HBD clients, a brief description of the type of work performed) are set forth below.

18.     To the best of the Committee's knowledge and belief, insofar as the Committee has been able to ascertain after reasonable inquiry and except as may be described herein and in the Morse Declaration, neither HBD nor any of the attorneys employed by it have any connection with the Debtors, their creditors, the Committee, the Office of the U.S. Trustee, any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants.  As disclosed in the Morse Declaration, among other things:

> a.      HBD has not represented, and, does not and will not represent any entity other than the Committee in matters related to these chapter 11 cases.
>
> b.      HBD currently represents CB Richard Ellis Group and certain of its affiliates (collectively, "CBRE") in matters unrelated to these cases.  Nonetheless, HBD does not, and will not, represent CBRE or its affiliates in matters relating to the Committee or these chapter 11 cases.
>
> c.      HBD previously served as counsel to the Ad Hoc Committee of Solutia Noteholders (the "Solutia Committee") in a recently concluded engagement in those jointly administered chapter 11 cases styled as In re Solutia Inc., *et al.*, which is currently pending before the United States Bankruptcy Court for the Southern District of New York, as Case No. 03-17949 (PCB).  An affiliate of UBS was an adjunct member to the Solutia Committee, however, under the by-laws of the Solutia Committee, such entity was not a client of HBD, nor did it receive any legal counsel from HBD.  In addition, HBD previously represented Nomura Securities International and certain of its affiliates (collectively, "Nomura") who served as members of the Solutia Committee.  Nonetheless, HBD does not, and will not, represent Nomura or its affiliates in matters relating to the Committee or these chapter 11 cases.  Finally, HBD previously represented Banc of America Securities, LLC, and certain of its affiliates (collectively, "BAS") who served as members of the Solutia Committee.  Nonetheless, HBD does not, and will not, represent BAS or its affiliates in matters relating to the Committee or these chapter 11 cases.
>
> d.      HBD currently represents HSBC Bank USA, as indenture trustee ("HSBC"), in a matter unrelated to these cases.  Nonetheless, HBD does not, and will not represent HSBC or its affiliates in matters related to the Committee or these chapter 11 cases.
>
> e.      HBD currently serves as counsel to four holders of publicly traded notes issued by Premier Entertainment Biloxi LLC and Premier Financial Biloxi Corp., whose bankruptcy cases are currently pending before the United States Bankruptcy Court for the Southern District of Mississippi, styled *In re Premier Entertainment Biloxi, LLC*, Case

Nos. 06-50975 and 06-50976.  One of the holders represented by HBD is Deutsche Asset Management, certain affiliates of which have been identified as creditors of the Debtors.  HBD does not and will not represent Deutsche Asset Management or its affiliates in any matters relating to the Debtors or their chapter 11 cases.

f. In the future, HBD may serve as counsel to certain other Interested Parties in matters unrelated to these cases.  In the event that HBD is so retained, HBD will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

g. HBD also serves or has served as counsel in matters unrelated to these chapter 11 cases where certain of the Interested Parties were or are adverse to HBD's clients.  HBD has agreed to provide a detailed schedule of such persons and entities upon request.

19. To the best of the Committee's knowledge, information and belief, HBD represents no interest adverse to the Committee in the matters for which HBD is proposed to be retained.  The Committee's knowledge, information and belief regarding the matters set forth herein is based, and made in reliance, upon the Morse Declaration.  The employment of HBD as special conflicts counsel to the Committee is appropriate and necessary to enable the Committee to ensure representation of the Committee's interests in connection with any matter in which the Committee may be adverse to BofA.  The Committee submits that its employment of HBD would be in the best interests of the Committee and the Debtors' general unsecured creditors.

*Disclosure of Compensation*

20. With respect to HBD's services as special conflicts counsel, the Committee requests that all legal fees and related costs and expenses incurred by the Committee on account of services rendered by HBD in these cases be paid as administrative expenses of the Debtors' estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code.  Subject to the Court's approval, on an interim basis, HBD will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered.  HBD has informed the Committee that its billing rates currently vary from $265 to $875 per hour for attorneys, from $425 to $690 per hour for financial consultants, and

-11-

from $85 to $265 for paralegals and clerks, and are adjusted periodically, typically on January 1 of each year.[3] The range of billing rates set forth above reflects, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided.

21.    The Committee understands that, HBD employs financial consultants who assist HBD's lawyers in providing legal advice and representation. Such consultants will not duplicate any services provided by any financial advisors otherwise retained by the Committee. The Committee also understands that should it become appropriate and cost-effective to do so, HBD also may utilize in this engagement "temporary" attorneys, paralegals, and clerks who are provided to HBD on a contract basis from outside services and for whom HBD will charge a reasonable hourly rate intended to compensate HBD for the costs and overhead associated with such personnel. A list of the guideline hourly rates for those members of HBD that are expected to render substantial and material services to the Committee is included in the biographical summaries annexed hereto as Exhibit B.

22.    The Committee has been billed, and will continue to be billed, at HBD's customary billing rates for matters of this type, together with reimbursement of all reasonable costs and expenses incurred by HBD in connection herewith. Such expenses include, but are not limited to, charges for messenger services, air couriers, photocopying, postage, long distance telephone service, outgoing facsimile service, computerized legal research facilities (including the time billed for such legal research), process service, investigative searches, and other charges customarily invoiced by law firms. The Committee proposes to pay HBD at such rates and to reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Federal

---

[3]    HBD submits that the aforementioned rates shall be revised to the hourly rates that will be in effect from time to time. Changes in HBD's regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "<u>Local Rules</u>"), and applicable orders of this Court.  Moreover, the Committee understands that HBD hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

23. Pursuant to the Retention Agreement, the Committee also has agreed to pay HBD such additional amounts requested by HBD as would constitute a reasonable fee under all of the circumstances, based upon not only the total number of hours charged at guideline hourly rates, but also upon such other factors as the complexity of the problems presented, the amounts at issue, the nature, quality and extent of the opposition encountered, the results accomplished, the skill exercised in accomplishing those results, the extent to which our services were rendered outside the Los Angeles area, after normal business hours or on other than normal business days, delays in receipt of compensation, and the extent to which HBD was at risk in being paid.  The Committee has agreed that, after confirmation of a plan of reorganization (or, if earlier, at the conclusion of HBD's engagement), HBD will assess such factors and determine the amount of its total fee after consulting with the Committee to the extent that such fee exceeds the total number of hours of service provided charged at guideline hourly rates.  Thereafter, HBD will seek the allowance of the final fee from this Court.

24. HBD has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Morse Declaration.

-13-

664008.02

Further, HBD has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

25. The Committee, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, propose to pay HBD its customary hourly rates for services rendered, as set forth above, and to reimburse HBD according to its customary reimbursement polices, and submit that such rates are reasonable.

## NOTICE

26. The Committee has provided notice of this Application in accordance with Del. Bankr. L.R. 2002-1 to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors; (c) counsel to BofA; and (d) those parties timely requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Committee submits that no other or further notice is necessary or required.

## NO PRIOR REQUEST

27. No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court grant this Application in all respects and grant such other and further relief as is just and proper.

Dated: New York, New York  
March ___, 2008

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF AMERICAN HOME MORTGAGE
HOLDINGS, INC., *ET AL.*

Wilmington Trust Company, as Trustee

By: _____
James J. McGinley
Co-Chair of the Committee