## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | ) |
| Corporation, et al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |
| | ) **Hearing Date:  April 28, 2008, at 2:00 PM (ET)** |
| | ) **Objection Deadline: April 21, 2008, at 4:00 PM (ET)** |
| | ) |

### APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF HENNIGAN, BENNETT & DORMAN LLP, AS SPECIAL CONFLICTS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* AS OF MARCH 3, 2008

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") herby submits this application (the "Application") for entry of an order in substantially the form attached hereto as Exhibit A, pursuant to sections 328 and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Committee to retain and employ Hennigan, Bennett & Dorman LLP ("HBD"), as special conflicts counsel to the Committee in these chapter 11 cases *nunc pro tunc* to March 3, 2008.  In support of this Application, the Committee relies on the Morse Declaration (as defined herein), filed concurrently herewith.  In further support of this Application, the Committee respectfully represents and states as follows:

---

[1]   The Debtors are the following entities:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

## JURISDICTION

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157

and 1334.  Venue of these cases and this Application in this District is proper pursuant to 28

U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

The statutory predicates for the relief requested herein are sections 328 and 1103 of the

Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND

2.    On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.

3.    On August 14, 2007, the United States Trustee for the District of Delaware,

pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the

interests of all unsecured creditors in these chapter 11 cases.  Pursuant to the First Amended

Notice of Appointment of Committee of Unsecured Creditors, dated December 7, 2007, the

current members of the Committee are:  (a) Wilmington Trust Company; (b) Law Debenture

Trust Company of New York; (c) Deutsche Bank National Trust Co.; (d) Nomura Credit &

Capital, Inc.; (e) Impac Funding Corporation; (f) Waldners Business Environments, Inc.; and

(g) United Parcel Service.

4.    Certain of the Debtors are parties to that certain pre-petition Second Amended and

Restated Credit Agreement dated as of August 10, 2006 (the "Pre-Petition Credit Agreement")

under which Bank of America, N.A. ("BofA"), acts as administrative agent for itself and certain

lenders, including, among others, JPMorgan Chase ("JPMorgan") (collectively, the "Pre-Petition

Secured Lenders").  As of the Petition Date, the Debtors allege that they were indebted to the

-2-

Pre-Petition Secured Lenders under the Pre-Petition Credit Agreement in the aggregate principal amount of approximately $1,104,550,000.  Pursuant to a Security Agreement dated as of August 30, 2004, as amended, modified, supplemented, ratified, and restated from time to time, BofA, for the ratable benefit of the Pre-Petition Secured Lenders, asserts first priority security interests in and liens upon certain of the Debtors' assets.

5.      On August 27, 2007, this Court entered the Interim Order (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 68] (the "Interim Cash Collateral Order"), pursuant to which the Debtors were authorized to use the cash collateral pledged to BofA (in its capacity as Administrative Agent for the Pre-Petition Credit Agreement) for the ratable benefit of the Pre-Petition Secured Lenders for the operations of the Debtors' servicing business until September 5, 2007.  On September 4, 2007, this Court entered the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 554] (as subsequently amended by the First Final Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 2002], the Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 2284], the Second Stipulation and Order Regarding the Final Order (1) Authorizing Debtors' Limited Use of Cash Collateral and (II), Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket

-3-

No. 2855], the Third Stipulation and Order Regarding the Final Order (1) Authorizing Debtors'

Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to

Certain Pre-Petition Secured Parties [Docket No. 3142] and the Fourth Stipulation and Order

Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and

(II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties

[Docket No. 3172], the Fifth Stipulation and Order Regarding the Final Order (I) Authorizing

Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate

Protection to Certain Pre-Petition Secured Parties [Docket No. 3264], the "Final Cash Collateral

Order"), pursuant to which the Debtors were authorized to use such cash collateral for the

operation of their servicing business.

6.      Pursuant to the Final Cash Collateral Order, the Committee retained the right to

investigate the extent, validity and priority of BofA's asserted security interests in the Debtors'

assets (the "BofA Investigation"), which right, pursuant to the Final Cash Collateral Order, as

extended by agreement between the Committee and BofA, expires on March 23, 2008.

7.      On December 22, 2007, the Debtors filed the "Motion Of The Debtors For

Orders: (A)(I) Approving Sale Procedures; (II) Approving Payment Of Expense Reimbursement;

(III) Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving

Form And Manner Of Notice Thereof; And (V) Granting Related Relief; And (B)(I) Authorizing

The Sale Of Non-Performing Loans Free And Clear Of Liens, Claims, Encumbrances And Other

Interests; (II) Authorizing And Approving Sale Agreement Thereto; (III) Authorizing The

Distribution of The Proceeds; And (IV) Granting Related Relief" [Docket No. 2490] (the "Sale

Motion").  The Sale Motion sought to establish procedures for the sale of certain non-performing

loans that were the property of the Debtors' estates including the distribution of proceeds,

following the closing of such sale, to, among other of the Debtors' creditors, BofA.  On

February 1, 2008, this Court entered the "Order Pursuant To Sections 105 And 363 Of The

Bankruptcy Code: (I) Approving Sale Procedures; (II) Approving Expense Reimbursement;

(III)Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving

Form And Manner Of Notice Thereof; And (V) Granting Related Relief" [Docket No. 2858] (the

"Sale Procedures Order").  Thereafter, on or about February 15, 2008, the Debtors filed and

served their "Notice of Modified Bid Deadlines and Sale Related Dates," which, as permitted by

the Sale Procedures Order, extended certain deadlines relating to the proposed sale of assets and

the hearing to consider approval of that sale.  At the time of HBD's was contacted regarding

serving as special conflicts counsel to the Committee in these chapter 11 cases, the Debtors were

expecting to receive final bids on March 11, 2008, and the hearing to consider the proposed sale

of certain non-performing loans that were the property of the Debtors' estates was scheduled for

March 13, 2008.[2]

## RELIEF REQUESTED

8.      By this Application, the Committee seeks the entry of an order, substantially in

the form attached hereto as Exhibit A, pursuant to sections 328 and 1103 of the Bankruptcy Code

and Bankruptcy Rule 2014, to retain and employ HBD (a) as special conflicts counsel in

accordance with the terms of the form of retainer letter annexed hereto as Exhibit C (the

"Retainer Letter") on certain matters, as described more fully below, related to representing the

Committee's interests in connection with any matter in which the Committee may be adverse to

BofA and/or JPMorgan, including any matter relating to the Debtors' use of BofA's cash

collateral, the BofA Investigation or any contested matter or adversary proceeding in which the

---

[2]    On March 10, 2008, HBD, on behalf of the Committee, filed a limited objection to the proposed sale [Docket No. 3211] and was thereafter involved (prior to and during the March 13 hearing) in the consensual resolution of all issues raised in such objection.

Committee is adverse to BofA; any contested matter or adversary proceeding in which the

Committee is adverse to JPMorgan; and (b) to perform all other necessary or appropriate legal

services in connection with these chapter 11 cases as the Committee may so request.  Because of

the urgent need to retain special conflicts counsel, the Committee requests authority to retain

HBD immediately.

**FACTS RELEVANT TO THE RELIEF REQUESTED**

9.      When it became apparent that a consensual resolution with BofA was not

forthcoming in advance of the expiration of the time in which the Committee had to conclude the

BofA Investigation, the Committee decided to retain HBD as its special conflicts counsel in

order to avoid any issues with respect to actual or potential conflicts of interest arising from the

fact, as previously disclosed, that BofA and certain of its affiliates are a client of the

Committee's bankruptcy counsel.  Due to certain existing relationships, the Committee's

principal bankruptcy counsel cannot assert claims against or otherwise be directly adverse to

BofA or JPMorgan in any contested matter or adversary proceeding.

*HBD's Qualifications*

10.     As indicated by the biographical summaries annexed hereto as Exhibit B, HBD is

highly qualified to serve as special conflicts counsel to the Committee in these chapter 11 cases.

