# EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | ) |
| Corporation, et al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) **Hearing Date:  April 28, 2008, at 2:00 PM (ET)** |
| | ) **Objection Deadline: April 21, 2008, at 4:00 PM (ET)** |
| | ) |

**DECLARATION OF JOSHUA D. MORSE IN SUPPORT OF
APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF
HENNIGAN, BENNETT & DORMAN LLP, AS SPECIAL CONFLICTS
COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS *NUNC PRO TUNC* AS OF MARCH 3, 2008**

I, JOSHUA D. MORSE, hereby declare as follows:

1.      I am a member in good standing of the Bar of the State of California.  I am admitted to practice before, among other courts, the United States District Courts for the Central, Northern, Southern and Eastern Districts of California, and the Court of Appeals for the Ninth Circuit.

2.      I am an associate of Hennigan, Bennett & Dorman LLP ("HBD"), proposed special conflicts counsel to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").

3.      This Declaration is submitted in support of "Application For Order Authorizing Employment Of Hennigan, Bennett & Dorman LLP as Special Conflicts Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to March 3, 2008" (the "Application") filed by the Committee.  Except where otherwise indicated below, I have personal knowledge of the

---

[1]     The Debtors are the following entities:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

facts set forth in this Declaration.  If called and sworn as a witness, I could and would testify competently to such facts.  This Declaration is made pursuant to Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

## HBD'S QUALIFICATIONS

4.      As indicated by the biographical summaries annexed to the Application as Exhibit B, HBD is highly qualified to serve as special conflicts counsel in these chapter 11 cases. HBD has experience in virtually all aspects of the law that may arise in connection with the proposed representation.  Further, HBD and/or its members have served as counsel in other large bankruptcy cases, including, but not limited to: the County of Orange; Adelphia Communications Corporation; Hawaiian Airlines, Inc.; WestPoint Stevens, Inc. and affiliates; Solutia Inc., and affiliates; The LTV Corporation and affiliates; Williams Communications Group, Inc., and CG Austria, Inc.; Federated Stores, Inc. (f/k/a Campeau Corporation U.S., Inc.) and affiliates; Komag, Incorporated (f/a/k/a HMT Technology Corporation); Peregrine Systems, Inc., and affiliate; Dade Behring Holdings, Inc.; WestStar Cinemas, Inc. d/b/a Mann Theaters; Liberty House, Inc.; Strouds, Inc.; Aureal Inc.; SmarTalk TeleServices, Inc.; L.A. Gear, Inc.; StorMedia Incorporated; Pacific Coin, Inc.; First Capital Holdings Corp.; RBX Corporation and affiliates; Tucson Electric Power Company; Equatorial Communications Corporation; Evergreen International Aviation, Inc. and affiliates; Crazy Shirts, Inc.; Opal Concepts, Inc., and affiliates; Westwood Equities Corp. (f/k/a Ticor); and House of Fabrics.

5.      HBD has stated its desire and willingness to act in these cases and render the necessary professional services as special conflicts counsel for the Committee.

## SERVICES TO BE PROVIDED BY HBD

6.      Subject to further Order of the Court, I understand that the Committee proposes that HBD be employed to represent the Committee, in accordance with the terms of the Retainer Agreement, to provide, among other things, ordinary and necessary legal services as may be required in connection with the following:

a.      Any matter in which the Committee may be adverse to BofA, including any matter relating to the Debtors' use of BofA's cash collateral and the investigation of the extent, validity and priority of BofA's asserted security interests in the Debtors' assets;

b.      Any matter in which the Committee may be adverse to JPMorgan;

c.      Representing the Committee in other bankruptcy and/or commercial litigation matters in this Court or in other courts having jurisdiction over particular matters; and

d.      Providing such other advice and representation as may be necessary or appropriate in these chapter 11 cases relating to the foregoing.

7.      I am informed and believe (as indicated in the Retainer Agreement) that the Committee does not intend for HBD to be responsible for the provision of substantive legal advice outside of the insolvency and business litigation areas, including advice in such areas as patent, securities, trademark, corporate, taxation, labor, criminal or real estate law.  Further, it is my understanding that the Committee does not intend for HBD to be required to devote attention to, form professional opinions as to, or advise the Committee with respect to its disclosure obligations under federal securities or other nonbankruptcy laws or agreements.

