## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | ) |
| Corporation, et al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) **Hearing Date:  April 28, 2008 at 2:00 PM (ET)** |
| | ) **Objection Deadline: April 21, 2008 at 4:00 PM (ET)** |
| | ) |

## APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF LAW OFFICES OF JOSEPH J. BODNAR, AS SPECIAL CONFLICTS DELAWARE COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* AS OF MARCH 6, 2008

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") herby submits this application (the "Application") for entry of an order in substantially the form attached hereto as Exhibit A, pursuant to sections 328 and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Committee to retain and employ the  Law Offices of Joseph J. Bodnar ("LOJJB"), as special conflicts Delaware counsel to the Committee in these chapter 11 cases *nunc pro tunc* to March 6, 2008.  In support of this Application, the Committee relies on the Bodnar Declaration (as defined herein), filed concurrently herewith.  In further support of this Application, the Committee respectfully represents and states as follows:

## JURISDICTION

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these cases and this Application in this District is proper pursuant to 28

---

[1]

U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

The statutory predicates for the relief requested herein are sections 328 and 1103 of the

Bankruptcy Code and Bankruptcy Rule 2014.

**BACKGROUND**

2.      On August 6, 2007 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.

3.      On August 14, 2007, the United States Trustee for the District of Delaware,

pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the

interests of all unsecured creditors in these chapter 11 cases.  Pursuant to the First Amended

Notice of Appointment of Committee of Unsecured Creditors, dated December 7, 2007, the

current members of the Committee are:  (a) Wilmington Trust Company; (b) Law Debenture

Trust Company of New York; (c) Deutsche Bank National Trust Co.; (d) Nomura Credit &

Capital, Inc.; (e) Impac Funding Corporation; (f) Waldners Business Environments, Inc.; and

(g) United Parcel Service.

4.      Certain of the Debtors are parties to that certain pre-petition Second Amended and

Restated Credit Agreement dated as of August 10, 2006 (the "<u>Pre-Petition Credit Agreement</u>")

under which Bank of America, N.A. ("<u>BofA</u>"), acts as administrative agent for itself and certain

lenders, including, among others, JPMorgan Chase ("<u>JPMorgan</u>") (collectively, the "<u>Pre-Petition</u>

<u>Secured Lenders</u>").  As of the Petition Date, the Debtors allege that they were indebted to the

Pre-Petition Secured Lenders under the Pre-Petition Credit Agreement in the aggregate principal

amount of approximately $1,104,550,000.  Pursuant to a Security Agreement dated as of

August 30, 2004, as amended, modified, supplemented, ratified, and restated from time to time,

BofA, for the ratable benefit of the Pre-Petition Secured Lenders, asserts first priority security

interests in and liens upon certain of the Debtors' assets.

     5.     On August 27, 2007, this Court entered the Interim Order (i) Authorizing

Debtors' Limited Use of Cash Collateral, (ii) Granting Replacement Liens and Adequate

Protection to Certain Pre-Petition Secured Parties and (iii) Scheduling Final Hearing Pursuant to

Bankruptcy Rule 4001 [Docket No. 68] (the "Interim Cash Collateral Order"), pursuant to which

the Debtors were authorized to use the cash collateral pledged to BofA (in its capacity as

Administrative Agent for the Pre-Petition Credit Agreement) for the ratable benefit of the Pre-

Petition Secured Lenders for the operations of the Debtors' servicing business until

September 5, 2007.  On September 4, 2007, this Court entered the Final Order (i) Authorizing

Debtors' Limited Use of Cash Collateral and (ii) Granting Replacement Liens and Adequate

Protection to Certain Pre-Petition Secured Parties [Docket No. 554] (the "Final Cash Collateral

Order"), pursuant to which the Debtors were authorized to use such cash collateral for the

operation of their servicing business until October 31, 2007. (as subsequently amended by the

First Final Stipulation and Order Extending Limited Use of Cash Collateral Pursuant to the Final

Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement

Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 2002], the

Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash

Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition

Secured Parties [Docket No. 2284], the Second Stipulation and Order Regarding the Final Order

(1) Authorizing Debtors' Limited Use of Cash Collateral and (II), Granting Replacement Liens

and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 2855], the Third

Stipulation and Order Regarding the Final Order (1) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 3142] and the Fourth Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 3172], the Fifth Stipulation and Order Regarding the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties [Docket No. 3264], the "Final Cash Collateral Order"), pursuant to which the Debtors were authorized to use such cash collateral for the operation of their servicing business.

