## **EXHIBIT A**

```
                                                        1
 1

 2   UNITED STATES BANKRUPTCY COURT

 3   DISTRICT OF DELAWARE

 4   Case No. 06-10072

 5   - - - - - - - - - - - - - - - - - - - -x

 6   In the Matter of:

 7

 8   NELLSON NUTRACEUTICAL, INC.,

 9

10         Debtor.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. BANKRUPTCY COURT

15              824 North Market Street

16              Wilmington, Delaware

17

18              March 12, 2007

19              10:13 a.m.

20

21   B E F O R E:

22   HON. CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25
```

195

1    even in a world where the agreement doesn't specifically say

2    there will be no appeals in the motion for reconsideration,

3    will be withdrawn.  Those decisions would rest in the hands of

4    Mr. Meyercord.  We're comfortable with those decisions resting

5    there.  So is it perfect, does it button everything up, no.

6    But it's a step -- it's the next step, we believe.  And it's an

7    important step that we think is in the best interest of the

8    estate.

9           THE COURT:  Thank you.  Mr. Hodara, do you have any

10   comments?

11          MR. HODARA:  I don't, Your Honor.  Thank you.

12          THE COURT:  Okay.  Before I rule, I'd like -- I'd

13   like to see in chambers -- I'd like to see counsel for the

14   debtor, the committees, UBS and the U.S. Trustee and Fremont.

15   All right, you can come around this side.

16       (Recess from 4:16 p.m. until 4:38 p.m.)

17          THE COURT:  Please be seated.  All right.  I'm

18   prepared to provide my ruling in connection with debtor's

19   motion for order approving compromise and settlement agreement

20   with Fremont investors and the second lien lenders.  Excuse me.

21   As a preliminary matter, I think it's important to note, Mr.

22   Godshall made this point several times, what's in front of the

23   Court and what's not in front of the Court.  The deal between

24   Fremont and the second lien lenders is not before me.  The

25   Fremont decision about who to appoint to the board of directors

1    pursuant to the exercise of its controlling interest in the

2    debtor is not before me.  And the plan support agreement

3    between Fremont and the second lien lenders is not in front of

4    me.  Of course, it's all part of an integrated settlement

5    agreement.  And whatever ruling I make in connection with the

6    issues that is before me -- that are before me, excuse me, may

7    have the effect of rendering the entire agreement either void

8    or -- or of no moment.

9            The issues that I consider before me are the debtor's

10   releases of Fremont, the debtor's releases of the second lien

11   lenders, the debtor's payment of directors and then the

12   miscellaneous provisions, most important of which are 7.5 and

13   its effect on the debtors.  Several objections have been

14   raised.  The U.S. Trustee and the informal committee raised

15   that this is not a proper 9019 motion because there's nothing

16   to settle.  And they cite the Louise's case to that effect.  I

17   don't think that's the case here.  Clearly, word, from the very

18   beginning of this case -- that I've had this case.  So since at

19   least April of last year, there's been an ongoing dispute as to

20   who would control the debtor.  Whether that control would

21   happen pursuant to a plan or in the interim has not been -- has

22   never been concrete.  But the entire valuation trial, the whole

23   point of the valuation trial was to resolve who was in the

24   money and who was not in the money on the -- and whether equity

25   was in the money.  So I think that while it's not -- while

197

1    there's not specific provisions at the settlement agreement

2    that say the appeal is going to be resolved or the motion for

3    reconsideration is going to be resolved, there's no question

4    that the provisions, especially the control provisions, who's

5    going to be the board of directors, deal very specifically with

6    the issue that's been in front of the Court since April as well

7    as the issue of the releases, the mutual releases.

8            There's also an argument -- so I -- I -- I overrule

9    that objection, at least, on that basis.  There has also been

10   the review, or the argument, that this is a sub-rosa plan.  I

11   don't know what -- you know -- part of the problem is I don't

12   know what a sub-rosa plan is.  So it's hard to -- it's hard to

13   figure out whether this is a sub-rosa plan.  I think, as I

14   articulated during argument, the Louise's decision in the sub-

15   rosa plan case sort of melt together in my mind.  There's a

16   dispute.  You can resolve that dispute.  You don't have to

17   resolve it with just the issues that are in the dispute; you

18   can go further.  But at some point, you go so far, you throw in

19   so many provisions that you start to add provisions that, for

20   instance, bind third parties or dictate how the reorganization

21   is going to take place or provide releases.  And you get so

22   large that you start to become either beyond the scope of

23   whatever you're settling or you get into the area of calling

24   something a sub-rosa plan.

25           I don't think I have to reach that issue here.  This

198

1    may be a sub-rosa plan. But I don't think I have to reach that

2    issue here because I'm going to -- I'm not trying to hide the

3    ball -- I'm going to deny the motion. At least I'm going to

4    deny the motion as it affects the releases. And I think that

5    sort of moots the sub-rosa objection, if you will.

6         The release -- the debtor's release of Fremont and

7    the debtor's release of the second lien lenders are very

8    troubling here. And the reason they're troubling is twofold.

9    One, I think as a matter of policy, as a matter of Chapter 11

10   policy, as a matter of this case, I think that they're

11   premature. I think that those releases have to occur, if

12   they're going to occur, in the context of a plan of

13   reorganization.

14        As to what standard to apply, I don't think that the

15   9019 Martin factors can trump the Zenith factors. If you have

16   to meet a more stringent requirement in order to do an -- to do

17   something pursuant to a plan, I can't see how doing it prior to

18   the plan should somehow lower the bar. So I would apply the

19   Zenith factors generally speaking. But I have to say that I

20   think we go beyond that because it's clear to me from the

21   evidence that the releases were negotiated by Mr. Lenihan on

22   behalf of the debtors. The debtor's release of Fremont was

23   negotiated by a Fremont representative. I think the board, I

24   won't say they abdicated their responsibility, but I think the

25   board clearly deferred to Mr. Lenihan to make that decision.