**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------ x   Chapter 11
In re:                                                            :
                                                                  :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                            :
HOLDINGS, INC., a Delaware corporation, et al.,[1]                :   Jointly Administered
                                                                  :
                        Debtors.                                  :
------------------------------------------------------------------ x

**DECLARATION OF JOSH R. SEEGOPAUL
IN SUPPORT OF (I) EMERGENCY MOTION OF AH MORTGAGE
ACQUISITION CO., INC. TO COMPEL DEBTORS TO EFFECTUATE
THE FINAL CLOSING UNDER THE ASSET PURCHASE AGREEMENT
FOR THE SALE OF THE DEBTORS' MORTGAGE SERVICING
BUSINESS AND (II) RELATED MOTION TO SHORTEN NOTICE**

JOSH R. SEEGOPAUL hereby declares pursuant to section 1746 of title 28 of the United States Code:

1. I am a director and the Vice President of AH Mortgage Acquisition Co., Inc. (the "Purchaser"). I submit this Declaration in support of the Emergency Motion of AH Mortgage Acquisition Co., Inc. to Compel Debtors to Effectuate the Final Closing Under the Asset Purchase Agreement for the Sale of the Debtors' Mortgage Servicing Business (the "Motion to Compel") and the Purchaser's motion to shorten notice with respect to the Motion to Compel. Capitalized terms not otherwise defined herein have the meaning given to

---

[1] The debtors in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for American Home Mortgage Servicing, Inc., whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

them in the Motion to Compel.  In my current position, among other things, I am responsible for overseeing the Purchaser's acquisitions, including the Purchaser's acquisition of the Servicing Business under the APA and the Option One Sale.  Accordingly, I am familiar with the matters and circumstances surrounding the Purchaser's acquisition of the Servicing Business, including the negotiations in connection therewith.  The statements herein are based upon my personal knowledge or my review of relevant documents.

2.  On October 30, 2007, the Court entered the Servicing Sale Order authorizing the sale of the Servicing Business to the Purchaser.  Because the Purchaser was not yet licensed to service mortgage loans in the various jurisdictions necessary to operate the Servicing Business, the APA and the Servicing Sale Order provide for a two step closing process designed so that the sale could close from an "economic" perspective while the Purchaser obtained the necessary regulatory approvals and licensing.  At the "economic" close, which occurred on November 16, 2007 (the "<u>Initial Closing</u>"), the Purchaser paid the Purchase Price in the manner and to the parties in interest as contemplated by the APA, but the Sellers, with AHM Servicing as the licensed servicing entity, retained ownership of the Servicing Business.  Following the Initial Closing, the only condition to the Purchaser's obligation to effectuate the Final Closing under the APA is the condition that the Purchaser has obtained the necessary regulatory approvals and licenses (the "<u>Regulatory Approval Condition</u>"), a condition the Purchaser may waive.  (APA § 8.4.)  Following the Initial Closing, there is no condition to the Sellers' obligation to effectuate the Final Closing under the APA.

3.  The Debtors have refused to effectuate the Final Closing under the APA. On March 16, 2008, the Purchaser, pursuant to paragraph 58 of the Servicing Sale Order, notified the Sellers that of the 44 licenses Purchaser needed to obtain, 40 had either been issued

or regulatory approval to proceed to closing had been obtained. Shortly thereafter, the Debtors and the Purchaser began conducting daily conference calls in anticipation of the Final Closing and worked toward finalizing various agreements such as the Transition Services Agreement and the post-Final Closing servicing agreements. The parties thereafter set March 31, 2008 as the Final Closing Date.

4. Although the Purchaser had satisfied the Regulatory Approval Condition by that date, the Debtors failed to effectuate the Final Closing on that date because of a regulatory issue associated with two mortgage servicing agreements that are not included in the Purchased Assets. Because the Debtors will no longer have a platform to service mortgage loans after the Final Closing, the APA contemplates that the Purchaser will enter into a sub-servicing arrangement with the Debtors to service mortgage loans under servicing agreements that are not included in the sale. A problem arose, however, relating to the need for both the Debtors and the Purchaser to be licensed to service those mortgage loans. Additionally, the Debtors indicated that one of the servicing agreements, a repurchase agreement with Calyon New York Branch ("Calyon"), required Calyon's consent for the Purchaser to act as subservicer. On April 3, 2008, the parties resolved the regulatory issues associated with the sub-servicing arrangements.

