IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------- x   Chapter 11
In re:                                                                 :
                                                                       :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                                 :
HOLDINGS, INC., a Delaware corporation, et al.,[1]                     :   Jointly Administered
                                                                       :
                    Debtors.                                           :   Hearing Date: April 14, 2008 at 10:00 a.m. (ET)
                                                                       :   Docket Ref. No. 3387
---------------------------------------------------------------------- x

**DEBTORS' OBJECTION TO MOTION OF WELLS FARGO BANK, N.A., AS SECURITIES ADMINISTRATOR, FOR RELIEF FROM THE AUTOMATIC STAY TO RECOVER A PAYMENT MADE IN ERROR TO ONE OF THE DEBTORS THROUGH RECOUPMENT, IMPOSITION OF A CONSTRUCTIVE TRUST, AND/OR AN EQUITABLE LIEN**

The above-captioned debtors and debtors-in-possession (the "Debtors") object to the *Motion of Wells Fargo Bank, N.A., as Securities Administrator, for Relief from the Automatic Stay to Recover a Payment Made in Error to One of the Debtors through Recoupment, Imposition of a Constructive Trust, and/or an Equitable Lien* [Docket No. 3387] (the "Motion") filed on March 24, 2008 by Wells Fargo Bank, N.A., as Securities Administrator ("Wells Fargo"). In support of this objection (the "Objection"), the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## PRELIMINARY STATEMENT[2]

1. Wells Fargo seeks relief from the automatic stay to assert equitable remedies of recoupment, constructive trust and equitable lien in order to recover a M-4 Note Payment made in March 2007 (more than 4 months before the Petition Date). Prior to filing the Motion, Wells Fargo twice violated the automatic stay through impermissible post-petition setoffs in the amount of $269,245.02 from distributions owed to the Debtors on wholly separate and distinct securities. The impermissible setoff payments were returned only after a demand letter was sent by the Debtors. With unclean hands, Wells Fargo comes to this Court praying for equitable relief under theories of recovery that are legally and factually flawed.

2. First, Wells Fargo asserts recoupment rights under all "Trust Securities" (as defined in the Motion). Trust Securities is defined in the Motion as being without limitation, but including numerous notes from two separate securitizations. Wells Fargo has confidential information as Securities Administrator with respect to numerous securitizations where AHM Investment owns various notes. While Wells Fargo concedes that the M-4 Note Payment was made as a distribution solely under the M-4 Note, it seeks to recoup from distributions on any notes owned by AHM Investment. This request for relief is not only absurdly overbroad, but is based on the inappropriate use of confidential information that Wells Fargo is privy to in its capacity as Securities Administrator. The rights and obligations under the various notes are separate single integrated transactions, regardless of whether the notes were issued under the same or separate indentures.

3. Furthermore, any assertion of recoupment rights in connection with the M-4 Note is premature. The next anticipated distribution on the M-4 Note is not for sixteen (16) years, if

---

[2] Capitalized terms used, but not defined in the Preliminary Statement, shall have the meaning ascribed to such terms in the Objection.

2

ever. The facts, circumstances and even the applicable law may change by the time any such claim may become ripe. As such, Wells Fargo's claim for recoupment is without merit and must be denied.

4. Second, Wells Fargo seeks to impose a constructive trust on the Debtors' general operating account in which the M-4 Payment of $462,049.83 was deposited in March 2007. The general operating account has high levels of wire activity. In March alone, the Debtors received and disbursed approximately 2,685 wires in total from this account. Clearly, the M-4 Payment was commingled with other general operating funds. In addition, the Debtors have determined that the M-4 Payment was spent during the more than 4 month period before the Petition Date. Thus, Wells Fargo cannot even meet the threshold issues required to impose a constructive trust. The Court should deny this request because (a) Wells Fargo cannot prove identifiable trust res, and (b) it has failed to establish any of the four required elements of constructive trust.

