# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE



| | |
|---|---|
| In re:<br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br>et. At., | ) Chapter 11<br>)<br>)<br>) Case No. 07-11047 (CSS)<br>) Jointly Administered |
| Debtors, | ) |
| LAURA BEALL,<br>Movant, | )<br>) |
| AMERICAN HOME MORTGAGE CORP.,<br>et., al., | ) **Objection Deadline: TBD**<br>) **Hearing Date: TBD** |
| Respondent. | ) |

## EMERGENCY MOTION

## OF LAURA BEALL FOR AN ORDER FOR RELIEF FROM THE

## <u>AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE</u>

Laura Beall ("Movant"), party in interest herein, hereby moves the Court for an emergency order terminating or annulling the automatic stay, imposed in this case by § 362(a) of Title 11, United States Code, to permit Movant to file a complaint against Debtors in The Eastern District of Virginia to be able to exercise her legal right of due process in order to save her home of 22 years, which has been jeopardized by the predatory loan origination and predatory servicing practices of American Home Mortgage. In support of this Motion to terminate stay, the Movant respectfully represents to the Court as follows:

1

# INTRODUCTION

1.    Movant is seeking relief from the automatic stay to permit her to file a complaint in the United States District Court for the Eastern District of Virginia, Richmond Division, against Debtor American Home Mortgage Corp, *et al.,* ("Debtor"). The complaint Movant seeks to file originates from Debtor's participation in the allegations of violations of Movant's rights under (1) the Consumer Protection Act, 15 U.S.C. §1601 et seq.; (2) the Truth in Lending Act-Regulation Z of the Federal Reserve Board, 12 C.F.R. Part 226; and (3) the Real Estate Settlements Procedures Act, 12 U.S.C. § 2601 et seq., RICO violations, unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, civil conspiracy, violation of Fair Debt Collection Practices Act ("FDCPA").

2.  Movant has been unable to initiate her action due to the automatic stay imposed and has exhausted every other means of a remedy other than legal action. The Movant's home will be at risk of foreclosure making this an urgent matter for cause.

3.    The complaint further includes, American Home Mortgage Securities LLC, a non-debtor affiliated entity, which upon information and belief executives of American Home Mortgage  may be investors in American Home Mortgage Investment Trust 2004-2 through American Home Securities LLC.

4.    The complaint further includes Wells Fargo as Indenture Trustee and/or Master Servicer for American Home Mortgage Investment Trust 2004-2 which has been confirmed by a Standard and Poor's Rating Specialist of Structured Finance Surveillance.  **SEE EXHIBIT A.**

5.    The complaint includes, American Home Bank. Movant's servicing records indicate that Movant's loan may have been used as collateral and pledged through American Home Bank's membership in Promontory Interfinancial Network CDARS and/or part of  a savings

account. Movant's servicing records state: "July 12, 2007 AHDLER X-sell-AH Bank CD cleared July 12, 2007". Later states "September 10, 2007, HPOPE X Sell – AH Bank Savings Acct". Clearly, the holder in due course at this point could be a number of parties yet unknown.  **SEE EXHIBIT B.**

6.   In a letter dated March 11, 2008, John Kalas, compliance attorney for American Home Mortgage provided information that American Home Mortgage Investment Trust 2004-2 is the owner of the loan.. The only problem with this letter from John Kalas, is if the loan has been securitized in AHMIT 2004-2, then it is unclear how it could have also been involved in a CD and savings account at American Home Bank.  **SEE EXHIBIT C.**

7.   Unless and until it is abundantly clear who "owns" Movant's loan, or who "owned" Movant's loan during all time periods of alleged violations in the complaint, all parties must be enjoined in the complaint.  The only method to get the clear and concise answers is through the process of discovery is in the context of a lawsuit, making this an urgent matter for cause. Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents.
15 U.S.C. § 1641(a).

