IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------------------------ x | Chapter 11 |
| In re: | : |
| | : Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | : |
| a Delaware corporation, et al., [1] | : Jointly Administered |
| | : |
| Debtors. | : Objection Deadline: May 1, 2008 at 4:00 p.m. |
| ------------------------------------------------------------------ x | Hearing Date: N/A |

## NOTICE OF APPLICATION

TO:     The Debtors, the United States Trustee, Counsel to the Debtors, and Counsel for the
Official Committee of Unsecured Creditors

The **First Application of Phoenix Capital, Inc., as Investment Banker for the
Debtors and Debtors-in-Possession for Allowance of Compensation and Reimbursement of
Expenses Incurred for the Interim Period August 6, 2007 through December 31, 2007** (the
"Application") has been filed with the Bankruptcy Court. The Application seeks allowance of
interim fees in the amount of $400,000.00 and interim expenses in the amount of $13,875.79.

Objections to the Application, if any, are required to be filed on or before **May 1,
2008 at 4:00 p.m. (ET)** (the "Objection Deadline") with the Clerk of the United States
Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington,
Delaware 19801.

At the same time, you must also serve a copy of the response so as to be received
by the following on or before the Objection Deadline: (i) American Home Mortgage Holdings,
Inc., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Alan Horn, General Counsel);
(ii) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391,
Wilmington, Delaware 19899-0391 (Attn.: Margaret B. Whiteman), counsel to the Debtors; (iii)
Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attn: Mark Indelicato) and
Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801, (Attn: Bonnie Fatell),

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp.
("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558);
American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

counsel to the Committee, and (v) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn.: Joseph McMahon); (viii).

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Application will be held at a date and time to be determined before the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE THAT PURSUANT TO THE ADMINISTRATIVE ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS [DOCKET NO. 547], IF NO OBJECTIONS ARE FILED AND SERVED IN ACCORDANCE WITH THE ABOVE PROCEDURE, THE DEBTORS WILL BE AUTHORIZED TO PAY 80% OF REQUESTED INTERIM FEES AND 100% OF REQUESTED INTERIM EXPENSES WITHOUT FURTHER ORDER OF THE COURT.

Dated: Wilmington, Delaware
      April 11, 2008

                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                    /s/ Ryan M. Bartley
                    James L. Patton, Jr. (No. 2202)
                    Pauline K. Morgan (No. 3650)
                    Sean M. Beach (No. 4070)
                    Matthew B. Lunn (No. 4119)
                    Margaret B. Whiteman (No. 4652)
                    Ryan M. Bartley (No. 4985)
                    The Brandywine Building
                    1000 West Street, 17th Floor
                    Wilmington, Delaware 19801
                    Telephone: (302) 571-6600
                    Facsimile: (302) 571-1253

                    Counsel for Debtors and
                    Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------

In re:

AMERICAN HOME MORTGAGE
HOLDINGS, INC., a Delaware corporation, et al.,[1]

                        Debtors.

-------------------------------------------------------------  x

Chapter 11

: Case No. 07-11047 (CSS)
:
: Jointly Administered
:
:
:

## FIRST APPLICATION OF PHOENIX CAPITAL, INC. AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION FOR PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD AUGUST 6, 2007 THROUGH DECEMBER 31, 2007

Phoenix Capital, Inc. ("Phoenix"), investment banker for the above captioned

debtors and debtors-in-possession (collectively, the "Debtors") make this application (the

"Application") for payment of the Core Asset Sale Fee (as defined herein) and reimbursement of

expenses incurred for the period of August 6, 2007 through December 31, 2007.  In support of

the Application, Phoenix respectfully submits:

*1.*        This application is made pursuant to (i) sections 327(a), 328(a), and 105(a)

of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); (ii) Rule 2014 of

the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"); (iii) this Court's

*Administrative Order Establishing Procedures For Interim Compensation And Reimbursement*

---

[1]        The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

*Of Expenses Of Professionals Pursuant To Sections 331 And 105(a) Of The Bankruptcy Code* [D.I. 547] (the "Fee Order"); and (iv) this Court's *Order Pursuant To Sections 327 And 328 Of The Bankruptcy Code And Bankruptcy Rule 2014 Approving The Retention Of Phoenix Capital, Inc. As Investment Bankers For The Debtors Nunc Pro Tunc To The Petition Date* [D.I. 1040] (the "Retention Order").

        2.      Pursuant to the Retention Order, the Debtors were authorized to retain and employ Phoenix pursuant to the terms of the letter agreement, dated August 23, 2007 (the "Engagement Letter")[2] between the Debtors and Phoenix, subject to certain modifications. Under the Engagement Letter, Phoenix is entitled to, among other things, payment of a Core Asset Sale Fee (as defined in the Engagement Letter) upon successful completion of a Core Asset Sale[3] and reimbursement for the actual and necessary expenses incurred by Phoenix in performing its services under the Engagement Letter.

        3.      By this Application, and pursuant to the Fee Order, Phoenix seeks compensation of the Core Asset Sale Fee allowed under the Engagement Letter for the services provided to the Debtors during the period August 6, 2007 through December 31, 2007 (the "Relevant Period") related to the sale of the Debtors' Servicing Platform and Mortgage Servicing Rights. The Engagement Letter states:

> Phoenix acknowledges that the most successful sale of the Servicing Platform and Mortgage Servicing Rights will be accomplished through a joint effort of Phoenix and Milestone to effectuate the sale of the Servicing Platform and Mortgage Servicing Rights. In the event of a Core Asset Sale of the Company's Mortgage Servicing Rights (whether alone or combined with the sale of the Company's Servicing Platform), the Company shall pay Phoenix and Milestone an aggregate success fee equal to: (i) $1,000,000 plus, (a) $1,000,000, pro rated for any proceeds

---

[2]    Capitalized terms used, but not defined herein, shall have the meaning set forth in the Engagement Letter.

[3]    The Engagement Letter defines a Core Asset Sale as the sale of one or more of the Company's following assets or divisions: (i) Mortgage Servicing Rights, and (ii) Servicing Platform.

> received by the Company in excess of $446 million and up to $460 million, plus (b) 6.25% of any proceeds received by the Company in excess of $460 million.  In the event of a Core Asset Sale of the Company's Servicing Platform in a transaction that is separate and distinct from the sale of the Company's Mortgage Servicing Rights, the Company shall pay Phoenix and Milestone an aggregate success fee equal to:  (i) $500,000, plus (ii) 5.0% of any proceeds received by the Company in excess of $10 million.  Phoenix and Milestone have agreed to split any fees payable by the Company for a sale of the Servicing Platform and/or a sale of the Mortgage Servicing Rights, 40% to Phoenix and 60% to Milestone.  The Company shall enter into a separate agreement with Milestone reflecting such terms.

Engagement Letter, ¶ 2(a)(i).  Phoenix also seeks reimbursement of its reasonable out-of-pocket expenses incurred in performing its services under the Engagement Letter during the Relevant Period.

