IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AMERICAN HOME MORTGAGE | § | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | § | |
| | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| CALYON NEW YORK BRANCH | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 07-51704 |
| | § | |
| AMERICAN HOME | § | |
| MORTGAGE CORP., AMERICAN HOME | § | |
| MORTGAGE SERVICING, INC., | § | |
| AMERICAN HOME MORTGAGE | § | |
| ACCEPTANCE, INC., and | § | |
| AMERICAN HOME MORTGAGE | § | |
| INVESTMENT CORP., | § | |
| | § | **Hearing Date: May 1, 2008 at 2:00 p.m. (ET)** |
| Defendants. | § | **Objection Deadline: April 24, 2008 at 4:00 p.m. (ET)** |

## NOTICE OF MOTION

TO:   (I) THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE; (II) COUNSEL TO THE COMMITTEE; (III) COUNSEL TO BANK OF AMERICA, N.A.; (IV) COUNSEL TO THE AGENT FOR THE DEBTORS' POSTPETITION LENDER; (V) COUNSEL TO CALYON; (VI) COUNSEL TO DEUTSCHE BANK; (VII) COUNSEL TO BANK OF NEW YORK; (VIII) COUNSEL TO JP MORGAN CHASE BANK, N.A.; (IX) COUNSEL TO NATIXIS REAL ESTATE CAPITAL INC.; (X) NORTH FORK BANK; AND (XI) COUNSEL TO ALL PARTIES ENTITLED TO NOTICE UNDER DEL. BANKR. LR 2002-1(B)

The above-captioned debtors and debtors-in-possession (the "Debtors") have filed the **DEBTORS' MOTION PURSUANT TO FEDERAL BANKRUPTCY RULE 9019(a) FOR AN ORDER APPROVING AND AUTHORIZING THE STIPULATION BETWEEN THE DEBTORS AND CALYON NEW YORK BRANCH, AS ADMINISTRATIVE AGENT** (the "Motion").

066585.1001

A HEARING ON THE MOTION WILL BE HELD ON **MAY 1, 2008 AT 2:00 P.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI, UNITED STATES BANKRUPTCY COURT, 6th FLOOR, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.

Responses to the Motion, if any, must be filed on or before **4:00 p.m. (ET) on April 24, 2008** (the "Objection Deadline"), with the United States Bankruptcy Court for the District of Delaware, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801. If a response to the Motion is filed, you must also serve a copy of the response upon the undersigned counsel to the Debtors so that the response is received on or before the Objection Deadline.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: Wilmington, Delaware
      April 11, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Sean M. Beach (No. 4070)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AMERICAN HOME MORTGAGE | § | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | § | |
| | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

---

| | | |
|---|---|---|
| CALYON NEW YORK BRANCH | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 07-51704 |
| | § | |
| AMERICAN HOME | § | |
| MORTGAGE CORP., AMERICAN HOME | § | |
| MORTGAGE SERVICING, INC., | § | |
| AMERICAN HOME MORTGAGE | § | |
| ACCEPTANCE, INC., and | § | |
| AMERICAN HOME MORTGAGE | § | |
| INVESTMENT CORP., | § | |
| | § | **Hearing Date: May 1, 2008 at 2:00 p.m. (ET)** |
| Defendants. | § | **Objection Deadline: April 24, 2008 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO FEDERAL BANKRUPTCY RULE
9019(a) FOR AN ORDER APPROVING AND AUTHORIZING
THE STIPULATION BETWEEN THE DEBTORS AND
CALYON NEW YORK BRANCH, AS ADMINISTRATIVE AGENT**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by

this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") approving a stipulation (the "Stipulation") by

and among the Debtors and Calyon New York Branch, as Administrative Agent ("Calyon")

under the Repurchase Agreement dated November 21, 2006 (the "Repurchase Agreement"). A

copy of the Stipulation is attached as Exhibit 1 to the form of order attached hereto as Exhibit A.

Calyon and the Debtors are referred to herein as the "Parties." In support of the Motion, the

Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with

this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the

"Bankruptcy Code"). Each Debtor is continuing to operate its business and manage its

properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

3.      The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or

examiner has been appointed.

