```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


IN RE:                            )  Chapter 11
                                  )
AMERICAN HOME MORTGAGE            )  Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware        )
corporation, et al.,             )
                                  )  Wilmington, Delaware
             Debtor.              )  April 17, 2008
                                  )  12:00 p.m.


                        TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE CHRISTOPHER SONTCHI
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtor:                       JOHN T. DORSEY, ESQUIRE
                                  ROBERT S. BRADY, ESQUIRE
                                  Young, Conaway, Stargatt
                                  & Taylor, LLP
                                  The Brandywine Building
                                  1000 West Street
                                  17ᵗʰ Floor
                                  Wilmington, Delaware   19801

For Bank of America:              MYRON KIRSCHBAUM, ESQUIRE
                                  Kaye Scholer
                                  425 Park Avenue
                                  New York, New York  10022

Audio Operator:                   LESLIE MURIN

Transcribed by:                   DIANA DOMAN TRANSCRIBING
                                  P. O. Box 129
                                  Gibbsboro, New Jersey  08026
                                  Off: (856) 435-7172
                                  Fax: (856) 435-7124
                                  Email:  dianadoman@comcast.net




Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

2

I N D E X

THE COURT:

Ruling                          3, 14

The Court - Ruling                                              3

1          CLERK:  All rise.

2          THE COURT:  Please be seated.  Thank you.  Sorry for

3    the delay in starting.  When last I left you, we had the

4    debtor's motion under Rule 52(C) to -- basically for judgment

5    for the Bank of America's failure -- or purported failure to

6    meet its prima facia case to establish cause for relief from

7    the automatic stay under 362(D)(1).

8          We -- I took the time last evening and this morning

9    to go over the record in some detail, to reread the briefs, to

10   read the cases.  And, I am prepared to rule on that at this

11   time, unless anyone has anything further before I start.  All

12   right.

13         Under 362(D)(1), the Court shall lift the automatic

14   stay for cause, including lack of adequate protection.  And,

15   under 362(G), a moving party has the burden of proof on all

16   issues relating to a motion under 362(D)(1).  The carve out

17   under 362(G) that puts the burden on the movant deals with the

18   issue of 362(D)(2).

19         Nonetheless, the moving party first must establish

20   its prima facia case.  And, failure to do so will result in

21   denial of the requested relief.  I previously in a -- in an

22   opinion in In re. RNI Wind Down Corporation, 348 B.R. 286.

23         In this case, -- I'm sorry -- as an aside, my

24   handwriting is terrible, so I'll do the best I can.  In this

25   case, the movant has presented evidence that the collateral at

The Court - Ruling                                        4

 1    issue, the pool of approximately 3400 mortgage loans with a

 2    current unpaid principle balance of approximately $580M, is

 3    diminishing in value because of a continuing decline in the

 4    quality of the loan portfolio and the general -- and general

 5    market conditions in the secondary mortgage market.

 6              The movant did not present any evidence except for

 7    the proffered Johnson Exhibit 23 -- which we described and

 8    discussed later -- as to the value of the collateral on the

 9    petition date, the date the bank filed the motion, or any other

10    date.   In other words, while the evidence supports at least a

11    prima facia finding of decline, it cannot support a finding as

12    to where the value was, where it is now, and where it will be

13    tomorrow.   Moreover, there was no evidence as to the rate of

14    the decline.

15              Now, the bank relies on a line of cases starting with

16    In re. Elmira Litho, Inc., 174 B.R. 892 out of the Southern

17    District of New York, 1994, to argue that it has met its prima

18    facia case because all that is required to be shown is "a

19    decline in value or the threat of a decline in value.  And,

20    that's from the Elmira decision at page 902.

21              This Court disagrees with the holding of Elmira and

22    its progeny on this point.  Evidence of a decline in the value

23    of collateral securing a debt without more is insufficient as a

24    matter of law to establish cause to lift the automatic stay

25    under Section 362(D)(1) of the Bankruptcy Code.

1          Now, before I sort of go on to why I think that's

2     true, let me back up and discuss Elmira a little bit because I

3     -- I'm not sure Elmira quite stands for the proposition cited

4     for and often relied upon, interestingly enough because I don't

5     think the Elmira Court followed its own holding.  First, even

6     under Elmira, the bank has failed to establish a threat of

7     diminution of value of the kind described in that case.  The

8     Elmira Court defined, in footnote 9, such a "threat" to include

9     failure to maintain insurance or keep the property in repair.

10    There's no such allegation here.

11         So, at best, the -- under Elmira, the bank can rely

12    on actual diminution of value.  But, as we said -- or as I

13    said, there is evidence that the collateral is diminishing in

14    value that has been offered.

15         Second, in Elmira, the Court stated that the prima

16    facia case could be satisfied by quantitative -- which is

17    preferred -- or qualitative evidence.  Importantly, the Elmira

18    Court states that the inference of value under a qualitative

19    showing "loses any force" if there is evidence of "substantial

20    post-petition payments".

21         Let me just stop there, because what that means is

22    that a movant fails to meet its prima facia case of cause based

23    upon a decline in collateral value if it is receiving adequate

24    protection.  But, the Elmira Court just told us that the

25    secured creditor lacks adequate protection if the collateral is

The Court - Ruling                                      6

1    declining in value.  So, which is it?

2              Indeed, Elmira goes on to deny the stay relief motion

3    for failure to make a prima facia case based on decline in

4    value because the creditor is receiving adequate protection

5    payments while, at the same time, criticizing the equity

6    cushion cases.  Those cases require a creditor show us part of

7    its prima facia case why its equity cushion does not provide

8    adequate protection.  Frankly, I find the Elmira decision

9    schizophrenic.  And, I think this discussion at least shows on

10   a preliminary level the flaws and inconsistency in the Elmira

11   focus solely on diminution of value.

12             Rather, if the cause being asserted by a movant is

13   based on the value of the collateral, then the focus has to be

14   on lack of adequate protection which is a type of cause listed

15   in the statute.  And, as an aside, adequate protection is,

16   again, a type of cause.

17             There are other causes -- they're not defined or

18   listed -- that might support a finding of relief of automatic

19   stay under 362(D)(1).  The record in this case I don't think

20   would support any other finding of cause other than one based

21   on diminution of value.

22             I can think of an example of basically a debtor

23   that's acting in an irresponsible way, debtors whose business

24   plan is to take the collateral to Atlantic City and put it on

25   red or black.  That may be something a secured creditor might

The Court - Ruling                                    7

1     find to be an appropriate way to try to maximize value.  But,

2     even -- even an over-secured creditor who's receiving adequate

3     protection payments doesn't need to sit still for irresponsible

4     behavior by a debtor with its collateral.  That's an aside.

5     The focus here is -- as I said, is value or decline in value.

6           Going back to the holding, a simple illustration I

7     think supports the conclusion that adequate protection needs to

8     be the focus.  If a creditor is over-secured, a decline in the

9     value of the collateral alone will not require adequate

10    protection.  Such a creditor is entitled to receive post-

11    petition interest, for example, but not the opportunity cost of

12    its investment under the Timbers decision or protection from

13    the decline of the collateral value.

14          Remember, lenders are not owners.  In the end, they

15    are entitled to one thing, payment of their loan.  If decline

16    in value were all that is required to grant stay relief to an

17    over-secured creditor, then adequate protection or lack thereof

18    would irrelevant, which is directly at odds with the statutory

19    scheme.

20          Even an over-secured creditor with an equity cushion,

21    however, can establish cause from relief under 362(D)(1).  But,

22    it must include evidence of why the equity cushion is

23    inadequate as part of its prima facia case because it is

24    otherwise presumptively receiving adequate protection.  And, I

25    think the equity cushion cases criticized unfairly by Elmira

1    hold as such.

2            If a secured creditor is under-secured, then a

3    decline in the collateral value does constitute lack of

4    adequate protection.  That's -- the focus must be on lack of

5    adequate protection.  And, a key point of that analysis is what

6    is the value of the collateral and the amount of the debt.

7            Without that, we cannot determine what adequate

8    protection may be required, the lack of which would constitute

9    cause.  Moreover, under the statute and case law, the

10   appropriate period of time to measure value for determining

11   what type of adequate protection is required is the time when

12   the right to adequate protection arises, in this case the date

13   of the filing of the motion.

14           Thus, in order to establish a prima facia case of

15   cause for stay relief in this case, Bank of America was

16   required to present some evidence of the value of the

17   collateral on the motion date and either, one, that the value

18   of the collateral had declined since that date if the bank is

19   under-secured or, two, that the equity cushion is insufficient

20   or the bank is not receiving adequate protection it is entitled

21   to, such as interest, if the bank is over-secured.

22           The evidence need not be in the form of a formal

23   evaluation opinion.  For example, it could be established by

24   inference.  Moreover, it need not meet the burden of

25   persuasion.  Nonetheless, some evidence beyond a mere scintilla

The Court - Ruling                                          9

1      is required, and the bank did not meet that burden here to

2      establish its prima facia case.

3                Now, I'll turn to Johnson 23 which was moved into

4      evidence as -- or was sought to be moved into evidence as

5      BofA-53.  At the conclusion of its case in chief, BofA moved

6      BofA-53 into evidence.  That document is a series of what BofA

7      purports to be valuations of many other -- excuse me --

8      valuations of, among other things, the collateral at issue

9      created by representative or officer of the debtor.

10                The last valuation in that package is as of January

11     31st, which is prior to the filing of the motion in late

12     February 2008.  I'm sorry.  The last valuation is as of January

13     31st, 2008, which is prior to the filing of the motion in late

14     February and is in an amount that would render BofA under-

15     secured.

16                The debtors object to the admission of the document

17     into evidence because the document was not identified pre-

18     petition by BofA as "an exhibit that will be presented in each

19     party's case in chief".  That language is contained in a

20     stipulation submitted by the parties prior to the hearing and

21     approved by the Court.  This Court will enforce the parties'

22     agreement and exclude admission of BofA-53.

23                BofA made a litigation decision to proceed under

24     Section 362(D)(1) and the Elmira case.  That is a certainly a

25     rational basis to proceed.  And, has this Court adopted the

The Court - Ruling                              10

1    Elmira holding, it would have been a successful strategy.  This

2    Court did not adopt that holding.  BofA is prejudiced, if at

3    all, by its own decision and strategy.  The debtors which

4    relied on the stipulation would be prejudiced by allowing BofA

5    to change its strategy in the middle of trial.

6              Litigation, even bankruptcy litigation, is always a

7    balance between the need for a speedy resolution and the

8    demands of due process.  Indeed, given the type of assets,

9    liabilities, and business decisions before the Court in

10   Bankruptcy Court, that balance, I think, is more often

11   difficult to maintain than in more traditional standards of

12   litigation.  Indeed, I am asked, I think, on a daily basis to

13   weigh those factors.

14             In this case, if was Bank of America pushing for

15   speed.  The party asking for an expedited schedule can't be

16   heard to complain when that schedule cuts against them.  This

17   goes to the prejudice point that the debtors have in connection

18   with trying to prepare for the hearing and being allowed to

19   rely on the agreement contained in the stipulation in so

20   preparing.

21             Finally, even were the Court to admit BofA-53 in

22   BofA's case in chief, I have serious doubt as to whether it

23   would alter the result.  The time period of the last valuation

24   is prior to the date of the stay relief motion.  Even if one

25   would infer the value of collateral in late February based on a

The Court - Ruling / Colloquy                    11

1   valuation a month previous, there was no testimony offered to

2   explain the exhibit.  Without an explanation as to the basis,

3   source, and methodology of the valuation, even though it was a

4   document of the debtors, the evidence is insufficient, even as

5   an informal valuation, to establish a prima facia case for

6   value.

7          So, for the foregoing reasons, the Court will grant

8   the debtor's motion under Rule 52(C) and deny the stay relief

9   motion.

10          MR. KIRSCHBAUM:  Your Honor, --

11          THE COURT:  Yes.

12          MR. KIRSCHBAUM:  -- if I may.  We did mention

13   yesterday, before Your Honor took the motion to dismiss under

14   advisement, that we would like to proffer -- if Johnson 53 was

15   not going to be admitted into evidence, we would like to

16   proffer Johnson's deposition testimony that discusses the

17   creation of Johnson 53.  And, we'd like to proffer that into

18   the record.

19          MR. DORSEY:  We would oppose that proffer, Your

20   Honor.  They closed their case.  They said their evidence was

21   in.  It's too late.

22          MR. KIRSCHBAUM:  Your Honor, I believe, at the time

23   we closed our case, there was just a proviso that I might want

24   to introduce this testimony based on the way Your Honor reacted

25   to exhibit 53.

Colloquy                                                    12

1        MR. DORSEY:  I don't believe that's true, Your Honor.

2   I believe they closed their case.  And, then afterwards, when

3   they realized they had the risk of not getting this document

4   in, they wanted to go back and try and use Mr. Johnson's

5   deposition.  Their case is closed, Your Honor.  It's too late.

6        THE COURT:  I'd have to -- I'd have to listen to the

7   tape again from yesterday to know exactly whether the case was

8   closed or not.

9        MR. KIRSCHBAUM:  Your Honor, I think, even if the

10  words were said we rest subject to exhibit 53, clearly we

11  raised Exhibit 53 before the other side began their case, which

12  still hasn't happened.  I don't believe that we should be

13  precluded from offering this testimony because we might have

14  meant -- we -- while we were talking about Exhibit 53, we

15  didn't talk about this deposition testimony until five seconds

16  later.

17        I don't remember exactly how the tape -- what the

18  tape will show.  But, I know that we raised this very quickly

19  after Your Honor indicated that you would have to take under

20  advisement the admissibility of Exhibit 53, which we did

21  proffer as part of our case in chief.

22        MR. DORSEY:  That still doesn't resolve the problem

23  that they have, Your Honor, that they didn't identify Exhibit

24  53 in their pretrial list of exhibits, which Your Honor has

25  already ruled excludes that from evidence.

Colloquy                                    13

1          THE COURT:  Yeah, why -- why would I admit that?

2     It's either an exhibit or its testimony.

3          MR. KIRSCHBAUM:  It is testimony.

4          THE COURT:  All right.  Did you identify Mr. Johnson

5     as a fact witness?

6          MR. KIRSCHBAUM:  No, we did not, but they identified

7     him.  I do not believe that we were required to identify him as

8     a fact witness.  We weren't going to call him in our case in

9     chief.  We never discussed --

10          THE COURT:  Well, but now you want to call him in his

11     (sic) case in chief by his deposition.

12          MR. KIRSCHBAUM:  I want to use his deposition

13     transcript.  We never discussed deposition designations.  It's

14     not part of any stipulation.  The deposition of a party can be

15     used for any purpose.

16          THE COURT:  Well, --

17          MR. KIRSCHBAUM:  I believe that --

18          THE COURT:  -- is Mr. Johnson in the room?

19          MR. KIRSCHBAUM:  Yes, he is.

20          THE COURT:  Well, why would I allow his deposition

21     testimony anyway?  He's in the room.

22          MR. KIRSCHBAUM:  Because Mr. Johnson -- because Mr.

23     Johnson is an officer of a party and an off -- the deposition

24     of an officer --

25          THE COURT:  Can be used --

Colloquy / The Court - Ruling                          14

1          MR. KIRSCHBAUM:  -- of a party --

2          THE COURT:  -- for any purpose.

3          MR. KIRSCHBAUM:  -- can be used for any purpose even

4    if the party is present.

5          THE COURT:  Including in your case in chief?

6          MR. KIRSCHBAUM:  Includ -- absolutely including the

7    case in chief.

8          MR. BRADY:  The other issue, Your Honor, is using Mr.

9    Johnson's testimony would be in direct contravention of --

10   their interrogatory response was that they're not taking the

11   position that they are under-secured.  And, if it --

12         THE COURT:  Yeah.

13         MR. BRADY:  -- did say they were under-secured, they

14   would give us notice of that so that we could take additional

15   discovery.

16         THE COURT:  Well, I -- I'm not going to -- I'm not

17   going to consider the deposition testimony because -- it's

18   either one of two things.  It gets in as a -- testimony of a

19   witness or it gets in as an exhibit, and both of which were --

20   and it would be in support of the case in chief, both of which

21   were to be identified prior to the case -- prior to trial.

22         I think the same reasons for which I preclude the --

23   I think it comes down to a change of trial strategy during

24   trial, and I think it's unfair.  And, it is what it is.  I

25   mean, I don't fault BofA for your trial strategy.  You

The Court - Ruling                                   15

1    certainly made a rational decision.  But, I'm not going to

2    allow you to -- to change your strategy mid-trial.  I think

3    it's unfair and prejudices the debtor.

4              MR. KIRSCHBAUM:  Can I make a proffer for the record,

5    Your Honor?

6              THE COURT:  Yes.

7              MR. KIRSCHBAUM:  Okay.  If permitted, we would

8    proffer --

9              THE COURT:  Why don't you do it at the -- for your

10   appeal purposes, do it at the microphone to make sure they can

11   read the transcript.

12             MR. KIRSCHBAUM:  The proffer would be Mr. Johnson's

13   testimony at pages -- page 2, line 14 to page 3, line 1; pages

14   71, line 2 to 71, line 20; page 131, line 20 to 132, line 7;

15   page 133, line 4 to page 133, line 13; page 133, line 22 to

16   page 136, line 3; page 136 line 12 through 136, line 19; page

17   138, line 9 to 138, line 22; and page 139, line 8 to 139, line

18   21.  Thank you, Your Honor.

19             THE COURT:  And, for the previous reason, the Court

20   will not allow the admission of that evidence.  Mr. Brady, will

21   you submit an order?

22             MR. BRADY:  We will, Your Honor.

23             THE COURT:  All right.  Anything further for today?

24   All right.  Thank you very much.  The hearing is adjourned.

25                              * * * * *

16

1

## C E R T I F I C A T I O N

2

3      I, Frances L. Maristch, court approved transcriber,

4 certify that the foregoing is a correct transcript from the

5 official electronic sound recording of the proceedings in the

6 above-entitled matter.

7

8

9 _____          _____

10 DATE                            FRANCES L. MARISTCH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25