# EXHIBIT 1

Stipulation

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC.,<br>et al.,<br><br>Debtors. | § § § § § § § | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered) |
| CALYON NEW YORK BRANCH<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME<br>MORTGAGE CORP., AMERICAN HOME<br>MORTGAGE SERVICING, INC.,<br>AMERICAN HOME MORTGAGE<br>ACCEPTANCE, INC., and<br>AMERICAN HOME MORTGAGE<br>INVESTMENT CORP.,<br><br>Defendants. | § § § § § § § § § § § § § § § | Adversary No. 07-51704 |

### STIPULATION AND ORDER BETWEEN THE DEBTORS AND
### CALYON NEW YORK BRANCH, AS ADMINISTRATIVE AGENT

Plaintiff Calyon New York Branch, as Administrative Agent ("Calyon" or "Plaintiff") under the Repurchase Agreement dated November 21, 2006 (the "Repurchase Agreement"),[1] and Defendants American Home Mortgage Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Acceptance, Inc., and American Home Mortgage Investment Corp. (collectively, the "Debtors" or "Defendants," and with Calyon, the "Parties"), by and through their respective counsel, hereby stipulate and agree as follows:

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Repurchase Agreement.

1. On March 7, 2008, Calyon filed its motion [Adv. D.I. 95] (the "Motion") in this adversary proceeding seeking to obtain certain funds. Based on the ongoing settlement discussions between the Parties, the Debtors did not formally respond to the Motion; however, the Debtors dispute many of the allegations and assertions therein.

2. Calyon and the Debtors have engaged in negotiations regarding the relief requested in the Motion; and the Official Committee of Unsecured Creditors (the "Committee") has been informed about the status and substance of these negotiations. The Committee has agreed not to object to the agreement set forth in this Stipulation and Order.

3. In addition, Bank of America, N.A., as administrative agent ("BofA") has been informed about the status and substance of the negotiations between Calyon and the Debtors regarding the relief requested in the Motion. BofA has agreed not to object to the agreement set forth in this Stipulation and Order subject to the terms of the separate Stipulation and Order between BofA and Calyon submitted to the Court under Certification of Counsel on April 8, 2008.

## I. Returned Wires

4. Between the period from July 24, 2007 to August 28, 2007, the Debtors received by wire transfer certain funds totaling approximately $12,055,281.91 (hereinafter referred to as the "Returned Wires").

5. The Returned Wires result from the return of funds from settlement agents in connection with mortgage loans that never closed. Calyon asserts that the Returned Wires are on account of funds Calyon advanced under the Repurchase Agreement to fund Mortgage Loans that never closed. Nothing herein shall be construed as the Debtors consenting to any interpretation by Calyon of the Repurchase Agreement; however, the Debtors agree that the

Returned Wires should be resolved as set forth herein as a result of the specific facts and circumstances of this settlement.

6. The Returned Wires were not returned to Calyon and were initially wired to or deposited in the following bank accounts, including without limitation, (i) Deutsche Bank Trust Company Americas ("Deutsche Bank") (Account Number 00-449-393) (the "DB 393 Account") and (Account Number 00-446-432) (the "DB 432 Account"); (ii) North Fork Bank, a division of Capital One, N.A. ("North Fork") (Account Number 3164073044) (the "North Fork Account"); (iii) JPMorgan Chase Bank, N.A. ("JPM") (Account Number 000000730147717) (the "JPM 717 Account"); and (iv) Bank of New York ("BONY") (Account Number 890-0553944) (the "BONY Account"). The DB and BONY accounts referenced in this Stipulation were frozen by the respective financial institutions.

### A. The DB 393 Account

7. The DB 393 Account contains $3,923,665.28 of Returned Wires. The Parties request Court approval directing Deutsche Bank to transfer $3,923,665.28 from the DB 393 Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) Deutsche Bank is directed to transfer $3,923,665.28 from the DB 393 Account to Calyon within five (5) business days.

### B. The DB 432 Account

8. The DB 432 Account contains $214,890.09 of Returned Wires. The Parties request Court approval directing Deutsche Bank to transfer $214,890.09 from the DB 432 Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order,

(i) the Debtors waive and release any claim to such funds; and (ii) Deutsche Bank is directed to transfer $214,890.09 from the DB 432 Account to Calyon within five (5) business days.

### C. The North Fork Account

9. The North Fork Account contains $4,968,731.20 of Returned Wires. The Debtors will instruct North Fork to transfer $4,968,731.20 from the North Fork Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) North Fork is directed to transfer $4,968,731.20 from the North Fork Account to Calyon within five (5) business days.

### D. The JPM 717 Account

10. By information and belief, the JPM 717 Account received $181,229.91 of Returned Wires. The JPM 717 Account currently has a balance of $0.00.

11. The Debtors agree to use commercially reasonable efforts for a liquidating debtor in bankruptcy to trace the $181,229.91 of Returned Wires deposited into the JPM 717 Account by June 2, 2008. The Debtors agree to use good faith efforts to recover the $181,229.91 of Returned Wires deposited into the JPM 717 Account. The Debtors agree that if they recover any funds on account of such $181,229.91 of Returned Wires, the Debtors will pay the $181,229.91, or any portion of such funds recovered, to Calyon. The Debtors agree not to settle such claim without consulting Calyon. Calyon retains the right to object to any such settlement that does not result in payment in full to Calyon of $181,229.91. Calyon also retains all rights and claims to the $181,229.91 of Returned Wires against any non-Debtors, and the Debtors agree to use reasonable efforts to cooperate with Calyon in Calyon's efforts to recover such funds. Upon the

request of Calyon, and without further order of the Bankruptcy Court, the Debtors agree to assign their rights to the $181,229.91 of Returned Wires to Calyon.

### E. The BONY Account

12. The BONY Account contains $1,646,772.16. Calyon submits that it is owed $1,938,622.57 from the BONY Account based on Returned Wires deposited into the BONY Account. Prior to August 6, 2007 (the "Petition Date"), the Debtors allege that BofA inappropriately swept funds from the BONY Account (the "BONY Account Swept Funds").

13. The Parties request Court approval directing BONY to transfer the funds in the BONY Account, within five (5) business days of the Stipulation and Order becoming a final, non-appealable order, as follows: (i) $930,703.68 to Calyon, and (ii) the remaining $716,068.48 to the Debtors to be held in escrow pending further order of the Court or agreement among the parties that have asserted or may assert an interest in such remaining funds. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to the $930,703.68 to be paid to Calyon; and (ii) BONY is directed to transfer the funds in the BONY Account, within five (5) business days, as follows: (a) $930,703.68 to Calyon, and (b) the remaining $716,068.48 to the Debtors to be held in escrow pending further order of the Court or agreement among the parties that have asserted or may assert an interest in such remaining funds.

14. The Debtors agree to use good faith efforts to recover the $1,007,958.89 of BONY Account Swept Funds that are owed to Calyon, including instituting an action in Bankruptcy Court and prosecuting such action to conclusion, if necessary, to obtain such BONY Account Swept Funds. The Debtors agree that if they recover any portion of the BONY Account Swept Funds, the Debtors will pay Calyon the first $1,007,958.89 of such funds. The Debtors agree not to settle such claim without consulting Calyon. Calyon retains the right to object to

any such settlement that does not result in payment in full to Calyon of $1,007,958.89. Calyon also retains all rights and claims to the $1,007,958.89 of BONY Account Swept Funds against any non-Debtors, and the Debtors agree to use reasonable efforts to cooperate with Calyon in Calyon's efforts to recover such funds. Upon (i) the request of Calyon or (ii) if the sole remaining issue as to the BONY Account Swept Funds is the $1,007,958.89 then at the option of the Debtors, and without further order of the Bankruptcy Court, the Debtors shall assign, without recourse, to Calyon and Calyon shall accept the Debtors' rights in and to the $1,007,958.89 of BONY Account Swept Funds and Calyon shall assume the responsibility and cost for commencing or, if commenced, prosecuting, such rights against any non-Debtors.

15. Calyon waives and releases any claim it has to the $716,068.48 identified above that is to be transferred to an escrow account pursuant to this Stipulation and Order.

F. **Unidentified Funds**

16. The Parties have not determined whether $828,102.86 of unidentified adjourned loan funds (the "Unidentified Funds") were transferred from closing agents. The Debtors agree to use commercially reasonable efforts for a liquidating debtor in bankruptcy to trace the $828,102.86 of Unidentified Funds and to identify to Calyon the closing agents which were to transfer the Unidentified Funds by June 2, 2008. The Debtors agree to use good faith efforts to recover the $828,102.86 of Unidentified Funds. The Debtors agree that if they recover any funds on account of the $828,102.86 of Unidentified Funds, the Debtors will pay the $828,102.86, or any portion of such funds recovered, to Calyon. The Debtors agree not to settle Unidentified Funds claims without consulting Calyon. Calyon retains the right to object to any such settlement that does not result in payment in full to Calyon of $828,102.86. Calyon also retains all rights and claims to the $828,102.86 of Unidentified Funds against any non-Debtors, and the

Debtors agree to use reasonable efforts to cooperate with Calyon in Calyon's efforts to recover such funds. Upon the request of Calyon, and without further order of the Bankruptcy Court, the Debtors agree to assign their rights to the $828,102.86 of Unidentified Funds to Calyon.

17. Calyon agrees that upon the Stipulation and Order becoming a final, non-appealable order, with respect to (i) the $181,229.91 of Returned Wires deposited in the JPM 717 Account; (ii) the $1,007,958.89 of BONY Account Swept Funds Calyon asserts it is owed; and (iii) the $828,102.86 of Unidentified Funds that may or may not have been transferred from closing agents (collectively, the "Unpaid Funds"), in addition to the right to enforce the provisions of this Stipulation and Order, which Calyon retains, Calyon's only rights and claims against the Debtors for the Unpaid Funds are general unsecured claims in connection with the Repurchase Agreement. Without the need for further court order, any general unsecured claim for Unpaid Funds shall be reduced by the amount ultimately recovered by Calyon with respect to the Unpaid Funds.

## II. P&I Payments

18. In addition to the Returned Wires, the Debtors also received funds which constitute principal and interest payments (the "P&I Payments") received by the Debtors pursuant to the Repurchase Agreement.

19. The P&I Payments were initially deposited by the Debtors at, including without limitation, JPM (Account Number 000000730147816) (the "JPM 816 Account") and (Account Number 000000730147808) (the "JPM 808 Account"); and Deutsche Bank (Account Number 430617) (the "DB 616 Account").

7

### A. The JPM 816 Account

20. The JPM 816 Account contains $63,835.82 of P&I Payments. The Parties request Court approval directing JPM to transfer $63,835.82 from the JPM 816 Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) JPM is directed to transfer $63,835.82 from the JPM 816 Account to Calyon within five (5) business days.

### B. The JPM 808 Account

21. The JPM 808 Account contains $1,214,655.14 of P&I Payments. The Debtors and Calyon dispute whether $415,752.47 of P&I Payments belongs to the Debtors or Calyon (the "Disputed P&I"). The Parties request Court approval directing JPM to transfer the funds in the JPM 808 Account, within five (5) business days of the Stipulation and Order becoming a final, non-appealable order, as follows: (i) $798,902.67 to Calyon, and (ii) the remaining $415,752.47 to the Debtors to be held in escrow for the benefit of the Parties, in an interest bearing account, pending further order of the Court or agreement among the Parties as to the distribution of such funds. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to the $798,902.67 paid to Calyon; and (ii) JPM is directed to transfer from the JPM 808 Account within five (5) business days: (i) $798,902.67 to Calyon, and (ii) the remaining $415,752.47 to the Debtors to be held in escrow for the benefit of the Parties, in an interest bearing account, pending further order of the Court or agreement among the Parties as to the distribution of such funds.

22. The Debtors and Calyon, respectively, retain all rights and claims to the $415,752.47 of Disputed P&I to be transferred from the JPM 808 Account to an interest bearing

escrow account, including without limitation the right to resolve such rights and claims through the Motion. The Debtors and Calyon agree to defer pursuing such rights and claims until no earlier than May 1, 2008. The Parties consent and agree that the Disputed P&I is being transferred from the JPM 808 Account for administrative convenience, notwithstanding the fact that certain portions of the Disputed P&I are currently deposited in the JPM 816 Account. As such, notwithstanding anything to the contrary herein, the Debtors rights are fully reserved with respect to asserting that any portions of the P&I Payments are Disputed P&I.

### C.  The DB 617 Account

23. The DB 617 Account contains $645,533.36 of P&I Payments. The Parties request Court approval directing DB to transfer $645,533.36 from the DB 617 Account to Calyon within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) the Debtors waive and release any claim to such funds; and (ii) Deutsche Bank is directed to transfer $645,533.36 from the DB 617 Account to Calyon within five (5) business days.

### III.  Miscellaneous Funds

24. Prior to Petition Date, certain funds were wired to or deposited in various accounts, as follows: (i) $1,120,570.71 into certain accounts which Calyon swept prior to the Petition Date; and (ii) $892,524.99 into the DB 617 Account which still remains in the DB 617 Account (collectively, the "Calyon Received Funds"). The Calyon Received Funds represent funds that do not belong to Calyon.

25. Prior to the Petition Date, certain funds were wired to or deposited in various accounts, as follows: (i) $243,655.66 into an account at Deutsche Bank (Account Number 381528) (the "DB 528 Account") and (ii) $5,000.00 into an account at Deutsche Bank (Account

Number 380082) (the "<u>DB 082 Account</u>") (collectively the "<u>Calyon Owned Funds</u>"). The Calyon Owned Funds represent funds that belong to Calyon.

26. The Parties request Court approval directing that the (i) $243,655.66 from the DB 528 Account; (ii) $5,000.00 from the DB 082 Account; (iii) $892,524.99 from the DB 617 Account; and (iv) $871,915.44 from Calyon (collectively, the "<u>Miscellaneous Funds</u>") be transferred or paid into an escrow account maintained by the Debtors (the "<u>Miscellaneous Funds Escrow Account</u>"), within five (5) business days of the Stipulation and Order becoming a final, non-appealable order. Upon the Stipulation and Order becoming a final, non-appealable order, (i) Deutsche Bank is directed to transfer $243,655.66 from the DB 528 Account; (ii) Deutsche Bank is directed to transfer $5,000.00 from the DB 082 Account; (iii) Deutsche Bank is directed to transfer $892,524.99 from the DB 617 Account; and (iv) Calyon is directed to indefeasibly pay $871,915.44, to the Miscellaneous Funds Escrow Account within five (5) business days.

27. The Miscellaneous Funds in the Miscellaneous Funds Escrow Account shall be held pending further order of the Court or agreement of the parties that have or may assert an interest in such funds. Upon the transfer of the Miscellaneous Funds into the Miscellaneous Funds Escrow Account, (a) Calyon shall be released from any liability to any party that may assert an interest in the Calyon Received Funds or the Calyon Owned Funds; and (b) Calyon shall waive and release any claim to the Miscellaneous Funds, including the Calyon Owned Funds which claim is satisfied by reducing the amount of Calyon Received Funds being paid into the Miscellaneous Funds Escrow Account by Calyon.

28. Calyon asserts that it may be owed $334,407.99, which is comprised of (i) $90,427.62 of payments not identified by the Debtors to date; (ii) $1,805.11 of certain open items; (iii) $8,598.84 of balance differences in the reconciliations of Calyon and the Debtors; (iv)

$231,815.88 regarding a Mortgage Loan that was paid in full; and (v) $1,760.54 in payment differences in the reconciliations of Calyon and the Debtors (collectively, the "Remaining Amounts").

29. The Debtors and Calyon agree to use commercially reasonable efforts for a liquidating debtor in bankruptcy to determine by June 2, 2008 whether any portion of the Remaining Amounts are due to Calyon. The Debtors agree to use good faith efforts to recover any portion of the Remaining Amounts that are due to Calyon, if any. The Debtors agree not to settle Remaining-Amount claims without consulting Calyon. Calyon retains the right to object to any such settlement that does not result in payment in full to Calyon of Remaining Amounts that Calyon asserts are owed and have not been paid to Calyon. The Parties request Court authority to pay or direct that such Remaining Amounts be paid to Calyon upon agreement by the Debtors, Calyon and the Committee that payment to Calyon is appropriate, but such authority shall be only to the extent that the Debtors currently have possession of such funds and only to the extent that the Debtors or their estates do not have a competing interest in such funds. Upon the Stipulation and Order becoming a final, non-appealable order, the Parties are authorized to pay or direct that Remaining Amounts be paid to Calyon upon agreement by the Debtors, Calyon and the Committee that payment to Calyon is appropriate. The claims, rights and defenses of Calyon and the Debtors with respect to the Remaining Amounts, or payment thereof, are expressly reserved.

30. Except to the extent expressly provided herein, nothing herein shall affect the rights, claims, and defenses of any Party. Furthermore, nothing herein shall (i) prejudice the rights, claims, and defenses of any Party to the adversary proceeding styled Calyon New York

11
DB02:6719246.6                                    066585.1001

Branch v. American Home Mortgage Corp., *et al.* (Adv. Proc. 07-51704); or (ii) affect the

September Stipulation or the January Stipulation except as expressly provided herein.

31. The headings of the sections of this Stipulation and Order are inserted for

convenience only and are not part of this Stipulation and Order and do not limit or modify in any

way the terms or provisions of this Stipulation and Order and shall not affect the interpretation

thereof.

32. The Stipulation and Order, including the terms and obligations contained herein,

is subject to approval by the Bankruptcy Court and this Stipulation and Order becoming a final,

non-appealable order; *provided, however,* that the Debtors and Calyon shall use best efforts to

cause the Court to enter this Stipulation and Order. If the Stipulation and Order is not approved

or does not become a final, non-appealable order, then the Parties hereto revert to their pre-

Stipulation positions and the terms of this Stipulation and Order shall be inadmissible for any

purpose whatsoever.

33. This Stipulation and Order may be executed in one or more counterparts, each of

which shall be deemed an original, but all of which, when taken together, shall be one and the

same Stipulation and Order. A facsimile or .pdf of any party's signature to this Stipulation and

Order shall be treated as an original signature for all purposes of this Stipulation and Order and

shall be fully effective to bind such party to the terms of this Stipulation and Order.

12

Dated: Wilmington Delaware
April 11, 2008

| YOUNG, CONAWAY, STARGATT & TAYLOR, LLP | ECKERT SEAMANS CHERIN & MELLOTT LLC |
|---|---|
| /s/ signature | |
| Robert S. Brady (No. 2847) | Michael G. Busenkell (DE No. 3933) |
| John T. Dorsey (No. 2988) | Margaret F. England |
| Sean M. Beach (No. 4070) | 300 Delaware Avenue, Suite 1210 |
| The Brandywine Building | Wilmington, Delaware 19801 |
| 1000 West Street, 17th Floor | Telephone: (302) 425-0430 |
| Wilmington, Delaware 19801 | Facsimile: (302) 425-0432 |
| Telephone: (302) 571-6600 | |
| Facsimile: (302) 571-1253 | -and- |

-and-

Benjamin C. Ackerly
Jason W. Harbour (DE No. 4176)

QUINN, EMANUEL, URQUHART, OLIVER & HEDGES LLP
HUNTON & WILLIAMS LLP
Susheel Kirpalani
Riverfront Plaza, East tower
James C. Tecce
951 E. Byrd Street
51 Madison Avenue, 22nd Floor
Richmond, Virginia 23219-4074
New York, New York 10010
Telephone: (804) 788-8200
Telephone: (212) 849-7199
Telecopier: (804) 788-8218
Facsimile: (212) 849-7100

-and-

*Counsel to American Home Mortgage Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Investment Corp.; and American Home Mortgage Holdings, Inc.*

Peter S. Partee
Scott H. Bernstein
200 Park Avenue, 53rd Floor
New York, New York 100166-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

Counsel to Calyon New York Branch

Dated: Wilmington Delaware
April 11, 2008

| | |
|---|---|
| YOUNG, CONAWAY, STARGATT & TAYLOR, LLP | ECKERT SEAMANS CHERIN & MELLOTT LLC |

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Sean M. Beach (No. 4070)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

QUINN, EMANUEL, URQUHART,
OLIVER & HEDGES LLP
Susheel Kirpalani
James C. Tecce
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7199
Facsimile: (212) 849-7100

*Counsel to American Home Mortgage Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Investment Corp.; and American Home Mortgage Holdings, Inc.*

Michael G. Busenkell (DE No. 3933)
Margaret F. England
300 Delaware Avenue, Suite 1210
Wilmington, Delaware 19801
Telephone: (302) 425-0430
Facsimile: (302) 425-0432

-and-

Benjamin C. Ackerly
Jason W. Harbour (DE No. 4176)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East tower
951 E. Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

-and-

Peter S. Partee
Scott H. Bernstein
200 Park Avenue, 53rd Floor
New York, New York 100166-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

Counsel to Calyon New York Branch