**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| AMERICAN HOME MORTGAGE HOLDINGS, | : | Case No. 07-11047 (CSS) |
| INC., a Delaware corporation, *et al.*, | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |
|  | : | Re: Docket Nos. 2403 & 3324 |

**OPENING BRIEF IN SUPPORT**
**OF FIRST AND SECOND QUARTERLY APPLICATIONS OF**
**NORTHWEST TRUSTEE SERVICES, INC. FOR AWARD OF COMPENSATION FOR**
**SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

Dated:  May 2, 2008

CONNOLLY BOVE LODGE & HUTZ LLP
Jeffrey C. Wisler (No. 2795)
Christina M. Thompson (No. 3976)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
*Counsel for Northwest Trustee Services, Inc.*

## TABLE OF CONTENTS

Page

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ......................... 1

SUMMARY OF ARGUMENT .................................................................................................. 3

STATEMENT OF FACTS...................................................................................................... 4

ARGUMENT ........................................................................................................................... 8

    I.     NWTS DID NOT WAIVE THE DISPUTED EXPENSES ............................... 8

    II.    THE DISPUTED EXPENSES ARE EXPENSES UNDER 11 U.S.C. § 330
         AND THEIR PRE OR POST PETITION STATUS IS IRRELEVANT......... 8

    III.   THE DISPUTED EXPENSES ARE POST-PETITION EXPENSES............ 11

    IV.   EVEN IF THE DISPUTED EXPENSES ARE PRE-PETITION
         EXPENSES, THE EQUITABLE CIRCUMSTANCES OF THIS
         CASE WARRANT AN AWARD OF REIMBURSEMENT........................... 12

CONCLUSION ...................................................................................................................... 15

## TABLE OF AUTHORITIES

Page

**Cases**

*In re Allegheny Health Educ. and Research Foundation*, 383 F.3d 169 (3d Cir. 2004) ............... 9

*In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994)............................................. 10

*In re First Jersey Securities, Inc.*, 180 F.3d 504 (3d Cir. 1999) ...................................................... 9

*First Security Mortgage Company, Inc.*, 117 B.R. 1001 (Bankr. N.D.Okl. 1990) ....................... 13

*Giuricich v. Emtrol Corp.*, 449 A.2d 232 (Del. 1982).................................................................. 10

*Lebron v. Mechem Financial*, 27 F3d 937 (3d Cir. 1994) ............................................................ 10

*In re Montgomery Ward Holdings Corp.*, 268 F.3d 205 (3d Cir. 2001)................................... 9, 11

*In re R.H. Macy & Co., Inc.*, 152 B.R. 869 (Bankr. S.D.N.Y. 1993) ........................................ 9, 11

*In re Trans World Airlines, Inc.*, 1993 WL 559245 (D. Del.) ...................................................... 10

**Statutes**

11 U.S.C. §101(5) ........................................................................................................................... 11

11 U.S.C. §101(10) ......................................................................................................................... 13

11 U.S.C. §101(14) ......................................................................................................................... 13

11 U.S.C. §327(a) ........................................................................................................................... 13

11 U.S.C. §330(a)(1)(B) ......................................................................................................... *passim*

11 U.S.C. §365(d)(3) ................................................................................................................... 9, 11

11 U.S.C. §502.................................................................................................................................. 8

11 U.S.C. §503(b)(1) ........................................................................................................................ 8

11 U.S.C. §503(b)(1)(A)(i) ............................................................................................................ 10

11 U.S.C. §503(b)(1)(A)(ii) ........................................................................................................... 10

11 U.S.C. §503(b)(2) ................................................................................................................... 8, 10

11 U.S.C. §503(b)(3) ............................................................................................................... 10

11 U.S.C. §503(b)(3)(D) ......................................................................................................... 10

11 U.S.C. §507(a) ..................................................................................................................... 9

11 U.S.C. §507(a)(2) ............................................................................................................. 8, 9

**Other Authorities**

*Black's Law Dictionary* 518 (5th ed. 1979) .......................................................................... 11

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

American Home Mortgage Holdings, Inc. and its debtor affiliates (collectively "Debtors") filed these jointly administered cases on August 6, 2007 ("Petition Date").

On September 12, 2007, this Court approved the Debtors' retention of Northwest Trustee Services, Inc. ("NWTS") as a foreclosure professional, effective as of the Petition Date. *See Order Pursuant to Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Ins. as Foreclosure Professionals for the Debtors Nunc Pro Tunc to the Petition Date* ("Retention Order"). NWTS Ex. 4.[1]

In accordance with this Court's *Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Pursuant to Sections 331 and 105(a) of the Bankruptcy Code* [Docket No. 547], NWTS timely filed and served the *First Quarterly Application of Northwest Trustee Services, Inc. for Allowance and Approval of Compensation for Services Rendered and Reimbursement of Expenses as Foreclosure Professionals to the Debtors-in-Possession for the Period From August 6, 2007 Through October 31, 2007* [D.I. 2403] (NWTS Ex. 6), and the *Second Quarterly Application of Northwest Trustee Services, Inc. for Allowance and Approval of Compensation for Services Rendered and Reimbursement of Expenses as Foreclosure Professionals to the Debtors-in-Possession for the Period From November 1, 2007 Through January 31, 2008* [D.I. 3324] (NWTS Ex. 7) (jointly, "Applications"). The Debtors filed limited objections to the Applications, and the Official Committee of Unsecured Creditors ("Committee") joined those limited objections. *See* Docket Nos. 2605, 2617, 2646, 2745, 2746, 3544 (collectively "Objections"). The Objections did not dispute the fees requested by the Applications and did not dispute that the expenses requested therein were both actual and necessary. The Objections did dispute NWTS's right to be

---

[1] NWTS admitted seven exhibits into evidence at the Hearing (defined below), NWTS Exhibit 1 through NWTS Exhibit 7. Those exhibits are referred to herein as "NWTS Ex. ___."

reimbursed for certain of the expenses requested in the Applications based on the timing of those expenses ("Disputed Expenses").

A hearing on the Applications and the Objections was held on April 14, 2008 ("Hearing"). As a result of prior agreements reached by the parties,[2] only the Disputed Expenses were in contest at the Hearing. In support of its Applications, NWTS presented the testimony of David Fennell, Manager of NWTS, and admitted documents (NWTS Ex. 1 through 7) into evidence. No other testimony was presented. The Debtors admitted one document (Debtor Exhibit 1) into evidence. After the evidence was presented and arguments of counsel were made, the Court requested briefing. This is the Opening Brief of NWTS in support of its Applications.

---

[2] The parties resolved the dispute relating to Exhibit B of *Debtors' Limited Objection to Second Quarterly Application of Northwest Trustee Services, Inc. for Compensation for Services Rendered and Reimbursement of Expenses as Foreclosure Professionals to the Debtors-In-Possession* [D.I. 3544] ("April 7 Objection"), and agreed to adjourn the dispute relating to Exhibit C of the April 7 Objection.

## SUMMARY OF ARGUMENT

The Objections allege that the Disputed Expenses are pre-petition claims that were waived by NWTS, and argue that NWTS's request for reimbursement of the Disputed Expenses should be denied. The Objections should be overruled for the following reasons.

1.    The undisputed evidence clearly demonstrates that NWTS did not waive the Disputed Expenses.

2.    The Disputed Expenses are "expenses" under section 330(a)(1)(B) of title 11 of the United States Code ("Bankruptcy Code"),[3] and are not a "claim." Neither section 330(a), nor any other provisions of the Bankruptcy Code, require that expenses be post-petition to be eligible for reimbursement under section 330(a)(1)(B). Therefore, no analysis of timing is necessary for this Court to award reimbursement of the Disputed Expenses.

3.    Even if an analysis of timing is necessary, the evidence established that the Disputed Expenses are post-petition.

4.    Alternatively, if this Court finds that the Disputed Expenses are pre-petition, the equitable circumstances of this case warrant an award of reimbursement of the Disputed Expenses, and such an award is not prohibited by section 327(a) because the Disputed Expenses are not a claim and do not make NWTS disinterested.

---

[3] References to the Bankruptcy Code are hereinafter sometimes referred to as "section ____."

## STATEMENT OF FACTS

The undisputed evidence presented at the Hearing established the following facts:

NWTS is a foreclosure professional chosen, retained and used by the Debtors to recover defaulted loans through non-judicial deed of trust foreclosures ("Foreclosure Services"). NWTS provided Foreclosure Services to the Debtors prior to the Petition Date, primarily in connection with mortgages secured by properties located in California, Nevada, Washington, Oregon and Idaho. To date, NWTS has resolved approximately 2,000 foreclosures for the Debtors.

Under well-established industry terms ("Industry Terms"), the Foreclosure Services are provided to the Debtors on a flat fee basis, plus expenses ("Foreclosure Expenses"). Foreclosure Expenses include, but are not limited to, a title report, mailing costs, recording costs, notice posting, service of process and publication ("Foreclosure Items"). The Foreclosure Items are generally mandated by applicable state statute and are provided to NWTS by third-party vendors. With the exception of mailing costs,[4] the Foreclosure Expenses are due from NWTS to the applicable third party vendor only upon resolution of the foreclosure matter.

In accordance with the Industry Terms, neither the flat fee nor the Foreclosure Expenses are billed to, due from, or paid by the Debtors until the foreclosure matter is resolved. A foreclosure matter is resolved upon foreclosure sale, reinstatement, satisfaction, negotiated workout, termination by the servicer or bankruptcy. NWTS invoices the Debtors only upon resolution of a foreclosure matter. The Debtors are directly reimbursed for NWTS's flat fee and the Foreclosure Expenses from third parties (*e.g.*, borrower, mortgage lender) upon a resolution of a foreclosure matter.

As of the Petition Date, many of the Debtors' foreclosure matters were in process with NWTS. NWTS was advised directly by the Debtors that it was "business as usual," and that

---

[4] NWTS is required to pay mailing costs within thirty days of monthly invoice issued by the third party mailing vendor.

NWTS needed to keep things moving. *See* NWTS Ex. 1. NWTS was contacted by Debtors' counsel to retain NWTS as an estate professional. NWTS understood that it would need Court approval of its retention, and that it would need to file fee applications to get paid. NWTS further understood that it would need to file a proof of claim for any amounts for which it had invoiced the Debtors prior to the Petition Date.

With input from NWTS, Debtors' counsel prepared and filed the *Application for Order Pursuant to Section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 231] ("Retention Application") with the *Affidavit of Todd Hendricks in Support of Application for Order Pursuant to Section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for the Debtors Nunc Pro Tunc to the Petition Date.*[5] NWTS Ex. 2.

After the Retention Application was filed, NTWS was notified that the United States Trustee had raised an objection. Debtors' counsel advised NWTS that, to resolve the objection, NTWS needed to provide additional disclosures and waive its pre-petition claim. Subsequently, with input from NWTS, the *Supplemental Affidavit of Todd Hendricks in Support of Application for Order Pursuant to Section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 671] ("Supplemental Affidavit") (NWTS Ex. 3) was prepared and filed. The Supplemental Affidavit includes the following language:

> As of August 6, 2007, the Debtors owed Northwest Trustee $92,847.67 for prepetition services and fees (the "Prepetition

---

[5] This affidavit did not contain a waiver, and none was requested.

> Fees"). Northwest Trustee hereby waives the Prepetition Fees
> against the Debtors.

The $92,847.67 amount ("Waived Amount") was the total due under NWTS invoices that had

been issued to the Debtors for foreclosures resolved prior to the Petition Date. NWTS did not

knowingly or voluntarily agree to waive any fees or expenses beyond the Waived Amount.

Specifically, NWTS did not knowingly or voluntarily agree to waive any of the Disputed

Expenses.

A revised retention order was prepared and submitted to the Court by Debtors' counsel

under a Certification of Counsel [D.I. 672], and the Retention Order was entered by the Court.

NWTS did not participate in the preparation of the Retention Order.

Once retained, NWTS understood that it was to send its invoices to Debtors' counsel on a

monthly basis and that counsel would prepare and file the appropriate applications. In this

regard, NWTS received a letter from Debtors' counsel dated November 7, 2007 ("Guidelines

Letter"). NWTS Ex. 5.    The Guidelines Letter provided NWTS and other foreclosure

professionals with detailed guidelines relating to the fee application process. The Guidelines

Letter includes the following statement:

> ***Your prepetition course of dealing with the Debtors'*** (sic)
> ***determines the allocation and accrual of fees.***

(Guidelines Letter at p.2) (bold and italics in original). The Guidelines Letter further states:

> **Dates for expenses should be related to the dates in which your
> firm is entitled to reimbursement.  Generally, this should be
> when your firm makes payment to third parties.**

(Guidelines Letter at second Exhibit B) (bold in original). These statements were consistent with

NWTS's understanding of the application and payment process, and are consistent with the

Industry Terms.

This consistency notwithstanding, NWTS found it difficult to navigate the application

process, and NWTS's communications with Debtors' counsel revealed a disagreement

concerning certain of NWTS's Foreclosure Expenses. As a result, NWTS retained its own counsel to assist with the application process.

The Applications were timely filed and served, and are true and accurate. The Foreclosure Expenses included in the Applications were actual, and were necessary to resolve the foreclosure matters in accordance with NWTS's retention by the Debtors. All of the Foreclosure Expenses included in the Applications are for foreclosures that were resolved after the Petition Date. Approximately $600,000,000 of loans were resolved through these foreclosures. The Foreclosure Expenses included in the Applications do not include the Waived Amount.

The amount of the Disputed Expenses exceeds $430,000. As of the Petition Date, NWTS: (i) did not have an obligation to pay any of the Disputed Expenses to its vendors (other than, in some cases, the mailing costs); (ii) did not have a right to invoice the Debtors for the Disputed Expenses; (iii) did not have a right to be paid by the Debtors for the Disputed Expenses; and (iv) did not have a right to bring suit against the Debtors for the Disputed Expenses.

The Debtors received payment on account of at least some, if not all, of the Disputed Expenses upon NWTS's post-petition resolution of foreclosure matters.[6]

---

[6] NWTS reserves the right to seek alternative avenues of recovery for such expenses.

<u>**ARGUMENT**</u>

## I.      NWTS DID NOT WAIVE THE DISPUTED EXPENSES

Debtors argue that "[b]ecause NWTS waived any rights to receive pre-petition amounts in connection with its retention, the [Disputed Expenses] should be deemed waived . . . ." April 7 Objection, ¶11. This statement is directly contradicted by the undisputed evidence presented at the Hearing. The evidence unequivocally established the following:

1.      NWTS waived only those expenses that were included within the Waived Amount.

2.      No portion of the Waived Amount is included in the Applications.

3.      NWTS did not knowingly waive the Disputed Expenses.

4.      NWTS did not voluntarily waive the Disputed Expenses.

There is <u>no</u> evidence to the contrary. Accordingly, there can be no dispute that NWTS did <u>not</u> waive the Disputed Expenses.

## II.      THE DISPUTED EXPENSES ARE "EXPENSES" UNDER 11 U.S.C. § 330 AND THEIR PRE OR POST PETITION STATUS IS IRRELEVANT

Debtors object to the reimbursement of the Disputed Expenses because they "are identified on the face of [NWTS's] Invoices as having been incurred prior to the Petition Date." April 7 Objection, ¶8. The Debtors argue, therefore, that "such amounts constitute pre-petition claims." *Id.* This argument fails to recognize and apply a correct statutory analysis.

The Applications seek an award of reimbursement for actual and necessary expenses under section 330(a)(1)(B). The Applications <u>do not</u> seek allowance of a claim under section 503(b)(1), or any other section of the Bankruptcy Code.[7] Applying the teachings of the Third

---

[7] Claims are allowed or disallowed. *See* 11 U.S.C. §502. In contrast, Expenses under section 330(a)(1)(B) are awarded. If an expense is awarded, it becomes an administrative expense under section 503(b)(2), and is entitled to priority payment under section 507(a)(2).

Circuit Court of Appeals, one must look carefully at the words of the applicable sections of the Bankruptcy Code. *In re Montgomery Ward Holdings Corp.*, 268 F.3d 205 (3d Cir. 2001).

In *Montgomery Ward*, the Third Circuit Court of Appeals focused upon the importance of Congress' use of the term "obligations" in section 365(d)(3), rather than the word "claim." *Montgomery Ward*, 268 F.3d at 209. Applying the *Montgomery Ward* analysis to this case, it is critical to observe that Congress chose the term "expense" in section 330(a)(1)(B) rather than the word "claim." "Congress certainly knew how to use the word claim" and could have used it in section 330(a)(1)(B). *In re R.H. Macy & Co., Inc.*, 152 B.R. 869, 873 (Bankr. S.D.N.Y. 1993). It is, therefore, inappropriate to equate the term "expense" with the term "claim." *Id.* This distinction between the term "claim" and the term "expense" in the Bankruptcy Code is further demonstrated by the first line of section 507(a) which provides:

> The following **expenses** and **claims** have priority in the following order: . . . .

11 U.S.C. § 507(a) (emphasis added).    Therefore, Debtors' argument that NWTS's request for reimbursement of expense is a "claim" is misplaced.[8]

Equally misplaced is Debtors' argument that the timing of the Disputed Expenses is relevant to the Applications. It is not.

Section 330(a)(1)(B) expressly requires only that expenses be "actual" and "necessary." 11 U.S.C. § 330(a)(1)(B). There is no dispute that both of these elements have been established. Neither section 330, nor sections 328, 331, 503, or 507, expressly require that expenses be "post-petition" to be eligible for an award of reimbursement. Once again, Congress' choice of words is important. In drafting section 330(a)(1)(B), Congress chose not to add qualifiers such as "rendered after the commencement of the case," or "attributable to any period of time occurring

---

[8]The cases cited by the Debtors do not involve an application for an award of expenses and do not analyze the statutory framework. *In re Allegheny Health Educ. and Research Foundation*, 383 F.3d 169 (3d Cir. 2004) involved a claim for sick leave under a collective bargaining agreement. *In re First Jersey Securities, Inc.*, 180 F.3d 504 (3d Cir. 1999) analyzed section 547 and the term "antecedent debt." Neither case included any discussion, analysis or holding relating to section 330(a).

after the commencement of the case." *Compare*, 11 U.S.C. §§503(b)(1)(A)(i)[9] and

503(b)(1)(A)(ii);[10] *see In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 848 (3d Cir. 1994)

(interpreting section 330(a)(1) by noting Congress' choice not to add the qualifier that services

need be "professional" or "non-clerical" in nature). "[W]here a provision is expressly included

in one section of a statute, but is omitted from another, it is reasonable to assume that the

Legislature was aware of the omission and intended it." *Giuricich v. Emtrol Corp.*, 449 A.2d

232, 238 (Del. 1982). Accordingly, Debtors may not engraft upon section 330(a)(1) "language

which has been clearly excluded therefrom" by Congress, and Debtors' effort to add a "post-

petition" requirement to section 330(a)(1) must fail. *Id* at 238.

Debtors' argument is further contradicted by section 503(b)(2), under which

reimbursement awarded under section 330(a)(1)(B) becomes an allowed administrative expense.

11 U.S.C. § 503(b)(2). Section 503(b)(2) contains no requirement that such reimbursement be

exclusively for post-petition expenses. *Id.*; *compare*, 11 U.S.C. § 503(b)(1)(A)(i) and (ii).

Further, both the United States District Court for the District of Delaware and the Third Circuit

Court of Appeals have recognized that payment of a professional's pre-petition fees and

expenses as an administrative expense pursuant to section 503(b) is <u>not</u> *per se* disallowed. *See In*

*re Trans World Airlines, Inc.*, 1993 WL 559245 (D. Del.) (determining that a professional's pre-

petition fees and expenses may be approved under section 503(b)(3) if "substantial contribution"

is established) (citations omitted); *Lebron v. Mechem Financial*, 27 F.3d 937, 945 (3d Cir. 1994)

(finding that "there is no across-the-board bar to the recovery of [movant's] *pre*-petition

expenses" under section 503(b)(3)(D)) (emphasis in original).

In sum, the Disputed Expenses are not a claim. They are expenses for which NWTS

seeks reimbursement under section 330(a)(1)(B). The Bankruptcy Code includes no requirement

---

[9]  Allowing wages and benefits expressly "for services rendered after the commencement of the case."

[10] Allowing wages and benefits expressly "attributable to any period of time occurring after the commencement of the case."

that expenses under Section 330(a)(1)(B) be "post-petition." Because it is undisputed that the Disputed Expenses were both actual and necessary as required by section 330(a)(1)(B), there is no legal basis to deny an award of reimbursement of the Disputed Expenses to NWTS.

## III.    THE DISPUTED EXPENSES ARE POST-PETITION EXPENSES

The evidence presented at the Hearing established that the Disputed Expenses are post-petition expenses. Therefore, even if this Court finds that the Disputed Expenses must be post-petition expenses to be eligible for reimbursement under section 330(a)(1)(B), it should award NWTS reimbursement of its Disputed Expenses.

The Debtors incorrectly argue that the Disputed Expenses are "pre-petition" by erroneously evaluating them under the "right to payment" standard of section 101(5). Because expenses under section 330(a)(1)(B) are not claims, it is inappropriate to evaluate the timing of an expense for purposes of section 330(a)(1)(B) "by analogy to precedent determining when a 'claim' arises for bankruptcy purposes." *Montgomery Ward*, 268 F.3d at 873.

Contrary to Debtors' argument, the date that third-party vendors invoiced NWTS for the Disputed Expenses is irrelevant because the Debtors were not liable to those vendors. Debtors were contractually liable to NWTS for reimbursement of those expenses only <u>after</u> a foreclosure was resolved. Thus, there was no expense[11] for the Debtors (or NWTS) to pay prior to the Petition Date. *See In re R.H. Macy*, 152 B.R. at 873 (holding that, because "[t]here was no [tax] obligation for the Debtor to perform prior to the Petition Date," the "obligation" to pay taxes under section 365(d)(3) arose post-petition).

---

[11] The term "expense" is not defined in the Bankruptcy Code; however, Black's Law Dictionary defines "expense" as that which is expended, laid out or consumed. *Black's Law Dictionary* 518 (5th ed. 1979). The undisputed evidence shows that the Disputed Expenses (other than certain of the mailing costs) were <u>not paid</u>, and thus <u>not</u> "<u>expended</u>" pre-petition. *See Montgomery Ward*, 268 F.3d at 209 (performing a similar analysis of the term "obligation).

Additionally, the Disputed Expenses are post-petition expenses even when evaluated under the "right to payment" standard applied to claims. The undisputed evidence demonstrates that, as of the Petition Date, NWTS: (i) did not have an obligation to pay any of the Disputed Expenses to its third-party vendors (other than certain of the mailing costs); (ii) did not have a right to invoice the Debtors for any of the Disputed Expenses; (iii) did not have a right to be paid by the Debtors for the Disputed Expenses; or (iv) did not have a right to bring suit against the Debtors for the Disputed Expenses. Therefore, even if timing of the Disputed Expenses is relevant, NWTS had no right to payment of the Disputed Expenses as of the Petition Date making them post-petition expenses fully eligible for an award of reimbursement under section 330(a)(1)(B).

## IV.    EVEN IF THE DISPUTED EXPENSES ARE PRE-PETITION EXPENSES, THE EQUITABLE CIRCUMSTANCES OF THIS CASE WARRANT AN AWARD OF REIMBURSEMENT

Even if this Court finds that the Disputed Expenses are pre-petition, the equitable circumstances of this case warrant an award of reimbursement of the Disputed Expenses.

NWTS finds itself in an inherently unfair and inequitable situation. The Debtors advised NWTS that it "should proceed as 'business as usual'" for all foreclosures in process. NWTS Ex. 1. NWTS proceeded as requested and provided a significant benefit to the Debtors' estate by resolving more than $600,000,000 of loans post-petition.[12] The Applications seek payment for providing this benefit are completely consistent with the Guidelines Letter. The Applications rely upon (and explain) NWTS's "pre-petition course of dealing," and seek recovery of expenses based upon when NWTS "makes payment to third parties." *See* NWTS Ex. 5. Moreover, NWTS's request for reimbursement of the Disputed Expenses is consistent with the *Order*

---

[12] By conceding that the Disputed Expenses were necessary, the Debtors acknowledge that this benefit to their estates could not have been achieved without the Disputed Expenses, and that the Disputed Expenses were a necessary component of the services that NWTS was retained by the Debtor to perform.

*Modifying Existing Procedures for the Compensation and Reimbursement of Expenses of Certain Foreclosure Professionals and Real Estate Brokers Utilized in the Ordinary Course and Granting Limited Nunc Pro Tunc Relief* [Docket No. 2985], which only prohibits reimbursement for "expenses <u>advanced</u> prior to the Petition Date." (emphasis added). NWTS has done what it was asked to do in the manner it was asked to do it.

Perhaps most significantly from an equitable perspective, Debtors failure to reimburse NWTS for the Disputed Expenses will leave the Debtors unjustly enriched. The evidence shows that the Debtors have received payment for at least some, if not all, of the Disputed Expenses from other sources.[13]

The unfairness and inequity demonstrated by the facts and circumstances of this case warrant an award of reimbursement of the Disputed Expenses, even if this Court rejects all of NWTS's legal arguments *infra*.[14] When presented with this proposed remedy at the Hearing, the Court inquired as to how it could award reimbursement of the Disputed Expenses in light of section 327(a). The Court expressed concern that, if the Disputed Expenses were pre-petition, then they must be waived to allow NWTS to be disinterested as required by section 327(a). This concern is resolved by the Bankruptcy Code itself.

Section 327(a) requires that a professional retained thereunder be "disinterested." The term disinterested is defined in section 101(14) as a person that "is not a creditor." The term creditor is defined in section 101(10) as an entity that has a "claim." Coming full circle, NWTS does not have, and does not seek payment of, a claim; it seeks reimbursement of expenses under

---

[13] It is also patently inequitable for foreclosure "counter parties" to be charged for NWTS's expenses when Debtors do not remit these amounts to NWTS.

[14] *See generally, First Security Mortgage Company, Inc.,* 117 B.R. 1001, (Bankr. N.D.Okl. 1990) The United States Trustee objected to the payment of a headhunter's fee because it was pre-petition and because the headhunter had not been retained as an estimate professional. The objection was overruled by the Court based on the equitable circumstances of the case, and, to facilitate this equitable result, the Court, *sua sponte,* approved the headhunter's *nunc pro tunc* retention under section 327(a).

13

section 330(a)(1)(B).  Even if some or all of those expenses are pre-petition, they are clearly <u>not</u> a claim.  *See* § II, *infra*.  Therefore, NWTS remains disinterested.

Because there is no dispute that the Disputed Expenses are both actual and necessary, and in light of the equitable facts and circumstances, this Court should award reimbursement of the Disputed Expenses.

## **CONCLUSION**

For the foregoing reasons and authorities, NWTS requests that the Court enter an order that (a) awards NWTS the compensation and reimbursement of expenses requested by the Applications,[15] (b) directs the Debtors to immediately pay all such amounts in full to NWTS, and (c) grants such other and further relief as the Court may deem just and proper.


DATED:  May 2, 2008                    CONNOLLY BOVE LODGE & HUTZ LLP

                                       _____
                                       Jeffrey C. Wisler (No. 2795)
                                       Christina M. Thompson (No. 3976)
                                       The Nemours Building
                                       1007 N. Orange Street
                                       P.O. Box 2207
                                       Wilmington, Delaware 19899
                                       (302) 658-9141
                                       *Attorneys for Northwest Trustee Services, Inc.*

#605913

---

[15] Other than the fees and expenses listed on Exhibit C to the April 7 Objection.

15