IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>                              Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>Relates to Docket No. 3812<br><br>**Filing Deadline: May 7, 2008** |

## **FINAL CURE AMOUNT OF CITIBANK, N.A.**

1.    Citibank, N.A. is the indenture trustee or trustee, paying agent and/or registrar (solely in those capacities, "Citibank"), for the following securitization trusts (collectively, the "Trusts"):

(i)    American Home Mortgage Investment Trust 2004-3, Mortgage-Backed Notes ("AHMIT 2004-3");

(ii)    American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-3 ("AHMA 2006-3");

(iii)    American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-4 ("AHMA 2006-4");

(iv)    GSR Mortgage Loan Trust 2006-AR2, Mortgage Pass-Through Certificates, Series 2006-AR2 ("GSR 2006-AR2"); and

(v)    Structured Asset Mortgage Investments II Inc., Mortgage Pass-Through Certificates, Series 2007-AR1 ("SAMI 2007-AR1").

2.    On October 30, 2007, the Court entered the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) The Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related

Thereto; and (B) Granting Certain Related Relief (Docket No. 1711) (the "Order").

3. The Order authorized the Debtors to assume and assign certain servicing agreements to the purchaser of the mortgage loan servicing business, AH Mortgage Acquisition Co., Inc. (the "Purchaser"), in accordance with the terms of an Asset Purchase Agreement, dated as of September 25, 2007, as amended (the "APA"). The APA contemplated a two step closing of the sale transaction; an Initial Closing,[1] which occurred on November 16, 2007, and a Final Closing, which occurred on April 11, 2008.

4. The Order required that the Debtors establish an escrow in the amount of $10 million for the payment of cure claims (the "Cure Escrow"). Order, para. 32. All Cure Claims that arose prior to the Initial Closing and all Transfer Cure Claims that arose prior to the Final Closing are to be satisfied from the Cure Escrow. To the extent the Cure Escrow does not suffice for the payment in full of all cure claims, any Counterparty may assert a general unsecured claim against the Debtors for the deficiency. Order, para. 35. The Purchaser will be obligated to pay the Debtors, for the benefit of the applicable Counterparty, any cure claims, other than Initial Cure Claims (including Interim Cure Claims) and Transfer Claims which will be paid from the Cure Escrow. This Objection does not include these amounts which will be the subject of separate claims.

5. On November 29, 2007, Citibank submitted its Initial Cure Amount and Transfer Cost Estimate in accordance with paragraphs 33 and 34 of the Order (Docket No. 2230) (the "Initial Cure Claim"). The Initial Cure Claim is incorporated herein by this reference.

6. After the Initial Closing, the Debtors on November 26, 2007 filed the Notice of Interim Period Cure Schedule (Docket No. 2166) (the "Notice"). On December 21 2007,

---

[1] Defined terms not otherwise defined herein shall have the meanings set forth in the Order.

Citibank filed its Objection and Interim Cure Amount of Citibank, N.A. to Debtors' Interim Period Cure Schedule (Docket No. 2485) (the "Interim Cure Claim"). The Interim Cure Claim is incorporated herein by this reference.

7. In accordance with the Order, the following agreements relating to the Trusts have been assumed by the Debtors and assigned to the Purchaser (collectively, the "Citibank Servicing Agreements"):

| Trust | Document | Citibank Role | Debtor Role |
|---|---|---|---|
| AHMIT 2004-3 | Servicing Agreement dated as of September 29, 2004 among American Home Mortgage Servicing, Inc. ("AHM Servicing"), as Master Servicer, American Home Mortgage Investment Trust 2004-3 (the "AHMIT 2004-3 Trust"), as Issuer and Citibank, N.A., as Indenture Trustee | Indenture Trustee Paying Agent Registrar | AHM Servicing – Master Servicer |
| AHMA 2006-3 | Servicing Agreement dated as of July 28, 2006 among Wells Fargo Bank, N.A, ("Wells Fargo"), as Master Servicer, Citibank, N.A., as Trustee, American Home Mortgage Corp. ("AHM Corp."), as Sponsor and AHM Servicing, as Servicer | Trustee Paying Agent Registrar | AHM Servicing – Servicer |
| AHMA 2006-4 | Servicing Agreement dated as of August 30, 2006 among Wells Fargo, as Master Servicer, Citibank, N.A., as Trustee, AHM Corp., as Sponsor, and AHM Servicing, as Servicer | Trustee Paying Agent Registrar | AHM Servicing – Servicer |
| GSR 2006-AR2 | Assignment, Assumption and Recognition Agreement dated as of April 1, 2006 among GS Mortgage Securities Corp., as Assignor, Citibank, N.A., (as Trustee), as Assignee, AHM Servicing, as Servicer, and AHM Corp., as Seller, and as acknowledged by Wells Fargo, as Master Servicer ; and Mortgage Loan Sale and Servicing Agreement between AHM Corp., as Seller, AHM Servicing, as Servicer and Goldman Sachs Mortgage Company, as Purchaser, dated as of December 1, 2005 | Trustee | AHM Servicing – Servicer |

| Trust | Document | Citibank Role | Debtor Role |
|---|---|---|---|
| SAMI 2007-AR1 | Assignment, Assumption and Recognition Agreement dated as of January 31, 2007 among EMC Mortgage Corporation, as Assignor, Citibank, N.A. (as Trustee), as Assignee, AHM Corp., as Company, and AHM Servicing, as Servicer[2] | Trustee | AHM Servicing – Servicer |

8. Citibank also asserts this Final Cure Amount pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending The Debtors' Time to Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 (Docket No. 66) (the "Cash Management Order"). The Cash Management Order provides that:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court, In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties.

Cash Management Order, page. 6

9. The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the

---

[2] This agreement provides for the assignment to Citibank as trustee for SAMI 2007-AR1 of EMC Mortgage Corporation's rights in the Purchase Warranties and Servicing Agreement among EMC Mortgage Corporation, as Purchaser, AHM Corp., as Company, and AHM Servicing, as Servicer, dated as of March 1, 2006.

securitization trust reimbursable under the indemnification provisions of the Securitization Documents in accordance with the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents.

Cash Management Order, pages 7-8. Citibank reserves the right to assert claims for indemnification and its monitoring efforts as administrative priority expense claims.

10. As trustee or indenture trustee, Citibank has the right to enforce the Debtors', including, AHM Servicing's, obligations, representations and warranties under the Citibank Servicing Agreements and other agreements relating to the Trusts (collectively, the "Transaction Documents") for the benefit of itself and each Trust's noteholders and certificateholders.

## **FINAL CURE AMOUNT**

11. AHM Servicing, as Servicer or Master Servicer under the Citibank Servicing Agreements (the "Servicer"), generally agreed to indemnify Citibank for: (a) the Servicer's failure to perform under the Servicing Agreements and the Transaction Documents; (b) Citibank's performance of its duties under the Transaction Documents; and (c) certain SEC reporting requirements.

12. The Servicer also agreed to pay Citibank for all fees and expenses, including the fees and expenses of counsel, relating to a transition of servicing.

13. Citibank has been named (and may be named in the future) as a defendant in litigations relating to the Trusts or the Servicer. Most of these actions would probably be commenced by mortgage loan obligors as direct claims or as counterclaims in foreclosure proceedings and are defended by the Servicer. The Servicer is obligated to defend and indemnify Citibank relating to these actions. To the extent these claims arose between October

29, 2007 and the Initial Closing, and the Purchaser has not assumed the Servicer's indemnification obligation to Citibank with respect thereto, this Final Cure Amount includes Citibank's indemnification claim relating to those matters. Citibank does not maintain the files relating to these lawsuits because they are defended by the Servicer. The Debtors have represented that they have not defaulted on any of their servicing obligations. Based on this representation, Citibank has not included a liquidated amount for this indemnification claim and reserves the right to supplement this Final Cure Amount to the extent it incurs any liability or there are any changes in the facts as represented by the Debtors.

14. In order to ensure that the Trusts can enforce their rights with respect to mortgage loans owned by the Trusts, the Servicer is generally obligated to record with state and county land record offices, and for mortgages registered with the Mortgage Electronic Registration Systems, Inc. ("MERS"): (a) the assignment of the mortgage loans to the Trusts, and (b) the transfer of servicing to the Purchaser. To the extent the Servicer failed to properly record the assignment of any of the mortgage loans to the Trusts, this Final Cure Amount includes any fees and expenses related to the proper recordation of the mortgages. The Debtors have represented that there are no defaults under any of their Servicing Agreements, including the Citibank Servicing Agreements. Based on this representation Citibank has not included a liquidated amount for the Servicer's failure to perform this obligation and its indemnification claim with respect thereto. To the extent the Debtors' representations are inaccurate or the Servicer fails to perform this obligation (which may not become known in the near term), Citibank reserves the right to amend this Final Cure Amount to include damages for the Servicer's failure to properly record the mortgage loans.

15. Citibank charges administration fees and seeks reimbursement of expenses relating to extraordinary services such as servicer defaults and servicer transactions. These fees

are the hourly fees of Citibank's officers and any related expenses. The aggregate administration charge of Citibank from November 17, 2007 through April 11, 2008 relating to the Trusts was $18,525 and the total aggregate administration charge of Citibank through April 11, 2008, including the amounts set forth in the Initial Cure Amount and the Interim Cure Amount, is $60,450.

16. Citibank retained counsel to advise it relating to the Citibank Servicing Agreements, the Servicer's default and Debtors' sale of the servicing business. Citibank retained Seward & Kissel LLP as its lead counsel and Cozen O'Connor as special Delaware counsel. The aggregate fees and expenses of counsel from November 17, 2007 through April 11, 2008 were $88,697.43 comprised of (a) Seward & Kissel LLP: $85,153.27, and (b) Cozen O'Connor: $3,544.16; and the total aggregate fees and expenses of counsel through April 11, 2008, including the amounts set forth in the Initial Cure Amount and the Interim Cure Amount, were $875,212.03 comprised of: (a) Seward & Kissel LLP: $835,345.92, and (b) Cozen O'Connor: $39,866.11.

17. With respect to all of the foregoing, Citibank asserts its Final Cure Amount in an aggregate amount of $935,662.03 comprised of: (a) bank default administration fees and expenses in the aggregate amount of $60,450, and (b) legal fees and expenses in the aggregate amount of $875,212.03.

## RESERVATION OF RIGHTS

18. This Final Cure Amount includes all Cure Claims of Citibank through and including April 11, 2008. In addition to the reservations set forth above, Citibank reserves the right to amend or supplement this Final Cure Amount Objection to include amounts incurred after April 11, 2008 and to the extent that it becomes aware of additional information concerning claims against the Servicer.

19. The Debtors have repeatedly represented that there are no defaults in connection with their obligations as Servicer or Master Servicer under the Servicing Agreements, including the Citibank Servicing Agreements. In preparing this Final Cure Amount, Citibank has relied on the Debtors' and AHM Servicing's representations that there are no defaults under the Citibank Servicing Agreements. To the extent the Debtors' representations are invalidated, repudiated or determined to be unwarranted or untrue, Citibank reserves the right to amend this Final Cure Amount to include claims relating to any undisclosed breaches against any of the Debtors.

20. Citibank expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses, and claims that it may have against any of the Debtors or any subsidiary or affiliate, creditors, management, and other parties under the Bankruptcy Code, the Citibank Servicing Agreements, the Transaction Documents, applicable law and/or equity.

21. Nothing contained herein shall be construed as a waiver of any rights or remedies of holders of notes and certificates issued by the Trusts or Citibank with respect to the Transaction Documents. Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of Citibank or the holders of the notes and certificates issued by the Trusts with respect to any other claims against any of the Debtors.

Dated:   Wilmington, Delaware
         May 7, 2008

COZEN O'CONNOR

By: _____
John T. Carroll, III (DE 4060)
Suite 1400, Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware 19801
(302) 295-2000

and

SEWARD & KISSEL, LLP
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

Attorneys for Citibank, N.A., solely in its capacities as Indenture Trustee, Trustee, Paying Agent and Registrar

SK 01463 0255 874902