UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered |

**TRANSFER COST CLAIM OF**
**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE**

U.S. Bank National Association, in its capacity as trustee ("U.S. Bank"), by and through

its undersigned counsel, files this Transfer Cost Claim (the "Transfer Cost Claim") pursuant to

the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules

2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A)

Approving (i) The Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens,

Claims and Interests, (ii) The Assumption and Assignment of Certain Executory Contracts and

Unexpired Leases Related Thereto; and (B) Granting Certain Related Relief [Docket No. 1711]

(the "Sale Order").

**A.     Background**

1.      U.S. Bank is the indenture trustee or trustee in connection with certain

securitization trusts for which Debtors are the servicer, or are otherwise a party, and which are

the subject of the Sale Order (the "Trusts").  The Trusts are described in more detail in the Initial

Cure Amount and Transfer Cost Claim Estimate of U.S. Bank National Association, as Trustee

[Docket No. 2231] (the "Initial Claim"), and U.S. Bank hereby incorporates such descriptions by reference. [1]

2.       On October 30, 2007, the Court entered the Sale Order.

3.       In accordance with the Sale Order, the Debtors have assumed certain agreements, or portions thereof, relating to the Trusts (collectively, the "U.S. Bank Servicing Agreements") and have assigned the same to the Purchaser.[2]  The U.S. Bank Servicing Agreements are described in more detail in the Initial Claim, and U.S. Bank hereby incorporates such descriptions and the Initial Claim by reference.

4.       Pursuant to the Sale Order, $10,000,000 from the Purchase Price was placed into escrow at the Initial Closing in full satisfaction of the Sellers' Cure Amount.  Sale Order ¶ 32. To the extent the Cure Escrow is insufficient for the payment in full of all cure claims, any Counterparty may assert a general unsecured claim against the Debtors for the deficiency.  Sale Order ¶ 35.

5.       For each Assumed Contract, the Sale Order provides that Initial Cure Amounts were to be filed within thirty (30) days of the entry of the Order, by, among others, Certain Objectors, as provided therein.  Sale Order ¶ 33.  The Sale Order also provides that any Counterparty intending to request that the Sellers pay Transfer Costs must file an estimate of Transfer Costs within thirty (30) days of the entry of the Sale Order.  Sale Order ¶ 34.

---

[1]       U.S. Bank is the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party but which are not the subject of the Sale Order. Such trusts are not included in the list of trusts set forth in numbered paragraph 1 of the Initial Claim because they are not the subject of the Sale Order and this Transfer Cost Claim, and the claims stated herein and in the Initial Claim do not include U.S. Bank's claims related to such trusts.  U.S. Bank may be the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party and which are the subject of the Sale Order but U.S. Bank has not been identified by Debtors, nor has it otherwise determined, that it is a party to such trusts.  All rights to make claims against the Debtors in connection with and on behalf of all of such foregoing trusts are reserved and no waiver is hereby made.

[2]       Defined terms not otherwise defined herein shall have the meanings set forth in the Sale Order.

Accordingly, on November 29, 2007, U.S. Bank, a Certain Objector and Counterparty under the terms of the Sale Order, filed its Initial Claim, setting forth its Initial Cure Amount, an estimate of its Transfer Cost claim, and reserving certain rights.  A copy of the Initial Claim is attached as Exhibit A.

6.    The Sale Order also requires the Debtors to serve an Interim Period Cure Schedule setting forth the proposed cure amount for the Assumed Contracts with respect to acts or omissions that occurred between the date of the Sale Order and the Initial Closing, which is the period between October 30, 2007 and November 16, 2007 (the "Interim Period").  Sale Order ¶ 34.  Accordingly, on November 26, 2007, the Debtors filed their Notice of Interim Period Cure Schedule [Docket No. 2166] (the "Proposed Interim Cure Amounts").

7.    U.S. Bank disputed the Proposed Interim Cure Amounts.  Accordingly, on December 26, 2007, U.S. Bank, pursuant to the provisions of the Sale Order, filed the Interim Period Cure Claim, Objection to the Debtors' Interim Period Cure Schedule, and Amendment to Initial Claim of U.S. Bank National Association, as Trustee [Docket No. 2503] (the "Objection").  A copy of the Objection is attached as Exhibit B.  *See* Sale Order ¶ 34.  The cure amounts and claims set forth in the Objection are in addition to the claims set forth in the Initial Claim; and, except to the extent the Objection amends the Initial Claim as expressly provided in paragraph 21 therein, nothing in the Objection should be construed to waive or modify the claims set forth in the Initial Claim.

8.    The correct cure amount with respect to the U.S. Bank Servicing Agreements for the Interim Period (the "Interim Period Cure Amount") is asserted in the Objection and is set forth in more detail therein.

9.    The Sale Order provides that "[t]o the extent a Counterparty asserts that the Sellers are liable for any unpaid Transfer Costs, such Counterparty must within ten (10) business

days after the filing and service of a notice of the occurrence of the Final Closing, file and serve

on the Debtors, the Committee and the Administrative Agent a claim for the alleged amount of

such Transfer Costs, which amount shall not exceed the good faith estimate provided to the

Debtors pursuant to paragraph 34 of this Order…."  The Debtors filed and served the notice of

the Final Closing on April 23, 2008 [Docket No. 3812] (the "Notice of Final Closing").  Thus,

pursuant to the provisions of the Sale Order and the Notice of Final Closing, U.S. Bank files and

serves this Transfer Cost Claim.

10.     Pursuant to the Notice of Final Closing, the attached Exhibit C sets forth "(i) the

name of the Counterparty to the Assumed Contract, (ii) the title or nature of the Assumed

Contract subject to the Transfer Cost Claim, (iii) the amount of the Counterparty's asserted

Transfer Cost Claim for such Assumed Contract, and (iv) the basis for the Transfer Costs

asserted in the Transfer Cost Claim."  This Exhibit C is subject to amendment and

supplementation and the reservation of rights and terms set forth below.

11.     U.S. Bank also asserts this Transfer Cost Claim pursuant to the Order Pursuant to

Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to

Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to

Maintain and Use Existing Cash Management System, and (III) Extending The Debtors' Time to

Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 [Docket No. 66] (the

"Cash Management Order"), which provides that:

> The Debtors shall perform each of their Securitization Servicing
> Functions in accordance with the terms and conditions of the
> Securitization Documents until the Termination Date (as defined
> below).  Without limiting the generality of the foregoing, the
> Debtors are authorized and directed to make all required Advances
> and to perform indemnification obligations as provided under the
> Securitization Documents without further application to, or order
> of, this Court,  In addition, parties to the securitization transactions
> are authorized free and clear of any constraints imposed by the

> Bankruptcy Code, including, without limitation, section 362 of the
> Bankruptcy Code, to continue any customary prepetition practices
> of billing, reporting or otherwise making demands on each other as
> to amounts due and to the extent that the relevant parties continue
> to agree to do so, of "netting" amounts currently due to and from
> such parties

Cash Management Order, at 6.

12.     The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be
> considered a reasonable expense of administration of the
> securitization trust reimbursable under the indemnification
> provisions of the Securitization Documents in accordance with the
> Securitization Documents or, alternatively, such expenses shall be
> afforded administrative expense priority under section
> 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant
> Securitization Documents

Cash Management Order, at 7-8.  U.S. Bank reserves the right to assert claims for

indemnification and its monitoring efforts as administrative priority expense claims.

13.     As trustee or indenture trustee, U.S. Bank has the right to enforce the Debtors'

obligations, representations, and warranties under the U.S. Bank Servicing Agreements and other

related agreements for the benefit of itself and each Trust's noteholders and certificateholders.[3]

## B.     Transfer Cost Claim

14.     Pursuant to the Sale Order, the Servicer is obligated to pay all of U.S. Bank's

Transfer Costs which include (a) default administration fees and expenses, and (b) legal fees and

expenses.

15.     Transfer Costs incurred through October 29, 2007 are in the aggregate amount of

---

[3]     With respect to the U.S. Bank Servicing Agreements, U.S. Bank is relying on its master servicers to enforce such obligations on its behalf and incorporates by reference any and all claims asserted by such master servicers on behalf of or against the Trusts.  If such master servicers do not enforce such obligations on its behalf, U.S. Bank may be required to enforce such obligations itself.  U.S. Bank by filing this Transfer Cost Claim does not acknowledge, create, or assume any obligations that do not otherwise exist.  In addition, U.S. Bank incorporates by reference any and all claims asserted by any insurers of securities issued by any of the Trusts.

$362,596.00.  This amount includes the default administration fees and the legal fees and expenses described and included in the Initial Cure Amount of the Initial Claim.

16.    On November 29, 2007, U.S. Bank estimated that Transfer Costs, through the date of the Final Closing, would aggregate $1,062,596.00 as follows:  (a) actual Transfer Costs through October 29, 2007 in the amount of $362,596.00; and (b) estimated default administration fees and expenses, and legal fees and expenses from October 30, 2007 through the date of the Final Closing in the amount of $700,000.00.

17.    U.S. Bank asserts that its actual Transfer Cost Claim is in the aggregate amount of $511,727.59 plus the FGIC Claim as defined below.  The amount of $511,727.59 includes (a) default administration fees and expenses, and (b) legal fees and expenses, as more fully described below:

a)    U.S. Bank is entitled to charge administration fees and reimbursement of expenses for its services related to this matter.  These administration fees include the hourly fees of U.S. Bank's officers and any related expenses.  The aggregate administration charges of U.S. Bank asserted as a Transfer Cost as of April 11, 2008 are $115,639.29.

b)    U.S. Bank retained Dorsey & Whitney, LLP to provide legal services in connection with these bankruptcy cases and the transfer of the servicing business.  The aggregate fees and expenses of counsel asserted as a Transfer Cost as of April 11, 2008 are $396,088.30.

18.    U.S. Bank has received a claim for reimbursement of fees and expenses in the amount of $252,833.13 from Financial Guaranty Insurance Company (the "FGIC Claim").  A copy of the letter asserting this claim is attached as Exhibit A to the Objection.  The FGIC Claim was asserted as an Interim Period Cure Amount.  To the extent the FGIC Claim, or portions

thereof, are more properly asserted as a Transfer Cost or an Initial Cure Amount (collectively, the "<u>FGIC Initial Cure Amount</u>"), the Initial Claim of U.S. Bank was amended to include the FGIC Initial Cure Amount and it is hereby asserted as a Transfer Cost.

**C.    <u>Reservation of Rights</u>**

19.    U.S. Bank reserves the right to amend or supplement this Transfer Cost Claim in any respect, including without limitation to the extent that it becomes aware of additional Transfer Costs, additional information concerning claims against the Debtors, and to support this Transfer Cost Claim with additional documents and information.  Without limiting the foregoing, this Transfer Cost Claim is asserted without prejudice and U.S. Bank reserves the right to assert additional claims for default administration and legal fees and expenses incurred after April 11, 2008.

20.    U.S. Bank expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses, and claims which it may have against the Debtors or any affiliates, subsidiaries, creditors, management, and other parties under the Bankruptcy Code, and the rights and benefits at law or in equity to all the rights and interests under and with respect to the "U.S. Bank Servicing Agreements" and the related transaction documents.

21.    Nothing contained herein shall be construed as a waiver of any rights or remedies of holders of notes and certificates issued by the Trusts or U.S. Bank with respect to the U.S. Bank Servicing Agreements and the related transaction documents.  Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of U.S. Bank or the holders of the notes and certificates issued by the Trusts with respect to any other claims against any of the Debtors, including, without limitation, claims set forth in the Initial Claim and the Objection.

Dated:    Wilmington, Delaware
          May 7, 2008

                              **DORSEY & WHITNEY (DELAWARE) LLP**


                              By: /s/ Eric Lopez Schnabel
                              Eric Lopez Schnabel(Del No. 3672)
                              1105 North Market Street, 16th Floor
                              Wilmington, Delaware 19801
                              Telephone:  (302) 425-7162

                              **DORSEY & WHITNEY LLP**
                              Charles Sawyer (MN #140351)
                              Katherine A. Constantine (MN #123341)
                              50 South Sixth Street, Suite 1500
                              Minneapolis, MN  55402
                              Telephone:  (612) 340-2600

                              *Attorneys for U.S. Bank National Association, in its*
                              *capacity as Trustee*