**EXHIBIT A**

**INITIAL CLAIM**

**(See attached.)**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al., | Case No. 07-11047 (CSS) |
| | Jointly Administered |
| Debtors. | **Filing Deadline: November 29, 2007** |

## INITIAL CURE AMOUNT AND TRANSFER COST CLAIM ESTIMATE OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE

U.S. Bank National Association, in its capacity as trustee ("U.S. Bank"), by and through its undersigned counsel, files this Initial Cure Amount[1] and Transfer Cost Claim Estimate (collectively, the "Claim") pursuant to the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) The Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (B) Granting Certain Related Relief (Docket No. 1711) (the "Sale Order").

**A.      Background**

1.      U.S. Bank is the indenture trustee or trustee in connection with certain securitization trusts for which Debtors are the servicer, or are otherwise a party, and which are the subject of the Sale Order[2], as more specifically described as follows (collectively, the

---

[1]      Defined terms not otherwise defined herein shall have the meanings set forth in the Sale Order.

[2]      U.S. Bank is the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party but which are not the subject of the Sale Order.

"Trusts"):

> (i)     American Home Mortgage Investment Trust Series 2005-4A;

> (ii)    American Home Mortgage Investment Trust Series 2005-4C;

> (iii)   GSR Mortgage Loan Trust 2006-AR1, Mortgage Pass-Through Certificate Series 2006-AR1;

> (iv)   GSAA Home Equity Trust 2006-6;

> (v)    Bear Stearns Asset Backed Securities I Trust 2006-AC3; Asset-Backed Certificates, Series 2006-AC3;

> (vi)   GSAA Home Equity Trust 2006-9;

> (vii)   Bear Stearns Asset Backed Securities I Trust 2006-AC4, Asset-Backed Certificates, Series 2006-AC4;

> (viii)  J.P. Morgan Alternative Loan Trust 2006-A3, Mortgage Pass-Through Certificates;

> (ix)   MASTR Adjustable Rate Mortgage Trust 2006-OA2 Mortgage Pass-Through Certificates, Series 2006-OA2;

> (x)    MASTR Adjustable Rate Mortgage Trust 2007-1 Mortgage Pass-Through Certificates, Series 2007-1;

> (xi)   MASTR Adjustable Rate Mortgage Trust 2007-3 Mortgage Pass-Through Certificates, Series 2007-3;

> (xii)  Bear Stearns Asset Backed Securities I Trust 2007-AC1, Asset-Backed Certificates, Series 2007-AC1;

> (xiii) Merrill Lynch Mortgage Investors Trust Mortgage Pass-Through Certificates, MLMI Series 2003-A6 ("MLMI 2003-A6");[3]

> (xiv) MASTR Asset Securitization Trust 2006-2 Mortgage Pass-Through

---

Such trusts are not included in the following list of trusts because they are not the subject of the Sale Order and this Claim does not include U.S. Bank's claims related to such trusts. U.S. Bank may be the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party and which are the subject of the Sale Order but U.S. Bank has not been identified by Debtors, nor has it otherwise determined, that it is a party to such trusts. All rights to make claims against the Debtors in connection with and on behalf of all of such foregoing trusts are reserved and no waiver is hereby made.

[3]     See footnote 6.

Certificates Series 2006-2;[4] and

(xv)    MASTR Adjustable Rate Mortgage Trust 2006-OA1 Mortgage Pass-Through Certificates, Series 2006-OA1.[5]

2.    On October 30, 2007, the Court entered the Sale Order.

3.    The Sale Order provides that at the Initial Closing, $10,000,000 from the Purchase Price shall be placed into escrow in full satisfaction of the Sellers' Cure Amount.  Sale Order, para. 32.  To the extent the Cure Escrow is insufficient for the payment in full of all cure claims, any Counterparty may assert a general unsecured claim against the Debtors for the deficiency.  Sale Order, para. 35.

4.    For each Assumed Contract, the Sale Order provides that Initial Cure Amounts may be filed within thirty (30) days of the entry of the Order, by, among others, Certain Objectors, as provided therein.  U.S. Bank is such a "Certain Objector".  More specifically, the Initial Cure Amounts are the liquidated cure amounts representing the maximum amount owed or claimed to be owed with respect to defaults relating to Assumed Contracts related to acts or omissions that occurred prior to the date of entry of the Sale Order.  Sale Order, Para. 33.  The Sale Order also provides that an Interim Period Cure Schedule is to be served by Debtors setting forth the proposed cure amount with respect to Assumed Contracts related to acts or omissions that occurred between October 30, 2007 and the Initial Closing.  Objections to such proposed amount are to be filed thirty (30) days after service of the Debtors' Interim Period Cure Schedule.  Sale Order, para. 34.

5.    The Sale Order also provides that Transfer Cost Claims are to be filed within thirty (30) days of the entry of the Sale Order.  More specifically, the Sale Order provides: "Any

---

[4]    See footnote 7.

[5]    See footnote 8.

Counterparty that intends to request payment of a Transfer Cost Claim must file and serve a good

faith estimate of such reasonable and necessary costs within thirty (30) days of the entry of this

Order." Sale Order, para. 34. U.S. Bank is such a Counterparty. The Sale Order defines

"Transfer Costs" as "reasonable out of pocket costs and expenses incurred by a Counterparty as a

result of such assumption and assignment or transfer and chargeable under the Assumed

Contracts." Sale Order, para. 39.

     6.    In accordance with the Sale Order, the following agreements, or portions thereof,

relating to the Trusts are being assumed by the Debtors and assigned to the Purchaser

(collectively, the "U.S. Bank Servicing Agreements"):

> Assignment, Assumption and Recognition Agreement, made on the 1st day of
> January, 2006, among American Home Mortgage Servicing, Inc., as seller,
> American Home Mortgage Corp. as servicer, U.S. Bank National Association, not
> in its individual capacity but solely as trustee on behalf of GSR mortgage Loan
> Trust 2006-AR1, and GS Mortgage Securities Corp., as assignor and is
> acknowledged by Wells Fargo Bank, N.A., as master servicer;

> Assignment, Assumption and Recognition Agreement made the 28th day of April,
> 2006, among American Home Mortgage Servicing, Inc., a Maryland corporation,
> American Home Mortgage Corp., GS Mortgage Securities Corp., a Delaware
> corporation, and U.S. Bank National Association, not in its individual capacity,
> but solely as trustee on behalf of GSAA Home Equity Trust 2006-6, and as
> acknowledged by JPMorgan Chase Bank, National Association, as master
> servicer;

> Assignment, Assumption and Recognition Agreement, made as of April 28, 2006,
> among EMC Mortgage corporation, U.S. Bank National Association, not
> individually but solely as trustee for the holders of Bear Stearns Asset Backed
> Securities I Trust 2006-AC3, Asset-Backed Certificates, Series 2006-AC3,
> American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

> Assignment, Assumption and Recognition agreement, made the 26th day of April,
> 2006, among American Home Mortgage Servicing, Inc., a Maryland corporation,
> GS Mortgage Securities Corp., a Delaware corporation, and U.S. Bank National
> Association, not in its individual capacity, but solely as trustee on behalf of
> GSAA Home Equity Trust 2006-9, and as acknowledged by JPMorgan Chase
> Bank, National Association, as master servicer;

> Assignment, Assumption and Recognition Agreement, made as of June 30, 2006,
> among EMC Mortgage Corporation, U.S. Bank National Association, not

individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2006-AC4, Asset-Backed Certificates, Series 2006-AC4, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

Assignment, Assumption and Recognition Agreement, dated as of June 1, 2006, entered into among J.P. Morgan Acceptance Corporation I, a Delaware corporation, U.S. Bank National Association, as trustee of J.P. Morgan Alternative Loan Trust 2006-A3, J.P. Morgan Mortgage Acquisition Corp., American Home Mortgage Servicing, Inc., as the servicer and Wells Fargo Bank, N.A.;

Assignment, Assumption and Recognition Agreement, dated as of November 15, 2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

Assignment, Assumption and Recognition Agreement, dated as of January 16, 2007, among UBS Real Estate Securities Inc., as Assignor, Mortgage Asset Securitization Transactions, Inc., as Assignee, American Home Mortgage Corp., and American Home Mortgage Servicing, Inc., as Servicer;

Assignment, Assumption and Recognition Agreement, dated as of May 15, 2007, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

Assignment, Assumption and Recognition Agreement, made as of January 30, 2007, among EMC Mortgage Corporation, U.S. Bank, National Association, not individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2007-AC1, Asset-Backed Certificates, Series 2007-AC1, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.;

RMBS Servicing Agreement, dated as of October 7, 2005, among Wells Fargo Bank, N.A., as RMBS Master Servicer, American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as Seller, and American Home Mortgage Acceptance, Inc., as RMBS Servicer;

RMBS Subservicing Agreement, dated as of October 7, 2005, among American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Servicing, Inc., as RMBS Subservicer, and American Home Mortgage Acceptance, Inc., as RMBS Servicer;

Servicing Agreement, dated as of October 7, 2005, among Wells Fargo Bank, N.A., as RMBS Master Servicer, American Home Mortgage Investment Trust 2005-4C, as Issuer, U.S. Bank National Association, as Indenture Trustee,

American Home Mortgage Acceptance, Inc., as Seller, and American Home
Mortgage Servicing, Inc., as RMBS Servicer;

Master Mortgage Loan Purchase and Servicing Agreement, dated as of September
1, 2003, among Merrill Lynch Mortgage Capital, Inc., as Purchaser, and
American Home Mortgage Corp., as Seller and Servicer;[6]

Assignment, Assumption and Recognition Agreement, dated as of March 29,
2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization
Transactions, Inc., American Home Mortgage Corp. and American Home
Mortgage Servicing, Inc.;[7] and

Assignment, Assumption and Recognition Agreement, dated as of April 20, 2006,
among UBS Real Estate Securities Inc., Mortgage Asset Securitization
Transactions, Inc., American Home Mortgage Corp. and American Home
Mortgage Servicing, Inc.[8]

7.　　　　U.S. Bank also asserts this Initial Cure Amount pursuant to the Order Pursuant to

Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to

Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to

Maintain and Use Existing Cash Management System, and (III) Extending The Debtors' Time to

Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 (the "Cash

Management Order") (Docket No. 66).  The Cash Management Order provides that:

> The Debtors shall perform each of their Securitization Servicing
> Functions in accordance with the terms and conditions of the
> Securitization Documents until the Termination Date (as defined
> below).  Without limiting the generality of the foregoing, the
> Debtors are authorized and directed to make all required Advances
> and to perform indemnification obligations as provided under the
> Securitization Documents without further application to, or order
> of, this Court,  In addition, parties to the securitization transactions

---

[6]　　　　U.S. Bank sought confirmation from Debtors prior to entry of the Sale Order regarding the identification of
the parties related to this Agreement as the Debtors' schedule did not identify U.S. Bank as associated with this
Agreement.  U.S. Bank has independently confirmed that this Agreement and the related trust (MLMI 2003-A6) are
properly included in this claim of U.S. Bank as a Counterparty and/or "Certain Objector" under paragraph 33 of the
Sale Order.

[7]　　　　Although Debtors' schedules do not identify U.S. Bank as associated with this Agreement, U.S. Bank has
independently confirmed that this Agreement and the related trust are properly included in this claim of U.S. Bank
as a Counterparty and/or "Certain Objector" under paragraph 33 of the Sale Order.

[8]　　　　*Id.*

> are authorized free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties

Cash Management Order, page. 6

8.     The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provisions of the Securitization Documents in accordance with the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents

Cash Management Order, pages 7-8.  U.S. Bank reserves the right to assert claims for indemnification and its monitoring efforts as administrative priority expense claims.

9.     As trustee or indenture trustee, U.S. Bank has the right to enforce the Debtors' obligations, representations and warranties under the U.S. Bank Servicing Agreements and other related agreements for the benefit of itself and each Trust's noteholders and certificateholders.[9]

## B.    **Initial Cure Amount**

10.     The Debtors, or certain of them including AHM Servicing, under the U.S. Bank Servicing Agreements (the "Servicer"), agreed to indemnify U.S. Bank for:  (a) the Servicer's failure to perform under the Servicing Agreements and the related transaction documents

---

[9]     With respect to the U.S. Bank Servicing Agreements, U.S. Bank is relying on its master servicers to enforce such obligations on its behalf and incorporates by reference any and all claims asserted by such master servicers on behalf of or against the Trusts.  If such master servicers do not enforce such obligations on its behalf, U.S. Bank may be required to enforce such obligations itself.  U.S. Bank by filing this Claim does not acknowledge, create or assume any obligations that do not otherwise exist.  In addition, U.S. Bank incorporates by reference any and all claims asserted by any insurers of securities issued by any of the Trusts.

("Transaction Documents"); (b) U.S. Bank's performance of certain duties under the Transaction Documents; and (c) certain reporting requirements of the Securities Exchange Commission.

11.    The Servicer also agreed to pay U.S. Bank for all of its fees and expenses, including the fees and expenses of counsel, relating to a transition of servicing.

12.    U.S. Bank may have been named (and may be named in the future) as a defendant in litigation matters relating to the Trusts or the Servicer. With one exception, U.S. Bank is currently unaware, however, of any such litigation in which it is a named party.[10] Most of these actions were commenced by mortgage loan obligors and are being defended by the Servicer. The Servicer is obligated to defend and indemnify U.S. Bank relating to these actions. To the extent these claims arose prior to October 30, 2007, and the Purchaser has not assumed the Servicer's indemnification obligation to U.S. Bank with respect thereto, this Initial Cure Amount includes U.S. Bank's indemnification claim relating to these matters. U.S. Bank neither maintains files relating to, nor is it responsible to monitor these lawsuits, because they are to be defended by the Servicer. The Debtors, not U.S. Bank, have access to the information required to determine whether or not Debtors have breached their obligations under the U.S. Bank Servicing Agreements and the claim amounts arising from any such breach. This information has been requested but it has not been provided to U.S. Bank to date. Debtors have represented that no defaults exist and that there are no cure claims arising under the terms of the U.S. Bank Servicing Agreements. Based on these representations, U.S. Bank has not included a liquidated amount for this indemnification claim and reserves the right to supplement this Initial Cure Amount to the extent it incurs any liability, the Debtors provide further information to U.S.

_____

[10]    U.S. Bank has reviewed the Debtors' Statement of Financial Affairs which lists more than 250 lawsuits. Only one of those actions expressly includes U.S. Bank as a party and U.S. Bank has no further information regarding this action.

Bank, or there are any changes in the facts as represented by the Debtors.

13.     The Servicer is generally obligated (a) with respect to mortgage loans registered with the Mortgage Electronic Registration System, Inc. ("MERS"), to cause MERS to show on its records that U.S. Bank is the "investor" and the assignee of each mortgage securing such a mortgage loan, and to cause MERS to show on its records that the Purchaser is the servicer of those mortgage loans; and (b) with respect to mortgage loans not registered with MERS, to record with applicable state and/or county land record offices any mortgage assignments necessary for the enforcement of a defaulted mortgage loan on behalf of the applicable Trust.  To the extent the Servicer failed to properly record the assignment of any of the mortgage loans to the Trusts, this Initial Cure Amount includes any fees and expenses related to the proper recordation of the mortgage assignment.  Debtors have represented that they have not defaulted in these obligations and that there are no cure claims arising under the terms of the U.S. Bank Servicing Agreements.  Moreover, because a breach of this representation by Debtors may not become apparent for years (when a mortgage loan defaults and the mortgage must be enforced by the successor servicer on behalf of the applicable Trust), U.S. Bank cannot provide a liquidated amount for the Servicer's failure to perform this obligation and its indemnification claim with respect thereto.  Accordingly, and based on Debtors' representations, U.S. Bank has not included a liquidated amount for the Servicer's failure to perform these obligations and its indemnification claim with respect thereto.  To the extent the Debtors' representations are inaccurate or the Servicer fails to perform these obligations, U.S. Bank reserves the right to amend this Claim to include such amounts arising from such claims.

14.     Debtors have also represented that they have not defaulted in any other obligations under the U.S. Bank Servicing Agreements by representing that there are no cure claims arising in connection with same.  U.S. Bank is currently unaware of any such breaches

9

but reserves the right to amend this Claim if such representations are inaccurate.

15.     With respect to the foregoing, U.S. Bank asserts its Initial Cure Amount in the aggregate amount of $362,596.00. This amount includes (a) default administration fees and expenses, and (b) legal fees and expenses, as more fully described below

16.     U.S. Bank is entitled to charge administration fees and reimbursement of expenses for its services related to this matter.   These administration fees include the hourly fees of U.S. Bank's officers and any related expenses. The aggregate administration charges of U.S. Bank as of October 29, 2007 are $64,588.00.

17.     U.S. Bank retained Dorsey & Whitney, LLP to provide legal services in connection with these bankruptcy cases and the transfer of the servicing business. The aggregate fees and expenses of counsel as of October 29, 2007 are $298,008.00.

C.     **Transfer Cost Claim Estimate**

18.     Pursuant to the Sale Order, the Servicer is obligated to pay all of U.S. Bank's Transfer Costs which include (a) default administration fees and expenses, and (b) legal fees and expenses.

19.     Transfer Costs incurred through October 29, 2007 are in the aggregate amount of $362,596.00. This amount includes the default administration fees and the legal fees and expenses described and included in the above Initial Cure Amount.

20.     U.S. Bank estimates that Transfer Costs, through the date of the Final Closing, will aggregate $1,062,596.00 as follows: (a) actual Transfer Costs through October 29, 2007 in the amount of $362,596.00; and (b) estimated default administration fees and expenses, and legal fees and expenses from October 30, 2007 through the date of the Final Closing in the amount of $700,000.00.

10

**D.**    <u>**Reservation of Rights**</u>

21.    This Claim includes the Initial Cure Amount and estimate of Transfer Cost Claim of U.S. Bank.  In addition to the reservations hereinabove, U.S. Bank reserves the right to amend or supplement this Claim to the extent that it becomes aware of additional information concerning claims against the Servicer or Transfer Costs and to support this Claim with additional documents and information.

22.    The Debtors have repeatedly represented that there are no defaults in connection with their obligations as Servicer or Master Servicer under the Servicing Agreements, including the U.S. Bank Servicing Agreements.  In preparing this Claim, U.S. Bank has relied on the Debtors' representations that there are no defaults under the U.S. Bank Servicing Agreements. To the extent the Debtors' representations are invalidated, repudiated or determined to be unwarranted or untrue, U.S. Bank reserves the right to amend this Claim to include claims and amounts relating to any claims against any of the Debtors.

23.    Pursuant to the Sale Order, U.S. Bank may file additional claims.

24.    U.S. Bank expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses and claims which it may have against the Debtors or any affiliates, subsidiaries, creditors, management and other parties under the Bankruptcy Code, and the rights and benefits at law or in equity to all the rights and interests under and with respect to the Transaction Documents and the U.S. Bank Servicing Agreements.

25.    Nothing contained herein shall be construed as a waiver of any rights or remedies of holders of notes and certificates issued by the Trusts or U.S. Bank with respect to the Transaction Documents.  Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of U.S. Bank or the holders of the notes and certificates issued by the Trusts with respect to any other claims against any of the Debtors.

Dated:    Wilmington, Delaware
          November 29, 2007

                                        **DORSEY & WHITNEY (DELAWARE) LLP**


                                        By:  e/ Eric Lopez Schnabel
                                        Eric Lopez Schnabel(Del No. 3672)
                                        1105 North Market Street, 16th Floor
                                        Wilmington, Delaware 19801
                                        Telephone:  (302) 425-7162

                                        **DORSEY & WHITNEY LLP**
                                        Charles Sawyer (MN #140351)
                                        Katherine A. Constantine (MN #123341)
                                        50 South Sixth Street, Suite 1500
                                        Minneapolis, MN  55402
                                        Telephone:  (612) 340-2600

                                        *Attorneys for U.S. Bank National Association, in its*
                                        *capacity as Trustee*

12

**EXHIBIT B**

**OBJECTION**

**(See attached.)**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>                        Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>**[RE: D.I. 2166]** |

### INTERIM PERIOD CURE CLAIM, OBJECTION TO THE DEBTORS' INTERIM PERIOD CURE SCHEDULE, AND AMENDMENT TO INITIAL CLAIM OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE

U.S. Bank National Association, in its capacity as trustee ("U.S. Bank"), by and through its undersigned counsel, files this Interim Period Cure Claim, Objection to the Debtors' Interim Period Cure Schedule, and Amendment to Initial Claim (the "Objection") pursuant to the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) The Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (B) Granting Certain Related Relief [Docket No. 1711] (the "Sale Order").

### A.   **Background**

1.      U.S. Bank is the indenture trustee or trustee in connection with certain securitization trusts for which Debtors are the servicer, or are otherwise a party, and which are the subject of the Sale Order (the "Trusts"). The Trusts are described in more detail in the Initial Cure Amount and Transfer Cost Claim Estimate of U.S. Bank National Association, as Trustee [Docket No. 2231] (the "Initial Claim"), and U.S. Bank hereby incorporates such descriptions by

reference. [1]

2.      On October 30, 2007, the Court entered the Sale Order.

3.      In accordance with the Sale Order, the Debtors are assuming certain agreements, or portions thereof, relating to the Trusts (collectively, the "U.S. Bank Servicing Agreements") and assigning the same to the Purchaser. [2]   The U.S. Bank Servicing Agreements are described in more detail in the Initial Claim, and U.S. Bank hereby incorporates such descriptions by reference.

4.      The Sale Order provides that at the Initial Closing, $10,000,000 from the Purchase Price shall be placed into escrow in full satisfaction of the Sellers' Cure Amount.  Sale Order ¶ 32.  To the extent the Cure Escrow is insufficient for the payment in full of all cure claims, any Counterparty may assert a general unsecured claim against the Debtors for the deficiency.  Sale Order ¶ 35.

5.      For each Assumed Contract, the Sale Order provides that Initial Cure Amounts were to be filed within thirty (30) days of the entry of the Order, by, among others, Certain Objectors, as provided therein.  Sale Order ¶ 33.  The Sale Order also provides that estimates of Transfer Cost Claims could be filed within thirty (30) days of the entry of the Sale Order.  Sale Order ¶ 34.  Accordingly, on November 29, 2007, U.S. Bank, a Certain Objector and Counterparty under the terms of the Sale Order, filed its Initial Claim, setting forth its Initial

---

[1]      U.S. Bank is the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party but which are not the subject of the Sale Order. Such trusts are not included in the list of trusts set forth in numbered paragraph 1 of the Initial Claim because they are not the subject of the Sale Order and this Objection, and the claims stated herein and in the Initial Claim do not include U.S. Bank's claims related to such trusts.  U.S. Bank may be the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party and which are the subject of the Sale Order but U.S. Bank has not been identified by Debtors, nor has it otherwise determined, that it is a party to such trusts.  All rights to make claims against the Debtors in connection with and on behalf of all of such foregoing trusts are reserved and no waiver is hereby made.

[2]      Defined terms not otherwise defined herein shall have the meanings set forth in the Sale Order.

Cure Amount, an estimate of its Transfer Cost Claim, and reserving certain rights.

6.      The Sale Order also requires the Debtors to serve an Interim Period Cure Schedule setting forth the proposed cure amount for the Assumed Contracts with respect to acts or omissions that occurred between the date of the Sale Order and the Initial Closing, which is the period between October 30, 2007 and November 16, 2007 (the "Interim Period").  Sale Order ¶ 34.  Accordingly, on November 26, 2007, the Debtors filed their Notice of Interim Period Cure Schedule [Docket No. 2166] (the "Proposed Interim Cure Amounts").

7.      The Debtors' total Proposed Interim Cure Amounts with respect to the U.S. Bank Servicing Agreements is $0.00.

8.      U.S. Bank disputes the Proposed Interim Cure Amounts; and, thus, pursuant to the provisions of the Sale Order, files and serves this Objection. *See* Sale Order ¶ 34.  The cure amounts and claims set forth in this Objection are in addition to the claims set forth in the Initial Claim; and, except to the extent this Objection amends the Initial Claim as expressly provided in paragraph 21 below, nothing in this Objection should be construed to waive or modify the claims set forth in the Initial Claim.

9.      The correct cure amount with respect to the U.S. Bank Servicing Agreements for the Interim Period (the "Interim Period Cure Amount") is asserted herein and is set forth in more detail below.

10.     U.S. Bank also asserts this Objection and its Interim Period Cure Amount pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending The Debtors' Time to Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 [Docket No. 66] (the "Cash Management Order") provides that:

3

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court, In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties

Cash Management Order, at 6.

11.    The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provisions of the Securitization Documents in accordance with the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents

Cash Management Order, at 7-8. U.S. Bank reserves the right to assert claims for

indemnification and its monitoring efforts as administrative priority expense claims.

12.    As trustee or indenture trustee, U.S. Bank has the right to enforce the Debtors' obligations, representations, and warranties under the U.S. Bank Servicing Agreements and other related agreements for the benefit of itself and each Trust's noteholders and certificateholders.[3]

---

[3]    With respect to the U.S. Bank Servicing Agreements, U.S. Bank is relying on its master servicers to enforce such obligations on its behalf and incorporates by reference any and all claims asserted by such master servicers on behalf of or against the Trusts. If such master servicers do not enforce such obligations on its behalf, U.S. Bank may be required to enforce such obligations itself. U.S. Bank by filing this Objection does not acknowledge, create, or assume any obligations that do not otherwise exist. In addition, U.S. Bank incorporates by reference any and all claims asserted by any insurers of securities issued by any of the Trusts.

**B.**    **Interim Period Cure Amount**

13.    The Debtors, or certain of them including AHM Servicing, under the U.S. Bank Servicing Agreements (the "Servicer"), agreed to indemnify U.S. Bank for: (a) the Servicer's failure to perform under the Servicing Agreements and the related transaction documents ("Transaction Documents"); (b) U.S. Bank's performance of certain duties under the Transaction Documents; and (c) certain reporting requirements of the Securities Exchange Commission.

14.    The Servicer also agreed to pay U.S. Bank for all of its fees and expenses, including the fees and expenses of counsel, including those relating to a transition of servicing.

15.    U.S. Bank may have been named (and may be named in the future) as a defendant in litigation matters relating to the Trusts or the Servicer. With one exception, U.S. Bank is currently unaware, however, of any such litigation in which it is a named party.[4] Most of these actions were commenced by mortgage loan obligors and are being defended by the Servicer. The Servicer is obligated to defend and indemnify U.S. Bank relating to these actions. To the extent these claims arose during the Interim Period, and the Purchaser has not assumed the Servicer's indemnification obligation to U.S. Bank with respect thereto, this Interim Period Cure Amount includes U.S. Bank's indemnification claim relating to these matters. U.S. Bank neither maintains files relating to, nor is it responsible to monitor these lawsuits, because they are to be defended by the Servicer. The Debtors, not U.S. Bank, have access to the information required to determine whether or not Debtors have breached their obligations under the U.S. Bank Servicing Agreements and the claim amounts arising from any such breach. This information has been requested but it has not been provided to U.S. Bank. Debtors have represented that no

---

[4]    U.S. Bank has reviewed the Debtors' Statement of Financial Affairs which lists more than 250 lawsuits. Only one of those actions expressly includes U.S. Bank as a party and U.S. Bank has no further information regarding this action.

defaults exist and that there are no cure claims arising under the terms of the U.S. Bank

Servicing Agreements.  Based on these representations, U.S. Bank has not included a liquidated

amount for this indemnification claim and reserves the right to supplement this Interim Period

Cure Amount to the extent it incurs any liability, the Debtors provide further information to U.S.

Bank, or there are any changes in the facts as represented by the Debtors.

16.     The Servicer is generally obligated (a) with respect to mortgage loans registered

with the Mortgage Electronic Registration System, Inc. ("MERS"), to cause MERS to show on

its records that U.S. Bank is the "investor" and the assignee of each mortgage securing such a

mortgage loan, and to cause MERS to show on its records that the Purchaser is the servicer of

those mortgage loans; and (b) with respect to mortgage loans not registered with MERS, to

record with applicable state and/or county land record offices any mortgage assignments

necessary for the enforcement of a defaulted mortgage loan on behalf of the applicable Trust.  To

the extent the Servicer failed to properly record the assignment of any of the mortgage loans to

the Trusts, this Interim Period Cure Amount includes any fees and expenses related to the proper

recordation of the mortgage assignment to the extent such fees and expenses arose during the

Interim Period.  Debtors have represented that they have not defaulted in these obligations and

that there are no cure claims arising under the terms of the U.S. Bank Servicing Agreements.

Moreover, because a breach of this representation by Debtors may not become apparent for years

(when a mortgage loan defaults and the mortgage must be enforced by the successor servicer on

behalf of the applicable Trust), U.S. Bank cannot provide a liquidated amount for the Servicer's

failure to perform this obligation and its indemnification claim with respect thereto.

Accordingly, and based on Debtors' representations, U.S. Bank has not included a liquidated

amount for the Servicer's failure to perform these obligations and its indemnification claim with

respect thereto.  To the extent the Debtors' representations are inaccurate or the Servicer fails to

6

perform these obligations, U.S. Bank reserves the right to amend this Objection to include such amounts arising from such claims.

17.     Debtors have also represented that they have not defaulted in any other obligations under the U.S. Bank Servicing Agreements by representing that there are no cure claims arising in connection with same.  U.S. Bank is currently unaware of any such breaches but reserves the right to amend this Objection if such representations are inaccurate.

18.     Accordingly, U.S. Bank asserts its Interim Period Cure Amount in the aggregate amount of $288,590.06.  This amount includes (a) default administration fees and expenses, and (b) legal fees and expenses, as more fully described below.[5]

19.     U.S. Bank is entitled to charge administration fees and reimbursement of expenses for its services related to this matter.   These administration fees include the hourly fees of U.S. Bank's officers and any related expenses.  The aggregate administration charges of U.S. Bank for the Interim Period are $11,842.50.

20.     U.S. Bank retained Dorsey & Whitney, LLP to provide legal services in connection with these bankruptcy cases and the transfer of the servicing business.  The aggregate fees and expenses of counsel for the Interim Period are $23,914.43.

21.     U.S. Bank has received a claim for reimbursement of fees and expenses in the amount of $252,833.13 from Financial Guaranty Insurance Company (the "FGIC Claim").  A copy of the letter asserting this claim is attached as Exhibit A.  The FGIC Claim is asserted as an Interim Period Cure Amount.  To the extent the FGIC Claim, or portions thereof, are more properly asserted as a Transfer Cost or an Initial Cure Amount (collectively, the "FGIC Initial

---

[5] This amount is in addition to, and does not include, the fees and expenses (in the amount of $362,596.00) set forth in the Initial Claim of U.S. Bank as it existed as of November 29, 2007 and prior to any amendment of same pursuant to paragraph 21 herein below.

Cure Amount"), the Initial Claim of U.S. Bank is hereby amended to include the FGIC Initial

Cure Amount.

**C.**     **Reservation of Rights**

22.     This Objection includes the Interim Period Cure Amount of U.S. Bank.  In

addition to the reservations hereinabove, U.S. Bank reserves the right to amend or supplement

this Objection and the Interim Period Cure Amount to the extent that it becomes aware of

additional information concerning claims against the Servicer and to support this Objection with

additional documents and information.

23.     The Debtors have repeatedly represented that there are no defaults in connection

with their obligations as Servicer or Master Servicer under the Servicing Agreements, including

the U.S. Bank Servicing Agreements.  In preparing this Objection, U.S. Bank has relied on the

Debtors' representations that there are no defaults under the U.S. Bank Servicing Agreements.

To the extent the Debtors' representations are invalidated, repudiated, or determined to be

unwarranted or untrue, U.S. Bank reserves the right to amend this Objection and the Interim

Period Cure Amount to include claims and amounts relating to any claims against any of the

Debtors.

24.     Pursuant to the Sale Order, U.S. Bank may file additional claims.

25.     U.S. Bank expressly reserves any rights, remedies, liens, interests, priorities,

protections, defenses, and claims which it may have against the Debtors or any affiliates,

subsidiaries, creditors, management, and other parties under the Bankruptcy Code, and the rights

and benefits at law or in equity to all the rights and interests under and with respect to the

Transaction Documents and the U.S. Bank Servicing Agreements.

26.     Nothing contained herein shall be construed as a waiver of any rights or remedies

of holders of notes and certificates issued by the Trusts or U.S. Bank with respect to the

Transaction Documents.  Furthermore, nothing contained herein shall be construed as a waiver

of any rights or remedies of U.S. Bank or the holders of the notes and certificates issued by the

Trusts with respect to any other claims against any of the Debtors, including, without limitation,

claims set forth in the Initial Claim.


Dated:    Wilmington, Delaware
          December 26, 2007


                              **DORSEY & WHITNEY (DELAWARE) LLP**


                              By:  /s/ Eric Lopez Schnabel
                              Eric Lopez Schnabel(Del No. 3672)
                              1105 North Market Street, 16th Floor
                              Wilmington, Delaware 19801
                              Telephone:  (302) 425-7162

                              **DORSEY & WHITNEY LLP**
                              Charles Sawyer (MN #140351)
                              Katherine A. Constantine (MN #123341)
                              50 South Sixth Street, Suite 1500
                              Minneapolis, MN  55402
                              Telephone:  (612) 340-2600

                              *Attorneys for U.S. Bank National Association, in its*
                              *capacity as Trustee*


9



Financial Guaranty Insurance Company
125 Park Avenue
New York, NY 10017
T 212-312-3000
F 212-312-3093

December 13, 2007

Deutsche Bank National Trust Company
1761 East St. Andrew Place
Santa Ana, CA 92705
Attn: Trust Administration AH0501
Attn: Trust Administration AH0502

U.S. Bank National Association
Corporate Trust Services
One Federal Street—3rd Floor
Boston, MA 02110
Attn: American Home Mortgage Investment Trust 2005-4

     Re:    American Home Mortgage Investment Trust 2005-1, 2005-2 and 2005-4A
(the "Trusts")

Ladies and Gentlemen:

    Reference is made to the Indenture and the Insurance Agreements set forth on Exhibit A hereto relating to the above referenced Trusts (the "Transaction Documents"). Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms found in the Insurance Agreements.

    On August 6, 2007, American Home Mortgage Servicing, Inc. ("AHM Servicing"), together with American Home Mortgage Acceptance, Inc. ("AHM Acceptance") and certain affiliates, filed Chapter 11 bankruptcy in the District of Delaware (the "Bankruptcy"). AHM Servicing acted as the HELOC Servicer for the 2005-1 and 2005-2 Trusts, AHM Acceptance acted as the HELOC Servicer for the 2004-4A Trust and AHM Servicing acted as the HELOC Subservicer for the 2005-4A Trust.

    Financial Guaranty Insurance Company ("FGIC") acts as the Insurer for the Class IX-A Notes issued by the 2005-1 Trust, and Class VI-A Notes issued by the 2005-2 Trust and the Class II-A Certificates relating to the 2005-4A Trust. Section 3.07(a) of each Indenture provides that FGIC shall be reimbursed from the flow of funds for any amounts owed to FGIC pursuant to the related Insurance Agreement, including, but not limited to, fees and expenses of counsel incurred by FGIC in connection with the Bankruptcy. Under Section 3.03(c) of each Insurance Agreement, FGIC is entitled to be paid:

        [A]ny and all charges, fees, costs and expenses that [FGIC] may reasonably pay or incur, including reasonable attorneys' and accountants' fees and expenses, in connection with (i) the enforcement, defense or preservation of any rights in respect of any of the Operative Documents,

4818-4696-1666.1

**EXHIBIT A**



including defending, monitoring or participating in any litigation of proceeding (including any insolvency proceeding in respect of any Transaction participant of any affiliate thereof) relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such a party) or the Transaction . . . .

Section 10.16 of each Amended and Restated Trust Agreement similarly provides that all such enforcement costs are reimbursable to FGIC. Under Section 3.06 of each Insurance Agreement, each Trust, as the case may be, is jointly and severally liable for all amounts due and payable to FGIC.

Section 3.05 of each Insurance Agreement provides that presentment by FGIC of a voucher or other evidence of payment is deemed prima facie evidence of the propriety thereof and the liability therefor to FGIC.

FGIC has incurred fees, costs and expenses identified in Exhibit B hereto in the aggregate amount of $252,833.13 for the period August 1, 2007, through November 30, 2007, and such amounts are properly reimbursable under the Transaction Documents (the foregoing, the "Reimbursement Amount").[1] FGIC may have incurred additional fees, costs and expenses for the above-referenced period and reserves the right to supplement this request for such period after the date hereof. FGIC hereby requests reimbursement of the Reimbursement Amount as set forth above.

FGIC is entitled to be reimbursed from any funds available in the cash flows under Section 3.07(a)(vi) of each Indenture. Please advise the undersigned of any amounts in any month that are available under Section 3.07(a)(vi) of each Indenture to reimburse FGIC for the foregoing Reimbursement Amount from the respective Trust and FGIC will advise you as to the amount necessary, if any, to be paid from such Trust in satisfaction of the Reimbursement Amount. Please do not distribute any funds, respecting the December and subsequent payment dates, in the flow of funds after Section 3.07(a)(vi) under any Indenture unless and until FGIC advises you that FGIC is fully reimbursed for the Reimbursement Amount.

---

[1] FGIC has previously submitted a reimbursement request in the amount of $227,740.36 to Deutsche Bank National Trust Company to be reimbursed from the 2005-1 Trust for fees, costs and expenses incurred from August 1, 2007 to October 31, 2007. That reimbursement request remains unpaid and therefore has been consolidated into this reimbursement request being submitted to each of the 2005-1, 2005-2 and 2005-4A Trusts.

4818-4696-1666.1



The foregoing amounts that are available to reimburse FGIC should be remitted to FGIC via wire transfer pursuant to the remittance instructions below:

**Wire Transfer Remit To:**

| | |
|---|---|
| Correspondent Bank: | JP Morgan Chase Bank, New York |
| Fed ABA No: | 021000021 |
| Beneficiary A/C No: | 904951839 |
| Beneficiary A/C Name: | FGIC Concentration |
| REF: | American Home Bankruptcy |

This request may be supplemented in the future respecting additional reimbursement amounts.

Please contact the undersigned at (212) 312-3366 with any questions or additional requirements.

FINANCIAL GUARANTY INSURANCE COMPANY, as Insurer

By: _____

Stephen Holliday
Vice President

cc:

Wells Fargo Bank, N.A.,
as Securities Administrator

[If by First Class Mail]
P.O. Box 98
Columbia, MD 21046
Attn:  AHM 2005-1
       AHM 2005-2
       AHM 2005-4A

[If by Overnight]
9062 Old Annapolis Road
Columbia, MD 21046
Attn:  AHM 2005-1
       AHM 2005-2

4818-4696-1666.1

FGIC AHM 2005-4



## EXHIBIT A

### American Home Mortgage Investment Trust 2005-1 ("2005-1 Trust")

Indenture dated as of March 23, 2005 ("2005-1 Indenture") between American Home Mortgage Investment Trust 2005-1, Issuer, Wells Fargo Bank, N.A., Securities Administrator, and Deutsche Bank National Trust Company, Indenture Trustee.

Insurance and Indemnity Agreement dated as of March 23, 2005 ("2005-1 Insurance Agreement") among Financial Guaranty Insurance Company, as Insurer, American Home Mortgage Servicing, Inc., as HELOC Servicer, American Home Mortgage Acceptance, Inc., as Seller, American Home Mortgage Securities, LLC, as Depositor, American Home Mortgage Investment Trust 2005-1, as Issuer, American Home Mortgage Investment Corp., GMAC Mortgage Corporation, as HELOC Back-Up Servicer, and Deutsche Bank National Trust Company, as Indenture Trustee.

### American Home Mortgage Investment Trust 2005-2 ("2005-2 Trust")

Indenture dated as of June 22, 2005 ("2005-2 Indenture") between American Home Mortgage Investment Trust 2005-2, Issuer, Wells Fargo Bank, N.A., Securities Administrator, and Deutsche Bank National Trust Company, Indenture Trustee.

Insurance and Indemnity Agreement dated as of June 22, 2005 ("2005-2 Insurance Agreement") among Financial Guaranty Insurance Company, as Insurer, American Home Mortgage Servicing, Inc., as HELOC Servicer, American Home Mortgage Acceptance, Inc., as Seller, American Home Mortgage Securities, LLC, as Depositor, American Home Mortgage Investment Trust 2005-2, as Issuer, American Home Mortgage Investment Corp., GMAC Mortgage Corporation, as HELOC Back-Up Servicer, and Deutsche Bank National Trust Company, as Indenture Trustee.

### American Home Mortgage Investment Trust 2005-4A ("2005-4A Trust")

Indenture dated as of October 7, 2005 (the "2005-4 Indenture" and, together with the 2005-1 Indenture and the 2005-2 Indenture, the "Indentures") between American Home Mortgage Investment Trust 2005-4A, Issuer, Wells Fargo Bank, N.A., Securities Administrator, and U.S. Bank National Association, Indenture Trustee.

Insurance and Indemnity Agreement dated as of October 7, 2005 (the "2005-4 Insurance Agreement" and, together with the 2005-1 Insurance Agreement and the 2005-2 Insurance Agreement, the "Insurance Agreements") among Financial Guaranty Insurance Company, as Insurer, American Home Mortgage Servicing, Inc., as HELOC Subservicer, American Home Mortgage Acceptance, Inc., as HELOC Servicer and Seller, Bear Stearns Asset Backed Securities I, LLC, as Depositor, American Home Mortgage Investment Trust 2005-4A, as Issuer, American Home Mortgage Investment Corp., GMAC Mortgage Corporation, as HELOC Back-Up Servicer, and U.S. Bank National Association, as Grantor Trustee and Indenture Trustee.



## EXHIBIT B

[See attached paragraph bills of Kutak Rock LLP
and Morris, Nichols, Arsht & Tunnell LLP]

# K U T A K   R O C K   LLP

**OMAHA, NEBRASKA**
Telephone (402) 346-6000
Facsimile (402) 346-1148

Federal ID 47-0597598

November 9, 2007

Check Remit To:
Kutak Rock LLP
PO Box 30057
Omaha, NE 68103-1157

Wire Transfer Remit To:
ABA # 104000016
First National Bank of Omaha
Kutak Rock LLP
A/C # 24-690470
Invoice No. 1215012
Client Matter No.: 1299301-003

Mr. Jeffrey Kert
Financial Guaranty Insurance Company
125 Park Avenue
New York, NY  10017

---

    Re:   American Home Mortgage

For professional legal services rendered through October 31, 2007
as counsel to Financial Guaranty Insurance Company in
connection with American Home Mortgage bankruptcy,
review of American Home Mortgage sale
motion and related documents, filing objections
and analysis of related issues:

TOTAL DUE THIS STATEMENT:                                    <u>$140,815.37</u>

PRIVILEGED AND CONFIDENTIAL
ATTORNEY-CLIENT COMMUNICATION AND/OR WORK PRODUCT

Fax 7142476311        Dec 19 2007 09:04am  P008/009

Fax 7142476463        Nov 27 2007 06:22pm  P006/007

# Morris, Nichols, Arsht & Tunnell LLP

P.O. Box 1347                                    TELEPHONE (302) 658-9200
WILMINGTON, DE 19899-1347                        FED. I.D. NO. 51-0081771

Financial Guaranty Insurance Co,                 Invoice No. 850014
Jeffrey Kert, Director, Sr. Counsel              Client No. 11900
Structured Finance                               Matter No. 60309
125 Park Avenue
New York, NY 10017                               November 9, 2007

---

FOR PROFESSIONAL SERVICES RENDERED and
disbursements made from August 7, 2007 through
October 31, 2007 as counsel to Financial Guaranty
Insurance Company in connection with the American Home
Mortgage bankruptcy including review of sale motion and
related documents, filing objections, analysis of legal issues,
attending depositions and attending sale hearings

$    86,924.99

DLC

# KUTAK ROCK LLP

**OMAHA, NEBRASKA**
Telephone (402) 346-6000
Facsimile (402) 346-1148

Federal ID 47-0597598

December 13, 2007

Check Remit To:
Kutak Rock LLP
PO Box 30057
Omaha, NE 68103-1157

Wire Transfer Remit To:
ABA # 104000016
First National Bank of Omaha
Kutak Rock LLP
A/C # 24-690470
Invoice No. 1221134
Client Matter No.: 1299301-003

Mr. Jeffrey Kert
Financial Guaranty Insurance Company
125 Park Avenue
New York, NY 10017

Re:    American Home Mortgage

For professional legal services rendered from
October 31, 2007 through November 30, 2007
as counsel to Financial Guaranty Insurance Company in
connection with American Home Mortgage bankruptcy,
review of American Home Mortgage sale
motion and related documents, filing objections
and analysis of related issues:

TOTAL DUE THIS STATEMENT:                    $25,092.77

PRIVILEGED AND CONFIDENTIAL
ATTORNEY-CLIENT COMMUNICATION AND/OR WORK PRODUCT

**EXHIBIT C**

| Assumed Contract / Counterparties[1] | Trust | Basis for Transfer Costs, Without Limitation | Amount of Transfer Cost Claim |
|---|---|---|---|
| Assignment, Assumption and Recognition Agreement, made on the 1st day of January, 2006, among American Home Mortgage Servicing, Inc., as seller, American Home Mortgage Corp. as servicer, U.S. Bank National Association, not in its individual capacity but solely as trustee on behalf of GSR Mortgage Loan Trust 2006-AR1, and GS Mortgage Securities Corp., as assignor and is acknowledged by Wells Fargo Bank, N.A., as master servicer; and related documents | GSR Mortgage Loan Trust 2006-AR1 | § 3(b) of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement made the 28th day of April, 2006, among American Home Mortgage Servicing, Inc., a Maryland corporation, American Home Mortgage Corp., GS Mortgage Securities Corp., a Delaware corporation, and U.S. Bank National Association, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2006-6, and as acknowledged by JPMorgan Chase Bank, National Association, as master servicer; and related documents | GSAA Home Equity Trust 2006-6 | § 3 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, made as of April 28, 2006, among EMC Mortgage corporation, U.S. Bank National Association, not individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2006-AC3, Asset-Backed Certificates, Series 2006-AC3, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.; and related documents | Bear Stearns Asset Backed Securities I Trust 2006-AC3 | § 10 of this Assumed Contract and the Cash Management Order | $511,727.59 |

---

[1] Counterparties include the non-debtor parties named in the description of the Assumed Contract plus other unnamed parties including, without limitation, U.S. Bank National Association.

| Assumed Contract / Counterparties | Trust | Basis for Transfer Costs, Without Limitation | Amount of Transfer Cost Claim |
|---|---|---|---|
| Assignment, Assumption and Recognition agreement, made the 26th day of May, 2006, among American Home Mortgage Servicing, Inc., a Maryland corporation, GS Mortgage Securities Corp., a Delaware corporation, and U.S. Bank National Association, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2006-9, and as acknowledged by JPMorgan Chase Bank, National Association, as master servicer; and related documents | GSAA Home Equity Trust 2006-9 | § 3 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, made as of June 30, 2006, among EMC Mortgage Corporation, U.S. Bank National Association, not individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2006-AC4, Asset-Backed Certificates, Series 2006-AC4, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.; and related documents | Bear Stearns Asset Backed Securities I Trust 2006-AC4 | § 6 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, dated as of June 1, 2006, entered into among J.P. Morgan Acceptance Corporation I, a Delaware corporation, U.S. Bank National Association, as trustee of J.P. Morgan Alternative Loan Trust 2006-A3, J.P. Morgan Mortgage Acquisition Corp., American Home Mortgage Servicing, Inc., as the servicer and Wells Fargo Bank, N.A.; and related documents | J.P. Morgan Alternative Loan Trust 2006-A3 | § 4 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, dated as of November 15, 2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.; and related documents | MASTR Adjustable Rate Mortgages Trust 2006-OA2 | § 3 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, dated as of January 16, 2007, among UBS Real Estate Securities Inc., as Assignor, Mortgage Asset Securitization Transactions, Inc., as Assignee, American Home Mortgage Corp., and American Home Mortgage Servicing, Inc., as Servicer; and related documents | MASTR Adjustable Rate Mortgages Trust 2007-1 | § 3 of this Assumed Contract and the Cash Management Order | $511,727.59 |

| Assumed Contract / Counterparties | Trust | Basis for Transfer Costs, Without Limitation | Amount of Transfer Cost Claim |
|---|---|---|---|
| Assignment, Assumption and Recognition Agreement, dated as of May 15, 2007, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.; and related documents | MASTR Adjustable Rate Mortgages Trust 2007-3 | § 3 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, made as of January 30, 2007, among EMC Mortgage Corporation, U.S. Bank, National Association, not individually but solely as trustee for the holders of Bear Stearns Asset Backed Securities I Trust 2007-AC1, Asset-Backed Certificates, Series 2007-AC1, American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.; and related documents | Bear Stearns Asset Backed Securities I Trust 2007-AC1 | § 6 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| RMBS Servicing Agreement, dated as of October 7, 2005, among Wells Fargo Bank, N.A., as RMBS Master Servicer, American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as Seller, and American Home Mortgage Acceptance, Inc., as RMBS Servicer; and related documents | American Home Mortgage Investment Trust 2005-4A | § 5.06 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| RMBS Subservicing Agreement, dated as of October 7, 2005, among American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Servicing, Inc., as RMBS Subservicer, and American Home Mortgage Acceptance, Inc., as RMBS Servicer; and related documents | American Home Mortgage Investment Trust 2005-4A | § 5.06 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Servicing Agreement, dated as of October 7, 2005, among Wells Fargo Bank, N.A., as RMBS Master Servicer, American Home Mortgage Investment Trust 2005-4C, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as Seller, and American Home Mortgage Servicing, Inc., as RMBS Servicer; and related documents | American Home Mortgage Investment Trust 2005-4C | § 5.06 of this Assumed Contract and the Cash Management Order | $511,727.59 |

| Assumed Contract / Counterparties | Trust | Basis for Transfer Costs, Without Limitation | Amount of Transfer Cost Claim |
|---|---|---|---|
| Master Mortgage Loan Purchase and Servicing Agreement, dated as of September 1, 2003, among Merrill Lynch Mortgage Capital, Inc., as Purchaser, and American Home Mortgage Corp., as Seller and Servicer; and related documents | MLMI 2003-A6 | § 5 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, dated as of March 29, 2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.; and related documents | MASTR Alternative Loan Trust 2006-2 | § 3 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| Assignment, Assumption and Recognition Agreement, dated as of April 20, 2006, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc.; and related documents | MASTR Adjustable Rate Mortgages Trust 2006-OA1 | § 3 of this Assumed Contract and the Cash Management Order | $511,727.59 |
| HELOC Servicing Agreement, dated as of October 7, 2005, among American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as Seller and American Home Mortgage Acceptance, Inc. as HELOC Servicer; and related documents | American Home Mortgage Investment Trust 2005-4A | § 5.06 of this Assumed Contract and the Cash Management Order | $764,560.72 |
| HELOC Subservicing Agreement, dated as of October 7, 2005, among American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as HELOC Servicer and American Home Mortgage Servicing, Inc. as HELOC Subservicer | American Home Mortgage Investment Trust 2005-4A | § 5.06 of this Assumed Contract and the Cash Management Order | $764,560.72 |