# EXHIBIT A



**Maryland
Department of
Housing and
Community
Development**

*Division of Development
Finance*

*Community Development
Administration*

100 Community Place
Crownsville, Maryland 21032

410-514-7400
1-800-222-3919
Fax: 410-987-8763
Maryland Relay for the Deaf:
1-800-735-2258

http://www.dhcd.state.md.us

Parris N. Glendening
*Governor*

Raymond A. Skinner
*Secretary*

Marge Wolf
*Deputy Secretary*

November 21, 2001

Ms. Dena Kwaschyn
American Home Mortgage Corp.
520 Broadhollow Road
Melville NY 11747

Re : <u>Certification Approval- Originator Only</u>

Dear Ms. Kwaschyn:

I am pleased to advise you that the Community Development Administration (CDA), Homeownership Programs, has completed its review of the documents which you submitted to become an eligible mortgage originator for the Maryland Mortgage Program. Your certification has been approved. Enclosed is your copy of the executed Mortgage Purchase Agreement and accompanying documents for your file.

As an approved originator you are eligible to participate in the MMP. Attached is our current Lenders' Manual and Program Loan Documents. You will receive a Participation Agreement each year, and the Agreement must be completed, signed and returned to us before you will be able to reserve loans. Therefore, it is important that you return the Participation Agreement as soon as possible.

We look forward to working with you as a participant in the Maryland Mortgage Program.

Sincerely,

Jane Linnbaum
Homeownership Programs

Enclosures

cc: Marion Robinson, Columbia National, Inc.
    Donna Hendrie, CDA/Finance
    Janet Smith, CDA/Finance

*Word/cert approval for orginator.doc*



COMMUNITY DEVELOPMENT ADMINISTRATION
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
STATE OF MARYLAND
HOMEOWNERSHIP PROGRAMS

MORTGAGE PURCHASE AGREEMENT

THIS MORTGAGE PURCHASE AGREEMENT (the "Agreement"), effective as of the date the Administration executes this Agreement, is between the COMMUNITY DEVELOPMENT ADMINISTRATION (the "Administration"), a division of the Department of Housing and Community Development (the "Department"), a principal department of the government of the State of Maryland, having its office at 100 Community Place, Crownsville, Maryland 21032, and  American Home Mortgage Corp. having its principal office at 520 Broadhollow Road Melville NY 11747 (the "Mortgage Lender").

RECITALS

This Agreement amends and restates any previously executed Mortgage Purchase Agreement dated as of October 1, 1986 between the Administration and the Mortgage Lender.

It is a purpose of the Administration to increase the supply of money available, through the private mortgage lending system of the State of Maryland, for permanent loans to families of limited incomes to finance the acquisition of Eligible Residences.

In particular, the Administration is authorized by statute to purchase Mortgage Loans to finance the acquisition of Eligible Residences located in the State. To accomplish this purpose, the Administration will purchase from eligible mortgage lending institutions ("Mortgage Lenders") newly originated Mortgage Loans meeting the conditions specified in this Agreement. In addition, the purpose of this Agreement is to ensure that Mortgage Loans purchased by the Administration shall comply with the Act, the Regulations, and the federal Internal Revenue Code that governs the issuance of the Bonds and the kind of Mortgage Loans eligible for purchase.

Since 1980, the Administration has issued bonds to finance Mortgage Loans primarily under the 1980 Certificate. As of August 1, 1997, the Administration adopted the 1997 Resolution. While the Administration reserves the right to continue financing Mortgage Loans from the proceeds of bonds issued pursuant to the 1980 Certificate, the Administration is or expects to be financing Mortgage Loans primarily under the 1997 Resolution. Moreover, the Administration may make or purchase certain Additional Mortgage Loans from funds that are not bond proceeds but may become available when Bonds are issued.

More than one category of Mortgage Loan may be purchased by the Administration pursuant to this Agreement, and different categories of Mortgage Loans may be subject to different eligibility criteria.

In order to promote an efficient process for entering into agreements with Mortgage Lenders, the Administration is entering into Mortgage Purchase Agreements with qualified Mortgage Lenders to cover both SPIF-funded and Bond-financed loans, and multiple bond issues or multiple Lender Documents under a single Bond issue. The Administration intends to establish general terms and conditions for the purchase of Mortgage Loans from Mortgage Lenders in the Mortgage Purchase Agreement, which shall be subject to amendment under the terms of the Lender Documents.

For Mortgage Loans financed through the Administration's Bonds, the Administration provides Lender Documents to sell Mortgage Loans from time to time when the Administration determines to sell its Bonds or has available the proceeds of the sale of such Bonds. The Administration establishes the specific terms and conditions for the purchase of Mortgage Loans in the Lender Documents which prescribe additional requirements and procedures regarding the purchase of Mortgage Loans.

For Mortgage Loans financed through SPIF, the Administration provides from time to time SPIF Participation Agreements setting forth the then current terms of such Mortgage Loans acceptable for purchase by the Administration.

The Mortgage Lender desires to originate Mortgage Loans for sale to the Administration in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and mutual representations, warranties, promises, and covenants set forth in this Agreement, the Administration and the Mortgage Lender agree as follows:

SECTION 1. Definitions. Words and terms not otherwise defined have the meanings ascribed to them in the Regulations for the Administration's Program. In addition, the following words and terms used in this Agreement have the following meanings:

"1980 Certificate" means the Single Family Program General Certificate adopted by the Administration as of May 1, 1980, as amended.

"1997 Resolution" means the Residential Revenue Bond Resolution adopted by the Administration as of August 1, 1997, as amended.

"Acquisition Cost" means the total cost (excluding settlement costs and expenses) of acquiring an Eligible Residence as a completed residential unit, computed in the manner prescribed in the Buyer's Affidavit.

"Act" means Sections 2-201 through 2-208 of Article 83B of the Annotated Code of Maryland, as amended.

"Additional Mortgage Loans" mean Program loans financed with funds that are not bond proceeds but otherwise become available to the Administration pursuant to the 1980 Certificate or the 1997 Resolution.

"Bond Closing Date" means the date on which the Administration delivers a series of its Bonds, the proceeds of which are used to purchase Mortgage Loans pursuant to Lender Documents.

"Bond Participation Agreement" means one of the Lender Documents, which is a contractual agreement entered into in accordance with this Agreement, as issued from time to time by the Administration, that sets forth the terms for lending the proceeds of applicable series of Bonds.

"Bonds" means bonds issued by the Administration to finance Mortgage Loans made or purchased under the Program. "Bonds" include Single Family Program Bonds and Residential Revenue Bonds.

"Borrower" means one or more legally competent borrowers who satisfy the following conditions:

(1)     The Income of the borrower's Household at the time of application to the Mortgage Lender does not exceed the applicable maximum established by the Secretary in accordance with the Act and described in the Lender Documents;

(2)     The Borrower may not own any real property except (A) a cemetery plot, (B) a recreational vehicle lot, (C) a 1/20th (2.6 weeks) or less interest in a time sharing unit, (D) a lot on which the residential housing unit to be financed with the proceeds of the Mortgage Loan is to be built, or has been built as permitted in the Regulations and the Lender Documents, or (E) the existing principal residence of any member of the borrower's Household, but only if (i) the Mortgage Loan is to be SPIF-funded or is for the acquisition of a Single Family Residence located in a Targeted Area, and, (ii) in either case, the existing principal residence is subject to a contract of sale at the time of application and is conveyed before the settlement of the Mortgage Loan;

(3)     The mortgagor must intend to occupy the Eligible Residence as his or her principal residence within 60 days after the settlement of the Mortgage Loan (unless the Administration permits otherwise and permanently after that; and

(4)     Except for Mortgage Loans financed through SPIF, in the judgment of the Administration, the Borrower does not have available cash assets sufficient to obtain financing in the current unassisted private lending market without the assistance afforded by the Program.

"Buyer's Affidavit" means the affidavit or affidavits, in the forms prescribed by the Administration, completed by a Borrower for a Mortgage Loan whether Bond-financed or funded through SPIF, and which may be variously titled as "Buyers" or "Borrowers" Affidavits.

"Commitment" means a letter (similar to those used by the Mortgage Lender in its residential mortgage lending practice) issued by the Mortgage Lender to an Eligible Borrower indicating the willingness of the Mortgage Lender to make a Mortgage Loan. The letter must commit to the prospective borrower, for a stated period of time, a stated amount of money at the Interest Rate for the purpose of financing the acquisition of a particular Eligible Residence.

"Deed of Trust" means a deed of trust, mortgage deed, mortgage or other instrument creating a first lien (except as otherwise permitted by the Administration) on (1) a fee interest in real property located in the State (including an interest in a condominium unit pursuant to Maryland law, or (2) real property located in the State held under a perpetually renewable lease or a lease pursuant to which the lessor has no greater rights, except as to term, than the rights of a lessor pursuant to a perpetually renewable lease and which has an unexpired term at least 10 years greater than the term of such deed of trust, mortgage deed, mortgage or other instrument, or (3) such other interest permitted under the Lender Documents.

"Deed of Trust Note" means a Note evidencing indebtedness, which Note is secured by a Deed of Trust.

"Eligible Borrower" means:

(1)     for loans other than SPIF loans, except as otherwise provided by applicable Lender Documents, (A) with respect to a Targeted Area Loan, a Borrower and (B) with respect to all other Mortgage Loans, a Borrower who has not a present ownership interest in his or her principal residence (other than a mobile home that was not permanently fixed to real property) at any time within the three-year period ending upon the date of closing of such Mortgage Loan; and

(2)     for loans financed through SPIF, a borrower meeting eligibility requirements in accordance with the regulations of the administration, as set forth from time to time in SPIF Participation Agreements and other Lender Documents.

"Eligible Residence" means residential housing that meets the criteria of the Act, the Regulations and the applicable Lender Documents.

"Escrow Payments" means any payments made in order to obtain or maintain GMI or PMI coverage and fire and other hazard insurance with respect to Mortgage Loans, and any payments required to be made with respect to Mortgage Loans for taxes, other governmental charges, and other similar charges customarily required to be escrowed.

"FHA" means the Federal Housing Administration.

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

Page 5

"FHLMC" means the Federal Home Loan Mortgage Corporation and any agency or instrumentality of the United States of America succeeding to the secondary mortgage market functions of that corporation.

"FNMA" means the Federal National Mortgage Association and any agency or instrumentality of the United States of America succeeding to the secondary mortgage market functions of that association.

"GMI" means governmental mortgage insurance or guaranty issued by a Governmental Insurer and providing primary mortgage insurance or guaranty of all or a portion of a Mortgage Loan "GMI" does not include Pool Insurance, where applicable.

"Governmental Insurer" means the MHF, the FHA, the VA, the RHS, and any other governmental insurer or guarantor that meets the requirements of the controlling Bond certificates for a series of Bonds.

"Household" means an individual or individuals who occupy or intend to occupy (a) the eligible residence, in the case of a single family residence, or (b) one of the units in the eligible residence, in the case of a two to four unit residence.

"Income", except as otherwise provided by applicable Lender Documents, means, for purposes of determining whether an applicant for a Mortgage Loan is qualified as an Eligible Borrower, 100 percent of annual gross income based on current rate of income from all members of the applicant's Household, except the income of full-time high school or undergraduate students, unless such person is a borrower or guarantor. "Income" includes overtime, bonuses, commissions, investment and interest income, unemployment insurance, alimony, child support, pensions, and all other income from any source, less unusual or temporary income items and less abnormal expenses of a long-term unusual nature, such as extraordinary medical, rehabilitation, or special education expenses, as determined by the Administration.

"Interest Rate" means the rate or rates of interest specified by the Administration in the Lender Documents.

"Lender Documents" means any documents issued by the Administration from time to time pursuant to this Agreement, setting forth terms and conditions for the use of proceeds of particular series of Bonds, including Participation Agreements agreed to by the Administration and the Mortgage Lender, the Mortgage Lender Manual, Program Directives, and Highlight Sheets, all as may be amended from time to time. For Single Family Program Bonds, the Lender Documents perform the function of the Application, Invitation and Notice of Acceptance referenced in the 1980 Certificate, where applicable. As the context requires, the term "Lender Documents" shall mean the then current Lender Documents.

"MHF" means the Maryland Housing Fund created by Sections 3-201 et seq. of Article 83B of the Annotated Code of Maryland, as amended, and any fund, account, body, agency, corporation

or instrumentality of the State that succeeds to the powers, duties and functions of the Maryland Housing Fund with respect to the insurance of mortgages and mortgage loans.

"MIP" means mortgage insurance premium in connection with a Mortgage Loan for an Eligible Residence.

"Mortgage Agency Agreement" means a written agreement between the Administration and a Mortgage Agent providing for the servicing of Mortgage Loans by the Mortgage Agent on behalf of the Administration.

"Mortgage Agent" means a bank, trust company, national banking association, savings and loan association, credit union, or other mortgage banking company or financial institution, qualified to transact business in the State and approved by the Administration as a servicing agent, with which the Administration has entered into a Mortgage Agency Agreement.

"Mortgage Lender" means an approved bank, trust company, savings institution, savings and loan association, national banking association, mortgage banker or other financial institution that maintains an office in the State and engages in making or originating "residential mortgage loans", as defined in the Act, that meets the requirements set forth in the Regulations and has been approved by the Administration; any insurance company that is authorized to transact business in the State, that meets the requirements set forth in the Regulations and has been approved by the Administration; and the Maryland Home Financing Program established pursuant to Subtitle 6 of Article 83B of the Annotated Code of Maryland, as amended.

"Mortgage Lender Manual" means the detailed Program guidelines including underwriting standards, loan processing procedures, and other requirements relating to the financing and purchase of Mortgage Loans.

"Mortgage Loan" means, in general, a loan (1) evidenced by a Deed of Trust Note and secured by a Deed of Trust, (2) made to an Eligible Borrower to finance the acquisition of an Eligible Residence, and (3) which is offered for purchase to or is purchased by the Administration pursuant to this Agreement. "Mortgage Loans" include "Additional Mortgage Loans" where applicable. The Administration may amend or supplement the definition from time to time, to include other kinds of loans.

"Mortgage Purchase Date" means the date of payment by the Administration for any Mortgage Loans purchased under this Agreement.

"Participation Agreements" means the Bond Participation Agreements and, where applicable, the SPIF Participation Agreements.

"PMI" means private mortgage insurance issued by a Private Insurer but does not include Pool Insurance issued by a Private Insurer.

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

"Pool Insurance" means:

(1) The policy or policies of insurance (A) issued by (i) the MHF pursuant to COMAR 05.06.06 (Single Family Insurance Program) as amended from time to time, or (ii) a private insurer qualified to issue PMI and having "surplus as regards policy holders" at least equal to $15,000,000, and (B) that insure the Administration's exposure for loss with respect to defaults on all Mortgage Loans purchased by the Administration with proceeds of Single Family Bonds pursuant to the Lender Documents and this Agreement, to  the extent required by the Administration;

(2) Self-insurance of Mortgage Loans or Additional Mortgage Loans under circumstances and terms determined in the sole discretion of the Administration; and

(3) Any other policy or policies of insurance required by the Administration under circumstances and terms determined in the sole discretion of the Administration.

"Private Insurer" means a private mortgage insurance company qualified to transact business in the State of Maryland and providing primary mortgage insurance for all or a portion of a Mortgage Loan in accordance with this Agreement.

"Program" means the Administration's program or programs funded from time to time with Bonds, the Special Purpose Investment Fund, or other funds available to the Administration in connection with the Bonds, the 1980 Certificate, or the 1997 Resolution.

"Program Directive" means a written notice, instruction, authorization or interpretation issued by the Administration with respect to the Program, the Lender Documents, this Agreement, or the Mortgage Agency Agreement.

"Project" means a "community development project "within the meaning of the Act, as determined by the Secretary of Housing and Community Development.

"Purchase Commitment" means a written commitment to a developer of a Project by the Administration to fund or purchase Mortgage Loans for the acquisition of Eligible Residences located within the Project.

"Qualified Appraiser" means an appraiser who (1) is acceptable to FNMA or FHLMC or is a designated member of the American Institute of Real Estate Appraisers or the Society of Real Estate Appraisers and (2) is acceptable to the Administration and the issuer of any applicable PMI or GMI.

"Region Limit" means the maximum Acquisition Cost specified in the Lender Documents for an Eligible Residence located or to be located in a particular region of the State, as the Administration may amend such maximum Acquisition Costs from time to time.

"Regulations" means the Administration's Single Family Program Regulations, COMAR 05.03.02, as amended from time to time, or the Administration's Special Purpose Investment Fund Loan Program Regulations, COMAR 05.03.06, as amended from time to time, as applicable.

"Residential Revenue Bonds" means bonds issued under the 1997 Resolution.

"RHS" means the Rural Housing Service of the United States Department of Agriculture - Rural Development.

"Seller's Affidavit" means the affidavit or affidavits, in the forms prescribed by the Administration, completed by the seller of an Eligible Residence that is sought to be acquired with the proceeds of a Mortgage Loan.

"SPIF" means the Special Purpose Investment Fund of the Administration.

"SPIF Participation Agreement" means a contractual document issued from time to time by the Administration setting forth then current terms for lending moneys from SPIF.

"Single Family Program Bonds" means bonds issued under the 1980 Certificate.

"State" means the State of Maryland.

"Targeted Area" means any of the areas that meet the criteria of the federal Internal Revenue Code, 26 U.S.C. Section 143(j), as amended from time to time, which areas may be identified by the Administration in the Lender Documents or otherwise.

"Targeted Area Loan" means a Mortgage Loan to finance the acquisition of an Eligible Residence located or to be located in a Targeted Area.

"VA" means the Department of Veterans Affairs.

Throughout the Agreement, references to the above-defined terms shall be understood, when applicable to the SPIF Program, to refer to the applicable term defined for the SPIF Program.

SECTION 2.  Sale and Purchase of Mortgage Loans.

(a)    The Administration shall purchase from the Mortgage Lender and the Mortgage Lender shall sell to the Administration Mortgage Loans that meet all requirements set forth in the Act, the Regulation, the federal Internal Revenue Code, and applicable Lender Documents.

(b)    The Mortgage Lender shall issue Commitments for, make, and deliver such Mortgage Loans for sale to the Administration within the time periods specified in the Lender Documents.

Mortgage Purchase Agreement
JKM/waD/sm/r:Bonds/SF(072800)

(c)     The Mortgage Lender shall deliver Mortgage Loans, at the times and in the amounts that the Administration and the Mortgage Lender determine, at the office of the Administration, unless the Administration otherwise specifies. On the Mortgage Purchase Date, the Administration shall wire payment to the Mortgage Lender or otherwise pay the purchase price for the Mortgage Loans approved by the Administration for purchase. In accordance with the instructions of the Administration, the Mortgage Lender shall provide to the Administration any information that the Administration reasonably may request with respect to the Mortgage Loans for which the Mortgage Lender requests payment.

(d)    The Mortgage Lender shall comply with Lender Documents of the Administration, shall utilize form documents provided or approved by the Administration, and give notices to mortgagors and provide to the Administration evidence of such notices, all as required in order to comply with Program requirements and requirements of State and federal law, as amended from time to time.

SECTION 3. Purchase Price. Unless otherwise specified in writing by the Administration, the purchase price for each Mortgage Loan delivered for purchase against funds reserved pursuant to Series Lender Documents shall be equal to the original principal amount of the Mortgage Loan together with interest accrued to the Mortgage Purchase Date, less: (1) any servicing fee credit for the same period; (2) any penalties; and (3) any such other fee for the Administration as specified by the Lender Documents.

SECTION 4. Targeted Area Loans. The Administration is obligated to make moneys available out of the lendable proceeds of its Bonds for Mortgage Loans for Eligible Residences located within Targeted Areas. The Administration may therefore require in the Lender Documents that the Mortgage Lender use its best efforts to issue Commitments for, make, and sell Targeted Area Loans to the Administration.

SECTION 5. Terms and Conditions of Mortgage Loans.

(a)    Eligible Borrowers; Interest Rate; Principal Balance; Term. Each Mortgage Loan:

(1)    shall be made to a Borrower or Borrowers (A) who, on the basis of generally accepted mortgage underwriting criteria, have the financial ability to repay the indebtedness, for the purpose of financing the acquisition of an Eligible Residence and (B) each of whom qualifies as an Eligible Borrower;

(2)    shall bear interest at the applicable Interest Rate; and

(3)    shall be in an amount, for a term, and in all other respects, shall meet the requirements set forth in the Lender Documents.

(b)    Fees and Charges.

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

(1)     With respect to any Mortgage Loan purchased by the Administration, the Mortgage Lender may charge the Seller and the Mortgagor a total origination fee in an amount set forth in the Lender Documents.

(2)     Except for the origination fees expressly permitted above in this Section, the closing costs, fees, and charges, of whatever kind or nature, which the Mortgage Lender may collect from any applicant for a Mortgage Loan, any mortgagor, the seller of the property, or any other person shall not exceed the aggregate of:

(A)     the actual amounts expended for usual and reasonable settlement costs and fees as permitted in the Lender Documents (to the extent any of these charges are normal and customary in the making of residential mortgage loans); and

(B)     the actual amounts paid as principal of or interest on the Mortgage Loan or escrowed for taxes, assessments, hazard and casualty insurance, and GMI or PMI premiums.

(3)     No amount paid under (A) or (B) may exceed the amount that would have been expended or paid for such items if the Mortgage Loan were not assisted under the Program.

(4)     The Mortgage Lender may not receive, directly or indirectly, any other points, fees, charges, or other remuneration of any kind in processing an application for a Mortgage Loan or in making any Mortgage Loan, unless specifically authorized by the Administration in the Lender Documents.

(c)     Allocation of Costs.     With respect to any Mortgage Loan purchased by the Administration, to the extent not otherwise directed by the Administration, the buyer and seller shall allocate between themselves all financing or settlement costs and any other adjustments in a fair and equitable manner consistent with customary mortgage loan closing practices in the community.

(d)     Escrow Payments.

(1)     Each Mortgage Loan required to be a first lien shall provide that:

(A)     the borrower shall make monthly Escrow Payments to the lender in an amount sufficient to enable the mortgagee to pay when due all taxes, assessments, water rates, ground rents, sewer rents, common area expenses, hazard and casualty insurance premiums, premiums payable for GMI or PMI, and other charges, to the extent actually charged or assessed, and any prior liens at any time assessed or levied against the mortgaged premises or any part of them,

(B)     in case of a default in the payment of those taxes and expenses when they are due and payable, the mortgagee may pay any of them, in which event the moneys paid by

the mortgagee for such purposes shall be added to the amount of the Mortgage Loan, secured by the Deed of Trust, and payable on demand, with interest at the Interest Rate from the time of payment by the Mortgage Lender, and

(C)   investment income, if any, on Escrow Payments held by the Mortgage Agent shall be rebated to the mortgagor or credited to future Escrow Payments in the manner and to the extent required by applicable law.

(2)   For each Mortgage Loan permitted by the Administration to be a subordinate loan, escrow payment requirements shall be set forth in the Lender Documents.

(e)   Due-on Sale; Assignments and Assumptions.  The Mortgage Loan shall be due in full upon any sale or other transfer of the mortgaged property and may not be assumed, except as provided by the Administration.  Mortgage Lenders that also serve as Mortgage Agents pursuant to a Mortgage Agency Agreement, when processing applications for assignments and assumptions, must ensure that the requirements of each of the following are met:

(1)   the primary insurer/guarantor;

(2)   the pool insurer, where applicable; and

(3)   the Administration.

The Administration, in its discretion, may, but is not obligated, to permit assumptions, if in the sole determination of the Administration, the assumption meets:

(1)   the eligibility requirements of federal tax law and applicable Bond documents, as certified by the Mortgage Agent on forms supplied by the Administration; and

(2)   any applicable Addendum to the Deed of Trust for Mortgage Loans insured by FHA or guaranteed by RHS or VA, or any other insurer or guarantor acceptable to the Administration.

(f)   Hazard and Flood Insurance.  Each Mortgage Loan shall require that:

(1)   the Eligible Residence and any other buildings on the mortgaged premises are insured, as and to the extent required by the Mortgage Agency Agreement or Mortgage Lender Manual to protect the interest of the mortgagee, with the Administration designated as the loss payee under a standard mortgagee clause as its interest may appear, against loss or damage (A) by fire, lightning and other hazards, with a uniform standard extended coverage endorsement, and (B) by flooding, if the Eligible Residence is located in an area designated by or on behalf of the United States of America or any agency or instrumentality thereof as having specific flood hazards, and

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

      (2)    the mortgagor is obligated to reimburse the mortgagee for any premiums paid for such insurance by or on behalf of the mortgagee upon the mortgagor's default in so insuring the buildings and any such amount paid by or on behalf of the mortgagee shall be added to the amount of the Mortgage Loan, secured by the Deed of Trust and payable on demand, with interest at the Interest Rate from the time of payment to then.

      (g)    Use of Mortgage Loan Proceeds.  Except as authorized by the Administration in writing, no portion of the proceeds of a Mortgage Loan may be used:

      (1)    to refinance, directly or indirectly, an existing mortgage loan or loans of the Eligible Borrower on the Eligible Residence (other than a construction period loan or a bridge or other interim loan having a term not in excess of 24 months);

      (2)    to finance, directly or indirectly, the purchase of an Eligible Residence (A) which, at the time the proposed mortgagor applied for a mortgage loan, was being purchased by such mortgagor pursuant to an installment purchase contract or (B) from a seller who himself was the contract purchaser at the time the proposed mortgagor entered into a contract for the purchase of such Eligible Residence;

      (3)    to pay any financing or settlement costs and any other adjustments, except the cost of such MIP, settlement costs, or other costs as may be permitted by the Administration in the Lender Documents; and

      (4)    to pay the cost of any items deducted from the sales contract price in computing the Acquisition Cost of such Eligible Residence.

      (h)    Administration Forms.  The Mortgage Loan documents that are to be executed by the mortgagor or the seller or both, including the Deed of Trust Note and the Deed of Trust, shall be prepared and executed on forms prepared or approved in advance by the Administration.

      (i)    General Compliance.  The Mortgage Loan shall conform to all applicable terms and conditions set forth in the Series Lender Documents, the Regulations and this Agreement.

      (j)    Mortgage Lender Commitment.  The Administration will not purchase a Mortgage Loan for which the Mortgage Lender has issued a Commitment before the Mortgage Lender has received a loan reservation in accordance with the Lender Documents.  The Administration may not purchase any Mortgage Loan made by a Mortgage Lender before the Bond Closing Date, if the Administration does not deliver an issue of its Bonds, as described in this Agreement.

      (k)    Limitations on Purchase.  In the Lender Documents, the Administration, in its sole discretion may restrict or prohibit the origination or purchase of Mortgage Loans financing certain types of sales transactions.  In addition, the Administration will not purchase a Mortgage Loan pursuant to this Agreement, if:

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

(1)    the ownership of the mortgaged premises is in a form other than that required by the Lender Documents.

(2)    the Deed of Trust Note is co-signed or guaranteed, directly or indirectly, by any person other than the Eligible Borrower or Borrowers.

(l)    <u>Late Charges</u>. The Mortgage Loan shall provide that the Mortgagee may impose late payment charges, in an amount not to exceed 4% per month, for payments of principal and interest that are delinquent for at least 15 days, or as otherwise provided in the Lender Documents.

(m)    <u>Prohibition of Additional Secured Borrowing</u>. At the time the Mortgage Loan is made, the Borrower may not place any subordinate liens on the property securing the Mortgage Loan without the prior written consent of the Administration.

(n)    <u>Untrue or Incomplete Statements as Events of Default</u>. The Mortgage Loan documents shall provide that it shall constitute an event of default and entitle the Administration or any successor owner of the Mortgage Loan, at its option, to accelerate the indebtedness if the Administration determines at any time that any representation or statement of a material fact in the mortgagor's application, the Buyer's Affidavit, the Seller's Affidavit, or any other document executed in connection with the origination of the Mortgage Loan was or is untrue or incomplete.

<u>SECTION 6</u>.    <u>Reports to the Administration</u>.

The Mortgage Lender may be required to submit to the Administration one or more copies of a report as may be required from time to time, in a form prescribed by the Administration, setting forth the principal amounts of Mortgage Loans (a) encumbered by applications for Mortgage Loans, (b) committed or (c) disbursed, together with any additional information that the Administration may reasonably require. The Mortgage Lender shall submit any evidence of the Mortgage Lender's applications for Mortgage Loans or Commitments requested by the Administration within 10 business days of the Administration's request.

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

SECTION 7.  Special Initiatives and Special Programs.

From time to time, the Administration, in its discretion, may establish special programs or initiatives that impose alternative or additional requirements or restrictions for borrowers, residences, or other matters related to the loans or the purchase of the loans.  In those cases, the special requirements or restrictions may be set forth in the Lender Documents.

In addition, if the special program or initiative involves the securitizing of Mortgage Loans, the requirements of the issuer of the investment certificate shall be requirements for the Mortgage Loans.

SECTION 8.  Representations and Warranties of the Mortgage Lender.

(a)    The purchase by the Administration of Mortgage Loans is conditioned upon the compliance by the Mortgage Lender with all requirements set forth in this Agreement and upon the undertakings, representations, and the existence now and in the future of the state of facts set forth in this Section.  The Mortgage Lender represents and warrants that such state of facts will be true and correct at the times set forth below and agrees that these representations and warranties survive the purchase of such Mortgage Loans.

(b)    The Mortgage Lender represents and warrants that for each Mortgage Loan as of each Mortgage Purchase Date:

(1)    The original principal balance, the term, and the interest rate for each Mortgage Loan are accurately stated on a form delivered to the Administration specifying the information required in the Lender Documents.

(2)    No counterclaim, offset, defense or right of rescission exists or, to the best of the Mortgage Lender's information and belief, is threatened which can be asserted and maintained by the mortgagor or his successor in interest against the Administration, as assignee of the Mortgage Loan.

(3)    All parties to the Mortgage Loan had full legal capacity to execute all Mortgage Loan documents and the Mortgage Loan is:

(A)    evidenced by a properly executed Deed of Trust Note made payable or assigned to the order of the Mortgage Lender and duly endorsed by the Mortgage Lender as follows: "Payable to the order of the Community Development Administration without recourse"; and

(B)    secured by a Deed of Trust;

which documents are the legal, valid and binding obligations of the makers and are enforceable in accordance with their terms, except only as such enforcement may be limited by laws affecting the enforcement of creditors' rights generally.

(4)     Title to the Mortgage Loan shall pass to the Administration at the time of purchase by the Administration.

(5)     Each Deed of Trust, financing statement, if any, and any other document required to be filed in a public office to perfect the mortgage lien against third parties has been duly and timely filed, registered, or recorded by the Mortgage Lender in the proper public office.

(6)     The Mortgage Lender is the sole owner and holder of the Mortgage Loan and has full right to sell and assign the Mortgage Loan to the Administration, and such assignment conveys good and marketable mortgagee's title to the Administration free and clear of all liens and encumbrances and subject only to real property taxes and assessments not yet due and encumbrances customarily accepted in accordance with applicable title standards and disclosed to the Administration before the Mortgage Purchase Date.

(7)     The Mortgage Loan is not subject to any existing assignment or pledge other than the assignment to the Administration.

(8)     The Deed of Trust creates a valid and subsisting first lien to secure the Mortgage Loan, unless otherwise permitted by the Administration for Mortgage Loans financed under the 1997 Resolution.

(9)     The Deed of Trust is the subject of a paid-up mortgagee title insurance policy written on the standard American Land Title Association form of mortgage title insurance acceptable to the Administration issued by a title insurer acceptable to the Administration in an amount at least equal to the original principal amount of the Mortgage Loan, insuring that the Deed of Trust constitutes a first lien, (except as otherwise permitted by the Administration for Mortgage Loans financed under the 1997 Resolution), subject only to liens for taxes and assessments not yet due and payable and Permitted Liens and Encumbrances on the real property with respect to which the Mortgage Loan is secured.  As used herein, "Permitted Liens and Encumbrances means liens, encumbrances, reservations, easements and other imperfections of title normally acceptable to the issuer of the GMI or PMI, if any, insuring the Mortgage Loan and to prudent mortgage lenders, or which, in the sole judgment of the Administration, shall not materially impair the use or value of the premises or for which appropriate steps, in the judgment of the Administration, have been taken to secure the interest of the Administration.  The benefits of such title insurance policy, upon purchase of the Mortgage Loan by the Administration hereunder, inure to the benefit of the Administration and its successors and assigns.

(10)    The Mortgage Lender has not modified in any respect and has not satisfied, canceled, subordinated or compromised in whole or in part the Mortgage Loan indebtedness and has not released the mortgaged property in whole or in part from the lien of the indebtedness

evidenced by the Deed of Trust Note and secured by the Deed of Trust (or other instruments evidencing indebtedness and security), and the terms, covenants and conditions of the Deed of Trust Note evidencing each Mortgage Loan and the Deed of Trust securing it have not been waived, altered or modified in any respect which would affect the validity or enforceability of the Deed of Trust Note or the Deed of Trust, the prospect of prompt payment of the Mortgage Loan or the security of the lien of the Deed of Trust.

(11)    If the Mortgage Loan was made to finance the purchase of a newly constructed housing unit, the builder has warranted all materials, workmanship, and mechanicals under a warranty acceptable to the insurer where applicable.

(12)    There is no default or delinquency under the terms and covenants of the Mortgage Loan; no payments are, as of the Mortgage Purchase Date, more than 20 days past due and unpaid under the Mortgage Loan; all costs, fees and expenses incurred in making, closing, recording and assigning the Mortgage Loan have been paid; within the three month period preceding the submission of the Mortgage Loan by the Mortgage Lender for purchase by the Administration, there has not been outstanding any advance of funds by the Mortgage Lender to or on behalf of the mortgagor to be used by the mortgagor for the payment of any monthly installment of principal, interest, or other charges payable under the Mortgage Loan; the Mortgage Loan has never been more than 45 days in arrears; and the initial premium for any applicable GMI or PMI has been paid.

(13)    At the time of closing of the Mortgage Loan, no proceeding for a total or partial condemnation of the mortgaged property was pending, and the property has sustained no damage by fire, windstorm or other casualty to an extent that would materially adversely affect the value of the mortgage property, and the Mortgage Lender is not aware of any change in such circumstances from the time of such closing to the date of purchase of the Mortgage Loan by the Administration.

(14)    The improvements on the mortgaged property (A) have been fully completed, except as otherwise permitted by the Lender Documents, and (B) are covered, to the extent required by local law, by a validly issued certificate of occupancy. The mortgaged property is free and clear of all mechanics' and materialmen's liens which could materially adversely affect the value of the mortgaged property. No rights are outstanding that could give rise to such liens. The mortgaged property is free from all other liens, encumbrances, restrictions and covenants which would materially adversely affect the value of the mortgaged property.

(15)    The improvements upon which the appraised value was based (and upon which the Mortgage Loan, in turn, was based) lie wholly within the boundaries and building restrictions of the mortgaged property, and no improvements on adjoining properties encroach upon the mortgaged property. There are no exceptions in the title insurance policy for matters of survey, except for normal easements, restrictions, encumbrances, reservations, and other imperfections of title which, in the sole discretion of the Administration, do not materially adversely affect the value of the mortgaged property.

(16)    The Mortgage Lender has no knowledge of any circumstances or conditions with respect to the Mortgage Loan and the Deed of Trust, or the mortgaged property, or the mortgagor or the mortgagor's credit standing that can be reasonably expected to cause prudent private investors in the secondary market to regard the Mortgage Loan as an unacceptable investment at the purchase price paid by the Administration, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

(17)    The Mortgage Loan meets all applicable State and Federal laws, rules and regulations. The relevant requirements of any State or Federal laws, rules, or regulations respecting or governing usury, consumer credit, truth-in-lending, consumer protection, and real estate lending have been complied with in connection with the Mortgage Loan, and no right of rescission of the Mortgage Loan transaction (or basis therefor) exists.

(18)    The Mortgage Lender has no knowledge that the mortgaged property or the use of the mortgaged property is in violation of any applicable zoning law, rule or regulation, any applicable property restriction, or any applicable law, rule, or regulation relating to the protection of the environment.

(19)    In connection with the placement of the title insurance pertaining to the Mortgage Loan and the fire and other hazard insurance pertaining to the property securing the Mortgage Loan, to the best of the Mortgage Lender's knowledge and belief, no unlawful fee, commission, kickback, or other unlawful compensation or value, of any kind, has been or will be received, retained, or realized by any attorney, firm, or other person or entity, and no such unlawful items have been received, retained, or realized by the Mortgage Lender.

(20)    The Mortgage Lender has complied with all requirements of the (a) federal Real Estate Settlement Procedures Act of 1974, as amended by the Real Estate Settlement Procedures Act Amendments of 1975, and any further amendments, and (b) Regulation X, as amended, and any other applicable regulations in effect at the time the Mortgage Loan was originated.

(21)    The improvements upon the real property subject to each Mortgage Loan are covered by a valid and existing policy of insurance meeting the requirements of the Mortgage Agency Agreement and the Lender Documents.

(22)    The Mortgage Lender has complied with the provisions of the policy of Pool Insurance, if required, and any required PMI or GMI.

(23)    (A)    The Mortgage Lender has assisted in the completion of, obtained, and examined with reasonable care the Buyer's Affidavit and any applicable Seller's Affidavit and the other documents required in the Lender Documents, has made suitable inquiry of the affiant about the information contained in them, and has compared such information with the information contained in the appraiser's report. Based upon these actions, unless permitted by the

Administration as provided in the Lender Documents, no facts have come to the attention of the Mortgage Lender that would lead the Mortgage Lender to believe that:

> (i)    the Eligible Residence is not located in the State,

> (ii)    the Acquisition Cost of the Eligible Residence exceeds the applicable Region Limit, whether by virtue of its location, prior occupancy, reasonably anticipated additions or completions or its inclusion of space, land or outbuildings intended for any trade or business use or land in excess of that reasonably necessary to maintain its basic livability, or

> (iii)    the Borrower does not intend to occupy the Eligible Residence as the mortgagor's principal residence within 60 days after the settlement of the Mortgage Loan, or

> (iv)    except in the cases of a Targeted Area Loans or SPIF-financed Mortgaged Loans, or as may be permitted otherwise by the Administration, any of the Borrowers fail to qualify as an Eligible Borrower by virtue of the existence of a "present ownership interest" in a principal residence, or

> (v)    any mortgagor will use all or any portion of the Eligible Residence, including the land and any outbuildings, for any trade or business use, unless preapproved by the Administration, or

> (vi)    any portion of the Mortgage Loan is intended to be used to refinance an existing loan or to finance the purchase of a residence in violation of Section 7 (g) of this Agreement, or

> (vii)    a Mortgage Loan fails to comply with applicable federal tax law requirements as specified in applicable Lender Documents.

(B)    In connection with paragraph (23)(A)(iv) above:

> (i)    the Mortgage Lender has obtained from each individual who has a title interest in the Residence copies of such individual's Federal income tax returns or acceptable alternative documentation as specified in the Lender Documents for the three calendar years preceding the date on which the Mortgage Loan was closed(or the Mortgage Lender has no reasonable grounds to believe that such individual's Buyer's Affidavit was incorrect if it represents that the individual in question was not required to file a Federal income tax return for such calendar year or years) and none of such Federal income tax returns or alternative documentation shows any deduction claimed for taxes or interest on indebtedness with respect to any real property; and

> (ii)    in connection with paragraph(23)(A)(ii) above, the Mortgage Lender has no reason to believe that any payments in kind made to or for the benefit of the seller of the Eligible Residence in connection with its purchase or that any items required to be added to or

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

deducted from the sales contract price in computing the Acquisition Cost of the Eligible Residence have not been fairly valued or estimated in the contracts attached to the Buyer's Affidavit.

(24)    Each Mortgage Loan complies with the terms and conditions set forth in this Agreement.

(25)    In the opinion of the Mortgage Lender, based on its knowledge of the prevailing terms and standards of mortgage lending in the area in which the mortgaged premises are located, the mortgagor could not obtain a mortgage loan for the mortgaged property in the unassisted private lending market.

(c)    The Mortgage Lender represents and warrants that as of the date of execution of the Agreement, as of any Mortgage Purchase Date, and at all times that it is originating or attempting to originate Mortgage Loans for sale to the Administration:

(1)    In the performance of this Agreement the Mortgage Lender (A) has not discriminated or permitted discrimination against any individual or group of individuals on the grounds of sex, race, color, marital status, family status, age, religion, or national origin, or in any other manner prohibited by the laws of the United States or the State and (B) has made Mortgage Loans within such Mortgage Lender's normal lending area available on a first-come, first-served basis to Eligible Borrowers.

(2)    The Mortgage Lender (A) is a "mortgage lender" within the meaning of the Act, having its principal Maryland office located at the address first written above, or at the address in Maryland of which the Mortgage Lender has sent written notice to the Administration within 30 days of the change of such address; (B) is an approved seller of Mortgage Loans to FHLMC or FNMA; and (C) is in compliance with all other applicable State and Federal laws, rules and regulations governing the business of the Mortgage Lender and the making of loans for residential housing.

(3)    At all times since the execution of this Agreement, the Mortgage Lender has processed applications for Mortgage Loans, and has originated each Mortgage Loan, in compliance with all applicable State and Federal laws, rules, and regulations.

(4)    The Mortgage Lender has, and its officers acting on its behalf have, full legal authority to engage in the transactions covered by this Agreement and, if the Mortgage Lender is to act as Mortgage Agent, the servicing of the Mortgage Loans by the Mortgage Lender as provided for in the Mortgage Agency Agreement.

(5)    The execution and delivery of this Agreement and any Mortgage Agency Agreement and the consummation of the transactions contemplated by them, whether presently or in the future, and compliance with the terms, conditions, and provisions of them will not conflict with or result in a breach of or default under any of the terms, conditions, or provisions of the charter or by-laws of the Mortgage Lender.

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

(6)    The Mortgage Lender is not a party to or bound by any existing agreement or instrument or subject to any existing charter or other corporate restriction or any existing judgment, order, writ, injunction, decree, law, rule, or regulation which now or in the future may materially and adversely affect the ability of the Mortgage Lender to perform its obligations under this Agreement or, if the Mortgage Lender is to act as Mortgage Agent, to act as Mortgage Agent.

(7)    This Agreement and any Mortgage Agency Agreement have been duly authorized, executed, and delivered on behalf of the Mortgage Lender and constitute valid and binding obligations of the Mortgage Lender enforceable against it in accordance with their respective terms, subject to any applicable bankruptcy, insolvency, reorganization, or similar laws affecting the enforcement of creditors' rights generally.

(8)    The Mortgage Lender is duly organized, validly existing, and in good standing under the laws of the jurisdiction governing such matters and has power and authority to own its properties and carry on its own business as now being conducted and is duly qualified to do such business wherever such qualification is required.

(9)    No parent entity, subsidiary, or affiliate of the Mortgage Lender is participating as a Mortgage Lender or Mortgage Agent for the Program or the Administration except as and to the extent approved in writing by the Administration.

(10)    In the event of any acquisition, merger, or name change affecting the Mortgage Lender, the Mortgage Lender shall promptly notify the Administration and shall comply with the requirements of the Administration for amendment of this Agreement, and any Mortgage Agency Agreement, Recertification of the Mortgage Lender, or cancellation of this Agreement as deemed appropriate by the Administration in its sole discretion.

(11)    The Mortgage Lender has not suffered or permitted (A) to be entered a decree or order of a court or agency or supervisory authority having jurisdiction in the premises determining the Mortgage Lender to be insolvent or providing for the appointment of a conservator, receiver, liquidator, trustee or any similar party for any reason, including without limitation, insolvency, readjustment of debt, marshalling of assets and liabilities, bankruptcy, reorganization or similar proceedings of or relating to the Mortgage Lender or of or relating to all, or substantially all, of its property, or for the winding-up or liquidation of its affairs, or (B) proceedings under any law relating to bankruptcy, insolvency or the reorganization or relief of debtors to be instituted against it, and such proceedings remain undismissed and unstayed for a period of 20 days.

(12)    The Mortgage Lender has not (A) consented to the appointment of a conservator or receiver or trustee or liquidator for any reason, including without limitation, insolvency, readjustment of debt, marshalling of assets and liabilities, bankruptcy, reorganization or similar proceedings of or relating to the Mortgage Lender or of or relating to all, or substantially all, of its property or for the winding-up or liquidation of its affairs, (B) admitted in writing its inability to pay its debts generally as they become due, (C) filed a petition, or otherwise instituted or

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

consented to the institution against it of, proceedings to take advantage of any law relating to bankruptcy, insolvency or reorganization or the relief of debtors, (D) made an assignment for the benefit of its creditors or (E) suspended generally payment of its obligations.

SECTION 9.    Mortgage Insurance.

(a)    The following Mortgage Loans purchased by the Administration pursuant to this Agreement shall be insured under the policy or policies of Pool Insurance issued to the Administration, and the Mortgage Lender shall deliver to the Administration a commitment to insure acceptable to the Administration:

(1)    SPIF-funded Mortgage Loans that are not subject to 100% GMI;

(2)    All Mortgage Loans financed with proceeds of Single Family Program Bonds; and

(3)    Any other Mortgage Loans, where required by the Administration.

(b)    Each Mortgage Loan shall have GMI or PMI insurance coverage as required under the Lender Documents.

SECTION 10.    Repurchase.

(a)    The Mortgage Lender shall repurchase any Mortgage Loan purchased by the Administration under this Agreement upon notice by the Administration, if any of the following occurs:

(1)    The Administration determines, at any time, with respect to such Mortgage Loan that (i) any material representation by the Mortgage Lender in this Agreement was untrue when made (including any information in any document required by the Lender Documents with respect to such Mortgage Loan), (ii) any material warranty or term under this Agreement has been breached, or Mortgage Loan documents have not been provided to the Administration within the time required by the Lender Documents, (iii) a misstatement or omission of a material fact exists in any of the documents for such Mortgage Loan as required by the Lender Documents, or in the application or any other document executed in connection with the origination of the Mortgage Loan, whether made by any borrower or by the Mortgage Lender; or (iv) the Mortgage Loan when purchased did not comply with the requirements for qualified mortgage bonds under Section 143 of the federal Internal Revenue Code, as amended from time to time.

(2)    Any applicable GMI or PMI, or any coverage under any required policy of Pool Insurance or any other insurance with respect to such Mortgage Loan shall lapse at any time during the term of the Mortgage Loan because of negligence on the part of the Mortgage Lender with respect to the servicing of the Mortgage Loan;

(3)    The Administration suffers, or is threatened with, a material loss by reason of the misfeasance, nonfeasance or malfeasance, of the Mortgage Lender with respect to the servicing of the Mortgage Loan;

(4)    The Mortgage Lender, without the prior written consent of the Administration, waives the enforcement of (or consents on behalf of the Administration pursuant to) any of the provisions of the Mortgage Loan required by this Agreement;

(5)    No payment of principal or interest is made on the Mortgage Loan or the initial premium for any GMI or PMI is not paid and, on the basis of such non-payment, the issuer of the GMI or PMI or of any required policy of Pool Insurance, refuses to pay a claim on such Mortgage Loan upon the occurrence of an event of default under the Mortgage Loan;

(6)    The Mortgage Lender defaults under any provision of this Agreement or any Mortgage Agency Agreement with respect to the Mortgage Loan; and

(7)    The Administration determines, at any time, with respect to such Mortgage Loan, that any Mortgage Loan Document, including, without limitation, (i) any document obtained from a commercial on-line service that has been approved by the Administration, (ii) any document typed or otherwise transferred into the Mortgage Lender's computer system, or (iii) any other document other than a xeroxed form directly provided by the Administration, does not conform to the form required by the Administration.

(b)    The purchase price of any Mortgage Loan to be repurchased pursuant to subsection (a) above shall be the sum of (1) 100% of the unpaid principal balance of, plus accrued interest at the Interest Rate on, the Mortgage Loan, (2) the aggregate amount of any unreimbursed advances made by or on behalf of the Administration for the account of the mortgagor and interest on such amount at the Interest Rate, and (3) any unreimbursed attorney's fees, legal expenses, court costs, or other costs or expenses incurred or expended by or on behalf of the Administration in connection with such Mortgage Loan plus interest at the Interest Rate.

(c)    The Mortgage Lender shall repurchase any Mortgage Loan purchased by the Administration under this Agreement for an amount equal to 100% of the unpaid principal balance of, plus accrued interest on, the Mortgage Loan, upon notice by the Administration, if any of the actions prohibited by this Agreement occur.

(d)    Any repurchase by the Mortgage Lender shall take place on any date that the Administration may specify in its notice to the Mortgage Lender of the occurrence of one or more of the events described above, but not less than 10 days from the date of such notice. Upon repurchase, the Administration shall reassign its interest in all appropriate Mortgage Loan documents to the Mortgage Lender without recourse and shall hold the Mortgage Lender harmless from any action taken by the Administration which has impaired the mortgage lien.

(e)    The Mortgage Lender shall indemnify the Administration and hold the Administration harmless for any loss, damage, and expenses that the Administration may sustain as a result of the occurrence of any of the events mentioned in subsection (a) of this Section. Before seeking any indemnity under this subsection, the Administration shall give the Mortgage Lender timely opportunity to repurchase under this Section, not to exceed 30 days from notice to the Mortgage Lender.

(f)    The Mortgage Lender waives the defense of any statute of limitation that otherwise could be raised in defense to any repurchase obligation of the Mortgage Lender or action for damages to the Administration.

SECTION 11.  Transfer of Title to Mortgage Loans.  Transfer of the right, title, and interest of the Mortgage Lender in the Mortgage Loans to the Administration shall be in the following manner: (a) each Deed of Trust Note evidencing a Mortgage Loan shall be endorsed on the back by the Mortgage Lender to the order of the Administration in the form specified in this Agreement; (b) all Deeds of Trust that require a separate assignment in order effectively to transfer to the assignee or endorsee of the related Deed of Trust Note shall be assigned to the Administration on forms approved by the Administration; or (c) the Mortgage Lender shall use any other method that the Administration directs, all in a manner, form and condition satisfactory to counsel to the Administration.  In addition, the Mortgage Lender shall take any action necessary to ensure the proper assignment to the Administration of the Mortgage Lender's rights in any mortgagee title insurance policy relating to the Mortgage Loans.

SECTION 12.  Mortgage Loan Documents.

(a)    Where the Administration requires Pool Insurance, in order to facilitate the insurance of Mortgage Loans under the policy of Pool Insurance, the Mortgage Lenders shall submit to the issuer of such policy of Pool Insurance, at or before the making of a Commitment to make such Mortgage Loan, evidence of GMI or PMI along with all the documents required by the Lender Documents.

(b)    By the times specified by the Administration, the Mortgage Lender shall submit to the Administration for each Mortgage Loan to be purchased by the Administration on such Mortgage Purchase Date, (1) the information and documents as required in the Lender Documents, and (2) any additional documents required in the opinion of counsel to the Administration to evidence the Mortgage Lender's compliance with any representations, terms, or conditions contained in this Agreement. The Mortgage Lender warrants by this Agreement that copies of any document delivered to the Administration are true and accurate copies of their respective original documents.

(c)    By the times specified by the Administration, the Mortgage Lender shall deliver the original documents specified in the Lender Documents for each Mortgage Loan to or upon the order of the Administration, together with all assignments, endorsements, certifications and acknowledgments required by this Agreement.  The Mortgage Lender shall set aside all original

documents for all Mortgage Loans sold or to be sold to the Administration from the Mortgage Lender's own documents in clearly marked files in a secured location.

(d)    The examination of any documents by the issuer of the Pool Insurance, where applicable, or by the Administration or its counsel shall not constitute a waiver of any warranty, representation or term of this Agreement.

(e)    The Mortgage Lender shall pay for the preparation and furnishing to the Administration of all instruments and any and all expenses in connection with the transactions covered by this Agreement, including, but not limited to, the cost of preparing and recording or re-recording, as required, all the documents necessary to accomplish the transactions intended in this Agreement (except as provided below), plus applicable recording charges, and legal fees other than legal fees for services rendered by counsel to the Administration.  This subparagraph shall not prevent the Mortgage Lender from charging the Borrower closing costs on Mortgage Loans to the extent permitted by this Agreement.

(f)    The Mortgage Lender shall notify the issuer of the GMI or PMI and, where applicable,  the issuer of the policy of Pool Insurance, of the sale of the Mortgage Loans to the Administration, as and when necessary.

(g)    All Escrow Payments collected by the Mortgage Lender pursuant to the terms of the Mortgage Loan before the Mortgage Purchase Date with respect to such Mortgage Loan and held by the Mortgage Lender at that date (including investment income), shall be transferred to a special custodial account and held for the benefit of the Administration or the Mortgagor until disposition in accordance with the terms of applicable law, applicable Mortgage Agency Agreement, the Deed of Trust, or applicable GMI or PMI and Pool Insurer where applicable.

SECTION 13.    Insurance - General.

(a)    As to each Mortgage Loan purchased by the Administration, the Mortgage Lender shall cause the Administration to be designated under a standard mortgagee clause as the loss payee as its interest may appear, effective on the Mortgage Purchase Date, on each policy (1) insuring the mortgaged property against loss or damage by fire or other hazard, (2) evidencing any mortgage impairment insurance applicable to such Mortgage Loan, and (3)to the extent that such policy is required, or acquired by the Mortgage Lender, insuring the life of the mortgagor.

(b)    The Mortgage Lender, to the extent permitted bylaw, hereby assigns and sets over to the Administration as of each Mortgage Purchase Date all its right, title and interest in and to such policies or contracts of insurance described in subsection (a) above and any benefits which it has received or which it may receive under those policies or contracts on all Mortgage Loans conveyed to the Administration on such Mortgage Purchase Date.

(c)    Upon the happening of any insurable event under any insurance policy described in subsection (a) above of which the Mortgage Lender has knowledge, the Mortgage Lender shall with

all reasonable speed proceed with vigorous efforts to collect the benefits payable under them and, when collected, apply such benefits as the Administration may direct in writing. The Administration designates and vests the Mortgage Lender with all rights necessary to act for and in behalf of the Administration to collect such benefits.

SECTION 14.   Representations and Warranties of Administration.   The Administration represents and warrants that its execution of this Agreement and the Mortgage Agency Agreement has been duly authorized and is in all respects in compliance with the Act.

SECTION 15.   Required Statement.   In the Lender Documents, the Administration may require the Mortgage Lender to include in each Commitment, if any, for a Mortgage Loan a statement that the Mortgage Loan was made available through the efforts of the Administration.

SECTION 16.   Mortgage Loans as Additional Loans. The Mortgage Lender represents and warrants that each Mortgage Loan shall be in addition to, and not in substitution for, residential mortgage loans it otherwise would have made in the State and that no Commitment to make any such Mortgage Loan was entered into before the Program Opening Date specified by the Administration for any series of bonds, or in substitution for any Commitment entered into before that date.

SECTION   17.   Additional Inducements to Mortgage Lenders.   The Administration may offer additional inducements to encourage Mortgage Lenders to make Mortgage Loans which will further specific purposes of the Administration. The Administration shall provide any inducements in the amount or amounts, in the manner, on the conditions or under the circumstances determined in its sole discretion.

SECTION 18.   Remedies.   If the Mortgage Lender fails to deliver Mortgage Loans in accordance with the terms of this Agreement, or fails to comply with the terms and conditions of this Agreement, any applicable Mortgage Agency Agreement, or any Lender Documents, the Administration may terminate this Agreement, and/or require the repurchase of any affected Mortgage Loans. Moreover, the Mortgage Lender agrees to indemnify the Administration and hold the Administration harmless with respect to any and all claims and damages arising from or related to such failure. In addition, the Administration reserves all its rights and remedies against the Mortgage Lender available at law or in equity.

SECTION 19.   Opinion of Counsel and  Financial Information.   At the time of delivery of this Agreement, the Mortgage Lender shall deliver an opinion of counsel to the Mortgage Lender in substantially the form of the attached Exhibit A and the certificate of resolutions and authorized officers required by Exhibit A (Attachment A) and financial and other information required by Exhibit B; these exhibits may be amended from time to time by the Lender Documents. The Mortgage Lender shall provide any supplements to or updates of the opinion of counsel or of the financial and other information that the Administration requests.

SECTION 20.   Other Provisions.

(a)    The Mortgage Lender, at its expense, shall execute all other documents and take all other steps requested by the Administration from time to time to perform the covenants, representations, and warranties in this Agreement.

(b)    The Administration may at any time decline to purchase any Mortgage Loan offered or submitted to it by the Mortgage Lender, that the Administration determines, in its sole judgment, does not conform to this Agreement. In this event, the Administration will execute and deliver any reassignment of the Mortgage Loan required to return clear record ownership of the Mortgage Loan to the Mortgage Lender.

(c)    The provisions of this Agreement may not be modified except by a written instrument signed by the parties. The provisions of this Agreement cannot be waived except by (1) a written instrument signed by the party granting the waiver or (2) a Lender Document. Inaction or failure to demand strict performance shall not be deemed a waiver. Any waiver granted by the Administration in any specific instance may not be a waiver in any other instance.

(d)    If the Mortgage Lender receives any funds from any source intended to reduce or pay the Mortgage Loan or to assist in the payment of the monthly payments, the Mortgage Lender shall apply all such funds for the purposes intended.

(e)    This Agreement shall be governed by the laws of the State of Maryland.

(f)    In any action or proceeding arising out of, or as a result of, this Agreement or any Mortgage Agency Agreement executed by the Mortgage Lender, or the alleged or anticipated breach of any of the provisions, representations, or warranties contained in this Agreement, in any Lender Documents, or in any Mortgage Agency Agreement, the Mortgage Lender submits to the jurisdiction of the Circuit Court of Anne Arundel County, Maryland; provided, however, that in any such action or proceeding arising under federal jurisdiction, the Mortgage Lender submits to the jurisdiction of the United States District Court, the District of Maryland. The Mortgage Lender waives any objection to venue for any such action being instituted in Anne Arundel County, or in the case of federal jurisdiction in Maryland.

(g)    All communications between the parties shall be in writing and, for all purposes shall be deemed received or given when mailed, certified or registered mail, postage prepaid, addressed to the Administration at 100 Community Place, Crownsville, Maryland 21032, Attention: Director, Homeownership Programs, and to the Mortgage Lender at its address shown on this Agreement. The Administration and the Mortgage Lender may designate to the other party in writing other or different addresses to which communications may be sent.

(h)    All agreements, representations, and warranties made in this Agreement, in the Lender Documents and in any Mortgage Agency Agreement executed by the Mortgage Lender shall survive the purchase of any and all Mortgage Loans under this Agreement.

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

(i)    This Agreement may be executed in any number of counterparts, all of which taken together constitute one and the same instrument, and either party may execute this Agreement by signing one or more counterparts.

(j)    Headings and titles in this Agreement are for convenience only and may not influence the construction or interpretation of this Agreement.

(k)    If any term, covenant, condition, or provision of this Agreement, or the application of it to any circumstance, shall be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, or the application of it to circumstances other than those for which it is held invalid or unenforceable, shall not be affected and each term, covenant, condition, and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(l)    The Mortgage Lender may not assign this Agreement without the written consent of the Administration.

(m)    All of the covenants and agreements contained in this Agreement shall extend to and be obligatory upon all successors of the respective parties.

(n)    The Mortgage Lender, to the extent not disqualified by the Administration, may enter into a Mortgage Agency Agreement, with respect to the servicing of all Mortgage Loans sold by the Mortgage Lender to the Administration pursuant to this Agreement.

(o)    The Administration may periodically evaluate the Mortgage Lender's performance under this Agreement in accordance with criteria specified by the Administration in the Mortgage Lender Documents.  As a result of its evaluation of the Mortgage Lender, the Administration may decline to purchase further Mortgage Loans from the Mortgage Lender, take other specified actions, and may additionally cancel this Agreement.

(p)    This Agreement amends and restates in its entirety any previous Mortgage Purchase Agreement entered into by the Mortgage Lender and the Administration.

Mortgage Purchase Agreement
JKM/waf/sm/r:Bonds/SF(072800)

Page 30

IN WITNESS WHEREOF, the parties have duly executed this Agreement, which shall be, effective as of the date the Administration executes the Agreement.

ATTEST:

American Home Mortgage Corp
Name of Mortgage Lender

By: _____   6·14·01
        Signature                    Date

Andrew Valentine, Sr. VP/Corp.
Printed Name and Title    Counsel

WITNESS:

COMMUNITY DEVELOPMENT
ADMINISTRATION

By: _____
        Authorized Officer
        Homeownership Programs

Date: _____7/25/01_____