1

1

2    UNITED STATES BANKRUPTCY COURT

3    DISTRICT OF DELAWARE

4    Case No. 07-11047-css

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    AMERICAN HOME MORTGAGE HOLDINGS, INC.,

9

10         Debtor.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              824 North Market Street

16              5th Floor

17              Wilmington, Delaware

18

19              May 1, 2008

20              2:07 PM

21

22   B E F O R E:

23   HON. CHRISTOPHER S. SONTCHI

24   U.S. BANKRUPTCY JUDGE

25

2

1

2    HEARING re Second Interim Fee Request of Cadwalader, Wickersham

3    & Taft LLP as Special Counsel to the Debtors.

4

5    HEARING re Second Interim Fee Request of Allen & Overy, Special

6    Regulatory Counsel to the Debtors.

7

8    HEARING re Debtor's Third Omnibus (Substantive) Objection to

9    Claims.

10

11   HEARING re Application for Order Authorizing Employment of

12   Hennigan, Bennett & Dorman LLP as Special Conflicts Counsel.

13

14   HEARING re Debtors' Second Omnibus (non-Substantive) Objection

15   to Claims Pursuant to Section 502(b) of the Bankruptcy Code,

16   Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1.

17

18   HEARING re Motion of Citimortgage Inc. for Relief from the

19   Automatic Stay under 11 U.S.C. Section 362(d)(1) at to 228

20   Brookwood Drive #4, Unit 155, South Lyon, Michigan.

21

22

23

24

25

3

1

2    HEARING re Application for Order Authorizing Employment of Law

3    Offices of Joseph J. Bodnar as Special Conflicts Delaware

4    Counsel to the Official Committee of Unsecured Creditors Nunc

5    Pro Tunc as of March 6, 2008.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Penina Wolicki

25

4

1

2  A P P E A R A N C E S :

3  YOUNG CONAWAY STARGATT & TAYLOR, LLP

4      Attorneys for Debtor

5      The Brandywine Building

6      1000 West Street

7      17th Floor

8      Wilmington, DE 19801

9

10  BY:   MATTHEW LUNN, ESQ.

11      NATHAN GION, JR.

12

13

14  BLANK ROME LLP

15      Attorneys for Official Committee of Unsecured Creditors

16      Chase Manhattan Centre

17      1201 Market Street

18      Suite 800

19      Wilmington, DE 19801

20

21  BY:   DAVID CARICKHOFF, ESQ.

22

23

24

25

5

POTTER ANDERSON & CARSON LLP

    Attorneys for Bank of America, N.A.

    Hercules Plaza

    1313 North Market Street

    Wilmington, DE 19801

BY:   LAURIE SELBER SILVERSTEIN, ESQ.

KAYE SCHOLER LLP

    Attorneys for Bank of America, N.A.

    425 Park Avenue

    New York, NY 10022

BY:   MARGOT SCHONHOLTZ, ESQ. (TELEPHONICALLY)

    ANA ALFONSO, ESQ. (TELEPHONICALLY)

MILBANK, TWEED, HADLEY & MCCLOY LLP

    Attorneys for Creditor ABN AMRO

    610 South Figueroa Street

    30th Floor

    Los Angeles, CA 90017

BY:   ROBERT J. MOORE, ESQ. (TELEPHONICALLY)

    FRED NEUFELD, ESQ. (TELEPHONICALLY)

6

1

2   GREENBERG TRAURIG, LLP

3        Attorneys for AH Mortgage Acquisition

4        The Nemours Building

5        1007 North Orange Street

6        Suite 1200

7        Wilmington, DE 19801

8

9   BY:   VICTORIA COUNIHAN, ESQ.

10

11   UNITED STATES DEPARTMENT OF JUSTICE

12        Office of the US Trustee

13        844 King Street

14        Wilmington, DE 19801

15

16   BY:   JOSEPH J. MCMAHON, ESQ.

17

18   LAW OFFICES OF JOSEPH J. BODNAR

19        Proposed Conflict Counsel

20

21   BY:   JOSEPH J. BODNAR, ESQ.

22

23

24

25

7

1

2    ECKERT SEAMANS

3          Attorneys for Calyon New York Branch

4          300 Delaware Avenue

5          Wilmington, DE 19801

6

7    BY:   MICHAEL BUSENKELL, ESQ.

8

9

10   HUNTON & WILLIAMS

11         Attorneys for Calyon New York Branch

12         951 East Byrd Street

13         Richmond VA 23219

14

15   BY:   JASON HARBOUR, ESQ. (TELEPHONICALLY)

16

17

18   HENNIGAN BENNETT & DORMAN, LLP

19         Proposed Special Conflict Counsel for Committee

20         865 South Figueroa Street

21         Los Angeles, CA 90017

22

23   BY:   JOSHUA MORSE, ESQ. (TELEPHONICALLY)

24

25

8

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  Please be seated.  Good afternoon.

4          MR. LUNN:  Good afternoon, Your Honor.  May it please

5    the Court, Matthew Lunn from Young Conaway on behalf of the

6    debtors.  Referring to the agenda, Your Honor, we can go

7    through this pretty quickly, I believe.  Agenda items 1 through

8    27 are either adjourned, withdrawn or orders have been entered,

9    specifically with respect to item 6, Your Honor may recall that

10   there was a motion called a short motion filed by Zea in

11   relation to a construction loan.  They didn't appear at one

12   hearing.  We carried it.  The counsel has actually withdrawn

13   that motion.  And then that takes us to agenda item 28.  This

14   was the debtor's motion for approval of a settlement with

15   Calyon, and I saw an ordered was entered just a few moments

16   ago, so we appreciate Your Honor's consideration of that.

17   Agenda items 29 through 36, these are first lien foreclosures

18   where the debtors filed reservations of rights and I've seen

19   orders being entered on those matters as well.

20          THE COURT:  Correct.

21          MR. LUNN:  That carries us, then, to agenda item

22   number 37, and this is the continuation of the second interim

23   fee request of Cadwalader.  We had filed a certification of

24   counsel right before lunch, Your Honor.  I don't know if Your

25   Honor's had an opportunity to review that certification.

1      THE COURT:  I just signed that, literally moments

2  ago.

3      MR. LUNN:  All right.  Thank you, Your Honor.  Agenda

4  item 38 was the continuation of the Allen & Overy second fee

5  app, and an order was entered on that.  We are therefore at

6  agenda item number 39, which is the debtor's third omnibus

7  substantive objection to certain claims, Your Honor.  And by

8  this objection, we request an entry of an order that expunges

9  the claims identified on Exhibit A as no liability; those

10  identified on Exhibit B as asserted against the wrong debtor;

11  the claims identified on Exhibit C to reduce them; again reduce

12  the claims identified on Exhibit D; and reclassify the claims

13  on Exhibit E.  In support of the objection we also filed a

14  declaration of John Callas (ph.) who is the senior vice

15  president and deputy general counsel of the debtors.  That

16  declaration was attached to the third omnibus objection.  Mr.

17  Callas is appearing telephonically in the event that Your Honor

18  does have questions with regards to the claims.  There were no

19  objections to this third omnibus objection.  I can walk through

20  the basis, Your Honor, or we can, if you would --

21      THE COURT:  I left my notebook in my chambers with

22  regard to that.  I'll be right back.  Don't move.

23      MR. LUNN:  Okay.  No problem, Your Honor.

24   (Pause in proceedings)

25      THE COURT:  If you could go to Exhibit C, Reduced

1   Claims.  Let's see, claim number 28, 29, I guess.

2        (Pause in proceedings)

3           THE COURT:  As far as I can tell for Rianna Contreras

4   (ph.), the reduced amount and the claim amount are the same, so

5   I'm not sure what the basis was or if that's a mistake.

6           MR. LUNN:  Your Honor, it may be a mistake.

7           THE COURT:  Okay.

8           MR. LUNN:  What we can do, Your Honor, if it's

9   acceptable, is adjourn it with respect to that matter.  If we

10  find out it is a --

11          THE COURT:  Oh, you know what, are you changing the

12  classification?

13          MR. LUNN:  Exhibit C.  That should be just reduced,

14  Your Honor.

15          THE COURT:  Because it's filed as priority.  Sorry,

16  it was scheduled as priority.

17          MR. LUNN:  Your Honor, we're not changing class,

18  we're simply reducing by this exhibit, and I do see that we --

19          THE COURT:  All right.

20          MR. LUNN:  -- actually haven't reduced it.

21          THE COURT:  Have not reduced it.  All right.  Well,

22  we'll just leave it in there as it is, and if you decide at a

23  later date you want to change it, you can.

24          MR. LUNN:  Very good, Your Honor.  Thank you.

25          THE COURT:  All right.  I didn't have any other

11

1    questions.

2           MR. LUNN:  I do have a proposed form of order.  If I

3    may approach?

4           THE COURT:  You may.  I'll sign it.  Thank you.

5           MR. LUNN:  The next agenda item, Your Honor, is

6    agenda item 40.  An order has been entered on it with respect

7    to this matter based on the certification of counsel that was

8    filed yesterday.  Agenda item number 41 is the application to

9    retain Hennigan Bennett as special conflicts counsel for the

10   committee.  And I understand that there's been an agreed order

11   that's been entered into with the trustee and Hennigan, and

12   I'll cede the podium, Your Honor.

13          THE COURT:  Okay.  Thank you.

14          MR. MORSE:  Good afternoon, Your Honor.  Joshua Morse

15   from Hennigan, Bennett & Dorman, LLP, proposed special

16   conflicts counsel to the official committee of unsecured

17   creditors.  We filed an application on March 18th.  No

18   objections have been filed.  Over the last week in numerous

19   telephone conversations we received comments to the form of

20   order with respect to the application from counsel to the

21   United States Trustee.  That's resolved the concerns raised by

22   counsel to the United States Trustee.  We've agreed to add four

23   provisions to the form of order as well as other minor

24   modifications.  I believe, in court, Mr. Bodnar, our proposed

25   local counsel is there and does have a copy in clean and black

1   line of that form of order.  And assuming he is there, he'd be

2   able to hand that up.

3           THE COURT:  See, now I could get him in trouble and

4   tell you he's not here.  But he's here, of course, he's here.

5           MR. MORSE:  Okay.  Great.

6           THE COURT:  Mr. Bodnar, would you approach, please?

7   Thank you.

8           MR. BODNAR:  Thank you, Your Honor.

9           THE COURT:  You're welcome.

10          MR. MORSE:  And Your Honor, if you'd like I can walk

11  through the four additional provisions with kind of a broad

12  explanation as to what they do.  The first, which appears in

13  the middle of the second page, essentially just more

14  specifically identifies the scope of our engagement, first as

15  to any matter that the committee is adverse to at Bank of

16  America; second as to any matter the committee is adverse to

17  J.P. Morgan; and finally any other bankruptcy and/or commercial

18  litigation matters in which the committee's bankruptcy counsel

19  Hahn Hessen and/or Blank & Rome will not be able to represent

20  the committee because of a conflict.

21          The second provision, we've agreed to provide on a

22  quarterly basis the U.S. Trustee with a notice identifying the

23  particular matters on which we are currently representing the

24  committee on.  The third provision which begins at the bottom

25  of that second page and then carries over to the third page,

1    just confirms that nothing in our retainer agreement or the

2    application has waived the committee's ability to object to any

3    undisclosed connection with interested parties or undisclosed

4    or future connections that may arise.  It also confirms our

5    obligations under Bankruptcy Rule 2014.  Finally, the last new

6    provision added is essentially just an express confirmation

7    that by entering this order the Court is not approving any fee

8    enhancement award or any compensation at this time above our

9    guideline hourly rates.  Of course, we do reserve the right to

10   seek such award or compensation at the end of the engagement.

11              THE COURT:  Okay.

12              MR. MORSE:  Other than that, I'm able to answer any

13   questions that you may have.  I would also ask counsel to the

14   U.S. Trustee to again confirm that he is amenable to the

15   changes that have been proposed.

16              THE COURT:  All right.  Thank you.  Does anyone wish

17   to be heard in connection with this matter?  Mr. McMahon, I

18   take it this is acceptable.

19              MR. MCMAHON:  It is, Your Honor.

20              THE COURT:  Okay.  The Court will approve it as

21   revised.

22              MR. MORSE:  Thank you very much, Your Honor.

23              THE COURT:  You're welcome.

24              MR. MORSE:  And I'd ask the Court's permission to be

25   excused from the remainder --

1          THE COURT:  That's fine.

2          MR. MORSE:  -- of the hearing?

3          THE COURT:  Yes, thank you.

4          MR. MORSE:  Thank you.

5          MR. LUNN:  The next agenda item, Your Honor, is the

6    debtors' second omnibus non-substantive objection to claims.

7    By this objection, the debtors are seeking entry of any order

8    that either expunges or reassigns each of the claims that are

9    identified on Exhibits A through E.  Specifically, the debtors

10   are objecting to the claims identified on Exhibit A as

11   duplicative; those identified on Exhibit B as amended and

12   superceded; those identified on Exhibit C as being filed on

13   account of equity holders; the claims identified on Exhibit D

14   as asserted against the wrong debtor or in some cases they

15   actually failed to identify any debtor; and those identified on

16   Exhibit E as having been satisfied.  Again, in support of the

17   objection, we file the declaration of John Callas, Mr. Callas

18   is appearing telephonically.  Individualized notices were sent

19   to the claimants, Your Honor.  Those individualized notice, the

20   form of which were attached to the objection.  Notice was

21   proper under the local rules and also under the Bankruptcy

22   Rules with respect to the time and manner of service.

23          We did receive a number of responses, Your Honor.

24   Those probably can best be characterized into two groups:  one

25   where the claimants didn't understand actually the relief that

1   was being requested; and two, those asserted by equity holders

2   on the basis that their claims shouldn't be expunged simply

3   because they hold equity interest.  The responses by the equity

4   holders are listed on agenda items A, B, D, E, G, H, K, L, M,

5   N, O, R, S, T, V, W, X, Y, and Z, Your Honor.  The claims

6   identified on Exhibit C were filed by shareholders solely on

7   the basis of the ownership of equity, not on account of damages

8   or other claims asserted against the debtors.  As a result, the

9   debtors would respectfully request that Your Honor sustain the

10   objection with respect to those claims.  We have agreed to

11   adjourn the objection and withdraw -- actually adjourn the

12   objection with respect to certain of the claims.  We've

13   reflected that adjournment in the proposed form of order.

14   Specifically Claim 1442 which appeared on Exhibit E is being

15   adjourned.  Claim 6149, which appeared on Exhibit C is being

16   adjourned.  And Claims 231 and 2528, which also appeared on

17   Exhibit E are being adjourned.

18          Additionally, we reached out to one of the other

19   responding claimants, Ms. Von Buren, who had filed two claims,

20   Your Honor.  We were seeking to expunge her second claim as

21   amended and superceded.  She has requested that we actually

22   expunge her second filed claim and keep -- I'm sorry, expunge

23   her first filed claim, Claim 299, and leave in its place the

24   later filed claim, which we've agreed to and we've changed the

25   corresponding exhibit.  I have a proposed form of order and a

1    black line that shows the adjournment.  I don't know if Your

2    Honor has any questions before I present the form.

3            THE COURT:  No, I do not.  And I'll overrule the

4    objection in connection with the equity interests.  The fact

5    that those are not claims.

6            MR. LUNN:  Thank you, Your Honor.

7            THE COURT:  They are equity interests and will be

8    reclassified as such.

9            MR. LUNN:  May I approach?

10            THE COURT:  Yes.  Thank you.

11            MR. LUNN:  One is a black line, Your Honor, and the

12    other is the clean version of the order.  There's a green flag

13    that just shows where we've changed the claim numbers for Ms.

14    Van Buren who was hard to get actual black line to show that

15    change, Your Honor.

16            THE COURT:  Understood.  Does anyone wish to be heard

17    in connection with this matter?  All right.  As I said, I'll

18    overrule the objection of the interest holders who asserted

19    proofs of claim and reclassify those claims as interests.

20            MR. LUNN:  Thank you, Your Honor.

21            THE COURT:  And otherwise grant the relief requested

22    in the motion.

23            MR. LUNN:  Thank you.  Agenda item 43 is

24    certification -- this was another first lien foreclosure.

25    Certification of counsel was filed and an order has been

1    entered.  And that brings us to the last agenda item which is

2    agenda item number 44 and the application to retain Mr. Bodnar,

3    Your Honor.  And I'll cede the podium.

4              THE COURT:  Mr. Bodnar.

5              MR. BODNAR:  Thank you, Your Honor.  Good afternoon.

6    Today you have before you my application for retention as

7    special conflicts counsel in this case, and I'm sure you

8    understand that what has arisen in this case, according to the

9    U.S. Trustee, is that I have an adverse interest because one or

10   more of the creditors that I represented, I represented three

11   creditors in this case, has potentially a setoff claim; and

12   that because a claimant with a setoff claim under Section 506,

13   is called a secured creditor, they've taken a position that

14   that is a disabling adverse interest.

15             I think that it isn't, and I'd like to point Your

16   Honor's attention to Chief Judge Walrath's decision in eToys,

17   in which he was talking about a situation where there had been

18   certain nondisclosure of financial institutions that had been

19   represented by some attorneys and a request for a disgorgement

20   of fees.  And in that connection, she was talking about adverse

21   interest under 327, but I think the term is synonymous as used

22   in 1103.  In that case, what she said was that an adverse

23   interest is either of two things:  one, where you have any

24   economic interest that would tend to lessen the value of the

25   bankruptcy estate; or, would create either an actual or

18

1    potential dispute in which the estate is a rival claimant.  So

2    let's take a look at those two prongs of that test.

3            The first one is a question of whether or not the

4    value of the estate is reduced.  And here, if you were to take

5    a snapshot of this estate, and let's look at it just at the

6    time the petition is filed, you would have the debtor holding

7    certain claims against the creditors that I represented and

8    they would have certain claims that they were holding, which

9    are the ones that would be setoff.  And if the debtor were, at

10   that time, to try to sell the claims that it had, undoubtedly a

11   buyer would say well, what charges are against it, and would

12   make a discount for the setoff claim.  So that at that point in

13   time, the value would be, let's say X, or let's put some

14   numbers to it.  Let's say that the debtor has a claim of ten

15   million dollars in the aggregate against the three creditors,

16   and they have an offset worth five million.  A buyer at that

17   point in time would be willing, everything else being equal, to

18   pay five million dollars.

19           Today, the situation is no different.  There's still

20   a setoff claim.  There's still a debtors' claim against the

21   creditors that's worth ten million minus the five million of

22   setoff.  So then that amount and the value even today, would

23   still be five million.  So while I would argue that under the

24   first prong of this test, a setoff right doesn't reduce the

25   value of the estate.  So then applying that test, you'd have to

1    look to the second prong.

2         So the question is, would that situation create

3    either an actual or potential dispute?  And the fact of the

4    matter is, Your Honor, at this point in time, the answer is, as

5    best that I can tell, we don't know.  The three creditors did

6    file four proofs of claim in total on the last day that proofs

7    of claim could be filed because there was a bar date set.  And

8    two of them, on their face, claim that they have setoff rights.

9    Now, the fact of the matter is my co-counsel Brian Goldberg

10   from the Dickstein Shapiro firm out of Manhattan, has been

11   trying to discuss those claims with debtors' counsel, and to

12   date, doesn't really have an answer as to whether or not

13   there's a claim or a dispute.

14        So at this point in time I think the best that could

15   be said under this test is that maybe in the future at some

16   time there may be a potential dispute or even an actual dispute

17   between one or more of the creditors that I represent and the

18   debtor.  But at this point in time there just isn't one because

19   we just don't know.

20        THE COURT:  Wasn't the issue not whether or not

21   there'd be a dispute between the other claimants and the

22   debtor, the dispute becomes is there going to be a claim or a

23   dispute between the secured versus the unsecured type of

24   creditor?  Isn't that where the rub is?

25        MR. BODNAR:  Even if that were the question that

20

1    you'd have to answer, at this point in time, standing here

2    today, I don't know the answer.

3            THE COURT:  Then isn't that enough to disable you

4    from meeting the test --

5            MR. BODNAR:  Well I --

6            THE COURT:  -- as articulated by Judge Walrath?

7            MR. BODNAR:  -- I don't think so, because of the way

8    she phrased the test.  It says would create, it doesn't say

9    will create.  And it certainly doesn't contemplate may create.

10   And in this situation, I think the answer could be that in

11   another week or two, or two months, it may turn out that

12   everyone agrees what the claims are and therefore there are no

13   disputes.  So there is never either a potential dispute or an

14   actual dispute.

15           THE COURT:  Um-hum.

16           MR. BODNAR:  But as we stand here today, unless the

17   debtor can stand up and tell me there is a dispute that I just

18   don't know about, I think when you apply this test from eToys

19   there isn't an adverse interest.  And I think it also goes back

20   to sort of the nature of a setoff.  It's really much different

21   than what you typically see with the secured creditor.  A

22   setoff really permits a creditor to charge the corresponding

23   claim from the debtor back to it.  So it's really a provision

24   in the law where the law recognizes that it's fair for the

25   creditor to be able to use their claim against the debtor and

1   for it not to be just stricken or reduced down to whatever the

2   percentage of distribution is in the case.

3           THE COURT:  Um-hum.

4           MR. BODNAR:  That's a legal right as opposed to a

5   consensual right which you have typically on the secured side,

6   where the debtor actually uses its property and consents to a

7   charge being placed on it, whether it's a mortgage or a UCC

8   security interest, or the like.

9           THE COURT:  All right.  Let me hear from Mr.

10  McMachon, please.

11          MR. MCMAHON:  Your Honor, good afternoon.  Joseph

12  McMahon for the United States Trustee, and I'll be brief.  We

13  laid out the statutory standard in our objection.  Clearly we

14  believe that Mr. Bodnar has to meet the same standard that

15  Blank Rome, that Hahn & Hessen have to meet.  There's no 327(e)

16  for special committee counsel, so we're under one standard, as

17  Mr. Bodnar himself appears to have acknowledged.  So let's

18  address the standard.  The adverse interest test.  Frankly, in

19  this situation, we have Mr. Bodnar as local counsel,

20  concurrently representing or seeking to represent both the RBC

21  Greenwich entities and at the same time represent the committee

22  in connection with the same matter in the same case. And as the

23  exhibits to our objection note, and I think the Court can take

24  judicial notice of them, they're taken directly from the Court

25  approved claims agents website, they are asserting setoff

22

1    rights in connection with the cases.  We didn't even go further

2    into analysis of what other disputes may arise in terms of

3    potential preferential transfers and the like.  On the face of

4    what we have before the Court today, you have a situation where

5    RBC and Greenwich satisfy both prongs of the eToys test.  They

6    are asserting an economic interest that will tend to diminish

7    the size of the bankruptcy estate.  In other words, every

8    dollar that's asserted validly but via setoff diminishes --

9            THE COURT:  Yeah, but that can't be.  It can't just

10   be that, because if they didn't have setoff rights, if they

11   were just general unsecured creditors, 1103(b) would say that

12   that in and of itself is not a per se conflict.  In other

13   words, representation of one or more creditors of the same

14   class as represented by the committee shall not, per se,

15   constitute the representation of an adverse interest.  So it

16   can't be just that if the claim is allowed it can somehow

17   diminish the estate, because that would make the last sentence

18   of 1103(b) not make any sense.

19           MR. MCMAHON:  Well, I don't think it's just that,

20   Your Honor.  I think it goes back -- I agree with the Court.

21   It's just not the mere fact that -- well, I don't see the word

22   diminishing in the first prong of the eToys test --

23           THE COURT:  Well --

24           MR. MCMAHON:  -- as meaning that.  I mean, in other

25   words, an unsecured creditor with an allowed claim, I guess,

1   shares in the distribution of the bankruptcy estate.

2            THE COURT:  Right.

3            MR. MCMAHON:  I think what we're talking about in

4   terms of setoff is what's the aggregate size of the cookie

5   jar --

6            THE COURT:  Right.  It's a priority scheme that

7   affects the size of the pie available for general unsecured

8   creditors.  And every penny of secured claim allowed by Mr.

9   Bodnar's other clients hypothetically reduces the size of the

10  pie available for general unsecureds to share in pro rata.

11           MR. MCMAHON:  I couldn't have said it any better,

12  Your Honor.  And consistent with the question that the Court

13  asked Mr. Bodnar, that's essentially where the gravimen of the

14  issue falls for us.  If you look at the cases, all the cases,

15  at least from our perspective, or the bulk of them deal with

16  the issue of whether or not you can -- to the extent that a

17  dispute arose --

18           THE COURT:  Let me ask you a quick question.  When

19  you form a committee, do you ask potential committee members

20  whether they have setoff rights?  And if so, does that affect

21  whether or not those people get appointed to committees?

22           MR. MCMAHON:  Well, Your Honor, we do ask whether or

23  not they have both -- aside from a host of other information,

24  whether or not they have administrative claims or secured

25  claims.

1      THE COURT:  Or secured claims.  You specify setoff?

2      MR. MCMAHON:  I'd have to go back and look at the

3  questionnaire.  I can't specifically state.

4      THE COURT:  It's been a while since I looked at it.

5      MR. MCMAHON:  But in our review process, I can just

6  tell you that we're keenly aware of whether or not we're

7  putting a secured creditor on the committee.  So back to this

8  issue, Your Honor, I think if we review the cases on conflicts

9  with committees generally, the critical issue that gets

10  addressed is whether or not you can represent a bank group in

11  an unrelated case.  That's usually where a lot of these

12  disputes tend to arise.  I have the printout from Colliers with

13  me, and I'd like to hand it up --

14      THE COURT:  Yes.

15      MR. MCMAHON:  -- to the Court for review.  I don't

16  think there's any dispute as to the fact that you can't do it

17  under the statutory language of 1103(b), in connection with the

18  same case.  And that -- I don't think there's a bona fide

19  dispute with respect to that.

20      THE COURT:  Yes.

21      MR. MCMAHON:  May I approach?

22      THE COURT:  Yes.

23      MR. MCMAHON:  Thank you.  And I'm looking at that

24  paragraph that --

25      THE COURT:  Oh, really.

1    MR. MCMAHON:  -- begins with "The absolute

2  prohibition".

3      (Pause in proceedings)

4        THE COURT:  Okay.

5        MR. MCMAHON:  Your Honor, I have nothing further

6  unless the Court has questions.

7        THE COURT:  All right.  No.  Mr. Bodnar, any reply?

8        MR. BODNAR:  Your Honor, the only other point that

9  I'd like to make is, if Your Honor is inclined to find that

10  there's an adverse interest here, I would request that you

11  permit me to still file a reasonable fee application in

12  connection with this case because this is not a case like the

13  eToys case where there was a case of nondisclosure.  Here there

14  was disclosure, cooperation with the U.S. Trustee's review of

15  this matter in connection with today's hearing.  Everything was

16  disclosed and I think that Your Honor would note that in this

17  case, it's a large case, practically everyone who's involved in

18  bankruptcy matters in town is involved in --

19        THE COURT:  Yeah.

20        MR. BODNAR:  -- this case.  And it's almost by a rule

21  of necessity that someone had to be retained to discharge the

22  duties that Delaware counsel needs to discharge.  And lastly, I

23  think that this Court has a residual amount of equitable power,

24  not unlike what I saw in Black's Law Dictionary this week as I

25  was flipping through under a concept called "of grace", which

1    relates to the ability of the chancellor to dispense favors for

2    the king in situations that are not necessarily covered either

3    by law of the statute or equity.  So I would ask that even if

4    you were to find that there were a adverse interest in this

5    particular matter, under the circumstances where I was

6    contacted about a week before they needed counsel to perform

7    work and the fact that this whole retention process takes

8    thirty days or more, and it may well be in this case that

9    there's nothing else, actually, for Delaware counsel to do on

10   this particular engagement --

11             THE COURT:  Right.

12             MR. BODNAR:  -- that my request --

13             THE COURT:  Mr. McMahon, do you have an opinion on

14   that?

15             MR. MCMAHON:  Yes, I do, Your Honor.  We would object

16   to that.  Equity follows the law.  If you're not permitted to

17   be retained because you have a conflict from day one, you've

18   got conflict.  And then third, if you follow the cases about

19   stay release, and in that Third Circuit opinion a professional

20   tried to, after he was disqualified by the code under 327,

21   tried to come back in under 503(b)(1)(a) and say please pay me,

22   notwithstanding the conflict, the Court said no.  In other

23   words, this is a matter of simple statutory instruction.

24             THE COURT:  Right.

25             MR. MCMAHON:  If the rule's there it means something.

27

1          THE COURT:  Yes.

2          MR. BODNAR:  Well, Your Honor, be that as it may, my

3    point is, is that if the committee have retained someone to do

4    the things that I have done, they would have paid for them

5    anyway, and in an equitable sense, it isn't like I could have

6    done anything more.  I did discuss this matter with counsel for

7    the committee.  Counsel for the debtor hasn't objected.

8          THE COURT:  Well, here's what I'm going to do.  I do

9    believe that you represent an adverse interest in connection

10   with the case.  And as a result, under 1103(b), I don't believe

11   you're eligible for retention.  There's the issue that you

12   represent creditors in this case, which under the cited law of

13   Ayers (ph.) and the Dido Steel case, 178 Br. 129, would

14   technically make you ineligible as a per se matter.  I'm not

15   even sure, even if that's not applicable, I think that the fact

16   that the setoff right asserted by your other clients, the fact

17   that the law makes them secured creditors at least to the

18   extent of the setoff, really puts you in a situation where you

19   clearly are representing two parties with adverse interests;

20   one, the official committee of unsecured creditors, and the

21   other, secured creditors. And every dollar you get on behalf of

22   the secured creditors, reduces the amount of money available

23   under the priority scheme for unsecured creditors.  I think

24   that's a conflict that is just unavoidable.  You can't get

25   around it.

1        In connection with whether you can file a fee

2    application or not, I'll let you file a fee application.  It

3    shouldn't take you much to file the fee application and notice

4    it up without prejudice to whether or not I'm going to allow it

5    or not, okay.  So, at this time, I don't feel I'm in a position

6    to rule one way or the other.  Mr. McMahon makes a strong

7    argument, but of course, I understand and appreciate the fact

8    that there are many, many lawyers in town who already are

9    involved in the case.  You were brought in eight months into

10   the case in an emergent basis to perform services for the

11   committee.  So I am sensitive to that and I'll look at it.  I

12   just don't feel like I'm in a position, one way or the other.

13   So I'm not approving your retention, and I'll reserve decision

14   pending an actual submission of the fee application.  And

15   obviously, Mr. McMahon, you'll have an opportunity to object

16   and we can notice that up for a subsequent hearing.

17        MR. MCMAHON:  Thank you, Your Honor.  I'll submit an

18   agreement form for Mr. Bodnar --

19        THE COURT:  Excellent. That's fine.  Thank you.

20   Sorry Mr. Bodnar.

21        MR. BODNAR:  Thank you, Your Honor.

22        THE COURT:  Anything further, Mr. Lunn?

23        MR. LUNN:  No, Your Honor.

24        THE COURT:  All right.  Hearing is adjourned.

25        (Proceedings concluded at: 2:41 PM)

29

1

2                          **I N D E X**

3

4                          RULINGS

5                              Page    Line

6    Application Authorizing    13      20

7    Employment of Hennigan,

8    Bennet & Dorman as

9    Special Conflicts

10   Counsel Approved

11   Debtors' Second Omnibus   16      3

12   Objection to Claims

13   Overruled in connection

14   with Equity Interests

15   Application for Order      28      13

16   Authorizing Employment

17   of Joseph Bodnar Denied

18

19

20

21

22

23

24

25

30

1

2                        C E R T I F I C A T I O N

3

4      I Penina Wolicki, court approved transcriber, certify that the

5      foregoing is a correct transcript from the official electronic

6      sound recording of the proceedings in the above-entitled

7      matter.

8

9      _____  __May 19, 2008_____

10     Signature of Transcriber              Date

11

12     ___PENINA WOLICKI_____

13     typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25