# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE, | ) | (Jointly Administered) |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | ) | |
| | ) | Obj. Deadline: To Be Determined |
| Debtors. | ) | Hr'g Date: To Be Determined |

## MOTION OF SAM HAGE, II FOR ORDER
## DEEMING PROOF OF CLAIM TIMELY FILED OR,
## IN THE ALTERNATIVE, ALLOWING THE FILING OF A LATE-FILED CLAIM

COMES NOW Sam Hage, II ("Mr. Hage" or "Claimant"), by and through his

undersigned counsel, and hereby moves this Honorable Court for an order deeming his proof of

claim filed on January 15, 2008 to be timely filed or, alternatively, allowing the late-filing of his

Proof of Claim (the "Motion"). In support of his Motion, Claimant respectfully states as follows:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

2.       Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### FACTUAL BACKGROUND

3.       Pre-petition, Mr. Hage retained Martin Cohn, Esquire to represent him in

connection with an employment agreement, executed approximately October 19, 2006, with

American Home Mortgage Corp., (Case No. 07-11051 (CSS)) (the "Debtor"). A copy of Mr.

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp, a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Mellville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75036.

Cohn's affidavit is attached hereto as Exhibit 1 and shall hereinafter be cited as, "Cohn Aff., ¶ ____". Cohn Aff., ¶4.

    4.      On August 6, 2007 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

    5.      On August 14, 2007, the United States Trustee appointed an Official Committee of Unsecured Creditors. No trustee or examiner has been appointed.

    6.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

    7.      On October 30, 2007, the Court entered an order (the "First Bar Date Order") setting January 11, 2008 as the general bar date for filing pre-petition proofs of claim. (D.I. 1708).

    8.      On February 15, 2007, the Court entered an order (the "Second Bar Date Order") setting April 30, 2008 as the bar date for filing pre-petition proofs of claim relating to construction-to-permanent loans and home equity line of credit loans. (D.I. 2987).

    9.      Mr. Cohn operates a sole proprietorship law firm with one other lawyer that does business as Martin Cohn & Associates, located at 116 South Michigan Avenue, 14th Floor, Chicago, Illinois 60603-6094 (the "Firm"). Cohn Aff., ¶2. The Firm conducts a general civil law practice, focusing primarily on estate planning, estate administration, taxes, and primarily residential (with some commercial) real estate. Cohn Aff., ¶3. During the negotiation of Mr. Hage's employment agreement, Mr. Cohn had direct contact with an officer of the Debtor and, as memory serves him, its counsel. Cohn Aff., ¶5.

2

10.     In conjunction with the filing of the bankruptcy, the Debtor terminated Mr.
Hage's employment and went out of business. Cohn Aff., ¶6. Mr. Hage asked Mr. Cohn to
represent him in connection with the filing of a proof of claim. Cohn Aff., ¶7. Mr. Cohn
estimates that far less than 1% of the Firm's practice relates to bankruptcy in general. Cohn Aff.,
¶3. Mr. Cohn would not characterize his Firm's bankruptcy practice as "sophisticated". Id.

11.     Mr. Cohn began the claim drafting process immediately. Cohn Aff., ¶7. On
October 25, 2007, Mr. Cohn wrote to Mr. Hage advising him that it was time to file a claim in
the Debtor's bankruptcy. Cohn Aff., ¶8. Mr. Cohn engaged in follow-up correspondence on
November 9, 2007; November 15, 2007; December 5, 2007; and December 19, 2007. Cohn
Aff., ¶¶9-13. Mr. Hage did not return the fully-executed proof of claim from to Mr. Cohn in a
prompt manner. Cohn Aff., ¶14.

12.     On January 9, 2008, Mr. Cohn's office sent Mr. Hage's Proof of Claim form via
regular mail, postage prepaid, to the Debtors' claims agent in New York City. Cohn Aff., ¶15.
Although it was standard operating procedure of the Firm that important filings such as a proof
of claim form be sent by UPS for tracking purposes, Mr. Hage's claim form was sent by regular
mail. Id. Mr. Cohn does not know why this occurred, but notes that the Debtors' claims agent
uses a post office box rather than a street address, and it is his understanding that UPS does not
make deliveries to post office boxes. Id.

13.     Mr. Cohn received a time-stamped copy of Mr. Hage's proof of claim dated
January 15, 2008. Cohn Aff., ¶16.

14.     On or about April 28, 2008, the Debtors filed their Fifth Omnibus Objection
(Non-Substantive) to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy
Rules 3003 and 3007 and Local Rule 3007-1 (the "Fifth Omnibus Objection"), wherein they

3

object to Mr. Hage's claim, designated claim number 9641 (the "Proof of Claim") on grounds that it was received four days late.  (D.I. 3879).

15.     Because Mr. Hage had a written employment agreement with the Debtor that provided for severance pay in the event of his termination without cause, Mr. Cohn expected the Debtor to have recognized that Mr. Hage held a potential claim against the Debtor and included his claim for severance pay on its official schedules.  Cohn Aff., ¶17.  On information and belief, it appears that this was not done.  Id.

16.     According to the Fifth Omnibus Objection, "actual notice of the Bar Date was sent to (i) all known entities holding potential prepetition claims **and their counsel** (if known)...."  Fifth Omnibus Objection, ¶6 (emphasis supplied).

17.     Mr. Cohn expected the Debtor to have provided him with actual notice of the bar date because both (i) an officer of the Debtor and (ii) its counsel knew (or should have known) that he represented Mr. Hage in connection with the negotiation of his employment agreement less than one year prior to the Petition Date.  Cohn Aff., ¶18.  However, Mr. Cohn received no such actual notice of the bar date from any of the Debtors.  Id.

18.     To date there has been no disclosure statement or plan filed.  On information and belief, there has been no distribution to general unsecured creditors.

### BASIS FOR RELIEF

19.     Bankruptcy Rule 3003(c)(3) provides that the Court, "for cause shown may extend the time within which proofs of claim or interest may be filed."  Bankruptcy Rule 9006(b)(l) permits the Court to extend the period for the filing of a proof of claim, "where the failure to act was the result of excusable neglect."

4

## ARGUMENT

20.     Pursuant to Federal Rules of Bankruptcy Procedure 3003(c)(2) and (c)(3) and

9006(b)(l), courts may extend the period for filing a proof of claim where the late filing resulted

from excusable neglect.  In <u>Pioneer Investment Services Co. v. Brunswick Associates Limited</u>

<u>Partnership</u>, 507 U.S. 380 (1993), the Supreme Court held that a creditor could file its proof of

claim beyond the bar date where the failure to timely file was the result of excusable neglect,

including for inadvertence, mistake, or carelessness, as well as by intervening circumstances

beyond the party's control.

21.     Relying on Rule 9006(b)(l), the Supreme Court found that excusable neglect

extends to failures that are within a party's control:

> First, the Rule [9006(b)(l)] grants a reprieve to out-of-time filings
> that were delayed by "neglect."  The ordinary meaning of
> "neglect" is "to give little attention or respect" to a matter, or,
> closer to the point for our purposes, "to leave undone or unattended
> to *esp[ecially] through carelessness."*  Webster's Ninth New
> Collegiate Dictionary 791 (1983) (emphasis added).  The word
> therefore encompasses both simple faultless omissions to act and,
> more commonly, omissions caused by carelessness.  Courts
> properly assume, absent sufficient indication to the contrary, that
> Congress intends the words in its enactments to carry "their
> ordinary, contemporary, common meaning."  <u>Perrin v. United</u>
> <u>States</u>, 444 U.S. 37, 42 [....]  Hence, by empowering the courts to
> accept late filings "where the failure to act was the result of
> excusable neglect," Rule 9006(b)(l), Congress plainly
> contemplated that the courts would be permitted, where
> appropriate, to accept late filings caused by inadvertence, mistake,
> or carelessness, as well as by intervening circumstances beyond the
> party's control.

<u>Id.</u> at 388 (first straight bracketed material supplied; second straight bracketed material, italicized

brackets, and italicized material contained in original).

22.     Four factors are considered in deciding whether excusable neglect has been

shown to permit a proof of claim to be timely filed after the bar date.  The factors are: "the

danger of prejudice to the debtor, the length of the delay and its potential impact on judicial

proceedings, the reason for the delay, including whether it was within the reasonable control of

the movant, and whether the movant acted in good faith." Pioneer, 507 U.S. at 395.

23.     The Third Circuit Court of Appeals has adopted the Pioneer factors in finding

excusable neglect to permit a proof of claim to be considered timely although first filed after the

bar date. In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 130 (3d Cir. 1999) (finding

that Bankruptcy Court abused its discretion by refusing to find excusable neglect). In addition,

our District Court has held that, "[a]ll factors must be considered and balanced; *no one factor*

*trumps the others.*" In re Garden Ridge Corp., 348 B.R. 642, 645 (Bankr. D. Del. 2006)

(emphasis supplied) (quoting In re American Classic Voyages Co., 405 F.3d 127, 133 (3d Cir.

2005)).

24.     Courts in this District consider several factors to determine prejudice:

> whether the debtor was surprised or caught unaware by the
> assertion of a claim that it had not anticipated; whether the
> payment of the claim would force the return of amounts already
> paid out under the confirmed Plan or affect the distribution to
> creditors; whether payment of the claim would jeopardize the
> success of the debtor's reorganization; whether allowance of the
> claim would adversely impact the debtor actually or legally; and
> whether allowance of the claim would open the floodgates to other
> future claims.

Garden Ridge, 348 B.R. at 646 (citing In re Inacom Corp., No. 00-2426, 2004 WL 2283599 *4

(D. Del. October 4, 2004), copy attached hereto as Exhibit 2).

25.     The Third Circuit Court of Appeals concurs with other circuit courts that,

"prejudice is not merely the loss of an advantageous position, but must be something more

closely tied to the merits of the issue." O'Brien, 188 F.3d at 127. Indeed, in this Circuit,

"prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion

based on facts in evidence." Id.

26.     "A finding of excusable neglect is based on equity and depends on the particular

circumstances and facts of the case." Garden Ridge, 348 B.R. at 645. A bankruptcy court in this

District recently found excusable neglect. Id. at 647. In In re Garden Ridge, the creditor's claim

was listed on the debtors' schedules as an unsecured nonpriority liquidated debt. The creditor

received a copy of the schedules but disagreed with the amount listed. Aware of the bar date, the

creditor filed a late proof of claim as a result of its carelessness. After filing the late claim, the

bankruptcy court confirmed the debtors' plan of reorganization, which gave the Committee the

authority to challenge general unsecured claims. The Committee filed an objection to the

untimely proof of claim because (i) it would result in prejudice by reducing the value of claims

held by other creditors, and (ii) the creditor failed to provide any reason for its delay in filing the

late proof of claim or did not make any showing that the delay was not within its reasonable

control. Id. at 646-47. Notwithstanding the creditor's admission that it was solely to blame for

filing the late claim, the court rejected the Committee's arguments, found excusable neglect and

permitted the late claim. The instant case presents even more compelling reasons in favor of

finding excusable neglect. Like the court in Garden Ridge, this Court should find excusable

neglect and permit Mr. Hage's Proof of Claim to be deemed timely filed.

## I.     There is No Danger of Prejudice to the Debtors.

## A.     Whether the Debtors Were Surprised or Caught Unaware by the Assertion of a Claim That They Had Not Anticipated?

27.     The Debtors' claims administration process was still in its early stages when Mr.

Hage's Proof of Claim was received. In fact, the Proof of Claim was received approximately

three months prior to the Second Bar Date, and some two months before the Debtors filed their

first omnibus claim objection. Therefore, as a practical matter, it simply could not have resulted

in more surprise than any other claim that was filed on the bar date, just two business days prior
to when Mr. Hage's Proof of Claim was filed.

28.     Moreover, the Debtor was (or should have been aware) that Mr. Hage was its
employee pursuant to a written employment agreement that contained a severance provision.
Cohn Aff., ¶17. Accordingly, the Debtors should not have been surprised or caught unaware of
the assertion of the Proof of Claim. Rather, the Debtor should have scheduled Mr. Hage's claim,
which it apparently failed to do. Id. There can be no prejudice to the Debtors on this prong.

## B.      Whether the Payment of the Claim Would Force the Return of Amounts Already Paid Out Under the Confirmed Plan or Affect the Distribution to Creditors?

29.     The Debtors have not yet filed a plan or disclosure statement and no distribution
could possibly have been made pursuant thereto. Thus, there is no possibility that the eventual
payment of Mr. Hage's Proof of Claim could force the return of amounts already paid out under
a confirmed plan or affect the distribution to creditors. Inacom Corp., 2004 WL 2283599 **4-5
(fact that litigation was on-going over validity and amounts of unsecured claims weighed in
favor of finding excusable neglect). Rather, Mr. Hage's Proof of Claim represents a legitimate
claim for severance pay under his written employment agreement with the Debtor and
expungement thereof would constitute an improper windfall to the Debtor's other pre-petition
creditors. There can be no prejudice to the Debtors on this prong.

## C.      Whether Payment of the Claim Would Jeopardize the Success of the Debtors' Reorganization?

30.     The Debtors have not yet filed a plan or disclosure statement and, upon
information and belief, no distribution has been made pursuant thereto. Nevertheless, it would
appear to be a far stretch to contend that Mr. Hage's Proof of Claim represents anything other
than a "drop in the bucket" when viewed in light of the other 10,000 or so claims that have been
filed against the Debtors' estates. It is simply not conceivable that Mr. Hage's Proof of Claim

could have any material impact on the success of the Debtors' reorganizational effort (assuming, arguendo, that they attempt one day to reorganize). There can be no prejudice to the Debtors on this prong.

## D. Whether Allowance of the Claim Would Adversely Impact the Debtors Actually or Legally?

31.     Allowance of Mr. Hage's Proof of Claim would not have any adverse impact on the Debtors, either actually or legally. The Proof of Claim is minute in the overall scheme of the Debtors' liabilities. To be sure, the Debtor's Schedule F - Creditors Holding Unsecured Non-Priority Claims, which includes certain employee claims (although not Mr. Hage's) aggregates to over $1.6 *__billion__* ($1,628,000,107.54).[2] And given the instant analysis, there can be no adverse legal impact on any of the Debtors in connection with allowing the late filing of the Proof of Claim because the delay is attributable to excusable neglect. There can be no prejudice to the Debtors on this prong.

## E. Whether Allowance of the Claim Would Open the Floodgates to Other Future Claims?

32.     As yet, there has been no showing that any other late claim was filed four or fewer days late. Accordingly, there can be no prejudice to the Debtors on this prong.

33.     To the extent, however, that the Debtors may suffer any prejudice from an opening of the floodgates, it is prejudice of the Debtors' own making. On information and belief, there were 166 claims that drew objection on grounds of late filing in the Fifth Omnibus Objection. As the Fifth Omnibus Objection was filed two days *__before__* the Second Bar Date -- a bar date which also dealt with pre-petition claims, albeit of a more narrowly tailored character --

---

[2] Mr. Hage does not concede that his Proof of Claim is a non-priority claim, and reserves all of his rights in this regard.

one wonders whether *any* late claim objection contained in the Fifth Omnibus Objection should be sustained.

34.    Being unable to establish prejudice on any of the five prongs that this Court should consider, the danger-of-prejudice-to-the-debtors factor weighs heavily against the Debtors in this excusable neglect determination.

## II.    The Length of the Delay Was De Minimis and It Will Have Absolutely No Potential Impact on the Judicial Proceedings.

35.    Mr. Hage's Proof of Claim was received a mere *two business days* beyond the First Bar Date! Including calendar days pushes the delay out to four days. The four-day delay and the governing case law were brought to the attention of the Debtors' counsel prior to the due date of Mr. Hage's response to the Fifth Omnibus Objection. Unfortunately, the parties were unable to reach a consensual resolution. Accordingly, Mr. Hage, a known creditor, comes before the Court seeking the allowance of late filing a claim that was received by the Debtors four calendar days beyond the First Bar Date, some three-months prior to the Second Bar Date, on a claim that should already have been on the Debtors' radar screen (not to mention, properly scheduled), with regard to which the Debtors should have provided actual notice of the bar date to Mr. Hage's known counsel (but did not), in a case where the Debtors have only recently begun the claims adjudication process -- much less filed a plan or disclosure statement. O'Brien, 188 F.3d at 130 (important factor is whether untimely claim is filed before the effective date of the plan of reorganization); Garden Ridge, 348 B.R. at 646 ("the Court finds minimal impact on judicial proceedings in real terms: the Committee is in the midst of bringing their claims objections (e.g., late filed, amended, and duplicate) and a distribution is not expected for some time.").

36.     The filing of a proof of claim two business days after the bar date is simply not the type of delay that precludes a finding of excusable neglect, especially where the delay is attributable to the inadvertent transmission of the claim by regular mail rather than overnight courier. For example, in Chemetron Corp. v. Jones, 72 F.3d 341, 350 (3d Cir. 1995), the Third Circuit remanded a case for a determination of excusable neglect where the creditors filed, "[t]heir motion to file a late claim more than four years after the bar date, two years after the Plan of Reorganization had been confirmed and twelve years after" the creditors should have been notified of the claim. Similarly, in Inacom Corp., 2004 WL 2283599 at **6-7, based upon a finding of excusable neglect, the court permitted an untimely motion for reconsideration filed two years and ten months after the objection, two years and nine months after the order disallowing the claim was served and nine months after plan of reorganization was confirmed. See also In re Eagle Bus Mfg., Inc., 62 F.3d 730, 739 (5th Cir. 1995) (permitting claim six to eight months after bar date).

37.     Query whether the Debtors have exercised appropriate judgment in forcing this matter to hearing. Any potential impact on the judicial proceedings is the result of the Debtors' decision not to acknowledge the binding authority finding excusable neglect on circumstances such as these, especially when it was brought to their attention before both sides committed their time and expense to motion practice.

38.     The length-of-delay-and-its-potential-impact-on-the-judicial-proceedings factor weighs heavily against the Debtors in this excusable neglect determination.

### III.     The Reason for the Delay, Including Whether It Was Within the Reasonable Control of the Movant.

39.     The Debtors and their pre-petition counsel knew that Mr. Hage was represented by Mr. Cohn in the negotiation of the employment agreement. Accordingly, the Debtors should

have served a copy of the bar date notice on Mr. Cohn, as they claim to have done generally in the Fifth Omnibus Objection. Fifth Omnibus Objection, ¶6. Mr. Cohn received no such notice. Cohn Aff., ¶18. In re Grand Union Co., 204 B.R. 864 (Bankr. D. Del. 1997) (direct mailing of bar date notice to claimants, rather than their known counsel, did not satisfy due process requirement of adequate notice; claimant who received notice but who failed to communicate it to his counsel entitled to file late claim). While Mr. Cohn appears not to have made an independent inquiry with the Bankruptcy Court to ascertain the bar date, the Debtors contributed to the delay by not sending him the bar date notice. This factor tips against the Debtors in this excusable neglect determination.

## IV.   Mr. Hage's Counsel Acted in Good Faith.

40.     Mr. Cohn began the claim drafting process immediately after learning that Mr. Hage had been terminated, Cohn Aff., ¶7, even though he did not have actual knowledge of the bar date at that time. Indeed, it is unclear whether a bar date motion had even been filed when Mr. Cohn began drafting. On October 25, 2007, Mr. Cohn wrote to Mr. Hage advising him that it was time to file a claim in the Debtor's bankruptcy. Cohn Aff., ¶8. At that time, the bar date order would not have entered for another five days. (D.I. 1708). Mr. Cohn engaged in follow-up correspondence on November 9, 2007; November 15, 2007; December 5, 2007; and December 19, 2007. Cohn Aff., ¶¶9-13. Mr. Hage did not return the fully-executed proof of claim form to Mr. Cohn in a prompt manner. Cohn Aff., ¶14. This is certainly not a case of anyone "flouting" a bar date. Throughout the claim preparation and filing process, Mr. Cohn conducted himself appropriately and acted in good faith.

41.     This final factor weights heavily against the Debtors in this excusable neglect determination.

12

## CONCLUSION

42.     On the facts and circumstances of this case, the Debtors will be unable to carry even one of the four factors to be considered in an excusable neglect determination. No one factor is determinative. In re Garden Ridge Corp., 348 B.R. 642, 645 (Bankr. D. Del. 2006). The Debtors' attempt to impose the equivalent of capital punishment on Mr. Hage's Proof of Claim is hyper-legalistic. However, it is well-established that courts in the Third Circuit strongly prefer to resolve matters on their merits, rather than technicalities. Medunic v. Lederer, 553 F.2d 891 (3d Cir. 1976).

43.     For the reasons stated above, Mr. Hage respectfully requests that this Court enter an order, in substantial conformity with the proposed form of order attached hereto as Exhibit 3, (i) deeming his Proof of Claim against the Debtor timely filed or, in the alternative, allowing the late-filing of his Proof of Claim, (ii) granting the Motion, and (iii) granting to Mr. Hage such other and further relief as the Court deems just and proper.

Dated: May 20, 2008
    Wilmington, Delaware          **SULLIVAN · HAZELTINE · ALLINSON LLC**

<br>

_E.E. Allinson III_

William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE  19801
(302) 428-8191

-- and --

Martin Cohn, Esq.
**Law Offices of Martin Cohn & Associates**
116 South Michigan Avenue
14th Floor
Chicago, IL  60603
(312) 372-3458

*Attorneys for Sam Hage, II*

13