# **EXHIBIT 2**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))

Page 1

**H**
In re Inacom Corp.
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
In re: INACOM CORP., et al., Debtors.
PRO-TEC SERVICES, LLC, Appellants,
v.
INACOM CORP., et al., Appellees.
**No. 00-2426 (PJW), Civ.A. 04-390-GMS.**

Oct. 4, 2004.

Laura Davis Jones, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, DE, for Debtors and Appellees.
William D. Sullivan, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, DE, for Appellants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 On June 16, 2000 (the "Petition Date"), Inacom Corp., *et al.* ("Inacom") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. Pro-Tec Services, LLC ("Pro-Tec") filed a timely Proof of Claim on November 2, 2000. On June 13, 2001, Inacom filed its Fifth Omnibus Objection to Claims-Objections to Claims filed Against Inacom, Inc. or Its Affiliates (the "Objection"). On July 13, 2001, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order disallowing Pro-Tec's claim pursuant to Inacom's Objection. Inacom's plan of liquidation was confirmed on May 23, 2003.

On April 2, 2004, Pro-Tec filed a motion to reconsider its claim. The motion was denied at a hearing before the Bankruptcy Court on April 20, 2004. Pro-Tec appealed this decision on April 30, 2004.

Because the court agrees that Pro-Tec has made a satisfactory showing of excusable neglect, its motion to reconsider the allowance of its claims should have been granted by the Bankruptcy Court. Further, because the court disagrees with the Bankruptcy Court's analysis of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), as it applies to the facts of this case, the court will reverse the ruling of the Bankruptcy Court and remand the matter for further proceedings consistent with this opinion.

II. STANDARD OF REVIEW

In reviewing a case on appeal, the district court reviews the Bankruptcy Court's legal determinations *de novo,* its factual findings for clear error, and its exercise of discretion for abuse. *In re O'Brien Envtl. Energy, Inc.* 188 F.3d 116, 122 (3d Cir.1999). A bankruptcy court abuses its discretion when its ruling is founded on an error of law or misapplication of law to the facts. *Id.* In determining whether an error exists, the bankruptcy court's application of the law to the facts is reviewed *de novo. Id.*

III. BACKGROUND

The basic facts pertinent to Pro-Tec's motion to reconsider the allowance of its claims are not in dispute. On September 18, 1997, Pro-Tec and Vanstar Corporation ("Vanstar") were parties to a computer and communication repair services agreement (the "Agreement"). Subsequent to the execution of the Agreement, Inacom purchased Vanstar, and Pro-Tec continued to provide services to Inacom under the Agreement. From February 1999 to June 2000, Inacom incurred charges for services rendered by Pro-Tec under the Agreement. On June 16, 2000, Inacom filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the District of Delaware. On August 1, 2000, Inacom filed its Schedules of Assets and Liabilities (the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))

Page 2

"Schedules"). Pro-Tec was listed on Exhibit F-3 of Inacom's Schedules as a creditor holding unsecured non-priority claims in the amount of $195,823.20.

On November 2, 2000, Pro-Tec's counsel timely filed a Proof of Claim (the "Claim"), in the amount of $330,115.61, with Bankruptcy Services, Inc. ("B.S.I."), Inacom's claims agent. On November 6, 2000, B.S.I. stamped the Claim as received, timely, and numbered the Claim 6647. On June 13, 2001, Inacom filed its Objection. The Objection contests approximately 412 claims spread over 96 pages of exhibits. The exhibits are lettered A through H, with some exhibits containing multiple alphabetical listings of objections. Pro-Tec was listed on the first alphabetical list of Exhibit E to the Objection. The Objection contained a Proof of Service, indicating that it was served on Pro-Tec's counsel, William Sullivan, at his office address. Pro-Tec's counsel did not respond to the Objection. On July 13, 2001, the Bankruptcy Court entered an Order Disallowing Claims, Expunging Claims, Altering the Status of Claims, or Allowing the Claims in a Reduced Amount (the "Order").

*2 On July 22, 2002, Inacom filed the Notice of Debtors Twenty-Ninth Amendment of Schedules (the "Twenty-Ninth Amendment"), seeking to amend the Claim from $195,823.20 to $0.00. On May 23, 2003, Inacom's Joint Plan of Liquidation (the "Plan") was confirmed. In February 2004, after Pro-Tec did not receive a distribution under the Plan (which was expected on or about January 30, 2004), Pro-Tec's counsel inquired into the status of distributions. After contacting B.S.I., Pro-Tec was advised of the July 13, 2001 Order disallowing the Claim. Accordingly, Pro-Tec filed its Motion for Reconsideration on April 2, 2004. A hearing on Pro-Tec's motion was held before the Bankruptcy Court on April 20, 2004. The Bankruptcy Court denied Pro-Tec's motion. On April 30, 2004, Pro-Tec appealed the decision.

IV. DISCUSSION

As a result of the Bankruptcy Court's July 13, 2001 Order, Pro-Tec's Claim in connection with the Agreement was disallowed. It is undisputed that Pro-Tec received the Objection but failed to respond prior to the July 13, 2001 Order, or prior to the May 23, 2003 confirmation of the Plan. Pro-Tec filed a motion for reconsideration pursuant to 11 U.S.C. 502(j) and Fed. R. Bankr.P. 3008. Section 502(j) provides that "a claim that has been allowed or disallowed may be reconsidered for cause."Pro-Tec asserts that a motion for reconsideration based on a claim disallowed as a result of the claimant's failure to appear or to produce evidence is usually decided based on whether the claimant is able to show "excusable neglect." Pro-Tec, therefore, seeks relief from the July 13, 2001 Order under Federal Rule of Civil Procedure Rule 60(b), made applicable to bankruptcy cases by Bankruptcy Rule 9024.Rule 60(b) states, in pertinent part, "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for mistake, inadvertence, or excusable neglect."The factors a court must consider when determining whether a party has failed to appear or to produce evidence because of excusable neglect were articulated by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The *Pioneer* factors were adopted and applied by the Third Circuit in *In re O'Brien Environmental Energy, Inc.,* 188 F.3d 116, 125 (3d Cir.1999). Pro-Tec asserts that its failure to respond to the Objection was the result of excusable neglect, and that the Bankruptcy Court made an inadequate excusable neglect analysis under *Pioneer.*As previously noted, the basic facts pertinent to Pro-Tec's motion are not in dispute. Thus, the court must review *de novo* whether the Bankruptcy Court engaged in a proper analysis under *Pioneer* to make its excusable neglect determination, and whether the Bankruptcy Court abused its discretion in determining that there was no excusable neglect warranting reconsideration of Pro-Tec's claim.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))**

Page 3

A. Did the Bankruptcy Court Engage in a Proper *Pioneer* Analysis?

*3 Pro-Tec first argues that the Bankruptcy Court failed to review the totality of the circumstances surrounding Pro-Tec's failure to respond to the Objection and, therefore, failed to adequately apply *Pioneer's* standards for excusable neglect. The court will start with a brief review of *Pioneer* and the excusable neglect factors articulated in that case. In *Pioneer,* the Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the bar date deadline because its failure to timely reply was the result of excusable neglect, within the meaning of Bankruptcy Rule 9006(b)(1). The Court held that the determination of what type of neglect would be considered "excusable" was an equitable one "tak[ing] account of all relevant circumstances surrounding the party's omission."*Pioneer,* 507 U.S. at 395. The Court listed four factors to consider in making the excusable neglect determination: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."*Id.* Under the facts of *Pioneer,* the Court held that the creditor's failure to timely file was inadvertent, and in good faith. There was no danger of prejudice to the debtor because the untimely claim was accounted for in the reorganization plan and was filed prior to the plan's effective date. Lastly, the court noted that notice of the bar date "was outside the ordinary course" because of its "inconspicuous placement"-a single sentence in a document regarding a creditors' meeting-which was not accompanied by a statement of significance and "left a 'dramatic ambiguity' in the notification."*Id.* at 398.

Pro-Tec argues that, while the Bankruptcy Court considered the reason for the delay, including whether it was within the reasonable control of Pro-Tec, and the potential prejudice to Inacom, it did not consider the other *Pioneer* factors. After reviewing the transcript from the April 20, 2004 hearing, the court cannot agree. In making its determination, the Bankruptcy Court made the following findings of fact: (1) overturning the Order would prejudice Inacom because allowing the claims would "open the floodgates to hundreds of these [reconsideration] applications being filed;" (2) allowing the delayed claim "would be a mistake at this very late stage of this case;" and (3) Pro-Tec's counsel was fully responsible for the delay in failing to file a response to the Objection.[FN1] Tr. at 35-36. Thus, the Bankruptcy Court considered the prejudice to the debtor, the length of the delay and its effect on judicial proceedings, and whether the reason for the delay was in the reasonable control of the movant. The only *Pioneer* factor that the Bankruptcy Court did not consider was the good faith of Pro-Tec's counsel. Inacom, however, acknowledged Pro-Tec's good faith at the April 20, 2004 hearing, which meant that the Bankruptcy Court did not have to consider this factor. For the foregoing reasons, the court finds that the Bankruptcy Court engaged in a proper *Pioneer* analysis.FN2

> FN1. The Bankruptcy Court noted that Pro-Tec's "client's name and your [Pro-Tec's counsel's] name and address with the law firm is [the] first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it."Tr. at 35:6-9.
>
> FN2. In this section of its brief, Pro-Tec argues its counsel's diligence upon receiving omnibus objections to its other clients' claims. Pro-Tec also argues that the Bankruptcy Court's Local Rule 3007-1, implemented in September 2002, addresses the difficulties created by the large omnibus claim objections by limiting them to 150, but does not ameliorate the difficulties posed by omnibus objections filed before September 1, 2002 (Inacom's Objection was filed before September 1, 2002). The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))

Page 4

court will not address these arguments because they are not material to whether the Bankruptcy Court engaged in a proper *Pioneer* analysis.

B. Did the Bankruptcy Court Abuse Its Discretion When It Determined There Was No Excusable Neglect?

*4 Pro-Tec next argues that the Bankruptcy Court abused its discretion in failing to find excusable neglect. In addressing this contention, the court will analyze each of the *Pioneer* factors in turn.

1. Danger of Prejudice to the Debtor

The Supreme Court in *Pioneer* noted that lack of any prejudice to the debtor weighs strongly in favor of permitting a tardy claim, but provided little guidance as to what prejudice actually is in the bankruptcy context. The United States Court of Appeals for the Third Circuit has recognized that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence."*In re O'Brien Envtl. Energy, Inc.,* 188 F.3d 116, 127 (3d Cir.1999). Under Third Circuit case law, *Pioneer* requires a detailed analysis of more than "whether the Plan set aside money to pay the claim at issue."*Id.* at 126. Thus, the relevant factors for analysis of prejudice under *O'Brien* include: whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the debtor's reorganization; whether allowance of the claim would adversely impact the debtor actually or legally; and whether allowance of the claim would open the floodgates to other future claims. *Id.* at 126-28. Pro-Tec argues that none of the prejudice factors articulated in *O'Brien* serve as potential prejudice to Inacom.

With regard to the first *O'Brien* factor, the court cannot conclude that Inacom was surprised or caught unaware by the assertion of a claim that it had not anticipated. Inacom listed Pro-Tec as a creditor holding unsecured non-priority claims in the amount of $195,823.20 in the Schedules. Pro-Tec timely filed the Claim, which was stamped as received and numbered by Inacom's claims agent. The Claim remained scheduled for more than one year after it was disallowed by default, on July 13, 2001. In fact, the Claim remained scheduled by Inacom until it filed the Twenty-Ninth Amendment on July 22, 2002, which sought to amend Pro-Tec's scheduled Claim from $195,823.00 to $0.00. Clearly then, Inacom was aware of the assertion of the Claim.

The second *O'Brien* factor requires the court to consider whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors. Pro-Tec argues that the resolution of the Claim does not impact the recovery being paid to unsecured creditors because Inacom is still litigating the value of many of the unsecured claims. Pro-Tec alleges that unsecured creditors were advised in the Plan that their recovery was uncertain, and, based on the Plan, reconsideration of its Claim will not prejudice other creditors because no creditor will have to return any distribution it may have already received and the ultimate distribution to creditors under the Plan will vary. Inacom notes that the Plan states that "[e]ach holder of a Class 4(a) Allowed General Unsecured Claim shall receive such Holder's Pro Rata Share of Available Cash," (Plan at 13, D.I. 4757). However, as Pro-Tec points out, the Plan also states that the recovery of unsecured creditors is uncertain and may vary. Because every creditor is receiving its pro rata share of available amounts, allowing another claim will affect the distribution to each creditor holding an allowed claim. Pro-Tec argues, however, that Inacom is still litigating the value of many of the unsecured claims and does not know at this time which unsecured creditors will recover or what

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))

Page 5

amount each creditor will recover.

*5 Pro-Tec's argument is persuasive. It is not clear how many creditors will ultimately hold an allowed claim. In addition, the final distributions to creditors will vary based on the results of litigation and the claims resolution process. Moreover, Inacom was not required to allocate funds for each disputed claim under the Plan.[FN3] Thus, any disputed claim that is allowed is paid without regard to what other claims exist. Lastly, absent from the record is any evidence that Inacom will have to return amounts already paid out under the Plan. Based on these facts, the court finds that payment of the claim will not affect the distribution to creditors.

> FN3. Pro-Tec urges that whether the plan set aside money to pay the claim at issue is a factor that the Third Circuit held should not be considered in evaluating potential prejudice. The court disagrees. The court in *O'Brien* stated that "*Pioneer* requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue."*O'Brien,* 188 F.3d at 126. The Third Circuit, however, did not state that an analysis of prejudice should not include whether the Plan set aside money to pay the claim at issue as one of the factors to consider. Rather, the Third Circuit stated that it should not be the only factor that the Bankruptcy Court considers in determining whether there is potential prejudice to the debtor. The Third Circuit stated "[t]he Bankruptcy Court's prejudice analysis seemed to hinge *solely* on the fact that by virtue of Manus's failure to respond to the Application, its claim was not accounted for in the funding of the plan. We believe that *Pioneer* requires a more detailed analysis which would account for more than whether the Plan set aside money to pay the claim at issue."*Id.* (emphasis added).

The third *O'Brien* factor is whether payment of the claim would jeopardize the success of the debtor's reorganization. There is no evidence on the record as to whether payment of the claim would jeopardize the success of Inacom's reorganization. In addition, Pro-Tec and Inacom have not made arguments, nor has the Bankruptcy Court made any findings concerning this factor. Thus, the court will treat this consideration as a neutral factor in its analysis.

The fourth *O'Brien* factor is whether allowance of the claim would adversely impact the debtor actually or legally. Pro-Tec argues that there is no prejudice to Inacom created by the delay in litigating the disallowed Claim because the inquiry to be performed in a reconsideration of the Claim is straightforward. Pro-Tec further argues that Inacom is currently reconsidering other creditors' claims. Finally, Pro-Tec asserts that Inacom scheduled its Claim at the outset of the case, a claim that remained scheduled for more than a year after the Bankruptcy Court entered the Order disallowing the Claim. Inacom could not explain why Pro-Tec was listed on the Twenty-Ninth Amendment when Pro-Tec's claim was disallowed a year earlier, negating the need to amend the schedule with respect to Pro-Tec. Tr. at 32:10-20. Because Pro-Tec was still listed on the Twenty-Ninth Amendment, Pro-Tec contends that Inacom ascribed some validity to its claim.[FN4] While this may be true, this fact is not relevant to the court's analysis of whether allowance of the claim would adversely impact the debtor actually or legally. Regardless, the court finds that Inacom has not alleged that payment of the Claim would adversely impact it. Rather, Inacom alleges only that one of the policies underlying the *Pioneer* analysis is the value of finality in judicial proceedings.

> FN4. At the hearing in the Bankruptcy Court, Inacom argued that it was irrelevant that Pro-Tec was listed on its Twenty-Ninth Amendment. The Bankruptcy Court agreed, acknowledging that "the debtors' 29th amendment is confusing. But, quite

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))

Page 6

> frankly, that was a year after the disallowance of this claim and I think it's essentially irrelevant to the issue of excusable neglect."

The Third Circuit has addressed Inacom's argument in contexts other than a bankruptcy proceeding. In *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653 (3d Cir.1982), the court held that "the cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim 'rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment." ' *Id.* at 656-57. In *O'Brien,* the court highlighted, with approval, its decision in *Feliciano,* stating that "prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." *O'Brien,* 188 F.3d at 127. Thus, the court finds that the value of finality in judicial proceedings is not sufficient for a finding of prejudice. In addition, there is no evidence in the record showing that payment of Pro-Tec's Claim would adversely impact Inacom or affect the finality of Inacom's judicial proceedings. To the contrary, as previously noted, Inacom is still litigating disputed claims. However, even were there such a showing, the court cannot discern a reason why the rationale of the Court of Appeals would be inapposite merely because the scene has shifted to the bankruptcy court. Under the circumstances of this case, the court concludes that allowing the Claim would not adversely impact Inacom.

*6 The final *O'Brien* factor is whether allowance of the claim would open the floodgates to other future claims. The Bankruptcy Court determined that allowing Pro-Tec's Claim might subject Inacom to a large number of additional claims:

> I will observe that given the massive number of claims filed in this case and the equally massive number of objections that were filed with numerous exhibits attached to the objection, I really think that to allow this claim would potentially open the floodgates to hundreds of these applications being filed. And I think that would be a mistake at this very late stage of this case.

Tr. at 35:22-36:3. The court cannot agree. There is no evidence in the record that allowing the Claim would cause a "flood" of motions. Although Inacom argues that it is inconceivable that at least a fraction of the creditors would not file motions for reconsideration if the appeal was granted, Inacom has not asserted that any other creditor whose claim was eliminated by default has filed a motion for reconsideration.

Considering all of the *O'Brien* factors, the court determines that Inacom would not be prejudiced by reconsidering Pro-Tec's Claim. Inacom was not surprised by, or unaware of, the Claim. Inacom is still litigating the value of many of its claims, and still litigating claims objections. Moreover, Inacom has not shown through evidence in the record that it will be adversely impacted if Pro-Tec's claim is reconsidered. Finally, Inacom has not alleged that any other creditor whose motion was denied by default has filed a motion for reconsideration. The court, therefore, finds that there is no prejudice to Inacom.

2. Length of Delay and Potential Impact on Judicial Proceedings

The court next considers the length of the delay and its impact on the judicial proceedings. The Bankruptcy Court found that "it would be a mistake" to allow the Claim because the case was at "a very late stage." While the Bankruptcy Court considered the delay's effect on the judicial proceedings, it did not "consider the length of the delay in absolute terms."*O'Brien,* 188 F.3d at 130. In the present case, Inacom filed the Objection on June 13, 2001. Pro-Tec did not respond. The Order disallowing the Claim issued on July 13, 2001. Pro-Tec still had not responded. Inacom's Twenty-Ninth Amendment was filed on July 22, 2002. Pro-Tec did not respond.[FN5] Inacom's Plan was confirmed on May 23, 2003, and, as of that time, there was still no response from Pro-Tec. Pro-Tec did not respond until February 2004, after it did not receive its expected

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 07-11047-CSS   Doc 4101-3   Filed 05/20/08   Page 8 of 10

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))**

distribution under the Plan. On April 2, 2004, Pro-Tec then filed its motion for reconsideration. Pro-Tec's motion was filed almost two years and ten months after the Objection, almost two years and nine months after the Order was served, and nine months after the Plan was confirmed. Pro-Tec argues that the length of the delay has no impact on the implementation of the Plan. Specifically, Pro-Tec asserts that Inacom is still litigating claims subject to the Objection and that creditors have been advised that distributions under the Plan are dependent on the claims resolution process. Pro-Tec also asserts that distributions to unsecured creditors are expected to occur between June 2003 and June 2008, and will be adjusted depending on Inacom's progress in resolving the claims. Lastly, Pro-Tec argues that Inacom is partly responsible for the delay because of the time it took for Inacom to move through the confirmation process. Inacom's Plan was confirmed almost three years after Inacom filed its petitions.

> FN5. Pro-Tec alleges that the Twenty-Ninth Amendment was not served on its counsel.

\* Inacom argues that Pro-Tec's counsel's failure to respond, in and of itself, weighs in favor of denying the appeal. Inacom further argues that Pro-Tec's failure to respond after the Order warrants denying the appeal. In addition, Inacom argues that Pro-Tec should have attempted to contact Inacom to inquire about the Claim. Lastly, Inacom contends that the fact that it is still litigating and negotiating claims indicates that reconsidering Pro-Tec's Claim will delay closure of the case. The court agrees with Pro-Tec and finds Inacom's arguments unpersuasive. Nowhere in *Pioneer* or *O'Brien,* do the Supreme Court or the Third Circuit find that failure to respond, in and of itself, weighs in favor of denying the Claim. Additionally, there is no finding that the creditor must attempt to make contact with the debtor. When considering the delay's effect on the judicial proceedings in absolute terms, as *O'Brien* instructs, the court concludes that this *Pioneer*

factor weighs in favor of Pro-Tec because Inacom is still litigating disputed claims and distributions to creditors are based on Inacom's progress in resolving the claims.

C. The Reason for the Delay

The Bankruptcy Court determined that the cause of the delay was in Pro-Tec's control, because it is undisputed that Pro-Tec's counsel received the Objection and read it, but missed the objection to Pro-Tec's Claim. The Bankruptcy Court found that Pro-Tec's neglect did not fall within the *Pioneer* standard for excusable neglect:

In looking at this document, I think it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection. And as I pointed out, your client's name and your name and address with the law firm is first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it. But apparently you did miss it-I don't say you, someone in your office did, or they didn't even look at the document. And so I don't think that that falls within the *Pioneer* standard for excusable neglect. Presumably it is neglect. Indeed, there's no basis for knowing what the young associate did, including the possibility that he lost the document before he ever looked at it or he just put it in a circular file and didn't look at it. Or that he was otherwise plain remiss in performing his duties.

Tr. at 35:3-17. It is clear in this case, that the delay was due to Pro-Tec's lack of care. However, the concept of excusable neglect clearly anticipates neglect on the part of the party seeking to be excused. *See Pioneer,* 507 U.S. at 388;*O'Brien,* 188 F.3d at 128. The court, therefore, must decide whether Pro-Tec's delay was excusable.

Pro-Tec urges the court to follow *Pioneer* and *O'Brien,* in which the Supreme Court and the Third Circuit held that the debtors' inadequate notice con-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))**

Page 8

tributed to the creditors' delay. Pro-Tec argues that its delay in responding to the Objection was due in part to inadequate notice provided by Inacom. Pro-Tec asserts that Inacom's Objection contested approximately 412 claims spread over 96 pages plus exhibits A through H. Pro-Tec further asserts that the exhibits contained multiple lists, some of which were not in alphabetical order. Pro-Tec argues that this type of notice is ambiguous and that even though its counsel failed to find the objection to its Claim, Inacom is partly responsible, like the debtors in *Pioneer* and *O'Brien.* Inacom argues that Pro-Tec's comparison of the present case to the facts in *Pioneer* and *O'Brien* "misses the mark." The Bankruptcy Court recognized that there are multiple schedules within the various exhibits attached to the Objection, some of which were not in alphabetical order, but determined that Inacom's notice was adequate, noting that "your [Pro-Tec's counsel's] client's name and your name and address with the law firm is [the] first item on page 11, it is the first Exhibit E in the batch. And I don't see how you could miss it."Tr. at 35:6-9. The court agrees with the Bankruptcy Court and Inacom.

*8 The notice that Inacom provided Pro-Tec is distinguishable from the notice provided by the debtors in both *Pioneer* and *O'Brien* .In *Pioneer,* the Supreme Court held that the debtor's notice was inadequate because the bar date was placed in a notice regarding a creditors' meeting "without any indication of the significance of the bar date."*Pioneer,* 507 U.S. at 398. In *O'Brien,* the debtor gave notice in an application that was twelve pages long, consisting of twenty-four paragraphs. The three important paragraphs, which would provide notice to the contracting parties, were buried in the middle of the document and did not list the relevant contracting parties' names or claims. *O'Brien,* 188 F.3d at 129. The present case is distinguishable from *Pioneer* and *O'Brien* because Inacom's notice was not inconspicuous. Inacom provided notice in its Fifth Omnibus Objection to Claims. Unlike *Pioneer,* in which the bar date appeared in a notice of a creditors' meeting, the title of Inacom's document, which included the word "objection," should have alerted Pro-Tec that its Claim may be affected. Furthermore, unlike *O'Brien,* in which the contracting parties' names and claims were not provided in the relevant document, Pro-Tec's name and address and its counsel's name and address is the first item on Page 11 of the first Exhibit E. The court agrees with the Bankruptcy Court that "it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection."[FN6] Tr. at 35:4-6. The court finds that this *Pioneer* factor weighs in favor of Inacom.

> FN6. The court is not in accord, however, with the Bankruptcy Court's view that if the notice of objection to Pro-Tec's Claim had been on the second or third Exhibit E list, instead of the first, then it "might be excusable." Tr. at 26:3-6. This seems to suggest that Pro-Tec would have less responsibility for the delay if it had been in the middle of Exhibit E. However, as the Bankruptcy Court noted, "it would probably take maybe 15 to 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection."Tr. at 35:4-6. Thus, the court cannot see how Pro-Tec's inadvertence would be any more excusable if the notice had been on the second or third Exhibit E list.

4. Good Faith

The Bankruptcy court did not make any determination on the issue of whether Pro-Tec acted in good faith because Inacom acknowledged Pro-Tec's good faith at the April 20, 2004 hearing. In view of the agreement of the parties, the court finds that Pro-Tec and its counsel acted in good faith.

V. CONCLUSION

In the present case, the court cannot say that the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.))

Page 9

Bankruptcy Court failed to apply the *Pioneer* factors. In light of the Bankruptcy Court's consideration and weighing of the facts, the court concludes that the Bankruptcy Court engaged in a proper analysis under *Pioneer.* However, considering the *Pioneer* factors, the facts of the this case, and the equitable nature of excusable neglect, the court concludes that the Bankruptcy Court abused its discretion when it determined that Pro-Tec was not entitled to reconsideration of its Claim based upon excusable neglect. As the court in *Pioneer* observed, "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with ... good faith ... [of the appellant and its counsel], weigh strongly in favor of permitting the tardy claim."*Pioneer,* 507 U.S. at 398. In the present case, Pro-Tec has shown that there will be no prejudice to Inacom if its Claim is reconsidered, the delay's effect on judicial proceedings in absolute terms will not prejudice Inacom, and Pro-Tec has acted in good faith. The only *Pioneer* factor that weighs against Pro-Tec is the reason for the delay, for which Pro-Tec was fully responsible.

*9 The court, therefore, will reverse the Bankruptcy Court's ruling denying Pro-Tec reconsideration of its Claim and remand this case to the Bankruptcy Court for proceedings consistent with this opinion.

## ORDER

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:

1. The April 20, 2004 decision of the Bankruptcy Court for the District of Delaware is REVERSED and REMANDED.

D.Del.,2004.
In re Inacom Corp.
Not Reported in F.Supp.2d, 2004 WL 2283599 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.