IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                          :   Chapter 11
                                                :
AMERICAN HOME MORTGAGE HOLDINGS,                :   Case No. 07-11047 (CSS)
INC., a Delaware corporation, et al.,           :
                                                :   Jointly Administered
       Debtors.                                 :
                                                :   Objection Deadline: June 4, 2008 at 4:00 p.m. (ET)
                                                :   Hearing Date: June 11, 2008 at 10:00 a.m. (ET)
------------------------------------------------------------ x
```

**DEBTORS' MOTION, PURSUANT TO BANKRUPTCY RULE 9019
AND SECTIONS 105(a), 363(b)(1) AND 503(c)(3) OF THE
BANKRUPTCY CODE, FOR AN ORDER APPROVING AND
AUTHORIZING FOURTH STIPULATION BETWEEN CERTAIN
DEBTORS AND ABN AMRO BANK N.V. AMENDING AND SUPPLEMENTING
THE THIRD STIPULATION REGARDING: (1) POST-PETITION ADVANCES;
(2) SERVICING PAYMENTS; AND (3) MORTGAGE LOAN REFINANCINGS**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] by this motion

(the "Motion"), seek entry of an order, pursuant to Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure ("Bankruptcy Rules") and sections 105(a), 363(b)(1) and 503(c)(3) of

Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving

the Fourth Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Amending and

Supplementing the Third Stipulation Regarding: (1) Post-Petition Advances; (2) Servicing

Payments; and (3) Mortgage Loan Refinancings (the "Fourth Post-Petition Advances

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation
(3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM
SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM Servicing"), a Maryland corporation (7267);
American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage
Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services,
Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York
corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except
for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Stipulation"), a copy of which is attached as <u>Exhibit 1</u> to the proposed form of Order annexed

hereto at <u>Exhibit B</u>, by and among the certain Debtors, as identified in the Fourth Post-Petition

Advances Stipulation (the "<u>ABN MRA Debtors</u>"), and ABN AMRO Bank N.V. ("<u>ABN</u>" and

together with the ABN MRA Debtors, the "<u>Parties</u>").  In support of the Motion, the Debtors

respectfully represent as follows:

<b><u>JURISDICTION</u></b>

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief

requested herein are sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code and

Bankruptcy Rule 9019.

<b><u>GENERAL BACKGROUND</u></b>

1.      On August 6, 2007 (the "<u>Petition Date</u>") each of the Debtors filed with this

Court a voluntary petition for relief under the Bankruptcy Code.  Each Debtor is continuing to

operate its business and manage its properties as a debtor-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

3.      On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>").  No trustee or

examiner has been appointed.

4.      In the weeks prior to the Petition Date, an unprecedented disruption in the

credit markets caused major write-downs of the Debtors' loan and security portfolios and

consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

5.      The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

6.      Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007, (the "Sale Order") [Docket No. 1711], the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC. (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

7.      Pursuant to the APA, the Servicing Sale closed in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser

---

[2]   All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein.  From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors operated the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser.  The Final Closing occurred on April 11, 2008.

## RELEVANT BACKGROUND

8.      The ABN MRA Debtors and ABN have entered into a number of agreements during these chapter 11 cases, each of which has been approved by the Court through separate orders.  Most recently, on February 13, 2008, the AHM MRA Debtors and ABN entered into the "Third Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding: Post-Petition Advances; (2) Servicing Payments; and (3) Loan Refinancings" (the "Third Post-Petition Advances Stipulation"), a copy of which is annexed hereto as Exhibit A.  Pursuant to the Third Post-Petition Advances Stipulation, the AHM MRA Debtors, among other things, agreed to use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans[3] through June 30, 2008, and ABN, among other things, agreed to (i) continue making Additional Mortgagor Advances in an amount up to $70 million; (ii) make Servicing Payments as provided in the budget attached to the Third Post-Petition Advances Stipulation; and (iii) fund the Bonus Plan established by the Debtors for the Construction Employees in an amount not to exceed $450,000.  The Third Post-Petition Advances Stipulation further (i) reaffirmed the Waiver of Claim Provision set forth in paragraph 15 of the Second Post-Petition Advances Stipulation, and (ii) authorized the Debtors, based on ABN's request, to offer principal reductions and similar incentives to borrowers under the Mortgage Loans to

---

[3]      Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Fourth Post-Petition Advances Stipulation.

encourage such borrowers to refinance their loans with other lenders, the cost of which being entirely the responsibility of ABN.

        9.     The Third Post-Petition Advances Stipulation was approved by the Court through an Order dated February 28, 2008 [D.I. 3115] (the "Order").  Pursuant to the Third Post-Petition Advances Stipulation and the terms of the Order, the Debtors established the Bonus Plan and commenced efforts to compromise the Mortgage Loans through offering borrowers certain refinancing incentives at ABN's expense.

        10.    Due to the success of the compromises of the Mortgage Loans, and certain issues that continue to delay ABN's request that the AHM MRA Debtors turn over their rights in and to the Mortgage Loans to ABN as provided in the Sale Procedures Stipulation and Second Post-Petition Advances Stipulation, ABN requested that the Debtors keep the construction loan servicing group in place through and including November 30, 2008 to service the remaining Mortgage Loans, and to continue offering certain refinancing incentives to the borrowers under the Mortgage Loans at ABN's expense.  The Debtors have agreed to do so subject the terms of the Third Post-Petition Advances Stipulation, as amended and supplemented by the Fourth Post-Petition Advances Stipulation, subject to approval by the Court.

## FOURTH POST-PETITION ADVANCES STIPULATION

        11.    The principal terms of the Fourth Post-Petition Advances Stipulation are set forth below:[4]

> i.   Each of the Recitals contained in (i) paragraphs 2 through 10 of the First Post-Petition Advances Stipulation, (ii) paragraphs 2 through 9 of the Sale Procedures Stipulation, (iii) paragraphs 2 through 9 of the Second Post-Petition Advances Stipulation, and (iv) paragraphs 2

---

[4] The terms of the Fourth Post-Petition Advances Stipulation set forth herein are a summary only.  To the extent of any inconsistency between the summary herein and the Fourth Post-Petition Advances Stipulation, the terms of the Fourth Post-Petition Advances Stipulation shall govern.

through 11 of the Third Post-Petition Advances Stipulation are incorporated by reference into the Fourth Post-Petition Advances Stipulation. Unless amended or supplemented by the Fourth Post-Petition Advances Stipulation, the Agreements contained in the First Post-Petition Advances Stipulation, the Sale Procedures Stipulation, the Second Post-Petition Advances Stipulation and the Third Post-Petition Advances Stipulation shall remain in full force and effect.

ii. ABN shall pay its pro-rata share of the Supplemented 2008 Budget amounts, as the term "pro-rata" is used in the first Post-Petition Advances Stipulation, on the same terms as provided for payment of the Budget amounts in the First Post-Petition Advances Stipulation.

iii. The Debtors shall use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through and including November 30, 2008; provided, that, ABN (i) continues to make Additional Mortgagor Advances and Servicing Payments in accordance with the provisions of the First Post-Petition Advances Stipulation, the Second Post-Petition Advances Stipulation and Third Post-Petition Advances Stipulation; and (ii) that nothing in the Fourth Post-Petition Advances Stipulation shall nullify or otherwise effect the Waiver of Claims Provision pursuant to paragraph 15 of the Second Post-Petition Advances Stipulation, as reaffirmed by ABN through the Third Post-Petition Advances Stipulation.

iv. The Bonus Pool shall be increased from $450,000 to an amount not to exceed $675,000, which amount shall be funded by ABN and held by the Debtors in the Bonus Plan Account in accordance with the terms of the Order.

v. The Debtors are authorized to transfer $225,000 from the Control Account (as defined in the Order) to the Bonus Plan Account to fund the increase of the Bonus Pool provided in paragraph 9 of the Fourth Post-Petition Advances Stipulation. The funds in the Bonus Plan Account shall be used by the Debtors solely to make payments to the Construction Loan Employees under the Bonus Plan as provided in paragraphs 17 – 23 of the Third Post-Petition Stipulation, as amended and supplemented by the Fourth Post-Petition Stipulation. On or before December 15, 2008 (unless such date is extended by written agreement between the Debtors and ABN), the Debtors shall return all unused funds, if any, in the Bonus Plan Account to the Control Account and provide ABN with a report on the disbursements from the Bonus Plan Account; provided, however, that the return of funds to the Control Account shall not change ABN's obligations under the Third Post-Petition Advances Stipulation, as amended and supplemented by the Fourth Post-Petition Stipulation.

vi. The incentive portion of the Bonus Plan, as set forth in paragraphs 17 – 21 of the Third Post-Petition Advances Stipulation, shall not be modified by the Fourth Post-Petition Advances Stipulation, except to the extent necessary to increase the amount of the Bonus Pool allocated to Karen Gowins if the 60% Milestone, the 80% Milestone and/or the 90% Milestone are reached.

vii. The aggregate UPB of the Mortgage Loans for purposes of determining the 60% Milestone, the 80% Milestone, and the 90% Milestone shall remain the aggregate UPB of the Mortgage Loans and the Construction Loans as of close of business on February 8, 2008.

viii. Under the stay portion of the Bonus Plan provided in paragraph 22 of the Third Post-Petition Advances Stipulation (the "June 30th Stay Bonus Plan"), the Construction Loan Employees, other than Karen Gowins, will be entitled to receive their allocated portion of the Bonus Pool related to the June 30th Stay Bonus Plan provided that they remain employed by the Debtors, and they are not terminated for cause by the Debtors, through June 30, 2008.

ix. ABN consents to the Debtors' payment of the allocated portions of the Bonus Pool related to the June 30th Stay Bonus Plan to the eligible Construction Loan Employees on or after July 1, 2008 from the amounts held in the Bonus Plan Account.

x. In addition to the June 30th Stay Bonus Plan, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive their allocated portion of the Bonus Pool for an additional stay plan (the "November 30th Stay Bonus Plan"), provided that they remain employed by the Debtors, and they are not terminated for cause by the Debtors, through the earlier of November 30, 2008 or the date each of the Mortgage Loans and Construction Loans are compromised or the Debtors determine that no additional Mortgage Loans and Construction Loans will be compromised.

xi. In the event (i) the AHM MRA Debtors are unable to keep in place the construction loan servicing group through November 30, 2008 or the completion of the compromises of all the Mortgage Loans and Construction Loans, or (ii) ABN exercises its rights in and to the Mortgage Loans to request the turnover of the AHM MRA Debtors' rights in and to the Mortgage Loans to ABN as provided in paragraphs 17 and 18 of the Sale Procedures Stipulation (as modified by the Second Post-Petition Advances Stipulation) prior to November 30, 2008 or the completion of the compromises of all the Mortgage Loans and Construction Loans, ABN shall be obligated for the pro-rated

portion of the Bonus Pool related to the incentive portion of the Bonus Plan and 100% of the portion of the Bonus Pool related to the stay portion of the Bonus Plan. For example, if only a 30% reduction of the UPB of the Mortgage Loans and the Construction Loans has been obtained, ABN will be obligated to fund ½ of the Bonus Pool allocated to the 60% Milestone and 100% of the Bonus Pool allocated to the stay portion of the Bonus Plan.

xii. The turnover of the AHM MRA Debtors' rights in and to the Mortgage Loans to ABN as provided in paragraphs 17 and 18 of the Sale Procedures Stipulation shall: (a) be conditioned upon ABN's performance of each of the payment obligations contained in the First and Second Post-Petition Advances Stipulations, the Third Post-Petition Advances Stipulation, and the Fourth Post-Petition Advances Stipulation and (b) occur on the first business day that is fifteen calendar days after ABN provides written notice to the AHM MRA Debtors and their counsel that it has obtained an acceptable substitute servicer and/or transferee (or such later date as the AHM MRA Debtors and ABN may mutually agree to), and upon such transfer and substitution of servicer, ABN shall no longer be obligated to make any further Servicing Payments. In the event the AHM MRA Debtors are unable to keep in place the construction loan servicing group to service the Mortgage Loans despite their reasonably commercial efforts to keep the construction loan servicing group in place, then the AHM MRA Debtors shall provide written notice (in advance of discontinuing service, but only if practicable) to ABN of the last day they will be servicing the Mortgage Loans (after which the AHM MRA Debtors shall have no obligation to service the Mortgage Loans), and the parties thereupon shall effectuate the conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN.

xiii. On the date the Debtors convey, transfer, quitclaim, release and/or turnover and deliver possession of the Mortgage Loans and Servicing Rights to ABN pursuant to the terms of the Third Post-Petition Advances Stipulation and the Fourth Post-Petition Advances Stipulation, ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the First Post-Petition Advances Stipulation, the Advances Order, the Second Post-Petition

Advances Stipulation, the Third Post-Petition Advances Stipulation or the Fourth Post-Petition Advances Stipulation, and the Debtors reserve the right to object to or contest the exercise of such retained right.

xiv.    As provided in paragraph 26 of the Third Post-Petition Advances Stipulation, the Debtors shall continue to be authorized by ABN to continue to offer principal reductions and similar incentives to borrowers under the Mortgage Loans to encourage such borrowers to refinance their loans with other lenders such incentives to be agreed upon between the Debtors and ABN, and all such incentives, in whatever form, shall continue to be entirely a cost of ABN and not the Debtors or their estates.  Upon the closing of any such refinancing of a Mortgage Loan and the distribution of the net proceeds thereof to ABN, the releases and waivers of claims contained in the Waiver of Claims Provision (referred to in Paragraph 3 of the Third Post-Petition Advances Stipulation) shall immediately apply to each such refinanced Mortgage Loan.

## RELIEF REQUESTED

12.    By this Motion, the Debtors seek approval of the Fourth Post-Petition Advances Stipulation pursuant to Bankruptcy Rule 9019 and sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code.  Pursuant to the Fourth Post-Petition Advances Stipulation, the Debtors have agreed to use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through November 30, 2008.  In return, ABN has agreed to (i) continue funding its pro rata share of the budget for the servicing of the Debtors' construction loan portfolio through November 30, 2008, (ii) increase the Bonus Pool from $450,000 to an amount not to exceed $675,000 to fund the November 30th Stay Bonus Plan and provide additional incentive to the Construction Loan Employees to continue to negotiate and effectuate compromises of the Mortgage Loans and Construction Loans, and (iii) reaffirm the waiver of certain claims against the Debtors and their estates.  In the Debtors' judgment, the above-outlined compromises contained in the Fourth Post-Petition Advances Stipulation are fair and reasonable and serve the best interests of the Debtors, their estates and creditors.

## BASIS FOR RELIEF REQUESTED

A.    **The Fourth Post-Petition Advances Stipulation Should be Approved Pursuant to Bankruptcy Rule 9019(a)**

13.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. In re Penn Central Transp. Co., 596 F.2d 1002 (3d Cir. 1979). The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414 (1986).

14.    Approval of a proposed settlement is within the "sound discretion" of the Bankruptcy Court. In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of the estate." See In the Matter of Energy Cooperative, Inc., 886 F.2d 921, 927 (7th Cir. 1989). In determining whether to approve an motion to settle a controversy, a Bankruptcy Court must determine whether it is fair, reasonable and adequate by examining four factors:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection: (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Official Comm. of Unsec. Cred. Of Penn. Truck Lines, Inc. v. Penn Truck Lines, Inc. (In re Penn Truck Lines, Inc.), 150 B.R. 595, 598 (Bankr. E.D. Pa. 1992). The Court should not substitute its judgment for that of a trustee. Neshaminy Office Building Assoc., 62 B.R. at 803. The Court is not to decide the numerous questions of law or fact raised by litigation, but rather should

canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983). In addition, "because the bankruptcy judge is unequally situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." Neshaminy Office Building Assoc., 62 B.R. at 803, citing In re Patel, 43 B.R. 500, 505 (Bankr. N.D. Ill. 1984).

15.    As noted above, the Fourth Post-Petition Advances Stipulation is in the best interest of the Debtors, their estates and creditors as, pursuant to the terms thereunder, ABN has agreed to, among other things, (i) continue funding its pro rata share of the budget for servicing of the Debtors' construction loan portfolio, which was to expire on June 30, 2008 through and including November 30, 2008, (ii) increase the Bonus Pool from $450,000 to an amount not to exceed $675,000 to fund the November 30th Stay Bonus Plan and provide even further incentive to the Construction Loan Employees to continue to negotiate and effectuate compromises of the Mortgage Loans and Construction Loans, and (iii) reaffirm the waiver of certain claims against the Debtors and their estates.

16.    Pursuant to the authority granted to the Debtors through the Order approving the Third Post-Petition Advances Stipulation, the Debtors have successfully compromised approximately 70 Mortgage Loans with an aggregate unpaid principal balance of $35.0 million. Through the Fourth Post-Petition Advances Stipulation, the Debtors have established an additional stay bonus plan – the November 30th Stay Bonus Plan – which, like the June 30th Bonus Plan is being funded by ABN, and have increased the allocated amount for the incentive component of the Bonus Plan for Karen Gowins. As a result, ABN has agreed to increase the Bonus Pool to $675,000 ($225,000 more than the amount provided pursuant to the

Third Post-Petition Advances Stipulation).  This added incentive, which is solely at the cost and

expense of ABN, undoubtedly benefits the Debtors as the Construction Loan Employees will

continue to be motivated to compromise Mortgage Loans and Construction Loans, which will, in

turn, add value to the Debtors' estates.  Indeed, with respect to compromises of the Construction

Loans, pursuant to the BofA Stipulation, the Debtors will receive all of the value achieved in

excess of the payoff amount of the Administrative Agent's secured claim.

**B.      The Bonus Plan as Amended and Supplemented by the Fourth Post-Petition
         Advances Stipulation Should Be Evaluated under Section 503(c)(3) of the
         Bankruptcy Code, Using the Same Standard as Section 363(b) of the Bankruptcy
         Code**

        17.      Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession

to use property of the estate "other than in the ordinary course of business" after notice and a

hearing.  11 U.S.C. § 363(b)(I).  Uses of estate property outside the ordinary course of business

may be authorized if the debtor demonstrates a "sound business purpose" for it.  See In re

Lionel Corp., 722 F. 2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a

judge determining a 363(b) application expressly find from the evidence presented before

him a good business reason to grant the application."); In re Delaware Hudson Ry. Co., 124

B.R. 169, 179 (Bankr. Del. 1991).

        18.      Once the debtor articulates a valid business justification for a particular

form of relief, the Court reviews the debtor's request under the "business judgment rule."  The

business judgment rule "is a presumption that in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

was in the best interests of the company." In re Integrated Resources. Inc., 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

19.     The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing.  See id.; see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention program, stating that "[i]n determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions.").

20.     Section 503(c) of the Bankruptcy Code, which is applicable in all bankruptcy cases filed after October 2005, provides criteria for courts to use in approving certain types of payments to insiders and "other transfers or obligations that are outside the ordinary course of business." Section 503(c) comprises three subsections: (1) a general prohibition against retention plans for insiders; (2) limitations on severance payments; and (3) standards governing other transfers to certain employees and consultants, among others, that are outside of the ordinary course.  For the reasons set forth herein, neither section 503(c)(1) nor section 503(c)(2) are applicable to evaluating the Supplemented Bonus Plan (as defined below) contained in the Fourth Post-Petition Advances Stipulation.

21.     By the statute's plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention plans of insiders and section 503(c)(2) addresses only the requirements for severance plans, and neither provision applies to performance-based incentive plans.  See, e.g., In re Nobex Corp., No. 05-20050, January 12, 2006, Hearing Tr. at 67 (Bankr.

D. Del. 2006) (Walrath, J.); <u>In re Calpine Corp.</u>, No. 05-60200, April 26, 2006 Hearing Tr. at

87 (Bankr. S.D.N.Y. 2006) (Lifland, J.). Indeed, one court recently held that:

> If sections 503(c)(1) and (c)(2) are not operative, a court may consider
> whether the payments are permissible under section 503(c)(3), which
> limits payments made to management and employees, among others,
> outside the ordinary course, unless such payments are shown to be justified
> under the facts and circumstances of chapter 11 case. As one treatise
> points out, the test appears to be no more stringent a test than the one
> courts must apply in approving any administrative expense under
> 503(b)(1)(A).

<u>In re Dana Corporation</u>, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006).

      22.    The Bonus Plan, which was established through the Third Post-Petition

Advances Stipulation and approved by the Order, is being amended and supplemented by the

Fourth Post-Petition Stipulation (the "<u>Supplemented Bonus Plan</u>"). The Supplemented Bonus

Plan is intended to provide neither bonuses for retention of insiders, nor severance pay. Rather,

the Supplemented Bonus Plan establishes the November 30th Stay Bonus Plan for Construction

Loan Employees who are not insiders (i.e., excluding Karen Gowins) and increases the amount

allocated for Karen Gowins under the incentive portion of the Bonus Plan. The milestones

established under the Bonus Plan are not modified or altered by the Supplemented Bonus Plan.

Under the November 30th Stay Bonus Plan, the Construction Loan Employees, other than Karen

Gowins, will be entitled to receive their allocated portion of the Bonus Pool provided that they

remain employed by the Debtors, and they are not terminated for cause by the Debtors, through

the earlier of November 30, 2008 or the date each of the Mortgage Loans and Construction

Loans are compromised or the Debtors determine that no additional Mortgage Loans or

Construction Loans will be compromised.

      23.    Because the Supplemented Bonus Plan is designed to motivate the

Construction Loan Employees to negotiate and effectuate compromises of the (i) Mortgage

Loans and (ii) the Construction Loans, the incentive portion of the Bonus Plan is properly

characterized as a sale-related incentive plan, not a retention plan for insiders subject to the

requirements of Bankruptcy Code section 503(c)(1). Likewise, November 30th Stay Bonus Plan

explicitly carves out any insiders, Bankruptcy Code section 503(c)(1) is not applicable.

      24.     Furthermore, the Supplemented Bonus Plan does not constitute severance

for insiders subject to the provisions of Bankruptcy Code section 503(c)(2), because it does not

provide benefits to insiders upon termination of their employment with the Debtors. See 11

U.S.C. § 503(c)(2). As stated above, Karen Gowins, the sole Construction Loan Employee

qualified as an insider, has been explicitly carved out of the November 30th Stay Bonus Plan.

      25.     As sections 503(c)(1) and (c)(2) of the Bankruptcy Code are not

applicable, to the extent that distributions under the Supplemented Bonus Plan are payments

"outside the ordinary course of business," they should be evaluated under section 503(c)(3). See,

e.g., Nobex Corp., Case No. 05-20050, January 12, 2006, Hearing Tr. at 67; In re Musicland

Holding Corp., Case No. 06-10064 (Bernstein, J.) (Bankr. S.D.N.Y. Feb. 1, 2006) (debtor

continuing to provide incentive bonuses under management incentive plan did not violate section

503(c) of the Bankruptcy Code); In re Dana Corporation, 2006 WL 3479406 at *12; In re Werner

Holding Co. (DE). Inc., Case No. 06-10578 (Carey, J.) (Bankr. D. Del. July 20, 2006, August 22,

2006, and December 20, 2006) (ordering various relief requested in connection with debtor's

incentive bonus plans pursuant to sections 363(b) and 503(c) of the Bankruptcy Code).

      26.     Section 503(c)(3) of the Bankruptcy Code states, in relevant part, that

"there shall be neither allowed nor paid ... other transfers or obligations that are outside the

ordinary course of business and not justified by the facts and circumstances of the case...." Since

courts have begun to analyze various payments under section 503(c)(3), they have been

unanimous in holding that they must use the "business judgment" standard as the proper standard

for determining whether incentive programs and the payments thereunder are justified. See, e.g.,

In re Werner Holding Co. (DE). Inc., Case No. 06-10578 (Carey, J.) (Bankr. D. Del. July 20,

2006, August 22, 2006, and December 20, 2006); In re Nobex Corporation, No. 05-20050

(Sontchi, J.) (Bankr. D. Del. May 15, 2006 and Dec. 21, 2005); In re Riverstone Networks. Inc.,

No. 06-10110 (Sontchi, J.) (Bankr. D. Del. March 28, 2006); In re Pliant Corporation, No. 06-

100001 (Walrath, J.) (Bankr. D. Del. March 14, 2006).

        27.     Indeed, in the Nobex case, Judge Walrath stated that:

> [Section] (c)(3) was meant to provide a standard, albeit not as clear, for any
> other transfers or obligations outside the ordinary course of business.... I
> read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers
> or obligations made outside the ordinary course of business are those that
> are justified by the facts and circumstances of the case.... I find it quite
> frankly nothing more than a reiteration of the standard under 363 ... under
> which courts had previously authorized transfers outside the ordinary
> course of business and that [are], based on the business judgment of the
> debtor....

January 12, 2006, Hearing Tr. at 86-87, In re Nobex Corp., Case No. 05-20050 (Walrath, J.)

(Bankr. D. Del.) (an order approving the management incentive plan at issue was entered

January 20, 2006). See also In re Dana Corporation, 2006 WL 3479406 at *6 (Bankr. S.D.N.Y.

2006) (Judge Lifland agreeing that management incentive programs should be evaluated

under the business judgment standard).

**D.**    **The Continuation of the Bonus Plan and the Establishment of the Supplemented
Bonus Plan Satisfy a Sound Business Purpose and Should Be Authorized by
this Court Pursuant to Sections 363(b)(1) and 503(c)(3)**

        28.     The continuation of the Bonus Plan and establishment of the

Supplemented Bonus Plan, pursuant to the terms of the Fourth Post-Petition Advances

Stipulation, satisfy a sound business purpose. The continuation of the Bonus Plan and the

establishment of the Supplemented Bonus Plan, together with the increased Bonus Pool, will

further incentivize the Construction Loan Employees to continue to negotiate and compromise the Mortgage Loans and Construction Loans, which will, in turn, help to maximize value and reduce claims for the benefit of the Debtors' estates and creditors. Indeed, the incentive bonuses remain tied directly to the proceeds received by the Debtors as a result of the compromise of the Construction Loans and Mortgage Loans. Thus, the motivations of the Construction Loan Employees are aligned with the motivations of the Debtors and their creditors.

29.    Secondly, the Debtors' ability to preserve the value of their assets and reduce claims would be substantially hindered if the Debtors are unable to properly incentivize their employees. The fact that the Debtors are essentially in the business of preserving assets for sale and winding down their operations, makes it virtually impossible to attract any employees, let alone those equal to the caliber of the Construction Loan Employees. Authorization to continue the Bonus Plan and establish the Supplemented Bonus Plan through the Fourth Post-Petition Advances Stipulation will provide the Debtors' employees with a greater sense of financial security thereby minimizing the need to seek other employment which would otherwise distract the employees from the necessary tasks they need to perform for the Debtors. Providing incentives to encourage employees to focus on the Debtors' objectives, and to motivate them to provide optimal levels of performance, is necessary to successfully maintain the business.

30.    Third, ABN is funding the Bonus Plan and the Supplemented Bonus Plan. Thus, there is no economic downside to the continuation of the Bonus Plan or the establishment of the Supplemented Bonus Plan.

31.     Finally, targeted incentive programs have repeatedly been recognized by this and other courts, as having particular value in motivating employees.  See, e.g., In re American Home Mortgage Holdings, Inc., et al., Case No. 07-11047 (Sontchi, J.) (Bankr. D. Del. November 28, 2007);  In re Werner Holding Co. (DE), Inc., Case No. 06-10578 (Carey, J.) (Bankr. D. Del. Dec. 27, 2006) (approving employee incentive plan providing for cash payments as rewards for attainment of collective operational restructuring goals and personal performance goals in support); In re Nellson Nutraceutical, Inc., Case No. 06-10073 (Sontchi, J.) (Bankr. D. Del. July 18, 2006); In re Global Home Products LLC, Case No. 06-10340 (Gross, J.) (Bankr. D. Del. May 30, 2006) (approving management incentive program provided that plan participants fulfilled their obligations to the debtors through the closing of a sale of substantially all of the Debtors' assets); In re Riverstone Networks, Inc., Case No. 06-10110 (Sontchi, J.) (Bankr. D. Del. Apr. 3, 2006) (approving an employee bonus program providing for cash payments for successful completion of certain individual and company performance goals); In re Pliant Corp., Case No. 06-10001 (Walrath, J.) (Bankr. D. Del. Feb. 21, 2006) (approving management incentive compensation plan providing for cash awards for achievement of organizational performance goals and personal performance goals); In re Nobex Corp., Case No. 05-20050 (Walrath, J.) (Bankr. D. Del. Jan. 20, 2006) (approving "sale-related incentive pay" to officers, contingent on a successful sale of the company for a price in excess of that offered by an existing, stalking horse bidder, in connection with the debtor's pursuit of a sale of the company).

E.   **The Fourth Post-Petition Advances Stipulation May Additionally Be Authorized Pursuant to Section 105(a) of the Bankruptcy Code**

32.   Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]. " 11 U.S.C. § 105(1).

33.   The Debtors strongly and reasonably believe that approval of the Fourth Post-Petition Advances Stipulation is critical to their ability to maximize returns to creditors. Among other benefits, the Fourth Post-Petition Advances Stipulation will extend the budget for the construction loan section through November 30, 2008, will provide the Debtors' Construction Loan Employees with added incentive to compromise Mortgage Loans and Construction Loans, and will result in a reduction of claims against the Debtors' estates (by ABN's reaffirmation of the waiver of certain claims).

34.   The Debtors respectfully submit that the entrance into the Fourth Post-Petition Advances Stipulation is an appropriate exercise of the Debtors' business judgment; is necessary and in the best interest of the Debtors, their creditors, and their estates; and should be approved pursuant to Bankruptcy Rule 9019 and sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code.

**NOTICE**

35.   Notice of this Application will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America; (iv) Counsel to the Agent for the Debtors' Postpetition Lender; (v) counsel to ABN; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that this Court issue and enter an order, in the form attached hereto as Exhibit B, (i) pursuant to sections 363(b)(1), 503(c)(3) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Fourth Post-Petition Advances Stipulation, and (ii) granting such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
          May 20, 2008

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **AMERICAN HOME MORTGAGE** | ) | Case Nos.  07-11047 (CSS) |
| **HOLDINGS, INC., et al.,** | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**THIRD STIPULATION BETWEEN CERTAIN DEBTORS AND
ABN AMRO BANK N.V. REGARDING: (1) POST-PETITION ADVANCES;
(2) SERVICING PAYMENTS; AND (3) MORTGAGE LOAN REFINANCINGS**

American Home Mortgage Acceptance, Inc.,  American Home Mortgage Corp.,

American Home Mortgage Investment Corp., and American Home Mortgage Servicing, Inc.

(collectively, the "AHM MRA Debtors") as chapter 11 debtors and debtors in possession on the

one hand, and ABN AMRO Bank N.V. ("ABN") on the other hand (the AHM MRA Debtors

and ABN, collectively, the "Parties"), hereby enter into this "Third Stipulation Between Certain

Debtors and ABN AMRO Bank N.V. Regarding: Post-Petition Advances; (2) Servicing

Payments; and (3) Loan Refinancings" (the "Third Post-Petition Advances Stipulation"), by and

through their respective counsel of record, effective as of the date of entry of an order approving

this Third Post-Petition Advances Stipulation, based upon the following Recitals.

<u>Recitals</u>

1.      On August 6, 2007 (the "Petition Date"), the Debtors[1] commenced

voluntary cases (the "Bankruptcy Cases") under chapter 11 of Title 11, United States Code, 11

U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the

---

[1]      The Debtors and Debtors in Possession are American Home Mortgage Holdings, Inc., American Home
Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp.,
American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement
Services, Inc., and Great Oak Abstract Corp. (individually, a "Debtor," and collectively, the "Debtors").

066585.1001

District of Delaware (the "Court"). The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee appointed an official committee of unsecured creditors.

        2.      On August 22, 2007, the AHM MRA Debtors and ABN entered into the "Stipulation Between Certain Debtors and ABN AMRO Bank N.V.; Order Thereon" (the "First Post-Petition Advances Stipulation"), pursuant to which, among other things, ABN agreed to fund certain Additional Mortgagor Advances in connection with the construction loans and the conventional mortgages (collectively, the "Mortgage Loans") that are the subject of the Master Repurchase Agreement, dated as of February 28, 2007, between the AHM MRA Debtors and ABN, and to fund certain Servicing Payments, as each of those capitalized terms are described and defined in the First Post-Petition Advances Stipulation. The Court entered its order approving the First Post-Petition Advances Stipulation on August 22, 2007 (docket no. 284).

        3.      On or about September 21, 2007, ABN and the AHM MRA Debtors entered into the "Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Marketing and Sale of Certain Construction Loans and Servicing Rights; and Order Thereon" (the "Sale Procedures Stipulation"), pursuant to which, among other things, the AHM MRA Debtors and ABN agreed on the procedures under which the Mortgage Loans that were the subject of the Master Repurchase Agreement would be marketed and sold; (b) agreed that, upon entry of an order approving the Sale Procedures Stipulation, ABN would be obligated to pay the AHM MRA Debtors the ABN Payment (as defined in the Sale Procedures Stipulation) in the amount of $700,000, and (c) further agreed (as provided in paragraph 20 of the Sale Procedures Stipulation) that "upon . . . the ABN MRA Debtors' conveyance, transfer, quitclaim, release,

                                                      

and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN pursuant to paragraphs 12(b) or 17 [of the Sale Procedures Stipulation] . . . , ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the ABN [First] Post-Petition Advances Stipulation, or the Advances Order, and the Debtors reserve the right to object to or contest the exercise of such retained right" (the "Waiver of Claims Provision").

4.      On October 4, 2007, the Court entered its order approving the Sale Procedures Stipulation (docket no. 1176), and entered a related order approving the sales procedures (docket no. 1175).

5.      An auction for the Mortgage Loans was scheduled for October 29, 2007. Only one bid for the Mortgage Loans was received by the Bid Deadline from a Qualified Bidder, and the Debtors filed a notice with the Court cancelling the auction (docket no. 1695), and notified the parties.

6.      Paragraphs 17 and 18 of the Sale Procedures Stipulation provided that if there were no Qualified Bidder for the Mortgage Loans, or if ABN exercised its right to notify the AHM MRA Debtors not to accept the Successful Bid at the Auction, then: (a) ABN would pay to AHM the $700,000 ABN Payment; and (b) within twenty business days of the Bid Deadline or such later date that the parties might agree to, the AHM MRA Debtors would

transfer, convey and turn over to ABN all of the AHM MRA Debtors' rights in and to the Mortgage Loans.

      7.     On November 8, 2007, ABN made the ABN Payment.

      8.     On December 3, 2007, ABN and the AHM MRA Debtors entered into the "Second Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Post-Petition Advances and Sale of Construction Loan Portfolio; Order Thereon" (the "Second Post-Petition Advances Stipulation"), pursuant to which the AHM MRA Debtors agreed to use commercially reasonable efforts to keep in place the construction loan servicing group to service the Mortgage Loans through March 31, 2008, and ABN agreed to continue making Additional Mortgagor Advances in an amount up to $70 million and to make Servicing Payments as provided in the budget attached to the Second Post-Petition Advances Stipulation.

      9.     On December 12, 2007, the Court entered its "Order Approving Second Stipulation Between Certain Debtors and ABN AMRO Bank N.V. Regarding Post-Petition Advances and Sale of Construction Loan Portfolio; Order Thereon," (docket no. 2355) approving the Second Post-Petition Advances Stipulation.

      10.    Due to regulatory issues delaying ABN's request that the AHM MRA Debtors turnover their rights in and to the Mortgage Loans to ABN as provided in the Sale Procedures Stipulation and Second Post-Petition Advances Stipulation, ABN has requested that the Debtors keep the construction loan servicing group in place through June 30, 2008 to service the remaining Mortgage Loans, and to offer certain refinancing incentives to the borrowers under those Mortgage Loans at ABN's expense, and the Debtors have agreed to do so subject the terms of this Third Post-Petition Advances Stipulation and approval thereof by the Court.

                          

11.    Attached hereto as Exhibit A and incorporated herein by reference is the

Debtor's budget for the servicing of the Debtors' construction loan portfolio for second quarter

of calendar 2008 (the "2008 Budget").

12.    Based upon the foregoing, the Parties hereby stipulate and agree as

follows.

### Agreements

13.    Each of the Recitals contained in (i) paragraphs 2 through 10 of the First

Post-Petition Advances Stipulation, (ii) paragraphs 2 through 9 of the Sale Procedures

Stipulation, and (iii) paragraphs 2 through 9 of the Second Post-Petition Advances Stipulation

are incorporated herein by this reference, and, unless amended herein, the Agreements contained

in those three stipulations shall remain in full force and effect.

14.    Paragraph 12 of the First Post-Petition Advances Stipulation is hereby

amended to increase the reference therein from "$32 million" to "$70 million" (the same $70

million amount that governed the Second Post-Petition Advances Stipulation). ABN shall

continue to fund certain Additional Mortgagor Advances and Servicing Payments (as such terms

are defined in the First Post-Petition Advances Stipulation) in connection with the Mortgage

Loans in accordance with the terms of the First Post-Petition Advances Stipulation and the

Second Post-Petition Advances Stipulation.

15.    ABN shall pay its pro-rata share of the 2008 Budget amounts, as the term

"pro-rata" is used in the first Post-Petition Advances Stipulation, on the same terms as provided

for payment of the Budget amounts in the First Post-Petition Advances Stipulation.

16.    The Debtors shall use commercially reasonable efforts to keep in place the

construction loan servicing group to service the Mortgage Loans through June 30, 2008.

provided, that, ABN (i) continues to make Additional Mortgagor Advances and Servicing Payments in accordance with the provisions of the First Post-Petition Advances Stipulation and the Second Post-Petition Advances Stipulation; and (ii) that nothing herein shall nullify or otherwise effect the Waiver of Claims Provision pursuant to paragraph 15 of the Second Post-Petition Advances Stipulation.

17.     ABN shall fund all of the Debtors' obligations under a new stay and incentive bonus plan, the terms of which are described in this Stipulation (the "Bonus Plan"), for the employees working in the construction loan servicing group (the "Construction Loan Employees"), in an amount not to exceed $450,000 (the "Bonus Pool"), which Bonus Plan is designed to motivate the Construction Loan Employees to negotiate and effectuate compromises of the (i) Mortgage Loans and (ii) the construction loans the Debtors received the authority to compromise by Order dated February 1, 2008 (docket no. 2860) (the "Construction Loans").

18.     Under the incentive portion of the Bonus Plan, the Construction Loan Employees will be entitled to receive payments from the Bonus Pool if the following milestones are reached:  (i) a 60% reduction of the aggregate unpaid principal balance ("UPB") of the Mortgage Loans and the Construction Loans (the "60% Milestone"); (ii) a 80% reduction of the aggregate UPB of the Mortgage Loans and the Constructions Loans (the "80% Milestone"); and (iii) a 90% reduction of the aggregate UPB of the Mortgage Loans and the Construction Loans (the "90% Milestone").  The aggregate UPB of the Mortgage Loans for purposes of determining the 60% Milestone, 80% Milestone and the 90% Milestone shall be the aggregate UPB of the Mortgage Loans and the Construction Loans as of close of business on February 8, 2008.

19.     If the 60% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 10% of their allocated portion of the Bonus Pool

DB02:6557875.6                                              066585.1001

for the incentive portion of the Bonus Plan. If the 60% Milestone is reached, Karen Gowins will be entitled to receive 20% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

20.     If the 80% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 15% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan. If the 80% Milestone is reached, Karen Gowins will be entitled to receive 30% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

21.     If the 90% Milestone is reached, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive 25% of their allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan. If the 90% Milestone is reached, Karen Gowins will be entitled to receive 50% of her allocated portion of the Bonus Pool for the incentive portion of the Bonus Plan.

22.     Under the stay portion of the Bonus Plan, the Construction Loan Employees, other than Karen Gowins, will be entitled to receive their allocated portion of the Bonus Pool provided that they remain employed by the Debtors, and they are not terminated for cause by the Debtors, through the earlier of June 30, 2008 or the date each of the Mortgage Loans and Construction Loans are compromised or the Debtors determine that no additional Mortgage Loans and Construction Loans will be compromised.

23.     In the event (i) the AHM MRA Debtors are unable to keep in place the construction loan servicing group through June 30, 2008 or the completion of the compromises of all the Mortgage Loans and Construction Loans, or (ii) ABN exercises its rights in and to the Mortgage Loans to request the turnover of the AHM MRA Debtors' rights in and to the

DB02:6557875.6

066585.1001

Mortgage Loans to ABN as provided in paragraphs 17 and 18 of the Sale Procedures Stipulation (as modified by the Second Post-Petition Advances Stipulation) prior to June 30, 2008 or the completion of the compromises of all the Mortgage Loans and Construction Loans, ABN shall be obligated for the pro-rated portion of the Bonus Pool related to the incentive portion of the Bonus Plan and 100% of the portion of the Bonus Pool related to the stay portion of the Bonus Plan. For example, if only a 30% reduction of the UPB of the Mortgage Loans and the Construction Loans has been obtained, ABN will be obligated to fund ½ of the Bonus Pool allocated to the 60% Milestone and 100% of the Bonus Pool allocated to the stay portion of the Bonus Plan.

24.    The turnover of the AHM MRA Debtors' rights in and to the Mortgage Loans to ABN as provided in paragraphs 17 and 18 of the Sale Procedures Stipulation shall: (a) be conditioned upon ABN's performance of each of the payment obligations contained in the First and Second Post-Petition Advances Stipulations and this Third Post-Petition Advances Stipulation, and (b) occur on the first business day that is fifteen calendar days after ABN provides written notice to the AHM MRA Debtors and their counsel that it has obtained an acceptable substitute servicer and/or transferee (or such later date as the AHM MRA Debtors and ABN may mutually agree to), and upon such transfer and substitution of servicer, ABN shall no longer be obligated to make any further Servicing Payments. In the event the AHM MRA Debtors are unable to keep in place the construction loan servicing group to service the Mortgage Loans despite their reasonably commercial efforts to keep the construction loan servicing group in place, then the AHM MRA Debtors shall provide written notice (in advance of discontinuing service, but only if practicable) to ABN of the last day they will be servicing the Mortgage Loans (after which the AHM MRA Debtors shall have no obligation to service the Mortgage Loans),

and the parties thereupon shall effectuate the conveyance, transfer, quitclaim, release, and/or turnover and delivery of possession of the Mortgage Loans and the Servicing Rights to ABN.

25.     On the date the Debtors convey, transfer, quit claim, release and/or turnover and deliver possession of the Mortgage Loans and Servicing Rights to ABN pursuant to the terms of the Third Post-Petition Advances Stipulation, ABN shall not retain, nor shall it assert, a claim or interest of any kind against or in the Debtors or the Debtors' bankruptcy estates under or with respect to the ABN MRA Agreements, the Mortgage Loans, or the Servicing Rights; provided, however, that notwithstanding the foregoing, ABN shall retain the right to pursue recovery of any of the ABN Advances (but not including Servicing Payments earned by the ABN MRA Debtors but then remaining unpaid) applied or used by any of the Debtors in any manner inconsistent with the ABN MRA Agreements, the First Post-Petition Advances Stipulation, the Advances Order, the Second Post-Petition Advances Stipulation or the Third Post-Petition Advances Stipulation, and the Debtors reserve the right to object to or contest the exercise of such retained right.

26.     ABN authorizes and requests that the Debtors offer principal reductions and similar incentives to borrowers under the Mortgage Loans to encourage such borrowers to refinance their loans with other lenders such incentives to be agreed upon between the Debtors and ABN, and all such incentives, in whatever form, to be entirely a cost of ABN and not the Debtors or their estates.  Upon the closing of any such refinancing of a Mortgage Loan and the distribution of the net proceeds thereof to ABN, the releases and waivers of claims contained in the Waiver of Claims Provision (referred to in Paragraph 3 herein) shall immediately apply to each such refinanced Mortgage Loan.

9

27.     Upon completion of the compromise of all the Mortgage Loans and the Construction Loans or determination by the Debtors that no other Mortgage Loans or Construction Loans will be compromised, the Debtors will file a report (the "Report"). The Report will identify (i) each Mortgage Loan or Construction Loan by loan number that has been compromised, (ii) the amount of the unpaid principal balance as of the date of compromise of each compromised Mortgage Loan or Construction Loan, and (iii) the amount of the compromised unpaid principal balance of each Mortgage Loan or Construction Loan. ABN consents to the Debtors filing the Report and, if requested, will support a request by the Debtors to the filing of the Report under seal.

28.     This Third Post-Petition Advances Stipulation is subject to approval by the Court.

29.     The Debtors reserve the right to withdraw consideration of the Third Post-Petition Advances Stipulation at any time and in their sole discretion.

30.     This Third Post-Petition Advances Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

31.     The Parties hereto represent and warrant to each other that, subject to entry of an order approving this Third Post-Petition Advances Stipulation, they are authorized to execute this Third Post-Petition Advances Stipulation, each has full power and authority to enter into and perform in accordance with the terms of this Third Post-Petition Advances Stipulation, and this Third Post-Petition Advances Stipulation is duly executed and delivered and constitutes a valid and binding agreement in accordance with its terms.

32.   This Third Post-Petition Advances Stipulation shall become effective immediately upon entry of an order approving the Third Post-Petition Advances Stipulation.

Dated: February 13, 2008
       Wilmington, Delaware

ABN AMRO BANK N.V.,
by its counsel,

MILBANK, TWEED, HADLEY &
McCLOY LLP
Gregory A. Bray
Robert Jay Moore
Fred Neufeld
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063
and

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
One Rodney Square,
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., AMERICAN HOME
MORTGAGE CORP., AMERICAN HOME
MORTGAGE INVESTMENT CORP.,
AMERICAN HOME MORTGAGE
SERVICING, INC., by their counsel,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

11

# EXHIBIT A

## 2008 Budget

**Exhibit A**
**American Home Mortgage**
CTP Group Budget per the Third Stipulation Between Certain Debtors and ABN AMRO Bank N.V.

| | Jan-08 | Feb-08 | Mar-08 | Apr-08 | May-08 | Jun-08 |
|---|---|---|---|---|---|---|
| **Projected Expenses** | | | | | | |
| Inspections | $  9,700 | $  5,700 | $  6,500 | $  6,300 | $  5,100 | $  2,400 |
| Title Updates | 6,305 | 3,705 | 4,225 | 4,095 | 3,315 | 1,560 |
| Data Processing | 600 | 600 | 600 | 600 | 600 | 600 |
| Overnight & Postage | 150 | 150 | 100 | 100 | 75 | 50 |
| Facilities | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | |
| Salaries | 76,918 | 70,125 | 63,333 | 63,333 | 63,333 | 63,333 |
| EIP Bonus[1] | 0 | 77,350 | 40,600 | 75,000 | 67,000 | 45,000 |
| Benefits | 6,000 | 6,000 | 5,000 | 5,000 | 5,000 | 4,500 |
| Misc | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Total Expenses | $104,673 | $168,630 | $125,358 | $159,428 | $149,423 | $122,443 |

1) Subject to confirmation of targets being obtained and funding has occurred by AHM.