UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | : |
|  | : Chapter 11 |
| AMERICAN HOME MORTGAGE | : |
| HOLDINGS, INC., a Delaware corporation | : |
| *et al.,* [1] | : |
|  | : Case Number 07-11047 (CSS) |
| Debtors. | : (Jointly Administered) |
|  | : |

**BRIEF OF THE UNITED STATES TRUSTEE IN RESPONSE TO THE
FIRST AND SECOND QUARTERLY FEE APPLICATIONS OF
NORTHWEST TRUSTEE SERVICES, INC.
<u>(RELATED TO DOCKET ENTRY #s 2403, 3324)</u>**

Joseph J. McMahon, Jr., Esquire (#4819)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE  19801
(302) 573-6491
(302) 573-6497 (Fax)

Attorney for Roberta A. DeAngelis,
Acting United States Trustee

Date:  May 21, 2008

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: AHM Holdings, Inc.; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc.), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York  11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.      NWT Is Seeking Reimbursement of a Pre-Petition Claim . . . . . . . . . . . . . . . . . . 1

            1.      The Term "Claim" Is Broadly Defined to Include
                   All Rights to Payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            2.      NWT Had a "Claim" for its Unreimbursed,
                   Pre-Petition Foreclosure Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            3.      NWT's Claim Arose Prior to the Debtors'
                   Bankruptcy Filings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.      The Doctrine of Judicial Estoppel Bars the Relief Sought
           by NWT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      C.      Equitable Relief Is Unavailable to NWT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# **TABLE OF AUTHORITIES**

**Cases**

    **A.**    **Supreme Court**

Connecticut National Bank v. Germain, 503 U.S. 249 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Johnson v. Home State Bank, 501 U.S. 78 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Perrin v. United States, 444 U.S. 37 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **B.**    **Circuit Court**

Air Line Pilots Association v. Continental Airlines (In re Continental Airlines),
  125 F.3d 120, 132 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.),
  268 F.3d 205 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Chao v. Roy's Construction, Inc., 517 F.3d 180 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Combustion Engineering, Inc.,
  391 F.3d 190 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Cybermech, Inc., 13 F.3d 818 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Energy Co-op, Inc., 832 F.2d 997 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Futoran, 76 F.3d 265 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.,
  337 F.3d 314 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 , 8, 9

Montrose Medical Group Participating Savings Plan v. Bulger,
  243 F.3d 773 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Oneida Motor Freight v. United Jersey Bank,
  848 F.2d 414 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.),
  180 F.3d 504 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

United States Trustee v. Price Waterhouse,
  19 F.3d 138 (3d Cir. 1994) ................................................................ 10

West Virginia State Department of Tax & Revenue v. Internal Revenue Service (In re Columbia Gas
Transmission Corp.),
  37 F.3d 982 (3d Cir. 1994) ................................................................ 5

    **C.    Bankruptcy Court**

In re Argose, Inc., 372 B.R. 705 (Bankr. D. Del. 2007) ................................. 10

In re R.H. Macy & Co., Inc.,
  152 B.R. 869 (Bankr. S.D.N.Y.), rev'd, 157 B.R. 548 (S.D.N.Y. 1993) ................... 4

**Statutes**

11 U.S.C. § 101(5) ...................................................................... 1

11 U.S.C. § 101(14) .................................................................... 10

11 U.S.C. § 105 ........................................................................ 10

11 U.S.C. § 327 ........................................................................ 10

11 U.S.C. § 507 ........................................................................ 3

11 U.S.C. § 1129 ....................................................................... 3

**Other**

1978 U.S. Code Cong. & Admin. News 5787 ................................................ 1

Webster's New World Dictionary, 3d College Ed. at 478 (Simon & Schuster 1988) .......... 2

**ARGUMENT**

A.)    NWT IS SEEKING REIMBURSEMENT OF A PRE-PETITION CLAIM[1]

    1.    The Term "Claim" Is Broadly Defined to Include All Rights to Payment.

As defined in the Bankruptcy Code, the term "claim" includes costs related to the prosecution of a foreclosure matter which were incurred pre-petition:

> The term "claim" means --
>
> (A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). In drafting section 101(5) of the Code, Congress "intended . . . to adopt the broadest available definition of 'claim.'" Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (citations omitted); see United States Trustee v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.), 180 F.3d 504, 509 (3d Cir. 1999) ("[u]nder th[e] broad definition of claim [in section 105(a) of the Code], 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'") (quoting Senate Report at 22, 1978 U.S. Code Cong. & Admin.

---

[1] Northwest Trustee Services, Inc. ("NWT") has not sought relief from the September 12, 2007 order authorizing the firm's employment in these cases (NWT Ex. 4), which contained a provision under which NWT was deemed to have waived "any and all prepetition amounts owed to them by the Debtors." If this Court determines that NWT is seeking repayment of a pre-petition claim, in addition to the issues discussed in this brief, one or more additional doctrines or issues (i.e., NWT's failure to formally seek relief under Federal Rule of Bankruptcy Procedure 9024, res judicata (encompassing both issue preclusion and claim preclusion) and/or law of the case) would also prevent this Court from granting NWT the relief requested. This brief focuses on the central issue of whether NWT's accrued, unpaid expenses that were not invoiced as of the date the above-captioned cases were commenced constitute a pre-petition "claim" under section 101(5) of the Bankruptcy Code and, if so, whether this Court may direct payment of that claim.

News 5787, 5808). The term "claim" is "construed broadly to permit debtors to meet all of their legal obligations in bankruptcy and to enable holders of claims to participate in bankruptcy proceedings." Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines), 125 F.3d 120, 132 (3d Cir. 1997) (citations omitted).

> 2. NWT Had a "Claim" for its Unreimbursed, Pre-Petition Foreclosure Costs.

As set forth in its opening brief, Northwest Trustee Services, Inc. ("NWT") contends that "expenses" which are reimbursable under section 330 are not "claims" and, by extension, NWT is not seeking payment of a pre-petition "claim." Contrary to NWT's postulation, the definitions of the terms "claim" in section 101(5) of the Bankruptcy Code and "expenses" in section 330 are not mutually exclusive. The term "expense" is not defined in the Bankruptcy Code. In construing the Code, this Court must follow the "fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." See, e.g., Perrin v. United States, 444 U.S. 37, 42 (1979). If the common, everyday meaning of the language used in a statute is not ambiguous, courts may not search for alternative readings or otherwise attempt to divine Congress' intent, as "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).

NWT's main contention – that it has an "expense" which the Debtors' estates are obligated to reimburse, but that it does not have a "claim" (a "right to payment") from the Debtors – is counterintuitive. The plural of "expense" is commonly defined as "(a) charges or costs met with in running a business, doing one's work, maintaining property, etc. (b) money to pay for these charges." Webster's New World Dictionary, 3d College Ed. at 478 (Simon & Schuster 1988). If

NWT has the right to collect an "expense" under a contract, putting aside the question of whether the "claim" arose pre-petition or post-petition, NWT must have a "claim;" the firm has the right to pursue reimbursement of the "expense" at issue. The entire premise of professional reimbursement under sections 330 and 331 of the Bankruptcy Code is that a professional, properly employed, has a right to recoup the reasonable expenses (i.e., airfare or a lodging charge) it has incurred related to the engagement from the debtor's estate.

Consistent with the plain meaning of the term "expense," Congress used the terms "expense" and "claim" interchangeably in crafting the Bankruptcy Code. For example, section 1129(a)(9)(A) of the Code requires plan proponents to demonstrate that administrative claims will be cashed out on the effective date of the plan or otherwise resolved on terms acceptable to the holder of the claim. Section 1129(a)(9)(A) refers to "a claim of a kind specified in section 507(a)(2) . . . ," 11 U.S.C. § 1129(a)(9)(A), while section 507(a)(2) refers to "administrative expenses allowed under section 503(b) of this title . . . ." 11 U.S.C. § 507(a)(2). Accepting NWT's argument that an "expense" is not a "claim" is tantamount to construing section 1129(a)(9)(A) as excluding administrative expenses allowed under section 503(b). In sum, drawing a distinction between "claims" and "expenses" in the Code does not make sense.

       3.     <u>NWT's Claim Arose Prior to the Debtors' Bankruptcy Filings.</u>

At all times prior to the Debtors' bankruptcy filings, NWT had a contingent or unmatured right to payment of its pre-petition foreclosure costs that were incurred but not invoiced. The record developed at the hearing by NWT unequivocally established that the firm had an oral contract with the Debtors, the terms of which were described by NWT's representative as follows: upon issuing an invoice to the Debtors at the conclusion of a foreclosure, NWT would get paid for its foreclosure-

related costs. Tr. 4/14/08 166:9 - 19. The fact that NWT had not invoiced the Debtors does not mean that NWT did not have a right to payment. Rather, NWT's right to be reimbursed for its foreclosure costs was either contingent or unmatured because invoices had not been issued and/or other events (i.e., the completion of the foreclosure) had not occurred. In sum, NWT had a contingent or unmatured right to payment, and that right is a pre-petition "claim" under section 101(5)(A) of the Bankruptcy Code.

The authority cited by NWT is not helpful in addressing the issue of whether it had a pre-petition "claim" for foreclosure costs that were incurred but not invoiced. NWT cites two cases where courts distinguished the respective meanings of the terms "obligations" and "claims" in the Bankruptcy Code. NWT cites the cases in support of its argument that, because the terms "expenses" and "claims" have different meanings, this Court should not look to case law construing section 101(5)(A) to determine when NWT's "expense" arose. NWT Br. at 11 (citing Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205 (3d Cir. 2001); In re R.H. Macy & Co., Inc., 152 B.R. 869 (Bankr. S.D.N.Y.), rev'd, 157 B.R. 548 (S.D.N.Y. 1993)). First, as noted above, Congress employed the terms "expenses" and "claims" interchangeably in the Code, and NWT certainly has "claims" against the Debtors; the distinction that NWT is attempting to draw is premised upon an untenable construction of the Code. Second, in Montgomery Ward, the United States Court of Appeals for the Third Circuit distinguished the question of when the tax liability at issue arose (that is, when the taxing authority had a claim against the landlord) from the issue before the court – what responsibility, if any, the trustee/lessor had to pay the tax liability under section 365(d)(3). Montgomery Ward, 268 F.3d at 209 ("Including unmatured rights to payment provides no analytical foundation for prorating the obligation to

4

reimburse the landlord for taxes based on the date of the order and whether the landlord's obligation to pay those taxes accrued before or after the order was entered, an obligation that clearly does not arise under the lease."). Thus, Montgomery Ward provides no guidance regarding the question before this Court.[2] Third, in West Virginia State Department of Tax & Revenue v. Internal Revenue Service (In re Columbia Gas Transmission Corp.), 37 F.3d 982, 985-86 (3d Cir. 1994), the Third Circuit rejected the principle adopted by the appellate court in R.H. Macy – namely, that a tax liability accrues when it is assessed – and concluded that the property tax liability at issue was "'incurred on the date it accrues, not on the date of the assessment or the date on which it is payable.'" Id. at 985 (citations omitted).

Indeed, consistent with the holding of Columbia Gas, the Third Circuit has concluded that a claim generally arises when the events giving rise to the "right to payment" occur. In United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.), 180 F.3d 504, 510-11 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit considered the question of when a debtor's obligation to pay for legal services arose. The Third Circuit concluded, consistent with the rulings of three of its sister circuits (the Fourth, Seventh, and Ninth Circuits), that the obligation generally arises "when the debtor obtains the goods or services," not when the bill is presented to the client, "even if the claim is not fixed, liquidated or matured." Id. (citing In re Futoran, 76 F.3d 265, 267 (9th Cir. 1996); In re Cybermech, Inc., 13 F.3d 818, 821 (4th Cir. 1994); In re Energy Co-op, Inc., 832 F.2d 997, 1001 (7th Cir. 1987)). The Third Circuit noted that the policies underlying the preference section of the Bankruptcy Code "cry out for the conclusion that

---

[2] Like Montgomery Ward, R.H. Macy is inapposite authority here; R.H. Macy addressed the meaning of the term "obligations" in section 365(d)(3) of the Code and whether it could be equated with the term "claim."

a debt arises when legal services are provided, not when a law firm issues an invoice;" the preference section of the Code "discourages creditors from racing to the courthouse to dismember the debtor during its slide into bankruptcy, and it furthers the policy of equal distribution among similarly situated creditors." Id. at 511 (citations omitted).

   B.)  THE DOCTRINE OF JUDICIAL ESTOPPEL BARS THE RELIEF SOUGHT BY NWT

In seeking to be employed by the Debtors during the above-captioned cases, NWT made sworn statements under penalty of perjury indicating that it was a "disinterested person" and that it was not a "creditor." Further, NWT represented that the Debtors owed the firm for "unpaid services rendered and expenses advanced on behalf of the Debtors prepetition." NWT Ex. 2, Hendricks 2014 Stmt. ¶ 4. Later, NWT indicated that it (a) waived that pre-petition claim in connection with the firm's employment and (b) was not a "creditor." NWT Ex. 3 (Hendricks Suppl. Aff.) ¶¶ 10, 12. Now, NWT wants to assert and receive payment for the same claim that it previously indicated was waived; NWT seeks to back away from its prior statements and to seek reimbursement for a pre-petition claim that the firm was required to waive as a condition of its post-petition employment. The doctrine of judicial estoppel bars NWT from doing so.

In the Third Circuit, judicial estoppel "has three threshold requirements: first, the party in question must have adopted irreconcilably inconsistent positions; second, the party must have adopted these positions in 'bad faith;' and third, there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient." Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 (3d Cir. 2008) (citations omitted).

Here, the remedy of judicial estoppel is warranted. First, NWT has adopted irreconcilably inconsistent positions. In connection with the Debtors' application to employ NWT, NWT

6

represented that it was not a "creditor" – in other words, the firm did not hold any pre-petition claims. NWT is presently seeking repayment of pre-petition claims from the Debtors. NWT's position at the time this Court considered the employment application and its present position are irreconcilably inconsistent.

Second, NWT has adopted its position in "bad faith." "Bad faith" has been defined by the Third Circuit as "with intent to play fast and loose with the court." Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001). "[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 321 (3d Cir. 2003) (citing Oneida Motor Freight v. United Jersey Bank, 848 F.2d 414, 416-18 (3d Cir. 1988)).[3] NWT was obligated to make full and complete disclosure of its connections with the Debtors under Federal Rule of Bankruptcy Procedure 2014(a). In its sworn Rule 2014(a) statements, NWT affirmatively represented that it was waiving its pre-petition claims against the Debtors and that, as a result of that action, the firm was qualified to serve under section 327(a). Additionally, in those statements, NWT did not distinguish accrued, unpaid expenses that were invoiced from accrued, unpaid expenses that were not invoiced. NWT knew that it had accrued, unpaid expenses that were not invoiced, yet the firm elected not to disclose those expenses. Cf. Krystal Cadillac, 337 F.3d at 322 (noting that debtor-franchisee was aware of potential claims under franchise agreement at the time it filed its

---

[3] If the pleadings show (1) the fact of non-disclosure of the claim combined with (2) NWT's obvious knowledge of the existence of the claim, this Court need not take testimony in order to make a finding of bad faith. See Krystal Cadillac, 337 F.3d at 325 (3d Cir. 2003) (citing Oneida, 848 F.2d 414 (3d Cir. 1988)).

disclosure statement and plan).[4] Further, as is evident from NWT's present efforts, in preparing its Rule 2014(a) statements, NWT was motivated to conceal its accrued, unpaid expenses that were not invoiced in an effort to get paid. After NWT used its misleading Rule 2014(a) statements to induce this Court to approve the firm's employment, the firm marched into this Court and demanded payment in full of its asserted pre-petition claim. NWT seeks to have this Court declare the firm the beneficiary of its own failure to disclose and waive the pre-petition claim at issue prior to enjoying the benefits of its post-petition engagement by the Debtors. Accordingly, an inference of bad faith has arisen, and NWT has failed to rebut that inference. NWT's conduct is the precise type of sharp, self-serving behavior which judicial estoppel was designed to remedy.

Third, judicial estoppel is narrowly tailored to address the harm to the process. If this Court were to find that NWT is judicially estopped from asserting its pre-petition claim, that finding would put the parties in the position that they were in (or, alternatively, the position that they should have been in but for NWT's non-disclosure) at the time the Debtors' application to employ NWT was approved. A different remedy (i.e., requiring that NWT waive its pre-petition claim now) would be inadequate. First, requiring NWT to waive its pre-petition claim now would send a message to

---

[4]

The Third Circuit's observations in <u>Krystal Cadillac</u> regarding the inadequacy of the debtor's disclosure of its non-bankruptcy claims against General Motors is equally applicable to NWT's Rule 2014(a) statements:

> As the Bankruptcy Court properly noted, the language in the Amended Disclosure Statement was "little more than boilerplate." It did not specify any of the claims contained in the instant complaint against GM, much less attempt to put any monetary value on them. We agree that such boilerplate language is simply not adequate to provide the level of notice required. The bankruptcy rules were clearly not intended to encourage this kind of inadequate and misleading disclosure by creating an escape hatch debtors can duck into to avoid sanctions for omitting claims once their lack of candor is discovered.

<u>Krystal Cadillac</u>, 337 F.3d at 321.

bankruptcy professionals that, notwithstanding the clear dictates of the Code, they should seek full payment of their pre-petition claims because there is no penalty for doing so. See Krystal Cadillac, 337 F.3d at 325. Second, in order to serve as a professional under section 327(a) of the Bankruptcy Code, NWT was required to relinquish any and all pre-petition claims at the inception of its employment; professionals under section 327(a) must be "disinterested person[s]," and "disinterested person[s]" are not creditor[s]." Application of the doctrine of judicial estoppel is necessary to protect the integrity of the earlier proceedings regarding NWT's employment in these cases. See id. at 325 (citing Oneida, 848 F.2d at 418).

C.) EQUITABLE RELIEF IS UNAVAILABLE TO NWT

In the event that this Court finds that the costs at issue are part of a pre-petition claim, NWT asks this Court to issue an order directing the Debtors to pay the pre-petition claim in full. There is no basis for awarding NWT such relief in equity. If NWT had properly disclosed the fact that it was holding a pre-petition claim for accrued, unpaid expenses that were not invoiced at the time this Court considered NWT's employment application, NWT would have had to choose between (i) waiving the entire amount of its pre-petition costs that had not been invoiced as a condition of being employed by the Debtors' estates and (ii) asserting a general unsecured claim for those costs, foregoing post-petition employment, and waiting until the conclusion of the cases to get paid. Under no circumstances would the firm's pre-petition costs have been paid in full. NWT cannot invoke equity to place itself in a position better than established law would allow.

Section 105(a) of the Bankruptcy Code, the source of this Court's equitable power, provides that

> [t]he court may use any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). "The equitable powers authorized by § 105(a) are not without limitation, and courts have cautioned that this section does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." In re Combustion Eng'g, Inc., 391 F.3d 190, 236 (3d Cir. 2004). Equitable remedies "should be used only to further the substantive provisions of the Code." In re Argose, Inc., 372 B.R. 705, 708 (Bankr. D. Del. 2007) (Walrath, C.J.); see United States Trustee v. Price Waterhouse, 19 F.3d 138, 142 (3d Cir. 1994) ("If it is thought that Section 327(a) should allow trustees and debtors in possession under some circumstances to employ professionals who are not 'disinterested,' an amendment of that provision should be sought from Congress.").

Section 327(a) requires that professional persons employed under that subsection of the Bankruptcy Code be "disinterested person[s]." 11 U.S.C. § 327(a). "Disinterested person[s]" are persons who are not "creditor[s]." 11 U.S.C. § 101(14)(A). Consistent with the foregoing authority, even if one accepts NWT's contention that it has an outstanding pre-petition claim that it did not waive, this Court is powerless to direct the Debtors to pay the claim, as NWT was obligated to waive the claim as a condition of its employment under section 327(a). NWT's applications should be denied with prejudice to the extent that they seek reimbursement for accrued, unpaid expenses that were not invoiced as of the date the above-captioned cases were commenced.

## CONCLUSION

WHEREFORE the United States Trustee requests that this Court issue an order denying NWT's applications with prejudice to the extent that they seek reimbursement for accrued, unpaid expenses that were not invoiced as of the date the above-captioned cases were commenced.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**ACTING UNITED STATES TRUSTEE**

BY: /s/ Joseph J. McMahon, Jr.
    Joseph J. McMahon, Jr., Esquire (#4819)
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE  19801
    (302) 573-6491
    (302) 573-6497 (Fax)

Date:  May 21, 2008