# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------------x
                                          :
In re:                                    :  Chapter 11
                                          :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC., et al.,  :
                                          :  (Jointly Administered)
                        Debtors.          :
-------------------------------------------------------------------------x
```

## JOINT ANSWERING BRIEF REGARDING FIRST AND SECOND QUARTERLY APPLICATIONS OF NORTHWEST TRUSTEE SERVICES, INC. FOR AWARD OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Matthew B. Lunn (No. 4119)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

BLANK ROME LLP
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff, Jr. (No. 3715)
1201 Market Street
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

HAHN & HESSEN LLP
Mark T. Power
Emmet Keary
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel to Debtors and Debtors in Possession*

*Counsel to the Official Committee of Unsecured Creditors*

Dated: May 21, 2008

DB02:6803738.9

066585.1001

# TABLE OF CONTENTS

TABLE OF CITATIONS .................................................................................. ii

STATEMENT OF NATURE AND STAGE OF PROCEEDING ...................................... 1

SUMMARY OF ARGUMENT ................................................................................ 2

STATEMENT OF FACTS ................................................................................... 4

ARGUMENT .................................................................................................. 10

      I.       **The Disputed Expenses Constitute
Prepetition Claims Against the Debtors** ............................................... 10

      II.     **The Bankruptcy Code Unambiguously
Forbids Retention of a Prepetition Creditor** ......................................... 16

      III.    **Northwest Cannot Be Compensated or
Reimbursed for Expenses Unless
Retained As a Disinterested Professional** .............................................. 18

      IV.    **The Circumstances of the Case Necessitate Waiver
of the Disputed Expenses or Disgorgement of
All Administrative Expenses Paid to Northwest** .................................... 22

CONCLUSION ................................................................................................ 25

DB02:6803738.9                                                                    066585.1001

# TABLE OF CITATIONS

**Page No.**

## Cases

Childress v. Middletown Arms, L.P. (In re Middletown Arms, L.P.),
934 F.3d 723 (6th Cir. 1991) ........................................................... 22

F/S Airlease II v. Simon,
844 F.2d 99 (3d Cir. 1988) ........................................................ 23, 24

In re Busy Beaver Building Centers, Inc.,
19 F.3d 833 (3d Cir. 1994) ........................................................ 18, 19

In re Eagle-Picher Indus., Inc.,
999 F.2d 969 (6th Cir. 1993) ........................................................... 16

In re Florence Tanners, Inc.,
209 B.R. 439 (Bankr. E.D. Mich. 1997) ........................................ 11

In re Fulgham Enterprises, Inc.,
181 B.R. 139 (Bankr. N.D. Ala. 1995) .......................................... 10

In re Investment Bankers, Inc.,
136 B.R. 1008 (D. Colo. 1989),
aff'd, 4 F.3d 1556 (10th Cir. 1993) .............................................. 11

In re Jartan, Inc.,
732 F.2d 584 (7th Cir. 1984) ..................................................... 15, 16

In re Pierce,
809 F.2d 1256 (8th Cir. 1987) ........................................................ 16

In re Valley Media, Inc.,
279 B.R. 105 (Bankr. D. Del. 2002) .............................................. 14

Lebron v. Mechem Financial Inc. (In re Lebron),
27 F.3d 937 (3d Cir. 1994 ............................................................... 21

Patterson v. Shumate,
504 U.S. 753 (1992) ........................................................................ 22

Pennsylvania Dept't of Pub. Welfare v. Davenport,
495 U.S. 552 (1990) ........................................................................ 11

DB02:6803738.9                                                                066585.1001

United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.),
 180 F.3d 504 (3d Cir. 1999) .................................................................................. 11

United States Trustee v. Price Waterhouse,
 19 F.3d 138 (3d Cir. 1994) ............................................................................. 16, 22

**Statutes**

11 U.S.C. § 101(10)(A)....................................................................................... 16

11 U.S.C. § 101(14) ............................................................................... 8, 10, 16

11 U.S.C. § 101(5) .............................................................................................. 11

11 U.S.C. § 105(a) ............................................................................................. 22

11 U.S.C. § 301 .................................................................................................. 16

11 U.S.C. § 327.......................................................................................... passim

11 U.S.C. § 328 .................................................................................................. 18

11 U.S.C. § 329................................................................................................ 6, 18

11 U.S.C. § 330.......................................................................................... passim

11 U.S.C. § 503 ...................................................................................... 19, 20, 21

11 U.S.C. § 507 .................................................................................................. 21

11 U.S.C. § 507(a) ...................................................................................... 20, 21

11 U.S.C. § 507(a)(1)-(10).................................................................................. 20

Cal. Civ. Code § 2924c (2007) .......................................................................... 13

Idaho Code Ann. § 45-1506(12) (2007) ............................................................ 13

Nev. Rev. Stat. § 107.080 (2007) ...................................................................... 13

Or. Rev. Stat. § 86.753 (2007) .......................................................................... 13

Wash. Rev. Code Ann. § 61.24.090.................................................................. 13

**Legislative History**

1978 U.S. Code Cong. & Admin. News 5787 .................................................... 11

DB02:6803738.9                                                                           066585.1001

## STATEMENT OF NATURE AND STAGE OF PROCEEDING

On August 6, 2007 (the "Petition Date"), each of the above captioned debtors and debtors in possession (collectively, the "Debtors") filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

On September 12, 2007, this Court entered the Order Pursuant to Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for the Debtors *Nunc Pro Tunc* to the Petition Date [D.I. 713] (the "Retention Order").

Northwest Trustee Services, Inc. ("Northwest") filed various monthly fee applications (collectively, the "Monthly Fee Applications"), and two quarterly fee applications [D.I. 2403 & 3324] (collectively, the "Quarterly Fee Applications"). The Debtors filed limited objections to the Monthly Fee Applications and Quarterly Fee Applications, and the Committee joined in those limited objections. [D.I. 2605, 2617, 2646, 2745, 2746, 3544] (collectively, the "Limited Objections").

A hearing on the Quarterly Fee Applications and the Limited Objections was held on April 14, 2008 (the "Fee Hearing"). At the conclusion of the Fee Hearing, the Court requested post-hearing briefing.

## SUMMARY OF ARGUMENT

As of the Petition Date, Northwest had several outstanding invoices and was prosecuting numerous foreclosure matters on behalf of the Debtors. The current dispute involves vendor expenses for services performed and incurred prior to the Petition Date, but the invoices for which were not presented for payment until after the Petition Date.

Because "claim" is broadly defined under the Bankruptcy Code to include all legal obligations of the debtor, no matter how remote or contingent, Northwest had a prepetition claim for reimbursement of the Disputed Expenses. Northwest's arguments that the Disputed Expenses do not constitute a claim ignore the unambiguous statutory authority and binding case law that claims arise at the time when services are performed (and the Debtors receive the benefit of such services), not when the services are billed.

The fact that the Disputed Expenses constitute prepetition claims is supported not only by the Bankruptcy Code and relevant case law, but also by Northwest's own Invoices, which indicate prepetition dates as the dates in which the Debtors incurred the expenses, and the testimony provided by Northwest's sole fact witness, who confirmed that the services giving rise to those expenses and benefits conferred upon the debtor were completed prepetition. In sum, Northwest's claim for reimbursement of the Disputed Expenses constitutes a prepetition claim.

Northwest's novel attempt to distinguish an "expense" under section 330(a)(1)(B) of the Bankruptcy Code as being different from a "claim" simply misinterprets the provisions of the Bankruptcy Code. Northwest has failed to point to a single decision which has held that a professional retained under section 327(a) of the Bankruptcy Code has the right under section 330(a)(1)(B) of the Bankruptcy Code to be reimbursed for expenses it incurred prepetition on a debtor's behalf. This is because the Bankruptcy Code and binding Third Circuit precedent

2

requires a professional retained under section 327(a) of the Bankruptcy Code to be "disinterested" and, for Northwest to be "disinterested," it was required to waive any prepetition claim it may have had against the Debtors.

It is for this reason that the order approving Northwest's retention specifically provided that Northwest was "deemed to have waived any and all prepetition amounts owed to them by the Debtors." That order is now final and Northwest's attempt to escape the import of its own retention order should be rejected by this Court.

Lastly, Northwest's final argument that its application should be granted based on equitable principles must also fail. Bankruptcy courts cannot use equitable principles to disregard unambiguous statutory language. Moreover, it has not been shown that the Debtors, as opposed to the owners of the foreclosed loans, received any windfall or even benefited from the Disputed Expenses incurred by Northwest. While it is unfortunate that Northwest finds itself in this position, Northwest has failed to demonstrate why it should be treated any differently than the thousands of other general unsecured creditors with unpaid claims against the Debtors. For these reasons, the Debtors and the Committee submit that Northwest's application should be denied.

DB02:6803738.9    066585.1001

## STATEMENT OF FACTS

AHM Servicing operated the Debtors' business of servicing mortgage loans. In the ordinary course of the servicing business, AHM Servicing was involved in hundreds of foreclosure-related proceedings throughout the United States. AHM Servicing employed numerous professionals, including, but not limited to, attorneys, trustee services and real estate brokers to prosecute the foreclosures and to perform related services. See D.I. 2899.

Prior to the Petition Date, the law firms and other professionals prosecuting foreclosure actions on behalf of AHM Servicing (collectively, the "Foreclosure Professionals") submitted invoices after the occurrence of critical events in the foreclosure process which may include, but are not limited to, the filing of a foreclosure complaint, the completion of a foreclosure action, the reinstatement of a mortgage or a borrower's bankruptcy filing (each a "Critical Event"). For many foreclosure actions, the closing of a foreclosure sale will constitute the only Critical Event, and the Foreclosure Professional will submit one invoice. However, there may be multiple Critical Events in a particular foreclosure matter depending on the billing practices of the Foreclosure Professional and, therefore, multiple invoices for a particular matter or the events that occur once a matter is referred to a Foreclosure Professional. Using either billing method, invoices submitted to AHM Servicing covered the fees earned and the expenses advanced by Foreclosure Professionals for the time period before and up to the occurrence of the Critical Event, which could span several months (this billing process being the "Industry Practice"). See D.I. 2899.

Northwest provides foreclosure services to AHM Servicing in California, Nevada, Washington, Oregon and Idaho and charges AHM Servicing a flat fee (each, a "Flat Fee" and collectively, the "Flat Fees"), depending on the state, the loan type and circumstances.

DB02:6803738.9                                                         066585.1001

Northwest employs third party vendors to handle (i) obtaining foreclosure title reports; (ii) various mailings required under applicable state law; (iii) recording costs; (iv) posting notices and process of service; and (v) publication of foreclosure notices. (Fee Hr'g Transcript 165:5-11, April 14, 2008., hereinafter referred to as "TR.")  The costs of the third party vendors (collectively, the "Foreclosure Expenses") are passed through directly to the Debtors, or, in the event of a reinstatement by the borrower, are calculated within the cure costs to a borrower. (Tr. 163:24-164:3; 181:12-182:4.)

Consistent with the Industry Practice, Northwest invoices AHM Servicing on a periodic basis (i.e., upon certain Critical Events) for services rendered up to such Critical Event. Typically, Northwest submitted invoices upon the "resolution" of a foreclosure matter.  (Tr. 162:10-12.)  Resolution of a foreclosure matter generally occurs "when the foreclosure actually occurs or there is a reinstatement by curing of all defaults or a payment or satisfaction of the mortgage loan." (Tr. 163:15-19.)

On August 16, 2007, the Debtors filed a motion [D.I. 192] for an order authorizing, subject to certain limitations, procedures (as modified, the "OCP Procedures") for the employment, compensation, and reimbursement of expenses of certain ordinary-course professionals ("OCPs"), including Foreclosure Professionals and real estate brokers marketing and selling real estate owned by the Debtors through foreclosures.  By Order dated September 7, 2007 [D.I. 643] (the "OCP Order"), the Court approved the OCP Procedures, as modified as a result of a consensual resolution among the Debtors and the Committee.

In accordance with the OCP Procedures, the Debtors sought the retention of Routh Crabtree Olsen, P.S. ("Routh Crabtree"), an affiliate of Northwest that represented and advised AHM Servicing as legal counsel for residential mortgage loan related matters.  See D.I.

892, ¶ 4. Mr. David E. Fennell ("Mr. Fennell"), as Senior Counsel of Routh Crabtree, executed

an Affidavit of Ordinary Course Professional in connection with Routh Crabtree's retention as an

OCP, which was filed with this Court on September 21, 2007 [D.I. 892] (the "Fennell

Affidavit"). Pursuant to the Fennell Affidavit, Routh Crabtree provides, among other services,

bankruptcy representation to the Debtors including relief from stay motions, objections to plans,

*proof of claim filing*, and adversary proceeding litigation. (Fennell Affidavit, Ex. A (emphasis

added).)

On August 17, 2007, because Northwest would consistently exceed the caps in the

OCP Order, the Debtors, in consultation with Northwest, filed the Application for Order

Pursuant to Section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the

Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for

the Debtors *Nunc Pro Tunc* to the Petition Date [D.I. 231] (the "Northwest Retention

Application"). In support of the Northwest Retention Application, the Debtors filed the

Affidavit of Todd Hendricks (the "Initial Affidavit") and Northwest's Statement Pursuant to

2014[1] of the Federal Rules of Bankruptcy Procedures and Section 329 of the Bankruptcy Code

(the "Rule 2016 Statement" and collectively with the Northwest Retention Application and

Initial Affidavit, the "Retention Pleadings"). Mr. Fennell, as the functional equivalent of a Chief

Operating Officer and in-house counsel (Tr. 161: 13-15), participated in the drafting of the

Retention Pleadings (Tr. 169:13-170:9).

Pursuant to the Initial Affidavit, Northwest "bills the Debtors on a periodic basis

after services are performed." (Initial Affidavit ¶ 7.) In the Rule 2016 Statement, Northwest

acknowledged that, in addition to compensation for services rendered, "the Debtors have also

---

[1] Due to an inadvertent error, the Rule 2016 Statement misidentified Bankruptcy Rule 2014 as the applicable
statutory predicate for the statement regarding compensation disclosures.

066585.1001

agreed to reimburse [Northwest] for its actual and necessary expenses incurred *in connection with these cases*." (Rule 2016 Statement ¶ 2 (emphasis added).)  Additionally, Northwest estimated that the Debtors owed Northwest "approximately $117,000 to $200,000 (estimated) for unpaid services *and expenses advanced* on behalf of the Debtors prepetition."[2] (Rule 2016 Statement ¶ 4 (emphasis added).)

Prior to the relevant objection deadline, the United States Trustee informally responded to the Northwest Retention Application and requested that the Debtors retain Northwest under section 327(a) of the Bankruptcy Code because Northwest did not meet the eligibility requirements for retention under section 327(e) of the Bankruptcy Code.  The United States Trustee also requested that Northwest supplement its Initial Affidavit regarding its "disinterestedness," as that term is defined by the Bankruptcy Code.

The Debtors advised Northwest that, to resolve the objection, Northwest needed to provide additional disclosures and waive its prepetition claim.  (Northwest Br. 5.) Accordingly, Northwest executed the Supplemental Affidavit of Todd Hendricks in Support of Application for Order Pursuant to Section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014 Approving the Retention and Employment of Northwest Trustee Services, Inc. as Foreclosure Professionals for the Debtors *Nunc Pro Tunc* to the Petition Date [D.I. 671] (the "Supplemental Affidavit").  Mr. Fennell participated in the drafting of the Supplemental Affidavit.  (Tr. 171:6-7.)

Pursuant to the Supplemental Affidavit, Northwest waived its prepetition claims against the Debtors, which were determined by Northwest to be $92,847.67.  (Supplemental Affidavit ¶ 10; see also Tr. 171:9-10 (testifying that Supplemental Affidavit contains a "claim

---

[2] Northwest reserved the right to update or modify the prepetition amounts owed for fees and expenses upon reconciling its records.

waiver."))  Accordingly, Northwest affirmed that it was "disinterested" within the meaning of 11

U.S.C. § 101(14). (Supplemental Affidavit ¶¶ 4, 12).  Pursuant to paragraph 12(a) of the

Supplemental Affidavit, Northwest expressly affirmed that it was not a creditor of the Debtors.

　　　　Prior to filing the Supplemental Affidavit, the Debtors confirmed that the

language contained therein, and the revised form of order, satisfied the concerns raised by the

United States Trustee.  See D.I. 672.  The Debtors filed the Supplemental Affidavit and

submitted a revised form of order under certification of counsel [D.I. 672] on September 10,

2007.

　　　　On September 12, 2007, this Court entered the Retention Order.  See D.I. 713.

The Retention Order provided, among other things, that (i) the Court found that Northwest was a

disinterested person as that term is defined in the Bankruptcy Code, (ii) the Debtors were

authorized to employ and retain Northwest pursuant to section 327(a) of the Bankruptcy Code,

and (iii) Northwest "shall be deemed to have waived any and all prepetition amounts owed to

them by the Debtors."  See Retention Order.

　　　　Northwest began submitting invoices to the Debtors for payment in early October

of 2007.  (Tr. 172:23-173:1.)  Upon review of such invoices and no later than the end of October

of 2007, Debtors' counsel advised Northwest that certain expenses constituted prepetition claims

that could not be paid.  (Tr. 173:8-21.)  Thereafter, Northwest retained its own counsel to, among

other things, pursue its fee applications. (Tr. 175:19-176:4.)

　　　　In November of 2007, Debtors' counsel drafted a letter, in consultation with the

Committee, establishing guidelines for all retained foreclosure professionals (the "Guidelines

Letter").  Northwest received a copy of the Guidelines Letter.  The Guidelines Letter provided

that the Debtors were "authorized to pay only those fees and expenses incurred after the Petition

8

Date," (Guidelines Letter ¶ 4) and that inadvertent payments were unauthorized and subject to disgorgement (Guidelines Letter ¶ 6).

On December 14, 2007, Northwest began filing various Monthly Fee Applications [D.I. 2391, 2392, 2394, 2551, 2877, 3169, 3170] and Quarterly Fee Applications [D.I. 2403 & 3324] through its own counsel.  Attached as Exhibit C to each Monthly Fee Application are the individual invoices (each an "Invoice" and collectively, the "Invoices") for each foreclosure matter closed during the applicable month.  The Invoices provide the date of the Invoice, as well as dates for the incurrence of the Flat Fee (identified as a "Trustee Fee") and the dates of the "expense event" relating to the Foreclosure Expenses incurred by Northwest.  (Tr. 187:14-24.)

Numerous "expense events" identified on the Invoices are dated prior to the Petition Date.  Accordingly, the Debtors filed Limited Objections contesting the reimbursement of any expenses identified on the face of the Invoices as having been incurred prior to the Petition Date (the "Disputed Expenses").  See D.I. 2605, 2617, 2646, 2745, 2746, 3544.  The Committee joined in the Limited Objections.

**ARGUMENT**

For a professional to be eligible for compensation or reimbursement of expenses under section 330 of the Bankruptcy Code, that professional's retention must be approved under section 327 of the Bankruptcy Code. Northwest was required to be retained under the 327(a) of the Bankruptcy Code. To be retained under section 327(a) of the Bankruptcy Code, a professional is required to be "disinterested" as defined by section 101(14) of the Bankruptcy Code. Accordingly, Northwest had two options: (i) waive its entire prepetition claim, including the Disputed Expenses, or (ii) not waive its entire prepetition claim and forego being retained by the Debtors. See, e.g., In re Fulgham Enterprises, Inc., 181 B.R. 139, 142 (Bankr. N.D. Ala. 1995) ("Unless [the proposed professional] waives his prepetition claim he may not be employed by the [d]ebtor.").

Northwest affirmatively chose, based on its own business judgment, the first option: to be retained under section 327(a), and to waive its entire prepetition claim. (Tr. 171:21-24 ("[i]t wasn't clear how much of (sic) would be gained from a *proof of claim* in this bankruptcy and the prospect of getting future business was more important.") (emphasis added).); see also Retention Order. Given the clear and unambiguous language of the relevant statutes, as set forth below, Northwest does not now have the option of feigning ignorance regarding such waiver.[3]

I.     **The Disputed Expenses Constitute
       Prepetition Claims Against the Debtors**

The Disputed Expenses simply are prepetition claims. "Claim" is defined under the Bankruptcy Code as "[a] right to payment, whether or not such right is reduced to judgment,

---

[3] As discussed *infra*, despite Mr. Fennell's assertions that he did not understand the scope and implication of the waiver and that he is not a bankruptcy attorney, Mr. Fennell holds himself out as representing financial institutions in bankruptcy matters and his firm specifically handles filing proofs of claim for these entities.

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured or unsecured." 11 U.S.C. § 101(5). Both the legislative history and case law

dictate that "claim" should be construed as broadly as possible so that "all legal obligations of

the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy

case." Senate Report at 22, 1978 U.S. Code Cong. & Admin. News 5787, 5808; see, e.g.,

Pennsylvania Dept't of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990) (language of

definition shows "Congress' broad rather than restrictive view of the class of obligations that

qualify as a 'claim' giving rise to a 'debt.'"); United States Trustee v. First Jersey Securities, Inc.

(In re First Jersey Securities, Inc.), 180 F.3d 504, 510 (3d Cir. 1999) (citing legislative history to

confirm that claim includes all legal obligation, no matter how remote or contingent).

The Third Circuit has ruled that "[t]he right to payment generally arises when the

debtor obtains the goods or services." First Jersey Securities, 180 F.3d at 511. In First Jersey

Securities, the Third Circuit addressed when attorneys have a claim for legal services in the

context of determining whether an attorney had received a preferential transfer. The Third

Circuit agreed with other circuits and other courts when it held that "legal claims arise when the

legal services are performed, not when the bill itself is presented to the client." Id.; see also In re

Florence Tanners, Inc., 209 B.R. 439, 447 (Bankr. E.D. Mich. 1997); In re Investment Bankers,

Inc., 136 B.R. 1008, 1018 (D. Colo. 1989), aff'd, 4 F.3d 1556 (10th Cir. 1993). This analysis is

consistent with Northwest's description of its billing practices as set forth in its Initial Affidavit

[D.I. 231], which Mr. Fennell participated in drafting (Tr. 169:13-170:9):

> Northwest Trustee has not executed a postpetition Engagement Letter
> with the Debtors. Instead, Northwest Trustee bills the Debtors on a
> periodic basis after services are performed.

(Initial Affidavit ¶ 7.)

As of the Petition Date, Northwest had a claim for the reimbursement of the Disputed Expenses. Northwest's Invoices, on their face, indicate the dates in which the Debtors incurred the expenses. At the Fee Hearing, Northwest admitted that those dates appropriately identify the dates in which the services were either ordered or performed. (Tr. 191:25-192:8.) Accordingly, those dates reflect "[the] dates on which expense events occurred." (Tr. 187:14-24.) Indeed, Northwest, by way of example, testified that, at the time the publication was made, the vendor has done everything it needs to do in order to fulfill its obligations (Tr. 192:13-17) and that Northwest has only to wait until the foreclosure "completes" to invoice the Debtors  (Tr. 167:4-6 (admitting that Northwest has no control over how long the foreclosure takes)).

Northwest's sole witness essentially conceded that the Disputed Expenses were incurred on the date of "expense events" by testifying that (i) the Debtors are required to pay for those expenses even in the event Debtors were to replace Northwest prior to a resolution of a foreclosure matter (Tr. 193:17-24), and (ii) such expenses are calculated in the cure costs associated with reinstating a loan, which occurs prior to Northwest invoicing the Disputed Expenses (Tr. 181:12-182:4).  Accordingly, the Debtors were obligated to reimburse the Disputed Expenses as of the dates identified on the Invoices – each of which are indisputably prior to the Petition Date – and Northwest had a prepetition "claim" for the reimbursement of the Disputed Expenses.[4]

Moreover, the relevant statutes regarding reinstatements during non-judicial foreclosures further support that the Disputed Expenses were actually incurred on the date of the "expense event."  The statutes for each state in which Northwest performs foreclosure-related

---

[4] The Debtors assert that the factual record presented at trial is inconsistent with Northwest's assertion. Because the Debtors were obligated to pay upon the occurrence of the "expense events," Northwest had a fully matured right to payment. However, even assuming Northwest's allegations to be true, this argument fails to recognize the breadth of the term "claim," which includes both contingent and unmatured claims.

services for AHM Servicing provides that only costs and expenses "actually incurred" can be recouped by a borrower in the reinstatement process.  CAL. CIV. CODE § 2924c (2007) (reinstatement by borrower requires payments of "all reasonable costs and expenses, subject to subdivision (c), which are *actually incurred* in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees . . .); IDAHO CODE ANN. § 45-1506(12) (2007) (borrower or beneficiary of subordinate deed of trust may cure default by paying "the entire amount then due under the terms of the deed of trust and the obligation secured thereby (*including costs and expenses actually incurred* in enforcing the terms of such obligation and a reasonable trustee's fee . . . ) . . . ."); NEV. REV. STAT. § 107.080 (2007) (acceleration and foreclosure may be avoided if "deficiency in performance or payment is made good and any costs, fees and expenses incident to the preparation or recordation of the notice and incident to the making good of the deficiency in performance or payment are paid . . . ."); OR. REV. STAT. § 86.753 (2007) ("[I]n addition to paying the sums or tendering the performance necessary to cure the default, the person effecting the cure shall pay to the beneficiary all costs and expenses *actually incurred* in enforcing the obligation and trust deed, together with trustee's and attorney fees . . ."); WASH. REV. CODE ANN. § 61.24.090 (to cure defaults, borrower must pay expenses *actually incurred* by the trustee enforcing the terms of the note and deed of trust, including a reasonable trustee's fee, together with the trustee's reasonable attorney's fees, together with costs of recording the notice of discontinuance of notice of trustee's sale).

      Northwest admits that the Disputed Expenses were included in the calculations of the expenses "actually incurred" for those borrowers who reinstated their loans prior to the date of invoice to the Debtors.  (Tr. 181:12-182:4.)  If the Disputed Expenses were not included in the

cure amount, "cure is not effected and satisfaction of the loan such that you could justify releasing the lien would not be effective." (Tr. 181:17-21.)

Northwest erroneously argues that the Disputed Expenses do not constitute a prepetition claim merely because Northwest had not yet invoiced (and allegedly did not have a "right" to invoice under the Industry Practice) for the Disputed Expenses. (Northwest Br. 11-12.) In so doing, Northwest has confused the concept of when an obligation has been incurred, with when payment is due for such obligation. In this case, the undisputed evidence is that the vendor services giving rise to the Disputed Expenses were rendered and completed prepetition, thus the obligation to pay the vendor was incurred prepetition (see, e.g., Tr. 187:14-24, 192:13-17), even though payment may be due at a later date (Tr. 167:4-6).

It is well established that goods provided and services completed prepetition are not entitled to administrative expenses status solely because the obligation to pay for the same did not arise until postpetition. See, e.g., In re Valley Media, Inc., 279 B.R. 105, 141 (Bankr. D. Del. 2002) ("a debt is not entitled to administrative priority merely because the right to payment arises postpetition.").[5] In Valley Media, the court held that a vendor was not entitled to an administrative claim when the goods that it provided to a debtor on consignment prepetition were sold postpetition. Id. at 140-141. The Valley Media court reasoned that the vendors had completed their performance (delivery of the goods) prepetition and that the vendors right to payment (the sale of the goods) accrued postpetition could not elevate their claims to administrative expenses. Id. at 141.

---

[5] In some instances, Congress has granted administrative status to prepetition claims, but it has done so explicitly. See 11 U.S.C. § 503(b)(9). However, by Northwest's own admission, those provisions are not implicated. (See Northwest Br. 8 ("The Applications seek an award of reimbursement for actual and necessary expenses under section 330(a)(1)(B). The Applications do not seek allowance of a claim under section 503(b)(1), or any other section of the Bankruptcy Code.").)

14

In re Jartan, Inc. involves facts similar to the instant matter and is instructive. In re Jartan, Inc., 732 F.2d 584 (7th Cir. 1984).  In Jartan, the debtor, through its agent, contracted with Donnelly to obtain national advertising placement from publishers of the Yellow Pages™. The pertinent terms of the debtor's agreement with Donnelly were:  (i) Donnelly would arrange for the placement of the debtor's ads (the "Placement") with different publishers; (ii) at a time certain, but before publication of each add, the Placement would become irrevocable, and Donnelly would become solely liable to the individual publishers (the "Closing Date"); and (iii) Donnelly would issue the debtor an invoice after the advertisements themselves were published (the "Invoice Date") and the debtor and its agent were liable to Donnelly for payment.[6]  The relevant issue before the court was whether Donnelly was entitled to administrative expense status for the ads for which the Closing Date occurred prepetition (and for which Donnelly had fulfilled its obligation vis a vis the Placement) but for which the Publication occurred postpetition (i.e., for which Donnelly had not issued an invoice) (the "Gap Invoices").  The Seventh Circuit affirmed both the Bankruptcy Court and District Court and held that the services underlying the Gap Invoices were completed, and Donnelly's liability fixed, prepetition, and Donnelly's claim for the Gap Invoices was a prepetition general unsecured claim.  Id. at 587.

Applying Jartan to the instant facts, this Court must only replace Donnelly, Placement, Closing Date and Gap Invoices, with Northwest, Foreclosure Item, "expense events," and Disputed Expenses, to determine that the Disputed Expenses are prepetition claims.  By way of example, Northwest testified that it would place an order for publication prepetition with a third party vendor (with nothing further to do), Northwest would at some point in time pay that

---

[6] The facts of Jartan further echo the instant situation.  In reconciling Donnelly's claim the parties agreed that all services for which an Invoice Date had arose prepetition were prepetition claims and that all services for which the Closing Date (i.e., Donnelly's liability was fixed) occurred postpetition were administrative expenses. Jartan, 732 F.2d at 586 n.2.

vendor (which time is wholly irrelevant), and would bill the Debtors once the foreclosure that

was the subject of the publication concluded. This is the exact billing pattern that the court in

Jartan faced, and this Court should come to the same conclusion as the Jartan court: the

Disputed Expenses are prepetition claims regardless of when Northwest ultimately presented the

invoice to AHM Servicing.[7]

## II.    The Bankruptcy Code Unambiguously Forbids Retention of a Prepetition Creditor

A debtor in possession may employ professionals to represent or assist the debtor

in possession so long as such professionals "do not hold or represent an interest adverse to the

estate, and . . . are disinterested persons." 11 U.S.C. § 327(a). Under section 101(14) of the

Bankruptcy Code, a "disinterested person" must be a person who "is not a creditor." 11 U.S.C. §

101(14). The Third Circuit has held that "[t]hese provisions, taken together, *unambiguously*

*forbid* a debtor in possession from retaining a prepetition creditor to assist it in the execution of

its Title 11 duties." United States Trustee v. Price Waterhouse, 19 F.3d 138, 141 (3d Cir. 1994)

(emphasis added); see also In re Eagle-Picher Indus., Inc., 999 F.2d 969, 972 (6th Cir. 1993); In

re Pierce, 809 F.2d 1256, 1262-63 (8th Cir. 1987).

"Creditor" is defined under the Bankruptcy Code as "any entity that has a claim

against the debtor that arose at the time of or before the order for relief concerning the debtor,"

11 U.S.C. § 101(10)(A), and the commencement of a debtor's chapter 11 case constitutes an

order for relief. See 11 U.S.C. § 301. Following the plain language of the statutes, Northwest is

required to waive *all* prepetition claims to be disinterested. Accordingly, if Northwest does not

---

[7] The Debtors and the Committee agree with Northwest that the date in which the third party vendors invoiced
Northwest for the Disputed Expenses is irrelevant. (Northwest Br. 11.) As noted above, the relevant timeframe is
the date on which the expenses were actually incurred (i.e., the date on which the vendor performed and the Debtors
received the benefit underlying the expense).

agree to waive the Disputed Expenses, Northwest cannot be employed as a professional under section 327(a) of the Bankruptcy Code, and the Retention Order should be vacated.  Northwest would then not be entitled to any compensation for post-petition services rendered or reimbursement for post-petition expenses incurred under Bankruptcy Code § 330(a) .

The issue of whether Northwest made a "knowing" waiver is immaterial given the clear language of the Bankruptcy Code and the Retention Order.  The Debtors, the Committee and the Office of the United States Trustee all consented to the entry of the Retention Order based on the understanding that Northwest was waiving all prepetition amounts owed to it by the Debtors.

Moreover, Northwest's assertion that it did not understand the scope or implication of its waiver is not credible.  To support Northwest's contention that it did not knowingly waive its right to be reimbursed the Disputed Expenses, Mr. Fennell represented to this Court that (i) he was not a bankruptcy attorney (Tr. 161:9-10, 175:24-25), and (ii) based on his understanding, a proof of claim would need to be filed for only "invoices that were outstanding as of the date that the bankruptcy was filed" (Tr. 169:7-10).  Despite this testimony, Mr. Fennell later testified that he participated in the drafting of the Supplemental Affidavit, which he admits contains a "claim waiver" (Tr. 171:6-10; see also Northwest Br. 5) and that such waiver was based on Northwest's business decision that "[i]t wasn't clear how much of (sic) would be gained from a *proof of claim* in this bankruptcy. . ." (Tr. 171:21-24).  This Court must review Northwest's alleged ignorance in light of the following context.  In connection with the retention of Routh Crabtree, one of Northwest's affiliates, Mr. Fennell submitted the Fennell Affidavit [D.I. 892] (a copy of which is attached hereto as Exhibit A, the "RCO Affidavit") to this Court, in his capacity as senior counsel of Routh Crabtree Olson.  Routh Crabtree performs

17

the following bankruptcy services, among others, to the Debtors: relief from stay motions, objections to plan, *proof of claim filing*, and adversary proceeding litigation.  Fennell Affidavit, Ex. A.  In contrast to his in-court testimony that he is not a bankruptcy practitioner, Mr. Fennell holds himself out to the public to be an attorney who "represents financial institutions in foreclosure, *bankruptcy*, and litigated matters."  See Exhibit B, attached hereto.

**III.    Northwest Cannot Be Compensated or
Reimbursed for Expenses Unless
Retained As a Disinterested Professional**

Northwest argues that, because it requests reimbursement of the Disputed Expenses as actual and necessary expenses under section 330 of the Bankruptcy Code, the pre- or post-petition status of the Disputed Expenses is irrelevant.  The argument is fatally flawed because (i) Northwest erroneously presumes that its unsupported characterization of the Disputed Expenses as an "expense" is accurate, and (ii) Northwest ignores the fact that section 330 of the Bankruptcy Code presupposes retention under section 327.  Put simply, Northwest's argument puts the proverbial cart before the horse.

Section 330 of the Bankruptcy Code "focuses on who performs a service, and expressly provides that a court may award reasonable compensation for all actual, necessary services performed by the *designated eligible fee award recipient* (professionals and their paraprofessionals)."  In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 848 (3d Cir. 1994) (emphasis added).  Specifically, section 330 provides as follows:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, *or a professional person employed under section 327 or 1103* –

*** 

18

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(B)  (emphasis added).

In <u>Busy Beaver</u>, the Third Circuit was asked to determine whether specific paralegal services, billed by a disinterested law firm appropriately retained by the debtors under section 327(a) of the Bankruptcy Code, are compensable. <u>Id.</u> at 837.  In determining that paralegal services were compensable, the Third Circuit commented that "in drafting the statue to describe the covered services as 'actual' and 'necessary,' Congress chose not to add the further qualifier that these services also be 'professional' or 'non-clerical' in nature." <u>Id.</u> at 848. Although Northwest cites this passage to support its contention that section 330  does not expressly require expenses to be "postpetition" because Congress "chose not to add qualifiers such as 'rendered after the commencement of the case,' or 'attributable to any period of time occurring after the commencement of the case," (Northwest Br. 9-10), Northwest fails to read the sentence immediately following its citation:  "Instead, the statute provides that, *once having determined the service provider is an eligible recipient*, the amount of the compensation – its reasonableness – is to be 'based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title.'" <u>Id.</u> at 848 (emphasis added) (internal citations omitted).  Accordingly, the Third Circuit has recognized that the retention mandates of section 327 of the Bankruptcy Code – including the requirement that a professional be disinterested – must be followed before a bankruptcy court may award compensation or reimbursement.

The connection between sections 330 and 503(b) of the Bankruptcy Code likewise does not provide Northwest with any support.  Section 503(b)(2) of the Bankruptcy Code merely elevates a retained professional's compensation and reimbursement to

19

administrative expense status only if such compensation and reimbursement is "awarded" under section 330 of the Bankruptcy Code. 11 U.S.C. § 503(b)(2) . Because a professional cannot receive such compensation and reimbursement under section 330 of the Bankruptcy Code without complying with the retention mandates of section 327, no prepetition expenses would exist to elevate to administrative expense priority.

Moreover, to the extent that an expense sought to be reimbursed under section 330(a)(1)(B) of the Bankruptcy Code is an prepetition expense, it does not qualify as a "necessary" expense because the expense was not necessarily incurred for the benefit of the Debtors' estates – as opposed to AHM Servicing prepetition. As of the Petition Date, the value of the services giving rise to the Disputed Expenses had already been realized by AHM Servicing.

Further, Northwest's superficial argument that the word "expense" as used in sections 330(a)(1)(B) and 507(a) of the Bankruptcy Code must be distinguished from a "claim" under section 101(5) is misplaced. The use of the term "expense" in section 330(a)(1)(B) is merely intended to distinguish from the use of the term "compensation" in section 330(a)(1)(A) of the Bankruptcy Code. No where does that section indicate that a claim for an expense reimbursement that arose prepetition or even a claim for compensation for services render prepetition do not constitute a "claim" under section 101(5) of the Bankruptcy Code.

Similarly, Northwest's reference to the inclusion of both "expenses and claims" in section 507(a) of the Bankruptcy Code as support for its proposition that an "expense" must be different from a "claim" is off the mark. (Northwest Br. 9.) One need only review the types of "expenses" and "claims" referenced in section 507(a)(1)-(10) to determine that the intent of the Bankruptcy Code is to distinguish between a prepetition "claim" and a postpetition "expense".

DB02:6803738.9                                        066585.1001

The only reference to "expense" in section 507(a) is in subsection (1)(C) concerning the "administrative expenses" of the court-appointed or elected trustees and (a)(2) concerning "administrative expenses allowed under section 503(b) ." All other references are to "claims," which arose prepetition. By referencing both claims and expenses, the Bankruptcy Code is merely distinguishing when an obligation arose. Nothing contained in section 507 of the Bankruptcy Code indicates that a party that incurred prepetition an expense on behalf of a debtor cannot assert a claim against the debtor for reimbursement of that expense. If the obligation arose prepetition it constitutes a "claim" and if it arose postpetition, it constitutes an "expense." Here, as discussed *infra*, the obligations giving arise to the Disputed Expenses arose prepetition and thus, constitute a claim.

Additionally, Northwest's assertion that there is no *per se* rule against prepetition fees and expenses as an administrative expenses is supported only by inapposite citations for "substantial contribution" claims pursuant to section 503(b)(3) of the Bankruptcy Code. Northwest has expressly stated that it does not seek reimbursement under section 503(b)(3) (Northwest Br. 8), presumably because Northwest recognizes that it cannot seek such compensation and reimbursement as a professional and that it would not meet the high standard required to be found for substantial contribution. See Lebron v. Mechem Financial Inc. (In re Lebron), 27 F.3d 937, 943-44 (3d Cir. 1994 ("[S]ervices engaged by creditors . . . are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed to the reorganization.'").

Northwest simply cannot expect to be paid for the Disputed Expenses when waiver of such expenses is mandated to be a professional retained by the debtor in possession pursuant to section 327(a) of the Bankruptcy Code.

**IV.  The Circumstances of the Case Necessitate Waiver
of the Disputed Expenses or Disgorgement of
All Administrative Expenses Paid to Northwest**

In its last argument, Northwest requests that this Court use its equitable powers to

allow both retention of Northwest and payment of the Disputed Expenses.  However, when

statutory language is clear and unambiguous, it ordinarily must be followed.  Patterson v.

Shumate, 504 U.S. 753, 759 (1992); Price Waterhouse, 19 F.3d at 141.  Fundamentally,

"bankruptcy courts cannot use equitable principles to disregard unambiguous statutory

language."  Price Waterhouse, 19 F.3d at 142; see also Childress v. Middletown Arms, L.P. (In

re Middletown Arms, L.P.), 934 F.3d 723, 724 (6th Cir. 1991) (debtors cannot use section 105(a)

to circumvent the clear directive of section 327(a) because, although section 105(a) grants

bankruptcy courts equitable power, "whatever equitable powers remain in the bankruptcy courts

must and can only be exercised within the confines of the Bankruptcy Code").  With respect to

retention of professionals under the Bankruptcy Code, the Third Circuit has rejected the practical

or equitable approach, expressly stating that "[i]f it is thought that *Section 327(a)* should allow

trustees and debtors in possession under some circumstances to employ professionals who are

not 'disinterested,' an amendment of that provision should be sought from Congress."  Price

Waterhouse, 19 F.3d at 142.

Even if the Court was able to provide equitable relief, the facts and circumstances

of this matter do not warrant such relief.  First, Northwest's purported ignorance of the

Bankruptcy Code simply does not permit Northwest to rely solely upon the Debtors and their

counsel to enlighten Northwest with the appropriate knowledge of the Bankruptcy Code.[8]  F/S

---

[8] Northwest's purported reliance on the "Guidelines Letter" dated November 7, 2007 is misplaced.  The letter, as it
is referenced, was merely a guideline (not mandate) to assist the multitude of ordinary course professionals in
handling approval of their invoices.  Moreover, Northwest concedes that, by the end of October (and before the

Airlease II v. Simon, 844 F.2d 99, 107 (3d Cir. 1988) ("To the extent that the bankruptcy court held that Simon, as a non-attorney, 'cannot be held to be charged with the knowledge of this requirement,' it committed legal error."). Although the Debtors are the party responsible for applying for the retention of its professional, the requirement "cannot relieve the professional person who seeks appointment from responsibility to know that such approval is necessary and to insure that it has in fact been sought. Otherwise, the prior approval requirement of the Bankruptcy Code could be avoided for all non-attorney professional persons merely by citing the debtor's oversight, with the attendant difficulty of determining whether it was inadvertent or not." Id. This is particularly true for those who are, in fact, knowledgeable about bankruptcy law. See footnote 1, supra.

Second, Northwest concedes that the language in the Supplemental Affidavit constitutes a "claim waiver." (Tr. 171:9-10.) Even if the language was not a full "claim waiver," Northwest had essentially waived the Disputed Expenses when it said it was "disinterested."[9] (Supplemental Affidavit ¶ 12a.) Moreover, Northwest admits that it made the business determination to seek retention under section 327(a), and thus, to waive its entire claim.

(Tr. 171:21-24.) Importantly, since determining to proceed with its retention under section 327(a) and waive its claims, Northwest has earned nearly $800,000 in fees.[10]

Northwest has also alleged that it should somehow receive the payments under an unjust enrichment argument. This argument fails for several reasons. One, Northwest has not

---

issuance of the Guidelines Letter), the Debtors had already advised Northwest of the specific problem with the Disputed Expenses. (Tr. 173:6-21.)

[9] Even assuming that Northwest did not know what it was required to waive at the time of filing its Supplemental Affidavit and prior to the entry of the Retention Order, Northwest concedes that it was aware of the Retention Order after it was entered; yet did nothing to seek to correct the Retention Order if it believes it was entered in error. (Tr. 225:1-9.)

[10] Through its eighth monthly application [D.I. 3815], Northwest has requested an aggregate of $799,538.50 for compensation for fees. This amounts does not include any requests for reimbursement of any expenses, disputed or undisputed.

23

provided conclusive evidence that the Debtors' estates have benefitted from the failure to pay

Northwest for the Disputed Expenses. (Tr. 189:11-13.) As noted in the Debtors' Motion to for

an Order Modifying Existing Procedures for the Compensation and Reimbursement of Expenses

of Certain Foreclosure Professionals and Real Estate Brokers Utilized in the Ordinary Court and

Granting Limited *Nunc Pro Tunc* Relief [D.I. 2899], the Debtors are unable to recoup any

amounts unless such amounts have been actually advanced by the Debtors.  Once a property is

liquidated, such amounts will go to the ultimate investors of the underlying loan – not maintained

by the Debtors.  Second, the fact that the bankruptcy estate may be "unjustly enriched" should be

deemed an "unavoidable consequence of the statutory requirements."  <u>F/S Airlease II, Inc.</u>, 844

F.2d at 108 (where profession failed to comply timely with the requirements of 327(a), the Third

Circuit determined that the professional could not circumvent the statutory requirements by

seeking compensation for postpetition services through an unjust enrichment theory).  Moreover,

even if Northwest was successful in an unjust enrichment argument, any amounts owing under

such a cause of action would constitute a claim, which Northwest would still be required to

waive to remain "disinterested" under the Bankruptcy Code.

**CONCLUSION**

For the foregoing reasons, the Debtors and the Committee respectfully request that the

Court deny Northwest's application and grant such other and further relief that it deems just

and proper.


YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Margaret B. Whiteman*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Matthew B. Lunn (No. 4119)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253


*Counsel to Debtors and Debtors in Possession*

BLANK ROME LLP

*/s/ David W. Carickhoff, Jr.*
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff, Jr. (No. 3715)
1201 Market Street
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

HAHN & HESSEN LLP
Mark T. Power
Emmet Keary
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel to the Official Committee of
Unsecured Creditors*

DB02:6803738.9 066585.1001

**Exhibit A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                              :    Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                               :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]  :
                                                    :    Jointly Administered
                    Debtors.                         :
                                                    :    **Doc. Ref. Nos: 192 & 643**
                                                    :
---------------------------------------------------------------- x    Objection Deadline: October 11, 2007

## NOTICE OF FILING OF THE ORDINARY COURSE PROFESSIONAL ROUTH CRABTREE OLSEN, P.S.

PLEASE TAKE NOTICE that, on August 16, 2007, the above-captioned debtors and debtors in possession (the "Debtors") filed the Motion for an Order Pursuant to Sections 105(a), 327, 328 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014 Authorizing the Employment of Professionals Utilized in the Ordinary Course of the Debtors' Business Nunc Pro Tunc to Petition Date [Docket No. 192] (the "Motion").

PLEASE TAKE NOTICE that on September 4, 2007, the Court entered the Order Pursuant to Sections 105(a), 327, 328 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014 Authorizing the Employment of Professionals Utilized in the Ordinary Course of the Debtors' Business Nunc Pro Tunc to Petition Date [Docket No. 607] (the "Order").

PLEASE TAKE NOTICE that on September 5, 2007, the Debtors filed the Certificate of Counsel Regarding Order Pursuant to Sections 105(a), 327, 328 and 330 of the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Bankruptcy Code and Bankruptcy Rule 2014 Authorizing the Employment of Professionals

Utilized in the Ordinary Course of the Debtors' Business Nunc Pro Tunc to the Petition Date (the

"Revised Order") [Docket No. 618].

PLEASE TAKE NOTICE that on September 7, 2007, the Court entered the Order

Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code and Bankruptcy Rule

2014 Authorizing the Employment of Professionals Utilized in the Ordinary Course of the

Debtors' Business Nunc Pro Tunc to Petition Date (the "Revised Order") [Docket No. 643].

PLEASE TAKE NOTICE that, in accordance with the procedures set forth in the

Revised Order, the Debtors hereby file the ordinary course professional retention affidavit of

David E. Fennell of Routh Crabtree Olsen, P.S. (the "Retention Affidavit") which is attached

hereto as Exhibit A.

PLEASE TAKE NOTICE that, objections to the Retention Affidavit, if any, must

be filed on or before October 11, 2007 at 4:00 p.m. (ET) (the "Objection Deadline") with the

United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington,

Delaware 19801.

PLEASE TAKE NOTICE that, objections, if any, to the Retention Affidavit must

be made in accordance with the Revised Order and by the Objection Deadline, be served upon:

(i) the Office of the United States Trustee, (ii) Hahn & Hessen LLP, 488 Madison Avenue, New

York, NY 10022 and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801,

counsel for the Committee; (iii) counsel to Bank of America N.A., as Administrative Agents

under that certain and Second Amended and Restated Credit Agreement dated August 10, 2006;

(iv) counsel to the Debtors' pospetition lender, (v) the Securities and Exchange Commission; (vi)

all other parties entitled to notice under Del. Bankr. LR 2002-1(b) (collectively, the "Notice

Parties"); (vii) counsel for the Debtors; and (viii) and the Ordinary Course Professional.

PLEASE TAKE NOTICE that if the objection cannot be consensually resolved, then the objection shall be scheduled for hearing before the Court at the next regularly scheduled omnibus hearing or such other date otherwise agreeable to the parties thereto.

PLEASE TAKE NOTICE that if no objections are filed on or before the Objection Deadline, then **the Debtors shall be authorized to compensate professionals associated with the firm that submitted the Retention Affidavit after complying with the other procedures contained in the Revised Order.**

Dated:  September **21**  , 2007
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Travis Turner (No. 4926)*

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

EXHIBIT A

RETENTION AFFIDAVIT

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
In re:                                                        :    Chapter 11
                                                              :
AMERICAN HOME MORTGAGE                                        :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]            :
                                                              :    Jointly Administered
                                                              :
                              Debtors.                        :
------------------------------------------------------------- x    Doc. Ref. Nos: 192 & 643

## AFFIDAVIT OF ORDINARY COURSE PROFESSIONAL

STATE OF WASHINGTON            )
                               )   ss:
COUNTY OF KING                 )

David E. Fennell, being duly sworn, deposes and says:

1.       I am a Senior Counsel of Routh Crabtree Olsen, P.S. (the "Firm", which

maintains offices at 3535 Factoria Blvd. SE, Suite 200, Bellevue, WA 98006.

2.       This Affidavit is submitted in connection with an Order of the United

States Bankruptcy Court for the District of Delaware, entered on or about September 7, 2007,

authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors")

to employ and compensate certain professionals in the ordinary course of business during the

pendency of these chapter 11 cases.

3.       Prior to the filing of the petitions which initiated the above-captioned

cases, the Firm has represented and advised the Debtors as legal counsel for residential mortgage

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
American Home Mortgage Holdings, Inc. ("AMH Holdings") (6303); American Home Mortgage Investment Corp.
("AHM Investment"), a Maryland corporation (3914); American home Mortgage Acceptance, Inc. (AHM
Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc.("AHM Servicing"), a
Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558);
American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
("Great Oak", a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irvine,
Texas 75063.

loan related matters. The Debtors have requested, and the Firm has agreed, to continue to provide such services to the Debtors on a post-petition basis during the course of these chapter 11 cases.

4.      The Firm provides the services to the Debtors at rates stated in the attached Exhibit A, incorporated by reference herein.  The Firm does not anticipate revising its fees charged to the Debtors at any time during the next six months.

5.      In the ordinary course of its business, the Firm maintains a database for purposes of performing "conflict checks." The Firm's database contains information regarding the firm's present and past representations. Pursuant to Federal Rule of Bankruptcy Procedure 2014(a), I obtained a list of the entities identified in Rule 2014(a) from counsel to the Debtors for purposes of searching the aforementioned database and determining the connection(s) which the Firm has with such entities. The Firm's search of the database identified the following connections:

To the extent the following institutions have names that directly or indirectly correspond to the names of institutions that the Firm has represented or may still represent, the Firm's representation of these institutions has been strictly related to the enforcement or protection of the residential real property mortgage liens or personal property collateral liens securing loans held by these institutions:  Deutsche Bank, Wilmington Trust Company, JPMorgan Chase Bank, NA, Countrywide Capital, Bank of America, N.A., SunTrust Asset Funding, LLC, Impac Funding Corporation, Bear, Stearns & Co. Inc., Citigroup Global Markets Realty Corp., Wells Fargo, EMC, Lehman Brothers Inc.,  HSBC Bank, FNMA, Washington Mutual Bank, FA, IndyMac Bank, F.S.B., Credit Suisse First Boston, GMAC, Bank of New York, Citibank, Federal Home Loan Mortgage Corp., GNMA, First American Bank, Sovereign Bank, Wachovia Bank, N.A.

None of these representations has been directly in conflict with the Firm's representation of the debtors and the Firm will not represent any of the financial institutions above adversely to the Debtors.

6.    The Firm may have performed services in the past, may currently perform services, and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtor's chapter 11 cases. To the best of my knowledge, the Firm does not perform services for any such person in connection with these chapter 11 cases.

7.    Neither I nor any principal, partner, director, officer, etc. of, or professional employed by, the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm, as permitted by 11 U.S.C § 504(b).

8.    Neither I nor any principal, partner, director, officer, etc. of or professional employed by, the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed.

9.    Prior to the filing of the above-captioned cases, the Firm was employed by the Debtors. The Debtors owe the Firm approximately $16,000 for pre-petition services. If the Firm's employment is authorized pursuant to the Ordinary Course Professionals order, the Firm will not waive the pre-petition claim.

10.    The firm is conducting further inquiries regarding its retention by any creditors of the Debtors and other parties in interest in these bankruptcy cases, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should

discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

11.    I understand that any compensation paid to the Firm is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Sedember 18_, 2007

_____
Affiant

Sworn to and subscribed before me
this __18th__ day of _September_, 2007

_Kristine Steph_____
Notary Public

## EXHIBIT A

## SERVICES OFFERED BY ROUTH CRABTREE OLSEN, P.S.
## TO DEBTORS

Routh Crabtree Olsen, P.S.is a law firm based in Bellevue, Washington. In addition to its headquarters in Washington, the Law Firm has offices in Santa Ana, California, Portland, Oregon and Boise, Idaho. A sister law firm, Routh & Crabtree, is located in Anchorage, Alaska. The Law Firm provides the following services to AH in California, Nevada, Washington, Oregon and Idaho:

    **A.   Pre-litigation and litigation representation** (typically as to issues arising in the context of AH defaulted loans including, without limitation, disputes with borrowers and junior lienholders).

        Hourly rate:   $250 for partners and senior attorneys, $185 for associate level attorneys and $85 for paralegals plus costs

    **B.   Judicial Foreclosures.**

        Hourly rate:  Hourly rate:  $185 for associate attorneys and $85 for paralegals plus costs

        Cost advances for judicial foreclosures include filing fee, process service, publication costs, foreclosure title report, recording costs, sheriff's fees

    **C.   Post-Foreclosure Evictions.**

        1.   <u>Uncontested</u>:  $350 plus costs

        Cost advances for evictions include filing fees, process service, sheriff's fees

        2.   <u>Contested</u>:  Flat fee of $350 plus hourly at rate:  $185 for attorneys and $85 for paralegals plus costs

        Cost advances for evictions include filing fees, process service, sheriff's fees

    **D.   Bankruptcy Representation.**

        1.   <u>Relief from stay motion</u>

            Uncontested:  Flat fee:  $650 plus costs

Contested:  Flat fee of $650 plus hourly plus costs

2.  <u>Objections to plan</u>

Flat fee:  $350.  If more than one appearance required, flat fee of
$350 plus hourly at $185 for attorneys and $85 for paralegals plus
costs

3.  <u>Proof of Claim filing</u>

$150

4.  <u>Adversary Proceeding Litigation</u>

Hourly rate:  $250 for partners and senior attorneys, $185 for
associate level attorneys and $85 for paralegals plus costs

**E.    Title Clearance Advice and Work** (including without limitation rescinding
trustee sales, perfecting and/or eliminating manufactured home titles, dealing with
prior lien issues).  Hourly rate:  $250 for partners and senior attorneys, $185 for
associate level attorneys and $85 for paralegals plus costs

**F.    Surplus Funds Deposit or Recovery.**  When a foreclosure results in a sale
to a third party, funds over and above amounts due and owing the foreclosing
lender must, depending upon the state, be deposited into the registry of the court
or disbursed to junior lienholders.  The remainder, after all lienholders are
satisfied, go to the borrower or borrower's successor in interest to the foreclosed
property.  The Law Firm handles the deposit and/or disbursement of surplus funds
post-foreclosure on a flat fee basis of $595 plus all costs.  The Law Firm also
represents junior lienholders in their efforts to claim and recover post-foreclosure
surplus funds from foreclosure trustees or the courts.  The Law Firm represents
junior lienholders in this context on a flat fee basis of $595 plus all costs.

## Exhibit B

# Routh | Crabtree | Olsen PS

HOME    PRACTICE AREAS    PUBLICATIONS    ABOUT RCO    REAL ESTATE NEWS    EMPLOYMENT    CONTACT US

You are here: Home >> **Attorney Information**

**Attorney Information :**

Routh Crabtree Olsen, PS has a wonderfully talented and diverse group of attorneys. Below you will find a list of their names. Click on the attorney that you are interested in, to view their individual bio.

Marisol Antonio | Jennifer Aspaas | Kurt Biederman | Janaya L. Carter | David E. Fennell | Steven K. Linkon | James K. Miersma
Nate Moore | Lance E. Olsen | Kimberly Raphaeli | Stephen D. Routh | Brian Sommer | Teresa M. Shill | Richard Ulstrom



**David E. Fennell:**

**Profile and Professional Affiliations:**
David is a founding partner and senior counsel in Routh Crabtree Olsen, PS David
represents financial institutions in foreclosure, bankruptcy, and litigated matters.
David is one of the industry leaders in the mortgage banking and default
servicing industry. He is a member of the Real Property and Probate Section of
the Washington State Bar; USFN (and a former board member); and is a past
Fellow and Regent of the American College of Mortgage Attorneys.

**Education:**
- J.D., Marshall-Wythe School of Law of the College of William & Mary, 1984
- B.S., Lewis & Clark College, 1980

**Bar Admissions:**
- Oregon
- Washington

Site Map  |  Contact Us  |  Legal Disclaimer

©2005-2008 Routh Crabtree Olsen, PS All Rights Reserved