IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **AMERICAN HOME MORTGAGE HOLDINGS,** | : | **Case No. 07-11047 (CSS)** |
| **INC., a Delaware corporation, et al.,** | : | |
| | : | **Jointly Administered** |
| Debtors, | : | |
| | : | |
| | : | **Docket Ref: 11,674,865 & 937** |
| | : | |

## DECLARATION OF JOEL GENDRON

I, Joel Gendron, declare as follows:

1.  I am Senior Vice President – Finance Group with American Home Mortgage Servicing, Inc. ("AHMSI"). Since November 2007, I have been responsible for cash management, bank reconciliation, accounting, treasury and accounts payable. During the period between November 16, 2007 through April 11, 2008, I was responsible for cash management, bank reconciliation and investor reporting for Debtor AHM SV, Inc. ("SVI"), formerly known as American Home Mortgage Servicing, Inc.

2.  I am over the age of twenty-one and am competent to make this Declaration submitted in support of AHMSI's Motion for Allowance and Payment of Administrative Claims. The facts stated herein are true and correct and, unless otherwise noted below, are based upon my personal knowledge and/or the books and records of SVI and AHMSI maintained in the ordinary course of business.

3.  As part of my responsibilities for AHMSI, I was personally involved in examining and reconciling the accounts acquired from Debtors in these cases pursuant to the Asset Purchase Agreement of AHMSI, American Home Mortgage Investment Corp., American Home Mortgage Corp. and SVI, dated as of September 25, 2007 (as amended, the "APA"). I

also was personally involved in examining and reconciling certain transactions effected by the Debtors during the period between November 16, 2007 (the "Initial Closing Date") and April 11, 2008 (the "Final Closing Date"). (In this Declaration, I refer to the period from the Initial Closing Date until the Final Closing Date as the "Interim Period").

4. Prior to commencement of these cases, SVI transferred cash to its parent, Debtor American Home Mortgage Investment Corp. ("Parent"), funds that were required to be held for the benefit of, and remitted to, the applicable holder of certain loans, including securitization investment trusts, under the applicable loan servicing agreements. There were three categories of transactions in which monies that should have been remitted to the holders of the loans were instead transferred to Parent:

A. From time to time, prior to the commencement of the bankruptcy cases, Parent loaned funds to SVI for advances that SVI would make in connection with servicing loans. As SVI collected funds on those loans, in respect of mortgage insurance claims or as a result of loan foreclosures or liquidating REO Properties delinquent principal and interest payments also, SVI was required to deposit those collections in custodial accounts for the benefit of the applicable securitization trust or loan owner. Under the servicing agreements, however, SVI was entitled to reimburse itself for those advances from the custodial accounts. Since SVI had borrowed from Parent for advances, to repay Parent SVI would periodically wire funds to Parent from the custodial accounts in amounts that Servicing was permitted to withdraw for reimbursement of advances.

B. On July 3, 2007, SVI wired $5,082,009 to Parent from one or more custodial accounts to repay loans for advances. This transfer, however, represented an overpayment of $1,496,586. Under the applicable servicing agreement or agreements, SVI is

only permitted to withdraw amounts from custodial accounts as necessary for reimbursement of advances and not amounts in excess of such amounts and is further obligated to promptly replenish any shortfall.

   C. Prior to the commencement of these proceedings, SVI remitted substantial amounts of money to Parent, currently estimated to be about $3 Million, which consisted of collections on loans SVI mistakenly believed Parent owned, but which had been sold to third parties. Pursuant to SVI's obligations for servicing these loans, these collections should have been remitted to the third party owners of the loans rather than Parent.

   D. Prior to commencement of these proceedings, SVI received approximately $5.6 Million in payments in connection with loans that it was servicing under servicing agreements eventually acquired by AHMSI that were in foreclosure or in connection with the sale of REO Property performed pursuant to these servicing agreements. These amounts include payments from mortgage insurance, partial payments from borrowers and full liquidation proceeds. These amounts were eventually to be paid to the owners of the underlying loans pursuant to the terms of their respective servicing agreements. However, prior to such payments being made, rather than holding these funds in the appropriate custodial accounts SVI instead remitted the $5.6 Million to Parent.

   5. During the Interim Period, SVI discovered that it had remitted to Parent the funds described in Paragraph 4 above and that these funds should have been remitted to the holders of the loans. However, SVI did not use Debtors' funds to satisfy the foregoing deficiencies. Instead, it used funds held in separate accounts established for the benefit of AHMSI to satisfy SVI's obligations for funds improperly remitted to Parent. The use of AHMSI's funds in this manner was not in the ordinary course of business.

6. Within the mortgage loan servicing business, lenders sometimes purchase lender paid mortgage insurance ("LPMI") on certain loans. Upon learning that a lender has procured LPMI on a loan, a mortgage servicing company normally pays the LPMI premiums to the insurance company and deducts those payments from principal and interest payments that the servicer receives from the borrower and remits to the owner of the loan.

7. Some mortgage loans provide that the borrower will pay a prepayment penalty if the loan is repaid prior to the end of the term of the loan. The mortgage servicing company normally collects the prepayment penalty which it then forwards to the owner of the loans.

8. Amounts received by the mortgage servicing company for the payment of LPMI premiums and payment of prepayment penalties to the owner of the loan normally are deposited in one or more accounts used to remit LPMI premiums or prepayment penalties. In accordance with industry practice, SVI established such accounts for use in paying LPMI premiums and remitting prepayment penalties on loans it was servicing. AHMSI acquired these accounts.

9. On or about November 16, 2007, Debtors notified AHMSI that there was a deficiency in the accounts established to pay LPMI premiums and to remit prepayment penalties. Accordingly, as part of the Third Amendment to the Asset Purchase Agreement dated as of November 16, 2007, the purchase price was reduced by $6,061,810 and the parties agreed to work together in good faith to determine whether the $6,061,810 was sufficient to cure the deficiency in the LPMI and Prepayment Penalties accounts.

10. Based upon LPMI premiums paid and prepayment penalties remitted to the owners of certain loans, AHMSI has determined that the LPMI accounts were deficient in the approximate amount of $2.5 Million and the prepayment accounts were deficient in the approximate amount of $4.7 Million. After reducing the aggregate amount of these deficiencies

($7.2 Million) by the aforesaid purchase price reduction ($6,061,810), there remains a deficiency of approximately $1.14 Million. AHMSI has not been reimbursed by any third parties for this deficiency, and it is unlikely that it will ever obtain such reimbursements. Debtors have refused to pay AHMSI $1.14 Million to satisfy this deficiency notwithstanding numerous requests that they do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 23, 2008

                                                                          Joel Gendron