IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

In re:

American Home Mortgage Holdings, Inc., *et al*,[1]

Debtors.

---

Chapter 11

Case No. 07-11047 (CSS)
(Jointly Administered)

**Re: Docket No. 4107**

### OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF RIVER PARK EXECUTIVE SUITES FOR LEAVE TO FILE LATE CLAIM BY REASON OF EXCUSABLE NEGLECT

The Official Committee of Unsecured Creditors ("Committee") of American Home Mortgage Holdings, Inc, *et al*., the debtors and debtors-in-possession herein (collectively, the "Debtors"), for its objection to the motion dated May 20, 2008 of River Park Executive Suites ("River Park") for Leave to File Late Claim by Reason of Excusable Neglect [Docket No. 4107] ("Motion") respectfully represents as follows:

### BACKGROUND

1. On August 6, 2007, the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware.

2. On August 14, 2007, the Office of the United States Trustee appointed seven of the largest unsecured creditors to serve as members of the Committee. The Committee elected James McGinley of Wilmington Trust Company, as Trustee, and Steven Sass of The Receivable

---

[1] The Debtors in these cases, are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc; and Great Oak Abstract Corp.

Management Services Corporation, Agent for United Parcel Service, as Co-Chairpersons of the Committee.

3.  Pursuant to an order dated October 30, 2007 [Docket No. 1708] (the "Bar Date Order"), the Court established January 11, 2008 as the general claims bar date (the "Bar Date"). According to the Bar Date Order, creditors asserting a prepetition claim must file a proof of claim by the Bar Date or they shall not be treated as a creditor for purposes of voting upon, or receiving distribution under, any chapter 11 plan or plans in these cases in respect of that claim.

4.  The Debtors timely mailed a Notice of Bar Dates for Filing Proofs of Claim (the "Bar Date Notice") to all known creditors, including River Park. A copy of the Bar Date Notice is attached hereto as Exhibit A.

5.  According to Exhibit G attached to the Debtors' Fifth Omnibus Objection to Claims [Docket No. 3879], approximately $9.03 million in late proofs of claim have been filed to date against the Debtors after the Bar Date.[2]

### River Park's Motion

6.  River Park asserts that it has a $81,406 claim against the Debtors for unpaid rent, lease rejection damages and other charges. In its Motion, River Park concedes, as it must, that it received timely a copy of the Bar Date Notice and that it understood the import of the Notice. River Park does not argue that the Bar Date Notice was in any way misleading or unclear. Instead, River Park submits the affidavits of William E. Winfield and Angela Cooper in support

---

[2] The Debtors have advised Committee counsel that certain of the claims listed on Exhibit G may have had different bar dates by separate court orders and that the more accurate total of late claims filed after the Bar Date as of the date of this Objection is approximately $8.22 million.

- 2 -

128189.01600/40174899v.1

of its Motion. In his affidavit, Mr. Winfield states that he executed a proof of claim and "gave instructions that the Proof of Claim be filed before the deadline and believed that it had been done." Affidavit of William E. Winfield, sworn to on May 19, 2008 ¶ 3 (the "Winfield Affidavit"). Notably, Mr. Winfield does not indicate to whom he gave his instructions, or that he followed up in any manner whatsoever to make sure that his instructions were followed, or that his office took any of the several available steps to confirm the filing of the claim took place. In her affidavit, Ms. Cooper states that she "inadvertently placed the [proof of claim] in a file and then failed to file the Proof of Claim before the deadline." Affidavit of Angela Cooper, sworn to on May 19, 2008 ¶ 2 (the "Cooper Affidavit"). Ms. Cooper does not offer an explanation for why her office failed to submit the proof of claim to the claims agent, except that she suggests that "[a]t the time, we had a much higher than average case load related to the high number of consumer bankruptcy cases that had been filed during the lateral [sic] part of 2007." Cooper Affidavit ¶ 3. Like Mr. Winfield, Ms. Cooper does not indicate that Mr. Winfield followed up in any manner to confirm that his instructions were followed. Further, neither affiant indicates that their firm has put in place any procedures whatsoever to verify that proofs of claim have been properly and timely filed.

7. On May 20, 2008 — more than four months after the Bar Date, River Park filed its Motion asking that it be permitted to file a late proof of claim pursuant to Bankruptcy Rule 9006(b)(1). As noted, River Park offers no explanation for its failure to timely file a proof of claim, except a vague statement that its lawyers may have been busy on other client matters at the time. The Committee submits that while River Park's counsel's conduct may have been neglectful, it has failed to show that this neglectful conduct was excusable, since no legitimate excuse has been proffered.

- 3 -

## RIVER PARK HAS FAILED TO DEMONSTRATE THAT
## ITS CONDUCT CONSTITUTES "EXCUSABLE NEGLECT"

A.     **River Park Should be Held Accountable for Its Failure to Timely File a Proof of Claim**

8.     Federal Bankruptcy Rule 3003(c)(3) provides, in pertinent part, that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Federal Bankruptcy Rule 9006(b)(1) provides, in part, that "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done <u>where the failure to act was the result of excusable neglect</u>." Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

9.     In *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993), the United States Supreme Court stated that the determination of whether "excusable neglect" exists for purposes of Rule 9006(b)(1) is:

> an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted good faith.

The Supreme Court instructed that the issue for a court to decide is whether the claimant "did all he reasonably could to comply with the court ordered bar date." <u>Id</u>. at 396. The *Pioneer* Court emphasized that, "in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents and

- 4 -

their counsel was excusable." *Pioneer*, 507 U.S. at 397.[3] *See also In re Au Coton, Inc.,* 171 B.R. 16 (S.D.N.Y. 1994) (late proof of claim was properly disallowed by bankruptcy court because simple carelessness on part of the claimant did not constitute excusable neglect).

10. There are at least two reported decisions involving facts that are remarkably similar to the ones presented here. In both cases, the courts found that the conduct of the creditor's counsel was not excusable and denied their motions for permission to file late proofs of claim. In *In re American Classic Voyages Co.,* 405 F.3d 127, 134 (3d Cir. 2005), counsel to the creditor Scott Hefta, like counsel to River Park here, acknowledged timely receipt of the notice of the bar date, but failed to timely file a proof of claim claiming that he had instructed his assistant to file the notice but failed to appreciate the significance of it. Counsel then filed a motion three and one half months after the bar date seeking, among other things, permission to file a late claim due to "excusable neglect." Id. The Third Circuit, in applying the four *Pioneer* factors to affirm the denial of Hefta's request, stated that:

> Applying the first and second Pioneer factors, we conclude that Debtors will be prejudiced by exposure to a late claim and that the length of delay would have a substantial impact on the bankruptcy proceeding. … Thousands of individual claims are outstanding against Debtors; the sheer scale presents a formidable problem of management. The strict bar date provided by the Bankruptcy Court was intended, in part, to facilitate the equitable and orderly intake of those claims. Debtors argue, with some persuasive effect, that, in view of the large number of post-bar date claims filed [total value of almost $5 million], allowing appellant to file late 'might render the bar date order meaningless.' …
>
> We rely, however, primarily on the third Pioneer factor. Specifically, we conclude that the delay in this case was entirely avoidable and within

---

[3] In *Pioneer*, the Supreme Court found that excusable neglect did exist. However, in assessing the culpability of the attorney that neglected to timely file proofs of claim, the Court gave "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date" Id. at 398. The Court based its decision largely on the fact that the notice of bar date was inconspicuously placed within a notice of a meeting of creditors. Id. It has been noted that "had the bar date notice in *Pioneer* been separate and conspicuous, as it is in the usual chapter 11 case, the language in *Pioneer* equally supports the conclusion that the Supreme Court would have reached the opposite result." *In re Keene Corp.,* 188 B.R. 903, 909 (Bankr. S.D.N.Y. 1995).

> Hefta's control. Delay was the direct result of the negligence of Hefta's counsel in failing to review the Notice sent to him by Logan. … Thus, the third factor strongly disfavors Hefta. …
>
> With respect to the fourth and final Pioneer factor, there is no reason to believe that Hefta ever acted in bad faith. But nor was he so careful or vigilant as to overcome the weight of the previous three factors – especially the second.

11. The bankruptcy court's decision, in *In re Musicland Holding Corp.*, 356 B.R. 603, 608 (Bankr. S.D.N.Y. 2006), is also squarely on point. In that case, counsel to the claimant, a landlord, moved for permission to file a late proof of claim less than two months after the bar date. Counsel had claimed that although she had received from her client the information needed to prepare the proof of claim and in fact prepared the proof of claim at that time, "[u]pon subsequent review of the file, Movant's counsel discovered that the original Proof of Claim was in the file and had not been properly filed with the Court." *Id*. In a subsequent affidavit submitted with a motion for reconsideration, counsel for the claimant amplified the reasons for her failure to file a timely proof of claim. Counsel explained that:

> She received the accounting [from the client] on March 24, … prepared the proof of claim on that same day, and gave both the proof of claim and the attachments 'to the appropriate administrative personnel with instructions to file.' … Livonia's counsel reviewed the file in early June 2006 [after the May 1 bar date], and discovered that the proof of claim that she had prepared was still in the file, and had not been filed with the Court. … She concluded that '[t]here was apparently a miscommunication between my staff and me, which caused the Proof of Claim not to be filed.'

12. After considering these facts, Chief Bankruptcy Judge Bernstein declined to find that the landlord's neglectful conduct was excusable, holding that "[i]f a clear deadline is missed due to a law office failure, including inattention or lack of oversight, an extension is not justified." *Id.* at 608; *see also In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005) ("[T]he

- 6 -

equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and … 'where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary case, lose under the Pioneer test.'" (*quoting Silivanch v. Celebrity Cruises, Inc*., 333 F.3d 355, 366-67 (2d Cir. 2003)).

13.     Similarly, as the Third Circuit did in *American Classic* and Chief Bankruptcy Judge Bernstein did in *Musicland*, this Court should conclude that River Park's Motion should be denied based on the application of the four *Pioneer* factors to facts presented here.

14.     Under the first *Pioneer* factor, there can be no doubt that the Debtors' estates will be prejudiced by exposure to a late claim, particularly one, like River Park's, which offers no legitimate reason for its failure to comply with the Bar Date Order. Like these cases, both *American Classic Voyages* and *Musicland* involved liquidating chapter 11 cases. Similarly, as with those cases, thousands of individual claims have been timely filed against the Debtors here. Further, as in those cases, there are million of dollars (in excess of $9 million), in late proofs of claim filed against the Debtors. If the Court were to allow River Park to assert its claim based upon the poor showing it has made of excusable neglect, the Bar Date Order might as well be deemed meaningless since virtually any late creditor can assert the same excuse. Allowing River Park to file a late claim based on excusable neglect would in essence be reading "excusable" out of the rule and could open the floodgates for every claimant who failed to comply with the Bar Date Order.

15.     The second *Pioneer* factor also mitigates in favor of denying the Motion. River Park took more than four months after the Bar Date to file its motion. In contrast, the late creditors in *American Classic Voyages* and *Musicland* took only three months and one month,

respectively, to file their motions. Here, the Debtors and the Committee have already begun the delicate process of formulating a consensual plan of liquidation for these cases. Allowing potentially millions of dollars of additional late claims at this late date could potentially further delay and impede the plan process.

16. Third, but more important, the third *Pioneer* factor mitigates strongly in the estates' favor. In this case, as with the late creditors in *American Classic Voyages* and *Musicland*, the delay was entirely avoidable and within River Park's control. The delay was the direct result of the negligence of River Park's counsel. There is simply no dispute that the deadline was missed due to the law office's failure, including inattention or lack of oversight. The Firm's failure to have the appropriate safeguards in place, while regrettable, does not constitute a legitimate excuse for the failure to timely file the proof of claim. Thus, the third factor strongly disfavors River Park.

17. With respect to the fourth and final *Pioneer* factor, the Committee has no reason to believe that River Park has acted in bad faith, but, as the Third Circuit noted in *American Classic Voyages*, nor has River Park's counsel been "so careful or vigilant as to overcome the weight of the previous three factors – especially the second." 405 F.3d at 134.

B.  **The Equities Weigh in Favor of Denying the Motion**

18. Courts have long recognized that the bar date is critically important to the administration of a successful chapter 11 case and the reorganization process. *See In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995). Thus, the burden of proving "excusable neglect" is on the party seeking an enlargement of time to file. *See In re Continental Airlines, Inc.*, 171 B.R. 187, 239 (Bankr. D. Del. 1994), *aff'd*, 1995 U.S. Dist. LEXIS 17671 (D. Del.

1995); *see also Keene*, 188 B.R. at 907 (a creditor may "file a late claim if it demonstrates that its failure to file a timely claim was due to 'excusable neglect'"); *In re R.H. Macy & Co.*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993). In the present case, River Park has not satisfied its burden of proving excusable neglect and the equities are against it.

19. As stated in *In re Rainbow Trust*, 179 B.R. 51, 55-56 (Bankr. D. Vt. 1995),

> [a]llowance of [a late claim] will prejudice those creditors who filed on time, because it adds even more uncertainty to an already difficult case, and changes expectations of the parties that were fixed . . . months before [a creditor] filed its proof of claim. Those expectations provided the structure within which the parties negotiated, formulated strategy, and made choices about how to act. Allowance of late-filed claims changes the game in the middle, after the players who sat down on time have already drawn their cards. . . . A finding of excusable neglect here would be tantamount to reading "excusable" out of the rule . . . and allowing any creditor to file any time it got around to it. That would make negotiation and accommodation difficult, and the prospect for plan confirmation far more remote.

20. Similarly, in the present case, the allowance of River Park's claim, and potentially millions of dollars of other tardy claims, weighs in favor of a finding that the Debtors' estates will be prejudiced if the Motion is granted. *See In re Continental Airlines*, 171 B.R. at 189 (holding that a reclamation claimant was unable to file after the bar date because allowing the claim could encourage challenges by other reclamation claimants who had not timely filed and "[s]uch consideration at this late date would expose Debtors to an unnecessary danger of prejudice"). For these reasons, the Committee submits that the Debtors and their creditors who timely filed claims would be unfairly prejudiced were River Park's claim to be deemed timely filed.

**WHEREFORE**, the Committee respectfully requests that the Court deny the Motion and grant such other and further relief as it deems just and proper.

Dated:   May 27, 2008

        BLANK ROME LLP

        /s/ *David W. Carickhoff*
        Bonnie Glantz Fatell (No. 3809)
        David W. Carickhoff (No. 3715)
        1201 Market Street, Suite 800
        Wilmington, Delaware  19801
        (302) 425-6400 - Telephone
        (302) 425-6464 - Facsimile

        - and -

        HAHN & HESSEN LLP
        Mark T. Power
        Emmet Keary
        488 Madison Avenue
        New York, New York 10022
        (212) 478-7200 - Telephone
        (212) 478-7400 - Facsimile

        Co-Counsel to the Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc., *et al*.