UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 07-11047(CSS) |
| | ) | Chapter 11 |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., a Delaware | ) | Courtroom No. 6 |
| Corporation, _et al.,_ | ) | 824 Market Street |
| | ) | Wilmington, Delaware 19801 |
| | ) | |
| Debtors. | ) | |
| | ) | May 28, 2008 |
| | ) | 12:59 P.M. |

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

| | |
|---|---|
| For the Debtors: | Young Conaway Stargatt & Taylor, LLP |
| | By:  MATTHEW LUNN, ESQ. |
| | KARA COYLE, ESQ. |
| | NATHAN GROW, ESQ. |
| | The Brandywine Building |
| | 1000 West Street, 17th Floor |
| | Wilmington, Delaware 19899-0391 |
| | |
| For the Creditors' | Blank Rome, LLP |
| Committee: | By:  DAVID CARICKHOFF, ESQ. |
| | Chase Manhattan Centre |
| | 1201 Market Street, Suite 800 |
| | Wilmington, Delaware 19801 |
| | |
| | Hahn & Hessen |
| | By:  MARK POWER, ESQ. |
| | 488 Madison Avenue |
| | New York, New York 10022 |
| | |
| ECRO: | Al Lugano |
| | |
| TRANSCRIPTION SERVICE: | TRANSCRIPTS PLUS |
| | 435 Riverview Circle |
| | New Hope, Pennsylvania 18938 |
| | Telephone:  215-862-1115 |
| | Facsimile: 215-862-6639 |
| | e-mail CourtTranscripts@aol.com |


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

Appearances:
(Continued)

For WLR Recovery:              Greenberg Traurig, LLP
                               By:  SANDRA SELZER, ESQ.
                               The Nemours Building
                               1007 North Orange Street, Suite 1200
                               Wilmington, Delaware 19801

For Natixes Real Estate        The Bayard Firm
Capital:                       By:  ERIC M. SUTTY, ESQ.
                               222 Delaware Avenue, Suite 900
                               P.O. Box 25130
                               Wilmington, Delaware 19899-5130

For McLain Partners:           Polsinelli Shalton Flanigan
                               Suelthaus PC
                               By:  CHRIS WARD, ESQ.

For River Park                 Saul Ewing, LLP
Executive Suites:              By:  MARK MINUTI, ESQ.
                               222 Delaware Avenue, Suite 1200
                               P.O. Box 1266
                               Wilmington, Delaware 19899

For Bank of America:           Potter Anderson & Corroon, LLP
                               By: GABRIEL R. MacCONAILL, ESQ.
                               Hercules Plaza, P.O. Box 951
                               1313 N. Market Street
                               Wilmington, Delaware 19899-0951

TELEPHONIC APPEARANCES:

For the Debtors:               American Home Mortgage Holdings
                               By:  JOHN KALAS, Representative

For Bank of America:           Kaye Scholer
                               By:  SCOTT TALMADGE,ESQ.
                                    MARGOT SCHONHOLTZ, ESQ.
                                    ANA ALFONSO, ESQ.
                               425 Park Avenue
                               New York, NY 10022-3598

For ABN AMRO Bank:             Milbank, Tweed, Hadley & McCloy LLP
                               By:  ROBERT MOORE,E SQ.
                                    FRED NEUFELD, ESQ.
                               1 Chase Manhattan Plaza
                               New York, New York 10005-1413

1          MR. LUNN:  Good afternoon, Your Honor.

2          THE COURT:  Good afternoon.

3          MR. LUNN:  May it please the Court, Matthew Lunn from

4   Young Conaway on behalf of the debtors.

5          Referring to the agenda, Your Honor, the amended

6   agenda that was filed yesterday, Agenda Items 1 through 8 are

7   adjourned.  And actually I don't -- Agenda Item 8, it's the --

8          THE COURT:  Do you have an extra copy of the amended

9   agenda?

10          MR. LUNN:  I do not, Your Honor.  Hold on one second.

11          THE COURT:  Okay, I've got -- you guys could share?

12          MR. LUNN:  Yes.

13          THE COURT:  Thanks.  Go ahead.  Sorry.

14          MR. LUNN:  Sure.  Agenda Item Number 8 is actually

15   the subject -- will be the subject of a 9019 motion that's

16   scheduled --

17          THE COURT:  I'm sorry.  Start over because I wasn't

18   listening because I was looking for the amended agenda.

19          MR. LUNN:  Sure.

20          THE COURT:  So, start from the beginning.

21          MR. LUNN:  Referring to the amended agenda that we

22   filed yesterday, Agenda Items 1 through 8 are adjourned.

23          THE COURT:  Okay.

24          MR. LUNN:  Agenda Item Number 8, which is a pretrial

25   conference with FGIC, it's actually -- we resolved with FGIC.

4

1   A 9019 motion has been filed and set for the June 11th hearing.

2            THE COURT:  Okay.

3            MR. LUNN:  Agenda Item Number 9 was the subject of

4 certification of no objection, and an order was entered with

5 respect to that matter.

6            Agenda Items 10 through 39 are first lien

7 foreclosures where there was a certification of counsel filed

8 and I believe Your Honor has entered orders with respect to all

9 of these matters.

10            THE COURT:  I tried to.

11            MR. LUNN:  There are quite a few, Your Honor.  Agenda

12 Items 40 through 52, certifications of counsel were filed

13 yesterday, late, after we had filed the amended agenda.  Copies

14 of the certifications should have been delivered by my office

15 to your -- to chambers either late yesterday or tomorrow -- or

16 this morning.

17            THE COURT:  Okay.

18            MR. LUNN:  If not, Your Honor, if you don't have

19 them, I --

20            THE COURT:  I don't remember.

21            MR. LUNN:  Okay.

22            THE COURT:  But I've been on the bench all morning.

23            MR. LUNN:  Right.

24            THE COURT:  So, I don't know.

25            MR. LUNN:  So, they should have been, and I will

26 follow-up with our paralegal, Your Honor, to make sure that

1  that actually did happen.  These were all filed by, I believe,

2  Mr. Hiller.

3          THE COURT:  I didn't already sign these?

4          MR. LUNN:  Not these ones, Your Honor.

5          THE COURT:  Okay.

6          MR. LUNN:  Because there was no certification of

7  counsel filed prior to the --

8          THE COURT:  Okay.

9          MR. LUNN:  -- actual filing of the agenda.

10         THE COURT:  I don't remember seeing that, but let me

11 just double-check.

12                         (Pause)

13         THE COURT:  Go ahead.

14         MR. LUNN:  Okay.

15         THE COURT:  So -- so, anyway, so whenever I get them,

16 I can go ahead and sign them.

17         MR. LUNN:  Yes, Your Honor.

18         THE COURT:  Okay.

19         MR. LUNN:  That brings us to Agenda Item 53, which is

20 on Page 21, and this is the motion of McLain Partners for

21 allowance of an administrative expense claim, and I will cede

22 the podium, Your Honor.

23         MR. WARD:  Good afternoon, Your Honor.

24         THE COURT:  Good afternoon.

25         MR. WARD:  For the record, Chris Ward of Polsinelli

6

1  Shalton Flanigan and Suelthaus for McLain Partners.

2         What I have discussed with debtors' counsel is we

3  have brief argument on both sides regarding this motion for

4  administrative claim.   The motion was brought pursuant to

5  Section 503(b)(7), which states that if a lease is assumed, and

6  then later rejected, that the landlord has a claim for all

7  monetary obligations due under the lease for up to a two-year

8  period.

9         And I think from McLain's perspective, that is

10 exactly what we're looking at in this situation.   The debtors

11 are going to make an argument that this lease was never

12 assumed.   But I think if we look at the plain language of the

13 documents and we look at the interaction between the parties

14 and IndyMac, it is clear that this lease was assumed and then

15 there was later dispute between the debtors and IndyMac, and

16 then the lease was attempted to be rejected at that point.   And

17 as a result of that rejection, we have a 503(b)(7) claim in

18 this case.

19        This motion was filed back on March 28th seeking an

20 allowance of an administrative claim in the amount of $61,250.

21 In addition, the motion sought payment of February rent, but we

22 have reconciled with the debtors that the February rent was, in

23 fact, paid.   So, the amount in dispute at this hearing is

24 $61,250.

25        The Court is well aware of the relationship between

1   the debtors and IndyMac in this case and IndyMac's attempt to

2   acquire some of the debtors' leases.  One of those leases was

3   the McLain lease.  This lease was subject to an order of this

4   Court which -- and I'll read directly from the order, Your

5   Honor, "Authorizes the assumption and assignment of certain

6   real property leases and the sale of furniture, fixtures and

7   equipment located therein."

8           If the Court looks at the second paragraph on Page 4

9   of the order --

10          THE COURT:  Wait a minute.  Wait a minute.  Let's

11  make sure I have a copy of the order in front of me.  It wasn't

12  attached to your --

13          MR. WARD:  It was not, Your Honor, and I had thought

14  it was going to be included with the agenda, so I did not

15  reference it in my pleading.  But I can read this into the

16  record and hand the Court my copy of the order.

17          THE COURT:  I'd rather have a copy with me.  Do you

18  have an extra?

19          UNIDENTIFIED ATTORNEY:  Your Honor, we attached a

20  copy to our objection.

21          THE COURT:  You do?

22          MR. LUNN:  It's Exhibit --

23          THE COURT:  Exhibit what?

24          MR. LUNN:  Exhibit A, Your Honor.

25          THE COURT:  All right.  Oh, I've got it.  Here we go.

1 All right.  Thank you.  Sorry.

2          MR. WARD:  And as the order --

3          THE COURT:  What -- what paragraph are you on?

4          MR. WARD:  Paragraph 2 on Page 4.

5          THE COURT:  Okay.

6          MR. WARD:  It says, "Pursuant to Sections 105(a), 363

7 and 365 of the Bankruptcy Code, the debtors are hereby

8 authorized and empowered to enter into the lease agreement to

9 assume and assign the office leases listed on Exhibit 2," which

10 includes McLain Partners, "and to sell, transfer and convey the

11 office assets to IBN."

12          Pursuant to this order, Your Honor, the lease between

13 McLain Partners and the debtors was assumed pursuant to Section

14 365.  There was events after this between IndyMac and the

15 debtors that led IndyMac to, I believe, pull 15 leases from the

16 deal that they had negotiated from the debtors.

17          But at that point in time, all of the issues between

18 IndyMac and the debtors were issues that did not --

19          THE COURT:  It says "authorized and empowered."  But

20 the closing never occurred.

21          MR. WARD:  The closing never occurred, Your Honor.

22 But at all times relevant to this proceeding, the debtors and

23 IndyMac acted as if this lease had been assumed.  All of the

24 benefits of the lease were taken over by IndyMac.  All of the

25 burdens of the lease were taken over by IndyMac.  The debtor

9

1 did not retain any rights with respect to this lease, other

2 than an alleged right to pull it from the transaction at a

3 later date.

4      THE COURT:  Well, was there anything in this order

5 that provided that the letter -- if the closing didn't occur,

6 for example, and rent wasn't paid on a post petition basis,

7 that the debtors were somehow off the hook?

8      MR. WARD:  There's nothing in the -- well, there's

9 nothing in the lease that says the debtors are off the hook for

10 that rent.  But there's nothing in the lease that -- that

11 states that IndyMac is on the hook.  And that is the -- the

12 petition that McLain Partners has taken is if there's an issue

13 between the debtors and IndyMac with respect to this lease at a

14 later date, there was a closing escrow set up.  Since the

15 debtors assumed this lease and operated as if this lease was

16 assumed, if the debtors have an issue now with their agreement

17 with IndyMac, the debtors should seek reimbursement from that

18 closing escrow with IndyMac to reimburse the debtors for

19 payment of this administrative claim.

20      We're -- we're dealing with -- even if the Court

21 wasn't to find that this was an actual assumption of the lease

22 because the language does only say "authorize and empower," I

23 think we're dealing with a de facto assumption by the actions

24 of the parties.  The debtors did not retain any interest in

25 this lease.

1          THE COURT:  But under -- under <u>University Health</u> or

2   whatever the heck the -- <u>University Medical</u>, the 3rd Circuit

3   opinion, there is basically no such thing as de facto

4   assumption and assignment of a lease.

5          MR. WARD:  And, Your Honor, in a typical situation, I

6   -- I would probably agree with the Court.  But here we actually

7   have an agreement between IndyMac and the debtors which puts in

8   -- all of the rights of this lease, both the benefits and the

9   burdens into the ball -- into the court of IndyMac.

10         THE COURT:  Um-hum.

11         MR. WARD:  The debtors do not retain any interest in

12  this lease whatsoever.  And it -- it's giving the debtors a

13  backdoor out that they -- they're not entitled to in this case.

14         THE COURT:  So, that's a little inconsistent with

15  what your position is, which is is, okay, everything was handed to

16  IndyMac, but now because IndyMac hasn't paid you, the debtors

17  should pay you.

18         MR. WARD:  But the payment, even though it was coming

19  for IndyMac, Your Honor, is a payment from the debtors because

20  it was still -- the Court was still overseeing the closing of

21  this transaction.

22         THE COURT:  Right, which never occurred.

23         MR. WARD:  Which never did occur, Your Honor,

24  admittedly.  I'm not going to stand here and tell you it never

25  occurred.  But at all points in time, up to that closing, all

1  the parties acted as if this lease had been assumed and

2  assigned to IndyMac.  And only when things went south between

3  the debtors and IndyMac, and at that point in time, the debtors

4  would have done anything to close a transaction with IndyMac,

5  they pulled out 15 leases.  And the only parties that were hurt

6  in this transaction were the 15 leases that were pulled out at

7  the last minute in order for this transaction to close.  And,

8  you know, I think this Court can step in now and hold the

9  debtors accountable for the treatment of this lease, and hold

10  IndyMac accountable for the treatment of this lease and order

11  an administrative claim for my clients for the -- for letting

12  IndyMac operate and take location in this premises while the

13  closing was to occur.

14             THE COURT:  Okay.

15             MR. WARD:  I think -- unless the Court has any other

16  questions, Your Honor --

17             THE COURT:  No.

18             MR. WARD:  -- that is -- that is a -- pretty much our

19  argument.

20             THE COURT:  I understand your argument.  Thank you,

21  Mr. Ward.

22             MR. WARD:  Thank you, Your Honor.

23             THE COURT:  Mr. Lunn?  Or -- never mind.

24             MS. COYLE:  Good afternoon, Your Honor.  Kara Coyle,

25  Young Conaway Stargatt and Taylor on behalf of the debtors.

1          Your Honor, first I want to clarify something that

2   McLain Partners' counsel said.  They were discussing Paragraph

3   2 of the sale order which, as Your Honor pointed out, that the

4   -- that the -- the debtors were authorized and empowered to

5   enter -- to assume and assign the lease.

6          If you go down to Paragraph 4 of the sale order, it

7   says that, "Upon the date of closing of the sale, the office

8   assets shall be transferred to IndyMac."  Office assets is a

9   defined term, which includes both the assumption and assignment

10  of the leases, and also the sale of furniture, fixtures and

11  equipment located therein.

12         So, the debtors would submit that the -- that the

13  order is clear that the assumption and assignment was not to

14  occur until the sale closed.

15         We would further submit that contrary to what McLain

16  Partners is stating, the debtors' actions throughout this case

17  clearly support that the lease wasn't assumed.

18         The debtors filed a motion under -- to -- under

19  Section 365(d)(4) to extend their deadline to assume their

20  unexpired leases of non-residential real property.

21         The debtors -- one of the main reasons that the

22  debtor -- debtors filed that motion was because the sale to

23  IndyMac had not closed and if the 365(d)(4) deadline expired

24  prior to the closing, the debtors would not be in a position to

25  assume and assign those leases.

1       The debtors would not have needed to file this motion

2  and serve it on Indy -- serve it on McLain Partners if the

3  lease had already been assumed.

4       Moreover, Your Honor, as the 365 -- final 364 (sic)

5  (d)(4) deadline was approaching, the debtors filed a motion to

6  compel IndyMac to close the sale.  Because, again, if the --

7  you know, the deadline expired prior to the closing, the

8  debtors would not have needed to assume and assign -- would not

9  have been able to assume and assign the leases to IndyMac.  The

10 debtors served that motion on McLain Partners.  McLain Partners

11 didn't respond or otherwise come forward to clarify the record

12 if they thought the lease had already been assumed, and the

13 debtors would not have taken those actions on an emergency

14 basis if the lease had been assumed.

15      And as McLain Partners pointed out, prior to -- prior

16 to the closing of the sale, the debtors and IndyMac reached a

17 global resolution to exclude 15 leases from the letter

18 agreement.  One of the leases was McLain Partners, the debtors

19 filed a motion and this Court approved it and authorized the

20 rejection of the lease effective February 29th.

21      Again, that motion to modify, the letter agreement to

22 remove McLain's lease was served on McLain Partners, and they

23 didn't -- they never responded.

24      We think that the facts are clear that the lease was

25 never assumed.  And we would submit that in a liquidating case

1   such as this, the debtors would not have assumed and assigned

2   leases as part of a sale transaction that wasn't contingent on

3   the sale closing.  These office lease locations were loan

4   origination offices.  The debtors had discontinued their loan

5   origination business, and they were selling, you know, the FF&E

6   located within the lease locations and the assumption and

7   assignment of the leases to IndyMac.  The debtors wouldn't have

8   opened themselves up to the potential significant

9   administrative expenses that could occur if the sale hadn't

10   closed.

11         So -- and additionally, Your Honor, we would point

12   out that courts have held that priority statutes, such as

13   503(b), are to be strictly construed.  We think that, you know,

14   503(b)(7) clearly says that a lease must be assumed and then

15   rejected.  Because this lease was never assumed, but merely

16   rejected, that McLain Partners cannot have an administrative

17   claim under 503(b)(7).

18         THE COURT:  Thank you.  Mr. Power?

19         MR. POWER:  Good afternoon, Your Honor.  Mark Power

20   from Hahn and Hessen, counsel to the Committee.

21         Your Honor, I'll be very brief.  The Committee filed

22   a joinder with the debtor in opposition to this motion.

23   There's just a couple of additional points we would make here.

24   There were no other bids on this lease.  There were no other

25   parties interested in it.  And, in fact the debtor would have

1  rejected this lease along with every other retail lease it had,

2  and every other loan origination office throughout the country

3  in August or September, but for the fact that IndyMac had

4  stepped forward.

5         The landlord got the benefit of the debtor paying the

6  rent during that time until the lease was actually rejected

7  earlier this year.  The sale order simply does not direct the

8  debtor to close.  It simply authorizes the debtor to close.

9  And there is nothing in the sale order that --

10         THE COURT:  Well, let me ask you -- I mean how --

11  give me the fact situation where, under your argument, the

12  Statute could make any sense in that there could be an

13  assumption followed by a rejection?

14         MR. POWER:  The --

15         THE COURT:  Because once you go to closing --

16         MR. POWER:  But there --

17         THE COURT:  -- how would there ever be a subsequent

18  rejection?

19         MR. POWER:  There wasn't a closing, Your Honor, so it

20  never occurred.  But if the order --

21         THE COURT:  Yeah, no, but I'm talking about -- the

22  way the Statute reads is if you have a rejection -- if you have

23  an assumption followed by a rejection, there's a -- I'm sorry.

24  If you have an assumption followed by a rejection, there's a

25  claim that has administrative priority up to a certain cap.

1 Your argument, and the debtors' argument is that's not

2 applicable here because, yes, there was an order authorizing

3 assumption, but there was no closing.  So, it's not a rejection

4 followed -- it's not assumption followed by a rejection, it's

5 just a rejection.

6        But if there had been a closing, title would have

7 transferred.  There would have been a provision of the order

8 waiving any further claims other than cure claims against the

9 debtor.  How could there then be a rejection that would have

10 given rise -- how could there ever then be a rejection that

11 would give rise to this administrative claim?

12        MR. POWER:  There -- there wouldn't be, Your Honor.

13 Had they --

14        THE COURT:  Well, then how -- then the Statute -- if

15 I read it your way, the -- that section of the Statute is

16 meaningless.

17        MR. POWER:  No, Your Honor.  I think the debtor and

18 the Committee both feel that had the deal closed, the lease

19 would have been assumed and assigned and the estate would have

20 had no further interest in that lease and could not then reject

21 that lease.  And this Court would have no power to reject the

22 lease since it wouldn't be property of the estate.

23        But in this case, the order authorized, did not

24 direct, the debtor to assume and assign the lease.  The closing

25 never occurred.  Therefore, the assumption and assignment never

1  occurred.  The debtor continued to extend post petition in

2  limbo this lease until earlier this year when the lease was

3  ultimately rejected.  There was never actually an assumption

4  and assignment of the lease.

5          THE COURT:  I -- I -- I hear where you're coming

6  from.  We're talking past each other.  My question is if I buy

7  your argument -- maybe Mr. Lunn can answer -- if I buy your

8  argument that what matters is the closing, not the Court

9  authorization, how does this -- how does this change to the law

10  that gives an administrative priority in the event there's an

11  assumption filed by a rejection?  How does that ever come into

12  play?  And if -- if it doesn't, then the Statute is

13  meaningless.  And usually we try to avoid interpreting statutes

14  in a way that makes their -- makes them irrelevant.

15          MR. LUNN:  I think, Your Honor --

16          THE COURT:  Do you understand where I'm coming from,

17  Mr. Lunn?

18          MR. LUNN:  I do.  And I think Your Honor needs to

19  open up his focus.  Here we're talking about a situation where

20  you have, you know, assumption and then potentially -- or

21  potential assumption and potential assignment.

22          Now given how the Bankruptcy Code was revised in 2005

23  where you have a hard 365(d)(4) deadline, either you -- either

24  you assume it -- these leases or you reject them.

25          In connection with that, I believe, Your Honor, was

1  the implication of 503(b)(7) that says if the debtor is

2  ultimately forced because it can't make a decision to assume or

3  reject a non-residential real property lease, ultimately

4  assumes it --

5          THE COURT:  Oh, all right.  So, you're drawing a

6  distinction between assumption and assumption and assignment?

7          MR. LUNN:  Yes, Your Honor.

8          THE COURT:  All right.  So, in this case, there was

9  no assumption and assignment because the assignment never

10 closed.

11         MR. LUNN:  Or the assumption, Your Honor.  We --

12         THE COURT:  Well --

13         MR. LUNN:  We're authorized --

14         THE COURT:  Now, wait a minute, because you can only

15 assign and assume the lease.  Isn't the argument --

16         MR. LUNN:  You have to --

17         THE COURT:  -- yes, there was an assumption, but the

18 assignment failed?  So, now we have -- there's either -- there

19 are three things that can happen, right?  Assumption.

20         MR. LUNN:  Right.

21         THE COURT:  Assumption and assignment.  Rejection.

22         MR. LUNN:  Correct.

23         THE COURT:  If I read assumption and assignment as

24 one thing, I buy your argument.

25             If I read assumption and assignment as sort of two

1  pieces, Mr. Ward's argument is the assumption occurred, the

2  assignment never closed, but the rejection still follows an

3  assumption with a failed assignment and he should have an admin

4  claim.

5          MR. LUNN:  Your Honor should be --

6          THE COURT:  And if I don't read it that way, then you

7  could assume and assign to a strawman and get a year extra on

8  your time to assume or reject and then decide, oh, well, you

9  know what, it didn't close, the assignment is void, the

10 assumption is void, now I reject and I have, in effect, gotten

11 the extra time on my time to assume and assign leases,

12 notwithstanding the limitations of 365(d)(4).

13         MR. LUNN:  I think Your Honor is right, you need to

14 read the assumption and the assignment together in order to

15 kick into the 503(b)(7) in this situation.  Here there was no

16 assumption and assignment.

17         THE COURT:  Here your argument would be it doesn't

18 matter because all it says is it authorizes.

19         MR. LUNN:  Right.  And --

20         THE COURT:  It never say it is hereby assumed and

21 assigned, it just says, you know what, there's a letter

22 agreement out there, the debtors are authorized to enter into

23 it and proceed to closing.

24         MR. LUNN:  Which is an --

25         THE COURT:  Closing never occurred.

1          MR. LUNN:  Which is an important point Your Honor

2     just raised because there was the license agreement that was in

3     place with IndyMac and the debtors while the sale was moving

4     towards closing, while IndyMac was in the premises and

5     operating.  And that license agreement was approved in

6     connection with the sale transaction so that we didn't run

7     afoul of any, you know, de facto assignments or someone being

8     in the property that shouldn't have been in the property.

9          So, the whole way the parties were acting was

10    consistent with that license agreement, Your Honor.

11          MR. POWER:  Your Honor, the other thing on the

12    strawman argument is that the adequate assurance of the

13    performance deals with that issue because basically at the time

14    of the assumption and the motion, that if there was truly not a

15    bona fide acquirer of the lease, then that issue would be dealt

16    with.

17          THE COURT:  Okay.  Mr. Ward, do you have a response?

18          MR. WARD:  Briefly, Your Honor.  For the record,

19    Chris Ward of Polsinelli.

20          I think Your Honor's reading this correctly.  If you

21    -- 503(b)(7), the words "assign" do not appear anywhere.  The

22    word "assume" appears in Section 503(b)(7).

23          And in this case, regardless of the authorized and

24    empowered language, or the -- the additional language pointed

25    out by debtors' counsel in their argument of the office leases

1  versus the office assets, the assumption and the later

2  assignment are dealt with in two different clauses in the

3  assumption order, Your Honor.  This lease was assumed to the

4  point that there was a licensing agreement for the assignee to

5  operate out of this lease after it was assumed by the debtors.

6        The fact that McLain Partners never responded to the

7  365(d)(4) motion, the motion to enforce, or the rejection order

8  is irrelevant because at that point, our lease had been assumed

9  and at this point, we're entitled to an administrative claim

10 under Section 503(b)(7).

11       Thank you, Your Honor.

12       THE COURT:  Look at Paragraph 5, "Neither the

13 execution or performance of the license agreement, nor the

14 assumption of the office leases by the debtors, nor the

15 assignment of the office leases to the purchasers."  It seems

16 to draw a distinction between assumption and assignment in this

17 case.  And clearly the assignment never closed.  But was there

18 an assumption?

19       And Paragraph 2 that you cite to me actually -- well,

20 it does -- it says, "The debtors are hereby authorized and

21 empowered to assume and assign the office leases and to sell,

22 transfer and convey the office assets."

23       Then it says, "Upon the closing of the sale of the

24 office assets" -- you say office leases is included in office

25 assets as a defined term?

1          MS. COYLE:  Yes, Your Honor.  In the first paragraph,

2   the Decretal Paragraph 1, it says that the debtors are

3   authorized -- that "The Court is authorizing the sale of

4   certain assets, the office assets, including the assumption and

5   assignment of certain real property leases and the sale of

6   furniture, fixtures and equipment located therein."

7          THE COURT:  I see, I see.  365(a) actually just says

8   assumption or rejection.  (c) talks about --

9                         (Pause)

10          MR. WARD:  Your Honor, if you look at Paragraph 4 of

11  the order where it talks about the closing date and the office

12  assets, only 105 and 363 are referenced.  365 is not referenced

13  in that provision of the order.

14                         (Pause)

15          THE COURT:  All right.  I'm going to grant the

16  motion.  I think there -- I think there was an assumption of

17  this lease by the debtor.  I think that's the only way to read

18  -- fairly read the order.  Otherwise, I think it does violence

19  to the limitations in 365(d)(4) that set a deadline by which

20  leases can be assumed or rejected.

21          Clearly the assumption didn't occur.  And I -- I

22  don't think that that's insignificant.  But if I -- I'm very

23  much worried about setting a precedent whereby the debtors

24  would have, in effect, many months' extension of time to

25  actually complete an assignment, and then could turn around and

1 -- if it didn't close for whatever reason, turn around and

2 reject the lease and put the -- put the landlord in a situation

3 as if basically a long non-consented to extension of the

4 365(d)(4) period had been granted.  And I don't think that's

5 appropriate.  I don't think it's a fair reading of the order.

6           The order's a little ambiguous.  Obviously I -- I

7 usually take the position, and it's correct, that -- you know,

8 that it's up to the debtor to do these things or not, and it's

9 the Court's job to either authorize it or not.  But I think a

10 fair reading of Paragraph 2, Paragraph 4, Paragraph 5 of the

11 order draw a distinction between assumption and assignment.

12 The assignment didn't occur, the assumption did occur.  It was

13 followed by a rejection and I'll overrule the objection and

14 grant the motion.

15           Mr. Ward, do you have an order?

16           MR. WARD:  Thank you, Your Honor.  The only change I

17 made to the order is I've crossed out the sixty-five six

18 twenty-five and made it sixty-one two fifty, which is the --

19 the deduction of the February rent.

20           THE COURT:  Yeah, Mr. Lunn?

21           MR. LUNN:  The only issue I think we would have in

22 the order, Your Honor, is that it requires immediate payment.

23 We would ask that the immediate payment be held until

24 confirmation of a plan and all the other administrative expense

25 claims can be made or paid at that time.  There's no -- there

1 has been no showing for immediate payment, Your Honor.

2          THE COURT:  Are you -- are you paying -- what

3 administrative claims are you holding off until confirmation

4 of?  You're -- you're paying your ordinary course business.

5          MR. LUNN:  We are paying our ordinary --

6          THE COURT:  You're paying your --

7          MR. LUNN:  But --

8          THE COURT:  You're paying your ordinary

9 administrative claims as they come due, correct?

10          MR. LUNN:  Correct, Your Honor.

11          THE COURT:  And I'm signing fee orders, those are

12 getting paid, subject to the hold-back.  What administrative

13 claims aren't you paying?

14          MR. LUNN:  There have been a few administrative claim

15 motions that have been filed.  We've been trying to work

16 through those, Your Honor.  Obviously to the extent an

17 agreement's been rejected and they're asking for administrative

18 expense claims, those types of claims we're asking that we wait

19 until confirmation of a plan.

20          THE COURT:  No, I'm going to require immediate

21 payment.  I think this provision is designed basically to give

22 landlords the benefit of their bargain for what would have been

23 (d)(3) rent or would have been cured if an assumption actually

24 had -- had occurred.  So, I'm going to require -- and by

25 immediate, I mean, you know, within, you know, a reasonable

1  amount of time.  But I am going to require --

2           MR. WARD:  The order has within ten days, Your Honor.

3           THE COURT:  Ten days is fine, yeah.

4           MR. LUNN:  Thank you, Your Honor.

5           MR. WARD:  May I approach?

6           THE COURT:  Yes.  Thank you, Mr. Ward.

7                     (Pause)

8           THE COURT:  Okey-doke.

9           MR. LUNN:  Your Honor, the next agenda item is Agenda

10 Item 54, and this was a motion filed by some class action

11 plaintiffs, the lead plaintiff is Patrick Manley.  We had --

12 the debtors had entered into negotiations with the class

13 plaintiffs' counsel and have come up with an agreed form of

14 order.

15          Essentially, Your Honor, by way of a brief

16 background, the debtors and the class plaintiffs had entered

17 into a settlement agreement on or about July 17th of 2007.

18 That settlement agreement was never presented to the District

19 Court for the Southern District of New York at a fairness

20 hearing, although the settlement agreement had been executed.

21          The relief from stay motion essentially asks and the

22 debtors are agreeable to allowing the plaintiffs to go forward

23 with the fairness hearing.  However, the settlement agreement

24 needs to be revised to reflect certain issues as a result of

25 the commencement of the Chapter 11 cases.  As a result, we came

1  up with an agreed form of order, which I have a copy and if I

2  may approach.

3          THE COURT:  Yes.  Thank you.

4          MR. LUNN:  Essentially, Your Honor, it grants the

5  motion in part and allows the plaintiffs to present the

6  settlement agreement at a fairness hearing, but only after the

7  debtors and the parties have revised the settlement agreement

8  in terms that are satisfactory to the parties.

9          It also preserves the debtors' and committee's rights

10 with respect to the class proof of claim.  And additionally

11 says that nothing in the order shall be deemed to alter the

12 classification of the claim from a general unsecured claim to

13 something different.

14         The form of order was shared with the Committee and

15 the Committee did not have any comments to the proposed form --

16 proposed form of order.

17         THE COURT:  I have one -- one nit.

18         MR. LUNN:  Yes?

19         THE COURT:  I don't like to -- top of Page 2, it

20 says, "Ordered that the fairness hearing before the District

21 Court shall not be scheduled."  I don't like to tell District

22 Court judges what to do, generally speaking.  Can we -- can we

23 say that the parties shall not request the fairness hearing to

24 be scheduled unless and until?

25         MR. LUNN:  That -- that was --

1          THE COURT:  I don't mind enjoining people, it's

2  judges I try to --

3          MR. LUNN:  That was the intent.  The intent, Your

4  Honor, was not to go forward with the hearing until we were in

5  agreement.

6          THE COURT:  All right.

7          MR. LUNN:  So --

8          THE COURT:  I'm just going to tweak this a little

9  bit, if that's all right.

10          MR. LUNN:  That is fine, Your Honor.

11                    (Pause)

12          THE COURT:  All right.  I'll sign it as revised.

13          MR. LUNN:  Thank you, Your Honor.  The next agenda

14  item is Agenda Item 55, and it's the debtors' fourth omnibus

15  objection, and I will cede the podium to my colleague, Mr.

16  Grow.

17          THE COURT:  All right.

18          MR. GROW:  Good morning, Your Honor.  Nathan Grow of

19  Young Conaway Stargatt and Taylor on behalf of the debtors.

20          I'm going to address Agenda Items 55, 56, and 57,

21  which are the fourth, fifth and sixth omnibus objections.  I

22  realize it's been a long morning on the bench, so I'll try to

23  talk as quickly as possible.

24          THE COURT:  Oh, no.  Take your time.

25          MR. GROW:  Okay.  Matter Number 55 on the agenda is

1  the debtors' fourth omnibus non-substantive objection to

2  claims.  And this was heard at the last omnibus hearing and was

3  adjourned with respect to one claim.  The debtors objected to a

4  proof of claim filed by Leslie L. Crawley, Junior because Mr.

5  Crawley asserted an equity interest.  Mr. Crawley responded to

6  the objection stating that he wanted extra time to confer with

7  an attorney, and he requested that the matter be adjourned.

8  The debtors agreed to adjourn the matter until today's hearing.

9        And since the last hearing, I've reached out to Mr.

10  Crawley and talked to him and his wife several times.  I

11  explained the nature of our objection and told them that our

12  objection will have no effect on their equity interest.  It's

13  only an objection as to the proof of claim that they filed.

14  They have represented to me that they have talked with an

15  attorney and that they're okay with the objection going

16  forward.

17        So, the debtors, therefore, request that the Court

18  enter a second order sustaining the fourth omnibus objection.

19  I have a proposed form of order that I can hand up.

20        THE COURT:  Okay.

21        MR. GROW:  May I approach?

22        THE COURT:  Yes.  Based on your representation, the

23  Court will approve the order.

24        MR. GROW:  Okay.  At the same time, I'm going to hand

25  up a revised fifth omnibus objection order.

1          THE COURT:  All right.  Thank you.

2          MR. GROW:  Okay.  Moving on to Matter Number 56,

3   which is the debtors' fifth omnibus non-substantive objection

4   to claims.  Unless Your Honor has any questions, I will walk

5   through the fifth omnibus objection quickly to describe it.

6          THE COURT:  Hang on.  Let me look at my notes.

7               (Pause)

8          THE COURT:  I just have one -- one clarification,

9   which is with Exhibit D on wrong debtor claims.

10         MR. GROW:  Yes.

11         THE COURT:  It states that claims which are filed

12  against either the wrong debtor or were filed against either

13  the wrong debtor or were filed without a case number, debtors

14  have examined their books and records and determined

15  appropriate case number for each claim.

16             In the exhibit, you provide claim number, date filed,

17  case number, claim amount for each objectional claim.  But then

18  the new case -- however, in the column where the new case

19  number is assigned, you don't restate those provisions.  So,

20  all I need is a representation to you that the only thing

21  you're changing in connection with Exhibit D is the debtor,

22  you're not changing anything else to do with the claim.

23         MR. GROW:  That's correct.  We're only requesting

24  that a -- in some cases they did not -- the claimants did not

25  assert a claim number, and we're assigning one.  In some cases,

1  they asserted --

2           THE COURT:  And you're changing it.

3           MR. GROW:  -- a claim against the wrong debtor, and

4  we're changing it.

5           THE COURT:  But all you're changing is the debtor

6  number or case number.

7           MR. GROW:  That's correct.

8           THE COURT:  All right.

9           MR. GROW:  That's correct.

10          THE COURT:  Fine.  I don't have any questions, and if

11 you just -- you don't need to go through the objection other

12 than to --

13          MR. GROW:  Okay.

14          THE COURT:  If you have revisions to the order,

15 that'd be fine.

16          MR. GROW:  Well, we can jump to the responses.  We

17 have some --

18          THE COURT:  Okay.

19          MR. GROW:  -- some notes to address the responses.

20 There were 48 responses filed in connection with the fifth

21 objection.  To address these, I've grouped them together

22 according to the issues that they address.

23          THE COURT:  Okay.

24          MR. GROW:  First, there was one response to -- to an

25 objection to a claim that was listed in Exhibit A.  Exhibit A

1 is duplicate claims.  The response was filed by Ellen Thomas.

2 The debtors objected to the proof of claim of Ellen Thomas on

3 the basis that it was amended by a later filed claim.

4        Mrs. Thomas said in her response, "I have no

5 objection to expunging -- to the expunging of Claim 2508.

6 However, I am requesting that the Court issue an immediate

7 judgment in the surviving claim, number six one fifty-three

8 (sic) in the amount of $5,706.04."

9        The debtors obviously believe that no judgment should

10 be issued with respect to the claim at this time.  To the

11 extent that the claim is eventually allowed, it will be

12 addressed in the debtors' plan of reorganization.

13        Therefore, the debtors request that the objection to

14 Ms. Thomas's claim be sustained, notwithstanding the response.

15        THE COURT:  She's on Exhibit A?

16        MR. GROW:  I'm sorry.  It's Exhibit B, I misspoke.

17        THE COURT:  Okay.

18        MR. GROW:  Amended.

19        THE COURT:  Amended claims.  So, basically her

20 objection is that, fine, but she -- she's opposed to the fact

21 that you reserve the right to object to the claim on any

22 further basis.

23        MR. GROW:  Correct.

24        THE COURT:  And I'll overrule that objection.

25        MR. GROW:  You'll overrule our objection or her --

1          THE COURT:  No, no, her response.

2          MR. GROW:  Okay.

3          THE COURT:  Sorry.

4          MR. GROW:  Okay.  Moving on, we --

5          THE COURT:  Tricky.  Thank you for correcting the

6  record.

7                         (Laughter)

8          MR. GROW:  I get it mixed up all the time.

9          THE COURT:  Yeah.

10          MR. GROW:  Moving on to --

11          THE COURT:  You win.

12                         (Laughter)

13          MR. GROW:  Okay.  We -- we also received 25 responses

14  that were filed by claimants who asserted claims on account of

15  their equity interest.  And none of these responses offer any

16  valid arguments to suggest that these claims should not be

17  expunged.

18          To the extent that these responses include claims or

19  additional accusations based on something other than the equity

20  interest asserted in the proof of claim, the debtors submit

21  that these additional claims and accusations should be

22  disregarded because they were not included in the proofs of

23  claim.  All of the proofs of claim that are included in Exhibit

24  C were filed only on the basis of an equity interest.

25          THE COURT:  All right.  Well, were there additional

1   allegations in any of the responses that went beyond simply

2   asserting an equity interest?

3           MR. GROW:  Yes, Your Honor.  There were some that

4   asserted some --

5           THE COURT:  Well, how is that?

6           MR. GROW:  -- additional allegations.

7           THE COURT:  At that point, isn't that a substantive

8   objection as opposed to a non-substantive objection?  Aren't

9   they allowed to supplement?  I guess that's the question.  Are

10  they allowed to supplement what's behind their claim?  Or do I

11  rely solely on the proof of claim?

12          MR. GROW:  For the purposes of this objection, we've

13  relied only on their proof of claim that was filed -- on the

14  face of it, only on the basis of their equity interest.

15          THE COURT:  Um-hum.

16          MR. GROW:  To the extent that they want to supplement

17  that and allege something like fraud or something like that, we

18  would argue that that's not supplementing, that's alleging a

19  new claim.  So, we believe that it's appropriate to expunge

20  these through a non-substantive objection.

21              In any event, to the extent that they want to

22  supplement their claims, they need to do so by filing something

23  with our claims agent, and not simply a response to our

24  objection.

25          THE COURT:  I don't know if I agree about that.  Hang

1  on, let me -- one minute.

2                      (Pause)

3          THE COURT:  All right.  Because this is a non-

4  substantive objection, I'll sustain the claim objection and

5  expunge those equity interest claims where no additional bases

6  for supporting it as a claim, as opposed to an interest, has

7  been asserted in their response.  But if any additional

8  information or allegations that would support its

9  characterization as a claim, rather than just an interest were

10 asserted, then I'm going to overrule the -- your claim

11 objection, sustain the response without prejudice to your right

12 to object to it on a substantive basis.

13         MR. GROW:  Okay.

14         THE COURT:  All right?  I'm concerned about the

15 limited inquiry that goes on in connection with a non-

16 substantive objection.  For example, you know, I have the

17 responses but I don't have, generally speaking, have the proofs

18 of claim, et cetera.  So, I am going to -- you'll have to --

19 you'll have to go through -- I'll accept the debtors'

20 representation.  So, I'm going to partially overrule and

21 partially --

22         MR. GROW:  Okay.

23         THE COURT:   -- sustain the responses to the claim

24 objection.

25         MR. GROW:  Okay.

1        THE COURT:  If -- if that's clear.

2        MR. GROW:  Sure.  And what -- and we'll have to

3 adjust our exhibit attached to the order, I suppose.

4        THE COURT:  Of course.

5        MR. GROW:  One concern, though, going forward, Your

6 Honor, is that we have hundreds of claims that were filed

7 solely on behalf of an equity interest.  And our next claim

8 objection -- the 9th, which has already been filed, contains

9 fifteen hundred of these.  And if the -- if the claimants are

10 allowed to, after the bar date, go back and basically submit a

11 new claim by, you know, finding fraud, where before they only

12 filed a proof of claim alleging an equity interest, we're

13 looking at a floodgate problem.

14        THE COURT:  Oh, well.  It's a claims process in a

15 very large case.  You're talking about individuals who are not

16 versed in the Bankruptcy Code.  You could avoid that, I

17 suppose, to a certain extent by doing -- making your claim

18 substantive versus non-substantive.  But I think the reality is

19 with any claim objection process, you continue to narrow what

20 you have to take care of.  So, if you file fifteen hundred and

21 you get 400 responses, well, you just got rid of eleven

22 hundred.  So, then you move on.

23        MR. GROW:  Okay.

24        THE COURT:  There's only so much I can do for you.

25 People have a right to assert their claims, and I don't know if

1  there are any allegations of fraud or not, but -- that have any

2  substance.  But if they do, and it's not subject to the

3  limitations on -- I want to say 503(b)(3), I don't know.  Help

4  me out.  No one knows.

5           UNIDENTIFIED ATTORNEY:  510.

6           THE COURT:  510, thank you.  It's 510.  If they're

7  not subject to the limitations of 510, then -- then they're --

8  they have a claim.

9           MR. GROW:  Okay.  Fair enough.  Moving on --

10          THE COURT:  They'll keep you busy.

11          MR. GROW:  There were two claimants who asserted

12  wrong debtor claims that filed responses that, in the debtors'

13  judgment, are not responses at all.

14          In the response labeled as letter D in the chart

15  attached to the revised agenda, it's Exhibit D --

16          THE COURT:  I'll get it, hang on.  Exhibit C --

17          MR. GROW:  Exhibit C.

18          THE COURT:   -- D -- Gena Goff?

19          MR. GROW:  Response of Gena Goff.  She stated in her

20  response, "I am not sure why I am receiving a new case number."

21  Ms. Goff failed to include a case number in her proof of claim

22  form.  The debtors reviewed their books and records and

23  determined the appropriate debtor that Ms. Goff's claim should

24  be attributed to and seek only to assign her claim to this

25  case.

1          THE COURT:  All right.  The debtors' objection to Ms.

2   Goff's claim will be sustained.

3          MR. GROW:  Okay.  And then if I could also direct the

4   Court's attention to the response labeled as double B in the

5   agenda, Ms. Jan Ramusseen, and her response to our objection to

6   her claim.  Simply reasserted the basis for her claim, but

7   offered no objection to the debtors' reassigning that claim to

8   a new case number.  The debtors requested that the objection

9   with respect to her claim be sustained, irrespective of her

10  response.

11          THE COURT:  What letter is she, BB?

12          MR. GROW:  Double B.

13                      (Pause)

14          THE COURT:  This is -- this is her response which is

15  -- you basically just re-included the proof of claim?

16          MR. GROW:  Yes, Your Honor.

17          THE COURT:  It's not a -- okay.

18          MR. GROW:  And the notice we sent to her, starting on

19  the third page, reasserts the basis.

20          THE COURT:  And then she just reattaches -- all

21  right.  And all you're doing is reassigning her.

22          MR. GROW:  That's right.  We don't -- take no

23  position as to --

24          THE COURT:  All right.  Her --

25          MR. GROW:  -- the substance of her claim that she

1  spells out here.

2          THE COURT:  I'll sustain the debtors' objection to

3  her claim.

4          MR. GROW:  Okay.  One other small adjustment that

5  we've made to Exhibit D, which is the wrong debtor claims, the

6  fifth omnibus objection that I'd like to point out to the Court

7  quickly is that the debtors in the fifth objection requested

8  that Oracle's claim, which is flagged on the revised order that

9  I gave you.

10          THE COURT: Okay.

11          MR. GROW:  After -- after talking with counsel to

12  Oracle and reviewing the contract which forms the basis of this

13  claim, the debtors have determined that the claim should be

14  reassigned to Case Number 07-11048, instead of 07-11051, which

15  is what we asserted in the as-filed version of the objection.

16          THE COURT: Okay.

17          MR. GROW:  And --

18          THE COURT:  Any objection from Oracle?

19          MR. GROW: No, Oracle is in agreement with us, they --

20          THE COURT:  Okay.

21          MR. GROW:  The debtors would like to reserve their

22  right to object to Oracle's claim on any grounds and counsel to

23  Oracle asked that I state for the record that Oracle reserves

24  all rights and any applicable defenses that it may have related

25  to objections put forth by the debtors.

1          THE COURT:  Okay.

2          MR. GROW:   And moving on, we had several objections

3 -- several responses filed to our objection to claims that were

4 filed after the bar date.  These are claims that are included

5 in Exhibit G of the fifth omnibus objection.  The responses

6 include Agenda Items A, E, N, O, Q, R, X, Y, double A, double

7 E, double F and double G.  And the debtors wish to adjourn

8 their objection with respect to these claims until the hearing

9 on June 11th.

10          THE COURT:  Okay.

11          MR. GROW:  The only response related to a late filed

12 claim on which the debtors wish to go forward today is the

13 response of River Park Executive Suites, which is listed as

14 letter Z on the agenda.  And River Park has filed a motion --

15          THE COURT:  I was going to say, aren't they a movant?

16          MR. GROW:  That's right.  So, that will be addressed

17 when we get to that item on the agenda.

18          THE COURT:  Okay.

19          MR. GROW:  Okay.  I'd also like to quickly address

20 three informal responses that the debtors received listed as

21 letters double O, double P, and double Q.  After discussions

22 with counsel to GMAC and Ron Bergum A/K/A McDonald Hopkins, the

23 debtors have decided to withdrawal the objection with respect

24 to the proofs of claim filed by these parties.

25          And additionally, counsel to Crye-Leike Relocation

1  Services contacted the debtors to say that they were

2  withdrawing Crye-Leike's claim.  And, therefore, the debtors

3  wish to withdrawal their objection to Crye-Leike's claim

4  because the objection is now moot.

5        THE COURT:  All right.

6        MR. GROW:  And the debtors would like to reserve

7  their rights to object in the future to the claims filed by

8  GMAC and Ron Bergum A/K/A McDonald Hopkins, LLC on any grounds.

9  However, not as a late filed claim --

10        THE COURT:  Right.

11        MR. GROW:  -- to Ron Bergum.  Okay.  So, that -- that

12  does it for the fifth omnibus objection.  Moving on to --

13        THE COURT:  All right.  Subject to the changes we

14  discussed in connection with the equity claims, the Court will

15  approve your order.  And just submit it under certification of

16  counsel or if you have the ability to do it now, that's fine,

17  however you want to proceed.

18        MR. GROW:  I guess what we could do now is just cross

19  off on the exhibit.  Maybe we could just withdrawal Exhibit C

20  from the proposed form of order, and then submit that under

21  certification of counsel?

22        THE COURT:  Well, let's keep it all in one.

23        MR. GROW:  All in one?

24        THE COURT:  Yes.

25        MR. GROW:  Okay.  So, if you'd hand it back, I can go

1  through my notes and cross out.

2            THE COURT:  There it is.

3                      (Pause)

4            MR. GROW:  Okay.  I've handed up a revised form of

5  order for the sixth omnibus objection.  This is a substantive

6  objection.  Through the sixth omnibus objection, the debtors

7  have requested that the Court enter an order disallowing in

8  full or in part reassigning, reclassifying and/or affixing a

9  value to certain disputed claims.

10           I could walk through the nine categories for the

11 Court, or we could just jump right to the responses we've

12 received.

13           THE COURT:  Okay.  I do have some concerns, but maybe

14 we can -- it's possible you're -- you'll address them first.

15 So, why don't we go through any changes and responses you have

16 and then we can turn to my concerns.

17           MR. GROW:  Okay.  Talk about the responses?  There

18 were only four responses received to the sixth objection.  The

19 debtors wish to adjourn the objection with respect to the

20 claims filed by -- sorry -- with respect to the claims of

21 Christine Conklin and Matthew and Melanie Hernandez.

22           The agenda lists the objection to the proof of claim

23 filed by Matthew and Melanie Hernandez as going forward.  I

24 apologize, but this is a typo.  The debtors intended to adjourn

25 this matter to the hearing on June 11th and have noted the same

1   in the revised form of order.

2            THE COURT:  They're not here, are they?

3            MR. GROW:  No.

4            THE COURT:  Which -- which exhibit were they on, do

5   you know?  Conklin and Hernandez.

6            MR. GROW:  I'll tell you in one second.  Conklin was

7   on 6C, a reduced claim.  Matthew and Melanie Hernandez were on

8   6A, a no liability claim.

9            THE COURT:  Okay.

10           MR. GROW:  Okay.  The debtors --

11           THE COURT:  Wait a minute.  I'm sorry.  Exhibit A?

12           MR. GROW:  The Hernandezes were on Exhibit A, yes.

13           THE COURT:  4090?

14           MR. GROW:  Right.

15                            (Pause)

16           MR. GROW:  I'm sorry.  You're not seeing their

17   response or their -- their claim?

18           THE COURT:  4090?

19           MR. GROW:  Oh, 4090 is the docket number.  The claim

20   number is 9654.

21           THE COURT:  You're killing me.

22           MR. GROW:  Sorry about that.

23           THE COURT:  What number?  Pick a number and stick

24   with it, will you?

25           MR. GROW:  Nine -- 9654.

1          THE COURT:  9654, all right.  I got you.  All right.

2  So, you're moving that one along, is that correct?  You're

3  continuing that one?

4          MR. GROW:  That's correct, adjourning.

5          THE COURT:  Okay.  I got it.  And I'm sorry, you said

6  Ms. Conklin was on Exhibit C, is that correct?

7          MR. GROW:  That's right.

8          THE COURT:  Very good.

9          MR. GROW:  Okay.  The debtors also received a

10  response from Countrywide.  The debtors objected to several

11  claims filed by Countrywide because Countrywide submitted

12  several identical claims against multiple debtors.  Countrywide

13  filed a response, not contesting expungement of their claims,

14  but rather requesting that the order forbid the debtors from

15  later objecting to Countrywide's surviving claim as alleged

16  against the wrong debtor.  So, the debtors have agreed to add

17  this provision and if include -- include it in the revised form

18  of order that I handed it up to the Court.

19          THE COURT:  All right.  So, it's resolved.

20          MR. GROW:  Resolved.

21          THE COURT:  Okay.

22          MR. GROW:  The debtors reserve the right to object to

23  Countrywide's surviving claim on any other grounds.

24          THE COURT:  Other than wrong debtor.

25          MR. GROW:  Correct.

1              THE COURT:  All right.

2              MR. GROW:  The last response was filed by James

3  Marinaro.  Mr. Marinaro does not agree with the treatment of

4  his claim proposed by the debtors in the sixth omnibus

5  objection.  In the sixth omnibus objection, the debtors request

6  that the dollar amount of his claim be set at $1,305.44.  Mr.

7  Marinaro's response states, "I am putting in a claim for the

8  amount of thirteen hundred five dollars and forty-four cents."

9  So, we -- we are in agreement with him.

10             THE COURT:  Which -- which -- you -- where was he?

11 What exhibit?  Is that a reduced claim exhibit, C?

12             MR. GROW:  It was G, undetermined value.

13             THE COURT:  Oh, undetermined.

14             MR. GROW:  These were --

15             THE COURT:  So, he's liquidated it in an amount of

16 thirteen hundred, and you're okay with that?

17             MR. GROW:  Well, he -- he didn't assert an amount in

18 his proof of claim.

19             THE COURT:  Right.

20             MR. GROW:  And we filed an objection saying it should

21 be fixed at thirteen-o-five forty-four.  His response says it

22 should be thirty-o-five forty-four.

23             THE COURT:  Oh, all right.

24             MR. GROW:  We're saying -- we're saying the same

25 thing.

1          THE COURT:  So, he's -- he's agreed with you.

2          MR. GROW:  Correct.

3          THE COURT:  Somebody's agreed.  Okay.  Got it.

4          MR. GROW:  Okay.  That comes to the end of our

5  responses.

6          THE COURT:  Okay.  I have some questions.  And we'll

7  just go through them seriatim:

8          Exhibit A, no liability claims.  The -- you say,

9  quote, "Debtors have determined that they are not liable in

10  whole or in part."

11          And then you seek to expunge the claims in their

12  entirety.  So, which is it?

13          MR. GROW:  Debtors are --

14          THE COURT:  If you're -- if you're liable in part,

15  then I can't expunge the claim in its entirety.  So, did you

16  determine that you were not liable in whole?

17          MR. GROW:  We determined that we are not liable

18  either in whole or in part.  We are not liable in whole.  We

19  are not liable in part.

20          THE COURT:  And so it's disjunctive, right?

21          MR. GROW:  Yes.

22          THE COURT:  All right.  So, for every claim asserted,

23  the debtors' position is they're not liable, period.

24          MR. GROW:  Correct.

25          THE COURT:  All right.

1           MR. GROW:  Sorry, that's --

2           THE COURT:  That's all right.

3           MR. GROW:  -- a little confusing.

4           THE COURT:  Just -- you know, I read these things, or

5   somebody reads these things.  All right.

6           I'm looking at a -- at some of these claims, one of

7   which you've -- one of which you've already agreed to push.

8   But the other one is Columbia National, Inc., which is Claim

9   4031, and --

10          MR. GROW:  Are you still on Exhibit A?

11          THE COURT:  Yes, and Debra Mills, which is Claim

12  2743, both of which have extensive attachments asserting why

13  the claim should be granted.  And I'm -- I just -- the only

14  allegation I see that you counter with is, "No evidence of

15  wrongdoing or improper conduct.  All policies, procedures and

16  guidelines were followed."

17          And I think based solely on that, I can't grant the

18  claim objection.  It's not sufficient to overcome the prima

19  facie validity of the claims.  I -- I -- I can continue it

20  without prejudice to allow you to supplement the record at the

21  next hearing.

22          MR. GROW:  That sounds like a good idea.

23          THE COURT:  Okay.

24          MR. GROW:  We have our general counsel available,

25  although I'm not sure he's on the phone right now. He had to --

1 he had to step away.

2          THE COURT:  Well, I don't want to hear him on the

3 phone.  Yeah, let's do it in person because it may take

4 testimony.

5          MR. GROW:  Okay.

6          THE COURT:  So, in connection with Claims 4031 and

7 2743, we'll continue them to an appropriate hearing to allow

8 you to supplement the record.

9          But I think based on the allegations as they are now,

10 I don't think they overcome the prima facie validity of the

11 claim.

12          MR. GROW:  I'm sorry.  You said the first one is

13 4031?

14          THE COURT:  4031 and 2743.  I had the same issue with

15 9654, but you've already agreed to --

16          MR. GROW:  Okay.  So, we can --

17          THE COURT:  June 11th is fine.  Whatever date you

18 want.  Is that the next hearing?

19          UNIDENTIFIED ATTORNEY:  Yes.  Yes, Your Honor.

20          THE COURT:  Okay.  You can -- if you want to

21 supplement with a declaration prior to the hearing, that may be

22 sufficient.

23          MR. GROW:  Okay.  And should we do the same thing

24 with the proposed form of order and cross them out?  Same thing

25 that we're doing with the fifth?

1          THE COURT:  Yeah.

2          MR. GROW:  Okay.

3          THE COURT:  Claim 5205, same exhibit, which is Hardin

4  County in Kenton, Ohio.  And it's true, it says that there's

5  nothing -- the proof of claim or the -- that says that -- proof

6  of claim at the time the case filed is nothing at this time,

7  okay.  But the letter attached references a cause of -- it

8  looks like a cause of action.  United States of America versus

9  American Home Mortgage, with a case number that -- I can't

10 quite figure out.  Were they -- do you think they're -- I mean

11 I guess my question is -- do you have the claim in front of

12 you?

13         MR. GROW:  I don't -- I don't think I do.

14         THE COURT:  Claim 5205.  Bizarre in that it's a claim

15 of zero for taxes, but then it references on the letterhead of

16 the Hardin County prosecuting attorney a re line that -- I -- I

17 guess is meant to be this case number, but it's captioned

18 United States of America versus American Home Mortgage

19 Holdings, Inc.  Are you aware of any such case?

20         MR. GROW:  Um, I -- I don't have any knowledge of it

21 right now.

22         THE COURT:  I'll tell you what --

23         MR. GROW:  We could -- could adjourn it --

24         THE COURT:  Okay.  Let's kick -- let's just adjourn

25 it and maybe you can investigate.

1                          (Pause)

2              THE COURT:   Here's a series of claims filed by the

3    Souderton Area School District which states that they assert

4    that, "The debtors have collected in trust and hold in escrow

5    on their behalf certain school real estate taxes from residents

6    in its district which have not been remitted to claimant as

7    required by law."

8              I assume this is in connection with servicing

9    mortgages for people where you -- you have to -- the servicer

10   is required to collect -- it's usually -- actually not required

11   to, but the servicer collects on a monthly basis real estate

12   taxes and then pays them directly in order to avoid the

13   attachment of a lien so to -- which would trump the mortgage.

14   So, it's really protecting the mortgage holder.

15             Okay.  The question is assume you've escrowed the

16   taxes, assume you haven't paid the taxes, why does that mean

17   that you're not liable for the taxes?  And I think the third

18   assumption, assume you were supposed to escrow -- and here's

19   where it really -- where the rubber hits the road.  Assume you

20   were suppose to escrow the taxes, you didn't escrow the taxes,

21   there's no money now to pay the Souderton Area School District,

22   wherever that is, is the debtor liable for that?

23             MR. GROW:  Your Honor --

24             THE COURT:  I don't know the answer.

25             MR. GROW:  I don't want to represent on the record

1 that we already have escrowed and paid these because with all

2 these hundreds of claims, I can't tell you with exact certainty

3 that that's what happened.

4          THE COURT:  I expect you did, but I guess my -- my

5 issue is one of -- even if you have, and they haven't been

6 paid, are you -- are you, nonetheless, liable for these

7 payments?  I don't know enough about how it works or what the

8 operative law is in whatever jurisdiction the Souderton Area

9 School District is.  So, all I'm really asking for is more

10 information on the legal position that you're not liable.

11          MR. GROW:  Okay.

12          THE COURT:  I have claim numbers for you.

13          MR. GROW:  I think I see them all on here.  They're

14 all -- they're all grouped together.

15          THE COURT:  Right, it's 5868 --

16          MR. GROW:  Everything --

17          THE COURT:  It's 5868, 5869, 5870, 5917 through 19,

18 5921 through twenty-three.

19          MR. GROW:  Okay.  So, what -- what is sufficient for

20 us to provide if we --

21          THE COURT:  Well, it may be a legal argument.  I mean

22 it may simply be a legal argument as to the fact that a

23 servicer is not liable to the tax district.

24          MR. GROW:  Once it's escrowed.

25          THE COURT:  Well, period.  I mean, you know, I'm not

1  sure -- you know, I pay a mortgage every month, it's got real

2  estate taxes in it.  I don't think -- I won't identify my

3  servicer because they may be in the room.  I don't think my

4  servicer is liable to New Castle County if the servicer just

5  doesn't make the payments.  But maybe they are, I don't know.

6  I know I'm liable one way or the other, but the question is the

7  servicer.

8            MR. GROW:  Okay.  We can look into that.

9            THE COURT:  That --

10           MR. GROW:  Would it also be sufficient if we could

11 state either through a declaration or on the record through a

12 fact witness --

13           THE COURT:  That you've made the payment?

14           MR. GROW:  -- that the payments have been made?

15 Actually made.

16           THE COURT:  Im not sure because if they've been

17 escrowed and you've wrongfully refused to --

18           MR. GROW:  No, but I mean not just escrowed, but

19 already --

20           THE COURT:  Well, if they're paid, they're paid,

21 yeah.  That -- that's a satisfied claim, that's a different

22 basis.  But I mean they're -- you know, all people are entitled

23 to is to get paid.

24           MR. GROW:  Okay.

25           THE COURT:  I didn't have any issues with Exhibit B

1  or C or D or E or F or G -- uh, that's it.  I don't have any

2  other questions.

3          So, with those changes, I'll sustain the objection.

4          MR. GROW:  Okay.  And I if could approach and take

5  the form of order back, we can work on marking it up that we

6  need to do it.

7          THE COURT:  All right.

8                       (Pause)

9          THE COURT:  And that takes us, I think, to Mr.

10 Minuti's motion, is that correct?

11         MR. MINUTI:  That's correct, Your Honor.  I believe

12 this is Item Number 58 on the agenda.  Is the Court right?

13         THE COURT:  Yup.

14         MR. MINUTI:  Thank you, Your Honor.  Your Honor, for

15 the record, Mark Minuti of Saul Ewing.  I'm here today for

16 River Park Executive Suites.

17         This is our motion for leave to file a late claim,

18 and this ties in with the fifth omnibus objection.  We did

19 object to that -- or did respond to that objection, as well.

20         At the outset, I want to thank the Court for

21 approving our motion for expedited consideration.  I think it

22 makes sense to take these together --

23         THE COURT:  Absolutely.

24         MR. MINUTI:  -- and we appreciate the Court doing

25 that.

1              In support of the motion, Your Honor, we are going to

2    rely on the two affidavits that are attached to our motion.

3    That is the affidavit of William Winfield (phonetic) who was

4    counsel to River Park, as well as the affidavit of Angela

5    Cooper, who was his legal assistant.  I've spoken to Mr. Power

6    about this, and he is fine, Your Honor, with us relying on the

7    affidavits without live testimony.  Assuming Your Honor is okay

8    with that, I am prepared to proceed.  If Your Honor would

9    prefer to have live testimony, we would look to then continue

10   the motion to bring the witnesses in.

11             THE COURT:  If there's no objection to the

12   affidavits, I have no objection.  They'll be admitted without

13   objection.

14             MR. MINUTI:  Thank you, Your Honor.  Turning to the

15   facts, Your Honor, I think the facts are pretty -- are really

16   not in dispute.  River Park and the debtor, American Home

17   Mortgage Corporation, are parties to a July 5th, 2007 office

18   lease.  The debtor breached that lease and vacated the property

19   prior to the petition date.

20             On October 2nd, 2007, and I should point out, Your --

21   I should point out, Your Honor, most of this comes directly

22   from the affidavit.

23             THE COURT:  I see it.

24             MR. MINUTI:  On October 2nd, 2007, before the bar

25   date was even set, Mr. Winfield, on behalf of River Park, and

1   Ms. Cooper prepared a proof of claim.  Mr. Winfield signed the

2   proof of claim and instructed Mrs. Cooper to file the proof of

3   claim prior to the bar date.

4          The claim is attached, Your Honor, to the affidavits.

5   And as you will see, it's a fairly straightforward lease

6   rejection damage claim of one year's rent and charges, which

7   equals $81,406.

8          Ms. Cooper and Mr. Winfield were very busy at the

9   time, Your Honor, with their caseload.  And Ms. Cooper

10  apparently inadvertently placed the claim in the file and

11  simply did not file it by the January 11, 2008 bar date that

12  Your Honor had set in these cases.

13         Sometime thereafter she discovered, Your Honor, it

14  was in early March, she discovered that the claim had not been

15  filed; she sent it in.  And, therefore, the claim was filed on

16  March 3, 2008 which, of course, is less than two months after

17  the bar date.

18         THE COURT:  Um-hum.

19         MR. MINUTI:  In late April, early May, the debtor

20  filed and served its fifth omnibus objection.  Mr. Winfield

21  received that, realized that the debtor had objected to the

22  claim on the basis that it was late.  He realized at that time

23  that the claim had, in fact, been filed late, and we filed our

24  motion which we appear before Your Honor today.

25         The sole basis of the objection at this point, Your

1  Honor, to the claim by the debtor is that the claim was late.

2  As I said, we immediately prepared and filed the present

3  motion.  The only other fact, Your Honor, I can point out

4  before I move to argument, and Your Honor's no doubt aware of

5  this, there's been no plan or disclosure statement yet filed in

6  this case, and I think that's important, and we'll tie it to

7  the argument.

8       Well, Your Honor is certainly well aware of the

9  standard that governs a motion like this is the excusable

10 neglect standard that was highlighted in the <u>Pioneer Investment</u>

11 <u>Services</u> Supreme Court case.  There is a four-prong test

12 consisting of the following factors:  Number one, the danger of

13 prejudice to the debtor.  Number two, the length of the delay

14 and impact upon the case.  Number three, the reasons for the

15 delay and whether it was in control of the movant.  And finally

16 whether the movant was acting in bad faith.

17      At the outset, I want to point out, and it's

18 important, Your Honor, to take this into consideration.  Unlike

19 the 2nd Circuit and some of the cases that the Committee has

20 cited in their pleading, the 3rd Circuit does not take such a

21 hardline view of the excusable neglect standard.  And -- and

22 when you look at the 2nd Circuit cases, they even use that

23 term.  They take a hardline view.  That's not the case in the

24 3rd Circuit, Your Honor.  The 3rd Circuit, I think, has a much

25 more liberal approach to excusable neglect in the context of

1  late filed claims.  Unlike the 3rd Circuit, which places

2  primary emphasis on the reason for the delay.  The 3rd Circuit,

3  the case law basically says you look at all four factors, and

4  balance -- and balance those factors.  It is an equitable

5  determination for the Court to make.  And <u>Pioneer</u> makes clear

6  that excusable neglect can be inadvertence, neglect, mistake

7  and so on.

8           So, turning to the factors, Your Honor, with that

9  background, I would submit that there is no prejudice to the

10 debtor in this case by allowing this claim that we've asserted.

11          First of all, Your Honor, as I've already pointed

12 out, the claim was filed less than two months after the bar

13 date.  It's a straightforward lease rejection damage claim, a

14 claim that the debtor should have been aware of at the time it

15 file for the bankruptcy case.  Again, it's a lease claim.  The

16 debtor moved out, they knew they breached, they knew the claim

17 was out there.

18          The only real argument that's raised in any of the

19 pleadings as to why there's any prejudice is a floodgates

20 argument.  There's eight million plus of other late filed

21 claims.  If Your Honor grants this motion, the floodgates will

22 be open and you can't have that in this case.

23          Your Honor, the mere existence of other late filed

24 claims cannot be a basis to deny this motion.  If it was, you

25 really wouldn't have the excusable neglect standard.  So, there

1  has to be something more than the fact that you're going to

2  have late filed claims because in a big case like this, you're

3  always going to have late filed claims.  So, the fact that

4  there were eight million plus of eight -- of late filed claims,

5  if that's the true number, that's what had been represented,

6  you know, that's not unusual in a case like this.  So, it can't

7  just be, Your Honor, that you have other late filed claims.

8          And on this point, I think the <u>Enron</u> case that the

9  Committee has cited is instructive.  Because in that case, Your

10  Honor, the Court was concerned about a floodgates issue, but it

11  wasn't just the fact that there were late filed claims.  They

12  were concerned about the nature and the type of the specific

13  claim.  In that case, what happened was you had a claimant who

14  filed the claim against one debtor and simply forgot that they

15  had a guarantee claim against another debtor.

16          And the concern that the Court had about the

17  floodgates in that case was not that the claim was late, per

18  se.  But that the fact that this was a claim against a

19  guarantor and that there were another -- a number of other

20  creditors who had that exact situation.  And if -- and if the

21  Court felt that if they opened up the case for that claim, it

22  could lead to a lot of other filed claims.

23          Here, Your Honor, we have no evidence whatsoever of

24  the nature and extent of any of these other late filed claims.

25  So, there's no basis for Your Honor to know one way or the

1  other, frankly, whether allowing the claim of this nature will

2  open the floodgates.

3       But I would further submit, Your Honor, that -- that

4  the floodgates argument is not one I think that Your Honor

5  should buy into simply because Your Honor's going to have to do

6  a -- analyze each case as it comes before you on <u>Pioneer</u>.  Each

7  fact scenario is going to be a little bit different,  and each

8  -- each -- and the case is going to turn on their own fact.

9  So, I really think the argument that there's a floodgates issue

10  here is overblown and I would ask Your Honor not really to

11  consider that, and take that into consideration.

12       In addition, Your Honor, in opposition to this point,

13  the Committee also cites the <u>American Classic Voyage Company</u>

14  case.  And I would submit, Your Honor, that that case is not on

15  point.

16       While the Court in that case clearly mentions

17  floodgates, the holding in that case, the express holding in

18  the case turned on the reason for the delay, not the floodgates

19  argument.  And there, I think the -- or factually that case is

20  distinguishable, as well.  There, Your Honor, you had an

21  attorney for a claimant who asked for a proof of claim, who

22  received a proof of claim form and received the bar date

23  notice, and then just ignored the bar date notice.  It wasn't

24  until four months after the bar date when the creditor filed a

25  lift stay motion, the debtor called them up and objected on the

1  basis that it was a late filed claim.  Then they filed their

2  motion.

3       So, they -- they had their bar date notice and it was

4  simply conscious disregard.  They took no action.  They didn't

5  even attempt to file a claim.

6       Here, Your Honor, our facts are completely different.

7  Here Mr. Winfield attempted to prepare and file the proof of

8  claim before the bar date had even been set.  And through

9  simply inadvertence, Your Honor, it wasn't sent in.  It was put

10 in a file.

11      So, again, I think the facts here are very different

12 than they were in the American Voyage case.

13      I also submit, Your Honor, that unlike the American

14 Voyage case, there's no -- there's no prejudice in this case

15 because, again, unlike American Voyage, there's no plan that's

16 been yet filed in this case, and there's no argument in any of

17 the papers in opposition to my motion that somehow allowing

18 this claim at $81,000 -- or I shouldn't even say allowing it --

19 allowing us to file it late, Your Honor, there's been no

20 argument that that -- that will, per se, disrupt any plan

21 negotiations or the plan itself.

22      So, again, there's no prejudice.  The only thing

23 raised is the floodgates argument.  And I think, Your Honor,

24 you should not put a lot of weight into that.

25      Turning to the second factor, Your Honor, we have

1 length of delay and impact on the proceedings.  I've really

2 already touched upon this.  It's less than two months after the

3 bar date.  There's been no -- there's no impact, Your Honor, on

4 this case or the administration of this case.  It really hasn't

5 even been argued.

6          They mentioned that they're negotiating a plan.  But,

7 again, Your Honor, no indication or nothing -- no evidence that

8 this is somehow going to disrupt that.  And -- and you're --

9 you're -- if you tink about it, Your Honor, there's no way a

10 claim of this size and a case of this magnitude is really going

11 to disrupt that process.

12          I would -- it would be a different position, Your

13 Honor, if the plan was on file, it was a POD plan, you know,

14 but we don't have any those facts in this particular case.

15          Turning to the reason for the delay, Your Honor.  You

16 know, here, Mr. Winfield and his assistant really have set it

17 forth in their affidavits.  The affidavits are brief, but

18 there's not a long story to tell here, Your Honor.  They

19 prepared the proof of claim, they signed the proof of claim,

20 they meant to send it in and it simply got inadvertently put in

21 a file.  And they didn't realize that until a couple of months

22 later, and then they filed their proof of claim.  That's --

23 those are the facts, Your Honor.  That's why we have -- that's

24 the reason for the delay in this case.

25          Importantly, Your Honor, again, it's not a situation

1  like -- like the other case I mentioned where someone got the

2  bar date notice and took no action and sort of -- it was almost

3  like it was in disregard of a court order.

4           THE COURT:  Well, did --

5           MR. MINUTI:  Here --

6           THE COURT:  Did -- did Mr. Winfield get the bar date

7  notice?

8           MR. MINUTI:  He did get the bar date notice, Your

9  Honor.

10          THE COURT:  And that was after he thought he had sent

11 in the proof of claim?

12          MR. MINUTI:  Correct.

13          THE COURT:  All right.  But the record doesn't say

14 what he did or didn't do when he got the bar date notice to

15 double-check.

16          MR. MINUTI:  That is correct, Your Honor.  I concede

17 there is no evidence that he double-checked.  But, you know,

18 Your Honor obviously was in private practice not long ago.  You

19 know, the way these typically work and what's reflected in the

20 affidavits is you prepare the proof of claim, you give it to

21 your assistant, I don't know when Your Honor was in private

22 practice.  My practice certainly isn't to, you know, follow to

23 make sure that it goes in the right mail slot.  I think, you

24 know, it's pretty -- that he relied on his assistant in this

25 case.  And what's important, Your Honor, I -- I don't think

1  he's -- he's blaming the assistant.  I mean to me, this is a

2  collective issue.

3        THE COURT:  Sure.

4        MR. MINUTI:  It's a collective inadvertence.  And so

5  I don't want to give the Court the impression that, you know,

6  we're dumping on the assistant, we're not.  Every -- everybody

7  was trying to do the right thing.  Everybody was trying to get

8  it filed.  It's just one of those things that happened in the

9  case, Your Honor.

10       Your Honor, and finally, the final factor, Your

11 Honor, is bad faith.  There's been no suggestion of bad faith.

12 I think if Your Honor looks at the affidavit, you get a clear

13 picture of exactly what happened here.  It was simply a

14 mistake.  They thought they had sent it in, and it was not sent

15 in.

16       Your Honor, before concluding, I want to turn to the

17 one other case the Committee mentions in addition to the

18 American Classic case and Enron case, they also cite the

19 Musicland case in New York.  I would point out, Your Honor,

20 first of all, that's a 2nd Circuit case and in -- and as I've

21 already said, the 2nd Circuit standard is a lot different.

22 They take a -- expressly take a hardline view of these things.

23 And so for that reason alone, Your Honor, I think that that

24 case can be distinguished on the law in terms of how you apply

25 the -- apply the excusable neglect standard.

1        But I would also implore Your Honor, if you haven't

2   done so already, to read that case.  Because when you read it,

3   Your Honor, and you read between the lines, something clearly

4   was going on in that particular case.  In that case, you had a

5   lawyer, Your Honor, that missed the deadline for the proof of

6   claim.  They filed a motion for a late filed claim, they didn't

7   attach any documentation to that.  They missed the hearing on

8   the claim motion that they filed.  And then they had to file a

9   motion for re-argument.  You know, clearly that was a case

10  where you have a lawyer that didn't have their act together on

11  a number of fronts.  And I think that shines through, Your

12  Honor, in that opinion.

13       That's not the case here, Your Honor.  You had a

14  lawyer who, believe it or -- believes he was acting before the

15  bar date and doing the prudent things.  The claim got

16  misplaced, put in a file.  As soon as it was discovered, it was

17  filed, it was two months later.  As soon as the debtor

18  objected, Your Honor, we responded and filed the present

19  objection.

20       So, in conclusion, Your Honor, <u>Pioneer</u> makes clear

21  that excusable neglect is an equitable analysis.  The approach

22  in the 3rd Circuit, Your Honor, is a more liberal approach than

23  the 2nd Circuit cases that the Committee has cited.

24       For me, the excusable neglect standard in the 3rd

25  Circuit really comes down to prejudice.  How long of a delay

1  was there?  What's the impact really going to be by allowing

2  this claim under the facts of this particular motion?

3          In this case, Your Honor, you're talking about a

4  delay of less than two months.  Zero impact upon this estate

5  and the plan process.  Under those facts, Your Honor, those

6  specific facts, I believe that Your Honor should approve this

7  motion and allow this claim, again, without prejudice to any

8  substantive objections that the debtor may grant down the road

9  with respect to the claim.  We're only seeking to allow us to

10 file the claim at this point.  We understand the debtor

11 reserves its rights or the estate reserve its rights to oppose.

12         THE COURT:  Okay.  Thank you, Mr. Minuti.

13         MR. MINUTI:  Thank you very much, Your Honor.

14         THE COURT:  Mr. Power, I take it you're -- you're

15 opposing?  You're --

16         MR. POWER:  Yes, Your Honor.

17         THE COURT:  You're in charge of opposing.

18         MR. POWER:  Yes, Your Honor.

19         THE COURT:  Okay, yes.

20         MR. POWER:  We filed an -- opposition papers

21 yesterday and the debtor joined --

22         THE COURT:  Oh, the debtor joined.

23         MR. POWER:  -- in our objection.  Your Honor, I'll

24 try to be brief on this issue.  I guess initially -- the

25 Committee, in these cases, takes kind of a very conservative

1 view.  And when we look at these issues, we try to really

2 figure out if there's a way in which to let the claim in.  And

3 Your Honor actually entered an order a few months ago which

4 permitted Countrywide, which filed late claims.  And we -- we

5 signed off and the debtor signed off on that and allowed those

6 claims to be filed late.

7        And the distinction there was really the fundamental

8 issue that's before Your Honor here, which is what is the

9 excuse?  Did the attorney or the claimant act diligently?  And

10 do they have a reasonable justification, legitimate

11 justification to have missed the bar date?

12        In that case, the attorney clearly did.  The attorney

13 had Fed Ex'd the proof of claim, he had followed up, had a full

14 documentation of trying to make Fed Ex had actually delivered

15 the claim.  It did not deliver the claim.  He got email

16 notifications.  As soon as he discovered it wasn't delivered,

17 he proceeded to contact debtors' counsel, he contacted us, and

18 we basically worked it out.  There, when we looked at the

19 facts, the Committee and the debtor both decided that in that

20 case, there was excuse.  There was a legitimate justification

21 for the delay.  And the attorney did not delay, and the

22 creditor did not delay.

23        Here, the facts are very different, Your Honor.   And

24 this is why we really have a problem with this motion and the

25 potential harm it can do in this estate.  In this case, there

1  simply is no excuse.  If Your Honor reads the affidavit, the

2  affidavit is "we messed up."

3        Now, what the affidavit most telling to this Court is

4  what did the attorney not do?  Not what he says he did, which

5  is basically nothing.  First of all, if you look at the proof

6  of claim, there's a provision in the proof of claim that they

7  submitted which says that if you want to verify that your claim

8  was filed, you can send a copy to the Clerks, and the Clerk

9  will -- with an envelope, stamped prepaid, and the Clerk will

10  return it.  The notice of the bar dates has the exact same

11  provision and advises all claimants that they can basically

12  send a duplicate copy of the proof of claim, get it stamped and

13  get it returned.

14        THE COURT:  We don't know if he intended to do that

15  or not.

16        MR. POWER:  Yes, Your Honor.  But if the firm had set

17  up a procedure internally to verify that they get back the

18  stamped copy of the proof of claim, and if they don't, they

19  need to follow-up, that would have been fine.  This attorney

20  doesn't have that procedure.  This firm doesn't have that.

21  There's nothing in the affidavit, there's no evidence before

22  this Court that indicates that this firm did anything

23  whatsoever to follow-up and take the alternative steps of

24  making sure that the claim was filed.

25        So, what you have here is an attorney who signed a

1  proof of claim, said, file this, and everyone ignored it.  Then

2  what happened was a bar date notice was sent out and sent to

3  the law firm and they ignored that.

4          And then we don't know why, but a few months later,

5  they find out, oops, we didn't file, we made a mistake.  Now

6  they submit the proof of claim.

7          Had the firm done what firms could do here, and what

8  some of the courts cite they should do to make sure they take

9  alternative steps so this doesn't happen is:

10          One, submit a copy, and get a stamped copy back and

11  follow-up and make sure you got it.  If you don't get it, make

12  sure you contact the claims agent or go on line and make sure

13  it's been filed.

14          Second of all, have a procedure to make sure that if

15  a bar date is actually -- a bar date notice was received, and

16  that the claim was actually filed.

17          In this case, the claimant and their counsel did

18  nothing.  Had no procedures, had no follow-up guidelines.  The

19  real -- the basic excuse before Your Court is "we missed up,

20  Judge, please let us in."

21          And, Your Honor, we understand the equity of the

22  situation.  But if that is the excuse that the Court allows,

23  then there is virtually no other creditor who can't make that

24  same argument.  We have $9 million of --

25          THE COURT:  There's no other creditor who prepared a

1  proof of claim, signed a proof of claim, intended to send in a

2  proof of claim prior to the bar date, and then failed to do so,

3  and then sent it in after the bar date.  That -- that narrowed

4  -- there are not nine million people who did that.

5         MR. POWER:  No, Your Honor.  But there are nine

6  people -- people who said, oh, we meant to file the claim, we

7  didn't, we were busy, we got really busy, it was Christmastime,

8  I couldn't --

9         THE COURT:  But this claimant has -- this claimant

10 doesn't just have that.  This claimant has a signed copy dated

11 October 2nd, 2007 that he intended to send in.  And the

12 evidence is that he -- that was his intent.

13        MR. POWER:  Right, Your Honor.  But the intent is

14 not --

15        THE COURT:  That's different from I meant to get to

16 it and I didn't get to it.  There was -- in other words, there

17 was some activity, albeit not enough, but -- to actually

18 complete the process.  But there was some effort on behalf of

19 the claimant to do -- to file the proof of claim.

20        MR. POWER:  And I guess if the rule and the case law

21 indicated that that was sufficient, that would be fine.  But

22 the law is were you neglectful?  Clearly that's admitted here.

23 And do you have an excuse for that neglect?  And the excuse has

24 to relate to the conduct of why you were neglectful.  And if

25 you look at the basis here, it wasn't -- there was no --

69

1  there's no explanation.  It's simply that we messed up.  We

2  missed it.  We -- we made a mistake.

3        And, Your Honor, I'm very sympathetic, as all counsel

4  is, but for the grace of God, we could all end up in the

5  situation.  Having said that, the law in this Circuit, and

6  every other Circuit, is that you need to have some

7  justification, some legitimate justification.

8        And we submit, Your Honor, there are actually two

9  cases which are the exact same fact scenario:  The <u>Musicland</u>

10 case, which was decided last year by Judge Bernstein.  Landlord

11 had a rejection damage claim, sent all the information to the

12 attorney.  The attorney prepared a proof of claim form.  The

13 attorney gave the proof of claim form to an assistant and said,

14 file our proof of claim form.

15       Less than three weeks after the bar date, the

16 attorney discovered that, in fact, the proof of claim form

17 wasn't filed.  The law firm did not have any procedures to

18 follow-up, did not ask for a duplicate of the claim, did not do

19 anything.  Instead she filed a motion within roughly a month of

20 that -- of the bar date to basically allow the late claim.  And

21 the Court in that case said, under these facts, when there is

22 no excuse for why it wasn't submitted, yes, the attorney

23 prepared for the claim, yes, it -- but there's really no

24 legitimate justification for why it wasn't submitted.  It's not

25 appropriate to let it in.

1           And I submit that that -- that 2nd Circuit case is

2    roughly -- is the same law here.   If Your Honor looks at the

3    American Classic -- the American Classic Voyage decision when

4    the 3rd Circuit decided this issue, the Court went through the

5    four Pioneer standards.   The Court focused primarily on the

6    third one, and specifically said this is our primary reason for

7    this decision.   In that case, the attorney got the bar date

8    notice, had been communicating with the debtor.   Instead of

9    making the -- filing the proof of claim, they made a mistake

10   and put -- filed the bar date notice and never actually got the

11   proof of claim out.

12           And the Court said in that case because the attorney

13   hasn't given a legitimate excuse, a reason to explain why the

14   neglect occurred, beyond simply we made a mistake, the Court

15   found that it could not allow the claim and let it in and

16   upheld the Bankruptcy Court's decision.

17           Both of those cases are the exact same situation

18   here.   They both involve liquidating debtors.   They both

19   involve thousands and thousands of claims.   They both had the

20   potential prejudice to the estate and if you would let a late

21   claim in simply on the basis that we made a mistake and you

22   should let us get around the bar date in this case.

23           Now, Your Honor, I understand here they filed a proof

24   of claim.   But I guess when you go through the Pioneer factors,

25   when you look at the prejudice issue and the floodgate issue, I

1  submit it's a little different than what Mr. Minuti argues.

2  It's not a prejudice of a case where there are lots of claims,

3  it's a big case, this is a small claim.

4        I think the prejudice relates to are the facts and

5  circumstances so unique in this situation that it would not

6  adversely affect the debtor.  And if the standard is we made a

7  mistake and, therefore, we should get around the bar date in

8  this Court's order, then I submit that you basically have

9  written out the word "excusable" under the Bankruptcy Rules.

10  That is the prejudice we're concerned about is in this case --

11  and we have already before this Court several motions to allow

12  late -- other late claims that are currently pending.  We have

13  $9 million in claims that have been filed to date, and we may

14  get more.

15        If you compare the Countrywide situation, which I

16  described in the beginning, where they had a legitimate excuse,

17  they acted diligently and attempted to do what they needed to

18  do and the moment they discovered they had actually failed,

19  they immediately attempted to correct the situation.

20        With this situation, it's a stark difference.  And we

21  submit in this situation where a party really has no

22  justification for why they missed it, they can't meet the

23  standard.  And then Your Honor has to be worried about the

24  floodgate situation.

25        In terms of delay, Your Honor, the 3rd Circuit -- two

1  months is actually an extensive delay and there's really no

2  explanation for why, when the proof of claim was filed in

3  March, it took the claimant two more months to actually file

4  this motion.  Basically I guess they filed the motion and then

5  didn't do anything.  Then once the objection was received, then

6  they immediately moved to allow the late claim.

7           In the Musicland case, the -- the creditor moved in

8  less than a month and basically that was deemed too tardy.  In

9  the American Classic case, the creditor moved in, I think, less

10 than three months.  And that also was deemed tardy.

11          In this case, it's roughly in between.  But we submit

12 this with the delay of actually filing the motion after the

13 late claim was filed is roughly months, is beyond the period,

14 and the Pioneer fact -- second factor mitigates in our favor.

15          I've already mentioned, Your Honor, we think the

16 excuse really isn't a bona fide excuse.  The 3rd Circuit on the

17 last standard of good faith, we're not arguing claimant's good

18 faith here.  We don't think they acted in bad faith.

19          Having said that, the 3rd Circuit did indicate that

20 when a counsel doesn't take the appropriate steps to protect

21 their client's interest and hasn't done what they need to do,

22 then there's a question of whether even the fourth factor

23 mitigates in the creditor's factor.

24          So, Your Honor, for that reason the Committee submits

25 that you should deny the motion.

1          Thank you.

2          THE COURT:  You're welcome.  Mr. Lunn?

3          MR. LUNN:  Very briefly, Your Honor.  The debtors did

4    file a joinder in support of the Committee's objection to the

5    claim as being late filed.

6          And I would just reiterate what Mr. Power said.  Is

7    that everything was in control, everything in the claimant's

8    control with respect to this claim was in their control.  They

9    received the bar date notice.

10          Pursuant to the bar date order, we were sending

11   personalized proof of claim forms that would tie back to the

12   schedules.  Now, I don't know exactly what proof of claim form

13   was sent to the claimant.  But if it showed just the schedule

14   amount, arguably the attorney should have looked at it and

15   said, why is this different than the proof of claim form that I

16   filed or why is the amount different, assuming that the amounts

17   would have been different, Your Honor.

18          So -- and also, just tying back to the Countrywide

19   situation where the facts are completely different.  There,

20   they noticed that the proof of claim form wasn't filed.  They

21   acted immediately, contacted debtors' counsel, we worked

22   through those issues with the Committee.  And given the

23   extensive affidavits and the reasons why and excuses why, which

24   were the fault of, essentially, Federal Express, we allowed the

25   claim to be filed as late.

1          THE COURT:  Mr. Minuti, any response?

2          MR. MINUTI:  Thank you, Your Honor.  I'm going to be
3     brief, Your Honor.

4          Let me just pick up on the last thing that Mr. Lunn
5     said.  With respect to Countrywide, Your Honor, I wasn't
6     involved, so I can't really speak to that.  But as I listened
7     to counsel talk about it, I'm not sure I understand what the
8     excuse was there.  They keep saying that we don't have an
9     excuse.  I mean here you have a sophisticated entity that
10    apparently waited till the last minute, used Federal Express
11    and it didn't get there on time.  I don't see much of a
12    difference, Your Honor, in my situation.

13         With regard to Mr. Lunn's comments about -- that Mr.
14    Winfield would have received a proof of claim form with a
15    schedule amount, you know, I just don't know any of those
16    facts, Your Honor, so I can't really comment on that.  And I
17    don't think Your Honor should take that into consideration.

18         Again, Your Honor, with respect to the Musicland case
19    that is cited by Mr. Power, again, it's a 2nd Circuit case,
20    Your Honor.  Much different standard, hardline, expressly,
21    that's what the 2nd Circuit cases say, "We take a hardline on
22    excusable neglect."  That's simply not the 3rd Circuit.

23         And, again, I would ask Your Honor to read that case
24    if that's going to factor into your thinking because you will
25    see, and Mr. Power knows certainly better than I because he was

1  involved in the case.  And that was a lawyer in that case, Your

2  Honor, on many levels that didn't have their act together.

3       Here, Your Honor, you have somebody who was proactive

4  before the bar date and thought the claim was filed.  I mean

5  that's what happened here, he thought the claim was filed.

6  Maybe there was no follow-up, Your Honor, maybe there could

7  have been better follow-up.  But, again, we're talking about

8  less than two months after the bar date, Your Honor.

9       With respect to American Home, Your Honor, again, the

10  facts are different.  In that case, you have a lawyer who asks

11  for a proof of claim.  Was sent the bar date notice, sent the

12  proof of claim and did nothing.  Just didn't act.

13       THE COURT:  Oh, you mean American Classic.

14       MR. MINUTI:  I'm sorry.  American Classic, I -- I

15  wrote down American Home.  I'm wrong.  American Classic.  They

16  asked for it, they got it, and then they ignored it.

17       THE COURT:  Um-hum.

18       MR. MINUTI:  Contrast that with our facts.  Prior to

19  the bar date, knew the lease was rejected or knew the lease was

20  vacated, tried to fill out the proof of claim, signed it on

21  October 3rd, it got put in a file, Your Honor.  I think it's

22  drastically different from any of the cases cited, Your Honor.

23  Again, nobody really talked about any prejudice here of a sub -

24  - of really substantive nature because there isn't any.  Every

25  case is different, Your Honor.  If people want to file late

1 filed motions, I think Your Honor is inclined -- you know, is

2 going to have to hear them regardless.  But, again, each case

3 turns on their own facts and I don't see a big rush here.  So,

4 again, we think Your Honor should approve the motion.

5          Thank you.

6          THE COURT:  All right.  Thank you.  I'm going to

7 grant the motion.  Again, I think you need to look at all --

8 you know, the post-<u>Pioneer</u> decision.  There are four factors

9 and I think the Court needs to weigh all of them, some are

10 perhaps more important than others.

11          But I think all of them -- at least three of them

12 clearly fall in favor of the movant.  And the other is a closer

13 question, but I don't think so much falling against movant as

14 to deny the motion.

15          Specifically danger of prejudice to the debtor.  I

16 don't think there is any danger of any prejudice to the debtors

17 in this case whatsoever.  I dis -- I discount and ignore the

18 floodgates litigation issue, at least in connection with the

19 facts that are in front of me in this instance.  Facts where a

20 debtor -- excuse me -- a claimant prepared a proof of claim

21 prior to the bar date, signed the proof of claim prior to the

22 bar date, thought the proof of claim had been sent prior to the

23 bar date.  And then later, obviously after the bar date, comes

24 and requests that the Court grant relief and can -- and can

25 show with physical evidence that its story is, in fact, true.

1  So, I don't think that is opening the floodgates of litigation.

2  This is a complex case, there are thousands of proofs of claim

3  or proofs of interest that have been filed, if not tens of

4  thousands.

5          I know I'm going to spend a lot of time with you guys

6  doing these -- these kinds of motions.  That's just the nature

7  of the case of this size.  And I don't think that it's -- you

8  know, it is what it is.  I don't think I should artificially

9  try to limit it if it's not appropriate.

10         And, again, of course, that goes without saying, I

11 think, but I'll say it, no disclosure statement, no plan in

12 this case, I'm not being pejorative in any way, I know people

13 are working on it.  But the reality is we're not there and

14 $80,000 on the claims side in this case isn't going to break or

15 make any plan.  So, I don't think the prejudice -- there's any

16 prejudice.

17         The length of its delay and its impact -- potential

18 impact on judicial proceedings, there is a bit of a delay here,

19 and probably more of one than should have been.  Certainly

20 there's a delay between when the claimant thought it had sent

21 the proof of claim and when it actually discovered it hadn't in

22 March.  And there is a delay in connection with filing a late

23 claim and then seeking court approval for the filing of the

24 proof of claim.  Again, I'm speculating, but probably the

25 motion was, in fact, a result of having received the claim

1   objection and realizing there was something that had to be

2   done.  But I think importantly, again, you know, the claim

3   hasn't already been expunged.  It has only been a couple months

4   since the discovery was made, and even it's only been four

5   months since the bar date.  In a case of this size and

6   magnitude where the debtor is really just starting the process

7   of working through the claims register, we're only up to the

8   sixth of -- gosh, I don't even want to think how many, although

9   maybe the number will go down now that I've approved larger

10  exhibits.

11          But, again, I don't think the delay -- and any delay

12  has had no impact on the proceedings in the court.  And that's

13  important, it's part of the same -- part of the same analysis.

14          Reason for the delay, I mean that's obviously the

15  movant's biggest issue.  I hated bar dates when I was in

16  practice, everybody hates bar dates.  There's so many things

17  that can go wrong.  And because there are so many things that

18  can go wrong, it's really incumbent upon attorneys who file

19  proofs of claim to do more than stick a proof of claim in an

20  envelope and hope and pray that it gets there.

21          So, you know, I'm troubled by that.  And if there

22  were any other facts that would at all prejudice the debtor,

23  the motion would be denied.  I don't think there's any

24  question.

25          I know that there are cases that focus almost solely

1  on the reason for delay.  I don't think that's appropriate

2  because there are four factors.  It's that factor that makes

3  this a close call, but I think that given diligent -- given the

4  fact that there was at least an attempt that was documented and

5  that it was inadvertently filed mitigates somewhat against

6  basically having no procedures in place to make sure the proof

7  of claim got where it was supposed to go.  And then no follow-

8  up when you got the bar date notice.  You know, you get a bar

9  date notice, you look at it, you call, hey, Cheryl, I got the

10 bar date notice in American Home, did we -- can you double-

11 check we filed that proof of claim?  It's that simple.  That

12 should have been done, it wasn't done.  It -- it goes against

13 granting the motion.  But, again, as I said before, I think the

14 other factors are sufficient to overcome it, although it makes

15 it a close issue.

16        And finally whether the movant has acted in good

17 faith.  I disagree that -- that, you know, you can imply bad

18 faith basically through -- through the negligence, if you will,

19 of the movant.  To me, bad faith really smacks of some ulterior

20 motive behind not filing it, for whatever reason.  I don't see

21 that here.

22        So, anyway, long ruling.  Based on the foregoing, the

23 Court will grant the motion.

24        Mr. Minuti, do you have a form of order?

25        MR. MINUTI:  Your Honor, I can hand up mine.  It has

1   three hole punches, it's no different than what's attached --

2           THE COURT:  All right.

3           MR. MINUTI:  Would you like this?

4           THE COURT:  That's fine.  Let's see what it looks

5   like.

6                   (Pause)

7           MR. MINUTI:  Your Honor, just so everybody

8   understands, I added the docket number and put in today's date.

9           THE COURT:  Thank you.  I'll sign the order.

10          MR. MINUTI:  And, Your Honor, just for the -- so the

11  record is clear, when the debtor submits the order on the fifth

12  omnibus objection, this particular thing should be removed --

13          MR. LUNN:  Yes.

14          MR. MINUTI:  -- I think that's Exhibit G, as well.

15          MR. LUNN:  It will be.

16          MR. MINUTI:  Thank you, Your Honor.

17          THE COURT:  Very good.  Do you have those -- do you

18  have those orders or do you still need to work on them?

19          MR. GROW:  We've got everything ready except we're

20  removing River Park.

21          THE COURT:  Okay.

22          MR. GROW:  I'll hand up the sixth --

23          THE COURT:  Yes.

24          MR. GROW:  -- if I can approach?

25          THE COURT:  Please.  Thank you.

81

1                          (Pause)

2            THE COURT:  Thank you.  All right.  Anything further

3   for today?

4            MR. LUNN:  No, Your Honor.

5            THE COURT:  Thank you.

6               (Proceedings Adjourn at 2:42 P.M.)

7

8                    C E R T I F I C A T I O N

9

10           I, Karen Hartmann, certify that the foregoing is a

11  correct transcript to the best of my ability, from the

12  electronic sound recording of the proceedings in the above-

13  entitled matter.

14

15   /s/  Karen Hartmann                  Date:  May 29, 2008

16  TRANSCRIPTS PLUS

17

18

19

20

21

22

23

24

25

## $

**$1,305.44**- 44:7
**$5,706.04**- 31:9
**$61,250**- 6:21,25
**$80,000**- 77:15
**$81,000**- 59:19
**$81,406**- 54:8
**$9**- 67:25 71:14

## /

**/S/-** 81:16

## 0

**0711048**- 38:15
**0711051**- 38:15

## 1

**1**- 3:6,22 22:3
**10**- 4:6
**105**- 22:13
**105A**- 8:7
**11**- 26:1 54:12
**11ᵀᴴ**- 4:1 39:10
42:1 47:18
**15**- 8:16 11:6,7
13:18
**17ᵀᴴ**- 25:18
**19**- 50:18

## 2

**2**- 8:5,10 12:4
21:20 23:11 26:20
**2005**- 17:23
**2007**- 25:18
53:18,21,25 68:12
81:16
**21**- 5:21
**25**- 32:14
**2508**- 31:6
**2743**- 46:13
47:8,15
**28ᵀᴴ**- 6:20
**29**- 81:16
**29ᵀᴴ**- 13:21
**2:42**- 81:7
**2ᴺᴰ**- 53:21,25
55:20,23 62:21,22
63:24 68:12 70:2
74:20,22

## 3

**3**- 54:17
**363**- 8:7 22:13
**364**- 13:5
**365**- 8:8,15 13:5
22:13
**365A**- 22:8
**365D4**- 12:20,24
17:24 19:13 21:8
22:20 23:5
**39**- 4:6
**3ᴿᴰ**- 10:3
55:21,25 56:2,3
63:23,25 70:5
72:1,17,20 74:23
75:22

## 4

**4**- 7:9 8:5 12:7
22:11 23:11
**40**- 4:12
**400**- 35:22
**403I**- 46:10
47:7,14,15
**4090**- 42:14,19,20
**48**- 30:21

## 5

**5**- 21:13 23:11
**503B**- 14:14
**503B3**- 36:4
**503B7**- 6:6,18
14:15,18 18:2
19:16 20:22,23
21:11
**510**- 36:6,7,8
**52**- 4:12
**5205**- 48:4,15
**53**- 5:20
**54**- 25:11
**55**- 27:15,21 28:1
**56**- 27:21 29:3
**57**- 27:21
**58**- 52:13
**5868**- 50:16,18
**5869**- 50:18
**5870**- 50:18
**5917**- 50:18
**5921**- 50:19
**5ᵀᴴ**- 53:18

## 6

**6A**- 42:9
**6C**- 42:8

## 8

**8**- 3:6,7,14,22,24

## 9

**9**- 4:3
**9019**- 3:15 4:1
**9654**- 42:21
43:1,2 47:16
**9ᵀᴴ**- 35:9

## A

**A/K/A**- 39:23 40:9
**ABILITY**- 40:17
81:12
**ABLE**- 13:10
**ABOVE**- 81:13
**ACCEPT**- 34:20
**ACCORDING**- 30:23
**ACCOUNT**- 32:15
**ACCOUNTABLE**-
11:10,11
**ACCUSATIONS**-
32:20,22
**ACQUIRE**- 7:3
**ACQUIRER**- 20:16
**ACT**- 63:11 65:10
75:3,13
**ACTED**- 8:24 11:2
71:18 72:19 73:22
79:17

**ACTING**- 20:10
55:17 63:15
**ACTION**- 25:11
48:9 59:5 61:3
**ACTIONS**- 9:24
12:17 13:14
**ACTIVITY**- 68:18
**ACTUAL**- 5:10 9:22
**ADD**- 43:17
**ADDED**- 80:9
**ADDITION**- 6:22
58:13 62:18
**ADDRESS**- 27:21
30:20,22,23 39:20
41:15
**ADDRESSED**- 31:13
39:17
**ADEQUATE**- 20:13
**ADJOURN**- 28:9
39:8 41:20,25
48:24,25 81:7
**ADJOURNED**- 3:7,22
28:4,8
**ADJOURNING**- 43:5
**ADJUST**- 35:4
**ADJUSTMENT**- 38:5
**ADMIN**- 19:4
**ADMINISTRATION**-
60:5
**ADMINISTRATIVE**-
5:22 6:5,21 9:20
11:12 14:10,17
16:1,12 17:11
21:10 23:25
24:4,10,13,15,18
**ADMITTED**- 53:13
68:23
**ADMITTEDLY**- 10:25
**ADVERSELY**- 71:7
**ADVISES**- 66:12
**AFFECT**- 71:7
**AFFIDAVIT**-
53:4,5,23 62:13
66:2,3,4,22
**AFFIDAVITS**-
53:3,8,13 54:5
60:18 61:21 73:24
**AFFIXING**- 41:9
**AFOUL**- 20:8
**AFTERNOON**- 3:1,2
5:24,25 11:25
14:20
**AGAINST**- 16:9
29:13 30:4
43:13,17
57:15,16,19 76:14
79:6,13
**AGENT**- 33:24
67:13
**AGREE**- 10:7 34:1
44:4
**AGREEABLE**- 25:23
**AGREED**- 25:14
26:2 28:9 43:17
45:2,4 46:8 47:16
**AGREEMENT**- 8:9
9:17 10:8
13:19,22 19:23
20:3,6,11 21:5,14

25:18,19,21,24
26:7,8 27:6
38:20
44:10
**AGREEMENT'S**-
24:18
**AHEAD**- 3:13
5:14,17
**ALBEIT**- 68:18
**ALLEGATION**-
46:15
**ALLEGATIONS**-
33:2,7 34:9 36:2
47:10
**ALLEGE**- 33:18
**ALLEGED**- 9:3
43:16
**ALLEGING**- 33:19
35:13
**ALLOW**- 46:21
47:8
64:8,10 69:21
70:16 71:12 72:7
**ALLOWANCE**- 5:22
6:21
**ALLOWED**- 31:12
33:10,11 35:11
65:6 73:25
**ALLOWING**- 25:23
56:11 58:2
59:18,19,20 64:2
**ALLOWS**- 26:6
67:23
**ALONE**- 62:24
**ALTER**- 26:12
**ALTERNATIVE**-
66:24 67:10
**AMBIGUOUS**- 23:7
**AMENDED**-
3:5,8,18,21 4:13
31:4,19,20
**AMERICA**- 48:9,19
**AMERICAN**-
48:10,19 53:17
58:14
59:13,14,16
62:19 70:4 72:10
75:10,14,15,16
79:11
**AMOUNT**- 6:21,24
25:2 29:18 31:9
44:7,9,16,18
73:15,17 74:16
**AMOUNTS**- 73:17
**ANALYSIS**- 63:22
78:14
**ANALYZE**- 58:7
**AND/OR**- 41:9
**ANGELA**- 53:5
**ANYWAY**- 5:16
79:23
**ANYWHERE**- 20:22
**APOLOGIZE**- 41:25
**APPARENTLY**-
54:11
74:11
**APPEAR**- 20:22
54:25
**APPEARS**- 20:23
**APPLICABLE**- 16:3

26:3 28:22 52:5
56:1 63:22,23
80:25
**APPROACHING**- 13:6
**APPROPRIATE**- 23:6
29:16 33:20 36:24
47:8 70:1 72:21
77:10 79:2
**APPROVAL**- 77:24
**APPROVE**- 28:24
40:16 64:7 76:5
**APPROVED**- 13:20
20:6 78:10
**APPROVING**- 52:22
**APRIL**- 54:20
**AREA**- 49:4,22
50:9
**AREN'T**- 24:14
33:9 39:16
**ARGUABLY**- 73:15
**ARGUE**- 33:19
**ARGUED**- 60:6
**ARGUES**- 71:2
**ARGUING**- 72:18
**ARGUMENTS**- 32:17
**ARTIFICIALLY**-
77:9
**AS FILED**- 38:16
**ASSERT**- 30:1 36:1
44:18 49:4
**ASSERTED**- 28:6
30:2 32:15,21
33:5 34:8,11
36:12 38:16 45:23
56:11
**ASSERTING**- 33:3
46:13
**ASSETS**- 8:12 12:9
21:2,23,25
22:1,5,13
**ASSIGN**- 8:10 12:6
13:1,9,10 16:25
18:16 19:8,12
20:22 21:22 36:25
**ASSIGNED**- 11:3
14:2 16:20 19:22
29:20
**ASSIGNEE**- 21:5
**ASSIGNING**- 30:1
**ASSIGNMENTS**- 20:8
**ASSISTANT**- 53:6
60:17 61:22,25
62:2,7 69:14
**ASSUMED**-
6:6,13,15 8:14,24
9:16,17 11:2
12:18 13:4,13,15
14:1,2,15,16
16:20 19:21
21:4,6,9 22:21
**ASSURANCES**- 20:13
**ATTACH**- 63:8
**ATTACHED**- 7:13,20
35:4 36:16 48:8
53:3 54:5 80:2
**ATTACHMENT**- 49:14
**ATTACHMENTS**-
46:13
**ATTEMPT**- 7:2 59:6

79:5
**ATTEMPTED-** 6:17
59:8 71:18,20
**ATTENTION-** 37:5
**ATTORNEY-** 7:20
28:8,16 36:6
47:20 48:17 58:22
65:10,13,22
66:5,20 67:1
69:13,14,17,23
70:8,13 73:15
**ATTORNEYS-** 78:19
**ATTRIBUTED-** 36:25
**AUGUST-** 15:4
**AUTHORIZATION-**
17:10
**AUTHORIZE-** 9:23
23:10
**AUTHORIZED-**
8:9,20 12:5 13:20
16:24 18:14 19:23
20:24 21:21 22:4
**AUTHORIZES-** 7:6
15:9 19:19
**AUTHORIZING-** 16:3
22:4
**AVAILABLE-** 46:25
**AVOID-** 17:14
35:17 49:13
**AWARE-** 7:1 48:20
55:5,9 56:15

_____

B

**BACK-** 6:20 35:11
41:1 52:6 66:18
67:11 73:12,19
**BACKDOOR-** 10:14
**BACKGROUND-** 25:17
56:10
**BALANCE-** 56:5
**BALL-** 10:10
**BANKRUPTCY-** 8:8
17:23 35:17 56:16
70:17 71:10
**BARGAIN-** 24:23
**BASED-** 28:23
32:20 46:18 47:10
79:23
**BASES-** 34:6
**BASIC-** 67:20
**BASIS-** 9:7 13:15
31:4,23 32:25
33:15 34:13
37:7,20 38:13
49:12 51:23 54:23
55:1 56:25 58:1
59:2 69:1 70:22
**BB-** 37:12
**BEHIND-** 33:11
79:21
**BELIEVES-** 63:15
**BENCH-** 4:22 27:23
**BENEFIT-** 15:6
24:23
**BENEFITS-** 8:25
10:9
**BERGUM-** 39:23
40:9,12
**BERNSTEIN-** 69:11

**BIDS-** 14:25
**BIG-** 57:3 71:4
76:4
**BIGGEST-** 78:16
**BIT-** 27:10 58:8
77:19
**BIZARRE-** 48:15
**BLAMING-** 62:2
**BONA-** 20:16 72:17
**BOOKS-** 29:15
36:23
**BOTH-** 6:4 10:9
12:10 16:19 46:13
65:20 70:18,19,20
**BREACHED-** 53:19
56:17
**BREAK-** 77:15
**BRIEF-** 6:4 14:22
25:16 60:18 64:25
74:4
**BRINGS-** 5:20
**BROUGHT-** 6:5
**BURDENS-** 9:1
10:10
**BUSINESS-** 14:6
24:5
**BUSY-** 36:11 54:9
68:8
**BUY-** 17:7,8 18:25
58:6

_____

C

**CALL-** 79:4,10
**CALLED-** 59:1
**CAN'T-** 18:3 45:16
46:18 48:10 50:3
56:23 57:7 67:24
71:23 74:7,17
**CAP-** 16:1
**CAPTIONED-** 48:18
**CARE-** 35:21
**CASELOAD-** 54:10
**CASES-** 26:1 29:25
30:1 54:13
55:20,23 63:24
65:1 69:10 70:18
74:22 75:23 79:1
**CASTLE-** 51:5
**CATEGORIES-** 41:11
**CAUSE-** 48:8,9
**CEDE-** 5:22 27:16
**CENTS-** 44:9
**CERTAIN-** 7:6 16:1
22:5,6 25:25
35:18 41:10 49:6
**CERTAINLY-** 55:9
61:23 75:1 77:20
**CERTAINTY-** 50:3
**CERTIFICATION-**
4:4,7 5:7
40:16,22
**CERTIFICATIONS-**
4:12,14
**CERTIFY-** 81:11
**CETERA-** 34:19
**CHAMBERS-** 4:15
**CHANGE-** 17:10
23:17
**CHANGES-** 40:14

41:16 52:4
**CHANGING-**
29:22,23 30:3,5,6
**CHAPTER-** 26:1
**CHARACTERIZATION-**
34:10
**CHARGE-** 64:18
**CHARGES-** 54:7
**CHART-** 36:15
**CHECK-** 79:12
**CHERYL-** 79:10
**CHRIS-** 6:1 20:20
**CHRISTINE-** 41:22
**CHRISTMASTIME-**
68:8
**CIRCUIT-** 10:3
55:20,21,23,25
56:2,3 62:21,22
63:23,24 64:1
69:6,7 70:2,5
72:1,17,20
74:20,22,23
**CIRCUMSTANCES-**
71:6
**CITE-** 21:20 62:19
67:9
**CITED-** 55:21
57:10 63:24 74:20
75:23
**CITES-** 58:14
**CLAIMANT-** 49:7
57:14 58:22 65:10
67:18 68:10,11,20
72:4 73:14 76:21
77:21
**CLAIMANT'S-** 72:18
73:8
**CLAIMANTS-** 29:25
32:15 35:10 36:12
66:12
**CLARIFICATION-**
29:9
**CLARIFY-** 12:2
13:12
**CLASS-**
25:11,13,17 26:11
**CLASSIC-** 58:14
62:19 70:4 72:10
75:14,15,16
**CLASSIFICATION-**
26:13
**CLAUSES-** 21:3
**CLERK-** 66:9,10
**CLERKS-** 66:9
**CLIENT'S-** 72:22
**CLIENTS-** 11:12
**CLOSE-** 11:5,8
13:7 15:9 19:10
23:2 79:4,16
**CLOSED-** 12:15,24
14:11 16:19 18:11
19:3 21:18
**CLOSER-** 76:13
**CLOSING-** 8:21,22
9:6,15,19 10:21
11:1,14 12:8,25
13:8,17 14:4
15:16,20
16:4,7,25 17:9

19:24 20:1,5
21:24 22:12
**CODE-** 8:8 17:23
35:17
**COLLEAGUE-** 27:16
**COLLECT-** 49:11
**COLLECTED-** 49:5
**COLLECTIVE-**
62:3,5
**COLLECTS-** 49:12
**COLUMBIA-** 46:9
**COLUMN-** 29:19
**COME-** 13:12
17:12
24:10 25:14
**COMES-** 45:5
53:22
58:7 64:1 76:24
**COMING-** 10:19
17:6,17
**COMMENCEMENT-**
26:1
**COMMENT-** 74:17
**COMMENTS-** 26:16
74:14
**COMMITTEE-**
14:21,22 16:19
26:15,16 55:20
57:10 58:14
62:18
63:24 65:1,20
72:25 73:23
**COMMITTEE'S-**
26:10 73:5
**COMMUNICATING-**
70:9
**COMPANY-** 58:14
**COMPARE-** 71:16
**COMPEL-** 13:7
**COMPLETE-** 23:1
68:19
**COMPLETELY-** 59:7
73:20
**COMPLEX-** 77:3
**CONAWAY-** 3:4
12:1
27:20
**CONCEDE-** 61:17
**CONCERN-** 35:6
57:17
**CONCERNED-** 34:15
57:11,13 71:11
**CONCERNS-**
41:14,17
**CONCLUDING-**
62:17
**CONCLUSION-**
63:21
**CONDUCT-** 46:16
68:25
**CONFER-** 28:7
**CONFERENCE-** 3:25
23:25 24:4,20
**CONFIRMATION-**
23:25 24:4,20
**CONFUSING-** 46:4
**CONKLIN-** 41:22
42:6,7 43:7
**CONNECTION-** 18:1
20:7 29:22 30:21
34:16 40:15 47:7

**CONSIDERATION-**
52:22 55:19 58:12
74:18
**CONSISTENT-** 20:11
**CONSISTING-** 55:13
**CONSTRUED-** 14:14
**CONTACT-** 65:18
67:13
**CONTACTED-** 40:2
65:18 73:22
**CONTAINS-** 35:9
**CONTESTING-** 43:14
**CONTEXT-** 56:1
**CONTINGENT-** 14:3
**CONTINUE-** 35:20
46:20 47:8 53:10
**CONTINUED-** 17:2
**CONTINUING-** 43:4
**CONTRACT-** 38:13
**CONTRARY-** 12:16
**CONTRAST-** 75:19
**CONTROL-** 55:16
73:8,9
**CONVEY-** 8:11
21:23
**COOPER-** 53:6
54:2,3,9,10
**COPIES-** 4:13
**COPY-** 3:8
7:12,17,18,21
26:2 66:9,13,19
67:11 68:11
**CORPORATION-**
53:18
**CORRECTING-** 32:6
**CORRECTLY-** 20:21
**COULDN'T-** 68:9
**COUNSEL-** 4:7,12
5:8 6:3 12:3
14:21 21:1 25:14
38:12,23 39:23
40:1,17,22 46:25
53:5 65:18 67:18
69:4 72:21 73:22
74:8
**COUNTER-** 46:15
**COUNTRY-** 15:3
**COUNTRYWIDE-**
43:11,12,13 65:5
71:16 73:19 74:6
**COUNTRYWIDE'S-**
43:16,24
**COUNTY-** 48:5,17
51:5
**COUPLE-** 14:24
60:22 78:4
**COURSE-** 24:5 35:5
54:17 77:11
**COURT'S-** 23:10
37:5 70:17 71:9
**COURTS-** 14:13
67:9
**COYLE-** 11:25 22:2
**CRAWLEY-**
28:5,6,11
**CREDITOR-** 58:25
65:23 67:24 68:1
72:8,10
**CREDITOR'S-** 72:24

CREDITORS- 57:21
CROSS- 40:19 41:2
47:25
CROSSED- 23:18
CRYE-LEIKE- 40:1
CRYE-LEIKE'S-
40:3,4
CURE- 16:9
CURED- 24:24
CURRENTLY- 71:13

**D**

D3- 24:24
D4- 13:6
DAMAGE- 54:7
56:14 69:12
DANGER- 55:13
76:16,17
DATED- 68:11
DATES- 66:11
78:16,17
DAYS- 25:3,4
DE- 9:24 10:4
20:8
DEADLINE-
12:20,24 13:6,8
17:24 22:20 63:6
DEAL- 8:17 16:19
DEALING- 9:21,24
DEALS- 20:14
DEALT- 20:16 21:3
DEBRA- 46:12
DEBTORS'- 6:3 7:3
12:17 16:2 21:1
26:10 27:15 28:2
29:4 31:13 34:20
36:13 37:2,8 38:3
45:24 65:18 73:22
DECIDE- 19:9
DECIDED- 39:24
65:20 69:11 70:5
DECISION- 18:3
70:4,8,17 76:9
DECLARATION-
47:22 51:12
DECRETAL- 22:3
DEDUCTION- 23:20
72:9,11
DEEMED- 26:12
DEFENSES- 38:25
DEFINED- 12:10
22:1
DELAY- 55:14,16
56:3 58:19
60:2,16,25 64:1,5
65:22,23
72:1,2,13
77:18,19,21,23
78:12,15 79:2
DELIVER- 65:16
DELIVERED- 4:14
65:15,17
DENIED- 78:24
DENY- 56:25 73:1
76:15
DESCRIBE- 29:6
DESCRIBED- 71:17
DESIGNED- 24:22
DETERMINATION-

56:6
DETERMINE- 45:17
DETERMINED- 29:15
36:24 38:14
45:10,18
DIDN'T- 5:4 9:6
13:12,24 19:10
20:7 22:22
23:2,13 44:18
49:21 52:1 59:5
60:22 61:15
63:7,11 67:6
68:8,17 72:6
74:12 75:3,13
DIFFERENCE- 71:21
74:13
DIFFERENT- 21:3
26:14 51:22 58:8
59:7,12 60:13
62:22 65:24 68:16
71:2
73:16,17,18,20
74:21 75:11,23
76:1 80:2
DILIGENT- 79:4
DILIGENTLY- 65:10
71:18
DIRECTLY- 7:5
49:13 53:22
DIS- 76:18
DISAGREE- 79:18
DISALLOWING- 41:8
DISCLOSURE- 55:6
77:12
DISCONTINUED-
14:5
DISCOUNT- 76:18
DISCOVERED-
54:14,15 63:17
65:17 69:17 71:19
77:22
DISCOVERY- 78:5
DISCUSSING- 12:3
DISCUSSIONS-
39:22
DISJUNCTIVE-
45:21
DISPUTE- 6:16,24
53:17
DISPUTED- 41:10
DISREGARD- 59:5
61:4
DISREGARDED-
32:23
DISRUPT- 59:21
60:9,12
DISTINCTION- 18:7
21:17 23:12 65:8
DISTINGUISHABLE-
58:21
DISTINGUISHED-
62:25
DISTRICT-
25:19,20 26:21,22
49:4,7,22
50:10,24
DOCKET- 42:20
80:9
DOCUMENTATION-

63:8 65:15
DOCUMENTED- 79:5
DOCUMENTS- 6:14
DOESN'T- 17:13
19:18 51:6 61:14
66:21 67:10 68:11
72:21
DOLLAR- 44:7
DOLLARS- 44:9
DOUBLE- 37:5,13
39:7,8,22 79:11
DOUBLE-CHECK-
5:12
61:16
DOUBLE-CHECKED-
61:18
DOUBT- 55:5
DRASTICALLY-
75:23
DRAW- 21:17 23:12
DRAWING- 18:6
DUE- 6:8 24:10
DUMPING- 62:7
DUPLICATE- 31:2
66:13 69:19

**E**

EACH- 17:7
29:16,18 58:7,8,9
76:3
EARLIER- 15:8
17:3
EARLY- 54:15,20
EFFECT- 19:11
22:25 28:13
EFFECTIVE- 13:21
EFFORT- 68:19
EIGHT- 56:21 57:5
ELECTRONIC- 81:13
ELEVEN- 35:22
ELLEN- 31:2,3
EMAIL- 65:16
EMERGENCY- 13:14
EMPHASIS- 56:3
EMPOWER- 9:23
EMPOWERED- 8:9,20
12:5 20:25 21:22
ENFORCE- 21:8
ENJOINING- 27:2
ENRON- 57:9 62:19
ENTER- 8:9 12:6
19:23 28:19 41:8
ENTERED- 4:4,8
25:13,17 65:4
ENTIRETY-
45:13,16
ENTITLED- 10:14
21:10 51:23 81:14
ENTITY- 74:10
ENVELOPE- 66:10
78:21
EQUALS- 54:8
EQUIPMENT- 7:8
12:12 22:7
EQUITABLE- 56:5
63:22
EQUITY- 28:6,13
32:16,20,25
33:3,15 34:6
35:8,13 40:15

67:22
ESCROW- 9:15,19
49:5,19,21
ESCROWED- 49:16
50:2,25 51:18,19
ESSENTIALLY-
25:16,22 26:5
73:25
ESTATE- 16:20,23
49:6,12 51:3
64:5,12 66:1
70:21
ET- 34:19
EVENTS- 8:15
EVENTUALLY-
31:12
EVERYBODY-
62:7,8
78:17 80:8
EVERYONE- 67:2
EVERYTHING-
10:16
50:17 73:8 80:20
EVIDENCE- 46:15
57:24 60:8 61:18
66:22 68:13 77:1
EWING- 52:16
EX- 65:15
EX'D- 65:14
EXAMINED- 29:15
EXAMPLE- 9:7
34:17
EXCEPT- 80:20
EXCLUDE- 13:18
EXCUSABLE-
55:10,22 56:1,7
57:1 63:1,22,25
71:10 74:23
EXCUSES- 73:24
EXECUTED- 25:21
EXECUTION- 21:14
EXECUTIVE- 39:14
52:17
EXHIBITS- 78:11
EXISTENCE- 56:24
EXPECT- 50:5
EXPEDITED- 52:22
EXPENSE- 5:22
23:25 24:19
EXPENSES- 14:10
EXPIRED- 12:24
13:8
EXPLAIN- 70:14
EXPLAINED- 28:12
EXPLANATION-
69:2
72:3
EXPRESS- 58:18
73:25 74:11
EXPRESSLY- 62:23
74:21
EXPUNGE- 33:20
34:6 45:12,16
EXPUNGED- 32:18
78:4
EXPUNGEMENT-
43:14
EXPUNGING- 31:6
EXTENSION- 22:25
23:4

31:12 32:19
33:17,22 35:18
57:25
EXTRA- 3:8 7:19
19:8,12 28:7

**F**

FACE- 33:15
FACIE- 46:20
47:11
FACTO- 9:24 10:4
20:8
FACTORS- 55:13
56:4,5,9 70:25
76:9 79:3,15
FACTUALLY- 58:20
FAILED- 18:19
19:4 36:22 68:3
71:19
FAIR- 23:6,11
36:10
FAIRLY- 22:19
54:6
FAIRNESS-
25:20,24
26:7,21,24
FAITH- 55:17
62:12 72:18,19
79:18,19,20
FALL- 76:13
FALLING- 76:14
FAULT- 73:25
FAVOR- 72:15
76:13
FEBRUARY- 6:22,23
13:21 23:20
FED- 65:14,15
FEDERAL- 73:25
74:11
FEE- 24:12
FEEL- 16:19
FELT- 57:22
FF&E- 14:6
FGIC- 3:25
FIDE- 20:16 72:17
FIFTEEN- 35:10,21
FIFTH- 27:22
29:1,4,6 30:21
38:7,8 39:6 40:13
48:1 52:19 54:21
80:12
FIFTY- 23:19
FIFTY-THREE- 31:8
FIGURE- 48:11
65:3
FILING- 5:10
33:23 70:10 72:13
77:23,24 79:21
FILL- 75:21
FINAL- 13:5 62:11
FINALLY- 55:16
62:11 79:17
FIND- 9:22 67:6
FINDING- 35:12
FINE- 25:4 27:11
30:11,16 31:21
40:17 47:18 53:7
66:20 68:22 80:5
FIRM- 66:17,21,23

67:4,8 69:18
**FIRMS-** 67:8
**FIRST-** 4:6 12:2
22:2 30:25 41:15
47:13 56:12 62:21
66:6
**FIVE-** 44:9
**FIXED-** 44:22
**FIXTURES-** 7:7
12:11 22:7
**FLAGGED-** 38:9
**FLANIGAN-** 6:2
**FLOODGATE-** 35:14
71:1,25
**FLOODGATES-**
56:20,22 57:11,18
58:3,5,10,18,19
59:24 76:19 77:2
**FOCUS-** 17:20 79:1
**FOCUSED-** 70:6
**FOLLOW-** 61:23
79:8
**FOLLOWED-**
15:14,24,25 16:5
23:14 46:17 65:14
**FOLLOWING-** 55:13
**FOLLOWS-** 19:3
**FOLLOWUP-** 5:1
66:20,24 67:12,19
69:19 75:7,8
**FORBID-** 43:15
**FORCED-** 18:3
**FORECLOSURES-** 4:7
**FOREGOING-** 79:23
81:11
**FORGOT-** 57:15
**FORM-** 25:14
26:2,15,16,17
28:20 36:23 40:21
41:5 42:2 43:18
47:25 52:6 58:23
69:13,14,15,17
73:13,16,21 74:15
79:25
**FORMS-** 38:13
73:12
**FORTH-** 39:1 60:18
**FORTY-FOUR-**
44:9,22,23
**FORWARD-** 13:12
15:5 25:23 27:5
28:17 35:6 39:13
41:24
**FOUND-** 70:16
**FOUR-** 41:19 56:4
58:25 70:6 76:9
78:5 79:3
**FOUR-PRONG-** 55:12
**FOURTH-** 27:15,22
28:2,19 72:23
**FRANKLY-** 58:2
**FRAUD-** 33:18
35:12 36:2
**FRONT-** 7:12 48:12
76:20
**FRONTS-** 63:12
**FULL-** 41:9 65:14
**FUNDAMENTAL-** 65:8
**FURNITURE-** 7:7

12:11 22:7
**FURTHER-** 12:16
16:9,21 31:23
58:4 81:3
**FUTURE-** 40:8

### G

**GAVE-** 38:10 69:14
**GENA-** 36:19,20
**GENERAL-** 26:13
46:25
**GENERALLY-** 26:23
34:18
**GET-** 5:16 19:8
32:9 35:22 36:17
39:18 51:24
61:7,9 62:8,13
66:13,14,18
67:11,12 68:16,17
70:23 71:8,15
74:12 79:9
**GETS-** 78:21
**GIVE-** 15:12 16:12
24:22 61:21 62:6
**GIVEN-** 16:11
17:23 70:14 73:23
79:4
**GIVES-** 17:11
**GLOBAL-** 13:18
**GMAC-** 39:23 40:9
**GO-** 3:13 5:14,17
8:1 12:7 15:16
25:23 27:5 30:12
34:20 35:11 39:13
41:1,16 45:8
67:13 70:25
78:10,18,19 79:8
**GOFF-** 36:19,20,22
**GOFF'S-** 36:24
37:3
**GOOD-** 3:1,2
5:24,25 11:25
14:20 27:19 43:9
46:23 72:18 79:17
80:18
**GOT-** 3:11 8:1
15:6 35:22 43:2,6
45:4 51:2 60:21
61:2,15 63:16
65:16 67:12 68:8
70:8,11 75:17,22
79:8,9,10 80:20
**GOVERNS-** 55:10
**GRACE-** 69:5
**GRANT-** 22:16
23:15 46:18 64:9
76:8,25 79:24
**GRANTED-** 23:5
46:14
**GRANTING-** 79:14
**GRANTS-** 26:5
56:22
**GROUNDS-** 38:23
40:9 43:24
**GROUPED-** 30:22
50:15
**GUARANTEE-** 57:16
**GUARANTOR-** 57:20
**GUESS-** 33:10

40:19 48:12,18
50:5 64:25 68:21
70:25 72:5
**GUIDELINES-** 46:17
67:19
**GUYS-** 3:11 77:6

### H

**HADN'T-** 14:10
77:22
**HAHN-** 14:21
**HAND-** 7:17
28:20,25 41:1
80:1,23
**HANDED-** 10:16
**HANG-** 29:7 34:1
36:17
**HARD-** 17:24
**HARDIN-** 48:4,17
**HARDLINE-**
55:22,24 62:23
74:21,22
**HARM-** 66:1
**HARTMANN-**
81:11,16
**HASN'T-** 10:17
60:5 70:14 72:22
78:4
**HATED-** 78:16
**HATES-** 78:17
**HAVEN'T-** 49:17
50:6 63:2
**HE'S-** 44:16 45:2
47:1 62:2
**HEALTH-** 10:2
**HEAR-** 17:6 47:3
76:3
**HEARD-** 28:3
**HEARING-** 4:1 6:24
25:21,24
26:7,21,24 27:5
28:3,9,10 39:9
42:1 46:22
47:8,19,22 63:8
**HECK-** 10:3
**HELD-** 14:13 23:24
**HELP-** 36:4
**HERE'S-** 49:3,19
**HEREBY-** 8:8 19:21
21:21
**HERNANDEZ-**
41:22,24 42:6,8
**HERNANDEZES-**
42:13
**HESSEN-** 14:21
**HEY-** 79:10
**HIGHLIGHTED-**
55:11
**HILLER-** 5:3
**HITS-** 49:20
**HOLD-** 3:10
11:9,10 49:5
**HOLDBACK-** 24:13
**HOLDER-** 49:15
**HOLDING-** 24:4
58:18
**HOLDINGS-** 48:20
**HOLE-** 80:2

**HOME-** 48:10,19
53:17 75:10,16
79:11
**HONOR'S-** 20:21
55:5 58:6
**HOOK-** 9:8,10,12
**HOPE-** 78:21
**HOPKINS-** 39:23
40:9
**HUNDRED-**
35:10,21,23
44:9,17
**HUNDREDS-** 35:7
50:3
**HURT-** 11:6

### I

**I'D-** 7:18 38:7
39:20
**I'LL-** 7:5 14:22
23:14 27:13,23
31:25 34:5,20
36:17 38:3 42:7
48:23 52:4 64:24
77:12 80:10,23
**I'VE-** 3:11 4:22
8:1 23:18 28:10
30:22 41:5 53:6
56:12 60:2 62:21
72:16 78:10
**IBN-** 8:12
**IDENTICAL-** 43:13
**IGNORED-** 58:24
67:2,4 75:17
**IM-** 51:17
**IMMEDIATE-**
23:23,24 24:2,21
25:1 31:7
**IMMEDIATELY-**
55:3
71:20 72:7 73:22
**IMPACT-** 55:15
60:2,4 64:2,5
77:18,19 78:13
**IMPLICATION-**
18:2
**IMPLORE-** 63:2
**IMPLY-** 79:18
**IMPORTANT-** 20:2
55:7,19 62:1
76:11 78:14
**IMPORTANTLY-**
61:1
78:3
**IMPRESSION-** 62:6
**IMPROPER-** 46:16
**INADVERTENCE-**
56:7 59:10 62:5
**INADVERTENTLY-**
54:11 60:21 79:6
**INC-** 46:9 48:20
**INCLINED-** 76:2
**INCONSISTENT-**
10:15
**INCUMBENT-** 78:19
**INDICATED-** 68:22
**INDICATION-** 60:8
**INDY-** 13:17
**INDYMAC'S-** 7:2
**INFORMAL-** 39:21

**INSIGNIFICANT-**
22:23
**INSTRUCTED-** 54:3
**INSTRUCTIVE-**
57:10
**INTENDED-** 41:25
66:15 68:2,12
**INTENT-** 27:4
68:13,14
**INTERACTION-** 6:14
**INTEREST-** 9:25
10:12 16:21
28:6,13
32:16,21,25
33:3,15 34:6,7,10
35:8,13 72:22
77:4
**INTERNALLY-** 66:18
**INTERPRETING-**
17:14
**INVESTIGATE-** 49:1
**INVESTMENT-** 55:11
**INVOLVE-** 70:19,20
**IRRELEVANT-** 17:15
21:9
**IRRESPECTIVE-**
37:10
**ISN'T-** 18:16 33:8
61:23 72:17 75:25
77:15
**ISSUE-** 9:13,17
20:14,16 23:22
31:7 47:15 50:6
57:11 58:10 62:3
64:25 65:9 70:5
71:1 76:19 78:16
79:16
**ISSUED-** 31:11
**ISSUES-** 8:18,19
25:25 30:23 52:1
65:2 73:23
**ITEM-** 3:7,14,24
4:3 5:20 25:10,11
27:15 39:18 52:13
**ITEMS-** 3:6,22
4:6,12 27:21 39:7

### J

**JAMES-** 44:3
**JAN-** 37:6
**JANUARY-** 54:12
**JOB-** 23:10
**JOINDER-** 14:23
73:5
**JOINED-** 64:22,23
**JUDGE-** 67:21
69:11
**JUDGES-** 26:23
27:3
**JUDGMENT-** 31:8,10
36:14
**JUDICIAL-** 77:19
**JULY-** 25:18 53:18
**JUMP-** 30:17 41:12
**JUNE-** 4:1 39:10
42:1 47:18
**JUNIOR-** 28:5
**JURISDICTION-**
50:9

JUSTIFICATION-
65:11,12,21
69:8,25 71:23

**K**

KARA- 11:25
KAREN- 81:11,16
KENTON- 48:5
KICK- 19:16 48:25
KILLING- 42:22
KINDS- 77:7
KNOWLEDGE- 48:21
KNOWS- 36:5 75:1

**L**

LABELED- 36:15
37:5
LANDLORD- 6:7
15:6 23:3 69:11
LANDLORDS- 24:23
LANGUAGE- 6:13
9:23 20:25
LARGE- 35:16
LARGER- 78:10
LATER- 6:7,16
9:4,15 21:2 31:4
43:16 60:23 63:18
67:5 76:24
LAUGHTER- 32:8,13
LAWYER-
63:6,11,15
75:2,11
LEAD- 25:12 57:23
LEASES- 7:3,7
8:10,16 11:6,7
12:11,21
13:1,10,18,19
14:3,8 17:25
19:12
21:1,15,16,22,25
22:6,21
LEAVE- 52:18
LED- 8:16
LEGAL-
50:11,22,23 53:6
LEGITIMATE-
65:11,21 69:8,25
70:14 71:17
LENGTH- 55:14
60:2 77:18
LESLIE- 28:5
LET'S- 7:11 40:23
47:4 48:25 80:5
LETTER- 9:6
13:18,22 19:22
36:15 37:12 39:15
48:8
LETTERHEAD- 48:16
LETTERS- 39:22
LETTING- 11:12
LEVELS- 75:3
LIABILITY- 42:9
45:9
45:10,15,17,18,19
,20,24
LIABLE- 49:18,23
50:7,11,24 51:5,7
LIBERAL- 56:1
63:23

LICENSE-
20:3,6,11 21:14
LICENSING- 21:5
LIEN- 4:6 49:14
LIFT- 59:1
LIMBO- 17:3
LIMIT- 77:10
LIMITATIONS-
19:13 22:20
36:4,8
LIMITED- 34:16
LINE- 48:17 67:13
LINES- 63:4
LIQUIDATED- 44:16
LIQUIDATING- 14:1
70:19
LISTED- 8:10 31:1
39:14,21
LISTENED- 74:7
LISTENING- 3:18
LISTS- 41:23
LITIGATION- 76:19
77:2
LLC- 40:9
LOAN- 14:4,5 15:3
LOCATED- 7:8
12:12 14:7 22:7
LOCATION- 11:13
LOCATIONS- 14:4,7
LONG- 23:4 27:23
60:19 61:19 64:1
79:23
LOOK- 6:13,14
21:13 22:11 29:7
51:9 53:10 55:23
56:4 65:2 66:6
69:11 71:1 76:8
79:10
LOOKED- 65:19
73:15
LOOKING- 3:18
6:11 35:14 46:7
LOT- 57:23 59:25
62:22 77:6
LOTS- 71:3
LUNN'S- 74:14

**M**

MAGNITUDE- 60:11
78:7
MAIL- 61:24
MAIN- 12:22
MAKE- 5:1 6:12
7:12 14:24 15:13
18:3 51:6 56:6
61:24 65:15
67:9,12,13,15,24
77:16 79:7
MAKING- 35:18
66:25 70:10
MANLEY- 25:12
MANY- 22:25 75:3
78:9,17,18
MARCH- 6:20
54:15,17 72:4
77:23
MARINARO- 44:4
MARINARO'S- 44:8
MARK- 14:20 52:16

MARKING- 52:6
MATTERS- 4:9 17:9
MATTHEW- 3:3
41:22,24 42:8
MCDONALD- 39:23
40:9
MCLAIN- 5:21 6:2
7:4 8:11,14 9:13
12:3,16
13:3,11,16,19,23
14:17 21:7
MCLAIN'S- 6:10
13:23
MEANINGLESS-
16:17 17:14
MEANT- 48:18
60:21 68:7,16
MEDICAL- 10:3
MEET- 71:23
MELANIE- 41:22,24
42:8
MENTIONS- 58:17
62:18
MERE- 56:24
MERELY- 14:16
MESSED- 66:3 69:2
MILLION- 56:21
57:5 67:25 68:5
71:14
MILLS- 46:12
MINE- 80:1
MINUTI'S- 52:11
MISPLACED- 58:17
MISSED- 63:6,8
65:12 67:20 69:3
71:23
MISSPOKE- 31:17
MISTAKE- 56:7
62:15 67:6 69:3
70:10,15,22 71:8
MITIGATES-
72:15,24 79:6
MIXED- 13:2
MODIFY- 13:22
MONETARY- 6:8
MONEY- 49:22
MONTH- 51:2 69:20
72:9
MONTHLY- 49:17
MONTHS- 54:17
56:13 58:25
60:3,22 63:18
64:5 65:4 67:5
72:2,4,11,14 75:9
78:4,6
MONTHS'- 22:25
MOOT- 40:5
MOREOVER- 13:5
MORNING- 4:16,22
27:19,23
MORTGAGE-
48:10,19 49:14,15
51:2 53:18
MORTGAGES- 49:10
MOTIONS- 24:16
71:12 76:2 77:7
MOTIVE- 79:21
MOVANT- 39:16
55:16,17 76:13,14

79:17,20
MOVANT'S- 78:16
MOVE- 35:23 55:5
MOVED- 56:17
72:7,8,10
MOVING- 20:4
29:3
32:5,11 36:10
39:3 40:13 43:3
MUCH- 11:19
22:24
35:25 55:25
64:14
74:12,21 76:14
MULTIPLE- 43:13
MUSICLAND- 62:20
69:10 72:8 74:19

**N**

NARROW- 35:20
NARROWED- 68:4
NATHAN- 27:19
NATIONAL- 46:9
NEEDED- 13:2,9
71:18
NEGLECT-
55:11,22
56:1,7 57:1
63:1,22,25 68:24
70:15 74:23
NEGLECTFUL-
68:23,25
NEGLIGENCE-
79:19
NEGOTIATED- 8:17
NEGOTIATING-
60:7
NEGOTIATIONS-
25:13 59:22
NEITHER- 21:13
NEW- 25:20 29:19
33:20 35:12
36:21
37:9 51:5 62:20
NINE- 41:11 43:1
68:5,6
NIT- 26:18
NOBODY- 75:24
NON- 34:4,16
NONCONSENTED-
23:4
NONETHELESS-
50:7
NONRESIDENTIAL-
12:21 18:4
NONSUBSTANTIVE-
28:2 29:4
33:9,21
35:19
NOR- 21:14,15
NOTED- 42:1
NOTES- 29:7
30:20
41:2
NOTICE- 37:19
58:24 59:4
61:3,8,9,15
66:11
67:3,16 70:9,11
73:10 75:12

43:23 52:20
OBJECTED- 28:4
31:3 43:11 54:22
59:1 63:19
OBJECTING- 43:16
OBJECTIONAL-
29:18
OBJECTIONS- 27:22
39:1,3 64:9
OBLIGATIONS- 6:8
OCCUR- 9:6 10:24
11:14 12:15 14:10
22:22 23:13
OCCURRED- 8:21,22
10:23 11:1 15:21
17:1,2 19:2 20:1
24:25 70:15
OCTOBER- 53:21,25
68:12 75:22
OFFER- 32:16
OFFERED- 37:8
OFFICE- 4:14
8:10,12 12:8,9
21:1,2,15,16,22,2
3,25
14:4 15:3 22:5,12
53:18
OFFICES- 14:5
OHIO- 48:5
OKEY-DOKE- 25:9
OMNIBUS- 27:15,22
28:2,3,19
29:1,4,6 38:7
39:6 40:13 41:6,7
44:5,6 52:19
54:21 80:13
ONES- 5:5
OOPS- 67:6
OPEN- 17:20 56:23
58:3
OPENED- 14:9
57:22
OPENING- 77:2
OPERATE- 11:13
21:6
OPERATED- 9:16
OPERATING- 20:6
OPERATIVE- 50:9
OPINION- 10:4
63:13
OPPOSE- 64:12
OPPOSED- 31:21
33:9 34:7
OPPOSING-
64:16,18
OPPOSITION- 14:23
58:13 59:18 64:21
ORACLE-
38:13,19,20,24
ORACLE'S- 38:9,23
ORDER'S- 23:7
ORDERED- 26:21
ORDERS- 4:8 24:12
80:19
ORIGINATION-
14:5,6 15:3
OTHERWISE- 13:12
22:19
OUTSET- 52:21

55:18
**OVERBLOWN-** 58:11
**OVERCOME-** 46:19
47:11 79:15
**OVERRULE-** 23:14
31:25 32:1
34:11,21
**OVERSEEING-** 10:21
**OWN-** 58:9 76:4

---

P

**PAID-** 6:24 9:7
10:17 24:1,13
49:17 50:2,7
51:21,24
**PAPERS-** 59:18
64:21
**PARALEGAL-** 5:1
**PARK-** 39:14,15
52:17 53:5,17
54:1 80:21
**PARTIALLY-**
34:21,22
**PARTIES-** 6:14
9:25 11:2,6 15:1
20:10 26:8,9,24
39:25 53:18
**PARTNERS-** 5:21
6:2 8:11,14 9:13
12:17
13:3,11,16,19,23
14:17 21:7
**PARTNERS'-** 12:3
**PARTY-** 71:22
**PAST-** 17:7
**PATRICK-** 25:12
**PAUSE-** 9:13
22:10,15 25:8
27:12 29:8 34:3
37:14 41:4 42:16
49:2 52:9 80:7
81:2
**PAY-** 14:9 49:22
51:2
**PAYING-** 15:6
24:3,5,6,7,9,14
**PAYMENT-** 6:22
9:20 10:19,20
23:23,24 24:2,22
51:14
**PAYMENTS-** 50:8
51:6,15
**PAYS-** 49:13
**PEJORATIVE-** 77:13
**PENDING-** 71:13
**PEOPLE-** 27:2 36:1
49:10 51:23
68:5,7 76:1 77:13
**PERFORMANCE-**
20:14 21:14
**PERHAPS-** 76:11
**PERIOD-** 6:9 23:5
45:24 51:1 72:14
**PERMITTED-** 65:5
**PERSON-** 47:4
**PERSONALIZED-**
73:12
**PERSPECTIVE-** 6:10
**PETITION-** 9:7,13

17:2 53:20
**PHONE-** 47:1,4
**PHYSICAL-** 77:1
**PICK-** 42:24 74:5
**PICTURE-** 62:14
**PIECES-** 19:2
**PIONEER-** 55:11
56:6 58:7 63:21
70:6,25 72:15
**PLACE-** 20:4 79:7
**PLACED-** 54:11
**PLACES-** 56:2
**PLAIN-** 6:13
**PLAINTIFF-** 25:12
**PLAINTIFFS-**
25:12,17,23 26:6
**PLAINTIFFS'-**
25:14
**PLAN-** 23:25 24:20
31:13 55:6
59:16,21,22
60:7,14 64:6
77:12,16
**PLAY-** 17:13
**PLEADING-** 7:16
55:21
**PLEADINGS-** 56:20
**PM-** 81:7
**POD-** 60:14
**PODIUM-** 5:23
27:16
**POINTED-** 12:4
13:16 20:25 56:12
**POINTS-** 11:1
14:24
**POLICIES-** 46:16
**POLSINELLI-** 6:1
20:20
**POSITION-** 10:16
12:25 23:8 37:24
45:24 50:11 60:13
**POST-** 9:7 17:2
**POST-PIONEER-**
76:9
**POTENTIAL-** 14:9
17:22 66:1 70:21
77:18
**POTENTIALLY-**
17:21
**POWER-** 14:19,20
15:15,17,20
16:13,18,22 20:12
53:6
64:15,17,19,21,24
66:17 68:6,14,21
73:7 74:20 75:1
**PRACTICE-**
61:19,23 78:17
**PRAY-** 78:21
**PRECEDENT-** 22:24
**PREFER-** 53:10
**PREJUDICE-** 34:12
46:21 55:14
56:10,20 59:15,23
64:1,8 70:21
71:1,3,5,11 75:24
76:16,17 77:16,17
78:23
**PREMISES-** 11:13
20:5

**PREPAID-** 66:10
**PREPARE-** 59:8
61:21
**PREPARED-** 53:9
54:2 55:3 60:20
68:1 69:13,24
76:21
**PRESENT-** 26:6
55:3 63:19
**PRESENTED-** 25:19
**PRESERVES-** 26:10
**PRETRIAL-** 3:24
**PRIMA-** 46:19
47:11
**PRIOR-** 5:8 12:25
13:8,16 47:22
53:20 54:4 68:3
75:19 76:22,23
**PRIORITY-** 14:13
16:1 17:11
**PRIVATE-** 61:19,22
**PROACTIVE-** 75:4
**PROBLEM-** 35:14
65:25
**PROCEDURE-**
66:18,21 67:15
**PROCEDURES-** 46:16
67:19 69:18 79:7
**PROCEED-** 19:24
40:18 53:9
**PROCEEDED-** 65:18
**PROCEEDINGS-** 60:2
77:19 78:13
81:7,13
**PROOFS-** 32:23,24
34:18 39:25
77:3,4 78:20
**PROPERTY-** 7:7
12:21 16:23 18:4
20:9 22:6 53:19
**PROPOSED-**
26:16,17 28:20
40:21 44:5 47:25
**PROSECUTING-**
48:17
**PROTECT-** 72:21
**PROTECTING-** 49:15
**PROVIDE-** 29:17
50:21
**PROVIDED-** 9:6
22:14 24:22 43:18
66:7,12
**PROVISIONS-** 29:20
**PRUDENT-** 63:16
**PULL-** 8:16 9:3
**PULLED-** 11:6,7
**PUNCHES-** 80:2
**PURCHASERS-** 21:16
**PURSUANT-** 6:5
8:7,13,14 73:11
**PUSH-** 46:8
**PUTS-** 10:8
**PUTTING-** 44:8

---

Q

**QUICKLY-** 27:24
29:6 38:8 39:20
**QUOTE-** 45:10

---

R

**RAISED-** 20:3
56:19 59:24
**RAMUSSEEN-** 37:6
**RATHER-** 7:18
34:10 43:15
**RE-** 48:17
**REACHED-** 13:17
28:10
**READS-** 15:23
46:6
66:2
**READY-** 80:20
**REALITY-** 35:19
77:14
**REALIZE-** 27:23
60:22
**REALIZED-**
54:22,23
**REALIZING-** 78:2
**RE-ARGUMENT-**
63:10
**REASON-** 23:2
56:3
58:19 60:16,25
62:24 70:7,14
72:25 78:15
79:2,21
**REASONABLE-** 25:1
65:11
**REASONS-** 12:22
55:15 73:24
**REASSERTED-** 37:7
**REASSERTS-** 37:20
**REASSIGNED-**
38:15
**REASSIGNING-**
37:8,22 41:9
**REATTACHES-**
37:21
**RECEIVED-** 32:14
39:21 41:13,19
43:10 54:22
58:23
67:16 72:6 73:10
74:15 78:1
**RECEIVING-** 36:21
**RECLASSIFYING-**
41:9
**RECONCILED-** 6:23
**RECORDING-** 81:13
**RECORDS-** 29:15
36:23
**REDUCED-** 42:8
44:12
**REFERENCED-**
22:13
**REFERENCES-**
48:8,16
**REFLECT-** 25:25
**REFLECTED-** 61:20
**REFUSED-** 51:18
**REGISTER-** 78:8
**REIMBURSE-** 9:19
**REIMBURSEMENT-**
9:18
**RE-INCLUDED-**
37:16
**REITERATE-** 73:7

**REJECTION-** 6:18
13:21
15:14,19,23,24,25
16:4,5,6,10,11
17:12 18:22 19:3
21:8 22:9 23:14
54:7 56:14 69:12
**RELATE-** 68:25
**RELATIONSHIP-** 7:1
**RELIED-** 33:14
61:25
**RELIEF-** 25:22
76:25
**RELOCATION-** 40:1
**RELY-** 33:12 53:3
**RELYING-** 53:7
**REMITTED-** 49:7
**REMOVE-** 13:23
**REMOVED-** 80:13
**REMOVING-** 80:21
**RENT-** 6:22,23
9:7,11 15:7 23:20
24:24 54:7
**REORGANIZATION-**
31:13
**REPRESENTATION-**
28:23 29:21 34:21
**REPRESENTED-**
28:15 57:6
**REQUEST-** 26:24
28:18 31:14 44:6
**REQUESTED-** 28:8
37:9 38:8 41:8
**REQUESTING-** 29:24
31:7 43:15
**REQUESTS-** 76:25
**REQUIRE-** 24:21,25
25:2
**REQUIRED-** 49:8,11
**REQUIRES-** 23:23
**RESERVE-** 31:22
38:22 40:7 43:23
64:12
**RESERVES-** 38:24
64:12
**RESIDENTS-** 49:6
**RESOLUTION-** 13:18
**RESOLVED-** 3:25
43:20,21
**RESPECT-** 4:5,8
9:2,14 26:11 28:4
31:11 37:10
39:9,24 41:20,21
64:10 73:9
74:6,19 75:10
**RESPOND-** 13:12
52:20
**RESPONDED-** 13:24
21:7 28:6 63:19
**RESPONSES-**
30:17,20,21
32:14,16,19 33:2
34:18,24 35:22
36:13,14
39:4,6,21
41:12,16,18,19
45:6
**RESULT-** 6:18
25:25 26:1 78:1

RETAIL- 15:2
RETAIN- 9:2,25
10:12
RETURN- 66:11
RETURNED- 66:14
REVIEWED- 36:23
REVIEWING- 38:13
REVISED- 17:23
25:25 26:8 27:13
29:1 36:16 38:9
41:5 42:2 43:18
REVISIONS- 30:15
RID- 35:22
RIGHTS- 9:2 10:9
26:10 38:25 40:8
64:12
RISE- 16:11,12
RIVER- 39:14,15
52:17 53:5,17
54:1 80:21
ROAD- 49:20 64:9
RON- 39:23
40:9,12
ROOM- 51:4
RUBBER- 49:20
RULE- 68:21
RULES- 71:10
RULING- 79:23
RUN- 20:7
RUSH- 76:4

S
SALE- 7:7
12:4,7,8,11,15,23
13:7,17 14:3,4,10
15:8,10 20:4,7
21:24 22:4,6
SATISFACTORY-
26:9
SATISFIED- 51:22
SAUL- 52:16
SCENARIO- 58:8
69:10
SCHEDULE- 73:14
74:16
SCHEDULED- 3:16
26:22,25
SCHEDULES- 73:13
SCHOOL- 49:4,6,22
50:10
SECOND- 3:10 7:9
28:19 42:7 60:1
67:15 72:15
SECTIONS- 8:7
SEE- 22:8 46:15
50:14 53:24 54:6
74:12 75:1 76:4
79:21 80:5
SEEING- 5:11
42:17
SEEK- 9:18 36:25
45:12
SEEKING- 6:20
64:10 77:24
SELL- 8:11 21:22
SELLING- 14:6
SENDING- 73:11
SENT- 37:19 54:16
59:10 61:11 62:15

67:3 68:4 69:12
73:14 75:12 76:23
77:21
SEPTEMBER- 15:4
SERIATIM- 45:8
SERIES- 49:3
SERVE- 13:3
SERVED- 13:11,23
54:21
SERVICER-
49:10,12 50:24
51:4,5,8
SERVICES- 40:2
55:12
SERVICING- 49:9
SET- 4:1 9:15
22:20 44:7
54:1,13 59:9
60:17 66:17
SETTING- 22:24
SETTLEMENT-
25:18,19,21,24
26:7,8
SEVERAL- 28:11
39:3,4 43:11,13
71:12
SHALL- 12:9
26:12,22,24
SHALTON- 6:2
SHARE- 3:11
SHARED- 26:15
SHE'S- 31:16,21
SHINES- 63:12
SHOULDN'T- 20:9
59:19
SHOW- 77:1
SHOWED- 73:14
SHOWING- 24:2
SIDE- 77:15
SIDES- 6:4
SIGN- 5:4,17
27:13 80:10
SIGNED- 54:2
60:20 65:6 67:1
68:2,11 75:21
76:22
SIGNIFICANT- 14:9
SIGNING- 24:12
SIMPLE- 79:12
SIMPLY- 15:8,9
33:2,24 37:7
50:23 54:12 57:15
58:6 59:5,10
60:21 62:14 66:2
69:2 70:15,22
74:23
SITUATION- 6:11
10:6 15:12 17:20
19:16 23:3 57:21
61:1 67:23 69:6
71:6,16,20,21,22,
25
70:18 73:20 74:13
SIX- 23:18 31:8
SIXTH- 27:22
41:6,7,19 44:5,6
78:9 80:23
SIXTY-FIVE- 23:18
SIXTY-ONE- 23:19

SIZE- 60:11 77:8
78:6
SLOT- 61:24
SMACKS- 79:20
SMALL- 38:5 71:4
SOLE- 55:1
SOLELY- 33:12
35:8 46:18 79:1
SOMEBODY'S- 45:4
SOMEWHAT- 79:6
SOPHISTICATED-
74:10
SOUDERTON-
49:4,22 50:9
SOUGHT- 6:22
SOUND- 81:13
SOUNDS- 46:23
SOUTH- 11:3
SOUTHERN- 25:20
SPECIFIC- 57:13
64:7
SPECULATING-
77:25
SPELLS- 38:2
SPEND- 77:6
SPOKEN- 53:6
STAMPED-
66:10,13,19 67:11
STAND- 10:25
STANDARD-
55:10,11,22 57:1
62:22 63:1,25
71:7,24 72:18
74:21
STANDARDS- 70:6
STARGATT- 12:1
27:20
STARK- 71:21
START- 3:17,20
STARTING- 37:19
78:7
STATE- 38:24
51:12
STATEMENT- 55:6
77:12
STATING- 12:17
28:7
STATUTE- 15:13,23
16:15,16 17:13
STATUTES- 14:13
17:14
STAY- 25:22 59:1
STEP- 11:9 47:2
STEPPED- 15:5
STEPS- 66:24
67:10 72:21
STICK- 42:24
78:20
STORY- 60:19 77:1
STRAIGHTFORWARD-
54:6 56:14
STRAWMAN- 19:8
20:13
STRICTLY- 14:14
SUB- 75:24
SUBMITS- 72:25
80:12
SUBMITTED- 43:12
66:8 69:23,25

SUBSEQUENT-
15:18
SUBSTANCE- 36:3
38:1
SUBSTANTIVE-
33:8
34:5,13,17 35:19
41:6 64:9 75:25
SUELTHAUS- 6:2
SUFFICIENT-
46:19
47:23 50:20
51:11
68:22 79:15
SUGGESTION-
62:12
SUITES- 39:14
52:17
SUPPLEMENT-
33:10,11,17,23
46:21 47:9,22
SUPPLEMENTING-
33:19
SUPPORT- 12:18
34:9 53:2 73:5
SUPPORTING- 34:7
SUPPOSE- 35:4,18
49:21
SUPPOSED- 49:19
79:8
SUPREME- 55:12
SURVIVING- 31:8
43:16,24
SUSTAIN-
34:5,12,24 38:3
52:4
SUSTAINED- 31:15
37:3,10
SUSTAINING-
28:19
SYMPATHETIC-
69:4

T
TARDY- 72:9,11
TAX- 50:24
TAXES- 48:16
49:6,13,17,18,21
51:3
TAYLOR- 12:1
27:20
TELLING- 66:4
TEN- 25:3,4
TENS- 77:4
TERM- 12:10 22:1
55:24
TERMS- 26:9
62:25
72:1
TEST- 55:12
TESTIMONY- 47:5
53:8,10
THANKS- 3:13
THAT'D- 30:16
THEREFORE- 17:1
28:18 31:14 40:3
54:16 71:8
THEREIN- 7:8
12:12 22:7
THEY'LL- 36:11

THIRD- 37:20
49:18 70:7
THIRTEEN- 44:9,17
THIRTEEN-O-FIVE-
44:22
THIRTY-O-FIVE-
44:23
THOMAS- 31:2,3,5
THOMAS'S- 31:15
THOUSANDS- 70:20
77:3,5
THREE- 18:20
39:21 55:15 69:16
72:11 76:12 80:2
TIE- 55:7 73:12
TIES- 52:19
TIME- 8:18 11:1,4
15:7 19:9,12
20:14 22:25 24:1
25:2 27:25
28:7,25 31:11
32:9 48:7
54:10,23 56:15
74:12 77:6
TIMES- 8:23 28:11
TINK- 60:10
TITLE- 16:7
TODAY- 39:13
52:16 54:25 81:4
TODAY'S- 28:9
80:9
TOMORROW- 4:15
TOOK- 59:5 61:3
72:4
TOP- 26:20
TOUCHED- 60:3
TOWARDS- 20:5
TRANSACTION- 9:3
10:22 15:5,7,8
14:3 20:7
TRANSCRIPT- 81:12
TRANSCRIPTS-
81:17
TRANSFER- 8:11
21:23
TRANSFERRED- 12:9
16:8
TREATMENT-
11:10,11 44:4
TRICKY- 32:6
TROUBLED- 78:22
TRULY- 20:15
TRUMP- 49:14
TRUST- 49:5
TURN- 23:1,2
41:17 58:9 62:17
TURNED- 58:19
TURNING- 53:15
56:9 60:1,16
TURNS- 76:4
TWEAK- 27:9
TWENTY-FIVE-23:19
TWENTY-THREE-
50:19
TWO- 19:1 21:3
23:19 36:12 53:3
54:17 55:14 56:13
60:3 63:18 64:5
69:9 72:1,4 75:9

**TWO-YEAR-** 6:8
**TYING-** 73:19
**TYPES-** 24:19
**TYPICAL-** 10:6
**TYPICALLY-** 61:20
**TYPO-** 41:25

U

**ULTERIOR-** 79:20
**UM-HUM-** 10:11
33:16 54:19 75:18
**UNDERSTANDS-** 80:9
**UNDETERMINED-**
44:13,14
**UNEXPIRED-** 12:21
**UNIDENTIFIED-**
7:20 36:6 47:20
**UNIQUE-** 71:6
**UNITED-** 48:9,19
**UNIVERSITY-**
10:2,3
**UNLESS-** 11:16
26:25 29:5
**UNLIKE-** 55:19
56:2 59:14,16
**UNSECURED-** 26:13
**UNUSUAL-** 57:7
**UPHELD-** 70:17
**USED-** 74:11

V

**VACATED-** 53:19
75:21
**VALID-** 32:17
**VALIDITY-** 46:20
47:11
**VALUE-** 41:10
44:13
**VERIFY-** 66:8,18
**VERSED-** 35:17
**VERSION-** 38:16
**VERSUS-** 21:2
35:19 48:9,19
**VIEW-** 55:22,24
62:25 65:2
**VIOLENCE-** 22:19
**VOID-** 19:10,11
**VOYAGE-** 58:14
59:13,15,16 70:4

W

**WAIT-** 7:11 18:15
24:19 42:12
**WAITED-** 74:11
**WAIVING-** 16:9
**WALK-** 29:5 41:11
**WARD'S-** 19:2
**WASN'T-** 3:17 7:12
9:7,22 12:18 14:3
15:20 57:12 58:24
59:10 65:17
69:1,18,23,25
73:21 74:6 79:13
**WE'LL-** 35:3 45:7
47:8 55:7
**WE'VE-** 24:16
33:13 38:6 41:12
56:11 80:20
**WEEKS-** 69:16

**WEIGH-** 76:10
**WEIGHT-** 59:25
**WELCOME-** 73:3
**WHAT'S-** 33:11
61:20 62:1 64:2
80:2
**WHATSOEVER-** 10:13
57:24 66:24 76:18
**WHEREBY-** 22:24
**WHOLE-** 20:10
45:11,17,19
**WIFE-** 28:11
**WILL-** 3:15 4:25
5:22 27:16
28:13,24 29:5
31:12 37:3 39:17
40:15 42:25 54:6
56:22 58:2 59:21
66:10 74:25 78:10
79:19,24 80:16
**WILLIAM-** 53:4
**WIN-** 32:12
**WINFIELD-** 53:4
54:1,2,9,21 59:8
60:17 61:7 74:15
**WISH-** 39:8,13
40:4 41:20
**WITHDRAWAL-** 39:24
40:4,20
**WITHDRAWING-** 40:3
**WITNESS-** 51:13
**WITNESSES-** 53:11
**WON'T-** 51:3
**WORD-** 20:23 71:10
**WORDS-** 20:22
68:17
**WORK-** 24:16 52:6
61:20 80:19
**WORKED-** 65:19
73:22
**WORKING-** 77:14
78:8
**WORKS-** 50:8
**WORRIED-** 22:24
71:24
**WOULDN'T-** 14:8
16:13,23 57:1
**WRITTEN-** 71:10
**WRONGDOING-** 46:16
**WRONGFULLY-** 51:18
**WROTE-** 75:16

X

**X-** 39:7

Y

**Y-** 39:7
**YEAR-** 15:8 17:3
19:8 69:11
**YEAR'S-** 54:7
**YESTERDAY-** 3:6,22
4:13,15 64:22
**YORK-** 25:20 62:20
**YOU'D-** 41:1
**YOU'LL-** 32:1
34:19,20 41:15
**YOU'VE-** 46:8
47:16 49:16
51:14,18

**YOUNG-** 3:4 12:1
27:20
**YUP-** 52:14

Z

**Z-** 39:15