IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]           :
                                                             :   Jointly Administered
                            Debtors.                         :
                                                             :   Objection Deadline: June 18, 2008 at 4:00 p.m.
                                                             :   Hearing Date: June 25, 2008 at 10:00 a.m.
------------------------------------------------------------ x

**DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING AND AUTHORIZING SETTLEMENTS AGREEMENT BETWEEN CERTAIN DEBTORS AND THE COMMISSIONER OF THE STATE OF CONNECTICUT DEPARTMENT OF BANKING REGARDING PAYMENT OF CERTAIN MORTGAGORS' TAXES AND CLOSING OF CERTAIN MORTAGE LOANS**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submits this motion (the "Motion") for entry of an order, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving (i) a Settlement Agreement (the "Servicing Settlement Agreement"), a copy of which is attached as Exhibit A to the proposed form of Order annexed hereto, by and among AHM Servicing and the Commissioner of the State of Connecticut Department of Banking (the "Commissioner," and together with AHM Servicing, the "Servicing Settlement Parties"), and (ii) a Settlement Agreement (the "Origination Settlement Agreement," and together with the Servicing Settlement

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

DB02:6624057.2                                                                                          066585.1001

Agreement, the "Settlement Agreements"), a copy of which is attached as <u>Exhibit B</u> to the proposed form of Order annexed hereto, by and among AHM Corp., AHM Acceptance and AHM Ventures (the "<u>Origination Settlement Debtors</u>") and the Commissioner (together with the Origination Settlement Debtors, the "<u>Origination Settlement Parties</u>"). In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "<u>Petition Date</u>") each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>"). No trustee or examiner has been appointed.

5. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7. In addition to loan origination, the Debtors serviced mortgage loans (the "Servicing Business"). By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc. (the "Purchaser"), pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA"). The Final Closing occurred on April 11, 2008.

## RELEVANT BACKGROUND

### A.    Servicing Settlement Background

8. On August 29, 2007, pursuant to sections 36a-52(a), 36-a-716(a) and 36a-718 of the Connecticut General Statutes ("Connecticut Law"), the Commissioner issued a Notice of Intent to Issue Order to Cease and Desist and a Notice of Right to Hearing (collectively, the "Servicing Notice") against AHM Servicing, which is incorporated by reference in the Settlement Agreement. The Servicing Notice alleges that, within the meaning of section 36a-

715(2) of Connecticut Law, and in violation of section 36a-716(a), the taxes of at least thirty-eight (38) mortgagors were not paid by AHM Servicing (the "Commissioner's Servicing Allegations").

9. On August 29, 2007, AHM Servicing requested a hearing on the Servicing Notice and the Servicing Commissioner's Allegations.

B.   **Origination Settlement Background**

10. On August 3, 2007, pursuant to sections 36a-52, 36a-51, 36a-494 and 36a-517 of Connecticut Law, as amended by Connecticut Public Act 07-91 and sections 4-182(c) and 36a-50(a) of Connecticut Law, the Commissioner issued a Temporary Order to Cease and Desist, Order of Summary Suspension, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Revoke First and Secondary Mortgage Lender/Broker Licenses, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing (collectively, the "Origination Notice") against the Origination Settlement Debtors. The Origination Notice alleges that approximately 244 loans to be secured by a first or second mortgage on real property located in Connecticut were not closed by AHM Corp. The Origination Notice further alleges that, in violation of section 36a-758a(a) of Connecticut Law, AHM Corp. did not transfer to its attorney account loan proceeds for twenty-one (21) loans and seventeen (17) refinancings. The Commissioner also alleges that on August 1, 2007, counsel for AHM Corp. informed the Commissioner that AHM Corp. was no longer accepting mortgage loan applications in Connecticut when, allegedly, it was accepting such applications, and therefore AHM Corp.'s statement was false and misleading. Finally, the Origination Notice alleges that the Origination Settlement Debtors failed to cooperate with the Commissioner within the meaning of section 36a-17(d) of Connecticut Law (collectively, the "Commissioner's Origination Allegations," and together with the

Commissioner's Servicing Allegations, the "<u>Commissioner's Allegations</u>").

11. On August 6, 2007, the Origination Settlement Debtors requested a hearing on the Origination Notice and the Commissioner's Origination Allegations.

## SETTLEMENT AGREEMENTS[2]

12. After good faith negotiations between the Servicing Settlement Parties and the Origination Settlement Parties, the Debtors and the Commissioner have agreed to resolve the Commissioner's Allegations without the need for the Debtors to admit or deny such allegations or otherwise to continue litigation regarding such allegations.

13. The principal terms of the Servicing Settlement Agreement are set forth below:[3]

    a. AHM Servicing must refrain from violating section 36a-716(a) of Connecticut Law;

    b. The Commissioner will receive an allowed claim in the amount of $15,000.00 as reimbursement for investigative costs (the "<u>Commissioner's Allowed Servicing Claim</u>");

    c. The Commissioner's Allowed Servicing Claim will be subordinate in priority and payment to the allowed claims of Debtor AHM Servicing's general unsecured creditors;

    d. The Commissioner's Allowed Servicing Claim will be paid under the plan or plans in these chapter 11 cases; and

    e. The Servicing Settlement Agreement will become final only upon Court approval.

14. The principal terms of the Origination Settlement Agreement are set forth below:

---

[2] All terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreements.

[3] The terms of the Settlements Agreements set forth herein are a summary only. To the extent there is any inconsistency between the summary herein and the Settlements Agreements, the terms of the Settlements Agreements shall govern.

    a. AHM Corp. must refrain from violating sections 36a-17(d), 36a-53a and 36a-758a of Connecticut Law and failing to perform any agreement with mortgage borrowers;

    b. The Commissioner will receive an allowed claim in the amount of $15,000.00 as reimbursement for investigative costs (the "<u>Commissioner's Allowed Origination Claim</u>," and together with the Commissioner's Allowed Servicing Claim, the "<u>Commissioner's Allowed Claims</u>");

    c. The Commissioner's Allowed Origination Claim will be subordinate in priority and payment to the allowed claims of the Origination Settlement Debtors' general unsecured creditors;

    d. The Commissioner's Allowed Origination Claim will be paid under the plan or plans in these chapter 11 cases; and

    e. The Origination Settlement Agreement will become final only upon Court approval.

## RELIEF REQUESTED

15. By this Motion, the Debtors are seeking approval of the Settlement Agreements pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. The Debtors have weighed the costs, risks and disruption that would arise from potential litigation with the State of Connecticut concerning the Commissioner's Allegations against the compromises contained within the Settlement Agreements. The Debtors have also considered the importance of resolving claims against their estates in a cost-effective and efficient manner, and believe that the Settlement Agreements are in the best interest of the Debtors, their estates and creditors.

## BASIS FOR RELIEF REQUESTED

16. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is

encouraged and "generally favored." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transp. Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'" (quoting In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968))).

17. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Cent. Transp. Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entm't Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'")).

18. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

19. Furthermore, the decision to approve a compromise "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see

also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in In re Martin, 91 F.3d at 393. In making its decision, the bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Bldg. Assocs., 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities." (internal citations and quotations omitted)).

20. The Settlement Agreements are in the best interest of the Debtors, their estates and creditors because the agreements will allow the Debtors to avoid the commencement of a potentially costly and contentious dispute. The resolution of the Commissioner's allegations and any potential claims against these estates resulting from such allegation without need for further litigation is a favorable outcome because it will preserve the value of these estates. Moreover, the Commissioner's Allowed Claims will be subordinate to all allowed general unsecured claims against AHM Servicing and AHM Corp., AHM Acceptance and AHM Ventures, respectively. Thus, the Settlement Agreements afford the Debtors the opportunity to settle potentially significant claims against their estates without the need to expend administrative dollars or to limit the recovery to claimants holding general unsecured claims.

21. Accordingly, the Debtors believe that the Settlement Agreements represent compromises between the Debtors and the Commissioner that are fair and equitable and advance the paramount interests of the creditors of these estates.

## NOTICE

22. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the Commissioner; (v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission; and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

23. No prior request for the relief sought in this Motion has been made to this Court or any other.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court issue an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
June 2, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Margaret B. Whiteman/*

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Matthew B. Lunn (No. 4119)
Margaret B. Whiteman (No. 4652)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession