## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE HOLDINGS, | : | Case No. 07-11047 (CSS) |
| INC., a Delaware corporation, *et al.*, | : | |
| | : | Jointly Administered |
| Debtors. | : | **Related to Docket Nos. 2403 & 3324** |

## REPLY BRIEF IN SUPPORT OF
## FIRST AND SECOND QUARTERLY APPLICATIONS OF NORTHWEST TRUSTEE
## SERVICES, INC. FOR AWARD OF COMPENSATION FOR SERVICES RENDERED
## AND REIMBURSEMENT OF EXPENSES

Dated:  June 3, 2008

CONNOLLY BOVE LODGE & HUTZ LLP
Jeffrey C. Wisler (No. 2795)
Christina M. Thompson (No. 3976)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
*Attorneys for Northwest Trustee Services, Inc.*

## TABLE OF CONTENTS

Page

REPLY STATEMENT ............................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I.    NWTS DID NOT WAIVE THE DISPUTED EXPENSES ............................... 3

II.    THE DISPUTED EXPENSES ARE "EXPENSES" UNDER
11 U.S.C. § 330 AND THEIR PRE OR POST PETITION
STATUS IS IRRELEVANT ................................................................................. 6

    A.    The Disputed Expenses are Expenses, not Claims ................................. 6

    B.    Pre vs. Post Petition is Irrelevant for Purposes of Section 330 ............. 9

III.    THE DISPUTED EXPENSES ARE POST-PETITION EXPENSES ............ 12

IV.    EVEN IF THE DISPUTED EXPENSES ARE PRE-PETITION
EXPENSES, THE EQUITABLE CIRCUMSTANCES OF THIS CASE
WARRANT AN AWARD OF REIMBURSEMENT ...................................... 17

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Giuricich v. Entrol Corp.*, 449 A.2d 232 (Del. 1982)................................................................. 8, 10

*In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994).............................................. 10

*In re First Jersey Securities, Inc.*, 180 F.3d 504 (3d Cir. 1999) ............................................. 14, 15

*In re Jartan, Inc.*, 732 F.2d 584 (7th Cir. 1984) ......................................................................... 14

*In re Montgomery Ward Holdings Corp.*, 268 F.3d 205 (3d Cir. 2001).............................. 6, 7, 13

*In re Nellson Nutraceutical, Inc.*, 369 B.R. 787 (Bankr. D. Del. 2007) ...................................... 10

*In re R.H. Macy & Co., Inc.*, 152 B.R. 869 (Bankr. S.D.N.Y. 1993) ................................... 6, 7, 13

*In re Trans World Airlines, Inc.*, 1993 WL 559245 (D. Del.) ................................................. 9, 10

*In re Valley Media Inc.*, 279 B.R. 105 (Bankr. D. Del. 2002) ............................................... 14, 15

*Lebron v. Mechem Financial*, 27 F.3d 937 (3d Cir. 1994) ................................................. 9, 10, 15

*United States Trustee v. Pricewaterhouse al.*, 19 F.3d 138 (3d Cir. 1994) .................................. 11

*West Virginia State Department of Tax & Revenue v. Internal Revenue Service (In re Columbia Gas Transmission Corp.)*, 37 F.3d 982 (3d Cir. 1994) ......................................... 7

**Statutes**

11 U.S.C. § 101(15) ................................................................................................................... 3, 7

11 U.S.C. § 327(a) ................................................................................................................... 3, 11

11 U.S.C. § 327(e) ............................................................................................................. 3, 11, 15

11 U.S.C. § 330.................................................................................................................. 7, 9, 11

11 U.S.C. § 330(a) ................................................................................................................. 3, 10

11 U.S.C. § 330(a)(1)(A) ............................................................................................................. 6

11 U.S.C. § 330(a)(1)(B) ..................................................................................................... *passim*

ii

11 U.S.C. § 502.................................................................................................................... 9

11 U.S.C. § 503(b) ........................................................................................................... 3, 8

11 U.S.C. § 503(b)(1)(A)(i) .............................................................................................. 8, 9

11 U.S.C. § 503(b)(1)(A)(ii) ............................................................................................. 8, 9

11 U.S.C. § 503(b)(2) .......................................................................................................... 9

11 U.S.C. § 503(b)(3) ..................................................................................................... 9, 10

11 U.S.C. § 503(b)(3)(D).................................................................................................... 9

11 U.S.C. § 507(a) ........................................................................................................... 3, 6

11 U.S.C. § 507(a)(2)........................................................................................................... 8

## REPLY STATEMENT

The Applications[1] and the Objections present two questions for this Court:

(1)    Are the Disputed Expenses claims under the Bankruptcy Code?

(2)    Are the Disputed Expenses pre-petition expenses?

Unless the answer to both questions is an unequivocal "yes," NWTS is entitled to an award of reimbursement of its Disputed Expenses. For the reasons set forth in NWTS's Opening Brief and herein, the answer to both questions is "no."

The briefs[2] filed in opposition to NWTS's Opening Brief approach these questions from different angles. However, both suffer from the same fundamental flaw. Specifically, many of the arguments made in the Opposing Briefs presume that the Disputed Expenses <u>are claims</u> and presume that they <u>are pre-petition</u>. These presumptions beg the questions before the Court, rendering the analysis in significant portions of the Opposing Briefs meaningless.

Surprisingly, both Opposing Briefs wage personal attacks on NWTS and Mr. Fennell, with accusations of "feigning ignorance" and bad-faith, respectively. There is no basis in the record for these accusations. Moreover, while it is easy to launch unfounded accusations after Mr. Fennell has left the witness stand, it is entirely improper to do so because all parties had a right to (and actually did) cross-examine Mr. Fennell at the Hearing. Both accusations are based on the unproven presumption that Mr. Fennell intentionally put NWTS into its current situation

---

[1] Capitalized terms not defined herein have the meaning ascribed in the *Opening Brief in Support of First and Second Quarterly Applications of Northwest Trustee Services, Inc. for Award of Compensation for Services Rendered and Reimbursement of Expenses* [D.I. 3957] ("Opening Brief").

[2] *Brief of the United States Trustee in Response to The First and Second Quarterly Fee Applications of Northwest Trustee Services, Inc.* [D.I. 4111] ("UST Brief") and *Joint Answering Brief Regarding First and Second Quarterly Applications of Northwest Trustee Services, Inc. for Award of Compensation for Services Rendered and Reimbursement of Expenses* [D.I. 4117] ("Joint Brief," and jointly with the UST Brief, the "Opposing Briefs"). Because the Joint Brief is effectively submitted on behalf of the Debtors' estates, and for ease of reference, the arguments and assertions in the Joint Brief will be referred to herein as the Debtors' arguments and assertions.

with a full understanding of the complex bankruptcy issues that all parties have now fully briefed. Even the Court acknowledged that this issue is "more complicated than it appears on its face." *See* Transcript of April 14, 2008 Hearing [D.I. 3736], p. 229.[3] The baseless attacks on this professional are unwarranted and wholly unsupported by any evidence.

The Objections were filed based on conventional wisdom that prompts opposition to any portion of a fee application that contains a date (regardless of its significance, or lack thereof) that is prior to the filing of the petition. The circumstances of this case and the words of the Bankruptcy Code require a more careful analysis. NTWS urges this Court to recognize that the facts of this case are unique. NWTS is an estate professional that is seeking to recover expenses that are directly related to the services it was asked, post-petition, to provide to the Debtors. The Disputed Expenses all relate to foreclosures that were in progress as of the Petition Date. NWTS was retained by the Debtors to complete these foreclosures, and each was resolved post-petition. Debtors did not receive the benefit of the foreclosures (or any portion of the foreclosure process) until the foreclosures were resolved. These facts, as applied to the applicable Bankruptcy Code provisions as written, clearly permit an award of reimbursement of the Disputed Expenses to NWTS. Any other result would be unjust and inequitable under the circumstances.

---

[3] References to the Transcript hereinafter "Transcript at ____."

## ARGUMENT

### I.   NWTS DID NOT WAIVE THE DISPUTED EXPENSES

It remains undisputed that the evidence presented at the Hearing unequivocally established the following facts:

1.   NWTS intended to waive only those expenses that were included within the Waived Amount.

2.   No portion of the Waived Amount is included in the Applications.

3.   NWTS did not knowingly waive the Disputed Expenses.

4.   NWTS did not voluntarily waive the Disputed Expenses.

No contrary evidence has been presented. However, without any evidentiary basis, the Debtors belatedly challenge these facts by suggesting that Mr. Fennell is a bankruptcy expert, and by accusing NWTS of "feigning ignorance" concerning the effect of its waiver.[4]   This baseless accusation has no merit.

First, this argument incorrectly assumes that, as a foreclosure professional who files proofs of claim (and perhaps prosecutes motions for relief from stay) relating to mortgages in foreclosure, Mr. Fennell understood the interplay among and differences between sections 101(15), 327(a), 327(e), 330(a), 503(b) and 507(a) of the Bankruptcy Code.   Of course, consistent with his testimony, Mr. Fennell has no such expertise.   Transcript p. 185.

Second, Debtors' "feigning ignorance" accusation is contradicted by the plain language of paragraph 10 of the Supplemental Affidavit:

---

[4] Although both the Debtors and the Committee had a full opportunity to cross-examine Mr. Fennell at the hearing, no questions about his bankruptcy experience were raised.  Instead, inaccurate allegations concerning the level of that experience were improperly raised for the first time in the Joint Brief through a web page printout not admitted into evidence at the Hearing.  NWTS hereby objects.  Further, the Joint Brief contains numerous citations to the transcript that are taken out of context and without regard to the sequence of Mr. Fennell's testimony.  As a result, the Joint Brief attempts to create support for the Debtors' position that simply does not exist in the evidentiary record.

> As of August 6, 2007, the Debtors owed Northwest Trustee
> $92,847.67 for pre-petition services and fees ("Prepetition Fees").
> Northwest Trustee hereby waives the Prepetition Fees.

Supplemental Affidavit, ¶ 10. The clear intent of this paragraph (even without Mr. Fennell's undisputed, clarifying testimony) was to waive only $92,847.67, which does not include the Disputed Expenses.

Disregarding that clear intent, Debtors and the UST invite the Court to focus on the waiver language of the Retention Order:

> ORDERED that Northwest Trustee shall be deemed to have
> waived any and all prepetition amounts owed to them by the
> Debtors.

NWTS neither drafted nor approved this language. Regardless, the words "pre-petition amounts owed" are ambiguous at best, and lend nothing to the resolution of the issues before the Court. Indeed, even the Court commented that it did know the meaning of this language. Transcript at p. 217. Additionally, contrary to the unsupported suggestion in the Joint Brief, there is no evidence that any party relied upon this language, or deemed it to have any effect beyond the waiver set forth in the Supplemental Affidavit.

Lastly, Debtors' unfortunate accusation is belied by its own conduct in this case. The foundation of the alleged "feigned ignorance" is Mr. Fennell's stated understanding of the Industry Terms: (i) with the exception of mailing costs, payment for the Foreclosure Expenses is due from NWTS to the applicable third party vendor only upon resolution of the foreclosure matter; and (ii) payment for the Foreclosure Expenses is not due from the Debtors to NWTS until the resolution of a foreclosure matter. This understanding is completely consistent with Debtors' Guidelines Letter, which advised all of their foreclosure professionals that:

> **Dates for expenses should be related to the dates in which your firm is entitled to reimbursement. Generally, this should be when your firm makes payment to third parties**.

Guidelines Letter at Exhibit B. (bold in original).[5] By way of example, the Guidelines Letter advised foreclosure professionals that the date for publication fees should be "the date on which the fees are required to be paid (in advance, or in arrears, as applicable)." *Id.* It would be inappropriate to assume that, like NWTS, the Debtors were "feigning ignorance" when they issued the Guidelines Letter.[6] It is much more reasonable to assume that, consistent with NWTS's conduct and Mr. Fennell's unrebutted testimony, any "ignorance" was understandably created by the Industry Terms with which both NWTS and the Debtors were familiar.

Notwithstanding the arguments and false accusations in the Opposing Briefs, there is no basis upon which to find that NWTS waived the Disputed Expenses.

---

[5] Chronologically, the Guidelines Letter could not have affected the intent of NWTS's waiver. However, the Guidelines Letter is significant because it demonstrates that NWTS's understanding was consistent with the Debtors' own understanding as to what foreclosure expenses were permitted to be paid post-petition.

[6] The UST wages a similar unfounded attack on NWTS in its brief, raising the doctrine of judicial estoppel based upon its allegation that NWTS "seeks to back away from its prior statements and to seek reimbursement for a prepetition claim that the firm was required to waive . . . ." UST Brief at 6 (emphasis added). If this Court rules that the Disputed Expenses are post-petition, or rules that the Disputed Expenses are not claims, the UST's argument has no foundation. If this Court rules otherwise, it is unlikely to reach the issue of judicial estoppel. Therefore, it is unnecessary to consider this presumptive argument.

II.    **THE DISPUTED EXPENSES ARE "EXPENSES" UNDER 11 U.S.C. § 330 AND THEIR PRE OR POST PETITION STATUS IS IRRELEVANT**

The Applications seek an award of reimbursement for actual and necessary expenses under section 330(a)(1)(B). The Disputed Expenses are not a claim, and their pre or post-petition status is irrelevant under section 330(a). Because it is undisputed that the Disputed Expenses meet the "actual" and "necessary" requirements of section 330(a)(1)(B),[7] there is no legal basis to deny the requested award of reimbursement.

A.    <u>The Disputed Expenses are Expenses, not Claims</u>

The teachings of the Third Circuit Court of Appeals in *In re Montgomery Ward Holdings Corp.*, 268 F.3d 205 (3d Cir. 2001) mandate a careful review of Congress' choice of words in the Bankruptcy Code.

As discussed in the Opening Brief, although Congress "certainly knew how to use the word claim," it chose to use the term "expense" in section 330(a)(1)(B). *See In re R.H. Macy & Co., Inc.*, 152 B.R. 869, 873 (Bankr. S.D.N.Y. 1993). Additionally, as demonstrated by the first line of section 507(a), the words "claim" and "expense" must have different meanings under the Bankruptcy Code. If "expense" had the same (or overlapping) meaning as "claim," then the words "expenses and" in section 507 would be superfluous, and that portion of the statute would be irrelevant. It is, therefore, inappropriate to equate the term "expense" with the term "claim." *Id.* at 873.

Debtors label this analysis "superficial," concluding, without analysis, that Congress' use of the term "expenses" in section 330(a)(1)(B) is merely intended to distinguish it from the term

---

[7] The Joint Brief suggests that, if the Disputed Expenses were "pre-petition," they cannot be "necessary." No evidence was presented by the Debtors to support this argument. In fact, the evidence presented clearly showed that the Disputed Expenses were a necessary part of the foreclosures that NWTS was asked to complete post-petition. More importantly, the Objections never challenged the necessity of the Disputed Expenses. Therefore, this objection was waived.

"compensation" in section 330(a)(1)(A). Even if true, this conclusion sheds no light on the issue before this Court. Debtors' further conclude that:

> [n]o where (*sic*) does [section 330] indicate that a claim for an expense reimbursement that arose pre-petition or even a claim for compensation for services render[ed] pre-petition do not constitute a 'claim' under section 101(15) of the Bankruptcy Code.

Joint Brief at 20. Because section 330 is silent on the issue, this conclusion has no significance.

In contrast, the UST criticizes NWTS's analysis of section 330 without one citation or reference to that statute. Instead, the UST concludes that *Montgomery Ward* "provides no guidance" merely because its facts are difficult. UST Brief at 5. This shallow analysis ignores the key principle of *Montgomery Ward* applicable here: Congress' choice not to use the word "claim" in a section of the Bankruptcy Code is significant.

The UST also incorrectly concludes, by citing to *West Virginia State Department of Tax & Revenue v. Internal Revenue Service (In re Columbia Gas Transmission Corp.)*, 37 F.3d 982 (3d Cir. 1994), that *R.H. Macy* was rejected by the Third Circuit Court of Appeals seven years before its principles were embraced by the Third Circuit in *Montgomery Ward*. However, the different factual underpinnings of *Columbia Gas* and *R.H. Macy* are significant.

In *Columbia Gas*, the Third Circuit Court of Appeals evaluated whether property taxes for which the debtor was directly liable to the taxing authority were payable post-petition to the taxing authority. *Columbia Gas*, 37 F.3d at 983. Although *R.H. Macy* also involved property taxes, the debtor in that case was not directly liable to the taxing authority for such taxes, but was contractually obligated to pay the amount of such taxes to its landlord under a lease agreement. *R.H. Macy*, 152 B.R. at 873. The factual differences between *Columbia Gas* and *R.H. Macy* not only prevent the former from being a "rejection" of the latter, but they also highlight a key fact

here: Debtors were not liable to the third-party vendors for the Disputed Expenses, they were contractually obligated to pay the Disputed Expenses to NWTS upon resolution of a foreclosure. *See* Section III, *infra.*

In the Joint Brief, Debtors correctly recognize that "claim" and "expense" have separate meanings under the Bankruptcy Code.[8]    Joint Brief at 20.    However, the Debtors incorrectly conclude that their different meanings relate solely to timing, such that the term "claim" means "pre-petition claim" and "expense" means "post-petition expense." *Id.*    Debtors offer neither an explanation for Congress' omission of these additional words, nor case law to support their insertion into section 507.    Moreover, the entire premise of the Debtors' theory that "expenses" means "post-petition expenses" is based on the following:

> [T]he only reference to "expense" in section 507(a) is in subsection (1)(C) concerning the "administrative expenses" of the court-appointed or elected trustees and (a)(2) concerning "administrative expenses" allowed under section 503(b).

Joint Brief at 21.    This unsupported premise is easily disproven.

First, had Congress intended to use the words "pre-petition expenses and post-petition claims" in the first sentence of section 507, it would have done so.    *See Giuricich v. Entrol Corp.*, 449 A.2d 232, 238 (Del. 1982).    Second, had Congress intended the word "expenses" to mean only post-petition expenses, it would not have needed to include language in section 503(b)(1)(A)(i) that restricts recovery to "services rendered <u>after the commencement of the case</u>." 11 U.S.C. § 503(b)(1)(A)(i) (emphasis added); *see also* 11 U.S.C. § 503(b)(1)(A)(ii). Third, the suggestion that "expenses" in section 507(a)(2) refer exclusively to post-petition expenses is directly contradicted by cases from the District Court and the Third Circuit Court of Appeals.    Those courts have recognized that payment of a professional's pre-petition fees and

---

[8]  In contrast, the UST incorrectly argues that the terms are "interchangeable."  The UST's use of § 1129 in support of this theory is both isolated and inapplicable to the context of this case.

expenses as an administrative expense pursuant to section 503(b) is <u>not</u> *per se* disallowed.  *See In re Trans World Airlines, Inc.*, 1993 WL 559245 (D. Del.) (determining that a professional's pre-petition fees and expenses may be approved under section 503(b)(3) if "substantial contribution" is established); *Lebron v. Mechem Financial*, 27 F.3d 937, 945 (3d Cir. 1994) (finding that "there is no across-the-board bar to the recovery of [movant's] pre-petition expenses" under section 503(b)(3)(D)).

Finally, while it is tempting to conceptually merge the words "claim" and "expense" through the common bankruptcy term "administrative expense claim," there is no statutory basis for doing so.  Congress did not use such a term when it drafted the Bankruptcy Code.  Instead Congress used "claim" and "expense" separately (and without restrictive prefixes) in section 507, and used the term "expenses," not "claims," in section 330(a)(1)(B).[9]

As confirmed by the statutory construction of the Bankruptcy Code, "claim" and "expense" are separate concepts thereunder.  The Disputed Expenses are the latter and may not, therefore, be treated as the former.

**B.    Pre vs. Post Petition is Irrelevant for Purposes of Section 330**

Section 330(a)(1)(B) expressly requires only that expenses be "actual" and "necessary." Neither section 330(a)(1)(B) nor section 503(b)(2) contain a requirement that expenses awarded thereunder be post-petition.  11 U.S.C. § 330(a)(1)(B).  Notably, such a requirement is also absent from the UST's *Guidelines for Requiring Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*.  Therefore, because the Disputed Expenses were both actual and necessary, their timing is irrelevant.

---

[9] Expenses under section 330(a)(1)(B) are awarded.  11 U.S.C. § 330(a)(1)(B).  In contrast, claims are allowed or disallowed.  *See* 11 U.S.C. § 502.

As discussed in the Opening Brief, Congress chose not to add qualifiers to sections 330 or 503(b)(2) such as "rendered after the commencement of the case," or "attributable to any period of time occurring after the commencement of the case." *Compare*, 11 U.S.C. §§503(b)(1)(A)(i) and 503(b)(1)(A)(ii); *see In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 848 (3d Cir. 1994) (noting Congress' choice not to add the qualifier to section 330(a)(1) that services need be "professional" or "non-clerical" in nature); *Giuricich v. Emtrol Corp.*, 449 A.2d at 238 ("[W]here a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it").

Debtors urge this Court to draw a bright line between the pre and post-petition expenses of an estate professional, and then add language to section 330 that would prohibit an award for the former. There is no precedential or statutory basis for engrafting such language into section 330(a)(i)(B), and this Court must refrain from doing so. Neither section 330 nor any other applicable section of the Bankruptcy Code prohibits an award for reimbursement of an expense to an estate professional based on its pre-petition nature.

Debtors' attempt to avoid this reality by arguing that the cases cited in the Opening Brief are inapposite because they involve applications under § 503(b)(3), not section 330(a). *In re Trans World Airlines, Inc., supra*; *Lebron v. Mechem Financial, supra*. While those cases do not involve section 330, they clearly stand for the proposition that pre-petition fees and expenses <u>can</u> be allowed as an administrative expense. Importantly, these cases also demonstrate that the plain reading of section 330(a) (without the "post-petition only" language the Debtors ask this Court to add) does not lead to "an absurd result." *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 804 (Bankr. D. Del. 2007).

Although Debtors do not dispute the absence of a "post-petition only" requirement in the language of section 330(a), the Joint Brief poses a fundamentally flawed theory that such a requirement is unnecessary because "[t]he Bankruptcy Code unambiguously forbids retention of a pre-petition creditor."[10] Joint Brief at 16. Obviously, this is an incorrect statement of the law. Professionals retained under section 327(e) are permitted to retain their pre-petition claims, and Congress' clear intent was to require disinterestedness only from section 327(a) professionals, and not section 327(e) professionals. *Compare*, 11 U.S.C. §§ 327(a) and (e). While NWTS was ultimately retained under section 327(a),[11] that does not change the statutory construction of section 330. Professionals retained under both section 327(a) and section 327(e) must apply for reimbursement under section 330. Therefore, section 330 cannot be interpreted or applied to exclude holders of pre-petition claims from the universe of "eligible recipients."

Ultimately, while both the Debtors and the UST insist that the Disputed Expenses must be post-petition to be eligible for an award of reimbursement, neither has revealed a single case or provision of the Bankruptcy Code that prohibits such an award. Because the Disputed Expenses were both actual and necessary as required by section 330(a)(1)(B), this Court should award NWTS reimbursement of the Disputed Expenses.

---

[10] This appears to be an incomplete quotation from *United States Trustee v. Pricewaterhouse et al.*, 19 F.3d 138, 141 (3d Cir. 1994). The quote ends with "to assist it in the execution of its Title 11 duties." *Id.* The omitted portion of the quote tracks the end of section 327(a), demonstrating its application to only that subsection of section 327. 11 U.S.C. § 327(a).

[11] NWTS became a section 327(a) professional because it is not "an attorney" – not because it "assisted the Debtors in the execution of their Title 11 duties." 11 U.S.C. § 327(a).

III.       THE DISPUTED EXPENSES ARE POST-PETITION EXPENSES

It is undisputed that: (i) all foreclosures giving rise to the Disputed Expenses were resolved _after_ the Petition Date; (ii) Debtors received the proceeds and other benefits of those foreclosures _after_ the Petition Date;[12] and (iii) Debtors were not obligated to pay for the Disputed Expenses until _after_ the Petition Date (upon the resolution of a foreclosure). These and other uncontested facts presented at the Hearing established that the Disputed Expenses are post-petition expenses. Therefore, even if this Court finds that the Disputed Expenses are a claim, or finds that the Disputed Expenses must be post-petition expenses to be eligible for reimbursement under section 330(a)(1)(B), this Court should award NWTS reimbursement of its Disputed Expenses.

Debtors' objection to the Disputed Expenses is premised solely upon the fact that the dates on NWTS's invoices that correspond to the Disputed Expenses were prior to the Petition Date.[13] However, as Mr. Fennell testified, those dates correspond to the date that a Foreclosure Item was _ordered_, or the date that NWTS was _invoiced_ for a Foreclosure Item by its third-party vendor. Transcript at p. 192. Debtors correctly concede that the date that a third-party vendor sent an invoice to NWTS is irrelevant. Joint Brief at fn. 7. Nevertheless, according to the Debtors, the "relevant timeframe" is "the date on which the vendor performed and the Debtors received the benefit of the underlying expense. _Id._[14] This theory is flawed.

---

[12] But for those prospective benefits, Debtors would not have retained NWTS to continue with foreclosures that were in process on the Petition Date.

[13] _See Debtors' Limited Objection to Second Quarterly Application of Northwest Trustee Services, Inc. for Compensation for Services Rendered and Reimbursement of Expenses as Foreclosure Professionals to the Debtors-in-Possession_ [D.I. 3544] at ¶ 8, Exhibit A. ("Debtors' object to payment of (i) any Foreclosure Costs that are identified on the face of the Invoices as having been incurred prior to the Petition Date . . . .")

[14] Section 330(a)(1)(B) does not require a showing that an expense provided a benefit to the estate. Section 330(a)(1)(B) only requires that the expense be "actual and necessary" to the services for which the professional was retained to provide. Accordingly, the concept of benefit to the estate is wholly irrelevant to the determination as to whether an expense should be awarded under 330(a)(1)(B).

First, Debtors cite to no authority that would justify interjecting the Debtors into the contractual relationship between NWTS and its third party vendors. As a result, the date of a vendor's performance under a contract to which the Debtors are not a party cannot be adopted by this Court as part of a new test under section 330. This conclusion is supported by the reasoning in both *R.H. Macy* and *Montgomery Ward*, which focuses on the actual and direct relationship in question. *See In re R.H. Macy*, 152 B.R. at 873 (the court determined that the agreement between the debtor and its landlord controlled for purposes of determining when the debtor's tax obligations to landlord arose, without regard to the timing of landlord's obligations to the taxing authority); *Montgomery Ward., supra.* This conclusion is also supported by the Debtors in their Guidelines Letter, which advised their foreclosure professionals that the relevant date for an expense is the date upon which the professional is entitled to reimbursement from the Debtors. Guidelines Letter at Exhibit B. Accordingly, the terms relevant to a pre vs. post-petition analysis are the terms of the contract between the Debtors and NWTS, not NWTS and its third party vendors.

Second, it is clear that Debtors received the benefit of all of the Disputed Expenses upon the resolution of the related foreclosures, which all occurred post-petition. It is upon the resolution of a foreclosure that Debtors receive the proceeds of a foreclosure, and it is difficult to conceive that any tangible "benefit" was received by the Debtors beforehand. Indeed, the Joint Brief fails to provide any examples of exactly how the estates were benefited by each vendor's individual "performance" (*i.e.* the provision of a Foreclosure Item) as the Debtors suggest. Debtors simply state that NWTS should not be paid for "goods provided and services completed" pre-petition. Yet, there is no dispute that the NWTS's services to the Debtors to which the Disputed Expenses relate were completed after the Petition Date. Again, each of the Disputed

13

Expenses relate directly to (i) a foreclosure that was in-progress on the Petition Date, (ii) a foreclosure that NWTS was retained by the Debtors to continue and conclude post-petition, and (iii) a foreclosure that was concluded by NWTS post-petition.

Significantly it is these facts and circumstances that set this case apart from those cited by the Debtors in the Joint Brief. Debtors and the UST cite to cases wherein courts denied requests for payment of administrative expenses for services that were completed by the movant pre-petition, but were invoiced to the debtor post-petition. *See In re Jartan, Inc.*, 732 F.2d 584 (7th Cir. 1984); *In re Valley Media Inc.*, 279 B.R. 105 (Bankr. D. Del. 2002); *see also In re First Jersey Securities, Inc.*, 180 F.3d 504 (3d Cir. 1999). As demonstrated below, none of these cases support a finding that the Disputed Expenses are pre-petition expenses.

In *Jartran*, a movant was denied allowance of an administrative expense under section 503(b)(1)(A) for advertisements that were published post-petition, but were irrevocably placed by the debtor prior to the petition date. 732 F.2d at 586    The *Jartran* court's denial was premised upon the debtor's failure to request any continued services from the movant after the petition date. *Id.* at 587 (noting that debtor "performed no act after the filing of the petition that could be construed as an affirmation of the placement of the ads"). In contrast, the undisputed evidence here demonstrates that, post-petition, the Debtors requested that NWTS continue with foreclosures that were in process on the Petition Date, and that the Disputed Expenses were necessary to such foreclosures. As a result, *Jartran* does not lend any support for the Debtors' arguments.

In *Valley Media*, a consignment vendor sought allowance of an administrative expense under section 503(b)(1)(A) for goods that were delivered to the debtor prior to the petition date, but sold by the debtor after the petition date. *In re Valley Media, Inc.*, 279 B.R. 105, 141 (Bankr.

D. Del. 2002). The consignment vendor had completed all of its obligations to the debtor prior the petition date. *Id.* As a result, the Court ruled that "[a] debt is not entitled to administrative priority merely because the right to payment arises post-petition." *Id.* However, the Court went on to clarify that "[i]t is the substantial contribution to the estate, not the activity, such as sale, that incurs the obligation that must occur in the chapter 11 case. *Id.* (citing *Lebron v. Mechem Fin. Inc.,* 27 F.3d 937, 944 (3d Cir. 1994)). Unlike the movant in *Valley Media,* (i) NWTS had not completed all of its in-progress foreclosure obligations to the Debtors prior to the Petition Date, (ii) NWTS was retained by the Debtors after the Petition Date to continue and complete in-progress foreclosures, and (iii) the substantial contribution to the Debtors' estates (i.e., the completion of the in progress foreclosures) was received after the Petition Date. As a result, *Valley Media* is not dispositive as to the issues currently before the Court.

Finally, both the Debtors and the UST rely upon *In re First Jersey,* a case distinguished in the Opening Brief. Contrary to the suggestion in the Joint Brief, NWTS does not argue that the pre vs. post-petition nature of the Disputed Expenses is based upon the date that NWTS submitted invoices to the Debtors. And, while the UST cites *In re First Jersey* for the proposition that an "obligation generally arises when the debtor obtains the goods or services," the services in question here are the foreclosure services provided by NWTS to the Debtors, not the services provided by third party vendors to NWTS. [15] UST Brief at 5. The record clearly shows that Debtors "obtained" the benefit of NWTS's foreclosure services post-petition. Debtors "obtained" nothing from NWTS on account of the relevant foreclosures prior to the Petition Date. Accordingly, *First Jersey* does nothing to discredit NWTS's position.

---

[15] It is ironic that the UST, who objected to NWTS's retention under section 327(e) on the ground that NWTS is not a law firm, now asks this Court to treat NWTS' s expenses as if they were fees for pre-petition legal services to the Debtors.

The relevant time frame for purposes of evaluating the Disputed Expenses is the date upon which NWTS resolved the corresponding foreclosures. This time frame is not only consistent with the contract between NWTS and Debtors and with Industry Terms, but it is also consistent with Debtors' own understanding and advice to other foreclosure professionals. *See* Guidelines Letter at Exhibit B. NWTS is entitled to reimbursement of the Disputed Expenses from the Debtors upon completion of a foreclosure. Because each of the foreclosures related to the Disputed Expenses were concluded post-petition, the Disputed Expenses are post-petition expenses.

IV.    **EVEN IF THE DISPUTED EXPENSES ARE PRE-PETITION EXPENSES, THE EQUITABLE CIRCUMSTANCES OF THIS CASE WARRANT AN AWARD OF REIMBURSEMENT**

This Court should, in equity, award reimbursement of the Disputed Expenses, even if it finds that (i) pre vs. post-petition is relevant under section 330(a)(1)(B), and (ii) the Disputed Expenses are pre-petition expenses. As fully discussed in the Opening Brief, such an award is permitted because NWTS does not have, and does not seek payment of, a claim; it seeks reimbursement of expenses under section 330(a)(1)(B).

Both the Debtors and the UST appear to misunderstand this argument. In the Opposing Briefs, they insist that no equitable award is available based on their presumption that the Disputed Expenses are a pre-petition claim. This presumption improperly begs the questions before the Court, and fails to acknowledge any possible alternative findings by the Court.

The equitable facts and circumstances clearly warrant an award to NWTS. There is no dispute that the Disputed Expenses were both actual and necessary. NWTS proceeded with foreclosures in process on the Petition Date as requested by Debtors and provided a significant benefit to the Debtors' estates by resolving more than $600,000,000 of loans post-petition. Additionally, the only evidence in the record shows that the Debtors have received payment for at least some, if not all, of the Disputed Expenses from other sources. An award of reimbursement to NWTS for the Disputed Expenses is clearly the most equitable result.

## CONCLUSION

For the foregoing reasons and authorities, NWTS respectfully requests that the Court enter an order that (a) awards NWTS the compensation and reimbursement of expenses requested by the Applications, (b) directs the Debtors to immediately pay all such amounts in full to NWTS, and (c) grants such other and further relief as the Court may deem just and proper.

CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey C. Wisler (No. 2795)
Christina M. Thompson (No. 3976)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
Attorneys for Northwest Trustee Services, Inc.

#613640

18