IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x Chapter 11

In re:                                                    :
                                                          : Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                     :
HOLDINGS, INC., a Delaware corporation, et al.,[1]        : Jointly Administered
                                                          :
                          Debtors.                        : **Hearing Date: June 25, 2008 at 10:00 a.m. (ET)**
---------------------------------------------------------------- x **Objection Deadline: June 18, 2008 at 4:00 p.m (ET)**

### MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006, AUTHORIZING THE DEBTORS TO REJECT CERTAIN EMPLOYMENT CONTRACTS

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby move the Court (the "Motion"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing the Debtors to reject certain employment agreements as more fully set forth in and identified on Exhibit A annexed hereto (the "Employment Agreements"). In support of this Motion, the Debtors respectfully represent as follows:

#### JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates

for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code, along with

Bankruptcy Rules 6006 and 9014.

## BACKGROUND

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with

this Court a voluntary petition for relief under the Bankruptcy Code.  Each Debtor is continuing

to operate its business and manage its properties as a debtor-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or

examiner has been appointed.

5.      In the weeks prior to the Petition Date, an unprecedented disruption in the

credit markets caused major write-downs of the Debtors' loan and security portfolios and

consequently resulted in margin calls for hundreds of millions of dollars with respect to the

Debtors' loans.  During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and

threatening the company's continued viability.

6.      The Debtors' inability to originate loans and the exercise of remedies by

certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the

Debtors to discontinue their retail and indirect loan origination business.  Unfortunately, in the

short time available and given the severe financial pressures facing them, the Debtors were

unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7.      Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business").  Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business.  By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

8.      Pursuant to the APA, the Servicing Sale closed in two steps.  At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein.  From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors operated the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser.  The Final Closing occurred on April 11, 2008.

---

[2]  All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

DB02:6879077.2                                                                              066585.1001

**RELIEF REQUESTED**

9.      By this Motion, the Debtors respectfully request the entry of an order, pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, authorizing the rejection of the Employment Agreements, effective as of the applicable rejection effective dates identified on Exhibit A (the "Rejection Effective Dates")

**BASIS FOR RELIEF REQUESTED**

A.      **Rejection of the Employment Agreements**

10.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see also University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992). The Court may approve a debtor's rejection of an executory contract or unexpired lease if such rejection is made in the exercise of such debtor's sound business judgment, and if such rejection benefits the debtor's estate. See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); NLRB v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); In re Patterson, 119 B.R. 59 (E.D. Pa. 1990). See also, In re Federated Dep't. Stores, Inc., 131 B.R. 808, 811 (S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in determining whether to authorize the rejection of executory contracts and unexpired leases"); Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("[u]nder the business judgment test, . . . [a court should approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will benefit the estate"). It is enough if a debtor determines in its business judgment that a benefit will be realized. Sharon Steel Corp., 872 F.2d at 39 (citing Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-

4

Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)).  The business judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith, whim or caprice.  Lubrizol Enter., Inc. v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

11.     The Employment Agreements are between certain of the Debtors and the Debtors' CFO, General Counsel, Controller, Treasurer and Executive Vice President of Capital Markets.  As this Court is aware, the Debtors discontinued their loan origination business prior to the Petition Date and on August 3, 2007, implemented a significant reduction in their workforce. Since the Petition Date, the Debtors have engaged in the orderly liquidation of their assets in an effort to maximize the value of their estates for the benefit of stakeholders, which includes the sale of the Servicing Business.  Although the Debtors have not yet completed the liquidation of all their assets and continue to negotiate the terms of a chapter 11 plan with the Committee, the Debtors have determined, in the exercise of their business judgment, that the continued employment of the executive employees pursuant to the terms of the Employment Agreements is burdensome and not necessary to the Debtors' estates.  However, the Debtors anticipate entering into different and less burdensome employment arrangements with certain of the executives because of their historical knowledge of the Debtors and skills that are necessary to continue the Debtors' efforts to maximize the value of these estates.

12.     The authority to reject the Employment Agreements is an integral component of the Debtors' continued efforts to maximize value for their estates and creditors by, among other things, eliminating unnecessary operating costs.  The rejection of the Employment Agreements is in the best interest of their estates and creditors as it will avoid the potential accrual of any further obligations under the Employment Agreements.  The economic burdens

5

associated with the Employment Agreements given the continued orderly liquidation of the

Debtors' assets, the minimal on-going business operations and the inability to assign the

Employment Agreements provide sufficient bases to justify the relief sought herein.

13.    Moreover, the Debtors have reviewed the Employment Agreements and

determined that they hold no material economic value to the Debtors or their estates and are not

essential to the conduct of the Debtors' bankruptcy cases.  The rejection of the Employment

Agreements will eliminate the Debtors' obligation, if any, to perform, and the potential accrual

of any administrative expense obligations under, the Employment Agreements.[3]

14.    Accordingly, the Debtors submit that the rejection of the Employment

Agreements is within their sound business judgment and is in the best interest of the Debtors,

their estates, creditors and other parties-in-interest.

**B.    Retroactive Rejection**

15.    The Debtors request that this Court approve the rejection of the

Employment Agreements effective as the Rejection Effective Dates.  Bankruptcy courts are

empowered to grant retroactive rejection of executory contracts and unexpired leases under

sections 105(a) and 365(a) of the Bankruptcy Code.  See, e.g., Thinking Machines Corp. v.

Mellon Fin. Serv. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995)

(recognizing that bankruptcy courts are courts of equity that may enter orders authorizing

retroactive rejection); In re Amber's Stores, Inc., 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996)

(same).

---

[3]  The Debtors reserve their rights to argue that any claim for damages arising from the rejection of the Employment Agreements is limited to the remedies available under any applicable termination provision of such Employment Agreement, or that any such claim is an obligation of a third party, and not that of the Debtors.  Furthermore, nothing set forth in this Motion shall in any way prejudice or affect the rights of the Debtors to object to any and all administrative expense claims that may be asserted by the non-Debtor parties to the Employment Agreements.

16.    Courts in this jurisdiction have previously considered the question of retroactive rejection of unexpired leases and executory contracts.  See, e.g., In re Namco Cybertainment, Inc., Case No. 98-173 (Bankr. D. Del. 1998) (Walsh, J.).  In In re Namco Cybertainment, the Court permitted retroactive rejection on the condition that (a) the premises (and the keys thereto) were surrendered with an unequivocal statement of abandonment to the landlord; (b) the motion was filed and served on the landlord; (c) the official committee has consented to the relief requested in the motion; and (d) the debtor acknowledged that it would not have the right to withdraw the motion.

17.    The Debtors will have effectively satisfied the criteria for retroactive rejection of the Employment Agreements.  As of the date hereof, the Debtors have notified the non-Debtor parties to the Employment Agreements that their employment by the Debtors pursuant to the terms of their respective Employment Agreements has terminated.  Second, the filing and service of this Motion further informs the counterparties to the Employment Agreements that the Debtors are unequivocally rejecting the Employment Agreements.  Finally, the Debtors hereby acknowledge that they will not have the right to withdraw the Motion.

18.    Based upon the foregoing facts and circumstances, the Debtors submit that the rejection of the Employment Agreements in the manner set forth above is supported by sound business judgment, and is necessary, prudent and in the best interests of the Debtors, their estates, creditors and parties-in-interest.

19.    In accordance with the *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1708], the Debtors respectfully request that the Order authorizing the relief requested herein (the "Rejection Order") provide that any claim

7

allegedly arising from the rejection of the Employment Agreements (a "Rejection Claim") must

be filed on or before the date that is thirty (30) days from the entry of such Rejection Order (the

"Rejection Bar Date").  Any holder of a Rejection Claim who fails to timely file a proof of such

claim on or before the Rejection Bar Date shall not be treated as a creditor for purposes of voting

upon, or receiving distributions under, any chapter 11 plan or plans in these chapter 11 cases in

respect of that claim.

## NOTICE

20.     Notice of this Motion will be provided to (i) the United States Trustee for

the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A.,

as Administrative Agent for the lenders under that certain Second Amended and Restated Credit

Agreement dated August 10, 2006; (iv) the non-Debtor parties to the Employment Agreements;

(v) counsel to the Debtors' postpetition lender; (vi) the Securities and Exchange Commission;

and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is

required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto authorizing and approving (i) the rejection of the Employment Agreements as of Rejection Effective Dates, and (ii) granting such other and further relief as this Court deems just and proper.

Dated:  Wilmington, Delaware
       June 6, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

DB02:6879077.2

066585.1001