## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x   Chapter 11

In re:

:

: Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE

:

HOLDINGS, INC., a Delaware corporation, et al.,[1]

: Jointly Administered

Debtors.

: **Hearing Date: June 25, 2008 at 10:00 a.m. (ET)**

-------------------------------------------------------------- x   **Objection Deadline: June 23, 2008 at 11:00 a.m. (ET)**

## DEBTORS' MOTION FOR AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363, APPROVING (I) THE DEBTORS' TERMINATION OF THEIR 401(k) PLAN AND (II) THE IMPLEMENTATION OF CERTAIN PROCEDURES IN CONNECTION THEREWITH

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court (the "Motion"), pursuant to sections 105(a) and 363(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for entry of an order approving (i) the Debtors' termination of that certain American Home Mortgage 401(k) Savings Plan, amended and restated as of February 1, 2007 (the "401(k) Plan"), and (ii) the implementation of procedures through which the Debtors may do so in accordance with the Internal Revenue Code (the "IRC"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The mailing address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

066585.1001

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

**A.      General Background**

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed.

5.      In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6.      The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the

Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7.      Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

8.      Pursuant to the APA, the Servicing Sale closed in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors operated the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser. The Final Closing occurred on April 11, 2008.

---

[2]     All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is any discrepancy between such description and the actual terms of the APA, the latter are controlling.

**B.     The AHM 401(k) Plan**

9.     The Debtors maintain the 401(k) Plan, a qualified plan that meets the requirements of Sections 401(a) and 401(k) of the IRC. The 401(k) Plan is administered by Charles Schwab & Co., Inc. ("Charles Schwab"). Eligible employees (the "Plan Participants") can elect to make before-tax contributions to the 401(k) Plan through payroll deductions that are then paid to a trust shortly thereafter. The Debtors collect contributions from Plan Participants from each payroll and transfer those contributions into the 401(k) Plan as soon as such contributions can be reasonably segregated from the Debtors' general assets, and the Plan Participants' contributions are invested as directed by the Plan Participants.

10.     Prior to the Petition Date, the Debtors made matching contributions of 25% of the first 6% of a Plan Participant's contribution, limited to a maximum of $4,000 per year. However, in July of 2007, to preserve funds, the Debtors discontinued their matching 401(k) contribution benefits.

11.     On August 3, 2007, the Debtors implemented a reduction in their workforce, resulting in the termination of approximately 6,500 employees. As of the Petition Date, the Debtors retained approximately 1,000 employees essential to the Debtors' remaining operations and the orderly wind-down of all operations. The Debtors have further reduced their employee headcount to approximately 100 and anticipate further reductions as they complete various wind-down tasks. As a result of these reductions, the current number of eligible Plan Participants is less than 20.

## RELIEF REQUESTED

12.     By this Motion, the Debtors respectfully request the entry of an order approving the Debtors' termination of the 401(k) Plan, effective as of June 30, 2008, pursuant to

Sections 105(a) and 363(b) of the Bankruptcy Code and implementation of the procedures through which the Debtors may do so in accordance the IRC.

## BASIS FOR RELIEF REQUESTED

13.     Pursuant to Article 9.3 of the 401(k) Plan, the Debtors may terminate the 401(k) Plan at any time.  The Debtors' contractual right to terminate the 401(k) Plan constitutes property of the estate within the meaning of section 541 of the Bankruptcy Code and the Debtors' use of that right may arguably constitute a use of property of the Debtors' bankruptcy estates outside of the ordinary course of business.  Thus, the Debtors seek this Court's authorization, out of an abundance of caution, to exercise their contractual right to terminate the 401(k) Plan.

14.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the use of a debtor's assets outside of the ordinary course of business.  However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors.  See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

15.     A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155.

16.     Additionally, Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Pursuant to Section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

17.     The Debtors submit that sound business justification exists to terminate the 401(k) Plan. As a result of the reduction in work force and the wind-down of their operations, the Debtors can no longer justify the costs associated with maintaining the 401(k) Plan. As an integral component of the Debtors' efforts to maximize value for their estates and creditors by, among other things, eliminating unnecessary operating costs, the Debtors have

determined that it is in their best business interest to avoid the accrual of any further obligations related to the 401(k) Plan.  Additionally, the Debtors' in-house employees who administer the 401(k) Plan will be leaving the Company at the end of June.  If the termination of the Plan is not approved by June 30, 2008, the Debtors will have to hire new employees to administer the 401(k) Plan, which will result in additional, unwarranted costs to the Debtors' estates.  The decision to terminate the 401(k) Plan effective as of June 30, 2008, and to implement the procedures through which the Debtors may do so in accordance with the requirements of the IRC, will eliminate the Debtors' obligation to perform under the 401(k) Plan.

18.    Accordingly, the Debtors have determined that it would be in the best interests of the Debtors, their estates and their creditors to terminate the 401(k) Plan and, in connection therewith, the Sole Director of American Home Mortgage Holdings, Inc. adopted a board resolution authorizing the Debtors to seek authority from this Court to terminate the 401(k) Plan and implement procedures to terminate the 401(k) Plan effective as of June 30, 2008.  In particular, the Debtors seek authority to implement the following procedures (the "Termination Procedures"):

a.    Notify the 401(k) Plan Participants of the Debtors' decision to terminate the 401(k) Plan;

b.    Amend, if necessary or required, the 401(k) Plan to incorporate all current statutory requirements and to reflect the termination and provide that, upon termination of the 401(k) Plan, the 401(k) Plan Participants' will become fully vested in their 401(k) Plan account balances;

c.    Prepare and submit Internal Revenue Service Form 5310 (*Application for Determination for Terminating Plan*) to the Internal Revenue Service, not earlier than twenty-one (21) days but not later than ten (10) days after notifying the 401(k) Plan Participants' of the filing of the Form 5310 with the Internal Revenue Service;

d.    Provide the Internal Revenue Service with such additional documentation and/or amendments as may be required or requested during its review of the Form 5310;

e.  After the Internal Revenue Service issues a favorable determination letter, distribute benefit election forms to the 401(k) Plan Participants;

f.  Upon receipt of the 401(k) Plan Participants' benefit election forms, distribute all 401(k) Plan assets to the 401(k) Plan Participants;

g.  Distribute IRS Form 1099 to the 401(k) Plan Participants;

h.  Upon final distribution of the 401(k) Plan assets, close the 401(k) Plan and the trust; and

i.  File IRS Forms 5500 (Annual Return/Report) until all assets are distributed and trust is closed.

19.  Based upon the foregoing facts and circumstances, the Debtors submit that the termination of the 401(k) Plan and the implementation of the steps necessary to terminate the 401(k) Plan is supported by sound business judgment, and is necessary, prudent and in the best interests of the Debtors, their estates, creditors and parties in interest.

## NOTICE

20.  Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) counsel to the Agent for the Debtors' Postpetition Lender; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

21.  No previous motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached as Exhibit A, granting this Motion and such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
June 12, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James Patton (No. 2202)
Pauline Morgan (No. 3650)
Edward J. Kosmowski (No. 3849)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to Debtors and Debtors in Possession