**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br><br>Re: Docket Nos. 2395, 2501, 2888, 2928 and<br>4387 |

**OBJECTION OF FEDERAL HOME LOAN MORTGAGE CORPORATION TO
DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DESTRUCTION OF
NON-REQUESTED LOAN FILES**

Federal Home Loan Mortgage Corporation ("Freddie Mac"), by and through its undersigned counsel, hereby files this Objection (the "Objection") to Motion for an Order Authorizing the Destruction of Non-Requested Loan Files (the "Motion") (D.I. 4387) filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "AHM"), and states as follows:

**FACTUAL BACKGROUND**

1.      On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Also on August 6, 2007, the Debtors filed their Emergency Motion Of The Debtors For An Order (I) Authorizing The Sale Of Such Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (II) Authorizing And Approving Purchase Agreement Thereto; (III) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And (IV) Granting Related Relief (the "Sale Motion") (D.I. 11).

3.      On September 10, 2007, Freddie Mac filed the Motion of Federal Home Loan

Mortgage Corporation for an Order Granting Relief From the Automatic Stay Pursuant to 11

U.S.C. § 362 (D.I. 676) (the "Freddie Mac Stay Relief Motion").  As set forth more fully in the

Freddie Mac Stay Relief Motion, Freddie Mac terminated the Debtors' right to service the

Freddie Mac loan portfolio prior to the Petition Date.

### The Stipulations

4.      On September 18, 2007, the Debtors and Freddie Mac executed two stipulations

to resolve, *inter alia*, the Freddie Mac Stay Relief Motion, the parties' disputes concerning

Freddie Mac's prepetition termination of the Debtors as servicer, and Freddie Mac's objections

to the Sale Motion.  The stipulations are identified as (i) the Stipulation of Settlement Between

and Among the Debtors, Bank of America, N.A., and Federal Home Loan Mortgage Corporation

Regarding Interim Servicing of Federal Home Loan Mortgage Corporation Loans (the Interim

Servicing Stipulation"), and (ii) the Stipulation of Settlement Between and Among the Debtors

and Federal Home Loan Mortgage Corporation Regarding the Sale of Servicing of Federal Home

Loan Mortgage Corporation's Loans (the "Sale Stipulation" and collectively with the Interim

Servicing Stipulation, the "Stipulations"), each of which is incorporated by reference herein.  In

sum, the Stipulations provide for, *inter alia*, an interim servicing transfer to Bank of America

N.A. ("BofA") and a subsequent auction sale of the Freddie Mac servicing rights to be conducted

in accordance with the Sale Stipulation separate and apart from the Debtors' Section 363 asset

sale.

5.      Specifically, the Interim Servicing Stipulation provides, among other things, that

> Debtors shall turn over the imaged, microfiche, hard copies and any other form of
> the Freddie Mac Files in its physical possession in their existing format, to BofA,
> which transfer shall begin no later than the date of the order approving this

Stipulation and be substantially complete on or before November 2, 2007 . . . (hereinafter, the "Interim Hard Copy Servicing Transfer" . . .)

Interim Servicing Stipulation, ¶ 2, p. 5.

6.      On or about September 20, 2007, the Court entered orders approving the Stipulations (D.I. 861 and 862).

**AHM's Initial Delays**

7.      As of November 2, 2007, the Debtors had failed to substantially complete the Interim Hard Copy Servicing Transfer in accordance with the Interim Servicing Stipulation. By way of a letter dated November 16, 2007, counsel for Freddie Mac advised counsel for the Debtors that the servicing files for about 50 percent (more than 2000) of the Freddie Mac mortgage loans had not yet been turned over to BofA, despite repeated and continual efforts to obtain them.

8.      On or about November 27, 2007, counsel for the Debtor advised counsel for Freddie Mac that approximately 990 of the outstanding mortgage loan files had been shipped, and that the remainder of the files would be shipped on a rolling basis (at a rate of about a 200 per day) until the Interim Hard Copy Servicing Transfer was complete.

**The Original Destruction Motion and Freddie Mac's Objection**

9.      On December 14, 2007, the Debtors filed the Motion For An Order Pursuant To 11 U.S.C. §§ 105, 363 And 554 Authorizing The (I) Abandonment And Destruction Of Certain Duplicate Mortgage Loan Files Or (II) Return Of Mortgage Loan Files To The Owner Of Such Loans Upon Payment Of Reasonable Costs And Expenses (the "Original Destruction Motion") (D.I. 2395).  The Motion seeks authority to, *inter alia*, abandon and destroy approximately 490,000 "Duplicate Hard Copy Loan Files."

10.    Due to the Debtors' failure to timely complete the Interim Hard Copy Servicing Transfer and the resultant concerns regarding the Debtors' disorganization, on December 26, 2007, Freddie Mac filed an Objection to the Motion (the "First Objection") (D.I. 2501). In summary, Freddie Mac's First Objection objected to (i) any destruction or abandonment of any loan files prior to the completion of the Interim Hard Copy Servicing Transfer and/or (ii) any attempt by the Debtors to impose the costs and expenses of the Interim Hard Copy Servicing Transfer upon Freddie Mac in contravention of the Stipulations.

11.    On January 14, 2008, the Court entered an Order Pursuant To 11 U.S.C. §§ 105, 363 And 554 Authorizing The Abandonment And Destruction Of Certain Duplicate Mortgage Loan Files (the "Limited Destruction Order") (D.I. 2724) allowing the Debtors to destroy only those loan files for loans which the Debtors did not fund (subject to the court's precautionary comments made on the record at the January 14, 2008 hearing). Based upon the representations made by the Debtor on the record at the January 14, 2008 hearing regarding their control processes, visual inspection of each loan file prior to destruction, and retention of electronic copies of all non-funded loan files, Freddie Mac consented to the entry of the Limited Destruction Order.

### AHM's Continued Delays

12.    AHM's stated "rolling production" of 200 files a day (which was supposed to commence on November 27, 2007) never occurred. On January 29, 2008, AHM advised that 800 hard-copy files were still in storage, but were being pulled, six files were stored in microfiche format, and 51 mortgage loan files could not be located.

**The Supplemental Motion and Freddie Mac's Second Objection**

13.     On February 5, 2008, the Debtors filed the Supplement To Motion For An Order Pursuant To 11 U.S.C. §§ 105, 363 And 554 Authorizing The (I) Abandonment And Destruction Of Certain Duplicate Mortgage Loan Files Or (II) Return Of Mortgage Loan Files To The Owner Of Such Loans Upon Payment Of Reasonable Costs And Expenses (the "Supplemental Motion") (D.I. 2888). The Supplemental Motion requested entry of an Order approving certain "request and return" procedures to govern the loan owners' requests for and the Debtors' return of loan files to those owners.

14.     On February 11, 2008, Freddie Mac filed its Objection to the Supplemental Motion (the "Second Objection") (D.I. 2928), wherein Freddie Mac objected to the relief requested in the Supplemental Motion as unnecessary and contrary to the parties' Stipulations.

15.     To resolve the Second Objection, the Debtors agreed that any Order approving the Supplemental Motion would be wholly inapplicable to Freddie Mac and representations were made on the record to confirm this agreement. See Transcript of February 14, 2008 Hearing, p. 49, l. 5-8 (COURT: "I take it in effect Freddie Mac's carved out of this order?" MR. BRADY: "Yes."). On February 19, 2008, the Court entered an Order granting the Supplemental Motion (D.I. 3010). By its express terms, and in accordance with the representations made on the record at the February 14, 2008 hearing, the Order is inapplicable to Freddie Mac and does not affect Freddie Mac's rights under the Stipulations.

**AHM's Continued Delays and Disorganization in Transferring Files**

16.     During February of 2008, numerous e-mail and verbal communications took place among both legal and business personnel regarding the 800 hard-copy files supposedly "being pulled." During various times, AHM represented that these files were either waiting to be sorted

or had been shipped. On February 26, 2008, AHM confirmed that the 800 files remained undelivered, but would be received by BofA no later than March 14, 2008.

17.    Again, this delivery did not occur. A comprehensive file-by-file audit arranged by Freddie Mac and conducted in mid-March 2008 resulted in a new list of 690 missing servicing files. Some of those missing were files that AHM had previously indicated as having been sent. Conversely, numerous files previously listed as missing (because they were never on any AHM manifest of files being sent) had nevertheless apparently been received by BofA. The audit also revealed that a significant number of the files received by BofA from AHM were missing critical documentation.

18.    On March 19, 2008, AHM provided assurances that 42 additional boxes of files had been sent. Over 20 days later, on April 9, 2008, those 42 boxes of files had still not been received. Further inquiry to AHM resulted in confirmation that the files had not been sent, but were being sent that day. Forty-two boxes of files were ultimately received by BofA on or about April 16, 2008. Two boxes of files were ultimately returned by BofA to AHM because they contained non-Freddie Mac loan files.

19.    Upon receipt of the 42 boxes, Freddie Mac conducted a comparison of the manifests against the list of 690 files listed as still missing, and BofA supplemented the comprehensive file-by-file audit with a review of the files actually received. Those separate analyses resulted in the determination that the 42 box shipment (which contained several hundred files) included only about 155 of the 690 files listed as missing, leaving approximately 535 still missing files. One possible explanation is that many of the files contained within the 42 boxes were hard-copy duplicates of files previously received in electronic or microfiche format, and which were not consequently listed as missing. In any event, AHM's inability to locate

those 535 files was especially confusing given that AHM had previously represented on January 29, 2008 that only 51 files could not be located.

20.    On May 8, 2008, AHM represented that approximately 450-460 of the still missing files constituted "older files" previously serviced by Columbia National or another mortgage servicer acquired by AHM prior to the Petition Date.  As a result, those servicing files were not catalogued electronically, and had consequently not previously been identified by AHM as Freddie Mac's files.  Those files are not separated out by owner, but rather are randomly intermingled in tens of thousands of boxes with mortgage files which the Debtors seek to imminently destroy.

21.    Since May 8, 2008, AHM has forwarded 0 of the missing files to BofA.  As of the date of this Motion, approximately 535 of Freddie Mac's files remain missing and numerous other files have been transferred without some critical documentation.

22.    The Debtors have now filed the Motion, renewing their request to destroy all hard-copy loan files in their possession which are not subject to a "Loan File Return Declaration", a postpetition agreement, or an order to return.

## OBJECTION

23.    By way of the Interim Servicing Stipulation, the Debtors agreed to substantially complete the Interim Hard Copy Servicing Transfer by November 2, 2007.  Seven months have now elapsed since the passing of this deadline, and approximately 535 of Freddie Mac's files remain missing.  Additionally, some of the files transferred to BofA are missing critical documentation.  In this regard, the Debtors' Motion indicates that loan files may consist of a credit file and a legal file "transmitted to Debtors' headquarters at different times" and "not located in the same storage box".  See Motion at ¶ 7, p. 3.  The lack of complete documentation

for some loans may be the result of receipt by BofA of only one of two existing file folders for

particular loans.[1]

24.    Despite their ongoing failure to comply with the agreed-upon file transfer

deadline, the Debtors are again pressing to destroy files.  This request for authority to destroy

over a million unidentified loan files is especially problematic when viewed in light of the

Debtors' ongoing inability to locate and transfer the Freddie Mac mortgage loan files to BofA in

accordance with the Interim Servicing Stipulation.  This inability to locate and forward Freddie

Mac's loan files during the seven month period since the Stipulations were executed is indicative

of the severe deficiencies in the Debtors' recordkeeping and organization of mortgage loan files.

25.    Although the Debtors are not seeking to destroy Freddie Mac's files (which are

"subject to a postpetition agreement") the danger of inadvertent destruction of documents is

apparent given (i) the history of delays and disorganization exhibited by AHM, (ii) the fact that

the majority of Freddie Mac's missing files are not electronically catalogued, and (iii) the fact

that individual loan files are stored in separate boxes intermingled randomly with loan files

which the Debtors are seeking to destroy.

26.    Freddie Mac's concerns regarding the inadvertent destruction of its documents

mirror those of this Court, as articulated at the January 14, 2008 hearing.  There, the Court stated

> I'm very concerned in preserving documentation for these loan files,
> documentation that may or may not be necessary for claims litigation or any other
> kind of litigation or documentation that's just necessary for the instrument to be
> of use to the people who are parties to it.  No matter how careful you are,
> mistakes will be made, and something's going to get destroyed that there's not a
> duplicate for, and that document will be gone forever.

See Transcript of January 14, 2008 hearing, p. 92, l. 20 to p. 93, l. 2.

---

[1]    It is also possible that the files not listed as "missing", but nevertheless included in the 42
boxes received in April 2008 by BofA, were actually second file folders on loans for which
BofA believed it had already received all existing documentation.

27.    As recognized by the Court, mistakes will invariably be made and documents will invariably be inadvertently destroyed during the course of the document destruction process proposed by the Debtors.  Given the history of the instant dispute outlined above, Freddie Mac has little confidence that all if its files would escape inadvertent destruction.  To avoid the destruction of irreplaceable mortgage loan files, as well as original notes and security instruments, belonging to Freddie Mac, the Court should deny the Debtors' Motion pending absolute completion of the Interim Servicing Transfer (as defined in the Interim Servicing Stipulation).

28.    Freddie Mac stands to suffer considerable harm from any destruction of its mortgage loan files, including a potential inability (i) to enforce its rights under any loan for which the loan documents were inadvertently destroyed or (ii) to provide releases and/or discharges of the notes and security instruments upon payoff, as potentially required by the loan documents and applicable state law.  The Debtors should not be allowed to prematurely implement a document destruction process which jeopardizes Freddie Mac's rights under the Stipulations to receive *all* of its mortgage loan files.

WHEREFORE, Freddie Mac respectfully requests that the Court (i) sustain the Objection; (ii) deny the relief requested in the Motion; and (iii) grant such other and further relief as is just and proper.

Dated: June 13, 2008
      Wilmington, Delaware

Respectfully submitted,

By:    /s/ J. Cory Falgowski
        J. Cory Falgowski (No. 4546)
        REED SMITH LLP
        1201 Market Street, Suite 1500
        Wilmington, DE 19801
        Telephone: 302-778-7500
        Facsimile: 302-778-7575
        E-mail: jfalgowski@reedsmith.com

           and

        George Kielman, Esquire
        Associate General Counsel for Litigation
        Freddie Mac
        8200 Jones Branch Drive - MS 202
        McLean, VA 22102
        Telephone: 703-903-2640
        Facsimile: 703-903-3691
        E-mail: george_kielman@freddiemac.com

        Counsel for Federal Home Loan Mortgage
        Corporation