# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br>et. al.,<br><br>          Debtors,<br><br>PAULA RUSH,<br>          Movant,<br><br>AMERICAN HOME MORTGAGE CORP.,<br>et., al.,<br><br>          Respondent. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>Jointly Administered<br><br><br><br><br>**Objection Deadline: TBD**<br>**Hearing Date: TBD** |

## EMERGENCY MOTION  FOR AN ORDER OF

## RELIEF FROM THE  AUTOMATIC STAY

Paula Rush ("Movant"),  party in interest herein, hereby moves the Court for an emergency order terminating or annulling the automatic stay, imposed in this case by § 362(a) of Title 11, United States Code, to permit Movant to continue with her complaint filed against Debtors in United States District Court for The District of Maryland, Southern Division, Case No. 07-854 (WMN).   Movant has been unable to exercise her right of due process in order to save her home put at risk by the predatory loan origination and predatory servicing practices of American Home Mortgage. In support of this Motion to terminate stay, the Movant respectfully represents to the Court as follows:

1

## INTRODUCTION

(1)      Movant is seeking relief from the automatic stay to permit her to continue her

complaint pending in the United States District Court for the District of Maryland, against Debtor

American Home Mortgage Corp, *et al.,* ("Debtor").  The complaint Movant seeks to continue is

Case No. 07-854 (WMN).

(2)   The Complaint includes another Defendant,  ServiceLink which was American Home

Mortgage agent through an ABA and settlement provider. Chicago Title was the title insurer.

 Both ServiceLink and Chicago Title are wholly owned subsidiaries of Fidelity National

Financial.

(3)    The complaint against ServiceLink was dismissed without prejudice on October 25,

2007 for lack of subject matter jurisdiction to hear state law claims due to American Home

Mortgage bankruptcy stay.  Movant refiled in Harford County Md. State Court, and then

ServiceLink removed the case back to Federal Court.  Currently a motion by Movant is pending

to enjoin it back with the original complaint and therefore lifting the stay is an urgent matter.

ServiceLink, has asserted that American Home Mortgage is an indispensable party to the suit, but

at the same time are fighting the enjoining of these cases due to the bankruptcy stay imposed.

This is severely prejudicial to the Movant in this case.  **SEE**  EXHIBIT  "A"

2

(4) Movant has been unable to continue the action due to the automatic stay imposed and, as this Court is well aware, has exhausted every other means of a remedy other than continuation of a legal action. This Debtor has abused this bankruptcy Court and the protections it affords to create an unfair disadvantage to borrowers. Discovery will continue to be impacted the longer the stay is in effect. Many employees, who were a party to the Movant's loan, whereabouts are still known at this point as they have claims pending against the Debtor, but as time passes they may be harder to track down and depose.

(5) Movant requests that the court lift the automatic stay in order for Movant to pursue claims that sound in fraud against American Home Mortgage and associated parties of interest. Movant is seeking the equitable remedy of rescission and/or voided interest in Movant's property. Movant's claim is undetermined, and upon information and belief, the equitable remedy may go against another party as Debtor's counsel has asserted and Movant believes that her loan was sold off to a third party, and the Debtor is currently protecting the identity of this third party.

(6) Movant believes that the allegations in this action constitute the enforcement of regulatory remedies *§ 362(b)(4)*, sounds in fraud, and may carry criminal penalties. All of these remedies can't be avoided by bankruptcy. Congress clearly intended that perpetrators of fraud should not be given the opportunity to wipe out debts in bankruptcy, and upholding the stay

3

will only delay American Home answering to Movant's allegations.

The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of affording relief only to an "honest but unfortunate debtor."

Congress <u>did not</u> favor giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws. Accordingly, Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

(7)   Making false statements is a very serious crime. It is defined as "an untrue statement knowingly made with the intent to mislead." BLACK'S LAW DICTIONARY 1445 (8th ed. 2005).  In this transaction numerous false statements, concealment, schemes and tricks were used.

18 U.S.C. § 1001 (2005) It is a violation of section 1001 for a person, to "knowingly and willfully" falsify, conceal, or cover up by any trick, scheme, or device a material fact; 18 U.S.C. § 1001(a)(1) or to make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry. Id. § 1001(a)(2).

(8) The Supreme court has ruled that it is not just the value of the property, but that also includes treble and punitive damages.

It is not only the actual value of the "money, property, services, or . . . credit" the debtor obtained through fraud that is non-dischargeable in bankruptcy, but also treble <u>"punitive" damages</u> and attorneys fees and costs related to the fraud. This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in <u>Cohen v. de la Cruz</u>.

(9) American Home Mortgage Corporation and agents Cohn, Goldberg & Deutsch LLC submitted that Mortgage Electronic Registration Systems Inc (MERS)  was nominee for

4

American Home Mortgage Corporation, and American Home Mortgage Corporation was the

holder of the note securing Movant's property. According to MERS, American Home

Mortgage Holdings Inc, is the servicer, and according to Movant's servicing records the true

party holding Movant's loan is Goldman Sachs Trust GSR 2006-OA1.   SEE EXHIBIT "B"

(10) Despite rescission letters sent on April 1, 2007, lawsuit filed April 3, 2007 and numerous

requests for true owner of the note under TILA 1641(f)(2) on May 28, 2008, Cohn Goldberg &

Deutsch asserted American Home Mortgage has once again asked them to move forward with a

foreclosure action. Considering this, upholding the stay will significantly prejudice the Movant.

Movant's home is a secured claim subject to set- off's and Movant needs to

move forward with this action to determine what set-off is available. SEE EXHIBIT "D"

(11) American Home is using the stay to protect themselves and third party purchasers,

which American home refuses to name, and those parties, although Movant has addressed them

directly refuse to admit they are in any way connected to her loan. All parties are using the

bankruptcy court and the bankrupt Debtor to hide behind and not answer the allegations,

while they complete the agenda to trample Movant's rights. American Home, as a front for these

entities, has refused to respond to all inquiries under TILA 1641(f)(2).

(12) Movant has petitioned for this information and participated in hearings, requesting

the information on the true owner of the note or master servicer repeatedly .

Docket #1489, #1997, #2816, #2951, in reference to numerous issues including demand to know

the true owner of the note or master servicer under TILA 1641(f)(2). In Docket #1656 Page 2,

Counsel for American Home asserts that Movant's loan is owned by a "third party securitized

trust." Now it is obvious to Movant that the party who they were protecting was a third party

purchaser (Goldman Sachs) who at the time of the bankruptcy filing were the next largest

5

stockholder in American Home Mortgage second only to CEO Michael Strauss.

**SEE** EXHIBIT "E"

(13) At the hearing on October 31, 2007, Mr. Brady, Attorney for the Debtor, asserted in this Court that American Home Mortgage did not have to comply with TILA 1641(f)(2). Mr. Dickman, as witness for American Home Mortgage servicing, asserted that mortgage investors did not want American Home Mortgage Servicing to comply with TILA 1641(f)(2), stating they pay us to service and field all inquiries. Mr. Dickman stated clearly that the investor and the  master servicer **does not** want them to give the borrowers this information, and generally speaking they do not give that information to the borrower. This is not a **choice** they get to make.

**SEE** EXHIBIT "F"

(14) Subsequently Movant communicated with Wells Fargo as Master Servicer through counsel Frank Top of Chapman Cutler demanding they take a position on whether or not Wells Fargo as Master Servicer on Movant's loan (after discovering this information),  agreed with the assertions made by Mr. Brady, and Mr. Dickman to this court. Without admitting to be Master Servicer on Movant's loan, Wells Fargo asserted; " Even so, Wells Fargo does not condone any violation of any law applicable to the servicing of mortgage loans by American Home Mortgage or any other servicer." And "Further, be advised that Wells Fargo has not authorized anyone to speak on their behalf, regarding any of the issues raised in your email, including but not limited to Mr. Brady or Mr. Dickman. Whatever testimony or argument either gave is solely their own and may not be reflective of the views and position of  Wells Fargo." **SEE** EXHIBIT "G"

(15) There are multiple incidences of obfuscating the issue of true owner the note, conflicting paper trail records, and an outright refusal of honesty and integrity, including

6

misrepresenting compliance under TILA 1641(f)(2) to the Bankruptcy Court on Oct 31, 2007.

Movant requested this information over and over again in petitions, at hearings, and

Title 15  §1641(a)(b)(c) is clear - All liability in civil action may be maintained

against anyone who is an assignee therefore making the owner of the note an absolute

requirement for the borrowers. Title 15  §1641(f)(2) is clear - Upon written request by the

obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the

name, address, and telephone number of the <u>owner of the obligation or the master servicer</u>

of the obligation. Title 12  § 2605(e)(A) is clear – The loan servicer has a duty to respond to

borrower inquiries. The Lender has a duty to respond as required under Title 12  §2605

(2)(A)(B)(C).

     (16)  Movant, after hundreds of hours of research, without Debtor compliance under TILA

1641(f)(2), has found this information on SEC filings for Goldman Sachs Trust GSR 2006 OA-1.

Upon information and belief this is the party the Debtor is protecting. This constitutes

fraudulent concealment. <u>**SEE**</u> EXHIBIT " I"

<u>Information taken right off the SEC Filing for GSR 2006-OA1</u>

1222336  STATED DOC 0  1483  590943.07 586500 586500 593316.96
7.832 1  9.95 0  0 8.95  3.55 Churchville MD 21028 0 1  480  36
6/1/2006 5/1/2046 6/1/2006 4/3/2006 8/1/2006 9/1/2006 6/1/2007 7/1/2006

JUMBO 1222336  CURRENT 586500 590943.07  7/1/2006 6/1/2006 5/1/2046 4/3/2006 6/1/2006
1 2  478- 480  Churchville MD 21028
AHM 0 0 1 7.693  MTA 3.55 0 0 8.95 9.95 6/1/2007 Y 125  FICO 643

THE PARTIES

Master Servicing and Trust Agreement dated as of <u>August 1, 2006,</u> among GS Mortgage Securities Corp., as Depositor, Deutsche Bank National Trust Company, as Trustee and Custodian and **Wells Fargo Bank, N.A., as Securities Administrator and Master Servicer**

4.5.2 to Form 8-K on <u>September 11, 2006</u> and <u>incorporated by reference</u> herein) Second Amended and Restated Mortgage Loan Sale and Servicing Agreement dated as of <u>May 1, 2006</u> between American Home Mortgage Corp., American Home Mortgage Servicing, Inc. and Goldman Sachs Mortgage Company

Assignment, Assumption and Recognition Agreement dated as of <u>August 1, 2006,</u> among Goldman Sachs Mortgage Company, as assignor, GS Mortgage Securities Corp., as assignee, American Home Mortgage Servicing, Inc., as servicer, and American Home Mortgage Corp., as seller

Assignment, Assumption and Recognition Agreement dated as of <u>August 1, 2006,</u> among GS Mortgage Securities Corp., as assignor, Deutsche Bank National Trust Company, as assignee, American Home Mortgage Servicing, Inc., as servicer, and American Home Mortgage Corp., as seller (filed as Exhibit 99.7 to Form 8-K on <u>September 11, 2006</u> and incorporated by reference herein)

**WELLS FARGO BANK, NATIONAL ASSOCIATION** By:/s/ ***Brian Bartlett*** Brian Bartlett Its: Executive Vice President Dated: <u>March 1, 2007</u> (page) (logo) WELLS FARGO Corporate Trust Services 9062 Old Annapolis Road <u>Columbia</u>, <u>MD</u> <u>21045-1951</u> 410 884-2000 410 715-2380 Fax Wells Fargo Bank, N.A.

(17) American Home is continuing to assert it will reorganize, and Movant asserts that American Home can only reorganize if it reaches resolutions for all the pending claims against them. The process of reorganization will not negate the rights of victims to seek and receive the remedies they deserve. American Home is an indispensible party to Movant's suit.

## BACKGROUND FACTS

(18)   On or about February 2006, The Loan Corporation,  acting as agents/partners of American Home Mortgage through American Brokers Conduit solicited Movant to "refinance" the mortgage on her residence at 2651 Peery Drive Churchville Md. 21028. Movant's loan file revealed that  Movant's loan was "Assigned" to "ABC" on March 7, 2006. **SEE** EXHIBIT "J"

8

(19)  Movant was lured with a flyer promising a 1% interest rate locked in for five years. No other information was given on this flyer. Just the promise of a 1% interest rate, in violation of advertising disclosure rules. The Federal Trade Commission and courts long have held that an entity violates Section 5 of the FTC Act if it induces the first contact through deception, even if it provides disclosures before the consumer enters the contract. *Resort Car Rental Sys. Inc. v. FTC*, 518 F. 2d 962, 964(9th Cir. 1975); see also *FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 262-63 (E.D.N.Y. 1998) **SEE** EXHIBIT "K"

**FTC Advertising Finance Rates**

**Basic Rule**

The second basic requirement for advertising closed-end credit is this: if your ad shows the **finance charge as a rate, that rate must be stated as an "annual percentage rate," using that term or the abbreviation "APR."**

The ad must state the annual percentage rate, even if it is the same as the simple interest rate. You must state the annual percentage rate accurately. APR reflects the total cost of credit, including interest and other credit charges.

As long as you <u>include the annual percentage rate in the ad</u>, you also may state a simple annual rate or a periodic rate or both, applicable to an unpaid balance. However, the simple annual or periodic rate <u>may not be more conspicuous in the advertisement</u> than the annual percentage rate. For example, an advertisement for mortgage credit may include the contract rate of interest together with the annual percentage rate, as long as the contract rate is not more prominent than the APR.

(20)  On or about February 17, 2006 The Loan Corporation pulled Movant's credit report and started the application process, contracted an appraiser through American Home who appraised Movant's house on February 22, 2006, and the loan was **assigned** to "ABC" on March 7, 2006. Movant did not receive disclosures as required within the required 3 day timeframe. The Loan Corporation disclosures have a date of 2/17/06 but were not signed until 3/5/06.  "ABC" was assigned the loan on 3/7/06 and presents disclosures on March 13, 2006 (those disclosures were signed until settlement 4/3/06). Neither timeframes is within the 3 day required rules.

Although loan terms were substantially changed between, February 17, March 5,  March 13 and

again on April 3 at settlement, no subsequent disclosure were given as required under REG Z.

    (21) The Good Faith Estimate, Truth in Lending Disclosures, ABA's, and Maryland

Financing Disclosures, and all other disclosures were not provided as required under TILA within

3 days of loan application. The all important right of rescission was taken away at closing. In fact,

many issues were hidden from Movant until obtaining a full loan file in Oct., 2007. That revealed

that the loan was assigned immediately after applying, ServiceLink, Chicago Title, and Trust

Appraisers/ Homegate Settlement Services,  were chosen before Movant had any chance to

question it or view any disclosures or ABA arrangements.  These parties were participating in

cooperation with American Home to defraud Movant.

The Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq., 24 C.F.R. Part 3500 et seq.,
1974. RESPA requires: a good-faith estimate of settlement costs within 3 days of when a
consumer applies for a loan.

    (22) American Home had already been the chosen lender when the approved appraiser

through Homegate Settlement Services was sent to  appraise Movant residence on February 22,

2006.   Movant had no idea that  Trust Appraisers was an agent of American Home through

Homegate Settlement Services and may not appraise the property impartially or within USPAP

guidelines. Disclosures were not given which should have given by February 20, 2006 by

American Home and they should have been accurate. **SEE** EXHIBIT "L"

    (23)  Movant was not given the appraisal at that time but  was told the property appraised

for $782,000.  Upon requesting information for filing suit Movant demanded the appraisal and

finally received a copy on Jan 19, 2007.  At that time Movant clearly saw that this appraisal had

gross misrepresentations which inflated the value of her home. Movant has since had realtor  pull

comps from the time this appraisal was created which clearly show that Trust Appraisers ignored

closer comparables to "make the number" requested to make the loan work.  To make matters

worse,  the appraisal stated the Movant's basement was finished, the upper floors Square footage

10

was inflated, and the bathroom count was wrong. In fact, just nine months later, American Home ordered a Broker's Price Opinion in the process of preparing for foreclosure, which stated that the value was $650,000. This figure would prevented AHM from sticking Movant in the Pay Option Arm loan, presented a low LTV on AHM reports they used to entice the general public to purchase shares of stock on the NYSE, may have affected the ability to securitize and/or sell or the price, and would have cost more for AHM to cover insurance with TRIAD. Movant was misled into believing that the "Value" of her home was sufficient to incur costs of refinancing, and to believe this was a better loan than the one she had.

CRIMINAL LIABILITY as stated on appraisal report
Paragraph 25.
Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

(24) The Loan Corporation was "signed up" as a broker/agent of "ABC" as was required of all brokers doing business with American Home Mortgage. In that capacity The Loan Corporation was viewing loan terms based on commission incentives (YSP's) that "ABC" used to entice them into placing Movant into their high profit predatory loan program, the Pay Option Arm. For this service, "ABC" paid a kickback in the form of a yield spread Premium, or "YSP" of $19,794, for delivering loan terms such as a 3.55% margin and a prepayment penalty in addition the highly predatory and misrepresented Pay Option Arm loan. This amount was paid out of Movant's loan proceeds, not outside of closing as stated on the HUD-1. Discovery is necessary to access the exact rate sheet provided to The Loan Corporation in that timeframe, however Movant has obtained the complete training manual and a generic rate sheet contained therein. In Maryland brokers are prohibited from receiving dual compensation in the same transaction. The Loan Corporation did collect a broker fee of $810 and the YSP of $19,794. No Maryland required disclosure was given.

**Maryland Finder's Fee Law, Md. Code (1975, 2000 Repl. Vol.),**
**§§ 12-801 - 12-809** of the Commercial Law Article

**Mortgage Broker Restrictions**

11

In 1979, Maryland enacted a law that places restrictions on mortgage brokers.
The "Finder's Fee Act" is intended to protect consumers from abuses by brokers.
The statute requires the **broker to provide the borrower with a written agreement that states the amount of the broker's fee.**

**SEE** EXHIBIT "M"

"By their very nature, yield spread premiums are not compensation given for services actually performed by the broker." *Mentecki v. Saxon Mortgage, Inc., 1997 WL 45088 (E.D. Va.)*

The Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq., 24 C.F.R. Part 3500 et seq., 1974. RESPA prohibits you from receiving a "thing of value" for referring business to a mortgage or title company. Violators may receive harsh penalties, including triple damages, fines, and even imprisonment.

(25) The good faith estimates provided to Movant did not contain proper or correctly disclosed information about the YSP to be paid to the broker. Movant had no idea the broker was an agent of American Home, had assigned her loan almost immediately to American Home, or that the broker, was accepting a exorbitant "kickback' for misleading Movant into a highly predatory Pay Option Arm loan.

GOOD FAITH ESTIMATES THAT MAKE NO MENTION OF YSPs PAID TO BROKERS ARE INADEQUATE UNDER RESPA; GOOD FAITH ESTIMATES IDENTIFYING A YSP RANGE BUT FAILING TO SPECIFY AN AMOUNT MAY RAISE AN ISSUE FOR TRIAL. *Pierce v. Novastar Mortgage, Inc.,* **No. Co5-5835RJB, 2007 U.S. Dist. Lexis 18336 (W.D. Wash. 2007)**

The detail which a mortgage company puts on its GFE forms can determine whether RESPA is violated as a matter of law or a fact dispute exists as to a RESPA violation. RESPA requires borrowers to be provided with a good faith estimate ("GFE") listing the "amount or range" of settlement charges within three days of receiving a loan application." 12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7(c). To comply with RESPA, a GFE must include "indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction" and "mortgage broker fee[s]." 24 C.F.R. § 3500, App. A § L; *Anderson v. Wells Fargo Home Mort., Inc.,* 259 F. Supp. 2d 1143, 1146 (W.D.Wash. 2003).

(26) On Movant's loan ServiceLink collected and American Home financed a fee of $1130 for recordation taxes. However $966 of that was an overcharge which was hidden and funds were kept until Movant discovered the error. This information was hidden on the final

12

TILDS and the Deed presented to Movant.   "ABC" prepared and approved the documents from

their location, American Brokers Conduit 5160 Parkstone Drive Chantilly VA.

**SEE** EXHIBIT "Q"

The finance charge is computed according to the rules set forth in 12 C.F.R. 226.4 ("Finance Charge"). The finance charge includes "any charge payable directly or indirectly by the creditor as an incident to or a condition of the extension of credit," 12 C.F.R. 226.4(a), unless a charge is specifically excluded.

Taxes and fees "prescribed by law that are or will be paid to public officials," such as for a release of lien. 12 C.F.R. 226.4(e). These fees are normally excluded if actually paid to public officials.

Every loan charge must be properly disclosed as either part of the "amount financed," which represents "the amount of credit provided to you or on your behalf," 12 C.F.R. 226.18(b), or as part of the "finance charge," which represents "the dollar amount the credit will cost you," 12 C.F.R. 226.18(d).

(27)  Movant's loan documents including loan application state an interest rate of 1%.

The Good Faith estimates state an APR of 6.320%, and  final TILDS 7.468%. The beginning

index used was 3.883% (as revealed in American Home file documents- this figure was not given

to Movant or any history of this index) and the margin was 3.55%. So the beginning APR without

closing cost added in would have been 7.433%. The first problem is every ARM adjustment since

origination has been based on the previous month index. In this case the index used should have

been March 2006 which was 4.0108% + 3.55 or 7.561%  plus closing cost would have made

this higher. Next, a  simple amortization schedule to arrive at the final figure presented in total of

payments on the TILDS of $2,146,673 requires an APR of  8.9250% to start.  The tolerance for

errors on a variable rate loan is only a **.25%** difference allowance for APR disclosure. "ABC"

prepared and approved the documents from their location, American Brokers Conduit 5160

Parkstone Drive Chantilly VA. This difference is 1.457%. **SEE** EXHIBIT "O"


(23)  Throughout Movant's documents the only prominent figure found is an offer of 1%

interest rate using that exact term. From the advertising flyer, to the loan application, to even

American Home underwriting and internal documents, over and over again this is referred to as a

13

1% loan.  Each payment schedule given on all TILDS, GFE, and even on payment coupon presented is always an amount based on a 1% rate.  No where is it revealed that this is a payment rate and not an interest rate. Negative Amortization is not clearly revealed, nor the payment schedule required to avoid negative amortization, or any amortization schedule. It is all desinged to purposefully mislead consumers into this loan. This issue has been taken up in several lawsuits including the Andrews v. Chevy Chase Bank, Plaintiffs won summary judgement, and  FTC actions FTC v. Chase Financial Funding Inc. and FTC v. 30 Minute Mortgage Inc., actions were unopposed.  **SEE** EXHIBT "U"

(24)  Discovery will reveal ServiceLink as a lender affiliated platform which was conducting property settlement services and title services for residential mortgage loans as defined by Title 12-2602 (B)(3)(4).  ServiceLink did participate in an ABA with American Home Mortgage as defined under Title 12-2602 (B)(7)(A)(B) and (8)(D). American Home did engage in a business arrangement with ServiceLink, which upon information and belief includes fee splitting. Title Settlement agents have confirmed for Movant that arrangements existed between American Home and ServiceLink to fee split.

(26)  "AHM" subsidiaries, Homegate Settlement Services and Great Oak Abstract Company, which were revealed in bankruptcy filings, are entities used to engage in fee splitting arrangements as defined in Title 12-2602 (7) (A)(B). Appraisers, who were signed up with Homegate and have confirmed to Movant that American home paid them less then what was collected for appraisal fees, thereby taking funds for no services provided and using this affiliations to manage every aspect of the appraisal transaction.

(27) Considering it is clear SERVICELINK was the chosen provider from the onset of this transaction, and considering "AHM" and ServiceLink submitted an invoice on 3/10/06 which stated clearly the closing fee would be $450 and the Title Exam and Abstract would be $210, the fee schedule should have been correct on the Good Faith Estimate on 3/13/06. **Sections 4 & 5 of RESPA** prohibit a bank from <u>charging more at closing</u> than they told you they would charge when you first applied for the loan. **SEE** EXHIBIT "N"

| | | | |
|---|---|---|---|
| 2/17/2006 | Closing fee  $300 | Title Abstract $75 | Title Exam  $75 |
| 3/13/2006 | Closing fee  $375 | Title Abstract $75 | Title Exam $75 |
| HUD-1 | Closing fee $450 plus $100 siging fee | Title Abstract or Title Seach $210 | |

(28)   American Home Mortgage, and The Loan Corporation  acted in collusion to defraud plaintiff for lucrative kickbacks offered by "ABC." The conspiracy now continues in the obfuscating the true owner of the note as all the players, Goldman Sachs, Wells Fargo, and Deutsche Bank are hiding themselves behind the bankrupt entity American Home Mortgage.

(29)   Bait and Switch is evident and clear, as terms "presented" were not terms actually already determined.   These material terms included:

| | | |
|---|---|---|
| Interest Rate | <u>Bait</u> 1%  for Five Years | <u>Switch</u> 8.925% NEG AM |
| Home Value | <u>Bait</u>  $782,000 | <u>Switch</u>   $650,000 |
| Loan amount | <u>Bait</u>  $649,000 | <u>Switch</u>   $586,500 |
| Prepayment Penalty | <u>Bait</u> None | <u>Switch</u>   2 Year Prepayment Penalty |

(30) Movant alleges American Home Mortgage, American Home Mortgage Servicing, and other associated parties have failed to act within any standards of good faith and fair dealing and have  tortuously interfered, and willfully acted in disregard for Movant's numerous attempts to resolve her issues.  American Home Mortgage has conducted itself in violation of mandated standards under Federal and State laws, and professional licensing standards, which has frustrated the Movant's ability to perform under the contract.

In re Jercich, 238 F.3d 1202 (9th Cir. 2001), *cert. denied*, 533 U.S. 930 (2001)

Although a simple breach of contract is not actionable under § 523(a)(6), "where an intentional breach of contract is accompanied by tortuous conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." Tortuous conduct does not have to be independent of the breach of contract. Here, debtor was found to have the "clear ability" to pay wages, but willfully "chose not to."

"We hold...that under *Geiger,* the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct."

In re Baldwin, 249 F.3d 912 (9th Cir. 2001)


(31)  The standard to qualify for a loan rescission remedy when a borrower is in foreclosure, is a <u>$35 mistake or overcharge</u> on the HUD-1.  $100 for affirmative damages.

**Movant has the following overcharges:**

**Recordation Overcharge – Charged** $ 1142.20  **Paid** $175.30   **SEE** EXHIBIT "O"

**YSP** - $19,794 (to be included in finance charges if (a) not reasonable compensation for services rendered (b) not paid outside closing (POC) but through closing) & **Broker Fee Charged– $810 in addition to the  "YSP"   SEE** EXHIBIT "M"

**Title Insurance Charged**- $1130.90  - **Invoice** $982.15   **Maryland Rate Calculator** $766.35 <u>**SEE**</u> EXHIBIT "N"

The finance charge tolerance for defendants in foreclosure actions is $35 (for rescission), <u>12 C.F.R. 226.23(h)</u>, and $100 (for monetary damages), "<u>12 C.F.R. 226.18(d)(1)</u>.

Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule. <u>12 C.F.R. 226.23(a)(3) n.48</u>.

Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. <u>12 C.F.R. 226.23(a)(3)</u>. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule. <u>12 C.F.R. 226.23(a)(3) n.48</u>.

**Sec. 1635. - Right of rescission as to certain transactions**

16

**(a)** Disclosure of obligor's right to rescind

" the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction <u>or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later,</u> by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

**(d)** Modification and waiver of rights
The Board may, if it finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

**(f)** Time limit for exercise of right
An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if:

**(i)** Rescission rights in foreclosure
(2) Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (f) of this section, in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if
**(A)** a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated; or
**(B)** the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

**(2)** Tolerance for disclosures
Notwithstanding section 1605(f) of this title, and subject to the time period provided in subsection (f) of this section, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge <u>does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed</u> under this subchapter.

( 32) Movant has clearly stated that the APR is substantially different then the APR

17

Disclosed and is beyond the .25% threshold for irregular rate loans. **SEE** EXHIBIT "O"

The "annual percentage rate" (APR) combines the interest rate and additional up-front (prepaid) finance charges to yield the total "cost of your credit as a yearly rate." 12 C.F.R. 226.18(e). *In re Hill*, 213 B.R. 934 (Bankr. D.Md. 1997).

There are statutory "tolerances" for the APR and the amount financed and finance charge.
Violations are deemed non-material if they fall within these tolerances.
The APR tolerance is .125% for regular loans and .25% for irregular (variable-rate) loans.
12 C.F.R. 226.22(a).

(33) American Home had chosen Movant's settlement agent and title coompany services before Movant even got a Good Faith Estimate. 12 U.S. C. §2607(d)(2) states a lender cannot require the use of title company directly or indirectly. Movant had no choice but to agree to use the American Home required settlement services and title insurance. Although it is required that a settlement agent has a equal responsibility to both the sides of the transactions, ServiceLink under an ABA acted in civil conspiracy to defraud Movant. **SEE** EXHIBIT "N"

**Section 9 of RESPA** (relating to requiring use of a particular title company) is liable to the buyer in an amount **equal to three times all charges made for title insurance.**

( 34) The right of rescission was willfully taken away at closing illegally. Movant was asked at closing, to sign a document that said she would not rescind the loan, and no documents were left with her at signing with the explanation that if she didn't sign it would hold up the funding of the loan. This was an improper and illegal breach of her 3 day right of rescission. The proper and only viable way for this to occur is if "the borrower" writes a note in their own words that they wish to waive the 3 day right of rescission and the reason why. A form letter can't be used for this purpose. The right of rescission is a fundamental right and if not given automatically triggers an extended three year right of rescission.

18

(35) American Home and their business partner, ServiceLink failed to follow TILA by not following proper procedure of (e) Consumer's waiver of right to rescind. (1) The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all the consumers entitled to rescind.

(36) The failure invokes TILA violations and Movant's current circumstances invoke special rules under TILA (h) Special rules for foreclosures--(1) Right to rescind. After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the consumer shall have the right to rescind the transaction if: **(i)** A mortgage broker fee that should have been included in the finance charge was not included; or **(ii)** The creditor did not provide the properly completed appropriate model form in Appendix H of this part, or a substantially similar notice of rescission.

Delivery to each borrower of two copies of a 3-day notice of right to rescind the loan transaction (non-purchase money mortgages only). The notice must meet all the requirements specified in 12 C.F.R. 226.23(b)(1), including setting forth the date the rescission period expires, how to exercise the right, how to contact the creditor, and the effects of rescission.

The three-day right to rescind is absolute; unless the borrower waives the right as set forth in 12 C.F.R. 226.23(e), the creditor cannot take any action to undermine that right. 12 C.F.R. 226.23(c). *Rodash v. AIB Mort. Co.*, 16 F.3d 1142 (11th Cir. 1994); *Jenkins v. Landmark Mortgage Co.*, 696 F. Supp. 1089 (W.D.Va. 1988).

Failure to deliver a proper 3-day notice of right to rescind triggers an extended right of rescission. 12 C.F.R. 226.23(a)(3). *Westbank v. Maurer,* 658 N.E.2d 1381 (Ill.App. 2nd Dist. 1995).

The extended right of rescission lasts 3 years from the date of the closing of the loan. 12 C.F.R. 226.23(a)(3). *Semar v. Platte Valley Fed. S&L. Assn.*, 791 F.2d 699 (9th Cir. 1986)

1 year for affirmative claims. <u>15 U.S.C. § 1640(e)</u>.

      (37)  American Home Mortgage failed to properly respond to the request for loan

rescission which constitutes an additional violation.

Failure to respond to the rescission notice as spelled out above results in another violation and an addition award of statutory damages. *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Mayfield v. Vanguard Savings & Loan*, 710 F. Supp. 143, 145 (E.D. Pa. 1989).

      (38) American Home Mortgage financing partner, Goldman Sachs, Wells Fargo and

Deutsche Bank, as assignees are liable as the violations were apparent on the face of the

documents. These parties also participated in the subsequent violation of TILA 1641(f)(2)

because although Movant filed numerous petitions, and contacted these parties directly, however

all have chosen to refuse to reply to Movants' direct request.  Goldman Sachs also held more than

5% of the Debtor's voting securities according to the SEC filings.  **SEE** EXHIBIT "I"

Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents. <u>15 U.S.C. § 1641(a)</u>.

Upon rescission, "the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge" <u>12 C.F.R. 226.23(d)(1)</u>.

The rescission remedy runs against any assignee: "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." <u>15 U.S.C. § 1641(c)</u>. *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill. 1996); *Stone v. Mehlberg*, 728 F.Supp. 1341 (W.D.Mich. 1989).

Within 20 days the creditor must take action required to cancel the security interest and must return any money paid on the loan. 12CFR226.23(d)(2)

## PREDATORY SERVICING

      (39)  American Home Mortgage was sent a RESPA "qualified written request" and a

20

TILA loan rescission request on April 1, 2007, and subsequent request for disclosure under TILA

1641(f)(2) through numerous Court filings,  and has willfully refused to comply. AHM did not

properly answer "a request" made by a borrower which they are required to do.  RESPA has

assured Movant that as long as AHM is servicing a loan, whether or not litigation is pending or

they are in bankruptcy, they are required to answer a request from the borrower. If this were not

the case, then, as in this instance, a servicer could foreclose with no dialogue with a

borrower. American Home did just that with Mona Dobben.  The requirements under TILA and

RESPA are  not negated due to AHM "subjective beliefs" a correspondence  does not qualify as a

RESPA "qualified written request." The only requirement is that it be a request, identify the loan

number or other identifying information and not be on a mortgage coupon, but a separate piece of

paper. Any other rules attached are contrary to ALL information disseminated by ALL Federal

agencies enforcing these laws.

A LENDER'S SUBJECTIVE BELIEF THAT IT HAS RESPONDED FULLY TO QUALIFIED WRITTEN REQUESTS IS IMMATERAL. *Holland v. GMAC Mortgage Corp.*, No. 03-2666-CM, 2006 U.S. Dist. LEXIS 25723 (D. Kan. 2006)

GMAC failed to respond to QWRs in violation of 12 U.S.C. § 2605(e) by failing to respond "completely" to a borrower's QWR and to "explain its investigation."
On the response to QWRs issue, the Court determined that, although GMACM had replied in writing to two of plaintiff's QWRs, its responses violated RESPA because GMACM **failed to explain that it had conducted an investigation into the plaintiff's inquiries and failed to address the bulk of the plaintiff's inquiries**. The Court determined that GMACM also had violated RESPA when it failed to respond to the letter it received from the plaintiff's attorney, which constituted a separate QWR (even though GMACM promptly corrected the plaintiff's account information). GMACM contended that there were no RESPA violations because it had subjectively believed that it responded fully to the plaintiff's correspondence.

The Court rejected the relevancy of mortgage **companies' subjective beliefs regarding the RESPA rules for QWR compliance.** ( Emphasis Added)

## BACKGROUND OF LAWSUIT

(40)  Plaintiff filed an original complaint on April 3, 2007 and in response counsel for Defendant American Home Mortgage ("AHM") asked for an extension until June 22, 2007 to explore a possible settlement. During this time "AHM" was <u>not</u> negotiating, but instead was simply wasting time.  During that time an email was sent on June 20, 2007 that stated  "AHM" was evaluating the claims and counsel asked for another extension due to pending deadline of June 22, 2007,  which was granted.

(41)  When time ran out "AHM" was granted another extension until July 13, 2007,  with the understanding the extension was for more time to negotiate. Once again "AHM" just wasted the time. On July 10, 2007 Defendant's counsel stated that "AHM" had reviewed the settlement offer and would make a counteroffer but none was forthcoming.

(42) On July 26, 2007,  just days before the last extension deadline, <u>"AHM"  through Counsel, Nancy Hunt, asked Plaintiff to dismiss</u> to allow more time to negotiate a settlement.

(43) On Friday  July 27, 2007 "AHM"  through counsel informed Movant's attorney, John Pica, who was negotiating for Plaintiff, they were rejecting his proposed offer and they otherwise did not make any reasonable alternative <u>asking again if Plaintiff would dismiss.</u>  Nancy Hunt disparaged Mr. Pica, questioning  his fees and asked Plaintiff to dismiss claims to give  them more time. Although Mr. Pica had not filed an official appearance he had been actively reviewing Plaintiff's  claims.  Mr. Pica and other lawyers at his firm spent April, May and June reviewing Plaintiff's documents and investigating Plaintiff's claims for a possible class action lawsuit. Several meetings took place and numerous phone calls. So due to that fact he was very familiar with the issues, Plaintiff asked for his assistance in negotiating.  Subsequently, Mr. Pica informed

22

Nancy Hunt to forget his fees and just take care of his client. American Home did nothing.

**SEE** EXHIBIT "R"

(44) On July 31, 2007 the day of the deadline, "AHM" didn't file a responsive answer but instead filed a Motion to Dismiss and request for an oral hearing. So after three extensions, and no good faith negotiating, AHM continued to seek delays, then filed for bankruptcy.

(45) As of Monday July 30, 2007 trading of "AHM" stock was halted on the NYSE and by Tuesday July 31, 2007, an announcement was made they would probably liquidate assets, and as of August 6, 2007 they filed for bankruptcy. So it is reasonable to conclude that "AHM" and their Attorney were attempting to " pull a fast one" and get Movant to dismiss which would have left Movant unprotected. American Home would have been protected with the bankruptcy and Movant may have lost her home. Nothing this company does is in good faith.

(46) All efforts Movant has made in good faith since all of this began in September 2006, have been met with total disregard. American Home only leaves its victims one option, pursue legal remedies. Movant's life has been put on hold and she has been forced to dedicate an enormous amount of time to undo the damage which has been done.

(47) To date, Defendants to Movant's action have asserted no affirmative defense, and sought only to delay answering the complaint. Each has tried a Motion to Dismiss and none have been granted. It is clear, numerous violations which can't be disputed did take place.

A. 1% interest rate is plastered everywhere to mislead
B. It is clear agency relationship's and agreements existed with other Defendants
C. Failure to disclose negative amortization or provide a amortization schedule
D. Inaccurate Hud-1 and theft of funds
E. Incomplete and inaccurate TILDS
F. Altered documents/two sets of documents

23

G.  Improper taking of Right of Rescission
H.  Failure to provide Good Faith Estimates within 3 days as required
I.  It is obvious from the documents two transactions were happening at the same time – The bait and the switch
J.  It is obvious an agency relationship existed and the loan was assigned to American Home almost immediately after application through the broker.
K.  It is clear that the broker was paid an exorbitant fee in the form of a YSP kickback.
L.  It is clear that Movant was overcharged $966 in recordation tax, that the parties kept the funds, and that the Deed and Truth in Lending disclosure statement was altered to hide this fact.
M.  It is clear that AHM sold Movant's loan and is protecting a third party.
N.  It is clear the appraisal contained false information and was inflated to justify the loan.
O.  It is clear AHM failed to rescind the loan as required under TILA
P.  It is clear AHM failed to respond to a RESPA qualified written request
Q.  It is clear AHM failed to respond to TILA 1641(f)(2) and used attorney's to obfuscate
R.  It is clear AHM failed to inform insurer TRIAD of material facts
S.  It is clear AHM failed to act under principles of good faith and fair dealing

**The Maryland Consumer Protection Act**

While one must be careful in conducting all transactions, you must exercise particular care when dealing with the **settlement of residential real estate.** Responding to "mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit," the Maryland General Assembly found "that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced.

" Md. Code Ann., Comm. Law §§ 13-101, *et seq.* Naming a wide variety of deceptive trade practices in many type of consumer transactions, the CPA expressly prohibits "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with ... [t]he promotion or sale of ... consumer realty." *Id.* § 13-301(9).

(48) Trust Appraisers is an agent of American Home signed up through Homegate Settlement Services. In that capacity, Trust Appraisers created a false and inflated appraisal upon which American Home sold Movant's loan, upon information and belief to Goldman Sachs. The information such as Loan to Value is a crucial element in determining a loan's value, as well as mortgage insurance premium amount, and is publically asserted on SEC filings to proposed purchasers of securities issued by a Trust.

24

(49) The Appraisal

**Specifically the errors and misstated information constituting the fraud are as follows:**

(1) the upper floors were recorded as 4160 SF and this is incorrect;

(2) the garage is 529 SF not the listed 400 SF;

(3) the basement level was recorded as 100% finished when in fact it was unfinished;

(4) the bathroom count is 3 ½ not the 2 ½ recorded;

(5) the comparables listed were not appropriate and were further distance from the subject property then stated in the appraisal and closer comparables were ignored;

(6) the market time (which the appraiser wrote in notes) was not an accurate statement;

(7) statements of overall market conditions ( in notes) were not an accurate statement;

(8) the price range in the subject neighborhood (in notes) was not an accurate statement;

(9) page 5 of the URAR "TA" asserts these false statements: "There are 3 comparable properties currently <u>offered for sale</u> in the subject neighborhood ranging in price from $740,000-$840,000." "There are 15 comparable <u>sales in</u> the subject neighborhood within the past twelve months ranging in sale price from $740,000 -$840,000;"

(10)   the upstairs master bath shower was undergoing renovations and the carpet was in deplorable condition. Neither was mentioned as physical deficiencies.

(50) Movant asserts  that Trust Appraisers was given a value needed and used false information to reach it which he certified the information to be true. Defendants, acting in concert, formed an enterprise engaged in interstate commerce within the meaning of 18 U.S.C. §1961 et. seq. That was organized for the illegal and fraudulent purpose of inducing Movant to take a loan, and to induce a secondary market participant, believed to be Goldman Sachs,  to purchase a loan for inflated and misrepresented amounts, and that left Movant upside down in a loan from which there is not escape, and that left purchasers of the loan under secured.

(51) The U.S. mail and/or the Internet was used in the initial Fraud, and was used in the continued Fraud, and  in the conspiracy to commit Fraud, and in the continuance and furtherance of this Fraud upon plaintiff in violation of  18 U.S.C. §1341 and 18 U.S.C. §1343.

(52) The fraudulent concealment was facilitated by not providing a copy of  appraisal to Plaintiff for review  which would have revealed the false statements on the URAR. This concealment continued until it was finally provided months later.

25

(53) The Debtor has even used Attorney's to further its abuse of borrowers. Even before American Home Mortgage entered the protection of the bankruptcy court, they began abusing Movant, and it has continued throughout. The last message Movant and her attorney received from Nancy Hunt of Weiner Brodsky Sidman Kider PC just days before bankruptcy filing, was a request for Movant to voluntarily dismiss the suit under the disguise of good faith negotiations.

EXCERPT FROM EMAIL

" It will clearly take some time to try to work out the terms of any possible settlement and to determine whether you qualify for the loan. However, American Home's deadline for a responsive pleading is quickly approaching, and it seems unlikely that we will be able to get any further extensions from the Court. In that regard, **please advise whether you would be willing to dismiss the action against American Home, without prejudice to re-filing**, while we try to work out a settlement. Otherwise, we will have to go ahead and expend resources trying to get the case dismissed."

Nancy W. Hunt
Weiner Brodsky Sidman Kider PC
1300 19th Street, NW
Fifth Floor
Washington, DC 20036-1609
Tel 202-628-2000
hunt@wbsk.com

(54) On October 31, 2007, in this Court, Mr. Brady asserted and put witnesses on the stand for American Home to create an impression that TILA 1641(f)(2) was not a law American Home needed to comply with. Laura Beall received a letter from John Kalas, Docket # 3585 Exhibit C, dated March 11, 2008, confirming that compliance was required under TILA 1641(f)(2). Weiner Brodsky ( who claim to be TILA Experts), John Kalas (compliance attorney for AHM), and YCST all reviewed Movant's petitions, and fielded other communications regarding the same topic, charging the Bankruptcy estate fees, however no one seemed to come up with the right answer in reference to TILA 1641(f)(2) on Oct. 31, 2007 or answer Movant.

(55) Contrary to Movant's issues presented to American Home originally through American Home Mortgage Servicing which were ignored, the TILA loan rescission letter and remedy requested and justified, and the law suit which has been pending since April 3, 2007, and in spite of the continued refusal to comply with TILA 1641(f)(2),  American Home seeks only to foreclose and collect mortgage insurance and credit default swap money for a third party.

(56) Without any attempt at dialogue or negotiations, on May 28, 2008, Cohn Goldberg sent a letter to Movant advising that American Home has notified them to proceed with the foreclosure action again.  The Movants home is at risk of foreclosure making this an urgent matter for cause. **SEE** EXHIBIT "D"

(57)  Movant is also mystified by a bill submitted by Weiner Brodsky  which states that Movant's loan has something to do with litigation for New Jersey Affordable Homes. Movant's loan was originated after the assets were frozen in that case. A bill submitted by Weiner Brodsky, bankruptcy court Docket #1818 -Page 29 states a charge of $329.54 to Rush v. American Home regarding: research/draft opposition motion to trustee's motion re: selling property on which American Home has lien in NJAH mater. **SEE** EXHIBIT "S"

(58) Movant is mystified by the original trustee on her deed, Andrew Valentine, also known as John Andrew Valentine, on March 2003 surrendered his license to practice law. The United States of America filed charges against Andrew Valentine,  and Defendants were convicted under a three count indictment charging conspiracy. All of this stems from a case United States v. Norman Dansker, 537 F2d 40 (3rd Cir. 1976). Andrew Valentine has a claim pending in this case and it is suppressed. It seems as investigations continue, the picture becomes less clear all the time what American Home Mortgage actually did with the loans, and if anyone associated with AHM  plays by the rules and laws their victim borrowers are bound by. **SEE** EXHIBIT "T"

(59)  Unless and until it is abundantly clear who "owns"  Movant's loan, or who "owned" Movant's loan during all time periods of alleged violations in the complaint, all parties must be



enjoined in the complaint.  The only method to get the clear and concise answers is through the process of discovery is in the context of a lawsuit, making this an urgent matter for cause.

(60)   Movant is alleging  multiple incidences of obfuscating the issue of true owner the note, conflicting paper trail records, and an outright refusal of honesty and integrity, including misrepresenting compliance under TILA 1641(f)(2) to this Court on October 31, 2007.  Movant believes that the party in interest in her note is Goldman Sachs. In another case in Philadelphia, Countrywide actually asserted that the statute of limitations had run out to pursue the true owner of the note, Deutsche Bank, while at the same time they refused to give the borrower that information and attempted to mislead them. **SEE** EXHIBIT "H"

In re: James A. Meyer and Mary E. Meyer v. Countrywide Home Loans
The Honorable Stephen Raslavich stated,  "I mean, frankly, I found your client's conduct reprehensible. And I don't know what portion of it is assignable to your firm. I think that you—it was a concerted effort to lull them into inaction. All you had to do was tell them who owned it, and you obfuscated. Whether that was your decision or you client's decision, it was somebody's decision. It was a very misguided decision."

(61) Movant has spent several months of exhaustive efforts with no resolution.  Clearly, the holder in due course at this point could be a number of parties yet unknown, and short of discovery through a lawsuit can't be confirmed, however, Movant believes that her loan is in, a Goldman Sachs Trust GSR 2006 OA-1. However, American Home has been known to be subject to repurchase and other remedies from counterparties and it is imperative to learn if Movant's loan has been moved and/or confirm a complete chain of title.

(62)   Movant asked for loan rescission, which has never been addressed along with the issues raised for loan rescission. In fact, Attorney's for the Debtor, paid from Debtor estate funds, Weiner Brodsky, Sidman Kider, attempted to persuade Movant to dismiss her pending lawsuit just 10 days before the bankruptcy, under the false and misleading assertion that they needed

28

more time to negotiate a settlement. Under those circumstances, Movant would have been completely railroaded into foreclosure with no recourse. Movant could not have filed another lawsuit because of the stay, and Movant asserts this is unconscionable conduct, but it comes as no surprise as this Debtor seems to think they are above the law.

(63) "AHM" has committed fraud on the Court by presenting false information on TILA 1641(f)(2) to this Court to "win" against Movant, and AHM has failed to explain its actions or that of its attorney's. Sanctions should be awarded to Movant for this egregious conduct which forced Movant to spend enormous amounts of time to identify other parties to Movant's loan, when a question was asked that American Home is legally required to answer, and they obfuscated. Weiner, Brodsky, Sidman, Kider, and Young Conaway Stargatt and Taylor at the very least should disgorge their fees for reviewing Movant's petitions and doing this injustice to Movant. **SEE** EXHIBIT "S"

(64) Movant's relief is an urgent matter for cause, based on the alleged pattern of practice of American Home and American Home Mortgage Servicing to disregard and ignore the legal rights of the Movant, and other borrowers, time and time again, and use this Court to further their agenda while under its protection.

(65) Movant's irreparable harm that far outweighs any harm it may cause to the Debtor. To the Debtor, Movant's loan is just a piece of paper to buy, sell, trade and pledge, with no regard to the family who resides in it or their illegal conduct which caused Movant to refinance out of a good loan with a 5.25% interest rate into one of their misrepresented, highly predatory, Pay Option Arm "neutron bomb," loan which was presented as a 1% interest rate, using that exact term on all loan documents.

29

(66)    As this Court is well aware, Movant has exhausted every other avenue for resolution,  and it is abundantly clear, short of a lawsuit, complete with discovery, interrogatories, and subpoenas, Movant will never get any resolution, and due process Movant is entitled to. Denying relief from stay will significantly prejudice Movant. Debtor is a necessary and indispensable party to Movant's suit.

## THERE IS CAUSE FOR THE COURT TO GRANT RELIEF FROM THE STAY

(67)  Section 362(d)(1) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 3269(d). There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines), 152 B.R. 420, 424 (D.Del. 1993).

(68) Cause may be established by a single factor such as a desire to permit an action to proceed in another tribunal or the lack of any connection with or interference with the pending bankruptcy case. Izzarelli v. Rexene (In re Rexene), 141 B.R. 574, 576 (Bankr.D.Del.1992); American Airlines, Inc., 152 B.R. at 426, ("Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay.") (emphasis added)

(69)  In determining whether to grant relief from stay, courts generally consider three factors: (1) whether any great prejudice to either the bankrupt estate or the Debtor will result from continuation of the civil suit, (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the Debtor and (3) whether the creditor has a probability of prevailing on the merits. American Airlines, 152 B.R. at 424;    Izzarelli, 141 B.R. at 576; Save Power Ltd. v. Pursuit Athletic Footwear, Inc., (In re Pursuit Athletic Footwear), 193 B.R. 713, 718 (Bankr.D.Del 1996).

(70)  In the interest of justice and fairness, American Home Mortgage can't be protected from Fraud by the Bankruptcy court as stated clearly by the Supreme Court of the United States of America. Bankruptcy is for the honest but unfortunate Debtor. It would be inequitable to allow American Home to use this Court to protect itself and its CEO and other executives from allegations of fraud, misappropriation of assets, willful conversion, intentional infliction of emotional distress, punitive damages, and the equitable remedies of loan rescission.

The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of affording relief only to an "honest but unfortunate debtor."

Congress did not favor giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws.

It is not only the actual value of the "money, **property,** services, or . . . credit" the debtor obtained through alleged fraud that is **non-dischargeable** in bankruptcy, but also treble "punitive" damages and attorneys fees and costs related to the alleged fraud. This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in Cohen v. de la Cruz.

Debts which can't be discharged in bankruptcy....
(8) Debts incurred due to false statements made with the intent to deceive
 (9) Fraud committed in a fiduciary capacity, such as embezzlement or larceny
(10) Punitive damage claims for "willful and malicious" acts

In re Arm, 87 F.3d 1046 (9th Cir. 1996)
§ 523(a)(2) Indirect benefit from fraud in which debtor participates is sufficient to find debt is nondischargeable. "We make clear, what we have not held before, that the indirect benefit to the debtor from a fraud in which he participates is sufficient to prevent the debtor from receiving the

31

benefits that bankruptcy law accords the honest person. *See In re Ashley*, 903 F.2d 599, 604, n. 4
(9th Cir. 1990)."

In re Arm, 175 B.R. 349 (9th Cir. B.A.P. 1994), *aff'd*, 87 F.3d 1046 (9th Cir. 1996)
Benefit to debtor need not be direct.

In re Begun, 136 B.R. 490, 494 (Bankr. S.D. Ohio 1992)
"False Pretense" involves an implied misrepresentation or conduct intended to create or
foster a false impression . . . . A false pretense has been defined to include a "mute charade"
where the debtor's conduct is designed to convey an impression without oral representation. . . . .
A "false representation" on the other hand is an expressed misrepresentation.

In re Levy, 951 F.2d 196 (9th Cir. 1991), *cert. denied*, 504 U.S. 985 (1992)
Punitive damage award not excepted from discharge under § 523(a)(2).

In re Britton, 950 F.2d 602 (9th Cir. 1991)
Punitive damages not discharged under § 523(a)(6). Review of standard.

## LIFTING THE STAY WILL NOT PREJUDICE AMERICAN HOME
## OR THE BANKRUPT ESTATE

   (71)   American Home Mortgage Holdings, Inc., et. al., is a large corporation, which
prior to the bankruptcy was conducting business on a nation-wide scale. Because Movant's
Federal Court Action concerns Debtor's alleged tortuous and negligent conduct, the action is
presumably covered by Debtor's liability insurance. Each entity is required under pooling and
servicing agreements to carry fidelity bonds and liability insurance. Each officer is covered,
employees, the Trust and the Servicer. The Title Insurer and the Mortgage Isurer may also bear
some of the cost.   Surely Goldman Sachs is covered with insurance.

(72)    The title insurer, Chicago Title may have to defend the action due to an attack on the lender's title to the property, due to the alleged fraud in loan origination, and Chicago Title is a Defendant in the Federal Lawsuit pending due to intimate involvement as the settlement agent through their wholly owned subsidary, ServiceLink.

(73) Title insurance covers the lender for clouds on a title, losses due to a borrower's claim of fraud, undue influence or duress, adverse claims of equitable lien, against the lender for found violations and remedies due the borrower. There is also a conflict in that Movant's original Owners Policy was written by Chicago Title and is in force as long as a purchaser of this Owners Policy owns the home.

(74)  Wells Fargo, as the master servicer on Movant's loan, may be enjoined in the suit and may bear some of the affirmative relief cost if Movant is successful in her Federal suit. Wells Fargo in the role as master servicer did sanction the foreclosure and also participated in obfuscating the true owner of the note. Movant has sent letters to Chapman Cutler and they have asserted they do not agree with Debtors assertion that they do not wish Debtors to not comply, they refused to admit, or confirm that they in fact were the master servicer. So the finger pointing will be for Judge Nickerson to decide who in fact is responsible for all the conducts alleged in Movants action.

(75) Goldman Sachs and their Trust GSR 2006 OA-1, will share the burden of any recovery as the rescission remedy will affect their Trust and certificate holders in that trust. Movant has found her loan in this Trust prospectus, placed there in September of 2006. Considering Goldman Sachs was the next largest stock holder in American Home Mortgage second only to CEO Michael Strauss, Movant will argue the direct involvement is evident and that Goldman Sachs should be held just as accountable as American Home for any damages. Movant has contacted Goldman Sachs directly and received no reply to her assertions.

33

(76) Triad is the confirmed mortgage insurer, and Movant is cooperating in an investigation with Triad into the negligent conduct of American Home which may void the mortgage insurance policy on her loan. Triad is now aware of the fact that the attorney for Movant, John Pica attempting to negotiate a settlement with American Home early on, offered a minimal settlement of less than $30,000 and to redo the loan rate Movant to the one Movant was refinanced out of. This remedy would have cost all parties involved little. Instead American Home sought to mislead Movant into dismissing her lawsuit so they could foreclose and collect upwards of $100,000+ in mortgage insurance. It is urgent that these matter be resolved for many parties of interest, and therefore the liability may be shared by numerous parties of interest.

(77) Thus, in the event of a ruling in favor of Movant in the Federal Court Action, the insurers and other parties, and not the Debtor's estate, will potentially be saddled with the burden and cost of defending the suit and any subsequent recovery. In fact, this is as it should be, and Movant is mystified why the bankruptcy estate is saddled with and defending loans they do not own anymore.

See, Collier on Bankruptcy, 15th Ed. Revised, § 362.07[3][a][i]

("When the court is reasonably confident that the policy proceeds will be sufficient to satisfy all creditors with claims that may be paid under the policy, the court should grant relief from the stay to permit an action either against the Debtor, if necessary, or directly against the insurer. Because the policy proceeds will be available only to creditors with the type of claims covered by the policy, there is no depletion of assets...[m]oreover, the insurer will almost invariably be responsible for the cost of defense, so there should be no added expense for the estate.")

(78) To date, it has been Debtor estate funds defending against Movant's Federal Court action, however it may be discovered that Goldman Sachs as owner of the Trust, Wells Fargo as Master Servicer, and Deutsche Bank as Indenture Trustee, are primarily liable and responsible and should be the ones defending the action. Movant is aware these parties may assert a claim against the estate for these costs in the future, however Movant believes the Court should reject such claims on the grounds that Goldman Sachs had a substantial ownership interest in the Debtor.

34

## THE HARDSHIP TO PAULA RUSH

## OUTWEIGHS ANY HARDSHIP TO DEBTOR

(79) Movant will be severely prejudiced if relief from stay is not granted.  American Home
is a necessary and indispensable party in the Federal Court action, whose participation as a
defendant is critical to Movant's presentation of her case. The harm to the Movant maintaining the
stay considerably outweighs any prejudice to the Debtor or the estate.

(80)    Movant's complaint is currently pending and needs to be continued immediately without
delay as American Home Mortgage once again is using this Court to continue to pursue a
foreclosure while under its protection and ServiceLink is asserting American Home is an
indispensable party and attempting to get a dismissal based on the Stay imposed.   Movant can't
continue against other Defendants in her case without relief from the automatic stay and she can't
exercise her rights to due process to protect her property and seek the relief and remedies she is
entitled to.

## MOVANT  WILL PREVAIL ON THE MERITS

(81)    American Home Mortgage, ServiceLink and Trust Appraiser ALL filed Motions to
Dismiss. To date, not one of these parties has been granted a Motion to Dismiss. Judge Nickerson
allowed ServiceLink to bump the case out of Federal Court for jurisdictional  reasons once the
American Home Bankruptcy stayed the action, and now that complaint is back in front of that
Federal Court.  Judge Nickerson clearly stated at that time he had not dismissed the complaint
against American Home Mortgage. Trust Appraiser is still in State Court at this time. Trust
Appraiser is on a third Motion to Dismiss, and not one has been granted.  In short, all parties have

tried to dismiss, none have answered the complaint, or asserted any affirmative defenses.

(82)  Documents already on file prove *prima facie* evidence of all facts  and Movant has demonstrated a sufficiently strong possibility of prevailing on the merits to justify granting relief from the automatic stay. ( See, American Airlines, Inc., 152 B.R. at 426, ( "Even a slight probability of success on the merits may be sufficient to support lifting the automatic stay.")

## THERE IS CAUSE FOR THE COURT TO GRANT RELIEF FROM THE STAY

(83)   Section 362(d)(1) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 3269(d). There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines). 152 B.R. 420, 424 (D.Del. 1993) Cause may be established by a single factor such as a desire to permit an action to proceed in another tribunal or the lack of any connection with or interference with the pending bankruptcy case. Izzarelli v. Rexene ( In re Rexene), 141 B. R. 574, 576 ( Bankr. D. Del. 1992); American Airlines Inc., 152 B.R. at 426, ( "Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay.")( emphasis added)

(84)   In determining whether to grant relief from stay, court generally consider three factors:  (1) whether any great prejudice to either the bankrupt estate or the Debtor will result from continuation of the civil suit, (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the Debtor and (3) whether the creditor has a probability of prevailing on the merits. American Airlines, 152 B.R. at 424; Izzarelli, 141 B.R.  at

36

576; <u>Save Power Ltd. v. Pursuit Athletic Footwear, Inc., (In re Pursuit Athletic Footwear</u>), 193

B.R. 713, 718 ( Bankr. D. Del. 1996).   In re <u>Kemble,</u> 776 F.2d 802 (9th Cir. 1985)

Judicial economy alone justifies lifting stay to permit state ct lawsuit to proceed.

## CONCLUSION

(85)   Movant's right to petition for redress of her grievances would not be adequately

protected if the stay is to remain in full force and effect, in that Debtor will not be made to answer

for its tortuous and negligent acts. Movant's complaint involves complex issues and multiple

parties and Judge Nickerson is already familiar with the many pleadings which have already been

filed, and very familiar with the subject matter of the types of claims asserted.  Movant has already

spent an enormous amount of time going back and forth and in and out of different courts trying to

get the remedy which should have been given voluntarily and would be substantially harmed by

not being allowed to prosecute her claims in the Court which the suit is already pending. In fact

Judge Nickerson does not look kindly on just the kind of assertions Movant is claiming against

ServiceLink and American Home in the settlement of this loan. Allegations which entitle Movant

to full loan rescission and other remedies.

**Judge Nickerson**

"Title agents must be scrupulously honest and accurate in their preparation of settlement
statements, title commitments and other documentation relating to each transaction. All too often,
title agents disregard what may seem to be trivial details in an effort to expedite the closure of
transactions. To avoid liability in connection with illegal flips or other claims, title agents must
take care to disclose all elements of a transaction to the lender and other interested parties." **Cf.
First Guaranty Mortgage Corp. v. Procopio, Civil Action No. WMN-02-326 (D. Md. 2002)**
(refusing to dismiss claims against a title agent that "certified a settlement statement containing
several false statements about the transaction).

**WHEREFORE**, Movant prays:

(1) For an Order granting relief from the automatic stay provisions of section

362 of the Bankruptcy Code;

(2) For an Order permitting Movant to continue the Federal Court Action 07-854 (WMN) to

prosecute her cause of action against American Home Mortgage Corp., *et. al.*; and

3) For such other and further relief as is to the Court just and proper.

**Dated;  June 11, 2008**

_____

**Paula Rush pro se**
**2651 Peery Drive**
**Churchville Md. 21028**
**410-914-5315**
**paularush@comcast.net**

38

## EXHIBIT LIST – Relief From Stay Motion

A.
1. Notice of Filing of Removal ServiceLink
2. Defendant ServiceLink Opposition to Consolidate
3. Order to Dismiss Lack of subject Matter Jurisdiction
   Civil Case WMN-07-854

B.
4. Letter Cohn Goldberg Deutsch Foreclosure
5. Letter Nominee for "Holder of Note" American Home Mortgage Corp
6. Transcript docket #1656 "Third Party securitization Trust"

C.
7. Servicing Records BPO and Rec'd Rescission letter
8. Servicing Records Investor #330

D.
9. Letter Cohn Goldberg Deutsch Intent to Proceed with Foreclosure
10. Letter Contesting the Debt
11. Letters Requesting Rescission

E.
12. Docket #1489 Request TILA 1641(f)(2)
13. Docket #2816 Request TILA 1641(f)(2)

F.
14. Transcript Docket #1997 TILA 1641(f)(2)
15. Transcript Docket #2951 TILA 1641(f)(2)

G.
16. Letter Wells Fargo

H.
17. Opinion Meyer v. Countrywide TILA 1641(f)(2)
18. Opinion Meyer v. Countrywide TILA 1641(f)(2)
19. Transcript Meyer v. Countrywide TILA 1641(f)(2)

I.
20. GSR 2006-OA1 TRUST - INV # 330
21. Bank Accts INV #330
22. Goldman Sachs 5% Shareholder
23. Fidelity Bonds

J.
24. Assignment of Loan Interest to "ABC"

K.
25. FTC v. 30 Minute Mortgage
26. FTC v. Chase Financial Funding

L.

    27. Underwriting Appraiser/Homegate Settlement Services

    28. Homegate  Third Party provider/ We will require GFE 3/13/06

    29. Appraisal Date 2/22/06

    30. Wholly owed subsidiary Homegate

M.

    31. Power Arm Selling Skills Training To Brokers

    32. Rate Sheets to Brokers

    33. Broker Partner/Agency Relationship

    34. YSP Paid from Wire not POC

    35. YSP Paid for 3.375 over Par

N.

    36. Title Lenders Policy Invoice Fees 3/10/06 GFE 3/13/06

    37. Non disclosure of Affiliations

    38. Maryland Title Rate Calculator

O.

    39. OCC APR calculator Violation

    40.  Actual Cost over 2 years with increasing balances & interest rate

P.

    41. Loan Application 1%  No Neg Am Disclosure

    42. GFE 2/17/06  1% No Neg Am Disclosure 649,000 Loan

    43. GFE 2/17/06 1% No Neg Am Disclosure 586,500 Loan

    44. GFE 3/13/06 1% No Neg Am Disclosure 649,000 Loan

    45. TILDS 2/17/06 Payments based on 1%  No Neg Am info/May Prepayent Penalty/ Loan Amount 649,000

    46. TILDS 2/17/06 Payments based on 1% No Neg Am info/ Loan 586,500

    47. TILDS 3/13/06 Payments based on 1% No Neg Am info/No Prepayment penalty

    48. HUD-1 No Loan Type Info

    49. HUD -1 Overcharges

    50. Payment Coupons No mention of Neg Am/ asks for payment based on 1%

Q.

    51. Deed of Trust recordation fees stamped  $175.30 Total

    52. Deed of Trust Recorded not one Movant signed/recordation $ added

    53. Signed by Movant/ blank recordation info

    54. Instructions to add information/required in Maryland

    55. Check returned 4/18/06 Movant found overcharge $966

    56. Hidden stolen fees not copy presented for siging TILDS

    57. Final TILDS signed No filing fee info/ No neg Am info/ 1% Payments

    58. 2005 OCC, OTS, HUD Chicago Title Action

    59. Other pending litigation on overcharges of recordation Tax

R.

    60. Consent to be named a Class Representative

S.

    61. WBSK  Bills NJAH/RUSH invoice

    62. WBSK Review petitions including TILA 1641(f)(2)

T.

    63. Andrew Valentine Original Trustee on Movant's Deed/Dansker Case

    64. John Andrew Valentine resignation to practice law Supreme Court NJ.

U.

    65. Opinion Chevy Chase  Pay Option Arm Case