# EXHIBIT A

## IN THE CIRCUIT COURT FOR HARFORD COUNTY

PAULA RUSH,                          )
                                     )
      **Plaintiff,**              )
                                     )    Case No. 12-C-07-003516
      **v.**                     )
                                     )
SERVICELINK,                         )
                                     )
      **Defendant.**             )
_____)

### NOTICE OF FILING NOTICE OF REMOVAL
### AND RULE 1-313 CERTIFICATE

PLEASE TAKE NOTICE THAT on March 6, 2008, Defendant ServiceLink caused this action to be removed to the United States District Court for the District of Maryland. A copy of the Notice of Removal is attached hereto.

The undersigned counsel hereby certifies that she is duly admitted to practice law in the State of Maryland.

March 6, 2008

                                        Respectfully Submitted,

                                        SERVICELINK
                                        By Counsel

*Ellen Connelly*

Ellen Connelly Cohen
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street NW
Washington, DC  20037
Telephone: 202-663-8000
Facsimile:  202-663-8007

*Counsel for Defendant ServiceLink*



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

|  |  |  |
|---|---|---|
| PAULA RUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:08-cv-604 (WMN) |
| | ) | |
| SERVICELINK, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT SERVICELINK'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CONSOLIDATE

Defendant ServiceLink, LP ("ServiceLink"), through counsel, respectfully submits this Memorandum in Opposition to Plaintiff Paula Rush's ("Ms. Rush's") Motion to Consolidate Litigation Against ServiceLink and American Home Mortgage. The Court should deny Ms. Rush's Motion because it will not serve the interests of judicial economy to consolidate this case with another case that is subject to an automatic stay and is administratively closed. In addition, Ms. Rush's request for the Court to extend the limitations period in order to rescue her otherwise time-barred claims should also be denied.

## I.    BACKGROUND

The factual and procedural history of this case have been thoroughly set forth in recent filings, so ServiceLink will provide only a brief description here. This case arises from Ms. Rush's dissatisfaction with various aspects of a home loan she entered into with American Home Mortgage, Inc. ("AHM") on April 3, 2006. On April 3, 2007, Ms. Rush filed a complaint in this Court (Case No. 07-cv-854 (WMN)) against AHM, American Home Mortgage Servicing, Inc., American Brokers Conduit (collectively, the "American Home Defendants"), Trust Appraisers,

A 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAULA RUSH                          :
                                    :
v.                                  :    Civil No. WMN-07-854
                                    :
AMERICAN HOME MORTGAGE, INC,        :
et al.                              :

## ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 25th day of October 2007, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That the Plaintiff's Motion for Leave to Amend, Paper No. 13, is DENIED;

2. That Defendant Servicelink's Motion to Dismiss, Paper No. 30, is GRANTED and that Plaintiff's claims are hereby dismissed without prejudice against both Servicelink and TA for lack of subject matter jurisdiction;

3. That Defendant Trust Appraisers' Motion to Dismiss, Paper No. 12, is hereby DENIED as moot;

4. That this action is ADMINISTRATIVELY CLOSED; and

5. That the Clerk of the Court shall mail or transmit copies of the accompanying Memorandum and this Order to Plaintiff and all counsel of record.

_____/s/_____
William M. Nickerson
Senior United States District Judge

jurisdiction over related state law claims that are "part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).   Despite Defendant Servicelink's contention to the contrary, the state law claims clearly fall within the scope of this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) in that all of Plaintiff's allegations arise out of the same home equity loan transaction. See White v. County of Newberry, 985 F. 2d 168, 172 (4th Cir. 1993) (noting that "claims need only revolve around a central fact pattern" to support the exercise of supplemental jurisdiction).

Servicelink argues, however, that this Court should decline to exercise supplemental jurisdiction under the circumstances where all of the federal claims have been stayed due to the pending bankruptcy petition filed by the American Home Defendants.   As discussed above, this Court may decline to exercise supplemental jurisdiction where it has original jurisdiction over related claims if one of the four factors identified in 28 U.S.C. § 1367(c) exists.   In the instant case, the first three factors are inapplicable in that Plaintiff's claims do not "raise[] a novel or complex issue of State law," Plaintiff's state law claims do not "substantially predominate[] over the claims over which the district court has original jurisdiction," and the Court has not "dismissed all claims over which it has original jurisdiction."   See 28 U.S.C. § 1367(c).

Accordingly, the Court turns to the fourth factor, which

A3

provides that the Court may decline supplemental jurisdiction under "exceptional circumstances" where "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). Given that all claims over which this Court has original jurisdiction are indefinitely stayed by the pending bankruptcy proceedings, it is quite possible that only the state law claims would be tried were the Court to exercise supplemental jurisdiction. In that sense, it is analogous to a case where the federal claims have been dismissed. See Carnegie-Mellon Univ. V. Cohill, 484 U.S 343, 350 n.7 (1988) (noting that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims"). Exercise of supplemental jurisdiction under these circumstances would not further the goals of comity and judicial economy. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (discussing the doctrine of pendant jurisdiction later codified in 28 U.S.C. § 1367 and noting that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties"); See also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (discussing factors to be considered in exercising discretion to decline supplemental jurisdiction).

The Court thus concludes that "exceptional circumstances" exist to decline to exercise supplemental jurisdiction over the



# EXHIBIT B

# COHN, GOLDBERG & DEUTSCH, LLC

ATTORNEYS AT LAW
600 BALTIMORE AVENUE
SUITE 208
TOWSON, MARYLAND 21204

EDWARD S. COHN *
STEPHEN N. GOLDBERG *
RONALD S. DEUTSCH *
RICHARD E. SOLOMON *
‒‒‒‒‒‒‒‒‒
RICHARD J. ROGERS *
‒‒‒‒‒‒‒‒‒
*ALSO ADMITTED IN D.C.

JEROME F. COHN
(1935 – 1982)
‒‒‒‒‒‒‒‒‒
TEL: 410-296-2550
FAX: 410-296-2558

April 26, 2007

Paula Lynn Rush
2651 Peery Drive
Churchville, MD  21028

RE:   2651 Peery Drive
Churchville, MD  21028
Loan #1001222336
Our File #414505

Dear Paula Lynn Rush:

On April 3, 2006 you executed a Deed of Trust and Note secured by the above referenced property, and borrowed money in connection with a loan made by American Brokers Conduit.  The current holder of the Note is Mortgage Electronic Registration Systems, Inc., as Nominee for American Home Mortgage Corporation.  The loan has been referred to this office for legal action based upon a default under the terms of the loan agreement.

The amount owed pursuant to the terms of the Deed of Trust and Note through the date of this letter is $636,714.95.  Be advised, however, that interest continues to accrue on the principal balance of the loan at a rate of $129.72 per day.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day paid may be greater than the above-referenced "amount owed."  Hence, if the above "amount owed," is paid, an adjustment may be necessary after we receive the funds, in which event we will inform the person making payment before depositing the check for collection.

If within thirty (30) days from receipt of this letter you fail to dispute all or part of the debt, the amount recited herein will be assumed as valid.  If you notify this office in writing within the thirty (30) day period that the debt or any portion thereof is disputed, this office will obtain verification of the debt and a copy of such verification will be mailed to you.  Upon your written request within the thirty (30) day period, this office will provide the name and address of the original creditor if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose.  However, if you have obtained an order of discharge from the United States Bankruptcy Court, which includes this debt, and have not reaffirmed your liability for the debt, or if you have not signed a Note in connection with this loan, this firm is not attempting to obtain a judgment against you, nor are we alleging that you have any personal liability for this debt.  We may, however, take action against the property pledged as collateral for the debt, which may include repossession and/or foreclosure of the property.

For further information, write or call Darlene Buzzard of this office.

Very truly yours,

Cohn, Goldberg & Deutsch, LLC

Via Regular Mail

Edward S. Cohn

*Letter*
*12/1/06*

*B4*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

IN RE:

Paula Lynn Rush

DEBTOR(S)

Case No.: 07-10250-RAG
Chapter 13

Mortgage Electronic Registration Systems,
Inc., as Nominee for American Home
Mortgage Corporation
MOVANT
vs.
Paula Lynn Rush
RESPONDENT(S)

## MOTION SEEKING RELIEF FROM AUTOMATIC STAY

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
FOR AMERICAN HOME MORTGAGE CORPORATION (hereinafter MOVANT), by its
undersigned counsel, files this MOTION SEEKING RELIEF FROM AUTOMATIC STAY,
pursuant to 11 U.S.C. SECS. 362 which is a core proceeding pursuant to 28 U.S.C. SEC. 157,
and for reasons states as follows:

### ONE

That the above-named Paula Lynn Rush (hereinafter "RESPONDENT(S)") initiated
proceedings in this Court seeking relief under Chapter 13 of 11 U.S.C.

### TWO

That MOVANT is the holder of a Note secured by a Deed of Trust, which encumbers
the real property of the RESPONDENT(S), known as 2651 Peery Drive, Churchville, MD
21028 (the "property") (see attached Exhibit "A"), presently owned by the RESPONDENT(S),
in the approximate principal amount of $593,316.96, plus interest, late charges and other
costs.  Said Instrument is recorded among the Land Records of Harford County, Maryland.

### THREE

That the RESPONDENT(S) is/are in default in payment of the Deed of Trust Note to
MOVANT; said default involving non-payment of THREE (3) post-petition payment(s) for the
period of February, 2007, through April, 2007, in the amount of $6,581.34, plus late charges,
plus any additional payments and late charges thereon that may fall due after the filing of this
motion, plus attorney's fees and costs.

### FOUR

That MOVANT believes and avers that its security interest concerning the property is
not adequately protected.

COHN, GOLDBERG &
DEUTSCH, LLC

ATTORNEYS AT LAW
600 BALTIMORE AVENUE
SUITE 208
TOWSON, MD 21204

?-296-2550

: #: 414505

B5



*Docket # 1656*

*Consumer Privacy Ombudsman Pursuant to U.S.C. § 332 and Trustee or Examiner Pursuant to U.S.C. § 1104* [Docket No. 1489] (the "<u>Motion</u>") filed by Paula Rush (the "<u>Movant</u>"), *pro se*. In support of such Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Simply stated, the Movant is in default of her mortgage and is seeking to use the judicial system as a means of escape from her financial obligations. The Debtors do not own the Movant's loan, as her loan is owned by a third party securitization trust. The Debtors, however, continue to service the loan with high quality through their fully staffed servicing business. The Movant commenced an action (the "<u>Lawsuit</u>") against the Debtors on April 3, 2007 in the United States District Court for the District of Maryland (the "<u>Maryland District Court</u>"), and then filed the Motion on October 4, 2007 in this Court. Although not without sympathy for the Movant's situation, the Debtors submit that the relief sought by the Movant should be denied because it is either moot, or wholly unsupported by the facts set forth in the Motion.

2.      Because of the litany of information and allegations found throughout the forty-two (42) page Motion, the relief the Movant seeks is not entirely clear. It appears, however, that the Movant is requesting that this Court order:  (i) an examination of, and production of documents by, the Debtors pursuant to Bankruptcy Rule 2004 (the "<u>Rule 2004 Request</u>"); (ii) the appointment of a trustee or examiner pursuant to section 1104 of the Bankruptcy Code; (iii) the appointment of a consumer privacy ombudsman pursuant to section 363 of the Bankruptcy Code; and (iv) certain injunctive relief. The Debtors respectfully submit that all relief requested in the Motion should be denied.

DB02:6315987.5                                                    066585.1001

*B6*

# EXHIBIT D

COHN, GOLDBERG & DEUTSCH, LLC

ATTORNEYS AT LAW

600 BALTIMORE AVENUE

SUITE 208

TOWSON, MARYLAND 21204

TEL: 410-296-2550
FAX: 410-296-2558
www.cgd-law.com

EDWARD S. COHN*
STEPHEN N. GOLDBERG*
RONALD S. DEUTSCH*
RICHARD E. SOLOMON*
RICHARD J. ROGERS*

*ALSO ADMITTED IN D.C.

JEROME F. COHN
(1935-1982)

SILVER SPRING OFFICE
8630 FENTON ST., STE. 320
SILVER SPRING, MD 20910
TEL: 301-585-9555
FAX: 301-585-6292

PLEASE REPLY TO:
TOWSON OFFICE

May 28, 2008

Paula Rush
2651 Peery Drive
Churchville, MD 21028

RE:    Our File #414505
       Loan #1001222336

Dear Ms. Rush:

This office is in receipt of your letters dated December 29, 2007 [sic] and April 1, 2007 in reference to the above matter. Please be advised that we have verified the debt as claimed. The issues referenced in your letters have been addressed in your suit against American Home Mortgage, Inc., et al., Case No. WMN-07-854 in the United States District Court for the District of Maryland, which case has now been administratively closed by order of that court dated October 25, 2007. Further, your bankruptcy case, No. 07-10250 has been terminated as of June 22, 2007.

Accordingly, this office intends to proceed with its foreclosure action in connection with the above.

Very truly yours,

Richard E. Solomon

RES/db

*"This letter is an attempt to collect a debt. Any information obtained will be used for that purpose."*

December 29, 2007

Cohn, Goldberg & Deutsch
Attention; Foreclosure Department
File # 414505
Loan # 1001222336

Mr. Edward Cohn,

On December 12, I received a letter from your office stating if I had any dispute I was to notify you in writing within 30 days. I have enclosed a Good Faith estimate I received from your client, which was willfully changed at loan closing. In addition, the terms/and provisions under the loan that I entered into were never fully explained to me. A notary came to my house and put papers in front of me with no explanation of said papers. This loan was not closed at a reputable title company. An appraisal, which I paid for, was never provided to me.  Because of this I have been saddled with an unbelievable debt. Under my Good Faith estimate I was to receive cash out of  $56,207. In addition, there was to be no prepayment penalty and now there is a 2% prepayment penalty. The loan was not explained to me as when I made the minimum payment a negative amortization would take place. The interest rate at which this negative amortization is figured was also not explained.

When I took this loan I owed $567,000 on my home. Now according to you, I owe a whopping $614,000 just nine months later. An unbelievable $47,000 more then what I owed then plus the payments I've made. I was only given $10,000 cash out at closing. That's still $37,000 more then what I owed. Even if you factor in that and legal fees, it's still an astronomical number. This is loan sharking. Not legitimate lending.

I suggest that your client reevaluate this situation and negotiate a different solution to this issue. I will be filing for bankruptcy to protect my house. I will also be filing a damages suit against your client for misrepresentation of this loan from the beginning. It was their failure to give me the original loan promised and unbelievable additional funds owed which have put me in this situation.  I will be pursuing all legal remedies available to me.

Paula Rush
2651 Peery Drive
Churchville, Md. 21028
443-676-3509

No Answer From
= = CGD until 5/28/2008

D 10

American Home Mortgage Servicing
4600 Regent Drive, Suite 200
Irving Texas 75063

American Home Mortgage
520 Broadhollow Rd
Melville NY 11747 Atten: Mail Stop 800

Cohn, Goldberg & Deutsch

March 30, 2007
Atten: Legal Counsel

As of this date, I'm notifying you of my intention to enter into a lawsuit either by virtue of a class action or an individual suit requesting recission of loan, and all other remedies available to me, before April 3, 2007, which represents the latest filing date for 1 year affirmative action statute of limitations. I'm giving you this last opportunity to address my issues directly with me. If you fail to do so, I will proceed swiftly to protect all my rights and remedies. On this day I'm sending you this certified letter and information about my claims. Seperately I'm sending you my official notice of loan recission as required by law. I do not have time to play games so consider this request seriously.

**My complaint includes:**
TILA Violations
RESPA Violations
YSP
Choice of title company services
Common Law Fraud
Fradulently inflated appraisal
DBPA Allegations – Fraud and deception
ECOA Allegations – Targeting, Steering
Prepayment penalties are illegal in MD

**My relief sought includes:**
Loan Recission
Statutory Damages
Actual Damages
Punitive Damages
Equitable Relief

I know all my rights and remedies under the law. I will give you until April 2, 2007 to address my concerns directly. If you decide not to address my complaints I will exercise all of the options available to me, of which there are many. I can be reached at 443-676-3509.

Paula Rush 2651 Peery Drive
Churchville, MD. 21028   443-676-3509



**Paula Rush**
**2651 Peery Drive   Churchville, Md 21028**

American Home Mortgage
520 Broadhollow Road
Melville NY 11747 Attn: Mail Stop 800

American Home Mortgage Servicing
4600 Regent Drive Suite 200
Irving Texas 75063

Cohn, Goldberg & Deutsch, LLC
Attorneys at Law
600 Baltimore Ave. Ste. 208
Towson Md. 21204

April 1, 2007
Loan # 0001222336  Dated April 3, 2006
Ref: Demand of Loan RECESSION as of April 3, 2007

I'm sending you my notice of right of extended recession covered under TILA and RESPA.  Upon
giving of this notice, the security interest in 2651 Peery Drive Churchville Md. 21028 giving rise to the
right of recession becomes void and the I shall not be liable for any amount, including any finance
charge. CFR226.23(d)(1)

The "tender" amount due upon recession, if any, will be determined in court arising out of litigation
pending which you will receive notice of shortly after this letter.

I assert my right to rescind under federal laws, state laws, and civil laws, designed to protect
consumers in mortgage refinance transactions. I also assert my affirmative claims against American
Home Mortgage in relation to these claims.

TILA "The Seventh Circuit, like most courts interpreting TILA, maintains that disclosures made pursuant to the
statute should be viewed from the <u>vantage point of an ordinary consumer as opposed to that of a skilled or
informed business person.</u> TILA is aimed at deceptive practices by lenders, not the subjective beliefs or actions
of borrowers. Moreover, a plaintiff need not show actual harm to recover from a technical violations of TILA.,
as they are strict liability offenses. Adams v Nationscredit Financial Services Corp. 351 F. Supp. 2d 829 (N.D.
Ill. 2004).
  ➢ Statute 1 year for affirmative claims 15 USC 1640  3 Years for Recission   Unlimited as a defense to
    foreclosure in the nature or a recoupment or set off. 735 ILC 5/13-207 Bank of New York c Heath, 2001
    WL 1771825, at *1 ( Ill. Cir. Oct. 26, 2001)
  ➢ Prohibition under RESPA against kickbacks and referral fees:  RESPA prohibits the giving or receiving of
    any fee, kickback, or other thing of value for the referral of a "settlement service." 12 USC  2602(3) and 24
    CFR 3500.2
  ➢ Md. Code Ann., Comm. Law §§ 13-101, *et seq.* Naming a wide variety of deceptive trade practices
    in many type of consumer transactions, the CPA expressly prohibits "[d]eception, fraud, false
    pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of
    any material fact with the intent that a consumer rely on the same in connection with ... [t]he
    promotion or sale of ... consumer realty." *Id.* § 13-301(9).

**Paula Rush**
2651 Peery Drive
Churchville Md 21028

# EXHIBIT E



# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                          :        **Chapter 11**
                                :
**American Home Mortgage**      :        **Jointly Administered**
**Holdings, Inc. et al.,**      :        **Under Case No. 07-11047 (CSS)**
                                :
                                :
**Debtors**                     :
                                :

### MOTION FOR DISCLOSURE UNDER U.S.C. § 363, § 1106,
### AND BANKRUPTCY RULE 2004, DIRECTING EXAMINATION OF,
### AND PRODUCTION OF DOCUMENTS BY DEBTORS
### AND
### LIMITED OBJECTION TO ASSET PURCHASE AGREEMENT
### COMPLAINT FOR INJUNCTION AGAINST SALE OF MORTGAGE NOTES
### FREE AND CLEAR OF LIENS OR LIABILITIES
### AND
### REQUEST FOR APPOINTMENT OF
### CONSUMER PRIVACY OMBUDSMAN PURSUANT TO U.S.C. § 332
### AND TRUSTEE OR EXAMINER PURSUANT TO U.S.C. § 1104

Paula Rush, pro se, moves this Court for entry of an order pursuant to U.S.C.

§323, and U.S.C. §1106 of title 11 of the United States Code, 11 U.S.C. § § 101, et seq. (the

"Bankruptcy Code") and rule 2004 ("Rule 2004") of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), directing the examination of, an production of documents by,

---

1.    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Investment"), a Maryland corporation (1979);  American Home Mortgage Servicing, Inc.( "AHM Servicing"), aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558); American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

E12

1



TRUTH IN LENDING ACT (TILA) 15 USC 1601-1667f
Sec. 1607 - Administrative enforcement
Sec. 1640. - Civil liability
Sec. 1641. - Liability of assignees;
Sec. 1635. - Right of rescission.
Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

**(d) Rights upon assignment of certain mortgages**

 1641 f 2

(f) Treatment of servicer
(2) Servicer not treated as owner on basis of assignment for administrative convenience A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. **Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation. ( emphasis added)**
(3) "Servicer" defined
For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of title 12.

73.    When asked, American Home Mortgage refuses to provide and such information as to the true owners of mortgage notes, and in some cases claims to own the notes. They refuse to provide any agreements they may have with lenders whom loans they service. Ms. Rush demands to know the entire chain of title to her property and the true owner of her note.

## **THIRD PARTY LIABILITY**

74.    When American Home Mortgage sells a loan to an investor, they are required to make representations and warranties regarding the loan, the borrower and the property. These representations are made based in part on our due diligence and related information provided to us by the borrower and others. If any of these representations or warranties is later determined not to be true, American Home Mortgage may be required to repurchase the loan, including

E12

## DEMAND FOR TRUE OWNER OF THE NOTES

29.  On behalf of all borrowers we request American Home as servicer immediately and

without  malice or negligence provide any borrower who request the information the true owner

of the note as required by law.   2605(i)(2) of title 12.

(f) Treatment of servicer
(2) Servicer not treated as owner on basis of assignment for administrative convenience A
servicer of a consumer obligation arising from a consumer credit transaction shall not be treated
as the owner of the obligation for purposes of this section on the basis of an assignment of the
obligation from the creditor or another assignee to the servicer solely for the administrative
convenience of the servicer in servicing the obligation. **Upon written request by the obligor,
the servicer shall provide the obligor, to the best knowledge of the servicer, with the name,
address, and telephone number of the owner of the obligation or the master servicer of the
obligation.**
(3) "Servicer" defined
For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2)
of title 12.

1641 f2

Affiant further sayeth naught.

*"Under penalties of perjury, I declare that I have personally prepared and read the forgoing
document and that the facts stated in it are true."*


_____ Date:_____
Affiant Paula L. Rush

E12

12

and traded in various derivative transactions like bubblegum baseball cards and their transfers, sales, pledges etc., are not publicly recorded. As such, only possession of the actual original note can prove the actual owner and holder in due course of the note and whom Ms. Rush can discuss the very serious issues of mortgage fraud and loss mitigation and pending litigation.

All borrowers have the right to know the rightful owner of the note and the rightful owner of the note has the right to direct communication with the borrower to address this very serious loss exposure of over $600,000. If the note has been pledged and encumbered, then that party must be made aware of the potential losses associated with these issues, and Ms. Rush has the right to secure release of the note, before further damage is done to all parties of interest. Those parties, if the court upholds the continued control of loans through American Home Mortgage Servicing may be left unaware of pending litigation in which they will be held ultimately responsible for defending therefore making transfer of documents an urgent matter.

71. Ms. Rush's Note may be in the Servicing Purchase Asset Purchase deal, the Broadhollow LLC, Melville LLC, or a wide variety of other LLC's or loan pools. It is imperative and legally required that this court reveal the true owner of the note as Ms. Rush and other borrowers have no recourse without court intervention, to obtain this information through American Home Mortgage Servicing or MERS.

72. Borrowers need to be assured that all rights and remedies under TILA and RESPA and personal information as required is protected and preserved in the American Home bankrutpcy proceedings. Any assignee or purchaser of loan notes and Deeds of Trust and loan servicing rights must be informed of any potential liability which attaches with the transfer of those notes. All borrower rights need to be protected under:

Docket 2816

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

FILED
2008 JAN 29 PM 2:51
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              :       **Chapter 11**
                                    :
  **American Home Mortgage**        :       **Jointly Administered**
  **Holdings, Inc. et al.,**        :       **Under Case No. 07-11047 (CSS)**
                                    :
                                    :       **RE: DOCKET # 2754**
  **Debtors**                       :

## OBJECTION TO SALE OF LOANS
## FREE AND CLEAR OF LIENS OR LIABILITIES

Paula Rush, pro se, hereby renews the request for demand to know the true

owner or master servicer of her loan pursuant to TILA 1641(f)(2). Since the hearing date of Oct.

31, this issue has not been resolved. The assertion of non-compliance remains the same. Once

again the Debtor's are proceeding to attempt to sell loans under a description that could fit my

loan description, and therefore I renew my request for disclosure.

Plaintiff respectfully request the Court consider the Debtor's continued attempts to sell

off loan assets free and clear of liens and liabilities and neglecting to add the protection under

363(o) as provided for under the 2005 Bankruptcy Abuse and Consumer Protection Act. The

Debtor's attorney's stated, they usually beat everyone to the punch and put it in, it never quite

seems to make it in their filings.

---

The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number
are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment
Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Investment"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ( "AHM Servicing"),
aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558);
American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

E13

Docket 2816

*Subsection (m) [enacted as (n)] is <u>directed at collusive bidding on property</u> sold under this section. <u>It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders.</u> The trustees may also recover the excess of the value of the property over the purchase price, and may recover any costs, attorney's fees, or expenses incurred in voiding the sale or recovering the difference. In addition, the court is authorized to grant judgment in favor of the estate and against the collusive bidder if the agreement controlling the sale price was entered into in willful disregard of this subsection. The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances.

17. I hereby give notice that Paula Rush asserts her objection to this sale or any other sale which might include the security interest held on property 2651 Peery Drive Churchville Md. 21028, loan number #1001222336. On April 3, 2007 Ms. Rush sent a RESPA qualified written request (or notification of issues) and a TILA loan rescission letter which was not answered as required under federal law (RESPA) and to date has never been answered by American Home Mortgage.

18. Objector would also like to bring to this Court's attention numerous instances of inaccurate information which has been presented to this Court.

19. 363 (o)

Debtor's attorney asserts they usually beat the Trustee to the punch and include it in loan sale petitions. They did not include it in the Broadhollow & Melville loan sales, nor have they included it in the current petition. They only included it in the Loan Servicing APA after it was petitioned for by the Trustee, Docket #1060, and after Plaintiff requested it.

20. TILA 1641(f)(2)

Debtor's attorney, Mr. Brady, asserted in Court that this is not a statute that American Home is under any obligation to comply with. The petition was reviewed by Weiner, Brodsky, Sidman, Kider and Young, Conaway, Stargatt & Taylor, and was discussed with Mr. John Kalas, according to bankruptcy records for fee application of Weiner, Brodsky, Sidman, Kider and



# 2816

servicing rights must be informed of any potential liability which attaches with the transfer of

those notes.  All borrower rights need to be protected.

### TRUTH IN LENDING ACT (TILA) 15 USC 1601-1667f

Sec. 1635. - Right of rescission.

Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

Sec. 1641. - Liability of assignees;

**(f) Treatment of servicer**

(2) Servicer not treated as owner on basis of assignment for administrative convenience A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. **Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation. ( emphasis added)**

(3) "Servicer" defined

For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of title 12.

    68. Borrowers have the right to disclosure of any known and unknown parties of

interest in their notes, including but not limited to any and all loan financing partners, credit

default swap partners, guarantors, master loan servicer, credit insurers, credit enhancement

providers, whether that party insures an individual loan or an entire loan pool, including  any

party who as defined under 741 (7) (A)(i) which owns a security interests or provides insurance

associated with a particular loan or  loan pool that carries any credit enhancements, or any

guarantee as defined under 741 (A)(ix).

    69.  Judges are now digging deeper and it is becoming increasingly difficult for the

Lenders to hide the in the complex web displayed in this case of refusing to provide the

information of who actually owns the interest in these mortgages. Whether it is for protection of

the upper level party investors, or a sick game of borrower torture tactics, it is illegal under

Federal Law TILA 1641(f)(2) not to disclose that information.



E13

22

# EXHIBIT F

1    float.  Each one of these owners of these notes have their

2    own policies going right now.  There's no across-the-board

3    policy on, you know, how they want things to be handled when

4    it comes to managing their loans, whether that's litigation,

5    foreclosure, loan rescission, written request, any kind of

6    issue that a borrower might have.  American Home Mortgage

7    refuses to provide that information.

8          THE COURT: Which information?

9          MS. RUSH: Who owns the note, the owners of the

10   note.

11         THE COURT: Are you entitled to that?

12         MS. RUSH: Well, the law is that if a borrower

13   requests it in writing, they're required to give either the

14   owner of the note or the master servicer.  I'm assuming they,

15   you know, they do refuse that information entirely, but I'm

16   assuming that once they reveal the master servicer then you

17   have to go to them and try to find out more detail of the

18   structure of where your note is.  The information for a

19   borrower is critical, and it's also critical, I feel, for the

20   debtors' estate.  Obviously, if a property is held in a non-

21   debtor entity -

22         THE COURT: Let me ask you a question.  I'm sorry to

23   interrupt, but - They've told you that your loan has been

24   sold to a securitization trust.  Did they identify the

25   securitization trust for you?

F14

1    that right to the servicer?  I obviously have asserted issues

2    of negligent handling of my litigation from the very

3    beginning from the time that I tried to contact the servicing

4    unit to alert them with issues that I had to the point where

5    it escalated to litigation, to the point where I have an

6    attorney who is actually negotiating for me trying to do a

7    settlement right before the bankruptcy which they ignored,

8    delayed, and then went into bankruptcy.  You know, that owner

9    of that note, the true owner of the note, that owner of the

10   trust, whoever those parties are, you know, are they aware?

11   Is this how they want this to be handled?  Again, this wedge

12   between the borrower and the owner of the note makes it

13   impossible not only for the borrower to figure out what

14   they're doing, but also makes it impossible to me, for the

15   debtors' estate to figure out where the litigation should

16   even fall.  And there's ongoing issues that go beyond just

17   the origination issues, everything that happened in the

18   servicing unit and then also who is the owner of the note?

19   Who got the fruits of the fraud?  And unless the debtor is

20   going to voluntarily give up that information, the debtors'

21   estate is basically protecting a third party.

22           THE COURT: Okay.  All right.  Anything else?  Mr.

23   Brady.  In your response in a few places, you say that the

24   debtors took all reasonable steps to provide Ms. Rush with

25   all information in your custody or control.  Can you maybe

1    the mortgagee?

2         MR. BRADY: Your Honor, I actually have a witness

3    today that touches on several of the issues raised in the

4    papers.  I can put him on, happy to do so, in fact, I prefer

5    to do so, so Your Honor gets a view of how the company deals

6    with RESPA requests and other handlings of past-due

7    customers.  But in particular, what the witness will say, and

8    we can put him on to say it, is AHM Servicing gets paid to

9    service.  The owners of these loan rely on AHM Servicing to

10   do its job, to deal with the customers and issues that arise.

11   If every time a borrower called and said I want to talk to

12   the owner of my loan, and we simply passed them along, I

13   doubt very much they'd be interested in paying AHM Servicing

14   very much because that's what the company's supposed to do.

15   The company is supposed to be the party that collects the

16   data, provides borrowers with information, and ultimately if,

17   for instance, a loan modification is requested, collects all

18   the data necessary so that the owner of the loan or in a

19   securitization the master servicer can make the decision of

20   whether a loan modification is appropriate or whether simply

21   steps to collect on the loan in other means is the right way

22   to go.  So, if I may, it may make sense to put on Mr. Dickman

23   now.

24         THE COURT: Yeah, let's do that.

25         MR. BRADY: It's not particularly long, but I think

# EXHIBIT G

1   Q.  And your colleagues in loss mitigation would know those

2   specific requirements by investor or master servicer.

3   A.  Yes, that specific unit would know that as they deal with

4   that on a day-to-day basis.

5   Q.  Who ultimately has the final say whether to accept a loan

6   modification for a borrower?

7   A.  The final say would be the master servicer or the

8   investor.

9   Q.  Now does AHM Servicing generally disclose to the borrower

10  the owner of the loan?

11  A.  Generally, we do not disclose that.  As previously stated

12  by yourself, we are paid by the master servicer and the

13  investor to service the loan on behalf of them.  As part of

14  that, we are charged with taking their phone calls, sending

15  them monthly statements.  We are charged with answering their

16  inquiries.  So, generally speaking, no, we do not provide

17  that information to the borrower.

18  Q.  If a borrower did determine the owner of the loan, would

19  the owner of the loan have any of the information on the

20  borrower's account?

21  A.  Generally, no, the owner of the loan would not have the

22  loan level information in regards to the account.  They would

23  not have access to any of the information that has been

24  presented by the borrower or any of the history of the

25  account in regards to the transactions that have occurred.

1 Triad is the insurer of my loan file.  They did not communicate

2 to Triad that I had asserted recision against my loan or other

3 issues with my loan, and instead were trying to foreclose on my

4 loan and collect mortgage insurance on my loan.  There's a lot

5 of issues.  I mean, honestly.

6       THE COURT:  In an candor, Ms. Rush, I've yet to hear

7 you tell me something the debtors have told you that was

8 incorrect.  You haven't --

9       MS. RUSH:  Told me?

10       THE COURT:  You just said you've been lied to, but

11 you -- and asked you for specifics and I haven't heard them.

12       MS. RUSH:  Well, they said that they did not have to

13 comply with  TILA 1641 (f)(2) and they do.  It is the law --

14       THE COURT:  All right.

15       MS. RUSH: -- that they have to answer, so -- I'm not

16 even going to go to whether my loan is or isn't in this loan

17 pool.  I would like to reassert.  Obviously, I've petitioned

18 again for the protection of the 363(o).  They have now added

19 it.  They did not add it before I brought it up.  This is,

20 again, you know -- I wish I didn't have to be here trying to

21 protect my rights and the rights of other consumers.

22       I'm very concerned that these loans that they're

23 selling are in their own filing, loans they say have

24 underwriting and compliance issues against them and are 60 days

25 or more in default and they're trying to sell them free and

**J&J COURT TRANSCRIBERS, INC.**



# EXHIBIT G

Law Offices of

# CHAPMAN AND CUTLER LLP

Theodore S. Chapman
1877-1943
Henry E. Cutler
1879-1959

111 West Monroe Street, Chicago, Illinois 60603-4080
Telephone (312) 845-3000
Facsimile (312) 701-2361
chapman.com

San Francisco

595 Market Street
San Francisco, CA 94105
(415) 541-0500

Franklin H. Top, III
Telephone: 312-845-3824
Facsimile:  312-516-1824
E-mail:  top@chapman.com

Salt Lake City

201 South Main Street
Salt Lake City, UT 84111
(801) 533-0066

March 6, 2008

*1641 f 2*

Paula Rush
2651 Peery Drive
Churchville MD 21028

Re: *In re: American Home Mortgage Holdings, Inc. et al.*, Case No. 07-11047
(CSS) pending in the United States Bankruptcy Court for the District of Delaware
(the *"Court"*)

Dear Ms. Rush:

As you are aware, our firm represents Wells Fargo Bank, N.A. (*"Wells Fargo"*), in its
role as master servicer in connection with the above-referenced proceedings.  I am in receipt of
your email dated January 31, 2008, which demanded certain clarifications prior to February 1,
2008.

This letter is a general response to your email, because we were unable to ascertain from
the information that you provided (a) whether or not your loan or loans are even included in one
of the securitizations for which Wells Fargo serves as master servicer or (b) what the status of
your loan(s) may be.

Assuming, however, your loan(s) are in one or more of the securitizations for which
Wells Fargo serves as master servicer, we believe we should clarify the role a master servicer
plays in connection with a securitization transaction to avoid any confusion.  In a typical
securitization transaction, the master servicer oversees the servicing of the mortgage loans for the
trust and the protection and benefit of the investors typically pursuant to the terms of a pooling
and servicing agreement.  The master servicer, however, does not oversee the servicing of the
mortgage loans for the benefit of individual mortgage loan obligors; nor manage individual
mortgage loans.  The master service has no obligation to resolve any disputes between individual
mortgage loan obligors and the servicer.  The relationship of mortgage loans obligors, such as
yourself, is strictly with the servicer of the mortgage loans.



Law Offices of

## CHAPMAN AND CUTLER LLP

Paula Rush
March 6, 2008
Page 2


Even so, Wells Fargo does not condone any violation of any law applicable to the servicing of mortgage loans by American Home Mortgage or any other servicer. Based on your e-mail and your many appearances in the Court, it appears that the current servicer is aware of the facts and circumstances surrounding your claims and concerns. Nonetheless we are more than willing to forward your email on to them as well for any response they may deem appropriate under the circumstances.

Further, please be advised that Wells Fargo has not authorized anyone to speak on their behalf regarding any of the issues raised in your email, including but not limited to Mr. Brady or Mr. Dickman. Whatever testimony or argument either gave is solely their own and may not be reflective of the views and position of Wells Fargo.

If you have any further questions or concerns, please do not hesitate to contact us.

Very truly yours,

CHAPMAN AND CUTLER LLP

By: _____
Franklin H. Top. III



# EXHIBIT H

## In the United States Bankruptcy Court
## For the Eastern District of Pennsylvania

| | |
|---|---|
| In re | : Chapter 13 |
| | : |
| James A. Meyer and Mary E. Meyer | : |
| | : |
| Debtor(s) | : Bankruptcy No. 06-13841 SR |
| | |
| James A. Meyer and  Mary E. Meyer | : |
| Plaintiffs | : |
| v. | : |
| | : |
| Argent Mortgage Company, LLC | : |
| Countrywide Home Loans, Inc. | : |
| Integrated Financial Group, Inc. | : |
| Defendants | : Adv. No. 07-0031 |

## <u>Opinion</u>

By: Stephen Raslavich, United States Bankruptcy Judge.

*Introduction*

Before the Court are three matters: Plaintiffs' Motion for Permission to Amend Complaint and Motions for Summary Judgment filed by Defendants Countrywide Home Loans, Inc. (Countrywide) and Argent Mortgage Company LLC (Argent). All of the motions are opposed. After hearings held on August 28 and September 20, 2007, the Court took the matters under advisement.

*Summary of Holding*

The Motion for Permission to Amend will granted in part and denied in part. Plaintiffs will be permitted to amend the complaint as proposed with the exception of two items: Plaintiffs may not add Deutsche Bank (Deutsche) as a defendant and neither may they base their TILA claim on a second settlement statement only recently produced. All other changes will be

identity of the holder.[2]  Again, one can be both servicer and owner of a loan.  The Opinion acknowledged what Countrywide continues to emphasize: that Plaintiffs' counsel was remiss in not conducting discovery on the ownership issue, but that does not excuse Countrywide's failure to respond to Plaintiffs' initial inquiry.[3]  Finally, it is entirely possible that at trial Countrywide may be able to prove that its failure to identify Deutsche as the holder was nothing more than a mistake on its part; however, this record contains evidence which could reasonably be construed by a trier of fact to suggest that it was a deliberate calculation on Countrywide's part.  All of this tends to show a colorable TILA violation committed by Countrywide.  More to the point, it is sufficient to survive summary judgment.

And there was a corollary determination necessitated by that finding.  Liability under TILA can be assessed only against a "creditor."  *See* 15 U.S.C. § 1640(a).  Throughout, Countrywide insisted that it was not a creditor because it never held the loan.  The Court, however, found

---

[2] As to the February 15 letter from Argent, the Court notes that such letter was not part of the record on summary judgment.

[3] Countrywide relies on the National Consumer Law Center Manual on the Truth in Lending Act as endorsing that two-stage practice.  *See* Countrywide Brief, Ex. C.  Yet on the very next page of the Manual, the NCLC recommends to practitioners the exact course of action which Plaintiffs' counsel followed to ascertain the identity of the holder:



> Sending the servicer a formal written request to state the name, address, and telephone number of the owner of the obligation, as required by 15 U.S.C. § 1641(f)(2). [footnote omitted] This request can be combined with a "qualified written request" for the same information under the Real Estate Settlement Procedures Act (RESPA). [footnote omitted] While TILA does not set a deadline for the service to respond to the request, RESPA requires a response within 60 days and authorizes a private cause of actions for violations. These requests can be included as part of the rescission letter but should be sent, preferably by certified mail, return receipt requested, as far in advance of the rescission deadline as possible.

NCLC Manual on Truth-in-Lending Act § 6.6.2.4.



evidence in the record which allowed a reasonable inference that Countrywide at one time held the loan. That evidence consisted of its failure to answer a direct question as to who held the loan and its later characterization of its role in the transaction. Despite what it says, Countrywide never answered a very simple question directed at it. This, as Plaintiffs point out, left them in the dark as to who owned their loan. And when Countrywide finally responded on March 30, Plaintiff inferred fairly from what was in that letter that it was Countrywide that held the loan. At various points in that letter, Countrywide characterized itself in a manner consistent with that of a lender—as opposed to the loan servicer—in the transaction. *See* 379 B.R. at 551-54. Based on that evidence, the Court ruled that estoppel principles might apply to Countrywide's claim that it was only a servicer.

*Summary*

Nothing in what is offered by either party persuades the Court that it erred in its Opinion and Order of November 29. Rather, a review of the bases for its ruling confirms for the Court that its conclusions were sound. The Motions will, therefore, be denied.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:    February 20, 2008

6

very reason, the letter formally requested — in accordance with TILA § 1641(f)(2) *and in the opening paragraph* — that Countrywide either identify the holder or give them the name of someone who could.  Countrywide never answered that request.  Yet for whatever reason, Plaintiffs' counsel never pursued its rights in this regard.  To be sure, that was a failing on the part of Plaintiffs' counsel.  But it was Countrywide's knowing evasion of its duty to provide that information which has led in part to the resulting delay.  The Court finds Countrywide hard put to claim prejudice under these circumstances.

Moreover, the Court cannot help wondering why Countrywide vociferously opposes an amendment which pertains to a different defendant.  Assuming leave is granted to add *Deutsche*, how is *Countrywide* harmed by this?  "The 'prejudice' to which the rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale."  *Curry v. Johns-Manville Corp.*, 93 F.R.D. 623, 626 (E.D.Pa.1982).  What case preparation must Countrywide now undertake if the Plaintiffs' rescission claim is now directed at Deutsche?  For that matter, on what basis does Countrywide have standing to press this objection?  Having assigned its interest in the loan, it is not the real party in interest under F.R.C.P. 17.[7]  *See Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings*, 198 F.3d 415, 425 (3d Cir.1999) (holding that assignor of loan lacked standing to sue under it).  In sum, the Court finds neither prejudice nor undue delay attending this amendment.

*Futility*

Alternatively, Countrywide claims that adding Deutsche would be an act of futility.  An

---

[7] Made applicable by B.R. 7017.

7

> [ ]Upon written request by the obligor, the servicer shall provide
> the obligor, to the best knowledge of the servicer, with the name,
> address, and telephone number of the owner of the obligation or
> the master servicer of the obligation.

15 U.S.C. § 1641(f)(2).  Plaintiffs' request for this information was made in the form of a letter.

On January 2, 2007 Plaintiffs' Counsel wrote Countrywide and Argent requesting three things:

first, that either recipient identify the name and address of the owner or master servicer of the

loan; second, that they provide certain information pursuant to the RESPA[12]; and, third, that they

rescind the loan on account of alleged violations of TILA.  *See* January 2 Letter attached to

Countrywide's Brief, Ex. F.  Countrywide responded to that letter one week later.  Its January 9

response acknowledged receipt of Plaintiffs' letter and indicated that it would comply as

required under RESPA.  It did not identify either the master servicer or owner of the loan; its

only reference to that request was to state in the abstract the duties of a "loan servicer" upon

receipt of a Qualified Written Request under RESPA.  *See* Countrywide's Letter of January 9,

2007 attached to its Brief as Ex. G.[13]  Plaintiffs would file suit about one month after that.  *See*

Docket.  By March 30, Countrywide had retained counsel who responded in another letter.

---

[12] RESPA imposes a duty upon loan servicers to respond to certain borrower inquiries. *Hopkins v. First NLC Financial Svs, LLC (In re Hopkins)*, 372 B.R. 734, 746 (Bankr.E.D.Pa.2007) *citing Griffin v. Citifinancial Mortg. Co., Inc.*, 2006 WL 266106, at *2 (M.D.Pa.2006). This part of Plaintiffs' letter is known under RESPA as a "qualified written request" and is defined as

a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.  12 U.S.C. § 2605(e)(1)(B)(i)-(ii).

[13] Neither did the January 9 response mention the rescission request.

29

Similarly, that letter fails to identify a "master servicer" or owner of this loan. It mentions only that "Countrywide acquired the servicing of the loan effective with the October 1, 2004 payment." *See* Letter of March 30, 2007 attached as Ex. E to Countrywide's Brief. Plaintiffs now contend that Countrywide should be estopped from arguing that it is not the owner for purposes of either (1) allowing them to rescind this loan or (2) collecting damages for Countrywide's refusal to honor a valid rescission request. Plaintiffs' Brief in Opposition to Countrywide's Motion, 8; Trans. 8/28/07 @ 6,8; Trans. 9/20/07 3-5. Countrywide disputes that it failed to give the requested information. *See* Countrywide, Reply Brief, 4. At the hearing on August 28, its counsel explained:

> We were never asked to identify the owner, certainly not in discovery. The QWR, which I think is what Mr. Scholl is referring to, asks us to identify either the owner or the servicer and provide the name, address, et cetera, for one or the other. We provided it for the servicer.
>
> Now, candidly, I wished we just had provided both, to be frank with you, your Honor. But we did abide by the letter – by the letter of the request. We identified the assignor. If there was any further information they wanted, it was incumbent upon the plaintiffs to serve the requisite discovery and get to the bottom of this. It's – it's – it's their burden.

Trans. 8/28/07 @ 13. The Court finds this statement to be mystifying, to say the least. It is correct for Countrywide to say that *in discovery* it was never asked to identify the owner. But that is beside the point: they were required to furnish that information before the Plaintiffs sued them.[14] Countrywide is *incorrect* in saying that Plaintiffs' counsel asked them to identify either the owner or servicer. The letter asked for the name of the owner or "master servicer." The

---

[14] *See*                                                    ("Your Rights and the Responsibilities of the Mortgage Servicer" explaining that if the borrower has questions or problems with the servicing of the loan, the servicer is required to respond to the borrower).

#18

distinction is significant.  A "master servicer" means "the owner of the right to perform

servicing, which may actually perform the servicing itself or may do so through a subservicer."

24 C.F.R. § 3500.21(a).  A "subservicer", in turn, is "a servicer who does not own the right to

perform servicing, but who does so on behalf of the master servicer."  *Id.*  This contemplates the

possibility that a subservicer may not know who the owner is — after all, they are not in privity

— but should certainly know the identity of the master servicer.  So if Countrywide was indeed

only a subservicer of this loan, then it should have identified itself as such and disclosed the

name of the master servicer.  Plaintiffs could then have made the same request upon that entity.

A request upon the master servicer would have yielded the name of the owner.  If, on the other

hand, Countrywide were the master servicer, then it should have said so and Plaintiffs would

have requested *from it* the name of the owner.  Either response would have sufficed under TILA.

Instead both letters essentially ignore the request for information.  This belies Countrywide's

claim that it complied with the letter of the request.

  But more than that, the Court finds the March 30 letter to be misleading.  In two

instances, Countrywide characterizes itself more as a lender than as a servicer:

> As to your position that *Countrywide did not comply* with the
> Truth-in-Lending Act. We find your position to be without merit.
> Our review of your clients' transaction confirms that all material
> disclosures were accurately provided to your clients and that they
> executed the Lenders copy of the Notice of Right to Cancel,
> acknowledging their receipt of two (2) completed copies of the
> document each.
> …
> Similarly, your claim that the two Settlement Statements you
> enclosed created confusion is equally without merit. The attached
> HUD Settlement Statement, which was signed by both James and
> Mary Meyer, clearly shows the disbursements and third party fees
> associated with the loan.

31

> Based on the foregoing, we deny your claim that *Countrywide did
> not comply* [sic] Truth in Lending Act and respectfully decline
> your demand for rescission of this loan.

*Id.* (emphasis added). Plaintiffs insist that anyone reading those two sentences would fairly conclude that Countrywide was, indeed, the owner. *See* Trans. 8/28/07 @ 8. They add it is possible for a servicer to also own the loan. *See* Trans. 9/20 @ 3-4; *see also* 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.") Moreover, the Proof of Claim filed by Countrywide does not indicate in any way that it is the servicer. *See* Trans. 8/28/07 @ 5; *see also* Claims Register, #7. Is this enough to estop Countrywide from arguing that it was never a creditor, i.e., a holder of the loan?

To establish equitable estoppel, a party must prove: (1) intentional or negligent misrepresentation of some material fact; (2) made with knowledge or reason to know that the other party would rely upon it; and (3) inducement of the other party to act to its detriment because of justifiable reliance on the misrepresentation. *Boyd v. Rockwood Area School District*, 907 A.2d 1157, 1168 (Pa.Cmwlth. 2007) The identity of the holder of the loan was absolutely critical (i.e., material) to the Plaintiffs' exercise of their rescission right. From Countrywide's choice of phrasing in its March 30 letter, one would conclude that it both owned and serviced the loan. The allegations to which its letter alludes do not include acts typical of loan servicing. Instead, the alleged TILA violations involve non- and misfeasance of a lender. It is the lender whose responsibility it is to make the required TILA disclosures. There is simply no legitimate reason for Countrywide to deny these allegations substantively when all it had to do was to refer

32

that inquiry to the holder of the loan. But it chose not to do that. The effect of that is to have falsely suggested to Plaintiffs that Countrywide was, indeed, the owner. That rendered Plaintiffs justified in investigating the ownership question no further. The upshot of all this is that Plaintiffs would not learn of the owner's identity until it was too late to rescind. Had Countrywide satisfied the requirement of TILA § 1641(f)(2), Plaintiffs' rescission right would likely not be prejudiced. There is, however, nothing that can be done about that now: the rescission right has expired. *See, supra,* futility discussion, 9-14. But for purposes of a damage claim arising out of the attempt to rescind, the Court finds evidence sufficient to estop Countrywide from denying that it is a creditor in this context. This matters because TILA punishes a creditor who violates any requirement of the statute:

> any creditor who fails to comply with *any requirement imposed under this part[15]*, including any requirement under section 1635 ... with respect to any person is liable to such person in an amount equal to the sum of-
>
> (1) any actual damage sustained by such person as a result of the failure;
> ...
> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.



15 U.S.C. § 1640(a) The record contains evidence sufficient to estop Countrywide from denying

---

[15] The "part" referred to is Part B - Credit Transactions, 15 U.S.C. §§ 1631 to 1649.

33



that it was a holder (i.e., a creditor) in this transaction. It also contains proof that Countrywide

failed to disclose the information that it was required to provide under TILA § 1641(f)(2). On

that basis, the TILA claim against Countrywide survives summary judgment for purposes of

collecting damages.

*UDAP Derivative Claims*

That leaves the UDAP count. Having found the record to support Plaintiffs' claim that

Argent violated TILA, the Court finds *ipso facto* a violation of UDAP. *See In re Milbourne*, 108

B.R. 522, 544 (Bankr.E.D.Pa.1989) ("a violation of TILA may also constitute a violation of

UDAP")[16] Moreover, TILA is not the only consumer protection statute from which Plaintiffs

would derive UDAP liability. They also allege that Argent and Integrated violated the

Pennsylvania Credit Services Act[17] and the Loan Brokers Trade Practices Regulations[18] when

they made this loan to the Plaintiffs. Violations of those two laws, Plaintiffs correctly point out,

establish liability under UDAP. *See In re Barker*, 251 B.R. 250, 260 (Bankr.E.D.Pa.2000)

("[A]ny violations of Pennsylvania's Credit Services Act (CSA) are deemed to be violations of

the state's UDAP statute"); *and see also Kimberton Chase Realty Corp. v. Main Line Bank*, 1997

WL 698487 *9 (E.D.Pa.) (holding that UDAP claim premised on LBTPR violation survives

motion to dismiss)[19]

---

[16] Although the TILA is independently time-barred, the UDAP claim remains viable. A six-year limitations period applies to that statute. 42 P.S. § 5527(b); *Lessoon v. Metropolitan Life Ins.Co.*, 898 A.2d 620, 627 (Pa.Super.2006).

[17] 73 P.S. § 2181 et seq.

[18] 35 Pa.Code § 305.1 et seq.

[19] Again, the UDAP claim is not leveled against Countrywide.

34

UNITED STATES BANKRUPTCY COURT
DISTRICT OF EASTERN PENNSYLVANIA

IN RE:                          )   Case No. 06-13841-SR
                                )   Chapter 13
JAMES A. MEYER AND              )
MARY E MEYER,                   )
                                )
            Debtors.            )
                                )
_____ )
JAMES A. MEYER AND              )   Adversary No. 07-00031
MARY E. MEYER,                  )
                                )
            Plaintiffs,         )
                                )   Courtroom 4
versus                          )   900 Market Street
                                )   Philadelphia, Pennsylvania
COUNTRYWIDE HOME LOANS, INC.,)
                                )
                                )   January 15, 2008
            Defendant.          )   10:11 A.M.


TRANSCRIPT OF 1) MOTION TO RECONSIDER (RELATED DOCUMENTS
JUDGMENT ORDER) OR CLARIFY FILED BY JAMES A. MEYER AND MARY E.
MEYER. 2) MOTION TO RECONSIDER (RELATED DOCUMENTS JUDGMENT
ORDER) FILED BY COUNTRYWIDE HOME LOANS, INC.
BEFORE HONORABLE STEPHEN RASLAVICH
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:             Regional Bankruptcy Center
                            of Southeast Pennsylvania
                            By:  DAVID A. SCHOLL, ESQ.
                            6 Saint Albans Avenue
                            Newtown Square, Pennsylvania


For Argent Mortgage         Kaplin Stewart
Company:                    By:  SANDHYA MATHUR FELTES, ESQ.
                            350 Sentry Park, Building 640
                            Blue Bell, Pennsylvania 19422


Audio Operator:             LINDA M. LoBOSCO


Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

---

## TRANSCRIPTS PLUS
435 Riverview Circle, New Hope, Pennsylvania 18938
e:mail  courttranscripts@aol.com

215-862-1115  (FAX) 215-862-6639



1   element of justifiable reliance.  And, again, starting from the

2   proposition that the plaintiffs themselves admitted they were

3   unsure who owned their loan, continuing with the fact that the

4   March 30 letter never expressly stated that Countrywide owned

5   the loan.  And that most importantly, Countrywide's March 16,

6   2007 answer expressly denied that it owned the loan, and merely

7   stated it was the servicer.

8          At the very least, all of that should have put the

9   plaintiffs on notice that there was, indeed, a continuing issue

10  here.  They had more than enough time to engage in the -- in

11  the requisite discovery which candidly would not have been

12  rocket science, simply a matter of an interrogatory directed to

13  Countrywide and they could have gotten to the bottom of this

14  issue.

15         It's regrettable they didn't.  But there's simply no

16  legal basis for saddling Countrywide entirely with that -- with

17  that failure.

18         THE COURT:  Well, I don't agree with that at all.  I

19  mean, frankly, I found your client's conduct reprehensible.

20  And I don't know what portion of it is assignable to your firm.

21  I think the conduct was reprehensible.  I think that you -- it

22  was a concerted effort to lull them into inaction.  All you had

23  to do was tell them who owned it, and you obfuscated.  Whether

24  that was your decision, your client's decision, it was

25  somebody's decision.  It was a very misguided decision.

H19

1          MR. BRYCE:  Well, Your Honor, I -- I think you're

2   giving us more credit than we're due in this respect.  And that

3   is I can --

4          THE COURT:  This isn't credit, this is blame.

5          MR. BRYCE:  Well, blame then, Your Honor.  I can

6   assure you that at the time the March 30 letter was sent, no

7   one sat down and thought, well, the Statute is going to run in

8   another two and a half or whatever months, and this will be a

9   neat way to, you know, pull a fast one on the plaintiffs.

10  Nobody thought that far ahead.  There was simply no thought

11  given to it.

12          THE COURT:  Well, we'll never know that.

13          MR. BRYCE:  Well, you can take my word for it.  If

14  Your Honor chooses not to, then, of course, that's Your Honor's

15  -- that's Your Honor's right.  But --

16          THE COURT:  I'm simply saying that's what it looks

17  like.

18          MR. BRYCE:  I -- I understand that, Your Honor.  And

19  -- and --

20          THE COURT:  It looks very bad.

21          MR. BRYCE:  I -- I understand that, Your Honor.  And

22  -- and that's why I acknowledged once before that I wish that

23  we had simply identified both the owner and -- and the

24  servicer.

25          THE COURT:  Didn't you guys have this case close to

#19

1 settle?

2          MR. BRYCE:  Pardon me, Your Honor?

3          THE COURT:  Didn't you folks have this case close to

4 settle?

5          MR. BRYCE:  Well, that didn't involve us, Your Honor.

6 That was Argent and the plaintiffs.

7          THE COURT:  Your client's in a pretty tight corner,

8 in my perspective.  You might want to take a -- take a look at

9 this and caucus with your co-defendant.  See if you can't work

10 something out.

11          MR. BRYCE:  Well, we're always easy to -- ready to

12 speak, Your Honor.  Of course, working this out would be --

13 involve more than Argent and Countrywide.  It will involve the

14 -- it will involve the plaintiffs, as well.

15          THE COURT:  Well, that goes without saying.

16          MR. BRYCE:  Yes, of course.

17          THE COURT:  I mean let's -- let's not overlook what's

18 happening on the national stage with your client.

19          MR. BRYCE:  No, I -- I understand that, Your Honor.

20 I read the paper every day, I'm afraid.  But this, again, I

21 assure you was inadvertent.  And I think it was as simple a

22 matter as the letter asked --

23          THE COURT:  One would have to give somebody the

24 benefit of a lot of doubt.  It's certainly not the way it

25 looked.

H19

1                  MR. BRYCE:  I understand, Your Honor.

2                  THE COURT:  It looked like a concerted effort to

3    obfuscate, to lull the plaintiff into inaction and --

4                  MR. BRYCE:  I mean, again --

5                  THE COURT:  That's how it looked to me.

6                  MR. BRYCE:  Again, for what it's worth --

7                  THE COURT:  You know?

8                  MR. BRYCE:  -- Your Honor, I assure you that was not

9    the case.  And if it had been the case, we wouldn't have denied

10   ownership in the answer.  We would have answered --

11                 THE COURT:  All you had to do was name the owner, and

12   you didn't.  There's a requirement that you do, right?

13                 MR. BRYCE:  Well, I -- I -- given that -- given the

14   request of the letter, I respectfully disagree with Your Honor.

15   Although obviously Your Honor has the last word here.

16                 Thank you.

17                 THE COURT:  Anything further, anyone?

18                 MS. FELTES:  No, Your Honor.  We didn't present a

19   motion or oppose one.  We're just here to attend.

20                 THE COURT:  Um-hum.  Anything further, Mr. Scholl?

21                 MR. SCHOLL:  No, Your Honor.

22                 THE COURT:  Okay.  I'll take a look at it and get

23   something out to you.

24                 (Proceedings Adjourn at 10:29 A.M.)

25

*#19*

# EXHIBIT I



Docket
1711

American Home Mortgage Servicing
Investor Summary

As of Date: 9/17/2007

| Investor Number | | Loan Count | |
|---|---|---|---|
| 42 | STATE FARM LIFE INSURANCE CO. | 4 | $78,544 |
| 48 | ZIA MORTGAGE LOAN TRUST 2006-1 | 13 | $49,517,986 |
| 101 | WASHINGTON MUTUAL MTG SEC CORP | 3 | $470,146 |
| 102 | SIGNATURE BANK | 96 | $83,662,054 |
| 103 | CITIMORTGAGE, INC. | 46 | $3,762,244 |
| 105 | UNION LABOR LIFE INS CO - R21 | 1 | $136,948 |
| 107 | UNION LABOR LIFE INS CO - S21 | 1 | $232,447 |
| 108 | PRINCIPAL BANK | 41 | $4,260,350 |
| 133 | WACHOVIA BANK, NATIONAL ASSOC | 2 | $37,245 |
| 151 | AEGON USA REAL ESTATE SERVICES | 2 | $232,459 |
| 154 | PHOENIX FOUNDERS INC | 1 | $19,081 |
| 175 | WACHOVIA BANK, NATIONAL ASSOC | 4 | $7,315 |
| 200 | RESIDENTIAL FUNDING CORP | 77 | $12,567,295 |
| 250 | WELLS FARGO CORP. TR. SERVICES . | 3 | $739,336 |
| 275 | WASHINGTON MUTUAL MTG SEC CORP | 1 | $641,817 |
| 300 | AHMA 2005-1 | 869 | $283,991,869 |
| 301 | MARM 2005-8 | 380 | $80,407,863 |
| 302 | GSR 2006-AR1 | 425 | $275,148,410 |
| 303 | MSM 2006-5AR | 149 | $47,335,285 |
| 304 | MASTR 2006-2 | 1,298 | $256,765,221 |
| 305 | AHMA 2006-1 | 1,951 | $755,370,734 |
| 306 | GSAA 2006-6 | 1,684 | $298,202,924 |
| 307 | MASTR 2006-OA1 | 2,010 | $705,212,359 |
| 308 | BSABS 2006-AC3 | 804 | $165,947,649 |
| 309 | GSR 2006-AR2 | 76 | $37,641,731 |
| 310 | MSM 2006-6AR | 70 | $25,366,591 |
| 311 | GSAA 2006-9 | 604 | $148,791,627 |
| 312 | GSAA 2006-10 | 1,280 | $250,692,597 |
| 313 | BSAMI 2006-AR5 | 1,307 | $555,484,894 |
| 314 | MSM 2006-8AR | 4 | $826,307 |
| 315 | DBALT 2006-AB2 | 808 | $149,858,596 |
| 316 | GSAMP 2006-S4 | 2,028 | $133,022,542 |
| 317 | AHMIT 2006-2 | 3,939 | $622,790,429 |
| 318 | AHMA 2006-2 | 2,273 | $908,445,524 |
| 319 | BSABS 2006-AC4 | 9 | $1,639,531 |
| 320 | DBALT 2006-AB3 | 994 | $169,042,252 |
| 321 | HARBORVIEW 2006-6 | 357 | $129,908,104 |
| 322 | MALT 2006-3 | 40 | $7,471,362 |
| 323 | JPALT 2006-A3 | 26 | $5,775,340 |
| 324 | AHMIT 2006-2 | 574 | $35,782,535 |
| 325 | GSAA 2006-11 | 449 | $99,035,146 |
| 326 | AHMA 2006-3 | 3,501 | $1,402,829,728 |
| 328 | AHMA 2006-4 | 3,313 | $1,303,018,743 |
| 329 | HarborView 2006-7 | 3,690 | $1,450,712,157 |
| 330 | GSR 2006-OA1 | 572 | $233,456,683 |
| 332 | DBALT 2006-AB4 | 1,347 | $255,725,571 |
| 333 | AHMA 2006-5 | 3,381 | $1,365,635,163 |
| 334 | DBALT 2006-AR5 | 67 | $7,153,511 |
| 335 | AHMA 2006-6 | 2,840 | $1,134,321,271 |
| 336 | MARM 2006-OA2 | 3 | $1,640,710 |
| 337 | MARM 2007-1 | 3,318 | $1,369,794,501 |
| 338 | HarborView 2006-14 | 444 | $161,924,677 |

Rush →

I20

0113

| Bank | Account No. (Last 4 Digits) | Corporate Entity | Account Name | Type of Account* |
|---|---|---|---|---|
| American Home Bank | 1117 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for BSABS 2006-AC3 T&I | DDA |
| American Home Bank | 1125 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing Inc. as TRT for Var Mortgagors and Investors for Bank of America Inv#30 T&I | DDA |
| American Home Bank | 1133 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing Inc. (as Master Servicer) T & I Asso as Indenture Trustee For Var Mort Loans In Trust for Wells Fargo Bank National | DDA |
| American Home Bank | | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for GSR 2006-OA1 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#3071 | DDA   # 330 |
| American Home Bank | 1158 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing Inc. as TRT for Var Mortgagors and Investors for GSAA 2006-9 Inv# 311 T&I | DDA |
| American Home Bank | 1166 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing Inc. as TRT for GSR 2006-AR1 T&I | DDA |
| American Home Bank | 1174 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for GSAA 2006-11 T&I and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans | DDA |
| American Home Bank | 1182 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for Harborview 2006-6 Inv#321 T&I and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans | DDA |
| American Home Bank | 1190 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing Inc. as TRT for VAR Mortgagors and Investors for Morgan Stanley Mortgage Loans Trust 2006-5AR T&I | DDA |

-5-

066585.1001

| Bank | Account No. (Last 4 Digits) | Corporate Entity | Account Name | Type of Account* |
|------|------|------|------|------|
| Bank of America | 2828 | American Home Mortgage Servicing, Inc. | In Trust for Deutsche Bank National Co. - AHM 2005-2 - Inv 801 P&I | MMDA |
| Bank of America | 2842 | American Home Mortgage Servicing, Inc. | In Trust for Deutsche Bank National Trust Company - AHM 2005-1 | MMDA |
| Bank of America | 2421 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for DB/AHMA 2006-4 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#328 PI | MMDA |
| Bank of America | 2426 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for Harborview 2006-7 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#329 PI | MMDA |
| Bank of America | 2440 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for GSR 2006-OA1 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#330 PI | MMDA |
| Bank of America | 2445 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for DBALT 2006-AR5 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans PI | MMDA |
| Bank of America | 2464 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for Barclays Bank and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans PI | MMDA |
| Bank of America | 2134 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for AHMA 2006-5 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans PI | MMDA |
| Bank of America | 2139 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for DBALT 2006-AB4 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans PI | MMDA |

-21-

066585.1001

| Bank | Account No. (Last 4 Digits) | Corporate Entity | Account Name | Type of Account* |
|------|------|------|------|------|
| Chase, Texas | 7386 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for Wilshire Credit Corp and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#47 PI & TI | DDA |
| Chase, Texas | 7394 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for WAMU and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#45, 46 PI & TI | DDA |
| Chase, Texas | 7402 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for CSFB and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#39, 61 PI & TI | DDA |
| Chase, Texas | 7410 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for Sky Bank and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#35 PI & TI | DDA |
| Chase, Texas | 7436 | American Home Mortgage Corp. | American Home Mortgage Corp Collateral Deposit Account for Letter of Credit | DDA |
| Chase, Texas | 7444 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for DB/AHMA 2006-4 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#328 TI | DDA |
| Chase, Texas | 7451 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for Harborview 2006-7 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#329 TI | DDA |
| Chase, Texas | 7469 | American Home Mortgage Servicing, Inc. | American Home Mortgage Servicing, Inc. as TRT for Var Mortgagors and Investors for GSR 2006-OA1 and Various Mortgagors, Fixed and Adjustable Rate Mortgage Loans Inv#330 TI | DDA |
| Chase, Texas | 7477 | American Home Mortgage Ventures LLC | All Pro Mortgage, LLC | DDA |

-58-

066585.1001

DB02:6149871.3

I4

3.     The following persons directly or indirectly own, control, or hold, with power to vote, 5% or more of the voting securities of the Debtor:[3]

### American Home Mortgage Investment Corp.
### 5% Shareholders

| Shareholder Name | Number of Shares |
|---|---|
| Michael Strauss<br>Chief Executive Officer<br>American Home Mortgage Investment Corp.<br>538 Broadhollow Road<br>Melville, NY 11747 | 4,542,106 |
| Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY 10005 | 3,599,996 |
| Munder Capital Management<br>Munder Capital Center<br>480 Pierce Street<br>Birmingham, MI 48009 | 3,434,538 |
| NWQ Investment Management Company, LLC<br>2049 Century Park East, 16th Floor<br>Los Angeles, CA 90067 | 2,905,623 |

---

[3] The determination that there were no other persons known to the Debtor to beneficially own 5% or more of the Debtor's voting securities was based on a review of all statements filed with the U.S. Securities and Exchange Commission with respect to the Debtor pursuant to Section 13(d) or 13(g) of the Securities Exchange Act of 1934, as amended, since the beginning of the Debtor's fiscal year.

DB02:6150016.3

066585.1001

Each Class of LIBOR Certificates and COFI Certificates represents beneficial ownership of a regular interest in the Upper-Tier REMIC and the right to receive Basis Risk Carry Forward Amounts, the Class P Certificates represent beneficial ownership of a regular interest in the Class P REMIC, and the Class    Certificates represent beneficial ownership of a regular interest in the Class    REMIC and the Excess Reserve Fund Account.

Subsection 11.11

Fidelity Bond; Errors and Omissions Insurance. **The Servicer shall maintain, at its own expense, a blanket Fidelity Bond and an errors and omissions insurance policy, with broad coverage on all officers, employees or other persons acting in any capacity requiring such persons to handle funds, money, documents or papers relating to the Mortgage Loans.**

These policies shall insure the Servicer against losses resulting from **dishonest or fraudulent acts committed by the Servicer's personnel, any employees of outside firms that provide data processing services for the Servicer, and temporary           employees or student interns.**

**The Fidelity Bond shall also protect and insure the Servicer against losses in connection with the release or satisfaction of a Mortgage Loan without having obtained payment in full of the indebtedness secured thereby.**

No provision of this Subsection 11.11 requiring such Fidelity Bond and errors and omissions insurance **shall diminish or relieve the Servicer of its duties and obligations as set forth in this Agreement**. The minimum coverage under any such Fidelity Bond and insurance policy shall be at least equal to the corresponding amounts required by Fannie Mae in the Fannie Mae Servicing Guide or by Freddie Mac in the Freddie Mac Sellers' & Servicers' Guide, as amended or restated from time to time, or in an amount as may be permitted to the Servicer by express waiver of Fannie Mae or Freddie Mac.

Goldman Sachs Mortgage Company
100 Second Avenue South
Suite 200 North

Attention: Sally S. Bartholmey
Tel: (     ) 825-3829
Fax: (     ) 493-0678
With a copy to:

Goldman Sachs Mortgage Company
85 Broad Street

Attention: Eugene Gorelik new contact Roger Yao
Tel: (     ) 902-5008
Fax: (     ) 902-3000

                        (b)                        if to the Servicer:

American Home Mortgage Servicing, Inc.
4600 Regent Blvd, Suite 200

Attention: David Friedman, Executive Vice President
E-mail:
With a copy to:

# EXHIBIT J

3/7/06

Pum File

# THE LOAN CORPORATION

Licensed Mortgage Lender
Florida Department of Banking and Finance

Date: _3·7·06_

## Assignment of Interest

Esecondmortgage.com, DBA The Loan Corporation, herby assigns

all interests in the _PAULA RUSH_ loan

to: _ABC_

Harry Hedaya
President

ASSIGNED to

ABC

J24

# EXHIBIT K



CLOSED
CIVIL
CASE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 03-60021-CIV-LENARD-SIMONTON

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) |
| 30 MINUTE MORTGAGE INC., <br> a Florida corporation, | ) |
| GREGORY P. ROTH, <br> individually and as President of <br> 30 Minute Mortgage Inc., and | ) |
| PETER W. STOLZ, <br> individually and as National Sales <br> Director of 30 Minute Mortgage Inc., | ) |
| Defendants. | ) |



FILED by ___ D.C.

NOV 2 6 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## [Proposed] FINAL DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO DEFENDANT 30 MINUTE MORTGAGE INC.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed a Complaint for

Injunctive and Other Equitable Relief pursuant to Sections 5(a) and 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) & 53(b); Section 108(c) of the Truth in

Lending Act ("TILA"), 15 U.S.C. § 1607(c); and Sections 505(a)(7) and 522(a) of the Gramm-

Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6805(a)(7) & 6821(a).  Default was entered as to



## III.    INJUNCTION AGAINST TILA AND REGULATION Z VIOLATIONS

**IT IS FURTHER ORDERED** that, in connection with any advertisement to promote directly or indirectly any extension of consumer credit, Defendant is hereby permanently restrained and enjoined from violating TILA and/or Regulation Z by:

A.    advertising credit terms other than those terms that actually are or will be arranged or offered by the creditor, in violation of Section 226.24(a) of Regulation Z, 12 C.F.R. § 226.24(a);

B.    stating a rate of finance charge without disclosing the accurate "annual percentage rate," and, if the annual percentage rate may be increased after consummation, that fact, in violation of Sections 144(c) and 107 of TILA, 15 U.S.C. §§ 1664(c) & 1606, and Sections 226.24(b) and 226.22 of Regulation Z, 12 C.F.R. §§ 226.24(b) & 226.22;

C.    advertising a payment rate in a transaction where the consumer's payments are based upon a lower interest rate than the rate at which interest is accruing, without also making all other disclosures required by Section 226.24(b)-4 of the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. § 226.24(b)-4, Supp. 1 (including the rate at which the interest is in fact accruing and the annual percentage rate);

D.    stating the period of repayment, but failing to disclose: (1) the terms of repayment and (2) the annual percentage rate, using that term, and, if the rate may be increased after consummation, that fact, in violation of Section 144(d) of TILA,

9

1  WILLIAM E. KOVACIC
   General Counsel

2
   AMANDA QUESTER
3  T. KEVIN MARR
   Attorneys
4  Division of Financial Practices
   Federal Trade Commission
5  600 Pennsylvania Avenue, N.W., NJ-3158
   Washington, D.C. 20580
6  (202) 326-3224 (phone)
   (202) 326-3768 (facsimile)
7
   BARBARA CHUN
8  Local Counsel
   Cal. Bar No. 186907
9  Federal Trade Commission
   10877 Wilshire Blvd., Ste. 700
10 Los Angeles, CA 90024
   (310) 824-4312 (phone)
11 (310) 824-4380 (facsimile)

12 ATTORNEYS FOR PLAINTIFF
   FEDERAL TRADE COMMISSION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT

MAY 12 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>CHASE FINANCIAL FUNDING,<br>INC., a Nevada corporation,<br><br>JAMES F. BERRY, individually<br>and as President of Chase Financial<br>Funding, Inc.,<br><br>SUZANNE ADMIRE, individually<br>and as an officer and Vice President of<br>Chase Financial<br>Funding, Inc., and<br><br>JEREMY ALEXANDER, individually<br>and as General Manager of Chase<br>Financial Funding, Inc.,<br><br>    Defendants. | **SACV04-549 GLT (ANx)**<br>Case No. _____<br><br><br>**COMPLAINT FOR INJUNCTIVE<br>AND OTHER EQUITABLE<br>RELIEF** |

K 26

1    mortgage loans.  The subject headings and text of many of these spam,

2    including but not limited to the messages included in Exhibits 1 and 2,

3    advertised a "3.5% fixed payment 30 year loan" or "3.5% FIXED PAYMENT

4    FOR 30 Years."

5    12.    On the www.chaseff.com website, CFF has also advertised a "web special" of

6    "3.5% Fixed Payment" loans.

7    13.    Notwithstanding its Internet advertisements, CFF has never offered a "3.5%

8    Fixed Payment" loan or a "3.5% fixed payment 30 year loan."

9    14.    Instead, the loan that CFF has falsely advertised as a "3.5% Fixed Payment"

10    loan or a "3.5% fixed payment 30 year loan" is in fact an adjustable rate

11    mortgage for which the interest rate varies each month and the minimum

12    payment amount varies each year.  This loan features four payment options,

13    including an interest-only payment option and a lower minimum payment

14    option where unpaid interest is deferred.  The minimum payment amount for

15    the first year of this loan has been, at different times, the amount that would be

16    due if the consumer had a 3.5%, 2.95%, or 1.95% 30-year loan, but the actual

17    interest rate charged is in fact considerably higher and varies monthly.  This

18    minimum payment amount is subject to increase each year.  In most years, the

19    increase in the minimum payment amount is capped at 7.5%; however, at

20    certain points during the term of the loan, the loan reamortizes and the

21    minimum payment amount can increase by more than 7.5%.  The minimum

22    payment option results in negative amortization because each month any

23    unpaid interest is added to the principal of the loan, so that the principal

24    balance increases rather than decreases for periods during the course of the

25    loan.  This loan is not a 3.5% fixed payment 30 year loan.

26    15.    Since at least January 2002, CFF has sent direct mail advertisements to

27    hundreds of thousands of consumers, including but not necessarily limited to

28    the attached Exhibits 3-7.  Many of the company's direct mail advertisements

-4-



1  indicate that the consumer's property has been "pre-approved" or "pre-

2  selected" for a **Low 3.5% FIXED PAYMENT**" loan, a "**Low 2.95% FIXED**

3  **PAYMENT**" loan, or a "**Low 1.95% PAYMENT**" loan, without disclosing

4  that (1) the 3.5%, 2.95%, or 1.95% "payment" rate is only available for the first

5  year of the 30-year loan and would increase after the first year, and (2) interest

6  would in fact accrue at a rate substantially higher than the 3.5%, 2.95%, or

7  1.95% payment rate even during the first year.

8  16.  The advertisements compare the consumers' "Existing Payment[s]" with and

9  without credit card debt to their "New Loan Payment[s]" under the loans

10  advertised by CFF with and without credit card debt.  CFF calculated the

11  "Existing Payment" amounts using the consumers' current loan amount on real

12  property (as reflected in public records) and assuming that consumers currently

13  have a 7.5% fully amortizing 30-year mortgage loan and are paying

14  approximately $1000 a month on $35,000 in credit card debt.  CFF calculated

15  the "New Loan Payment" amounts assuming the consumers would make the

16  payments that would be required if they had a 3.5%, 2.95%, or 1.95% interest

17  rate loan that is amortized over a 30-year period.  The advertisements also

18  include "Annual Cash Savings" calculations based on the comparisons between

19  the "Existing Payment[s]" and "New Loan Payment[s]."

20  17.  These "Annual Cash Savings" calculations are false or misleading because they

21  are based on a comparison of the "Existing Payment[s]" on mortgage debt that

22  fully amortizes with payments on loans that are not amortizing and that will

23  increase after the first year.  CFF has never offered a loan with a 3.5%, 2.95%,

24  or 1.95% interest rate for 30 years.  While the negative amortization loan

25  described in paragraph 14 above permits consumers to make payments during

26  the first year <u>as if</u> they had a 3.5%, 2.95%, or 1.95% 30-year mortgage, these

27  minimum payments do not cover any principal and do not even cover all of the

28  interest cost.  After the first year, the minimum payment amount will rise, and



1  eventually, consumers will have to pay back both the loan principal and the
2  deferred interest.

3  18. In numerous instances, CFF has also completed applications on behalf of
4  consumers and obtained consumers' signatures on applications for loans that
5  CFF has not offered or that were not available to the consumers, including but
6  not limited to a 2.95% 30-year fixed rate loan and a 3.5% 30-year fixed rate
7  loan.

8  19. In numerous instances, within a few days after completing loan applications for
9  consumers, CFF has provided consumers with documents entitled "Federal
10  Truth-in-Lending Disclosure Statement[s]" that misrepresent the terms of the
11  loans being offered, including but not limited to the annual percentage rate
12  ("APR"), Finance Charge, Amount Financed, Total of Payments, and Payment
13  Schedule. For example, one such disclosure statement stated that the APR for
14  a $253,000 loan was 2.95%, the interest rate was 2.95%, and the loan would be
15  paid off after 359 payments of $1,059.85 and one payment of $1058.52,
16  although CFF has never offered a loan with such terms.

17  20. On the documents entitled "Federal Truth-in-Lending Disclosure Statement"
18  that CFF has provided to consumers who receive variable (adjustable) rate
19  loans, CFF has frequently failed to check a box marked "VARIABLE RATE
20  FEATURE" or otherwise disclose that the loan is in fact a variable rate loan.

21  21. CFF has also misled consumers in other ways during the course of refinancing,
22  including regarding prepayment penalties and fees associated with refinancing
23  for a second time through CFF.

## SECTION 5 OF THE FTC ACT

25  22. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive
26  acts or practices in or affecting commerce. Misrepresentations, or omissions of
27  material fact necessary to prevent misleading consumers, constitute deceptive
28  acts or practices pursuant to Section 5(a) of the FTC Act.



# EXHIBIT L

# Uniform Underwriting and Transmittal Summary

## I. Borrower and Property Information

Borrower Name **PAULA L RUSH**  
Co-Borrower Name  
Property Address **2651 PEERY DRIVE, Churchville, MD 21028**  

SSN 218-  
SSN  

**Property Type**
- [X] 1 unit
- [ ] 2-4 units
- [ ] Condominium
- [ ] PUD  [ ] Co-op
- [ ] Manufactured Housing
  - [ ] Single Wide
  - [ ] Multiwide

**Project Classification**

Freddie Mac  /  Fannie Mae
- [ ] III Condo   [ ] P Limited Review New   [ ] E PUD
- [ ] II Condo   [ ] Q Limited Review Est.   [ ] F PUD
- [ ] I Condo    [ ] R Expedited New         [ ] 1 Co-op
- [ ] S Expedited Est.                       [ ] 2 Co-op
- [ ] T Fannie Mae Review
- [ ] U FHA-approved

Project Name

**Occupancy Status**
- [X] Primary Residence   [ ] Second Home
- [ ] Investment Property

**Additional Property Information**
Number of Units                1  
Sales Price              $  
Appraised Value          $ **782,000.00** ←

**Property Rights** [X] Fee Simple   [ ] Leasehold

## II. Mortgage Information

**Loan Type**
- [X] Conventional
- [ ] FHA
- [ ] VA
- [ ] USDA/RHS

**Amortization Type**
- [ ] Fixed-Rate -Monthly Payments
- [ ] Fixed-Rate -Biweekly Payments
- [ ] Balloon
- [X] ARM (type) **(AH) 1 MO.MTA**
- [ ] Other (specify)

**Loan Purpose**
- [ ] Purchase
- [X] Cash-Out Refinance
- [ ] Limited Cash-Out Refinance (Fannie)
- [ ] No Cash-Out Refinance (Freddie)
- [ ] Home Improvement
- [ ] Construction to Permanent

**Lien Position**
- [X] First Mortgage
Amount of Subordinate Financing

(If HELOC, include balance and credit limit)
- [ ] Second Mortgage

**Note Information**
Original Loan Amount $ **586,500.00**  
Initial P&I Payment $ **1,483.00**  
Initial Note Rate **1.000** % ←  
Loan Term (in months) **480**

**Mortgage Originator**
- [X] Seller
- [ ] Broker
- [ ] Correspondent

**Buydown**
- [ ] Yes
- [X] No

Terms

Broker/Correspondent Name and Company Name:
**The Loan Corporation**

**If Second Mortgage**
Owner of First Mortgage
- [ ] Fannie Mae   [ ] Freddie Mac
- [ ] Seller/Other

Original Loan Amount of First Mortgage
$

## III. Underwriting Information

Underwriter's Name **Janice Ritchie**  
Appraiser's Name/License # **JONATHAN P. ZETTS, JR. 11958**  
Appraisal Company Name **Homegate Settlement Services** ←

| Stable Monthly Income | Borrower | Co-Borrower | Total |
|---|---|---|---|
| Base Income | $ | $ | $ |
| Other Income | $ 14,123.00 | $ | $ 14,123.00 |
| Positive Cash Flow (subject property) | $ | $ | $ |
| Total Income | $ 14,123.00 | $ | $ 14,123.00 |

**Qualifying Ratios**
| | | **Loan-to-Value Ratios** | |
|---|---|---|---|
| Primary Housing Expense/Income | 21.992 % | LTV | 75.000 % |
| Total Obligations/Income | 34.744 % | CLTV/TLTV | 75.000 % |
| Debt-to-Housing Gap Ratio (Freddie) | 12.752 % | HCLTV/HTLTV | % |

**Qualifying Rate**
- [ ] Note Rate
- [X] 3.250 % Above Note Rate    **4.250** %
- [ ] % Below Note Rate    %
- [ ] Bought-Down Rate    %
- [ ] Other    %

**Level of Property Review**
- [X] Exterior/Interior
- [ ] Exterior Only
- [ ] No Appraisal
Form Number:  **500001**

**Risk Assessment**
- [ ] Manual Underwriting
- [X] AUS
  - [X] DU  [ ] LP  [ ] Other
AUS Recommendation **CDU Approve**  
DU Case ID/LP AUS Key # **0786893469**  
LP Doc Class (Freddie)  
Representative Credit/Indicator Score **643**  
Underwriter Comments

**Escrow (T&I)**
- [X] Yes  [ ] No

**Present Housing Payment:** $ **2,717.25**

**Proposed Monthly Payments**
Borrower's Primary Residence
| | |
|---|---|
| First Mortgage P&I | $ **2,543.18** |
| Second Mortgage P&I | $ |
| Hazard Insurance | $ **97.25** |
| Taxes | $ **465.50** |
| Mortgage Insurance | $ |
| HOA Fees | $ |
| Lease/Ground Rent | $ |
| Other | $ |
| Total Primary Housing Expense | $ **3,105.93** |
| Other Obligations | |
| Negative Cash Flow (subject property) | $ |
| All Other Monthly Payments | $ **1,801.00** |
| Total All Monthly Payments | $ **4,906.93** |

**Borrower Funds to Close**
| | |
|---|---|
| Required | $ **4,753.70** |
| Verified Assets | $ **56,432.00** |

**Source of Funds**
No. of Months Reserves    **27**  
Interested Party Contributions    %

**Community Lending/Affordable Housing Initiative**  [ ] Yes [ ] No  
Home Buyers/Homeownership Education Certificate in file  [ ] Yes [ ] No

## IV. Seller, Contract, and Contact Information

Seller Name **American Brokers Conduit**  
Seller Address **538 Broadhollow Road Melville, NY 11747**  
Seller No.            Investor Loan No.  
Seller Loan No.  
Master Commitment No.  
Contract No.  

Contact Name  
Contact Title  
Contact Phone Number          ext.  
Contact Signature  
Date **March 31, 2006**

Product code/Description: 1380/(AH) SISA 1 MO MTA 40YR  
Doc Type: SISA  
Freddie Mac Form 1077 06/05    Fannie Mae Form 1008 06/05

(VMP) -25N (0507)    VMP Mortgage Solutions, Inc. (800)521-7291

DOC #:333851          APPL #:0001222336          03/31/2006 9:37 AM

L27



### THIRD PARTY SERVICE PROVIDERS- ADDENDUM TO GOOD FAITH ESTIMATE

We will require the use of the following providers of settlement services, that we have repeatedly used or required borrowers to use within the last twelve months. Refer to your Good Faith Estimate for the estimated charges for these designated providers. Your HUD-1 Settlement Statement, which will be provided to you at closing, will disclose the service provider who actually provided the services and the actual cost paid by you.

Your appraisal, if required, will be provided by an approved appraisal company from a list we currently maintain. Some of our more frequently used appraisal companies are:

**First American e-Appraisal T**
12395 First American Way
Poway, CA 92064
(800) 281-6200

**Homegate Settlement Services, Inc**
520 Broadhollow Road
Melville, NY 11747
(800) 795-2377

*3rd Party ?*

Your credit report will be provided by the following credit reporting agency:

**Equifax Credit Information Services**
6 East Clementon Road, Suite 82
Gibbsboro, NJ 08026
(800) 333-0037

A search to determine if your home is located in a flood zone requiring flood insurance will be performed by one of the following companies:

**First American Flood Data Services**
11902 Burnet Road
Austin, TX 78758
(800) 447-1772

**Homegate Settlement Services, Inc**
520 Broadhollow Road
Melville, NY 11747
(800) 795-2377

Your tax service, if required, will be provided by one the following companies:

**First American Real Estate Tax Service, Inc.**
8435 Stemmons Freeway
Dallas, TX 75247
(800) 229-8426

**American Home Mortgage Servicing, Inc.**
4600 Regent Blvd.
Irving, Texas 75063
(877)-304-3100

If your loan will require mortgage insurance, we will select one of the following mortgage insurance companies:

**GE Capital Mortgage Insurance**
6601 Six Forks Road
Post Office Box 177800
Raleigh , NC 27619
(800) 334-9270

**Radian Services Inc.**
400 Market Street
Philadelphia, PA 19106-2513
(877) 723-4261

**PMI USA**
3003 Oak Road
Walnut Creek, CA 94597-2098
(800) 288-1970

**MGIC**
270 E. Kilbourn Avenue
Milwaukee, WI 53202
(800) 424-6442

**Triad Guarantee Insurance**
200 Lakeside Drive, Suite 224
Horsham, PA 19044
(800) 496-8885

*3/13/06    appraisal 2/22/06*

*L28*



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
2651 PEERY DRIVE
IMPSLOT 4 2 ACRES 2651 PEERY DRIVE HARLANS GLANCE P 112 78
CHURCHVILLE, MD 21028-1237

### FOR:
THE LOAN CORPORATION
4890 W KENNEDY BLVD #260
TAMPA, FL 33609



### AS OF:
2/22/2006

### BY:
JONATHAN P ZETTS JR.
1138 GAITHER ROAD
ROCKVILLE, MD 20850

L29

non-debtor entities.[4]  AHM Corp. is also a participant in the following joint ventures: Mortgage

First Limited, LLC; Array Mortgage, LLC; and American Midwest Title Agency, LLC.

### AHM Ventures

10.    AHM Ventures, a Delaware limited liability company, is a wholly owned

subsidiary of AHM Holdings, a Delaware corporation, that provides residential mortgage

brokerage services.  AHM Ventures also participates in several joint ventures.[5]

### Homegate

11.    Homegate, a New York corporation, is a wholly owned subsidiary of

AHM Corp., a New York corporation, that provides vendor management services to the Debtors'

loan origination affiliates.

### ~~Great Oak~~

12.    Great Oak, a New York corporation, is a wholly owned subsidiary of

AHM Corp., a New York corporation, that provides title search and related services in New York

State to certain of the Debtors' affiliates.

## C.    The Debtors' Businesses

### Overview of the Debtor's Business

13.    As noted above, the Debtors engaged in the origination of residential

mortgage loans through their retail business and their indirect business.  The Debtors' intention

was to sell many of the loans they originated, either by transfer into securitization transactions or

through whole loan sales to institutional purchasers.

---

[4]  These wholly owned non-debtor entities include: Broadhollow Funding, LLC, a Delaware limited liability company; AHM SPV I, LLC, a Delaware limited liability company; AHM SPV II, LLC, a Delaware limited liability company; American Home Mortgage Assets LLC, a Delaware limited liability company; Melville Reinsurance Corp., a Vermont corporation; and American Home Escrow, LLC, a Delaware limited liability company.

[5]  These joint ventures include: HSS Mortgage, LLC; All Pro Mortgage, LLC; Silicon Mortgage, LLC; TDG Equities, LLC; Elite Lending Partners, LLC; Peak Experience Mortgage, LLC; U.S. Lending Company, LLC; American Home Mortgage V, LLC; and Private Mortgage Group, LLC.

066585.1001

L30