# EXHIBIT  M

## Reading Your Rate Sheet

There are no Power ARM℠-specific changes when you Auto Lock the Power ARM℠ in Loansoft. However, there are fields that you must complete that are not used on other types of loan programs.

The adjustments to this program are all margin-based. You will either add or subtract from the margin. Please note that the adjustments are based on criteria listed at the bottom of your Rate Sheet. The following page shows a sample of the Rate Sheet used for Power ARMs℠.

*Power ARM℠ pricing adjustments are all margin-based.*

**AH Power ARM℠ (MTA)**

PLEASE REFER TO GUIDELINES FOR STATE AVAILABLITY

OWNER OCCUPIED

12 MO MTA 1.463

PLEASE SEE ADJUSTMENTS AT THE BOTTOM OF THE PAGE

| 1 MONTH | | | | Life Cap 9.95% | |
|---|---|---|---|---|---|
| START RATE | MARGIN | QUAL RATE | PTS | PREPAY | LTV |
| 1.000 | 2.400 | 4.250 | 0.250 | N/A | <=80 |
| 1.000 | 2.590 | 4.250 | (0.250) | N/A | <=80 |
| 1.000 | 2.780 | 4.250 | (0.750) | 1YR* | <=80 |
| 2.000 | 2.400 | 4.250 | 0.250 | N/A | <=90 |
| 2.000 | 2.590 | 4.250 | (0.250) | N/A | <=90 |
| 2.000 | 2.780 | 4.250 | (0.750) | 1YR* | <=90 |
| 3.000 | 2.400 | 4.250 | 0.250 | N/A | <=95 |
| 3.000 | 2.590 | 4.250 | (0.250) | N/A | <=95 |
| 3.000 | 2.780 | 4.250 | (0.750) | 1YR* | <=95 |

MIN QUAL RATE = 4.95% FOR > 90% LTV

| PRODUCT CODES | 30 YR | 40 YR |
|---|---|---|
| FIFA | 1281 | 1292 |
| INVESTMENT PROPERTY - LIFE CAP 10.35% | 1349 | 1350 |
| SIFA - MAX 80% LTV | 1323 | 1324 |
| SIFA - MAX 70% LTV, INVEST PROP, LIFE CAP 10.35 | 1357 | 1358 |
| NON-WARRANTABLE NEW CONSTRUCTION CONDO | 1365 | N/A |
| SISA MAX 75% LTV | 1376 | 1380 |
| SISA INVEST PROP MAX 70 LTV | 1384 | 1388 |

| 3 MONTH | | | | Life Cap 9.95% | |
|---|---|---|---|---|---|
| START RATE | MARGIN | QUAL RATE | PTS | PREPAY | LTV |
| 1.750 | 2.500 | 4.250 | 0.250 | N/A | <=80 |
| 1.750 | 2.690 | 4.250 | (0.250) | N/A | <=80 |
| 1.750 | 2.880 | 4.250 | (0.750) | 1YR* | <=80 |
| 2.750 | 2.500 | 4.250 | 0.250 | N/A | <=90 |
| 2.750 | 2.690 | 4.250 | (0.250) | N/A | <=90 |
| 2.750 | 2.880 | 4.250 | (0.750) | 1YR* | <=90 |
| 3.750 | 2.500 | 4.250 | 0.250 | N/A | <=95 |
| 3.750 | 2.690 | 4.250 | (0.250) | N/A | <=85 |
| 3.750 | 2.880 | 4.250 | (0.750) | 1YR* | <=85 |

MIN QUAL RATE = 4.95% FOR > 90% LTV

| PRODUCT CODES | 30 YR | 40 YR |
|---|---|---|
| FIFA | 1299 | 1300 |
| INVESTMENT PROPERTY - LIFE CAP 10.35% | 1351 | 1352 |
| SIFA - MAX 80% LTV | 1327 | 1336 |
| SIFA - MAX 70% LTV, INVEST PROP, LIFE CAP 10.35 | 1359 | 1360 |
| NON-WARRANTABLE NEW CONSTRUCTION CONDO | 1388 | N/A |
| SISA MAX 75% LTV | 1377 | 1381 |
| SISA INVEST PROP MAX 70 LTV | 1385 | 1389 |

OWNER OCCUPIED

| 1 MONTH 90% LPMI | | | | Life Cap 10.55% | |
|---|---|---|---|---|---|
| 30 YR FIFA PROD CODE - 1295, 40 YR CODE - 1296 | | | | | |
| START RATE | MARGIN | QUAL RATE | PTS | PREPAY | LTV |
| 2.600 | 3.000 | 4.750 | 0.250 | N/A | <=90 |
| 2.600 | 3.100 | 4.750 | 0.000 | N/A | <=90 |
| 2.600 | 3.200 | 4.750 | (0.250) | N/A | <=90 |
| 2.600 | 3.300 | 4.750 | (0.500) | 1YR* | <=90 |
| 2.600 | 3.400 | 4.750 | (0.750) | 1YR* | <=90 |

| 3 MONTH 90% LPMI | | | | Life Cap 10.55% | |
|---|---|---|---|---|---|
| 30 YR FIFA PROD CODE - 1303, 40 YR CODE - 1304 | | | | | |
| START RATE | MARGIN | QUAL RATE | PTS | PREPAY | LTV |
| 3.350 | 3.100 | 4.750 | 0.250 | N/A | <=90 |
| 3.350 | 3.300 | 4.750 | (0.250) | N/A | <=90 |
| 3.350 | 3.500 | 4.750 | (0.750) | 1YR* | <=90 |

| 6 MONTH 90% LPMI | | | | Life Cap 10.55% | |
|---|---|---|---|---|---|
| 30 YR FIFA PROD CODE - 1311, 40 YR CODE - 1312 | | | | | |
| START RATE | MARGIN | QUAL RATE | PTS | PREPAY | LTV |
| 5.500 | 3.150 | 4.750 | 0.250 | N/A | <=90 |
| 5.500 | 5.500 | 5.500 | 5.500 | N/A | <=90 |
| 5.500 | 5.500 | 5.500 | 5.500 | 1YR* | <=90 |

| 12 MONTH 90% LPMI | | | | Life Cap 10.55% | |
|---|---|---|---|---|---|
| 30 YR FIFA PROD CODE - 1319, 40 YR CODE - 1320 | | | | | |
| START RATE | MARGIN | QUAL RATE | PTS | PREPAY | LTV |
| 6.050 | 3.350 | 4.750 | 0.250 | N/A | <=90 |
| 6.050 | 3.450 | 4.750 | (0.250) | N/A | <=90 |
| 6.050 | 3.550 | 4.750 | (0.750) | 1YR* | <=90 |

| ADJUSTMENTS | + MARGIN |
|---|---|
| COOPS - NY PROPERTIES ONLY | 0.050% |
| 40 YR (ADD .50% TO START RATE) | 0.070% |
| LOAN AMT >1.5MM (ADD .25% TO RATE) | 0.250% |
| SISA 1 MO, CREDIT SCORE< 680 | 0.250% |
| SISA 1 MO INVEST PROP, CDT SC<680 | 0.250% |
| C/O OR R/T REFI (1 MO AND 3 MO ONLY) | 0.200% |
| LOAN AMOUNTS $30,000 - $59,999 | 0.250% |
| 3 - 4 UNITS (NOT AVAILABLE FOR LENDER PD) | 0.140% |

| ADJUSTMENTS | + MARGIN |
|---|---|
| NOO (.40% TO START RATE, .40% TO CAP, .25% QUAL RATE) | 0.400% |
| * NC & SC FOR LOAN AMT < $150k IN PLACE OF 1 YR PP | 0.150% |
| SISA 3, 6, & 12 MO, CDT SC< 680 (+ 0.25% TO RATE) | 0.250% |
| SISA 3, 6, & 12 MO INVEST PROP CDT SC<680 (+ 0.25% TO RATE) | 0.250% |

| PLEASE NOTE |
|---|
| 3 - 4 UNITS - NOT AVAILABLE FOR LENDER PD |
| NOO - NOT AVAILABLE FOR LENDER PD |

| ADDITIONAL FIFA ADJUSTMENTS | |
|---|---|
| PRIMARY PURCH & LIMITED C/O REFI 1 UNIT, CONDO, PUD ONLY | + MARGIN |
| >$500K<= $650K, 85.01-90% LTV, 680-699 CDT SCR | 0.175% |
| >$500K<= $650K, 85.01-90% LTV, >= 700 SCR | 0.140% |
| >$1M <= $1.5M, 75.01-80% LTV, 680-699 CDT SCR | 0.175% |
| >$1M <= $1.5M, 75.01-80% LTV, >= 700 SCR | 0.140% |
| PRIMARY - C/O REFI 1 UNIT, CONDO, PUD ONLY | |
| >$1M <= $1.5M, 75.01-80% LTV, 680-699 CDT SCR | 0.210% |
| >$1M <= $1.5M, 75.01-80% LTV, >= 700 SCR | 0.175% |
| 2ND HOME PURCH & LIMITED C/O REFI | |
| >$700K <= $1M, 70.01-75% LTV, 680-699 CDT SCR | 0.175% |
| >$700K <= $1M, 70.01-75% LTV, >= 700 CDT SCR | 0.140% |
| >$1M <= $1.5M, 65.01-70% LTV, 680-699 CDT SCR | 0.175% |
| >$1M <= $1.5M, 65.01-70% LTV, >= 700 SCR | 0.140% |
| 2ND HOME C/O REFI | |
| $333,701 <= $1M, 75.01-80% LTV, 680-699 CDT SCR | 0.210% |
| $333,701 <= $1M, 75.01-80% LTV, >=700 CDT SCR | 0.175% |
| >$700K <= $1M, 60.01-75% LTV, 680-699 CDT SCR | 0.210% |
| >$700K <= $1M, 60.01-75% LTV, >=700 CDT SCR | 0.175% |

PLEASE REFER TO GUIDELINES FOR STATE AVAILABLITY

The following pages display sections of Loansoft that contain Power ARM℠ specific fields. The first screen is the Loan Term Screen, which can be found by scrolling to the bottom of the screen selections.

RATE SHEET M32

American Home Mortgage

Home | Apply Now | Business Partners | Consumers | Tools & Information | Investor Relations | Loan Performance

**Business Partners** > American Brokers Conduit

American Brokers Conduit

ABC Overview
www.americanhm.com

Learn more about ABC's products and services!
Visit www.abcconduit.com today!

## American Brokers Conduit (ABC)

**American Home Mortgage's wholesale division offers Mortgage Broker services.**

ABC is the fastest growing and 10th largest wholesale lender in the nation. Currently ABC has more than 8,000 broker partners and 25 branches nationwide. The company's tremendous growth can be attributed to an innovative, dynamic and flexible product portfolio, exceptional support and service, top-notch marketing materials and outstanding technology tools, including ABC's website www.abcconduit.com.

ABC's user-friendly website, featuring e-Conduit, allows ABC mortgage broker partners the ability to lock loans online, extend locks, view and print complete pipeline information, view conditions and more. In addition, ABC's Product Advisor website tool acts as a brokers' personal search engine — allowing brokers to search for and find the perfect products for their borrowers in just seconds.

In addition, ABC's website provides broker partners with access to current rates, a 60-day rate archive, product guidelines and matrices, marketing tools, and a resource center full of useful items, including our broker guides, forms and reports. Best of all, ABC broker partners have access to these tools and more 24-hours a day, seven days a week.

About Us | Contact Us | Careers | Sitemap | Security | Licensing | Privacy Policy | Copyright Notices

BROKER PARTNERS

Agency

M33

ADDENDUM A

**Closing Costs/Wire Transfer Information:** Application #: 0001222336

**Borrower and Property Information:**

**Borrower(s):**
(M,N) PAULA LYNN RUSH

**Property:**
2651 FEERY DRIVE
Churchville,MD 21028

**Title Company:**
CHICAGO TITLE INSURANCE
601 Riverside Ave
Jacksonville,FL 32204
Contact: GARY URQUHART
Telephone: (888) 934-3354
Fax: (312) 223-2815

**Settlement Agent:**
SERVICE LINK
4000 INDUSTRIAL BLVD.
Aliquippa,PA 15001
Contact: Tracey
Telephone: (888) 414-6616
Fax: (877) 798-2811

**Wire Instructions:**

| | |
|---|---|
| Financial Institution: | PNC BANK |
| ABA #: | 043000096 |
| Account Name: | SERVICE LINK |
| Account #: | 1017306676 |
| Attention: | Rush |

**IMPORTANT: If you do not receive the wire, please call the Treasury Help Desk at 1-866-226-1997. - ALL OTHER QUESTIONS RELATING TO THE FUNDING should be directed to Leon Riddick at 866-363-7965** ext. **000-000-0000.**

**At the time of closing the following fees are due and have been deducted from the loan amount.**

| **Fee Section:** | Total Fee | Borrower | Seller | Vendor |
|---|---|---|---|---|
| Commitment Fee | $480.00 | 480.00 | .00 | American Brokers Conduit |
| Prepaid Int.(024 Days) | $391.00 | 391.00 | .00 | American Brokers Conduit |
| Tax Service | $75.00 | 75.00 | .00 | American Brokers Conduit |
| Flood Hazard Fee | $19.00 | 19.00 | .00 | |
| **TOTAL FEES:** | $965.00 | | | |
| **LESS POC/COUPONS/CREDITS:** | | | | |
| Paid on Account | $0.00 | | | |
| **TOTAL PREPAIDS** | $0.00 | | | |
| **TOTAL DUE:** | $965.00 | | | |

**Escrow Breakdown:**

| | | |
|---|---|---|
| State/County Tax | 2 mos @ $464.47 | $928.94 |
| Haz. Insurance | 9 mos @ $107.67 | $969.03 |
| SUB TOTAL ESCROWS | | $1,897.97 |
| AGGREGATE ESCROW ADJ. | | $679.85- |
| **TOTAL ESCROW** | | $1,218.12 |

The loan will be funded as follows:

| | |
|---|---|
| Loan Amount | $586,500.00 |
| **LESS** Lender Closing Fees | $965.00 |
| **LESS** Escrow | $1,218.12 |
| **NET PROCEEDS DUE BORROWER** | $584,316.88 |
| **PLUS** Mortgage Tax | $0.00 |
| **PLUS** Assignment Recording Fees | $0.00 |
| **PLUS** Broker Premium by Lender | $19,794.38 |
| **PLUS** Attorney Fees | $0.00 |
| **PLUS** Other | |
| **TOTAL AMOUNT OF WIRE** | $604,111.26 |

**BROKER FEES NOT DEDUCTED FROM WIRE!**
Broker: The Loan Corporation

| | Borrower | Seller |
|---|---|---|
| PROCESSING | 810.00 | .00 |

2

NOT POC

M34

abc American Brokers Conduit
A Division of American Home Mortgage

4/3/07
Attn File

**Settlement Information & Fee Sheet**
*All States Except New York*

(4)
17 Pages

**VIRGINIA OFFICE**
PHONE: 866-363-7965 FAX: 866-876-3396
EMAIL: abcchantillyclosing@abconduit.com

This information should be as accurate as possible to the best of your knowledge and should be completed upon the completion of processing and prior to the preparation of closing documents for settlement.

LOAN # 1222336

ESTIMATED Closing Date: 4/4 TIME: AM DISB DATE: 4/06 LOCK EXP DATE: 5/15 (Must close & disburse by this date)

BORROWER(S): PAULA L. RUSH

(AS THEY WISH TO APPEAR ON ALL LEGAL DOCUMENTS AND TITLE)
( ) AN UNMARRIED MAN/WOMAN ( ) HIS WIFE ( ) HER HUSBAND
( ) HUSBAND & WIFE ( ) WIFE & HUSBAND

PROPERTY ADDRESS: 2651 PERRY DR. CHURCHVILLE, MD 21028

LOAN AMOUNT: $ 586,500 -

VALUE: $ 782,000. -

SALES PRICE: $ NA

LTV: 75 % CLTV: 75 %

☐ PURCH ☐ R/T REFI ☒ C/O REFI ☐ PRIMARY ☐ 2nd ☐ INVEST

PROD CODE: 1380 RATE: 1.00 % TERM 40

PROD: FXD ☐ 15 ☐ 30 ARM ☐ 3/1 ☐ 5/1 ☐ 7/1 Other: ______

TERM: ☒ 480 ☐ 360 ☐ 240 ☐ 180 ☐ 120 Other: ______

MI: ZERO MONTHLY ☐ Y ☐ N OTHER: ______

WAIVE ESCROWS ☐ Y ☒ N

INTEREST CREDIT ☐ Y ☒ N

BROKER: THE LOAN CORP.

ADDRESS: 4830 N. KENNEDY BLVD. TAMPA, FL 33609

PHONE: 813 639-9696 EXT. 105

FAX: 866 706-3089

CONTACT: Nat

E-MAIL NSYCIP @ TLCFL.COM

SETTLEMENT AGENT: SERVICE LINK

ADDRESS: 4000 INDUSTRIAL BLVD. ALIQUIPPA, PA 15001

PHONE: 800 439-5451 EXT. 7114

FAX: 877 798-2811

CONTACT: TRACEY W.

E-MAIL LOANCORPDOCS@SERVICELINKLP.COM

| *Broker Fees* | | POC | Collect from Borrower | Collect from Seller | Make Payable To |
|---|---|---|---|---|---|
| Origination Fee | | | | | |
| Discount Points | | | | | |
| Billed Appraisal Fee *Pay to:* | | | | | |
| Billed Credit Report *Pay to:* | | | | | |
| Courier Fee *Pay to:* | | | | | |
| Doc Preparation Fee | | | | | |
| Processing Fee | | | 810.00 | | |
| Mortgage Broker Fee | | | | | |
| *Title Fees* | | | | | |
| Title Settlement Fee | | | | | |
| Other | | | | | |

| *ABC Fees* | CONV | FHA | | | |
|---|---|---|---|---|---|
| Points to ABC ______ % | — | — | | | |
| Commitment Fee CONV | $480.00 | N/A | | | |
| Commitment Fee FHA | N/A | $355.00* | N/A | | |
| Tax Service Fee | $ 75.00 | N/A | | | |
| Flood Cert Fee | $ 15.00 | $ 15.00 | | | |
| Second Trust | $200.00 | N/A | | | |
| Co-Op Lien Search | $300.00 | | | | |
| Other: | | | | | |
| Other: | | | | | |

*Non-Allowable charge to borrower. Purchase Transaction – Seller charge Refinance Transaction – Broker charge

BROKER CREDIT TO BORROWER: $ 4,000.00

YIELD SPREAD PREMIUM PAID TO BROKER: 3.375 % $ 19,794.38

www.ABConduit.com

6/22/05

M35

# EXHIBIT N

# INVOICE

Invoice Date: 03/10/2006

Client Name: THE LOAN CORPORATION (TAMPA)
Contact Name: NIKI RICE
Loan No: NA
Order No:1149536-1
Loan Amount: $849,000.00
Closing Date:
Customer Name: PAULA RUSH
Property Address: 2651 PEERY DR, CHURCHVILLE, MD 21028-1237
Property County: HARFORD

| HUD Line Item | Description | Amount |
|---|---|---|
| 1101 | SCF - SETTLEMENT OR CLOSING FEE | $450.00 |
| 1102 | ABS - ABSTRACT OR TITLE SEARCH | $210.00 |
| 1104 | SGF - SIGNING FEE | $100.00 |
| 1108 | LPR - LENDERS POLICY (REISSUE) | $982.15 |
| 1111 | E81 - ALTA 8.1-ENVIRONMENTAL | $0.00 |
| 1111 | ESC - ALTA SURVEY COVERAGE | $0.00 |
| | Invoice Total: | $1,742.15 |

Fee $450 $210

1130.90
-982.15
$148.75

This is a preliminary rate quote for the stated loan amount. If the loan amount changes or additional endorsements are required, please contact ServiceLink at 800-439-5451 for a revised quote.

NOTE: PLEASE CONTACT THE SERVICELINK SCHEDULING DEPARTMENT AT 800-439-5451 IN ORDER TO SCHEDULE YOUR LOAN CLOSING.

**Wire Instructions:**

Account Name: Service Link Closing Disbursement Trust Account
Bank Name: PNC Bank
Account No: 1017306676
Bank Address: Wire Transfer, 3rd Floor
Firstside Center
500 1st Avenue
Pittsburgh, PA 15219
ABA Routing No: 043000096

If you require further information or have any questions please call TRACEY WELCH at (800) 439-5451 Ext. 7114

Page 7 of 7 — 1149536 - 1

Knew Fees 3/10/06
Good Faith 3/13/06 - Different Fees disclosed

N 36

Attn file 10/31/07

(1)

ServiceLink, division of Chicago Title Insurance Company
Commitment No:1149536 - 1

2/7/06

Schedule A

1. Commitment Effective Date: 02/07/2006

2. Policy (or Policies) to be issued:

| | | Amount |
|---|---|---|
| (a) Owner's Policy | (ALTA Owners Policy (10/17/92)) | $0.00 |
| (b) Loan Policy | (ALTA Loan Policy (10/17/92)) | $649,000.00 |

Proposed Insured: AMERICAN BROKERS CONDUIT, its successors and/or assigns as their interest may appear

3. Fee Simple Interest in the land described in this Commitment is owned, at the Commitment Date, by:

Paula Lynn Rush, as sole owner, by Deed from Gemcraft Homes, Inc. dated 10/19/2004 and recorded 12/13/2004 in Liber 5762, Folio 1, for the consideration of $551,670.00.

4. The land referred to in this Commitment is described as follows:

**See Exhibit A attached hereto and made a part hereof**

Tax ID: 03-366189

ServiceLink, division of Chicago Title Insurance Company

Susan B. Fabbretti

Alta Commitment
Schedule A (10/17/92)

Valid only if Schedule B and Cover are attached
1149536 - 1

N36

# GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

Applicants: PAULA L RUSH

Property Address: 2651 PEERY DRIVE
Churchville, MD 21028

Application No: LC050924

Prepared By: The Loan Corporation
4890 W Kennedy Blvd #260
Tampa, FL 33609
813-639-9696

Date Prepared: 02/17/2006

Lender requires use of the following provider(s) of settlement services (If none are listed, Lender does not require the use of specified providers):

Provider CBA Information Solutions
Address 4 Executive Campus
Cherry Hill, NJ 08002
Phone 866-366-8308

Services to be rendered by this provider are items number

above and the amounts listed are based upon the charges of this provider. If checked, Lender has the following type of business relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment, franchise or other business relationship with Lender.

[ ] Within the last 12 months, the provider has maintained an account with Lender or had an outstanding loan or credit arrangement with Lender.

[√] Within the last 12 months, Lender has repeatedly used or required borrowers to use the services of this provider.

Provider Service Link
Address 4000 Industrial Blvd
Aliquippa, PA 15001
Phone 800-439-5451

Services to be rendered by this provider are items number
001

above and the amounts listed are based upon the charges of this provider. If checked, Lender has the following type of business relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment, franchise or other business relationship with Lender.

[ ] Within the last 12 months, the provider has maintained an account with Lender or had an outstanding loan or credit arrangement with Lender.

[√] Within the last 12 months, Lender has repeatedly used or required borrowers to use the services of this provider.

Non-disclosure

Applicant PAULA L RUSH — Date 3/3/06

Applicant — Date

Applicant — Date

Applicant — Date

N37

# Maryland Title Insurance Rate Calculator

| Sale Price | 586500 | Mortgage Amount | 586500 |
|---|---|---|---|
| | Chicago | Lawyers | Stewart |
| Owner + Loan | 1877.50 | 1889.25 | 1877.50 |
| Owner | 1842.50 | 1864.25 | 1842.50 |
| Loan | 1277.25 | 1299.00 | 1277.25 |
| Re-Issue + Loan | 1140.50 | 1143.55 | 1140.50 |
| Re-Issue | 1105.50 | 1118.55 | 1105.50 |
| Re-Finance | 766.35 | 779.40 | 766.35 |
| Advantage Owner | 2211.00 | | |
| | Calculate | | Reset |

This page has been accessed [counter] times since January 15, 2006
Copyright 1998 - 2008 by, Alpha Advertising, All rights reserved.
Page written January 15, 2006, Last Updated April 28, 2008

Calculate | | | | | Title Insurance Rates

# EXHIBIT O

**APR Disclosure Documentation**

---

| | |
|---|---|
| Prepared By: | Paula Rush |
| Date: | 6/10/2008 |
| Borrower's Name: | Paula Rush |
| Account Number: | 1223336 |
| Name of Lender: | American Home Mortgage |
| Original Creditor: | American Home Mortgage |

*Loan Information - Original Input*

| | |
|---|---|
| Amount Financed: | $584,125.00 |
| Disclosed (Estimated) APR: | 7.4680 % |
| Disclosed Finance Charge: | $1,562,548.00 |
| Loan Secured by Real Estate or Dwelling: | Yes |
| Loan Date Earlier than 9/30/95: | No |

Payment Frequency: Monthly (Installment Loan)

*Disclosure Information - Output*

| | |
|---|---|
| Amount Financed: | $584,125.00 |
| FINANCE CHARGE: | $1,562,435.00 |
| Total of Payments: | $2,146,560.00 |
| ANNUAL PERCENTAGE RATE: | 8.9250 % |

← Disclosed Final

** VIOLATION ** APR is understated by: 1.4570 %

.25% tolerance

OCC Web Site

039

** Truth in Lending Reimbursement Documentation **

| Adjusted APR | Prorate Factor | APR Adjustment as of Final Payment Date |
|---|---|---|
| 7.593 % | .8685513688 | ($1,825,366.09) |

| Pymt Stream | Original Payment Amount | Adjusted Payment Amount | # of Payments | Whole Unit Periods | Odd Days |
|---|---|---|---|---|---|
| 1 | $4,472.00 | $3,884.16 | 480 | 1 | 0 |

dif.

Lump Sum / Payment Reduction Method: ($15,183.97)
Payments 1 - 24

Lump Sum Method: ($102,851.48) Life of Loan
Payments 1 - 480

** NOTE **

For fixed-rate loans, the life of loan APR adjustment is the APR ADJUSTMENT AS OF FINAL PAYMENT DATE. For variable rate loans the life of loan APR adjustment is the adjustment as of the end of the first rate change period (i.e., the lump sum value from the LUMP SUM / PAYMENT REDUCTION METHOD).

The appropriate adjustment may be calculated by using either the Lump Sum or Lump Sum/Payment Reduction method.

For variable rate loans, if the rate change date has not yet occurred, the lump sum payment applicable to the entire rate change period may be calculated as of the date of adjustment (i.e., determine its present value for an APR adjustment or, if applicable, calculate the prorated share of the finance charge adjustment).

For single payment loans, adjust the payment or, if the payment has not yet been made, the creditor may calculate the adjustment as a lump sum payment as of the date of adjustment (i.e., its present value is determined).

The Loan I gave Up for Refinance

| Principal | Payment | Rate | Total Interest | Total Loan Value |
|---|---|---|---|---|
| $567000.00 | $3130.99 | 5.2500% | $560156.40 | $1127156.40 |

The American Home documents say this APR interest rate.

| Principal | Payment | Rate | Total Interest | Total Loan Value |
|---|---|---|---|---|
| $584125.00 | $3830.15 | 7.4680% | $1254347.00 | $1838472.00 |

To arrive at the final figure of loan value the interest rate would be 8.9250% to start.

| Principal | Payment | Rate | Total Interest | Total Loan Value |
|---|---|---|---|---|
| $584125.00 | $4472.02 | 8.9250% | $1562444.60 | $2146569.60 |

YEAR ONE

Loan balance and interest rate accelerated to this figure in first year.

| Principal | Payment | Rate | Total Interest | Total Loan Value |
|---|---|---|---|---|
| $610000.00 | $4658.40 | 8.9000% | $1626032.00 | $2236032.00 |

YEAR TWO

By year two the loan balance will accelerate and the interest rate will likely rise to this figure.

| Principal | Payment | Rate | Total Interest | Total Loan Value |
|---|---|---|---|---|
| $635000.00 | $5367.16 | 9.9500% | $1941236.80 | $2576236.80 |

To reach these numbers on a straight amortization you would need to use these interest rates.

This is still a 480 month amortization with the same starting balance.

| Principal | Payment | Rate | Total Interest | Total Loan Value |
|---|---|---|---|---|
| $584125.00 | $5375.86 | 10.9000% | $1996287.80 | $2580412.80 |

So the more accurate Interest Rate on this loan would have been 11% or higher.

American Home Mortgage uses an interest rate of 1% plastered all over documents, which only lasts for less than one month, to alter the TILA disclosures to appear that a person is paying much less and the total cost of the loan is much less. This is purposeful and intentionally deceitful and against all mandates for disclosure.

American Home further hides the payment schedule a borrower would have to pay to NOT Incur the negative amortization aspect of this loan. All payment disclosure list only the minimum Payment required and nowhere is a fully amortized payment listed or an amortization schedule given.

040

# EXHIBIT P

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower

Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

Mortgage Applied for: [ ] VA [X] Conventional [ ] Other (explain): [ ] FHA [ ] USDA/Rural Housing Service

Agency Case Number | Lender Case Number

| Amount | Interest Rate | No. of Months | Amortization Type |
|---|---|---|---|
| $ 586,500.00 | [illegible] % | 480 | [ ] Fixed Rate [ ] GPM [ ] Other (explain): [X] ARM (type): (AH) 1 MO.MTA |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state & ZIP): 2651 PEERY DRIVE, Churchville, MD 21028

No. of Units: 1

Legal Description of Subject Property (attach description if necessary): SEE ATTACHED LEGAL DESCRIPTION

Year Built: 2004

Purpose of Loan: [ ] Purchase [ ] Construction [ ] Other (explain): [X] Refinance [ ] Construction-Permanent

Property will be: [X] Primary Residence [ ] Secondary Residence [ ] Investment

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made |
|---|---|---|---|---|
| 2004 | $ 551,670.00 | $ 441,000.00 | Cash-Out/Other | Cost: $ |

Title will be held in what Name(s): PAULA L RUSH

Manner in which Title will be held: Single woman

Estate will be held in: [X] Fee Simple [ ] Leasehold (show expiration date)

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

**Borrower**

Borrower's Name (include Jr. or Sr. if applicable): PAULA LYNN RUSH

Social Security Number: [redacted] | Home Phone (incl. area code): (443) 676-3509 | DOB (mm/dd/yyyy): 07/11/1960 | Yrs. School: 16/00

[ ] Married [X] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) no.: 0 ages:

Present Address (street, city, state, ZIP) [X] Own [ ] Rent 1/06 No. Yrs.
2651 PEERY DRIVE
Churchville, MD 21028

Mailing Address, if different from Present Address

**Co-Borrower**

Co-Borrower's Name (include Jr. or Sr. if applicable)

Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School

[ ] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Borrower) no. ages

Present Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs.

Mailing Address, if different from Present Address

If residing at present address for less than two years, complete the following:

Former Address (street, city, state, ZIP) [X] Own [ ] Rent 2/00 No. Yrs.
115 SPRY ISLAND ROAD
Joppa, MD 21085

Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs.

## IV. EMPLOYMENT INFORMATION

**Borrower**

Name & Address of Employer [X] Self Employed
RESTORED DECOR
1445 ROCKSPRING ROAD
Bel Air, MD 21014

Yrs. on this job: 9/00

Yrs. employed in this line of work/profession: 9/00

Position/Title/Type of Business: OWNER/OPERATOR Furniture Restoration

Business Phone (incl. area code): (443) 676-3509

**Co-Borrower**

Name & Address of Employer [ ] Self Employed

Yrs. on this job

Yrs. employed in this line of work/profession

Position/Title/Type of Business | Business Phone (incl. area code)

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

Name & Address of Employer [ ] Self Employed | Dates (from - to) | Monthly Income $

Position/Title/Type of Business | Business Phone (incl. area code)

Name & Address of Employer [ ] Self Employed | Dates (from - to) | Monthly Income $

Position/Title/Type of Business | Business Phone (incl. area code)

Name & Address of Employer [ ] Self Employed | Dates (from - to) | Monthly Income $

Position/Title/Type of Business | Business Phone (incl. area code)

Name & Address of Employer [ ] Self Employed | Dates (from - to) | Monthly Income $

Position/Title/Type of Business | Business Phone (incl. area code)

APP # 0001222336

03/31/2006 1:03 PM

1 19 2 Non disclosure neg AM 3 4 7 8 6 5 P41

# GOOD FAITH ESTIMATE

Applicants: PAULA L RUSH
Property Addr: 2551 PEERY DRIVE, [redacted]ville, MD 21028
Prepared By: The Loan Corporation Ph. 813-639-9696
4890 W Kennedy Blvd #260, Tampa, FL 33609

Application No: LC060924
Date Prepared: 02/17/2006
Loan Program: 1 Mo MTA ARM

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ 649,000 Interest Rate: 1.000 % Term: 480 / 480 mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 801 | Loan Origination Fee | | $ | | ✓ | | | |
| 802 | Loan Discount | 0.000% + $ 0.00 | | | ✓ | | | |
| 803 | Appraisal Fee | | | (400.00) | ✓ | | | ✓ |
| 804 | Credit Report | | | | ✓ | | | |
| 805 | Lender's Inspection Fee | | | | ✓ | | | |
| 808 | Mortgage Broker Fee | 0.000% | | | ✓ | | | |
| 809 | Tax Related Service Fee | | | 75.00 | ✓ | | | |
| 810 | Processing Fee | | | 550.00 | ✓ | | | |
| 811 | Underwriting Fee | | | | ✓ | | | |
| 812 | Wire Transfer Fee | | | 25.00 | ✓ | | | |
| | Investor Administrative | | | 480.00 | ✓ | | | |
| | FLOOD CERTIFICATION | | | 19.00 | ✓ | | | |
| | ADMINISTRATION | | | 260.00 | ✓ | | | |
| | | | | | ✓ | | | |
| | Document Delivery Fee | | | | ✓ | | | |

| 1100 | TITLE CHARGES: | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1101 | Closing or Escrow Fee: | TITLE CO | $ | 300.00 | ✓ | | | |
| 1105 | Document Preparation Fee | | | | ✓ | | | |
| 1106 | Notary Fees | | | | ✓ | | | |
| 1107 | Attorney Fees | | | | ✓ | | | |
| 1108 | Title Insurance: | MD Reissue Title | | 1,623.00 | ✓ | | | |
| | ABSTRACTING FEE | | | 75.00 | ✓ | | | |
| | TITLE EXAM FEE | | | 75.00 | ✓ | | | |
| | TITLE COMPANY SHIPPING FEE | | | | ✓ | | | |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1201 | Recording Fees: | COUNTY | $ | 95.00 | ✓ | | | |
| 1202 | City/County Tax/Stamps: | | | | | | | |
| 1203 | State Tax/Stamps: | | | | | | | |
| | Mortgage Stamps | | | 2,271.50 | ✓ | | | |
| | BROKER CREDIT | | | -6,073.00 | ✓ | | | |
| | | | | | ✓ | | | |

| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1302 | Pest Inspection | | $ | | ✓ | | | |
| | | | | | ✓ | | | |
| | MORTGAGE SATISFACTION | | | 75.00 | ✓ | | | |
| | Endorsements | | | 150.00 | ✓ | | | |
| | Title Exam | | | | | | | |
| | Title Search | | | | | | | |
| | | *Estimated Closing Costs* | | 0.50 | | | | |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|---|
| 901 | Interest for | days @ $ 18.0278 | per day | $ | | ✓ | | | |
| 902 | Mortgage Insurance Premium | | | | | ✓ | | | |
| 903 | Hazard Insurance Premium | | | | | | | | |
| 904 | INTERIM INTEREST | | | | 1,750.00 | | | | |
| 905 | VA Funding Fee | | | | | ✓ | | | |
| | | | | | | ✓ | | | |

| 1000 | RESERVES DEPOSITED WITH LENDER: | | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premium | 6 months @ $ | 300.00 | per month | $ | 1,800.00 | | | | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | | | | | | |
| 1003 | School Tax | months @ $ | | per month | | | | | | |
| 1004 | Taxes and Assessment Reserves | 6 months @ $ | 465.50 | per month | | 2,793.00 | | | | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | | | | | | |
| | | months @ $ | | per month | | | | | | |
| | | months @ $ | | per month | | | | | | |
| | Aggregate Adjustment | | | | | | | | | |
| | | | *Estimated Prepaid Items/Reserves* | | | 6,343.00 | | | | |

TOTAL ESTIMATED SETTLEMENT CHARGES 6,343.50

| COMPENSATION TO BROKER (Not Paid Out of Loan Proceeds): | | |
|---|---|---|
| Yield Spread Premium Paid to The Loan Corporation | $ | 0.00 |
| Range: 0% to 3.875 | | 25,148.75 |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|---|
| Purchase Price/Payoff (+) | 574,700.00 | New First Mortgage(-) | Principal & Interest | 1,641.04 |
| Loan Amount (-) | 649,000.00 | Sub Financing(-) | Other Financing (P & I) | |
| Est. Closing Costs (+) | 0.50 | New 2nd Mtg Closing Costs(+) | Hazard Insurance | 300.00 |
| Est. Prepaid Items/Reserves (+) | 6,343.00 | | Real Estate Taxes | 465.50 |
| Amount Paid by Seller (-) | | | Mortgage Insurance | |
| | | | Homeowner Assn. Dues | |
| | | | Other | |
| Total Est. Funds to you | | 67,956.50 | Total Monthly Payment | 2,406.54 |

☑ This Good Faith Estimate is being provided by The Loan Corporation, a mortgage broker, and no lender has been obtained. These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

Applicant PAULA L RUSH 3/6/06 Date Applicant Date

Calyx Form gfe.frm 11/01

(NO NEG AM INT) Interest Rate 1% Based on 1% Presented P42

# GOOD FAITH ESTIMATE

Applicants: PAULA L RUSH
Property Addr: 2651 PEERY DRIVE, Churchville, MD 21028
Prepared By: The Loan Corporation Ph. 813-639-9696
4890 W Kennedy Blvd #260, Tampa, FL 33609

Application No: LC060924
Date Prepared: 02/17/2006
Loan Program: 1 Mo MTA ARM

Int Rate 1%

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ 586,500 Interest Rate: 1.000 % Term: 480 / 480 mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | PFC S F POC |
|---|---|---|---|---|
| 801 | Loan Origination Fee | | $ | ✓ |
| 802 | Loan Discount | 0.000% + $ 0.00 | | ✓ |
| 803 | Appraisal Fee | | (400.00) | ✓ ✓ |
| 804 | Credit Report | | | ✓ |
| 805 | Lender's Inspection Fee | | | ✓ |
| 808 | Mortgage Broker Fee | 0.000% | | ✓ |
| 809 | Tax Related Service Fee | | 75.00 | ✓ |
| 810 | Processing Fee | | 910.00 | ✓ |
| 811 | Underwriting Fee | | | ✓ |
| 812 | Wire Transfer Fee | | 25.00 | ✓ |
| | Investor Administrative | | 480.00 | ✓ |
| | FLOOD CERTIFICATION | | 19.00 | ✓ |
| | | | | ✓ |
| | | | | ✓ |
| | Document Delivery Fee | | | ✓ |

Bogus — Commitment Fee

| 1100 | TITLE CHARGES: | | | PFC S F POC |
|---|---|---|---|---|
| 1101 | Closing or Escrow Fee: | TITLE CO | $ 300.00 | ✓ |
| 1105 | Document Preparation Fee | | | ✓ |
| 1106 | Notary Fees | | | ✓ |
| 1107 | Attorney Fees | | | ✓ |
| 1108 | Title Insurance: | MD Reissue Title | 1,480.00 | ✓ |
| | ABSTRACTING FEE | | 75.00 | ✓ |
| | TITLE EXAM FEE | | 75.00 | ✓ |
| | TITLE COMPANY SHIPPING FEE | | | ✓ |

450 — 982.15 — 270.00

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | PFC S F POC |
|---|---|---|---|---|
| 1201 | Recording Fees: | COUNTY | $ 95.00 | ✓ |
| 1202 | City/County Tax/Stamps: | | | |
| 1203 | State Tax/Stamps: | | | |
| | Mortgage Stamps | | 2,968.80 | ✓ |
| | broker credit | | -4,000.00 | ✓ |

| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | PFC S F POC |
|---|---|---|---|
| 1302 | Pest Inspection | $ | ✓ |
| | | | ✓ |
| | MORTGAGE SATISFACTION | 75.00 | ✓ |
| | Endorsements | 150.00 | ✓ |
| | Title Exam | | |
| | Title Search | | |
| | *Estimated Closing Costs* | 1,727.80 | |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | PFC S F POC |
|---|---|---|---|---|
| 901 | Interest for | days @ $ 16.2917 per day | $ | ✓ |
| 902 | Mortgage Insurance Premium | | | ✓ |
| 903 | Hazard Insurance Premium | | | |
| 904 | INTERIM INTEREST | | 1,750.00 | |
| 905 | VA Funding Fee | | | ✓ |

| 1000 | RESERVES DEPOSITED WITH LENDER: | | | | PFC S F POC |
|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premium | 9 months @ $ | 97.25 per month | $ 875.25 | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | per month | | |
| 1003 | School Tax | months @ $ | per month | | |
| 1004 | Taxes and Assessment Reserves | 7 months @ $ | 465.50 per month | 3,258.50 | |
| 1005 | Flood Insurance Reserves | months @ $ | per month | | |
| | | months @ $ | per month | | |
| | | months @ $ | per month | | |
| | Aggregate Adjustment | | | | |
| | *Estimated Prepaid Items/Reserves* | | | 5,883.75 | |

TOTAL ESTIMATED SETTLEMENT CHARGES 7,611.55

COMPENSATION TO BROKER (Not Paid Out of Loan Proceeds):
Yield Spread Premium Paid to The Loan Corporation $ 0.00 — 25,148.75
Range: 0% to 3.875

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | |
|---|---|---|---|
| Purchase Price/Payoff (+) | 574,000.00 | New First Mortgage(-) | |
| Loan Amount (-) | 586,500.00 | Sub Financing(-) | |
| Est. Closing Costs (+) | 1,727.80 | New 2nd Mtg Closing Costs(+) | |
| Est. Prepaid Items/Reserves (+) | 5,883.75 | | |
| Amount Paid by Seller (-) | | | |
| Total Est. Funds to you | 4,888.45 | | |

| TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|
| Principal & Interest | 1,483.00 |
| Other Financing (P & I) | |
| Hazard Insurance | 97.25 |
| Real Estate Taxes | 465.50 |
| Mortgage Insurance | |
| Homeowner Assn. Dues | |
| Other | |
| Total Monthly Payment | 2,045.75 |

Based on 1%

☑ This Good Faith Estimate is being provided by The Loan Corporation, a mortgage broker, and no lender has been obtained. These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

Lender File →

Applicant PAULA L RUSH Date Applicant Date

Calyx Form gfe.frm 11/01

P+1 

ASSIGNED 3/7/06

3/13/06

Exhibit F

# GOOD FAITH ESTIMATE

| | | | |
|---|---|---|---|
| Lender: | American Brokers Conduit | Sales Price: | |
| Address: | 5160 Parkstone Drive Suite 190A | Base Loan Amount: | 649,000.00 |
| | Chantilly, VA 20151 | Total Loan Amount: | 649,000.00 |
| Applicant(s): | PAULA L RUSH | Type of Loan: | Conventional |
| Property Address: | 2651 PEERY DRIVE | Date Prepared: | 03/13/2006 |
| | Churchville, MD 21028 | Rate: 1.000% | Term: 480 mos |

**The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.**

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

1%

| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN: | | |
|---|---|---|
| 801 Loan Origination Fee ( %) | $ | |
| 802 Loan Discount Fee ( %) | $ | |
| 803 Appraisal Fee | $ | |
| 804 Credit Report | $ | |
| 805 Lender's Inspection Fee | $ | |
| 806 Mortgage Insurance Application Fee | $ | |
| 807 Assumption Fee | $ | |
| 808 Mortgage Broker Fee | $ | |
| 809 CLO Access Fee | $ | |
| 810 Tax Related Service Fee | $ | |
| 813 Underwriting Review | $ | 295.00 |
| 818 Broker Appraisal | $ | 400.00 |
| 823 PROCESSING | $ | 550.00 |
| 824 WIRE | $ | 25.00 |
| 840 ADMIN | $ | 260.00 |
| Additional Items 800's Total | | 499.00 |
| **900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | |
| 901 Interest for 15 day @ $ 18.028 per day | $ | 270.42 |
| 902 Mortgage Insurance Premium | $ | |
| 903 Hazard Insurance Premium | $ | |
| | $ | |
| | $ | |
| | $ | |
| **1000 RESERVES DEPOSITED WITH LENDER:** | | |
| 1001 Haz Ins Prem 6.00 @$ 97.25 | $ | 583.50 |
| Tax & Assmt Res @$ | $ | |
| 1007 Escrow Taxes 6.00 @ 465.50 | $ | 2,793.00 |
| | $ | |
| | $ | |

"L" designates those costs to be paid by Lender.

| 1100 TITLE CHARGES: | | |
|---|---|---|
| 1101 Settle/Close/Escrow Fee | $ | 375.00 |
| 1102 Abstract or Title Search | $ | 75.00 |
| 1103 Title Examination | $ | 75.00 |
| 1104 Title Insurance Binder | $ | |
| 1105 Document Preparation Fee | $ | |
| 1106 Notary Fee | $ | |
| 1107 Attorney Fees | $ | |
| 1108 Title Insurance | $ | 1,623.00 |
| 1109 Title:Lender's Coverage | $ | 1,485.50 |
| 1113 MTG SATISFACTION | $ | 75.00 |
| 1120 Endorsements | $ | 150.00 |
| | $ | |
| **1200 GOVERNMENT RECORDING & TRANSFER CHARGES:** | | |
| 1201 Recording Fees: | $ | 95.00 |
| 1202 City/County Tax/Stamps: | $ | |
| 1203 State Tax/Stamps: | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| **1300 ADDITIONAL SETTLEMENT CHARGES:** | | |
| 1301 Survey | $ | |
| 1302 Pest Inspection | $ | |
| 1303 Wire Fee | $ | 25.00 |
| 1305 Tax Service | $ | 75.00 |
| 1306 Flood Hazard Fee | $ | 19.00 |
| Additional Items 1300's Total | $ | 8,344.50 |
| **TOTAL ESTIMATED SETTLEMENT CHARGES** | $ | 18,092.92 ** |

** Total Includes Addendum

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | |
|---|---|---|
| XXXXXXXXXXX Cash to borrower | $ | 74,300.00- |
| Est. Closing Costs +PMI/MIP/VA fee | $ | 14,446.00 |
| Est. Prepaid Items/Reserves | $ | 3,646.92 |
| OTHER | $ | |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $ | 56,207.08- |

| TOTAL ESTIMATED MONTHLY PAYMENT: | | |
|---|---|---|
| Principal & Interest | $ | 1,641.04 |
| Real Estate Taxes | $ | 465.50 |
| Flood & Hazard Insurance | $ | 97.25 |
| Mortgage Insurance | $ | |
| Othr Fin & Spec Assess & Assoc Dues | $ | 50.00 |
| TOTAL MONTHLY PAYMENT | $ | 2,253.79 |

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Use of the particular provider is required and the estimate is based on charges of the provider.

| ITEM NO. | NAME & ADDRESS OF PROVIDER | TELEPHONE NO. | NATURE OF RELATIONSHIP |
|---|---|---|---|
| | | | |
| | | | |

**These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.** The undersigned acknowledges receipt of the booklet "Settlement Costs," and the Consumer Handbook on ARM Mortgages, if applicable.

| | | | |
|---|---|---|---|
| Applicant PAULA L RUSH | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

☐ This Good Faith Estimate is being provided by , a mortgage broker, and no lender has yet been obtained.

"S" designates those costs to be paid by Seller.

DOC #:165001 APPL #:0001222336

Prepared by ABC



# TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicants: PAULA L RUSH

Property Address: 2651 PEERY DRIVE, Churchville, MD 21028

Application No: LC060924

Prepared By: The Loan Corporation, 4890 W Kennedy Blvd #260, Tampa, FL 33609, 813-639-9696

Date Prepared: 02/17/2006

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 7.263 % | $ * 1,663,620.05 | $ * 648,99[illegible].50 | $ * 2,312,619.55 |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 1 | 1,641.04 | 05/01/2006 | | | | | | |
| 11 | 1,641.04 | 06/01/2006 | | | | | | |
| 12 | 1,764.12 | 05/01/2007 | | | | | | |
| 12 | 1,896.43 | 05/01/2008 | | | | | | |
| 12 | 2,038.66 | 05/01/2009 | | | | | | |
| 12 | 2,191.56 | 05/01/2010 | | | | | | |
| 419 | 5,233.92 | 05/01/2011 | | | | | | |
| 1 | 5,225.35 | 04/01/2046 | | | | | | |

(4)

Bracket 1%

☐ DEMAND FEATURE: This obligation has a demand feature.

☑ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier. NO

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance ☐ Credit disability ☑ Property insurance ☐ Flood insurance

You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase ☐ property ☐ flood insurance from creditor you will pay $ for a one year term.

SECURITY: You are giving a security interest in: 2651 PEERY DRIVE, Churchville MD 21028
☐ The goods or property being purchased ☑ Real property you already own.

FILING FEES: $

LATE CHARGE: If a payment is more than 15 days late, you will be charged 5.000 % of the payment

PREPAYMENT: If you pay off early, you
☑ may ☐ will not have to pay a penalty.
☐ may ☑ will not be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
☐ may ☑ may, subject to conditions ☐ may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties

☑ * means an estimate ☑ all dates and numerical disclosures except the late payment disclosures are estimates.

** NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

[signature] 3/5/06

PAULA L RUSH (Applicant) (Date) (Applicant) (Date)

(Applicant) (Date) (Applicant) (Date)

(Lender) (Date)

Calyx Form - til.hp (02/95)



# TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicant: PAULA L RUSH

Property Address: 2651 PEERY DRIVE Churchville, MD 21028

Application No: LC060924

Prepared By: The Loan Corporation 4890 W Kennedy Blvd #260 Tampa, FL 33609 813-639-6696

Date Prepared: 02/17/2006

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 7.258 % | $ * 1,504,722.93 | $ * 585,688.70 | $ * 2,090,411.63 |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments ** | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments ** | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| 1 | 1,483.58 | 06/01/2006 | | | | | | |
| 11 | 1,483.58 | 07/01/2006 | | | | | | |
| 12 | 1,594.85 | 06/01/2007 | | | | | | |
| 12 | 1,714.46 | 06/01/2008 | | | | | | |
| 12 | 1,843.04 | 06/01/2009 | | | | | | |
| 12 | 1,981.27 | 06/01/2010 | | | | | | |
| 419 | 4,730.96 | 06/01/2011 | | | | | | |
| 1 | 4,732.99 | 05/01/2046 | | | | | | |

1%

☐ DEMAND FEATURE: This obligation has a demand feature.

☑ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE: The following insurance is required to obtain credit:

☐ Credit life insurance ☐ Credit disability ☑ Property insurance ☐ Flood insurance

You may obtain the insurance from anyone you want that is acceptable to creditor

☐ If you purchase ☐ property ☐ flood insurance from creditor you will pay $ for a one year term.

SECURITY: You are giving a security interest in: 2651 PEERY DRIVE, Churchville MD 21028

☐ The goods or property being purchased ☑ Real property you already own.

FILING FEES: $

LATE CHARGE: If a payment is more than 15 days late, you will be charged 5.000 % of the payment

PREPAYMENT: If you pay off early, you

☑ may ☐ will not have to pay a penalty.

☐ may ☑ will not be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property

☐ may ☑ may, subject to conditions ☐ may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties

☑ * means an estimate ☑ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

[signature] 4/03/06

PAULA L RUSH (Applicant) (Date) (Applicant) (Date)

(Applicant) (Date) (Applicant) (Date)

(Lender) (Date)

Calyx Form - tilhp (02/98)

Based on 1%

P46

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT: American Brokers Conduit
5160 Parkstone Drive Suite 190A
Chantilly, VA 20151

[X] Preliminary [ ] Final

LOAN NO.:
Type of Loan: Conventional
APP NO.:0001222336

BORROWERS: PAULA L RUSH

ADDRESS: 2651 PEERY DRIVE
CITY/STATE/ZIP: Churchville, MD 21028
PROPERTY: 2651 PEERY DRIVE
Churchville, MD 21028

Exhibit B

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.320e % | $ 1,338,771.12e | $ 646,036.58e | $ 1,984,807.70e |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 12 | $1,641.04 | July 1, 2006 | 12 | $1,764.12 | July 1, 2007 |
| 12 | $1,896.43 | July 1, 2008 | 12 | $2,038.66 | July 1, 2009 |
| 12 | $2,191.56 | July 1, 2010 | 419 | $4,453.40 | July 1, 2011 |
| 1 | $4,451.38 | June 1, 2046 | | | |

DEMAND FEATURE: [XX] This loan does not have a Demand Feature. [ ] This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
[XX] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 2651 PEERY DRIVE Churchville, MD 21028

ASSUMPTION: Someone buying this property [ ] cannot assume the remaining balance due under original mortgage terms [XX] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $ 95.00

PROPERTY INSURANCE: [XX] Property hazard insurance in the amount of $ with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance [ ] is [XX] is not available through the lender at an estimated cost of N/A for a year term.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000 % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
[ ] may [XX] will not have to pay a penalty.
[ ] may [XX] will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

PAULA L RUSH — BORROWER / DATE — BORROWER / DATE

BORROWER / DATE — BORROWER / DATE

DOC #:060401 / rev. 06/2005 APPL #:0001222336 LOAN #:0000000000
-788 (9901) UM31 9801.05 VMP MORTGAGE FORMS - (800)521-7291 Page 1 of 2 5/96

© 1999 CBF Systems, Inc. The contents of this form in whole or in part are protected under the copyright laws of the United States.



No Loan Type Info

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

A. Settlement Statement

B. Type of Loan

PAGE 1 OF 2

| 1. __ FHA 2. __ FmHA 3. __ Conv. Unins. 4. __ VA 5. __ Conv. Ins. | 6. File Number 1149536-01 | 7. Loan Number 0001222336 | 8. Mortgage Insurance Case Number |
|---|---|---|---|

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside of closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

D. NAME OF BORROWER: PAULA RUSH
ADDRESS: 2651 PEERY DR, CHURCHVILLE, MD 21028-1237

E. NAME OF SELLER: REFINANCE
ADDRESS:

F. NAME OF LENDER: AMERICAN BROKERS CONDUIT
ADDRESS: 520 BROADHOLLOW ROAD, MELVILLE, NY 11747

G. PROPERTY ADDRESS: 2651 PEERY DR, CHURCHVILLE, MD 21028-1237

H. SETTLEMENT AGENT: SERVICE LINK
PLACE OF SETTLEMENT: LARRY PROVENCAL -(TLP) - 496 MIRABILE LN, (VERIZON E-MAIL DOES WORK), BALTIMORE, MD 21224-2132

I. SETTLEMENT DATE: 04/03/2006 DISBURSEMENT DATE: 04/07/2006

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. CONTRACT SALES PRICE | | 401. CONTRACT SALES PRICE | |
| 102. PERSONAL PROPERTY | | 402. PERSONAL PROPERTY | |
| 103. SETTLEMENT CHARGES TO BORROWER (LINE 1400) | $6,026.22 | 403. | |
| 104. PAYOFF TO COUNTRYWIDE HOME LOAN SERVICING LP - 083817801 | $446,240.94 | 404. | |
| 105. PAYOFF TO CITIMORTGAGE, INC. - 7707705708 | $128,019.17 | 405. | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE | |
| 106. | | 406. | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | $580,286.33 | 420. GROSS AMOUNT DUE TO SELLER | $0.00 |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. DEPOSIT OR EARNEST MONEY | | 501. EXCESS DEPOSIT (SEE INSTRUCTIONS) | |
| 202. PRINCIPAL AMOUNT OF NEW LOANS | $586,500.00 | 502. SETTLEMENT CHARGES TO SELLER (LINE 1400) | |
| 203. EXISTING LOAN(S) TAKEN SUBJECT TO | | 503. EXISTING LOAN(S) TAKEN SUBJECT TO | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER | |
| 210. BROKER CREDIT TO BORROWER | $4,000.00 | 510. | |
| 211. | | 511. | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | $590,500.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | $0.00 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT FROM OR TO SELLER | |
| 301. GROSS AMOUNT DUE FROM BORROWER (LINE 120) | $580,286.33 | 601. GROSS AMOUNT DUE TO SELLER (LINE 420) | $0.00 |
| 302. LESS AMOUNTS PAID BY/FOR BORROWER (LINE 220) | $590,500.00 | 602. LESS REDUCTION AMOUNT DUE SELLER (LINE 520) | $0.00 |
| 303. CASH TO BORROWER | $10,213.67 | 603. CASH TO SELLER | $0.00 |

P 48

US Department of Housing and Urban Development

OMB No. 2502-0265

PAGE 2 OF 2

SETTLEMENT STATEMENT — FILE NUMBER: 1149536-01

| L. SETTLEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION BASED ON PRICE | | |
| DIVISION OF COMMISSION (LINE 700) AS FOLLOWS: | | |
| 701. | | |
| 702. | | |
| 703. | | |
| 704. COMMISSION PAID AT SETTLEMENT | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| 801. COMMITMENT FEE - AMERICAN BROKERS CONDUIT | $480.00 | |
| 802. LOAN DISCOUNT | | |
| 803. APPRAISAL FEE | | |
| 804. CREDIT REPORT | $75.00 | |
| 805. TAX SERVICE TO AMERICAN BROKERS CONDUIT | | |
| 806. APPLICATION FEE | $19.00 | |
| 807. FLOOD HAZARD FEE TO AMERICAN BROKERS CONDUIT | | |
| 808. UNDERWRITING FEE | | |
| 809. DOC PREP | | |
| 810. YIELD SPREAD PREMIUM TO THE LOAN CORPORATION POC BY AMERICAN BROKERS CONDUIT: $19,794.38 | | |
| 811. PROCESSING FEE TO THE LOAN CORPORATION | $810.00 | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. INTEREST FROM 04/07/2006 TO 05/01/2006: $16.2916/DAY FOR 24 DAYS | $391.00 | |
| 902. MORTGAGE INSURANCE PREMIUM FOR | | |
| 903. HAZARD INSURANCE PREMIUM FOR | | |
| 904. COUNTY TAXES TO HARFORD COUNTY POC BY BORROWER: $2,605.53 | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | |
| 1001. HAZARD INSURANCE - 9 MO. AT $107.67/MO | $969.03 | |
| 1002. MORTGAGE INSURANCE | | |
| 1003. CITY PROPERTY TAXES | | |
| 1004. COUNTY PROPERTY TAXES - 2 MO. AT $464.47/MO | $928.94 | |
| 1005. SCHOOL TAXES | | |
| 1009. AGGREGATE ANALYSIS ADJUSTMENT TO AMERICAN BROKERS CONDUIT | ($879.85) | $0.00 |
| 1100. TITLE CHARGES | | |
| 1101. SETTLEMENT OR CLOSING FEE TO SERVICELINK | $450.00 | |
| 1102. ABSTRACT OR TITLE SEARCH TO SERVICELINK | $210.00 | |
| 1103. MORTGAGE UPDATE FEE | | |
| 1104. SIGNING FEE TO SERVICELINK | $100.00 | |
| 1105. DOCUMENT PREPARATION | | |
| 1106. NOTARY FEES | | |
| 1107. ATTORNEY'S FEES | | |
| 1108. TITLE INSURANCE TO SERVICELINK | $1,130.90 | |
| 1109. LENDER'S POLICY $733,125.00 - $1,130.90 LOAN AMOUNT - $586,500.00 | | |
| 1110. OWNER'S POLICY | | |
| 1111. SURVEY | | |
| 1112. ALTA 6.2 | | |
| 1113. ALTA 8.1 | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. RECORDING FEES - MORTGAGE: $40.00 | $40.00 | |
| 1202. CITY/COUNTY TAX/STAMPS - MORTGAGE: $1,102.20 | $1,102.20 | |
| 1203. STATE TAX/STAMPS | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. | | |
| 1400. TOTAL SETTLEMENT CHARGES | $6,026.22 | $0.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions and indemnify and hold harmless Settlement Agent against such errors or omissions.

PAULA RUSH
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

WARNING:IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: ______________________ DATE

American Brokers Conduit
538 Broadhollow Road
Melville , NY 11747

**MONTHLY PAYMENT INFORMATION LETTER**

Application Number: 1001222336

**BORROWER(S):**
PAULA LYNN ROSH
**PROPERTY ADDRESS:**
2651 PEERY DRIVE
Churchville, MD 21028

Dear Borrower(s):

We wish to congratulate you on the purchase/refinance of your residence and sincerely hope that you will enjoy the many benefits of home ownership.

In accordance with the terms of the Note and Mortgage, your first monthly payment is due on the 1st of every month. Your payments should be mailed to the Bank at the following address:

American Home Mortgage Servicing, Inc.
ATT: Payment Processing
PO Box 660029
Dallas, TX 75266-0029

During the term of your loan you may expect the amount of your monthly payment to fluctuate because of changing requirements for taxes, insurance and assessments. Your payment must be received by the Bank prior to the 16th of each month in order to avoid a late charge. At present and until further notice, your monthly payment is as follows:

**PRINCIPAL AND INTEREST:** $1,483.00

**MONTHLY ESCROW DEPOSITS:**
Real Estate Taxes $464.47
Fire Insurance $107.67

**TOTAL MONTHLY ESCROW:** $572.14

**TOTAL MONTHLY PAYMENT:** $2,055.14

In case you do not receive the regular monthly coupons before your first payment is due, kindly use the enclosed temporary coupon when making that payment. Should you have any questions regarding your payment please contact the Customer Service Department at (877) 304-3100, please reference your loan number, 1001222336.

Based on 1%

P+I
NO mention of NEG Am

NO other Payment OPTION

Document No. 961101/(02/06)

P50

**TEMPORARY MORTGAGE PAYMENT COUPON**

Application Number: 1001222336

Due Date: June 1, 2006

Amount Due: $2,055.14

Remit to:

American Home Mortgage Servicing, Inc.
ATT: Payment Processing
PO Box 660029
Dallas, TX 75266-0029
Customer Service: 1-877-304-3100

Based on 1.90 minimum only

(Cut along dotted line above)

No Explanation this would cause Neg Am or other payment choices

Document No. 961501/(02/06)

P50

# EXHIBIT Q

DEC-08-06 03:08PM Case 07-11047-CSS Doc 4637-4 Filed 06/16/08 Page 29 of 71 T-301 P.020/056 F-151

"D"

Return To: 1149634

Chicago Title
ServiceLink Division
4000 Industrial Blvd. (23)
Aliquippa, PA 15001

Ou 15
1st

Prepared By:
Leon Riddick
5160 Parkstone Drive
Suite 190A
Chantilly, VA
20151

ABC

IMP FD SURE $ 30.00
RECORDING FEE 20.00
RECORDATION T 135.30
TOTAL 175.30
Rest HA02 Rcpt # 14799
JJR JD Blk # 2583
Apr 19, 2006 12:40 Pm

20
20
135.30

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 100024200012223364

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated April 3, 2006 , together with all Riders to this document.

(B) "**Borrower**" is PAULA LYNN RUSH

Borrower is the trustor under this Security Instrument.

(C) "**Lender**" is American Brokers Conduit

Lender is a Corporation organized and existing under the laws of State of New York .

DOC #:322291 APPL #:0001222336

MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS Form 3021 1/01

-6A(MD) (0005) UM31 9906.02
Page 1 of 15 Initials: ______

VMP MORTGAGE FORMS - (800)521-7291

HA CIRCUIT COURT (Land Records) [MSA CE 54-6579] JJR 6692, p. 0686. Printed 12/07/2006. Online 05/05/2006.

LIBER 6 6 9 2 FOLIO 0 6 8 6

Q 51

tion, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Harford :

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION

**The recording costs on this refinance will be based on the new loan amount of $586,500.00, less the total unpaid principal amount of $566,213.07 (Calculated by adding the UNPAID PRINCIPAL AMOUNT of $441,366.00, Originally set forth in book 5762 page 13 recorded 12/13/2004, and the UNPAID PRINCIPAL AMOUNT of $124,847.07, Originally set forth in book 6279 page 39 recorded 9/16/2005). This Instrument is THE PRINCIPAL RESIDENCE AND IS THE ORIGINAL "BORROWER".**

Added

Parcel ID Number: 1303366189 which currently has the address of
2651 PERRY DRIVE [Street]
Churchville [City], Maryland 21028 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:322293 APPL #:0001222336 Initials _______ Form 3021 1/01
-6A(MD) (0005) Page 3 of 15

Not Signed

Q52



time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of Harford [Name of Recording Jurisdiction]:

SEE ATTACHED LEGAL DESCRIPTION

NO INFO →

←

Parcel ID Number: 1303366189 which currently has the address of 2651 PEERY DRIVE [Street]
Churchville [City], Maryland 21028 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

signed
Q 53

Attn File 10/31/07 (3)

ServiceLink, division of Chicago Title Insurance Company
Commitment No: 1149536 - 1

**Schedule B - Section I**
**Requirements**

1. Documents satisfactory to ServiceLink, creating the estate or interest to be insured must be executed and duly filed for record.
2. Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest, mortgage or lien to be issued.
3. Furnish proof of payment of all bills for labor and material furnished or to be furnished in connection with improvements erected or to be erected.
4. ServiceLink requires the payment of all taxes and assessments and any penalties and interest, due and payable at closing.
5. Properly drafted and executed owner's affidavit from Paula Lynn Rush.
6. ServiceLink must be notified of all parties being added to title, prior to the loan closing. A judgment search must be completed for any parties being added to title. ServiceLink reserves the right to add additional requirements and/or exceptions as may be deemed necessary, upon review of the judgment search.
7. Record instruments conveying or encumbering the estate or interest to be insured, briefly described:

Properly drafted and executed Mortgage from Paula Lynn Rush to AMERICAN BROKERS CONDUIT, securing a lien in the amount of $649,000.00.

ANY DEED PREPARED IN CONNECTION WITH THIS TRANSACTION MUST INCLUDE THE RELATIONSHIP OF GRANTOR AND GRANTEE IN ORDER TO DETERMINE THE APPLICABILITY OF TRANSFER TAXES, IF ANY.

The following statement must be added to the body of deed of trust or mortgage for all refinance transactions in the State of Maryland which meet the criteria noted in this statement:

This instrument is for the PRINCIPAL RESIDENCE and is the original "BORROWER".

The recording costs on this refinance will be based on the new loan amount of $________, less the total unpaid principal amount of $________,

originally set forth in book ______ page ______ recorded ______.

Except in Howard, Prince George, Wicomico and Worcester County where a finance affidavit must be signed and notarized.

Required

8. Payoff of Deed of Trust Dated 10/19/2004, Recorded 12/13/2004 in the office of the Recorder of HARFORD County, Maryland, in Liber 5762, Folio 13, executed by Paula Lynn Rush to Countrywide Home Loans, Inc., which states that it secured a debt in the principal sum of $441,336.00. Trustee: R Douglas Jones.

Q54

OVERCHARGE

OVERCHARGE

Settlement 4/3/2006

VENDOR: DAILYCHECK
REMIT TO: PAULA RUSH

CHECK: 0201017544
COMMENT:

DATE: 04/18/2007

| INVOICE | DATE | VOUCHER | COMMENT | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| 1149536/REF | 04/17/2007 | 0001218303 | RUSH/REF/692 | 966.90 | 0.00 | 966.90 |
| | | | TOTALS: | 966.90 | 0.00 | 966.90 |

MAS500 email: sales@zappaform.com ph:(877)901-0907 fax:(408)847-1952 5496183

Service Link A Div of Chicago Title

DOCUMENT HAS A COLORED BACKGROUND. SECURITY FEATURES LISTED ON BACK.

servicelink CONSIDER IT DONE.

SERVICE LINK - a division of
CHICAGO TITLE INSURANCE COMPANY
DAILY DISBURSEMENT
4000 INDUSTRIAL BLVD.
ALIQUIPPA, PA 15001

HARRIS CENTRAL N.A.
IL
70-1558/719

DATE 04/18/2007

AMOUNT $ ***************966.90

PAY Nine hundred sixty-six and 90 / 100 Dollars

TO THE ORDER OF
PAULA RUSH
USA

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

⑈201017544⑈ ⑆071915580⑆ 04⑈404⑈731⑈2⑈

Q55

MAR-31-08 17:10 FROM-American Brokers Conduit 7032637813 T-757 P.003/ F-925

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT: American Brokers Conduit
5160 Parkstone Drive Suite 190A
Chantilly, VA 20151

☐ Preliminary [X] Final
DATE: 04/03/06
LOAN NO.:
Type of Loan: Conventional
APP NO.: 0001222336

BORROWERS: PAULA LYNN RUSH

ADDRESS: 2651 PERRY DRIVE
CITY/STATE/ZIP: Churchville, MD 21028
PROPERTY: 2651 PERRY DRIVE
Churchville, MD 21028

584135 Different — No loan info

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.468 % | $ 1,562,538.53 | $ 584,135.00 | $ 2,146,673.53 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 12 | $1,483.00 | June 1, 2006 | 12 | $1,594.23 | June 1, 2007 |
| 12 | $1,713.80 | June 1, 2008 | 12 | $1,842.34 | June 1, 2009 |
| 12 | $1,980.52 | June 1, 2010 | 419 | $4,865.01 | June 1, 2011 |
| 1 | $4,867.66 | May 1, 2046 | | | |

Balloon 1% — 1% No Neg Am

DEMAND FEATURE: [XX] This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
[XX] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 2651 PERRY DRIVE Churchville, MD 21028

ASSUMPTION: Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms
[XX] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $ 1,142.20

PROPERTY INSURANCE: [XX] Property hazard insurance in the amount of $ [redacted] with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is [XX] is not available through the lender at an estimated cost of N/A for a year term.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000 % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
[XX] may ☐ will not have to pay a penalty.
☐ may [XX] will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

not signed

PAULA LYNN RUSH BORROWER / DATE BORROWER / DATE

BORROWER / DATE BORROWER / DATE

DOC #:060401 / rev. 06/2005 APPL #:0001222336 LOAN #:0000000000
-788 (0001) VMP MORTGAGE FORMS - (800)521-7291 Page 1 of 2

© 2000 ... The contents of this form in whole or in part are protected under the copyright laws of the United States.

Q56

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT: American Brokers Conduit
5160 Parkstone Drive Suite 190A
Chantilly, VA 20151

☐ Preliminary ☒ Final
DATE: 04/03/06
LOAN NO.:
Type of Loan: Conventional
APP NO.:0001222336

BORROWERS: PAULA LYNN RUSH

ADDRESS: 2651 PEERY DRIVE
CITY/STATE/ZIP: Churchville, MD 21028
PROPERTY: 2651 PEERY DRIVE
Churchville, MD 21028

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.468 % | $ 1,562,548.53 | $ 584,125.00 | $ 2,146,673.53 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 12 | $1,483.00 | June 1, 2006 | 12 | $1,594.23 | June 1, 2007 |
| 12 | [illegible] | June 1, 2008 | 12 | [illegible] | June 1, 2009 |
| 12 | $1,980.52 | June 1, 2010 | 419 | $4,865.01 | June 1, 2011 |
| 1 | [illegible] | May 1, 2046 | | | |

DEMAND FEATURE: ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 2651 PEERY DRIVE Churchville, MD 21028

ASSUMPTION: Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms ☒ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $

PROPERTY INSURANCE: ☒ Property hazard insurance in the amount of $ with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is ☒ is not available through the lender at an estimated cost of N/A for a year term.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000 % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☒ may ☐ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

PAULA LYNN RUSH BORROWER / DATE 4/3/06 BORROWER / DATE

BORROWER / DATE BORROWER / DATE

DOC #:060401 / rev. 06/2005 APPL #:0001222336 LOAN #:0000000000
-7RB (9601) (9601) 8801.05 VMP MORTGAGE FORMS - (800)521-7291 Page 1 of 2 3/96

© 1999 CBF Systems, Inc. The contents of this form in whole or in part are protected under the copyright laws of the United States.

BASED ON 1% minimum
No loan info
584125 Different
APR needed 8.925
No Neg Am
MISSING
Hidden
Blank
Signed Copy
Q5.7 3.751 3.650 1.39



Page 1 of 1

## Captive Reinsurance Debate

AMERICAN LAND TITLE ASSOCIATION

### OTS Issues Cease And Desist Order And Civil Money Penalty Against Chicago Title Insurance Company

March 1, 2005

**Related Information**

Attachment 1 [pdf]

Attachment 2 [pdf]

Attachment C [pdf]

WASHINGTON, D.C. - The Office of Thrift Supervision (OTS) has announced that Chicago Title Insurance Company (Chicago Title) has consented to a cease and desist order and a $5 million civil money penalty in connection with the settlement of charges regarding its mortgage settlement practices. The orders were issued as part of a joint investigation with the Office of Comptroller of the Currency (OCC) and the Department of Housing and Urban Development (HUD).

OTS, OCC and HUD found that Chicago Title had engaged in a pattern of violating Section 4 of the Real Estate Settlement Procedures Act (RESPA) by providing inaccurate HUD-1 settlement statements to lenders and their borrowers. The agencies determined that the HUD-1 settlement statements failed to accurately reflect the actual settlement costs in connection with the underlying home mortgage loans.

OTS and the OCC issued cease and desist orders, and HUD entered into a similar agreement, requiring Chicago Title to adopt and implement new internal policies governing the manner in which it conducts real estate settlements nationwide, training of its employees and officers, performance of internal audits, and oversight by its board of directors. The requirements are designed to address deficiencies in Chicago Title's procedures, to ensure the accuracy of its HUD-1 settlement statements, and to achieve compliance with applicable laws and regulations.

Chicago Title was assessed a concurrent $5 million civil money penalty by OTS, the OCC and HUD. In addition, the Texas Department of Insurance announced today that it assessed a $1.2 million civil money penalty against Chicago Title based on similar charges.

Chicago Title indicated that it is taking the steps necessary to address the deficiencies in its mortgage settlement process, and it is cooperating with OTS, OCC and HUD in this matter.

Source: OTS

Close Window

How To Find Us:
American Land Title Association
1828 L Street, NW, Suite 705
Washington, DC 20036-5104
P. 800-787-ALTA F. 888-FAX-ALTA
www.alta.org
service@alta.org

Quick Site Links:
ALTA Home & News
LTI Home
TIAC Home
TIPAC Home
ALTA Calendar
ALTA Store: Shop/Subscribe/Register

Do You Want To:
Contact ALTA Staff?
Join ALTA?
Find A Title Company?
Update Your Contact Information?
Update Your Login & Password?
Report A Site Problem?

Copyright © 2004-2007 American Land Title Association. All rights reserved.

http://www.alta.org/advocacy/news.cfm?newsID=2553&print=1 5/2/2007



"B"

This page is located on the U.S. Department of Housing and Urban Development's Homes and Communities Web site at http://www.hud.gov/news/release.cfm?CONTENT=pr05-021.cfm.

# News Release

**HUD No. 05-021**
**Brian Sullivan**
**(202) 708-0685**
**www.hud.gov/news/index.cfm**

**For Release**
**Monday**
**February 28, 2005**

---

**FEDERAL GOVERNMENT ANNOUNCES SETTLEMENT WITH CHICAGO TITLE CO. OVER ALLEGATIONS OF FALSIFYING LOAN DOCUMENTS**
***Company to pay $6.2 million and revamp corporate practices***

WASHINGTON - The Department of Housing and Urban Development, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision today announced a settlement agreement with Chicago Title Insurance Company following a joint investigation that uncovered suspected acts of residential and commercial mortgage fraud in the Houston, Texas real estate market. Chicago Title agreed to pay a $5 million civil penalty to the U.S. Treasury and to reform its settlement service practices nationwide. In a separate agreement with the Texas Department of Insurance, Chicago Title agreed to pay a $1.2 million penalty.

HUD, OTS and OCC claimed Chicago Title engaged in a pattern of violating Section 4 of the *Real Estate Settlement Procedures Act (RESPA)* by providing inaccurate HUD-1 Settlement Statements to lenders and their borrowers. The agencies determined that the HUD-1 Settlement Statements failed to accurately reflect the actual settlement costs in connection with home mortgage loans. HUD also alleged that Chicago Title's conduct was part of an agreement for the referral of business in violation of RESPA's Section 8 anti-kickback provision.

"This agreement underscores the level of cooperation among federal and state agencies to protect consumers and the integrity of the mortgage settlement process itself," said John C. Weicher, HUD Assistant Secretary for Housing and Federal Housing Commissioner. "When it comes to protecting the American Dream, HUD will continue to vigorously enforce every aspect of RESPA including making sure settlement costs are fully and accurately disclosed."

As one of the nation's largest settlement service providers, Chicago Title agreed to comply with RESPA, its implementing regulations, and HUD policy statements. Under the terms of the settlement, the company also agreed to implement new policies, procedures, and compliance controls governing settlements in all its branches and offices that will support the integrity of settlement documents, fraud prevention, and compliance with Sections 4 and 8 of RESPA.

The Agreement announced today also requires Chicago Title to revamp the manner in which it conducts real estate settlements nationwide, including training of employees and officers to properly complete the HUD-1 Settlement Statement. The company will monitor these training efforts and provide any corrected Settlement Statement to lenders. Chicago Title has indicated it has begun the process of addressing its deficiencies and is cooperating with the HUD, OCC and OTS.

In a separate action, the OCC also announced consent orders against two former bank officers involved in the fraudulent scheme. Tom Trammell, former Senior Vice President and Private Banking Manager of Southwest Bank of Texas (NA,



# SETTLEMENT AGREEMENT

This agreement is made by the Secretary of Housing and Urban Development ("HUD") and the Chicago Title Insurance Company ("Chicago Title") and is effective on the date it is signed by HUD. "Chicago Title" includes all offices and branches that Chicago Title Insurance Company owns or operates and all predecessor and successor organizations. Additionally, for purposes of Paragraph 5 of this Settlement Agreement, "Chicago Title" includes all offices and branches owned, operated, or controlled by Chicago Title Insurance Company, including but not limited to, offices or branches under agency or contractual agreement with Chicago Title Insurance Company to provide title insurance products in connection with the settlement of federally related mortgage loans, and all predecessor or successor organizations.

## RECITALS

Whereas, HUD is charged with the administration and enforcement of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), and its implementing regulations, 24 C.F.R. Part 3500;

Whereas, Chicago Title is a provider of "settlement services" as that term is defined in RESPA, 12 U.S.C. § 2602(3), and its implementing regulations, 24 C.F.R. § 3500.2(b);

Whereas, Section 4 of RESPA, 12 U.S.C. § 2603(a) states in part that the Secretary of HUD "...shall develop and prescribe a standard form for the statement of settlement costs which shall be used... as the standard real estate settlement form in all transactions in the United States which involve federally related mortgage loans. Such form shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement and shall indicate whether any title insurance premium included



in such charges covers or insures the lender's interest in the property, the borrower's interest, or both...";

Whereas, 24 C.F.R. § 3500.10(b) states that, "The settlement agent shall provide a completed HUD-1 or HUD-1A to the borrower, the seller (if there is one), the lender (if the lender is not the settlement agent), and/or their agents. When the borrower's and seller's copies of the HUD-1 or HUD-1A differ as permitted by the instructions in Appendix A to this part, both copies shall be provided to the lender (if the lender is not the settlement agent). The settlement agent shall deliver the completed HUD-1 or HUD-1A at or before the settlement, except as provided in paragraphs (c) and (d) of this section.";

Whereas, Section 8(a) of RESPA, 12 U.S.C. § 2607(a), prohibits any person from giving or receiving any fee, kickback, or thing of value pursuant to an agreement or understanding that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person;

Whereas, HUD has conducted an investigation concurrently and in conjunction with the Office of the Comptroller of the Currency and the Office of Thrift Supervision into certain business practices in which Chicago Title was engaged;

Whereas, Chicago Title has cooperated with HUD's investigation;

Whereas, HUD has determined that Chicago Title, through its officers or employees, engaged in a pattern of violating Section 4 of RESPA and the regulations promulgated thereunder, by providing inaccurate HUD-1 Settlement Statements to certain lenders that make federally related mortgage loans and their borrowers. HUD has further determined such HUD-1 Settlement Statements failed to accurately reflect all the actual charges and adjustments in connection with settlements of federally related mortgage loans;



Whereas, HUD has alleged that certain conduct described in the preceding paragraph was undertaken as part of an agreement or understanding for the referral of business in violation of Section 8 of RESPA;

Whereas, Chicago Title denies that it violated Sections 4 and 8 of RESPA and represents that it has ceased to engage in the business practices that were the subject of HUD's investigation;

Whereas, the parties to this Settlement Agreement now desire to avoid further expense and proceedings and to settle this matter under the terms and conditions set forth below; and

Whereas, the terms set forth in this Settlement Agreement are an appropriate disposition of this matter and in the public interest.

**AGREEMENTS**

NOW THEREFORE, in consideration of the mutual promises and representations set forth herein, and in further consideration for HUD's reliance upon the substantial accuracy and good faith of the representations and submissions made to it by Chicago Title, the parties, intending to be legally bound, agree as follows:

1. The foregoing recitals are incorporated in this Agreement.
2. Chicago Title, its officers, directors, and employees, agree to comply with all provisions of RESPA, its implementing regulations, and HUD policy statements related to RESPA.
3. Within one hundred twenty (120) days of the execution of this Settlement Agreement, Chicago Title shall develop, implement, and thereafter adhere to written policies, procedures, systems and/or compliance controls ("Polices and Procedures") governing settlements it may conduct for or on behalf of any lender



that makes federally related mortgage loans. Such Policies and Procedures shall, at a minimum:

a. require the implementation of a consistent framework of internal controls in support of the integrity of settlement documents, fraud prevention, and compliance with Sections 4 and 8 of RESPA and its implementing regulations and HUD policy statements related to RESPA;

b. require Chicago Title's employees and/or officers to prepare complete and accurate HUD-1 Settlement Statements, in accordance with RESPA and its implementing regulations; and

c. require Chicago Title's employees and/or officers to deliver any corrected, amended, or changed HUD-1 Settlement Statements to any lender that makes federally related mortgage loans and their borrower(s) as soon as practicable, whether the corrections, amendments, or changes occurred before or after the closing of the transaction described on the HUD-1 Settlement Statement.

4. Within one hundred twenty (120) days of the execution of this Settlement Agreement, Chicago Title shall establish, implement, and thereafter adhere to written Policies and Procedures to:

a. ensure that every current and prospective employee and officer who engages in settlements for federally related mortgage loans at any branch or office owned or operated by Chicago Title receives timely and adequate training to conduct such settlements in compliance with RESPA and its implementing regulations.

Q58

8. This Settlement Agreement contains general and specific obligations on Chicago Title that may be enforced through the use of this Settlement Agreement during the period that the concurrent Order of the Comptroller of the Currency is in effect, provided that nothing herein shall prohibit HUD, subject to the limitations of Paragraph 7, from also taking any future enforcement action under RESPA based on subsequent conduct by Chicago Title.

9. Each party shall bear its own costs and attorney's fees.

10. This Settlement Agreement applies to and binds each of the persons or entities identified in the first paragraph of this Settlement Agreement and their respective predecessors, successors, directors, officers, employees, agents, representatives, and assigns.

11. Each signatory to this Settlement Agreement certifies by signing that he or she is fully authorized, in his or her own capacity, or by the named party he or she represents, to accept the terms and provisions of this Settlement Agreement in their entirety, and agrees, in his or her personal or representational capacity, to be bound by the terms of this Settlement Agreement.

**Chicago Title Insurance Company**

By: [signature]
Executive Vice President

2/23/05
Date

120 days
6/05

my loan 4/06

Q58



Title insurers overcharging for services in real estate transactions. Page 1 of 2

# Lawyers and Settlements

What are you looking for?

Search

Home Page >> Hot Issues >> Title Insurance

## Title Insurance

We are currently investigating the practices of title insurers in real estate transactions such as the purchase and sale of your home or condominium. If you purchased or refinanced a home or other property in the last 36 months you may have been overcharged for certain services.

If you used Chicago Title, Fidelity Title, or Ticor Title, we would be interested in speaking with you. Law firms are currently investigating if residents of certain states may have been over-charged for certain costs and fees in connection with your transaction.

Examples include instances in which the amount these entities charged for recording deeds and mortgages was greater than the amount actually charged by the county or local government to actually record the document, and where homeowner who refinanced was incorrectly charged for title insurance (typically the homeowner should be charged a reduced or discount rate for refinances).

### Register your Title Insurance Complaint

If you have been overcharged for Title Insurance services in a real estate transaction, you may qualify for damages or remedies that may be awarded in a possible class action or lawsuit. Please click the link below to submit your complaint to a lawyer for a free evaluation, or call 1-866-220-0411 toll free.

**Click here to submit your complaint through a secure form**

*Posted on Jan-10-07*

- Services for Lawyers
- Home

**Lawsuits:**

- Personal Injury
- Unpaid Overtime
- Dangerous Drugs
- Defective Products
- Stock Fraud
- News Articles

**Hot Lawsuits:**

- All Hot Lawsuits
- SSRI Birth Defects
- Actiq Lollipop
- California Labor Laws
- Cell Phone Termination Fees
- Composix Kugel Mesh Patches
- Credit Card Rate Hikes
- Depakote
- Drug Eluting Stents
- Elidel
- Employee Stock Options/ERISA
- Fedex Age Discrimination
- Ortho Evra Patch
- Panacryl Sutures
- Paxil Birth Defects
- PPH and Fen-Phen
- Protopic
- Ralphs Grocery
- Trasylol
- Unpaid Overtime

FNF NYSE owned by

2007

1/10/2007

http://www.lawyersandsettlements.com/case/chicago-fidelity-ticor-title-insurance 1/19/2007

Q 59

# EXHIBIT R

LAW OFFICES
PETER G. ANGELOS
A PROFESSIONAL CORPORATION
ONE CHARLES CENTER
100 N. CHARLES STREET
BALTIMORE, MARYLAND 21201-3804
(410) 649-2000 (800) 252-6622

OTHER OFFICES:
PHILADELPHIA, PENNSYLVANIA
HARRISBURG, PENNSYLVANIA
BETHLEHEM, PENNSYLVANIA
WILMINGTON, DELAWARE
KNOXVILLE, TENNESSEE

**CONSENT TO BE NAMED AS**

**CLASS REPRESENTATIVE PLAINTIFF**

The undersigned understands and acknowledges that he or she is a member of a proposed class action filed, or to be filed, by the Law Offices of Peter G. Angelos, P.C. against their lender for violations of the Maryland law governing mortgage loans. The undersigned each agrees, consents and authorizes the Law Office of Peter G. Angelos, P.C. to identify and name him or her as a class representative plaintiff in such action. The decision to actually identify and name the undersigned as a class representative plaintiff, will be made within the sole discretion of the Law Offices of Peter G. Angelos, P.C..

____________________
Date

[signature]
Signature of PAULA RUSH

Paula Rush
Print Name

UNION PARK CENTER · 5905 HARFORD ROAD · BALTIMORE, MD 21214-1846 · 410-426-3200 · (800) 492-3240 · FAX 410-426-1269
111 S. GEORGE STREET · UNIT 2 · CUMBERLAND, MD 21502 · 301-759-2700 · FAX 301-759-2703

# EXHIBIT S

WEINER BRODSKY SIDMAN KIDER PC

1300 19TH STREET, NW
FIFTH FLOOR
WASHINGTON, DC 20036-1609
TEL 202 628 2000
FAX 202 628 2011
FEDERAL TAX ID: 52-1779483

INVOICE PERIOD: AUGUST 2007

Page: 1
10/30/2007
Account No: 98077-079M
Statement No: 6

American Home Mortgage
538 Broadhollow Road
Melville NY 11747

Attn: Alan Horn

Rush v. American Home

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 8/29/2007 | NWH | research/draft opposition to trustee's motion re: selling property on which American Home has lien in NJAH matter; | 255.00 | 1.20 | 306.00 |
| | | For Current Services Rendered | | 1.20 | 306.00 |

| | |
|---|---|
| Telephone and Long Distance Charges | 0.33 |
| Postage Expenses | 0.80 |
| Taxi/Local Transportation Expenses | 22.41 |
| Total Expenses Posted Through 08/31/2007 | 23.54 |
| Total Current Work | 329.54 |
| Balance Due | $329.54 |

PAYMENT IS DUE UPON RECEIPT OF INVOICE. PAYMENTS RECEIVED AND EXPENSES POSTED AFTER INVOICE DATE ARE NOT REFLECTED ON THIS STATEMENT. WE APPRECIATE THE OPPORTUNITY TO BE OF SERVICE TO YOU.

561

WEINER BRODSKY SIDMAN KIDER PC

1300 19TH STREET, NW
FIFTH FLOOR
WASHINGTON, DC 20036-1609
TEL 202 628 2000
FAX 202 628 2011
FEDERAL TAX ID: 52-1779483

INVOICE PERIOD: OCTOBER 2007

Page: 1
11/16/2007
Account No: 98077-079M
Statement No: 7

American Home Mortgage
538 Broadhollow Road
Melville NY 11747

Attn: Alan Horn

Rush v. American Home

| Date | Atty | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| 10/15/2007 | NWH | email from bankruptcy counsel re: Rush filing motion in bankruptcy action relating to her lawsuit, effect and merits of same; review pleadings filed by Rush and two other borrowers; telephone conference with D. Friedman, J. Kalas and bankruptcy counsel re: same; | 255.00 | 1.80 | 459.00 |
| 10/19/2007 | NWH | email from bankruptcy counsel re: pleadings filed in case so far; email response re: same; | 255.00 | 0.30 | 76.50 |
| 10/25/2007 | NWH | review opinion/order from court on other defendants' motions to dismiss; | 255.00 | 0.30 | 76.50 |
| | | For Current Services Rendered | | 2.40 | 612.00 |
| | | Total Current Work | | | 612.00 |
| | | Balance Due | | | $612.00 |

PAYMENT IS DUE UPON RECEIPT OF INVOICE. PAYMENTS RECEIVED AND EXPENSES POSTED AFTER INVOICE DATE ARE NOT REFLECTED ON THIS STATEMENT. WE APPRECIATE THE OPPORTUNITY TO BE OF SERVICE TO YOU.



WEINER BRODSKY SIDMAN KIDER PC

1300 19TH STREET, NW
FIFTH FLOOR
WASHINGTON, DC 20036-1609
TEL 202 628 2000
FAX 202 628 2011
FEDERAL TAX ID: 52-1779483

INVOICE PERIOD: FEBRUARY 2008

Page: 1
03/25/2008
Account No: 98077-079M
Statement No: 10

American Home Mortgage
538 Broadhollow Road
Melville NY 11747

Attn: Alan Horn

Rush v. American Home

| Date | Attorney | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| 02/05/2008 | NWH | conference with D. Souders re: demand P. Rush has been making on American Home on her behalf and as a "consumer advocate" on behalf of other lenders (0.3); telephone call to P. Rush re: same (0.2); | 255.00 | 0.50 | 127.50 |
| | DMS | telephone conference with J. Kalas (0.2); review correspondence to P. Rush (0.2); | 420.00 | 0.40 | 168.00 |
| 02/06/2008 | NWH | conference with D. Souders re: P. Rush inquiries (0.2); telephone call to/message for P. Rush re: same (0.1); | 255.00 | 0.30 | 76.50 |
| 02/07/2008 | NWH | email response to client re: attempts to contact P. Rush (0.1); | 255.00 | 0.10 | 25.50 |
| | | For Current Services Rendered | | 1.30 | 397.50 |
| | | Total Current Work | | | 397.50 |
| | | Balance Due | | | $397.50 |



WEINER BRODSKY SIDMAN KIDER PC

1300 19TH STREET, NW
FIFTH FLOOR
WASHINGTON, DC 20036-1609
TEL 202 628 2000
FAX 202 628 2011
FEDERAL TAX ID: 52-1779483

Page: 6
11/16/2007
Account No: 98077-089M
Statement No: 5

American Home Mortgage

Post Petition Representation

| Date | Timekeeper | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| | HJR | research law re: New York City debt collection requirements; telephone calls to New York City regulator re: same; research KS law re: mortgage servicing requirements; telephone call to KS regulator re: same; research CO law re: mortgage servicer licensing requirements; telephone call to CO regulator re: same; | 245.00 | 1.50 | 367.50 |
| | JDS | legal research re: KS and NYC licensing issues; correspond via email with J. Kalas re: same; | 395.00 | 1.60 | 632.00 |
| | DMS | review and revise draft orders for Ohio and Michigan; review Washington State license surrender requirements; | 420.00 | 1.30 | 546.00 |
| 10/19/2007 | BPP | telephone call to and correspondence to T. Winslow at Ohio regulator re: proposed settlement agreement; telephone call from and correspondence to H. Amer and C. Parker at DC regulator re: proposed settlement agreement; draft proposed settlement agreement for Pennsylvania regulator; correspondence to L. Sassani re: same; review and revise proposed settlement agreement for Michigan; telephone call to J. Westrin re: same; | 235.00 | 3.00 | 705.00 |
| | RJA | analysis re: use of mortgage insurance premiums when insurance cannot be obtained; | 425.00 | 0.20 | 85.00 |
| | HJR | telephone call to CO regulator re: supervised loan licensing requirements; | 245.00 | 0.20 | 49.00 |
| | DMS | review correspondence from New Hampshire regarding surrendered licenses; respond to request from K. Enos regarding Paula Rush case in Maryland; provide information to T. Turner regarding submission of fee application; | 420.00 | 1.10 | 462.00 |
| | MHK | emails to/from J. Kalas re: self-insured PMI; review emails from A. Horn re: letters from NH; telephone conference with A. Horn re: same; | 495.00 | 0.40 | 198.00 |
| 10/22/2007 | JDS | review KS license application; correspond via email with J. Kalas re: same; | 395.00 | 0.50 | 197.50 |
| 10/23/2007 | RJA | analysis re: social security number use for authentication; | 425.00 | 0.40 | 170.00 |





WEINER BRODSKY SIDMAN KIDER PC

1300 19TH STREET, NW
FIFTH FLOOR
WASHINGTON, DC 20036-1609
TEL 202 628 2000
FAX 202 628 2011
FEDERAL TAX ID: 52-1779483

Page: 7
11/16/2007
Account No: 98077-089M
Statement No: 5

American Home Mortgage

Post Petition Representation

| | | | | |
|---|---|---|---|---|
| BPP | telephone calls to L. Sassani re: proposed Pennsylvania consent order; correspondence from and correspondence to J. Haefele re: proposed Maine consent order; | 235.00 | 1.00 | 235.00 |
| JDS | discussion with J. Kalas re: KS licensing issues; telephone calls to/from L. Fowler re: same; | 395.00 | 0.70 | 276.50 |
| HJR | draft email to J. Kalas re: New York City debt collection agency license; | 245.00 | 0.50 | 122.50 |
| VTL | meeting with D. Souders regarding information relating to the sale of the Servicing rights to WLR; prepare response to request for information regarding WBSK's work on the sale of the servicing rights to WLR; | 245.00 | 1.80 | 441.00 |
| DMS | respond to request for fee information from M. Taylor at Kroll, Zolfo, Cooper; discussions with M. Kider; send revised consent orders to J. Westrin, State of Michigan; | 420.00 | 0.60 | 252.00 |
| MHK | telephone conference with J. Kalas and R. Brady; discussion with D. Souders; | 495.00 | 0.30 | 148.50 |
| MHK | discussion with D. Souders re: letter to applicants; | 495.00 | 0.10 | 49.50 |
| 10/24/2007 | | | | |
| HJR | review/draft emails to L. Fowler re: debt collection agency liens - New York City; telephone calls to N.Y. City regulator re: same; | 245.00 | 0.60 | 147.00 |
| DMS | draft letter regarding return of fees to applicants; send memo to A. Horn and J. Kalas; discussions with M. Kider; | 420.00 | 0.60 | 252.00 |
| NWH | review/revise draft briefs from bankruptcy counsel in response to Rush's and other third parties' motions; telephone conference with D. Souders and bankruptcy counsel re: same; | 255.00 | 1.50 | 382.50 |
| 10/25/2007 | | | | |
| BPP | telephone conference with D. Souders and J. Silverman re: resolution of Connecticut regulatory actions; telephone conference with D. Souders and J. Kalas re: regulatory actions in New Hampshire, DC and Ohio; research re: status of cases on MSMLL; | 235.00 | 1.20 | 282.00 |
| HCH | research re: regulator addresses and fax numbers for notification letters; correspondence to HI regulator re: same; | 230.00 | 0.90 | 207.00 |
| DMS | finalize and send notice to state regulators regarding refunds to customers; telephone conference with J. Kalas; review proposed settlement with Ohio regarding | | | |



WEINER BRODSKY SIDMAN KIDER PC

1300 19TH STREET, NW
FIFTH FLOOR
WASHINGTON, DC 20036-1609
TEL 202 628 2000
FAX 202 628 2011
FEDERAL TAX ID: 52-1779483

INVOICE PERIOD: FEBRUARY 2008

Page: 1
03/25/2008
Account No: 98077-089M
Statement No: 10

American Home Mortgage
538 Broadhollow Road
Melville NY 11747

Attn: Alan Horn

Post Petition Representation

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 02/01/2008 | | | | | |
| | HJR | telephone call to KS regulator re: pending loan broker registration app (0.1); | 245.00 | 0.10 | 24.50 |
| | VTL | meeting with D. Souders and P. Williamson regarding revisions to billing for WBSK's 5th Fee Application (0.3); | 245.00 | 0.30 | 73.50 |
| | DMS | send consent order from Connecticut to A. Horn for signature (0.2); preparation of Firm's fee report and send to C. Bonilla (0.5); review and revise DC Consent Order (0.4); | 420.00 | 1.10 | 462.00 |
| 02/05/2008 | | | | | |
| | BPP | correspondence to and correspondence from K. Enos re: P. Rush response letter (0.2); telephone conferences with K. Enos and J. Kalas re: P. Rush response (0.3); | 235.00 | 0.50 | 117.50 |
| | RJA | respond to J. Kalas inquiry re: ARM adjustment error and analysis re: same; | 425.00 | 1.10 | 467.50 |
| | HJR | confer with D. Souders re: escrow liquidation issue (0.1); confer with M. Holmes, R. Herlihy re: same (0.2); | 245.00 | 0.30 | 73.50 |
| | RFH | research trust account requirements (0.6); draft summary re: same (0.6); | 220.00 | 1.20 | 264.00 |
| | DMS | finalize DC Consent Order and send to C. | | | |



WEINER BRODSKY SIDMAN KIDER PC

1300 19TH STREET, NW
FIFTH FLOOR
WASHINGTON, DC 20036-1609
TEL 202 628 2000
FAX 202 628 2011
FEDERAL TAX ID: 52-1779483

American Home Mortgage

03/25/2008
Account No: 98077-089M
Statement No: 10

Post Petition Representation

| Date | | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| | | Parker at DC Department of Banking (0.3); | 420.00 | 0.30 | 126.00 |
| | VTL | revise and supplement WBSK's 5th Fee Application; | 245.00 | 1.10 | 269.50 |
| | MEH | research escrow/trust account requirements for NY, RI, OR, OH, VA and WA (1.2); draft summary regarding same (.5); | 205.00 | 1.70 | 348.50 |
| 02/06/2008 | | | | | |
| | BPP | telephone conference with K. Enos re: response to P. Rush; | 235.00 | 0.10 | 23.50 |
| | RJA | respond to J. Kalas follow-up re: ARM adjustment errors and telephone conference with J. Kalas re: same; | 425.00 | 0.60 | 255.00 |
| | RFH | research trust account requirements (1.7); draft summary re: same (1.8); | 220.00 | 3.50 | 770.00 |
| | MEH | research escrow/trust account requirements for NY, OR, OH, VA and RI (1.5); draft summary regarding same (1.4); | 205.00 | 2.90 | 594.50 |
| | DMS | telephone conference with J. Kalas and R. Hardman regarding foreclosure bidding issues (0.5); | 420.00 | 0.50 | 210.00 |
| 02/07/2008 | | | | | |
| | RFH | research trust account requirements (0.7); draft summary re: same (0.7); | 220.00 | 1.40 | 308.00 |
| | MEH | draft summary of state trust account/escrow requirements regarding NY, OH, OR, RI, VA and WA; | 205.00 | 1.80 | 369.00 |
| | VTL | finalize WBSK's 5th Fee Application (0.2); electronic correspondence to M. Whiteman regarding filing of WBSK's 5th Fee Application (0.1); | 245.00 | 0.30 | 73.50 |
| | DMS | telephone conference with G. Barr regarding bankruptcy issues for negligent sale of asset | | | |



# EXHIBIT T

581 F.2d 69
UNITED STATES of America v. Norman DANSKER

Joseph Diaco, Steven Haymes, Warner Norton,
Donald Orenstein, Nathan L. Serota, Andrew
Valentine, Investors Funding Corporation
of New York and Valentine
Electric Company.
Appeal of Joseph DIACO.
No. 78-1370.
United States Court of Appeals,
Third Circuit.
Argued June 20, 1978.
Decided July 14, 1978.
As Amended Aug. 8, 1978.

565 F.2d 1262
UNITED STATES of America
v.
Norman DANSKER, Appellant in No. 77-1751, Joseph Diaco,
Steven Haymes, Warner Norton, Donald Orenstein, Nathan L.
Serota, Andrew Valentine, Investors Funding Corporation of
New York, and Valentine Electric Company.
Appeal of Steven HAYMES, in No. 77-1752.
Appeal of Donald ORENSTEIN, in No. 77-1753.
Appeal of Joseph DIACO, in No. 77-1761.
Appeal of Andrew VALENTINE and Valentine Electric Co., in No. 77-1762.
Nos. 77-1751/3 and 77-1761/2.
United States Court of Appeals,
Third Circuit.
Argued Sept. 7, 1977.
Decided Oct. 28, 1977.

Appellant Diaco and co-defendants Dansker, Haymes, Orenstein and Valentine were convicted
of two substantive violations of 18 U.S.C. § 1952 for attempting to bribe two state officials, and
of one count of conspiracy to commit those offenses. Each was sentenced to concurrent terms of
five years imprisonment and a fine of $10,000 on each of the three counts.

T63

561 F.2d 485

UNITED STATES of America
v.
Norman DANSKER, Appellant in No. 77-1751, Joseph Diaco, Steven Haymes, Warner Norton, Donald Orenstein, Nathan L. Serota, Andrew Valentine, Investors Funding Corporation of New York, Valentine Electric Company.
Appeal of Steven HAYMES, in No. 77-1752.
Appeal of Donald ORENSTEIN, in No. 77-1753.
Appeal of Joseph DIACO, in No. 77-1761.
Appeal of Andrew VALENTINE and Valentine Electric Co. in No. 77-1762.

Nos. 77-1751 77-1753 and 77-1761, 77-1762.

United States Court of Appeals,
Third Circuit.

*Aug. 15, 1977.*

Gerald L. Shargel, Fischetti & Shargel, New York City, Richard A. Levin, Amster & Levin, Milburn, N. J., Frederic C. Ritger, Jr., South Orange, N. J., Edward Gasthalter, Hoffman, Pollok, Mass & Gasthalter, New York City, for appellants.

John J. Barry, Chief, Appeals Div., Newark, N. J., for appellee.

OPINION SUR DENIAL OF REHEARING EN BANC

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

PER CURIAM:

1 Defendants were convicted under a three count indictment charging conspiracy to violate the Travel Act, 18 U.S.C. § 1952, and substantive offenses under that statute. After argument and briefing, the district court in a detailed opinion denied motions for judgments of acquittal and for a new trial. On a prior appeal to this Court, defendants contended that the government had committed a Brady violation in failing to disclose the existence of a witness named James Silver and communications made by him to the prosecution.

2 We affirmed the convictions on one count, vacated another, and reversed the third, United States v. Dansker, 537 F.2d 40 (3d Cir. 1976). We concluded that it was inappropriate for us to resolve the Brady claim in the first instance, and suggested that the defendants' allegations should first be presented to the district court on an appropriate Rule 33, Fed.R.Crim.P., motion. Defendants' petition for certiorari was denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

East Coast Capital LLC

T63

SUPREME COURT OF NEW JERSEY
E-76 September Term 2002

IN THE MATTER OF :

John Andrew Valentine : ORDER

An Attorney at Law :

It is ORDERED that the resignation without prejudice of John Andrew Valentine of Bethseda, MD (Attorney No. 1984-1997), tendered in accordance with the provisions of Rule 1:20-22, be and hereby is accepted, effective immediately; and it is further

ORDERED that any subsequent application by said John Andrew Valentine for membership in the bar of this State be made in accordance with the provisions of Rule 1:24.

WITNESS, the Honorable Deborah T. Poritz, Chief Justice, at Trenton, this 25th day of March, 2003.

Stephen W. Townsend
CLERK OF THE SUPREME COURT

Andrew Valentine

Attn Claim # 1416 10/4/07
#947 9/17/07

IMAGE supressed
Schedule - 75114230
T64

# EXHIBIT U

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

**SUSAN and BRYAN ANDREWS,**
**Plaintiffs,**

**v.** **Case No. 05C0454**

**CHEVY CHASE BANK, FSB,**
**Defendant.**

---

**DECISION AND ORDER**

Plaintiffs Susan and Bryan Andrews bring this putative class action against defendant Chevy Chase Bank, FSB alleging that defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq., in a number of respects. Before me now are the parties' cross-motions for summary judgment and plaintiffs' motion for class certification.

## I. FACTS

In June 2004, plaintiffs obtained a loan from defendant, a federally chartered bank, to refinance their home in Cedarburg, Wisconsin. In April 2004, defendant provided plaintiffs with preliminary disclosures about the loan, including a consumer handbook on adjustable rate mortgages, an adjustable rate mortgage ("ARM") disclosure and a preliminary Truth in Lending Disclosure Statement. At the closing, defendant provided plaintiffs with additional disclosures, including an Adjustable Rate Note ("ARN"), a Truth in Lending Disclosure Statement ("TILDS") and an Adjustable Rate Rider ("ARR").

Plaintiffs state that when they obtained the loan, they believed that the payments and the interest rate were fixed for five years and became variable thereafter. However, although



the minimum monthly payment was fixed for five years,[1] the interest rate was not. The loan carried a discounted or "teaser" interest rate of 1.950 percent, but that rate applied only to the first monthly payment, after which the interest rate increased every month according to a formula. As the interest rate increased, an ever increasing portion of the minimum monthly payment of $701.21 was needed to cover interest, and the minimum payment itself soon became insufficient to cover accrued interest.

I will discuss additional facts in the course of the decision. In addition, to facilitate reader understanding, I include defendant's TILDS as Exhibit A at the end of this decision.

**II. SUMMARY JUDGMENT MOTIONS**

I will address the parties' summary judgment motions first and then proceed to plaintiffs' motion for class certification. See Cowen v. Bank United of Tex. FSB, 70 F.3d 937, 941 (7th Cir. 1995).

**A. Applicable Law**

**1. Summary Judgment Standard**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the

[1]Plaintiffs had the option of paying more than the fixed minimum monthly payment.



nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

In evaluating a motion for summary judgment, I must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, I am "not required to draw every conceivable inference from the record-only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). Where, as here, both parties move for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. If issues of fact exist, neither party is entitled to summary judgment. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir.1983).

**2. TILA**

Congress enacted TILA to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them. 15 U.S.C. § 1601(a). Congress delegated broad authority to the Federal Reserve Board ("Board") to implement TILA, and the Board has exercised such authority by promulgating Regulation Z, see Regulation Z, 12 C.F.R. § 226 et seq., and through its interpretations and official staff commentary. The Board's pronouncements are entitled great weight. Ford Motor Credit Co. v. Miholin, 444 U.S. 555, 565-70 (1980).

TILA requires lenders to disclose certain information about the terms of the loan to prospective borrowers. 15 U.S.C. § 1638; 12 C.F.R. § 226.17. If a loan contains a variable rate feature, lenders must provide certain preliminary disclosures, 12 C.F.R. § 226.19, and also disclose the existence of the feature at closing. 12. C.F.R. § 226.18. Lenders must



group information required to be disclosed by § 226.18 and segregate it from other information. 12 C.F.R. § 226.17(a). Lenders often place such information on a separate sheet known as a Truth in Lending Disclosure Statement or TILDS.

All required disclosures must be clear and conspicuous. 15 U.S.C. § 1632(a); 12 C.F.R. § 226.17. A disclosure is clear if it is reasonably understandable. "If a disclosure is capable of more than one plausible interpretation, it is not clear." Elizabeth Renuart & Kathleen Keest, Truth In Lending § 4.2.4 (5th ed 2003); see also Handy v. Anchor Mortgage Corp., 464 F.3d 760, 764 (7th Cir. 2006). A disclosure is conspicuous if it "draws the consumer's attention." Renuart & Keest, supra, § 4.2.4. Thus, a lender may not disclose information so as to "obscure the relationship of the terms to each other." Commentary 226.17(a)(1).

The "sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." Smith v. Cash Store Mgmt., 195 F.3d 325, 328 (7th Cir.1999). The standard for determining whether a disclosure is sufficient is an objective one. Smith v. Check-N-Go of Ill., Inc., 200 F.3d 511 (7th Cir. 1999). Further, "whether a particular disclosure is clear for purposes of TILA is a question of law that depends on the 'contents of the form, not on how it affects any particular reader.'" Handy, 464 F.3d at 764 (quoting Check-N-Go of Ill., Inc., 200 F.3d at 515). Similarly, whether a disclosure is conspicuous is a question of law. Check-N-Go of Ill., Inc., 200 F.3d at 515.

TILA is a remedial statute, thus, consistent with its plain language, it must be construed liberally in favor of consumers. Rossman v. Fleet Bank, 280 F.3d 384, 390 (3d Cir. 2002). A lender must comply with the letter as well as the spirit of TILA. Handy, 464 F.3d at 764.



"'[A] misleading disclosure is as much a violation of TILA as a failure to disclose at all.'"
Barnes v. Fleet Nat'l Bank, 370 F.3d 164, 174 (1st Cir. 2004) (quoting Smith v. Chapman, 614
F.2d 968, 977 (5th Cir.1980)).

I will discuss certain requirements of TILA in greater detail in the course of the decision.

**B.    Alleged TILA Violations**

    **1.    Disclosure of Payment Schedule**

Plaintiffs first allege that defendant failed to disclose information concerning the loan's
payment schedule as required by TILA.    Title 15 U.S.C. § 1638(a)(6) requires lenders to
disclose "the number, amount and due dates or period of payments scheduled to repay the
total of payments."  The disclosure must "reflect the terms of the legal obligations of the
parties." 12 C.F.R. § 226.17(c)(1).  Where, as here, a loan involves both a variable interest
rate and scheduled variations in payment amounts, the schedule of payments should
"disclose the amount of any scheduled initial payments followed by an adjusted level of
payments based on the initial interest rate."  Commentary § 226.17(c)(1)-12. Lenders
specifying the period of payments scheduled to repay a loan "as a general rule . . . must
disclose the payment intervals or frequency, such as 'monthly' or 'bi-weekly,' and the calendar
date that the beginning payment is due."  Commentary § 226.18(g).

Information concerning the number, amount and periods of payments must be
disclosed clearly and conspicuously. § 1632(a); 12 C.F.R. § 227.17.  Further, lenders must
group such information, see Commentary § 226.18(g) and model forms (App. H No. 12, 13),
and conspicuously segregate it "from all other terms, data, or information provided in
connection with a transaction."  § 1638(b)(1).  Lenders may group and segregate the

465

information by enclosing it in a box, using bold print, dividing lines or setting it off in some other way. Commentary § 226.17(a)(1)-2; see also 12 C.F.R. § 226.17.

In the present case, as to the number and amount of payments, defendant properly disclosed that plaintiffs had to make sixty payments of $701.21, followed by three hundred payments at an adjusted level of $983.49. Defendant also properly based the adjusted level of payments on the initial interest rate. See Commentary § 226.17(c)(1)-12.

With respect to payment periods, however, defendant disclosed the due dates of the first and last payments in a column in a box (known as the "federal box") on its TILDS but did not disclose the payment periods, i.e., that payments were due monthly, in either the column or the box. Thus, it would appear that defendant failed to disclose the period of payments as required by TILA. Defendant argues that its disclosures satisfy TILA because it included a sentence on its TILDS stating that "[t]his loan program allows you to select the type of payment you may make each month, in accordance with disclosures provided to you earlier," and because it provided plaintiffs with other documents indicating that they had to make monthly payments. I agree with plaintiffs.

First, the sentence on which defendant relies does not focus on payment periods but on a borrower's right to select a type of payment. The words "each month" modify the borrower's right to select. Thus, an ordinary consumer would not conclude that the sentence established an obligation to make monthly payments. Further, to the extent that the sentence relates to payment periods, it is ambiguous. An ordinary consumer would interpret the sentence's authorization to "select the type of payment you make each month" as permission to decide for herself whether to make a payment each month and in what amount. Thus, the sentence does not clearly require a borrower to pay monthly.



The sentence does not satisfy the clear and conspicuous requirement for other reasons as well.  Defendant printed it in very small print and sandwiched it between the bottom of the federal box and information regarding the loan's lack of a demand feature, which defendant printed in larger print.  Thus, the sentence would not draw the attention of an ordinary consumer.  For this reason also, it is not conspicuous.  See Van Jackson v. Check 'N Go of Ill., Inc., 193 F.R.D. 544, 548-49 (N.D. Ill. 2000) (finding TILA violation where disclosure was outside the federal box); see also Leathers v. Peoria Toyota-Volvo, 824 F. Supp. 155, 158 (C.D. Ill. 1993) (same).

In addition, because defendant located the sentence in a different place than the information concerning the number and amounts of payments, it did not group and segregate the disclosure as TILA requires, and it "obscure[d] the relationship of the terms to each other." Commentary § 226.17(a)(1).

Similarly, defendant's statements in other documents, the ARN and the ARR, that plaintiffs had to make monthly payments do not satisfy the segregation requirement.  This is so because the statements would not draw the ordinary consumer's attention and because defendant did not group them with information regarding the number and amounts of payments, did not segregate the information concerning the payment schedule from the other terms of the loan and obscured the relationship of the terms regarding payment to each other.[2]

---

[2]In Hamm v. Ameriquest Mortgage Co., No 05C0227, 2005 WL 2405804 (N.D. Ill. Sept. 27, 2005), the court held that a defendant's failure to include the period of payments in its TILDS did not violate TILA because the defendant provided the information in other documents and because there was no evidence that the plaintiff was confused by the omission. However, disclosures concerning the payment schedule must be "grouped together . . . segregated from everything else." 12 C.F.R. § 226.17. Further, whether or not the



For the foregoing reasons, defendant's disclosure of the period of payments portion of the payment schedule does not comply with TILA.

**2. Disclosures of Cost of Loan as Annual Percentage Rate and Variable Interest Rate Feature**

Plaintiffs also argue that defendant's disclosures of the cost of the loan as an annual percentage rate ("APR") and the loan's variable interest rate feature are not clear as required by TILA. I will consider both of plaintiffs' arguments in this section because the challenged disclosures are related and because the analyses of their clarity are largely similar.

**a. Disclosure of Cost of Loan as Annual Percentage Rate**

Section 1638(a)(4) requires disclosure of the cost of a loan to the borrower "as an 'annual percentage rate' using that term." Further, where, as here, a loan's initial interest rate is subsequently adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation." Commentary § 226.(17)(C)-6. In addition, § 1638(a)(8) requires lenders to provide a brief "descriptive explanation[ ]" of the APR. See also § 226.18(e). TILA's clear and conspicuous requirement applies to the disclosure and explanation of the cost of the loan as an annual percentage rate. Commentary § 226.17(a)(1)-1.

On its TILDS, defendant stated that the APR was 4.047 percent and explained that this figure reflected the cost of the loan "as a yearly rate." Plaintiffs contend that defendant provided other information in its TILDS and other disclosures that strongly implied that the

---

borrower is confused is irrelevant. Handy, 464 F.3d at 764. Thus, Hamm appears to have been wrongly decided. See Washington v. Ameriquest Mortgage Co., No. 05C1007, 2006 WL 1980201(N.D. Ill. July 11, 2006) (rejecting Hamm).

cost of the loan expressed as a yearly rate was 1.950 percent and that therefore defendant's APR disclosure is unclear. I agree. An ordinary consumer reading defendant's disclosures would be confused about the cost of the loan, expressed as an annual percentage rate.

I note first that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all." Barnes, 370 F.3d at 174. Further, in determining whether a disclosure is clear as required by TILA, I may consider all of the information in a defendant's disclosures. Renuart & Keest, supra, § 4.2.4 (stating that TILA's clear and conspicuous standard requires that disclosures be understandable and that a lender which provides conflicting information about a transaction violates such standard); see also Handy, 464 F.3d at 764 (holding that where a lender provided a borrower with a correct disclosure but also provided the borrower with an incorrect form, the disclosure was unclear); Roberts v. Fleet Bank (R.I.), 342 F.3d 260, 267-68 (3d Cir. 2003) (stating that in determining whether a required disclosure is clear, a court may consider the other information that the lender provided to the borrower); Ralls v. Bank of N.Y., 230 B.R. 508, 516 (Bankr. E.D. Pa. 1999) (stating that where there was a contradiction between TILA disclosures and other information provided by the lender, the disclosures were unclear); Affatato v. Beneficial Corp., No. 96 CV 5376(NG), 1998 WL 472494 (E.D.N.Y. Aug. 7, 1998) (denying motion to dismiss where the borrower alleged that the lender provided additional information which conflicted with the disclosures).

Defendant made several statements that conflicted with its disclosure that the cost of the loan as an annual percentage rate was 4.047 percent. Defendant stated on its TILDS and in other disclosures, including its preliminary disclosures (the ARM and the preliminary TILDS) and documents that it provided at the closing (the ARN and the ARR), that the loan carried an interest rate of 1.950 percent. In no disclosure did defendant mention any other interest

u65

rate. Further, in its ARN, defendant stated that the 1.950 percent rate was a "yearly rate," the identical phrase that it used to define the APR. Thus, in addition to stating that the cost of the loan as a yearly rate was 4.047 percent, defendant suggested that the cost of the loan as a yearly rate was 1.950 percent. As previously indicated, however, the 1.950 percent rate was, in fact, a discounted or teaser rate, which applied only to the first monthly payment. However, defendant also muddied up this fact by failing to disclose, as it was required to do under § 226.19, that the rate was discounted, stating instead in its ARM only that the rate "may" have been discounted. Defendant's repeated references in its disclosures to the 1.950 percent rate, its characterization of such rate as a yearly rate and its lack of forthrightness about the discounted nature of the rate would both confuse and mislead an ordinary consumer about the cost of the loan as an annual percentage rate.[3]

Finally, on the back of its TILDS, defendant made another misleading statement, which in the context of its repeated references to the 1.950 percent rate could only add to an ordinary consumer's confusion as to the cost of the loan as an annual percentage rate. Defendant stated "if interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same." In fact, even if interest were the only finance charge, the annual percentage rate would not be 1.950 percent. Rather, the annual percentage rate was based on a composite of the discounted interest rate (1.950 percent) for as long as it was applied (one month) and the interest rate without the discount feature, which

---

[3]Where the interest rate and the APR are merely different ways of calculating the cost of a loan as a yearly rate, disclosure of the interest rate might not confuse an ordinary consumer. See, e.g., Smith v. Anderson, 801 F.2d 661, 663-64 (4th Cir. 1986); In re Lewis, 290 B.R. 541, 549 (E.D. Pa. 2003); Robinson v. First Franklin Fin. Corp., No. 05-6652, 2006 WL 2540777, at *4 (E.D. Pa. Aug. 31, 2006). As discussed, however, in the present case, the 1.950 percent figure was a teaser rate and not the interest rate on the loan.



was much higher.

For the foregoing reasons, defendant's disclosure of the cost of the loan as an annual percentage rate was unclear.

**b. Disclosure of Variable Interest Rate Feature**

Plaintiffs also allege that defendant did not clearly disclose that the loan had a variable interest rate feature. If a loan has such a feature, the lender must make certain preliminary disclosures and also disclose the existence of the feature on its TILDS. 12 C.F.R. § 226.18(f). Plaintiffs allege that although defendant stated on its TILDS that the loan had a variable interest rate feature, it also included information on the TILDS which misleadingly implied that the feature did not take effect until after the first five years of the loan. I agree.

I again note that a lender may cause a disclosure to become unclear by including conflicting information in its disclosures. See Handy, 464 F.3d at 764; Barnes, 370 F.3d at 174; Roberts, 342 F.3d at 267-68; In re Ralls, 230 B.R. at 516; Affatato, 1998 WL 472494, at *3. In the present case, defendant included information on its TILDS from which an ordinary consumer could easily infer that the interest rate on the loan was fixed for five years and became variable thereafter. Specifically, defendant stated on its TILDS that plaintiffs' loan was a "5-year fixed" loan. This statement was confusing because although it is true that the payments on the loan were fixed for five years, the interest rate was not. Defendant could easily have indicated this by including the word "payments" after the word "fixed" on its TILDS, but it did not do so. Rather than narrowing the application of "fixed," defendant used the word to describe the general nature of the loan. Further, defendant placed the "5-year fixed" language immediately above its statement that the interest rate was 1.950 percent and thus strengthened the implication that the five-year fixed language applied to the interest rate. An



ordinary consumer reading defendant's TILDS could easily conclude that the interest rate was fixed for five years and variable in the last twenty-five. Further, defendant misleadingly stated in its ARN and ARR that in August 2004 the interest rate "may" change not that, as defendant well knew, it would change.

Defendant responds that it stated in other disclosures as well as the TILDS that the loan had a variable rate feature. However, to be unclear, TILA requires only that a disclosure be capable of being plausibly interpreted in more than one way. An ordinary consumer reading defendant's TILDS could plausibly conclude that the loan had a variable interest rate feature which took effect after the first five years of the loan. Therefore, defendant's disclosure violated TILA.

### 3. Information Added to TILDS

TILA bars a lender from adding information to its TILDS that is not "directly related" to required information. 12 C.F.R. 226.17(a). Plaintiffs argue that defendant's statement on its TILDS that the loan's interest rate was 1.950 percent violated this prohibition. In determining whether information is directly related to required information, I ask whether the added information is meaningfully connected to the required information and whether it is likely to be useful to an ordinary borrower. See, e.g., Goldberg v. Del. Olds, Inc., 670 F. Supp. 125, 129 (D. Del. 1987), aff'd, 845 F.2d 1011 (3d Cir. 1988). TILA does not require a lender to disclose a loan's interest rate. Further, in the present case, defendant was most assuredly not required to disclose the 1.950 percent rate, which applied only to the first monthly payment. However, as discussed, defendant included the 1.950 percent rate on its TILDS. Yet the 1.950 percent figure had virtually no relation to any information required to be disclosed on the TILDS, much less a direct relation. The 1.950 percent rate had no significant



connection to the cost of the loan. Moreover, a reference to the 1.950 percent rate would not be useful to an ordinary borrower because it would cause the loan to appear more attractive than it actually was and serve no useful purpose. Thus, by adding information to its TILDS that was not directly related to that required, defendant violated TILA.

**4. Disclosure of Possibility of Negative Amortization**

Finally, plaintiffs allege that defendant did not sufficiently disclose the consequences of negative amortization. The Commentary to 226.19(b)(2)(v) explains that "[a] creditor must disclose, where applicable, the possibility of negative amortization." Where, as here, a loan permits a borrower to make payments at a fixed level, "the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal balance will increase)." Commentary § 226.19(2).

In its ARM disclosure, defendant stated that:

> Interest Rate changes and your ability to make less than a Fully Amortizing Payment each month, or a combination of the two, may result in the accumulation of accrued but unpaid interest ('Deferred Interest Balance').
>
> Each month that the payment option you choose is less than the entire interest portion, we will add the Deferred Interest Balance to your unpaid principal. We will also add interest on the Deferred Interest Balance to your unpaid principal each month. The interest rate on the Deferred Interest Balance will be the Fully Indexed Rate.

Although defendant did not use the language suggested by the commentary, it did inform borrowers as to what would occur if they made only the minimum monthly payments. Thus, defendant's disclosure satisfied TILA.

**C. Available Remedies**

As remedies for defendant's TILA violations, plaintiffs seek (1) statutory damages; (2)

