# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE, | ) | (Jointly Administered) |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | ) | |
| | ) | |
| *Debtors.* | ) | |
| | ) | |
| THOMAS J. AND SARA A. CHAVEZ, | ) | |
| | ) | |
| *Movants,* | ) | |
| | ) | Obj. Deadline: July 10, 2008 at 4:00 p.m. |
| v. | ) | Hr'g Date: July 17, 2008 at 2:00 p.m. |
| | ) | |
| AMERICAN HOME MORTGAGE SERVICES, | ) | |
| INC., a Maryland Corporation; AMERICAN | ) | |
| HOME MORTGAGE CORP., a New York | ) | |
| Corporation; and DOES 1-20; | ) | |
| | ) | |
| *Respondents.* | ) | |

## MOTION OF THOMAS J. AND SARA A. CHAVEZ
## FOR RELIEF FROM THE AUTOMATIC STAY

COME NOW Thomas J. and Sara A. Chavez ("Mr. and Mrs. Chavez" or the "Movants"), by and through undersigned counsel, and hereby move this Honorable Court pursuant to Section 362(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 4001, and Local Rule 4001-1 for an order lifting the automatic stay imposed by section 362 for the purpose of permitting Mr. and Mrs. Chavez to proceed to trial against any or all of the above-captioned debtors (the "Defendant Debtors") in a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp, a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Mellville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75036.

non-bankruptcy court for the purpose of obtaining permanent injunctive relief against the Defendant Debtors and liquidating their claims against the Defendant Debtors (the "Motion"). In support of the Motion, Mr. and Mrs. Chavez respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue for this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

2. Pre-petition, on November 22, 2006, Mr. and Mrs. Chavez entered into a $1,779,775.05 (principal) re-financing in connection with their primary residence located at 35012 Camino Capistrano, Dana Point, California 92624. The lender was non-debtor American Home Loans ("AHL"). (Reference is made to the Affidavit of Charles D. Richmond, Esq., filed contemporaneously herewith, at ¶4.1, cited hereinafter as "Richmond Aff., at ¶ __".)

3. Soon thereafter, a material discrepancy was identified between the Federal Truth-in-Lending Disclosure Statement (the "Disclosure Statement") and Adjustable Rate Note rider (the "Note") that had been provided to Mr. and Mrs. Chavez at closing on the one hand and the Deed of Trust drafted by non-debtor The Escrow Forum (recorded November 30, 2006) and related loan documents (the "Deed of Trust") on the other. (Richmond Aff., at ¶4.2; copies of the Disclosure Statement, Note, and Deed of Trust are attached as Exhibits 1 through 3, respectively, of the Complaint (as defined below), which is attached hereto as Exhibit A).

4. On December 5, 2006, CBSK Financial Corp. was designated loan servicer and reflected the accurate loan figures in its records. Thereafter, Sterling Eagle Mortgage Investment Company, LLC ("Sterling") became the loan servicer. (Richmond Aff., at ¶4.3.)

5.  On December 18, 2006, Sterling, by and through its subsidiary Surestep Fulfillment Services, issued to Mr. and Mrs. Chavez and fraudulently obtained their signatures on an inaccurate -- albeit purportedly "corrected" -- Adjustable Rate Note, back-dated to November 22, 2006, which conformed with the inaccurate Deed of Trust, recorded November 30, 2006. (Richmond Aff., at ¶4.4; copy of Deed of Trust attached as Exhibit 4 to Exhibit A hereto).

6.  On January 10, 2007, Debtor American Home Mortgage Servicing, Inc. ("AHMS") issued notice to Mr. and Mrs. Chavez that it was replacing Sterling as loan servicer effective February 1, 2007. (Richmond Aff., at ¶4.5; copy attached hereto as Exhibit B).

7.  That same day, AHMS inaccurately increased Mr. and Mrs. Chavez's monthly payment (effective January 1, 2007) by $1,029.17 rather than $297.92 as set forth on the Disclosure Statement. (Richmond Aff., at ¶4.6).

8.  On January 22, 2007, AHMS issued an inaccurate "ARM Adjustment Notification" to Mr. and Mrs. Chavez. (Richmond Aff., at ¶4.7).

9.  On April 24, 2007, AHMS issued a "past due" notice to Mr. and Mrs. Chavez relating to amounts allegedly due for April 2007. (Richmond Aff., at ¶4.8; copy attached hereto as Exhibit C).

10. Between March and May of 2007, AHL's Jerry McGarvey contacted AHMS's Tammy Dawson on numerous occasions in an effort to get AHMS to correct its records as they related to Mr. and Mrs. Chavez's loan. (Richmond Aff., at ¶4.9; see correspondence attached hereto as Exhibit D).

11. Nevertheless, on May 17, 2007, AHMS issued a "default" notice to Mr. and Mrs. Chavez relating to amounts allegedly due for April and May 2007 and on May 23, 2007, AHMS

issued an incorrect "ARM Adjustment Notification". (Richmond Aff., at ¶4.10; copies attached hereto as Exhibit E).

12. Mr. and Mrs. Chavez retained legal counsel to bring the Deed of Trust and other loan documents into conformity with the Disclosure Statement. On June 1 and 7, 2007, Mr. and Mrs. Chavez's counsel, Christopher C. Prussak, Esquire, wrote AHMS's Tammy Dawson, among others, advising that his firm had been retained to represent the Chavez's in connection with this matter, which he characterized at least in part as a Truth-in-Lending Act violation. (Richmond Aff., at ¶4.11; copies of correspondence attached hereto as Exhibit F).

13. On July 25, 2007, AHMS issued a "credit correction" letter to Mr. and Mrs. Chavez apologizing for inaccurate credit reporting and stating that amounts allegedly due for April, May, and June 2007 were "paid as agreed." (Richmond Aff., at ¶4.12; copy attached hereto as Exhibit G).

14. In exchange for AHMS's agreement to reinstate the original and correct loan terms, Mr. and Mrs. Chavez made accurate monthly payments to AHMS in the cumulative amount of $11,191.75 for July, August, and September 2007. (Richmond Aff., at ¶4.13; see correspondence from Christopher Prussak, Esq. dated October 15, 2007, attached hereto as Exhibit H).

15. On August 6, 2007 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

16. On August 14, 2007, the United States Trustee appointed an Official Committee of Unsecured Creditors. No trustee or examiner has been appointed. The Debtors' cases have

been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

17. Post-petition, on September 25, 2007, the Defendant Debtors, through their agent Northwest Trustee Services, Inc. ("NTS"), issued "Notice Under Fair Debt Collection Practice Act," (copy attached as Exhibit I), and recorded "Notice of Default and Election to Sell Under Deed of Trust," (copy attached as Exhibit 5 to Exhibit A hereto), thereby initiating a non-judicial foreclosure proceeding under California state law. (Richmond Aff., at ¶4.15).

18. The following day, the Defendant Debtors, through NTS, issued "Trustee Sale Notice" and "Notice of Default and Election to Sell Under Deed of Trust". (Richmond Aff., at ¶ 4.16; copies attached hereto as Exhibit J).

19. In response to the "Trustee Sale Notice" and "Notice of Default and Election to Sell Under Deed of Trust" issued to the Chavez's on September 20, 2007, on December 10, 2007, Mr. and Mrs. Chavez, through their litigation counsel, Mr. Charles D. Richmond, Esquire, filed an 11-count complaint (the "Complaint") in the Superior Court of the State of California in and for the County of Orange, Central Division (the "California State Court") against AHL; the Defendant Debtors, including, but not necessarily limited to AHMS; The Escrow Forum; and others, seeking (1) declaratory relief, (2) permanent injunction to enjoin foreclosure, (3) accounting, (4) breach of written contract, (5) breach of fiduciary duty, (6) negligence, (7) negligent supervision, (8) promissory fraud, (9) intentional misrepresentation, (10) negligent misrepresentation, and (11) unfair trade practices (Case No. 30-2007 00100010) (the "State Court Action"). (Richmond Aff., at ¶5; a copy of the Complaint is attached hereto as Exhibit A).

20. On December 21, 2007, the California State Court issued an order in the State Court Action temporarily restraining the Defendant Debtors and NTS from proceeding with their noticed intent to foreclose. (Richmond Aff., at ¶6; copy attached hereto as Exhibit K).

21. On January 8, 2008, the Debtors filed a Suggestion of Bankruptcy in the State Court Action and NTS issued a "Rescission of Notice of Default and Election to Sell Under Deed of Trust." (Richmond Aff., at ¶7; copies attached hereto as Exhibit L).

22. On January 24, 2008, the California State Court issued an order in the State Court Action preliminarily enjoining the Defendant Debtors and NTS from proceeding with their noticed intent to foreclose. (Richmond Aff., at ¶8; copy attached hereto as Exhibit M).

23. On or about June 9, 2008, Sterling filed its answer to the Complaint in the State Court Action. (Richmond Aff., at ¶9; copy attached hereto as Exhibit N).

24. To date there has been no disclosure statement or plan filed. On information and belief, there has been no distribution to general unsecured creditors. On May 30, 2008, the Debtor filed their *Motion for an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Section 1121(d) of the Bankruptcy Code* (the "Exclusivity Motion"). (D.I. 4329). Pursuant to the Exclusivity Motion, the Debtors seek to extend their exclusive period in which to file a Chapter 11 plan through September 2, 2008, without prejudice to their rights to seek further extensions. Exclusivity Motion, at ¶¶ 24-25.

## BASIS FOR THE RELIEF REQUESTED

25. The Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ... for cause....

11 U.S.C. § 362(d). The term "cause" is not defined in the Code, but rather, must be determined on a case-by-case basis. In the Matter of Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citations, internal quotations omitted).

26.     Rexene involved a class action lawsuit concerning contributions to an employee stock bonus plan. Id., at 575. The suit was filed against the debtors, the plan trustee, and the plan itself. Id. The matter was scheduled for trial in federal court in Texas when the debtors filed their Chapter 11 petitions. Id. The class representatives moved to lift the automatic stay, arguing that discovery was virtually complete and that the case would be ready for trial six weeks hence (after the class notice was sent and returned and three depositions were taken, which remaining discovery could be foregone, if necessary). Id. They also argued that, in the event their motion was denied, the class representatives would have to litigate twice: once against the debtor in Delaware pursuant to the bankruptcy court's claims estimation process and a second time against the trustee and the plan in Texas. Id. In response, the debtors emphasized the additional burden that any class action award would impose on their already overworked in-house legal team and personnel department. Id. In addition, they argued that a motion had already been filed to transfer the entire case to the bankruptcy court, which, if granted, would not only promote judicial economy but also ease the debtors' burden by permitting them to proceed in their preferred venue. Id.

27.     The Court granted the requested relief and order the stay lifted. Id., at 578. Judge Balick reasoned that no great prejudice would befall the debtors as discovery was nearly complete, any added burden on the debtors' in-house legal team was merely speculative, and the longer the trial was delayed the more burdensome it would be for both sides to prepare once again. Id., at 577. The Court noted that one primary reason for lifting the stay is to promote judicial economy. Id. Judge Balick reasoned further that the equities favored lifting the stay because the movants' burden and expense of transporting their lawsuit to Delaware outweighed any hardship to the debtors, especially in light of the fact that the movants' claim would have to be liquidated at some point. Id. Finally, the Court examined the movants' probability of success

7

on the merits and concluded that the required "slight showing" was easily met where the defendants' motion for summary judgment had already been denied. Id., at 578.

28. As the Court expressed in a subsequent case, the three factors considered when balancing the competing interests of debtor and movant are (1) the prejudice that would be suffered should the stay be lifted, (2) the balance of hardships facing the parties, and (3) the probable success on the merits if the stay is lifted. In re Continental Airlines, 152 B.R. 420, 424 (D. Del. 1993).

29. Here, the facts weigh in Movants' favor on each of these three prongs. First, the Defendant Debtors would not suffer prejudice should the stay be lifted because it was the Defendant Debtors, through their agent NTS, that instituted the non-judicial foreclosure proceeding against Mr. and Mrs. Chavez in California in the first instance. Accordingly, California is the Defendant Debtors' choice of forum in connection with this matter. Moreover, although Mr. and Mrs. Chavez have succeeded in obtaining preliminary injunctive relief via the State Court Action, they are seeking (and are entitled to) permanent injunctive relief and damages. Thus, in addition to the equitable relief they are seeking in order to obtain peace of mind, their claims will have to be liquidated at some point before they could receive any distribution in this bankruptcy proceeding.

30. As is evidenced by the Exclusivity Motion, the Defendant Debtors are well beyond their "breathing spell." Moreover, to the extent that the Defendant Debtors' alleged monetary liability to the Chavez's is covered by any applicable insurance policies, any recovery by the Movants will not affect the Defendant Debtors' estates. In re Louisiana World Exposition, Inc., 832 B.R. 1391 (5th Cir. 1987) (debtor has no property interest in its insurance coverage); Matter of Edgeworth, 993 F.2d 51 (5th Cir. 1993) (same). To the extent that the Chavez'e monetary claims are not covered by the Defendant Debtors' insurance, Movants seek

8

to liquidate, as opposed to collect, their monetary damages via the State Court Action. In re Tricare Rehabilitation Systems, Inc., 181 B.R. 569, 578 (Bankr. N.D. Ala. 1994) (lifting the stay to liquidate, as opposed to collect); In re Metzner, 167 B.R. 414, 416 (E.D. La. 1994) (same).

31.  Second, Movants will face substantial hardship if the stay is not lifted. The Chavez's are California residents who are defending a baseless foreclosure action instituted against them post-petition in California by the Defendant Debtors, through their agent NTS. The State Court Action filed by the Chavez's in response arises out of alleged fraudulent conduct occurring primarily in California and is governed by California law. Many documents and witnesses are located in California. If the Chavez's are forced to litigate their claims in Delaware, they would incur the increased expense of bringing their attorneys, witnesses, and evidence to Delaware.

32.  Of critical importance is the fact that the Chavez's key witnesses who live more than 100 miles from this district could not be compelled by subpoena to testify at any trial in Delaware.[2] The State Court Action is the proper forum in which to proceed because California was the Defendant Debtors' original choice of forum, Mr. and Mrs. Chavez's residence is located in California, and the Deed of Trust (and related remedy of non-judicial foreclosure elected by the Defendant Debtors) are creatures of California law with respect to which one would not expect the Bankruptcy Court to be as familiar as the California State Court. In re The Conference of African Union First Colored Methodist Protestant Church, 184 B.R. 207, 218 (Bankr. D. Del. 1995) ("[T]he existence of a more appropriate forum than the bankruptcy court is "cause" for relief under Code § 362(d)(1)."); see In the Matter of Baker, 75 B.R. 120, 121

---

[2] Fed.R.Civ.P. 45(b)(2) and c(3)(A)(ii), made applicable in cases under the Bankruptcy Code by Fed.R.Bankr.P. 9016. The Committee Note to Rule 9016 states: "Although Rule 7004(d) authorizes nationwide service of process, Rule 45 F.R.Civ.P. limits the subpoena power to the judicial district and places outside the district which are within 100 miles of the place of the trial or hearing."

(Bankr. D. Del. 1987) (granting relief from stay to permit Family Court to determine issues with which it has expertise).

33.  Moreover, if made to try their claims against the Defendant Debtors in Delaware, the Chavez's could be forced to conduct a second trial against the non-Debtor defendants, such as AHL, Sterling, and The Escrow Forum in California. Not only would this be anathema to notions of judicial economy, it could result in conflicting or inconsistent verdicts, thereby jeopardizing the overarching goal of uniformity in the administration of justice.

34.  Third, the final prong of the analysis is satisfied by "even a slight probability of success on the merits ... in an appropriate case." In re Continental Airlines, 152 B.R. at 425. This prong also weighs in the Chavez's favor as they have already obtained preliminary injunctive relief and the allegations of fraud and willful misconduct on the part of the Defendant Debtors are more than colorable. "Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where ... the decision-making process should be relegated to bodies other than [the bankruptcy] court." In re Fonseca v. Philadelphia Housing Authority, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990). No strong defenses exist here. At the very least, there can be no question that the State Court Action presents triable factual issues. In re Fernstrom Storage and Van Co., 938 F.2d 731, 736 (7th Cir. 1991) (the court lifted the automatic stay where underlying action was not frivolous).

35.  On these facts, cause exists to lift the stay. In the Matter of Rexene Products, Inc., 141 B.R. at 576 (legislative history indicates "cause" may be established by single factor including to permit action to proceed in another tribunal).

## CONCLUSION

WHEREFORE, Movants respectfully request the entry of an Order, substantially in the form attached hereto, modifying the automatic stay imposed by Section 362(a) of the Bankruptcy Code to allow Movants to proceed with the State Court Action, to seek permanent injunctive relief, to liquidate their monetary claims against the Defendant Debtors, and to seek satisfaction of any monetary judgment obtained against the Defendant Debtors from any insurance coverage available to the Defendant Debtors that may be applicable to Movants' claim.

Dated: June 18, 2008
Wilmington, Delaware

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ E.E. Allinson III*

William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
(302) 428-8191

-- and --

Charles D. Richmond, Esq.
2537 Via Pisa
Del Mar, CA 92014

*Attorneys for Thomas J. and Sara A. Chavez*