IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., et al., | ) ) | Case No. 07-11047 (CSS) |
| | ) | Objection Deadline: June 20, 2008 at 4:00 p.m. (ET) |
| Debtors. | ) | |

**CITIMORTGAGE, INC.'S COMBINED: (1) STATEMENT OF CURE AMOUNT FOR PERIOD BETWEEN INITIAL CLOSING AND FINAL CLOSING; AND (2) OBJECTION TO DEBTORS' PROPOSED PURCHASER'S CURE AMOUNTS
(Docket Nos. 11, 1703, 1711, 2166, 2226, 2236, 2466, 3847, 4021 and 4084)**

CitiMortgage, Inc. ("CMI") submits its objection to the Debtors' proposed purchaser's cure amount, and its liquidated cure claim for the period between the Initial Closing[1] that occurred on November 16, 2007, and the Final Closing that occurred on April 11, 2008, pursuant to both (a) this Court's October 30, 2007 "Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief" [Docket No. 1711] (the "Sale Order"); and (b) this Court's May 9, 2008 "Order, (I) Approving the Form of Notice and Authorizing the Debtors to File a Notice of Proposed Purchaser's Cure Amounts and (II) Establishing a Bar Date for Filing Objections to the Proposed Purchaser's Cure Amounts" [Docket No. 4021] (the "Purchaser's Cure Amount Bar Date Order").

I. **Background**

1. CMI is the counterparty to two servicing agreements that are Assumed Contracts (defined

---

[1] For all capitalized terms or phrases CMI uses in this cure claim and objection, that CMI has not separately defined in this civil claim and objection, CMI is using the term or phrase as the Sale Order defines it.

1824639

2. at Paragraphs 8-12 below) the debtors listed on Schedule I to the Sale Order [Schedule I [Docket No. 1703] at 1, 16-17 at index 1.1(j)am and 21 at index 1.1(j)bf] and Exhibit A to the Purchaser's Cure Order [Exhibit A [Docket No. 4021] at 12-13 at index 1.1(j)am, 17 at index 1.1(j)bf and 38]. CMI is, therefore, a Certain Objector and Counterparty entitled to file its final liquidated cure claim. [Sale Order ¶¶ 33, 34 and Purchaser's Cure Amount Bar Date Order ¶¶ 5, 6].

3. The Sale Order requires the Debtors to serve a schedule setting forth the proposed cure amounts for Assumed Contracts necessary to cure defaults relating to Assumed Contracts where those defaults took place between the date of the Sale Order (October 30, 2007) and the Initial Closing (November 16, 2007). [Sale Order ¶ 34].

4. Paragraph 35 of the Sale Order provides, in pertinent part:

> The Initial Cure Amount and the Interim Cure Amount (together with all amounts payable in respect of Transfer Cost Claims and Setoff Claims, the "Sellers' Cure Amount") shall constitute all amounts owed, if any, with respect to defaults relating to the Assumed Contracts relating to acts or omissions that occurred prior to the Initial Closing;

[Sale Order ¶ 35].

5. Pursuant to the Purchaser's Cure Amount Bar Date Order, the Debtors must also serve a Notice setting forth the proposed Purchaser's Cure Amount for each Assumed Contract related to acts or omissions that occurred after the Initial Closing (November 16, 2007) through and including the Final Closing (April 11, 2008). [Purchaser's Cure Amount Bar Date Order ¶ 5].

6. CMI filed objections to the Debtors' proposed Initial Cure Amounts and a claim for the correct Initial Cure Amount at docket nos. 2226, 2236 and 2466.

7. CMI now files its objection to the Proposed Purchaser's Cure Amount.

8. CMI is entitled to be paid, as the final Interim Cure Amount due it, all amounts necessary to cure the Debtors' defaults occurring between November 17, 2007 and April 11, 2008.

1824639

## II. Veterans Land Board Veterans Housing Assistance Program (to which the Debtors refer as the "Loan Sale and Servicing Agreement with CitiMortgage Inc.")

9. The first CMI Assumed Contract is the TVLB Application, the same contract to which the Debtors refer as the "Loan Sale and Servicing Agreement with CitiMortgage Inc." On August 11, 1994, Columbia National, Inc. (which entity changed its name to American Home Mortgage Servicing, Inc. effective August 1, 2004) signed an Application to participate in the Veterans Land Board Veterans Housing Assistance Program ("TVLB Application"), in which Application it agreed, among other things, to service certain mortgage loans and to be bound by the Veterans Land Board's Guide (the "VLB Guide") and its Program Guidelines (the "VLB Guidelines"). The Debtors refer to the TVLB Application as the "Loan Sale and Servicing Agreement with CitiMortgage Inc." at (a) pages 1 and 21 of Schedule I of the Sale Order and (b) pages 17 and 38 of Exhibit A of the Purchaser's Cure Amount Bar Date Order. To clarify the apparent discrepancy in the Debtors' description of this agreement, CMI's counsel wrote to Debtors' counsel on June 10, 2008, correcting the Debtors' reference to the TVLB Application and attaching both a copy of the TVLB Application and several court filings in which filings CMI had properly identified this agreement. For completeness, CMI also attaches a true and correct copy of the TVLB Application as Exhibit 1 and its letter (without enclosures) to the Debtors' counsel as Exhibit 2. CMI does not however attach the VLB Guide and VLB Guidelines because they are voluminous; but, on reasonable request, CMI will provide copies to interested parties needing to see them.

10. Pursuant to Section 6.05 of the VLB Guide, among other agreements, the Debtors agreed to pay:

> (iii) all costs and expenses incurred by the Administrator or the Board in investigating Participant's activities hereunder when, in the opinion of the Administrator or the Board, such investigation is warranted on the basis of adverse information about the Participant, and (iv) all costs and expenses incurred by the Administrator or the Board in connection with replacing

1824639

Participant as a servicer of program loans in the event of default of Participant under the terms of this Guide.

Article I of the VLB Guide defines the "Administrator" to be CMI [VLB Guide at I-4] and defines "Participant" as the lending institution meeting the VLB Guidelines and approved to participate in the program, or, in this case, the debtor AHM Servicing. [VLB Guide at I-10].

11. Section 8.06 of the VLB Guide further provides:

> <u>Participant to Pay Legal Fees</u>. If it is determined in a judicial proceeding that Participant has failed to perform under any provision of this Guide, and if the Administrator or the Board shall employ attorneys or incur other expenses for the enforcement, performance, or observance of the terms of the Guide on the part of Participant, then the Administrator or the Board, as the case may be, to the extent permitted by Law, shall be reimbursed by Participant, on demand, for reasonable attorneys' fees and other out-of-pocket expenses.

[VLB Guide at VIII-2].

12. In Section 10.310 of the VLB Guidelines, AHM Servicing, as the Participant, agreed to indemnify CMI, as the Administrator, from (among other things) any breach of a representation, warranty or responsibility under the Servicing Agreement. [VLB Guidelines at 66]. Among those provisions of the VLB Guidelines with which the Debtors did not comply prepetition, the debtor AHM Servicing did not provide CMI with written notice of the significant changes in its financial position, as Section 10.305 of the VLB Guidelines requires. [VLB Guidelines at 64].

### III.   HALO 2007-AR1 Master Loan Purchase and Sale Agreement

13. The second CMI Assumed Contract is the Master Loan Purchase and Sale Agreement that all of the parties identify as the HALO 2007-AR1 agreement. [See, e.g., Schedule I [Docket No. 1703] at 16-17]. Subsection 13.01 of the HALO 2007-AR1 agreement provides, in pertinent part:

> [T]he Seller or the Interim Servicer, as applicable, shall indemnify the Initial Purchaser and any subsequent Purchaser and hold them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any

> other costs, fees and expenses that the Initial Purchaser and any subsequent Purchaser may sustain arising out of or based on the failure of the Seller or the Interim Servicer, as applicable, to perform its obligations under this Agreement . . . .

[Halo 2007-AR1 agreement at 48-49]. The HALO 2007-AR1 agreement (and its attachments) is voluminous, and, therefore, CMI does not attach it. But, CMI will provide copies upon reasonable request to interested parties needing to see it.

## IV. The Cash Management Order

14. In addition, CMI also asserts its cure claim pursuant to the "Order Pursuant to Sections 105(a), 345, and 503(B)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code," dated August 7, 2007 (the "Cash Management Order") (Docket No. 66). The Cash Management Order provides that:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court. In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties.

[Cash Management Order at 6].

15. The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provision of the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents.

1824639

[Cash Management Order at 7-8].

## V. Cure Claim and Objection

16. In their November 26, 2007 Interim Period Cure Schedule [Docket No. 2166, Ex. A at 1, 16-17 and 21], the Debtors listed the Proposed Interim Cure Amounts under both of these CMI Assumed Contracts as -0-.

17. Similarly, in their Notice of Proposed Purchaser's Cure Amounts filed on May 19, 2008, the Debtors listed the Purchaser's Cure Amounts as -0-.

18. Pursuant to the Assumed Contracts, the Sale Order, the Purchaser's Cure Amount Bar Date Order and the Cash Management Order, the Debtors' final Interim Cure Amounts due CMI include CMI's reasonable attorneys' fees and costs incurred in this case from November 17, 2007 to and including April 11, 2008. CMI has incurred reasonable attorneys' fees in that period totaling $102,113.50 and reasonable costs in that period totaling $9,469.35 and as follows: (a) attorneys' fees incurred with Morris James LLP in the amount of $39,158; (b) costs incurred with Morris James LLP in the amount of $4,905.49; (c) attorneys' fees incurred with Featherstone Petrie DeSisto LLP in the amount of $62,955.50; and (d) costs incurred with Featherstone Petrie DeSisto LLP in the amount of $4,563.86.

19. CMI attaches to this objection and interim period cure claim as Exhibit 3 the cover sheets for the applicable billing statements Morris James LLP and Featherstone Petrie DeSisto LLP provided to CMI and that CMI pays in the ordinary course after conducting its internal review procedures.[2] Because of the volume of the billing detail, and the attorney-client privilege and work product issues that arise

---

[2] The amounts of final interim period cure attorneys' fees due CMI are only a portion of the amount billed CMI to date because of the fact that those cure amounts consist of only fees incurred from November 17, 2007 to and including April 11, 2008, which period does not include payment for work done from October 30, 2007 to November 16, 2007 and from April 12, 2008 to date.

- 6 -

1824639

with some of the detailed billing descriptions, CMI does not attach the full copies of the billing statements.

WHEREFORE, CMI respectfully requests that this Court enter an order (A) sustaining its objection to the debtors' proposed Purchaser's Cure Amount for the two CMI Assumed Contracts relating to the acts or omissions that occurred after the Initial Closing through and including the Final Closing; (B) sustaining CMI's final Interim Period Cure Claim in the total amount of $111,582.85, and providing for a distribution to CMI from the Cure Escrow in that amount (or such alternate distribution and allowed claim as the Sale Order procedures provide); and (C) granting CMI such further relief as this Court deems just and proper.

Dated: June 20, 2008

**MORRIS JAMES LLP**

/s/ Brett D. Fallon
Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6888
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com

-and-

Andrew J. Petrie (*admitted pro hac vice*)
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400S
Denver, Colorado 80202-5424
Telephone: (303) 626-7139
Facsimile: (303) 626-7101
Email: apetrie@featherstonelaw.com

*Attorneys for CitiMortgage, Inc.*