## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., et al., | Case No. 07-11047 (CSS) (Jointly Administered) |
| Debtors. | **Objection Deadline: July 10, 2008 at 4:00 p.m.** **Hearing Date: July 17, 2008 at 2:00 p.m.** |

## GMAC MORTGAGE LLC'S MOTION PURSUANT TO 11 U.S.C. § 105(a) AND FED.R.BANKR.P. 9014 AND 9020 FOR AN ORDER OF CIVIL CONTEMPT AND COMPELLING THE DEBTORS TO COMPLY WITH PRIOR COURT ORDERS

GMAC Mortgage LLC ("GMACM"), by and through its undersigned counsel,

respectfully files this motion pursuant to Section 105 of title 11 of the United States Code,

11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 9014 and 9020 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order holding American

Home Mortgage Acceptance, Inc. and American Home Mortgage Servicing, Inc. (collectively,

the "Debtors") in contempt of, and to compel the Debtors to comply with, four orders previously

entered by this Court (the "Motion"). In support of this Motion, GMACM respectfully states as

follows:

### Jurisdiction and Venue

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are Section 105 of the Bankruptcy

Code and Bankruptcy Rules 9014 and 9020.

**Factual Background**

4.      On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

5.      Prior to the filing of their bankruptcy cases, the Debtors were in the business of originating, servicing and selling home equity lines of credit (collectively, "HELOCs") and mortgage loans.  Many of the mortgage loans and HELOCs originated by one or more of the Debtors were bundled together in pools and thereafter sold to trusts formed to acquire and own the mortgage loans or HELOCs.  Thus, the trusts hold all right, title and interest in and to the separate pools of mortgage loans or HELOCs, as the case may be, under indentures.

6.      The trusts issued securities in the form of trust certificates or notes to investors "backed" by the mortgage loans or HELOCs and the stream of payments to be made thereunder. The payments called for under the trust certificates or notes derive from the income stream generated by the pool of mortgage loans and HELOCs owned by the trusts and serviced by the Debtors.  Thus, in order to receive payment, the holders of the certificates rely on the servicer to comply with its responsibilities as servicer to manage the collateral.

7.      GMACM and the Debtors are parties to various servicing agreements in connection with mortgage loan securitizations under which the Debtors are the master servicer, servicer, or the subservicer.  Prior to the Transfer Dates (as defined below), GMACM was either the back-up servicer[1] or master servicer, as the case may be, under certain of these HELOC securitization arrangements.  As back-up servicer or master servicer, GMACM is designated as

---

[1]      GMACM is a party to HELOC Back-Up Servicing Agreements which specify its obligations as back-up servicer in connection with certain of the securitizations at issue here.  The HELOC Back-Up Servicing Agreements are described with more specificity in paragraph 10 of this Motion.

the entity to take over the servicing function of the HELOC portfolios following a HELOC Servicer Termination Event (as defined in the relevant indentures).

8.      Prior to the Transfer Dates (as defined below), GMACM served as the master servicer with respect to the securitized portfolio of HELOCS known as the Series 2004-4 HELOC loan portfolio (the "2004-4 HELOCs") under the following servicing agreements:

a.      Servicing Agreement dated December 21, 2004 (the "2004-4 Servicing Agreement") among GMACM, as HELOC Master Servicer, American Home Mortgage Trust 2004-4, as Issuer, American Home Mortgage Acceptance, Inc. ("AHMA"), as Seller, and The Bank of New York, as Indenture Trustee; and

b.      HELOC Subservicing Agreement dated December 21, 2004 among GMACM, as HELOC Master Servicer, and American Home Mortgage Servicing, Inc. ("AHM Servicing"), as HELOC Subservicer (the "2004-4 Subservicing Agreement" and collectively with the 2004-4 Servicing Agreement, the "2004-4 Servicing Agreements").

9.      Additionally, prior to the Transfer Dates (as defined below), GMACM was the back-up servicer ("Back-Up Servicer") and AHM Servicing or AHMA was the servicer for certain HELOC loans under the following agreements:

a.      HELOC Servicing Agreement (the "2005-1 Servicing Agreement") dated as of March 23, 2005 among AHM Servicing, as Servicer, GMACM, as Back-Up Servicer, American Home Mortgage Trust 2005-1, as Issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as Seller, with respect to the securitized portfolio of home equity line of credit mortgage loans known as the Series 2005-1 HELOC loan portfolio (the "2005-1 HELOCs");

b.      HELOC Servicing Agreement (the "2005-2 Servicing Agreement") dated as of June 22, 2005 among AHM Servicing, as Servicer, GMACM, as Back-Up Servicer, American Home Mortgage Investment Trust 2005-2, as Issuer, Deutsche Bank National Trust Company, as the Indenture Trustee, and AHMA, as Seller, with respect to the securitized portfolio of home equity line of credit mortgage loans known as the Series 2005-2 HELOC loan portfolio (the "2005-2 HELOCs");

c.      HELOC Servicing Agreement dated (the "2005-4A Servicing Agreement") as of October 7, 2005 among AHMA, as Servicer, GMACM, as Back-up Servicer, American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as the Indenture Trustee, and AHMA, as Seller, with respect to the securitized portfolio of home equity line of credit mortgage loans known as the Series 2005-4A HELOC loan portfolio (the "2005-4A HELOCs");

d.      HELOC Servicing Agreement (the "2006-2 Servicing Agreement") dated June 30, 2006 among AHM Servicing, as Servicer, GMACM, as Back-Up Servicer, American Home Mortgage Trust 2006-2, as Issuer, Deutsche Bank Trust Company Americas, as Indenture Trustee, and AHMA, as Sponsor, with respect to the securitized portfolio of home equity line of credit mortgage loans known as the Series 2006-2 HELOC loan portfolio (the "2006-2 HELOCs"); and

e.      HELOC Servicing Agreement (the "2007-A Servicing Agreement" and collectively with the 2004-4 Servicing Agreement, 2005-1 Servicing Agreement, 2005-2 Servicing Agreement, 2005-4A Servicing Agreement, and the 2006-2 Servicing Agreement, the "Servicing Agreements") dated March 13, 2007, among AHM Servicing, as Servicer, GMACM, as Back-Up Servicer, American Home Mortgage Trust 2007-A, as Issuer, Deutsche Bank Trust

Company Americas, as Indenture Trustee, and AHMA, as Sponsor, with respect to the securitized portfolio of home equity line of credit mortgage loans known as the Series 2007-A HELOC loan portfolio (the "2007-A HELOCs" and collectively with the 2004-4 HELOCs, 2005-1 HELOCs, 2005-2 HELOCs, 2005-4A HELOCs and the 2006-2 HELOCs, the "HELOCs").

       10.    In connection with the securitization of the HELOCs, various back-up servicing agreements were entered into as follows::

       a.    HELOC Back-Up Servicing Agreement dated March 23, 2005 among GMACM, as Back-Up Servicer, American Home Mortgage Trust 2005-1, as Issuer, and Deutsche Bank National Trust Company, as Indenture Trustee (the "2005-1 Back-Up Servicing Agreement");

       b.    HELOC Back-Up Servicing Agreement dated June 22, 2005 among GMACM, as Back-Up Servicer, American Home Mortgage Investment Trust 2005-2, as Issuer, and Deutsche Bank National Trust Company, as Indenture Trustee (the "2005-2 Back-Up Servicing Agreement");

       c.    HELOC Back-Up Servicing Agreement dated October 7, 2005 among GMACM, as Back-Up Servicer, American Home Mortgage Trust 2005-4A, as Issuer, and U.S. Bank National Association, as Indenture Trustee (the "2005-4A Back-Up Servicing Agreement");

       d.    HELOC Back-Up Servicing Agreement dated June 30, 2006 among GMACM, as Back-Up Servicer, American Home Investment Trust 2006-2, as Issuing Entity, and Deutsche Bank Trust Company Americas, as Indenture Trustee (the "2006-2 Back-Up Servicing Agreement"); and

e.      HELOC Back-Up Servicing Agreement dated March 13, 2007 among

GMACM, as Back-Up Servicer, American Home Mortgage Investment Trust 2007-A, as Issuing

Entity, and Deutsche Bank National Trust Company, as Indenture Trustee ("2007-A Back-Up

Servicing Agreement" and collectively with the 2005-1 Back-Up Servicing Agreement, 2005-2

Back-Up Servicing Agreement, 2005-4A Back-Up Servicing Agreement, and the 2006-2 Back-

Up Servicing Agreement, the "Back-Up Servicing Agreements").

11.     HELOCs operate in a similar fashion to revolving lines of credit.  So long as no

default exists under the HELOC, the borrower under the HELOC (a "HELOC Borrower") is

permitted to borrow up to the credit limit and thereafter re-borrow principal amounts previously

repaid.  Typically, the servicer is responsible for servicing the HELOCs by, among other things,

collecting payments, issuing billing statements to the HELOC Borrower, releasing liens when the

mortgage is satisfied, and instituting foreclosure or other proceedings to collect on defaulted

HELOCs.

12.     On August 6, 2007, the Debtors filed the Emergency Motion Of The Debtors For

Orders: (A)(1) Approving Sale Procedures; (II) Scheduling A Hearing To Consider Sale Of

Certain Assets Used In Debtors' Loan Servicing Business; (III) Approving Form And Manner Of

Notice Thereof And (IV) Granting Related Relief; And (B)(I) Authorizing The Sale Of Such

Assets  Free  And  Clear  Of  Liens,  Claims  And  Encumbrances,  And  Other  Interests;

(II) Authorizing And Approving Purchase Agreement Thereto; (III) Approving The Assumption

And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And

(IV) Granting Related Relief (the "Sale Motion") seeking an order of the Court that, *inter alia*,

authorizes the sale (the "Sale") of the Debtors' servicing business and servicing rights (the

"Servicing Business") free and clear of liens, claims, and encumbrances, and approving the assumption and assignment of certain executory contracts and unexpired leases (D.I. 11).

13.    On October 30, 2007, the Court entered the Order (A) Approving (i) The Sale Of The Debtors' Mortgage Servicing Business Free And Clear Of Liens, Claims And Interests, (ii) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto, And (B) Granting Certain Related Relief (D.I. 1711) (the "Sale Order"), which authorized the Debtors to sell their servicing business to AH Mortgage Acquisition Co., Inc. (the "Purchaser").

14.    The initial and final closings have occurred under the Sale Order.  Accordingly, legal title to the servicing platform has been transferred to the Purchaser.  The Purchaser did not purchase the servicing rights in connection with the HELOCs.

15.    On November 9, 2007, CIFG Assurance North America, Inc. ("CIFG"), the credit enhancer under the 2006-2 Trust filed its Motion for Relief from the Automatic Stay to Permit Termination Rights and Responsibilities of Debtor as Servicer Under the HELOC Servicing Agreement for Series 2006-2  (the "CIFG Motion") (D.I. 1955).  The Court entered the Order Granting, In Part, the Motion of CIFG Assurance North America, Inc. for Relief from the Automatic Stay to Permit Termination of the Rights and Responsibilities of the Debtor as Servicer Under the HELOC Servicing Agreement for Series 2006-2 on December 17, 2007 (the "CIFG Order") (D.I. 2398).  The CIFG Order, among other things, provides for the termination of AHM Servicing as the servicer of the 2006-2 Trust HELOCs as of January 14, 2008 and the turnover of the HELOC Servicing Rights to GMACM on that date.  Pursuant to an agreement between CIFG, the Debtors and GMACM, the termination of AHM Servicing as the servicer of

the 2006-2 Trust HELOCs and the turnover of the HELOC Servicing Rights to GMACM occurred on January 11, 2008 (the "2006-2 Transfer Date").

16.     On November 29, 2007, Financial Guaranty Insurance Company ("FGIC"), the insurer under the 2005-1 Trust, 2005-2 Trust, and 2005-4A Trust filed a similar Motion for Relief from the Automatic Stay (the "FGIC Motion") (D.I. 2224). The Court entered the Order Granting, In Part, the Motion of Financial Guaranty Insurance Company for Relief from the Automatic Stay to Permit Termination of the Rights and Responsibilities of the Debtor as Servicer Under the HELOC Servicing Agreements for Series 2005-1, 2005-2 and 2005-4A on December 21, 2007 (the "FGIC Order") (D.I. 2484). The FGIC Order, among other things, provides for the termination of AHMA and AHM Servicing as the servicer of the 2005-1, 2005-2 and 2005-4A Trust HELOCs as of January 11, 2008 (the "2005 Transfer Date") and the turnover of the HELOC Servicing Rights to GMACM on that date.

17.     On December 17, 2007, Assured Guaranty Corp. ("Assured"), the insurer under the 2007-A Trust filed a similar Motion for Relief from the Automatic Stay (the "Assured Motion") (D.I. 2416). The Court entered the Order Granting, In Part, the Motion of Assured Guaranty Corp. for Relief from the Automatic Stay to Permit Termination of the Rights and Responsibilities of the Debtor as Servicer Under the HELOC Servicing Agreement for Series 2007-A on January 4, 2008 (the "Assured Order") (D.I. 2542). The Assured Order, among other things, provides for the termination of AHM Servicing as the servicer of the 2007-A Trust HELOCs as of January 11, 2008 (the "2007-A Transfer Date" and collectively with the 2006-2 Transfer Date and the 2005 Transfer Date, the "January 11[th] Transfer Dates") and the turnover of the HELOC Servicing Rights to GMACM on that date.

18.    On December 27, 2007, the Debtors filed the Motion for an Order Pursuant to 11 U.S.C. Sections 105(a) and 554 Authorizing the Abandonment of HELOC Servicing Rights Under the 2004-4 HELOC Servicing Agreements and Granting Related Relief (D.I. 2523) requesting authority to abandon their loan servicing rights and to take whatever actions were necessary to effectuate and facilitate the abandonment.  On January 8, 2008, the Court entered the Order Pursuant to 11 U.S.C. §§ 105 and 554 Authorizing the Abandonment of HELOC Servicing Rights Under the 2004-4 HELOC Servicing Agreements and Granting Related Relief (the "2004-4 Order" and collectively with the CIFG Order, FIGC Order and Assured Order, the "Orders") (D.I. 2591).  The 2004-4 Order, among other things, provides for the abandonment of the Debtors' HELOC Servicing Rights (as defined in the 2004-4 Order) as of February 1, 2008 (the "February 1st Transfer Date" and collectively with the January 11th Transfer Dates, the "Transfer Dates") and the turnover of the HELOC Servicing Rights to GMACM on that date.

19.    The CIFG Order was served on Debtors' counsel on December 17, 2007.  See Affidavit of Service at D.I. 2401.

20.    The FIGC Order was served by Debtors' counsel on December 21, 2007.  See Affidavit of Service at D.I. 2622.

21.    The Assured Order and the 2004-4 Order were served by the Debtors' counsel on January 8, 2008.  See Affidavit of Service at D.I. 2706.

22.    Each of the Orders contains a provision that *requires* the Debtors to cooperate with GMACM to transfer the Servicing Rights to GMACM.  In addition, each of the Orders also contains a limitation on the cooperation provision that requires the Debtors to cooperate to the extent commercially practicable.

23.    On the Transfer Dates, GMACM assumed the servicing responsibilities for the HELOCs pursuant to the Orders.

24.    In connection with the transfer of servicing to GMACM, the Debtors were required to turn over approximately 5,922 mortgage servicing files to GMACM. As of the date of this motion, the Debtors have only turned over approximately 728 or approximately 12% of the mortgage servicing files.

25.    As of the date of this Motion, the Debtors have not completed and recorded assignments of certain HELOCs in the applicable local recording office for each mortgage to GMACM or to the mortgage electronic registration system ("MERS") indicating GMACM as servicer in MERS. Unless and until the Debtors complete the recording of these assignments, GMACM is not listed as the servicer of record and does not have the ability to take legal action as to any HELOC. Accordingly, until the assignments are recorded, GMACM requested that the Debtors execute either a power of attorney for each HELOC allowing GMACM to execute documents on behalf of the Debtors or execute a corporate resolution to appoint employees of GMACM as agents of the Debtors for purposes of signing documents, either of which would permit GMACM to record an assignment on behalf of the Debtors. The Debtors were required to properly and formerly assign the HELOCs to GMACM in connection with the transfer of servicing to GMACM. To date, the Debtors have neither executed the assignments nor executed a power of attorney or corporate resolution.

26.    Prior to the Transfer Dates, GMACM began contacting and working with the Debtors to accomplish all actions necessary to effectuate the transfer of servicing to GMACM by the Transfer Dates.

27.     During the last week of February, 2008, Mr. Curtis Schares ("Mr. Schares"), the Director of Client Integration and Reporting Servicing for GMACM spoke to Mr. Robert Love ("Mr. Love") of the Debtors and outlined the outstanding issues related to the transferring of the servicing to GMACM.

28.     On March 4, 2008, Mr. Schares sent a follow-up e-mail to Mr. Love regarding those same issues (the "March 4th Email"). A true and correct copy of the March 4th Email is attached hereto as Exhibit A. Mr. Love indicated in his response that same day that he was forwarding the request to "management at AHM Corp and to Kroll (restructuring advisors) for their response." Mr. Schares did not receive any response to the March 4th Email beyond Mr. Love's response above.

29.     Mr. Schares unsuccessfully attempted to follow-up with the Debtors via telephone regarding the issues identified in the March 4th Email.

30.     On April 10, 2008, to further attempt to amicably resolve the dispute between the parties, GMACM's counsel sent an e-mail to Debtors' counsel regarding the issues described in the March 4th Email and GMACM's unsuccessful attempts to resolve those issues (the "April 10th Email"). A true and correct copy of the April 10th Email is attached hereto as Exhibit B. Counsel for GMACM and the Debtors exchanged correspondence and engaged in a conference call regarding those issues. To date, however, the outstanding issues identified in the March 4th Email have not been resolved despite the continuous efforts of GMACM and its counsel.

31.     GMACM has attempted to resolve these outstanding issues for over four (4) months. On at least six different occasions from April 10, 2008 to the date of this Motion, GMACM's counsel attempted to obtain the Debtors' compliance through their counsel.

32.    To date, the Debtors have not sent the remaining 88% of the mortgage servicing files to GMACM.  In addition, the Debtors have not executed and recorded assignments to GMACM or to MERS in each local recording office.  The Debtors also have not executed powers of attorney or a corporate resolution to allow GMACM to take any necessary actions as to the HELOCs until assignments can be executed and recorded.

### Relief Requested

33.    By this Motion, GMACM respectfully requests that this Court enter an order holding the Debtors in civil contempt of this Court's Orders, awarding compensatory sanctions, and directing the Debtors to comply with the terms of the Orders by (i) turning over the remaining 5,194 mortgage servicing files; (ii) executing and recording assignments of non-MERS registered mortgages in GMACM's name or executing and recording assignments of the non-MERS registered mortgages in MERS' name and indicating GMACM as servicer in MERS; and (iii) for the period prior to the recording of the assignments, executing either powers of attorney for each mortgage to be recorded in the applicable recording office or a corporate resolution authorizing GMACM to execute and record the documentation necessary to publicly evidence the transfer of the HELOCs to GMACM for servicing purposes.

### Basis for Relief Requested

34.    Section 105 provides that the Court "may issue any order … that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  Section 105, however, does not authorize a bankruptcy court to take any action that is contrary to, or not authorized by, the Bankruptcy Code.  See In re Morristown & Erie R.R. Co., 885 F.2d 98, 100 (3d Cir. 1989) (Section 105(a) power must be exercised in manner "consistent with the Bankruptcy Code"); see In re Quanta Resources Corp., 739 F.2d 912, 921 (3d Cir. 1984), aff'd sub nom. Midlantic Bank

v. New Jersey Dept. of Environmental Protection, 474 U.S. 494 (1986). Section 105(a) does not authorize a bankruptcy court to create "substantive rights that would otherwise be unavailable under the Code", U.S. v. Pepperman, 976 F.2d 123, 131 (3d Cir. 1992), or "rights not otherwise available under applicable law", Southern Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985).

35.     As the Third Circuit has held, "[t]he fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be." In re Kaplan, 104 F.3d 589, 597-98 (3d Cir. 1997). Rather, Section 105(a) only authorizes a bankruptcy court to do whatever is necessary to enforce the Bankruptcy Code. In re Fesco Plastics Corp. 996 F.2d 152, 157 (7th Cir. 1993). As the Supreme Court has advised, "whatever equitable powers remain in the bankruptcy court must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988). Thus, Section 105(a) has a "limited scope" and does not authorize a bankruptcy court "to create substantive rights that would otherwise be unavailable under the Code" or applicable law. See In re Continental Airlines, Inc., 203 F.3d 203, 211 (3d Cir. 2000); Pepperman, 976 F.2d at 131; Southern Ry. Co., 758 F.2d at 141. Thus, this Court may only exercise its power under Section 105 in a manner consistent with the Bankruptcy Code.

36.     Bankruptcy Rule 9020 provides that Bankruptcy Rule "9014 governs a motion for an order for contempt made by a party in interest." Fed.R.Bankr.P. 9014. Bankruptcy Rule 9014 requires a party in interest to file a motion for an order of contempt.

37.     Bankruptcy courts may use the powers granted pursuant to Section 105 to hold parties in contempt. See Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert), 411 F.3d

- 13 -

452, 455 (3d Cir. 2005) (noting existence of contempt remedy "pursuant to § 105(a) in bankruptcy court"); <u>see also</u> <u>Hansbrough v. Birdsell (In re Hercules Enterprises, Inc.)</u>, 387 F.3d 1024, 1028 (9th Cir. 2004) ("[I]t is well established that a bankruptcy court is authorized to exercise civil contempt power" pursuant to Section 105); <u>Lawrence v. Goldberg (In re Lawrence)</u>, 279 F.3d 1294, 1301 (11th Cir. 2002) (affirming bankruptcy court's contempt order following debtor's failure to comply with turnover order); <u>Cox v. Zale Delaware, Inc.</u>, 239 F.3d 910, 916-17 (7th Cir. 2001) (noting bankruptcy courts' civil contempt powers); <u>Bessette v. Avco Fin. Serv., Inc.</u>, 230 F.3d 439, 445 (1st Cir. 2000) (Section 105 "provides a bankruptcy court with statutory contempt powers"); <u>Pertuso v. Ford Motor Credit Co.</u>, 233 F.3d 417, 423 n.1 (6th Cir. 2000) ("Section 105 undoubtedly vests bankruptcy courts with statutory contempt powers"); <u>Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)</u>, 108 F.3d 609, 612-13 (5th Cir. 1997) (concluding that per Section 105, a bankruptcy court "can issue any order, including a civil contempt order"); <u>Graham v. U.S. (In re Graham)</u>, 981 F.2d 1135, 1140 (10th Cir. 1992) (noting bankruptcy court's power to sanction parties for contempt under Section 105); <u>Burd v. Walters (In re Walters)</u>, 868 F.2d 665, 669 (4th Cir. 1989) (Section 105 gives bankruptcy court "authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code," including contempt order at issue).

38.    A bankruptcy court also has the inherent power to hold a party in contempt for failing to abide by the court's orders. <u>In re CareMatrix Corp.</u>, 306 B.R. 478, 488 (Bankr. D.Del., 2004) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders.")(internal citations omitted).

39.    Under applicable Third Circuit precedent, civil contempt sanctions for failure to abide by a court order are appropriate if the moving party can show: (1) the existence of a valid

court order; (2) that the defendant had knowledge of the order; and (3) that the defendant disobeyed the order. See Clean Harbors, Inc. v. Arkema, Inc. (In re Safety-Kleen), 331 B.R. 605, 608 (D. Del. 2005); In re CareMatrix Corp., 306 B.R. at 488; In re Continental Airlines, 236 B.R. 318, 330 (Bankr. D. Del. 1999).

40.    The elements for contempt are satisfied in the present case. The Orders were entered on the docket by the Clerk of the Court. See D.I. 2398, 2484, 2542, and 2591. The Debtors did not appeal the Orders. Consequently, as of the date of this Motion, the Orders remain valid and in full force and effect. Accordingly, the first requirement for a finding of contempt has been met.

41.    The Debtors obviously had knowledge of the Orders. The Debtors opposed the CIFG Motion, the FGIC Motion and the Assured Motion and filed the 2004-4 Motion. Hearings were held relative to all of the motions and orders were presented to the Court. The Debtors were served with the CIFG Order, and the Debtors served the FGIC Order, Assured Order and 2004-4 Order. See D.I. 2401, 2622, and 2706. As such, it is irrefutable that the Debtors had knowledge of the Orders and all of their applicable terms. Therefore, the second requirement for a finding of contempt has been met.

42.    Finally, the Debtors' disobeyed the dictates of the Orders. The Orders all contain the same language and require the Debtors to cooperate with GMACM to the extent commercially practicable in light of the Debtors status as debtors and debtors-in-possession to transition the servicing rights to GMACM. Since the entry of the Orders over five (5) to six (6) months ago (depending on the specific order), the Debtors' have failed to cooperate with GMACM in a commercially practicable manner. They have failed to remit at least 88% of the mortgage servicing files that they were required to turn over to GMACM pursuant to the Orders.

In addition, they have failed to execute and record assignments in the local recording offices for the HELOCs that are not recorded in MERS' name. Unless and until the Debtors complete these assignments, GMACM is not listed as the servicer of record and does not have the ability to take legal action as to any HELOC. This could result in the imposition of penalties and fines against GMACM. For example, most jurisdictions impose a penalty on the servicer for failing to timely record a mortgage satisfaction. To the extent that GMACM is not publicly listed as the servicer, it cannot take any action to record a mortgage satisfaction document. In order to address the Debtors failure to assign the servicing of the HELOCs to GMACM (or GMACM vis-à-vis MERS) and to mitigate its (and, by way of indemnification, the estate's) exposure to fines, penalties and other actions, GMACM requested that the Debtors execute either a power of attorney for each HELOC or a corporate resolution that would permit GMACM to record an assignment on behalf of the Debtors. To date, the Debtors have neither executed the assignments nor executed a power of attorney or corporate resolution.

43.     Pursuant to the March 4 Email, GMACM provided the Debtors with a list of requested information and the basis for each request. The requests were commercially reasonable and directly linked to GMACM's ability to perform the required servicing functions under the Servicing Agreements. Upon request, GMACM provided the Debtors with relevant information regarding the HELOCs and forms of documents in an effort to assist the Debtors in fulfilling their obligations in transferring the servicing to GMACM and complying with the outstanding issues identified in the March 4th Email and ultimately the Orders.

44.     GMACM and its counsel have contacted the Debtors and their counsel on numerous occasions in an attempt to amicably obtain the Debtors' compliance with the Orders. Over the course of the last six (6) months, the Debtors' have been consistently unresponsive to

these efforts. Despite GMACM's extensive efforts, the Debtors' consistently refused to provide even the most basic level of cooperation, much less a "commercially practicable" level of cooperation as required by the Orders. Due to the Debtors' steadfast unwillingness to provide even the most basic cooperation, and their blatant refusal to abide by the Orders entered by this Court, the final requirement for a contempt order has been met.

45.     Based upon the foregoing, GMACM has shown that an order of contempt is warranted under the circumstances.   Consistent with applicable Third Circuit precedent, contempt for failure to abide by this Court's Orders is appropriate because the Debtors disobeyed four valid orders of this Court of which they clearly had knowledge.   Accordingly, the Court should enter an order holding the Debtors in civil contempt of the Orders.

46.     Since the Debtors are in contempt of the Orders, the minimum appropriate sanction against the Debtors must include the payment GMACM's attorneys' fees and costs associated with the filing and litigation of this Motion.   In addition, the Debtors should be compelled to comply with the dictates of the Orders by (i) turning over the remaining 5,194 mortgage servicing files; (ii) executing and recording assignments of non-MERS registered mortgages in GMACM's name or executing and recording assignments of the non-MERS registered mortgages in MERS' name and indicating GMACM as servicer in MERS; and (iii) for the period prior to the recording of the assignments, executing either powers of attorney for each mortgage to be recorded in the applicable recording office or a corporate resolution authorizing GMACM to execute and record the documentation necessary to publicly evidence the transfer of the HELOCs to GMACM for servicing purposes.

**Notice**

47.     Notice of this Motion has been given to: (a) counsel for the Debtors, (b) the Office of the United States Trustee, (c) counsel for the Official Committee of Unsecured Creditors, (d) counsel for CIFG, FGIC, Assured and MBIA Insurance Corporation, and (e) those persons who have requested notice pursuant to Fed.R.Bankr.P. 2002. GMACM submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, GMACM respectfully requests that the Court (i) enter an order enter an order holding the Debtors in civil contempt of the Orders and compelling the Debtors to comply with the Orders by (a) turning over the remaining 5,194 mortgage servicing files; (b) executing and recording assignments of non-MERS registered mortgages in GMACM's name or executing and recording assignments of the non-MERS registered mortgages in MERS' name and indicating GMACM as servicer in MERS; and (c) for the period prior to the recording of the assignments, executing either powers of attorney for each mortgage to be recorded in the applicable recording office or a corporate resolution authorizing GMACM to execute and record the documentation necessary to publicly evidence the transfer of the HELOCs to GMACM for servicing purposes, (ii) award GMACM attorneys' fees and costs associated with the preparation, filing and prosecution of the Motion; and (iii) grant such other and further relief as the Court may deem necessary and proper.

Dated:  June 23, 2008
        Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:   /s/ Kimberly E. C. Lawson
      Kimberly E. C. Lawson (No. 3966)
      1201 Market Street, Suite 1500
      Wilmington, DE 19801
      Telephone: (302) 778-7500
      Facsimile: (302) 778-7575
      E-mail: klawson@reedsmith.com

and

Claudia Z. Springer
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: cspringer@reedsmith.com

Attorneys for GMAC Mortgage LLC