UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
-------------------------------------------------x    Chapter 11
In re:                                           :
                                                 :    Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                           :
HOLDINGS, INC., et al.,                          :    Jointly Administered
                                                 :
                    Debtors.                     :
-------------------------------------------------x    Related D.I. 3847
```

**OBJECTION OF LEWTAN TECHNOLOGIES, INC.
TO PROPOSED PURCHASER'S CURE AMOUNTS**

Lewtan Technologies, Inc. ("Lewtan") hereby objects to the Proposed Purchaser's Cure Amount for the Assumed Contract of Lewtan as follows:

1.  American Home Mortgage Corp. and Lewtan entered into a Standard License and Service Agreement (the "Contract") in February, 2005 for the right to use the ABS System, a computer program developed by Lewtan. A copy of the Contract is attached hereto as Exhibit 1. The Contract is referenced by name on the exhibit to the Notice of (I) Debtors' Proposed Purchaser's Cure Amounts and (II) Deadline for Filing Objections to the Proposed Purchaser's Cure Amounts (the "Cure Claim Notice"), with reference to Lewtan as the counterparty.

2.  The Contract requires payment of an annual license fee of $120,000, as set forth on Exhibit B to the Contract. This license fee for the period from February 28, 2008 through February 27, 2009 was invoiced to American Home Mortgage Corp. in April, and a copy of the invoice is attached hereto as Exhibit 2.

The license fee has not been paid, and the obligation to pay the license fee is now past due.

3.  The Proposed Purchaser's Cure Amount listed for the Contract on Exhibit A to the Cure Claim Notice is "$0." Lewtan objects to the Proposed Purchaser's Cure Amount of $0 because it is incorrect. The correct cure amount is $120,000, representing the unpaid annual license fee due under the Contract.

Wherefore, Lewtan objects to the Proposed Purchaser's Cure Amount and asserts that the correct cure amount is $120,000, and requests that the Court enter an order determining that the correct cure amount is $120,000 and directing the Purchaser to pay $120,000 to Lewtan without further delay.

Dated: June 24, 2008

                                                ARCHER & GREINER PC

                                                */s/ Charles J. Brown, III*
                                                Charles J. Brown, III, Esq. (No. 3368)
                                                300 Delaware Avenue, Suite 1370
                                                Wilmington, DE 19801
                                                Wilmington, DE 19801
                                                Phone: 302.777.4350
                                                Fax:  302.777.4352

                                                And

                                                Michael R. Enright, Esquire
                                                Robinson & Cole LLP
                                                280 Trumbull Street
                                                Hartford, CT 06103-3597
                                                Telephone (860) 275-8290
                                                Fax (860) 275-8299
                                                *Attorneys for Lewtan Technologies, Inc.*

# EXHIBIT 1

Case 07-11047-CSS    Doc 4777    Filed 06/24/08    Page 3 of 16

**EXHIBIT 1**



Lewtan
Technologies

# STANDARD LICENSE AND SERVICE AGREEMENT

### 1. STANDARD AGREEMENT AND EXHIBITS

This is Lewtan's Standard License and Service Agreement. Exhibit A contains product-specific information. Exhibit B contains customer-specific information. The terms of the Exhibits are incorporated by reference. All terms and conditions are confidential to the parties.

### 2. LICENSE

#### 2.1 Grant of License

Lewtan Technologies, Inc., a Massachusetts corporation ("Lewtan"), grants to American Home Mortgage Corp., a New York corporation ("Licensee") a license to use the computer program(s) listed on Exhibit A (the "Software") for the term of this Agreement, including any documentation which is delivered with the Software and which explains its operation ("Documentation"). This is a non-exclusive license to use the Software in object code form only.

#### 2.2 Concurrent-User License

This is a "concurrent-user" license, which means that the Software can be accessed simultaneously, but only by the number of concurrent users identified on Exhibit B. The Software may be installed on a LAN or single CPU at the address on Exhibit B, and may be relocated with notification to Lewtan provided that all copies have been deleted from the original location. Licensee may also install one copy at a remote site for archival and/or disaster recovery purposes only.

#### 2.3 Limitations on Use

Use of the Software is limited to Licensee's employees, to those contractors of Licensee for whose compliance with this Agreement Licensee accepts responsibility, and to the business unit or division of Licensee listed on Exhibit B (if applicable). Use is further limited by the product-specific terms contained in Exhibit A.

### 3. IMPLEMENTATION AND INSTALLATION

#### 3.1 Initial Implementation Services.

Lewtan will provide Licensee with initial implementation services as provided on Exhibit A. The cost of implementation services shall be Lewtan's customary time and materials rates including all reasonable out-of-pocket expenses, as provided on Exhibit B. Licensee shall have the responsibility for ordering and installing hardware and software requirements as recommended by Lewtan.

#### 3.2 Installation

Either Lewtan or Licensee, as specified in Exhibit A, shall install the Software on Licensee's system ("Installation"). If the Software is installed by Lewtan, this shall be considered an implementation service and the Licensee shall bear the applicable cost.

#### 3.3 Future Implementation Services

Subject to the availability of personnel, Lewtan agrees to provide additional future implementation services upon Licensee's request. The cost of such additional implementation services shall be at Lewtan's customary time and materials rates then in effect, including all reasonable out-of-pocket expenses. All such future implementation services shall be performed pursuant to a work order which has been executed by both parties prior to commencement of the work.

### 4. TESTING AND ACCEPTANCE

Following installation, Licensee will test the Software to verify that it materially complies with the Documentation and the configuration documentation described in Exhibit B ("Configuration Documentation") ("Complies"). Any request by Licensee to change the Configuration Documentation once it has been agreed to shall be treated as a separate project, and will not be part of the verification process set forth in this section. Prior to Installation, Licensee and Lewtan will mutually agree on a written plan for such verification ("Acceptance Test Plan"), provided, however, that such Acceptance Test Plan will include provisions allowing Licensee to reject the Software and require re-installation for reasons of non-Compliance. Licensee will notify Lewtan within thirty (30) days of Installation of the Compliance or non-Compliance of the Software. If the Software does not Comply, Licensee will notify Lewtan in writing of the areas of non-Compliance, and Lewtan will promptly cause the Software to Comply and notify Licensee in writing when such Compliance is, in Lewtan's reasonable determination, complete. This process will repeat until Acceptance (as defined below) occurs; provided, however, that testing will be limited to five (5) business days for issues that either (a) were identified during the thirty (30) day initial testing period, or (b) resulted from post-installation fixes by Lewtan. If, after thirty (30) days from the initial Installation or Lewtan's notice to Licensee of Compliance, Licensee has not notified Lewtan of a failure of the implemented Software to Comply, the implemented Software will be considered accepted. "Acceptance" shall mean the earlier of such time or Licensee's affirmative notification to Lewtan that the implemented Software Complies. If Licensee notifies Lewtan of a failure of the Software to Conform and Lewtan does not, in accordance with this process, cure the failure within one hundred twenty (120) days of notice of such non-Compliance, Licensee shall then have the right, with ten (10) days written notice, to terminate this Agreement, and Lewtan shall refund to Licensee, within thirty (30) days from termination, all Annual License Fees prepaid by Licensee.

### 5. CHARGES AND FEES

#### 5.1 Fees and Expenses

Licensee shall pay Lewtan an annual License Fee for the Software on the payment schedule provided in Exhibit B. All other fees and expenses shall be billed monthly as incurred, and will be based on Lewtan's customary time and materials rates including reasonable out-of-pocket expenses as such expenses are defined in Exhibit B.

#### 5.2 Payments

Licensee shall have 30 days after receiving an invoice to pay any fee, expense, tax, or charge (except the License Fee, which shall be paid on the dates set forth on Exhibit B). If Licensee fails to make any such payment, Lewtan will provide Licensee with written notice of such failure. Default under this paragraph shall be considered to have occurred thirty (30) days after receipt of such notice. Reasonable disputes over payment shall not be considered default under this section.

**LEWTAN TECHNOLOGIES, INC.**

### 5.3 Taxes

Licensee is solely responsible for payment of any sales or use taxes resulting from Licensee's acceptance of this license. In those states where Lewtan is required to collect sales or use tax, Lewtan will bill and collect tax from Licensee and remit it to the appropriate taxing authority. For other states, Lewtan reserves the right to have Licensee pay any such taxes to Lewtan for remittance to the appropriate authority. Licensee is also solely responsible for the payment of any international duties or governmental charges of any kind, if applicable. Licensee agrees to hold Lewtan harmless from any claims or liability arising from Licensee's failure to report or pay such duties or taxes.

## 6.  LIMITED WARRANTY

### 6.1  Warranty

Beginning with Acceptance, and for the remaining term of this Agreement, Lewtan warrants that when properly installed the Software will perform substantially in accordance with the description of its operation contained in the Documentation (including the Configuration Documentation). Licensee agrees that this Section 6 fully states its sole and exclusive remedy and Lewtan's sole obligation in the event that the Software fails to so perform, and agrees that the obligation of Lewtan to perform any services described in this section is contingent upon Licensee having paid all amounts due and owing to Lewtan under the terms of this Agreement, and upon Licensee not having otherwise materially breached this Agreement.

### 6.2  System Errors

For purposes of this Section, errors in the Software that prevent it from performing substantially in accordance with the Documentation are referred to as "System Errors." Lewtan's sole liability to Licensee under this Section shall be to use all reasonable efforts to correct System Errors. If Licensee sends written notification of a malfunction or error in the Software, Lewtan will, at its own expense and without charge to Licensee reasonably determine whether such malfunction or error is a System Error, and if it is, shall use all reasonable efforts to correct it within a commercially reasonable amount of time with reference to the business needs of the Licensee, as described in the Response Policy attached as Exhibit C. All System Error corrections shall be made on site at Lewtan headquarters and transmitted to Licensee via modem or disk. The obligations in this section are not a warranty that the operation of the Software will be uninterrupted or error-free or that corrections will be possible for all System Errors. Lewtan shall have no obligation to correct (or attempt to correct) and the definition of System Error shall not include any malfunction or error that results from improper application, malfunction of computer software or hardware not supplied by Lewtan, configuration errors due to operating system or software changes made by Licensee, accidental damage, negligence in use, network errors, improperly formatted input data, improper storage, acts of God, electrical power damage, abnormal operating conditions, or modification to the Software made by any party other than Lewtan. Lewtan's obligations under this section are further conditioned on Licensee's adherence to proper procedures as outlined in the Documentation. In the event that Licensee has requested that Lewtan correct a malfunction or error that is reasonably determined by Lewtan to be the result of a cause named in the preceding sentence, or is otherwise reasonably determined by Lewtan not to result from an error in the Software, then Licensee shall pay Lewtan for the time and materials expended by Lewtan in investigating and attempting to correct such malfunction or error at Lewtan's then current time and materials rates, including reasonable out-of-pocket expenses. Lewtan does not include in this warranty and disclaims liability for any software which is manufactured by a third party, and delivered separately wrapped with its license agreement and warranty to Licensee.

### 6.3  Limitations

EXCEPT AS SET FORTH IN THIS SECTION AND SECTION 10 HEREOF, LEWTAN MAKES NO REPRESENTATIONS, WARRANTIES, AGREEMENTS, OR GUARANTEES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THIS LIMITATION ON WARRANTY APPLIES TO THE SOFTWARE AND TO ANY AND ALL OF THE FINANCIAL STRUCTURES CONTAINED IN THE SOFTWARE, INCLUDING ANY UPDATES, MODIFICATIONS, ENHANCEMENTS, OR SUBSCRIPTION SERVICES TO SUCH SOFTWARE OR STRUCTURES. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE OF THIS AGREEMENT. LEWTAN SHALL UNDER NO CIRCUMSTANCES BE RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOST PROFITS, EXPENSES INCURRED BY LICENSEE WHILE THE SOFTWARE IS BEING REPAIRED OR OTHER INDIRECT OR SPECIAL DAMAGES EVEN IF LEWTAN HAS BEEN INFORMED OF THE POSSIBILITY OF SUCH DAMAGE OR LOSS BY LICENSEE OR BY ANY THIRD PARTY. IN NO EVENT SHALL LEWTAN'S TOTAL LIABILITIES TO LICENSEE ARISING OUT OF THIS AGREEMENT OR THE USE OF THE SOFTWARE OR THE RENDERING OF SERVICES EXCEED THE AGGREGATE AMOUNT OF FEES PAID BY LICENSEE TO LEWTAN IN THE TWELVE MONTHS PRECEDING THE CAUSE OF ACTION.

## 7.  SUPPORT

### 7.1  Telephone Support

Following Acceptance, and for the remaining term of this Agreement, Lewtan shall provide twenty (20) hours of telephone support per product per month. The hours of coverage for telephone support are Monday through Friday 8:30 a.m. to 5:30 p.m. EST (or EDT as applicable). Support includes answering inquiries about generic and customer-specific functions of the Software. Lewtan agrees to acknowledge all communications within two hours during normal business hours, and Licensee agrees to reimburse Lewtan for any international telephone expenses incurred. Licensee agrees to pay Lewtan for any telephone support which is provided at any time other than during business hours or is in excess of the twenty-hour limit, or for any support services other than those described in this paragraph at Lewtan's customary time and materials rates. Licensee shall not be entitled to any credit or reimbursement if, at the end of any month, there are any unused hours of support, and no such unused hours can be accumulated for use in any subsequent billing period.

### 7.2  Dial-in Capability

Licensee agrees to provide Lewtan with dial-in capability to Licensee's microcomputer system on which the Software operates via modem. Failure by Licensee to provide reasonable access via modem shall relieve Lewtan of its responsibilities to provide support under this Agreement. Lewtan agrees to abide by any and all security regulations imposed by Licensee regarding dial-in access.

## 8.  ENHANCEMENTS

From time to time, Lewtan may provide enhancements to the Software. Lewtan agrees to provide to Licensee all enhancements which it generally makes available to its customers without an increase to annual License Fees or other additional charge. Such enhancements shall become part of the Software and shall be subject to all of the terms and conditions of this Agreement. Enhancements shall be delivered with program installation instructions and documentation (which shall also be subject to the terms of this Agreement), and shall be installed by Licensee as soon as possible, but in any case within three months of delivery. Licensee shall have

Deleted: ABS Annual License
Deleted: 02/08/05

**LEWTAN TECHNOLOGIES, INC.**

full responsibility for installation, and any expenses relating to such installation shall be borne by Licensee. Failure by Licensee to install any enhancement within the prescribed time shall relieve Lewtan of any and all warranty obligations under this Agreement.

## 9. PROPRIETARY RIGHTS, CONFIDENTIALITY, INDEMNIFICATION

### 9.1 Proprietary Rights

Lewtan retains all right, title, and interest in and to the Software (including the Documentation), subject only to those rights expressly granted to Licensee in this Agreement. Licensee acknowledges that the Software constitutes a valuable asset and contains trade secrets of Lewtan. Lewtan's proprietary interest extends to all elements of the Software, including but not limited to the system design, modular program structure, system logic flow, file contents, report formats, coding techniques and routines, file handling and special search techniques, report generation features of the Software, and objects and palettes. Licensee may not copy the Software or Documentation unless specifically authorized to do so in writing by Lewtan. Lewtan specifically retains rights to any and all software and/or data made available to Licensee through Lewtan's web or ftp site, and any such software and data shall be subject to the terms of this Agreement. Any software developed by Lewtan as a result of any services provided under this Agreement shall be the property of Lewtan, and Licensee shall obtain only a license to use any such software in accordance with the terms of this Agreement. The terms of this Section 10 are expressly intended to protect the proprietary rights of any and all components of the Software, including any and all components which may be manufactured by a third party.

### 9.2 Confidentiality

Licensee and Lewtan have been and will continue to be exposed to confidential information belonging to the other party. Such confidential information includes all elements of the software, as described in the preceding paragraph, and all business information relating to either party, whether disclosed in writing or verbally.

Each party agrees not to reveal and to instruct its employees and contractors not to reveal any of the other party's confidential or proprietary information unless such information is already in the public domain through no fault of the other party or subsequently enters the public domain without breach of this Agreement by the other party, or has been received by the other party without restriction from a third party who, to the best knowledge of the other party after due inquiry, has the right to disclose such information, or unless required by law or order or to fulfill auditing requirements. Each party agrees further to take all reasonable steps designed to insure these obligations will be fulfilled.

Breach by either party of its obligations under this section shall be grounds for immediate termination of this Agreement, and this section of the Agreement shall survive any termination of this Agreement.

### 9.3 Infringement Indemnification

Lewtan agrees to indemnify and hold harmless Licensee from any and all expenses incurred or damages finally awarded against Licensee arising out of any claim by any person that the Software infringes any U.S. patent or copyright or violates any trade secret or other proprietary right in the U.S., provided that Licensee observes the terms of this Agreement, gives prompt notice to Lewtan of any such claims, allows Lewtan to take control of the defense thereof (at Lewtan's expense), and does not agree to any settlement without Lewtan's prior consent. Licensee may participate in any such proceedings through its own counsel, at its own expense.

Should the Software become, or in Lewtan's opinion be likely to become, the subject of any claim of infringement, Lewtan shall, at its option, either: (a) procure for Licensee the right to continue using the Software; (b) replace or modify the Software so as to make it non-infringing, provided such replacement or modification has substantially the same capabilities as the original; or (c) refund to Licensee a pro rata portion of the most recent annual License Fee.

Lewtan shall have no liability for any claim of infringement based upon (a) use of other than the latest unmodified release of the Software made available to Licensee if such infringement would have been avoided by the use of such release, (b) use or combination of the Software with other programs or data if such infringement would not have occurred without such use or combination, or (c) use of the Software after receiving notice, or having reason to believe, that the Software infringes a trade secret right of a third party unless prompt written notice thereof is given to Lewtan. This Section states the entire obligation of Lewtan with respect to claims for infringement.

## 10. NO MODIFICATIONS BY LICENSEE

Licensee shall have no right to make modifications to the Software, and any attempt on the part of Licensee or any person other than an employee of Lewtan to modify the Software is a material breach of this Agreement and shall immediately (and without further action by Lewtan) cause all warranties as to the performance of the Software to be void. Licensee shall not attempt to reverse-engineer, disassemble, or decompile the Software, either in whole or in part. Without limiting the other remedies and rights of Lewtan in such event, Lewtan shall be immediately relieved of all obligations to support or maintain the Software or to furnish enhancements. Use of the Software according to its Documentation and for the business purposes for which it was purchased shall not constitute modification under this Section.

## 11. EMPLOYMENT OF LEWTAN'S EMPLOYEES

Licensee expressly agrees that any employee who has contact with Lewtan in conjunction with this Agreement shall not, during the term of this Agreement and for a period of twenty-four (24) months following the termination of this Agreement, solicit for employment, or contribute to the solicitation of any person who is or has been employed by Lewtan during the eighteen months immediately preceding the date of such hiring or solicitation, without the written consent of Lewtan; it being agreed that a general advertisement offering employment or efforts by executive search firms not specifically targeting Lewtan's employees shall not be deemed to be a solicitation for the purposes hereof.

## 12. ASSIGNMENT AND DELEGATION

Licensee agrees that it shall not sell, assign, lease, sublease, franchise, or otherwise make the Software, or any part of it, available (collectively "Transfer") to any person, firm, corporation, or other organization, other than an assignment to one of its subsidiaries or affiliates (collectively, any "Third Party") unless expressly authorized in writing by Lewtan or enumerated in Exhibit B. In the event that any Transfer of the Software (or of any proprietary information related thereto) to any Third Party is caused wholly or in part by Licensee, the parties agree that this contract will have been materially breached, and Lewtan shall have the right to terminate this Agreement or to require Licensee to pay Lewtan upon demand an amount equal to the License Fees which Lewtan would then charge for an additional license (or additional licenses, as the case may be) of the Software. Lewtan's rights under this paragraph shall be in addition to any other legal or equitable remedies which Lewtan may have against Licensee under this Agreement or under law.

## 13. TERM AND TERMINATION

### 13.1 Term

The term of this Agreement and the license granted hereunder shall be three years from Acceptance, and shall automatically be extended

Deleted: ABS Annual License
Deleted: 02/08/05

**LEWTAN TECHNOLOGIES, INC.**

for successive one year terms thereafter unless (i) otherwise terminated pursuant to this Section 13 or (ii) either Party gives notice to the other Party at least ninety (90) days prior to the expiration of any term that such Party wishes not to renew this Agreement. Pricing for renewal terms shall be the same as for the preceding term unless Lewtan has notified Licensee of a pricing change at least one hundred twenty (120) days prior to the expiration of such preceding term.

### 13.2 General Termination

Either party shall be entitled to terminate this Agreement by written notice to the other if: a) the other party commits any material breach of any of the provisions of this Agreement and fails to remedy the breach within 30 days after receipt of written notice giving full particulars of the breach; or b) the other party, without curing the condition within thirty (30) days of the event, ceases or threatens to cease doing business as a going concern, becomes insolvent, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is subject to an involuntary petition in bankruptcy which is not dismissed within sixty (60) days, is adjudicated bankrupt or insolvent, files or has filed against it a petition seeking any reorganization, arrangement, or composition, or anything analogous occurs with respect to the party, under any present or future statute, law, or regulation.

### 13.3 Termination for Default on Payment

In the event that Licensee defaults on any payment under this Agreement, the defaulted sum shall bear interest at 1.5% per month, or the maximum rate permitted by law. Lewtan retains the right to terminate this Agreement if a default remains uncured thirty (30) days after Lewtan provides Licensee with written notice of such default.

### 13.4 Rights upon Termination

In the event of a termination under this section, a) Lewtan shall have the right immediately to require Licensee to destroy or return any and all copies of the Software and its Documentation; and b) Licensee shall immediately stop using the Software and the Documentation; and c) all amounts owed by Licensee shall become immediately due and payable. In the event Licensee terminates this Agreement pursuant to Section 13.2, Lewtan shall refund to Licensee a pro rata portion of the most recent Annual License Fee paid by Licensee.

### 14. OTHER AGREEMENTS, NO AGENCY, NO THIRD PARTY RIGHTS

Nothing in this Agreement shall be construed to prevent Lewtan from licensing or selling the Software in whole or in part to others or from entering into other contracts with other parties. Licensee acknowledges and agrees that Lewtan performs services hereunder solely as an independent contractor and that no joint venture, partnership, employment, agency, or other relationship is intended by this Agreement. Licensee agrees that in Lewtan's performance of services, Lewtan is acting solely on behalf of Licensee and no contractual or service relationship shall be deemed to be established hereby between Lewtan and any other person. Nothing contained herein shall subject Lewtan to any liability incurred by Licensee to its customers or clients in connection with the license or services provided.

### 15. DISPUTE RESOLUTION

The parties acknowledge that it is normal for conflicts to arise in any business relationship, and hereby agree to approach any such conflict according to the procedures outlined in this section. If a controversy or claim should arise that, in the sole judgment of either party, cannot be resolved within the normal course of business, the complaining party shall immediately notify the other party that it wishes to initiate this procedure.

### 15.1 Managers

Within 48 hours of receipt of such notification, the other party shall make available the immediate manager of the project to meet and confer at a mutually agreeable time and place. If the controversy or claim is not resolved within ten days of the initial complaint, the complaining party may request that a senior executive of each party be made available to resolve the dispute. The senior executives shall meet for negotiations within fourteen days of the end of the ten-day period referred to above, at a mutually agreeable time and place.

### 15.2 Mediation/Litigation

If the matter has not been resolved within thirty days of the meeting of senior executives, the parties will attempt in good faith to resolve the controversy or claim in accordance with the Center for Public Resources Model Procedure for Mediation of Business Disputes. If the matter has not been resolved pursuant to the aforesaid mediation procedure within sixty days of the commencement of such procedure, either party may initiate litigation.

### 15.3 General

The procedures specified in this section shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this agreement; provided, however, that a party may seek preliminary injunction or other preliminary judicial relief if in its judgment such action is necessary to avoid irreparable damage. Despite such action, the parties shall continue to participate in good faith in the procedures herein specified. All applicable statutes of limitation shall be tolled while the procedures herein are pending, and the parties agree to take such action, if any, required to effectuate such tolling. All deadlines specified in this Section may be extended by mutual agreement of the parties.

### 16. SEVERABILITY, SURVIVAL, ENTIRE AGREEMENT

If any one or more of the provisions contained in this Agreement are held to be excessively broad, such provisions shall only be enforceable to the maximum extent allowable by law, but shall not invalidate the remaining provisions. All provisions regarding payment, indemnification, warranty, liability and limitations on liability, and confidentiality and/or protection of proprietary rights and trade secrets shall survive termination of this Agreement. This Agreement constitutes the entire agreement between the parties regarding its subject matter, and all other prior agreements, representations, statements, and negotiations, with respect to such subject matter are terminated and superseded by this Agreement.

### 17. GOVERNING LAW

This Agreement shall be construed and enforced in accordance with the laws of the State of New York, USA governing contracts made therein. If Licensee is located outside the United States, the terms of the U.S. export control laws shall supersede this Agreement. The parties further agree that the United Nations Convention on Contracts shall not govern the terms of this Agreement.

DATED: _____

Deleted: ABS Annual License
Deleted: 02/08/05

**LEWTAN TECHNOLOGIES, INC.**

### EXHIBIT A

#### Product-specific Information

**SOFTWARE:**

The ABS System, a computer program developed by Lewtan Technologies, Inc.

**LIMITATIONS ON USE:**

Licensee may use the ABS System solely in connection with reports on asset-backed (including mortgage-backed) securities transactions conducted or supervised by Licensee. The license for the ABS System does not include the right to use or offer the use of the Software (or any component of the Software) to report on the performance of financial assets or securitizations for third parties unless such third parties are specifically approved by Lewtan and enumerated in Exhibit B. Licensee shall ensure that all data submitted for processing using the Software is in the format specified by Lewtan in the Documentation and shall verify the accuracy of both the input and output data to determine whether the Software is correctly processing its data.

**INSTALLATION AND IMPLEMENTATION SERVICES:**

Lewtan shall provide Licensee with initial implementation services including system configuration, system customization, system integration, training and consulting services, all as required to configure the Software to Licensee's requirements. Lewtan or Licensee shall install the Software on Licensee's equipment when the initial implementation services have enabled Licensee's system to generate the base numbers required to provide securitization reports. Lewtan shall, for a reasonable period of time, continue to provide implementation services after installation to refine the system with reference to Licensee's business objectives regarding investor reporting, using feedback provided by Licensee's users.

**STANDARD TRAINING:**

For ABS System: Two (2) person days for training are included in License Fee. One person day is one Lewtan employee for six hours of training time. Licensee shall be responsible for out of pocket costs as described in Exhibit B.

**LEWTAN TECHNOLOGIES, INC.**

LEWTAN TECHNOLOGIES, INC.

By: *[signature]*
Title: President
Date: 2-24-05

300 Fifth Avenue
Waltham, MA USA 02451

AMERICAN HOME MORTGAGE CORP.

By: *[signature]*
(Print Name): David M. Friedman
Title: Exec. V.P.
Date: 2/21/05
Address: 7142 Columbia Gateway Dr.
Telephone: 410·872·2080
E-mail: David.Friedman@americanhm.com
FAX:

# LEWTAN TECHNOLOGIES, INC.

## EXHIBIT B

### Customer Specific Information

ANNUAL LICENSE FEE(S): $100,000 (for up to 5 Securitizations). This license fee includes the collateral processing and investor reporting modules of the ABS System. The Annual License Fee will be adjusted in the following manner:

Greater than 5 but less than or equal to 10 securitizations: $10,000 annually to a total of $110,000 per year

Greater than 10 but less than or equal to 20 securitizations: $10,000 annually to a total of $120,000 per year

LICENSE FEE PAYMENT SCHEDULE:

- 50% of the first year's Annual License Fee will be due upon signature of this Agreement
- The remaining 50% of the first year's Annual License Fee will be due upon Acceptance
- Annual License Fees for future years will be due annually in advance on the applicable anniversary of Acceptance.

ESTIMATED IMPLEMENTATION FEE(S): $256,997 (This estimate is based on Lewtan agreeing to bill at 85% of its customary Time and Materials Rates.

IMPLEMENTATION FEE PAYMENT SCHEDULE:

- An amount of $50,000 is due upon signature of this Agreement. The remainder of the Implementation Fees will be billed monthly as incurred on a time and materials basis.

If Lewtan believes, at any time, that the implementation will require effort beyond what is estimated above, Lewtan will notify Licensee of the effort it believes is required to complete the implementation. Lewtan will not subsequently perform services that would increase implementation fees beyond these estimates until and unless such additional work is authorized in writing by Licensee. If Lewtan believes, at any time, that the implementation will require effort beyond what is estimated above, Lewtan will notify Licensee.

IMPLEMENTATION ASSUMPTIONS:

| | |
|---|---|
| Assets Types: | - 1st & Second Lien Residential Mortgages |
| | - Home Equity Lines of Credit |
| Loan Types: | - Fixed rate and Term |
| | - ARM's |
| | - Balloons - At Term |
| | - Lines of Credit-Fixed and variable with teaser rates** |
| | - Interest Only loans |
| Accrual types: | - Simple interest (Actual/365, Actual/360, 30/360) |
| | - Actuarial |
| | - Payments in Advance |
| Add-on Products: | - Optional Insurance tracked and disbursed by Vendor, not capitalized onto the loan balance |
| Fees: | - Fees are tracked and collected separately from outstanding balance. They are not capitalized onto the loan balance |
| Interfaces Required: | - LSAMS (Servicing System) -1 Snapshot, 1 Transaction and loan transfer Files processed monthly |
| | - One time upload for time of sale information for up to 2 deals |

Deleted: ABS Annual License
Deleted: 02/08/05

## LEWTAN TECHNOLOGIES, INC.

Collateral Processing:
- Loan statuses: Active, Payoff, REO's, Foreclosures, Repossessions, Bankruptcies, Liquidations, Defaults, Charge-offs, Rewrites and Modifications, Non Accrual, Service Members Relief

- Calculate / Track scheduled balance
- Monthly principal and interest split
- Cash reconciliation
- Track balances for liquidations, charge-off and recoveries
- Servicer Advances / Recoveries
- Corporate Advances / Recoveries
- Prepayments and Delinquencies
- Repurchases & New sales
- Split Balance tracking for HELOCs
- 1 HELOC and 1 mortgage securitization included. Lewtan will provide template for AMH to retrofit other securitizations.

Reports / Extracts:
- Servicer Advance
- Collection Account Reconciliation
- Delinquency
- Losses
- Prepayments
- Trustee Reporting
- 2 Account level extract one for each deal
- 2 Summary reports one for each deal

Add on Modules:
- Static Pool not included
- Cash Flows not included
- Monetization not included
- No History will be processed

The underlying theme of Lewtan's implementation philosophy is to provide an efficient (in both cost and time) implementation process and timely delivery of services. To meet this goal, it is imperative that the implementation project adheres to the agreed upon schedule without interruption. To that end, a monthly minimum implementation fee of $38,500 (15% of total project) will be applied effective upon the commencement of the project. To the extent this fee is in excess of the monthly T&M billings, the fee will be non-refundable, but will be applied against future T&M billings. The monthly minimum service fee will be pro-rated in the initial partial month (based on number of business days from the commencement of the project to the first calendar month end), and will be in effect up until but not including the calendar month of Acceptance. If Licensee places the project on hold, Lewtan will require two weeks notice and a monthly fee of $2,000 will apply while the project remains in an inactive status. Lewtan will require two months advance notice to re-start the project. In that case, any re-work required due to the hiatus will be considered a scope change and will require a Work Order/Addendum.

2005 Time and Materials Rates (Subject to Reasonable Change, based on 8-hour day)

| | |
|---|---|
| Support Specialist | $1,200 |
| Programmer | $1,400 |
| Systems Analyst | $1,400 |
| Consulting Analyst | $1,400 |
| Senior Consulting Analyst | $1,680 |
| Consultant | $2,000 |

Deleted: ABS Annual License
Deleted: 02/08/05

## LEWTAN TECHNOLOGIES, INC.

| | |
|---|---|
| Senior Consultant | $2,400 |
| Project Manager | $1,880 |
| Sr. Project Manager | $2,200 |
| Sr. Consultant | $2,400 |

Materials at Cost

Reasonable out-of-pocket expenses due upon receipt of invoice. Out-of-pocket expenses shall include, without limitation, travel, food, and lodging for Lewtan employees sent to Licensee's premises, as well as such items as telephone, modem, and fax costs, copies, diskettes, overnight courier services, and meals for Lewtan's employees working after 8:00 p.m. It is agreed and understood that such employees may fly "business class" on any international flight of a duration longer than four hours and such expense shall be fully reimbursable by Licensee. Hours spent traveling to and from Licensee's site shall be billed at 50% of Lewtan's customary time and materials rates.

UNIT(S) OR DIVISION(S) OF LICENSEE (if applicable):

NUMBER OF CONCURRENT USERS: Three

LOCATION OF LAN or CENTRAL PROCESSING UNIT(s): (Licensee please fill in address)

# LEWTAN TECHNOLOGIES, INC.

## EXHIBIT C

## LEWTAN TECHNOLOGY RESPONSE POLICY

**System Error Corrections.** Lewtan shall use all reasonable efforts to address System Errors as set forth herein. Upon discovery of a System Error by either party, such System Error shall immediately be mutually classified as one of the following:

### Severity Level

**Critical Severity System Error.** A "Critical Severity System Error" is a problem resulting in a critical business or data processing impact, including but not limited to an error in the Software which a) results in the Software becoming substantially inoperable; b) prevents Licensee from being able to access its data or create reports; c) results in a calculation error of any kind or d) a repeatable abnormal ending to processing. For any problem in which a work-around solution is available and provided to Licensee within the Response Time provided for herein under Critical Severity System Error, the problem shall be re-classified as High Severity.

**High Severity System Error.** A "High Severity System Error" is a problem that significantly impairs the functionality or performance of the Software but does not have a critical business or data processing impact, including, for example (i) a problem of severity less than that required for Critical Severity; and (ii) a problem for which a work-around solution is available and provided to Licensee within the Response Time provided for herein under Critical Severity System Error.

**Low Severity System Error.** A "Low Severity System Error" is a condition in the Software that the Licensee desires to be improved, but which does not cause the Software to malfunction (i.e. client specific enhancements, defaults, report titles, error messages, cosmetic, etc.)

**Work Around:** A "work-around" solution is an additional or modified piece of software code, created by Lewtan, which provides the user with an alternative electronic method of performing the function where the error occurs.

**Notification of System Errors.** When reporting any System Error, Licensee shall provide reasonable detailed documentation and explanation, together with underlying data (to the extent possible), to substantiate the System Error and to assist Lewtan in its efforts to diagnose and correct the System Error. If Lewtan detects a Critical Severity System Error, then Lewtan will immediately contact Licensee.

**Acknowledgement and Response.** Lewtan shall use commercially reasonable efforts to acknowledge each of Licensee's initial System Error reports within two (2) hours during the telephone support hours defined in section 6.1 of this Agreement. Lewtan shall use commercially reasonable efforts to correct critical severity errors within two (2) business days of its acknowledgement of notification of such System Errors from Licensee.

**Escalation Process.** Externally reported issues with a severity of Critical will be escalated to the appropriate Product Manager and responsible Director if a solution or work-around is not provided within the time frames defined above. The involvement of the Product Manager guarantees that the highest level of product knowledge is being focused on the issue. Escalation to the appropriate Director ensures that an adequate level of resources are being directed toward the issue.

# EXHIBIT 2



# Invoice

AMERICAN HOME MORTGAGE CORP
Attn: David Friedman
4600 Regent Blvd
Irving, TX 75063

United States

Invoice Number: 0206846-IN
Invoice Date: 4/22/2008
Customer Number: AHMO330

Invoice Memo applies to:

**Project:**
**Billing Period:** 02/28/08-02/27/09

**Invoice Due Date:** 4/22/2008

**Customer P.O.:**

| DESCRIPTION | | AMOUNT |
|---|---|---|
| ABS License Fee | | $100,000.00 |
| ABS License Fee | SPA | $10,000.00 |
| ABS License Fee | New Deals | $10,000.00 |

Lewtan Technologies, Inc. Wire Information
Bank: Bank of America
Routing #: 111000012
Account#: 3756510032 (this is a commercial checking account)
Account Name: Lewtan Technologies, Inc. Commercial Checking
FIN: 04-3009048
All amounts are US Dollars

Billing Questions?
781-672-1138

| | |
|---|---|
| Net Amount: | $120,000.00 |
| Sales Tax: | $0.00 |
| **INVOICE TOTAL:** | **$120,000.00** |

**REMINDER: SALES & USE TAXES ARE YOUR RESPONSIBILITY**

Corporate Headquarters
300 Fifth Avenue
Waltham, MA 02451
781.895.9800
781.890.3684 Fax

## CERTIFICATE OF SERVICE

I hereby certify on this date, that I caused true and correct copies of the foregoing document to be served via CM/ECF and First Class U.S. Mail upon the following:

Matthew B. Lunn, Esq.
Young, Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
PO Box 391
Wilmington, DE 19899-0391

Erica M. Ryland, Esq.
Scott Friedman, Esq.
Jones Day
222 East 41st Street
New York, NY 10017

Victoria Counihan, Esq.
Greenberg Traurig LLP
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801

Mark S. Indelicato, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

Dated: June 24, 2008

*/s/ Charles J. Brown, III*
Charles J. Brown, III (No. 3368)