UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | ) (Jointly administered) |
| A Delaware corporation, et al. | ) |
| | ) Obj. Deadline: July 10, 2008 at 4:00 p.m. |
| Debtors. | ) Hearing Date: July 17, 2008 at 2:00 p.m. |
| | ) |

## MOTION OF BRUD ROSSMANN FOR RELIEF FROM STAY AND SUPPORTING MEMORANDUM OF LAW

COME NOW Brud Rossmann, an individual appearing <u>pro se</u>, and hereby moves this Honorable Court for an order under Section 362 of the Bankruptcy Code, 11 U.S.C. 362, for relief from the automatic stay, (the "Motion"). Specifically, Rossmann seeks an order allowing pending Federal court litigation in the Eastern District of Virginia versus American Home Mortgage[1] and eighteen (18) other defendants to proceed. In support of the Motion, Rossmann states the following:

### JURISDICTION AND VENUE

1. The Court has jurisdiction pursuant to 28 U.S.C. 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. 157(b) (2) (G).

2. Venue is appropriate in this Court under 28 U.S.C. 1409(a).

---

[1] American Home Mortgage (AHM) is defined to include both the named defendant "American Home Mortgage Corp" (in the Eastern District of Virginia) and all other Debtors part of the jointly administered proceeding No. 07-11047


3. The statutory predicates for relief appear at 11 U.S.C. 105 and Fed. R. Bankr.P. 4001 and 9014.

**FACTUAL BACKGROUND**

4. Pre-petition, in Year 2000, Rossmann and American Home Mortgage entered into two mortgage agreements relating to the purchase of Rossmann's home in Vienna, Virginia. In 2001, Rossmann re-financed the first purchase money mortgage with American Home Mortgage (AHM), with AHM again acting as the originating lender for the re-financed first purchase money mortgage.

5. These mortgage transactions, and the related mortgage sales and servicing, are at the very core of a pending proceeding in the Eastern District of Virginia, Rossmann v. Lazarus et al, 1:08cv316, filed April 1, 2008 (the "Lazarus litigation").

6. AHM was first listed as a defendant in the Lazarus litigation with the filing of the First Amended Complaint on May 9, 2008.

7. The Lazarus litigation involves sixty-three (63) separate counts, and nineteen (19) separate defendants. The core causes of action relate to "predatory lending" by mortgage banks, including AHM, as well as unlawful credit reporting and related tax fraud.

8. 26 U.S.C. 7434 is one specific, statutory basis for the Lazarus litigation claims. The statute provides a private cause of action for the fraudulent filing of information returns with the Internal Revenue Service.

9. To satisfy "good faith" pleading requirements, Internal Revenue Service (IRS) records were FOIA-requested[2] and required by Rossmann in each case prior to scheduling a defendant in the Lazarus litigation where tax-returns and tax-fraud are central to the case; AHM was such a potential defendant.

10. Rossmann has sought AHM-related tax records from the IRS — including Form 1098 filings in Rossmann's name – starting in 2005. Exhibit A3.

11. The Internal Revenue Service has repeatedly delayed providing AHM records, which delayed Rossmann's scheduling of AHM as a defendant. Exhibits A, E, F, H, and I.

12. Prior efforts to secure other relevant records <u>directly from AHM itself</u> were unlawfully denied or delayed. Specifically, loan history statements and tax-information returns were requested on multiple occasions of AHM starting first in Years 2000-2001, and then again in 2006, and were denied in every case by AHM, and despite multiple calls and letters memorializing these requests by Rossmann. Exhibits A1, B, C, D. These requests were made pre-petition.

13. AHM's role in the Lazarus litigation, and the challenged transactions, were previously, partially described in the originally-filed complaint, filed April 1, 2008, in the Eastern District of Virginia – a date prior to the April 30, 2008 bar date for claims in the instant proceeding. AHM was purposely omitted as a defendant as Rossmann awaited responsive IRS records supporting AHM scheduling as a Lazarus litigation defendant. Exhibit J.

---

[2] Rossmann submitted multiple Federal Freedom of Information Act (FOIA) requests to the IRS over the period 11/2005 to 6/2008.

14. In May, 2008, with some responsive replies from the IRS, but with still pending IRS appeals on other FOIA requests for AHM records (such as Form 1098 filings), Rossmann determined that a "good faith" basis for naming AHM as a defendant existed.

15. Accordingly, AHM was then scheduled as a defendant in the First Amended Complaint filing of May 9, 2008.

16. At the time of filing of the First Amended Complaint, Rossmann was unaware of a <u>pending</u> bankruptcy proceeding. Rossmann was never scheduled as a creditor, or otherwise given notice of the August, 2007- initiated, voluntary, AHM bankruptcy proceeding.

17. On June 6, 2008, Rossmann received the June 6th-filed "Suggestion of Bankruptcy", filed by AHM's bankruptcy counsel. Exhibit K.

18. The June 6th filed Suggestion of Bankruptcy argues, in essence, or by implication, the following:

    a. The automatic stay of 11 U.S.C. 362 applies to the Lazarus litigation.

    b. Rossmann's now-pending Lazarus litigation should have been filed earlier. Exhibit K.

19. This Motion follows, a request for relief from stay to allow the Lazarus litigation versus AHM to proceed.

20. Rossmann attempted to reach counsel for AHM on two occasions prior to filing this Motion, and toward a stipulated outcome. Counsel for AHM replied on June 24th, declining any stipulation on stay-relief at this time.

### LEGAL BACKGROUND

<u>Bankruptcy Code</u>

21. 11 U.S.C. 105 provides in relevant part:

    (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, <u>taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.</u> (emphasis added)

22. 11 U.S.C. 362(d)(1) provides for relief from the automatic stay, in relevant part, as follows:

    (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
    (1) <u>for cause,</u> including the lack of adequate protection of an interest in property of such party in interest;  (emphasis added)

23. "For cause" under Section 362(d)(1) is broadly defined to include a range of factors, and has been consistently held to include a fully-scoped, "<u>equities</u>" determination by the Bankruptcy Court. See, e.g., In re Morris, 155 *B.R. 422, 426 (W.D. Texas 1993)*( "'Cause' is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process."); In re Mack, Debtor; Mack v. Chambers et al., *2007 U.S. Dist. LEXIS 30114 (M.Dist. Florida 2007)*( "Courts conduct a case-by-case inquiry and apply a totality of the circumstances test to determine whether cause for relief from the stay exists."); In re Roberge, 188 B.R. 366, 368 (E.D.VA 1995) ("Because the [Bankruptcy] Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis.")

24. Specific "causes" found to support relief from the stay have included:

    a. Pending litigation. In re Jenkins, Carlton Company and Caterpillar Financial Services, Inc. v. Jenkins et al., 2004 Bankr. LEXIS 1035, 52 Collier Bankr. Cas. 2nd (MB) 877 (Bankr. S.D. GA 2004)

    b. Litigation including allegations of tax fraud. Thomas E. Raleigh (Trustee) for William J. Stoecker v. Illinois Department of Revenue, 530 U.S. 15, 25, *120 S. Ct. 1951, 1957* (2000)

    c. Debtor "bad faith". Thomas E. Raleigh (Trustee) for William J. Stoecker v. Illinois Department of Revenue, 530 U.S. 15, 25, *120 S. Ct. 1951, 1957* (2000)

    d. Debtor's "unreasonable" delay or other unreasonable dealings with potential creditors of the estate. In re Mannie, 299 B.R. 603, 607 (Bankr. N.D. Calif. 2003)

25. Reinstatement of litigation is a form of stay-relief that has been specifically endorsed by the Third Circuit. In re Margaret J. Myers, 491 F.3d 120, 126 (3rd Cir. 2007)

26. Section 523(a) of the Bankruptcy Code provides in relevant part:

> **§ 523. Exceptions to discharge**
> (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
> (C) with respect to which the debtor made a <u>fraudulent return</u> or willfully attempted in any manner to evade or defeat such tax;
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, <u>or actual fraud</u>, other than a statement respecting the debtor's or an insider's financial condition;
> (B) use of a statement in writing—
>     (i) that is materially false;
>     (ii) respecting the debtor's or an insider's financial condition;

> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive; or
>
> (emphasis added)

Internal Revenue Code

27. 26 U.S.C. 7434 provides in relevant part:

> § 7434. Civil damages for fraudulent filing of information returns
> (a) In general
> If any person willfully files a <u>fraudulent information return</u> with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.
>
> (emphasis added)

28. 26 U.S.C. 7434 creates a private cause of action empowering "private attorney general" lawsuits, and toward the IRS policy goal of more accurate information return filings.

29. "Return" is defined under the Internal Revenue Code to include "any tax or information return . . . ", 26 U.S.C. 6103, to include Forms 1098 and 1099, the information returns directly at issue in the pending Lazarus litigation.

## ARGUMENT

30. <u>AHM is part of a group of lenders, with related loan transactions, which the IRS has already determined were "unlawful"; on this IRS official finding, the IRS paid almost $30,000 in theft and casualty loss refunds to Rossmann out of its own coffers.</u>

   a. The IRS determined that the loan transactions originated and serviced by AHM resulted in "predatory lending", and related "unlawful activity" (the official IRS

determination). Exhibits G1 (evidencing IRS loss-adjustment amounts), G2 (one of several bases for payment).

b. AHM was specifically reviewed as part of the IRS audits in making this determination.

c. The IRS predicate findings of "unlawful activity" underlie the Lazarus litigation, and the official IRS finding of an AHM role establishes the prima facie merits of the Lazarus litigation versus AHM-- and make it less likely that the lifting of the stay would result in wasteful, meritless litigation against AHM.

d. This "cause" directly supports stay relief.

31. <u>Second, AHM's role as originating mortgage lender[3] for all of the first purchase money mortgages, and the second purchase money mortgage, establishes AHM as a critical defendant in the pending Lazarus litigation.</u>

    a. Discovery in the Lazarus litigation will hinge critically on AHM-authored and maintained records because (i) AHM was the originating mortgage lender for both the first and second purchase money mortgages; and, (ii) AHM was the primary point of contact besides Alliance Mortgage in the multitude of loan origination and servicing failures by the named, defendant lenders in the Lazarus litigation (Exhibit A2) --- as officially found by the Internal Revenue Service. Exhibits G1, G2

    b. AHM is only one of nineteen (19) named defendants in the Lazarus litigation, where other defendants' interests in full and fair adjudication require that AHM remain a

---

[3] AHM's predecessor-in-interest was Roslyn National Mortgage Corporation (RNMC), with the relevant RNMC operations self-reportedly purchased by AHM in November, 2000. AHM itself continued to report out these loans in 2001 as its own, with AHM as the relevant entity for the two purchase money mortgages in 2000, and the refinanced first purchase money mortgage in 2001. See Exhibit A2.

defendant, subject to discovery rules, and also subject to potential joint and several liability.

c. Accordingly, both Rossmann's and eighteen (18) other defendants' litigation interests provide additional "cause" supporting relief from the stay. Cf. <u>In re Jenkins, Carlton Company and Caterpillar Financial Services, Inc. v. Jenkins et al.</u>, 2004 Bankr. LEXIS 1035, 52 Collier Bankr. Cas. 2d (MB) 877 (Bankr. S.D. GA 2004).

d. Put differently, denying stay relief and the discovery rights attendant the Lazarus litigation would prejudice every other party to the Lazarus litigation beside AHM itself.

32. <u>Third, AHM unreasonably refused Rossmann's numerous record requests both during the years of AHM financing – Years 2000 and 2001 – and also Rossmann's record requests starting again no later than 2006, and pre-petition.</u>

   a. Rossmann sought records from AHM on multiple occasions in Years 2000 and 2001, and was consistently denied these records by AHM. For Years 2000 and 2001, for example, Rossmann sought loan documentation beginning in March, <u>2000</u>, Exhibit A1, much of which was not produced, and then produced only indirectly and belatedly in Year <u>2007</u> by an affiliated bank. Numerous other examples of AHM delay, or non-production of AHM records, have been successfully vetted with the IRS.

   b. Rossmann continued his record requests of AHM in Year 2006 as Rossmann pieced together the fraud and other claims underlying the affirmative IRS finding in

Rossmann's favor of predatory lending and other "unlawful" mortgage lender activity. <u>Compare</u> Exhibits B, C, D <u>with</u> Exhibits G1, G2.

c. AHM continued to deny Rossmann the records which Federal "HUD" regulations under the Federal Real Estate Settlement Procedures Act (RESPA), and other legal requirements, clearly indicate were due Rossmann.

d. "Unreasonable delay" and dealings with creditors support stay relief. In re Mannie, 299 B.R. 603, 607 (Bankr. N.D. Calif. 2003) (*"Section 362(d)(1) of the Bankruptcy Code permits the Court to annul the automatic stay "for cause." 11 U.S.C. § 362(d)(1)*. The standards for granting an annulment of the stay were recently summarized as follows: in deciding whether to grant relief from stay retroactively, many courts focus on two factors: "(1) whether the creditor was aware of the bankruptcy petition; and (2) <u>whether the debtor engaged in unreasonable or inequitable conduct</u>, or prejudice would result to the creditor.")(emphasis added)

e. Unreasonable delay and denial of records by the debtor AHM in its dealings with Rossmann, as a potential creditor, and party in interest, further supports stay relief in the instant proceeding.

33. <u>Fourth, to satisfy "good faith" pleading requirements in the Complaints filed in the Lazarus litigation, Rossmann could not have filed the Lazarus litigation, including now-defendant AHM, prior to 2008.</u>

   a. *Delayed receipt of the IRS records.* Rossmann not only sought records from AHM beginning in 2000-2001, and continuing in 2006, but further sought related tax

information and records from the IRS beginning in 2005. Exhibit A3. The IRS has still not produced critical, responsive records. Exhibits E, F, H, I, J.

    i. The IRS first made records available from a May, 2007 FOIA request in 12/2007, and these responsive records relating to AHM were incomplete. Exhibits H, I.

    ii. Indeed, the IRS has still failed to provide records first requested by a FOIA request dated November 18, 2005. Exhibits F, H.

    iii. Even after multiple FOIA appeals beginning in 2006, and an IRS-admitted loss of records (e.g. Rossmann's Tax Year 2001 "administrative file"), Exhibit F, the IRS still did not produce in 2007 the remaining records for Tax Year 2001, and other Tax Years, apparently, if only constructively, available to the IRS in Year 2006. Exhibit F (e.g. the IRS loss of the IRS's own "administrative file" for Tax Year 2001); Exhibits I, J.

    iv. Only in 12/2007 did the IRS produce a still incomplete record set, and the subject of still-pending FOIA appeals with the IRS. Exhibits H, I, J.

b. In combination with the refusal of AHM itself to provide its records, the IRS delay prevented Rossmann from an earlier, more timely "good faith" filing against AHM. Filing without record support for the tax fraud and related claims, at a minimum, would have been sanctionable under Rule 11.

    c. Rossmann reasonably determined that earlier filing of the complaint would not have satisfied "good faith" pleading requirements given the missing records from the IRS, and from AHM itself.

    d. Accordingly, the delay by Rossmann is excusable delay given the documented failures by the IRS in providing responsive records - further "cause" to allow the Lazarus litigation to proceed, and for its reinstatement against AHM.

34. **Fifth, as alleged in the Lazarus litigation, AHM caused Rossmann substantial financial injury, further impairing Rossmann's ability to more timely bring any litigation against AHM.**

    a. As the IRS has previously found on three (3) separate occasions, at least two under full, in-person, full record-review audit, AHM and the other lenders caused Rossmann serious financial injury dating to 2003 (and before) and extending into 2007 and beyond.

    b. The direct, proximate result was a lack of funds otherwise available to Rossmann to bring the instant litigation earlier, with likely more funding to secure such missing records by private investigation, and by hired legal expertise.

    c. As a direct result of the financial injury occasioned by AHM's theft or injury – per the IRS's own official determination – Rossmann has been forced to proceed pro se.

    d. Accordingly, AHM should not further benefit from its officially-determined theft or injury by a voluntarily-filed bankruptcy bar to the Lazarus lawsuit. Basic notions of equity demand no less. In re Morris, 155 *B.R. 422, 426 (W.D. Texas 1993)* ("'Cause' is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process.") (emphasis added)

35. <u>Sixth, section 523(a) exceptions to discharge for fraud, including specifically tax fraud, further support a waiver of the stay.</u>

   a. Section 523(a) exceptions to discharge include both "fraudulent return[s]", 11 U.S.C. 523(a)(1)(C), and "money" obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. 523(a)(2)(A).

   b. The Lazarus litigation First Amended Complaint includes tax fraud counts directly against AHM, and its affiliated lender entities. It also includes state-law fraud counts against AHM. "Fraudulent [tax] returns" in particular are at issue.

   c. The tax fraud claims in the Lazarus litigation include (a) fraudulent information return filings under 26 U.S.C. 7434, (a "private attorney general" statute), and (b) potential tax fraud in the income tax returns filed by AHM as the result of its misreporting of the affiliated Form 1098 information-returns.

   d. Accordingly, Section 523(a)(1)'s policy goals are directly invoked in the Lazarus litigation, even if the IRS has not yet asserted a claim of income tax evasion.[4] Cf. Thomas E. Raleigh (Trustee) for William J. Stoecker v. Illinois Department of Revenue, 530 U.S. 15,25, *120 S. Ct. 1951, 1957* (2000)(" Consider the case when <u>tax litigation</u> is pending at the time the taxpayer files for bankruptcy; <u>citing</u> 3 *Collier on Bankruptcy P362.07[6][a]*, pp. 362-101 to 362-102 (rev. 15th ed.2000) (noting that bad faith commencement of case justifies lifting stay); *Internal Revenue Service v.*

---

[4] The IRS apparently has filed some claim. A 6/20/2008 Pacer Schedule of "Filers" includes the "United States Internal Revenue Service" as "creditor".

*Bacha, 166 B.R. 611, 612 (Bkrtcy. Ct. Md. 1993)* (lifting automatic stay when bankruptcy filing was attempt to avoid tax proceedings").) (emphasis added)

e. Likewise, Section 523(a)(2)'s more general exceptions for fraud, false pretenses, and false representation also demonstrate that the Lazarus litigations claims – as pre-vetted in substantial part by the recent, successful IRS audit results – would result in judgment liabilities that would survive any discharge in the instant proceeding. See Exhibit G2. See also In re Mazzeo, 167 F.3d 139(2nd Cir. 1999)(in a pending matter involving securities fraud, "nor does it mean that this Court must undertake that kind of litigation when it can very competently be dealt with in a court where the case was already started . . .")

f. Because the related liabilities for the bankruptcy estate are likely non-dischargeable under Section 523's exceptions, a Section 362 bar to such proceedings on the grounds of "fresh start", estate-administration, or similar core bankruptcy policy goals is inappropriate. Put differently, because AHM's fraud-related liabilities would otherwise survive any discharge, a Section 362 bar argument predicated on these grounds cannot survive. See also Reinbold v. Dewey County Bank, 942 F.2d 1304 (8th Cir. 1991)(holding that evidence of fraud supported "the bankruptcy court's decision to grant DCB relief from the automatic stay.")

g. Where policy rationales for the stay are not evident , including Section 523 "exceptions to discharge", stay relief is further warranted.

36. <u>Seventh, "bad faith" is consistently recognized as a basis for stay relief; *a fortiori*, fraud must qualify for stay relief.</u>

   a. Case law under Section 362 consistently holds that a "bad faith" showing will yield relief from the automatic stay. See, e.g., Thomas E. Raleigh (Trustee) for William J. Stoecker v. Illinois Department of Revenue, 530 U.S. 15, 25, 120 S. Ct. 1951, 1957 (2000)(lack of "good faith" supports stay relief).

   b. *A fortiori*, the stronger showing of fraud must likewise support stay relief.

   c. At this stage of the Lazarus litigation proceedings, before any decisions on any motions to dismiss have been rendered, and before any Answers have been filed, the allegations of the Plaintiff-Rossmann's Complaint must be taken as true – clear, undeniable, black-letter, 12(b)(6) motion-practice law. Boyle v. Governor's Veterans Outreach, 925 F.2d 71 (2nd Cir. 1991); See also Mortensen v. First Federal Savings and Loan Assn., 549 F.2d 884, 891 (3rd Cir.1977).

   d. Further, "the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." Chatham Condominium Assn. v. Century Village, Inc., 597 F.2d 1002 (5th Cir. 1979).

   e. Accordingly, stay relief is further supported on the simple allegations of Rossmann's complaint – filed in good faith by Rossmann, with record support, and after supportive, official, under-audit, IRS determinations of "unlawful activity" by the named defendants, including AHM, on related bases. Where no contrary determination by the Eastern District of Virginia exists contrary to the fraud

allegations in the Lazarus litigation, these "fraud" allegations must also be taken as true for purposes of this Section 362(d)(1) motion as a matter of straightforward, Federal civil procedure. "Bad faith" inferences must follow.

    f. Again, until the Eastern District rules differently, "good faith" allegations of AHM fraud in the pending Lazarus litigation meet the "bad faith" test for stay relief in every jurisdiction researched to date. Relief should be granted on this basis alone.

37. **Eighth, should Rossmann ultimately prevail in the Lazarus litigation, the estimated AHM judgment liability is non-material in relation to its scheduled creditor debt.**

    a. The average estimated amount of judgment-liability risk in the Lazarus litigation, across all nineteen (19) defendants is the following: $2,953,041 (excluding interest) divided by nineteen (19), or $155,423.

    b. Post-reorganization, considering that 90% of civil lawsuits settle, and conservatively assuming full non-dischargeability of all AHM judgment-risk liability from the Lazarus litigation, the expected, net present value (NPV) of total judgment risk to AHM from the Lazarus litigation is conservatively estimated at well under $100,000.

    c. This "shadow" claim amount is a relatively small percentage of the total scheduled creditor claim amount, including total, non-dischargeable claim amounts.

    d. By comparison, this "shadow" claim amount is material to an individual, pro se plaintiff like Rossmann.

38. **Ninth, Rossmann has not filed a proof of claim and seeks only interested party status, further supporting stay relief.**

    a. Where no claim has been perfected, no certain judgment liability amount set, and no proof of claim filed, otherwise presumptive bankruptcy court jurisdiction has less weight. See In re Mazzeo, 167 F.3d 139, (2nd Cir. 1999)(in a pending matter involving securities fraud, "nor does it mean that this Court must undertake that kind of litigation when it can very competently be dealt with in a court where the case was already started . . .")

    b. Rossmann has filed no proof of claim, brings this action as an interested party only.

    c. Not only do the merits of the Lazarus litigation, on a stand-alone basis, support stay relief, but the lack of compelling jurisdictional interests of this Court in a continuing-stay further supports stay relief.

39. <u>Tenth, Third Circuit legal authority specifically supports reinstatement of the otherwise "void", pending Lazarus litigation versus AHM under 362(d)(1); therefore, the Lazarus litigation should be ordered reinstated against AHM by this Honorable Court.</u>

    a. The Third Circuit has specifically held that otherwise "void" litigation in violation of the automatic stay can be reinstated on a showing of "cause." In re Margaret J. Myers, 491 F.3d 120, 126 (3rd Cir. 2007) (". . . . A bankruptcy court has the authority to make exceptions to and to annul the automatic stay under *11 U.S.C. § 362(d)*. . . . . this Court and others have held that actions in violation of the stay, although void (as opposed to voidable), <u>may be revitalized in appropriate circumstances by retroactive annulment of the stay</u>. *See Siciliano, 13 F.3d at 750; see also Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976-77 (1st Cir. 1997).*"). (emphasis added)

b. A "showing of 'cause'" under 362(d) (1) has been made as detailed in the nine (9) separate arguments above.

c. Accordingly, the Lazarus litigation against AHM should be ordered as allowed under the jurisdiction of this Court, and with leave for Rossmann to seek reinstatement from the Eastern District of Virginia, on the basis of a stay-relief order.

## CONCLUSION

For the aforementioned reasons, Rossmann's requested relief for an order terminating the stay should be granted.

Respectfully submitted,

*/s/ Brud Rossmann, 6/26/08*
Brud Rossmann,
    Appearing Pro Se
*Attorney at Law*
114 Jefferson Heights
Number 4
Catskill, NY 12414
(518) 719-1742

Date Federal Expressed for filing: June 26, 2008