

July 1, 2008
Kathleen Heck
30 Hideaway Lane
Sparta NJ 07871
Response to Objection

United States Bankruptcy Court for the District of Delaware
824 Market Street
3rd Floor
Wilmington, Delaware 19801
    -    and -
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street
17th Floor
Wilmington, Delaware 19801

To Whom It May Concern,

Regarding Exhibit A – No Liability Claims – Page 1 of 1 recently mailed to me stating,
*"Claimant employee asserted claim for retroactive pay raise. However, Debtor's books and records indicate that claimant was not entitled to retroactive pay raise"*, I wish to dispute this. I have attached that Exhibit here, labeled as Page 2.  Included within are the following:

Page 2 – your transmission to me
Pages 3 through 6 – copies of an email from John Manglardi, faxed to me by him, that show exchanges among John, me and AHM Attorney Davin Cellura regarding my contract.  Pages 4 and 5 of this confirm the retroactive pay and describe the circumstances that led to it (Alice Morris and I were to always have the same guarantee).
Pages 7 through 9 – documentation of Alice's pay
Pages 10 through 13 – similar to Pages 3 through 6.  Note, I previously submitted my most recent AHM contract documenting that I did briefly receive the new guarantee, as described in these emails.  That represented a portion of what was owed to me.
Pages 14 and 15 – an attempt to secure my back pay just prior to our Bankruptcy
Pages 16 through 25 – copy of email from Maryann Munson, Head of HR, and my new attached contract – signed and recorded
Page 17 – copy of recent email exchange with John Manglardi noting his attempt to assist me in obtaining retroactive pay due to me (specifically, " .. it should prove helpful to you .. " referencing pages 3 through 6 attached here.)

Finally, in terms of no record of this pay being owed to me, note the following:  my new contract reflected part of what was owed to me, John Manglardi wrote all contracts and confirms that the money is owed to me; John spoke with Attorney Cellura who generated the contract.  I have supplied what I personally was able to retrieve from email and files.  John Manglardi supplied what he had access to.  Alan Horn signed the new contract.  Davin Cellura acknowledged his attempt to get this retroactive pay for me.  I did not need to be employed by AHM to receive this compensation as I WAS employed when I legitimately earned it.

If this attached documentation is not specific, please tell me what else is needed.  Thank you.

Page 2

## Exhibit A
## No Liability Claims

### ———— Objectionable Claims ————

| Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | Comments |
|---|---|---|---|---|---|
| BERTL, CHRISTINE<br>124 CORNWELL AVE<br>WILLISTON PARK, NY 11596 | 44 | 8/22/07 | 07-11051 | - (S)<br>- (A)<br>- (P)<br>$458.85 (U)<br>$458.85 (T) | Claimant employee asserted claim for vacation time, however, Debtors' books and records indicate that no outstanding vacation time remains. |
| FRIEDMAN, MARK S<br>17 CORNELIA ST NUMBER 2 C<br>NEW YORK, NY 10014 | 2854 | 11/20/07 | No Case | - (S)<br>$10,950.00 (A)<br>$139,050.00 (U)<br>$150,000.00 (T) | Claimant employee asserted claim for bonus, however, Debtors' books and records indicate that claimant was not entitled to bonus. |
| FUREY, THOMAS<br>6 MARVIN PLACE<br>BETHEL, CT 06801 | 7108 | 1/4/08 | Unspecified | - (S)<br>$10,950.00 (A)<br>- (P)<br>- (U)<br>$10,950.00 (T) | Claimant employee asserted claim for bonus, however, Debtors' books and records indicate that claimant was not entitled to bonus. |
| HECK, KATHLEEN R<br>30 HIDEAWAY LN<br>SPARTA, NJ 07871 | 7449 | 1/7/08 | 07-11051 | Unspecified* | Claimant employee asserted claim for retroactive pay rates, however, Debtors' books and records indicate that claimant was not entitled to retroactive pay rates. |
| **Totals:** | | | **4 Claims** | - (S)<br>$21,900.00 (P)<br>$139,508.85 (U)<br>$161,408.85 (T) | |

(S) - Secured
(A) - Administrative
(P) - Priority
(U) - Unsecured
(T) - Total Claimed

* The term "unspecified" refers to claims for dollar amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amount were entered in the spaces provided on the proof of claim form.

**Unknown**

From:  Kathleen Heck
Sent:  Monday, June 18, 2007 12 09 PM
To:  John Manglardi
Subject: FW Employment Agreement

Actually, when originally discussed, my change control was for indefinite length and guaranteed my income for a year after the change

From: Davin Cellura
Sent: Monday, June 18, 2007 12:31 PM
To: Kathleen Heck
Cc: John Manglardi
Subject: RE: Employment Agreement

The previous contract did have a change in control provision,,,it applied for the first 24 months of employment
I e , if a change in control had occurred in the first 24 months, you were guaranteed the second and third
installments of the welcome bonus

Please let me know if you wish to discuss  Inclusion of a new change in control provision is something that I'd
defer to John on

I'm okay with handwriting in Sparta, NJ, but I can forward a new version with the typed text

Thanks,
Davin

From: Kathleen Heck
Sent: Monday, June 18, 2007 11:46 AM
To: Davin Cellura; John Manglardi
Subject: RE: Employment Agreement

Also, it is Sparta NJ (there is a blank) and I read this fast, but my original contract had a 'change control in it" -
comp if we get bought and I get gone  Is that still here?

From: Davin Cellura
Sent: Monday, June 18, 2007 9:20 AM
To: Kathleen Heck; John Manglardi

Please let me know if you wish to discuss.

Thanks,
Davin

**From:** Davin Cellura
**Sent:** Wednesday, June 06, 2007 3:35 PM
**To:** Kathleen Heck
**Cc:** John Manglardi
**Subject:** Employment Agreement

Kathleen,

Here's the slightly revised employment agreement discussed with John a bit earlier.  The agreement now addresses the increased payments of minimum compensation, which have also been extended through 12/31/07, and the agreement now includes a performance bonus of $200k based on the Division attaining $13.7bil   I also attach a redlined version so you can track more easily the changes made to the previous draft

Please let me know if you wish to discuss

Thanks,
Davin

## Unknown

| | |
|---|---|
| **From:** | Kathleen Heck |
| **Sent:** | Monday, June 18, 2007 10:44 AM |
| **To:** | Davin Cellura, John Manglardi |
| **Subject:** | RE Employment Agreement |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Thanks - ok with me

---

**From:** Davin Cellura
**Sent:** Monday, June 18, 2007 9:20 AM
**To:** Kathleen Heck; John Manglardi
**Subject:** FW: Employment Agreement

John/Kathleen,

I attach an execution copy of the employment agreement   Per our conversation, I have revised the performance bonus provision to reflect the $12bil target   I have also increased the monthly minimum compensation for the remainder of the calendar year to make up for the difference in the lower rate paid from 1/1/07 through 5/31/07  As of 6/1/07 (and through 12/31/07), the monthly rate was increased from $66,333 34 to $72,619 06 This new monthly rate represents the base minimum comp of $66,666.67 ($800k annualized) plus $5,952 39, which amount represents the total "shortfall" of $41,666 70 for the first 5 months of 2007 ($8,333.34 x 5), divided by 7 (the remaining months in 2007)

Please let me know if you wish to discuss

Thanks,
Davin

---

**From:** Davin Cellura
**Sent:** Wednesday, June 06, 2007 3:35 PM
**To:** Kathleen Heck
**Cc:** John Manglardi
**Subject:** Employment Agreement

Kathleen,

Here's the slightly revised employment agreement discussed with John a bit earlier  The agreement now addresses the increased payments of minimum compensation, which have also been extended through 12/31/07, and the agreement now includes a performance bonus of $200k based on the Division attaining $13 7bil  I also attach a redlined version so you can track more easily the changes made to the previous draft.

Please let me know if you wish to discuss

Thanks,
Davin

6/26/2008

**Unknown**

**From:** Kathleen Heck
**Sent:** Thursday, June 07, 2007 1.43 PM
**To:** John Manglardi
**Subject:** RE Employment Agreement

In terms of the bonus, and looking at YTD closings, it does not look attainable by August  So I would like to offer a compromise

In essence (and not a complaint, and my fault for not pushing harder earlier when it came to my attention a year ago when I started getting Alice's commission sheets), but I have been "mis-paid" since the NY co-management team started, per the original agreement we discussed - essentially that Alice and, therefore, Mitch, were to make the same as I do, with a slightly lower bonus possibility  [As you may recall, one way I convinced Alice to take the job here and accept our contract was that she would make almost the same guarantee as me .  ]  But, again, I 'own' not being a squeaky enough wheel earlier

In addition, I do not "earn" over ride unless we close $2 5B or more per month   That looks like a long time away in this market unfortunately

May I, therefore, suggest that we revise the bonus to be this two part clause instead?
a. The $200K this year in August can be tiered based on results - 20% below and above
b  If we close $2B per month by end of September '08 (even just once as that will signify an enormous change anyway), I am eligible for some sort of bonus that is part of what I technically "missed" in income since 11 '05. You can determine that amount of course

This was difficult for me to write based on 8 years of Catholic grade school teaching me to practice immense humility   and 40+ years of a father telling me to minimize accomplishments and always think I am not doing well enough  .  and both of those life experiences telling me to appreciate positive gestures and never ask for more and the fact that we are not hitting $2 5B/mon based on several uncontrollable factors. But the fact is that 2 direct reports of mine made several hundred thousand more than I did over the past few years for unknown reasons and if I don't ask, I surely won't get   Therefore, thank you for your consideration and tolerance.

**From:** Davin Cellura
**Sent:** Wednesday, June 06, 2007 3:35 PM
**To:** Kathleen Heck
**Cc:** John Manglardi
**Subject:** Employment Agreement

Kathleen,

Here's the slightly revised employment agreement discussed with John a bit earlier  The agreement now addresses the increased payments of minimum compensation which have also been extended through

## American Home Mortgage
### Manager : Kathleen Heck
**Pay Date :**

| Last Name | First Name | Emp Code | District Number | Total Due |
|---|---|---|---|---|
| Dallas | Christopher | ChDallas | 120 | 0.00 |
| Morris | Alice | amorris | 0 | 33,333.34 |
| Grand Total | | | | 33,333.34 |

*Paid twice per month.... documentation of Alice's $800,000 annual pay.*

*1 of 2 next page - email cover showing date received.*

*Page 7*

**Kathleen Heck**

| | |
|---|---|
| **From:** | Unicron |
| **Sent:** | Sunday, July 01, 2007 7:30 PM |
| **To:** | Kathleen Heck |
| **Subject:** | Manager Commission Report -  Please do not reply to this message – Questions regarding this report should be directed to your Commission Manager, NOT to the Payroll Department |
| **Attachments:** | Manager Commission Report.htm |

This message was generated by CorVu

Page 8

1

# American Home Mortgage
## Manager : Kathleen Heck
### Pay Date :

| Last Name | First Name | Emp Code | District Number | Total Due |
|-----------|-----------|----------|-----------------|-----------|
| Dallas | Christopher | ChDallas | 120 | 19,096.52 |
| Morris | Alice | amorris | 0 | 33,332.34 |
| Grand Total | | | | 52,428.86 |

Page 9

**Kathleen Heck**

| | |
|---|---|
| **From:** | Davin Cellura |
| **Sent:** | Friday, June 22, 2007 8:24 AM |
| **To:** | Kathleen Heck |
| **Subject:** | RE: Employment Agreement |

,,,,,it just came in!  Thanks, Kathleen.

-----Original Message-----
From: Kathleen Heck
Sent: Friday, June 22, 2007 8:24 AM
To: Davin Cellura
Subject: RE: Employment Agreement

Oops, sorry.  Just sent it.

~ Kathleen Heck, EVP Retail East
   PH 973 726 7236
   CL 973 222 6244
   FX 866 594 7521

-----Original Message-----
From: Davin Cellura
Sent: Friday, June 22, 2007 8:19 AM
To: Kathleen Heck
Subject: RE: Employment Agreement

Got it!  Please sign page 5,,,thanks!

-----Original Message-----
From: Davin Cellura
Sent: Friday, June 22, 2007 8:02 AM
To: Kathleen Heck
Subject: Re: Employment Agreement

Great,,,I'll keep an eye out for it!

Sent from my BlackBerry Wireless Handheld

----- Original Message -----
From: Kathleen Heck
To: Davin Cellura
Sent: Fri Jun 22 07:58:10 2007
Subject: RE: Employment Agreement

Thanks - done (I just faxed it)

~ Kathleen Heck, EVP Retail East
   PH 973 726 7236
   CL 973 222 6244
   FX 866 594 7521

-----Original Message-----
From: Davin Cellura
Sent: Friday, June 22, 2007 7:43 AM
To: Kathleen Heck
Subject: Re: Employment Agreement

*see last page*

1

866.215.8915.  Thanks.

---------------------------

Sent from my BlackBerry Wireless Handheld


------ Original Message ------
From: Kathleen Heck
To: Davin Cellura
Sent: Fri Jun 22 07:40:14 2007
Subject: RE: Employment Agreement

Your fax number?

~ Kathleen Heck, EVP Retail East
   PH 973 726 7236
   CL 973 222 6244
   FX 866 594 7521

------Original Message------
From: Davin Cellura
Sent: Thursday, June 21, 2007 7:15 PM
To: Kathleen Heck
Subject: RE: Employment Agreement

Thanks.  Think you'll fax or mail a signed copy?  (I'd like to provide the signed copy to HR/Payroll asap to increase the monthly compensation.)

------Original Message------
From: Kathleen Heck
Sent: Thursday, June 21, 2007 7:07 PM
To: Davin Cellura
Subject: Re: Employment Agreement

Nah. Good enough (what I got).

------ Original Message ------
From: Davin Cellura
To: Kathleen Heck
Sent: Thu Jun 21 19:05:47 2007
Subject: RE: Employment Agreement

Battles can sure wear on you.  Do you want me to resend a copy for your signature?

--------------------------------

From: Kathleen Heck
Sent: Monday, June 18, 2007 7:20 PM
To: Davin Cellura
Subject: RE: Employment Agreement


No need to revise.  Let's just get it done.  (I weary of negotiations and battles on my own behalf -- hahahahaha).
THANKS


Kathleen Heck, EVP Retail East

PH 973 726 7236

2

CL 973 222 6244

FX 866 594 7521

---

From: Davin Cellura
Sent: Monday, June 18, 2007 12:31 PM
To: Kathleen Heck
Cc: John Manglardi
Subject: RE: Employment Agreement


The previous contract did have a change in control provision,,,it applied for the first 24 months of employment. I.e., if a change in control had occurred in the first 24 months, you were guaranteed the second and third installments of the welcome bonus.


Please let me know if you wish to discuss.  Inclusion of a new change in control provision is something that I'd defer to John on.


I'm okay with handwriting in Sparta, NJ, but I can forward a new version with the typed text.


Thanks,

Davin

---

From: Kathleen Heck
Sent: Monday, June 18, 2007 11:46 AM
To: Davin Cellura; John Manglardi
Subject: RE: Employment Agreement

Also, it is Sparta NJ (there is a blank) and I read this fast, but my original contract had a 'change control in it" - comp if we get bought and I get gone.  Is that still here?

---

From: Davin Cellura
Sent: Monday, June 18, 2007 9:20 AM
To: Kathleen Heck; John Manglardi
Subject: FW: Employment Agreement

John/Kathleen,

3

.I attach an execution copy of the employment agreement.  Per our conversation, I have revised the performance bonus provision to reflect the $12bil target.  I have also increased the monthly minimum compensation for the remainder of the calendar year to make up for the difference in the lower rate paid from 1/1/07 through 5/31/07.  As of 6/1/07 (and through 12/31/07), the monthly rate was increased from $58,333.34 to $72,619.06.  This new monthly rate represents the base minimum comp of $66,666.67 ($800k annualized) plus $5,952.39, which amount represents the total "shortfall" of $41,666.70 for the first 5 months of 2007 ($8,333.34 x 5), divided by 7 (the remaining months in 2007).

proof

Please let me know if you wish to discuss.


Thanks,
Davin


From: Davin Cellura
Sent: Wednesday, June 06, 2007 3:35 PM
To: Kathleen Heck
Cc: John Manglardi
Subject: Employment Agreement

Kathleen,


Here's the slightly revised employment agreement discussed with John a bit earlier.  The agreement now addresses the increased payments of minimum compensation, which have also been extended through 12/31/07, and the agreement now includes a performance bonus of $200k based on the Division attaining $13.7bil.  I also attach a redlined version so you can track more easily the changes made to the previous draft.


Please let me know if you wish to discuss.


Thanks,
Davin

4

## Kathleen Heck

**From:** Davin Cellura
**Sent:** Thursday, August 02, 2007 4:48 PM
**To:** Kathleen Heck
**Subject:** RE: me

Thank you, Kathleen. I'll keep you posted if I learn anything new. And please tell me where you end up, too. Perhaps they'll need a pesky employment attorney like me. I wish you and the crew the best.

**From:** Kathleen Heck
**Sent:** Thursday, August 02, 2007 4:45 PM
**To:** Davin Cellura
**Subject:** RE: me

And, in case I forgot earlier kath33rd@aol.com and the phone and cell numbers below will remain the same. Please keep me posted on where you land.

~ Kathleen Heck, EVP Retail East
  PH 973 726 7236
  CL 973 222 6244
  FX 866 594 7521

**From:** Davin Cellura
**Sent:** Thursday, August 02, 2007 4:42 PM
**To:** Kathleen Heck
**Subject:** FW: me

I'm sorry, but I have not heard back yet. I will let you know when I learn something.

**From:** Davin Cellura
**Sent:** Thursday, August 02, 2007 10:02 AM
**To:** Kathleen Heck
**Subject:** RE: me

I'll see what I can do,,,people have not been answering or returning many calls in recent days. I have truly enjoyed working with you and I hope our professional paths cross again. If ever you need it, here's my personal contact information:

Cell: 201-314-2887
E-Mail: davincellura@yahoo.com

Best wishes.

Davin

Davin P. Cellura
Vice President and Senior Counsel
American Home Mortgage
538 Broadhollow Road
Melville, NY 11747
Direct Dial: 631.622.5219
Fax: 866.215.8915
E-mail: davin.cellura@americanhm.com

*see next page*

*Page 14*

1

**From:** Kathleen Heck
**Sent:** Thursday, August 02, 2007 9:45 AM
**To:** Davin Cellura
**Cc:** John Manglardi
**Subject:** me

MANGLARDI

John suggests I ask you to lump the back pay owed to me into one payment and see if I can get it that way.  Can you please give it a shot for me?  Also, thanks for everything.  It has been my honor and pleasure to know and work with you.

2

Page 15

Subj:    **AGREEMENTS**
Date:    8/30/2007 10:17:03 A.M. Eastern Daylight Time
From:    Maryann.Munson@americanhm.com
To:      KATH33RD@AOL.COM

Sorry for the delay!

Maryann, Head of HR, sent the following
Contract to me... proof that was recorded.

KN.
6/03/08

Page 16

# EMPLOYMENT AGREEMENT

This Employment Agreement, dated as of _June 25_, 2007 (this "Agreement"), is by and between American Home Mortgage Corp., a New York corporation having a place of business at 538 Broadhollow Road, Melville, NY 11747 (the "Company"), and Kathleen Heck (the "Executive").

Whereas the Company wishes to assure itself of the continued services of the Executive, and the Executive desires to continue to be employed by the Company, upon the terms and conditions hereinafter set forth.

The Company and the Executive hereby agree as follows:

1.    Employment. The Company agrees to employ the Executive, and the Executive hereby accepts such employment by the Company during the term set forth in Section 2 and on the other terms and conditions of this Agreement.

2.    Term.  The term of this Agreement shall commence on September 14, 2006 (the "Commencement Date"), and shall continue until the Executive resigns or is discharged, in which case the Agreement shall terminate four weeks following the resignation or discharge date.

3.    Position, Duties and Responsibilities, Rights.

(a)    During the term of this Agreement, the Executive shall serve as and hold the office and title of Executive Vice President, Eastern Division Retail Sales.  The Executive shall have all of the powers and duties usually incident to the office described above, including, but not limited to, management responsibilities over the Division, which term shall be defined as the loan origination businesses reporting to the Company's President, Eastern Retail Division, as assigned to the Executive from time to time.  The Executive shall at all times comply with all policies of the Company relating to the Executive's employment.

(b)    During the term of this Agreement, the Executive agrees to devote substantially all the Executive's time, efforts and skills to the affairs of the Company during the Company's normal business hours, except for vacations, illness and incapacity, but nothing in this Agreement shall preclude the Executive from devoting reasonable periods to (i) manage the Executive's personal investments, (ii) participate in professional, educational, public interest, charitable, civic or community activities, including activities sponsored by trade organizations, (iii) serve as a director or member of an advisory committee of any corporation not in competition with the Company or any of its subsidiaries, or as an officer, trustee or director of any charitable, educational, philanthropic, civic, social or industry organizations, or as a speaker or arbitrator; provided, however, that the performance of the Executive's duties or responsibilities in any of such capacities does not materially interfere with the regular performance of the Executive's duties and responsibilities hereunder

4.    Place of Performance.   In connection with the Executive's employment by the Company, the Executive's place of performance shall be in _Sparta_, New Jersey.  The Executive may be required to be absent from such location on travel status or otherwise as necessary and appropriate for the performance of the Executive's duties hereunder.

Page 17

_See page 6
(shortfall recovery begins)
see page 5?17
redacted signature_

5.   <u>Compensation</u>

(a)   During the term of this Agreement, the Executive shall be paid compensation in accordance with Addendum A and Addendum B attached hereto, each of which may be amended by the Company upon 30 days notice.

(b)   During the term of this Agreement, the Executive shall be entitled to fringe benefits, in each case at least equal to and on the same terms and conditions as those attached to the Executive's office on the date hereof, as the same may be improved from time to time during the term of this Agreement.

(c)   During the term of this Agreement, the Executive shall be entitled to reimbursement, upon proper accounting, of all reasonable expenses and disbursements incurred by the Executive in the course of the Executive's duties.

6.   <u>Employment At Will.</u>  Employment hereunder shall be at all times "at will". The Company may discharge the Executive and terminate this Agreement at any time and for any reason, and the Executive may terminate the Executive's employment with the Company for any reason. If the Executive terminates the Executive's employment with the Company, the Executive shall provide the Company with notice of such termination pursuant to section 12 herein.

7.   <u>Confidential and Proprietary Information; Company Property</u>   For the purpose of this section, Confidential Information shall mean all information and intellectual property owned by and proprietary to the Company, including but not limited to marketing programs such as Homebuyers Marketing and Marketing Portal, loan applications, loan files, loan file documents, accounts, customer or client information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, trade secrets, manuals, business methodology and processes, and cost and pricing policies.  All Confidential Information disclosed or provided to the Executive by the Company, or developed or created by the Executive during the term of the Executive's employment with the Company, is, shall become, and shall at all times remain, the sole and exclusive property of the Company.  The Executive agrees not to disclose the Confidential Information to any other party, except to the extent that such disclosure is reasonably necessary in order for the Executive to perform the Executive's responsibilities as an executive of the Company.  The Executive also agrees that the Executive will not use the Confidential Information for any purpose other than to fulfill the Executive's responsibilities as an executive of the Company.

The Executive acknowledges, understands, and agrees that the Confidential Information is of substantial value to the Company and that, in the event of the use or disclosure of such Confidential Information in breach of this Agreement, the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate.  Therefore, without prejudice to the rights and remedies otherwise available to the Company, and in addition to such rights and remedies, the Company shall be entitled to equitable relief by way of injunction if the Executive breaches or threatens to breach any of the provisions of this Agreement relating to the Executive's use or disclosure of any of the Confidential Information.

The Executive further acknowledges that the Company may provide the Executive with access to or use of equipment or other property owned or leased by the Company ("Company Property").  The

2



Executive agrees to abide by all agreements and policies relating to the use of Company Property, as may be in effect or modified from time to time at the sole discretion of the Company. The Executive further agrees to promptly return in good working condition all Company Property in the Executive's possession upon termination of the Executive's employment with the Company for any reason, and shall be liable in damages, including but not limited to replacement cost, for any financial loss to the Company if Company Property is not returned in such manner.

The Executive agrees that this section shall survive the termination of this Agreement, and that all of the obligations of the Executive set forth in this section shall remain in full force and effect after this Agreement is terminated. The Executive further agrees that, upon termination of this Agreement, the Executive will return to the General Counsel all Confidential Information (including all copies of Confidential Information) which is then in, or which later comes into, the Executive's possession or custody.

8.    Non-Solicitation; Non-Disparagement  The Executive agrees that during the term of the Executive's employment with the Company, and for a period of one (1) year after termination of the Executive's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Executive shall not, directly or indirectly: (a) attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers and/or potential customers of the Company which have been derived from leads and/or lists developed and provided to the Executive by the Company; (b) influence or advise any other person to employ or solicit for employment anyone who is an employee of the Company; (c) influence or advise any person who is an employee of the Company, to leave the employment of the Company; and (d) employ any person who is an employee of the Company. The Executive agrees that during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers or business referral sources, including but not limited to realtors, builders and affinity organizations, joint venture partners, borrowers and loan applicants, obtained by, or whose contact information is stored in the records of, the Company. The Executive expressly agrees that this section is fair and reasonable and that Executive is being adequately compensated for agreeing to the terms of this section.

The Company and the Executive agree that neither will disparage the other, and that their representatives will not disparage either party hereto.

The Executive's obligations as set forth in this section shall survive the termination of this Agreement.

9.    Non-Compete.  The Executive agrees that, during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, engage, participate, make any financial investment in, or become employed by or render advisory or other services to or for any person, firm corporation or other business enterprise which is, or is reasonably likely to become engaged, directly or indirectly, in competition with the Company. The Executive expressly agrees that this section is fair and reasonable and that the Executive is being adequately compensated for agreeing to the terms of this section.

3


Page 19

10.    Entire Agreement; Amendment.

(a)    This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes any and all other agreements between the parties, their predecessors and affiliates.

(b)    Any amendment of this Agreement shall not be binding unless in writing and signed by both (i) the Company's General Counsel and (ii) the Executive.

11.    Enforceability. If any provision of this Agreement is determined to be invalid or unenforceable, the remaining terms and conditions of this Agreement shall be unaffected and shall remain in full force and effect, and any such determination of invalidity or enforceability shall not affect the validity or enforceability of any other provision of this Agreement.

12.    Notices. All notices which may be necessary or proper for either the Company or the Executive to give to the other shall be in writing and shall be sent by hand delivery, registered or certified mail, return receipt requested or overnight courier, if to the Executive at the last known address of the Executive on record with the Company, and, if to the Company, to it at its principal executive offices at 538 Broadhollow Road, Melville, NY 11747, Attention: Human Resources Director, with a copy to the Company's General Counsel, and shall be deemed given when sent. Either party may by like notice to the other party change the address at which it is to receive notices hereunder.

13.    Counterparts. This Agreement can be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.

14.    Facsimile Signatures. A facsimile copy of either party's signature shall be deemed as legally binding as the original signature.

15.    Governing Law. This Agreement and the addenda attached hereto shall be governed by, and be enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof.

**[Signature Page to Follow]**

4

Page 20

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

American Home Mortgage Corp.

By: _____
Name: Alan B. Horn
Title:   Executive Vice President and General Counsel


_____
Kathleen Heck

5

Page 21

## EMPLOYMENT AGREEMENT
### Addendum A

The following sets forth ADDENDUM A to the EMPLOYMENT AGREEMENT (the "Agreement") by and between AMERICAN HOME MORTGAGE CORP. (the "Company") and Kathleen Heck (the "Executive") dated as of September 14, 2006.

THE COMPANY AND EXECUTIVE AGREE AS FOLLOWS:

1. **Terms and Conditions.** Terms and conditions herein shall be defined by, and are subject to, the Agreement, unless otherwise specifically set forth in this Addendum A.

2. **Compensation.** Section 5 of the Agreement provides that the Company shall compensate the Executive pursuant to this Addendum A. The Executive's total compensation is set forth in this Addendum A.

3. **Term.** The term of this Addendum A shall begin on September 14, 2006 and shall end on December 31, 2007, unless otherwise specified herein or terminated earlier pursuant to the Agreement.

4. **Override Bonus.** For each month of the Executive's employment with the Company, the Company will pay the Executive an override bonus based on the aggregate principal amount of loans closed within the Division (the "Override Bonus"). The Override Bonus shall be in an amount equal to 0.25 basis points (.0025%) of the aggregate principal amount of loans closed within the Division, as determined by the Company in its sole discretion. The Override Bonus due the Executive for a given month will be paid to the Executive in the following month. The Override Bonus shall not apply to loans which are brokered to other lenders. To earn and receive the Override Bonus, the Executive must be employed on the scheduled payment date.

5. **NOI Bonus.** The Company will pay the Executive an NOI bonus in amount equal to .85 percent (.85%) of the profit of the Division in calendar year 2007, as calculated by the Company (the "NOI Bonus"). Such NOI Bonus shall be payable to the Executive on or before April 10, 2008. To earn and receive the NOI Bonus, the Executive must be employed on the scheduled payment date.

6. **Minimum Compensation.** During the Executive's employment with the Company from September 14, 2006 through December 31, 2007, the Executive shall be eligible to receive monthly minimum compensation to be applied against amounts otherwise due to, or earned by, the Executive as: (i) Override Bonus, pursuant to section 4 above, from September 14, 2006 through December 31, 2007; and (ii) NOI Bonus, pursuant to section 5 above, from January 1, 2007 through December 31, 2007 ("Minimum Compensation"). The amount of such monthly Minimum Compensation shall be: (i) $58,333.33 during the period from September 14, 2006 through May 31, 2007; and (ii) $72,619.06 during the period from June 1, 2007 through December 31, 2007. If the amounts earned by the Executive as Override Bonus and NOI Bonus exceed the Minimum Compensation payable pursuant to this section 6, the Company shall pay the Executive the Minimum Compensation plus such excess. To earn and receive Minimum Compensation for a given month, the Executive must be employed on the scheduled payment date.

6

Page 22

7. **Performance Bonus.** The Executive shall be eligible to receive a performance bonus of $200,000.00 (the "Performance Bonus") if the Division attains at least $13.7 billion of aggregate internal closed loan production in the period from September 1, 2006 through August 31, 2007 (the "Performance Bonus Period"). The Performance Bonus shall be payable to the Executive within 30 days of the Company's verification that the Division has attained at least $12 billion of aggregate internal closed loan production within the Performance Bonus Period. To earn and receive the Performance Bonus, the Executive must be employed on the scheduled bonus payment date.

8. **Total Addendum A Compensation.** The Executive shall be paid a maximum of $1,150,000.00 in cash pursuant to sections 4 and 5, above, during the period from September 14, 2006 through September 13, 2007 (assuming such compensation equals or exceeds the Minimum Compensation). If, pursuant to sections 4 and 5, above, the Executive would earn in excess of $1,150,000.00 during the period from September 14, 2006 through September 13, 2007, such Excess Compensation shall be paid in accordance with the Addendum B to the Agreement to be executed by the Executive and the Company, subject to any maximum compensation limitation in Addendum B.

9. **Calculation of Addendum A Amounts Due.** All calculations required pursuant to this Addendum A shall be made in the sole discretion of the Company in accordance with methodologies, policies and procedures of the Company which may be in effect from time to time, and which may be changed by the Company at any time in its sole discretion.

10. **Non-Payment of Bonuses.** Notwithstanding anything to the contrary in this Addendum A, the Executive shall not earn or be entitled to receive any unpaid bonuses if the Executive is no longer employed by the Company as of the payment date.

**IN WITNESS WHEREOF**, the parties have executed this Addendum A as of the date first written above.

American Home Mortgage Corp.

By: _____

Alan B. Horn
Executive Vice President and
General Counsel

_____
Kathleen Heck

7

*Page 23*

---

**EMPLOYMENT AGREEMENT**
**Addendum B**

---

The following sets forth ADDENDUM B to the EMPLOYMENT AGREEMENT (the "Agreement") by and between AMERICAN HOME MORTGAGE CORP. (the "Company") and Kathleen Heck (the "Executive") dated as of September 14, 2006.

THE COMPANY AND EXECUTIVE AGREE AS FOLLOWS:

1. **Terms and Conditions.** Terms and conditions herein shall be defined by, and are subject to, the Agreement and Addendum A thereto, unless otherwise specifically set forth in this Addendum B.

2. **Addendum B Bonus.** If the Executive would have earned cash compensation of more than $1,150,000.00, if not for the $1,150,000.00 compensation limit set forth in section 8 of Addendum A, this Addendum B shall apply to any compensation earned by the Executive under the Agreement in excess of $1,150,000.00 ("Excess Compensation").

3. **Excess Compensation.** Excess Compensation, as calculated pursuant to section 4, below, shall be paid to the Executive in the form of a restricted stock grant issued in accordance with the Company's 1999 Omnibus Stock Incentive Plan (the "Plan"). The Executive will be required to execute an agreement setting forth the terms of said grant, in a form to be provided by the Company in accordance with the Plan (the "Grant Agreement"). If earned, the number of shares granted will be determined by dividing the Excess Compensation by the closing price of the common stock of the Company's publicly traded parent, American Home Mortgage Investment Corp., on the grant date, and such shares, if granted, will vest 50% two years from the date of the grant, and 50% three years from the date of the grant.

4. **Computation of Excess Compensation Earned.** The Executive shall be paid a percentage of Excess Compensation in accordance with the following formula:

*Percentage RefI*

|  | Less Than or Equal to 20% RefI | Greater Than 20%, Less Than or Equal to 30% RefI | Greater Than 30%, Less Than or Equal to 40% RefI | Greater Than 40%, Less Than or Equal to 50% RefI | Greater Than 50% RefI |
|---|---|---|---|---|---|
| **Greater Than 100 Bps** | 90% | 80% | 70% | 60% | 50% |
| **Greater Than 90 Bps, Less Than or Equal to 100 Bps** | 85% | 75% | 65% | 55% | 45% |
| **Greater Than 80 Bps, Less Than or Equal to 90 Bps** | 80% | 70% | 60% | 50% | 40% |
| **Greater Than 70 Bps, Less Than or Equal to 80 Bps** | 75% | 65% | 55% | 45% | 35% |

*NOI*
*Profit*

8

Page 24

*Of*

*Division*

| | | | | | |
|---|---|---|---|---|---|
| Greater Than 60 Bps, Less Than or Equal to 70 Bps | 70% | 60% | 50% | 40% | 30% |
| Greater Than 50 Bps, Less Than or Equal to 60 Bps | 65% | 55% | 45% | 35% | 25% |
| Greater Than 45 Bps, Less Than or Equal to 50 Bps | 60% | 50% | 40% | 30% | 20% |
| Greater Than 40 Bps, Less Than or Equal to 45 Bps | 55% | 45% | 35% | 25% | 15% |

For purposes of this section 4, "NOI Profit of Division" is the profit of the Division, as calculated by the Company, during the period from September 14, 2006 through September 13, 2007; a "Bp" is .01 percent (.01%); and "Refi" refers to refinanced loans closed by the Division during the period from September 14, 2006 through September 13, 2007, as determined solely by the Company. Percentages set forth in the above chart represent percentages of the amount over $1,150,000.00 otherwise earned by the Executive pursuant to Addendum A. Thus, for example, if the Division has a NOI of greater than 80Bps and less than 90 Bps, and Refis are greater than 20% and less than 30%, the Executive shall receive 70% of Excess Compensation in the form of a restricted stock grant.

5.  **Maximum Compensation.** In no event shall the total compensation paid to the Executive pursuant to the Agreement, including Addendum A and Addendum B of the Agreement, exceed $2.5 million during the period from September 14, 2006 through September 13, 2007.

6.  **Computation of Addendum B Amounts Due.** All amounts due under this Addendum B shall be computed in the sole discretion of the Company in accordance with methodologies, policies and procedures which may be in effect from time to time, and which may be changed by the Company at any time in its sole discretion.

7.  **Non-Payment of Bonuses.** Notwithstanding the terms of this Addendum B, the Executive shall not be entitled to any unpaid bonuses or compensation pursuant to this Addendum B if he or she is not employed by the Company as of the payment date.

IN WITNESS WHEREOF, the parties have executed this Addendum B as of the date first written above.

American Home Mortgage Corp.

By:

Alan B. Horn
Executive Vice President and
General Counsel

Kathleen Heck

9

## Kathleen Heck

| | |
|---|---|
| **From:** | john@tmpinvestments.com |
| **Sent:** | Friday, June 27, 2008 9:31 AM |
| **To:** | Kathleen Heck |
| **Subject:** | Re: Find anything for my BK claim? |

Morning,,, I found only 3 emails with much discussion on the topic between you, me and Davin... It should prove helpful... But you may already have these.....

All contracts we wiped clean from my data base...

What's the best fax to send them to you...
Sent from my BlackBerry® wireless device

-----Original Message-----
From: "Kathleen Heck" <kath33rd@aol.com>

Date: Fri, 27 Jun 2008 07:13:05
To:<john@tmpinvestments.com>
Subject: Find anything for my BK claim?


See today's old or new joke at http://kathleenheck.com/blog/

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **AMERICAN HOME MORTGAGE** | ) | |
| **HOLDINGS, INC., Delaware corporation, et al.,** | ) | **Case No. 07-11047 (CSS)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |
| | ) | **Objection Deadline: July 10, 2008 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: July 17, 2008 at 2:00 p.m. (ET)** |

AHM OB11 6/17/2008 (merge2.txnum2) 4000016282 BSI Use - 8

HECK, KATHLEEN R
30 HIDEAWAY LN
SPARTA, NJ 07871

FILED
2008 JUL - 7 AM 8:58
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

## NOTICE OF DEBTORS' ELEVENTH OMNIBUS (SUBSTANTIVE) OBJECTION
## TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE,
## BANKRUPTCY RULES 3003 AND 3007 AND LOCAL RULE 3007-1

TO:  HECK, KATHLEEN R
     30 HIDEAWAY LN
     SPARTA, NJ 07871

**Basis For Objection:**  No Liability

| | **Claim Number** | **Claim Amount** |
|---|---|---|
| **Claim to be Expunged** | 7449 | Unspecified |

Claimant employee asserted claim for retroactive pay raise, however, Debtors'
books and records indicate that claimant was not entitled to retroactive pay raise.

The above-captioned debtors and debtors in possession (the "Debtors") have filed the Debtors' Eleventh Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1 (the "Objection"), a copy of which is attached hereto. The Debtors seek by this Objection to disallow the claim listed above because the Debtors have determined, after review of their books and records, that they have no record of any liability on account of this claim. The Objection seeks to alter your rights by disallowing the claim listed above in the "Expunged Claim" row.

Responses to the Objection, if any, must be filed on or before July 10, 2008 at 4:00 p.m. (ET) (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

At the same time, you must also serve a copy of the response upon the counsel to the Debtors listed below so that the response is received on or before the Objection Deadline.

A HEARING ON THE OBJECTION WILL BE HELD ON JULY 17, 2008 AT 2:00 P.M. (ET) BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 5TH FLOOR, COURTROOM NO. 6, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: June 17, 2008
       Wilmington, Delaware

*Response Enclosed KH*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Edward J. Kosmowski (No. 3849)
Kara Hammond Coyle (No. 4410)
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone: (302) 571-6756
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession