IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------------- x
In re:                                                : Chapter 11
                                                      :
AMERICAN HOME MORTGAGE                                : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]    :
                                                      : Jointly Administered
              Debtors.                                :
                                                      : **Reference Docket No. 4826**
---------------------------------------------------------------------------- x

## OBJECTION OF THE DEBTORS TO MOTION OF ELVIN AND PHYLLIS VALENZUELA FOR AN ORDER REQUIRING APPEARANCE OF DEBTORS FOR EXAMINATION AND PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AND LOCAL RULE 2004-1(A)

The above-captioned debtors and debtors-in-possession (the "Debtors") object to the Motion for an Order Requiring Appearance of Debtors for Examination and Production of Documents Pursuant to Federal Rules of Bankruptcy Procedure ("FRBP") 2004 and Local Rule 2004-1(a) [Docket No. 4826] (the "Motion") filed by Elvin and Phyllis Valenzuela (the "Valenzuelas") on June 25, 2008. In support of this Objection, the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

1.  By this Motion, the Valenzuelas seek to discover potential defendants (other than the Debtors) for a class action lawsuit at the Debtors' expense. The information requested is

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

not necessary for the Valenzuelas to establish a claim against the Debtors, as evidenced by the Proof of Claim (defined herein) they have already filed. Indeed, the Valenzuelas do not even allege in their Motion that the requested information is necessary to establish their claim against the Debtors or that denial of their request would cause them undue hardship. Instead, the Valenzuelas attempt to utilize FRBP 2004 to discover the identity of subsequent purchasers of Option Arm loans originated by the Debtors. This transparent attempt to abuse FRBP 2004 should not be condoned.

2.     The Debtors will show in this Objection that the Valenzuelas cannot meet the requirements for a Rule 2004 motion because they: i) are not a party in interest, (ii) seek information outside of the scope of FRBP 2004, and (iii) cannot establish good cause to support their Motion. However, in the event the Court finds that the Valenzeulas are entitled to Rule 2004 examination, the Debtors request that the costs associated with requested document production be shifted to the Valenzuelas given the great burden they impose on the Debtors.

## FACTUAL BACKGROUND

3.     On August 6, 2007 (the "Petition Date"), the Debtors each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

5.     On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

6.     On August 17, 2007, this Court entered an order appointing Epiq Bankruptcy Solutions, LLC ("Epiq") as claims and noticing agent in these chapter 11 cases. Epiq is authorized to maintain (i) all proofs of claim filed against the Debtors and (ii) an official claims register by docketing all proofs of claim in a claims database containing, inter alia, information regarding the name and address of each claimant, the date the proof of claim was received by Epiq, the claim number assigned to the proof of claim, and the asserted amount and classification of the claim.

7.     On October 30, 2007, this Court entered an order (the "Bar Date Order") establishing January 11, 2008 at 4:00 p.m. (ET) (the "Bar Date") as the final date and time for filing proofs of claim against the Debtors' estates on account of claims arising, or deemed to have arisen pursuant to section 501(d) of the Bankruptcy Code, prior to the Petition Date (the "Claims") and approving the form and manner of notice of the Bar Date. Pursuant to the Bar Date Order, actual notice of the Bar Date was sent to (i) all known entities holding potential prepetition claims and their counsel (if known); (ii) all parties that have requested notice in these cases; (iii) all equity security holders; (iv) the United States Trustee; (v) the Securities and Exchange Commission; and (vi) all taxing authorities for the jurisdictions in which the Debtors do business. In addition, notice of the Bar Date was published in the Dallas Morning Star, the Saint Louis Post-Dispatch and the national edition of The New York Times on November 6, 2007. Affidavits of service and publication confirming such actual and publication notice of the Bar Date have been filed with this Court.

8. On the Petition Date, the Debtors filed a motion [Docket No. 11], seeking authority, *inter alia*, to sell substantially all assets relating to the Debtors' mortgage loan servicing business (the "Servicing Business"). After a week long trial that commenced on October 15, 2007, by Order dated October 30, 2007 [Docket No. 1711], the Court approved the sale of the Servicing Business to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and supplemented, and including all schedules, exhibits, and attachments thereto).

9. On January 21, 2008, the Valenzuelas filed their proof of claim, attached hereto as Exhibit 1[2] (the "Proof of Claim"), on behalf of themselves and other members of the public similarly situated in an amount estimated to be not less than $50,000 individually and not less than $100 million in the aggregate, plus statutory attorneys' fees and other amounts as yet undetermined. The Valenzuelas attached as Exhibit A to their Proof of Claim an extensive outline of the bases of their claim, which included, *inter alia*, claims against the Debtors under the Truth in Lending Act based on the Debtors' failure to clearly and conspicuously disclose in Debtors' Option Adjustable Rate Mortgage loan documents, and in the required disclosure statements, accompanying the loans specifics regarding the loan teaser rates and claims related to the Debtors' alleged unlawful, fraudulent and unfair business acts or practices.

---

[2] The Proof of Claim contains certain personal information of the Valenzuelas which has been redacted to protect their privacy.

4

**OBJECTION**

**I. The Valenzuelas Fail to Satisfy the Necessary Requirements to Utilize a Rule 2004 Motion**

10.   The Valenzuelas fail to meet the statutory and case law requirements of FRBP 2004. Rule 2004 contains two conditions for granting a Rule 2004 motion. See Fed. R. Bankr. P. 2004(a)-(b). First, the movant must be a party in interest. Id. (emphasis added) ("On motion of any party in interest the court may order the examination of any entity..."). Second, the information sought must be related to the financial condition of the debtor or issues that may affect the administration of the debtors' estates. Id. (The Court may order the examination of any entity which "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or the debtor's right to a discharge.") Finally, courts have established a third requirement that good cause must be demonstrated before a Rule 2004 examination may proceed. The Valenzuelas fail to meet all three requirements.

**A. The Valenzuelas are Not Parties in Interest**

11.   Only parties in interest "may raise and may appear and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109. This Court has previously rejected "the proposition that anyone with an economic stake in the outcome of a bankruptcy case has standing to participate in that case." Lifeco Investment Group, Inc., 173 B.R. 478, 487 (Bankr. D. Del. 1994). Indeed, "a too-liberal interpretation of 'party in interest' will ultimately clash with the need for prompt and efficient resolution of a bankrupt's estate." In re Aronson, No. 94-2497, 1994 U.S. Dist. LEXIS 12811, at *23 (E.D. Pa. Sep. 12, 1994). That being said, "[t]he term 'party in interest' has no specific definition in the Code and its applicability must be

determined on an '*ad hoc*' basis." In re Johns-Manville Corp., 36 B.R. 743, 747 (Bankr. S.D.N.Y. 1984).

12. At minimum, in order to qualify as a party in interest a purported creditor must assert a timely claim. In re Northwestern Corp., No. 03-12872, 2004 Bankr. LEXIS 808, at *6 (Bankr. D. Del. Jun. 16, 2004) ("Bluntly put, the question is whether or not a creditor who does not assert a . . . claim prior to the expiration of the Bar Date subsequently has standing to do so. The answer is no. To conclude otherwise would be to render the bar date process meaningless.").; In re Aronson, 1994 U.S. Dist. LEXIS 12811, at *21 ("a party who had failed to assert a timely claim . . . was not a party in interest"). This is so even if the claimant is not included in the debtor's list of creditors. In re Stewart, 46 B.R. 73, 74 (Bankr. D. Or. 1985) ("In order to share in any distribution from the estate, a creditor must file a claim, whether or not he is included in the debtor's list of creditors."). In In re Stewart, a creditor objected to the confirmation of the debtor's reorganization plan. Id. at 75. In response, the debtor argued that the creditor had not filed a timely proof of claim, and was therefore not a party in interest. Id. The creditor claimed that his participation in the case and his written objection to confirmation constituted an informal claim. Id. Citing the Ninth Circuit, the court denied the creditor's assertion because his written filings with the court were not sufficient to bring "to the attention of the court the nature and amount of the claim." Id. at 76.

13. In the present case, the Valenzuelas have failed to assert a timely claim, and are therefore not parties in interest.³ It is undisputed that the Valenzuelas' Proof of Claim was filed on January 21, 2008, ten days after the Bar Date established by this Court. See Motion at ¶ 1

---

³  To date, the Debtors have not filed any objections to the Proof of Claim; however, the Debtors reserve all
*(Footnote continued)*

("Creditors filed their proof of claim on behalf of themselves and all other similarly situated borrowers, on January 21, 2008.") Moreover, the Valenzuelas had not participated in the Debtors' bankruptcy until their filing of a late Proof of Claim, nor had they submitted any written documents to this Court that might bring "to the attention of the court the nature and amount of the claim." Id. Therefore the Valenzuelas' Motion is moot because they are not parties in interest in this bankruptcy.

**B. The Valenzuelas Seek Information Outside of the Scope of Rule 2004**

14. "Despite the breadth of Bankruptcy Rule 2004, 'it must *first* be determined that the examination is proper.'" In re Enron Corp., 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002) (quoting In re GHR Energy Corp., 35 B.R. 534, 538 (Bankr. D. Mass. 1983)). There are two central restrictions that limit the propriety of Rule 2004. First, a Rule 2004 examination is intended to uncover the debtor's assets, in order to most effectively administer the estate. In re Dinubilo, 177 B.R. 932, 940 (E.D. Cal. 1993). Second, a Rule 2004 examination is used "as a prelitigation device, during the short time period before a matter becomes contested." Id. Each restriction will be addressed in turn.

15. It is well recognized that "[t]he purpose generally of Rule 2004 is to enable parties in interest to locate assets of the debtor and to make those assets available to the creditors of the estate." In re Continental Forge Co., 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987); In re Dinubilo, 177 B.R. at 940 ("This purpose is to allow inquiry into the debtor's acts, conduct or financial affairs so as to discover the existence and location of assets of the estate."). Given that purpose, Rule 2004 is an appropriate vehicle to allow inquiry into a debtor's affairs

---

rights to object to the Proof of Claim on any and all bases, including, but not limited to, that the Proof of Claim is
*(Footnote continued)*

in order to determine if a creditor has a claim. In re Strecker, 251 B.R. 878, 879 (Bankr. D. Colo. 2000); In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination"); In re Szadkowski, 198 B.R. 140, 141 (Bankr. D. Md. 1996).

16.     However, in the present case the Valenzuelas are not seeking the type of information for which a Rule 2004 inquiry is designed. First, they have already filed their Proof of Claim, which included an extensive outline of the bases for their claim, so they do not need the benefit of an unrestricted fishing expedition to determine the existence of that claim. More importantly, the Valenzuelas are not looking for information regarding the Debtors' assets. The Valenzuelas are looking for information regarding "the identity of all subsequent purchasers or assignees of the Option Arm loans" and "all documents related to any securitization of the Option Arm loans." Motion at ¶ 7. These documents are irrelevant to the administration of the Debtors' estates and the Proof of Claim regarding Debtors' alleged failure to adequately disclose loan terms and alleged engagement in fraudulent practices.

17.     The second restriction governing the propriety of a Rule 2004 examination is that: "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure ["FRCP"] and not by Rule 2004." In re Enron Corp., 281 B.R. at 840. Courts have been highly critical of the use of Rule 2004 to circumvent traditional discovery under the FRCP because of "the distinction between the broad fishing expedition-like nature of the Rule 2004 exam . . . and the more restrictive nature of discovery under" the FRCP. In re 2435 Plainfield Ave., Inc., 223 B.R. 440, 456 (Bankr. D.N.J. 1998);

---

late filed.

Snyder v. Society Bank, 181 B.R. 40, 42 (S.D. Tex. 1994) ("The use of Rule 2004 to further its case in state court constitutes an abuse of Rule 2004."); In re GHR Energy Corp., 35 B.R. at 538 ("It appears the debtors are attempting to use Rule 2004 to circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure."). In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("courts are wary of attempts to utilize Fed.R.Bankr.P. [sic] 2004 to avoid the restrictions of the Fed.R.Civ.P. [sic] in the context of adversary proceedings"). As a result of courts' suspicions, a Rule 2004 examination is usually not permitted where "that use of a [Rule] 2004 examination would unavoidably and unintentionally create a back door through which the [movant] could circumvent the limitations of [the FRCP]." Id. at 30.

18. The circumstances in this case indicate that a Rule 2004 examination is inappropriate. The Valenzuelas have no need for the prelitigation tool of a 2004 exam to conduct discovery in order to establish a claim against the Debtors, as evidenced by their extensive Proof of Claim. Nor have the Valenzuelas raised any reasons why denial of their use of this prelitigation tool will cause them undue hardship or injustice. See Motion at ¶¶ 6-7. Once they file suit against the Debtors, the Valenzuelas may seek discovery in that adversary proceeding, with the limitations imposed by the FRCP. Allowing the Valenzuelas to conduct at this time a boundless fishing expedition into materials completely unrelated to their own mortgage agreement, with no tangible relationship to the alleged claims against the Debtors based on the Truth in Lending Act and other alleged fraudulent practices of the Debtors, should not be condoned.

### C. The Valenzuelas Cannot Show Good Cause to Support Their Motion

19. While the scope of a Rule 2004 examination is broad, it "is not limitless; the examination should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor." In re Texaco, Inc., 79 B.R. 551, 553 (Bankr. S.D. N.Y. 1987). Accordingly, when a party objects to a Rule 2004 examination, the movant "must meet a threshold standard of 'good cause' before she will be permitted to conduct examinations and require the production of documents." In re Countrywide Home Loans, Inc., 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).

20. The analysis for good cause can be broken down into two elements: (1) the examination must be necessary to (a) establish a claim or (b) prevent undue hardship or injustice, and (2) the cost must not outweigh the benefit. In re Express One Int'l, Inc., 217 B.R. at 215, 217 (Bankr. E.D. Tex. 1998) ("[G]ood cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue hardship or injustice. Furthermore, if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied.")

21. Before applying the Express One analysis to this case, it should be noted that the evidence necessary to support a showing of good cause varies based upon the facts of a case. Tightly-focused inquiries that only involve dealings between the debtor and creditor are less intrusive, and require a lower level of good cause than inquiries that seek "far-reaching information on policies and procedures of general application," which require "a correspondingly higher showing of good cause" because of their inherently intrusive nature. In

re Countrywide Home Loans, Inc., 384 B.R. at 393. In this case, the burden imposed on the Valenzuelas should be high because they seek broad-ranging material related to every Option ARM sold by the Debtors from January 21, 2004 through the present. Such a request is the epitome of "far-reaching information on policies and procedures of general application." Id.

22.   Regarding the Express One analysis, section (1)(a) is not satisfied because the Valenzuelas have already filed their Proof of Claim that includes an extensive outline of the bases for their claims against the Debtors, so they clearly do not need a Rule 2004 examination in order to "establish the claim." Nor is section 1(b) satisfied, because denial of their request would not cause "undue hardship or injustice." Tellingly, the Valenzuelas do not even allege in their Motion that denial of their request will cause undue hardship. See Motion at ¶¶ 6-7.

23.   In addition, the Valenzuelas do not satisfy the second element of the Express One analysis because the burden to the Debtors would far outweigh the benefit to the Valenzuelas of examining the documents requested. The Debtors are operating with a skeleton staff and cannot afford to divert the attention of the limited remaining employees to gather the information requested. Those employees who remain are needed to sell the Debtors' remaining assets and wind up the business of the Debtors, not to search the volumes of records that are involved in the Valenzuelas' request. Moreover, the documents requested by the Valenzuelas are, for the most part, either irrelevant to their claim or not in the Debtors' possession.[4] Specifically:

---

[4]   To the extent any document request seeks the production of loan documents of individual borrowers other than the Valenzuelas, the Debtors object based on the confidential information of individual borrowers contained in such loan documents.

11

a. **Requests Five and Nine**: The Debtors will voluntarily produce the documents requested that relate to the Valenzuelas' loan documents specifically, and the Debtors' document retention policy, generally.

b. **Requests Two, Four, and Seven**: The documents relating to the securitization of the Debtors' Option ARM loans are publicly available on EDGAR. The reports and summaries of the subsequent sales of all Option ARM loans do not exist. These documents would have to be created, and would cost the Debtors a tremendous amount of time and money because its few remaining employees would have to track every loan sold from January 21, 2004 through the present. Moreover, the subsequent identity of purchasers of Option Arm loans is completely irrelevant to any causes of action the Valenzuelas may assert against the Debtors. Finally, the Debtors do not possess documents related to the servicing of the Valenzuelas' Option ARM loan as the Debtors' Servicing Business was sold on September 25, 2007.

c. **Requests One, Three, Six and Eight**: The remaining document requests are similarly highly burdensome to the Debtors because of their scope, and not relevant to any of the Valenzuelas' possible claims as creditors of the Debtors as these requests relate to the subsequent identity of purchasers of Option Arm loans and related securitization agreements.

24. Significantly, "the burden of showing good cause is an affirmative one and is not satisfied merely by a showing that justice would not be impeded by production of the requested documents." In re Wilcher, 56 B.R. 428, 435 (Bankr. N.D. Ill. 1985). The Valenzuelas clearly fail to meet this affirmative burden. In fact, the Valenzuelas do not even assert that the 2004 examination and document requests are necessary to establish their claim or that denial would cause undue hardship or injustice. See Motion at ¶¶ 6-7.

DB02:6964842.3                                                                                                                                       066585.1001

25. In this case, the Valenzuelas fail to meet all three criteria for a Rule 2004 examination. They are not parties in interest, they are not seeking information regarding the Debtors' estates, and they cannot show good cause for their request. Therefore their request should be denied.

**II. The Valenzuelas' Should Bear the Costs Associated with Their 2004 Request**

26. If, despite the arguments set forth above, the Court decides that the Valenzuelas may proceed with their Rule 2004 examination, the Debtors ask that the Valenzuelas be required to pay for the cost of the examination. As noted above in section I.C., the time and expense of producing the requested materials far outweighs the utility to the Valenzuelas of providing such information. As such, the financial burden should be placed on the Valenzuelas.

27. Cost-shifting is not unknown in the context of Rule 2004 examinations. In <u>In re Valley Forge Plaza Assoc.</u>, the court allowed a limited 2004 review by the debtor, under the condition that "all reasonable costs incurred by the [Creditor's experts] in responding thereto . . . be borne by the Debtor." 109 B.R. 669, 671 (Bankr. E.D. Pa. 1990); <u>see</u> also <u>In re K-FAB, Inc.</u>,181 B.R. 240, 242 (Bankr. M.D. Pa. 1990) (granting attorneys fees to a creditor for activities, including a Rule 2004 examination, where the services were necessary to protect the creditor's interest in the debtors' property). Indeed, the Bankruptcy Court for the Eastern District of Pennsylvania has noted that "having chosen a particular course of action . . . the Creditor must bear the costs and expenses of 'doing business,' e.g. Xeroxing, travel expenses, postage, and research." <u>In re Woerner</u>, 67 B.R. 685, 689 (Bankr. E.D. Pa. 1986). The Debtors believe that in this case, the cost of the Valenzuelas' doing business ought to include the costs of examination and production under their Rule 2004 motion.

28.     While there is a dearth of cases addressing who is to bear the burden of the costs of production under a Rule 2004 examination, the cost-shifting analysis of FRCP 45(c) provides a useful guide. FRCP 45 provides the rules for issuing a subpoena in a federal civil action. Similar to FRBP 2004, Rule 45 allows a federal court to deny or quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). In the alternative, if the subpoenaed party objects, the court may compel production by an order that "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii). In this particular case, if the Court chooses to issue a subpoena to compel the production of documents by the Debtors after this objection, the Debtors request that the Court follow the model set by FRCP 45(c)(2)(B) and force the Valenzuelas to pay for the cost of the production. Standard Chlorine of Delaware v. Sinibaldi, 821 F.Supp. 232, (D. Del. 1992) (granting production costs under revised Rule 45 where a party sought 2500 pages of production from non-party Wilmington Trust); United States v. Columbia Broad. Sys., 666 F.2d 364, 365 (9th Cir. 1982) (remanding case with an order to determine reasonable costs for 5 non-party witnesses who provided voluminous production upon subpoena under old Rule 45); In re Faiella, No. 05-50986, 2008 Bankr. LEXIS 1452, at *17 (Bankr. D.N.J. Apr. 18, 2008) (denying a request for attorneys' fees when expenses could have been avoided if non-party witness had promptly produced documents).

29.     Under the present circumstances the Debtors are, in effect, a non-party to the Valenzuelas' litigation that should be protected in a manner similar to that of FRCP 45(c)(2)(B)(ii). The documents requested by the Valenzuelas are clearly targeted at identifying all of the possible plaintiffs and defendants in a prospective civil action. This motion is merely a vehicle by which the Valenzuelas seek to bring suit against third-parties that are only

tangentially related to the transaction between the Debtors and the Valenzuelas. From this vantage point, the application of discretion by this Court, in a manner similar to that allowed under FRCP 45, is perfectly reasonable.

30. The Ninth Circuit has provided a strong explanation of the distinction between ordinary circumstances in which "party witnesses must generally bear the burden of discovery costs," and the exceptions for non-party witnesses provided under Rule 45, which is highly applicable to this case. Columbia, 666 F.2d at 371. In Columbia Broadcasting, the court addressed the request for compensation of production expenses by five non-party witnesses. Id. at 365. While analyzing the request, the court noted that "nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." Id. at 371.

31. The Debtors in this action finds themselves in a position quite similar to that of the non-party witnesses in Columbia Broadcasting. If a Rule 2004 examination is granted by this Court, the Debtors will be powerless to control the scope of discovery taken by the Valenzuelas. Moreover, similar to the circumstances in Standard Chlorine of Delaware, the Debtors are being asked to produce masses of documents related to the sale and securitization of every mortgage it sold between 2004 and the present. 821 F.Supp. at 264. The scope of the Valenzuelas' request will likely be economically and temporally crippling to the Debtors if they are required to bear the financial burden of the Valenzuelas' fishing expedition.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Court deny the Motion for an order directing production of documents and oral examination, or, in the alternative, shift the costs borne by the Debtors to comply with Rule 2004 examination and document production to the Valenzuelas.

Dated: Wilmington, Delaware
July 10, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ [signature]*

John T. Dorsey (No. 2988)
Sharon M. Zieg (No. 4196)
Erin Edwards (No. 4392)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and
Debtors in Possession