# **EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE[1]

| | |
|---|---|
| In re | CASE NO. 07-11049 (CSS) |
| AMERICAN HOME MORTGAGE ACCEPTANCE, INC. | Chapter 11 |
| Debtor. | PROOF OF CLAIM |
| | [Notice hereof filed concurrently in Case No. 07-11047] |

**FILED / RECEIVED**

JAN 2 1 2008

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

ELVIN VALENZUELA and PHYLLIS VALENZUELA, by and through their undersigned

counsel of record, on behalf of themselves and all other members of the general public similarly

situated, submit this proof of claim.

1.    The basis of this claim is as described in Exhibit "A" hereto, and is evidenced, in part, by

loan-related documents, true and correct copies of which are attached hereto as Exhibit

"B" and incorporated herein by this reference.

2.    No judgment has been entered with respect to this claim.

3.    The total amount of this claim at the time this case was filed is not known at this time, but

estimated to be not less than $50,000 individually, and not less than $100 million in the

---

[1]    This Case is related to and jointly administered with the following: American Home
Mortgage Holdings, Inc. 07-11047; American Home Mortgage Investment Corp. 7-
11048; American Home Mortgage Servicing, Inc. 07-11050; American Home
Mortgage Corp. 07-11051; American Home Ventures LLC 07-11052; Homegate
Settlement Services, Inc. 07-11053; and Great Oak Abstract Corp. 07-11054

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)        0000009741



aggregate, plus statutory attorneys' fees and other amounts as yet undetermined.

4.    The amount of all payments on this claim has been credited and deducted for the purpose

of making this proof of claim.

Dated:  January 10, 2008

SPIRO MOSS BARNESS LLP

/s/ Daniel I. Barness

By_____
        DANIEL I. BARNESS
(CSB # 104203)
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Telephone: (310) 235-2468
Facsimile (310) 235-2456
E-mail: daniel@spiromoss.com

Attorneys for Elvin Valenzuela and Phyllis Valenzuela,
individually and on behalf of similarly situated members
of the general public, Claimants

**EXHIBIT "A" TO PROOF OF CLAIM**

The claims herein arise pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.;* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.;* and other applicable statutory and common law. Claimants, individually, and on behalf of all others similarly situated, bring this claim against Debtors based, in part, on Debtors'[2] failure to clearly and conspicuously disclose to Claimants and the Class Members, in Debtors' Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Claimants and the Class members would be paying on the Note(s).

This claim also concerns Debtors' unlawful, fraudulent and unfair business acts or practices. Debtors engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Debtors' profits, even as Debtors knew their conduct would cause many of these consumers to lose their homes through foreclosure.

Claimants, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendant. The Option ARM loan sold to Claimants and the Class is a deceptively devised financial product. The loan has a variable rate feature with payment caps.

---

[2] As used herein "Debtor/Debtors" refers to the Debtor herein, and all other Debtors in the jointly administered cases to which this case is related, including any parent corporation, subsidiary or joint-venture sister corporation which may be a debtor in any of the jointly administered cases, who are, or may hereafter be found to be, jointly liable with the captioned Debtor to Claimants and to the Class whom they seek to represent.

3

The product was sold based on the promise of a low fixed payment based on a low listed interest rate, when in fact Claimants and the Class were charged a different, much greater interest rate than promised. Further, Debtors failed to disclose, and by omission, failed to inform Claimants of the fact that Debtors' Option ARM loan was designed to, and did, cause negative amortization to occur.

Debtors sold their Option ARM loan product to consumers, including Claimants, in a false or deceptive manner. Debtors' loan documents indicated that the loan would have a very low payment for the first three (3) to five (5) years and there is no indication of negative amortization. In furtherance of their scheme, Debtors listed a low "teaser" rate in the Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter "TILDS") to lure Claimants and the Class members into purchasing Debtors' Option ARM loan product. However, the low "teaser" rate was illusory, a false promise. Claimants and others similarly situated did not receive the benefit of the low rate promised to them. Once execution of Debtors' loan documents was completed, the interest rate applied to Claimants's and Class members' loans was immediately and significantly increased.

Based on the Debtors' representations, Claimants and the Class members agreed to finance their primary residence through Debtors' Option ARM loan. After, the purported three (3) - five (5) year fixed interest period, Claimants and the Class members reasonably believed, based on the representations contained in the documents Debtors provided to Claimants and the Class members, that they would be able to refinance their loan and get a new loan before their scheduled payments increased. However, the payment schedule provided by Debtors failed to disclose, and by omission, failed to inform these consumers that due to the negative amortization

4

that was purposefully built into these loans, Claimants and the Class members would be unable to refinance their homes as there would be little or no equity left to refinance.

In stark contrast to this reality, Defendant, through the standardized loan documents they created and supplied to Claimants, stated that negative amortization was only a mere possibility. Debtors concealed and failed to disclose the fact that the loan, as presented and designed, in fact, guaranteed negative amortization. Debtors failed to disclose and omitted the objectively material fact that negative amortization was absolutely certain to occur if consumers followed the payment schedule listed by Debtors in the TILDS. This information was objectively material and necessary for consumers to make an informed decision because this would have revealed that the loan's principal balance would increase if the payment schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest and payment rates re-set.

At all times relevant, Defendant, and each of them, knew or should have known, or were reckless in not knowing, that: (i) the payment rate provided to Claimants and the Class members were insufficient to pay both interest and principle; (ii) that negative amortization was certain to occur if Claimants and the Class members made payments according to the payment schedule provided by Defendant; and (iii) that loss of equity and/or loss of Claimants's and the Class members residence was substantially certain to occur if Claimants and the Class members made payments according to the payment schedule provided by Defendant.

In spite of its knowledge, Debtors sold its Option ARM loans with the promise of a low payment and interest rate. Defendant failed to disclose and/or concealed by making partial representations of material facts when Debtors had exclusive knowledge of material facts that negative amortization was certain to occur. This concealed and omitted information was not

5

known to Claimants and the Class members and which, at all times relevant, Debtors failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Claimants and all others similarly situated. Because the ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note and the payment disclosed by Debtors were insufficient to pay both principle and interest, negative amortization occurred.

The Option ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

Debtors engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

Debtors' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Claimants or others similarly situated would receive a home loan promised.

Claimants contend that these claims should be class claims, and any litigation arising therefrom should be conducted pursuant to F.R. Bankr. Proc. 7023. Their claims against Debtors are asserted on their own behalf and on behalf of all persons similarly situated in the United States. The class that Claimants seek to represent is all people who have claims against Debtors as described hereinabove.

The class which Claimants seek to represent is so numerous that joinder of all such persons is impracticable without the class claim/class action mechanism. Disposition of their claims by way of such class treatment is thus a benefit to the parties and to the Court. The

6

class which Claimants represents is easily ascertainable from the loan documentation and other records maintained by Debtor.

There is a well-defined community of interest and common questions of law and fact involved affecting the parties to be represented. There are common facts which establish Debtor's liability under TILA, UFC and other applicable statutory authority and common law, and the same law would apply to those facts. Proof of a common set of facts will establish the right of each member of the class to recover. The remedies of the aggrieved class members will be determined by reference to such common facts and law. The claims of Claimants are typical of those of the class and Claimants will fairly and adequately represent the interests of the class. The class claim mechanism is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class claim treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class claim. The cost to, and burden on, the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

7

EXHIBIT "B"

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:   American Home Mortgage Acceptance, Inc.
1500 W. Shaw Avenue, Suite 403
Fresno, CA 93711

☐ Preliminary   ☒ Final
*DATE:* 06/23/05
LOAN NO.:
*Type of Loan:*
APP NO.:

BORROWERS:   Elvin Valenzuela
Phyllis Valenzuela

ADDRESS:
CITY/STATE/ZIP:
PROPERTY:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| % | $ | $ | $ |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

DEMAND FEATURE:   ☒ This loan does not have a Demand Feature.   ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been   provided to you earlier.
THE CURRENT INDEX RATE IS

SECURITY: You are giving a security interest in the property located at:

ASSUMPTION:   Someone buying this property   ☐ cannot assume the remaining balance due under original mortgage terms
☒ may assume, subject to lender's conditions, the remaining balance due under   original mortgage terms.

FILING / RECORDING FEES:   $

PROPERTY INSURANCE:   ☒ Property hazard insurance in the amount of $                with a mortgage clause to the lender
is a required condition of this loan. Borrower may purchase this insurance from   any insurance company acceptable to the lender.
Hazard insurance   ☐ is   ☒ is not available through the lender at an estimated cost of   N/A   for a   year term.

LATE CHARGES:   If your payment is more than   15   days late, you will be charged a late charge of   5.000   % of the
overdue payment.

PREPAYMENT:   If you pay off your loan early, you
☒ may   ☐ will not   have to pay a penalty.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding   non-payment, default, required repayment in full before scheduled date,   and prepayment refunds and
penalties.
a means estimate

I/We hereby acknowledge reading and receiving a complete copy of this   disclosure.

Elvin Valenzuela                    BORROWER / DATE          Phyllis Valenzuela                    BORROWER / DATE

BORROWER / DATE                                                                          BORROWER / DATE

DOC #:060401 / rev. 06/2005
-788 (9201)        0631 9301.05                VMP MORTGAGE FORMS - (800)521-7291                Page 1 of 2        5/96
© 1999 CSY Systems, Inc.    The contents of this form in whole or in part are protected under the copyright    laws of the United States.

ADDENDUM B

**ALTA POLICY** must contain Endorsements 8.1,100,116,111.5 with liability in the amount of our loan.

**LIABILITY SUBJECT ONLY TO:** 2004/05 All PAID
Funds may be used for account of the vestees, and you will record all instruments when you comply with the following:
1. Issue said form of Policy showing title vested as required herein.
2. Issue said form of Policy free from encumbrances except items 1,2 pc 3-5ok 6-7 out of preliminary Title Report dated April 22, 2005.
Secondary financing in the amount of $0.00     has been approved.
**FHA OR VHA:  BUYER CANNOT BE CHARGED FOR ANY ENDORSEMENTS TO ALTA POLICIES.**

**TITLE INSURANCE.** A standard ALTA title insurance policy with all necessary endorsements (i.e. adjustable rate, environmental lien, easement, encroachment, address, etc.), and without deletions must be obtained at closing. Any deviation from the standard ALTA policy is unacceptable. No exceptions from coverage, unusual conditions for coverage, etc. are allowed without the express WRITTEN consent of American Brokers Conduit. The title policy must insure that American Brokers Conduit has a valid first lien on the subject property. A title insurance binder dated no more than 30 days prior to closing must be obtained at the closing deleting all exceptions and mortgages. All taxes, bonds, and assessments coming due on or before the due date of the first monthly payment must be paid at closing and are not included in the escrow account being established by American Brokers Conduit. Title insurance must be for no more or less than the amount of the mortgage. **The insured on the title policy must read:** American Brokers Conduit, its successors and assigns as their interest may appear.

American Brokers Conduit will require a closing protection letter from the title company prior to closing the loan.

**ESCROW IMPOUNDS FOR TAXES AND/OR INSURANCE.**

All taxes, bonds and assessments coming due on August 1, 2005     must be paid at closing and are not included in the escrow account being established by the Lender.

**CLOSING STIPULATION(S)**

The following documents or conditions must be satisfied and/or presented at time of closing. In the event you are unsure of the acceptability of any document(s) you must contact the Lender. In no event may you accept any alternative document(s) or unilaterally waive any requirement unless written authorization is provided to you by the lender.

All of the documents provided herewith are required to be signed, regardless of whether they appear to be duplicates previously provided to the borrower(s).

**Stipulations to be satisfied:**
If a Power of Attorney is to be used in connection with this loan closing, you must follow the document execution instructions set forth on ADDENDUM "E".

The following items are required Prior to Funding:

1. Broker to provide final 1003. typed - signed by the borrower/broker

2. HUD-1 to evidence payoff of citimtg
wells fargo   with an outstanding balance of $256138
28496

3. The Notice of Right to Cancel must be signed at closing.

4. Provide Hazard Policy for a minimum of loan amount or replacement cost coverage, with a minimum of 3 months remaining on policy.

5. Provide copy of appraisers current license.

6. The lock for this loan will expire on 08/22/05. If the loan will not close

(Attachment Continued Next Page)

**Additional Terms and Conditions Attachment (Continued from Addendum B)**

AND fund by this date, please contact Secondary prior to expiration to extend the lock.

7. With the exception of 30-day accounts, evidence of payoff of the following debts must be included in the loan file.

| Borrower | Creditor | Account Number | Balance |
|----------|----------|----------------|---------|
| Elvin Valenzuela | | | |
| Elvin Valenzuela | | | |



## ADJUSTABLE RATE NOTE
### 12-MTA INDEX – PAYMENT AND RATE CAPS

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ████████ OF THE ORIGINAL AMOUNT (OR $██████████ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

June 23, 2005       Visalia       California
                                    (City)            (State)

████████████████████████
                                      (Property Address)

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ████████████ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  American Home Mortgage Acceptance, Inc. . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2.  INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. First I will pay interest at a yearly rate of ████ %. The interest rate I will pay may change. The interest rate required by this Section 2 and Section 4 ████████ote is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, "Payments" refer to Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I Will make my monthly payments on ___1st___ day of each month beginning on __August, 2005__ , I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __July 1, 2035__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at PO Box 660029, Dallas, TX  75266-0029 , or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ ████████ , unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and Interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of ___August___ , ___2005___ , and on that day every month thereafter. Each such day is called a "Change Date"

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ percentage points ▓▓▓▓▓ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ▓▓▓▓▓▓▓▓ percentage points _____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing ___August 1, 2006___ , and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 day prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my Payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a

Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to _____ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that _____ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Five____ anniversary of the due date of the first monthly payment, and on that same day every ___Five____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Elvin Valenzuela          -Borrower        Phyllis Valenzuela        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

DOC #:943338                    ▓▓▓▓▓▓▓▓▓▓▓

# GOOD FAITH ESTIMATE
## CENTRAL VALLEY MORTGAGE, INC.

Lender:   **CENTRAL VALLEY MORTGAGE**
Address:   **1830 South Mooney Blvd.  Suite 100**
             **Visalia,  Ca  93277**
Applicant(s):  **ELVIN VALENZUELA & PHYLLIS VALENZUELA**

Property Address:

Sales Price:
Base Loan Amount:
Total Loan Amount:
Interest Rate:
Type of Loan:   **Conventional**
Preparation Date: **May 10,  2005**
Loan Number:

The information provided which reflects estimates of the charges which you are likely to incur at the settlement of your loan.  The fees listed are estimates - actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement which you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | |
|---|---|---|
| 801. A | Origination Fee   @ 1.000% | $ |
| 802. | Discount Fee | $ |
| 803. | Appraisal Fee   ($   350.00 Paid) | $ |
| 804. A | Credit Report | $ |
| 805. | Lender's Inspection Fee | $ |
| 806. | Mortgage Insurance Application Fee | $ |
| 807. | Assumption Fee | $ |
| 808. | Mortgage Broker Fee | $ |
| 810. | Tax Related Service Fee | $ |
| 811. | Application Fee | $ |
| 812. | Commitment Fee | $ |
| 813. | Lender's Rate Lock-In Fee | $ |
| 814. A | Processing Fee | $ |
| 815. | Underwriting Fee | $ |
| 816. | Wire Transfer Fee | $ |
| 817. | Yield spread premium to mortgage broker: | |
| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | |
| 901. A | Interest   @ $7.9444/day for 1 days | $ |
| 902. | Mortgage Insurance Premium | $ |
| 903. | Hazard Insurance Premium | $ |
| 904. | County Property Taxes | $ |
| 905. | Flood Insurance | $ |
| 1000 | RESERVES DEPOSITED WITH LENDER: | |
| 1001. | Hazard Ins.   @ $42.0000/mo. for 2 months | $ |
| 1002. | Mortgage Ins. | $ |
| 1004. | Tax & Assmt.   @ $292.0000/mo. for 3 months | $ |
| 1006. | Flood Insurance | $ |
| 1008. | Aggregate Escrow Adjustment | $ |

"S"/"B" designates those costs to be paid by Seller/Broker.

| | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|
| | Principal & Interest | $ |
| | Real Estate Taxes | $ |
| | Hazard Insurance | $ |
| | Flood Insurance | $ |
| | Mortgage Insurance | $ |
| | Other | $ |
| | TOTAL MONTHLY PAYMENT | $ |

| 1100 | TITLE CHARGES: | |
|---|---|---|
| 1101. A | Closing or Escrow Fee | $ |
| 1102. | Abstract or Title Search | $ |
| 1103. | Title Examination | $ |
| 1105. | Document Preparation Fee | $ |
| 1106. | Notary Fee | $ |
| 1107. | Attorney's Fee | $ |
| 1108. A | Title Insurance | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| 1200 | GOVERNMENT RECORDING AND TRANSFER CHARGES: | |
| 1201. A | Recording Fee | $ |
| 1202. | City/County Tax/Stamps | $ |
| 1203. | State Tax/Stamps | $ |
| 1204. | Intangible Tax | $ |
| | | $ |
| | | $ |
| 1300 | ADDITIONAL SETTLEMENT CHARGES: | |
| 1301. | Survey | $ |
| 1302. | Pest Inspection | $ |
| | | $ |
| | | $ |
| | | $ |

TOTAL ESTIMATED SETTLEMENT CHARGES:   $
"A" designates those costs affecting APR.   "F" designates financed costs.

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: (From/To Borrower) | |
|---|---|
| Total Loan Amount | - $ |
| Payoffs | - $ |
| Estimated Closing Costs | + $ |
| Estimated Prepaid Items / Reserves | + $ |
| Total Paid Items | - $ |
| Other | - $ |
| Cash To Borrower | $ |

THIS SECTION IS COMPLETED ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED.  Listed below are providers of service which we required you to use. The charges indicated in the Good Faith Estimate above are based upon the corresponding charge of the below designated providers.

| ITEM NO. | NAME & ADDRESS OF PROVIDER | TELEPHONE NO. | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 0 | | | |
| 0 | | | |
| 0 | | | |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA).  Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential property and the Lender will take a first lien on the property.

_Elvin Valenzuela_   5/1?/05
Applicant  ELVIN VALENZUELA          Date

_Phyllis Valenzuela_   5/11/05
Applicant  PHYLLIS VALENZUELA          Date

_____   Date          _____   Date
Applicant                          Applicant

[X] This Good Faith Estimate is being provided by **CENTRAL VALLEY MORTGAGE, INC.** a mortgage broker, and no lender has yet been obtained.

GENESIS 2000, INC. * W17.0 * (800) 882-0504          Page 1 of 1          Form GFE2 (03/95)

| A.  Settlement Statement | B.  Type of Loan |
|---|---|
| **First American Title Company**<br>Final Statement | 1-5.  Loan Type  Conv. Unins.<br>6.  File Number<br>7.  Loan Number<br>8.  Mortgage Insurance Case Number |

**C.  Note:**  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

**D.  Name of Borrower:**  Elvin Valenzuela, Phyllis Valenzuela

**E.  Name of Seller:**

**F.  Name of Lender:**  American Brokers Conduit, Inc.
1500 W. Shaw Avenue, Suite 403
Fresno, CA 93711

**G.  Property Location:**

**H.  Settlement Agent:** First American Title Company
Address: 1850 South Central Street, Visalia, CA 93277

Place of Settlement Address: 1850 South Central Street, Visalia, CA 93277

**I.**  Settlement Date: 07/01/2005
Print Date: 07/01/2005, 11:29 AM
Disbursement Date: 07/01/2005

| J.  Summary of Borrower's Transaction | | K.  Summary of Seller's Transaction | |
|---|---|---|---|
| 100.  Gross Amount Due From Borrower | | 400.  Gross Amount Due To Seller | |
| 101.  Contract Sales Price | | 401.  Contract Sales Price | |
| 102.  Personal Property | | 402.  Personal Property | |
| 103.  Settlement charges to borrower (line 1400) | | 403.  Total Deposits | |
| 104.  Supplemental Summary | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106.  City/town taxes | | 406.  City/town taxes | |
| 107.  County taxes | | 407.  County taxes | |
| 108.  Assessments | | 408.  Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120.  Gross Amount Due From Borrower | | 420.  Gross Amount Due To Seller | |
| 200.  Amounts Paid By Or In Behalf of Borrower | | 500.  Reductions In Amount Due To Seller | |
| 201.  Deposit or earnest money | | 501.  Excess deposit (see instructions) | |
| 202.  Principal amount of new loan(s) | | 502.  Settlement charges (line 1400) | |
| 203.  Existing loan(s) taken subject | | 503.  Existing loan(s) taken subject | |
| 204. | | 504.  Payoff of first mortgage loan | |
| 205. | | 505.  Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210.  City/town taxes | | 510.  City/town taxes | |
| 211.  County taxes | | 511.  County taxes | |
| 212.  Assessments | | 512.  Assessments | |
| 213. | | 513 | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220.  Total Paid By/For Borrower | | 520.  Total Reduction Amount Due Seller | |
| 300.  Cash At Settlement From/To Borrower | | 600.  Cash At Settlement To/From Seller | |
| 301.  Gross amount due from Borrower (line 120) | | 601.  Gross amount due to Seller (line 420) | |
| 302.  Less amounts paid by/for Borrower (line 220) | | 602.  Less reductions in amounts due to Seller (line 520) | |
| 303.  Cash ( From) (X To) Borrower | | 603. | |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____  Date: 7/1/05

\* See Supplemental Page for details.

| L. Settlement Charges | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| Division of Commission (line 700) as follows | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| 800. Items Payable in Connection with Loan | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee - Central Valley Mortgage | ▓ | |
| 804. Credit Report - Central Valley Mortgage | ▓ | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Premium | | |
| 807. Assumption Fee | | |
| 808. Tax Service Fee - American Brokers Conduit, Inc. | ▓ | |
| 809. Flood Certification Fee - American Brokers Conduit, Inc. | ▓ | |
| 810. Administration Fee - American Home Mortgage Acceptance, Inc. | ▓ | |
| 811. Wire Fee - American Home Mortgage Acceptance, Inc. | ▓ | |
| 812. Yield Spread Premium - Central Valley Mortgage | ▓ | |
| 813. Loan Origination Fee - Central Valley Mortgage | ▓ | |
| 814. Processing Fee - Central Valley Mortgage | | |
| Supplemental Summary | | |
| 900. Items Required by Lender to be Paid in Advance | | |
| 901. Interest | | |
| 902. | | |
| 903. Hazard Insurance Premium for | | |
| 904. | | |
| 905. | | |
| Supplemental Summary | | |
| 1000. Reserves Deposited with Lender | ▓ | |
| 1001. Hazard Insurance 4 mo(s) @$44.00/mo | ▓ | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | ▓ | |
| 1004. County Property Taxes 6 mo(s) @$93.03/mo | ▓ | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | ▓ | |
| 1008. Aggregate Accounting Adjustment | ▓ | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee | | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Fee | | |
| 1106. Notary Fee | | |
| 1107. Attorney Fee | | |
| (includes above item numbers; ) | | |
| 1108. Title Insurance - See supplemental page for breakdown of individual fees and payees | ▓ | |
| (includes above item numbers; ) | | |
| 1109. Lender's coverage $88,000.00 | | |
| 1110. Owner's coverage $0.00 | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| 1114. | | |
| 1115. | | |
| 1116. | | |
| 1117. | | |
| 1200. Government Recording and Transfer Charges | ▓ | |
| 1201. *Recording fees: Deed $0.00 Mortgage $55.00 Release $0.00 | | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| 1300. Additional Settlement Charges | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | ▓ | |
| 1303. Notary to Emilie Freitas | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1314. | | |
| Supplemental Summary | ▓ | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | ▓ | |

Supplemental Page
HUD-1 Settlement Statement

File No. ████████████

## First American Title Company
### Final Statement

Loan No. ████

Settlement Date:
07/01/2005

Borrower Name & Address: Elvin Valenzuela, Phyllis Valenzuela

Seller Name & Address:

| Section L. Settlement Charges continued | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 1108.   Supplemental Summary | ████ | ████ |
| a) Eagle One/Rate-Line 1108 includes Line 1101 charges - First American Title Company | | |
| 1201.   Supplemental Summary | ████ | |
| a) Record Trust Deed - First American Title Company | | |

| Section J. Summary of Borrower's Transaction continue | | Borrower Charges | Borrower Credits |
|---|---|---|---|
| 100.  Gross Amount Due From Borrower | | | |
| 104.   Supplemental Summary | ████████ | | |
| a) Principal Balance   - Mission Hills Mortgage | | ████████ | |
| Interest on Payoff Loan 06/30/05 to 07/05/05 @$14.826000/day | | | |
| Statement/Forwarding Fee | | ████████ | |
| Interest to 6-30-05 | | | |
| Fax Fee | | | |
| 200.  Amounts Paid By Or In Behalf of Borrower | | | |

The following Section is restated from the Settlement Statement Page 1

| 300.  Cash At Settlement From/To Borrower | | 600.  Cash At Settlement To/From Seller | |
|---|---|---|---|
| 301.  Gross amount due from Borrower (line 120) | ████████ | 601.  Gross Amount due to Seller (line 420) | |
| 302.  Less amounts paid by/for Borrower (line 220) | | 601.  Less reductions in amounts due to Seller (line 520) | |
| 303.  Cash ( From) (X To) Borrower | | 603. | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1 Settlement Statement.

LENDER NAME AND ADDRESS:

# SERVICING DISCLOSURE STATEMENT

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2601 et seq.) you have certain rights under that Federal law. This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**
If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**
Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your loan servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day, excluding public holidays (State or Federal), Saturday and Sunday.

**Damages and Costs**
Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimated**
1. The following is the best estimate of what will happen to the servicing of your mortgage loan:
   A. [X] We may assign, sell or transfer the servicing of your loan sometime while the loan is outstanding.
   We are able to service your loan, and we [ ] will [X] will not [ ] haven't decided whether to service your loan.
   B. [ ] We do not service mortgage loans, and [X] We have not serviced mortgage loans in the past three (3) years. [ ] We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.
   C. [X] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
   [X] sell all of the mortgage servicing;
   [ ] retain all of the mortgage servicing; or
   [ ] assign, sell or transfer _____ % of the mortgage servicing.

2. For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

   [ ] 0 to 25%   [ ] 26 to 50%   [ ] 51 to 75%   [X] 76 to 100%

   This estimate [ ] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. A. [ ] We have previously assigned, sold or transferred the servicing of first lien mortgage loans.
   B. [ ] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED (Rounded to Nearest Quartile - 0%, 25%, 50%, 75%, or 100%) |
|---|---|
| 2001 | 100% |
| 2002 | 100% |
| 2003 | 100% |

This information [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.

*Michelle L Vac*                                    *5/10/05*
LENDER (Signature not Mandatory)                    DATE

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_____ 5/10/05                    *Phyllis Valenzuela* 5/11/05
                    DATE                                      DATE

_____
                    DATE                                      DATE

INSTRUCTIONS TO PREPARER: Select either Item 3(A) or Item 3(B), except if you chose the provision in 1(B) stating: "We do not service mortgage loans, and we have not serviced loans in the past three (3) years", all of Item 3 should be omitted. The information in Item 3(B) is for the previous three (3) calendar years. The information does not have to include the previous calendar year if the statement is prepared before March 31 of the next calendar year. If the percentage of servicing transferred is less than 12.50%, the word "nominal" or the actual percentage amount of servicing transfers may be used.

GENESIS 2000, INC. " W17.0 " (800) 882-0504                                        Form MSTDisc (06/95)

# DISCLOSURE NOTICES

| Applicant(s) | Property Address |
|---|---|
| Elvin & Phyllis Valenzuela | |

### OCCUPANCY STATEMENT

[X] This is to certify that I/We [X] do [ ] do not intend to occupy the subject property as my/our principal residence. I/We hereby certify under penalty of U.S. Criminal Code Section 1010 Title 18 U.S.C., that the above statement submitted for the purpose of obtaining mortgage insurance under the National Housing Act is true and correct.

### FAIR CREDIT REPORTING ACT

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of denied credit due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of section 615(b) of the Fair Credit Reporting Act.

### EQUAL CREDIT OPPORTUNITY ACT

The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. Income which you receive as alimony, child support or separate maintenance need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan. Income from these and other sources, including part-time or temporary employment, will not be discounted by this lender because of your sex or marital status. However, we will consider very carefully the stability and probable continuity of any income you disclose to us. The Federal Agency that administers compliance with this law concerning this creditor is:   **Federal Trade Commission**
**12345 Any Street, Room 13209, Any Town, ST 00000**

### [X]   RIGHT TO FINANCIAL PRIVACY ACT

I/we acknowledge that this is a notice to me/us as required by The Right to Financial Privacy Act of 1978 that the Veterans Administration (in the case of a VA Loan) or Department of Housing and Urban Development (in the case of an FHA Loan) has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to me/us. Financial records involving my/our transactions will be available to the VA (in the case of a VA Loan) or to HUD (in the case of an FHA Loan) without further notice or authorization but will not be disclosed or released to another government agency or department without my/our consent, except as required or permitted by law.

### [X]   INFORMATION DISCLOSURE AUTHORIZATION

I/We hereby authorize you to release to **CENTRAL VALLEY MORTGAGE, INC.** _____ (for verification purposes, information concerning: [X] Employment History, dates, title(s), income, hours worked, etc. [X] Banking (checking & savings) account of record. [X] Mortgage loan rating, (opening date, high credit, payment amount, loan balance and payment. [X] Any information deemed necessary in connection with consumer credit report for real estate transaction. This information is for the confidential use of this lender in compiling a mortgage loan credit report. A copy of this authorization may be deemed to be the equivalent of the original and may be used as a duplicate original.

### [ ]   ANTI-COERCION STATEMENT

The insurance laws of this state provide that the lender may not require the applicant to take insurance through any particular insurance agent or company to protect the mortgaged property. The applicant, subject to the rules adopted by the Insurance Commissioner, has the right to have the insurance placed with an insurance agent or company of his choice, provided the company meets the requirements of the lender.–The lender has the right to designate reasonable financial requirements as to the company and the adequacy of the coverage.

I have read the foregoing statement, or the rules of the Insurance Commissioner relative thereto, and understand my rights and privileges and those of the lender relative to the placing of such insurance.

I have selected the following agencies to write the insurance covering the property described above:

Insurance Co. Name:
        Agent:

### [X]   FLOOD INSURANCE NOTIFICATION

Federal regulations require us to inform you that the property used as security for this loan is located in an area identified by the U.S. Secretary of Housing & Urban Development as having special flood hazards and that in the event of damage to the property caused by flooding in a Federally-declared disaster, Federal disaster relief assistance, if authorized, will be available for the property.

At the closing you will be asked to acknowledge your receipt of this information. If you have any questions concerning this notice, kindly contact your loan officer.

**IMPORTANT:** Please notify your insurance agent that the "loss payee" clause for the mortgages on both the hazard and flood insurance must read as follows, unless otherwise advised:

### [X]   CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES

I/We hereby acknowledge receipt from **CENTRAL VALLEY MORTGAGE, INC.** _____ of a copy of the book titled "CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES" published by the Federal Reserve Board and the Federal Home Loan Bank Board which is provided in addition to other required adjustable rate mortgage disclosures.

I/We hereby certify that I/we have read the Notices set forth above and fully understand all of the above.

| _____ | 5/4/05 | _Phyllis Valenzuela_ | 5/4/05 |
|---|---|---|---|
| APPLICANT | DATE | APPLICANT | DATE |

| _____ | | _____ | |
|---|---|---|---|
| APPLICANT | DATE | APPLICANT | DATE |

GENESIS 2000, INC. * W17.0 * (800) 882-0504                                    Form DiscNote (03/95)

## MORTGAGE BROKER FEE DISCLOSURE

You have applied to a mortgage broker for a residential mortgage loan. The mortgage broker will submit your application for a residential mortgage loan to a participating lender with which it from time to time contracts upon such terms and conditions as you may request or a lender may require. The lenders have asked that we furnish this form to you to clarify the role of mortgage broker concerning your loan application.

### SECTION 1. NATURE OF RELATIONSHIP

In connection with this mortgage loan:

- The mortgage broker may be acting as an independent contractor for clarification.
- The mortgage broker has entered into separate independent contractor agreements with various lenders.
- While the mortgage broker seeks to assist you in meeting your financial needs, it does not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or best terms available in the market.

### SECTION 2. THE MORTGAGE BROKER'S COMPENSATION

The lenders whose loan products are distributed by the mortgage broker generally provide their products to the mortgage broker at a wholesale rate.

- The retail price of a mortgage broker offers you-your interest rate; local points and fees-will include the mortgage broker's compensation.
- In some cases, the mortgage broker may be paid all of its compensation by either you or the lender.
- Alternatively, the mortgage broker may be paid a portion of its compensation by both you and the lender. For example, in some cases if you would rather pay a lower interest rate, you may pay higher up-front points and fees.
- Also, in some cases, if you would rather pay less up=front, you may wish to have some or all of the mortgage broker's fees paid directly by the lender, which will result in a higher interest rate and higher monthly payments than you otherwise would be required to pay.
- The mortgage broker may also be paid by the lender based on:
  1. The value of the mortgage loan or the related servicing rights in the market place.
  2. Other services, goods or facilities performed or provided by the mortgage broker to the lender.

You may work with the mortgage broker to select the method in which it receives its compensation depending on your financial needs, subject to the lender's program requirements and credit underwriting guidelines.

The amount of fees and charges that you pay in connection with your loan will be estimated on your Good Faith Estimate. The final amounts will be disclosed on your HUD-1 or HUD-1A Settlement Statement.

By signing below, applicant(s) acknowledge that you have read and understand this document. You also acknowledge that you have received a copy of this document.

Applicant(s)

_____ 5/1/05        _____ 5/1/05
Name                             Name              Date


_____              _____
Address                         Address



## APPRAISAL DISCLOSURE

| Borrower Name(s):<br>Elvin & Phyllis Valenzuela | Lender:<br>**CENTRAL VALLEY MORTGAGE, INC.**<br>1830 SO. MOONEY BLVD., #B<br>VISALIA, CA 93277 |
|---|---|
| Property Address: | Date: 5/10/05 <br> Loan Number: |

You have the right to a copy of the appraisal report obtained in connection with your application for credit provided that, if required, you have paid for or are willing to pay for the appraisal. You can get a copy of this report by writing to us at the address listed above. We must hear from you no later than 90 days after you are notified about the action taken on your credit application. (If you withdraw your application, you must make your request for an appraisal report within 90 days of the withdrawal.) You can telephone us, instead of writing, but by doing so you are not assured of preserving your rights.

_____ -Borrower      5/10/05 Date

_Phyllis Valenzuela_ -Borrower      5/11/05 Date

_____ -Borrower      _____ Date

_____ -Borrower      _____ Date

GENESIS 2000, INC. " W17.0 " (800) 882-0504          Form AppDisc (3/05)



# Borrower's Certification & Authorization

<u>Certification</u>

The undersigned certify the following:

1. I/We have applied for a mortgage loan from __CENTRAL VALLEY MORTGAGE, INC.__
   In applying for the loan,

   I/We completed a loan application containing various information on the purpose of the loan, the amount and source of the downpayment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/We omit any pertinent information.

2. I/We understand and agree that __CENTRAL VALLEY MORTGAGE, INC.__
   reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

<u>Authorization to Release Information</u>

To Whom It May Concern:

1. I/We have applied for a mortgage loan from __CENTRAL VALLEY MORTGAGE, INC.__
   As part of the application process, __CENTRAL VALLEY MORTGAGE, INC.__
   may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to __CENTRAL VALLEY MORTGAGE, INC.__
   and to any investor to whom __CENTRAL VALLEY MORTGAGE, INC.__
   may sell my mortgage, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. __CENTRAL VALLEY MORTGAGE, INC.__    or any investor that purchases the mortgage may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to __CENTRAL VALLEY MORTGAGE, INC.__
   or the investor that purchased the mortgage is appreciated.

|   |   |   |
|---|---|---|
| Borrower's Signature _____  5/10/08 | Date | |
| Borrower's Signature _____  5/11/05 | Date | Social Security Number |



CENTRAL VALLEY MORTGAGE, INC.

# THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

Lending institutions are prohibited from bringing up, in the taking of applications for loans, certain specific subjects which lend themselves to discrimination. They are as follows:

    a) Whether or not you have or will have children.
       (Although inquiring as to the number and age of dependents is proper).

    b) Whether or not there exist child care problems.

    c) Whether or not there will be interruptions of income due to childbirth.

    d) Whether or not you are receiving alimony, child support
       or separate maintenance. (Unless voluntarily disclosed as a
       source of additional income which you wish to be considered).

    e) Whether you are widowed, divorced, or single.
       (Allowable designations are: married, unmarried, separated).

    f) Whether or not your telephone number is listed.

Lending institutions must take and report action on your application "within a reasonable time." If the application is denied, reasons MUST be given if requested.

THIS IS TO CERTIFY THAT I (WE) HAVE READ THE ABOVE INFORMATION AND THAT A COPY OF THIS FORM HAS BEEN GIVEN TO ME (US) FOR MY (OUR) RECORDS.

| _(signature)_ | _5/10/05_ | _Phyllis Valenzuela_ | _5/11/05_ |
|---|---|---|---|
| Borrower's Signature | Date | Borrower's Signature | Date |

| _(signature)_ | | | |
|---|---|---|---|
| Borrower's Signature | Date | Borrower's Signature | Date |

V17.0 * (800) 682-0504

Form ECOA (03/95)



CENTRAL VALLEY MORTGAGE, INC.

# THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977

## FAIR LENDING NOTICE

IT IS ILLEGAL TO DISCRIMINATE IN THE PROVISIONS OF OR IN THE AVAILABILITY OF FINANCIAL ASSISTANCE BECAUSE OF THE CONSIDERATION OF:

1. TRENDS, CHARACTERISTICS OR CONDITIONS IN THE NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION, UNLESS THE FINANCIAL INSTITUTION CAN DEMONSTRATE IN THE PARTICULAR CASE THAT SUCH CONSIDERATION IS REQUIRED TO AVOID AN UNSAFE AND UNSOUND BUSINESS PRACTICE; OR

2. RACE, COLOR, RELIGION, SEX, MARITAL STATUS, NATIONAL ORIGIN OR ANCESTRY.

IT IS ILLEGAL TO CONSIDER THE RACIAL, ETHNIC, RELIGIOUS OR NATIONAL ORIGIN COMPOSITION OF A NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION OR WHETHER OR NOT SUCH COMPOSITION IS UNDERGOING CHANGE, OR IS EXPECTED TO UNDERGO CHANGE, IN APPRAISING A HOUSING ACCOMMODATION OR IN DETERMINING WHETHER OR NOT, OR UNDER WHAT TERMS AND CONDITIONS, TO PROVIDE FINANCIAL ASSISTANCE.

THESE PROVISIONS GOVERN FINANCIAL ASSISTANCE FOR THE PURPOSE OF THE PURCHASE, CONSTRUCTION, REHABILITATION OR REFINANCING OF ONE TO FOUR UNIT FAMILY RESIDENCES OCCUPIED BY THE OWNER AND FOR THE PURPOSE OF THE HOME IMPROVEMENT OF ANY ONE TO FOUR UNIT FAMILY RESIDENCE.

IF YOU HAVE QUESTIONS ABOUT YOUR RIGHTS, OR IF YOU WISH TO FILE A COMPLAINT, CONTACT THE MANAGEMENT OF THIS FINANCIAL INSTITUTION OR:

**OFFICE OF THE CONTROLLER OF THE CURRENCY**
**WESTERN DISTRICT**
**50 FREMONT STREET, SUITE 3900**
**SAN FRANCISCO, CA  94105-2292**

## ACKNOWLEDGEMENT OF RECEIPT

I (WE) RECEIVED A COPY OF THIS NOTICE

| | | | |
|---|---|---|---|
| _(signature)_ | 5/10/05 | _Phillia Valenzuela (signature)_ | 5/11/05 |
| Borrower's Signature | Date | Borrower's Signature | Date |
| | | | |
| Borrower's Signature | Date | Borrower's Signature | Date |

GENESIS 2000, INC. " WI7.0 " (800) 882-0504                                    Form FLN  (03/95)



# CENTRAL VALLEY MORTGAGE

1830 S Mooney Blvd St B
Visalia Ca 93277
559-733-5010 Fax 559-733-5007

Thank you for your recent application with Central Valley Mortgage.  We
are looking forward to doing business with you. The appraisal and credit
report fee is required to process your loan and receive final approval from
our underwriters. This fee varies upon appraiser used and which company is
used to pull the credit.  Your good faith estimate has the exact charges
rendered.  The fee is paid directly to the companies that charge for their
services. This fee is not charged by Central Valley Mortgage or paid to
Central Valley Mortgage.  If for any reason you decided to cancel the
process of your loan this is a non-refundable fee.  We make no promises of a
value by the appraiser and give no guarantee of value.  The appraiser is
licensed independent contractor and the appraised value will be determined
by the appraiser.

**Thank you**

_____
Name

_____
Name



# Central Valley Mortgage
### 1830 S. Mooney Blvd Space B
### Visalia Ca 93277

### California Credit Score Notice
Notice to the Home Loan Applicant

In connection with your application for a home loan, the lender must disclose to you the score that a credit bureau distributed to users and the lender used in connection with your home loan and the key factors affecting you credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information a credit bureau or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history pattern change, and how credit scoring technologies change.

Because the core is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit repots may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the credit bureau at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The credit bureau plays in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on the loan application.

If you have any question concerning the terms of the loan, contact the lender.

One or more of the following credit bureaus will provide the credit score.

| | | |
|---|---|---|
| Experian | Equifax | Transunion |
| Po Box 2002 | PO BOX 742041 | PO BOX 4000 |
| Allen Texas 75013 | Atlanta GA. 30374 | Chester, Ca 19016 |
| 888-397-3742 | 800-885-1111 | 888-887-2873 |

Your acknowledgement below signifies that this written notice was provided to you.

_____  5/6/05                    _Phyllis Valenzuela_ 5/11/05
Borrower         Date                      Co-Borrower          Date

DATE: 5/10/05

FROM:               Central Valley Mortgage
                    1830 South Mooney Blvd Space B
                    Visalla Ca, 93277

BORROWER(S):        Elvin Valenzuela

                    Phyllis Valenzuela

PROPERTY ADDRESS:   ███████████
                    ███████████
                    ███████████

To Whom It May Concern:

The purpose of our current loan request is:

To payoff Debt

_____ 5/10/05
Borrower

_____
Co-Borrower



# CENTRAL VALLEY MORTGAGE

## LOCK IN POLICY

I/We understand and accept the following in regards to locking our loan with Central Valley Mortgage.

1.  Your loan may be locked at any time during your loan process. Depending on the type of loan you have, the length of time on the lock may vary.

2.  There is no fee to lock your loan.

3.  Because the interest rate and points will vary on a daily basis, it is Not the responsibility of Central Valley Mortgage to call you and inform you of a rate change. It is your responsibility to call Central Valley Mortgage to find out what the interest rate and points are.

4.  You must inform your loan officer or His/Her loan processor when you want to lock. Be specific as to interest rate, points and length of time for the lock.

    _____Lock in at _____% @ _____Discount points for _____Days

    _____ I we choose not to lock at this time and understand our interest rate and points are not guaranteed until we do so.

I/We acknowledge and accept the above conditions

_____ 5/10/08        _____
Loan Consultant   Date                          Loan Processor   Date

_____ 5/10/05        _____ 5/11/05
Borrower   Date                               Co-Borrower

OMB Approval No. 2502-0265

| A. Settlement Statement | B. Type of Loan |
|---|---|

**First American Title Company**
**Final Statement**

| | |
|---|---|
| 1-5. Loan Type  Conv. Unins. | |
| 6. File Number: ▓▓▓▓▓▓▓▓ | |
| 7. Loan Number: ▓▓▓▓▓ | |
| 8. Mortgage Insurance Case Number | |

C.   Note:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

D.   Name of Borrower: Elvin Valenzuela, Phyllis Valenzuela

E.   Name of Seller:

F.   Name of Lender: American Brokers Conduit, Inc.
1500 W. Shaw Avenue, Suite 403
Fresno, CA 93711

G.   Property Location: 5522 West Perez Avenue, Visalia, CA 93291

H.   Settlement Agent: First American Title Company
Address: 1850 South Central Street, Visalia, CA 93277

Place of Settlement Address: 1850 South Central Street, Visalia, CA 93277

I. Settlement Date: 07/06/2005
Print Date: 07/05/2005, 7:19 PM
Disbursement Date: 07/06/2005

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | |
|---|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | | **400. Gross Amount Due To Seller** | |
| 101. Contract Sales Price | | | 401. Contract Sales Price | |
| 102. Personal Property | | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | | ▓▓▓▓ | 403. Total Deposits | |
| 104. Supplemental Summary | | ▓▓▓▓ | 404. | |
| 105. Supplemental Summary | | | 405. | |
| **Adjustments for items paid by seller in advance** | | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes | | | 406. City/town taxes | |
| 107. County taxes | | | 407. County taxes | |
| 108. Assessments | | | 408. Assessments | |
| 109. | | | 409. | |
| 110. | | | 410. | |
| 111. | | | 411. | |
| 112. | | | 412. | |
| 113. | | | 413. | |
| 114. | | | 414. | |
| 115. | | | 415. | |
| **120. Gross Amount Due From Borrower** | | ▓▓▓▓ | **420. Gross Amount Due To Seller** | |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | ▓▓▓▓ | 502. Settlement charges (line 1400) | |
| 203. Existing loan(s) taken subject | | | 503. Existing loan(s) taken subject | |
| 204. | | | 504. Payoff of first mortgage loan | |
| 205. | | | 505. Payoff of second mortgage loan | |
| 206. | | | 506. | |
| 207. | | | 507. | |
| 208. | | | 508. | |
| 209. | | | 509. | |
| **Adjustments for items unpaid by seller** | | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes | | | 510. City/town taxes | |
| 211. County taxes | | | 511. County taxes | |
| 212. Assessments | | | 512. Assessments | |
| 213. | | | 513 | |
| 214. | | | 514. | |
| 215. | | | 515. | |
| 216. | | | 516. | |
| 217. | | | 517. | |
| 218. | | | 518. | |
| 219. | | | 519. | |
| **220. Total Paid By/For Borrower** | | ▓▓▓▓ | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | | ▓▓▓▓ | 601. Gross amount due to Seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | | ▓▓▓▓ | 602. Less reductions in amounts due to Seller (line 520) | |
| 303. Cash ( From) (X To) Borrower | | | 603. | |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _[signature]_   Date: 7/6/05

* See Supplemental Page for details.

| L. Settlement Charges | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| Division of Commission (line 700) as follows | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| 800. Items Payable in Connection with Loan | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee - Central Valley Mortgage | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Premium | | |
| 807. Assumption Fee | | |
| 808. Tax Service Fee - American Brokers Conduit, Inc. | | |
| 809. Flood Certification Fee - American Brokers Conduit, Inc. | | |
| 810. Administration Fee - American Home Mortgage Acceptance, Inc. | | |
| 811. Wire Fee - American Home Mortgage Acceptance, Inc. | | |
| 812. Yield Spread Premium - Central Valley Mortgage | | |
| 813. Processing Fee - Central Valley Mortgage | | |
| 814. Broker Fee - Central Valley Mortgage | | |
| Supplemental Summary | | |
| 900. Items Required by Lender to be Paid in Advance | | |
| 901. Interest | | |
| 902. | | |
| 903. Hazard Insurance Premium for | | |
| 904. | | |
| 905. | | |
| Supplemental Summary | | |
| 1000. Reserves Deposited with Lender | | |
| 1001. Hazard Insurance 9 mo(s) @$88.25/mo | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes 6 mo(s) @$290.83/mo | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee | | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Fee | | |
| 1106. Notary Fee | | |
| 1107. Attorney Fee | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance — See supplemental page for breakdown of individual fees and payees | | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage $291,500.00 | | |
| 1110. Owner's coverage $0.00 | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| 1114. | | |
| 1115. | | |
| 1116. | | |
| 1117. | | |
| 1200. Government Recording and Transfer Charges | | |
| 1201. *Recording fees: Deed $0.00 Mortgage $65.00 Release $0.00 | | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| 1300. Additional Settlement Charges | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Notary to Emilie Freitas | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1314. | | |
| Supplemental Summary | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | |

* See Supplemental Page for details.

| Supplemental Page<br>HUD-1 Settlement Statement | File No. ▮▮▮▮▮ |
|---|---|
| **First American Title Company**<br>Final Statement | Loan No. ▮▮▮▮▮<br><br>Settlement Date:<br>07/06/2005 |

Borrower Name & Address: Elvin Valenzuela, Phyllis Valenzuela
5522 West Perez Avenue, Visalia, CA 93291

Seller Name & Address:

| Section L. Settlement Charges continued | | Paid From<br>Borrower's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
|---|---|---|---|
| 1108.   Supplemental Summary | | ▮▮▮▮ | ▮▮▮▮ |
| a) Eagle One/Rate-Line 1108 includes Line 1101 charges - First American Title Company | | | |
| 1201.   Supplemental Summary | ▮▮▮▮ | | |
| a) Record Trust Deed - First American Title Company | | | |

| Section J. Summary of Borrower's Transaction continue | | Borrower Charges | Borrower Credits |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | ▮▮▮▮ | ▮▮▮▮ | |
| 104.   Supplemental Summary | | ▮▮▮▮ | |
| a) Principal Balance    - CitiMortgage c/o Five Star Service Corporation | | ▮▮▮▮ | |
| Interest on Payoff Loan 06/01/05 to 07/08/05 @$49.07230/day | | ▮▮▮▮ | |
| Late Charge | | ▮▮▮▮ | |
| Statement/Forwarding Fee | | ▮▮▮▮ | |
| Reconveyance Fee | | ▮▮▮▮ | |
| Recording Fee | | ▮▮▮▮ | |
| PMI Premium | | ▮▮▮▮ | |
| 105.   Supplemental Summary | ▮▮▮▮ | | |
| a) Principal Balance   - Wells Fargo | | ▮▮▮▮ | |
| Interest on Payoff Loan 07/06/05 to 07/08/05 @$7.26000/day | | ▮▮▮▮ | |
| Termination Fees | | ▮▮▮▮ | |
| Fax Fee | | ▮▮▮▮ | |
| Statement/Forwarding Fee | | ▮▮▮▮ | |
| Reconveyance Fee | | ▮▮▮▮ | |
| Interest through 7-5-05 | | ▮▮▮▮ | |
| 200.   Amounts Paid By Or In Behalf of Borrower | | | |

The following Section is restated from the Settlement Statement Page 1

| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
|---|---|---|---|
| 301. Gross amount due from Borrower (line 120) | ▮▮▮▮ | 601. Gross Amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | ▮▮▮▮ | 501. Less reductions in amounts due to Seller (line 520) | |
| 303. Cash ( From) (X To) Borrower | ▮▮▮▮ | 603. | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

RESPA (Rev-2/95)

# Initial Escrow Account Disclosure Statement

App #

| Date: | 06/23/05 | Loan Number: | | Case Number: |

Servicer's Name and Address:

American Home Mortgage Servicing Co. (AH)
538 Broadhollow Road
Melville, NY 11747

Toll Free Number:

Borrower: Elvin Valenzuela        Property Address:

Mailing Address:

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.

| Month (or Period) | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Initial Deposit | | | | |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)

Cushion selected by servicer:  $

[ ] Your _____ mortgage payment for the coming year will be $ _____ of which $ _____ will be for principal and interest and $ _____ will go into your escrow account.

[X] Your first   Monthly   mortgage payment for the coming year will be $ _____ of which $ _____ will be for principal and interest and $ _____ will go into your escrow account. The terms of your loan may result in changes to the monthly principal and interest payments during the year.

~ -503R  (9509)              VMP MORTGAGE FORMS - (800)521-7291                        2/95



EMAIL CLOSING PACKAGE COVER PAGE

RECIPIENT INFORMATION:

    Recipient Company:    FIRST AMERICAN TITLE COMPANY

    Recipient Contact:

    Recipient Phone #:    (559) 635-6810

    Recipient E-Mail:

SENDER INFORMATION:

    Sender Company:    American Home Mortgage

    Sender Contact:    Julie Black

    Telephone #:

    Sender Fax #:

    Sender Email:    JBlack@abconduit.com

LOAN INFORMATION:

    Loan Application #:

    Borrower(s):    Elvin Valenzuela and
                      Phyllis Valenzuela

    Property Address:
    City, State and Zip:

    Loan Closing Date:    June 23, 2005

**Prepayment Fee Note Addendum**

This Note Addendum is made this ___23rd___ day of ___June, 2005_____ and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of ___American Home Mortgage Acceptance, Inc.___

(the "Lender") and dated as of even date herewith ( the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the ___THIRD_____ anniversary of the date of the Note, the Prepayment Fee shall be equal to _____ percent _____ %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments . unless the Noteholder agrees in writing to such changes.

MULTISTATE PREPAY NOTE RIDER
MTA-11/04
   Doc # 943397/ Image: 943397.prn
   Page 1 of 2

**NOTICE TO THE BORROWER**
**Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Elvin Valenzuela_____(Seal)        Phyllis Valenzuela_____(Seal)
                          -Borrower                                -Borrower


_____(Seal)        _____(Seal)
                          -Borrower                                -Borrower


_____(Seal)        _____(Seal)
                          -Borrower                                -Borrower


_____(Seal)        _____(Seal)
                          -Borrower                                -Borrower


MULTISTATE PREPAY NOTE RIDER
MTA-11/04
    Doc # 943398/ Image: 943398.prn 
    Page 2 of 2

**Prepayment Rider**

This Prepayment Rider is made this ___23rd___ day of _____June, 2005_____ and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to   American Home Mortgage Acceptance, Inc.

(the "Lender" or "Noteholder").

of the same date and covering the Property described in the Security Instrument and located at;

    5522 West Perez Avenue  Visalia, CA 93291

[Property Address]

**PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the ___THIRD___ anniversary of the date after the execution of the Security Instrument, the Prepayment Fee shall be equal to _____ percent (_____%) of the original loan amount. Thereafter, prepayment shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of

MULTISTATE PREPAY SECURITY RIDER
MTA - 11/04
    Doc # 943395/ Image: 943395.prn
    Page 1 of 2

rev. 11/12/04

monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
Elvin Valenzuela          -Borrower       Phyllis Valenzuela        -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower

MULTISTATE PREPAY SECURITY RIDER
NEO-AMS
    Doc # 943396/ Image: 943396.p                          rev. 11/12/04
    Page 2 of 2

### ADJUSTABLE RATE RIDER

### 12-MTA INDEX - PAYMENT AND RATE CAPS

THIS ADJUSTABLE RATE RIDER is made this __23rd__ day of __June, 2005__ _____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to American Home Mortgage Acceptance, Inc.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

████████████████████████████████████

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ████████ OF THE ORIGINAL AMOUNT (OR $ ████████ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. First I will pay interest at a yearly rate of ████ %. The interest rate I will pay may change. The interest rate I will pay will thereafter change in accordance with Section 4 of the Note.

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the _____1st_____ day of August, 2005 _____, and on that day every month thereafter. Each such day is called a "Change Date"

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and 440 Thousandths _____ percentage points ▓▓▓▓▓▓ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than ▓▓▓▓▓▓▓▓ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer. [9]

### (E) Payment Change Dates

Effective every year commencing _____August 1st, 2006_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine

the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 day prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated**

**Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to ███████████ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ████████ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ____Five____ anniversary of the due date of the first monthly payment, and on that same day every ____Five____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

DOC #:943341          ████████████████          Rev 7/27/04

monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

(K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee

DOC #:943342                                                              Rev 7/27/04

to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

_____ (Seal)          _____ (Seal)
Elvin Valenzuela          -Borrower      Phyllis Valenzuela          -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

DOC #:943343

Page 5 of 5

Recording Requested By:

Return To:
American Home Mortgage Acceptance, Inc.
520 Broadhollow Road
Melville, NY 11747

Prepared By:
Julie Black
1500 W. Shaw Ave
Suite 403
Fresno, CA
93711 ———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated June 23, 2005
together with all Riders to this document.
(B) "Borrower" is Elvin Valenzuela and Phyllis Valenzuela, Husband and Wife

Borrower is the trustor under this Security Instrument.
(C) "Lender" is American Home Mortgage Acceptance, Inc.

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #:324591
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01

-6A(CA) (0207).01
Page 1 of 15    UM31 9904.01    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 538 Broadhollow Road, Melville, NY  11747

(D) "Trustee" is First American Title

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  June 23, 2005
The Note states that Borrower owes Lender ████████████████████████████
Hundred and No/100                                                  Dollars
(U.S. ████████████  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    July 1, 2035
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

PREPAYMENT RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:324542

████████████

Initials _____

-6A(CA) (0005).01                    Page 2 of 15                    Form 3005  1/01

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                                          of  Tulare                                        :

        [Type of Recording Jurisdiction]                               [Name of Recording Jurisdiction]

Lot 102 of Marseille Subd. Unit No. 2, In The City of Visalia, County of Tulare, State of California, According to the Map thereof recorded in Book 38, Page 36 of Maps, Tulare County Records.



Parcel ID Number: ▮▮▮▮▮▮▮▮▮▮                                    which currently has the address of
                                                      [Street]

                                            [City] , ▮▮▮▮▮▮▮▮▮▮                          [Zip Code]

("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324543

▮▮▮-6A(CA) (0207).01                              Page 3 of 15                    Initials: _____          Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC  #:324546

▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Initials: _____

-6A(CA) (0000).02        Page 6 of 15        Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC #:324547

6240 -6A(CA) (0005).01                Page 7 of 15                                Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC #:324549

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC #:324550



Initials: _____

-6A(CA) (0207).01                    Page 10 of 15                    Form 3005  1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC  #:324551

-6A(CA) (0207).01                    Page 11 of 15                    Initials: _____    Form 3005  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #:324552



Initials: _____

Form 3005  1/01

-6A(CA) (0207).01                        Page 12 of 15

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following orders: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324553

-6A(CA) (0207).03                    Page 13 of 15              Initials: _____          Form 3005 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____(Seal)
Elvin Valenzuela                                    -Borrower

_____

_____(Seal)
Phyllis Valenzuela                                  -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                            -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                            -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                            -Borrower

DOC  #:324554                    APPL #:0000898255                        Form 3005  1/01
6A(CA) (0009).01               Page 14 of 15

State of California
County of Tulare
}ss.

On _____ before me, _____ personally appeared

Elvin Valenzuela and Phyllis Valenzuela

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____(Seal)

DOC #:324555          APPL #:0000898255

-6A(CA) (0005).01          Page 15 of 15          Initials: _____          Form 3005  1/01

### ADDENDUM C—INSURANCE COVERAGES

**INSURANCE COVERAGES:**

The following insurance coverages which are indicated must be obtained at the closing, and be reviewed by you to make certain that they are correct and in full force and effect. The insurance coverages must be evidenced by the standard documentation used in your state. Do not close this loan if you are not certain that the following insurance coverages are correct, are in full force and effect, and properly protect the Lender.

    **X**    **TITLE INSURANCE.** A standard ALTA title insurance policy with all necessary endorsements (i.e. adjustable rate, environmental lien, easement, encroachment, address, etc.), and without deletions must be obtained at closing. Any deviation from the standard ALTA policy is unacceptable. No exceptions from coverage, unusual conditions for coverage, etc. are allowed without the express WRITTEN consent of American Home Mortgage Acceptance, Inc.. The title policy must insure that American Home Mortgage Acceptance, Inc. has a valid first lien on the subject property. A title insurance binder dated no more than 30 days prior to closing must be obtained at the closing deleting all exceptions and mortgages. All taxes, bonds, and assessments coming due on or before the due date of the first monthly payment must be paid at closing and are not included in the escrow account being established by American Home Mortgage Acceptance, Inc.. Title insurance must be for no more or less than the amount of the mortgage. <u>The insured on the title policy must read:</u>

**American Home Mortgage Acceptance, Inc., its successors and assigns as their interest may appear.**

    <u>**ALTA POLICY**</u> must contain Endorsements 8.1,100,116,111.5 with liability in the amount of our loan.
    <u>**LIABILITY SUBJECT ONLY TO:**</u> 2004/05 All PAID
    Funds may be used for account of the vestees, and you will record all instruments when you comply with the following:
        1. Issue said form of Policy showing title vested as required herein.
        2. Issue said form of Policy free from encumbrances except items 1,2 pc 3-5ok 6-7 out of preliminary Title Report dated April 22, 2005
    Secondary financing in the amount of ▬▬▬ has been approved.
    **FHA OR VA : BUYER CANNOT BE CHARGED FOR ANY ENDORSEMENTS TO ALTA POLICIES.**

    **X**    **HAZARD INSURANCE.** Hazard Insurance must be evidenced by an insurance policy (in New York, a binder is acceptable) from and insurance company with a Bests rating of "B+" or better, and a paid receipt. For purchase transactions, a new policy effective for one year from the date of the closing with a paid receipt for the entire premium must be provided at closing by the borrower. Insurance must be for full replacement value or for $0.00 , with a deductible of not more than $1,000.00. The policy must include a standard loss payee clause naming American Home Mortgage Acceptance, Inc., its successors and assigns as their interest may appear, PO Box 100504, Florence, SC 29501-0504.

Doc #880023 (11/2000)

Addendum D

# CORRESPONDENT/BROKER FEES

As the settlement agent, you are responsible for collecting from the borrower, all amounts due the correspondent / broker at the time of closing. The fees due are set forth below and on the Hud-1 statement. These fees have not been deducted from the amount funded.

The total amount due the correspondent must be deducted from the amount disclosed and a check issued by you for that amount, or you may collect certified funds for the amount due from the borrower.

In addition to the amounts due the correspondent /broker from the borrower, lender has included in the amount funded a servicing release premium in the amount of ▇▇▇▇ which is reflected on the Hud-1 as a P.O.C. item from the lender to the correspondent.

Please issue a check for the premium payable to the correspondent/broker and forward same along with the amount due from the borrower, ▇▇▇▇▇ directly to the correspondent at the address set forth below.

Correspondent / Broker Address:

CENTRAL VALLEY MORTGAGE INC.
1830 S. MOONEY BLVD, SUITE 100
VISALIA CA 93277

| HUD # | DESCRIPTION | POC | BAMT | SAMT | OAMT |
|-------|-------------|-----|------|------|------|
| 816 | Broker Application Fee to CENTRAL VALLEY MORTGAGE INC. | | | | |
| 817 | Broker Credit Report Fee | | | | |
| 818 | Broker Appraisal | | ▇▇▇▇ | | |
| 819 | Broker Courier Fee | | | | |
| 820 | Broker Fee to CENTRAL VALLEY MORTGAGE INC. | | ▇▇▇▇ | | |
| 821 | Broker Origination to CENTRAL VALLEY MORTGAGE INC. | | | | |
| 822 | Broker Discount to CENTRAL VALLEY MORTGAGE INC. | | | | |
| 823 | Broker Processing to CENTRAL VALLEY MORTGAGE INC. | | ▇▇▇▇ | | |
| 824 | Broker Other 4 to CENTRAL VALLEY MORTGAGE INC. | | | | |

**ADDENDUM E**

**POWER OF ATTORNEY INSTRUCTIONS**

POWER OF ATTORNEY DOCUMENT EXECUTION INSTRUCTIONS

If this loan will close using a Power of Attorney, the Agent or Attorney in Fact must execute all of the loan documents on behalf of the Principal as follows:

1. The Agent or Attorney in Fact must sign the Principals name on the signature line above the Principal's name and next to that signature print the words "by his/her attorney in fact" then sign his/her own name (the attorney in facts name).

EXAMPLE

Jane Doe gives John Doe a Power of Attorney, all loan documents would be signed as follows:

(Jane Doe's signature) by (John Doe signature) her attorney in fact.

2. A photocopy of the executed power of attorney must be returned to the lender with the loan documents.

## DEFINITION OF TRUTH-IN-LENDING TERMS

### ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

### PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

### FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

### AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate/Settlement Statement (HUD-1 or 1A). For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

### TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable) over the life of the loan.

### PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable) over the life of the loan. These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

| Form **4506-T** | **Request for Transcript of Tax Return** | |
|---|---|---|
| (January 2004) | ▶ Do not sign this form unless all applicable parts have been completed.<br>Read the instructions on page 2.<br>▶ Request may be rejected if the form is incomplete, illegible, or any required<br>part was blank at the time of signature. | OMB No. 1545-1872 |
| Department of the Treasury<br>Internal Revenue Service | | |

**TIP:** Use new Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first.<br>Elvin Valenzuela | 1b First social security number on tax return or<br>employer identification number (see instructions) |
|---|---|
| 2a If a joint return, enter spouse's name shown on tax return | 2b Second social security number if joint tax return |

3   Current name, address (including apt., room, or suite no.), city, state, and ZIP code

4   Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

5   If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**CAUTION:** *Lines 6 and 7 must be completed if the third party requires you to complete Form 4506-T. Do not sign Form 4506-T if the third party requests that you sign Form 4506-T and lines 6 and 7 are blank.*

6   Product requested. Most requests will be processed within 10 business days. If the product requested relates to information from a return filed more than 4 years ago, it may take up to 30 days. Enter the return number here and check the box below. ▶ _____

a   **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are generally available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years . . . . . . . . . . . . . . . . . . . ☐

b   **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns . . . . . . . . . . . . . ☐

c   **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

d   **Verification of Nonfiling,** which is proof from the IRS that you did not file a return for the year . . . . . . . . . . ☐

e   **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2003, filed in 2004, will not be available from the IRS until 2005. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 . . . . . . . . . . . . . . . . ☐

**CAUTION:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

7   Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T.

_____ / _____ / _____     _____ / _____ / _____     _____ / _____ / _____     _____ / _____ / _____

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

| | | | Telephone number of taxpayer on<br>line 1a or 2a<br>( ) |
|---|---|---|---|
| **Sign<br>Here** | Signature (see instructions) | Date | |
| | Title (if line 1a above is a corporation, partnership, estate, or trust) | | |
| | Spouse's signature | | Date |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 37667N          Form **4506-T** (1-2004)

Doc # 943067/ Image: 4506Tf1.prn App# 0000898255

Form 4506-T (1-2004)

## A Change To Note

● New Form 4506-T, Request for Transcript of Tax Return, is used to request tax return transcripts, tax account transcripts, W-2 information, 1099 information, verification of non-filing, and a record of account. Form 4506, Request for Copy of Tax Return, is now used only to request copies of tax returns.

## Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series) and one for all other transcripts.

*Note. If you are requesting more than one transcript or other product and the chart below shows two different service centers, mail your request to the service center based on the address of your most recent return.*

## Chart for individual transcripts (Form 1040 series)

| If you lived or filed an individual return: | Mail or fax to the Internal Revenue Service at: |
| --- | --- |
| Maine, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team 310 Lowell St. Stop 679 Andover, MA 01810 978-691-6859 |
| Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, West Virginia, Rhode Island | RAIVS Team 4800 Buford Hwy. Stop 91 Chamblee, GA 30341 678-530-5326 |
| Arkansas, Colorado, Kentucky, Louisiana, New Mexico, Oklahoma, Tennessee, Texas | RAIVS Team 3651 South International Hwy. Stop 6716 Austin, TX 78741 512-460-2272 |
| Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888 559-253-4992 |
| Delaware, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, Wisconsin | RAIVS Team Stop 841-6700 Kansas City, MO 64999 816-823-7667 |
| Ohio, Virginia | RAIVS Team 5333 Getwell Rd. Stop 2826 Memphis, TN 38118 901-546-4175 |

Connecticut, District of Columbia, Maryland, New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address

RAIVS Team DP SE 135 Philadelphia, PA 19255-0695

215-516-2931

## Chart for all other transcripts

| If you lived in: | Mail to the Internal Revenue Service at: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team Mail Stop 6734 Ogden, UT 84201 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800F Cincinnati, OH 45250 859-669-3592 |

**Line 1b.** Enter your employer identification number if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 11 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Tax Products Coordinating Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send the form to this address. Instead, see Where to file on this page.

Printed on recycled paper

| Form **4506-T** | **Request for Transcript of Tax Return** | |
|---|---|---|
| (January 2004) | ► Do not sign this form unless all applicable parts have been completed. Read the instructions on page 2. | OMB No. 1545-1872 |
| Department of the Treasury Internal Revenue Service | ► Request may be rejected if the form is incomplete, illegible, or any required part was blank at the time of signature. | |

TIP: Use new Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first.<br>Phyllis Valenzuela | 1b First social security number on tax return or employer identification number (see instructions) |
|---|---|
| 2a If a joint return, enter spouse's name shown on tax return | 2b Second social security number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code

**4** Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

CAUTION: Lines 6 and 7 must be completed if the third party requires you to complete Form 4506-T. Do not sign Form 4506-T if the third party requests that you sign Form 4506-T and lines 6 and 7 are blank.

**6** Product requested. Most requests will be processed within 10 business days. If the product requested relates to information from a return filed more than 4 years ago, it may take up to 30 days. Enter the return number here and check the box below. ►_____

a **Return Transcript**, which includes most of the line items of a tax return as filed with the IRS. Transcripts are generally available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years . . . . . . . . . . . . . . . □

b **Account Transcript**, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns . . . . . . . . . . . . . □

c **Record of Account**, which is a combination of the item information and later adjustments to the account. Available for current year and 3 prior tax years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □

d **Verification of Nonfiling**, which is proof from the IRS that you did not file a return for the year . . . . . . . □

e **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2003, filed in 2004, will not be available from the IRS until 2005. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 . . . . . . . . . . . . . . . . . □

CAUTION: If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**7** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T.

___/___/___     ___/___/___     ___/___/___     ___/___/___

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
(   )

**Sign Here**

► Signature (see instructions)     Date

► Title (if line 1a above is a corporation, partnership, estate, or trust)

► Spouse's signature     Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.     Cat. No. 37667N     Form **4506-T** (1-2004)

Doc # 943067/ Image: 4506ff1.prn App# 0000898255

Form 4506-T (1-2004)  Page **2**

## A Change To Note

● New Form 4506-T, Request for Transcript of Tax Return, is used to request tax return transcripts, tax account transcripts, W-2 information, 1099 information, verification of non-filing, and a record of account. Form 4506, Request for Copy of Tax Return, is now used only to request copies of tax returns.

## Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series) and one for all other transcripts.

**Note:** If you are requesting more than one transcript or other product and the chart below shows two different service centers, mail your request to the service center based on the address of your most recent return.

### Chart for individual transcripts (Form 1040 series)

| If you lived or filed an individual return: | Mail or fax to the Internal Revenue Service at: |
|---|---|
| Maine, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team 310 Lowell St. Stop 679 Andover, MA 01810 978-691-6859 |
| Alabama, Georgia, Mississippi, North Carolina, South Carolina, West Virginia, Rhode Island | RAIVS Team 4800 Buford Hwy. Stop 91 Chamblee, GA 30341 678-530-5326 |
| Arkansas, Colorado, Kentucky, Louisiana, New Mexico, Oklahoma, Tennessee, Texas | RAIVS Team 3651 South Interregional Hwy. Stop 6716 Austin, TX 78741 512-460-2272 |
| Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888 559-253-4992 |
| Delaware, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, Wisconsin | RAIVS Team Stop 841-6700 Kansas City, MO 64999 816-823-7567 |
| Ohio, Virginia | RAIVS Team 5333 Getwell Rd. Stop 2826 Memphis, TN 38118 901-646-4175 |

### Chart for all other transcripts

| If you lived in: | Mail to the Internal Revenue Service at: |
|---|---|
| Connecticut, District of Columbia, Maryland, New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team DP SE 135 Philadelphia, PA 19255-0695 215-516-2931 |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team Mail Stop 6734 Ogden, UT 84201 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800F Cincinnati, OH 45250 859-669-3592 |

**Line 1b.** Enter your employer identification number if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 11 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Tax Products Coordinating Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send the form to this address. Instead, see Where to file on this page.

♻ *Printed on recycled paper*

Doc # 943068/ Image: 4506Tf2.prn App# 0000898255

LENDER: American Home Mortgage Acceptance, Inc.

LOAN AMOUNT: <span style="background:black">████████</span>

BORROWER(S):
Elvin Valenzuela
Phyllis Valenzuela

PROPERTY ADDRESS: 

## COMPLIANCE AGREEMENT

In consideration of the mortgage loan ("the loan") made by the Lender to the undersigned and to induce the Lender to make the Loan, the undersigned Borrower(s), do(es) hereby represent, covenant, and agree as follows:

Upon request of the Lender or closing agent for Lender, or Lender's successors or assigns, the undersigned Borrower(s) will re-execute any document or instrument signed in connection with the Loan, or will execute any document or instrument that should have been signed at or before the closing of the Loan, or which was incorrectly drafted and/or incorrectly signed, and agree to fully cooperate in the adjustment or correction of clerical errors and in the execution or correction of any and all loan closing documentation deemed necessary or desirable in the reasonable discretion of the Lender to sell, convey, guaranty or market the Loan to any entity, including but not limited to, an investor, the Federal National Mortgage Association (FNMA), the Government National Mortgage Association (GNMA), the Federal Home Loan Mortgage Corporation (FHLMC), the Department of Housing and Urban Development, the Veterans Administration, or any Municipal Bonding Authority.

Failure or refusal of Borrower(s) to execute the required additional documents, or to correct those already executed within ten (10) days of Lenders request to do so, shall constitute a default under the terms of the loan documents and shall give Lender the option of declaring all sums secured by the loan documents immediately due and payable.

DATED:

_____
Elvin Valenzuela

_____
Phyllis Valenzuela

Sworn to before me this

_____
Notary Public

Document No. 960001/Form Name ah100101/(9/97)

## CALIFORNIA
### Insurance Disclosure

**Loan Number**
██████████████

**Borrower**
Elvin Valenzuela
Phyllis Valenzuela

**Property Address**
████████████████████████████████

California Civil Code Section 2955.5(a) states:

"No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

Your acknowledgment below signifies that this written notice was provided to you pursuant to the state statute.

| | |
|---|---|
| Elvin Valenzuela                        Date | Phyllis Valenzuela                        Date |
| Date | Date |
| Date | Date |
| Date | Date |

-1039(CA) (0008)   DOC #:329491   VMP MORTGAGE FORMS - (800)521-7291   APPL #:0000898255   1/00
UM31 0001



| Form **W-9** (Rev. January 2007) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | Give form to the requester. Do not send to the IRS. |

**Name**

Elvin Valenzuela

Business name, if different from above

Check appropriate box: [X] Individual/Sole proprietor  [ ] Corporation  [ ] Partnership  [ ] Other ▸ _____   [ ] Exempt from backup withholding

Address (number, street, and apt. or suite no.)

City, state, and ZIP code

Requester's name and address (optional)
American Home Mortgage Acceptance, Inc.
538 Broadhollow Road
Melville, NY  11747

*(left margin, vertical)* Print or type   See Specific Instructions on page 2.

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 2.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

Social security number

or

Employer identification number

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here   Signature of U.S. person ▸                            Date ▸

**Purpose of Form**

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

If you are a foreign person, use the appropriate Form W-4. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

Note: If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

What is backup withholding? Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments after December 31, 2001 (29% after December 31, 2003). This is called "backup withholding."

Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 2 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions on page 2 and the separate Instructions for the Requester of Form W-9.

**Penalties**

Failure to furnish TIN. If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

Civil penalty for false information with respect to withholding. If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

Criminal penalty for falsifying information. Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

Misuse of TINs. If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

Cat. No. 10231X   Form **W-9** (Rev. 1-2002)

VMP MORTGAGE FORMS - (800)521-7291

DOC #:65701  APPL #:0000898255

Page 1 of 2

UM31 0302.01

Form W-9 (Rev. 1-2007)

## Specific Instructions

**Name.** If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

**Exempt From backup withholding.** If you are exempt, enter your name as described above, then check the "Exempt from backup withholding" text in the line following the business name, sign and date the form.

Individuals (including sole proprietors) are not exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the Instructions for the Requester of Form W-9.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

## Part I – Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box.

If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an SSN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are an LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) above), and are owned by an individual, enter your SSN (or "pre-LLC" EIN, if desired). If the owner of a disregarded LLC is a corporation, partnership, etc., enter the owner's EIN.

**Note.** See the chart on this page for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office. Get Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at www.irs.gov.

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution.** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

## Part II – Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see Exempt From backup withholding above.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

### Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.