UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x

In re:                                                  :    Chapter 11
                                                        :
AMERICAN HOME MORTGAGE                                   :    Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                          :
a Delaware corporation, et al.,                         :    Jointly Administered
                                                        :
        Debtors.                                        :    **Sale Procedures Hearing Date:  August 5, 2008 at 3:00 p.m.**
                                                        :    **Sale Procedures Objection Deadline: July 29, 2008 at 4:00 p.m.**
                                                        :    **Sale Motion Hearing Date: August 27, 2008 at 10:00 a.m.**
                                                        :    **Sale Motion Objection Deadline: August 20, 2008 at 4:00 p.m.**

-------------------------------------------------------- x

**MOTION OF THE DEBTORS FOR ORDERS:  (A)(I) APPROVING SALE PROCEDURES;
(II) APPROVING PAYMENT OF EXPENSE REIMBURSEMENTS; (III) SCHEDULING A
HEARING TO CONSIDER SALE OF CERTAIN MORTGAGE LOANS; (IV) APPROVING
FORM AND MANNER OF NOTICE THEREOF; AND (V) GRANTING RELATED
RELIEF; AND (B)(I) AUTHORIZING THE SALE OF MORTGAGE LOANS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II)
AUTHORIZING AND APPROVING SALE AGREEMENT THERETO;
AND (III) GRANTING RELATED RELIEF**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors

in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] hereby submit this

motion (the "Motion"), pursuant to sections 105(a) and 363 of title 11 of the United States Code,

11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 6004 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of two orders:  (a) one,

substantially in the form annexed hereto as Exhibit A (the "Sale Procedures Order"), (i) approving

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

procedures (the "Sale Procedures") substantially in the form annexed hereto as <u>Exhibit B</u> with respect to the proposed sale or sales (the "Sale") of certain mortgage loans (collectively, the "Mortgage Loans"),[2] pursuant to the form Loan Sale and Interim Servicing Agreement (the "Sale Agreement"), to be filed prior to the hearing, (ii) approving the Expense Reimbursement (as defined below), (iii) scheduling a hearing (the "Sale Hearing") on the Sale and setting objection and bidding deadlines with respect to the Sale, (iv) approving the form and manner of notice of an auction for the Mortgage Loans (the "Auction"), and (v) granting related relief; and (b) the other, substantially in the form annexed hereto as <u>Exhibit C</u> (the "Sale Order"), (i) authorizing the Sale free and clear of liens, claims, encumbrances, and interests, pursuant to the Sale Agreement, (ii) authorizing and approving the Sale Agreement related thereto, and (iii) granting related relief. In support of this Motion, the Debtors respectfully represent:

## STATUS OF CASE AND JURISDICTION

1.    On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

2.    An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007. No trustee or examiner has been appointed.

---

[2] As described herein, the Mortgage Loans are all performing loans as of the date of this Motion; however, to the extent that such Mortgage Loans become non-performing loans (i.e., one of the mortgagors of a Mortgage Loan fails to fulfill any of the terms, covenants, conditions or obligations required under the mortgage) or real estate owned ("REO") prior to the Sale Hearing, the Debtors reserve the right to include such loans and REO in the Sale.

067175.1001

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District

and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the

relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, along with Bankruptcy

Rules 6004 and 9014.

## GENERAL BACKGROUND

4.      In the weeks prior to the Petition Date, an unprecedented disruption in the

credit markets caused major write-downs of the Debtors' loan and security portfolios and

consequently resulted in margin calls for hundreds of millions of dollars with respect to the

Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and

threatening the company's continued viability.

5.      The Debtors' inability to originate loans and the exercise of remedies by

certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the

Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the

short time available and given the severe financial pressures facing them, the Debtors were

unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and,

accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through

orderly sales of their assets.

6.      Prior to the Petition Date, a large component of the Debtors' business was

the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this

Court held a hearing (the "Servicing Sale Hearing") to consider the Debtors' motion to sell the

Servicing Business. By Order dated October 30, 2007 [Docket No. 1711] (the "Servicing Sale

DB02:6974662.4                                                                                    067175.1001

Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Servicing Business Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").

7.    Pursuant to the APA, the Servicing Sale closed in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Servicing Business Purchaser paid the purchase price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors operated the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Servicing Business Purchaser. The Final Closing occurred on April 11, 2008.

8.    The Mortgage Loans are currently being serviced by American Home Servicing, Inc., which is now owned by the Servicing Business Purchaser.

## SALE OF THE MORTGAGE LOANS

9.    The Debtors are owners of the Mortgage Loans, which are all performing first lien loans with respect to which, to date, the mortgagors are fulfilling the terms, covenants, conditions and obligations required under the mortgage. As of June 30, 2008, the Debtors own 243 Mortgage Loans with an aggregate unpaid principal balance of approximately $36,641,482. The number of Mortgage Loans that the Debtors propose to sell may decrease as a result of mortgagors satisfying their loan obligations or increase to the extent the Debtors determine to supplement the current pool of Mortgage Loans.

DB02:6974662.4                                                                                                067175.1001

10.     Pursuant to a Sale Agreement or such other agreement as the Debtors may enter into with respect to the Sale, the Debtors propose to sell, assign and transfer the Mortgage Loans to a Successful Bidder,[3] free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens"), other than those expressly assumed by the Successful Bidder.  Any and all Liens will attach to proceeds of any sale received by the Debtors with the same validity, priority, force and effect such Liens had on the Mortgage Loans immediately prior to the Sale.  The Sale is subject to the Court's approval and the Auction process proposed herein.

11.     The Debtors, with the assistance of their financial advisors have determined that the potential sale of the Mortgage Loans pursuant to the Sale Procedures is a reasonable exercise of their sound business judgment, is consistent with their fiduciary duties to these estates, and will maximize the value of these assets for creditors of these estates.

**RELIEF REQUESTED**

12.     By this Motion, the Debtors seek the entry of two orders of this Court:  (a) the Sale Procedures Order (i) approving the Sale Procedures; (ii) approving the Expense Reimbursement; (iii) scheduling the Sale Hearing; (iv) approving the form and manner of notice of the Sale Procedures, including the Auction and Sale Hearing; and (v) granting such other and further relief as is just and proper; and (b) the Sale Order (i) authorizing the Sale of the Mortgage Loans free and clear of Liens to the highest or otherwise best bid received at the Auction; (ii) authorizing and approving the form of Sale Agreement; and (iii) granting related relief.

**A.     Sale Procedures**

13.     The Debtors are proposing the Sale Procedures, in the form annexed hereto as Exhibit B and which are incorporated herein by reference, in an attempt to maximize the

---

[3] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Sale Procedures annexed hereto as Exhibit B.

realizable value of the Mortgage Loans for the benefit of the Debtors' estates, creditors and other interested parties. The Sale Procedures contemplate an Auction process pursuant to which bids for the Mortgage Loans will be subject to higher or better offers. As described more fully in the Sale Procedures, only Qualified Bidders who timely submit Qualified Bids may be eligible to participate in the Auction.

**B.    Notice of Auction**

14.    The Debtors seek to have the Auction scheduled for August 26, 2008 at 10:00 a.m. (ET) and the Sale Hearing scheduled for August 27 at 10:00 a.m. (ET), with a Bid Deadline of August 22, 2008 at 5:00 p.m. (ET).

15.    The Debtors further request, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (c) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, by 4:00 p.m. (ET) on August 20, 2008; and (d) be served so as to be received by such date and time on: (i) the Debtors; (ii) counsel to the Debtors; (iii) counsel to the Committee; (iv) counsel to the DIP Lender; and (v) the Office of the United States Trustee.

16.    Not later than two business days after the entry of the Sale Procedures Order, the Debtors will serve copies of the Notice of Auction, substantially in the form attached hereto as Exhibit D, the Sale Procedures, and the Sale Procedures Order by mail, postage prepaid to: (i) all entities known to have expressed a *bona fide* interest in acquiring the Mortgage Loans; (ii) counsel to the DIP Lender, (iii) counsel to the Committee; (iv) the Office of the United States Trustee for the District of Delaware; (v) known entities holding or asserting a security interest in or lien against any of the Mortgage Loans; (vi) taxing authorities whose rights may be affected by a

6

sale of the Mortgage Loans; (vii) all government agencies required to receive notice of proceedings under the Bankruptcy Rules; and (viii) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Sale Procedures Order.

17.     Not later than five business days after entry of the Sale Procedures Order, the Debtors will publish the Notice of Auction, substantially in the form attached hereto as <u>Exhibit D</u> in the national edition of *The Wall Street Journal*. Additionally, the Debtors will use commercially reasonable efforts to cause the Notice of Auction to be posted on the Bloomberg newswire service.

**C.     <u>Bid Deadline</u>**

18.     The Debtors propose to accept formal, binding, unconditional, irrevocable bids (each, a "<u>Bid</u>"). The Debtors request that all Bids be submitted in writing so that they are actually received no later than 5:00 PM (ET) on August 22, 2008 (the "<u>Bid Deadline</u>").

**D.     <u>Stalking Horse Bidder</u>**

19.     The Debtors are requesting authority to select a stalking horse bidder with respect to the purchase of the Mortgage Loans, subject to the following conditions (the "<u>Stalking Horse Bidder</u>"): (i) the Committee consents to the Stalking Horse Bidder; (ii) the Stalking Horse Bidder executes a Sale Agreement, and is fully bound thereby, on substantially similar terms to as those set forth in the form Sale Agreement; and (iii) the Debtors file and serve, on all parties served with this Motion, a notice with the Bankruptcy Court naming the Stalking Horse Bidder and attaching an executed, binding Sale Agreement with the Stalking Horse Bidder, on or before August 12, 2008.

**E.     <u>Expense Reimbursement</u>**

20.     The Debtors seek authority to pay reasonable costs and expenses, not to exceed $350,000 in the aggregate, in connection with the due diligence process of potential bidders

7

designated by the Debtors, in their sole discretion and in consultation with the Committee (the "Expense Reimbursement"). The Debtors request that the Expense Reimbursement be apportioned as follows: (i) up to $150,000 to pay a Stalking Horse Bidder, to the extent a Stalking Horse Bidder is selected as set forth in Section D above (the "Stalking Horse Expense Reimbursement"), and (ii) up to $200,000 to pay other potential bidders, subject to the criteria set forth below (the "Bidder Expense Reimbursement").

21.    The Debtors further request authority to pay other potential bidders (excluding any Stalking Horse Bidder) up to the amount of the Bidder Expense Reimbursement. The Bidder Expense Reimbursement shall be paid to one or more potential bidders and in such amounts, not to exceed $200,000 in the aggregate, that the Debtors determine in their discretion and with the consent of the Committee. Notwithstanding the foregoing, if a potential bidder is notified that they shall be entitled to a portion of the Bidder Expense Reimbursement, such Bidder Expense Reimbursement shall only be payable to the extent such bidder submits a Qualified Bid (as defined in the Sale Procedures).

22.    The Expense Reimbursements shall be payable solely from the proceeds received from the Sale and from no other source. To the extent a Sale is not consummated because the Debtors withdraw the Motion, or otherwise, the Debtors and their estates shall not be liable on account of, and shall not be required to pay, such Expense Reimbursements even if such Mortgage Loans are sold in the future; provided, however, that the Debtors shall still be authorized to pay the Expense Reimbursements with the consent of the Committee. In addition, the Debtors shall not be entitled to pay any Expense Reimbursement to a bidder, whether the Stalking Horse Bidder or otherwise, that is determined to be the Successful Bidder (as defined in the Sale Procedures).

**AUTHORITY FOR REQUESTED RELIEF**

A.    **The Sale is Within the Sound Business**
      **Judgment of the Debtors and Should be Approved**

23.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a

debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy

Code does not set forth a standard for determining when it is appropriate for a court to authorize

the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this

Circuit and others have required that the decision to sell assets outside the ordinary course of

business be based upon the sound business judgment of the debtors. See In re Abbotts Dairies of

Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d

389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722

F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.,

(In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware &

Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

24.    The "sound business judgment" test requires a debtor to establish four

elements in order to justify the sale or lease of property outside the ordinary course of business,

namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course

of business, (b) that adequate and reasonable notice has been provided to interested persons, (c)

that the debtors have obtained a fair and reasonable price, and (d) good faith.  Abbotts Dairies, 788

F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399

(Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).

In this case, the Debtors submit that the decision to proceed with the Sale of the Mortgage Loans

and the Sale Procedures related thereto are based upon their sound business judgment and should

9

be approved. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

　　　　25.　　Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

DB02:6974662.4                                                                 067175.1001

26.    The Debtors submit that more than ample business justification exists to sell the Mortgage Loans to the Successful Bidder (or Second Best Bidder) pursuant to the Sale Procedures.  The Debtors believe that a targeted sale process is most likely to achieve the highest and best price for the Mortgage Loans.  Additionally, the Notice of Auction and the Sale Procedures are designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Mortgage Loans.  Accordingly, the proposed Sale satisfies the second prong of the Abbotts Dairies standard.

27.    Moreover, the Sale Procedures are designed to maximize the value received for the Mortgage Loans.  The process proposed by the Debtors allows for a timely and efficient auction process, while providing bidders and consultants with ample time and information to submit a timely bid.  The Sale Procedures are designed to ensure that the Mortgage Loans will be sold for the highest or otherwise best possible purchase price.  The Debtors are subjecting the value of the Mortgage Loans to market testing and permitting prospective purchasers to bid on the Mortgage Loans.  The proposed Sale will be further subject to a market check through the solicitation of competing bids in a court-supervised Auction process as set forth in the Sale Procedures.  Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Mortgage Loans will be fair and reasonable, and, therefore, the third prong of the Abbotts Dairies standard is satisfied.  As discussed below, the "good faith" prong of the Abbotts Dairies standard is also satisfied here.

B.    **The Sale is Proposed in "Good Faith"**
       **Under Section 363(m) of the Bankruptcy Code**

28.    The Debtors request that the Court find that the Successful Bidder (or Second Best Bidder) is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

DB02:6974662.4                                          067175.1001

29.    Section 363(m) of the Bankruptcy Code provides, in pertinent part:

The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

30.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets, such as the Mortgage Loans.

31.    As required by section 363(m) of the Bankruptcy Code, the Sale Procedures have been proposed in good faith and provide for both the Debtors and the potential purchaser to act in good faith in negotiating the Sale.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'."  Abbotts Dairies, 788 F.2d at 147.  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  Id. (citing In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).  See also In re Bedford Springs Hotel, Inc., 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); In re Perona Bros., Inc., 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).

067175.1001

32.     Here, the Sale of the Mortgage Loans is in good faith. There is no evidence of fraud or collusion in the terms of the Sale. To the contrary, as discussed throughout this Motion, and as will be further demonstrated at the Sale Hearing, the Sale Agreement will be the culmination of a solicitation and negotiation process in which all parties will be represented by sophisticated counsel and financial advisors. No known potential bidder is an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations will be conducted on an arm's length, good faith basis. With respect to the potential bidders, the Sale Procedures are designed to ensure that no party is able to exert undue influence over the process. Under the circumstances, the Successful Bidder (or Second Best Bidder) should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser. Furthermore, the Sale Procedures are designed to prevent the Debtors or the Successful Bidder (or Second Best Bidder) from engaging in any conduct that would cause or permit the Sale Agreement, or the Sale of the Mortgage Loans to the Successful Bidder (or Second Best Bidder) pursuant thereto and hereto, to be avoided under section 363(n) of the Bankruptcy Code.

33.     All creditors and parties in interest will receive notice of the Sale and will be provided with an opportunity to be heard. The Debtors submit that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code.

## C.     The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code

34.     Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if:  (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the

purchase price for the property is greater than the aggregate amount of all liens on the property;

(iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim or

interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for

such interest.  11 U.S.C. § 363(f); Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R.

343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the

disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the

subsections is met).  Because the Debtors expect that they will satisfy, at minimum, the second and

fifth of these requirements, if not others as well, approving the sale of the Mortgage Loans free and

clear of all adverse interests is warranted.  Furthermore, courts have held that they have the

equitable power to authorize sales free and clear of interests that are not specifically covered by

section 363(f).  See, e.g., In re Trans World Airlines, Inc., 2001 WL 1820325 at *3, 6 (Bankr. D.

Del. March 27, 2001); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White

Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

**D.    The Expense Reimbursements Are Reasonable and Appropriate**

35.    Section 363(b) of the Bankruptcy Code provides that a trustee, and through

the application of section 1107(a) of the Bankruptcy Code, a debtor-in-possession, "after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate."  11 U.S.C. § 363(b)(1).  Moreover, section 105(a) of the Bankruptcy Code states that "the

Court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."

36.    Court authorization pursuant to section 363(b) is appropriate where there

exists a sound business justification for the proposed transaction.  See, e.g., Meyers v. Martin (In re

Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a

trustee's judgment concerning use of property under section 363(b) when there is a legitimate

14

business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Del. &

Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound

business judgment" test for use of property under section 363). For example, courts look to

whether the sale was negotiated in "good faith," whether the transaction is "fair and equitable," and

whether the sale is "in the best interest of the estate." See, e.g., In re Phoenix Steel Corp., 82 B.R.

334 (Bankr. D. Del. 1987); WBQ P'ship v. Commonwealth of Virginia, 189 B.R. 97 (Bankr. E.D.

Va. 1995).

       37.    Under these circumstances, there is a sound business justification for

approving the Expense Reimbursements, because it is necessary to obtain the maximum return for

the Mortgage Loans. To ensure that any Expense Reimbursements are awarded consistent with the

best interests of the Debtors' estates, under the proposed Sale Procedures, the Committee is

required to consent.

       38.    The Bidder Expense Reimbursement brings potential bidders into the Sale

Process, and allows such bidders to conduct due diligence and be compensated for the costs of

such due diligence, but only if a Qualified Bid is ultimately made. The Debtors believe that this

will build momentum in the Sale Process, which is critical in this competitive and disjointed

market. In the current economic environment certain potential bidders may not be willing to

absorb the full costs of due diligence associated with evaluating the loans. Accordingly, absent

authorization of the payment of the Bidder Expense Reimbursement, the Debtors may lose the

opportunity to obtain the highest and best available Qualified Bids, and, in turn, the highest and

best available Successful Bid, for the Mortgage Loans.

       39.    Similarly, the Stalking Horse Expense Reimbursement is designed to

maximize value to the Debtors' estates by ensuring that the highest and best price for the Mortgage

Loans will be obtained and providing a catalyst for other parties to submit competing Qualified

Bids. Accordingly, if a Stalking Horse Bidder is offered the Expense Reimbursement, but is

ultimately not the Successful Bidder, the Debtors will still have benefited from the higher floor

established by the bid of the Stalking Horse Bidder and thereby increase the likelihood that the

price at which the Mortgage Loans will be sold will reflect their true worth. Without the authority

to offer the Expense Reimbursement, the Debtors may not be able to achieve the optimal

Successful Bid. Moreover, the Stalking Horse Expense Reimbursement is not in the nature of a fee

for prospective liquidated damages, but is designed solely to reimburse the Stalking Horse Bidder

for its actual, out-of-pocket expenses, and not to provide it with a windfall.

40.    Lastly, the Debtors believe that the Expense Reimbursements are fair and

reasonable for several additional reasons. First, payment of the Expense Reimbursements will be

made in consultation with, and upon consent of, the Committee. With respect to the amount of the

Expense Reimbursements, they will almost certainly be *de minimus* when compared to the

Successful Bid. Finally, the Expense Reimbursements shall be payable only from the proceeds

received from the Sale of the Mortgage Loans and from no other source.

41.    The Debtors have demonstrated a sound business justification for

authorizing the Expense Reimbursements. Accordingly, this Court should approve and authorize

payment of the Expense Reimbursements.

**E.    Relief from the Ten Day Waiting Periods
Under Bankruptcy Rules 6004(h) is Appropriate**

42.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,

or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the

court orders otherwise." The Debtors request that the Sale Order be effective immediately by

providing that the ten (10) day stays under Bankruptcy Rules 6004(h) is waived.

43.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten (10) day stay period, Collier on Bankruptcy suggests that the ten (10) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev. ed. 1988).  Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

44.    The Debtors hereby request that the Court waive the ten-day stay period under Bankruptcy Rules 6004(h).

## NOTICE

45.    Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the BofA; (iv) counsel to the DIP Lender; (v) all parties who are known to possess or assert a secured claim against the Mortgage Loans; (vi) the Internal Revenue Service; (vii) the U.S. Securities and Exchange Commission; (viii) known potential bidders; and (ix) all parties entitled to notice under Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

067175.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request (i) entry of the proposed Sale Procedures Order, substantially in the form attached hereto as Exhibit A, (ii) entry of the proposed Sale Order, substantially in the form attached hereto as Exhibit C and (iii) such other and further relief as the Court deems just and proper.

Dated: July 16, 2008
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Counsel for the Debtors and Debtors in Possession

DB02:6974662.4             067175.1001