UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                                           :   Chapter 11
In re:                                                     :
                                                           :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                     :
HOLDINGS, INC.,                                            :   Jointly Administered
a Delaware corporation, et al.,[1]                         :
                                                           :   **Hearing Date: August 5, 2008 at 3:00 p.m. (ET)**
                                                           :   **Objection Deadline: July 29, 2008 at 4:00 p.m. (ET)**
         Debtors.                                          :
---------------------------------------------------------- x

## DEBTORS' MOTION FOR AN ORDER APPROVING THE STIPULATION AND ORDER REGARDING THE DEBTORS' USE OF CERTAIN ESTATE FUNDS PURSUANT TO FEDERAL BANKRUPTCY RULE 9019(a) AND SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") approving a stipulation and order (the "Stipulation and Order") regarding the Debtors' use of certain Estate Funds (as defined below). A copy of the proposed Stipulation and Order is attached hereto as Exhibit A. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## JURISDICTION

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested are sections 105 and 363 of the Bankruptcy Code along with Bankruptcy Rule 9019.

## GENERAL BACKGROUND

2.  On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.  On August 14, 2007, the United States Trustee for the District of Delaware (the "Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5.  In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELEVANT BACKGROUND

7. As set forth more fully below, as a result of a series of stipulations between the Debtors and the Committee and orders from the Court concerning the use of cash collateral, certain Estate Funds (as defined below) were to segregated for the benefit of the unsecured creditors.

A. *The BofA Construction-to-Perm Loan Proceeds*

8. On September 21, 2007, the Debtors filed a motion requesting approval of sale procedures and the authority to sell construction-to-perm loans and related servicing rights and the construction loan platform related to the Debtors' construction loan business free and clear of all liens, claims, encumbrances and other interests. On October 4, 2007, the Court entered an order (i) approving sale procedures with respect to the sale of the construction-to-perm loans and the construction loan platform, (ii) scheduling a hearing on the sale and setting objection and bidding deadlines with respect to the sale, and (iii) approving the form and manner of notice of an auction and the hearing [D.I. 1175]. However, despite the Debtors' efforts to market the construction-to-perm loans and construction loan platform, the Debtors did not receive a bid that they deemed acceptable on or before the Bid Deadline. Therefore, the auction

was canceled, and the hearing was adjourned so that the Debtors could continue their marketing efforts with respect to the construction loans and construction loan platform.

9. The Debtors subsequently received a proposal from a potential purchaser (the "Potential Purchaser") to purchase the BofA Construction-to-Perm Loans. The Debtors, however, determined not to proceed with a sale of the BofA Construction-to-Perm Loans to the Potential Purchaser.

10. On December 4, 2007, Bank of America, N.A. as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement, dated August 10, 2006 (the "Administrative Agent") filed a motion (the "BofA Stay Relief Motion") [D.I. 2255] requesting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow the Administrative Agent to sell the construction-to-perm loans in which the Administrative Agent held security interests and liens (the "BofA Construction-to-Perm Loans") to the Potential Purchaser.

11. On January 4, 2008, in resolution of the BofA Stay Relief Motion, the Court entered the *Stipulation and Order by and between the Debtors and Bank of America, N.A., as Administrative Agent, Resolving Motion for Relief from Stay with Respect to the Construction-to-Perm Mortgage Loans* (the "Construction Loan Stipulation and Order") [D.I. 2593]. The Construction Loan Stipulation and Order provided, among other things, that (i) the Administrative Agent release its security interest in and lien upon the BofA Construction-to-Perm Loans and (ii) the Debtors place all proceeds from the BofA Construction-to-Perm Loans (the "BofA Construction-to-Perm Loan Proceeds") in an account for the benefit of the unsecured creditors.

B. *The Final Stipulation Funds*[2]

12. On September 4, 2007, this Court entered its *Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* [D.I. 554] (as subsequently amended by D.I.'s 2002, 2284, 2855, 3142, 3172 and 3699, the "Cash Collateral Order").

13. The Cash Collateral Order established a deadline by which the Committee was required to assert any other Potential Committee Claims. The Committee reviewed the potential causes of action the Debtors' estates may have had against the Administrative Agent and narrowed the Potential Committee Claims to the following: (i) whether the Administrative Agent's interests are perfected with respect to the REO Property and certain proceeds thereof; (ii) whether certain funds received by the Administrative Agent or held in certain specified bank accounts constitute Pre-Petition Collateral; and (iii) whether, in the event that the Pre-Petition Secured Parties' claims are determined to be undersecured, certain fees and expenses that he Debtors paid to the Administrative Agent pursuant to the Cash Collateral Order should be applied to reduce the principal amount of the Indebtedness (the "Remaining Issues").[3]

14. On March 14, 2008, the Committee and the Administrative Agent filed the *Joint Motion of the Official Committee of Unsecured Creditors and Bank of America, N.A. as Administrative Agent, for Entry of Final Stipulation and Order Resolving All Remaining Issues with Respect to the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties*

---

[2] Capitalized terms in this section not otherwise defined shall have the meanings ascribed to them in the Cash Collateral Order.

[3] The summary of the Remaining Issues are provided as a convenience only. The Remaining Issues are set forth in Second Stipulation and Order regarding the use of Cash Collateral [D.I. 2855] (the "Second Cash Collateral Stipulation").

(the "BofA/Committee 9019 Motion") to approve a settlement stipulation (the "Final Stipulation") [D.I. 3318].[4] At the conclusion of the April 14, 2008 hearing on the BofA/Committee 9019 Motion, the Final Stipulation, which resolved the Remaining Issues, was approved by order of this Court (the "Final Stipulation and Order") [D.I. 3699].

15. The Final Stipulation and Order provided, among other things, that (i) BofA release any liens or rights it had to proceeds from the sale of Designated REO Properties (as defined in the Final Stipulation) and (ii) any funds received pursuant to the terms of the Final Stipulation and Order (the "Final Stipulation Funds") be held for the benefit of the Debtors' unsecured creditors.

16. Subsequent to the entry of the Construction Loan Stipulation and Order and the Final Stipulation and Order which governed the use of certain Construction-to-Perm Loan Proceeds and the Final Stipulation Funds (together, the "Estate Funds"), as more fully set forth in the attached Stipulation and Order, the Debtors and the Committee have reached an agreement regarding the use of the Estate Funds which modifies the Construction Loan Stipulation and Order and the Final Stipulation and Order.

17. The salient terms of the Stipulation and Order are as follows:

**Summary of Terms of Stipulation and Order**[5]

a. In the event that the Debtors' estates do not have funds available to pay their operating expenses, other than funds available under their DIP Facility, the Debtors are authorized, but not required, to use the Estate Funds to pay such costs and expenses of the Debtors' estates for which the Debtors are authorized to pay under the Bankruptcy Code or pursuant to Court order.

---

[4] Capitalized terms used but not defined herein shall have the meaning ascribed in the BofA-Committee Stipulation.

[5] This summary is for convenience purposes only. To the extent that the terms in this summary are inconsistent with the Stipulation and Order, the Stipulation and Order shall govern.

b. The Debtors shall be required to keep a detailed accounting of each use of Estate Funds.

c. To the extent that the Debtors generate unencumbered funds from the liquidation of their assets or otherwise once the DIP Facility is repaid in full, the Debtors shall replenish in full the respective amount borrowed from each Estate Fund account.

d. The replenishment of these funds shall be to the Estate Fund from which the Debtors received those funds and shall be in the same amount that was borrowed from the Estate Fund account and such funds shall continue to be held pursuant to further order of the Court or confirmed plan of the Debtors.

## RELIEF REQUESTED

18. By this Motion, pursuant to Bankruptcy Rule 9019(a) and sections 105(a) and 363 of the Bankruptcy Code, the Debtors respectfully request entry of the Stipulation and Order, substantially in the form attached hereto, modifying the Debtors' use of certain Estate Funds.

## BASIS FOR RELIEF REQUESTED

19. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

20. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the

bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

21. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

22. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296

(stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

23. The Debtors respectfully request that the Court approve the Stipulation and Order. The agreement as set forth in the Stipulation and Order is in the best interest of the Debtors' estates, their creditors and other parties-in-interest as it provides the Debtors with the necessary financial flexibility to them to continue to pay ongoing operating expenses associated with the liquidation of the Debtors' remaining assets while at the same time affording protection to the Debtors' unsecured creditors. In addition, the Stipulation and Order avoids the need for potentially protracted litigation concerning the use of the Estate Funds between the Debtors and the Committee which could further deplete the estates' resources to the detriment of the unsecured creditors. Accordingly, the Debtors and the Committee submit that the proposed Stipulation and Order is in the best interest of the Debtors' estates, their creditors and other parties in interest.

## NOTICE

24. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee, (iii) counsel to the Bank of America, N.A., (iv) counsel to the agent for the Debtors' postpetition lender, and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

25. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter the Stipulation and Order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) approving the Stipulation pursuant to Bankruptcy Rule 9019(a) and (ii) granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
July 16, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton (No. 2202)
Robert S. Brady (No. 2847)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession