IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., et al., | § § § § | Case No. 07-11047 (CSS) (Jointly Administered) |
| Debtors.[1] | § § | |

| | | |
|---|---|---|
| CALYON NEW YORK BRANCH | § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 07-51704 |
| AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE SERVICING, INC., AMERICAN HOME MORTGAGE ACCEPTANCE, INC., and AMERICAN HOME MORTGAGE INVESTMENT CORP., | § § § § § § § § | |
| Defendants. | § § § | Hearing Date: August 5, 2008 at 3:00 p.m. (ET) Objection Deadline: August 1, 2008 at 4:00 p.m. (ET) (Hearing and Objection Deadline Requested) |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 362, AND 363 AND FEDERAL BANKRUPTCY RULE 9019(a) FOR AN ORDER (I) APPROVING THE STIPULATION BETWEEN THE DEBTORS AND CALYON NEW YORK BRANCH, AS ADMINISTRATIVE AGENT, AND (II) AUTHORIZING THE TRANSFER OF SERVICE MORTGAGE SERVICING RIGHTS RELATING THERETO**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105(a), 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code") approving a stipulation (the "Stipulation") by and among the Debtors and Calyon New York Branch, as Administrative Agent ("Calyon") under the Repurchase Agreement dated November 21, 2006 (the "Repurchase Agreement"). A copy of the Stipulation is attached as Exhibit 1 to the form of order attached hereto as Exhibit A. Calyon and the Debtors are referred to herein as the "Parties." In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for this Motion are section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

2

5. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

7. Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). Commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").[2]

---

[2] All capitalized terms used in this section with respect to the APA, but not defined herein, shall have the meanings set forth in the APA. The description of the APA in this section is by way of summary only. To the extent there is

3

8. Pursuant to the APA, the Servicing Sale closed in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors agreed to operate the Servicing Business in the Ordinary Course of Business, subject to the Bankruptcy Exceptions, for the economic benefit and risk of the Purchaser. The Final Closing occurred on April 11, 2008.

## RELEVANT BACKGROUND

9. On August 28, 2007, Calyon filed the Complaint and Request for Declaratory Judgment, Injunctive Relief and Damages [Adv. Docket No. 1] (the "Complaint").

10. On September 11, 2007, the Debtors filed the Answer and First Counterclaim [Adv. Docket No. 17] (the "Counterclaim").

11. On September 26, 2007, the Court entered the Order Approving Stipulation, Pursuant to Fed. R. Bankr. P. 7043(b), Governing the Limited Coordination of Discovery and Trial [Adv. Docket No. 26] (the "September Order") on the Complaint and the Counterclaim. The September Order approved the Stipulation, Pursuant to Fed. Bankr. Pr. 7042(b), Governing Limited Coordination of Discovery and Trial (the "Phase I Stipulation"). Among other things, the Phase I Stipulation identified the issues in the Complaint and the Counterclaim to be litigated in the phase I trial (the "Phase I Trial")

12. On January 4, 2008, the Court entered the Opinion [Adv. Docket No. 74] regarding the Phase I Trial.

13. On January 15, 2008, the Court entered the Order on Phase I Trial [Adv. Docket No. 77].

---

any discrepancy between such description and the actual terms of the APA, the latter are controlling.

14. On January 25, 2008, the Court entered the Stipulation and Order Regarding Mortgage Funds and Mortgage Files [Adv. Docket No. 85] (the "January Stipulation").

15. On February 4, 2008, Calyon filed the Amended Complaint and Request for Declaratory Judgment, Injunctive Relief and Damages [Adv. Docket No. 88] (the "Amended Complaint") to include certain additional issues in the phase II trial (the "Phase II Trial").

16. On March 3, 2008, the Debtors filed the Amended Answer and Counterclaims [Adv. Docket No. 94] (the "Phase II Counterclaim").

17. On March 14, 2008, the Court entered the Stipulation and Order Pursuant to Fed. R. Bank. P. 7042(b), Governing Discovery and Phase II Trial [Adv. Docket No. 101] (the "Phase II Stipulation") on the Amended Complaint and the Phase II Counterclaim. Among other things, the Phase II Stipulation identified the issues in the Amended Complaint and the Phase II Counterclaim to be litigated in the Phase II Trial.

18. On May 1, 2008, the Court entered the Order Approving and Authorizing the Stipulation Between the Debtors and Calyon New York Branch, as Administrative Agent [Adv. Docket No. 123] (the "Funds Order"). The Funds Order approved the Stipulation and Order Between the Debtors and Calyon New York Branch, as Administrative Agent (the "Funds Stipulation").

19. On May 20, 2008, the Court entered the Stipulation and Order Amending Stipulation and Order Pursuant to Fed. R. Bankr. P. 7042(b), Governing Discovery and Phase II Trial [Adv. Docket No. 140] (the "May Stipulation and Order"). The May Stipulation and Order amended certain of the deadlines with respect to the Phase II Trial and related discovery originally identified in the Phase II Stipulation.

20.  Calyon and the Debtors have reached an agreement to resolve (i) the issues to be litigated in the Phase II Trial and (ii) certain outstanding issues related to the Funds Stipulation.

21.  The Committee has been informed about the terms of the agreement set forth in the Stipulation. The Committee has agreed not to object to the agreement set forth in the Stipulation.

22.  In addition, Bank of America, N.A., as administrative agent ("BofA") has been informed about the terms of the agreement set forth in the Stipulation. BofA has agreed not to object to the agreement set forth in the Stipulation

### SUMMARY OF THE STIPULATION

23.  The Debtors and Calyon believe it is in their respective best interests to compromise and settle, without further litigation, the issues to be litigated in the Phase II Trial, as well as certain outstanding issues related to the Funds Stipulation. The effectiveness of the Stipulation is conditioned upon approval of the Bankruptcy Court, except that the Debtors and Calyon have agreed (i) to use best efforts to cause the Court to approve the Stipulation; and (ii) if the Stipulation is not approved or the order approving the Stipulation does not become a final, non-appealable order, to use best efforts to obtain entry of an order that modifies the May Stipulation and Order to amend the deadlines therein which have not yet occurred and to schedule the Phase II Trial as soon as practicable in light of the need for additional time to conduct depositions, exchange witness and exhibit lists, and prepare and file pre-trial memoranda.

24. The principal terms of the Stipulation are as follows:[3]

I. Settlement of Phase II Trial

    A. As of the Effective Date, Calyon shall be deemed the owner of the rights to service the Mortgage Assets ("MSRs") for all purposes, and the Debtors shall be deemed to have transferred all rights and interests of the Debtors in the MSRs to Calyon free and clear of any and all rights, interests, adverse claims or claims to title of any third parties.

    B. Calyon shall be directly responsible for the payment or satisfaction of all servicing costs or obligations related to the Mortgage Assets that arise after the Effective Date whether performed by AH Mortgage Acquisition Co., Inc. or any other servicer(s) chosen by Calyon.

    C. Calyon shall be deemed to have assigned to the Debtors as of the Effective Date all rights, claims and interests of Calyon[4] with respect to:

        1. The $5,000,000 Reserve (as defined in Paragraph 8 of the January Stipulation);

        2. The 28 mortgage loans known as the "State Bond Mortgages" which originally had a principal balance of $652,820, including all accumulated payments of principal and interest currently being held by the servicers of the State Bond Mortgages; and

        3. The $1,008,958.89 of BONY Account Swept Funds (as defined in Paragraph 12 of the Funds Stipulation) that were identified in Paragraph 14 of the Funds Stipulation.

    D. The Phase II Trial shall be deemed resolved. Within five (5) days of the Effective Date, the Parties shall cause the Amended Complaint and Phase II Counterclaim filed in the Adversary Proceeding to be withdrawn and dismissed with prejudice.

    E. Notwithstanding the foregoing, the dismissal shall be without prejudice to the assertion, pleading and litigation by Calyon or the Debtors of the following: (a) the allowance or disallowance of the proofs of claim filed by Calyon identified by claim numbers 8044, 8045, 8046 and 8047 (the "Proofs of Claim"), or any defenses, counterclaims or objections thereto

---

[3] The summary of the Stipulation is qualified in its entirety by the Stipulation. If there are any inconsistencies between the summary contained herein and the Stipulation, the Stipulation shall control. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Stipulation.

[4] Assuming an Effective Date of on or about July 28, 2008, the aggregate value of these amounts shall be allocated as 72% for the future value of the MSRs and 28% for the servicing performed by the Debtors through the Effective Date.

(including money damages that could have been asserted in the Adversary Proceeding); (b) Calyon's right to assert, in response to any claim, counterclaim, objection or defense asserted by the Debtors or any other party on behalf of the Debtors' estates as reserved, any of the claims raised by Calyon in this Adversary Proceedings as a defense or offset (i) to any such claim against Calyon or (ii) with respect to the Proofs of Claim; and (c) the Debtors' right to oppose any and all such claims asserted by Calyon. For avoidance of doubt, such dismissal shall not nullify or otherwise affect the Phase I Order or other orders entered in the Adversary Proceeding.

F. Nothing contained in the Stipulation or in the order approving the Stipulation shall be deemed to prejudice or limit the rights of Calyon or the Debtors to assert any other claims, defenses, counterclaims or objections, including, without limitation, the right of Calyon or the Debtors to plead, litigate, pursue discovery or seek judgment with respect to claims, counterclaims, objections or defenses, if any, including pursuant to 11 U.S.C. §§ 559 and 562, regarding (i) alleged deficiencies or damages under the Repurchase Agreement, or (ii) the liquidation and/or valuation of the Mortgage Assets.

II. Settlement of Issues Related to the Funds Stipulation

   A. The Debtors shall, within five (5) business days of the Effective Date, pay to Calyon an amount equal to $50,000.

   B. Calyon shall be deemed to have assigned to the Debtors as of the Effective Date all rights, claims and interests of Calyon with respect to:

      1. the $415,752.47 of Disputed P&I (as defined in Paragraph 21 of the Funds Stipulation);

      2. $384,859.01 of Unidentified Funds (as defined in Paragraph 16 of the Funds Stipulation) that remain outstanding and have not been paid to Calyon;

      3. the $181,229.91 of Returned Wires (as defined in Paragraph 4 of the Funds Stipulation) that were deposited into JPM 717 Account (as defined in Paragraph 6 of the Funds Stipulation) and were discussed in Paragraphs 10 and 11 of the Funds Stipulation; and

      4. any Remaining Amounts (as defined in Paragraph 28 of the Funds Stipulation) that remain outstanding and have not been paid to Calyon.

**RELIEF REQUESTED**

25. By this Motion, the Debtors respectfully request entry of an order approving the Stipulation pursuant to Bankruptcy Rule 9019(a) and sections 105(a), 362, and 363 of the Bankruptcy Code.

**BASIS FOR RELIEF REQUESTED**

I. **The Stipulation Should Be Approved Pursuant to Bankruptcy Rule 9019**

26. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

27. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998)

9

(quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

28.  The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

29.  The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

30.  The Debtors respectfully request that the Court approve the Stipulation because the Stipulation lies well above the lowest point in the range of reasonable potential

litigation possibilities. The Stipulation resolves the issues associated with the Phase II Trial, as well as outstanding issues related to the Funds Stipulation. In fact, the Stipulation resolves millions of dollars of claims that would otherwise have to be litigated. It would be difficult, time consuming, costly, with an uncertain outcome, to litigate the Phase II Trial and the issues associated with the Funds Stipulation. Furthermore, the Stipulation was the product of significant and lengthy discussions and negotiations between the Debtors, Calyon, BofA and the Committee. In addition, each of the applicable Martin factors weigh in favor of approving the Stipulation. Accordingly, the Stipulation should be approved pursuant to Bankruptcy Rule 9019.

### A. The Probability Of Success In Litigation

31. As with all litigation, the probability that the Debtors would prevail in litigating the Phase II Trial and the outstanding issues associated with the Funds Stipulation is uncertain. Absent the Stipulation, the Phase II Trial and associated issues would have to be litigated with no assurances of a favorable outcome. Rather, the resolution of these disputes with Calyon under the terms of the Stipulation, without the need to litigate, is a favorable outcome because it will save the Debtors significant time and expense in such litigation.

### B. The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It

32. The Stipulation satisfies the second factor in Martin's four-factor test as litigating the Phase II Trial and the issues associated with the Funds Stipulation would involve complex legal issues, would be expensive and involve extensive discovery. In fact, the Debtors have not taken any depositions in preparation for the Phase II Trial as the Stipulation was being negotiated. Absent the Stipulation, the Phase II Trial was scheduled to commence on July 15, 2008 and the Debtors would be required to take numerous depositions in a short period of time.

Such depositions would undoubtedly be expensive, time-consuming and there is no certainty that a more favorable result could be obtained than is embodied in the Stipulation.

### C. The Paramount Interest Of Creditors

33. Entry into the Stipulation serves the paramount interest of creditors of the Debtors. In fact, the Committee, who was apprised of the status and substance of the negotiations, has agreed not to object to the Stipulation. In addition, BofA, which has a security interest in the MSRs to the extent the MSRs constitute property of the Debtors' estates, was apprised of the status and substance of the negotiations, and has agreed to not object to the Stipulation. The Stipulation's resolution of the Phase II Trial and the issues associated with the Funds Stipulation represents a savings for the creditors by obviating further litigation and any discovery attendant thereto, thereby saving the expenses attendant to such litigation, while at the same time significantly reducing potentially substantial claims in the case. Moreover, pursuant to the Stipulation, Calyon has assigned to the Debtors all rights, claims and interests of Calyon in more than $5 million in funds and other assets. Calyon's assignment of its rights to those funds and other assets serves the paramount interests of creditors by adding value to the Debtors' estates. In sum, the third factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the Stipulation.

### D. The Likely Difficulties In Collection

34. Finally, the fourth factor enunciated by the Third Circuit in Martin is satisfied. As noted above, pursuant to the Stipulation, Calyon has assigned to the Debtors all rights, claims and interests of Calyon in certain funds and assets. Calyon's assignment of its interests in such funds and other assets directly benefits the Debtors, their estates and creditors, as it eliminates the need for the Debtors to litigate the validity of Calyon's ownership interests in

12

such funds. Stated differently, the likely difficulties in litigating such issues and collecting any disputed funds are reduced by the agreements contained in the Stipulation.

35. The settlement of the Phase II Trial and the other disputes embodied in the Stipulation: (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay, inconvenience and uncertainty that would attend any litigation of such issues; and (iv) advances the paramount interests of creditors by adding value, as a matter of certainty, to the Debtors' estate. Therefore, the Stipulation satisfies Bankruptcy Rule 9019 and should be approved by the Court.

## II. The Debtor Should be Authorized to Effectuate the Transactions Contemplated By, and the Automatic Stay Should Be Modified to the Extent Necessary to Implement, the Terms of the Stipulation

36. The court's general equitable powers are codified in section 105(a) of the Bankruptcy Code, which empowers the court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the debtor's reasonable business judgment. See e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (same).

Section 363(f) of the Bankruptcy Code authorizes the sale of property under section 363(b) free and clear of any interest in such property of an entity other than the estate. 11 U.S.C. § 363(f).

37.  Moreover, section 362(d)(1) of the Bankruptcy Code provides that a party is entitled to relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). There is no rigid test for determining whether "cause" exists to lift the stay; however, courts have recognized numerous factors, including whether relief would result in a partial or complete resolution of the issues. See In re W.R. Grace & Co., No. 01-01139, 2007 WL 1129170, at *2 (Bankr. D. Del. April 13, 2007).

38.  For the reasons set forth more fully above, the Debtors submit that the transfer of all rights and interests of the Debtors in the MSRs to Calyon free and clear of any and all rights, interests, adverse claims or claims to title of any third parties, and other actions required as part of the Stipulation, are within the Debtors' reasonable business judgment and in the best interest of the Debtors, their estates and creditors and that the foregoing (i) should be approved pursuant to Section 363 of the Bankruptcy Code; and (ii) constitutes "cause" to modify the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to perform such actions required under the Stipulation and to modify the automatic stay to the extent necessary to permit implementation of the terms of this Stipulation.

### NOTICE

39.  Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A.; (iv) Counsel to the Agent for the Debtors' Postpetition Lender; (v) counsel to Calyon; and (vi) counsel to all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**NO PREVIOUS REQUEST**

40.  No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in the form attached hereto as <u>Exhibit A</u>, (i) approving the Stipulation pursuant to Bankruptcy Rule 9019(a), (ii) authorizing the Debtors to perform such actions required under, and to modify the automatic stay to the extent necessary to permit implementation of, the terms of the Stipulation, and (iii) granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
July __18__, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Sean M. Beach (No. 4070)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession