UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., et al., | ) | Case No. 07-11047 (CSS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**OBJECTION OF THE BANK OF NEW YORK MELLON, IN VARIOUS CAPACITIES, TO PROPOSED PURCHASER'S CURE AMOUNTS**

1. The Bank of New York Mellon (formerly The Bank of New York) in its capacities (a) as Indenture Trustee for the American Home Mortgage Investment Trust Series 2004-4 Mortgage-Backed Notes, (b) as Master Servicer, Securities Administrator and Custodian[1] for the GSAA Home Equity Trust 2006-6 Asset Back Certificates Series 2006-6 and the GSAA Home Equity Trust 2006-9 Asset Back Certificates Series 2006-9 and (c) as successor to JPMorgan Chase, as Trustee, for the Structured Asset Mortgage Investments II Trust 2006-AR5 Mortgage Pass-Through Certificates Series 2006-AR5 (the "Claimant"), hereby files this objection to the Proposed Purchaser's Cure Amounts. By this objection the Claimant asserts its right to cure payments and specific performance of certain provisions under certain mortgage loan servicing agreements, which were assumed by the above captioned debtors (collectively, the "Debtors') and ultimately assigned to AH Mortgage Acquisition Co., Inc. (the "Purchaser").

2. American Home Mortgage Servicing Inc. (the "Debtor" or "AHM Servicing") entered into certain agreements with the Claimant in connection with the following four

[1] The Bank of Ne w York Mellon is successor to JPMorgan Chase Bank, National Association ("JPMorgan Chase"), as Master Servicer, Securities Administrator and Custodian for the 2006-6 Certificates (as defined below) and the 2006-9 Certificates (as defined below).

securitizations in which AHM Servicing serviced or subserviced certain mortgage loans: (a) American Home Mortgage Investment Trust Series 2004-4 Mortgage-Backed Notes (the "2004-4 Notes"), (b) GSAA Home Equity Trust 2006-6 Asset Back Certificates Series 2006-6 (the "2006-6 Certificates"), (c) GSAA Home Equity Trust 2006-9 Asset Back Certificates Series 2006-9 (the "2006-9 Certificates") and (d) Structured Asset Mortgage Investments II Trust 2006-AR5 Mortgage Pass-Through Certificates Series 2006-AR5 (the "2006-AR5 Certificates"). A table listing the specific agreements is attached hereto as Exhibit A (the "Servicing Agreements").

3. In September, 2007, the Debtors filed the Emergency Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (the "Sale Motion"). The hearing to approve the Sale Motion commenced on October 15, 2007 and the Court approved the sale and entered an order to that effect on October 30, 2007 (Docket No. 1711) (the "Sale Order"). Pursuant to the Sale Order the Debtors sold certain aspects of their servicing business to the Purchaser.

4. In accordance with Paragraph 33 of the Sale Order, the Claimant filed its Proof of Cure Claim and Estimate of Transfer Costs (the "Initial Cure Claim") on November 29, 2007. In the Initial Cure Claim, the Claimant asserted that it was owed $23,905.00 in default administration fees and $482,138.73 in legal fees, which had accrued between August, 2007 and

October, 2007. The Claimant also asserted a $72,159.17 discrepancy in AHM Servicing's accounts in the Initial Cure Claim. On December 26, 2007, the Claimant filed its Limited Objection to Notice of Cure Interim Cure Claim Schedule (Docket No. 2504) reinforcing its entitlement to the fees and costs requested in the Initial Cure Claim. Subsequently, on April 24, 2008, the Claimant filed its Proof of Transfer Cost Claim in the amount of $51,772.79 (Docket No. 3849). Though as yet unpaid, responsibility for these payments belongs to the Debtors and should be paid from the Cure Escrow (as defined in the Sale Order) account set aside for such payments under the Sale Order.

5. Paragraph 36 of the Sale Order provides that the Purchaser shall fund and be liable to the Debtors[2] for all amounts owed, if any, with respect to "defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing to the Final Closing." On May 12, 2008, the Court entered an order authorizing the Debtors to file and serve on the Counterparties to the Assumed Contracts (as defined in the Sale Order) a notice setting forth the proposed Purchaser's Cure Amount (as defined in the Sale Order) for each Assumed Contract related to acts or omissions that occurred after the Initial Closing through and including the Final Closing (the "Purchaser's Cure Amount Bar Date Order"). A cure amount of $0.00 has been proposed with respect to the Claimant's Servicing Agreements. The Purchaser's Cure Amount Bar Date Order further provides that certain parties, including the Claimant, have until July 31, 2008 to file an objection if it disagrees with the amount on Exhibit A to the Purchaser's Cure Amount Bar Date Order.

6. Under section 3.17 of the 2004-4 RMBS Servicing Agreement (as defined in Exhibit A hereto), every March 15, an annual Independent Public Accountants' Servicing Report

[2] A ny amounts received by the Debtors from the Purchaser are to be earmarked and segregated for the benefit of the Counterparties, including the Claimant.

(the "Annual Report") is due to be delivered to the Claimant. Section 3.17 of the 2004-4 RMBS Servicing Agreement is attached hereto as Exhibit B. To date, despite several attempts by the Claimant to obtain the Annual Report, such report has not yet been provided. The Claimant is entitled to the Annual Report, and as part of its cure obligations, the Purchaser must provide it. See ¶ 36 of the Sale Order. Accordingly, the Claimant requests that the Court order specific performance of the obligations set out in section 3.17 of the 2004-4 RMBS Servicing Agreement.

7. Further, the Claimant asserts that the Purchaser's Cure Amount also includes the legal fees incurred in connection with analyzing and attempting to resolve the Debtors' failure to provide the Claimant with the Annual Report. To date, the Claimant has incurred $10,968.00 in legal fees related to this default.

8. The Claimant is not presently aware of any other defaults or other basis for cure claims against the Purchaser under the Servicing Agreements. The Claimant, however, holds and hereby asserts contingent and unliquidated claims for any breaches of certain representations, warranties and obligations contained in the Servicing Agreements in between the Initial Closing and the Final Closing, and reserves the right to amend or supplement this Purchaser's Cure Claim in any respects, to fix or liquidate any such claims stated herein, to specify and quantify expenses or other charges or claims incurred by the Claimant.

9. The execution and filing of this Purchaser's Cure Claim is not a waiver of any of Claimant' s rights including, without limitation, the right to move to withdraw the reference with respect to the subject matter of this claim or otherwise, and any right to trial by jury that Claimant may have in any civil proceeding arising in or related to this case, nor is it a consent to jurisdiction of this or any court except with respect to the allowance of the claims asserted herein.

10. The address to which all notices to the Claimant should be addressed is:

The Bank of New York
101 Barclay Street, 8W
New York, New York 10286
Attn: Martin Feig

with a copy to:

Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, New York 10036
Attention: Leo T. Crowley, Esq.

RICHARDS, LAYTON & FINGER, P.A.
By: ______________________
Russell C. Silberglied (3462)
Christopher Samis (4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

-and-
PILLSBURY WINTHROP SHAW PITTMAN LLP
Leo T. Crowley
Margot P. Erlich
1540 Broadway
New York, New York 10036
(212) 858-1000

Attorneys for The Bank of New York, in various capacities



500248028v6