IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>　　　　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>Relates to Docket No. 4084<br><br>**Filing Deadline: July 31, 2008** |

## OBJECTION OF CITIBANK, N.A. TO PROPOSED PURCHASER'S CURE AMOUNT

1. Citibank, N.A. as indenture trustee or trustee, paying agent and/or registrar (solely in those capacities, "Citibank"), for the securitization trusts (collectively, the "Trusts") listed on Exhibit A, submits this Objection to Proposed Purchaser's Cure Amount.

2. On October 30, 2007, the Court entered the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) The Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (B) Granting Certain Related Relief (Docket No. 1711) (the "Order").

3. The Order authorized the Debtors to assume and assign certain servicing agreements to the purchaser of the mortgage loan servicing business, AH Mortgage Acquisition Co., Inc. (the "Purchaser"), in accordance with the terms of an Asset Purchase Agreement, dated as of September 25, 2007, as amended (the "APA"). The APA contemplated a two step closing of the sale transaction; an Initial Closing, which occurred on November 16, 2007, and a Final Closing, which occurred on April 11, 2008.

4. The Order required that the Purchaser pay the Debtors, for the benefit of the applicable Counterparty, the Purchaser's Cure Amount. The Purchaser's Cure Amount includes "all amounts owed, if any, with respect to defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing until the Final Closing." Order at para. 36.

5. As trustee or indenture trustee, Citibank has the right to enforce the servicer's obligations, representations and warranties under the servicing agreements and other agreements relating to the Trusts for the benefit of itself and each Trust's noteholders and certificateholders. Under the terms of the APA, the Purchaser has agreed to perform these obligations and to fund and be liable to the Debtors for any defaults with respect to its acts or omissions from the Initial Closing to the Final Closing as part of the Purchaser's Cure Amount.

6. Citibank previously filed an Interim Cure Amount (Docket No. 2230), Interim Cure Claim (Docket No. 2485) and Final Cure Amount (Docket No. 3972), which are incorporated by reference herein.

7. Attached as Exhibit B is a list of the servicing agreements relating the Trusts that have been assumed by the Debtors and assigned to the Purchaser (collectively, the "Citibank Servicing Agreements"), Citibank's role in each agreement, the Debtor's role, the Proposed Purchaser's Cure Amount for each agreement as set forth in the Debtor's notice dated May 19, 2008 (Docket No. 4084) and Citibank's asserted Purchaser's Cure Amount. For each of the assumed servicing agreements the Debtors' notice lists the Purchaser's Cure Amount as zero. Citibank's asserted Purchaser's Cure Amount (the "Purchaser's Cure Amount") is not capable of liquidation at this time and is described below.

## PURCHASER'S CURE AMOUNT

8. The Purchaser as Servicer or Master Servicer under the servicing agreements for the Trusts (the "Servicer"), generally agreed to indemnify Citibank for: (a) the Servicer's failure to perform under the servicing agreements and the transaction documents; (b) Citibank's performance of its duties under the transaction documents; and (c) certain SEC reporting requirements.

9. Citibank may be named as a defendant in litigations relating to the Trusts or the Servicer. Most of these actions would probably be commenced by mortgage loan obligors as direct claims or as counterclaims in foreclosure proceedings and are defended by the Servicer. The Servicer is obligated to defend and indemnify Citibank relating to these actions. To the extent these claims arose between the Initial Closing Date and the Final Closing Date this Purchaser's Cure Amount includes Citibank's indemnification claim relating to those matters. Citibank does not maintain the files relating to these lawsuits because they are defended by the Servicer. Citibank has not been notified of any such matters and therefore has not included a liquidated amount for this indemnification claim and reserves the right to supplement this Purchaser's Cure Amount to the extent it incurs any liability or there are any changes in the facts known to it.

10. In order to ensure that the Trusts can enforce their rights with respect to mortgage loans owned by the Trusts, the Servicer is generally obligated to record with state and county land record offices, and for mortgages registered with the Mortgage Electronic Registration Systems, Inc. ("MERS"): (a) the assignment of the mortgage loans to the Trusts, and (b) the transfer of servicing to the Purchaser. It has been represented that the Servicer has properly recorded all mortgages, however, to the extent the Servicer failed to properly record the assignment of any of the mortgage loans to the Trusts, this Purchaser's Cure Amount includes

3

any fees and expenses related to the proper recordation of the mortgages. Citibank has not included a liquidated amount for the Servicer's failure to perform this obligation and its indemnification claim with respect thereto because it is not aware of any such matters. However, to the extent the Servicer has failed to perform this obligation (which may not become known in the near term), Citibank reserves the right to amend this Purchaser's Cure Amount to include damages for the Servicer's failure to properly record the mortgage loans.

11.   Citibank is entitled to administration fees and seeks reimbursement of expenses, including legal fees and expenses, relating to extraordinary services such as servicer defaults. These fees are the hourly fees of Citibank's officers and any related expenses. The aggregate administration charge of Citibank from November 17, 2007 through April 11, 2008 relating to the Trusts was $18,525.

12.   Citibank retained counsel to advise it relating to the Citibank Servicing Agreements, the Servicer's default and Debtors' sale of the servicing business. Citibank retained Seward & Kissel LLP as its lead counsel and Cozen O'Connor as special Delaware counsel. The aggregate fees and expenses of counsel from November 17, 2007 through April 11, 2008 were $88,697.43 comprised of (a) Seward & Kissel LLP: $85,153.27, and (b) Cozen O'Connor: $3,544.16.

13.   With respect to all of the foregoing, Citibank asserts its Final Cure Amount in an aggregate amount of $107,222.43 comprised of: (a) bank default administration fees and expenses in the aggregate amount of $18,525, and (b) legal fees and expenses in the aggregate amount of $88,697.43. This amount is subject to increase for claims that are not capable of liquidation at this time.

**RESERVATION OF RIGHTS**

14.     This Purchaser's Cure Amount includes all cure claims of Citibank that arose from November 17, 2007 through and including April 11, 2008. In addition to the reservations set forth above, Citibank reserves the right to amend or supplement this Purchaser's Cure Claim to the extent that it becomes aware of additional information concerning claims against the Servicer during that period.

15.     The Debtors have repeatedly represented that there are no defaults in connection with their obligations as Servicer or Master Servicer under the Servicing Agreements, including the Citibank Servicing Agreements. In preparing this Purchaser's Cure Amount, Citibank has relied on the Debtors' and the Purchaser's representations, as evidenced by the Debtor's notice of proposed Purchaser's Cure Amounts indicating zero cure amounts, that there are no defaults under the Citibank Servicing Agreements. To the extent these representations are invalidated, repudiated or determined to be unwarranted or untrue, Citibank reserves the right to amend this Purchaser's Cure Amount to include claims relating to any breaches during this period.

16.     Citibank expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses, and claims that it may have against any of the Debtors or any subsidiary or affiliate, creditors, management, and other parties under the Bankruptcy Code, the servicing agreements, and transaction documents relating to the Trusts applicable law and/or equity.

17.     Nothing contained herein shall be construed as a waiver of any rights or remedies of holders of notes and certificates issued by the Trusts or Citibank with respect to the transaction documents relating to the Trusts. Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of Citibank or the holders of the notes and certificates issued by the Trusts with respect to any other claims against any of the Debtors or the Purchaser.

WHEREFORE, Citibank respectfully requests that the Court enter an order (a) sustaining this Objection, (b) allowing Citibank's Purchaser Cure Amount in an amount to be determined and (c) granting Citibank such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
July 31, 2008

BY:  COZEN O'CONNOR

John F. Carroll, III (DE 4060)
1201 North Market Street
Suite 1400
Wilmington, Delaware 19801
(302) 295-2000

and

SEWARD & KISSEL, LLP
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

Attorneys for Citibank, N.A., solely in its capacities as Indenture Trustee, Trustee, Paying Agent and Registrar