**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>                           Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>Filing Deadline: July 31, 2008 at 4:00 p.m. (EST)<br><br>Re: Docket No. 4084 |

**OBJECTION TO THE DEBTORS' PROPOSED PURCHASER'S CURE AMOUNTS**

      U.S. Bank National Association, in its capacity as trustee ("U.S. Bank"), by and through its undersigned counsel, files this Objection to the Debtors' Proposed Purchaser's Cure Amounts (this "Objection") pursuant to (i) the Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief [Docket No. 1711] (the "Sale Order"); and (ii) the Order, Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and the Sale Order, (I) Approving the Form of Notice and Authorizing the Debtors to File a Notice of Proposed Purchaser's Cure Amounts and (II) Establishing a Bar Date for Filing Objections to the Proposed Purchaser's Cure Amounts [Docket No. 4021].

**A.**    **Background**

      1.    U.S. Bank is the indenture trustee or trustee in connection with certain securitization trusts for which the Debtors are or were the servicer, or are otherwise a party, and

which are the subject of the Sale Order (the "Trusts").  The Trusts are described in more detail in the Initial Cure Amount and Transfer Cost Claim Estimate of U.S. Bank National Association, as Trustee [Docket No. 2231] (the "Initial Claim"), and U.S. Bank hereby incorporates such descriptions by reference.[1]

2.  On October 30, 2007, the Court entered the Sale Order.

3.  In accordance with the Sale Order, the Debtors are assuming or have assumed certain agreements, or portions thereof, relating to the Trusts (collectively, the "U.S. Bank Servicing Agreements") and are assigning or have assigned the same to the Purchaser.[2]  The U.S. Bank Servicing Agreements are described in more detail in the Initial Claim, and U.S. Bank hereby incorporates such descriptions by reference.

4.  Pursuant to the Sale Order, $10,000,000 from the Purchase Price was placed into escrow at the Initial Closing in full satisfaction of the Sellers' Cure Amount.  Sale Order ¶ 32.  To the extent the Cure Escrow is insufficient for the payment in full of all cure claims, any Counterparty may assert a general unsecured claim against the Debtors for the deficiency.  Sale Order ¶ 35.

5.  For each Assumed Contract, the Sale Order provides that Initial Cure Amounts were to be filed within thirty (30) days of the entry of the Sale Order, by, among others, Certain Objectors, as provided therein.  Sale Order ¶ 33.  The Sale Order also provides that any

---

[1]  U.S. Bank is the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party but which are not the subject of the Sale Order.  Such trusts are not included in the list of trusts set forth in numbered paragraph 1 of the Initial Claim because they are not the subject of the Sale Order and this Objection, and the claims stated herein and in the Initial Claim do not include U.S. Bank's claims related to such trusts.  U.S. Bank may be the indenture trustee, trustee or master servicer in connection with additional securitization trusts for which the Debtors are the servicers or are otherwise a party and which are the subject of the Sale Order but U.S. Bank has not been identified by Debtors, nor has it otherwise determined, that it is a party to such trusts.  All rights to make claims against the Debtors in connection with and on behalf of all of such foregoing trusts are reserved and no waiver is hereby made.

[2]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Sale Order.

2

Counterparty intending to request that the Sellers pay Transfer Costs must file an estimate of Transfer Costs within thirty (30) days of the entry of the Sale Order.  Sale Order ¶ 34.  Accordingly, on November 29, 2007, U.S. Bank, a Certain Objector and Counterparty under the terms of the Sale Order, filed its Initial Claim, setting forth its Initial Cure Amount, an estimate of its Transfer Cost Claim, and reserving certain rights.

6.      The Sale Order also requires the Debtors to serve an Interim Period Cure Schedule setting forth the proposed cure amount for the Assumed Contracts with respect to acts or omissions that occurred between the date of the Sale Order and the Initial Closing, which is the period between October 30, 2007 and November 16, 2007 (the "Interim Period").  Sale Order ¶ 34.  Accordingly, on November 26, 2007, the Debtors filed their Notice of Interim Period Cure Schedule [Docket No. 2166] (the "Proposed Interim Cure Amounts").

7.      The Debtors' total Proposed Interim Cure Amounts with respect to each of the U.S. Bank Servicing Agreements was $0.00.

8.      U.S. Bank disputed the Proposed Interim Cure Amounts.  Accordingly, on December 26, 2007, U.S. Bank, pursuant to the provisions of the Sale Order, filed its Interim Period Cure Claim, Objection to the Debtors' Interim Period Cure Schedule, and Amendment to Initial Claim of U.S. Bank National Association, as Trustee [Docket No. 2503] (the "Interim Objection").  See Sale Order ¶ 34.  The cure amounts and claims set forth in the Interim Objection are in addition to the claims set forth in the Initial Claim; and, except to the extent the Interim Objection amends the Initial Claim as expressly provided in paragraph 21 therein, nothing in the Interim Objection waives or modifies or should be construed to waive or modify, the claims set forth in the Initial Claim.

9.      Pursuant to the Sale Order, Counterparties asserting that the Sellers are liable for any unpaid Transfer Costs were also required to file and serve a claim for the alleged amount of

such Transfer Costs after receiving notice of the Final Closing. Sale Order at ¶ 39. The Debtors filed and served the notice of the Final Closing on April 23, 2008. Accordingly, on May 7, 2008, U.S. Bank filed the Transfer Cost Claim of U.S. Bank National Association, as Trustee [Docket No. 3975] (the "Transfer Cost Claim").

10. U.S. Bank's Transfer Cost Claim as of May 7, 2008 included (a) administration fees and expenses in the amount of $115,639.29 incurred through April 11, 2008; (b) fees and expenses of counsel in the amount of $396,088.30 incurred through April 11, 2008; and (c) a claim related to the claim for reimbursement of fees and expenses in the amount of $252,833.13 U.S. Bank received from Financial Guaranty Insurance Company.

11. The Initial Claim, the Interim Objection and the Transfer Cost Claim are incorporated herein by reference.

12. Pursuant to the Sale Order, "the Purchaser shall fund and be liable to the Debtors for all amounts owed, if any, with respect to defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing until the Final Closing (the "Purchaser's Cure Amount")." Sale Order at ¶ 36.

13. On May 19, 2008 the Debtors filed their Notice of (I) Debtors' Proposed Purchaser's Cure Amounts and (II) Deadline for Filing Objections to the Proposed Purchaser's Cure Amounts [Docket No. 4084] (the "Notice of Purchaser's Cure Amounts") setting forth the proposed Purchaser's Cure Amount for each Assumed Contract (the "Debtors' Proposed Purchaser's Cure Amounts") related to acts or omissions that occurred during the period from the Initial Closing through and including the Final Closing (the "Purchaser's Cure Period").

14. The Debtors' Proposed Purchaser's Cure Amount for each of the U.S. Bank Servicing Agreements is $0.00. Indeed, the Debtors' Proposed Cure Amount for every Assumed Contract is $0.00.

4

15. U.S. Bank disputes the Debtors' Proposed Purchaser's Cure Amounts. The actual Purchaser's Cure Amount for each of the U.S. Bank Servicing Agreements related to acts or omissions that occurred during the Purchaser's Cure Period is no less than $124,443.50 plus claims that are currently unliquidated and not capable of liquidation as described below.

16. Pursuant to the Notice of Purchaser's Cure Amounts, the attached Schedule A sets forth, with respect to each Assumed Contract that is the subject of this Objection, "(i) the name of the Counterparty to the Assumed Contract, (ii) the title or nature of the Assumed Contract subject to [this] Objection, (iii) the Proposed Purchaser's Cure Amount for such Assumed Contract, (iv) the Counterparty's asserted Purchaser's Cure Amount for such Assumed Contract, . . . and (v) the basis for the Purchaser's Cure Amount asserted in [this] Objection." This Schedule A is subject to amendment and supplementation and the reservation of rights and terms set forth below.

17. U.S. Bank also asserts this Objection and its Purchaser's Cure Amount pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code, dated August 7, 2007 [Docket No. 66] (the "Cash Management Order"), which provides that:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court. In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices

5

> of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties.

Cash Management Order, at 6.

    18.    The Cash Management Order further provides that:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provisions of the Securitization Documents in accordance with the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents.

Cash Management Order, at 7-8. Accordingly, U.S. Bank reserves the right to assert claims for indemnification and its monitoring efforts as administrative priority expense claims.

**B.**    **Purchaser's Cure Amount**

    19.    As trustee or indenture trustee, U.S. Bank has the right to enforce the Servicer's (defined below) obligations, representations and warranties under the U.S. Bank Servicing Agreements and other related agreements[3] for the benefit of itself and each Trust's noteholders and certificateholders.[4]

    20.    Pursuant to the U.S. Bank Servicing Agreements, the Debtors, or certain of them

---

[3]    As trustee or indenture trustee, U.S. Bank also has the right to enforce the Purchaser's obligations, representations and warranties under the U.S. Bank Servicing Agreements and other related agreements to the extent the Debtors have assumed and assigned the U.S. Bank Servicing Agreements and other related agreements to the Purchaser. Nothing contained herein shall affect such right or such obligations, representations and warranties against or of the Purchaser, respectively.

[4]    With respect to the U.S. Bank Servicing Agreements, U.S. Bank is relying on its master servicers to enforce such obligations on its behalf and incorporates by reference any and all claims asserted by such master servicers on behalf of or against the Trusts. If such master servicers do not enforce such obligations on its behalf, U.S. Bank may be required to enforce such obligations itself. U.S. Bank by filing this Objection does not acknowledge, create, or assume any obligations that do not otherwise exist. In addition, U.S. Bank incorporates by reference any and all claims asserted by any insurers of securities issued by any of the Trusts.

6

including American Home Mortgage Servicing, Inc. and the Purchaser (in such capacity, and collectively, "Servicer") agreed to indemnify U.S. Bank for: (a) the Servicer's failure to perform under the U.S. Bank Servicing Agreements and the related transaction documents (the "Transaction Documents"); (b) U.S. Bank's performance of certain duties under the Transaction Documents; and (c) certain reporting requirements of the Securities Exchange Commission.

21. Included in these indemnification obligations are obligations in the event that U.S. Bank has been named or is named in the future as a defendant in litigation matters relating to the Trusts or the Servicer. With one exception, U.S. Bank is currently unaware, however, of any such litigation in which it is a named party.[5] Most of these actions were or would be commenced by mortgage loan obligors and are being or should be defended by the Servicer. The Servicer is obligated to defend and indemnify U.S. Bank relating to these actions. To the extent these claims arose during the Purchaser's Cure Period, the Purchaser's Cure Amount must be increased to include U.S. Bank's indemnification claim relating to these matters. Because of the Servicer's obligations related to the defense of such lawsuits, U.S. Bank does not, and does not have an obligation to, monitor or maintain files relating to these litigation matters. The Debtors and the Purchaser, not U.S. Bank, have access to the information required to determine whether or not they have breached their obligations under the U.S. Bank Servicing Agreements and the

---

[5] U.S. Bank has reviewed the Debtors' Statement of Financial Affairs which lists more than 250 lawsuits. Only one of those actions expressly includes U.S. Bank as a party. A proof of claim apparently relating to this cause of action, claim no. 8817, was filed on behalf of Alexandra Arkuszewski against American Home Mortgage Corp. on January 11, 2008, in an amount in excess of $50,000. In the event the trust described therein is related to any of the agreements which are the subject of or included in the Notice of Purchaser's Cure Amounts, and insofar as such action seeks to impose liability on U.S. Bank, the trust described therein, or any of the Trusts (or seeks to offset against any note held by the Trusts), U.S. Bank hereby asserts a claim in an amount in excess of $50,000 arising from any such liability, and reserves the right to amend its claim to assert any additional and/or such damages incurred or losses suffered as a result of such litigation.

Moreover, because the Servicer regularly institutes foreclosure proceedings which may give rise to counterclaims against the Servicer and/or the Trusts, trustees or master servicer, U.S. Bank cannot be certain that there are no other litigation matters that may give rise to an indemnity claim, and U.S. Bank reserves its right to file such a claim in the event such matters are asserted.

claim amounts arising from any such breach. The Debtors and/or the Purchaser, as evidenced by the Notice of Purchaser's Cure Amounts, have represented that no defaults exist and that there are no cure claims or Purchaser's Cure Amounts arising under the terms of the U.S. Bank Servicing Agreements. Based on these representations, and with the exception of indemnification claims associated with the litigation described in footnote 5 and which claims U.S. Bank asserts and preserves herein, U.S. Bank has not included a liquidated amount for this indemnification claim and reserves the right to amend or supplement this Objection to the extent it incurs any liability, the Debtors or the Purchaser provide further information to U.S. Bank or U.S. Bank otherwise acquires information relating to such claims, or there are any changes in the facts as represented by the Debtors or the Purchaser.

22. Also included in these indemnification obligations, the Servicer is generally obligated (a) with respect to mortgage loans registered with the Mortgage Electronic Registration System, Inc. ("MERS"), to cause MERS to show on its records that U.S. Bank is the "investor" and the assignee of each mortgage securing such a mortgage loan, and to cause MERS to show on its records that the Purchaser is the servicer of those mortgage loans; and (b) with respect to mortgage loans not registered with MERS, to record with applicable state and/or county land record offices any mortgage assignments necessary for the enforcement of a defaulted mortgage loan on behalf of the applicable Trust. To the extent the Servicer failed to properly record the assignment of any of the mortgage loans to the Trusts, the Purchaser's Cure Amount must be increased to include any fees and expenses related to the proper recordation of the mortgage assignment to the extent such claims arose during the Purchaser's Cure Period. The Debtors and/or the Purchaser have represented, as evidenced by the Notice of Purchaser's Cure Amounts, that there are no defaults in these obligations and that there are no cure claims or Purchaser's Cure Amounts arising under the terms of the U.S. Bank Servicing Agreements. Moreover,

because a breach of this representation may not become apparent for years (when a mortgage loan defaults and the mortgage must be enforced by the successor servicer on behalf of the applicable Trust), U.S. Bank cannot provide a liquidated amount for the Servicer's failure to perform this obligation and its indemnification claim with respect thereto. Based on these representations, U.S. Bank has not included a liquidated amount for this indemnification claim and reserves the right to amend or supplement this Objection to the extent it incurs any liability, the Debtors or the Purchaser provide further information to U.S. Bank or U.S. Bank otherwise acquires information relating to such claims, or there are any changes in the facts as represented by the Debtors or the Purchaser.

23. Additional indemnity obligations exist. The Debtors and/or the Purchaser have represented, however, that there are no defaults in any other obligations under the U.S. Bank Servicing Agreements during the Purchaser's Cure Period by representing that there are no cure claims arising in connection with same. Such obligations, and, thus, the defaults arising therefrom if the obligations are not performed or fulfilled, are more fully described in the U.S. Bank Servicing Agreements and the Transaction Documents. U.S. Bank is currently unaware of any such defaults, breaches or other basis for cure claims under the U.S. Bank Servicing Agreements, but reserves the right to amend or supplement this Objection in any respect if such representations are inaccurate or upon determining such breaches or defaults have occurred or that such claims have arisen or have been incurred.

24. Accordingly, U.S. Bank asserts an unliquidated Purchaser's Cure Amount for claims and indemnification claims that are not capable of liquidation arising from any defaults or breaches of the representations, warranties and obligations pursuant to or under the U.S. Bank Servicing Agreements during the Purchaser's Cure Period.

25. In addition, pursuant to the Servicing Agreements and the Transaction

Documents, the Servicer also agreed to pay U.S. Bank for all of its fees and expenses, including the fees and expenses of counsel relating to a transition of servicing. Accordingly, and notwithstanding U.S. Bank's right to amend this Objection and/or to increase the Purchaser's Cure Amount as discussed herein, U.S. Bank asserts a liquidated Purchaser's Cure Amount to be in the aggregate amount of no less than $124,443.50.[6] This amount includes (a) default administration fees and expenses, and (b) legal fees and expenses, as more fully described below:

      (a)     U.S. Bank is entitled to charge administration fees and reimbursement of expenses for its services related to this matter. These administration fees include the hourly fees of U.S. Bank's officers and any related expenses. The aggregate administration charges of U.S. Bank during the Purchaser's Cure Period were no less than $39,208.79.

      (b)     U.S. Bank retained Dorsey & Whitney LLP to provide legal services in connection with these bankruptcy cases and the transfer of the servicing business. The aggregate fees and expenses of counsel during the Purchaser's Cure Period were no less than $85,234.71.

**C.**    **Reservation of Rights**

26.    In addition to the reservations hereinabove, U.S. Bank reserves the right to amend or supplement this Objection in any respect, including, without limitation, to the extent that it becomes aware of additional Purchaser's Cure Amounts or additional information concerning claims arising under the U.S. Bank Servicing Agreements during the Purchaser's Cure Period, and to support this Objection with additional documents and information. Without limiting the foregoing, this Objection is asserted without prejudice and U.S. Bank reserves the right to assert additional claims for default administration and legal fees and expenses incurred after April 11, 2008.

27.    The Debtors have repeatedly represented that there are no defaults in connection

---

[6] The Purchaser's Cure Amount is in addition to the claims set forth in the Initial Claim, the Interim Objection and the Transfer Cost Claim and nothing in this Objection waives or modifies any of the claims set forth in the Initial Claim, the Interim Objection and/or the Transfer Cost Claim.

with their obligations as Servicer or Master Servicer under the Servicing Agreements, including the U.S. Bank Servicing Agreements.  In preparing this Objection, U.S. Bank has relied on the Debtors' representations that there are no defaults under the U.S. Bank Servicing Agreements. To the extent the Debtors' representations are invalidated, repudiated, or determined to be unwarranted or untrue, U.S. Bank reserves the right to amend this Objection to include claims and amounts relating to any claims against any of the Debtors.

28. Pursuant to the Sale Order, U.S. Bank may file additional claims.

29. U.S. Bank expressly reserves any rights, remedies, liens, interests, priorities, protections, defenses, and claims which it may have against the Debtors or any affiliates, subsidiaries, creditors, management, and other parties under the Bankruptcy Code, and the rights and benefits at law or in equity to all the rights and interests under and with respect to the Transaction Documents and the U.S. Bank Servicing Agreements.

30. Nothing contained herein shall be construed as a waiver of any rights or remedies of holders of notes and certificates issued by the Trusts or U.S. Bank with respect to the U.S. Bank Servicing Agreements and the Transaction Documents.  Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of U.S. Bank or the holders of the notes and certificates issued by the Trusts with respect to any other claims against any of the Debtors, including, without limitation, claims set forth in the Initial Claim, the Interim Objection and the Transfer Cost Claim.

Dated: Wilmington, Delaware
July 31, 2008

**DORSEY & WHITNEY (DELAWARE) LLP**

By: /s/ Eric Lopez Schnabel
Eric Lopez Schnabel (Del No. 3672)
Robert W. Mallard (Del No. 4279)
1105 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 425-7162

**DORSEY & WHITNEY LLP**
Charles Sawyer (MN #140351)
Katherine A. Constantine (MN #123341)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

*Attorneys for U.S. Bank National Association, in its capacity as Trustee*