# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------- x
In re:              :     Chapter 11

AMERICAN HOME MORTGAGE    :     Case No. 07-11047 (CSS)
HOLDINGS, INC., et al.,[1]

                  :     Jointly Administered

           Debtors.   :

                  :     **Interim Hearing: August 5, 2008 at 3:00 p.m. (ET)**
                  :     **Obj. Deadline: August 5, 2008 at 12:00 Noon (ET)**
                  :     **Final Hearing: August 18, 2008 at 10:30 a.m. (ET)**
----------------------------------------------------- x  **Obj. Deadline: August 11, 2008 at 4:00 p.m. (ET)**

## EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING AND APPROVING THE SECOND AMENDMENT TO POST-PETITION DEBTOR-IN-POSSESSION FINANCING FACILITY PURSUANT TO SECTIONS 105, 363 AND 364 OF THE BANKRUPTCY CODE; (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c); AND (III) GRANTING RELATED RELIEF

American Home Mortgage Investment Corp. American Home Mortgage

Holdings, Inc., American Home Mortgage Corp., American Home Mortgage Acceptance, Inc.,

American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak

Abstract Corp., each a debtor and debtor in possession (collectively, the "Borrowers"),[2] hereby

move this Court (the "Motion") for entry of interim (the "Interim Order") and final (the "Final

Order") orders (i) authorizing and approving that certain *Second Amendment Agreement* (the

"Second DIP Facility Amendment"), annexed hereto as Exhibit A, by and among the Borrowers,

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2]     AHM SV is not a Borrower under the DIP Facility.

the Borrowers' post-petition lenders (the "Lenders") and WLR Recovery Fund, III, L.P., as administrative agent for the Lenders (the "Administrative Agent," and together with the Lenders, the "Secured Parties") to the previously-approved DIP Facility (as defined below), pursuant to sections 105, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), (ii) scheduling a final hearing (the "Final Hearing") on the Motion pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (iii) granting related relief. In support of this Motion, the Borrowers respectfully represent as follows:

## JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 363 and 364 of the Bankruptcy Code, as well as Bankruptcy Rules 2002, 4001 and 9014.

## GENERAL BACKGROUND

2.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5.      Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business"). In addition to the separate sales of other servicing rights, commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business. By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").

6.      Pursuant to the APA, the Servicing Sale closed in two steps. At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the Purchase Price in the manner and to the parties as provided in the APA and related agreements referenced therein. From the Initial Closing Date until the "legal" close (the "Final Closing"), the Debtors agreed to operate the Servicing Business in the ordinary course of business, subject to the Bankruptcy Exceptions (as defined in the APA), for the economic benefit and risk of the Purchaser. The Final Closing occurred on April 11, 2008.

### THE DEBTORS' DIP FACILITY

7.      On the Petition Date, the Borrowers filed a motion seeking approval of and authority to enter into a post-petition debtor-in-possession credit facility in the principal amount of $50 million pursuant to that certain *Debtor-in-Possession Loan and Security Agreement*, dated as of August 6, 2007, by and among the Borrowers, the Lenders and the

3

Administrative Agent (together with any and all exhibits and schedules annexed thereto, and as may be modified or amended from time-to-time, the "DIP Facility").[3] By Order dated August 7, 2007 [Docket No. 67] (the "Interim DIP Order"), the Court approved the DIP Facility on an interim basis and by Order dated September 4, 2007, the Court approved the DIP Facility on a final basis (together with the exhibits thereto, the "Final DIP Order") [Docket No. 555].

8.      On December 27, 2007, the Borrowers filed a motion [Docket No. 2529] with the Court to approve that certain *First Amendment Agreement* (the "First DIP Facility Amendment") to the DIP Facility which, among other things, decreased the Total Commitment under the DIP Facility to $35 million, authorized the Borrowers to use certain funds borrowed under the DIP Facility to release liens on certain of the Debtors' loans and granted the Lenders replacement liens thereon, and authorized the Borrowers to use funds borrowed under the DIP Facility in connection with the Debtors' obligations under the APA. By Order dated January 4, 2008 [Docket No. 2594], the First DIP Facility Amendment was authorized and approved by the Court.

## THE SECOND DIP FACILITY AMENDMENT[4]

9.      The Borrowers, the Lenders and the Administrative Agent have agreed to further amend the DIP Facility through the terms and conditions of the Second DIP Facility Amendment. The material terms of the Second DIP Facility Amendment are summarized below.

---

[3]      The terms and conditions of the DIP Facility are described in greater detail in the *Emergency Motion for Interim and Final Orders (I) Authorizing Certain Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364(c); (II) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(c); and (III) Granting Related Relief* filed by the Debtors on the Petition Date [Docket No. 17] as well as the DIP Facility, a copy of which was annexed to the Interim DIP Order (as defined below), each of which are incorporated herein by reference.

[4]      The summary of the terms of the Second DIP Facility Amendment herein is for descriptive purposes only. To the extent this description and the terms of the Second DIP Facility vary, the Second DIP Facility Amendment shall control. Unless otherwise defined, capitalized terms shall have the meanings ascribed to them in the Second DIP Facility Amendment.

10.     The Borrowers request that the Court authorize the following interim

relief:

      (a)     An extension of the Maturity Date of the DIP Facility through and including August 18, 2008;

      (b)     Borrowers' retention of the proceeds from the sale of certain non-performing loans to Beltway Capital, LLC (the "Beltway Proceeds") and use of an aggregate amount of such proceeds not in excess of $9 million for working capital and other corporate purposes; and

      (c)     Payment to each Lender an amendment fee in an aggregate amount equal to 2.5% times $9 million ($225,000).

11.     The Borrowers request that the Court authorize the following final relief:

      (a)     Increase the amount of funds available to the Borrowers under section 2.01 of the DIP Facility, so that the Borrowers may borrow Loans under the DIP Facility in an aggregate principal amount not to exceed $30 million. The Second DIP Facility Amendment provides that the total availability under the DIP Facility is reduced from $35 million to $30 million; however, the availability is also amended to eliminate the reduction in availability by the LPMI Reserve Amount of $12 million. As a result, the Second DIP Facility Amendment provides the Debtors with an additional availability of approximately $7 million;

      (b)     Amend the definition of "Applicable Margin", effective as of August 6, 2008, to mean 12.00% per annum;

      (c)     An extension of the Maturity Date of the DIP Facility through and including November 5, 2008;

      (d)     Borrowers' retention of the remaining Beltway Proceeds in an amount up to $10,577,113.01 and use of such proceeds for working capital and other corporate purposes;

      (e)     Payment to each Lender an amendment fee in an aggregate amount equal to 2.5% times $21 million ($525,000, which together with the $225,000 amount paid pursuant to the Interim Order represents the total amount of the amendment fee of $750,000).

12.     Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of

the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requires that

DB02:7032735.4                                                        066585.1001

certain provisions contained in the post-petition financing documents be highlighted, and that a debtor must provide justification for the inclusion of such highlighted provisions. The Borrowers do not believe that the Second DIP Facility Agreement or the proposed Interim Order and Final Order contain any provisions requiring special disclosure under Local Rule 4001-2(a)(i).

## **RELIEF REQUESTED**

13.    By this Motion, the Borrowers request entry of the Interim Order and the Final Order authorizing and approving the Second DIP Facility Amendment, pursuant to sections 105, 363 and 364 of the Bankruptcy Code.

14.    Through the Interim Order, the Borrowers request that the Court: (i) approve Borrowers' retention of the Beltway Proceeds and use of an aggregate amount of such proceeds not in excess of $9 million for working capital and other corporate purposes (the "Interim Amount"); (ii) extend the Maturity Date under the DIP Facility to and including August 18, 2008; and (iii) approve the payment of an interim amendment fee in the aggregate amount of $225,000 to each Lender, which amount is equal to 2.5% times $9 million (the "Interim Amendment Fee"). The Borrowers further request that the Court schedule the final hearing (the "Final Hearing") on the Motion for August 18, 2008 at 10:00 a.m. (prevailing Eastern Time). At the Final Hearing, the Borrowers will present the Final Order that will approve the Motion and the Second DIP Facility Amendment, to the extent such relief has not been granted by the Interim Order, including the payment of the remaining $525,000 of the amendment fee.

6

## BASIS FOR RELIEF REQUESTED

A.    The Second DIP Facility Amendment Should Be Approved

15.    The DIP Facility was approved by this Court in the Final DIP Order

pursuant to the provisions of, *inter alia*, section 364 of the Bankruptcy Code, which Final DIP

Order contemplates amendments and/or modifications to the DIP Facility which, if material, are

subject to the approval of the Bankruptcy Court. See Final DIP Order, at ¶ 36. Except as

previously modified by the First DIP Facility Amendment and the order thereon, and as proposed

in the Second DIP Facility Amendment, the DIP Facility and Final DIP Order shall remain in full

force and effect in accordance with their terms.

16.    Bankruptcy courts consistently defer to a debtor's business judgment on

most business decisions, including the decision to borrow money, unless such decision is

arbitrary and capricious. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del.

1994) (noting that an interim loan, receivables facility and asset-based facility were approved

because they "reflect[ed] sound and prudent business judgment...[were] reasonable under the

circumstances and in the best interest of [the debtor] and its creditors"). In fact, "[m]ore exacting

scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate

and increase its cost, interfere with the Bankruptcy Code's provision for private control of

administration of the estate, and threaten the court's ability to control a case impartially."

Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985). When

scrutinizing a debtor's business decision, such as the type and scope of a debtor-in-possession

credit facility, bankruptcy courts routinely defer to the debtor's judgment, including the decision

to borrow money on certain terms, so long as the decision at issue "involve[d] a business

judgment made in good faith, upon a reasonable basis, and within the scope of [such debtor's]

7

authority under the [Bankruptcy] Code." In re Curlew Valley Assocs., 14 B.R. 506, 513-14

(Bankr. D. Utah 1981).

      17.    Moreover, Bankruptcy Code section 364(c) provides:

> If the trustee is unable to obtain unsecured credit allowable
> under section 503(b)(1) of this title as an administrative
> expense, the court, after notice and a hearing, may
> authorize the obtaining of credit or the incurring of debt —
>   (1)   with priority over any or all administrative expenses
>       of the kind specified in section 503(b) or 507(b) of
>       this title;
>   (2)   secured by a lien on property of the estate that is not
>       otherwise subject to a lien; or
>   (3)   secured by a junior lien on property of the estate
>       that is subject to a lien.

11 U.S.C. § 364(c). Indeed, section 364(c) financing is appropriate when the debtor in

possession is unable to obtain unsecured credit allowable as an ordinary administrative claim.

See In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must

show that it has made a reasonable effort to seek other sources of financing under sections 364(a)

and (b) of the Bankruptcy Code); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa.

1987) (secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice

and hearing, upon showing that unsecured credit cannot be obtained). For the reasons set forth

below, the decision to amend the DIP Facility through the Second DIP Facility Amendment is

supported by the sound and reasonable business judgment of the Borrowers and is justified by

the facts and circumstances. Accordingly, consistent with the foregoing authority and the

reasons set forth below, the amendment of the DIP Facility by the Second DIP Facility

Amendment should be approved.

      18.    The Borrowers continue to wind-down their affairs and liquidate their

assets, and are currently in the process of marketing and consummating the sales of certain

assets. However, a significant portion of the assets being marketed are subject to the liens under

the DIP Facility (the "Collateral") or are subject to liens of other parties. Pursuant to the terms of the DIP Facility, the Borrowers are required to apply the proceeds from the sale of Collateral to reduce the principal amount outstanding under the DIP Facility. Therefore, because amounts are outstanding under the DIP Facility, the Borrowers are unable to use the proceeds from the sale of Collateral to fund their operations. Moreover, the Borrowers currently do not have availability under the DIP Facility. Accordingly, absent approval of the Second DIP Facility Amendment, the Debtors may not have access to the cash necessary to fund operations and their efforts to market and liquidate the remaining assets.

19.    Compounding the foregoing problem is the fact that  the DIP Facility is currently set to expire on the one-year anniversary of the Petition Date, August 6, 2008 (the "Maturity Date"). Absent the extension contained in the Second DIP Facility Amendment, the Borrowers would be required to pay all outstanding obligations under the DIP Facility on the Maturity Date. The Borrowers are marketing and negotiating sales of the majority of the remaining Collateral, but such sales will not be consummated, and the Borrowers will not receive the proceeds therefrom, until after the current Maturity Date. The Second DIP Facility Amendment will provide the Borrowers with a three-month extension of the Maturity Date (the "Extension"). During the Extension, the Borrowers contemplate that they will complete an orderly disposition of their remaining assets which will generate funds to (i) satisfy their obligations under the DIP Facility, and (ii) fund the wind-down of their estates and the process of confirming their chapter 11 plan(s).

20.    The Borrowers have extensively pursued a new post-petition financing arrangement, and have had discussions with nine potential lenders. However, essential elements to any new financing would be that the new lender provide funds to both meet the Borrowers

9

future funding requirements and "take out" the existing indebtedness due under the DIP Facility. In light of the current financial and economic conditions, the Debtors attempts to obtain a new post-petition credit facility were unsuccessful. The other alternative pursued by the Borrowers, was the negotiation of an extension and/or amendment of the DIP Facility. The Borrowers were able to negotiate (i) an extension of the existing DIP Facility to allow the Borrowers to continue with the orderly sales of the Collateral and other assets, and (ii) an amendment to the DIP Facility to allow the Borrowers the additional liquidity needed to propose and confirm their chapter 11 plan(s).

21.    As set forth above, the Debtors engaged numerous parties in discussions regarding alternative post-petition financing, but were unable to find any party willing to provide them with a new post-petition financing facility, especially as to timetable required under the current circumstances of these cases. Accordingly, the Borrowers submit that entry into the Second DIP Facility Amendment is within their sound business judgment, in that it grants an extension of the Maturity Date for a further three months, allows the Borrowers to complete an orderly liquidation of their assets and provides the Borrowers with the funds needed to pursue confirmation of their chapter 11 plan(s).

22.    In exchange for the agreement to amend the DIP Facility through the terms of the Second DIP Facility Amendment, the Borrowers have agreed (i) to pay the Administrative Agent a fee of $750,000, and (ii) to increase the interest rate under the DIP Facility to a rate effectively equal to LIBOR plus twelve (12%) percent. The Debtors believe that the payment of the fee and the increase in the interest rate under the DIP Facility is reasonable and justified under the circumstances.

10

23.    Moreover, the terms and conditions of the Second DIP Facility Amendment are fair and reasonable and were negotiated by the parties in good faith and at arm's length.  Accordingly, the Administrative Agent and the Lenders should be afforded the benefits of Bankruptcy Code section 364(e) with respect to the postpetition financing under the Second DIP Facility Amendment.

24.    Absent approval of the Second DIP Facility Amendment, the Borrowers' wind-down efforts may come to a standstill causing immediate and irreparable harm to the Borrowers, their creditors and estates and other parties in interest.  Therefore, the Borrowers submit that approving the Second DIP Facility Amendment is within their business judgment and, moreover, is in the best interest of the Borrowers' estates, creditors and parties in interest.

B.    The Interim Approval Should be Granted

25.    Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Borrowers' estates.

26.    The Borrowers request that the Court hold and conduct an interim hearing immediately to consider entry of the proposed Interim Order and to grant the relief set forth therein and summarized above.  This relief will enable the Borrowers to operate their businesses in a manner that will enable them to preserve and maximize the value of their assets and therefore avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

11

## NOTICE

27.    Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to Bank of America, N.A., as administrative agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (d) counsel to the Purchaser and Administrative Agent; and (e) all parties entitled to notice under Local Rule 2002-1(b). The Borrowers submit that, under the circumstances, no further notice of the hearing is necessary.

## CONCLUSION

WHEREFORE, the Borrowers respectfully request that the Court enter the Interim Order, substantially in the form annexed hereto as Exhibit B, (i) granting the relief requested herein on an interim basis, (ii) scheduling the Final Hearing, and (iii) granting such other relief as is just and proper.

Dated: Wilmington, Delaware
      August 1, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

## EXHIBIT A

### Second DIP Facility Amendment

SECOND AMENDMENT AGREEMENT dated as of August [5], 2008 (this "Amendment Agreement"), by and among American Home Mortgage Investment Corp., as a debtor and a debtor-in-possession, a Maryland corporation (the "Parent"), the affiliates of the Parent set forth in the Loan Agreement referred to below, each as a debtor and a debtor-in-possession (together with the Parent, individually a "Borrower" and, collectively, the "Borrowers"), the lenders party hereto (each individually a "Lender" and, collectively, the "Lenders") and WLR Recovery Fund III, L.P., a Delaware limited partnership, as administrative agent for the Lenders (in such capacity, the "Administrative Agent") under the Debtor-in-Possession Loan and Security Agreement August 6, 2007 (as amended and as the same may be further amended, amended and as the same may be further amended, amended and restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), by and among the Borrowers, the Lenders and the Administrative Agent, as in effect on the date hereof.

WHEREAS, the Borrowers have requested that the Administrative Agent and the Lenders make certain amendments to the Loan Agreement;

NOW, THEREFORE, each Borrower, each of the undersigned Lenders and the Administrative Agent hereby agree as follows:

SECTION 1.    Defined Terms. Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Loan Agreement, as amended hereby. As used in this Amendment Agreement, the following terms shall have the meanings set forth below:

"Second Amendment Interim Effective Date" means the date upon which (a) the Bankruptcy Court has entered the Second Amendment Interim Order, and (b) the Borrowers have satisfied the conditions set forth in Section 6 of this Amendment Agreement.

"Second Amendment Interim Order" means an interim order in the form attached hereto as Exhibit A.

"Second Amendment Final Effective Date" means the date upon which (a) the Bankruptcy Court has entered the Second Amendment Final Order, and (b) the Borrowers have satisfied the conditions set forth in Section 7 of this Amendment Agreement.

"Second Amendment Final Order" means a final order in a form acceptable to the Administrative Agent.

SECTION 2.    Amendments to Loan Agreement as of the Second Amendment Interim Effective Date. On the Second Amendment Interim Effective Date, the definition of "Maturity Date" as set forth in Section 1 of the Loan Agreement shall be amended to delete clause (b) therefrom and insert in place thereof the following: "(b) August 18, 2008".

SECTION 3.    Amendments to Loan Agreement as of the Second Amendment Final Effective Date  On the Second Amendment Final Effective Date:

(a)    Each of (x) the third paragraph of the recitals to the Loan Agreement, and (y) Schedule B to the Loan Agreement, shall be amended by replacing each reference therein to "$35,000,000" with a reference to $30,000,000".

(b)    Section 1.01 of the Loan Agreement is hereby amended, effective as of August 6, 2008, to replace the following definitions in their entirety:

"Applicable Margin" means 12.00% per annum.

(c)    The definition of "Maturity Date" as set forth in Section 1 of the Loan Agreement shall be amended to delete clause (b) therefrom and insert in place thereof the following: "(b) November 5, 2008".

(d)    Section 2.01 of the Loan Agreement is hereby amended and restated in its entirety as follows:

"2.01    Loans.  Subject to fulfillment of the conditions precedent set forth in Sections 5.01 and 5.02 hereof, and provided that no Default or Event of Default shall have occurred and be continuing hereunder, each Lender hereby severally agrees, from time to time, on the terms and conditions of this Loan Agreement and the other Loan Documents, to make loans (individually, a "Loan"; collectively, the "Loans") to the Borrowers in Dollars, on any Business Day (but the Borrowers will endeavor to limit requests for Loans to not more frequently than once weekly) from and including the Closing Date to but excluding the Maturity Date in an aggregate principal amount at any one time outstanding not to exceed such Lender's Pro Rata Share of the Total Commitment as in effect from time to time. Subject to the terms and conditions of this Loan Agreement, during such period the Borrowers may borrow, repay and reborrow Loans hereunder. In no event shall the Lenders be obligated to make a Loan when any Default or Event of Default has occurred and is continuing, and in no event shall the aggregate principal amount of all Loans outstanding at any time exceed an amount equal to $30,000,000, as reduced from time to time in accordance with Section 2.06 (the amount maximum amount available to be borrowed pursuant to this Section 2.01 shall be referred to herein as the "Maximum Credit"); provided, further, that at all times prior to the Final Order, the Maximum Credit shall equal the Interim Amount."

(e)    Section 7.11 of the Loan Agreement is hereby amended and restated in its entirety as follows:

Section 7.11    Use of Proceeds; Additional Interest Reserve.

(a)    The Borrowers will use the proceeds of the Loans to finance working capital and for other general corporate purposes of the Borrowers in accordance with the Budget and to fund Lender Expenses and fees pursuant to Section 3.07 and the repayment of any other Obligations.

(b)    On each day commencing on an after August 19, 2008, the Borrowers shall have deposited, and caused to be maintained, at least an amount equal to all interest payments (based on the aggregate principal of Loans outstanding on such day and using the interest rate applicable to the Loans as of such day) due and payable through November 5, 2008.

SECTION 4.   Consent. Prior to the date of this Amendment Agreement, the Borrowers entered into a transaction with Beltway Capital, LLC ("Beltway") pursuant to which the Borrowers sold certain non-performing loans to Beltway resulting net cash proceeds to the Borrowers in an aggregate amount of up to $10,577,113.01 (the "Beltway Proceeds"). The Borrowers have requested that, notwithstanding Section 2.06 or anything else in the Loan Agreement to the contrary, the Borrowers be permitted to retain the Beltway Proceeds and use the Beltway Proceeds for working capital and other corporate purposes. In connection with the foregoing, the Lenders and the Administrative Agent hereby agree that:

(a)   effective upon the Second Amendment Interim Effective Date, the Borrowers may retain the Beltway Proceeds and use an aggregate amount of such proceeds not in excess of $9,000,000 for working capital and other corporate purposes so long as (i) on or before the Second Amendment Interim Effective Date the Borrowers shall have applied the proceeds of any other assets sale which constituted Collateral and are being held in escrow by the Borrowers in repayment of the Loans in accordance with the Loan Agreement, and (ii) the Borrowers do not request any Loan at any time from the Second Amendment Interim Effective Date until the Second Amendment Final Effective Date; and

(b)   effective upon the Second Amendment Final Effective Date, the Borrowers may retain the remaining Beltway Proceeds and use such proceeds for working capital and other corporate purposes.

SECTION 5.   Fees. The Borrower shall pay the following non-refundable amendment fees to each Lender:

(a)   on the Second Amendment Interim Effective Date, the Borrower shall pay to each Lender an amendment fee in an amount equal to 2.5% times $9,000,000; and

(b)   on the Second Amendment Final Effective Date, the Borrower shall pay to each Lender an amendment fee in an amount equal to 2.5% times $21,000,000.

SECTION 6.   Conditions to Second Amendment Interim Effective Date. The provisions of this Amendment Agreement that are to become effective as of the Second Amendment Interim Effective date shall become effective on the date that the following conditions precedent have been satisfied:

(a)   Payment of Fees. The Lenders shall have received the fees required to be paid pursuant to Section 5(a) hereof.

(b)   Court Order. The Bankruptcy Court shall have entered the Second Amendment Interim Order.

SECTION 7.   Conditions to Second Amendment Final Effective Date. The provisions of this Amendment Agreement that are to become effective as of the Second Amendment Final Effective date shall become effective on the date that the following conditions precedent have been satisfied:

(a)   Payment of Fees. The Lenders shall have received the fees required to be paid pursuant to Section 5(b) hereof.

(b)    Court Order.  The Bankruptcy Court shall have entered the Second Amendment Final Order.

SECTION 8.    Effectiveness; Counterparts.  This Amendment Agreement shall become effective when counterparts hereof which, when taken together, bear the signatures of each of the Borrowers, the Administrative Agent and the Lenders shall have been received by the Administrative Agent.  This Amendment Agreement may not be amended nor may any provision hereof be waived except pursuant to a writing signed by each of the Borrowers, the Administrative Agent and the Lenders.  This Amendment Agreement may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute but one contract.  Delivery of an executed counterpart of a signature page of this Amendment Agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart of this Amendment Agreement.

SECTION 9.    Representations.    Each Borrower represents and warrants to the Administrative Agent and each Lender that, after giving effect to this Amendment Agreement, (a) the representations and warranties set forth in Section 6 of the Loan Agreement are true and correct in all material respects on and as of the Second Amendment Effective Date, except to the extent such representations and warranties expressly relate to an earlier date, and (b) no Default or Event of Default has occurred and is continuing.

SECTION 10.  Effect of Amendment.    Except as expressly set forth herein, this Amendment Agreement shall not by implication or otherwise limit, impair, constitute a waiver of, or otherwise affect the rights and remedies of the Lenders or the Administrative Agent under the Loan Agreement, and shall not alter, modify or in any way affect any of the terms, conditions, obligations, covenants, guarantees, pledges, grants of security or other agreements contained in the Loan Agreement, all of which are ratified and affirmed in all respects and continue in full force and effect.  Nothing herein shall be deemed to entitle any Borrower to a consent to, or a waiver, amendment, modification or other change of, any of the terms, conditions, obligations, covenants, guarantees, pledges, grants of security or other agreements contained in the Loan Agreement in similar or different circumstances.    This Amendment Agreement shall apply and be effective only with respect to the provisions of the Loan Agreement specifically referred to herein.  Each Borrower hereby acknowledges receipt of and consents to the terms of this Amendment Agreement.

SECTION 11.  Notices.  All notices hereunder shall be given in accordance with the provisions of Section 11.03 of the Loan Agreement.

SECTION 12.    Applicable Law; Waiver of Jury Trial.  (A) THIS AMENDMENT AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

(B)    EACH PARTY HERETO HEREBY AGREES AS SET FORTH IN SECTIONS 11.10 AND 11.11 OF THE LOAN AGREEMENT AS IF EACH SUCH SECTION WERE SET FORTH IN FULL HEREIN.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment Agreement to be executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

WLR RECOVERY FUND III, L.P.,
as a Lender and as the Administrative Agent

By:    WLR Recovery Associates III LLC,
its General Partner

By: _____
Name:
Title:

AMERICAN HOME MORTGAGE
INVESTMENT CORP.

By: _____
Name:
Title:

AMERICAN HOME MORTGAGE
HOLDINGS, INC.

By: _____
Name:
Title:

AMERICAN HOME MORTGAGE CORP.

By: _____
     Name:
     Title:


AMERICAN HOME MORTGAGE
ACCEPTANCE, INC.

By: _____
     Name:
     Title:


AMERICAN HOME MORTGAGE
VENTURES LLC

By: _____
     Name:
     Title:


HOMEGATE SETTLEMENT SERVICES,
INC.

By: _____
     Name:
     Title:


GREAT OAK ABSTRACT CORP.

By: _____
     Name:
     Title:

Exhibit A

Form of Second Amendment Interim Order

NYI-4109980v4
DB02:7045393.1

066585.1001