IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., a Delaware corporation, | ) | Case No. 07-11047 (CSS) |
| et al.[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Obj. Deadline: September 8, 2008 at 4:00 p.m. (ET)** |
| ------------------------------------------------------- | ) | **Hearing Date: September 15, 2008 at 10:00 a.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
FOR AN ORDER APPROVING AND AUTHORIZING
STIPULATION RESOLVING VICOM COMPUTER SERVICES, INC.'S
CLAIMS AGAINST THE DEBTORS AND FOR OTHER RELIEF**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by

this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules

of Bankruptcy Procedure ("Bankruptcy Rules") and sections 105(a), 363 and 506 of title 11 of

the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving a

Stipulation Resolving Vicom Computer Services, Inc.'s Claims Against the Debtor (the

"Stipulation") between the Debtors and Vicom Computer Services, Inc. ("Vicom") and for other

relief, a copy of which is attached as Exhibit A to the proposed form of Order annexed hereto

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

(the "Order"). The Debtors and Vicom are referred to herein as the "Parties." In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Rule 9019(a) and sections 105(a), 363 and 506 of the Bankruptcy Code.

## GENERAL BACKGROUND

2.        On August 6, 2007 (the "Commencement Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.        The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.        On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). No trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

5.        Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage

---

[2]        The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief (the "First Day Declaration") [Docket No. 2], which is incorporated by reference.

loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors. AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles. Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6.    As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion. As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia. Certain of the Debtors originated mortgages through a network of loan origination offices. In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents. AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7.    In the weeks prior to the Commencement Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

8.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August

3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

9.      Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

10.      On the Commencement Date, the Debtors filed a motion [Docket No. 11], seeking authority, *inter alia*, to sell substantially all assets relating to the Debtors' mortgage loan servicing business (the "Servicing Business"). After a week long trial that commenced on October 15, 2007, by Order dated October 30, 2007 [Docket No. 1711], the Court approved the sale of the Servicing Business to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and supplemented, and including all schedules, exhibits, and attachments thereto).

## RELEVANT BACKGROUND

11.      Vicom was a supplier of computer equipment utilized by Debtors.

12.      On or about October 16, 2007, Vicom filed the Motion of Vicom Computer Services, Inc. for Reclamation of Goods Pursuant to 11 U.S.C. § 546(c) or, in the Alternative, for Allowance and Immediate Payment of Administrative Claim Pursuant to 11 U.S.C. § 503(b) [Docket No. 1571]("the Vicom Motion). In the Vicom Motion, Vicom sought reclamation of goods with an asserted value of $76,969.07. In the alternative, Vicom sought immediate payment of an administrative expense claim of $76,969.07. In addition to the claims asserted in the Vicom Motion, Vicom also filed a general, unsecured claim of $105,565.61 (the GUC"). The GUC includes the same goods that were asserted in the Vicom Motion but also

includes additional claims for $27,513.8 and $1,080.70 that were not included as part of the Vicom Motion.

      13.     The Parties have been negotiating the Vicom Motion and the GUC.

## SUMMARY OF THE STIPULATION

      14.     The Debtors and ACRC believe it is in their respective best interests to modify the Agreement and resolve the Vicom Motion and the GUC , and other issues that exist between them in accordance with the Vicom Stipulationt.  The effectiveness of the Vicom Stipulation is conditioned upon approval of the Bankruptcy Court.

      15.     The Term Sheet's salient economic provisions can be summarized as follows: [3]

- Vicom is granted a final, allowed administrative expense claim for $40,000.00.  Debtors will pay the administrative claim allowed within 10 business days of the entry of a final. Non-appealable order approving this settlement by the Court.

- Vicom, upon receipt of the payment of the administrative expense claim provided in the Stipulation, will release all claims against the Debtors (but expressly reserves defenses to any claims under chapter 5 of the Bankruptcy Code).

- The Debtors will release all claims against Vicom except that any and all claims under chapter 5 of the Bankruptcy Code are preserved.

## RELIEF REQUESTED

      16.     By this Motion, the Debtors respectfully request entry of an order approving the Vicom Stipulation pursuant to Bankruptcy Rule 9019 and sections 105(a), 363 and 506 of the Bankruptcy Code.  The Debtors have weighed the costs, risks and disruption that

---

[3]     The summary of the Term Sheet is qualified in its entirety by the Term Sheet.  If there are any inconsistencies between the summary contained herein and the Term Sheet, the Term Sheet shall control.  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Term Sheet.

would arise from any litigation over the Vicom Motion and the GUC . In the Debtors' judgment, the Vicom Stipulation is fair and reasonable and serves the best interests of the Debtors, their estates and creditors.

## BASIS FOR RELIEF REQUESTED

17.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

18.    In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

19.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved.  The four enumerated factors are:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

20.     The decision to approve a settlement "is within the sound discretion of the bankruptcy court."  In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389.  The bankruptcy court should not substitute its judgment for that of the debtor.  See In re Neshaminy Office Building Associates, 62 B.R. at 803.  The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness.  See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

21.     The Debtors respectfully request that the Court approve the Vicom Stipulation because the Vicom Stipulation lies well above the lowest point in the range of reasonable potential litigation possibilities.  In addition, each of the applicable Martin factors

weighs in favor of approving the Term Sheet. Accordingly, the Vicom Stipulation should be approved pursuant to Bankruptcy Rule 9019.

### A.        The Probability Of Success In Litigation

22.        Absent the Term Sheet, the disputes between the Debtors and Vicom would have to be litigated before the Court with no assurances of a favorable outcome. The resolution of these disputes with Vicom under the terms of the Vicom Stipulation is a favorable outcome because it will save the Debtors significant time and expense in any attendant litigation.

### B.        The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It

23.        The Vicom Stipulation satisfies the second factor in Martin's four-factor test largely for the reasons set forth above in the discussion of the Debtors' probability of success in litigation. Litigation over the Vicom Motion and the GUC would involve substantial legal issues and a potentially lengthy litigation, which would be expensive for the estate and inconvenient for the parties. .

### C.        The Paramount Interest Of Creditors

24.        Entry into the Vicom Stipulation serves the paramount interest of creditors of the Debtors. The Vicom Stipulation's resolution of the Vicom Motion and the GUC represents a savings for the creditors by obviating litigation, thereby saving the expenses attendant to such litigation, while at the same time resolving the Vicom Motion and the GUC for significantly less than the asserted amounts. Therefore, the third factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the Term Sheet.

### D.        The Likely Difficulties In Collection

25.        Finally, the fourth factor enunciated by the Third Circuit in Martin is not applicable under these circumstances.

E.      **Summary**

26.      The resolution and compromise of the disputes and issues between the

Debtors and Vicom as embodied in the Vicom Stipulation  (i) is fair and equitable; (ii) represents

a settlement that rests well above the lowest point in the reasonable range of potential litigation

outcomes; (iii) obviates the expense, delay, inconvenience and uncertainty that would attend any

litigation of the Parties' issues; and (iv) advances the paramount interests of creditors.

Therefore, the Vicom Stipulation satisfies Bankruptcy Rule 9019 and should be approved by the

Court

## NOTICE

27.      Notice of this Motion will be provided to (i) the United States Trustee for

the District of Delaware; (ii) counsel to Bank of America, N.A., as Administrative Agent for the

lenders under that certain Credit Agreement dated August 30, 2004; (iii) Counsel to the Agent

for the Debtors' Postpetition Lender; (iv) counsel to the Creditors' Committee; (v) counsel to

Vicom; and (vii) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is

required.

## NO PREVIOUS REQUEST

28.      No prior request for the relief sought in this Motion has been made to this

or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court issue and enter an

Order, pursuant to Bankruptcy Rule 9019 and sections 105(a), 363 and 506 of the Bankruptcy

Code, (i) approving the Vicom Stipulation, and (ii) granting such other and further relief as may

be just and proper.

Dated:  Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
        August 4, 2008

                                      _____
                                      James L. Patton, Jr. (No. 2202)
                                      Pauline K. Morgan (No. 3650)
                                      Curtis J. Crowther (No. 3238)
                                      The Brandywine Building
                                      1000 West Street, 17th Floor
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 571-6600
                                      Facsimile: (302) 571-1253

                                      Counsel for Debtors and Debtors-in-Possession