## EXHIBIT 1

**Stipulation**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case Nos. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | ) | |
| | ) | Related Docket Nos. 554, 2002, 2284, |
| Debtors, | ) | 2855 and 3699 |
| | ) | |
| | ) | |

### STIPULATION OF SETTLEMENT AMONG (i) THE DEBTORS, (ii) BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT, AND (iii) THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

American Home Mortgage Holdings, Inc., a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[1] Bank of America, N.A., as Administrative Agent (in such capacity, the "Administrative Agent") for itself and on behalf of Deutsche Bank National Trust Company, as Collateral Agent (in such capacity, the "Collateral Agent") and certain lenders (in such capacities, the "Pre-Petition Secured Lenders" and, together with the Administrative Agent and the Collateral Agent, the "Pre-Petition Secured Parties"), and the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Committee"), by and through their respective counsel, hereby stipulate and agree (the "Stipulation") as follows:

---

[1]    The Debtors are American Home Mortgage Holdings, Inc. ("AHMH"), American Home Mortgage Acceptance, Inc. ("AHMA"), American Home Mortgage Corp. ("AHMC"), American Home Mortgage Investment Corp. ("AHMIC"), AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM Servicing"), American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

**WHEREAS:**

A. On August 6, 2007 (the "Petition Date"), the Debtors filed with this Court (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code.

B. On August 14, 2007, the Office of the United States Trustee formed the Committee.

C. On September 4, 2007, this Court entered its *Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* [D.I. 554] (as subsequently amended by D.I.s 2002, 2284, 2855, 3142, 3172 and 3699, the "Cash Collateral Order"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Cash Collateral Order.

D. Pursuant to the Cash Collateral Order, (i) the Debtors' agreements, admissions and releases in Paragraphs C, D, E, F and G of the Cash Collateral Order are binding upon the Debtors and all other parties in interest for all purposes; (ii) the obligations of the Debtors under the Loan Documents constitute allowed claims for all purposes; (iii) the Pre-Petition Secured Parties' security interests in and liens upon the Pre-Petition Collateral are deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (iv) the Indebtedness and the Pre-Petition Secured Parties' security interests and liens on the Pre-Petition Collateral are not subject to any other challenge by the Debtors, the Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (the "Prior Debtor Releases").

E. On April 14, 2008, the Court entered its Order approving the *Final Stipulation and Order Resolving All Remaining Issues With Respect to the Final Order (i) Authorizing Debtors'*

2

*Limited Use of Cash Collateral and (ii) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* [D.I. 3699] (the "Committee Settlement"). Subject to the terms of the Committee Settlement, the Committee is bound by the Prior Debtor Releases (the "Prior Committee Releases," and together with the Prior Debtor Releases, the "Prior Releases").

F.  The Debtors have asserted certain claims against the Pre-Petition Secured Parties that the Debtors contend were not released or subject to the Prior Debtor Releases.    The Administrative Agent disputes the validity of these claims and contends that as a result of the Prior Releases, the Debtors and the Committee waived and released the right to pursue any such claims.

G.  Certain of the Collateral consists of first and second lien residential mortgage loans and home equity lines of credit together with all servicing rights, other rights, benefits, proceeds and obligations arising therefrom or in connection therewith (collectively, the "Mortgage Loans").

H.  The Administrative Agent has requested that the Debtors transfer complete dominion and control over and discretion with respect to the Mortgage Loans, including the transfer of the servicing of the Mortgage Loans, to Bank of America, N.A. or its designee (in such capacity, the "New Servicer").

I.  The Debtors, the Administrative Agent and the Committee have negotiated (i) a mutually acceptable arrangement for the transfer of complete dominion and control over and discretion with respect to the Mortgage Loans to the New Servicer, (ii) certain modifications to the Committee Settlement and (iii) a resolution of all outstanding issues among the Debtors, the Committee and the Pre-Petition Secured Parties, including (x) treatment of all claims asserted in the master proof of claim filed by the Administrative Agent on behalf of the Pre-Petition Secured

3

Parties on January 10, 2008 (Claim No. 8165) (the "Master Proof of Claim"), (y) all of the Debtors' alleged outstanding claims against the Pre-Petition Secured Parties, and (z) the other matters described below, subject to approval by the Bankruptcy Court, pursuant to the terms set forth below. Other than the claims and disputes addressed in this stipulation of settlement (the "Stipulation"), the Administrative Agent is not aware of any outstanding Claims (as such term is defined in section 101(5) of the Bankruptcy Code) of the Pre-Petition Secured Parties against the Debtors arising under or in connection with the Loan Documents or the Cash Collateral Order.

**NOW THEREFORE**, the Debtors, the Administrative Agent and the Committee, for good and valuable consideration, the receipt of which is acknowledged, hereby stipulate and agree as follows:

1. Effectiveness.    This Stipulation shall become effective on the date that this Stipulation (i) has been approved by the Bankruptcy Court pursuant to an Order, in a form reasonably acceptable to the Administrative Agent and the Debtors (the "Approval Order") and (ii) the Approval Order has become a final, non-appealable Order (such date, the "Effective Date"). In the event that the Effective Date does not occur on or before August 17, 2008 (the "Settlement Termination Date"), this Stipulation shall be deemed null and void and shall have no force or effect; *provided, however,* that the Settlement Termination Date may be extended with the consent of the Debtors and the Administrative Agent, which consent shall not be unreasonably withheld.

2. Resolution of All Outstanding Issues.    The Debtors and the Committee hereby confirm they have no claims under the Loan Documents, against the Pre-Petition Secured Parties or with respect to the Collateral other than those being resolved pursuant to this Stipulation.

**4**

3. <u>Reaffirmation of Prior Agreements, Admissions and Releases</u>. The Debtors and the Committee hereby (i) reaffirm the Prior Releases in all respects and for all purposes as of the date of this Stipulation, and (ii) agree that upon the effectiveness of this Stipulation, they shall not assert any other or further claims under the Loan Documents, against the Pre-Petition Secured Parties or with respect to the Collateral that were released pursuant to the Prior Releases or are being released pursuant to this Stipulation.

4. <u>Transfer of the Mortgage Loans</u>.

(a) As soon as reasonably practicable after the Effective Date, the New Servicer shall receive complete dominion and control over and discretion with respect to the Mortgage Loans and all servicing rights related thereto, including the management, reworking and/ or modification of the Mortgage Loans, the right to reduce principal balances of any Mortgage Loans, and the right to transfer servicing of the Mortgage Loans, all as though the New Servicer is the owner of the Mortgage Loans.

(b) The New Servicer shall have complete responsibility for making all servicing advances and paying all other amounts required to be paid in connection with servicing the Mortgage Loans that arise from and after the date that control and discretion over the Mortgage Loans are turned over to the New Servicer (the "<u>Mortgage Loan Transfer Date</u>"), including without limitation obligations in respect of lender paid mortgage insurance ("<u>LPMI</u>") arising from and after the Mortgage Loan Transfer Date; *provided, however*, that all such amounts paid or advanced by the New Servicer and all other fees and costs of the New Servicer shall be paid or reimbursed from the first proceeds of Collateral, and to the extent that Collateral proceeds are insufficient, the New Servicer shall be entitled to payment from the Pre-Petition Secured Parties; and *provided further*, that amounts paid to the New Servicer or reimbursed pursuant to this subparagraph (b) shall not be applied to reduce the Pre-Petition Secured Parties' claims under the Master Proof of Claim.

(c) The Mortgage Loan Transfer Date shall occur as soon as reasonably practicable after the Effective Date, but not later than 60 days after the Effective Date; *provided, however*, that the Mortgage Loan Transfer Date may be extended with the consent of the Debtors and the Administrative Agent, which consent shall not be unreasonably withheld. If the Mortgage Loan Transfer Date does not occur by the date that is 30 days after the Effective Date (the "<u>Advance Shift Date</u>"), the Debtors shall be entitled to reimbursement from the Collateral for all amounts paid by the Debtors in respect of servicing advances and other amounts required to be paid in connection with servicing the Mortgage Loans that arise during the

period from the Advance Shift Date until the Mortgage Loan Transfer Date; *provided, further,* that amounts paid in respect of such reimbursement shall not be applied to reduce the Pre-Petition Secured Parties' claims asserted in the Master Proof of Claim.

(d) The Debtors shall have no obligations with respect to the Mortgage Loans that arise from and after the Mortgage Loan Transfer Date.

(e) The transactions contemplated by this paragraph 4 shall be implemented pursuant to such agreements, instruments and other documents the New Servicer and the Administrative Agent deem appropriate, and the Debtors shall execute such agreements, instruments and other documents that may be required to effectuate the transactions contemplated by this paragraph 4.  The Debtors and the Committee agree that the ownership of the Mortgage Loans may be transferred to the Pre-Petition Secured Parties' designee if the Administrative Agent deems it appropriate.  If the New Servicer and the Administrative Agent deem it appropriate for the Debtors to continue to own the Mortgage Loans for any period of time after the Mortgage Loan Transfer Date, all costs (including reasonable professional fees) associated with the continued ownership of the Mortgage Loans by the Debtors or any successor or assign appointed pursuant to a chapter 11 plan after the Mortgage Loan Transfer Date shall be satisfied from the proceeds of Collateral, and amounts paid in respect of such costs shall not be applied to reduce the Pre-Petition Secured Parties' claims asserted in the Master Proof of Claim.

5. <u>Reports</u>. The Administrative Agent shall provide the Debtors, the Committee and any successor or third party appointed pursuant to a confirmed chapter 11 plan with quarterly reports on the application of any Cash Receipts (as defined below) to reduce the claims asserted in the Master Proof of Claim.

6. <u>Resolution of LPMI Dispute</u>.  The Debtors hereby irrevocably waive and release any and all rights and claims against the Pre-Petition Secured Parties with respect to LPMI premiums paid by the Debtors. The Pre-Petition Secured Parties shall retain the approximately $5.45 million in cash that the Administrative Agent is currently holding as a segregated fund pursuant to that certain letter agreement, dated November 16, 2007, a copy of which is annexed hereto as Exhibit A.

7. <u>Resolution of Claims Relating to Designated Bank Accounts</u>.    The Pre-Petition Secured Parties hereby assign to the Debtors the Pre-Petition Secured Parties' rights, liens and claims with respect to the approximately $6.898 million currently in the following bank accounts or escrow accounts: (i) Deutsche Bank Account Nos. 380082; 373093; 381528; 435450; 449393; 446432; and 430617; (ii) The Bank of New York Account No. 8900553944 and (iii) all escrow accounts established pursuant to the Order Approving and Authorizing the Stipulation Between the Debtors and Calyon New York Branch, As Administrative Agent, dated May 1, 2008 [D.I. 3918] (collectively, the "<u>Designated Bank Accounts</u>").

8. <u>Pre-Petition Setoffs and Post-Petition Receipts</u>. To the extent not already waived and released pursuant to the Prior Releases, the Debtors hereby irrevocably waive and release any and all rights and claims against the Pre-Petition Secured Parties with respect to amounts paid to the Pre-Petition Secured Parties or applied to the obligations owing under the Loan Documents, including but not limited to (i) the pre-petition setoffs as provided for in the Loan Documents against $27,520,068, including $5,869,206.08 held prior to the Petition Date in certain Designated Bank Accounts; (ii) the postpetition transfers to the Administrative Agent of $2,599,619.00 from certain Designated Bank Accounts; and (iii) the postpetition transfer to the Administrative Agent of approximately $1,500,000 allegedly representing servicing fees that are the subject of the dispute between certain of the Debtors and Calyon New York Branch in the adversary proceeding captioned *Calyon New York Branch, et al. v. American Home Mortgage Corp., et al.* Adv. No. 07-51704 (CSS) (the "<u>Calyon Litigation</u>").

9. <u>Servicing Advances Made By the Debtors</u>.  The Debtors hereby irrevocably waive and release all claims against the Pre-Petition Secured Parties for reimbursement of servicing advances made by the Debtors in connection with the servicing of the Mortgage Loans at any

7

time prior to the Mortgage Loan Transfer Date (the "Servicing Advances"), and the Pre-Petition Secured Parties shall have no obligation to pay or reimburse the Debtors for such Servicing Advances; *provided, however*, that in full satisfaction of the Debtors' claims for reimbursement of Servicing Advances that were purchased by the Purchaser (as defined below) and subsequently repurchased by the Debtors pursuant to the APA (as defined below) (the "Repurchased Advances"), the Debtors shall be entitled to retain from proceeds of Collateral cash in an amount equal to $251,968.45. All amounts collected from and after July, 14 2008 by the Purchaser, the Debtors, the New Servicer or any subsequent servicer on account of the Repurchased Advances shall be paid to the Administrative Agent for the benefit of the Pre-Petition Secured Parties. To the extent that the Stipulation is not approved by the Bankruptcy Court, the Parties shall revert to their pre-Stipulation positions with respect to the Repurchased Advances and shall reconcile amounts retained by the Debtors and amounts paid to the Administrative Agent for the benefit of the Pre-Petition Secured Parties.

10. Reimbursement Claims for Professional Fees and Expenses. Except as expressly provided otherwise in paragraphs 4(e), 13, 14 and 20(e) of this Stipulation, the Debtors hereby irrevocably waive and release all claims against the Pre-Petition Secured Parties for reimbursement of professional fees and expenses incurred by the Debtors, and the Pre-Petition Secured Parties shall have no obligation to pay or reimburse the Debtors for such fees and expenses.

11. Allocation of Calyon Servicing Litigation Proceeds. To the extent the Debtors are entitled to proceeds of any type (including but not limited to cash or State Bond Loans) from the Calyon Litigation with respect to servicing rights, servicing fees or other servicing obligations, whether pursuant to a settlement, litigation or otherwise, the gross proceeds thereof (collectively,

**8**

the "Calyon Servicing Litigation Proceeds") shall be distributed as follows: (i) the Debtors shall be entitled to retain (x) the first $2.6 million in cash proceeds, plus (y) an amount not to exceed in the aggregate $1 million that the Debtors and the Administrative Agent agree is necessary to resolve certain ancillary payment issues (the "Ancillary Payment Amount"); and (ii) all other Calyon Servicing Litigation Proceeds shall be paid or transferred to the Administrative Agent. For the avoidance of doubt, in the event that the Ancillary Payment Amount exceeds $1 million, the Debtors shall bear the cost of such excess amount, and under no circumstances shall such excess amount be included as part of the obligations potentially payable by the Pre-Petition Secured Parties pursuant to paragraph 12 of this Stipulation.

12. **[REDACTED – FILED UNDER SEAL]**

13. DB Appeal. ~~The Administrative Agent shall have complete control and discretion with respect to~~ The Debtors' litigation, settlement or other resolution of the appeal filed by DB Structured Products, Inc. in the United States District Court and any subsequent appeals (collectively, the "Appeal") of the Bankruptcy Court's *Order Pursuant to Sections 105, 363, 364, 365 and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6003, 6006, 7062, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure, (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii)the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief,* dated October 30, 2007 [D.I. 1711] ("Sale Order") shall be subject to the Administrative Agent's consent. The Pre-Petition Secured Parties and the Debtors or any successor or assign appointed pursuant to a chapter 11 plan shall be entitled to reimbursement from the Collateral for their respective costs in connection with the Appeal from and after the Effective Date of this Stipulation and shall be entitled to reimbursement of such costs from the proceeds of Collateral.  Such reimbursement

9

shall not be applied to reduce the Pre-Petition Secured Parties' claims asserted in the Master Proof of Claim.

14. <u>Cure Claims Escrow</u>.  The Cure Claims Escrow will be administered as provided in the Sale Order, subject to the following modifications:

(a) Responsibility for litigating or otherwise resolving specific claims against the Cure Claims Escrow shall be allocated between the Administrative Agent and the Debtors and set forth on Exhibit B hereto.

(b) At the Administrative Agent's request, the Debtors shall provide reasonable cooperation to the Administrative Agent in connection with litigation of all claims against the Cure Claims Escrow.

(c) The Administrative Agent and the Debtors or any successor or assign appointed pursuant to a chapter 11 plan shall be entitled to reimbursement from the Collateral for their respective costs in connection with litigating or otherwise resolving claims against the Cure Claims Escrow, and amounts paid in respect of such reimbursement shall not be applied to reduce the Pre-Petition Secured Parties' claims asserted in the Master Proof of Claim.

15. <u>Designated REO Property</u>.  The agreement between the Administrative Agent and the Committee with respect to the Designated REO Property (as defined in the Committee Settlement), which is set forth in paragraph 2 of the Committee Settlement, shall remain in full force and effect.

16. <u>Sharing of Cash Receipts</u>.  Paragraph 3 of the Committee Settlement shall have no force and effect and shall be replaced in its entirety with the following:

(a) Except as provided otherwise in this Stipulation, all cash received by the Administrative Agent from and after the Petition Date on account of the Pre-Petition Secured Parties' claims under the Loan Documents, including amounts previously paid by the Debtors pursuant to the Cash Collateral Order for reimbursement of the Administrative Agent's fees and expenses, and regardless of whether such amounts are paid (i) by the Debtors, (ii) by a trustee or liquidating trustee appointed by the Bankruptcy Court or (iii) from proceeds of Collateral, shall be applied as follows: <u>first</u>, to permanently reduce the amount of the Pre-Petition Secured Claims outstanding as of the Petition Date in the amount of $1,082,867,194.76 and asserted in the Master Proof of Claim (the "<u>Benchmark Pre-Petition Claim</u>"); <u>second</u>, to reduce other unsatisfied claims arising prior to

10

the Petition Date asserted in the Master Proof of Claim, if any, and third, to satisfy post-petition interest, fees, expenses and any other obligations under the Loan Documents arising from and after the Petition Date. All obligations referred to in the preceding sentence are referred to in this Stipulation collectively as the "Total Lender Obligations," and all cash applied to reduce the Total Lender Obligations as provided in the preceding sentence is referred to in this Stipulation as "Cash Receipts."

(b) The Administrative Agent and the Debtors hereby agree, and the Committee hereby agrees not to dispute, that the outstanding amount of the Benchmark Pre-Petition Claim as of July 2, 2008, after giving effect to the application of Cash Receipts as provided in subparagraph a. above, is $468,128,691.58

(c) If, after all Cash Receipts have been indefeasibly paid to the Pre-Petition Secured Parties and irrevocably applied to the permanent reduction of the Benchmark Pre-Petition Claim, there remain outstanding any unsatisfied claims arising prior to the Petition Date asserted in the Master Proof of Claim (such unsatisfied claims, the "Deficiency Claim"), the Pre-Petition Secured Parties shall have an allowed unsecured claim against each of AHMIC, AHM Servicing, AHMC, AHMA and AHMH, in each case equal to the lesser of (i) $50 million or (ii) 50% of the actual amount of the Deficiency Claim. Each such allowed unsecured claim shall be treated in accordance with any applicable chapter 11 plan of reorganization of the Debtors and shall be *pari passu* with all other allowed unsecured claims against the Debtors' estates, *provided, however*, that the Pre-Petition Secured Parties shall not be entitled to receive on account of such allowed unsecured claims any distributions from the Designated REO Properties.

(d) Any proceeds of the Designated REO Properties (after payment of any applicable expenses incurred or advances made in connection therewith) shall be held in trust for the benefit of general unsecured creditors of the Debtors, to be distributed pursuant to a confirmed chapter 11 plan or as otherwise ordered by the Bankruptcy Court.

(e) After 100% of the Benchmark Pre-Petition Claim has been indefeasibly paid in full in Cash Receipts, 50% of all additional proceeds of Collateral shall be paid to the Administrative Agent for the benefit of the Pre-Petition Secured Parties and 50% of all additional proceeds of Collateral shall be paid to the Debtors' estates, until 100% of the Total Lender Obligations have been indefeasibly paid in full in Cash Receipts.

(f) After 100% of the Total Lender Obligations have been indefeasibly paid in full in Cash Receipts, all additional proceeds of Collateral shall be paid to the Debtors' estates.

11

17. <u>Certain Outstanding Servicing Sale Proceeds</u>. As provided in Orders previously entered by the Bankruptcy Court, all proceeds from the sale or other disposition of the Debtors' servicing rights and other servicing assets to parties other than the Purchaser, to the extent not already paid, shall be distributed in accordance with the applicable Order.

18. <u>Freddie Mac Servicing Rights</u>. Promptly upon the receipt of a written request of the Administrative Agent, the Debtors shall file and prosecute a motion in this Court for authority to abandon the Debtors' servicing rights with respect to the mortgage loans owned by the Federal Home Loan Mortgage Corporation, and the Debtors shall bear all costs associated with the preparation and prosecution of such motion.

19. <u>Cessation of HELOC Advances</u>. The Debtors agree not to use or authorize the use of Collateral to fund advances to borrowers under home equity lines of credit.

20. <u>State Bond Loans</u>.

    (a) On or before the Effective Date, the Debtors shall provide the Administrative Agent with a list of (i) each Mortgage Loan that was subject as of the Petition Date to an agreement providing for the sale of such Mortgage Loan under a State-sponsored bond program or similar government-subsidized bond program, on account of which the Debtors are owed sale proceeds, principal payments, interest payments and/or other proceeds (the "<u>BofA State Bond Loans</u>") and (ii) each such mortgage loan which is a part of the Calyon Servicing Litigation Proceeds (the "<u>Calyon State Bond Loans</u>," and together with the BofA State Bond Loans, the "<u>State Bond Loans</u>"). With respect to each State Bond Loan, the Debtors shall use their best efforts to provide a list within 10 days after the Effective Date which sets forth the unpaid principal balance, the unpaid amounts owed to the Debtors on account of each State Bond Loan, a description of the Debtors' efforts since the Petition Date to collect proceeds of such State Bond Loan and/or complete the sale of such State Bond Loan, and the status of those efforts.

    (b) The Debtors' standing to seek relief from the Bankruptcy Court with respect to the State Bond Loans, including the right to seek to compel the closing of any uncompleted sale of a State Bond Loan, the right to seek the turnover of proceeds of State Bond Loans and all other rights with respect to the collection of State Bond Loans, shall be delegated to the Administrative Agent or its designee.

(c) At the direction of the Administrative Agent, the Debtors shall deliver all loan files, agreements, records and other documents in the Debtors' possession or control relating to the State Bond Loans to the Administrative Agent or its designee.

(d) At the Administrative Agent's request, the Debtors shall provide reasonable cooperation to the Administrative Agent with respect to the Administrative Agent's efforts to recover proceeds from the State Bond Loans.

(e) The Administrative Agent and its designee, if any, and the Debtors shall each be entitled to reimbursement from the Collateral for their respective costs (including reasonable professional fees) in connection with seeking recovery of value from the State Bond Loans, and amounts paid in respect of such reimbursement shall not be applied to reduce the Pre-Petition Secured Parties' claims asserted in the Master Proof of Claim.

21. Modification of the Cash Collateral Order.  Subject to approval by the Bankruptcy Court, the terms of the Cash Collateral Order, including the Committee Settlement, are hereby modified by this Stipulation and, except as modified hereby, shall remain unaltered.

22. Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction with respect to all disputes arising out of this Stipulation.

23. Headings.  The paragraph headings used in this Stipulation are for ease of reference only and shall not have any substantive or interpretive meaning.

24. Execution.  This Stipulation may be executed in any number of counterparts (including by means of facsimile transmission), each of which when so executed shall be deemed to be an original, and such counterparts together shall constitute and be one and the same instrument.

13



Dated: ~~July~~ August 5, 2008
Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
James L. Patton (No. 2202)
Robert S. Brady (No. 2847)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

*Counsel for the Debtors and Debtors in
Possession .*

POTTER ANDERSON & CORROON LLP
Laurie Selber Silverstein (No. 2396)
P.O. Box 951
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19899
Telephone: (302) 984-6000

-and-

KAYE SCHOLER LLP
Margot B. Schonholtz
Ana M. Alfonso
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Counsel for Bank of America, N.A. as
Administrative Agent under that
certain Second Amended and Restated
Credit Agreement, dated as of August 10, 2006*

BLANK ROME LLP
Bonnie Glantz Fatell
1201 Market Street Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6423

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Mark T. Power
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Official
Committee of Unsecured Creditors*

14