## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al.*, | Case No.  07-11047 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: August 11, 2008 at 4:00 p.m. (ET)**<br>**Hearing Date: August 18, 2008 @ 10:00 a.m. (ET)** |
| | **Related to Docket No.  5181** |

### RESPONSE OF COUNTRYWIDE BANK, F.S.B.
### TO DEBTORS' THIRTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

Countrywide Bank, F.S.B. (**"Countrywide"**), by and through its undersigned counsel, hereby files this response (the **"Response"**) to the Debtors' Thirteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 (the **"Objection"**). Specifically, Countrywide responds to the extent the Debtors object to Claim No. 9440 (the **"Countrywide Claim"**). In support of this Response, Countrywide respectfully states as follows:

### BACKGROUND

1.      On August 6, 2007 (the **"Petition Date"**) the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the **"Cases"**).

2.      The Court established Friday, January 11, 2008, as the bar date for filing proofs of claim against the Debtors' estates (the **"Bar Date"**).

### FACTS SPECIFIC TO THE COUNTRYWIDE CLAIM

3.      As more fully set forth in the Countrywide Claim, Countrywide and American Home Mortgage Corp. (**"AHM"**) are parties to that certain Mortgage Loan Purchase and Servicing Agreement dated March 14, 2006, including all amendments (the **"2006 Agreement"**),

pursuant to which Countrywide agreed to purchase from time to time, certain mortgage loans identified in the related Purchase Confirmations (as that term is defined in the 2006 Agreement). A true and correct copy of the 2006 Agreement (exclusive of all amendments) was attached to the Countrywide Claim as Exhibit B.

4.    Countrywide and AHM are also parties to that certain Mortgage Loan Purchase and Interim Servicing Agreement dated April 27, 2007, including all amendments (the **"2007 Agreement"** and collectively, with the 2006 Agreement, the **"Purchase Agreements"**), pursuant to which Countrywide agreed to purchase from time to time, certain mortgage loans identified in the related Purchase Confirmations (as that term is defined in the 2007 Agreement), including all servicing rights relating thereto. A true and correct copy of the 2007 Agreement (exclusive of all amendments) was attached to the Countrywide Claim as Exhibit C.

5.    Pursuant to the Purchase Agreements, AHM was obligated to repurchase loans sold by AHM to Countrywide under the Purchase Agreements under certain identified circumstances (such repurchase obligations, the **"Repurchase Obligations"**).

6.    Pursuant to the Purchase Agreements, AHM is obligated to indemnify and hold Countrywide harmless against all costs, damages, losses and claims incurred by Countrywide in connection with AHM's breach of its representations, warranties and obligations under the Purchase Agreements (such indemnification and hold harmless obligations, the **"Indemnification Obligations"**).

7.    As set forth in the Countrywide Claim, Countrywide asserted any and all claims, rights or remedies Countrywide may have, either directly or indirectly, against AHM, arising as a matter of law or equity, based upon, relating to, or arising under or on account of any and all unpaid amounts owed by AHM to Countrywide, including under the Purchase Agreements, as of

the Petition Date and thereafter, including, without limitation, attorneys' fees, expenses and costs.

8.      As of the Bar Date Countrywide was uncertain as to the extent of the AHM's liabilities under the Purchase Agreements. As a result, the Countrywide Claim was filed as, "a claim in an amount that will not be less than $2,000,000 and a claim in an amount yet to be determined for additional liabilities, losses, damages, fees, costs and other amounts and claims payable under the Purchase Agreements."

9.      More specifically, as set forth therein:

A.      A substantial portion of the Repurchase Obligations and Indemnification Obligations under the Purchase Agreements for which Countrywide believes AHM will ultimately be liable to Countrywide have not been formally calculated and/or asserted by Countrywide or may otherwise be contingent and/or unliquidated. These amounts include early payment default, premium recapture, shortage of remittances due, and other loan representation and warranty breaches, such as inadequate verification of employment, unverified or misrepresentation of employment, insufficient mortgage/housing rating, undisclosed liabilities, unsupported income and other credit or underwriting criteria that are unable to be determined or confirmed. Currently, Countrywide asserts that not less than $1,500,000 in Repurchase Obligations are currently owed by AHM to Countrywide (a detailed calculation of which shall be provided upon request). Countrywide reserves all rights to amend this Claim to assert additional Repurchase Obligations and Indemnification Obligations, which Countrywide believes will exceed $25 million.

B.      The amount of fees, costs and other amounts payable to Countrywide under the Purchase Agreements is currently estimated to be $500,000. A detailed calculation of these fees and costs shall be provided upon request.

10.      In addition to the foregoing, Countrywide specifically reserved its right to assert unsecured priority claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code for all liabilities, losses or damages related to AHM's failure to properly segregate and remit to Countrywide all payments received by AHM or otherwise payable to Countrywide on account of loans Countrywide previously purchased from AHM under the Purchase Agreements (such payments, the **"Countrywide Payments"**). Countrywide also asserted that the Countrywide

- 3 -

Payments constituted the property of Countrywide and do not constitute (and have never constituted) the property of AHM or its bankruptcy estate.

## COUNTRYWIDE'S SECURED CLAIM

11.    The Countrywide Claim was also filed as a secured claim to the extent of the value of the collateral securing it.  More specifically, the Purchase Agreements provide that Countrywide is entitled to setoff, including by withdrawal or debit of funds of AHM deposited or held in the "Over/Under Account" identified in the Purchase Agreements (the **"Over/Under Account"**), any amounts owed by Countrywide to AHM against any amounts owed by AHM to Countrywide under the Purchase Agreements or any other agreement between AHM and Countrywide.

12.    Countrywide asserted all contractual, statutory and common law rights of setoff with respect to property of AHM held or owing by Countrywide to or for the account of AHM, including, without limitation, all of AHM's funds in the Over/Under Account and any and all amounts payable by Countrywide to or for the account of AHM under the Purchase Agreements or any other agreement between Countrywide and AHM.

## COUNTRYWIDE'S AMENDED CLAIM

13.    The Countrywide Claim expressly reserved Countrywide's right to amend its claim because, as stated therein, "the amount of the indebtedness changes on a daily basis depending on the amounts of the expenses, losses, attorneys' fees (if any) and interest thereon."

14.    Pursuant to this expressed reservation of rights, on or about August 8, 2008, Countrywide filed an amended proof of claim in the amount of not less than $15,751,633 (the **"Amended Claim"**).  A copy of the Amended Claim is attached hereto as Exhibit A and is incorporated herein by reference.  Countrywide expressly reserved its right to further amend the Amended Claim as it quantifies the amounts of various claims it has against AHM.

- 4 -

## ARGUMENT

15.    A proof of claim once filed establishes a "prima facie case" that a debtor objecting to such claim must overcome. FED. R. BANKR. P. 3001(f); Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.), 622 F.2d 709, 714 (5th Cir. 1980) (proof of claim is claimant's "prima facie case"); Wilson v. Huffman (In re Missionary Baptist Found. of Am.), 818 F.2d 1135, 1140, 1143 (5th Cir. 1987) ("a claim filed under section 501 of the Bankruptcy Code enjoys prima facie validity"); In re Aerospace Technologies, Inc., 199 B.R. 331, 341 (Bankr. M.D.N.C. 1996) (Under subsection (f) of Bankruptcy Rule 3001 a proof of claim "executed and filed in accordance with these rules" constitutes prima facia evidence of the validity and amount of the claim); Glinxa v. Darmonic Banking Co. (In re Kelton Motors, Inc.), 121 B.R. 166, 190 (Bankr. D. Vt. 1990) (bankruptcy rules provide for a presumption of the validity of a proof of claim); Webster v. Barbara (In re Otis & Edwards, P.C.), 115 B.R. 900, 914 (Bankr. E.D. Mich. 1990) (claimant's insider status does not undermine "the prima facie validity of the verified proof of claim"). In that regard, the filing of a proof of claim has been likened to the filing of a complaint at the opening of a civil case. In re Simmons, 765 F.2d 547, 552 (5th Cir. 1985).

16.    Once a creditor files a prima facie valid proof of claim, the burden of proof shifts to the debtor "to produce evidence sufficient to negate the prima facie validity of the filed claim." In re Allegheny Inter., Inc., 954 F.2d 167, 173-74 (3d Cir. 1992); In re TIE/Communications, Inc., 163 B.R. 435, 440-41 (Bankr. D. Del. 1994); In re Nantucket Aircraft Maintenance Co., Inc., 54 B.R. 86, 88 (Bankr. Mass. 1985) (When an objection to a proof of claim is made, the objecting party carries the burden of going forward with evidence showing facts tending to defeat the claim).

17.    The Countrywide Claim was filed in accordance with the proof of claim procedures instituted at the Debtors. The Countrywide Claim is *prima facie* valid as filed as is

- 5 -

the Amended Claim. The basis for the Debtors' Objection is simply that the Countrywide Claim should be disallowed because it was submitted without sufficient documentation or alleged facts to support the asserted claims. <u>See</u> Objection at Exhibit "G". Contrary to the Debtors' assertions, the Countrywide Claim contained a summary of the nature and extent of Countrywide's claims together with copies of the Purchase Agreements. From these documents, the Debtors were perfectly capable of calculating any and all claims due under the Purchase Agreements. AHM further fails to disclose in its Objection that the Debtors and Countrywide have been working together on a reconciliation of the claims under the Purchase Agreements for some time and that the Debtors have been provided loan level back-up to support the Countrywide Claim. Further, as a result of the Debtors' filing of the Objection, Countrywide filed the Amended Claim, which contains sufficient loan level detail (much of which has already been provided to the Debtors) establishing Countrywide's entitlement to an allowed claim in the amount of not less than $15,751,633.

18.    The Objection, however, contains no evidence, let alone evidence sufficient to negate the *prima facie* validity of the Countrywide Claim or the Amended Claim. Countrywide has established, through the summaries and exhibits attached to its claims, that Countrywide is entitled to substantial claims in these cases.

19.    The Objection and its supporting exhibits fail to rebut the *prima facie* validity of the Countrywide Claim or the Amended Claim. The Debtors' conclusory allegations of insufficient documentation or alleged facts to support the asserted claims is insufficient to rebut Countrywide's right to payment as established *prima facie* by the Claims. <u>See</u> In re Allegheny <u>Int'l., Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992) (holding that the objector must produce evidence "equal in force" to the evidence submitted by the claimant); <u>Simmons</u>, 765 F.2d at 552 (same). The Debtors' attempt to shift the burden of proof is improper.

- 6 -

20.    The Debtors' have tried to improperly shift the burden to Countrywide to prove the *prima facie* validity of the Claims.    The Debtors have the burden to produce evidence, through discovery or at the hearing, sufficient to negate the *prima facie* validity of the Countrywide Claim or the Amended Claim.    The Debtors have not provided this Court with any evidence to dispute the validity of the Countrywide Claim or the Amended Claim and, therefore, the Objection should be overruled.

WHEREFORE, Countrywide respectfully requests that this Court (i) overrule the Debtors' Objection; and (ii) grant Countrywide such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
        August 8, 2008

Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP

William E. Chipman, Jr. (No. 3818)
919 North Market Street
15th Floor
Wilmington, Delaware 19801
(302) 777-7770

*Counsel to Countrywide Bank, F.S.B.*

- 7 -