IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                         :    Chapter 11
                                                               :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                         :    Case No. 07-11047 (CSS)
a Delaware corporation, *et al.*,                              :
                                                               :    Jointly Administered
      Debtors.                                               :    Related to Doc. No. 5181
                                                               :
                                                               :    Obj. Deadline: August 11, 2008 at 4:00 p.m.
                                                               :    Hearing Date: August 18, 2008 at 10:00 a.m.
---------------------------------------------------------------x

### RESPONSE OF FINANCIAL GUARANTY INSURANCE COMPANY TO DEBTORS' THIRTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007 AND LOCAL RULE 3007-1

Financial Guaranty Insurance Company ("FGIC") files this Response to the Debtors' Thirteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1 (the "Claim Objection"), and states as follows:

### RELIEF REQUESTED

The Debtors' Claim Objection seeks disallowance of the FGIC Proofs of Claim (as defined below) on the basis that no amount is owed by the Debtors. As explained herein, the FGIC Proofs of Claim evidence substantial amounts owed by the Debtors to FGIC. However, as explained further below, FGIC cannot be expected to present evidentiary support for the claims at the August 18, 2008 hearing, as much of the information supporting the claims is in the possession of others, including the Debtors. Accordingly, the Claim Objection must be denied or, in the alternative, the evidentiary hearing on the FGIC Proofs of Claim should be adjourned to a later date to enable FGIC to conduct additional discovery respecting the value of its claims.

## BACKGROUND

1. American Home Mortgage Acceptance, Inc. ("AHM Acceptance") sold certain home equity line of credit mortgage loans and certain additional balances drawn thereunder (the "HELOC Mortgage Loans") to American Home Mortgage Securities LLC pursuant to the following mortgage loan purchase agreements (collectively, the "HELOC Purchase Agreements"), which are identified in FGIC's Proofs of Claim:

    (i) Mortgage Loan Purchase Agreement dated as of March 23, 2005 between AHM Acceptance, as Seller, and American Home Mortgage Securities LLC;

    (ii) Mortgage Loan Purchase Agreement dated as of June 22, 2005 between AHM Acceptance, as Seller, and American Home Mortgage Securities LLC; and

    (iii) Mortgage Loan Purchase Agreement dated as of October 7, 2005 between AHM Acceptance, as Seller, and Bear Stearns Asset Backed Securities I LLC.

2. The HELOC Mortgage Loans and all rights against AHM Acceptance were simultaneously sold by the buyer thereof to the following trusts: American Home Mortgage Investment Trust 2005-1 (the "2005-1 Trust"), American Home Mortgage Investment Trust 2005-2 (the "2005-2 Trust") and American Home Mortgage Investment Trust 2005-4A (the "2005-4A Trust" and, together with the 2005-1 Trust and 2005-2 Trust, the "Trusts"). The transactions relating to the Trusts are referred to herein as the "FGIC Securitizations."

3. Each Trust established in the FGIC Securitizations acquired and owns the HELOC Mortgage Loans related to such Trust and issued securities that are "backed" by, or that rely directly on, the HELOC Mortgage Loans and related collections owned by such Trust as the source of payment. FGIC insured certain of the securities issued by each Trust. FGIC, as insurer of certain securities in the FGIC Securitizations, relies on the HELOC Mortgage Loans for payment on such securities. Deutsche Bank National Trust Company and U.S. Bank National Association (together, the

"Indenture Trustees") were appointed and are serving as the Indenture Trustees under the respective Indentures identified in FGIC's Proofs of Claim (as defined below).

4. Each Mortgage Loan Purchase Agreement contains several obligations of AHM Acceptance, including obligations to repurchase defective HELOC Mortgage Loans. HELOC Mortgage Loans are considered defective and subject to repurchase under each Mortgage Loan Purchase Agreement for numerous reasons, including without limitation because a HELOC Mortgage Loan fails to comply with AHM Acceptance's representations and warranties made in each Mortgage Loan Purchase Agreement. For example, if, notwithstanding AHM Acceptance's representation and warranty to the contrary, a HELOC Mortgage Loan was originated in contravention of specified criteria, AHM Acceptance is obligated to repurchase such defective HELOC Mortgage Loan. Similarly, if, notwithstanding AHM Acceptance's representation and warranty to the contrary, the mortgage file relating to a HELOC Mortgage Loan is missing required documentation (a "Document Exception Loan"), AHM Acceptance is obligated to repurchase the affected Document Exception Loan. Moreover, each Indenture Trustee was required by each Indenture to deliver a "Final Certification" report at or shortly after the closing of each FGIC Securitization reflecting all Document Exception Loans, and such Final Certification report was required by each Indenture to be delivered to AHM Acceptance. Thus, as described further below, at a minimum AHM Acceptance is obligated to repurchase all Document Exception Loans reflected on the Final Certification that breach AHM Acceptance's representation and warranty in the Mortgage Loan Purchase Agreement respecting the completeness of the mortgage files. Additional diligence would likely reveal additional defective HELOC Mortgage Loans that breach additional representations and warranties of AHM Acceptance.

5. FGIC advised the Debtors, <u>before</u> the Debtors filed their Claim Objection, of the foregoing repurchase obligations, including the obligation to repurchase Document Exception Loans

reflected on the Final Certification that FGIC understands was previously delivered to the Debtors. It is thus difficult to understand how the Debtors can assert that they owe nothing on the FGIC Proofs of Claim.

6. FGIC holds the right to assert claims against the Debtors. Each of AHM Acceptance, American Home Mortgage Servicing, Inc. (n/k/a AHM SV, Inc.) ("AHM Servicing") and American Home Mortgage Investment Corp. ("AHM Investment") are parties to an Insurance and Indemnity Agreement in each FGIC Securitization, which are identified in FGIC's Proofs of Claim. The Insurance and Indemnity Agreements incorporate the representations, warranties and covenants of AHM Acceptance made in the HELOC Purchase Agreements and incorporate AHM Acceptance's covenants for the benefit of FGIC that the HELOC Mortgage Loans conform to the representations and warranties set forth in the HELOC Purchase Agreements. Additionally, all rights against AHM Acceptance under the HELOC Purchase Agreements were assigned to the Indenture Trustees, FGIC is expressly permitted to exercise rights and remedies respecting the insured securities under the Indentures and is a third party beneficiary of and holds subrogation rights under the Indentures.

7. Additionally, AHM Servicing and AHM Acceptance were the contract servicers of the HELOC Mortgage Loans in the FGIC Securitizations under the following servicing agreements (collectively, the "HELOC Servicing Agreements"), which are also identified in FGIC's Proofs of Claim:

    (i) HELOC Servicing Agreement dated as of March 23, 2005 among AHM Servicing, GMAC Mortgage, LLC as successor by merger to GMAC Mortgage Corporation ("GMAC"), as back-up servicer, the 2005-1 Trust, as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as seller;

    (ii) HELOC Servicing Agreement dated as of June 22, 2005 among AHM Servicing, as servicer, GMAC, as back-up servicer, the 2005-2 Trust, as issuer, Deutsche Bank National Trust Company, as the Indenture Trustee and AHM Acceptance, as seller;

4

(iii) HELOC Servicing Agreement dated as of October 7, 2005 among AHM Acceptance, as servicer, GMAC, as back-up servicer, the 2005-4A Trust, as issuer, U.S. Bank National Association, as the Indenture Trustee and AHM Acceptance, as seller; and

(iv) HELOC Subservicing Agreement dated as of October 2, 2005 among the 2005-A4 Trust, AHM Servicing, AHM Acceptance and U.S. Bank National Association, as Indenture Trustee.

8. As Servicers pursuant to the HELOC Servicing Agreements, AHM Acceptance and AHM Servicing were required to, among other things, (i) properly collect payments on and enforce the HELOC Mortgage Loans thereunder on behalf of the Trusts and FGIC and (ii) properly deposit all collections on such HELOC Mortgage Loans into the accounts required by the HELOC Servicing Agreements. The HELOC Servicing Agreements also required AHM Acceptance and AHM Servicing to pay the costs associated with a transfer of servicing to a successor servicer under the HELOC Servicing Agreement.

9. FGIC believes that each of AHM Servicing and AHM Acceptance as Servicer defaulted under and breached the related HELOC Servicing Agreement. AHM Acceptance and AHM Servicing were terminated as Servicers under the HELOC Servicing Agreements and servicing responsibilities were transferred to GMAC as of January 11, 2008.

10. FGIC is an express third party beneficiary under the HELOC Servicing Agreements and holds rights against AHM Servicing and AHM Acceptance under the HELOC Servicing Agreements. Moreover, the Insurance and Indemnity Agreements contain the acknowledgement of AHM Servicing and AHM Acceptance that FGIC is a third party beneficiary of the HELOC Servicing Agreements. The Insurance and Indemnity Agreements also incorporate the representations, warranties and covenants of AHM Servicing and AHM Acceptance made in the HELOC Servicing Agreements and contain covenants for the benefit of FGIC that the HELOC Mortgage Loans would be serviced by AHM Servicing and AHM Acceptance in compliance with the HELOC Servicing Agreements.

11. AHM Servicing, AHM Acceptance and AHM Investment also have important indemnification obligations under the HELOC Purchase Agreement (in the case of AHM Acceptance), the HELOC Servicing Agreements and the Insurance and Indemnity Agreements.

## **FGIC PROOFS OF CLAIM**

12. FGIC timely filed the following six (6) proofs of claim (the "Proofs of Claim") against the following Debtors:

| Debtor | Case Number |
| --- | --- |
| American Home Mortgage Acceptance, Inc. | 07-11047 |
| American Home Mortgage Acceptance, Inc. | 07-11049 |
| American Home Mortgage Servicing, Inc. | 07-11047 |
| American Home Mortgage Servicing, Inc. | 07-11050 |
| American Home Mortgage Investment Corp. | 07-11047 |
| American Home Mortgage Investment Corp. | 07-11048 |

13. The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, assigned the following claim numbers to FGIC's Proofs of Claim: 8264, 8452, 8453, 8710, 8711 and 8712. Two Proofs of Claim were filed against each Debtor identified above, one in the jointly administered case number and one in the individual case number, because the bar date notice did not specify which case number should be identified on the proofs of claim. Each Debtor subject to FGIC's Proofs of Claim is a party to certain agreements in the FGIC Securitizations, including the agreements discussed above. The Debtors have copies of such agreements.

14. FGIC's Proofs of Claim evidence and assert several claims against the Debtors, which claims arise from the documents in the FGIC Securitizations. The following is a general summary of

6

certain, but not necessarily all, of the claims held by FGIC against the Debtors that are subject to the FGIC Proofs of Claim:

(i) <u>Debtors' Obligation to Repurchase Defective HELOC Mortgage Loans</u>: As stated above, AHM Acceptance is obligated under the agreements in the FGIC Securitizations to repurchase all HELOC Mortgage Loans that do not comply with the representations and warranties made therein by AHM Acceptance. The FGIC Proofs of Claim evidence AHM Acceptance's obligation to repurchase all of the following specifically-described HELOC Mortgage Loans that violate representations and warranties made by AHM Acceptance:

(a) <u>Document Exception Loans</u>: FGIC understands that numerous HELOC Mortgage Loans in the Trusts have incomplete or missing documents. As summarized above, FGIC understands that the Indenture Trustees prepared and delivered a "Final Certification" at or shortly after the closing of each FGIC Securitization (see, e.g., Section 2.03 of the Indenture) and that the Final Certification describes the missing or incomplete documents relating to the HELOC Mortgage Loans (see, e.g., Section 2.1 of the Mortgage Loan Purchase Agreement). FGIC also understands that the Final Certifications were previously delivered to AHM Acceptance.

(b) <u>Additional Defective HELOC Mortgage Loans</u>: FGIC asserts that AHM Acceptance is also obligated to repurchase additional defective HELOC Mortgage Loans that breach other representations and warranties made by AHM Acceptance in the transaction documents (see, e.g., Section 3.1 of the Mortgage Loan Purchase Agreements and Section 3.16 of the Indentures), including without limitation representations and warranties concerning AHM Acceptance's compliance with mortgage loan origination criteria.

7

While the Final Certifications reflect particular Document Exception Loans, the entire claim for repurchase of defective HELOC Mortgage Loans is not fully liquidated at this time. FGIC cannot be expected to present evidentiary support for its claims during the August 18, 2008 hearing because much of the information supporting the claims is in the possession of others, including the Debtors. For example, providing evidentiary support for the repurchase claims would require, among other things, review of the mortgage files relating to the HELOC Mortgage Loans. However, as demonstrated by GMAC's Motion Pursuant to Section 105(a) and Fed. R. Bankr. Proc. 9014 and 9020 for an Order of Civil Contempt and Compelling Debtors to Comply with Prior Court Orders, filed in this case on or about June 23, 2008 [D.I. 4772], AHM Servicing and AHM Acceptance have failed to deliver all mortgage files relating to the HELOC Mortgage Loans to GMAC as successor Servicer. GMAC has asked this court to hold the Debtors in contempt for not providing access the mortgage files. Moreover, given the voluminous and complex nature of the documents, presenting evidence respecting the claims summarized in this Response would likely take more time than is currently available during the August 18, 2008 hearing. FGIC reserves the right to further investigate AHM Acceptance's repurchase obligations.

(ii) <u>Damages for Collections on HELOC Mortgage Loans Improperly Diverted by AHM Servicing and AHM Acceptance, and Potentially Additional Debtors</u>: The FGIC Securitizations are required to be administered in either "Managed Amortization" or "Rapid Amortization." While in Managed Amortization, <u>scheduled</u> payments of principal are made on the securities issued by the Trusts and insured by FGIC and certain excess principal, if any, may be used by the Trusts to purchase additional draws originated under the HELOC Mortgage Loans by AHM Acceptance or another Debtor to the related borrower under the HELOC

8

Mortgage Loan. While in Rapid Amortization, on the other hand, all principal collected on HELOC Mortgage Loans is required to be applied to the securities issued by the Trusts and insured by FGIC, resulting in a rapid amortization or paydown of such securities, and no excess principal is available to purchase additional draws originated under the HELOC Mortgage Loans by AHM Acceptance or another Debtor. The FGIC Securitizations are required to be administered in Rapid Amortization after the occurrence of one or more Rapid Amortization events under the Indentures.

FGIC asserts, and has advised the Debtors before the Claim Objection, that one or more "Rapid Amortization events" have occurred under the Indentures before and as of the Debtors' August 6, 2007 bankruptcy filing, including the failure of American Home parent and certain affiliates to maintain a required Tangible Net Worth. Notwithstanding the occurrence of Rapid Amortization events, AHM Servicing and AHM Acceptance as Servicers, and potentially additional Debtors, did not properly apply principal collections on the HELOC Mortgage Loans to the securities issued by the Trusts and insured by FGIC. Instead, contrary to the required application of funds following Rapid Amortization, AHM Servicing and AHM Acceptance, and potentially additional Debtors, improperly used collections on HELOC Mortgage Loans owned by the Trusts to originate additional draws under HELOC Mortgage Loans owned by the Trusts and caused the Trust to purchase such additional draws. Based on investor reports delivered by the Indenture Trustees in the FGIC Securitizations, additional copies of which were provided to the Debtors by FGIC before the Claim Objection, the Debtors improperly diverted at least $1,098,848.09 in the 2005-1 Trust transaction, $2,041,581.87 in the 2005-2 Trust transaction and $1,944,264.08 in the 2005-4A Trust transaction. As a consequence, FGIC received the "double whammy" of greater exposure on the HELOC Mortgage Loans and

less paydown of FGIC's exposure on the FGIC-insured securities issued by the Trusts. The full extent of FGIC's damages remains unliquidated at this time.

FGIC previously filed a complaint against AHM Servicing and AHM Acceptance (Adversary Case No. 07-51725) seeking, among other things, a determination that Rapid Amortization events in the FGIC Securitizations had occurred. This proceeding was dismissed without prejudice based on a settlement agreement dated as of May 16, 2008 and an order of this Court dated June 9, 2008 (the "Approval Order"). The settlement agreement, as approved by the Approval Order, expressly specified that FGIC could pursue its Proofs of Claim notwithstanding dismissal of the complaint. Accordingly, FGIC should be provided with an opportunity to fully pursue its Proofs of Claim.

(iii) <u>Additional Servicing Breaches</u>: FGIC believes that additional diligence may uncover additional defaults of AHM Servicing and AHM Acceptance as Servicer under the related HELOC Servicing Agreement. [Additionally, each of AHM Servicing and AHM Acceptance is required to indemnify or reimburse FGIC for all costs and expenses incurred by FGIC in connection with the servicing transfer to GMAC (see, e.g., Sections 3.03(c) and 3.04 of the Insurance Agreements).] The servicing breaches have not been fully discovered and thus the full extent of FGIC's damages based on such breaches remain unliquidated at this time.

(iv) <u>Legal Fees</u>:  The Insurance and Indemnity Agreements in the FGIC Securitizations require the Debtor parties thereto to reimburse FGIC for all legal fees and other costs and expenses incurred by FGIC to enforce its rights thereunder, including in a bankruptcy case of the American Home Debtors (see, e.g., Sections 3.03(c) and 3.04 of the Insurance and Indemnity Agreements). While certain of these legal fees have been reimbursed to FGIC from

the Trusts, the Debtors are obligated to reimburse FGIC for any other outstanding legal fees and costs.

(v) <u>The Obligation of AHM Servicing, AHM Acceptance and AHM Investment to Indemnify FGIC for Losses Based on Other Breaches of Agreements in the FGIC Securitizations</u>. AHM Servicing, AHM Acceptance and AHM Investment have broad and important indemnification obligations to FGIC under the various agreements, including the Insurance and Indemnity Agreements, in the FGIC Securitizations.

15. By the Debtors' Claim Objection, the Debtors seek disallowance of the FGIC Proofs of Claim on the basis that no amount is owed by the Debtors. As explained herein, the FGIC Proofs of Claim evidence substantial amounts owed by the Debtors to FGIC, much of which is reflected in documents previously distributed to the Debtors either by the Indenture Trustees under the transaction documents in the FGIC Securitizations or by FGIC in connection with the Proofs of Claim or otherwise in the possession of the Debtors. Accordingly, the Claim Objection must be denied or, in the alternative, the evidentiary hearing thereon should be adjourned for a period to enable FGIC to take the additional discovery necessary to fully substantiate the value of its claims..

## DISCUSSION

16. The Bankruptcy Code creates a "burden-shifting framework" in connection with claim objections. *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004).

17. In accordance with Fed. R. Bankr. P. 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001 (f); *see* 11 U.S.C. § 502(a) (deeming a claim

allowed unless a party in interest objects to the claim); *In re Mid-Amer. Waste Sys., Inc.*, 284 B.R. 53, 69 n.23 (Bankr. D. Del. 2002) ("Fed. R. Bankr. P. 3001(f) creates a presumption in favor of validity of a claimant's proof of claim.").

18. If a court determines a proof of claim is *prima facie* evidence of its validity, the burden shifts to the debtor to "go[ ] forward with evidence supporting the objection." *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (B.A.P. 10th Cir. 2003) (citation omitted). This evidence must be "of probative force equal to that of the allegations contained in the proof of claim." *Id.* (citation omitted); *see also Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (stating that an objecting party must produce evidence "tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves") (citation omitted).

19. Only if the objecting party "overcomes the prima facie validity of the claim" does the burden shift again to the claimant to "prove its claim by a preponderance of the evidence." *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 50 (Bankr. D. Del. 2001) (citation omitted).

20. Merely filing a claim objection is insufficient to "deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." *Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in the original); *In re Holm,* 931 F.2d at 623 (noting that a proof of claim "is some evidence as to its validity and amount . . . [and] is strong enough to carry over a mere formal objection without more") (citation omitted).

### The FGIC Claims Are Valid Claims

21. Contrary to the Debtors' Claim Objection, the FGIC Proofs of Claim constitute valid claims and establish that substantial amounts are owed by the Debtors.

22. Apart from a bare assertion that the Debtors' records do not reflect amounts owed on the FGIC Proofs of Claim, the Debtors offer no substantive evidence for this conclusion and the proposed disallowance of all the Proofs of Claim.

23. Accordingly, the Debtors failed to satisfy their "initial burden of presenting sufficient evidence to overcome the presumed validity and amount" of the FGIC Proofs of Claim, and the Debtors' Claim Objection to FGIC's Proofs of Claim must be overruled. *In re Planet Hollywood Int'l*, 274 B.R. 391, 394 (Bankr. D. Del. 2001).

24. FGIC does not waive its right to assert any claim as an administrative claim.

WHEREFORE, for the foregoing reasons, and such additional reasons as may be raised in a supplemental response and/or at the hearing on the Claim Objection, FGIC requests that the Claim Objection be overruled or, in the alternative, that the evidentiary hearing on the FGIC Proofs of Claim be adjourned pending an opportunity for further discovery.

*[The remainder of this page is intentionally blank]*

Dated: Wilmington, Delaware
August 11, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Donna L. Culver
Robert J. Dehney (No. 3578)
Donna L. Culver (No. 2983)
Chase Manhattan Centre, 18th Floor
1201 North Market Street
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@mnat.com
Email: dculver@mnat.com

and

**KUTAK ROCK LLP**
Bruce A. Wilson, Esq. (NE Bar # 18885—pro hac vice)
1650 Farnam Street
Omaha, Nebraska 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
Email: bruce.wilson@kutakrock.com

ATTORNEYS FOR FINANCIAL GUARANTY
INSURANCE COMPANY

2444722.2