IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, *et al.*, | Case No. 07-11047 (CSS) |
| Debtors. | Jointly Administered<br>Related to Doc. No. 5181 |
| | Obj. Deadline: August 11, 2008 at 4:00 p.m.<br>Hearing Date: August 18, 2008 at 10:00 a.m. |

---

**RESPONSE OF MBIA INSURANCE CORPORATION TO DEBTORS' THIRTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007 AND LOCAL RULE 3007-1**

MBIA Insurance Corporation ("MBIA") files this Response to the Debtors' Thirteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1 (the "Claim Objection"), and states as follows:

**RELIEF REQUESTED**

The Debtors' Claim Objection seeks disallowance of the MBIA Proofs of Claim (as defined below) on the basis that no amount is owed by the Debtors. As explained herein, the MBIA Proofs of Claim evidence substantial amounts owed by the Debtors to MBIA. However, as explained further below, MBIA cannot be expected to present evidentiary support for the claims at the August 18, 2008 hearing, as much of the information supporting the claims is in the possession of others, including the Debtors. Accordingly, the Claim Objection must be denied or, in the alternative, the evidentiary hearing on the MBIA Proofs of Claim should be adjourned to a later date to enable MBIA to conduct additional discovery respecting the value of its claims.

## BACKGROUND

1. American Home Mortgage Acceptance, Inc. ("AHM Acceptance") sold certain home equity line of credit mortgage loans and certain additional balances drawn thereunder (the "HELOC Mortgage Loans") to American Home Mortgage Securities LLC pursuant to the following mortgage loan purchase agreement (the "HELOC Purchase Agreement"), which is identified in MBIA's Proofs of Claim:

> Mortgage Loan Purchase Agreement dated as of December 21, 2004 between AHM Acceptance, as Seller, and American Home Mortgage Securities LLC.

2. The HELOC Mortgage Loans and all rights against AHM Acceptance were simultaneously sold by the buyer thereof to the following trust: American Home Mortgage Trust 2004-4 (the "Trust"). The transaction relating to the Trust is referred to herein as the "MBIA Securitization."

3. The Trust established in the MBIA Securitization acquired and owns the HELOC Mortgage Loans related to such Trust and issued securities that are "backed" by, or that rely directly on, the HELOC Mortgage Loans and related collections owned by such Trust as the source of payment. MBIA insured certain of the securities issued by the Trust. MBIA, as insurer of certain securities in the MBIA Securitization, relies on the HELOC Mortgage Loans for payment on such securities. The Bank of New York (the "Indenture Trustee") was appointed and is serving as the Indenture Trustee under the Indenture identified in MBIA's Proofs of Claim (as defined below). Deutsche Bank National Trust Company was appointed and is serving as custodian (the "Custodian") of certain files relating to the HELOC Mortgage Loans.

4. The Mortgage Loan Purchase Agreement contains several obligations of AHM Acceptance, including obligations to repurchase defective HELOC Mortgage Loans. HELOC

Mortgage Loans are considered defective and subject to repurchase under the Mortgage Loan Purchase Agreement for numerous reasons, including without limitation because a HELOC Mortgage Loan fails to comply with AHM Acceptance's representations and warranties made in each Mortgage Loan Purchase Agreement. For example, if, notwithstanding AHM Acceptance's representation and warranty to the contrary, a HELOC Mortgage Loan was originated in contravention of specified criteria, AHM Acceptance is obligated to repurchase such defective HELOC Mortgage Loan. Similarly, if, notwithstanding AHM Acceptance's representation and warranty to the contrary, the mortgage file relating to a HELOC Mortgage Loan is missing required documentation (a "Document Exception Loan"), AHM Acceptance is obligated to repurchase the affected Document Exception Loan. Moreover, the Custodian of certain files relating to the HELOC Mortgage Loans was required to deliver a "Final Certification" report at or shortly after the closing of the MBIA Securitization reflecting all Document Exception Loans, and such Final Certification report was required by the Indenture to be delivered to AHM Acceptance. Thus, as described further below, at a minimum AHM Acceptance is obligated to repurchase all Document Exception Loans reflected on the Final Certification that breach AHM Acceptance's representation and warranty in the Mortgage Loan Purchase Agreement respecting the completeness of the mortgage files. Additional diligence would likely reveal additional defective HELOC Mortgage Loans that breach additional representations and warranties of AHM Acceptance.

5. MBIA advised the Debtors, <u>before</u> the Debtors filed their Claim Objection, of the foregoing repurchase obligations, including the obligation to repurchase Document Exception Loans reflected on the Final Certification that MBIA understands was previously delivered to the Debtors. It is thus difficult to understand how the Debtors can assert that they owe nothing on the MBIA Proofs of Claim.

3

6. MBIA holds the right to assert claims against the Debtors. Each of AHM Acceptance, American Home Mortgage Servicing, Inc. (n/k/a AHM SV, Inc.) ("AHM Servicing") and American Home Mortgage Investment Corp. ("AHM Investment") are parties to an Insurance Agreement and each of AHM Acceptance and AHM Investment is a party to an Indemnification Agreement in the MBIA Securitization (collectively, the "Insurance and Indemnity Agreement"), which are identified in MBIA's Proofs of Claim. The Insurance and Indemnity Agreement incorporates the representations, warranties and covenants of AHM Acceptance made in the HELOC Purchase Agreement and incorporates AHM Acceptance's covenants for the benefit of MBIA that the HELOC Mortgage Loans conform to the representations and warranties set forth in the HELOC Purchase Agreement. Additionally, all rights against AHM Acceptance under the HELOC Purchase Agreement was assigned to the Indenture Trustee, MBIA is expressly permitted to exercise rights and remedies respecting the insured securities under the Indenture and is a third party beneficiary of and holds subrogation rights under the Indenture.

7. Additionally, AHM Servicing was the contract subservicer of the HELOC Mortgage Loans in the MBIA Securitization under the following subservicing agreement (the "HELOC Subservicing Agreement"), which is also identified in MBIA's Proofs of Claim:

> HELOC Subservicing Agreement dated as of December 21, 2004 between AHM Servicing and GMAC Mortgage, LLC as successor by merger to GMAC Mortgage Corporation ("GMAC").

8. As Subservicer pursuant to the HELOC Subservicing Agreement, AHM Servicing was required to, among other things, (i) properly collect payments on and enforce the HELOC Mortgage Loans thereunder on behalf of the Trusts and MBIA and (ii) properly deposit all collections on such HELOC Mortgage Loans into the accounts required by the HELOC Subservicing Agreement.

9. MBIA believes that AHM Servicing as Subservicer defaulted under and breached the related HELOC Subservicing Agreement. AHM Servicing abandoned its obligations as subservicer under the HELOC Subservicing Agreement and servicing of the HELOC Mortgage Loans has been performed by GMAC as of February 1, 2008.

10. MBIA is an express third party beneficiary under the HELOC Subservicing Agreement and holds rights against AHM Servicing under the HELOC Subservicing Agreement. Moreover, the Insurance and Indemnity Agreement also incorporates the representations and warranties of AHM Servicing made in the HELOC Subservicing Agreement and contains covenants for the benefit of MBIA that the HELOC Mortgage Loans would be subserviced by AHM Servicing in compliance with the HELOC Subservicing Agreement.

11. AHM Servicing, AHM Acceptance and AHM Investment also have important indemnification obligations under the HELOC Purchase Agreement (in the case of AHM Acceptance), the HELOC Subservicing Agreement and the Insurance and Indemnity Agreement.

## MBIA PROOFS OF CLAIM

12. MBIA timely filed the following six (6) proofs of claim (the "Proofs of Claim") against the following Debtors:

| Debtor | Case Number |
| --- | --- |
| American Home Mortgage Acceptance, Inc. | 07-11047 |
| American Home Mortgage Acceptance, Inc. | 07-11049 |
| American Home Mortgage Servicing, Inc. | 07-11047 |
| American Home Mortgage Servicing, Inc. | 07-11050 |
| American Home Mortgage Investment Corp. | 07-11047 |
| American Home Mortgage Investment Corp. | 07-11048 |

5

13. The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, assigned the following claim numbers to MBIA's Proofs of Claim: 8270, 8271, 8272, 8724, 8725 and 8726. Two Proofs of Claim were filed against each Debtor identified above, one in the jointly administered case number and one in the individual case number, because the bar date notice did not specify which case number should be identified on the proofs of claim. Each Debtor subject to MBIA's Proofs of Claim is a party to certain agreements in the MBIA Securitization, including the agreements discussed above. The Debtors have copies of such agreements.

14. MBIA's Proofs of Claim evidence and assert several claims against the Debtors, which claims arise from the documents in the MBIA Securitization. The following is a general summary of certain, but not necessarily all, of the claims held by MBIA against the Debtors that are subject to the MBIA Proofs of Claim:

> (i) <u>Debtors' Obligation to Repurchase Defective HELOC Mortgage Loans</u>: As stated above, AHM Acceptance is obligated under the agreements in the MBIA Securitization to repurchase all HELOC Mortgage Loans that do not comply with the representations and warranties made therein by AHM Acceptance. The MBIA Proofs of Claim evidence AHM Acceptance's obligation to repurchase all of the following specifically-described HELOC Mortgage Loans that violate representations and warranties made by AHM Acceptance:
>
>> (a) <u>Document Exception Loans</u>: MBIA understands that numerous HELOC Mortgage Loans in the Trusts have incomplete or missing documents. As summarized above, MBIA understands that the Custodian prepared and delivered a "Final Certification" at or shortly after the closing of the MBIA Securitization (see, e.g., Section 2.03 of the Indenture) and that the Final Certification describes the missing or incomplete documents relating to the HELOC Mortgage Loans (see, e.g., Section 2.1 of

the Mortgage Loan Purchase Agreement).  MBIA also understands that the Final Certification was previously delivered to AHM Acceptance.

(b)  <u>Additional Defective HELOC Mortgage Loans</u>:  MBIA asserts that AHM Acceptance is also obligated to repurchase additional defective HELOC Mortgage Loans that breach other representations and warranties made by AHM Acceptance in the transaction documents (see, e.g., Section 3.1 of the Mortgage Loan Purchase Agreement and Section 3.16 of the Indenture), including without limitation representations and warranties concerning AHM Acceptance's compliance with mortgage loan origination criteria.

While the Final Certification reflects particular Document Exception Loans, the entire claim for repurchase of defective HELOC Mortgage Loans is not fully liquidated at this time. MBIA cannot be expected to present evidentiary support for its claims during the August 18, 2008 hearing because much of the information supporting the claims is in the possession of others, including the Debtors.  For example, providing evidentiary support for the repurchase claims would require, among other things, review of the mortgage files relating to the HELOC Mortgage Loans.  However, as demonstrated by GMAC's Motion Pursuant to Section 105(a) and Fed. R. Bankr. Proc. 9014 and 9020 for an Order of Civil Contempt and Compelling Debtors to Comply with Prior Court Orders, filed in this case on or about June 23, 2008 [D.I. 4772], AHM Servicing and AHM Acceptance have failed to deliver all mortgage files relating to the HELOC Mortgage Loans to GMAC as Servicer.  GMAC has asked this court to hold the Debtors in contempt for not providing access the mortgage files.  Moreover, given the voluminous and complex nature of the documents, presenting evidence respecting the claims summarized in this Response would likely require more time than is currently available during

the August 18, 2008 hearing. MBIA reserves the right to further investigate AHM Acceptance's repurchase obligations.

(ii) <u>Damages for Collections on HELOC Mortgage Loans Improperly Diverted by AHM Servicing and AHM Acceptance, and Potentially Additional Debtors</u>: The MBIA Securitization is required to be administered in either "Managed Amortization" or "Rapid Amortization." While in Managed Amortization, scheduled payments of principal are made on the securities issued by the Trust and insured by MBIA and certain excess principal, if any, may be used by the Trust to purchase additional draws originated under the HELOC Mortgage Loans by AHM Acceptance or another Debtor to the related borrower under the HELOC Mortgage Loan. While in Rapid Amortization, on the other hand, all principal collected on HELOC Mortgage Loans is required to be applied to the securities issued by the Trust and insured by MBIA, resulting in a rapid amortization or paydown of such securities, and no excess principal is available to purchase additional draws originated under the HELOC Mortgage Loans by AHM Acceptance or another Debtor. The MBIA Securitization is required to be administered in Rapid Amortization after the occurrence of one or more Rapid Amortization events under the Indenture.

MBIA asserts, and has advised the Debtors <u>before</u> the Claim Objection, that one or more "Rapid Amortization events" have occurred under the Indenture before and as of the Debtors' August 6, 2007 bankruptcy filing, including the failure of American Home parent and certain affiliates to maintain a required Tangible Net Worth. Notwithstanding the occurrence of Rapid Amortization events, AHM Servicing as Subservicer, and potentially additional Debtors, did not properly apply principal collections on the HELOC Mortgage Loans to the securities issued by the Trusts and insured by MBIA. Instead, contrary to the required

application of funds following Rapid Amortization, AHM Servicing, and potentially additional Debtors (including AHM Acceptance), improperly used collections on HELOC Mortgage Loans owned by the Trust to originate additional draws under HELOC Mortgage Loans owned by the Trust and caused the Trust to purchase such additional draws. Based on investor reports delivered by the Indenture Trustee in the MBIA Securitization, an additional copy of which was provided to the Debtors by MBIA <u>before</u> the Claim Objection, the Debtors improperly diverted at least $1,012,226.17 in the MBIA Securitization. As a consequence, MBIA received the "double whammy" of greater exposure on the HELOC Mortgage Loans and less paydown of MBIA's exposure on the MBIA-insured securities issued by the Trust. The full extent of MBIA's damages remains unliquidated at this time.

(iii)    <u>Additional Servicing Breaches</u>: MBIA believes that additional diligence may uncover additional defaults of AHM Servicing as Subservicer under the HELOC Subservicing Agreement. The servicing breaches have not been fully discovered and thus the full extent of MBIA's damages based on such breaches remain unliquidated at this time.

(iv)    <u>Legal Fees</u>:    The Insurance and Indemnity Agreement in the MBIA Securitization requires the Debtor parties thereto to reimburse MBIA for all legal fees and other costs and expenses incurred by MBIA to enforce its rights thereunder, including in a bankruptcy case of the American Home Debtors. While certain of these legal fees have been reimbursed to MBIA from the Trust, the Debtors are obligated to reimburse MBIA for any other outstanding legal fees and costs.

(v)    <u>The Obligation of AHM Servicing, AHM Acceptance and AHM Investment to Indemnify MBIA for Losses Based on Other Breaches of Agreements in the MBIA Securitization</u>.    AHM Servicing, AHM Acceptance and AHM Investment have broad and

important indemnification obligations to MBIA under the various agreements, including the Insurance and Indemnity Agreement, in the MBIA Securitization.

15. By the Debtors' Claim Objection, the Debtors seek disallowance of the MBIA Proofs of Claim on the basis that no amount is owed by the Debtors. As explained herein, the MBIA Proofs of Claim evidence substantial amounts owed by the Debtors to MBIA, much of which is reflected in documents previously distributed to the Debtors either by the Indenture Trustee or Custodian under the transaction documents in the MBIA Securitization or by MBIA in connection with the Proofs of Claim or otherwise in the possession of the Debtors. Accordingly, the Claim Objection must be denied or, in the alternative, the evidentiary hearing thereon should be adjourned for a period to enable MBIA to take the additional discovery necessary to fully substantiate the value of its claims.

## DISCUSSION

16. The Bankruptcy Code creates a "burden-shifting framework" in connection with claim objections. *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004).

17. In accordance with Fed. R. Bankr. P. 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001 (f); *see* 11 U.S.C. § 502(a) (deeming a claim allowed unless a party in interest objects to the claim); *In re Mid-Amer. Waste Sys., Inc.*, 284 B.R. 53, 69 n.23 (Bankr. D. Del. 2002) ("Fed. R. Bankr. P. 3001(f) creates a presumption in favor of validity of a claimant's proof of claim.").

18. If a court determines a proof of claim is *prima facie* evidence of its validity, the burden shifts to the debtor to "go[ ] forward with evidence supporting the objection." *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (B.A.P. 10th Cir. 2003)

(citation omitted). This evidence must be "of probative force equal to that of the allegations contained in the proof of claim." *Id.* (citation omitted); *see also Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (stating that an objecting party must produce evidence "tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves") (citation omitted).

19. Only if the objecting party "overcomes the prima facie validity of the claim" does the burden shift again to the claimant to "prove its claim by a preponderance of the evidence." *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 50 (Bankr. D. Del. 2001) (citation omitted).

20. Merely filing a claim objection is insufficient to "deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." *Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in the original); *In re Holm,* 931 F.2d at 623 (noting that a proof of claim "is some evidence as to its validity and amount . . . [and] is strong enough to carry over a mere formal objection without more") (citation omitted).

### The MBIA Claims Are Valid Claims

21. Contrary to the Debtors' Claim Objection, the MBIA Proofs of Claim constitute valid claims and establish that substantial amounts are owed by the Debtors.

22. Apart from a bare assertion that the Debtors' records do not reflect amounts owed on the MBIA Proofs of Claim, the Debtors offer no substantive evidence for this conclusion and the proposed disallowance of all the Proofs of Claim.

23. Accordingly, the Debtors failed to satisfy their "initial burden of presenting sufficient evidence to overcome the presumed validity and amount" of the MBIA Proofs of Claim, and the Debtors' Claim Objection to MBIA's Proofs of Claim must be overruled. *In re Planet Hollywood Int'l*, 274 B.R. 391, 394 (Bankr. D. Del. 2001).

24. MBIA does not waive its right to assert any claim as an administrative claim.

WHEREFORE, for the foregoing reasons, and such additional reasons as may be raised in a supplemental response and/or at the hearing on the Claim Objection, MBIA requests that the Claim Objection be overruled or, in the alternative, that the evidentiary hearing on the MBIA Proofs of Claim be adjourned pending an opportunity for further discovery.

Dated: Wilmington, Delaware
August 11, 2008

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Donna L. Culver*
Robert J. Dehney (No. 3578)
Donna L. Culver (No. 2983)
Chase Manhattan Centre, 18th Floor
1201 North Market Street
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@mnat.com
Email: dculver@mnat.com

and

**KUTAK ROCK LLP**
Bruce A. Wilson, Esq. (NE Bar # 18885)
1650 Farnam Street
Omaha, Nebraska 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
Email: bruce.wilson@kutakrock.com

ATTORNEYS FOR MBIA INSURANCE CORPORATION

2444690.1