# EXHIBIT A

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF **DELAWARE** | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>AMERICAN HOME MORTGAGE CORP., a New York Corporation. | Case Number:<br>07-11047 (CSS) (Jointly Administered) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Indymac Bank, F.S.B. | ☐ Check this box to indicate that this claim amends a previously filed |
| Name and address where notices should be sent:<br>Frederick D. Holden, Jr.<br>Orrick, Herrington & Sutcliffe LLP<br>405 Howard Street<br>San Francisco, CA 94105-2669<br>Telephone number: (415) 773-5985 | Filed: USBC - District of Delaware<br>American Home Mortgage Holdings, Inc., Et Al.<br>07-11047 (CSS)  0000008677 |
| Name and address where payment should be sent (if different from above):<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:      $ 30,933,097.15 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim: See Addendum attached hereto and hereby incorporated<br>(See instruction #2 on reverse side.)      herein | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 3. Last four digits of any number by which creditor identifies debtor: _____<br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property:$_____  Annual Interest Rate _____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $ _____  Basis for perfection: _____<br><br>Amount of Secured Claim: $ _____  Amount Unsecured: $ _____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | Amount entitled to priority:<br><br>$ _____ |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. See Exhibits I and II to the Addendum attached hereto.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date: 1/10/08 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*Frederick D. Holden*<br>Frederick D. Holden, Jr., Attorney for Creditor | FILED / RECEIVED<br>FOR COURT USE ONLY<br>JAN 1 1 2008<br>EPIQ BANKRUPTCY SOLUTIONS, LLC |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

www.FormsWorkflow.com

**AMERICAN HOME MORTGAGE CORP., a New York Corporation ("Debtor")**
**Chapter 11 Case No. 07-11047 (CSS) (Jointly Administered)**

**ADDENDUM TO PROOF OF CLAIM OF**
**INDYMAC BANK, F.S.B. ("Creditor")**

Creditor and Debtor are parties to a Mortgage Loan Purchase and Interim Servicing Agreement (the "Agreement"), dated as of January 16, 2002, a true and correct copy of which is attached hereto as Exhibit I and hereby made a part of this Proof of Claim.

In Section 3.02 of the Agreement, Debtor represented and warranted to Creditor that each loan sold under the Agreement had certain attributes. In Section 3.03 of the Agreement, Debtor agreed to repurchase all loans for which there is a breach of any of such representations or warranties by Debtor, unless the breach is cured or the subject loan is replaced by a qualified substitute loan. By Section 3.05 of the Agreement, Debtor agreed to repurchase all loans sold under the Agreement, for which any monthly payment that comes due within the first three months after the loan is closed is not made in the month in which it comes due.

Attached hereto as Exhibit II and hereby made a part of this Proof of Claim is a list of loans sold under the Agreement and which Debtor is obligated to repurchase from Creditor. Exhibit II specifies the purchase price ("Fidelity UPB") and the event giving rise to the repurchase obligation with regard to each loan ("QC1"). Various additional information to enable Debtor to identify the subject loans is also listed. Upon request to Creditor's counsel at the address listed above, additional information or documentation reasonably requested will be provided.

As noted on Exhibit II, the total repurchase obligation of Debtor to Creditor is now **$30,933,097.15**. Creditor's claim may be reduced as collateral securing these loans is foreclosed upon or payments are received. This Proof of Claim will be amended, when and as requested by Debtor, to reflect any such reductions required by the Agreement or applicable law.

## MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

This MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT is made and entered into as of January 16, 2002 (the "Agreement"), by and between IndyMac Bank, F.S.B., a federal savings bank, having an address at 3465 East Foothill Boulevard, Pasadena, California 91107 ("Purchaser"), and American Home Mortgage, a New York corporation, having an address at 520 Broadhollow Road, Melville, New York 11747 (the "Seller").

### R E C I T A L S

Purchaser has agreed to purchase from Seller and Seller has agreed to sell to Purchaser certain Mortgage Loans. This Agreement is intended to set forth the terms and conditions by which Seller shall transfer and Purchaser shall acquire such mortgage loans.

In consideration of the promises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

### ARTICLE I

### DEFINITIONS

Unless the context requires otherwise, all capitalized terms used herein shall have the meanings assigned to such terms in this Article I unless defined elsewhere herein. Any capitalized term used or defined in a Purchase Confirmation that conflicts with the corresponding definition set forth herein shall supersede such term.

Adjustable Rate Mortgage Loan: Any Mortgage Loan in which the related Mortgage Note contains a provision whereby the Mortgage Interest Rate is adjusted from time to time in accordance with the terms of such Mortgage Note.

Adjustment Date: As to each Mortgage Loan, the date on which the Mortgage Interest Rate is adjusted in accordance with the terms of the related Mortgage Note.

Agency: Either Fannie Mae or Freddie Mac.

Agreement: This Mortgage Loan Purchase and Interim Servicing Agreement including all amendments hereof and supplements and exhibits hereto.

Appraised Value: The value of the related Mortgaged Property as set forth in an appraisal made in connection with the origination of a Mortgage Loan or the sale price of the related Mortgaged Property if the proceeds of such Mortgage Loan were used to purchase such Mortgaged Property, whichever is less.

**Assignment of Mortgage**: An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to Purchaser.

**Business Day**: Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions in the State of California are authorized or obligated by law or executive order to be closed.

**Closing**: The consummation of the sale and purchase of each Mortgage Loan Package.

**Closing Date**: The date on which the purchase and sale of the Mortgage Loans constituting a Mortgage Loan Package is consummated, as set forth in the related Purchase Confirmation.

**Collateral Documents**: The collateral documents pertaining to each Mortgage Loan as set forth in Exhibit A hereto.

**Collateral File**: With respect to each Mortgage Loan, a file containing each of the Collateral Documents.

**Credit File**: With respect to each Mortgage Loan, the documents described on Exhibit A together with any other documents held by the Seller in connection with the Mortgage Loans.

**Custodial Agreement**: The letter agreement, substantially in the form of Exhibit C, that governs the temporary retention of the Collateral Files by the Custodian with respect to a Closing Date.

**Custodian**: Bankers Trust Company of California, N.A., its successor in interest or assign, or such other custodian that may be designated by Purchaser from time to time.

**Cut-off Date**: The first day of the month in which the related Closing Date occurs.

**Cut-off Date Balance**: The aggregate unpaid principal balance of the Mortgage Loans in a Mortgage Loan Package as of the Cut-off Date, after application of (i) scheduled payments of principal due on such Mortgage Loans on or before such Cut-off Date, whether or not collected, and (ii) any Principal Prepayments received from the Mortgagor prior to the Cut-off Date.

**Escrow Payments**: The amounts constituting ground rents, taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums and other payments required to be escrowed, or in fact escrowed, by the Mortgagor with the Mortgagee pursuant to any Mortgage Loan.

Fannie Mae:  The Federal National Mortgage Association or any succe
organization.

Fixed Rate Mortgage Loan:  Any Mortgage Loan the Mortgage Interest Rate
which is fixed for the term of such Mortgage Loan.

Freddie Mac:  The Federal Home Loan Mortgage Corporation or any successor
organization.

Funding Deadline:  With respect to the Closing Date, one o'clock p.m. (1:00 p.m.)
New York time, or such other time mutually agreed to by Purchaser and Seller.

Gross Margin:  With respect to each Adjustable Rate Mortgage Loan, the fixed
percentage amount set forth in the related Mortgage Note, which amount is added to the index in
accordance with the terms of the related Mortgage Note to determine on each Interest
Adjustment Date, the Mortgage Interest Rate for such Mortgage Loan.

HUD:  The Department of Housing and Urban Development or any federal
agency or official thereof which may from time to time succeed to the functions thereof.

Interest Adjustment Date:  With respect to an Adjustable Rate Mortgage Loan, the
date on which an adjustment to the Mortgage Interest Rate on a Mortgage Note becomes
effective.

Interim Servicing Period:  With respect to any Mortgage Loan, the period
commencing on the related Closing Date and ending on the related Servicing Transfer Date.

Lifetime Rate Cap:  With respect to each Adjustable Rate Mortgage Loan, the
maximum Mortgage Interest Rate payable thereon as set forth in the related Mortgage Note.

LTV:  With respect to any Mortgage Loan, the ratio (expressed as a percentage)
of the Stated Principal Balance (or the original principal balance, if so indicated) of such
Mortgage Loan as of the date of determination to the Appraised Value of the related Mortgaged
Property.

Monthly Payment:  The scheduled monthly payment of principal and interest on a
Mortgage Loan.

Mortgage:  The mortgage, deed of trust or other instrument securing a Mortgage
Note, which creates a lien on an unsubordinated estate in fee simple in real property securing the
Mortgage Note or a lien upon a leasehold estate of the Mortgagor, as the case may be.

Mortgage Interest Rate:  The annual rate at which interest accrues on any
Mortgage Loan and with respect to an Adjustable Rate Mortgage Loan, as adjusted from time to
time in accordance with the provisions of the related Mortgage Note.

Mortgage Loan:  An individual mortgage loan which is the subject of this
Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified

on the Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding replaced or repurchased mortgage loans. Unless the context requires otherwise, any reference to the Mortgage Loans in this Agreement shall refer to the Mortgage Loans constituting a Mortgage Loan Package.

Mortgage Loan Package:  The Mortgage Loans sold to Purchaser pursuant to a Purchase Confirmation.

Mortgage Loan Schedule:  The schedule of Mortgage Loans annexed to a Purchase Confirmation as Exhibit A, such schedule setting forth the following information with respect to each Mortgage Loan:

(1)     the Seller's Mortgage Loan identifying number;

(2)     the Mortgagor's first and last name;

(3)     the street address of the Mortgaged Property including the city, state and zip code;

(4)     a code indicating whether the Mortgaged Property is owner-occupied, a second home or an investor property;

(5).     the type of residential property constituting the Mortgaged Property;

(6)     the original months to maturity of the Mortgage Loan;

(7)     the remaining months to maturity from the Cut-off Date, based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule;

(8)     the sales price, if applicable, Appraised Value and LTV, at origination;

(8)     the Mortgage Interest Rate as of origination and as of the Cut-off Date;

(9)     with respect to each Adjustable Rate Mortgage Loan, the:

    (i)     initial Adjustment Date,
    (ii)     next Adjustment Date immediately following the Cut-off Date,
    (iii)     index,
    (iv)     margin,
    (v)     Initial Rate Cap,
    (vi)     Periodic Rate Cap,
    (vii)     minimum Mortgage Interest Rate under the terms of the Mortgage Note, and
    (viii)     Lifetime Rate Cap;

(10)     the Origination Date of the Mortgage Loan;

(11)    the stated maturity date;

(12)    the amount of the Monthly Payment at origination;

(13)    the amount of the Monthly Payment as of the Cut-off Date;

(14)    the original principal amount of the Mortgage Loan;

(15)    the Stated Principal Balance of the Mortgage Loan as of the Cut-off Date;

(16)    a code indicating the purpose of the Mortgage Loan (i.e., purchase, rate and term refinance, equity take-out refinance);

(17)    a code indicating the documentation style (i.e. full, alternative, etc.);

(18)    the number of times during the twelve (12) month period preceding the Closing Date that any Monthly Payment has been received after the month of its scheduled due date;

(19)    the date on which the first payment is or was due;

(20)    a code indicating whether or not the Mortgage Loan is the subject of a PMI Policy; if so, the name of the mortgage insurer, the mortgage certificate number and the coverage percentage;

(21)    the last Due Date on which a Monthly Payment was actually applied to the unpaid principal balance of the Mortgage Loan.

(22)    product type (e.g. 3/1 ARM, 5/1 ARM, etc.);

(23)    credit score and/or mortgage score; and

(24)    a code indicating whether the Mortgage Loan is subject to a prepayment penalty and if so, the term thereof.

With respect to the Mortgage Loans in the aggregate, the Mortgage Loan Schedule shall set forth the following information, as of the Cut-off Date:

(1)    the number of Mortgage Loans;

(2)    the Cut-off Date Balance;

(3)    the weighted average Mortgage Interest Rate of the Mortgage Loans;

(4)    the weighted average maturity of the Mortgage Loans; and

(5)    the weighted average months to next Adjustment Date.

Mortgage Note: The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property: The real property (or leasehold estate, if applicable) securing repayment of the debt evidenced by a Mortgage Note.

Mortgagee: The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

Mortgagor: The obligor on a Mortgage Note.

Periodic Rate Cap: With respect to each Adjustable Rate Mortgage Loan, the maximum amount by which the Mortgage Interest Rate may increase or decrease on an Adjustment Date above or below the Mortgage Interest Rate previously in effect.

Person: Any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

PMI Policy: A policy of private mortgage guaranty insurance relating to a Mortgage Loan and issued by a Qualified Insurer.

Premium Percentage: The greater of (i) 0% and (ii) the Purchase Price divided by the Cut-off Balance minus 100%.

Purchase Price: The amount paid on the related Closing Date by Purchaser to Seller in exchange for the Mortgage Loan Package purchased on such Closing Date as set forth in the applicable Purchase Confirmation.

Purchase Confirmation: The letter agreement, substantially in the form of Exhibit B hereto, executed by Seller and Purchaser in connection with the purchase and sale of each Mortgage Loan Package, which sets forth the terms relating thereto including a description of the related Mortgage Loans (including the Mortgage Loan Schedule), the purchase price for such Mortgage Loans, the Closing Date and the Servicing Fee.

Purchaser: The Person identified as the "Purchaser" in the preamble to this Agreement or its successor in interest or any successor or assign to Purchaser under this Agreement as herein provided. Any reference to "Purchaser" as used herein shall be deemed to include any designee of Purchaser.

Qualified Insurer: An insurance company duly qualified as such under the laws of the states in which the Mortgaged Properties are located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, which insurer is approved in such capacity by an Agency.

Qualified Substitute Mortgage Loan: A mortgage loan that must, on the date of substitution, (i) have an unpaid principal balance, after deduction of all scheduled payments due

05/09/2002 1:28 PM                        -6-

in the month of substitution (or if more than one (1) mortgage loan is being substituted, an aggregate principal balance), not in excess of the unpaid principal balance of the repurchased Mortgage Loan; (ii) have a Mortgage Interest Rate not less than, and not more than 1% greater than, the Mortgage Interest Rate of the repurchased Mortgage Loan; (iii) have a remaining term to maturity not greater than, and not more than one year less than, the maturity date of the repurchased Mortgage Loan; (iv) comply with each representation and warranty (respecting individual Mortgage Loans) set forth in Section 3.02 hereof; (v) shall be the same type of Mortgage Loan (i.e., a Convertible Mortgage Loan or a Fixed Rate Mortgage Loan).

Repurchase Price:  With respect to any Mortgage Loan, a price equal to (i) 100% plus the Premium Percentage multiplied by the Stated Principal Balance of the Mortgage Loan plus (ii) interest on such Stated Principal Balance at the Mortgage Interest Rate from the last date through which interest has been paid and distributed to Purchaser to the date of repurchase to the last day of the month of repurchase.

Seller:  [Seller], or any successor or assign under this Agreement as provided herein.

Seller Guidelines:  The Seller Seller/Servicer Guidelines and all amendments or additions thereto, a copy of which are attached as Exhibit D.

Servicing Fee:  With respect to each Mortgage Loan, the fee per loan set forth in the applicable Trade Confirmation or the Purchase Confirmation.

Servicing File:  With respect to each Mortgage Loan, the Credit File and copies of each document in the Collateral File.

Servicing Rights:  With respect to each Mortgage Loan, any and all of the following: (i) all rights to service the Mortgage Loans; (ii) any payments or moneys payable or received for servicing the Mortgage Loans; (iii) any late fees, assumption fees, penalties or similar payments with respect to the Mortgage Loans; (iv) all agreements or documents creating, defining or evidencing any such Servicing Rights and all rights of Seller thereunder, including, but not limited to, any clean-up calls and termination options; (v) all accounts and other rights to payments related to any of the property described in this paragraph; (vi) possession and use of any and all Mortgage Loan Files pertaining to the Mortgage Loans or pertaining to the past, present, or prospective servicing of the Mortgage Loans; and (vii) all rights, powers and privileges incident to any of the foregoing.

Servicing Transfer Date:  With respect to each Mortgage Loan, the date on which servicing is transferred from Seller to Purchaser, as set forth in the related Purchase Confirmation.

Stated Principal Balance:  With respect to each Mortgage Loan as of any date of determination: (i) the unpaid principal balance of the Mortgage Loan at the Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, minus (ii) all amounts received by Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal or advances in lieu thereof.

Trade Confirmation:  A letter agreement executed by Seller and Purchaser prior to the applicable Closing Date confirming the terms of a prospective purchase and sale of a Mortgage Loan Package.

Transaction Documents:  The Trade Confirmation, the Purchase Confirmation and this Agreement.

## ARTICLE II

## CONVEYANCE FROM SELLER TO PURCHASER

**2.01    Conveyance of Mortgage Loans; Possession of Mortgage Files.**
(a)    Mortgage Documents.  On each Closing Date, the Seller, simultaneously with the receipt of the Purchase Price, does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement, all rights, title and interest of the Seller in and to the Mortgage Loans in the related Mortgage Loan Package, together with the Servicing Rights with respect to such Mortgage Loans and Mortgage Files and all rights under the documents contained therein for each Mortgage Loan in the related Mortgage Loan Package.  The contents of each Servicing File required to be retained by the Seller to service the Mortgage Loans prior to the Servicing Transfer Date and thus not delivered to the Purchaser are and shall be held in trust by the Seller for the benefit of Purchaser as the owner thereof. The Seller's possession of any portion of the Servicing File is at the will of the Purchaser for the sole purpose of facilitating servicing of the related Mortgage Loan, and such retention and possession by the Seller shall be in a custodial capacity only. The ownership of each Mortgage Note, Mortgage, and the contents of the Collateral File and Credit File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Seller at the will of the Purchaser in such custodial capacity only. The Servicing File retained by the Seller shall be segregated from the other books and records of the Seller and shall be appropriately marked to clearly reflect the sale of the related Mortgage Loan to the Purchaser.

(b)    Sale of Mortgage Loans.  Record title to each Mortgage and the related Mortgage Note shall be in the name of the Purchaser or as Purchaser shall designate. The Seller shall reflect the sale of each Mortgage Loan on the Seller's balance sheet and other financial statements as a sale of assets.  This Agreement continuously, from the time of its execution, shall be an official record of the Seller and Seller will maintain a copy of this Agreement and each agreement related hereto in its official books and records.

(c)    Delivery of Documents.  On or prior to the date seven (7) Business Days prior to the related Closing Date, the Seller shall deliver to the Custodian, the Collateral Files.  The Seller shall deliver the Servicing File to the Purchaser on the Servicing Transfer Date. The Seller shall repurchase within thirty (30) days of demand from the Purchaser any Mortgage Loan as to which the Seller fails to deliver any Collateral Documents as required by this Agreement.

(d)    Custodian.  At the request of the Purchaser, the Seller has delivered and released to the Custodian the Collateral Files. The Purchaser represents that the

Custodian has certified its receipt of all such Mortgage Loan documents required to be delivered pursuant to the Custodial Agreement, as evidenced by the Initial Certification of the Custodian in the form annexed to the Custodial Agreement. The Purchaser shall be responsible for maintaining the Custodial Agreement and shall pay all fees and expenses of the Custodian.

(e)     Additional Documents.  The Seller shall forward to the Custodian original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into within two weeks of their execution, provided, however, that the Seller shall provide the Custodian with a certified true copy of any such document submitted for recordation within one week of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within sixty days of its submission for recordation.

Section 2.02    Due Diligence by Purchaser.    Prior to the Closing Date, Seller shall make available to Purchaser the Collateral File and Credit File for each Preliminary Mortgage Loan in the related Preliminary Mortgage Loan Package.  Purchaser shall have the right to review the Credit File for each such Preliminary Mortgage Loan, at Seller's offices or such other location agreed upon by Purchaser and Seller, for the purpose of determining whether each Preliminary Mortgage Loan conforms in all respects to the applicable terms contained in the Transaction Documents, which determination shall be made in Purchaser's sole discretion. In the event that Purchaser rejects any Preliminary Mortgage Loan based on such review, Seller shall have the right, in its sole discretion, to substitute replacement Preliminary Mortgage Loans satisfying the requirements set forth above, and Purchaser shall have the right to review any such replacement Preliminary Mortgage Loan(s) in the manner contemplated above.

Section 2.03    Identification of Mortgage Loan Package.  At least three (3) Business Days prior to the Closing Date, Purchaser shall identify those Preliminary Mortgage Loans that Purchaser intends to be included in the Mortgage Loan Package.

Section 2.04    Credit Document Deficiencies Identified During Due Diligence. If, with respect to a Mortgage Loan Package, the related Purchase Confirmation identifies any Mortgage Loan for which the related Credit File is missing material documentation (as used therein, the "Missing Credit Documents"), Seller agrees to procure each such Missing Credit Document within sixty (60) days following the related Closing Date or, if unable to do so, repurchase such Mortgage Loan at the Repurchase Price.  In the event of a default by a Mortgagor or any material impairment of the Mortgaged Property, in either case arising from or in connection with the failure of Seller to deliver the Missing Credit Document within the time specified above, Seller shall, in addition to its obligation to repurchase the Mortgage Loan, indemnify Purchaser from any loss, liability, or expense relating thereto.

Section 2.05    Closing. The Closing of each Mortgage Loan Package shall take place on the related Closing Date and shall be subject to the satisfaction of each of the following conditions, unless otherwise waived by the prejudiced party(ies):

(a)     All of the representations and warranties of Seller under this Agreement shall be true and correct in all material respects as of the Closing Date and no event

shall have occurred that, with notice or the passage of time, would constitute a default under this Agreement;

(b)     All of the representations and warranties of Purchaser under this Agreement shall be true and correct in all material respects as of the Closing Date and no event shall have occurred that, with notice or the passage of time, would constitute a default under this Agreement; and

(c)     Both parties shall have executed the related Purchase Confirmation and Custodial Agreement.

**Section 2.06    Payment of the Purchase Price**.  Subject to the conditions set forth in Section 2.05, Purchaser shall pay to Seller on the related Closing Date the Purchase Price by wire transfer of immediately available funds to the account designated by Seller on or before the Funding Deadline.

**Section 2.07    Entitlement to Payments on the Mortgage Loans.**  With respect to any Mortgage Loan purchased hereunder, Purchaser shall be entitled to (a) all scheduled principal due after the related Cut-off Date; (b) all other recoveries of principal collected on or after the related Cut-off Date, except for scheduled payments of principal due on or before the related Cut-off Date; and (c) all payments of interest on such Mortgage Loan net of the Servicing Fee (minus that portion of any such payment that is allocable to the period prior to the related Cut-off Date).

**Section 2.08    Payment of Costs and Expenses**.  The Purchaser shall pay any commissions due its sales personnel, the legal fees and expenses of its attorneys and any due diligence expenses.  The Seller shall pay any costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans including the costs of obtaining and assigning tax service and flood service contracts, including fees for title policy endorsements and continuations.  The Seller shall pay to the Purchaser on the Closing Date $25.00 per Mortgage Loan for the recording of Assignments of Mortgage, $69.00 per Mortgage Loan for each tax service contract, and $7.50 per Mortgage Loan for each flood service contract.

ARTICLE III

REPRESENTATIONS AND WARRANTIES;
REMEDIES FOR BREACH

**Section 3.01    Representations and Warranties Respecting Seller**.  Seller represents, warrants, and covenants to Purchaser that, as of the Closing Date:

(a)     The Seller is a corporation validly existing under the laws of [state] and has all licenses necessary to carry out its business as now being conducted, and is licensed and qualified to transact business in and is in good standing under the laws of each state in which any Mortgaged Property is located or is otherwise exempt under applicable law from such licensing or qualification or is otherwise not required under applicable law to effect such licensing or qualification and no demand for such licensing or qualification has been made upon such Seller

by any such state, and in any event such Seller is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of each Mortgage Loan and the servicing of the Mortgage Loans in accordance with the terms of this Agreement;

(b)    The Seller has the full power and authority and legal right to hold, transfer and convey each Mortgage Loan, to sell each Mortgage Loan and to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this Agreement and to conduct its business as presently conducted, has duly authorized the execution, delivery and performance of this Agreement and any agreements contemplated hereby, has duly executed and delivered this Agreement, and any agreements contemplated hereby, and this Agreement and each Assignment of Mortgage to the Purchaser and any agreements contemplated hereby, constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms, and all requisite corporate action has been taken by the Seller to make this Agreement and all agreements contemplated hereby valid and binding upon the Seller in accordance with their terms;

(c)    Neither the execution and delivery of this Agreement, nor the origination or purchase of the Mortgage Loans by the Seller, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, or the fulfillment of or compliance with the terms and conditions of this Agreement will conflict with any of the terms, conditions or provisions of the Seller's charter or by-laws or materially conflict with or result in a material breach of any of the terms, conditions or provisions of any legal restriction or any agreement or instrument to which the Seller is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the material violation of any law, rule, regulation, order, judgment or decree to which the Seller or its properties are subject, or impair the ability of the Purchaser to realize on the Mortgage Loans.

(d)    There is no litigation, suit, proceeding or investigation pending or threatened, or any order or decree outstanding, with respect to the Seller which, either in any one instance or in the aggregate, is reasonably likely to have a material adverse effect on the sale of the Mortgage Loans, the execution, delivery, performance or enforceability of this Agreement, or which is reasonably likely to have a material adverse effect on the financial condition of the Seller.

(e)    No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement, or the sale of the Mortgage Loans and delivery of the Mortgage Files to the Purchaser or the consummation of the transactions contemplated by this Agreement, except for consents, approvals, authorizations and orders which have been obtained;

(f)    The consummation of the transactions contemplated by this Agreement is in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction;

(g)    The Seller will treat the sale of the Mortgage Loans to the Purchaser as a sale for reporting and accounting purposes and, to the extent appropriate, for federal income tax purposes;

(h)      Seller is an approved seller/servicer of residential mortgage loans for the Agencies and HUD, with such facilities, procedures and personnel necessary for the sound servicing of such mortgage loans. The Seller is duly qualified, licensed, registered and otherwise authorized under all applicable federal, state and local laws, and regulations, and is in good standing to sell mortgage loans to and service mortgage loans for the Agencies and no event has occurred which would make Seller unable to comply with eligibility requirements or which would require notification to either Agency;

(i)      The Seller does not believe, nor does it have any cause or reason to believe, that it cannot perform each and every covenant contained in this Agreement. The Seller is solvent and the sale of the Mortgage Loans will not cause the Seller to become insolvent. The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors. To the best of the Seller's knowledge, neither this Agreement nor any oral or written statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of fact or omits to state a necessary to make those statements not misleading;

(j)      The Seller shall not directly solicit, or provide information for or to any other party to directly solicit, the refinance of any Mortgage Loan;

(k)      Seller has delivered to the Purchaser financial statements of its parent or predecessor in interest, for its last two complete fiscal years. All such financial information fairly presents the pertinent results of operations and financial position for the period identified and has been prepared in accordance with GAAP consistently applied throughout the periods involved, except as set forth in the notes thereto. There has been no change in the business, operations, financial condition, properties or assets of the Seller since the date of the Seller's financial information that would have a material adverse effect on its ability to perform its obligations under this Agreement; and

(l)      The Seller has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loans.

### Section 3.02    Representations and Warranties as to Individual Mortgage Loans.

References in this Section to percentages of Mortgage Loans refer in each case to the percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date. References to percentages of Mortgaged Properties refer, in each case, to the percentages of expected aggregate Stated Principal Balances of the related Mortgage Loans (determined as described in the preceding sentence). The Seller hereby represents and warrants to the Purchaser, as to each Mortgage Loan, as of the Closing Date as follows:

(a)      As of the Closing Date, or such date as specified in the Mortgage Loan Schedule, the information set forth in the Mortgage Loan Schedule is complete, true and correct in all material respects;

(b)      The Mortgage creates a valid, subsisting and enforceable first or second lien or a first or second priority ownership interest in an estate in fee simple or a leasehold estate in real

property securing the related Mortgage Note subject to principles of equity, bankruptcy, insolvency and other laws of general application affecting the rights of creditors. With respect to a Mortgage Loan that is a Co-op Loan, the Mortgage creates a first lien or a first priority ownership interest in the stock ownership and leasehold rights associated with the cooperative unit securing the related Mortgage Note.

(c)    All payments due prior to the Cut-off Date for such Mortgage Loan have been made as of the Closing Date, the Mortgage Loan has not been dishonored; there are no material defaults under the terms of the Mortgage Loan; The Seller has not advanced its own funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the Mortgaged Property subject to the Mortgage, directly or indirectly, for the payment of any amount required by the Mortgage Loan. As of the Closing Date, all of the Mortgage Loans will have an actual "Interest Paid to Date" no earlier than the Due Date preceding the Cut-off Date, as evidenced by a posting to Seller's servicing collection system. No Monthly Payment is delinquent as of the Closing Date nor has any Monthly Payment been delinquent at any time prior to the Closing Date. For purposes of this paragraph, a Mortgage Loan will be deemed delinquent if any Monthly Payment was not paid by the Mortgagor in the month such payment was due.

(d)    There are no defaults by Seller in complying with the terms of the Mortgage, and, at origination, all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid;

(e)    The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments which have been recorded to the extent any such recordation is required by law, or, necessary to protect the interest of the Purchaser. No instrument of waiver, alteration or modification has been executed, and no Mortgagor has been released, in whole or in part, from the terms thereof except in connection with an assumption agreement and which assumption agreement is part of the Mortgage File and the terms of which are reflected in the Mortgage Loan Schedule; the substance of any such waiver, alteration or modification has been approved by the issuer of any related Primary Mortgage Insurance Policy and title insurance policy, to the extent required by the related policies;

(f)    The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render the Mortgage Note or Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto; and, as of the Closing Date the Mortgagor was not a debtor in any state or federal bankruptcy or insolvency proceeding;

(g)    All buildings or other customarily insured improvements upon the Mortgaged Property are insured by an insurer acceptable under the Seller Guidelines or the Fannie Mae or FHLMC Guides, against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Seller Guidelines or the Fannie Mae or FHLMC Guide. All such standard

hazard policies are in full force and effect and contain a standard mortgagee clause naming the Seller and its successors in interest and assigns as loss payee and such clause is still in effect and all premiums due thereon have been paid. If required by the Flood Disaster Protection Act of 1973, as amended, the Mortgage Loan is covered by a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration which policy conforms to Fannie Mae or FHLMC requirements. Such policy was issued by an insurer acceptable under the Seller Guidelines or the Fannie Mae or FHLMC guidelines. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor. Neither the Seller (nor any prior originator or servicer of any of the Mortgage Loans) nor any Mortgagor has engaged in any act or omission which has impaired or would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either;

(h)    Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have been complied with in all material respects; the Seller maintains, and shall maintain, evidence of such compliance as required by applicable law or regulation and shall make such evidence available for inspection at the Seller's office during normal business hours upon reasonable advance notice;

(i)    The Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor;

(j)    The Mortgage is a valid, subsisting, enforceable and perfected first or second lien on the Mortgaged Property, including all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems affixed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing securing the Mortgage Note's original principal balance subject to principles of equity, bankruptcy, insolvency and other laws of general application affecting the rights of creditors. The Mortgage and the Mortgage Note do not contain any evidence of any security interest or other interest or right thereto. Such lien is free and clear of all adverse claims, liens and encumbrances having priority over the first lien of the Mortgage subject only to (1) the lien of non-delinquent current real property taxes and assessments not yet due and payable, (2) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording which are acceptable to mortgage lending institutions generally and either (A) which are referred to in the lender's title insurance policy delivered to the originator or otherwise considered in the appraisal made for the originator of the Mortgage Loan, or (B) which do not adversely affect the residential use or Appraised Value of the Mortgaged Property as set forth in such appraisal, and (3) other matters to which like properties are commonly subject which do not individually or in the aggregate materially interfere with the

benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property. Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting, enforceable and perfected first or second lien and first or second priority security interest on the property described therein, and the Seller has the full right to sell and assign the same to the Purchaser;

(k)    The Mortgage Note and the related Mortgage are original and genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in all respects in accordance with its terms subject to principles of equity, bankruptcy, insolvency and other laws of general application affecting the rights of creditors, and the Seller has taken all action necessary to transfer such rights of enforceability to the Purchaser. All parties to the Mortgage Note and the Mortgage had the legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage. The Mortgage Loan Documents are on forms acceptable to Fannie Mae and FHLMC. The Mortgage Note and the Mortgage have been duly and properly executed by such parties. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Seller, the Mortgagor, or on the part of any other party involved in the origination or servicing of the Mortgage Loan. Either the Mortgagor or a guarantor is a natural person. The proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(l)    The Seller is the sole owner and holder of the Mortgage Loan and the indebtedness evidenced by the Mortgage Note. Upon the sale of the Mortgage Loan to the Purchaser, the Seller will retain the Mortgage File or any part thereof with respect thereto not delivered to the Purchaser or the Purchaser's designee in trust only for the purpose of servicing and supervising the servicing of the Mortgage Loan. Immediately prior to the transfer and assignment to the Purchaser, the Mortgage Loan, including the Mortgage Note and the Mortgage, were not subject to an assignment, sale or pledge to any Person other than Purchaser, and the Seller had good and marketable title to and was the sole owner thereof and had full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest and has the full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign the Mortgage Loan pursuant to this Agreement and following the sale of the Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest. The Seller intends to relinquish all rights to possess, control and monitor the Mortgage Loan, except for the purposes of servicing the Mortgage Loan as set forth in this Agreement. After the Closing Date, the Seller will not have any right to modify or alter the terms of the sale of the Mortgage Loan and the Seller will not have any obligation or right to repurchase the Mortgage Loan or substitute another Mortgage Loan, except as provided in this Agreement, or as otherwise agreed to by the Seller and the Purchaser;

(m)    Each Mortgage Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy or insurance acceptable to Fannie Mae or FHLMC

(including adjustable rate endorsements), issued by a title insurer acceptable to Fannie Mae or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained in (j)(1), (2) and (3) above) the Seller, its successors and assigns, as to the first or second priority lien of the Mortgage in the original principal amount of the Mortgage Loan and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate and Monthly Payment. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. The Seller, its successors and assigns, is the sole insured of such lender's title insurance policy, such title insurance policy has been duly and validly endorsed to the Purchaser or the assignment to the Purchaser of the Seller's interest therein does not require the consent of or notification to the insurer and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder or servicer of the related Mortgage, including the Seller, nor any Mortgagor, has done, by act or omission, anything that would impair the coverage of such lender's title insurance policy;

(n)     There is no default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration; and neither the Seller nor any prior mortgagee has waived any default, breach, violation or event permitting acceleration;

(o)     There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to or equal to the lien of the related Mortgage;

(p)     All improvements subject to the Mortgage which were considered in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly within the project with respect to a condominium unit) and no improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in clause (m) above and all improvements on the property comply with all applicable zoning and subdivision laws and ordinances;

(q)     Each Mortgage Loan was originated by or for the Seller pursuant to, and conforms with, the Seller's underwriting guidelines. The Mortgage Loan bears interest at a fixed or an adjustable rate as set forth in the Mortgage Loan Schedule, and Monthly Payments under the Mortgage Note are due and payable on the first day of each month. The Mortgage contains the usual and enforceable provisions of the Seller at the time of origination for the acceleration of the payment of the unpaid principal amount of the Mortgage Loan if the related Mortgaged Property is sold without the prior consent of the mortgagee thereunder;

(r)     The Mortgaged Property is not subject to any material damage. At origination of the Mortgage Loan there was not, since origination of the Mortgage Loan there has not been, and there currently is no proceeding pending for the total or partial condemnation of the Mortgaged

Property. The Seller has not received notification that any such proceedings are scheduled to commence at a future date;

(s)    The related Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (1) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (2) otherwise by judicial foreclosure. There is no homestead or other exemption available to the Mortgagor, which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage;

(t)    If the Mortgage constitutes a deed of trust, a trustee, authorized and duly qualified if required under applicable law to act as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses, except as may be required by local law, are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale or attempted sale after default by the Mortgagor;

(u)    The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the final approval of the mortgage loan application by a qualified appraiser, approved by the Seller, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan, and the appraisal and appraiser both satisfy the requirements of Fannie Mae or FHLMC and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated. The appraisal is in a form acceptable to Fannie Mae or FHLMC;

(v)    All parties which have had any interest in the Mortgage, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (A) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (B) (1) organized under the laws of such state, or (2) qualified to do business in such state, or (3) federal savings and loan associations or national banks or a Federal Home Loan Bank or savings bank having principal offices in such state, or (4) not doing business in such state;

(w)    The related Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to above and such collateral does not serve as security for any other obligation;

(x)    The Mortgagor has received and has executed, where applicable, all disclosure materials required by applicable law with respect to the making of such mortgage loans;

(y)    The Mortgage Loan does not contain "balloon" or "graduated payment" features; no Mortgage Loan is subject to a buydown agreement or contains any buydown provision;

(z)    The Mortgagor is not in bankruptcy and, the Mortgagor is not insolvent and there are no circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that could reasonably be expected to cause private

institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or materially adversely affect the value or marketability of the Mortgage Loan;

(aa)    The Mortgage Loan bears interest based upon a thirty (30) day month and a three hundred and sixty (360) day year. The Mortgage Loan has an original term to maturity of not more than 30 years, with interest payable in arrears on the first day of each month.

(bb)    The Assignment from the Seller is in recordable form and, when completed, is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(cc)    The Mortgaged Property is located in the state identified in the Mortgage Loan Schedule and consists of a single parcel of real property with a detached single family residence erected thereon, or a townhouse, or a two-to four-family dwelling, or an individual condominium unit in a condominium project, or an individual unit in a planned unit development or a de minimis planned unit development, provided, however, that no residence or dwelling is a single parcel of real property with a manufactured home not affixed to a permanent foundation, or a mobile home. Any condominium unit or planned unit development either conforms with applicable Fannie Mae or FHLMC requirements regarding such dwellings or is covered by a waiver confirming that such condominium unit or planned unit development is acceptable to Fannie Mae or FHLMC or is otherwise "warrantable" with respect thereto. As of the Origination Date, no portion of the Mortgaged Property was used for commercial purposes, and since the Origination Date, no portion of any Mortgaged Property has been used for commercial purposes;

(dd)    Principal payments on the Mortgage Loan commenced no more than sixty (60) days after the funds were disbursed in connection with the Mortgage Loan;

(ee)    The Mortgaged Property is lawfully occupied under applicable law, and all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities;

(ff)    To the best of Seller's knowledge, there is no pending action or proceeding directly involving the Mortgaged Property in which compliance with any environmental law, rule or regulation is an issue. There is no violation of any environmental law, rule or regulation with respect to the Mortgaged Property; and neither the Seller nor the Seller have received any notice of any environmental hazard on the Mortgaged Property and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property;

(gg)    The Mortgagor has not notified the Seller, and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Soldiers' and Sailors' Civil Relief Act of 1940;

(hh)    No Mortgage Loan was made in connection with facilitating the trade-in or exchange of a Mortgaged Property;

(ii)    No action has been taken or failed to be taken by Seller, on or prior to the Closing Date which has resulted or will result in an exclusion from, denial of, or defense to coverage under any primary mortgage insurance policy (including, without limitation, any exclusions, denials or defenses which would limit or reduce the availability of the timely payment of the full amount of the loss otherwise due thereunder to the insured) whether arising out of actions, representations, errors, omissions, negligence, or fraud of the Seller, or for any other reason under such coverage;

(jj)The Mortgage Loan was originated, within the meaning of section 3(a)(41) of the Securities Exchange Act of 1934, by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to sections 203 and 211 of the National Housing Act, a savings and loan association, a savings bank, a commercial bank, credit union, insurance company or similar institution which is supervised and examined by a federal or state authority;

(kk)    None of the Mortgage Loans are simple interest Mortgage Loans and none of the Mortgaged Properties are timeshares;

(ll)    Each Mortgage Note, each Mortgage, each Assignment and any other documents required pursuant to this Agreement to be delivered to the Purchaser or its designee, or its assignee for each Mortgage Loan, have been, on or before the Closing Date, delivered to the Purchaser or its designee, or its assignee;

(mm)  To the best of Seller's knowledge, no statement, tape, diskette, form, report or other document prepared by, or on behalf of, Seller pursuant to this Agreement or in connection with the transactions contemplated hereby, contains or will contain any statement that is or will be inaccurate or misleading in any material respect;

(nn)    The Seller used no selection procedures that identified the Mortgage Loans as being less desirable or valuable than other comparable mortgage loans in the Seller's portfolio at the Cut-off Date;

(oo)    The Mortgage Loan is not subject to the requirements of Section 129 of the Truth in Lending Act (Section 32 of Regulation Z) regarding "high cost" mortgages or any applicable federal, state, or local law or regulation regarding "high cost", "threshold" or "predatory" loans;

(pp)    The origination and servicing practices used by the Seller and any prior originator or servicer with respect to each Mortgage Note and Mortgage have been legal and in accordance with applicable laws and regulations and the Mortgage Loan Documents, and in all material respects proper and prudent in the mortgage origination and servicing business. With respect to escrow deposits and payments that the Seller, on behalf of an investor, is entitled to collect, all such payments are in the possession of, or under the control of, the Seller, and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. All Escrow Payments have been collected in full compliance with state and federal law and the provisions of the related Mortgage Note and Mortgage. As to any Mortgage Loan that is the subject of an escrow, escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every escrowed item that remains unpaid and has been assessed but is not yet due and payable. No escrow deposits or other charges or

payments due under the Mortgage Note have been capitalized under any Mortgage or the related Mortgage Note.

### Section 3.03   Remedies for Breach of Representations and Warranties.

(a) Notice of Breach. The representations and warranties set forth in Sections 3.01 and 3.02 shall survive the sale of the Mortgage Loans to Purchaser and shall inure to the benefit of Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Collateral Documents or Credit File. Upon discovery by either Seller or Purchaser of a breach of any of the foregoing representations and warranties, the party discovering such breach shall give prompt notice to the other.

(b)   Cure/Repurchase.   Within ninety (90) days from the earlier of either discovery by or notice to Seller of a breach of a representation or warranty, Seller shall use its best efforts to cure such breach, and, if such breach cannot be cured, Seller shall, at Purchaser's option, repurchase such Mortgage Loan at the Repurchase Price. In the event that a breach shall involve any representation or warranty set forth in Section 3.01 and such breach cannot be cured within ninety (90) days of the earlier of either discovery by or notice to Seller of such breach, all of the Mortgage Loans shall, at Purchaser's option, be repurchased by Seller at the Repurchase Price. Notwithstanding the fact that a representation contained in Sections 3.02 may be limited to the Seller's knowledge, such limitation shall not relieve the Seller of its purchase obligation under the terms of this Section 3.03 if the substance of the representation is inaccurate.

(c)   Substitution.   If the breach shall involve a representation or warranty set forth in Section 3.02, Seller may, rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Qualified Substitute Mortgage Loan or Loans. If Seller has no Qualified Substitute Mortgage Loan, it shall repurchase the deficient Mortgage Loan. At the time of repurchase or substitution, Purchaser and Seller shall arrange for the reassignment of such Mortgage Loan and release of the related Collateral File to Seller and the delivery to Seller of any documents held by Purchaser or its designee relating to such Mortgage Loan. In the event Seller determines to substitute a Qualified Substitute Mortgage Loan for a repurchased Mortgage Loan, Seller shall, simultaneously with such reassignment, give written notice to Purchaser that substitution has taken place and identify the Qualified Substitute Mortgage Loan(s). In connection with any such substitution, Seller shall be deemed to have made as to such Qualified Substitute Mortgage Loan(s) the representations and warranties except that all such representations and warranties set forth in this Agreement shall be deemed made as of the date of such substitution. Seller shall effect such substitution by delivering to Purchaser, the Collateral Documents for such Qualified Substitute Mortgage Loan(s).

For any month in which Seller substitutes a Qualified Substitute Mortgage Loan for a repurchased Mortgage Loan, Seller shall determine the amount (if any) by which the aggregate principal balance of all Qualified Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all repurchased Mortgage Loans (after application of scheduled principal payments due in the month of substitution).

Seller shall notify the Purchaser of the amount of such shortfall in the month of substitution, and on the date of such substitution, Seller shall pay Purchaser an amount equal to the amount of such shortfall.

(d)    Indemnification.  In addition to its repurchase and substitution obligations, Seller shall indemnify Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from a breach of Seller's representations and warranties contained in Sections 3.01 and 3.02 .  The obligations of Seller set forth in this Section 3.03 to cure, substitute for, or repurchase a defective Mortgage Loan and to indemnify Purchaser as provided in this Section 3.03 constitute the sole remedies of Purchaser with respect to a breach of the foregoing representations and warranties.

(e)    Accrual of Cause of Action.  Any cause of action against Seller relating to or arising out of the breach of any representations and warranties made in Sections 3.01 or 3.02 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by Purchaser or notice thereof by Seller to Purchaser, (ii) failure by Seller to cure such breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon Seller by Purchaser for compliance with the relevant provisions of this Agreement.

**Section 3.04    Representations and Warranties Respecting Purchaser**.
Purchaser represents, warrants and covenants to Seller that, as of each Closing Date:

(a)    Organization and Standing.  Purchaser is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized and is qualified to transact business in and is in good standing under the laws of each state in which the nature of the business transacted by it or the character of the properties owned or leased by it requires such qualification;

(b)    Due Authority.  Purchaser has the full power and authority to perform, and to enter into and consummate, all transactions contemplated by this Agreement; Purchaser has the full power and authority to purchase and hold each Mortgage Loan and the Servicing Rights;

(c)    No Conflict.  Neither the acquisition of the Mortgage Loans or the Servicing Rights by Purchaser pursuant to this Agreement, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of Purchaser's charter or by-laws or result in a material breach of any legal restriction or any material agreement or instrument to which the Purchaser is now a party or by which it is bound, or constitute a material default or result in an acceleration under any of the foregoing, or result in the violation of any material law, rule, regulation, order, judgment or decree to which Purchaser or its property is subject;

(d)    No Pending Litigation.  There is no action, suit, proceeding, investigation or litigation pending or, to the Purchaser's knowledge, threatened, which either in any one instance or in the aggregate, if determined adversely to Purchaser would adversely affect

the purchase of the Mortgage Loans by Purchaser hereunder, or Purchaser's ability to perform its obligations under this Agreement; and

(e)    No Consent Required.  No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Purchaser of or compliance by Purchaser with this Agreement or the consummation of the transactions contemplated by this Agreement (including, but not limited to, any approval from HUD), or if required, such consent, approval, authorization or order has been obtained prior to the related Closing Date.

Section 3.05    Early Payment Default.  With respect to any Mortgage Loan, if the Monthly Payment with respect to any one the first three months following the Closing Date has not been paid by the end of the month in which such Monthly Payments was due, the Seller shall, upon receipt of notice from the Purchaser of such default, promptly repurchase such Mortgage Loan from the Purchaser in accordance with Section 3.03 (b) hereof.

ARTICLE IV

INTERIM SERVICING OF THE MORTGAGE LOANS
AND
TRANSFER OF SERVICING RIGHTS

Section 4.01    General.  The Mortgage Loans will be purchased by Purchaser and sold by Seller on a servicing-released basis and the purchase of the Mortgage Loans by Purchaser shall, for all purposes, include all Servicing Rights relating thereto. From each Closing Date to the related Servicing Transfer Date, Seller shall perform all required servicing activities and otherwise service the Mortgage Loans in conformance with the Purchaser's Servicing Guide. In consideration therefor, Purchaser shall pay Seller, with respect to each Mortgage Loan, the Servicing Fee for each month (or any portion thereof) during the Interim Servicing Period.

Section 4.02    Remittance.  With respect to any payment of principal or interest due after the Cut-off Date (including all prepayments) and received or applied to any Mortgagor's account by Seller during the Interim Servicing Period (or prior to the related Closing Date if any such payments were not reflected in the calculation of the Stated Principal Balance), Seller shall remit to Purchaser all such payments of principal and interest no later than five (5) Business Days after the related Servicing Transfer Date. With respect to any payment of principal or interest received or applied to any Mortgagor's account by Seller during the Interim Servicing Period which is remitted by Seller to Purchaser pursuant to this Section 4.02, and which payment (whether in the form of a check, money order, automatic clearing house or other means) is subsequently not honored and/or is returned to Seller for any reason, Purchaser shall reimburse Seller for the amount of the returned item (and all applicable fees and penalties charged to Seller, if any) within five (5) Business Days of Seller's request therefor.

Section 4.03    Notice.  Seller shall, no later than fifteen (15) days prior to the Servicing Transfer Date, inform in writing all Mortgagors of the change in servicer from Seller to Purchaser or Purchaser's designee, in accordance with applicable law.

**Section 4.04    Obligations of Seller after the Servicing Transfer Date**. Seller shall take, or cause to be taken, the following actions with respect to the Mortgage Loans on the related Servicing Transfer Date (or within such time as may otherwise be specified below):

(a)    _Other Documentation_.  Seller shall provide Purchaser any and all documents reasonably required by Purchaser in order to fully transfer to Purchaser possession of all tangible evidence of the Servicing Rights transferred hereunder; and

(b)    Mortgage Payments Received After Servicing Transfer Date.  Seller shall promptly forward to the Purchaser any payment received by it after the related Servicing Transfer Date with respect to any of the Mortgage Loans, whether such payment is in the form of principal, interest, taxes, insurance, loss drafts, insurance refunds, etc., in the original form received, unless such payment has been received in cash or by Seller's lock box facility, in which case Seller shall forward such payment in a form acceptable to the Purchaser.  Seller shall notify the Purchaser of the particulars of the payment, which notification shall set forth sufficient information to permit timely and appropriate processing of the payment by the Purchaser.

**Section 4.05    Prepaid Mortgage Loans.**

If a Mortgage Loan prepays in full within six (6) months after the Closing Date, the Seller shall reimburse the Purchaser for the premium over par that the Purchaser paid for such Mortgage Loan.

ARTICLE V

MISCELLANEOUS

**Section 5.01    Notices**.  All demands, notices and communications required or permitted to be provided hereunder shall be in writing and shall be deemed to have been duly given when delivered to the addresses first indicated on this Agreement or such other address as may hereafter be furnished to the other party by like notice.

**Section 5.02    Sale Treatment**.  It is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by Seller and not a pledge of the Mortgage Loans by Seller to Purchaser to secure a debt or other obligation of Seller.  Consequently, the sale of each Mortgage Loan shall be reflected as a sale on Seller's business records, tax returns and financial statements.  Accordingly, Seller and Purchaser shall each treat the transaction for federal income tax purposes as a sale by Seller, and a purchase by Purchaser, of the Mortgage Loans.

**Section 5.03    Exhibits**.  The Exhibits to this Agreement and each Trade Confirmation and Purchase Confirmation executed by Seller and Purchaser are hereby incorporated and made a part hereof and are an integral part of this Agreement.

**Section 5.04    General Interpretive Principles**.  For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)    the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)    accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)    references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other Subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)    reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)    the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision;

(f)    the term "include" or "including" shall mean without limitation by reason of enumeration; and

(g)    reference to the Transaction Documents or any other document referenced herein shall include all exhibits, schedules or other supplements thereto.

Section 5.05    **Reproduction of Documents**.  This Agreement and all documents relating thereto, including (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

Section 5.06    **Further Agreements**.  Seller shall execute and deliver to Purchaser and Purchaser shall be required to execute and deliver to Seller such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

Section 5.07    **Conflicts between Transaction Documents**.  In the event of any conflict, inconsistency or ambiguity between the terms and conditions of this Agreement and either the Trade Confirmation or Purchase Confirmation, the terms of the Trade Confirmation or Purchase Confirmation, as the case may be, shall control.  In the event of any conflict, inconsistency or ambiguity between the terms and conditions of the Trade Confirmation and the Purchase Confirmation, the terms of the Purchase Confirmation shall control.

Section 5.08  **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to agreements entered into and wholly performed within that state.

Section 5.09  **Severability Clause**.  Any part, provision, representation or warranty of this Agreement that is prohibited or that is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, the parties hereto waive any provision of law that prohibits or renders void or unenforceable any provision hereof.  If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to an amendment to this Agreement which places each party in the same or as economic position as each party would have been in except for such invalidity.

Section 5.10  **Successors and Assigns**.  This Agreement shall bind and inure to the benefit of and be enforceable by Seller and Purchaser and the respective permitted successors and assigns of Seller and Purchaser.

Section 5.11  **Confidentiality**.  Seller and Purchaser acknowledge and agree that the terms of the Transaction Documents shall be kept confidential and its contents will not be divulged to any party without the other party's consent, except to the extent that it is appropriate for Seller and Purchaser to do so in working with legal counsel, auditors, taxing authorities, or other governmental agencies.

Section 5.12  **Entire Agreement**.  This Agreement and the related Trade Confirmation and Purchase Confirmation constitute the entire understanding between the parties hereto with respect to each Mortgage Loan Package and supersede all prior or contemporaneous oral or written communications regarding same.  Seller and Purchaser understand and agree that no employee, agent or other representative of Seller or Purchaser has any authority to bind such party with regard to any statement, representation, warranty or other expression unless said statement, representation, warranty or other expression is specifically included within the express terms of this Agreement or the related Trade Confirmation or Purchaser Confirmation.  Neither this Agreement nor the Trade Confirmation nor the Purchase Confirmation shall be modified, amended or in any way altered except by an instrument in writing signed by both parties.

IN WITNESS WHEREOF, Seller and Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

American Home Mortgage, Seller

By _____     *No CHANGES MADE*
    Name: Robert L. Johnson Jr.
    Title: VICE PRESIDENT

IndyMac Bank, F.S.B., Purchaser

By _____
    Name:
    Title:

## EXHIBIT A

### COLLATERAL DOCUMENTS

1. The original Mortgage Note bearing all intervening endorsements, endorsed, "Pay to the order of _____, without recourse" and signed in the name of the Seller or the originator by an authorized officer. In the event that the Mortgage Loan was acquired by the Seller in a merger, the endorsement must be by "[Seller], successor by merger to [name of predecessor]"; and in the event that the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the endorsement must be by "[Seller], formerly known as [previous name]".

2. The original of any guarantee executed in connection with the Mortgage Note.

3. The original Mortgage, with evidence of recording thereon. If in connection with any Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon prior to the related Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Purchaser, a photocopy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, an officer's certificate of the Seller stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Purchaser upon receipt thereof by the Seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage.

4. The originals of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon, or a copy of such Mortgage certified by the related public recording office to be a true and complete copy of the original document.

5. The original Assignment of Mortgage, signed by the Seller or originator in blank; which assignment shall be in form and substance acceptable for recording but not recorded or with respect to each Cooperative Loan, Assignment of Pledge Agreement. In the event that the Mortgage Loan was acquired by the Seller in a merger, the assignment must be by "[Seller], successor by merger to [name of predecessor]"; and in the event that the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the assignment must be by "[Seller], formerly known as [previous name]."

6. Originals of all intervening assignments of the Mortgage with evidence of recording thereon or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Seller shall deliver or cause to be delivered to the

Purchaser, a photocopy of such intervening assignment, together with (i) in the case of a delay caused by the public recording office, an officer's certificate of the Seller stating that such intervening assignment of mortgage has been dispatched to the appropriate public recording office for recordation and that such original recorded intervening assignment of mortgage or a copy of such intervening assignment of mortgage certified by the appropriate public recording office to be a true and complete copy of the original recorded intervening assignment of mortgage will be promptly delivered to the Purchaser upon receipt thereof by the Seller; or (ii) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in the case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified by such public recording office to be a true and complete copy of the original recorded intervening assignment.

7.  The original policy, if any, of primary mortgage guaranty insurance, or where such insurance is provided by a master policy, a certified true copy of the master policy and the original certificate of insurance.

8.  The original or electronic copy (in a form generally acceptable on the secondary market) mortgagee policy of title insurance, except for those Mortgage Loans originated within 60 days before the related Closing Date, for which Mortgage Loans the Seller shall have delivered and released to the Purchaser the related binders. In addition, the Seller shall deliver to the Purchaser the original policy of title insurance within 90 days after the related Closing Date. The policy must be properly endorsed, any necessary notices of transfer must be forwarded and any other action required to be taken must be taken in order to fully protect, under the terms of the policy and applicable law, Purchaser's interest as first or second mortgagee.

9.  Any security agreement, chattel mortgage or equivalent executed in connection with the Mortgage.

If an officer's certificate of the Seller is delivered to the Purchaser because of a delay caused by the public recording office in returning any recorded document, the Seller shall deliver to the Purchaser, within 90 days of the related Closing Date, an officer's certificate which shall (i) identify the recorded document, (ii) state that the recorded document has not been delivered to the Custodian due solely to a delay caused by the public recording office, (iii) state the amount of time generally required by the applicable recording office to record and return a document submitted for recordation, and (iv) specify the date the applicable recorded document will be delivered to Custodian the applicable recorded document by the date specified in (iv) above. An extension of the date specified in (iv) above may be requested from the Purchaser, which consent shall not be unreasonably withheld.

The Credit File shall include the following documents:

1.  The original hazard insurance policy and, if required by law, flood insurance policy, in accordance with the Agreement.

2. Residential loan application.

3. Mortgage Loan closing statement.

4. Verification of employment and income except for Mortgage Loans originated under a Limited or Stated Documentation Program.

5. Verification of acceptable evidence of source and amount of down payment.

6. Credit report on the Mortgagor.

7. Residential appraisal report.

8. Photograph of the Mortgaged Property.

9. Survey of the Mortgaged Property, if any.

10. Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, sewer agreements, home association declarations, etc.

11. All required disclosure statements.

12. If available, termite report, structural engineer's report, water potability and septic certification.

13. Sales contract, if applicable.

14. Tax receipts, insurance premium receipts, ledger sheets, payment history from date of origination, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage loan file and which are required to document the Mortgage Loan or to service the Mortgage Loan.

15. Amortization schedule.

## **EXHIBIT B-1**

### FORM OF TRADE CONFIRMATION

### [PURCHASER LETTERHEAD]

## EXHIBIT B-2

### FORM OF PURCHASE CONFIRMATION

[PURCHASER LETTERHEAD]

[DATE]

[Seller]
[STREET ADDRESS]
[CITY, STATE AND ZIP]
Attn: [CONTACT, TITLE]

Re:   Purchase Confirmation

Gentlemen and Ladies:

This purchase confirmation (the "Purchase Confirmation") between [          ] ("Seller") and IndyMac Bank, F.S.B. (the "Purchaser") sets forth our agreement pursuant to which Purchaser is purchasing, and Seller is selling, on a servicing-released basis, those certain mortgage loans identified in Exhibit A hereto and more particularly described herein (including the Servicing Rights relating thereto, the "Mortgage Loans").

The purchase, sale and interim servicing of the Mortgage Loans as contemplated herein shall be governed by that certain Mortgage Loan Purchase and Interim Servicing Agreement dated as of [DATE], between Seller and Purchaser (as amended herein and otherwise, the "Agreement"). By executing this Purchase Confirmation, each of Seller and Purchaser again makes, with respect to itself and each Mortgage Loan, as applicable, all of the covenants, representations and warranties made by each such party in the Agreement, except as the same may be amended by this Purchase Confirmation.

All exhibits hereto are incorporated herein in their entirety.  In the event there exists any inconsistency between the Agreement and this Purchase Confirmation, the latter shall be controlling notwithstanding anything contained in the Agreement to the contrary.  All capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Agreement.

1.    Assignment and Conveyance of Mortgage Loans. Upon Purchaser's payment of the Purchase Proceeds in accordance with Section 2.07 of the Agreement, Seller shall sell, transfer, assign and convey to Purchaser, without recourse, but subject to the terms of the Purchase Confirmation and the Agreement, all of the right, title and interest of Seller in and to the Mortgage Loans.

2.    Defined Terms. As used in the Agreement, the following defined terms shall have meanings set forth below.

Closing Date: [DATE].

[b.    Missing Credit Documents: As set forth in Exhibit [B] hereto.]

[c.    Pending Mortgage Loans: As set forth in Exhibit [C] hereto.]

d.    Purchase Proceeds:

e.    Servicing Fee: $[AMOUNT].

f.    Servicing Transfer Date: [DATE].

3.    Description of Mortgage Loans: Each Mortgage Loan complies with the specifications set forth below in all material respects.

Loan Type: Each Mortgage Loan is a [Conventional] [Government] Mortgage Loan and a [Adjustable Rate] [Balloon] [Convertible] [Fixed Rate] Mortgage Loan.

[b.    Index: On each Interest Adjustment Date, the applicable index rate shall be a rate per annum equal to [the weekly average yield on U.S. Treasury securities adjusted to a constant maturity of one year, as published by the Board of Governors of the Federal Reserve System in Statistical Release No. H.15] [the average of interbank offered rates for six-month U.S. dollar denominated deposits in the London market (LIBOR), as published [in the Wall Street Journal] [by Fannie Mae] [the 11th District Cost of Funds as made available by the Federal Home Loan Bank] [the weekly average yield on certificates of deposit adjusted to a constant maturity of six months as published by the Board of Governors of the Federal Reserve System in Statistical Release No. H.15 or a similar publication]. ]

c.    Lien Position: Each Mortgage Loan is secured by a perfected [first] [second] lien Mortgage.

d.    Underwriting Criteria: Each Mortgage Loan [was underwritten generally in accordance with the Seller's credit underwriting guidelines in effect at the time such Mortgage Loan was originated] [conforms to the Fannie Mae or Freddie Mac mortgage eligibility criteria and is eligible for sale to, and securitization by, Fannie Mae or Freddie Mac] [conforms in all material respects to the GNMA mortgage eligibility criteria and is eligible for sale and securitization into a GNMA mortgage-backed security] [at the time of origination was underwritten to guidelines which are consistent with an institutional investor-quality mortgage loan].

Kindly acknowledge your agreement to the terms of this Purchase Confirmation by signing in the appropriate space below and returning this Purchase Confirmation to the undersigned. Telecopy signatures shall be deemed valid and binding to the same extent as the original.

SELLER                                              [PURCHASER]

By: _____          By: _____

04/17/2002 1:52 PM                              B-2-2

Name:
Title:

Name:
Title:

04/17/2002 1:52 PM                    B-2-3

**Exhibit A**
**to**
**Purchase Confirmation**


Mortgage Loan Schedule


(attached)

# EXHIBIT C

## FORM OF CUSTODIAL AGREEMENT

# **EXHIBIT D**

## SELLER GUIDELINES

Amendment to Mortgage Loan Purchase and Interim Servicing Agreement

On this day, March 22, 2007 the Mortgage Loan Purchase and Interim Servicing Agreement dated January 16, 2002 (the "Agreement"), by and between IndyMac Bank , F.S.B., a federal savings bank, having an address at 888 East Walnut Street, Pasadena, California 91101 ("Purchaser"), and American Home Mortgage Corp.         , a New York corporation, having an address at 538 Broadhollow Road, Melville, New York 11747 (the "Seller") is hereby amended.  Section 3.05 Early Payment Default and Section 4.05 Prepaid Mortgage Loans are amended to reflect the following:

Section 3.05    **Early Payment Default**.  With respect to any Mortgage Loan, if the Monthly Payment with respect to any one of the first two (2) months following the Closing Date has not been paid by the end of the month in which such Monthly Payment was due, the Seller shall, upon receipt of notice from the Purchaser of such default, promptly, and in no event more than thirty (30) days thereafter and without regard to any subsequent payment of such Monthly Payment, repurchase such Mortgage Loan from the Purchaser in accordance with Section 3.03 (b) hereof provided that the Seller be given notification within six months from the related Closing Date.

Section 4.05    **Prepaid Mortgage Loans**.  If a Mortgage Loan prepays in full within ninety (90) days after the related Closing Date, the Seller shall reimburse the Purchaser for the premium over par that the Purchaser paid for such Mortgage Loan.

IN WITNESS WHEREOF, Seller and Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

American Home Mortgage Corp.

By: _____

Name:    Alan B. Horn
Title:    Executive Vice President
Date:    General Counsel & Secretary

IndyMac Bank, F.S.B., Purchaser

By: _____
Name: Jim Banks
Title: Executive Vice President
Date:

**1486/RLG**

| Loan # | CPI # | Borrower | Purchase Date | Demand Date | Due Date | Fidelity UPB | Lien Position | QC1 |
|---|---|---|---|---|---|---|---|---|
| 6139609 | 3002915225 | Nakayama | 7/26/07 | 10/4/07 | 2/1/08 | $33,034.46 | 1 | Early Payment Default |
| 6136310 | 3002869257 | WALKER | 6/28/07 | 9/6/07 | 8/1/07 | $36,858.78 | 1 | Early Payment Default |
| 6139536 | 3002914699 | SHIVERS | 7/26/07 | 10/4/07 | 1/1/08 | $44,861.76 | 1 | Early Payment Default |
| 6138062 | 3002914194 | GEM PROPERTY INVESTMENTS, L.L. | 7/25/07 | 10/4/07 | 1/1/08 | $47,075.75 | | Early Payment Default |
| 6136217 | 3002868515 | Monarrez | 6/28/07 | 9/6/07 | 1/1/08 | $47,839.70 | 1 | Early Payment Default |
| 6136180 | 3002868150 | MJ-7 PROPERTIES, LLC | 6/28/07 | 9/6/07 | 1/1/08 | $49,801.38 | 1 | Early Payment Default |
| 6128710 | 3002797243 | ELLISON | 5/18/07 | 8/24/07 | 7/1/07 | $52,735.79 | 1 | Early Payment Default |
| 6128712 | 3002797268 | DECKELBAUM | 5/18/07 | 8/24/07 | 12/1/07 | $53,789.82 | 1 | Early Payment Default |
| 6129106 | 3002800260 | HUNT | 5/24/07 | 8/24/07 | 1/1/08 | $56,250.00 | 1 | Early Payment Default |
| 6131855 | 3002856502 | ELLISON | 6/18/07 | 8/24/07 | 7/1/07 | $62,400.00 | 1 | Early Payment Default |
| 6128563 | 3002795932 | COOLEY | 5/18/07 | 7/20/07 | 11/1/07 | $65,667.56 | 1 | Asset & employment Misrep |
| 6130422 | 3002822652 | PETRUCELLI | 6/4/07 | 8/24/07 | 1/1/08 | $72,000.00 | 1 | Early Payment Default |
| 6131777 | 3002855850 | JACOB | 6/18/07 | 9/6/07 | 1/1/08 | $72,457.96 | 1 | Early Payment Default |
| 6130729 | 3002823148 | ROGERS | 6/8/07 | 8/24/07 | 2/1/08 | $77,111.38 | 1 | Early Payment Default |
| 6135492 | 3002869703 | BRAICKS | 6/28/07 | 9/6/07 | 1/1/08 | $80,735.86 | 1 | Early Payment Default |
| 6135666 | 3002915738 | RUTLEDGE | 7/26/07 | 10/4/07 | 1/1/08 | $82,000.00 | 1 | Early Payment Default |
| 6136171 | 3002868069 | TAMARIS | 6/28/07 | 9/6/07 | 8/1/07 | $83,625.00 | 1 | Early Payment Default |
| 6138030 | 3002913956 | WILLIAMS | 7/25/07 | 10/4/07 | 10/1/07 | $92,256.97 | 1 | Early Payment Default |
| 6136352 | 3002869638 | KINGERY | 6/28/07 | 9/6/07 | 12/1/07 | $92,415.19 | 1 | Early Payment Default |
| 6131672 | 3002854978 | PRESS | 6/18/07 | 8/24/07 | 9/1/07 | $93,100.00 | 1 | Early Payment Default |
| 6139564 | 3002914846 | HART | 7/26/07 | 8/24/07 | 1/1/08 | $93,447.57 | 1 | Early Payment Default |
| 6130413 | 3002822579 | PEREZ | 6/4/07 | 8/24/07 | 7/1/07 | $94,000.00 | 1 | Early Payment Default |
| 6131395 | 3002854531 | SOREM | 6/18/07 | 8/24/07 | 7/1/07 | $95,000.00 | 1 | Early Payment Default |
| 6128820 | 3002799241 | BENDXEN | 5/18/07 | 8/24/07 | 1/1/08 | $97,485.11 | 1 | Early Payment Default |
| 6128737 | 3002797508 | BIRDSONG | 5/18/07 | 8/24/07 | 1/1/08 | $98,763.21 | 1 | Early Payment Default |
| 6128961 | 3002799496 | SMITH JR | 5/18/07 | 8/24/07 | 1/1/08 | $103,445.25 | 1 | Early Payment Default |
| 6136295 | 3002869125 | PERRY | 6/28/07 | 8/24/07 | 12/1/07 | $104,000.00 | 1 | Early Payment Default |
| 6130411 | 3002822553 | BARRETT III | 6/4/07 | 8/24/07 | 8/1/07 | $105,700.00 | 1 | Early Payment Default |
| 6131318 | 3002853855 | ANDERSON | 6/18/07 | 8/24/07 | 8/1/07 | $108,617.78 | 1 | Early Payment Default |
| 6136197 | 3002868317 | BRAICKS | 6/28/07 | 9/6/07 | 1/1/08 | $118,059.08 | 1 | Early Payment Default |
| 6129219 | 3002801201 | BOWEN | 5/25/07 | 8/24/07 | 1/1/08 | $123,634.09 | 1 | Early Payment Default |
| 6128611 | 3002796328 | WAGNER | 5/18/07 | 8/24/07 | 1/1/08 | $126,400.00 | 1 | Early Payment Default |
| 6131709 | 3002855264 | JORDAN JR | 6/18/07 | 9/6/07 | 1/1/08 | $129,924.80 | 1 | Early Payment Default |
| 6129246 | 3002801409 | SMITH | 5/25/07 | 8/24/07 | 7/1/07 | $132,000.00 | 1 | Early Payment Default |
| 6131746 | 3002866949 | ROJAS | 6/29/07 | 9/6/07 | 12/1/07 | $132,352.28 | 1 | Early Payment Default |
| 6139606 | 3002915191 | Carreau | 7/26/07 | 10/4/07 | 1/1/08 | $133,699.14 | 1 | Early Payment Default |
| 6131397 | 3002854556 | SAYAS | 6/18/07 | 8/24/07 | 7/1/07 | $135,000.00 | 1 | Early Payment Default |
| 6133562 | 3002867301 | Bates | 6/27/07 | | 1/1/08 | $137,700.00 | 1 | Early Payment Default |
| 6131367 | 3002854283 | PETERSON | 6/18/07 | 9/6/07 | 7/1/07 | $143,924.96 | 1 | Early Payment Default |

**1486/RLG**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6136277 | 3002868960 | HIDALGO | 6/28/07 | 9/6/07 | 1/1/08 | $155,510.81 | 1 | Early Payment Default |
| 6130390 | 3002822348 | ZIERMAN | 6/4/07 | 8/24/07 | 7/1/07 | $157,410.00 | 1 | Early Payment Default |
| 6128774 | 3002797813 | DEJESUS | 5/18/07 | 8/24/07 | 1/1/08 | $167,884.38 | 1 | Early Payment Default |
| 6128777 | 3002797847 | MARTIN | 5/18/07 | 8/24/07 | 1/1/08 | $175,177.52 | 1 | Early Payment Default |
| 6136349 | 3002869612 | HAWTHORNE | 6/28/07 | 8/24/07 | 8/1/07 | $177,547.79 | 1 | Early Payment Default |
| 6129176 | 3002825507 | MITROS | 6/11/07 | 8/24/07 | 7/1/07 | $184,000.00 | 1 | Early Payment Default |
| 6133556 | 3002867251 | SULLEY | 6/27/07 | 9/6/07 | 11/1/07 | $184,651.18 | 1 | Early Payment Default |
| 6128642 | 3002796617 | RIZK | 5/18/07 | 8/20/07 | 1/1/08 | $191,200.00 | 1 | Early Payment Default |
| 6133540 | 3002877516 | CINGRANELLI | 7/3/07 | 9/6/07 | 11/1/07 | $196,000.00 | 1 | Early Payment Default |
| 6130279 | 3002821290 | BEVERLY JR | 6/4/07 | 9/6/07 | 1/1/08 | $197,002.59 | 1 | Early Payment Default |
| 6128789 | 3002799953 | OQUENDO | 5/18/07 | 8/24/07 | 8/1/07 | $207,712.78 | 1 | Early Payment Default |
| 6136043 | 3002914046 | PARSHALL | 7/25/07 | 10/4/07 | 1/1/08 | $208,639.21 | 1 | Early Payment Default |
| 6136161 | 3002867988 | GETER | 6/28/07 | 9/14/07 | 10/1/07 | $211,260.86 | 1 | Early Payment Default |
| 6130361 | 3002822066 | ORTEGA | 6/4/07 | 8/24/07 | 7/1/07 | $225,055.00 | 1 | Early Payment Default |
| 6131883 | 3002867103 | POWELL | 6/29/07 | 9/6/07 | 1/1/08 | $227,724.96 | 1 | Early Payment Default |
| 6128650 | 3002796690 | BAER | 5/18/07 | 8/24/07 | 9/1/07 | $229,500.00 | 1 | Early Payment Default |
| 6128657 | 3002796757 | HAYES | 5/18/07 | 8/24/07 | 1/1/08 | $238,629.48 | 1 | Early Payment Default |
| 6126656 | 3002796740 | PIERRE | 5/18/07 | 8/24/07 | 2/1/08 | $240,000.00 | 1 | Early Payment Default |
| 6129152 | 3002800682 | SOLIS | 5/25/07 | 8/24/07 | 12/1/07 | $240,349.96 | 1 | Early Payment Default |
| 6131892 | 3002856825 | EXILHOMME | 6/18/07 | 8/24/07 | 7/1/07 | $244,000.00 | 1 | Early Payment Default |
| 6129077 | 3002800070 | MALIS | 5/24/07 | 8/24/07 | 1/1/08 | $251,200.00 | 1 | Early Payment Default |
| 6130354 | 3002822009 | TREMBLAY | 6/4/07 | 8/24/07 | 7/1/07 | $252,000.00 | 1 | Early Payment Default |
| 6133547 | 3002867160 | stringer | 6/27/07 | 9/6/07 | 8/1/07 | $252,000.00 | 1 | Early Payment Default |
| 6130273 | 3002821233 | LATULIPPE III | 6/4/07 | 7/12/07 | 6/1/07 | $266,500.00 | 1 | Early Payment Default |
| 6131372 | 3002854333 | BISHOP | 6/18/07 | 9/6/07 | 8/1/07 | $261,689.92 | 1 | Early Payment Default |
| 6130277 | 3002821225 | DELPHIN | 6/4/07 | 7/12/07 | 6/1/07 | $265,905.00 | 1 | Early Payment Default |
| 6136267 | 3002868879 | EDOUARD | 6/28/07 | 8/24/07 | 7/1/07 | $265,905.00 | 1 | Early Payment Default |
| 6136286 | 3002869059 | MATAUTIA | 6/28/07 | 8/24/07 | 9/1/07 | $266,000.00 | 1 | Early Payment Default |
| 6130343 | 3002821894 | MARTINEZ | 6/4/07 | 7/12/07 | 7/1/07 | $268,640.00 | 1 | Early Payment Default |
| 6136226 | 3002868564 | DAVIS | 6/28/07 | 9/6/07 | 1/1/08 | $269,500.00 | 1 | Early Payment Default |
| 6129252 | 3002825549 | SHOMER | 6/11/07 | 8/24/07 | 1/1/08 | $274,365.88 | 1 | Early Payment Default |
| 6128672 | 3002796906 | LANGFORD | 5/18/07 | 8/24/07 | 9/1/07 | $276,000.00 | 1 | Early Payment Default |
| 6130338 | 3002821845 | MAUDLIN | 6/4/07 | 8/24/07 | 7/1/07 | $278,000.00 | 1 | Early Payment Default |
| 6128675 | 3002796930 | YOUNGER | 5/18/07 | 8/24/07 | 1/1/08 | $279,992.55 | 1 | Early Payment Default |
| 6131728 | 3002855447 | FRROKAJ | 6/18/07 | 8/24/07 | 9/1/07 | $280,250.00 | 1 | Early Payment Default |
| 6130337 | 3002821837 | MEDARD | 6/4/07 | 8/24/07 | 11/1/07 | $284,050.00 | 1 | Early Payment Default |
| 6128605 | 3002798100 | MATTIS | 5/18/07 | 8/24/07 | 1/1/08 | $295,905.00 | 1 | Early Payment Default |
| 6128804 | 3002798092 | DESJARDINS | 5/18/07 | 7/12/07 | 6/1/07 | $297,000.00 | 1 | Early Payment Default |
| 6133551 | 3002867202 | PETION | 6/27/07 | 8/24/07 | 7/1/07 | $315,000.00 | 1 | Early Payment Default |
| 6136257 | 3002868788 | TRENT | 6/28/07 | 8/24/07 | 7/1/07 | $316,000.00 | 1 | Early Payment Default |
| 6130436 | 3002822777 | DARBOUZE | 6/4/07 | 8/24/07 | 11/1/07 | $320,000.00 | 1 | Early Payment Default |
| 6130284 | 3002821159 | BOYLE | 6/4/07 | 8/24/07 | 7/1/07 | $322,814.17 | 1 | Early Payment Default |

**1486/RLG**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6129208 | 3002801094 | REYES | 5/25/07 | 8/24/07 | 9/1/07 | $327,600.00 | 1 | Early Payment Default |
| 6128687 | 3002797052 | HOLMES | 5/18/07 | 8/24/07 | 9/1/07 | $328,000.00 | 1 | Early Payment Default |
| 6136287 | 3002869067 | KUZMICZ | 6/28/07 | 8/24/07 | 7/1/07 | $329,300.00 | 1 | Early Payment Default |
| 6130325 | 3002821720 | HUANG | 6/4/07 | 8/24/07 | 7/1/07 | $332,500.00 | 1 | Early Payment Default |
| 6138028 | 3002913931 | Muth | 7/25/07 | 10/4/07 | :/1/08 | $346,500.00 | 1 | Early Payment Default |
| 6136302 | 3002869182 | BURSTEIN | 6/28/07 | 9/6/07 | 8/1/07 | $350,715.03 | 1 | Early Payment Default |
| 6128847 | 3002798431 | FLETES JR | 5/18/07 | 7/12/07 | 11/1/07 | $356,800.00 | 1 | Early Payment Default |
| 6133566 | 3002867343 | Bender | 6/27/07 | 9/6/07 | 2/1/08 | $358,400.00 | 1 | Early Payment Default |
| 6129256 | 3002801474 | WILKINS | 5/25/07 | 7/12/07 | 6/1/07 | $359,200.00 | 1 | Early Payment Default |
| 6136199 | 3002868333 | LOOR | 6/28/07 | 8/24/07 | 8/1/07 | $364,334.40 | 1 | Early Payment Default |
| 6136355 | 3002869653 | SAVOIE | 6/28/07 | 9/6/07 | 8/1/07 | $365,789.43 | 1 | Early Payment Default |
| 6135549 | 3002867186 | SALDATE | 6/27/07 | 8/24/07 | 7/1/07 | $370,500.00 | 1 | Early Payment Default |
| 6130718 | 3002823049 | NGUYEN | 6/6/07 | 9/6/07 | 8/1/07 | $371,000.00 | 1 | Early Payment Default |
| 6128813 | 3002798183 | RUIZ | 5/18/07 | 7/12/07 | 7/1/07 | $374,684.96 | 1 | Early Payment Default |
| 6129209 | 3002801102 | SORTOR | 5/25/07 | 8/24/07 | 7/1/07 | $376,200.00 | 1 | Early Payment Default |
| 6130259 | 3002821100 | PERSAUD | 6/4/07 | 8/24/07 | 7/1/07 | $379,757.69 | 1 | Early Payment Default |
| 6130316 | 3002821647 | JAVIER | 6/4/07 | 7/12/07 | 6/1/07 | $392,000.00 | 1 | Early Payment Default |
| 6130314 | 3002821621 | VASQUEZ | 6/4/07 | 8/24/07 | 7/1/07 | $399,999.22 | 1 | Early Payment Default |
| 6129229 | 3002801300 | COSTANZO | 5/25/07 | 7/12/07 | 6/1/07 | $400,000.00 | 1 | Early Payment Default |
| 6133573 | 3002867418 | HALLETT III | 6/27/07 | 9/6/07 | 2/1/08 | $408,000.00 | 1 | Early Payment Default |
| 6128560 | 3002795916 | SWEENEY | 5/18/07 | 8/24/07 | 1/1/08 | $420,000.00 | 1 | Early Payment Default |
| 6130434 | 3002822751 | SERBONES | 6/4/07 | 8/24/07 | 7/1/07 | $440,000.00 | 1 | Early Payment Default |
| 6130433 | 3002822744 | BALGOBIN | 6/4/07 | 8/24/07 | 7/1/07 | $441,000.00 | 1 | Early Payment Default |
| 6130309 | 3002821571 | RIETTIE | 6/4/07 | 8/24/07 | 7/1/07 | $472,221.03 | 1 | Early Payment Default |
| 6133612 | 3002867798 | Vivas | 6/27/07 | 9/6/07 | 9/1/07 | $517,600.00 | 1 | Early Payment Default |
| 6130429 | 3002822710 | COLE | 6/4/07 | 9/6/07 | 12/1/07 | $537,220.38 | 1 | Early Payment Default |
| 6130246 | 3002821001 | RODRIGUEZ | 6/4/07 | 8/24/07 | 11/1/07 | $540,000.00 | 1 | Early Payment Default |
| 6136178 | 3002868135 | Aplin | 6/28/07 | 9/6/07 | 1/1/08 | $552,162.06 | 1 | Early Payment Default |
| 6129261 | 3002825564 | OTTOWITZ | 6/11/07 | 8/24/07 | 1/1/08 | $578,000.00 | 1 | Early Payment Default |
| 6129265 | 3002801540 | CABELLO | 5/25/07 | 8/24/07 | 12/1/07 | $601,600.00 | 1 | Early Payment Default |
| 6133613 | 3002877524 | Tucker | 7/3/07 | 8/24/07 | 7/1/07 | $619,200.00 | 1 | Early Payment Default |
| 6130311 | 3002821597 | PICARD | 6/4/07 | 8/24/07 | 1/1/08 | $624,000.00 | 1 | Early Payment Default |
| 6129003 | 3002799900 | HOLTZ | 5/18/07 | 9/6/07 | 8/1/07 | $647,500.00 | 1 | Early Payment Default |
| 6133614 | 3002867806 | Uluski | 6/27/07 | 9/6/07 | 1/1/08 | $960,000.00 | 1 | Early Payment Default |
| 6128867 | 3002798563 | LORENZP | 5/18/07 | 8/24/07 | 7/1/07 | $975,000.00 | 1 | Early Payment Default |
| 6130304 | 3002821522 | HORAN | 6/4/07 | 8/24/07 | 9/1/07 | $998,168.68 | 1 | Early Payment Default |

$30,933,097.15



# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

*tel* +1-415-773-5700
*fax* +1-415-773-5759

WWW.ORRICK.COM

January 10, 2008

Christine J. Flores
(415) 773-5566
cflores@orrick.com

*VIA FEDERAL EXPRESS*

EPIQ Bankruptcy Solutions, LLC
Attention:  American Home Mortgage Claims Processing
757 Third Avenue, Third Floor
New York, NY  10017

Re:    *American Home Mortgage Corp.*
       <u>Case No. 07-11047 (CSS) (Jointly Administered)</u>

Dear Sir or Madam:

Enclosed is an original and one copy of Indymac Bank, F.S.B.'s Proof of Claim in the above-captioned matter.

Please return a date stamped copy of the proof of claim to acknowledge your receipt of it.

Sincerely,

Christine J. Flores
*Certified Bankruptcy Assistant*
Secretary to Frederick D. Holden, Jr.

Enclosures