**Exhibit A**

SECOND AMENDMENT AGREEMENT dated as of August [5], 2008 (this "Amendment Agreement"), by and among American Home Mortgage Investment Corp., as a debtor and a debtor-in-possession, a Maryland corporation (the "Parent"), the affiliates of the Parent set forth in the Loan Agreement referred to below, each as a debtor and a debtor-in-possession (together with the Parent, individually a "Borrower" and, collectively, the "Borrowers"), the lenders party hereto (each individually a "Lender" and, collectively, the "Lenders") and WLR Recovery Fund III, L.P., a Delaware limited partnership, as administrative agent for the Lenders (in such capacity, the "Administrative Agent") under the Debtor-in-Possession Loan and Security Agreement August 6, 2007 (as amended and as the same may be further amended, amended and restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), by and among the Borrowers, the Lenders and the Administrative Agent, as in effect on the date hereof.

WHEREAS, the Borrowers have requested that the Administrative Agent and the Lenders make certain amendments to the Loan Agreement;

NOW, THEREFORE, each Borrower, each of the undersigned Lenders and the Administrative Agent hereby agree as follows:

SECTION 1.    Defined Terms. Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Loan Agreement, as amended hereby. As used in this Amendment Agreement, the following terms shall have the meanings set forth below:

"Second Amendment Interim Effective Date" means the date upon which (a) the Bankruptcy Court has entered the Second Amendment Interim Order, and (b) the Borrowers have satisfied the conditions set forth in Section 6 of this Amendment Agreement.

"Second Amendment Interim Order" means an interim order in the form attached hereto as Exhibit A.

"Second Amendment Final Effective Date" means the date upon which (a) the Bankruptcy Court has entered the Second Amendment Final Order, and (b) the Borrowers have satisfied the conditions set forth in Section 7 of this Amendment Agreement.

"Second Amendment Final Order" means a final order in a form acceptable to the Administrative Agent.

SECTION 2.    Amendments to Loan Agreement as of the Second Amendment Interim Effective Date. On the Second Amendment Interim Effective Date, the definition of "Maturity Date" as set forth in Section 1 of the Loan Agreement shall be amended to delete clause (b) therefrom and insert in place thereof the following: "(b) August 18, 2008".

SECTION 3. Amendments to Loan Agreement as of the Second Amendment Final Effective Date. On the Second Amendment Final Effective Date:

(a) Each of (x) the third paragraph of the recitals to the Loan Agreement, and (y) Schedule B to the Loan Agreement, shall be amended by replacing each reference therein to "$35,000,000" with a reference to $30,000,000".

(b) Section 1.01 of the Loan Agreement is hereby amended, effective as of August 6, 2008, to replace the following definitions in their entirety:

"Applicable Margin" means 12.00% per annum.

(c) The definition of "Maturity Date" as set forth in Section 1 of the Loan Agreement shall be amended to delete clause (b) therefrom and insert in place thereof the following: "(b) November 5, 2008".

(d) Section 2.01 of the Loan Agreement is hereby amended and restated in its entirety as follows:

"2.01 Loans. Subject to fulfillment of the conditions precedent set forth in Sections 5.01 and 5.02 hereof, and provided that no Default or Event of Default shall have occurred and be continuing hereunder, each Lender hereby severally agrees, from time to time, on the terms and conditions of this Loan Agreement and the other Loan Documents, to make loans (individually, a "Loan"; collectively, the "Loans") to the Borrowers in Dollars, on any Business Day (but the Borrowers will endeavor to limit requests for Loans to not more frequently than once weekly) from and including the Closing Date to but excluding the Maturity Date in an aggregate principal amount at any one time outstanding not to exceed such Lender's Pro Rata Share of the Total Commitment as in effect from time to time. Subject to the terms and conditions of this Loan Agreement, during such period the Borrowers may borrow, repay and reborrow Loans hereunder. In no event shall the Lenders be obligated to make a Loan when any Default or Event of Default has occurred and is continuing, and in no event shall the aggregate principal amount of all Loans outstanding at any time exceed an amount equal to $30,000,000, as reduced from time to time in accordance with Section 2.06 (the amount maximum amount available to be borrowed pursuant to this Section 2.01 shall be referred to herein as the "Maximum Credit"); provided, further, that at all times prior to the Final Order, the Maximum Credit shall equal the Interim Amount."

(e) Section 7.11 of the Loan Agreement is hereby amended and restated in its entirety as follows:

Section 7.11 Use of Proceeds; Additional Interest Reserve.

(a) The Borrowers will use the proceeds of the Loans to finance working capital and for other general corporate purposes of the Borrowers in accordance with the Budget and to fund Lender Expenses and fees pursuant to Section 3.07 and the repayment of any other Obligations.

(b) On each day commencing on an after August 19, 2008, the Borrowers shall have deposited, and caused to be maintained, at least an amount equal to all interest payments (based on the aggregate principal of Loans outstanding on such day and using the interest rate applicable to the Loans as of such day) due and payable through November 5, 2008.

SECTION 4.  Consent.  Prior to the date of this Amendment Agreement, the Borrowers entered into a transaction with Beltway Capital, LLC ("Beltway") pursuant to which the Borrowers sold certain non-performing loans to Beltway resulting net cash proceeds to the Borrowers in an aggregate amount of up to $10,577,113.01 (the "Beltway Proceeds").  The Borrowers have requested that, notwithstanding Section 2.06 or anything else in the Loan Agreement to the contrary, the Borrowers be permitted to retain the Beltway Proceeds and use the Beltway Proceeds for working capital and other corporate purposes.  In connection with the foregoing, the Lenders and the Administrative Agent hereby agree that:

(a)  effective upon the Second Amendment Interim Effective Date, the Borrowers may retain the Beltway Proceeds and use an aggregate amount of such proceeds not in excess of $9,000,000 for working capital and other corporate purposes so long as (i) on or before the Second Amendment Interim Effective Date the Borrowers shall have applied the proceeds of any other assets sale which constituted Collateral and are being held in escrow by the Borrowers in repayment of the Loans in accordance with the Loan Agreement, and (ii) the Borrowers do not request any Loan at any time from the Second Amendment Interim Effective Date until the Second Amendment Final Effective Date; and

(b)  effective upon the Second Amendment Final Effective Date, the Borrowers may retain the remaining Beltway Proceeds and use such proceeds for working capital and other corporate purposes.

SECTION 5.  Fees.  The Borrower shall pay the following non-refundable amendment fees to each Lender:

(a)  on the Second Amendment Interim Effective Date, the Borrower shall pay to each Lender an amendment fee in an amount equal to 2.5% times $9,000,000; and

(b)  on the Second Amendment Final Effective Date, the Borrower shall pay to each Lender an amendment fee in an amount equal to 2.5% times $21,000,000.

SECTION 6.  Conditions to Second Amendment Interim Effective Date.  The provisions of this Amendment Agreement that are to become effective as of the Second Amendment Interim Effective date shall become effective on the date that the following conditions precedent have been satisfied:

(a)  Payment of Fees.  The Lenders shall have received the fees required to be paid pursuant to Section 5(a) hereof.

(b)  Court Order.  The Bankruptcy Court shall have entered the Second Amendment Interim Amendment Order.

SECTION 7.  Conditions to Second Amendment Final Effective Date.  The provisions of this Amendment Agreement that are to become effective as of the Second Amendment Final Effective date shall become effective on the date that the following conditions precedent have been satisfied:

(a)  Payment of Fees.  The Lenders shall have received the fees required to be paid pursuant to Section 5(b) hereof.

(b) <u>Court Order</u>. The Bankruptcy Court shall have entered the Second Amendment Final Amendment Order.

SECTION 8. <u>Effectiveness; Counterparts</u>. This Amendment Agreement shall become effective when counterparts hereof which, when taken together, bear the signatures of each of the Borrowers, the Administrative Agent and the Lenders shall have been received by the Administrative Agent. This Amendment Agreement may not be amended nor may any provision hereof be waived except pursuant to a writing signed by each of the Borrowers, the Administrative Agent and the Lenders. This Amendment Agreement may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute but one contract. Delivery of an executed counterpart of a signature page of this Amendment Agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart of this Amendment Agreement.

SECTION 9. <u>Representations</u>. Each Borrower represents and warrants to the Administrative Agent and each Lender that, after giving effect to this Amendment Agreement, (a) the representations and warranties set forth in Section 6 of the Loan Agreement are true and correct in all material respects on and as of the Second Amendment Effective Date, except to the extent such representations and warranties expressly relate to an earlier date, and (b) no Default or Event of Default has occurred and is continuing.

SECTION 10. <u>Effect of Amendment</u>. Except as expressly set forth herein, this Amendment Agreement shall not by implication or otherwise limit, impair, constitute a waiver of, or otherwise affect the rights and remedies of the Lenders or the Administrative Agent under the Loan Agreement, and shall not alter, modify or in any way affect any of the terms, conditions, obligations, covenants, guarantees, pledges, grants of security or other agreements contained in the Loan Agreement, all of which are ratified and affirmed in all respects and continue in full force and effect. Nothing herein shall be deemed to entitle any Borrower to a consent to, or a waiver, amendment, modification or other change of, any of the terms, conditions, obligations, covenants, guarantees, pledges, grants of security or other agreements contained in the Loan Agreement in similar or different circumstances. This Amendment Agreement shall apply and be effective only with respect to the provisions of the Loan Agreement specifically referred to herein. Each Borrower hereby acknowledges receipt of and consents to the terms of this Amendment Agreement.

SECTION 11. <u>Notices</u>. All notices hereunder shall be given in accordance with the provisions of Section 11.03 of the Loan Agreement.

SECTION 12. <u>Applicable Law; Waiver of Jury Trial</u>. (A) THIS AMENDMENT AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

(B) EACH PARTY HERETO HEREBY AGREES AS SET FORTH IN SECTIONS 11.10 AND 11.11 OF THE LOAN AGREEMENT AS IF EACH SUCH SECTION WERE SET FORTH IN FULL HEREIN.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment Agreement to be executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

        WLR RECOVERY FUND III, L.P.,
        as a Lender and as the Administrative Agent

        By:    WLR Recovery Associates III LLC,
                its General Partner

        By: _____
        Name: David H. Storper
        Title: Principal Member

        AMERICAN HOME MORTGAGE
        INVESTMENT CORP.

        By: _____
        Name: Bret W Fernandes
        Title: Director of Restructuring

        AMERICAN HOME MORTGAGE
        HOLDINGS, INC.

        By: _____
        Name: Bret W Fernandes
        Title: Director of Restructuring

AMERICAN HOME MORTGAGE CORP.

By: *[signature]*
Name: Bret W Fernandes
Title: Director of Restructuring

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC.

By: *[signature]*
Name: Bret W Fernandes
Title: Director of Restructuring

AMERICAN HOME MORTGAGE
VENTURES LLC

By: *[signature]*
Name: Bret W Fernandes
Title: Director of Restructuring

HOMEGATE SETTLEMENT SERVICES,
INC.

By: *[signature]*
Name: Bret W Fernandes
Title: Director of Restructuring

GREAT OAK ABSTRACT CORP.

By: *[signature]*
Name: Bret W Fernandes
Title: Director of Restructuring