IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | ) | (Jointly Administered) |
| HOLDINGS, INC., et al. | ) |  |
| Debtors. | ) | Objection Deadline: Sept. 8, 2008 @ 4:00 p.m. |
|  | ) | Hearing Date: Sept. 15, 2008 @ 10:00 a.m. |

**MOTION OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AND MERSCORP, INC. FOR ENTRY OF AN ORDER (I)
COMPELLING ASSUMPTION OR REJECTION OF DEBTORS'
EXECUTORY CONTRACT, OR MODIFYING THE AUTOMATIC STAY;
AND (II) COMPELLING PAYMENT OF ADMINISTRATIVE EXPENSES**

Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. (collectively,

"MERS"), by and through their undersigned counsel, hereby move this Court for entry of an

Order (i) compelling assumption or rejection of the executory contract between MERS and

American Home Mortgage Holdings, Inc. (the "Debtor") pursuant to Section 365(d)(2) of title 11

of the United States Code (the "Bankruptcy Code"), or, alternatively, modifying the automatic

stay, as set forth herein, pursuant to Bankruptcy Code § 362(d); and (ii) compelling payment of

outstanding post-petition expenses (including legal fees) pursuant to Bankruptcy Code § 503 (the

"Motion"). In support of the Motion, MERS respectfully represents as follows:

## BACKGROUND

**A.    General Background and Jurisdiction**

1.    On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under Chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 cases are being

jointly administered for procedural purposes only. The Debtors continue to operate their

businesses as debtors-in-possession.

1-NY/2300544.1

2.      Prior to the Petition Date, the Debtors were in the business of originating and servicing mortgage loans and investing in mortgage-backed securities.  Since the Petition Date, the Debtors have sold a substantial portion of their loan portfolio as well as their loan servicing business.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

**B.      The Debtors' Agreement with MERS**

4.      MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper documentation.  MERS acts as the nominal mortgagee of record (or beneficiary under a deed of trust) on behalf of its members (each a "Member" and collectively, the "Members").  Each mortgage loan for which MERS serves as a mortgagee (or beneficiary) is registered and changes in servicing rights or beneficial ownership interest are tracked electronically on the MERS® System ("MERS Registered Loans").  MERS remains the nominal mortgagee on MERS Registered Loans as the servicing and/or beneficial rights are transferred among Members.  When servicing and/or beneficial rights are transferred to Non-Members, an assignment is executed by MERS to the non-MERS member, the assignment is recorded in the applicable local county land records and the MERS Registered Loans are deactivated off the MERS® System.   In addition to serving as the mortgagee of record, MERS also processes mail, facsimiles, telephone calls, and other communications related to the MERS Registered Loans.  MERS forwards all communications it receives on to the Member listed as the current servicer on the MERS® System.

5.      On January 21, 2000, the Debtors became Members by filing an Application for Membership and paying a membership fee.  A copy of the Membership Application is annexed

hereto as <u>Exhibit A</u>.   The Debtors' membership in MERS is governed by the MERS Fee Schedule, the Terms and Conditions of Membership, the Rules of Membership, and the Procedures Manual, copies of which are annexed hereto as <u>Exhibits B, C, D, and E</u>, respectively. The Membership Application, MERS Fee Schedule, Terms and Conditions, Rules of Membership and the Procedures Manual are collectively referred to as the MERS Agreement.

## C.    The Debtors' Obligations Under the MERS Agreement

**Indemnification**

6.    Pursuant to the MERS Agreement, the Debtors are obligated to defend MERS in any lawsuit relating to MERS's position as nominal mortgagee for the Debtors, and indemnify MERS for any costs associated therewith.  (<u>See</u> <u>Exhibits C</u>, at ¶ 9; <u>Exhibit D</u>, at R.13, Section 1).

7.    The Debtors currently owe MERS $62,735.55 for reimbursement of post-petition legal fees incurred by MERS as a named defendant in lawsuits involving mortgage loans serviced by the Debtors.   Copies of the legal invoices and a schedule of lawsuits are annexed hereto as <u>Exhibits F and G</u> respectively.  To date, the Debtors have not sought to assume or reject the MERS Agreement and MERS is forced to continue to defend these lawsuits on behalf of the Debtors.

### Transaction Fees

8.    Pursuant to the MERS Agreement, the Debtor is obligated to pay all fees and charges for "membership, registrations, transfers, and other transactions on the MERS® System."  (<u>See</u> <u>Exhibit C</u> at ¶ 8; <u>Exhibit D</u>, at R.5.).  Specifically, the Debtor is obligated to pay to MERS (i) an annual membership fee of $5,500.00, (ii) registration fees of $4.95 per loan, (iii) a fee of $4.95 for each transaction showing a servicing right transfer to another Member on loans with a note date 270 days and older, (iv) a de-activation fee of $1.00 for each loan that has been

transferred to a Non-Member, and (v) interest on unpaid amounts. See Exhibit B. In addition, Members agree to indemnify MERS for costs associated with breaches, negligence, document requests and related matters. See Exhibit C. MERS has the right to terminate the membership of any Member who fails to pay any outstanding fees owed to MERS for more than 60 days. See Exhibit C.

9.    As set forth above, the Debtors have transferred a substantial portion of their mortgage loans and sold their servicing business since the Petition Date. The MERS® System still shows the Debtor as the current servicer and/or investor on approximately 85,233 loans. The Debtor is responsible to MERS for the transaction fees associated with processing the sale of such mortgage loans and servicing rights, as well as for the Debtor's membership and continued use of the MERS® System for its existing inventory and pending sales of mortgage loans.

10.    To date, the Debtor owes MERS $19,564.85 in post-petition membership fees and charges in connection with the foregoing transactions. The Debtor has also failed to pay MERS for the pre-petition fees it is owed in the amount of $79,321.85. Copies of the outstanding post-petition invoices are attached hereto as Exhibit H.

### RELIEF REQUESTED

11.    By this Motion, MERS requests that this Court enter an Order (i) compelling the Debtors to assume or reject the MERS Agreement pursuant to Bankruptcy Code § 365(d)(2), or, in the alternative, modifying the automatic stay pursuant to Bankruptcy Code § 362(d) to allow MERS to terminate the MERS Agreement; (ii) requiring the Debtors to record assignments assigning all loans for which the Debtors are the current servicer and/or investor out of MERS' name; and (iii) compelling payment by the Debtors of outstanding post-petition administrative expenses to MERS in the aggregate amount of $82,300.40 for transaction costs (including the

Debtors' membership fee) and reimbursement of legal expenses pursuant to Bankruptcy Code §
503. [1]

## A.    Debtors Should be Compelled to Assume or Reject the MERS Agreement

12.    Pursuant to Bankruptcy Code § 365(a), a debtor-in-possession has the authority,
subject to court approval, to assume or reject any executory contract. The MERS Agreement is
an executory contract because obligations remain on the part of both parties and the failure to
perform by either party would constitute a material breach excusing performance of the other.
See e.g., 3 King, COLLIER ON BANKRUPTCY ¶ 365.02 (Alan N. Resnick & Henry J. Sommer eds.,
15th ed. rev. 2007) (noting the Congressional history on the definition of executory contracts);
see also Sharon Steel Corp. v. Nat'l Fuel Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989)
(citing Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 446 (1973)).
Specifically, the Debtor is obligated to comply with the terms and conditions of membership
under the MERS Agreement, including the payment of fees and charges in connection with any
sale or transfer of the Debtors' mortgage loans (and any servicing rights associated therewith)
and to defend and indemnify MERS in any lawsuits in connection with MERS role as nominal
mortgagee for the Debtor. In turn, MERS is obligated to remain as the mortgagee, to make the
MERS® System available to the Debtor and to process any mortgage loan transaction (and
associated servicing rights) to show that transfers have occurred.

13.    Under Bankruptcy Code § 365(d)(2), a party may seek to require a debtor to
assume or reject an executory contract within a specified, or reasonable, period of time. See
Theatre Holding Corp. v. Mauro, 681 F.2d 102, 104-05 (2d Cir. 1982); In re Beker Indus. Corp.,

---

[1] MERS reserves the right to assert additional administrative expense claims against the Debtors that either are
discovered or accrue after the date of this Motion.

64 B.R. 890, 896-97 (Bankr. S.D.N.Y. 1986). The "reasonable time" standard is equitable in nature, requiring the court to balance the non-debtor party's need for certainty against the debtor's interest in preserving the bankruptcy.[2] See In re Physician Health Corp., 262 B.R. 290, 292 (Bankr. D. Del. 2001) (citations omitted); In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980). In determining whether to grant a request to compel assumption or rejection, courts consider a variety of factors, but give particular weight to the non-debtor's request where the "delay adds uncertainty and threatens the obligee with additional post-petition costs." In re Beker Indus. Corp., 64 B.R. at 898.

14. Since the Petition Date, the Debtors have liquidated a substantial portion of their assets, including their loan portfolio and servicing business, and MERS has been forced to process these trades and remain as the nominal mortgagee without compensation for legal expenses that would have otherwise been paid by Debtor under the MERS Agreement.[3] To the extent that the Debtors sell additional mortgage loans registered on the MERS® System, the amount of transaction fees outstanding will increase accordingly. In addition, MERS has been a named defendant in an increasing number of lawsuits due to mortgage loans originated or serviced by the debtor. MERS has incurred significant legal fees relating to lawsuits involving mortgage loans serviced by the Debtors.

---

[2] In enacting § 365(d)(2), "Congress intended . . . to 'prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate.'" Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1079 (3d Cir. 1992) (quoting H. Rep. No. 95-595, 95th Cong., 1st Sess. 348-9 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6304-05).

[3] As discussed above, MERS is the nominal mortgagee only for MERS Registered Loans held by and traded between Members. For loans traded to Non-Members, MERS no longer acts as the mortgagee and the mortgage loans must be assigned out of MERS name and de-activated from the MERS® System, for which transaction fees and charges also apply.

15.     The court in <u>In re Beker</u> noted that:

> [T]he court in drawing a balance is to give greater weight to a debtor's failure to perform post-petition obligations over a longer period of time in which it could decide what to do with the asset. The obligee is not expected to incur significant added detriment while those who have an interest in the property or the bankruptcy estate are unable to resolve how to deal with an asset.

> 64 B.R. at 898 (citations omitted).

16.     These cases were commenced more than eight months ago and the Debtors have not paid any of the outstanding post-petition transaction fees or legal costs and have not sought to assume or reject the MERS Agreement. Moreover, it appears that the Debtors have liquidated a substantial portion of their assets and will be winding down their business. The Debtors should not be permitted to leave MERS uncompensated and uncertain as to whether it will be paid and as to the extent of any further legal and transaction fees to be incurred under the MERS Agreement for loans that remain part of the Debtor's bankruptcy estate.

**B.      Alternatively, the Court Should Modify the Automatic Stay**

17.     Pursuant to Bankruptcy Code § 362(d), "the court shall grant relief from the stay ... for cause..." 11 U.S.C. § 362(d)(1); <u>see also</u> <u>In re West Elecs. Inc.</u>, 852 F.2d 79, 82 (3d Cir. 1988) (noting that creditor needed to obtain relief from the stay before terminating executory contract with the debtor). "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." <u>Sterling Bank & Trust v. Merchant (In re Merchant)</u>, 256 B.R. 572, 576 (Bankr. W.D.Pa. 2000) (citations omitted); <u>see also</u> 3 COLLIER ON BANKRUPTCY ¶ 362.07[3].

18.     In the event that the Court declines to compel the Debtors to assume or reject the MERS Agreement, MERS respectfully submits that the automatic stay should be modified to allow MERS to terminate the MERS Agreement with the Debtors because the Debtors have

failed to pay all post-petition fees owed to MERS and have not indemnified MERS for legal expenses incurred in defending against various lawsuits on behalf of the Debtors.  Termination of the MERS Agreement will also end the Debtors' ability to force MERS to incur further litigation costs and transaction charges because the Debtor would be required to record assignments of the liens out of MERS name.

19.    Courts have held that a debtor's failure to make post-petition payments is sufficient "cause" for relief from the stay.  See In re Watson, 286 B.R. 594, 604 (Bankr. D.N.J. 2002) ("The debtor's failure to make post-petition payments is sufficient cause to justify granting relief from the automatic stay."); cf. Jones v. The Money Store, Inc., 24 B.R. 92, 98 (Bankr. E.D.Pa. 2002) ("Failure to make post-petition payment to a mortgagee has been found to be sufficient "cause" for relief from the stay under Section 362(d)(1).") (citations omitted); see also In re Indep. Mgmt. Assocs., Inc., 108 B.R. 456, 464 (Bankr. D.N.J. 1989) ("It is a long-standing rule that another prong of the 'for cause' rule in § 362(d)(1) arises from a failure to make payments on property post-petition.") (citations omitted).

20.    MERS should not be forced to continue providing services and acting as nominal mortgagee (and being subjected to lawsuits as a result thereof) while the post-petition charges and legal fees accrue indefinitely.  The Debtors' failure to meet their post-petition obligations is sufficient cause to justify relief from the automatic stay.

## C.    The Debtors Should be Compelled to Pay Administrative Expense Claims

21.    MERS respectfully submits that the Court should grant MERS an allowed administrative expense claim for the post-petition transaction fees (including the membership fee) and legal costs owed to MERS by the Debtors and compel the Debtors to pay such claim.

22.    A debtor must pay for any post-petition services received pursuant to an

executory contract pending a decision to assume or reject that executory contract.  See N.L.R.B.

v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue

to receive benefits from the other party to an executory contract pending a decision to reject or

assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of

those services, which, depending on the circumstances of a particular contract, may be what is

specified in the contract.") (internal citation omitted); cf. Continental Energy Assocs. L.P. v.

Hazleton Fuel Mgmt. Co. (In re Continental Energy Assocs.), 178 B.R. 405, 408 (Bankr.

M.D.Pa. 1995) ("there is ample authority for the proposition that, pending assumption or

rejection, the Debtor may elect to enforce the contract thereby being required to pay for the

reasonable value of the material or services supplied.") (citing Bildisco).

24. Under Section 503 of the Bankruptcy Code, a creditor may file a request for

payment of any post-petition goods or services provided to the debtor-in-possession as an

allowed administrative expense claim.  11 U.S.C. § 503(a), (b); In re Bake-Line Group, LLC,

312 B.R. 48, 50-51 (Bankr. D.Del. 2004) (finding that post-petition gas provided to debtor-in-

possession conferred benefit on estate and entitled to administrative expense claim); see also

Bildisco 465 U.S. at 540, n. 8 ("The debtor in possession's liability for the reasonable value of

any benefits conferred stems from § 503(b) which allows administrative expenses for the "actual,

necessary costs and expenses of preserving the estate."  (Brennan, J., concurring in part and

dissenting in part) (citing 3 COLLIER ON BANKRUPTCY, ¶ 503.04, at 503-15).

24. The Debtors have not elected to assume or reject the MERS Agreement.

However, since the Petition Date, the Debtors have continued to benefit from their membership

in MERS and have received services from MERS in connection with the Debtors' sales and

transfers of their mortgage loans and associated loan servicing rights.  The Debtors have also

benefited from MERS's defense of the lawsuits relating to mortgage loans serviced by the Debtors. The Debtors could have prevented the incurrence of legal fees and stopped any such actions pursuant to the automatic stay had the Debtors simply recorded legal title of the mortgage loans in their own names. But the Debtors chose instead to force MERS, as nominal mortgagee for the Debtors, to defend the Debtors' mortgage loans and servicing rights in these lawsuits without reimbursing MERS legal fees.

25.    It is clear that the services provided by MERS – processing mail received on mortgage loans serviced by Debtors and forwarding the mail to Debtors, processing transactions to reflect the transfer and sales of Debtors' mortgage loans, acting as nominal mortgagee, and tracking the mortgage loans transaction details on the MERS® System – have contributed to the preservation of the estates by allowing the Debtors to maintain their remaining servicing business and loan portfolio pending any further dispositions of their business and assets. In addition, MERS defense of the lawsuits in connection with mortgage loans serviced by the Debtors is for the sole purpose of preserving the estates' assets since the Debtors are the true beneficial·owners of these mortgage loans and servicing rights. Such mortgage loans and servicing rights would otherwise be lost due to any default judgments had MERS not actively defended the actions on the Debtors' behalf. As such, the Debtors should be compelled to pay the outstanding post-petition legal costs, as well as the transaction charges and membership fee, due to MERS under the MERS Agreement in the aggregate amount of $82,300.40 as an allowed administrative expense claim.

## CONCLUSION

WHEREFORE, MERS respectfully requests that this Court enter an Order, substantially in the form attached hereto as either Exhibit 1 or Exhibit 2 (i) compelling the Debtors to assume or reject the MERS Agreement, or alternatively, modifying the automatic stay to allow MERS to terminate the MERS Agreement; (ii) requiring the Debtors to record assignments assigning all loans for which the Debtors are the current servicer and/or investor out of MERS' name; and (iii) compelling payment of outstanding post-petition administrative expenses in the amount of $82,300.40; and (iv) granting such other and further relief as this Court may deem just and proper.

Dated: August 18, 2008
      Wilmington, Delaware

                    Respectfully submitted,

                    SULLIVAN · HAZELTINE · ALLINSON LLC

                    William A. Hazeltine (Bar ID 3294)
                    4 East 8th Street, Suite 400
                    Wilmington, DE  19801
                    Phone: 302-428-8191
                    Fax: 302-428-8195

                    Wendy S. Walker
                    Andrew D. Gottfried
                    Annie C. Wells
                    MORGAN. LEWIS & BOCKIUS LLP
                    101 Park Avenue
                    New York, NY 10178
                    Phone: 212-309-6000
                    Fax: 212-309-6001

                    *Attorneys for Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc.*