EXHIBIT C

(Terms and Conditions of Membership)

 **TERMS AND CONDITIONS**

1.  MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request.   The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party.  The Member shall be bound by any amendment to any of the Governing Documents.

2.  The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System.  MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.  References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3.  MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes.  In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4.  No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5.  If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6.  MERS and the Member agree that:  (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7.  If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS.   The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member.   The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8.  The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time.  The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time.  MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9.  MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member  ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

VC10052000VA

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, VA 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.