# **EXHIBIT D**

**(December 13, 2007 Letter from Purchaser to Debtors Regarding Signature Agreement)**

**AH MORTGAGE ACQUISITION CO., INC.**
c/o WL Ross & Co. LLC
1166 Avenue of the Americas, 27th Floor
New York, New York 10036

December 13, 2007

VIA FACSIMILE AND
FEDEX

American Home Mortgage Investment Corp.
American Home Mortgage Corp.
American Home Mortgage Services, Inc.
c/o American Home Mortgage Investment Corp.
538 Broadhollow Road
Melville, New York 11747
Attention: Mr. Steven Cooper

Re: Asset Purchase Agreement dated as of September 25, 2007, by and among AH Mortgage Acquisition Co., Inc. ("Purchaser"), a Delaware corporation, American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("Parent"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession, and American Home Mortgage Servicing Inc., a Maryland corporation, as a debtor and debtor-in-possession (the "Company" and together with American Home Mortgage Corp. and Parent, the "Sellers") (as amended, the "APA").

Gentlemen:

In accordance with Sections 4.1(b) and (c) of the APA, this letter constitutes notice by Purchaser of disputes concerning the Initial Closing Date Report provided by Sellers at the Initial Closing that took place on November 16, 2007.[1]

The Initial Closing Date Report included an agreement, dated as of March 4, 2004, between Signature Bank and the Company's predecessor, Columbia National Incorporated (the "Signature Agreement"). The inclusion of the Signature Agreement in the Initial Closing Date Report was the result of that contract being listed on Schedule 1.1(j) to the APA. The mortgage servicing rights under the Signature Agreement, however, do not and did not belong to Sellers. Indeed, the Signature Agreement empowered Signature Bank (i) to terminate the Company without cause at any time prior to the expiration of the initial term of the Signature Agreement and (ii) to sell the servicing rights at any time pursuant to Section 2.5(d) of the Signature

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

DLI-6160956v2

Mr. Steven Cooper
December 13, 2007
Page 2

Agreement. Moreover, the Signature Agreement does not transfer to the Company "mortgage servicing rights" as that term is understood in the mortgage servicing industry and as was intended by the parties to be sold for a price of approximately 0.92% of the amount of the unpaid principal balance of the related mortgage loans. Thus, the inclusion of the Signature Agreement in Schedule 1.1(j) to the APA was clearly erroneous, as the parties could not have intended that mortgage servicing rights of Signature Bank be purchased from Sellers and paid for by Purchaser.

The erroneous inclusion of the Signature Agreement on the Initial Closing Date Report resulted in an error in the Initial Closing Servicing Balance, which resulted in the Purchase Price, as calculated in connection with the Initial Closing, to be overstated by $757,426 (the "Overpayment Amount"). Thus, Purchaser hereby requests that Sellers repay the Overpayment Amount to Purchaser by wire transfer of immediately available funds to the account described on Exhibit A to this letter.

The Initial Closing Date Report also contains an error relating to HELOCs. The Initial Closing Date Report includes sections entitled "Investor Summary--Include" and "Investor Summary--Exclude." While Purchaser was to purchase Advances relating to certain excluded Mortgage Loans and servicing rights, Section 11.3 of the First Amendment to the APA provides that "all advances relating to HELOC Agreements or the Mortgage Loans serviced thereunder are excluded from the definition of Advances and shall be Excluded Assets." The Funds Flow Statement prepared in connection with the Initial Closing shows that the Purchase Price calculation was based on an Advances Amount of $104,630,465. That number is the total of the Total Net Advance Balances shown on the "Investor Summary--Include" and "Investor Summary--Exclude" sections. However, contrary to the First Amendment to the APA, the Total Net Advance Balance on the "Investor Summary--Exclude" section, and therefore the Advances Amount, included advances relating to HELOC Agreements or the Mortgage Loans serviced thereunder. While we do not yet know with certainty the exact amount of such advances relating to HELOC Agreements or the Mortgage Loans serviced thereunder, it appears to be at least $958,246, which means that the Purchase Price as calculated in connection with the Initial Closing was overstated by at least $881,586 (the "HELOC Overpayment Amount"). Thus, Purchaser hereby requests that Sellers repay the HELOC Overpayment Amount, and any other part of the Purchase Price based on advances relating to HELOC Agreements or the Mortgage Loans serviced thereunder, to Purchaser by wire transfer of immediately available funds to the account described on Exhibit A to this letter.

In addition, Purchaser is concerned that, with respect to the Signature Agreement, Sellers are not meeting their contractual obligations under Section 6.1(h) of the APA to "use commercially reasonable efforts to oppose any action by a third party to terminate . . . any Assumed Contract." Although Signature Bank has informed us that they are terminating the Signature Agreement, we are unaware of any steps that Sellers have taken to oppose that termination. We request that Sellers immediately take all commercially reasonable steps to oppose Signature Bank's efforts to terminate the Signature Agreement, which would include, we

Mr. Steven Cooper
December 13, 2007
Page 3

believe, an assertion by Sellers that any such termination would be violative of the automatic stay in the Bankruptcy Cases.

    To work through these issues, we should talk as soon as possible. Should other matters arise with respect to the Initial Closing Date Report, we will, of course, provide you with a supplement to this notice; however, we thought it was important to inform you of these items as soon as possible.

                                        Very truly yours,

                                        Josh Seegopaul, Vice President

cc:
    Kroll Zolfo Cooper
    101 Eisenhower Parkway
    Roseland, New Jersey 07068
    Facsimile: (973) 618-9430
    Attention: Elizabeth S. Kardos, Esq.

    Young Conaway Stargatt & Taylor, LLP
    The Brandywine Building
    1000 West Street, 17th Floor
    Wilmington, Delaware 19801
    Facsimile: (302) 571-1253
    Attention: James L. Patton, Jr., Esq.

    Banc of America
    Strategic Solutions, Inc.
    901 Main Street, 66th Floor
    Dallas, TX 75202
    Facsimile: (214) 290-9475
    Attention: Jay T. Wampler

    Kaye Scholer LLP
    425 Park Avenue
    New York, New York 10022
    Facsimile: (212) 836-6545
    Attention: Mark Liscio, Esq.

DLI-6160956v2

Mr. Steven Cooper
December 13, 2007
Page 4

    Hahn & Hessen LLP
    488 Madison Avenue
    New York, New York 10022
    Facsimile: (212) 478-7400
    Attention: Mark S. Indelicato, Esq.

    Robert Profusek, Esq.
    Jones Day
    222 East 41st Street
    New York, New York 10017-6702
    Facsimile: (212) 755-7306

EXHIBIT A

Wire Transfer Instructions

Citibank- New York, New York-ABA 021 000 089

For Bear Stearns a/c 09253186

**Further credit: WLR Recovery Fund IV LP a/c 102-35770-2-4**