## **EXHIBIT E**

**(December 28, 2007 Letter from Debtors to Purchaser Regarding Signature Agreement)**

**AMERICAN HOME MORTGAGE INVESTMENT CORP.**
**AMERICAN HOME MORTGAGE CORP.**
**AMERICAN HOME MORTGAGE SERVICES, INC.**
**538 Broadhollow Road**
**Melville, New York 11747**

December 28, 2007

**BY FACSIMILE (212)317-4891**
AH Mortgage Acquisition Co., Inc.
c/o WL Ross & Co. LLC
1166 Avenue of the Americas, 27th Floor
New York, New York 10036
Attention: Mr. Wilbur L. Ross

    Re:    Asset Purchase Agreement, dated as of September 25, 2007
by and among AH Mortgage Acquisition Co., Inc. ("Purchaser"), a
Delaware corporation, American Home Mortgage Investment Corp., a
Maryland corporation, as a debtor and debtor-in-possession ("Parent"),
American Home Mortgage Corp., a New York corporation, as a debtor
and debtor-in-possession, and American Home Mortgage Servicing Inc., a
Maryland corporation, as debtor and debtor-in-possession (the "Company"
and together with American Home Mortgage Corp. and Parent, the
"Sellers"), as amended (the "APA")

Gentlemen:

        We are in receipt of your correspondence of December 13, 2007 (the "Dispute Notice"), that was delivered with respect to certain items set forth in the Initial Closing Date Report delivered by Sellers to Purchaser at the Initial Closing that took place on November 16, 2007.[1] The Dispute Notice alleges that (i) Servicing Rights under an agreement between Columbia National Incorporated (a predecessor to the Company) and Signature Bank ("Signature"), dated March 4, 2004 (the "Signature Agreement"), were not owned by the Company, the Signature Agreement should not have been listed on Schedule 1.1(j) to the APA, and that Purchaser should not have paid approximately 0.92% of the amount of the unpaid principal balance with respect to the mortgage loans serviced under the Signature Agreement; and (ii) that Advances relating to HELOCs were included in the Advances Amount and should not have been. Based on the claims asserted in the Dispute Notice, Purchaser has asserted that the Purchase Price was overstated (i) by $757,426 as a result of inclusion of the Signature Agreement and (ii) by at least $958,246 as a result of the inclusion of Advances relating to HELOCs in the Advances Amount.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the APA.

Sellers respectfully disagree with Purchaser's assertion that Servicing Rights under the Signature Agreement were not properly included on Schedule 1.1(j) of the APA and that the unpaid principal balance of mortgage loans serviced under the Signature Agreement should not have been included in the Initial Closing Date Report. Sellers agree that Advances relating to HELOCs should not have been included in the Advances Amount, but disagree that the inclusion of such Advances in the Advances Amount resulted in a Purchase Price overstatement of at least $958,246.

Signature Agreement

Under Section 2.1(a) of the APA, Purchaser agreed to purchase "all of Seller's Servicing Rights and rights to receive Servicing Fees." The term "Servicing Rights" is specifically defined in Section 1.1 of the APA to include "all right, title and interest of Sellers in and to: (i) the right to service the Mortgage Loans under the Servicing Agreements, including the right to receive the Servicing Fees and Ancillary Income; . . . ." The Signature Agreement clearly grants the Company certain rights with respect to the servicing of Mortgage Loans and such rights granted to the Company under the Signature Agreement fall squarely within the definition of Servicing Rights set forth in the APA. Thus, contrary to the Dispute Notice's assertion, inclusion of the Signature Agreement on Schedule 1.1(j) was appropriate. After the Initial Closing, Purchaser is entitled to all benefits of the Signature Agreement and, upon the Final Closing, Purchaser will be entitled to all "right, title and interest of Sellers" under the Signature Agreement. Moreover, Section 2.11 of the APA provides that the Purchaser would acquire the Purchased Assets (a defined term that includes the Servicing Agreements) on an "as is" and "where is" basis. Thus, Purchaser agreed to purchase whatever rights Sellers had with respect to the Servicing Rights afforded under the Signature Agreement.

Sellers also note that, despite Purchaser's assertions to the contrary, the Signature Agreement does afford the Company with rights and obligations that are typically associated with the duties of a servicer, including, obligations to receive and apply principal and income payments, to receive, escrow, and apply tax and insurance payments, to retain servicing fees out of amounts received, to initiate foreclosures, and to collect and retain "ancillary income" from mortgage borrowers. Thus, the Dispute Notice's assertion that the rights under the Signature Agreement are not typical in the mortgage servicing industry also lacks merit.

Purchaser's contention that Signature's ability to terminate the Signature Agreement without cause indicates that such agreement is not a Servicing Agreement for purposes of the APA is a moot point. As is the case with any Servicing Agreement, Purchaser is not entitled to a refund of any portion of the Purchase Price if a Servicing Agreement is terminated after the Initial Closing. It should also be noted that the initial term of the Signature Agreement was for a period of three years commencing on March 4, 2004 and expiring on March 3, 2007. Thereafter, the Signature Agreement automatically renews for successive annual terms unless one party notifies the other of a termination not less than 120 days prior to the expiration of the then-

current term. The termination right identified by Purchaser that purportedly precluded characterization of the Signature Agreement as a Servicing Agreement had already expired, without exercise, by the Initial Closing and Sellers continued to provide servicing of the underlying Mortgage Loans on the Initial Closing Date.

Sellers also disagree with Purchaser's contention that Signature's ability to terminate the Company's Servicing Rights under the Signature Agreement upon a sale of the underlying mortgage loans pursuant to Section 2.5(d) of the Signature Agreement serves as further evidence that inclusion of the Signature Agreement on Schedule 1.1(j) was inappropriate. Purchaser neglects to mention that if Signature terminates Servicing Rights upon the sale of any underlying mortgage loans, Signature is required to pay a $750 per loan fee to the Company with respect to each loan for which Servicing Rights are transferred. Moreover, where an underlying mortgage loan is sold and servicing remains with the Company, the Company is entitled to receive an additional fee of $1.00 per month with respect to servicing such mortgage loans pursuant to Section 2.5(c) of the Signature Agreement.

Based upon the foregoing, the Sellers believe that the Signature Agreement was properly included on Schedule 1.1(j) to the APA and that the Purchase Price properly included 0.92% of the unpaid principal balance of Mortgage Loans serviced by the Company pursuant to the Signature Agreement. Sellers also believe that any dispute with respect to the inclusion of the 0.92% of unpaid principal balance of the Mortgage Loans serviced under the Signature Agreement is not a dispute that is susceptible to resolution under the dispute resolution procedures set forth in Section 4.1(c) of the APA, *i.e.*, that the dispute relates to a matter that can be resolved by accountants reviewing the calculations and determining whether the amounts were properly calculated. Instead, the dispute raises a matter of contract interpretation. Accordingly, the parties may be better served by attempting to resolve the matter in another manner or in another forum.

HELOC Advances

As previously noted, Sellers do not dispute the Dispute Notice's assertion that Advances relating to HELOCs should not have been included in the Advances Amount. Sellers' review of the Initial Closing Date Report, however, indicates that the inclusion of such Advances in the Advances Amount resulted in an overstatement of the Purchase Price of $386,551. Total Advances set forth in the Initial Closing Date Report for the excluded HELOCs were $420,164. A summary of such Advances is attached hereto. Sellers also note that some Advances for HELOCs may have been repaid after the Initial Closing. As a result, a reconciliation will need to be prepared to ensure that no amounts are refunded with respect to HELOC Advances that have already been paid.

After you have had an opportunity to review the foregoing, we would like to discuss with you how to best proceed to resolve these matters.

Sincerely,

Kevin Nystrom, on behalf of Sellers

cc: Robert Profusek, Esq. (by facsimile (212)755-7306)
Elizabeth S. Kardos, Esq. (by facsimile (973)618-9430)
Mr. Jay T. Wampler (by facsimile (214)290-9475)
Mark Liscio, Esq. (by facsimile (212)836-6545)
Mark S. Indelicato, Esq. (by facsimile (212)478-7400)
James L. Patton, Esq. (by facsimile (302)571-1253)

| Investor Number | Investor Name | Loan Count | UPB | Cumulative Gross P&I Advance (11/15/07) | Cumulative Net P&I Advance (11/15/07) | Borrowings On Pre-Payments (11/15/07) | Escrow Advance Balance | Corporate Advance Balance | Total Gross Advance Balance | Total Net Advance Balance | Cumulative Gross P&I Advance (Oct EOM) | Cumulative Net P&I Advance (Oct EOM) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 324 | AHMIT 2006-2 | 554 | $35,039,286 | $235,184 | $0 | $235,184 | $2,230 | $13,687 | $251,101 | $15,917 | $261,940 | $0 |
| 598 | AHMIT 2004-4 | 962 | $46,722,372 | $0 | $0 | $0 | $3,833 | $192,864 | $196,697 | $196,697 | $0 | $0 |
| 800 | AHMIT 2005-1 | 932 | $45,010,067 | $145,426 | $0 | $145,426 | $5,780 | $9,037 | $160,242 | $14,817 | $194,507 | $0 |
| 801 | AHMIT 2005-2 | 1,587 | $81,388,352 | $0 | $0 | $0 | $2,895 | $22,292 | $25,187 | $25,187 | $0 | $0 |
| 802 | AHMIT 2007-A | 599 | $34,521,238 | $0 | $116,410 | ($116,410) | $4,398 | $588 | $4,986 | $121,396 | $0 | $246,410 |
| 803 | AHMIT 2005-4A | 1,515 | $81,562,647 | $0 | $0 | $0 | $5,489 | $40,661 | $46,151 | $46,151 | $0 | $0 |
| | Total | 6,149 | $324,243,962 | $380,610 | $116,410 | $264,200 | $24,625 | $279,129 | $684,363 | $420,164 | $456,447 | $246,410 |