IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re:                                                     :   Chapter 11
                                                           :
                                                           :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                      :
HOLDINGS, INC., a Delaware corporation, et al.,            :   Jointly Administered
                                                           :
                      Debtors.[1]                          :   **Objection Deadline: September 8, 2008 at 4:00 p.m. (ET)**
                                                           :   **Hearing Date: September 15, 2008 at 10:00 a.m. (ET)**
---------------------------------------------------------- x

**DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105 AND 363
OF THE BANKRUPTCY CODE, (I) APPROVING THE SALE AGREEMENT,
(II) AUTHORIZING THE PRIVATE SALE OF THE PURCHASED ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS,
AND (III) GRANTING RELATED RELIEF**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), hereby submit

this motion (the "Motion") for entry of an order, pursuant to sections 105(a) and 363 of title 11

of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002,

6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i)

authorizing the private sale (the "Sale") of certain property (as described in greater detail below)

on an "as is, where is" basis, free and clear of all liens, claims, encumbrances and interests to

Metrocities Mortgage, LLC ("Metrocities" or the "Purchaser") pursuant to the terms and

conditions of the Sale Agreement (the "Sale Agreement"), by and between AHM Corp. (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

"Seller") and Metrocities, a copy of which is attached hereto as Exhibit A; (ii) authorizing and approving the terms of the Sale Agreement; and (iii) granting related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, along with Bankruptcy Rules 2002, 6004 and 9014.

## BACKGROUND

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed.

5.      Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business").  In addition to the separate sales of other servicing rights, commencing on October 2, 2007, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to sell the Servicing Business.  By Order dated

October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the

sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co.,

Inc., an affiliate of W.L. Ross & Co., LLC (such affiliate, the "Purchaser") pursuant to the terms

of that certain Asset Purchase Sale Agreement dated as of September 25, 2007 (as amended and

together with all exhibits and schedules thereto, the "APA").

6.      Pursuant to the APA, the Servicing Sale closed in two steps.  At the

"economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser

paid the Purchase Price in the manner and to the parties as provided in the APA and related Sale

Agreements referenced therein.  From the Initial Closing Date until the "legal" close (the "Final

Closing"), the Debtors agreed to operate the Servicing Business in the ordinary course of

business, subject to the Bankruptcy Exceptions (as defined in the APA), for the economic benefit

and risk of the Purchaser.  The Final Closing occurred on April 11, 2008.

### RELIEF REQUESTED

7.      By this Motion, the Debtors seek entry of an order, pursuant to sections

105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014, (i)

authorizing the Sale pursuant to the Sale Agreement, (ii) authorizing and approving the Sale

Agreement and (iii) granting related relief.

## I.      The Debtors' Marketing Efforts for the Sale

8.      The Debtors have marketed the Purchased Assets[2] and have done so in a

manner that they believe is appropriate and cost efficient given the value of these assets.

Initially, the Debtors entered into discussions with Indymac Bank, F.S.B. ("Indymac")

concerning the Purchased Assets; however, after Indymac encountered financial troubles that

---

[2]  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Sale Agreement.

DB02:7145516.3                                                                                        066585.1001

prevented it from acquiring the Purchased Assets, Metrocities, which purchased several related assets from Indymac, approached the Debtors about the Purchased Assets as one of Metrocities' officers is a former officer of the Debtors and familiar with the Purchased Assets. After negotiations with Metrocities, the Debtors agreed to the Purchase Price and executed the Sale Agreement. In light of the foregoing, the Debtors believe that the Purchase Price provides fair and reasonable value for the Purchased Assets.

**II.    Summary of Proposed Terms of the Sale[3]**

9.    Pursuant to the terms of the Sale Agreement, the Debtors propose to sell to Metrocities the Purchased Assets free and clear of all liens, claims, encumbrances and other interests. The Sale Agreement is subject to the Court's approval.

10.    The material terms of the Sale Agreement are as follows:

A.    <u>Purchase and Sale of Assets</u>. Upon the terms and provisions of the Sale Agreement, the Seller agrees to assign, grant, sell, transfer, convey and deliver to the Purchaser, its successors and assigns, free and clear of any and all liens, claims or encumbrances, all of the Seller's right, title and interest in and to all of the assets set forth on <u>Schedule A</u> to the Sale Agreement (the "<u>Purchased Assets</u>"). The Purchased Assets include, but are not limited to, the following:

i.    The websites for the marketing portals including the URLs "www.marketingforlife.com" and "www.mp-publicaccess.com," all source code, the data dictionary, user manuals, technical manuals and database model;

ii.    All software/source code required to create and maintain the loan officer websites with the exception of any Unifi or Human Resource data, including any "Nonpublic Personal Information" as that term is defined in Title V of the Gramm-Leach-Bailey Act of 1999 or any successor federal statute, and the rules and regulations thereunder, all as may be amended or supplemented from time to time, and personally identifiable information protected under and any

---

[3] This summary of the Sale Agreement is provided for the Court's convenience only. To the extent that the summary differs in any way from the terms of the Sale Agreement, the terms of the Sale Agreement shall control.

DB02:7145516.3                                                          066585.1001

other applicable law, rule or regulation of any jurisdiction relating to disclosure or use of personal information;

iii.   The business requirement, functional specification and design documents for the marketing portal upgrade project in process up through July 2007;

iv.   The following web and database servers: MELPSMKTDBS01 - IBM x345 (867011X); 2x2GHZ Xeon CPU; 4GB Ram; 6 - 36.4 10K HDD MELPSMKTWEB01 - HP Proliant DL360; 2x2.4 GHZ CPU; and 2GB Ram, 2 - 36.4GB Drives;

v.   All existing online marketing collateral materials stored on the "K" drive copied to portable storage device(s), but not including any Nonpublic Personal Information" as that term is defined in Title V of the Gramm-Leach-Bailey Act of 1999 or any successor federal statute, and the rules and regulations thereunder, all as may be amended or supplemented from time to time, and personally identifiable information protected under and any other applicable law, rule or regulation of any jurisdiction relating to disclosure or use of personal information; and

vi.   All existing loan officer websites excluding personal loan officer information.

B.   <u>Purchase Price</u>. The consideration paid by the Purchaser for the Purchased Assets is $115,000 (the "<u>Purchase Price</u>").

C.   <u>Condition of Purchased Assets</u>. Except as expressly set forth in the Sale Agreement, the Purchaser is purchasing the Purchased Assets in their "**AS IS, WHERE IS" CONDITION.**

## III.   The Sale of the Purchased Assets Should Proceed by Private Sale

11.   For the reasons explained below and throughout this Motion, the Debtors believe that the approval of a private sale of the Purchased Assets to Metrocities pursuant to the terms of the Sale Agreement is appropriate.

DB02:7145516.3                                                                                               066585.1001

A.    *Sale of the Purchased Assets Substantially Pursuant to the Terms of the Sale
Agreement Should be Approved*

12.    Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

"The Court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title." 11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004

states that, "all sales not in the ordinary course of business may be by private sale or by public

auction." Fed. R. Bankr. P. 6004(f)(1).  With respect to the notice required in connection with a

private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> . . . the notice of a proposed use, sale or lease of property . . . shall
> include . . . the terms and conditions of any private sale and the
> deadline for filing objections.  The notice of a proposed use, sale or
> lease of property, including real estate, is sufficient if it generally
> describes the property.

Fed. R. Bankr. P. 2002(c)(1).

13.    To approve the use, sale, or lease of property out of the ordinary course of

business, this Court must find "some articulated business justification" for the proposed action.

See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly

adopting the "articulated business justification" and good faith tests of Committee of Equity Sec.

Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983)); see also In re

Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third

Circuit had adopted a "sound business purpose" test in Abbotts Dairies); Titusville Country Club

v. PennBank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re

Indus. Valley Refrigeration & Air Conditioning Supplies, Inc., 77 B.R. 15, 19 (Bankr. E.D. Pa.

1987).

B.    *Legal Standard for Approval of Private Sale*

14.    Generally, courts have applied four (4) factors in determining whether a sale of a debtor's assets should be approved:  (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided.  See Lionel, 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); Delaware & Hudson Ry., 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

15.    This fundamental analysis does not change if the proposed sale is private, rather than public.  See, e.g., In re Ancor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property."  In re WPRV-TV, Inc., 143 B.R. 315, 319 (D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1992); accord, In re Canyon Partnership, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).  Here, the proposed private sale of the Purchased Assets to the Purchaser meets all of these requirements and should be approved.

7

C.    *Proceeding by Private Sale Reflects an Exercise of the Debtors' Business Judgment*

16.    There is a sound business justification for the Debtors' preference to proceed with a private sale to the Purchaser, rather than conducting a public sale of the Purchased Assets. The Debtors submit that an order granting the relief requested herein is a matter within the discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. See 11 U.S.C. §105(a). As a result of Metrocities' interest in the Purchased Assets, and Metrocities' willingness to provide fair and reasonable consideration based on such interest, the Debtors believe that their estates and creditors would benefit from the approval of the Sale without the added costs associated with a public auction, at which the Debtors are not guaranteed the commitment of Metrocities to purchase the Purchased Assets, much less at the price to be provided through the Sale Agreement.

17.    Additionally, the Debtors believe that a private sale of the Purchased Assets to the Purchaser under the terms of the Sale Agreement will be much more likely to close in a timely manner than an auction because, in the Debtors' business judgment, the Sale Agreement provides them with a strong indication that the Purchaser is motivated to close the contemplated transaction in a timely manner. Further, the Sale Agreement demonstrates the Metrocities' good faith intent to close the contemplated transaction, subject only to Court approval.

D.    *The Purchase Price is Fair and Reasonable*

18.    The Purchase Price represents a fair and reasonable price for the Purchased Assets. The Debtors have carefully considered and analyzed the Purchaser's offer as set forth in the Sale Agreement and have concluded that a sale of the Purchased Assets to the Purchaser is in the best interest of the Debtors' estates and will further the Debtors' efforts to

maximize the value of their estates. The Sale will be in exchange for fair and reasonable value as the Purchaser has agreed to provide consideration for the Purchased Assets equal to $115,000. As explained above, the Debtors have marketed the Purchased Assets in a manner that they believe is appropriate and cost efficient given the value of these assets. In light of those marketing efforts, the Debtors believe that the Purchase Price provides fair and reasonable value for the Purchased Assets.

E.      *The Sale is Proposed in Good Faith*

19.    The sale transaction has been proposed in good faith as the Sale Agreement was the product of good faith, arm's length negotiations between the Debtors, on the one hand, and the Purchaser, on the other, and was negotiated with the active involvement of the Debtors' officers and professionals. The Debtors believe and submit that the sale of the Purchased Assets to the Purchaser pursuant to the terms and conditions of the Sale Agreement is not the product of collusion or bad faith. No evidence exists to suggest that the Sale Agreement is anything but the product of arm's length negotiations between the Debtors, the Purchaser and their respective professional advisors. The Purchaser does not share common ownership with any of the Debtors, and is independently controlled and operated, and is not otherwise affiliated with the Debtors or their officers and directors. A former officer of the Debtors is currently an officer of the Purchaser and executed the Sale Agreement on the Purchaser's behalf. Even though one of the officers of the Purchaser was a former officer of the Debtors, all negotiations with respect to the sale of the Purchased Assets pursuant to the terms of the Sale Agreement have been conducted on an arms' length good faith basis.

9

F.    *Adequate and Reasonable Notice of the Sale Has Been Provided*

20.    The Debtors have provided adequate notice of the proposed Sale to all parties-in-interest, as required by the applicable procedural rules. See Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); see also, Delaware & Hudson Ry., 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

21.    The Debtors have also served the Motion and the Sale Agreement on all parties that have expressed interest or the Debtors believe may have an interest in purchasing the Purchased Assets.

22.    The notified parties will have the opportunity to submit other offers during the period prior to the objection deadline noted in the caption of this Motion. Consistent with their fiduciary duties to their estates, the Debtors will consider all such offers.

23.    To summarize, in the Debtors' informed business judgment, there is very little, if anything, to be gained by conducting a formal auction of the Purchased Assets. Even if there were other entities willing and able to overbid the Purchaser for the Purchased Assets, which the Debtors believe to be unlikely, the delay, uncertainty and added administrative expenses attendant to the auction process would be unfavorable to the Debtors, their estates and creditors. For these reasons, the Court should not force the parties to conduct a public sale or to establish bidding procedures contrary to the Sale Agreement and the Debtors' business judgment, but instead should approve the private sale of the Purchased Assets to the Purchaser.

DB02:7145516.3                                                                                                          066585.1001

IV.    **The Sale Should Be Approved Under 11 U.S.C. § 363(f)**

        A.    *The Sale is Proposed in Good Faith Within the Meaning of 11 U.S.C. §363(m)*

        24.    As discussed above, the terms of the Sale Agreement were negotiated at arms' length, without collusion, in good faith and with the parties being represented by counsel. Although the officer who executed the Sale Agreement on the Purchaser's behalf is a former officer of the Debtors, the Debtors believe that neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Sale Agreement to be avoided under section 363(m). Accordingly, the Debtors request that the Court determine the Purchaser to have negotiated and acted at all times in good faith and, as a result, be entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code. See generally Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.), No. 89 Civ. 3704 (KMW), 1990 WL 212899 (S.D.N.Y.) (holding that to show lack of good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); see also generally In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting In re Bel Air Assocs., Ltd., 706 F.2d 301, 305 (10th Cir. 1983)); In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings" (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978))).

        B.    *The Sale Transfer Should be Free and Clear of Liens, Claims, and Interests*
           *(Except as Set Forth Herein)*

        25.    In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property

11

is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); see In re Elliot, 94 B.R. 343, 354 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met).

26.     Considering that any objections to this Motion must be resolved by consent of the objecting party or by the Court, the Debtors expect that they can satisfy at least the second and fifth subsections of section 363(f) of the Bankruptcy Code. Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f). See, e.g., In re Trans World Airlines, Inc., 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). Accordingly, the Debtors request that the sale of the Purchased Assets be approved "free and clear," with any liens, claims, encumbrances, and interests to attach to proceeds of the Sale.

**V.     Relief from the Ten-Day Waiting Period Under Bankruptcy Rule 6004(h) is Appropriate**

27.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that the Order approving the Sale be effective immediately by providing that the ten (10) day stay under Bankruptcy Rule 6004(h) is waived.

28.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce

12

the ten-day stay period, Collier on Bankruptcy suggests that the ten (10) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

29.    Since promptly closing the Sale is of critical importance to the Purchaser and the Debtors' efforts to preserve and maximize the value of their estates, the Debtors hereby request that the Court waive the ten-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

30.    Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to Bank of America, N.A.; (iv) counsel to the DIP Lender; (v) Metrocities; and (vi) all parties entitled to notice under Del. Bankr. L.R. 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required

DB02:7145516.3                                                                      066585.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the proposed order, substantially in the form attached hereto as Exhibit B, (i) approving the private sale of the Purchased Assets to Metrocities, (ii) approving the Sale Agreement and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware      YOUNG CONAWAY STARGATT & TAYLOR, LLP
       August 26, 2008

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

DB02:7145516.3         066585.1001

# EXHIBIT A

Sale Agreement

## PURCHASE AGREEMENT AND BILL OF SALE

This PURCHASE AGREEMENT AND BILL OF SALE (this "Bill of Sale") dated as of July ___, 2008, is made and executed among AMERICAN HOME MORTGAGE CORP., a New York corporation (the "Seller"), and METROCITIES MORTGAGE, LLC, a Delaware ~~corporation~~ (the "Purchaser"). limited liability company

## WITNESSETH

WHEREAS, Seller, as debtor and debtor in possession, and certain affiliates of Seller have filed voluntary petitions for relief pursuant to Chapter 11 ("Chapter 11") of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") captioned as *In re: American Home Mortgage Holdings, Inc.*, Chapter 11 Case No. 07-11047 (CSS), jointly administered; and

WHEREAS, Seller has agreed to sell and Purchaser has agreed to purchase the Purchased Assets (as defined below) on the terms and conditions set forth herein and as authorized under section 363 of the Bankruptcy Code and Seller has determined that a sale in accordance with section 363 of the Bankruptcy Code is in the best interests of its creditors and interest holders.

NOW, THEREFORE, for good and valuable consideration to Seller receipt of which is hereby acknowledged, Seller and Purchaser, intending to be legally bound hereby, agree as follows:

1.    Sale of Purchased Assets.  Subject to the approval of the Bankruptcy Court, Seller hereby assigns, grants, sells, transfers, conveys and delivers to Purchaser, its successors and assigns, forever all of Seller's right, title and interest in and to all of the assets identified on Schedule A attached hereto and incorporated herein (collectively, the "Purchased Assets").

2.    Payment of Purchase Price.  Contemporaneous with the execution of this Bill of Sale by Purchaser, Purchaser shall deliver the purchase price for the Purchased Assets in the amount of $115,000.00 (the "Purchase Price") to Seller by either certified check or wire transfer.  Nothing expressed or implied in this Bill of Sale shall be deemed to be an assumption by Purchaser of any liabilities of Seller.  Purchaser does not by this Bill of Sale agree to assume or agree to pay, perform or discharge any liabilities of Seller of any nature, kind or description whatsoever.

3.    "As Is Where Is" Transaction.  Purchaser hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Purchased Assets.  Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any of the Purchased Assets.  Purchaser further acknowledges that Purchaser has conducted an independent inspection and investigation of the physical condition of the Purchased Assets and all such other matters relating to or affecting the Purchased Assets as

Purchaser deemed necessary or appropriate and that in proceeding with Purchaser's acquisition of the Purchased Assets, Purchaser is doing so based upon such independent inspections and investigations. Accordingly, Purchaser will accept the Purchased Assets "AS IS" and "WHERE IS".

4.    <u>Conditions Precedent</u>. The sale of the Purchased Assets pursuant to this Bill of Sale is subject to the approval by the Bankruptcy Court. Within ten (10) business days after the execution of this Bill of Sale by the parties, Seller shall cause to be filed in the Bankruptcy Court, a motion seeking an order of the Bankruptcy Court approving Seller's sale, transfer and conveyance of the Purchased Assets to Purchaser pursuant to this Bill of Sale free and clear of any and all liens, claims, or encumbrances. Seller shall act in a commercially reasonable manner to obtain such order from the Bankruptcy Court. In the event Seller is unable to obtain an order from the Bankruptcy Court approving the sale, transfer and conveyance of the Purchased Assets to Purchaser, Seller shall within three (3) business days return the Purchase Price to Purchaser in the manner such Purchase Price was delivered to Seller.

5.    <u>Transfer and Removal of the Purchased Assets</u>. Purchaser agrees that it is solely responsible for arranging and paying for the removal and shipment of the Purchased Assets. Purchaser shall provide to Seller, upon demand, evidence of the following insurance policies with reliable insurance companies for Purchaser and any agent of Purchaser responsible for the removal of all or any portion of the Purchased Assets, and in the following amounts: $2,000,000 combined single limit, $1,000,000 property damage and $1,000,000 comprehensive general liability with contractual liability in the case of all riggers; and $500,000 cargo and $1,000,000 comprehensive general liability in the case of carriers; and such other insurance as may be required by any governmental authority, including workers' compensation insurance. Transfer of the Purchased Assets shall be effective upon the Bankruptcy Court's entry of the order described in Section 4 above (the "<u>Effective Time</u>"). Title to, and risk of loss with respect to, the Purchased Assets shall vest in Purchaser at the Effective Time. Removal of the Purchased Assets shall be completed by Purchaser within ten (10) business days after the Bankruptcy Court issues the order described in <u>Section 4</u> above.

6.    <u>No Rights in Third Parties</u>. Nothing expressed or implied in this Bill of Sale is intended to or shall confer upon any party, other than Purchaser and Purchaser's successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Bill of Sale.

7.    <u>Successors and Assigns</u>. This Bill of Sale shall bind and inure to the benefit of Seller, Purchaser, and their respective successors and permitted assigns.

8.    <u>Governing Law</u>. This Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law. In the event either party shall institute a legal action as a result of the default in the other party's performance under this Agreement or for any breach of this Bill of Sale, any such action shall be brought exclusively in the Bankruptcy Court.

9.    <u>Amendment</u>. This Bill of Sale may be amended, modified, or supplemented only by a written instrument signed by both Purchaser and Seller. No supplement,

2

modification, waiver, or termination of this Bill of Sale shall be binding unless executed in writing by the party to be bound thereby.

          10.    <u>Counterparts; Facsimile Execution</u>.  This Bill of Sale may be executed in counterparts, all of which shall constitute the same agreement, notwithstanding that all parties to this Bill of Sale are not signatory to the same or original counterpart.  Delivery of an executed counterpart of this Bill of Sale by facsimile shall be equally as effective as delivery of an original executed counterpart.  Any party delivering an executed counterpart of this Bill of Sale by facsimile also shall deliver an original executed counterpart of this Bill of Sale, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability and binding effect of this Bill of Sale.  Signature and acknowledgement pages may be detached from the counterparts and attached to a single copy of this Bill of Sale to physically form one (1) document.

        [Signature Page Follows Immediately]

DB02:6909880.4                    066585.1001

IN WITNESS WHEREOF, the parties have caused this Bill of Sale to be duly executed as of the day and year first above written.

"Seller":

AMERICAN HOME MORTGAGE CORP.

By: _____
Name: CHRIS CAYACO
Title: EVP

"Purchaser":

METROCITIES MORTGAGE, LLC

By: _____
Name:   Richard S. Loeffler
Title:   CEO

4

## Schedule A

A. The websites for the marketing portals including the URLs "www.marketingforlife.com" and "www.mp-publicaccess.com", all source code, the data dictionary, user manuals, technical manuals and database model;

B. All software/source code required to create and maintain the loan officer websites with the exception of any Unifi or Human Resource data, including any "Nonpublic Personal Information" as that term is defined in Title V of the Gramm-Leach-Bliley Act of 1999 or any successor federal statute, and the rules and regulations thereunder, all as may be amended or supplemented from time to time, and personally identifiable information protected under and any other applicable law, rule or regulation of any jurisdiction relating to disclosure or use of personal information;

C. The business requirement, functional specification and design documents for the marketing portal upgrade project in process up through July 2007;

D. The following web and database servers: MELPSMKTDBS01 - IBM x345 (867011X), 2x2GHZ Xeon CPU, 4GB Ram, 6 - 36.4 10K HDD MELPSMKTWEB01 - HP Proliant DL360, 2x2.4 GHZ CPU, 2GB Ram, 2 - 36.4GB Drives

E. All existing online marketing collateral materials stored on the "K" drive copied to portable storage device(s), but not including any Nonpublic Personal Information" as that term is defined in Title V of the Gramm-Leach-Bliley Act of 1999 or any successor federal statute, and the rules and regulations thereunder, all as may be amended or supplemented from time to time, and personally identifiable information protected under and any other applicable law, rule or regulation of any jurisdiction relating to disclosure or use of personal information; and

F. All existing loan officer websites excluding personal loan officer information.