September 4, 2008

Nancy Levine          email: STMORTGAGE@AOL.com
23905 Woodway Road
Beachwood, OH  44122
216-789-9383

In connection with the Notice of Debtors' Fifteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1, In re: American Home Mortgage Holdings, Inc., a Delaware corporation, et al. Debtors, Chapter 11, Case No. 07-11047 (CSS), in the United States Bankruptcy Court for the District of Delaware, I am filing my response to the Objection as it relates to Claim No. 329, in the amount of $8388.07, for the benefit of Nancy A Levine.

The first paragraph of The American Home Mortgage Commission Plan ( a copy is marked as Exhibit 4 in the Supplemental Declaration of Puneet Agrawal in Support of Debtors' Fifteenth Omnibus Objection to Claims and attached) states that the Company reserves the right, in its sole discretion, to modify, amend or terminate any of the terms and conditions of this Commission Plan at any time.

Also enclosed is an e-mail from Lydia Bauer, Compensation Analyst, from American Home Mortgage and Robson Neves, Manager.  The e-mail contains a Personnel Action form for the benefit of Nancy A. Levine that was approved by Christopher Dallas on August 2, 2007, effective July 31, 2007. The Personnel Action Form (PAF) was submitted and approved by Senior Management of American Home Mortgage in order to change the payment date of my production bonus as stated in my original Employment Agreement and commission plan to July 31, 2007.  The appropriate levels of approval were obtained by the individuals who had the authority and authorization to modify, amend or terminate any of the terms and conditions of the Commission Plan at any time.

Thus, as stated above, the production bonus in the amount of $8388.07 was authorized and approved to be paid out on July 31, 2007. I was fully employed at American Home mortgage on July 31, 2007. As indicated in the enclosed Notice of Permanent Layoff, my employment was terminated on August 3, 2007, after the modification of my Commission Plan and after the approval of my production bonus. Consequently, I am entitled to my claim in the amount of $8388.07.

I received the enclosed Supplemental Declaration of Puneet Agrawal in the US mail on August 30, 2008. The initial Declaration of Marissa Morelle executed August 15, 2008, and received shortly thereafter also via US mail did not contain the  Exhibits referenced

within the document. Thus, I was not aware of the reason for the Objection to my claim No. 329 until I received the documents from Puneet Agrawal's Declaration.

The Declaration of Puneet Agrawal included a copy of my Employment Contract. This Declaration package was mailed to an infinite number of individuals. I was shocked to note that my social security number was not deleted from my Employment Agreement prior to being mailed. Is there not Privacy Protection for filings made within the Bankruptcy Courts?  Privacy Laws were enacted to help protect individuals from Identity Fraud.    The disclosure of my personal and confidential information has the potential to cause irreparable damage to my unblemished credit history. I suggest that the practice of disclosing to the general public one's social security number contained in documents submitted in connection with a bankruptcy claim be reviewed and discouraged. Thank you very much.

Nancy Levine

**From:** Robson Neves <Robson.Neves@americanhm.com>
**To:** stmortgage@aol.com
**Subject:** RE: 401k Match
**Date:** Mon, 10 Sep 2007 11:05 am
**Attachments:** Proof_of_Claim_Form.pdf (52K)

Good morning

I have followed up and have been informed that the payroll department has received your request for the bonus. I also recommend that you complete the attached proof of claim, requesting this bonus. Please complete and return to the address listed on the form.

Sincerely,


Robson L. Neves
Manager, Retirement Plan Administration
631-622-6325 direct
X 6325 internal
1-866-628-5707 E-FAX
American Home Mortgage
538 Broadhollow Road
Melville, NY 11747
Robson.Neves@americanhm.com


**From:** stmortgage@aol.com [mailto:stmortgage@aol.com]
**Sent:** Thursday, September 06, 2007 11:07 AM
**To:** Robson Neves
**Subject:** Re: 401k Match

Nancy Levine
2~~--~~


-----Original Message-----
From: Robson Neves <Robson.Neves@americanhm.com>
To: stmortgage@aol.com
Sent: Thu, 6 Sep 2007 10:27 am
Subject: RE: 401k Match


Good morning

Please provide me with your name and SS# and I'll follow up.

Thank you

R. Neves



**From:** stmortgage@aol.com [mailto:stmortgage@aol.com]
**Sent:** Friday, August 31, 2007 3:32 PM
**To:** Robson Neves
**Cc:** Stmortgage@aol.com
**Subject:** Fwd: 401k Match

**From:** Lydia Bauer <Lydia.Bauer@americanhm.com>
**To:** stmortgage@aol.com
**Cc:** Robson Neves <Robson.Neves@americanhm.com>
**Subject:** PAF For Nancy A Levine has been Approved
**Date:** Wed, 12 Sep 2007 12:08 pm

Here's a copy of the PAF.

**Lydia Bauer**
Compensation Analyst
American Home Mortgage
538 Broadhollow Road, 3rd Fl, West
Melville, NY 11747
Direct:
Fax: 866.392.3918
lydia.bauer@americanhm.com

**From:** HRapproval@americanhm.com [mailto:HRapproval@americanhm.com]
**Sent:** Thursday, August 02, 2007 1:28 PM
**To:** Compensation; Payroll Forms; Meredith Herfel; Joanna Sawicki; Mildred Jansen; Davin Cellura; Lisa Carollo; John Manglardi
**Subject:** Personnel Action Confidential Form Request (compensation change) For Nancy A Levine has been Approved

The Personnel Action Form for **Nancy A Levine** has been approved.

| | |
|---|---|
| Manager's Name | Kasony, Patricia |
| Submitter's Name | Kasony, Patricia |

### Employee Identification Information

| | |
|---|---|
| Last Name | Levine |
| First Name | Nancy |
| Middle Initial | A |
| Cost Center | 002897 - Mentor OH 2897 |
| Employee Type | Permanent |
| Employee's Last 4 digits of SSN | 8753 |
| Job Title | RET Loan Officer |
| Functional Position Title | Loan Officer |
| Date of Hire | |

### Compensation Change Information

| | |
|---|---|
| Effective Date | 7/31/2007 |
| Current Annual Salary | 0 |
| Salary Increase | 0 |
| Bonus Amount | 8388.07 |
| Comments | 10 bps bonus due per employment contract. |

### Approval Information

| | |
|---|---|
| Submitted on: | 8/2/2007 1:24:25 PM |

Submitted By:                          Patricia Kasony
Approval Needed From:                  Christopher Dallas (ChDallas)
Status:                                Approved
Updated By:                            Christopher Dallas (ChDallas)
Updated On:                            8/2/2007 1:27:57 PM
Comments:

Please click this link to review the details of this request
http://www.ahmweb.com/HR/PAFApproval.asp?ID=37863

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) **Chapter 11** |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., Delaware corporation, et al., | ) **Case No. 07-11047 (CSS)** |
| | ) |
| Debtors. | ) **Jointly Administered** |
| | ) |
| | ) **Objection Deadline: September 8, 2008 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: September 15, 2008 at 10:00 a.m. (ET)** |
| AHM OB15 8/15/2008 (merge2.txnum2) 4000000328 EPIQ Use - 144 | ) |

LEVINE, NANCY
23905 WOODWAY RD
BEACHWOOD, OH 44122

## NOTICE OF DEBTORS' FIFTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

TO: LEVINE, NANCY
23905 WOODWAY RD
BEACHWOOD, OH 44122

**Basis For Objection:** No Liability

| | Claim Number | Claim Amount |
|---|---|---|
| Claim to be Expunged | 329 | $8,388.07 |

No amounts are owed per terms of employment contract

The above-captioned debtors and debtors in possession (the "Debtors") have filed the **Debtors' Fifteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1** (the "Objection"), a copy of which is attached hereto. The Debtors seek by this Objection to disallow the claim listed above because the Debtors have determined, after review of their books and records, that they have no record of any liability on account of this claim. The Objection seeks to alter your rights by disallowing the claim listed above in the "Expunged Claim" row.

Responses to the Objection, if any, must be filed on or before **September 8, 2008 at 4:00 p.m. (ET)** (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

At the same time, you must also serve a copy of the response upon the counsel to the Debtors listed below so that the response is received on or before the Objection Deadline.

A HEARING ON THE OBJECTION WILL BE HELD ON **SEPTEMBER 15, 2008 AT 10:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 5TH FLOOR, COURTROOM NO. 6, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: August 15, 2008
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Edward J. Kosmowski (No. 3849)
Kara Hammond Coyle (No. 4410)
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6756
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession

  

Re: **NOTICE OF PERMANENT LAYOFF**

Dear Employee:

This is to inform you that due to circumstances beyond its control American Home Mortgage is conducting layoffs at its facility located at 538 Broadhollow Road; Melville, NY 11747. As a result of these layoffs, your employment must be terminated effective today, August 3, 2007. The Company expects your layoff to be permanent and that no bumping rights will exist.

The decision to conduct layoffs and our inability to provide advance notice was the result of a number of sudden and unanticipated events, including the unprecedented disruption in the credit markets which resulted in major write-downs of the company's loan and security portfolios. This event, unfortunately, resulted in margin calls with respect to the company's loans and left us unable to obtain financing to originate loans. In addition, the recent exercise of remedies by the warehouse lenders have left the company in a severe liquidity crisis.

We regret having to take this action because of its impact on you and the local community. Should you have any questions, please contact Karen Ullman; Martin Gennusa; Karen Cooper; Courtney Dwyer or Rob Neves at 538 Broadhollow Road; Melville, NY 11747 or by Telephone at (888) 474-2461.

Sincerely,

American Home Mortgage

*MaryAnn Munson*

MaryAnn Munson
SVP, Human Resources

EMPLOYEE INFORMATION SUMMARY
PERMANENT EMPLOYEE LAYOFFS

I.    Wages/Salaries – July 16 – July 31
Payment of the August 10th payroll for hours worked during the period July 16 – July 31 is anticipated to be made on August 7. Earned but unused vacation will be paid with the August 7 payroll according to the accrual balances in the E-time system. Personal time is not paid out except where mandated by state law - there may be a delay in the receipt of personal time payments. Hours worked for August work days will be paid on August 7.

II.   Employee Benefits
A change to the policy governing the coverage end date became effective August 1, 2007. Coverage under American Home Mortgage employee benefit plans will end on the last day of employment.

Employees participating in medical, dental, and vision plans will be offered coverage under COBRA effective on the first day following their last day of employment. A COBRA notice will be sent from our COBRA administrator, ADP COBRA SERVICES within fourteen days of the date of termination as required by law. Employees with supplemental life insurance coverage may request conversion of that coverage by contacting the HR Department at 888-474-2461 to request a conversion application. Spouse life and child life coverage is not convertible.

III.  Disability Insurance
Short-term and long-term disability coverage will end on the last day of employment. These plans are not convertible or portable.

IV.   401(K) Plan
No 401(k) deferrals will be deducted from pay delivered on August 7. Employees participating in the 401(K) plan will become fully vested in their plan account balance effective on their termination date. Employees may request a distribution directly from Charles Schwab by calling (800) 724-7256. Employees may roll over their 401(k) accounts to a personal IRA or to a new employer's qualified plan account, or may elect to take a cash distribution following termination. Charles Schwab will send distribution packages to terminated plan participants at the home address listed on their account record. Terminated participants should request their distribution by October 31, 2007. Participants with loan balances will receive a Form 1099 by January 31, 2008 from Charles Schwab for filing with their 2007 Federal Income Tax return.

V.    Non-Qualified Deferred Compensation Plan
Participants in the Deferred Compensation Plan are not able to receive distributions from the Plan at this time. A separate communication will be sent to the participants of this plan when additional information is made available.

VI.   Flexible Spending Accounts
Participants in the Flex Spending plans may submit claims for medical and dependent care expenses incurred through August 3. The normal claim process should be followed for these reimbursements. Participants will have until October 31, 2007 to submit claims for expenses incurred between January 1, 2007 and their date of termination.

VII.  Business Expenses
Reimbursement requests may be submitted manually for eligible business expenses. There may be a delay in the delivery of eligible expenses. Employees with American Express Corporate Cards are reminded that they are responsible for all personal expenses charged to the cards. Only eligible documented business expenses will be considered for reimbursement.

VIII. EMPLOYEE ASSISTANCE PROGRAM
Terminated employees and their family members may use Employee Assistance Program services through August 31, 2007. Contact the EAP at **800-865-1044**

**From:** Nancy Levine <Nancy.Levine@americanhm.com>
**To:** stmortgage@aol.com
**Subject:** FW: Please Read: Announcement from Mike Strauss
**Date:** Thu, 2 Aug 2007 3:09 pm

**From:** Carlos Gonzalez on behalf of Michael Strauss
**Sent:** Thu 8/2/2007 3:01 PM
**Subject:** Please Read: Announcement from Mike Strauss

Dear Colleages,

It is with great sadness I announce today that American Home Mortgage has been forced to close.  Unfortunately, the market conditions in both the secondary mortgage market as well as the national real estate market have deteriorated to the point that our business is no longer viable.  What this means for most of our employees is that Friday, August 3, 2007 will be your last day of employment.  Detailed information regarding payroll, benefits and other human resource related matter will be available Friday morning for distribution in the office.

I would like to personally thank every single individual working for the company for their efforts.  It has been my privilege to be associated with such a wonderful team.

Sincerely,


Michael Strauss

time for which she received her entitled payment of $1,200.00.  Similarly, POC No. 8406 should be disallowed because the claimant had no unused vacation time in accordance with the Debtors' record attached hereto as <u>Exhibit 3</u>.

      d.      Malathy Moralidharan [POC No. 2428]: The Debtors have no record of this person ever working for any of the Debtors.

## B.    <u>Employee Claims for Unused Sick and Personal Time</u>

      4.      The Debtors objected to the following claims as No Liability Claims in Exhibit A to the Objection on the basis that the claimants are not entitled to payment for unused sick and/or personal time:

      a.      Mollie Evanichko [POC No. 501], Karen A. Fisher [POC No. 548], Rosa M. Mora [POC No. 4179], Sheryl A. Seus [POC No. 7478], Cecilia Symons [POC No. 1431], Barbara L. Wagner [POC No. 193], Donna Weilburg [POC No. 801], and Tracey K. Weinheimer [POC No. 1073]:  These claimants are not entitled to payouts for unused sick and personal days because the Policy states that "Employees who leave the Company during the year will not receive pay for unused sick/personal days."  All of the employees asserting the above-listed claims ceased working for the Debtors during the year for which they claim payouts for unused sick and personal days.

      b.      Anna Elizabeth Frazer [POC No. 503]: The claimant is not entitled to a payout for sick and personal days because she was a part-time employee and therefore, per the Policy, was not entitled to receive any paid sick and personal days.

## C.    <u>Employee Claims for Unpaid Bonuses</u>

      5.      The Debtors objected to the following claims as No Liability Claims in Exhibit A to the Objection on the basis that the claimants are not entitled to payment for unused sick and/or personal time:The Debtors objected to proofs of claim filed by Julie J. Dickson [POC No. 833], Nancy Levine [POC No. 329], Judy McGaha [POC No. 527] and Tammy Pederson [POC No. 183] as No Liability Claims in Exhibit A of the Objection. These claimants are not entitled to the bonuses claimed in their proofs of claim because they were not employed on the scheduled payment date for the alleged bonuses. Ms. Levine's employment agreement, which was attached

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------------- x
:
In re:                                                               :   Chapter 11
                                                                     :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                                :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                                   :
                                                                     :   Jointly Administered
     Debtors.                                                        :
--------------------------------------------------------------------- x

### SUPPLEMENTAL DECLARATION OF PUNEET AGRAWAL IN SUPPORT OF DEBTORS' FIFTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

I, Puneet Agrawal, pursuant to 28 U.S.C. § 1746, declare:

1.      I am a Manager at Kroll Zolfo Cooper LLC, the court-approved financial advisor

of the above-captioned debtors and debtors in possession (the "Debtors"). In this capacity, I am

one of the persons responsible for overseeing the claims reconciliation and objection process in

the Debtors' chapter 11 cases. I submit this Supplemental Declaration to supplement the

declaration of Marissa Morelle, dated August 15, 2008, which was filed in support of the

Debtors' Fifteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the

Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 [Docket No. 5447]

(the "Objection").[2]

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The mailing address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

to her proof of claim and is attached hereto as <u>Exhibit 4</u>, expressly states that on page 8 or 9 that she must be employed on the scheduled payment date in order to receive a bonus.

**D.    Other Miscellaneous Employee Claims**

6.    The Debtors objected to a proof of claim filed by Robin Balfour [POC No. 931] in the amount of $43,541.62 as a No Liability Claim in Exhibit A of the Objection. Ms. Balfour claims she is owed for an unpaid quarterly bonus, unused vacation time and four weeks of termination pay. However, Ms. Balfour is not entitled to the alleged unpaid bonus because she was not employed on the scheduled payment date for that bonus. Additionally, as a sales employee, Ms. Balfour was not entitled to receive payment for unused vacation time. Ms. Balfour may be entitled to four weeks of termination pay, however, the amount of such pay should only be $8,846.15 (Ms. Balfour's annual salary was $115,000, which multiplied by 4/52 equals $8,846.15). Therefore, the Debtors request that the Court reduce the amount of Ms. Balfour's claim to $8,846.15 priority, rather than expunging the claim in its entirety.

7.    The Debtors objected to a proof of claim filed by Al Crisanty [POC No. 1908] in the amount of $713,210.00 as a No Liability Claim in Exhibit A of the Objection. Mr. Crisanty failed to include any explanation or basis for the amount alleged in his proof of claim. Therefore, the Debtors assert that Mr. Crisanty has failed to assert a prima facie claim. It appears that Mr. Crisanty may be asserting that he is owed a year end bonus that is listed on a pay stub that he attached to his proof of claim. However, the pay stub lists this bonus in a column titled "year to date," which seems to indicate that this is an amount that has already been paid to Mr. Crisanty. Moreover, neither the Debtors' books and records nor Mr. Crisanty's employment agreement, which is attached hereto as <u>Exhibit 5</u> indicate that Mr. Crisanty is due to receive any outstanding bonuses.

**EXHIBIT 4**

*please see page 8 of 9 Production Bonus
I was paid the Bonus from 11/1 - 4/30/07. Still
owed Bonus on production from May 1, 2007.*

## LOAN OFFICER EMPLOYMENT AGREEMENT

**THIS LOAN OFFICER EMPLOYMENT AGREEMENT** ("Agreement") is made and entered into as of *Oct. 30, 2006*, 2006 ("Effective Date"), by and between AMERICAN HOME MORTGAGE CORP., a New York corporation having a place of business at 538 Broadhollow Road, Melville, NY 11747 (the "Company") and Nancy Levine (the "Employee").

1. **Employment.** The Employee agrees to enter into the employment of the Company as a Loan Officer as of the Effective Date, and the Company agrees to employ and compensate the Employee as a Loan Officer in accordance with the terms and conditions set forth in this Agreement. The Employee understands and agrees that during the term of the Employee's employment with the Company: (a) The Employee may assist only the Company in the performance of activities contemplated by this Agreement; and (b) The Employee may not engage, participate or become interested, either directly or indirectly, in any business in competition with the Company, in any capacity.

The Employee's employment with the Company is contingent upon the satisfactory completion of a background and credit investigation as determined solely in the discretion of the Company. It is understood that any investigation found unsatisfactory to the Company, may result in immediate termination of employment.

2. **At Will.** The Employee understands and agrees that the Employee's employment with the Company shall be at all times "at will" employment. The Company reserves the right to terminate the Employee's employment with the Company at any time, with or without cause, and with or without notice. Likewise, the Employee may resign from the Company at any time for any reason. The term of this Agreement shall begin on the Effective Date and shall end on the date it is terminated by either the Company or the Employee.

3. **Duties and Responsibilities.** The Employee understands and acknowledges that, in performing duties on behalf of the Company, the Employee shall work away from the offices of the Company on a regular basis. The Employee's duties and responsibilities shall include, but are not limited to, the following: collecting and analyzing customer financial information; determining which financial products of the Company best meet a customer's needs and financial circumstances; advising customers regarding the advantages and disadvantages of different financial products of the Company; marketing, servicing and promoting the Company's financial products; and such other duties that are assigned to the Employee by management.

4. **Duty of Loyalty.**

The Employee agrees that, during the term of Employee's employment with the Company, Employee shall devote the Employee's full business time, attention, best efforts, skill and ability exclusively to the business of the Company. The Employee agrees to do the Employee's utmost to further the interests of the Company, and agrees not to take any action intended to harm the Company.

The Employee agrees that, during the term of the Employee's employment with the Company, the Employee shall not, directly or indirectly, engage, participate, make any financial investment in, or become employed by or render advisory or other services to or for any person, firm corporation or other business enterprise which is, or is reasonably likely to become engaged, directly or indirectly, in competition with the Company. The Employee expressly agrees that this section is fair and reasonable and that the Employee is being adequately compensated for agreeing to the terms of this section.

Initials _____

5.    **Commission.**    The Company will pay the Employee a commission on each loan produced by the Employee that was originated in accordance with the Company's policies.    Generally, a loan will be considered produced by the Employee if 1) the loan disburses, 2) the loan was based on an application submitted for processing and funding by the Employee and 3) the loan was based on an application that was signed by the Employee. Except as otherwise agreed in writing between the Company and the Employee, the Company is not obligated to pay commission on the same loan to more than one Employee, and disputes regarding entitlement to commission among Employees will be decided by the Company in its sole discretion.

During the term of this Agreement, the amount of commission the Company will pay the Employee will be determined in accordance with the Commission Plan attached hereto as Exhibit 1, which may be amended by the Company in its sole discretion. No commission will be due the Employee for loans that fund more than 30 days after the termination of this Agreement.

The Employee acknowledges that the Employee's compensation will be reported to the Internal Revenue Service on a Form W-2, and the Company will withhold taxes from the Employee's pay as required by law.

The Employee acknowledges that the Employee is not entitled to extra pay for absences from work, including holidays and sick days, or for overtime, but will be entirely compensated pursuant to the commission provisions of this section.

6.    **Compliance with Company Policies.**    The Employee agrees to comply with, and be subject to, all Company policies and procedures, including amendments to such policies and procedures adopted by the Company in its sole discretion either prior to, on, or subsequent to the Effective Date of this Agreement.

7.    **Compliance with Manager and Officer Directives.**  The Employee agrees to comply fully with all lawful instructions, directives, and orders given by the Employee's Branch Manager or by an officer of the Company.

8.    **Compliance with Laws & Regulations.**  The Employee agrees to comply fully with all federal, state and local laws and regulations applicable to mortgage lending activities undertaken by the Company and the Employee. This obligation includes, but is not limited to, the Employee complying with any and all applicable individual licensing requirements imposed by the state(s) in which the Employee originates mortgage loans.

9.    **Prohibition against Inaccurate Applications and False Information.**   The Employee agrees not to submit loan applications to the Company, or to facilitate in any way, the making of loan applications that are inaccurate or misleading.  In addition, the Employee agrees not to create or assist in the creation or submission to the Company of any false information in connection with loan applicants or in connection with real property, including the ownership and value thereof.  The Employee agrees to reimburse the Company for any damages it suffers as a result of the Employee's breach of this section.

10.    **Benefits.** The Employee is eligible to participate in such benefit programs that the Company may from time to time maintain for employees of the Employee's level.  The Company reserves the right to modify, substitute, or eliminate such benefits at any time and in its sole discretion.  Benefits available to the Employee will be based on the Employee's tenure at the Company, position at the Company, state and county of residence and other factors determined by the Company.  The Employee acknowledges that certain of the Company's optional benefits require the Employee to pay for some or all of the cost of those benefits.  The Employee agrees to pay such costs in accordance with the Company's policies.

Initials 

11.    **Charge-backs; Right of Setoff; Employee's Agreement to Pay Amounts Owed to the Company.** The Employee acknowledges that certain of the Company's policies and procedures, as may from time to time be amended by the Company in its sole discretion, including but not limited to those relating to collection of fees, marketing and other expenses, administrative assistant support, interest rate lock-ins, employee benefits, buy-backs, and other charge-backs to the Employee, may result in the Employee becoming indebted to the Company. The Employee hereby grants the Company an unconditional right of setoff against commissions and all other amounts otherwise due the Employee, for such amounts owed by the Employee to the Company. Notwithstanding the foregoing, the Company reserves the right to demand, for immediate payment, all such sums due and owing to the Company from the Employee. Nothing in this section shall constitute a waiver or limitation of the Company's rights to collect sums due and owing from the Employee through any and all legal means available to the Company.

12.    **Confidential and Proprietary Information; Company Property.** For the purpose of this section, Confidential Information shall mean all information and intellectual property owned by and proprietary to the Company, including but not limited to marketing programs such as Homebuyers Marketing and Marketing Portal, loan applications, loan files, loan file documents, accounts, customer or client information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, trade secrets, manuals, business methodology and processes, personal employee information and cost and pricing policies. All Confidential Information disclosed or provided to the Employee by the Company, or developed or created by the Employee during the term of the Employee's employment with the Company, is, shall become, and shall at all times remain, the sole and exclusive property of the Company. The Employee agrees not to disclose Confidential Information to any other party, except to the extent that such disclosure is reasonably necessary for the Employee to perform the Employee's responsibilities as a Loan Officer of the Company. The Employee also agrees not to use Confidential Information for any purpose other than to fulfill the Employee's responsibilities as a Loan Officer of the Company.

The Employee acknowledges, understands, and agrees that Confidential Information is of substantial value to the Company and that, in the event of the use or disclosure of such Confidential Information in breach of this Agreement, the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate. Therefore, without prejudice to the rights and remedies otherwise available to the Company, and in addition to such rights and remedies, the Company shall be entitled to equitable relief by way of injunction if Employee breaches or threatens to breach any of the provisions of this Agreement relating to Employee's use or disclosure of any of Confidential Information.

The Employee further acknowledges that the Company may provide the Employee with access to or use of equipment or other property owned or leased by the Company ("Company Property"). The Employee agrees to abide by all agreements and policies relating to the use of Company Property, as may be in effect or modified from time to time in the sole discretion of the Company. The Employee further agrees promptly to return in good working condition all Company Property in the Employee's possession upon termination of the Employee's employment with the Company for any reason, and shall be liable for damages, including but not limited to replacement cost, for any financial loss to the Company if Company Property is not returned in such manner.

The Employee agrees that this section shall survive the termination of this Agreement, and that all of the Employee's obligations set forth in this section shall remain in full force and effect after this Agreement is terminated. The Employee further agrees that, upon termination of this Agreement, the Employee will return to the Employee's branch manager, or if no branch manager is available, then to a Company officer, all

Initials _____

Confidential Information (including all copies of Confidential Information) which is then in, or which later comes into, the Employee's possession or custody.

13. **Non-Solicitation; Non-Disparagement.**    The Employee agrees that during the term of the Employee's employment with the Company, and for a period of one (1) year after termination of the Employee's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Employee shall not, directly or indirectly: (a) attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers and/or potential customers of the Company which have been derived from leads and/or lists developed and provided to the Employee by the Company; (b) influence or advise any other person to employ or solicit for employment anyone who is an employee of the Company; (c) influence or advise any person who is an employee of the Company to leave the employment of the Company; and (d) employ any person who is an employee of the Company.

The Company and the Employee agree that neither will disparage the other, and that their representatives will not disparage either party hereto.

The Employee expressly agrees that this section is fair and reasonable and that Employee is being adequately compensated for agreeing to the terms of this section. The Employee's obligations as set forth in this section shall survive the termination of this Agreement.

14. **Employee Authority.**  The Employee shall have no authority to bind the Company to the payment of any money or the doing of any action or thing, or incur any debt, obligation, liability, or expense for which the Company is or may become liable without first obtaining the written consent of an appropriate officer of the Company. In the absence of such prior written consent, any debt, obligation, liability or expense incurred by the Employee shall be the sole responsibility of Employee, and the Company shall have no liability for or obligation to Employee regarding such debt, obligation, liability or expense. The Company reserves the right to recover from the Employee all losses to the Company resulting from the Employee exceeding the Employee's authority as limited by this section, through any and all means available by law.

15. **Power of Attorney.**    The Employee hereby irrevocably appoints the Company, or any of its authorized agents, as Employee's attorney-in-fact to act for the Employee and in the Employee's name (in any way the Employee could act in person) with respect to the following powers: (a) to open and review all any and all correspondence, envelopes or packages addressed to the Employee and delivered via the United States Mail or other means to the Company's offices, and to take for itself any currency, checks, drafts, money orders, or other forms of payment enclosed therein to which the Company is or may be entitled; or (b) to deposit any currency and endorse and negotiate any and all checks, drafts, money orders or other forms of payment made payable to the Employee which are the property of the Company.

16. **Insurance.**  The Employee agrees that during the term of the Employee's employment with the Company, the Employee will maintain in effect on any and all motor vehicles used by the Employee in the conduct of the Company's business a minimum of $250,000.00 in combined single-limit bodily injury/property damage liability insurance. The Employee further agrees to defend, indemnify, and hold the Company harmless from and against any and all claims against the Company for injuries or damages caused, or alleged to have been caused, by the Employee while operating any motor vehicle in the course and scope of the Employee's employment with the Company.

17. **Claims or Actions against the Company.**  If any civil or criminal complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance is filed, commenced, asserted, issued to or

Page 4 of 9                        Initials 

made against the Company on account of or as a result of any act or omission by the Employee in violation of (a) any of the Company's policies as amended, instructions, directives, or orders, or (b) any of the laws and regulations of any and all government entities with jurisdiction over mortgage lending activities engaged in by the Employee, the Employee agrees to defend, indemnify, and hold the Company harmless from and against any loss, liability, damages, fines, penalties, costs, or expenses (including reasonable attorneys' fees) incurred by the Company in connection with any such lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance, including any settlement thereof, regardless of whether (a) the Employee is named as a party in any such complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance; (b) the Employee is employed by the Company at the time the loss, liability, damages, cost, or expenses (including reasonable attorneys' fees) is incurred by the Company; or (c) the Company ultimately prevails in, or successfully defends against, the complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance. This section shall survive the termination of this Agreement, and all of the Employee's obligations pursuant to this section shall remain in full force and effect after this Agreement is terminated.

18.    **Acknowledgement.**  The Employee represents and warrants that the Employee is not subject to any agreement, order, judgment, or decree of any kind which would prevent the Employee from entering into this Agreement or performing fully the Employee's obligations hereunder.  The Employee acknowledges that: (a) it is the Company's policy not to seek access to or make use of trade secrets or confidential business information belonging to other persons or organizations, including but not limited to, competitors or former employers; and (b) the Employee should not, under any circumstances, reveal to the Company or any of its affiliates or make use of trade secrets or confidential business information belonging to any other person or organization.  The Employee represents and warrants that the Employee has not violated and shall not violate such instructions.

19.    **Waiver of Jury Trial.**  The Employee waives any right to a trial by jury in any action to enforce or defend any right under this Agreement or any amendment, instrument, document or agreement delivered or to be delivered in connection with this Agreement or arising from any relationship existing in connection with this Agreement, and agrees that any action shall be tried before a court and not before a jury.

20.    **Construction.**  The titles or headings of the sections of this Agreement are intended for convenience of reference only and are not intended to change, limit or otherwise affect the meaning or construction of the terms of this Agreement.  The term "person" shall include an individual, corporation, partnership, association, or other legal entity.  The term "Employer" or "the Company" shall include any affiliate, parent, subsidiary or sister company of the Company.

21.    **Governing Law.**  This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof.

22.    **Entire Agreement.**  This Agreement, together with the Commissions Agreement attached hereto as Exhibit 1, as may be amended or modified from time to time in the Company's sole discretion, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, discussions, negotiations, or understandings, whether oral or written, between the parties relating to the matters addressed herein.

23.    **Severability.**  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law.  If any provision of this Agreement, or any portion of any provision of this Agreement, is found to be unlawful or invalid or otherwise unenforceable, all valid and enforceable provisions of this Agreement shall remain in full force and effect.

Initials 

24. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of, and be enforceable by, the parties hereto and their respective heirs, estates, legal representatives, executors, successors, and assigns.

25. **Attorney Fees.** The Employee agrees to pay the reasonable costs and attorney fees incurred by the Company resulting from the Company's successful enforcement of the terms and provisions of this Agreement.

26. **Waiver.** No waiver, or alleged waiver, by the Company of any term, condition or provision of this Agreement shall be effective for any purpose whatsoever unless such waiver is in writing and signed by a Regional Vice President, Executive Vice President, Division President or the President of the Company. No express waiver by the Company of a breach of this Agreement by the Employee shall operate or be construed as a waiver of any subsequent breach of this Agreement by the Employee.

27. **Notices.** All notices required or permitted under this Agreement shall be sufficient if in writing and mailed through the United States Postal Service to the Employee at such residence address on file with the Company, and to the Company, at 538 Broadhollow Road, Melville, New York 11747, Attn: Senior Vice President, Director of Human Resources.

**IN WITNESS WHEREOF,** the parties have executed this AGREEMENT as of the Effective Date.

American Home Mortgage Corp.

By: _____

General Counsel

_____

The Employee

_____

Social Security Number

Initials 

**American Home Mortgage**
**Commission Plan**

Exhibit 1 to the Loan Officer Employment Agreement between American Home Mortgage Corp. (the "Company") and Nancy Levine (the "Employee") dated as of _____, 2006.  The Company reserves the right, in its sole discretion, to modify, amend, or terminate any of the terms and conditions of this Commission Plan at any time.  All calculations required pursuant to this Commission Plan shall be made in the sole discretion of the Company in accordance with methodologies, policies, and procedures of the Company which may be in effect from time to time.

<u>Base Commission</u>

The Company will pay the Employee commissions for each month of employment based on one of the two schedules below.  The Company will pay the Employee based on the schedule that is more favorable to the Employee for the month being paid:

### Schedule 1

| Aggregate Principal Amount Of Loans Produced By The Employee During A Calendar Month | Percent Of The Cumulative Amount Of Loan Principal For The Month The Company Will Pay Employee |
|---|---|
| $1 - $499,999 | .35% (35 Basis Points) |
| $500,000 - $999,999 | .45% (45 Basis Points) |
| $1,000,000 - $1,499,999 | .50% (50 Basis Points) |
| $1,500,000 - $1,999,999 | .55% (55 Basis Points) |
| $2,000,000 + | .60% (60 Basis Points) |

### Schedule 2

| Number Of Loans Produced By The Employee During A Calendar Month | Percent Of The Cumulative Amount Of Loan Principal For The Month The Company Will Pay Employee |
|---|---|
| 1-3 | .35% (35 Basis Points) |
| 4-7 | .45% (45 Basis Points) |
| 8-11 | .50% (50 Basis Points) |
| 12-15 | .55% (55 Basis Points) |
| 16+ | .60% (60 Basis Points) |

Initials _____

For purposes of Schedule 2, first lien loans, second lien loans, and HELOCS collateralized by the same property shall be credited to the Employee as one loan.

### a) FHA and VA Bonus

For FHA and VA loans produced, the Company will pay the Employee a base commission of 1.2% of the loan principle of the loans instead of the amount set forth in the schedules above.

### b) Home Equity Lines of Credit

The Company will pay the Employee $125.00 or .15% (15 basis points), whichever is greater, for each open-end Home Equity Line of Credit ("HELOC") produced by the Employee. The Company will pay the Employee $250.00 or .30% (30 basis points), whichever is greater, for each closed-end HELOC produced by the Employee.

### c) Early Repayments

If the Employee produces a refinance of a loan secured by a property on which the Company granted a first mortgage loan the Employee will not receive commission on the loan if the refinance occurs within 180 days of the date of the loan that was on the property prior to the refinance.

### d) Overages and Shortages

The company will pay the Employee 50% of the overages charged by the Employee to a borrower on a given loan, and will charge the Employee 50% of a shortage due to a reduction in cost to a borrower allowed by the Employee. All calculations of overages and shortages will be made by the Company using its usual practices as may be amended from time-to-time and the calculations of the Company will be final. All overages charged must be in accordance with the Company's policies and all applicable laws and regulations.

### Welcome Bonus

The Employee shall be eligible for a Welcome Bonus of $25,000.00, which will be paid on the first available pay date following the execution of a Loan Officer Employment Agreement and commencement of employment hereunder. THE EMPLOYEE AGREES THAT IF THE EMPLOYEE'S EMPLOYMENT WITH THE COMPANY TERMINATES FOR ANY REASON WITHIN EIGHTEEN (18) MONTHS FROM THE COMMENCEMENT OF EMPLOYMENT HEREUNDER, THE EMPLOYEE WILL IMMEDIATELY REPAY TO THE COMPANY THE FULL AMOUNT OF THE WELCOME BONUS RECEIVED BY THE EMPLOYEE.

### Production Bonus



The Employee shall be eligible to receive a production bonus (the "Production Bonus") in an amount equal to .1% (10 basis points) of the aggregate internal closed loan production originated by the Employee: (i) during the first six (6) months of employment with the Company; and (ii) during months seven through twelve of employment with the Company. The Production Bonus payments shall be made on the first available pay date following each corresponding bonus period. To be eligible to receive the Production Bonus, the Employee must be employed on the scheduled bonus payment dates. THE EMPLOYEE AGREES THAT IF THE EMPLOYEE'S EMPLOYMENT WITH THE COMPANY TERMINATES FOR ANY REASON WITHIN EIGHTEEN (18) MONTHS FROM THE COMMENCEMENT OF EMPLOYMENT HEREUNDER, THE

Initials _____

EMPLOYEE WILL IMMEDIATELY REPAY TO THE COMPANY THE FULL AMOUNT OF THE PRODUCTION BONUS RECEIVED BY THE EMPLOYEE.

### Non-Payment of Bonuses

The Employee shall not be entitled to any bonus payments hereunder if the Employee is not employed by the Company on the bonus payment date.

_____
Employee

_____10/4/06_____
Date

Agreed and Accepted:

American Home Mortgage Corp.

By: _____

Title:_____

Initials

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
```

In re:                                                    : Chapter 11
                                                          :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                    : Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                        :
                                                          : Jointly Administered
        Debtors.                                          :
                                                          : **Objection Deadline: September 8, 2008 at 4:00 p.m. (ET)**
                                                          : **Hearing Date: September 15, 2008 at 10:00 a.m. (ET)**

```
------------------------------------------------------------ x
```

## NOTICE OF DEBTORS' FIFTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

TO:    (I) THE OFFICE OF THE UNITED STATES TRUSTEE; (II) COUNSEL FOR THE
       COMMITTEE; (III) COUNSEL TO BANK OF AMERICA, N.A., AS ADMINISTRATIVE
       AGENT FOR THE LENDERS UNDER THAT CERTAIN SECOND AMENDED AND
       RESTATED CREDIT AGREEMENT DATED AUGUST 10, 2006; (IV) THE DEBTORS'
       POSTPETITION LENDER; AND (V) THOSE PARTIES WHO HAVE REQUESTED
       NOTICE PURSUANT TO BANKRUPTCY RULE 2002, IN ACCORDANCE WITH DEL.
       BANKR. LR 2002-1(B).

The above-captioned debtors and debtors in possession (the "Debtors") have filed the
**Debtors' Fifteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of
the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1** (the
"Objection"), a copy of which is attached hereto.

Responses to the Objection, if any, must be filed on or before **September 8, 2008 at 4:00
p.m. (ET)** (the "Objection Deadline") with the United States Bankruptcy Court for the District of
Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

At the same time, you must also serve a copy of the response upon the undersigned counsel
to the Debtors so that the response is received on or before the Objection Deadline.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a
Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979);
American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New
York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407);
Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York
corporation (8580). The mailing address for all of the Debtors is 538 Broadhollow Road, Melville, New York
11747.

A HEARING ON THE OBJECTION WILL BE HELD ON **SEPTEMBER 15, 2008 AT 10:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 5TH FLOOR, COURTROOM NO. 6, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: August 15, 2008
      Wilmington, Delaware

                  **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                  James L. Patton, Jr. (No. 2202)
                  Pauline K. Morgan (No. 3650)
                  Edward J. Kosmowski (No. 3849)
                  Kara Hammond Coyle (No. 4410)
                  Nathan D. Grow (No. 5014)
                  The Brandywine Building
                  1000 West Street, 17th Floor
                  Wilmington, Delaware  19801
                  Telephone: (302) 571-6756
                  Facsimile: (302) 571-1253

                  Counsel to the Debtors and Debtors in Possession

*Faxed 9/4/08 5:30 pm*

*Please Deliver To Appropriate party at Firm.*
*Response To Objection*