**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, | ) |  |
|  | ) |  |
| Debtors. | ) | **Hearing Date:  September 15, 2008** |
|  | ) | **10:00 a.m.** |
|  | ) | **Objection Deadline:  September 9, 2008** |
|  | ) | **4:00 p.m.** |

**CITIMORTGAGE, INC.'S OBJECTION
TO APPROVAL OF DISCLOSURE STATEMENT
WITH RESPECT TO THE CHAPTER 11 PLAN OF LIQUIDATION
OF THE DEBTORS DATED AS OF AUGUST 15, 2008 [Docket No. 5451]**

Pursuant to Section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

("Bankruptcy Code"), and Bankruptcy Rule 3017(a), CitiMortgage, Inc. ("CMI") objects to the

proposed disclosure statement American Home Mortgage Corp., American Home Mortgage

Servicing, Inc. and certain affiliates (collectively, "Debtors"), submitted to accompany Debtors'

proposed Chapter 11 Plan of Liquidation dated August 15, 2008 ("Disclosure Statement").

[Docket No. 5451].

As grounds for its objection, CMI states:

## I. BACKGROUND

1.    On August 6, 2007, Debtors commenced these cases by filing voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code ("Cases").  This Court is jointly

administering the Cases as per Bankruptcy Rule 1015 and this Court's August 7, 2007 Order.

[Docket No. 60].

2.    On August 6, 2007, Debtors filed the Sale Motion asking the Court to approve their proposed sale of the servicing rights they retained under servicing-retained loan agreements, including those agreements into which Debtors entered with CMI ("CMI Agreements"). [Docket Nos. 11-12].

3.    On August 9, 2007, this Court entered its "Order Approving (I) Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief" [Docket No. 113], which order established procedures for the sale of Debtors' servicing business.

4.    On October 30, 2007, this Court entered its "Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief" ("Sale Order"). [Docket No. 1711]. Pursuant to the Sale Order, Debtors assumed the CMI Agreements and all of Debtors' rights and responsibilities under those agreements, and assigned the CMI Agreements in their sale of the loan servicing business to AH Mortgage Acquisition Co., Inc. [Sale Order at 4 & Exh. C].

5.    On August 15, 2008, Debtors served their "Notice of Hearing to Consider the Adequacy of Disclosure Statement." [Docket No. 5452]. There, Debtors advised that they had filed the proposed Plan and accompanying Disclosure Statement, and set September 9, 2008 as the deadline for filing objections to the proposed Disclosure Statement.

6.      On August 28, 2008, Debtors served their "Notice of Motion" [Docket No. 5554] in which they sought (among other things) this Court's approval of the proposed Disclosure Statement "as containing adequate information within the meaning of section 1125 of the Bankruptcy Code." There, Debtors set September 8, 2008 as the deadline for any objections to that relief.

7.      Faced with those inconsistent deadlines, CMI's counsel conferred with Debtors' counsel. Debtors' counsel advised that objections would be timely if CMI filed them by the September 9, 2008 Objection Deadline to which the first-served notice refers.

8.      CMI is the holder of four claims against Debtors' Estates, arising from the CMI Agreements Debtors assumed: (a) a claim for approximately $27.6 million arising from prepetition repurchase obligations for which CMI made pre-petition demands; (b) a claim for approximately $9.1 million arising from prepetition repurchase obligations for which CMI did not make prepetition demands; (c) a claim for the refund of approximately $6,600 CMI paid to Debtors post-petition and for which it asserts a setoff claim; and (d) a protective claim for $121,550 in document retrieval fees Debtors proposed to charge CMI post-petition for returning CMI's 18,700 loan files.

9.      Debtors have classified these claims in the proposed Disclosure Statement as Class 5C(1) impaired claims (although CMI did ask that Debtors set aside the refund payment CMI made such that it would be identifiable for CMI's exercise of its right to setoff).

10.      As more fully set forth below, Debtors do not include in the proposed Disclosure Statement basic information that Section 1125 of the Bankruptcy Code requires. Specifically, the Disclosure Statement does not provide adequate information regarding: (a) current cash on hand;

(b) estimated and/or actual payments or distributions to secured creditors and to administrative claimants, as well as estimated distributions to unsecured creditors; (c) an adequate substantive consolidation analysis and discussion of the data on which Debtors relied to calculate their proposed allocations of Assets and liabilities among Debtors; and (d) the value of Debtors' Assets (both liquidated and remaining to be liquidated), or a liquidation analysis. Without that information, neither CMI nor other creditors can make an informed decision about the proposed "Chapter 11 Plan of Liquidation of the Debtors Dated as of August 15, 2008" ("Plan"). [Docket No. 5450].

11.    In summary, the Disclosure Statement fails to provide sufficient financial and other necessary information to allow a hypothetical reasonable investor to evaluate the proposed Plan and determine whether the proposed Plan is in its best interests. Thus, CMI respectfully requests that the Court deny Debtors' request for approval of the Disclosure Statement.

## II. JURISDICTION

12.    The Court has jurisdiction over this objection pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

13.    The statutory predicate for the relief CMI seeks in this objection is Section 1125 of the Bankruptcy Code.

## III. STANDARDS FOR APPROVAL OF DISCLOSURE STATEMENT

14.    Section 1125 of the Bankruptcy Code requires a debtor, before soliciting votes for the confirmation of a proposed plan of reorganization, to file a disclosure statement. 11 U.S.C. § 1125. Before the Bankruptcy Court can approve a disclosure statement, it must find it contains "adequate information" for a creditor to understand and evaluate the debtor's proposed plan of

reorganization, so that creditors can arrive at an informed judgment as to whether to accept or reject the plan.  Id.

15.    The Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical, reasonable investor … to make an informed judgment about the plan …."  11 U.S.C. § 1125(a)(1).  See also In re Monroe Well Serv., Inc., 80 B.R. 324, 330 (Bankr. E.D. Pa. 1987) (listing factors to be considered regarding the adequacy of a disclosure statement).

16.    These disclosure requirements are crucial to the effective functioning of the bankruptcy process.  See, e.g., Ryan Operations G.P. v. Santian-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996).  As the Third Circuit states:

> The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.  Given this reliance, we cannot over emphasize the debtor's obligation to provide sufficient data to satisfy the Code's standard of "adequate information."

Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); see Ryan Operations G.P., 81 F.3d at 362 ("Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated.") (citing Oneida).

17.    The amount and scope of the information required varies, depending on the size and complexity of the debtor's estate and plan of reorganization.  However, courts generally require that the debtor provide the following categories of information in the disclosure statement:

(a)    Description of debtor's assets and their values;

(b)    Amounts and types of claims asserted against the debtor;

(c)    Debtor's Chapter 11 proceeding and litigation related thereto;

(d)    The source of information and accounting methods used;

(e)    Present and future management of the debtor;

(f)    The actual projected realizable value of preference and other avoidable claims;

(g)    Debtor's relationship with its affiliates and insiders;

(h)    Sufficient financial information;

(i)    Liquidation analysis of debtor's assets; and

(j)    Tax attributes of the debtor's plan.

See generally, Hall v. Vance, 887 F.2d 1041, 1043 (10th Cir. 1989); In re Microwave Prods. of Am., Inc., 100 B.R. 376, 378-79 (Bankr. W.D. Tenn. 1989); In re Metrocraft Publ'g Serv., Inc., 39 B.R. 567, 569-71 (Bankr. N.D. Ga. 1984).

## IV.  OBJECTIONS TO DISCLOSURE STATEMENT

18.    The Disclosure Statement does not provide dollar amounts for Debtors' Assets, secured creditors' claims paid or to be paid, or administrative claims (whether paid or accrued). And, in their discussions of how Debtors propose to allocate Assets and liabilities among the various Estates, they provide only a narrative of factors they considered without any discussion of the inputs they used, analyses they conducted or judgments they applied.

## A.    The Disclosure Statement Does Not Contain Adequate Information Regarding Distributions to Unsecured Creditors.

19.    Debtors do not provide estimates of the distribution amounts that the unsecured creditors are to receive.  While the Disclosure Statement forecasts the estimated *percentage* of

recovery for each class of unsecured claims, it does not set forth the estimated value for each

class of unsecured claims.

20.    Debtors do not disclose the recoveries/values of Assets they have liquidated to

date, net of distributions to date, to provide a figure for cash on hand, and Debtors do not provide

any estimates of the values of the remaining Assets on hand (even those Assets that are not

litigation claims).  Thus, they do not disclose the starting point for analyzing potential

distributions.

21.    While listing a large number of classes of creditors holding secured,

administrative or other priority claims, Debtors do not provide amounts paid to date, amounts

sought but not yet paid, and estimated figures for payments needed to proceed through

confirmation.  [Disclosure Statement at 7-9].  This information is particularly important in this

case, where professional fees have been high and a substantial amount of Debtors' Assets have

already been paid out to secured creditors.  Absent this information, CMI and other creditors

cannot evaluate how they are to be treated under the Plan or whether they would be better served

in a Chapter 7 liquidation.

**B.    The Disclosure Statement Does Not Contain Adequate Information Regarding The Settlement of Intercompany Claims and Related Issues of Substantive Consolidation.**

22.    Although the Disclosure Statement states that Debtors conducted a "seventeen-

point assessment of common factors cutting in favor of and against substantive consolidation"

[Disclosure Statement at 48], the Disclosure Statement provides no numerical data or inputs from

which CMI (or any other creditor) can evaluate whether substantive consolidation is appropriate

in this case, or how, if at all, Debtors' substantive consolidation analysis affects CMI's (and other unsecured creditors') claims.

23.    The "detail" Debtors do provide in the substantive consolidation analysis is not supported by any financial data.  Debtors propose a resolution of intercompany claims to address allocating assets (absent substantive consolidation), allocating administrative expenses (both before and after confirmation), and addressing ownership of shared assets (among other reasons). [Disclosure Statement 49-51].  Debtors propose a Stipulated Asset Allocation for each Estate in terms of the percentages Debtors propose, but disclose only broad formulas without setting forth how they came up with these percentages or the Gross Asset value of each Estate.  [Disclosure Statement at 53].  Because Debtors do not provide any of the inputs for these formulas, CMI (and the other creditors) cannot fairly assess the proposed Stipulated Asset Allocation percentages (found at Disclosure Statement at 53-54).  Simply put, Debtors provide no substantive information concerning:

- either the inputs they used or the bases for their assumptions of gross non-litigation Asset values in each Estate as of the Petition Date [Disclosure Statement at 52];

- the adjustments Debtors made to each Estate's Asset value to reflect the settlement of prepetition intercompany payable/receivables (whether booked or imputed) [ Disclosure Statement at 52];

- the amounts of "direct" administrative costs chargeable to each Estate, postpetition payments for settlements of secured claims, and administrative costs allocable among Estates but that Debtors now advise they have charged to each Estate [Disclosure Statement at 52-53];

- the bases for their estimates of each Estate's exposure to filed S/A/P claims – or, as noted above – any disclosure of the total filed and total accrued but unpaid claims in each of the three S/A/P categories [Disclosure Statement at 53]; and

- each Estate's percentage share of Plan Trust Operating Expenses, and the information concerning Debtors' assessment of the various factors they considered (both those Debtors listed and any others) [Disclosure Statement at 53].

As Debtors acknowledge, this detail is necessary for creditors to assess whether the Estates should be substantively consolidated. [Disclosure Statement at 47 (stating that substantive consolidation not warranted "absent a party with standing convincing the Bankruptcy Court that the Estates should be substantively consolidated," which, the Debtors concede, would require "a particularly strong evidentiary showing")]. It is also necessary to determine Assets available to satisfy claims (including allocating litigation Assets that will be the Plan Trust's discretion to pursue). [Disclosure Statement at 54]. Debtors' failure to include this necessary information makes the Disclosure Statement inadequate under Section 1125 of the Bankruptcy Code.

**C.    The Disclosure Statement Provides Inadequate Information Regarding the Pros and Cons of Chapter 11 vs. Chapter 7, and No Information Regarding the Liquidation Analysis.**

24.    Debtors' proposed Disclosure Statement is deficient for the additional reason that it does not provide any meaningful discussion of why Chapter 11 is the more beneficial option and no substantive Liquidation Analysis (which analysis the very last page of the Disclosure Statement says is "to be provided"). [Disclosure Statement at 107-108 & Exh. C]. This information is a critical component to both CMI's and the Court's evaluation of the proposed Plan.

25.    Debtors assert bare conclusions that the proposed Chapter 11 liquidation will be less costly than a Chapter 7 liquidation. Debtors note, however, that they have already reduced the significant majority of their Assets to cash, and that only limited Assets remain to be liquidated. [Disclosure Statement at 109]. Debtors then conclude that, under Chapter 7, there

would be: (a) a waste of Debtors' resources used in liquidating Assets Debtors have already liquidated in Chapter 11; (b) a delay in converting remaining Assets to cash; (c) the possibility of "substantial additional claims against the Estates;" and (d) increased costs and expenses in Chapter 7 trustee's fees and professionals' expenses. [Disclosure Statement at 109].

26.    These conclusory statements do not provide adequate information because, addressing them in the same order: (a) Debtors offer no explanation as to how the Debtors' prior work reducing Assets to cash somehow becomes "wasted" in Chapter 7; (b) Debtors do not explain how a delay in liquidating what they admit is the limited amount of Assets remaining would have any material impact; (c) Debtors provide no discussion/disclosure of what additional claims would arise (over and above fees, which fees CMI discusses in the next point); (d) Debtors offer no disclosure or analysis as to how the Chapter 7 fees and professional expenses would be any greater than the significant costs of the Plan Trust.

27.    If Debtors cannot satisfy the "best interest of creditors" test, then the Plan is one the Court cannot confirm. 11 U.S.C. § 1129(a)(11). In that regard, this central analysis is one for which the Debtors cannot rely merely on formulas or bare assertions of value unsupported by meaningful data and realistic, grounded estimates. Debtors' proposed Disclosure Statement currently does not provide creditors with adequate information regarding values and liquidation estimations and, therefore, the Court should deny Debtors' request on that basis alone.

**D.    CMI's Objections Are Such That It Cannot Provide Suggested Language for Proposed Modifications.**

28.    In the August 15, 2008 "Notice of Hearing to Consider the Adequacy of Disclosure Statement" [Docket No. 5452], Debtors state that objections must include "the proposed modification to the Disclosure Statement, together with suggested language."

29.    Because the missing information CMI has identified above consists of facts that are uniquely within Debtors' knowledge (and/or are facts Debtors are in the best position to compile), these are not objections for which CMI can submit proposed language for modifications that would cure the defects it has noted above.

## V.  CONCLUSION

WHEREFORE, CMI requests that this Court deny approval of the proposed Disclosure Statement, together with such other and further relief as is just and equitable.

Dated:  September 8, 2008

FEATHERSTONE PETRIE DESISTO LLP

Andrew J. Petrie *(admitted pro hac vice)*
600 17th Street, Suite 2400S
Denver, Colorado  80202-5424
Telephone:  (303) 626-7139
Facsimile:  (303) 626-7101
Email:  apetrie@featherstonelaw.com

-and-

Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware  19899-2306
Telephone:  (302) 888-6888
Facsimile:  (302) 571-1750
Email:  bfallon@morrisjames.com

Attorneys for CitiMortage, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of September, 2008, service of the foregoing **CITIMORTGAGE, INC.'S OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT WITH RESPECT TO THE CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS DATED AS OF AUGUST 15, 2008 [Docket No. 5451]** was effected via FedEx, priority overnight service, to:

James Patton
Robert Brady
Young Conaway Stargatt & Taylor
1000 West St., 17th Floor
Wilmington, DE  19801-1053

Mark Indelicato
Mark Power
Hahn & Hessen LLP
488 Madison Ave.
New York, NY  10022-5702

Joseph McMahon
United States Trustee, District of Delaware
844 N. King St., Suite 2207
Lockbox #35
Wilmington, DE  19801-3519

Kevin Nystrom
Kroll Zolfo Cooper LLC
900 Third Ave.
New York, NY  10022-4728

Bonnie Fatell
Blank Rome LLP
1201 N. Market St., Suite 800
Wilmington, DE  19801-1807

_Robin E. Anderson_