# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br><br>(Jointly Administered)<br>**Hearing Date: September 15, 2008 @ 10:00 a.m. (ET)**<br>**Objection Deadline: September 9, 2008 @ 4:00 p.m. (ET)**<br><br>Re: D.I. No. 5451 |

## LEAD PLAINTIFFS' OBJECTION TO DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH RESPECT TO THE CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS DATED AS OF AUGUST 15, 2008

The Lead Plaintiffs (the "Lead Plaintiffs")[1] in a securities fraud class action entitled *In re American Home Mortgage Securities Litigation*, Case No. 07-MD-1898 (TCP) (the "Securities Litigation"), pending in the United States District Court for the Eastern District of New York (the "District Court"), and filed on behalf of all persons or entities (the "Class") who purchased or otherwise acquired common or preferred shares of stock of American Home Mortgage Investment Corp. ("AHM Investment"), one of the Debtors[2] herein, on the open market, during the period from July 19, 2005 to August 6, 2007, inclusive (the "Class Period"), including all persons who purchased or otherwise acquired such shares pursuant or traceable to the registration statements issued in connection with an offering of 9 million shares on August 9, 2005 at $35.50 per share (the "2005 Offering") and an offering of 4 million shares on April 30, 2007 at approximately $24 per share (the "2007 Offering"), hereby submit this objection (the "Objection") to the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with respect to the Chapter 11 Plan Of Liquidation of the Debtors Dated as of August 15, 2008 (the "Disclosure Statement"), and state the following:

---

[1] On March 19, 2008, the District Court appointed the Teachers' Retirement System of Oklahoma and the Oklahoma Police Pension and Retirement System as Lead Plaintiffs.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Disclosure Statement (defined below) or the Chapter 11 Plan of Liquidation of the Debtors Dated as of August 15, 2008 (the "Plan").

## BACKGROUND

1. On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. On August 7, 2007, the Bankruptcy Court authorized the joint administration of the Chapter 11 cases.

2. Prior to the Petition Date, approximately eighteen (18) securities class action complaints were filed in the District Court,[3] each alleging violations by AHM Investment and certain of its current and/or former officers, directors and underwriters and auditor (collectively, the "Non-Debtor Defendants") of certain federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (collectively, the "Securities Laws"). These allegations arise from, *inter alia*, false and misleading statements concerning AHM Investment's financial results and business made during the Class Period.

3. On or about March 19, 2008, the District Court appointed Lead Plaintiffs, consolidated the pending putative class actions into the Securities Litigation and directed Lead Plaintiffs to file an amended consolidated complaint.

4. Lead Plaintiffs and the members of the putative Class are creditors, equity holders and parties-in-interest in these Chapter 11 proceedings by virtue of the fact that Lead Plaintiffs and the putative Class lost millions of dollars as a result of their purchases or acquisitions of AHM Investment securities.

5. On or about June 3, 2008, Lead Plaintiffs filed the Consolidated Amended Class Action Complaint (the "Amended Complaint"). Although AHM Investment was named as a defendant in several of the class action complaints filed prior to the Petition Date, AHM Investment is not named as a defendant in the Amended Complaint pursuant to the dictates of 11 U.S.C. §362(a). The Securities Litigation is continuing against the Non-Debtor Defendants. On August 5, 2008, the District Court approved a stipulation providing that the Non-Debtor

---

[3] The first such complaint, *Elliott Greenberg v. American Home Mortgage Investment Corp., et al.*, was filed on July 31, 2007.

Defendants shall answer or otherwise respond to the Amended Complaint no later than September 12, 2008; Lead Plaintiffs shall exchange briefs in opposition to any motions to dismiss no later than November 14, 2008; and the Non-Debtor Defendants shall exchange any reply briefs by December 5, 2008. Upon completion of the foregoing briefing, all pleadings shall be submitted to the District Court. An initial conference is scheduled for December 15, 2008.

6.      The Securities Litigation and, to some extent, this Chapter 11 proceeding, were the result of an accounting fraud and various misrepresentations by the Debtors, including AHM Investment, and the Non-Debtor Defendants. AHM Investment and the Non-Debtor Defendants artificially inflated the price of the subject securities through false and misleading statements concerning AHM Investment's financial condition and mortgage lending business, creating the false impression that AHM Investment was profitable when, in fact, it was not.

7.      Since the Petition Date, the Debtors have engaged in an orderly liquidation of their assets through a series of court-approved sales.

8.      On August 15, 2008, the Debtors filed the Disclosure Statement (Document No. 5451) and Plan (Document No. 5450).[4] The hearing on the adequacy of the Disclosure Statement is scheduled for September 15, 2008.

## OBJECTION

9.      *To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, Lead Plaintiffs reserve their right to assert such objection, as well as any other objections, to confirmation of the Plan. Furthermore, to the extent Lead Plaintiffs or any member of the putative Securities Class is impacted in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan,*

---

[4] Under the Plan, Lead Plaintiffs and members of the putative class are in Plan Class 2E (Other Subordinated Claims against AHM Investment). Pursuant to the Plan, members of Plan Class 2E receive no distribution, cannot vote on the Plan, and are deemed to reject the Plan. *See* Disclosure Statement ("D.S."), Art. V. B. 13; Plan, Art. 2. A. 2.

*which may be filed after any Disclosure Statement or Plan confirmation objection deadline, Lead Plaintiffs reserve their right to object thereto.*

10. Lead Plaintiffs object to the adequacy of the Disclosure Statement and to the Plan on the following grounds:

(a) the Disclosure Statement does not provide a description of the Securities Litigation;

(b) the Disclosure Statement and Plan provide the Plan Trustee with almost unfettered discretion with respect to the retention, preservation or destruction of the Debtors' files, records and other documents (collectively the "Documents");

(c) the extension of stays or injunctions for a period well beyond the Confirmation Date is inappropriate and prejudicial to Lead Plaintiffs;

(d) the Disclosure Statement fails to disclose whether the Plan intends to deny Lead Plaintiffs the right to proceed with their claims against the Debtors solely to the extent of available insurance coverage, irrespective of any injunctions or distribution under the Plan, and fails to identify specific insurance contracts to be assumed; and

(e) the Plan Injunction and Exculpation provisions are improper and must affirmatively exclude Lead Plaintiffs' claim against the Non-Debtor Defendants and any other non-Debtors.

11. A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999) (the disclosure statement must contain information that is "reasonably practicable [to permit an] informed judgment" by holders of claims or interests to vote on the plan). Courts have ample discretion to determine what

constitutes adequate information. *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995), *appeal dismissed by, in part, affirmed by, in part*, 184 B.R. 648 (S.D. N.Y. 1995), citing, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). Although adequacy is determined on a case-by-case basis under a fact-specific flexible standard, *id.*, a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

12. Lead Plaintiffs believe that in certain material respects, the Disclosure Statement does not contain sufficient information to enable a reasonable person to make an "informed judgment about the Plan." Indeed, the Disclosure Statement and the Plan contain broad and ambiguous provisions and/or omit material facts that (i) may mislead holders of claims or interests or (ii) should be available to holders of claims or interests.

13. In order to bring the Disclosure Statement into compliance with 11 U.S.C. § 1125(a) and to make the Plan confirmable under the Bankruptcy Code, the Disclosure Statement and Plan must be modified. Unless and until the Plan and Disclosure Statement are revised, the Disclosure Statement should not be approved.

### A. The Disclosure Statement Must Provide a Description of the Securities Litigation, Including its Current Status, As Well As the Status of Any Pending Investigations.

14. The Disclosure Statement fails to provide a description of the Securities Litigation and its potential impact, if any, on distributions to creditors. The Disclosure Statement should include a description of the nature of the claims asserted in the Securities Litigation, identify the defendants and their relationship to the Debtors, the current status of the Securities Litigation and

the potential effect on the estate of the claims asserted in the Securities Litigation in terms of any claims that the Plan Trustee may assert based upon the same or similar allegations.

15. The Disclosure Statement should also provide a description of any investigations, including governmental investigations, involving claims against the Debtors or their estates.

### B. The Disclosure Statement and Plan Fail to Disclose Whether and How Documents will be Maintained and Safeguarded.

16. The Plan and Disclosure Statement provide that the Plan Trustee is "expressly authorized" in its sole discretion without obtaining approval of the Plan Oversight Committee or the Bankruptcy Court to "retain, abandon, and/or destroy files, records, and other documents of the Debtors" (previously collectively defined as the "Documents"). D.S., Art. V. F. 3. b.; Plan, Art. 8. F. 5. As a result, the Plan Trustee has unilateral authority to dispose of the Documents. While some restrictions to the destruction of Documents, as set forth in prior Orders of this Court identified in the Plan, may apply, such restrictions may not be sufficient to prohibit the destruction of Documents that may be essential to the prosecution of Lead Plaintiffs' claims in the Securities Litigation.

17. Notwithstanding that these prior Orders, preserving certain Documents and apparently prohibiting their destruction, may provide some safeguards for the preservation of the Documents relevant to the Securities Litigation, not all such Documents may be covered by these Orders. Indeed, the Documents are not even identified. Therefore, the Plan and Disclosure Statement must expressly provide that the Plan Trustee will continue to preserve all Documents for a reasonable period of time after confirmation of the Plan and that the Documents will not be destroyed or otherwise abandoned without affording Lead Plaintiffs and other interested parties an opportunity to review, inspect, analyze and, if necessary, copy the Documents. Until the termination of the discovery stay under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Lead Plaintiffs cannot even determine if the Documents may be obtained from another source.

### C. The Extension of Stays and Injunctions under the Plan is Inappropriate and Prejudicial.

18. Pursuant to the Plan, stays and injunctions provided for in the Chapter 11 cases by Bankruptcy Court orders pursuant to §§105 or 362 of the Bankruptcy Code, the Plan, or otherwise, and extant on the Confirmation Date, remain in effect until the *later* of the entry of the Final Decree or dissolution of the Liquidating Trust. *See* D.S., Art. V. J; Plan, Art. 12. B.

19. However, neither the entry of the Final Decree or dissolution of the Liquidating Trust is a date certain. In fact, the dissolution of the Liquidating Trust may not occur until more than eight (8) years after the Effective Date of the Plan. *See* D.S., Art. V. F. 3. g; Plan, Art. 8. F. 12.

20. Under the Plan, the Liquidating Trustee has the right to pursue the Debtors' Causes of Action. D.S., Art. V. F. 3. b; Plan, Art. 8. F. 5. (c) (i). To the extent these Causes of Action include Designated Causes of Action (Causes of Actions against the Debtors' directors and officers), they may have some of the same factual predicates as the claims of Lead Plaintiffs arising from the allegations in the Securities Litigation. Because of the requested extension of stays and injunctions under the Plan, the Liquidating Trustee can prevent or, at the very least, significantly delay Lead Plaintiffs from ever obtaining access to relevant discovery by virtue of the extended life of the Liquidating Trust, while pursuing competing claims asserted by the Liquidating Trustee.

21. There is no basis for the Liquidating Trust to be able to assert the automatic stay (as a sword, not a shield) for years beyond the Effective Date of any Plan to frustrate Lead Plaintiffs' ability to obtain relevant documents in the Securities Litigation, while having those documents available to pursue its own claims.

22. The Disclosure Statement provides no explanation to justify the lengthy extension of the automatic stay (or other stays or injunctions). Lead Plaintiffs acknowledge that they currently remain bound by the PSLRA discovery stay, but the automatic stay should not be

available to the Liquidating Trust for what might as well be perpetuity to frustrate the claims of Lead Plaintiffs against common defendants to gain a fundamentally unfair litigation advantage.

**D. The Disclosure Statement Fails to Disclose Whether the Plan Intends to Deny Lead Plaintiffs the Right to Proceed with its Claims Against the Debtors Solely to the Extent of Available Insurance Coverage, Irrespective of any Injunctions or Distribution under the Plan, and Fails to Identify Specific Insurance Contracts to be Assumed.**

23. Upon information and belief, the Debtors maintain liability insurance policies (the "D&O Policies") in favor of their directors and officers for claims asserted in the Securities Litigation, as well as for claims against the Debtors directly for violations of federal securities laws. The Disclosure Statement fails to disclose the extent of these D&O Policies and which parties may have a right to access the proceeds thereof. Lead Plaintiffs maintain that the putative Securities Class is entitled to look to the proceeds of such insurance for payment of the Lead Plaintiffs' Claims and may, at least, pursue these Claims against the Debtors to the extent of such available insurance, especially because these Claims are not entitled to any distribution under the Plan. Because Lead Plaintiffs may not have a direct action against the D&O insurance carriers under the D&O Policies, the proceeds of the D&O Policies may only be accessed through the pursuit of the claims asserted in the Securities Litigation. Accordingly, the Plan should not impact the rights of Lead Plaintiffs or the putative Securities Class to pursue their claims against the Debtors to the extent of the proceeds of the D&O Policies.

24. Furthermore, the Plan provides for the liquidation of the Debtors and, as a result, the Debtors are not entitled to a discharge. 11 U.S.C. § 1141(d)(3)(A). Therefore, Lead Plaintiffs have the right to pursue their claims against the Debtors to the extent of available insurance and such right must be preserved. Indeed, the Disclosure Statement offers no explanation for providing Debtors with what amounts to a discharge injunction despite the stated liquidation of these estates. *See* Section E, *infra*, at 9-12.

25. In order to overcome this Disclosure Statement inadequacy, the Plan and Disclosure Statement should provide that:

> Nothing in the Plan, or in any Order confirming the Plan, shall preclude Lead Plaintiffs and the putative Class from pursuing their claims against the Debtors to the extent of available insurance coverage and proceeds. The Claims of Lead Plaintiffs and the putative Class against the Debtors, to the extent of available insurance, are preserved and not discharged by the Plan.

26. The Disclosure Statement provides that the Debtors intend to assume certain insurance policies, to the extent they are executory contracts, to be listed on an exhibit to the Supplemental Plan Documents. D.S., Art. V. I. c. However, the Supplemental Plan Documents will not be available until at least ten (10) days before the Confirmation Hearing. Certainly, this information is relevant to the adequacy of the Disclosure Statement and must be provided at this time or, at the very least, sufficiently before the date on which objections to confirmation are to be filed.

### E. The Plan Provides Improper Release and Injunctions That May Impact Lead Plaintiffs' Claims Against the Non-Debtor Defendants.

27. The Plan Injunction and Exculpation provisions are so broad and ambiguous that one may interpret those provisions to impact, enjoin and/or prohibit Lead Plaintiffs from asserting claims in the Securities Litigation against the Non-Debtor Defendants. To that extent, the Plan Injunction and exculpation provisions are improper.

28. With respect to the Plan Injunction, the Plan

> permanently enjoins holders of pre-petition claims against or Interests in the Debtor . . . from (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of a Protected Party . . . and (v) *any* act, in *any* manner, in *any* place whatsoever, that does not conform to, comply with, or is inconsistent with any provision of this Plan.

Plan, Art. 12. A.; D.S., Art. V. J (emphasis added).

29. Protected Party is defined as any of the Debtors, the Plan Trustee, the Estates, the Plan Trust and the Plan Oversight Committee. Plan, Art. 1. A.

30.  Although the Non-Debtor Defendants do not appear to be included in the definition of a Protected Party, the Plan Injunction (*see* ¶ 28, *supra*) may still apply to Lead Plaintiffs' claims against Non-Debtor Defendants by virtue of clause (i) because the members of the Plan Oversight Committee are not yet known, and clause (v) which includes *any* act in *any* manner and is not limited to acts against a Protected Party.

31.  Additionally, the Plan *releases* an Exculpated Party from:

> any claim, cause of action or liability . . . to *any* Holder of a Claim or Interest, or to *any* party in interest, for *any* act that occurred during the Chapter 11 Cases or in connection with the preparation and filing of the Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of this Plan, the consummation of this Plan, and/or the administration of this Plan and/or property to be distributed under this Plan.

Plan, Art. 12 C; D.S., Art. V J, (emphasis added).

32.  An Exculpated Party is defined as a Protected Party and its officers, directors, employers, members, attorneys, crisis managers, financial advisors and professionals. Plan, Art. 1.A.

33.  The Non-Debtor Defendants appear to be Exculpated Parties and the Lead Plaintiffs' claims asserted in the Securities Litigation are certainly impacted by this provision to the extent it is intended to release any claims based upon pre-petition conduct. Indeed, the language of the Exculpation provision is sufficiently broad that it may encompass claims that accrued pre-petition, especially because it includes acts in connection with the preparation and filing of the Chapter 11 Cases.

34.  As a result of the broad language of the aforesaid Plan provisions, non-debtors, including the Non-Debtor Defendants, who, in the absence of unusual circumstances, are not entitled to the protections of the Bankruptcy Code, may very well benefit from such protections. Therefore, to the extent any of Lead Plaintiffs' claims against the Non-Debtor Defendants may be subject to the Plan Injunction and/or Exculpation provisions, the provisions are improper. *See*

*Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) (holding that a debtor must satisfy its burden of proof and establish through specific factual findings that non-debtor third-party releases are fair and necessary); *In re Combustion Engineering*, 391 F. 3d 190, 236 (3d Cir. 2004) (holding in an asbestos injury case that 11 U.S.C. § 105 may not be used to validate a non-debtor release where to do so trumps another Bankruptcy Code section).

35. Indeed, the Plan provides that certain other claims are carved out from the Plan Injunction and Exculpation provisions:

> [n]o provision of this Plan or the Disclosure Statement shall be deemed to act or release any claims, Causes of Action or liabilities that the Plan Trust or the Estates may have against any Person or entity for any act or failure to act that occurred prior to the Petition Date other than in connection with the preparation and filing of these Chapter 11 Cases.

Plan, Art.12. C; D.S., Art. V. J. While such claims belong to the Plan Trust and the Estates, the carve-out should also be applicable to the claims asserted against non-Debtors in the Securities Litigation.

36. Clearly, for the reasons stated above, Lead Plaintiffs are entitled to the same or substantially similar relief, which may be afforded by the inclusion of the following language in the Disclosure Statement and the Plan:

> Nothing in the Plan or in any order confirming the Plan shall affect, release, enjoin or impact in any way the prosecution of the claims asserted, or to be asserted, against any non-Debtor, including the Non-Debtor Defendants, in the Securities Litigation.

37. Finally, the Plan Injunction is improper if it impacts Lead Plaintiffs' claims against the Debtors to the extent of available insurance. Notwithstanding that this is a liquidating Plan and the Debtors are not entitled to a discharge, the Plan Injunction is essentially a substitute for a discharge to which Debtors are not entitled. The Debtors should not be permitted to

circumvent the requirements of the Bankruptcy Code. The Disclosure Statement provides no explanation or basis to ignore 11 U.S.C. § 1141(d)(3)(A).

## CONCLUSION

38. Based on the foregoing, Lead Plaintiffs respectfully request that an order be entered (i) denying approval of the Disclosure Statement and (ii) granting such other and further relief as the Court deems just and proper.

## STATEMENT THAT NO BRIEF IS NECESSARY

39. As no novel issue of law is raised by the within Objection and the relevant authorities relied upon by Lead Plaintiffs are set forth herein, Lead Plaintiffs respectfully request that the Court waive the requirements of D. Del. LR 7.1.2, incorporated in these proceedings by Local Rule 1001-1(b), of filing a separate brief in support of the Objection. However, if the Court determines otherwise, Lead Plaintiffs respectfully request the opportunity to submit an appropriate brief or memorandum.

Dated: September 9, 2008
Wilmington, Delaware

CROSS & SIMON LLC

By: /s/ CPS
Christopher P. Simon (Bar No. 3967)
913 North Market St., 11th Floor
Wilmington, Delaware 19899-1380
302.777.4200 (Telephone)
302.777.4224 (Facsimile)

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Ira M. Levee, Esq. (IL 9958)
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the Putative Class*

-13-

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Steven B. Singer, Esq.
Avi Josefson, Esq.
Matthew C. Moehlman, Esq.
1285 Avenue of the Americas
New York, New York 10019
212.554.1400 (Telephone)
212.554.1444 (Facsimile)

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
Jeffrey C. Block, Esq.
Kathleen M. Donovan-Maher, Esq.
Autumn W. Smith, Esq.
One Liberty Square
Boston, Massachusetts 02109
617.542.8300 (Telephone)
617.542.1194 (Facsimile)

*Co-Lead Counsel to Lead Plaintiffs and the Putative Class*