# EXHIBIT A

DM3\802241.1
NY1 6734853

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : Case No. 07-11047 (CSS) |
| American Home Mortgage Holdings, Inc., a | : Jointly Administered |
| Delaware Corporation, *et al.*,[1] | : |
| | : Hearing Date: September 15, 2008 at 10:00 a.m. |
| Debtors. | : Objection Deadline: September 8, 2008; September 9, 2008 |
| | : Related to Docket No. 5451 & 5554 |

## OBJECTION OF WELLS FARGO FUNDING, INC. TO (I) DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH RESPECT TO THE CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS DATED AS OF AUGUST 15, 2008 AND (II) DEBTORS' MOTION FOR ORDER ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN AND SEEKING RELATED RELIEF

Wells Fargo Funding, Inc. ("WFF") hereby files this objection (the "Objection") to (i) the *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code With Respect to the Chapter 11 Plan of Liquidation of the Debtors Dated as of August 15, 2008* (the "Disclosure Statement") [Docket No. 5451] and (ii) *Debtors' Motion for Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Packages, (B) Approving Form and Manner of Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures For Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing*

---

[1] The Debtors are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp. (3914); American Home Mortgage Acceptance, Inc. (1979); American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp. (1558); American Home Mortgage Ventures LLC (1407); Homegate Settlement Services, Inc. (7491); and Great Oak Abstract Corp. (8580). The address for Debtors is 538 Broadhollow Road, Melville, New York 11747, except for American Home Mortgage Servicing, Inc., whose address if 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

CH1 4396474v.3

*Objections to Confirmation of the Plan; and (IV) Granting Related Relief* (the "Solicitation Procedures Motion") [Docket No. 5554]. In support of this Objection, WFF respectfully states as follows:[2]

## INTRODUCTION

1. In a rush to comply with their representation on the record at the July 7, 2008 hearing, the Debtors filed the Disclosure Statement and Plan (as defined below) on August 15, 2008. Although the Disclosure Statement is lengthy, it is bereft of basic factual information and financial data to permit creditors such as WFF to understand and evaluate the proposed treatment of their claims under the Plan. This lack of disclosure is particularly troublesome because specific information was clearly available to the Debtors—otherwise the Debtors would not have been able to develop such concepts as "Stipulated Asset Allocation" and "EPD/Breach Claims Protocol." Before the Disclosure Statement can be approved, WFF respectfully urges the Court to require the Debtors to provide creditors with additional information, as more fully set forth below. Moreover, unless additional disclosure is provided, the Court should further deny approval of the Solicitation Procedures Motion, which proposes voting procedures that rely heavily upon certain concepts described in the Disclosure Statement.

## BACKGROUND TO OBJECTION

2. Prior to the Petition Date (as defined below), WFF entered into two loan purchase agreements with American Home Mortgage Corporation ("AHMC"), one of the Debtors in these proceedings, which generally provide for, among other things, the sale of certain qualifying mortgage loans from AHMC to WFF and set forth the essential terms of WFF's business relationship with AHMC. The agreements are: (1) the Master Mortgage Loan

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Disclosure Statement.

2

Purchase and Interim Servicing Agreement, dated January 25, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "MLPSA"), and (2) the Loan Purchase Agreement, dated July 8, 1996 (as subsequently amended, the "Loan Purchase Agreement"). The Loan Purchase Agreement incorporates by reference the Wells Fargo Funding Seller Guide (as amended, restated, supplemented or otherwise modified from time to time, the "Seller Guide"), which sets forth additional terms and conditions governing the sale of Mortgage Loans (as defined below) under the Loan Purchase Agreement.[3] American Home Mortgage Servicing, Inc. ("AHMS") is also a party to the MLPSA. Pursuant to the MLPSA, after WFF purchase certain qualifying fixed adjustable rate residential first lien mortgage loans (the "Mortgage Loans") from AHMC on a servicing released basis, AHMS acted as interim servicer until such time as servicing could be transferred to WFF.

3. On August 6, 2007 (the "Petition Date"), AHMC, AHMS and certain of their affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

4. By order entered on October 30, 2007, the Court established January 11, 2008 as the deadline by which creditors were required to file proofs of claim against the Debtors. WFF timely filed proofs of claims against each of AHMC and AHMS in the total amounts of $53,785,321.46 and $53,722,732.67, respectively.

---

[3] The Loan Purchase Agreement was subsequently amended on November 20, 2003, to permit AHMC to sell certain qualifying mortgage loans to WFF pursuant to WFF's "Zip Fund Program" (the "Zip Fund Amendment"). All references to the "Loan Purchase Agreement" shall be deemed a reference to the Loan Purchase Agreement as well as the Seller Guide, each as amended by the Zip Fund Amendment.

5. On August 15, 2008, the Debtors filed the Disclosure Statement and the Chapter 11 Plan of Liquidation of the Debtors Dated as of August 15, 2008 (the "Plan") [Docket No. 5450]. Subsequently, on August 28, 2008, the Debtors filed the Solicitation Procedures Motion. A hearing to consider the adequacy of the Disclosure Statement and the Solicitation Procedures Motion has been scheduled for September 15, 2008 at 10:00 a.m. (prevailing Eastern time).

## OBJECTION

I. **THE COURT SHOULD NOT APPROVE THE DISCLOSURE STATEMENT BECAUSE IT DOES NOT CONTAIN ADEQUATE INFORMATION.**

A. **Section 1125 of the Bankruptcy Code Requires the Disclosure Statement to Contain Adequate Information.**

6. As a prerequisite to approving a disclosure statement, section 1125(b) of the Bankruptcy Code requires that it contain "adequate information." Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor of the relevant class of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

7. Accordingly, a disclosure statement must contain sufficient information to allow creditors to evaluate independently their proposed treatment under the plan. See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) (debtor has an "express obligation of candid disclosure . . . . The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court."); In re

4

Civitella, 15 B.R. 206, 207 (Bankr. E.D. Pa. 1981) (denying approval where voting parties were unable to "independently evaluate the merits of the proponent's plan" because assertions in the disclosure statement that the plan was superior to a forced sale were not accompanied by supporting factual information). "Courts have emphasized that disclosure statements must contain factual support for any opinions contained therein since opinions alone do not provide the parties voting on the plan with sufficient information upon which to formulate decisions." 7 Collier on Bankruptcy 15th Ed. Rev. P 1125.02 (citing In re Fierman, 21 B.R. 314 (Bankr. E.D. Pa. 1982) and In re East Redley Corp., 16 B.R. 429 (Bankr. E.D. Pa. 1982)).

8. The Court should consider the facts and circumstances of the case in determining whether the Disclosure Statement contains adequate information. See In re Zenith Elec. Corp., 241 B.R. 92, 99-100 (Bankr. D. Del. 1999); C.J. Kirk v. Texaco, Inc., 82 B.R. 678, 682 (S.D.N.Y. 1988); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988). While the determination is to be made on a case by case basis, the Disclosure Statement should include, *inter alia*, items such as financial information and data relevant to the creditors' decision to accept or reject the Plan, and information that is relevant to the risks posed to creditors under the Plan. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 312, 321-22 (3d Cir. 2003) ("Debtor must . . . identify and disclose all 'property of the estate' including all . . . 'legal and equitable interests'"); In re Phoenix Petroleum Co., 278 B.R. 385, 393 n.6 (Bankr. E.D. Pa. 2001); In re Metrocraft Pub. Services, Inc., 39 B.R. 567, 568 (N.D. Ga. 1984).

**B. The Disclosure Statement Fails to Provide "Adequate Information" By Omitting Material Data Concerning the Plan and the Basis for Creditors' Recoveries Under the Plan.**

9. The Disclosure Statement does not provide adequate information to allow WFF and other voting constituencies to make an informed judgment as to whether to accept or reject the Plan. Under the Disclosure Statement, it appears that WFF will likely receive approximately one (1) penny for every dollar of its claims (and after application of the EBD/Breach of Warranty Claim Protocol, such amount arguably may be significantly less). However, the Disclosure Statement provides no rationale, support, basis or calculation or any glimpse into the methodology that would permit WFF to understand the basis for the Debtors' estimated recovery percentages, the so-called "Stipulated Asset Allocation" and the proposed protocol for liquidating "EPD Claims" and "Breach of Warranty Claims," which form the backbone of the proposed Plan. Without disclosure of such information, WFF is unable to determine if the Plan—which as proposed will effectively reduce WFF's $53 million claim to a nominal recovery—is fair and/or reasonable.

10. The following sets forth in summary detail the Disclosure Statement's glaring deficiencies with respect to relevant factual information:

a. <u>Failure to Provide Estimated Number and Dollar Amount of Claims Asserted Against Each Debtor</u>. Although the Disclosure Statement provides an estimated recovery percentage for each class of claims and interests for each Debtor, the Disclosure Statement fails to provide the estimated number and dollar amount of claims within each class. Clearly, this information had to be available to the Debtors in order for them to calculate the recovery percentages—in fact, the estimated amount of claims would necessarily have been used

6

as the numerator in those calculations. The Disclosure Statement should not be approved until this basic information has been provided to the creditors in these cases.

        b.    <u>Failure to Provide Estimated Value of Assets Belonging to Each Debtor.</u>[4]
The Disclosure Statement also fails to provide the estimated value of assets of each Debtor. As with subpart (a) above, this information must have been available to the Debtors so that the Debtors could calculate the estimated recovery percentages—this information would necessarily have been used as the denominator in those calculations. The failure to provide the estimated asset values raises potentially significant issues because the projected recoveries for unsecured creditors holding claims against American Home Mortgage Holdings, Inc., which are structurally subordinated to the claims of WFF, are expected to be five (5) times greater than the recoveries for unsecured creditors of AHMC.

        c.    <u>Failure to Provide Data Underlying Stipulated Asset Allocations</u>. Rather than providing that claims against each respective Debtor will be satisfied from the assets of each respective Debtor, the Plan proposes an artificial allocation of assets among the various Debtor entities. This artificial asset allocation forms the backdrop for the recoveries of unsecured creditors in these chapter 11 cases. Although the Debtors were able to formulate the proposed allocation down to one one-thousandth percentile, the Debtors provide no financial data establishing the basis of those allocations. Rather than providing a factual basis for the distributive scheme, the Debtors employ a partnership hypothetical that is wholly irrelevant to a determination of whether the Stipulated Asset Allocation is fair and reasonable. Before the Court approves a disclosure statement in these proceedings, the Debtors should be required to provide the data that supports any proposed asset allocation as among the Debtor entities.

---

[4] As of the time of this filing, the Debtors have not even filed a liquidation analysis.

7

d.      Failure to Provide or Identify Data Underlying EPD and Breach of Warranty Claims Protocol. For creditors asserting claims relating to repurchase rights arising from early payment defaults (EPD Claims) and breach of the Debtors' representations and warranties (Breach of Warranties Claims), the Debtors propose two matrices by which such categories of claims are to be estimated. The Disclosure Statement fails to provide a number of different types of information concerning this claims estimation protocol. First, the Disclosure Statement does not disclose if the protocol applies to liquidated claims, rendering the use of an estimation process unnecessary. Second, the Disclosure Statement does not disclose how this protocol applies to hybrid claims (*e.g.*, claims where a creditor incurred actual, liquidated damages in correcting a deficiency in certain of the Debtors' representations and where the creditor may sustain additional damages that have not yet been liquidated). Third, the Disclosure Statement fails to provide any factual back-up that forms the basis for the estimation protocol.

11.     As summarized above, the Disclosure Statement fails to provide basic and highly material information for WFF to be able to evaluate the treatment of its claims in these cases. Until such information is provided, approval of the Disclosure Statement should be denied.

## II.    THE SOLICITATION PROCEDURES ARE PROCEDURALLY IMPROPER.

12.     The Solicitation Procedures Motion proposes certain procedures for estimating EPD and Breach of Warranty Claims for voting purposes that are procedurally improper and violate basic tenets of the Bankruptcy Code. With respect to those creditors who have asserted EPD and Breach of Warranty Claims, rather than objecting to such claims, the Debtors propose that they will determine, in their sole discretion, the value of such creditors' claims for voting purposes, which will be based upon the creditors' completion of a

questionnaire. As set forth above, WFF has asserted proofs of claim against AHMC and AHMS in excess of $53 million. Both proofs of claim included an expansive narrative and detailed exhibits explaining the claims.

13. A proof of claim constitutes *prima facie* evidence of the validity and amount of the asserted claim and is deemed allowed unless a party in interest objects to it. See Bankruptcy Code §502(a); Fed. R. Bankr. P. 3001(f); In re Planet Hollywood Int'l, 274 B.R. 391, 394 (Bankr. D. Del. 2001) (citing In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992)). Rather than rebutting the presumption of *prima facie* validity by objecting to the EPD and Breach of Warranty Claims (or permitting the claimants to vote their claims as filed), the Debtors propose that claimants participate in a procedure so that the Debtors can reduce such creditors' claims for voting purposes. Bankruptcy Code section 502 does not recognize a "voting objection" as opposed to an objection to allowance. Absent an objection to allowance (with evidence sufficient to rebut the proofs of claim's *prima facie* validity) there is no basis for invoking a Bankruptcy Rule 3018 estimation. Not only is this relief sought by the Debtors not supported by the Bankruptcy Code, but it is inequitable when juxtaposed with the estimated recovery percentages in these cases and the considerable time and effort already expended on preparing proofs of claim. In no event should the invocation of any estimation procedures result in a lesser burden to the Debtors rebutting the *prima facie* validity of the proofs of claim (including the amounts thereof).[5]

---

[5] The estimation procedures are particularly puzzling given the treatment afforded to classes 4C(1) and 5C(1), the classes in which WFF's claims are placed. Based upon the projected recoveries, common sense would dictate that these classes, voting their economic interest as class 4C(1) and 5C(1) claimholders, respectively, would overwhelmingly vote against the Plan. Under such circumstances, what do the Debtors gain by effectively seeking to disenfranchise creditors in those classes?

9

14.  Finally, the very estimation protocol that the Debtors propose to use for voting purposes is the same estimation protocol that the Debtors propose to use for claims allowance purposes under the Plan. As noted in Part I above, the Debtors' disclosure concerning the estimation protocol falls woefully short of satisfying section 1125's "adequate information" requirement. Even if the Court is inclined to permit the use of the estimation protocol for voting purposes, before the Debtors disenfranchise creditors holding millions of dollars of claims, such creditors and the Court should be provided with the basic data underlying such procedure.

## RESERVATION OF RIGHTS

15.  WFF reserves its rights to amend, modify or supplement this Objection in response to, or as a result of, the filing of any amendment or supplement to the solicitation procedures, Disclosure Statement or the Plan, any discovery conducted in connection with confirmation of the Plan, and/or any submission in connection with the solicitation procedures, Disclosure Statement or Plan in these chapter 11 cases filed by any party-in-interest. In addition, WFF reserves the right to file any and all objections to the confirmation of the Plan and/or any amended plan or supplement thereto. WFF also reserves the right to adopt any other objections to approval of the Solicitation Procedures Motion or the Disclosure Statement filed by any party.

WHEREFORE, Wells Fargo Funding respectfully requests that the Court enter an order (1) denying the approval of the Disclosure Statement, (2) denying the relief requested in the Solicitation Procedures Motion, and (3) granting such other and further relief as the Court may find just and warranted.

Dated: September 8, 2008

Karen C. Bifferato (No. 3279)
Marc J. Phillips (No. 4445)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-0380

-and-

Paul S. Caruso
Jessica C.K. Boelter
D'Lisia Bergeron
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Attorneys for Wells Fargo Funding, Inc.

#633628v1