Jul 16 2007 1:10PM        "A"        0000000         p.1

## ACCOUNT EXECUTIVE EMPLOYMENT AGREEMENT

This ACCOUNT EXECUTIVE EMPLOYMENT AGREEMENT ("Agreement") is made and entered into as of July 23, 2007 ("Effective Date"), by and between American Brokers Conduit, a division of American Home Mortgage Corp., a New York corporation having a place of business at 538 Broadhollow Road, Melville, NY 11747 (the "Company") and Tammy L. Pedersen (the "Employee").

1.  **Employment.** The Employee agrees to enter into the employment of the Company as an Account Executive as of the Effective Date, and the Company agrees to employ and compensate the Employee as an Account Executive in accordance with the terms and conditions set forth in this Agreement. The Employee understands and agrees that during the term of the Employee's employment with the Company: (a) The Employee may assist only the Company in the performance of activities contemplated by this Agreement; and (b) The Employee may not engage, participate or become interested, either directly or indirectly, in any business in competition with the Company, in any capacity.

The Employee's employment with the Company is contingent upon the satisfactory completion of a background and credit investigation as determined solely in the discretion of the Company. It is understood that any investigation found unsatisfactory to the Company, may result in immediate termination of employment.

2.  **At Will.** The Employee understands and agrees that the Employee's employment with the Company shall be at all times "at will" employment. The Company reserves the right to terminate the Employee's employment with the Company at any time, with or without cause, and with or without notice. Likewise, the Employee may resign from the Company at any time for any reason. The term of this Agreement shall begin on the Effective Date and shall end on the date it is terminated by either the Company or the Employee.

3.  **Duties and Responsibilities.** During the term of the Employee's employment, the Employee shall use the Employee's best efforts to solicit, on behalf of the Company, within any assigned territory from approved mortgage brokers, for residential mortgage loans to be made by the Company, and such other loans as may be offered by the Company and covered by this Agreement.

Loans solicited by the Employee from approved brokers shall be in accordance with the terms, conditions, policies, procedures and directives established by the Company and in accordance with the Company's prevailing rates and fees. The Company reserves the right, in its sole and absolute discretion and without prior notice to the Employee, to change any of its loans' terms, conditions, policies, procedures, directives, rates and fees and to discontinue offering any one or more types of loans, either generally or within a specific locale. In performing the Employee's services, the Employee shall report to the Branch Manager and/or Regional Manager in the Employee's assigned territory or such other officer as shall be assigned by the Company.

The Employee shall perform services for the Company as an Account Executive, and shall have such duties as are customary for an Account Executive in the wholesale lending area of the mortgage banking business, though the precise manner in which those duties are to be performed and their extent and the precise title will rest within the sole discretion of the Company.

As an Account Executive, the Employee will be employed as an outside salesperson. The Employee will be customarily and regularly engaged in sales activities away from the Company's place of business. In this respect, the Employee's primary duty is to perform sales activities, at least a majority of the Employee's workweek will be spent performing such sales activities in the field., and the remaining

Initials _____

time in the Employee's workweek will be spent performing, among other things, administrative duties associated with the Employee's outside sales functions.

4. **Duty of Loyalty.** The Employee agrees that during the term of the Employee's employment with the Company, the Employee shall devote the Employee's full business time, attention, best efforts, skill and ability exclusively to the business of the Company. The Employee agrees to do the Employee's utmost to further the interests of the Company, and agrees not to take any action intended to harm the Company.

5. **Commission.** The Company will pay the Employee a commission on each loan produced by the Employee that was originated in accordance with the Company's policies. Generally, a loan will be considered produced by the Employee if 1) the loan disburses, and 2) the loan was based on an application submitted for processing and funding by an approved broker tied to the Employee.

During the term of this Agreement, the amount of commissions the Company will pay the Employee will be determined in accordance with the Commission Plan attached hereto as Exhibit A, which may be modified, amended, or terminated by the Company in its sole discretion. No commission will be due the Employee for loans that fund more than fifteen (15) days after the termination of this Agreement.

The Employee acknowledges that the Employee's compensation will be reported to the Internal Revenue Service on a Form W-2, and the Company will withhold taxes from the Employee's pay as required by law.

The Employee acknowledges that the Employee is not entitled to extra pay for absences from work, including holidays and sick days, or for overtime, but will be entirely compensated pursuant to the commission provisions of this section.

6. **Compliance with Company Policies.** The Employee agrees to comply fully with, and be subject to, all of the Company's policies and procedures, including amendments to such policies and procedures adopted by the Company in its sole discretion either prior to, on, or subsequent to the Effective Date of this Agreement.

7. **Compliance with Manager and Officer Directives.** The Employee agrees to comply fully with all lawful instructions, directives, and orders given by the Employee's Branch Manager or by an officer of the Company.

8. **Compliance with Laws & Regulations.** The Employee agrees to comply fully with all federal, state, and local laws and regulations applicable to mortgage lending activities undertaken by the Employee on the Company's behalf.

9. **Prohibition against Facilitating Inaccurate Applications and False Information.** The Employee agrees not to knowingly facilitate in any way, the making of loan applications that are inaccurate or misleading. In addition, the Employee agrees not to knowingly assist in the submission to the Company of any false information in connection with loan applicants or in connection with real property, including the ownership and value thereof. The Employee agrees to reimburse the Company for any damages it suffers as a result of the Employee's breach of this section. This section shall survive the termination of this Agreement, and all of the Employee's obligations pursuant to this section shall remain in full force and effect after this Agreement is terminated.

Initials _____

10. **Benefits**. The Employee is eligible to participate in such benefit programs that the Company may maintain for employees of the Employee's level. The Company reserves the right to modify, substitute, or eliminate such benefits at any time and in its sole discretion. Benefits available to the Employee will be based on the Employee's tenure at the Company, position at the Company, state and county of residence and other factors determined by the Company. The Employee acknowledges that certain of the Company's optional benefits require the Employee to pay for some or all of the cost of those benefits. The Employee agrees to pay such costs in accordance with the Company's policies.

For each month of employment with the Company, the Employee shall be eligible for the reimbursement of expenses in accordance with Exhibit B, attached hereto.

11. **Confidential and Proprietary Information; Company Property** For the purpose of this section, Confidential Information shall mean all information and intellectual property owned by and proprietary to the Company, including but not limited to marketing programs such as Homebuyers Marketing and Marketing Portal, loan applications, loan files, loan file documents, accounts, customer or client information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, trade secrets, manuals, business methodology and processes, personal employee information and cost and pricing policies. All Confidential Information disclosed or provided to the Employee by the Company, or developed or created by the Employee during the term of the Employee's employment with the Company, or developed or created by the Employee during the term of the Employee's employment with the Company, is, shall become, and shall at all times remain, the sole and exclusive property of the Company. The Employee agrees not to disclose the Confidential Information to any other party, except to the extent that such disclosure is reasonably necessary in order for the Employee to perform the Employee's responsibilities as an Account Executive of the Company. The Employee also agrees not to use the Confidential Information for any purpose other than to fulfill the Employee's responsibilities as an Account Executive of the Company.

The Employee acknowledges, understands, and agrees that the Confidential Information is of substantial value to the Company and that, in the event of the use or disclosure of such Confidential Information in breach of this Agreement, the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate. Therefore, without prejudice to the rights and remedies otherwise available to the Company, and in addition to such rights and remedies, the Company shall be entitled to equitable relief by way of injunction if the Employee breaches or threatens to breach any of the provisions of this Agreement relating to the Employee's use or disclosure of any of the Confidential Information.

The Employee further acknowledges that the Company may provide the Employee with access to or use of equipment or other property owned or leased by the Company ("Company Property"). The Employee agrees to abide by all agreements and policies relating to the use of Company Property, as may be in effect or modified from time to time at the sole discretion of the Company. The Employee further agrees to promptly return in good working condition all Company Property in the Employee's possession upon termination of the Employee's employment with the Company for any reason, and shall be liable for damages, including but not limited to replacement cost, for any financial loss to the Company if Company Property is not returned in such manner.

The Employee agrees that this section shall survive the termination of this Agreement, and that all of the obligations of the Employee set forth in this section shall remain in full force and effect after this Agreement is terminated. The Employee further agrees that, upon termination of this Agreement, the Employee will return to the Employee's branch manager, or if no branch manager is available, then to a

Initials _____

Company officer, all Confidential Information (including all copies of Confidential Information) which is then in, or which later comes into, the Employee's possession or custody.

12. **Non-Solicitation; Non-Disparagement.** The Employee agrees that during the term of the Employee's employment with the Company, and for a period of one (1) year after termination of the Employee's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Employee shall not, directly or indirectly: (a) influence or advise any other person to employ or solicit for employment anyone who is an employee of the Company; (b) influence or advise any person who is an employee of the Company to leave the employment of the Company, and (c) employ any person who is an employee of the Company. The Employee agrees that during the term of Employee's employment with the Company, the Employee shall not, directly or indirectly, attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining. The Employee expressly agrees that this section is fair and reasonable and that Employee is being adequately compensated for agreeing to the terms of this section. The Employee's obligations as set forth in this section shall survive the termination of this Agreement.

The Company and the Employee agree that neither will disparage the other, and that their representatives will not disparage either party hereto.

13. **Non-Compete.** The Employee agrees that, during the term of the Employee's employment with the Company, the Employee shall not, directly or indirectly, engage, participate, make any financial investment in, or become employed by or render advisory or other services to or for any person, firm corporation or other business enterprise which is, or is reasonably likely to become engaged, directly or indirectly, in competition with the Company in any county in which the Company is doing business. The Employee expressly agrees that this section is fair and reasonable and that the Employee is being adequately compensated for agreeing to the terms of this section.

14. **Employee Authority.** The Employee shall have no authority to bind the Company to the payment of any money or the doing of any action or thing, or incur any debt, obligation, liability, or expense for which the Company is or may become liable without first obtaining the written consent of an appropriate officer of the Company. In the absence of such prior written consent, any debt, obligation, liability or expense incurred by the Employee shall be the sole responsibility of Employee, and the Company shall have no liability for or obligation to Employee regarding such debt, obligation, liability or expense. The Company reserves the right to recover from the Employee all losses to the Company resulting from the Employee exceeding the Employee's authority as limited by this section, through any and all means available by law. The rights of the Company as set forth in this section shall survive the termination of this Agreement.

15. **Power of Attorney.** The Employee hereby irrevocably appoints the Company, or any of its authorized agents, as Employee's attorney-in-fact to act for the Employee and in the Employee's name (in any way the Employee could act in person) with respect to the following powers: (a) to open and review any and all correspondence, envelopes or packages addressed to the Employee and delivered via the United States Mail or other means to the Company's offices, and to take for itself any currency, checks, drafts, money orders, or other forms of payment enclosed therein to which the Company is or may be entitled; or (b) to deposit any currency and endorse and negotiate any and all checks, drafts, money orders or other forms of payment made payable to the Employee which are the property of the Company.

16. **Insurance.** The Employee agrees that during the term of the Employee's employment with the Company, the Employee will maintain in effect on any and all motor vehicles used by the Employee in the conduct of the Company's business a minimum of $250,000.00 in combined single-limit

Initials ____

bodily injury/property damage liability insurance. Employee further agrees to defend, indemnify and hold the Company harmless from and against any and all claims against the Company for injuries or damages caused, or alleged to have been caused, by the Employee while operating any motor vehicle in the course and scope of the Employee's employment with the Company.

17. **Claims or Actions against the Company.** If any civil or criminal complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge, or grievance is filed, commenced, asserted, issued to or made against the Company on account of or as a result of any act or omission by the Employee in violation of (a) any of the Company's policies as amended, instructions, directives, or orders, or (b) any of the laws and regulations of any and all government entities with jurisdiction over mortgage lending activities engaged in by the Employee, the Employee agrees to defend, indemnify, and hold the Company harmless from and against any loss, liability, damages, fines, penalties, costs or expenses (including reasonable attorneys' fees) incurred by the Company in connection with any such lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance, including any settlement thereof, regardless of whether (a) the Employee is named as a party in any such complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance; (b) the Employee is employed by the Company at the time the loss, liability, damages, cost, or expenses (including reasonable attorneys' fees) is incurred by the Company; or (c) the Company ultimately prevails in, or successfully defends against, the complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance. This section shall survive the termination of this Agreement, and all of the Employee's obligations pursuant to this section shall remain in full force and effect after this Agreement is terminated.

18. **Acknowledgement.** The Employee represents and warrants that the Employee is not subject to any agreement, order, judgment, or decree of any kind which would prevent the Employee from entering into this Agreement or performing fully the Employee's obligations hereunder. The Employee acknowledges that: (a) it is the Company's policy not to seek access to or make use of trade secrets or confidential business information belonging to other persons or organizations, including but not limited to, competitors or former employers; and (b) the Employee should not, under any circumstances, reveal to the Company or any of its affiliates or make use of trade secrets or confidential business information belonging to any other person or organization. The Employee represents and warrants that the Employee has not violated and shall not violate such instructions.

19. **Waiver of Jury Trial.** The Employee waives any right to a trial by jury in any action to enforce or defend any right under this Agreement or any amendment, instrument, document or agreement delivered or to be delivered in connection with this Agreement or arising from any relationship existing in connection with this Agreement, and agrees that any action shall be tried before a court and not before a jury.

20. **Construction.** The titles or headings of the sections of this Agreement are intended for convenience of reference only and are not intended to change, limit or otherwise affect the meaning or construction of the terms of this Agreement. The term "person" shall include an individual, corporation, partnership, association, or other legal entity. The term "Employer" or "the Company" shall include any affiliate, parent, subsidiary or sister company of the Company.

21. **Governing Law.** This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof.

22. **Entire Agreement.** This Agreement, together with the Commission Plan attached hereto as Exhibit A and the Expense Reimbursement Schedule attached hereto as Exhibit B, as may be amended

Initials _____

Jul 16 2007 1:11PM                                    0000000                      p.6

or modified from time to time in the Company's sole discretion, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, discussions, negotiations, or understandings, whether oral or written, between the parties relating to the matters addressed herein.

23. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement, or any portion of any provision of this Agreement, is found to be unlawful or invalid or otherwise unenforceable, all valid and enforceable provisions of this Agreement shall remain in full force and effect.

24. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of, and be enforceable by, the parties hereto and their respective heirs, estates, legal representatives, executors, successors, and assigns.

25. **Attorney Fees.** The Employee agrees to pay the reasonable costs and attorney fees incurred by the Company resulting from the Company's successful enforcement of the terms and provisions of this Agreement.

26. **Facsimile Signatures.** A facsimile copy of either party's signature shall be deemed as legally binding as the original signature.

27. **Waiver.** No waiver, or alleged waiver, by the Company of any term, condition or provision of this Agreement shall be effective for any purpose whatsoever unless such waiver is in writing and signed by a Regional Vice President, Executive Vice President, Division President or the President of the Company. No express waiver by the Company of a breach of this Agreement by the Employee shall operate or be construed as a waiver of any subsequent breach of this Agreement by the Employee.

28. **Notices.** All notices required or permitted under this Agreement shall be sufficient if in writing and mailed through the United States Postal Service to the Employee at such residence address on file with the Company, and to the Company, at 538 Broadhollow Road, Melville, New York 11747, Attn: Senior Vice President, Director of Human Resources.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

American Brokers Conduit
a division of American Home Mortgage Corp.

By: _____
General Counsel

_____
Tammy L. Pedersen

_____
Social Security Number

Initials _____

**American Home Mortgage**
**(American Brokers Conduit)**
**Commission Plan**

Exhibit A to the Account Executive Employment Agreement between American Brokers Conduit (the "Company") and Tammy L. Pedersen (the "Employee") dated as of July 23, 2007. The Company reserves the right, in its sole discretion, to modify, amend, or terminate any of the terms and conditions of this Commission Plan at any time. All calculations required pursuant to this Commission Plan shall be made in the sole discretion of the Company in accordance with methodologies, policies, and procedures of the Company which may be in effect from time to time.

### Base Commission

The Company will pay the Employee .05% (5 basis points) for each month of employment for all mini-correspondent loans originated by the Employee which have been dispersed during a given month of employment with the Company.

The Company will pay the Employee .08% (8 basis points) for each month of employment for all conforming fixed loans originated by the Employee which have been dispersed during a given month of employment with the Company.

The Company will pay the Employee .12% (12 basis points) for each month of employment for all other loans, excluding Choice products, originated by the Employee which have been dispersed during a given month of employment with the Company.

The Company will pay the Employee .15% (15 basis points) for each month of employment for all Choice products, originated by the Employee which have been dispersed during a given month of employment with the Company.

### Minimum Compensation

The Employee shall be eligible to receive payments of minimum compensation of $8,000.00 per month for each of the Employee's first three (3) months of employment with the Company to be applied against the amounts otherwise due the Employee pursuant to the Base Commission sections above ("Minimum Compensation"). The Employee must be employed by the Company on the payment date to receive Minimum Compensation. If the Employee earns more than the Minimum Compensation in a given month, the Company will pay the Employee the Minimum Compensation plus such excess.

### Production Bonus

Commencing the Employee's fourth month of employment, the Employee shall be eligible to receive a quarterly production bonus of up to .01% (1 basis point) of the aggregate closed loan production originated by the Employee in a calendar quarter (the "Production Bonus"). The Production Bonus shall be calculated in accordance with the following formula:

Production Bonus = Unit Goal Amount + Pull-Through Amount + Broker Activity Amount

(a) For purposes of this section, the "Unit Goal Amount" shall equal: (i) .005% (.5 basis points) of the aggregate closed loan production originated by the Employee in a given calendar quarter if, within the relevant calendar quarter, the Employee originates at least the Minimum Unit Goal; or (ii) $0.00 if,

Initials: _[signature]_

within the relevant calendar quarter, the Employee does not achieve the Minimum Unit Goal. The "Minimum Unit Goal" for a given calendar quarter shall be the greater of: (i) 120 closed loans; or (ii) an amount of closed loans equaling the number of approved broker relationships managed by the Employee (each a "Broker Account") as of the first day of the calendar quarter, as determined by the Company multiplied by 3.

(b) For purposes of this section, the "Pull-Through Amount" shall equal: (i) .0025% (.25 basis points) of the aggregate closed loan production originated by the Employee in a given calendar quarter if, within the relevant calendar quarter, the Employee achieves the Pull-Through Target; or (ii) $0.00 if, within the relevant calendar quarter, the Employee does not either achieve the Pull-Through Target or originate at least the Minimum Unit Goal. The "Pull-Through Target" shall be at least a 75% pull-through rate, but the actual targeted percentage may be changed from time to time in the Company's sole discretion. The pull-through percentage shall be determined by dividing: (i) the total number of applications taken by the Employee in the immediately preceding calendar quarter (the "Applications") and that resulted in closed loans by the conclusion of the current calendar quarter (the respect to which the Employee's eligibility to receive a Production Bonus is being considered); by (ii) the number of the Applications, as determined by the Company.

(c) For purposes of this section, the "Broker Activity Amount" shall equal: (i) .0025% (.25 basis points) of the aggregate closed loan production originated by the Employee in a given calendar quarter if, within the relevant calendar quarter, the Employee achieves the Broker Activity Target; or (ii) $0.00 if, within the relevant calendar quarter, the Employee does not either achieve the Broker Activity Target or originate at least the Minimum Unit Goal. The "Broker Activity Target" shall be measured as a percentage of the Accounts, as such term is defined above, that have generated at least three (3) closed loans in the calendar quarter. The Broker Activity Target shall be at least 75%, but the actual percentage may be changed from time to time in the Company's sole discretion.

All calculations required pursuant to this Production Bonus section shall be made in the sole discretion of the Company in accordance with methodologies, policies, and procedures of the Company which may be in effect from time to time. The Production Bonus for a given calendar quarter shall be payable to the Employee on the second available pay date in the following calendar quarter. To earn and be eligible to receive a Production Bonus, the Employee must: (i) originate at least the Minimum Unit Goal; and (ii) be employed by the Company on the scheduled bonus payment date.

### Non-Payment of Bonuses

The Employee shall not be entitled to any bonus payments hereunder if the Employee is not employed by the Company on the bonus payment date.

[Signature Page to Follow]

Initials _____

_[signature]_          7/16/07
Tammy L. Pedersen          Date

Agreed and Accepted:

American Brokers Conduit,
a division of American Home Mortgage Corp.

By: _[signature]_

Title: __EVP & Secretary__

Initials _[initials]_

Page 9 of 10

**American Home Mortgage**
**(American Brokers Conduit)**
**Expense Reimbursement Schedule**

Exhibit B to the Account Executive Employment Agreement between American Brokers Conduit (the "Company") and Tammy L. Pedersen (the "Employee") dated as of July 23, 2007. The Company reserves the right, in its sole discretion, to modify, amend, or terminate any of the terms and conditions of this Exhibit B at any time. All calculations required pursuant to this Exhibit B shall be made in the sole discretion of the Company in accordance with methodologies, policies and procedures of the Company which may be in effect from time to time.

The Company will reimburse the Employee monthly sales expenses, with proper documentation, pursuant to the following limitations:

- Car Allowance:          $300.00 per month
- Phone Allowance:        $400.00 per month

The Employee is eligible to receive reimbursement for all other expenses, within reasonable limits as determined by management, including but not limited to, hotels, airline flights, entertainment, regional meetings, trade shows, or additional business functions, however all such expenses must be approved in advance by the Employee's manager.

All expenses need to be documented and submitted to management for approval.

_____          7/10/07
Tammy L. Pedersen                    Date

Agreed and Accepted:

American Brokers Conduit,
a division of American Home Mortgage Corp.

By: _____

Title: _____EVP & Secretary_____