UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
In the Matter of:          :    Case No, 07-11047
                           :
AMERICAN HOME MORTGAGE     :    Wilmington, Delaware
HOLDINGS, INC., a Delaware :    August 18, 2008
corporation, et al.,       :    10:00 a.m.
          Debtors.         :
---------------------------
```

TRANSCRIPT OF OMNIBUS HEARING
BEFORE THE HONORABLE CHRISTOPHER SONTCHI
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

```
For Debtors:               SEAN MATTHEW BEACH, ESQ.
                           NATHAN D. GROW, ESQ.
                           MATTHEW BARRY LUNN, ESQ.
                           Young, Conaway, Stargatt & Taylor
                           1000 West Street, 17th Floor
                           Wilmington, Delaware  19801

For Creditors Committee:   DAVID W. CARICKHOFF, JR., ESQ.
                           Blank, Rome
                           1201 Market Street, Suite 800
                           Wilmington, Delaware  19801

                           MARK POWER, ESQ.
                           MARK S. INDICATO, ESQ.
                           Hahn & Hessen
                           488 Madison Avenue
                           New York, New York  10022

For Northwest Trustee      JEFFREY C. WISLER, ESQ.
Services:                  CONNOLLY BOVE LODGE & HUTZ
                           The Nemours Building
                           P.O. Box 2207
                           Wilmington, Delaware  19899-2207

For (Unknown):             PAMELA CHIPEGA, ESQ.
                           ALLEN & OVERY
                           1221 Avenue of the Americas
                           New York, NY  100200
```

2

APPEARANCES CONTINUED:


For Sam Hage, II:          ELIHU ALLINSON, ESQ.
                           SULLIVAN HAZELTINE ALLINSON
                           4 East 8th Street, #400
                           Wilmington, DE  19801

Audio Operator:            Jennifer Pasierb

Transcribed by:            DIANA DOMAN TRANSCRIBING
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026-0129
                           (856) 435-7172
                           FAX:  (856)  435-7124
                           EMAIL:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          COURTROOM DEPUTY:  All rise.

2          THE COURT:  Please be seated.

3          Good morning.

4          MR. LUNN:  Good morning, Your Honor.  May it please

5   the Court, Matthew Lunn from Young Conaway on behalf of the

6   debtors.  Your Honor, this hearing is also an interim fee

7   hearing.  And in the past, Your Honor has done the interim fee

8   hearing first before moving to the agenda.  Would you like to

9   do that today, or would you like us to walk us through the

10  agenda?

11         THE COURT:  That's fine.

12         MR. LUNN:  Okay.

13         THE COURT:  Let me tell you the ones I don't have

14  any issues with.  Get that over with.  No issue with

15  Cadwalader.  No issue with Quinn Emanuel.  No issue with

16  Milestone.  No issue with Allen Weinreb, Weiner Brodski, Adomo

17  Yoss, Weltman Weinberg, Daniel Consuegra, Orlans Associates,

18  TD Service, Cohn Goldberg are all fine.  No issue with Samuel

19  White or Zeichner Ellman or Price Waterhouse Coopers.  I don't

20  know if -- was there some -- there appeared to some confusion

21  about Northwest Trustee, so we'll -- we'll -- maybe we can

22  turn to that in a minute.  Let's see, that was it on the no-

23  issues.

24         And then I did have some comments in connection with

25  the rest.  Let's see.  Start with BDO Seidman.  Anyone here

1   from BDO on the phone or -- all right.  Well, here are my

2   issues with BDO.  February and March there was no itemized --

3   itemization of expenses, just a summary.  So they need to

4   supplement and itemize their expenses for February and March,

5   which are the 5th and 6th.  Other than that, I didn't have any

6   issues.  So, I'll -- I mean, I would sign an order today

7   allowing everything except the expenses, or you -- they can

8   simply supplement and you can submit a certification.  However

9   you want to proceed.

10          MR. LUNN:  Your Honor, if it's appropriate, what

11  I'll do is just lightly strike down the expense column on the

12  interim fee order for them, and we'll submit a further order.

13          THE COURT:  All right.  Hahn & Hessen, not too much.

14  For your March fee app., which was your 8th, there was no

15  itemization of expenses.  And in addition, on March 4th, you

16  had a line item for Edward Shnitzer (phonetic), 4.8 hours, and

17  that was lumped.  We need to fix that.

18          MR. INDELICATO:  We -- we will fix both of those

19  items, Your Honor.

20          THE COURT:  Okay.  Other than that, I'm prepared to

21  approved it.  I -- I don't know -- I didn't take notes of how

22  much the billing rates were, so I don't know what 4.8 hours of

23  Mr. Shnitzer does to the number, but if you do, you can fix

24  it.

25          MR. INDELICATO:  We can fix that, Your Honor.  It's

1    -- it's approximately $1,500, but we can work it out and amend

2    the order.

3              THE COURT:  All right.  Thank you.

4              Blank Rome.

5              MR. CARICKHOFF:  Yes, Your Honor.

6              THE COURT:  Yes, everybody had trouble with the

7    expenses this -- this time around.

8              MR. CARICKHOFF:  I think we filed a couple

9    supplements that -- that had detailed expenses, and I could

10   have them pulled.

11             THE COURT:  All right.  Well, I didn't see them.

12   But there was a lot to go through, so I -- we did the best we

13   could.  I -- I did not see itemized expenses for your February

14   fee app. for the 7th fee app.  And, also, on April 23rd, J.

15   Stararow (phonetic)?

16             MR. CARICKHOFF:  Yes, Ms. Stararow.

17             THE COURT:  Yes, okay.

18             MR. CARICKHOFF:  Her time relates to the debtor's

19   sale of their thrift.  She's corporate.  Unfortunately, she's

20   not bankruptcy.  And I know Your Honor has warned us on

21   multiple occasions --

22             THE COURT:  Vague and lumping.  Yes, 2.7 hours.

23   Review materials, participate in conference call with creditor

24   committee, et cetera.  That's not going to do it.

25             MR. CARICKHOFF:  Understood.

1          THE COURT:  So fix that, and those were my only

2     comments to Blank Rome.  I know you guys have been busy.

3     Don't -- don't get me wrong, I just -- it's our job to look at

4     it, keep you honest-ish.  Honest-ish.

5          All right.  I think -- I think that only leaves

6     Young Conaway.  I miss anyone?

7          MR. LUNN:  Other than looping back to Northwest,

8     Your Honor.

9          THE COURT:  Oh, right.  Okay.  Well, let's deal with

10    Young Conaway first.

11         MR. LUNN:  Okay.

12         THE COURT:  Well, actually, I see Mr. Wisler, let's

13    deal with Northwest.  It -- it appeared that -- and I

14    understand I have an issue under advisement and I am working

15    on it.  It -- it appeared you were only requesting immediate

16    payment of the undisputed fees and expenses.  Well, maybe I

17    have it wrong.  Why don't -- why don't you make your

18    presentation.

19         MR. WISLER:  Good morning, Your Honor, Jeff Wisler

20    on behalf of Northwest Trustee Services, Inc.  That's correct,

21    Your Honor, I have a revised form of order.  The --

22    previously, what we had done is we had submitted orders that

23    carved out the expenses that are under advisement and

24    continued to do so.  The debtor's objection to the most -- to

25    the third quarterly application included two other categories

1  of disputed items.  And what we've done is we've just carved

2  -- I have prepared a form of order that I showed Mr. Lunn that

3  he's agreeable with that carves those out, too.  I think at

4  the end of the day, when this is all over, we'll look back,

5  try to resolve everything, and the -- the -- I don't think the

6  amounts are significant, so it's easier just to pass it all to

7  the end.

8          THE COURT:  Okay.  I'll sign the revised order.

9  Thank you.

10          MS. CHEPIGA:  Judge?

11          THE COURT:  Yes?

12          MS. CHEPIGA:  This is Pamela Chepiga from Allen &

13  Overy on telephonic attendance.  I may not have heard in the

14  beginning, but I did not hear you address Allen & Overy in

15  either category.

16          THE COURT:  Oh, I'm sorry, I did have one issue, one

17  question.  Thank you.

18          I've signed the order, Mr. Wisler.  You can go get

19  in trouble somewhere else.

20          MR. WISLER:  Thank you, Your Honor.

21          THE COURT:  All right.  Thank you.

22          On your 6th fee application, I've got a variety of

23  entries for an Eloise Covera (phonetic) totaling ten-and-a-

24  half hours.  And I mean, basically it's -- the only

25  description there is internal discussions regarding production

1    issues.  It adds up to about ten-and-a -- well, it adds up to

2    ten-and-a-half hours.  I'd like more detail there.

3            MS. CHEPIGA:  Judge, would you like us to -- Eloise

4    was -- is an -- an associate here who is supervising the

5    contract lawyers.  We have been using a large number of

6    contract attorneys.  And Eloise has been the link between the

7    contract attorneys and the more senior lawyers here.  So she

8    would bring from the contract attorney issues back to Allen &

9    Overy.  We would discuss them and resolve them on production.

10   And she would communicate the results back to the contract

11   attorneys.

12           THE COURT:  So when she's having internal

13   discussions, that's what that is?

14           MS. CHEPIGA:  That would be that she would -- a

15   contract attorney would raise an issue, and Eloise would be

16   the link between the -- we had approximately 20 or 25 contract

17   attorneys at various times to keep the cost down.  And Eloise

18   would go over to the site where the contract attorneys were,

19   and she would come back with a list of problems, sit down with

20   us, resolve those issues and go back to the contract

21   attorneys.

22           THE COURT:  All right.  And production issues, what

23   were the -- is that what the contract attorneys were doing,

24   they were working on document --

25           MS. CHEPIGA:  They were reviewing the documents for

1  production to the Securities and Exchange Commission.  And

2  there would be technical issues and substantive privilege

3  issues.

4           THE COURT:  All right.  All right.  With that --

5  with that clarification, I'll approve the order as submitted.

6           MS. CHEPIGA:  Thank you, Judge.

7           THE COURT:  Thank you.

8           THE COURT:  All right.  Yes, sir?

9           MR. CARICKHOFF:  Your Honor, with respect to Ms.

10  Duraro's time, if I can approach with the -- the actual April

11  bill and just show Your Honor.  Ms. -- Ms. Duraro's time is

12  essentially the same as my time for that day.  And if I could

13  show Your Honor what was done.  If I may approach?

14           THE COURT:  Yes.

15           MR. CARICKHOFF:  If she were a trained bankruptcy

16  attorney, Your Honor, I would expect that her time would,

17  essentially, mirror what my entry is for that day.

18           THE COURT:  She was working with you?

19           MR. CARICKHOFF:  Yes, Your Honor.  She's one of our

20  corporate partners and has been involved with the sale of the

21  Thrift.

22           THE COURT:  The committee meeting was by conference

23  call?

24           MR. CARICKHOFF:  It was, Your Honor.  And it

25  involved a presentation by debtor's professionals walking us

1  through their business plan for that.

2          THE COURT:  All right.  With that clarification,

3  I'll allow her time on that matter.  I still have the issue of

4  the expense itemization.

5          MR. CARICKHOFF:  We'll take care of that, Your

6  Honor.

7          THE COURT:  All right.

8          MR. CARICKHOFF:  Thank you.

9          THE COURT:  You're welcome.  Okay.  I had a -- well,

10  given the amount of work done, I guess, as a percentage, it

11  wasn't that much.  But I do have a number of items for Young

12  Conaway.

13          MR. LUNN:  Okay.  Most of which were lumping issues.

14  And now let me just give you the person and the date.

15  February 5th, Mr. Beach, 2.8 hours; February 14th, Mr.

16  Gallagher, 7 hours; February 15th, Mr. Gallagher, 3.2 hours;

17  February 15th, Mr. Beach, 7.4 hours; February 21st, Mr. Beach,

18  5.2 hours.  I got a vague -- vague entry on February 20th by

19  Mr. -- is it Costalas (sic)?

20          MR. LUNN:  Castalanas (phonetic).

21          THE COURT:  Castalanas.  Sorry, Castalanas, February

22  20th, five hours for summarizing agreements with payment

23  preconditions.  That's vague.  February 26th, 2.4 hours for

24  Mr. Bowman on this litigation log.  I don't know what that is.

25  Is there -- there are several -- several entries with that.

1   February 26th, February 28th and February 29th, attention to a

2   litigation log.

3            MR. LUNN:  All by Mr. Bowman?

4            THE COURT:  Yes.  And then some more lumping.  March

5   27th, Mr. Beach; March 6th, Mr. Beach; March 9th, Mr. Beach;

6   March 25th, Mr. Beach; March 31st, Mr. Grear; March 31st, Mr.

7   Beach; and then again on March 6th for Mr. Bowman on this

8   litigation log.  And then I have four items in April for

9   lumping by Mr. Beach; April 8th, April 9th, April 10th and

10  April 11th.

11           MR. LUNN:  We will submit a supplemental affidavit

12  correcting those, Your Honor.

13           THE COURT:  Okay.  Those were my only issues.

14           MR. LUNN:  At the end, Your Honor, if I -- after I

15  go through my presentation with the rest of these, then I'll

16  just hand up an order consistent with Your Honor's ruling

17  today.

18           THE COURT:  Very good.

19           MR. LUNN:  Thank you.  Your Honor, referring to the

20  agenda that we filed in accordance with the local procedures,

21  agenda items 1 through 16 are being adjourned.  I should note

22  that agenda item 7, which is the debtor's fifth non-

23  substantive objection, we had indicated in the agenda that the

24  objection with respect to the Sam Hage claim would be

25  withdrawn at this time.  We're simply going to need to adjourn

1    -- bless you.

2            THE COURT:  Thank you.

3            MR. LUNN:  -- simply going to adjourn this for the

4    time being as -- and I'll come to this later in the agenda,

5    but we've come to an agreement with Mr. Hage that we're

6    working through an agreed order, we're just not quite there

7    yet, Your Honor.

8            THE COURT:  Okay.

9            MR. LUNN:  That carries us then to agenda item

10   number 17.  And this is the debtor's motion for approval of a

11   stipulation between the debtors, the committee and the

12   debtor's former CEO, Michael Strauss.  As --

13           THE COURT:  I'm sorry, I -- I did not get an

14   opportunity until this morning to go through them, but I

15   signed items 17 and 18 and 19 --

16           MR. LUNN:  Very good, Your Honor.

17           THE COURT:  -- this morning.

18           MR. LUNN:  Thank you, Your Honor.  That then brings

19   us to agenda item number 20, which is the Sam Hage matter.

20   And as I alluded, we have come to an agreement with Mr. Hage

21   regarding the timeliness of his claim.  There's also an

22   allowed amount of claim, which we will submit under an agreed

23   form of order.  We're working with the committee and make sure

24   the committee is on board with the form of order with Mr.

25   Hage.  And what we propose to do is submit that under a

1   certification of counsel.  We're just not quite there.  I

2   think another day or two, Your Honor.

3            THE COURT:  Okay.  Very good.

4            MR. LUNN:  Thank you.  The next agenda item, Your

5   Honor, is agenda item 21.  And I -- oh.

6            MR. ALLINSON:  Good morning, Your Honor, Elihu

7   Allinson on behalf of Mr. Hage.

8            THE COURT:  Let's try that again.

9            MR. ALLINSON:  Good morning, Your Honor.  We -- we

10  are working through a form of agreement, and I just wanted to

11  be excused if --

12           THE COURT:  Yes.

13           MR. ALLINSON:  Thank you.

14           THE COURT:  Very good.  Thank you, Mr. Allinson.

15           MR. LUNN:  The next agenda item, Your Honor, is

16  agenda item 21.  It's the debtor's motion -- exclusivity

17  motion, and Mr. Beach will be handling that.

18           THE COURT:  All right.

19           MR. BEACH:  Good morning, Your Honor.  May it please

20  the Court, Sean Beach from Young Conaway on behalf of the

21  debtors.

22           THE COURT:  Good morning.  Your Honor, the

23  exclusivity motion we -- we've received partial approval of

24  that motion at, I believe, the last hearing.  Now we're

25  seeking the balance of that relief for an extension of

1    exclusivity till September 2nd and solicitation till October

2    29th.  As Your Honor may have seen, we did get a plan on file

3    on Friday and a disclosure statement.  We're aiming towards

4    the disclosure statement hearing on September 15th.

5           The debtors have been working very closely with the

6    committee in connection with the plan, the structure of the

7    plan, and, really, all issues in connection with the plan and

8    disclosure statement.  It has been filed as the debtor --

9    debtor's plan, and the parties do intend to continue working

10   together and hopefully make that plan a joint plan prior to

11   the disclosure statement hearing.

12          With that, Your Honor, there were -- there was an

13   objection by Bank of America to the exclusivity motion.  They

14   -- that objection has been resolved.  The committee had also

15   raised some informal concerns about the exclusivity motion.  I

16   believe those issues have been resolved.  So I would ask Your

17   Honor to approve the balance of the relief on the exclusivity

18   motion.

19          THE COURT:  Anyone wish to be heard?

20          MR. INDELICATO:  Good morning, Your Honor, Mark

21   Indelicato from Hahn & Hessen on behalf of the committee.

22   Your Honor, while not repeating what Mr. Beach said, I want

23   the Court to be aware of why the -- the exclusivity motion has

24   been adjourned and what's been going on over the last couple

25   of weeks between the debtor and the committee.  The debtor and

1   the committee have been working, I think, since middle of

2   April or May in order to develop the frameworks of a plan.

3             As the Court can imagine, in these cases, structure

4   of a plan is as complicated as the implementation of the plan.

5   And we had been concerned about when they originally filed the

6   motion of the -- the extensive extension, and we agreed to

7   extend it at smaller bites so that we all kept our feet to the

8   fire.  I think that has proven fruitful.

9             As -- as Mr. Beach has indicated, a plan was filed

10  on Friday with an accompanying disclosure statement.  I don't

11  want any party or the Court to think that because the

12  Committee is not a co-proponent that we won't ultimately be a

13  co-proponent.  But I think because we kept everybody's feet to

14  the fire and moved as quickly as we did, we weren't able to

15  keep the Committee as apprised as the later developments, so

16  that they need some more time to digest some of the

17  intricacies of the plan.  We're going to work them through

18  and, hopefully, when we stand before the Court in September,

19  it will be a joint plan that we will seek approval of a

20  disclosure statement for.

21            So in light of that, Your Honor, we think the

22  extension is warranted and we think -- we would ask the Court

23  to approve it.

24            THE COURT:  Okay.  Very good.  Anyone else?  All

25  right.  Do you have a revised order or --

1          MR. BEACH:  The order is actually the same that was

2    filed with the motion, Your Honor.

3          THE COURT:  All right.  Well, how was the Bank of

4    America matter resolved?

5          MR. BEACH:  Oh, how substantively or --

6          THE COURT:  Yes.

7          MR. BEACH:  Really, their objection, as I understand

8    it, was pending the approval of the settlement with them.

9          THE COURT:  Oh, all right.

10         MR. BEACH:  So once that settlement --

11         THE COURT:  Is approved.

12         MR. BEACH:  -- is approved, I don't believe they

13   were concerned as much about exclusivity.

14         THE COURT:  Okay.  Very good.

15         MR. BEACH:  May I approach, Your Honor?

16         THE COURT:  Yes, you may.  Thank you.  Based on the

17   filing of the plan and the support of the Committee and the

18   resolution of the Bank of America objection, the Court will

19   approve the order.

20         MR. BEACH:  Thank you, Your Honor.  Item number 22

21   on the agenda is the -- the motion by AH Mortgage Acquisition

22   Company for the payment of an administrative expense claim.

23   Your Honor, that matter has been adjourned until August 27th.

24         THE COURT:  I thought you wanted a scheduling

25   conference on that?

1        MR. BEACH:  The -- yeah, the scheduling conference

2    has been adjourned until August 27th.  The parties are

3    speaking with -- with each other about that motion, and the

4    debtors are awaiting some information as to what AH

5    Acquisitions claims are in connection with that motion.

6        THE COURT:  Okay.  All right.  I'm sorry, I was

7    confused.  All right.  So the scheduling conference is

8    continued to August 22nd?

9        MR. BEACH:  That's right.

10       THE COURT:  Okay.  Thank you.

11       MR. BEACH:  Your Honor, with respect to items number

12   23 and 24, I'd like to cede the podium to Mr. Grow.

13       THE COURT:  You want to take 25 first and get that

14   done?

15       MR. BEACH:  Sure.

16       THE COURT:  And then we -- before we go to the --

17   sorry, I have --

18       MR. BEACH:  No, problem, Your Honor.  Item number

19   25, Your Honor, is the emergency motion of the debtors for

20   interim and final orders approving and authorizing a second

21   DIP facility amendment.  Your Honor, the interim order was

22   approved at the August 5th hearing, which gave the debtors an

23   extension of exclusivity until today.

24       The debtors are seeking the balance of their relief

25   to be approved today.  As we went over the details at the last

1    hearing, what this does for the debtors is give the debtors

2    approximately an additional 15 million in liquidity by the use

3    of the Beltway sale proceeds and some additional availability

4    under the DIP.

5         For those benefits, Your Honor, the debtors also get

6    an extension till November 5th on the DIP facility and are

7    seeking to -- authorization to pay the balance of the

8    amendment fee, which would be an additional $525,000 at two-

9    and-a-half points times 21 million.  The interest rate is

10   proposed to be increased starting on August 6th through the

11   November 5th date from its current rate to Lybor (phonetic)

12   plus 12, Your Honor.  And the debtors are seeking the balance

13   of the relief today.

14        Your Honor, Mr. Fernandez is in the courtroom and

15   available to testify, what I would suggest, unless Your Honor

16   would take the testimony from the prior hearing is that I just

17   give a brief proffer in support of this motion.

18        THE COURT:  Let's do a -- any objection to the use

19   of a proffer?  No, you may proceed by proffer.  Thank you.

20        MR. BEACH:  Thank you, Your Honor.  If called to the

21   stand, Mr. Fernandez would testify that as of June 30, 2008,

22   he was appointed as the director of restructuring for the

23   debtors.  Mr. Fernandez has worked as a restructuring advisor

24   for Crawl & Cooper for approximately nine years, and prior to

25   that time worked as a consultant in an audit group for Price

1   Waterhouse Coopers.

2           Mr. Fernandez received a bachelor degree from -- in

3   business economics with an emphasis in accounting from UC,

4   Santa Barbara.  With respect to the second DIP amendment, Mr.

5   Fernandez would testify that he has participated in

6   negotiations surrounding the second DIP amendment and has

7   reviewed and is familiar with the original DIP facility, first

8   DIP amendment and the second DIP amendment.

9           Mr. Fernandez would testify that the debtors,

10  working closely with the Committee, have extensively and

11  diligently pursued a new post-petition financing arrangement.

12  The debtors prepared a due-diligent package containing, among

13  other things, information regarding debtors unencumbered

14  assets, which was made available to the parties that signed on

15  disclosure agreements.

16          In connection with such activities, the debtors had

17  discussions with ten potential lenders, however, to date the

18  debtors have been unable to secure financing or replacement

19  financing from any other parties on more favorable terms than

20  those proposed by the second DIP amendment.

21          Mr. Fernandez would testify that the debtors pursued

22  an extension and/or an amendment of the DIP facility as an

23  alternative to new financing.  The debtors were able to

24  negotiate the second DIP amendment, which provides an

25  extension of the DIP facility till November 5, 2008, to allow

1   the debtors to continue in orderly sales and liquidation

2   process, and an amendment of the DIP facility to allow the

3   debtors additional liquidity of approximately $15 million.

4        In exchange such -- for such benefits, the debtors

5   have agreed to pay an aggregate amendment fee of 2.5 times $30

6   million or $750 as an amendment fee and increased the DIP

7   facility interest effectively equal to Lybor, plus 12,

8   starting on August 6th.

9        Mr. Fernandez would testify that the terms and

10   conditions of the second DIP amendment are fair and reasonable

11   under the circumstances, given that to date the debtors have

12   been unable to secure any other financing and were negotiated

13   by the parties in good faith and at arm's length.

14        Moreover, Mr. Fernandez would testify that absent

15   approval of the second DIP amendment, the debtors wind-down

16   efforts may come to a standstill causing immediate and

17   irreparable harm to the debtors, their estates and creditors.

18   The debtors engaged in numerous parties and discussions

19   regarding alternative post-petition financing but were

20   unsuccessful and as a result, among other things, the nature

21   of the collateral that would secure the loan was a key issue

22   in securing additional financing.

23        Accordingly, Mr. Fernandez would testify that entry

24   of the second DIP amendment is reasonable and justified under

25   the circumstances and is in the best interest of the debtors,

1   estates and creditors.  That would conclude the testimony of

2   Mr. Fernandez.

3           THE COURT:  Does anyone wish to cross-examine the

4   witness?  All right.  Hearing none, the Court will accept the

5   evidence.  Any other comments in connection with the DIP

6   financing?  Mr. Indelicato?

7           MR. INDELICATO:  Yes, Your Honor.  As you could

8   imagine, while the Committee is happy that we have a

9   replacement or DIP in place that's extended, we were not

10  thrilled with the terms.  We did work with the debtor to try

11  some alternative financing.

12          Unfortunately, Your Honor, as a result of the credit

13  markets, there were none available.  We believe that this

14  extension is necessary for us to be able to maximize the value

15  of the estates, so we are supporting the extension of the DIP.

16  We had hoped for better terms, but we will take what we will

17  get, and we would ask the Court to approve it.

18          THE COURT:  All right.  Thank you.  Anyone else?

19  Mr. Beach, you have an order?

20          MR. BEACH:  May I approach?

21          THE COURT:  Yes.  Thank you.

22          MR. BEACH:  Your Honor, I also handed you a black

23  line with is a black line to the interim order that was

24  approved.  There were no substantive changes other than to

25  reflect the fact that the final order is being approved and

1   the full terms of the second DIP facility amendment are to be

2   approved.  With that, Your Honor, the debtors would request

3   that Your Honor approve the second DIP amendment.

4           THE COURT:  Based on the evidence the support of the

5   Committee, I'll approve the order as submitted.

6           MR. BEACH:  Thank you, Your Honor.  That brings us

7   back to item number 23 on the agenda.  And I'd like to cede

8   the podium to Mr. Grow.

9           THE COURT:  Fine.  Thank you, Mr. Beach.

10          Good morning, Mr. Grow.

11          Anyone that's still on the phone that was only here

12  for fee applications, you're more than welcome to drop off at

13  your convenience.

14          Mr. Grow.

15          MR. GROW:  Good morning, Your Honor.

16          THE COURT:  Good morning.

17          MR. GROW:  Nathan Grow of Young Conaway Stargatt &

18  Taylor on behalf of the debtors.  Matter number 23 on the

19  amended agenda is the debtors 12th omnibus non-substantive

20  objection to claims.  And would Your Honor like me to walk

21  through the objection and summarize the basis of the

22  objection?

23          THE COURT:  No, that's not necessary.

24          MR. GROW:  Okay.  Then, we -- we've received several

25  responses and we have a revised form of order that reflects

1   some changes made in response to some of the responses.  I can

2   hand that up if I may approach?

3                THE COURT:  Yes.  Thank you.  This is the 12th,

4   right?

5                MR. GROW:  This is the 12th.

6                THE COURT:  Let me just look real fast.  Okay.

7                MR. GROW:  Okay.  Just to walk through some of the

8   responses that we received.  The debtors received nine

9   responses -- or nine responses were filed by claimants who

10  alleged claims on the bases of their equity interest in the

11  debtors.  Out of these nine claimants, eight failed to offer

12  any valid arguments to suggest that these claims should not be

13  expunged.

14               Some of these respondents merely filed the notice

15  that they received in connection with this objection; others

16  merely stated that they opposed the relief requested by the

17  debtors.  But none of these eight responses include any

18  additional information or allegations that would support

19  characterization as a claim.

20               One of these nine responses related to an equity

21  claim objection does raise additional allegations against the

22  debtors in addition to the claimant's asserted equity

23  interest.  This response is item 7 in Exhibit H of the amended

24  agenda.  In light of Your Honor's ruling during th hearing on

25  the 5th omnibus objection with regard to equity claims, the

1    debtors have withdrawn their objection to this claim and

2    reserve the right to object to this proof of claim on any

3    grounds in the future.

4           Okay.  Moving on, the -- the debtors received six

5    responses by claimants who failed to attach any supporting

6    documentation to their proofs of claim.  And the debtors had

7    objected to these claims on the basis that the claimants

8    failed to allege a *prima facie* claim.  Out of the six

9    claimants who responded, four of them provided additional

10   documentation related to their claims.  These are -- these

11   claimants are numbers 1, 2, 8 and 9 on Exhibit H of the

12   amended agenda.  And the debtors wish to withdraw their

13   objection to these claims -- to these four claim -- sorry,

14   withdraw the objection to these four claims and reserve the

15   right to object to these claims on any basis in a future

16   objection.

17          THE COURT:  Okay.

18          MR. GROW:  And then the other two claimants are

19   numbers 19 and 20 on Exhibit H.  And these two claimants

20   requested additional time to put together some supporting

21   documentation for their claims.  And the debtors request that

22   the Court adjourn the objection to these claimant's claims

23   until the next omnibus hearing.

24          THE COURT:  Okay.

25          MR. GROW:  The debtors also received several

1  responses from claimants who filed claims that the debtors

2  objected to as wrong-debtor claims, where the debtors have

3  requested to reassign these claims to a different case number.

4  Claimant number 5 on Exhibit H of the amended agenda is Dial

5  America.

6           The debtor has requested in the 12th omnibus

7  objection that Dial America's claim be reassigned.  And Dial

8  America responded to the debtors, requesting documentation to

9  show that this reassignment is -- is due and correct.  And the

10 debtors are in the process of providing that documentation.

11 And in the meantime, they request that the objection to Dial

12 America's claim be adjourned until the next hearing.

13          And just as a point of clarification, the amended

14 agenda states that the objection to Dial America's claim is

15 going forward, however, the revised form of order correctly

16 states that the objection as to Dial America's claim should be

17 adjourned.

18          Claimant number 6 on Exhibit H of the amended agenda

19 is Barbara Herel.  The debtors requested in the 12th objection

20 that Ms. Herel's claim be reassigned to case number 07-11051.

21 Ms. Herel responded, stated that her claim should be assigned

22 to case number 07-11048.  I've spoken with Ms. Herel and

23 explained the reasoning behind the debtor's objection and

24 proposed reassignment, and she confirmed by email that she

25 consents to this reassignment of her claim as proposed in the

1    debtor's 12th omnibus objection.

2            Claimant number 18 on Exhibit H of the amended

3    agenda is Reval, Inc.  The debtors requested that Reval's

4    claim be assigned to case number 07-11053.  Reval responded

5    stating that their claim should, in fact, be assigned to 07-

6    11048, which is the case number of American Home Mortgage

7    Investment Corp.  The debtors agree that this is the

8    appropriate case number for this claim and have revised the

9    exhibit to the 12th omnibus objection accordingly.

10           Okay.  Claimants number 10, 12 and 15 on Exhibit H

11   filed responses to the debtor's request that their claims be

12   reassigned, but did not contest in their responses the

13   reassignment.  So the -- no -- no change to the order has been

14   made with respect to these.

15           Okay.  Those are all the responses that the debtors

16   received to the 12th omnibus objection were necessary.  The

17   form of order has been adjusted to reflect adjournments and

18   withdraws that I've discussed.  Does Your Honor have any

19   questions with respect to this objection?

20           THE COURT:  No, I don't, except I received this

21   morning, literally, as I was about to walk into court, an

22   amended -- an additional document that I don't -- that appears

23   to be a response to the 12th that I don't see on your list.

24   Douglas Harrison.

25           MR. GROW:  I don't -- Douglas Harrison, let's see --

1          THE COURT:  Claim 3996.

2          MR. GROW:  Right.  Douglas Harrison was included on

3     the amended agenda, Exhibit H, item number 21.  This is --

4          THE COURT:  Oh, I don't have item 21.  What am I

5     looking at?  Oh, I'm looking at the original agenda.  Hang on.

6     Do you have an extra amended agenda, anyone?

7          (Interruption)

8          THE COURT:  Okay.  And the comment with him is -- I

9     mean, I'm looking at it.  He -- he makes no -- he just says

10    disallow the plan.

11         MR. GROW:  Sure.  And this is one of the equity

12    claims that I referred to, and I don't think there's any

13    reason why the objection shouldn't go forward and be

14    sustained.

15         THE COURT:  All right.  Thank you.  I have no

16    further questions.  I will -- what did I do with it?  I will

17    sign the order as modified.

18         MR. GROW:  Okay.  So moving onto item number 24 on

19    the amended agenda.  This is the debtor's 13th omnibus

20    substantive objection to claims.  And should I just discuss

21    the responses, changes made to the form of order, or would

22    Your Honor like some --

23         THE COURT:  I don't have any -- I don't have any

24    comments about the -- I do have a series of fairly substantial

25    questions, so I -- I don't know -- there may be some overlap

1  or not.  So we can either go through the responses or I can go

2  through my comments.  However you want to --

3          MR. GROW:  Should we do responses first, and maybe

4  that will --

5          THE COURT:  That -- that's fine.

6          MR. GROW:  -- tap some of your questions?

7          THE COURT:  It -- it might.  I -- I may not be able

8  to connect the dots, but we'll do the best we can.

9          MR. GROW:  Okay.  Well, first of all, I've got a

10  revised form of order.  May I approach and hand that up?

11          THE COURT:  Yes, please.  Thank you.

12          MR. GROW:  Okay.  The debtors have received 19

13  responses to the 13th omnibus objection.  And on the basis of

14  these responses, the debtors request that the hearing be

15  adjourned with respect to the objection to the claims of the

16  claimants listed on the amended agenda and Exhibit I as

17  numbers 3, 4, 5, 6, 7, 9, 13, 15, 16 and 18.

18          THE COURT:  3, 4, 5, 6, 7, 9.

19          MR. GROW:  13, 15, 16, 18.

20          THE COURT:  All right.

21          MR. GROW:  Okay.  Additionally, the debtors have

22  withdrawn their objection to the claims of the claimants

23  listed as items 2, 4 (sic), 17 and 19 on Exhibit I to the

24  amended agenda.

25          THE COURT:  2, 4 -- 2, 4, 17 and 19?

1        MR. GROW:  2, 14 --

2        THE COURT:  Oh, 2, 14.

3        MR. GROW:  17 and 19.  As noted on the amended

4  agenda.  The debtors wish to reserve their rights to object to

5  these claimant's claims 2, 14, 17 and 19 on any basis in a

6  future of objection.

7        Okay.  And the -- the 13th objection is moot with

8  respect to the claims of EMC Mortgage Corporation because EMC

9  has withdrawn the claims that the debtors object -- objected

10  to.  So EMC is listed as item 8 on Exhibit I --

11        THE COURT:  Yes.

12        MR. GROW:  -- to the amended agenda.  Okay.  Then

13  just to address the remaining responses.  The debtors received

14  a response from Foundation Marketing, Inc., which is listed as

15  number 1 on Exhibit I to the amended agenda.  The debtors

16  objected to Foundation Marketing's claim as a modified amount

17  wrong-debtor claim.

18        I have spoken with Karen Deis, a representative of

19  Foundation Marketing.  Upon further explanation of the

20  debtors' objection, Ms. Deis agreed to the treatment of

21  Foundation Marketing's claim for posting the 13th objection.

22        THE COURT:  That's Exhibit F, amount of -- modified

23  amount wrong-debtor claims?

24        MR. GROW:  Exhibit --

25        THE COURT:  So your objection was Exhibit F modified

1  amount wrong-debtor claims?

2         MR. GROW:  Wrong-debtor, that's correct.

3         THE COURT:  All right.  Which one was that?

4         MR. GROW:  Foundation Marketing, Inc.

5         THE COURT:  Do you have a claim number?

6         MR. GROW:  5.

7         THE COURT:  Oh, well, it doesn't matter.

8         MR. GROW:  That's -- that's the docket number.

9         THE COURT:  That's all right.  Never mind.

10        MR. GROW:  That's the docket number.

11        THE COURT:  All right.  So she agrees?

12        MR. GROW:  She agrees, yes.

13        THE COURT:  All right.

14        MR. GROW:  Okay.  Moving on.  The debtors received a

15 response from Ronald Sabik, which is listed as number 10 on

16 Exhibit I to the amended agenda.  And that the debtors

17 objected to Mr. Sabik's claim as a no-liability claim.  Mr.

18 Sabik has two similar claims, proof of claim number 3599 and

19 proof of claim number 6440.  These two proofs of claim are for

20 the same amount and both filed in his name.  These claims are

21 clearly duplicative.

22        In his response, Mr. Sabik states that he filed the

23 claim 3599, but he suggests in his response that 6440 may have

24 been filed by another party on his behalf.  Regardless of who

25 filed the claims, these two claims are both in Mr. Sabik's

1   name and appear duplicative, and the debtors request that

2   claim 3599 be expunged.

3                THE COURT:  What -- what -- was that a modified --

4                MR. GROW:  It's -- it's a no-liability claim, but,

5   in essence, it's very similar to an amended claim.  The reason

6   that we didn't file an objection as an amended claim is

7   because they don't look exactly the same --

8                THE COURT:  Okay.

9                MR. GROW:  -- but they are --

10               THE COURT:  They are the same.

11               MR. GROW:  -- in the same amount and --

12               THE COURT:  Okay.

13               MR. GROW:  -- the same person appeared to be on the

14  same basis.

15               THE COURT:  Do you have a claim number?

16               MR. GROW:  It's proof of claim number 3599 is what

17  we're objecting to.  6440 is the other claim that is

18  substantially similar.

19               We've tried to reach out to Mr. Sabik, but his --

20  neither his proof of claim nor his response has any telephone

21  number or email address or fax number.  In his proof of claim,

22  he -- he though --

23               THE COURT:  Is it 3599?

24               MR. GROW:  3599.

25               THE COURT:  Oh, all right.  I was looking for 3590,

1   sorry.  All right.

2              MR. GROW:  Okay.

3              THE COURT:  I'll sustain the objection.

4              MR. GROW:  Okay.  The debtors also received a

5   response from Scott Wise, which is listed as number 11 on

6   Exhibit I to the amended agenda.  The debtors objected to Mr.

7   Wise's claim as a no-liability claim.  Mr. Wise, his response

8   merely states that he does not oppose the treatment proposed

9   by the debtors in the 13th omnibus objection.

10              THE COURT:  Okay.

11              MR. GROW:  The debtors also received a response from

12   Audrey Hymel, which is item 12 on Exhibit I.  The debtors

13   objected to this claim, requesting that it be reclassified.

14   It was filed as a secured claim.  The debtors believe it

15   should be unsecured.  Ms. Hymel's response touches on the

16   merits of her claim but does not discuss the issue of priority

17   or -- or whether the -- her claim should be secured or

18   unsecured.

19              THE COURT:  All right.

20              MR. GROW:  So I've spoken with Ms. Hymel on the

21   phone and explained the nature of the debtors' objection.  I

22   asked her if she could provide any documentation and a reason

23   why her claim should be considered secured and she could not.

24   So the debtors submit that there is no basis.

25              THE COURT:  Did she agree to the objection?

1        MR. GROW:  She -- she didn't agree --

2        THE COURT:  Okay.

3        MR. GROW:  -- to the objection, but --

4        THE COURT:  Well, I'll sustain the objection.

5        MR. GROW:  Okay.  So those are all the responses

6  that the debtors received.  A form of order has been adjusted

7  to reflect those adjournments and withdraws that were

8  necessary.  Does Your Honor have -- should we address your

9  questions?

10        THE COURT:  Yes.  We get a chance.  All right.

11  Excuse me.  Allergies are -- start with Exhibit A, no-

12  liability claims.

13        MR. GROW:  Okay.

14        THE COURT:  I have some concerns.  First, there's

15  several objections based on, in effect, contract terms.

16  Debtors claim that certain claimants are not entitled to

17  compensation according to the terms of their claim -- their

18  contracts.  It appears that all of them, if not most of them

19  -- most of them or all of them are looking for bonuses that

20  they assert are owed to them.  And they've attached -- many of

21  them have attached their employment contract.

22        MR. GROW:  Um-hmm.

23        THE COURT:  And the debtors response is, I believe,

24  that their books and records reflect no liability.  And then

25  Ms. Morale's (phonetic) declaration that the claimants are,

1  quote, not entitled to compensation per terms of contract, end

2  quote.

3            MR. GROW:  Um-hmm.

4            THE COURT:  And I'm concerned about dealing with

5  what appears to be an argument over the terms of the contract

6  in the nature of an omnibus claim objection.  And whether

7  simply saying that you disagree with the interpretation of the

8  contract is sufficient to rebut the presumption of evidence

9  that the con -- that the claims are valid.

10           MR. GROW:  Okay, Your Honor.  Well --

11           THE COURT:  I have a list of the applicable claims

12  but --

13           MR. GROW:  Yeah, it -- it looks like there's a lot

14  of them.

15           THE COURT:  Yes.

16           MR. GROW:  We -- we could look at some of these

17  and --

18           THE COURT:  Well --

19           MR. GROW:  -- walk through it a little bit, but

20  being that there's so many of them, maybe it would be better

21  just to adjourn them all and address them at some more

22  organized fashion.

23           THE COURT:  I think that would be helpful.  And I --

24  I can give you the list, if you'd like, that I -- that we had

25  -- that I had issues with.

1          MR. GROW:  Okay.  Sure.

2          THE COURT:  Unless you can -- I mean, if you can

3    readily identify them --

4          MR. GROW:  Is it just everything that has the

5    comment "not entitled to compensation per terms of contract"?

6          THE COURT:  Yes.

7          MR. GROW:  Are there -- are there any other --

8          THE COURT:  I don't believe so.

9          MR. GROW:  -- comments that apply?

10         THE COURT:  There should be -- 16.

11         MR. GROW:  16.

12         THE COURT:  Why don't I just give you the numbers.

13         MR. GROW:  Okay.

14         THE COURT:  You can jot them down.  1316, 7990,

15   3007, 7066, 646, 3940, 1639, 7606, 5538, 2316, 7333, 5237,

16   6085, 6815, 7565 and 3475.

17         MR. GROW:  Okay.  So we can revise a form of order

18   to adjourn --

19         THE COURT:  Yes.

20         MR. GROW:  -- with respect to all of those?

21         THE COURT:  Right.  My next issue, again, with

22   Exhibit A are these -- the Financial Guarantee Insurance

23   Company and the NBIA Insurance Company claims filed by Kutak

24   Rock (phonetic).

25         MR. GROW:  Yes, we -- we've received informal

1   responses from -- from them -- from both of the, and we've

2   included in the revised form of order to adjourn them.

3        THE COURT:  All right.  Good.  All right.  Just a

4   few odds and ends.  Claim 8520, American Corporate Record

5   Center for about $267,000 for document and storage services.

6        MR. GROW:  Yes.

7        THE COURT:  With invoices attached.  If somebody

8   attaches invoices, how -- how do you simply say that you've

9   determined you're not liable for the claim after reviewing

10  your book and records and rebut the presumption that the

11  invoices are valid?  This is a real -- I understand it's

12  difficult to prove a negative, but, you know --

13       MR. GROW:  Your Honor, off the top of my head I

14  don't remember the exact circumstances, what the communication

15  was with this particular claimant.

16       THE COURT:  It does say -- you do say you consulted

17  with the claimant, so -- can we -- can we just continue this

18  one and --

19       MR. GROW:  Sure.

20       THE COURT:  -- maybe get a little more information.

21  We can window it down item by item.  And I'm not at all -- I

22  mean, I know it's a large amount to keep track of, so I'm not

23  surprised you can't recall instantaneously each item.

24       MR. GROW:  Sure, that's a lot of claims.

25       THE COURT:  Claim 1736, Luxury Mortgage Corp., they

1   claim they're owed $575,000 because of a breached purchase

2   agreement.  And they attach something called a lock

3   confirmation (phonetic).  And your response is that the claim

4   is made on the basis of a loan that is in withdrawn status and

5   you have no liability.  What does that mean, this loan is in

6   withdrawn status?

7            MR. GROW:  Luxury Mortgage, you said?

8            THE COURT:  Yes.

9            MR. GROW:  We've received a response from them and

10  -- and agreed to adjourn.

11           THE COURT:  Oh, okay, sorry.  Like I said -- oh,

12  yes, I'm sorry.  Never mind then.  I guess I should check my

13  list before I ask you.

14           MR. GROW:  Was that -- was that 5378, just to be

15  sure?  Oh, I'm --

16           THE COURT:  I had it down as --

17           MR. GROW:  -- sorry.

18           THE COURT:  -- 1736, but --

19           MR. GROW:  I was looking at the docket number.

20  1736, yes, that's -- I believe that's right.

21           THE COURT:  Okay.  Well, then, the last one is

22  Waldners -- or the last one on this exhibit is Waldners

23  Business Environments.  Before I say anymore, is -- is that

24  one being adjourned or --

25           MR. GROW:  Waldners Business Environments, no, we --

1          THE COURT:  Okay.

2          MR. GROW:  -- we did not receive a response from

3    them.

4          THE COURT:  About 348,000 and --

5          MR. GROW:  This looks like the same --

6          THE COURT:  -- it says it's part of a reclamation

7    claim, I guess.  Invoice is attached.

8               (Pause in proceedings)

9          MR. GROW:  Your Honor, Mr. Beach is telling me we --

10   we may have -- we may have formal settlements with both of

11   these -- with American Corporate Record Center and Waldners

12   Business Environment.  But to -- to be sure, I still think we

13   ought to adjourn and come back to the next hearing.

14         THE COURT:  Okay.  Okay.  Those were my only

15   comments to the Exhibit A claims.  All the rest I will

16   approve, unless you've already given me a different

17   resolution.

18         MR. GROW:  Okay.

19         THE COURT:  I did not have any issues with the

20   Exhibit B, multiple debtor claims.

21         MR. GROW:  Okay.

22         THE COURT:  On -- on the modified amount claims,

23   Exhibit C -- and this -- this comes up -- this comes -- this

24   is very -- sort of a similar issue under Exhibit F -- D -- F,

25   where it's modified amount and wrong debtor.  The --

1    basically, the debtors argue that -- they've -- their books

2    and records, which you could also just sort of say their

3    schedules, in effect, because they're based on their books and

4    records -- indicate that for each creditor the amount is A, B,

5    C, what have you.

6          And the debtor has filed -- the -- the claimant has

7    filed a proof of claim that is where the amount is different

8    than A, B, C.  And the debtors are arguing that you shouldn't

9    take the claim.  You should, in fact, rely on the schedules or

10   our books and records.  Sort of -- I mean, they're -- I'm not

11   saying they're the same but for all intents and purposes,

12   they're the same for the purposes of this argument.

13         While that may ultimately be the case, once the

14   claim is adjudicated, isn't the entire point of a proof of

15   claim for the creditor to file it if they disagree with the

16   scheduled amount?  And the statute -- the -- the rules provide

17   that that filed amount is presumed valid and, in effect,

18   trumps the books and records.  So don't you have to say

19   something more than it disagrees with the books and records in

20   order to have the claim expunged, or modified, excuse me?

21         MR. GROW:  Well, I -- I understand what Your Honor

22   is saying, but I guess the issue that we have -- I know with

23   several of these we've reached out to these claimants and --

24   to try to resolve the discrepancy.  And in many cases we can't

25   get responses, we can't get documentation as to why they think

1    it should be different than what our books and records

2    indicate.  And we tried to use this as -- as part of the

3    process to resolve the amounts.  And having filed an

4    objection --

5              THE COURT:  All right.  So in --

6              MR. GROW:  -- put them on notice --

7              THE COURT:  -- in effect, you've -- you've -- you

8    hear me, you've said, okay, but we still disagree.  You've

9    attempted to contact the claimant to work it out.  The

10   claimant hasn't responded.  You filed a formal objection which

11   sets forth what you think it is, and the claimant still hasn't

12   responded.  And your response to me is --

13             MR. GROW:  30 days notice and --

14             THE COURT:  -- what else can we do, Judge?  We've

15   done everything we have to do?

16             MR. GROW:  Yes.

17             THE COURT:  All right.  The -- the second issue --

18   the second question basically goes to changing priority

19   status.  So someone files a claim for $104, and it's $104

20   priority, plus $104 unsecured equals $104.

21             MR. GROW:  Right.

22             THE COURT:  And you've modified it to make it 104

23   unsecured equals 104 total.  And in every instance you've

24   eliminated the priority?

25             MR. GROW:  Right.

 1          THE COURT:  And -- and what is the basis for doing

 2  that, to -- to correct the math be eliminating the priority?

 3          MR. GROW:  Well --

 4          THE COURT:  That, basically, there is no basis

 5  asserted that would justify a priority under the bankruptcy

 6  scheme, I take it?

 7          MR. GROW:  Right, absolutely.  And --

 8          THE COURT:  On the face of the proof of claim.

 9          MR. GROW:  And -- and looking at these -- and there

10  were a lot of them -- I -- I think people just get confused by

11  the form.  It's -- it's not that they think 104 plus 104 is

12  104 and that's a mistake of their math.  It's they have one

13  claim, it's $104.

14          THE COURT:  All right.  All right.  Well, based on

15  our colloquy, I'll -- I'll approve the Exhibit C, modified

16  amount claim objections.

17          MR. GROW:  Okay.

18          THE COURT:  I had no issue with the Exhibit D,

19  reclassified claims.  I had no issue with Exhibit E,

20  reclassified wrong-debtor claims.  Exhibit F, based on our

21  colloquy that we just had in connection with Exhibit C, I had

22  no issue with Exhibit F.

23          MR. GROW:  Okay.

24          THE COURT:  Exhibit G, insufficient documentation.

25  And you may have pulled some of these out.  Bear Stearns?

1          MR. GROW:  Bear Stearns has been pulled out.

2          THE COURT:  All right.  Countrywide?

3          MR. GROW:  Pulled out.

4          THE COURT:  Deutsche Bank?

5          MR. GROW:  Pulled out.

6          THE COURT:  GE Money Bank?

7          MR. GROW:  GE Money Bank, we did not receive a

8   response.

9          THE COURT:  Well, I mean, they've attached the

10  contract -- they've attached a contract which includes -- at

11  least purportedly includes an indemnification provision.  Then

12  they've attached the loans -- or a list of the loans and the

13  alleged loss under each loan.  So isn't that sufficient

14  documentation to create a *prima facie* case that you need to

15  indemnify them for the loss of the loans that they've

16  attached?

17         MR. GROW:  Well, Your Honor, again, just picking out

18  this claim, I -- I don't remember exactly --

19         THE COURT:  Let's continue that one then --

20         MR. GROW:  Okay.

21         THE COURT:  -- if we could, please.

22         MR. GROW:  Continued.

23         THE COURT:  I have two issues with IndyMac.

24         MR. GROW:  IndyMac has been pulled out, Your Honor.

25         THE COURT:  Okay.  The first was substantive; the

1  second was what affect would the -- their receivership have?

2  And I don't know the answer to that question.

3           Okay.  Nomura Credit?

4           MR. GROW:  Pulled out as well.

5           THE COURT:  Pulled out as well.  All right.  Those

6  are all my comments.  So if you were able to keep any of that

7  straight, I'll sign a revised order --

8           MR. GROW:  Okay.

9           THE COURT:  -- under certification probably the

10 easiest way to proceed.

11          MR. GROW:  Okay.  So we had some revisions to

12 Exhibit A and just one to Exhibit G.  We can -- we can either

13 handwrite on a form of order here at the hearing and hand it

14 up, or if Your Honor would prefer, we can make it more clean.

15          THE COURT:  You can write it.  That's fine, you can

16 write it.  Save you the trouble from doing a certification.

17 And then you can just hand it to chambers.

18          MR. GROW:  Thank you.

19          MR. LUNN:  Your Honor --

20          THE COURT:  You really -- you really got the -- Mr.

21 Grow, you really got the -- the plum assignment in this case.

22 There's no question.

23          Mr. Lunn, you have something?

24          MR. LUNN:  The interim fee order, Your Honor.

25          THE COURT:  All right.  Thank you.

1          MR. INDELICATO:  Your Honor, not to belabor the

2    interim fees, but I just have one clarification question to

3    ask.  I actually, while we were going through the objections,

4    had a chance to look at our March or 8th monthly interim fee

5    application.  Attached as an Exhibit E -- C, is the -- the

6    expense detail.  I assume since you didn't believe it was

7    there, you haven't reviewed it.  Would you like us to submit

8    this to Your Honor again?

9          THE COURT:  Hang on.  I got to look at my list here.

10   You're at the very back.  I'm sorry, your 8th --

11         MR. INDELICATO:  Yeah, our March fee application,

12   which is the 8th monthly attached as Exhibit C was the expense

13   detail.

14         THE COURT:  I don't know how -- well, we missed it

15   if we missed it.  Let me just look at it.

16         MR. INDELICATO:  Sure.

17         (Pause in proceedings)

18         THE COURT:  Okay.  That's fine.

19         MR. INDELICATO:  Thank you, Your Honor.

20         THE COURT:  Do we have to change what you've handed

21   out, Mr. Lunn?

22         MR. LUNN:  Yes, we do, Your Honor.  I was just

23   informed by Mr. Indelicato that Your Honor had an issue with

24   Mr. Shnitzer's time on March 4th.  The amount is 2,232.  So if

25   we back that amount out of the 710 number, I get 708,343.5.

1              THE COURT:  Okay.

2              MR. LUNN:  Then I had also interlineated within the

3      version of the order that it was adjourned with respect to

4      Hahn & Hessen.  If we strike out Hahn & Hessen on the second

5      page of the order, Your Honor, I believe then we would be

6      correct.  I just need to re -- I need to give you a chart for

7      Hahn & Hessen, Your Honor.

8              THE COURT:  All right.

9              MR. LUNN:  And it also reflects the last one as the

10     BDO chart.  I struck out -- I struck the expenses and

11     indicated in the form of order that it's adjourned solely with

12     respect to the expenses.

13             MR. BEACH:  Your Honor, with respect to Young

14     Conaway's, is it acceptable, since most of the work needs to

15     be done on my part, to submit a certification of counsel with

16     explanations of revised time entries?

17             THE COURT:  Yes.

18             MR. BEACH:  Okay.

19             THE COURT:  Yes.

20             MR. LUNN:  Your Honor, may I approach with the Hahn

21     & Hessen insert?

22             THE COURT:  Yes.  What are we missing on Blank Rome,

23     just the expenses?

24             MR. CARICKHOFF:  Yes, Your Honor.  The --

25             THE COURT:  Do you  have them with you?

 1             MR. CARICKHOFF:  Before I came over, I just printed

 2    out the time detail.  Unfortunately, I didn't bring the

 3    expense detail.

 4             THE COURT:  Okay.

 5             MR. CARICKHOFF:  But I'll file a certification of

 6    counsel attaching --

 7             THE COURT:  Okay.

 8             MR. CARICKHOFF:  -- Blank Rome's and also BDO's as

 9    well, Your Honor.

10             THE COURT:  Okay.  I'll sign the revised order.

11             MR. LUNN:  Thank you, Your Honor.

12             MR. CARICKHOFF:  Thank you, Your Honor.

13             THE COURT:  Anything further?

14             MR. LUNN:  Not for today.

15             THE COURT:  Okay.  Thank you.

16             MR. LUNN:  Thank you.

17             THE COURT:  Very good.

18             (Proceedings concluded at 11:17 a.m.)

19                             ***

20

21

22

23

24

25

1                    **C E R T I F I C A T I O N**

2

3            I, Brenda Boulden, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9    _____    September 10, 2008

10   BRENDA BOULDEN

11   DIANA DOMAN TRANSCRIBING

12

13

14