HBD has experience in virtually all aspects of the law that may arise in connection with the

proposed representation.  Further, HBD and/or its members have served as counsel in other large

bankruptcy cases, including, but not limited to: the County of Orange; Adelphia

Communications Corporation; Solutia Inc., and affiliates; The LTV Corporation and affiliates;

Hawaiian Airlines, Inc.; WestPoint Stevens, Inc. and affiliates; Williams Communications

Group, Inc., and CG Austria, Inc.; Federated Stores, Inc. (f/k/a Campeau Corporation U.S., Inc.)

and affiliates; Komag, Incorporated (f/a/k/a HMT Technology Corporation); Peregrine Systems,

-6-

Inc., and affiliate; Dade Behring Holdings, Inc.; WestStar Cinemas, Inc. d/b/a Mann Theaters; Liberty House, Inc.; Strouds, Inc.; Aureal Inc.; SmarTalk TeleServices, Inc.; L.A. Gear, Inc.; StorMedia Incorporated; Pacific Coin, Inc.; First Capital Holdings Corp.; RBX Corporation and affiliates; Tucson Electric Power Company; Equatorial Communications Corporation; Evergreen International Aviation, Inc. and affiliates; Crazy Shirts, Inc.; Opal Concepts, Inc., and affiliates; Westwood Equities Corp. (f/k/a Ticor); and House of Fabrics.

11.     HBD has stated its desire and willingness to act in these cases and render the necessary professional services as special conflicts counsel for the Committee.

***Services to Be Provided by HBD***

12.     Subject to further Order of the Court, the Committee proposes that HBD be employed to represent the Committee, in accordance with the terms of the Retainer Agreement, to provide, among other things, ordinary and necessary legal services as may be required in connection with the following:

a.     Any matter in which the Committee may be adverse to BofA, including any matter relating to the Debtors' use of BofA's cash collateral and the BofA Investigation;

b.     Any matter in which the Committee may be adverse to JPMorgan;

c.     Representing the Committee in other bankruptcy and/or commercial litigation matters in this Court or in other courts having jurisdiction over particular matters; and

d.     Providing such other advice and representation as may be necessary or appropriate in these chapter 11 cases relating to the foregoing.

13.     As indicated in the Retainer Letter, however, the Committee does not intend for HBD to be responsible for the provision of substantive legal advice outside of the insolvency and business litigation areas, including advice in such areas as patent, securities, trademark, corporate, taxation, labor, criminal or real estate law.  Further, the Committee does not intend for HBD to be required to devote attention to, form professional opinions as to, or advise the

Committee with respect to its disclosure obligations under federal securities or other

nonbankruptcy laws or agreements.

***The Effectiveness of HBD's Employment***

14.     On March 3, 2008, counsel to the Committee made initial contact with HBD

regarding this engagement.  A call was convened shortly after such initial contact to discuss the

scope of open issues to which the Committee is adverse to BofA and JPMorgan and HBD's

interest in serving as special conflicts counsel to the Committee.  That night, lawyers at HBD

reviewed certain of the initial analysis conducted by the Committee respecting the BofA

Investigation.  HBD determined the next morning, after conducting a preliminary check for

conflicts, that it could accept the representation.  Because of the expedited timetable on which

objections to the Debtors' proposed sale of non-performing loans that were the property of the

Debtors' estates were to be filed and the looming expiration of the time in which the Committee

has to conclude the BofA Investigation, HBD immediately began working on an objection to the

proposed distribution of proceeds pursuant to the Sale Procedures Order and continued its review

of the analysis conducted by the Committee regarding the BofA Investigation.  At the same time,

HBD began preparing retention paperwork, including this Application, which was filed as

promptly as possible after HBD accepted the retention.

15.     Because of the short amount of time between the initial contact with HBD and the

hearing on the proposed sale of non-performing loans and the expiration of the period in which

the Committee has to conclude the BofA Investigation, the Committee was unable to obtain this

Court's approval of HBD's retention as special conflicts counsel to the Committee prior to the

commencement of work by HBD to represent and protect the Committee's interests with respect

to matters in which Committee may be adverse BofA and/or JPMorgan.  The Committee worked

diligently with HBD and filed this Application as soon as practicable.  Thus, the Committee

submits that approving HBD's retention in these cases *nunc pro tunc* to March 3, 2008, is

appropriate under the circumstances.

***Disclosure Concerning Conflicts of Interest***

16.    To check and clear potential conflicts of interest in these cases, and based upon

information known on or near the date of this Application, HBD researched its client database

for the past thirteen (13) years to determine whether it had any relationships with the following

entities (collectively, the "Interested Parties"):

a.    the Debtors;

b.    the Debtors' affiliates;

c.    the Debtors' warehouse lenders;

d.    the current members of the Committee;

e.    the 50 largest unsecured creditors for the Debtors on a consolidated bases;

f.    the Debtors' shareholders;

g.    the Debtors' directors and officers;

h.    other creditors of the Debtors;

i.    additional parties in interest; and

j.    the professionals of the Debtors and the Committee involved in these chapter 11 cases.

17.    The identities of the Interested Parties were provided to HBD by the Committee

and are set forth on Schedule 1 to the Declaration of Joshua D. Morse, an associate of HBD (the

"Morse Declaration"), a copy of which is annexed hereto as Exhibit D, and incorporated herein

by reference.  HBD has advised the Committee that it has not, does not, and will not represent

any Interested Party with respect to matters related to the Debtors' chapter 11 cases.  HBD has

further advised the Committee that, to the extent its research of its relationships with the

Interested Parties indicated that it has represented in the past thirteen (13) years, or currently

represents, any Interested Party in matters underlined to these chapter 11 cases, the identities of

-9-

such Interested Party (and, for current HBD clients, a brief description of the type of work

performed) are set forth below.

18.     To the best of the Committee's knowledge and belief, insofar as the Committee

has been able to ascertain after reasonable inquiry and except as may be described herein and in

the Morse Declaration, neither HBD nor any of the attorneys employed by it have any

connection with the Debtors, their creditors, the Committee, the Office of the U.S. Trustee, any

other party with an actual or potential interest in these chapter 11 cases, or their respective

attorneys or accountants.  As disclosed in the Morse Declaration, among other things:

      a.     HBD has not represented, and, does not and will not represent any entity other than the Committee in matters related to these chapter 11 cases.

      b.     HBD currently represents CB Richard Ellis Group and certain of its affiliates (collectively, "<u>CBRE</u>") in matters unrelated to these cases.  Nonetheless, HBD does not, and will not, represent CBRE or its affiliates in matters relating to the Committee or these chapter 11 cases.

      c.     HBD previously served as counsel to the Ad Hoc Committee of Solutia Noteholders (the "<u>Solutia Committee</u>") in a recently concluded engagement in those jointly administered chapter 11 cases styled as In re Solutia Inc., *et al*., which is currently pending before the United States Bankruptcy Court for the Southern District of New York, as Case No. 03-17949 (PCB).  An affiliate of UBS was an adjunct member to the Solutia Committee, however, under the by-laws of the Solutia Committee, such entity was not a client of HBD, nor did it receive any legal counsel from HBD.  In addition, HBD previously represented Nomura Securities International and certain of its affiliates (collectively, "<u>Nomura</u>") who served as members of the Solutia Committee. Nonetheless, HBD does not, and will not, represent Nomura or its affiliates in matters relating to the Committee or these chapter 11 cases.  Finally, HBD previously represented Banc of America Securities, LLC, and certain of its affiliates (collectively, "<u>BAS</u>") who served as members of the Solutia Committee.  Nonetheless, HBD does not, and will not, represent BAS or its affiliates in matters relating to the Committee or these chapter 11 cases.

      d.     HBD currently represents HSBC Bank USA, as indenture trustee ("<u>HSBC</u>"), in a matter unrelated to these cases.  Nonetheless, HBD does not, and will not represent HSBC or its affiliates in matters related to the Committee or these chapter 11 cases.

      e.     HBD currently serves as counsel to four holders of publicly traded notes issued by Premier Entertainment Biloxi LLC and Premier Financial Biloxi Corp., whose bankruptcy cases are currently pending before the United States Bankruptcy Court for the Southern District of Mississippi, styled *In re Premier Entertainment Biloxi, LLC*, Case

-10-

Nos. 06-50975 and 06-50976.  One of the holders represented by HBD is Deutsche Asset Management, certain affiliates of which have been identified as creditors of the Debtors. HBD does not and will not represent Deutsche Asset Management or its affiliates in any matters relating to the Debtors or their chapter 11 cases.

        f.      In the future, HBD may serve as counsel to certain other Interested Parties in matters unrelated to these cases.  In the event that HBD is so retained, HBD will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

        g.      HBD also serves or has served as counsel in matters unrelated to these chapter 11 cases where certain of the Interested Parties were or are adverse to HBD's clients.  HBD has agreed to provide a detailed schedule of such persons and entities upon request.

19.      To the best of the Committee's knowledge, information and belief, HBD represents no interest adverse to the Committee in the matters for which HBD is proposed to be retained.  The Committee's knowledge, information and belief regarding the matters set forth herein is based, and made in reliance, upon the Morse Declaration.  The employment of HBD as special conflicts counsel to the Committee is appropriate and necessary to enable the Committee to ensure representation of the Committee's interests in connection with any matter in which the Committee may be adverse to BofA.  The Committee submits that its employment of HBD would be in the best interests of the Committee and the Debtors' general unsecured creditors.

***Disclosure of Compensation***

20.      With respect to HBD's services as special conflicts counsel, the Committee requests that all legal fees and related costs and expenses incurred by the Committee on account of services rendered by HBD in these cases be paid as administrative expenses of the Debtors' estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code. Subject to the Court's approval, on an interim basis, HBD will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered.  HBD has informed the Committee that its billing rates currently vary from $265 to $875 per hour for attorneys, from $425 to $690 per hour for financial consultants, and

-11-

from $85 to $265 for paralegals and clerks, and are adjusted periodically, typically on January 1

of each year.[3]  The range of billing rates set forth above reflects, among other things, differences

in experience levels within classifications, geographic differentials and differences between

types of services being provided.

21.     The Committee understands that, HBD employs financial consultants who assist

HBD's lawyers in providing legal advice and representation.  Such consultants will not duplicate

any services provided by any financial advisors otherwise retained by the Committee.  The

Committee also understands that should it become appropriate and cost-effective to do so, HBD

also may utilize in this engagement "temporary" attorneys, paralegals, and clerks who are

provided to HBD on a contract basis from outside services and for whom HBD will charge a

reasonable hourly rate intended to compensate HBD for the costs and overhead associated with

such personnel.  A list of the guideline hourly rates for those members of HBD that are expected

to render substantial and material services to the Committee is included in the biographical

summaries annexed hereto as <u>Exhibit B</u>.

22.     The Committee has been billed, and will continue to be billed, at HBD's

customary billing rates for matters of this type, together with reimbursement of all reasonable

costs and expenses incurred by HBD in connection herewith.  Such expenses include, but are not

limited to, charges for messenger services, air couriers, photocopying, postage, long distance

telephone service, outgoing facsimile service, computerized legal research facilities (including

the time billed for such legal research), process service, investigative searches, and other charges

customarily invoiced by law firms.  The Committee proposes to pay HBD at such rates and to

reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Federal

---

[3]     HBD submits that the aforementioned rates shall be revised to the hourly rates that will be in effect from time to time.  Changes in HBD's regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and applicable orders of this Court. Moreover, the Committee understands that HBD hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

23.    Pursuant to the Retention Agreement, the Committee also has agreed to pay HBD such additional amounts requested by HBD as would constitute a reasonable fee under all of the circumstances, based upon not only the total number of hours charged at guideline hourly rates, but also upon such other factors as the complexity of the problems presented, the amounts at issue, the nature, quality and extent of the opposition encountered, the results accomplished, the skill exercised in accomplishing those results, the extent to which our services were rendered outside the Los Angeles area, after normal business hours or on other than normal business days, delays in receipt of compensation, and the extent to which HBD was at risk in being paid. The Committee has agreed that, after confirmation of a plan of reorganization (or, if earlier, at the conclusion of HBD's engagement), HBD will assess such factors and determine the amount of its total fee after consulting with the Committee to the extent that such fee exceeds the total number of hours of service provided charged at guideline hourly rates. Thereafter, HBD will seek the allowance of the final fee from this Court.

24.    HBD has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Morse Declaration.

664008.02

Further, HBD has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

26.    The Committee, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, propose to pay HBD its customary hourly rates for services rendered, as set forth above, and to reimburse HBD according to its customary reimbursement polices, and submit that such rates are reasonable.

## NOTICE

26.    The Committee has provided notice of this Application in accordance with Del. Bankr. L.R. 2002-1 to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors; (c) counsel to BofA; and (d) those parties timely requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Committee submits that no other or further notice is necessary or required.

## NO PRIOR REQUEST

27.    No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court grant this Application in all respects and grant such other and further relief as is just and proper.

Dated: New York, New York  
     March ___, 2008  

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF AMERICAN HOME MORTGAGE HOLDINGS, INC., *ET AL.*

Wilmington Trust Company, as Trustee

By: _____  
James J. McGinley  
Co-Chair of the Committee

-14-

# **<u>EXHIBIT A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | ) |
| Corporation, et al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |
| | ) **Hearing Date:  April 28, 2008, at 2:00 PM (ET)** |
| | ) **Objection Deadline: April 21, 2008, at 4:00 PM (ET)** |
| | ) |

**ORDER AUTHORIZING EMPLOYMENT OF HENNIGAN,**
**BENNETT & DORMAN LLP, AS SPECIAL CONFLICTS COUNSEL**
**TO THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS *NUNC PRO TUNC* AS OF MARCH 3, 2008**

Upon review and consideration of the "Application For Order Authorizing Employment Of Hennigan, Bennett & Dorman LLP, as Special Conflicts Counsel to The Debtors *Nunc Pro Tunc* to March 3, 2008" (the "Application") filed by the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking entry of an order pursuant to sections 328 and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure authorizing and approving the employment and retention of Hennigan, Bennett & Dorman LLP ("HBD") as special conflicts counsel to the Committee, consistent with the terms of the retainer agreement by and between the Committee and HBD (the "Retainer Agreement"), substantially in the form annexed to the Application as Exhibit C; and upon consideration of the Application and the Court being satisfied that HBD represents no interest adverse to the Committee with respect to the matters upon which it is to be engaged, and that the employment of HBD is necessary and in the best interest of the Committee and the Debtors'

---

[1]    The Debtors are the following entities:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

general unsecured creditors; and it appearing that due notice of the Application having been given; and that no other or further notice need be given; and sufficient cause appearing therefor; it is hereby

ORDERED that, in accordance with sections 328 and 1103 of the Bankruptcy Code, the Committee is hereby authorized to employ and retain HBD as special conflicts counsel upon the terms and conditions set forth in the Application and the Retainer Agreement, effective as of March 3, 2008; and it is further

ORDERED that HBD shall be compensated in accordance with the terms and conditions set forth in the Retainer Agreement.

Dated:  Wilmington, Delaware
_____, 2008

_____
HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

664008.02

# <u>EXHIBIT B</u>

### HBD Biographical Summaries

**BRUCE BENNETT:**  Mr. Bennett is a founding partner of Hennigan, Bennett & Dorman, LLP. He specializes in complex corporate reorganization and insolvency.  Mr. Bennett has been involved in many of the largest corporate reorganization cases in the United States, including in the fields of retail, telecommunications, heavy industry, aviation, manufacturing, real estate, insurance, energy, banking, and computer technology.  Mr. Bennett was also lead debtor's counsel in the largest municipal bankruptcy in the country, In re County of Orange, California, which commenced following a $1.7 billion loss in county investment pools.  As counsel to the debtor, Mr. Bennett was the architect of the Plan of Adjustment that comprehensively resolved the County's financial problems.  That Plan was confirmed and successfully implemented in approximately 18 months.  In addition, litigation prosecuted by HBD resulted in the recovery of over $870 million for the County.  Mr. Bennett's representative experience also includes such clients and matters as: LTV Corporation and affiliates; Rabo Bank; Olympia & York Developments Ltd. and affiliates; Federated Stores, Inc.; Komag, Inc.; L.A. Gear, Inc.; WestStar Cinemas, Inc.; Liberty House, Inc.; SmarTalk TeleServices, Inc.; StorMedia Inc.; Aureal, Inc.; RBX, Inc.; First Capital Holdings Corp.; Evergreen International Aviation, Inc. and affiliates; Dome Petroleum Ltd.; Tucson Electric Power Company; Equatorial Communications Corporation; Westwood Equities, Inc.; and Storage Technology Corporation and affiliates.  Prior to founding HBD, Mr. Bennett was a senior shareholder and member of the Executive Committee of Stutman, Treister & Glatt PC, where he practiced from 1982-1995.  Education: Harvard University Law School, J.D., with distinction, 1982; Brown University, Sc.B., Applied Mathematics and Economics, magna cum laude, 1979.  Professional Activities: Admitted: California; Fellow: American College of Bankruptcy; Member: Board of Governors, Financial Lawyers Conference; Commissioner: Personal and Small Business Bankruptcy Advisory Commission of the California Board of Legal Specialization, State Bar of California (1992-1995); Member: Board of Directors, Public Counsel (1996-1999); Member: American Bar Association, Section on Business Law, Business Bankruptcy Committee; Member: International Bar Association, Committee J (Insolvency and Creditors' Rights Law); Member: State Bar of California, Section on Commercial Law and Bankruptcy; Speaker at numerous educational programs for members of the bar and other professionals; and at National Conference of Bankruptcy Judges.  Published Reports: Brain Trust: Lead Attorney in County Bankruptcy Earned a Whiz Kid Reputation by Resolving Big Cases, The Los Angeles Times, December 11, 1994, Part A, p. 3; Orange County's Artful Dodger: The Creative Bankruptcy Tactics of Bruce Bennett, The New York Times, August 4, 1995, Section D, p. 1; Lawyer of the Year: Runner-Up, Bruce Bennett: Pulling Orange County Back From the Financial Abyss, The National Law Journal, December 25, 1995, p. C-4; Good Publicity is No Publicity: Attorney Keeps Low Profile in High Stakes Cases, Los Angeles Daily Journal, December 27, 1994, p. 1; Bond Crisis: Attorney Readies Plan to Share Pain, The Orange County Register February 5, 1995, at p. A-4. Hourly Rate:  $875.

**MICHAEL A. MORRIS:** Mr. Morris is Of Counsel with Hennigan, Bennett & Dorman LLP and specializes in complex corporate reorganization and insolvency matters.  Mr. Morris has been Of Counsel with the firm since 2000.  Before joining HBD, Mr. Morris was a senior shareholder of Stutman, Treister & Glatt PC, where he practiced from 1982-2000.  Mr. Morris' experience has included representing clients in cases such as New Century Holdings, Inc., House of Fabrics, Inc., Enron Corp, United Airlines, Crazy Shirts, Inc., Aureal, Inc., Pacific Coin,

- 1 -

Federated Department Stores, JPS Textile Group, Inc., Wickes Companies, Inc., Itel Corporation and numerous other large complex chapter 11 cases.  Mr. Morris was born Memphis, Tennessee, May 6, 1954; admitted to bar, 1979, California.  *Education*:  Immaculate Heart College (B.A., 1976); University of California, Boalt Hall School of Law (J.D., 1979).  Member, Order of the Coif.  Moot Court Board.  Associate Editor, Industrial Relations Law Journal, 1979.  *Memberships*:  American Bar Association (Business Law Section); Business Law Section of the State Bar of California (Debtor/Creditor Relations Committee, 1989); Los Angeles County Bar Association (Section on Commercial Law and Bankruptcy; Member, Executive Committee, 1988-1989); Financial Lawyers Conference (Board of Governors and Officer, 1991-1996; President, 1996-1997).  Hourly Rate:  $760.

**JEANNE E. IRVING:**  Ms. Irving, a partner with Hennigan, Bennett and Dorman LLP, specializes in complex commercial litigation.  Ms. Irving has been with HBD since its founding in 1995.  Ms. Irving specializes in Complex Commercial Litigation, Securities Litigation and Accountants' Liability Litigation.  Ms. Irving has been lead counsel in the defense of numerous officers and directors in multi-billion dollar lawsuits alleging securities fraud, breaches of fiduciary duty and related corporate torts.  In addition, she has defended accountants in many accountants' liability suits.  Ms. Irving has also represented plaintiffs pursuing fraud and other business tort and contract claims as well as asserting creditors' rights in bankruptcy proceedings.  Representative Matters Include: (1) In re Global Crossing Ltd Securities Litigation, in which Ms. Irving defended former Global Crossing officer and director in consolidated securities fraud class actions and related litigation seeking tens of billions of dollars in damages; (2) PCL Japan, Ltd. v. Asia Netcom Corporation Limited, in which Ms. Irving defended former officers of Asia Global Crossing in a suit alleging breaches of fiduciary duty and fraudulent conveyance relating to a Japanese telecommunications cable station; (3) Reddam v. GMAC Mortgage Corp., in which Ms. Irving, together with other lawyers at HBD, represented Paul Reddam in an action to recover amounts GMAC Corporation had contracted to pay him when it purchased Ditech Funding Corp., a company he had founded. The matter was settled on confidential terms with a substantial recovery to the client; and (4) Glen Ivy Litigation, in which Ms. Irving was lead counsel for plaintiffs in suits brought by Chemical Bank, Barclay's Bank PLC, Financial Security Assurance Inc., Marine Midland Bank, and the marketers in the country, to prosecute claims on their behalf against Glen Ivy's former auditors, officers, directors, and title and escrow companies.  Ms. Irving's clients obtained a recovery in excess of $34 million.  Education: Harvard Law School, J.D, 1978; Boston College, B.A., Summa Cum Laude, Phi Beta Kappa, 1975.  Professional Activities: Admitted: California; Member: Los Angeles County Bar Association; State Bar of California; Speaker: Conference on "Financial Statement Fraud," 2004; Co-Author: "Collateral Estoppel," Securities Law Techniques (Matthew Bender 1985); Author: "What a Difference a Decade Makes – Chipping Away at the Bily Club," Financial Statement Fraud: What Every Lawyer Needs to Know (Practising Law Institute 2004).  Hourly Rate:  $680.

**JOSHUA D. MORSE:**  Mr. Morse is an associate at Hennigan, Bennett & Dorman LLP.  Mr. Morse joined the firm in September 2000, and focuses primarily on bankruptcy and bankruptcy-related litigation and transactions representing debtors, creditors' committees and individual creditors.  Mr. Morse was the lead associate in the representation of Factory 2-U Stores, Inc., Komag, Incorporated and Opal Concepts, Inc., et al., in their respective chapter 11 cases, and has represented a number of debtors in successful chapter 11 proceedings, including Liberty

House, Inc., Strouds, Inc., Aureal, Inc., and SmarTalk TeleServices, Inc. Mr. Morse also served as counsel to the chapter 11 trustee for Hawaiian Airlines, Inc., and the chapter 7 trustee for Brobeck, Phelger & Harrison LLP. Mr. Morse also has represented creditors and creditor groups in a number of chapter 11 cases and out-of-court workouts, including ad hoc committees of bondholders of Solutia Inc., Adelphia Communications Corporation, the City of Klamath Falls, and Dade Behring Holdings, Inc., as well as the senior bondholders of SONICblue Incorporated. Education: Santa Clara University, J.D., 2000; Phi Delta Phi; Comments Editor, Santa Clara Law Review, 1999-2000; New Mexico State University, BBA, Human Resource Management, with Honors, 1995; New Mexico Military Institute, AA, Business, with High Honors, and commission, United States Army Reserve, 1993. Professional Activities: Admitted, California; Judicial Extern: Hon. Arthur S. Weissbrodt, United States Bankruptcy Court for the Northern District of California, 1999; Author: "Public Policy Is Never a Substitute for Statutory Clarity: Rejecting the Notion that Pre-Petition Attorney-Fee Debts Are Dischargeable in Chapter 7 Bankruptcies," 40 Santa Clara L. Rev. 575 (2000). Hourly Rate: $505.

# EXHIBIT C

HENNIGAN, BENNETT & DORMAN LLP

LAWYERS

865 SOUTH FIGUEROA STREET

SUITE 2900

LOS ANGELES, CALIFORNIA 90017

TELEPHONE (213) 694-1200
FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1012
BENNETTB@HBDLAWYERS.COM

March 3, 2008

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Mr. James J. McGinley
Co-Chair of the Official Committee of
Unsecured Creditors
Wilmington Trust Company
520 Madison Avenue, 33rd Floor
New York, NY 10022

> **Re:** *Retainer Agreement Between Hennigan, Bennett & Dorman LLP and The Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc., et al.*

Dear Mr. McGinley:

This letter sets forth the terms and conditions upon which Hennigan, Bennett & Dorman LLP ("HB&D" or "us") will represent the Official Committee of Unsecured Creditors (the "Committee" or "you") of American Home Mortgage Holdings, Inc., et al. (collectively, the "Debtors"), in the Debtors' bankruptcy cases being jointly administered as *In re American Home Mortgage Holdings, Inc., et al.* (collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court, District of Delaware (the "Bankruptcy Court") under Case No. 07-11047 (CSS) as its special conflicts counsel. Although HB&D's employment by the Committee is subject to the approval of the Bankruptcy Court, in light of the need for the Committee to, among other things, comply with agreed upon deadlines related to certain of the BofA Matters described below, the Committee asked HB&D to commence work beginning on March 3, 2008, with the expectation that HB&D's engagement as special conflicts counsel will be subsequently approved by the Bankruptcy Court with an effective date no later than March 3, 2008.

A.    **Scope of Engagement**

HB&D will serve as special conflicts counsel to the Committee and will render such ordinary and necessary legal services as may be required in connection with the following:

Hennigan, Bennett & Dorman llp

Mr. McGinley
March 3, 2008
Page 2

        1.      Any matter in which the Committee may be adverse to Bank of America, N.A. ("BofA"), including any matter relating to the Debtors' use of BofA's cash collateral and the investigation of the extent, validity and priority of BofA's asserted security interests in the Debtors' assets (collectively, the "BofA Matters");

        2.      Any matter in which the Committee may be adverse to JPMorgan Chase (collectively, the "JPMorgan Chase Matters");

        3.      Representing the Committee in other bankruptcy and/or commercial litigation matters in the Bankruptcy Court or other courts having jurisdiction over particular matters; and

        4.      Such other advice and representation as may be necessary or appropriate in the Bankruptcy Cases concerning the foregoing.

HB&D's employment as special conflicts counsel does not include the provision of advice with respect to matters involving taxation, securities, environmental, labor, criminal, real estate, or other specialized areas of law. Finally, the limited scope of our employment as the Committee's special conflicts counsel does not include giving attention to, forming professional opinions as to, or advising you with respect to, disclosure obligations under federal securities or other nonbankruptcy laws or agreements. Should you decide to expand the scope of HB&D's representation with respect to this matter, a separate written agreement and, potentially Bankruptcy Court approval, will be necessary.

        **B.**      **Financial Arrangements.**

You have agreed to pay HB&D a reasonable fee for its services and to reimburse HB&D for the costs and expenses charged to its account with respect to this engagement as provided for in title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure.

During the course of the Bankruptcy Cases, HB&D will request the payment of monthly interim compensation from the Debtors, in accordance with the procedures for interim compensation established by the Bankruptcy Court, based upon our guideline hourly rates. These rates currently range from $265 to $875 per hour for attorneys, from $425 to $690 per hour for financial consultants, and from $85 to $265 for paralegals and clerks. We anticipate that Bruce Bennett, Michael Morris, Jeanne Irving, and Joshua D. Morse, whose guideline hourly rates currently are $875, $760, $680 and $505, respectively, will render the majority of the legal services in connection with this engagement. Our guideline hourly rates are adjusted periodically, typically on January 1 of each year, to reflect the advancing experience, capabilities and seniority of our professionals as well as general economic factors. Please note that, should it become appropriate and cost-effective to do so, we also may utilize in this engagement

HENNIGAN, BENNETT & DORMAN LLP

Mr. McGinley
March 3, 2008
Page 3

"temporary" attorneys, paralegals, and clerks who are provided to us on a contract basis from outside services and for whom we will charge a reasonable hourly rate intended to compensate us for the costs and overhead associated with such personnel.

It is HB&D's practice to charge our clients a reasonable fee for services rendered, which fee is based upon not only the total number of hours charged at guideline hourly rates, but also upon such other factors as the complexity of the problems presented to us, the amounts at issue, the nature, quality and extent of the opposition encountered, the results accomplished, the skill we exercised in accomplishing those results, the extent to which our services were rendered outside the Los Angeles area, after normal business hours or on other than normal business days, delays in our receipt of compensation, and the extent to which we were at risk in being paid. After confirmation of a plan of reorganization for the Debtors (or, if earlier, at the conclusion of our engagement), we will assess such factors and determine the amount of our total fee. To the extent that such fee exceeds the total number of hours of service provided charged at guideline hourly rates, we will consult with the Committee before setting that final fee and, in any event, we will seek the allowance of the fee by the Bankruptcy Court. By executing this agreement, the Committee consents to this procedure for determining HB&D's reasonable final fee.

Our invoices also will include charges for the reasonable costs and expenses that we incur in connection with this engagement. Such costs and expenses typically include, among others, charges for messenger services, air couriers, photocopying, postage, long distance telephone, computerized legal research facilities (including the time billed for such legal research), investigative searches, computerized document management services (including scanning and coding), and other charges customarily invoiced by law firms in addition to fees for legal services, such as court fees and travel expenses. In the event that we incur expenses that we deem to be extraordinary or significant, such as transcript costs or sizable outsourced photocopying expenses, you agree that, upon request by us, you will pay those expenses directly.

### C.    Waivers and Important Information Regarding HB&D's Representation

Because of the specialized nature of our practice, from time to time HB&D concurrently may represent one client in a particular case and the adversary of that client in an unrelated case, as summarized more specifically below. Please be assured that, despite any such concurrent representation, we strictly preserve all client confidences and zealously pursue the interests of each of our clients, including in those circumstances in which we represent the adversary of an existing client in an unrelated case.

HENNIGAN, BENNETT & DORMAN LLP

Mr. McGinley
March 3, 2008
Page 4

**1.      Representation of Unrelated Debtors and Other Parties.**

While representing the Committee, HB&D may represent a debtor of one or more of the
Debtors herein, a member of the Committee or of one or more of its affiliates, or an entity in
which a member of the Committee or one or more of its affiliates has made an investment, as a
debtor in a reorganization case or in connection with out-of-court negotiations concerning the
entity's ability to pay its debts generally, or may otherwise represent an adversary of a member
of the Committee in litigation, negotiations or other proceedings in a matter unrelated to our
representation of the Committee.

Each member of the Committee consents to our representation, in unrelated matters, of
entities that may be indebted to one or more of the Debtors, a member of the Committee or to
one or more of its affiliates or in which a member of the Committee or one or more of its
affiliates might directly or indirectly own an equity interest, and of persons or entities that may
be adverse to a member of the Committee.  Each member of the Committee also agrees that it
does not consider such concurrent representations of the Committee and any such adversary of a
member of the Committee or its affiliates to be inappropriate, and it therefore waives any
objections to any such present or future concurrent representation.  Further, each member of the
Committee agrees that it will not provide us any confidential information that would prevent
such representation other than the confidential information directly related to the scope of our
representation set forth herein.

**2.      Representation of Creditors or Equity Security Holders in Unrelated
        Matters.**

From time to time, in a case involving a debtor other than the Debtors or their affiliates,
HB&D, while representing the Committee, may represent a creditor (including another creditor
of the Debtors or their affiliates) of a debtor who also is indebted to one or more of the Debtors,
a member of the Committee (or a debtor in which one or more members of the Committee own
an equity interest).  The pertinent debtor could be a debtor in a reorganization case or involved in
out-of-court negotiations with its creditors and interest holders.

Each member of the Committee agrees that our representation of creditors of debtors that
are also indebted to one or more of the Debtors, any of the members of the Committee (or one of
their affiliates) or in which one or more of the members of the Committee (or one of their
affiliates) own an equity interest are matters unrelated to our representation of the Committee in
connection with the Bankruptcy Cases.  Each member of the Committee agrees that it does not
consider such concurrent representations of the Committee and any adversary to be
inappropriate, and it therefore waives any objections to any such present or future concurrent
representation, including the representation by HB&D of creditor clients against debtors that are
also indebted to any of the members of the Committee (or one of their affiliates) or in which one

HENNIGAN, BENNETT & DORMAN LLP

Mr. McGinley
March 3, 2008
Page 5

or more members of the Committee (or one of their affiliates) own an equity interest.  To the extent required by applicable law and rules of professional responsibility, each of the members of the Committee consents to HB&D's representation of creditors of debtors indebted to one or more of the Debtors, the members of the Committee or any of their affiliates in any and all such matters and agrees that it will not provide us any confidential information that would prevent such representation other than the confidential information directly related to the scope of our representation set forth herein.

### 3.    Relationships of HB&D Attorneys.

Also, please note that several attorneys at HB&D have spouses, parents, children, siblings, fiancés or fiancées who are attorneys at other law firms, companies and government agencies.  HB&D has strict policies against disclosing confidential information to anyone outside the firm, including spouses, parents, children, siblings, fiancés and fiancées.  You agree that you do not consider our representation of you to be inappropriate in light of any such relationships.

### D.    Policy Regarding Transactional Opinion Letters.

HB&D maintains a policy that it does not provide opinion letters regarding the legal effect of proposed transactions to its clients or to others who might wish to rely on such letters. We do not alter this policy except under very unusual circumstances and then only upon further written agreement, which provides for compensation to us for the special risks attendant to the furnishing of such opinions.

### E.    Miscellaneous.

1.    By this agreement, HB&D is being engaged solely by the Committee.  Our employment does not include the representation of any individual member of the Committee or of any employee, officer, director, member or affiliate of any of the members of the Committee.

2.    Subject to the approval of the Bankruptcy Court, this agreement shall be effective as of the date on which HB&D first rendered services to the Committee.  You may discharge us at any time.  We may withdraw at any time with the Committee's consent or for good cause without its consent.  Good cause for our withdrawal includes the Committee's breach of this agreement, its refusal or failure to cooperate with us, or any fact or circumstance that would render our continuing representation unlawful or unethical.

3.    This agreement constitutes the entire understanding between the Committee and HB&D regarding HB&D's employment as special conflicts counsel in connection with the Bankruptcy Cases.  By executing this agreement you acknowledge that you have read carefully and understand all of its terms.  This agreement cannot be modified except by further written agreement signed by each party.

# Hennigan, Bennett & Dorman llp

Mr. McGinley
March 3, 2008
Page 6


4.       This agreement and HB&D's representation of the Committee shall be governed, construed and interpreted in accordance with the United States Bankruptcy Code and the laws of the State of California, without giving effect to principles of conflicts of law and choice of law that would cause the laws of any other jurisdiction to apply.

5.       If you have any questions about the foregoing, please call me.  In addition, please feel free to obtain independent legal advice concerning the terms and conditions of this agreement.  If you are in agreement with the foregoing, and it accurately represents the Committee's understanding of its retainer agreement with this firm, please cause a copy of this letter to be executed by an authorized representative of the Committee where indicated and return this letter to me, together with the retainer payment.  If not, please contact me immediately.

6.       This agreement is subject to the approval of the Bankruptcy Court.  In the event that the Bankruptcy Court does not approve the Committee's engagement of HB&D on the terms set forth herein, the Committee will immediately engage other counsel to represent its interests in connection with the BofA Matters and the JPMorgan Matters.

We look forward to working with you.

Sincerely,

/s/ Bruce Bennett

Bruce Bennett

**THE FOREGOING IS APPROVED AND AGREED TO:**

Dated:  March __, 2008

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF AMERICAN HOME MORTGAGE
HOLDINGS, INC., ET AL.**

By_____

Its_____

HENNIGAN, BENNETT & DORMAN LLP

Mr. McGinley
March 3, 2008
Page 6

4.    This agreement and HB&D's representation of the Committee shall be governed, construed and interpreted in accordance with the United States Bankruptcy Code and the laws of the State of California, without giving effect to principles of conflicts of law and choice of law that would cause the laws of any other jurisdiction to apply.

5.    If you have any questions about the foregoing, please call me.  In addition, please feel free to obtain independent legal advice concerning the terms and conditions of this agreement.  If you are in agreement with the foregoing, and it accurately represents the Committee's understanding of its retainer agreement with this firm, please cause a copy of this letter to be executed by an authorized representative of the Committee where indicated and return this letter to me, together with the retainer payment.  If not, please contact me immediately.

6.    This agreement is subject to the approval of the Bankruptcy Court.  In the event that the Bankruptcy Court does not approve the Committee's engagement of HB&D on the terms set forth herein, the Committee will immediately engage other counsel to represent its interests in connection with the BofA Matters and the JPMorgan Matters.

We look forward to working with you.

Sincerely,

/s/ Bruce Bennett

Bruce Bennett

THE FOREGOING IS APPROVED AND AGREED TO:

Dated:  March __, 2008

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF AMERICAN HOME MORTGAGE
HOLDINGS, INC., ET AL.

By_____

Its____V.ce President____

# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | ) |
| Corporation, <u>et al</u>.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) **Hearing Date:  April 28, 2008, at 2:00 PM (ET)** |
| | ) **Objection Deadline: April 21, 2008, at 4:00 PM (ET)** |
| | ) |

**DECLARATION OF JOSHUA D. MORSE IN SUPPORT OF**
**APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF**
**HENNIGAN, BENNETT & DORMAN LLP, AS SPECIAL CONFLICTS**
**COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS *NUNC PRO TUNC* AS OF MARCH 3, 2008**

I, JOSHUA D. MORSE, hereby declare as follows:

1.      I am a member in good standing of the Bar of the State of California.  I am

admitted to practice before, among other courts, the United States District Courts for the Central,

Northern, Southern and Eastern Districts of California, and the Court of Appeals for the Ninth

Circuit.

2.      I am an associate of Hennigan, Bennett & Dorman LLP ("<u>HBD</u>"), proposed

special conflicts counsel to the Official Committee of Unsecured Creditors (the "<u>Committee</u>") of

the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>").

3.      This Declaration is submitted in support of "Application For Order Authorizing

Employment Of Hennigan, Bennett & Dorman LLP as Special Conflicts Counsel to the Official

Committee of Unsecured Creditors *Nunc Pro Tunc* to March 3, 2008" (the "<u>Application</u>") filed

by the Committee.  Except where otherwise indicated below, I have personal knowledge of the

---

[1]    The Debtors are the following entities:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

facts set forth in this Declaration.  If called and sworn as a witness, I could and would testify competently to such facts.  This Declaration is made pursuant to Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

## HBD'S QUALIFICATIONS

4.      As indicated by the biographical summaries annexed to the Application as Exhibit B, HBD is highly qualified to serve as special conflicts counsel in these chapter 11 cases. HBD has experience in virtually all aspects of the law that may arise in connection with the proposed representation.  Further, HBD and/or its members have served as counsel in other large bankruptcy cases, including, but not limited to: the County of Orange; Adelphia Communications Corporation; Hawaiian Airlines, Inc.; WestPoint Stevens, Inc. and affiliates; Solutia Inc., and affiliates; The LTV Corporation and affiliates; Williams Communications Group, Inc., and CG Austria, Inc.; Federated Stores, Inc. (f/k/a Campeau Corporation U.S., Inc.) and affiliates; Komag, Incorporated (f/a/k/a HMT Technology Corporation); Peregrine Systems, Inc., and affiliate; Dade Behring Holdings, Inc.; WestStar Cinemas, Inc. d/b/a Mann Theaters; Liberty House, Inc.; Strouds, Inc.; Aureal Inc.; SmarTalk TeleServices, Inc.; L.A. Gear, Inc.; StorMedia Incorporated; Pacific Coin, Inc.; First Capital Holdings Corp.; RBX Corporation and affiliates; Tucson Electric Power Company; Equatorial Communications Corporation; Evergreen International Aviation, Inc. and affiliates; Crazy Shirts, Inc.; Opal Concepts, Inc., and affiliates; Westwood Equities Corp. (f/k/a Ticor); and House of Fabrics.

5.      HBD has stated its desire and willingness to act in these cases and render the necessary professional services as special conflicts counsel for the Committee.

## SERVICES TO BE PROVIDED BY HBD

6.      Subject to further Order of the Court, I understand that the Committee proposes that HBD be employed to represent the Committee, in accordance with the terms of the Retainer Agreement, to provide, among other things, ordinary and necessary legal services as may be required in connection with the following:

a.      Any matter in which the Committee may be adverse to BofA, including any matter relating to the Debtors' use of BofA's cash collateral and the investigation of the extent, validity and priority of BofA's asserted security interests in the Debtors' assets;

b.      Any matter in which the Committee may be adverse to JPMorgan;

c.      Representing the Committee in other bankruptcy and/or commercial litigation matters in this Court or in other courts having jurisdiction over particular matters; and

d.      Providing such other advice and representation as may be necessary or appropriate in these chapter 11 cases relating to the foregoing.

7.      I am informed and believe (as indicated in the Retainer Agreement) that the Committee does not intend for HBD to be responsible for the provision of substantive legal advice outside of the insolvency and business litigation areas, including advice in such areas as patent, securities, trademark, corporate, taxation, labor, criminal or real estate law.  Further, it is my understanding that the Committee does not intend for HBD to be required to devote attention to, form professional opinions as to, or advise the Committee with respect to its disclosure obligations under federal securities or other nonbankruptcy laws or agreements.

## THE EFFECTIVENESS OF HBD'S EMPLOYMENT

8.      On March 3, 2008, counsel to the Committee made initial contact with HBD regarding this engagement.  A call was convened shortly after such initial contact to discuss the scope of open issues to which the Committee is adverse to BofA and JPMorgan and HBD's interest in serving as special conflicts counsel to the Committee.  That night, lawyers at HBD reviewed certain of the initial analysis conducted by the Committee respecting the BofA Investigation.  A determination was made the next morning after reviewing the results of a preliminary check for conflicts and consulting with members of HBD that HBD could accept the representation.  Because of the expedited timetable on which objections to the Debtors' proposed sale of non-performing loans that were the property of the Debtors' estates were to be filed and the looming expiration of the time in which the Committee has to conclude the BofA Investigation, HBD immediately began working on an objection to the proposed distribution of proceeds pursuant to the Sale Procedures Order and continued its review of the analysis

- 3 -

conducted by the Committee regarding the BofA Investigation. At the same time, HBD began preparing retention paperwork, including the Application, which was filed as promptly as possible after HBD accepted the retention.

9. Because of the short amount of time between the initial contact with HBD and the hearing on the proposed sale of non-performing loans and the expiration of the period in which the Committee has to conclude the BofA Investigation, the Committee was unable to obtain this Court's approval of HBD's retention as special conflicts counsel to the Committee prior to the commencement of work by HBD to represent and protect the Committee's interests with respect to matters in which Committee may be adverse BofA and/or JPMorgan. The Committee worked diligently with HBD and filed the Application as soon as practicable. Thus, I belive that approving HBD's retention in these cases *nunc pro tunc* to March 3, 2008, is appropriate under the circumstances.

## DISCLOSURE CONCERNING CONFLICTS OF INTEREST

10. Except as set forth below, to the best of my knowledge, information, and belief, HBD and all of the attorneys comprising or employed by it are disinterested persons who do not hold or represent an interest adverse to the Committee and who do not have any connection with the Debtors, their creditors, or any other party in interest in these cases, or their respective attorneys or accountants. In addition, neither HBD nor any of the attorneys employed by it have any connections with the United States Trustee or any person employed in the Office of the United States Trustee for the District of Delaware.

11. To check and clear potential conflicts of interest in these cases, and based upon information known on or near the date of the Application, employees of HBD, under my supervision, researched its client database for the past thirteen (13) years to determine whether it had any relationships with the following entities (collectively, the "Interested Parties"):

      a.     the Debtors;

      b.     the Debtors' affiliates;

      c.     the Debtors' warehouse lenders;

- 4 -

d.    the current members of the Committee;

e.    the 50 largest unsecured creditors for the Debtors on a consolidated bases;

f.    the Debtors' shareholders;

g.    the Debtors' directors and officers;

h.    other creditors of the Debtors;

i.    additional parties in interest; and

j.    the professionals of the Debtors and the Committee involved in these chapter 11 cases.

12.    The identities of the Interested Parties provided to HBD by the Committee and are set forth on Schedule 1 attached hereto, and incorporated herein by reference. Except as set forth herein, HBD has not, does not, and will not represent any Interested Party with respect to matters related to the Debtors' chapter 11 cases. To the extent HBD's research of its relationships with the Interested Parties indicated that it has represented in the past thirteen (13) years, or currently represents, any Interested Party in matters unrelated to these chapter 11 cases, the identities of such Interested Party (and, for current HBD clients, a brief description of the type of work performed) are set forth below:

a.    HBD has not represented, and, does not and will not represent any entity other than the Committee in matters related to these chapter 11 cases.

b.    HBD currently represents CB Richard Ellis Group and certain of its affiliates (collectively, "CBRE") in matters unrelated to these cases. Nonetheless, HBD does not, and will not, represent CBRE or its affiliates in matters relating to the Committee or these chapter 11 cases.

c.    HBD previously served as counsel to the Ad Hoc Committee of Solutia Noteholders (the "Solutia Committee") in a recently concluded engagement in those jointly administered chapter 11 cases styled as *In re Solutia Inc., et al.*, which is currently pending before the United States Bankruptcy Court for the Southern District of New York, as Case No. 03-17949 (PCB). An affiliate of UBS was an adjunct member to the Solutia Committee, however, under the by-laws of the Solutia Committee, such entity was not a client of HBD, nor did it receive any legal counsel from HBD. In addition, HBD previously represented Nomura Securities International and certain of its affiliates (collectively, "Nomura") who served as members of the Solutia Committee. Nonetheless, HBD does not, and will not, represent Nomura or its affiliates in matters relating to the Committee or these chapter 11 cases. Finally, HBD previously represented Banc of America Securities, LLC, and certain of its affiliates (collectively, "BAS") who served as members of the Solutia Committee. Nonetheless, HBD does not, and will not,

- 5 -

represent BAS or its affiliates in matters relating to the Committee or these chapter 11 cases.

d.      HBD currently represents HSBC Bank USA, as indenture trustee ("HSBC"), in a matter unrelated to these cases.  Nonetheless, HBD does not, and will not represent HSBC or its affiliates in matters related to the Committee or these chapter 11 cases.

e.      HBD currently serves as counsel to four holders of publicly traded notes issued by Premier Entertainment Biloxi LLC and Premier Financial Biloxi Corp., whose bankruptcy cases are currently pending before the United States Bankruptcy Court for the Southern District of Mississippi, styled as *In re Premier Entertainment Biloxi, LLC*, Case Nos. 06-50975 and 06-50976.  One of the holders represented by HBD is Deutsche Asset Management, certain affiliates of which have been identified as creditors of the Debtors. HBD does not and will not represent Deutsche Asset Management or its affiliates in any matters relating to the Debtors or their chapter 11 cases.

f.      In the future, HBD may serve as counsel to certain other Interested Parties in matters unrelated to these cases.  In the event that HBD is so retained, HBD will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

g.      HBD also serves or has served as counsel in matters unrelated to these chapter 11 cases where certain of the Interested Parties were or are adverse to HBD's clients.  HBD has agreed to provide a detailed schedule of such persons and entities upon request.

## DISCLOSURE OF COMPENSATION

13.      With respect to HBD's services as special conflicts counsel, I understand that the Committee has requested that all legal fees and related costs and expenses incurred by the Committee on account of services rendered by HBD in these cases be paid as administrative expenses of the Debtors' estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code.  Subject to the Court's approval, on an interim basis, HBD will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered.  HBD has informed the Committee that its billing rates currently vary from $265 to $875 per hour for attorneys, from $425 to $690 per hour for financial consultants, and from $85 to $265 for paralegals and clerks, and are adjusted periodically, typically on January 1 of each year.[2]  The range of billing rates set forth above

---

[2]      HBD submits that the aforementioned rates be revised to the hourly rates that will be in effect from time to time.  Changes in HBD's regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

- 6 -

reflects, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided.

14.     HBD employs financial consultants who assist HBD's lawyers in providing legal advice and representation.  Such consultants will not duplicate any services provided by any financial advisors otherwise retained by the Committee.  Should it become appropriate and cost-effective to do so, HBD also may utilize in this engagement "temporary" attorneys, paralegals, and clerks who are provided to HBD on a contract basis from outside services and for whom HBD will charge a reasonable hourly rate intended to compensate HBD for the costs and overhead associated with such personnel.  A list of the guideline hourly rates for those members of HBD that are expected to render substantial and material services to the Committee is included in the biographical summaries annexed to the Application as Exhibit B.

15.     The Committee has been billed, and will continue to be billed, at HBD's customary billing rates for matters of this type, together with reimbursement of all reasonable costs and expenses incurred by HBD in connection herewith.  I understand that such expenses include, but are not limited to, charges for messenger services, air couriers, photocopying, postage, long distance telephone service, outgoing facsimile service, computerized legal research facilities (including the time billed for such legal research), process service, investigative searches, and other charges customarily invoiced by law firms.  HBD requests that the Committee pay HBD at such rates and to reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and applicable orders of this Court.  Moreover, HBD hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

- 7 -

16.     Pursuant to the Retention Agreement, the Committee also has agreed to pay HBD such additional amounts requested by HBD as would constitute a reasonable fee under all of the circumstances, based upon not only the total number of hours charged at guideline hourly rates, but also upon such other factors as the complexity of the problems presented, the amounts at issue, the nature, quality and extent of the opposition encountered, the results accomplished, the skill exercised in accomplishing those results, the extent to which our services were rendered outside the Los Angeles area, after normal business hours or on other than normal business days, delays in receipt of compensation, and the extent to which HBD was at risk in being paid. The Committee has agreed that, after confirmation of a plan of reorganization (or, if earlier, at the conclusion of HBD's engagement), HBD will assess such factors and determine the amount of its total fee after consulting with the Committee to the extent that such fee exceeds the total number of hours of service provided charged at guideline hourly rates. Thereafter, HBD will seek the allowance of the final fee from this Court.

17.     HBD has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth herein. Further, HBD has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

18.     HBD has requested that the Committee, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, pay HBD its customary hourly rates for services rendered, as set forth above, and to reimburse HBD according to its customary reimbursement polices, and submit that such rates are reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on March 27, 2008, at Hillsborough, California.

Joshua D. Morse

- 8 -

# SCHEDULE 1

**Parties-in-Interest for American Home Mortgage Holdings, Inc., et al.**

## Debtors

American Home Mortgage Holdings, Inc.
American Home Mortgage Investment Corp.
American Home Mortgage Acceptance, Inc.
American Home Mortgage Servicing, Inc.
American Home Mortgage Corp.
American Home Mortgage Ventures, Inc.
Homegate Settlement Services, Inc.
Great Oak Abstract Corp.
AHM SPV II, LLC

## Debtors' Affiliates

American Home Securities, LLC
American Home Bank
Baylis Trust
AHM Capital Trust I
American Home Mortgage Securities, LLC
AHM SPV III, LLC
Melville Funding, LLC
AHM LF, LLC
CNI Reinsurance, Ltd.
NAP Financial Services, LLC
CNI Title Services, LLC
Broadhollow Funding, LLC
AHM SPV I, LLC
American Home Mortgage Assets LLC
Melville Reinsurance Corporation
American Home Escrow, LLC
Mortgage First Limited, LLC
Array Mortgage, LLC
American Midwest Title Agency, LLC
HSS Mortgage, LLC
All Pro Mortgage, LLC
Silicon Mortgage, LLC
TDG Equities, LLC
Elite Lending Partners, LLC
Peak Experience Mortgage, LLC
U.S. Lending Company, LLC
American Home Mortgage V, LLC
Private Mortgage Group, LLC

## Warehouse Lenders

Bank of America, N.A.
Barclays Bank PLC

Credit Suisse First Boston Mortgage
    Capital LLC
IXIS Real Estate Capital, Inc.
Bear Stearns
UBS Real Estate Securities

## Counsel and Advisors to Debtors

Young, Conaway, Stargatt & Taylor, LLP
Quinn Emanuel Urquhart Oliver & Hedges
Milestone Advisors, LLC

## Official Committee of Unsecured Creditors (as of December 7, 2007)

Wilmington Trust Company
Law Debenture Trust Company of
    New York
Deutsche Bank National Trust Co.
Nomura Credit & Capital, Inc.
Impac Funding Corporation
Waldners Business Environments, Inc.
United Parcel Service

## Counsel and Advisors to Official Committee of Unsecured Creditors

Hahn & Hessen LLP
Blank Rome LLP
BDO Seidman, LLP

## Top 50 Creditors

Deutsche Bank
Wilmington Trust Company
JPMorgan Chase
Countrywide Capital
Bank of America
JPMorgan Chase Bank, National
    Association, as Trustee
406 Partners
CW
Morgan Stanley
Wells Fargo Bank, N.A., as Trustee
SunTrust Asset Funding, LLC
Impac Funding Corporation
Bear, Stearns & Co. Inc.

664008.02

**Parties-in-Interest for American Home Mortgage Holdings, Inc., et al.**

Bank of America, N.A.
Citigroup Global Markets Realty Corp.
Bank of America, N.A.
Wells Fargo Bank, N.A., as Trustee
Countrywide Capital
Nomura Credit & Capital, Inc.
Liquid Funding, Ltd.
EMC (Bear)
Greenwich Capital Financial Products, Inc.
Lehman Brothers Inc.
HSBC
UBS
Lehman Brothers Special Financing, Inc.
FNMA
Washington Mutual
Luminent Mtg (Barclays)
ALS
IndyMac Bank, F.S.B.
Morgan Stanley Capital Services Inc.
Credit Suisse
GMAC
Deutsche Bank AG
Triad Guaranty Insurance Corporation
The Royal Bank of Scotland plc
ZC Sterling Corporation
American Express
Deutsche Bank Securities Inc.
Opteum Financial Services, LLC
Lehman Commercial Paper Inc.

**Debtors' Shareholders**

Michael Strauss
Goldman Sachs Asset Management, L. P.
Munder Capital Management
NWQ Investment Management
    Company, LLC
CEDE & Co
Margaret J. Cox Trust
Jack E. Dalton & Janol Lee Dalton
V E Lygrisse Truste
Lois I Pickett & Lawrence H. Pickett
Michael Rienstra
Lillian M. Schuman
David E. Wallin Trust
Bernard R. Werner & Shirley J. Werner

**Debtors' Officers and Directors**

Michael Strauss
John A. Johnston
Nicholas R. Martino
Michael A. McManus, Jr.
C. Cathleen Raffaeli
Kristian R. Salovaara
Irving J. Thau
Donald Henig
John A. Manglardi
Ronald L. Bergum
Robert Bernstein
Christopher J. Cavaco
Al Crisanty
Doug Douglas
Thomas J. Fiddler
David M. Friedman
Kathleen R. Heck
Alan B. Horn
Stephen A. Hozie
Robert F. Johnson, Jr.
Marcia Kaufman
Dena L. Kwaschyn
Richard S. Loeffler
Thomas M. McDonagh
Craig S. Pino
Rick Pishalski
Ron Rosenblatt
Lisa M. Schreiber

**Other Creditors**

A & F Construction
ABN Amro Bank, N.V.
ABN Amro Bank
All Pro Mortgage
American Express
American Stock Transfer & Trust Company
Banc of America Securities, LLC
Bank of New York
Broadhollow Funding, LLC
Calyon
Carpenter, Mitcheal E. and Adrian
CB Richard Ellis on behalf of Cascade
    II/Principal Life Insurance Company
    Citibank

- 2 -

**Parties-in-Interest for American Home Mortgage Holdings, Inc., et al.**

Corporate Cubes LLC
Countrywide
Diversified Commercial Investments, LLC
Duke University
Federal Credit Union EHED, LLC
Elite Lending Partners
Fidelity Mortgage Affiliates
First American Bank
Florida Certified Appraisers
HSS Mortgage
Huntington Bancshares Inc.
Janney Montgomery Scott LLC
Liquid Funding, Ltd.
MaineHousing
MassHousing
Melville Funding, LLC
Merrill Lynch Pierce
Fenner & Smith, Inc.
Merrill Lynch Bank USA
MnL Global, Inc.
Mortgage First Showcase
Mortgage First LTD
Showcase of Agents LLC
Natixis Real Estate Capital Inc.
Orix Capital Markets, LLC
Professional Risk Facilities, Inc.
Red Sky Properties
Regus Business Centre LLC
Skyview Marketing, LLC
Societe Generale
Stonehenge Capital, LLC
STWB Inc.
SunTrust Robinson Humphrey
Funding, LLC
TPRF/THC Haven Park, LLC
Transwestern
United Guaranty Services, Inc.
Wachovia Bank, N.A.
Westfield Mortgage, LLC
Zurich American Insurance Company

**Additional Parties in Interest**

American Corporate Record Center
AON Consulting
AT&T
AT&T Corp.
Bank of America
Bank of New York
Barclays Bank PLC and Barclays Capital
Bexar County
Calyon New York Branch
Cedar Hill City
Carroll ISD
Arlington ISD
Citibank
Citigroup Global
Citigroup Global Markets Inc.
County of Denton
CSFB
CSHV Southpark LLC
Dallas County
De Lage Financial Services, Inc.
Deutsche Bank
Empire Blue Cross Blue Shield
Empire HealthChoice Assurance/Empire
    Blue Cross
Fannie Mae
Federal Home Loan Mortgage Corp
GMAC
GNMA
Greenwich Capital Markets, Inc.
IndyMac
John Flatley and Gregory Stoyle, Trustees
    1993 Flatley Family Truste
JPMorgan Chase Bank, N.A.
Lewisville ISD, Garland ISD, Carrollton-
    Farmers Independent ISD
Morgan Stanley
ORIX Capital Markets, LLC
Rexco, LLC
Societe Generale
Sovereign Bank
UBS Securities
UBS Securities LLC
Morgan Stanley
Washington Mutual

- 3 -

**Parties-in-Interest for American Home Mortgage Holdings, Inc., et al.**

Wells Fargo
WestLB AG
WLR Recovery
ZC Real Estate Tax Solutions

664008.02