## THE EFFECTIVENESS OF HBD'S EMPLOYMENT

8.      On March 3, 2008, counsel to the Committee made initial contact with HBD regarding this engagement.  A call was convened shortly after such initial contact to discuss the scope of open issues to which the Committee is adverse to BofA and JPMorgan and HBD's interest in serving as special conflicts counsel to the Committee.  That night, lawyers at HBD reviewed certain of the initial analysis conducted by the Committee respecting the BofA Investigation.  A determination was made the next morning after reviewing the results of a preliminary check for conflicts and consulting with members of HBD that HBD could accept the representation.  Because of the expedited timetable on which objections to the Debtors' proposed sale of non-performing loans that were the property of the Debtors' estates were to be filed and the looming expiration of the time in which the Committee has to conclude the BofA Investigation, HBD immediately began working on an objection to the proposed distribution of proceeds pursuant to the Sale Procedures Order and continued its review of the analysis

- 3 -

conducted by the Committee regarding the BofA Investigation.  At the same time, HBD began

preparing retention paperwork, including the Application, which was filed as promptly as

possible after HBD accepted the retention.

9.      Because of the short amount of time between the initial contact with HBD and the

hearing on the proposed sale of non-performing loans and the expiration of the period in which

the Committee has to conclude the BofA Investigation, the Committee was unable to obtain this

Court's approval of HBD's retention as special conflicts counsel to the Committee prior to the

commencement of work by HBD to represent and protect the Committee's interests with respect

to matters in which Committee may be adverse BofA and/or JPMorgan.  The Committee worked

diligently with HBD and filed the Application as soon as practicable.  Thus, I belive that

approving HBD's retention in these cases *nunc pro tunc* to March 3, 2008, is appropriate under

the circumstances.

### DISCLOSURE CONCERNING CONFLICTS OF INTEREST

10.     Except as set forth below, to the best of my knowledge, information, and belief,

HBD and all of the attorneys comprising or employed by it are disinterested persons who do not

hold or represent an interest adverse to the Committee and who do not have any connection with

the Debtors, their creditors, or any other party in interest in these cases, or their respective

attorneys or accountants.  In addition, neither HBD nor any of the attorneys employed by it have

any connections with the United States Trustee or any person employed in the Office of the

United States Trustee for the District of Delaware.

11.     To check and clear potential conflicts of interest in these cases, and based upon

information known on or near the date of the Application, employees of HBD, under my

supervision, researched its client database for the past thirteen (13) years to determine whether it

had any relationships with the following entities (collectively, the "Interested Parties"):

        a.        the Debtors;

        b.        the Debtors' affiliates;

        c.        the Debtors' warehouse lenders;

- 4 -

d.    the current members of the Committee;

e.    the 50 largest unsecured creditors for the Debtors on a consolidated bases;

f.    the Debtors' shareholders;

g.    the Debtors' directors and officers;

h.    other creditors of the Debtors;

i.    additional parties in interest; and

j.    the professionals of the Debtors and the Committee involved in these chapter 11 cases.

12.    The identities of the Interested Parties provided to HBD by the Committee and are set forth on Schedule 1 attached hereto, and incorporated herein by reference. Except as set forth herein, HBD has not, does not, and will not represent any Interested Party with respect to matters related to the Debtors' chapter 11 cases. To the extent HBD's research of its relationships with the Interested Parties indicated that it has represented in the past thirteen (13) years, or currently represents, any Interested Party in matters unrelated to these chapter 11 cases, the identities of such Interested Party (and, for current HBD clients, a brief description of the type of work performed) are set forth below:

a.    HBD has not represented, and, does not and will not represent any entity other than the Committee in matters related to these chapter 11 cases.

b.    HBD currently represents CB Richard Ellis Group and certain of its affiliates (collectively, "CBRE") in matters unrelated to these cases. Nonetheless, HBD does not, and will not, represent CBRE or its affiliates in matters relating to the Committee or these chapter 11 cases.

c.    HBD previously served as counsel to the Ad Hoc Committee of Solutia Noteholders (the "Solutia Committee") in a recently concluded engagement in those jointly administered chapter 11 cases styled as *In re Solutia Inc., et al.*, which is currently pending before the United States Bankruptcy Court for the Southern District of New York, as Case No. 03-17949 (PCB). An affiliate of UBS was an adjunct member to the Solutia Committee, however, under the by-laws of the Solutia Committee, such entity was not a client of HBD, nor did it receive any legal counsel from HBD. In addition, HBD previously represented Nomura Securities International and certain of its affiliates (collectively, "Nomura") who served as members of the Solutia Committee. Nonetheless, HBD does not, and will not, represent Nomura or its affiliates in matters relating to the Committee or these chapter 11 cases. Finally, HBD previously represented Banc of America Securities, LLC, and certain of its affiliates (collectively, "BAS") who served as members of the Solutia Committee. Nonetheless, HBD does not, and will not,

- 5 -

represent BAS or its affiliates in matters relating to the Committee or these chapter 11 cases.

　　　　d.　　HBD currently represents HSBC Bank USA, as indenture trustee ("HSBC"), in a matter unrelated to these cases.  Nonetheless, HBD does not, and will not represent HSBC or its affiliates in matters related to the Committee or these chapter 11 cases.

　　　　e.　　HBD currently serves as counsel to four holders of publicly traded notes issued by Premier Entertainment Biloxi LLC and Premier Financial Biloxi Corp., whose bankruptcy cases are currently pending before the United States Bankruptcy Court for the Southern District of Mississippi, styled as *In re Premier Entertainment Biloxi, LLC*, Case Nos. 06-50975 and 06-50976.  One of the holders represented by HBD is Deutsche Asset Management, certain affiliates of which have been identified as creditors of the Debtors.  HBD does not and will not represent Deutsche Asset Management or its affiliates in any matters relating to the Debtors or their chapter 11 cases.

　　　　f.　　In the future, HBD may serve as counsel to certain other Interested Parties in matters unrelated to these cases.  In the event that HBD is so retained, HBD will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

　　　　g.　　HBD also serves or has served as counsel in matters unrelated to these chapter 11 cases where certain of the Interested Parties were or are adverse to HBD's clients.  HBD has agreed to provide a detailed schedule of such persons and entities upon request.

## DISCLOSURE OF COMPENSATION

　　13.　　With respect to HBD's services as special conflicts counsel, I understand that the Committee has requested that all legal fees and related costs and expenses incurred by the Committee on account of services rendered by HBD in these cases be paid as administrative expenses of the Debtors' estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code.  Subject to the Court's approval, on an interim basis, HBD will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered.  HBD has informed the Committee that its billing rates currently vary from $265 to $875 per hour for attorneys, from $425 to $690 per hour for financial consultants, and from $85 to $265 for paralegals and clerks, and are adjusted periodically, typically on January 1 of each year.[2]  The range of billing rates set forth above

---

[2]　HBD submits that the aforementioned rates be revised to the hourly rates that will be in effect from time to time.  Changes in HBD's regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

reflects, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided.

14.    HBD employs financial consultants who assist HBD's lawyers in providing legal advice and representation.  Such consultants will not duplicate any services provided by any financial advisors otherwise retained by the Committee.  Should it become appropriate and cost-effective to do so, HBD also may utilize in this engagement "temporary" attorneys, paralegals, and clerks who are provided to HBD on a contract basis from outside services and for whom HBD will charge a reasonable hourly rate intended to compensate HBD for the costs and overhead associated with such personnel.  A list of the guideline hourly rates for those members of HBD that are expected to render substantial and material services to the Committee is included in the biographical summaries annexed to the Application as Exhibit B.

15.    The Committee has been billed, and will continue to be billed, at HBD's customary billing rates for matters of this type, together with reimbursement of all reasonable costs and expenses incurred by HBD in connection herewith.  I understand that such expenses include, but are not limited to, charges for messenger services, air couriers, photocopying, postage, long distance telephone service, outgoing facsimile service, computerized legal research facilities (including the time billed for such legal research), process service, investigative searches, and other charges customarily invoiced by law firms.  HBD requests that the Committee pay HBD at such rates and to reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and applicable orders of this Court.  Moreover, HBD hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

16.    Pursuant to the Retention Agreement, the Committee also has agreed to pay HBD such additional amounts requested by HBD as would constitute a reasonable fee under all of the circumstances, based upon not only the total number of hours charged at guideline hourly rates, but also upon such other factors as the complexity of the problems presented, the amounts at issue, the nature, quality and extent of the opposition encountered, the results accomplished, the skill exercised in accomplishing those results, the extent to which our services were rendered outside the Los Angeles area, after normal business hours or on other than normal business days, delays in receipt of compensation, and the extent to which HBD was at risk in being paid. The Committee has agreed that, after confirmation of a plan of reorganization (or, if earlier, at the conclusion of HBD's engagement), HBD will assess such factors and determine the amount of its total fee after consulting with the Committee to the extent that such fee exceeds the total number of hours of service provided charged at guideline hourly rates. Thereafter, HBD will seek the allowance of the final fee from this Court.

17.    HBD has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth herein. Further, HBD has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

18.    HBD has requested that the Committee, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, pay HBD its customary hourly rates for services rendered, as set forth above, and to reimburse HBD according to its customary reimbursement polices, and submit that such rates are reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on March 27, 2008, at Hillsborough, California.

_____

Joshua D. Morse

664008.02