6.      Pursuant to the Final Cash Collateral Order, the Committee retained the right to investigate the extent, validity and priority of BofA's asserted security interests in the Debtors' assets (the "BofA Investigation"), which right, pursuant to the Final Cash Collateral Order, as extended by agreement between the Committee and BofA, expired on March 23, 2008.

7.      On December 22, 2007, the Debtors filed the "Motion Of The Debtors For Orders: (A)(I) Approving Sale Procedures; (II) Approving Payment Of Expense Reimbursement; (III) Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving Form And Manner Of Notice Thereof; And (V) Granting Related Relief; And (B)(I) Authorizing The Sale Of Non-Performing Loans Free And Clear Of Liens, Claims, Encumbrances And Other Interests; (II) Authorizing And Approving Sale Agreement Thereto; (III) Authorizing The Distribution of The Proceeds; And (IV) Granting Related Relief" [Docket No. 2490] (the "Sale Motion").  The Sale Motion sought to establish procedures for the sale of certain non-performing loans that were the property of the Debtors' estates including the distribution of proceeds,

following the closing of such sale, to, among other creditors of the Debtors, BofA.  On

February 1, 2008, this Court entered the "Order Pursuant To Sections 105 And 363 Of The

Bankruptcy Code: (I) Approving Sale Procedures; (II) Approving Expense Reimbursement;

(III)Scheduling A Hearing To Consider Sale Of Certain Non-Performing Loans; (IV) Approving

Form And Manner Of Notice Thereof; And (V) Granting Related Relief" [Docket No. 2858] (the

"Sale Procedures Order").  Thereafter, on or about February 15, 2008, the Debtors filed and

served their "Notice of Modified Bid Deadlines and Sale Related Dates," which, as permitted by

the Sale Procedures Order, extended certain deadlines relating to the proposed sale of assets and

the hearing to consider approval of that sale.  At the time LOJJB was contacted to discuss

serving as special conflicts counsel to the Committee, the Debtors were expecting to receive final

bids on March 11, 2008, and the hearing to consider the proposed sale of certain non-performing

loans that were the property of the Debtors' estates was scheduled for March 13, 2008.[2]

### RELIEF REQUESTED

8.      By this Application, the Committee seeks the entry of an order, substantially in

the form attached hereto as Exhibit A, pursuant to sections 328 and 1103 of the Bankruptcy Code

and Bankruptcy Rule 2014, to retain and employ LOJJB (a) as special conflicts Delaware

counsel, relating to representation of Committee's interests in connection with any matter in

which the Committee may be adverse to BofA and/or JPMorgan, including any matter relating to

the Debtors' use of BofA's cash collateral, the BofA Investigation or any contested matter or

adversary proceeding in which the Committee is adverse to BofA; any contested matter or

adversary proceeding in which the Committee is adverse to JPMorgan; and (b) to perform all

other necessary or appropriate legal services in connection with these chapter 11 cases as the

---

[2]      On March 10, 2008, on behalf of the Committee, a limited objection was filed to the proposed sale [Docket No. 3211] which was thereafter resolved.

Committee may so request.  Because of the urgent need to retain special conflicts counsel, the Committee requests authority to retain LOJJB nunc pro tunc to March 6, 2008.

<u>**FACTS RELEVANT TO THE RELIEF REQUESTED**</u>

9.      When it became apparent that a consensual resolution with BofA was not forthcoming in advance of the expiration of the time in which the Committee had to conclude the BofA Investigation, the Committee decided to retain HBD and LOJJB as its special conflicts counsel in order to avoid any issues with respect to actual or potential conflicts of interest arising from the fact, as previously disclosed, that BofA and certain of its affiliates are a client of the Committee's bankruptcy counsel.  Due to certain existing relationships, the Committee's principal bankruptcy counsel cannot assert claims against or otherwise be directly adverse to BofA or JPMorgan in any contested matter or adversary proceeding.

*LOJJB's Qualifications*

10.     LOJJB is highly qualified to serve as special conflicts Delaware counsel to the Committee in these chapter 11 cases.  LOJJB has experience in the various aspects of the law that may arise in connection with the proposed representation.  Further, LOJJB has served as counsel in other bankruptcy cases in a similar capacity in this jurisdiction, including, but not limited to, committees in DVI Financial and SleepMaster, Inc. and to the debtors in Natural Gas Vehicles, Inc. and American Classic Voyages, Inc. and to trustees in Summit Metals, Inc. (Chapter 11 Trustee) and DVI (Liquidating Trustee).

11.     LOJJB has stated its desire and willingness to act in these cases and render the necessary professional services as special conflicts Delaware counsel for the Committee.

***Services to Be Provided by LOJJB***

12.    Subject to further Order of the Court, the Committee proposes that LOJJB be employed to represent the Committee to provide, among other things, ordinary and necessary legal services as may be required in connection with the following:

    a.    Any matter in which the Committee may be adverse to BofA, including any matter relating to the Debtors' use of BofA's cash collateral and the BofA Investigation;

    b.    Any matter in which the Committee may be adverse to JPMorgan;

    c.    Representing the Committee in other bankruptcy and/or commercial litigation matters in this Court or in other courts having jurisdiction over particular matters; and

    d.    Providing such other advice and representation as may be necessary or appropriate in these chapter 11 cases relating to the foregoing.

13.    The Committee does not intend for LOJJB to be responsible for the provision of substantive legal advice outside of the insolvency and business litigation areas, including advice in such areas as patent, securities, trademark, corporate, taxation, labor, criminal or real estate law.  Further, the Committee does not intend for LOJJB to be required to devote attention to, form professional opinions as to, or advise the Committee with respect to its disclosure obligations under federal securities or other non-bankruptcy laws or agreements.

***LOJJB's Employment***

14.    On March 6, 2008, counsel to the Committee made initial contact with LOJJB regarding this engagement.  LOJJB determined, after conducting a preliminary check for conflicts, that it could accept the representation.  Because of the expedited timetable on which objections to the Debtors' proposed sale of non-performing loans that were the property of the Debtors' estates were to be filed and the looming expiration of the time in which the Committee has to conclude the BofA Investigation, LOJJB immediately began working on the matter with

HBD.  At the same time, LOJJB began preparing retention paperwork, including this Application, which was filed as promptly as possible after LOJJB accepted the retention.

15.    Because of the short amount of time between the initial contact with LOJJB and the hearing on the proposed sale of non-performing loans and the expiration of the period in which the Committee has to conclude the BofA Investigation, the Committee was unable to obtain this Court's approval of LOJJB's retention as special conflicts Delaware counsel to the Committee prior to the commencement of work by LOJJB to represent and protect the Committee's interests with respect to matters in which Committee may be adverse BofA and/or JPMorgan.  The Committee worked diligently with LOJJB and filed this Application as soon as practicable.  Thus, the Committee submits that approving LOJJB's retention in these cases *nunc pro tunc* to March 6, 2008, is appropriate under the circumstances.

***Disclosure Concerning Conflicts of Interest***

16.    To check and clear potential conflicts of interest in these cases, and based upon information known on or near the date of this Application, LOJJB researched its clients to determine whether it had any relationships with the following entities (collectively, the "Interested Parties"):

  a.    the Debtors;
  b.    the Debtors' affiliates;
  c.    the Debtors' warehouse lenders;
  d.    the current members of the Committee;
  e.    the 50 largest unsecured creditors for the Debtors on a consolidated bases;
  f.    the Debtors' shareholders;
  g.    the Debtors' directors and officers;
  h.    other creditors of the Debtors;
  i.    additional parties in interest; and
  j.    the professionals of the Debtors and the Committee involved in these chapter 11 cases.

17.    The identities of the Interested Parties were provided to LOJJB by the Committee and are set forth on <u>Schedule 1</u> to the Declaration of Joseph J. Bodnar of LOJJB (the "<u>Bodnar Declaration</u>"), a copy of the Bodnar Declaration is annexed hereto as <u>Exhibit B</u>, and incorporated herein by reference.  LOJJB has advised the Committee that it has not, does not, and will not represent any Interested Party with respect to matters related to the Debtors' chapter 11 cases, except Greenwich Capital Financial Products, Inc. and Greenwich Capital Markets, Inc., The Royal Bank of Scotland plc, during the course of this engagement.  LOJJB has further advised the Committee that, to the extent its research of its relationships with the Interested Parties indicated that it has represented, or currently represents, any Interested Party in matters <u>unrelated</u> to these chapter 11 cases, the identities of such Interested Party (and, for current LOJJB clients, a brief description of the type of work performed) are set forth below.

18.    To the best of the Committee's knowledge and belief, insofar as the Committee has been able to ascertain after reasonable inquiry and except as may be described herein and in the Bodnar Declaration, neither LOJJB nor any of the attorneys employed by it have any connection with the Debtors, their creditors, the Committee, the Office of the U.S. Trustee, any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants, except as disclosed in the Bodnar Declaration, which discloses the following:

   a.   LOJJB has not represented, and, does not and will not represent any entity other than the Committee in matters related to these chapter 11 cases, except Greenwich Capital Financial Products, Inc., Greenwich Capital Markets, Inc. and The Royal Bank of Scotland plc, during the course of its engagement as special conflicts Delaware counsel.

   b.   In the future, LOJJB may serve as counsel to certain other Interested Parties in matters unrelated to these cases.  In the event that LOJJB is so retained, LOJJB will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

       c.   LOJJB's only attorney, Joseph J. Bodnar, prior to forming LOJJB, has served as counsel in matters unrelated to these chapter 11 cases where certain of the Interested Parties may have been the client or adverse to LOJJB's clients.

19.      To the best of the Committee's knowledge, information and belief, LOJJB represents no interest adverse to the Committee in the matters for which LOJJB is proposed to be retained.  The Committee's knowledge, information and belief regarding the matters set forth herein is based, and made in reliance, upon the Bodnar Declaration.  The employment of LOJJB as special conflicts Delaware counsel to the Committee is appropriate and necessary to enable the Committee to ensure representation of the Committee's interests in connection with any matter in which the Committee may be adverse to BofA.  The Committee submits that its employment of LOJJB would be in the best interests of the Committee and the Debtors' general unsecured creditors.

***Disclosure of Compensation***

20.      With respect to LOJJB's services as special conflicts Delaware counsel, the Committee requests that all legal fees and related costs and expenses incurred by the Committee on account of services rendered by LOJJB in these cases be paid as administrative expenses of the Debtors' estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code.  Subject to the Court's approval, on an interim basis, LOJJB will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered.  LOJJB has informed the Committee that its billing rates currently vary from $200 to $300 per hour for attorney services and from $100 to $150 for paralegal services, and are adjusted periodically, typically on January 1 of each year.[3]  The range

---

[3]    LOJJB submits that the aforementioned rates shall be revised to the hourly rates that will be in effect from time to time.  Changes in LOJJB's regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

of billing rates set forth above reflects, among other things, differences in experience levels within classifications and differences between types of services being provided.

21.     The Committee has been billed, and will continue to be billed, at LOJJB's customary billing rates for matters of this type, together with reimbursement of all reasonable costs and expenses incurred by LOJJB in connection herewith.  Such expenses include, but are not limited to, charges for messenger services, air couriers, photocopying, postage, long distance telephone service, outgoing facsimile service, computerized legal research facilities (including the time billed for such legal research), process service, investigative searches, and other charges customarily invoiced by law firms.  The Committee proposes to pay LOJJB at such rates and to reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and applicable orders of this Court.  Moreover, the Committee understands that LOJJB hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

22.     LOJJB has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Bodnar Declaration.  Further, LOJJB has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

23.     The Committee, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, propose to pay LOJJB its customary hourly

rates for services rendered, as set forth above, and to reimburse LOJJB according to its customary reimbursement polices, and submit that such rates are reasonable.

## NOTICE

24.    The Committee has provided notice of this Application, in accordance with Del. Bankr. L.R. 2002-1, to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors; (c) counsel to BofA; and (d) those parties timely requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Committee submits that no other or further notice is necessary or required.

## NO PRIOR REQUEST

25.    No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court grant this Application in all respects and grant such other and further relief as is just and proper.

Dated: April 4, 2008

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF AMERICAN HOME MORTGAGE
HOLDINGS, INC., *ET AL.*

Wilmington Trust Company, as Trustee
By:    /s/ JAMES J. MCGINLEY
James J. McGinley
Co-Chair of the Committee

Case 07-11047-CSS    Doc 3537    Filed 04/07/08    Page 13 of 13

rates for services rendered, as set forth above, and to reimburse LOJJB according to its

customary reimbursement polices, and submit that such rates are reasonable.

## NOTICE

25.    The Committee has provided notice of this Application, in accordance with Del.

Bankr. L.R. 2002-1, to: (a) the Office of the United States Trustee for the District of Delaware;

(b) counsel to the Debtors; (c) counsel to BofA; and (d) those parties timely requesting notice

pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Committee submits

that no other or further notice is necessary or required.

## NO PRIOR REQUEST

26.    No previous application for the relief sought herein has been made to this or any

other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court grant this Application in

all respects and grant such other and further relief as is just and proper.

Dated: March ___, 2008              OFFICIAL COMMITTEE OF UNSECURED
                                    CREDITORS OF AMERICAN HOME MORTGAGE
                                    HOLDINGS, INC., *ET AL*.

                                    Wilmington Trust Company, as Trustee

                                    By: _____
                                    James J. McGinley
                                    Co-Chair of the Committee

-12-

**Error! Unknown document property name.**