5. On April 4, 2008, the Purchaser sent a letter (the "Demand Letter") to the Debtors (a) formally notifying the Debtors that the Purchaser has satisfied the Regulatory Approval Condition and that, to the extent there is any doubt that the condition has been satisfied, the Purchaser waives the condition; and (b) demanding that the Debtors comply with the APA and effectuate the Final Closing no later than April 7, 2008. A copy of the Demand Letter is attached to the Motion to Compel as Exhibit D. Although the Debtors initially agreed to

close on April 7, the Debtors informed the Purchaser on April 7 that they were not willing to close because they had not yet obtained Calyon's consent.

6. The Purchaser believes that it is critical that the Final Closing occur as soon as possible. As an initial matter, each day the Final Closing is delayed causes the Purchaser to suffer damages under the APA. In particular, the APA allocates certain overhead costs of the loan servicing business, totaling $350,000 per month, to the Purchaser during the period between the Initial Closing Date and the Final Closing Date. The Purchaser's responsibility for such overhead costs, however, will be substantially reduced after the Final Closing Date, pursuant to the Transition Services Agreement. In addition, under section 6.2(f) of the APA, the Debtors agreed to remit certain fees to the Purchaser for servicing certain mortgage loans during the period from the Initial Closing Date through the Final Closing Date. The amount of such fees following the Final Closing Date, however, is expected to be substantially more than the amount of the current fees. Thus, the longer the Final Closing Date is delayed, the more overhead costs the Purchaser will incur and the more fees the Purchaser will forego.

7. Furthermore, the Purchaser cannot wait for an extended period while the Debtors seek to obtain Calyon's consent because the Purchaser has entered into other significant transactions that are dependent upon the Final Closing under the APA. The most significant of those transactions is the Purchaser's agreement to acquire the mortgage servicing rights of Option One Mortgage Corporation (the "<u>Option One Sale</u>") pursuant to that certain Purchase Agreement by and among Option One Mortgage Corporation, the Purchaser and certain other entities, dated March 17, 2008 (the "<u>Option One Agreement</u>"). Because, among other reasons, the regulatory approvals and licensing obtained to operate the Servicing Business to be acquired at the Final Closing under the APA will serve as the necessary licensing for the Option One servicing

platform, one of the financing conditions that must be satisfied to close under the Option One Agreement is that the Final Closing has occurred on the Purchaser's acquisition of the Debtors' Servicing Business. The Option One Sale is targeted to close on April 30, 2008 and, because of certain purchase price adjustments and other factors, the Purchaser will incur substantial damages if the Option One Sale fails to close on or before April 30. The various parties involved in the Option One Sale, however, are unlikely to devote the substantial resources necessary to prepare for closing that sale until the necessary Final Closing under the APA has occurred. As a result, if the Final Closing remains uncertain for another couple of weeks, it will seriously jeopardize the ability of the Purchaser to close the Option One Sale on or before April 30.

8. Additionally, it is imperative that the Purchaser maintains the confidence of the Servicing Business employees, the counterparties to the servicing agreements, as well as state regulators. Any prolonged delay of the Final Closing could raise concerns among the Servicing Business employees, the Federal Home Loan Mortgage Corporation (Freddie Mac), the Federal National Mortgage Association (Fannie Mae), and the credit rating agencies, all of whom were already notified that the Purchaser expected the Final Closing to occur on March 31. It is critical to the success of the Purchaser's business that these parties have confidence in the Purchaser, and the Final Closing under the APA must occur as quickly as reasonably possible to avoid damage to the Purchaser's reputation and business prospects.

I declare under penalty of perjury that, based upon my own personal knowledge, the foregoing information is true and correct to the best of my knowledge, information and belief.

DLI-6181173v2

- 6 -

Dated: April 8, 2008

                                                s/Josh R. Seegopaul
                                                  JOSH R. SEEGOPAUL