5. Last, and certainly the least, Wells Fargo requests the Court to grant an equitable lien on the "Securities" (as defined in the Motion). Wells Fargo introduces the additional term of "Securities" with respect to this last argument in an effort to attain a blanket equitable lien over even more securitizations and notes than are seemingly included in the term "Trust Securities." Other than the M-4 Note, the Securities have nothing to do with the M-4 Payment. Granting an equitable lien is an extreme and rarely granted remedy, which is wholly unsupported by the facts in this case. The few exceptional cases in which equitable liens are granted are where an equitable lien is contemplated under a contract or where unsophisticated and related parties are involved. This request should also be denied.

3

**FACTUAL BACKGROUND**

6. A Class IV-M-4 Note (the "<u>M4 Note</u>") was issued to AHM Investment pursuant to an indenture (the "<u>2007-SD1 Indenture</u>") and trust (the "<u>AHMIT 2007-SD1 Trust</u>") dated March 13, 2007.

7. The M4 Note was assigned CUSIP Number 026933 AE1. A CUSIP is a unique identifier assigned to a bond at the time it is issued and stays with the bond until it matures notwithstanding whether the bond is assigned or sold.

8. The Debtors currently hold the M4 Note and the initial principal balance on the M4 Note was $6,437,000. The next anticipated distribution under the M4 Note will occur in approximately sixteen (16) years[3] and the maturity date is July 25, 2046.

9. A Class IV-M-5 Note (the "<u>M5 Note</u>") and a Class IV-M-6 Note (the "<u>M6 Note</u>") were also issued to AHM Investment pursuant to the 2007-SD1 Indenture and AHMIT 2007-SDI Trust. The initial principal balances on the M5 Note and M6 Note were $5,259,000 and $28,469,667, respectively. The M5 and M6 Notes were assigned CUSIP Numbers 026933 AF8 and 026933 AG6, respectively. AHM Investment currently holds the M4 and M5 Notes.

10. Each of the M4, M5, and M6 Notes has separate ownership certificates, and provides the Debtors with unique and independent cash flow rights.

11. Four other classes of notes, a Class IV-A, Class-IV-M-1, Class IV-M-2, and Class IV-M-3 were also issued pursuant to the 2007-SD1 Indenture and AHMIT 2007-SDI Trust. Like the M4, M5, and M6 Notes, each of these notes was assigned an individual CUSIP number, has separate ownership certificates, has a different initial principal balance, and has unique and independent cash flow rights. These notes are currently publicly traded.

---

[3] Credit Suisse First Boston as underwriter prepared a term sheet for public and private investors and projected that the first distribution to M4 Note holders would take place 198 months after the March 13, 2007 closing date.

12. Wells Fargo is Securities Administrator under the 2007-SD1 Indenture and AHMIT 2007-SD1 Trust and has an independent fiduciary obligation to each class of noteholders to make distribution payments as they become due.

13. Pursuant to a separate trust agreement (the "AHMIT 2007-A Trust") and indenture (the "2007-A Indenture") several notes were issued. These notes included Class I-M2, Class I-M3, Class II-M5, Class II-M-6 Notes, OC1, OC2, and OC3 Notes (collectively, the "2007-A Notes"). Wells Fargo is also the Securities Administrator under the AHMIT 2007-A Trust and 2007-A Indenture and has a fiduciary obligation to make distribution payments to each class of noteholders thereunder.

14. AHM Investment is the current holder of the 2007-A Notes. Like the notes issued under 2007-SD1 Indenture and AHMIT 2007-SDI Trust, each of the 2007-A Notes was assigned an individual CUSIP number, has separate ownership certificates, and has unique and independent cash flow rights.

15. On March 26, 2007, Wells Fargo made a distribution payment to the Debtors in the amount of $462,049.83 on account of the M4 Note (the "M4 Note Payment").

16. Upon receipt of the M4 Note Payment, the Debtors deposited it into a general purpose account. The general purpose account has high levels of wire activity as it is used in the ordinary course of the Debtors' business. In the month of March, approximately 2685 wires in total were received by and disbursed from the general purpose account.

17. The M4 Note Payment was commingled with funds received by the Debtors from a variety of sources, and was subsequently spent in the ordinary course of the Debtors' business.

18. On August 6, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

DB02:6709245.7                                                                                                                                                                          066585.1001

19. On September 25, 2007, Wells Fargo violated the automatic stay by withholding $81,222.22 in distribution payments owed to the Debtors to offset Wells Fargo's claim for the M4 Note Payment. The withheld payments owed to the Debtors were from securities entirely separate and distinct from the M4 Note.

20. On October 25, 2007, Wells Fargo again violated the automatic stay by withholding $188,022.80 in distribution payments owed to the Debtors to offset Wells Fargo's claim for the M4 Note Payment. The withheld payments owed to the Debtors were from securities entirely separate and distinct from the M4 Note.

21. On November 6, 2007, after an inquiry from the Debtors regarding the unpaid payments, Wells Fargo admitted via electronic-mail (attached hereto as <u>Exhibit A</u>) that certain distribution payments relating to the Debtors' securities were withheld as a reimbursement for the M4 Note Payment.

22. After conducting an investigation on the M4 Note Payment, the Debtors determined that no person with authority to refund the M4 Note Payment ever received notice of the M4 Note Payment prior to November 6, 2007. The appropriate employees of the Debtors first learned of the M4 Note Payment from Wells Fargo through the electronic-mail sent on November 6, 2007.

23. Subsequent to the electronic-mail sent on November 6, 2007, Wells Fargo made several demands on the Debtors to pay $462,049.83 as a reimbursement for the M4 Note Payment. The Debtors rejected the demands and advised Wells Fargo that payments on account of its general unsecured claim could only be made under the terms of a confirmed plan.

DB02:6709245.7    066585.1001

24. On November 26, 2007, the Debtors sent counsel to Wells Fargo a letter advising that the withheld payments constituted an impermissible setoff in violation of the automatic stay. The Debtors further demanded that Wells Fargo pay the withheld payments within ten (10) days.

25. As a result of the Debtors' demand, Wells Fargo paid the withheld distribution payments.

26. On or about January 11, 2008, Wells Fargo filed a proof of claim in the amount of $462,049.83 on account of the M4 Note Payment.

27. On March 24, 2008, Wells Fargo filed the Motion, seeking (a) to recoup the M4 Note Payment by withholding future payments on "Trust Securities," (b) the imposition of a constructive trust upon the general purpose operating account in which the M4 Payment was deposited, and (c) the grant of an equitable lien an all "Securities" listed on Exhibit A to the Motion.

28. In the Motion, Wells Fargo defines "Trust" by referencing the AHMIT 2007-SD1 Trust and the AHMIT 2007-A Trust, two entirely separate securitizations. *See* Motion at ¶1. Wells Fargo's definition of "Trust" is incorrect and misleading as it combines two separate securitizations.

29. In the Motion, Wells Fargo defines "Trust Securities" in a broad and sweeping manner. *See* Motion at ¶11. Specifically, Wells Fargo states that the "Trust Securities" include, but are "not limited to" the 2007-A Notes and the M4, M5, and M6 Notes. Wells Fargo seeks to recoup the M4 Note Payment by withholding future distributions under the "Trust Securities." Id.

30. In the Motion, Wells Fargo defines "Securities" in a broad and sweeping manner. *See* Motion at ¶1 and Exhibit A. Specifically, included in the definition of "Securities" are (a)

Class OT-1, Class I-M-5, Class 1-M-4, Class II-M-4, and Class II-M5-5 Notes issued under the AHMIT 2005-SD1 transaction, (b) a Class OT-2 Note issued under the AHMIT 2006-2 transaction (c) Class IV-M5, Class IV-M6, Class OY 07A, Class M-5, Class IV-M-4, Class AM-3, Class OT SD1, Class AM-2, Class M-6, Class OT-1, and Class X-1 Notes issued under the AHMIT 2007-SD1 transaction, (d) Class 2R-1, Class 2RX-1, Class 3R-1, Class 3RY-1, Class 1R-1, Class 1RX-1 Notes issued under the American Home Mortgage Assets LLC Trust 2007-3, and (e) Class B-1 and Class OT-1 Notes issued under the AHMIT 2007-SD2 transaction. Id.

31. Each of the securities transactions under the notes included in the definition of "Securities" are entirely separate transactions because, *inter alia*, they have different (i) underwriters, (ii) closing and issuance dates, (iii) principal balances and interest terms, and (iv) maturity dates. Upon information and belief, Wells Fargo is the Securities Administrator under all the above-referenced transactions and has a fiduciary obligation to make the appropriate distribution payments to the separate noteholders as they become due.

32. In addition to seeking recoupment from future distributions under the "Trust Securities," and the imposition of a constructive trust over the general purpose operating account in which the M4 Note Payment was deposited, Wells Fargo requests the Court to grant an equitable lien on the "Securities."

## **OBJECTION**

33. The automatic stay may only be lifted for "cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). As the moving party, Wells Fargo has the burden to establish a *prima facie* cause to lift the stay. Only upon such a showing does the burden shift to the Debtors to establish that the stay should not be lifted. See In re Pursuit Athletic Footwear, Inc., 193 B.R. 713, 718 (Bankr. D. Del. 1996).

34. Wells Fargo contends that cause exists to lift the stay because it can show that it is entitled to (a) recoupment over the "Trust Securities" held by the Debtors, (b) a constructive trust over the general purpose operating account in which the M4 Note Payment was deposited, and/or (c) an equitable lien on the "Securities" held by the Debtors. As set forth below, Wells Fargo's legal theories and factual support thereof are flawed. Consequently, Wells Fargo has failed to establish even the basic *prima facia* requirements for relief from the automatic stay and, therefore, the Motion should be denied.

### A. Wells Fargo's Recoupment Claim Is Not Ripe For Adjudication And Even If The Court Were To Consider It, Wells Fargo Has Failed To Show That It Is Entitled To Recoupment

35. Wells Fargo alleges that it has recoupment rights against the "Trust Securities," which includes a vast number of securities separate and distinct from the M4 Note Payment transaction. The movants definition of "Trust Securities" is not only absurdly overbroad, but the only reason Wells Fargo knew that AHM Investment was the owner of the separate securities is because Wells Fargo is privy to confidential information in its capacity as Securities Administrator. As established more fully below, Wells Fargo has no recoupment rights whatsoever against distributions from securities. While Wells Fargo concedes that the M-4 Note Payment was made as a distribution solely under the M-4 Note, it seeks to recoup from distributions on any notes owned by AHM Investment. The rights and obligations under the various notes are separate single integrated transactions, regardless of whether the notes were issued under the same or separate indentures. In addition, any assertion of recoupment rights in connection with the M-4 Note is premature. The next anticipated distribution on the M-4 Note is not for sixteen (16) years, if ever. The facts, circumstances and even the applicable law may

change by the time any such claim may become ripe. As such, Wells Fargo's claim for recoupment is without merit and must be denied.

36. The Court should not consider Wells Fargo's claim for recoupment against future M4 Note distributions as it is premature. Recoupment is best understood as providing a creditor with a deduction from a payment that is currently owed to a debtor. Anes v. Dehart (In re Anes), 973 F.3d 177, 182 (3d Cir. 1999) ("Recoupment permits a creditor that owes a debt to the debtor to reduce the amount of its debt by the amount of a debt owed by the debtor to the creditor") (internal citation omitted). The Debtors respectfully submit that if the Court were to adjudicate Wells Fargo's recoupment rights on the next M4 Note distribution, it would constitute an advisory opinion.

37. As stated above, the next anticipated distribution under the M4 Note will be in approximately sixteen (16) years. Only when it is determined that a distribution will be made under the M4 note, if ever, would it be the appropriate for Wells Fargo to assert recoupment rights and seek a deduction from the M4 Note distribution that would then be owed to the Debtors. Instead, Wells Fargo now asks the Court to adjudicate its recoupment rights even though there is no current M4 Note distribution payment in which to seek a deduction.

38. With respect to the other so called "Trust Securities," Wells Fargo has no recoupment rights whatsoever. However, it is clear from Wells Fargo's limitless definition of "Trust Securities" that it is determined to block future cash flows under securities entirely separate from the M4 Note. As stated above, "Trust Securities" includes, but are not limited to, the 2007-A Notes and the M5 and M6 Notes. *See* Motion at ¶11. By defining "Trust Securities" in this way, Wells Fargo inappropriately seeks to expand its limited rights under the recoupment

10

doctrine, which requires respective debts of the creditor and debtor to arise out of a "single integrated transaction." In re University Medical Center, 973 F.2d 1065, 1081 (3d Cir. 1992).

39. In University Medical Center, the Department of Health and Human Services withheld payments for Medicare services rendered post-petition in order to recoup pre-petition Medicare overpayments made to the debtor. The Third Circuit concluded that the withholding of the overpayments could not be considered equitable recoupment and reasoned that:

> For the purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the 'same transaction.'" Id. Rather, both debts must arise out <u>of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations</u>. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be <u>narrowly construed</u>.

Id. (emphasis added) (internal citations omitted).

40. Accordingly, to prevail on its recoupment theory, Wells Fargo must prove that the M4 Note is part of the same integrated transaction as the Trust Securities. Wells Fargo fails in this regard as each of the Trust Securities are separate, independent contracts that, in some instances, are issued under separate indentures. The M4 Note Payment is distinct from and bears no direct relation to the future cash flows from the Trust Securities that Wells Fargo is required to distribute to the Debtors.

41. As stated above, the 2007-A Notes were issued pursuant to the 2007-A Indenture. The 2007-A Indenture reflects an entirely separate deal and transaction from the 2007-SD1 Indenture. Thus, it is clearly inappropriate and overreaching for Wells Fargo to withhold future payments due under the 2007-A Notes in order to recoup the M4 Note Payment.

42. The M5 Note and M6 Note were issued under the 2007-SD1 Indenture. However, although the M5 Note and M6 Note were issued under the same indenture as the M4 Note, they

11

are all not part of the "same transaction" for purposes of recoupment. See e.g., In re HQ Global Holdings, Inc., 290 B.R. 78, 80-81 (Bankr. D. Del. 2003) (recoupment typically involves a single contract). Each of the M4, M5, and M6 Notes was assigned a separate CUSIP number, has separate ownership certificates, has a different initial principal balance, and provides the Debtors with unique and independent cash flow rights. Thus, it clearly is inappropriate and overreaching for Wells Fargo to withhold future payments due under the M5 and M6 Notes in order to recoup the M4 Note Payment.

43.     Indeed, Wells Fargo fails to point to any instance where a court has allowed a creditor to recoup an overpayment on account of one security by withholding future payments due on account of a separate security. As the Third Circuit observed in University Medical Center, the "typical situation in which equitable recoupment can be invoked involves a credit and debt arising out of a transaction for the same goods or services." Id. It is clear that Wells Fargo has improperly invoked the equitable recoupment doctrine to take advantage of the various securities held by the Debtors. Thus, this Court must deny Wells Fargo's requested relief for recoupment.

### B. Wells Fargo Has Failed To Show That A Constructive Trust Can Be Imposed

44.     Wells Fargo also seeks to have a constructive trust imposed over the account into which the Debtors deposited the M4 Payment. The Court should deny this request because (a) the absence of an identifiable trust res, and (b) Wells Fargo has failed to establish any of the four required elements of constructive trust.

45.     A party seeking the imposition of a constructive trust must identify, with specificity, the funds to be held in the proposed constructive trust. Asurion Ins. Servs. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.), 377 B.R. 478, 489 (Bankr. D. Del. 2007) ("A claimant must be able to identify with specificity the funds or assets held in trust. Where funds are held and

segregated, this task is easy. Where monies are commingled with the constructive trustee's other funds, a claimant must be able to trace trust funds in order to recover.") (internal citation omitted).

46. Here, Wells Fargo merely states that it seeks to have a constructive trust imposed on the "account" in which the M4 Payment was deposited. The M4 Note Payment, however, was deposited into a general purpose account held by the Debtors. This general purpose operating account holds funds received by the Debtors from a variety of sources, including distributions from the Debtors' securities. Funds deposited in the general purpose operating account are then used to make additional investments and pay for other corporate activities.

47. Indeed, the general purpose account has a high level of wire activity. In the month of March alone, approximately 2685 wires in total were received by and disbursed from the general purpose account. Since the M4 Payment that was deposited in March 2007 was clearly commingled with other funds in the general purpose account and cannot now be traced, the Court cannot impose a constructive trust.

48. In addition, under New York law,[5] a party seeking the imposition of a constructive trust must establish the existence of: (i) a confidential or fiduciary relationship; (ii) an express or implied promise; (iii) a transfer of property made in reliance upon that promise; and (iv) unjust enrichment. Sharp v. Kosmalski, 351 N.E.2d 721, 723 (N.Y. 1976).

49. Here, Wells Fargo entirely fails to address the first three requirements. Indeed, Well Fargo ignores the first requirement as the relationship between the Debtors and Wells Fargo is purely contractual. LFD Operating, Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.), 274 B.R. 600, 626 (Bankr. S.D.N.Y.) ("In New York, no fiduciary relationship exists where parties were acting and contracting at arms-length to a business transaction."). Further, no

---

[5] New York law governs the 2007-SD1 Indenture.

DB02:6709245.7    066585.1001

provision under the AHMIT 2007-SD1 Trust or the 2007-SDI Indenture creates a fiduciary responsibility upon the Debtors. With respect to the second and third requirements, no promise whatsoever was made, and thus, no transfer of property was made in reliance of any promise. Last, Wells Fargo fails to establish that the Debtors have been unjustly enriched as they retain rights as a creditor of the estates. Moreover, since the M4 Note Payment was commingled with other funds and is now gone, any reimbursements outside of the plan process would be to the detriment of all creditors of the Debtors' estates.

50.     Interestingly, Wells Fargo relies on a case that states that the four requirements of a constructive trust are "simply guidelines." Matter of Estate of Knappen, 237 A.D. 2d 677, 678-79 (N.Y. App. Div. 1997). However, Knappen is distinguishable as is it involves a domestic situation where the court sought to prevent unjust enrichment to a wife who shot and killed her husband. The Knappen court imposed a constructive trust on the proceeds of the sale of the marital residence of the wife and the deceased so that their children could share in the proceeds. The Debtors respectfully submit that the Court should find that the failure to establish any one of the requirements in this instance bars the imposition of a constructive trust. See, eg, Sharp v. Kosmalski, 351 N.E.2d 721, 723 (N.Y. 1976) ("The absence of any one of the foregoing elements is fatal to a party's request for imposition of a constructive trust").[6]

### C. Wells Fargo Has Failed To Show That An Equitable Lien Should Be Granted

51.     Last, and certainly the least, Wells Fargo requests the Court to grant an equitable lien on the "Securities." Wells Fargo introduces the additional term of "Securities" with respect to this theory of recovery in an effort to obtain a blanket equitable lien over even more securitizations and notes than are seemingly included in their definition of "Trust Securities."

---

[6] The Kosmalski case was adopted by this Court in the Amp'd Mobile opinion cited above.

Once again, Wells Fargo has inappropriately used confidential information that it is privy to in its capacity as Securities Administrator.

52. The Court should reject Wells Fargo's request for an equitable lien on the "Securities." The Debtors respectfully submit that the granting of an equitable lien is an extreme remedy and that they have been unable to find one case where an equitable lien was granted under similar facts. Indeed, as set forth below, the granting of equitable lien is wholly inappropriate under the present facts.

53. Equitable liens are generally created by contract. Scotfoam Corp. v. Peddrick, 1989 Del. Ch. LEXIS 172 (Del. Ch. 1989) ("In most cases an equitable lien on a particular thing can be created only by contract which, in express terms, provides that the thing shall be held or transferred as security for some debt or obligation"). Further, equitable liens predicated upon unjust enrichment have usually involved unsophisticated and related parties. Id. Here, the parties are sophisticated and not related, and none of the indentures or trusts contain any terms that create an equitable lien. Indeed, Wells Fargo relies on obscure cases, mostly involving domestic matters, that point out a minor exception to the general rules involving equitable liens. In re Friedlander's Estate, 32 N.Y. S. 2d 991 (N.Y. Sur. 1941); Nachazel v. Mira Co., Mfg., 466 N.W. 2d 248 (Iowa 1991); McGillis v. McGillis, 154 N.Y. 532 (N.Y. 1898); Towner v. Berg, 172 N.Y.S. 2d 258 (N.Y.App.Div. 1958). Wells Fargo, however, even fails to fit within the minor exceptions, which typically require that the party seeking an equitable lien has no other means of relief. Here, Wells Fargo retains rights as a creditor of the Debtors' estates.

54. Morover, it is axiomatic that a party seeking equitable relief must do so with clean hands. Precision Instrument Mfg. Co. v. Auto. Maint. Mch. Co., 324 U.S. 806, 814 (U.S. 1945) ("The doctrine of unclean hands is an equitable doctrine standing for the proposition that he who

DB02:6709245.7                                                                                                                                               066585.1001

comes in into equity must come with clean hands."). Wells Fargo has a fiduciary obligation as Securities Administrator to ensure that the appropriate distribution payments are made to note holders. Wells Fargo is in a privileged position and has access to sensitive financial information. By seeking to withhold or place liens on future distribution payments owed to the Debtors under securitizations and notes other than the M4 Note, Wells Fargo abuses its role as Securities Administrator in order to improperly fix its own mistake. Indeed, Wells Fargo has violated the automatic stay on two occasions by improperly withholding distributions owed to the Debtors. Now, Wells Fargo seeks to elevate its status as an unsecured creditor through several flawed legal theories, and has inappropriately used confidential information to obtain support for its Motion. This Court should not approve of Wells Fargo's overreaching and inequitable conduct, which has resulted in a considerable waste of estate resources.

55. For the reasons set forth above, the Debtors respectfully request that the Court deny the Motion and the relief requested therein.

Dated:   Wilmington, Delaware
         April 8, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Sean Beach
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Sanjay Bhatnagar (No. 4829)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for the Debtors and Debtors in Possession

# EXHIBIT A

```
From: Dean.Koopman@wellsfargo.com [mailto:Dean.Koopman@wellsfargo.com]
Sent: Tuesday, November 06, 2007 6:34 PM
To: Michael Labuskes
Cc: Joshua.Kelly@wellsfargo.com
Subject: overpayment claim
```

Michael - Here is a current version of the overpayment claim letter. Attached are the relevant Distribution Report & the Wire Detail Report. Feel free to contact me with questions.

Dean

November 6, 2007

Reference: CO093030

AMERICAN HOME MORTGAGE INVESTMENT CORP

ATTN: MICHAEL LABUSKES

538 BROADHOLLOW ROAD

MELVILLE, NY   11747

RE: $192,804.81, CUSIP(s) 026933AE1

Dear Mr Labuskes:

On 3-26-07, $462,049.83 in principal was sent to you via wire for the above CUSIP. The payment was sent to you in error. Due to withheld payments, the current outstanding balance on this claim is $192,804.81. Please wire back $192,804.81 to:

Wells Fargo Bank, N.A.
ABA # 121000248

6th and Marquette
Acct. # 840237

N9303-121
Attn: CO093030 Dean Koopman

Minneapolis, MN 55479
CTO Wire Clearing Account

Below is an explanation of our request for return of the funds:

\*      The correct distribution for this CUSIP is $0.00

On 9-25-07, $81,222.22 was withheld from American Home Mortgage payments on various American Home Mortgage Securities.  On 10-25-07, an additional $188,022.80 was withheld, reducing the amount outstanding on the original claim to the current $192,804.81

In consideration of your honoring this claim, we agree to indemnify you, officers, and employees against any and all claims, liabilities, losses, expenses, suits, and damages resulting therefrom.  We represent and warrant that we are duly authorized to execute this indemnity.

Wells Fargo continually strives to provide the highest level of customer service available.  If you would like further assistance, please call me at (612) 667 8265.

Best Regards,

Dean Koopman

Customer Relationship Specialist

Wells Fargo Corporate Trust