8.   A RESPA "Qualified Written Request" was sent by Movant to both American Home Mortgage Servicing in Irving, Texas and American Home Mortgage in Mellville, New York on August 28, 2007, two copies to each location. It has yet to be fully complied with. Movant requested her complete loan file and it was only complied with when Ms. Beall was granted a hearing by this court on 10/31/07. Other issues raised in the request that American Home Mortgage is required to address, comply or to correct, have gone unacknowledged and ignored. No investigation was conducted. American Home Mortgage didn't provide a statement that an investigation was conducted.  This leaves Movant no other viable alternative but to file a lawsuit and request the court to compel them to comply.  **SEE EXHIBIT D.**

A LENDER'S SUBJECTIVE BELIEF THAT IT HAS RESPONDED FULLY TO QUALIFIED WRITTEN REQUESTS IS IMMATERIAL. *Holland v. GMAC Mortgage Corp.*, No. 03-2666-CM, 2006 U.S. Dist. LEXIS 25723 (D. Kan. 2006)

GMAC failed to respond to QWRs in violation of 12 U.S.C. § 2605(e) by failing to respond "completely" to a borrower's QWR and to "explain its investigation."

On the response to QWRs issue, the Court determined that, although GMACM had replied in writing to two of plaintiff's QWRs, its responses violated RESPA because GMACM **failed to explain that it had conducted an investigation into the plaintiff's inquiries and failed to address the bulk of the plaintiff's inquiries**. The Court determined that GMACM also had violated RESPA when it failed to respond to the letter it received from the plaintiff's attorney, which constituted a separate QWR (even though GMACM promptly corrected the plaintiff's account information). GMACM contended that there were no RESPA violations because it had subjectively believed that it responded fully to the plaintiff's correspondence. The Court rejected the relevancy of mortgage **companies' subjective beliefs regarding the RESPA rules for QWR compliance.**

(emphasis added)


9.   In violation of RESPA, and good faith and fair dealing, an employee of American Home's servicing unit Mr. Baxter asserted on two different occasions they had not received the Qualified Written Request, that he wouldn't discuss it, and that he would only discuss her mortgage payments, and she would be breaking the law if she didn't pay them. Employee Ms. Waters asserted that they didn't have to comply because they were in bankruptcy and she ignored two follow up faxed copies of the Request in November 2007. This relief is an urgent matter for cause, based on the alleged pattern of practice of American Home and American Home Mortgage Servicing to disregard and ignore the legal rights of the Movant, time and time again

10.   Movant stands to lose her home of 23 years put at risk by the alleged predatory

lending practices and predatory loan servicing of American Home Mortgage, which will cause Movant irreparable harm that far outweighs any harm it may cause to the Debtor. Debtor cannot produce the original note evidencing legal proof of lien on Movant's home. According to American Home Mortgage Servicing it has been either lost, misplaced, or destroyed, and is unavailable. Given the conflicting statements and documents, it's not clear, nor conclusive by any legal certainty who owns Movant's loan. **SEE EXHIBIT E.**

11.    As this Court is well aware, Movant has exhausted every other avenue for resolution, resolution.and it is abundantly clear, short of a lawsuit, complete with discovery, interrogatories, and subpoenas, Movant will never get any resolution, and due process she is entitled to. Denying relief from stay will significantly prejudice Movant..Debtor is a necessary and indispensable party to Movant's suit.

## THERE IS CAUSE FOR THE COURT TO GRANT RELIEF FROM THE STAY

12.    Section 362(d)(1) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 3269(d). There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. American Airlines, Inc.   v. Continental Airlines, Inc. (In re Continental Airlines), 152 B.R. 420, 424 (D.Del. 1993)

13.    Cause may be established by a single factor such as a desire to permit an action to proceed in another tribunal or the lack of any connection with or interference with the pending bankruptcy case. Izzarelli v. Rexene (In re Rexene), 141 B.R. 574, 576 (Bankr.D.Del.1992); American Airlines, Inc., 152 B.R. at 426, ("Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay.") (emphasis added)

14.    In determining whether to grant relief from stay, courts generally consider three

factors: (1) whether any great prejudice to either the bankrupt estate or the Debtor will result from continuation of the civil suit, (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the Debtor and (3) whether the creditor has a probability of prevailing on the merits. American Airlines, 152 B.R. at 424 Izzarelli, 141 B.R. at 576; Save Power Ltd. v. Pursuit Athletic Footwear, Inc., (In re Pursuit Athletic Footwear), 193 B.R. 713, 718 (Bankr.D.Del 1996).

15.    In the interest of justice and fairness, American Home Mortgage can't be protected from Fraud by the Bankruptcy court as stated clearly by the Supreme Court of the United States of America. Bankruptcy is for the honest but unfortunate Debtor. It would be inequitable to allow American Home Mortgage to use this Court to protect itself and it's CEO and other executives from allegations of fraud, potential misappropriation of assets, willful conversion, intentional infliction of emotional distress, punitive damages, and the equitable remedies of loan rescission.

16.    The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of affording relief only to an "honest but unfortunate debtor." Congress did not favor giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws.

Accordingly, Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt ..... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).
It is not only the actual value of the "money, property, services, or . . . credit" the debtor obtained through alleged fraud that is **non-dischargeable** in bankruptcy, but also treble "punitive" damages and attorneys fees and costs related to the alleged fraud. This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in Cohen v. de la Cruz.

Debts which can't be discharged in bankruptcy....

(8) Debts incurred due to false statements made with the intent to deceive  (9) Fraud committed in a fiduciary capacity, such as embezzlement or larceny (10) Punitive damage claims for "willful and malicious" acts

In re Arm, 87 F.3d 1046 (9th Cir. 1996)

§ 523(a)(2) Indirect benefit from fraud in which debtor participates is sufficient to find debt is nondischargeable.


In re Arm, 87 F.3d 1046 (9th Cir. 1996)

"We make clear, what we have not held before, that the indirect benefit to the debtor from a fraud in which he participates is sufficient to prevent the debtor from receiving the benefits that

bankruptcy law accords the honest person. *See In re Ashley*, 903 F.2d 599, 604, n. 4 (9th Cir. 1990)."


In re Arm, 175 B.R. 349 (9th Cir. B.A.P. 1994), *aff'd*, 87 F.3d 1046 (9th Cir. 1996)

Benefit to debtor need not be direct.


In re Begun, 136 B.R. 490, 494 (Bankr. S.D. Ohio 1992)

"False Pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression . . . . A false pretense has been defined to include a "mute charade" where the debtor's conduct is designed to convey an impression without oral representation. . . . .

A "false representation" on the other hand is an expressed misrepresentation.


In re Levy, 951 F.2d 196 (9th Cir. 1991), *cert. denied*, 504 U.S. 985 (1992)

Punitive damage award not exempted from discharge under § 523(a)(2).


In re Britton, 950 F.2d 602 (9th Cir. 1991)

Punitive damages not discharged under § 523(a)(6). Review of standard.

## LIFTING THE STAY WILL NOT PREJUDICE AMERICAN HOME
## OR THE BANKRUPT ESTATE

17.    American Home Mortgage Holdings, Inc., et. al., is a large corporation, which prior to the bankruptcy was conducting business on a nation-wide scale. Because Movant's Federal Court Action concerns Debtor's alleged tortuous and negligent conduct, the action is presumably covered by Debtor's liability insurance.

18.    The title insurer, First American may have to defend the action due to an attack on the lender's title to the property, due to the alleged fraud in loan origination, and possibly in the future if American Home Mortgage Servicing intends to go forward and attempts a foreclosure without producing the actual note proving ownership.   Title insurance covers the lender for clouds on a title, losses due to a borrower's claim of fraud, undue influence and duress against the lender for found violations and remedies due the borrower. And claims post foreclosure when a non-judicial and trustee foreclosure's required procedure was not followed; and an adverse claim of equitable lien. **SEE EXHIBIT F.**

19.    Other associated parties such as Wells Fargo, owners of AHMIT 2004-2, credit default swap partners, mortgage insurance policies, may also be required to cover any losses on loans securitized in AHMIT 2004-2, therefore the liability may be shared by numerous parties of interest.

20.    Thus in the event of a ruling in favor of Movant in the Federal Court Action, the insurers and other parties, and not the Debtor, will potentially be saddled with the burden and cost of defending the suit and any subsequent recovery. See, Collier on Bankruptcy, 15th Ed. Revised, § 362.07[3][a][i]

("When the court is reasonably confident that the policy proceeds will be sufficient to satisfy

8

all creditors with claims that may be paid under the policy, the court should grant relief from the stay to permit an action either against the Debtor, if necessary, or directly against the insurer because the policy proceeds will be available only to creditors with the type of claims covered by the policy, there is no depletion of assets...[m]oreover, the insurer will almost invariably be responsible for the cost of defense, so there should be no added expense for the estate.")

21.    It may be discovered that a substantial part of the recovery may potentially fall on an entirely different entity. Their may be other known and unknown parties including, but not limited to, American Home executives and other discrete holders of the AHMIT -2004 Trust.

## BACKGROUND FACTS

22.    On March 15, 2004, Ms. Beall met with a loan officer of Eagle Funding Group, LTD, agents/partners of "ABC" to refinance the first trust on her residence at 11002 Blue Roan Road, Oakton, VA 22124.  Property is physically located in Fairfax County Virginia.

23,    The refinancing was provided by American Home Mortgage Corp. ("American Home"), for a loan to Ms. Beall in the amount of $525,000, secured by a first deed of trust on her home

.

24.    Ms. Beall paid a 1% loan origination fee of $5250 for the services of Eagle Funding Group, LTD.("Eagle Funding")  to submit her loan application after they processed it to several lenders to find the best rate and terms offered at that time for the loan Ms. Beall applied for,  a 20 year fixed rate loan at 4.8%. **SEE EXHIBIT G.**

25.    On or about May 7, 2004, 52 days after Ms. Beall applied, she was told by Eagle Funding that her loan application had been turned down by every lender Eagle Funding had submitted it to including Countrywide. Eagle Funding further asserted that the only lender that would accept her application was American Brokers Conduit ("ABC") for a "traditional" prime

3/1 Adjustable Rate Mortgage ("ARM") if she paid a discount point of $5250 to buy down the par rate to 5.625%. According to Ms. Beall's loan file recently obtained Eagle Funding decided to place Ms. Beall into the 3/27 "ARM" the day she made loan application and intentionally waited 52 days to tell her that she didn't qualify for any another loan program in order to give the impression they had made the efforts to find her good loan terms that they charged her a loan origination fee of $5250 to do. It is alleged that they purposely presented the 3/27 "ARM" as being the traditional 3/1 "ARM", a prime loan program, in the Federal Truth-in-Lending provided on 5/07/04.. **SEE EXHIBIT H.**

26.    Upon information and belief, Eagle Funding was "signed up" as a broker, partner and/or agent of "ABC" as was required of all brokers doing business with American Home Mortgage. It is alleged that in that capacity Eagle Funding was viewing loan terms based on commission incentives (YSP's) that "ABC" used to entice them into placing Ms. Beall into the high profit predatory loan for American Home to the detriment of Ms. Beall. Eagle Funding was rewarded with a kickback (YSP) of $6250.50 and given the discount point of $5250 charged to Ms. Beall which was not used to buy down her rate. Eagle Funding increased the par to 5.625% for a larger kickback (YSP) and was additionally rewarded by "ABC" with the $5250 Ms.Beall paid for the buy down. This has cost Ms. Beall over $15,000 in 3 years. "ABC" processed all loan paper work and would have been well aware of the fees charged including discount point, loan origination fee and the YSP. Fees paid to Eagle Funding are evidenced in Addendum D of the loan instructions American Home sent to the closing agent Dennis Cavanagh of Eastern Atlantic.Title, Inc.

**SEE EXHIBIT I.**

"By their very nature, yield spread premiums are not compensation given for services actually performed by the broker." *Mentecki v. Saxon Mortgage, Inc., 1997 WL 45088 (E.D. Va*

**FDIC March 27, 2007 statement of comparison between the 3/27 hybrid loan the 3/1 "traditional" prime loan:** "2/28s and 3/27s are hybrid ARMs typically marketed to subprime borrowers. These ARMs are similar to ARMS that are prevalent in the prime market (known

as 3/1 ARMs), in that they have a fixed rate for 2/3 years and then adjust to a variable rate for the remaining 28/27 years. However, the spread between the initial fixed rate of interest and the fully-indexed interest rate in effect at loan origination typically ranges from **300 to 600 basis points** on 2/28 and 3/27s, versus **100-250 basis points** on prime 3/1 ARMs".( Emphasis added)

27.    Under the Virginia Consumer Protection Act § 6.1.-422, Prohibited Predatory Practices and TILA, it is a requirement to disclose within 3 days of loan application any and all fees relating to the cost of a loan, including a YSP, total points and to disclose the terms of the loan.. Eagle Funding provided the Federal Truth-in-Lending and Good Faith Estimate on 5/07/04, as evidenced by the faxed date on the top of the pages, 52 days after Ms. Beall made loan application, and backdated it to 3/15/04.  The Federal Truth-in-Lending document presented terms of a  interest only 3/1 "ARM" with no prepayment penalty, 5.8% APR. **SEE EXHIBIT J.**

According to the FDIC, predatory lending involves at least one of the three elements:
- making unaffordable loans based on the assets of the borrower rather than on the borrowers ability to repay;
- inducing a borrower to refinance a loan repeatedly in order to charge high points and fees each time the loan is refinanced (loan flipping); or
- engaging in fraud or deception to conceal the true nature of the loan obligation, or ancillary products (packing), from an unsuspecting or unsophisticated borrower.
(Housing Affairs Letter 2001e, 4).
Predatory Loan Commentary from FRB, FDIC, CRL, OTS, and OCC.
"The Federal Reserve, the FDIC and the Center for Responsible Lending have designated the 3/27 as a predatory loan. The Federal Reserve Bank (FRB), Office of Thrift Supervision (OTS), Office of the Comptroller the Currency (OCC) and the Federal Deposit Insurance Corporation (FDIC) issued guidelines on subprime loans, which give criteria to combat predatory lending.  According to the bank regulators, predatory loans "appear to have been designed to transfer wealth from the borrower to the lender/loan originator without a

commensurate exchange of value."

28.    It is alleged that Eagle Funding and "ABC" acted in collusion to defraud plaintiff, using steering, discrimination, and kickbacks in violation of RESPA and ECOA. Ms. Beall recently discovered that with her financial profile at that time she was considered a "prime borrower" by industry standards. And she qualified for a 5.25% rate on a traditional 5/1 "ARM" with zero points and no YSP with Countrywide. It has further been discovered, that Countrywide had agreed to approve Ms. Bealls loan with minor conditions that Ms. Beall could easily have met. This was never disclosed to Ms. Beall. This is evidenced on the lock in sheet, on the top right of the page where reference to Countrywide had been lined out. It is alleged that Countrywide offered lesser incentives to Eagle Funding for placing Ms. Beall into a prime loan program that she qualified for and that "ABC" used the kickbacks to induced Eagle Funding to commit fraud on Ms. Beall and assisted them thru the processing of the application and the loan transaction.. **SEE EXHIBIT K.**

29.    Even closing on 5/20/04 the loan terms were completely different from what had been disclosed on the 5/7/04 in the Federal Truth-In-Lending. Upon information and belief this "bait and switch" is a business model regularly employed by American Home Mortgage. It is alleged that Eagle Funding used "bait and switch." and material non-disclosure of terms, which saddled Ms. Beall with a predatory loan with onerous terms. **SEE EXHIBIT L.** Actual mortgage payments have increased from $2460.94 to $4184.00, interest rate from 5.625% to 9.625%, as of January 1, 2008 at the 2nd adjustment, month 42.

There are statutory "tolerances" for the APR and the amount financed and finance charge. Violations are deemed non-material if they fall within these tolerances. The APR tolerance is .125% for regular loans and .25% for irregular (variable-rate) loans. 12 C.F.R. 226.22(a).

30.    Ms. Beall has proof that another female borrower, with an almost an identical profile, self employed, credit score within the same underwriting criteria, did obtain a no-doc,

100% financed loan, on a "traditional" prime 5 year ARM at 5.25% with Countrywide with zero points charged. Ms. Beall's profile was stronger due to documenting income, and a 75% LTV. This borrower did not document income and had an 100% LTV. A former branch manager and underwriter for Countrywide and the borrower will testify to these facts at Ms. Beall's trial.

.    31.    American Brokers Conduit required Ms. Beall to escrow 8 months of real estate taxes totaling $3779 for the tax bill due 8 weeks after closing on 7/28/04. When the tax bill came due American Home Mortgage Servicing failed to make the required payment from Ms. Beall's escrow. This resulted in Ms. Beall being billed by Fairfax County on 5/07/05 for $3566.88, which included penalties and interest, which she had to pay in violation of   VCPA § **6.1-423**. **Escrow accounts.**   It has become evident from the numerous tax problems revealed through the bankruptcy proceeding that American Home Mortgage may have been using funds held in trust and failing to pay with funds collected from borrowers. Courts are split on whether this creates a private cause of action. Ms. Beall will assert this issue as private cause of action. **SEE EXHIBIT M.**   ..

**In re Gonzales, 22 B.R. 58 (9th Cir. B.A.P. 1982)Subcontractor used trust fund money to pay others. Held, "Not necessary to prove an intentional wrong by a debtor where it is shown that debtor committed a defalcation with respect to funds held in escrow.**

## BREACH OF CONTRACT

32.    Ms. Beall alleges American Home Mortgage Servicing has tortuously interfered, and willfully acted in disregard for Ms. Beall's numerous attempts to resolve her issues. American Home Mortgage Servicing has conducted itself in violation of mandated standards under Federal and State laws, and licensing standards, which has frustrated Ms. Beall's ability to perform under the contract. American Home Mortgage breached the contract or its duty of good faith and fair dealing, which is implied in every contract. *Hill v. Harris Bank*, 329 Ill. App.3d 705, 710 (1st Dist. 2002).

The parties to a contract have a duty to honor their obligations thereunder, and they also have an implied duty of good faith and fair dealing. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 315, 662 N.E.2d 602 (1st Dist. 1996).

33.    In the original contract, a lender and/or assignee or subsequent servicer as in this case, states clearly they will service the loan according to all Federal and State laws they are required to follow. They are further bound by licensing requirements, and a standard of good faith and fair dealing implied in every contract. American Home Mortgage and it's officers, owners, and directors have allegedly breached all Federal and State laws, licensing and ethical standards required of them. In the process, they have severely frustrated Ms. Beall's ability to perform under the contract. It is alleged that the entire contract was based in fraud, and therefore is not enforceable.

## BREACH OF FIDUCIARY DUTY

### Substantive requirements:

The specific elements here are: (1) a fiduciary duty was created; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 53, 205 Ill. Dec. 443, 643 N.E.2d 734 (1994).

34.    Ms. Beall went to Eagle Funding, a broker, who asserted he would "shop" for the best loan terms available for Plaintiff's credit profile and overall financial profile, among many lenders claiming they were working for her. However, the broker had signed up with American Home Mortgage through "ABC" and accepted a rate sheet of incentives for certain types of loans and terms favorable to the lender, unbeknownst to Ms. Beall.

35.    The broker established a position of trust to act in the best interest of the borrower, but in effect was only working as an agent of the lender. It is alleged American Home Mortgage created "ABC" for the sole purpose of converting agents to act in their best interest

and breach their duty to the borrowers. This action was particularly egregious because Eagle Funding also took a one point origination fee of $5250.00 and a one point discount fee of $5250.00 to lower the rate, and then took a $6562.50 YSP to raise the rate, then took $950.00 for processing fees totaling $18,012.50 targeting Ms. Beall based on her profile; a single woman, and steering her to a predatory loan, when in fact she was a prime borrower for excess profit.

.

In re Jercich, 238 F.3d 1202 (9th Cir. 2001), *cert. denied*, 533 U.S. 930 (2001) Although a simple breach of contract is not actionable under § 523(a)(6), "where an intentional breach of contract is accompanied by tortuous conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." Tortuous conduct does not have to be independent of the breach of contract. Here, debtor was found to have the "clear ability" to pay wages, but willfully "chose not to."
"We hold...that under *Geiger,* the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct."
In re Baldwin, 249 F.3d 912 (9th Cir. 2001)

36.    At the same time "Eagle Funding" nor "ABC" provided Ms. Beall with all the disclosures required within three days of making application as required for their 3/27 ARM program under the Virginia Consumer Protection Act § 6.1.-422, Prohibited Predatory Practices and TILA. It is alleged that his was purposeful in order to bait and switch Ms. Beall into this loan for his personal gain. Otherwise it would have been senseless to place a prime borrower into an unaffordable predatory loan, and potentially misrepresent the loan during the entire process. And allegedly misrepresented the loan as a good loan through an inaccurate Truth in Lending and not disclosing the Libor history of the previous five years. Misrepresented the Libor as an idex with a historically low interest rate. And thought he was being truthful with her about other lenders rejecting her loan application, At settlement he told her that she had no

other option for a loan since the other lenders had turned her down. And she is lucky that American Home Mortgage approved her for what she got. Ms. Beall had no reason or suspicion at that time that she was potentially given incorrect information. Finally the entire truth of this was not revealed until Ms. Beall received her loan file on or about October 24, 2007 after petitioning the bankruptcy court, therefore all statute of limitations was tolled due to fraudulent concealment.

37.    American Home Mortgage, et al., has demonstrated a:

(A) a clear and consistent pattern or practice of violations,

(B) gross negligence, or

(C) a willful violation which was intended to mislead the person to whom the credit was extended. Notwithstanding the preceding sentence, except where such disclosure error resulted from a willful violation which was intended to mislead the person to whom credit was extended.

(D) using information provided to the consumer and that have not misled or otherwise deceived the consumer.

38.    This breach of Fiduciary duty has harmed and will continue to harm Ms. Beall, and in fact, has put Ms. Beall's home of 23 years at risk, making it a continuing tort that American Home Mortgage has refused repeatedly to address and seeks only to foreclose and take Ms. Beall's property. Short of court intervention this issue can't be resolved, making relief from stay an urgent matter for cause

.

**Remedies Requested:**
Actual damages, equitable relief.

**Statute of limitations:**
5 years for affirmative claims.
Unlimited as a defense to foreclosure in the nature of a recoupment or setoff.

39.    The standard to qualify for a loan rescission remedy when a borrower is in

foreclosure, is a $35 mistake or overcharge on the HUD-1. Movant has the following overcharges:

**Title Insurance** overcharge - $381.13, as evidenced in   **SEE EXHIBIT N.**

**YSP** - $6,562.50 (to be included in finance charges if (a) not reasonable compensation for services rendered (b) $5250 discount point charged and rate not bought down.

.

Unlimited as a defense to foreclosure in the nature of a recoupment or setoff. 735 ILCS 5/13-207. *Bank of New York v. Heath*, 2001 WL 1771825, at *1 (Ill. Cir. Oct. 26, 2001) 15 U.S.C. § 1640(e).

Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. 12 C.F.R. 226.23(a)(3). Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule. 12 C.F.R. 226.23(a)(3) n.48.

There are statutory "tolerances" for the APR and the amount financed and finance charge. Violations are deemed non-material if they fall within these tolerances. The APR tolerance is .125% for regular loans and .25% for irregular (variable-rate) loans. 12 C.F.R. 226.22(a).

The finance charge tolerance for defendants in foreclosure actions is $35 (for rescission), 12 C.F.R. 226.23(h), and $100 (for monetary damages), "12 C.F.R. 226.18(d)(1).

Upon rescission, "the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge" (step one). 12 C.F.R. 226.23(d)(1). Within 20 days the creditor must take any action required to cancel the security interest and must return any money paid on the loan (step two). 12 C.F.R. 226.23(d)(2). If and when the creditor does so, the consumer must tender to the creditor the value of the money or property received (step three). 12 C.F.R. 226.23(d)(3). The tender amount is reduced by any amount paid on the loan (unless previously returned). *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Williams v. Gelt*, 237 B.R. 590, 598-99 (E.D. Pa. 1999). Courts can modify steps two and three of the above rescission process. 12 C.F.R. 226.23(d)(4).

Creditors are also liable for actual damages, statutory damages in the amount of twice the finance charge, up to $2,000, and attorney's fees and costs. 15 U.S.C. § 1640(a). Failure to respond to the rescission notice as spelled out above results in another violation and an addition award of statutory damages. *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Mayfield v. Vanguard Savings & Loan*, 710 F. Supp. 143, 145 (E.D. Pa. 1989).

Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents.
15 U.S.C. § 1641(a).

## THE HARDSHIP TO LAURA BEALL

## OUTWEIGHS ANY HARDSHIP TO DEBTOR

40.  Ms. Beall will be severely prejudiced if relief from stay is not granted.  American Home is a necessary and indispensable party in the Federal Court action, whose participation as a defendant is critical to Ms. Beall s presentation of her case. The harm to the Ms. Beall maintaining the stay considerably outweighs any prejudice to the Debtor or the estate.

41.  Ms. Beall's complaint is currently under preparation and upon completion needs to be filed immediately without delay due to Ms. Beall entering into default status. Ms. Beall may need to file for an injunction against foreclosure while the lawsuit is pending. In either event, Ms. Beall needs relief from the automatic stay to ensure she can exercise her rights to due process and protect her property and seek the relief and remedies she is entitled to.

## LAURA BEALL WILL PREVAIL ON THE MERIT

42.  The facts as fully set forth herein.demonstrate the seriousness of allegations and the substantial likelihood that she will prevail on the merits of her claim

43.  Based on the foregoing, Ms. Beall has demonstrated a sufficiently strong possibility of prevailing on the merits to justify granting relief from the automatic stay. ( See, American Airlines, Inc., 152 B.R. at 426, ( "Even a slight probability of success on the merits may be sufficient to support lifting the automatic stay.")

## **THERE IS CAUSE FOR THE COURT TO GRANT RELIEF FROM THE STAY**

44.    Section 362(d)(1) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 3269(d). There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. American Airlines, Inc. v. Continental Airlines, Inc. (In re. Continental Airlines). 152 B.R. 420, 424 (D.Del. 1993) Cause may be established by a single factor such as a desire to permit an action to proceed in another tribunal or the lack fo any connection with or interference with the pending bankruptcy case. Izzarelli v. Rexene ( In re Rexene), 141 B. R. 574, 576 ( Bankr. D. Del. 1992); American Airlines Inc., 152 B.R. at 426, ( "Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay.")( emphasis added

 In determining whether to grant relief from stay, court generally consider three factors: (1) whether any great prejudice to either the bankrupt estate or the Debtor will result from continuation of the civil suit, (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the Debtor and (3) whether the creditor has a probability of prevailing on the merits. American Airlines, 152 B.R. at 424; Izzarelli, 141 B.R.  at 576; Save Power Ltd. v. Pursuit Athletic Footwear, Inc., (In re Pursuit Athletic Footwear), 193 B.R. 713, 718 ( Bankr. D. Del. 1996).  In re Kemble, 776 F.2d 802 (9th Cir. 1985) Judicial economy alone justifies lifting stay to permit state ct lawsuit to proceed.

### **CONCLUSION**

45.    Ms. Beall is entitled to relief from the automatic stay for the reasons stated herein. Ms. Beall's right to petition for redress of her grievances would not be adequately protected if the stay is to remain in full force and effect, in that Debtor will not be made to answer for its alleged tortuous and negligent acts. Ms. Beall lives more then a three hour drive from Delaware

and would be substantially harmed by not being allowed to prosecute her claims in the State of Virginia.

**WHEREFORE**, Ms. Beall prays:
(1) For an Order granting Ms. Beall relief from the automatic stay provisions of section

362 of the Bankruptcy Code;

(2) For an Order permitting Ms. Beall to initiate the Federal Court Action to prosecute

her cause of action against American Home Mortgage Corp., *et. al.*; and

3) For such other and further relief as is to the Court just and proper.

**Dated; April 3, 2008**                    _____

> **Laura Beall pro se**
> **11102 Blue Roan Rd.**
> **Oakton VA 22124**
> **H) 703-691-9092**
> **O) 703-255-9700, ex. 234**
> **Fax) 703-352-9602**