4.    By order dated October 30, 2007, (the "Sale Order") [Docket No. 1711], this Court approved the sale of the Debtors mortgage servicing business (the "AHMS Sale") to AH Mortgage Acquisition Co., Inc. ("AH Mortgage Acquisition").  Additionally, this Court has approved several separate sales of the Debtors' mortgage servicing rights to certain other parties (the "Servicing Rights Sales" and with the AHMS Sale, the "Servicing Sale").  The Servicing Sale represents a Core Asset Sale under the Engagement Letter, and, accordingly, Phoenix is entitled to its Core Asset Sale Fee.  Phoenix hereby requests that this Court authorize the payment of an aggregate success fee for the Servicing Sale in the amount of $400,000, pursuant to the terms of the Engagement Letter, and reimbursement of Phoenix's actual, reasonable and necessary expenses incurred and recorded in connection with the rendition of services during such Period in the amount of $13,875.79.  Phoenix reserves its right to seek additional compensation related to the Servicing Sale due to the question of the inclusion of the advances in the calculation of the total purchase price.  The total compensation and expense reimbursement sought in this Application is $413,875.79.  All services for which compensation is requested by

3

Phoenix were performed for or on behalf of the Debtors. Phoenix respectfully submits that the

requested compensation is appropriate and should be approved. Phoenix further submits that the

services it has rendered to the Debtors have been necessary and in the best interests of the

Debtors and have furthered the goals of all parties in interest.

### THE PHOENIX RETENTION

5.      In August of 2007, the Debtors decided to retain Phoenix as its investment

banker to work in conjunction with Milestone Advisors, LLC ("Milestone")[4] for the sale of the

Debtors' mortgage servicing rights (the "Mortgaging Servicing Rights") and servicing platform

(the "Service Platform"). The Debtors selected Phoenix based on Phoenix's extensive

experience in providing investment banking solutions to businesses in the mortgage banking and

mortgage servicing industries and based on Phoenix's general familiarity with the Debtors'

business. Phoenix has participated in the sale and transfer of hundreds of servicing portfolios

totaling nearly a trillion dollars over the past 11 years, has been retained to conduct buyer

representation analysis on a wide variety of servicing transactions, and evaluates over $20 trillion

in mortgage servicing assets annually.

6.      As more fully described in the Engagement Letter, Phoenix was retained

to provide the Debtors with the following services:

> a. Provide financial advice and assistance to the Debtors in
> connection with a Core Asset Sale, identify potential acquirors
> and, at the Debtors' request, contact such potential acquirors;
>
> b. Determine a range of values for the Core Assets on a liquidation
> basis;

---

[4]      The Debtors were authorized to retain Milestone as investment banker and financial advisor in these cases.
*See* [Docket No. 1592]  Milestone is providing other services to the Debtors in addition to its involvement with the
Servicing Sale

    c.   Assist the Debtors in preparing a memorandum to be used in soliciting potential acquirors of their assets;

    d.   Assist the Debtors and/or participate in negotiations with potential acquirors of the Core Assets;

    e.   Advise and attend meetings of the Debtors' Board of Directors and its committees and, if appropriate, its creditors; Participate in any hearings before any court with respect to the matters upon which Phoenix has provided advice, including, as relevant, coordinating with the Debtors' counsel as to necessary testimony relating thereto; and

    f.   If requested, render an opinion as to the fairness of the consideration to be received in connection with a Core Asset Sale.

7.      On October 1, 2007, the Court entered the Retention Order which, *inter alia*, approved the payment of the Core Asset Sale Fee. The Retention Order further provided that all such fees and expenses payable to Phoenix would be subject to approval by the Court in accordance with the standard set forth in section 328(a) of the Bankruptcy Code and upon proper application by Phoenix in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court; provided, however, that the United States Trustee retained the right to object to the Core Asset Fee based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.

8.      Phoenix provides the services of senior level professionals with extensive experience in the area of mortgage banking, with specific focus on the valuation of mortgage loan servicing rights, and the sale of mortgage loan servicing rights in the secondary market. The mortgage banking services set forth herein were performed primarily by Brett Schaffer, President, Michael Lau, Executive Vice President, Tim Horacek, Chief Operating Officer and Dean Demeritte, Executive Vice President of Phoenix Analytics, Inc. Phoenix's general staffing policy is to assign senior level professionals to the engagement, and then assign various tasks and

duties to other officers and analysts, as needed.  The parties directly responsible for the

engagement and their duties are:

- Brett Schaffer had primary responsibility for overseeing and coordinating Phoenix's engagement and is responsible for developing strategy with respect to the Servicing Sales, overseeing negotiations, as well as directly conducting negotiations with prospective purchasers and managing the other senior professionals involved in the case.

- Michael Lau had primary responsibility for developing and implementing the marketing plan, conducting negotiations with prospective purchasers, and supervising and performing on-site due diligence for the Servicing Sales.  Mr. Lau also had extensive interaction with legal counsel retained by the various parties involved in the Servicing Sales.

- Tim Horacek had primary responsibility for all IT data scrubbing to assure information provided to prospective bidders, and information that was posted on the IntraLinks data site was accurate and up-to-date, which required ongoing interaction with the servicer.

- Dean Demeritte had primary responsibility for the valuation of the mortgage loan servicing rights and other analytical matters that arose in connection with the Servicing Sales.

These senior professionals and the other Phoenix employees working with them worked as a

team to coordinate their actions so as to not duplicate efforts.  However, from time to time more

than one professional, officer or analyst of Phoenix or other of the Debtors' professionals were

required to be present at meeting due to their different roles but overlapping responsibilities.

9.      The amount of fees and expenses sought in this application and Phoenix's

billing processes are consistent with market practices for advisors that focus on the mortgage

servicing rights asset.  Phoenix does not bill its clients based on the number of hours expended

by its professionals.  Instead, Phoenix bills clients either on a flat fee or on a retainer basis plus

transaction fees.  Accordingly, Phoenix does not have hourly rates for its professionals and

Phoenix's professionals generally do not maintain time records for the work performed for its

clients.  Instead, Phoenix's policy, for all engagements in or out of bankruptcy, is to dedicate the

6

appropriate number of professionals to the assignment to complete the work as efficiently as possible. However, Phoenix was advised on September 15, 2007 that it needed to maintain records of the time expended by its professionals for its professional services provided to the Debtors for the duration of these chapter 11 cases pursuant to the Retention Order.

10.     Given the size and complexity of this case, the complicated corporate and financial structure of the Debtors, the degree of activity during the Relevant Period and the high level of services rendered by Phoenix to the Debtors,  Phoenix believes that the compensation sought is fair and reasonable.

## SUMMARY OF SERVICES RENDERED

11.     All services rendered by Phoenix during the Relevant Period were performed at the request or direction of the Debtors or their professionals and in conjunction with Milestone. Pursuant to Section 1 (a) of the Engagement Letter, Phoenix's services were specific to consummating one or more Core Asset Sales. During the Relevant Period, Phoenix worked in conjunction with Milestone to successfully complete the Servicing Sales. Phoenix has included a detail of the amount of time expended by each of its professionals which is attached hereto as Exhibit A. In summary, the services performed during the Relevant Period on behalf of the Defendants are described below:

A.     Development of Confidential Offering Memorandum, Data Room and Data Integrity.

12.     Phoenix and Milestone developed a Confidential Offering Memorandum ("COM") based upon information received from the Debtors that represented the attributes of the mortgage loan servicing rights and mortgage servicing platform. The COM included detailed information about the characteristics of the mortgage servicing rights and also provided information on the mortgage servicing platform, which included, but was not limited to, detailed

7

information regarding the Debtors' loan servicing policies, procedures, practices, organizational structure, and internal and external audit reports.

13.     In addition to preparing the COM, Phoenix worked with Milestone and the Debtors in securing information that would be required by prospective purchasers.  Phoenix and Milestone also established the IntraLinks data site ("IntraLinks") and updated the information provided through IntraLinks, as well as maintained and coordinated security access for authorized users.  Numerous potential purchasers were granted access to IntraLinks.  In addition to providing information to IntraLinks users, Phoenix and Milestone hosted conference calls with the Debtors and potential purchasers to review, explain and discuss all questions related to that data.

14.     Phoenix's IT resources were involved in  numerous phone calls in order to arrange receipt of databases, and resolve questions regarding the data.  Due to the marketing time involved, Phoenix was required to work with four different month-end data bases which were used by prospective bidders in analyzing the portfolio.  IT functions that were performed included programming a tape drop program to read the database format, scrubbing of the data base for inaccuracies, addition of data fields, decoding material, running stratification programs and producing stratification reports, running a multitude of ad hoc reports as needed, administration of FTP site to send and receive data, reconciliation of data to Debtors reports, creating multiple pricing model files, and producing settlement reports.

B.     Establishment of Market Value

15.     An integral part of the sale process was the valuation of the Debtors' servicing assets.  Phoenix Analytics, Inc. ("PAS") analyzed the economic and current market value of the Mortgage Servicing Rights which included sensitivity scenarios and asset

8

performance research.  This work required that PAS segment the portfolio by investor and loan type, which allowed it to then run pricing scenarios which incorporated not only market-drive assumption sets, but also economic parameters.  Since servicing values change with movements in interest rates, the portfolios were valued frequently to reflect the servicing value at different dates.  This process also included numerous sensitivity, and shock analysis to various components such as the discount rate, ancillary income and cost to service assumptions.

Moreover, as the sales process spanned over several months, PAS was required to execute the majority of their analysis by using numerous month-end data bases.  During the Relevant Period, Phoenix and Milestone participated in meetings with the Debtors, the Committee and the agent for the Debtors' prepetition secured lenders (the "Agent") to discuss and provide any detail related changes with respect to the economic and current market value of the Mortgage Servicing Rights and the Servicing Platform.

     C.     Portfolio Assessment

     16.     Beginning in August 2007, Phoenix in conjunction with Milestone and the Debtors' other professionals held numerous meetings and conference calls in order to identify the factual characteristics of the Mortgage Servicing Rights asset, assess the value of the Mortgage Servicing Rights and the Servicing Platform, and develop a marketing plan.  Phoenix and Milestone, along with the Debtors' management and other professionals, began preparations for the sale of the Mortgage Servicing Rights and the Servicing Platform.  Phoenix had numerous conversations with prospective purchasers, and those who expressed an interest in purchasing the Debtors' assets were provided various materials, such as the COM, the auction procedures and bidding instructions, and a proposed confidentiality agreement (each a "Confidentiality Agreement").  Phoenix and Milestone proceeded to negotiate with certain prospective purchasers

     

any changes to the Confidentiality Agreement and, in the process, would be required to consult

with the Debtors and their legal counsel. Once a Confidentiality Agreement was approved and

signed, prospective purchasers were allowed access to IntraLinks. As an ongoing part of the bid

solicitation process, Phoenix maintained dialogue with those parties who expressed an interest

regarding the sale process and the purchase of the Debtors' assets. Phoenix in conjunction with

Milestone provided periodic updates to the Debtors, the Committee, the Agent and their

professionals.

      D.     Prospective Purchasers and Due Diligence

      17.     Phoenix and Milestone jointly identified a list of potential buyers for the

Mortgage Servicing Rights and the Servicing Platform. In addition, Phoenix maintained records

of all interested purchasers including all parties that entered into Confidentiality Agreements,

received the COM, or were granted access to IntraLinks.

      18.     Phoenix and Milestone coordinated meetings with several prospective

purchasers and engaged in and monitored comprehensive due diligence with various parties who

eventually submitted bids on the Debtors' assets. Furthermore, Phoenix placed several

employees on-site at AHM who engaged in, assisted and managed a comprehensive due

diligence review which included the relevant financial and account data and collateral documents

associated with the Mortgage Servicing Rights with two of the eventual bidders. This due

diligence process included, but was not limited to: coordinating and participating in conference

calls between potential purchasers and management of the Debtors; responding to requests for

additional information; and gathering and providing the requested documentation to the potential

purchasers.

      E.     The Bidding and Sale Process

10

19.     Phoenix and Milestone assisted the Debtors and their other professionals in developing Bidding Procedures favorable to the Debtors and their estates. Phoenix in conjunction with Milestone participated in various calls with Debtors, the Committee, the Agent and their representatives throughout the development, revision, and finalization of the Bidding Procedures. During this process, Phoenix and Milestone participated in a number of standing liquidity calls as requested. In addition, Phoenix in conjunction with Milestone developed a detailed process timeline that established critical performance dates that were required to be met in order to achieve a successful sale and transfer of assets to the final buyers in the Servicing Sales.

20.     Phoenix and Milestone developed a Bid Analysis Worksheet that summarized the prospective bid levels, sales costs, and expenses which was relied upon by the Debtors, the Committee, the Agent and their respective advisors and legal counsel to determine which bids to accept. Phoenix also provided the Debtors with a financial projection of the estimated sales expenses it would incur in the sale of the Mortgage Servicing Rights and Servicing Platform based upon customary fees that a seller incurs in the sale of mortgage servicing rights in the secondary market.

21.     Phoenix was also active in soliciting bids for the Debtors' Mortgage Servicing Rights and the Mortgage Servicing Platform. While AH Mortgage Acquisition, the stalking horse bidder in the AHMS Sale, ultimately acquired the Servicing Platform and a substantial amount of the Mortgage Servicing Rights, Phoenix was successful in securing a number of bids for the assets purchased by AH Mortgage Acquisition and the Debtors' other assets. Phoenix also received several bids for the Freddie Mac loan portfolio and obtained two

11

bids for the Ginnie Mae portfolio, including the ultimate purchaser of those Mortgage Servicing Rights.

F.    Negotiations of the Purchase and Sale Agreement, Transfer
      Instructions, and Various Exhibits.

        22.    Phoenix and Milestone were active in and facilitated the negotiations between the Debtors, the Committee, the Agent and the potential purchasers and their respective counsel with regard to the sale of the Mortgage Servicing Rights in various capacities on all of the transactions that closed.  For the sale of the Ginnie Mae portfolio, Phoenix was the lead negotiator and led the business team that completed the Purchase and Sale Agreement, the Transfer Instructions, and the various exhibits needed to consummate the sale and transfer of servicing.  The sale of the Ginnie Mae portfolio was a complicated multi-phased transaction which required the extensive attention of Phoenix's professionals.  In closing that sale, Phoenix prepared the settlement statements and coordinated the multi-stage disbursement of the purchase to the Debtors and the Agent.  Additionally, the transfer of the Ginnie Mae portfolio required Phoenix's active monitoring of the post-sale process to ensure that the post-sale deliverables were provided as required by the Purchase and Sale Agreement and whose delivery was a condition to payment of certain portions of the purchase price.

        23.    In sum, Phoenix, in conjunction with Milestone, was involved in successfully consummating a Core Asset Sale (as defined in the Engagement Letter) which included the sale of certain Mortgage Servicing Rights and the Servicing Platform to AH Mortgage Acquisition and additional sale of Mortgage Servicing Rights to Lehman Brothers, Barclays PLC, MidFirst Bank and the Bear Stearns Companies / EMC.

### SUMMARY OF EXPENSES INCURRED

12

24.     Herewith, Phoenix submits its request for reimbursement for the out-of-pocket expenses advanced during the Relevant Period related to its performance ot the services performed under the Engagement Letter.  The total amount of expense reimbursement requested is $13,875.79.  Detailed descriptions of the expenses are set forth on Exhibit B.

## CONCLUSION

25.     The services summarized by this application and rendered by Phoenix to the Debtors during the Relevant Period were substantial, highly professional and instrumental to the Debtors' performance in these cases.  They were reasonable and necessary to the Debtors' successful consummation of the sale of its Servicing Business and certain other mortgage servicing rights.

26.     As noted above, in accordance with the Retention Order and the Fee Order, Phoenix seeks payment of the Core Asset Sale Fee in the amount of $400,000.00.

066585.1001

WHEREFORE, Phoenix respectfully requests (a) allowance of compensation accrued and owing under the Engagement Letter during the Relevant Period in the amount of $400,000.00 and reimbursement of its necessary out of pocket expenses during the Relevant Period in the amount of $13,875.99.

Dated: Denver, Colorado
April 10, 2008

PHOENIX CAPITAL, INC.

Michael P. Lau
Executive Vice President

14

## EXHIBIT A

**Summary of Hours Worked**

American Home Mortgage

Phoenix Capital, Inc

Summary of Hours Worked by Professional
For the Period August 6, 2007 through August 31, 2007

| Professional | Position | Hours |
|---|---|---|
| Brett Schaffer | President | 77.5 |
| Tim Horacek | Chief Operating Officer | 130 |
| Michael Lau | Executive Vice President | 48 |
| Dean DeMeritte | Executive Vice President | 85 |
| Luana Slettedahl | Senior Vice President | 20 |
| Robin Bowes | Vice President | 0 |
| Jeff Boyd | Vice President | 150 |
| Brian Larson | Analyst | 120 |
| Emily Hubbel | Analyst | 74 |
| Heather Blair | Sales | 0 |
| Lindsay Wiles | IT/HR | 12 |
| **Total** | | **716.5** |

Summary of Hours Worked by Professional
For the Period September 1, 2007 through September 30, 2007

| Professional | Position | Hours |
|---|---|---|
| Brett Schaffer | President | 81 |
| Tim Horacek | Chief Operating Officer | 69 |
| Michael Lau | Executive Vice President | 92 |
| Dean DeMeritte | Executive Vice President | 27.5 |
| Luana Slettedahl | Senior Vice President | 54.5 |
| Robin Bowes | Vice President | 54 |
| Jeff Boyd | Vice President | 92 |
| Brian Larson | Analyst | 81 |
| Emily Hubbel | Analyst | 61.5 |
| Heather Blair | Sales | 0.5 |
| Lindsay Wiles | IT/HR | 0 |
| **Total** | | **613** |

## Summary of Hours Worked by Professional
### For the Period October 1, 2007 through October 31, 2007

| Professional | Position | Hours |
|---|---|---|
| Brett Schaffer | President | 12 |
| Tim Horacek | Chief Operating Officer | 13.5 |
| Michael Lau | Executive Vice President | 58 |
| Dean DeMeritte | Executive Vice President | 2.5 |
| Luana Slettedahl | Senior Vice President | 47 |
| Robin Bowes | Vice President | 76 |
| Jeff Boyd | Vice President | 0 |
| Brian Larson | Analyst | 0 |
| Emily Hubbel | Analyst | 12 |
| Heather Blair | Sales | 0 |
| Lindsay Wiles | IT/HR | 0 |
| **Total** | | **221** |

## Summary of Hours Worked by Professional
### For the Period November 1, 2007 through November 30, 2007

| Professional | Position | Hours |
|---|---|---|
| Brett Schaffer | President | 0 |
| Tim Horacek | Chief Operating Officer | 0 |
| Michael Lau | Executive Vice President | 9 |
| Dean DeMeritte | Executive Vice President | 0 |
| Luana Slettedahl | Senior Vice President | 0 |
| Robin Bowes | Vice President | 42.5 |
| Jeff Boyd | Vice President | 0 |
| Brian Larson | Analyst | 0 |
| Emily Hubbel | Analyst | 21.5 |
| Heather Blair | Sales | 0 |
| Lindsay Wiles | IT/HR | 0 |
| **Total** | | **73** |

Summary of Hours Worked by Professional
For the Period December 1, 2007 through December 31, 2007

| Professional | Position | Hours |
|---|---|---|
| Brett Schaffer | President | 0 |
| Tim Horacek | Chief Operating Officer | 0 |
| Michael Lau | Executive Vice President | 2 |
| Dean DeMeritte | Executive Vice President | 0 |
| Luana Slettedahl | Senior Vice President | 0 |
| Robin Bowes | Vice President | 10 |
| Jeff Boyd | Vice President | 0 |
| Brian Larson | Analyst | 0 |
| Emily Hubbel | Analyst | 5 |
| Heather Blair | Sales | 0 |
| Lindsay Wiles | IT/HR | 0 |
| **Total** | | 17 |

American Home Mortgage

Phoenix Capital, Inc

Summary of Product Code and Description of Activity
For the Period August 6, 2007 through December 31, 2007

| Project Code | Description of Activity |
|---|---|
| 1 | Modeling |
| 2 | Due Diligence Preparation |
| 3 | Due Diligence Management |
| 4 | Phoenix Engagement Letter |
| 5 | Contract Negotions |
| 6 | Deal Negotions |
| 7 | Advisory Conference Calls |
| 8 | Specific Data Requests |
| 9 | Bidder Dialogue |
| 10 | Phoenix Application |
| 11 | Offering Memorandum |
| 12 | Private Investor Legal Review |
| 13 | Confidentiality Agreements |
| 14 | Travel |
| 15 | Team Meetings |
| 16 | Misc. Problem Solving |
| 17 | Administrative Support |
| 18 | Contact List Preperation |
| 19 | Servicing/Legal Agreements |
| 21 | Information Updates |
| 22 | Phone Calls |
| 23 | Database Stratification |
| 24 | Database Reconcilliation |
| 25 | Database Ad Hoc Reporting |
| 26 | Database and File Transfers/Administration |
| 27 | Bid Letter/ P&S Review |
| 28 | Sale Settlement Analysis |

EXHIBIT A

<u>American Home Mortgage</u>

<u>Phoenix Capital, Inc</u>

Detail of Services Rendered by Project Code
For the Period August 6, 2007 through August 31, 2007

| Professional | Date | Project Code | Hours |
|---|---|---|---|
| Jeff Boyd | 8/5/07 - 8/11/07 | (1,7,8,15,16) | 20 |
| Dean DeMeritte | 8/5/07 - 8/11/07 | (1,7,8,9,22) | 25 |
| Tim Horacek | 8/5/07 - 8/11/07 | (22;23;24;25;26) | 40 |
| Emily Hubbel | 8/5/07 - 8/11/07 | (13;15;18;21) | 22 |
| Brian Larson | 8/5/07 - 8/11/07 | (8,11,13,15,22,23) | 30 |
| Michael Lau | 8/5/07 - 8/11/07 | (2;3;11;14;22) | 23 |
| Brett Schaffer | 8/5/07 - 8/11/07 | (2,11,14,22) | 20 |
| | | | |
| Jeff Boyd | 8/12/07 - 8/18/07 | (1,7,8,15,16) | 50 |
| Dean DeMeritte | 8/12/07 - 8/18/07 | (1,7,8,9,22) | 25 |
| Tim Horacek | 8/12/07 - 8/18/07 | (22;23;24;25;26) | 30 |
| Emily Hubbel | 8/12/07 - 8/18/07 | (13;15;18;21) | 20 |
| Brian Larson | 8/12/07 - 8/18/07 | (8,11,13,15,22,23) | 40 |
| Michael Lau | 8/12/07 - 8/18/07 | (2;3;11;14;15;22) | 15 |
| Lindsay Wiles | 8/12/07 - 8/18/07 | (8;17) | 12 |
| Brett Schaffer | 8/12/07 - 8/18/07 | (1,4,15,22) | 25 |
| | | | |
| Jeff Boyd | 8/19/07 - 8/25/07 | (1,7,8,15,16) | 40 |
| Dean DeMeritte | 8/19/07 - 8/25/07 | (1,7,8,9,22) | 20 |
| Tim Horacek | 8/19/07 - 8/25/07 | (22;23;24;25;26) | 30 |
| Emily Hubbel | 8/19/07 - 8/25/07 | (13;15;18;21) | 18 |
| Brian Larson | 8/19/07 - 8/25/07 | (8,11,13,15,22,23) | 30 |
| Michael Lau | 8/19/07 - 8/25/07 | (2;3;14;22) | 9 |
| Brett Schaffer | 8/19/07 - 8/25/07 | (1,10,13,15,22) | 21.5 |
| | | | |
| Jeff Boyd | 8/26/07 - 8/31/07 | (1,7,8,15,16) | 40 |
| Dean DeMeritte | 8/26/07 - 8/31/07 | (1,7,8,9,22) | 15 |
| Tim Horacek | 8/26/07 - 8/31/07 | (22;23;24;25;26) | 30 |
| Emily Hubbel | 8/26/07 - 8/31/07 | (13;15;18;21) | 14 |
| Brian Larson | 8/26/07 - 8/31/07 | (2,3,8,13,15,19,22) | 20 |
| Michael Lau | 8/26/07 - 8/31/07 | (22;) | 1 |
| Luana Slettedahl | 8/26/07 - 8/31/07 | (19;) | 20 |
| Brett Schaffer | 8/26/07 - 8/31/07 | (1,15,22) | 11 |

Total __716.5__

## Detail of Services Rendered by Project Code
## For the Period September 1, 2007 through September 30, 2007

| Professional | Date | Project Code | Hours |
|---|---|---|---|
| Jeff Boyd | 9/2/07 – 9/8/07 | (1,7,8,15,16) | 30 |
| Dean DeMeritte | 9/2/07 – 9/8/07 | (1,7,8,9,22) | 10 |
| Tim Horacek | 9/2/07 – 9/8/07 | (22;23;24;25;26) | 20 |
| Emily Hubbel | 9/2/07 – 9/8/07 | (13;15;18;21) | 15 |
| Brian Larson | 9/2/07 – 9/8/07 | (2,3,8,13,15,19,22) | 20 |
| Michael Lau | 9/2/07 – 9/8/07 | (5;7;9;15,22) | 16 |
| Luana Slettedahl | 9/2/07 – 9/8/07 | (19;) | 20 |
| Brett Schaffer | 9/2/07 – 9/8/07 | (1,4,15,22) | 18.5 |
| | | | |
| Jeff Boyd | 9/9/07 – 9/15/07 | (1,7,8,15,16) | 30 |
| Dean DeMeritte | 9/9/07 – 9/15/07 | (1,7,8,9,22) | 8 |
| Tim Horacek | 9/9/07 – 9/15/07 | (22;23;24;25;26) | 20 |
| Emily Hubbel | 9/9/07 – 9/15/07 | (13;15;18;19;21) | 20 |
| Brian Larson | 9/9/07 – 9/15/07 | (2,5,7,8,19,22) | 40 |
| Michael Lau | 9/9/07 – 9/15/07 | (7;14;15;22) | 25 |
| Brett Schaffer | 9/9/07 – 9/15/07 | (3,4,6,7,9,10,12,15,16,22) | 31 |
| | | | |
| Jeff Boyd | 9/17/2007 | (8) | 2 |
| Dean DeMeritte | 9/17/2007 | (9,22) | 0.5 |
| Tim Horacek | 9/17/2007 | (22;) | 0.5 |
| Emily Hubbel | 9/17/2007 | (15;18;21) | 2.5 |
| Brian Larson | 9/17/2007 | (3,8,22) | 3 |
| Michael Lau | 9/17/2007 | (7;14) | 6.5 |
| Brett Schaffer | 9/17/2007 | (3,4,6,9,10,15,16) | 6.5 |
| Luana Slettedahl | 9/17/2007 | (2;3) | 5 |
| | | | |
| Jeff Boyd | 9/18/2007 | (8) | 1 |
| Dean DeMeritte | 9/18/2007 | (9,22) | 1 |
| Tim Horacek | 9/18/2007 | (23;24) | 6 |
| Emily Hubbel | 9/18/2007 | (13;19;21;) | 1.5 |
| Brian Larson | 9/18/2007 | (3,8,22) | 3 |
| Michael Lau | 9/18/2007 | (2;3;7;15) | 8 |
| Luana Slettedahl | 9/18/2007 | (2;3) | 4.5 |
| Heather Blair | 9/18/2007 | (22;) | 0.5 |
| Brett Schaffer | 9/18/2007 | (7,15) | 4.5 |
| | | | |
| Jeff Boyd | 9/19/2007 | (8) | 1 |
| Dean DeMeritte | 9/19/2007 | (9,22) | 1 |
| Tim Horacek | 9/19/2007 | (23;25) | 4 |
| Emily Hubbel | 9/19/2007 | (19;) | 0.5 |
| Brian Larson | 9/19/2007 | (3,8,22) | 3 |
| Michael Lau | 9/19/2007 | (2;3;7;15) | 8 |
| Luana Slettedahl | 9/19/2007 | (2;3) | 10 |
| Brett Schaffer | 9/19/2007 | (7,15) | 3 |
| | | | |
| Dean DeMeritte | 9/20/2007 | (9,22) | 1 |
| Tim Horacek | 9/20/2007 | (22;23;25) | 4 |
| Emily Hubbel | 9/20/2007 | (2;3;8;) | 1.5 |
| Brian Larson | 9/20/2007 | (3,8,22) | 3 |
| Michael Lau | 9/20/2007 | (2;3;5;7;14;) | 8 |
| Luana Slettedahl | 9/20/2007 | (2;3) | 6 |
| Brett Schaffer | 9/20/2007 | (7,15) | 3.5 |
| | | | |
| Dean DeMeritte | 9/21/2007 | (9,22) | 0.5 |
| Tim Horacek | 9/21/2007 | (25;26) | 4 |
| Emily Hubbel | 9/21/2007 | (19;21) | 2 |
| Brian Larson | 9/21/2007 | (3,8,22) | 3 |
| Michael Lau | 9/21/2007 | (7;) | 3 |
| Luana Slettedahl | 9/21/2007 | (2;3) | 4 |
| Brett Schaffer | 9/21/2007 | (7,15,16) | 4 |
| | | | |
| Luana Slettedahl | 9/22/2007 | (2;3) | 2 |
| | | | |
| Luana Slettedahl | 9/23/2007 | (2;3) | 2 |
| | | | |
| Jeff Boyd | 9/24/2007 | (1,8) | 10 |
| Dean DeMeritte | 9/24/2007 | (9,22) | 0.5 |
| Tim Horacek | 9/24/2007 | (25) | 1 |
| Emily Hubbel | 9/24/2007 | (19;) | 5 |
| Brian Larson | 9/24/2007 | (2,8,22) | 3 |
| Michael Lau | 9/24/2007 | (7;) | 2 |
| Robin Bowes | 9/24/2007 | (14,2,3) | 11 |
| Brett Schaffer | 9/24/2007 | (7,15) | 1 |
| | | | |
| Jeff Boyd | 9/25/2007 | (1,8) | 10 |
| Dean DeMeritte | 9/25/2007 | (9,22) | 1 |
| Tim Horacek | 9/25/2007 | (25) | 2.5 |
| Emily Hubbel | 9/25/2007 | (19;) | 3 |
| Brian Larson | 9/25/2007 | (3,8,19,22) | 3 |
| Michael Lau | 9/25/2007 | (7;6;14;15) | 5 |
| Robin Bowes | 9/25/2007 | (2,3) | 11 |
| Brett Schaffer | 9/25/2007 | (7,15) | 2 |
| | | | |
| Jeff Boyd | 9/26/2007 | (1,8) | 8 |
| Dean DeMeritte | 9/26/2007 | (1,9,22) | 3 |
| Tim Horacek | 9/26/2007 | (24;25) | 4 |
| Emily Hubbel | 9/26/2007 | (19;) | 3 |
| Michael Lau | 9/26/2007 | (15;) | 5.5 |
| Luana Slettedahl | 9/26/2007 | (2;3) | 1 |
| Robin Bowes | 9/26/2007 | (2,3) | 11 |
| Brett Schaffer | 9/26/2007 | (7,15) | 3 |
| | | | |
| Dean DeMeritte | 9/27/2007 | (9,22) | 1 |
| Tim Horacek | 9/27/2007 | (23) | 1 |
| Emily Hubbel | 9/27/2007 | (8;21) | 1.5 |
| Michael Lau | 9/27/2007 | (7;) | 4 |
| Robin Bowes | 9/27/2007 | (2,3) | 11 |
| Brett Schaffer | 9/27/2007 | (7,15) | 2 |
| | | | |
| Tim Horacek | 9/28/2007 | (25) | 2 |
| Emily Hubbel | 9/28/2007 | (19;) | 6 |
| Michael Lau | 9/28/2007 | (7;) | 1 |
| Robin Bowes | 9/28/2007 | (14,2,3) | 10 |
| Brett Schaffer | 9/28/2007 | (7,15) | 2 |

Total    613

<u>Detail of Services Rendered by Project Code</u>
<u>For the Period October 1, 2007 through October 31, 2007</u>

| Professional | Date | Project Code | Hours |
|---|---|---|---|
| Dean DeMeritte | 10/1/2007 | (9,22) | 1 |
| Tim Horacek | 10/1/2007 | (25) | 2 |
| Emily Hubbel | 10/1/2007 | (19;21) | 3 |
| Michael Lau | 10/1/2007 | (7;14;15) | 20.5 |
| Robin Bowes | 10/1/2007 | (2,3,25) | 3 |
| Brett Schaffer | 10/1/2007 | (7,15) | 3 |
| Dean DeMeritte | 10/2/2007 | (9,22) | 1 |
| Tim Horacek | 10/2/2007 | (25) | 1 |
| Emily Hubbel | 10/2/2007 | (19;21) | 3 |
| Michael Lau | 10/2/2007 | (7;) | 4 |
| Robin Bowes | 10/2/2007 | (2,3,25) | 3 |
| Brett Schaffer | 10/2/2007 | (7,15) | 1.5 |
| Dean DeMeritte | 10/3/2007 | (9,22) | 0.5 |
| Michael Lau | 10/3/2007 | (6;7) | 4.5 |
| Luana Slettedahl | 10/3/2007 | 2,3 | 1 |
| Robin Bowes | 10/3/2007 | (2,3,25) | 3 |
| Brett Schaffer | 10/3/2007 | (7) | 1 |
| Michael Lau | 10/4/2007 | (7) | 1 |
| Luana Slettedahl | 10/4/2007 | (2,3) | 4 |
| Robin Bowes | 10/4/2007 | (2,3,25) | 3 |
| Tim Horacek | 10/5/2007 | (25) | 3 |
| Michael Lau | 10/5/2007 | (7;) | 1 |
| Luana Slettedahl | 10/5/2007 | (2,3) | 10 |
| Robin Bowes | 10/5/2007 | (5,22) | 5 |
| Luana Slettedahl | 10/7/2007 | (5) | 1 |
| Robin Bowes | 10/7/2007 | (5) | 1 |
| Tim Horacek | 10/8/2007 | (25;) | 0.5 |
| Michael Lau | 10/8/2007 | (7;) | 5 |
| Luana Slettedahl | 10/8/2007 | (5,22) | 8 |
| Robin Bowes | 10/8/2007 | (5,22) | 10 |
| Brett Schaffer | 10/8/2007 | (7,15) | 2 |
| Tim Horacek | 10/9/2007 | (25) | 0.5 |
| Michael Lau | 10/9/2007 | (7;) | 2 |
| Luana Slettedahl | 10/9/2007 | (5,28,22) | 11 |
| Robin Bowes | 10/9/2007 | (5,28,22) | 12 |
| Brett Schaffer | 10/9/2007 | (15) | 0.5 |
| Michael Lau | 10/10/2007 | (7;) | 2 |
| Luana Slettedahl | 10/10/2007 | (28,22) | 4.5 |
| Robin Bowes | 10/10/2007 | (28,22) | 6 |
| Brett Schaffer | 10/10/2007 | (15) | 1 |
| Michael Lau | 10/11/2007 | (7;) | 2 |
| Tim Horacek | 10/12/2007 | (23) | 2 |
| Emily Hubbel | 10/12/2007 | (8;) | 5 |
| Michael Lau | 10/12/2007 | (7;) | 2 |
| Luana Slettedahl | 10/12/2007 | (28,22) | 0.5 |
| Brett Schaffer | 10/12/2007 | (15) | 1 |
| Tim Horacek | 10/15/2007 | (23) | 1.5 |
| Tim Horacek | 10/16/2007 | (23) | 2 |
| Emily Hubbel | 10/16/2007 | (8;) | 1 |
| Michael Lau | 10/17/2007 | (7;) | 1 |
| Michael Lau | 10/18/2007 | (7;6) | 3 |
| Luana Slettedahl | 10/18/2007 | (28,22) | 2 |
| Michael Lau | 10/19/2007 | (7;) | 1 |
| Tim Horacek | 10/22/2007 | (23) | 1 |
| Michael Lau | 10/22/2007 | (7;) | 2 |
| Brett Schaffer | 10/22/2007 | (7) | 1 |
| Michael Lau | 10/23/2007 | (7;6;5) | 3 |
| Brett Schaffer | 10/23/2007 | (7) | 1 |
| Michael Lau | 10/24/2007 | (7;) | 2 |
| Luana Slettedahl | 10/24/2007 | (28,22) | 3.5 |
| Michael Lau | 10/25/2007 | (7;) | 1 |
| Luana Slettedahl | 10/25/2007 | (28,22) | 1.5 |
| Robin Bowes | 10/29/2007 | (14,15) | 10 |
| Robin Bowes | 10/30/2007 | (14,15) | 10 |
| Michael Lau | 10/31/2007 | (7;) | 1 |
| Robin Bowes | 10/31/2007 | (14,15) | 10 |

Total   221

<u>Detail of Services Rendered by Project Code</u>
<u>For the Period November 1, 2007 through November 30, 2007</u>

| Professional | Date | Project Code | Hours |
|---|---|---|---|
| Michael Lau | 11/1/2007 | (7;) | 3 |
| Robin Bowes | 11/1/2007 | (14,15) | 10 |
| Michael Lau | 11/2/2007 | (7;) | 3 |
| Robin Bowes | 11/2/2007 | (14,15) | 10 |
| Robin Bowes | 11/5/2007 | (28;) | 3 |
| Robin Bowes | 11/6/2007 | (28;) | 3 |
| Robin Bowes | 11/7/2007 | (28;) | 3 |
| Michael Lau | 11/8/2007 | (7;) | 2 |
| Robin Bowes | 11/8/2007 | (28;) | 3 |
| Michael Lau | 11/9/2007 | (7;) | 1 |
| Robin Bowes | 11/9/2007 | (28;) | 3 |
| Emily Hubbel | 11/12/2007 | (13;17) | 2 |
| Robin Bowes | 11/13/2007 | (28;) | 3 |
| Emily Hubbel | 11/14/2007 | (13;17) | 4 |
| Emily Hubbel | 11/15/2007 | (13;17) | 3 |
| Emily Hubbel | 11/16/2007 | (13;17) | 1 |
| Robin Bowes | 11/16/2007 | (16;) | 0.5 |
| Emily Hubbel | 11/19/2007 | (13;17) | 2 |
| Robin Bowes | 11/19/2007 | (16;) | 0.5 |
| Robin Bowes | 11/20/2007 | (16;) | 0.5 |
| Robin Bowes | 11/21/2007 | (16;) | 0.5 |
| Emily Hubbel | 11/22/2007 | (13;17) | 2 |
| Emily Hubbel | 11/23/2007 | (13;17) | 2.5 |
| Robin Bowes | 11/26/2007 | (16;) | 0.5 |
| Robin Bowes | 11/27/2007 | (16;) | 0.5 |
| Emily Hubbel | 11/28/2007 | (13;17) | 2 |
| Robin Bowes | 11/28/2007 | (16;) | 0.5 |
| Emily Hubbel | 11/29/2007 | (13;17) | 2 |
| Robin Bowes | 11/29/2007 | (16;) | 0.5 |
| Emily Hubbel | 11/30/2007 | (13;17) | 1 |
| Robin Bowes | 11/30/2007 | (16;) | 0.5 |
| | | **Total** | 73 |

Detail of Services Rendered by Project Code
For the Period December 1, 2007 through December 31, 2007

| Professional | Date | Project Code | Hours |
|---|---|---|---|
| Emily Hubbel | 12/3/2007 | (13;17) | 2 |
| Robin Bowes | 12/3/2007 | (16;) | 0.5 |
| Emily Hubbel | 12/4/2007 | (13;17) | 2 |
| Robin Bowes | 12/4/2007 | (16;) | 0.5 |
| Emily Hubbel | 12/5/2007 | (13;17) | 1 |
| Robin Bowes | 12/5/2007 | (16;) | 0.5 |
| Robin Bowes | 12/6/2007 | (16;) | 0.5 |
| Robin Bowes | 12/7/2007 | (16;) | 0.5 |
| Robin Bowes | 12/10/2007 | (16;) | 0.5 |
| Robin Bowes | 12/11/2007 | (16;) | 0.5 |
| Robin Bowes | 12/12/2007 | (16;) | 0.5 |
| Robin Bowes | 12/13/2007 | (16;) | 0.5 |
| Robin Bowes | 12/14/2007 | (16;) | 0.5 |
| Robin Bowes | 12/17/2007 | (16;) | 0.5 |
| Robin Bowes | 12/18/2007 | (16;) | 0.5 |
| Robin Bowes | 12/19/2007 | (16;) | 0.5 |
| Robin Bowes | 12/20/2007 | (16;) | 0.5 |
| Michael Lau | 12/21/2007 | (7;) | 2 |
| Robin Bowes | 12/21/2007 | (16;) | 0.5 |
| Robin Bowes | 12/24/2007 | (16;) | 0.5 |
| Robin Bowes | 12/26/2007 | (16;) | 0.5 |
| Robin Bowes | 12/27/2007 | (16;) | 0.5 |
| Robin Bowes | 12/28/2007 | (16;) | 0.5 |
| Robin Bowes | 12/31/2007 | (16;) | 0.5 |
| | | Total | 17 |

# EXHIBIT B

**Expenses Incurred Under the Engagement Letter**

# Phoenix  Capital, Inc.
## American Home
## Summary of Re-imbursable Expenses

### EXHIBIT B
**Expenses Incurred Under the Engagement Letter**

| Category | Aug07 Amount | Sep07 Amount | Oct07 Amount | Nov07 Amount | Total Amount |
|---|---|---|---|---|---|
| airfare | 1,514.33 | 3,224.82 | 1,034.60 | 284.40 | 6,058.15 |
| automobile | 434.24 | 1,583.10 | 0.00 | 484.99 | 2,502.33 |
| lodging | 550.91 | 3,846.38 | 0.00 | 478.22 | 4,875.51 |
| meals | 16.39 | 355.82 | 37.31 | 30.28 | 439.80 |
| Total | 2,515.87 | 9,010.12 | 1,071.91 | 1,277.89 | 13,875.79 |

**Phoenix  Capital, Inc.**
**American Home Re-mbursable Expenses**
**(updated: 11-20-07)**

| Category | Date | Charge | Individual | Vendor | Description |
|----------|------|--------|------------|--------|-------------|
| airfare | 08/08/2007 | 496.81 | Brett H Schaffer | United Air Lines | DEN to DFW regarding sale |
| airfare | 08/09/2007 | 130.01 | Brett H Schaffer | United Air Lines | DEN to DFW regarding sale |
| airfare | 08/10/2007 | 29.00 | Brett H Schaffer | United Air Lines | DEN to DFW regarding sale |
| airfare | 08/08/2007 | 361.70 | Michael P Lau | United Air Lines | DEN to DFW regarding sale |
| airfare | 08/21/2007 | 496.81 | Michael P Lau | United Air Lines | DEN to DFW regarding sale |
| automobile | 08/09/2007 | 12.00 | Brett H Schaffer | Executive Cab | cab ride in Dallas |
| automobile | 08/10/2007 | 26.00 | Brett H Schaffer | DIA Parking | airport parking |
| automobile | 08/10/2007 | 202.17 | Michael P Lau | Hertz Rent-A-Car | car rental in Dallas |
| automobile | 08/22/2007 | 194.07 | Michael P Lau | Hertz Rent-A-Car | car rental in Dallas |
| lodging | 08/10/2007 | 193.68 | Michael P Lau | Residence Inns | Irving, TX (one night) |
| lodging | 08/22/2007 | 357.23 | Michael P Lau | Westin Hotels | Dallas, TX (one night) |
| meals | 08/10/2007 | 10.12 | Michael P Lau | Waffle House | TX - working meal, one person |
| meals | 08/21/2007 | 6.27 | Michael P Lau | Whataburger | TX - working meal, one person |
| | | 2,515.87 | | | |

**Phoenix  Capital, Inc.**
**American Home Re-mbursable Expenses**
**(updated: 11-20-07)**

| Category | Date | Charge | Individual | Vendor | Description |
|---|---|---|---|---|---|
| airfare | 09/09/2007 | 487.80 | Luana Slettedahl | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/10/2007 | 29.00 | Luana Slettedahl | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/10/2007 | 403.00 | Luana Slettedahl | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/13/2007 | 100.00 | Luana Slettedahl | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/14/2007 | 130.01 | Luana Slettedahl | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/16/2007 | 29.00 | Luana Slettedahl | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/04/2007 | 318.80 | Michael P Lau | United Air Lines | DEN to NYC regarding sale |
| airfare | 09/05/2007 | 718.80 | Michael P Lau | United Air Lines | DEN to NYC regarding sale |
| airfare | 09/09/2007 | 487.80 | Michael P Lau | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/17/2007 | 22.02 | Michael P Lau | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/25/2007 | 179.99 | Michael P Lau | United Air Lines | DEN to DFW regarding sale |
| airfare | 09/25/2007 | 318.60 | Michael P Lau | United Air Lines | DEN to DFW regarding sale |
| automobile | 09/14/2007 | 72.00 | Luana Slettedahl | DIA Parking | airport parking |
| automobile | 09/14/2007 | 464.30 | Luana Slettedahl | Hertz Rent-A-Car | car rental in Dallas |
| automobile | 09/12/2007 | 209.38 | Michael P Lau | Hertz Rent-A-Car | car rental in Dallas |
| automobile | 09/20/2007 | 439.27 | Michael P Lau | Hertz Rent-A-Car | car rental in Dallas |
| automobile | 09/28/2007 | 72.00 | Robin Bowes | DIA Parking | airport parking |
| automobile | 09/28/2007 | 326.15 | Robin Bowes | Avis | car rental in Dallas |
| lodging | 09/10/2007 | 687.70 | Luana Slettedahl | Westin Hotels | Dallas, TX (two nights) |
| lodging | 09/14/2007 | 56.30 | Luana Slettedahl | Westin Hotels | Dallas, TX (one night) |
| lodging | 09/15/2007 | 365.50 | Luana Slettedahl | Westin Hotels | Dallas, TX (one night) |
| lodging | 09/06/2007 | 699.16 | Michael P Lau | DoubleTree Hotels | NYC (one night) |
| lodging | 09/13/2007 | 429.46 | Michael P Lau | Marriott | Irving, TX (one night) |
| lodging | 09/18/2007 | 446.88 | Michael P Lau | Grand Hyatt | DFW, TX (one night) |
| lodging | 09/20/2007 | 72.98 | Michael P Lau | Grand Hyatt | DFW, TX (one night) |
| lodging | 09/28/2007 | 1,088.40 | Robin Bowes | Sheraton Hotels | Irving, TX (3 nights) |
| meals | 09/11/2007 | 9.41 | Luana Slettedahl | Pour La France | CO (meal at airport) - working meal, one person |
| meals | 09/11/2007 | 32.02 | Luana Slettedahl | Mi Cocina | TX - working meal, one person |
| meals | 09/12/2007 | 89.33 | Luana Slettedahl | Oceanaire | TX - working meal, one person |
| meals | 09/13/2007 | 20.00 | Luana Slettedahl | Mi Cocina | TX - working meal, one person |
| meals | 09/14/2007 | 8.11 | Luana Slettedahl | Starbucks | TX - working meal, one person |
| meals | 09/14/2007 | 13.88 | Luana Slettedahl | Cousins Bar | TX - working meal, one person |
| meals | 09/18/2007 | 14.78 | Michael P Lau | Black Eyed Pea | TX - working meal, one person |
| meals | 09/26/2007 | 123.13 | Robin Bowes | Chili's | TX - working meal, 13 people w/ MidFirst Bank* |
| meals | 09/28/2007 | 45.16 | Robin Bowes | Anton's | TX - working meal, one person |

9,010.12

| |
|---|
| *Janet Bell |
| Chris Wertzberger |
| Thad Burr |
| Amy Foster |
| Craig Parker |
| Christian Haywood |
| Regina Kraus |
| Rita Dunning |
| Leigh Leary |
| Casey Schilling |
| Jennifer Cobden |
| Kemi Olude |
| Robin Bowes |

**Phoenix  Capital, Inc.**
**American Home Re-mbursable Expenses**
**(updated: 11-20-07)**

| Category | Date | Charge | Individual | Vendor | Description |
|----------|------|--------|------------|--------|-------------|
| airfare | 10/25/2007 | 538.80 | Michael P Lau | United Air Lines | DEN to NYC regarding sale |
| airfare | 10/29/2007 | 495.80 | Robin Bowes | American Airlines | DEN to DFW regarding sale |
| meals | 10/29/2007 | 10.03 | Robin Bowes | Cazzoli's | TX - working meal, one person |
| meals | 10/30/2007 | 22.32 | Robin Bowes | Chick-fil-A | TX - working meal, one person |
| meals | 10/31/2007 | 4.96 | Robin Bowes | Long John Silvers | TX - working meal, one person |
| | | 1,071.91 | | | |

**Phoenix  Capital, Inc.**
**American Home Re-mbursable Expenses**
**(updated: 11-20-07)**

| Category | Date | Charge | Individual | Vendor | Description |
|---|---|---|---|---|---|
| airfare | 11/02/2007 | 284.40 | Robin Bowes | American Airlines | DEN to DFW regarding sale |
| automobile | 11/02/2007 | 44.03 | Robin Bowes | Conoco | gas station re-fuel in Dallas |
| automobile | 11/02/2007 | 314.96 | Robin Bowes | Hertz Rent-A-Car | car rental in Dallas |
| automobile | 11/05/2007 | 126.00 | Robin Bowes | DIA Parking | airport parking |
| lodging | 11/01/2007 | 195.43 | Robin Bowes | Westin Hotels | Irving, TX (one night) |
| lodging | 11/02/2007 | 282.79 | Robin Bowes | Sheraton Hotels | Irving, TX (one night) |
| meals | 11/02/2007 | 30.28 | Robin Bowes | Tigin Irish Pub | TX - working meal, one person |
| | | 1,277.89 | | | |

## VERIFICATION OF FEE APPLICATION

STATE OF COLORADO    )
                                )    SS:
COUNTY OF DENVER    )

       MICHAEL P. LAU, being duly sworn according to law, deposes and says:

       1.      I am the Executive Vice President of the applicant firm, Phoenix Capital Inc. (the "Firm"), and have been employed by the Firm since February 1, 2000.

       2.      I have personally performed many of the services rendered by the Firm as advisor and investment banker and am familiar with all other work performed on behalf of the Debtors by the professionals of the Firm.

       3.      The services and expenses were performed and incurred from the month of August 2007 through the month of December 2007 subject to the foregoing Application.

       4.      The facts set forth in the foregoing Application are true and correct to the best of my knowledge, information and belief.

Michael P. Lau
Executive Vice President
Phoenix Capital, Inc.

SWORN TO AND SUBSCRIBED
before me this 10 day of April , 2008.

Notary Public

Lindsay B Wiles
NOTARY PUBLIC
State Of Colorado

066585.1001