5.      In the weeks prior to the Petition Date, an unprecedented disruption in the

credit markets caused major write-downs of the Debtors' loan and security portfolios and

consequently resulted in margin calls for hundreds of millions of dollars with respect to the

Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7.    Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[1]

8.    Pursuant to the APA, the Servicing Sale will close in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related

---

[1]  All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors agreed to operate the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser. The Final Closing occurred on April 11, 2008.

## **RELEVANT BACKGROUND**

9.      On March 7, 2008, Calyon filed the Motion of Calyon New York Branch to Obtain Advanced Funds and Other Mortgage Assets, and to Compel the Debtors to Comply with the September Stipulation and the January Stipulation [Adv. Doc. No. 95] (the "Funds Motion"). Pursuant to the Funds Motion, Calyon sought to obtain certain funds from the Debtors, including certain returned wire transfers and principal and interest payments.

## A.      **Returned Wires**

10.      Between the period from July 24, 2007 to August 28, 2007, the Debtors received by wire transfer certain funds totaling approximately $12,055,281.91 (hereinafter referred to as the "Returned Wires").

11.      The Returned Wires result from the return of funds from settlement agents in connection with mortgage loans that never closed. Calyon asserts that the Returned Wires are on account of funds Calyon advanced under the Repurchase Agreement to fund Mortgage Loans that never closed.[2]

12.      The Returned Wires were not returned to Calyon and were initially wired to or deposited in the following bank accounts, including without limitation, (i) Deutsche Bank Trust Company Americas ("Deutsche Bank") (Account Number 00-449-393) (the "DB 393

---

[2]      Nothing herein or in the Stipulation shall be construed as the Debtors consenting to any interpretation by Calyon of the Repurchase Agreement; however, the Debtors agree that the Returned Wires should be resolved as set forth in the Stipulation as a result of the specific facts and circumstances of the settlement.

Account") and (Account Number 00-446-432) (the "DB 432 Account"); (ii) North Fork Bank, a division of Capital One, N.A. ("North Fork") (Account Number 3164073044) (the "North Fork Account"); (iii) JPMorgan Chase Bank, N.A. ("JPM") (Account Number 000000730147717) (the "JPM 717 Account"); and (iv) Bank of New York ("BONY") (Account Number 890-0553944) (the "BONY Account"). The DB and BONY accounts referenced in the Stipulation and herein were frozen by the respective financial institutions.

**B.      P&I Payments**

13.      In addition to the Returned Wires, the Debtors also received funds which constitute principal and interest payments (the "P&I Payments") received by the Debtors pursuant to the Repurchase Agreement.

14.      The P&I Payments were initially deposited by the Debtors at, including without limitation, JPM (Account Number 000000730147816) (the "JPM 816 Account") and (Account Number 000000730147808) (the "JPM 808 Account"); and Deutsche Bank (Account Number 430617) (the "DB 616 Account").

**C.      Miscellaneous Funds**

15.      Prior to Petition Date, certain funds were wired to or deposited in various accounts, as follows: (i) $1,120,570.71 into certain accounts which Calyon swept prior to the Petition Date; and (ii) $892,524.99 into the DB 617 Account which still remains in the DB 617 Account (collectively, the "Calyon Received Funds"). The Calyon Received Funds represent funds that do not belong to Calyon.

16.      Additionally, prior to the Petition Date, certain funds were wired to or deposited in various accounts, as follows: (i) $243,655.66 into an account at Deutsche Bank (Account Number 381528) (the "DB 528 Account") and (ii) $5,000.00 into an account at

Deutsche Bank (Account Number 380082) (the "DB 082 Account") (collectively the "Calyon Owned Funds"). The Calyon Owned Funds represent funds that belong to Calyon.

17.     Calyon asserts that it may be owed $334,407.99, which is comprised of (i) $90,427.62 of payments not identified by the Debtors to date; (ii) $1,805.11 of certain open items; (iii) $8,598.84 of balance differences in the reconciliations of Calyon and the Debtors; (iv) $231,815.88 regarding a Mortgage Loan that was paid in full; and (v) $1,760.54 in payment differences in the reconciliations of Calyon and the Debtors (collectively, the "Remaining Amounts").

D.    **Settlement Negotiations**

18.     Calyon and the Debtors entered into settlement negotiations regarding the Returned Wires, P&I Payments, Calyon Received Funds, Calyon Owned Funds and Remaining Amounts. As a result of the settlement discussions between the Parties, the Debtors did not formally respond to the Funds Motion; however, the Debtors dispute many of the allegations and assertions therein.

19.     After good faith negotiations between the Parties, the Debtors and Calyon agreed to resolve the Funds Motion and certain other disputes pursuant to the terms of the Stipulation.

20.     The Debtors have informed the Committee as to the status and substance of the negotiations between the Parties and the Committee has agreed not to object to the Stipulation.

21.     On March 19, 2008, Bank of America, N.A., as administrative agent ("BofA"), filed the Motion of Bank of America, N.A., as Administrative Agent, to Intervene, and Limited Objection to the Motion of Calyon New York Branch to Obtain Advanced Funds and

Other Mortgage Assets, and to Compel the Debtors to Comply with the September Stipulation and the January Stipulation [Adv. Doc. No. 103] (the "BofA Objection").

      22.    On March 27, 2008, the Court entered the Order Permitting Bank of America, N.A., as Administrative Agent, to Intervene for a Limited Purpose [Adv. Doc. No. 113].

      23.    Calyon and BofA have entered into a stipulation and order resolving the BofA Objection (the "BofA Agreement").[3]

      24.    Necessarily, BofA has been informed about the status and substance of the negotiations between Calyon and the Debtors regarding the agreement set forth in the Stipulation. BofA has agreed not to object to the agreement set forth in the Stipulation, subject to the terms of the BofA Agreement.

## SUMMARY OF THE STIPULATION

      25.    The Debtors and Calyon believe it is in their respective best interests to compromise and settle, without further litigation, the Funds Motion and certain other disputes on the terms and subject to the conditions set forth in the Stipulation. The effectiveness of the Stipulation is conditioned upon approval of the Bankruptcy Court, except that the Debtors and Calyon have agreed to use best efforts to cause the Court to approve the Stipulation. As set forth in more detail below, pursuant to the Stipulation: (i) Calyon is provided with a cash recovery of $11,546,262.10; (ii) the Debtors agree to use commercially reasonable efforts to trace and recover a total of $2,017,291.66 (the "Unpaid Funds"), which, if recovered, will be paid to Calyon; (iii) Calyon agrees that in addition to the right to enforce the provisions of the

---

[3]    Contemporaneous with the filing of this Motion, Calyon is submitting the BofA Stipulation to the Court under Certification of Counsel.

Stipulation, Calyon's only rights and claims against the Debtors for the Unpaid Funds are general unsecured claims in connection with the Repurchase Agreement; (iv) Calyon waives its right to $2,729,164.57, which will be placed into an escrow account maintained by the Debtors and held pending further order of the Court or agreement of the parties that have or may assert an interest in such funds; (v) Calyon and the Debtors agree to place $415,752.47 (the "Disputed P&I") in an escrow account, and retain all rights nad claims to such Disputed P&I, including the right to resolve such rights and claims through the Funds Motion; and (vi) the Debtors agree to commercially reasonable efforts to determine by June 2, 2008 whether any portion of the Remaining Amounts are due to Calyon and the Debtors agree to use good faith efforts to recover any portion of the Remaining Amounts that are due to Calyon, if any.

26.    The aggregate amounts referenced above (and in the Stipulation) were calculated based on the identification of specific funds related to Mortgage Loans.  While the Parties have not broken down the specific amounts and identified the related Loans, the Parties have shared the relevant data supporting the aggregate amounts referenced.  The principal terms of the Stipulation are as follows:[4]

A.    **Returned Wires.**

i.    **The DB 393 Account.**  The DB 393 Account contains $3,923,665.28 of Returned Wires.  The Parties request Court approval directing Deutsche Bank to transfer $3,923,665.28 from the DB 393 Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) Deutsche Bank is directed to transfer $3,923,665.28 from the DB 393 Account to Calyon within five (5) business days.

---

[4]    The summary of the Stipulation is qualified in its entirety by the Stipulation.  If there are any inconsistencies between the summary contained herein and the Stipulation, the Stipulation shall control.  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Stipulation.

ii.    **The DB 432 Account**. The DB 432 Account contains $214,890.09 of Returned Wires. The Parties request Court approval directing Deutsche Bank to transfer $214,890.09 from the DB 432 Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) Deutsche Bank is directed to transfer $214,890.09 from the DB 432 Account to Calyon within five (5) business days.

iii.    **The North Fork Account**. The North Fork Account contains $4,968,731.20 of Returned Wires. The Debtors will instruct North Fork to transfer $4,968,731.20 from the North Fork Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) North Fork is directed to transfer $4,968,731.20 from the North Fork Account to Calyon within five (5) business days.

iv.    **The JPM 717 Account**. By information and belief, the JPM 717 Account received $181,229.91 of Returned Wires. The JPM 717 Account currently has a balance of $0.00. The Debtors agree to use commercially reasonable efforts for a liquidating debtor in bankruptcy to trace the $181,229.91 of Returned Wires deposited into the JPM 717 Account by June 2, 2008. The Debtors agree to use good faith efforts to recover the $181,229.91 of Returned Wires deposited into the JPM 717 Account. The Debtors agree that if they recover any funds on account of such $181,229.91 of Returned Wires, the Debtors will pay the $181,229.91, or any portion of such funds recovered, to Calyon. The Debtors agree not to settle such claim without consulting Calyon. Calyon retains the right to object to any such settlement that does not result in payment in full to Calyon of $181,229.91. Calyon also retains all rights and claims to the $181,229.91 of Returned Wires against any non-Debtors, and the Debtors agree to use reasonable efforts to cooperate with Calyon in Calyon's efforts to recover such funds. Upon the request of Calyon, and without further order of the Bankruptcy Court, the Debtors agree to assign their rights to the $181,229.91 of Returned Wires to Calyon.

v.    **The BONY Account**.

a.    The BONY Account contains $1,646,772.16. Calyon submits that it is owed $1,938,622.57 from the BONY Account based on Returned Wires deposited into the BONY Account. Prior to August 6, 2007 (the "Petition

Date"), the Debtors allege that BofA inappropriately swept funds from the BONY Account (the "<u>BONY Account Swept Funds</u>").

b.  The Parties request Court approval directing BONY to transfer the funds in the BONY Account, within five (5) business days of the Stipulation and Order becoming a final, non-appealable order, as follows:  (i) $930,703.68 to Calyon, and (ii) the remaining $716,068.48 to the Debtors to be held in escrow pending further order of the Court or agreement among the parties that have asserted or may assert an interest in such remaining funds.  Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to the $930,703.68 to be paid to Calyon; and (ii) BONY is directed to transfer the funds in the BONY Account, within five (5) business days, as follows: (a) $930,703.68 to Calyon, and (b) the remaining $716,068.48 to the Debtors to be held in escrow pending further order of the Court or agreement among the parties that have asserted or may assert an interest in such remaining funds.

c.  The Debtors agree to use good faith efforts to recover the $1,007,958.89 of BONY Account Swept Funds that are owed to Calyon, including instituting an action in Bankruptcy Court and prosecuting such action to conclusion, if necessary, to obtain such BONY Account Swept Funds.  The Debtors agree that if they recover any portion of the BONY Account Swept Funds, the Debtors will pay Calyon the first $1,007,958.89 of such funds.  The Debtors agree not to settle such claim without consulting Calyon.  Calyon retains the right to object to any such settlement that does not result in payment in full to Calyon of $1,007,958.89.  Calyon also retains all rights and claims to the $1,007,958.89 of BONY Account Swept Funds against any non-Debtors, and the Debtors agree to use reasonable efforts to cooperate with Calyon in Calyon's efforts to recover such funds.  Upon (i) the request of Calyon or (ii) if the sole remaining issue as to the BONY Account Swept Funds is the $1,007,958.89 then at the option of the Debtors, and without further order of the Bankruptcy Court, the Debtors shall assign, without recourse, to Calyon and Calyon shall accept the Debtors' rights in and to the $1,007,958.89 of BONY Account Swept Funds and Calyon shall assume the responsibility and cost for commencing or, if commenced, prosecuting, such rights against any non-Debtors.

    d.      Calyon waives and releases any claim it has to the $716,068.48 identified above that is to be transferred to an escrow account pursuant to the Stipulation and Order.

vi.    **Unidentified Funds**.

    a.      The Parties have not determined whether $828,102.86 of unidentified adjourned loan funds (the "<u>Unidentified Funds</u>") were transferred from closing agents. The Debtors agree to use commercially reasonable efforts for a liquidating debtor in bankruptcy to trace the $828,102.86 of Unidentified Funds and to identify to Calyon the closing agents which were to transfer the Unidentified Funds by June 2, 2008. The Debtors agree to use good faith efforts to recover the $828,102.86 of Unidentified Funds. The Debtors agree that if they recover any funds on account of the $828,102.86 of Unidentified Funds, the Debtors will pay the $828,102.86, or any portion of such funds recovered, to Calyon. The Debtors agree not to settle Unidentified Funds claims without consulting Calyon. Calyon retains the right to object to any such settlement that does not result in payment in full to Calyon of $828,102.86. Calyon also retains all rights and claims to the $828,102.86 of Unidentified Funds against any non-Debtors, and the Debtors agree to use reasonable efforts to cooperate with Calyon in Calyon's efforts to recover such funds. Upon the request of Calyon, and without further order of the Bankruptcy Court, the Debtors agree to assign their rights to the $828,102.86 of Unidentified Funds to Calyon.

    b.      Calyon agrees that upon the Stipulation and Order becoming a final, non-appealable order, with respect to (i) the $181,229.91 of Returned Wires deposited in the JPM 717 Account; (ii) the $1,007,958.89 of BONY Account Swept Funds Calyon asserts it is owed; and (iii) the $828,102.86 of Unidentified Funds that may or may not have been transferred from closing agents (collectively, the "<u>Unpaid Funds</u>"), in addition to the right to enforce the provisions of the Stipulation and Order, which Calyon retains, Calyon's only rights and claims against the Debtors for the Unpaid Funds are general unsecured claims in connection with the Repurchase Agreement. Without the need for further court order, any general unsecured claim for Unpaid Funds shall be reduced by the amount ultimately recovered by Calyon with respect to the Unpaid Funds.

**B.**     **P&I Payments**

i.     **The JPM 816 Account**.  The JPM 816 Account contains
$63,835.82 of P&I Payments.  The Parties request Court approval
directing JPM to transfer $63,835.82 from the JPM 816 Account to
Calyon within five (5) business days of the Stipulation and Order
becoming a final, non-appealable order.  Upon the Stipulation and
Order becoming a final, non-appealable order, (i) the Debtors
waive and release any claim to such funds; and (ii) JPM is directed
to transfer $63,835.82 from the JPM 816 Account to Calyon within
five (5) business days.

ii.     **The JPM 808 Account**.

a.     The JPM 808 Account contains $1,214,655.14 of P&I
Payments.  The Debtors and Calyon dispute whether
$415,752.47 of P&I Payments belongs to the Debtors or
Calyon (the "Disputed P&I").  The Parties request Court
approval directing JPM to transfer the funds in the JPM 808
Account, within five (5) business days of the Stipulation
and Order becoming a final, non-appealable order, as
follows:  (i) $798,902.67 to Calyon, and (ii) the remaining
$415,752.47 to the Debtors to be held in escrow for the
benefit of the Parties, in an interest bearing account,
pending further order of the Court or agreement among the
Parties as to the distribution of such funds.  Upon the
Stipulation and Order becoming a final, non-appealable
order, (i) the Debtors waive and release any claim to the
$798,902.67 paid to Calyon; and (ii) JPM is directed to
transfer from the JPM 808 Account within five (5) business
days: (i) $798,902.67 to Calyon, and (ii) the remaining
$415,752.47 to the Debtors to be held in escrow for the
benefit of the Parties, in an interest bearing account,
pending further order of the Court or agreement among the
Parties as to the distribution of such funds.

b.     The Debtors and Calyon, respectively, retain all rights and
claims to the $415,752.47 of Disputed P&I to be
transferred from the JPM 808 Account to an interest
bearing escrow account, including without limitation the
right to resolve such rights and claims through the Motion.
The Debtors and Calyon agree to defer pursuing such rights
and claims until no earlier than May 1, 2008.  The Parties
consent and agree that the Disputed P&I is being
transferred from the JPM 808 Account for administrative
convenience, notwithstanding the fact that certain portions
of the Disputed P&I are currently deposited in the JPM 816

Account. As such, notwithstanding anything to the contrary herein, the Debtors rights are fully reserved with respect to asserting that any portions of the P&I Payments are Disputed P&I.

iii.    **The DB 617 Account**. The DB 617 Account contains $645,533.36 of P&I Payments. The Parties request Court approval directing DB to transfer $645,533.36 from the DB 617 Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) Deutsche Bank is directed to transfer $645,533.36 from the DB 617 Account to Calyon within five (5) business days.

C.    **Miscellaneous Funds.**

i.    The Parties request Court approval directing that the (i) $243,655.66 from the DB 528 Account; (ii) $5,000.00 from the DB 082 Account; (iii) $892,524.99 from the DB 617 Account; and (iv) $871,915.44 from Calyon (collectively, the "Miscellaneous Funds") be transferred or paid into an escrow account maintained by the Debtors (the "Miscellaneous Funds Escrow Account"), within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) Deutsche Bank is directed to transfer $243,655.66 from the DB 528 Account; (ii) Deutsche Bank is directed to transfer $5,000.00 from the DB 082 Account; (iii) Deutsche Bank is directed to transfer $892,524.99 from the DB 617 Account; and (iv) Calyon is directed to indefeasibly pay $871,915.44, to the Miscellaneous Funds Escrow Account within five (5) business days.

ii.    The Miscellaneous Funds in the Miscellaneous Funds Escrow Account shall be held pending further order of the Court or agreement of the parties that have or may assert an interest in such funds. Upon the transfer of the Miscellaneous Funds into the Miscellaneous Funds Escrow Account, (a) Calyon shall be released from any liability to any party that may assert an interest in the Calyon Received Funds or the Calyon Owned Funds; and (b) Calyon shall waive and release any claim to the Miscellaneous Funds, including the Calyon Owned Funds which claim is satisfied by reducing the amount of Calyon Received Funds being paid into the Miscellaneous Funds Escrow Account by Calyon.

iii.    The Debtors and Calyon agree to use commercially reasonable efforts for a liquidating debtor in bankruptcy to determine by June

2, 2008 whether any portion of the Remaining Amounts are due to Calyon. The Debtors agree to use good faith efforts to recover any portion of the Remaining Amounts that are due to Calyon, if any. The Debtors agree not to settle Remaining Amount claims without consulting Calyon. Calyon retains the right to object to any such settlement that does not result in payment in full to Calyon of Remaining Amounts that Calyon asserts are owed and have not been paid to Calyon. The Parties request Court authority to pay or direct that such Remaining Amounts be paid to Calyon upon agreement by the Debtors, Calyon and the Committee that payment to Calyon is appropriate, but such authority shall be only to the extent that the Debtors currently have possession of such funds and only to the extent that the Debtors or their estates do not have a competing interest in such funds. Upon the Stipulation and Order becoming a final, non-appealable order, the Parties are authorized to pay or direct that Remaining Amounts be paid to Calyon upon agreement by the Debtors, Calyon and the Committee that payment to Calyon is appropriate. The claims, rights and defenses of Calyon and the Debtors with respect to the Remaining Amounts, or payment thereof, are expressly reserved.

## RELIEF REQUESTED

27.    By this Motion, the Debtors respectfully request entry of an order approving the Stipulation pursuant to Bankruptcy Rule 9019(a).

## BASIS FOR RELIEF REQUESTED

28.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

29.     In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

30.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved.  The four enumerated factors are:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

31.     The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389.  The bankruptcy court should not substitute its judgment for that of the debtor.  See In re Neshaminy Office Building Associates, 62 B.R. at 803.  The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the

range of reasonableness.  See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert.

denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296

(stating that "the court does not have to be convinced that the settlement is the best possible

compromise.  Rather, the court must conclude that the settlement is within the reasonable range

of litigation possibilities.") (internal citations and quotations omitted).

32.    The Debtors respectfully request that the Court approve the Stipulation

because the Stipulation lies well above the lowest point in the range of reasonable potential

litigation possibilities.  The Stipulation resolves potentially millions of dollars of claims that

would otherwise be asserted against the Debtors by Calyon and against Calyon by the Debtors.

In fact, it would be difficult, time consuming, costly, and uncertain that litigation over the

Parties' respective rights and obligations regarding the Returned Wires, P&I Payments, Calyon

Received Funds, Calyon Owned Funds and Remaining Amounts would yield a more favorable

outcome for the Debtors.   Furthermore, the Stipulation was the product of significant and

lengthy discussions and negotiations between the Debtors, Calyon, BofA and the Committee.  In

addition, each of the applicable Martin factors weigh in favor of approving the Stipulation.

Accordingly, the Stipulation should be approved pursuant to Bankruptcy Rule 9019.

**A.    The Probability Of Success In Litigation**

33.    As with all litigation, the probability that the Debtors will prevail in

litigating the Funds Motion and the other disputes with Calyon which are resolved in the

Sipulation is uncertain.  Absent the Stipulation, the disputes between the Debtors and Calyon

regarding Returned Wires, P&I Payments, Calyon Received Funds, Calyon Owned Funds and

Remaining Amounts would have to be litigated before the Court with no assurances of a

favorable outcome.  Rather, the resolution of these disputes with Calyon under the terms of the

Stipulation, without the need for further litigation, is a favorable outcome because it will save the Debtors significant time and expense in such litigation.

**B.    The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It**

34.    The Stipulation satisfies the second factor in <u>Martin's</u> four-factor test as litigating the Funds Motion and the other disputes with Calyon which are resolved in the Sipulation, which involve complex legal issues, would be expensive and undoubtedly involve extensive discovery. Moreover, litigating the such issues would unduly delay certain relief the Debtors seek in these cases – namely, the "unfreezing" of certain of the Debtors' DB and BONY accounts. Pursuant to the Stipulation, the Parties have agreed to the release of the frozen accounts and thereby request that the Court direct DB and BONY to transfer certain of the frozen funds to Calyon or the Debtors. The release of these frozen funds directly benefits the Debtors, their estates and creditors, as it eliminates the need for the Debtors to file a complaint against DB and BONY seeking the release of these funds.[5]

**C.    The Paramount Interest Óf Creditors**

35.    Entry into the Stipulation serves the paramount interest of creditors of the Debtors. In fact, the Committee, who was apprised of the status and substance of the negotiations, has agreed not to object to the Stipulation. The Stipulation's resolution of the Funds Motion and other disputes with Calyon represents a savings for the creditors by obviating further litigation and any discovery attendant thereto, thereby saving the expenses attendant to such litigation. Moreover, pursuant to the Stipulation, Calyon has agreed to waive

---

[5]    A number of the Debtors' bank accounts remain frozen. The Stipulation does not cover all of the frozen accounts nor the funds therein. Because the Stipulation does not resolve all of the frozen accounts, the Debtors submit that other litigation is required in connection with such frozen accounts, or in connection with amounts that have been removed from such accounts.

$2,729,164.57 in claims it may have against certain of the frozen funds.  If Calyon had not

agreed to waive those claims, the Debtors would have been forced to litigate such issues,

including by filing an action against Calyon seeking amounts Calyon swept from certain of the

Debtors' bank accounts or filing an action to release frozen funds.  The waiver of such claims,

and the negation of additional litigation, serves the paramount interests of creditors.  In sum, the

third factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the

Stipulation.

### D.    The Likely Difficulties In Collection

36.    Finally, the fourth factor enunciated by the Third Circuit in Martin is

satisfied.  As noted above, the Parties have agreed to the release of certain frozen accounts and,

pursuant to the Stipulation, request that the Court direct the transfer of certain of the frozen funds

to Calyon or the Debtors.  The release of these frozen funds directly benefits the Debtors, their

estates and creditors, as it eliminates the need for the Debtors to file a complaint against DB and

BONY seeking the release of these funds.[6]  Stated differently, the likely difficulties in collecting

the frozen funds are reduced by the agreements contained in the Stipulation.

### E.    Summary

37.    The settlement of the Funds Motion and the other disputes embodied in

the Stipulation:  (i) is fair and equitable; (ii) represents a settlement that rests well above the

lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense,

delay, inconvenience and uncertainty that would attend any litigation of the such issues; and (iv)

advances the paramount interests of creditors by adding value, as a matter of certainty, to the

---

[6]    See footnote 5.

Debtors' estate.  Therefore, the Stipulation satisfies Bankruptcy Rule 9019 and should be approved by the Court.

## NOTICE

38.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A.; (iv) Counsel to the Agent for the Debtors' Postpetition Lender; (v) counsel to Calyon; (vi) counsel to Deutsche Bank; (vii) counsel to Bank of New York; (viii) counsel to JP Morgan Chase Bank, N.A.; (ix) counsel to Natixis Real Estate Capital Inc.; (x) North Fork Bank; and (xi) counsel to all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in the form attached hereto as Exhibit A, (i) approving the Stipulation pursuant to Bankruptcy Rule 9019(a), and (ii) granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
      April 11, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Sean M. Beach (No. 4070)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession